**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT**

In re:

CITY OF DETROIT, MICHIGAN,
                                        Chapter 9

                      Debtor,             Case No. 13-53846

     v.

                                               Honorable Steven W. Rhodes

# D E C L A R A T I O N   O F   W I L L I A M   W E R T H E I M E R

       1.       I am the lead attorney for plaintiffs in *Flowers, et al. v. Snyder, et al.,* No. 13-734-CZ (Ingham County Circuit Court July 3, 2013), one of the three "Prepetition Lawsuits" that the City is seeking to stay in its motion at Docket No. 56.

       2.       In that motion the City states at paragraph 11 that plaintiffs in *Flowers* (and the other two "Prepetition Lawsuits") sought "*ex parte* orders" for temporary or preliminary injunctive relief. That is untrue. At no point did the *Flowers* plaintiffs (or the *Webster* plaintiffs) ever seek *ex parte* relief.

       3.       I filed our suit on July 3, 2013 and drew Judge Rosemarie Aquilina. I had notified the Attorney General's office before filing that I would be going to chambers seeking an order to show cause for a hearing on a preliminary injunction precluding the Governor from authorizing a Detroit bankruptcy. I met up with Tom Quasarano and Michael Murphy of the Attorney General's office at court. The three of us went into Judge Aquilina's chambers where we met with Morgan Cole, the court officer/law clerk. Ms. Cole stated that Judge Aquilina could hear the

matter on July 15. I urged that the matter be set for July 15. The Attorney General's office objected and asked for a delay until July 22 because the earlier date would interfere with chemotherapy treatment that Mike Murphy (who would according to them be writing the response brief) had previously scheduled. I then agreed to the July 22 hearing date, with the defendants' responsive pleading to be filed July 15. Judge Aquilina subsequently issued the order to show cause for July 22 at 9 a.m.

4.       Later the day of July 3, John Canzano filed suit on behalf of the *Webster* plaintiffs. He subsequently obtained an order to show cause for his hearing for declaratory relief before Judge Aquilina on July 22 at 9 a.m.

5.       The Attorney General's office filed response briefs in the *Flowers* and the *Webster* cases on July 15.

6.       Michael Murphy's name was not on either brief defendants filed on July 15 and he has had no involvement in the case to my knowledge beyond his role in obtaining the July 22 hearing date described above

7.       On July 17 the Clark Hill law firm filed suit on behalf of the two Pension Systems and moved for an expedited briefing schedule and hearing pursuant to MCR 2.605(D).

8.       On July 18 Mike Pattwell, a Clark Hill attorney, advised me by phone that the *Pension System* plaintiffs would be seeking injunctive relief from Judge Aquilina that afternoon as they had received word that the City was planning on filing for bankruptcy on July 19. (The reply brief with the affidavit of Michael Nicholson was filed on July 18 and is attached as Exhibit 1.) I was planning on filing our reply brief for the July 22 hearing that afternoon, so I

decided to also appear before Judge Aquilina to seek immediate injunctive relief. I advised John Canzano of what I had heard and he decided similarly.

9.     At approximately 3:35 p.m. on July 18, I telephonically advised Tom Quasarano that I would be appearing in Judge Aquilina's courtroom shortly after 4 p.m. to seek an injunction. He said that he would meet me there and did.

10.     The City filed for bankruptcy at 4:06 p.m. We began our hearing at 4:15 p.m. A transcript of the hearing is attached.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

s/William Wertheimer
William Wertheimer

Dated: July 23, 2013

# EXHIBIT 1

4

ROBBIE FLOWERS, MICHAEL WELLS,
JANET WHITSON, MARY WASHINGTON and
BRUCE GOLDMAN

                Plaintiffs,

vs.

                                        Case No. 13-729-CZ
                                        Hon. Rosemarie Aquilina

RICK SNYDER, as the Governor of the State
of Michigan; ANDY DILLON, as the Treasurer of
the State of Michigan; and the STATE OF MICHIGAN,

                Defendants.

