# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) ) ) | Case No. 13-53846 |
| Debtor. | ) ) ) | Hon. Steven W. Rhodes |

## OBJECTION OF THE RETIREMENT SYSTEMS TO MOTIONS OF DEBTOR FOR ENTRY OF ORDERS (I) CONFIRMING THE PROTECTIONS OF SECTIONS 362, 365 AND 922 OF THE BANKRUPTCY CODE, AND (II) EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE ENTITIES, (B) NON-OFFICER EMPLOYEES AND (C) AGENTS AND REPRESENTATIVES OF THE DEBTOR

The Police and Fire Retirement System of the City of Detroit ("PFRS") and the General Retirement System of the City of Detroit ("GRS," and together with PFRS, the "Retirement Systems") hereby submit this objection (the "Objection") to the (i) *Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order Confirming the Protections of Sections 362, 365 and 922 of the Bankruptcy Code* [Docket No. 53] (the "Stay Confirmation Motion"), and (ii) *Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non-Officer Employees and (C) Agents and Representatives of the Debtor* [Docket No. 56] (the "Stay Extension Motion," and together with the Stay Confirmation Motion, the "Stay Motions"). [1]

---

[1] This Objection is filed subject to the reservations of rights in the Appearances filed by the undersigned counsel in this case, including the Retirement Systems' right to argue that the matters involved in the *Webster* case referenced herein and the pending related cases should be determined in the state courts, and not in this Court, and that this Court lacks subject-matter jurisdiction.

## Preliminary Statement

The Stay Motions are based upon a false premise - - that there is a validly-existing bankruptcy case before this Court from which an automatic stay may arise. However, the Governor's authorization of the commencement of this case was an act that was void *ab initio*. As such, it is to be treated as if the Governor's authorization and the acts that flowed from it never occurred. Unlike the other requirements of the Bankruptcy Code for establishing the eligibility of a municipality to be a debtor under chapter 9, the determination of whether valid state authorization exists for a chapter 9 filing under Bankruptcy Code section 109(c)(2) is purely a creature of <u>state law</u>. Accordingly, a proper application of the principles of federalism and the 10th Amendment of the U.S. Constitution mandates that deference be given to the state courts of the sovereign state to determine this issue. Here, the Declaratory Judgment (defined below) entered by the state court in the *Webster* case referenced herein properly determined precisely this - - that the Governor's authorization of the commencement of this case violated the State Constitution and was therefore null and void. Even if this Court were to find that it has jurisdiction over certain matters, the Declaratory Judgment constitutes a final order against an act of the Governor - - a non-debtor entity to whom no stay applied at the time the Declaratory Judgment was entered. Respectfully, this Court has no authority to essentially sit as an appellate court and vacate the Declaratory Judgment by trying to stay its effect. Accordingly, pending any further disposition of the Declaratory Judgment on appeal in the state courts, this bankruptcy case is null and void, and the Court lacks jurisdiction in these matters. Without waiver of the foregoing, if this Court nonetheless determines that it has jurisdiction to consider substantive matters, the Retirement Systems submit that the Court should allow an opportunity for parties to

fully brief and argue the issue of whether section 109(c)(2) has been satisfied, before any consideration of the premature Stay Motions.

## Factual and Procedural Background

**A.     The Retirement Systems**

1.      As authorized by Article VII, section 22 of the Michigan Constitution and sections 4i, 4j, and 21 of the Home Rule City Act, 1909 PA 267 (as amended), M.C.L. §117.1 *et seq*. (the "Home Rule City Act"), the residents of the City established the Retirement Systems through amendments to the City's Charter of 1918, effective July 1, 1938, and effective July 1, 1941, respectively. Among other reasons, the residents of the City created the Retirement Systems to: (i) administer retirement, disability, and survivor benefits to eligible uniformed and non-uniformed City employees and their beneficiaries (*i.e.,* the participants); (ii) ensure that the City actually honors its collective bargaining agreements by tendering to the Retirement Systems the City's annual and obligatory pension contributions; and (iii) protect the vested pension benefits (*i.e.,* "accrued financial benefits") of the Retirement Systems and their participants.

