**Exhibit 6**

Discovery Requests

Defendant Syncora Guarantee Inc.'s Emergency Motion to Dissolve the
Temporary Restraining Order and Conduct Expedited Discovery

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| In re | ) Chapter 9 |
| | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) |

**SYNCORA GUARANTEE INC., AND SYNCORA CAPITAL ASSURANCE INC.'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO THE DEBTOR**

Pursuant to Local Rule 7026-3 of the United States Bankruptcy Court of the Eastern District of Michigan and Rules 26 and 34 of the Federal Rules of Civil Procedure, Syncora Holdings Ltd., Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (collectively, "Syncora") request that the Debtor City of Detroit (the "Debtor" or the "City") produce for inspection and copying all documents and tangible things requested below in accordance with the Definitions and Instructions set forth below at the offices of their counsel, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois, by August 2, 2013. Each of the following requests is continuing in nature, such that if the City obtains or discovers additional responsive documents and things at a later date, such documents and things are to be made available to Syncora for inspection and copying.

## **DEFINITIONS**

1. The terms "you" or "The City of Detroit" or the "City" mean the Debtor City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including, but not limited to, Emergency Manager Kevyn Orr and his advisors.

2. The term "Syncora" means Syncora Holdings Ltd., Syncora Guarantee Inc. and Syncora Capital Assurance Inc.

3.     "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation, as defined in paragraph 11 of the *Motion of Debtor for Entry of an Order (i) Authorizing the Assumption of that Certain Forbearance and Optional Termination Agreement Pursuant to Section 365(a) of the Bankruptcy Code, (ii) Approving Such Agreement Pursuant to Rule 9019, and (iii) Granting Related Relief* [Docket No. 17] ("Motion to Assume Forbearance Agreement").

4.     "Swap Counterparty" shall have the definition given that term in the Forbearance Agreement.

5.     "U.S. Bank" means U.S. Bank National Association.

6.     The term "Forbearance Agreement" means the Forbearance and Optional Termination Agreement executed as of July 15, 2013 and attached as Exhibit 6 to the Motion to Assume Forbearance Agreement.

7.     The term "Collateral Agreement" has the meaning given that term in the Forbearance Agreement.

8.     The term "Swap Agreement" has the meaning given that term in the Forbearance Agreement.

9.     The term "General Receipts Subaccount" has meaning given that term in the Collateral Agreement.

10.     The "Optional Termination Amount" has the meaning given that term in the Forbearance Agreement.

11.     "Certificates of Participation" shall have the meaning given that term in paragraphs 11 and 12 of the Motion to Assume Forbearance Agreement.

12. "Document" shall have the full meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure, and in particular includes (but is not limited to) every writing or record of every type and description, including letters, correspondence, diaries, memoranda, tapes, electronic data or storage, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, films, reports, financial statements, applications, emails, and tests, however produced or reproduced, in the City's possession, custody, or control. "Document" also includes all copies and drafts of every writing or record when the copy or draft is not identical to the original.

13. "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

14. The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

15. The terms "including," "include" or "includes" mean including, but not limited to.

16. The terms "each," "any," and "all" shall be construed to mean "each and every."

17. The use of the singular form of a noun includes the plural form, and vice versa.

## INSTRUCTIONS

1. Each Request extends to all documents in the City's possession, custody, or control or in the possession, custody, or control of anyone acting on the City's behalf. A document is to be deemed in the City's possession, custody, or control if it is in the City's physical custody, or if it is in the physical custody of any person and the City (i) owns such

3

document in whole or in part; (ii) has a right, by contract, statute, or otherwise to use, inspect, examine, or copy such document on any terms; (iii) has an understanding, express or implied, that the City may use, inspect, examine, or copy such document on any terms; or (iv) has, as a practical matter, been able to use, inspect, examine or copy such document when the City sought to do so.

2.      If the location of any requested document is known but the document is not produced on the ground that the document is not in the City's possession, custody, or control, identify the document and identify the person believed to have possession, custody, or control of the document.

3.      The response shall expressly indicate if no responsive documents are known to exist.

4.      All documents should be produced in their entirety without redaction and should include all attachments and enclosures.

5.      The response should state whether the City will produce documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in the Request.

6.      The response to each Request shall state, with respect to each item or category, that production will be made or inspection will be permitted as requested, unless the Request is objected to, in which event the reason(s) for objection shall be stated.  If objection is made to part of a Request, the part shall be specified; documents responsive to the remainder of the Request shall be produced.  Any such objection shall not extend the time within which the City must otherwise respond to a Request to which no specific objection has been made.

4

7. With respect to any documents or information withheld on a claim of attorney–client privilege, the attorney work product doctrine, or any other applicable privilege, the response shall provide an express statement of the asserted privilege that includes the following information: (i) the applicable date; (ii) the identity of the author(s), including the business or legal title(s) or position(s); (iii) the identity of the recipient(s), including business or legal title(s) or position(s); (iv) the subject matter of the document; (v) the identity of all other persons who received copies; and (vi) the specific factual basis of the claimed privilege or other protection from discovery.

8. These Requests shall be deemed continuing in nature to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure.

## DOCUMENT REQUESTS

1. All documents relating to the Forbearance Agreement, including but not limited to prior drafts of the Forbearance Agreement, documents relating to the negotiation of the Forbearance Agreement, documents relating to any alternative proposed structures of the Forbearance Agreement and documents relating to the decision to enter into the Forbearance Agreement.

2. All documents relating to the General Receipts Subaccount, including but not limited to documents showing the flow of funds into, and out of, the General Receipts Subaccount.

3. All documents relating to the City's ability to pay the Optional Termination Amount.

4. All documents relating to the Swap Agreements.

5

5.     All documents relating to communications with U.S. Bank regarding the Holdback Account and/or the General Receipts Subaccount

6.     All documents relating to the validity of the Certificates of Participation.

7.     All documents relating to any non-disclosure agreement between the City and the Swap Counterparties.

8.     All documents which the City intends to rely upon in connection with the Hearing on its Motion to Assume Forbearance Agreement.

Dated:  July 23, 2013          /s/ *Ryan Blaine Bennett*
                               James H.M. Sprayregen, P.C.
                               Ryan Blaine Bennett
                               Stephen C. Hackney
                               KIRKLAND & ELLIS LLP
                               300 North LaSalle
                               Chicago, Illinois 60654
                               Telephone:     (312) 862-2000
                               Facsimile:     (312) 862-2200

                                    - and -

                               Stephen M. Gross
                               David A. Agay
                               Joshua Gadharf
                               **MCDONALD HOPKINS LLC**
                               39533 Woodward Avenue
                               Bloomfield Hills, MI 48304
                               Telephone:     (248) 646-5070
                               Facsimile:     (248) 646-5075

                               *Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | ) Chapter 9 |
|  | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
|  | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
|  | ) |

## SYNCORA GUARANTEE INC., AND SYNCORA CAPITAL ASSURANCE INC.'S NOTICE OF DEPOSITION TO DEBTOR CITY OF DETROIT

PLEASE TAKE NOTICE THAT, pursuant to Local Rule 7026-3 of the United States Bankruptcy Court of the Eastern District of Michigan and Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, Syncora Holdings Ltd., Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (collectively, "Syncora") will take the deposition upon oral examination of the Debtor City of Detroit ("Debtor" or the "City") at 9:00 am EST on August 9, 2013 at the law offices of Mantese Honigman Rossman and Williamson, P.C., 1361 E. Big Beaver Rd., Troy, Michigan 48083 or at such other time and place as may be agreed upon by counsel for the parties. The deposition will be recorded by videotape and stenographer. The deposition will continue from day to day until completed.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Rule 30(b)(6), the City is required to designate and produce one or more officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the matters set forth in Schedule A. The person(s) so designated shall be required to testify as to each of those matters known or reasonably available to the City.

Dated: July 23, 2013

/s/ *Ryan Blaine Bennett*

James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
**MCDONALD HOPKINS LLC**
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone:    (248) 646-5070
Facsimile:    (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*

2

**SCHEDULE A**

**DEFINITIONS**

1. The terms "you" or "The City of Detroit" or the "City" mean the Debtor City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including, but not limited to, Emergency Manager Kevyn Orr and his advisors.

2. The term "Syncora" means Syncora Holdings Ltd., Syncora Guarantee Inc. and Syncora Capital Assurance Inc.

3. The term "FGIC" shall mean Financial Guaranty Insurance Company.

4. "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation, as defined in paragraph 11 of the *Motion of Debtor for Entry of an Order (i) Authorizing the Assumption of that Certain Forbearance and Optional Termination Agreement Pursuant to Section 365(a) of the Bankruptcy Code, (ii) Approving Such Agreement Pursuant to Rule 9019, and (iii) Granting Related Relief* [Docket No. 17] ("Motion to Assume Forbearance Agreement").

