# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

In re:

CITY OF DETROIT, MICHIGAN,

                  Debtor.

Chapter 9

Case No. 13-53846
Honorable Steven W. Rhodes

---

OBJECTION OF ROBBIE FLOWERS, MICHAEL WELLS, JANET WHITSON, MARY WASHINGTON, BRUCE GOLDMAN AND INTERNATIONAL UNION, UAW TO MOTION OF DEBTOR, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE ENTITIES, (B) NON-OFFICER EMPLOYEES AND (C) AGENTS AND REPRESENTATIVES OF THE DEBTOR (Docket No. 56)

---

Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington and Bruce Goldman (the "*Flowers* plaintiffs") plaintiffs in a Michigan civil action ("*Flowers v. Snyder")* against Michigan Governor Snyder, Michigan Treasurer Dillon and the State of Michigan under Article 9, Section 24 of the Michigan Constitution, join with International Union, UAW, the collective bargaining representative of Robbie Flowers and Bruce Goldman, in objection to the Motion Of Debtor, Pursuant To Section 105(A) Of The Bankruptcy Code, For Entry Of An Order Extending The Chapter 9 Stay To Certain (A) State Entities, (B) Non-Officer Employees And (C) Agents And Representatives Of The Debtor (Docket No. 56) (the "Motion"), and state:

1.      The *Flowers* plaintiffs are an employee of a Michigan municipal corporation named the Detroit Library Commission (Robbie Flowers), two retirees from the Detroit Library Commission (Michael Wells and Janet Whitson), a City of Detroit employee (Bruce Goldman), and a City of Detroit retiree (Mary Washington). Each has earned vested pension benefits from

the City of Detroit General Retirement System ("GRS"), and the three retiree plaintiffs are currently receiving pension benefits from GRS. International Union, UAW is the collective bargaining representative of Robbie Flowers and Bruce Goldman, and was the collective bargaining representative of the remaining *Flowers* plaintiffs when they were employed by the Detroit Library Commission or the City of Detroit.

2.      The *Flowers* plaintiffs' vested pension benefits are protected by Article 9, Section 24 of the Michigan Constitution, which provides that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation whereof which shall not be diminished or impaired thereby."

3.      The *Flowers* plaintiffs filed suit in state court against the State of Michigan and two of its constitutional officers because those officers had been abrogating and were threatening to abrogate plaintiffs' state constitutional rights, as more fully set forth in their amended verified complaint (Exhibit 6.1 to the Motion) and in their reply brief in support their motion for preliminary injunction in *Flowers v. Snyder* (attached as Exhibit 1 to the Declaration of William Wertheimer filed herewith).

4.      At no point have the *Flowers* plaintiffs sued the debtor or the Detroit Emergency Manager, the City of Detroit or any City of Detroit official or employee. Nor have they sought any relief against any of these persons or entities.

5.      The debtor at paragraph 11 of its Motion asserts that the *Flowers* plaintiffs sought *ex parte* injunctive orders. That is untrue. See the attached declaration of William Wertheimer filed herewith. At no point did the *Flowers* plaintiffs ever seek *ex parte* relief. To the contrary,

2

the *Flowers* defendants sought to delay as long as possible (for a now obvious reason) a fully briefed hearing on the merits of a motion for preliminary injunction seeking to preclude Governor Snyder from authorizing the filing of a Chapter 9 bankruptcy petition in violation of the Michigan Constitution. See Declaration of William Wertheimer, filed herewith.

6.     The *Flowers* plaintiffs' Michigan state law claim against Michigan Governor Snyder, Michigan Treasurer and the State of Michigan is well-grounded in the Michigan Constitution, as indicated by the debates concerning the adoption of what is now Article 9, Section 24 of the Michigan Constitution:

> MR. VAN DUSEN: An employee who continued in the service of the public employer in reliance upon the benefits which the plan says he would receive would have the contractual right to receive those benefits, and **would have the entire assets of the employer at his disposal from which to realize those benefits**.

1 Official Record, Constitutional Convention 1961, p. 774 (emphasis added).

7.     *Flowers v. Snyder* was filed once it became abundantly clear that Governor Snyder intended to unconstitutionally authorize the Emergency Manager to use federal bankruptcy law to override the protections of the Michigan State Constitution prohibiting the impairment of accrued pension benefits.[1] The City blindly and dismissively treats these suits as

---

[1] The Emergency Manager's radical proposal to cut funding to the retirement system using a new pension valuation prepared for the City that (apparently through the use of a new mix of assumptions) purports to significantly increase the level of underfunding, to offer pennies on the dollar for retirement system funding and then declare that accrued benefits must be cut, raised legitimate and serious concerns that state law, as well as federal bankruptcy law, was being used, or about to be used to eviscerate pension benefits that are fundamental in human terms and importance to pensioners and protected under the Michigan Constitution. See Declaration of Charles M. Moore in Support of City of Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code, par. 11-16 (describing new valuation report and assumptions).

3

mere collection actions designed to find end-runs around its Chapter 9 bankruptcy case, as if the lawsuits were the work of enterprising creditors looking every which way to avoid the bankruptcy case. See e.g., Motion at ¶23. But as the Court is well aware, Chapter 9 reflects our system of dual sovereignty and its reach is limited accordingly. A municipality is eligible to be a debtor "*if and only if*" it "is specifically authorized, in its capacity as a municipality or by name to be a debtor under [chapter 9] by State law, or by a governmental officer. . . ." 11 U.S.C. § 109(c) (2) (emphasis added). *Flowers* and the other lawsuits were commenced precisely to contest the authority of the Governor to issue such an authorization under state law where a purpose of the chapter 9 would be to impair constitutionally protected pension benefits.

8. Rather than enjoin *Flowers v. Snyder*, and the other lawsuits, they must proceed in the state courts. Otherwise, whether and to what extent this bankruptcy case is lawful under the Michigan Constitution is a cloud that will overhang even the most routine orders issued by this Court should the bankruptcy case continue without a resolution of these suits through the state court system and notwithstanding the orders already by the state court. The City's Motion is utterly blind to the fundamental role of these suits in defining the extent to which the bankruptcy can proceed to issue any orders at all. Or else the City hopes that the Court will not notice at all.

9. For the foregoing reasons, as well the grounds set forth in the Objection of The Michigan Counsel 25 of the American Federation State, County and Municipal Workers (Docket 84), specifically, that the City is not entitled to a stay under the automatic stay or Section 105 of the Bankruptcy Code, as well as under long-standing principles of federal court abstention and federalism principles embodied in the Tenth Amendment to the U.S. Constitution which the

4

*Flowers plaintiffs* and International Union, UAW join in, the *Flowers* Plaintiffs and the UAW

respectfully submit that the Motion should be denied.

Respectfully submitted,

/s/William A. Wertheimer
William A. Wertheimer (P26275)
30515 Timberbrook Lane
Bingham Farms, MI 48025
248-644-9200
billwertheimer@gmail.com

*Attorney for Robbie Flowers, Michael Wells, Janet*
*Whitson, Mary Washington and Bruce Goldman*

/s/Niraj Ganatra
Niraj Ganatra (P63150)
Michael Nicholson (P33421)
General Counsel
International Union, UAW
8000 East Jefferson Avenue
Detroit, Michigan 48214
313-926-5216
mnicholson@uaw.net

and

/s/Babette Ceccotti
Babette Ceccotti
Cohen, Weiss and Simon LLP
330 West 42d Street
New York, NY 10036-6979
212-356-0227
bceccotti@cwsny.com

*Attorneys for International Union, UAW*

Dated: 24 July 2013

5

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - DETROIT**

In re:

CITY OF DETROIT, MICHIGAN,                    Chapter 9

                        Debtor,                    Case No. 13-53846

      v.

                                        Honorable Steven W. Rhodes

## AMENDED DECLARATION OF WILLIAM WERTHEIMER

     1.      I am the lead attorney for plaintiffs in *Flowers, et al. v. Snyder, et al.,* No. 13-734-CZ (Ingham County Circuit Court July 3, 2013), one of the three "Prepetition Lawsuits" that the City is seeking to stay in its motion at Docket No. 56.   This Amended Declaration supplements my Declaration filed in this matter on July 23, 2013.

     2.      In that motion the City states at paragraph 11 that plaintiffs in *Flowers* (and the other two "Prepetition Lawsuits") sought "*ex parte* orders" for temporary or preliminary injunctive relief. That is untrue. At no point did the *Flowers* plaintiffs (or the *Webster* plaintiffs) ever seek *ex parte* relief.

     3.      I filed our suit on July 3, 2013 and drew Judge Rosemarie Aquilina. I had notified the Attorney General's office before filing that I would be going to chambers seeking an order to show cause for a hearing on a preliminary injunction precluding the Governor from authorizing a Detroit bankruptcy. I met up with Tom Quasarano and Michael Murphy of the Attorney General's office at court. The three of us went into Judge Aquilina's chambers where we met

with Morgan Cole, the court officer/law clerk. Ms. Cole stated that Judge Aquilina could hear the matter on July 15. I urged that the matter be set for July 15. The Attorney General's office objected and asked for a delay until July 22 because the earlier date would interfere with chemotherapy treatment that Mike Murphy (who would according to them be writing the response brief) had previously scheduled. I then agreed to the July 22 hearing date, with the defendants' responsive pleading to be filed July 15. Judge Aquilina subsequently issued the order to show cause for July 22 at 9 a.m.

4.     Later the day of July 3, John Canzano filed suit on behalf of the *Webster* plaintiffs. He subsequently obtained an order to show cause for his hearing for declaratory relief before Judge Aquilina on July 22 at 9 a.m.

5.     The Attorney General's office filed response briefs in the *Flowers* and the *Webster* cases on July 15.

6.     Michael Murphy's name was not on either brief defendants filed on July 15 and he has had no involvement in the case to my knowledge beyond his role in obtaining the July 22 hearing date described above

7.     On July 17 the Clark Hill law firm filed suit on behalf of the two Pension Systems and moved for an expedited briefing schedule and hearing pursuant to MCR 2.605(D).

8.     On July 18 Mike Pattwell, a Clark Hill attorney, advised me by phone that the *Pension System* plaintiffs would be seeking injunctive relief from Judge Aquilina that afternoon as they had received word that the City was planning on filing for bankruptcy on July 19. (The reply brief with the affidavit of Michael Nicholson was filed on July 18 and is attached as Exhibit 1.) I was planning on filing our reply brief for the July 22 hearing that afternoon, so I

2

decided to also appear before Judge Aquilina to seek immediate injunctive relief. I advised John Canzano of what I had heard and he decided similarly.

9.      At approximately 3:35 p.m. on July 18, I telephonically advised Tom Quasarano that I would be appearing in Judge Aquilina's courtroom shortly after 4 p.m. to seek an injunction. He said that he would meet me there and did.

10.     The City filed for bankruptcy at 4:06 p.m. We began our hearing at 4:15 p.m. A transcript of the hearing is attached hereto as Exhibit 2.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 24, 2013.

<u>/s/William Wertheimer</u>

3

# EXHIBIT 1

4

ROBBIE FLOWERS, MICHAEL WELLS,
JANET WHITSON, MARY WASHINGTON and
BRUCE GOLDMAN

Plaintiffs,

vs.

Case No. 13-729-CZ
Hon. Rosemarie Aquilina

RICK SNYDER, as the Governor of the State
of Michigan; ANDY DILLON, as the Treasurer of
the State of Michigan; and the STATE OF MICHIGAN,

Defendants.

/

William A. Wertheimer (P26275)
Attorney for plaintiffs
30515 Timberbrook Lane
Bingham Farms, MI 48025
248-644-9200
billwertheimer@gmail.com

Thomas Quasarano (P27982)
Brian Devlin (P34685)
Assistant Attorneys General
PO Box 30754
Lansing, MI 48909
quasaranot@michigan.gov

Andrew Nickeloff (P37990)
Marshall J. Widick (P53942)
James A. Britton (P71157)
Attorneys for plaintiffs
Sachs Waldman
1000 Farmer
Detroit, MI 48226
313-496-9429
anickelhoff@sachswaldman.com
mwidick@sachswaldman.com
jabritton@sachswaldman.com

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION[1]

---

[1]     This brief is in reply to defendants' response to plaintiffs' motion. It is not in response to defendants' motion for summary disposition. Plaintiffs will respond to that motion as provided for under MCR 2.116(G)(1)(a)(i) once defendants properly notice same. Plaintiffs do not agree to defendants' request that this Court (apparently at the hearing and after the fact) waive or adjust the response time provided in the court rules. State's brief, page 16.

Defendants' brief ignores (but does not dispute) the basic facts that plaintiffs allege and grossly mischaracterizes the nature of plaintiffs' claim. In Parts A and B below, we address these two defects in defendants' response. Then, in Parts C through G, we respond to the remainder of defendants' arguments in response to our request for a preliminary injunction.

**A. Undisputed Facts.** Plaintiffs' complaint is based on the undisputed fact that the Detroit Emergency Manager has publicly stated that Detroit retirees, employees and their unions must agree to significant cuts to their vested pension benefits outside of a Chapter 9 federal bankruptcy proceeding, and that if they fail to agree he will cut those benefits through operation of the federal bankruptcy code, based on the supremacy of the federal bankruptcy code over Article 9, Section 24 of the Michigan Constitution, which provides that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Since under Public Act 436 such a federal bankruptcy proceeding cannot be initiated by the Emergency Manager without authorization by Governor Snyder, plaintiffs have sued the Governor to stop such an authorization and the diminishment and impairment of vested Detroit pension benefits which will necessarily follow from it. In short, this litigation seeks to stop action by Governor Snyder that the plaintiffs allege to be unconstitutional under Article 9, Section 24, and does not seek a declaration that Public Act 436 is itself unconstitutional.

