| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Honorable Steven W. Rhodes |
| | ) | |

## LIMITED OBJECTION OF THE DETROIT RETIREMENT SYSTEMS TO MOTION OF DEBTOR, PURSUANT TO SECTION 1102(A)(2) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER DIRECTING THE APPOINTMENT OF A COMMITTEE OF RETIRED EMPLOYEES

The Police and Fire Retirement System of the City of Detroit ("PFRS") and the General

Retirement System of the City of Detroit ("GRS," and together with PFRS, the "Retirement

Systems") hereby submit this limited objection (the "Limited Objection") to the *Motion of*

*Debtor, Pursuant to Section 1102(a)(2) of the Bankruptcy Code, for Entry of an Order Directing*

*the Appointment of a Committee of Retired Employees* [Docket No. 20] (the "Retiree Committee

Motion").[1]

### Preliminary Statement

As discussed more fully below, while the Retirement Systems do not object in concept to

the appointment of a committee of retirees pursuant to section 1102(a)(2) of the Bankruptcy

Code (the "Retiree Committee"), the Retirement Systems have concerns about the apparent

proposed role of the Retiree Committee in the case and the process proposed to select

---

[1] This Objection is filed subject to the reservations of rights in the Appearances filed by the undersigned counsel in this case, as well as the arguments articulated in the Objection of the Retirement Systems to the Debtor's Stay Motions [Docket No. 141] contesting the Court's subject-matter jurisdiction.

participants for the Retiree Committee, as described in the Retiree Committee Motion. In short, it is important that the appointment of a Retiree Committee should not be used by the City of Detroit, Michigan (the "City"), as some sort of surrogate or straw person to avoid its obligations to negotiate earnestly and in good faith with other significant creditor constituencies whose interests may overlap with those of the Retiree Committee, including the Retirement Systems, and who wish to participate in the protection of retiree benefits. The Retiree Committee, if formed, will have no greater ability to bind individual retirees to any restructuring plan in this case than the Retirement Systems or other creditor constituents (*i.e.,* no such authority exists). Accordingly, there is no justification for designating the Retiree Committee as the sole or even preferred negotiating body for all retiree issues. Moreover, the Retirement Systems may have significant resources to bring to bear on issues in this case involving retiree pension benefits, and those resources should not be excluded from the process merely due to the existence of a Retiree Committee.

In addition, the Retirement Systems object to the City's proposed involvement in the formation of the Retiree Committee, as proposed in the Retiree Committee Motion, including specifically the City's proposed involvement in identifying potential participants for the Retiree Committee. This function should be carried out by the Office of the U.S. Trustee, without any participation from the City, to ensure that the Retiree Committee is independent of the City.

The Retirement Systems also object to the Retiree Committee Motion on the basis that, if a Retiree Committee is to be formed, there should be explicit and appropriate provisions (similar perhaps to those commonly found in a chapter 11 case) for the City's payment of reasonable compensation to professionals hired by the Retiree Committee. No such provisions are proposed by the City.

## Factual and Procedural Background

### I.   The Retirement Systems

1.      As authorized by Article VII, section 22 of the Michigan Constitution and sections 4i, 4j, and 21 of the Home Rule City Act, 1909 PA 267 (as amended), M.C.L. §117.1 *et seq*. (the "Home Rule City Act"), the residents of the City established the Retirement Systems through amendments to the City's Charter of 1918, effective July 1, 1938, and effective July 1, 1941, respectively. The Retirement Systems were created to, among other things:  (i) administer retirement, disability, and survivor benefits to eligible uniformed and non-uniformed City employees and their beneficiaries (*i.e.,* the participants); (ii) ensure that the City actually honors its collective bargaining agreements by tendering to the Retirement Systems the City's annual and obligatory pension contributions; and (iii) protect the vested pension benefits (*i.e.,* "accrued financial benefits") of the Retirement Systems and their participants.

2.      There are more than 32,000 active and retired employees of the City, who are participants in the Retirement Systems and whose "accrued financial benefits" the Retirement Systems must protect.

