# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

## STATEMENT OF SYNCORA GUARANTEE INC. AND SYNCORA CAPITAL ASSURANCE INC. IN ADVANCE OF THE AUGUST 2, 2013, INITIAL STATUS CONFERENCE ON THE DEBTOR'S ASSUMPTION MOTION

Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (collectively, "Syncora") submit this statement in advance of the August 2, 2013, initial status conference on the City's motion (the "Assumption Motion")[1] to assume the Forbearance Agreement.[2] Based on its Proposed Order, the City appears to be asking the Court to resolve — in the context of a 365 hearing on the Forbearance Agreement — significant legal and factual issues affecting the competing rights of non-debtor parties. Since filing its initial discovery motion,[3] Syncora has spent additional time reviewing the Assumption Motion and the Forbearance Agreement and is concerned that a section 365 hearing is not the appropriate procedural context in which to address the significant factual and legal issues implicated by that motion and agreement. Syncora therefore submits the instant Statement to articulate its concerns in advance of the initial status conference, with the goal of streamlining discussion and minimizing time at the podium.

---

[1] *See Motion of Debtor for Entry of an Order (I) Authorizing the Assumption of that Certain Forbearance and Optional Termination Agreement Pursuant to Section 365(a) of the Bankruptcy Code, (II) Approving Such Agreement Pursuant [to] Rule 9019, and (III) Granting Related Relief* [Docket No. 17].

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Assumption Motion.

[3] *See Motion of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. for Clarification Regarding The Court's July 22, 2013 Order and Leave to Conduct Limited Discovery* [Docket No. 142].

As a threshold matter, a hearing under section 365 is a summary proceeding that is not meant to finally resolve complex legal and factual disputes over the contract in question. *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098-99 (2d Cir. 1993), *cert. dismissed*, 511 U.S. 1026, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994). Here, not only do the Assumption Motion and Forbearance Agreement present many complex disputes, they do so with an eye towards stripping Syncora of bargained-for rights and protections.

Indeed, upon reviewing the recitals in the Forbearance Agreement where the Swap Counterparties represented that they have the unilateral right to terminate the Swaps, Syncora commenced a declaratory judgment action in New York State court seeking an adjudication of Syncora's rights to the contrary.[4] There is ongoing litigation between the Swap Counterparties and Syncora over the proper venue of that dispute, and Syncora has made clear that such a critical issue affecting its rights under a New York contract should be finally adjudicated by the court in New York, which is exactly what the parties contemplated when negotiating those agreements. As a result, Syncora does not consent to final adjudication of its state law property rights in any other court. In addition, it opposes any notion that an assumption motion is an appropriate vehicle for the Court to address any of Syncora's rights vis-à-vis non-debtor parties, such as the Swap Counterparties.

---

[4] To the extent that the City argues that Syncora's initiation of the New York action violates the provisions of the automatic stay embodied in Section 362, this is not the case. Syncora took pains to address in advance with the City that neither the Confirmation Order nor the Extension Order would apply to claims by Syncora against the Swap Counterparties. These assurances were confirmed by counsel for the City, who emphasized on the record that "Neither of the motions seek to assert or to extend the stay in favor of the swap counter parties, which are banks that have nothing--no relationship with the city, or the service corporation themselves or any other party related to those entities other than a couple of city officers that serve as directors of the service corporation, and they do that because they're required to do that in the performance of their duties as city officers pursuant to a city ordinance, which is ordinance number 0305. We are not seeking to protect the corporations themselves. We are not seeking to protect any swap counter parties, so I want to make that clear." (Comments of Ms. Lennox, Tr. at p. 66-67, ECF 220.)

