UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

**RESPONSE OF MICHIGAN COUNCIL 25 OF THE AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, AFL-CIO AND SUB-CHAPTER 98, CITY OF DETROIT RETIREES TO THE (I) MOTION OF DEBTOR, PURSUANT TO SECTION 1102(a)(2) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER DIRECTING THE APPOINTMENT OF A COMMITTEE OF RETIRED EMPLOYEES AND (II) (A) MOTION OF DEBTOR, PURSUANT TO SECTIONS 102(1)(A) AND 105(a) OF THE BANKRUPTCY CODE AND RULES 2002(m) AND 9007 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, FOR ENTRY OF AN ORDER ESTABLISHING CASE MANAGEMENT AND SCHEDULING PROCEDURES AND (B) COURT'S NOTICE OF PROPOSED DATES AND DEADLINES**

The Michigan Council 25 of the American Federation of State, County & Municipal Employees, AFL-CIO ("**Council 25**") and Sub-Chapter 98, City of Detroit Retirees (the AFSCME retiree chapter for City of Detroit retirees) (collectively, "**AFSCME**") -- the representative of the interests of between at least forty and fifty percent (40-50%) of the about 11,943 City of Detroit (the "**City**" or "**Debtor**") non-uniformed retired employees (the "**AFSCME Retirees**"), and about 2,523 active City employees (the "**AFSCME Active Employees**", about seventy percent (70%) of the active non-uniformed union-represented employees, and together with the AFSCME Retirees, (the "**AFSCME Detroit Employees**")[1] -- through its counsel submits this response (the "**Response**") to the (i) *Motion of Debtor, Pursuant to Section 1102(a)(2) of*

---
[1] AFSCME represents the interests of all of its active and retired City employees, and will continue to do so in any and all proceedings in and related to this bankruptcy.

*the Bankruptcy Code, for Entry of an Order Directing the Appointment of a Committee of Retired Employees* [Docket No. 20] (the "**Retiree Committee Motion**") and (ii) *Motion of Debtor, Pursuant to Sections 102(1)(A) and 105(a) of the Bankruptcy Code and Rules 2002(m) and 9007 of the Federal Rules of Bankruptcy Procedure, for Entry of an Order Establishing Case Management and Scheduling Procedures* [Docket No. 39] and *Notice of Proposed Dates and Deadlines* [Docket No. 191] (collectively, the "**Scheduling Motion**"). In support of its Response, AFSCME (a) submits the *Declaration of Steven Kreisberg* (the "**Kreisberg Declaration"**), a copy of which is attached hereto as **Exhibit A**, and (b) respectfully states as follows:

**RESPONSE**

A. **AFSCME Fully Intends to Protect its Active and Retired Members Throughout this Bankruptcy Process, Including, to the Extent Permitted, through the Retiree Committee**.

1. Through the Retiree Committee Motion, the City of Detroit (the "**Debtor**" or the "**City**") seeks an order pursuant to section 1102(a)(2) of title 11 of the United States Code (the "**Bankruptcy Code**") directing the United States Trustee (the "**UST**") to appoint an official committee of retired employees (the "**Retiree Committee**") to act as the authorized representative of those former employees of the City and their beneficiaries (collectively, the "**Retirees**") entitled to receive pension benefits (the "**Pension Benefits**") and health and other post-employment welfare benefits (the "**Retirement Benefits**").

2. The AFSCME Retirees and AFSCME Active Employees look primarily and in many cases solely to their City pension, generally at amounts at or below only $19,000 a year, and City-provided medical benefits for retiree benefits. The threat that retiree benefits may be lost or diminished in bankruptcy has instilled reasonable feelings of fear and anxiety in the Debtor's Retirees, including the AFSCME Retirees,

that their present or future source of income will be drastically eroded, leaving them unable to afford necessities like food, a warm, safe place to live or medicine.

3. It is critical that the Debtor's Retirees, including the AFSCME Retirees, have a proper voice in this chapter 9 proceeding and on the Retiree Committee. The Debtor proposes that this voice be through the proposed Retiree Committee to be appointed by the UST.

4. AFSCME is aware of the City's position that the Retiree Committee would serve procedurally to facilitate its chapter 9 process "to allow the City to restructure its liabilities effectively and administer this chapter 9 case. Simply put, the City cannot successfully restructure, in its view, unless it addresses its crippling unfunded Retirement Benefit obligations." Retiree Committee Motion, at ¶ 26.

