**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

-----------------------------------------------------x
                         :

In re                       :        Chapter 9
                         :

CITY OF DETROIT, MICHIGAN,    :        Case No. 13-53846
                         :

                Debtor.    :        Hon. Steven W. Rhodes
                         :
                         :

-----------------------------------------------------x

**MOTION OF DEBTOR, PURSUANT TO**
**SECTION 362(d)(1) OF THE BANKRUPTCY CODE, FOR**
**ENTRY OF AN ORDER LIFTING THE AUTOMATIC STAY TO THE**
**EXTENT NECESSARY TO PERMIT APPEALS OF CITY PROPERTY**
**TAX ASSESSMENTS TO PROCEED IN THE ORDINARY COURSE**

        The City of Detroit, Michigan ("Detroit" or the "City"), as the debtor

in the above-captioned case, hereby moves the Court, pursuant to section 362(d)(1)

of title 11 of the United States Code (the "Bankruptcy Code"), for the entry of an

order[1] lifting the automatic stay solely to the extent necessary to permit appeals of

City property tax assessments to proceed in the ordinary course.  In support of this

Motion, the City respectfully represents as follows:

---

[1]     This Motion includes certain attachments that are labeled in accordance with
Rule 9014-1(b)(1) of the Local Rules of the Bankruptcy Court for the
Eastern District of Michigan (the "Local Rules").  Consistent with Local
Rule 9014-1(b), a copy of the proposed form of order granting this Motion is
attached hereto as Exhibit 1.  A summary identifying each included
attachment by exhibit number is appended to this Motion.

CLI-2128732v9

## Background

1.       On July 18, 2013 (the "Petition Date"), the City filed a petition for relief in this Court, thereby commencing the largest chapter 9 case in history. During the pendency of this chapter 9 case, Kevyn D. Orr will continue to act as emergency manager with respect to the City (in such capacity, the "Emergency Manager") under authority granted him under Public Act 436 of 2012, the Local Financial Stability and Choice Act, MCL § 141.1541, et seq. ("PA 436").

2.       Incorporated in 1806, Detroit is the biggest city in Michigan. As of December 2012, the City had a population of less than 685,000 (down from a peak population of nearly 2 million in 1950).  Over the past several decades, the City has experienced significant economic challenges that have negatively impacted employment, business conditions and quality of life.  These challenges include, among other things, (a) a contraction of its historic manufacturing base, (b) a declining population, (c) high unemployment, (d) an erosion of the City's income and property tax bases, (e) a reduction in state revenue sharing and (f) a lack of adequate reinvestment in the City and its infrastructure.

3.       As of June 30, 2013 — the end of the City's 2013 fiscal year — the City's liabilities exceeded $18 billion (including, among other things, general obligation and special revenue bonds, unfunded actuarially accrued pension and other postemployment benefit liabilities, pension obligation certificate liabilities

and related derivative liabilities). Excluding the proceeds of debt issuances, the City has incurred large and unsustainable operating deficits for each of the past six years. As of June 30, 2013, the City's accumulated unrestricted general fund deficit was approximately $237.0 million. Excluding the impact of a recent debt issuance, this represents an increase of approximately $47.4 million over fiscal year 2012.

4. On February 19, 2013, a review team appointed by Rick Snyder, Governor of the State of Michigan (the "Governor"), pursuant to Public Act 72 of 1990, the Local Government Fiscal Responsibility Act, MCL § 141.1201, et seq. ("PA 72"), issued its report with respect to the City and its finances (the "Review Team Report"). The Review Team Report concluded that a local government financial emergency exists within the City.

5. On March 14, 2013, in response to the Review Team Report and the declining financial condition of the City and at the request of the Governor, the Local Emergency Financial Assistance Loan Board of the State of Michigan appointed Mr. Orr as emergency financial manager with respect to the City under PA 72, effective as of March 25, 2013.

6. On March 28, 2013, upon the effectiveness of PA 436, Mr. Orr became, and continues to act as, Emergency Manager with respect to the City under PA 436. Pursuant to PA 436, the Emergency Manager acts "for and in the

place and stead of the governing body and the office of chief administrative officer" of the City. MCL § 141.1549. In addition, the Emergency Manager acts exclusively on behalf of the City with respect to the filing of a case under chapter 9 of the Bankruptcy Code upon receiving authorization from the Governor. MCL § 141.1558.

