UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


IN RE:  CITY OF DETROIT,       .        Docket No. 13-53846
        MICHIGAN,              .
                               .        Detroit, Michigan
                               .        August 2, 2013
                  Debtor.      .        10:01 a.m.
.  .  .  .  .  .  .  .  .  .  .  .  .


HEARING RE. STATUS CONFERENCE
MOTION OF DEBTOR FOR ENTRY OF AN ORDER (I) AUTHORIZING THE
ASSUMPTION OF THE CERTAIN FORBEARANCE AND OPTIONAL
TERMINATION AGREEMENT PURSUANT TO SECTION 365(a) OF THE
BANKRUPTCY CODE, (II) APPROVING SUCH AGREEMENT PURSUANT TO
RULE 9019 AND (III) GRANTING RELATED RELIEF (DOCKET #17);
MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER (A) DIRECTING AND
APPROVING FORM OF NOTICE OF COMMENCEMENT OF CASE AND MANNER
OF SERVICE AND PUBLICATION OF NOTICE AND (B) ESTABLISHING A
DEADLINE FOR OBJECTIONS TO ELIGIBILITY AND A SCHEDULE FOR
THEIR CONSIDERATION (DOCKET #18); MOTION OF DEBTOR FOR
ENTRY OF AN ORDER APPOINTMENT KURTZMAN CARSON CONSULTANTS,
LLC, AS CLAIMS AND NOTICING AGENT PURSUANT TO 28 U.S.C.,
SECTION 156(c), SECTION 105(a) OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULE 2002 (DOCKET #19); AND MOTION OF DEBTOR,
PURSUANT TO SECTION 1102(a)(2) OF THE BANKRUPTCY CODE FOR
ENTRY OF AN ORDER DIRECTING THE APPOINTMENT OF A
COMMITTEE OF RETIRED EMPLOYEES
BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:        Jones Day
                       By:  DAVID HEIMAN
                            HEATHER LENNOX
                       North Point
                       901 Lakeside Avenue
                       Cleveland, OH  44114-1190
                       (216) 586-3939

                       Jones Day
                       By:  BRUCE BENNETT
                       555 South Flower Street
                       Fiftieth Floor
                       Los Angeles, CA  90071-2300
                       (213) 243-2382

APPEARANCES (continued):

```
                        Jones Day
                        By:  GREGORY M. SHUMAKER
                        51 Louisiana Avenue, N.W.
                        Washington, DC  20001-2113
                        (202) 879-3679

For Assured             Winston & Strawn, LLP
Guaranty Municipal      By:  LAWRENCE A. LAROSE
Corp.:                  200 Park Avenue
                        New York, NY  10166-4193
                        (212) 294-3286

For AFSCME:             Lowenstein Sandler, LLP
                        By:  SHARON L. LEVINE
                        65 Livingston Avenue
                        Roseland, NJ  07068
                        (973) 597-2374

For Police and          Clark Hill, PLC
Fire Retirement         By:  ROBERT GORDON
System and              151 South Old Woodward, Suite 200
General Retirement      Birmingham, MI  48009
System of the City      (248) 988-5882
of Detroit:

For the UAW:            Cohen, Weiss & Simon, LLP
                        By:  BABETTE CECCOTTI
                        330 West 42nd Street, 25th Floor
                        New York, NY  10036
                        (212) 356-0227

For National            Sidley Austin, LLP
Public Finance          By:  JEFFREY E. BJORK
Guarantee Corp.:        555 West 5th Street
                        Los Angeles, CA  90013
                        (213) 896-6037

For Public Safety       Erman, Teicher, Miller, Zucker &
Unions:                    Freedman, PC
                        By:  BARBARA PATEK
                        400 Galleria Officentre, Suite 444
                        Southfield, MI  48034
                        (248) 827-4100

For Retired             Strobl & Sharp, PC
Detroit Police          By:  LYNN M. BRIMER
Members                 300 East Long Lake Road, Suite 200
Association:            Bloomfield Hills, MI  48304
                        (248) 540-2300
```

APPEARANCES (continued):

```
For David Sole:        Jerome D. Goldberg, PLLC
                       By:  JEROME GOLDBERG
                       2921 East Jefferson, Suite 205
                       Detroit, MI  48207
                       (313) 393-6001

For Retired            Silverman & Morris, PLLC
Detroit Police and     By:  THOMAS R. MORRIS
Fire Fighters          30500 Northwestern Highway, Suite 200
Association and        Farmington Hills, MI  48334
Detroit Retired        (248) 539-1330
City Employees
Association:

For Syncora            Kirkland & Ellis, LLP
Guarantee and          By:  STEPHEN HACKNEY
Syncora Capital        300 North LaSalle
Assurance:             Chicago, IL  60654
                       (312) 862-2074

For Daniel             Office of the United States Trustee
McDermott:             By:  MARIA GIANNIRAKIS
                       201 Superior Avenue, Room 441
                       Cleveland, OH  44114
                       (216) 522-7800

For Michael            MICHAEL J. KARWOSKI
Karwoski:              In pro per
                       26015 Felicity Lndg.
                       Harrison Township, MI  48045
                       (313) 378-7642

For Dennis             DENNIS TAUBITZ
Taubitz:               In pro per

For Erste              Ballard Spahr, LLP
Europaische            By:  VINCENT J. MARRIOTT, III
Pfandbrief-und         1735 Market Street, 51st Floor
Kommunalkreditbank     Philadelphia, PA  19103-7599
Aktiengesellschaft     (215) 864-8236
in Luxemburg, S.A.:

For Financial          Weil, Gotshal & Manges, LLP
Guaranty Insurance     By:  ALFREDO PEREZ
Company:               700 Louisiana, Suite 1600
                       Houston, TX  77002
                       (713) 546-5040
```

APPEARANCES (continued):

For U.S. Bank:          McDermott, Will & Emery, LLP
                        By:  WILLIAM P. SMITH
                        227 West Monroe Street, Suite 4700
                        Chicago, IL  60606
                        (312) 372-2000


Court Recorder:         Jane Murphy
                        United States Bankruptcy Court
                        211 West Fort Street
                        21st Floor
                        Detroit, MI  48226-3211
                        (313) 234-0068


Transcribed By:         Lois Garrett
                        1290 West Barnes Road
                        Leslie, MI  49251
                        (517) 676-5092


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1          THE CLERK:  All rise.  Court is in session.  Please

2   be seated.  Case Number 13-53846, City of Detroit, Michigan.

3          THE COURT:  Good morning, everyone.

4          ATTORNEYS:  Good morning, your Honor (collectively).

5          THE COURT:  We are going to begin as we did the last

6   time with the admission of an attorney to the Bar of the

7   Court.  Who would like to be admitted?  Step forward, please.

8          MR. ROSSMAN:  Good morning, your Honor.  Jeff

9   Rossman.

10          THE COURT:  Mr. Rossman, are you prepared to take

11   the oath of admission to the Bar of the Court?

12          MR. ROSSMAN:  Yes, I am.

13          THE COURT:  Please raise your right hand --

14          MR. ROSSMAN:  Sorry.

15          THE COURT:  -- carefully.  Do you affirm that you

16   will conduct yourself as an attorney and counselor of this

17   Court with integrity and respect for the law, that you have

18   read and will abide by the civility principles approved by

19   the Court, and that you will support and defend the

20   Constitution and laws of the United States?

21          MR. ROSSMAN:  I do.

22          THE COURT:  Welcome, sir.

23          MR. ROSSMAN:  Thank you, your Honor.

24          THE COURT:  Before we begin our status conference

25   today, I need to remind everyone of the rules for the use of

cellular phones in the courthouse and the rules for those
listening to these proceedings through CourtCall. District
Court Local Rule 83.31(f) governs the use of cellular phones
and other communication devices. An attorney appearing in
connection with any judicial proceeding may bring a phone
into our federal court facility. However, the phone cannot
be used at all while in a courtroom. In other words,
texting, talking on the phone, recording, or taking pictures
of the proceedings is not permitted in the courtroom.
Attorneys may use cellphones in the approved attorney
conference room on the second floor of this building.

Now let me address the use of CourtCall to listen in
on these proceedings. Its use is restricted to attorneys and
their clients who are parties in this case. CourtCall is not
to be used or accessed by the media or the public. The law
prohibits the simultaneous public broadcast of court
proceedings. The Court expects that, as officers of the
court, attorneys will respect this restriction. The Court
understands that this is an important and valuable service,
but it can only continue to make this service available if
this restriction is observed. The audio recording of all
court hearings will be posted on the court's website very
shortly after the hearings are concluded and will in that way
be available to the media and the public without charge.

Okay. So now turning to our status conference, I'm

1  going to shuffle the order of the agenda just a little bit.

2  I've decided to do the review by me of the Court's limited

3  role in Chapter 9 cases first, and then we'll do the items --

4  the rest of the items on the status conference agenda pretty

5  much in the order stated, and then, of course, we will

6  consider the motions that are on the calendar for today.

7          It is important for the parties and the public to

8  understand the very limited role that a Bankruptcy Court and

9  a bankruptcy judge play in a municipal bankruptcy case under

10  Chapter 9 of the Bankruptcy Code.  Let me first try to

11  describe what that role is and then discuss what that role is

12  not.  Primarily, the Court's role in this case is to resolve

13  the legal issues that the parties raise as the city moves

14  through this Chapter 9 process.  In general, there are two

15  main challenges that we can readily expect the city to face

16  in this case.  The first is to establish that it is eligible

17  for Chapter 9 relief.  If it meets that challenge, then its

18  next challenge is to establish that its plan to adjust its

19  debts meets the requirements for confirmation under Chapter 9

20  of the Bankruptcy Code.

21          Beyond those two major issues, the parties may

22  present other issues to the Court during the case.  These may

23  involve whether to approve the city's assumption or rejection

24  of its contracts, including its union contracts; whether to

25  grant creditors relief from the stay against litigation that

1    the Court and the law have imposed; whether to approve of

2    certain settlements; whether to approve of certain kinds of

3    proposed borrowings; and, finally, what dates and deadlines

4    to set as we move the case to its conclusion, whatever that

5    conclusion might be.

6         In addition, the Court sees three other roles for

7    it.  The first is to facilitate, to the greatest extent

8    possible, the consensual resolution of disputes.  To that

9    end, I have proposed a process of mediation, which I will

10   discuss with counsel later.  The second is to apply

11   procedures of judicial management in this case that will meet

12   the requirement to -- of Rule 1 of the Federal Rules of Civil

13   Procedure for the just, speedy, and inexpensive determination

14   of this case.  The circumstances of this case make that

15   requirement imperative and one that the Court intends to

16   fulfill with the highest degree of commitment, but the Court,

17   of course, cannot do this alone.  In fulfilling this

18   commitment, the Court requests input from the attorneys as

19   well as their full cooperation and, indeed, their

20   partnership.  In a few minutes, the attorneys and I will

21   discuss what dates and deadlines should be set in this case

22   so that we can meet the requirement for the just, speedy, and

23   inexpensive determination of this case.

24         The third additional role for the Court is to

25   recognize and appreciate the enormous public interest in this

case and to facilitate, to the greatest extent possible,
public access to the Court's proceedings.  However, there are
certain restrictions that the Court must ask the public and
the media to accept.  Some of these restrictions are imposed
by law.  For example, as I said before, the law prohibits the
simultaneous broadcast of federal court proceedings.  Other
restrictions result from security concerns, and we request
your patience in our security screening process as this helps
to protect all of us.  Other restrictions will have to be
imposed just to allow the process to function properly.  For
example, when and if disputes are submitted to mediation,
that process must be both closed to the public and completely
confidential in order for it to have any chance of success.
Finally, there are simple practical limitations, so, for
example, we only have so much space available in this
courtroom and for overflow courtroom viewing.

Now let me address what the Court's role is not and
what the Court will not do.  In this Chapter 9 case, as in
all others, the city's elected and appointed officials and
officers remain in full control of the city and its
operations.  Whatever their responsibilities for running the
city before the case was filed, they still are.  As a result,
the Court has no role to play in managing or running the city
or any of the services it provides.  Any compliments,
complaints, suggestions, or requests regarding city services

1    should continue to be directed to the city.  There is nothing

2    the Court can do about any of those matters.  The Court does

3    not displace city government in any respect, and nothing in

4    Chapter 9 gives the Court any authority to hire, fire, or

5    supervise anyone in city government.  The city's officials

6    are not accountable to this Court for how they run the city.

7         There is a second way in which it is important to

8    understand the limited role of the Court in this case.

9    Chapter 9 of the Bankruptcy Code states that it is the city's

10   responsibility to propose and file a plan.  The Court's role

11   is only to determine whether the plan that the city proposes

12   meets the requirements of Chapter 9.  It is not the Court's

13   role to dictate to the city what its plan should state or

14   even to suggest anything about it.  That is entirely for the

15   city to decide after, of course, discussing and attempting to

16   negotiate the plan with its creditors.

17        Any questions about what the Court's role is or is

18   not?  Okay.  So let's now then move on to the next item on

19   our status conference agenda.  I'll ask the representatives

20   of the city to address the Court regarding the status of the

21   filing of the list of creditors under Section 924 and any

22   potential amendments.  Sir.

23        MR. HEIMAN:  Good morning, your Honor.  David Heiman

24   from Jones Day on behalf of the city.  I hope the microphone

25   is working properly after the attack on it, but what -- and

1    thank you for those comments.  They're very helpful, indeed,

2    especially about the plan process and understanding that you

3    have proposed a plan deadline -- a plan filing deadline,

4    which I will address in a few minutes.  As you have

5    suggested, I will take these one at a time.  I assume that

6    you will want to hear from others, to the extent they wish to

7    be heard.

8              THE COURT:  Yeah.  At this point I just need the

9    record to state the city's compliance with the filing of the

10   list of creditors and if you intend or foresee any amendments

11   to it.

12             MR. HEIMAN:  Well, we did, I'm happy to say, file

13   the list of creditors last night, so that's the easy part.  I

14   cannot speak really -- it's 3,500 pages, so I cannot speak to

15   whether there are amendments.  Actually, this list itself was

16   an amendment for changing of addresses and the like --

17             THE COURT:  Um-hmm.

18             MR. HEIMAN:  -- and so I hope it's complete, but we

19   may find during the course of the case that we will

20   supplement it, so I don't --

21             THE COURT:  Okay.  My only encouragement to you

22   would be that if you determine a need to amend that list, you

23   do so promptly.

24             MR. HEIMAN:  Thank you, your Honor.  We will do

25   that.

1    THE COURT:  So the next item is the disclosure by

2  the city of the status of its negotiations with creditors.

3    MR. HEIMAN:  Yes, your Honor.  That might take a few

4  more minutes than the last item.

5    THE COURT:  Um-hmm, yes.

6    MR. HEIMAN:  I'd first like to say we all know that

7  we are in a very serious situation here, so rather than drag

8  everybody through the blow-by-blow of how we got to our

9  proposal and so forth, I'd like to just refer the Court and

10  others to the Orr declaration that --

11    THE COURT:  Um-hmm.

12    MR. HEIMAN:  -- I think does that in great detail at

13  pages 52 to 73.  I would like to say that there was a

14  significant effort that went into preparing that, and that

15  was followed up by meetings, many meetings with creditors,

16  informational and issue-oriented meetings.  The proposal we

17  made, as your Honor knows, was 128 pages.  It was made public

18  on the city website for all to see, and from our standpoint

19  we feel we've done our best to basically lay open the

20  relevant aspects of the city's finances to everyone, most

21  particularly to our creditors.  In that presentation, we --

22    THE COURT:  I have to interrupt you.  I don't intend

23  this to be your opening statement on the issue of whether

24  your client has negotiated in good faith because that's an

25  eligibility issue.  What I really want to hear is what the

1  current status is and what negotiations, if any, have taken
2  place since the case was filed.
3          MR. HEIMAN:  Yes, your Honor.  We have had
4  discussions in the last week and have discussions even
5  scheduled today --
6          THE COURT:  Um-hmm.
7          MR. HEIMAN:  -- and next week, so discussions are
8  continuing.  However, in terms of the status of discussions,
9  it's clear that there are significant differences between the
10 city and its unsecured creditors distinguished from its
11 secured creditors.
12         THE COURT:  Um-hmm.
13         MR. HEIMAN:  Those differences are not surprising
14 based on the limited resources that the city has available,
15 so in our book -- and that's what I was getting to -- there
16 was a proposal made, so our proposal is out on the table.  I
17 don't mean this in terms of eligibility, and I certainly
18 don't want to characterize any creditor positions here.
19 That's not my objective.  What I'd like to say is of course
20 we are continuing to talk.  We will hopefully continue to
21 talk virtually every day as we get through this case or
22 attempt to get through this case, but there are significant
23 differences that we feel are going to be difficult to bridge.
24 We believe those differences, again, are based on our limited
25 resources to pay our creditors and their perspective on their

1  own positions and rights with respect to their claims, and
2  so --

3        THE COURT:  How would you -- how would you
4  characterize your client's willingness to continue to try,
5  however, to bridge those differences?

6        MR. HEIMAN:  I would say more than a willingness,
7  your Honor, there is a commitment not only by Kevyn Orr and
8  other people in the city but by his team of professionals to
9  make itself available and, in fact, pursue discussions, as I
10  say, every day of the week that we can with every
11  constituency.  And I would also like to add I don't want to
12  mislead anybody.  I believe that we've had constructive
13  discussions and -- civil and friendly, and yet when it comes
14  to the point of saying, "How do you view our proposal?" no
15  one likes it, and that's not surprising.  It requires
16  significant -- our proposal requires significant across-the-
17  board debt relief from our unsecured creditor body.  So that
18  is where we are, and if I may, I know this is another agenda
19  item, but we welcome the idea of mediation because there are
20  very serious issues here.  We have, as I say, limitations,
21  and, again, we would like to talk to creditors consistently,
22  constantly.  We have meetings scheduled even today and
23  several meetings scheduled next week, and we will continue to
24  schedule meetings, but the --

25        THE COURT:  All right.  Well, you know, I'll

1    certainly submit -- request your more specific comments

2    regarding mediation as well as those of others when we get to

3    that item on the agenda.

4              MR. HEIMAN:  Okay.  Thank you, your Honor.

5              THE COURT:  Let's turn our attention to the proposed

6    dates and deadlines item on the agenda, and I want to focus

7    first on the schedule for resolution of the issue of

8    eligibility.  Before we set dates and deadlines and the

9    extent of discovery, however, it would be helpful for me to

10   get whatever sense I can from the attorneys involved as to

11   what the eligibility issues will be, and so from the papers

12   that have been filed so far, I think we can safely assume

13   that there will be at least these two:  one, did the city

14   negotiate in good faith; and, two, did the governor properly

15   authorize the Chapter 9 filing in light of what is argued to

16   be the constitutional protection of pension rights.  Do you

17   or does anyone here see any other eligibility issues?

18             MR. HEIMAN:  I think, your Honor, first of all, let

19   me say that Mr. Bennett is going to address the motion that

20   requests the eligibility schedule as well as your proposed --

21             THE COURT:  Okay.

22             MR. HEIMAN:  -- deadlines, so he may have more to

23   say about this, but we believe that the statutory

24   requirements for filing are going to be at issue, and, of

25   course, we have our position on that.  And also we understand

1  the governor's authority issue, especially after the last

2  couple of weeks, so we are aware of that, but Mr. Bennett may

3  have more to say about that at the time we get to the motion.

4  Okay.

5         THE COURT:  Okay.  So let me ask any other counsel,

6  can any of you foresee any other eligibility issues?

7         MR. LAROSE:  Good morning, your Honor.  Lawrence

8  Larose representing Assured Municipal Finance Guaranty

9  Corporation, insurer of approximately $2.5 billion of various

10  series of the city's indebtedness.

11        Your Honor, with respect to authorization -- we have

12  made no decision as to objecting to eligibility, but with

13  respect to authorization, your Honor, I respectfully suggest

14  that it goes beyond the issue of pensions.

15        THE COURT:  In what sense, sir?

16        MR. LAROSE:  Compliance with the underlying Act in

17  connection with the authorization of the Chapter 9.

18        THE COURT:  Can you be more specific?

19        MR. LAROSE:  No.  As I said, your Honor, I'm not

20  prepared to make an objection today on that issue.  I just

21  need to preserve it for the record.

22        THE COURT:  Okay.

23        MR. LAROSE:  Thank you.

24        THE COURT:  Well, I don't want anyone to think that

25  they need to address me at the microphone to preserve

1  anything for the record.  You will be given an opportunity to

2  object.  That will be your deadline to state your eligibility

3  objections.

