# Exhibit 6(E)

# City's Motion for Protective Order

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CITY OF DETROIT, a Municipal Corporation Organized and Existing Under the Laws of the State of Michigan<br><br>Plaintiff,<br><br>v.<br><br>SYNCORA GUARANTEE INC., a New York Corporation,<br><br>and<br><br>U.S. BANK, N.A.,<br><br>and<br><br>MGM GRAND DETROIT, LLC,<br><br>and<br><br>DETROIT ENTERTAINMENT, LLC, d/b/a MOTORCITY CASINO HOTEL,<br><br>and<br><br>GREEKTOWN CASINO, LLC,<br><br>Defendants. | Case No.: 2:13-cv-12987-LPZ-MKM<br><br>Hon. Lawrence P. Zatkoff |

**CITY OF DETROIT'S MOTION FOR PROTECTIVE ORDER**

On Friday, July 12, 2013 at 5:17 pm the City received emergency motion papers from Syncora seeking Court approval to dissolve a temporary restraining order and conduct broad and expansive discovery on a breakneck schedule. Syncora served these demands notwithstanding the fact that the City had earlier that afternoon expressed its willingness to dissolve the TRO and

1

indefinitely postpone a preliminary injunction hearing that had been scheduled. Syncora demanded that the City and seven additional parties and non-parties, including U.S. Bank, each of the City's two service corporations, Ernst & Young, UBS AG, SBS Financial Products Company, and even the City's outside lawyers respond to 138 document requests in less than a week. Additionally, Syncora sought to depose City of Detroit Emergency Manager Kevyn Orr and six corporate representatives from parties and non-parties on or before July 26, 2013.

As the Court is aware from the City's Preliminary Response and Notification of Consent, the emergency that necessitated the TRO against Syncora has now passed, and a settlement with the swap counterparties has been effectuated. As a result, the City does not require injunctive relief against Syncora at this time. The City has not only agreed to dissolve the TRO issued by the Wayne County Circuit Court on July 5, 2013, but also to postpone its request for a preliminary injunction indefinitely.

In light of these developments, none of Syncora's proposed discovery even arguably relates to the only outstanding request for immediate attention from the Court, namely Syncora's last minute, unsubstantiated demand that the City return the $15 million of Casino Revenues to which it gained access as a result of the state court's TRO. As demonstrated by the City's separate filing today, none of this discovery is required for the Court to dispense with this baseless request. And even though the vast majority of the discovery Syncora seeks relates solely to the City's efforts to get a TRO that it has agreed to dissolve, Syncora refuses to withdraw its discovery requests. The reason is clear: this discovery was intended to harass the City for obtaining a TRO that kept Syncora from continuing its effort to financially strangle the City.

Against this background, there is no good reason why discovery should not proceed in this matter under the standard schedule contemplated by the Federal Rules of Civil Procedure, the local rules of this District, and the Court's Practice Guidelines. To wit, this case was removed on Thursday, July 11, 2013, just 4 business days ago. No answer or dispositive motion has been filed, and by the rules of this Court no Federal Rule 16(b) initial scheduling conference will be set until such time. Notwithstanding the City's initial need to obtain a TRO, this lawsuit is still very much in its infancy.

Absent Court order, Federal Rule 26(d)(1) prohibits parties from propounding discovery until they have conferred under Rule 26(f). A Rule 26(f) discovery conference, which ordinarily occurs at least 21 days before the initial scheduling conference under Rule 16(b), serves a number of important purposes. It allows the parties to exchange views on discovery scope, timing, and limitations, and in complex cases such as this to plan for the orderly schedule and sequencing of bilateral discovery. With enough time and notice, counsel for the parties can have a reasoned exchange of views, engage on important topics and likely disputes, and resolve differences without the need for Court intervention. None of that has happened here.

Unable to make the necessary showing of good cause for expedited discovery, Syncora still refuses to withdraw or limit its Emergency Motion and related discovery requests. Ex. A, Irwin Decl. at ¶¶ 2-7. A good faith effort to resolve this dispute without Court intervention under Federal Rule 26(c) and Local Rule 7.1(a) having proven unsuccessful, the City has no choice but to seek an appropriate protective order from the Court.

## BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

### ISSUE PRESENTED

Whether good cause exists for Syncora's expansive discovery on an expedited basis and prior to a Rule 26(f) discovery conference when the City has agreed to dissolve the temporary restraining order at issue here and withdraw its request for a preliminary injunction.

## RELEVANT AUTHORITIES

Federal Rule of Civil Procedure 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order."

*Psychopathic Records Inc. v. Anderson*, No. 08-13407, 2008 BL 251694, at *2 (E.D. Mich. Nov. 7, 2008) and other decisions in the Eastern District of Michigan impose a requirement that, in addition to a showing of good cause, expedited discovery must be "narrowly tailored to only seek the discovery that is warranted at [this] early stage of the litigation." *See also Dassault Systemes, S.A. v. Childress*, No. 09-10534, 2009 BL 232734, at *4 (E.D. Mich. Oct. 27, 2009).

