## Exhibit F

**2006 Trust Indenture**

# Trust Agreement

between the

## Detroit General Retirement System Service Corporation

and the

## Detroit Police and Fire Retirement System Service Corporation,

severally and not jointly,

and

## U. S Bank National Association,

as Trustee

**Dated June 12, 2006**

establishing the

### Detroit Retirement Systems Funding Trust 2006

and providing for the issuance of

**Detroit Retirement Systems Funding Trust 2006
Certificates of Participation Series 2006-A**
and
**Detroit Retirement Systems Funding Trust 2006
Certificates of Participation Series 2006-B**

1974114.0058/401808

## Table of Contents

**Section 1.** Incorporation by Reference ........................................................................... 1

**Section 2.** Definitions ...................................................................................................... 1

**Section 3.** Establishment of Funding Trust; Trust Estate ................................................ 2

**Section 4.** Establishment of Funding Costs .................................................................... 3

**Section 5.** Representation and Warranty of Each Corporation........................................ 3

**Section 6.** The Initial Certificates................................................................................... 3

**Section 7.** Miscellaneous. ............................................................................................... 4

**Section 8.** Insurance Claim Procedures .......................................................................... 4


**Signatures** .........................................................................................................S-1 et seq.

    **Detroit General Retirement System** and

    **Detroit Police and Fire Retirement System** ........................................................... S-1

    **U.S. Bank National Association** ............................................................................ S-2

**Exhibit 6.2 – Form of Initial Certificates**

This **Trust Agreement**, dated June 12, 2006, between the **Detroit General Retirement System Service Corporation** (the *GRS Corporation*) and the **Detroit Police and Fire Retirement System Service Corporation** (the *PFRS Corporation*), each a Michigan nonprofit corporation, severally and not jointly, and **U.S. Bank Trust National Association,** as trustee,

## W I T N E S S T H

**Whereas**, the GRS Corporation entered into the GRS Service Contract 2006, dated June 7, 2006 (the *GRS Service Contract*), with the City of Detroit (the *City*), and the PFRS Corporation entered into the PFRS Service Contract 2006, dated June 7, 2006 (the *PFRS Service Contract*), with the City;

**Whereas**, the *Trust Agreement* referred to in the first paragraph of this instrument (i) consists of this instrument (the *Specific Terms*) and the **General Terms,** hereafter defined and incorporated by reference herein and (ii) is further defined in the General Terms;

**Whereas**, the GRS Corporation is entering into this Trust Agreement in order to fund its Stated Funding Amount, which, as defined in GRS Service Contract, is equal to $352,696,000 (the *GRS Stated Funding Amount*);

**Whereas**, the PFRS Corporation is entering into this Trust Agreement in order to fund its Stated Funding Amount, which, as defined in PFRS Service Contract, is equal to $595,844,000 (the *PFRS Stated Funding Amount*); and

**Whereas**, this Trust Agreement provides for the issuance of certificates of participation representing undivided interests in certain of the respective Service Payments, as defined in the Service Contracts;

**Now, Therefore**, in consideration of the premises and the mutual promises contained herein, the parties hereto agree as follows:

### Section 1.     Incorporation by Reference

#### 1.1.     General Terms

The **General Terms and Conditions of Detroit Retirement Systems Funding Trusts,** dated as of May 1, 2005, and attached hereto (the *General Terms*) is incorporated by reference herein and made a part hereof as if set forth in full in this Trust Agreement *except* to the extent of any conflict with any particular terms of the General Terms may conflict with the terms of these Specific Terms. Any such conflict shall be resolved in favor of the terms of these Specific Terms.

### Section 2.     Definitions

#### 2.1.     Certain Definitions

The following terms have the following respective meanings for the purposes of this Trust Agreement *unless* the context otherwise clearly otherwise requires.

*Additional Certificates* means one or more series of participation certificates established by supplement to this Trust Agreement.

*Certificates* means the Initial Certificates and any Additional Certificates.

*Corporation* means either the GRS Corporation or the PFRS Corporation as the context may require.

*Funding Trust* means the Funding Trust established by this Trust Agreement.

*GRS Corporation* means the corporation defined in the first paragraph of these Specific Terms as the "GRS Corporation" *unless and until* a Person becomes the successor to the GRS Corporation pursuant to law; *thereafter*, *GRS Corporation* means such successor.

*Index Rate Interest* means an amount equal to Interest computed with respect to the Principal Amount of Outstanding Index Rate Certificates determined for the particular Index Rate Interest Period at the applicable rate in accordance with the Index Rate Supplement.

*Initial Certificates* means the certificates of participation of the series established in **Section 6**.

*PFRS Corporation* means the corporation defined in the first paragraph of these Specific Terms as the "PFRS Corporation" *unless and until* a Person becomes the successor to the PFRS Corporation pursuant to law; *thereafter*, *PFRS Corporation* means such successor.

*Service Contract* means either the GRS Service Contract or the PFRS Service Contract as the context may require.

*Stated Funding Amount* means the GRS Stated Funding Amount or the PFRS Stated Funding Amount as the context may require.

*Trustee* means the bank described in the first paragraph of these Specific Terms as "trustee" *unless and until* a successor as trustee is appointed pursuant to this Trust Agreement; *thereafter*, *Trustee* means such successor.

## 2.2. Interpretation

2.2.1. Unless otherwise provided, references to Sections with numbers less that 100 are references to the corresponding Sections of these Specific Terms.

2.2.2. Unless otherwise provided, references to Sections with numbers 100 or greater are references to the corresponding Sections of the General Terms.

2.2.3. References to Schedules and Exhibits refer to the corresponding schedules and exhibits attached hereto unless otherwise provided.

## Section 3. Establishment of Funding Trust; Trust Estate

3.1.1. There is hereby established a Funding Trust to be known as the *Detroit Retirement Systems Funding Trust 2006* for the purpose of funding the respective Stated Funding Amount of each Corporation on an aggregate, several and not joint, basis.

3.1.2. The Trust Estate consists of:

- The Funding Trust Receivables arising under the GRS Service Contract

- The Funding Trust Receivables arising under the PFRS Service Contract

- All proceeds of the foregoing

2

13-53846-tjt    Doc 360-7    Filed 08/16/13    Entered 08/16/13 18:32:21    Page 5 of 60

**Section 4.    Establishment of Funding Costs**

The Funding Costs that each Corporation shall incur in funding the portions set forth below of its respective Stated Funding Amount shall be determined in accordance with the Funding Rate Methodology set forth before each such portion.

<strong>Funding Table</strong>

| Funding Rate Methodology | Stated Funding Amount Portion | | Total Stated Funding Amount |
|---|---|---|---|
| | **GRS Corporation** | **PFRS Corporation** | |
| Fixed Rate .............. | $68,950,000 | $79,590,000 | $148,540,000 |
| Index Rate .............. | $283,746,000 | $516,254,000 | $800,000,000 |
| **Total**........................ | $352,696,000 | $595,844,000 | $948,540,000 |

**Section 5.    Representation and Warranty of Each Corporation**

Each Corporation represents and warrants for itself that the Stated Funding Amount Portion set forth under its name in the table in **Section 4** (the ***Funding Table***) opposite the respective Funding Rate Methodology is equal to the total amount of Scheduled Payments for the Service Charge Class for the corresponding Funding Rate Methodology in the Scheduled Payments Attachment to its Service Contract.

**Section 6.    The Initial Certificates**

**6.1.    Title**

The general title of the Initial Certificates shall be as provided in **Section 303** of the General Terms with the further designation of this Funding Trust.  The title of each Series of the Initial Certificates shall include the series designation provided in this Section so that the general title of the Certificates of each Series shall be ***Detroit Retirement Systems Funding Trust 2006 Certificates of Participation Series*** [*particular Series designation*].

**6.2.    Establishment of Series; Form; Denominations**

6.2.1.   Two Series of Initial Certificates are hereby established:

6.2.1(1)   One Series to be designated ***Series 2006-A*** (the ***Fixed Rate Certificates***), and

6.2.1(2)   One Series of Initial Certificates is hereby established to be designated ***Series 2006-B*** (the ***Index Rate Certificates***).

6.2.2.   The Initial Certificates shall be substantially in the form prescribed in **Exhibit 6.2.**

6.2.3.   The Capital Appreciation Certificates shall be in denominations of $5,000 of Maturity Value and any multiple thereof.

6.2.4.   The Fixed Rate Certificates shall be in denominations of $5,000 and any multiple thereof.

13-53846-tjt    Doc 360-7    Filed 08/16/13    Entered 08/16/13 18:32:21    Page 6 of 60

6.2.5. The Index Rate Certificates shall be in the denominations of $25,000 and multiples of $1,000 in excess thereof.

**6.3.    Accretions in Value**

The Principal Amount of the Capital Appreciation Certificates of each respective maturity Date shall accrete in value in accordance with the Schedules of Accreted Values that are part of the Service Contracts.

**6.4.    Authorized Principal Amount**

6.4.1. The Principal Amount of the Capital Appreciation Certificates on initial issuance shall equal the Total Stated Funding Amount set forth opposite Capital Appreciation in the Funding Table.

6.4.2. The Principal Amount of the Fixed Rate Certificates on initial issuance shall equal the Total Stated Funding Amount set forth opposite Fixed Rate in the Funding Table.

6.4.3. The Principal Amount of the Index Rate Certificates on initial issuance shall equal the Total Stated Funding Amount set forth opposite Index Rate in the Funding Table.

**Section 7.    Miscellaneous.**

**7.1.    Notices.**

All notices and other communications provided for hereunder shall be in writing unless otherwise stated herein mailed, sent or delivered

if to the GRS Corporation or the PFRS Corporation, at the respective Corporation's address set forth in its Service Contract.

if to the Trustee, at

> U.S. Bank National Association
> HO-MI-DTGR
> 535 Griswold, Suite 550
> Detroit, Michigan 48226

> Attention:    Trust Officer

or to such other address as such Person may specify to the other Person and shall be effective (i) if given by mail, 3 Business Days after such communication is deposited in the mails with first class postage prepaid or (ii) if given by any other means, when delivered at the address specified in or pursuant to this Section.

**Section 8.    Insurance Claim Procedures**

**8.1.    FGIC**

8.1.1. As used herein, *Financial Guaranty* means Financial Guaranty Insurance Company, a New York stock insurance company, or any successor thereto

8.1.2. Upon receipt by the Trustee of a Shortfall Notice from the Contract Administrator pursuant to **Section 4.2.3** of the **Contract Administration Agreement**, the Trustee shall immediately notify Financial Guaranty and U.S. Bank Trust National Association, New York, New

York or its successor as its Fiscal Agent (the *Fiscal Agent*) of the amount of such deficiency and the respective amounts thereof attributable to principal and interest. If, by said interest payment date, there has not been provided the amount of such deficiency, the Trustee shall simultaneously make available to Financial Guaranty and to the Fiscal Agent the registration books for the Certificates maintained by the Trustee. In addition:

    8.1.2(1) The Trustee shall provide Financial Guaranty with a list of the Certificateholders entitled to receive principal or interest payments from Financial Guaranty under the terms of its Credit Insurance and shall make arrangements for Financial Guaranty and its Fiscal Agent (i) to mail checks or drafts to Certificateholders entitled to receive full or partial interest payments from Financial Guaranty and (ii) to pay principal of the Certificates surrendered to the Fiscal Agent by the Certificateholders entitled to receive full or partial principal payments from Financial Guaranty; and

    8.1.2(2) The Trustee shall, at the time it makes the registration books available to Financial Guaranty pursuant to **Section 8.1.2(1)**, notify Certificateholders entitled to receive the payment of principal of or interest on the Certificates from Financial Guaranty:

        8.1.2(2)(1)    as to the fact of such entitlement,

        8.1.2(2)(2)    that Financial Guaranty will remit to them all or part of the interest payments coming due subject to the terms of its Credit Insurance,

        8.1.2(2)(3)    that, except as provided in **Section 8.1.3**, in the event that any Certificateholder is entitled to receive full payment of principal from Financial Guaranty, such Certificateholder must tender his Certificate with the instrument of transfer in the form provided on the Certificate executed in the name of Financial Guaranty, and

        8.1.2(2)(4)    that, *except* as provided in **Section 8.1.3**, in the event that such Certificateholder is entitled to receive partial payment of principal from Financial Guaranty, such Certificateholder must tender his Certificate for payment first to the Trustee, which shall note on such Certificate the portion of principal paid by the Trustee, and then, with an acceptable form of assignment executed in the name of Financial Guaranty, to the Fiscal Agent, which will then pay the unpaid portion of principal to the Certificateholder subject to the terms of its Credit Insurance.

    8.1.3.  In the event that the Trustee has written notice that any payment of principal of or interest on a Certificate has been recovered from a Certificateholder pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with the final, nonappealable order of a court having competent jurisdiction, the Trustee shall, at the time it provides notice to Financial Guaranty, notify all Certificateholders that in the event that any Certificateholder's payment is so recovered, such Certificateholder will be entitled to payment from Financial Guaranty to the extent of such recovery, and the Trustee shall furnish to Financial Guaranty its records evidencing the payments of principal of and interest on the Certificates which have been made by the Trustee and subsequently recovered from Certificateholders, and the dates on which such payments were made.

13-53846-tjt   Doc 360-7   Filed 08/16/13   Entered 08/16/13 18:32:21   Page 8 of 60

8.1.4. Financial Guaranty shall, to the extent it makes payment of principal of or interest on the Certificates, become subrogated to the rights of the recipients of such payments in accordance with the terms of its Credit Insurance and, to evidence such subrogation:

8.1.4(1) in the case of subrogation as to claims for past due interest, the Trustee shall note Financial Guaranty's rights as subrogee on the registration books maintained by the Trustee upon receipt from Financial Guaranty of proof of the payment of interest thereon to the Certificateholders of such Certificates and

8.1.4(2) in the case of subrogation as to claims for past due principal, the Trustee shall note Financial Guaranty's rights as subrogee on the registration books for the Certificates maintained by the Trustee upon receipt of proof of the payment of principal thereof to the Certificateholders of such Certificates. Notwithstanding anything in this authorizing document or the Certificates to the contrary, the Trustee shall make payment of such past due interest and past due principal directly to Financial Guaranty to the extent that Financial Guaranty is a subrogee with respect thereto.

