**<u>Exhibit P</u>**

**Swap Surety Policy**



**Financial Guaranty Insurance Company**
125 Park Avenue
New York, NY 10017
T 212·312·3000
T 800·352·0001

## SURETY BOND

**OBLIGATION INSURED:**
Payments Due by Detroit Police and Fire
Retirement System Service Corporation Under
the Swap Agreement Dated as of May 25, 2005
in connection with Related Rate Swap
Transaction and Confirmation Thereto Dated
June 7, 2006, Each Between the Detroit Police
and Fire Retirement System Service Corporation
and UBS AG

**SURETY BOND NUMBER:** 06010252

**CONTROL NUMBER:** 0010001

**EFFECTIVE DATE:** June 12, 2006

**PREMIUM:** No additional premium paid in
connection herewith – premium for
Obligation Insured paid in connection with
Municipal Bond New Issue Insurance Policy
06010250

KNOW ALL MEN BY THESE PRESENTS, that Financial Guaranty Insurance Company, a New York stock insurance company, as Surety (the "Surety") for Detroit Police and Fire Retirement System Service Corporation (the "Principal"), in consideration of the payment of the premium and subject to the terms of this Surety Bond, is held and firmly bound unto the Beneficiary identified below for, and unconditionally and irrevocably agrees to pay, subject to the terms and conditions set forth herein, the payment of each and every Insured Payment which shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Principal (as such terms are defined below). This Surety Bond is non-cancellable for any reason.

TERMS AND CONDITIONS

SECTION 1. Definitions

In addition to the terms defined elsewhere herein, the following terms shall have the respective meanings set forth below:

(a) "Beneficiary" means UBS AG and any successor or assign pursuant to the Swap Agreement.

(b) "Business Day" shall have the meaning set forth in the Swap Agreement.

(c) "Defaulted Amount" means any portion of an Insured Payment Due for Payment and unpaid by reason of Nonpayment by the Principal.

(d) "Due for Payment" means payable upon the occurrence of each Fixed Rate Payer Payment Date (as such terms are defined in the Swap Agreement) or in the case of a Settlement Amount payable by the Principal as a result of the designation of an Early Termination Date, all in accordance with the Swap Agreement.

Form 9163
Page 1 of 5

(e) "Insured Payment" means any amount due and payable by the Principal to the Beneficiary in accordance with the terms and provisions of the Swap Agreement in respect of the Rate Swap Transaction, but excludes any Settlement Amount due as a result of the designation of an Early Termination Date except for any Settlement Amount due as a result of the designation of an Early Termination Date (1) at the direction of the Surety and (2) following the occurrence of an Additional Termination Event under Part 5(ii)(a) or (b) of the Schedule to the Swap Agreement; provided, however, that with respect to the payment of any Settlement Amount pursuant to clause (2) above, such amount shall not exceed $15,353,047. In addition, any other amount that may otherwise be payable by the Principal under the Swap Agreement, including, without limitation, fees, expenses or penalty rates shall not be an Insured Payment under this Surety Bond. In the event a Notice of Nonpayment for a Defaulted Amount is not duly given to the Surety by the Beneficiary on or before the Business Day succeeding the date on which such Insured Payment was Due for Payment, Insured Payment shall exclude interest on any overdue payment required under the Swap Agreement accruing on and after the fifth Business Day succeeding the date on which such Insured Payment was Due for Payment.

(f) "Nonpayment by the Principal" in respect of an Insured Payment means that the funds remitted by or on behalf of the Principal to the Beneficiary are insufficient for payment in full of such Insured Payment which is then Due for Payment. Nonpayment by the Principal includes any Insured Payment paid by the Principal which pursuant to applicable insolvency law has been recovered from the Beneficiary by a trustee in bankruptcy, receiver or liquidator in accordance with an order of a court having competent jurisdiction.

(g) "Swap Agreement" means the ISDA Master Agreement (including the Schedule thereto) dated as of May 25, 2005, by and between the Beneficiary and the Principal, as the same may be amended or supplemented from time to time with the prior written approval of Surety.

(h) "Rate Swap Transaction" means the Rate Swap Transaction (UBS AG Ref: 37380313) with an initial notional amount of USD $153,801,500 and related Confirmation, each dated June 7, 2006, by and between the Beneficiary and the Principal.

SECTION 2. Claims

The Beneficiary may make a claim under this Surety Bond for the amount of any Defaulted Amount by executing and delivering to the Surety a Notice of Nonpayment in the form attached hereto as Exhibit I, with appropriate insertions. Such Notice of Nonpayment when properly completed and delivered shall constitute proof of a claim hereunder. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 3:00 p.m. (New York City time) on such Business Day; otherwise it will be deemed received on the next Business Day. If any Notice of Nonpayment received by the Surety is not substantially in the form appended hereto as Exhibit I or is otherwise insufficient for the purpose of making a claim hereunder, it shall be deemed not to have been received by the Surety for purposes of the foregoing sentence, and the Surety or its designated agent shall promptly so advise the Beneficiary and the Beneficiary may submit an amended Notice of Nonpayment.

