# EXHIBIT 1

# AFFIDAVIT OF DAVID SOLE

STATE OF MICHIGAN      )
                             ) SS
COUNTY OF WAYNE      )

1.  I David Sole, do affirm and state as follows:

2.  I am a retired City of Detroit chemist and former president of UAW 2334-SCATA. My wife is a retired City of Detroit bus driver.

3.  I have a Master's degree from the University of Michigan in Biological Chemistry, and have extensive studies in mathematics.

4.  I filed an appearance as an interested party in the City of Detroit bankruptcy case, 13-53846.

5.  On January 2, 2013, I filed a Freedom of Information Request with the City of Detroit in which I requested copies of all bond agreements including interest rate swaps between the City of Detroit and any banks and financial institutions, as well as all correspondence, emails, notes, etc. associated with the procurement of the bonds. **Exhibit A, attached**.

6.  When the City of Detroit did not timely respond to my FOIA request, on February 21, 2013 I filed a lawsuit pursuant to the FOIA. Wayne County Circuit Court case No. 13-002121-CZ. **Exhibit B, attached**.

7.  In response to this lawsuit, the City of Detroit produced over 3200 pages of documents, mostly copies of bond documents and interest rate swap agreements. However, the City of Detroit failed to produce all letters, emails, memos or other material associated with the negotiations for these bonds and swaps.

8.  We were beginning to enter the discovery phase of my FOIA case, when the case was administratively dismissed due to the pending bankruptcy proceeding.

1

9. After receiving the bond documents from the City of Detroit, I began a thorough review of the documents.

10. To aid in that review, I read numerous articles relating to the mechanism of municipal bond financing and especially of interest rate swaps. Many of the articles I reviewed and the City of Detroit bond documents are posted on the website, Detroitdebtmoratorium.org.

11. Based on that review, it is clear that the City of Detroit issued pension obligation certificates (POCs) (through the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation) accompanied with interest rate swaps, to aid in meeting its pension obligations in May 2005. The POCs and swaps were with UBS, SBS, with Merrill Lynch (a unit of Bank of America) standing behind the SBS bonds, as well as Citibank.

12. The 2005 bonds and swap agreements were for nine (9) and twenty (20) year terms. They provided that the actual interest rate to be paid on the bonds was a margin of .28 plus the 3 month Libor (Interbank) index. **Exhibit C, attached**.

13. However, pursuant to the swap agreements, the City of Detroit, through the service corporations, was to pay a fixed interest rate of 5.123%. **Id**.

14. Under the swaps, the City was responsible for paying the difference between the actual floating interest rate on the bond (.28% plus Libor) and the 5.123% fixed rate to the counterparties, UBS and SBS/Merrill Lynch, if the floating interest rate was less than the fixed rate. If the floating rate exceeded the fixed rate, the bank would have to pay that difference back to the City of Detroit. **Id**.

15. In June 2006, the 2005 bond and swap agreements between the City of Detroit through the Detroit Police and Fire Retirement System Service Corporation and the Detroit

2

General Retirement System Service Corporation were terminated and replaced with new pension obligation certificates and interest rate swaps.

16. The 2006 POCs and swaps provided for a 28 year term for the bonds and swaps, with an actual floating rate of .34 margin plus the three (3) month Libor index rate payable on the bonds, and a fixed interest rate of 4.991% through June 2007, 5.666% from June 2007 to June 2008, and 6.256% payable from the City of Detroit to the banks (UBS and SBS/Merrill Lynch). **Exhibit D, attached**.

17. Again, under the swaps, the City was responsible for paying the difference between the actual floating interest rate on the bond and the fixed rate to the counterparties, UBS and SBS/Merrill Lynch, if the floating interest rate was less than the fixed rate. If the floating rate exceeded the fixed rate, the banks would have to pay that difference back to the City of Detroit.

18. The 2006 POCs and swaps were considered unsecured debt, not backed by any specific revenues or even the full faith and credit of the City of Detroit. **Exhibit E, attached**.

19. However, the swap agreement did provide for termination events, at which time the party against whom the swap was terminated would be immediately liable for payment of the derivative amount, the difference between the floating interest amount and fixed interest rate amount projected over the term of the bond and the swap.

