**EXHIBIT C**

# CONFIRMATION

To:   Detroit General Retirement System Service Corporation
      Detroit, Michigan
      Attention: Sean Werdlow

Date:  May 26, 2005

Our Reference No. SBSFPC-0003

The purpose of this letter agreement (the "Confirmation") is to confirm the terms and conditions of the transaction (the "Transaction") entered into between us on the Trade Date specified below. This letter agreement constitutes a "Confirmation" as referred to in the Master Agreement specified below.

The definitions and provisions contained in the 2000 ISDA Definitions (the "Definitions"), as published by the International Swaps and Derivatives Association, Inc., are incorporated into this Confirmation. In the event of any inconsistency between the Definitions and this Confirmation, this Confirmation will govern. Each party represents and warrants to the other that (i) it is duly authorized to enter into this Transaction and to perform its obligations hereunder, (ii) the Transaction and the performance of its obligations hereunder do not violate any material obligation of such party, and (iii) the person executing this Confirmation is duly authorized to execute and deliver it.

1.  This Confirmation supplements, forms part of, and is subject to, the 1992 ISDA Master Agreement between us, dated May 25, 2005, as amended and supplemented from time to time (the "Agreement"). All provisions contained in the Agreement govern this Confirmation except as expressly modified below.

2.  The terms of the particular Transaction to which this Confirmation relates are as follows:

| | |
|---|---|
| Party A: | SBS Financial Products Company, LLC |
| Party B: | Detroit General Retirement System Service Corporation |
| Insurer | Financial Guaranty Insurance Company ("Insurer") |
| Notional Amount: | Initially $53,800,000, thereafter amortizing as set forth on Exhibit A hereto. |
| Trade Date: | May 26, 2005 |
| Effective Date: | June 2, 2005 |

| | |
|---|---|
| Termination Date: | June 15, 2025, or such earlier date upon which the Agreement terminates. |
| Business Days | New York and London |

FIXED AMOUNTS:

| | |
|---|---|
| Fixed Rate Payer: | Party B |
| Fixed Rate Payer Payment Dates: | Each March 14, June, 14, September 14 and December 14, from and including September 14, 2005 up to and including the June 14, 2025, subject to adjustment in accordance with the Business Day Convention specified below. |
| Period End Dates: | March 15, June, 15, September 15 and December 15, from and including September 15, 2005 up to and including the Termination Date, with No Adjustment. |
| Fixed Rate: | 5.123% per annum |
| Fixed Rate Day Count Fraction: | 30/360 |
| Business Day Convention: | Preceding. |

FLOATING AMOUNTS:

| | |
|---|---|
| Floating Rate Payer: | Party A |
| Floating Rate Payer Payment Dates: | Each March 14, June, 14, September 14 and December 14, from and including September 14, 2005 up to and including the June 14, 2025, subject to adjustment in accordance with the Preceding Business Day Convention. |
| Floating Rate Option: | USD – LIBOR – BBA. |
| Period End Dates: | Each March 15, June, 15, September 15 and December 15, from and including September 15, 2005 up to and including the Termination Date, subject to adjustment in accordance with the Modified Following Business Day Convention. |

2

| | |
|---|---|
| Floating Rate Day Count Fraction: | Actual/360 |
| Designated Maturity: | Three Months, except that in respect to the initial Calculation Period, Linear Interpolation shall apply |
| Method of Averaging: | Inapplicable. |
| Spread: | 0.28 percent per annum. |
| Reset Date: | Initially, the Effective Date and thereafter, on Each March 15, June 15, September 15 and December 15, from and including the September 15, 2005 up to and including the Termination Date, subject to adjustment in accordance with the Modified Following Business Day Convention. |
| Compounding: | Inapplicable. |

### 3. Swap Advisor Fees

| | |
|---|---|
| Swap Advisor: | Scott Balice Strategies LLC |
| Swap Advisor Fee: | On behalf of the Party B, a fee of USD 61,239 is being paid by Party A in respect of this Transaction to the Swap Advisor. Such fee is equal to the present value of one basis points per annum on the Notional Amount of this Transaction taking into account the amortization schedule set forth herein, to the Termination Date, discounted to the Trade Date using the LIBOR swap curve. This fee is reflected in, and has increased, the Fixed Rate payable by Party B hereunder. |
| Swap Advisor Fee Payment Date: | Upon closing of the Certificates |

3

4. Account Details

**Payments to Party A:**
Account for payments in USD:
Favour: Deutsche Bank, NY
ABA/Bank No.: 021-001-033
Account No.: 01419647
Reference: SBS Swap
Attention: Safet Kalabovic

