# EXHIBIT 6

determined without unduly delaying the closing of the case.[10] The standards and procedures related to the liquidation of contingent claims under section 502(c) are discussed below.[11]

### [b] Trustee's Right to Assert Defenses to Claims; Affirmative Defenses

The effect of section 502(b)(1) is to make available to the trustee any defense to a claim that might have been available to the debtor. For example, if a claim would be unenforceable against the debtor or against the property of the debtor because, under applicable nonbankruptcy law, the debtor could raise the defense of usury, fraud, lack of consideration, unconscionability or the expiration of a statute of limitations, such defense affords the trustee a basis for the disallowance of the claim in bankruptcy.[12] In short, for the purposes of determining the allowability of a claim, the trustee is given the benefit of any defense available to the debtor of a personal nature which the debtor could have interposed, absent bankruptcy, in a suit on the claim by the creditor. Section 558 of the Code specifically provides for the availability of the debtor's defenses.[13]

The types of defenses that are available to the debtor absent bankruptcy are too numerous and varied to summarize or adequately identify. The trustee can assert any of these defenses. The trustee might, for example, assert the defense of duress or estoppel. Estoppel is often raised when claims are presented against the assets of the estate by insiders or others having a certain community of interest with the debtor, such as officers of a debtor corporation.[14] It is important to note, however, that the availability to the trustee of an estoppel or other defense is not equivalent to the debtor's right to raise such a defense absent bankruptcy.[15]

The trustee's right to assert defenses fully should not be confused with the right to assert affirmative causes of action that the debtor would have under applicable law. A cause of action should properly be considered a valuable asset of the estate. A defense, however, may simply prevent the assertion of an unjust claim against the estate.

In sum, the available defenses that the debtor could have interposed upon suit by a creditor are not meant to be denied the trustee, whether as an affirmative defense to a suit by the creditor, as a basis to take affirmative steps to gather property of the estate or—in the context of allowance of claims—as the basis for an objection to a claim.

---

[10] See ¶ 502.04 infra.

[11] See ¶ 502.04 infra.

[12] See In re Weidenfeld, 277 F. 59 (2d Cir. 1921) (involving unenforceability predicated upon expiration of a statute of limitations); Thompson v. Bank of Commerce (In re Thompson), 6 C.B.C.2d 838, 16 B.R. 431 (Bankr. E.D.N.Y. 1982) (a fraudulently procured mortgage was unenforceable as a secured claim); see also Yutterman v. Sternberg, 86 F.2d 321 (8th Cir. 1936) (involving fraud and lack of consideration).

[13] Section 558 was added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353 (1984).

[14] See, e.g., In re Bel Air Assocs., 2 C.B.C.2d 103, 4 B.R. 168 (Bankr. W.D. Okla. 1981).

[15] See Margolis v. Nazareth Fairgrounds & Farmers Mkt., 249 F.2d 221, 223 (2d Cir. 1957); In re Bus Stop, Inc., 1 C.B.C.2d 828, 3 B.R. 26 (Bankr. S.D. Fla. 1980).

13-53846-tjt    Doc 361-10    Filed 08/16/13    Entered 08/16/13 18:34:29    Page 2 of 7

## ¶ 510.05 Equitable Subordination of Claims; § 510(c)

Section 510(c) permits the court to subordinate claims under principles of equitable subordination.[1] This subsection was essentially a codification of prior case law[2] with further development of the principles of equitable subordination left to the courts.[3] Under subsection (c)(1), claims may be subordinated to claims, and interests may be subordinated to interests, but claims may not be subordinated to interests.[4] This does not prevent the court from seeing through a purported claim and determining in a particular instance that the claimant in fact took an equity position when he advanced funds to the debtor.[5]

Secured as well as unsecured claims may be subordinated.[6] All or part of a claim may be subordinated. A claim may be subordinated to all or part of another allowed claim. Thus, depending on the circumstances, a subordinated claim may be relegated to the bottom rung of claims or may be simply allowed after rather than ahead of the claim of a party who has in some way been injured by the conduct of the holder of the subordinated claim.

Under subsection (c)(2), when a claim that is subordinated is secured by a lien, the lien is transferred to the debtor's estate under section 541. In essence, the subordinated claim becomes unsecured and the property securing such claim becomes part of the debtor's estate.

