**Exhibit 14**

**City's Response to Defendant's Proposed Order Dissolving TRO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

———————————

| | |
|---|---|
| **CITY OF DETROIT, a Municipal Corporation Organized and Existing Under the Laws of the State of Michigan** ) ) ) ) | **Case No.:  2:13-cv-12987-LPZ-MKM** |
| **Plaintiff,** ) | **Hon. Lawrence P. Zatkoff** |
| **v.** ) ) | |
| **SYNCORA GUARANTEE INC., a New York Corporation,** ) ) ) | |
| **and** ) ) | |
| **U.S. BANK, N.A.,** ) ) ) | |
| **and** ) ) | |
| **MGM GRAND DETROIT, LLC,** ) ) ) | |
| **and** ) ) | |
| **DETROIT ENTERTAINMENT, LLC, d/b/a MOTORCITY CASINO HOTEL,** ) ) ) ) | |
| **and** ) ) | |
| **GREEKTOWN CASINO, LLC,** ) ) ) | |
| **Defendants.** ) ) | |

**PLAINTIFF CITY OF DETROIT'S RESPONSE TO DEFENDANT
SYNCORA'S NOTICE OF PROPOSED ORDER DISSOLVING THE
<u>JULY 5, 2013, TEMPORARY RESTRAINING ORDER</u>**

Syncora's submission further underscores the need for this proceeding to be transferred to the Bankruptcy Court pursuant to Local Rule 83.50(a).  The issue in this case is whether the City can expect continued access to much-needed revenue while it develops a plan of adjustment in bankruptcy, or whether this revenue will be subject to interference by a party with a weak and contrived claim.  This is a central issue in the City's bankruptcy case; it is one that the Bankruptcy Court will necessarily resolve within a few weeks in adjudicating the City's pending motion to assume and approve its recent, crucial Settlement with its swap counterparties;[1] and it is one that Syncora has already appeared before the Bankruptcy Court to contest.  It is precisely to avoid this sort of duplicative litigation and the danger of inconsistent rulings that underpins this Court's standing order for automatic referral to the Bankruptcy Court of proceedings that are at least "related to" a bankruptcy case.

---

[1] The settlement ("Settlement") between the City and the swap counterparties provides that the City will have the option to buy-out its interest rate swap contracts with the counterparties at an attractive discount.  In return, the counterparties will release their claims upon the casino revenues the City receives from taxes and "developer payments" that it imposes upon Detroit's three casinos. Since 2009, those casino revenues have been pledged to the counterparties as security for the City's obligations to the counterparties.  Upon approval of the Settlement, however, the counterparties will release their security interest in the casino revenues, enabling the City to have untrammeled access to the revenues.  As part of the Settlement, the counterparties also will relinquish any rights they might have to pursue claims against Syncora, which is an insurer of the City's swap payments.

1.   Contrary to Syncora's assertions, the temporary restraining order ("TRO") issued by the Wayne County Circuit Court was not limited in duration. Rather, that court recognized the emergency circumstances facing the City and entered a TRO of indefinite duration.  There are sound reasons for this.  The lockbox system with which Syncora interfered provides for monthly payouts to the City and monthly replenishment of those funds.  Unless enjoined, Syncora would have interfered with this system repeatedly, causing the City irreparable harm.  In fact, Syncora's recent conduct suggests that this is precisely what it plans to do if the TRO is dissolved.

2.   As this Court is aware, two weeks ago, the City offered to voluntarily dissolve the TRO pursuant to an appropriate stipulated order.  The City made this offer because it had recently concluded its Settlement with the swap counterparties and because it was about to file its bankruptcy petition, which the City thought would moot this case and, in all events, move it to the Bankruptcy Court. However,  Syncora rejected that offer, and instead interposed the obviously unacceptable condition that the City return to the lockbox the $15 million it had received while the TRO was in place.  The City could not accept this condition, and we made clear in our July 15 filing in this Court that the City would agree to "an *appropriate* stipulated order" dissolving the TRO.  *See* Preliminary Response to Motion and Notification of the City's Consent to Dissolution of Temporary

Restraining Order and Withdrawal of Request for Hearing on Preliminary Injunction, at ¶ 1 (ECF Doc. # 11) (emphasis added).  Syncora did not respond to this invitation for over two weeks.  On July 30—in connection with a broader strategy of litigating on no fewer than three fronts—Syncora offered a proposed order that would dissolve the TRO, but continued to reserve its demand for the return of casino revenues.

