# Exhibit 15

**Transaction Diagram and Summaries of Agreements**

## Diagram of Transactions and Tables Summarizing Agreements



## Service Contracts

| | |
|---|---|
| *Parties* | GRS Service Corporation and the City.<br>PFRS Service Corporation and the City. |
| *Purpose* | To establish and govern the City's obligation to provide the Service Corporations with the funds necessary to pay the amounts due under the COPs and the Swaps. |
| *Section 7.03 Subrogation* | After making an insurance payment, Syncora is subrogated to the rights of COP-holders or a Swap Counterparty. |
| *Section 8.03 Priority Scheme* | The priority of payments under the Service Contracts is as follows:<br>Contract Administration Payments;<br>All theretofore due and unpaid Service Charges and amounts in respect of Hedge Periodic Payables (COP interest payment and Quarterly Swap Payment;<br>All then due or about to become due Service Charges and amounts due in respect of Hedge Periodic Payables (COP interest payment and Quarterly Swap Payment);<br>All theretofore due and unpaid Regular Scheduled Payments (COP principal payment);<br>All then due or about to become due Regular Scheduled Payments (COP principal payment);<br>All theretofore due and unpaid amounts in respect of Hedge Termination Payables (Swap termination payments);<br>All then due or about to become due amounts in respect of Hedge Termination Payables (Swap termination payments);<br>All then due or about to become due Option Prepayment Amounts and Accrued Service Charges. |
| *Section 9.02 Termination or Assignment of Stated Hedges* | The City may not direct the Service Corporation to terminate a Swap without Syncora's consent. |
| *Section 9.05 Amendment* | The Service Contract cannot be amended without the prior written consent of Syncora (as a third-party beneficiary). [why as third-party beneficiary - see *9.05(iv)*] |
| *Section 9.06 No Waiver; Remedies* | The failure of a third-party beneficiary (*i.e.*, Syncora) to exercise any of its rights under the Service Contract does not constitute a waiver. |

| | |
|---|---|
| *Section 9.07*<br>*Binding Obligation* | The Service Contract is a continuing obligation of the City and shall inure to the benefit of and be enforceable by Syncora as third-party beneficiary. |
| *Section 9.12*<br>*Third Party Beneficiaries* | Syncora is a third-party beneficiary of the Service Contract and has the right to enforce the promises made in the Service Contract. Any amendment that diminishes the rights and remedies of Syncora as third party beneficiary without Syncora's prior written consent is acknowledged to have the effect in fact of hindering, delaying and defrauding Syncora. |
| *Section 9.17*<br>*Integration* | The Service Contract is intended by the parties as the final, complete, and exclusive statement of the transactions evidenced by the Service Contract. |

## Swaps (Master Agreement) (ISDA MA)

| | |
|---|---|
| *Parties* | GRS Service Corporation and SBS.<br>GRS Service Corporation and UBS.<br>PFRS Service Corporation and SBS.<br>PFRS Service Corporation and UBS. |
| *Purpose* | To serve as a hedge and fix the interest rate on the Floating-Rate COPs. |
| *Part 5 Events of Default and Termination Events* | Events of Default/Termination Events include: (a) the Service Corporations' failure to make any payment due under the Swaps; (b) the Service Corporations' failure to make any payments when due in excess of $10 million; (c) the City's commencement of bankruptcy proceedings; and (d) the City's appointment of an administrator of its assets. |

## Contract Administration Agreement (CAA)

| | |
|---|---|
| *Parties* | Funding Trusts, GRS Service Corporation, PFRS Service Corporation, and US Bank (as Contract Administrator). |
| *Purpose* | To (i) appoint an administrator to collect amounts from the City (on behalf of the Service Corporations) and distribute Service Payments and Swap Payments; (ii) allow Service Corporations to make pledges; and (iii) set forth parties' control rights after an Event of Default. |
| *Section 6.9.2(1)*<br>*Control by Majority* | Syncora is treated the same as the COP-holders it insures and has the right to provide the same consents, directions, and waivers as those COP-holders. |

| | |
|---|---|
| ***Section 6.9.2(2) Control by Majority*** | Syncora controls all actions that may be taken by a Swap Counterparty, including all directions, consents, and waivers that a Swap Counterparty may provide. |
| ***Section 9.2 Independent Action by Parties*** | Syncora has the right to enforce any remedies relating to any collateral provided by the City and Service Corporations. |
| ***Section 10.2 Party In Interest*** | Syncora is a party-in-interest and may (i) notify the Service Corporation or U.S. Bank of an Event of Default and (ii) request that U.S. Bank intervene in judicial proceedings that affect the COPs, the Swaps, or the security. U.S. Bank is required to accept notice of an Event of Default from Syncora. |
| ***Section 10.3 Amendments*** | Any amendment or supplement to the Contract Administration Agreement or either Service Contract is subject to Syncora's consent. |
| ***Section 11.6 Third Party Beneficiaries*** | Any amendment entered into diminishing Syncora's rights and remedies (as third party beneficiary) without its consent is acknowledged to have hindered and defrauded Syncora. |
| ***Section 11.10 Integration*** | The Contract Administration Agreement is intended to be the final, complete, and exclusive statement of the transactions evidenced by the agreement. |

