UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  
                                       Chapter 9
                                       Case No. 13-53846

City of Detroit, Michigan,

      Debtor.

_____/

**<u>OBJECTION BY INTERESTED PARTY DAVID SOLE TO THE CITY OF DETROIT'S ELIGIBILITY TO OBTAIN RELIEF UNDER CHAPTER 9 OF THE BANKRUPTCY CODE [DOCKET 10] AND TO THE CITY OF DETROIT'S MEMORANDUM IN SUPPORT OF STATEMENT OF QUALIFICATIONS PURSUANT TO SECTION 109(C) OF THE BANKRUPTCY CODE [DOCKET 14]</u>**

      1.      The cited authority for the Emergency Manager to file this Chapter 9 bankruptcy on "behalf" of the City of Detroit derives from MCL 141.1541 et. seq, the Michigan Local Financial Stability and Choice Act of 2012.

      2.      This Act outlaws specifies powers delegated to the Emergency Manager by Michigan State law.

      3.      For example, MCLS § 141.1551 provides the Emergency Manager with the following powers:

> (c) to carry out the modification, rejection, termination, and renegotiation of contracts pursuant to section 12;
> (d)The timely deposit of required payments to the pension fund for the local government or in which the local government participates; . . .
> (f) Any other actions considered necessary by the emergency manager in the emergency manager's discretion to achieve the objectives of the financial and operating plan, alleviate the financial emergency, and remove the local government from receivership.

      4.      MCL 141. 1552 provides for other statutory powers handed to an Emergency Manager. It states:

1

Sec. 12. **(1)** An emergency manager may take 1 or more of the following additional actions with respect to a local government that is in receivership, notwithstanding any charter provision to the contrary:

**(j)** Reject, modify, or terminate 1 or more terms and conditions of an existing contract.

**(k)** Subject to section 19, after meeting and conferring with the appropriate bargaining representative and, if in the emergency manager's sole discretion and judgment, a prompt and satisfactory resolution is unlikely to be obtained, reject, modify, or terminate 1 or more terms and conditions of an existing collective bargaining agreement. The rejection, modification, or termination of 1 or more terms and conditions of an existing collective bargaining agreement under this subdivision is a legitimate exercise of the state's sovereign powers if the emergency manager and state treasurer determine that all of the following conditions are satisfied.

6. MCL 141.1553 outlines the powers and limitations of an Emergency Manager relative to municipal pension funds. It states:

**(m)** If a municipal government's pension fund is not actuarially funded at a level of 80% or more, according to the most recent governmental accounting standards board's applicable standards, at the time the most recent comprehensive annual financial report for the municipal government or its pension fund was due, the emergency manager may remove 1 or more of the serving trustees of the local pension board or, if the state treasurer appoints the emergency manager as the sole trustee of the local pension board, replace all the serving trustees of the local pension board. For the purpose of determining the pension fund level under this subdivision, the valuation shall exclude the net value of pension bonds or evidence of indebtedness. The annual actuarial valuation for the municipal government's pension fund shall use the actuarial accrued liabilities and the actuarial value of assets. If a pension fund uses the aggregate actuarial cost method or a method involving a frozen accrued liability, the retirement system actuary shall use the entry age normal actuarial cost method. If the emergency manager serves as sole trustee of the local pension board, all of the following apply:

**(i)** The emergency manager shall assume and exercise the authority and fiduciary responsibilities of the local pension board including, to the extent applicable, setting and approval of all actuarial assumptions for pension obligations of a municipal government to the local pension fund.

**(ii) The emergency manager shall fully comply with the public employee retirement system investment act, 1965 PA 314, <u>MCL 38.1132</u> to <u>38.1140m</u>, and section 24 of article IX of the state constitution of 1963**, and any actions

taken shall be consistent with the pension fund's qualified plan status under the federal internal revenue code. (emphasis added)

7. Thus an Emergency Manager's powers with regard to municipal pensions are specifically limited by Article IX Section 24 of the Michigan Constitution which guarantees the payment of accrued pension benefits. Article IX Section 24 states:

> **§ 24. Public pension plans and retirement systems, obligation.**
> Sec. 24. The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.

