# **EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: | Chapter 9 |
| City of Detroit, Michigan, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

**DECLARATION OF MARK DIAZ
IN SUPPORT OF OJBECTION OF THE DETROIT FIRE FIGHTERS
ASSOCIATION, THE DETROIT POLICE OFFICERS ASSOCIATION,
THE DETROIT POLICE LIEUTENANTS & SERGEANTS ASSOCIATION
AND THE DETROIT POLICE COMMAND OFFICERS ASSOCIATION
TO DEBTOR'S BANKRUPTCY PETITION AND STATEMENT OF
QUALIFICATIONS UNDER 11 U.S.C. SECTION 109(c)**

I, Mark Diaz, declare as follows:

1. I have been a Detroit Police Officer for nearly twenty years and have been the President of the Detroit Police Officers Association ("DPOA") since January 1, 2013. In that capacity, I have been involved in the DPOA's efforts to negotiate and to arbitrate its labor matters with the City of Detroit. I make this declaration based on my personal knowledge, and if called upon to do so, I could and would testify to the facts set forth herein.

2. This declaration is submitted in support of the Objection of the Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit

Police Lieutenants & Sergeants Association and the Detroit Police Command Officers Association to Debtor's Bankruptcy Petition and Statement of Qualifications under 11 U.S.C. Section 109(c).

3. Among the matters in which I have been involved as President of the DPOA is an Act 312 Arbitration Award issued in an arbitration completed before Chairman George Roumell in January of 2013 and which resulted in a decision dated March 25, 2013 (the "Award"). A copy of the Award is attached hereto as Exhibit 1. An interim award addressing DPOA health care was also issued on December 31, 2013 (the "Interim Award"). A copy of the Interim Award is attached hereto as Exhibit 2.

4. Act 312, MCL 423.231 *et seq* is a Michigan statute that provides for the compulsory arbitration of labor disputes involving police and firefighter collective bargaining units. Its purpose is to assure the speedy resolution of such disputes.

5. The Award that resulted from the DPOA's most recent Act 312 hearing is the subject of a pending complaint filed by the City on April 15, 2013 seeking judicial review of the Award (Case No. D12 D-0354). The DPOA filed its answer to the City's complaint on July 11, 2013, and the matter has been stayed by these bankruptcy proceedings.

6. There were more than 140 issues before the arbitrator in the proceedings that resulted in the Award. The Award provides for the DPOA to receive a 5% wage increase, effective January 1, 2014, and it is that increase that is the subject of the City's complaint.

7. The reason that there were so many issues before the arbitration panel was that the City had refused to negotiate with the DPOA under former Public Act 4, instead choosing to unilaterally impose terms and conditions of employment on the DPOA, which the Award rejected and found were both demoralizing to DPOA members and not necessarily productive of cost savings.

8. The Award established contractual terms of employment which govern the relationship between the DPOA and the City. It also provided for the Act 312 proceedings to be reopened as of June 30, 2013 to address health care benefits for DPOA members. To the best of my knowledge, information and belief, at no time after June 30, 2013 through the date of the bankruptcy petition (July 18, 2013) did the City engage in any negotiations with the DPOA with regard to the health care reopener issue.

9. Rather than reopening the award, it is my understanding that, as of August 2, 2013, the City announced its intention to impose new health care plans on the DPOA and other Public Safety Unions which significantly increase the members' out of pocket medical costs. At an August 2, 2013 meeting with representatives

from Jones Day, we were presented with an outline of the new health care plans the City intends to impose on the DPOA effective January 1, 2014. Among other imposed changes, that proposal will increase the out-of-pocket costs for health care for DPOA members with insured dependents by $3000 per year.

10. I was also involved in informational meetings with representatives from Jones Day in June and July of this year, at which very general outlines of the City's restructuring proposal were discussed. In the course of these meetings, up through and including the August 2, 2013 meeting, we have, at times, asked if the discussions we had were negotiations. The City, through its representatives, has been very clear with us in asserting that these were not negotiations but that they looked forward to input and suggestions from us. These sessions were mainly presentations with minimal explanations of the data, nothing more.

Dated: August 19, 2013

MARK DIAZ,
PRESIDENT, DPOA