# EXHIBIT A-2

STATE OF MICHIGAN
DEPARTMENT OF LABOR & ECONOMIC GROWTH
MICHIGAN EMPLOYMENT RELATIONS COMMISSION
ACT 312, PUBLIC ACTS OF 1969 AS AMENDED

*In the Matter of:*

CITY OF DETROIT

-and-                                              MERC Case No. D12 D-0354

DETROIT POLICE OFFICERS
ASSOCIATION

---

## CHAIRMAN'S PARTIAL AWARD ON HEALTH INSURANCE

**George T. Roumell, Jr., Chairman**
**Craig Schwartz, Esq., Employer Designee**
**Theodore Iorio, Esq., Union Designee**

APPEARANCES:

| FOR THE CITY OF DETROIT: | FOR DETROIT POLICE OFFICERS ASSOCIATION: |
|---|---|
| Malcolm D. Brown, Attorney | Donato Iorio, Attorney |

## OPINION AND FINDINGS

The hearings involving this Act 312 have occurred after numerous pre-conference and pre-trial conferences with the Chairman on November 5, 16, 19, 29, 30, December 12 and 18, 2012. On December 18, 2012, there was a hearing on the issue of health care. Because there was an ongoing open enrollment on health care that affected the choices that members of the Detroit Police Officers Association could make which was scheduled to end on December 27, 2012, it was imperative that this Chairman issue an Opinion and Award dealing with the issue of health care, dealing with health insurance as it affected current employees in order to give said Officers the opportunity to make informed choices.

With the concurrence of the parties and the members of the Panel, the Chairman, with the splendid work of the reporter to issue a transcript of the hearing within 12 hours of the hearing, issues an Interim Award on most aspects of the health care issue so that the members of the Detroit Police Officers Association can make their choices.

The genesis of the dispute stems from the fact that at one point the City entered into a tentative agreement with the DPOA on February 9, 2012 addressing the health care plans offered to Officers, namely, a PPO Plan, HAP, Blue Care Network Plans and the THC Plan, whereby the City's maximum contribution for any health plan was to be 80% of the Option I Plan offered by BCBSMI/CVS Caremark and the employee was to contribute 20% of the premium. This tentative agreement was not ratified by the City. Following a Consent Agreement between the State and the City, there were City Employment Terms imposed by the City of Detroit on the Detroit Police Officers Association. This Act 312 was instituted.

The DPOA presented Last Best Offers essentially as to COPS Trust mirroring the tentative agreement of February 9, 2012. The City presented a Last Best Offer modifying the benchmark to the BCBSM Community Blue PPO Modified Option III Plan offered by BCBSM/CVS Caremark. The City's Last Best Offer also provided, "Participants in COPS Trust must pay 20% of the BCBSM Community Blue PPO Modified Option III Plan offered by BCBSM/CVS Caremark plus any additional premium cost, if any, between COPS Trust and Community Blue PPO BCBSM/CVS Caremark". The City's Last Best Offer also provided that the COPS Trust could keep its plan design. The difficulty with the City's proposal was for Officers seeking COPS Trust and there were 400 Officers using COPS Trust is that those Officers would be paying substantially more toward premiums than the 80/20.

What then occurred is, as the record reveals, for a period of about three to four hours the

2

parties engaged in off-record negotiations where the parties did modify their positions, but then the negotiations broke down over one issue to be discussed by the Chairman, namely, the issue of working spouse coverage. As the Chairman views it, the working spouse coverage is not economic as it is a language part of the plan which permitted the Chairman to make a choice. Furthermore, the Chairman views the parties' positions as modifying their offers as permitted by the Commission's proposed rules for Last Best Offers.

