# **EXHIBIT C**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: | Chapter 9 |
| City of Detroit, Michigan, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

**DECLARATION OF MARK YOUNG, PRESIDENT OF THE DETROIT POLICE LIEUTENANTS AND SERGEANTS ASSOCIATION
IN SUPPORT OF OJBECTIONS OF THE DETROIT FIRE FIGHTERS ASSOCIATION, THE DETROIT POLICE OFFICERS ASSOCIATION, THE DETROIT POLICE LIEUTENANTS & SERGEANTS ASSOCIATION AND THE DETROIT POLICE COMMAND OFFICERS ASSOCIATION TO DEBTOR'S BANKRUPTCY PETITION AND STATEMENT OF QUALIFICATIONS UNDER 11 U.S.C. SECTION 109(c)**

I, Mark Young, President of the Detroit Police Lieutenants and Sergeants Association, declare as follows:

1. I am the current President of the Detroit Police Lieutenants and Sergeants Association, the exclusive bargaining representative for the purpose of collective bargaining with respect to wages, hours and other terms and conditions of employment for employees of the City of Detroit Police Department in the following classifications: Police Investigator, Police Sergeant, Police Sergeant-Promotional List, Senior Communications Officer-Police Sergeant, Senior Radio Maintenance Officer-Police Sergeant, Police Sergeant-Chemist, Police Lieutenant, Assistant Supervisor of Operations-Police Lieutenant, Supervisor of Radio Systems and Planning-Police Lieutenant, Supervisor of Operations-Police Lieutenant, Supervisor of Radio Maintenance-Police Lieutenant, Supervisor of Firearms Identification and Explosives-Police Lieutenant.

I make this declaration based on my personal knowledge, and if called upon to do so, I could and would testify to the facts set forth herein.

2. I am responsible for the day to day administration of the Union including but not necessarily limited to contract administration, collective bargaining, negotiations, and the processing of grievances.

3. This Declaration is submitted in support of the Objections of the Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit Police Lieutenants & Sergeants Association and the Detroit Police Command Officers Association to Debtor's Bankruptcy Petition and Statement of Qualifications under 11 U.S.C. Section 109(c).

4. This Declaration covers the period of the Detroit Police Lieutenants and Sergeants Association Act 312 proceedings, MERC Case No. D13 A-0005, up to and through the dismissal of those proceeding by the Michigan Employment Relations Commission, as well as the significant dates and events related to the bankruptcy filing by the City.

## The Act 312 Proceedings

The DPLSA filed its Petition for Act 312 arbitration on February 4, 2013. Its existing collective bargaining agreement had a termination date of June 30, 2013. In accordance with Sec. 13 of Act 312, "…existing wages, hours and other conditions of employment shall not be changed by either party without the consent of the other but a party may so consent without prejudice to his rights or position under the Act." Arbitrator Francis L. Hill was appointed as the neutral arbitrator on February 19, 2013. A pre-hearing conference was held on February 26, 2012. Subsequently, hearing dates were scheduled for May 15, 16, and 21, and June 11 and 13, 2013.

On or about April 12, 2013, after the appointment of the Emergency Manager in March 2013, the City of Detroit filed an Emergency Motion for an Award of Dismissal of the Act 312 Proceeding due to the lack of arbitral jurisdiction. The City claimed that it was not obligated to engage in bargaining under the Public Employment Relations Act ("PERA"), MCL 423.201 et seq., by operation of Sec. 27 (3) of Public Act 436, MCL 141.1541, et seq., the Local Financial Stability and Choice Act. Sec. 27(3) states:

> A local government placed in receivership under this act is not subject to Sec. 15(1) of 1947 PA 336, MCL 423.215 for a period of five years from the date the local government was placed in receivership or until the time the receivership is terminated, whichever comes first.

According to the City, the suspension of the duty to bargain under Act 436 extends to all bargaining-related proceedings under PERA and Act 312.

