# EXHIBIT 3

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,          .       Docket No. 13-53846
        MICHIGAN,                 .
                                  .       Detroit, Michigan
                                  .       July 24, 2013
                   Debtor.        .       10:02 a.m.
. . . . . . . . . . . . . . . .

HEARING RE. MOTION OF DEBTOR, PURSUANT TO SECTION 105(a)
OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER CONFIRMING
THE PROTECTIONS OF SECTIONS 362, 365 AND 922 OF THE
BANKRUPTCY CODE (DOCKET #53) AND MOTION OF DEBTOR, PURSUANT
TO SECTION 105(a) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN
ORDER EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE
ENTITIES, (B) NON-OFFICER EMPLOYEES AND (C) AGENTS AND
REPRESENTATIVES OF THE DEBTOR (DOCKET #56)
BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:       Jones Day
                      By:  HEATHER LENNOX
                      North Point
                      901 Lakeside Avenue
                      Cleveland, OH  44114-1190
                      (216) 586-3939

For AFSCME:           Lowenstein Sandler, LLP
                      By:  SHARON L. LEVINE
                      65 Livingston Avenue
                      Roseland, NJ  07068
                      (973) 597-2374

For Syncora           Kirkland & Ellis, LLP
Guarantee and         By:  RYAN BENNETT
Syncora Capital       300 North LaSalle
Assurance:            Chicago, IL  60654
                      (312) 862-2074

For Public Safety     Erman, Teicher, Miller, Zucker &
Unions:                  Freedman, PC
                      By:  BARBARA PATEK
                      400 Galleria Officentre, Suite 444
                      Southfield, MI  48034
                      (248) 827-4100

APPEARANCES (continued):

| | |
|---|---|
| For Police and<br>Fire Retirement<br>System and<br>General Retirement<br>System of the City<br>of Detroit: | Clark Hill, PLC<br>By: ROBERT GORDON<br>151 South Old Woodward, Suite 200<br>Birmingham, MI 48009<br>(248) 988-5882 |
| For the UAW: | Cohen, Weiss & Simon, LLP<br>By: BABETTE CECCOTTI<br>330 West 42nd Street, 25th Floor<br>New York, NY 10036<br>(212) 356-0227 |
| For the Flowers<br>Plaintiffs: | Law Offices of William A. Wertheimer<br>By: WILLIAM WERTHEIMER<br>30515 Timberbrook Lane<br>Bingham Farms, MI 48025<br>(248) 644-9200 |
| For Nathaniel<br>Brent: | In pro per<br>NATHANIEL BRENT<br>538 South Livernois<br>Detroit, MI 48209 |
| For the Phillips<br>Plaintiffs: | The Sanders Law Firm, PC<br>By: HERBERT A. SANDERS<br>615 Griswold, Suite 913<br>Detroit, MI 48226<br>(313) 962-0099 |
| For the State of<br>Michigan: | Michigan Department of Attorney General<br>By: MATTHEW SCHNEIDER<br>525 West Ottawa Street, Fl. 7<br>P.O. Box 30212<br>Lansing, MI 48909<br>(517) 241-8403 |
| For the Webster<br>Plaintiffs: | McKnight, McClow, Canzano, Smith &<br>  Radtke, PC<br>By: JOHN R. CANZANO<br>400 Galleria Officentre, Suite 117<br>Southfield, MI 48034<br>(248) 354-9650 |

Court Recorder:        Letrice Calloway
                       United States Bankruptcy Court
                       211 West Fort Street
                       21st Floor
                       Detroit, MI  48226-3211
                       (313) 234-0068

Transcribed By:        Lois Garrett
                       1290 West Barnes Road
                       Leslie, MI  49251
                       (517) 676-5092

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1    THE CLERK:  Case Number 13-53846, City of Detroit,
2    Michigan.
3    THE COURT:  Good morning.  Stand by one moment for
4    me, please, sir.  I'd like to begin by reviewing with
5    everyone the order of proceedings here, and then we'll get
6    right to the arguments.  The first thing I'd like to do is
7    administer the oath to attorneys who seek to become members
8    of the Bar of this Court, and then I will give a brief
9    opening statement, and then we will proceed with the
10   arguments.  It is my intent to allow the city, who is the
11   movant here, 15 minutes for its initial argument and then to
12   allow each of those creditors who have filed objections to
13   the motion 15 minutes each as well and then a 15-minute
14   rebuttal for the city.  Oh, actually, before that rebuttal I
15   want to give any attorneys who would like to be heard on the
16   record but who did not file objections to be heard as well
17   and then a rebuttal by the city.  And then we'll take a break
18   so that I can deliberate on the motions and then after a
19   period of time come back out and give you my decision.
20   So let's begin with the administration of the oath
21   to those attorneys who need admission.  Would those of you
22   who do seek admission to the Bar of the Court step forward,
23   please?  You can actually just stand right there in front of
24   the bench and tell me who you are.
25   MR. LEMKE:  I'm David Lemke, your Honor, from

1  Nashville, Tennessee.

2          MR. SMITH:  Bill Smith, your Honor, from Chicago.

3          MR. BENNETT:  Ryan Bennett, your Honor, from

4  Chicago.

5          THE COURT:  Okay.  One second, please.  Here we go.

6  And raise your right hands.  Do you affirm that you will

7  conduct yourselves as attorneys and counselors of this Court

8  with integrity and respect for the law, that you have read

9  and will abide by the civility principles approved by the

10  Court, and that you will support and defend the Constitution

11  and laws of the United States?

12          ATTORNEYS:  I do (collectively).

13          THE COURT:  All right.  Welcome to the Bar of our

14  Court.  Counsel, we will take care of filing your papers for

15  you.

16          ATTORNEYS:  Thank you, your Honor (collectively).

17          THE COURT:  One more moment, please.  Okay.  I'd

18  like to begin by describing for those who may be watching or

19  listening in what the matters are before the Court today.

20  There are two motions before the Court today.  The parties

21  refer to one of the motions as the stay confirmation motion,

22  and they refer to the second motion as the stay extension

23  motion.

24          When anyone files bankruptcy, all of the legal

25  proceedings against that person are stopped.  We call that a

 1 stay, a stay of proceedings.  When a municipality like the
 2 City of Detroit files bankruptcy, all of the legal
 3 proceedings against the city and its officers to collect on a
 4 claim against the city are also stopped.  The stay
 5 confirmation motion simply requests an order confirming these
 6 stays under the United States Bankruptcy Code are in effect.
 7 The stay extension motion requests that the Court extend or
 8 expand those statutory stays by entering an injunction to
 9 stop proceedings against other employees of the city and
10 against the governor and the treasurer of the state.  Those
11 are the only two motions before the Court here today.  Not
12 before the Court is whether the city is eligible to file
13 bankruptcy or whether any plan that the debtor might propose
14 in the case is confirmable under the Bankruptcy Code.  Those
15 issues will be, I expect, fully litigated in due course in
16 this case.
17       So now we are ready for arguments on these two
18 motions first by the city, and, counsel, I need to remind you
19 because of our equipment in this room, when you address the
20 Court, you do need to stand at the lectern and speak into the
21 microphone there.
22       MS. LENNOX:  Good morning, your Honor.  Heather
23 Lennox of Jones Day on behalf of the city.
24       THE COURT:  You may proceed.
25       MS. LENNOX:  Thank you, your Honor.  With respect to

1  the stay confirmation motion, your Honor, I think your Honor
2  summarized exactly what we're looking for quite cogently and
3  concisely.  The reason we filed the motion, your Honor, as
4  has been evident by some activity we've seen in the last week
5  or so, is that not all people understand the concept of the
6  stay or, frankly, how it works in Chapter 9.  We have had
7  state court orders issued against the city after the petition
8  date.  We've had some other Circuit Court judges express --
9  in other city litigation express some uncertainty about
10  whether the stay applies.  We've had vendors with contracts
11  seek to stop shipping, and we have a new officer.  We have an
12  emergency manager, and we want to make it clear that the
13  protections of the stay do apply to the emergency manager
14  because, as your Honor indicated, under Section 922(a), the
15  stay does apply to officers of the city for collections of
16  claims against the city.
17      So I would like to address in particular, your
18  Honor, the emergency manager.  Under Section 922(a), the
19  stay -- we believe the stay applies to the emergency manager.
20  Under Section 9.2 of PA 436, on appointment, the emergency
21  manager assumed all of the powers and acts for and in the
22  place of and in the stead of the mayor and the city council,
23  meaning the governing bodies of the city.  And during the
24  pendency of the emergency manager's appointment, the other
25  governing bodies shall not exercise any of the powers of

1    their officers except as may be specifically authorized in
2    writing by the emergency manager.
3            Furthermore, your Honor, Section 18(1) of PA 436
4    empowers the emergency manager to act exclusively on the
5    city's behalf in this case, so we do believe that he is an
6    officer entitled to the protections of the Chapter 9 stays.
7            We have also requested a clarification, your Honor,
8    because the Code does just simply reference officers of the
9    city, that it would be officers of the city serving in any
10   capacity.  Some city officers do serve in other roles on
11   behalf of or at the request of or pursuant to ordinance in
12   other manners in the performance of their duties as officers
13   of the city.  For example, Mr. Brown, who is the chief
14   compliance officer, sits on the root cause committee.  We do
15   have a finance --
16           THE COURT:  Sorry.  Sits on what committee?
17           MS. LENNOX:  The root cause committee, your Honor.
18   We do have the finance director, the budget director, and
19   corporation counsel of the city that are directors of the
20   service corporations that are formed in connection with the
21   pension certificates.  They sit as directors of that
22   corporation through Ordinance Number 03-05 of the City Code,
23   so they are performing their official duties.
24           Finally, with respect to this motion, your Honor,
25   the State of Michigan has asked me to confirm on the record,

1  which I now do, that by this motion the city does not seek to
2  abrogate the exceptions to the stay identified in Section
3  362(b) of the Bankruptcy Code nor do we seek to vitiate the
4  state's powers under Section 903 of the Bankruptcy Code.
5          I think this motion, your Honor, is not uncommon, is
6  fairly straightforward, and merely seeks to confirm the
7  protections that are already granted by the Bankruptcy Code.
8  So with your Court's permission, unless you have questions, I
9  would move to the motion to extend.
10         THE COURT:  Please.
11         MS. LENNOX:  In this motion, your Honor -- and this
12  is a little more complicated -- the city seeks to extend the
13  stay provisions of Section 362 and 922 of the Bankruptcy Code
14  to certain parties that are or are likely to become targets
15  of claims or lawsuits or other enforcement actions that would
16  have the direct or practical effect of denying the city the
17  protections of the automatic stay imposed by the Code or
18  seeking to collect or enforce a claim against the city.  Your
19  Honor, as you may be aware, we have had several pre-petition
20  lawsuits that have attempted these actions.  We do describe
21  them in the papers.  Some of the objectors describe further
22  developments in their papers.  If it would aid the Court, I
23  do have a short summary as a demonstrative exhibit that I
24  could hand the Court that would show the Court the state of
25  play in each of these actions.  Would that be helpful to the

1    Court?

2         THE COURT:  That's fine.  You should assume and all

3    of you should assume in your presentations that I have

4    thoroughly read and reviewed all of your papers, even those

5    that were filed last night.

6         MS. LENNOX:  Certainly, your Honor.  If your Honor

7    does -- perhaps if your Honor would like to see it --

8         THE COURT:  Okay.

9         MS. LENNOX:  -- I'll hand it up.  Thank you.  May I

10   approach, your Honor?

11        THE COURT:  Please.

12        MS. LENNOX:  Thank you, your Honor.  We do have

13   three lawsuits that attempt to prevent either the filing of

14   this case or the conduct of the city's actions within this

15   case.  One of the suits has been filed against the governor

16   and the emergency manager.  That case -- we don't need a stay

17   extension for the emergency manager.  That case is stayed as

18   to the emergency manager.  Two other cases have been filed

19   solely against the governor and the state treasurer that seek

20   to prevent the authorization of the filing and to

21   circumscribe the emergency manager's powers within this case.

22   Those are the kinds of things, your Honor -- there's been a

23   flurry of activity.  Most of the orders entered in those

24   three cases were entered after -- the TRO's were initially

25   entered after this petition was filed.  There were further

1  orders entered by the state court on the 19th of July that

2  amended the two temporary restraining orders, and in the

3  Webster case, which is the one case that involves only the

4  state treasurer and the governor, there was a declaratory

5  judgment action or a declaratory judgment that was filed

6  declaring PA 436 unconstitutional because it could affect the

7  city's rights within this case.  Those actions have all been

8  appealed by the state attorney general.  The state court has

9  ordered a briefing to go forward in one of the cases and had

10  ordered that the morning of the 22nd, and yesterday the

11  appellate court issued stays in all three of the cases.

12        THE COURT:  If the Court grants your relief, what

13  would be the impact on that appeal?

