# EXHIBIT 5

```
 1                          STATE OF MICHIGAN
             30TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF INGHAM
 2                             CIVIL DIVISION

 3

 4      GRACIE WEBSTER and
        VERONICA THOMAS,
 5
                     Plaintiffs,
 6      v                                        Case No. 13-734-CZ
                                              Hon. Rosemarie Aquilina
 7      THE STATE OF MICHIGAN; RICHARD
        SNYDER, as Governor of the State
 8      of Michigan; and ANDY DILLON,
        as Treasurer of the State of
 9      Michigan,
                     Defendants.
10      _____/
        ROBBIE FLOWERS, MICHAEL WELLS,
11      JANET WHITSON, MARY WASHINGTON,
        and BRUCE GOLDMAN,
12
                     Plaintiffs,
13      v                                        Case No. 13-729-CZ
                                              Hon. Rosemarie Aquilina
14      RICK SNYDER, as the Governor of the
        State of Michigan; ANDY DILLON, as
15      the Treasurer of the State of Michigan;
        and the STATE OF MICHIGAN,
16
                     Defendants.
17      _____/

18             MOTION TO AMEND PRELIMINARY INJUNCTION

19                   MOTION FOR DEFAULT JUDGMENT

20                  MOTION FOR SUMMARY DISPOSITION

21         BEFORE THE HON. ROSEMARIE AQUILINA, CIRCUIT JUDGE

22           Ingham County, Michigan - Friday, July 19, 2013

23

24

25


                                                                    1
```

```
 1         APPEARANCES:

 2
           For Plaintiffs Webster, et al.:
 3                             JOHN R. CANZANO (P30417)
                               Smith & Radtke, PC
 4                             400 Galleria Officentre, Ste. 117
                               Southfield, MI  48034
 5
           For Plaintiffs Flowers, et al.:
 6                             WILLIAM A. WERTHEIMER (P26275)
                               Attorney at Law
 7                             30515 Timberbrook Lane
                               Bingham Farms, MI  48025
 8
           For State Defendants:
 9                             THOMAS QUASARANO (P27982)
                               BRIAN DEVLIN (P34685)
10                             Assistant Attorney General
                               State Operations Division
11                             P.O. Box 30754
                               Lansing, MI  48909
12

13

14
           REPORTED BY:        Melinda I. Dexter, RMR, RPR, CSR-4629
15                             Official Court Reporter
                               313 W. Kalamazoo
16                             Post Office Box 40771
                               Lansing, MI  48901-7971
17

18

19

20

21

22

23

24

25
```

```
 1                    T A B L E   O F   C O N T E N T S
 2
 3
 4
 5        WITNESSES:
 6            None
 7
 8
 9
10
11        EXHIBITS:
12            None
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Ingham County, Michigan
Friday, July 19, 2013 - At 11:25 a.m.

THE COURT: Okay. All right. Robert Flowers, Michael Wells, Janet Whitson, Mary Washington, and Bruce Goldman versus Rick Snyder, as the Governor of the State of Michigan; Andy Dillon, as the Treasurer of the State of Michigan; and the State of Michigan, Docket 13-729-CZ.

Counsel, your appearance for the record.

MR. WERTHEIMER: William Wertheimer, your Honor, on behalf of Plaintiffs.

MR. CANZANO: Your Honor, John Canzano. I'm not counsel in that case. I'm here on the Webster case.

THE COURT: Okay. Thank you.

MR. QUASARANO: Thomas Quasarano, Assistant Attorney General on behalf of the State Defendants.

MR. DEVLIN: And Brian Devlin, Assistant Attorney General.

THE COURT: Thank you.

Counsel?

MR. WERTHEIMER: Your Honor, Plaintiffs are here today in order to request that the Court enter either a corrected or amended preliminary injunction order. The Court, I'm sure, recalls the circumstances yesterday. We have had a chance to have your order typed. We reviewed it. There were some mistakes in it. For example, the heading still said temporary restraining order from the other case where it was clear from the record and from the body, even, of the order that it was a preliminary injunction. So we made that change. We typed everything. We put in the attorneys' names and the case name.

We made a couple of other changes, which I have indicated to the Court off the record on another copy of the injunctive order. And I would -- we would -- I'm happy to go over each of those, if the Court needs. Otherwise, I would request that the Court issue this preliminary injunction. I did not know whether the Court would want to refer to it as corrected, amended, or not refer to it at all. So I left that blank. But we would ask that the Court enter the order that we presented today to conform to the Court's ruling yesterday.

THE COURT: Counsel?

MR. QUASARANO: Yes, your Honor. As your Honor knows, we moved for a stay, and so I would ask either that the stay that was denied yesterday be identified in the modified order, or we can present another stay. I would assume that the Court would not grant a stay of this order consistent with yesterday. So either to identify it in this modified order as a stay was denied or just another issue, whatever the Court's preference would be.

THE COURT: Well, I'm going to sign this, and I haven't compared the two. I think we probably should call it an amended order.

MR. WERTHEIMER: Okay.

THE COURT: But let me just say that your stay is denied.

MR. QUASARANO: Thank you, your Honor. Maybe --

THE COURT: Counsel?

