UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------------x
:
In re                                                                    : Chapter 9
:
CITY OF DETROIT, MICHIGAN,                          : Case No. 13-53846
:
           Debtor.                                   : Hon. Steven W. Rhodes
:
---------------------------------------------------------x

# BRIEF IN OPPOSITION TO CREDITOR MICHAEL BEYDOUN'S MOTION FOR RELIEF FROM AUTOMATIC STAY[1]

      The Stay Relief Motion is one of several motions for relief from the Automatic Stay filed at the commencement of this chapter 9 case by parties seeking to avoid the consequences of the bankruptcy filing on pending litigation. Such relief would undermine the breathing spell afforded to the City and can only be granted upon a demonstration of sufficient cause and where the scope of requested relief is appropriate. The Plaintiff in this action fails to identify any basis to afford him the requested right to proceed as if the bankruptcy had not occurred.

---

[1]    Capitalized terms not otherwise defined herein have the meanings given to them in the Debtor's Objection to Creditor Michael Beydoun's Motion for Relief from Automatic Stay, filed contemporaneously herewith.

The Plaintiff complains that the City did not pay his Judgment prior to the commencement of this chapter 9 case but instead elected to exercise its right to request an appeal of the Judgment to the Michigan Supreme Court. Because the bankruptcy filing intervened shortly thereafter, the Plaintiff asks this Court to grant relief from the Automatic Stay to allow the Appeal to continue and — in the event the Plaintiff prevails in that proceeding — to allow the Plaintiff to impose a bond or other "collection relief" on the City. Stay Relief Motion ¶ 11.

The Plaintiff alleges that "cause" exists for the relief he requests based upon the City's alleged bad faith in filing its chapter 9 petition specifically to avoid paying the Judgment. Nothing in the Stay Relief Motion, however, establishes any bad faith or other cause in support of relief from the Automatic Stay. Moreover, the Plaintiff offers no support whatsoever for his extraordinary request that the Court allow him not only to liquidate, but also collect, his unsecured prepetition claim outside the treatment afforded to unsecured creditors under a confirmed chapter 9 plan of adjustment. No such relief – effectively to be exempted from the entire chapter 9 process – is available.

As of the Petition Date, approximately 700 lawsuits were pending against the City. See Creditor List at Schedule G. Absent the enforcement of the Automatic Stay, the City would be spending its already extremely limited resources defending against these cases rather than focusing its efforts and

resources on its restructuring. Allowing the Appeal, or any of the other routine litigation pending against the City, to proceed *ad hoc* outside of the claims resolution process undermines one the most fundamental protections afforded to the City as a chapter 9 debtor.

The Plaintiff has provided no basis to proceed outside of the normal claim resolution process established under the Bankruptcy Code. Accordingly, for the reasons set forth below, the City submits that no cause exists to lift the Automatic Stay and requests that the Stay Relief Motion be denied.

## ARGUMENT

Section 362(a) of the Bankruptcy Code provides in relevant part that:

> a petition filed under . . . this title . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 362(a). The Automatic Stay "is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." Javens v. City of Hazel Park (In re Javens), 107 F.3d 359, 363 (6th Cir. 1997) (quoting H. Rep. 95-595, at 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6296).

Section 362(d) of the Bankruptcy Code authorizes a bankruptcy court to grant relief from the Automatic Stay in limited circumstances. See 11 U.S.C. § 362(d). In particular, section 362(d)(1) of the Bankruptcy Code provides that a party in interest may obtain relief from the Automatic Stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d)(1). In determining whether cause exists, "the bankruptcy court should base its decision on the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code." Plastech, 382 B.R. at 106 (quoting In re C & S Grain Co., 47 F.3d 233, 238 (7th Cir. 1995)).

"The Bankruptcy Code does not define 'cause' as used in [section] 362(d)(1). Therefore, under [section] 362(d), 'courts must determine whether discretionary relief is appropriate on a case by case basis.'" Chrysler LLC v. Plastech Engineered Prods., Inc. (In re Plastech Engineered Prods., Inc.), 382 B.R. 90, 106 (Bankr. E.D. Mich. 2008) (quoting Laguna Assocs. L.P. v. Aetna Casualty & Surety Co. (In re Laguna Assocs. L.P.), 30 F.3d 734, 737 (6th Cir. 1994)). The determination of whether to grant relief from the Automatic Stay "resides within the sound discretion of the Bankruptcy Court." Sandweiss Law Center, P.C. v. Kozlowski (In re Bunting), No. 12-10472, 2013 WL 153309, at *17 (E.D. Mich. Jan. 15, 2013) (quoting In re Garzoni, 35 F. App'x 179, 181 (6th Cir. 2002)).

