UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

```
-------------------------------------------------------x
                                        :
In re                                   :    Chapter 9
                                        :
CITY OF DETROIT, MICHIGAN,              :    Case No. 13-53846
                                        :
               Debtor.                  :    Hon. Steven W. Rhodes
                                        :
                                        :
-------------------------------------------------------x
```

# DEBTOR'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES

Debtor submits the following requests for production of documents to the Michigan Council 25 of the American Federation of State, County, and Municipal Employees, AFL-CIO, and Sub-Chapter 98, City of Detroit Retirees (the AFSCME retiree Chapter for City of Detroit retirees) (collectively, "AFSCME") pursuant to this Court's order of August 2, 2013 (DE #0280). All responsive documents are to be produced to Debtor's counsel in accordance with the Instructions below, unless otherwise agreed by Debtor and AFSCME.

1

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions shall apply to Debtor's requests for production:

1. "Retirement Systems" means the General Retirement System of the City of Detroit ("GRS") and the Police and Fire Retirement System of the City of Detroit ("PFRS"), collectively.

2. "Document" shall be used in the broadest sense and includes, but is not limited to, the following items, whether printed or recorded or reproduced by any other mechanical process, or written or produced by hand, and whether sent or received or neither, and further includes any and every manner of information recordation, storage, transmission, or retrieval, including, but not limited to (a) typing, handwriting, printing, or any other form of writing or marking on paper or other material; (b) tape recordings, microfilms, microfiche, and photocopies; and (c) any electronic, magnetic, or electromagnetic means of information storage and/or retrieval, including, but not limited to, electronic mail and responsive attachments, optical storage media, computer memory chips, computer tapes, hard disks, compact discs, floppy disks, and any other storage medium used in connection with electronic data processing (together with the programming instructions and all other material necessary to understand or to use such tapes, disks, or other storage materials).

3. "Communication" includes every manner of transmitting or receiving facts, information, opinions, or thoughts from one person to another person, whether orally, by documents, writing, e-mail, or copy thereof, and to words transmitted by telephone, radio, or any method of voice recording.

4. The word "person" means any natural or artificial person, including business entities and other legal entities.

5. "And" or "or" shall be construed conjunctively or disjunctively as necessary to make the requests inclusive rather than exclusive.

6. The use of the word "including" shall be construed to mean "without limitation."

7. Reference to the singular in any of these requests shall also include a reference to the plural, and reference to the plural shall include a reference to the singular.

8. "Related to" or "relating to" shall mean directly or indirectly supporting, evidencing, describing, mentioning, referring to, contradicting, comprising or concerning.

9. The documents requested herein shall be produced as they are kept in the usual course of business or shall be organized and labeled according to the number of the document request.

10. The duty to produce documents shall not be limited or affected by the fact that the same document is available through another source. All documents should be produced which are not subject to an objection and are known by, possessed or controlled by, or available to AFSCME or any of its attorneys, consultants, representatives, employees, officers, directors, partners, or other agents.

11. In the event AFSCME asserts any form of objection or privilege as a ground for not answering a document production request or any part of a request, please set forth the legal grounds and facts upon which the objection or privilege is based. If the objection relates to only part of the document, the balance of the document production should be answered in full. With respect to any document which is withheld on a claim of privilege, AFSCME shall provide, at the time its responses are due hereunder, a statement setting forth as to each such document the following information:

> a. the name(s) of the sender(s) of the document;
>
> b. the name(s) of the author(s) of the document;
>
> c. the name(s) of the person(s) to whom the document or copies were sent;
>
> d. the date of the document;

e. a brief description of the nature and subject matter of the document; and

f. the nature of the privilege or the authority which is claimed to give rise to it.

12. If any documents requested have been destroyed, lost, mislaid, or are otherwise missing, please so state, specifying for each document or thing:

a. the type of document;

b. a description of the nature and contents of the document;

c. the identity of the author;

d. the circumstances under which it ceased to exist;

e. the identity of all Person(s) having knowledge of the circumstances under which it ceased to exist; and

f. the identity of all Person(s) who had knowledge of the contents.

13. Should you obtain any other documents or information which would supplement or modify the documents or information supplied by you in response to this request, you are directed, pursuant to Federal Rule of Civil Procedure 26(e), to

give timely notice of such documents and information and to furnish the additional documents or information to Debtor without delay.

