issued its ruling, and directly before it circulated the referenced promotional opportunity announcement.

The obvious effect of these changes was to render Bradford Grant the only eligible candidate, since pursuant to the legally defective administration of the 2007 promotion announcement he was the only CEO who had "two years of related supervisory experience." (In the 2007 process, Cook and others had worked out of class (OOC) in the CEO Foreman position, Cook for 18 months. Grant had not volunteered to work an OOC rotation, notwithstanding that he had the seniority to qualify for the rotation. He was, in any event, disqualified from working OOC as Foreman since he was the Teamsters Local 214 unit Steward. By established rule, since a supervisory position would create an impermissible conflict of interest with a steward's representation responsibilities, stewards are not permitted by the DWSD to work OOC in supervisory positions.)

Since Grant had worked as CEO Foreman – in violation of the rules applicable to the subject announcement, as held by the CSC, and in derogation of the actually qualified applicants' rights – over the almost four years since his appointment on October 29, 2007, he was, pursuant to the revised announcement, the only candidate with the requisite two years "related supervisory experience."

Grant's Post-Removal Action (WCCC No. 008334-CK)

On July 12, 2011 Grant filed an action for a temporary restraining order, WCCC No. 11-008334, alleging that his removal from the position of CEO Foreman pursuant to the CSC's decision relative to the 2007 CEO Foreman promotion process "was wrongful

11

and contrary to [his] rights to contest the removal as set forth" in the Civil Service rules, and requesting the Court to enjoin his removal and the application process mandated by the CSC's decision of June 21, 2011 pending his right to appeal his removal and "to show that the process was fair and proper..." Grant's complaint "for a Temporary Restraining Order" requested, as an alternative to his reinstatement pending the full "disposition of his Grievance rights," that he be permitted to submit an application pursuant to the 2011 announcement (and that he be determined not to be disqualified therefrom). The complaint attached a motion for an order to show cause, again stating that he had "a right to request a hearing and to appeal the decision" of the Civil Service Commission.

The City, by its corporation counsel, charged under the charter to represent the City Civil Service Commission, did not file an answer in support of the Commission's decision and order. Instead, without presentation of evidence or argument whatever, it appeared at the show cause hearing on July 29, 17 days after the complaint was filed, and stipulated to the relief Grant requested, specifically

- that Grant be allowed to pursue his "administrative grievance" prior to being removed from his position as CEO Foreman;

- that pending exhaustion of his 'administrative grievance remedies' against the DWSD his certification remain valid and he be restored to that position;

- that the status quo be maintained, including that any "re-posting" of the position be stopped; and

- that in the event the CSC determined to uphold its decision issued June 21, said decision notwithstanding, Grant be declared eligible to re-apply for the CEO

12

Foreman position. Exh 1, attached to City Brief in Opposition to Plaintiff's Motion for Preliminary Injunction in WCCC No. 11-010396-CK.

Cook's 11-010396-CK Action Regarding the July 19, 2011 CEO Foreman Promotional Opportunity Announcement/Grant's Suit

On August 26, 2011 Cook filed a Verified Complaint for a Writ of Mandamus and Declaratory and Injunctive Relief, WCCC No. 11-010396-CK, seeking a mandamus to enforce the CSC's decision and order, a declaratory judgment dismissing Grant's action as without legal basis, and specific injunctive relief implementing the CSC's decision.

In his complaint, Cook asserted that both the City's July 19, 2011 announcement, and its effectual default respecting Grant's putative collateral attack on the CSC's decision, purported to over-rule the decision of the CSC respecting the 2007 CEO Foreman promotional announcement, reached as stated after a 15 month hearing process in which the City, on behalf of its Water and Sewerage and HR Departments had every opportunity to present testamentary and documentary evidence and argument in support of the 2007 promotional process and its result.

Cook asserted that neither of these initiatives had standing before the Court, as follows:

First, the DWSD/HR Departments' announcement of a promotional process in which any department employee may participate directly contravened the ruling of the Civil Service Commission, the City's final authority under the City code. As such it could not stand, since neither the DWSD not the HR Director has the authority under the City code to disregard the authority of the Civil Service Commission, or fail to faithfully

13

implement its judgment in a matter subject, as the 2007 announcement/promotional process was, to its purview.