_____/

| | |
|---|---|
| William A. Wertheimer (P26275)<br>Attorney for plaintiffs<br>30515 Timberbrook Lane<br>Bingham Farms, MI 48025<br>248-644-9200<br>billwertheimer@gmail.com | Thomas Quasarano (P27982)<br>Brian Devlin (P34685)<br>Assistant Attorneys General<br>PO Box 30754<br>Lansing, MI 48909<br>quasaranot@michigan.gov |

Andrew Nickeloff (P37990)
Marshall J. Widick (P53942)
James A. Britton (P71157)
Attorneys for plaintiffs
Sachs Waldman
1000 Farmer
Detroit, MI 48226
313-496-9429
anickelhoff@sachswaldman.com
mwidick@sachswaldman.com
jabritton@sachswaldman.com

_____

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION[1]

---

[1]     This brief is in reply to defendants' response to plaintiffs' motion. It is not in response to defendants' motion for summary disposition. Plaintiffs will respond to that motion as provided for under MCR 2.116(G)(1)(a)(i) once defendants properly notice same. Plaintiffs do not agree to defendants' request that this Court (apparently at the hearing and after the fact) waive or adjust the response time provided in the court rules. State's brief, page 16.

Defendants' brief ignores (but does not dispute) the basic facts that plaintiffs allege and grossly mischaracterizes the nature of plaintiffs' claim. In Parts A and B below, we address these two defects in defendants' response. Then, in Parts C through G, we respond to the remainder of defendants' arguments in response to our request for a preliminary injunction.

A. **Undisputed Facts**. Plaintiffs' complaint is based on the undisputed fact that the Detroit Emergency Manager has publicly stated that Detroit retirees, employees and their unions must agree to significant cuts to their vested pension benefits outside of a Chapter 9 federal bankruptcy proceeding, and that if they fail to agree he will cut those benefits through operation of the federal bankruptcy code, based on the supremacy of the federal bankruptcy code over Article 9, Section 24 of the Michigan Constitution, which provides that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Since under Public Act 436 such a federal bankruptcy proceeding cannot be initiated by the Emergency Manager without authorization by Governor Snyder, plaintiffs have sued the Governor to stop such an authorization and the diminishment and impairment of vested Detroit pension benefits which will necessarily follow from it. In short, this litigation seeks to stop action by Governor Snyder that the plaintiffs allege to be unconstitutional under Article 9, Section 24, and does not seek a declaration that Public Act 436 is itself unconstitutional.

Since this litigation was commenced on 3 July 2013, the City of Detroit has again refused to accept or address the strictures of Article 9, Section 24. Thus, on 9 July 2013,

the General Counsel of the UAW – which is the collective bargaining representative of plaintiffs Robbie Flowers and Bruce Goldman – wrote the City's lawyers, asking them:

> please cite the basis for any claim that the UAW has the authority to compromise the vested benefits of active and/or retired UAW or former UAW members employed or formerly employed by the City of Detroit and its affiliates. As I presume you know, Article 9, Section 24 of the Michigan Constitution provides in pertinent part that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Please tell me what authority your firm and/or Mr. Orr believe gives the UAW the right to compromise vested pension benefits, despite the contrary provisions of Article 9, Section 24. Please also tell us whether Mr. Orr and/or your firm take the position that Article 9, Section 24 of the Michigan Constitution is not or may not be binding on the City of Detroit, the State of Michigan, Governor Snyder, Mr. Orr or the UAW and state, if that is the case, under what circumstances you believe that Article 9, Section 24 would not bind some or all of these persons or entities.

Affidavit of Michael Nicholson, Exhibit B. Mr. Nicholson wrote this email in part to accept an invitation sent to UAW and other unions and retiree groups to attend a meeting on 10 July 2013 with representatives of both the City of Detroit and the Detroit General Retirement System. Id., Ex. A.

Since this litigation was filed on July 3, the Detroit Emergency Manager has also continued to publicly take the position that vested pensions must be cut without regard to Article 9, Section 24 of the Michigan Constitution. See the video of his 5 July 2013 interview with Detroit Public Television's MiWeek program beginning at 14 minutes, www.youtube.com/watch?v=TspCsrXmkZA.