2.      There are more than 32,000 active and retired employees of the City, who are participants in the Retirement Systems and whose "accrued financial benefits" the Retirement Systems must protect.

**B.     The Governor**

3.      On November 2, 2010, the people of the State of Michigan elected Richard D. Snyder to serve as their Governor (the "Governor"). On December 30, 2010, and as mandated by Article XI, section 1 of the Michigan Constitution and section 64 of the Michigan Election Law, 1954 P.A. 116, M.C.L. §168.1 *et seq.*, ("PA 116"), the Governor swore the following oath, which was later filed with the Michigan Secretary of State: "*I do solemnly swear that I will*

*support the Constitution of the United States and the Constitution of this State, and that I will faithfully discharge the duties of the office of Governor according to the best of my ability.*"

**C.  The Michigan Constitution**

4.  Article IX, section 24 of the Michigan Constitution states: "The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Mich. Const. art. IX, §24.

**D.  The Emergency Manager**

5.  On March 26, 2013, the Governor and the State Treasurer caused Kevyn Orr to be appointed as the emergency financial manager of the City pursuant to Public Act 72 of 1990, the Local Government Fiscal Responsibility Act, M.C.L. §141.1201, *et seq.* ("PA 72"). On March 28, 2013, upon the effectiveness of Public Act 436, the Local Financial Stability and Choice Act, M.C.L. §141.1541, *et seq.* ("PA 436"), Mr. Orr became, and continues to act as, the emergency manager with respect to the City under PA 436 (the "Emergency Manager").

6.  On June 14, 2013, the Emergency Manager issued his Proposal for Creditors (the "Restructuring Proposal") wherein he took the position that: (i) pension debts are "unsecured claims" that may be, and must be, impaired in any prospective Chapter 9 bankruptcy proceeding; and (ii) the City's alleged approximate $3.5 billion underfunding liability would be placed in a pool of unsecured claims comprising approximately $11.5 billion in claims, and exchanged for a *pro rata* share of an unsecured note in the face amount of $2.0 billion. The Restructuring Proposal is attached as Exhibit A to the Declaration of Kevyn D. Orr in Support of City of Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code. [Docket No. 11] (the "Orr Declaration").

7. In a June 13, 2013 interview with The Detroit Free Press[2], the Emergency Manager acknowledged that Article IX, section 24 of the Michigan Constitution prohibits the impairment Plaintiffs' vested pension benefits, but nevertheless expressed his intention to evade the Michigan Constitution through a federal Chapter 9 bankruptcy proceeding:

> Q: You said in this report that you don't believe there is an obligation under our state constitution to pay pensions if the city can't afford it?
>
> A: The reason we said it that way is to quantify the bankruptcy question. We think federal supremacy trumps state law.
>
> Q: Which the 9th Circuit agrees for now.
>
> A: It is what it is – so we said that in a soft way of saying, "Don't make us go into bankruptcy." **If you think your state-vested pension rights, either as an employee or retiree – that's not going to protect you. If we don't reach an agreement one way or the other, we feel fairly confident that the state federal law, federalism, will trump state law** or negotiate. The irony of the situation is we might reach a deal with creditors quicker because employees and retirees think there is some benefit and that might force our hand. That might force a bankruptcy.

**E.     The Pre-Petition Lawsuits**

8. On July 3, 2013, four participants of GRS filed two separate suits against the Governor and the State Treasurer in the Ingham County Circuit Court, both seeking: (i) a declaration that PA 436 violates Article IX, section 24 of the Michigan Constitution by purporting to permit the impairment of accrued financial benefits in a Chapter 9 bankruptcy proceeding; and (ii) a temporary restraining order or preliminary injunction precluding the Governor and Treasurer from authorizing a Chapter 9 bankruptcy proceeding. See *Flowers v.*

---

[2] *See Q & A with Kevyn Orr: Detroit's Emergency Manager Talks About City's Future*, Detroit Free Press (June 16, 2013), *available at* http://www.freep.com/article/20130616/OPINION05/306160052/kevyn-orr-detroit-emergency-manager-creditors-fiscal-crisis.