5. "Swap Counterparty" shall have the definition given that term in the Forbearance Agreement.

6. "U.S. Bank" shall mean U.S. Bank National Association.

7. The term "Forbearance Agreement" means the Forbearance and Optional Termination Agreement executed as of July 15, 2013 and attached as Exhibit 6 to the Motion to Assume Forbearance Agreement.

8. The term "Collateral Agreement" has the meaning given that term in Forbearance Agreement.

9. The term "Transaction Documents" has the meaning given that term in the Forbearance Agreement.

3

10.     The term "Holdback Account" has the meaning given that term in the Collateral Agreement.

11.     The term "General Receipts Subaccount" has the meaning given that term in the Collateral Agreement.

12.     The term "Termination Rights" has the meaning given that term in the Forbearance Agreement.

13.     The term "Motion for a Temporary Restraining Order" shall mean the action described in paragraph 25 of the Motion to Assume Forbearance Agreement.

14.     "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

15.     The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

16.     The terms "including," "include" or "includes" mean including, but not limited to.

17.     The terms "each," "any," and "all" shall be construed to mean "each and every."

18.     The use of the singular form of a noun includes the plural form, and vice versa.

## DEPOSITION TOPICS

1.     The Forbearance Agreement, including but not limited to its terms and the City's ability to exercise the Termination Right.

2.     The negotiations regarding the Forbearance Agreement, including but not limited to the participants in those negotiations, the decision to enter into the Forbearance Agreement,

4

and any non-disclosure agreement entered into with any party relating to the negotiations of the Forbearance Agreement.

3.      The operation of the Holdback Account and the General Receipt Subaccount, including but not limited to the amount of money that flows to the City from the General Receipts Subaccount and the City's current uses of the funds in the General Receipts Subaccount.

4.      The terms of the Collateral Agreement.

5.      The occurrence of any Events of Default, Termination Events, or Early Termination Events under the Forbearance Agreement or any Transaction Documents.

6.      Communications with US Bank, the Swap Counterparties, and/or the Service Corporations regarding the Operation of the Collateral Agreement.

7.      The City's efforts to negotiate with Syncora.

8.      Communications with FGIC regarding the Forbearance Agreement, the Swap Agreement, or the Collateral Agreement.

9.      The irreparable harm the City would suffer if not granted access to the funds in the General Receipts Subaccount.

10.      The City's Motion for a Temporary Restraining Order.

5

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | ) Chapter 9 |
| | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) |

## SYNCORA GUARANTEE INC., AND SYNCORA CAPITAL ASSURANCE INC.'S NOTICE OF DEPOSITION TO UBS AG

PLEASE TAKE NOTICE THAT, pursuant to Local Rule 7026-3 of the United States Bankruptcy Court of the Eastern District of Michigan and Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, Syncora Holdings Ltd., Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (collectively, "Syncora") will take the deposition upon oral examination of UBS AG ("UBS") at 9:00 am EST on August 9, 2013 at the law offices of Mantese Honigman Rossman and Williamson, P.C., 1361 E. Big Beaver Rd., Troy, Michigan 48083 or at such other time and place as may be agreed upon by counsel for the parties. The deposition will be recorded by videotape and stenographer. The deposition will continue from day to day until completed.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Rule 30(b)(6), the UBS AG ("UBS") is required to designate and produce one or more officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the matters set forth in Schedule A. The person(s) so designated shall be required to testify as to each of those matters known or reasonably available to UBS AG ("UBS").

Dated: July 23, 2013

/s/ *Ryan Blaine Bennett*

James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
**MCDONALD HOPKINS LLC**
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*

## SCHEDULE A

## DEFINITIONS

1.     The terms "you" shall mean UBS AG ("UBS") or any other persons or entities acting or purporting to act for or on its behalf.

2.     The terms "The City of Detroit" or the "City" mean the Debtor City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including, but not limited to, Emergency Manager Kevyn Orr and his advisors.

3.     The term "Syncora" means Syncora Holdings Ltd., Syncora Guarantee Inc. and Syncora Capital Assurance Inc.

4.     The term "FGIC" shall mean Financial Guaranty Insurance Company.

5.     "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation, as defined in paragraph 11 of the *Motion of Debtor for Entry of an Order (i) Authorizing the Assumption of that Certain Forbearance and Optional Termination Agreement Pursuant to Section 365(a) of the Bankruptcy Code, (ii) Approving Such Agreement Pursuant to Rule 9019, and (iii) Granting Related Relief* [Docket No. 17] ("Motion to Assume Forbearance Agreement").

6.     "Swap Counterparty" shall have the definition given that term in the Forbearance Agreement.

7.     "U.S. Bank" shall mean U.S. Bank National Association.

8.     The term "Forbearance Agreement" means the Forbearance and Optional Termination Agreement executed as of July 15, 2013 and attached as Exhibit 6 to the Motion to Assume Forbearance Agreement.

9.     The term "Collateral Agreement" has the meaning given that term in Forbearance Agreement.

10.    The term "Transaction Documents" has the meaning given that term in the Forbearance Agreement.

11.    The term "Holdback Account" has the meaning given that term in the Collateral Agreement.

12.    The term "General Receipts Subaccount" has the meaning given that term in the Collateral Agreement.

13.    The term "Termination Rights" has the meaning given that term in the Forbearance Agreement.

14.    The term "Motion for a Temporary Restraining Order" shall mean the action described in paragraph 25 of the Motion to Assume Forbearance Agreement.

15.    "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

16.    The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

17.    The terms "including," "include" or "includes" mean including, but not limited to.

18.    The terms "each," "any," and "all" shall be construed to mean "each and every."

19.    The use of the singular form of a noun includes the plural form, and vice versa.

## DEPOSITION TOPICS

1.    The Forbearance Agreement, including but not limited to its terms and the City's ability to exercise the Termination Right.

2.    The negotiations regarding the Forbearance Agreement, including but not limited to the participants in those negotiations, the decision to enter into the Forbearance Agreement, and any non-disclosure agreement entered into with any party relating to the negotiations of the Forbearance Agreement.

3.    The operation of the Holdback Account and the General Receipt Subaccount, including but not limited to the amount of money that flows to the City from the General Receipts Subaccount.

4.    The terms of the Collateral Agreement.

5.    The occurrence of any Events of Default, Termination Events, or Early Termination Events under the Forbearance Agreement or any Transaction Documents.

6.    Communications with US Bank, the City, and/or the Service Corporations regarding the Operation of the Collateral Agreement.

7.    Communications with FGIC regarding the Forbearance Agreement, the Swap Agreement, or the Collateral Agreement.

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | ) Chapter 9 |
| | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) |

## SYNCORA GUARANTEE INC., AND SYNCORA CAPITAL ASSURANCE INC.'S NOTICE OF DEPOSITION TO SBS FINANCIAL PRODUCTS COMPANY, LLC

PLEASE TAKE NOTICE THAT, pursuant to Local Rule 7026-3 of the United States Bankruptcy Court of the Eastern District of Michigan and Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, Syncora Holdings Ltd., Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (collectively, "Syncora") will take the deposition upon oral examination of SBS Financial Products Company, LLC ("SBS") at 9:00 am EST on August 9, 2013 at the law offices of Mantese Honigman Rossman and Williamson, P.C., 1361 E. Big Beaver Rd., Troy, Michigan 48083 or at such other time and place as may be agreed upon by counsel for the parties. The deposition will be recorded by videotape and stenographer. The deposition will continue from day to day until completed.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Rule 30(b)(6), SBS is required to designate and produce one or more officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the matters set forth in Schedule A. The person(s) so designated shall be required to testify as to each of those matters known or reasonably available to SBS.

Dated: July 23, 2013

/s/ *Ryan Blaine Bennett*

James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
**MCDONALD HOPKINS LLC**
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone:     (248) 646-5070
Facsimile:     (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*

<u>**SCHEDULE A**</u>

<u>**DEFINITIONS**</u>

1.      The terms "you" shall mean  SBS Financial Products Company, LLC or any other persons or entities acting or purporting to act for or on its behalf.

2.      The terms "The City of Detroit" or the "City" mean the Debtor City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including, but not limited to, Emergency Manager Kevyn Orr and his advisors.