Since this litigation was commenced on 3 July 2013, the City of Detroit has again refused to accept or address the strictures of Article 9, Section 24. Thus, on 9 July 2013,

2

the General Counsel of the UAW – which is the collective bargaining representative of

plaintiffs Robbie Flowers and Bruce Goldman – wrote the City's lawyers, asking them:

> please cite the basis for any claim that the UAW has the authority to compromise the vested benefits of active and/or retired UAW or former UAW members employed or formerly employed by the City of Detroit and its affiliates. As I presume you know, Article 9, Section 24 of the Michigan Constitution provides in pertinent part that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Please tell me what authority your firm and/or Mr. Orr believe gives the UAW the right to compromise vested pension benefits, despite the contrary provisions of Article 9, Section 24. Please also tell us whether Mr. Orr and/or your firm take the position that Article 9, Section 24 of the Michigan Constitution is not or may not be binding on the City of Detroit, the State of Michigan, Governor Snyder, Mr. Orr or the UAW and state, if that is the case, under what circumstances you believe that Article 9, Section 24 would not bind some or all of these persons or entities.

Affidavit of Michael Nicholson, Exhibit B. Mr. Nicholson wrote this email in part to

accept an invitation sent to UAW and other unions and retiree groups to attend a meeting

on 10 July 2013 with representatives of both the City of Detroit and the Detroit General

Retirement System. Id., Ex. A.

Since this litigation was filed on July 3, the Detroit Emergency Manager has also

continued to publicly take the position that vested pensions must be cut without regard to

Article 9, Section 24 of the Michigan Constitution. See the video of his 5 July 2013

interview with Detroit Public Television's MiWeek program beginning at 14 minutes,

www.youtube.com/watch?v=TspCsrXmkZA.

In addition, it is clear that the Detroit Emergency Manager is moving closer to a

bankruptcy filing and that the Governor is directly involved. In an article this past

Monday headlined "Detroit Bankruptcy Clock Ticking" Daniel Howes reported in the

Detroit News: "The governor and Emergency Manager Kevyn Orr met Monday to

3

discuss the situation. Additional meetings with creditors, legal teams and the Snyder administration are scheduled this week to determine whether Orr and his team are making enough meaningful progress in their talks with creditors, unions and pension funds to delay a bankruptcy filing." See Exhibit A attached and available online at www.detroitnews.com/article/20130716/BIZ/307160025.

As these new facts show, the Emergency Manager continues to demand that unless unions and retiree groups agree to significant cuts in retiree benefits outside of bankruptcy, he will impose such cuts in bankruptcy, following the Governor's authorization to commence a Chapter 9 proceeding, in derogation of the constitutional rights guaranteed by Article 9, Section 24. See Amended Verified Complaint, ¶ 21-25. The factual basis for plaintiffs' complaint in this litigation is thus undisputed, and stands against defendants' claim that – contrary to the unchallenged facts – their concerns about their pensions and their rights are merely hypothetical and unripe because nothing is being done to harm them. To the contrary, real harm continues to take place now: the plaintiffs continue to be told that unless they agree to cuts in their vested pension benefits now, they will be imminently be imposed through a Chapter 9 bankruptcy proceeding authorized by the Governor.

**B.** **Mischaracterization of Plaintiffs' Complaint.** Defendants' claim that plaintiffs "bring a facial constitutional challenge" to Public Act 436. State's brief, page 1. Not so. Plaintiffs begin their complaint by stating that their constitutional right to vested pension benefits "are being violated [present tense] in the emergency financial management proceedings that the State has implemented in response to Detroit's fiscal crisis and whose rights will be threatened [future tense] with abrogation if Governor

4

Snyder authorizes the Detroit Emergency Manager to proceed under Chapter 9 in bankruptcy." Amended verified complaint, ¶ 1. Nowhere in their complaint do plaintiffs allege that Public Act 436 is unconstitutional on its face or otherwise. (Nor do they seek relief consistent with a facial challenge.) Mischaracterizing plaintiffs' allegations has three tactical advantages for defendants. First, it allows defendants to ignore the facts on the ground, facts upon which this civil action is based. Second, it allows defendants to make their arguments without acknowledging that plaintiffs' constitutional rights under Article 9, Section 24 are being threatened now. Third, it allows defendants to argue that they can protect these constitutional rights in bankruptcy, even though Detroit's Emergency Manager has flatly and uncategorically opined to the contrary. We address these points in what follows below.

C. **Plaintiff's Request for Injunctive Relief is Neither Premature, Overbroad nor Constitutionally Infirm.** Defendants here make four arguments against injunctive relief. None has merit.

1. First, defendants argue that no prohibitory injunction can be issued because declaratory relief has not as yet failed, citing dictum from *Strauss v Governor*, 459 Mich 526, 532; 592 NW2d 53 (1999). State brief, pages 4-5. The Court's dictum from *Strauss* is inapplicable here for at least three reasons. First, *Strauss* involved a fight between the Governor and the State Board of Education over which constitutional provision took precedence, Article 5, Section 2 or Article 8, Section 3. This case involves the State in the person of the Governor abrogating the constitutional rights of its citizens. That is a distinction that should make a difference. Second, this case involves a very public fight in which the Governor knows very well that his Emergency Manager is

5

refusing to recognize the Article 9, Section 24 rights of plaintiffs and thousands of other retirees. To require this Court to first issue declaratory relief in these circumstances elevates form over substance. Third, the bankruptcy filing may be imminent, such that there may be no time for the courtesy contemplated by *Strauss.* See, e.g., www.freep.com/article/20130718/news01/307180107/detroit-prepares-file-bankruptcy-soon-friday ("Detroit prepares to file for bankruptcy as soon as Friday") and www.youtube.com/watch?v=TspCsrXmkZA, beginning at 10 minute mark. With all that said, plaintiffs would have no objection if this Court fashioned the requested preliminary relief in the form of a declaration, but only if the Governor agrees not to act contrary to the declaration before the plaintiffs have the opportunity to return to this Court and seek a prohibitory injunction.

2. Defendants next argue that injunctive relief is premature given the opportunity for relief in bankruptcy court. State brief, page 5. They cite two Bankruptcy Code provisions: 11 USC §109(c) and 11 USC § 943(4). Neither protects against an impairment of pension benefits in violation of Article 9, Section 24. First, none of the disjunctive criteria in 109(c) for eligibility to proceed under Chapter 9 contain a basis for a challenge based on Article 9, Section 24. Second, the requirement in 11 USC § 943(4) that "the debtor is not prohibited by law from taking any action necessary to carry out the plan" may not protect Article 9, Section 24 rights because of the principle that "federal law trumps state law," which the Detroit Emergency Manager has indicated will be applied. To support this concern, we cited in our opening brief the bankruptcy court decisions in *In re City of Stockton, California,* 478 BR 8 (Bankr ED Cal 2012); and *In re City of Vallejo,* 403 BR 72 (Bankr ED Cal 2009), which we expect will be cited in a

6

Chapter 9 proceeding in support of the proposition that federal bankruptcy law supersedes Article 9, Section 24 of the Michigan Constitution.

3.  Defendants also argue that the injunction request is overbroad because "[t]his Court cannot determine, based on the record Plaintiffs present, how any bankruptcy proceeding for the City of Detroit, if filed, may impact their pension benefits or if it will at all, until the bankruptcy plan is filed with the bankruptcy court and ultimately confirmed." State brief, page 6. But this claim that plaintiffs' concerns are only hypothetical ignores the Detroit Emergency Manager's stated intent and the terms of his proposal to creditors. And it also ignores the fact that if no relief is granted now, it will likely be too late after a bankruptcy filing to protect plaintiffs' rights under Article 9, Section 24. In other words, the result, if defendants' argument is accepted, is that by the time the harm comes the citizens of the State of Michigan who are Detroit pensioners will be unable to sustain their State constitutional rights. That is precisely the plan to violate Article 9, Section 24 of the Michigan Constitution that we believe the Governor will facilitate at the request of the Emergency Manager, absent the relief we request.[2]

4.  Defendants further argue that the plaintiffs' injunction request is mandatory. State brief, page 6. It is not. As defendants recognize in making other of their arguments, the relief sought by plaintiffs' pending motion is, by its terms, clearly prohibitory.

---

[2]    The motion before the Court is a motion for preliminary injunction, not a request for final relief. While we recognize the sensitivity of this issue and this litigation, the Court should consider the appropriateness of limited discovery on the issue of communications between the Governor, the defendant State Treasurer and the Emergency Manager (and their staff and other agents) with respect to City of Detroit vested pension benefits. Thus, even it plaintiffs are found to lack standing to seek injunction, this civil action may still proceed on the claim in Complaint for declaratory relief.

**D.    Plaintiffs Have Standing to Bring This Action.** Defendants recognize that the Michigan Supreme Court restored Michigan's limited, prudential approach to standing in *Lansing School Education Ass'n v Lansing Board of Education,* 487 Mich 349, 372; 792 NW2d 686 (2010). State's brief, page 7.[3] This means that citizens have standing if they have some individual interest in the subject matter of the complaint that is not common to all the citizens of the state. 487 Mich at 356. Plaintiff retirees and vested employees meet such a test. Their pension benefits are in danger of being reduced or eliminated if the Governor is allowed to authorize a Chapter 9 bankruptcy filing. The Detroit Emergency Manager is threatening precisely that now, in an effort to coerce the plaintiffs' agreement to "significant cuts" in their vested retirement benefits. Other citizens of the state do not have such an interest. Plaintiffs have standing to seek injunctive relief.[4]

Defendants also argue that Public Act 436 expressly states (at MCL 141.1572) that it provides no cause of action. State's brief, pages 7-8. But plaintiffs are not suing for a violation of Public Act 436; they are suing over an abridgement of their constitutional

---

[3]    Despite the dissent in *Lansing School Education Ass'n* and the changing composition of the Court, the Court has given no indication that it intends to retreat from this position. To the contrary. See, *Ader v Delta College Bd of Trustees,* 493 Mich 887; 822 NW2d 221 (2012) (vacating order that had granted leave to appeal from a decision of the Court of Appeals applying *Lansing School Education Ass'n* and denying application for leave) (J. Markman dissenting).

[4]    Additionally, although not at issue with respect to plaintiffs' pending motion for preliminary injunction, this Court clearly has jurisdiction to issue a declaratory judgment under MCR 2.605. An "actual controversy" under that court rule exists when a judgment is necessary to guide a parties' future conduct in order to preserve legal rights. *UAW v Central Michigan University,* 295 Mich App 486, 495; 815 NW2d 132 (2012). In granting such relief "courts are not precluded from reaching issues before actual injuries or losses have occurred." *Id.* Accord, *Huntington Woods v Detroit,* 279 Mich App 603, 616; 761 NW2d 127 (2008); *Lake Angelus v Aeronautics Comm,* 260 Mich App 371, 376-77; 676 W2d 642 (2004).

rights.[5] A Michigan court of general jurisdiction is the proper forum for a citizen of Michigan to bring a claim of a state constitutional violation. And the relief plaintiffs seek is available through this Court. MCR 3.310 and 2.605.

**E.    Plaintiffs' Constitutional Claims Are Ripe for Review.** Defendants argue that plaintiffs' constitutional claims are not ripe because the bankruptcy filing has not yet occurred. State's brief, pages 11-12. Incredibly, they argue this knowing that the Emergency Manager has announced that he will seek to extinguish plaintiffs' Article 9, Section 24 rights should he file a Chapter 9 in response to their failure to agree now to "significant cuts" in their pensions.

One short, practical answer is that a bankruptcy filing may well ring a bell that cannot be unrung: the trumping of plaintiffs' constitutional rights by federal law, after the sovereign has waived – through the Governor's authorization for a Chapter 9 – whatever rights the State has under the Tenth Amendment to the federal Constitution to insist on the supremacy of the State Constitution. See, *In re City of Vallejo, supra,* 403 BR 72 (Bankr ED Cal 2009)(copy attached). That is the legal opinion of the Detroit Emergency Manager (an opinion that plaintiffs have little reason to doubt for purposes of this motion[6] and that defendants do not dispute in their brief): that federal law will trump

---

5    The plaintiffs' pension plan gives them a right to bring such a suit. See Section 47-3-11(i)(1) of the General Retirement System Pension Plan which is also Ord. No. 29-01, § 1, 11-30-01 and is available on-line at www.rscd.org.
6    Plaintiffs, of course, reserve the right in bankruptcy court to argue to the contrary. But we note, for example, the holding of federal bankruptcy court in *Vallejo*: "Therefore, "by authorizing the use of chapter 9 by its municipalities, California must accept chapter 9 in its totality; it cannot cherry pick what it likes while disregarding the rest." *In re County of Orange,* 191 B.R. 1005, 1021 (Bankr. CD Cal 1996) … Since the state must consent to a bankruptcy filing under Section 109(c)(2) [of the Bankruptcy Code], the state consents to the displacement of its own law in order to obtain the benefits uniquely available under the Bankruptcy Code." 403 BR at 76.

Article 9, Section 24 of the Michigan Constitution. See the Detroit Emergency Manager's 14 June 2013 statement to the Detroit Free Press Editorial Board quoted at ¶ 22 of the amended verified complaint. ("If we don't reach an agreement one way or the other, we feel fairly confident that the state federal law, federalism, will trump state law or negotiate.") Or put in plain terms, the constitutional rights plaintiffs are relying on here will then be a nullity.