3.      In early 2013, as the City's deteriorating financial condition became increasingly clear and the appointment of an emergency financial manager under Public Act 72 became increasingly imminent, the Retirement Systems engaged the law firm of Clark Hill PLC ("Clark Hill") to provide counsel regarding restructuring and bankruptcy issues.  In June 2013, the Retirement Systems also engaged Greenhill & Co., LLC ("Greenhill"), as its financial advisor in these matters.

4.      In the weeks prior to the commencement of this bankruptcy case, Clark Hill and Greenhill devoted significant resources to researching and reviewing both the City's and the

Retirement Systems' financial situations, including attending informational presentations made by Mr. Kevyn Orr, as the City's Emergency Manager (the "Emergency Manager"), and/or his legal and financial advisory team on June 14, June 20, June 25, July 10 and July 11, 2013, in order to provide advice and counsel to the Retirement Systems in connection with protecting the pension benefits of the Retirement Systems and their participants.[2] Clark Hill and Greenhill are continuing to render substantial services in this regard. The Retirement Systems and their professionals have also had significant preliminary discussions with the Retirement Systems' actuarial firm regarding relevant issues. Thus, the Retirement Systems expect to be able to contribute considerable resources to the negotiations with the City regarding its financial and operational restructuring and the treatment and protection of accrued pension benefits for both current employees and retirees.

## II.     The City's Bankruptcy Case and Retiree Committee Motion

5.     On July 18, 2013 (the "Petition Date"), the City filed its Voluntary Petition under chapter 9 of title 11 of the United States Code, 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code").

6.     On July 19, 2013, the City filed its Retiree Committee Motion, seeking to appoint a Retiree Committee and proposing certain procedures for the selection of parties to participate on the Retiree Committee (the "Selection Procedures").

---

[2]  Nothing herein should be construed as an indication that the City and/or the Emergency Manager engaged in good-faith negotiations with the Retirement Systems prepetition in accordance with Bankruptcy Code section 109(c)(5)(B) or otherwise. As stated above, the referenced meetings were primarily presentational and did not involve any meaningful bilateral negotiations. Without waiving any rights, the Retirement Systems look forward to having such negotiations at an appropriate time in the future.

## Argument

**I.** **Appointment of a Retiree Committee Should Not Excuse the City from Negotiating Earnestly and in Good Faith with the Retirement Systems and Other Key Constituents Having an Interest in the Protection of Retiree Benefits.**

7.  The City has requested the appointment of a Retiree Committee pursuant to Bankruptcy Code section 1102(a)(2).  Bankruptcy Code section 1103 provides, in part, as follows:

> (c) A committee appointed under section 1102 of this title may—
>
> (1) consult with the trustee or debtor in possession concerning the administration of the case;
> (2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;
> (3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;
> (4) request the appointment of a trustee or examiner under section 1104 of this title; and
> (5) perform such other services as are in the interest of those represented.
>
> (d) As soon as practicable after the appointment of a committee under section 1102 of this title, the trustee shall meet with such committee to transact such business as may be necessary and proper.

11 U.S.C. § 1103(c) and (d).

8.  The principal reason cited by the City for the appointment of a Retiree Committee is that neither the Retirement Systems nor the Retiree Associations or Unions possess the legal authority to bind individual retirees to a restructuring plan in this bankruptcy case.[3]  *See, e.g.,* paragraphs 18, 19, and 24 of the Retiree Committee Motion.  While this may be true, it is

---

[3]  Any capitalized term used but not defined herein shall have the meaning ascribed to such term in the Retiree Committee Motion.

9238010.2 14893/161046

important to note that nothing in Bankruptcy Code sections 1102 and 1103 or any other provisions of, or incorporated into, Chapter 9 of the Bankruptcy Code would give the Retiree Committee any such authority to bind individual retirees.[4]

9.     As such, a Retiree Committee should not be viewed as having any greater footing to participate in negotiations regarding the protection of pension benefits than the Retirement Systems. Nonetheless, in the Retiree Committee Motion, the City states, among other things, as follows:

> The appointment of the Retiree Committee, therefore, will (a) provide representation to the Retirees that they otherwise would lack, (b) provide *a single party to negotiate with the City on behalf of the Retirees as a group* and (c) assist the many thousands of Retirees in expressing their views and exercising their rights during the City's restructuring.