2

Given the fact that this Court cannot adjudicate the rights of non-debtor parties, it is unclear what the City purports to assume. *See In re Sportstuff, Inc.*, 430 B.R. 170, 177 (B.A.P. 8th Cir. 2010). For example, if the New York court determines that the Swap Counterparties do not have the unilateral rights set forth in the Forbearance Agreement, a question then arises as to the parties' ability to perform under the assumed contract. In any event, because an assumption hearing has no collateral effect, Syncora believes that proceeding down the assumption path would be an inefficient use of the parties' time and resources. If, however, the Assumption Motion is to proceed — notwithstanding the many complex issues that must be litigated elsewhere — Syncora respectfully requests that it be permitted to take discovery on the contested matter involving assumption.

**I.     An Assumption Motion Is Not the Proper Vehicle to Resolve Complex Legal and Factual Disputes.**

A motion to assume is a summary proceeding meant to efficiently review a debtor's decision to assume or reject a particular contract. *In re Orion Pictures Corp.*, 4 F.3d at 1098-99; *see also In re BankVest Capital Corp.*, 290 B.R. 443, 448 (B.A.P. 1st Cir. 2003) *aff'd*, 360 F.3d 291 (1st Cir. 2004) (citing *Orion* for the proposition that a motion to assume is a summary proceeding); *In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009) (same); *In re Sentry Operating Co. of Texas, Inc.*, 273 B.R. 515, 523 (Bankr. S.D. Tex. 2002) (same); *In re Docktor Pet Ctr., Inc.*, 144 B.R. 14, 16 (Bankr. D. Mass. 1992) (holding, pre-*Orion*, "that a motion to assume an executory contract is generally, and should be, a summary proceeding. It is not the place for an extended breach of contract suit."). As such, it is not the time or place for prolonged discovery or a lengthy trial with disputed issues. *In re Orion,* 4 F.3d at 1098-99. Rather, motions to assume have the limited purpose of ensuring that valuable property is

preserved and that burdensome property is discarded, and are not intended to resolve disputes between creditors and the estate. *Id*.

*Orion* illustrates the general principle that section 365 of the bankruptcy code does not authorize a bankruptcy court to resolve complicated legal and factual questions — in that case, the validity of a contract — in the context of an assumption motion. 4 F.3d at 1098-99. In *Orion*, the debtor moved to assume a pre-petition contract with Showtime. *Id*. at 1097. Simultaneously, the debtor filed an adversary proceeding against Showtime claiming anticipatory breach. *Id*. The bankruptcy court tried the breach issues in connection with the assumption motion. *Id*. at 1097-98. Finding no breach, it authorized assumption and dismissed the related adversary proceeding as moot. *Id*. at 1098. The District Court affirmed. *Id*.

The Second Circuit reversed, holding "that it was error for the bankruptcy court to decide a disputed factual issue between the parties to a contract in the context of determining whether the debtor . . . should be permitted to assume a contract." *Id*. Rather, "a motion to assume [a contract] should be considered a summary proceeding," and "is not the place for prolonged discovery or a lengthy trial with disputed issues." *Id*. at 1098.

While *Orion* and its progeny demonstrate that an assumption hearing is not the proper procedural method to resolve complicated legal and factual issues, these cases also demonstrate that, from a practical perspective, there is little benefit to doing so. As the *Orion* court noted, a decision on assumption is not a "formal ruling on the underlying disputed issues, [and it] . . . will receive no collateral estoppel effect." *Id*. at 1099; *see also In re New York Skyline, Inc.*, 432 B.R. 66, 81-82 (Bankr. S.D.N.Y. 2010) (holding that findings made in connection with an assumption motion did not collaterally estop party from arguing that it was defrauded, that the consideration failed, or that counterparty had committed substantial breaches). As a result, a court will still

4

need to re-visit the same issues in a non-bankruptcy proceeding that this Court will have already heard in an assumption hearing. Thus, judicial economy also counsels against considering the Assumption Motion at this time. *In re Expresstrak LLC*, No. 03-67235, 2004 WL 3735126, at *9 (Bankr. E.D. Mich. Jan. 20, 2004) (Shefferly, J.) (staying assumption hearing where similar issues were already being litigated in another proceeding on the grounds that "[j]udicial economy dictates that only one proceeding be conducted to litigate these issues"). Syncora's purpose in submitting this Statement is thus to preview its objection and pose the issue of prudential case management before the parties have expended significant time and effort on the Assumption Motion.