5. AFSCME is further aware of the City's position regarding its financial concerns, and AFSCME too would like to see these issues appropriately resolved. Since the filing of the Retiree Committee Motion, AFSCME has been concerned that while on the one hand, AFSCME is committed to constructively representing its retirees, employees and their interests in this bankruptcy process (whether through a role on the Retiree Committee process which AFSCME believes it should have, or otherwise), on the other hand AFSCME will not waive, impair or modify any of its (or any parties') constitutional, substantive, procedural or other rights in this case, including but not limited to its right to object to the eligibility of the City to file for bankruptcy under chapter 9 or the Tenth Amendment..

6. Given AFSCME's concerns, AFSCME contemplated (and indeed drafted) a complex objection to the Retiree Committee Motion, raising substantive and constitutional concerns that any Retiree Committee should not be appointed until all of the myriad legal issues regarding the chapter 9 filing were fully adjudicated. However, recognizing and balancing (i) the serious and difficult financial issues facing the City; and (ii) the opportunity presented here of opening communication lines and urgently

beginning frank negotiations (perhaps assisted by a Court-appointed mediator), negotiations which AFSCME believes never occurred in good faith prior to the City's filing;[2] against (iii) AFSCME's need to protect all of its legal and substantive rights should such negotiations not prove fruitful, AFSCME has worked to open the lines of communication over the past week with the City and its counsel and the City understands AFSCME's intent to work here constructively so long as it is protected by a reservation of rights regardless of whether the Court grants the Retiree Committee Motion (the "**Reservation of Rights**") with regard to any participation in the Retiree Committee process by AFSCME or other unions or retiree associations.

7. Unlike AFSCME's position at the last hearing before the Court (where AFSCME focused its arguments on constitutional, substantive, and other technical legal issues), AFSCME views **now** as the time to pursue this opportunity to begin mutually discussing how to address the City's financial issues and how to move forward. Additionally, since the City has expressed the view that dealing with a Retiree Committee could help facilitate and streamline the hard work and good faith negotiations that must take place over the coming weeks, AFSCME's focus now on behalf of all of its active and retired employees **is to actively participate and serve as a facilitator to this process**.

8. In this regard, AFSCME is aware that the UST often exercises its own discretion in appointing members of official committees, and historically, the UST has used its discretionary powers under section 1102 of the Bankruptcy Code to appoint fair and representative committees. Here, having AFSCME represented on the Retiree Committee would enable AFSCME to continue to draw on its internal local and national resources and labor negotiation experiences, including its internal legal, health and

---

[2] Of course, as with all rights AFSCME (and other parties) will reserve through the proposed Reservation of Rights language to be included in the order granting the Retiree Committee Motion, AFSCME reserves the right to fully argue and litigate that **no** good faith negotiations took place between the City and its unions (including AFSCME) prior to the chapter 9 filing.

benefit and other expertise that AFSCME uses routinely in non-concessionary negotiations or out of court concessionary negotiations for active and retired AFSCME employees.

9. AFSCME submits that it would be a shame not to draw on AFSCME's resources in conjunction with and as supplement to whatever professionals the Retiree Committee ultimately retains and in this regard, AFSCME has opened a direct dialogue with the City, the Detroit Retirement System, other unions and their respective counsel and other professionals regarding the envisioned Retiree Committee process. AFSCME is optimistic that the UST will recognize the crucial and critical role AFSCME can and should play in the Retiree Committee process.[3]

### B. **The Retiree Committee Should Fairly Represent all Retirees, Including the AFSCME Retirees**.

10. For the most part, the City's active employees live and work in Detroit and the Retirees continue to live in Detroit, some for most if not all of their lives. These citizens of Detroit understand that changes must be implemented to fix the financial woes of the City. However, they are not to blame for Detroit's financial problems, and indeed they have been sacrificing all along the way to help the City out. City employees have already made severe concessions to keep the city afloat. For the retirees to now continue to have a voice and continue to participate in the process of reshaping the City, they must be provided the resources to do so in an effective manner.