7. On the Petition Date, the Governor issued his written decision (the "Authorization") approving the Emergency Manager's recommendation that the City be authorized to proceed under chapter 9 of the Bankruptcy Code. Thereafter, the Emergency Manager issued an order approving the filing of the City's chapter 9 case consistent with the Authorization (the "Approval Order"). True and correct copies of the Approval Order and the Authorization are attached as Exhibit A to the Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code (Docket No. 10), filed on the Petition Date. Promptly following the Emergency Manager's issuance of the Approval Order, the City commenced this chapter 9 case.

8. Additional details regarding the City and the events leading to the commencement of this chapter 9 case are set forth in the Declaration of Kevyn D. Orr in Support of City of Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code (Docket No. 11), filed on the Petition Date.

## Jurisdiction

9.      The Court has jurisdiction over this matter pursuant to

28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2).  Venue for this matter is proper in this district pursuant to 28 U.S.C.

§§ 1408 and 1409.

## Proceedings to Appeal City Property Tax Assessments

10.     The City's Assessments Division annually assesses the value of

residential, commercial, personal and industrial property for the purpose of levying

property taxes.  Affidavit of Edward V. Keelean in Support of City of Detroit,

Michigan's Motion, Pursuant to Section 362(d)(1) of the Bankruptcy Code, for

Entry of an Order Lifting the Automatic Stay to the Extent Necessary to Permit

Appeals of City Property Tax Assessments to Proceed in the Ordinary Course

(the "Keelean Affidavit"), at ¶ 4.  After receiving a property tax bill or notification

from the City of a change in assessment value of taxed property, taxpayers who

wish to appeal an assessment ordinarily may seek redress before certain City and

state Tribunals, as defined below, that, among other functions, decide such appeals.

Through this mechanism for resolving issues of property valuation for City tax

purposes (the "Assessment Appeal Process"),[2] taxpayers are able to appeal City

---

[2]      For purposes of this Motion and the relief requested herein, the Assessment
        Appeal Process includes appeals of decisions of the Tribunals, as defined
        below, that may be brought before the state courts of Michigan.  In addition,

property tax assessments and obtain a final determination of how much they owe in property taxes without having to initiate such appeals in the state courts of general jurisdiction or elsewhere.

11.     For an individual taxpayer seeking to appeal a property tax assessment, the Assessment Appeal Process usually begins with an appeal to the City Board of Assessors, a body that derives its authority from the City's Home Rule Charter.  See DETROIT HOME RULE CHARTER § 6-304; Keelean Affidavit, at ¶ 5.  Taxpayers may appeal determinations of the Board of Assessors to another City tribunal, the Board of Review, a body that convenes in March, July and December of each year.  See MCL §§ 211.28-211.33; Keelean Affidavit, at ¶ 5. In addition to these local adjudicative bodies, at the state level, the Michigan Tax Tribunal hears appeals of Board of Review decisions and also has jurisdiction to decide, in the first instance, certain property tax assessment appeals brought by owners of commercial or industrial property.  See MCL § 205.731; Keelean Affidavit, at ¶ 5.  The State Tax Commission also is empowered to decide, among other things, appeals relating to properties that have been incorrectly reported on,

the term "Assessment Appeal Process," as used in this Motion, refers only to property tax appeals brought against the City, and not to claims brought against any officer or inhabitant of the City.  Thus, this Motion does not seek to modify, in any respect, this Court's Order Pursuant to Section 105(a) of the Bankruptcy Code Extending the Chapter 9 Stay to Certain (a) State Entities, (b) Non-Officer Employees and (c) Agents and Representatives of the Debtor (Docket No. 166), entered on July 25, 2013.

or omitted from, the tax rolls for previous tax years. See MCL § 211.154; Keelean Affidavit, at ¶ 5. Together, these decision-making bodies (collectively, the "Tribunals") comprise a comprehensive system for the appeal and adjudication of City property tax assessments. Annually, the Tribunals decide approximately 15,000 property tax appeals brought by City taxpayers.[3] Keelean Affidavit, at ¶ 5.

## Relief Requested

12. Pursuant to the "automatic stay" imposed by section 362 of the Bankruptcy Code upon commencement of the City's chapter 9 case (the "Stay"), any "judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case" is stayed, as are actions seeking to "recover a claim against [the City] that arose before the commencement of the case."[4] 11 U.S.C. § 362(a)(1). This broad scope

---

[3]      Local Rule 4001-1(b) provides that, "if applicable," motions for relief from the automatic stay "shall identify the property, state the names and purported interests of all parties that are known or discoverable upon a reasonable investigation to claim an interest in the property, state the amount of the outstanding indebtedness, and state the fair market value of the property." In addition, this Local Rule states that such motions shall have, as attachments, copies of "any relevant loan agreements, security agreements, documents establishing perfection and prior court orders." The City requests a waiver of this requirement given the breadth of the relief sought and because it would be impracticable or, particularly with regard to tax claims not yet filed, impossible for the City to provide the information and documents described therein.