4          MR. LAROSE:  Thank you, your Honor.

5          THE COURT:  So we don't need that parade.

6          MS. LEVINE:  Your Honor, I rose before, so I

7  don't -- Sharon Levine, Lowenstein Sandler.  We really were

8  concerned that there might be a limitation on some of the

9  reservations.  We gave the Court a preview in the brief in

10  support of 105, and we don't need to burden the record today.

11          THE COURT:  Okay.  All right.  Mr. Gordon.

12          MR. GORDON:  Thank you, your Honor.  Robert Gordon

13  on behalf of the Detroit Retirement Systems.  At the risk of

14  not answering the question that you just asked, I just want

15  to make sure from a procedural standpoint whether we're going

16  to be able to go back to other questions that you've asked of

17  Mr. Heiman that we might want to respond to, such as the

18  status of negotiations.  I didn't know if you wanted to hear

19  from parties after you've gone through the list or whether we

20  can weigh in on those issues for the Court at this time.

21          THE COURT:  I don't really feel the need to have

22  everyone respond to that.  What I wanted from that was what I

23  got, which was the city is willing to negotiate.

24          MR. GORDON:  And I'm certainly not here to get into

25  a polemic about it, but I wanted to make sure the Court was

1  aware of the status in a little more detail at the right time

2  because obviously one of the things that the Court is

3  considering is mediation, and I would like to have the

4  opportunity to at least apprise the Court of why the

5  discussions are where they are at this point with parties and

6  why perhaps mediation may not be appropriate just yet, so --

7          THE COURT:  Okay.  Let's save that for --

8          MR. GORDON:  Okay.

9          THE COURT:  -- that agenda item then.

10         MR. GORDON:  Thank you, your Honor.

11         THE COURT:  And I will want to hear from you then

12  regarding that.

13         MR. GORDON:  Thank you, your Honor.

14         THE COURT:  Any other thoughts -- go ahead, sir --

15  on what issues may arise in the context of eligibility?

16         MR. BENNETT:  I'm Bruce Bennett from Jones Day, your

17  Honor, and I have responsibility for the eligibility side of

18  this today.

19         THE COURT:  Okay.

20         MR. BENNETT:  My reading of the situation in terms

21  of where the expected objections are is the same as yours

22  from the pleadings that have been filed.  We certainly expect

23  the objection relating to the constitutionality of the

24  statute, and we certainly expect the objection relating to

25  good faith.  I'm not aware of the objection Mr. Larose is

1  foreshadowing.  One of the reasons for an early deadline for

2  exclusivity objections, which will hopefully be -- I think we

3  expect them to be genuine substantive objections -- is that

4  it will help every subsequent step in the process if we have

5  a clear and complete statement of what the objections are as

6  rapidly as possible.

7         THE COURT:  Okay.

8         MR. BENNETT:  On the schedule in particular, the

9  schedule is fine with us.  I can report -- I want to report

10 two things.  There were really two objections to the whole

11 scheduling process that were actually filed.  One was did we

12 really need to receive e-mail service of objections or would

13 we just take them off ECF.

14        THE COURT:  Hold on that one.  We'll get to that

15 later.

16        MR. BENNETT:  Okay.

17        THE COURT:  Right now I just want to talk about

18 dates and deadlines.

19        MR. BENNETT:  Okay.  The only comment I'll talk

20 about dates and deadlines is that we -- in private

21 discussions, there is one party that has what I think are

22 genuine special circumstances affecting their ability to

23 comply with the August 19th and 23rd dates, and under the

24 assumption that these dates stay the way they are, we've

25 reached a separate accommodation that would work for the

1  debtor and for that party, and I guess I just wanted to make

2  clear that -- or ask, your Honor, that when you did set

3  deadlines, was it possible to make those kinds of informal

4  adjustments where two sides thought they were appropriate

5  without offending the overall schedule?

6        THE COURT:  Well, the answer is most likely yes so

7  long as it doesn't result in the delay of the hearing itself.

8        MR. BENNETT:  And this one doesn't, and I think

9  that's an appropriate guideline, and we will govern ourselves

10 by that.

11       THE COURT:  Okay.  Fair enough.  If those are the

12 two primary issues -- and I recognize that there may be

13 others that parties may assert in the meantime -- I have to

14 ask with all sincerity, because you all know this case better

15 than I do, what is the need for discovery, and what is the

16 scope of the discovery that is needed?  Now, let me, before

17 you all answer that question, give you my uninformed

18 analysis, admittedly uninformed analysis.

19       On the issue of whether the governor's authorization

20 was proper, it strikes me that that is entirely a legal

21 issue, and if anyone believes otherwise, I'd obviously be

22 interested in hearing that, but I think we can all agree that

23 the governor's authorization did not include a restriction on

24 the city's ability to seek an impairment of pension rights,

25 which is the fact that raises the issue.

1        Turning to the good faith negotiation issue, I have

2    a sense -- and I could be wrong -- that anyone who might

3    object on that ground has already firsthand knowledge of what

4    the negotiations were or weren't, so, again, I would ask from

5    a totally uninformed perspective what the need for discovery

6    is.  I ask this question because if there's not a need for

7    discovery, we're going to have to think about even advancing

8    eligibility from where I have tentatively suggested it.

9        MR. BENNETT:  Your Honor, since we would concur with

10   your assessment, I'll cede the podium to others for now.

11       THE COURT:  Okay.

12       MS. CECCOTTI:  Your Honor, I didn't mean to send Mr.

13   Bennett away prematurely, but I wasn't clear exactly when you

14   wanted us --

15       THE COURT:  Now.

16       MS. CECCOTTI:  -- to rise.

17       THE COURT:  Please.

18       MS. CECCOTTI:  Okay.  Well, speaking for the UAW, I

19   think what we have in the record certainly on the

20   bankruptcy -- from the city's filings we have some, you know,

21   documents that were filed in terms of their qualification

22   statement, in terms of a memorandum of law, various

23   declarations.  I don't know that -- certainly for the UAW I

24   don't think -- I wouldn't want the Court to think that we've

25   scratched the surface in trying to unpack those and determine

1   to what extent any discovery is needed, so I would caution

2   against perhaps assuming more than the parties or at least

3   certainly we have had an opportunity to do.  We expected to

4   discuss with the Court, as we're doing today, a schedule for

5   eligibility but not in the context of -- or not informed by

6   anything other than an initial look at the papers that have

7   been filed, so while it may be true that some or more of us

8   were present at certain meetings, looking at the totality of

9   what the city has filed, I think we would really need to take

10  a harder look at that before we could say with any certainty

11  that no discovery is needed really on any of the

12  qualifications.  So I realize that that is a rather general

13  statement, but I would not want the Court to be misled in

14  thinking that we are prepared certainly today with a, you

15  know, sort of fully indexed and annotated view of the papers

16  that the city has filed and a sort of plan of how to get

17  to -- from those papers to a position that we might take let

18  alone to a litigation schedule position.

19         MS. LEVINE:  Your Honor, for the record, Sharon

20  Levine, Lowenstein Sandler.  We would concur that the extent

21  of discovery that we would need has not yet fully availed

22  itself to us, but, at a minimum, to the extent that the city

23  intends to rely on declarations to offer evidence in support

24  of eligibility, we would want to take a close look at that

25  evidence and probably seek documents and depositions with

1 regard to those proposed witnesses.

2          In addition to that, one of the things that's
3 probably going to come to light as we move forward in this
4 process, your Honor, is there may be a definitional issue and
5 a dispute with regard to what exactly constitutes
6 negotiations because our view is that the meetings that have
7 taken place to date have been more presentations without an
8 opportunity for give and take.  And in addition to that, your
9 Honor, in reviewing the information that's in the data room,
10 there's information that we would need even to evaluate just
11 those presentations that's not yet in the data room, so if a
12 negotiation over this kind of an economic situation goes as
13 we've seen others go, the first step of the negotiation
14 process is the diligence, so, you know, we appreciate the
15 fact that the city has populated a data room.  There's always
16 stuff that has to get added to it and/or created.  We haven't
17 seen the soft model, if you will, of the debtor's business
18 plan.  And after that then there is the dispute that you have
19 to work through with regard to what the assumptions are that
20 underlie that business plan before you can get to whether or
21 not the asks and the gives are appropriate or not
22 appropriate, and we would respectfully submit that in
23 addition to just the litigation aspect of the trial on
24 eligibility, there may be a second silo of discovery that has
25 to do with legitimate diligence requests in connection with

1  facilitating better and more meaningful negotiations or

2  exchanges of information perhaps facilitated by the mediator

3  who may be helping us with process as well as substance in

4  order to get through this process constructively.  Thank you.

5       THE COURT:  Thank you.  That is a very helpful

6  comment to make.  Everyone in this room who has been in more

7  than one bankruptcy case knows that there's very little about

8  a debtor that's irrelevant to the bankruptcy case and very

9  few requests that creditors make for information that is

10  burdensome, and I am sure the city and its counsel understand

11  that and will act accordingly.

12       MR. BJORK:  Good morning, your Honor.  Jeff Bjork

13  from Sidley Austin on behalf of National Public Finance

14  Guarantee.  National insures about 2.5 billion of the city's

15  debt obligations.  I just want to echo the comments of

16  counsel.  We have been exchanging information requests with

17  the city.  We've been in major discussions with them about

18  information we need, some of which actually goes to issues

19  that may be pertinent to eligibility, some of which goes to

20  issues that are beyond the scope of eligibility.  While those

21  discussions are continuing, what we had talked with Mr.

22  Bennett about was potentially allowing us to participate in

23  the discovery with eligibility because we think on the

24  schedule it's tight.  We support the schedule.  We also think

25  it might be the most efficient way to get the information

1  that, from our perspective, will help us better understand

2  where this restructuring is going and, to your Honor's point

3  about appointing a mediator, I think better inform the

4  parties quicker on -- sooner in terms of where that mediation

5  may be going.  So just on that, what we had proposed, just

6  one change in the schedule would be that the pretrial brief

7  that you've set forth in terms of timing actually be the

8  substantive objection that would be tied to any evidence that

9  was intended to be presented at trial based upon the

10 discovery policies itself.

11         THE COURT:  I'm not sure I followed you.  What is

12 your request?

13         MR. BJORK:  My request, your Honor, would be that

14 the August 19th deadline --

15         THE COURT:  Yes.

16         MR. BJORK:  -- they have proposed that it be

17 objections tied to specific facts.  Our proposal is that we

18 could participate in the eligibility based -- eligibility

19 discovery based upon a reservation of rights to the extent we

20 think that there are issues with an objection to the extent

21 necessary based upon the facts to be determined through

22 discovery supplemented and filed as part of the pretrial

23 brief, so rather than -- so essentially, your Honor, what you

24 end up with is one objection tied to the record as opposed to

25 objection, discovery, and then a supplemental objection.

1          THE COURT:  That makes me nervous, uneasy, because
2     if I hear you right, what you're saying is you want to do
3     discovery first and then decide whether and to what extent to
4     object to eligibility?

5          MR. BJORK:  We want to make a fully informed
6     decision based upon the discovery that we determined and
7     received from the city as to whether there is any grounds to
8     object to eligibility, yes.

9          THE COURT:  That's -- sir.

10         MR. BENNETT:  We are uncomfortable as well.  I think
11    that there was a number of things said.  There's a lot of
12    information about the city that's already available, and we
13    log each and every request, and we respond to requests as we
14    can, and if there are disputes about that, we can deal with
15    it, but given that there's so much information available, it
16    kind of is hard for us to understand how it is that one would
17    not know the grounds on which they are objecting to
18    eligibility at this time.  We fully understand that facts
19    currently unknown could conceivably surface later, and we
20    would certainly not object if a fact unknown today found its
21    way into a subsequent brief, but we think the August 19th
22    deadline should require and call for an objection -- all
23    grounds stated and facts then known that support the
24    objection.  And that's the way to narrow disputes and to have
25    an economical piece of litigation going forward.  Short of

1   that, it could be a wide-ranging procedural disaster that
2   would be ridiculously expensive and we think should be
3   avoided.

4           THE COURT:  I agree, counsel.  There certainly are
5   circumstances in which the law permits amendments to
6   pleadings.  They are limited.  They apply here, but as a
7   general matter, the Court wants to set a firm deadline for
8   the filing of objections to eligibility.

9           MR. BENNETT:  Understood.  Thank you, your Honor.

10          THE COURT:  Mr. Gordon.

11          MR. GORDON:  Thank you, your Honor.  Again, Robert
12  Gordon on behalf of the Detroit Retirement Systems.  I will
13  focus just on the 109(c)(2) issue for a moment because Ms.
14  Levine already commented on the 109(c)(5) issue of good faith
15  and what have you.  As to the 109(c)(2) issue, I certainly,
16  in all candor, agree with the Court that it could appear that
17  it is strictly a legal issue.  To that end and consistent
18  with the comments I've just heard, it would seem to us -- and
19  this is something that is consistent with what we filed
20  yesterday afternoon -- that in addition to a deadline for the
21  filing of an eligibility objection, there ought to be a
22  deadline for the city to then file some kind of a response,
23  and then we could see if there is any kind of a discovery
24  issue that needs to be addressed.

25          THE COURT:  Um-hmm, um-hmm, yeah.

1          MR. GORDON:  So that's my suggestion --

2          THE COURT:  I saw that you submitted that, and that

3   was not in there, not by intent.  It just didn't occur to me

4   to put that in there, so I would like to hear from the city

5   regarding that question.  Thank you.

6          MR. GORDON:  Thank you, your Honor.

7          THE COURT:  So the question is should we have a

8   deadline for the city to file a written response or a series

9   of written responses to the eligibility objections that are

10  filed?

11         MR. BENNETT:  I certainly don't have a problem

12  filing any pleading that the Court thinks would be helpful to

13  it.

14         THE COURT:  Um-hmm.

15         MR. BENNETT:  I do think it's important to note --

16  and I hope people didn't miss it in the flurry of filings --

17  that we had filed a statement of qualifications and a fairly

18  extensive --

19         THE COURT:  Um-hmm.

20         MR. BENNETT:  -- brief on the subject of eligibility

21  already --

22         THE COURT:  Um-hmm.

23         MR. BENNETT:  -- so it's not as if our position is a

24  mystery.

25         THE COURT:  Um-hmm.  All right.  I want to give

1    serious consideration to this and see how it can be worked

2    into the schedule.  Okay.  But to refocus us here, the

3    question is what about discovery on the issue of eligibility?

4              MS. PATEK:  Your Honor, Barbara Patek appearing on

5    behalf of the public safety unions.  I would echo Ms.

6    Levine's comments with respect to the definitional question

7    on negotiation.  We concur with the deadline.  We think this

8    is an aggressive and tight scheduling order as it stands now.

9    We're prepared to abide by it subject to -- you know, for

10   good cause shown, and it sounds like the debtor has already

11   acknowledged and agreed to that with one other party, so with

12   that caveat --

13             THE COURT:  Um-hmm.

14             MS. PATEK:  -- and the issue of the city's response

15   being considered, we're prepared to go forward.

16             THE COURT:  Um-hmm.  Anyone else?  Okay.

17             MR. BENNETT:  On the subject of good faith, I agree

18   with your Honor that it doesn't take a great deal of

19   exploration to figure out whether the parties did or did not

20   act in good faith, and I would, frankly, think that

21   there's --

22             THE COURT:  Well, whether the city negotiated in

23   good faith.

24             MR. BENNETT:  Well, that's true; however, if your

25   Honor reads the cases, you'll find that the emphasis quickly

1    shifts to what both sides were doing because it takes --

2          THE COURT:  Fair enough, but the eligibility

3    requirement --

4          MR. BENNETT:  Okay.  And so --

5          THE COURT:  -- is the city.

6          MR. BENNETT:  -- just to lay out very briefly, Mr.

7    Heiman, I think quite properly -- I'm going to do the same

8    thing.  We're very reluctant to say what our negotiating

9    partners said to us.  We feel comfortable telling you

10   everything about what we said, and, frankly, much of what we

11   have said is public.  It's the other side that your Honor

12   does not know about and has to find out about on some basis

13   to make an assessment.

14         THE COURT:  Fair enough.

15         MR. BENNETT:  And I am submitting that, in fact, if

16   you had before you what the city proposed and what the

17   responses were and were there responses in all circumstances

18   in the negotiating period that we tried hard to make

19   productive, I think you would, frankly, have all you need, so

20   I do think that in the context of parties who are going to

21   object to good faith of the city in the negotiating process,

22   you need some form of an arrangement, I think, to benefit

23   your decision-making to find out exactly what that party said

24   in response to the city's very public proposal.

25         THE COURT:  Okay.

1          MR. BENNETT:  Thank you.

2          THE COURT:  Ms. Brimer.  One second, sir.  Mr.

3   Morris, I do want to hear from you, so stand by.

4          MR. MORRIS:  All right.  I was told I need to get

5   the --

6          MS. BRIMER:  Good morning, your Honor.  Lynn M.

7   Brimer appearing on the Retired Detroit Police Members

8   Association.  It is an association of approximately 240

9   retired Detroit Police Department personnel who either are

10  currently or will in the future collect pursuant to the

11  police and fire-fighters pension.

12         I raise one issue with respect to the Court's

13  deadlines and the comments this morning, and that is up later

14  this morning, your Honor, is an issue with respect to whether

15  or not a committee will be appointed to represent the

16  retirees.  And there are many issues that we have with

17  respect to that motion, but with respect to the Court's

18  deadlines, the concern I raise right now and just want to be

19  sure the Court is cognizant of this is that if there is -- if

20  the Court does determine that --

21         THE COURT:  Um-hmm.

22         MS. BRIMER:  -- it is appropriate and within the

23  authority of the Code for the trustee to appoint a committee,

24  these deadlines may be extremely aggressive because it's very

25  possible that a committee would not be constituted, and

1  counsel and what other -- whatever other professionals would

2  be required would not even be in place by this deadline, so I

3  just --

4         THE COURT:  Um-hmm.

5         MS. BRIMER:  -- would like to ensure that the Court

6  keep that in mind when evaluating the deadlines.

7         THE COURT:  Right.  I do want to be very sensitive

8  to that issue and build into our process an adequate

9  opportunity for everyone to be heard, of course.

10        MS. BRIMER:  Thank you, your Honor.

11        THE COURT:  Thank you.  Sir.  And then I'll hear Mr.

12  Morris next.

13        MR. GOLDBERG:  Okay.  I just have a brief question,

14  your Honor.  My name is Jerome Goldberg, and I'm on --

15        THE COURT:  Mr. Morris, there's a seat for you here.

16  Go ahead, sir.

17        MR. GOLDBERG:  And I represent party of interest

18  David Sole.  I just had a brief question, and I excuse the

19  Court for my own ignorance in the procedures in this matter,

20  but the deadline to serve written discovery requests for

21  August 23rd, just for my own clarification, that specifically

22  is discovery requests relative to the eligibility question;

23  is that correct?

24        THE COURT:  Yes.  All of this discovery is the

25  discovery needed for the eligibility issues that are raised

1  in the objections.

2            MR. GOLDBERG:  Thank you, your Honor.

3            THE COURT:  Mr. Morris.

4            MR. MORRIS:  Your Honor, Ms. Brimer made my point.

5            THE COURT:  Oh, okay.  Then you're all set.  Would

6  anyone else like to be heard on this issue of the necessary

7  discovery?  All right.  I will take your comments under

8  advisement and issue an appropriate scheduling order.  There

9  are other deadlines.  We've been talking about deadlines

10 regarding eligibility.  I suggested that we might want to

11 have a deadline for the city to file motions to assume or

12 reject executory contracts, including collective bargaining

13 agreements.  Sir.

14           MR. HEIMAN:  Yes.  Thank you, your Honor.  I think I

15 can address that pretty quickly.  Most of our collective

16 bargaining agreements have expired, the large majority.  We

17 have six or seven still remaining in connection with the work

18 at Detroit Water and Sewer District.  It is our view at this

19 point that we will not seek -- we will not need to seek court

20 relief on those --

21           THE COURT:  Um-hmm.

22           MR. HEIMAN:  -- and we will advise you at our

23 earliest opportunity if that should change.

24           THE COURT:  Okay.  What about other kinds of

25 executory contracts, leases, et cetera, et cetera?

1          MR. HEIMAN:  We have nothing on tap today for that

2     in terms of deadlines.  As your Honor may know, we have a

3     list of noncore assets that we're dealing with.  They include

4     water and sewer and the Coleman Young Airport, et cetera, et

5     cetera, the Institute of Art.  There is a list in our book

6     and our -- and a description about them, and we hope on some

7     of them, at least, to be able to bring something to your

8     Honor that will be beneficial to the estate.  We are not

9     anywhere near prepared to do that today, so I don't think we

10    have anything today specifically in that area.

11          There is one that comes to my mind.  There is one

12    issue right now, and I'm reluctant to raise it slightly, but

13    I feel I have to so that there's no question of the city

14    somehow waiving a right to object, but, as your Honor may

15    know, the attorney general has filed a notice of appearance

16    which was preceded and followed by public statements.