Federal Rule of Civil Procedure 26(c) permits a Court, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of discovery or disclosure to certain matters ...."

5

## ARGUMENT

On Monday morning, July 15, 2013, the City filed a preliminary response to Syncora's emergency motions confirming what it told Syncora's counsel on Friday afternoon: it is willing to dissolve the outstanding temporary restraining order. Syncora responded later that day and continued to press forward on its Emergency Motions on the pretext that the City's refusal to return $15 million of Casino Revenues to its bank account at U.S. Bank necessitates emergency attention from this Court. Thus, even according to Syncora, the only possible dispute requiring this Court's immediate focus is now the return of these funds.

We address why Syncora has no rights to the funds in the City's Brief in Opposition to Defendant Syncora Guarantee Inc.'s Emergency Motion To Dissolve The Temporary Restraining Order And Conduct Expedited Discovery filed separately today. This Motion for Protective Order addresses the oppressive discovery demanded by Syncora in support of its improper request for disgorgement.

The discovery that Syncora seeks in its Emergency Motion is remarkably expansive and overbroad under any standard, but when considered in the context of an action where there is no outstanding request for preliminary injunctive relief, it has no justification whatsoever. Syncora seeks 138 categories of documents—exclusive of subparts—covering a wide range of topics. With no limitation as to time period, Syncora seeks broad discovery with regard to the City's financial condition, its plans for dealing with its current financial difficulties, its negotiations with all of its creditors, all of its duties and obligations under numerous financial agreements, its

decisionmaking and use of funds from various revenue streams, and other generalized categories. *See* Ex. B (summarizing document requests)[1].

The targets of this discovery would not only be the City and U.S. Bank, but also the City's lawyers, and five other non-parties as well. Moreover, if the City's July 18, 2013 return date is any guide (giving it just four business days to comply), Syncora's schedule would be virtually impossible for any of the parties to meet even with infinite resources.

Even if compliance were requested over the course of a reasonable time period, the burden and cost to the City would be extreme. The requests to the City—without any narrowing that a Rule 26(f) conference, for example, would afford—do not contain a standing instruction or limitation of any sort on the time period for responsive documents. In other words, as currently framed the document requests on these topics are essentially limitless. The time and expense associated with reviewing and identifying such records and preparing them for production would be massive, not to mention the time and expense that would be required for the City to review and analyze the document productions from other parties and non-parties. Ex. A, Irwin Decl. ¶¶ 8-9. Preparation and attendance at seven depositions would be equally time-consuming, all at a time when the City can ill-afford significant distractions from the financial crisis that its Emergency Financial Manager is attempting to resolve.[2] *Id*. ¶¶ 10-11.

---

[1] For the Court's convenience, in Exhibit B the City has summarized and grouped by category the various document requests that have been directed to all intended recipients. Copies of the proposed discovery requests themselves are also attached as Exhibits C-Q.

[2] It is noteworthy that the Court of Appeals for the State of Michigan has determined that Mr. Orr, whose deposition is one of seven that Syncora seeks, is a high-ranking public official whose deposition may only be taken in a state court proceeding upon a showing that the information "cannot be obtained from any other discovery source or mechanism" and "that such deposition is essential to prevent prejudice or injustice." *See* Ex. 1 to Irwin Decl., Order, *Davis v. Local Emergency Financial Assistance Loan Board*, L.C No. 13-00281-NZ, (Mich. Ct. App. May 13, 2013) (reversing decision to allow deposition of Orr and others).

As the City has demonstrated by separate filing today, Syncora's request is neither legally sound nor procedurally proper. *See* Brief in Opposition to Defendant Syncora Guarantee Inc.'s Emergency Motion To Dissolve The Temporary Restraining Order And Conduct Expedited Discovery, dated July 17, 2013, at 14-22. Even if it could make a request for equitable disgorgement in the manner it has, the issue would largely be a legal question. To the extent any factual discovery is necessary to establish the *status quo ante*—including the parties' course of dealing in allowing the City to have access to Casino Revenues for four years prior to Syncora's illegal instruction to U.S. Bank—it can certainly be accomplished without the vast majority of the vexatious discovery that Syncora has proposed be completed in the next few days.[3]

Federal courts in Michigan require a party seeking expedited discovery in advance of a Rule 26(f) conference to carry the burden of "showing good cause in order to justify deviation from the normal timing of discovery." *Gen. Ret. Sys. of City of Detroit v. Onyx Capital Advisors, LLC*, No. 10-cv-11941, 2010 BL 124373, at *4 (E.D. Mich. June 3, 2010) (denying plaintiffs' request for expedited discovery because they failed to show good cause or need to deviate from a normal discovery schedule); *Diplomat Pharmacy, Inc. v. Humana Health Plan, Inc.*, No. 1:08-CV-620, 2008 BL 155256, at *1-2 (W.D. Mich. July 24, 2008) (denying plaintiff's request for expedited discovery because it did not meet its burden of showing good cause or need for expedited discovery).