## 8.2. XLCA

8.2.1. As used herein, *XLCA* means XL Capital Assurance Inc., a New York stock insurance company, or any successor thereto.

8.2.2. Upon receipt by the Trustee of a Shortfall Notice from the Contract Administrator pursuant to **Section 4.2.3** of the **Contract Administration Agreement**, the Trustee shall send immediate Notice to XLCA and its designated agent (if any) of the amount of such deficiency and the respective amounts thereof attributable to principal and interest, together with a certification in form and substance satisfactory to XLCA as to the Trustee's right to receive payments under the Credit Insurance. If, by said interest payment date, there has not been provided the amount of such deficiency, the Trustee shall simultaneously make available to XLCA the registration books for the Certificates maintained by the Trustee.

For the purposes of the preceding paragraph, *Notice* means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from the Trustee to XLCA, which notice shall specify (a) the name of the entity making the claim, (b) the policy number, (c) the claimed amount and (d) the date such claimed amount will become Due for Payment. *Due for Payment*, when referring to the principal of the Certificates, means when the stated maturity date or mandatory redemption date for the application of a required sinking fund installment has been reached and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by application of required sinking fund installments), acceleration or other advancement of maturity, unless XLCA shall elect, in its sole discretion, to pay such principal due upon such acceleration; and when referring to interest on the Certificates, means when the stated date for payment of interest has been reached. In addition:

8.2.2(1) The Trustee shall provide XLCA with a list of the Certificateholders entitled to receive principal or interest payments from XLCA under the terms of its Credit Insurance and shall make arrangements for XLCA (i) to mail checks or drafts to Certificateholders entitled to receive full or partial interest payments from XLCA and (ii) to pay principal of the Certificates surrendered to XLCA by the Certificateholders entitled to receive full or partial principal payments from XLCA; and

8.2.2(2) The Trustee shall, at the time it makes the registration books available to XLCA pursuant to **Section 8.2.2(1)**, notify Certificateholders entitled to receive the payment of principal of or interest on the Certificates from XLCA (i) as to the fact of such entitlement, (ii) that XLCA will remit to them all or part of the interest payments coming due subject to the terms of its Credit Insurance, (iii) that, except as provided in **Section 8.2.3**, in the event that any Certificateholder is entitled to receive full payment of principal from XLCA, such Certificateholder must tender his Certificate with the instrument of transfer in the form provided on the Certificate executed in the name of XLCA, and (iv) that, except as provided in **Section 8.2.3**, in the event that such Certificateholder is entitled to receive partial payment of principal from XLCA, such Certificateholder must tender his Certificate for payment first to the Trustee, which shall note on such Certificate the portion of principal paid by the Trustee, and then, with an acceptable form of assignment executed in the name of XLCA, to XLCA, which will then pay the unpaid portion of principal to the Certificateholder subject to the terms of its Credit Insurance.

8.2.3. In the event that the Trustee has written notice that any payment of principal of or interest on a Certificate has been recovered from a Certificateholder pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with the final, nonappealable order of a court having competent jurisdiction, the Trustee shall, at the time it provides notice to XLCA, notify all Certificateholders that in the event that any Certificateholder's payment is so recovered, such Certificateholder will be entitled to payment from XLCA to the extent of such recovery, and the Trustee shall furnish to XLCA its records evidencing the payments of principal of and interest on the Certificates which have been made by the Trustee and subsequently recovered from Certificateholders, and the dates on which such payments were made.

8.2.4. XLCA shall, to the extent it makes payment of principal of or interest on the Certificates, become subrogated to the rights of the recipients of such payments in accordance with the terms of its Credit Insurance and, to evidence such subrogation, (i) in the case of subrogation as to claims for past due interest, the Trustee shall note XLCA's rights as subrogee on the registration books maintained by the Trustee upon receipt from XLCA of proof of the payment of interest thereon to the Certificateholders of such Certificates and (ii) in the case of subrogation as to claims for past due principal, the Trustee shall note XLCA's rights as subrogee on the registration books for the Certificates maintained by the Trustee upon receipt of proof of the payment of principal thereof to the Certificateholders of such Certificates. Notwithstanding anything in this authorizing document or the Certificates to the contrary, the Trustee shall make payment of such past due interest and past due principal directly to XLCA to the extent that XLCA is a subrogee with respect thereto.

Upon payment of a claim under the Credit Insurance, the Trustee shall establish a separate special purpose trust account for the benefit of holders of Certificates referred to herein as the "Policy Payments Account" and over which the Trustee shall have exclusive control and sole right of withdrawal. The Trustee shall receive any amount paid under the Credit Insurance in trust on behalf of holders of Certificates and shall deposit any such amount in the Policy Payments Account and distribute such amount only for purposes of making the payments for which a claim was made. Such amounts shall be disbursed by the Trustee to holders of Certificates in the same manner as principal and interest payments are to be made with respect to the Certificates under the sections hereof regarding payment of Certificates. It shall not be

7

13-53846-tjt    Doc 360-7    Filed 08/16/13    Entered 08/16/13 18:32:21    Page 10 of 60

necessary for such payments to be made by checks or wire transfers separate from the check or wire transfer used to pay debt service with other funds available to make such payments.

Funds held in the Policy Payments Account shall not be invested by the Trustee and may not be applied to satisfy any costs, expenses or liabilities of the Trustee.

Any funds remaining in the Policy Payments Account following a Certificate payment date shall promptly be remitted to XLCA.

**In Witness Whereof,** the parties hereto have set their respective hands on the date first set forth above.

*[Signatures appear on pages S-1 et seq.]*

*[Signature Page to Trust Agreement between the Detroit General Retirement System Service Corporation and the Detroit Police and Fire Retirement System Service Corporation, severally and not jointly, and U.S. Bank National Association, as Trustee, establishing the Detroit Retirement Systems Funding Trust 2006]*

**Detroit General Retirement System Service Corporation**

By _____

Roger Short
President

**Detroit Police and Fire Retirement System Service Corporation**

By _____

Roger Short
President

*[Signature Page to*
***Trust Agreement** between the*
***Detroit General Retirement System***
***Service Corporation** and the Detroit*
***Police and Fire Retirement System***
***Service Corporation**, severally and not*
*jointly, and **U.S. Bank National Association**,*
* as Trustee, establishing the **Detroit***
***Retirement Systems Funding Trust 2006**]*

**U.S. Bank National Association**

By _____

Susan T. Payne
Vice President

**Exhibit 6.2**

**Form of Initial Certificates**

The Initial Certificates shall be in the following form and tenor with such changes as are appropriate for the particular Funding Rate Methodology or are otherwise approved by the Person executing the same on behalf of the funding Trust, such signature to be conclusive evidence of such approval.

NOTICE: Unless this certificate is presented by an authorized representative of The Depository Trust Company, a New York corporation (*DTC*) to the Detroit Retirement Systems Funding Trust 2006 or its agent for registration of transfer, exchange or payment, and any Certificate issued is registered in the name of Cede & Co. or such other name as requested by an authorized representative of DTC (and any payment is made to Cede & Co. or to such other entity as is requested by an authorized representative of DTC), **any Transfer, Pledge or Other Use Hereof for Value or Otherwise by or to any Person is Wrongful** inasmuch as the registered holder hereof, Cede & Co., has an interest herein.

## R-1

## Detroit Retirement Systems Funding Trust 2006
## Certificates of Participation Series 2006-A

| FUNDING RATE (*INTEREST RATE*) PER ANNUM | PRINCIPAL PAY-MENT DATE (*MATURITY DATE*) | CUSIP | ISIN | EUROCLEAR AND CLEARSTREAM COMMON CODE |
|---|---|---|---|---|
| 5.989% | JUNE 15, 2035 | 251228AA0 | US251228AA03 | 025779533 |

ORIGINAL ISSUE DATE: JUNE 12, 2006

REGISTERED HOLDER: CEDE & CO.

DENOMINATION (*PRINCIPAL*): **ONE HUNDRED FORTY EIGHT MILLION FIVE HUNDRED FORTY THOUSAND DOLLARS ($148,540,000 U.S.)**

This is to Certify that the Registered Holder, or registered assigns, is the registered owner of this certificate, which evidences a beneficial ownership interest in the trust estate (the *Trust Estate*) described in the Trust Agreement, dated June 12, 2006 (the *Trust Agreement*), between the below identified Service Corporations, severally and not jointly, and U.S. Bank National Association, as trustee (such trustee and any successors as trustee, the *Trustee*).

This certificate is the only certificate of a series of certificates (the *Series A Certificates*) issued by the Detroit Retirement Systems Funding Trust 2006 created pursuant to the Trust Agreement (the *Funding Trust*), each evidencing a beneficial ownership interest in the portions of the Trust Estate attributable to such certificates and which, together with the Detroit Retirement Systems Funding Trust 2006 Certificates of Participation Series 2006-B (the *Series B Certificates* and together with the Series A Certificates, the *Certificates* and each certificate of the Certificates, a *Certificate*), represent the entire beneficial ownership interests in the Trust Estate.

The Trust Estate consists of rights to receive certain payments (*Funding Trust Receivables* as defined in the Trust Agreement) made by the City of Detroit, Michigan (the *City*) pursuant to the Service Contract, dated June 7, 2006 (a *Service Contract*), between the City and the Detroit General Retirement System Service Corporation (a *Service Corporation*) and the Service Contract, dated June 7, 2006 (also a *Service Contract*), between the City and the Detroit Police and Fire Retirement System Service Corporation (also a *Service Corporation* and together

Page 1 of 10

1974114.0069/401808

with the other Service Corporation, the *Service Corporations*). U.S. Bank National Association, as contract administrator (such contract administrator and any successor thereto, the *Contract Administrator*) and not as Trustee, receives the payments of the Funding Trust Receivables when paid by the City, as the agent of the Funding Trust pursuant to the Contract Administration Agreement, dated June 12, 2006, among the Contract Administrator, the Funding Trust, the Service Corporations and certain other parties (the *Contract Administration Agreement*).

Capitalized terms not defined herein and defined in the Trust Agreement, the Contract Administration Agreement or either of the Service Contracts are used herein as therein defined.

The Registered Holder of this certificate is entitled to receive, subject to the terms of the Service Contracts, the Contract Administration Agreement and the Trust Agreement, in lawful money of the United States of America: (i) on the Maturity Date stated above, a portion of the Scheduled Payments coming due on that date equal to the Principal amount stated above, unless earlier redeemed as provided below, and (ii) a portion of the Service Charges (i.e., *Interest* on this certificate), payable on December 15, 2006 and semiannually thereafter (each an *Interest Payment Date*), from the Original Issue Date stated above, or the most recent date to which Interest has been paid, to (but not including) the next Interest Payment Date, computed as the cost of capital of this certificate by multiplying the outstanding Principal amount of this certificate by the Interest Rate per annum stated above. Interest on this certificate shall be computed on the basis of a 360-day year comprised of twelve 30-day months.

So long as the Registered Holder is Cede & Co., or any other nominee of DTC, distributions of Principal and premium, if any, payable upon maturity or earlier redemption of this certificate will be paid by the Trustee by wire. Distributions to any other Registered Holder will be paid by check or draft, mailed, with respect to distributions of Interest, to the Registered Owner shown in the Certificate registry kept by the Trustee at the close of business on the 15th day (whether or not a business day) preceding the respective Interest Payment Date (a *Regular Record Date*) and, with respect to payment of Principal and premium, if any, upon presentation and surrender of this certificate at the designated office of the Trustee.

Subject in all respects to the foregoing, the Trust Agreement, Service Contracts and Contract Administration Agreement provide for allocation, computation, distribution and payments from the Trust Estate to the Registered Holder and all other registered owners of the Certificates in accordance with their relative Percentage Interests in the event that the Trustee has received less than all of the Funding Trust Receivables payable on any date by the City under the Service Contracts, generally described as follows.

On each Interest Payment Date (ending on the Maturity Date set forth above) amounts are payable as Interest on this certificate from amounts the Trustee has received from the Contract Administrator as an Interest Related Payment for such Interest Payment Date, computed as stated above, provided that such Interest Related Payment is sufficient to pay Interest on all outstanding Certificates, computed in accordance with their respective terms on the aggregate outstanding Principal amounts of all outstanding Certificates. Such Interest is payable to the respective Record Holders as of the particular Regular Record Date immediately prior to such Interest Payment Date.

If such Interest Related Payment is not sufficient to pay all Interest on the Certificates in full on such Interest Payment Date, such Interest Related Payment shall be paid, to the extent thereof, as Interest on this certificate in an amount equal to such Interest Related Payment multiplied by a fraction, the numerator of which is the amount that would have been paid as Interest on this certificate if such Interest Related Payment had been sufficient to pay Interest on all Certificates on such Interest Payment Date and the denominator of which is the aggregate amount that would have been paid as Interest on all Certificates if such Interest Related Payment had been sufficient to pay Interest on all Certificates on such Interest Payment Date. A portion of any Deficit Interest Related Payment received by the Trustee from the Contract Administrator shall be payable on this certificate in accordance with a Special Record Date established by the Trustee in accordance with the Trust Agreement, in an amount equal to such Deficit Interest Related Payment multiplied by a fraction, the numerator of which is the amount of the unpaid Interest on this certificate and the denominator of which is the aggregate amount of the unpaid Interest on all Certificates.