The Surety will pay each Defaulted Amount to the Beneficiary on the date such Defaulted Amount becomes Due for Payment or on the Business Day next following the day on which the Surety receives Notice of Nonpayment, whichever is later, in accordance with the Notice of Nonpayment; *provided, however,* that payment by the Surety of any Insured Payment which has been paid by the Principal but which payment has been subsequently rescinded or must otherwise be restored by the Beneficiary pursuant to an order of a court having competent jurisdiction under applicable insolvency law (such payment to be made to the trustee, receiver or liquidator of the insolvent debtor) will be made on the second Business Day following receipt on

13-53846-gl   Doc 360-17   Filed 08/16/13   Entered 08/16/13 18:32:21   Page 3 of 6

a Business Day by the Surety and its designated agent of (i) a certified copy of such order, (ii) an irrevocable and enforceable assignment to the Surety of all rights and claims of the Beneficiary against the Principal with respect to such payment and (iii) appropriate instruments effecting the appointment of the Surety and its designated agent to act as agent for the Beneficiary in any proceeding related to such insolvency. Upon such payment, the Surety will become the owner of all right to payment of such Defaulted Amount and shall be fully subrogated to all of Beneficiary's rights thereto, including Beneficiary's right to payment thereof and the Beneficiary shall be deemed to have assigned and transferred, without the necessity of further action, all right, title and interest of the Beneficiary in and to any and all claims and rights it may have against the Principal or any other person with respect to the Insured Payment that has been paid to the Beneficiary, and the Beneficiary will take such further action as the Surety may reasonably request to more effectively vest such claims and rights in the Surety.

The Surety hereby waives all defenses of any kind either it or the Principal might have in respect of the Swap Agreement or the obligation to pay the amounts due thereunder in full.

SECTION 3. <u>Miscellaneous</u>

(a) No waiver of any rights or powers of the Surety or the Beneficiary or consent by either of them shall be valid unless in writing signed by an authorized officer or agent thereof. The waiver of any right by the Surety or the Beneficiary or failure to exercise promptly any right shall not be construed as a waiver of any other right to exercise the same at any time thereafter.

(b) This Surety Bond will be governed by, is issued under, and shall be construed in accordance with, the laws of the State of New York.

(c) The insurance provided by this Surety Bond is not covered by the New York Property/Casualty Insurance Security Fund (New York Insurance Code, Article 76) .

(d) Acceleration of amounts payable under this Surety Bond may occur solely at the option of the Surety.

(e) This Surety Bond shall terminate at the close of business, New York time, on June 15, 2034, except that if at any time an Insured Payment or Insured Payments, or any part thereof, is rescinded or must be otherwise restored by the Beneficiary as a result of the bankruptcy or insolvency of the Principal, the Surety's obligations with respect to such Insured Payment or Insured Payments hereunder shall continue to be effective or shall be reinstated, as the case may be.

13-53846-gr Doc 360-17 Filed 08/16/13 Entered 08/16/13 18:32:21 Page 4 of 6

(f) In the event the Principal shall pay, or cause to be paid, to or for the account of the Beneficiary the amount of all Insured Payments required under the Swap Agreement, this Surety shall be null and void subject to the continuation and reinstatement provisions set forth in (e) above.

IN WITNESS WHEREOF, Financial Guaranty has caused this policy to be affixed with its corporate seal and to be signed by its duly authorized officer in facsimile to become effective and binding upon Financial Guaranty by virtue of the countersignature of its duly authorized representative.

President                                          Authorized Representative

Effective Date: June 12, 2006

Form 9163
Page 4 of 5

# EXHIBIT I

## NOTICE OF NONPAYMENT

To:     Financial Guaranty Insurance Company
        125 Park Avenue
        New York, New York 10017
        Attention: General Counsel
        Telephone: (212) 312-3000
        Telecopier: (212) 312-3206

Re:     Surety Bond Number 06010252 (the "Surety Bond")

     The undersigned, a duly authorized officer of _____ (the "Beneficiary"), hereby certifies to Financial Guaranty Insurance Company, the facts set forth below as of the date hereof. All capitalized terms not otherwise defined herein shall have the same respective meanings ascribed to them in the Surety Bond.

1. A Defaulted Amount in the aggregate amount of $_____ is Due for Payment and remains unpaid by reason of Nonpayment by the Principal.

2. The date such Defaulted Amount became Due for Payment is _____.

3. The amount requested in this Notice of Nonpayment should be paid to: [Payment Instructions].

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed Five Thousand ($5,000.00) Dollars and the stated value of the claim for each such violation.

     IN WITNESS WHEREOF, the beneficiary has executed and delivered this notice this _____ day of _____.

_____, as Beneficiary

By:     _____
Name:   _____
Title:  _____

---

For Financial Guaranty Insurance Company Use Only

Wire Transfer sent on _____

by _____

Confirmation Number _____

Form 9163
Page 5 of 5