20. In 2009, when the rating agencies, Moody's and Standard and Poor's, downgraded the City of Detroit's bond rating, UBS and SBS/Merrill Lynch declared a termination event. Amended swap agreements were negotiated at that time.

21. Pursuant to the amended swap agreements, the fixed interest rate payable by the City of Detroit to the banks was raised to 6.323 effective July 1, 2010, the termination date was

3

moved up to 2029, and casino tax dollars were pledged as a security for the swap payments. **Exhibit F, attached**.

22.     Beginning in 2008, the three month Libor began a precipitous drop. I pulled the 3 month Libor figures from the Internet. The three month Libor rate fell from 4.7025% in January 2008 to 1.425% in January 2009, to rates between .25% to a maximum of .58% from January 2010 to the present. The current 3 month Libor rate is .2656%. **Exhibit G, attached**.

23.     What this means, is that while the City of Detroit is paying a 6.323% interest rate to UBS and Bank of America, based on the interest rate swaps associated with the Pension Obligation Certificates, the actual interest rate being paid on the bonds is only .6056% for this month (.34 margin plus the .2625 Libor rate). The difference between the 6.323% interest rate paid to the banks and the .6056% interest which is the actual interest rate on the bonds, is pocketed by UBS and Bank of America as clear profit extracted from the people of Detroit.

24.     According to Emergency Manager Orr's May 12, 2013 Financial and Operating Plan, this drop in the Libor rate is costing the City of Detroit approximately $45.1 million a year in payments to the UBS and Bank of America, for which the City of Detroit receives no benefit whatsoever. **Exhibit H, attached**.

25.     UBS and Bank of America have already netted at least $160 million in clear profit off the City of Detroit based on the interest rate swaps they sold to the city on the pension obligation certificates, excluding fees also associated with the financial deals.

26.     According to an article in Bloomberg News, if UBS and Bank of America were to declare a termination event based on the City of Detroit's declaration of bankruptcy, these financial entities would claim another $473 million from the City of Detroit's citizens. **Exhibit I, attached**.

4

27. UBS is one of several banks that have been implicated in rigging the Libor, the Interbank index to which the interest rate on Detroit's pension obligation certificates are linked. **Exhibit J, attached**.

28. Based on a method to calculate the effect of Libor manipulation which I have been supplied with, this Libor manipulation has cost the City of Detroit approximately $11 million between 2007 and 2010 (this is based on a .0025 yearly Libor understatement).

29. In addition, articles and studies recently published have pointed to the "ISDA" fix. This entails involvement of banks in rigging the indexes utilized to calculate termination fees on hedging derivatives like the interest rate swaps between the City of Detroit and UBS and Bank of America. According to the attached study, Bank of America and UBS are implicated in both the Libor and ISDA fix. **Exhibit K, attached**.

30. Three former UBS executives were recently convicted of criminal conspiracy for deceiving cities and towns by rigging bids to invest municipal bond proceeds. A former Bank of America executive was also indicted for participating in a conspiracy to defraud municipal bond investments. **Exhibit L, attached**.

31. The SEC has filed complaints against both UBS and Bank of America for their involvement in illegal activities with regard to the municipal bond market. The SEC judgment with UBS includes the Detroit Water Department among others for fraudulent municipal bond activity. **Exhibit M, Attached**.

32. Along with several other retirees, I have sent a letter to Senator Carl Levin requesting that he aid us in securing the SEC's intervention in Detroit's Chapter 9 bankruptcy case, so a proper light can be shed on the banks' practices relative to the issuance of municipal bonds. **Exhibit N, attached**.

case, so a proper light can be shed on the banks' practices relative to the issuance of municipal bonds. **Exhibit N, attached**.

33.     As a retiree, I am especially concerned that funds available to pay pension benefits for myself and my wife are being siphoned out of the City of Detroit Treasury because of the illicit activity of the banks, and particularly UBS and Bank of America, as outlined above.

FURTHER AFFIANT SAYETH NOT.