**Payments to Party B:**
ABA=U.S. BANK, Minneapolis
(091000022)
FBO=FOR FURTHER CREDIT
TO U.S. BANK, N.A.
AC=180121167365
REF: Detroit COPS GRS
Trust #: 789710000
Contact: Jill Ling 651-495-3712

5. <u>Optional Termination.</u> With the prior consent of the Insurer, Party B shall have the right to terminate this Transaction (provided that no Event of Default or Termination Event has occurred) by providing (i) at least five (5) Business Days' prior written notice to Party A of its election to terminate this Transaction and (ii) evidence reasonably satisfactory to Party A that any and all amounts owed to Party A in connection with such early termination shall be paid on the due date thereof. On the Optional Termination Date set forth in such notice, an amount, determined by Party A, shall be payable by Party A or the Party B, as the case may be, in respect of such termination. If such amount is not acceptable to Party B, then Party A shall determine such amount in accordance with Section 6 of the Agreement, assuming Market Quotation and Second Method apply and Party B is the sole Affected Party.

6. **Adjustment Event** If on the Effective Date or any date thereafter (an "Adjustment Event Date") the Notional Amount of this Transaction is greater than the Related Principal Amount, an Adjustment Event shall occur and the Notional Amount shall be reduced to the extent necessary to make such Notional Amount as of the Adjustment Event Date equal to the Related Principal Amount. As used herein:

(a) the term "Related Principal Amount" means Party A's Swap Percentage of Counterparty's Allocable Share of the aggregate principal amount of the outstanding FGIC-Insured Floating Rate Certificates;

(b) the term "Party A's Swap Percentage" means at any time 20 percent;

(c) the term "Counterparty's Allocable Share" means (1) the outstanding Scheduled Payments (as such term is defined in the GRS Service Contract 2005 between the Detroit General Retirement System Service Corporation and the City of Detroit) to be made by Counterparty in respect of FGIC-Insured Floating Rate Certificates divided by (2) the sum of such Scheduled Payments to be made by Counterparty

4

and the outstanding Schedule Payments (as such term is defined in the PFRS Service Contract 2005 between the Detroit Police and Fire Retirement System Service Corporation and the City of Detroit) to be made by Detroit Police and Fire Retirement System Service Corporation in respect of FGIC-Insured Floating Rate Certificates, in each case after giving effect to any prepayments of Scheduled Payments in connection with the circumstances of the Adjustment Event; and

(d)     the term "FGIC-Insured Floating Rate Certificates" means any Detroit Retirement System Funding Trust 2005 Taxable Certificates of Participation Series 2005-B that bear interest at a floating rate and the scheduled principal of and interest on which are insured under a financial guaranty insurance policy issued by Financial Guaranty Insurance Company.

(e)     Upon an adjustment to the Notional Amount, a payment (an "Adjustment Payment") will be due and owing by one party to the other equal to the Market Quotation for this Transaction determined by Party A as if (i) a Termination Event occurred in respect of Counterparty, (ii) Counterparty was the only Affected Party with respect to such Termination Event, Party A was the party entitled to calculate the Market Quotation, and the Transaction is the Affected Transaction, (iii) the relevant Adjustment Event Date was designated as the Early Termination Date, (iv) the Notional Amount of the Transaction was an amount equal to the difference between (X) the Notional Amount and (Y) the Related Principal Amount on the Adjustment Event Date, and (v) the requirement set forth in the definition of Market Quotation that quotations be obtained from four Reference Market-makers was met by having Party A provide a single quotation, provided, however, if Counterparty disputes such quotation, Party A shall seek bids from Reference Market-makers consistent with the provisions of Section 6 of the Agreement. If an Adjustment Payment is a positive number, Counterparty will pay an amount equal to such Adjustment Payment to Party A; if an Adjustment Payment is a negative number, Party A will pay an amount equal to the absolute value of such Adjustment Payment to Counterparty. An Adjustment Payment shall be paid by the relevant party on the date on which the Adjustment Event occurs.

(f)     Notwithstanding anything to the contrary in this Agreement, Counterparty will not optionally cause an Adjustment Event if, in connection with such Adjustment Event, an Adjustment Payment would be payable by Counterparty to Party A unless Counterparty provides evidence reasonably satisfactory to Party A and the Swap Insurer that (i) such Adjustment Payment will be made by Counterparty on the Adjustment Event Date and (ii) such Adjustment Payment will not cause Counterparty to be in violation of, or in default under the documentation relating to the Certificates (as defined below).

7.     Issuance of Certificates.     Notwithstanding anything contained herein or in the Agreement to the contrary, the parties shall have no rights or obligations with respect to this Transaction, and the representations of the parties contained herein and in the Agreement shall not be deemed to be made until the $1,440,000,000 Detroit Retirement Systems Funding Trust 2005 Taxable Certificates of Participation Series 2005 (the "Certificates") have been duly issued by Party B. In the event that the Certificates are not issued on or prior to the Effective Date, this

5

Transaction shall automatically terminate and shall be of no further force or effect and the parties shall have no further obligations hereunder.