---

¶ 510.05

[1] 11 U.S.C. § 510(c).

[2] H.R. Rep. No. 595, 95th Cong., 1st Sess. 359 (1977). The House Report cites Pepper v. Litton, 308 U.S. 295, 60 S. Ct. 238, 84 L. Ed. 281 (1939), and Taylor v. Standard Gas & Elec. Co., 306 U.S. 307, 59 S. Ct. 543, 83 L. Ed. 669 (1938); see also Comstock v. Group of Institutional Investors, 335 U.S. 211, 68 S. Ct. 1454, 92 L. Ed. 1911 (1948).

[3] Statements of Rep. Edwards, 124 Cong. Rec. H11,095 (daily ed. Sept. 28, 1978); and Sen De Concini, S17,412 (daily ed. Oct. 6, 1978).

[4] Adelphia Recovery Trust v. Bank of America, N.A., 390 B.R. 80 (S.D.N.Y. 2008) ("a given claim many not be subordinated to an equity interest, but only to another claim"). But see In re Lifschultz Fast Freight, 132 F.3d 339, 39 C.B.C. 2d 99 (7th Cir. 1997) (dictum) ("The power of equitable subordination, codified at 11 U.S.C. § 510(c) allows a bankruptcy court to relegate even a secured claim to a lower tier, even to the lowest-the equity tier.").

[5] In re Hyperion Enters., Inc., 158 B.R. 555 (D.R.I. 1993); Diasonics, Inc. v. Ingalls, 121 B.R. 626 (Bankr. N.D. Fla. 1990). The Diasonics court stated:

> Determining the equitable subordination issue prior to determining whether the advance is a loan or a capital contribution is similar to taking the cart before the horse. If it is determined that the claim is a capital contribution and not a debt then equitable subordination would not have any relevance. Subordination is appropriate when the claimant is undeniably a creditor, but for reasons of equity should be relegated to a rank inferior to that of general creditors.

121 B.R. 626, 630; see also ¶ 510.02[3] supra.

[6] 124 Cong. Rec. H11,095 (daily ed. Sept. 28, 1978); S17,412 (daily ed. Oct. 6, 1978). A claim based on a note secured by the debtor's assets was subordinated in Reiner v. Washington Plate Glass Co. (In re Washington Plate Glass Co.), 8 C.B.C.2d 707, 27 B.R. 550 (D.D.C. 1982).

(Rel. 123-9/2012 Pub.219)

fraud, spoliation or overreaching is necessary.[29]

### [a] Alter Ego Cases; "Domination and Control" of the Debtor

The court, in effect, will pierce the corporate veil when it appears that a claimant of the debtor corporation enjoys "domination and control" of the debtor. The courts, in alter ego cases, determine whether the debtor may be described as an "instrumentality" of the claimant.[30] Examples of alter ego cases are found in the situations where the debtor is an affiliate of a parent corporation or the debtor corporation is controlled by one person or a family. If a debtor corporation is determined to be a mere instrumentality of the claimant, and the conduct of the claimant has been such that other creditors are prejudiced, the remedy will be subordination of its claim against the debtor. It is well recognized that one-person corporations as well as affiliates are accepted business entities. If a claimant is a parent corporation or sole stockholder, therefore, the claim will not be subordinated solely because of this relationship. There must be an additional contributing factor.[31]

There is no precise definition of "domination and control" in an alter ego case. Many cases wrestle with what action by a creditor constitutes "control" so that its actions come under "rigorous scrutiny."[32] The Code defines "affiliate," in section 101, as an entity that controls 20 percent or more of the outstanding voting securities of the debtor, or is controlled by the debtor to the same extent. Other factors are instructive in determining whether there is such domination and control of the debtor as to require subordination if the requisite additional conduct of the claimant is present. These include the fact that an affiliate was created solely to fill the needs of the parent corporation, the same premises were used by both with no sublease, no separate tax