    3.  In the meantime, there have been a series of significant developments:

    a)  On July 18, the City filed for bankruptcy protection under chapter 9 of the Bankruptcy Code, 11 U.S.C. § 901 *et seq.*

    b)  That same day, the City filed a motion in the Bankruptcy Court for an order authorizing the assumption of the City's Settlement with the swap counterparties pursuant to section 365(a) of the Bankruptcy Code and approving the Settlement pursuant to Bankruptcy Rule 9019.  *See* Docket No. 17, *In re City of Detroit, Michigan*, No. 13-53846 (Bankr. E.D. Mich.).  The Settlement, if approved, should moot this case.  Nevertheless, Syncora filed objections to the Settlement in the Bankruptcy Court and has requested expedited discovery.  (The discovery, in fact, substantially overlaps with the set of discovery demands Syncora previously served and has pending in this action.)  The Bankruptcy Court will hear Syncora's motion for discovery tomorrow, August 2.

c)  On July 15, despite the pendency of the TRO, Syncora sent letters to the swap counterparties expressing its position that the swaps could not be terminated without its consent and indicating that Syncora would not consent to a termination of the swaps pursuant to the Settlement.[2]

d)  On July 24, Syncora filed yet another lawsuit, this time in New York state court against the swap counterparties.  In that suit—which was removed by the counterparties to federal court and stayed yesterday afternoon—Syncora attempted to enjoin the Settlement as a violation of Syncora's rights under the swap agreements, notwithstanding the fact that Syncora had a parallel effort underway in the Bankruptcy Court, was attempting to proceed in this Court as well, and, in all events, was subject to the automatic stay of 11 U.S.C. § 362(a)(3).[3]

---

[2] This letter, and the response of SBS Financial Products Company, L.L.C., are attached as Exhibits 5 and 7 to the Declaration of Christopher J. DiPompeo in Opposition to Defendant's Emergency Motion to Dissolve the Temporary Restraining Order and Conduct Expedited Discovery (ECF Doc. # 19).

[3] The City filed a notice of its bankruptcy case in the New York state court on July 31.  That same day, the swap counterparties removed the case to federal court and moved for a transfer of venue to the Eastern District of Michigan, so that the suit could be considered by the Bankruptcy Court in conjunction with the assumption motion.  Judge Lewis A. Kaplan, of the United States District Court for the Southern District of New York, then stayed the proceedings while the court considered whether to transfer the case to the Bankruptcy Court.  The court directed the parties to file briefs regarding the swap counterparties' transfer motion on August 10 and 15.  *See Syncora Guarantee Inc. v. UBS AG, et al.*, No. 1:13-cv-05335-LAK (S.D.N.Y.).

4.  The centerpiece of all three of these matters is the City's right to access the casino revenues that are protected by the lockbox system established by the Collateral Agreement.  The Bankruptcy Court has already scheduled a hearing on the City's motion to assume the Settlement, and will entertain any objections to the Settlement in that proceeding—including those raised by Syncora in the instant litigation.  Having independent litigation in this Court over the very same matters already pending in the Bankruptcy Court will waste judicial resources, increase costs, and risk inconsistent results.  Avoiding such disorder is, of course, the purpose of Local Rule 83.50(a).

5.  Second, based on Syncora's repeated actions over the past two weeks, the City believes that Syncora would again attempt to restrict the City's access to its casino revenues if the TRO were dissolved.[4]  Yet this question—the ability of a cash-strapped debtor to access its own funds—is one of the core issues in any bankruptcy and, we submit, a matter that in the end should be resolved by the Bankruptcy Court.

---

[4] Although we believe Syncora's actions already may have violated the automatic stay, even that issue would have to be resolved by the Bankruptcy Court. *See* 11 U.S.C. § 362(a)(3) (providing that a bankruptcy filing operates as an automatic stay of "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate"); *In re Jefferson County, Alabama*, 484 B.R. 427, 446-47 (N.D. Ala. 2012) ("Any action that affects property of the debtor in a manner within the automatic stay's sphere, including a declaratory judgment action, is subject to § 362(a)(3), even if the debtor is not named in the action.").

6

6. In sum, the state court chose to enter a TRO of unlimited duration. The City offered to dissolve the TRO before commencing its bankruptcy case, but Syncora at first refused and then, almost two weeks later, belatedly attempted to accept the City's offer, but with reservations. Syncora's actions during the interim, however, have proven the importance of the TRO, and the City believes that this issue should be resolved as part of the Bankruptcy Court's oversight of the City's chapter 9 proceeding. Rather than litigate the same question in three different forums, the City requests that this Court transfer this proceeding to the Bankruptcy Court so that the issue of dissolving the TRO may be addressed by that court.

7

s/ Robert S. Hertzberg
_____
Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, MI  48075
(248) 359-7300  -  Telephone
(248) 359-7700  -  Fax
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

Thomas F. Cullen, Jr.
Gregory M. Shumaker
Geoffrey S. Stewart
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-3939
tfcullen@jonesday.com
gshumaker@jonesday.com
gstewart@jonesday.com

Dated:     August 1, 2013

*Attorneys for Plaintiff*

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of August, 2013, I caused to be electronically filed the foregoing Plaintiff City of Detroit's Response to Defendant Syncora's Notice of Proposed Order Dissolving the July 5, 2013, Temporary Restraining Order and this Certificate of Service with the United States District Court, Eastern District of Michigan, and notice will be sent by operation of the Court's electronic filing system to all ECF participants.

I further certify that I caused to be delivered a courtesy copy of the aforesaid to the Hon. Lawrence P. Zatkoff, 526 Water Street, Port Huron, MI 48226, via Federal Express.

s/Robert S. Hertzberg
ROBERT S. HERTZBERG (P30261)

#20334732 v1 (140967.2)