## Trust Agreement (TA)

| | |
|---|---|
| ***Parties*** | GRS Service Corporation, PFRS Service Corporation, and US Bank (as Trustee). |
| ***Purpose*** | To appoint U.S. Bank as trustee and to provide for the issuance of certificates of participation representing undivided interests in certain of the respective payments made under the Service Contracts. |
| ***Section 802 Insurer Treated As Certificate- holder*** | Any Insurer not then in default under its Credit Insurance shall be treated as the holder if the Certificates insured by it for the purposes of actions to be taken by Certificateholders under the Trust Agreement and for the purpose of giving all other consents, directions and waivers that Certificateholders may give. |

## Collateral Agreement (CA)

| | |
|---|---|
| ***Parties*** | The City, GRS Service Corporation, PFRS Service Corporation, U.S. Bank (as Custodian), and the Swap Counterparties. |

| | |
|---|---|
| *Purpose* | To provide collateral to secure the City's payment obligations to the Service Corporations under the Service Contracts in exchange for a waiver of the rights of the Swap Counterparties to terminate the Swaps as a result of a default by the City. |
| *Section 5.1 Payment of Revenues* | The City shall not take any action to redirect the payment of the casino revenues. |
| *Section 5.4 When Payments from GRSA Prohibited* | No payment shall be made to the City from the General Receipts Subaccount during certain Termination Events and/or Events of Default. (*See, e.g.,* A&R Part 1(i); ISDA MA § 5; CA § 11.6.). |
| *Section 14.5 No Amendment* | No amendment to the Collateral Agreement that would affect Syncora's rights is effective without Syncora's written consent. |
| *Section 14.6 Rights of Insurer* | Syncora, as insurer, may exercise any right given to it in the Collateral Agreement. |
| *Section 14.14 Integration* | The Collateral Agreement incorporates the provisions of the Swaps, the Service Contracts, and the Contract Administration Agreement. |
| *Irrevocable Instructions* | The City must provide irrevocable instructions to each casino to deposit into the General Receipts Subaccount the funds that it pays to satisfy the City's wagering tax. |

**Amended Swaps (Amended and Restated Schedule to the 1992 ISDA Master Agreement) (A&R)**

| | |
|---|---|
| *Parties* | The Service Corporations and the Swap Counterparties. |
| *Purpose* | To serve as a hedge and to fix the interest rate on the Floating-Rate COPs. |
| *Part 5(iv) Swap Insurer Consent* | Syncora must consent, in writing, to any modification, waiver, or amendment of the Swap Agreement or the Collateral Agreement. |
| *Part 5(i) Designation of Early Termination Event* | If a Termination Event or Event of Default occurs, neither the Service Corporations nor the Swap Counterparties can designate an Early Termination Event without Syncora's prior written consent. |

| | |
|---|---|
| *Part 5(x) Represent-ations and Agreements* | Each party's representations and agreements in the Swaps are expressly made to and for the benefit of Syncora. |
| *Part 5(xi) Third-Party Beneficiary* | Syncora is an express third-party beneficiary of the Swaps with the power to enforce the terms of the agreement. |
| *Part 5(xiii) Subrogation* | Syncora is subrogated to the rights of the Swap Counterparties against the Service Corporations to the extent Syncora must make insurance payments. |
| *Part 5(xiv) Designating an Early Termination Event* | Syncora must consent in writing to a party's attempt to terminate the Swaps due to an Event of Default or Termination Event. |
| *Part 5(xx) Optional Early Termination* | Swap Counterparty may designate early termination date if it is not a sole defaulting party by providing five (5) business days' notice and setting an early termination date. |

## Forbearance Agreement (FA)

| | |
|---|---|
| *Parties* | The City, the Service Corporations, UBS A.G., Merrill Lynch Capital Services. |
| *Recitals* | The Parties admit that Events of Default have occurred and are continuing under the Swaps. |
| *Section 1.1 Forbearance* | The Swap Counterparties agree to forbear from terminating the Swaps and instructing U.S. Bank, as Custodian, to cease making payments to the City from the General Receipts Subaccount. (This is contrary to the automatic cash-trapping provision of the **Collateral Agreement (CA) §5.4(a)**.) |
| *Section 1.2 Forbearance Period* | The Forbearance Agreement creates a Forbearance Period, which is a period of ongoing obligation by the Swap Counterparty to support the City's efforts to receive payments of casino revenues from the General Receipts Subaccount. The underlying agreements (*i.e.*, the Swaps, Service Contracts, Contract Administration Agreement, and Collateral Agreement) are otherwise operable during this period, including the provisions in those agreements regarding insurance obligations of Swap Insurers such as Syncora (notwithstanding the release of collateral). (This is contrary to **Amended Swaps (A&R) § 5(iv), 5(d)**. No amendments, modifications, *or waivers* of the Swaps or the Collateral Agreement are effective unless Syncora consents in writing.) |

| | |
|---|---|
| *Section 3.1 Right to Direct Swap Counter-parties to Terminate* | The City may direct the Swap Counterparties to exercise optional termination rights, which relieve the Service Corporations of their payment obligations. The Forbearance Agreement contains no provisions addressing or requiring Syncora's consent to any such termination. (This is contrary to **Contract Administration Agreement (CAA) § 6.9.2(2)**. Syncora has the right to direct the actions of the Swap Counterparties.) |
| *Section 3.5 Decreased Termination Amount* | If the City chooses to exercise its optional termination rights, the City pays between 75% and 82% of the mid-market value of the Swaps, with the value to be determined on the date of the exercise of the termination option. This payment is a direct payment to the Swap Counterparties. (This is contrary to the **Swaps (ISDA MA) § 6(e)**. If the Swap is terminated early, the termination value is determined by reference to either market quotation by leading dealers in the market or the full value of the loss of the Swap.) |