8. MCL 141.1558.is the section of the Local Financial Stability and Choice Act of 2012 that provides the authority for the Emergency Manager and the Governor to file a Chapter 9 Bankruptcy. It states:

> Sec. 18. **(1)** If, in the judgment of the emergency manager, no reasonable alternative to rectifying the financial emergency of the local government which is in receivership exists, then the emergency manager may recommend to the governor and the state treasurer that the local government be authorized to proceed under chapter 9. If the governor approves of the recommendation, the governor shall inform the state treasurer and the emergency manager in writing of the decision, with a copy to the superintendent of public instruction if the local government is a school district. The governor may place contingencies on a local government in order to proceed under chapter 9. Upon receipt of the written approval, the emergency manager is authorized to proceed under chapter 9. This section empowers the local government for which an emergency manager has been appointed to become a debtor under title 11 of the United States Code, 11 USC 101 to 1532, as required by section 109 of title 11 of the United States Code, 11 USC 109, and empowers the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9.

9. 11 USCS 109(2) states that a local municipality must be specifically authorized by state law to file a Chapter 9 bankruptcy. It states:

> (c) An entity may be a debtor under chapter 9 of this title [11 USCS §§ 901 et seq.] if and only if such entity--
>    (1) is a municipality;
>    (2) is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter [11 USCS §§ 901 et seq.] by State law, or by a

3

governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter [11 USCS §§ 901 et seq.].

10.    In *United States v Bekins*, 304 U.S. 27, 49 (1938), the United States Supreme Court held that the phrase "authorized by law" with regard to a municipal bankruptcy "manifestly refers to the law of the state."

11.    In *In RE: City of Harrisburg, PA*, 465 B.R. 744, 754 (Middle Dist of PA 2011), the court noted that pursuant to the most recent Chapter 9 enactments, "states act gatekeepers to their municipalities access to relief under the Bankruptcy Code. Therefore, when the authority to file under state law is questioned, bankruptcy courts exercise jurisdiction carefully in light of the interplay between Congress's bankruptcy power and the limitations on federal power under the Tenth Amendment. (internal citations omitted)."

12.    Michigan law applies the principles of strict statutory construction to interpreting the law. For example, in *Pohutski v City of Allen Park*, 465 Mich 675, 683-684 (2002), the Michigan Supreme Court held:

> When faced with questions of statutory interpretation, our obligation is to discern and give effect to the Legislature's intent as expressed [***9] in the words of the statute. DiBenedetto v West Shore Hosp, 461 Mich. 394, 402; 605 N.W.2d 300 (2000); Massey v Mandell, 462 Mich. 375, 379-380; 614 N.W.2d 70 (2000). We give the words of a statute their plain and ordinary meaning, looking outside the statute to ascertain the Legislature's intent only if the statutory language is ambiguous. Turner v Auto Club Ins Ass'n, 448 Mich. 22, 27, 528 N.W.2d 681 (1995). Where the language is unambiguous, "we presume that the Legislature intended the meaning clearly expressed---no further judicial construction is required or permitted, and the statute must be enforced as written." DiBenedetto, 461 Mich. at 402. Similarly, courts may not speculate about an unstated purpose where the unambiguous text plainly reflects the intent of the Legislature. See Lansing v Lansing Twp, 356 Mich. 641, 649-650; 97 N.W.2d 804 (1959). [*684]
>
> **When parsing a statute, we presume every word is used for a purpose. As far as possible, we give effect to every clause and sentence. "HN6The Court may not assume that the Legislature inadvertently made use of one word or [***10] phrase instead of another." Robinson v Detroit, 462 Mich. 439, 459; 613 N.W.2d 307 (2000). Similarly, we should take care to avoid a**

4

**construction that renders any part of the statute surplusage or nugatory**. In re MCI, 460 Mich. at 414. (emphasis added)

13. In *Smitter v. Thornapple Twp.*, 494 Mich. 121 (Mich. 2013), the Michigan Supreme Court restated the application of the doctrine of expressio unius est exclusio alterius (the expression of one thing is the exclusion of another) to Michigan law on statutory construction.