What now follows is the Award of the Panel on health care, health insurance for current employees, joined by the City Delegate. The Chairman does state that the Union Delegate was active in the negotiations but will dissent because of the issue of the spouse. The representative of COPS Trust, Daniel Gorczyca, testified that COPS Trust on January 1, 2013 through December 31, 2013 will guarantee the following health care insurance rates:

|  | Monthly Premium Amounts |
| --- | --- |
| One Person | $ 485.25 |
| Two Persons | $1,016.65 |
| Family | $1,151.53 |

Based upon these rates, the Award shall be that the City shall pay 80% of the premium and the employee shall pay 20% based upon this calculation of the above premiums, the City shall pay no more than the following amounts:

|  | City Pays These Amounts Monthly |
| --- | --- |
| One Person | $388.20 |
| Two Persons | $813.32 |
| Family | $921.22 |

The employees' contribution shall be monthly as follows:

| One Person | $ 97.05 |
| --- | --- |
| Two Persons | $203.33 |
| Family | $230.31 |

The City's obligation to pay 80% shall not be any higher than 80% of the highest

3

premium that it pays for any plan and the City's benchmark shall be as proposed the BCBSM Community Blues PPO Modified Option III Plan offered by BCBSM/CVS Caremark. The Chairman notes that the City pays a premium higher than COPS Trust for HAP.

The Hospitalization Plan Design Changes attached to the tentative agreement of February 9, 2012 and reattached to this Award as Exhibit A shall apply to all plans including COPS Plan and that the parties are to draft appropriate language to be included in the contract. The COPS Plan as designed as well as the design of the other plans attached as Exhibit B to the tentative agreement shall apply except as modified by this Award.

This Award also intends that Paragraph H of Article 20 of the 2004-2011 Agreement be removed as the parties did indicate to the Chairman that a committee is no longer needed. It is the intention of the Award that language be drafted by the parties to comply with this Award.

There were other changes proposed by the City that this Award does not address which will have to be addressed at the January 8, 2013 hearing so that the language changes are clear to the Chairman, namely, proposals as to 20.E and F. Furthermore, this Award does address proposal 20.F as the Award addressed this issue. The language as to Article 21.A is reserved for further discussion. Likewise, the issue of dental and optical care for retirees is reserved and not covered by this Award for further discussion, namely, the proposed Article 21.CC language.

The issues represented by the proposed Article 21.Y, BB and DD are rejected.

The issues represented by the proposed language in Paragraphs O and Z are reserved.

The reservation of issues means that this Award has not addressed those issues or that language and will do so after further discussion with the parties in January 2013.

The final issue was raised by the DPOA and that is spousal coverage, particularly under the COPS Trust. The issue involves the working spouse who works for an employer other than

4

the City who has health care insurance coverage. The City's position is that if the other employer furnishes the working spouse's health care insurance, then the City should not be obligated to furnish health care coverage for that spouse. The City, with the other carriers and Blue Cross Plans, furnished the DPOA members and other City employees except groups in which there are still existing collective bargaining agreements have this provision. It does have a cost saving feature. This particular provision became an area of contention between the parties. As it is, the City has provided that COPS Trust can have its own plan design with modifications. It only seems fair in the area just discussed that all plans have the same features, namely, as long as a spouse has health care coverage by another employer, then the City should not provide spousal coverage, since this will be a universal feature, should be a feature in the COPS Trust provision and for this reason the Chairman will accept this as his position on this issue based on the representation that it is in all other plans offered by the City to the Officers and for that matter to a large number of City employees.

As to the open enrollment, the open enrollment will be extended until January 15, 2013 so that Officers will have the opportunity to make choices. Member Theodore Iorio dissents from this Interim Award. Member Craig Schwartz concurs.

## AWARD

The Award incorporates as the Award the statements made above and does not include the reservations stated above.

GEORGE T. ROUMELL, JR., Chairman

December 19, 2012

5

13-53846-tjt    Doc 512-5    Filed 08/19/13    Entered 08/19/13 19:38:38    Page 6 of 15

EXHIBIT A

OUTLINE OF MEDICAL, DENTAL AND VISION PLANS

A. **Mandatory Use of Generic Drugs.** Generic drugs required unless pre-determined that brand name drug is medically required or a generic equivalent is not available. If brand drug requested but not medically required or generic is available, employee, retiree, or covered dependent must pay the applicable brand name co-pay amount plus the difference between the cost of the generic drug and brand name drug, even if dispense as written (DAW) is written on the prescription. Appeal procedure for any dispute is available under applicable healthcare plan.