In its decision dated June 14, 2013, the Michigan Employment Relations Commission granted the City's motion to dismiss the Act 312 arbitration proceeding pending between the City of Detroit and the Detroit Police Lieutenants and Sergeants Association. The Commission declared that the City's duty to bargain was statutorily suspended by operation of Sec. 27(3) of PA 436.

It must be emphasized that the DPLSA does not concede that the dismissal of the Act 312 case inexorably resulted in the termination of its collective bargaining agreement after June 30, 2013. While the duty to bargain may have been suspended, the existing agreement survives

subject to Sec. 12 (1) (j) and (k) of the LFSCA. Under Sec. 12 the EM may reject, modify or terminate one or more terms of a collective bargaining agreement, but only where agreement with the bargaining representative is unlikely, the modification is reasonable and necessary to address the broad financial problem, and any modification is temporary (not to exceed five years). Sec. 12(l) does permit the EM to act as the sole agent of the local government in collective bargaining with employees or representatives and approve any contract or agreement. In the opinion of the DPLSA, Sec. 12 does impose constraints on the right of the EM to reject, modify or terminate one or more terms of the collective bargaining agreement. Acting outside of those constraints could subject the EM to legal action. At various times since the dismissal of the Act 312 proceeding, the City has declared that it has no obligation to bargain with the DPLSA

## The Time Period Following the MERC Decision

Following the dismissal of the DPLSA Act 312 case, the City did not move to impose City Employment Terms ("CETs") on DPLSA members. Emergency Manager Kevyn Orr released a Financial and Operating Plan for the City o Detroit on May 12, 2013. On or about May 20, 2013, the Jones Day law firm notified the DPLSA that it would be evaluating the existing pension and medical plans to determine whether modifications are necessary. Pension restructuring and health plan "discussions" were scheduled in June and July 2013. While representatives of City unions were invited to these "discussions" and told that their input would be welcomed, the discussions amounted to presentations as to what the City planned to implement in these areas. The City indicated that the discussions were not to be construed as "negotiations."

On several occasions during the period preceding the filing of the City's bankruptcy petition, DPLSA representatives met with the EM to engage in dialogue about solutions to problems affecting members of the DPLSA. These meetings were constructive although prefaced by the caveat that the meetings should not be characterized as negotiations.

On June 25, 2013, the City notified the DPLSA of the termination of the cba effective July 6, 2013 and that it was not requesting bargaining at this time. After expressly stating that there was no duty to bargain, the EM on June 28, 2013 further notified the DPLSA that changes to wages, benefits and working conditions would be necessary but that any changes would be postponed until after August 1, 2013 ostensibly to provide the new Chief of Police time to evaluate the needs of the Department and also have time to provide input into the restructuring process.

On July 18, 2013, the City filed its petition for bankruptcy. Not long thereafter, the Labor Relations Director Lamont Satchel on July 31, 2013 sent correspondence to the DPLSA that the City was prepared to impose City Employment Terms on DPLSA members. No effective date was indicated in the correspondence. In a separate addendum to the letter, the City identified 17 terms that it intended to implement. No negotiations preceded the letter from the Labor Relations Director.

3

The DPLSA responded in writing in a letter dated August 1, 2013. It expressed disagreement with the proposed CETs and requested a delay in their imposition until it could engage in further discussions with the City. The DPLSA also requested immediate open enrollment for the City of Detroit Deferred Compensation Plans to help offset the proposed 10% pay reduction. It further requested the opportunity for DPLSA members to utilize a "hardship provision" under the deferred comp plan to permit withdrawals.

The DPLSA understands that the EM has given favorable consideration to the August 1 response of the DPLSA. The DPLSA has engaged the EM in discussions over the proposed CETs. As of today's date, August 15, 2013, none of the CETs have yet been imposed on members.

Dated: August 16, 2013

Mark Young, President,
Detroit Police Lieutenants and Sergeants Association