14        MS. LENNOX:  We believe, your Honor, that the -- we

15  believe that those cases should be permanently stayed, and

16  the issues that are addressed in those cases regarding the

17  constitutionality of PA 436, because they seek to -- the

18  arguments about constitutionality on PA 436 aren't straight

19  constitutionality issues.  They say it's unconstitutional

20  because of what can happen and because of the powers that may

21  be granted under the Bankruptcy Code, and under this Court's

22  jurisdiction and under the emergency manager's rights under

23  Chapter 9, because that is the basis for the challenge to

24  unconstitutionality, we believe those decisions must be made

25  and can only be made by this Court in an action brought

1   before this Court under the supremacy clause and the
2   bankruptcy clause of the United States, so we would expect
3   those actions to be stayed, and any issues that the litigants
4   would have, they would have to bring before this Court for a
5   determination by a court of competent jurisdiction.
6           Unless your Honor has any other questions with
7   respect to the procedural posture of some of these cases, I
8   will move on.  It's as a result of these cases -- and these
9   are all certainly public pleadings for which your Honor may
10  take judicial notice under Federal Rule of Evidence 201(c).
11  It's because of these proceedings that we sought to file this
12  motion, and I'd like to explain the -- first of all, I'd like
13  to articulate the standard under which we're proceeding, and
14  then I would like to explain in more detail about why and the
15  three categories of extensions we are seeking.
16          First of all, the standard for a case for extending
17  the stay is that unusual circumstances may exist, and they
18  can exist when there is an identity between the third party
19  and the debtor such that a judgment against the third party
20  would, in effect, be a judgment against the debtor or that
21  the actions taken by the third party would pose a substantial
22  risk to the reorganization of the case.  Some courts also say
23  that such actions would significantly impair the
24  administration of this case.  So based on the backdrop of
25  that standard, we have asked for the stay to be extended

1    under certain circumstances to three different categories of

2    persons.  The first, as your Honor indicated, are the state

3    entities.  We are asking the Chapter 9 stay to be extended to

4    the governor, the state treasurer, and the members of the

5    local Emergency Financial Assistance Loan Board for

6    actions -- excuse me -- that seek to enforce claims against

7    the city to interfere with the city's activities in this

8    Chapter 9 case or otherwise deny the city the protections of

9    the Chapter 9 stay and interfere with this Court's

10    jurisdiction over these matters.  To be clear, your Honor,

11    because I think there was some confusion about this on the

12    part of some parties, we are seeking to extend the stay

13    protections that the city currently enjoys to the state

14    officials that I identified in the context of lawsuits like

15    the three already filed against state officials that, in

16    substance, seek to interfere with the city's rights as a

17    Chapter 9 debtor and that seriously jeopardize the city's

18    rehabilitation or seek to, in a back-door way, preserve

19    collect, and enforce claims against the city.  This motion

20    does not seek to stay state officials' actions.  Rather, it

21    seeks to stay third-party actions against state officials.

22    The reasons and the evidence for this, your Honor, I think

23    are well-documented in all of the flurry of activity that has

24    taken place in the last week, and there -- that kind of

25    activity needs to stop.  This Court has jurisdiction over

1    this case, this Court has jurisdiction of all federal matters

2    arising in this case, and only this Court has jurisdiction to

3    determine them.  Having widespread litigation in various

4    state tribunals that can come to different decisions when

5    it's doubtful that they have jurisdiction to do that can only

6    confuse the parties, confuse the case, and create serious

7    barriers to an efficient administration of this case.

8            The second request that we make for an extension,

9    your Honor, is to extend this Chapter 9 stay to actions or

10   proceedings against employees of the city's that are neither

11   city officers nor inhabitants of the city because Section

12   922(a) refers to inhabitants.  Many of our nonofficer

13   employees are inhabitants of the city and could be covered,

14   but many are not, and so we are seeking this extension.

15           Your Honor should know that by virtue of city

16   ordinance 13-11-1, the city does indemnify its employees for

17   lawsuits that arise from the good faith performance of their

18   duties.  The city is also self-insured for all of these

19   actions, so the --

20           THE COURT:  So this extension seeks -- or would only

21   apply to claims against employees for which the city might be

22   obligated to indemnify?

23           MS. LENNOX:  Correct, your Honor.  Because the city

24   would be responsible for indemnification because the city is

25   self-insured, we believe that these actions are an action to

1    collect from the city, and we would ask the stay to be
2    extended in this instance.
3           The third request, your Honor, is tied to some of
4    the language in Judge Aquilina's orders, and it's a little
5    unusual, but under the circumstances, we believe it's
6    warranted.
7           THE COURT: Excuse me one second. Before you move
8    on to that, this ordinance that you mentioned --
9           MS. LENNOX: Yes, sir.
10          THE COURT: -- was that in your brief or in your
11   motion?
12          MS. LENNOX: That was not in the brief and the
13   motion, your Honor.
14          THE COURT: Would you give us the number again?
15          MS. LENNOX: Yes, sir. It is Section 13-11-1 et
16   seq.
17          THE COURT: Does anyone have a copy of that?
18          MS. LENNOX: I do not have a copy with me, your
19   Honor, but we can endeavor to get the Court one
20   expeditiously. Actually, your Honor, may I check my
21   materials? I might have a copy of it, if you'd like.
22          THE COURT: Why don't you do that while the
23   creditors are arguing, and you can present it to the Court
24   later, or actually do you know if the City of Detroit
25   ordinances are on Westlaw?

1          MS. LENNOX:  I do not know that, your Honor.

2          THE COURT:  Anybody know?  Somebody says no.  All

3    right.  I'll need a copy then.

4          MS. LENNOX:  Moving on to the third category, your

5    Honor -- and, again, this is a little unusual, and it arises

6    directly out of some of the orders that have been entered in

7    the state court litigation.  We request to extend the Chapter

8    9 stay to, quote, "city's" -- "the city's agents and

9    representatives," which are the terms used in the state court

10   orders.  That would directly or indirectly seek to enforce

11   claims against the city or, again, to interfere with the

12   city's activities and this Court's jurisdiction in this

13   Chapter 9 case or otherwise deny the city the protections of

14   the Chapter 9 stay.  Again, your Honor, it's unusual, but

15   under the circumstances and what's been going on in the past

16   week, we believe it's warranted under the circumstances and

17   does meet the standard that I articulated earlier.

18          That's the extent of the relief that we seek, your

19   Honor.  If your Honor has no further questions, then I would

20   reserve remarks for rebuttal.

21          THE COURT:  I do have a couple of questions for you.

22          MS. LENNOX:  Yes.

23          THE COURT:  Can you summarize how you deal with the

24   adversary proceeding issue, the argument that the request to

25   extend the stay under Section 105 of the Bankruptcy Code

1    should have been in the form of an adversary proceeding?

2         MS. LENNOX:  Um-hmm.  Yes, your Honor.  I actually

3    don't -- first of all, in many cases, including cases before

4    this Court in the Collins & Aikman case, the requests for

5    extension of a stay are made by motion.  The Sixth Circuit

6    case law that we cite in our brief also suggests that

7    extensions can be made under 105 by motion.  In practice,

8    they are often made by motion.  I think it is important to

9    make it by motion here, and it is completely impractical to

10   try to file an adversary proceeding with respect to this

11   because of the nature of what we are asking for.  For

12   example, with respect to the state entities, we know of three

13   lawsuits that have been filed.  We have plaintiffs that we

14   could name in an adversary proceeding, but what we're asking

15   for goes beyond that.  We want the stay to apply to these

16   actions or any actions somebody might think to bring in the

17   future.  I don't know how to name, you know, unknown

18   plaintiffs in the future.  The scope of what we're asking for

19   is broader than that, which is why it makes sense when you're

20   proceeding under Section 362 to move by motion.  There's

21   motions to lift stay even though ostensibly that would be an

22   injunctive action, but the motions to lift and motions to

23   extend and motions to enforce are done by motion.  Certainly

24   people have done it by the method of preliminary injunction.

25   I don't dispute that, but usually when that happens there is

1    one specific lawsuit that they seek to stay, and that is the

2    sole extension that they're asking for.  We are asking for

3    something much broader here, and I think an adversary

4    proceeding procedurally would be improper.

5         We have also cited -- and we believe it to be

6    true -- in our papers that courts often will say -- will not

7    elevate form over substance, and there are cases that we cite

8    in our reply, including the In re. Cannonsburg Environmental

9    Associates case from the Sixth Circuit that says -- where

10   very clearly the action in that case should have been filed

11   as an adversary proceeding, and the judge said, "Look, you've

12   had due process.  You've had notice.  You have an opportunity

13   to respond.  We have had a full hearing of all the views.

14   You have not been prejudiced."  That exists in this case as

15   well, your Honor, as evidenced by the long and lengthy

16   objections that have been filed to the motion that we ask as

17   it stands.

18        THE COURT:  My second question related to the

19   requirement that the defendants -- that the creditors say

20   apply that to issue the kind of order that you seek, the

21   traditional four factors of a preliminary injunction need to

22   be considered, but in light of the fact that you're over

23   time, I will ask you to address that when you come back

24   after.

25        MS. LENNOX:  Thank you, your Honor.

1          THE COURT:  All right.  So I will allow 15 minutes

2     for each of the creditors that have filed objections.  These

3     are the Michigan Council 25 of AFSCME, Syncora, the UAW

4     together with Creditors Robbie Flowers, Michael Wells, Janet

5     Whitson, Mary Washington, and Bruce Goldman, the Detroit

6     public safety unions, if I can refer them -- refer to them by

7     that, and the General Retirement System of the City of

8     Detroit and the Police and Fire Retirement System of the

9     city.  It doesn't matter to me, counsel, the order in which

10    you proceed, so I will leave that to you to work out.

11         MS. LEVINE:  I'm going to go with alphabetical.

12         THE COURT:  Okay.

13         MS. LEVINE:  Good morning, your Honor.  Sharon

14    Levine, Lowenstein Sandler, for Michigan Council 25 of the

15    American Federation of State, County, and Municipal Employees

16    or AFSCME, as it's been referred to here today.

17         Your Honor, very briefly, it's clear that your Honor

18    has read all the papers, and we very much appreciate that

19    given the short time frame that we've been before this Court.

20    Bankruptcy Code Section 105 is extraordinary relief,

21    extraordinary in that it's only used to enforce rights that

22    already exist under the Bankruptcy Code, so it's not there to

23    create new rights that don't currently exist under the Code.

24    What we have here in a Chapter 9 case, which is more

25    restrictive than, for example, a Chapter 11 case, is the

```
 1   situation where if, in fact, the state has not properly
 2   authorized the Chapter 9 filing, there are rights that don't
 3   exist under the Bankruptcy Code.  If Chapter 9, as has
 4   historically been seen through the unconstitutional finding
 5   of predecessors to Chapter 9, is really being used here to
 6   avoid state constitutional rights, then Chapter 9 in and of
 7   itself is potentially unconstitutional.  If not, it has to be
 8   construed narrowly in order to read it constitutionally.  We
 9   would respectfully submit that using 105 to find rights that
10   don't otherwise exist, particularly of a constitutional
11   nature, is an extremely broad use of 105.  This isn't a
12   situation where we're saying to the controller or the
13   governor or Mr. Orr, you know, don't respond to discovery
14   requests in a state court action in a foreign jurisdiction
15   because we need your attention here.  We're taking away very
16   fundamental constitutional rights.
17           Secondly, your Honor, if, in fact --
18           THE COURT:  So your argument about the narrow
19   application of Section 105 in this case is really a result of
20   the fact that it's a Chapter 9.
21           MS. LEVINE:  Yes, your Honor.
22           THE COURT:  It's not an argument that's based on
23   Section 105, per se.
24           MS. LEVINE:  Yes, your Honor.  In a Chapter 11
25   you'll have circumstances, for example, where even in the
```

1  broader case of a Chapter 11, you won't use Article -- you
2  won't use Section 105 to grant a casino license or a liquor
3  license or tell a utility board they can't change rates, but
4  we have an even narrower situation here because we're in
5  Chapter 9.
6          Two, Chapter 9 can't be used if, in fact, the state
7  has not authorized under its constitution and its laws the
8  Chapter 9 filing.  The Chapter 9 filing here is arguably
9  flawed because it intends to go after the pensions.  If it
10  goes after the pensions, it arguably violates the state
11  constitution and can't be before this Court, so, again, the
12  issue with regard to whether or not we have an appropriate
13  state constitutional flaw -- sorry.  The issue with regard to
14  whether or not we have an appropriate filing is necessarily
15  limited by whether or not we have an appropriate state -- we
16  have an inappropriate state constitutional authorization.  If
17  we have an inappropriate state constitutional authorization,
18  that is not simply an implementation tool under 105.  That
19  is, in essence, a substantive right that's being creative --
20  created under 105 that does not exist in the state court.
21          In addition to that, your Honor, and also
22  importantly, three, individual citizens of the City of
23  Detroit have the absolute right to protect their own
24  constitutional rights.  If we say to them they can't go to
25  the state courts that are there for the protection of their

```
 1   constitutional rights in part, then we are -- then we're
 2   using 105 again way more broadly than it gets used in the
 3   ordinary course as simply an implementation tool.  We're
 4   creating more substantive rights.  And while this Court
 5   has --
 6        THE COURT:  Well, but why isn't the extended stay
 7   that the city seeks here simply a procedural mechanism to
 8   funnel such challenges to the Bankruptcy Court and,
 9   therefore, does not have the effect of denying citizens or
10   other creditors of their rights to have their constitutional
11   claims heard?
12        MS. LEVINE:  Your Honor, if this Court is a court of
13   secondary jurisdiction, no disrespect, with -- but if you
14   look at federalism, comity, abstention, and the state courts
15   are the courts of primary jurisdiction, we would respectfully
16   submit that unlike, for example, determining in a Chapter 11
17   case that there's a validly perfected security interest
18   because you've looked at state law and the UCC is properly
19   filed, we have a very fundamental right here that this Court
20   is being asked to address, so what we're saying is instead of
21   going to the court that's primarily responsible, we're going
22   to come into this Court instead, and it's not as if there's
23   delay or uncertainty with regard to the fact that those
24   matters are going to get heard and considered quickly.  We
25   already have state court litigation pending, and the state
```

1   appellate courts are poised and ready to rule, so there's no
2   reason to divest them of that appropriate jurisdiction under
3   concepts of federalism, comity, and abstention and move that
4   here to a court of secondary jurisdiction on those issues.
5           Your Honor, fourth, with regard to the form over
6   substance, the procedural arguments with regard to 105, in
7   certain circumstances where 105 is being used for things like
8   stopping discovery or minimal things like that, that's one
9   set, but the Federal Rules of Civil Procedure are put in
10  place in order to protect parties and provide due process.
11  There can't be a more fundamental situation where you need to
12  enforce those types of rights than when you're dealing with
13  basic fundamental constitutional rights, and we respectfully
14  submit that even though there are circumstances where
15  expediency mandates the use of 105 quickly, this is not one
16  of those circumstances.
17          Your Honor, the breathing spell under 105 -- the
18  breathing spell under the Bankruptcy Code and the use of 105
19  to extend the breathing spell is only appropriate if, in
20  fact, the underlying bankruptcy is an appropriate bankruptcy.
21  The idea that there's a breathing spell to continue what is
22  potentially an unconstitutional or illegal -- not
23  intentionally, no motive or anything, your Honor, but --
24  proceeding is clearly not anything that 105 was designed to
25  implement.