MR. QUASARANO: Maybe doing another separate order makes the most sense, and we can do that using the forms provided by the Court.

THE COURT: Okay. Thank you.

MR. QUASARANO: Thank you.

MR. WERTHEIMER: Your Honor, one other thing that may be related to that, and that is, the order the Court is entering, consistent with the order the Court entered yesterday, provides us with the relief that we were seeking by our motion which was scheduled for hearing Monday at 9 o'clock.

The Attorney General had also noticed a motion to dismiss for Monday at 9 o'clock. It was not timely in the sense that he did not give the appropriate time period for us to respond. In the reply brief I filed yesterday, we objected to that and said that we did not agree to expedited. There was no order expediting and suggested that the Court deny the -- their motion for that reason, but I raise it now just to indicate that that also is out there and that maybe we want -- we want another order dealing with that issue.

Our position is that it's not timely and that it shouldn't be heard Monday in any event. I don't know whether the Attorney General intends to proceed on Monday on it.

MR. QUASARANO: Your Honor, we do understand that under MCR 2.119, the motion for summary disposition is a 21-day period. We sought stipulation of counsel. They were kind enough to look at the briefs first to decide whether they would stipulate. They chose not to.

We also sought the endorsement on our notice of hearing from the Court to allow the hearing on Monday. Yesterday at bench we discussed if we needed to -- we needed to set a hearing date on the dispositive motions. The Court is at liberty to have those heard today or on Monday or at such other time. Our notice of hearing did say "or at such other time as the Court may order" on the notice of hearing itself. Thanks.

MR. CANZANO: Your Honor, if I could make a

THE COURT: Yes, sir.
                    MR. CANZANO: We've -- we've presented a motion this morning, an emergency motion, to advance the hearing on our motion for declaratory judgment that's set for Monday to today. It would be my intention to deal only with the declaratory judgment part of it today, not the injunction part of it. And they've already -- they've agreed that that can be expedited. I don't know that they've agreed that it can be expedited to today, but they agree that it could be expedited to Monday.
                    So if -- that part of it, either today or Monday, that would be a final declaratory judgment. My preference is to do it today.
                    THE COURT: Is that correct?
                    MR. QUASARANO: Well, I believe under 2.605(D), they can seek an expedited hearing, and certainly the Court has the authority to issue that. I think by not entertaining a dispositive motion, we're not going to have a complete argument. Mr. Devlin will be arguing for the State. But we do acknowledge what the court rule says, that's correct.
                    THE COURT: Well, are you objecting to having it heard today?
                    MR. QUASARANO: We will not object in the interest of judicial economy.

8

                    THE COURT: And your motion deals with that issue?
                    MR. QUASARANO: It's a (C)(8) motion that would address whether there are grounds for a declaratory judgment, yes.
                    THE COURT: Well, then --
                    I'm sorry?
                    MR. WERTHEIMER: I'm sorry. I may be confused now. Their motion that they filed in the Flowers case to dismiss deals with issues like ripeness. It's a (C)(4) and (C)(8) motion. Many of the facts have changed. I would think they would want to refile that, in any event. I mean, you know, to make an argument based on -- based on ripeness given what happened yesterday afternoon seems to me to be just, to use a lawyer's word, moot at this point. But I'm concerned only with their motion to dismiss in the Flowers case, not with anything related to Webster and whether we're to appear here Monday at 9 to -- per their notice or whether they've withdrawn that motion or not.
                    THE COURT: Okay. Well, let's deal with the Flowers case.
                    What is your intention in regard to Monday? Are you still asking the Court to hear your motion? It

9

that, or will you be amending that?
                    MR. QUASARANO: No. I'll speak for Mr. Devlin here for a moment only. In the notice of hearing, we indicated to advance it to that date because of all the other activities in this case or such other time as the Court may order.
                    I do point out that in the Flowers case in the prayer for relief is a reference to declaratory judgment. Both cases are asking for both reliefs; preliminary and declaratory judgment. Preliminary injunction motions were granted. Our brief talks about the alternative, assuming arguendo there were a filing, a Chapter 9 filing, and then we go into the basis for why there are grounds not to declare judgment, why there is some jurisdictional grounds.
                    So I think that the brief is sufficiently adequate to address all of the issues that are still at issue in this case. Certainly there has been a factual change and those factual changes don't need to be addressed.
                    MR. WERTHEIMER: I guess I just would reiterate if -- I need to know whether counsel is going forward on Monday with its motion to dismiss. I still haven't heard a yes or no.
                    THE COURT: His answer is yes, Counsel.

10

                    MR. WERTHEIMER: Well, okay. If the answer is yes, I would just point out that it's clear under the rules that it is not timely; that no order has entered from this Court.