Where, as here, bad faith is alleged as the basis for cause to lift the Automatic Stay, courts in this circuit have found that the following factors are instructive as *indicia* of bad faith related to the bankruptcy filing:

(1) the debtor has one asset;
(2) the prepetition conduct of the debtor has been improper;
(3) there are only a few unsecured creditors;
(4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court;
(5) the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;
(6) the filing of the petition effectively allows the debtor to evade court orders;
(7) the debtor has no ongoing business or employees; and
(8) the lack of possibility of reorganization.

Laguna Assocs., 30 F.3d at 738.

Considered alongside the facts and circumstances of the Laguna Associates case relied upon by the Plaintiff, it is apparent that the Plaintiff cannot establish bad faith that might justify a finding of cause to lift the Automatic Stay in this case. The Laguna Associates case represents a typical example of a bad faith filing. In that case, a lender loaned money to a borrower for the purchase and construction of an apartment complex. Id. at 736. The loan was secured by a lien on the property. Id. Contrary to the terms of the loan agreement, the borrower transferred the apartment complex to a newly created, single-asset entity owned indirectly by the borrower. Id. The newly created entity immediately filed a

petition for relief under chapter 11 of the Bankruptcy Code to prevent the lender's foreclosure. Id. Applying the foregoing factors, the United States Court of Appeals for the Sixth Circuit affirmed the bankruptcy court's decision that the debtor's bad faith filing established cause justifying relief from the Automatic Stay:

> Created at the eleventh hour, the debtor was not engaged in an ongoing business, lacked a sufficient cash flow, had few unsecured creditors, and claimed as its sole asset a heavily encumbered property. Furthermore, [the debtor], apparently driven by a desire to prevent foreclosure on [the property], filed for bankruptcy just one day after gaining possession of the property from [the borrower].

Id. at 738.

By contrast, the Plaintiff does not even allege that five of the eight factors identified in the Laguna Associates case are applicable here, presumably conceding that the majority of factors do not support a bad faith finding. Plaintiff's Brief at 1-2. Indeed, it is beyond dispute that: (a) the City has substantial assets; (b) the City has tens of thousands of unsecured creditors, including many other similarly situated parties to approximately 700 civil actions involving the City; (c) there is no implicated City property serving as collateral and facing imminent foreclosure; (d) the City has widespread ongoing operations; and (e) the City commenced this case with the intention to restructure its affairs through confirmation of a chapter 9 plan of adjustment. This is not a single asset case where the debtor has ceased operations and is evading foreclosure on a fully

encumbered property by commencing a bankruptcy case with no prospect of rehabilitation.

Although the Plaintiff effectively concedes five of the <u>Laguna Associates</u> criteria, he contends that this chapter 9 case nevertheless was filed in bad faith because: (a) the City's and/or the Emergency Manager's conduct was improper; (b) the parties had proceeded to a standstill in the state court litigation, which the City had lost at the lower court level; and (c) the commencement of this chapter 9 case effectively allowed the City to evade the Judgment. Plaintiff's Brief at 2.

As an initial matter, none of the conduct described by the Plaintiff was improper. The Plaintiff's allegation that the City offered to settle the Judgment for a reduced payment prior to the Petition Date in light of the City's difficult financial circumstances and the well-publicized risk of a possible chapter 9 filing — even if proven — is not remarkable and is not bad faith. Moreover, given the billions of dollars of aggregate liabilities facing the City, which dwarf the amount awarded to the Plaintiff by the lower court, and the City's cash burn over the past several years, it cannot reasonably be asserted that the City commenced this chapter 9 case for the purpose of avoiding the payment of the Judgment.

Ultimately, the Plaintiff offers no reasonable basis for his argument that the Emergency Manager's conduct in commencing this chapter 9 case was

improper or fraudulent. For example, the Plaintiff cites the following as examples of this purported improper conduct: (a) prior to commencing this case, the Emergency Manager did not sell the art collections held in the Detroit Institute of Art or sell or lease Belle Isle; and (b) several other cities in the State of Michigan have operated under an emergency manager for longer periods than the City of Detroit without commencing chapter 9 cases. The Plaintiff, however, fails to recognize that the facts and circumstances surrounding the potential sale of certain of the City's assets and the financial conditions of other Michigan cities are neither probative of, nor relevant to, the good or bad faith of the Emergency Manager's actions with respect to the Appeal and the commencement of this chapter 9 case.