**Document Requests**

1. All documents relating to the categories of membership in AFSCME, and the extent to which retired, former employees of the City of Detroit are eligible to be members of AFSCME.

RESPONSE:

2. All documents relating to the authority of AFSCME to act as the legal representative of retired, former employees of the City of Detroit.

RESPONSE:

3. All documents relating to the May 24, 2013, letter from Ed McNeil to Brian Easley of Jones Day, attached as Exhibit 1, including but not limited to those relating to Mr. McNeil's statement, "Please be advised that in accordance with Michigan law, we have no authority in which to renegotiate the Pension or Medical benefits that members of our Union currently receive."

6

13-53846-tjt    Doc 602    Filed 08/23/13    Entered 08/23/13 19:38:48    Page 6 of 15

RESPONSE:

4. All documents relating to any feedback, criticism, reactions, proposals, or counterproposals made by AFSCME to the City of Detroit, between March 14, 2013, and July 19, 2013, in connection with a restructuring, reduction, modification, or elimination of any rights and features of the GRS, including but not limited to feedback, criticism, reactions, or counterproposals in response to the proposals the City of Detroit made respecting the GRS at each of the following meetings:

    a. The June 14, 2013, City of Detroit Proposal for Creditors;

    b. The June 20, 2013, presentation by the City of Detroit's professional advisors to the Retirement Systems, unions, and retiree associations; and

    c. The July 11, 2013, presentation by the City of Detroit's professional advisors to the Retirement Systems, unions, and retiree associations.[1]

---

[1] The July 11, 2013, meeting was conducted pursuant to an agreement regarding Michigan Rule of Evidence and Federal Rule of Evidence 408. Accordingly, these document requests should not be read to include a requirement

RESPONSE:

5. All documents relating to any feedback, criticism, reactions, proposals, or counterproposals made by AFSCME to the City of Detroit, between March 14, 2013, and July 19, 2013, in connection with a restructuring, reduction, modification, or elimination of any benefits, rights and features of the retiree health benefit programs covering then existing retirees, including but not limited to feedback, criticism, reactions, or counterproposals in response to the proposals the City of Detroit made respecting the retiree health benefits at each of the following meetings:

    a. The June 14, 2013, City of Detroit Proposal for Creditors;

    b. The June 20, 2013, presentation by the City of Detroit's professional advisors to the Retirement Systems, unions, and retiree associations; and

---

(continued…)

to disclose documents, to the extent any exist, produced or discussed at such meeting.

c. The July 11, 2013, presentation by the City of Detroit's professional advisors to the Retirement Systems, unions, and retiree associations.

RESPONSE:

6. All documents relating to any agreement entered into by AFSCME with the City of Detroit in which AFSCME agreed to reduce, limit, or otherwise abridge the then existing health benefits provided by the City of Detroit to former employees who had already retired as of the effective date of the agreement.

RESPONSE:

7. All documents relating to any attempt prior to July 19, 2013, by AFSCME to obtain legal approval or form of legal authority from any existing retiree of the City of Detroit purporting to authorize AFSCME to legally bind them in connection with an agreement entered into by AFSCME to reduce, limit, or abridge the then existing health benefits provided by the City of Detroit to such retirees.

RESPONSE:

8. All documents relating to any agreement entered into by AFSCME with the City of Detroit in which AFSCME agreed to reduce, limit, or otherwise abridge the pension rights or benefits – on a prospective basis only – provided to then existing retirees by the Detroit General Retirement System.

RESPONSE:


9. All documents relating to any attempt prior to July 19, 2013, by AFSCME to obtain legal approval or form of legal authority from any existing retiree of the City of Detroit purporting to authorize AFSCME to legally bind them in connection with an agreement entered into by AFSCME to reduce, limit, or otherwise abridge the pension rights or benefits – on a prospective basis only – provided to then existing retirees by the Detroit General Retirement System.

RESPONSE:


10. All documents relating to any research, studies, or analysis conducted by, requested, reviewed, or received by AFSCME regarding the City of Detroit's financial health, including but not limited to, the City's cash flow, budgets, projected budgets, ability/inability to pay its debts when they become due, or ability/inability to provide civic services.

RESPONSE:

Dated: August 23, 2013              Respectfully submitted,

 /s/ David G. Heiman
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

Thomas F. Cullen, Jr. (DC 224733)
Gregory M. Shumaker (DC 416537)
Geoffrey S. Stewart (DC 287979)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
tfcullen@jonesday.com
gshumaker@jonesday.com
gstewart@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
   STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY OF DETROIT

Exhibit 1



# MICHIGAN COUNCIL 25

American Federation of State, County, and Municipal Employees, AFL-CIO
Detroit Office • 600 W. Lafayette, Ste. 500 • Detroit, Michigan 48226
Phone: 313.964.1711 • 1.800.AFSCME25 • Fax: 313.964.0230 • www.miafscme.org

**We Make Michigan Happen**

**Albert Garrett**
President

**Lawrence A. Roehrig**
Secretary-Treasurer

**Executive Board**

Sylvester Austin
Region 2

Carlos Bass
Region 3

David Brandt
Region 9

Donna Cangemi
Region 3

Susan Christensen
Region 11

Sandra Crayton
Region 6

Barbara Dauble
Region 3

Lorna Davison
Region 2

Jonathan Drake
Region 2

Caryette Fenner
Region 4

Michael Harris
Region 1

Bennette Henley
Region 1

Lorraine Jacobson
Region 10

Keith January
Region 1

Laura Kinch
Region 6

Arlean King
Region 1

J. Phil McGuire
Region 2

Phyllis McMillon
Region 1

Dennis Moore
Region 7

Sam Muma
Region 6

Doug Murch
Region 5

Lois Murray
Region 3

Stephanie Nahas
Region 3

Dennis Overmyer
Region 7

Gloria Peterson
Region 4

Patricia Ramirez
Region 6

James Rhodes, Jr.
Region 5

Roger Rice
Region 1

Ronnie Skorupski
Region 8

Cindy Spurlock
Region 2

Chris Vandenbussche
Region 3

Russell Williams
Region 11

Sam Zettner
Region 3

*Advanced copy via facsimile*
*(312) 782-8585*

May 24, 2013

Brian West Easley, Esq.
Jones Day
77 West Wacker
Chicago, IL 60601-1692

Re: Letter from Brian West Easley Dated 5/20/13 Entitled *"City of Detroit Restructuring"*

Dear Mr. Easley:

This communication is sent in response to your letter concerning the above stated matter, in which you requested to meet concerning restructuring of Pension and Retiree Medical Benefit liabilities. Please be advised that in accordance with Michigan law, we have no authority in which to renegotiate the Pension or Medical Benefits that members of our Union currently receive. However, we are willing to meet with you per your request. Please propose several alternative dates in which you are available.

Further you should be aware that for the first time in history, over 30 Unions came together in negotiating concessions. The cost-savings and revenues within this proposed Coalition Contract reached **hundreds of millions of dollars annually**. The Contract also contained many restructuring ideas for the City to engage. Ernst & Young participated during every facet of the negotiations and approved the final deal on behalf of the State. The Unions then ratified the concessions. The Coalition and the City celebrated the Ratification.

Unfortunately, the City did not execute the Coalition Contract. The Mayor claimed the State ordered him not to do so. City Council was not permitted to vote to ratify the Contract. By doing this, the City lost **tens of millions of dollars** in actual savings that the City should have realized from these concessions. This has been acknowledged by the City's financial expert.

Indeed, the Milliman Company being used by the City now, acknowledged that the City could have saved well over **50 million dollars** by the healthcare package called for in the Tentative Agreement. Given that the changes were not implemented as of

July 1, 2012, as called for in the Contract, the City lost the savings. Even when the City did unilaterally impose a healthcare plan, it botched the implementation with an excessive amount of plans and problematic rollouts.

We have repeatedly asked the reason why the Governor ordered the City not to execute and implement the Tentative Agreement. Indeed, during a hearing in Federal Judge, Arthur Tarnow's courtroom, he asked the City and State attorneys the same question, as well as what were the work rule changes they were seeking. The lawyers could give no answer.

You should know that we stand ready to meet and negotiate in an effort to save the City. We have been doing so for decades. We hope; however, that the City takes a look at the concessions our Unions already offered in lengthy negotiations last February. The Governor and the Mayor have talked frequently about **"shared sacrifices."** However, employees are the only ones who have **"truly sacrificed."**

I look forward to hearing from you in the near future.

Sincerely yours,

Edward L. McNeil
Special Assistant to the President

cc: LaMont Satchel, Labor Relations, City of Detroit

dat/324iuoeaflcio

-2-

13-53846-tjt    Doc 602    Filed 08/23/13    Entered 08/23/13 19:38:48    Page 15 of 15