Cook asserted he was entitled by law to the execution of the directive of the Civil Service Commission, viz, to declare the CEO Foreman position vacant, and to restart the 2007 announcement process restricted to objectively qualified applicants thereunder.

He asserted that he and the other candidates prejudiced under the corrupt 2007 process were entitled to this relief by law, pursuant to the City Charter and Code.

Second, Cook asserted that City corporation counsel defaulted completely on Grant's lawsuit, not only failing to answer but to join any of Grant's allegations, including submitting to Grant's incompetent invocation of the Court's jurisdiction. That default denied the City CSC any defense not only of its decision, but its jurisdiction.

He further asserted that the City's default in this regard was consistent with and derivative of the DWSD/HR's actions throughout, by their failure to disqualify Grant on the patent defects of his application, dispositive under CS rules, by their administration of a corrupt promotional process, and by their subversion of the decision of the CSC, in both changing the CEO Foreman job specifications and an issuing an announcement pursuant thereto that not only permitted Grant to apply but assured his appointment.

In light of the City corporation counsel's default, Cook asserted he was constrained to file this action to seek to uphold the CSC's decision respecting the 2007 CEO Foreman promotional process, to defend the Commission's jurisdiction and authority, and to vindicate the "objectively-qualified" applicants' rights and entitlements thereunder, so corruptly vitiated by the City DWSD and HR Departments from the start,

14

for over more than four years, up to and including the City's duplicitous submission to Grant's legally incompetent lawsuit.

Consolidation of Cook's, Grant's Suits/12-2-11, 1-23-12 Hearings/Court's Order

Upon hearing on October 12, 2011, at which Cook, Grant and the City appeared by counsel, the Court ordered Grant's action re-opened, and both actions consolidated for purposes of further hearing, by its order entered October 26, 2011.

The Court further ordered the City and Grant, on review of Cook's verified complaint and motion for preliminary injunction, with attached exhibits, if they chose, to file responses to Cook's pleadings, and Cook to file a reply to such submissions, for purposes of further consideration by the Court. The order provided that upon review of the parties' submissions, the Court would schedule a date for hearing on Cook's motion for preliminary injunction and requests for relief.

In the event, Grant having responded to Cook's pleadings, and Cook having replied thereto, the Court conducted a hearing on December 2, 2011, at which all parties appeared and made further statements and arguments, at the conclusion of which the Court rendered its decision from the bench, specifically granting Cook's request for a writ of mandamus.

The Court stated as follows:

> And the record really shows that Miss Kathryn VanDagens conducted a hearing on the grievance that Mr. Cook had filed. She issued an opinion, the Civil Service adopted that opinion, and the Civil Service Commission's order was not enforced. And it was really almost ignored and it appears as though there have been efforts since then to kind of get around the Civil Service Commission's decision in this matter and their order.

15

So the Court is going to grant the writ of mandamus that's being requested because in the Court's opinion there's absolutely no reason that that original Civil Service decision and order adopting the administrative hearing officer's opinion shouldn't have been followed. There was a clear duty to follow that and it was adopted by all five commissioners who attended the meeting. And I'm going to grant the writ of mandamus here.

I'm going to order that the prior decision involving Mr. Grant be set aside and I'm going to dismiss that matter with prejudice.

I'm going to require that the original Civil Service decision be enforced and followed here; that is, that they're to conduct-- there's to be a hearing or there's to be a promotional exam started again with the original applicants, the original eligible applicants, and using the original criteria that was designated back in '07.

And I kind of regret that things didn't happen in a timely fashion here, but it's not really all Mr. Cook's fault. He started the grievance procedure in a timely fashion. The hearing just took a long time because there were a number of days that were devoted to the hearing, there were a lot of witnesses, a lot of exhibits, and I just feel that the Civil Service Commission's decision should have been followed right then. I think the plaintiff is entitled to the relief they're seeking under the law, the City charter, and the code.

So I am accordingly going to grant the relief requested and order that the process be restarted with the qualified, objectively qualified candidates. Actually, excluding Mr. Grant, Mr. Davis, and Mr. Saenz. And that's my decision in the matter. 12-2-11 Hearing Transcript pp. 12-14.

On December 8, 2011 Cook presented his proposed Order Granting Declaratory Judgment and Mandamus under MCR.2.601(B)(3). Cook's proposed Order Granting Declaratory Judgment and Mandamus provided that

- Grant's action was dismissed with prejudice;

- Cook's request for mandamus was granted, and that the Court specifically "orders the Directors of the City Human Resources and Water and Sewerage Departments, as applicable, to re-start the 2007 CEO Foreman promotion under the terms of the subject March 12, 2007 announcement, and the then-applicable June 25, 1984 job description, solely among the objectively-qualified candidates thereunder. Bradford Grant, Sylvester Davis and Ricardo Saenz are specifically excluded from the participation or consideration in said re-started 2007 process";

16

- The "announcement of the re-start of the 2007 CEO Foreman promotion shall be posted within 30 days of the entry of this order, and that the administration of same shall be effected in strict accordance with Civil Service Rules and the Human Resources Department's proper practices under the City's Merit System, so as to ensure each candidate his full and fair due process";

- The "successful candidate under the 2007 re-start shall be provided retro-active seniority and back pay in the position of CEO Foreman, from the date of Bradford Grant's appointment to the date of that candidates' appointment to the position"; and

- Plaintiff Cook "may present a motion for attorney fees he incurred in WCCC Case No. 11-010396-CK within 15 days of the entry of this order. Said motion shall notice a hearing date that allows the City not less than 15 days to respond thereto. Should such a motion not be filed within the said 15 days, this Order shall constitute the final order of the Court in the captioned cases." Cook's Proposed Order Granting Declaratory Judgment and Mandamus, pp. 3-4.

Both the City of Detroit and Grant filed objections under the rule, Grant on December 14, the City on December 15, setting a hearing on same for January 20, 2012, which was continued to January 23, 2012.

The City of Detroit's objections made 13 statements of asserted fact, 11 of which concerned its position that Cook's proposed order had not been timely served on City Corporation Counsel. In Statement #12, "As to the content of Plaintiff's Proposed Order," the City submitted that "it is inconsistent with the Court's finding on December 2, 2011 in this matter and is inconsistent with the Civil Service Commission's Final Order."

In its #13 statement, the City simply declared that its proposed order, which provided simply that the Commission's "June 21, 2011 Final Order be implemented,"

> is consistent with the Civil Service Commission's Final Order and is the relief that Plaintiff Cook sought in his Complaint and is consistent with this Court's limited equitable powers under MCR 2.201(C)(5) MCR 3.305 and MCR 3.310. City's Objections to Plaintiff's Proposed Order, p. 3.

17

At the hearing on the City's objections to Cook's proposed order, which directly tracks the Court's grant of the requested writ, as stated above, the Court, without explanation, retreated from the decision it rendered from the bench on December 21, 2011, determining to enter the City's proposed order, simply providing that "the CSC's June 21, 2011 Final Order be implemented."

The Court remarked as follows:

> Okay. My position and decision was really always to follow the Civil Service Commission's decision and that is embodied in the Hearing Officer Kathryn VanDagens, in her decision, her recommended award and her opinion, and that was really my decision from the beginning.
>
> And what I'm going to do is, the City's proposed order is a pretty clear, concise statement of her decision and her recommended award that was adopted by the Civil Service Commission, so I'm going to sign the proposed order submitted by the City.
>
> There's a lot of, and I guess I will use the same language, there's a lot of add-ons that were requested in the proposed order of Mr. Cook, but some of those really are not consistent with Miss VanDagens' decision and they're a little reachy and stretchy, so to speak. She does clearly indicate that Mr. Grant should be removed from his position, that's pretty clear, and he should be, and I'll order that he will be removed from his position. But the rest of the language I'm going to just uphold and affirm it.
>
> So I'm gonna sign that proposed order that's submitted here as the City's Exhibit Number 3. And that's the extent of my decision in this matter. And I'll sign the order. 1-23-12 Hearing Transcript, pp. 15-16.

On January 25, 2012 the Court entered the order proposed by the City, directing that the Detroit CSC's June 21, 2011 order unanimously adopting the findings and recommendations of Hearing Officer Van Dagens be implemented. Exh D, attached to 12-004823-CL Complaint (with the CSC decision attached thereto as Exh A).

Cook's appeal of this order is COA No. 308561.

18

### 2-17-12 CEO Foreman Opportunity Announcement/Cook's 12-004823-CL Action/5-3-12 Hearing/Court's Order

On February 17, 2012 the City DWSD, under the administration of the City HR Department, again – for the third time – posted a promotional opportunity for the position of CEO Foreman, restricted to DWSD employees. See Exh A(iii) (with qualifying questionnaire attached), attached to 12-004823-CL Complaint.

On April 9, 2012, Cook filed a Verified Complaint for a Writ of Mandamus and Injunctive Relief, WCCC No. 12-004823-CL. The Complaint requested a show cause order, and, upon hearing of same, issuance of a writ of mandamus requesting certain specific injunctive relief, viz, the vacation of the 2-17-12 CEO Foreman Announcement and directives ordering the defendant department directors to restart the 2007 CEO Foreman Announcement under the terms required by the Civil Service Commission. In support of his Complaint, Cook submitted his Affidavit and a Memorandum of Law in Support of his Motion for Order to Show Cause.

In his Complaint, Cook made the following attested allegations:

- The February 17, 2012 CEO Foreman promotion announcement makes substantially the same material changes to the March 12, 2007 announcement as the July 19, 2011 announcement did, to the same prejudicial effects as described above in paragraph 15.

- One change is noteworthy for purposes of this action: whereas the July 19, 2011 announcement had prescribed competitive evaluation subjects and weights as "Evaluation & Personal Qualifications: 32.5-50%, Oral Appraisal Exam 32.5-50%" (the 2007 announcement did not so specify, and was in fact administered solely on the basis of scores given by a three-person panel of interviewers, the identity of whom, and their prosecution of the putative oral interview process, were among the issues raised by Cook at the hearing on his protest of the 2007 process), the 2012 announcement provides for "Written Exam 50%, Evaluation of Training, Experience & Personal Qualifications: P/F."

That change notwithstanding, Brenda Van Tull, the HR Analyst administering the promotional opportunity, has scheduled oral interviews for Wednesday April 11, 2011.

19

- According to what Van Tull told Cook (Cook affidavit, attached to 12-004823-CL Complaint), the interviews will be restricted to two candidates, Cook and Grant. Apparently all other DWSD employees, including CEOs, will be disqualified as not meeting the position eligibility requirements stated in the 2011 and 2012 announcements (including "two years of related supervisory experience"). (Of course, that requirement, strictly read, also disqualifies Cook, since he has 18 months of "related supervisory experience," i.e., as an OOC CEO Foreman, not two years.)

- Whatever process is utilized for purposes of the 2012 announcement, a written exam and/or an oral interview, and whether applicants are restricted to Cook and Grant or open to all applying CEOs, it is plain that, as it did in the 2011 announcement process, the City DWSD/HR Departments have promulgated and are adminsitering the announcement so as to (i) evade the clear dictates of the CSC, viz, to "re-start" the 2007 announcement restricted to then qualified applicants (specifically excluding Grant), and (ii) ensure Grant's (re-)appointment.

- The City DWSD and HR's new announcement prejudices Cook and the other eligible 2007 candidates in the exact same way the July 19, 2011 announcement did. The new announcement, which after the fact purports to restrict applicants to Cook and Grant – the wrongfully appointed candidate under the 2007 process – not only effectively vacates the CSC's review and decision respecting the 2007 process (which the CSC ordered "re-started," not simply set aside without consequence so as to establish a clean slate, in derogation of the prejudice the Commission held fatally compromised the 2007 process), it purports to (a) permit Grant to apply (in derogation of the specific disposition by the CSC) (b) based on the "related experience" he wrongfully obtained under the corrupt and repudiated 2007 process.

- As Cook asserted in his action respecting the July 19, 2011 announcement, neither the DWSD not the HR Director has the authority under the City code to disregard the authority of the Civil Service Commission, or fail to faithfully implement its judgment in a matter subject, as the 2007 announcement/promotional process was, to its purview.

- Cook is thus entitled by law to the execution of the directive of the Civil Service Commission, viz, to declare the CEO Foreman position vacant, to restart the 2007 announcement process restricted to the three (see Cook's affidavit) objectively qualified applicants thereunder, and, by direct and necessary implication, that the successful candidate thereunder be paid the difference in pay between the CEO and CEO Foreman positions from the date Grant was wrongfully placed in that position to the date the successful candidate's status is changed. 12-004823-CL Complaint, paragraphs 23-27.

As noted, none of these attested assertions was challenged by the City. The City

filed a Brief in Opposition to Plaintiff's Motion for Preliminary Injunction, in which it

20

submitted that Cook's complaint was barred by the doctrines of collateral estoppel and res judicata, and requested the Court to dismiss Cook's suit.

The Court conducted a show cause hearing on May 3, 2012, at which he permitted both parties five minutes to address the Court. In the event, the Court curtailed Cook's submission and indicated that it did not need to hear from the City. The Court made the following ruling from the bench:

> THE COURT: You know, Mr. Webb, I've litigated this thing already and I buy the City's argument that res judicata and collateral estoppel applies. In fact, this matter is presently on appeal and I don't think it's appropriate for me to change anything that's gone on so far at this juncture other than what I've already done. This is really a re-litigation of the same issues that were initially brought before me, same parties, same issues. I think you're just gonna have to wait until the Court of Appeals looks at it and they make a final decision about it because I can't keep looking at the same issues and redoing it. So I am accordingly going to grant—
>
> MR. WEBB: May I respond to that on the record?
>
> THE COURT: No, because I'm making my decision. I'm going to grant the City's motion to dismiss this matter, and that's my decision. 5-3-12 Hearing Transcript, pp. 8-9.

On May 8, 2012, the Court entered the following order:

> IT IS HEREBY ORDERED that Plaintiff's Complaint is dismissed with prejudice for the reasons stated on the record.

Cook appealed this order in COA No. 310509.

Post May 8, 2012 Proceedings

After the Court's order, the City HR and DWSD departments, on information and belief in consultation with City of Detroit Corporation Counsel,[1] proceeded with the

---

[1] In his affidavit submitted with his verified complaint in 12-004823-CL, Cook attested that when he challenged the February 17, 2012 announcement with the HR representative

21

new CEO promotional opportunity process, restricting applicants to Grant and Cook. (This was done ostensibly in respect of the eligibility requirement of the two years prior related supervisory experience, a material change from the subject 2007 announcement, pursuant to which Grant was the only actually eligible applicant; see above.)

In the event, after interviews were conducted with Grant and Cook, the City (again) awarded the position to Grant.

Since the commencement of Cook's complaints, Cook has been denied the opportunity to work in the CEO Foreman position on a temporary (i.e., during the period when Grant was removed from the position), or on a relief basis (i.e., when Grant is absent). Other, including lesser senior, CEOs (including Ricardo Saenz, like Grant disqualified from the 2007 announcement by operation of the Hearing Officer's recommendation, adopted by the CSC) have been assigned to the CEO Foreman position.[2]

---

who had taken Bush's place, specifically respecting the fact that Grant was eligible to apply, she told him "that's what the City lawyer said to do." Cook Affidavit, p. 4.

[2] The averments in this paragraph are on the representations of plaintiff Cook; see attached affidavit.

22

## ARGUMENT

A.  Re: WCCC No. 11-010396-CK (COA No. 308561):

(i) The Court correctly granted plaintiff Cook a writ of mandamus at the December 2, 2011 hearing on his motion for a preliminary injunction, in the premises presented, which included specific directives to the defendant directors of the subject City Departments.

(ii) The Court abused its discretion at the January 23, 2012 hearing on defendants' objections to Cook's proposed order to enter the writ, by adopting the City's proposed order, without a reasoned analysis, which merely directed implementation of the CSC's decision.

### A. (i) The Court Correctly Held at the 12-2-11 Hearing That a Writ of Mandamus Was Required in the Premises Presented

At the December 2, 2011 hearing, the Court made the following findings, set forth above at pp. 15-16, in support of its holding to issue a writ of mandamus, each of which is amply supported by the (unrebutted) evidence in the record:

(a) that the CSC's decision upholding the Opinion and Recommended Award of its Hearing Officer specifically required that

- the 2007 CEO Foreman Promotional Opportunity Announcement process was to be started again;

- the restart of the 2007 process was to be administered pursuant to the original criteria (i.e., the eligibility requirements and qualifications in the 2007 announcement and specified in the then-applicable CEO Foreman job description); and

- the restarted process was restricted to the original eligible applicants, i.e., those objectively-qualified candidates who applied under the 2007 promotional process, and that Bradford Grant, Sylvester Davis and Ricardo Saenz were specifically excluded as candidates;

(b) that there is no reason that City HR and DWSD departments shouldn't have followed the CSC's (unanimously issued) decision and order "right then," after the CSC's decision and order of June 21, 2011. Indeed, that they had a clear duty to do so; and

23

(c) that withstanding the CSC's clear mandate and their plain duty thereunder, the subject defendant departments "really almost ignored" the Commission's decision, and instead engaged in efforts to circumvent their decision and order.

Plaintiff-Appellant Cook submits as follows in respect of the Court's 12-2-11 determinations and mandates.

Re: (a) The Requirements of the CSC Decision

The aggrieved promotional opportunity was the 2007 CEO Foreman promotional opportunity, which was the only process subject to the Hearing Officer's review.

It was <u>that</u> opportunity, not some future or prospective opportunity, that was at issue, and subject to the Hearing Officer's purview and the Commission's jurisdiction. It was <u>that</u> promotional process which the Hearing Officer, and the Commission, found fatally defective.[3]

Thus when the Hearing Officer recommended that "the promotional process should be restarted, and Grant must be removed from the position" she was referring to the 2007 promotional process, not some other (unaddressed and unremarked) process beyond her purview, and the Commission's jurisdiction, under auspices of the subject grievance.

Similarly, when the Hearing Officer recommended to the CSC that the promotional process "should be restarted," she did not mean that the position should be

---

[3] It bears reiteration here that the Hearing Officer did not rule on all of Cook's assertions of impropriety with regard to the 2007 promotional process, on grounds that that were unnecessary "in light of this conclusion" (i.e., that Grant's appointment must be reversed, and the process re-started among then-eligible candidates). See Attachment C to 12-004823-CL Complaint, p. 14.

24

re-posted, let alone pursuant to a revised job description and announcement that significantly alters the eligibility requirements. [4]

What she meant was that <u>the</u> 2007 promotional process must be restarted, meaning that it must be re-done among the then-eligible candidates, under auspices of the then-applicable job description and announcement.

That is the only tenable construction of her ruling, as is apparent from the context presented and the terms of her recommendation. That necessary construction is also reflected by the following considerations:

- The term "restarted" does not mean "beginning anew," as in "all over again, on different premises," as the City ostensibly posits. It means that the original (aggrieved 2007) process must be redone, under its own auspices, the same as a "re-start" of a race means a do-over of the same race among the competitors who had not been disqualified.

- Had the Hearing Officer's recommendation been even arguably consistent with the subject City departments' subsequent actions, the CSC's ruling notwithstanding, she would not have either (a) used the term "re-start," or (b) disqualified Grant, Davis, and Saenz. She would have recommended vacating the promotional opportunity

---

[4] With respect to the City's post-decision duplicity in those regards, cf. the Court's temperate (not to say euphemistic) remarks in the December 2, 2011 hearing, as noted above, viz.,

> And the record really shows that Miss Kathryn VanDagens conducted a hearing on the grievance that Mr. Cook had filed. She issued an opinion, the Civil Service adopted that opinion, and the Civil Service Commission's order was not enforced. And it was really almost ignored and it appears as though there have been efforts since then to kind of get around the Civil Service Commission's decision in this matter and their order.

25

altogether (as opposed to merely Grant's appointment), [5] without prejudice to the then- (as of 2007) disqualified applicants, not "re-started" with the express exclusion of the candidates held to be disqualified.

Moreover in this regard, the Hearing Officer's recommendation (thus understood) was expressly (and unanimously) adopted by the CSC, "After careful consideration of the Findings and Recommendation of the Hearing Officer ..." The Commission expressly held, per its Hearing Officer's recommendation, that "the [2007] recruitment should be restarted, the candidate selected [in 2007] and currently serving should be removed from the position." Exh C to WCCC No. 12-004823-CL Complaint, p. 2, brackets in original.

Re: (b) The Defendant Departments' Clear Duty to Follow and Implement the CSC's Decision and Order

The City of Detroit Civil Service Commission, under the City charter dated January 1, 1997, heads the City Human Resources department, and has ultimate authority (as set forth in plaintiff's 11-010396-CK Complaint) over personnel matters subject to its purview. The HR department is a department of the City of Detroit, as is the City Water and Sewerage department. Pursuant to §5-106(1) of the City Charter, the DWSD director shall "In accordance with article 6, chapter 5 [the section of the charter that establishes the City HR department, headed by the City Civil Service Commission], hire, promote, supervise, discipline, and remove all employees of the department."

---

[5] As remarked above, neither the Hearing Officer nor the Commission would have had jurisdiction under auspices of the presented grievance to so conclude. These "reflections" are simply further indications of the fundamental illogic (comprehensible only by its self-serving effects) of the City's ostensible argument to the Court.

26

Thus the defendant City HR and DWSD directors are subject to and are directly charged to implement the decisions of the Civil Service Commission. They have no independent authority vis-à-vis the Civil Service Commission under the charter. Such implementation, pursuant to the Commission's mandate, is merely ministerial: the department directors have no authority to overrule, or discretion to disregard, the determination of the Commission.[6]

For purposes of mandamus, or for other civil actions, a defendant department director, as the Human Resources and Water and Sewerage department directors are herein, must be sued in their official capacity to enforce the performance of an official duty. MCL 600. 2051(4), MCR 2.201(C)(5).

In the instant case, the Civil Service Commission ruled on the DWSD 2007 CEO Foreman promotional opportunity. It found that that process was prejudicially flawed,

---

[6] In this regard, the City Civil Service Commission stands in identical stead to the state Civil Service Commission regarding its purview over State Civil Service employment.

> [The Civil Service Commission] has plenary power over all aspects of civil service employment. *Viculin v Department of Civil Service*, 386 Mich 375; 192 NW2d 449 (1971); *Crider v Michigan*, 110 Mich App 702; 313 NW2d 367 (1981). Const 1963, art 11, § 5 empowers the commission to make rules and regulations covering all personnel transactions and conditions of employment.

Dudkin v Civil Service Commission, 127 Mich App 397, 407 (1983). Obviously the Civil Service Commission cannot violate its own rules. DeBeaussaert v Shelby Township, 122 Mich App 128 (1982), cited in Dudkin.

See also James v Department of Mental Health, 145 Mich App 229, 232-233 (1985), respecting the Commission's authority to "define the procedure for resolution of employment disputes in the classified service," wherein the Court remarks that to permit collateral attack on the Commission's authority "would mean that a union and a state agency could abrogate the constitutionally mandated jurisdiction of the Commission..."

A like jurisdiction and authority, and protection against collateral attack, attaches to the Detroit Civil Service Commission under the City's charter.

and affirmed the specific directives recommended by its Hearing Officer to remediate the found violation of its rules, which were binding on the subject departments. The departments were wholly without authority or discretion to refuse to abide by or fail to implement the Civil Service Commission's directives.

Thus, as the Court properly found, the defendant departments were required to follow the CSC's decision "right then," i.e., directly upon its issue. As the Court also found, "there's absolutely no reason that that original Civil Service decision and order ... shouldn't have been followed." Indeed, as the Court further held, they had the "clear duty to follow that," and in consequence, as the Court further held, Cook was entitled to the mandamus he sought "under the law, the City Charter, and the code." See above at pp. 15-16.

Re: (c) Defendant Departments' Acts To Circumvent and Subvert the CSC's Decision, in Contravention of Their Clear Duty to Faithfully Implement Same

In direct and patent derogation of their duty to abide by and implement the clear order of the CSC, the defendant departments effectively conspired to evade and undermine the Commission's order, as follows:

(i) By failing to "restart" the complained-of 2007 CEO Foreman promotional opportunity process, under which the Civil Service Commission found the defendant departments had placed Grant in that position in violation of Civil Service rules, and had violated the rights and proper expectations of the other 2007 candidates. The departments' July 19, 2011 announcement that all present DWSD employees may apply for the position, including Grant, had the evident effect of disregarding the violative 2007 process altogether, as though it had never taken place, and purported to utterly abridge

28

the Civil Service process in review of that process, and the Civil Service Commission's determination to rectify the violations that the same departments committed therein.

The department directors did not have the authority to so nullify the Commission's decision.

(ii) By changing the job specifications, and the examination qualifying criteria, in the immediate aftermath of the Commission's decision, the obvious (intended) effects of which were to render Grant the sole qualified candidate.

These machinations clearly establish that the DWSD and its Human Resources representatives had no interest or capability to observe and enforce the Civil Service rules, which by their actions were and were intended to continue to be mere window-dressing for the selection and re-selection of their anointed candidate.

(iii) By, as forth above at pp. 11-13, the City's abject failure to defend the CSC's decision and order in the action brought by Bradford Grant to directly challenge the decision of the CSC, and his removal from the CEO Foreman position pursuant thereto.

The City, by its Office of Corporation Counsel, failed to join Grant's action, even to file an answer to Grant's complaint, failed to alert the Court to the subject CSC decision (or Cook's counsel of the pendency of Grant's case), failed to argue that the Commission's decision had preclusive effect, and stipulated – without any argument whatever – at the hearing on Grant's action 17 days after the filing of his complaint to entry of an order providing, among other directives, that Grant was reinstated to the CEO Foreman position (in direct contravention of the CSC decision), that the 7-19-11 posting of the CEO Foreman position was enjoined, and that, should the CSC eventually

29

determine to affirm its decision relative to the 2007 CEO Foreman promotional process, that (again in direct derogation of the CSC's order) Grant was permitted to apply.

In these premises, the Court made the following ruling at the 12-2-11 hearing on the consolidated Grant/Cook cases:

> I've got these two cases together and the problem I have with the case that Mr. Grant filed is that, again, it's by stipulation, and usually when stipulations come in I pretty routinely just issue an order without examining it carefully. And at the time I was not really fully informed about the totality of the situation that exists here that involved Mr. Cook's situation. And all of Mr. Cook's activity really precedes Mr. Grant's case and I really didn't realize what had preceded it.
>
> \*\*\*
>
> I'm going to order that the prior decision involving Mr. Grant be set aside and I'm going to dismiss that matter with prejudice.

12-2-11 Hearing Transcript, pp. 12-13.

Thus there was overwhelming evidence submitted to the Court (as noted, the City did not address the allegations in Cook's verified complaint in its brief, let alone rebut them) to sustain its findings and rulings at the 12-2-11 hearing, to wit, that Cook was entitled to a writ of mandamus, with the specific directives the Court set forth at that hearing.

The Court's decision to issue a writ was likewise well-founded in Michigan law. Issuance of a writ of mandamus is proper where "(1) the plaintiff has a clear legal right to performance of the specific duty sought to be compelled, (2) the defendant has the clear legal duty to perform such act, and (3) the act is ministerial, involving no exercise of discretion or judgment." Tuscola Co Abstract Co. Inc v Tuscola Co Register of Deeds, 206 Mich App 508, 510-511(1994). McKeighan v Grass Lake Township Supervisor, 234 Mich App 194, 211-212 (1999). In McKeighan, the Court found that defendant had a

30