In addition, it is clear that the Detroit Emergency Manager is moving closer to a bankruptcy filing and that the Governor is directly involved. In an article this past Monday headlined "Detroit Bankruptcy Clock Ticking" Daniel Howes reported in the Detroit News: "The governor and Emergency Manager Kevyn Orr met Monday to

3

discuss the situation. Additional meetings with creditors, legal teams and the Snyder administration are scheduled this week to determine whether Orr and his team are making enough meaningful progress in their talks with creditors, unions and pension funds to delay a bankruptcy filing." See Exhibit A attached and available online at www.detroitnews.com/article/20130716/BIZ/307160025.

As these new facts show, the Emergency Manager continues to demand that unless unions and retiree groups agree to significant cuts in retiree benefits outside of bankruptcy, he will impose such cuts in bankruptcy, following the Governor's authorization to commence a Chapter 9 proceeding, in derogation of the constitutional rights guaranteed by Article 9, Section 24. See Amended Verified Complaint, ¶ 21-25. The factual basis for plaintiffs' complaint in this litigation is thus undisputed, and stands against defendants' claim that – contrary to the unchallenged facts – their concerns about their pensions and their rights are merely hypothetical and unripe because nothing is being done to harm them. To the contrary, real harm continues to take place now: the plaintiffs continue to be told that unless they agree to cuts in their vested pension benefits now, they will be imminently be imposed through a Chapter 9 bankruptcy proceeding authorized by the Governor.

**B.** **Mischaracterization of Plaintiffs' Complaint.** Defendants' claim that plaintiffs "bring a facial constitutional challenge" to Public Act 436. State's brief, page 1. Not so. Plaintiffs begin their complaint by stating that their constitutional right to vested pension benefits "are being violated [present tense] in the emergency financial management proceedings that the State has implemented in response to Detroit's fiscal crisis and whose rights will be threatened [future tense] with abrogation if Governor

Snyder authorizes the Detroit Emergency Manager to proceed under Chapter 9 in bankruptcy." Amended verified complaint, ¶ 1. Nowhere in their complaint do plaintiffs allege that Public Act 436 is unconstitutional on its face or otherwise. (Nor do they seek relief consistent with a facial challenge.) Mischaracterizing plaintiffs' allegations has three tactical advantages for defendants. First, it allows defendants to ignore the facts on the ground, facts upon which this civil action is based. Second, it allows defendants to make their arguments without acknowledging that plaintiffs' constitutional rights under Article 9, Section 24 are being threatened now. Third, it allows defendants to argue that they can protect these constitutional rights in bankruptcy, even though Detroit's Emergency Manager has flatly and uncategorically opined to the contrary. We address these points in what follows below.

      **C.**     **Plaintiff's Request for Injunctive Relief is Neither Premature, Overbroad nor Constitutionally Infirm.** Defendants here make four arguments against injunctive relief. None has merit.

      1.     First, defendants argue that no prohibitory injunction can be issued because declaratory relief has not as yet failed, citing dictum from *Strauss v Governor*, 459 Mich 526, 532; 592 NW2d 53 (1999). State brief, pages 4-5. The Court's dictum from *Strauss* is inapplicable here for at least three reasons. First, *Strauss* involved a fight between the Governor and the State Board of Education over which constitutional provision took precedence, Article 5, Section 2 or Article 8, Section 3. This case involves the State in the person of the Governor abrogating the constitutional rights of its citizens. That is a distinction that should make a difference. Second, this case involves a very public fight in which the Governor knows very well that his Emergency Manager is

refusing to recognize the Article 9, Section 24 rights of plaintiffs and thousands of other retirees. To require this Court to first issue declaratory relief in these circumstances elevates form over substance. Third, the bankruptcy filing may be imminent, such that there may be no time for the courtesy contemplated by *Strauss.* See, e.g., www.freep.com/article/20130718/news01/307180107/detroit-prepares-file-bankruptcy-soon-friday ("Detroit prepares to file for bankruptcy as soon as Friday") and www.youtube.com/watch?v=TspCsrXmkZA, beginning at 10 minute mark. With all that said, plaintiffs would have no objection if this Court fashioned the requested preliminary relief in the form of a declaration, but only if the Governor agrees not to act contrary to the declaration before the plaintiffs have the opportunity to return to this Court and seek a prohibitory injunction.

2.    Defendants next argue that injunctive relief is premature given the opportunity for relief in bankruptcy court. State brief, page 5. They cite two Bankruptcy Code provisions: 11 USC §109(c) and 11 USC § 943(4). Neither protects against an impairment of pension benefits in violation of Article 9, Section 24. First, none of the disjunctive criteria in 109(c) for eligibility to proceed under Chapter 9 contain a basis for a challenge based on Article 9, Section 24. Second, the requirement in 11 USC § 943(4) that "the debtor is not prohibited by law from taking any action necessary to carry out the plan" may not protect Article 9, Section 24 rights because of the principle that "federal law trumps state law," which the Detroit Emergency Manager has indicated will be applied. To support this concern, we cited in our opening brief the bankruptcy court decisions in *In re City of Stockton, California,* 478 BR 8 (Bankr ED Cal 2012); and *In re City of Vallejo,* 403 BR 72 (Bankr ED Cal 2009), which we expect will be cited in a

6

Chapter 9 proceeding in support of the proposition that federal bankruptcy law supersedes Article 9, Section 24 of the Michigan Constitution.

3.      Defendants also argue that the injunction request is overbroad because "[t]his Court cannot determine, based on the record Plaintiffs present, how any bankruptcy proceeding for the City of Detroit, if filed, may impact their pension benefits or if it will at all, until the bankruptcy plan is filed with the bankruptcy court and ultimately confirmed." State brief, page 6. But this claim that plaintiffs' concerns are only hypothetical ignores the Detroit Emergency Manager's stated intent and the terms of his proposal to creditors. And it also ignores the fact that if no relief is granted now, it will likely be too late after a bankruptcy filing to protect plaintiffs' rights under Article 9, Section 24. In other words, the result, if defendants' argument is accepted, is that by the time the harm comes the citizens of the State of Michigan who are Detroit pensioners will be unable to sustain their State constitutional rights. That is precisely the plan to violate Article 9, Section 24 of the Michigan Constitution that we believe the Governor will facilitate at the request of the Emergency Manager, absent the relief we request.[2]

4.      Defendants further argue that the plaintiffs' injunction request is mandatory. State brief, page 6. It is not. As defendants recognize in making other of their arguments, the relief sought by plaintiffs' pending motion is, by its terms, clearly prohibitory.

---

[2]      The motion before the Court is a motion for preliminary injunction, not a request for final relief. While we recognize the sensitivity of this issue and this litigation, the Court should consider the appropriateness of limited discovery on the issue of communications between the Governor, the defendant State Treasurer and the Emergency Manager (and their staff and other agents) with respect to City of Detroit vested pension benefits. Thus, even it plaintiffs are found to lack standing to seek injunction, this civil action may still proceed on the claim in Complaint for declaratory relief.

**D.    Plaintiffs Have Standing to Bring This Action.** Defendants recognize that the Michigan Supreme Court restored Michigan's limited, prudential approach to standing in *Lansing School Education Ass'n v Lansing Board of Education,* 487 Mich 349, 372; 792 NW2d 686 (2010). State's brief, page 7.[3] This means that citizens have standing if they have some individual interest in the subject matter of the complaint that is not common to all the citizens of the state. 487 Mich at 356. Plaintiff retirees and vested employees meet such a test. Their pension benefits are in danger of being reduced or eliminated if the Governor is allowed to authorize a Chapter 9 bankruptcy filing. The Detroit Emergency Manager is threatening precisely that now, in an effort to coerce the plaintiffs' agreement to "significant cuts" in their vested retirement benefits. Other citizens of the state do not have such an interest. Plaintiffs have standing to seek injunctive relief.[4]

Defendants also argue that Public Act 436 expressly states (at MCL 141.1572) that it provides no cause of action. State's brief, pages 7-8. But plaintiffs are not suing for a violation of Public Act 436; they are suing over an abridgement of their constitutional

---

[3]    Despite the dissent in *Lansing School Education Ass'n* and the changing composition of the Court, the Court has given no indication that it intends to retreat from this position. To the contrary. See, *Ader v Delta College Bd of Trustees,* 493 Mich 887; 822 NW2d 221 (2012) (vacating order that had granted leave to appeal from a decision of the Court of Appeals applying *Lansing School Education Ass'n* and denying application for leave) (J. Markman dissenting).

[4]    Additionally, although not at issue with respect to plaintiffs' pending motion for preliminary injunction, this Court clearly has jurisdiction to issue a declaratory judgment under MCR 2.605. An "actual controversy" under that court rule exists when a judgment is necessary to guide a parties' future conduct in order to preserve legal rights. *UAW v Central Michigan University,* 295 Mich App 486, 495; 815 NW2d 132 (2012). In granting such relief "courts are not precluded from reaching issues before actual injuries or losses have occurred." *Id.* Accord, *Huntington Woods v Detroit,* 279 Mich App 603, 616; 761 NW2d 127 (2008); *Lake Angelus v Aeronautics Comm,* 260 Mich App 371, 376-77; 676 W2d 642 (2004).

rights.[5] A Michigan court of general jurisdiction is the proper forum for a citizen of Michigan to bring a claim of a state constitutional violation. And the relief plaintiffs seek is available through this Court. MCR 3.310 and 2.605.

     **E.**    **Plaintiffs' Constitutional Claims Are Ripe for Review.**  Defendants argue that plaintiffs' constitutional claims are not ripe because the bankruptcy filing has not yet occurred. State's brief, pages 11-12. Incredibly, they argue this knowing that the Emergency Manager has announced that he will seek to extinguish plaintiffs' Article 9, Section 24 rights should he file a Chapter 9 in response to their failure to agree now to "significant cuts" in their pensions.

     One short, practical answer is that a bankruptcy filing may well ring a bell that cannot be unrung: the trumping of plaintiffs' constitutional rights by federal law, after the sovereign has waived – through the Governor's authorization for a Chapter 9 – whatever rights the State has under the Tenth Amendment to the federal Constitution to insist on the supremacy of the State Constitution. See, *In re City of Vallejo, supra,* 403 BR 72 (Bankr ED Cal 2009)(copy attached). That is the legal opinion of the Detroit Emergency Manager (an opinion that plaintiffs have little reason to doubt for purposes of this motion[6] and that defendants do not dispute in their brief): that federal law will trump

---

[5]     The plaintiffs' pension plan gives them a right to bring such a suit. See Section 47-3-11(i)(1) of the General Retirement System Pension Plan which is also Ord. No. 29-01, § 1, 11-30-01 and is available on-line at www.rscd.org.

[6]     Plaintiffs, of course, reserve the right in bankruptcy court to argue to the contrary. But we note, for example, the holding of federal bankruptcy court in *Vallejo*: "Therefore, "by authorizing the use of chapter 9 by its municipalities, California must accept chapter 9 in its totality; it cannot cherry pick what it likes while disregarding the rest." *In re County of Orange,* 191 B.R. 1005, 1021 (Bankr. CD Cal 1996) ... Since the state must consent to a bankruptcy filing under Section 109(c)(2) [of the Bankruptcy Code], the state consents to the displacement of its own law in order to obtain the benefits uniquely available under the Bankruptcy Code." 403 BR at 76.

Article 9, Section 24 of the Michigan Constitution. See the Detroit Emergency Manager's 14 June 2013 statement to the Detroit Free Press Editorial Board quoted at ¶ 22 of the amended verified complaint. ("If we don't reach an agreement one way or the other, we feel fairly confident that the state federal law, federalism, will trump state law or negotiate.") Or put in plain terms, the constitutional rights plaintiffs are relying on here will then be a nullity.

A second short, practical answer is that the threats to ignore Article 9, Section 24 are ongoing and are being used to browbeat plaintiffs (and others) into a deal that would avoid bankruptcy but ignore their constitutional rights. Defendants admit as much at the conclusion of their brief when they urge this Court to grant their motion to dismiss now "to avoid adversely impacting the City of Detroit Emergency Manager's current efforts to reach a consensus that could achieve some financial stability for the City without recourse to bankruptcy. " State brief, page 16. We know from the verified and unrebutted complaint that the "consensus" will be reached, if at all, in violation of plaintiffs' rights. Defendants would then undoubtedly argue that any attack on that "consensus" agreement would be moot or in some other way immune to attack. The time for this issue to be decided is now.

And the law supports such a common sense finding that this case is ripe for decision now. All that is required is that "a genuine controversy exist between the parties." *Michigan Chiropractic Council v Comm'r of Ins,* 475 Mich 363, 381; 716 NW2d 561 (2006). A claim lacks ripeness only where "the harm asserted has [not] matured sufficiently to warrant judicial intervention ..." *Id.,* quoting from *Warth v Seldin,* 422 US 490, 499 n 10. A genuine controversy exists here and now. Plaintiffs are fighting

10

for their future financial well-being. And that fight will be over before it begins absent judicial intervention now.

**F.     Plaintiffs Have Stated a Claim.** Defendants' argument that plaintiffs have failed to state a claim is entirely based on the mistaken premise that plaintiffs are bringing a facial challenge to Public Act 436. State brief, page 12. Plaintiffs' claim is that the receivership under which the City of Detroit is currently operating is currently ignoring the Article 9, Section 24 rights of the City's' retirees (this is supported with multiple and direct statements from the Detroit Emergency Manager) and that in these circumstances (and this part of the complaint is in caps, bolded and underlined at the top of page 4) "it would be unconstitutional for the governor to authorize the Detroit Emergency Manager to proceed under Chapter 9." This states a claim.

**G.     Plaintiffs Have Met the Prerequisites for Injunctive Relief.** Defendants argue first that plaintiffs will not suffer irreparable harm if an injunction is not issued. State's brief, page 13. Defendants do not even attempt to argue that the loss or in the words of the Detroit Emergency Manager the "significant cuts" in plaintiffs' vested pension benefits would not constitute irreparable harm. Rather they argue that plaintiffs will have a remedy in bankruptcy. Not according to the Detroit Emergency Manager. And he would be speaking for the debtor in bankruptcy.

Second, defendants argue that the balance of harms favors them by using a claim of urgency, all as part of an argument that completely fails to account for the derogation of Michigan Constitutional rights that they intend to cause. State's brief, pages 13-14. Put another way, the defendants claim that our State Constitution can be ignored if the Governor and his agents decide that following it would complicate matters in a municipal

11

receivership. This would surprise the framers of our State Constitution, one of whom stated that the then new Article 9, Section 24 meant that a public employee with vested pension benefits, "would have the entire assets of the employer at his disposal from which to realize those benefits." 1 Official Record, Constitutional Convention 1961, p 774.

Third, defendants argue the public interest. State's brief, pages 14-15. Certainly, the public interest would be served if the Governor were to be precluded from authorizing a bankruptcy that would threaten the abrogation of constitutional rights. The people, in adopting their Constitution, including Article 9, Section 24, have spoken in that regard. And just as certainly, the public interest would not be served if the Detroit Emergency Manager were to be allowed to continue down his path all the while ignoring those constitutional rights.

## **CONCLUSION**

Plaintiffs are entitled to know whether their Article 9, Section 24 constitutional rights have any meaning in the current Detroit financial emergency. And they are entitled to know that now, and to have those rights protected. The plaintiffs' motion for preliminary injunction should be granted.

Respectfully submitted,

s/William A. Wertheimer
William A. Wertheimer (P26275)
Attorney for plaintiffs
30515 Timberbrook Lane
Bingham Farms, MI 48025
248-644-9200

Andrew Nickeloff (P37990)
Marshall J. Widick (P53942)
James A. Britton (P71157)

12

Attorneys for plaintiffs
Sachs Waldman
1000 Farmer
Detroit, MI 48226
313-496-9429
anickelhoff@sachswaldman.com

mwidick@sachswaldman.com
jabritton@sachswaldman.com

Dated: 18 July 2013

**PROOF OF SERVICE**

THE UNDERSIGNED CERTIFIES THAT ON 18 JULY 2013 THE FOREGOING
INSTRUMENT WAS SERVED UPON THE FOLLOWING:

1. Thomas Quasarano
2. Brian Devlin
3.

BY:

X    U.S. MAIL                          _____ FAX

_____ HAND DELIVERY                _____ U.S. EXPRESS MAIL
_____ UPS                          X    OTHER: email

BY:
SIGNATURE: _____

ROBBIE FLOWERS, MICHAEL WELLS,
JANET WHITSON, MARY WASHINGTON and
BRUCE GOLDMAN

                  Plaintiffs,

vs.

                                  Case No. 13-729-CZ
                                  Hon. Rosemarie Aquilina

RICK SNYDER, as the Governor of the State
of Michigan; ANDY DILLON, as the Treasurer of
the State of Michigan; and the STATE OF MICHIGAN,

                  Defendants.

_____/

| | |
|---|---|
| William A. Wertheimer (P26275) | Thomas Quasarano (P27982) |
| Attorney for plaintiffs | Brian Devlin(P34685) |
| 30515 Timberbrook Lane | Assistant Attorneys General |
| Bingham Farms, MI 48025 | PO Box 30754 |
| 248-644-9200 | Lansing, MI 48909 |
| billwertheimer@gmail.com | quasaranot@michigan.gov |

Andrew Nickeloff (P37990)
Marshall J. Widick (P53942)
James A. Britton (P71157)
Attorneys for plaintiffs
Sachs Waldman
1000 Farmer
Detroit, MI 48226
313-496-9429
anickelhoff@sachswaldman.com
mwidick@sachswaldman.com
jabritton@sachswaldman.com

_____

## AFFIDAVIT OF MICHAEL NICHOLSON

State of Michigan

County of Wayne

      Michael Nicholson, being first duly sworn, states as follows:

1

1. My name is Michael Nicholson. I am a citizen of the State of Michigan. I am employed as General Counsel by International Union, UAW. I make this affidavit based on personal knowledge.

2. On June 28, 2013, I received the email message attached hereto as Exhibit A from David Birnbaum, a lawyer with the Jones Day law firm, which is lead counsel to the Emergency Manager for the City of Detroit.

3. On July 9, 2013, I sent the email message attached hereto as Exhibit B to Mr. Birnbaum and his colleague at Jones Day, Dan Merrett.

4. Since July 9, 2013 until the time that I signed this affidavit today, I have received no response from anyone at Jones Day to the questions that I raised in Exhibit B with respect to pension benefits and Article 9, Section 24 of the Michigan Constitution.

Further Affiant sayeth not.

_____
Michael Nicholson

Subscribed and sworn to before me this 18th day of July 2013.

_Nancy S. Dennis_
Nancy S. Dennis, Notary Public
County of Macomb
State of Michigan
Acting in Wayne County
My commission expires February 10, 2017

NANCY S DENNIS
Notary Public - Michigan
Macomb County
My Commission Expires Feb 10, 2017
Acting in the County of __Wayne__

**From:** David Birnbaum <dbirnbaum@jonesday.com> 📎
**Subject:** City of Detroit -- Pension Restructuring Discussions (GRS)
**Date:** June 28, 2013 4:42:56 PM EDT
**To:** MNicholson@uaw.net
**Cc:** Evan Miller <emiller@JonesDay.com>, Brian Easley <beasley@JonesDay.com>, "David G. Heiman" <dgheiman@JonesDay.com>, Heather Lennox <hlennox@JonesDay.com>

---

2 Attachments, 4 KB

Dear Mr. Nicholson:

Following the presentations made on June 20th, outside counsel for GRS reached out to the City of Detroit for more information on, and to discuss, a pension restructuring proposal. GRS and the City of Detroit have tentatively scheduled a meeting on pension restructuring for Wednesday, July 10th, at 1 pm (location to be determined). The City will be prepared to provide more information on its developing pension restructuring proposal. Because the City expects that the proposal will impact the pension benefits of active participants of GRS, who include your members, the City would like to invite you to this meeting on July 10th, at 1 pm to participate in the discussion. We expect the meeting will last approximately 2 hours. GRS will be sending an advisor-only team (attorneys and financial advisors), and the City believes this is a good way to proceed. Please let us know at your earliest convenience if you will attend and the names of the attendees. We will contact you as soon as practicable to provide details about the meeting location.

Regards,

David



**David S. Birnbaum**

77 West Wacker Drive, Suite 3500 · Chicago, IL 60601
**DIRECT** 312.269.4005 · **FAX** 312.782.8585 · **EMAIL** dbirnbaum@jonesday.com

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

**Exhibit A**

**From:** Michael Nicholson <mnicholson@uaw.net>
**Subject:** Re: Detroit - Data room access/ July 10 and 11 meetings
**Date:** July 9, 2013 1:57:49 PM EDT
**To:** Dan Merrett <dmerrett@JonesDay.com>, "David S. Birnbaum" <dbirnbaum@jonesday.com>
**Cc:** Marshall Widick <mwidick@sachswaldman.com>, Andrew Nickelhoff <anickelhoff@sachswaldman.com>



---

Dear Messrs. Merrett and Birnbaum:

UAW has requested access to the City of Detroit data room maintained by your firm. You have responded by proffering a proposed nondisclosure agreement and release, and have made UAW's execution of such documents a condition of our access to the data room.

Please explain the legal basis for conditioning UAW's access to whatever information is obtainable through the City of Detroit data room upon our execution of the confidentiality agreement and release that you have proferred. As you know, UAW has often signed confidentiality agreement with private corporations going through financial restructurings. However, in this instance, we are dealing with a public entity, the City of Detroit. I would like to understand the basis for withholding data room information with respect to the City of Detroit based on claims of confidentiality.

As to the meetings concerning pensions and OPEB that your firm, on behalf of Mr. Orr, is conducting on July 10 and 11, 2012, we wish to attend the meetings, but reserve all rights with respect to the meetings and to such position(s) that Mr. Orr and/or your firm may seek to take with respect to such meetings.

Further to that reservation of rights, UAW continues to seek an answer from Mr. Orr and your firm to the following: please cite the basis for any claim that the UAW has the authority to compromise the vested benefits of active and/or retired UAW or former UAW members employed or formerly employed by the City of Detroit and its affiliates. As I presume you know, Article IX, Section 24 of the Michigan Constitution provides in pertinent part that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Please tell me what authority your firm and/or Mr. Orr believe gives the UAW the right to compromise vested pension benefits, despite the contrary provisions of Article IX, Section 24. Please also tell us whether Mr. Orr and/or your firm take the position that Article IX, Section 24 of the Michigan Constitution is not or may not be binding on the City of Detroit, the State of Michigan, Governor Snyder, Mr. Orr or the UAW and state, if that is the case, under what circumstances you believe that Article IX, Section 24 would not bind some or all of these persons or entities. We also seek an answer to the same questions with regard to vested post-retirement insurance benefits, but as to such the question is posed with the additional need to consider, inter alia, the holding of the United States Supreme Court in *Chemical Workers v. Pittsburgh Plate Glass*, 404 U.S. 157 (1971), which states at its footnote 20 that "[u]nder established contract principles, vested retirement rights may not be altered without the pensioner's consent."

We do not understand the July 10 and 11 multiple stakeholder meetings to which we have been invited to be a forum for negotiation of your proposed pension and retiree health care changes, but are willing to attend to obtain for our union whatever information may be provided at those meetings. Your full answers to the questions posed in the foregoing paragraphs of this message will help the UAW determine the scope of any such negotiations and the UAW's decisions regarding its representative capacity in them, about which your firm has inquired.

Please provide me with the exact location of the July 10 and 11 meetings.

Thank you.

Michael Nicholson
General Counsel - International Union, UAW
Solidarity House - 8000 East Jefferson Avenue
Detroit, Michigan 48214
UAW Office Phone: 313.926.5216
Cell Phone: 734.719.0850
Email: mnicholson@uaw.net

**Exhibit B**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*This e-mail message from Michael Nicholson is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is*