5

*Snyder*, Case No. 13-729-CZ; *Webster v. Snyder*, Case No. 13-734-CZ (the "Companion Cases").

9. On July 17, 2013, the Retirement Systems filed a Complaint for Declaratory Relief against the Governor and the Emergency Manager in the Ingham County Circuit Court, Case No. 13-768-CZ (the "State Court Lawsuit" and, together with the Companion Cases, the "Pre-petition Lawsuits") whereby the Retirement Systems requested that this Court issue an Order:

(a) declaring that PA 436 does not expressly grant to the Governor the authority to authorize the Emergency Manager to take actions that will result in the impairment of the City of Detroit's pension debts, but rather, when read in conjunction with Article IX, section 24 and Article I, section 10 of the Michigan Constitution, requires that the Governor refrain from authorizing the Emergency Manager to take any action that causes the City's pension debts to be subject to impairment under Chapter 9 or, alternatively, that, if PA 436 implicitly grants to the Governor the authority to authorize the Emergency Manager to take actions that impair the City of Detroit's pension debts, then PA 436 contravenes Article IX, section 24 and Article I, section 10 of the Michigan Constitution and is of no force or effect;

(b) declaring that PA 436 does not expressly grant to the Emergency Manager the authority to take actions that will result in the impairment of the City of Detroit's pension debts, but rather, when read together with Article IX, section 24 and Article I, section 10 of the Michigan Constitution, precludes the Emergency Manager from taking any action that causes the City's pension debts to be subject to impairment under Chapter 9 or, alternatively, that, if PA 436 implicitly grants to the Emergency Manager the authority to take actions that impair the City of Detroit's pension debts, then PA 436 contravenes Article IX, section 24 and Article I, section 10 of the Michigan Constitution and is of no force or effect;

(c) enjoining the Emergency Manager, if necessary, from acting pursuant to any future unconstitutional Chapter 9 authorization of the Governor; and

(d) granting to Plaintiffs any further such relief this Court deems equitable and just.

The Complaint for Declaratory Relief is attached as Exhibit 6.1 to the Stay Extension Motion [Docket No. 56].

10. The Retirement Systems also filed a motion for expedited briefing schedule. At 4:55 p.m. on July 17, 2013, the Retirement Systems served the Governor's Office with their complaint for declaratory relief and motion for expedited briefing. At 10:25 a.m. on July 18, 2013, the Retirement Systems served the Emergency Manager's Office with their complaint for declaratory relief and motion for expedited briefing.

11. On July 19, 2013 hearing, the Court granted the Retirement Systems' motion for expedited briefing schedule and ordered that the Retirement Systems file their motion for declaratory judgment by July 23, 2013; Defendants file their response brief(s) by July 26, 2013; and a hearing be held on July 29, 2013 at 9:00 a.m. The Order Setting Expedited Briefing Schedule in the State Court Lawsuit is attached as Exhibit 6.3 to the Stay Extension Motion [Docket No. 56].

12. On July 19, 2013, the Circuit Court for Ingham County, Michigan, in the case entitled *Gracie Webster, et al. v. The State of Michigan, et al.*, Case No. 13-734-CZ (Hon. Rosemarie Aquilina) also entered its Order of Declaratory Judgment (the "Declaratory Judgment"), a copy of which is attached as Exhibit 6.4 to the Stay Extension Motion [Docket No. 56]. In the Declaratory Judgment, it is determined, among other things, that the State of Michigan's authorization of the commencement of this chapter 9 case was violative of the State Constitution and was therefore given without power or authority. As such, the authorization of the commencement of this case was void.

13. It is anticipated that the Defendants will appeal from the Declaratory Judgment. Pending such appeal process, however, per the Declaratory Judgment, the Retirement Systems

7

respectfully submit that this Court does not have subject-matter jurisdiction to proceed with this case.

**F.    The City's Bankruptcy Case**

14.    On July 18, 2013 (the "Petition Date"), the City filed its Voluntary Petition under chapter 9 of title 11 of the United States Code, 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code").

15.    On July 19, 2013, in response to the Pre-Petition Lawsuits, the City filed the Stay Motions. The Stay Confirmation Motion requests entry of an order "confirming" the protections of sections 362 and 922(a)(1) of the Bankruptcy Code, applying the protections of section 922(a)(1) to the Emergency Manager and City Officers (as defined in the motion) and "confirming" the protections afforded by section 365 of the Bankruptcy Code with respect to executory contracts and unexpired leases.

16.    The Stay Extension Motion requests that the Court use its powers under section 105(a) of the Bankruptcy Code to extend the automatic stay provisions in sections 362 and 922 of the Bankruptcy Code to the Governor, the State Treasurer, the Local Emergency Financial Assistance Loan Board of the State of Michigan, City employees that are not officers or inhabitants of the City, and agents and representatives of the Governor and the Emergency Manager.

## Argument

**I.    The City's Requests for Confirmation and Extension of the Automatic Stay Must Be Denied Because No Valid Bankruptcy Case Is Pending Before this Court.**

In order to consider the application of the automatic stay under section 362 and/or section 922(a) of the Bankruptcy Code, there must first be a valid underlying bankruptcy case from which the stay may arise. As discussed below, however, there is not a valid bankruptcy case in existence here. Pursuant to 28 U.S.C. § 1334 (a) and (b), there is neither a "case under title 11"

8

nor any proceeding arising under title 11 or arising in or related to a case under title 11.  Neither the United States District Court for the Eastern District of Michigan nor this Court has jurisdiction over the City's putative case under 28 U.S.C. § 1334(a) and (b) and, therefore, lack authority to hear and determine the City's Stay Motions pursuant to 28 U.S.C. § 157(a) and (b).

The Bankruptcy Code is explicit as to who may be a debtor under chapter 9.  Pursuant to Bankruptcy Code section 109(c)(2), "[a]n entity may be a debtor under chapter 9 of [the Bankruptcy Code] *if and only if* such entity . . . is *specifically authorized*, in its capacity as a municipality or by name, to be a debtor under such chapter *by State law*, or by a governmental officer or organization *empowered by State law* to authorize such entity to be a debtor under such chapter." 11 U.S.C. § 109(c)(2) (emphasis added).

Here, no valid authorization exists under State law for the City to be a chapter 9 debtor.  The Governor is bound to uphold the State Constitution, including the provisions of Article IX, section 24.  He does not have the authority to unilaterally abrogate provisions of the State Constitution.  Similarly, he cannot delegate authority that he does not have and cannot delegate to a third party (i.e., the Emergency Manager) authority to take actions that would result in an abrogation of constitutional provisions.  In essence, the Governor cannot do indirectly what he cannot do directly.

Under PA 436, authorization to commence a petition for relief under chapter 9 of the Bankruptcy Code rests with the Governor. *See* M.C.L. § 141.1556(1)-(2) and M.C.L. §141.1558.  However, PA 436 does not authorize the Governor to authorize a chapter 9 filing if such filing would be in breach of the Michigan Constitution - - indeed, the statute could not do so inasmuch as the state legislature does not have the authority to simply legislate amendments to the Michigan Constitution.

9

Under the Michigan Constitution, "all political power is inherent in the people," and it "remains there, except as delegated by Constitution or statute." *Public Schools of Battle Creek v. Kennedy*, 245 Mich. 585, 587 (1929) (quoting Mich. Const. art. I, § 1). "Public officers have and can exercise only such powers as are conferred on them by law[.]" *Roxborough v. Michigan Unemployment Compensation Comm.*, 309 Mich. 505, 510 (1944). Accordingly, the Governor can only exercise the power granted to him by law, and he is unable to act in violation of the Constitution. *See also Straus v. Governor*, 459 Mich. 526, 534 (1999) ("The Governor's power is limited only by constitutional provisions that would inhibit the Legislature itself."). It is thus clear that the Michigan Constitution provides clear limitations on actions that may be taken by each branch of government, and no branch has the authority to eradicate constitutional guarantees. *See Oshtemo Charter Twp. v. Kalamazoo County Rd. Comm'n*, 2013 Mich. App. LEXIS 1163, 19 (Mich. Ct. App. June 25, 2013) ("The Legislature's authority does not extend to eradicating constitutional guarantees.").

Michigan courts have long held that a Governor's actions outside the confines of the Michigan Constitution are "null and void." In the early Michigan Supreme Court case of *Dullam v. Willson*, the court found unconstitutional the Governor's action in attempting to remove a state school trustee from his post without a hearing. *Dullam v. Willson*, 53 Mich. 392 (1884). In *Dullam*, Justice Cooley noted:

> Courts, in determining whether rights exist, or whether vested rights have ceased to exist, do not act necessarily or usually as appellate tribunals, whose judgments operate on the tribunals or persons whose invasions of right are complained of. They may or may not do so. *But in a constitutional government the action of all persons, official or private, which is in violation of constitutional rights, is simply null and void, and usually needs no reversal. And the action of any department of government, whether legislative, executive or judicial, beyond its jurisdiction, or against the constitutional limitations of its authority, is in law the same as if*

10

> *there had been no action, and cannot be recognized as having legal effect.*

*Id.* at 409-10 (Cooley, J., concurring) (emphasis added).

Given this legal framework, it is clear that Governor Snyder lacks the power to act if his actions violate the Michigan Constitution. Actions taken by Governor Snyder that are outside of his constitutional power are *ultra vires*. "The term 'ultra vires' means outside the scope of authority." *McCartney v Attorney General*, 231 Mich. App. 722, 726 (1998) (internal citation omitted). "Thus, if the Governor acts outside the scope of his authority, his actions are considered ultra vires." *McCartney* at 726.

*Ultra vires* acts are void *ab initio*. *See, e.g.,McKane v. City of Lansing*, 1998 U.S. App. LEXIS 649 (6th Cir. Jan. 14, 1998) (city council's *ultra vires* adoption of an early retirement plan was void *ab initio* when it was improperly adopted via a resolution instead of an ordinance); *Utica State Sav. Bank v. Oak Park*, 279 Mich. 568, 577 (1937) ("Surely no one, in view of the constitutional, statutory and charter provisions noted herein, could successfully assert that the legislature had the power to make a contract of this character in behalf of the defendant village. It follows that notwithstanding the remedial act of the legislature, the contract under which plaintiffs assert their rights was void in its inception and still remains so.").

If an act is void *ab initio*, it is as though the act never occurred in the first place. *See Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 102 (2012) (relying upon Black's Law Dictionary (9th ed.) and defining void *ab initio* as "[n]ull from the beginning, as from the first moment. . ."). "In short, it has become recognized as a truism that what a municipality has no power to do, it has not done merely because it tried to do it." *Sommers v. Flint*, 355 Mich. 655, 668 (1959) (citation omitted). The *Sommers* court found an *ultra vires* act by a municipal corporation void

and noted that "the Constitution itself is made to define, limit and apportion the powers of the government it creates or controls." *Id.* at 673.

Governor Snyder exceeded the confines of his authority under the Michigan Constitution by unlawfully authorizing the Emergency Manager to file a chapter 9 petition that will impair constitutional rights guaranteed to the State's citizens, and his action is therefore void *ab initio*. Because Governor Snyder's action was void *ab initio*, the Emergency Manager had no authority to file a chapter 9 petition under PA 436, and his actions in doing so were similarly void *ab initio*. As a result, the filing of the petition for relief under chapter 9 was void, of no force and effect, a legal nullity that must be treated as though it never occurred. This is precisely what was determined and held by the State court in the Declaratory Judgment.

Therefore, since no valid chapter 9 case is pending, this Court has no jurisdiction to hear or determine the Stay Motions, and no relief requested by the City may be granted.

**II.     The Determination of Whether the City Is Authorized to Be a Chapter 9 Debtor is Purely a Matter of State Law and that Determination Has Been Properly Made by a State Court.**

Michigan state courts are the most appropriate forum to determine the state-law issue of whether the City received valid authorization from the Governor to file a petition for relief under chapter 9. As stated above, the eligibility determination under section 109(c)(2) presents a *question purely of state law*. *In re City of Stockton*, 475 B.R. 720, 721 (Bankr. E.D. Cal. 2012) (all chapter 9 eligibility issues *except* § 109(c)(2) are creatures of federal law, and federal law provides the rule of decision) (emphasis added); *In re City of Stockton*, 2013 Bankr. LEXIS 2416, 21 (Bankr. E.D. Cal. June 12, 2013) ("California law governs the question whether the [City of Stockton] is authorized to be a chapter 9 debtor."). As one bankruptcy court has observed, states "act as gatekeepers to their municipalities' access to relief under the Bankruptcy

12

9221704.7 14893/161046

13-53846-tjt    Doc 141    Filed 07/23/13    Entered 07/23/13 22:49:42    Page 12 of 19

Code." *In re City of Vallejo*, 403 B.R. 72, 76 (Bankr. E.D. Cal. 2009), *aff'd IBEW, Local 2376 v. City of Vallejo (In re City of Vallejo)*, 432 B.R. 262 (E.D. Cal. 2010).

If states serve as the gatekeepers of access to chapter 9, and if the satisfaction of the eligibility requirement under Bankruptcy Code section 109(c)(2) is a matter purely of state law, then it stands to reason that the state courts (which are a co-equal branch with the executive branch of the sovereign entity) are the appropriate forum for the determination of whether valid authorization of a chapter 9 filing has been granted under state law. Put another way, it is simply not the province of a bankruptcy court to determine if it has jurisdiction under section 109(c)(2). This is also logically sound because if the bankruptcy court does not have jurisdiction, its determinations are null and void in any event.

Bankruptcy Code sections 109, 903, and 904, and indeed the entire structure of chapter 9 evince an abiding sensitivity to the contours of federalism and the protections of the 10th Amendment to the U.S. Constitution. To that end, the sovereignty of the state - - including its judiciary - - should be given proper deference and respect. Accordingly, the Declaratory Judgment should be respected, and any appeal process that ensues should proceed in the state courts.

**III.    The City's Requests For Relief Inappropriately Ask this Court to Review the State Court's Declaratory Judgment In Violation of the *Rooker-Feldman* Doctrine.**

The City's continuation of its unauthorized chapter 9 case and the relief it requests in the Stay Motions amount to a collateral attack that seeks to vacate the Declaratory Judgment. This Court is an Article I court. Congress has neither conferred any authority on this Court to review state court judgments, nor is such appellate review permissible under the United States Constitution. Under the Rooker-Feldman doctrine, the City's case and the Stay Motions must be dismissed.

13

The Rooker-Feldman doctrine is confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *See Kapla v. Fannie Mae (In re Kapla)*, 485 B.R. 136, 143 (Bankr. E.D. Mich. 2012) (internal citations omitted). For Rooker-Feldman to apply, the party asserting claims in federal court must have first lost in state court. *Id.* Appellate jurisdiction to reverse or modify a state-court judgment is lodged exclusively in the United States Supreme Court, and federal district courts are empowered to exercise original, not appellate, jurisdiction. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283-84 (2005).

As stated, the Declaratory Judgment is dispositive on the issue of whether the Governor had authority to authorize the chapter 9 petition. The continuation of the case by the City and the relief requested in the Stay Motions seeks to undermine and undo the Declaratory Judgment. The Stay Extension Motion seeks to stay actions against the Governor (the losing party in the *Webster* action) and stop all litigation in the Pre-Petition Lawsuits. Extending the automatic stay to the Governor will enable the Governor to use this Court as a forum for review and re-litigation of issues already determined by the *Webster* court in violation of the Rooker-Feldman doctrine. The Stay Extension Motion must be denied for this reason.

**IV.     Even if this Court Determines that It Has Subject Matter Jurisdiction, No Basis Exists to Extend the Automatic Stay to Non-Debtor Parties.**

If the Court determines that it has subject matter jurisdiction over this case, the Stay Motions must still be denied because the City has failed to satisfy the requirements for extending the automatic stay to non-debtor parties. The filing of a voluntary petition "operates as a stay, applicable to all entities, of – (1) the commencement or continuation, …, of a judicial … proceeding *against the debtor* that was or could have commenced before the commencement of

14

the case … ." 11 U.S.C. §362(a)(1) (emphasis added). The City, not the Emergency Manager or the Governor, is the putative debtor in this case and only the City would receive the protections of the automatic stay imposed by section 362(a)(1). Section 922(a)(1) of the Bankruptcy Code expands the scope of the section 362 automatic stay and stays "the commencement or continuation … of a judicial, administrative, or other action or proceeding against an officer or inhabitant of the debtor that *seeks to enforce a claim* against the debtor." 11 U.S.C. §922(a)(1) (emphasis added). The Pre-petition Lawsuits do not seek to enforce *claims* against the City; they seek to preserve constitutional rights. Thus, section 922(a)(1) of the Bankruptcy Code cannot be used as a basis for extending the automatic stay to non-debtor parties, such as the Emergency Manager[3] or the Governor.

Extending the automatic stay to non-debtor parties is justified only in "unusual circumstances." *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 861 (6th Cir. 1992). Before the Court may use its equitable powers under section 105(a) of the Bankruptcy Code to issue an injunction extending the automatic stay to protect non-debtor parties such as the Governor, the City must demonstrate that unusual circumstances exist which justify granting such extraordinary relief <u>and</u> must prove by clear and convincing evidence that an injunction is warranted based on the following four factors: (i) whether the movant has shown a reasonable probability of success on the merits; (ii) whether the movant will be irreparably injured by denial of the relief; (iii) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (iv) whether granting the preliminary relief will be in the public interest. *See Amedisys, Inc. v. Nat'l Century Fin. Enters. (In re Nat'l Century Fin. Enters.)*, 423 F.3d 567,

---

[3] Although the Emergency Manager arguably acts as an officer or agent of the City, section 922(a)(1) does not stay the Pre-petition Lawsuits against the Debtor because they do not seek to enforce *claims* against the City or the Emergency Manager.

15

577-579 (6th Cir. 2005); *Mcternan v. City of New York*, 577 F.3d 521, 527 (3d Cir. 2009) (internal quotations omitted). The Stay Extension Motion is procedurally defective, the City has not demonstrated that unusual circumstances exist for extending the automatic stay, the City failed to meet its burden of proof for obtaining an injunction, and the Stay Extension Motion must be denied.

Procedurally, the City was required to initiate an adversary proceeding to obtain an injunction extending the automatic stay. *See Amer. Imaging Servs. v. Eagle-Pitcher Indus., Inc. (In re Eagle-Picher Indus., Inc.).*, 963 F.2d 855, 857-59 (6th Cir. 1992) (normally a debtor initiates an adversary proceeding in order to request a § 105(a) preliminary injunction); *cf. In re LTV Steel Co., Inc.*, 264 B.R. 455, 462-63 (Bankr. N.D. Ohio 2001) (a debtor is not required to initiate an adversary proceeding in order to move the bankruptcy court to <u>enforce the automatic stay based on 362(a)(3)</u> since the stay is self-executing with respect to actions against property of the estate and no injunction is needed.) The City has not done so, and the Stay Extension Motion must be denied because it is procedurally defective.

The City also has not demonstrated "unusual circumstances" sufficient to warrant extending the automatic stay to non-debtor parties. *Eagle-Picher* is clearly inapposite. "Unusual circumstances" exist where there is an "identity between the third party and the debtor such that a judgment against the third party would, in effect, be a judgment against the debtor." *Id.* There is no identity of interests between the City and the non-debtor parties (*e.g.,* the Governor or the State Treasurer) that it seeks to protect. A judgment obtained in any one of the Pre-petition Lawsuits will not be a judgment against the City, and the City has failed to proffer any cognizable reason to justify another conclusion. The City has failed to demonstrate unusual

16

9221704.7 14893/161046
13-53846-tjt    Doc 141    Filed 07/23/13    Entered 07/23/13 22:49:42    Page 16 of 19

circumstances sufficient to warrant extending the automatic stay, and the relief requested must be denied.

Moreover, the City has not proffered any evidence, let alone clear and convincing evidence, that an injunction is warranted in this case. The Court, therefore, cannot find that the City has satisfied its burden of proof and its request for an injunction under section 105(a) of the Bankruptcy Code must be denied.

## V. Reservation of Rights to Raise Additional Arguments and Joinder in Arguments Asserted by Other Parties.

In addition to the arguments made in this Objection, the Retirement Systems submit that the relief requested in the Stay Motions must be denied because such relief is prohibited by: (i) *res judicata,* (ii) collateral estoppel, and (iii) the Anti-Injunction Act, 28 U.S.C. §2283; and (iv) principles of abstention. The Retirement Systems reserve their rights to supplement this Objection and request the opportunity to submit additional briefing on these arguments and any others, as needed.

The Retirement Systems join in and concur with the Objections filed by:

- The Michigan Council of the American Federation of State, County & Municipal Employees, AFL-CIO [Docket No. 84]; and,

- Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington, Bruce Goldman and the International Union, UAW [Docket No. 125];

## Conclusion

For the reasons set forth herein, the Retirement Systems respectfully request that this Court deny the Stay Motions. If this Court nonetheless determines that it has jurisdiction to consider substantive matters, the Retirement Systems submit that the Court should allow an

opportunity for parties to fully brief and argue the issue of whether section 109(c)(2) has been satisfied, before any consideration of the premature Stay Motions.

        Respectfully submitted,

        CLARK HILL PLC


        /s/ Robert D. Gordon
        Robert D. Gordon (P48627)
        Shannon L. Deeby (P60242)
        Evan J. Feldman (P73437)
        151 South Old Woodward Avenue
        Suite 200
        Birmingham, Michigan 48009
        Telephone: (248) 988-5882
        Facsimile: (248) 988-2502
        rgordon@clarkhill.com

Dated: July 23, 2013        *Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| | ) | |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on July 23, 2013, the Objection of the Retirement Systems to Motions of Debtor for Entry of Orders (I) Confirming the Protections of Sections 362, 365 and 922 of the Bankruptcy Code, and (II) Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non-Officer Employees and (C) Agents and Representatives of the Debtor was filed using the Court's CM/ECF system, which CM/ECF system will send notification of such filing to all parties of record.

CLARK HILL PLC

/s/ Robert D. Gordon
Robert D. Gordon (P48627)
Shannon L. Deeby (P60242)
Evan J. Feldman (P73437)
151 South Old Woodward Avenue
Suite 200
Birmingham, Michigan 48009
Telephone: (248) 988-5882
Facsimile: (248) 988-2502
rgordon@clarkhill.com

Dated: July 23, 2013   *Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*