3.      The term "Syncora" means Syncora Holdings Ltd., Syncora Guarantee Inc. and Syncora Capital Assurance Inc.

4.      The term "FGIC" shall mean Financial Guaranty Insurance Company.

5.      "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation, as defined in paragraph 11 of the *Motion of Debtor for Entry of an Order (i) Authorizing the Assumption of that Certain Forbearance and Optional Termination Agreement Pursuant to Section 365(a) of the Bankruptcy Code, (ii) Approving Such Agreement Pursuant to Rule 9019, and (iii) Granting Related Relief* [Docket No. 17] ("Motion to Assume Forbearance Agreement").

6.      "Swap Counterparty" shall have the definition given that term in the Forbearance Agreement.

7.      "U.S. Bank" shall mean U.S. Bank National Association.

8.      The term "Forbearance Agreement" means the Forbearance and Optional Termination Agreement executed as of July 15, 2013 and attached as Exhibit 6 to the Motion to Assume Forbearance Agreement.

9.      The term "Collateral Agreement" has the meaning given that term in Forbearance Agreement.

10.     The term "Transaction Documents" has the meaning given that term in the Forbearance Agreement.

11.     The term "Holdback Account" has the meaning given that term in the Collateral Agreement.

12.     The term "General Receipts Subaccount" has the meaning given that term in the Collateral Agreement.

13.     The term "Termination Rights" has the meaning given that term in the Forbearance Agreement.

14.     The term "Motion for a Temporary Restraining Order" shall mean the action described in paragraph 25 of the Motion to Assume Forbearance Agreement.

15.     "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

16.     The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

17.     The terms "including," "include" or "includes" mean including, but not limited to.

18.     The terms "each," "any," and "all" shall be construed to mean "each and every."

19.     The use of the singular form of a noun includes the plural form, and vice versa.

**DEPOSITION TOPICS**

1.      The Forbearance Agreement, including but not limited to its terms and the City's ability to exercise the Termination Right.

2.      The negotiations regarding the Forbearance Agreement, including but not limited to the participants in those negotiations, the decision to enter into the Forbearance Agreement, and any non-disclosure agreement entered into with any party relating to the negotiations of the Forbearance Agreement.

3.      The operation of the Holdback Account and the General Receipt Subaccount, including but not limited to the amount of money that flows to the City from the General Receipts Subaccount.

4.      The terms of the Collateral Agreement.

5.      The occurrence of any Events of Default, Termination Events, or Early Termination Events under the Forbearance Agreement or any Transaction Documents.

6.      Communications with US Bank, the City, and/or the Service Corporations regarding the Operation of the Collateral Agreement.

7.      Communications with FGIC regarding the Forbearance Agreement, the Swap Agreement, or the Collateral Agreement.

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) |

## SYNCORA GUARANTEE INC., AND SYNCORA CAPITAL ASSURANCE INC.'S NOTICE OF DEPOSITION TO MERRILL LYNCH CAPITAL SERVICES, INC.

PLEASE TAKE NOTICE THAT, pursuant to Local Rule 7026-3 of the United States Bankruptcy Court of the Eastern District of Michigan and Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, Syncora Holdings Ltd., Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (collectively, "Syncora") will take the deposition upon oral examination of Merrill Lynch Capital Services, Inc ("MLCS") at 9:00 am EST on August 9, 2013 at the law offices of Mantese Honigman Rossman and Williamson, P.C., 1361 E. Big Beaver Rd., Troy, Michigan 48083 or at such other time and place as may be agreed upon by counsel for the parties. The deposition will be recorded by videotape and stenographer. The deposition will continue from day to day until completed.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Rule 30(b)(6), MLCS is required to designate and produce one or more officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the matters set forth in Schedule A. The person(s) so designated shall be required to testify as to each of those matters known or reasonably available to MLCS.

Dated: July 23, 2013

/s/ *Ryan Blaine Bennett*

James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
**MCDONALD HOPKINS LLC**
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone:     (248) 646-5070
Facsimile:     (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*

<u>**SCHEDULE A**</u>

<u>**DEFINITIONS**</u>

1.      The terms "you" shall mean  Merrill Lynch Capital Services, Inc ("MLCS") or any other persons or entities acting or purporting to act for or on its behalf.

2.      The terms "The City of Detroit" or the "City" mean the Debtor City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including, but not limited to, Emergency Manager Kevyn Orr and his advisors.

3.      The term "Syncora" means Syncora Holdings Ltd., Syncora Guarantee Inc. and Syncora Capital Assurance Inc.

4.      The term "FGIC" shall mean Financial Guaranty Insurance Company.

5.      "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation, as defined in paragraph 11 of the *Motion of Debtor for Entry of an Order (i) Authorizing the Assumption of that Certain Forbearance and Optional Termination Agreement Pursuant to Section 365(a) of the Bankruptcy Code, (ii) Approving Such Agreement Pursuant to Rule 9019, and (iii) Granting Related Relief* [Docket No. 17] ("Motion to Assume Forbearance Agreement").

6.      "Swap Counterparty" shall have the definition given that term in the Forbearance Agreement.

7.      "U.S. Bank" shall mean U.S. Bank National Association.

8.      The term "Forbearance Agreement" means the Forbearance and Optional Termination Agreement executed as of July 15, 2013 and attached as Exhibit 6 to the Motion to Assume Forbearance Agreement.

9.      The term "Collateral Agreement" has the meaning given that term in Forbearance Agreement.

10. The term "Transaction Documents" has the meaning given that term in the Forbearance Agreement.

11. The term "Holdback Account" has the meaning given that term in the Collateral Agreement.

12. The term "General Receipts Subaccount" has the meaning given that term in the Collateral Agreement.

13. The term "Termination Rights" has the meaning given that term in the Forbearance Agreement.

14. The term "Motion for a Temporary Restraining Order" shall mean the action described in paragraph 25 of the Motion to Assume Forbearance Agreement.

15. "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

16. The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive. The singular form of a noun or pronoun includes the plural form and vice versa.

17. The terms "including," "include" or "includes" mean including, but not limited to.

18. The terms "each," "any," and "all" shall be construed to mean "each and every."

19. The use of the singular form of a noun includes the plural form, and vice versa.

## DEPOSITION TOPICS

1.       The Forbearance Agreement, including but not limited to its terms and the City's ability to exercise the Termination Right.

2.       The negotiations regarding the Forbearance Agreement, including but not limited to the participants in those negotiations, the decision to enter into the Forbearance Agreement, and any non-disclosure agreement entered into with any party relating to the negotiations of the Forbearance Agreement.

3.       The operation of the Holdback Account and the General Receipt Subaccount, including but not limited to the amount of money that flows to the City from the General Receipts Subaccount.

4.       The terms of the Collateral Agreement.

5.       The occurrence of any Events of Default, Termination Events, or Early Termination Events under the Forbearance Agreement or any Transaction Documents.

6.       Communications with US Bank, the City, and/or the Service Corporations regarding the Operation of the Collateral Agreement.

7.       Communications with FGIC regarding the Forbearance Agreement, the Swap Agreement, or the Collateral Agreement.

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) |
| | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) |
| | ) Case No. 13-53846 |
| Debtor. | ) |
| | ) Hon. Steven W. Rhodes |
| | ) |

## SYNCORA GUARANTEE INC., AND SYNCORA CAPITAL ASSURANCE INC.'S NOTICE OF DEPOSITION TO DETROIT POLICE AND FIRE RETIREMENT SYSTEM SERVICE CORPORATION

PLEASE TAKE NOTICE THAT, pursuant to Local Rule 7026-3 of the United States Bankruptcy Court of the Eastern District of Michigan and Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, Syncora Holdings Ltd., Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (collectively, "Syncora") will take the deposition upon oral examination of the Detroit Police and Fire Retirement System Service Corporation ("DPFRS Service Corporation") at 9:00 am EST on August 9, 2013 at the law offices of Mantese Honigman Rossman and Williamson, P.C., 1361 E. Big Beaver Rd., Troy, Michigan 48083 or at such other time and place as may be agreed upon by counsel for the parties. The deposition will be recorded by videotape and stenographer. The deposition will continue from day to day until completed.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Rule 30(b)(6), the DPFRS Service Corporation is required to designate and produce one or more officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the matters set forth in Schedule A. The person(s) so designated shall be required to testify as to each of those matters known or reasonably available to the DPFRS Service Corporation.

Dated:  July 23, 2013                    /s/ *Ryan Blaine Bennett*

James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
**MCDONALD HOPKINS LLC**
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone:     (248) 646-5070
Facsimile:     (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*

## SCHEDULE A

## DEFINITIONS

1.      The terms "you" or "DPFRS Service Corporation" shall mean the Detroit Police and Fire Retirement System Service Corporation, or any other persons or entities acting or purporting to act for or on its behalf.

2.      The terms "The City of Detroit" or the "City" mean the Debtor City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including, but not limited to, Emergency Manager Kevyn Orr and his advisors.

3.      The term "Syncora" means Syncora Holdings Ltd., Syncora Guarantee Inc. and Syncora Capital Assurance Inc.

4.      The term "FGIC" shall mean Financial Guaranty Insurance Company.

5.      "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation, as defined in paragraph 11 of the *Motion of Debtor for Entry of an Order (i) Authorizing the Assumption of that Certain Forbearance and Optional Termination Agreement Pursuant to Section 365(a) of the Bankruptcy Code, (ii) Approving Such Agreement Pursuant to Rule 9019, and (iii) Granting Related Relief* [Docket No. 17] ("Motion to Assume Forbearance Agreement").

6.      "Swap Counterparty" shall have the definition given that term in the Forbearance Agreement.

7.      "U.S. Bank" shall mean U.S. Bank National Association.

8.      The term "Forbearance Agreement" means the Forbearance and Optional Termination Agreement executed as of July 15, 2013 and attached as Exhibit 6 to the Motion to Assume Forbearance Agreement.

9.      The term "Collateral Agreement" has the meaning given that term in Forbearance Agreement.

10.     The term "Transaction Documents" has the meaning given that term in the Forbearance Agreement.

11.     The term "Holdback Account" has the meaning given that term in the Collateral Agreement.

12.     The term "General Receipts Subaccount" has the meaning given that term in the Collateral Agreement.

13.     The term "Termination Rights" has the meaning given that term in the Forbearance Agreement.

14.     The term "Motion for a Temporary Restraining Order" shall mean the action described in paragraph 25 of the Motion to Assume Forbearance Agreement.

15.     "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

16.     The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

17.     The terms "including," "include" or "includes" mean including, but not limited to.

18.     The terms "each," "any," and "all" shall be construed to mean "each and every."

19.     The use of the singular form of a noun includes the plural form, and vice versa.

## DEPOSITION TOPICS

1.      The Forbearance Agreement, including but not limited to its terms and the City's ability to exercise the Termination Right.

2.      The negotiations regarding the Forbearance Agreement, including but not limited to the participants in those negotiations, the decision to enter into the Forbearance Agreement, and any non-disclosure agreement entered into with any party relating to the negotiations of the Forbearance Agreement.

3.      The operation of the Holdback Account and the General Receipt Subaccount, including but not limited to the amount of money that flows to the City from the General Receipts Subaccount.

4.      The terms of the Collateral Agreement.

5.      The occurrence of any Events of Default, Termination Events, or Early Termination Events under the Forbearance Agreement or any Transaction Documents.

6.      Communications with US Bank, the Swap Counterparties, and/or the City regarding the Operation of the Collateral Agreement.

7.      The City's efforts to negotiate with Syncora.

8.      Communications with FGIC regarding the Forbearance Agreement, the Swap Agreement, or the Collateral Agreement.

9.      The City's Motion for a Temporary Restraining Order.

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) |

## SYNCORA GUARANTEE INC., AND SYNCORA CAPITAL ASSURANCE INC.'S NOTICE OF DEPOSITION TO DETROIT GENERAL RETIREMENT SYSTEM SERVICE CORPORATION

PLEASE TAKE NOTICE THAT, pursuant to Local Rule 7026-3 of the United States Bankruptcy Court of the Eastern District of Michigan and Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, Syncora Holdings Ltd., Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (collectively, "Syncora") will take the deposition upon oral examination of the Detroit General Retirement System Service Corporation ("DGRS Service Corporation") at 9:00 am EST on August 9, 2013 at the law offices of Mantese Honigman Rossman and Williamson, P.C., 1361 E. Big Beaver Rd., Troy, Michigan 48083 or at such other time and place as may be agreed upon by counsel for the parties. The deposition will be recorded by videotape and stenographer. The deposition will continue from day to day until completed.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Rule 30(b)(6), the DGRS Service Corporation is required to designate and produce one or more officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the matters set forth in Schedule A. The person(s) so designated shall be required to testify as to each of those matters known or reasonably available to the DGRS Service Corporation.

Dated:  July 23, 2013

/s/ *Ryan Blaine Bennett*

James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
**MCDONALD HOPKINS LLC**
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone:     (248) 646-5070
Facsimile:     (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*

# SCHEDULE A

## DEFINITIONS

1.      The terms "you" or "DGRS Service Corporation" shall mean the Detroit General Retirement System Service Corporation, or any other persons or entities acting or purporting to act for or on its behalf.

2.      The terms "The City of Detroit" or the "City" mean the Debtor City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including, but not limited to, Emergency Manager Kevyn Orr and his advisors.

3.      The term "Syncora" means Syncora Holdings Ltd., Syncora Guarantee Inc. and Syncora Capital Assurance Inc.

4.      The term "FGIC" shall mean Financial Guaranty Insurance Company.

5.      "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation, as defined in paragraph 11 of the *Motion of Debtor for Entry of an Order (i) Authorizing the Assumption of that Certain Forbearance and Optional Termination Agreement Pursuant to Section 365(a) of the Bankruptcy Code, (ii) Approving Such Agreement Pursuant to Rule 9019, and (iii) Granting Related Relief* [Docket No. 17] ("Motion to Assume Forbearance Agreement").

6.      "Swap Counterparty" shall have the definition given that term in the Forbearance Agreement.

7.      "U.S. Bank" shall mean U.S. Bank National Association.

8.      The term "Forbearance Agreement" means the Forbearance and Optional Termination Agreement executed as of July 15, 2013 and attached as Exhibit 6 to the Motion to Assume Forbearance Agreement.

9.     The term "Collateral Agreement" has the meaning given that term in Forbearance Agreement.

10.     The term "Transaction Documents" has the meaning given that term in the Forbearance Agreement.

11.     The term "Holdback Account" has the meaning given that term in the Collateral Agreement.

12.     The term "General Receipts Subaccount" has the meaning given that term in the Collateral Agreement.

13.     The term "Termination Rights" has the meaning given that term in the Forbearance Agreement.

14.     The term "Motion for a Temporary Restraining Order" shall mean the action described in paragraph 25 of the Motion to Assume Forbearance Agreement.

15.     "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

16.     The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

17.     The terms "including," "include" or "includes" mean including, but not limited to.

18.     The terms "each," "any," and "all" shall be construed to mean "each and every."

19.     The use of the singular form of a noun includes the plural form, and vice versa.

## DEPOSITION TOPICS

1.      The Forbearance Agreement, including but not limited to its terms and the City's ability to exercise the Termination Right.

2.      The negotiations regarding the Forbearance Agreement, including but not limited to the participants in those negotiations, the decision to enter into the Forbearance Agreement, and any non-disclosure agreement entered into with any party relating to the negotiations of the Forbearance Agreement.

3.      The operation of the Holdback Account and the General Receipt Subaccount, including but not limited to the amount of money that flows to the City from the General Receipts Subaccount.

4.      The terms of the Collateral Agreement.

5.      The occurrence of any Events of Default, Termination Events, or Early Termination Events under the Forbearance Agreement or any Transaction Documents.

6.      Communications with US Bank, the Swap Counterparties, and/or the City regarding the Operation of the Collateral Agreement.

7.      The City's efforts to negotiate with Syncora.

8.      Communications with FGIC regarding the Forbearance Agreement, the Swap Agreement, or the Collateral Agreement.

9.      The City's Motion for a Temporary Restraining Order.

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | ) Chapter 9 |
|  | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
|  | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
|  | ) |

## SYNCORA GUARANTEE INC., AND SYNCORA CAPITAL ASSURANCE INC.'S NOTICE OF DEPOSITION TO U.S. BANK NATIONAL ASSOCIATION

PLEASE TAKE NOTICE THAT, pursuant to Local Rule 7026-3 of the United States Bankruptcy Court of the Eastern District of Michigan and Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, Syncora Holdings Ltd., Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (collectively, "Syncora") will take the deposition upon oral examination of U.S. Bank National Association ("U.S. Bank") at 9:00 am EST on August 9, 2013 at the law offices of Mantese Honigman Rossman and Williamson, P.C., 1361 E. Big Beaver Rd., Troy, Michigan 48083 or at such other time and place as may be agreed upon by counsel for the parties. The deposition will be recorded by videotape and stenographer. The deposition will continue from day to day until completed.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Rule 30(b)(6), U.S. Bank is required to designate and produce one or more officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the matters set forth in Schedule A. The person(s) so designated shall be required to testify as to each of those matters known or reasonably available to U.S. Bank.

Dated:  July 23, 2013

/s/ *Ryan Blaine Bennett*

James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
**MCDONALD HOPKINS LLC**
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone:     (248) 646-5070
Facsimile:     (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*

2

**SCHEDULE A**

**DEFINITIONS**

1.　　The term "you" shall mean U.S. Bank National Association ("U.S. Bank") or any other persons or entities acting or purporting to act for or on its behalf.

2.　　The terms "The City of Detroit" or the "City" mean the Debtor City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including, but not limited to, Emergency Manager Kevyn Orr and his advisors.

3.　　 "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation, as defined in paragraph 11 of the *Motion of Debtor for Entry of an Order (i) Authorizing the Assumption of that Certain Forbearance and Optional Termination Agreement Pursuant to Section 365(a) of the Bankruptcy Code, (ii) Approving Such Agreement Pursuant to Rule 9019, and (iii) Granting Related Relief* [Docket No. 17] ("Motion to Assume Forbearance Agreement").

4.　　"Swap Counterparty" shall have the definition given that term in the Forbearance Agreement.

5.　　The term "Forbearance Agreement" means the Forbearance and Optional Termination Agreement executed as of July 15, 2013 and attached as Exhibit 6 to the Motion to Assume Forbearance Agreement.

6.　　The term "Collateral Agreement" has the meaning given that term in the Forbearance Agreement.

7.　　The term "Transaction Documents" has the meaning given that term in the Forbearance Agreement.

8.　　The term "Termination Rights" has the meaning given that term in the Forbearance Agreement.

3

9.      "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

10.      The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

11.      The terms "including," "include" or "includes" mean including, but not limited to.

12.      The terms "each," "any," and "all" shall be construed to mean "each and every."

13.      The use of the singular form of a noun includes the plural form, and vice versa.


## DEPOSITION TOPICS

1.      Discussions within U.S. Bank and between U.S. Bank and the City, Swap Counterparties, or Service Corporations regarding the City and Service Corporations' obligations under the Transaction Documents..

2.      U.S. Bank's knowledge and involvement in any negotiations between the City and the Swap Counterparties regarding the Forbearance Agreement.

3.      U.S. Bank's knowledge of the terms of the Forbearance Agreement.

4.      U.S. Bank's understanding of and actions under any Section of the Collateral Agreement, including but not limited to Section 5.4.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**CITY OF DETROIT,**
**a Municipal Corporation Organized**
**and Existing Under the Laws of the**
**State of Michigan,**

        **Plaintiff,**

    **v.**

**SYNCORA GUARANTEE INC.,**
**a New York Corporation,**

**and**

**U.S. BANK, N.A.,**

**and**

**MGM GRAND DETROIT, LLC,**

**and**

**DETROIT ENTERTAINMENT, LLC,**
**d/b/a MOTORCITY CASINO**
**HOTEL,**

**and**

**GREEKTOWN CASINO, LLC,**

        **Defendants.**

**Case No.: 2:13-cv-12987-LPZ-MKM**

**Hon. Lawrence P. Zatkoff**

## DEFENDANT SYNCORA GUARANTEE INC.'S EMERGENCY MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER AND <u>CONDUCT EXPEDITED DISCOVERY</u>

      Blatantly disregarding the law, the terms of its agreements, and the facts, on

July 5, 2013, the City of Detroit (the "City") filed a Motion for an *Ex Parte*

Temporary Restraining Order and an Order to Show Cause Why a Preliminary Injunction Should Not Issue (the "Motion"). Though the Motion paints the City as a victim pushed to the brink of financial disaster by Syncora Guarantee Inc. ("Syncora"), the City's Motion tells just half the story, conveniently mischaracterizing or omitting those parts that would reflect poorly on the City and its Emergency Financial Manager, Mr. Kevyn Orr. To make matters worse, the City sought the temporary restraining order on an *ex parte* basis, despite the fact that Syncora's counsel was not only known to the City, but had been sitting across the table from the City's lawyers just days before. Without Syncora standing next to it at the podium pointing out the egregious misrepresentations and omissions contained in its papers, the City easily obtained a TRO that destroyed the status quo by releasing $15 million in collateral funds that the insolvent City presumably has dissipated, never to be recovered. Syncora now brings the instant motion pursuant to Rules 65(b)(4) and 26(d)(1) and respectfully requests that the Court grant its motion dissolving the temporary restraining order and seeking expedited discovery regarding the City's allegations and restore the *status quo ante* by ordering the City to return to the General Receipts Subaccount the funds that U.S. Bank was ordered to release.

Counsel for Syncora hereby certifies pursuant to Local Rule 7.1(a)(2) and 37.1 that Stephen C. Hackney, counsel for Syncora, attempted to confer with

counsel for the City and U.S. Bank, N.A. ("U.S. Bank"). On July 11, 2013, Stephen Hackney, litigation counsel for Syncora, sent an email to Robert Hertzberg, Thomas F. Cullen, and Gregory Shumaker as counsel for the City, requesting their agreement that the Parties engage in expedited discovery and noting the emergency nature of the request. The same email was also sent to William Smith, counsel to U.S. Bank. U.S. Bank indicated that it was unable to concur in the motion, given its role as custodian. Counsel for Syncora and Counsel for the City held a telephone conference at 1:30 pm Eastern Time and again at 2:00 pm Eastern Time. During those calls, Mr. Hackney explained the nature of Syncora's motion and request and asked the City's attorneys if they would be willing to dissolve the temporary restraining order, restore the monies distributed from the account, and agree to an expedited discovery schedule. The City's attorneys indicated that they would probably be amenable to dissolving the temporary restraining order but would not be willing to restore the funds to the General Receipts Subaccount. Mr. Hackney explained that this condition was necessary to restore the *status quo ante*; however, the City still refused to concur in this action. At the conclusion of the call, the City's attorneys stated that Syncora could represent to the Court that the City did not agree to restore the *status quo ante* or to an expedited discovery schedule.

3

## BRIEF IN SUPPORT OF SYNCORA'S EMERGENCY MOTION

### Issues Presented

1.     Whether the Court should dissolve a temporary restraining order that was obtained under false pretenses and is legally deficient on its face.

2.     Whether good cause exists for expedited discovery given the expedited nature of the injunctive proceedings and the fact that the City's amorphous and conclusory allegations are wholly lacking in detailed factual support.

4

## Relevant Authority

### The Court Should Dissolve the Temporary Restraining Order

Federal Rule of Civil Procedure 65(b)(4) states that "[o]n two days' notice to the party who obtained the order without notice—or on shorter notice set by the court—the adverse party may appear and move to dissolve or modify the order."

### Good Cause Exists for Expedited Discovery in Injunctive Proceedings

Federal Rule of Civil Procedure 26(d)(1) states that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order."

The 1993 advisory committee notes to Rule 26 state that orders authorizing expedited discovery "will be appropriate in some cases, such as those involving requests for a preliminary injunction."

*Ellsworth Associates, Inc. v. United States*, 917 F. Supp. 841, 844 (D. D.C 1996), states that "[e]xpedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *See also U.S. Securities and Exchange Commission v. Wilson*, 2012 WL 5874456, at *4 (E.D. Mich. Nov. 20, 2012).

5

I.   **THE COURT SHOULD DISSOLVE THE TEMPORARY RESTRAINING ORDER THAT THE CITY OBTAINED ON AN *EX PARTE* BASIS.**

   A.   **The City's Sharp Tactics Lead to the Entry of a Breathtakingly Broad Temporary Restraining Order on an *Ex Parte* Basis.**

As the City tells it, it had no choice but to file the Motion after Syncora allegedly "instructed" U.S. Bank to trap the funds in the General Receipts Subaccount.  (Mot. at 7-9.)  According to the City, after the cash trapping began, settlement negotiations were held that were not "productive" because Syncora declined to make a "proposal."  (*Id*. at 8.)  Claiming that it faced financial ruin if the funds in the General Receipts Subaccount were not released, the City filed a Motion asking a court to do just that.  (*Id*. at 10-13.)

Significantly, the City never provided Syncora with notice of this Motion.  (Ex. A, Snyder Dec., ¶ 12; Ex. B, Schwarzman Dec., ¶ 7.)  The failure to give notice in this instance is particularly offensive because Syncora's counsel were not only known to the City, they had *met* with the City to discuss the issues between the parties just days earlier.  (Ex. A, Snyder Dec., ¶ 11; Ex. B, Schwarzman Dec., ¶¶ 4-5.)  And Mr. Orr's affidavit nowhere explains what emergency faced the City that was so compelling that it could not wait even an hour or two to see if any of the half-dozen Syncora lawyers known to the City could be raised by email or telephone.  It is now clear why — the City knew that Syncora would be able to expose the City and reveal to the court the falsehoods and half-truths littered

6

throughout the Motion.[1]  Because of the City's less than forthright tactics, Syncora was not present at the hearing and thus unable to contradict the City's innacurate version of events.

Central to the City's case is Syncora's June 17th letter to U.S. Bank. According to the City, Syncora's letter "instructed" U.S. Bank to trap the funds in the General Receipts Subaccount and, by doing so, Syncora tortiously interfered with the City's contractual and business relations.  (Mot. at 7 (claiming that Syncora "demanded" that U.S. Bank trap in the General Receipts Subaccount all monies that would otherwise flow to the City).)  And yet even a cursory review of the letter reveals that Syncora never instructed or demanded that U.S. Bank take any action.  (*See* Ex. D to Orr. Aff., 6/17/13 letter from C. LeBlanc to S. Brown.) In fact, the letter merely memorializes a prior conversation between Syncora and U.S. Bank in which U.S. Bank expressed its independent view that the Service Corporation's default in not making a $40 million payment to the Certificate of Participation holders triggered a cross-default under the Swap Agreement which led to *automatic* cash trapping under the Collateral Agreement.  (*Id*.)  U.S. Bank has never disputed that that conversation took place.  (*See, e.g.,* Ex. E to Orr Aff., 6/24/13 email from W. Smith (U.S. Bank).)

---

[1] An additional reason the City likely did not notify Syncora is that it feared Syncora would immediately see through the City's transparently fraudulent joinder of the non-diverse Casino Defendants and remove the case.  (*See* Syncora's Notice of Removal to United States District Court, filed on July 11, 2013.)

The City's misrepresentations regarding the impact of the letter do not end there. Ignoring the unambiguous language of the Collateral Agreement, the City claims that the cash trap occurs only when a party to the Collateral Agreement demands it. (Mot. at 16.) The Collateral Agreement clearly states, however, that the cash trap occurs *automatically* upon an Event of Default under a Hedge. The language is unambiguous:

**Section 5.4        When Payments from General Receipts Subaccount Prohibited**

        **(a)        No payment shall be made to the City from the General Receipts Subaccount**

                (i)        on and after the Term Period End Date or

                (ii)        on or after the occurrence of a Termination Event under a Hedge where the related [Swap] Counterparty is not the sole Affected Party *except* as otherwise permitted by subsection (b), below or

                (iii)        while an Event of Default is continuing under a Hedge where the related [Swap] Counterparty is not the sole Defaulting Party.

(Ex. B to Orr. Aff, Collateral Agreement § 5.4(a)(i)-(iii) (emphasis added).) No provision in the Collateral Agreement requires that section 5.4's provisions be invoked by notice — to the contrary, the provision operates automatically by design. Thus, there was nothing sinister or improper about Syncora's letter to the U.S. Bank. Syncora simply confirmed that U.S. Bank acted in accordance with the

8

Collateral Agreement and enacted a procedure meant to protect Syncora and the Swap Counterparties from the City's inability to meet its financial obligations.

In addition to the contents of the letter and the operation of the Collateral Agreement, the City also misrepresents the parties' discussions surrounding it. In its Motion, the City claims that discussions with Syncora had stalled and that, if the Court did not immediately grant the City's Motion, the City would suffer irreparable harm. (Mot. at 8, 10-13.) This claim is false on a number of different levels.

To begin, Syncora was not unwilling to negotiate with the City. In fact, it was Syncora who suggested that the parties work together to resolve the dispute consensually. (*See* Ex. H to Orr. Aff., 6/26/13 letter from C. LeBlanc to K. Orr ("As we have already communicated to your representatives, we are open to exploring the possibility of a mutually satisfactory resolution of the issues surrounding the revenues in the General Receipts Subaccount.").)

In addition, the negotiations between the City and Syncora had not stalled. To the contrary, they had barely begun when the City filed its Motion. (Ex. A, Snyder Dec., ¶¶ 7-12; Ex. B, Schwarzman Dec., ¶¶ 3-7.) Indeed, the parties were in the process of executing a non-disclosure agreement ("NDA") that would have allowed them to commence the negotiations in earnest. (Ex. A, Snyder Dec., ¶¶ 10-12; Ex. B, Schwarzmann Dec., ¶¶ 3-7.) Contrary to the City's suggestion that

9

"no proposal was forthcoming" from Syncora, the facts will show that Syncora was never able to make its proposal because the City curiously refused to agree to a standard NDA that would have required the City to hold the proposal in confidence.  (Ex. B, Schwarzman Dec., ¶ 5.)

The City's inexplicable refusal to agree to an industry-standard term of a vanilla NDA, viewed in hindsight, reveals that the City and Mr. Orr never intended to engage in good-faith negotiations in the first place.  Instead, the City used the carrot of further negotiations to string Syncora along and lull it into a false sense of security — all while the City was surreptitiously preparing its Motion.

Indeed, the City revealed its true intentions on July 5th — the Friday of the July 4th holiday weekend.  That afternoon, the City filed the Motion and requested an immediate *ex parte* hearing for its temporary restraining order.  At the hearing, the City claimed that it did not have time to notify Syncora of the Motion and the hearing.  (*See Ex Parte* Restraining Order and Order to Show Cause Why A Preliminary Injunction Should Not Issue ("*Ex Parte* Restraining Order"), ¶ 6.) Like many of the City's statements, this too was false.

In fact, the City had been communicating with Syncora's counsel on an almost daily basis as the parties negotiated an NDA aimed at furthering discussions.  (Ex. A, Snyder Dec., ¶ 11; Ex. B, Schwarzman Dec., ¶ 4.) Nevertheless, before filing a Motion that it had obviously prepared many days in

advance, the City made no effort to contact Syncora. (Ex. A, Snyder Dec., ¶ 12; Ex. B, Schwarzman Dec., ¶ 7.)  It did not pick up the phone.  (Ex. A, Snyder Dec., ¶ 12; Ex. B, Schwarzman Dec., ¶ 7.)  Nor did it send an email.  (Ex. A, Snyder Dec., ¶ 12; Ex. B, Schwarzman Dec., ¶ 7.)  Not surprisingly, the City never explains why it could not have done so.  The Motion papers are long and detailed and were clearly in the works days before July 5th.  And yet no one gave Syncora's counsel a courtesy call advising them that the Motion was coming.  (Ex. A, Snyder Dec., ¶ 12; Ex. B, Schwarzman Dec., ¶ 7.)  Conveniently though, the City had no difficulties emailing Syncora the temporary restraining order just minutes after it had been entered.  (Ex. A, Snyder Dec., ¶ 12; Ex. B, Schwarzman Dec., ¶ 7)

Despite the wholly improper nature of the City's tactics, its strategy succeeded.  With no party present to contest the City's half-truths, the court entered an order granting the City's requested relief.  (*See Ex Parte* Restraining Order.)  In doing so, however, the court issued a temporary restraining order that is breathtaking in a number of respects.

*First*, the impetus for the court's temporary restraining order is Syncora's letter to U.S. Bank.  (*Id* ¶ 1.)  Significantly though, the court's order contains no findings that Syncora's letter was improper, untruthful, or in violation of any of the numerous agreements to which Syncora is a party.  Nor does the City allege that anything Syncora said in its letter was untrue.  In other words, the court has

11

penalized Syncora — a direct and third-party beneficiary to the agreements making up the COPs/Swap structure with hundreds of millions of dollars at risk — for sending an entirely truthful letter to U.S. Bank on the subject of a Collateral Agreement that is fundamental to the entire structure.

*Second*, the court's temporary restraining order did not *preserve* the status quo, it *destroyed* it. Where, as here, an event of default has occurred, the Collateral Agreement *automatically* acts to bar distributions from the General Receipts Subaccount. (*See* Ex. B to Orr. Aff, Collateral Agreement § 5.4(a)(i)-(iii).) Thus, the *status quo ante* just prior to the filing of the Motion was that U.S. Bank was properly trapping cash under section 5.4 of the Collateral Agreement. The court's temporary restraining order violates the provisions of this agreement and allows the funds in the General Receipts Subaccount to flow out and be dissipated by the allegedly insolvent City of Detroit which, in turn, causes irreparable harm to Syncora. The state court thus destroyed the status quo and allowed $15 million to be distributed to the City without even giving Syncora a chance to be heard. Worse, the Court found the City need not provide a bond to protect Syncora in the interim.

*Third*, the temporary restraining order states that it "shall remain in full force and effect until this Court specifically orders otherwise." (*Ex Parte* Restraining Order at 3.) Yet, under Michigan law, a temporary restraining order may not

exceed 14 days except for good cause shown.  MICH. COMP. LAWS § 3.310(B)(3).
In its order, however, the court never stated that it had good cause to extend the
time that the temporary restraining order remained in effect.  (*See Ex Parte*
Restraining Order.)

*Fourth*, the temporary restraining order is written so broadly that it actually
restricts Syncora's rights under the relevant contracts and the First Amendment.
Read literally, the terms of the temporary restraining order do not allow Syncora to
publicly express its view regarding how the Collateral Agreement should operate.
(*Id.* at 3.)  For example, in even suggesting (without basis) that the court fashion a
remedy allowing the City to evade its Irrevocable Instructions, the City has
violated section 5.1(b) of the Collateral Agreement, which prohibits it from taking
"*any action* to redirect the revenues contrary to the Irrevocable Instructions."  This
in turn constitutes a new default under section 5(a)(iii)(3) of the Swap, which
should automatically trap cash under section 5.4(a)(iii) of the Collateral
Agreement.  Under the temporary restraining order, Syncora is forbidden from
making observations to U.S. Bank regarding these developments.  As such, the
temporary restraining order is a stunning display of prior restraint.

**B.     The City's Legal Theory Wholly Ignores Critical Amendments to the Swap Agreement that Establish Syncora's Right to Consent to any Waivers to the Collateral Agreement's Automatic Cash Trapping Provisions.**

The City's claims are based on its apparent belief that the Collateral Agreement does not provide Syncora with "the right to direct the custodian's conduct with respect to the collateral." (*See*, *e.g.*, Mot. at 15.)  According to the City, because Syncora has no such rights, its alleged interference with the City's contractual and business relations was unjustified and improper.  (*Id.* at 16-18.)  The City ignores, however, that Syncora has consent rights regarding the waiver and amendment of provisions under the Collateral Agreement via the Swap Agreements.  Moreover, these rights arose *specifically in connection with* the 2009 transaction that led to the creation of the Collateral Agreement in the first instance.  Syncora's consent rights arose in the following manner.

Part 3(d) of the Amended and Restated Schedule to the 1992 ISDA Master Agreement (the "Amended Swap") provides that the Collateral Agreement is one of two "Credit Support Documents."  (Ex. C, Amended Swap.)  Part 5(d) of the Amended Swap then modifies Section 8(b) of the ISDA Master Agreement (the "Swap").  (Ex. D, the Swap.)  Part 5(d) amended Section 8(b) so that it now reads as follows:

> **No amendment, modification or waiver in respect of this Agreement or any Credit Support Document** [*e.g.*, the Collateral Agreement] will be effective unless in writing (including a writing

evidenced by a facsimile transmission) and executed by each of the parties **and the Swap Insurer** [*e.g.,* Syncora] or confirmed by an exchange of telexes or electronic messages on an electronic messaging system.

Part 5(k) of the Amended Swap further states:

Party A [Swap Counterparty] and Party B [Service Corporation] hereby each acknowledge and agree that the Swap Insurer shall be an express third-party beneficiary (and not merely an incidental third party beneficiary) of this Agreement and of the obligations of each such party under any Insured Rate Swap Transaction, and as such, entitled to enforce the Agreement and the terms of any such Insured Rate Swap Transaction against such party on its own behalf and otherwise shall be afforded all remedies available hereunder or otherwise afforded by law against the parties hereto to redress any damage or loss incurred by the Swap Insurer.

(Ex. C, Amended Swap, Part 5(k).)

Read together, these provisions make clear that the provisions of the Collateral Agreement cannot be amended, waived, or modified unless (1) done in writing and (2) that writing is executed by the parties *and* Syncora. Syncora is further able to enforce this term of the Swap via the express enforcement rights it is provided under the Amended Swap. (*Id*.)

As a result, the City is incorrect to claim that Syncora has no right to direct U.S. Bank's conduct, even if Syncora had done so, which it did not. In fact, U.S. Bank could not take any action that was in conflict with the express terms of the Collateral Agreement — *i.e.*, releasing funds from the General Receipts Subaccount after an Event of Default under a Hedge — without first obtaining the consent of Syncora, even where, as here, the Swap Counterparties have apparently

15

been secretly waiving the cash trapping requirements of section 5.4 of the Collateral Agreement.  (Ex. A, Snyder Dec., ¶ 7.)

In yet another display of a surprising lack of candor with the state court, the City *never mentioned* these provisions in its papers and worse, never attached the amended Swap Agreement to its pleadings.  The City thus purposely left the state court in the dark regarding the central legal provision that defeats the City's claims.  It is obvious that the City did not want Syncora's counsel in attendance on July 5, 2013, because it knew Syncora's counsel would give the lie to the entire premise of the City's Verified Complaint.

## C.   The City Failed to Demonstrate that It was Entitled to Injunctive Relief.

Courts consider injunctive relief to be an extraordinary remedy that is necessary only where justice requires, an adequate remedy at law does not exist, and there is real and imminent danger of irreparable injury.  *Kernen v. Homestead Dev. Co.*, 232 Mich. App. 503, 509 (1998).  To determine whether injunctive relief is necessary, courts weigh "(1) the likelihood that the party seeking the injunction will prevail on the merits; (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued; (3) the risk that the party seeking the injunction would be harmed more by the absence of the injunction than the opposing party would be by the granting of the relief; and (4) the harm to the public interest if the injunction is issued."  *Michigan AFSCME Council 25 v.*

16

*Woodhaven-Brownstown Sch. Distr.*, 293 Mich. App. 143, 148 (2011).   As demonstrated above, all four of these factors weigh in favor of Syncora.

*First*, the City is not likely to prevail on the merits of its claims.   The complaint upon which the TRO was issued descends entirely from the premise that Syncora has no rights with respect to the Collateral Agreement at issue.   That premise is clearly and unambiguously refuted by Section 8(b) of the Amended Swap Agreement, which clearly gives Syncora the right to consent to any waivers, modifications, or amendments of the Collateral Agreement.

*Second*, the City's irreparable harm allegations are amorphous and unsubstantiated.   The City's generalized liquidity crisis is years in the making and does not constitute "irreparable" harm attributable to Syncora.   Nor does the City explain how Syncora's truthful letter has "constrained" its ongoing negotiations.   Furthermore, Syncora was not, as the City claims, even responsible for the cash trap — that procedure was meant to operate automatically under the Collateral Agreement.

*Third*, while the City has failed to specify what harm, if any, it suffered as a result of the cash trap, Syncora's irreparable harm is obvious and quantifiable — collateral that should be trapped is being dissipated by an insolvent City, never to be recovered.

17

*Fourth*, the City failed to demonstrate any harm to the public interest that was not already occurring due to the fact that the City currently is insolvent and unable to pay its debts when they become due. The greater public harm is permitting a public official — who has no check on his power — to act outside the bounds of the law and attempt to violate Syncora's First Amendment and contractual rights. No matter how dire the circumstances, the rule of law must apply.

## II. THE CITY'S AMORPHOUS FACTUAL ALLEGATIONS REQUIRE EXPEDITED DISCOVERY.

### A. The City's Motion and Complaint Lack the Factual Information Necessary to Assess the City's Claim for Injunctive Relief.

At the heart of this case is the letter that Syncora delivered to U.S. Bank on June 17, 2013. Though this letter simply informed U.S. Bank that the Service Corporation's failure to make scheduled payments constituted an event of default that *automatically* operated to bar distributions from the General Receipts Subaccount (Ex. D to Orr. Aff.), the City claims that the alleged impact of this letter — the trapping of the cash in the General Receipts Subaccount — would cause it irreparable harm unless the court issued injunctive relief. (Mot. at 10-13.) In support of this argument, the City's Motion and Verified Complaint attempt to explain (a) the harm that it will suffer; (b) whether that harm is irreparable; (c) the City's likelihood of success on the merits; and (d) the harm to the public interest.

18

(*Id*. at 10-19.)  Notably though, for each of these factors, the City fails to provide the information necessary to determine whether a preliminary injunction should issue.

> ### i.    The City Fails to Provide All of the Information That Is Necessary to Determine the Harm that the City Will Suffer and Whether that Harm is Irreparable.

In its Motion and Complaint, the City argues that it will suffer irreparable harm unless the Court issues a temporary restraining order and preliminary injunction.  (*Id*. at 10-13.)  Except for a few conclusory statements, however, the City never explains how and why it would suffer irreparable harm.

For example, the City claims that the cash trap has "greatly constrained" the Emergency Manager's ability to engage in discussions with City stakeholders and will cause the City to lose unique and irreplaceable opportunities to settle with the stakeholders.  (*Id*. at 10-11.)  Apparently, Syncora and the Court are expected to take Mr. Orr at his word, because his affidavit does not detail the negotiations nor explain how the City has been "greatly constrained," making it difficult to assess whether and how Syncora's two-paragraph confirmatory letter has caused irreparable harm.  Nor does the City explain which stakeholder demands, if any, the City will not be able to meet as a result of the cash trap.

In addition, the City claims that its negotiations with the Swap Counterparties "are particularly at risk without intervention by the Court."  (*Id*. at

11.)  According to the City, the Emergency Manager had reached an agreement in principle with the Swap Counterparties that the cash trap threatened to destroy. (*Id.*)  This is news to Syncora, which has been wholly and unjustifiably excluded from the City's negotiations with the Swap Counterparties — negotiations with which it is now alleged to have tortiously interfered.  (Ex. A, Snyder Dec., ¶ 7.) Consistent with the theme, the City does not provide any information about the negotiations between the parties or the terms of the tentative agreement.  Without this information, it is impossible to assess the City's claim that the cash trap actually threatens the City's negotiations with the Swap Counterparties and, if so, how much harm it would cause.

Finally, the City claims that its "inability to access the Casino Revenues has immediate consequences for its ability to provide even basic city services such as police, fire, and emergency medical services."  (Mot. at 12.)  Despite this dire prediction, the City does not identify exactly what those "immediate consequences" are, what services it would not be able to provide, and when it would need to cut them.

### ii. The City Fails to Provide All of the Information That Is Necessary to Determine Whether the City is Likely to Succeed on the Merits of its Claims.

In its Motion and Complaint, the City argues that it is likely to succeed on the merits of its declaratory judgment and tortious interference claims.  For both of

20

these claims, however, the City fails to provide essential information that is necessary to assess the City's likelihood of success.

*First*, the City claims that it is likely to succeed on the merits of its declaratory judgment claim regarding rights under the Collateral Agreement. (*Id.* at 15-16.)  According to the City, notwithstanding the unambiguous language requiring cash-trapping, Syncora was wrong to request after-the-fact confirmation of U.S. Bank's independent determination that it had a duty, under Section 5.4(a)(iii) of the Collateral Agreement, to withhold funds in the event of a cross-default under the Swap Agreement. (*Id.* at 16.)  And yet, in support of this argument, the City does not provide any evidence demonstrating the duties of U.S. Bank or how it would have handled the Event of Default without Syncora's letter.  Nor does the City rebut Syncora's claim that U.S. Bank expressed its intention to trap cash *prior to* Syncora's letter. (*See* Ex. D to Orr Aff., 6/17/13 letter from C. LeBlanc to S. Brown.)

*Second*, the City claims that it is likely to succeed on the merits of its tortious interference claims. (Mot. at 17.)  In particular, the City claims that it will be able to establish that Syncora's letter led to the collapse of the negotiations between the City and the Swap Counterparties. (*Id.*)  The City never explains, however, how this letter led to the collapse of the negotiations.  Nor does the City point to any communications from the Swap Counterparties establishing that the

21

collapse is attributable to Syncora's letter.  And, most significantly, the City never identifies any breach of the Collateral Agreement that was caused by Syncora or its letter.

### iii.   The City Fails to Provide All of the Information That Is Necessary to Determine the Harm to the Public Interest.

In its Motion and Complaint, the City argues that granting the temporary restraining order and preliminary injunction will help avoid serious harm to the public interest.  (*Id.* at 18.)  In particular, the City claims that losing access to the Casino Revenues will (a) frustrate its ability to successfully negotiate with its stakeholders and (b) lead to the collapse of vital City services.  (*Id.* at 18-19.)

As noted above, however, the City fails to provide the information necessary to assess its claim.  For example, it does not identify which stakeholders it will lose the ability to negotiate with.   Similarly, it does not identify which vital City services will collapse as a result of the cash trap.  Instead, the City relies on general statements — *i.e.*, "Without immediate access to the Casino Revenues, the City will be unable to move forward with the Emergency Manager's plan for resolving the crisis" — that lack any supporting evidence.

### B.   Good Cause Exists for Expedited Discovery.

As a general rule, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)[.]"  FED. R. CIV. P. 26(d)(1). However, courts have wide discretion with respect to discovery and may order

22

expedited discovery prior to a Rule 26(f) upon a showing of good cause.  *Id.*;
*Arista Records, LLC v. Does 1-4*, 2007 WL 4178641, at *1 (W.D. Mich. Nov. 20,
2007); *see also Ellsworth Associates, Inc. v. United States*, 917 F. Supp. 841, 844
(D.D.C. 1996).

The advisory committee notes further explain that orders authorizing
expedited discovery "will be appropriate in some cases, such as those involving
requests for a preliminary injunction."  FED. R. CIV. P. 26 advisory committee
notes (1993).  Much of the case law echoes these advisory notes, as courts have
routinely found that "[e]xpedited discovery is particularly appropriate when a
plaintiff seeks injunctive relief because of the expedited nature of injunctive
proceedings."  *Ellsworth Associates, Inc.*, 917 F. Supp. at 844; *see also Arista
Records, LLC*, 2007 WL 4178641, at *1; *U.S. Securities and Exchange
Commission v. Wilson*, 2012 WL 5874456, at *4 (E.D. Mich. Nov. 20, 2012);
*Edudata Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn.
1984), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 429 (8th Cir. 1984)
(ordering expedited discovery on the grounds that "[f]urther development of the
record before the preliminary injunction hearing will better enable to court to judge
the parties' interests and respective chances for success on the merits").  For this
reason, parties to a preliminary injunction are often able to establish good cause for
expedited discovery.  *See*, *e.g.*, *Ellsworth Associates, Inc.*, 917 F. Supp. at 844.

In this case, good cause exists for expedited discovery.  *First,* as discussed above, the City has failed to include in its Motion and Complaint much of the information necessary to assess its claim for a preliminary injunction.  Expedited discovery is therefore necessary for the parties to develop the evidentiary record in advance of the preliminary injunction hearing.  Without this discovery, both the parties and the Court will not be able to assess the parties' interests and respective chances for success on the merits.  *Edudata Corp.*, 599 F. Supp. at 1088.  *Second*, because this dispute has arisen in the context of a preliminary injunction, the parties will not be able to complete all of the necessary discovery unless it is performed on an expedited schedule.  *See Ellsworth Associates, Inc.*, 917 F. Supp. at 844.   *Third*, Syncora's contemplated discovery requests — attached as Exhibits E-S — are tailored to the specific issues in this case and seek only that information which is necessary to determine whether injunctive relief is necessary.  Thus, they will not impose an undue burden on the City or any third-parties.

WHEREFORE, for the foregoing reasons, Syncora respectfully requests that the Court grant its Emergency Motion to Dissolve the Temporary Restraining Order and Conduct Expedited Discovery and restore the *status quo ante* by ordering the City to return to the General Receipts Subaccount the funds that U.S.

24

Bank was ordered to release.  A copy of the discovery requests Syncora intends to serve is attached as Exhibits E-S.


Dated:  July 12, 2013                          Respectfully submitted,

                                   By:   /s/ Gerard V. Mantese
Stephen C. Hackney                       Gerard V. Mantese (P34424)
Ryan Blaine Bennett                      Ian M. Williamson (P65056)
William E. Arnault                       Brendan H. Frey (P70893)
Lally A. Gartel                          Mantese Honigman Rossman and
KIRKLAND & ELLIS LLP                     Williamson, P.C.
300 North LaSalle                        1361 East Big Beaver Road
Chicago, Illinois 60654                  Troy, Michigan 48083
Telephone: (312) 862-2000                Phone: 248-457-9200
Facsimile: (312) 862-2200                Fax: 248-457-9201

*ATTORNEYS FOR DEFENDANT*                *ATTORNEYS FOR DEFENDANT*
*SYNCORA GUARANTEE, INC.*                *SYNCORA GUARANTEE, INC.*