A second short, practical answer is that the threats to ignore Article 9, Section 24 are ongoing and are being used to browbeat plaintiffs (and others) into a deal that would avoid bankruptcy but ignore their constitutional rights. Defendants admit as much at the conclusion of their brief when they urge this Court to grant their motion to dismiss now "to avoid adversely impacting the City of Detroit Emergency Manager's current efforts to reach a consensus that could achieve some financial stability for the City without recourse to bankruptcy. " State brief, page 16. We know from the verified and unrebutted complaint that the "consensus" will be reached, if at all, in violation of plaintiffs' rights. Defendants would then undoubtedly argue that any attack on that "consensus" agreement would be moot or in some other way immune to attack. The time for this issue to be decided is now.

And the law supports such a common sense finding that this case is ripe for decision now. All that is required is that "a genuine controversy exist between the parties." *Michigan Chiropractic Council v Comm'r of Ins,* 475 Mich 363, 381; 716 NW2d 561 (2006). A claim lacks ripeness only where "the harm asserted has [not] matured sufficiently to warrant judicial intervention ..." *Id.,* quoting from *Warth v Seldin,* 422 US 490, 499 n 10. A genuine controversy exists here and now. Plaintiffs are fighting

for their future financial well-being. And that fight will be over before it begins absent judicial intervention now.

**F.** **Plaintiffs Have Stated a Claim.** Defendants' argument that plaintiffs have failed to state a claim is entirely based on the mistaken premise that plaintiffs are bringing a facial challenge to Public Act 436. State brief, page 12. Plaintiffs' claim is that the receivership under which the City of Detroit is currently operating is currently ignoring the Article 9, Section 24 rights of the City's' retirees (this is supported with multiple and direct statements from the Detroit Emergency Manager) and that in these circumstances (and this part of the complaint is in caps, bolded and underlined at the top of page 4) "it would be unconstitutional for the governor to authorize the Detroit Emergency Manager to proceed under Chapter 9." This states a claim.

**G.** **Plaintiffs Have Met the Prerequisites for Injunctive Relief.** Defendants argue first that plaintiffs will not suffer irreparable harm if an injunction is not issued. State's brief, page 13. Defendants do not even attempt to argue that the loss or in the words of the Detroit Emergency Manager the "significant cuts" in plaintiffs' vested pension benefits would not constitute irreparable harm. Rather they argue that plaintiffs will have a remedy in bankruptcy. Not according to the Detroit Emergency Manager. And he would be speaking for the debtor in bankruptcy.

Second, defendants argue that the balance of harms favors them by using a claim of urgency, all as part of an argument that completely fails to account for the derogation of Michigan Constitutional rights that they intend to cause. State's brief, pages 13-14. Put another way, the defendants claim that our State Constitution can be ignored if the Governor and his agents decide that following it would complicate matters in a municipal

11

receivership. This would surprise the framers of our State Constitution, one of whom stated that the then new Article 9, Section 24 meant that a public employee with vested pension benefits, "would have the entire assets of the employer at his disposal from which to realize those benefits." 1 Official Record, Constitutional Convention 1961, p 774.

Third, defendants argue the public interest. State's brief, pages 14-15. Certainly, the public interest would be served if the Governor were to be precluded from authorizing a bankruptcy that would threaten the abrogation of constitutional rights. The people, in adopting their Constitution, including Article 9, Section 24, have spoken in that regard. And just as certainly, the public interest would not be served if the Detroit Emergency Manager were to be allowed to continue down his path all the while ignoring those constitutional rights.

## CONCLUSION

Plaintiffs are entitled to know whether their Article 9, Section 24 constitutional rights have any meaning in the current Detroit financial emergency. And they are entitled to know that now, and to have those rights protected. The plaintiffs' motion for preliminary injunction should be granted.

Respectfully submitted,

s/William A. Wertheimer
William A. Wertheimer (P26275)
Attorney for plaintiffs
30515 Timberbrook Lane
Bingham Farms, MI 48025
248-644-9200

Andrew Nickeloff (P37990)
Marshall J. Widick (P53942)
James A. Britton (P71157)

12

Attorneys for plaintiffs
Sachs Waldman
1000 Farmer
Detroit, MI 48226
313-496-9429
anickelhoff@sachswaldman.com


mwidick@sachswaldman.com
jabritton@sachswaldman.com

Dated: 18 July 2013

PROOF OF SERVICE

THE UNDERSIGNED CERTIFIES THAT ON 18 JULY 2013 THE FOREGOING
INSTRUMENT WAS SERVED UPON THE FOLLOWING:

1.  Thomas Quasarano
2.  Brian Devlin
3.

BY:

X    U.S. MAIL                              FAX

     HAND DELIVERY              U.S.EXPRESS MAIL
     UPS                          X    OTHER: email
BY:
SIGNATURE: _____

13

ROBBIE FLOWERS, MICHAEL WELLS,
JANET WHITSON, MARY WASHINGTON and
BRUCE GOLDMAN

           Plaintiffs,

vs.

                               Case No. 13-729-CZ
                               Hon. Rosemarie Aquilina

RICK SNYDER, as the Governor of the State
of Michigan; ANDY DILLON, as the Treasurer of
the State of Michigan; and the STATE OF MICHIGAN,

           Defendants.

                                                             /

William A. Wertheimer (P26275)
Attorney for plaintiffs
30515 Timberbrook Lane
Bingham Farms, MI 48025
248-644-9200
billwertheimer@gmail.com

Andrew Nickeloff (P37990)
Marshall J. Widick (P53942)
James A. Britton (P71157)
Attorneys for plaintiffs
Sachs Waldman
1000 Farmer
Detroit, MI 48226
313-496-9429
anickelhoff@sachswaldman.com
mwidick@sachswaldman.com
jabritton@sachswaldman.com

Thomas Quasarano (P27982)
Brian Devlin(P34685)
Assistant Attorneys General
PO Box 30754
Lansing, MI 48909
quasaranot@michigan.gov

## AFFIDAVIT OF MICHAEL NICHOLSON

State of Michigan

County of Wayne

    Michael Nicholson, being first duly sworn, states as follows:

1

1.  My name is Michael Nicholson. I am a citizen of the State of Michigan. I am employed as General Counsel by International Union, UAW. I make this affidavit based on personal knowledge.

2.  On June 28, 2013, I received the email message attached hereto as Exhibit A from David Birnbaum, a lawyer with the Jones Day law firm, which is lead counsel to the Emergency Manager for the City of Detroit.

3.  On July 9, 2013, I sent the email message attached hereto as Exhibit B to Mr. Birnbaum and his colleague at Jones Day, Dan Merrett.

4.  Since July 9, 2013 until the time that I signed this affidavit today, I have received no response from anyone at Jones Day to the questions that I raised in Exhibit B with respect to pension benefits and Article 9, Section 24 of the Michigan Constitution.

Further Affiant sayeth not.

_____
Michael Nicholson

Subscribed and sworn to before me this 18th day of July 2013.

_____
Nancy S. Dennis, Notary Public
County of Macomb
State of Michigan
Acting in Wayne County
My commission expires February 10, 2017

NANCY S DENNIS
Notary Public - Michigan
Macomb County
My Commission Expires Feb 10, 2017
Acting in the County of __Wayne__

**From:** David Birnbaum <dbirnbaum@jonesday.com>
**Subject:** City of Detroit -- Pension Restructuring Discussions (GRS)
**Date:** June 28, 2013 4:42:56 PM EDT
**To:** MNicholson@uaw.net
**Cc:** Evan Miller <emiller@JonesDay.com>, Brian Easley <beasley@JonesDay.com>, "David G. Heiman" <dgheiman@JonesDay.com>, Heather Lennox <hlennox@JonesDay.com>

_____

2 Attachments, 4 KB

Dear Mr. Nicholson:

Following the presentations made on June 20th, outside counsel for GRS reached out to the City of Detroit for more information on, and to discuss, a pension restructuring proposal. GRS and the City of Detroit have tentatively scheduled a meeting on pension restructuring for Wednesday, July 10th, at 1 pm (location to be determined). The City will be prepared to provide more information on its developing pension restructuring proposal. Because the City expects that the proposal will impact the pension benefits of active participants of GRS, who include your members, the City would like to invite you to this meeting on July 10th, at 1 pm to participate in the discussion. We expect the meeting will last approximately 2 hours. GRS will be sending an advisor-only team (attorneys and financial advisors), and the City believes this is a good way to proceed. Please let us know at your earliest convenience if you will attend and the names of the attendees. We will contact you as soon as practicable to provide details about the meeting location.

Regards,

David



**David S. Birnbaum**
_____

77 West Wacker Drive, Suite 3500 • Chicago, IL 60601
**DIRECT** 312.269.4005 • **FAX** 312.782.8585 • **EMAIL** dbirnbaum@jonesday.com

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

**Exhibit A**

**From:** Michael Nicholson <mnicholson@uaw.net>
**Subject:** Re: Detroit - Data room access/ July 10 and 11 meetings
**Date:** July 9, 2013 1:57:49 PM EDT
**To:** Dan Merrett <dmerrett@JonesDay.com>, "David S. Birnbaum" <dbirnbaum@jonesday.com>
**Cc:** Marshall Widick <mwidick@sachswaldman.com>, Andrew Nickelhoff <anickelhoff@sachswaldman.com>



Dear Messrs. Merrett and Birnbaum:

UAW has requested access to the City of Detroit data room maintained by your firm. You have responded by proffering a proposed nondisclosure agreement and release, and have made UAW's execution of such documents a condition of our access to the data room.

Please explain the legal basis for conditioning UAW's access to whatever information is obtainable through the City of Detroit data room upon our execution of the confidentiality agreement and release that you have proferred. As you know, UAW has often signed confidentiality agreement with private corporations going through financial restructurings. However, in this instance, we are dealing with a public entity, the City of Detroit. I would like to understand the basis for withholding data room information with respect to the City of Detroit based on claims of confidentiality.

As to the meetings concerning pensions and OPEB that your firm, on behalf of Mr. Orr, is conducting on July 10 and 11, 2012, we wish to attend the meetings, but reserve all rights with respect to the meetings and to such position(s) that Mr. Orr and/or your firm may seek to take with respect to such meetings.

Further to that reservation of rights, UAW continues to seek an answer from Mr. Orr and your firm to the following: please cite the basis for any claim that the UAW has the authority to compromise the vested benefits of active and/or retired UAW or former UAW members employed or formerly employed by the City of Detroit and its affiliates. As I presume you know, Article IX, Section 24 of the Michigan Constitution provides in pertinent part that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Please tell me what authority your firm and/or Mr. Orr believe gives the UAW the right to compromise vested pension benefits, despite the contrary provisions of Article IX, Section 24. Please also tell us whether Mr. Orr and/or your firm take the position that Article IX, Section 24 of the Michigan Constitution is not or may not be binding on the City of Detroit, the State of Michigan, Governor Snyder, Mr. Orr or the UAW and state, if that is the case, under what circumstances you believe that Article IX, Section 24 would not bind some or all of these persons or entities. We also seek an answer to the same questions with regard to vested post-retirement insurance benefits, but as to such the question is posed with the additional need to consider, inter alia, the holding of the United States Supreme Court in *Chemical Workers v. Pittsburgh Plate Glass*, 404 U.S. 157 (1971), which states at its footnote 20 that "[u]nder established contract principles, vested retirement rights may not be altered without the pensioner's consent."

We do not understand the July 10 and 11 multiple stakeholder meetings to which we have been invited to be a forum for negotiation of your proposed pension and retiree health care changes, but are willing to attend to obtain for our union whatever information may be provided at those meetings. Your full answers to the questions posed in the foregoing paragraphs of this message will help the UAW determine the scope of any such negotiations and the UAW's decisions regarding its representative capacity in them, about which your firm has inquired.

Please provide me with the exact location of the July 10 and 11 meetings.

Thank you.

Michael Nicholson
General Counsel - International Union, UAW
Solidarity House - 8000 East Jefferson Avenue
Detroit, Michigan 48214
UAW Office Phone: 313.926.5216
Cell Phone: 734.719.0850
Email: mnicholson@uaw.net

**Exhibit B**

*******************************************
*This e-mail message from Michael Nicholson is for the sole use of*
*the intended recipient(s) and may contain confidential and privileged*
*information. Any unauthorized review, use, disclosure or distribution is*

# EXHIBIT 2

```
 1                          STATE OF MICHIGAN
              30TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF INGHAM
 2                              CIVIL DIVISION

 3      THE GENERAL RETIREMENT SYSTEM
        OF THE CITY OF DETROIT, and THE
 4      POLICE AND FIRE RETIREMENT SYSTEM
        OF THE CITY OF DETROIT,
 5
                           Plaintiffs,
 6      v                                    Case No. 13-768-CZ
                                             Hon. Rosemarie Aquilina
 7      KEVYN D. ORR, in his official capacity
        as the EMERGENCY MANAGER OF THE CITY OF
 8      DETROIT, and RICHARD SNYDER, in his
        official capacity as the GOVERNOR OF THE
 9      STATE OF MICHIGAN,

10                         Defendants.
        _____/
11      GRACIE WEBSTER and
        VERONICA THOMAS,
12
                           Plaintiffs,
13      v                                    Case No. 13-734-CZ
                                             Hon. Rosemarie Aquilina
14      THE STATE OF MICHIGAN; RICHARD
        SNYDER, as Governor of the State
15      of Michigan; and ANDY DILLON,
        as Treasurer of the State of
16      Michigan,
                           Defendants.
17      _____/
        ROBBIE FLOWERS, MICHAEL WELLS,
18      JANET WHITSON, MARY WASHINGTON,
        and BRUCE GOLDMAN,
19
                           Plaintiffs,
20      v                                    Case No. 13-734-CZ
                                             Hon. Rosemarie Aquilina
21      RICK SNYDER, as the Governor of the
        State of Michigan; ANDY DILLON, as
22      the Treasurer of the State of Michigan;
        and the STATE OF MICHIGAN,
23
                           Defendants.
24      _____/

25                    MOTION FOR PRELIMINARY INJUNCTION


                                                              1
```

```
 1              BEFORE THE HON. ROSEMARIE AQUILINA, CIRCUIT JUDGE

 2              Ingham County, Michigan - Thursday, July 18, 2013

 3

 4         APPEARANCES:

 5         For Plaintiffs Retirement Systems:
                                RONALD A. KING (P45088)
 6                              MICHAEL J. PATTWELL (P72419)
                                CLARK HILL PLC
 7                              212 East Grand River Ave.
                                Lansing, MI 48906
 8         For Plaintiffs Webster, et al.:
                                JOHN R. CANZANO (P30417)
 9                              Smith & Radtke, PC
                                400 Galleria Officentre, Ste. 117
10                              Southfield, MI   48034

11         For Plaintiffs Flowers, et al.:
                                WILLIAM A. WERTHEIMER (P26275)
12                              Attorney at Law
                                30515 Timberbrook Lane
13                              Bingham Farms, MI   48025

14         For the Defendants:  THOMAS QUASARANO (P27982)
                                Assistant Attorney General
15                              State Operations Division
                                P.O. Box 30754
16                              Lansing, MI 48909

17

18

19         REPORTED BY:        Melinda I. Dexter, RMR, RPR, CSR-4629
                                Official Court Reporter
20                              313 W. Kalamazoo
                                Post Office Box 40771
21                              Lansing, MI   48901-7971

22

23

24

25

                                                                    2
```

```
 1                    T A B L E   O F   C O N T E N T S

 2

 3

 4

 5       WITNESSES:

 6            None

 7

 8

 9

10

11       EXHIBITS:

12            None

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**4**

1       Ingham County, Michigan

2       Thursday, July 18, 2013 - At 4:15 p.m.

3       MR. KING:  Good afternoon.

4       THE COURT:  Good afternoon.  We have everybody

5 here?

6       MR. KING:  They are.

7       THE COURT:  All right.  This is Docket

8 13-768-CZ, the General Retirement System of the City of

9 Detroit and the Police and Fire Retirement System of the

10 City of Detroit versus Kevin D. Orr, in his official

11 capacity as the Emergency Manager of the City of Detroit,

12 and Richard Snyder, in his official capacity as the

13 Governor of the State of Michigan.

14       Counsel, your appearances for the record.

15       MR. KING:  Good afternoon, your Honor.  Ron

16 King with Clark Hill on behalf of the Plaintiffs, the

17 General Retirement System of the City of Detroit and the

18 Police and Fire Retirement System of the City of Detroit.

19       THE COURT:  Welcome.

20       MR. KING:  Thank you.

21       MR. QUASARANO:  Your Honor, if I may, Thomas

22 Quasarano, Assistant Attorney General, that will be

23 appearing in this case on behalf of the Defendant.  I

24 believe the Defendant was served yesterday.  We have not

25 received a request for representation, but I'm very

**5**

1 likely going to be asked to represent the Governor.

2       THE COURT:  Sir?

3       MR. WERTHEIMER:  Excuse me, your Honor,

4 William Wertheimer.  I apologize for my dress.

5       THE COURT:  No problem.  I know it's last

6 minute.  I don't care how people are dressed.  It's more

7 important that you are here.

8       MR. WERTHEIMER:  Thank you, your Honor.  I was

9 here to file my reply brief today for the Monday hearing.

10 I am now here knowing that this motion has been filed,

11 and I wanted to enter my appearance.

12       THE COURT:  All right.  You may have a seat.

13 There is plenty of room for all.

14       MR. WERTHEIMER:  Thank you.

15       MR. CANZANO:  Your Honor, excuse me, John

16 Canzano, Plaintiffs' attorney in the Webster case.  Same

17 as Mr. Wertheimer, we just found out about this.  I'm

18 here.  My reply brief is being filed.  I have a judge's

19 copy here somewhere.

20       THE COURT:  All right.  Have a seat.

21       MR. KING:  Your Honor --

22       THE COURT:  Anybody else?

23       MR. PATTWELL:  Your Honor, Michael Pattwell

24 from Clark Hill on behalf of Plaintiffs.

25       THE COURT:  Thank you.

**6**

1 Counsel?

2       MR. KING:  Your Honor, Ron King again on behalf

3 of the Plaintiffs, the Detroit Retirement Systems.  We

4 might need to beg the Court's indulgence.  While we

5 appreciate that you have seen us on very short notice,

6 we've been advised that the City has filed, and we're

7 pulling it up on the electronic filing system, so we

8 might need a few minutes here to figure out our very next

9 step.

10       THE COURT:  Okay.

11       MR. KING:  Because the effect of a bankruptcy

12 filing, if, in fact, that's -- we're trying to conform

13 that.  We think, in fact, it has been filed here within

14 the last half hour.  So we probably need about a

15 ten-minute recess here, if the Court would indulge us.  I

16 know you have another matter.

17       THE COURT:  Do we want to make a phone call?

18       MR. KING:  Yeah.  We can, but we're pretty --

19       THE COURT:  Well, here's the thing:  If they

20 haven't filed, we need to hurry up and proceed.  If they

21 have filed --

22       MR. KING:  We're pretty confident that they

23 filed.

24       Right?

25       I mean, we're pulling it up.  Yeah.  It's been

**7**

1 confirmed.  So I'm not sure where that leaves us with

2 this proceeding because it's going to be pretty hard to

3 undue.  It's been done.

4       MR. WERTHEIMER:  There is no automatic stay in

5 this.

6       MR. KING:  Yeah.  What we're here for -- the

7 really --

8       What counsel is saying is there is no automatic

9 stay with respect to this proceeding.  So in our

10 judgment, this matter will proceed.  What you have before

11 you, however, is a motion for temporary restraining order

12 to enjoin certain conduct that's already occurred.  So

13 I'm not sure that we really have a lot of business in

14 front of the Court at this moment, but I would like to

15 just confer for about ten minutes on that issue because

16 we will proceed in the case.  And if we're here and you

17 want to take the time to set some sort of expedited

18 briefing schedule, we could do that also.

19       It's quite likely that you, your Honor, will be

20 able to make a ruling on the merits of this case in

21 advance of whatever occurs in the context of a Chapter 9

22 filing.

23       THE COURT:  I plan on making a ruling on

24 Monday.  I could make a ruling tomorrow, if push came to

25 shove, but Monday would probably be soon enough.  I am

**Page 8**

1  confident that the bankruptcy court won't act as quickly
2  as I will.
3      MR. KING: Yeah. I'm not sure, but we'll see.
4  I mean, there might -- but, nevertheless, so we should --
5      If you're prepared to rule on the merits on
6  Monday, again I'm not sure what -- if there is much
7  business for us left to do before the Court today.
8      THE COURT: Unless some kind of -- I don't
9  really have any authority over them, so.
10     MR. KING: Right.
11     THE COURT: I don't think anything --
12  Counsel?
13     MR. WERTHEIMER: Your Honor, the motion that's
14  up for Monday, our motion at least that's up for Monday,
15  is a request for a preliminary injunction to enjoin the
16  Governor. We have no evidence the Governor has
17  authorized any bankruptcy, and we would not only want to
18  go forward on Monday but ask that the motion for
19  preliminary injunction be moved up to now, hopefully, to
20  tomorrow morning if the Court will not hear it now. But
21  I don't think there is any reason why the Court cannot
22  hear our motion for preliminary injunction.
23     I'm not talking about in terms of the Court's
24  preparedness in terms of the apparent filing. They
25  may have filed. But nobody -- I asked the Governor's

8

**Page 9**

1  Office before we came in here -- er, the Attorney General
2  whether they could make any representations to me that
3  would obviate the need for me going forward, and they
4  could not.
5     So we've got a written, fully briefed request/
6  motion for preliminary injunction. The Attorney
7  General's Office has briefed it. Time is obviously of
8  the essence. I would suggest that the Court hear our
9  motion to preliminarily enjoin the Governor authorizing a
10  bankruptcy now.
11     MR. CANZANO: Your Honor, I would make
12  essentially the same request except that our motion,
13  although it seeks preliminary injunctive relief in the
14  alternative, it primarily seeks a final declaratory
15  judgment that what has just happened, apparently, is
16  unconstitutional, and that is ready for a final decision
17  we were saying on Monday. We have a reply brief that has
18  just been filed, and we would -- we could -- this Court
19  could issue that order immediately, and I don't know what
20  the consequences for the bankruptcy court would be,
21  necessarily, but I think it would -- it might make a
22  difference.
23     MR. WERTHEIMER: I'm sorry, and I think that at
24  a minimum, your Honor, I think we should -- I think the
25  Court should decide the preliminary injunction now, but

9

**Page 10**

1  we should find out from the Office of the Attorney
2  General whether the Governor has authorized a bankruptcy
3  that has done the act that we were attempting to enjoin
4  and that they knew we were attempting to enjoin and that
5  they've known for the last two weeks and that they're
6  filing briefs on saying that it's not ripe. The
7  attorneys for the Government have represented to this
8  Court that our motion is not ripe.
9     THE COURT: I just received a note from my law
10  clerk that says the bankruptcy was filed at 4:06.
11     MR. KING: Right. Your Honor, so what we'd
12  like to do here is amend our emergency motion for
13  temporary restraining order and get it and request from
14  this Court an order enjoining the Governor and the
15  Emergency Manager from taking any further action in the
16  bankruptcy proceeding, and we'll modify our order to that
17  effect.
18     MR. WERTHEIMER: I would join that as to the
19  Governor. We have not sued the Detroit Emergency
20  Manager, but I would orally join in that motion as to the
21  Governor and the Secretary of the Treasury.
22     MR. CANZANO: I would say the same in our case.
23  We're not joining their motion but we're making a motion
24  in our case that would be the same as theirs only against
25  the Governor.

10

**Page 11**

1     THE COURT: Granted, as to all of your
2  requests.
3     How soon are you going to present me with an
4  order?
5     MR. KING: Right now.
6     THE COURT: All right.
7     MR. KING: We just need to mark up the order
8  that we have for the Court.
9     THE COURT: Absolutely.
10    MR. QUASARANO: Your Honor, if I may, we would
11  ask that the Court stays enforcement of the order, and
12  your ruling on that would be appreciated at this time.
13    THE COURT: Denied.
14    MR. QUASARANO: Thank you. We'll present an
15  order as soon as possible.
16    THE COURT: Thank you.
17    MR. QUASARANO: Thank you, Judge.
18    MR. WERTHEIMER: Your Honor, we will need a few
19  minutes to prepare a written order, but if we can --
20    THE COURT: Well, sir, would you like to copy
21  that and modify what they're doing? My law clerk will be
22  happy to help you.
23    MR. WERTHEIMER: Thank you, your Honor.
24    THE COURT: As to your stay, you'll be getting
25  that to me in --

11

**Page 12**

1    MR. QUASARANO: Maybe I can just make a call
2  and get an order over to you right yet today.
3    THE COURT: Sure. You can even handwrite it.
4  I don't care how we do it. You can run it over here, fax
5  it over here; whatever gets you the job done. Time is of
6  the essence.
7    MR. QUASARANO: I appreciate that.
8    MR. KING: (Approaching the bench.)
9    Your Honor, Ron King again on behalf of the
10  Plaintiffs. If we could go back on the record.
11    THE COURT: Excuse me.
12    MR. KING: We'd like to set the sequence of
13  events in terms of how things have transpired in the last
14  hour, if you will. Just for the record, our motion for
15  emergency temporary restraining order was filed at
16  3:37 p.m.; that is, today, July 18th. We promptly, well
17  in advance of 4 o'clock and probably within -- well,
18  actually, we had delivered prior to the filing time at
19  3:37 judge's copies to chambers for your review.
20    Then we waited for the Attorney General, who
21  doesn't feel compelled to make an appearance here in this
22  case because he hasn't actually been officially retained
23  yet, but, nevertheless, as a courtesy we waited for him
24  to appear, which he came upstairs sometime around 4:10.
25  We understand the bankruptcy filing was at 4:05?

12

**Page 13**

1    THE COURT: 4:06.
2    MR. KING: 4:06. The Court took the bench at
3  approximately 4:20. And to the extent your Honor has had
4  an opportunity to read the papers and was inclined to
5  make a ruling, if you'd be willing to put that on the
6  record, then in the -- when we do seek dismissal of the
7  bankruptcy proceeding, we'll have some clear record of
8  the sequence of events here.
9    MR. WERTHEIMER: Just to add, in terms of the
10  sequence of events, I did advise by telephone
11  Mr. Quasarano of the fact that I would be in court and
12  that it was my understanding that Clark Hill was going to
13  be in court seeking a temporary restraining order. I
14  talked to him by phone before 4 this afternoon, sometime
15  between 3:30 and 4.
16    MR. QUASARANO: And I could confirm that
17  Mr. Wertheimer gave me the professional curtesy of
18  letting me know that there was a hearing being planned.
19  I had no -- we have no personal knowledge in our division
20  of a bankruptcy being filed any certain time or date, so
21  there is nothing we could provide in terms of a response
22  that there is going to be a bankruptcy filed. So we
23  learned it as everyone else learned.
24    THE COURT: All right. And obviously I heard
25  this was happening. I had another hearing that was

13

**Page 14**

1  supposed to take place at 4 o'clock, and I understood
2  this was a very important issue, and we obviously have a
3  hearing scheduled, another hearing scheduled, at
4  9 o'clock on Monday.
5    So I advised my law clerk that we had a
6  4 o'clock hearing that wasn't going to take very long,
7  and whenever you all got here and that that would wait for
8  all of the attorneys, we would then have a hearing and to
9  let me know when everybody was in place and then I would
10  come out.
11    So that's exactly what happened. She let me
12  know everybody was here, gave me the paperwork to look
13  over, and, of course, I did just that. And we got out of
14  here as quickly as we could, obviously not in time
15  because 4:06 occurred and they did what they were going
16  to do, which I know you all raised here.
17    I did have an opportunity to -- with review of
18  what was filed, and you're asking me what I would have
19  done, and it was my intention, after reviewing what you
20  had filed, in addition to other research that my capable
21  externs from Cooley and from Michigan State, as well as
22  my very capable law clerk pulled for me, I reviewed
23  constitutional provisions, I reviewed legislative intent,
24  I reviewed what you all provided me, I reviewed a lot of
25  information in the last few hours, and it was my

14

**Page 15**

1  intention to grant you your request completely.
2    MR. KING: Thank you, your Honor. Appreciate
3  your clarifying the record.
4    MR. WERTHEIMER: Thank you, your Honor.
5  Your Honor, we have a proposed order.
6    THE COURT: You may approach. Thank you.
7    MR. WERTHEIMER: Thank you. It is handwritten.
8  (Approaching the bench.)
9    THE COURT: No problem.
10    MR. WERTHEIMER: And for caption, it just says,
11  at this point, Flowers Caption.
12    THE COURT: Okay.
13    MR. WERTHEIMER: I had some help in drafting
14  too if you can't read the --
15    THE COURT: We'll make it work.
16    MR. WERTHEIMER: Okay. Thank you, Judge.
17    MR. KING: We may be back tomorrow, your Honor.
18    MR. WERTHEIMER: We may be back too,
19  your Honor. And if we are, I will be in a suit.
20    THE COURT: It's okay. As long as your body is
21  covered, I don't care what's it's covered with.
22    MR. KING: I think with respect to the present
23  motion before you, we have an order in place and
24  appreciate you making the accomodation and time for us
25  today. Thank you.

15

```
 1          THE COURT:  No problem.
 2          Now, if you're back tomorrow, what is it going
 3   to be for?
 4          MR. KING:  We might file a mandamus action
 5   requiring the EM to withdraw the Chapter 9 filing.
 6          THE COURT:  Will this require time on the
 7   record?
 8          MR. KING:  Yes.
 9          THE COURT:  Okay.  My time restriction is that
10   I have my morning free until about 1:30.  Can you get it
11   here before 1:30?
12          MR. PATTWELL:  Yes.
13          MR. KING:  Absolutely.
14          THE COURT:  I'll make myself available all
15   morning until 1:30.
16          MR. KING:  Thank you, your Honor.
17          THE COURT:  Okay.
18          MR. CANZANO:  May I approach, your Honor?  I
19   have an order drafted also.
20          THE COURT:  You may.
21          MR. CANZANO:  (Approaching the bench.)
22          THE COURT:  Okay.  We'll make you copies, and
23   this is our copy.
24          Anything else for the record?
25          MR. KING:  No, your Honor.  Thank you.
                                                    16
 1          MR. WERTHEIMER:  No, your Honor.  Thank you.
 2          THE COURT:  That's all for the record.  Thank
 3   you.
 4              (At 4:38 p.m., the matter is
 5              concluded.)
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

                                                    17

```
 1      STATE OF MICHIGAN)
                         ) SS.
 2       COUNTY OF INGHAM)

 3

 4                      CERTIFICATE OF REPORTER

 5

 6              I, Melinda I. Dexter, Certified Shorthand

 7      Reporter, do hereby certify that the foregoing

 8      17 pages comprise an accurate, true, and complete

 9      transcript of the proceedings and testimony taken in the

10      case of The General Retirement System of the City of

11      Detroit, et al., versus Kevyn D. Orr, et al., Case

12      No. 13-768-CZ, and Gracie Webster, et al., versus the

13      State of Michigan, et al., Case No. 13-734-CZ, and

14      Robbie Flowers, et al., versus Rick Snyder, et al., Case

15      No. 13-729-CZ, on Thursday, July 18, 2013.

16              I further certify that this transcript of the

17      record of the proceedings and testimony truly and

18      correctly reflects the exhibits, if any, offered by the

19      respective parties.  WITNESS my hand this the eighteenth

20      day of July, 2013.

21

22      _____
        Melinda I. Dexter, RMR, RPR, CSR-4629
23      Official Court Reporter
        313 West Kalamazoo
24      Post Office Box 40771
        Lansing, Michigan 48901-7971
25
```

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

ROBBIE FLOWERS, MICHAEL WELLS,
JANET WHITSON, MARY WASHINGTON and
BRUCE GOLDMAN

Plaintiffs,

vs.

Case No. 13-729-CZ
Hon. Rosemarie Aquilina

RICK SNYDER, as the Governor of the State
of Michigan; ANDY DILLON, as the Treasurer of
the State of Michigan; and the STATE OF MICHIGAN,

Defendants.

_____/

William A. Wertheimer (P26275)
Attorney for plaintiffs
30515 Timberbrook Lane
Bingham Farms, MI 48025
248-644-9200
billwertheimer@gmail.com

Andrew Nickeloff (P37990)
Marshall J. Widick (P53942)
James A. Britton (P71157)
Attorneys for plaintiffs
Sachs Waldman
1000 Farmer
Detroit, MI 48226
313-496-9429
anickelhoff@sachswaldman.com
mwidick@sachswaldman.com
jabritton@sachswaldman.com

Thomas Quasarano (P27982)
Brian Devlin (P34685)
Assistant Attorneys General
PO Box 30754
Lansing, MI 48909
quasaranot@michigan.gov

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION[1]

---

[1]    This brief is in reply to defendants' response to plaintiffs' motion. It is not in response to defendants' motion for summary disposition. Plaintiffs will respond to that motion as provided for under MCR 2.116(G)(1)(a)(i) once defendants properly notice same. Plaintiffs do not agree to defendants' request that this Court (apparently at the hearing and after the fact) waive or adjust the response time provided in the court rules. State's brief, page 16.

Defendants' brief ignores (but does not dispute) the basic facts that plaintiffs allege and grossly mischaracterizes the nature of plaintiffs' claim. In Parts A and B below, we address these two defects in defendants' response. Then, in Parts C through G, we respond to the remainder of defendants' arguments in response to our request for a preliminary injunction.

**A. Undisputed Facts.** Plaintiffs' complaint is based on the undisputed fact that the Detroit Emergency Manager has publicly stated that Detroit retirees, employees and their unions must agree to significant cuts to their vested pension benefits outside of a Chapter 9 federal bankruptcy proceeding, and that if they fail to agree he will cut those benefits through operation of the federal bankruptcy code, based on the supremacy of the federal bankruptcy code over Article 9, Section 24 of the Michigan Constitution, which provides that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Since under Public Act 436 such a federal bankruptcy proceeding cannot be initiated by the Emergency Manager without authorization by Governor Snyder, plaintiffs have sued the Governor to stop such an authorization and the diminishment and impairment of vested Detroit pension benefits which will necessarily follow from it. In short, this litigation seeks to stop action by Governor Snyder that the plaintiffs allege to be unconstitutional under Article 9, Section 24, and does not seek a declaration that Public Act 436 is itself unconstitutional.

Since this litigation was commenced on 3 July 2013, the City of Detroit has again refused to accept or address the strictures of Article 9, Section 24. Thus, on 9 July 2013,

2

the General Counsel of the UAW – which is the collective bargaining representative of plaintiffs Robbie Flowers and Bruce Goldman – wrote the City's lawyers, asking them:

> please cite the basis for any claim that the UAW has the authority to compromise the vested benefits of active and/or retired UAW or former UAW members employed or formerly employed by the City of Detroit and its affiliates. As I presume you know, Article 9, Section 24 of the Michigan Constitution provides in pertinent part that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Please tell me what authority your firm and/or Mr. Orr believe gives the UAW the right to compromise vested pension benefits, despite the contrary provisions of Article 9, Section 24. Please also tell us whether Mr. Orr and/or your firm take the position that Article 9, Section 24 of the Michigan Constitution is not or may not be binding on the City of Detroit, the State of Michigan, Governor Snyder, Mr. Orr or the UAW and state, if that is the case, under what circumstances you believe that Article 9, Section 24 would not bind some or all of these persons or entities.

Affidavit of Michael Nicholson, Exhibit B. Mr. Nicholson wrote this email in part to accept an invitation sent to UAW and other unions and retiree groups to attend a meeting on 10 July 2013 with representatives of both the City of Detroit and the Detroit General Retirement System. Id., Ex. A.

Since this litigation was filed on July 3, the Detroit Emergency Manager has also continued to publicly take the position that vested pensions must be cut without regard to Article 9, Section 24 of the Michigan Constitution. See the video of his 5 July 2013 interview with Detroit Public Television's MiWeek program beginning at 14 minutes, www.youtube.com/watch?v=TspCsrXmkZA.

In addition, it is clear that the Detroit Emergency Manager is moving closer to a bankruptcy filing and that the Governor is directly involved. In an article this past Monday headlined "Detroit Bankruptcy Clock Ticking" Daniel Howes reported in the Detroit News: "The governor and Emergency Manager Kevyn Orr met Monday to

3

discuss the situation. Additional meetings with creditors, legal teams and the Snyder administration are scheduled this week to determine whether Orr and his team are making enough meaningful progress in their talks with creditors, unions and pension funds to delay a bankruptcy filing." See Exhibit A attached and available online at www.detroitnews.com/article/20130716/BIZ/307160025.

As these new facts show, the Emergency Manager continues to demand that unless unions and retiree groups agree to significant cuts in retiree benefits outside of bankruptcy, he will impose such cuts in bankruptcy, following the Governor's authorization to commence a Chapter 9 proceeding, in derogation of the constitutional rights guaranteed by Article 9, Section 24. See Amended Verified Complaint, ¶ 21-25. The factual basis for plaintiffs' complaint in this litigation is thus undisputed, and stands against defendants' claim that – contrary to the unchallenged facts – their concerns about their pensions and their rights are merely hypothetical and unripe because nothing is being done to harm them. To the contrary, real harm continues to take place now: the plaintiffs continue to be told that unless they agree to cuts in their vested pension benefits now, they will be imminently be imposed through a Chapter 9 bankruptcy proceeding authorized by the Governor.

**B.     Mischaracterization of Plaintiffs' Complaint.** Defendants' claim that plaintiffs "bring a facial constitutional challenge" to Public Act 436. State's brief, page 1. Not so. Plaintiffs begin their complaint by stating that their constitutional right to vested pension benefits "are being violated [present tense] in the emergency financial management proceedings that the State has implemented in response to Detroit's fiscal crisis and whose rights will be threatened [future tense] with abrogation if Governor

Snyder authorizes the Detroit Emergency Manager to proceed under Chapter 9 in bankruptcy." Amended verified complaint, ¶ 1. Nowhere in their complaint do plaintiffs allege that Public Act 436 is unconstitutional on its face or otherwise. (Nor do they seek relief consistent with a facial challenge.) Mischaracterizing plaintiffs' allegations has three tactical advantages for defendants. First, it allows defendants to ignore the facts on the ground, facts upon which this civil action is based. Second, it allows defendants to make their arguments without acknowledging that plaintiffs' constitutional rights under Article 9, Section 24 are being threatened now. Third, it allows defendants to argue that they can protect these constitutional rights in bankruptcy, even though Detroit's Emergency Manager has flatly and uncategorically opined to the contrary. We address these points in what follows below.

**C.** **Plaintiff's Request for Injunctive Relief is Neither Premature, Overbroad nor Constitutionally Infirm.** Defendants here make four arguments against injunctive relief. None has merit.

1.     First, defendants argue that no prohibitory injunction can be issued because declaratory relief has not as yet failed, citing dictum from *Strauss v Governor,* 459 Mich 526, 532; 592 NW2d 53 (1999). State brief, pages 4-5. The Court's dictum from *Strauss* is inapplicable here for at least three reasons. First, *Strauss* involved a fight between the Governor and the State Board of Education over which constitutional provision took precedence, Article 5, Section 2 or Article 8, Section 3. This case involves the State in the person of the Governor abrogating the constitutional rights of its citizens. That is a distinction that should make a difference. Second, this case involves a very public fight in which the Governor knows very well that his Emergency Manager is

5

refusing to recognize the Article 9, Section 24 rights of plaintiffs and thousands of other retirees. To require this Court to first issue declaratory relief in these circumstances elevates form over substance. Third, the bankruptcy filing may be imminent, such that there may be no time for the courtesy contemplated by *Strauss*. See, e.g., www.freep.com/article/20130718/news01/307180107/detroit-prepares-file-bankruptcy-soon-friday ("Detroit prepares to file for bankruptcy as soon as Friday") and www.youtube.com/watch?v=TspCsrXmkZA, beginning at 10 minute mark. With all that said, plaintiffs would have no objection if this Court fashioned the requested preliminary relief in the form of a declaration, but only if the Governor agrees not to act contrary to the declaration before the plaintiffs have the opportunity to return to this Court and seek a prohibitory injunction.

2.     Defendants next argue that injunctive relief is premature given the opportunity for relief in bankruptcy court. State brief, page 5. They cite two Bankruptcy Code provisions: 11 USC §109(c) and 11 USC § 943(4). Neither protects against an impairment of pension benefits in violation of Article 9, Section 24. First, none of the disjunctive criteria in 109(c) for eligibility to proceed under Chapter 9 contain a basis for a challenge based on Article 9, Section 24. Second, the requirement in 11 USC § 943(4) that "the debtor is not prohibited by law from taking any action necessary to carry out the plan" may not protect Article 9, Section 24 rights because of the principle that "federal law trumps state law," which the Detroit Emergency Manager has indicated will be applied. To support this concern, we cited in our opening brief the bankruptcy court decisions in *In re City of Stockton, California*, 478 BR 8 (Bankr ED Cal 2012); and *In re City of Vallejo*, 403 BR 72 (Bankr ED Cal 2009), which we expect will be cited in a

6

Chapter 9 proceeding in support of the proposition that federal bankruptcy law supersedes Article 9, Section 24 of the Michigan Constitution.

3.    Defendants also argue that the injunction request is overbroad because "[t]his Court cannot determine, based on the record Plaintiffs present, how any bankruptcy proceeding for the City of Detroit, if filed, may impact their pension benefits or if it will at all, until the bankruptcy plan is filed with the bankruptcy court and ultimately confirmed." State brief, page 6. But this claim that plaintiffs' concerns are only hypothetical ignores the Detroit Emergency Manager's stated intent and the terms of his proposal to creditors. And it also ignores the fact that if no relief is granted now, it will likely be too late after a bankruptcy filing to protect plaintiffs' rights under Article 9, Section 24. In other words, the result, if defendants' argument is accepted, is that by the time the harm comes the citizens of the State of Michigan who are Detroit pensioners will be unable to sustain their State constitutional rights. That is precisely the plan to violate Article 9, Section 24 of the Michigan Constitution that we believe the Governor will facilitate at the request of the Emergency Manager, absent the relief we request.[2]

4.    Defendants further argue that the plaintiffs' injunction request is mandatory. State brief, page 6. It is not. As defendants recognize in making other of their arguments, the relief sought by plaintiffs' pending motion is, by its terms, clearly prohibitory.

---

[2]    The motion before the Court is a motion for preliminary injunction, not a request for final relief. While we recognize the sensitivity of this issue and this litigation, the Court should consider the appropriateness of limited discovery on the issue of communications between the Governor, the defendant State Treasurer and the Emergency Manager (and their staff and other agents) with respect to City of Detroit vested pension benefits. Thus, even it plaintiffs are found to lack standing to seek injunction, this civil action may still proceed on the claim in Complaint for declaratory relief.

7

**D.** __Plaintiffs Have Standing to Bring This Action.__ Defendants recognize that the Michigan Supreme Court restored Michigan's limited, prudential approach to standing in *Lansing School Education Ass'n v Lansing Board of Education,* 487 Mich 349, 372; 792 NW2d 686 (2010). State's brief, page 7.[3] This means that citizens have standing if they have some individual interest in the subject matter of the complaint that is not common to all the citizens of the state. 487 Mich at 356. Plaintiff retirees and vested employees meet such a test. Their pension benefits are in danger of being reduced or eliminated if the Governor is allowed to authorize a Chapter 9 bankruptcy filing. The Detroit Emergency Manager is threatening precisely that now, in an effort to coerce the plaintiffs' agreement to "significant cuts" in their vested retirement benefits. Other citizens of the state do not have such an interest. Plaintiffs have standing to seek injunctive relief.[4]

Defendants also argue that Public Act 436 expressly states (at MCL 141.1572) that it provides no cause of action. State's brief, pages 7-8. But plaintiffs are not suing for a violation of Public Act 436; they are suing over an abridgement of their constitutional

---

[3]     Despite the dissent in *Lansing School Education Ass'n* and the changing composition of the Court, the Court has given no indication that it intends to retreat from this position. To the contrary. See, *Ader v Delta College Bd of Trustees,* 493 Mich 887; 822 NW2d 221 (2012) (vacating order that had granted leave to appeal from a decision of the Court of Appeals applying *Lansing School Education Ass'n* and denying application for leave) (J. Markman dissenting).

[4]     Additionally, although not at issue with respect to plaintiffs' pending motion for preliminary injunction, this Court clearly has jurisdiction to issue a declaratory judgment under MCR 2.605. An "actual controversy" under that court rule exists when a judgment is necessary to guide a parties' future conduct in order to preserve legal rights. *UAW v Central Michigan University,* 295 Mich App 486, 495; 815 NW2d 132 (2012). In granting such relief "courts are not precluded from reaching issues before actual injuries or losses have occurred." *Id.* Accord, *Huntington Woods v Detroit,* 279 Mich App 603, 616; 761 NW2d 127 (2008); *Lake Angelus v Aeronautics Comm,* 260 Mich App 371, 376-77; 676 W2d 642 (2004).

8

rights.[5] A Michigan court of general jurisdiction is the proper forum for a citizen of Michigan to bring a claim of a state constitutional violation. And the relief plaintiffs seek is available through this Court. MCR 3.310 and 2.605.

**E.    Plaintiffs' Constitutional Claims Are Ripe for Review.** Defendants argue that plaintiffs' constitutional claims are not ripe because the bankruptcy filing has not yet occurred. State's brief, pages 11-12. Incredibly, they argue this knowing that the Emergency Manager has announced that he will seek to extinguish plaintiffs' Article 9, Section 24 rights should he file a Chapter 9 in response to their failure to agree now to "significant cuts" in their pensions.

One short, practical answer is that a bankruptcy filing may well ring a bell that cannot be unrung: the trumping of plaintiffs' constitutional rights by federal law, after the sovereign has waived – through the Governor's authorization for a Chapter 9 – whatever rights the State has under the Tenth Amendment to the federal Constitution to insist on the supremacy of the State Constitution. See, *In re City of Vallejo, supra,* 403 BR 72 (Bankr ED Cal 2009)(copy attached). That is the legal opinion of the Detroit Emergency Manager (an opinion that plaintiffs have little reason to doubt for purposes of this motion[6] and that defendants do not dispute in their brief): that federal law will trump

---

[5]    The plaintiffs' pension plan gives them a right to bring such a suit. See Section 47-3-11(i)(1) of the General Retirement System Pension Plan which is also Ord. No. 29-01, § 1, 11-30-01 and is available on-line at www.rscd.org.

[6]    Plaintiffs, of course, reserve the right in bankruptcy court to argue to the contrary. But we note, for example, the holding of federal bankruptcy court in *Vallejo*: "Therefore, "by authorizing the use of chapter 9 by its municipalities, California must accept chapter 9 in its totality; it cannot cherry pick what it likes while disregarding the rest." *In re County of Orange,* 191 B.R. 1005, 1021 (Bankr. CD Cal 1996) ... Since the state must consent to a bankruptcy filing under Section 109(c)(2) [of the Bankruptcy Code], the state consents to the displacement of its own law in order to obtain the benefits uniquely available under the Bankruptcy Code." 403 BR at 76.

Article 9, Section 24 of the Michigan Constitution. See the Detroit Emergency Manager's 14 June 2013 statement to the Detroit Free Press Editorial Board quoted at ¶ 22 of the amended verified complaint. ("If we don't reach an agreement one way or the other, we feel fairly confident that the state federal law, federalism, will trump state law or negotiate.") Or put in plain terms, the constitutional rights plaintiffs are relying on here will then be a nullity.

A second short, practical answer is that the threats to ignore Article 9, Section 24 are ongoing and are being used to browbeat plaintiffs (and others) into a deal that would avoid bankruptcy but ignore their constitutional rights. Defendants admit as much at the conclusion of their brief when they urge this Court to grant their motion to dismiss now "to avoid adversely impacting the City of Detroit Emergency Manager's current efforts to reach a consensus that could achieve some financial stability for the City without recourse to bankruptcy. " State brief, page 16. We know from the verified and unrebutted complaint that the "consensus" will be reached, if at all, in violation of plaintiffs' rights. Defendants would then undoubtedly argue that any attack on that "consensus" agreement would be moot or in some other way immune to attack. The time for this issue to be decided is now.

And the law supports such a common sense finding that this case is ripe for decision now. All that is required is that "a genuine controversy exist between the parties." *Michigan Chiropractic Council v Comm'r of Ins,* 475 Mich 363, 381; 716 NW2d 561 (2006). A claim lacks ripeness only where "the harm asserted has [not] matured sufficiently to warrant judicial intervention ..." *Id.,* quoting from *Warth v Seldin,* 422 US 490, 499 n 10. A genuine controversy exists here and now. Plaintiffs are fighting

for their future financial well-being. And that fight will be over before it begins absent judicial intervention now.

**F.      Plaintiffs Have Stated a Claim**.  Defendants' argument that plaintiffs have failed to state a claim is entirely based on the mistaken premise that plaintiffs are bringing a facial challenge to Public Act 436. State brief, page 12. Plaintiffs' claim is that the receivership under which the City of Detroit is currently operating is currently ignoring the Article 9, Section 24 rights of the City's' retirees (this is supported with multiple and direct statements from the Detroit Emergency Manager) and that in these circumstances (and this part of the complaint is in caps, bolded and underlined at the top of page 4) "it would be unconstitutional for the governor to authorize the Detroit Emergency Manager to proceed under Chapter 9." This states a claim.

**G.      Plaintiffs Have Met the Prerequisites for Injunctive Relief**.  Defendants argue first that plaintiffs will not suffer irreparable harm if an injunction is not issued. State's brief, page 13. Defendants do not even attempt to argue that the loss or in the words of the Detroit Emergency Manager the "significant cuts" in plaintiffs' vested pension benefits would not constitute irreparable harm. Rather they argue that plaintiffs will have a remedy in bankruptcy. Not according to the Detroit Emergency Manager. And he would be speaking for the debtor in bankruptcy.

Second, defendants argue that the balance of harms favors them by using a claim of urgency, all as part of an argument that completely fails to account for the derogation of Michigan Constitutional rights that they intend to cause. State's brief, pages 13-14. Put another way, the defendants claim that our State Constitution can be ignored if the Governor and his agents decide that following it would complicate matters in a municipal

11

receivership. This would surprise the framers of our State Constitution, one of whom stated that the then new Article 9, Section 24 meant that a public employee with vested pension benefits, "would have the entire assets of the employer at his disposal from which to realize those benefits." 1 Official Record, Constitutional Convention 1961, p 774.

Third, defendants argue the public interest. State's brief, pages 14-15. Certainly, the public interest would be served if the Governor were to be precluded from authorizing a bankruptcy that would threaten the abrogation of constitutional rights. The people, in adopting their Constitution, including Article 9, Section 24, have spoken in that regard. And just as certainly, the public interest would not be served if the Detroit Emergency Manager were to be allowed to continue down his path all the while ignoring those constitutional rights.

## **CONCLUSION**

Plaintiffs are entitled to know whether their Article 9, Section 24 constitutional rights have any meaning in the current Detroit financial emergency. And they are entitled to know that now, and to have those rights protected. The plaintiffs' motion for preliminary injunction should be granted.

Respectfully submitted,

s/William A. Wertheimer
William A. Wertheimer (P26275)
Attorney for plaintiffs
30515 Timberbrook Lane
Bingham Farms, MI 48025
248-644-9200

Andrew Nickeloff (P37990)
Marshall J. Widick (P53942)
James A. Britton (P71157)

Attorneys for plaintiffs
Sachs Waldman
1000 Farmer
Detroit, MI 48226
313-496-9429
anickelhoff@sachswaldman.com


mwidick@sachswaldman.com
jabritton@sachswaldman.com

Dated: 18 July 2013

PROOF OF SERVICE

THE UNDERSIGNED CERTIFIES THAT ON 18 JULY 2013 THE FOREGOING
INSTRUMENT WAS SERVED UPON THE FOLLOWING:

1.   Thomas Quasarano
2.   Brian Devlin
3.

BY:

X___   U.S. MAIL                        _____   FAX

_____   HAND DELIVERY              _____   U.S. EXPRESS MAIL
_____   UPS                              X___   OTHER: email
BY:
SIGNATURE: _____

ROBBIE FLOWERS, MICHAEL WELLS,
JANET WHITSON, MARY WASHINGTON and
BRUCE GOLDMAN

Plaintiffs,

vs.

Case No. 13-729-CZ
Hon. Rosemarie Aquilina

RICK SNYDER, as the Governor of the State
of Michigan; ANDY DILLON, as the Treasurer of
the State of Michigan; and the STATE OF MICHIGAN,

Defendants.

/

William A. Wertheimer (P26275)
Attorney for plaintiffs
30515 Timberbrook Lane
Bingham Farms, MI 48025
248-644-9200
billwertheimer@gmail.com

Andrew Nickeloff (P37990)
Marshall J. Widick (P53942)
James A. Britton (P71157)
Attorneys for plaintiffs
Sachs Waldman
1000 Farmer
Detroit, MI 48226
313-496-9429
anickelhoff@sachswaldman.com
mwidick@sachswaldman.com
jabritton@sachswaldman.com

Thomas Quasarano (P27982)
Brian Devlin(P34685)
Assistant Attorneys General
PO Box 30754
Lansing, MI 48909
quasaranot@michigan.gov

## AFFIDAVIT OF MICHAEL NICHOLSON

State of Michigan

County of Wayne

Michael Nicholson, being first duly sworn, states as follows:

1. My name is Michael Nicholson. I am a citizen of the State of Michigan. I am employed as General Counsel by International Union, UAW. I make this affidavit based on personal knowledge.

2. On June 28, 2013, I received the email message attached hereto as Exhibit A from David Birnbaum, a lawyer with the Jones Day law firm, which is lead counsel to the Emergency Manager for the City of Detroit.

3. On July 9, 2013, I sent the email message attached hereto as Exhibit B to Mr. Birnbaum and his colleague at Jones Day, Dan Merrett.

4. Since July 9, 2013 until the time that I signed this affidavit today, I have received no response from anyone at Jones Day to the questions that I raised in Exhibit B with respect to pension benefits and Article 9, Section 24 of the Michigan Constitution.

Further Affiant sayeth not.

_____
Michael Nicholson

Subscribed and sworn to before me this 18th day of July 2013.

_____
Nancy S. Dennis, Notary Public
County of Macomb
State of Michigan
Acting in Wayne County
My commission expires February 10, 2017

NANCY S DENNIS
Notary Public - Michigan
Macomb County
My Commission Expires Feb 10, 2017
Acting in the County of __Wayne__

**From:** David Birnbaum <dbirnbaum@jonesday.com>
**Subject:** City of Detroit -- Pension Restructuring Discussions (GRS)
**Date:** June 28, 2013 4:42:56 PM EDT
**To:** MNicholson@uaw.net
**Cc:** Evan Miller <emiller@JonesDay.com>, Brian Easley <beasley@JonesDay.com>, "David G. Heiman" <dgheiman@JonesDay.com>, Heather Lennox <hlennox@JonesDay.com>

---

2 Attachments, 4 KB

Dear Mr. Nicholson:

Following the presentations made on June 20th, outside counsel for GRS reached out to the City of Detroit for more information on, and to discuss, a pension restructuring proposal. GRS and the City of Detroit have tentatively scheduled a meeting on pension restructuring for Wednesday, July 10th, at 1 pm (location to be determined). The City will be prepared to provide more information on its developing pension restructuring proposal. Because the City expects that the proposal will impact the pension benefits of active participants of GRS, who include your members, the City would like to invite you to this meeting on July 10th, at 1 pm to participate in the discussion. We expect the meeting will last approximately 2 hours. GRS will be sending an advisor-only team (attorneys and financial advisors), and the City believes this is a good way to proceed. Please let us know at your earliest convenience if you will attend and the names of the attendees. We will contact you as soon as practicable to provide details about the meeting location.

Regards,

David



**David S. Birnbaum**

77 West Wacker Drive, Suite 3500 • Chicago, IL 60601
DIRECT 312.269.4005 • FAX 312.782.8585 • EMAIL dbirnbaum@jonesday.com

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

**Exhibit A**

From: Michael Nicholson <mnicholson@uaw.net>
Subject: Re: Detroit - Data room access/ July 10 and 11 meetings
Date: July 9, 2013 1:57:49 PM EDT
To: Dan Merrett <dmerrett@JonesDay.com>, "David S. Birnbaum" <dbirnbaum@jonesday.com>
Cc: Marshall Widick <mwidick@sachswaldman.com>, Andrew Nickelhoff <anickelhoff@sachswaldman.com>



Dear Messrs. Merrett and Birnbaum:

UAW has requested access to the City of Detroit data room maintained by your firm. You have responded by proffering a proposed nondisclosure agreement and release, and have made UAW's execution of such documents a condition of our access to the data room.

Please explain the legal basis for conditioning UAW's access to whatever information is obtainable through the City of Detroit data room upon our execution of the confidentiality agreement and release that you have proffered. As you know, UAW has often signed confidentiality agreement with private corporations going through financial restructurings. However, in this instance, we are dealing with a public entity, the City of Detroit. I would like to understand the basis for withholding data room information with respect to the City of Detroit based on claims of confidentiality.

As to the meetings concerning pensions and OPEB that your firm, on behalf of Mr. Orr, is conducting on July 10 and 11, 2012, we wish to attend the meetings, but reserve all rights with respect to the meetings and to such position(s) that Mr. Orr and/or your firm may seek to take with respect to such meetings.

Further to that reservation of rights, UAW continues to seek an answer from Mr. Orr and your firm to the following: please cite the basis for any claim that the UAW has the authority to compromise the vested benefits of active and/or retired UAW or former UAW members employed or formerly employed by the City of Detroit and its affiliates. As I presume you know, Article IX, Section 24 of the Michigan Constitution provides in pertinent part that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Please tell me what authority your firm and/or Mr. Orr believe gives the UAW the right to compromise vested pension benefits, despite the contrary provisions of Article IX, Section 24. Please also tell us whether Mr. Orr and/or your firm take the position that Article IX, Section 24 of the Michigan Constitution is not or may not be binding on the City of Detroit, the State of Michigan, Governor Snyder, Mr. Orr or the UAW and state, if that is the case, under what circumstances you believe that Article IX, Section 24 would not bind some or all of these persons or entities. We also seek an answer to the same questions with regard to vested post-retirement insurance benefits, but as to such the question is posed with the additional need to consider, inter alia, the holding of the United States Supreme Court in *Chemical Workers v. Pittsburgh Plate Glass*, 404 U.S. 157 (1971), which states at its footnote 20 that "[u]nder established contract principles, vested retirement rights may not be altered without the pensioner's consent."

We do not understand the July 10 and 11 multiple stakeholder meetings to which we have been invited to be a forum for negotiation of your proposed pension and retiree health care changes, but are willing to learn about or obtain for our union whatever information may be provided at those meetings. Your full answers to the questions posed in the foregoing paragraphs of this message will help the UAW determine the scope of any such negotiations and the UAW's decisions regarding its representative capacity in them, about which your firm has inquired.

Please provide me with the exact location of the July 10 and 11 meetings.

Thank you.

Michael Nicholson
General Counsel - International Union, UAW
Solidarity House - 8000 East Jefferson Avenue
Detroit, Michigan 48214                                    **Exhibit B**
UAW Office Phone: 313.926.5216
Cell Phone: 734.719.0850
Email: mnicholson@uaw.net

*******************************************
*This e-mail message from Michael Nicholson is for the sole use of*
*the intended recipient(s) and may contain confidential and privileged*
*information. Any unauthorized review, use, disclosure or distribution is*

# EXHIBIT 2

*STATE OF MICHIGAN*
           *30TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF INGHAM*
2                          *CIVIL DIVISION*

3    THE GENERAL RETIREMENT SYSTEM
     OF THE CITY OF DETROIT, and THE
4    POLICE AND FIRE RETIREMENT SYSTEM
     OF THE CITY OF DETROIT,

5
                       Plaintiffs,
6    v                                    Case No. 13-768-CZ
                                          Hon. Rosemarie Aquilina
7    KEVYN D. ORR, in his official capacity
     as the EMERGENCY MANAGER OF THE CITY OF
8    DETROIT, and RICHARD SNYDER, in his
     official capacity as the GOVERNOR OF THE
9    STATE OF MICHIGAN,

10                     Defendants.
     _____/
11   GRACIE WEBSTER and
     VERONICA THOMAS,

12
                       Plaintiffs,
13   v                                    Case No. 13-734-CZ
                                          Hon. Rosemarie Aquilina
14   THE STATE OF MICHIGAN; RICHARD
     SNYDER, as Governor of the State
15   of Michigan; and ANDY DILLON,
     as Treasurer of the State of
16   Michigan,
                       Defendants.
17   _____/
     ROBBIE FLOWERS, MICHAEL WELLS,
18   JANET WHITSON, MARY WASHINGTON,
     and BRUCE GOLDMAN,

19
                       Plaintiffs,
20   v                                    Case No. 13-734-CZ
                                          Hon. Rosemarie Aquilina
21   RICK SNYDER, as the Governor of the
     State of Michigan; ANDY DILLON, as
22   the Treasurer of the State of Michigan;
     and the STATE OF MICHIGAN,

23
                       Defendants.
24   _____/

25               *MOTION FOR PRELIMINARY INJUNCTION*


                                                              1

```
 1              BEFORE THE HON. ROSEMARIE AQUILINA, CIRCUIT JUDGE

 2              Ingham County, Michigan - Thursday, July 18, 2013

 3

 4       APPEARANCES:

 5       For Plaintiffs Retirement Systems:
                              RONALD A. KING (P45088)
 6                            MICHAEL J. PATTWELL (P72419)
                              CLARK HILL PLC
 7                            212 East Grand River Ave.
                              Lansing, MI 48906
 8       For Plaintiffs Webster, et al.:
                              JOHN R. CANZANO (P30417)
 9                            Smith & Radtke, PC
                              400 Galleria Officentre, Ste. 117
10                            Southfield, MI   48034

11       For Plaintiffs Flowers, et al.:
                              WILLIAM A. WERTHEIMER (P26275)
12                            Attorney at Law
                              30515 Timberbrook Lane
13                            Bingham Farms, MI   48025

14       For the Defendants:  THOMAS QUASARANO (P27982)
                              Assistant Attorney General
15                            State Operations Division
                              P.O. Box 30754
16                            Lansing, MI 48909

17

18

19       REPORTED BY:        Melinda I. Dexter, RMR, RPR, CSR-4629
                              Official Court Reporter
20                            313 W. Kalamazoo
                              Post Office Box 40771
21                            Lansing, MI   48901-7971

22

23

24

25

                                                               2
```

```
 1                    T A B L E    O F    C O N T E N T S

 2

 3

 4

 5        WITNESSES:

 6             None

 7

 8

 9

10

11        EXHIBITS:

12             None

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 4:

```
 1          Ingham County, Michigan
 2          Thursday, July 18, 2013 - At 4:15 p.m.
 3          MR. KING:  Good afternoon.
 4          THE COURT:  Good afternoon.  We have everybody
 5   here?
 6          MR. KING:  They are.
 7          THE COURT:  All right.  This is Docket
 8   13-768-CZ, the General Retirement System of the City of
 9   Detroit and the Police and Fire Retirement System of the
10   City of Detroit versus Kevin D. Orr, in his official
11   capacity as the Emergency Manager of the City of Detroit,
12   and Richard Snyder, in his official capacity as the
13   Governor of the State of Michigan.
14          Counsel, your appearances for the record.
15          MR. KING:  Good afternoon, your Honor.  Ron
16   King with Clark Hill on behalf of the Plaintiffs, the
17   General Retirement System of the City of Detroit and the
18   Police and Fire Retirement System of the City of Detroit.
19          THE COURT:  Welcome.
20          MR. KING:  Thank you.
21          MR. QUASARANO:  Your Honor, if I may, Thomas
22   Quasarano, Assistant Attorney General, that will be
23   appearing in this case on behalf of the Defendant.  I
24   believe the Defendant was served yesterday.  We have not
25   received a request for representation, but I'm very
                                                              4
```

Page 5:

```
 1   likely going to be asked to represent the Governor.
 2          THE COURT:  Sir?
 3          MR. WERTHEIMER:  Excuse me, your Honor,
 4   William Wertheimer.  I apologize for my dress.
 5          THE COURT:  No problem.  I know it's last
 6   minute.  I don't care how people are dressed.  It's more
 7   important that you are here.
 8          MR. WERTHEIMER:  Thank you, your Honor.  I was
 9   here to file my reply brief today for the Monday hearing.
10   I am now here knowing that this motion has been filed,
11   and I wanted to enter my appearance.
12          THE COURT:  All right.  You may have a seat.
13   There is plenty of room for all.
14          MR. WERTHEIMER:  Thank you.
15          MR. CANZANO:  Your Honor, excuse me, John
16   Canzano, Plaintiffs' attorney in the Webster case.  Same
17   as Mr. Wertheimer, we just found out about this.  I'm
18   here.  My reply brief is being filed.  I have a judge's
19   copy here somewhere.
20          THE COURT:  All right.  Have a seat.
21          MR. KING:  Your Honor --
22          THE COURT:  Anybody else?
23          MR. PATTWELL:  Your Honor, Michael Pattwell
24   from Clark Hill on behalf of Plaintiffs.
25          THE COURT:  Thank you.
                                                              5
```

Page 6:

```
 1          Counsel?
 2          MR. KING:  Your Honor, Ron King again on behalf
 3   of the Plaintiffs, the Detroit Retirement Systems.  We
 4   might need to beg the Court's indulgence.  While we
 5   appreciate that you have seen us on very short notice,
 6   we've been advised that the City has filed, and we're
 7   pulling it up on the electronic filing system, so we
 8   might need a few minutes here to figure out our very next
 9   step.
10          THE COURT:  Okay.
11          MR. KING:  Because the effect of a bankruptcy
12   filing, if, in fact, that's -- we're trying to conform
13   that.  We think, in fact, it has been filed here within
14   the last half hour.  So we probably need about a
15   ten-minute recess here, if the Court would indulge us.  I
16   know you have another matter.
17          THE COURT:  Do we want to make a phone call?
18          MR. KING:  Yeah.  We can, but we're pretty --
19          THE COURT:  Well, here's the thing:  If they
20   haven't filed, we need to hurry up and proceed.  If they
21   have filed --
22          MR. KING:  We're pretty confident that they
23   filed.
24          Right?
25          I mean, we're pulling it up.  Yeah.  It's been
                                                              6
```

Page 7:

```
 1   confirmed.  So I'm not sure where that leaves us with
 2   this proceeding because it's going to be pretty hard to
 3   undue.  It's been done.
 4          MR. WERTHEIMER:  There is no automatic stay in
 5   this.
 6          MR. KING:  Yeah.  What we're here for -- the
 7   really --
 8          What counsel is saying is there is no automatic
 9   stay with respect to this proceeding.  So in our
10   judgment, this matter will proceed.  What you have before
11   you, however, is a motion for temporary restraining order
12   to enjoin certain conduct that's already occurred.  So
13   I'm not sure that we really have a lot of business in
14   front of the Court at this moment, but I would like to
15   just confer for about ten minutes on that issue because
16   we will proceed in the case.  And if we're here and you
17   want to take the time to set some sort of expedited
18   briefing schedule, we could do that also.
19          It's quite likely that you, your Honor, will be
20   able to make a ruling on the merits of this case in
21   advance of whatever occurs in the context of a Chapter 9
22   filing.
23          THE COURT:  I plan on making a ruling on
24   Monday.  I could make a ruling tomorrow, if push came to
25   shove, but Monday would probably be soon enough.  I am
                                                              7
```

**8**

1  confident that the bankruptcy court won't act as quickly
2  as I will.
3       MR. KING:  Yeah.  I'm not sure, but we'll see.
4  I mean, there might -- but, nevertheless, so we should --
5       If you're prepared to rule on the merits on
6  Monday, again I'm not sure what -- if there is much
7  business for us left to do before the Court today.
8       THE COURT:  Unless some kind of -- I don't
9  really have any authority over them, so.
10       MR. KING:  Right.
11       THE COURT:  I don't think anything --
12  Counsel?
13       MR. WERTHEIMER:  Your Honor, the motion that's
14  up for Monday, our motion at least that's up for Monday,
15  is a request for a preliminary injunction to enjoin the
16  Governor.  We have no evidence the Governor has
17  authorized any bankruptcy, and we would not only want to
18  go forward on Monday but ask that the motion for
19  preliminary injunction be moved up to now, hopefully, to
20  tomorrow morning if the Court will not hear it now.  But
21  I don't think there is any reason why the Court cannot
22  hear our motion for preliminary injunction.
23       I'm not talking about in terms of the Court's
24  preparedness but in terms of the apparent filing.  They
25  may have filed.  But nobody -- I asked the Governor's

**9**

1  Office before we came in here -- er, the Attorney General
2  whether they could make any representations to me that
3  would obviate the need for me going forward, and they
4  could not.
5       So we've got a written, fully briefed request/
6  motion for preliminary injunction.  The Attorney
7  General's Office has briefed it.  Time is obviously of
8  the essence.  I would suggest that the Court hear our
9  motion to preliminarily enjoin the Governor authorizing a
10  bankruptcy now.
11       MR. CANZANO:  Your Honor, I would make
12  essentially the same request except that our motion,
13  although it seeks preliminary injunctive relief in the
14  alternative, it primarily seeks a final declaratory
15  judgment that what has just happened, apparently, is
16  unconstitutional, and that is ready for a final decision
17  we were saying on Monday.  We have a reply brief that has
18  just been filed, and we would -- we could -- this Court
19  could issue that order immediately, and I don't know what
20  the consequences for the bankruptcy court would be,
21  necessarily, but I think it would -- it might make a
22  difference.
23       MR. WERTHEIMER:  I'm sorry, and I think that at
24  a minimum, your Honor, I think we should -- I think the
25  Court should decide the preliminary injunction now, but

**10**

1  we should find out from the Office of the Attorney
2  General whether the Governor has authorized a bankruptcy
3  that has done the act that we were attempting to enjoin
4  and that they knew we were attempting to enjoin and that
5  they've known for the last two weeks and that they're
6  filing briefs on saying that it's not ripe.  The
7  attorneys for the Government have represented to this
8  Court that our motion is not ripe.
9       THE COURT:  I just received a note from my law
10  clerk that says the bankruptcy was filed at 4:06.
11       MR. KING:  Right.  Your Honor, so what we'd
12  like to do here is amend our emergency motion for
13  temporary restraining order and get it and request from
14  this Court an order enjoining the Governor and the
15  Emergency Manager from taking any further action in the
16  bankruptcy proceeding, and we'll modify our order to that
17  effect.
18       MR. WERTHEIMER:  I would join that as to the
19  Governor.  We have not sued the Detroit Emergency
20  Manager, but I would orally join in that motion as to the
21  Governor and the Secretary of the Treasury.
22       MR. CANZANO:  I would say the same in our case.
23  We're not joining their motion but we're making a motion
24  in our case that would be the same as theirs only against
25  the Governor.

**11**

1       THE COURT:  Granted, as to all of your
2  requests.
3       How soon are you going to present me with an
4  order?
5       MR. KING:  Right now.
6       THE COURT:  All right.
7       MR. KING:  We just need to mark up the order
8  that we have for the Court.
9       THE COURT:  Absolutely.
10       MR. QUASARANO:  Your Honor, if I may, we would
11  ask that the Court stays enforcement of the order, and
12  your ruling on that would be appreciated at this time.
13       THE COURT:  Denied.
14       MR. QUASARANO:  Thank you.  We'll present an
15  order as soon as possible.
16       THE COURT:  Thank you.
17       MR. QUASARANO:  Thank you, Judge.
18       MR. WERTHEIMER:  Your Honor, we will need a few
19  minutes to prepare a written order, but if we can --
20       THE COURT:  Well, sir, would you like to copy
21  that and modify what they're doing?  My law clerk will be
22  happy to help you.
23       MR. WERTHEIMER:  Thank you, your Honor.
24       THE COURT:  As to your stay, you'll be getting
25  that to me in --

MR. QUASARANO: Maybe I can just make a call and get an order over to you right yet today.

THE COURT: Sure. You can even handwrite it. I don't care how we do it. You can run it over here, fax it over here; whatever gets you the job done. Time is of the essence.

MR. QUASARANO: I appreciate that.

MR. KING: (Approaching the bench.)

Your Honor, Ron King again on behalf of the Plaintiffs. If we could go back on the record.

THE COURT: Excuse me.

MR. KING: We'd like to set the sequence of events in terms of how things have transpired in the last hour, if you will. Just for the record, our motion for emergency temporary restraining order was filed at 3:37 p.m.; that is, today, July 18th. We promptly, well in advance of 4 o'clock and probably within -- well, actually, we had delivered prior to the filing time at 3:37 judge's copies to chambers for your review.

Then we waited for the Attorney General, who doesn't feel compelled to make an appearance here in this case because he hasn't actually been officially retained yet, but, nevertheless, as a courtesy we waited for him to appear, which he came upstairs sometime around 4:10. We understand the bankruptcy filing was at 4:05?

12

THE COURT: 4:06.

MR. KING: 4:06. The Court took the bench at approximately 4:20. And to the extent your Honor has had an opportunity to read the papers and was inclined to make a ruling, if you'd be willing to put that on the record, then in the -- when we do seek dismissal of the bankruptcy proceeding, we'll have some clear record of the sequence of events here.

MR. WERTHEIMER: Just to add, in terms of the sequence of events, I did advise by telephone Mr. Quasarano of the fact that I would be in court and that it was my understanding that Clark Hill was going to be in court seeking a temporary restraining order. I talked to him by phone before 4 this afternoon, sometime between 3:30 and 4.

MR. QUASARANO: And I could confirm that Mr. Wertheimer gave me the professional curtesy of letting me know that there was a hearing being planned. I had no -- we have no personal knowledge in our division of a bankruptcy being filed any certain time or date, so there is nothing we could provide in terms of a response that there is going to be a bankruptcy filed. So we learned it as everyone else learned.

THE COURT: All right. And obviously I heard this was happening. I had another hearing that was

13

supposed to take place at 4 o'clock, and I understood this was a very important issue, and we obviously have a hearing scheduled, another hearing scheduled, at 9 o'clock on Monday.

So I advised my law clerk that we had a 4 o'clock hearing that wasn't going to take very long, and whenever you all got here and that that would wait for all of the attorneys, we would then have a hearing and to let me know when everybody was in place and then I would come out.

So that's exactly what happened. She let me know everybody was here, gave me the paperwork to look over, and, of course, I did just that. And we got out of here as quickly as we could, obviously not in time because 4:06 occurred and they did what they were going to do, which I know you all raised here.

I did have an opportunity to -- with review of what was filed, and you're asking me what I would have done, and it was my intention, after reviewing what you had filed, in addition to other research that my capable externs from Cooley and from Michigan State, as well as my very capable law clerk pulled for me, I reviewed constitutional provisions, I reviewed legislative intent, I reviewed what you all provided me, I reviewed a lot of information in the last few hours, and it was my

14

intention to grant you your request completely.

MR. KING: Thank you, your Honor. Appreciate your clarifying the record.

MR. WERTHEIMER: Thank you, your Honor. Your Honor, we have a proposed order.

THE COURT: You may approach. Thank you.

MR. WERTHEIMER: Thank you. It is handwritten. (Approaching the bench.)

THE COURT: No problem.

MR. WERTHEIMER: And for caption, it just says, at this point, Flowers Caption.

THE COURT: Okay.

MR. WERTHEIMER: I had some help in drafting too if you can't read the --

THE COURT: We'll make it work.

MR. WERTHEIMER: Okay. Thank you, Judge.

MR. KING: We may be back tomorrow, your Honor.

MR. WERTHEIMER: We may be back too, your Honor. And if we are, I will be in a suit.

THE COURT: It's okay. As long as your body is covered, I don't care what's it's covered with.

MR. KING: I think with respect to the present motion before you, we have an order in place and appreciate you making the accomodation and time for us today. Thank you.

15

```
 1              THE COURT:  No problem.
 2              Now, if you're back tomorrow, what is it going
 3    to be for?
 4              MR. KING:  We might file a mandamus action
 5    requiring the EM to withdraw the Chapter 9 filing.
 6              THE COURT:  Will this require time on the
 7    record?
 8              MR. KING:  Yes.
 9              THE COURT:  Okay.  My time restriction is that
10    I have my morning free until about 1:30.  Can you get it
11    here before 1:30?
12              MR. PATTWELL:  Yes.
13              MR. KING:  Absolutely.
14              THE COURT:  I'll make myself available all
15    morning until 1:30.
16              MR. KING:  Thank you, your Honor.
17              THE COURT:  Okay.
18              MR. CANZANO:  May I approach, your Honor?  I
19    have an order drafted also.
20              THE COURT:  You may.
21              MR. CANZANO:  (Approaching the bench.)
22              THE COURT:  Okay.  We'll make you copies, and
23    this is our copy.
24              Anything else for the record?
25              MR. KING:  No, your Honor.  Thank you.
                                                16
 1              MR. WERTHEIMER:  No, your Honor.  Thank you.
 2              THE COURT:  That's all for the record.  Thank
 3    you.
 4              (At 4:38 p.m., the matter is
 5              concluded.)
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

```
25                                              17
```

```
 1      STATE OF MICHIGAN)
                          ) SS.
 2       COUNTY OF INGHAM)

 3

 4                    CERTIFICATE OF REPORTER

 5

 6              I, Melinda I. Dexter, Certified Shorthand

 7      Reporter, do hereby certify that the foregoing

 8      17 pages comprise an accurate, true, and complete

 9      transcript of the proceedings and testimony taken in the

10      case of The General Retirement System of the City of

11      Detroit, et al., versus Kevyn D. Orr, et al., Case

12      No. 13-768-CZ, and Gracie Webster, et al., versus the

13      State of Michigan, et al., Case No. 13-734-CZ, and

14      Robbie Flowers, et al., versus Rick Snyder, et al., Case

15      No. 13-729-CZ, on Thursday, July 18, 2013.

16              I further certify that this transcript of the

17      record of the proceedings and testimony truly and

18      correctly reflects the exhibits, if any, offered by the

19      respective parties.  WITNESS my hand this the eighteenth

20      day of July, 2013.

21

22      _____
        Melinda I. Dexter, RMR, RPR, CSR-4629
23      Official Court Reporter
        313 West Kalamazoo
24      Post Office Box 40771
        Lansing, Michigan 48901-7971
25
```

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION – DETROIT

------------------------------------------------------------ x

In re:

CITY OF DETROIT, MICHIGAN,                Chapter 9

Debtor.                                    Case No. 13-53846

                                         Hon. Steven W. Rhodes

------------------------------------------------------------ x

## PROOF OF SERVICE

The undersigned certifies that on July 24, 2013, a copy of Objection Of Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington, Bruce Goldman and International Union, UAW To Motion of Debtor, Pursuant to Section 105(a) Of The Bankruptcy Code, For Entry Of An Order Extending The Chapter 9 Stay To Certain (A) State Entiries, (B) Non-Officer Employees and (C) Agents and Representatives Of The Debtor (Docket No. 56), and the accompanying Amended Declaration of William Wertheimer, were served upon parties via the Court's electronic court filing service.

I declare that the foregoing statement is true to the best of my information, knowledge and belief.

/s/ Niraj R. Ganatra
Niraj R. Ganatra (P63150)
International Union, UAW
8000 E. Jefferson Avenue
Detroit, Michigan 48214
(313) 926-5216
nganatra@uaw.net