Retiree Committee Motion at ¶ 25.

10.     The suggestion that the Retiree Committee should serve as the sole negotiating party on behalf of retirees with respect to pension benefits is arbitrary and unsupported by the Bankruptcy Code. To the extent that this was the intended effect of the Retiree Committee Motion, the Retirement Systems submit that this is an inappropriate attempt to marginalize the Retirement Systems - - the two largest creditors of the City, according to the City's own pleadings - - in negotiating the protection of pension benefits in this case, and to deprive the participants of the Retirement Systems of the significant resources which the Retirement Systems are positioned to bring to bear in those negotiations through their assembled professional team.

---

[4] A committee formed under Bankruptcy Code section 1114 may have the power to negotiate on behalf of and bind retirees with respect to healthcare benefits; however, section 1114 is not incorporated into, and does not apply in, a Chapter 9 bankruptcy case. 11 U.S.C. § 901(a).

## II.    The Proposed Selection Procedures Are Improper

11.    At paragraph 27 of the Retiree Committee Motion, the City proposes certain Selection Procedures for, among other things, soliciting interest from potential retiree participants to serve on the Retiree Committee.

12.    Among other things, the Selection Procedures propose:

- Promptly following the entry of an order granting this Motion, *the City* will contact various key Unions and Retiree Associations for input respecting potential Retiree representatives.  Following such input, *the City* will contact the U.S. Trustee to agree upon a method for identifying a representative sample from among the Retirees to solicit (collectively, the "Solicited Retirees");

- Within three business days of *the City* and U.S. Trustee identifying the Solicited Retirees, *the City* will mail a notice and questionnaire in the form attached hereto as Exhibit 6 (the "Questionnaire") to each Solicited Retiree to determine his or her interest in serving on the Retiree Committee.  The City also will post the notice and the Questionnaire on the website established by the City's claims and noticing agent—www.kccllc.net/Detroit (the "Website").

Retiree Committee Motion at ¶ 27 (emphasis added).

13.    If the Court determines that a Retiree Committee should be appointed, the process of appointing such committee under Bankruptcy Code section 1102 falls within the purview of the Office of the U.S. Trustee.  *In re Dow Corning Corp.*, 212 B.R. 258, 264 (E.D. Mich. 1997). There is no provision for a debtor to collaborate in that process as suggested in the Retiree Committee Motion, and such collaboration runs directly counter to the concept of an independent official committee.  Indeed, consistent with this concept, Rule 2014-2 of the Local Rules of the Bankruptcy Court for the Eastern District of Michigan, E.D. Mich. LBR 2014-2, prohibits a debtor from seeking to influence the selection of professionals by an official committee. Similarly, a debtor should not be permitted to influence the selection of the members of an official committee.   The proper procedure would be for the Office of the U.S. Trustee,

9238010.2 14893/161046

independently and of its own accord, to contact the appropriate parties for the required input in soliciting participants for the Retiree Committee.

### III. If a Retiree Committee Is To Be Formed, Explicit Provision Should Be Made for Funding Such Committee

14. Except as provided in section 943(b)(5), there are no provisions in Chapter 9 of the Bankruptcy Code that address the debtor's payment of the professional fees of a committee. Notably, there is no mention in the Retiree Committee Motion of making any provisions for the adequate funding of professional fees that may be incurred by the Retiree Committee.

15. Without proper and adequate provision for the Retiree Committee to hire and compensate professionals, it will be impossible for the Retiree Committee to actually conduct its affairs and participate effectively in this bankruptcy case.

16. Therefore, if a Retiree Committee is to be formed, the City must commit to provide proper and adequate means to reasonably compensate the Retiree Committee's professionals.

CLARK HILL PLC

/s/ Robert D. Gordon
Robert D. Gordon (P48627)
Shannon L. Deeby (P60242)
Evan J. Feldman (P73437)
151 South Old Woodward Avenue
Suite 200
Birmingham, Michigan 48009
Telephone: (248) 988-5882
Facsimile: (248) 988-2502
rgordon@clarkhill.com

Dated: July 31, 2013

*Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*