## II. The Forbearance Agreement Could Not Operate to Modify the Transaction Documents, which Cannot be Modified Without Syncora's Consent.

On July 15, 2013, the City entered into the Forbearance Agreement with the Swap Counterparties and the Service Corporations. The Forbearance Agreement (a) prohibits the Swap Counterparties from taking any actions to trap the funds in the General Receipts Subaccount (when such trapping is automatic) and (b) grants the City the option to direct the Swap Counterparties to unilaterally terminate the Swaps (which presupposes the Swap Counterparties actually have such a right, which is the subject of litigation in New York). Clearly, the Forbearance Agreement could not amend, modify or waive *Syncora's* rights under the Transaction Documents, including the Swaps, without first obtaining consent from Syncora, as required under the terms of the Swaps. Moreover, if the Swap Counterparties have no unilateral right to terminate, then the Forbearance Agreement cannot manufacture such a right simply because it was bargained-for between the Swap Counterparties and the City. As a result, this Court should adjourn consideration of the Assumption Motion until the rights as between Syncora and the Swap Counterparties can be finally adjudicated in the New York action.

5

### A. The Forbearance Agreement Must Be Considered in Conjunction With the Interlocking Series of Agreements Governing the COPs and Swaps Transactions.

The Forbearance Agreement cannot be understood unless it is viewed in relation to the interlocking set of agreements that have, since the mid-2000s, operated together to govern the transactions surrounding the Swaps and the COPs. These documents, all of which contain cross-references to the other agreements,[5] set forth Syncora's rights in its various capacities as Swap insurer, COPs insurer, and COP holder. Under the Swaps alone, Syncora has the following rights:

- Part 5(i); Part 5(a) - Designation of Early Termination Event: If a Termination Event or Event of Default occurs (as has happened), neither the Service Corporations nor the Swap Counterparties can designate an Early Termination Event without Syncora's **prior written consent**.

- Part 5(iv); Part 5(d) - Amendments: The Swaps are amended to (a) incorporate the Collateral Agreement and (b) expand Syncora's consent rights to include any waiver, modification, and amendment of the Swaps or the Collateral Agreement.

- Part 5(x); Part 5(j) - Representations and Agreements: Each party's representations and agreements in the Swaps were expressly made to and for the benefit of Syncora.

- Part 5(xi); Part 5(k) - Third-Party Beneficiary: Syncora is an express third-party beneficiary of the Swaps with the power to enforce the terms of the agreement.

- Part 5(xiv); Part 5(n) - Designating an Early Termination Event: Syncora must consent in writing to a party's attempt to terminate the Swaps due to an Event of Default or Termination Event.

In addition to the above rights, Syncora has similar consent rights under the Collateral Agreement. (Collateral Agreement, § 14.5.) And, under the Service Contracts, the City may not direct the Service Corporations to terminate the Swaps without Syncora's consent. (Service Contract, § 9.02(a).) Finally, the Contract Administration Agreement provides Syncora with the

---

[5] The Collateral Agreement goes a step further and explicitly recognizes the interlocking nature of the various documents governing the Swaps and COPs and incorporates the provisions of the Swaps, the Service Contracts, and the Contract Administration Agreement. (Collateral Agreement, § 14.14.)

right to direct the actions of the Swap Counterparties. (Contract Administration Agreement, § 6.9.2(2).) Of course, these bargained-for rights are meant to provide important protections to Syncora in exchange for its substantial insurance commitments and, in all cases, constitute Syncora's property interest.

### B. The Forbearance Agreement Is Ambiguous With Respect To Its Potential Effect On Syncora's Rights.

Noticeably absent from the City's Assumption Motion is any mention of the effect of the Forbearance Agreement on Syncora's rights under the Transaction Documents. In the extreme, however, the Forbearance Agreement may be an attempt to end-run Syncora's state law contract rights under the guise of a motion to assume an agreement that the parties negotiated without Syncora's participation or consent.

For example, the Forbearance Agreement purports to give the City the right to direct the Swap Counterparties to terminate the Swaps through an "Optional Termination Right" found in the Swaps.[6] But under section 6.9.2 of the Contract Administration Agreement, it is *Syncora* that has exclusive power to direct the Swap Counterparties' actions. Moreover, the Swaps explicitly state that the Swap Counterparties cannot "designate an Early Termination Date . . . without the prior written consent of the Swap Insurer [i.e., Syncora]." (Amended Swaps, §§ 5(xiv), 5(n).) And yet Syncora's consent right — explicitly provided in the Swaps — is conspicuously absent from the Forbearance Agreement. Any interpretation of the Forbearance Agreement as seeking to include as its core consideration an improper and unauthorized amendment of Syncora's rights out of the Transaction Documents would, under New York law, render the Forbearance

---

[6] As part of the Forbearance Agreement, the Swap Counterparties represent that they have "the right to designate an Early Termination Date for the related Swap Agreements" and that they have "the right (but not the obligation) to terminate the Swap Agreements." (Forbearance Agreement, Recitals at 2.)
7

Agreement invalid. *BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 411 (S.D.N.Y. 2011).

A summary of the potential conflicts between the Forbearance Agreement and the Transaction Documents is contained in the following chart:

| **Forbearance Agreement** | **Transaction Documents** |
| --- | --- |
| **Recitals** - Each Swap Counterparty has the right to designate an Early Termination Date for the related Swap. | **Amended Swaps - §§ 5(xiv), 5(n)** - Swap Counterparties may not "designate an Early Termination Date . . . without the prior written consent of the Swap Insurer [*i.e.*, Syncora]." |
| **Section 1** - The Swap Counterparties may not take any actions to trap the funds in the General Receipts Subaccount and must use best efforts to ensure that such funds are disbursed to the City. | **Collateral Agreement - § 5.4(a)** - Cash-trapping occurs <u>automatically</u> upon a Termination Event or an Event of Default. Automatic protections of the Collateral Agreement cannot be waived, altered, or amended without Syncora's consent. (Amended Swaps, § 8(b).) |
| **Section 3.1** - The City has the right to direct the Swap Counterparties to terminate the Swaps. | **Contract Administration Agreement - 6.9.2(2)** - Syncora has the right to direct the actions of the Swap Counterparties. |
| **Section 3** - The City may terminate the Swaps at a specified buy-out that is less than the termination value of the Swaps. | **Master Swaps - § 6(e)** - If the Swap is terminated early, the termination value is determined by reference to either market quotation by leading dealers in the market or the full value of the loss of the Swap. |
| As a whole, the Forbearance Agreement amends and modifies the obligations of the parties under the Collateral Agreement without Syncora's consent. (*See, e.g.,* Section 1.2.) | **Amended Swaps - § 5(iv), 5(d)** - No amendments, modifications, or waivers of the Swaps or the Collateral Agreement are effective unless Syncora consents in writing. |

In summary, the issues surrounding the Forbearance Agreement implicate the rights of non-debtor parties against other non-debtor parties. Such issues cannot be adjudicated by this Court without Syncora's consent, and, in any event, do not lend themselves to resolution in a summary proceeding. That is particularly true because the Court's ruling on the Assumption Motion alone — whether granting or denying it — is without collateral effect on the parties or the ongoing litigation in other courts. If, however, the City is unwilling to adjourn consideration

of the Forbearance Agreement until after final adjudication of the competing rights of non-debtors and the validity of the Forbearance Agreement can be resolved in New York, then the parties should be permitted to take focused discovery on the issues connected to the Assumption Motion.

Dated: August 1, 2013

/s/ *Ryan Blaine Bennett*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
**MCDONALD HOPKINS PLC**
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*