11. On July 18, 2013, the City filed a voluntary chapter 9 petition (the "**Petition**").

---

[3] AFSCME is somewhat concerned regarding the objection filed by the "Retiree Association Parties" [Docket No. 200] (the "**Retiree Association Objection**"), which parties include, in part, the Detroit Retired City Employees Association & Retired Detroit Police and Fire Fighters Association. AFSCME has reached out to the Retiree Association Parties, but as of this filing, has not been able to discuss their concerns. As discussed further below, AFSCME believes that the points raised in the Retiree Association Objection regarding the participation of unions such as AFSCME on the Retiree Committee are unfounded and, for the reasons discussed below, should be overruled by the Court.

12. Prior to the filing of the Petition, the City held several meetings with various unions and retiree associations, but such meetings could hardly be described as good faith, arms-length negotiations. The City, at these meetings, insisted that these meetings were not negotiations at all, but rather were discussions or presentations. AFSCME Detroit Employees were never given the opportunity to discuss the issues of serious cutbacks, and to date, the City's emergency manager, Kevyn Orr, has not specified the degree of reduction in existing Pension Benefits or Retirement Benefits the City is seeking other than that such reductions would be substantial. AFSCME still has no knowledge what the City's current plans are for the City's current employees and Retirees.

13. Subsequent to the filing of the Petition, on July 19, 2013 the City filed the Retiree Committee Motion and the Scheduling Motion.

14. Pursuant to the Retiree Committee Motion, the City requests, pursuant to section 1102(a)(2) of the Bankruptcy Code, entry of an order directing the UST to appoint a Retiree Committee. The City further proposes certain selection procedures for the selection of Retiree Committee members, including, in part:

> (a) contacting various key unions and retiree associations for input respecting potential Retiree Committee representatives;
>
> (b) soliciting retirees interested in serving on the Retiree Committee by questionnaire; and
>
> (c) allowing the UST to solicit the interest of union or retiree association representatives to participate on the Retiree Committee.

(A) <u>AFSCME Represents the Interests of its Active and Retired City Employed</u>.

15. To the extent there may have been some prior confusion and correspondence to the contrary, AFSCME is representing the interests of all of its active

- 6 -
13-53846-tjt    Doc 245    Filed 08/01/13    Entered 08/01/13 13:42:20    Page 6 of 15

and retired City employees, and will continue to do so for purposes of negotiations with the City, through the Retiree Committee or otherwise. *See* Kreisberg Declaration, ¶ 5.

16. If AFSCME, on behalf of the City's retired employees formerly in an AFSCME represented bargaining unit, were appointed to the proposed Retiree Committee, AFSCME would actively and vigorously represent the interests of retirees. *Id.* To the extent any future conflicts were to develop between AFSCME Retirees and Active AFSCME Employees, all committees have mechanisms for dealing with actual or potential conflicts and AFSCME would consider any such conflicts as they arise. *Id.* Until such time, AFSCME on behalf of the thousands of AFSCME Retirees, deserves a voice in the Retiree Committee process. *Id.*

17. In connection with the Retiree Committee Motion, the Retiree Association Parties filed the Retiree Association Objection, arguing (1) that unions such as AFSCME have no right to represent Retirees, and (2) even if AFSCME could represent retirees, such representation would pose a conflict of interest. *See generally* Retiree Association Objection.

18. The Retiree Association Parties have submitted no evidence that AFSCME (or other unions) could not at this time represent the Retirees, and indeed AFSCME and its affiliates routinely negotiate memoranda of understandings, contracts and collective bargaining agreements dealing with terms and conditions of employment and benefits (including pension and retiree benefits) applicable to active AFSCME represented employees. *See* Kreisberg Declaration, ¶ 3. Such terms are applicable to active employees upon retirement and often, by extension, are made applicable to currently retired employees formerly in an AFSCME represented bargaining unit. *Id.* In that capacity, AFSCME represents both actives and retirees without any issue or conflict preventing it from reaching agreements on behalf of both simultaneously. *Id.*

19. Additionally, no retiree, union or retiree association that would potentially serve on any proposed retiree committee has the unilateral right to bind all of

the City's thousands of retirees. *See* Kreisberg Declaration, ¶ 4. Any agreement reached between the City and its retirees would be noticed on all retirees and each retiree would have the opportunity to respond, object and take any appropriate legal actions with respect thereto. *See* Kreisberg Declaration, ¶ 4. Per its Constitution, Sub-Local 98, City of Detroit Retirees is affiliated with Council 25 of the American Federation of State, County & Municipal Employees, AFL-CIO, and also per its Constitution represents all AFSCME Retirees of the City of Detroit.

20. The issues addressed in the Retiree Committee process will directly affect the terms and conditions of employment of currently active workers. *See* Kreisberg Declaration, ¶ 6. Approximately 22 percent of accrued pension liabilities are due to currently active employees and changes in pension benefits will undoubtedly affect the pension benefits owed to the active workforce upon achievement of retirement eligibility under the pension plan. *Id.*

21. AFSCME submits that given its role as the representative of the interests of between at least forty and fifty percent (40-50%) of the about 11,943 City non-uniformed retired employees, and the City's largest union representative of Retirees, it should have a voice and a seat on the Retiree Committee. AFSCME and its retirees are fully vested in participating in this Retiree Committee process, and would like nothing better than an outcome that constructively deals with Detroit's financial woes while protecting retirees. Regardless of the concerns raised by the Retiree Association Parties, this Court has the absolute right to recognize AFSCME's value and nothing should prevent AFSCME from enforcing its right under section 1102(a)(4) to actively and fully participate in this process. *Cf.* 7 Collier on Bankruptcy, § 1102.07[3] (16th ed. 2012) (court has authority to "undertake an independent analysis of whether the committee provides adequate representation of the committee's constituency.") (citations omitted).

22. AFSCME believes its participation on the Retiree Committee is vital, but if it does not occur, AFSCME will continue to work to the fullest extent

possible to ensure the interests of the AFSCME Active Employees and AFSCME Retirees are protected. .

> C. **The Eligibility Timeline Should Be Set To Allow the Retiree Committee To Participate**.

23. Although somewhat modified by the *Notice of Proposed Dates and Deadlines* [Docket No. 191], pursuant to the Scheduling Motion, in part, the City has proposed and the Court suggested an expedited briefing and discovery schedule for litigation surrounding the City's chapter 9 eligibility determination

24. AFSCME respectfully submits that the timeline set forth for briefing and litigating eligibility should be delayed sufficient to let the Retiree Committee become established and retain professionals (assuming the City consents to pay for these professionals, as AFSCME hopes and trusts the City will) to be heard on the issue of eligibility, including on the timing of having that issue considered – particularly to allow the parties to try good faith negotiations with a properly functioning and representative Retiree Committee, perhaps assisted by any court-appointed mediator. Detroit's retirees want to be part of a solution to the City's financial problems, but cannot do so without the time and resources needed to contribute effectively and in good faith.

25. As indicated above, AFSCME submits that no good faith negotiations regarding Retirement Benefits or other pension reductions took place prior to the chapter 9 filing, and AFSCME (either as a member on the Retiree Committee or otherwise on behalf of its active and retired employees) is prepared to proceed to such negotiations now. If the negotiations progress, then the distraction of a hotly contested eligibility fight with the myriad legal issues that need to be addressed may distract and hinder the goal of remediating the City's financial woes.

26. Finally, the sheer breadth and complexity of the legal issues presented by the question of the City's eligibility for bankruptcy require more time to file and brief than what has been proposed thus far without consulting creditors.

- 9 -
13-53846-tjt    Doc 245    Filed 08/01/13    Entered 08/01/13 13:42:20    Page 9 of 15

## CONCLUSION

For the reasons set forth herein, AFSCME respectfully submits that (i) it should be considered for representation on the proposed Retiree Committee to represent the AFSCME Retirees, and (ii) the Court consider adjusting the eligibility litigation schedule to permit negotiation and mediation between the parties in earnest and to allow the full and thorough briefing of eligibility issues at the appropriate time, and grant such other and further relief as may be just and proper under the circumstances.

Dated: August 1, 2013

**LOWENSTEIN SANDLER LLP**
By: /s/ Sharon L. Levine
Sharon L. Levine, Esq.
Philip J. Gross, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-6247 (Facsimile)
slevine@lowenstein.com
pgross@lowenstein.com

-and-

Herbert A. Sanders, Esq.
THE SANDERS LAW FIRM PC
615 Griswold St., Suite 913
Detroit, MI 48226
(313) 962-0099 (Telephone)
(313) 962-0044 (Facsimile)
hsanders@miafscme.org

*Counsel to Michigan Council 25 of the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO and Sub-Chapter 98, City of Detroit Retirees*

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) ) | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) ) | Case No. 13-53846 |
| Debtor. | ) ) ) | Hon. Steven W. Rhodes |

## DECLARATION OF STEVEN KREISBERG

I, Steven Kreisberg, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1. I serve as Director of Collective Bargaining and Health Care Policy, LLC of the American Federation of State, County & Municipal Employees, AFL-CIO ("**AFSCME**"), and I submit this declaration in support of the response of Michigan Council 25 of AFSCME and its Sub-Chapter 98, City of Detroit Retirees, to the (i) *Motion of Debtor, Pursuant to Section 1102(a)(2) of the Bankruptcy Code, for Entry of an Order Directing the Appointment of a Committee of Retired Employees* [Docket No. 20] (the "**Retiree Committee Motion**") and (ii) *Motion of Debtor, Pursuant to Sections 102(1)(A) and 105(a) of the Bankruptcy Code and Rules 2002(m) and 9007 of the Federal Rules of Bankruptcy Procedure, for Entry of an Order Establishing Case Management and Scheduling Procedures* [Docket No. 39] and *Notice of Proposed Dates and Deadlines* [Docket No. 191] (collectively, the "**Scheduling Motion**"). Unless otherwise stated below, I have personal knowledge of the matters set forth herein and, if called, could competently testify to the information provided below.

2. I understand that in connection with the Retiree Committee Motion, at least one pleading has been filed by the "Retiree Association Parties**"** [Docket No. 200], which parties include, in part, the Detroit Retired City Employees Association & Retired Detroit Police

and Fire Fighters Association. The Retiree Association Parties argue (1) that unions such as AFSCME (including AFSCME's local Detroit union, Michigan Council 25) have no right to represent retirees, and (2) even if AFSCME and its Council 25 could represent retirees, such representation would pose a conflict of interest. These arguments are incorrect for several reasons.

3. First, AFSCME and its affiliates such as Council 25 routinely negotiate memoranda of understanding, contracts and collective bargaining agreements dealing with terms and conditions of employment and benefits (including pension and retiree benefits) applicable to active AFSCME represented employees. Such terms are applicable to active employees upon retirement and often, by extension, are made applicable to currently retired employees formerly in an AFSCME represented bargaining unit. In that capacity, AFSCME represents both actives and retirees without any issue or conflict preventing it from reaching agreements on behalf of both simultaneously.

4. Additionally, no retiree, union or retiree association that would potentially serve on any proposed retiree committee has the unilateral right to bind all of the City of Detroit's (the "**City**") thousands of retirees. Any agreement reached between the City and its retirees would be noticed on all retirees and each retiree would have the opportunity to respond, object and take any appropriate legal actions with respect thereto.

5. If Council 25, on behalf of the City's retired employees formerly in an AFSCME represented bargaining unit, were appointed to the proposed Retiree Committee, I understand that Council 25 would actively and vigorously represent the interests of all retirees, and to the extent any future conflicts were to develop, all committees have mechanisms for dealing with actual or potential conflicts and Council 25 would consider any such conflicts as

they arise. Until such time, AFSCME and its Council 25, on behalf of the thousands of AFSCME City retirees, deserve a voice and seat in the Retiree Committee process.

6. The issues addressed in the Retiree Committee process will directly affect the terms and conditions of employment of currently active workers. Approximately 22 percent of accrued pension liabilities are due to currently active employees, and changes in pension benefits will undoubtedly affect the pension benefits owed to the active workforce upon achievement of retirement eligibility under the pension plan.

7. Within a bargaining unit, it is common for members to have differing interests. In some cases, such as the distribution of wage increases, the interests of different classifications of workers in the same bargaining unit may be inconsistent. AFSCME and its affiliated unions routinely balance competing interests in an effort to fairly represent all individuals covered by an agreement. The union's role on the Retiree Committee would create no greater representational challenge than is presented in our daily negotiations of collective bargaining agreements across the country.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 1st day of August, 2013   /s/ Steven Kreisberg
                                                                                      Steven Kreisberg