[4]      Section 922(a) of the Bankruptcy Code extends the Stay to (a) "the commencement or continuation … of a judicial, administrative, or other

stays property tax assessment appeals brought by taxpayers.  To enable City

residents and businesses to appeal City property tax assessments as usual, the City

hereby seeks an order, pursuant to section 362(d)(1) of the Bankruptcy Code,

lifting the Stay to the extent necessary to permit the Assessment Appeal Process to

proceed in the ordinary course.[5]

---

action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor;" and (b) "the enforcement of a lien on or arising out of taxes or assessments owed to the debtor."  11 U.S.C. § 922(a).  The City believes that section 922(a) of the Bankruptcy Code is not directly relevant to the relief requested in this Motion and, as set forth at note 2 above, does not seek to modify the stay imposed thereby.

[5]  To clarify, by this Motion, the City is not requesting permission from the Court to pay tax refunds.  If the City determines that any valid refunds should be paid, the City already is empowered to do so pursuant to section 904 of the Bankruptcy Code.  Section 904 provides as follows:

> Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with —
>
> > (1) any of the political or governmental powers of the debtor;
> >
> > (2) any of the property or revenues of the debtor; or
> >
> > (3) the debtor's use or enjoyment of any income-producing property.

11 U.S.C. § 904.  "[Section] 904 means that the City can expend its property and revenues during the chapter 9 case as it wishes.  It can pay any debt in full without permission from [the] court."  In re City of Stockton, Cal., 486 B.R. 194, 199 (Bankr. E.D. Cal. 2013); see also In re Suffolk Reg'l

# Basis for Relief

## *Governing Standard*

13.     Section 362(d)(1) of the Bankruptcy Code provides that a court may grant relief from the automatic stay "for cause."  11 U.S.C. § 362(d)(1); Onkyo Europe Elec. GMBH v. Global Technovations Inc. (In re Global Technovations Inc.), 694 F.3d 705, 711 (6th Cir. 2012) ("A bankruptcy court can lift the stay for cause, after notice and a hearing, if a party requests.").  The statute does not define what constitutes sufficient cause; however, courts within the Sixth Circuit, including this Court, have recognized certain factors that inform the application of this provision.  The Sixth Circuit Court of Appeals, in a case involving a creditor's request to lift the automatic stay to enable the creditor to file a complaint in a non-bankruptcy court, has held that a bankruptcy court should "consider[] the following factors in deciding whether to lift a stay" pursuant to section 362(d)(1) of the Bankruptcy Code:  "(1) judicial economy; (2) trial readiness; (3) the resolution of preliminary bankruptcy issues; (4) the creditor's

---

Off-Track Betting Corp., 462 B.R. 397, 421 n.3 (Bankr. E.D.N.Y. 2011) (citing section 904 of the Bankruptcy Code for the proposition that "[c]hapter 9 does not prohibit a debtor from paying a pre-petition debt post-petition").  In addition, while the City requests an order lifting the Stay to the extent necessary to allow the Assessment Appeal Process to proceed, this Motion should not be construed as seeking modification of the Stay to permit collection or other activities to recover any alleged refund, overpayment or other claim against the City.

chance of success on the merits; and (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors." Garzoni v. K-Mart Corp. (In re Garzoni), 35 Fed. App'x 179, 181 (6th Cir. 2002); accord In re Bunting, No. 12-10472, 2013 WL 153309, at *17 (E.D. Mich. Jan. 15, 2013).

14.    In addition to the Garzoni factors, courts within the Sixth Circuit have identified other principles to guide courts in determining whether cause exists to lift the automatic stay.  "The decision whether or not to lift the automatic stay resides within the sound discretion of the bankruptcy court." Garzoni, 35 Fed. App'x at 181.  Because no statutory definition for "cause" exists, "courts must determine whether discretionary relief is appropriate," for purposes of section 362(d) of the Bankruptcy Code, "on a case-by-case basis."  Trident Assocs. Ltd. P'ship v. Metro. Life Ins. Co. (In re Trident Assocs. Ltd. P'ship), 52 F.3d 127, 131 (6th Cir. 1995); In re Moralez, 128 B.R. 526, 527 (Bankr. E.D. Mich. 1991) (same).

15.    With regard to section 362(d)(1) of the Bankruptcy Code, "the term 'cause' is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations."  In re Combs, 435 B.R. 467, 470 (Bankr. E.D. Mich. 2010).  Consequently, "[i]n determining whether cause exists, the bankruptcy court should base its decision on the

hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code." Id.; Moralez, 128 B.R. at 527 ("In deciding whether to lift the stay, the Bankruptcy Court should balance the harm to the parties."). This Court has held that, in determining whether sufficient cause exists to lift the automatic stay, a bankruptcy court should consider "the effect of lifting the stay on the administration of the bankruptcy estate," and whether the tribunal in which any un-stayed issues would be heard "has special expertise in dealing with the issues" to be decided. Moralez, 128 B.R. at 528. In making this determination, "[i]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." In re Dow Corning Corp., No. 95-20512, 1995 WL 495978, at *4 (Bankr. E.D. Mich. Aug. 9, 1995) (quoting 2 COLLIER ON BANKRUPTCY ¶ 362.07[4] (Lawrence P. King ed., 15th ed. rev.)).

***Cause Exists to Lift the Stay to Allow the Assessment
Appeal Process to Proceed in the Ordinary Course***

16.     The City submits that, pursuant to section 362(d)(1) of the Bankruptcy Code and the factors and principles outlined above, the equities weigh in favor of finding that cause exists to lift the Stay to permit the Assessment Appeal Process to proceed in the ordinary course.

17.     A central objective of this chapter 9 case is to prevent the discontinuation of — and, ultimately, to enhance — basic services upon which City residents rely.  <u>See</u> Declaration of Kevyn D. Orr in Support of City of Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code, at ¶ 3.  Allowing the Assessment Appeal Process to proceed in the ordinary course would ensure continued access by City residents to a critical service that residents reasonably expect the City, as a taxing authority, to provide — the ability to contest property tax assessments that taxpayers believe are in error.  Through the Assessment Appeal Process, City residents are able to challenge assessments before Tribunals that possess special expertise with regard to the local rules and processes relating to property tax assessments by the City.

18.     Those <u>Garzoni</u> factors that apply in this case weigh in favor of granting the relief requested by the City.  Granting relief from the Stay to enable City residents to appeal property tax assessments in the ordinary course would relieve this Court of the task of adjudicating possibly hundreds of discrete motions for relief from the Stay that otherwise could be filed in this Court by individual City taxpayers.  <u>See</u> Keelean Affidavit, at ¶ 6.  City taxpayers bring approximately 15,000 property tax appeals before the Tribunals each year.  <u>Id.</u> at ¶ 5.  Since the Petition Date, the City already has received several inquiries from individual City taxpayers regarding orders from this Court to allow their tax appeals to continue

and has entered into three stipulated agreements (subsequently approved by orders

of the Court) with parties who sought to file property tax appeals in advance of a

July 31, 2013 deadline for the filing of certain types of tax appeals.  See Mich.

Prop. Tax Relief, LLC Stipulation & Order, In re City of Detroit, Mich.,

No. 13-53846 (Bankr. E.D. Mich. July 30, 2013) (Docket Nos. 201, 216); Segatti

Stipulation & Order, In re City of Detroit, Mich., No. 13-53846 (Bankr. E.D. Mich.

July 31, 2013) (Docket Nos. 210, 224); P.P.T.A. Inc. Stipulation & Order, In re

City of Detroit, Mich., No. 13-53846 (Bankr. E.D. Mich. July 31, 2013) (Docket

Nos. 211, 215); Keelean Affidavit, at ¶ 6.  Thus, the Garzoni factor pertaining to

judicial economy weighs in favor of the requested relief from the Stay in order to

enable this Court to streamline the City's chapter 9 case and expedite the resolution

of non-bankruptcy issues in the Tribunals, which regularly handle the volume of

appeals at issue in the Assessment Appeal Process.

19.     It would unnecessarily burden both the resources of this Court

and the already beleaguered residents of the City to require every taxpayer who

wishes to dispute a local property tax assessment to move this Court for relief from

the Stay before initiating the Assessment Appeal Process.  Because the tax billing

process moves faster than the Assessment Appeal Process, City residents generally

must pay tax bills based upon property valuation assessments before such

assessments can be challenged.  Keelean Affidavit, at ¶ 6.  Adding another step to

this process — the requirement to obtain relief from the automatic stay — would impose an unnecessary hardship on taxpayers and would burden this Court with numerous discrete motions to lift the Stay.  Id.

20.     The fifth Garzoni factor, "the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors," also weighs in favor of granting relief from the Stay.  Viewed in the context of the City's chapter 9 case, this factor asks, essentially, whether granting the relief requested would benefit, or harm, the City and its creditors.  As noted above, each year, the Tribunals decide approximately 15,000 property tax assessment appeals brought by City taxpayers.  Without relief from the Stay to enable these appeals to continue in the ordinary course, during the pendency of the City's chapter 9 case, an enormous backlog of property tax appeals will accrue that likely will overwhelm the system for adjudicating such appeals once the Stay is lifted, thus imposing unnecessary costs, complications and delays on the City and its residents and businesses.  Id. at ¶¶ 6-7.  Moreover, suspending the Assessment Appeal Process likely would exacerbate the City's already high property tax payment delinquency rate, estimated to be 47% for City real property in 2012,[6] as residents

---

[6]     Christine MacDonald & Mike Wilkinson, Half of Detroit Property Owners Don't Pay Taxes, THE DETROIT NEWS (Feb. 21, 2013), http://www.detroitnews.com/article/20130221/METRO01/302210375 (reporting the findings of a City-wide analysis of 2012 payment rates based

may withhold tax payments if they lose confidence in their ability to have assessment errors adjudicated within a reasonable period of time. Because allowing the Stay to suspend property tax appeals during the pendency of the City's chapter 9 case would harm the City and, by extension, its creditors, this factor militates in favor of permitting the Assessment Appeal Process to continue in the ordinary course.[7]

21. The City Law Department estimates that, should the Court allow the Assessment Appeals Process to continue in the ordinary course, its costs for defending property tax appeals would total approximately $300,000 annually. Id. at ¶ 7. While this is not an insignificant expense, the City believes that it will incur far greater total expenses related to the Assessment Appeals Process if it is forced to deal with a flood of appeals at the conclusion of its chapter 9 case.

---

on 2011 real property tax assessments, including both residential and commercial property).

[7] The remaining three Garzoni factors — "trial readiness;" the "resolution of preliminary bankruptcy issues;" and "the creditor's chance of success on the merits" — arguably do not apply to the circumstances of this case. Even if they did apply, however, the factor of "trial readiness" would weigh in favor of granting the relief requested by the City. Undoubtedly, if a City taxpayer is prepared to appeal an assessment to one of the Tribunals, their issue likely is "trial ready." Additionally, while the relevance of the factor concerned with "resolution of preliminary bankruptcy issues" is uncertain in this context, the City notes that permitting a taxpayer to appeal a property tax assessment in the ordinary course via the Assessment Appeal Process is one way to liquidate a claim amount.

Keelean Affidavit, at ¶ 7. Each property tax appeal must be defended and adjudicated sooner or later. While delaying the Assessment Appeals Process might conserve City funds in the near term, any such "savings" would be chimeral, as the City, at the conclusion of this case, would bear the cost of defending and/or administering each delayed appeal in addition to the added expenses an overwhelmed and overburdened system would create. Id.

22.     In light of the foregoing, the City submits that sufficient "cause" exists to lift the Stay for the limited purpose of allowing the Assessment Appeal Process to proceed in the ordinary course.

## Notice

23.     Notice of this Motion has been given to the following (or their counsel if known): (a) the trustees, transfer agents and/or paying agents, as applicable, for the City's secured and unsecured bonds; (b) the City's largest unsecured creditors as identified on the list filed under Bankruptcy Rule 1007(d); (c) the unions representing certain of the City's employees and retirees; (d) the four associations of which the City is aware representing certain retirees of the City; (e) the City's pension trusts; (f) the insurers of the City's bonds; (g) the insurers of the certificates of participation issued with respect to the City's pension funds (the "COPs"); (h) certain significant holders of the COPs; (i) the counterparties under the swap contracts entered into in connection with the COPs (collectively,

the "Swaps"); (j) the insurers of the Swaps; and (k) counsel who have made inquiries regarding tax appeals.  In addition, a copy of the Motion was served on the Office of the United States Trustee.  The City submits that no other or further notice need be provided.

## Statement of Concurrence

24.     Local Rule 9014-1(g) provides that "in a bankruptcy case unless it is unduly burdensome, the motion shall affirmatively state that concurrence of opposing counsel in the relief sought has been requested on a specified date and that the concurrence was denied."  Local Rule 9014-1(g).  In view of the number of parties and potential parties involved in this case, it would be impracticable and, with regard to unknown parties, impossible for the City to affirmatively seek the concurrence of each opposing counsel interested in the relief sought herein. Accordingly, the City submits that imposing the requirements of Local Rule 9014-1(g) in this case would be "unduly burdensome" and requests that its requirements be waived.  Moreover, in light of the inquiries the City has received to date from parties seeking relief from the Stay to allow their tax appeals to continue, the City would anticipate that the affected taxpayers and their counsel would support the relief requested herein.

## Statement Regarding Evidentiary Nature of Hearing

25.     As described above, in accordance with Local Rule 9014-1(b), the City has filed the Keelean Affidavit (attached hereto as Exhibit 5) in support of the relief requested herein.  The Keelean Affidavit generally describes the Assessment Appeal Process and other background facts relevant thereto.  Although Mr. Keelean will be available to testify at any hearing on this Motion (should a party in interest wish to cross-examine him on the facts set forth in the Keelean Affidavit), the City is not requesting that such hearing be an evidentiary hearing.

## Bankruptcy Rule 4001(a)(3)

26.     Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay … is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3).  In order to effectuate the relief requested by this Motion, permit the Assessment Appeal Process to proceed in the ordinary course and avoid the accumulation of a backlog of property tax appeals, the City requests that the Court enter an order granting immediate relief from the Stay, as Bankruptcy Rule 4001(a)(3) permits.

## No Prior Request

27.     No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the City respectfully requests that this Court: (a) enter an order substantially in the form attached hereto as Exhibit 1 granting the relief sought herein; and (b) grant such other and further relief to the City as the Court may deem proper.

Dated: August 2, 2013                    Respectfully submitted,


  /s/ Heather Lennox
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
   STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 963-6420
Facsimile:  (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY

## SUMMARY OF ATTACHMENTS

The following documents are attached to this Motion, labeled in accordance with Local Rule 9014-1(b).

| | |
|---|---|
| Exhibit 1 | Proposed Form of Order |
| Exhibit 2 | Notice |
| Exhibit 3 | None  [Brief Not Required] |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | Affidavit of Edward V. Keelean in Support of City of Detroit, Michigan's Motion, Pursuant to Section 362(d)(1) of the Bankruptcy Code, for Entry of an Order Lifting the Automatic Stay to the Extent Necessary to Permit Appeals of City Property Tax Assessments to Proceed in the Ordinary Course |
| Exhibit 6 | None  [No Exhibits Filed Specific to This Motion] |

# **EXHIBIT 1**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-----------------------------------------------------x
:
In re                          : Chapter 9
:
CITY OF DETROIT, MICHIGAN,    : Case No. 13-53846
:
              Debtor.     : Hon. Steven W. Rhodes
:
:
-----------------------------------------------------x

## ORDER, PURSUANT TO SECTION 362(d)(1) OF THE BANKRUPTCY CODE, LIFTING THE AUTOMATIC STAY TO THE EXTENT NECESSARY TO PERMIT APPEALS OF CITY PROPERTY TAX ASSESSMENTS TO PROCEED IN THE ORDINARY COURSE

This matter coming before the Court on the Motion of Debtor,

Pursuant to Section 362(d)(1) of the Bankruptcy Code, for Entry of an Order

Lifting the Automatic Stay to the Extent Necessary to Permit Appeals of City

Property Tax Assessments to Proceed in the Ordinary Course, (the "Motion"),[1]

filed by the City of Detroit, Michigan (the "City"); the Court having reviewed the

Motion, the Keelean Affidavit and having considered the statements of counsel and

the evidence adduced with respect to the Motion at a hearing before the Court

(the "Hearing"); and the Court finding that: (a) the Court has jurisdiction over this

---

[1]     Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding

pursuant to 28 U.S.C. § 157(b); (c) notice of the Motion and the Hearing was

sufficient under the circumstances; and (d) and the Court having determined that

the legal and factual bases set forth in the Motion, the Keelean Affidavit and at the

Hearing establish sufficient "cause" for the relief granted herein within the

meaning of section 362(d) of the Bankruptcy Code;

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED.

2.    Relief from the Stay is granted to the extent necessary to permit

the Assessment Appeal Process to proceed in the ordinary course to determine the

appeals and liquidate claim amounts, if any.

3.    The Stay is lifted only to the extent necessary to allow the

Assessment Appeal Process to proceed in the ordinary course and is not modified

to permit collection or other activities to recover any refund, overpayment or other

claim against the City.

4.    This Order grants relief from the Stay only with regard to

property tax appeals brought against the City, grants no relief as to any claim

brought against an officer or inhabitant of the City and does not modify, in any

way, this Court's Order Pursuant to Section 105(a) of the Bankruptcy Code

Extending the Chapter 9 Stay to Certain (a) State Entities, (b) Non-Officer

Employees and (c) agents and Representatives of the Debtor (Docket No. 166), entered on July 25, 2013.

5.     This Order shall not be stayed pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3) but shall be effective immediately.

# EXHIBIT 2

## *[NOTICE]*

Form B20A(Official Form 20A)
12/1/10

**UNITED STATES BANKRUPTCY COURT**
**Eastern District of Michigan**

**In re:**

**CITY OF DETROIT, MICHIGAN,**

**Chapter: 9**

**Case No.: 13-53846**

**Debtor.**

**Judge:  Hon. Steven W. Rhodes**

Address:  2 Woodward Avenue, Suite 1126
    Detroit, Michigan  48226

Last four digits of Social Security or
Employer's Tax Identification (EIN) No(s).(if any):  38-6004606

**NOTICE OF MOTION OF DEBTOR, PURSUANT TO SECTION 362(d)(1)**
**OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER LIFTING**
**THE AUTOMATIC STAY TO THE EXTENT NECESSARY TO PERMIT APPEALS**
**OF CITY PROPERTY TAX ASSESSMENTS TO PROCEED IN THE ORDINARY COURSE**

The City of Detroit, Michigan ("Detroit" or the "City") has filed papers with the Court seeking entry of an order, pursuant to section 362(d)(1) of the Bankruptcy Code, lifting the automatic stay to the extent necessary to permit appeals of City property tax assessments to proceed in the ordinary course.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the relief sought in the motion, or if you want the court to consider your views on the motion, **on or by August 16, 2013**, you or your attorney must:

1.    File with the court a written response or an answer, explaining your position at:[1]

**United States Bankruptcy Court**
United States Bankruptcy Court
211 W. Fort Street, Suite 2100
Detroit, MI 48226

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

---

[1]  Any response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

CLI- 2128732v9

You must also mail a copy to:

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500

2.    If a response or answer is timely filed and served, the Court will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Dated:     August 2, 2013                    Respectfully submitted,


                                             /s/ Heather Lennox
                                             David G. Heiman (OH 0038271)
                                             Heather Lennox (OH 0059649)
                                             JONES DAY
                                             North Point
                                             901 Lakeside Avenue
                                             Cleveland, Ohio  44114
                                             Telephone:  (216) 586-3939
                                             Facsimile:  (216) 579-0212
                                             dgheiman@jonesday.com
                                             hlennox@jonesday.com

                                             Bruce Bennett (CA 105430)
                                             JONES DAY
                                             555 South Flower Street
                                             Fiftieth Floor
                                             Los Angeles, California 90071
                                             Telephone:  (213) 243-2382
                                             Facsimile:  (213) 243-2539
                                             bbennett@jonesday.com

                                             Jonathan S. Green (MI P33140)
                                             Stephen S. LaPlante (MI P48063)
                                             MILLER, CANFIELD, PADDOCK AND
                                                 STONE, P.L.C.
                                             150 West Jefferson
                                             Suite 2500
                                             Detroit, Michigan  48226
                                             Telephone:  (313) 963-6420
                                             Facsimile:  (313) 496-7500
                                             green@millercanfield.com
                                             laplante@millercanfield.com

                                             ATTORNEYS FOR THE CITY

# EXHIBIT 4

## *[CERTIFICATE OF SERVICE]*

## <u>CERTIFICATE OF SERVICE</u>

I, Heather Lennox, hereby certify that the foregoing Motion of Debtor, Pursuant to Section 362(d)(1) of the Bankruptcy Code, for Entry of an Order Lifting the Automatic Stay to the Extent Necessary to Permit Appeals of City Property Tax Assessments to Proceed in the Ordinary Course was filed and served via the Court's electronic case filing and noticing system on this 2nd day of August, 2013.

/s/ Heather Lennox

# EXHIBIT 5

## *[AFFIDAVIT OF EDWARD V. KEELEAN]*

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
-------------------------------------------------x
                                           :
In re                                      : Chapter 9
                                           :
CITY OF DETROIT, MICHIGAN,                 : Case No. 13-53846
                                           :
                      Debtor.              : Hon. Steven W. Rhodes
                                           :
                                           :
-------------------------------------------------x
```

**AFFIDAVIT OF EDWARD V. KEELEAN IN SUPPORT OF
CITY OF DETROIT, MICHIGAN'S MOTION, PURSUANT
TO SECTION 362(d)(1) OF THE BANKRUPTCY CODE, FOR
ENTRY OF AN ORDER LIFTING THE AUTOMATIC STAY TO THE
EXTENT NECESSARY TO PERMIT APPEALS OF CITY PROPERTY
<u>TAX ASSESSMENTS TO PROCEED IN THE ORDINARY COURSE</u>**

```
        STATE OF MICHIGAN       )
                                )   ss:
        COUNTY OF WAYNE         )
```

I, Edward V. Keelean, being duly sworn, on oath state:

1.      I am Deputy Corporation Counsel with the City of Detroit Law

Department, located at 2 Woodward Avenue, Suite 500, Detroit, Michigan 48226.

I submit this affidavit in support of the City of Detroit, Michigan's Motion,

Pursuant to Section 362(d)(1) of the Bankruptcy Code, for Entry of an Order

Lifting the Automatic Stay to the Extent Necessary to Permit Appeals of City

Property Tax Assessments to Proceed in the Ordinary Course (the "Motion").[1]

2.    Except as otherwise indicated, all statements in this Affidavit

are based on my personal knowledge, my review of relevant documents, my

discussions with other City personnel and/or my opinion based upon my

experience and knowledge of the City's operations and financial conditions.  If

called to testify, I could and would testify to each of the facts set forth herein based

on such personal knowledge, review of documents and/or opinion.

3.    In my position as Deputy Corporation Counsel with the City's

Law Department, my responsibilities generally include, among other duties,

(a) defending and prosecuting legal actions on behalf of the City; (b) representing

officers, appointees and employees of the City in actions relating to their official

duties; (c) providing legal opinions, on request, for City officers or departments;

(d) preparing and reviewing leases, deeds, contracts or other papers as the City's

officials or departments require; (e) drafting proposed City ordinances; and

(f) prosecuting cases involving delinquent City income and property taxes.

4.    The City's Assessments Division annually assesses the value of

residential, commercial, personal and industrial property for the purpose of levying

---

[1]    Capitalized terms not otherwise defined herein have the meanings given to
them in the Motion.

property taxes.  After receiving a property tax bill or notification from the City of a change in assessment value of taxed property, a taxpayer ordinarily may appeal the City's assessment to one or more City or state bodies that hear such appeals.

5.     For an individual taxpayer, the process for appealing a City property tax assessment usually begins with an appeal to the City Board of Assessors.  Decisions by the Board of Assessors may be appealed to another City tribunal, the Board of Review, a body that convenes in March, July and December of each year.  In addition to these local adjudicative bodies, at the state level, the Michigan Tax Tribunal hears appeals of Board of Review decisions and also has jurisdiction to decide, in the first instance, property tax assessment appeals brought by owners of commercial or industrial property.  The State Tax Commission also decides, among other things, appeals relating to properties that have been incorrectly reported on, or omitted from, the tax rolls for previous tax years. Annually, these Tribunals decide approximately 15,000 property tax appeals brought by City taxpayers.

6.     Since the commencement of the City's chapter 9 case, the City already has received several inquiries from taxpayers seeking relief from the Court to allow their tax appeals to continue.  If the automatic stay (the "Stay") is not lifted to permit the Assessment Appeal Process to continue in the ordinary course, it is possible that, during the pendency of the City's chapter 9 case, numerous

individual taxpayers will petition this Court for relief from the Stay to enable their tax appeals to proceed. Suspending the Assessment Appeal Process until the conclusion of the City's bankruptcy case also will create a massive backlog of property tax appeals that would overwhelm the Tribunals once the Stay is finally lifted. Because taxpayers generally must pay tax bills based on property valuation assessments before appeals of such assessments can be heard and decided, suspending the Assessment Appeal Process also will inflict hardship upon taxpayers who wish to contest assessments that they believe are erroneous.

7. It will be more expensive, time-consuming and complicated for the City to administer and defend a massive flood of property tax appeals at the conclusion of the City's chapter 9 case than it would be for the City to administer and defend such appeals in the ordinary course. The City Law Department's annual cost of defending property tax appeals totals approximately $300,000. Even taking into account any near-term "savings" that suspending the Assessment Appeal Process would create, in aggregate, the City will pay more to defend the same number of property tax appeals if it is forced to deal with an enormous backlog of appeals at the conclusion of the City's chapter 9 case.

8. Allowing the Stay to suspend the Assessment Appeal Process likely will negatively impact the City's already high delinquency rate for the payment of property taxes. The property tax delinquency rate could increase if the Assessment Appeal Process is suspended and taxpayers lose confidence in their ability to have property valuation assessment issues adjudicated within a reasonable period of time.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: _Aug. 1_, 2013     By: _____
                              Edward V. Keelean
                              Deputy Corporation Counsel, City of Detroit

Sworn to and subscribed before me, a notary public
for the State of Michigan, County of Wayne, this _1st_ day of _August_, 2013.

_____

ANN M. DANIELS
Notary Public, State of Michigan
County of Wayne
My Commission Expires Nov. 03, 2013
Acting in the County of ____

-5-