17    Without going into a lot of detail, that confuses us a bit

18    about the role the attorney general expects to take in this

19    case.  We want to try to unravel that and not come to your

20    Honor unless we have to, but that is something that we have

21    to look at, and, you know, we won't need any special

22    hearings.  I know that you have a schedule on omnibus and so

23    forth that, by the way, is perfectly fine with us, so with

24    that -- and, you know, we're talking about some post-petition

25    financing that we'd probably like to pursue, and that

1   requires --

2          THE COURT:  Um-hmm.

3          MR. HEIMAN:  -- a long explanation as well, and we

4   would hope that sometime in the near term we will know when

5   we would like to --

6          THE COURT:  Um-hmm.

7          MR. HEIMAN:  -- seek your Honor's views of that,

8   but, again, we're not ready today to suggest any deadlines.

9          THE COURT:  All right.  In other kinds of

10  reorganization cases, as you well know, courts do commonly

11  set a deadline for the assumption or rejection of executory

12  contracts so that the plan confirmation process doesn't get

13  delayed when such issues are raised just before confirmation,

14  so I guess I'm willing to grant you some latitude here, but I

15  don't want to get to plan confirmation and then run into

16  issues of what contracts are going to be assumed or rejected.

17         MR. HEIMAN:  Your Honor, you raise a very good

18  point, and we have been looking at executory contracts.

19  Without belaboring the issue, it's a huge job in this city to

20  look at --

21         THE COURT:  Right.

22         MR. HEIMAN:  -- those, and at this point we have

23  nothing specific that we know of that we need to bring to

24  you, but there are -- in what I call the asset columns there

25  are some leases and arrangements and whatever that at some

1    point -- I am not talking about, you know, like next year --

2    at some point hopefully this year we will bring to your

3    attention if --

4            THE COURT:  All right.

5            MR. HEIMAN:  -- we think we need to.

6            THE COURT:  Well, I think you understand my concern

7    here.

8            MR. HEIMAN:  Yeah.  And I appreciate it, and we will

9    make a special effort to accelerate our evaluation of those

10   executory contracts.  Shall I go on with your agenda, your

11   Honor?

12           THE COURT:  Well, let me just ask the question of

13   really everyone in the room point blank.  I have suggested

14   these discovery deadlines, the date for a final pretrial

15   conference, and a date to begin the trial on eligibility.

16   Assuming I agree that discovery is required, and I'm inclined

17   to at this point, based on the record we have so far, does

18   anyone object to any of those dates on lines 8, 9, 10, and 11

19   of my Notice of Proposed Dates and Deadlines?

20           MR. HEIMAN:  Sorry.

21           MS. CECCOTTI:  Your Honor, once again Babette

22   Ceccotti, Cohen, Weiss & Simon, LLP, for the UAW.  I'm not so

23   sure I'm rising specifically to object to those particular

24   items, but I guess with the open-endedness of -- despite the

25   efforts here today to try to outline for your Honor some

1  discovery issues -- and I should also point out that from our

2  perspective, some of the discovery may extend, you know,

3  beyond the city, so I'm wondering whether it would be helpful

4  if the Court were to perhaps think about the discovery

5  schedule and then perhaps build on that because there may not

6  be enough time.  And, again, I don't think anyone here is

7  looking to delay any of this unduly, but there's a lot here,

8  and one of the things that I'm sure is not in anyone's

9  interest is to have some of these issues rushed.  One doesn't

10  know what one is going to find in discovery, so I --

11            THE COURT:  Well, let me just ask you.  Are any of

12  the other discovery deadlines that I proposed here, in your

13  view, too aggressive?

14            MS. CECCOTTI:  Yes.  I think they might be too

15  aggressive.  They might be too aggressive.

16            THE COURT:  Which one or all of them?

17            MS. CECCOTTI:  Well, again, if we're looking at the

18  whole schedule as a package, the whole schedule is fairly

19  aggressive in and of itself.  In addition -- and we've

20  already had the reference made to the retiree motion -- we

21  don't know exactly how your Honor is going to view that

22  motion in the context of the schedule, and there have been

23  some suggestions that it would be worth considering this

24  schedule in the context of where your Honor ends up on the

25  retiree motion, so I wonder if it might be possible to

1   perhaps revisit the totality of the schedule, at least the

2   block of time, after your Honor has had a chance to hear the

3   parties on the retiree motion.  It might actually inform the

4   Court rather than to try to set something now and then try to

5   shoehorn the retiree motion -- the retiree committee process,

6   assuming your Honor authorizes the motion, into a schedule

7   that your Honor is saying now it's just a scheduling

8   suggestion.

9          THE COURT:  All right.  Does anyone else want to be

10   heard on the specific dates and deadlines that I have set

11   forth here?

12          MS. PATEK:  Your Honor, I apologize.  Not specific

13   dates and deadlines, but I want -- if I may go back for a

14   moment to the 365 issue just --

15          THE COURT:  Okay.

16          MS. PATEK:  -- for the matter of preserving

17   something.  I represent the public safety unions.  Barbara

18   Patek.  One of those, the Detroit Police Officers

19   Association, to my knowledge and understanding -- and I'm not

20   up to the minute because I'm not their labor lawyer -- does

21   have a contract in place, at least as of a couple of days

22   ago, so I don't know if that perhaps with everything they

23   have on their plate was simply off the city's radar screen,

24   but we were looking -- I don't have a particular deadline to

25   propose, and I just want that noted for the record.

1          THE COURT:  Mr. Heiman.

2          MR. HEIMAN:  Your Honor, that is inconsistent with

3    our understanding.  There may be a CET, what's -- you know,

4    was something unilaterally opposed by the city, but we don't

5    view that as an executory contract, so we don't think that

6    that is correct that there is a CBA on police, fire, or

7    otherwise that is extant right now.

8          THE COURT:  I'm hearing buzzing in the loudspeaker

9    system, which most commonly means someone has their telephone

10   on.  Please check your telephones and be sure they're off for

11   me.

12         MR. HEIMAN:  I think I might have changed -- do you

13   still hear it?

14         THE COURT:  Oh, you moved the microphone, and maybe

15   that solved the problem.  Well, okay.  If that's what it

16   took, great.

17         MR. HEIMAN:  I have -- I am now on 3(b) of your

18   agenda.  Is that correct, your Honor, the plan filing date?

19         THE COURT:  Well, before we get to that, I want to

20   ask whether there are any other potential motions or

21   adversary proceedings that you or anyone else foresees that

22   we should address before we get to the issue of setting a

23   plan deadline.  Any other motions --

24         MR. HEIMAN:  Not other than what I --

25         THE COURT:  -- or adversary proceedings?

1          MR. HEIMAN:  No, your Honor, not --

2          THE COURT:  Anyone else foresee any other kinds of

3    motions or adversary proceedings that it would be helpful to

4    know about now and perhaps set a time schedule for?  Sir.

5          MR. HACKNEY:  Good morning, your Honor.  Stephen

6    Hackney on behalf of Syncora.  I wanted to rise briefly to

7    say that it is possible that there will be additional

8    adversary proceedings arising out of the COPs and swap

9    structure that I think the Court has read --

10          THE COURT:  Um-hmm.

11          MR. HACKNEY:  -- probably more than it wants to

12    about, but there is already --

13          THE COURT:  Probably.

14          MR. HACKNEY:  Probably.  Already litigation has been

15    initiated by the city against Syncora.  Syncora has also

16    initiated litigation against the swap counterparties in New

17    York.

18          THE COURT:  Um-hmm.

19          MR. HACKNEY:  I think the Court has been made aware

20    of that.

21          THE COURT:  Okay.

22          MR. HACKNEY:  And I cannot be more specific other

23    than to say that --

24          THE COURT:  Right.

25          MR. HACKNEY:  -- it's entirely possible as you're

1  resolving -- as the various courts are resolving where this

2  can proceed, there may be additional adversaries that arise

3  out of that structure.

4          THE COURT:  Right.  Good.  Thank you for reminding

5  me of that.

6          MR. HACKNEY:  Thank you, your Honor.

7          MR. HEIMAN:  I'm sorry, your Honor.  I actually

8  appreciate that supplement because there may be some motion

9  or adversary arising out of that debt that's not with respect

10  to what's already being litigated, so --

11          THE COURT:  Okay.

12          MR. HEIMAN:  -- we don't know today.

13          THE COURT:  Well, if so, that would happen fairly

14  soon and not likely to impact the plan confirmation schedule.

15          MR. HEIMAN:  Right.

16          THE COURT:  All right.  Anyone else with any other

17  possible motions or adversary proceedings?  I have one I'd

18  like to suggest to you, although we'll address that when we

19  get to the issue of committees.  All right.

20          Let's talk about the deadline to file a plan.  I

21  suggested March 1st.

22          MR. HEIMAN:  Your Honor, we enthusiastically accept

23  that deadline.  I would only supplement that acceptance with

24  a statement of desire on the part of the city, if I may.

25          THE COURT:  Please.

1          MR. HEIMAN:  And that is that we hope -- and our

2   view is that time is our enemy and that the facts are not

3   going to change no matter how long we wait, whether it's on

4   eligibility or filing of a plan, so we intend or hope to run

5   our process on parallel paths so that we can move as swiftly

6   as possible through this case, and, therefore, it is our hope

7   and desire that we will file a plan by year end, which is

8   well in advance of the deadline you have set.  Now, there are

9   a lot of issues surrounding that, but that is our own target,

10  so --

11         THE COURT:  Um-hmm.  All right.  Well, it would be

12  the Court's intention when a plan is filed to reconvene a

13  conference like this to set a schedule for litigating

14  whatever the issues are regarding that plan.

15         MR. HEIMAN:  Thank you, your Honor.

16         THE COURT:  Would anyone else like to be heard

17  regarding the deadline that the Court proposed?  All right.

18  Thank you.

19         MR. HEIMAN:  Next is item four, the mediation

20  proposal, your Honor.

21         THE COURT:  Yes.  Let's turn our attention to that.

22  Before you commence, I have a little introduction to give.

23  The Court does solicit the comments regarding its proposed

24  mediation order.  The reason that the Court provided notice

25  of its proposed mediation order is because it would like

comments from you on whether this is a good idea in this case
or not.  First, the Court would like to hear from counsel
regarding the concept of mediation in this case.  Then we can
discuss the particulars of the order itself.  The Court does
strongly encourage mediation in this case in order to
facilitate the consensual resolution of disputes to the
greatest extent possible.  Bankruptcy certainly does offer
litigation as a means to resolve disputes, and the Court is,
of course, fully prepared to conduct the litigation of any
issue that the parties decide requires it.  However, the goal
of bankruptcy is almost always better served through the
consensual litigation of disputes.

What is the goal of bankruptcy?  The purpose and
goal of bankruptcy is to give the city a fresh start in its
financial life and to do so in the most expeditious and
efficient way possible.  That's the goal of this bankruptcy
and really all bankruptcies.  Everyone who practices in the
field of bankruptcy law understands that consensual
resolution will meet the goals of promoting the city's fresh
start better -- much better than litigation.  There are two
reasons for this.  The first reason is that after this
bankruptcy case is over, however it is resolved, many of the
city's creditors will continue to have long-term
relationships with the city.  You know who you are, the
unions, the bondholders, the employees, the trade creditors.

1    Settlements can stabilize and even strengthen those long-term

2    relationships.  On the other hand, litigation is not designed

3    for that purpose, and experience strongly suggests that it

4    will not have that effect.  It may even be counterproductive.

5         Why is stabilizing and enhancing those long-term

6    relationships important to the city's fresh start?  For the

7    simple reason that if these relationships are stronger and

8    more cooperative, it will help the city's recovery and

9    facilitate the city's ability to become the city that it

10   wants to be.  Strong relationships between the city and its

11   creditors should also be important to the creditors because

12   it will place the city in a better position to do more

13   business with its creditors.

14        Finally and perhaps most important of all is that

15   consensual resolution of the city's disputes with its

16   creditors is in the best interest of the citizens of the City

17   of Detroit.  Without addressing their legal rights as such,

18   the city that they deserve, a city that is strong, vibrant,

19   and responsive, is more readily achieved after a settlement

20   between the city and its creditors than after long,

21   expensive, and potentially bitter litigation.  As a result,

22   the citizens of Detroit also have an important interest in

23   the outcome of this case that is as prompt and efficient as

24   possible.  Sir.

25        MR. HEIMAN:  Thank you, your Honor.

1          THE COURT:  Hold on one second, please.  Okay.  All

2     right.  After all, I do need to ask you to turn that

3     microphone so that its head is facing directly at you.

4          MR. HEIMAN:  Is this better?

5          THE COURT:  Turn it like 90 degrees so it's right --

6     pointed right at you.  There you go.

7          MR. HEIMAN:  Okay.

8          THE COURT:  That's it.

9          MR. HEIMAN:  Sorry.

10         THE COURT:  Okay.  But, again, I'm hearing noise in

11    the loudspeakers, so please check your phones to be sure

12    they're all off.  Go ahead.

13         MR. HEIMAN:  First, the concept of mediation.

14    Obviously you articulated better than I could possibly why we

15    support mediation.  We want resolution.  We don't want

16    protracted litigation.  We want to move swiftly.  Time is our

17    enemy, as I said.  We are hopeful that a mediation process on

18    all important issues that relate to the plan or otherwise,

19    individual creditors' rights will be better served by

20    mediation, so, again, we welcome that and appreciate your

21    comments in that regard.

22         With respect to the order, which is your second

23    question, we have no desire to change any of the language

24    presented in the order as you've stated it.

25         THE COURT:  All right.  Thank you.  And I want to

1    solicit the comments of others regarding the concept of
2    mediation and the particulars of the order.  It's probably
3    not, however, appropriate to seek your comments in this forum
4    regarding the proposed mediator, and so I am going to ask you
5    if you have any comments, either -- on either side of the
6    question about the proposed mediator, I'm going to give you a
7    seven-day opportunity to submit to my chambers sealed and
8    confidentially any such comments, and so the actual entry of
9    the mediation order will be held up for that purpose, but at
10   this point I would like to hear from others on the concept of
11   mediation and the terms of the order.
12              MS. LEVINE:  Your Honor, Sharon Levine, Lowenstein
13   Sandler, and I'm not sure because of the informal sort of
14   nature if I actually entered for whom I'm appearing, so with
15   the Court's permission, the Michigan Council 25 of the
16   American Federation of State, County, and Municipal
17   Employees, AFLCIO, and Subchapter 98, the City of Detroit
18   Retirees, which is the union's retirement group here in
19   Detroit.
20              First, we support mediation.  We support protecting
21   our constituents in every way we possibly can within the core
22   proceedings.  We had some discussion in the retiree motion
23   response about reservation of rights, and we've had some
24   conversations with the city's attorneys with regard to that
25   as well.  We don't want the fact that we do recognize the

1 city has some serious woes here that it needs to address to

2 in any way detract from our --

3          THE COURT:  Um-hmm.

4          MS. LEVINE:  -- ability to go down dual or three

5 tracks.

6          THE COURT:  Um-hmm.

7          MS. LEVINE:  Two, with regard to the specific

8 language of the order, we would just ask for a clarification

9 with regard to decretal paragraph four, which I alluded to

10 when I approached the podium earlier.  In addition to

11 mediating the difficult substantive issues that need to get

12 done, we do seem to be having some issues which we're hoping

13 that we're working through with regard to actually getting

14 access to information and the ability to have more of a give

15 and take in the process.  And we're hoping that, to the

16 extent that there is a mediator, it's a full-service mediator

17 that can help us with process issues as well as substance

18 issues.  Thank you.

19          THE COURT:  Good point.  Thank you.

20          MR. GORDON:  Your Honor, Robert Gordon again on

21 behalf of the Detroit Retirement Systems.  Your Honor,

22 without waiver of our position that accrued pension benefits

23 can't be diminished or impaired under the Michigan

24 constitution, the systems are not simply standing pat on that

25 position but are pursuing parallel -- the parallel path of

1    exploring ways in which the systems can be a part of the

2    solution.  Having said that, in the context of discussing

3    mediation, it's important that -- again, harkening back to my

4    comments from earlier, that the Court understand a little bit

5    about where the negotiations actually stand.  And this is not

6    with respect to any comments about whether those negotiations

7    meet the standard for good bid negotiations at all.

8              THE COURT:  Okay.

9              MR. GORDON:  This is about whether there's been

10   negotiations in general.  To date there have been, as has

11   been indicated, several presentational meetings with the city

12   and the emergency manager and his financial and legal

13   advisors.  There were presentations made at the airport on

14   June 14th.  There was a presentation made on June 20th

15   regarding modifications possibly to pension and healthcare

16   benefits.  There was a financial due diligence session

17   conducted in New York on -- I believe it was June 25th.

18   There were further financial due diligence sessions conducted

19   just on July 9th and 10th, roughly one week before this

20   bankruptcy was filed.  These were due diligence sessions.

21   These were sessions to gather information.  There were legal

22   and financial advisors from all the major creditor

23   constituents in a room asking questions about the cash flow

24   forecast, for example, and that really is the basis for the

25   proposal that was made by the emergency manager on June 14th.

1          Your Honor, those discussions made clear that there

2    are a number of not immaterial but very material financial

3    analyses that still need to be undertaken, and I want to make

4    it very clear.  I am not by saying this casting any criticism

5    or aspersion on anyone.  The emergency manager's team, as far

6    as I know, is working very hard, but there is information

7    that is not available at this time in the data room or

8    otherwise, and some of that I can even give you an example

9    because it's public.  The emergency manager's proposal on --

10   that was disseminated on June 14th has those cash flows

11   available, a ten-year cash flow forecast there.

12             THE COURT:  Um-hmm.

13             MR. GORDON:  The emergency manager's proposal also

14   references, for example -- and this is just one example --

15   that there may be an initiative to create a water authority.

16   And in the root cause document that was issued a couple

17   months back by the city, there was some indication that such

18   an authority may free up tens of millions of dollars in

19   revenues for the city.  Those numbers are not in the cash

20   flow forecast at this time.

21             THE COURT:  Um-hmm.

22             MR. GORDON:  And it's been readily accepted they

23   haven't, and the analysis is still ongoing as to what that

24   number should be.  That is very important because if you look

25   at the cash flow forecasts, the premise of the proposal by

1    the emergency manager begins by -- with the fact that,

2    according to those cash flow forecasts, there is on average

3    over the ten years about $80 million a year available for

4    payments to what are designated under his proposal as

5    unsecured creditors.  The root cause analysis talks about

6    tens of millions.  I believe it puts a range of maybe 30 to

7    $70 million on that, so you can imagine just that item alone,

8    30 to $70 million versus $80 million, these are huge numbers,

9    and it makes it difficult to sit down and have fulsome

10   negotiations when there are things that are still in flux

11   like that.  Again, it's part of the process.  This is not a

12   mom and pop convenience store situation.  There are a lot of

13   complexities, and I fully expect that the parties will engage

14   to resolve those informational issues, but they haven't

15   happened yet.

16        The Retirement Systems have also -- I feel like I'm

17   free to report to the Court -- have had discussions with

18   their actuaries to discuss different issues relative to this

19   matter.  They are very complex issues, very complex issues

20   with respect to the actuarial calculations, and we have kept

21   the city --

22        THE COURT:  This is the underfunding issue?

23        MR. GORDON:  The underfunding issues or how cash

24   flows might be permitted as they -- whatever the cash flows

25   may be, how those could permit supporting the existing

benefits over time. We have kept the city, their legal and
financial advisors apprised of our progress on that front
with a view to being able to sit down with them, and it is,
indeed, anticipated that later this month we will hopefully
be able to sit down with our financial team and our actuaries
in the same room with the emergency manager's team and his
actuaries and start to have conceptual discussions about
actuarial issues, but that is just at the beginning stage at
this point, so I wanted to be clear about that. As a result,
it is our feeling that while mediation -- we have absolutely
no objection to the concept of mediation, we would
respectfully submit it's premature at this point. We are
going to make formal information requests of the city in the
near future. It's been all informal up to now because of the
out-of-court situation that we were in.

THE COURT: Um-hmm.

MR. GORDON: But we will be making formal requests,
and, of course, the city will need time to respond to those
requests. And then we would expect that the parties would
engage in negotiations to narrow the issues, and we think
that process needs to play out to some extent before we end
up in mediation. We need better information, and we need to
have had those discussions between the parties. So it would
be our suggestion in that regard, respectfully, the Court
consider something along the lines of perhaps having a status

1  conference every 30 days to see where we are in this

2  negotiation process to gauge when mediation may be

3  appropriate.

4  Rule 1001, as the Court has referenced, talks about

5  both a just and speedy administration of the case.  Just is

6  as important as speedy is.  We want to caution against

7  expediency merely for the sake of expediency.  We all have a

8  sense of urgency.  How could we not?  But there is proceeding

9  with all due dispatch, and then there's proceeding in haste

10  and endangering parties' due process rights.

11  The sound bite that we hear that the city is broke

12  is a catchy sound bite, but -- we all understand the urgency,

13  but it is a bit of a sound bite.  The city is not paying its

14  unsecured bond debt at this time.  The city is not paying its

15  employer contributions at this time.  The city is meeting its

16  payroll obligations.  So while everything needs to move with

17  due speed -- we understand that -- again, it should not be

18  used as an excuse to move through this process faster than is

19  reasonable.

20  Your Honor, the stakes are high, and the men and

21  women of this city, current employees and retirees, deserve

22  to have their rights addressed in a careful and delicate

23  manner and not in a more --

24  THE COURT:  All right.  You make really --

25  MR. GORDON:  -- blunt fashion all in the name of

1  expediency.

2         THE COURT:  You make really important comments, and

3  I thank you for them.  As I see the issue that you raise, it

4  is this.  Who is in a better position to determine when the

5  actual mediation discussions should begin, either a mediator

6  or the Court?  A mediator could meet with the parties on a

7  regular basis informally, supervise the expedited exchange of

8  information, and have potentially a better sense of when to

9  begin negotiations, or the Court, whose processes are much

10 more formal, much more public, more constrained.  I'm

11 inclined to think that the mediator is in a better position

12 to say, okay, now it's time to actually begin discussions.

13        MR. GORDON:  Your Honor, I will step back and say

14 this.  What you've just described is a much more three-

15 dimensional mediation process than perhaps I was envisioning

16 and has often been the case.

17        THE COURT:  Um-hmm.

18        MR. GORDON:  What you're describing I think could be

19 constructive.  I would not dispute that.

20        THE COURT:  Well, please understand what I'm

21 referring to here and what I envision here is entirely

22 facilitative mediation.  There's nothing that this mediator

23 will have the authority to do in terms of compelling any

24 particular outcome, so it's up to the parties to work with

25 the mediator on setting the agenda, setting the schedule, and

1  working through the issues.  The ultimate deliverable is a

2  plan, assuming we get past eligibility, which I don't want to

3  assume, but for purposes of this we want to assume it, a plan

4  that has the support of enough creditors to be confirmed;

5  right?  And in that regard, there may be other disputes that

6  should better be referred to a mediation panel than to the

7  mediator who is working on debt adjustment, and I think we

8  want to keep that option open also.

9          MR. GORDON:  Thank you, your Honor, for those

10  thoughts and comments.

11          THE COURT:  Okay.

12          MR. GORDON:  Yeah.  Without revisiting my comments,

13  it is consistent also with our concerns that are expressed

14  with respect to the retiree committee that, again, the

15  process not be used in a way that --

16          THE COURT:  Right.

17          MR. GORDON:  -- allows someone in a perfunctory way

18  to move --

19          THE COURT:  Right.

20          MR. GORDON:  -- through this process and say we've

21  met the obligations, let's just go to a plan confirmation

22  hearing when the parties really haven't had a real meaningful

23  opportunity to discuss the issues.

24          THE COURT:  Right.  You've already heard me speak on

25  the subject of why a consensual resolution is better than a

1    cramdown.

2         MR. GORDON:  To that end, your Honor, the only other

3    comment I would make is that as to the proposed mediation

4    order itself --

5         THE COURT:  Yes.

6         MR. GORDON:  -- it is a little bit, I guess -- you

7    know, your Honor, I'll strike that comment.

8         THE COURT:  Okay.

9         MR. GORDON:  Based upon your comments, I'm fine.

10   Thank you.

11        THE COURT:  Well, let me just offer this opportunity

12   to you, Mr. Gordon, and really anyone.  In the seven-day

13   period that I'm going to allow for additional comments to be

14   submitted to the Court, you should also take that as an

15   opportunity to suggest any changes to the language or really

16   anything about the order that you'd like.

17        MR. GORDON:  Thank you, your Honor.

18        THE COURT:  Would anyone else like to be heard

19   regarding the proposed mediation order concept or terms?  No?

20   Sir.

21        MR. HEIMAN:  Your Honor, just two quick comments to

22   what Mr. Gordon said.  The first is that I don't intend to

23   respond today to some of his characterizations.  I don't

24   think that would advance the ball on the subject we're

25   talking about.  And the second is your Honor asked me awhile

1   ago whether the city is willing to continue to negotiate with

2   its creditors.  I think I responded that we're committed to

3   doing so, and I want to make that clear again in this

4   context.  We do not view mediation as a reason to not

5   continue our discussions.  Quite the contrary.  If mediation

6   is going to be successful at all, it's our obligation -- and

7   the burden falls on us -- we recognize this -- to move the

8   ball here with information, discussions, or what have you, so

9   we, again, endorse the mediation concept as well as the

10  language of the order.

11          THE COURT:  All right.  Thank you.  Let's move on

12  then and talk about the proposed order appointing a fee

13  examiner.  Again, I have a bit of an introduction that I'd

14  like to give you and everyone.  In considering and addressing

15  the issue of whether to appoint a fee examiner in this case,

16  the Court wants to assure everyone who might be affected by

17  such an order that it fully recognizes and accepts that

18  neither Section 330 nor Section 1104 of the Bankruptcy Code

19  applies in this Chapter 9 case.  Those are the provisions of

20  the Bankruptcy Code that judges commonly rely upon in

21  appointing fee examiners in Chapter 11 cases.

22          Likewise, the Court states on the record here that

23  it has no reason to believe that the city's professional fees

24  in this case either have been or will be either excessive or

25  otherwise improper, no reason.  Still, the Court has

1  concluded that it at least should suggest and discuss with
2  counsel the merits of appointing an independent fee examiner.
3  It is easy to predict in this case that there will be intense
4  media and public scrutiny of the city's professional fees.
5  Now, this is entirely natural and proper, and, frankly, the
6  Court encourages the public to remain fully informed about
7  all aspects of the case, including the professional fees that
8  the city is asked to pay.  There is, however, a blunt truth
9  that motivates the Court to make this suggestion.  It is
10  this.  If the city's professional fees and professional fee
11  expenses have been processed through an independent fee
12  examiner, then two things are more likely.  First, the city's
13  professionals will be in a much better position to justify
14  those fees to the city, and, second, the city will -- the
15  city itself will be in a much better position to justify
16  those fees to the public and to the citizens of the city.
17  Therefore, the Court sincerely hopes that the city and its
18  professionals will recognize and accept this blunt truth and
19  agree to some kind of a process for the independent review of
20  the city's professional fee expenses.  The parties and
21  counsel should understand that the Court is willing to be
22  quite flexible on the design of the process and is fully
23  prepared to collaborate with counsel on the process of fee
24  examination if we agree to it.
25          There are, of course, many possible ways to

1  accomplish the goal.  The process set forth in the Court's

2  proposed order is only one way.  Likewise, the Court is

3  willing to be flexible regarding the process of selecting the

4  independent fee examiner.  If we can agree in principle to

5  the concept, then I am confident we can work out the details

6  and identify a qualified individual.  Having said that,

7  however, in order for the fee examiner to be truly

8  independent, probably the selection should ultimately reside

9  with the Court rather than with the city and its

10  professionals.

11        So, again, I'd like to solicit first comments on the

12  concept of an independent fee examiner and then regarding an

13  appropriate process.  Sir.

14        MR. HEIMAN:  Your Honor, the city accepts and

15  appreciates the concept, and we and the city and its

16  professionals are committed to working with a fee examiner,

17  whoever that may be.

18        As to the order, I had one I think very minor

19  comment, but it's consistent with your comments about

20  flexibility, which, as I understand your approach, would

21  be -- this hearing or the entry of an order would be followed

22  by a discussion between the fee examiner who you appoint and

23  us, the city and its counsel.

24        THE COURT:  Yes.

25        MR. HEIMAN:  And so if you look at the first

1    sentence of paragraph 6 and less so to the first sentence of

2    paragraph 5, there are issues in there, including rate per

3    hour and so forth -- and that is, in my mind, going to be

4    whatever it is, but it seems to us that that's somewhat

5    covered by 4(c) or could be covered by 4(c) at least and that

6    it might be better to move that to the proposed order that

7    the fee examiner presents to your Honor.

8           THE COURT:  Um-hmm, um-hmm, um-hmm.  Okay.

9           MR. HEIMAN:  With that minor suggestion -- and I

10   must say it's not a big deal to us -- it's just a matter of

11   how the process is going to work -- I think I've responded to

12   your questions.

13          THE COURT:  Okay.  All right.  Any other comments on

14   either the concept of a fee examiner or the terms of the

15   proposed order or any other order?

16          MS. GIANNIRAKIS:  Good morning, your Honor.  Excuse

17   me.  Maria Giannirakis on behalf of Daniel McDermott, United

18   States Trustee.  Your Honor, I'm here on Mr. McDermott's

19   behalf to comment on the Court's suggestion that a fee

20   examiner might be appropriate in this case, and although

21   we're not asking for the relief, we are offering the Court

22   information on our experience in Chapter 11 cases, and if the

23   Court finds this useful, I'd be happy to share it with you.

24          THE COURT:  Please.

25          MS. GIANNIRAKIS:  Thank you.  We've certainly -- we

1  certainly see the utility of a fee examiner in this case.  As
2  the Court has stated, the fee examiner could advance the
3  public interest and the public confidence by promoting
4  transparency in this highly publicized case.  The U.S.
5  Trustee has supported the use of fee examiners in complex
6  Chapter 11 cases, and this endorsement is reflected in the
7  new fee guidelines for larger Chapter 11 cases that the U.S.
8  Trustee program has recently issued.  The guidelines set
9  forth several models for the use of fee examiners and fee
10  committees and have proven effective.  Most recently they
11  have been effected in the GM and American Airlines cases.
12  The fee examiner has not only proven to be effective and
13  efficient in identifying problems such as over-staffing, but
14  they've also raised other important legal issues for the
15  Court's consideration.  Just an example, in the GM case the
16  fee examiner raised the issue of whether professionals should
17  give notice of different rate increases.  These guidelines
18  and the information and guidance that's included in them
19  might be helpful to the Court, the proposed fee examiner, and
20  the parties.  And just an example of some of the guideline
21  provisions that we think could be useful is the adoption of
22  professional budgets and benchmarking invoices to the
23  budgets, the submission by professionals of electronic
24  billing data, specific disclosure of comparable compensation
25  through the use of blended rates, the disclosure of whether

1  rate increase -- of whether rates increased post-filing, the

2  disclosure and calculation during the case of rate increases

3  and the effect of those increases on compensation, and the

4  consideration of standards for using co-counsel as efficiency

5  counsel.  We agree with the Court, as the Court commented,

6  about Chapter 9 different from Chapter 11 but believe that

7  some of these comments could be useful and thank the Court

8  for allowing us to share that with you.

9        THE COURT:  You're welcome, and thank you as well.

10  Any other comments?

11        MR. HEIMAN:  Your Honor, I'd just like to add one

12  thing to note that there was a quite voluminous filing by

13  Godfrey & Kahn, and I have no comment about that except that,

14  for what it's worth, we don't think General Motors and Lehman

15  are in any way comparable to our situation.  Hopefully we'll

16  have far fewer retained professionals and the like, and the

17  process will not be so complicated, but having said that --

18  and they said they would be in the courtroom.  I don't know

19  if they are and may want to speak, but having said that,

20  again, we appreciate your Honor's approach and accept it.

21        THE COURT:  Let me ask you this question.  To what

22  extent do you think your office or your client or other

23  parties should be invited to participate in the selection of

24  an examiner, or do you just want me to do it?

25        MR. HEIMAN:  That's an interesting question.

1          THE COURT:  Again, there's a range of creative ways
2     in which we could handle this.  We could do what --
3          MR. HEIMAN:  I personally --
4          THE COURT:  We could do here what we are doing in
5     the mediation context, which is just to allow you a seven-day
6     period to submit confidential sealed suggestions or comments
7     on this question.
8          MR. HEIMAN:  I must say, your Honor, I'm just going
9     to let my hair down on this one.  For me to suggest who I
10    would like to have examine my fees seems unseemly to me,
11    so --
12         THE COURT:  Okay.
13         MR. HEIMAN:  -- that's my gut reaction.  I don't --
14    you know, my colleagues may beat me up after this hearing for
15    saying that, but that's my honest reaction.  Your Honor has
16    expressed --
17         THE COURT:  I understand and accept that.
18         MR. HEIMAN:  Okay.  So with that we have -- I think
19    I've addressed this already, your Honor.  Number 6 on your
20    amended list is future conferences and hearings, and we
21    are --
22         THE COURT:  Stand by one second.  We do have --
23         MS. LEVINE:  Sorry.  Before we leave the --
24         THE COURT:  -- Ms. Levine who'd like to be heard.
25         MS. LEVINE:  Before we leave the fee examiner

1    issue --

2              THE COURT:  Step forward, please.

3              MS. LEVINE:  Your Honor, one of the issues and one

4    of the themes you've been hearing throughout this is trying

5    to maintain the credibility of a process that's a very

6    difficult process for people to have to go through.

7              THE COURT:  Yes.

8              MS. LEVINE:  So to the extent your Honor would

9    welcome it, I believe that we would like to have a voice at

10   least in having your Honor consider some thoughts with regard

11   to the fee examiner.

12             THE COURT:  With regard to the identity of the fee

13   examiner?

14             MS. LEVINE:  The identity, yes.

15             THE COURT:  Okay.  Will it suit your purposes

16   sufficiently if I give you seven days to submit to the Court

17   confidentially and under seal whatever your comments are?

18             MS. LEVINE:  Yes.  Thank you.

19             THE COURT:  Okay.  And this is an opportunity open

20   to everyone.  Don't file anything, please.  Just submit them

21   to my chambers directly --

22             MR. HEIMAN:  And, your Honor, Mr. Bennett points

23   out --

24             THE COURT:  -- by mail or hand-delivery, whatever

25   you want to do.

```
 1          MR. HEIMAN:  Mr. Bennett points out, as he so often
 2   does, that I spoke for myself and not for the city, my
 3   client, so I don't know what the city's reaction will be to
 4   your invitation, and I just need to --
 5          THE COURT:  Okay.
 6          MR. HEIMAN:  -- make that clear.
 7          THE COURT:  Fair enough.
 8          MR. HEIMAN:  Thank you.  Status conferences and
 9   omnibus, I think I have already said we appreciate the
10   advance notice on those, and they look good to us, and
11   nothing further to add to that unless your Honor has a
12   question about it.
13          THE COURT:  Just for notice purposes, the District
14   Court has requested that we not conduct hearings on the
15   morning of September 4th because there's another high-profile
16   matter that morning, so if we do have any hearings of any
17   kind on September 4th, they would be in the afternoon, and
18   I'll have to get back to you all on what time in the
19   afternoon.
20          MR. GORDON:  Your Honor, I believe that's actually
21   Rosh Hashanah that night, so just to be careful --
22          THE COURT:  Ah, we will have to be very careful
23   about that, too, yes.  Thank you.
24          MR. HEIMAN:  Your Honor, I --
25          THE COURT:  On the issue of omnibus hearings, I
```

1  suggested a motion procedure that was very different from the

2  one that your office submitted in its motion.  You want to

3  take that up now?

4          MR. HEIMAN:  I would like to call on Ms. Lennox for

5  that purpose.

6          THE COURT:  All right.

7          MR. HEIMAN:  Thank you, your Honor.

8          MS. LENNOX:  Thank you, your Honor.  For the record,

9  Heather Lennox of Jones Day.  What we had proposed in our

10  motion -- we tried to be fairly faithful to Local Rule 9014-

11  1, so I'm pleased to say that we just have a couple of

12  questions and clarifications on --

13          THE COURT:  Okay.

14          MS. LENNOX:  -- what your Honor might propose, and

15  some of them may be a little parochial or a little minor.

16  The first one that I view as perhaps a little parochial is

17  Local Bankruptcy Rule 9014-1(e) imposes a five-page limit on

18  replies for certain matters, and then the Eastern District of

19  Michigan rule has a similar blanket seven-page limit on

20  replies.  It is more than likely that as the debtor in this

21  case, the city, will be doing omnibus replies to many

22  objections, and we would ask for your Honor's consideration

23  in waiving that at least as to the city.

24          THE COURT:  Well, I'd rather deal with the issue now

25  than get a motion to waive it on a case-by-case basis.  Is

1    there a limit that we can set within reason?

2           MS. LENNOX:  I do think it depends on the issue,

3    your Honor.  I mean if we're going to do a general limit, I

4    would propose a little higher, so it might be up to 20 pages.

5    For example, replies on eligibility could be quite lengthy.

6    Replies on minor matters could be much shorter.  But I do

7    expect that there will be several objections that your Honor

8    would prefer to have one pleading from the debtor rather than

9    many.

10          THE COURT:  All right.  Well, then how about if I

11   put in the order that that is extended to 30 pages and, of

12   course, without prejudice to your right to request even more

13   in the context of a specific reply?

14          MS. LENNOX:  Thank you, your Honor.

15          THE COURT:  What else?

16          MS. LENNOX:  There was also a question on

17   clarification that we had with respect to your Honor's

18   statement on 4(a) about not conducting an evidentiary hearing

19   on a motion unless the order and notice setting the hearing

20   states otherwise, and that is simply a procedural question

21   about how your Honor would like to proceed about whether we

22   should notice that ourselves, whether we should put a request

23   for that in the motion.  How would your Honor like to address

24   that issue so the parties know how to handle it in advance?

25          THE COURT:  The more information you can provide to

1   me about what it will take to resolve any given motion the

2   better, so, for example, if your motion foresees that there

3   will be factual issues, it would be helpful to identify those

4   factual issues and request an evidentiary hearing.

5          MS. LENNOX: In the motion. Thank you.

6          THE COURT: Right. At that point, I can decide

7   whether it's appropriate to conduct the evidentiary hearing

8   on one of these omnibus days or not, but I have to tell you

9   that in general I don't foresee conducting evidentiary

10   hearings at all on omnibus hearing days; that instead when

11   there are issues of fact, we will identify them and set a

12   schedule for whatever discovery might be needed, whatever

13   additional briefing on any legal issues might be needed, and

14   sometimes even a final pretrial conference and then an

15   evidentiary hearing, so I like the idea of your telling me

16   when you think an evidentiary hearing will be required and if

17   it's possible that it might be an extremely brief one to do

18   it on an evidentiary hearing day -- on an omnibus hearing

19   day, but more often than not -- much more often than not, I

20   foresee it playing out in a more traditional way. Does that

21   answer your question, or is it too vague?

22          MS. LENNOX: That does in large main, your Honor.

23   Part of the question -- and perhaps this is a follow-up

24   question -- is related to your admonition in -- your

25   perfectly appropriate admonition in Section 1 reminding

1    counsel that when you assert facts in a motion, you should

2    have an affidavit to support them, so I would expect that

3    there may be motions filed with affidavits that support facts

4    in the motion but maybe we don't need a whole full-blown

5    evidentiary trial on, things like that, so that --

6              THE COURT:  Among the things we discuss at the

7    initial hearing is whether there are genuine issues of

8    material fact.

9              MS. LENNOX:  Um-hmm.

10             THE COURT:  And my suggestion or request, which

11   maybe I should actually incorporate in the order, that

12   parties advise the Court about whether they believe an

13   evidentiary hearing will be required applies also to

14   responses.

15             MS. LENNOX:  Thank you, your Honor.  Two other

16   things, your Honor.  You mentioned in paragraph 2(c) that the

17   Court will let parties know at least two days in advance of

18   the hearing what matters you would actually like to take up

19   on the hearing.  I am assuming for notice purposes in advance

20   of that two days that the parties should submit a notice of

21   hearing so that people will be -- people will be on notice of

22   the hearing date that is proposed for that motion.

23             THE COURT:  My concern with that process is that it

24   has the potential for creating confusion.

25             MS. LENNOX:  Um-hmm.

1  THE COURT:  I would rather that the Court maintain

2  complete control over the process of issuing dates.  If

3  you're concerned about two days not being enough time --

4  MS. LENNOX:  That's the concern, your Honor.

5  THE COURT:  -- we can talk about how to enlarge

6  that.

7  MS. LENNOX:  That is the concern, your Honor.

8  THE COURT:  Okay.  What would you -- what would you

9  prefer then?

10  MS. LENNOX:  I would propose, if it please the

11  Court, at least five days, particularly if we're going to

12  have many matters on for one hearing.

13  THE COURT:  Okay.

14  MS. LENNOX:  And then the last point that we had was

15  one of the requests that we had suggested in our motion, and

16  that is related to motions for relief from the automatic stay

17  under Section 362.  We had suggested a procedure, and we

18  would ask the Court to consider it, that provides that if the

19  Court is not able to hold a hearing or is scheduling --

20  unwilling to hold a hearing within that 30-day period

21  referenced in Section 362(e)(1) that the stay not

22  automatically terminate until your Honor can hold a hearing.

23  THE COURT:  I saw that in there.  My problem with it

24  is I just don't think it's consistent with the requirements

25  of Section 362 itself.  I can state for the record pretty

1    categorically that it would be my intent to set every motion

2    for relief from stay -- from the stay within the 30-day time

3    period because that's what I think the law requires, and I

4    think our history with motions for relief from stay certainly

5    suggests that we have been able to do that.  I think setting

6    two motion -- or omnibus hearing days a month will permit

7    that to happen.  In the odd event that it can't happen, we

8    can select a date that isn't an omnibus hearing date.  We can

9    ask the creditor to stipulate to extend it to an omnibus

10   hearing date or, if necessary in odd circumstances, conduct a

11   hearing by telephone, so we have lots of options to comply

12   with that 30-day time period, and I'd rather do that than

13   just have an open door.

14        MS. LENNOX:  Thank you, your Honor.  That definitely

15   helps with clarification.

16        THE COURT:  Okay.

17        MS. LENNOX:  And that was all the clarifications

18   that I had.  Thank you.

19        THE COURT:  Anyone else have any comments or

20   questions or suggestions regarding the proposed motion

21   procedure?  Okay.  One more second, please.  Okay.  Are there

22   any other procedural or administrative questions, comments,

23   concerns that anyone would like to raise before we go on to

24   the motions that are set for hearing today?  No?  Okay.

25   Let's first address the motion for the order -- for the entry

1   of an order appointing Kurtzman Carson Consultants as claims

2   and noticing agent.

3           MS. LENNOX:  Thank you, your Honor.  The city has

4   filed a motion, as your Honor indicated, seeking to appoint

5   Kurtzman Carson Consultants or KCC as claims and noticing

6   agent in the city's Chapter 9 case to, among other things,

7   serve as the Court's agent to mail notices to creditors,

8   provide claims processing service, and provide computerized

9   claims database services, and we seek this relief pursuant to

10  28 U.S.C., Section 156(c).  The city has identified more than

11  a hundred potential creditors, including, among others --

12          THE COURT:  Has identified what?

13          MS. LENNOX:  More than a hundred potential

14  creditors -- oh, I'm sorry -- a hundred thousand potential

15  creditors in this case.  We've got employees, retirees --

16          THE COURT:  Just three orders of magnitude up.

17          MS. LENNOX:  Yes.  Perhaps I should have added

18  another three zeros to that.  In any event, there are quite a

19  few people that are going to require notices in this case,

20  and we think it might be burdensome on the clerk's office to

21  send those notices to all those folks.  Before selecting KCC,

22  the city did solicit bids from third-party vendors to serve

23  as the claims and noticing agent, and we selected one with

24  relevant expertise in this district and relevant expertise in

25  a Chapter 9 case since they served as the claims and noticing

1  agent in the Jefferson County case, and they were the most

2  economical proposal at the end of the day.  Again, we found

3  it important that KCC had experience working with this

4  clerk's office and this court, and they have assured us that

5  they will continue to follow the court's procedures and any

6  orders that might be entered by this Court.  There was a

7  declaration of Evan Gershbein that was attached to the

8  motion.  If your Honor has any questions of Mr. Gershbein, he

9  is in the courtroom today.  So with respect to the motion, we

10 would ask for its approval.  I don't believe, your Honor,

11 there have been any objections to it.

12         THE COURT:  Okay.  Yes.  Would you ask him to step

13 forward, please?

14         MS. LENNOX:  Yes.  Mr. Gershbein, would you

15 approach?  Would you like him to take the stand, your Honor?

16         THE COURT:  No, no, no.  Just to stand there is just

17 fine.

18         MR. GERSHBEIN:  Your Honor, Evan Gershbein.

19         THE COURT:  What is your name, sir?

20         MR. GERSHBEIN:  Sorry.  Evan Gershbein with Kurtzman

21 Carson Consultants.

22         THE COURT:  Thank you.  One second, please.  One

23 more second, please.  My clerk welcomes your participation.

24 She does, however, have a couple of details that she would

25 like to work out with you and to work them out in the context

1  of the order itself that the city has proposed.

2          MR. GERSHBEIN:  Okay.

3          THE COURT:  I'll just give you a heads up on them

4  and just ask you to consult with her, and then the city can

5  resubmit the proposed order to the Court.  So there are two.

6  The one is simply creating a link for the court to use to the

7  claims register that you will keep, and the other is that you

8  should work with the clerk when it actually comes time to

9  file the notice of commencement because there's a very

10  specific ECF event code that's important to use.

11          MR. GERSHBEIN:  Right.

12          THE COURT:  So these are not details I need to be

13  involved in and don't want to be involved in, and so I'll

14  just ask you to work them out with her.

15          MR. GERSHBEIN:  Absolutely, your Honor.

16          THE COURT:  All right.  That was it.  Thank you.

17  Not too tough, huh?

18          MR. GERSHBEIN:  Yeah.

19          THE COURT:  Okay.  All right.  So when that's worked

20  out, Ms. Lennox, would you just submit your proposed order

21  through the order processing program?

22          MS. LENNOX:  Thank you, your Honor.

23          THE COURT:  All right.  Let's talk next about the

24  motion for an order directing and approving the form of the

25  notice of commencement and the manner of service and

1  publication.  I think that the deadline part of it we have

2  already figured out or at least are on the road to figuring

3  out.

4           MR. BENNETT:  Okay.  I think that's right, your

5  Honor.  On the notice part, as you know, notice is required

6  in accordance with the statute notwithstanding the rather

7  large notoriety the case has already attracted.  We propose

8  publishing the required notice at the required times in the

9  Detroit Free Press and the Bond Buyer.  We've received no

10 objections, no comments at all to the proposed form of

11 notice, and so if it's acceptable to your Honor, we'll get

12 started on the process using the appropriate ECF code.

13          THE COURT:  Um-hmm.  Anyone have any comments or

14 questions regarding this motion?  Two.  Okay.  Go ahead.

15          MS. PATEK:  Your Honor, just for clarification on

16 the additional paper notice -- and that is part, I believe,

17 of the notice of commencement telling people what they have

18 to serve on the city.  We did have a comment on that, and we

19 think -- we're totally comfortable with e-mail notice, but

20 given electronic filing and everything, we would --

21          THE COURT:  Um-hmm.

22          MS. PATEK:  -- prefer that from a cost and time

23 standpoint that there not be paper.

24          THE COURT:  This is a -- this is a concern I share.

25 What is the need of the city and Jones Day to be mailed paper

1    copies of responses to -- or objections to eligibility in

2    this electronic age?

3          MR. BENNETT:  We have no need, your Honor, and I

4    think I tried to mention that before.  We are prepared to

5    dispense with it.

6          THE COURT:  Excellent.  Mr. Gordon.

7          MR. GORDON:  Thank you, your Honor.  Just one nit.

8    There is an identification of parties that are already

9    presumed to be on the special service list, which includes

10   creditors listed on a list of the 20 largest unsecured

11   creditors.  That would include the two retirement systems.

12   However, there is no provision for counsel for those

13   retirement systems to be on the special service list unless

14   you file a motion, and I'd really like to dispense with

15   having to file a motion.  Hopefully Mr. Bennett would agree

16   that counsel for those creditors should also be on the

17   special service list.

18         THE COURT:  Sir.

19         MR. BENNETT:  That's perfectly fine, and for anyone

20   else who wants to get on that list, if they want to contact

21   us informally, that's okay as well.

22         THE COURT:  All right.  Thank you.

23         MR. BENNETT:  Your Honor, are you going to make the

24   changes to the proposed form of order, or would you like us

25   to --

1   THE COURT:  No.  I'm going to ask you to do it and,

2  again, submit it through our order processing program.  Any

3  other comments or questions regarding this matter?  All

4  right.  Please let's give counsel till the close of business

5  on Tuesday to request to be included, and then you can submit

6  your order or actually let me ask this.  Was your order

7  constructed such that it can be entered now, or do you need

8  to wait to find out the names of attorneys who want to be on

9  the special service list?

10   MR. BENNETT:  Well, I think the order encompasses

11  both the notice part, which I think can -- we can do that

12  separately.  I don't think it requires work on the order at

13  all.

14   THE COURT:  Right.  Okay.

15   MR. BENNETT:  The deadlines, though, are there.

16   THE COURT:  Right.  All right.  So I need to get

17  that order entered so that you can pick them up in the

18  notice.  All right.  Let's follow that sequence then.

19   MR. BENNETT:  Okay.

20   THE COURT:  All right.  Let's turn our attention to

21  the motion regarding the appointment of a committee of

22  retired employees.

23   MS. LENNOX:  Thank you, your Honor.  The city has

24  decided to seek relief under Section 1102(a)(2), which is

25  made applicable to Chapter 9 by Section 901.  We seek this

1    relief to assure the adequate representation of our retiree

2    creditors during this case.  As we set forth in the motion,

3    retiree claims encompass pension benefits, which the city

4    estimates to be underfunded by about $3-1/2 billion dollars,

5    and retiree healthcare benefits, which are pay as you go and

6    actuarially amount to about $6 billion.  We have

7    approximately 23,500 former employees with vested pension

8    benefits.  We have almost 20,000 of them receiving retiree

9    healthcare.  It is a very diffuse group of individuals.

10         Many of the city's legacy obligations but not all

11   stem from old collective bargaining agreements.  The city has

12   47 bargaining units with 28 different unions, and there are

13   also four formal retiree associations which have voluntary

14   membership of which the city is aware.  There may be more.

15         As we noted in the motion prior to this case, the

16   city solicited the unions to see if they were interested in

17   representing their current retirees.  The overwhelming

18   majority said no.  I do understand from reading their

19   pleadings filed yesterday that two of the unions, AFSCME and

20   the UAW, have reversed course on this issue, but, regardless,

21   we still have many orphan retirees.  We also have

22   nonrepresented retirees, which comprise about 15 percent of

23   our retiree population.

24         Given the pressing financial crisis that the city

25   faces, the city filed this because it wants to have a clear

1    authorized representative who can speak for the city's

2    retirees and engage in negotiations and discussions with the

3    city over the issues of resolving legacy obligations in this

4    case.  We don't have the clean guidelines, of course, that

5    Section 1114 provides, that the unions will represent their

6    members, and, again, we would have to seek a committee in any

7    event for the nonunion represented members.  So we have

8    sought relief under Section 1102(a)(2) to provide this

9    important group of creditors with adequate representation in

10   this case and to provide a body with which the city can hold

11   restructuring negotiations.

12        There are a couple of things I want to make clear.

13   In the papers we commented on who the city thought the

14   committee should represent, and we defined retirees as a

15   committee of former employees because we had assumed that the

16   unions would represent their active employees with respect to

17   this and other issues.  However, the city does recognize that

18   active employees do have an interest in retiree benefits,

19   particularly those who have pension rights, so the city is

20   not opposed to the committee having representation for active

21   employees that have an interest in retiree benefits as part

22   of this committee as the U.S. Trustee sees fit, which brings

23   me to a further point, your Honor.

24        The U.S. Trustee had contacted the city after the

25   motion was filed to discuss the motion and the procedures

1   proposed.  Now, I want to be clear here.  The city did not
2   propose procedures to try to control the process.  The city
3   understands that should your Honor grant the motion, the
4   formation of the membership and the selection of the members
5   of this committee are wholly within the purview of the U.S.
6   Trustee.  It was simply suggested -- the city was simply
7   suggesting some procedures to form a logical process that
8   might be useful for people to consider.  However,
9   understanding that the appointment of the committee, should
10  your Honor grant the motion, is within the purview of the
11  U.S. Trustee, we had discussions with the U.S. Trustee, and
12  we have agreed to remove the suggested procedures from the
13  order, and I think a lot of folks had commentary about that
14  in their objections.  So the process to be used, should the
15  motion be granted, to select a fair and representative
16  committee will be the U.S. Trustee's own.  Yesterday, your
17  Honor, we did file on the docket a revised form of proposed
18  order with these revisions reflected that is agreed to by the
19  United States Trustee.  If your Honor needs a copy, I have
20  one with me that I can hand up.
21          THE COURT:  Please.
22          MS. LENNOX:  May I approach?
23          THE COURT:  Please.
24          MS. LENNOX:  That form of filing, your Honor, on
25  Exhibit A is a proposed new form of clean order to which the

1  U.S. Trustee has agreed, and Exhibit B shows the blackline

2  from the original order proposed with the motion.

3          THE COURT:  All right.  Stand by one moment while I

4  look at this.  Thank you.  Go ahead.

5          MS. LENNOX:  As a final comment, your Honor, because

6  this also appeared, and there may have been some confusion --

7  and I think Mr. Heiman echoed this earlier today --

8  notwithstanding the appointment of the committee, the city

9  also plans to continue discussions with all of its creditor

10  groups with whom it's been having discussions.  This is not

11  an attempt to freeze out any party.  This is simply an

12  attempt to provide an authorized representative for folks

13  that may not have adequate representation in this case as it

14  stands today.

15          I do have responses to a lot of the objections that

16  were filed, but perhaps your Honor wants to hear the

17  objections beforehand.

18          THE COURT:  Okay.  Thank you.  And who would like to

19  be heard regarding this motion, please?

20          MS. LEVINE:  Good morning, your Honor, for another

21  minute.  Sharon Levine, Lowenstein Sandler, for Michigan

22  Council 25 of the American Federation of State, County, and

23  Municipal Employees, AFLCIO, and Subchapter 98(c) of Detroit

24  Retirees.  Your Honor, we represent the interests of between

25  40 and 50 percent of the city's retirees at about 11,943.  We

1  represent about 70 percent of the non-uniform union

2  represented employees.  We have 18 units of the locals that

3  counsel was referring to.  We have units in every single

4  department in the city, including the police and fire

5  departments.

6         Your Honor, I'd like to address a couple of issues

7  raised.  First and foremost, when we first started drafting

8  this response, we drafted it like we were answering a law

9  school exam, and we were originally going to take the

10 position before your Honor that you can't do this kind of

11 thing before there's an order for relief, and we have serious

12 eligibility issues and concerns along those lines.  We've had

13 conversations with the city and are hoping that today they

14 will affirm that all of this action, mediation, retiree

15 committee, et cetera, is going to be taken without any

16 prejudice to any of those rights, constitutional,

17 substantive, technical, whatever else they are.

18         THE COURT:  I agree.

19         MS. LEVINE:  But regardless, the goal of our union

20 is to work as hard as we can for all of our retiree and

21 active members in every avenue that's available to us to work

22 through this process.  And in addition to that, we appreciate

23 the city's comments that they recognize that a lot of the

24 active employees have interests in their pension benefits and

25 in their medical benefits as well, which brings me to another

1   point, which is there's some -- there's been some concern

2   raised with regard to whether a union can actually represent

3   its retirees.

4           THE COURT:  Um-hmm.

5           MS. LEVINE:  I'd like to respond two ways.  First,

6   legally we believe that the answer -- again, looking at the

7   law school exam, that the answer is yes, that we have

8   historically under our internal workings represented our

9   retirees.  In fact, at the International level, we have a

10  designated person and a group that works with that person who

11  just deals with retiree issues, so in that regard, we would

12  fully expect to represent the retirees along with the

13  actives, especially since a lot of the issues here overlap.

14  And we've submitted the certification of -- from the union

15  specifically talking about the fact that we do provide these

16  services with regard to the retirees on a regular basis.

17          That said, your Honor, as a practical matter, in

18  handling the situation in other cases -- and while they've

19  been Chapter 11 cases under 1114 and not the unique situation

20  we find ourselves in here, we have seen the United States

21  Trustee's Office deal with this issue three separate ways:

22  (a) actually appointing the union to the retiree committee;

23  (b) appointing the retiree group affiliated with the union,

24  which we represent here, to the retiree committee; or

25  appointing individuals who are either members of the union or

1   members of the retiree committee.  And in either of those

2   three circumstances, we're committed to bringing the full

3   support of the union to the process and hopefully

4   constructively interfacing with the retiree committee's

5   professionals and working through some of these difficult

6   issues.  With that said, your Honor, we start with the

7   premise that we don't believe that there's a conflict, and we

8   don't think that your Honor needs to rule on that issue.

9         Your Honor, the other issue that we did want to

10   touch on just briefly is with regard to the timing, but we do

11   think that your Honor addressed it adequately before, but we

12   just want to state for the record that to the extent that

13   your Honor enters scheduling orders in this case, we hope

14   that they're without prejudice to come back to your Honor --

15         THE COURT:  Um-hmm.

16         MS. LEVINE:  -- in case circumstances change,

17   including after the retiree committee gets up and running and

18   its professionals get engaged.  And with that, your Honor, we

19   would just close by suggesting that we represent a large

20   number of people here.  We're very concerned about this

21   process.  It's a nice day today, but it's going to be cold

22   this winter, and they're very concerned about their pension

23   benefits, their health benefits, and moving forward

24   constructively to resolve the issues here because regardless

25   there's going to be something that has to happen in order to

1  resolve these issues.  Thank you.

2          THE COURT:  Thank you.  Anyone else on this motion?

3  Ms. Brimer.  Oh, Mr. Gordon.

4          MR. GORDON:  Thank you, your Honor.  Robert Gordon

5  again on behalf of the Detroit Retirement Systems.  Since we

6  did file papers, if I could at least acknowledge the fact

7  that we did file papers on this, and there have been other

8  papers filed subsequently by a number of parties that cover

9  the same issues, so, from our perspective, the concerns have

10  been addressed, I believe, by Ms. Lennox as far as not

11  marginalizing anybody in the process and in the selection

12  process with the U.S. Trustee's Office and giving the U.S.

13  Trustee plenty of space to make their own decision.

14          The only other thing that hasn't been raised yet is

15  we suggested in our papers that there's -- if there is going

16  to be a retiree committee, it ought to be able to function

17  properly, and so there should be some provision made for

18  compensation for reasonable professional fees.  Obviously

19  that's not necessarily imbedded in the Chapter 9 context, so

20  it seems like if that is something that's desirable to the

21  city, there ought to be some provision made for that because,

22  again, Chapter 9 doesn't quite cover it very well.  Thank

23  you.

24          THE COURT:  Now Ms. Brimer.

25          MS. BRIMER:  Well, good afternoon, your Honor.  Lynn

1  M. Brimer appearing again on behalf of the Retired Detroit

2  Police Members Association.  Your Honor, we filed a response

3  and very limited objections to the city's motion.

4  Fundamentally we understand perhaps in the long term the need

5  for committees in order to effectively negotiate a resolution

6  of whatever disputes may arise with respect to fully funding

7  the pension rights of the city's retirees.  However, we have

8  several concerns with the motion and the proposed order as

9  it's presented.

10         First -- and I addressed this earlier, your Honor --

11  there is a concern with whether or not at this stage in this

12  proceeding there is authority for the U.S. Trustee's Office

13  to, in fact, appoint -- to go to the complete step of

14  appointing a committee.  While we believe it may be

15  appropriate, without waiving any rights to our objection to

16  eligibility for this Chapter 9 to proceed, for the U.S.

17  Trustee's Office to begin the process of attempting to select

18  and appoint the committees that should this Court determine

19  eligibility should be appropriately appointed, however,

20  appointment at this point may chill some of the existing

21  retiree associations from actively pursuing their rights with

22  respect to eligibility and may ultimately be that the

23  committees are not properly authorized under Section 1102(a),

24  which, in fact, does authorize appointment of committees

25  after an order for relief.  And if you look at at least some

1    of the more recent cases that have been filed, they are

2    instructive to the extent that in the matter of In re. The

3    City of Vallejo the Court, in fact, found that the

4    appointment was premature prior to the order of relief.  In

5    the matter of In re. The City of Stockton, California, the

6    orders were entered, you know.  Immediately after the order

7    for relief was entered, the Court then appointed the

8    committee, which would tend to indicate the procedures were

9    in place, and the Court acknowledged what the restrictions in

10   Section 1102(a) are.

11        With that in mind, your Honor, we still have, should

12   the Court determine that it is appropriate to appoint a

13   committee at this point and assuming -- without waiving our

14   rights to object to eligibility, assuming this case proceeds,

15   we, nonetheless, still have some concerns with some of the

16   issues raised in the motion.  The procedures issues may have,

17   in fact, been addressed by the city.  We think it is

18   completely inappropriate for the city not to control.  The

19   issue is influence.  They should not even influence the

20   selection process for appointing committees.

21        We do not believe it's appropriate for any of the

22   unions or any representatives of current employees to have

23   representation on committees that represent retirees.

24   Continuing wages and continuing current benefits may impact

25   their willingness or their participation in negotiating with

1 | respect to pension distributions.

2 | That raises the concern we have also with respect to

3 | whether or not one committee for retirees would be

4 | appropriate. As this Court may be aware, police and fire-

5 | fighters do not participate in the Social Security

6 | Administration; therefore, to the extent any of their pension

7 | benefits are reduced in this process, they will not have the

8 | same opportunity to pursue Social Security as perhaps the

9 | retirees of the general retirement system would have. They

10 | may have, therefore, very different interests in pursuing

11 | negotiations and may have to negotiate a different resolution

12 | of their benefits than the retirees who participate in the

13 | general retirement system.

14 | Then, finally, the issue that was raised by Mr.

15 | Gordon is extremely important, and that is funding. If there

16 | are committees to be appointed, one or more committee, in

17 | order to properly be able to negotiate and address issues

18 | raised by the city, it must be funded. All of its

19 | professionals must be funded. Legal and any accounting or

20 | other actuarial type professionals that they would require

21 | should be funded. Even though I do understand that funding

22 | is not required, those provisions are not incorporated into

23 | Chapter 9, the fact that this Court recognizes the need for a

24 | fee examiner when, in fact, the fees are not subject to this

25 | Court's review under Chapter 9 is an acknowledgement that

1 | this Court understands that funding and the protection of the

2 | public interest is of utmost importance in this case.

3 | THE COURT: My question for you is really a process

4 | question. Does the Court have the authority to give

5 | direction and instruction to the U.S. Trustee in an order

6 | granting a motion like this, or is the process that the U.S.

7 | Trustee exercises its discretion, and then the Court, upon

8 | motion, reviews that after the fact?

9 | MS. BRIMER: Well, I believe, your Honor, that,

10 | frankly, our U.S. Trustee's Office has the discretion and, in

11 | consultation with the various retirees and other interested

12 | parties, can evaluate what the appropriate procedures would

13 | be for selecting the committee. I can -- I recognize why the

14 | city filed this motion and brought it to the Court's

15 | attention that it would be very important in order to

16 | effectively advance negotiations that they are not

17 | negotiating with multiple retirees, individual retirees;

18 | however, I do believe that at this stage of the proceeding,

19 | it would be appropriate for the U.S. Trustees to exercise

20 | their discretion, move forward with the process for

21 | selection, and then present the Court with an order for the

22 | appointment of the committee.

23 | THE COURT: Okay. Thank you. Mr. Morris.

24 | MR. MORRIS: May it please the Court, Thomas Morris

25 | of Silverman & Morris. I'm co-counsel with Lippitt O'Keefe,

1    PLLC, representing the Retired Detroit Police and Fire

2    Fighters Association and the Detroit Retired City Employees

3    Association.  The first organization has been in existence

4    for more than 30 years, and the General Retirees Association

5    has been in existence for more than 50 years, and these two

6    organizations represent -- have as their members

7    approximately 70 percent of retirees.

8            The reason we filed the response to the motion was

9    we objected to the city's proposed involvement in the

10   selection process and also the proposed involvement of the

11   unions.  The present employees of the city, most of whom are

12   members of unions, have a very significant interest in seeing

13   that their present wages are protected and their future

14   benefits are protected, but they have a different interest

15   than do the retirees.  I take the -- we understand the

16   proposal for a retiree committee to be just that, a committee

17   of the retirees by the retirees and for the retirees, and

18   it's not -- there's a lot of interests in this case to be

19   served.  This committee should not be everything to everyone.

20   That's why we support the appointment of a committee, as I

21   said, of retirees.

22           As to whether the Court -- whether it's appropriate

23   for the Court to direct the U.S. Trustee in the details,

24   that's -- the pared down proposed order is acceptable to us

25   that leaves the details to the U.S. Trustee.  I can

1   understand the Court ruling that way looking at the

2   separation of powers.  The reason for the U.S. Trustee's

3   Office being separate from the court is to separate powers.

4   We did submit a proposed order, which has some specific

5   provisions that we would like to see in the order if the

6   Court does prepare a more detailed order.  I agree with the

7   other comments that the scheduling order should allow the

8   retiree committee, if and when it's formed, more time.

9         Your Honor, the associations hope to work with the

10  committee and with the unions to help to reorganize the city

11  and reach a deal, but we do think the retirees have special

12  interests; that that interest has been represented by the

13  associations with their unique situation, having been in

14  existence for years representing such a high percentage of

15  the retirees, having gone through and prepared and adopted

16  by-laws, elected officers and directors, and we think all

17  those are important considerations for the U.S. Trustee.  We

18  have submitted and received from members of the associations

19  proxies, not legal proxies, but written recommendation that

20  the officers and directors of the associations be considered

21  as -- for membership in the committee.

22        THE COURT:  One second, sir.  Letrice, would you go

23  adjust that mike stand to see if that takes care of the

24  knocking that we're hearing through the loudspeaker?  All

25  right.  Let's try that and see if that will solve our

1  problem, and you may continue, sir.

2          MR. MORRIS:  Yes, your Honor.  We submitted to the

3  membership documents for them to sign to recommend for the

4  inclusion in the committee officers and directors of their

5  associations.  I think it'll be more appropriate for us to

6  take that up with the U.S. Trustee, but we do have those

7  available for the Court if the Court decides to get involved

8  in the process to that detail.  Thank you.

9          THE COURT:  Thank you, sir.  Other comments?

10          MS. PATEK:  Your Honor, once again Barbara Patek

11  appearing on behalf of the public safety unions, the three

12  police unions, and the Detroit Fire Fighters Association.  We

13  did file a response and a limited objection to the city's

14  motion.  We are looking for four things, and I --

15  understanding the limitations and the role of the U.S.

16  Trustee's Office, we're looking for a seat at the table.

17  We're looking for the U.S. Trustee to control the selection

18  of the committee, and we are also looking for a mechanism for

19  this committee to be adequately funded.  Otherwise it will

20  not make it an effective process, and the two things that we

21  have suggested -- and we understand under Chapter 9 because

22  of the limitations, it would require the city's consent --

23  would be that the city consent to pay the reasonable

24  professional fees of the committee and delegate the

25  responsibility for determining the reasonableness of those

1    fees to the fee examiner to be appointed by the Court.

2         We filed our response without prejudice to our right

3    to object to eligibility, of course, and we are not conceding

4    that the formation of such a committee would make it the sole

5    negotiator on the issues before the Court.

6         I want to address the Court's question about

7    1102(a)(2) and (4) and the order in which things should

8    happen, and it seems as though we have perhaps already leapt

9    over the obstacle of having an order for relief.  And I

10   suggest, to the extent that the Court finds that it has

11   authority, that given the -- that everyone in this courtroom

12   agrees that time is not on its side, that from the standpoint

13   of judicial economy and the efficiency of the process, that

14   the Court in this case may be in a position -- ultimately the

15   U.S. Trustee is going to select this committee, but to give

16   some direction based upon the information that is being put

17   before the Court this morning, and to that end I would like

18   to speak briefly to the circumstances of my constituents.

19   And appreciating that there -- if we were in a Chapter 11,

20   there would be specific provisions that would govern both my

21   clients' rights and the rights of the separate retirees under

22   1113 and 1114, we are in a very different circumstance in

23   this case in terms of there's nothing usual about this case,

24   but from the standpoint of collective bargaining -- and you

25   heard the city's counsel say it earlier this morning -- from

their perspective, all the bargaining units, pursuant to the
Emergency Manager Act, their position is -- and I'm not
conceding this because I don't for sure know the answer to
it -- are under imposed conditions of employment or imposed
terms that have been imposed on them by the emergency
manager.  To date, the position has been first under Public
Act 4 and then later after that was repealed under 436 -- the
position of the city has been we have no obligation to
bargain with you.  We can pretty much do anything to you that
we want except modify your pension.  For that we need
Bankruptcy Court, and now here we are.  And we are a group
that -- aside from the fact that our active employees do have
vested benefits, this retiree group is obviously a rolling
group, some by choice and some not by choice, may be moved
very quickly even as this process is proceeding from active
to retiree, and the issue of these pension benefits is the
400-pound gorilla in the room.  And so for that reason, we
think -- you know, we are advocating to have a seat at this
table.  We understand the Court can't tell the trustee who to
put on the committee, but in terms of making it
representative, there are a lot of different constituencies
from the folks, as I think Ms. Brimer pointed out, who have
no Social Security -- and some of them I understand don't
even have Medicare to fall back on -- to some people who
perhaps have more luxurious pensions and a second career.

1   There's a lot of different constituencies, and the goal will

2   be to get a representative constituency, and I'm going to

3   return to, I think, from our perspective, we want not only

4   representation, but it's critical that this committee, if the

5   Court is going to appoint it, be adequately funded so that

6   there can be a real and serious conversation about how this

7   problem can be solved.  Thank you, your Honor.

8          MR. GOLDBERG:  Good morning, your Honor.  Jerome

9   Goldberg.  I represent party of interest David Sole, who is a

10  retiree himself and was a former president of UAW SCATA, a

11  chemist, and whose wife also is a retiree as a bus driver.  I

12  also filed an objection in this case, and we basically cited

13  that our interpretation and our view of the plain language of

14  the statute is that this motion is premature, that 11 --

15  Section 1120 -- 1102(a) states that the trustee has the

16  authority to appoint committees after a order for relief is

17  entered, and 11 U.S.C. 921(c) provides that in a Chapter 9

18  case the Court shall order relief only after objections to

19  the eligibility issues have been resolved and the

20  determination on eligibility has been made.  That's why we

21  believe that the appointment of a retiree committee at this

22  point would be in plain violation of the law.

23         Why we feel that's so important is that the -- as

24  your Honor stated earlier, that one of the critical issues in

25  eligibility is the applicability of the state limitation

1　on -- constitutional limitations on impairing pension to this

2　case.  That's a critical question that not only affects the

3　thousands of retirees in this case, but it also will have

4　national impact.  There are 24 other states that have

5　guarantees on pension.  They're looking at what the decision

6　is going to be on that issue.  And our concern is in

7　designating a retiree committee, especially the way it was

8　initially proposed by the city, which would essentially be

9　the only spokesperson for the retiree, it could have the

10　effect of dampening the participation of all interested

11　parties who choose to participate in this critical question,

12　whether they be retiree associations, the unions, the

13　retirement boards, all of whom already have done so and whose

14　participation we fully respect, or individual retirees.

15　There needs to be the fullest participation in this critical

16　question that will have implications in Detroit and all over

17　the country.

18　　　　　THE COURT:  Why would this committee do that, or how

19　would it happen?

20　　　　　MR. GOLDBERG:  Well, just listening to the debate

21　here, we hear everyone vying for who will be on the

22　committee, but what we say -- again, we say the plain

23　language of the statute bars the formation of this committee.

24　　　　　THE COURT:  No.  I understand that, but you asserted

25　that the formation and participation of this committee in the

1    eligibility question will discourage others from asserting

2    their issues.  Why would that happen?  How would that happen?

3           MR. GOLDBERG:  Well, let me just say that in the

4    city's motion for this, the city provided that the retiree

5    committee would provide a single party to negotiate with the

6    city on behalf of retirees as a group.

7           THE COURT:  They've moved past that; right?

8           MR. GOLDBERG:  Well, it does sound like they've

9    moved past that today, and I appreciate that they've moved

10   past it today, your Honor.

11          THE COURT:  Okay.

12          MR. GOLDBERG:  But, again, I really do feel that at

13   this point it's improper.  At this point the critical

14   question is the eligibility question and the

15   constitutionality, and, in fact, what would the committee

16   even be negotiating on at this point?  To spend time debating

17   who should be on a committee when the scope of what the

18   authority is on the issue of pensions and whether there's

19   even authority in this question seems to me to be a diversion

20   from the issue of eligibility that needs to be decided first

21   under the law, and that is really the significant question in

22   front of everybody right at this moment.

23          THE COURT:  Of course, the statute says the Court

24   has the authority to order this after an order for relief is

25   entered; right?

1          MR. GOLDBERG:  Yes, it does.

2          THE COURT:  It doesn't say the Court doesn't have

3     the authority to do it before that, does it?

4          MR. GOLDBERG:  Well, I think by the language of the

5     statute, it empowers -- it states when the Court has that

6     authority, and 921 imputes that right into it, says the Court

7     shall order relief only after objections to the eligibility

8     questions have been heard.  Thank you, your Honor.

9          I just want to make one other point, too, just for a

10    point of correction to the city's motion that the city

11    indicated that the city is the only authority that -- that

12    the city has the authority to amend pensions, and just to

13    clarify, I did attach Section 4744 of the Municipal Code 2 as

14    an exhibit to our brief and which states very plainly that

15    that authority does not apply to vested pensions.  Thank you,

16    your Honor.

17         MS. CECCOTTI:  Good morning again, your Honor.

18    Babette Ceccotti, Cohen, Weiss & Simon, for the UAW.  We did

19    file a short response to the motion, and I'll touch briefly

20    on essentially three items that we've covered.

21         First, the UAW is not taking a position specifically

22    with respect to the 11 -- what I'll just call 1102 issue,

23    whether the Court should grant the motion now.  We are,

24    however -- to the extent the Court does grant the motion, we

25    want to emphasize three points, some of which have already

1   been touched on by counsel.  First, the funding issue.  We've
2   stated in our motion that the UAW, if such a committee is
3   formed, would be interested in declaring its interest in
4   serving on the committee.  Critical to the UAW's thinking in
5   that regard and decision-making would be a sense that the
6   committee is going to be able to have adequate resources to
7   adequately perform the job that the committee is being formed
8   to perform, and you've heard the other speakers.  I won't
9   belabor the point, but we do consider the funding to be very
10  critical here, funding by the city, and we have suggested in
11  our papers that the city should indicate its intention so
12  that the Court has that information before it in terms of
13  making a decision regarding granting the motion.

14          Second, on the -- we've indicated reservations of
15  rights issues as well.  Ms. Levine touched upon them.  Others
16  have as well.  And we understood the Court to be cognizant
17  and agreeing with us on that point, so I won't --

18          THE COURT:  I am and I do.

19          MS. CECCOTTI:  Thank you.  So that leaves me with
20  our third point, which is the point of adequate
21  representation, and I regret that we have -- or being the
22  U.S. Trustee thinks that we've initiated a disputed with
23  them -- it was certainly not our intent to do so.  We
24  certainly have respect for the office -- their office, and we
25  understand their role and respect the role that they play in

forming committees. However, that said, we do think that some guidance by the Court -- if the Court, again, were inclined to grant the motion, that some guidance just to deal with just some very practical considerations -- and I think you've heard some of them here today. When the city filed its motion, as Ms. Lennox indicated, they at first proposed a series of rather detailed procedures. The revised order that has been submitted to the Court has deleted those procedures with the expectation, and I think appropriately so, that the U.S. Trustee would be designing the solicitation procedures and the process by which it would form the committee. However, let's take a step back and let's assume that the city had not attached any suggested procedures. One would -- we would have had a motion to appoint a retiree committee with a definition and, you know, perhaps some very general definition by the city and nothing more. And without any further guidance, the U.S. Trustee would have immediately, I'm assuming, just based on some of the questions that have been raised here today, have confronted a series of questions, some of which might be just considered procedural, but some of them would be quite basic, the scope of the committee's purview, whether the committee should include or can include individuals, associations, and labor unions, questions about -- the questions that you've already heard discussed before your Honor today about labor unions serving

1    and in what capacity.  These questions we could see, as a

2    practical matter, might bog down the process to the point

3    where either the parties would be back here before your Honor

4    anyway or the U.S. Trustee, doing its best to take on those

5    issues and try to solve them just themselves, would

6    undoubtedly spur additional proceedings before your Honor

7    anyway.  So our thought was that -- and we understand

8    normally how the sequencing goes.  We've read the statement

9    submitted by the office.  We still think that 1102 does

10   contemplate a role for the Court and that in terms of -- not

11   with respect to detailing and wordsmithing procedures and not

12   with respect to dictating or directing that specific entities

13   or parties be appointed, but that, nonetheless, the

14   framework, if you will, or the table that's being set for the

15   office to perform its functions appropriately resides with

16   the Court, particularly given the array of comments that the

17   Court -- that have been filed both with respect to the legal

18   issues but also with respect to issues of composition.  We

19   state -- we have stated -- and, again, the UAW has a lot of

20   experience on creditors' committees, on general creditors'

21   committees and in the Chapter 11 context in the 1113 and 1114

22   process and outside of bankruptcy, and one of the things that

23   labor organizations do is engage with employers on complex

24   matters such as pension benefits, health benefits, retiree

25   health benefits, other types of benefits as well.  It makes

1   the unions, in our view, who take on this role -- and the UAW

2   is another union that historically does take on this role --

3   particularly well-suited to a project like this and a

4   committee like this where their facility with being able to

5   engage on these matters will aid in the effective functioning

6   of the committee.  So we made the suggestion that we did in

7   our papers that the Court provide some direction on, again,

8   the framework and scope and eligibility, if we can put it

9   that way, in order to make sure that, first, the --

10  everyone's goal here, if your Honor grants the motion, is

11  that the committee be effective and be able to function

12  effectively with -- not only with funding but with members

13  who can effectively undertake the task.  This is an enormous

14  task, and you've already heard about the human element here.

15          Second, in terms of participation and scope -- and

16  we've made this point in our papers -- if there is a group

17  that feels disenfranchised -- and we think this is -- I would

18  put this in the heading of guidance that the Court could

19  provide to the U.S. Trustee in fulfilling its role here.  If

20  there are groups that are left out for some reason or feel

21  excluded, that will directly affect the credibility of the

22  process, and it doesn't do the Court any good or any of us

23  any good to have a committee like this formed, as I've said

24  already, that cannot effectively complete its task.  And if

25  you have skepticism engendered by exclusions or if some folks

1  have -- some groups have been selected to serve and some

2  haven't, undoubtedly that will have ramifications.  So we

3  think that, again, with all due respect to the Office of the

4  U.S. Trustee and with no intention at all to interfere with

5  their proper function in conducting the solicitation and the

6  formation, we do think that some guidance along the lines

7  that we've set forth in our papers in here would be

8  appropriate and is also appropriate under the statute itself

9  without crossing -- unduly crossing any lines or

10  inappropriately crossing any lines in terms of the division

11  of labor between the Court and the U.S. Trustee's Office.

12          THE COURT:  Let me ask you this question.

13          MS. CECCOTTI:  Sure.

14          THE COURT:  I heard today a concern that a union

15  which represents by law present employees may have either an

16  actual or a potential conflict of interest in representing

17  retired employees.  How do you address that concern?

18          MS. CECCOTTI:  A couple of ways, your Honor.  First,

19  unions that -- like the UAW that are very familiar with the

20  bankruptcy process and have served, as I said, in Chapter 11

21  cases for the most part undertaking those roles, are very

22  skilled in -- not only very skilled in the substance of the

23  subject matter but in making the internal institutional

24  decisions to undertake representation of both actives and

25  retirees.  They do not see an inherent conflict in taking on

1   both -- in taking on that -- I was going to say both roles,

2   but it really is a continuum.  It's really viewed as a whole,

3   and I'm speaking now really for the UAW.  You heard Ms.

4   Levine speak on behalf of AFSCME.  These are decisions that

5   individual labor organizations make based on their own

6   institutional history and organization and their own

7   institutional functioning.  We do not think it would be

8   appropriate for an outsider to simply make a blanket across-

9   the-board station that -- statement -- excuse me -- that

10  simply because we have a labor organization that is

11  representing a unit of actives, that labor organization is,

12  per se, disqualified.  The first question to ask is what does

13  that particular union think about that -- what is the

14  position of that particular union?  The UAW does not see an

15  inherent conflict and hasn't throughout its history.  It's

16  been actively involved in retiree matters as -- with respect

17  to retiree interests, not simply actives as future retirees

18  but current retirees.  They have -- and that is, again, part

19  of their history, so I think that it is not possible really

20  to make a blanket statement to that effect and that each

21  labor organization answers that question for itself and

22  should be permitted to do so given its own institutional

23  operation and history.

24          THE COURT:  Next question.

25          MS. CECCOTTI:  Um-hmm.

1        THE COURT:  You have argued that the Court has the

2    authority to give the U.S. Trustee's Office guidance.

3        MS. CECCOTTI:  Yes.

4        THE COURT:  What guidance would you propose?

5        MS. CECCOTTI:  Well, I would certainly propose

6    guidance to the effect of a definition of the scope.

7        THE COURT:  Right.

8        MS. CECCOTTI:  Right.  And I thought I heard Ms.

9    Lennox -- I couldn't quite hear her too clearly, but to the

10   extent the scope or anything about the scope has changed from

11   the time the motion was filed until today, whatever that

12   is --

13       THE COURT:  The scope is an easy one.  It's actually

14   inherent in the process.

15       MS. CECCOTTI:  Understood, but I guess my point

16   would be as long as we have a clear understanding -- as long

17   as -- the United States Trustee should have a clear

18   understanding of the scope of the committee.

19       THE COURT:  Okay.

20       MS. CECCOTTI:  It's also appropriate, I think, for

21   the Court to provide guidance concerning the pool, the

22   eligible pool.  Is it okay to solicit, particularly in light

23   of what you've heard today, retiree associations,

24   individuals, and unions?  And we think the answer to that

25   should be yes, and we --

1          THE COURT:  Okay.

2          MS. CECCOTTI:  -- think that the guidance would

3    ultimately help the U.S. Trustee devise its procedures and

4    make the process work that much more efficiently.  To the

5    extent the Court --

6          THE COURT:  So if I gave that guidance, that would

7    effectively be an authorization to the U.S. Trustee to choose

8    among those potential participants however it saw fit?

9          MS. CECCOTTI:  With one more piece of guidance, your

10   Honor, which is that -- and anything you'd like to say on

11   funding, we'd be -- by the city we'd be happy to hear that,

12   but that wasn't what I was going to say next.  What I was

13   going to say next is to the extent that -- well, not to the

14   extent.  Adequate representation is something that we do

15   think the Court should comment upon, and in this case,

16   although it seems like a lot when you say there are 47

17   bargaining units, I would doubt that there will be 47 people

18   clamoring to get on this committee, so the suggestion would

19   be that for adequate representation purposes, any group that

20   wants to participate should be permitted to participate

21   because you can't, practically speaking, for example, ask --

22   tell Unions A, B, and C, who show up ready and willing and

23   able to serve -- you can't say to them as a practical matter

24   there's too many of you; therefore, we're going to have Union

25   A represent the retirees for Unions B and C.  So we do think

1  that some adequate representation instruction along the lines

2  of what we've suggested here is appropriate just to avoid the

3  exclusion issue that we've suggested would be very

4  detrimental to the process, not to mention just the practical

5  implications of asking one -- with respect to the organized

6  groups, those that are organized, one group to try and

7  speak --

8          THE COURT:  Well, but isn't it appropriate for the

9  U.S. Trustee's Office to be concerned that in order for the

10  committee to actually function, it has to have a limited

11  number of people?

12          MS. CECCOTTI:  Understood, and that is certainly

13  part of their challenge.  No question about it.  We think,

14  though, that there is a point to be emphasized that while

15  there is -- there could be -- there could be a numerocity

16  issue, there is also very definitely in 1102 an adequate

17  representation issue so that in balancing those two, the

18  fundamental concept there should be adequate representation

19  and if there is an issue with respect to size, that that

20  would be something that would be taken up in the context of

21  determining adequacy of representation.

22          THE COURT:  Thank you.

23          MS. CECCOTTI:  Thank you.

24          THE COURT:  Sir.

25          MR. KARWOSKI:  Good afternoon, your Honor.  Michael

1  Karwoski.  I'm representing myself as an attorney who worked

2  for the City of Detroit Law Department for about 15 years.  I

3  retired about a year ago.  I draw a pension from the General

4  Retirement System of the city.  I can speak to -- I'd like to

5  just address two points briefly because I know it's been a

6  long morning, and we're into the afternoon.

7              Attorneys for the city who are not in management are

8  members of Public Attorneys Association 2211, which is

9  affiliated with the UAW.  For the 15 years that I was with

10 the city and a member of that union, the union did not

11 represent the interests of retirees.  In fact, there were a

12 number of issues where the union took positions that were

13 adverse to the interests of retirees because it seemed that

14 there's a limited amount of money available in the pension

15 system, and sometimes the active -- the interests of active

16 employees are different than those of retired employees, so I

17 would suggest that in terms of the structure of the

18 committee, that there should be a distinction between

19 retirees who are drawing a pension and those who are -- and

20 employees who are -- former employees or current employees

21 who have vested interests in future retirement benefits,

22 which may be different.

23             I have not seen the list of creditors that the city

24 filed yesterday evening.  I believe, as a retiree and someone

25 drawing a pension, I'm probably on -- I'm somewhere in that

1   list of -- in that 3,500-page list.

2           With respect to this motion, the city has given

3   notice to -- on page 16, paragraph 29, it indicates the

4   groups that it's given notice to, and I respectfully -- the

5   last sentence is, "The city submits that no other or further

6   notice need be provided."  I respectfully suggest that this

7   is essentially an ex parte motion at this point because the

8   group that has not gotten notice is the group that has the

9   most important interest in this motion, which are the

10  retirees themselves.  The groups -- not only have they not

11  gotten notice, but the groups that did get notice have an

12  interest adverse to the retirees.  They include the largest

13  creditors, the bondholders, the insurers, the large dollar

14  interests who -- to the extent that pensioners are involved

15  in the bankruptcy process and there's a limited amount of

16  money available to satisfy creditors, the less money that is

17  allocated to retirees through the committee process or

18  otherwise, the more money there is for the larger -- for the

19  other creditors.  So the groups that have gotten notice are

20  either the groups that are adverse to the interest of

21  retirees or the unions and the associations, which the

22  discussion that we've had so far, you know, is mixed at best

23  as to whether they have legal authority to represent retirees

24  and whether, in fact, they have interests that are contrary

25  to the interests of retirees.

1    My request is that the Court order that notice of
2  this motion be sent to all of the retirees of the City of
3  Detroit, the 12,000 who are drawing pensions and the
4  approximately 12,000 employees who have either a vested
5  pension or a vested interest in health benefits.  It's a
6  large number obviously.  It's about 24,000 people, but it's
7  24,000 out of a hundred thousand creditors of the city.  And
8  as the city has said, the alleged indebtedness of the
9  retirement system, the $3.5 billion, is one of the larger
10  debts at issue in this case along with the $6 billion of pay-
11  as-you-go health benefits.
12    From the standpoint of each individual retiree whose
13  average pension is $19,000 a year or less, knowing about this
14  process and having the basics of due process, notice and an
15  opportunity to be heard, are as essential or more essential
16  to those retirees as they are to the bondholders, the
17  insurers, the credit swap counterparties, whoever they are --
18  the notice is more important to the retirees because of
19  their -- the importance of their pension to them even though
20  the dollar amount of the individual pensions is small.
21    Stockton, California, which had about 2,000
22  retirees, in the appendix or attachment to its petition
23  listed the 2,000.  They listed the individual names.  They
24  listed the addresses in care of the pension boards to avoid
25  the privacy issue, which I understand caused the city to

1  withdraw the list that it originally filed.  It's certainly

2  doable to do that kind of a mailing, and, in fact, my

3  understanding is that the city has proposed doing a mailing

4  of that type somewhere down the road further in the process

5  using Kurtzman Carson Consultants to do that mailing.  It's a

6  day late and a dollar short to do the mailing after the

7  motion has been granted, after the committee has been

8  appointed, after the process has run its course.  It makes

9  more sense, I believe, in terms of fundamental fairness, due

10 process, and an opportunity to be heard for the Court to

11 order the city to send the motion to the retirees through

12 Kurtzman Carson, give them a short -- in the notice to the

13 retirees give them a short turnaround time to respond to it.

14 Some will, and some won't.  The city somewhat condescendingly

15 on page 13 refers to the retirees as basically a bunch of old

16 fogies who don't know what's going on and wouldn't know what

17 to do with the notice if they got it.  I suggest that that's

18 presumptuous on the part of the --

19        THE COURT:  All right, sir.  Thank you.  Who else

20 would like to be heard?

21        MR. KARWOSKI:  Thank you, your Honor.

22        MR. TAUBITZ:  May it please the Court, Dennis

23 Taubitz appearing on behalf of myself.  I'm a retiree of the

24 City of Detroit, and I'd like to make the following comments.

25 I concur with Mr. Karwoski.  I believe that this committee,

1   as proposed, would be a denial of the due process rights of

2   the 20,000 retirees.  I also believe it's premature.  I want

3   to assert that the retirees are not a member of a labor

4   union.  They don't pay dues to the union.  We don't have a

5   voice in the union.  The union, therefore, does not represent

6   the retirees.  Further submit that all 20,000 retirees

7   deserve a place at the table.  Thank you.

8           MS. GIANNIRAKIS:  Good afternoon, your Honor.

9   Again, Maria Giannirakis on behalf of the United -- Daniel

10  McDermott, United States Trustee.  Sorry.  Your Honor, the

11  United States Trustee does not take a position on the motion

12  here if an appointment of a committee is appropriate, but,

13  frankly, we filed a response to the UAW's -- we filed a

14  statement in response to the UAW's response that was filed

15  yesterday because what they are asking is that if the Court

16  does appoint a retiree committee, that it directs the U.S.

17  Trustee to appoint all labor organizations to that committee

18  or even some labor organizations, and I think other parties

19  have mentioned the same thing in court this morning.  This

20  relief is simply not available.  1102(a)(2) states if the

21  Court directs an additional committee to be appointed, the

22  U.S. Trustee will appoint a representative committee.

23  There's nothing that mandates the appointment of a particular

24  creditor.  If parties, after a committee is selected, deem

25  that it's inappropriate, 1104(a)(4) provides the relief that

1  they need, but that's not appropriate yet because at this

2  time there's no committee appointed, although the UAW

3  referenced that.  Frankly, 1102(a)(4) says if the committee

4  is appointed, after the appointment of the committee the

5  Court directs the U.S. Trustee to appoint, if a party deems

6  that it is not represented on the committee, then it has the

7  right to come back to the Court at that time, and then the

8  Court, if it finds that the committee is not adequately

9  represented, will direct the U.S. Trustee to change the

10  committee composition.  The request that the UAW is making is

11  not available at this time and is -- I'm sorry -- and is

12  premature if they're asking the Court to -- they're assuming

13  it's going to be a nonrepresentative committee, and that's

14  not appropriate at this time.

15         THE COURT:  If the Court grants the motion, what

16  would be the time frame for the U.S. Trustee to complete its

17  responsibilities?

18         MS. GIANNIRAKIS:  Your Honor, we have already

19  started discussions with the city and other parties.  We have

20  been working on doing this as quickly as possible if the

21  Court does grant the motion today.  In cases where there are

22  exigent circumstances, we have appointed committees almost

23  immediately, in as little as three days.  We don't anticipate

24  that'll happen here because it's a complicated case, and we

25  don't think we can quite proceed with that degree of speed,

1    but we will do everything in our power to appoint a committee

2    as promptly as possible and with a view towards all the

3    issues that are arising in this case.

4              THE COURT:  Thank you.

5              MS. LENNOX:  Thank you, your Honor.  I think there

6    are about half a dozen thematic objections that I'd like to

7    respond to in due course.  The first is about the motion

8    being premature.  This motion is not premature.  We do not

9    need to wait for an order for relief to be entered under

10   Section 1102(a)(2) of the Bankruptcy Code under a plain

11   reading of the statute's language.  The limiter that suggests

12   that the appointment of a committee should await the entry of

13   an order for relief is only in Section (a)(1).  If Congress

14   had wanted that limiter to apply to both Sections (1) and

15   (2), it could have placed the limiter in (a), and then it

16   would have modified both subsections.  It didn't do that, so

17   the motion from a statutory basis is perfectly proper and

18   perfectly timely.  Moreover, from a practical perspective,

19   your Honor, as many of the objectors themselves have noted,

20   the legacy issues in this case are exceedingly important and

21   complicated, and there's no reason to delay the discussions

22   of them.  In fact, discussions of them have already

23   commenced.  In fact, it would be irresponsible to delay the

24   appointment of a representative committee for those folks who

25   are not currently at the table.

1    With respect to the _Vallejo_ case that Ms. Brimer

2  pointed out, in that case, to the extent it made any

3  difference to the Court, that was not a case where the debtor

4  moved for a committee.  In fact, the debtor opposed the

5  committee in that case.  Here we are moving for the

6  committee.

7    Secondly, your Honor, with respect to notice, we do

8  state and we did in our motion and we did give notice to the

9  four retiree associations that are voluntary memberships of

10  currently retired persons that we were aware of.  In fact,

11  three of them have shown up today, and one of them claims to

12  represent 70 percent of the folks that are retired, so we do

13  think notice is appropriate.  This is a procedural process in

14  which we asked to appoint a committee to represent some

15  folks.  This is not s substantive process where we are asking

16  to compromise any claims that retirees may have, so under the

17  circumstances, we believe notice was perfectly appropriate.

18    Third -- and I've stated this before, so I'll just

19  make it clear on the record again -- we are not -- the city

20  is not participating in the selection of members of the

21  committee nor does the city intend to be involved in who the

22  committee selects as its professionals if it is appointed, so

23  we don't believe, as has been alleged in a couple of

24  pleadings, that there's any violation of Local Bankruptcy

25  Rule 2014-2 here.

1    Fourth, with respect to the notations and
2  reservation of rights -- and for this I would like to say
3  that the city does appreciate the thoughtful response that
4  was filed by AFSCME on this issue.  It was very constructive.
5  And we do confirm that by this motion the city is not seeking
6  to preclude a creditor or the committee itself, should it be
7  appointed, from weighing in on or objecting to any other
8  substantive issue in this case, including eligibility.  We
9  are not asking parties to waive those rights.
10    Fourth, one of the objectors has suggested there
11  should be more than one committee, and we submit there should
12  only be one committee.  The retirees in the two pension
13  systems have more in common than not.  Each has an
14  underfunded pension.  Each gets similar retiree benefits from
15  the city.  The legal issues to be addressed are substantially
16  similar, if not identical, but even if that were not the
17  case, your Honor, the whole purpose of having a committee is
18  to bring representatives of differing types of interests but
19  claims of the same legal priority together in one body to try
20  to work out a consensual plan.  You know, it's one thing for
21  a committee to negotiate with a debtor, but there are
22  differing interests on a committee.  That's the whole purpose
23  of it, and part of being on a committee is so that the
24  creditors can start working out their intercreditor issues as
25  well.  We think it's, therefore -- I mean on a normal regular

1  official unsecured creditors' committee, you have bondholders

2  and unions and trade vendors and, you know, a host of people

3  with differing interests.  That's the whole purpose of having

4  a committee.  So we think it's perfectly appropriate and

5  intended for members with different types of views and

6  interests to sit on one committee, and we think that applies

7  here as well.

8          And then finally, your Honor, this is the punch line

9  that everybody seems to have been waiting for.  As many of

10  the objections concede, a Chapter 9 debtor is not required to

11  pay for professionals of the committee.  Nevertheless, in

12  light of the special nature of this committee that the city

13  itself has sought, it is the city's current intent to pay for

14  the reasonable fees and expenses of the retiree committee

15  professionals, one committee's professionals.  If the

16  committee is formed, the city will have to certainly discuss

17  with the committee itself what's reasonable and rational

18  under the circumstances, and like it's done with its own

19  professionals, the city is going to look to maximize

20  efficiencies and economies among the committee's

21  professionals as well as all professionals in the case.  So,

22  accordingly and as most of the objectors have noted, it

23  wouldn't be inappropriate to put that in an order.  However,

24  the city did wish to make its intentions known on the record.

25          THE COURT:  Thank you.  In a few moments, the Court

1  will take under advisement the issue raised by this motion.

2  There is another committee that I think we should think about

3  here.  It would be a committee of tort claimants, tort

4  claimants, accident claims, civil rights claims, people who

5  have litigation pending or contemplated to be filed.  The

6  merit of this seems to me to be as much procedural as

7  substantive.  I think the last thing any of us wants is a

8  flood of motions for relief from stay filed by people with

9  lawsuits against the city to be permitted to pursue those

10  claims, and it seems to me there may be merit in the

11  appointment of a committee for the purpose of working out how

12  those will be handled.  They are quite complex because the

13  options of where those cases get resolved is quite wide;

14  right?  Under 28 U.S.C. 157(b), you know, personal injury

15  claims can be filed -- or can be tried in the District Court

16  or in the court that they were pending in, and it seems to me

17  that we ought to try to think of some way to manage that

18  potential chaos.

19          MS. LENNOX:  May I respond, your Honor?

20          THE COURT:  No.  Please think about that.  I don't

21  need a response right now, but at some point I think we need

22  to think about that issue.

23          MS. LENNOX:  Yeah.  We have thought about that on

24  many, many fronts about how to handle that.  In fact, we have

25  inquiries that have been made of us, and we do have what we

1   believe is a perfectly appropriate process at the right time

2   to resolve those kinds of claims that would not necessitate

3   the appointment of a committee.

4        THE COURT:  Okay.  All right.  Anybody else have

5   anything for today?

6        MS. LEVINE:  Your Honor, before you deliberate, can

7   we make one or two comments on the proposed form of order?

8        THE COURT:  Yes, please.

9        MS. LEVINE:  The order that was filed last night

10  seemed -- Sharon Levine, Lowenstein Sandler.  The order that

11  was filed last night seems to have resolved a lot of the

12  issues between the city and the U.S. Trustee, and we

13  appreciate those efforts.  Decretal paragraph one, though,

14  says the motion is granted, and we would respectfully submit,

15  as we've seen in a lot of orders in a lot of other cases, it

16  should just say the motion is granted as set forth herein

17  because then it would avoid the conflict with regard to

18  things that haven't been resolved.

19       In addition, at decretal paragraph five there's a

20  retention of jurisdiction which isn't limited with regard to

21  the reservation of rights that we've been discussing on the

22  record, so I just want clarification even if that -- unlike

23  decretal paragraph one, even if decretal paragraph five stays

24  the same, there's an understanding on the record --

25       THE COURT:  Yeah.  Well, let me just --

1          MS. LEVINE:  -- that the reservation of

2     jurisdiction --

3          THE COURT:  Let me just say broadly I do not favor

4     provisions in any order that say the Court retains

5     jurisdiction to do A, B, or C.  They are unnecessary and

6     confusing.  The law sets forth what the Court's jurisdiction

7     is, and that's what applies.

8          MS. LEVINE:  Thank you, your Honor.

9          THE COURT:  Okay.  It's now one -- something else,

10    sir?

11         MR. HACKNEY:  Sorry, your Honor.  I just -- Stephen

12    Hackney on behalf of Syncora.  I wasn't sure if you were

13    going to adjourn for the day or just for a lunch recess, but

14    there was a status conference on the motion pursuant --

15         THE COURT:  Yes.  I want to -- I want to contemplate

16    this committee issue and then come back and hear yours.  I

17    don't really want to take a lunch break, per se, because

18    that'll take altogether too long.

19         MR. HACKNEY:  Understood.

20         THE COURT:  So just give me 15 minutes to think

21    about this committee issue, come back, give a decision on

22    that, and then we'll get to the Syncora matter.

23         MR. HACKNEY:  Absolutely, your Honor.  Thank you.

24         THE COURT:  And we'll be in recess for 15 minutes,

25    please.

1          THE CLERK:  All rise.  Court is in recess.

2     (Recess at 1:00 p.m., until 1:14 p.m.)

3          THE CLERK:  All rise.  Court is in session.  Please

4     be seated.  Case Number 13-53846, City of Detroit, Michigan.

5          THE COURT:  The Court concludes that it is

6     appropriate to grant the motion of the city for the

7     appointment of a committee of retired persons.  The Court

8     concludes that the objection that this motion is statutorily

9     premature should be overruled.

10          As counsel for the city has pointed out, Section

11     1102(a)(2), which is the section on which the present motion

12     is based, does not require the Court to wait until after the

13     order for relief to appoint a committee.  Accordingly, by its

14     plain language, the Court does have the authority to grant

15     this relief, and so that objection is overruled.

16          It has also been argued here that this motion is on

17     inadequate notice because most, if not all, of the individual

18     retirees were not given notice of this motion.  The Court

19     concludes that that objection as well should be overruled.

20     This is simply a procedural motion that does not affect the

21     substantive rights of retirees or any other party, for that

22     matter, and, accordingly, the Court concludes that notice was

23     adequate, and that objection is overruled.

24          The Court commends and accepts the city's offer to

25     pay the reasonable expenses of the committee and proposes

1  that all such professional expenses be processed through the

2  fee examiner process.

3        Regarding the issue of scope, it is an important

4  part of the process to define the scope of the committee,

5  and, as noted a moment ago, the Court concludes that the

6  scope of the committee should be to represent the retirees of

7  the City of Detroit.  If the Court has any discretion on the

8  issue of whether to give guidance to the U.S. Trustee as to

9  the issue of adequate representation, the Court concludes in

10  this case that it would not be appropriate to exercise that

11  discretion.  The Court, rather, concludes that the issue of

12  who should serve on this committee should be left first to

13  the discretion of the U.S. Trustee, and if there are issues

14  or objections to the composition of the committee, there are

15  procedures in place under the Bankruptcy Code to address

16  that, and those issues will be addressed to the extent raised

17  in due course, so the Court will not make any statement on

18  the record at this time on this issue.

19        On the issue of adjusting the dates and deadlines

20  that we discussed earlier on in the status conference to

21  reflect the interest of the committee in participating fully

22  in the process, the Court concludes that that interest can be

23  accommodated by granting the committee a period of time after

24  it selects its attorneys to file objections to eligibility

25  and participate in the discovery as set forth in the proposed

1  dates and deadlines, so the Court will build that extra

2  leeway in for this one participant, so with that on the

3  record, the Court will grant the motion.

4          I do, however, want to address the representative of

5  the United States Trustee's office one more time.  Ma'am,

6  would you take the lectern for me?  I feel the need to take

7  one more try at pinning you down regarding how long this is

8  going to take because we have a very aggressive and tight set

9  of dates and deadlines here, and so I think it's important to

10  the process that I give your office a deadline as well.

11          MS. GIANNIRAKIS:  Your Honor, I appreciate that, and

12  I appreciate --

13          THE COURT:  How much time do you need?

14          MS. GIANNIRAKIS:  I don't have a specific answer.

15  All I can say is we will --

16          THE COURT:  If you don't give me a number, I'll make

17  one up.  And honestly, if I do it, it's going to be like

18  arbitrary and capricious and clearly erroneous.

19          MS. GIANNIRAKIS:  May I have a moment to consult --

20          THE COURT:  And none of us want that, so -- and I

21  don't know whether you're talking about three days, seven

22  days, fourteen days, twenty-one days.  I don't know what

23  you're thinking about.

24          MS. GIANNIRAKIS:  Your Honor, I don't think -- I

25  don't think it's possible to have a committee up and running

1  in three days, to be honest with you.  I mean we will --

2          THE COURT:  I wasn't asking you to.  What I'm

3  telling you is I don't know what the right answer is.  Do you

4  want time to consult with your colleagues?

5          MS. GIANNIRAKIS:  I do want time to consult with my

6  colleagues.  I do know --

7          THE COURT:  All right.

8          MS. GIANNIRAKIS:  I do know that we are concerned

9  with giving parties enough time to respond --

10          THE COURT:  Um-hmm.

11          MS. GIANNIRAKIS:  -- because we are --

12          THE COURT:  Right.

13          MS. GIANNIRAKIS:  -- we do have retirees here who --

14          THE COURT:  Right.

15          MS. GIANNIRAKIS:  -- may not have all the electronic

16  methods that we all have to get information.

17          THE COURT:  Right.  Okay.  Fair enough.  So I will

18  do the status conference on the Syncora motion while you

19  consult with your colleagues, and then we'll pick this back

20  up again.

21          MS. GIANNIRAKIS:  Thank you, your Honor.

22          THE COURT:  Okay.  Let's do that.

23          MR. HACKNEY:  Good afternoon, your Honor.  Stephen

24  Hackney on behalf of Syncora.

25          THE COURT:  Here's my question for you.

1        MR. HACKNEY:  Yes.

2        THE COURT:  Given the very restricted role that a

3   court plays in either reviewing the decision of a debtor to

4   assume or reject a contract or the decision of a debtor to

5   settle a dispute, why do you need discovery at all?

6        MR. HACKNEY:  So you've anticipated the first part

7   of our argument, your Honor, which was why we filed the

8   statement yesterday to express concerns that we had when you

9   take the proposed order that they have submitted to you and

10  the forbearance agreement and you lay them next to the Orion

11  agreement from the Second Circuit.  We have concerns that

12  that order would entail the Court making judicial findings,

13  judicial declarations that could foreclose the rights of

14  third parties, and you see --

15       THE COURT:  Okay.  If that's your concern, I will

16  assure you at the outset that my decision will be nothing

17  more than to approve the decision of the city to assume this

18  contract and enter into the settlement or disapprove of it.

19       MR. HACKNEY:  And that assurance is very helpful I

20  would say at the outset.  I would still say, though, your

21  Honor, that this is a sizeable transaction that the city is

22  proposing to potentially assume and perform under.  Whether

23  they can perform under it is obviously a subject of dispute

24  that I'll bracket, but whether or not this is within the

25  business judgment of both the city and potentially the

1   service corporation that's also a party to this contract,

2   what claims exactly are being compromised, why they're being

3   compromised now, the likelihood of success, so on and so

4   forth, where the city will get the money to potentially

5   perform under this agreement if it is entitled to perform,

6   bracketing our dispute about that, these are all important

7   questions that are -- unfortunately, they are fact-intensive.

8   And while it is true that the Court must defer to the city's

9   business judgment, to the extent it applies, with a serious

10  question around whether it applies when two of the three

11  parties to the transaction appear to be city officers with

12  duties to the city, the indemnification of the service

13  corporation directors, a number of factual issues, your

14  Honor, that's why we need discovery.

15          THE COURT:  Let's assume for a minute -- let's

16  assume for a minute that for any or all or some of the

17  reasons you have identified the city cannot demonstrate that

18  it has exercised appropriate business judgment.  Isn't the

19  answer to deny the motion --

20          MR. HACKNEY:  I believe --

21          THE COURT:  -- rather than grant all this discovery?

22          MR. HACKNEY:  I believe it would be, but I need the

23  discovery in order to inquire into that because remember,

24  your Honor, at Syncora we have been excluded from these

25  negotiations, so we do not know what's happened, what

1    meetings were involved, who discussed what with whom.  And we

2    also have serious questions about the interaction of the

3    forbearance agreement with the COPs and swap structure that I

4    discussed -- that I mentioned earlier, and so there are

5    ambiguities in the way the forbearance agreement works.

6    There are questions about the necessity of the casino

7    revenues.

8            THE COURT:  Okay.

9            MR. HACKNEY:  Yeah.

10           THE COURT:  Let's focus on ambiguities.  If the

11   ambiguities are such that it's not in the best interest of

12   the city to assume this contract or if the ambiguities are

13   such that the Court cannot say that the city exercised proper

14   business judgment in proposing to assume the contract, why

15   doesn't it suit your purposes just to argue the motion should

16   be denied?

17           MR. HACKNEY:  I think that's a fair point, your

18   Honor, but it's also very possible that parol evidence may

19   inform the resolution of the ambiguity in a way that leads to

20   informing the Court's decision about whether it should --

21   whether it should deny the motion or not, whether it's within

22   the business judgment or not.  I mean, your Honor, we are

23   talking about the city is purporting to use this --

24           THE COURT:  What I'm having a hard time doing is

25   reconciling your position on the one hand that the Court in

1   its very limited role here should not make any holdings or

2   findings about what this contract means or does or how it

3   impacts third parties with your interest in discovery on

4   those very questions --

5          MR. HACKNEY:  Well, I think that --

6          THE COURT:  -- unless you have some ulterior motive

7   because of your other litigation.

8          MR. HACKNEY:  And we do not, your Honor.  We do not,

9   but we are concerned that the city is going to attempt to

10  wrap itself up in the cloak of the order and say, "Now we're

11  entitled to act consistent with this forbearance agreement,"

12  and so we do have serious --

13         THE COURT:  Well, if the motion to assume is

14  granted, it's granted with all of the words and questions

15  about the contract.  There's nothing about the assumption

16  process that improves a debtor's position vis-a-vis other

17  parties; right?  We all understand that.

18         MR. HACKNEY:  I agree, and, your Honor, you are

19  speaking to the large majority of my concerns here, and so

20  I'm trying to react on my feet.  I do appreciate it.  I also

21  appreciate that you have considered our statement already

22  given the avalanche of information that's filed every week.

23  I guess what I would say, your Honor, is that we have not had

24  very much insight into what led to the forbearance agreement.

25  There are standards under 365 and 9019 that are applicable,

1 and to the extent we do have remaining objections

2 notwithstanding the Court's emphasis of its limited role, we

3 don't believe that we can meaningfully prepare for the

4 hearing without at least some discovery into what happened.

5       THE COURT: All right. I don't see it, so I'm going

6 to ask you to file a response to the motion within 14 days.

7 You can argue that the information that the debtor has placed

8 on the record is not adequate information for the Court to

9 make the judgments that the city is asking the Court to make,

10 and the Court will, of course, take that very seriously,

11 but -- so what I'm proposing is a response by you within 14

12 days and a hearing on the motion at our first omnibus hearing

13 date on August 21st. Any objection to that?

14       MR. HACKNEY: I guess subject to our objection to

15 the fact that our request --

16       THE COURT: Right.

17       MR. HACKNEY: -- for discovery is overruled.

18       THE COURT: Yeah. Apart from that. Sir, did you

19 want to be heard on this matter as well?

20       MR. MARRIOTT: If I might, your Honor.

21       THE COURT: Go ahead, sir.

22       MR. MARRIOTT: Your Honor, Vince Marriott, Ballard

23 Spahr. I'm embarrassed to tell you I cannot pronounce the

24 name of my client. It's also about a paragraph --

25       THE COURT: I'm assuming that's because it's not

1   English.

2           MR. MARRIOTT:  That's correct.  It's also about a

3   paragraph long.  The first two words look like Erste

4   Europaische.

5           THE COURT:  Okay.  That should be enough for our

6   purposes.  Thank you.

7           MR. MARRIOTT:  I like to refer to it as EEPK because

8   that's just easier.

9           THE COURT:  Okay.

10          MR. MARRIOTT:  We filed a preliminary objection to

11  the debtor's motion at Docket Number 246.

12          THE COURT:  I saw that.

13          MR. MARRIOTT:  And at Docket Number 246 you can see

14  the whole name.  Just a couple of additions to what Mr.

15  Hackney said.  First, the forbearance agreement, as I think

16  all of the papers indicate, isn't simply about -- or the

17  motion isn't simply about assumption of an agreement.  It's

18  also about settlement of certain potentially significant

19  claims that the estate might have against the swap parties

20  either as to the validity of the swaps, the amount that's due

21  under them, the perfection or priority of the --

22          THE COURT:  Um-hmm.

23          MR. MARRIOTT:  -- collateral interest in the casino

24  revenues, and, you know, the city in its motion basically

25  deals with those issues by saying, you know, they're

1   complicated.  They're hard.  It would take a lot of time to

2   litigate them, and we don't want to.  Nevertheless, one of

3   the justifications for the settlement is that it's $300

4   million in secured debt and, therefore, to the extent the

5   city can get out from under $300 million of secured debt so

6   that the collateralization and the amount of the claim -- all

7   of that is significantly relevant to consideration of the

8   motion.

9          When it comes to considering whether a settlement

10  agreement is fair and equitable, I think the Court's role is

11  a little more significant than passing on the business

12  judgment of the debtor in assuming or not a contract.  In

13  other words, I think the Court's involvement is a little bit

14  more, and the showing that the debtor has to make is a little

15  bit more substantial to approve a settlement than assumption

16  or rejection of a contract.  And at least in our view, your

17  Honor, the forbearance agreement is much more a settlement

18  than it is your -- what you normally would see as a contract

19  that a debtor is seeking to assume or reject.  And the fact

20  that the debtor is seeking to assume a settlement agreement,

21  although it's called a forbearance agreement, and the basis

22  upon which it is entering into that agreement impacts what

23  may be significant claims and impacts what may be significant

24  issues for unsecured creditors insofar as either the debt or

25  the swap obligations themselves --

1    THE COURT: Okay. But what I'm hearing from you is

2  the opening paragraph of your argument on August 21st.

3    MR. MARRIOTT: Yes, but I could make that argument

4  better if I had the opportunity to do some discovery and see

5  the documents that relate to the swap agreement, see the

6  documents that relate to the 2009 collateralization and

7  amendment to the service contract.

8    THE COURT: Is there any reason to believe that

9  these documents aren't in this data room?

10    MR. MARRIOTT: They may be in the data room, your

11  Honor, but to get into the data room -- the problem with the

12  data room is it has a lot of things in there that at least at

13  the moment my client is not interested in seeing because the

14  data room may very well contain material nonpublic

15  information that would put my client in a position of perhaps

16  impacting its ability to trade. We don't think any of the

17  documents that we would seek in connection with this motion

18  would be considered material nonpublic information. I think

19  they're public record or could be available through public

20  means, so we would prefer not to have to sign an NDA to get

21  into the data room for a bunch of stuff we don't want. We'd

22  rather make a document request for the limited things we do

23  want that wouldn't create the same issue.

24    THE COURT: Well, all right. I have to say I still

25  don't see it. Whether the debtor can establish the grounds

1 for its motion it doesn't seem to me to depend on anything

2 other than what they assert in their motion and what they

3 offer in court.  Now, having said that, as a creditor in the

4 case you're entitled to see any document you like that's

5 related to the financial condition of the city.  I said that

6 earlier, and I hope the city will cooperate with you in that

7 regard, but let's hold a hearing on this on October -- I'm

8 sorry -- August 21st.  Ms. Lennox or whomever, I should ask

9 you if that date is acceptable to you as well.

10          MR. SHUMAKER:  It is, your Honor.  Gregory Shumaker,

11 Jones Day.

12          THE COURT:  All right.  Is 21 -- excuse me.  Is 14

13 days enough time to file a response?

14          MR. PEREZ:  My name is Alfredo Perez, and I

15 represent FGIC, which is another monoline insurer that's

16 involved in this transaction.  Fourteen days is fine if it

17 applies to everybody.  Obviously that wouldn't preclude us

18 from arguing that this matter shouldn't be heard at this

19 time, but we can --

20          THE COURT:  Right.

21          MR. PEREZ:  -- respond in 14 days.

22          THE COURT:  Okay.  All right.  That will conclude

23 that status conference.  The Court will enter a scheduling

24 order accordingly.  We don't have our U.S. Trustee

25 representatives back here yet.  Was there something you

1   wanted to say, sir?

2          MR. SHUMAKER:  Yes, sir, your Honor.  Again, Gregory

3   Shumaker, Jones Day, for the city.  Just one thing that

4   I'm -- I'm sorry.

5          THE COURT:  Go ahead, sir.

6          MR. SHUMAKER:  I'm sorry.  I'd just note that one of

7   my colleagues asked that we ask that the hearing on the 21st

8   be an evidentiary hearing as opposed to just a preliminary

9   hearing.  I know it's a formality, but I thought I should

10  raise it.

11         THE COURT:  An evidentiary hearing at which what

12  evidence would be presented?

13         MR. SHUMAKER:  Well, the evidence in support of the

14  motion.

15         THE COURT:  You mean like a witness evidence or --

16         MR. SHUMAKER:  Right, exactly.

17         THE COURT:  -- or documentary evidence?

18         MR. SHUMAKER:  That's right, your Honor.

19         THE COURT:  Who would the witnesses be?

20         MR. SHUMAKER:  Well, we're not certain of that, but

21  we're sure there will probably be witnesses, including

22  potentially the emergency manager.

23         THE COURT:  If I grant that request, does that open

24  the door to discovery by those witnesses or of those

25  witnesses?

1    MR. SHUMAKER:  Well, I believe part of our -- the

2   presentation of our evidence is going to involve oral

3   testimony from a witness, so we believe there's probably

4   adequate opportunity for cross-examination, but that is what

5   we were planning, your Honor.

6    THE COURT:  All right.  Thank you for that

7   information.  In light of that -- sir.

8    MR. SMITH:  Your Honor, my name is Bill Smith.  I'm

9   counsel -- I've learned to be precise about this -- to U.S.

10   Bank in its role as custodian of the casino revenues and as

11   trustee for the certificates of participation.  That makes us

12   a party in interest.  It's unclear whether we are a creditor.

13    The dialogue you just concluded underscores, I

14   think, a relevant factor.  This is, as has been suggested to

15   you by other parties, a complex series of transactions.  If

16   the debtor proposes --

17    THE COURT:  I remain to be convinced of that.

18    MR. SMITH:  I apologize, your Honor.  I'm sorry.

19    THE COURT:  I remain to be convinced of that.

20    MR. SMITH:  We'd be -- well, I'm not certain we

21   oppose the transaction, so I'm not sure I'm the right person

22   to convince you.  There are able and capable people who I

23   believe are going to take a yeoman's shot at trying to do

24   that.  We believe, in the event that the debtor proposes to

25   present live testimony, it is worthwhile making available to

1   interested parties at least the documents that surround this

2   transaction, some of which are in the data room, some of

3   which are not. And so our suggestion is, to the degree that

4   you are disposed not to grant discovery, that you at least

5   make -- suggest to the city that it make available to any

6   person interested in opposing the transaction the transaction

7   documents themselves. Past that we have no view on

8   discovery, your Honor.

9          THE COURT: All right. Well, the city's suggestion

10   that they are proposing evidence at this hearing does cause

11   me to change my mind about discovery and to allow some

12   limited discovery, so by the same August 21st deadline, the

13   Court will ask the city to file a list of witnesses and a

14   list of documents that it intends to offer at the hearing and

15   to provide those documents to the city. In the two weeks

16   following, the Court will order the city to make available

17   for deposition those witnesses who it intends to call. As a

18   result, we won't have our hearing on August 21st. We'll have

19   it on August 28th. Anything further on this matter?

20          MR. GOLDBERG: What does that do to the response

21   time for the motion?

22          THE COURT: I want responses within 21 days --

23          MR. GOLDBERG: Twenty-one --

24          THE COURT: I'm sorry -- 14 days. Fourteen days.

25   Sorry. Okay. Let's get back to the issue of appointing a

1  committee of retired persons.

2          MS. GIANNIRAKIS:  Thank you, your Honor.  Thank you

3  for allowing us the opportunity.

4          THE COURT:  Sure.

5          MS. GIANNIRAKIS:  I was able to consult with my

6  client during that break, and our concern -- and I'll just

7  voice it briefly -- is --

8          THE COURT:  Uh-huh.

9          MS. GIANNIRAKIS:  -- unlike when we have a list of

10  unsecured creditors, we don't have the body of people that we

11  have to -- well, I guess we do now with 3,500 pages of people

12  to solicit.  And although there are parties here that we know

13  are interested and we're going to ask them for information,

14  we don't control how quickly we get those names and that

15  information.  We are going to post the questionnaire on the

16  website as soon as it's completed, and that will be done very

17  early, and it'll be available.

18          THE COURT:  What website?

19          MS. GIANNIRAKIS:  On the U.S. Trustee's Detroit

20  website.  I don't have that address, but it's the U.S.

21  Trustee's --

22          THE COURT:  U.S. Trustee's website?

23          MS. GIANNIRAKIS:  Right.  And it'll be very --

24          THE COURT:  Do you have any objection to posting it

25  on the city's website and the court's website as well?

1          MS. GIANNIRAKIS:  I'm sorry, your Honor.

2          THE COURT:  Do you have any objection to posting it

3    on the city's website and the court's website as well?

4          MS. GIANNIRAKIS:  Do not, your Honor.  As much as it

5    could be out there, we are not opposed to that.

6          THE COURT:  Okay.

7          MS. GIANNIRAKIS:  And we also know that in addition

8    to that, we're going to be doing mailings, and we're going to

9    have -- we have a body of constituents here that are probably

10   not all technologically savvy, so we want to be mindful of

11   that.

12         THE COURT:  Um-hmm.

13         MS. GIANNIRAKIS:  So with that said, your Honor, we

14   are going to endeavor to do this as quickly as possible, but

15   we believe we need at least the outline of 21 days.

16         THE COURT:  Um-hmm.  All right.

17         MS. GIANNIRAKIS:  And if we can do it sooner, we

18   will do it sooner.

19         THE COURT:  All right.  I will set that deadline for

20   you.  If there's cause to extend that, you can file a motion,

21   and the Court will, of course, give that every consideration.

22   Anything further for today, or are we done?  I just -- I want

23   to make one more statement.  Was there something you wanted

24   to say, sir?  I didn't mean to cut you off.  Okay.  Give me

25   one second.

1        This is quite out of the ordinary, but before we

2  conclude I do want to take a moment to thank the United

3  States District Court and its judges for very generously

4  offering us the use of their space and for adjusting their

5  schedules to allow this and future hearings.  I also want to

6  thank the clerk of the District Court, Dave Weaver, and the

7  clerk of the Bankruptcy Court, Katherine Gullo, as well as

8  their staffs for their monumental efforts in arranging and

9  setting up all of this.  It was an extraordinary challenge

10  with very short notice, and they met that challenge with

11  grace and with expertise and in the very best spirit of

12  public service.  And I'd like to break our decorum and ask

13  you to give them a round of applause.  And we are adjourned.

14        THE CLERK:  All rise.  Court is adjourned.

15     (Proceedings concluded at 1:43 p.m.)

INDEX


<u>WITNESSES:</u>

None

<u>EXHIBITS:</u>

None


I certify that the foregoing is a correct transcript from the sound recording of the proceedings in the above-entitled matter.


/s/ Lois Garrett                      August 9, 2013
_____           _____
Lois Garrett