---

[3] The Sixth Circuit has repeatedly held that Federal Rule of Civil Procedure 26 permits a district court to issue a protective order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of good cause. *See, e.g., Graves v. Bowles*, 419 Fed. Appx. 640, 645 (6th Cir. 2011) (district court did not abuse its discretion in issuing a protective order); *Nix v. Sword*, 11 Fed. Appx. 498, 500 (6th Cir. 2001) (affirming the district court's grant of a motion for a protective order); *Coleman v. Am. Red Cross*, 979 F.2d 1135, 1138 (6th Cir. 1992) (affirming the district court's protection order).

In cases where this Court has permitted expedited discovery, the discovery requests have been narrowly tailored so as to avoid undue burden and expense. *See*, *e.g.*, *Psychopathic Records Inc. v. Anderson*, No. 10-cv-11941, 2008 BL 251694, at *2 (E.D. Mich. Nov. 7, 2008) (granting expedited discovery in part because plaintiffs' request was narrowly tailored, seeking only the discovery that was warranted at an early stage of litigation); *Dassault Systemes, S.A. v. Childress*, No. 09-10534, 2009 BL 232734, at *4 (E.D. Mich. Oct. 27, 2009) (granting plaintiff's request for expedited discovery because it was directed at a third party in possession of defined and pre-existing collection of materials).

The overbroad discovery that Syncora seeks here is neither narrowly tailored nor relevant to any aspect of its disgorgement request. In fact, many of the requests fail to satisfy any conceivable test for relevance or the threshold discoverability standards under Federal Rule 26(b)(1). A number of Syncora's requests, for example, inquire into the City's discussions with any and all of its creditors or stakeholders, regardless of context. Requests seeking "all documents or communications" relating to the City's "promises to stakeholders," its ten-year financial projections, or its "ongoing negotiations or proposed settlements" with its creditors (*see* Ex. B at 2-3), plainly exceed what would be necessary or relevant to test the limited issues that would come up in any expedited proceeding required here, and bear little, if any, relevance to the issues that require ultimate resolution. Similarly, Syncora's broad requests into the City's general financial health, or the Emergency Manager's plan to address the City's short- and long-term financial needs are not only grossly overbroad, but also have nothing to do with what is now at issue in this lawsuit. *See* Ex. B at 1-2.

Other requests similarly relate to subjects that are neither emergent nor relevant at this early time. For example, certain requests focus on the harm that Syncora's conduct has caused

9

the City. *See* Ex. B at 11-12. Whatever may be pertinent to the question of damages at a later date, there is no present request by the City for temporary or preliminary injunctive relief against Syncora, and no need in the next 10 days for either party to conduct widescale discovery on the question of what injuries the City has suffered due to Syncora's conduct. Similarly, Syncora has requested documents relating to the City's position that it faced irreparable harm without notice to Syncora of its application for injunctive relief from the Wayne County Circuit Court on July 5. *See* Ex. B at 12. Since the City has agreed to dissolve the TRO, that question is entirely moot.

Even if they were not premature, many of Syncora's other requests lack any focus or specificity. One such request seeks all documents or information relating to "the allegations in paragraphs 53-61, 63-68, 70-73, and 74-79 of the Complaint." *See* Ex. B at 13. These are references to all of the substantive paragraphs pled in connection with each of the City's counts against Syncora. Even a casual review of the paragraphs in the Complaint demonstrates that this kind of potentially limitless, catch-all request will inevitably sow confusion and disagreement. This type of request far exceeds what could possibly be relevant to any issue in need of immediate attention from this Court.

Similarly, document requests seeking "all documents or communications relating to the City's attempts to realize additional sources of cash or revenue," or those "relating to Kevyn Orr's authority over the Service Corporations" (*see* Ex. B at 11, 14), are both confusing and absurdly overbroad. By the same token, other requests are potentially limitless, such as Syncora's request for any and all documents "relating to the City's efforts and abilities to deliver municipal services." *See* Ex. B at 1-2. The unlikely return of any documents that are actually relevant to this dispute in response to such requests cannot justify the enormous burden of compliance on the City. *See* Ex. A, Irwin Decl. ¶¶ 8-9.

Still other requests seek information that has no bearing on this dispute whatsoever. Syncora's interest in documents and information surrounding the City's decision not to make a June 14, 2013 payment to certain holders of debt instruments entitled Certificates of Participation, or "COPs", is particularly misguided. *See* Ex. B at 6. Non-payment either did or did not constitute an event of default under the Collateral Agreement at issue here, but the reasons behind the City's decision have nothing to do with that analysis. There is similarly no good reason why Syncora needs to know "the current or potential uses of the approximately $40 million" that the City declined to pay. *See* Ex. B at 6. Forcing the City to search for and produce "all documents or communications" relating to Syncora's insurance of the COPs payments or the City's "obligations to the Service Corporations" under any of the COPs-related agreements (*id.*) would be equally oppressive and vexatious in light of their dubious relevance now or in the future.

Even if Syncora's emergency motion could somehow be properly converted into a TRO application and the Court were required to address Syncora's likelihood of success on the merits of its claim for the City's return of $15 million, the core issues in any such proceeding would be fairly narrow. In fact, liability would turn almost entirely on two questions: (1) does Syncora have a contractual right under the Collateral Agreement to instruct U.S. Bank to withhold Casino Revenues from the City under Section 5.4; and (2) did the City's failure to make a $40 million payment to COPs-holders on June 14, 2013 constitute an event of default under the same section? Particularly since the threshold issue is a question of pure contractual construction (even according to Syncora itself, *see* Emergency Motion at 14-16), it is unfathomable as to why Syncora needs the documents it has requested.

11

Perhaps there is no better example of the true motives behind Syncora's oppressive discovery demands than its desire to propound extensive document requests directly on Jones Day, counsel to the City on numerous issues relating to the City's financial crisis broadly and litigation counsel to the City in this lawsuit.  In fact, of the 31 document requests that Syncora proposes to deliver to the City directly, no fewer than 30 of those requests are also directed verbatim to Jones Day.  *See generally*, Ex. B.  Notwithstanding the rather obvious overlap between the two sources of information, Syncora's callous disregard for the degree to which its requests to Jones Day call for privileged materials and information is staggering.  The privilege log alone would take weeks to create.  Plainly this is an attempt to harass and burden the City and its lawyers with intrusive discovery where Syncora has no reasonable expectation of a responsive production.

What is apparent from Syncora's recent tactics is that, without Court intervention, Syncora will deploy abusive discovery practices in order to inflict maximum disruption on the City and its efforts to navigate these difficult times.  These are not requests seeking "only that information which is necessary to determine whether injunctive relief is necessary."  Emergency Motion at 24.  They are far broader, and they do not meet the discovery standards under Federal Rule 26.  Particularly in light of the City's agreement to stand down on its request for injunctive relief, there is no good reason to impose such a crushing burden on parties and non-parties alike.

For all of these reasons, the City seeks an appropriate protective order under Federal Rule 26(c).  Specifically, the City requests an order relieving it of any obligation to respond to the instant discovery requests from Syncora.  Further, the City seeks a Court order prohibiting Syncora from initiating any discovery from any source until the parties have conferred under

Federal Rule 26(f) and agreed upon a schedule for the orderly conduct of mutual discovery in this matter.

## CONCLUSION

For the reasons set forth above, this Court should deny Syncora's motion for expedited discovery and issue a protective order in the form requested.

Dated: July 17, 2013

/s/Deborah Kovsky-Apap
Robert S. Hertzberg
Deborah Kovsky-Apap
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
(248) 359-7300 - Telephone
(248) 359-7700 - Fax
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

Thomas F. Cullen, Jr.
Gregory M. Shumaker
Geoffrey S. Stewart
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-3939
tfcullen@jonesday.com
gshumaker@jonesday.com
gstewart@jonesday.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2013, I electronically filed the foregoing *City of Detroit's Motion for Protective Order*, *Brief in Support of Motion for Protective Order* and this *Certificate of Service* with the clerk of the court using the ECF system, which will send electronic notice to the following ECF participants:

Andrea L. Hansen    ahansen@honigman.com

Brendan H. Frey    bfrey@manteselaw.com, ssikorski@manteselaw.com

Dirk H. Beckwith    dbeckwith@fosterswift.com, jdickinson@fosterswift.com

Gerard V. Mantese    gmantese@manteselaw.com, bren@manteselaw.com

Ian M. Williamson    iwilliamson@manteselaw.com, ssikorski@manteselaw.com

Jennifer Z. Belveal    jbelveal@honigman.com, mjohnson@honigman.com

Robert S. Hertzberg    hertzbergr@pepperlaw.com


Dated:  July 17, 2013                          /s/ Deborah Kovsky-Apap
                                               Deborah Kovsky-Apap
                                               PEPPER HAMILTON LLP
                                               4000 Town Center, Suite 1800
                                               Southfield, MI  48075
                                               (248) 359-7300  -  Telephone
                                               (248) 359-7700  -  Fax
                                               kovskyd@pepperlaw.com