Any principal of any particular Certificate shall be reduced by any amount previously paid as principal or Sinking Fund Installments on such Certificate from a Sinking Fund Related Payment or a Redemption Related Payment (excluding any amount representing a prepayment premium) (such principal to the extent not so reduced *outstanding Principal*).

Outstanding Principal of this certificate is payable on the Maturity Date or the Sinking Fund Installment Date (if any) to the Registered Holder hereof if the Trustee has received a Principal Related Payment or Sinking Fund Related Payment from the Contract Administrator for such Maturity Date or Sinking Fund Installment Date sufficient to pay outstanding Principal and Sinking Fund Installments of all Certificates payable on that date.

If such Principal Related Payment or Sinking Fund Related Payment is not sufficient to pay in full all Principal and Sinking Fund Installments due on the outstanding Certificates on such date, a portion of such Principal Related Payment or Sinking Fund Related Payments shall be paid, to the extent thereof, to reduce the outstanding Principal of this certificate in an amount equal to such Principal Related Payment or Sinking Fund Related Payment multiplied by a fraction, the numerator of which is the amount of the Principal or Sinking Fund Installment of this certificate payable on such date and the denominator of which is the aggregate amount of the Principal and Sinking Fund Installments of all Certificates payable on such date. A portion of any Deficit Principal Related Payment received by the Trustee from the Contract Administrator shall be payable on this certificate in accordance with a Special Record Date established by the Trustee in accordance with the Trust Agreement in an amount equal to such Deficit Principal Related Payment multiplied by a fraction, the numerator of which is the amount of the due and unpaid Principal and Sinking Fund Installments on this Certificate and the denominator of which is the aggregate amount of the due and unpaid Principal and Sinking Fund Installments on all Certificates.

Deficit Principal Related Payments representing Principal or Sinking Fund Installments not paid in full on the Maturity Date or applicable Sinking Fund Installment Date (if any) will be paid by the Trustee from any Service Payments thereafter received by the Contract Administrator and available for such purpose in accordance with the Service Contracts, the Contract Administration Agreement and the Trust Agreement.

The Service Contracts provide for other payments to be made on a parity with or prior to Interest and Principal, and those other payments may result in either Interest or Principal not being timely paid in full. Reference is made to the Service Contracts for a statement of the applicable priorities of payments from Service Payments.

## Mandatory Sinking Fund Redemption

All Series A Certificates maturing on June 15, 2035 are subject to *pro rata* mandatory redemption in part prior to maturity, at a redemption price equal to par (100% of the principal amount to be redeemed), together with accrued interest to the redemption date, on June 15 of each of the years, and in the respective amounts set forth in Schedule 3 to the Service Contractss, except that the principal amount of the Series A Certificates to be redeemed on each such redemption date will be reduced by a *pro rata* portion of the principal amount of any Series A Certificate that has been purchased by the Trustee and canceled by the Trustee, or redeemed as described below under "Optional Redemption with Make-Whole Premium," at least 45 days before the redemption date. Mandatory Redemption from Sinking Fund Related Payments correspondingly reduces Principal payable on the Maturity Date.

## Optional Redemption with Make-Whole Premium

The Series A Certificates are subject to optional redemption prior to maturity from Scheduled Payments prepaid by the City, in whole or in part on any date, at a redemption price equal to the greater of (i) 100% of the principal amount of the Series A Certificates to be redeemed, or (ii) the sum of the present values of the remaining scheduled payments of Principal and Interest on the Series A Certificates to be redeemed (exclusive of interest accrued to the date fixed for redemption) discounted to the date of redemption on a semiannual basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Rate (defined below) plus 12.5 basis points, plus in each case accrued and unpaid Interest on the Series A Certificates being redeemed to the date fixed for redemption.

For the purpose of determining the Treasury Rate, the following definitions apply:

**Treasury Rate** means, with respect to any redemption date for a particular Series A Certificate, the rate per annum, expressed as a percentage of the principal amount, equal to the semiannual equivalent yield to maturity or interpolated maturity of the Comparable Treasury Issue, assuming that the Comparable Treasury Issue is purchased on the redemption date for a price equal to the Comparable Treasury Price, as calculated by the Designated Treasury Dealer.

**Comparable Treasury Issue** means, with respect to any redemption date for a particular Series A Certificate, the U. S. Treasury security or securities selected by the Designated Treasury Dealer which has an actual or interpolated maturity comparable to the remaining average life of the Series A Certificate to be redeemed, and that would be utilized in accordance with customary financial practice in pricing new issues of debt securities of comparable maturity to the remaining average life of the Series A Certificate to be redeemed.

**Comparable Treasury Price** means, with respect to any redemption date for a particular Series A

**Designated Treasury Dealer** means one of the Reference Treasury Dealers designated by the Contract Administrator.

**Reference Treasury Dealer** means UBS Securities LLC or its successor, and four other firms, selected by the Contract Administrator from time to time, that are primary U.S. Government securities dealers in the City of New York (each a **Primary Treasury Dealer**); provided, however, that if any of them ceases to be a Primary Treasury Dealer, the Contract Administrator will substitute another Primary Treasury Dealer.

**Reference Treasury Dealer Quotations** means, with respect to each Reference Treasury Dealer and any redemption date for a particular Series A Certificate, the average, as determined by the Designated Treasury Dealer, of the bid and asked prices for the Comparable Treasury Issue (expressed in each case as a percentage of its principal amount) quoted in writing to the Designated Treasury Dealer by such Reference Treasury Dealer at 3:30 p.m., New York City time, on the third business day preceding such redemption date.

Redemption from Redemption Related Payments correspondingly reduces Principal payable on the Maturity Date.

THIS CERTIFICATE DOES NOT CREATE ANY "INDEBTEDNESS" OF THE CITY OF DETROIT WITHIN THE MEANING OF ANY LIMITATION CONTAINED IN THE CONSTITUTION AND NON-TAX STATUTES OF THE STATE OF MICHIGAN OR IN THE CITY OF DETROIT CHARTER.

The Registered Holder, by purchasing or acquiring this certificate, and each beneficial owner of this certificate, by purchasing or acquiring a beneficial ownership interest therein, agree that for all U.S. federal, state and local income, business, franchise and modified value added tax purposes, (i) they will treat the Funding Trust as a grantor trust under the Internal Revenue Code of 1986, as amended, (ii) they will be treated as the owner of an undivided pro rata interest in the portion of the grantor Trust Estate attributable to this certificate, and (iii) they will treat the Funding Trust Receivables as payments in respect of indebtedness (and will thereby also acknowledge that the Service Charges and Scheduled Payments made by the City under the Service Contracts do not constitute indebtedness of the City for purposes of any State of Michigan constitutional or non-tax statutory or City charter limitation).

Reference is hereby made to the Trust Agreement, the Service Contracts and the Contract Administration Agreement (copies of which and other documents related to the Certificates are on file at the designated office of the Trustee, located in Detroit, Michigan on the Original Issue Date) for a description of the rights, responsibilities, and remedies of the Certificateholders, the Trustee and the Contract Administrator.

Notice of Redemption shall be mailed by first-class mail, not less than 30 days nor more than 45 days before the Redemption Date, to the Registered Holder of this certificate, as shown on the Certificate registry kept by the Trustee, but neither failure to receive notice of redemption given as provided in the Trust Agreement nor any defect in the notice so mailed shall affect the sufficiency of the proceedings for redemption of any Certificates for which no failure or deficiency occurred. The Trust Agreement provides that the Trustee shall provide additional notice that provides material compliance with Securities Exchange Act Release No. 34-23856 (December 3, 1986) as the same may be modified, amended or supplemented from time to time by formal action of the Securities and Exchange Commission or by generally accepted practice of cor-

13-53846-tjt   Doc 360-7   Filed 08/16/13   Entered 08/16/13 18:32:21   Page 19 of 60

porate trustees. No failure to give such additional notice or defect therein or in the manner in which given shall affect the sufficiency of the proceedings for the redemption of any Certificates.

If this certificate is duly called for Redemption and payment is duly provided therefor as specified in the Trust Agreement, this certificate shall cease to accrue Interest from and after the date fixed for redemption.

Registration of the ownership of this certificate is transferable only upon the Registry kept by the Trustee at the designated corporate trust office of the Trustee by the Registered Holder hereof in person, or by such Registered Holder's attorney duly authorized in writing, upon the surrender of this certificate together with a written instrument of transfer satisfactory to the Trustee duly executed by the Registered Holder or such Registered Holder's attorney duly authorized in writing, and thereupon a new registered certificate or certificates of the same series and tenor, representing the same denomination in the aggregate and having the same Maturity Date shall be issued to the transferee in exchange therefor as provided in the Trust Agreement and upon the payment of the charges, if any, therein prescribed.

This certificate is not valid for any purpose until the Trustee's Certificate of Authentication on this certificate has been executed by the Trustee.

*[The Trustee's Certificate of Authentication follows]*

## Certificate of Authentication

This certificate is one of the Series A Certificates described in the within-mentioned Trust Agreement.

**U.S. Bank National Association,**
as Trustee of the Detroit Retirement
Systems Funding Trust 2006

By:_____

Date of Authentication: June 12, 2006

**Assignment**

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto

_____

(Please print or typewrite name and address of transferee)

the within certificate and all rights thereunder, and hereby irrevocably constitutes and appoints
_____ attorney to transfer the within certificate on the books
kept for registration thereof, with full power of substitution in the premises.

Dated:                                        _____

Signature Guaranteed:    _____

_____            NOTICE:  The signature(s) to this assignment
                                        must correspond with the name as it appears
                                        upon the face of the within certificate in every
                                        particular, without alteration or enlargement or
                                        any change whatever.   When assignment is
                                        made by a guardian, trustee, executor or
                                        administrator, an officer of a corporation, or
                                        anyone in a representative capacity, proof of
                                        such person's authority to act must accompany
                                        the certificate.

        Signature(s) must be guaranteed by an eligible guarantor institution participating in a
Securities Transfer Association recognized signature guarantee program.  The Transfer Agent will
not effect transfer of this certificate unless the information concerning the transferee requested
below is provided.

Name and Address: _____

PLEASE INSERT SOCIAL  _____

SECURITY NUMBER OR OTHER _____

IDENTIFYING NUMBER OF       (Include information for all joint owners

TRANSFEREE.      if the certificate is held by joint account.)

| |
|---|

(Insert number for first named
transferee if held by joint account)

## STATEMENT OF INSURANCE

Financial Guaranty Insurance Company ("Financial Guaranty") has issued a policy containing the following provisions with respect to only the DETROIT RETIREMENT SYSTEMS FUNDING TRUST 2006 CERTIFICATES OF PARTICIPATION SERIES 2006-A MATURING IN 2035 (the "Specified Certificates"), such policy being on file at the principal office of U.S. Bank National Association, Detroit, Michigan, or its successor as paying agent (the "Paying Agent") for the Specified Certificates.

Financial Guaranty hereby unconditionally and irrevocably agrees to pay for disbursement to the Specified Certificateholders that portion of the principal or accreted value (if applicable) of and interest on the Specified Certificates which is then due for payment and which the issuer of the Specified Certificates (the "Issuer") shall have failed to provide. Due for payment means, with respect to principal or accreted value (if applicable), the stated maturity date thereof, or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which the payment of principal or accreted value (if applicable) of the Specified Certificates is due by reason of call for redemption (other than mandatory sinking fund redemption), acceleration or other advancement of maturity, and with respect to interest, the stated date for payment of such interest.

Upon receipt of telephonic or telegraphic notice, subsequently confirmed in writing, or written notice by registered or certified mail, from a Specified Certificateholder or the Paying Agent to Financial Guaranty that the required payment of principal, accreted value or interest (as applicable) has not been made by the Issuer to the Paying Agent, Financial Guaranty on the due date of such payment or within one business day after receipt of notice of such nonpayment, whichever is later, will make a deposit of funds, in an account with U.S. Bank Trust National Association, or its successor as its agent (the "Fiscal Agent"), sufficient to make the portion of such payment not paid by the Issuer. Upon presentation to the Fiscal Agent of evidence satisfactory to it of the Specified Certificateholder's right to receive such payment and any appropriate instruments of assignment required to vest all of such Specified Certificateholder's right to such payment in Financial Guaranty, the Fiscal Agent will disburse such amount to the Specified Certificateholder.

As used herein the term "Specified Certificateholder" means the person other than the Issuer or the borrower(s) of proceeds of Specified Certificates who at the time of nonpayment of the Specified Certificate is entitled under the terms of such Specified Certificate to payment thereof.

The policy is non-cancellable for any reason.

NOTICE: Unless this certificate is presented by an authorized representative of The Depository Trust Company, a New York corporation (***DTC***) to the Detroit Retirement Systems Funding Trust 2006 or its agent for registration of transfer, exchange or payment, and any Certificate issued is registered in the name of Cede & Co. or such other name as requested by an authorized representative of DTC (and any payment is made to Cede & Co. or to such other entity as is requested by an authorized representative of DTC), **any Transfer, Pledge or Other Use Hereof for Value or Otherwise by or to any Person is Wrongful** inasmuch as the registered holder hereof, Cede & Co., has an interest herein.

R-●

## Detroit Retirement Systems Funding Trust 2006
## Certificates of Participation Series 2006-B

| FUNDING RATE (*INTEREST RATE*) PER ANNUM | PRINCIPAL PAY-MENT DATE (*MATURITY DATE*) | CUSIP | ISIN | EUROCLEAR AND CLEARSTREAM COMMON CODE |
|---|---|---|---|---|
| Set Forth Below | JUNE 15, 2034 | ● | ● | ● |

ORIGINAL ISSUE DATE: JUNE 12, 2006

REGISTERED HOLDER: CEDE & CO.

DENOMINATION (*PRINCIPAL*): ● DOLLARS ($● U.S.)

**This is to Certify that** the Registered Holder, or registered assigns, is the registered owner of this certificate, which evidences a beneficial ownership interest in the trust estate (the ***Trust Estate***) described in the Trust Agreement, dated June 12, 2006 (the ***Trust Agreement***), between the below identified Service Corporations, severally and not jointly, and U.S. Bank National Association, as trustee (such trustee and any successors as trustee, the ***Trustee***).

This certificate is one of a series of certificates (the ***Series B Certificates***) issued by the Detroit Retirement Systems Funding Trust 2006 created pursuant to the Trust Agreement (the ***Funding Trust***), each evidencing a beneficial ownership interest in the portions of the Trust Estate attributable to such certificates and which, together with the Detroit Retirement Systems Funding Trust 2006 Certificates of Participation Series 2006-A (the ***Series A Certificates*** and together with the Series B Certificates, the ***Certificates*** and each certificate of the Certificates, a ***Certificate***), represent the entire beneficial ownership interests in the Trust Estate.

The Trust Estate consists of rights to receive certain payments (***Funding Trust Receivables*** as defined in the Trust Agreement) made by the City of Detroit, Michigan (the ***City***) pursuant to the Service Contract, dated June 7, 2006 (a ***Service Contract***), between the City and the Detroit General Retirement System Service Corporation (a ***Service Corporation***) and the Service Contract, dated June 7, 2006 (also a ***Service Contract***), between the City and the Detroit Police and Fire Retirement System Service Corporation (also a ***Service Corporation*** and together with the other Service Corporation, the ***Service Corporations***). U.S. Bank National Association, as

Page 1 of 10

1974114.0069/401808

contract administrator (such contract administrator and any successor thereto, the *Contract Administrator*) and not as Trustee, receives the payments of the Funding Trust Receivables when paid by the City, as the agent of the Funding Trust pursuant to the Contract Administration Agreement, dated June 12, 2006, among the Contract Administrator, the Funding Trust, the Service Corporations and certain other parties (the *Contract Administration Agreement*).

Capitalized terms not defined herein and defined in the Trust Agreement, the Contract Administration Agreement or either of the Service Contracts are used herein as therein defined.

The Registered Holder of this certificate is entitled to receive, subject to the terms of the Service Contracts, Contract Administration Agreement and the Trust Agreement, in lawful money of the United States of America: (i) a portion of the Scheduled Payments coming due on the Maturity Date stated above equal to the Principal amount stated above, unless earlier redeemed as provided below, and (ii) a portion of the Service Charges (i.e., *Interest* on this certificate) from the Original Issue Date stated above computed as the cost of capital of this certificate at a floating rate determined in the manner provided below, by multiplying the outstanding Principal amount of this certificate by such floating rate, payable on September 15, 2006, and quarterly thereafter on the 15th day of each December, March, June and September thereafter (each an *Interest Payment Date*) to the Registered Holder whose name was registered at the close of business on the 15th day (whether or not a business day) preceding the respective Interest Payment Date, subject to certain exceptions.

The per annum interest rate on this certificate (*Interest Rate*) in effect during an Interest Period (as defined below) shall be equal to the Three Month LIBOR plus 0.30% for Series B Certificates maturing on June 15, 2029 and 0.34% for Series B Certificates maturing on June 15, 2034. Interest on this certificate will accrue on the outstanding principal balance of this certificate. The outstanding principal balance is computed based upon the reduction of the principal balance of each Series B Certificate by the amount of the mandatory sinking fund prepayment on the specific dates set forth under the next subheading "Mandatory Sinking Fund Redemption" below.

For the initial Interest Period which begins on the Closing Date and ends on (but does not include) September 15, 2006, the Contract Administrator will set the Interest Rate on the Closing Date and will determine the LIBOR rate by reference to straight line interpolation between Three Month LIBOR and four month LIBOR based on the actual number of days in the initial Interest Period. The Interest Rate for each subsequent Interest Period for the Series B Certificates will be set on September 15, 2006 and quarterly thereafter on the 15th day of each December, March, June and September (each an *Interest Rate Adjustment Date*) until the principal of the Series B Certificates is paid or made available for payment. If any Interest Rate Adjustment Date (other than the initial Interest Rate Adjustment Date occurring on the Closing Date) and Interest Payment Date for the Series B Certificates would otherwise be a day that is not a LIBOR Business Day, such Interest Rate Adjustment Date and Interest Payment Date shall be the next succeeding LIBOR Business Day.

*LIBOR Business Day* means any day on which the City, the Trustee and banks in both London and New York City are open for the transaction of business. *Interest Period* means the period from and including the Closing Date or the most recent Interest Payment Date to but excluding the next succeeding Interest Payment Date on which interest on the outstanding Series B Certificates was paid in full.

The *Three Month LIBOR* for each Interest Period means the rate determined in accordance with the following provisions:

(i)  On the second LIBOR Business Day before the Closing Date and each subsequent Interest Rate Adjustment Date (each such date an *Interest Determination Date* for the ensuing Interest Period), the Contract Administrator will determine the Three Month LIBOR which shall be the London interbank offered rate for deposits in U.S. dollars with a three-month maturity that appears on Telerate Page 3750 as of 11:00 a.m., London time, on such Interest Determination Date. **Telerate Page 3750** means the display page so designated on Moneyline Telerate, Inc. (or such other page as may replace that page on that service or such other service or services as may be nominated by the British Bankers' Association for the purpose of displaying London interbank offered rates for U.S. dollar deposits). If the Three Month LIBOR on such Interest Determination Date does not appear on the Telerate Page 3750, the Three Month LIBOR will be determined as described in paragraph (ii) below.

(ii)  With respect to an Interest Determination Date for which the Three Month LIBOR does not appear on Telerate Page 3750 as specified in paragraph (i) above, the Three Month LIBOR will be determined on the basis of the rates at which deposits in U.S. dollars for a three-month maturity and in a principal amount of at least U.S. $1,000,000 are offered at approximately 11:00 a.m., London time, on such Interest Determination Date to prime banks in the London interbank market by at least three leading banks engaged in transactions in Eurodollar deposits in the international Eurocurrency market (the *Reference Banks*) selected by the Contract Administrator. The Contract Administrator shall request the principal London office of each of such Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the Three Month LIBOR on such Interest Determination Date will be the arithmetic mean of such quotations. If fewer than two quotations are provided, the Three Month LIBOR on such Interest Determination Date will be the arithmetic mean of the rates quoted by three major banks in New York City, selected by the Contract Administrator, at approximately 11:00 a.m., New York City time, on such Interest Determination Date for loans in U.S. dollars to leading European banks in a principal amount of at least U.S. $1,000,000 having a three-month maturity; provided, however, that if the banks in New York City selected by the Contract Administrator are not then quoting rates for such loans, the relevant Interest Rate for the Interest Period commencing on the Interest Rate Adjustment Date following such Interest Determination Date will be the Interest Rate in effect on such Interest Determination Date.

The amount of interest for each day that the Series B Certificates are outstanding (the **Daily Interest Amount**) will be calculated by dividing the Interest Rate in effect for such day by 360 and multiplying the result by the principal amount of the Series B Certificates. The amount of interest to be paid on the Series B Certificates for any Interest Period will be calculated by adding the Daily Interest Amounts for each day in such Interest Period.

The Interest Rate on the Series B Certificates will in no event be higher than the maximum rate permitted by Michigan law as the same may be modified by United States law of general application.

The Interest Rate and amount of interest to be paid on the Series B Certificates for each Interest Period will be determined by the Contract Administrator. All calculations made by the Contract Administrator shall in the absence of manifest error be conclusive for all purposes and binding on the Funding Trust and the Holders of the Series B Certificates.

So long as the Registered Holder is Cede & Co., or any other nominee of DTC, distributions of Principal and premium, if any, payable upon maturity or earlier redemption of this certificate will be paid by the Trustee by wire. Distributions to any other Registered Holder will be paid by check or draft, mailed, with respect to distributions of Interest, to the Registered Owner shown in the Certificate registry kept by the Trustee at the close of business on the 15th day (whether or not a business day) preceding the respective Interest Payment Date (a *Regular Record Date*) and, with respect to payment of Principal and premium, if any, upon presentation and surrender of this certificate at the designated office of the Trustee.

Subject in all respects to the foregoing, the Trust Agreement, Service Contracts and Contract Administration Agreement provide for allocation, computation, distribution and payments from the Trust Estate to the Registered Holder and all other registered owners of the Certificates in accordance with their relative Percentage Interests in the event that the Trustee has received less than all of the Funding Trust Receivables payable on any date by the City under the Service Contracts, generally described as follows.

On each Interest Payment Date (ending on the Maturity Date set forth above) amounts are payable as Interest on this certificate from amounts the Trustee has received from the Contract Administrator as an Interest Related Payment for such Interest Payment Date, computed as stated above, provided that such Interest Related Payment is sufficient to pay Interest on all outstanding Certificates, computed in accordance with their respective terms on the aggregate outstanding Principal Amounts of all outstanding Certificates. Such Interest is payable to the respective Record Holders as of the particular Regular Record Date immediately prior to such Interest Payment Date.

If such Interest Related Payment is not sufficient to pay all Interest on the Certificates in full on such Interest Payment Date, such Interest Related Payment shall be paid, to the extent thereof, as Interest on this certificate in an amount equal to such Interest Related Payment multiplied by a fraction, the numerator of which is the amount that would have been paid as Interest on this certificate if such Interest Related Payment had been sufficient to pay Interest on all Certificates on such Interest Payment Date and the denominator of which is the aggregate amount that would have been paid as Interest on all Certificates if such Interest Related Payment had been sufficient to pay Interest on all Certificates on such Interest Payment Date. A portion of any Deficit Interest Related Payment received by the Trustee from the Contract Administrator shall be payable on this certificate in accordance with a Special Record Date established by the Trustee in accordance with the Trust Agreement, in an amount equal to such Deficit Interest Related Payment multiplied by a fraction, the numerator of which is the amount of the unpaid Interest on this certificate and the denominator of which is the aggregate amount of the unpaid Interest on all Certificates.

Any principal of any particular Certificate shall be reduced by any amount previously paid as principal or Sinking Fund Installments on such Certificate from a Sinking Fund Related Payment or a Redemption Related Payment (excluding any amount representing a prepayment premium) (such principal to the extent not so reduced *outstanding Principal*).

Outstanding Principal of this certificate is payable on the Maturity Date or the Sinking Fund Installment Date (if any) to the Registered Holder hereof if the Trustee has received a Principal Related Payment or Sinking Fund Related Payment from the Contract Administrator for

13-53846-tjt    Doc 360-7    Filed 08/16/13    Entered 08/16/13 18:32:21    Page 28 of 60

such Maturity Date or Sinking Fund Installment Date sufficient to pay outstanding Principal and Sinking Fund Installments of all Certificates payable on that date.

If such Principal Related Payment or Sinking Fund Related Payment is not sufficient to pay in full all Principal and Sinking Fund Installments due on the outstanding Certificates on such date, a portion of such Principal Related Payment or Sinking Fund Related Payment shall be paid, to the extent thereof, to reduce the outstanding Principal of this certificate in an amount equal to such Principal Related Payment or Sinking Fund Related Payment multiplied by a fraction, the numerator of which is the amount of the Principal or Sinking Fund Installment of this certificate payable on such date and the denominator of which is the aggregate amount of the Principal and Sinking Fund Installments of all Certificates payable on such date. A portion of any Deficit Principal Related Payment received by the Trustee from the Contract Administrator shall be payable on this certificate in accordance with a Special Record Date established by the Trustee in accordance with the Trust Agreement in an amount equal to such Deficit Principal Related Payment multiplied by a fraction, the numerator of which is the amount of the due and unpaid Principal and Sinking Fund Installments on this Certificate and the denominator of which is the aggregate amount of the due and unpaid Principal and Sinking Fund Installments on all Certificates.

Deficit Principal Related Payments representing Principal or Sinking Fund Installments not paid in full on the Maturity Date or applicable Sinking Fund Installment Date (if any) will be paid by the Trustee from any Service Payments thereafter received by the Contract Administrator and available for such purpose in accordance with the Service Contracts, the Contract Administration Agreement and the Trust Agreement.

The Service Contracts provide for other payments to be made on a parity with or prior to Interest and Principal, and those other payments may result in either Interest or Principal not being timely paid in full. Reference is made to the Service Contracts for a statement of the applicable priorities of payments from Service Payments.

### Mandatory Sinking Fund Redemption

All Series B Certificates maturing on June 15, 2029, or on June 15, 2034 are subject to *pro rata* mandatory redemption prior to maturity, at a redemption price equal to par (100% of the principal amount to be redeemed), together with accrued interest to the redemption date, on June 15 of each of the years, and in the respective amounts set forth in the Service Contract, except that the principal amount of Series B Certificates of such maturity to be redeemed on each such redemption date will be reduced by a *pro rata* portion of the principal amount of any such Series B Certificate that has been purchased by the Trustee and canceled by the Trustee, or redeemed as described under "Optional Redemption" below, at least 45 days before the redemption date. Mandatory Redemption from Sinking Fund Related Payments correspondingly reduces Principal payable on the Maturity Date.

### Optional Redemption

The Series B Certificates are subject to optional redemption on any Interest Payment Date at par, on and after June 15, 2011, in whole or in part.

13-53846-tjt    Doc 360-7    Filed 08/16/13    Entered 08/16/13 18:32:21    Page 29 of 60

THIS CERTIFICATE DOES NOT CREATE ANY "INDEBTEDNESS" OF THE CITY OF DETROIT WITHIN THE MEANING OF ANY LIMITATION CONTAINED IN THE CONSTITUTION AND NON-TAX STATUTES OF THE STATE OF MICHIGAN OR IN THE CITY OF DETROIT CHARTER.

The Registered Holder, by purchasing or acquiring this certificate, and each beneficial owner of this certificate, by purchasing or acquiring a beneficial ownership interest therein, agree that for all U.S. federal, state and local income, business, franchise and modified value added tax purposes, (i) they will treat the Funding Trust as a grantor trust under the Internal Revenue Code of 1986, as amended, (ii) they will be treated as the owner of an undivided pro rata interest in the portion of the grantor Trust Estate attributable to this certificate, and (iii) they will treat the Funding Trust Receivables as payments in respect of indebtedness (and will thereby also acknowledge that the Service Charges and Scheduled Payments made by the City under the Service Contracts do not constitute indebtedness of the City for purposes of any State of Michigan constitutional or non-tax statutory or City charter limitation).

Reference is hereby made to the Trust Agreement, the Service Contracts and the Contract Administration Agreement (copies of which and other documents related to the Certificates are on file at the designated office of the Trustee, located in Detroit, Michigan on the Original Issue Date) for a description of the rights, responsibilities, and remedies of the Certificateholders, the Trustee and the Contract Administrator.

Notice of Redemption shall be mailed by first-class mail, not less than 30 days nor more than 45 days before the Redemption Date, to the Registered Holder of this certificate, as shown on the Certificate registry kept by the Trustee, but neither failure to receive notice of redemption given as provided in the Trust Agreement nor any defect in the notice so mailed shall affect the sufficiency of the proceedings for redemption of any Certificates for which no failure or deficiency occurred. The Trust Agreement provides that the Trustee shall provide additional notice that provides material compliance with Securities Exchange Act Release No. 34-23856 (December 3, 1986) as the same may be modified, amended or supplemented from time to time by formal action of the Securities and Exchange Commission or by generally accepted practice of corporate trustees. No failure to give such additional notice or defect therein or in the manner in which given shall affect the sufficiency of the proceedings for the redemption of any Certificates.

If this certificate is duly called for Redemption and payment is duly provided therefor as specified in the Trust Agreement, this certificate shall cease to accrue Interest from and after the date fixed for redemption.

Registration of the ownership of this certificate is transferable only upon the Registry kept by the Trustee at the designated corporate trust office of the Trustee by the Registered Holder hereof in person, or by such Registered Holder's attorney duly authorized in writing, upon the surrender of this certificate together with a written instrument of transfer satisfactory to the Trustee duly executed by the Registered Holder or such Registered Holder's attorney duly authorized in writing, and thereupon a new registered certificate or certificates of the same series and tenor, representing the same denomination in the aggregate and having the same Maturity Date shall be issued to the transferee in exchange therefor as provided in the Trust Agreement and upon the payment of the charges, if any, therein prescribed.

13-53846-tjt    Doc 360-7    Filed 08/16/13    Entered 08/16/13 18:32:21    Page 30 of 60

This certificate is not valid for any purpose until the Trustee's Certificate of Authentication on this certificate has been executed by the Trustee.

*[The Trustee's Certificate of Authentication follows]*

## Certificate of Authentication

This certificate is one of the Series B Certificates described in the within-mentioned Trust Agreement.

**U.S. Bank National Association,**
    as Trustee of the Detroit Retirement
    Systems Funding Trust 2006

By:_____

Date of Authentication:  June 12, 2006

13-53846-tjt    Doc 360-7    Filed 08/16/13    Entered 08/16/13 18:32:21    Page 32 of 60

## Assignment

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto

_____

(Please print or typewrite name and address of transferee)

the within certificate and all rights thereunder, and hereby irrevocably constitutes and appoints
_____ attorney to transfer the within certificate on the books
kept for registration thereof, with full power of substitution in the premises.

Dated: _____

_____     _____

Signature Guaranteed:

NOTICE: The signature(s) to this assignment must correspond with the name as it appears upon the face of the within certificate in every particular, without alteration or enlargement or any change whatever. When assignment is made by a guardian, trustee, executor or administrator, an officer of a corporation, or anyone in a representative capacity, proof of such person's authority to act must accompany the certificate.

Signature(s) must be guaranteed by an eligible guarantor institution participating in a Securities Transfer Association recognized signature guarantee program. The Transfer Agent will not effect transfer of this certificate unless the information concerning the transferee requested below is provided.

Name and Address: _____

PLEASE INSERT SOCIAL _____
SECURITY NUMBER OR OTHER _____
IDENTIFYING NUMBER OF        (Include information for all joint owners
TRANSFEREE.        if the certificate is held by joint account.)

[_____]

(Insert number for first named
transferee if held by joint account)

**STATEMENT OF INSURANCE
[OF APPROPRIATE INSURER]**

# General Terms and Conditions

of

## Trust Agreements

creating

## Detroit Retirement Systems Funding Trusts

established severally and not jointly by the

## Detroit General Retirement System Service Corporation
and the
## Detroit Police and Fire Retirement System Service Corporation

Dated as of May 1, 2005

1974.110.0476\xxx v1

# Table of Contents

ARTICLE I — DEFINITIONS AND INTERPRETATION .................................................................. 1

    Section 101.  Certain Definitions. ....................................................................... 1
    Section 102.  Definitions Elsewhere in General Terms.................................... 4
    Section 103.  Definitions in Service Contract ................................................ 4
    Section 104.  Definitions in Contract Administration Agreement................. 4
    Section 105.  Interpretation. ............................................................................ 5

ARTICLE II — THE FUNDING TRUST.................................................................................. 5

    Section 201.  Conveyance of Funding Trust Receivables; Grant of Security Interest................... 5
    Section 202.  No City Indebtedness.................................................................. 5
    Section 203.  Tax Treatment; Restriction on Trustee's Powers....................... 6
    Section 204.  Authentication and Delivery of Certificates by Trustee; Execution of Other Documents. ............................................................................. 6
    Section 205.  Disposition of Certificate Proceeds. ......................................... 6
    Section 206.  Additional Certificates ............................................................. 7

ARTICLE III — THE CERTIFICATES .................................................................................. 7

    Section 301.  Interest Evidenced by Certificates. ........................................... 7
    Section 302.  Limitation on Amount................................................................ 7
    Section 303.  General Title. ............................................................................. 7
    Section 304.  Required Statement.................................................................... 7
    Section 305.  Issuable in Series....................................................................... 7
    Section 306.  Form, Numbers, Denominations and Dating ............................ 7
    Section 307.  Authentication............................................................................ 8
    Section 308.  Capital Appreciation COPs ...................................................... 8
    Section 309.  Payments in US Dollars............................................................. 8
    Section 310.  Payment of Interest; Interest Rights Preserved........................ 8
    Section 311.  Registration, Exchanges and Transfers..................................... 9
    Section 312.  Persons Deemed Owners........................................................... 9
    Section 313.  Mutilated, Destroyed, Stolen or Lost Certificates. ................... 10
    Section 314.  Cancellation and Destruction of Certificates. .......................... 10
    Section 315.  Book-Entry Certificates; Securities Depository......................... 10

ARTICLE IV — REDEMPTION OF CERTIFICATES .............................................................. 11

    Section 401.  Selection of Certificates to be Redeemed.................................. 11
    Section 402.  Notice of Redemption. ............................................................... 12
    Section 403.  Certificates Payable on Redemption Date.................................. 13
    Section 404.  Certificates Redeemed in Part.................................................... 13

ARTICLE V — PAYMENTS TO CERTIFICATEHOLDERS........................................................ 14

    Section 501.  Deficiency Payments.................................................................. 14
    Section 502.  Other Payments ......................................................................... 14
    Section 503.  Payments Made From Credit Insurance ..................................... 14

ARTICLE VI — THE TRUSTEE .......................................................................................... 15

Section 601.   Certain Duties and Responsibilities.................................................... 15
Section 602.   Certain Rights of Trustee..................................................................... 15
Section 603.   Not Responsible for Recitals or Issuance of Certificates. ............... 16
Section 604.   May Hold Certificates........................................................................... 16
Section 605.   Money Held in Trust. ............................................................................ 17
Section 606.   Compensation and Reimbursement...................................................... 17
Section 607.   No Lien ................................................................................................... 17
Section 608.   Corporate Trustee Required; Eligibility. ........................................... 17
Section 609.   Replacement of Trustee........................................................................ 18
Section 610.   Merger, Consolidation and Succession to Business............................ 18
Section 611.   ERISA..................................................................................................... 19

ARTICLE VII — SUPPLEMENTAL TRUST AGREEMENTS................................................... 19

Section 701.   Supplemental Trust Agreements without Consent of Certificateholders............... 19
Section 702.   Supplemental Trust Agreements with Consent of Certificateholders. ................... 19
Section 703.   Execution of Supplemental Trust Agreements. .................................. 20
Section 704.   Preconditions to Effectiveness............................................................. 20
Section 705.   Effect of Supplemental Trust Agreements. ........................................ 21
Section 706.   Copies to Insurer ................................................................................... 21
Section 707.   Reference in Certificates to Supplemental Trust Agreements. ......... 21

ARTICLE VIII — MISCELLANEOUS PROVISIONS ......................................................... 21

Section 801.   Notices to Certificateholders; Waiver................................................. 21
Section 802.   Insurer Treated as Certificateholder.................................................. 21
Section 803.   Severability............................................................................................ 22
Section 804.   Payments Due on Saturdays, Sundays and Holidays ........................ 22

GENERAL TERMS AND CONDITIONS

OF

TRUST AGREEMENTS

CREATING

DETROIT RETIREMENT SYSTEMS FUNDING TRUSTS

ESTABLISHED SEVERALLY AND NOT JOINTLY BY THE

DETROIT GENERAL RETIREMENT SYSTEM SERVICE CORPORATION

AND THE

DETROIT POLICE AND FIRE RETIREMENT SYSTEM SERVICE CORPORATION

Dated as of May 1, 2005
(the *General Terms*)

The General Terms govern Trust Agreements of the Detroit General Retirement Service Corporation and the Detroit Police and Fire Retirement Service Corporation (each, a *Corporation*) in which they are incorporated by reference (each, a ***Trust Agreement***) for the establishment of Funding Trusts (each, a ***Funding Trust***) for the purpose of funding of the several and not joint unfunded accrued actuarial liability (in each instance, *UAAL*) of the Detroit General Retirement System and the Detroit Police and Fire Retirement System (each, a *Retirement System*).

## Article I — Definitions and Interpretation

### Section 101.    Certain Definitions.

The following terms have the following respective meanings for all purposes of the Trust Agreement *unless* the context clearly otherwise requires:

*Accreted Value* means, at any time, the Principal Amount of particular Capital Appreciation COPs determined in accordance with the Trust Agreement.

*Authorized Officer* means the President of a Corporation or any other individual designated as an "Authorized Officer" in a Corporation Order signed by the President.

*Capital Appreciation COPs* means Zero Coupon COPs that have Principal Amounts that accrete in accordance with the Accreted Value of such COPs.

*Certificates, Certificates of Participation* or *COPs* mean the Certificates of Participation identified in the Trust Agreement.

*Certificateholder* or *Holder* means, as of any time with respect to any Certificate, the Person in whose name such Certificate is registered in the Registry.

*City* means the City of Detroit, Michigan.

*Corporation* has the meaning given that term in the Specific Terms.

*Corporation Certificate, Corporation Request, Corporation Order* and *Corporation Consent* mean, respectively, a written certificate, request, order or consent signed in the name of a Corporation by an Authorized Officer, and delivered to the Trustee.

*Contract Administrator* means the bank serving as Trustee, in its separate capacity as Contract Administrator and not as Trustee.

*Contract Administration Agreement* means the agreement captioned as such among the Corporations, severally and not jointly, the Trustee and the Contract Administrator for the administration of the Service Contract.

*Deficiency Payment* means any Deficit Interest Related Payment or any Deficit Principal Related Payment as the context may require.

*Funding Trust* means the trust established by the Trust Agreement.

*Funding Trust Receivable* means any Principal Related Receivable or Interest Related Receivable.

*Funding Cost Supplement* means each document identified in a Service Contract as a "Funding Cost Supplement" and appended to the Trust Agreement.

*Interest* means (whether or not capitalized) amounts received by the Trustee as Service Charges.

*Interest Payment Dates* means (whether or not capitalized) dates that correspond to Service Charge Payment Dates.

*Interest Related Receivable* means an amount owing by the City as a Service Charge, including any Accrued Service Charges.

*Maturity* or *Maturity Date* means (whether or not capitalized), (i) as to any Certificate, the Scheduled Payment Date on which the Holder of such Certificate is entitled to receive a regular Scheduled Payment is due and (ii) as to any Regular Scheduled Payment, the Scheduled Payment Date on which such Regular Scheduled Payment is due from the City under a Service Contract. The verb *mature* has a correlative meaning.

*on* as in "Interest payable on a Certificate" or *of* as in "a Principal Payment of a Certificate" means "in respect of" as in "Interest payable in respect of a Certificate" and "a Principal Payment in respect of a Certificate".

*Outstanding* means (whether or not capitalized) all Certificates authenticated under the Trust Agreement *except*:

>     (1)     Certificates theretofore canceled or surrendered to the Trustee for cancellation and

>     (2)     Certificates replaced pursuant to **Section 313** *unless* the Trustee receives proof that the Holder of the replaced Certificate is a protected purchaser.

*Percentage Interest* means, as to any Certificate of a Series, the percentage obtained by dividing the denomination of such Certificate by the sum of the denominations of the outstanding Certificates of such Series.

*Person* means any individual, firm, association, corporation, trust, partnership, joint venture, joint-stock company, municipal corporation, public body or other entity, however organized.

**Predecessor Certificate** of any particular Certificate means every previous Certificate evidencing all or a portion of the same beneficial interest as that evidenced by such particular Certificate; and for the purpose of this definition, any Certificate delivered under **Section 313** in lieu of a lost, destroyed or stolen Certificate shall be deemed to evidence the same beneficial interest as such lost, destroyed or stolen Certificate.

**Principal** or **Principal Amount** means (whether or not capitalized), (i) as to any Certificate, a notional amount equal to the denomination of such Certificate and (ii) as to any Series of Certificates, a notional amount equal to the total of the denominations of the Outstanding Certificates of such Series.

**Principal Payment Dates** means the dates that correspond to Scheduled Payment Dates for Regular Scheduled Payments.

**Principal Related Receivable** means an amount owing by the City as a Scheduled Payment (whether a Regular Scheduled Payment or a Sinking Fund Installment) or an Optional Prepayment Amount.

**Qualifying Opinion** means an opinion of counsel to the effect that the Trust will qualify as a grantor trust under Subpart E, Part I of Subchapter J of the Internal Revenue Code of 1986, as amended.

**Redeemed** or **Redemption** means (whether or not capitalized), the prepayment of all or a portion of the Principal Amount of a Certificate before its Maturity. A Certificate is redeemed to the extent of the prepayment of the Principal Amount thereof. Correlative terms have correlative meanings.

**Redemption Date** means the date that corresponds to a Sinking Fund Installment Date or an Optional Prepayment Date.

**Redemption Price** means an amount equal to the amount due from the City as a Sinking Fund Installment or an Optional Prepayment Amount plus any Accrued Service Charges.

**Regular Record Date** means, as to any Interest Payment Date with respect to Certificates of a Series, the date set forth in or determined pursuant to the Service Contract for such Series as the "Regular Record Date".

**Series** means all Certificates designated by the Trust Agreement as belonging to a particular series.

**Securities Depository** means The Depository Trust Company and any Person succeeding to the business of The Depository Trust Company qualified to do so under the rules of the Securities and Exchange Commission.

**Service Contract** means the agreement between a Corporation and the City identified in the Trust Agreement as a "Service Contract".

**Service Contract Specific Terms** means the Specific Terms of a Service Contract.

**Trust Agreement** means the Trust Agreement between the Corporations and the Trustee incorporating these General Terms as such Trust Agreement may be amended in accordance with its terms.

*Trust Estate* means the revenues and assets identified as the "Trust Estate" in the Trust Agreement.

*Trustee* means the Person so named in the first paragraph of the Trust Agreement until a successor is appointed pursuant to applicable provisions of the Trust Agreement; thereafter, *Trustee* means such successor.

*Zero Coupon Certificates* means COPs that do not provide for periodic payments of Interest.

**Section 102.    Definitions Elsewhere in General Terms**

The terms defined elsewhere in the General Terms include:

| Term | Defined In |
| --- | --- |
| Beneficial Owner | Section 315 |
| Supplemental Trust Agreement | Section 701 |
| Participant | Section 315 |
| Registry | Section 311 |

**Section 103.    Definitions in Service Contract**

Undefined capitalized terms used herein and defined in the Service Contract are used here as therein defined, *unless* the context otherwise clearly requires, including:

| Term | Defined In |
| --- | --- |
| Credit Insurance | GT, Section 1.01 |
| Prepayment Receipt Day | GT, Section 5.03 |
| Rating Agency | GT, Section 9.02 |
| Regular Scheduled Payment | GT, Section 1.01 |
| Scheduled Payment Dates | SP, Scheduled Payments Attachment |
| Scheduled Payments | SP, Scheduled Payments Attachment |
| Service Payments | GT, Section 8.01 |
| Sinking Fund Installments | SP, Sinking Fund Installment Attachment |
| Sinking Fund Installment Dates | SP, Sinking Fund Installment Attachment |
| Subject UAAL | GT, Section 1.01 |

*GT* refers to Service Contract General Terms, and *SP* refers to Service Contract Specific Terms

**Section 104.    Definitions in Contract Administration Agreement**

Undefined capitalized terms used herein and defined in the Service Contract are used here as therein defined, *unless* the context otherwise clearly requires, including:

| Term | Defined In |
| --- | --- |
| Deficit Interest Related Payment | Section 4.6 |
| Deficit Principal Related Payments | Section 4.6 |
| Interest Related Payments | Section 4.6 |
| Principal Related Payments | Section 4.6 |
| Redemption Related Payments | Section 4.6 |

Section 105.    **Interpretation.**

(a)    Words of the masculine gender include correlative words of the feminine and neuter genders.

(b)    *Unless* the context otherwise indicates, words importing the singular include the plural and vice versa.

(c)    Articles, Sections, Schedules and Exhibits referred to by number mean the corresponding Articles, Sections, Schedules and Exhibits of the Trust Agreement.

(d)    The terms *hereby, hereof, hereto, herein, hereunder* and any similar terms used in the Trust Agreement refer to the Trust Agreement as a whole and not to any particular portion thereof.

(e)    The term *or* is not exclusive.

(f)    The enumeration of things after the term *such as, including* or *for example (e.g.)* is to be interpreted as illustrative and not restrictive.

(g)    References to sections of a Public Act, or to a Public Act as a whole, also include any amendments thereto unless otherwise indicated and analogous sections or Public Acts enacted as substitutes therefor.

## Article II — The Funding Trust

### Section 201.    Conveyance of Funding Trust Receivables; Grant of Security Interest

(a)    Effective as of the Closing Date, each Corporation hereby transfers, assigns and otherwise conveys to the Funding Trust all of its right, title and interest in, to and under the Funding Trust Receivables now or hereafter created under its respective Service Contract, and all monies due or to become due with respect thereto and all proceeds (as defined in Section 9-315 of the Uniform Commercial Code as in effect in the State of Michigan) of such Funding Trust Receivables. For the avoidance of doubt, the Trustee acknowledges that it has no power to transfer, assign or otherwise convey legal title to the Funding Trust Receivables and that beneficial interests in the Funding Trust Receivables may be transferred as transfers of Certificates.

(b)    Each Corporation intends that such sale, assignment and conveyance be an absolute transfer of such property for all purposes. However, in order to preserve rights if such sale, assignment and conveyance is deemed a pledge of such property, each Corporation hereby grants a security interest in all of its right, title and interest in, to and under such property to the Funding Trust for the benefit of the Certificateholders.

### Section 202.    No City Indebtedness

The Funding Trust and the Funding Trust Receivables do not constitute or create any indebtedness of the City within the meaning of the limitation contained in The Home Rule City Act or any Michigan constitutional or other non-tax statutory or City charter limitation.

**Section 203.    Tax Treatment; Restriction on Trustee's Powers**

(a)    *Except* to the extent otherwise provided in the Trust Agreement, each Corporation entered into the Trust Agreement, Certificates will be issued and the Funding Trust will acquire the Funding Trust Receivables, with the intention that for federal, state and local income, business, franchise and modified value added tax purposes,

(i)    the Trust will qualify as a grantor trust under Subpart E, Part I of Subchapter J of the Internal Revenue Code of 1986, as amended;

(ii)    each Beneficial Owner of Certificates will be treated as the owner of an undivided pro rata interest in the portion of the Trust Estate attributable to such Beneficial Owner's Certificates; and

(iii)    the Funding Trust Receivables will constitute payments in respect of indebtedness.

(b)    In furtherance of such intention, except to the extent otherwise provided in the Trust Agreement, the Trustee shall not have the power to vary the investment of the Beneficial Owners of the Certificates within the meaning of U.S. Treasury Department regulations section 301.7701-4(c) or to engage in any business unless the Trustee shall have received an opinion in form and substance reasonably satisfactory to the Trustee of counsel reasonably acceptable to the Trustee to the effect that such activity will not cause the Trust to fail to be treated as such a grantor trust.

(c)    Each Corporation and the Trustee by entering into the Trust Agreement and each Certificateholder by its acceptance of its Certificate agree to treat the Funding Trust, the Certificates and the Funding Trust Receivables in accordance with the intention expressed in this Section (or any alternative intention expressed in the Trust Agreement) for federal, state and local income, business, franchise and modified value added tax purposes.

**Section 204.    Authentication and Delivery of Certificates by Trustee; Execution of Other Documents**

(a)    The Trustee shall deliver the Certificates in accordance with a Corporation Order of each Corporation (a *Delivery Order*) stating the amount of Certificate proceeds to be received by the Trustee in respect of the particular Corporation and providing for the disposition of such proceeds in accordance with **Section 205**.

(b)    The Trustee is authorized and directed to execute and deliver the Contract Administration Agreement in the name of and on behalf of the Funding Trust and such other documents and instruments as may be specified in a Delivery Order or other writing signed by the Authorized Officer of each Corporation.

**Section 205.    Disposition of Certificate Proceeds.**

The proceeds of the sale of Certificates shall be applied as provided in each Service Contract.

Section 206.   **Additional Certificates**

(a)      One or more Series of Additional Certificates may be established by supplement to the Trust Agreement *if* (i) the City approves an amendment to either Service Contract to provide for (i) the funding of obligations under the particular Service Contract not part of the Initial Funding or (ii) to provide for the payment of all or a portion of Outstanding Certificates *and* (ii) the requirement of **Section 704** is met if applicable.

(b)      Such Series of Additional Certificates shall not have an aggregate principal amount that exceeds the total Scheduled Payments added by such amendment to the Service Contract, and the maturity dates and amounts maturing on such dates of such Additional Certificates shall correspond to the Scheduled Payments added by such amendment and their respective Scheduled Payment Dates.

(c)      Such Series of Additional Certificates shall provide for Service Charges determined in accordance with the Funding Methodology provided in such amendment.

## Article III — The Certificates

Section 301.   **Interest Evidenced by Certificates.**

The Certificates evidence the entire beneficial interest in the Trust Estate.

Section 302.   **Limitation on Amount.**

The total of the denominations of the Certificates that may be authenticated and delivered under the Trust Agreement is limited to the total specified in the Trust Agreement plus the denominations of any Certificates authenticated and delivered pursuant to **Section 311** or **Section 307.**

Section 303.   **General Title.**

The general title of the Certificates shall be *Detroit Retirement Systems Funding Trust* [*designation of particular Funding Trust*] *Certificates of Participation Series* [*Series designation*], and the specific title of Certificates shall include such other designations as may be provided in the Trust Agreement.

Section 304.   **Required Statement**

Each Certificate shall state on its face that it does not create any indebtedness of the City within the meaning of any limitation contained in the constitution and non-tax statutes of the State of Michigan or in the City of Detroit Charter.

Section 305.   **Issuable in Series**

The Certificates shall be issued in one or more Series as provided in the Trust Agreement.

Section 306.   **Form, Numbers, Denominations and Dating**

(a)      The Certificates shall be issued as fully registered securities in the form prescribed by the Trust Agreement. Certificates authenticated and delivered in definitive form

shall be printed, lithographed or typewritten on plain or safety paper with or without printed or steel engraved borders.

    (b)    *Unless* otherwise provided in the Trust Agreement, the Certificates shall be:

        (1)    numbered consecutively from "R-1" within each Series; *provided* that a distinctive designation shall be in addition to such number to, or notation made on, any Certificate authenticated and delivered in substitution for any lost, mutilated or destroyed Certificate;

        (2)    issued in the denomination of $5,000 and any multiple thereof; and

        (3)    dated the date of initial issuance.

## Section 307.    Authentication.

No Certificate shall be valid for any purpose or be entitled to any security or benefit under the Trust Agreement unless and until a certificate of authentication on such Certificate, substantially in the form prescribed by the Trust Agreement, has been manually executed by the Trustee. Such executed certificate of the Trustee upon a Certificate shall be the only and conclusive evidence that such Certificate has been authenticated and delivered under the Trust Agreement.

## Section 308.    Capital Appreciation COPs

The Principal Amount of any Capital Appreciation COPs shall accrete in accordance with the Accreted Value provided for in the Trust Agreement.

## Section 309.    Payments in US Dollars

All payments on Certificates shall be made by negotiable instruments payable in funds representing legal tender in the United States or by means of transferring such funds.

## Section 310.    Payment of Interest; Interest Rights Preserved.

    (a)    Interest payable on any Certificate and paid on an Interest Payment Date shall be paid to the Person in whose name that Certificate (or one or more Predecessor Certificates) is registered at the close of business on the Regular Record Date for such Series.

    (b)    Interest payable on any Certificate and *not* paid on an Interest Payment Date when due shall be *not* paid to the registered Holder on the relevant Regular Record Date by virtue of being such Holder and shall be payable as a Deficit Interest Related Payment to the Person in whose name such Certificate (or a Predecessor Certificate) is registered at the close of business on a Special Record Date for the payment of such Deficit Interest Related Payment.

    (c)    If an amount is payable as all or any part of a Deficit Interest Related Payment received by the Trustee, the Trustee shall establish a day for the payment of such amount not less than 10 days after the receipt of such amount and shall establish a Special Record Date which shall be not more than 15 nor fewer than 10 days before the date set for payment of such amount. The Trustee shall mail notice of a Special Record Date to the Certificateholders at least 10 days before such Special Record Date.

    (d)    Subject to the foregoing provisions of **this Section**, each Certificate delivered under the Trust Agreement upon transfer of or in exchange for or in lieu of any other Certificate

shall carry all the rights to Interest accrued and unpaid, and to accrue, which were carried by such other Certificate.

## Section 311.  Registration, Exchanges and Transfers.

(a)  There shall be kept by the Trustee at the designated corporate trust office of the Trustee a register (the *Registry*) for the registration of Certificates and for the registration of transfers of Certificates as herein provided *subject* to such reasonable regulations as the Trustee may prescribe.

(b)  Upon surrender of any Certificate for transfer of the registration thereof, the Trustee shall authenticate and register in the name of the designated transferee or transferees one or more new Certificates of the same tenor in any authorized denomination in like aggregate Principal Amount.

(c)  At the option of the Holder, Certificates may be exchanged for other Certificates of the same tenor in any authorized denomination, of like aggregate principal amount, upon surrender of the Certificates to be exchanged at the designated corporate trust office of the Trustee.  Whenever any Certificates are surrendered for exchange, the Trustee shall authenticate and deliver the Certificates that the Certificateholder making the exchange is entitled to receive.

(d)  All Certificates issued upon any transfer of registration or exchange of Certificates shall constitute valid evidences of beneficial interests in the Trust Estate evidencing the same beneficial interests and entitled to the same benefits under the Trust Agreement as the Certificates surrendered in such transfer or exchange.

(e)  No service charge may be made for any transfer of registration or exchange of Certificates, but the Trustee may make a charge sufficient to reimburse it for any tax, fee or other governmental charge required to be paid with respect such transfer or exchange.  The Trustee may make the payment of such tax, fee or other governmental charge and the cost of preparing each new Certificate delivered in such transfer or exchange a condition precedent to making any transfer of registration or exchange of any Certificate, to be paid by the Person requesting such transfer or exchange *unless* otherwise provided in the Trust Agreement.

(f)  The Trustee shall not be required (i) to transfer or exchange any Certificate during a period beginning at the opening of business 15 days before the day of the mailing of a notice of redemption of such Certificate and ending at the close of business on the day of such mailing, or (ii) to transfer or exchange any Certificate selected for redemption in whole or in part, during a period beginning at the opening of business on any Regular Record Date for such Certificates and ending at the close of business on the relevant Interest Payment Date therefor.

## Section 312.  Persons Deemed Owners.

The Trustee may treat the Person in whose name any Certificate is registered in the Registry as the owner of such Certificate, whether payments with respect to such Certificate shall be overdue or not, for the purpose of receiving payment of the principal thereof, premium, if any, and (subject to Section 310) Interest thereon and for all other purposes whatsoever.

### Section 313. Mutilated, Destroyed, Stolen or Lost Certificates.

(a)     To the extent not otherwise provided by law, *if* (i) any mutilated Certificate is surrendered to the Trustee, or the Trustee receives evidence to its satisfaction of the destruction, loss or theft of any Certificate, and (ii) there is delivered to the Trustee such security or indemnity as may be required by the Trustee to save the Trustee harmless, *then*, in the absence of notice to the Trustee that such Certificate has been acquired by a protected purchaser, the Trustee shall authenticate and deliver, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Certificate, a new Certificate of the same maturity and of like tenor and principal amount, bearing a number not contemporaneously outstanding.

(b)     In case any such mutilated, destroyed, lost or stolen Certificate has become or is about to become due and payable at Maturity, the Trustee in its discretion may, instead of issuing a new Certificate, pay such Certificate.

(c)     Upon the issuance of any new Certificate under **this Section**, the Trustee may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses connected therewith.

(d)     Every new Certificate issued pursuant to **this Section** in lieu of any destroyed, lost or stolen Certificate, shall constitute an original additional beneficial interest in the Funding Trust, whether or not the destroyed, lost or stolen Certificate shall be at any time enforceable by anyone, and shall be entitled to all the security and benefits of the Trust Agreement equally and ratably with all other Certificates issued thereunder

(e)     The provisions of **this Section** are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Certificates.

### Section 314. Cancellation and Destruction of Certificates.

(a)     All Certificates surrendered for payment, redemption, transfer or exchange shall be promptly cancelled by the Trustee upon its receipt thereof if not already cancelled.

(b)     No Certificate shall be authenticated in lieu of or in exchange for any Certificate cancelled as provided in **this Section**, *except* as expressly provided by the Trust Agreement.

(c)     All cancelled Certificates held by the Trustee shall be destroyed and disposed of by the Trustee in accordance with applicable record retention requirements.

### Section 315. Book-Entry Certificates; Securities Depository.

(a)     As used herein:

*Beneficial Owner* means any Person who indirectly owns Certificates pursuant to Part 5 of Article 8 of the Uniform Commercial Code in effect in the State of Michigan.

*Participant* means any Person whose ownership of Certificates and other securities is shown on books of the Securities Depository.

(b)     For so long as Certificates are registered in the name of a Securities Depository or its nominee, the Trustee shall not have any responsibility or obligation to any Participant or to any Beneficial Owner with respect to the following:

(1)     the accuracy of the records of the Securities Depository, its nominee or any Participant with respect to any ownership Interest in the Certificates,

(2)     the delivery to any Participant, and Beneficial Owner or any other Person, other than the Securities Depository of any notice with respect to the Certificates, including any notice of redemption, or

(3)     the payment to any Participant, any Beneficial Owner or any other Person, other than the Securities Depository of any amount with respect to the principal of or premium, if any, or Interest on the Certificates.

(c)     The Trustee shall pay all principal (and premium, if any) of and Interest on such Certificates only to or upon the order of the Securities Depository, and all such payments shall be valid and effective fully to satisfy and discharge the Funding Trust's obligations with respect to the principal (and premium, if any) of, and Interest on such Certificates to the extent of the sum or sums so paid.

(d)     Upon discontinuance of the use of the Book-Entry Only System maintained by the Securities Depository and upon receipt of notice from the Securities Depository containing sufficient information, the Trustee shall authenticate and deliver Certificates in certificated form to Beneficial Owners in exchange for the beneficial interests of such Beneficial Owners in corresponding principal amounts and in any Authorized Denomination.

(e)     Notwithstanding any other provision of the Trust Agreement to the contrary, *so long as* any Certificate is registered in the name of the Securities Depository or its nominee:

(1)     all payments with respect to the Principal and Interest on such Certificate and all notices of redemption, tender and otherwise with respect to such Certificate shall be made and given, respectively, to Securities Depository as provided in the representation letter with respect to such Certificates;

(2)     if less than all such Certificates of a maturity and series are to be redeemed, then the particular Certificates or portions of Certificates of such maturity and series to be redeemed shall be selected by the Securities Depository in such manner as the Securities Depository may determine; and

(3)     all payments with respect to principal of such Certificate and premium, if any, and Interest on such Certificate shall be made in such manner as shall be prescribed by the Securities Depository.

## Article IV — Redemption of Certificates

### Section 401.     Selection of Certificates to be Redeemed.

(a)     Whenever any Certificates of a Series are to be redeemed, the Trustee shall select the maturity or maturities that correspond to the prepaid Scheduled Payments giving rise to such redemption.

(b) Whenever Certificates of less than all of a maturity are to be redeemed, the Trustee shall select the particular Certificates to be redeemed from the Outstanding Certificates of such maturity and Series that have not previously been called for redemption in such manner as results in pro-rata redemption among all Holders of Certificates of the maturity being redeemed.

(1) All Certificates of the same Series and having the same maturity shall constitute a class for purposes of pro-rata redemption.

(2) The Trustee shall select Certificates for redemption pro-rata within each class.

(c) In the case of any maturity of Certificates for which Sinking Fund Installments have been established, any optional redemption of such Certificates shall be credited among such Sinking Fund Installments pro rata in accordance with the unpaid amounts thereof.

**Section 402. Notice of Redemption.**

(a) When any Certificates are to be redeemed, notice of any such redemption shall be given by the Trustee by first class mail, no fewer than 30 days and no more than 45 days before the Redemption Date to each Holder of Certificates to be redeemed at his/her last address in the Registry.

(b) All notices of redemption shall be dated and shall state:

(1) the Redemption Date;

(2) the Redemption Price;

(3) if less than all Outstanding Certificates are to be redeemed, the identification number, maturity dates and, in the case of a partial redemption of Certificates, the respective principal amounts of the Certificates to be redeemed;

(4) that on the Redemption Date the Redemption Price will become due and payable upon each such Certificate or portion thereof called for redemption, and that interest thereon shall cease to accrue from and after said date;

(5) the place where the Certificates to be redeemed are to be surrendered for payment of the Redemption Price, which place of payment shall be the designated corporate trust office of the Trustee or other Paying Agent; and

(6) the proposed redemption (except in the case of a redemption from Sinking Fund Installments (a *Sinking Fund Redemption*) is conditioned on the Trustee having received a Redemption Related Payment on the Prepayment Receipt Day sufficient to pay the full Redemption Price of the Certificates to be redeemed.

(c) The failure of the Holder of any Certificate to receive notice of redemption given as provided above, or any defect therein, shall not affect the sufficiency of the proceedings for the redemption of any Certificates as to which no failure or deficiency occurred.

(d) Concurrently with giving any notice of redemption, the Trustee shall provide additional notices in accordance with **this subsection** to the extent applicable:

(1)     An additional notice that provides material compliance with Securities Exchange Act Release No. 34-23856 (Dec. 3, 1986) as the same may be modified, amended or supplemented from time to time by formal action of the Securities and Exchange Commission or by generally accepted practice of corporate trustees. No failure to give such additional notice or defect therein or in the manner in which given shall affect the sufficiency of the proceedings for the redemption of any Certificates.

(2)     Except in the case of a Sinking Fund Redemption, an additional notice that identifies the Certificates to be redeemed and the principal amounts and CUSIP numbers thereof shall be provided to each Insurer.

(3)     No failure to give any additional notice provided for in this subsection or defect therein or in the manner in which given shall affect the sufficiency of the proceedings for the redemption of any Certificates.

## Section 403.    Certificates Payable on Redemption Date.

(a)     Notice of redemption having been given as aforesaid, the Holders of the Certificates so to be redeemed shall be entitled, on the Redemption Date, to payment of an amount equal to the Redemption Price therein specified and from and after such date (unless the full amount of the Redemption Price is not distributed) the Holders of such Certificates shall cease to be entitled to any further payment in respect of Interest. Upon surrender of any such Certificate for redemption in accordance with said notice, the Holder of such Certificate shall be paid by the Trustee an amount equal to the Redemption Price. Installments of Interest with a due date on or prior to the Redemption Date shall be payable to the Holders of the Certificates as of the relevant Record Dates.

(b)     If any Certificate called for redemption shall not be so paid upon surrender thereof for redemption, the principal (and premium, if any) shall, until paid, bear Interest from the Redemption Date at the rate prescribed in the Certificate.

## Section 404.    Certificates Redeemed in Part.

Any Certificate which is to be redeemed only in part may, at the option of the Holder thereof:

(1)     be presented for notation thereon by the Trustee of the payment as of the Redemption Date of the redeemed portion of the principal thereof; or

(2)     be surrendered at the place of payment therefor (with, if the Trustee so requires, due endorsement by, or a written instrument of transfer in form satisfactory to the Trustee duly executed by, the Holder thereof or his attorney or legal representative duly authorized in writing), and the Trustee shall authenticate and deliver to such Holder, without service charge, a new Certificate or Certificates of the same maturity and Series of any authorized denomination or denominations as requested by such Holder in aggregate principal amount equal to and in exchange for the unredeemed portion of the principal of the Certificate so surrendered.

## Article V — Payments to Certificateholders

### Section 501.  Deficiency Payments

(a)    On the day that the Trustee receives a <u>Deficit Interest Related Payment</u> from the Contract Administrator, the Trustee shall establish a Special Record Date pursuant to **Section 310** and pay the same to the Certificate Holders entitled thereto in accordance with their relative Percentage Interests.

(b)    On the day that the Trustee receives a Deficiency Payment, other than a Deficit Interest Payment, from the Administrator the Trustee shall pay the same to the Certificate Holders entitled thereto in accordance with their relative Percentage Interests.

### Section 502.  Other Payments

(a)    On each <u>Interest Payment Date</u> for which the Trustee has received an Interest Related Payment from the Contract Administrator, the Trustee shall pay the same to the Holders of Outstanding Certificates entitled to such Interest by the terms of their Certificates as of the Regular Record Date in accordance with their relative Percentage Interests.

(b)    On each <u>Principal Payment Date</u> for which the Trustee has received a Principal Related Payment from the Contract Administrator, the Trustee shall pay the same to the Holders of Certificates entitled to such Principal Related Payment by the terms of their Certificates in accordance with their relative Percentage Interests.

(c)    On each <u>Sinking Fund Installment Date</u> for which the Trustee has received a Sinking Fund Related Payment from the Contract Administrator, the Trustee shall pay the same to Holders of Outstanding Certificates entitled to such Sinking Fund Related Payment by reason of the redemption of their Certificates in accordance with their relative Percentage Interests of Certificates being redeemed.

(d)    On each <u>Redemption Date</u> that *is* also an Interest Payment Date for which the Trustee has received a Redemption Related Payment from the Contract Administrator, the Trustee shall pay the same to Holders of Outstanding Certificates entitled to such Redemption Related Payment by reason of the redemption of their Certificates in accordance with their relative Percentage Interests of Certificates being redeemed.

(e)    On each <u>Redemption Date</u> that is *not* also an Interest Payment Date for which the Trustee has received a Redemption Related Payment that includes associated Accrued Service Charges from the Contract Administrator, the Trustee shall pay the same to the Holders of Outstanding Certificates entitled to such Redemption Related Payment and Accrued Service Charges by reason of the redemption of their Certificates in accordance with their relative Percentage Interests of Certificates being redeemed.

### Section 503.  Payments Made From Credit Insurance

In determining if any payment under the Certificates has been made, no effect shall be given to any payment made with funds provided under any Credit Insurance.

## Article VI — The Trustee

### Section 601.  Certain Duties and Responsibilities.

(a)     The Trustee undertakes to perform such duties and only such duties as are specifically set forth in the Trust Agreement, and no implied covenants or obligations shall be read into the Trust Agreement against the Trustee.

(b)     In the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates, documents, other instruments or opinions furnished to the Trustee and conforming to the requirements of the Trust Agreement or the Service Contract; *but* in the case of any such certificates, documents, other instruments or opinions which by any provision hereof or thereof are specifically required to be furnished to the Trustee, the Trustee is under a duty to examine the same to determine whether or not they conform to the requirements of the Trust Agreement.

(c)     No provision of the Trust Agreement or the Service Contract shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, *except* that

(1)     the Trustee shall not be liable for any error of judgment made in good faith by an authorized officer of the Trustee, *unless* it is proved that the Trustee was negligent in ascertaining the pertinent facts;

(2)     the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders of a majority in principal amount of the Outstanding Certificates relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee, under the Trust Agreement or the Service Contract; and

(3)     no provision of the Trust Agreement shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder or thereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

(d)     Whether or not therein expressly so provided, every provision of the Trust Agreement relating to the conduct or affecting the liability of or affording protection to the Trustee is subject to the provisions of this Article.

### Section 602.  Certain Rights of Trustee.

(a)     The Trustee may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties;

(b)     Any request, direction or consent of a Corporation mentioned in the Trust Agreement shall be sufficiently evidenced respectively by a Corporation Request, Corporation Order or Corporation Consent.

(c)     Whenever in the administration of the Trust Agreement the Trustee shall deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Trustee (unless other evidence be herein specifically prescribed) may, in the absence of bad faith on its part, rely upon a certificate of the Contract Administrator.

(d)     The Trustee may consult with counsel, and the written advice of such counsel is full and complete authorization and protection in respect of any action taken, suffered or omitted by the Trustee hereunder in good faith and in reliance thereon.

(e)     The Trustee is under no obligation to exercise any of the rights or powers vested in it by the Trust Agreement at the request or direction of any of the Certificateholders pursuant to the Trust Agreement, *unless* such Certificateholders shall have offered to the Trustee reasonable security or indemnity against the costs, expenses and liabilities which might be incurred by it in compliance with such request or direction.

(f)     The Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, or other paper or document, *but* the Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit.

(g)     The Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys and the Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder.

(h)     The Trustee shall have no duty to see to the recording, filing or registration of any instrument or document (including financing or continuation statements or filing under tax or security laws) or any rerecording, refiling or re-registration.

(i)     The Trustee shall not have any responsibility to examine or review and shall have no liability for the contents of any documents submitted to or delivered to any Certificateholder or any other Person in the nature of an official statement or offering circular, preliminary or final.

### Section 603.     Not Responsible for Recitals or Issuance of Certificates.

The Trustee assumes no responsibility for the correctness of the recitals contained in the Trust Agreement, in a Service Contract or in the Certificates *except* the certificate of authentication on the Certificates. The Trustee makes no representations as to the value or condition of the Trust Estate or any part thereof, or as to the title thereto or as to the security afforded thereby or hereby, or as to the validity or sufficiency of the Trust Agreement or of the Certificates.

### Section 604.     May Hold Certificates.

The Trustee, in its individual or any other capacity, may become the owner or pledgee of Certificates with the same rights it would have if it were not Trustee.

### Section 605. Money Held in Trust.

Money held by the Trustee in trust hereunder need not be segregated from other funds except to the extent required by law or by other provision of the Trust Agreement. The Trustee shall be under no liability for interest on any money received by it hereunder.

### Section 606. Compensation and Reimbursement

(a) The Trustee is entitled to payment or reimbursement:

(1) from time to time for reasonable compensation for all services rendered by it hereunder (which compensation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust); and

(2) except as otherwise expressly provided herein, upon its request, for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of the Trust Agreement (including, without limitation, the reasonable compensation and the expenses and disbursements of its agents and counsel), except any such expense, disbursement or advance as may be attributable to the Trustee's negligence, willful misconduct or bad faith.

(b) The Trustee is also entitled indemnification for, and to be held harmless against, any loss, liability or expense incurred without negligence, willful misconduct or bad faith on its part, arising out of or in connection with the acceptance or administration of the Trust Agreement, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder.

(c) The compensation, expenses and indemnification of the Trustee here under shall be an Additional Service Payment under the Service Contracts.

### Section 607. No Lien

The Trustee shall not have any lien on any funds held by it under the Trust Agreement.

### Section 608. Corporate Trustee Required; Eligibility.

(a) There shall at all times be a Trustee hereunder which is a trust company or bank with trust powers organized under the laws of the United States of America or of any state of the United States with a combined capital and surplus of at least $50,000,000. *If* such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of such supervising or examining authority, *then* for the purposes of **this Section**, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published.

(b) The Trustee shall resign immediately in the manner and with the effect specified in this Article if it becomes ineligible under **this Section**.

## Section 609.   Replacement of Trustee.

(a)   *No Vacancy.*

No resignation or removal of the Trustee and no appointment of a successor Trustee pursuant to this Article shall be effective until the successor Trustee accepts its appointment as provided in **this Section**.

(b)   *Resignation.*

The Trustee may resign at any time, but such resignation shall become effective only in accordance with **subsection (a)**, above.  Notice of any such resignation shall be given to the Corporations, the Holders of all Outstanding Certificates and any Insurer not then in default under its Credit Insurance.

(c)   *Removal by Certificateholders.*

(1)   The Holders of a majority in principal amount of Outstanding Certificates may remove the Trustee by so notifying the Trustee and any Insurer.

(2)   If the Trustee becomes ineligible under **Section 608**, any Certificateholder may petition a court of competent jurisdiction for the appointment of a successor.

(d)   *Appointment of Successor.*

(1)   The retiring Trustee or the Corporations may appoint a successor at any time prior to the date on which a successor Trustee takes office.

(2)   If a successor Trustee does not take office within 45 days after the retiring Trustee resigns or is removed, any Certificateholder may petition a court of competent jurisdiction for the appointment of a successor Trustee.

(3)   Within one year after a successor Trustee appointed by the Corporations or a court of competent jurisdiction takes office, the Holders of a majority in principal amount of Outstanding Certificates may appoint a successor Trustee to replace such successor Trustee.

(e)   *Acceptance of Appointment.*

(1)   A successor Trustee shall deliver written acceptance of its appointment to the retiring Trustee and to each Corporation.  Thereupon the resignation or removal of the retiring Trustee shall be effective, and the successor Trustee shall have all the rights, powers and duties of the Trustee under the Trust Agreement.

(2)   The successor Trustee shall mail a notice of its succession to the Certificateholders.

(3)   Upon the appointment of a successor Trustee becoming effective as provided in **this Section**, the retiring Trustee shall promptly transfer all property held by it as Trustee to the successor Trustee.

## Section 610.   Merger, Consolidation and Succession to Business.

If the Trustee consolidates, merges or converts into, or transfers all or substantially all its corporate trust business to, another corporation, the successor corporation without any further act

shall be the successor Trustee *if* such successor corporation is eligible under **Section 608**. The successor Trustee may adopt the authentication of Certificates authenticated by the predecessor Trustee and deliver such Certificates with the same effect as if the successor Trustee had authenticated such Certificates.

## Section 611.   ERISA

The Trustee acknowledges and agrees that, in the event that assets of the Funding Trust are deemed to be plan assets of a Certificateholder that is an employee benefit plan subject to Title I of ERISA (an *ERISA Plan*), the Trustee is a fiduciary to such ERISA Plan with respect to such ERISA Plan's undivided interests in the Trust Estate, and this Trust Agreement shall be deemed to be the management agreement between the Trustee and such ERISA Plan.

## Article VII — Supplemental Trust Agreements

### Section 701.   Supplemental Trust Agreements without Consent of Certificateholders.

Without the consent of the Holders of any Certificates, the Corporations and the Trustee may from time to time enter into one or more Trust Agreements supplemental to the Trust Agreement (a *Supplemental Trust Agreement*) for any of the following purposes:

(1)     to correct or amplify the description of Trust Estate, or better to assure, convey and confirm unto the Trustee any of the Trust Estate or the lien of the Trust Agreement thereon, or to add to the Trust Estate subject to the lien of the Trust Agreement additional property; or

(2)     to add to the conditions, limitations and restrictions on the authorized amount, terms or purposes of the issue, authentication and delivery of the Certificates, as herein set forth, additional conditions, limitations and restrictions thereafter to be observed; or

(3)     to evidence the succession of a new trustee under the Trust Agreement; or

(4)     to add to rights, powers and remedies of the Trustee for the benefit of the Holders of the Certificates; or

(5)     to cure any ambiguity, to correct or to supplement any provision in the Trust Agreement which may be inconsistent with any other provision herein; or

(6)     to provide for the issuance of Additional Certificates; or

(7)     to make any other change that does not adversely affect the rights of Certificateholders.

## Section 702.   Supplemental Trust Agreements with Consent of Certificateholders.

(a)     With the consent of the Holders of not less than a majority in principal amount of the Certificates then Outstanding, the Trustee may enter into one or more Supplemental Trust Agreements for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Trust Agreement or of modifying in any manner the rights of the Holders of the Certificates under the Trust Agreement; *provided*, however, that no

such Supplemental Trust Agreement shall, without the consent of the Holder of each Outstanding Certificate affected thereby; or

(1) change any Principal Payment Date, or Interest Payment Date of any Certificate, or reduce the principal amount thereof or Sinking Fund Installment or the Interest thereon or any premium payable upon the redemption thereof, or change any place of payment where, or the coin or currency in which, any Certificate, or the interest thereon is payable, or impair the right to institute suit for the enforcement of any such payment on or after the stated maturity thereof (or, in the case of redemption, on or after the Redemption Date); or

(2) reduce the percentage in principal amount of the Outstanding Certificates, the consent of whose Holders is required for any such Supplemental Trust Agreement, or the consent of whose Holders is required for any waiver provided for in the Trust Agreement of compliance with certain provisions of the Trust Agreement or certain defaults hereunder and their consequences; or

(3) modify any of the provisions of **Sections 202 and 203**; or

(4) modify any of the provisions of **this Section**, or **Section 701** *except* to increase any percentage provided thereby or to provide that certain other provisions of the Trust Agreement cannot be modified or waived without the consent of each Holder affected thereby.

(b) It is not necessary that the required percentage in principal amount of Certificateholders under **this Section** approve the particular form of any proposed Supplemental Trust Agreement. It is sufficient if the Certificateholders approve the substance thereof.

### Section 703. Execution of Supplemental Trust Agreements.

(a) Prior to executing, or accepting the additional trusts created by, any Supplemental Trust Agreement permitted by this Article or the modification thereby of the trusts created by the Trust Agreement, the Trustee shall be entitled to receive and shall be fully protected in relying upon, an opinion of counsel addressed and delivered to the Trustee stating to the effect that the execution of such Supplemental Trust Agreement is authorized or permitted by the Trust Agreement and that the Supplemental Trust Agreement will be a valid and binding agreement of each Corporation, upon the execution and delivery thereof.

(b) The Trustee is not obligated to enter into any Supplemental Trust Agreement that affects the Trustee's own rights, duties or immunities under the Trust Agreement.

### Section 704. Preconditions to Effectiveness

(a) *If* the Trustee received a Qualifying Opinion in connection with the formation of the Trust, *then no* Supplemental Trust Agreement shall become effective *unless and until* the Trustee receives an opinion in form and substance reasonably satisfactory to the Trustee of counsel reasonably acceptable to the Trustee to the effect that such supplement will not cause the Trust to fail to be treated as such a grantor trust.

(b) Each Supplemental Trust Agreement is subject to the prior written consent of any Insurer not then in default under its Credit Insurance.

(c)    Any Rating Agency shall receive notice of each Supplemental the Trust Agreement and a copy thereof at least 15 days in advance of its execution.

### Section 705.    Effect of Supplemental Trust Agreements.

Upon the execution of any Supplemental Trust Agreement under this Article, the Trust Agreement shall be modified in accordance therewith and such Supplemental Trust Agreement shall form a part of the Trust Agreement for all purposes; and every Holder of Certificates theretofore or thereafter authenticated and delivered hereunder shall be bound thereby.

### Section 706.    Copies to Insurer

Any Insurer shall be provided with a full transcript of all proceedings relating to the execution of any Supplemental Trust Agreement.

### Section 707.    Reference in Certificates to Supplemental Trust Agreements.

(a)    Certificates authenticated and delivered after the execution of any Supplemental Trust Agreement pursuant to this Article may, and if required by the Trustee shall, bear a notation in form approved by the Trustee as to any matter provided for in such Supplemental Trust Agreement.

(b)    If a Corporation shall so determine, new Certificates so modified as to conform, in the opinion of the Trustee and such Corporation, to any such Supplemental Trust Agreement may be prepared and executed by such Corporation and authenticated and delivered by the Trustee in exchange for Outstanding Certificates.

## Article VIII — Miscellaneous Provisions

### Section 801.    Notices to Certificateholders; Waiver.

(a)    Where the Trust Agreement provides for the publication of notice to Certificateholders, such notice shall be sufficiently given (unless otherwise expressly provided in the Trust Agreement) if in writing and mailed, first-class postage prepaid, to each Certificateholder at his address as it last appears in the Registry, no later than the latest date and no earlier than the earliest date provide for the first publication of such notice.

(b)    Where the Trust Agreement provides for notice in any manner, such notice may be waived by the Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice shall be filed with the Trustee, *but* such filing shall not be a condition precedent to the validity of any action taken in reliance on the waiver.

### Section 802.    Insurer Treated as Certificateholder

*Notwithstanding any other provision hereof,* any Insurer not then in default under its Credit Insurance shall be treated as the Holder of the Certificates insured by it for the purposes of actions to be taken by Certificateholders under the Trust Agreement and for the purpose of giving all other consents, directions and waivers that Certificateholders may give.

21

### Section 803.   Severability

The invalidity or unenforceability of any provision of the Trust Agreement shall not affect the remaining provisions hereof.

### Section 804.   Payments Due on Saturdays, Sundays and Holidays

In any case where the date fixed for payment of the Certificates shall not be a Business Day, *then* such payment need not be made on such date but may be made on the next succeeding Business Day with the same force and effect as if made on the date fixed for such payment.

[*End of General Terms*]

13-53846-tjt    Doc 360-7    Filed 08/16/13    Entered 08/16/13 18:32:21    Page 60 of 60