_____          S 12-13

DAVID SOLE                                              Date

Subscribed and sworn to before me this _____ day of August, 2013

_____

Notary Public; _____. Wayne County

Michigan, My commission expires:

Vanessa G Fluker
Notary Public of Michigan
Wayne County
Expires 01/11/2015
Acting in the County of Wayne

6

# EXHIBIT A

4829 Haverhill
Detroit, MI 48224
January 2, 2013

City of Detroit Law Department
FOIA Section
2 Woodward, Ste. 500
Coleman A. Young Municipal Center
Detroit, Michigan 48226-3535



*By Personal Delivery*

Re: Freedom of Information Request

Dear Sir or Madam:

I hereby request, under the Freedom of Information Act, all contracts and agreements between the City of Detroit and all its departments and divisions and any banks or brokerage houses relating to the purchase of bonds, interest rate swaps, pension obligation certificates, hedge fund derivatives, termination or default agreements, or other forms of debt for the past 10 years. I also request, in addition to copies of the contracts, all letters, emails, memos, notes or other material (written or transmitted electronically) relating to the negotiations for and the purchase of these bonds or other debt instruments. This should also include everything, but not restricted to, involving any and all bond swaps. Also included should be all communications provided to Governor Snyder's Financial Stability Review Board during 2012 in their work to determine the financial status of the City of Detroit. This FOIA request **includes, but is not limited to, all the items listed below**. Source documents attached.

Please contact me at the above address or call 313-680-5508 relative to delivery of these documents. I am also prepared to come into the law department to review and/or pick up the documents when they are available in accordance with the Freedom of Information Act.

Sincerely,

David Sole

- $6.4 B outstanding bonded debt as of Dec. 2011 (includes $5.2 B DWSD) [referenced in Citizens Research Council of Michigan, Legacy Costs and Indebtedness of the City of Detroit, Dec. 2011, Report 373, hereafter referred to as CRC, page 1]

- $600 M of "other future obligations" [CRC, page 1]

- $1.5 B outstanding pension obligation certificates [CRC, page 1]

- $4.1 B other unfunded costs associated with personnel

- $481 M unfunded actuarial accrued liability – General Retirement System [CRC, page 1]

- $134 M unfunded actuarial accrued liability – Police and Fire Pension System [CRC, page 1]

- $640 M in pension funding certificates in 2005 [CRC, page 3]

- $1.6 B variable rate pension certificates of participation (COPS) to fund General Retirement and Police/Fire from 2005 and 2006 [CRC, pp. 8 and 10]

- Information on 8 swap agreements to establish a fixed rate on the certificates- including termination event if rating on COPS was withdrawn or downgraded. [CRC, page 11]

- Information on 2009 Detroit being informed about termination event – collateral agreement included casino revenues [CRC, page 11]

- Repayment of $2.9 B [CRC, page 11]

- Ratings by Moody's, Fitch Ratings and Standard & Poor's [CRC, page 16]

- 2010 sale by Detroit of $249.8 M limited tax bonds payable from state aid to fund the deficit [CRC, page 6]

- 12-16-10 issue by Detroit of $100 M of unlimited tax general obligation bonds for capital projects. [CRC, page 21]

- Use by Detroit of Sec. 108 funds from U.S. government for revitalization projects, pledging $89.5 M of future Block Grant funds to repay. [CRC, page 22]

- Other loans amounting to $37.9 M (p.22 CRC); Other commitments for future construction = $78.2 M (p.22 CRC); $130.3 M for future operating leases for equipment. All totaling $618.5 M. [CRC, page 22]

- March 2010, $249.8 M of limited tax fiscal stabilization bonds [CRC, page 22]

- From 2005 to 2010 $600 M debt to reduce deficit [Report of the Detroit Financial Review Team, March 26, 2012 report to Snyder, hereafter referred to as Review Team, page 3])

- $1.136 B interest rate swaps "hedging derivatives" over life of debt in addition to principal and interest [Review Team, page 5]

- $1.44 B in 2005 for pension obligation certificates [Review Team, page 6]

- March 20 and 22, 2012 downgrade of City debt by Fitch and Moody's [Review Team, page 10]

- 2010 Detroit paid $107.1 M annual payment and $303.8 M in termination fees [www.SEIU.org, Sampling of Interest Rate Swap Deals Across the Country]

- June 2012 DWSD bond sale of $659.8 M from which $300 M paid to banks [News from Bloomberg, Detroit DWSD Debt Shows Wall Street Never Loses on Bad Swaps, Sept. 13, 2012, hereafter referred to as Bloomberg]
- June 2012 payment of $314 M to end some swap agreements Dec. 2012 bond sale of $222 M to end other bond swaps [Bloomberg]
- June 18, 2012 Detroit party to swap to terminate Loop Financial products [Bloomberg]
- $1.5 B for fiscal year ending 6-30-05 for Pension Obligation Certificates [Bloomberg]
- $100 M in general obligation bonds in 2011 for Public Safety Headquarters and other projects [Bloomberg]

# EXHIBIT B

STATE OF MICHIGAN
WAYNE COUNTY CIRCUIT COURT

David Sole,

      Plaintiff,

v.

City of Detroit,

      Defendant.

Case No.

13-002121-CZ

FILED IN MY OFFICE
WAYNE COUNTY CLERK
2/12/2013 2:24:38 PM
CATHY M. GARRETT

Jerome D. Goldberg (P61678)
Jerome D. Goldberg, PLLC
Attorney for Plaintiffs
2921 East Jefferson, Suite 205
Detroit, MI 48207
(313) 393-6001

                            /

## PLAINTIFFS' COMPLAINT FOR VIOLATIONS OF
## THE FREEDOM OF INFORMATION ACT, MCL 15.231, ET. SEQ.

There is no other pending or resolved
civil action arising out of the transaction
or occurrence alleged in the complaint.

*/s/ Jerome D. Goldberg*
Jerome D. Goldberg (P61678)

      NOW COMES Plaintiff David Sole, by and through his attorneys, Jerome D. Goldberg,

PLLC, and for his Complaint for Violations of the Freedom of Information Act, MCL 15.231, et.

seq., states as follows:

### PARTIES AND JURISDICTION

1.     David Sole is a resident of the City of Detroit, Wayne County, Michigan.

2.     The Defendant City of Detroit is a Michigan municipal corporation and is a

"public body" within the meaning of the Freedom of Information Act ("FOIA"), MCL

15.232(d)(iii).

3. Jurisdiction and venue are proper pursuant to MCL 15.240(4).

## STATEMENT OF FACTS

4. On January 2, 2013, Plaintiff David Sole sent a Freedom of Information Request to the City of Detroit. Mr. Sole requested:

> All contracts and agreement between the City of Detroit and all its departments and divisions and any banks or brokerage houses relating to the purchase of bonds, interest rate swaps, pension obligation certificates, hedge fund derivatives, termination or default agreements, or other forms of debt for the past 10 years.

**Exhibit 1, attached, FOIA request.**

5. Mr. Sole also requested:

> In addition to copies of the contracts, all letters, emails, memos, notes or other material (written or transmitted electronically) relating to the negotiations for and the purchase of these bonds or other debt instruments. This should also include everything, but not restricted to, involving any and all bond swaps. Also included should be all communications provided to Governor Snyder's Financial Stability Review Board during 2012 in their work to determine the financial status of the City of Detroit.

**See Exhibit 1.**

6. To simplify the City's ability to respond to the FOIA request, Mr. Sole provided a specific, though non-exclusive, list of items encompassed by the FOIA request, including source materials referencing their existence.

**See Exhibit 1.**

7. On January 24, 2013, Defendant City of Detroit acknowledged that it received Plaintiff's FOIA request on January 7, 2012 (the City clearly meant 2013). The City of Detroit's Notice of Receipt stated that the request would be processed immediately.

**See Exhibit 2.**

8. The City of Detroit has still not produced the documents requested in Mr. Sole's Freedom of Information Request received by Defendant City of Detroit on January 7, 2013.

2

## COUNT 1 – VIOLATION OF THE FOIA BY THE CITY OF DETROIT

9.     The allegations of paragraphs 1 through 8 are repeated as if fully set forth herein.

10.     Pursuant to Section 3 of the FOIA, the City of Detroit has a duty to respond within the statutory period, five days, to any request for public records by notifying the requester whether such documents are in its possession and, if so, whether the public body claims that there is any exemption from disclosure. The City is allowed to extend the period for responding to the FOIA request by ten (10) days if it so specifies in its initial response. MCL 15.233.

11.     Pursuant to Section 3 of the FOIA, the City of Detroit has a further duty to provide copies or access to all documents that are not subject to an exemption under FOIA. MCL 15.233.

12.     By failing to even acknowledge Plaintiff's FOIA request until seventeen days after it received the request, and never properly responding to Plaintiff's FOIA request, the City of Detroit has breached Section 3 of FOIA. MCL 15.233.

13.     The records requested by Plaintiff are public records not subject to any of the exemptions listed in MCL 15.243.

WHEREFORE, the Plaintiffs ask that this honorable Court grant an order:

(1) Directing the City of Detroit to produce for inspection and copying all documents in their possession described in Plaintiff's January 2, 2013 FOIA request;

(2) Ordering such further relief as is just and equitable, including awarding of attorney fees and costs, as well as punitive damages because Defendant City of Detroit has arbitrarily and capriciously violated this Act by its refusal or delay in disclosing or providing copies of the public records; and

3

(3)  Assigning this matter for hearing and trial or for argument at the earliest practicable

date and expediting this matter in every way pursuant to MCL 15.240(5).

Respectfully submitted,

/s/ Jerome D. Goldberg
Jerome D. Goldberg (P 61678)
Jerome D. Goldberg, PLLC
Attorney for Plaintiffs
2921 East Jefferson, Suite 205
Detroit, MI  48207
(31) 393-6001

Dated:  February 12, 2013

4

# EXHIBIT 1

13-002121-CZ

FILED IN MY OFFICE
WAYNE COUNTY CLERK
2/12/2013 2:24:38 PM
CATHY M. GARRETT

4829 Haverhill
Detroit, MI 48224
January 2, 2013

City of Detroit Law Department
FOIA Section
2 Woodward, Ste. 500
Coleman A. Young Municipal Center
Detroit, Michigan 48226-3535

*By Personal Delivery*

Re: Freedom of Information Request

Dear Sir or Madam:

I hereby request, under the Freedom of Information Act, all contracts and agreements between the City of Detroit and all its departments and divisions and any banks or brokerage houses relating to the purchase of bonds, interest rate swaps, pension obligation certificates, hedge fund derivatives, termination or default agreements, or other forms of debt for the past 10 years. I also request, in addition to copies of the contracts, all letters, emails, memos, notes or other material (written or transmitted electronically) relating to the negotiations for and the purchase of these bonds or other debt instruments. This should also include everything, but not restricted to, involving any and all bond swaps. Also included should be all communications provided to Governor Snyder's Financial Stability Review Board during 2012 in their work to determine the financial status of the City of Detroit. This FOIA request **includes, but is not limited to, all the items listed below**. Source documents attached.

Please contact me at the above address or call 313-680-5508 relative to delivery of these documents. I am also prepared to come into the law department to review and/or pick up the documents when they are available in accordance with the Freedom of Information Act.

Sincerely,

David Sole

- $6.4 B outstanding bonded debt as of Dec. 2011 (includes $5.2 B DWSD) [referenced in Citizens Research Council of Michigan, Legacy Costs and Indebtedness of the City of Detroit, Dec. 2011, Report 373, hereafter referred to as CRC, page 1]

- $600 M of "other future obligations" [CRC, page 1]

- $1.5 B outstanding pension obligation certificates [CRC, page 1]

- $4.1 B other unfunded costs associated with personnel

- $481 M unfunded actuarial accrued liability – General Retirement System [CRC, page 1]
- $134 M unfunded actuarial accrued liability – Police and Fire Pension System [CRC, page 1]
- $640 M in pension funding certificates in 2005 [CRC, page 3]
- $1.6 B variable rate pension certificates of participation (COPS) to fund General Retirement and Police/Fire from 2005 and 2006 [CRC, pp. 8 and 10]
- Information on 8 swap agreements to establish a fixed rate on the certificates- including termination event if rating on COPS was withdrawn or downgraded. [CRC, page 11]
- Information on 2009 Detroit being informed about termination event – collateral agreement included casino revenues [CRC, page 11]
- Repayment of $2.9 B [CRC, page 11]
- Ratings by Moody's, Fitch Ratings and Standard & Poors [CRC, page 16]
- 2010 sale by Detroit of $249.8 M limited tax bonds payable from state aid to fund the deficit [CRC, page 6]
- 12-16-10 issue by Detroit of $100 M of unlimited tax general obligation bonds for capital projects. [CRC, page 21]
- Use by Detroit of Sec. 108 funds from U.S. government for revitalization projects, pledging $89.5 M of future Block Grant funds to repay. [CRC, page 22]
- Other loans amounting to $37.9 M (p.22 CRC); Other commitments for future construction = $78.2 M (p.22 CRC); $130.3 M for future operating leases for equipment. All totaling $618.5 M. [CRC, page 22]
- March 2010, $249.8 M of limited tax fiscal stabilization bonds [CRC, page 22]
- From 2005 to 2010 $600 M debt to reduce deficit [Report of the Detroit Financial Review Team, March 26, 2012 report to Snyder, hereafter referred to as Review Team, page 3])
- $1.136 B interest rate swaps "hedging derivatives" over life of debt in addition to principal and interest [Review Team, page 5]
- $1.44 B in 2005 for pension obligation certificates [Review Team, page 6]
- March 20 and 22, 2012 downgrade of City debt by Fitch and Moody's [Review Team, page 10]
- 2010 Detroit paid $107.1 M annual payment and $303.8 M in termination fees [www.SEIU.org, Sampling of Interest Rate Swap Deals Across the Country]

- June 2012 DWSD bond sale of $659.8 M from which $300 M paid to banks [News from Bloomberg, Detroit DWSD Debt Shows Wall Street Never Loses on Bad Swaps, Sept. 13, 2012, hereafter referred to as Bloomberg]
- June 2012 payment of $314 M to end some swap agreements Dec. 2012 bond sale of $222 M to end other bond swaps [Bloomberg]
- June 18, 2012 Detroit party to swap to terminate Loop Financial products [Bloomberg]
- $1.5 B for fiscal year ending 6-30-05 for Pension Obligation Certificates [Bloomberg]
- $100 M in general obligation bonds in 2011 for Public Safety Headquarters and other projects [Bloomberg]

# EXHIBIT 2



COLEMAN A. YOUNG MUNICIPAL CENTER
2 WOODWARD AVENUE, SUITE 500
DETROIT, MICHIGAN 48226-3555
PHONE 313•224•4550
FAX 313•224•5505
WWW.DETROITMI.GOV

## NOTICE OF RECEIPT OF FREEDOM OF INFORMATION ACT (FOIA) REQUEST

DATE:         January 24, 2013

TO:           Mr. David Sole
              4829 Haverhill
              Detroit, MI  48224

Your FOIA request is dated:  January 2, 2012

Your FOIA request was received on:  January 7, 2012

If sent by fax/email, your request was consider received on

Your FOIA request is for records pertaining to:

**Purchase bonds, interest rate swaps, pension obligation certificates, hedge fund derivatives, termination or default agreements and other forms of debt for the past 10 years**

From the following City of Detroit Department(s):

| | | | |
|---|---|---|---|
| ☐ | Buildings, Safety Engineering and Environmental | | |
| ☐ | Health and Wellness Promotion | ☐ | Assessor |
| ■ | Finance | ☐ | Water and Sewerage |
| ☐ | Detroit Police Department | ☐ | Public Works |
| ☐ | Detroit Fire Department | ☐ | Public Lighting |
| ☐ | EMS/Fire Department | ☐ | Planning and Development |
| ☐ | Municipal Parking | ☐ | Dept of Transportation |
| ☐ | Mayor's Office | ☐ | City Clerk |

Your request will be processed immediately.

Your request has been assigned to:         Ellen Ha, Senior
                                           Assistant Corporation Counsel
                                           Governmental Affairs Section
                                           City of Detroit Law Department
                                           (313) 237-5067

G:\DOCS\FOIA\greewa\32006foia_exbWGO71S.WPD