8. **Relationship between Parties** Each party will be deemed to represent to the other party on the date on which it enters into this Transaction that (in the absence of a written Agreement between the parties which expressly imposes affirmative obligations to the contrary for this Transaction):

(a) Non-Reliance. Each party is acting for its own account, and has made its own independent decisions to enter into this Transaction and this Transaction is appropriate or proper for it based upon its own judgement and upon advice from such advisers as it has deemed necessary. Each party is not relying on any communication (written or oral) of the other party as investment advice or as a recommendation to enter into this Transaction; it being understood that information and explanation relating to the terms and conditions of this Transaction shall not be considered investment advice or a recommendation to enter into this Transaction. No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of this Transaction.

(b) Assessment and Understanding. Each party is capable of assessing the merits of and understands (on its own behalf or through independent professional advice), and accepts, the terms, conditions and risks of this Transaction. Each party is also capable of assuming and assumes, the risks of this Transaction.

(c) Status of the Parties. Neither party is acting as a fiduciary for or as an adviser to the other in respect of this Transaction.

6

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing the copy of this Confirmation enclosed for that purpose and returning it to us or by sending to us a letter substantially similar to this letter, which letter sets forth the material terms of the Transaction to which this Confirmation relates and indicates agreement to those terms.

Yours sincerely,

SBS FINANCIAL PRODUCTS COMPANY, LLC, a Delaware limited liability company

By: _____

Name: John Carter

Title: President

Accepted and Confirmed as of the
date first above written:

**DETROIT GENERAL RETIREMENT SYSTEM SERVICE CORPORATION**

By: _____

Name:

Title:

Detroit/Confirmation Letter

## Exhibit A

| Period Start Date (From and Including) | Period End Date (Unadjusted, to and Excluding) | Outstanding Notional During Period |
|---|---|---|
| Effective Date | 6/15/15 | $53,800,000 |
| 6/15/15 | 6/15/16 | 51,649,200 |
| 6/15/16 | 6/15/17 | 49,077,400 |
| 6/15/17 | 6/15/18 | 46,035,400 |
| 6/15/18 | 6/15/19 | 42,492,800 |
| 6/15/19 | 6/15/20 | 38,410,000 |
| 6/15/20 | 6/15/21 | 33,750,000 |
| 6/15/21 | 6/15/22 | 28,457,000 |
| 6/15/22 | 6/15/23 | 22,488,200 |
| 6/15/23 | 6/15/24 | 15,792,200 |
| 6/15/24 | 6/15/25 | 8,317,000 |

A-1

# ☀ UBS

| | |
|---|---|
| Date: | 26 May 2005 |
| To: | Detroit Police and Fire Retirement System Service Corporation ("Counterparty") |
| Attn: | Sean Werdlow, President |
| Fax No: | 313-224-4466 |
| From: | UBS AG, Stamford Branch ("UBS AG") |
| Subject: | Swap Transaction<br>**UBS AG Ref:**    **3713S604**<br>**Counterparty Ref:**   **PFRS-XL** |

Dear Mr. Werdlow:

The purpose of this communication is to confirm the terms and conditions of the Transaction entered into between us on the Trade Date specified below. This Confirmation constitutes a "Confirmation" as referred to in the Master Agreement or Agreement specified below.

UBS AG and the Counterparty have entered into a Master Agreement, dated as of 25 May 2005, which sets forth the general terms and conditions, as well as amendments, applicable to this Transaction (together with any future Schedule and any other future Confirmation, the "Agreement"). This Confirmation supplements, forms part of and is subject to the Agreement. All provisions contained in, or incorporated by reference to, such Agreement shall govern this Confirmation except as expressly modified below. In the event of any inconsistency between the provisions of the Agreement and this Confirmation, this Confirmation will prevail for purposes of this Transaction.

The definitions contained in the 2000 ISDA Definitions (the "2000 Definitions"), (the "Definitions"), as published by the International Swaps and Derivatives Association, Inc., are incorporated into this Confirmation. In the event of any inconsistency between of the definitions listed above and this Confirmation, this Confirmation will govern. The terms of the particular Swap Transaction to which this Confirmation relates are as follows:

## General Terms

| | |
|---|---|
| Insurer: | XL Capital Assurance Inc. ("XL") |
| Trade Date: | 26 May 2005 |
| Effective Date: | 02 June 2005 |
| Termination Date: | 15 June 2014 |
| Notional Amount: | Initially USD 150,369,000 thereafter amortizing per the Amortization Schedule below. |
| Calculation Agent: | UBS AG |
| Business Days: | New York and London |

**Fixed Amounts**

Fixed Rate Payer:                    Counterparty

Fixed Rate:                          4.640 percent per annum

Fixed Rate Day Count Fraction:       30/360

Fixed Rate Payer Payment Dates:      Quarterly, on each 14 March, 14 June, 14 September and
                                     14 December, from and including 14 September 2005 up to
                                     and including the 14 June 2014, subject to adjustment in
                                     accordance with the Preceding Business Day Convention.

Period End Dates:                    Each 15 March, 15 June, 15 September and 15 December,
                                     from and including 15 September 2005 up to and including
                                     the Termination Date, subject to adjustment in accordance
                                     with the Modified Following Business Day Convention,
                                     with No Adjustment.

**Floating Amounts:**

Floating Rate Payer:                 UBS AG

Floating Rate Option:                USD-LIBOR-BBA

Designated Maturity:                 Three months, except that in respect to the initial
                                     Calculation Period, Linear Interpolation shall apply

Spread:                              0.18 percent per annum

Floating Rate Day Count Fraction:    Actual/360

Floating Rate Payer Payment Dates:   Quarterly, on each 14 March, 14 June, 14 September and 14
                                     December, from and including 14 September 2005 up to
                                     and including the 14 June 2014, subject to adjustment in
                                     accordance with the Preceding Business Day Convention.

Period End Dates:                    Each 15 March, 15 June, 15 September and 15 December,
                                     from and including 15 September 2005 up to and including
                                     the Termination Date, subject to adjustment in accordance
                                     with the Modified Following Business Day Convention.

Page 2

UBS AG Ref   37135604
C/P Ref:

| | | |
|---|---|---|
| Reset Dates: | | Initially, the Effective Date and thereafter on each 15 March, 15 June, 15 September and 15 December, from and including 15 September 2005 up to but excluding the Termination Date, subject to adjustment in accordance with the Modified Following Business Day Convention. |
| Compounding: | | Inapplicable |

**Amortization Schedule:**

| Period From (and including) | Period To (but excluding) | Notional Amount (USD) |
|---|---|---|
| Effective Date | 06/15/2007 | 150,369,000 |
| 06/15/2007 | 06/15/2008 | 139,413,000 |
| 06/15/2008 | 06/15/2009 | 126,377,400 |
| 06/15/2009 | 06/15/2010 | 110,999,400 |
| 06/15/2010 | 06/15/2011 | 93,127,800 |
| 06/15/2011 | 06/15/2012 | 72,556,800 |
| 06/15/2012 | 06/15/2013 | 49,101,600 |
| 06/15/2013 | 06/15/2014 | 22,462,200 |

**Optional Termination by Counterparty:**

With the prior consent of the Insurer, Counterparty shall have the right to terminate this Transaction (provided that no Event of Default or Termination Event has occurred) by providing (i) at least five (5) Business Days' prior written notice to UBS AG of its election to terminate this Transaction and (ii) evidence reasonably satisfactory to UBS AG that any and all amounts owed to UBS AG in connection with such early termination shall be paid on the due date thereof. On the Optional Termination Date set forth in such notice, an amount, determined by UBS AG, shall be payable by UBS AG or the Counterparty, as the case may be, in respect of such termination. If such amount is not acceptable to Counterparty, then UBS AG shall determine such amount in accordance with Section 6 of the Agreement, assuming Market Quotation and Second Method apply and Counterparty is the sole Affected Party.

**Adjustment Event**

If on the Effective Date or any date thereafter (an "Adjustment Event Date") the Notional Amount of this Transaction is greater than the Related Principal Amount, an Adjustment Event shall occur and the Notional Amount shall be reduced to the extent necessary to make such Notional Amount as of the Adjustment Event Date equal to the Related Principal Amount. As used herein:

    (a)    the term "Related Principal Amount" means UBS AG's Swap Percentage of the aggregate principal amount of the outstanding XL-Insured Floating Rate Certificates;

    (b)    the term "UBS AG's Swap Percentage" means at any time 60 percent;

    (c)    the term "XL-Insured Floating Rate Certificates" means any Detroit Retirement System Funding Trust 2005 Taxable Certificates of Participation Series 2005-B (the "Related Certificates") that

Page 3

UBS AG Ref   37135604
C/P Ref:

bear interest at a floating rate and the scheduled principal of and interest on which are insured under a financial guaranty insurance policy issued by XL Capital Assurance Inc

(d)      Upon an adjustment to the Notional Amount, a payment (an "Adjustment Payment") will be due and owing by one party to the other party equal to the Market Quotation for this Transaction determined by UBS AG as if (i) a Termination Event occurred in respect of Counterparty, (ii) Counterparty was the only Affected Party with respect to such Termination Event, UBS AG was the party entitled to calculate the Market Quotation, and the Transaction is the Affected Transaction, (iii) the relevant Adjustment Event Date was designated as the Early Termination Date, (iv) the Notional Amount of the Transaction was an amount equal to the difference between (X) the Notional Amount and (Y) the outstanding principal amount of the Related Certificates on the Adjustment Event Date, and (v) the requirement set forth in the definition of Market Quotation that quotations be obtained from four Reference Market-makers was met by having UBS AG provide a single quotation, provided, however, if Counterparty disputes such quotation, UBS AG shall seek bids from Reference Market-makers consistent with the provisions of Section 6 of the Agreement. If an Adjustment Payment is a positive number, Counterparty will pay an amount equal to such Adjustment Payment to UBS AG; if an Adjustment Payment is a negative number, UBS AG will pay an amount equal to the absolute value of such Adjustment Payment to Counterparty. An Adjustment Payment shall be paid by the relevant party on the date on which the Adjustment Event occurs.

(e)      Notwithstanding anything to the contrary in this Agreement, Counterparty will not optionally cause an Adjustment Event if, in connection with such Adjustment Event, an Adjustment Payment would be payable by Counterparty to UBS AG unless Counterparty provides evidence reasonably satisfactory to UBS AG and the Swap Insurer that (i) such Adjustment Payment will be made by Counterparty on the Adjustment Event Date and (ii) such Adjustment Payment will not cause Counterparty to be in violation of, or in default under the documentation relating to the Related Certificates.

### Issuance of Certificates

Notwithstanding anything contained herein or in the Agreement to the contrary, the parties shall have no rights or obligations with respect to this Transaction, and the representations of the parties contained herein and in the Agreement shall not be deemed to be made until the $1,440,000,000 Detroit Retirement Systems Funding Trust 2005 Taxable Certificates of Participation Series 2005 (the "Certificates") have been duly issued by Counterparty. In the event that the Certificates are not issued on or prior to the Effective Date, this Transaction shall automatically terminate and shall be of no further force or effect and the parties shall have no further obligations hereunder.

### Swap Advisor Fee:

Swap Advisor:                  Scott Balice Strategies LLC

Swap Advisor Fee:            On behalf of the Counterparty, a fee of USD 79,621.00 is being paid by UBS AG in respect of this Transaction to the Swap Advisor. Such fee is equal to the present value of one basis points per annum on the Notional Amount of this Transaction taking into account the amortization schedule set

Page 4

UBS AG Ref 37135604
C/P Ref:

forth herein, to the Termination Date, discounted to
the Trade Date using the LIBOR swap curve. This
fee is reflected in, and has increased, the Fixed
Rate payable by the Counterparty hereunder.

Swap Advisor Fee Payment Date:          Upon closing of the Related Certificates

## Relationship between Parties

Each party will be deemed to represent to the other party on the date on which it enters into this Transaction that (in
the absence of a written Agreement between the parties which expressly imposes affirmative obligations to the
contrary for this Transaction):

(a) Non-Reliance. Each party is acting for its own account, and has made its own independent decisions to enter
into this Transaction and this Transaction is appropriate or proper for it based upon its own judgment and upon
advice from such advisers as it has deemed necessary. Each party is not relying on any communication (written or
oral) of the other party as investment advice or as a recommendation to enter into this Transaction; it being
understood that information and explanation relating to the terms and conditions of this Transaction shall not be
considered investment advice or a recommendation to enter into this Transaction. No communication (written or
oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of this
Transaction.

(b) Assessment and Understanding. Each party is capable of assessing the merits of and understands (on its own
behalf or through independent professional advice), and accepts, the terms, conditions and risks of this Transaction.
Each party is also capable of assuming and assumes, the risks of this Transaction.

(c) Status of the Parties. Neither party is acting as a fiduciary for or as an adviser to the other in respect of this
Transaction.

References in this clause to "a party" shall, in the case of UBS AG and where the context so allows, include
references to any affiliate of UBS AG.

## Account Details
Account for payments in USD:
Bank:                                   UBS AG, Stamford
ABA/Bank No.:                           026-007-993
Account No.:                            101-WA-860050-025

Page 5

UBS AG Ref   37135604
C/P Ref:

## Counterparty Account Details

| | |
|---|---|
| Bank: | U.S. Bank, Minneapolis |
| FBO: | For further credit to U.S. Bank, N.A. |
| ABA/Bank No.: | 091000022 |
| Account No : | 180121167365 |
| Ref: | Detroit COPS PFRS |
| Trust #: | 789710001 |
| Contact: | Jill Ling 651-495-3712 |

## Offices

(a) The office of UBS AG for the Swap Transaction is Stamford, CT, and

(b) The office of the Counterparty for the Swap Transaction is Detroit, MI.

## Contact Names at UBS AG

| | | |
|---|---|---|
| Settlements: | Settlements: | (203) 719 1110 |
| Confirmation Queries: | Christopher Cost: | (212) 713 1212 |
| ISDA Documentation: | Legal Department – Documentation: | (203) 719 6235 |
| Swift: | UBSWUS33 | |
| Fax: | (203) 719-5771 | |
| Address: | UBS AG | |
| | 677 Washington Boulevard | |
| | Stamford, CT 06901 | |

Page 6

UBS AG Ref    37135604
C/P Ref:

Please confirm that the foregoing correctly sets forth the terms and conditions of our agreement by executing a copy of this Confirmation and returning it to us by facsimile to **(212) 713-3016.**

Yours Faithfully
For and on Behalf of
UBS AG, Stamford Branch

By:                                              By:

Name :                                           Name :    **Mark J. Evans  II**
                                                           **Director**
                                                           **Operations**
Title:                                           Title:
            Marc Chandler
            Associate Director
            Operations

Acknowledged and agreed by the Detroit Police and Fire Retirement System Service Corporation as of the Trade Date specified above:

By:

Name :    Sean Werdlow
Title :    President

UBS AG Ref   37135604                                                    Page 7
C/P Ref:



| | |
|---|---|
| Date: | May 26, 2005 |
| To: | Detroit General Retirement System Service Corporation ("Counterparty") |
| Attn: | Sean Werdlow, President |
| Fax No: | 313-224-4466 |
| From: | Citibank, N.A., New York ("Citibank") |
| Subject: | Swap Transaction<br>**Citibank Ref:** MS02344 |

Dear Mr. Werdlow:

The purpose of this communication is to confirm the terms and conditions of the Transaction entered into between us on the Trade Date specified below. This Confirmation constitutes a "Confirmation" as referred to in the Master Agreement or Agreement specified below.

Citibank and the Counterparty have entered into a Master Agreement, dated as of 25 May 2005, which sets forth the general terms and conditions, as well as amendments, applicable to this Transaction (together with any future Schedule and any other future Confirmation, the "Agreement"). This Confirmation supplements, forms part of and is subject to the Agreement. All provisions contained in, or incorporated by reference to, such Agreement shall govern this Confirmation except as expressly modified below. In the event of any inconsistency between the provisions of the Agreement and this Confirmation, this Confirmation will prevail for purposes of this Transaction.

The definitions contained in the 2000 ISDA Definitions (the "2000 Definitions"), (the "Definitions"), as published by the International Swaps and Derivatives Association, Inc., are incorporated into this Confirmation. In the event of any inconsistency between of the definitions listed above and this Confirmation, this Confirmation will govern. The terms of the particular Swap Transaction to which this Confirmation relates are as follows:

**General Terms**

| | |
|---|---|
| Insurer: | Financial Guaranty Insurance Company ("FGIC") |
| Trade Date: | 26 May 2005 |
| Effective Date: | 02 June 2005 |
| Termination Date: | 15 June 2025 |
| Notional Amount: | Initially USD 53,800,000 thereafter amortizing per the Amortization Schedule below. |
| Calculation Agent: | Citibank |
| Business Days: | New York and London |

Ref: MS02344_____
NYK 967241-3.071371.0010

**Fixed Amounts**

| | |
|---|---|
| Fixed Rate Payer: | Counterparty |
| Fixed Rate: | 5.123 percent per annum |
| Fixed Rate Day Count Fraction: | 30/360 |
| Fixed Rate Payer Payment Dates: | Quarterly, on each 14 March, 14 June, 14 September and 14 December, from and including 14 September 2005 up to and including 14 June 2025, subject to adjustment in accordance with the Business Day Convention specified below |
| Period End Dates: | Each 15 March, 15 June, 15 September and 15 December, from and including 15 September 2005 up to and including the Termination Date, with No Adjustment. |
| Business Day Convention: | Preceding |

**Floating Amounts:**

| | |
|---|---|
| Floating Rate Payer: | Citibank |
| Floating Rate Option: | USD-LIBOR-BBA |
| Designated Maturity: | Three months, except that in respect to the initial Calculation Period, Linear Interpolation shall apply |
| Spread: | 0.28 basis points per annum |
| Floating Rate Day Count Fraction: | Actual/360 |
| Floating Rate Payer Payment Dates: | Quarterly, on each 14 March, 14 June, 14 September and 14 December, from and including 14 September 2005 up to and including 14 June 2025, subject to adjustment in accordance with the Preceding Business Day Convention |
| Period End Dates: | Each 15 March, 15 June, 15 September and 15 December, from and including 15 September 2005 up to and including the Termination Date, subject to adjustment in accordance with the Modified Following Business Day Convention |
| Reset Dates: | Quarterly, on Each 15 March, 15 June, 15 September and 15 December, from and including 15 September 2005 up to but excluding the Termination Date, subject to adjustment in accordance with the Modified Following Business Day Convention |

Ref: MS02344
NYK 967241-3.071371.0010

| Method of Averaging: | Inapplicable |
| Compounding: | Inapplicable |

## Amortization Schedule:

| Period From (and including) | Period To (but excluding) | Notional Amount (in USD) |
|---|---|---|
| Effective Date | 6/15/15 | 53,800,000 |
| 6/15/15 | 6/15/16 | 51,649,200 |
| 6/15/16 | 6/15/17 | 49,077,400 |
| 6/15/17 | 6/15/18 | 46,035,400 |
| 6/15/18 | 6/15/19 | 42,492,800 |
| 6/15/19 | 6/15/20 | 38,410,000 |
| 6/15/20 | 6/15/21 | 33,750,000 |
| 6/15/21 | 6/15/22 | 28,457,000 |
| 6/15/22 | 6/15/23 | 22,488,200 |
| 6/15/23 | 6/15/24 | 15,792,200 |
| 6/15/24 | 6/15/25 | 8,317,000 |

## Optional Termination Provision

## Optional Termination by Counterparty:

With the prior consent of the Insurer, Counterparty shall have the right to terminate this Transaction (provided that no Event of Default or Termination Event has occurred) by providing (i) at least five (5) Business Days' prior written notice to Citibank of its election to terminate this Transaction and (ii) evidence reasonably satisfactory to Citibank that any and all amounts owed to Citibank in connection with such early termination shall be paid on the due date thereof. On the Optional Termination Date set forth in such notice, an amount, determined by Citibank, shall be payable by Citibank or the Counterparty, as the case may be, in respect of such termination. If such amount is not acceptable to Counterparty, then Citibank shall determine such amount in accordance with Section 6 of the Agreement, assuming Market Quotation and Second Method apply and Counterparty is the sole Affected Party.

## Adjustment Event

If on the Effective Date or any date thereafter (an "Adjustment Event Date") the Notional Amount of this Transaction is greater than the Related Principal Amount, an Adjustment Event shall occur and the Notional Amount shall be reduced to the extent necessary to make such Notional Amount as of the Adjustment Event Date equal to the Related Principal Amount. As used herein:

(a) the term "Related Principal Amount" means Citibank's Swap Percentage of Counterparty's Allocable Share of the aggregate principal amount of the outstanding FGIC-Insured Floating Rate Certificates;

(b) the term "Citibank's Swap Percentage" means at any time 20 percent;

(c) the term "Counterparty's Allocable Share" means (1) the outstanding Scheduled Payments (as such term is defined in the GRS Service Contract 2005 between the Detroit General Retirement System Service Corporation and the City of Detroit) to be made by Counterparty in respect of FGIC-

Ref: MS02344
NYK 967241-3.071371.0010

Insured Floating Rate Certificates divided by (2) the sum of such Scheduled Payments to be made by Counterparty and the outstanding Scheduled Payments (as such term is defined in the PFRS Service Contract 2005 between the Detroit Police and Fire Retirement System Service Corporation and the City of Detroit) to be made by Detroit Police and Fire Retirement System Service Corporation in respect of FGIC-Insured Floating Rate Certificates, in each case after giving effect to any prepayments of Scheduled Payments in connection with the circumstances of the Adjustment Event; and

(d) the term "FGIC-Insured Floating Rate Certificates" means any Detroit Retirement System Funding Trust 2005 Taxable Certificates of Participation Series 2005-B that bear interest at a floating rate and the scheduled principal of and interest on which are insured under a financial guaranty insurance policy issued by Financial Guaranty Insurance Company.

Upon an adjustment to the Notional Amount, a payment (an "Adjustment Payment") will be due and owing by one party to the other equal to the Market Quotation for this Transaction determined by Citibank as if (i) a Termination Event occurred in respect of Counterparty, (ii) Counterparty was the only Affected Party with respect to such Termination Event, Citibank was the party entitled to calculate the Market Quotation, and the Transaction is the Affected Transaction, (iii) the relevant Adjustment Event Date was designated as the Early Termination Date, (iv) the Notional Amount of the Transaction was an amount equal to the difference between (X) the Notional Amount and (Y) the Related Principal Amount on the Adjustment Event Date, and (v) the requirement set forth in the definition of Market Quotation that quotations be obtained from four Reference Market-makers was met by having Citibank provide a single quotation, provided, however, if Counterparty disputes such quotation, Citibank shall seek bids from Reference Market-makers consistent with the provisions of Section 6 of the Agreement. If an Adjustment Payment is a positive number, Counterparty will pay an amount equal to such Adjustment Payment to Citibank; if an Adjustment Payment is a negative number, Citibank will pay an amount equal to the absolute value of such Adjustment Payment to Counterparty. An Adjustment Payment shall be paid by the relevant party on the date on which the Adjustment Event occurs.

Notwithstanding anything to the contrary in this Agreement, Counterparty will not optionally cause an Adjustment Event if, in connection with such Adjustment Event, an Adjustment Payment would be payable by Counterparty to Citibank unless Counterparty provides evidence reasonably satisfactory to Citibank and the Swap Insurer that (i) such Adjustment Payment will be made by Counterparty on the Adjustment Event Date and (ii) such Adjustment Payment will not cause Counterparty to be in violation of, or in default under the documentation relating to the Certificates (as defined below).

## Issuance of Certificates

Notwithstanding anything contained herein or in the Agreement to the contrary, the parties shall have no rights or obligations with respect to this Transaction, and the representations of the parties contained herein and in the Agreement shall not be deemed to be made until the $1,440,000,000 Detroit Retirement Systems Funding Trust 2005 Taxable Certificates of Participation Series 2005 (the "Certificates") have been duly issued by Counterparty. In the event that the Certificates are not issued on or prior to the Effective Date, this Transaction shall automatically terminate and shall be of no further force or effect and the parties shall have no further obligations hereunder.

## Swap Advisor Fee:

| | |
|---|---|
| Swap Advisor: | Scott Balice Strategies LLC |
| Swap Advisor Fee: | On behalf of the Counterparty, a fee of USD 61,239 is being paid by Citibank in respect of this Transaction to the Swap Advisor. Such fee is equal to the present value of one basis points per annum |

Ref: MS02344
NYK 967241-3.071371.0010

on the Notional Amount of this Transaction taking into account the amortization schedule set forth herein, to the Termination Date, discounted to the Trade Date using the LIBOR swap curve. This fee is reflected in, and has increased, the Fixed Rate payable by the Counterparty hereunder.

Swap Advisor Fee Payment Date:                   Upon closing of the Related Certificates

## Relationship between Parties

Each party will be deemed to represent to the other party on the date on which it enters into this Transaction that (in the absence of a written Agreement between the parties which expressly imposes affirmative obligations to the contrary for this Transaction):

(a) Non-Reliance. Each party is acting for its own account, and has made its own independent decisions to enter into this Transaction and this Transaction is appropriate or proper for it based upon its own judgement and upon advice from such advisers as it has deemed necessary. Each party is not relying on any communication (written or oral) of the other party as investment advice or as a recommendation to enter into this Transaction; it being understood that information and explanation relating to the terms and conditions of this Transaction shall not be considered investment advice or a recommendation to enter into this Transaction. No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of this Transaction.

(b) Assessment and Understanding. Each party is capable of assessing the merits of and understands (on its own behalf or through independent professional advice), and accepts, the terms, conditions and risks of this Transaction. Each party is also capable of assuming and assumes, the risks of this Transaction.

(c) Status of the Parties. Neither party is acting as a fiduciary for or as an adviser to the other in respect of this Transaction.

References in this clause to "a party" shall, in the case of Citibank and where the context so allows, include references to any affiliate of Citibank.

## Account Details
Account for payments in USD:
Citibank, N.A., New York
ABA # 021000089
Account No. 00167679
Reference: MS02344

## Counterparty Account Details

ABA=U.S. BANK, Minneapolis (091000022)
FBO=FOR FURTHER CREDIT TO U.S. BANK, N.A.
AC=180121167365
REF: Detroit COPS GRS
Trust #: 789710000
Contact: Jill Ling 651-495-3712

Ref: MS02344
NYK 967241-3.071371.0010

**Offices**

(a) The office of Citibank for the Swap Transaction is New York, NY; and

(b) The office of the Counterparty for the Swap Transaction is Detroit, MI.

Ref: MS02344
NYK 967241-3.071371.0010

Please confirm that the foregoing correctly sets forth the terms and conditions of our agreement by executing a copy of this Confirmation and returning it to us.

Yours sincerely,

CITIBANK, N.A., NEW YORK

By: _____
Name: John D. Heppolette
Title: Vice President

Confirmed as of the
date first above written:

DETROIT GENERAL RETIREMENT SYSTEM SERVICE CORPORATION

By: _____
Name: Sean Werdlow
Title: President

Ref: MS02344
NYK 967241-3.071371.0010