---

[29] Shubert v. Lucent Techs. Inc. (*In re* Winstar Communications, Inc.), 554 F.3d 382 (3d Cir. 2009); J & M Salupo Development Co., 388 B.R. 795 (B.A.P. 6th Cir. 2008); Carter-Waters Okla., Inc. v. Bank One Trust Co., N.A. (*In re* Eufala Indus. Auth.), 266 B.R. 483 (B.A.P. 10 Cir. 2001); Fabricators, Inc. v. Technical Fabricators, Inc. (*In re* Fabricators, Inc.), 926 F.2d 1458 (5th Cir. 1991); *In re* N&D Properties, Inc., 799 F.2d 726, 731 (11th Cir. 1986); *In re* First Alliance Mortgage Co., 298 B.R. 652 (C.D. Cal. 2003) ("[i]n the case of a non-fiduciary, non-insider, gross and egregious conduct, tantamount to fraud, misrepresentation, overreaching, spoliation or conduct involving moral turpitude are required before a court will equitably subordinate a claim"); *In re* Wolverine, Proctor & Schwartz, LLC, 447 B.R. 1 (Bankr. D. Mass. 2011) (providing discussion of specific types of conduct necessary to support equitable subordination against a creditor who is not an insider).

[30] American Trading & Prod. Corp. v. Fisbach & Moore, Inc., 311 F. Supp. 412 (N.D. Ill. 1970).

[31] Comstock v. Group of Institutional Investors, 335 U.S. 211, 68 S. Ct. 1454, 92 L. Ed. 1911 (1948). In Machinery Rental, Inc. v. Herpel (*In re* Multiponics, Inc.), 622 F.2d 709 (5th Cir. 1980), the court refused to regard a corporation with a claim against the debtor as the alter ego of its sole shareholder (this was not a case in which the *debtor* had an alter ego) stating:

> the alter ego doctrine and piercing of the corporate veil are truly exceptional doctrines, reserved for those cases where the officers, directors or stockholders utilized the corporate entity as a sham to perpetuate a fraud, to shun personal liability or to encompass other truly unique situations.

622 F.2d 709, 724–25.

[32] *See, e.g., In re* Clark Pipe & Supply Co., 893 F.2d 693, 22 C.B.C.2d 500 (5th Cir. 1990); *In re* Badger Freightways, Inc., 22 C.B.C.2d 174, 106 B.R. 971 (Bankr. N.D. Ill. 1989).

13-53846-tjt   Doc 361-10   Filed 08/16/13   Entered 08/16/13 18:34:29   Page 4 of 7

## ¶ 510.05 Equitable Subordination of Claims; § 510(c)

Section 510(c) permits the court to subordinate claims under principles of equitable subordination.[1] This subsection was essentially a codification of prior case law[2] with further development of the principles of equitable subordination left to the courts.[3] Under subsection (c)(1), claims may be subordinated to claims, and interests may be subordinated to interests, but claims may not be subordinated to interests.[4] This does not prevent the court from seeing through a purported claim and determining in a particular instance that the claimant in fact took an equity position when he advanced funds to the debtor.[5]

Secured as well as unsecured claims may be subordinated.[6] All or part of a claim may be subordinated. A claim may be subordinated to all or part of another allowed claim. Thus, depending on the circumstances, a subordinated claim may be relegated to the bottom rung of claims or may be simply allowed after rather than ahead of the claim of a party who has in some way been injured by the conduct of the holder of the subordinated claim.

Under subsection (c)(2), when a claim that is subordinated is secured by a lien, the lien is transferred to the debtor's estate under section 541. In essence, the subordinated claim becomes unsecured and the property securing such claim becomes part of the debtor's estate.

---

¶ 510.05

[1] 11 U.S.C. § 510(c).

[2] H.R. Rep. No. 595, 95th Cong., 1st Sess. 359 (1977). The House Report cites Pepper v. Litton, 308 U.S. 295, 60 S. Ct. 238, 84 L. Ed. 281 (1939), and Taylor v. Standard Gas & Elec. Co., 306 U.S. 307, 59 S. Ct. 543, 83 L. Ed. 669 (1938); see also Comstock v. Group of Institutional Investors, 335 U.S. 211, 68 S. Ct. 1454, 92 L. Ed. 1911 (1948).

[3] Statements of Rep. Edwards, 124 Cong. Rec. H11,095 (daily ed. Sept. 28, 1978); and Sen De Concini, S17,412 (daily ed. Oct. 6, 1978).

[4] Adelphia Recovery Trust v. Bank of America, N.A., 390 B.R. 80 (S.D.N.Y. 2008) ("a given claim many not be subordinated to an equity interest, but only to another claim"). But see In re Lifschultz Fast Freight, 132 F.3d 339, 39 C.B.C. 2d 99 (7th Cir. 1997) (dictum) ("The power of equitable subordination, codified at 11 U.S.C. § 510(c) allows a bankruptcy court to relegate even a secured claim to a lower tier, even to the lowest-the equity tier.").

[5] In re Hyperion Enters., Inc., 158 B.R. 555 (D.R.I. 1993); Diasonics, Inc. v. Ingalls, 121 B.R. 626 (Bankr. N.D. Fla. 1990). The Diasonics court stated:

> Determining the equitable subordination issue prior to determining whether the advance is a loan or a capital contribution is similar to taking the cart before the horse. If it is determined that the claim is a capital contribution and not a debt then equitable subordination would not have any relevance. Subordination is appropriate when the claimant is undeniably a creditor, but for reasons of equity should be relegated to a rank inferior to that of general creditors.

121 B.R. 626, 630; see also ¶ 510.02[3] supra.

[6] 124 Cong. Rec. H11,095 (daily ed. Sept. 28, 1978); S17,412 (daily ed. Oct. 6, 1978). A claim based on a note secured by the debtor's assets was subordinated in Reiner v. Washington Plate Glass Co. (In re Washington Plate Glass Co.), 8 C.B.C.2d 707, 27 B.R. 550 (D.D.C. 1982).

# EXHIBIT 7

local shuttle buses in a particular area or for a particular function such as parking, airport, or downtown shuttles. All should be included. The legislative history lists several kinds of utility services that should be included, including electric, water, or sewage or waste facilities.[7] There appears to be no reason why similar treatment should not be afforded other utility services, such as cable, gas, telephone or cellular systems. The National Bankruptcy Conference, which was one of the principal architects of the 1988 Amendments, stated in its testimony that revenues from a toll highway or bridge or other project or system which imposes user fees would also qualify as receipts from "transportation, utility or other services."[8]

In order to qualify as "special revenues" under subparagraph (A), the project or system from which the receipts are derived must be used primarily or intended to be used primarily for the defined purpose. Thus, for example, a city transportation system used primarily for transporting city workers among different facilities for their work but only incidentally providing transport services to the general public ought not to qualify. Similarly, a municipal electric plant that provides heat or electricity to city facilities and sells surplus to the general utility serving electricity users in the city is not either used primarily or intended to be used primarily for utility services. But a facility originally intended to provide utility services and thereafter canceled or sold might generate receipts that would qualify.

### [2] Special Excise Taxes

The second category of the definition is: "(B) special excise taxes imposed on particular activities or transactions."[9] The Senate Report gives examples:

> An excise tax on hotel and motel rooms or the sale of alcoholic beverages would be a special excise tax under clause (B). "Special excise taxes" are taxes specifically identified and pledged in the bond financing documents and are not "generally" available to all creditors under state law. A general state sales tax would not be a special excise tax.[10]

The Senate Report is useful in providing examples and in negating the applicability of the definition to general sales taxes. However, the definition does not rely on whether special revenues are subject to a lien, as does section 928, and therefore the second sentence of the quoted paragraph is more properly applicable to the scope of section 928.[11]

### [3] Incremental Taxes Attributable to a Specific Project

The third category of special revenues is: "(C) incremental tax receipts from the

---

[7] H.R. Rep. No. 100-1011, 100th Cong., 2d Sess. 6 (1988).

[8] Legislation to Amend Chapter 9 of the Bankruptcy Code,Hearing Before the Subcomm. on Monopolies and Com. Law of the House Judiciary Com. on H.R. 3845, 100th Cong., 2d Sess., Ser. No. 73, 42 (1988) (Report of the National Bankruptcy Conference on Proposed Municipal Bankruptcy Amendments).

[9] 11 U.S.C. § 902(2)(B).

[10] S. Rep. No. 100-506, 100th Cong., 2d Sess. 21 (1988), *reprinted in* App. Pt. 41(g)(i) *infra*.

[11] 11 U.S.C. § 928(a); *see* ch. 928 *infra*.