14. The Emergency Manager, in numerous pronouncements as well as in his Chapter 9 bankruptcy filing, noted his intention to reduce accrued pensions in violation of the law. In fact, the top "unsecured creditors" were the Detroit General Retirement Services Board and the Detroit Police and Firefighters Retirement Services Board.

15. Interested Party Sole contends that in so far as the Emergency Manager's Chapter 9 Bankruptcy filing intends to diminish or impair accrued pensions it violates MCL 141.1541 et. seq, the Michigan Local Financial Stability and Choice Act of 2012, as well as the Michigan State Constitution.

16. The only State Court to be heard on this issue, the Circuit Court for the County of Ingham, specifically held that "PA 436 is unconstitutional and in violation of Article IX Section 24 of the Michigan Constitution to the extent that it permits the Governor to authorize an emergency manager to proceed under Chapter 9 in any manner which threatens to diminish or impair accrued pension benefits." **Exhibit 1, attached.**

17. Ingham County Circuit Court Judge Rosemarie Aquilina further ordered: "In order to rectify his unauthorized and unconstitutional actions described above, the Governor must (1) direct the Emergency Manager to immediately withdraw the Chapter 9 petition filed on July 18,, and (2) not authorize any further Chapter filing which threatens to diminish or impair accrued pension benefits." **Id.**

WHEREFORE: Interested Party Sole respectfully requests that this honorable Court deny the City of Detroit's (through the Emergency Manager) eligibility for filing this Chapter 9 bankruptcy because the petition violates the state authorization statute which mandates that any Chapter 9 filing under MCL 141.1541 must be subject to the Michigan constitutional limitation on not diminishing or impairing accrued pensions, or in the alternative, that this honorable Court specifically exclude any diminishing or impairing of accrued pension benefits as part of the debtor's restructuring of debt pursuant to its Chapter 9 bankruptcy.

## LAW AND ANALYSIS

**I. THE MICHIGAN STATUTE AUTHORIZING THIS CHAPTER 9 BANKRUPTCY FILING INCORPORATES THE MICHIGAN CONSTITUTIONAL PROHIBITION AGAINST DIMINISHING OR IMPAIRNG PENSIONS AS A CONTINGENCY ON THE FILING.**

As outlined above, 11 USC 109 states that a local municipality must be "specifically authorized by state law to file a Chapter 9 bankruptcy." The phrase "authorized by law" refers to the law of the state. *U.S. v Bekins*, 304 U.S. at 27." "States act as gatekeepers to their municipalities to access to relief under the Bankruptcy Code." *In Re: City of Harrisburg*, 465 BR at 744.

The Michigan state law that is the basis for the City of Detroit's (through the Emergency Manager) Chapter 9 bankruptcy filing is MCL 141.1541 et. seq., the Local Financial and Stability and Choice Act of 2012. For the purposes of this Objection, Interested Party Sole calls the attention of the Court to several relevant sections of the statute.

Section 1551(c) provides the Emergency Manager with the power to "carry out the modification, rejection, termination and renegotiation of contracts pursuant to Section 12."

Section 1552 (Section 12) (j) provides the Emergency Manager with the power to reject, modify or terminate 1 or more terms of an existing contract. Section (k) gives the Emergency

6

Manager the power to reject, modify or terminate an existing collective bargaining contract (subject to meeting several conditions).

Section 1553 outlines the power and limitations of the Emergency Manager relative to municipal pensions. Significantly, this section specifically mandates that Emergency Manager must **fully comply** with Article IX Section 24 of the Michigan constitution, which is the constitutional prohibition on diminishing or impairing accrued pensions.

Section 1558 of the Local Financial Stability and Choice Act provides the authority for the Emergency Manager and the Governor to file a Chapter 9 bankruptcy. Significantly, Section 1558 states: "The governor may place contingencies on a local government in order to proceed under Chapter 9."

Under Chapter 9 of the Bankruptcy code and cases interpreting Chapter 9, Michigan law is determinative on how the state authorizing statute for this Chapter 9 bankruptcy is to be interpreted. Michigan law applies principles of strict statutory construction. In *Pohutski*, 465 Mich at 683, 684, the Michigan Supreme enunciated the following:

> **When parsing a statute, we presume every word is used for a purpose. As far as possible, we give effect to every clause and sentence. "HN6The Court may not assume that the Legislature inadvertently made use of one word or [\*\*\*10] phrase instead of another." Robinson v Detroit, 462 Mich. 439, 459; 613 N.W.2d 307 (2000). Similarly, we should take care to avoid a construction that renders any part of the statute surplusage or nugatory**. In re MCI, 460 Mich. at 414. (emphasis added)

In addition, Michigan courts follow the doctrine of expression unius exclusion alterius (the expression of one thing is the exclusion of another). Smitter 494 Mich at 121.

In construing the sections of the Local Financial Stability and Choice Act as a whole, and so as not to render any part of the statute suplusage or nugatory, the statute must be construed in the following manner: "The Emergency Manager is authorized to proceed under Chapter 9

7

subject to the following contingency – The Chapter 9 bankruptcy shall not in any way undertake to diminish or impair the payment of accrued pension benefits."

## II. UNDER SIXTH CIRCUIT PRECEDENT, EXCLUDING PENSION BENEFITS FROM THE CHAPTER 9 BANKRUPTCY IS NOT PREEMPTED BY FEDERAL LAW

The City of Detroit may argue once the Chapter 9 filing is authorized, any state limitations on the scope of the relief available by the filing are preempted by federal law. That seems to be basis for the holding in *In re City of Vallejo*, 403 BR 72 (2009).

However, Interested Party Sole contends that pursuant to the 2012 Sixth Circuit decision in *Richardson v Schafer*, 689 F3d 601 (2012), a narrow state limitation on the scope of the relief available in a Chapter 9 bankruptcy is not preempted by federal law.

*Schafer*, supra, dealt with the legitimacy a homestead exemption the debtor asserted pursuant to MCL 600.5451 which was broader than the exemption allowed under 11 USC 522(b) or Michigan's general homestead exemption. The Court noted that the interpretation to the phrase "uniform laws" by both the Supreme Court and this Court permits states to act in the arena of bankruptcy exemptions even if they do so by making certain exemptions available only to debtors in bankruptcy, and that such exemptions schemes are not invalidated by the Supremacy clause." *Id*. at 603.

The Sixth Circuit cited to its own holding in *Rhodes v Stewart*, 705 F2d 159 (6th Cir 1983) for the proposition that states have concurrent authority to promulgate laws governing exemptions applicable in bankruptcy cases. The Court further noted that "this understanding that the federal power was exclusive eventually gave way to an acceptance that states could, in the absence of federal legislation, pass laws on bankruptcy." *Id*. at 606. The Court stated: "In other words, the general rule of law laid down by the Supreme Court in *Moyses* was that the

8

uniformity requirement is geographical and that variations resulting from differences in state law are not unconstitutional." *Id*. at 610. "Congress does not exceed its constitutional powers in enacting a bankruptcy law that permits variations based on state law or to solve geographically isolated problems." *Id*. at 611. The Sixth Circuit held the proper determination of whether a state law conflicted with federal law in the bankruptcy exemption context was conflict preemption, whether "the laws in question conflict such that it is impossible for a party to comply with both laws simultaneously, or where the enforcement of the state law would hinder or frustrate the full purposes and objectives of the federal law."

Based on Sixth Circuit precedent, Interested Party Sole contends that the only allowable interpretation of the Michigan authorizing statute, the Local Financial Stability and Choice Act, under Michigan rules of statutory construction, is that a Chapter 9 Filing cannot have the intent or effect of diminishing or impairing accrued pensions, and such a provision does not conflict with and is not preempted by federal law. Such a limitation on a Chapter 9 Bankruptcy filing would not hinder or frustrate the full purposes and objectives of the federal Bankruptcy code. It would still allow for restructuring most of the debts of the municipality. It would exclude the one class of benefits, public pensions, which the state chose to constitutionally protect and whose protection was incorporated into the authorizing statute.

In addition, there is a strong policy purpose for protecting pension benefits and excluding them from being diminished or impaired bankruptcy. Pensions are in fact deferred wages. They were earned and secured by the workers by their labor before the bankruptcy petition was filed. In essence, they are simply unpaid wages which the retirees elected to defer so they can have an income for their last years of life.

### III. CHAPTER 9 BANKRUPTCY IS ALREADY SUBJECT TO STATE LIMITATIONS

9

In *In RE: City of Harrisburg, PA*, 465 B.R at 753, the Court discussed how Chapter 9 bankruptcy particularly implicates federalism concerns. The Court stated:

> Although Congress has the sole power to establish "uniform Laws on the subject of Bankruptcies throughout the United States (US Const art I, Section 8), where federal bankruptcy law intersects with the rights of states to regulate the activities of political subdivisions created by the state, principles of dual sovereignty as defined by the Tenth Amendment must be considered.

Municipalities cannot automatically file for Chapter 9 bankruptcy. They must be specifically authorized to file by state law. 11 USC 109. According to a study by a Sacramento television station (near where Stockton, CA is located), twenty two (22) states do not even provide access to Chapter 9 bankruptcy, and 16 states set conditions for municipal bankruptcy. http://www.news10.net/news/pdf/State-Policies-on-Chapter-9-bankruptcy.pdf (**Exhibit 2, attached**)

11 USC 904 provides limitations on the jurisdiction and powers of the court during Chapter 9 bankruptcy. The court may not interfere with any of the political or governmental powers of the debtor, any of the property or revenues of the debtor, or the debtor's use or enjoyment of any income-producing property.

The special interplay of state and federal law in the context of Chapter 9 bankruptcy, lends special applicability in the Chapter 9 context to the holding in *Schafer*, supra, that the proper determination of whether a state law conflicts with federal law in the bankruptcy exemption context is conflict preemption.

The limitation on pensions not being diminished or impaired in the bankruptcy process, which is included in Michigan's Chapter 9 authorizing statute, is not in conflict with federal law and must be enforced.

10

## IV. TO THE EXTENT THAT THE COURT WAS TO HOLD THAT REDUCING PENSIONS CAN NOT BE EXCLUDED FROM CONSIDERATION IN A CHAPTER 9 BANKRUPTCY, THEN MICHIGAN LAW DOES NOT AUTHORIZE THE FILING AND THIS CASE MUST BE DISMISSED

In the alternative, if this honorable court was to rule that excluding pensions from the Chapter 9 case would violate federal law, then there is no way to read the Michigan law as authorizing the Chapter 9 filing at all and it must be dismissed. As noted earlier, the Local Financial Stability and Choice Act of 2012 must be construed so as to incorporate the Michigan constitutional guarantee against diminishing or impairing pensions. The section of the law authorizing the Chapter 9 bankruptcy filing implicitly incorporates this clause in that it provides that the governor could place contingencies on a local government that chooses to file for Chapter 9. The ban on impairing pensions would by necessity be one of those contingencies.

If a Chapter 9 filing under the statute was to allow for attacking pension benefits, it would negate the specific ban on doing so written into the statute and implicitly included as a contingency in the governor's specific authorization of a Chapter 9 bankruptcy. Without this contingency for excluding diminishing pension benefits from the Chapter 9 consideration, there could be no authorization for a Chapter 9 bankruptcy under Michigan law. Therefore, lacking the specific authorization to file the Chapter 9 bankruptcy, the City of Detroit's petition for bankruptcy would have to be dismissed.

WHEREFORE: Interested Party Sole respectfully requests that this honorable Court deny the City of Detroit's (through the Emergency Manager) eligibility for filing this Chapter 9 bankruptcy because the petition violates the state authorization statute which mandates that any Chapter 9 filing under MCL 141.1541 must be subject to the Michigan constitutional limitation on not diminishing or impairing accrued pensions, or in the alternative, that this honorable Court

specifically exclude any diminishing or impairing of accrued pension benefits as part of the City of Detroit's restructuring of debt pursuant to this Chapter 9 bankruptcy.

                                            Respectfully submitted,

                                            JEROME D. GOLDBERG, PLLC

                                            By:    */s/ Jerome D. Goldberg*

                                            Jerome D. Goldberg (P61678)
                                            Attorney for David Sole, Party in Interest
                                            2921 East Jefferson, Suite 205
                                            Detroit, MI 48207
                                            Phone: 313-393-6001
                                            Fax: 313-393-6007
                                            Email: apclawyer@sbcglobal.net

DATED: August 19, 2013