B. **Limitation on Prescription Drugs.** City will not pay for fertility or impotence prescription drugs under the City's prescription drug programs. This provision does not apply to prescription birth control pills.

C. **Medicare Advantage.** Enrollment options for retirees and covered dependents that are Medicare-eligible shall be limited to the Medicare advantage plans offered by the City. In the event such Medicare Advantage plans are no longer offered or not cost effective, enrollment in alternate plans will be permitted as determined by the City.

D. **New Hire.** Eligibility qualifier for hospitalization-medical coverage is the first of the month after new hire completes 91st day of employment.

E. **New Hire.** Optical coverage eligibility qualifier changed from 60 days to 6 months.

F. **Sponsored Dependent coverage eliminated in its entirety.**

G. **Remarriage.** If a retiree marries or remarries after retirement, new spouse and his/her dependents are not eligible for coverage under the City's healthcare plans.

H. **Dependent Health Care Coverage.** The child of a divorced spouse or a new spouse of a retiree who is neither the biological, legally adopted nor legally guardian child of the employee or retiree is ineligible for dependent health care coverage under this Agreement.

I. **Requirement to Obtain Medicare A & B.** Consistent with current practice, all retirees and covered dependents are required to enroll into Medicare Parts A & B. Failure to enroll or maintain Medicare Parts A & B, City hospitalization-medical coverage will be terminated.

## OUTLINE OF MEDICAL, DENTAL AND VISION PLANS

| PPO Plan, HAP/BCN plan(s), THC plan | In-Network | Out-of-Network ** |
|---|---|---|
| Participant Premium Contribution | 20% for all plans | 20% for all plans |
| Plan Deductible | $250/$500 | $500/$1000 |
| Co-insurance % | 20% | 40% |
| Co-insurance maximum (OOP Max) | $1,000/$2,000 | $2,000/$4,000 |
| Office visit | $15 | Subject to deductible and coinsurance |
| Urgent care co-pay | $15 | Subject to deductible and coinsurance |
| Emergency room | $75 | $75 |
| Hospital co-pay | $0 | $0 |
| **Rx Drug Plan** | | |
| Co-pay (retail, mail 2x for 90 day supply) | $5/$15/$30 | |
| Mandatory mail | After 34 days | |
| Mandatory generic | Required | |
| Traditional generic – step therapy | Required | |
| Exclusion of lifestyle drugs | Required | |
| **COPS Trust** | | |
| Deductible | $175/$350 | |
| Coinsurance % | 10% | |
| Co-insurance maximum (OOP Max) | $825/$1650 | |
| Office visit/Urgent Care co-pay | $10 | |
| Emergency Room co-pay | $75 | |
| Hospital co-pay | $0 | |
| **COPS Trust Rx Drug Plan** | | |
| Co-pay (retail, mail 2x for 90 day supply) | $5/$15 | |
| Mandatory mail | N/A | |
| | | |
| **Other Changes** | | |
| Participants contribute 20% for dental and vision coverage | | |
| Participants may choose any dental benefit currently in force with the City of Detroit including COPS Trust. | | |
| Participants may choose any vision benefit currently in force with the City of Detroit including COPS Trust. Co-op Optical eliminated | | |

STATE OF MICHIGAN
DEPARTMENT OF LABOR & ECONOMIC GROWTH
MICHIGAN EMPLOYMENT RELATIONS COMMISSION
ACT 312, PUBLIC ACTS OF 1969 AS AMENDED

*In the Matter of:*

CITY OF DETROIT

-and-  MERC Case No. D12 D-0354

DETROIT POLICE OFFICERS
ASSOCIATION

## PANEL'S SUPPLEMENTAL AWARD ON HEALTH INSURANCE

**George T. Roumell, Jr., Chairman**
**Craig Schwartz, Esq., Employer Designee**
**Theodore Iorio, Esq., Union Designee**

APPEARANCES:

| FOR THE CITY OF DETROIT: | FOR DETROIT POLICE OFFICERS ASSOCIATION: |
|---|---|
| Malcolm D. Brown, Attorney | Donato Iorio, Attorney |

## OPINION, FINDINGS AND ORDERS

On December 21, 2012, a majority of the Panel in the above matter issued a Partial Award On Health Insurance. The Panel reserved Issue No. 46, Section O, Issue No. 46, Section Z, issue No. 46, Section AA, Issue No. 46, Section CC, and Issue No. 46, Section D. There were three other issues – Issue Nos. 101, 113 and 137 – which were also not addressed in the Interim Award. As to Issue Nos. 101, 113 and 137, the Chairman has elected for convenience purposes to address those Issues in the main Opinion rather than this Supplemental Award-Order.

**Issue No. 46, Section O - Non-Economic - City Proposal**

As to Issue No. 46, Section O, the City has proposed to amend Article 21, Section O of

the 2009-2012 labor contract by adding the following underscored phrase:

> The City shall be entitled to implement a self-insured prescription drug program to replace other prescription drug providers, provided such change does not cause a material change in health care benefits. Any dispute over whether such change does not cause a material change in health care benefits shall be subject to the grievance procedures, <u>after the grievant has first exhausted the vendor appeal process</u>. (Change underlined).

The DPOA proposes no change.

In the view of the City, "It is only fair that before any change in a self-insured prescription program is submitted to arbitration, that the individual employee seek a change for a particular drug exhaust the vendor appeal procedure". The Chairman agrees with this observation and for this reason, along with the City Delegate, will vote for this change. The DPOA Delegate objects.

**Issue No. 46, Section Z - Economic - City Proposal**  *City's Premium Contribution*

This issue is laid out in the brief of the City as follows:

> This issue concerns a provision that in no event shall the City's contribution exceed 80%. As noted, the Arbitrator should continue to reserve this issue for decision until he meets with the parties to determine the final contract language. However, some explanation is necessary in this regard which will highlight the issues.
>
> COPS Trust is offering greater benefits than the benchmark plan which is Option III BCBSM PPO CVS Caremark. Further, the Arbitrator ruled that some of the benefit changes the City sought in order to limit costs would <u>not</u> apply to COPS Trust. As the Arbitrator noted on the record, "Let's make it very simple. There is no doubt that COPS Trust is a richer plan." (Vol. 7, 12/18/12 at 18).
>
> In regard to cost contributions, the City has proposed that it pay no more than 80% of the premium cost for any plan and the employee would pay 20%, <u>except</u> for COPS Trust which has more generous benefits. The City proposed for COPS Trust that the employees selecting COPS Trust would pay 20% <u>plus</u> the difference between COPS Trust and Option III BCBSM/PPO CVS Caremark. The DPOA then asserted that this was unfair because one of the City's Plans, HAP, had a higher premium than COPS Trust even though HAP offered the Option

2

III benefit package which was a lesser plan design that COPS Trust. The DPOA, through David Gorcyca, then added that COPS Trust would maintain its current premium costs until December 31, 2013.

If after December 31, 2013 COPS Trust raises its premium (as the City believes it must because of its enhanced benefits) and becomes the highest cost (premium) plan, the City will then be paying more for COPS Trust with its enhanced benefits than the benchmark plan. In this event, the City will be subsidizing COPS Trust by paying more for COPS Trust with its more generous benefits than the benchmark plan. For example, if all other plans have the same basic plan design, which they do, and if the highest cost plan <u>other than</u> COPS Trust is $900 per month for a family plan and COPS Trust with its better benefits is $930 per month for a family plan, the City will pay more than it should for COPS Trust per month (i.e. 80% of the $930 is obviously more than 80% of $900).

If COPS Trust wants to offer better benefits than the benchmark plan, the Arbitrator ruled they could do so, <u>but not at the City's expense</u>. The employee voluntarily choosing COPS Trust must pay the difference, i.e. 20% of $930 plus $30 (the difference between COPS Trust $930 and the highest premium cost of the benchmark plans $900).

Furthermore, in order to continue to qualify for Economic Vitality Incentive Funds (EVIP Funds), formerly known as state revenue sharing, the City must comply with the requirements of the Act (see e.g., 2012 P.A. 107 §402(3)) by having new hires pay a minimum of 20% of healthcare costs. If the City is paying more than 80% of the COPS Trust Plan premium costs, then employees are paying less than 20% and the City is not compliant with the law for purposes of EVIP Funds. The City has received approximately $100M in EVIP funds (or statutory revenue sharing) every year since 2009. (See new Ex. 462 attached hereto; see also Ex. 450; p. B-31). Loss of a portion of revenue sharing could be devastating to the City.

At this point, all the City is asking is that the Arbitrator reserve decision on this provision until the cost sharing formula in relation to COPS Trust is determined with the final contract language.

This explains the problem. It is the intention of the Chairman, joined by the City Delegate, that in the event that COPS Trust has a premium higher than the highest premium cost of the benchmark plan than those in COPS Trust will pay 20% of the COPS Trust premium plus the difference between the COPS Trust premium and the highest premium cost of the benchmark plan if this becomes an issue at any point during the life of the contract. It is further the intent of

3

the majority, namely, the Chairman and the City Delegate, that if there is a dispute about the language that is drafted, the dispute will be decided by the Chairman of this Panel serving in his capacity as Senior Umpire between the parties under the parties' Umpire System. The Order here clearly sets forth the intent of a majority of the Panel. The DPOA Delegate dissents.

**Issue No. 46** - Section AA - *Non-Duty Retirees Eligibility for Hospitalization, Medical and Prescription Drug Insurance Coverage, Article 21, Section A, Coverage*

The City notes that Article 21, Section A, of the 2009-2012 contract provides insurance coverage for "duty disability retirees and their legal dependents". What has developed is a past practice for non-duty disability retirees to have insurance benefits if said individuals meet the minimum vesting requirements, which for DPOA members is five years, and said individuals qualify for a non-duty disability pension. In some cases, the individual could retire at a young age with six years of seniority and suffer a permanent non-duty related disability costing the City substantial funds. The City seeks contract language changing this practice. The DPOA objects to the change. The Panel must choose one or the other Offer as this is an economic issue.

The difficulty with the City's proposal is there are 20 individuals who are now receiving this benefit. If the proposal was prospective, the Chairman would be more inclined to adopt the City's proposal. But, without this provision, there is an element of unfairness to the individuals who now rely on the practice. It is for this reason at this point in time that the Chairman, along with the DPOA Delegate, will vote to deny the City's request. The City Delegate dissents.

### Issue No. 46, Section CC - Section D

The City proposes that future retirees, those retiring after January 1, 2003, will not have dental or optical insurance. This is based on the Millman Report suggesting that dental insurance and optical insurance for retirees are generous benefits; that on an annual basis, retirees' dental

4

insurance costs the City among all employees $8,341,000 and retiree vision insurance costs the City $1,362,000. However, this cost is not limited to Police Officers.

The Chairman appreciates that the City is in dire financial crisis, causing the need for financial restructuring. But, during the hearings and the Panel discussions, it was insisted that the Police and Firemen Pension Plan was 96% funded as compared to other pension plans. Furthermore, the issue of pensions will be re-opened on July 1, 2013. At that point, the whole issue of pensions as well as health care will be re-opened and can be revisited when there are not 146 issues on the table and the matter can be more carefully scrutinized. It is for this reason that the Chairman, along with the DPOA Delegate, will vote to deny this request. The City Delegate dissents.

## ORDERS

The Orders and the votes of the Delegates are set forth in the body of this Opinion. The views expressed in this Opinion are the views of the Chairman and those voting with the Chairman do not necessarily represent the views of the Delegate voting with the Chairman. But, the vote of the Delegate with the Chairman was necessary to obtain a majority vote on the issue involved. For convenience, these Orders have been signed by the Delegates on separate pages, but have the same effect as if signed on the same pages with the Chairman.

March 25, 2013

_____
GEORGE T. ROUMELL, JR., Chairman

March 21, 2013

CRAIG S. SCHWARTZ, City Delegate, concurring and dissenting where indicated

6

March 25, 2013                   *[signature]*
_____
THEODORE M. IORIO, DPOA Delegate,
concurring and dissenting where indicated

7