1          Your Honor, we would respectfully submit that these
2   are very, very fundamental rights, and unlike a Chapter 11
3   case where you have a defined benefit plan where if, in fact,
4   it is terminated, there's federal insurance under the PBGC up
5   to $57,000, or if you have a multi-employer plan, even if an
6   employer withdraws, the beneficiaries themselves are
7   protected, here our members who participate at most are at or
8   below $19,000 a year.  Clearly there's no safety net.  These
9   issues are hard issues.  The collateral advantage to sending
10  this back to the state court for an appropriate decision is
11  that the conversations which we believe should have been
12  happening more robustly before the filing could happen now.
13  We respectfully -- we thank your Honor for the time, and we
14  appreciate your Honor's consideration.
15          THE COURT:  Thank you.  Sir.
16          MR. BENNETT:  Good morning, your Honor.  Ryan
17  Bennett of Kirkland & Ellis on behalf of Syncora Guarantee
18  and Syncora Capital Assurance.  Your Honor, as we attempted
19  to describe in our papers, my client insures, in some cases
20  owns certain securities called the certificates of
21  participation, which were taken out in 2006 to fund some of
22  the city's pension liabilities.  We also insure a swap --
23  four swaps related to those securities that are tied to the
24  interest rate, the floating interest rate associated with
25  them.

1       We object to the debtor's stay motions to the extent
2   they contain broad and unqualified language that we feel will
3   impair our client's rights against a number of nondebtor
4   third parties under our various transactional documents, as
5   your Honor could probably tell from --
6       THE COURT:  Can you identify some of those parties
7   for us?
8       MR. BENNETT:  Yes, your Honor.  So under the
9   transactional documents, which we attempted to describe in
10  the papers, there are parties called service corporations,
11  which are separate stand-alone entities with their own
12  directors to whom we believe they owe us fiduciary duties in
13  our role as stakeholders.  At very least they owe a duty to
14  the corporations themselves, and our rights are derivative
15  from them.  We also have swap counterparties who are parties
16  to a swap agreement and a swap insurance agreement where
17  we've got third-party beneficiary rights to those
18  arrangements, and the city is not even a party.
19      THE COURT:  Well, let me ask you this question --
20      MR. BENNETT:  Yes, sir.
21      THE COURT:  -- about those parties.
22      MR. BENNETT:  Um-hmm.
23      THE COURT:  To the extent the Court agrees with you
24  and then your client pursues those parties, to what extent,
25  if any, would your client's success on those claims impact

1   claims against the city?

2           MR. BENNETT:  Your Honor, that's unclear to us from

3   this vantage.  I mean we're still developing our litigation

4   strategy and our claim strategy, and --

5           THE COURT:  This is not a question of your strategy.

6   This assumes your strategy is successful.

7           MR. BENNETT:  Right.

8           THE COURT:  The question then remains, though, if

9   you are successful in your claims after being allowed to

10  pursue them --

11          MR. BENNETT:  Um-hmm.

12          THE COURT:  -- to what extent would that impact

13  claims against the city perhaps by those parties?

14          MR. BENNETT:  Um-hmm.  Yeah.  That's unclear to us.

15  I mean perhaps in the case of service corporation directors,

16  to the extent that there's an indemnity, as Ms. Lennox

17  pointed out -- I think that's where your Honor is going --

18  there may be an impact there, but, again, I haven't looked at

19  the ordinance.  I don't know if it applies to these

20  individuals, so I'm not sure, but that could be the case.

21          With respect to other parties, swap counterparties,

22  for example, I mean they're not party -- the debtor is not a

23  party to the swap agreement.  While there may be some ripple

24  effect down the road that I'm sure counsel may try to

25  explain -- debtor counsel may try to explain, I mean that's

1    unclear to us how we'd ultimately get there, sir.

2        THE COURT: Okay.

3        MR. BENNETT: Yeah. As I said, you know, really

4    putting aside the procedural issue, which I do believe the

5    debtor failed to comply with, you know, your Honor did --

6    there was discourse from the bench to the podium in Collins &

7    Aikman where I believe my firm actually brought forward that

8    motion, and we agreed to drop it because we did not bring it

9    forward in the proper procedural way. We think the city

10    should also be obligated to do that, particularly where in

11    circumstances like this with respect to our client, you

12    know -- and we just found this out, your Honor, when we got

13    handed this little handout at the start of the hearing that

14    it looks like they're trying to enjoin with -- you know, to

15    the same standards of a preliminary injunction the suit that

16    they brought against us prior to the petition date with

17    probably the same amount of notice that we got here today.

18    This suit, which is listed on here -- and, again, oddly

19    enough it's a suit brought by Detroit against us, not like

20    everybody else where they brought the suit against Detroit or

21    one of the extended defendants, you know, we're just not sure

22    what that means, and I'm sure they'll come and tell us, but,

23    in any event, we feel like we've not received notice of this,

24    and we're entitled to some process there to the extent

25    they're trying to impair our rights, which I'm sure they are.

1   And, your Honor, that really sums it up from our

2   point. I mean largely our filing was a reservation of

3   rights. We wanted to make clear that to the extent this is

4   trying to be used at some later point to prejudice my client

5   in whatever strategies that we -- strategies we employ to

6   exercise our property and contractual rights, we do not want

7   to be impaired.

8   One final point, your Honor, is that the city has

9   filed that motion for the investment -- or the forbearance

10  agreement that your Honor posted up for a hearing on August

11  2nd. We just wanted to get a little clarity from your Honor

12  because that does impact some rights of ours.

13  THE COURT: I saw your motion, and I will enter an

14  order clarifying that for you later today or tomorrow.

15  MR. BENNETT: Great. Thank you, sir. Nothing

16  further.

17  MS. PATEK: Good morning, your Honor. Barbara Patek

18  appearing on behalf of the public safety unions that are

19  comprised of the Detroit Fire Fighters Association, the

20  Detroit Police Command Officers Association, the Detroit

21  Police Lieutenants and Sergeants Association, and the Detroit

22  Police Officers Association. We have filed a concurrence and

23  a limited objection in the two motions before the Court, and

24  I will address them serially. With respect to the stay

25  motion, we agree that the stay applies, and we agree in

1   concept with the issuance of the stay order as requested by
2   the city.  We want to clarify -- and I believe the Court
3   asked the question of the city's counsel -- that that stays
4   all further proceedings in the state court action, including
5   the pending application for leave to appeal that has been
6   filed by the attorney general.  And I believe the city,
7   having submitted itself or consented to the application of
8   362 and 922, that the Sixth Circuit law on that issue should
9   control.
10          With respect to the extension of the stay, we concur
11  in that as well, and we have, in fact, asked for some
12  affirmative relief, and I want to at the outset of my
13  argument address the question raised by the Court with
14  respect to the preliminary injunction standard.  I think in
15  this case -- I mean there obviously is some flexibility in
16  Section 105 that the Court has, but if you look at those four
17  factors that govern preliminary injunctions, this is a case
18  where the public interest trumps all of them, and we, on
19  behalf of public safety unions, strongly believe that that --
20  that the public interest is at stake and that the stay
21  provided by this Court will give the parties the breathing
22  space to perhaps have that robust discussion that was
23  mentioned by -- in one of the earlier arguments.
24          We do want to make it clear that in concurring in
25  the relief requested, the public safety unions are not

1   conceding that the city is eligible to be a debtor in this

2   case. We believe there are very, very serious constitutional

3   arguments on that issue as set forth in our papers. We

4   simply believe that this Court is the proper forum because of

5   the intersection of state and federal constitutional law and

6   Bankruptcy Code issues, some of which are novel and

7   uncharted.

8         The other issue that we want to address with regard

9   to the stay extension deals -- there are three points. One,

10   we're asking for the affirmative relief of broadening the

11   stay to include particularly the employees and retirees of

12   the public safety unions and some former employees who may be

13   the subject now or in the future of lawsuits and whose only

14   source of indemnification would be the city.

15         Second, we want it clarified because we do not

16   believe that anybody is giving up any claim by coming before

17   this Court that all claims against any nondebtor parties are

18   preserved and, third, that to the extent that those actions

19   are stayed, that the protections of 108(c) apply. Those are

20   essentially the relief that we're requesting.

21         THE COURT: Let me ask you to go back to number one

22   for a second. You mentioned former employees, so there are

23   lawsuits against former employees for which the city might be

24   liable for indemnification?

25         MS. PATEK: And to clarify, your Honor, I don't know

1  about -- I don't have a list of lawsuits, but I'm concerned
2  with the situation, and we're really tailoring this narrowly
3  to -- that the lawsuit relates to their employment by the
4  city and acting, you know, within the scope of their
5  employment with the city and --
6          THE COURT:  Well, is it your position that under the
7  ordinance that Ms. Lennox identified, former employees are
8  also entitled to indemnification?
9          MS. PATEK:  Your Honor, I'm going to be candid with
10 you.  As I have not seen that ordinance, I don't know the
11 answer to that question, and I'd be happy --
12         THE COURT:  All right.  Well, perhaps Ms. Lennox can
13 address that.  Thank you.
14         MS. PATEK:  Thank you, your Honor.
15         MR. GORDON:  Good morning, your Honor.  Robert
16 Gordon of Clark Hill on behalf of the Police and Fire
17 Retirement System and the General Retirement System of the
18 City of Detroit.
19         THE COURT:  Yes, sir.
20         MR. GORDON:  Thank you, your Honor.
21         THE COURT:  Your Honor, while many of the arguments
22 that have been made, particularly by counsel for AFSCME, are
23 positions that we have concurred in, the thrust of our papers
24 I think focuses on a slightly different issue to some extent,
25 and for purposes of this argument I'd like to focus on those

1  for your Honor.

2      It's our position that the stay motions presume

3  facts that are not in evidence.  There is a threshold issue

4  here under Section 109(c)(2) of the Bankruptcy Code that

5  needs to be dealt with first, 109(c)(2) requiring that in

6  order for a municipality to avail itself of the protections

7  of Chapter 9, it must have received valid state authorization

8  to do so.  The situation here I believe is unique.  I'm not

9  aware of any other case really on point.  We have a situation

10  where there is Michigan state constitutional protection for

11  accrued pension benefits.  We have in this state a statutory

12  framework in which the governor is required to provide the

13  authorization for the filing of a Chapter 9.  The governor is

14  also sworn to uphold the state constitution.  So our position

15  is, as we've indicated in our papers, that if the governor

16  cannot directly abrogate -- unilaterally abrogate

17  constitutional rights under Michigan's constitution, he also

18  respectfully cannot do indirectly what he cannot do directly,

19  so, in other words, he cannot authorize a Chapter 9

20  bankruptcy filing that has as an explicit stated goal, among

21  others, to impair and diminish accrued pension benefits which

22  are protected by the state constitution.  Since he doesn't

23  have that authority, the issue isn't one of whether there's

24  an action that's voidable here.  It is void, void ab initio,

25  and it is as if it never occurred.  So our argument is that

1   there isn't -- to talk about the stay and talk about the
2   Court's jurisdiction presumes that there has been a valid
3   state authorization, and there hasn't been any valid state
4   authorization.
5           Now, as to that issue, a state court has ruled on
6   that issue.  Judge Aquilina in the Ingham County Circuit
7   Court in the case of Webster v. Snyder ruled and issued a
8   declaratory judgment, not an injunction, a declaratory
9   judgment against the governor, who is a nondebtor party, and
10  at the time and as of today there is no stay and was no stay
11  against declaratory judgment against the governor, and the
12  Court entered a declaratory judgment ruling along the lines
13  of what I just argued and declaring that the governor did not
14  have authority to authorize this Chapter 9 bankruptcy filing.
15  To be clear, that matter has not been stayed by the Court of
16  Appeals.  The Court of Appeals stayed certain TRO orders that
17  have been entered by Judge Aquilina, but the declaratory
18  judgment is a final order that has not been stayed.  So the
19  question becomes where should the 109(c)(2) issue be
20  addressed, and we have submitted that it ought to be
21  addressed by the state courts because unlike the other
22  eligibility requirements under Section 109(c) for determining
23  whether a debtor is eligible to proceed under Chapter 9,
24  Section 109(c)(2) is specifically a creature of state law,
25  and the Bankruptcy Code and Chapter 9 evinces a deep and

1  abiding respect for federalism and Tenth Amendment concerns,

2  and in that light we think it is appropriate to allow the

3  state judiciary, which is a co-equal partner of the executive

4  branch and of the legislative branch in this state --

5          THE COURT:  Okay.  So how do you deal with the

6  city's argument that 28 U.S.C., Section 1334, gives this

7  Court exclusive jurisdiction over the bankruptcy petition

8  and, therefore, over the eligibility issues under Chapter 9?

9          MR. GORDON:  Again, your Honor, our position would

10 be that it presumes something that is not in evidence here.

11 It presumes that there has been a valid petition filed, and

12 there simply has not been a valid petition.  That's our

13 argument.  Our argument as to supremacy clause --

14         THE COURT:  But Chapter 9 makes -- Chapter 9 makes

15 that issue an eligibility question, doesn't it?

16         MR. GORDON:  I guess it depends on how you look at

17 it, but from our point of view, if an action has been void ab

18 initio, it's a circular issue to some extent.  I understand

19 your point, your Honor.  It's a bit of a circular issue, but

20 from our position, we think that to assume in the first

21 instance that there's been valid action by the governor and

22 that this Court should determine it presumes something that

23 hasn't yet been established.  If, however, of course, this

24 Court feels that it has jurisdiction to address that issue,

25 we would submit that -- again, without waiving the argument

1  that this really should be addressed in the state court, we

2  would submit that the 109(c)(2) issue of whether there's been

3  valid state authorization is the first issue this Court

4  should address and not the stay motions and that that issue

5  ought to be addressed upon full briefing in the context of a

6  Section 921(c) motion to dismiss.  I think that that comports

7  with the process.

8       THE COURT:  Let's talk about that.  What's the

9  prejudice to your client or the interest that your client

10  seeks to vindicate by having this issue resolved before any

11  other issue?

12       MR. GORDON:  Having which issue resolved, your

13  Honor?

14       THE COURT:  This issue of whether the governor

15  constitutionally authorized the filing.  Why does your client

16  need that to be resolved before anything else?

17       MR. GORDON:  Well, I think as a matter of just

18  jurisprudence to be proceeding with issues regarding a stay

19  when there's a fundamental issue of subject matter

20  jurisdiction, to me it would make sense to address the issue

21  of whether there is subject matter jurisdiction before we

22  proceed with all sorts of matters that may be of no effect.

23  They may be completely void, so I think that we --

24       THE COURT:  Okay.  So you're not representing to the

25  Court, for example -- and I don't mean to suggest this --

1   that your clients were intending to file a lawsuit against

2   the city to enforce this constitutional right imminently, are

3   you, or are you?

4          MR. GORDON:  I'm sorry.  Can you repeat the

5   question, your Honor?

6          THE COURT:  I asked you how your clients would be

7   prejudiced by dealing with this issue of the

8   constitutionality of this filing later in the context of

9   eligibility, and you talked about issues of jurisprudence,

10  just prudence, so I asked you are you, therefore, not

11  suggesting to the Court that your client had a lawsuit

12  against the city in mind to file imminently to enforce this

13  constitutional right, which would be stayed if the Court

14  granted the motion?

15         MR. GORDON:  Understood, your Honor.  No, we do not.

16         THE COURT:  Okay.

17         MR. GORDON:  No, we do not.  So, your Honor, again,

18  we think that this is a threshold issue that ought to be

19  dealt with not on the fourth business day of the case but

20  through a little bit more of a robust process if this Court

21  is inclined to --

22         THE COURT:  Well, let's talk about that even.  If

23  the Court grants this motion, it would be, wouldn't it,

24  without prejudice to your right to seek relief from the stay

25  and/or abstention?

1          MR. GORDON:  Yes, but, again, the question is
2     whether there's a stay at all because there's a question of
3     the validity of the ongoing bankruptcy, so --
4          THE COURT:  Well, but if those rights are preserved,
5     the prejudice of which you speak is reduced, not eliminated,
6     but reduced.
7          MR. GORDON:  Possibly, although abstention is not
8     as -- certainly is not the same argument, of course.
9          THE COURT:  But I'm just asking.
10         MR. GORDON:  Yes.
11         THE COURT:  Yes.
12         MR. GORDON:  I understand.  Your Honor, so that is
13    our position on that.  As far as the actual request for stay
14    relief, our papers speak for themselves to a great extent.  I
15    won't repeat what's been said here.  I would say this,
16    though.  As to the stay confirmation order, I think it ought
17    be explicit that if all they're asking -- all the city is
18    asking for is confirmation, then it should be clear that it's
19    not expanding anything.  If it's just the confirmation, then
20    we don't object to it because they're not doing -- by
21    claiming that they're confirming the stay, they're stating
22    that they are not expanding and exceeding the --
23         THE COURT:  Right.
24         MR. GORDON:  -- scope of the Bankruptcy Code --
25         THE COURT:  Okay.

1    MR. GORDON:  -- so that would be our comment on
2    that.  As far as the request to extend the stay, you know,
3    again, on day four it's very unclear to know how far they're
4    intending to stay this.  There has been no discussion between
5    the parties.  I've now heard from another counsel, who just
6    preceded me, that she would like to see the stay extended to
7    other people as well.  Again, I would submit that there ought
8    to be an opportunity to discuss that.  The argument has been
9    made that an adversary proceeding is necessary to enforce a
10   105 stay.  The arguments that say that a 105 -- that you
11   don't need to have an adversary proceeding, that form should
12   not rule over substance, we understand those arguments, but
13   nothing should overrule due process, and I think it's really
14   an issue of due process.  We don't know the contours of
15   really at the end of the day -- the papers are not clear as
16   to what the contours are, what they're seeking to extend to,
17   and, quite frankly, they haven't -- the papers do not
18   establish unusual circumstances here.  The Eagle-Picher case
19   is inapposite to what is at issue here.  All that's been
20   alleged is a sort of murky mere closeness of relationship
21   between the governor and the city, which we submit is
22   insufficient.  The declaratory judgment that was entered by
23   Judge Aquilina has not been stayed, but this motion for stay
24   extension is seeking to do just that, and to stay a
25   declaratory judgment is really to essentially eviscerate the

1  declaratory judgment. There's no action to be taken, so to
2  stay it is to basically vacate it. We submit that that's not
3  appropriate under the circumstances here. And we've raised
4  issues about Rooker-Feldman and so forth, and, again, we
5  would submit that if the Court were going to discuss the
6  extension of the stay, it should not extend to affect the
7  rights of parties relative to the declaratory judgment and
8  its winding its way through the state court system.
9          THE COURT: Thank you, sir.
10         MR. GORDON: Thank you, your Honor.
11         MS. CECCOTTI: Good morning, Judge Rhodes. Babette
12 Ceccotti, Cohen, Weiss & Simon, LLP, for the UAW, and with me
13 is Mr. Wertheimer, counsel to the Flowers plaintiffs. As
14 your Honor is hopefully aware, the Flowers plaintiffs and the
15 UAW filed a joint objection, and Mr. Wertheimer is here in
16 case the Court has any questions regarding the Flowers
17 lawsuit, and I will state the objection of the UAW from the
18 U -- representing the UAW. Excuse me, your Honor.
19         As is evident from our objection, we have largely
20 joined -- in the interest of brevity and not overwhelming the
21 Court with duplicative papers, we have largely joined in the
22 arguments already briefed and addressed by Ms. Levine on
23 behalf of AFSCME. I do have a couple of other points that I
24 would like to make but, in particular, perhaps revisit some
25 of the ground already covered in part by other counsel in

1  response to Ms. Lennox's presentation on a couple of matters
2  that I found quite extraordinary and think that it is worth
3  focusing on again.
4        First, the notion that this Court could permanently,
5  permanently stay the state court lawsuits is I would submit
6  well beyond any power of this Court under 105 or 362 or any
7  other ground being suggested to you by the city.  These are
8  not -- as Ms. Levine stated, we're not here about an
9  implementation tool to keep others from diverting the city's
10 attention and running around and trying to collect on claims.
11 As you've heard this morning already, the issues raised by
12 the state -- by the state court lawsuits go to -- they not
13 only go to the eligibility of the city to file, they -- it
14 is -- it's actually -- it's more fundamental than that.
15 These are issues that arise under state law.
16        Chapter 9, of course, reflects dual sovereignty and
17 in part reflects that most significantly in the eligibility
18 criteria, which requires that the municipality be authorized
19 under state law or by a governmental officer.  The key here
20 is under state law.  The pre-petition lawsuits address the
21 state law issues as to whether the state law bases under
22 which the governor issued his authorization for the filing
23 violate the Michigan state constitution to the extent that
24 the authorization does not except out the pension benefits.
25 These are totally state court issues.  So if we look at 1334,

1   just to take that point, while this Court may have original

2   and exclusive jurisdiction of all cases under Title 11, the

3   use of the word "cases" must be read specific to the case

4   that we have, and the case that we have here is a Chapter 9

5   case with all of the dual sovereignty attributes of that,

6   including the eligibility criteria, which fundamentally are

7   grounded on an authorization under state law, so I do not

8   believe that 1334(a) can be read to simply write out of the

9   statute the unique character, if you will, of Chapter 9 vis-

10  a-vis the other chapters of the Bankruptcy Code, which is so

11  dependent on the state court authorization to --

12          THE COURT:  So is it your argument that this Court

13  doesn't have the jurisdiction to decide this constitutional

14  issue or that it is concurrent?

15          MS. CECCOTTI:  Your Honor, I was getting to that

16  when I was going to move on to 1334(b).

17          THE COURT:  Okay.

18          MS. CECCOTTI:  To the extent that anybody would

19  argue or perhaps decide or say that the eligibility features

20  and the ability to file a motion to dismiss based on those

21  features would be a proceeding under a case, then 1334(b)

22  makes clear that the District Courts have original but not

23  exclusive jurisdiction on those questions so that while this

24  Court arguably would have jurisdiction in the context of a

25  motion under 109(c), it is not exclusive, and the state -- to

1  the extent the issue of the state's authorization and whether
2  that authorization should have excepted the pensions
3  consistent with or under -- directly covered under -- the
4  prohibition under the Michigan state constitution, at a
5  minimum, if we're talking about a proceeding, the state
6  courts -- the state courts and this Court would both consider
7  that issue, and now here we do get into important and serious
8  questions of federalism and abstention.  The state courts
9  already have the authorization issue teed up in the three
10  lawsuits in slightly different fashions, but the gravamen of
11  all of them, if you boil it down, is the scope of the
12  authorization issued by the governor and whether the failure
13  to except the pensions -- the accrued pensions from the
14  authorization to use Chapter 9 violated the state
15  constitution.  Therefore, the Court's prudential or juris --
16  the Court's prudential or discretion perhaps to take that
17  issue up would be guided, as it is in other matters where a
18  party comes in to lift the stay to have a state court proceed
19  with a lawsuit perhaps of the type that Ms. Levine mentioned,
20  perhaps a pre-petition state lawsuit having to do with a
21  particular piece of property or a lien, those issues all come
22  into play and, in fact, weighing the factors that apply in
23  those cases, it is not always the case that the Bankruptcy
24  Court keeps those matters.  It depends on the issues.  It
25  depends on five or six or seven factors, depending on which

1  court you're in.

2      THE COURT:  Okay.  Well, let's focus on this issue

3  and ask whether there are any cases that have addressed the

4  argument that you make that this specific element of

5  eligibility should be resolved in the state court rather than

6  in the Bankruptcy Court.

7      MS. CECCOTTI:  Your Honor, I cannot standing here

8  today cite to a case, but I'm very confident that there are

9  such cases, perhaps not in the -- necessarily in the Chapter

10  9 context given the relative paucity of jurisprudence under

11  Chapter 9, but there are myriad cases that have arisen, for

12  example, under Chapter 11 where by balancing the various

13  factors, including the importance of respecting federalism

14  and noninterference with the state court's ability to

15  determine matters under their own laws --

16      THE COURT:  Well, but isn't it the case that every

17  Chapter 9 case which has been dismissed for lack of proper

18  authorization -- and there have been a few -- have been

19  dismissed by the Bankruptcy Court based on the Bankruptcy

20  Court's determination of authorization.

21      MS. CECCOTTI:  That's correct, but how many of those

22  cases -- and we'd have to look, but I'm going to place a

23  small bet here and say none, involved --

24      THE COURT:  We don't permit that here.

25      MS. CECCOTTI:  -- three lawsuits, three lawsuits

1    filed on -- against slightly different but all -- but

2    theories that -- the gravamen of which are the same?  So in

3    those cases, I'm not sure they're instructive because they

4    wouldn't say -- they wouldn't tell us that the Bankruptcy

5    Court versus those prefiling lawsuits was the only -- the

6    appropriate --

7               THE COURT:  Well, but to what extent is --

8               MS. CECCOTTI:  -- or certainly not the only place.

9               THE COURT:  To what extent is your argument -- would

10   your argument be diminished if there weren't such lawsuits,

11   if the --

12              MS. CECCOTTI:  I think -- I think --

13              THE COURT:  -- individuals here simply requested

14   this Court to permit the state court --

15              MS. CECCOTTI:  Your Honor, the essence of the

16   objection is, in fact, that these lawsuits exist and what

17   they are based in.  If the lawsuits did not exist, we would

18   have a different argument before you today.

19              THE COURT:  Okay.

20              MS. CECCOTTI:  But they do exist, and the fact that

21   they exist we think is simply -- must be the primary

22   consideration by this Court in determining the relief and we

23   respectfully submit denying the relief requested by the city.

24              I would like to make two other points, one of which

25   I regret we didn't raise in our papers, but it struck me

1   reading -- when I listened to Ms. Lennox this morning

2   articulate for the Court the relief that they are seeking

3   with respect to matters that haven't been lodged as lawsuits.

4   I believe she read that the -- paragraph 20 of her papers in

5   looking for prospective relief or -- against entity -- people

6   or entities that might become targets.  I did notice that the

7   proposed form of order merely states that the motion is

8   granted, and I would submit to the Court that if any type of

9   injunction is issued -- and we strongly urge the Court not to

10  grant the motion, but to any extent any -- the Court deems

11  any type of stay possible, any such relief should provide

12  fair notice to parties who have not yet done anything as to

13  the conduct that is potentially going to be covered by the

14  order, and we submit that, at least based on the filings

15  here, your Honor does not have sufficiently specific language

16  to issue such an order.

17          Finally, the proposed relief is overly broad even

18  with respect to the pre-petition lawsuits to the extent that

19  they ask this Court to simply rule that those lawsuits are

20  stayed.  I wish to -- we do want to point out to the Court

21  that the lawsuits -- the Flowers lawsuit certainly and

22  perhaps some of the others have named the State of Michigan

23  as defendants.  We don't understand the city's request for

24  relief in terms of a stay extension to extend to the State of

25  Michigan; therefore, the stay -- a stay is not -- has not

1   been -- such a stay has not appropriately been sought and if

2   the Court again were to grant a stay, that, again, the relief

3   is --

4           THE COURT:  Let's assume there --

5           MS. CECCOTTI:  -- would be overly broad.

6           THE COURT:  Let's assume there's no order staying a

7   lawsuit against the state.  What does that do for your

8   clients?

9           MS. CECCOTTI:  The State of Michigan is a defendant,

10  and --

11          THE COURT:  What relief can the Court order against

12  the state that would help your clients?

13          MS. CECCOTTI:  To permit -- the lawsuits would be

14  able to proceed against the state.

15          THE COURT:  Right, but what ultimate relief could

16  the state court grant against the state that would help your

17  clients?

18          MS. CECCOTTI:  There I would need to ask the counsel

19  for the Flowers plaintiffs --

20          THE COURT:  Okay.  Okay.

21          MS. CECCOTTI:  -- if you don't mind, just because my

22  familiarity is not primarily with those cases.

23          THE COURT:  No, not at all.

24          MS. CECCOTTI:  Those were my points, your Honor.

25          THE COURT:  Thank you.  Would you like to try to

1  address that for me, sir?

2      MR. WERTHEIMER:  Yes, your Honor.  William

3  Wertheimer, your Honor, appearing on behalf of the <u>Flowers</u>

4  plaintiffs.  In answer to that last question, first of all,

5  it is correct that the <u>Flowers</u> case, the state is a defendant

6  as an entity, and the same is true of the <u>Webster</u> and the

7  pension systems case.  All three cases seek declaratory

8  judgments, and a declaratory judgment can issue against the

9  state because --

10      THE COURT:  Right.  But what does that do --

11      MR. WERTHEIMER:  -- it's a declaratory judgment --

12      THE COURT:  What does that do for your clients?

13      MR. WERTHEIMER:  It depends upon what effect that

14  judgment would have with this Court as a practical matter.

15      THE COURT:  Oh, so you're thinking it may have some

16  res judicata or Rooker-Feldman effect?

17      MR. WERTHEIMER:  Well, you know, your Honor, your

18  Honor, our basic point is that this is a state law issue that

19  we brought to the state courts before this proceeding was

20  brought in good faith attempting to get an order and a ruling

21  from the state courts, and we would want to continue to do

22  that, and we think we can do that even under the motion they

23  filed, if it's granted, given the fact that the state as an

24  entity remains as a defendant in the three cases.

25      THE COURT:  All right.  Thank you.

1        MR. WERTHEIMER: I would also reiterate that -- a

2  point previously made, that the stays that were issued

3  yesterday by the Court of Appeals did not cover at all the

4  declaratory judgment, which was a final judgment, which

5  entered in the Webster case as --

6        THE COURT: Someone mentioned that.

7        MR. WERTHEIMER: The state has not yet taken an

8  appeal, but the activities at the Court of Appeals all have

9  to do with the applications for leave of the nonfinal orders.

10       THE COURT: Thank you for clarifying that, sir.

11       MR. WERTHEIMER: Yes, your Honor. I have one point.

12  We filed yesterday a brief along with a declaration from me,

13  and that declaration dealt principally with one issue, and

14  that is the debtor in its initial pleadings and in its motion

15  specifically indicated that the orders issued in state court

16  were -- all three orders were ex parte, and that is

17  consistent with the debtor's statements today talking about

18  target, et cetera. In other words, we're the bad guys out

19  there as they would characterize the bad guys in a typical

20  Chapter 11 case. We are not the bad guys. We did not do

21  anything ex parte.

22       THE COURT: I have to -- I have to stop you. I

23  didn't read anything in the city's papers that suggested your

24  clients were the bad guys.

25       MR. WERTHEIMER: Well, they -- your Honor, the

1    city's papers stated that in all three cases we obtained ex

2    parte injunctive relief.  In none of those three cases did we

3    obtain ex parte injunctive relief.  In fact, we gave the

4    state and its officers notice of everything we did, and the

5    matter was fully briefed.  Nothing happened ex parte.  Let me

6    leave it at that.

7            THE COURT:  Okay.

8            MR. WERTHEIMER:  And, finally, consistent with that,

9    in my declaration I indicated that I was attaching the

10   transcript from the proceedings of July 18.  I neglected to

11   do that electronically.  We provided copies to everybody last

12   night by e-mail.  We will make sure that that's also done

13   electronically, and I'd like to, if I may, approach the bench

14   and provide a copy to the Court.

15           THE COURT:  Yes, sir.  That's fine.  Thank you.

16           THE CLERK:  Thank you.

17           MR. WERTHEIMER:  That's all I have, your Honor.

18   Thank you.

19           THE COURT:  Thank you.  And before we proceed with

20   the city's rebuttal, I'd like to ask if there's anyone in the

21   courtroom who would also like to address the Court.  And

22   briefly, please, sir.

23           MR. BRENT:  Good morning, your Honor.  My name is

24   Nathaniel Brent.  I represent myself pro se in a current

25   lawsuit against the City of Detroit in this Eastern District

1    of Michigan in front of Julian Cook.  One thing that I'm

2    surprised at with all of these learned attorneys here is

3    nobody has mentioned the issue of this declaratory judgment

4    actually collaterally estops the City of Detroit from

5    relitigating the issue of whether they had authority to even

6    file this petition.

7            THE COURT:  Actually, that is mentioned in the

8    briefs.  It's more than mentioned.  It's argued forcefully in

9    the briefs.

10           MR. BRENT:  That's not my primary argument here,

11   your Honor.  My primary argument is regarding the stay that's

12   been in place and the extensions they're seeking to grant a

13   blanket stay for any Detroit employee, present or --

14           THE COURT:  Let me ask you what is your claim and

15   who is it against?

16           MR. BRENT:  My claim is against the City of Detroit

17   police officers and two police officers in both their

18   individual and official capacity for violations of my Fourth

19   Amendment rights.  The issue here, your Honor, is this case

20   has been pending for the last two and a half years.

21           THE COURT:  Um-hmm.

22           MR. BRENT:  And now that the stay is in effect and

23   they're trying to extend this even further, the issue

24   cannot -- of liability cannot even be litigated in order to

25   bring it in front of this Court.

1        THE COURT:  Um-hmm.

2        MR. BRENT:  Granted, as for the execution of any

3  orders to enforce any judgment entered would clearly be

4  within the jurisdiction of this Court.  I don't contest that

5  at all.  The issue of whether or not they are liable and

6  committed the violations of the Fourth Amendment, those are

7  issues that should be allowed to be continued to be

8  litigated.

9        THE COURT:  Um-hmm.

10        MR. BRENT:  On that issue, even if an award is

11  granted, it would not be part of the reorganization of the

12  City of Detroit in the first place.  The City of Detroit's

13  charter -- in Chapter 9 of the City of Detroit's charter they

14  have what is called a risk management fund, which is a

15  dedicated fund which is required to have a minimum of $20

16  million in it to pay for civil lawsuits and workmen

17  compensation claims.  This isn't part of the reorganization.

18  This is going to exist regardless.

19        As for their claim regarding the indemnifying

20  employees under Chapter 13-11-1, that gives the City of

21  Detroit the option to indemnify.  It does not require that

22  they indemnify these employees.

23        THE COURT:  Um-hmm.

24        MR. BRENT:  And, now, in my present case, City

25  Council did vote to elect to indemnify the employees.

1          THE COURT:  Um-hmm.

2          MR. BRENT:  However, this is the city's option.

3     This isn't a requirement of law that they indemnify these --

4          THE COURT:  Um-hmm.

5          MR. BRENT:  -- just as -- my lawsuit is also against

6     various state actors within the State of Michigan, which --

7     but, again, their wanting to extend this to them would

8     prevent me from litigating my claims against the state

9     officials that have already been denied immunity, and it is

10    currently pending.  Those portions they've appealed to the

11    Circuit Court.  So now that they're trying to extend this

12    stay, now the Sixth Circuit Court of Appeals case of Brent

13    versus Wayne County, et al. will be stayed as well where the

14    different state defendants -- state employees have uphill

15    decision to deny their qualified and absolute immunity.

16         THE COURT:  The defendants in your particular suit

17    are both city employees and other defendants are state

18    employees?

19         MR. BRENT:  Yes, and there's also state contractors

20    involved in the lawsuit.

21         THE COURT:  Contractors also.  Thank you, sir.

22    Would anyone else like to be heard?

23         MR. SANDERS:  Good morning, your Honor.  My name is

24    Herb Sanders, and I represent the plaintiffs in the case of

25    Phillips versus Snyder pending before this Court, Case Number

1   2:13-CV-11370, before Judge Steeh. That is a case that

2   challenges the constitutionality of PA 436. Motions for

3   summary -- for at least one summary disposition or summary

4   judgment argument have been scheduled. As I initially read

5   the request for stay extension motion filed by the city, it

6   appeared that the city was seeking an extension of stay

7   concerning financial matters that were being litigated, but

8   pursuant to the oral presentation of the city's attorney, it

9   concerns me when she has indicated -- and I paraphrase --

10  that she seeks relief concerning any litigation that might

11  interfere with the city's rights as a Chapter 9 debtor. And

12  I would suggest to the Court to the extent that it might be

13  proposed or suggested that the litigation which I have

14  referenced in which the constitutionality of PA 436 is to be

15  determined by another judge in this court interferes with the

16  rights of the city as a Chapter 9 debtor, that that case not

17  be included as part of the stay order that this Court would

18  issue. I believe it's imperative to this community, to this

19  state that those issues be determined and, in fact, should

20  probably be determined before the bankruptcy proceeds, but I

21  would encourage the Court to not give a broad order if any

22  order were to issue that would be inclusive of matters that

23  are not financial matters such as there are other matters

24  that I know that the union, AFSCME, and others are a part of

25  seeking FOIA requests from the city, injunctive relief as it

1    relates to these types of matters, and I would ask the Court

2    to consider not giving such a broad order --

3              THE COURT:  Um-hmm.

4              MR. SANDERS:  -- that that type of information could

5    not be obtained and we could not have a determination as to

6    the constitutionality of PA 436 by this Court.

7              THE COURT:  Um-hmm.

8              MR. SANDERS:  Thank you, your Honor.

9              THE COURT:  Thank you.  Sir, can you just give me

10   your name again, please?

11             MR. SANDERS:  Herb Sanders.

12             THE COURT:  Mr. Sanders.  Thank you, sir.

13             MR. SCHNEIDER:  May it please the Court, Matthew

14   Schneider, chief legal counsel to the Attorney General.  I'm

15   here on behalf of the State of Michigan.  Your Honor, I'm

16   here for a very, very limited purpose.  As counsel to the

17   debtor has indicated, they are not seeking to abrogate the

18   exceptions in Section 362(b), and I know that this is a

19   motion regarding Section 362, so our position is is that if

20   the Court is, indeed, inclined to grant the motion regarding

21   the stay, that the Court's order reflect that nothing in the

22   Court -- nothing what the Court is doing will actually

23   abrogate the exceptions afforded under 362(b).

24             THE COURT:  Is there a specific exception you're

25   concerned about?

1    MR. SCHNEIDER:  Well, your Honor, the state has a

2  great interest in ensuring that our departments and agencies

3  can continue their administrative functions, which is really

4  not unusual, and we just want to be sure that that's the

5  case, and that's all I have, your Honor.

6    THE COURT:  Well, but which provision in Section

7  362(b) --

8    MR. SCHNEIDER:  It's subsection (4).

9    THE COURT:  -- is implicated?  Oh, (4).  Okay.

10    MR. SCHNEIDER:  Subsection (4) --

11    THE COURT:  Of course.

12    MR. SCHNEIDER:  -- which indicates that, you know,

13  commencement or continuation of an action or proceeding by a

14  governmental unit isn't going to -- isn't going to impair a

15  governmental unit to have its regulatory power in --

16    THE COURT:  It's the police powers exception.

17    MR. SCHNEIDER:  Correct.

18    THE COURT:  Thank you, sir.

19    MR. SCHNEIDER:  Thank you.

20    THE COURT:  Would anyone else like to be heard?  All

21  right.  Ms. Lennox.

22    MS. LENNOX:  Thank you, your Honor.

23    THE COURT:  And by the way, my very efficient staff

24  provided me by computer here a copy of the ordinance.

25    MS. LENNOX:  Oh, thank you, your Honor.  I have one,

1  too, so that --

2          THE COURT:  I'm all set.

3          MS. LENNOX:  Great.

4          THE COURT:  And it does raise a question.  The

5  language appears to be discretionary as concerns indemnity.

6  Yes?

7          MS. LENNOX:  It is discretionary, but it's the

8  city's policy that if the employee is performing its duties

9  in good faith in the scope of its employment that indemnity

10  will issue, and that discretion now is the discretion of the

11  emergency managers, your Honor, which I would point out I was

12  very --

13          THE COURT:  Well, what impact does the fact that

14  it's discretionary rather than mandatory have on your

15  argument that the stay should be extended to employees who

16  might not otherwise be covered?

17          MS. LENNOX:  I think, your Honor, it doesn't have

18  much of an impact at all because, as I said, it's a matter of

19  city policy that if the employee was performing his or her

20  duties in good faith and the conduct that gave rise to the

21  action occurred in the performance of those duties, then the

22  indemnity will issue.

23          THE COURT:  Is that a policy in writing that we can

24  refer to, or is it just a matter of --

25          MS. LENNOX:  I would have --

1          THE COURT:  -- this is what the city always does?

2          MS. LENNOX:  I would have -- I would have to check

3   with corporation counsel on that, your Honor, but regardless,

4   the extension should certainly apply to the employees for

5   whom the city has agreed to indemnify for the reasons that I

6   stated earlier.

7          I would like, your Honor, just at the outset -- I

8   was very remiss because we didn't make opening statements to

9   neglect to introduce to you the emergency manager, who is

10  here in the courtroom today.  Mr. Orr is here.  Obviously he

11  has a great interest in these proceedings.  Okay.  Thank you,

12  your Honor.

13         Perhaps a couple of housekeeping matters before I

14  get into argument.  First, your Honor, I do have a copy of

15  the order that was issued by the Court of Appeals in the

16  State of Michigan in the Webster case in which the

17  declaratory judgment was entered, and perhaps that order --

18  the declaratory judgment has been appealed, and perhaps we

19  were misreading the order, but the order does say that the

20  motion for stay pending appeal is granted, and the Circuit

21  Court's July 18th, 2013, temporary restraining order and all

22  further proceedings are stayed, so that's where we got that

23  understanding, your Honor.  I have a copy if your Honor would

24  like to see it.

25         THE COURT:  Please.

1       MS. LENNOX:  May I approach?

2       THE COURT:  Yes.

3       MR. CANZANO:  Judge, I know it's a little bit

4  unorthodox here, but I --

5       THE COURT:  I have to ask you to stand by the

6  microphone because of the limitations of our equipment here,

7  sir.  Sir, actually this microphone, and my apologies to you

8  for that inconvenience.

9       MR. CANZANO:  I'm the attorney that got the

10  declaratory judgment, John Canzano, representing the --

11       THE COURT:  Canzano?

12       MR. CANZANO:  -- Webster plaintiffs.  I can speak

13  very briefly to why the declaratory judgment is not stayed.

14       THE COURT:  Okay.  Let me ask you --

15       MR. CANZANO:  There's four appeals.

16       THE COURT:  Let me ask you -- let me ask you to do

17  that after Ms. Lennox speaks.

18       MS. LENNOX:  As another housekeeping matter, your

19  Honor, I believe when Mr. Bennett was speaking, he indicated

20  that his firm in the Collins & Aikman case had filed a motion

21  to extend the stay but then they withdrew it because it was

22  procedurally improper.  Respectfully, I would beg to differ.

23  I have the transcript of that motion.  That motion was heard.

24  It was argued before your Honor, and it was denied.  If your

25  Honor would care to see the transcript, I do have it with me.

1          THE COURT: No, thanks.

2          MS. LENNOX: Thank you. In our colloquy, your

3 Honor, as an initial matter, you had asked what if the

4 preliminary injunction standards applied, and, as I

5 indicated, if you're going to apply preliminary injunctions,

6 you sort of have to have a matter to --

7          THE COURT: That wasn't exactly my question. My

8 question was how do you deal with the argument that they

9 should apply?

10          MS. LENNOX: I think, your Honor, under the Section

11 105 extension case law that exists out there where you extend

12 by motion, the courts have created a standard that is

13 different than the preliminary injunction four-part standard,

14 and, in fact, in cases in which this is presented by motion,

15 the preliminary injunction standards aren't even discussed,

16 and that standard is the standard that I --

17          THE COURT: Well, but didn't <u>Eagle-Picher</u> address

18 them?

19          MS. LENNOX: <u>Eagle-Picher</u> was brought by a

20 preliminary injunction. That was a preliminary injunction

21 case. It noted in dicta that many courts permit extensions

22 of the stay by motion, but that particular case they had

23 brought by preliminary injunction, so, therefore, they went

24 through the standards. If we had to go through the standards

25 here, I think we meet them, and if your Honor is interested,

1    I can articulate that for you.

2            THE COURT:  Go ahead.

3            MS. LENNOX:  But in any event, I don't think we need

4    to go through them under the circumstances, but if we had to

5    meet the preliminary injunction standards, I believe that

6    there would be -- at least with respect to the three lawsuits

7    that we have out there, I think there would be a great chance

8    of success on the merits because by the plaintiffs attempting

9    to condition the authorization to file a municipal bankruptcy

10   on that municipal -- that municipality's foregoing rights

11   under Chapter 9 once in Chapter 9 is a violation of the

12   bankruptcy clause and the supremacy clause.  I think we'd win

13   on that, your Honor.

14           Secondly, with respect to irreparable harm, if these

15   actions are not stopped, the city would be irreparably

16   harmed.  We would be preventing -- we would be prevented from

17   accessing necessary protections that we are otherwise wholly

18   entitled to access under Chapter 9 and under applicable law,

19   and it would be harmed by our inability to have the

20   appropriate forum, this forum, to decide the matter because

21   the matter presents federal issues for federal jurisdiction.

22   The issues that are presented have to do with can the

23   authorization be conditioned upon limiting a municipality's

24   rights in Chapter 9.  That clearly and squarely presents

25   federal issues of this Court's jurisdiction that can only be

1   decided by this Court under the supremacy and the bankruptcy

2   clauses, so without -- an inability for us to pursue that

3   would be irreparable harm to the city.  A state court simply

4   does not have jurisdiction to decide those.

5          Third, your Honor, the injunction, if one would call

6   this an injunction, is not going to harm others because, as

7   your Honor pointed out, they do have a forum, indeed the only

8   appropriate forum, in which to decide the issues that can

9   arise only in a bankruptcy case, issues like eligibility,

10  contract rejections, what should go in a plan of adjustment,

11  all of which are addressed by the three lawsuits that are

12  filed.  As your Honor pointed out, these litigants will have

13  due process.  They will have their day in court.  They will

14  have these issues decided, but they will have them decided in

15  the tribunal with proper jurisdiction.

16         And then fourth, your Honor, public policy clearly

17  favors the resolution of issues that exist only under the

18  Bankruptcy Code in the Bankruptcy Courts.  Any attempts to

19  have courts that are not of competent jurisdiction determine

20  these issues actually, your Honor, would offend public

21  policy, so while I don't think that we need to go through the

22  preliminary injunction standards in this case and by virtue

23  of the relief that we asked for, if we had to, we would meet

24  them.

25         Now, your Honor, I think I would like to, if it

1  please the Court, address sort of collectively the arguments
2  that were made about should the state courts determine this
3  or should the federal courts determine this, and
4  ultimately -- certainly at least what Ms. Levine was arguing
5  down to, they're arguing the merits of eligibility, and, as
6  your Honor pointed out, that's not before the Court today.
7  Nothing prevents -- as your Honor also pointed out, nothing
8  prevents anybody from seeking to lift the stay in any
9  particular case in any particular matter, and that's a
10 question that can be addressed to this Court.
11      More particularly -- and I'd like to go into this in
12 some detail -- the Court has jurisdiction to hear and
13 consider state court matters in this court.  Since the days
14 of Erie versus Tompkins back in 1938, federal courts have
15 applied state law when required to to determine the matters
16 before them.  It's very clear that now that this case is
17 filed, this Court -- under Section 921 of the Bankruptcy Code
18 and under its jurisdiction granted by 28 U.S.C. 1334(a) and
19 (b), this Court is the only court that is authorized to
20 determine eligibility issues.  As part of the eligibility
21 issues, Section 109(c)(2) necessitates the interpretation of
22 state law, and Bankruptcy Courts have done that in virtually
23 every Chapter 9 case that has been filed.  In Jefferson
24 County they went through the Alabama statutes for authorizing
25 the case.  In the New York City Off-Track Betting Corp. in

 1  New York in 2010, the Bankruptcy Court found that the
 2  governor had adequate power under the state constitution to
 3  issue the order authorizing the filing.  In the Suffolk
 4  County Regional Off-Track Betting Corporation case, an
 5  Eastern District of New York in 2011, the Court, interpreting
 6  state law, found that the debtor did not comply because the
 7  county resolution violated the -- Suffolk's County's
 8  authority and was unconstitutional and dismissed the
 9  petition.  In the Barnwell County Hospital case in the
10  District of South Carolina in 2012, they examined state law
11  to determine whether the County Hospital Board had
12  authorization to file Chapter 9, and they determined -- they
13  did the inquiry as to whether the authorization was void in
14  light of the state constitutional prohibition against dual
15  office holding, and they concluded it was not.  That case,
16  along with other cases, absolutely involved an interpretation
17  of state constitutional issues.
18          So given that the Bankruptcy Court's authority
19  includes the authority to decide state law issues when
20  required in exercising its jurisdiction under the Bankruptcy
21  Code and it is competent to do so, there is absolutely no
22  reason to disrupt the efficient resolution of this bankruptcy
23  case by having the state court cases go forward.
24          Your Honor, if you look at PA 436, Section 18.1,
25  nothing in that authorization statute mentions pensions.  It

1  simply mentions a process by which the city had to go through

2  to -- for the governor to make a determination whether we

3  were authorized to file nor, if your Honor would read it, is

4  anything in the governor's authorization letter conditioning

5  the filing on taking any action, not taking any action, or it

6  does not even mention what might happen to pensions in this

7  case, so this Court clearly has jurisdiction to determine the

8  state constitutionality issues.

9          On the other hand and respectfully, the state courts

10  have no jurisdiction to determine the issues of authorization

11  or eligibility under Section 109(c)(2) of the Bankruptcy

12  Code.  They have no jurisdiction to determine whether this

13  city had the right to file this case or, more importantly,

14  the rights that this city can exercise now that it is in

15  bankruptcy, and that, your Honor, is exactly what the

16  plaintiffs seek to do in their constitutionality challenges

17  in the three actions that are pending in state court.  This

18  is not a secondary jurisdiction matter.  This is a matter of

19  primary jurisdiction under Section 1334(a), (b), and Section

20  921 of the Bankruptcy Code for this Court.  This is the only

21  Court competent to make those determinations.

22          Mr. Gordon suggested that we don't need to decide

23  the stay issues today because the -- because we should wait

24  to determine eligibility first.  First of all, I would say

25  that there's no prejudice to pensioners in this case because

1  pensions are continuing to be paid.  There's no change to

2  that, so the delay shouldn't be a factor.  Secondly,

3  eligibility has nothing to do with the fact that the

4  automatic stay is in effect.  It arose by operation of law on

5  the day that we filed the petition on July 18th, and it is in

6  effect.  The only motions before this Court today have to do

7  with that stay that's already in effect, so there's nothing

8  improper about determining those matters today.

9          It has been suggested that Judge Aquilina's

10  declaratory judgment in the Webster case -- remember, your

11  Honor, the Webster case is the case in which the city is not

12  named.  The city is not a defendant.  It is a case only

13  against the governor and the state treasurer, so the city is

14  not a party.  The city didn't litigate any of the issues.

15  Collateral estoppel, therefore, cannot apply to the city in

16  the declaratory judgment in the Webster case.  We're not

17  bound by that.  Moreover, I would suggest to your Honor that

18  that is one trial court's view -- trial court's view -- that

19  was issued without briefing, without argument, without

20  reasoning, and in haste.  That decision is not even binding

21  on any other trial court in the State of Michigan let alone

22  any courts of higher jurisdiction, and it is certainly not

23  binding on this Court.

24          One other procedural issue that I would like to

25  point out that Mr. Gordon and none of the other objectors did

1 | point out, but it is noted on the summary sheet that I

2 | gave -- the demonstrative that I gave to your Honor earlier

3 | today.  The pension funding case, the GRS and PFRS case that

4 | Mr. Gordon's firm -- in which Mr. Gordon's firm represents

5 | the plaintiffs, has been removed to federal court.  The city

6 | removed it because that is the one case in which the city is

7 | the defendant.  That case was removed to federal court on

8 | July 21st, and so it was removed to the Western District of

9 | Michigan, the United States District Court for the Western

10 | District of Michigan.  State courts don't even have

11 | jurisdiction over this case anymore.  And in that case the

12 | city moved to transfer venue to the District Court in this

13 | district so that it will eventually be moved down to your

14 | Honor.

15 | With respect to a concern that Ms. Ceccotti raised,

16 | we are not seeking to stay the courts.  We are seeking to

17 | stay the litigation by extending the stay protections to the

18 | defendants without -- the effect of that -- that that would

19 | have, your Honor, is to prevent the parties from acting.  We

20 | are not seeking to do anything extraordinary under court's

21 | jurisprudence.

22 | Finally, your Honor, with respect to the arguments

23 | that Mr. Bennett made on behalf of Syncora, I think there may

24 | be some confusion on Syncora's part.  Neither of the motions

25 | seek to assert or to extend the stay in favor of the swap

1   counterparties, which are banks that have nothing -- no
2   relationship with the city, or the service corporations
3   themselves or any other party related to those entities other
4   than a couple of city officers that serve as directors of the
5   service corporations, and they do that because they're
6   required to do that in the performance of their duties as
7   city officers pursuant to a city ordinance, which is
8   Ordinance Number 0305. We are not seeking to protect the
9   corporations themselves. We are not seeking to protect any
10  swap counterparties, so I want to make that clear. Syncora
11  offers no evidence about how it will be prejudiced,
12  particularly because, again, nothing in the motions prevents
13  Syncora from coming in and seeking to lift the stay if one is
14  imposed.
15          We also don't seek in the stay confirmation motion
16  to seek relief behind actions to enforce a claim against the
17  debtor. Paragraph 4 of the proposed order makes that very
18  clear. It simply parrots the statute, and that's in the stay
19  confirmation motion. Because the city is a party to the
20  Syncora suit, the only stay issue that would apply to that
21  would be the stay confirmation issue. We're not seeking any
22  extension with respect to that lawsuit, and, frankly,
23  counterclaims may be asserted in that case, which would be
24  stayed, and the case started, your Honor, because Syncora was
25  illegally attempting to trap some of the city's revenues, so,

1  you know, if that kind of behavior would continue, that

2  absolutely is a stay violation.

3          Let me just check my notes quickly, your Honor.  All

4  right.  I believe, your Honor, that that's all I wanted to

5  address.

6          THE COURT:  I have to ask you one additional

7  question.  How do you deal with the argument made that if

8  your motions are granted as you have requested, lawsuits

9  against the State of Michigan or to the extent the lawsuits

10  are against the State of Michigan, they would not be stayed?

11          MS. LENNOX:  The State of Michigan, your Honor, acts

12  through its officials.  The State of Michigan -- well, with

13  respect to the three lawsuits that we are talking about right

14  now -- and I can't talk in the -- you know, I'd have to know

15  the facts for the other ones, but we -- again, when we

16  tailored this relief, we tailored it narrowly to what we knew

17  was out there and what we could anticipate coming out there.

18  We believe and we reserve the rights in our reply to argue

19  that the lawsuits themselves, including the ones in which the

20  city is not a named defendant, are direct violations of the

21  automatic stay, direct violations under 362(a)(3) and (6),

22  and if that's the case, then those cases and any actions

23  taken within those cases are void ab initio.  So to the

24  extent that the named parties in there are the governor and

25  the treasurer, the state acts through those officials.  Those

1  are the officials that were sued.  That is what we're

2  addressing.  Again, we are only seeking to extend the stay to

3  lawsuits that affect this case, not to any other actions

4  against state entities.  The State of Michigan can only act

5  though its officials, and we believe that the relevant

6  officials are identified in our pleading.

7         THE COURT:  Another sort of scope question was

8  raised by Mr. Sanders.  If your motions are granted here,

9  what impact would you argue that would have or should have on

10  the lawsuit in which he represents parties who assert the

11  unconstitutionality of PA 436?

12         MS. LENNOX:  Your Honor, I don't have, as we stand

13  here, enough facts about what Mr. Sanders' lawsuit says, the

14  arguments that it makes, or the defendants in that case,

15  whether the city or any city officials are defendants in that

16  case, so I would have to reserve judgment until I knew the

17  facts about his lawsuit.

18         THE COURT:  He's also concerned, perhaps a bit more

19  hypothetically, that lawsuits, for example, to seek

20  disclosure under the Freedom of Information Act and other

21  sorts of administrative matters should not be stayed.  What's

22  your position on that?

23         MS. LENNOX:  Well, if I understood what Mr. Sanders

24  said, he said those were lawsuits against the city.  If

25  they're lawsuits against the city, they're already stayed.  I

1  don't have to extend the stay to do that.  It exists.  If

2  they want to seek relief from the stay with respect to their

3  lawsuits, they can certainly come before the Court and do it.

4          THE COURT:  All right.  Thank you.

5          MS. LENNOX:  Thank you, your Honor.

6          THE COURT:  All right.  At this time -- oh, I want

7  to hear from you, sir.  Yes.  Thank you.

8          MR. CANZANO:  Thank you.  Just a very brief point of

9  clarification.  In the -- the three orders that were entered

10  by the Court of Appeals yesterday are in three different

11  cases, 317286, which is Webster; 317285, which is Flowers;

12  and 317284, which is the General Retirement System case.

13  Each of those were emergency appeals of TRO's that were

14  issued on last Thursday, the 18th.  There was another case

15  where there was a straight claim of appeal of the final

16  declaratory judgment, which is 317292.  There is no order in

17  that case at all.  That claim of appeal is going forward as a

18  normal claim of appeal.

19          THE COURT:  Um-hmm.

20          MR. CANZANO:  So -- and if you look at the three

21  orders, you can see that the Webster refers only to July

22  18th.  The other two refer to July 18th and 19th actions, and

23  the declaratory judgment was issued in Webster on the 19th.

24  The transcript of the 19th reflects that the TRO in Webster

25  was vacated when the declaratory judgment was entered.

 1          THE COURT:  All right.  The Court -- was there
 2   something you wanted to add, sir?
 3          UNIDENTIFIED SPEAKER:  Your Honor, I would just add
 4   that counsel in her reply indicated that the state judge
 5   issued her orders with no briefing.  They were fully briefed.
 6          THE COURT:  All right.  The Court would propose to
 7   take a recess at this time to consider these motions and
 8   reconvene at two o'clock for a decision, so that is what
 9   we'll do, and we'll be in recess for now.
10          THE CLERK:  All rise.  Court is in recess.
11      (Recess at 11:47 a.m., until 2:11 p.m.)
12          THE CLERK:  All rise.  Court is in session.  Please
13   be seated.  Recalling Case Number 13-53846, City of Detroit,
14   Michigan.
15          THE COURT:  Counsel appear to be present.  As the
16   Court explained earlier, there are two motions before it
17   today, the stay confirmation motion and the stay extension
18   motion.  As to both motions, several creditors object and
19   contend that the motions should be denied on the grounds that
20   this bankruptcy case is not properly before the Court because
21   the governor did not authorize the bankruptcy consistent with
22   state law and the state constitution.  The Court concludes
23   that this objection to both of these motions must be
24   overruled.
25          The Court concludes that the issue of eligibility

1   and each of the elements relating to eligibility are within
2   this Court's exclusive jurisdiction under 28 U.S.C., Section
3   1334(a).  Under that statute, United States District Courts
4   have original and exclusive jurisdiction of all cases under
5   Title 11, that original and exclusive jurisdiction referred
6   to the Bankruptcy Courts of each jurisdiction under 28
7   U.S.C., Section 157.  Our District Court has referred all
8   matters relating to bankruptcy jurisdiction to the Bankruptcy
9   Court under Local Rule 83.30.  This is not a proceeding
10  within 28 U.S.C., Section 1334, over which Bankruptcy Courts
11  would have concurrent jurisdiction with the state courts.
12          I was just advised that my microphone wasn't
13  working, but now it is; right?
14          THE CLERK:  Yes.
15          THE COURT:  Did we have a record of the first part
16  of that, Letrice?  I can't hear you.
17          THE CLERK:  No.
18          THE COURT:  We don't?
19          THE CLERK:  No.
20          THE COURT:  Okay.  So we'll start over.
21  Fortunately, we didn't get too far in it, and hopefully I can
22  say the same thing twice.  Okay.
23          So there are two motions before the Court, the stay
24  confirmation motion and the stay extension motion.  Certain
25  creditors object to both motions on the grounds that this

1    bankruptcy case is not properly before the Court because the

2    governor's authorization to file this bankruptcy case was not

3    consistent with state law and the state constitution.  The

4    Court concludes that this objection to both motions must be

5    overruled.

6         The issue of eligibility and the elements that the

7    debtor needs to establish in order for the Court to find its

8    eligibility are within this Court's exclusive jurisdiction

9    under 28 U.S.C., Section 1334(a).  Under that section, the

10   District Courts have, quote, "original and exclusive

11   jurisdiction of all cases under Title 11," close quote.  The

12   District Court's jurisdiction in bankruptcy cases can, in the

13   District Court's discretion, be referred to the Bankruptcy

14   Court within its jurisdiction under 28 U.S.C., Section 157,

15   and our District Court has referred cases in its bankruptcy

16   jurisdiction to the Bankruptcy Court under Local Rule 83.30.

17        The Court further concludes that this issue of

18   eligibility would be determined in the case and not in a

19   proceeding within Section 1134(b) of Title 28 and over which

20   the state courts and the Bankruptcy Courts would have

21   concurrent jurisdiction.  The reference in Section 1334(b) to

22   a proceeding is a technical reference and refers to adversary

23   proceedings such as preference actions, fraudulent transfer

24   actions, lien avoidance actions, et cetera.  The effect of

25   Section 1334(a) of Title 28, therefore, is that all of the

1    elements of eligibility in a Chapter 9 case must be decided

2    by the Bankruptcy Court exclusively.  In this regard, the

3    Court would note that there is no case law that holds

4    otherwise.

5         It has been argued here today that perhaps this

6    exclusive grant of jurisdiction to the Bankruptcy Court to

7    determine eligibility in the context of a Chapter 9 case is

8    unconstitutional.  However, the Court finds nothing in the

9    Tenth Amendment or in the more ambiguous concept of

10   federalism to support that argument, and there is no case law

11   that holds that.  Accordingly, the Court rejects that

12   argument as well.  In this regard, the Court would note, for

13   what it's worth, that in all of the other recent Chapter 9

14   cases with which we are all familiar, it was the Bankruptcy

15   Court that determined all of the eligibility issues raised by

16   the parties there.

17        The Court concludes that the Congressional grant of

18   jurisdiction to the Bankruptcy Court to determine the issue

19   of eligibility of a municipal debtor is entirely consistent

20   with the bankruptcy clause of the Constitution and the

21   supremacy clause as well.  In this regard, the Court would

22   further note that there is nothing in the jurisdictional

23   provisions of Title 28 or elsewhere that suggests that

24   Congress intended for the state courts to have concurrent

25   jurisdiction on the issue of eligibility to file a Chapter 9

1  case, so these arguments by the creditors to both motions are
2  overruled.
3          Turning then to the stay confirmation order, it
4  appears to the Court that the only potential issue -- the
5  only other potential issue here is whether the emergency
6  manager, Kevyn Orr, is an officer within the meaning of 11
7  U.S.C., Section 922, because if he is, then the stay already
8  applies to him, and it is appropriate for the stay
9  confirmation order to say that.  If he's not an officer, then
10 stays of action against him would be appropriate, if at all,
11 only in the context of the stay extension motion.
12          The record fully establishes that Kevyn Orr is the
13 emergency financial manager of the City of Detroit pursuant
14 to Public Act 436 of 2012, Michigan Compiled Laws, Section
15 141.1541 and following.  Pursuant to Section 141.159(2),
16 quote, "Upon appointment, an emergency manager shall act for
17 and in the place and stead of the governing body and the
18 office of chief administrative officer of the local
19 government.  The emergency manager shall have broad powers in
20 the receivership to rectify the financial emergency and to
21 assure the fiscal accountability of the local government and
22 the local government's capacity to provide or cause to be
23 provided necessary governmental services essential to the
24 public health, safety, and welfare," close quote.  It goes on
25 to say, quote, "Following the appointment of an emergency

1    manager and during the pendency of the receivership, the
2    governing body and the chief administrative officer of the
3    local government shall not exercise any of the powers of
4    those offices except as may be specifically authorized in
5    writing by the emergency manager or as otherwise provided by
6    this act and are subject to any conditions required by the
7    emergency manager," close quote.

8            Therefore, according to Michigan law, the emergency
9    manager steps into the shoes of the governing body and its
10   chief administrative officer.  Accordingly, the Court readily
11   finds that the emergency manager is an officer within the
12   definition and scope of Section 922.

13           It does not appear that there are any other
14   substantive objections -- I should say any substantive
15   objections to this finding, and, accordingly, the Court
16   concludes that it is appropriate to grant the stay
17   confirmation motion and to have it state explicitly that the
18   emergency manager, Mr. Orr, is an officer covered by the
19   Section 922 stay.

20           The other motion is the stay extension motion.  This
21   motion is filed pursuant to Section 105 of the Bankruptcy
22   Code, and it seeks an extension of the stay otherwise
23   effective as to acts against the city under Section 362 and
24   as to acts against the city, its officers and inhabitants,
25   under Section 922, and it seeks the extension to the

1  governor, the treasurer, the loan board, and their agents and
2  representatives.  As to this motion, it is initially argued
3  that principles of federalism, as embodied in the Tenth
4  Amendment, require a more stringent analysis of a request for
5  a Section 105 injunction in a Chapter 9 case compared to a
6  Chapter 11 case.  Again, the Court overrules this argument
7  and finds nothing in either the Tenth Amendment or principles
8  of federalism that suggests that any different or more
9  stringent analysis should be invoked.  The Court concludes,
10  rather, that in either event, whether Chapter 9 or Chapter
11  11, the Court has the authority to extend the scope of the
12  stay when necessary and appropriate.  Section 105(a) of the
13  Bankruptcy Code provides that the Bankruptcy Court may,
14  quote, "issue any order, process, or judgment that is
15  necessary or appropriate to carry out the provisions of this
16  title," close quote, and the Sixth Circuit has held that a
17  court may utilize its equitable power under Section 105(a) to
18  extend the automatic stay to nondebtor entities in unusual
19  circumstances, Parry versus Mohawk Motors of Michigan, 236
20  F.3d 299, Sixth Circuit, 2000, and American Imaging Services,
21  Inc. versus Eagle-Picher Industries, Inc., In re. Eagle-
22  Picher Industries, Inc., 963 F.2d 855, Sixth Circuit, 1992.
23  The Court also so held in Patton versus Bearden, 8 F.3d 343,
24  Sixth Circuit, 1993.
25           The case law is ambiguous on the standard that the

1   Court should apply in evaluating a request to extend the stay

2   under Section 105.  Is it this unusual circumstances test, or

3   is it the more traditional preliminary injunction four-factor

4   test?  The Court concludes that it is unnecessary to resolve

5   that ambiguity in this case.  Rather, the Court concludes

6   that under either of those standards, it is appropriate to

7   find that the stay extension motion requested by the debtor

8   should be granted.

9           The case law applying the unusual circumstances test

10  has noted that it should be and has been rare for a court to

11  find unusual circumstances.  Some courts say that the

12  automatic stay may be extended if the unusual circumstances

13  make the interests of the debtor and the nondebtor defendant

14  inextricably interwoven.  In this case, the Court readily

15  finds that the debtor -- the interests of the debtor and the

16  interests of those potential defendants to whom the debtor

17  seeks to extend the automatic stay are so intertwined that

18  the unusual circumstances test is met.  Any attempt by really

19  anyone to litigate the issues that the creditors have raised

20  or might raise regarding this bankruptcy case or the debtor's

21  eligibility to file this bankruptcy case against other

22  nondebtor parties such as the governor or the treasurer or

23  others may well have an ability on the debtor's -- may well

24  have an impact -- excuse me -- on the debtor's ability to

25  reorganize, so the Court finds that the unusual circumstances

1  test is met.

2       The Court further concludes that, to the extent it's

3  applicable, the traditional four-factor preliminary

4  injunction test is met as well.  Traditionally those four

5  factors are the likelihood of success on the merits of the

6  plaintiff's claim, the extent to which the moving party will

7  be prejudiced if the motion is denied, the extent to which

8  the party opposing the motion will be prejudiced if the

9  motion is granted, and any public interest considerations.

10  The case law firmly establishes that these are not each

11  elements that must be met.  They are, rather, factors and

12  considerations that the Court should take into account in

13  weighing its discretion on whether to grant the requested

14  relief.

15       Addressing first, therefore, the issue of the

16  debtor's likelihood of success on the merits, in the

17  circumstances of this case, the Court finds that it would be

18  entirely inappropriate to comment on the likelihood of the

19  debtor's success on the merits of any of the substantive

20  issues relating to eligibility or plan confirmation except to

21  say that the issues raised are very serious questions and

22  that these questions should be addressed, to the extent that

23  they are raised, in the context of eligibility to file this

24  case or perhaps in the plan confirmation context.  In any

25  event, the state court proceedings that the city of court --

1   specifically seeks to stay and enjoin are proceedings which
2   could conceivably have and may well have an impact on the
3   bankruptcy case here and the administration of this case or
4   on the debtor's assets.  As the Sixth Circuit noted in <u>Eagle-</u>
5   <u>Picher</u>, it is enough for this Court to find that there are
6   serious questions going to the merits, and the Court
7   certainly so finds here.

8           The Court further noted in that case, interestingly,
9   the following, quote, "The bankruptcy court's primary
10  emphasis on the last three factors," parenthetically not
11  including the likelihood of success on the merits, "for
12  granting a preliminary injunction was not error, especially
13  when considering the source of its authority to grant such an
14  injunction emanates from section 105 whose purpose is to
15  assist the court in carrying out the provisions of the
16  Bankruptcy Code, one of which is to oversee the
17  reorganization of a debtor's business.  In addition, as we
18  stated in <u>Friendship Materials</u>, a court may, in its
19  discretion, grant a preliminary injunction even when the
20  plaintiff fails to show a strong or substantial probability
21  of ultimate success on the merits of his claim, but where he
22  at least shows serious questions going to the merits and
23  irreparable harm which decidedly outweighs any potential harm
24  to the defendant if an injunction is issued."  As noted, the
25  second question -- oh, first, before concluding the first

```
1   element, the Court is -- the Court would find readily that
2   this factor, therefore, weighs in favor of granting the
3   requested stay and injunction.
4          The second factor, as noted, is the extent to which
5   the city will suffer prejudice if the requested injunction is
6   denied.  The Court readily finds that the city will suffer
7   substantial prejudice if this stay is denied.  The record
8   reflects that the creditors have already obtained temporary
9   restraining orders and a declaratory judgment and that the
10  city has felt compelled to appeal those.  Clearly, addressing
11  these issues both in the state court and in this Bankruptcy
12  Court is costly, expensive, and inefficient, and really
13  causes prejudice not only to the debtor but to the other
14  parties as well.  There is also, of course, a danger of
15  potentially inconsistent results.  So, accordingly, again,
16  the Court concludes that this favor -- does weigh in favor of
17  granting the requested injunction.
18         The third factor is the harm to others, which will
19  or may occur if the requested injunction is granted.  Again,
20  the Court readily finds that the creditors who have opposed
21  this extension will not really be harmed at all if this
22  motion is granted.  There is no prejudice to the substantive
23  rights of any party if this stay is extended, as the city has
24  requested.  All of the arguments, issues, and claims that
25  they could and might seek to make they can raise in this
```

1  court.  None of their procedural and substantive rights to
2  make their claims and arguments in this course -- in this
3  court in the course of this case are foreclosed by granting
4  this motion.  Further, the Court will fully retain the
5  opportunity and right of any creditor to seek relief from
6  this stay on an individual case-by-case basis, which, of
7  course, if granted, will permit that creditor to litigate
8  whatever their issues are in the appropriate court.  So,
9  again, the Court concludes that this factor weighs in favor
10  of granting the requested injunction.
11        The fourth consideration is whether granting the
12  requested injunction would serve the public interest.  In
13  normal two-party litigation or even in many bankruptcy cases,
14  this is not a significant consideration, but in the context
15  of a Chapter 9 case and especially this Chapter 9 case, the
16  Court concludes that it is probably the most important factor
17  of all.  Granting this motion will, the Court readily
18  concludes, enhance the debtor's likelihood of reorganization.
19  It will also create efficiency.  It will also assist in
20  expediting this reorganization, and it will reduce the city's
21  costs as well as those of other parties.  Accordingly, the
22  Court finds that this injunction is in the public interest,
23  and for all of these reasons, the Court readily concludes in
24  its discretion that the requested extension of the stay under
25  Section 105 should be granted.

1    Now, several creditors have objected on the grounds
2    that the debtor should have filed an adversary proceeding to
3    obtain this relief.  The Court concludes that this objection,
4    too, should be overruled.  The Court is satisfied that there
5    was sufficient notice and opportunity to be heard, and the
6    Court further observes that the imposition of this stay will
7    only have the effect of requiring those parties who seek
8    relief from it to file a motion for relief from it.  And in
9    rejecting this objection, the Court notes that there is
10   substantial merit in the city's concern that it would be
11   impossible for it to file an adversary proceeding naming as
12   defendants all of the parties that might be impacted by this
13   injunction.  Indeed, it would be a procedural and
14   administrative nightmare.
15           Finally, the Court rejects the argument that Section
16   105 cannot serve as the basis for an extended stay because it
17   creates new rights.  The Court finds that this injunction
18   does not create any new rights.  It simply assists the Court
19   in making the bankruptcy process more efficient and gives the
20   Court control over all of the issues that will have to be
21   resolved through the course of the bankruptcy.  In this
22   regard, the Court would further note that no cases have
23   rejected a Section 105 stay extension on this ground.
24           Before concluding, the Court would like to review
25   and state on the record what is not being decided here today.

1  Perhaps this is just as important for the record to reflect
2  as what is being decided here today.

3          The Court is making no ruling whatsoever on whether
4  the City of Detroit is eligible to be a debtor in Chapter 9.
5  The Court is making no ruling on whether the state
6  constitution prohibited the emergency manager's appointment
7  or prohibited the emergency -- excuse me -- prohibited the
8  governor from authorizing this Chapter 9 filing without
9  excepting from it the constitutionally protected pension
10 rights of its citizens.  The Court is not ruling on whether
11 the state court orders that were entered either pre- or post-
12 bankruptcy should be given preclusive effect under principles
13 of res judicata, collateral estoppel, Rooker-Feldman, or any
14 other preclusive doctrine.  The Court is not ruling on
15 whether any orders entered by the state court after this
16 bankruptcy case was filed violated the automatic stay.  The
17 Court is not ruling on whether the City of Detroit can
18 propose a feasible or confirmable plan in light of the state
19 constitution or any other consideration, for that matter.

20         All of these issues on which the Court is not ruling
21 today are fully preserved.  Of course, when and if these
22 issues are raised in an appropriate way, the Court will rule
23 on them in due course with adequate notice and opportunity to
24 be heard, and, of course, we will address the procedure for
25 dealing with some of these issues in our status conference on

```
 1   August 2nd.

 2          The Court will, therefore, grant both of these

 3   motions.  The Court wants the opportunity to review the

 4   proposed orders that were attached to the debtor's motions.

 5   In the event the Court wants to tweak or edit any of them, I

 6   would ask debtor's counsel to submit those orders in Word or

 7   WordPerfect form through the Court's order processing

 8   program.  I know for sure that one of the things I want the

 9   stay extension order to do is to be sure it explicitly

10   preserves the opportunity for parties to file motions for

11   relief from it under Section 362(d), but we'll take care of

12   that, so just submit the orders in the order processing

13   program as they were attached to the motion.

14          That's all I have.  Is there anything that anyone

15   else would like to raise at this time?

16          MS. PATEK:  Your Honor, on behalf of the public

17   safety unions, we did ask to broaden --

18          THE COURT:  You should identify yourself for the

19   record.

20          MS. PATEK:  I'm sorry.  Barbara Patek on behalf of

21   the public safety unions.  We did make a request for

22   affirmative relief, which was not listed among the items that

23   your Honor did not rule on with respect --

24          THE COURT:  Yes.  Thank you for reminding me of

25   that.  In the interest of due process, the Court must
```

1    conclude that it is necessary for you to file a specific

2    motion requesting that relief. If you think that expedited

3    consideration is appropriate, you can request that.

4            MS. PATEK: Thank you, your Honor.

5            THE COURT: Would anyone else like to raise

6    anything? Yes, ma'am.

7            MS. LENNOX: Thank you, your Honor. For the record,

8    Heather Lennox of Jones Day on behalf of the City of Detroit.

9    A procedural question, your Honor, about the matters that

10    you've set for hearing on August 2nd. There was no objection

11    deadline set for the four motions. Would your Honor wish to

12    set one?

13            THE COURT: I didn't set one in light of the

14    expedited consideration of them, so I'm really not inclined

15    to. If a party wants me to consider a written objection,

16    they should get it to me in time for me to consider it.

17    There was more specifically a question about a response time

18    on the 365 assumption motion, and we got a request -- a

19    motion for clarification as to that. I think that was

20    mentioned earlier today.

21            MS. LENNOX: Yes.

22            THE COURT: And I will deal with that separately in

23    a separate order that I will enter later today or tomorrow.

24            MS. LENNOX: Thank you, your Honor.

25            THE COURT: All right. Anything further? Mr.

1  Gordon.

2          MR. GORDON:  Thank you, your Honor.  For the record,

3  Robert Gordon on behalf of the Detroit pension systems.  I

4  just want one more item of clarification, if I could.

5          THE COURT:  Sir.

6          MR. GORDON:  You've referenced for the August 2

7  hearings that there's going to be a status conference, and I

8  know that there's some procedural motions that are to be

9  considered.  I believe there's also a motion seeking to

10  assume a forbearance agreement.

11          THE COURT:  That's the Syncora motion that we were

12  just talking about.

13          MR. GORDON:  I'm sorry.  I missed that.  I couldn't

14  hear her well.  Is that going to be a status conference then

15  or an actual --

16          THE COURT:  No.  I'm going to clarify that in my

17  order that I'm going to enter this afternoon.

18          MR. GORDON:  Very good.  Thank you, your Honor.

19  Sorry.

20          THE COURT:  Yeah.  Okay.  We'll be in recess.

21          THE CLERK:  All rise.  Court is adjourned.

22      (Proceedings concluded at 2:48 p.m.)

INDEX

<u>WITNESSES:</u>

    None

<u>EXHIBITS:</u>

    None


        I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.


/s/ Lois Garrett                    July 29, 2013
_____             _____
Lois Garrett