                    THE COURT: You're right.
                    MR. WERTHEIMER: Okay.
                    THE COURT: You know what we're doing? We are under siege here. Well, we aren't; I'm not. Technically I am through paper, but all of you are. Detroit is. The State is. So I'm not going to go through the usual court rules and the time and all of that. You are all going to spend your weekend doing what lawyers do, and that's a lot of homework because we're going to have that hearing Monday unless you're asking me to do it now.
                    I'm going to hear everything because we're not going to piecemeal this. You all know the case. I know the case. I've done the homework. I don't think myself or my staff got any sleep last night. We've been doing research. I bet if I called all of your wives and asked if you got any sleep, they'd be saying, "No. When is my husband going to get some sleep," right? So we're going to have a hearing, and I don't care if it's today or Monday. I'll come here Saturday, if you would like. I don't care. Let's get some answers, let's get a bottom

11

**Page 12**

because that's where you all are headed. I don't care what side you're on. Someone is going up, right? So I have answers for you. Tell me your story. I've got the solution. You might not like it.

Can we move on?

MR. QUASARANO: We're prepared to go today, or we'll defer to brother counsel for Monday if more time is needed.

MR. WERTHEIMER: I'll go today. We can go right now, I mean.

THE COURT: Okay. I can go right now too. How about you, sir?

MR. CANZANO: I think we already agreed that Webster could go today.

MR. DEVLIN: Very well.

THE COURT: We have an agreement. I think that might be the only thing you all agree on. Hallelujah.

MR. QUASARANO: Other than it's very hot outside.

THE COURT: Yeah. We can agree on that too. Okay.

Counsel? Well, let's let these gentlemen enter so we don't make noise for the court reporter before we proceed.

Anybody else need to make an appearance?

**Page 13**

THE COURTROOM: (No verbal response.)

THE COURT: No? Okay.

MR. CANZANO: Which case would you like to go first; Webster or Flowers?

THE COURT: Mr. --

MR. WERTHEIMER: Well, he goes first on Flowers because it's his motion, so it's not my --

THE COURT: Okay. Whatever you'd like.

MR. DEVLIN: Thank you, your Honor. My name is Brian Devlin, Assistant Attorney General.

THE COURT REPORTER: Could you approach the podium, please?

THE COURT: Yeah. If everybody would speak from the podium. The mikes work better. The court reporter has better access to hear you. We'll make a better record, and obviously the Court of Appeals and the Supreme Court will need your record, please.

MR. DEVLIN: Thank you, your Honor. Brian Devlin appearing on behalf of the Defendants.

As Mr. Quasarano has mentioned, that obviously there's been a very dramatic change in circumstances since the brief was filed. The petition in bankruptcy has been filed as of yesterday. It changes some aspects of this case from the State's perspective, but not all.

**Page 14**

Flowers will apply to Webster as well. The fact that this case is now before the bankruptcy court means that there is a court of competent jurisdiction that can hear many of the concerns of the Plaintiffs. And that fact alone changes a lot of the ripeness arguments and things that you will see.

Nonetheless, it is the position of the State that there has not been harm at this point to the Plaintiffs.

THE COURT: Sir, there hasn't been harm because they haven't acted. What we have here, and I would like you to get to the point, because -- and you can make your record. I'm a very patient judge. I think most people will agree with that. But I have two very serious concerns because there was this rush to bankruptcy court that didn't have to occur and should not have occurred. And certainly Plaintiffs should not have been blind-sided, and this Court and this process should not have been ignored.

We have the Michigan Constitution Article IX, § 24 that forbids the Emergency Manager to file bankruptcy if pension plans or retirement system of this State or its political subdivisions are diminished or impaired. And the Constitution states:

The accrued financial benefits of

**Page 15**

each pension plan and requirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired.

And the bankruptcy court will be doing exactly that in its reorganization because the pensions are an unsecured asset. And under the bankruptcy reorganization, under a reorganization Chapter 9, there is no reaffirmation of debt. If I were doing a Chapter 7 and wanted to go in and reaffirm payments on my car, I could do so. But there is no way that you can go into bankruptcy court and say, "I am going to reaffirm the pension so that we don't disrupt that."

So what we're doing here is violating the Constitution. And then we have Michigan Complied Law 141.1552, which precludes the Emergency Manager from taking such actions. It states specifically in m -- (m) and (ii):

The emergency manager shall fully comply with the public employee retirement system investment act --

-- 1965 PA 314, and § 24 of
Article IX of the State
Constitution of 1963, and any
actions taken shall be consistent
with the pension fund's qualified
plan status under the federal
internal revenue code.

So tell me, sir, how do you get into bankruptcy court and not violate the Constitution of Michigan and not violate how the Emergency Manager is supposed to operate? Haven't we jumped the gun? What are you doing here, sir?

MR. DEVLIN: I can understand your Honor's concerns. The position of the State is that none of these impairments have occurred yet.

THE COURT: Only because the bankruptcy trustee hasn't got his teeth into it. It will occur. It's imminent, isn't it? Tell me how it's not imminent, sir?

MR. DEVLIN: I can't predict the future.

THE COURT: Yes, you can.

MR. DEVLIN: I cannot.

THE COURT: The bankruptcy court -- the bankruptcy court has a certain function. You're a lawyer. You understand the function of the bankruptcy court. That's why you ran there yesterday not slowly but in your running shoes, right?

MR. DEVLIN: I can't speak to that. I had nothing to do with it. But I can tell you about § 943 of the Bankruptcy Code, which affords all of the protections that we discussed in the brief that I've alluded to today.

None of those injuries have occurred at this point. For that reason, we believe the claim is still speculative. Of course those are legitimate concerns, but the court, the bankruptcy court can address them.

I referred to -- I'd also refer to *Straus*, the case cited in our brief too. If that injury has not occurred, as we contend, then it's an inappropriate remedy that the Plaintiffs are asking for today.

Now, obviously you and I don't see this injury in quite the same terms, but that is the position of the State. The injury has not occurred at this point.

THE COURT: That would be because the bankruptcy judge has not sat at his bench like I have and heard the case and started the reorganization, and that's the only reason. For me to believe what you're saying would be -- would make me Helen Keller who's not yet learned the alphabet.

MR. DEVLIN: I think anything that you and I that they have the power to address under 943, is just that; it's just speculation.

THE COURT: It's a certainty, sir. You filed in bankruptcy court, which is federal because you know that certainty. I don't know how you get around it because it's an unsecured asset that cannot be reaffirmed, and there is no case law, and you know that as well because all of us stayed up all night looking for case law, and there is no case law. You can't tell me that it can be segregated out and reaffirmed.

So these people that have this pension where it is supposed to be protected under the Constitution and under the legislative intent under the emergency manager legislation, it cannot survive. It cannot survive federal bankruptcy, and I have no jurisdiction there, and you know that. And that's why everybody made us wait as -- slowly we were waiting for your office to come here out of courtesy. We waited so we would have both sides present, which is what we do. We honor civility, and it was filed in order to bind everybody so this could occur, and it's cheating, sir, and it's cheating good people who worked.

And so what's going to happen is we're not honoring the Constitution, we're not honoring the emergency manager legislation, and we're not honoring good citizens, and we're also not honoring the President who took Detroit out of bankruptcy. What are we doing, sir?

MR. DEVLIN: Your Honor, I understand what you're saying, but I would take exception to the motion that somehow the Attorney General's Office delayed or dragged its feet or in any way tampered with the proceedings yesterday. Now, I wasn't here. I wasn't part of them, but I don't believe that's the case.

THE COURT: It looks that way, sir. If somehow that's not the case, I apologize, but it's the old saying if it looks like a duck, you know the rest.

MR. DEVLIN: Well, I don't want to speculate on who did what yesterday. As I said, I wasn't here.

THE COURT: Thank you.

MR. DEVLIN: But it is our position that until that injury occurs and in light of *Straus*, in light of the jurisdiction of the bankruptcy court, that this motion should be -- er, the motion is inappropriate. The State's motion should be granted --

THE COURT: Sir --

MR. DEVLIN: -- thank you.

THE COURT: Let me ask you this: If the injury occurs, isn't it then too late, much too late, way too

injury. The leg has been amputated, and we cannot fix it.

MR. DEVLIN: We don't know, is my position on that. We don't know, and there is opportunity for this very issue to be heard in the bankruptcy court.

THE COURT: But there is no opportunity in the bankruptcy court for them to fix the harm. Do you have any law that says the bankruptcy court can fix the pension fund because I haven't found that either, and I've looked?

MR. DEVLIN: Again, I understand the pension fund to be tremendously under funded. There are many problems here, far beyond what's gone on in the last 24 hours. But the court, the bankruptcy court does have jurisdiction to hear these arguments, to note the Michigan Constitutional provisions, and to order what it feels it must order.

THE COURT: Okay.

MR. DEVLIN: Thank you.

THE COURT: Thank you.

MR. WERTHEIMER: Your Honor, I'll be brief. First, I would just point out to the Court that this is a motion under C -- MCR 2.116(C)(4), (5), and (8): That is, it's a claim that there is no jurisdiction over the subject matter; it's a claim that my clients have no

20

capacity to sue because apparently they're not being injured; and it's a claim that we have failed to state a claim.

As to the law relating to those three points, I would rely upon the briefs that I have filed, including the reply brief that I filed yesterday in which I did take the position that we should not hear -- that the Court should not hear the motion to dismiss but in which I dealt with all of those issues, and I won't repeat those arguments.

I would just point out a couple of things: First of all, counsel says that he cannot predict the future. The Detroit Emergency Manager, who is a competent lawyer familiar with bankruptcy, has predicted the future, and we quoted him in our complaint as saying, essentially, that once he gets into bankruptcy, the constitutional rights of our clients will disappear, will be "trumped" in his words or in the words of the reporter quoting him. And I think that was -- there was an interview and there was also his statements made to the Detroit Free Press Editorial Board.

But the point being that the Detroit Emergency Manager has had no reluctance to predict the future, and his prediction is consistent with our claim and with the

21

just simply is not credible for an attorney for the Governor and the State Treasurer to come here today and say he can't predict the future when we indicated in our complaint that the future could be predicted.

I would also point out that since we were in court yesterday, we now have not just the bankruptcy but filings related to that bankruptcy. I'm not going to introduce these documents, but I understand that counsel in the Webster case that will be argued when we're done here will be introducing them. I would simply point out that we've got correspondence back and forth between the Detroit Emergency Manager and the Governor requesting the authorization and the Governor approving the authorization, in which there is not a word mentioned about Article IX, § 24 of the Michigan State Constitution.

Our Governor does not feel that that's relevant. He goes on for pages in his authorization, obviously for public relation's purposes, talking about how deeply he cares about the city of Detroit, etcetera, etcetera, but not one word about Article IX, § 24 of the Constitution. And, of course, no such word from Mr. Orr in his request to the Governor.

So counsel's essentially saying "No harm yet. Don't worry. Maybe bankruptcy court will take care of

22

it." But the people who are taking it into bankruptcy, have taken it into bankruptcy have made very clear they're not going to take care of it in bankruptcy.

And finally just the obvious point, but I think needs to be reiterated with all the flurry going on that the whole point of injunctive relief is to prevent a harm that has not yet occurred, and that's all we're seeking with our overall lawsuit and all we were seeking with our motion for preliminary injunction, which this Court has already granted. Thank you.

MR. QUASARANO: Your Honor, I think that the State's briefing and argument sufficiently presents the State's position, but I know the Court is patient, and I would ask the Court's indulgence on the one matter of my appearance here yesterday, and I would like to make this clear for the record, if I may, but for Mr. Wertheimer, who is counsel for the Flowers and others case, I would not have known that the General Retirement System of the City of Detroit, et al., even had a TRO motion scheduled.

The only communication I had with counsel for that, those Plaintiffs, was the night before asking if we could accept service on the Governor, which, as the Court knows, we're barred from accepting service on behalf of a State Defendant. Until the State Defendant is served, we

23

Page 24:

I was told there would not be any preliminary injunction or TRO sought in that case. I do understand that situation had changed in the hours after that. But, but for Mr. Wertheimer calling me, counsel in another case, I would not have known. When he called me, and the transcript yesterday says it was around 3:30 or so, and then I arrived as quickly as I could walk over here. So there was no delay on behalf of the Attorney General's Office to be here, to represent the State's interest, to be here to answer this Court's questions. And any delay at all was because we were notified by counsel for the Plaintiffs yesterday that they intended to bring the motion. Thank you for letting me clarify that.

THE COURT: Thank you.

Anything further, sir?

MR. DEVLIN: Nothing further. Thank you.

THE COURT: Defendants have filed a motion for summary disposition pursuant to (4), which is:

> The Court lacks jurisdiction of
> the subject matter.

This Court absolutely has jurisdiction of the subject matter. It's a state question. I know they've removed it to federal bankruptcy court, but we still have very serious state questions. We have the State Constitution, Article IX, § 24. We have an emergency

Page 25:

manager statute, and we have a Constitution at issue. State issues are within the purview of this Court. I don't care that it was removed to bankruptcy court. There is nothing here that tells me it was properly removed to federal bankruptcy court because there is a procedure in place of how it gets removed. And this Court does not believe it was properly placed in the hands of the bankruptcy court because it is going to affect pensions. Once it affects pensions, which is clearly what it's going to do, it's in violation, and the Governor can't give permission for it to go to bankruptcy court. It's very clear. I think a first-year law student understands the concept. And I know the Governor is not a lawyer, but he has very well paid lawyers who do understand the concept.

> The party asserting the claim
> lacks the legal capacity to sue.

That is MCR 2.116(5). A party asserting the claim lacks the legal capacity to sue? How is that possible? They're interested parties. Absolutely they have capacity to sue. The pension's involved, the pension related to the parties. I don't see any problems there.

And then we have (8), which is always a

Page 26:

> The opposing party has failed to
> state a claim on which relief can
> be granted.

I see problems all over the place. I stated them. I don't think I need to be redundant. Clearly there are numerous claims and issues. I won't be redundant. The relief requested is denied. Motion for summary disposition is denied.

MR. WERTHEIMER: Thank you, your Honor.

THE COURT: Who's preparing the order?

MR. QUASARANO: I'll be preparing it for you, Judge.

THE COURT: Thank you, very much, sir.

MR. QUASARANO: Thank you.

THE COURT: Next matter?

MR. WERTHEIMER: We are -- I am done relative to the Flowers case.

THE COURT: Thank you, very much, sir.

MR. WERTHEIMER: I'll vacate. I think there are others lawyers in the room with another related case. So I'll wait in the courtroom but vacate counsel table.

THE COURT: Thank you.

MR. WERTHEIMER: Thank you.

MR. CANZANO: Your Honor, John Canzano on behalf of the Plaintiffs in the Webster case. I would

Page 27:

like to clarify the relief that we are seeking here today. We -- our complaint sought declaratory judgment and preliminary injunction. Today we are seeking only a declaratory judgment.

I have taken the liberty of preparing an order for declaratory judgment which I can present when I'm done, and the Court may or may not want to say everything that I've said in there, but I think we are entitled to that relief. The briefs -- this has all been briefed already. I don't need to go over that.

The State's defense to our motion did not contest the facts and did not contest the substance of the merits of the law, which is that the Constitution prohibits diminishment of pension -- accrued pension benefits. They simply -- they simply said the case is not ripe, and there is not an actual controversy for a declaratory judgment.

Now, after yesterday, it's obviously ripe. We cited a case in our reply brief, *City of Lake Angelus*, which amazingly is almost on all fours with this case. I won't describe that case again except to say that that was a case where the Attorney General made the argument that there was no injury and there was no need for declaratory judgment because a request to a tribunal had

court correctly ruled that the -- there is an actual controversy because the parties need the court to tell them what their rights and obligations are so they know what to do in the future; whether this tribunal could overrule a local ordinance which prohibited sea planes on Lake Angelus, even though they hadn't been asked and they hadn't ruled. So that part is exactly what we have. Now we have the bankruptcy has been filed.

I would like to offer a couple exhibits, which are the July 16th letter from Emergency Manager Orr requesting authorization to file for Chapter 9, which amazingly this happened on Tuesday, and none of our -- none of our crack reporters knew about this. Nobody knew about this until yesterday. This was a secret letter.

And the July 18th letter from yesterday of the Governor authorizing Emergency Manager Orr to file for Chapter 9. And I think if you look at these two letters, it is crystal clear what the judge has already concluded in the prior case; that not only does the bankruptcy threaten to impair but that that is the goal and the intent of the emergency manager is to impair accrued pension benefits in bankruptcy.

I'll give these to opposing counsel. These are -- they're a matter of public record now. I just wrote Exhibit A and Exhibit B on them.

28

(Approaching the bench.)
THE COURT: All right. Thank you.
MR. CANZANO: As to the merits, I think again it is very clear this isn't a case where you need case law. You just read the Constitution. It says accrued pension benefits shall not be diminished or impaired. The Constitution says that. The Emergency Manager law says the Governor can authorize the Emergency Manager to file for Chapter 9. And it doesn't prohibit that -- it doesn't require that pension benefits be protected when he files for Chapter 9. And it is, therefore, unconstitutional to that extent.
THE COURT: Is there any objection to the Court receiving Exhibit A and B?
MR. DEVLIN: No objection, your Honor.
THE COURT: A and B are received. Thank you.
(At 12:04 p.m., Exhibit A and Exhibit B is received.)
MR. CANZANO: So the emergency manager law is unconstitutional to the extent that it allows the Governor to authorize a Chapter 9 filing which threatens to diminish or impair pension benefits. And the Governor is prohibited by Article IX, § 24 from authorizing an emergency manager to proceed under Chapter 9 in a manner

29

such action by the Governor is without authority and in violation of Article IX, § 24. And what happened yesterday was a violation of the Constitution.

Now, my declaratory judgment order declares these statements. It also has a paragraph at the end that says:

> In order to rectify his
> unauthorized and unconstitutional
> actions described above, the
> Governor must: One, direct the
> Emergency Manager to immediately
> withdraw the Chapter 9 petition
> filed on July 18th. And, two,
> not authorize any further Chapter
> 9 filing which threatens to
> diminish or impair accrued
> pension benefits.

Now, this is just a declaratory judgment. So it is my hope that if the Court is willing to enter this, that the Governor will obey his oath of office and follow what the Constitution requires. And so -- and if he does not, then we may be back here on -- with another iteration of this that requires some type of injunctive relief.

At this time we're not seeking injunctive

30

relief, so I would -- I would withdraw our request for preliminary injunction without prejudice. And I'd also ask, if this order is entered, that the temporary restraining order entered yesterday be vacated or expired, and all we want is a declaratory judgment right now.

THE COURT: And the reason to vacate or expire the temporary restraining order?
MR. CANZANO: Because now we have the default judgment and the TRO. I don't remember what the court rule says, but it cannot only exist for a short period of time on its own, and this is the tact that we would like to take because we would like to tell the Governor, "This is what you're supposed to do." And then if he doesn't do that, then we'll then -- we'll reassess our options.
THE COURT: Okay. Thank you.
MR. CANZANO: May I present my draft order?
THE COURT: Yes. Have you presented it to the other side?
MR. CANZANO: I have not.
THE COURT: Thank you.
MR. QUASARANO: We've looked at this, your Honor.
MR. CANZANO: Just as to the matter of the

31

anyone is arguing -- I don't think the Attorney General is arguing that our case is stayed by the bankruptcy court because we're not suing the Emergency Manager. We're only suing the Governor and the Treasurer and the State of Michigan, and they're not -- they're not in the bankruptcy court. They're not the debtor, so that's an argument that has been raised. But, just for clarity, I wanted to point that out. That's all I have.

THE COURT: Thank you.

Response?

MR. DEVLIN: Thank you, your Honor. Brian Devlin again on behalf of the Defendants. I won't repeat the discussion we had on the Flowers case. Much of that applies. The relief sought in each of these cases is the same position of the State, is that the bankruptcy court jurisdiction has a great effect on this, and that the reliefs that might be desired by the Plaintiffs are available through that court. Furthermore, we'd cite the *Straus* case as well in this reply.

I would like to call the Court's attention to just one other thing: There was reference made to the Governor's obligation to uphold the terms of the United States -- of the State Constitution but that also applies to the United States Constitution, and bankruptcy court is certainly someone he may have to answer to as well.

32

So that should not be lost sight of.

Finally, I wanted to point out that we do have a motion for summary disposition pending in this case as well. And I would rely on the arguments in the brief. And the ones I've just restated as well to ask that that relief be granted. Thank you.

THE COURT: Are you asking that that be heard now, or would you like me to make a ruling on that now?

MR. DEVLIN: I think you could probably make a ruling on it without further argument.

THE COURT: I think so too.

MR. DEVLIN: All right.

THE COURT: Okay.

MR. DEVLIN: Thank you.

THE COURT: Anything further?

MR. CANZANO: Nothing further, your Honor.

THE COURT: All right.

As to the motion for summary disposition in regard to Defendants' motion is denied. I'm going to incorporate the transcript, the arguments of the Flowers matter into this file. I think that in order to have a complete argument, we're going to consolidate the arguments and the files for the purpose of today because they are really united. They are part and parcel of the same arguments. It's not -- it's hard to comprehend the

33

transcript without looking at both.

So I'm going to direct the court reporter to treat today as one transcript despite there being two docket numbers, and I didn't even call both of them, but we just sort of started, but we're really dealing with Dockets 13-734-CZ and 13-729-CZ.

So the motion for summary disposition in regard to 13-734-CZ, and that's Defendants' motion for summary disposition is denied based on the same rationale the Court had and reasoning in the prior case.

In regard to the request for declaratory judgment, I think it is imperative that the Court sign this. It's absolutely needed. And the Governor, I have to believe, took his oath in all sincerity to uphold the United States Constitution and the State of Michigan Constitution. I hope he rereads certain sections and reconsiders his actions.

I am finding the actions that have been taken in regard to filing this action in the bankruptcy court as overreaching and unconstitutional as it applies to what the Detroit Emergency Manager Kevyn Orr has done in conjunction with the Governor.

So I find it absolutely necessary to sign this order of declaratory judgment. I am also going to order, in addition to what you have crafted here, that a copy of

34

this order be forwarded to President Obama. I know that he's watching this, and he's bailed out Detroit. If this is going to ultimately proceed to bankruptcy without anyone paying attention to Michigan's Constitution and to what the legislature drafted and to what the Governor himself signed into law, then there will ultimately be a request that Obama will have to look at the pension, so he might as well follow this. He said in the news that he's following this. He might as well see what we've all done here. It's that important to the State of Michigan and to the thousands of people who will be affected, and ultimately all of the taxpayers of the state of Michigan are going to be affected because we will all have to pick up the tab if this is not honored as it should be.

Additionally, I am asked that the temporary restraining order be quashed and nullified, so that is now withdrawn, and it expires today at 12:15. And the order of declaratory judgment is being signed as that expires.

Is there anything else for the record?

MR. WERTHEIMER: Not for the Plaintiffs in Flowers, your Honor.

MR. QUASARANO: I'm obliged, your Honor, to move for a stay of enforcement of the order of

35

```
 1              THE COURT:  You are obliged.  I am obliged as
 2    well to deny.
 3              MR. QUASARANO:  I'll have an order ready.
 4    Thank you, Judge.
 5              THE COURT:  I look forward to signing all of
 6    those orders today.  I will be in until 5 or so.  And I
 7    haven't looked at Monday's docket.  Have we taken care of
 8    all of Monday or not?
 9              MR. WERTHEIMER:  I think, as to the Plaintiffs
10    in Flowers, you have because our motion was for
11    preliminary injunction, which you have granted and will
12    be providing us with that order, and their motion was for
13    summary disposition, which you've denied.  I believe that
14    was all that was up in Flowers.  So that the Flowers case
15    continues, but there is nothing up for Monday in Flowers.
16              MR. QUASARANO:  Defendants concur in Flowers.
17              THE COURT:  Okay.  My law clerk is making
18    copies, multiple copies, of the order I've just signed.
19              I am here on a moment's notice as you all have
20    become accustomed to if you need me.
21              MR. WERTHEIMER:  Thank you, your Honor.
22              THE COURT:  That's all for the record.
23              MR. CANZANO:  Thank you, your Honor.
24    Appreciate the Court's ability and willingness to help us
25    out on this urgent time.
                                36
```

```
 1              THE COURT:  Thank you.
 2                    (At 12:16 p.m., the matter is
 3                     concluded.)
                                37
```

```
1      STATE OF MICHIGAN)
                         ) SS.
2       COUNTY OF INGHAM)

3

4                    CERTIFICATE OF REPORTER

5

6            I, Melinda I. Dexter, Certified Shorthand

7       Reporter, do hereby certify that the foregoing

8       **37 pages** comprise an accurate, true, and complete

9       transcript of the proceedings and testimony taken in the

10      case of **Gracie Webster, et al.** versus **Richard Snyder, et**

11      **al., Case Nos. 13-734-CZ and 13-729-CZ, on Friday,**

12      **July 19, 2013.**

13               I further certify that this transcript of the

14      record of the proceedings and testimony truly and

15      correctly reflects the exhibits, if any, offered by the

16      respective parties.  WITNESS my hand this the nineteenth

17      day of July, 2013.

18

19

20

21

22                        _____
                          Melinda I. Dexter, RMR, RPR, CSR-4629
23                        Official Court Reporter
                          313 West Kalamazoo
24                        Post Office Box 40771
                          Lansing, Michigan 48901-7971
25
```

38