In another attempt to establish bad faith, the Plaintiff wrongly argues that the litigation between the Parties had come to a standstill as of the Petition Date. In fact, as of the Petition Date, the City was actively pursuing an appeal of the Judgment to the Michigan Supreme Court, as demonstrated by the Plaintiff's own efforts to obtain expedited consideration of the Application for Leave to Appeal before the commencement of this chapter 9 case.

With respect to the third and final factor cited by the Plaintiff, the commencement of this chapter 9 case will not allow the City to evade the Judgment. The claims process has not yet begun in this case. The City intends to file its amended creditor list in accordance with sections 924 and 925 of the

Bankruptcy Code as soon as possible. Thereafter, the City will seek a bar date for claims and send notice of such to creditors. The Plaintiff and all other similarly situated creditors may assert their claims at that time to be resolved through the claims resolution process. The City's future chapter 9 plan will provide the sole mechanism for treatment of allowed claims.

Accordingly, the City intends that this chapter 9 case provide a centralized forum for the administration and resolution of the Plaintiff's claim with others. See In re Hermoyian, 435 B.R. 456, 464 (Bankr. E.D. Mich. 2010) (stating that an underlying policy of the Bankruptcy Code is the provision of a centralized forum for claims resolution and orderly distribution of assets). In sum, the Plaintiff provides no reasonable basis that would remotely suggest that the City commenced this chapter 9 case in bad faith to evade paying the Judgment.

In addition, the Plaintiff will not be prejudiced by the continuation of the Automatic Stay with respect to the Judgment and the Appeal. In the Stay Relief Motion, the Plaintiff attempts to justify his request to receive preferential treatment over other creditors of the City, in part, by arguing that, as a tort claimant, the Plaintiff is an involuntary creditor of the City. Plaintiff's Brief at 6. The Plaintiff ignores that the City has many other similarly situated creditors, and the Automatic Stay benefits the creditor body at large by ensuring their equal treatment and preventing a race to the courthouse. See H.R. REP. NO. 95-595, at

ATI-2574370 -9-
13-53846-tjt    Doc 572    Filed 08/22/13    Entered 08/22/13 15:54:26    Page 9 of 12

340 (1977) ("The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors."). The imposition of the fundamental protections offered by the Automatic Stay exposes the Plaintiff to no particularized harm over and above that of any other similarly situated creditor of the City.

By contrast, requiring the City to continue the Appeal would distract the City from its efforts to restructure and further divert its scant resources. In addition, by the Stay Relief Motion, the Plaintiff seeks not only to liquidate, but also to collect, the Judgment through the imposition of bonds or other "collection relief" against the City.[2] Stay Relief Motion at ¶ 11. The Plaintiff apparently fails to appreciate basic bankruptcy principles, which clearly provide no basis to elevate the Plaintiff's unsecured prepetition claim to quasi-secured or priority status.

---

[2] Although the nature of the bond requested by the Plaintiff is not clear from the Stay Relief Motion, to the extent the Plaintiff requests the imposition of a bond pending the conclusion of the Appeal, the City notes that such bonds are prohibited pursuant to Michigan rules of civil procedure. See MCR § 2.614(E) ("In an action or proceeding in which the state, an authorized state officer, a corporate body in charge of a state institution, or a municipal corporation, is a party, bond may not be required of that party as a prerequisite to taking an appeal or making an order staying proceedings.").

There is no basis to justify payment on account of the Plaintiff's asserted claim outside of a chapter 9 plan.

## CONCLUSION

Allowing the continuation of actions such as the Appeal would undermine the protections of the Automatic Stay and jeopardize the City's efforts to restructure. The City sought relief under chapter 9, in part, to obtain the "breathing spell" afforded by the Automatic Stay and the consequent protection from its creditors while it restructures its affairs and prepares a plan of adjustment. The City's finances would be further depleted and its personnel distracted from their mission to operate the City and restructure its affairs if it were denied this basic protection of chapter 9 and forced to defend itself against numerous actions such as the Appeal in various courts. Accordingly, consideration of the balance of the hardships between the parties and the overall goals of chapter 9 confirms that no cause (much less sufficient cause) exists to justify relief from the Automatic Stay for the Plaintiff and similarly situated creditors.

WHEREFORE, for the foregoing reasons, the City respectfully requests that this Court: (a) deny the Stay Relief Motion; and (b) grant such other and further relief to the City as the Court may deem proper.

Dated: August 22, 2013         Respectfully submitted,


/s/ Heather Lennox
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California  90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 963-6420
Facsimile:  (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY