clear legal duty pursuant to a state statute to "convene a jury and commence proceedings to determine the necessity of the proposed road," a ministerial act under the statute.

In the matter before the Court, the duty of the defendant City of Detroit HR and DWSD departments was definitively established, under the City Charter and Code, to faithfully abide by and implement the decision of the City CSC, as set forth in the directives upheld by the Court, which were plainly simply ministerial in nature.

(ii)    The Court abused its discretion at the hearing on the City's objections to Cook's proposed order, in the premises presented, by entering the order counter-proposed by the City, which simply and merely provided that the CSC's Final Order "be implemented"

At the hearing on the City's objections to Cook's proposed order, the Court remarked that there were "a lot of add-ons" in it, some of which were "really not consistent with Miss VanDagen's decision and they're a little reachy and stretchy, so to speak." The Court did not identify any such add-ons, or indicate how it considered them "a little reachy and stretchy," or how it found same to be "really not consistent" with the Hearing Officer's decision.

In fact, none of the provisions in Cook's proposed order may accurately be so characterized. Cook's proposed order directly tracks the Court's holdings on December 2, 2011 that the 2007 CEO Foreman promotion must be re-started under the terms of the 3-12-07 announcement, and the then applicable job description, solely among the objectively-qualified candidates thereunder, and that Grant, Davis and Saenz were specifically excluded as candidates.

Cook's proposed order further provided that the announcement of the 2007 re-start shall be posted within 30 days, and that same be effected in strict accordance with

31

CS Rules, to ensure each candidate full and fair process. While the Court did not specifically declare these provisions in its December 2, 2011 bench decision, none of them may be fairly found to be "reachy or stretchy." To the contrary, apart from the time frame for the announcement, they are entirely consistent – indeed, they are patently required – by the City's merit system and CSC rules, and by the Court's own reading of the Commission's decision. The 30-day provision wasn't a significant provision in Cook's proposed order; 45 or 60 days would work just as well. (Notably in this regard, the City did not challenge the 30-day provision, or any other provision of Cook's proposed order beyond the conclusory remarks referenced above.)

Similarly, the provision in Cook's proposed order that the successful candidate be provided retro-active seniority and the differential in pay between what Grant (wrongfully) earned in that position and what the successful CEO candidate under the 2007 announcement re-start made from the date of Grant's appointment to his appointment (a) is not an essential part of the order, but (b) is clearly consistent with the decision of the CSC (and, indeed, is consistent with Michigan law regarding remediation for violation of an individual's rights under a City Charter and personnel rules), and (c) as such may not reasonably be regarded as stretchy or reachy, that more specifically in light of the subject departments' then established (as the Court found) acts to evade the clear dictates of the CSC's decision.

Finally, Cook's proposed order provided that Cook could present a motion for attorney fees he incurred in the case within 15 days of the entry of his proposed order, and that, should such a motion not be filed, the proposed order would constitute the Court's final order in the case. Obviously, that provision provided for further

proceedings before the Court, which the Court would (or would not) entertain under its own auspices and law and rules entirely independent of its enforcement of the decision of the CSC. For that reason, the fact that the CSC did not hold that plaintiff Cook could, in his discretion, file a motion for costs and fees should a subsequent (and not then-contemplated, in light of Cook's – and the CSC's – ignorance of the fact that that subject departments would disregard, indeed patently subvert, the Commission's decision) action in Wayne County Circuit Court be required to mandate enforcement of its decision, is of no consequence. While this provision also is not a necessary part of the Court's order, it is clearly not reachy or stretchy in the premises presented, and in fact, as argued below, the Court's entry of a final order without permitting plaintiff to file a motion for costs and fees (notwithstanding that, facially at least, plaintiff prevailed in the case) constitutes clear error subject to de novo review in this court.

The rule is well established that "mandamus is a discretionary writ and where there is evidence to support the denial thereof this Court will not disturb it," and that an appellate Court reviews the grant or denial of a writ on an abuse of discretion standard. South Looking Glass v. Drainage District Board, 357 Mich at 222, and Carlson, 90 Mich App at 547, supra, at p. vi.

The grant or denial of a petition for a writ of mandamus, like a writ for superintending control, "is within the sound discretion of the Court." In re: Goehring, 184 Mich App 360, 366 (1990). An appellate court reviews the exercise of said discretion to determine whether same rests within the principled range of outcomes.

In Maldonado v Ford Motor Co, 476 Mich 372, 388 (2006), the Supreme Court specifically rejected the extremely differential abuse of discretion formulation it had

33

previously adopted in Spalding v Spalding, 355 Mich 382, 384-385 (1959), and adopted

the standard stated in People v Babcock, 469 Mich 247 (2003), as the "default" abuse of

discretion standard. Babcock defined abuse of discretion as follows:

> [A]n abuse of discretion standard acknowledges that there will be
> circumstances in which there will be no single correct outcome; rather, there will
> be more than one reasonable and principled outcome. ... An abuse of discretion
> occurs ... when the trial court chooses an outcome falling outside this principled
> range of outcomes. Babcock, at 269.

Thus the question posed to this Court is whether the Circuit Court's determination

to simply order that the "Final Order" of the CSC "be implemented" is within the

principled outcomes in the premises presented to the Court.

Plaintiff-Appellant Cook respectfully submits to this Court that it was not, on

each of the following grounds:

(a)     The defendant HR and DWS departments had, at the time of the filing of

Cook's complaint, plainly acted to evade and subvert the clear requirements of the CSC's

decision, in the respects established by the unrebutted evidence submitted to the Court, as

set forth above, viz.,

-       by failing as directed to re-start the March 12, 2007 CEO Foreman

Promotional Opportunity Announcement. Instead, the defendant departments announced

a new promotional opportunity on July 19, 2011.

-       by failing as directed to utilize the eligibility requirements and subject job

description applicable to the 2007 announcement. Instead, in the 2011 announcement the

defendant departments materially changed the 2007 eligibility requirements, including

the level of requisite prior supervisory experience (from "a reasonable portion" to "two

years"), which effectively precluded all but one of candidates (the same CEO wrongfully awarded the Foreman position under the prejudicially violative 2007 process).

Moreover, they changed the subject job description to the same prejudicial effect (changing the minimum entrance qualifications from "a reasonable portion" to "two years of related supervisory experience"), exactly 12 days (on July 7, 2011) prior to the issuance of the announcement (on July 19, 2011). That change was from the prior job description (under which the March 12, 2007 announcement was made) that had been in effect for over 28 years (adopted June 25, 1984, and unchanged thereafter until July 7, 2011). See above at pp. 10-11, and Exhs A(i) and (ii) attached to Cook's 12-004823-CL verified complaint.

The City never explained these (obviously fatally prejudicial) changes to the Court.

      -      by failing as directed to limit the candidates for the CEO Foreman promotion to those objectively-qualified candidates under the March 12, 2007 process, and to exclude the three candidates whose applications the CSC found to have been wrongfully considered thereunder. The departments violated these strictures in toto, by permitting any DWSD employee to apply, including the disqualified CEOs, Grant, Davis and Saenz.

Thus the defendant departments had, at a minimum, 'engaged in efforts not to enforce the CSC's order, and indeed had undertaken to kind of get around the CSC's decision in this matter and their order,' [7] as the Court found. The direct and necessary conclusion from that finding – and the only one within "the principled outcomes" in the

---

[7] See above at pp. 15-16, 25 (fn 4).

premises – is that the defendant departments had established that they were not faithful to the mandates of the CSC's decision, indeed that they had acted to subvert it, and therefore could not be trusted to 'implement the Commission's decision' without clear directives from the Court.

For the Court to merely direct the defendants that the Commission's "Final Order" "be implemented" abjectly falls outside the "principled outcome" required in these premises in every material respect:

- it effectively ratifies the defendant departments' mis- and mal-feasance respecting the CSC's decision, by failing to hold that the departments' machinations violate the clear mandates of the Commission's decision;

- it did not mandate that the departments implement the Commission's decision pursuant to clear and specific measures, so as to avoid any further mischief; and

- it leaves Cook and the other objectively-qualified 2007 candidates without any effective relief whatever.

The Court's "decision" is in effect not a decision at all. It leaves the parties in the posture they were in before Cook's lawsuit, a posture materially prejudicial to Cook and the other objectively-qualified candidates under the 2007 CEO promotional opportunity. As such, it constitutes an abdication, not a decision, in effect a forfeit of the Court's jurisdiction.

Such a result may not be accurately or fairly characterized as within the range of principled outcomes in the premises presented herein to the Court.

36

(b)     The Court's conclusory and subjective remarks that Cook's proposed order contained certain "add-ons," some of which were "really not consistent with Ms. Van Dagens' decision and they're a little reachy and stretchy, so to speak," none of which was identified, let alone subject to explicated deliberation or analysis, contravene the judicial process and patently do not constitute a tenable ratio decidendi for the Court's "decision," which as remarked above is not a decision at all. It is, and must be, plainly untenable for a Court to grant a party a purported judgment while withholding the very relief it has held to be essential to its execution, and that without explanation.

In fact, a review of Cook's proposed order reveals nothing inconsistent with Ms. Van Dagens' decision and recommended award and the CSC's adoption thereof. The proposed order directly tracks the decision, from the re-start of the 2007 promotional process to the subject eligibility standards to the status of the objectively-qualified candidates, and the exclusion of disqualified candidates. Those specific directives in Cook's proposed order constitute the sine qua non of the Court's disposition of the case. To exclude them – without explanation – merely to fecklessly order 'implementation' of the CSC's 'Final Order,' is patently outside the principled outcomes in the premises presented herein.

In this regard, were the Court to have concluded that the other provisions of Cook's proposed order were either not indicated or unnecessary, the Court could – and should in that event – have entered an order limited to those established, requisite provisions.

37

The Court's unsupported subjective and conclusory remarks, however, provide neither the parties nor this Court any basis to effectively review its conclusions respecting the other provisions in Cook's proposed order.

Cook submits to this Court that the provisions in his proposed order to require announcement of the 2007 re-start on a reasonably prompt basis, and that same be administered in a fashion to ensure each of the objectively-qualified candidates thereunder full and fair process, are plainly indicated in the premises presented herein, in light of the defendant departments' established subversion of same in the 2007 promotional process, [8] and their similar malfeasance in the 2011 process (the one that brought Cook to Court in WCCC # 11-010396-CK), and are completely consistent with VanDagens' findings and recommendation. As such, same may not accurately or fairly be characterized as "stretchy or reachy," if indeed the Circuit Court so held. Cook submits that to fail to so mandate in the Court's order is without reasoned analysis, and is well outside the principled range of outcomes in the premises presented.

As regards the provision in Cook's proposed order respecting the retro-active seniority and back-pay the successful candidate among the objectively-qualified candidates under the 2007 CEO Foreman process is entitled to, Cook acknowledges that same was not an essential provision in the subject order, inasmuch as the remedy for defendants' violation of CS rules could be sought after the conclusion of the 2007 re-start. Nonetheless, Cook submits that this provision may not be properly characterized as

_____

[8] It bears reiteration in this context that Hearing Officer VanDagens did not rule on all of Cook's citations of CS rule violations and other improprieties in the 2007 process, or on the evidence he adduced relative thereto, in light of her principal conclusion. See above at pp. 9 and 24 (fn 3).

"reachy or stretchy," inasmuch as a make-whole relief is customary and required in such instances. [9]

Cook submits to this Court that nothing in his proposed order was either inconsistent with the Hearing Officer's recommended decision, or the CSC's adoption of same, as set forth above. To the contrary, he submits that in each of the described particulars[10] his proposed order faithfully tracks both the Commission's decision and the Court's bench decision issued on December 2, 2011. That were emphatically and expressly the case respecting the proposed order's grant of mandamus, specifically that the 2007 CEO Foreman promotional opportunity must be re-started among then-eligible objectively-qualified candidates and that Grant, Saenz and Davis were disqualified from participation therein.

---

[9] Relief in breach of contract cases is

> intended to give the party ... a sum of money that will ... put [him] in as good a position as [he] would have been in had the contract been fully performed. The injured party should receive those damages naturally arising from the breach. Civ Jl 142.31.

> Back pay provisions are intended to "make whole" individuals who've suffered employment discrimination. Albemarle Paper Co. v. Moody, 422 U.S. 405, 417-418 (1975). Back pay is broadly defined to include "all monetary awards based on earnings and other fiscal benefits that the plaintiff would have received but for the unlawful employment practice." 2 Larson, Employment Discrimination, §55.31, p. 11-96.1, cited in Rasheed v. Chrysler Corp., 445 Mich 109, 117 (1994), fn 8.

> The same considerations apply in civil service cases. Cf. Tenbusch v. Department of Social Services, 172 Mich App 282, 297 (1988) (awarding back-pay with interest to civil service employee wrongfully misclassified). See also Gillard v. Department of Social Services, 135 Mich 579, 585-586 (1982) (awarding interest on back-pay).

[10] As regards the provision in Cook's proposed order to afford Cook leave to present a motion for attorney fees within 15 days of the entry of the Court's order, see below at Argument C of this brief.

As regards the other provisions in Cook's order, concerning the time-frame, administration of the 2007 re-start in accordance with merit system rules, and make-whole relief for the successful candidate under the 2007 re-start, Cook submits that — while in his view these provisions are entirely consistent with the CSC's decision, and are clearly required in the circumstances presented in this case — if the Court considered them to be inappropriate or unnecessary it was free to strike them from the order.

What the Court was not free to do, however, consistent with any reasoned analysis and within the range of principled outcomes, was to fail to order the defendant departments to re-start the 2007 CEO Foreman promotion pursuant to the conditions set forth and required by the Hearing Officer, the CSC, and the Court in its bench decision. By simply adopting the City's order, the Court merely sent the matter back to the defendant departments — who had demonstrated beyond purport, as the Hearing Officer, the CSC and the Court had found, their disregard (read subversion) of the requirements of the Commission's decision as embodied in their July 19, 2011 announcement, and thereby their lack of entitlement to any deference whatever — without any instruction or directive. By so doing, the Court effectively nullified its own order, which merely stated that the CSC's Order "be implemented," thereby re-subjecting Cook and the other objectively-qualified candidates under the 2007 process to the prejudice the Court was obliged to eliminate, by the clear terms (as it found) of the CSC's decision.

The Court's default in this regard cannot be squared with the range of principled outcomes.

As regards the other provisions in Cook's proposed order, while they are not, as noted, expressly required by the CSC, Cook submits that they are entirely consistent with

the Commission's decision and were clearly required in the premises presented to the Court. Cook submits that the Court's failure to even identify the provisions in his proposed order it considered inconsistent with the Commission's decision, or "stretchy or reachy, so to speak," let alone address them, constitutes a like default in the circumstances before the Court.

Cook further submits that in so holding the trial Court failed of its responsibility to conduct a "meaningful review" of the matters at issue, as it was required to do. In this case, the Court's default, as immediately succeeding developments (predictably) established, (see Argument B below, respecting WCCC # 12-004823-CL) materially further prejudiced Cook and the other objectively-qualified candidates under the subject 2007 promotional process. See Justewicz v. Hamtramck Civil Service Commission, 65 Mich App 555, 560 (1975) (a "meaningful review" of civil service processes is required).

In the premises, Cook submits that this Court may and should direct the trial Court to enter his proposed order in toto. Failing same, he submits that the Court should remand the matter to the trial Court with instructions to enter the mandamus relief expressly required by the CSC (and the Court), faithfully set forth by Cook in his proposed order, and direct the Court to conduct a meaningful review of Cook's proposed order's other provisions, with a view to the issuance of an order within the range of principled outcomes in the premises.


B.      The Circuit Court erred in WCCC No. 12-004823-CL (COA No. 310509) by dismissing Cook's second action for mandamus and injunctive relief, notwithstanding the materially changed circumstances posited to the Court since the entry of its order in

41

11-010396-CK, on grounds his action was barred by "res judicata and collateral estoppel," and the fact that Cook had appealed its order in the earlier case.

In his second action, Cook complained of what the defendant City departments had done in respect of the Court's order dated January 25, 2012, in 11-010396-CK, by their announcement and administration of a new CEO Foreman Opportunity Announcement dated February 17, 2012. The defendant departments' announcement utterly failed to "implement" the CSC's decision of June 21, 2011, as required by the Court's order in 11-010396-CK, in similar but distinct particulars from their July 19, 2011 announcement. Same are set forth above at pp. 19-20.

In that regard the key similarities are that the announcement failed to re-start the 2007 announcement, failed to administer same under the then-applicable eligibility standards and job description, and failed to restrict the candidates to those objectively-qualified under the 2007 announcement process.

The key distinctions are that the defendant departments changed the evaluation subjects and weights and restricted the eligible candidates – putatively under the "2 years of related supervisory experience" eligibility standard imposed in the July 19, 2011 announcement (in contra-distinction to the March 2007 announcement; see above at pp. 10-11) – to Grant and Cook, excluding all other applicants. [11]

Cook took the position that his complaint in WCCC # 12-004826-CL asserted a new and distinct cause of action from WCCC # 11-010396-CK, on grounds the new

---

[11] Of course, as noted, the two year requirement also putatively eliminated Cook, who had worked out of class in the CEO Foreman position for 18 months, not two years. The defendant departments obviously accepted his application, in contra-distinction to other applicants who also did not have the putatively requisite two years, as a fig leaf in respect of Cook's grievance, the CSC decision, and the associated Court proceedings.

action concerned a different promotional announcement from that at issue in that case

(the July 19, 2011 announcement), and that the February 7, 2012 announcement made

changes from the July 19, 2011 announcement, specifically that it purported to restrict the

applicants to Grant and Cook. Cook further relied upon the fact that the new

announcement violated the terms and conditions imposed by the CSC's decision and the

Court's order upholding same in WCCC # 11-010396-CK. These distinctions clearly

differentiate the new case from WCCC # 11-010396-CK.

At the show cause hearing on May 3, 2012, the Court gave Cook's position in

these regards short shrift, on grounds the new action was barred by res judicata and

collateral estoppel. In his decision from the bench, the Court observed that he considered

the new action to raise "the same issues that were initially brought before me, same

parties, same issues ..." See above at p. 21.

In so holding, the Court erred as a matter of law.

Re: Res Judicata

> Under the doctrine of res judicata, "a final judgment rendered by a court of
> competent jurisdiction on the merits is conclusive as to the rights of the parties
> and their privies, and, as to them, constitutes an absolute bar to a subsequent
> action involving the same claim, demand or cause of action." Wayne Co v
> Detroit, 233 Mich App 275, 277 (1998), quoting Black's Law Dictionary (6th ed,
> 1990), p 1305. See also Dart v Dart, 224 Mich App 146, 156 (1997). "The
> doctrine operates where the earlier and subsequent actions involve the same
> parties or their privies, the matters of dispute could or should have been resolved
> in the earlier adjudication, and the earlier controversy was decided on its merits."
> Wayne County, supra, at 277.

Cited and quoted in Harvey v. Harvey, 237 Mich App 432, 436-437 (1999).

In the instant case, res judicata plainly does not apply because issues related to the

defendant departments' February 17, 2012 were not and could not have been raised in

WCCC # 11-010396-CK, since that announcement post-dated the Court's decision in 11-

43

010396-CK. WCCC # 12-004823-CL raises new issues, including whether the February

17, 2012 CEO Foreman announcement violates (a) the decision of the CSC and (b) the

Court's order in 11-010396-CK.

The Court effectively held, without reasoned consideration whatever, that 12-

004823-CL involved "the same claim, demand or cause of action" as 11-010396-CK. In

so holding, the Court erred as a matter of law, since Cook brought 12-004823-CL on a

promotional announcement issued after the Court's order in 11-010396-CK. Issues

concerning whether that announcement violated the Court's order in 11-010396-CK

and/or the CSC's decision could not have been brought in the earlier case; in

consequence, they concern a distinct and new cause of action.


Re: Collateral Estoppel

Collateral estoppel bars relitigation of an issue in a new action arising
between the same parties or their privies when the earlier proceeding resulted in a
valid final judgment and the issue in question was actually and necessarily
determined in that prior proceeding. See People v Gates, 434 Mich 146,154
(1990); 1 Restatement Judgments, 2d, § 27, p 250. The doctrine bars relitigation
of issues when the parties had a full and fair opportunity to litigate those issues in
an earlier action. Arim v Gen Motors Corp, 206 Mich App 178,195 (1994). A
decision is final when all appeals have been exhausted or when the time available
for an appeal has passed. See Cantwell v City of Southfield (After Remand), 105
Mich App 425, 429-430 (1981).

Leahy v. Orion Township, 269 Mich App 527, 530 (2006).

The ultimate issue in the second action must be the same as that in the
first. Detroit v Qualls, 434 Mich 340, 357 (1990). The issue must have been
necessarily determined – that is, essential to the resulting judgment – in the first
action. Id. It also must have been actually litigated – that is, put into issue by the
pleadings, submitted to the trier of fact, and determined by the trier of fact.
VanDeventer v Michigan Nat'l Bank, 172 Mich App 456, 463 (1988).

Bullock v. Huster, 209 Mich App 551, 556 (1995). See also People v. Gates,
supra, at 156-157.

44

Collateral estoppel does not apply in the WCCC # 12-004823-CL on grounds that the actual and ultimate issue therein, whether the defendant departments violated the CSC's decision in their February 17, 2012 CEO Foreman Promotional announcement was not "actually and necessarily determined" in WCCC # 11-010396-CK, nor could it have been, since it did not occur until after the conclusion of 11-010396-CK.

Moreover, in this regard, whether the defendant departments' February 17, 2012 announcement violated the Wayne County Circuit Court's order in 11-010396-CK, also placed at issue in 12-004823-CL, was not and could not have been litigated and "actually and necessarily determined" in 11-010396-CK.

In these regards, cf. McMichael v. McMichael, 217 Mich App 723, 727-728 (1996), in which the Court remarks "there is no evidence in the record that the issue … was actually litigated or necessarily decided …" in the cited prior case. "The decree is silent with regard to the …" posited issue. Exactly the same situation applies herein.

Cook further submits, in his appeal of the Court's dismissal of 12-004823-CL, that there is a fair question whether he had a "full and fair opportunity" to litigate whether the defendant departments had violated the CSC in their July 19, 2011 CEO Foreman promotional announcement, in the premises presented in § A above.

Finally in this regard, Cook submits that his appeal from the Wayne County Circuit Court's decision in 11-010396-CK belies application of collateral estoppel, since under Cantwell, supra, the trial Court's decision may not in light of Cook's appeal be considered "final" for collateral estoppel purposes (a rule of law that obviously escaped the trial court, which referenced Cook's appeal as a ground to dismiss 12-004823-CL; 5-3-12 Hearing Transcript, pp. 8-9).

45

This Court reviews the Circuit's decision on these legal grounds de novo. Estes, supra, p. viii.

C.    The Circuit Court erred in refusing to consider Cook's requests for attorney fees, made in both actions, in light of the City Corporate Counsel's default in Grant's lawsuit, and its complicity in the City departments' actions to subvert the decision and order of the Civil Service Commission, thereby forcing Cook effectively to represent the Commission, and to defend its decision, as well as the integrity of the City's due process merit-based Civil Service System.

An attorney has an affirmative duty to conduct a reasonable inquiry into the factual and legal viability of a pleading before it is signed. MCR 2.114(D); Davids v Davis, 179 Mich App 72, 89 (1989). The reasonableness of the inquiry is determined by an objective standard and depends on the particular facts and circumstances of the case. Id. In addition, MCR 2.625(A)(2) mandates that a court tax costs, as provided by MCL 600.2591, to reimburse a prevailing party for its costs incurred during the course of frivolous litigation. Davids, supra; Wells v Dep't of Corrections, 447 Mich 415, 419 (1994). A claim is frivolous when (1) the party's primary purpose was to harass, embarrass, or injure the prevailing party; (2) the party had no reasonable basis to believe that the underlying facts were true; or (3) the party's position was devoid of arguable legal merit. MCL 600.2591(3)(a).

Larose Market, Inc v. Sylvan Center, Inc., 209 Mich App 201, 210 (1995).

As regards the requirement of reasonable inquiry, including the obligation to ascertain whether a party's position is devoid of arguable legal merit, see Briarwood v. Faber's Fabrics, Inc., 163 Mich App 784, 792-795 (1987) for a discussion of MCR 2.114, which is based on the amendment of FRCP 11.

In this case City Corporation Counsel transgressed the referenced standards of advocacy in both cases on appeal. It did this by effectively representing the subject defendant departments, in derogation of the decision of the City CSC – which found the subject departments in their administration of the 2007 CEO Foreman Promotional Opportunity to have violated CS rules, and mandated affirmative relief to rectify those

46

established violations, which decision corporation counsel by its charge under the City Charter was obliged to defend – in both cases.

In both, City counsel (which was implicated as having been consulted in both the July 19, 2011 and February 17, 2012 successor announcements and administrations) defended these announcements, which on their face expressly contravened the CSC's decision.

By those representations, City corporation counsel plainly took positions devoid of arguable legal merit. It did so notwithstanding that it clearly knew its position was devoid of legal merit

     -    by its participation in the 15 month hearing on Cook's grievance, entailing 9 hearing dates and introduction of 75 exhibits, in which it took the position, consistent with the position of City HR and DWSD departments, that the 2007 promotional process was fair, and that its results should not be disturbed;

     -    by its advocacy at the CSC hearing on the Hearing Officer's recommendation, viz, that same should be reversed, and the subject departments' determination upheld; and

     -    by its receipt of the CSC's decision, in which the Commission unanimously upheld the Hearing Officer's recommendation – in contravention of City's Counsel's advocacy – that the subject administration violated CS rules, that its result was reversed, that the 2007 process must be re-started, under then-applicable eligibility standards and job description, and limited to the then-objectively-qualified candidates, with the express exclusion of three identified candidates, Grant, Saenz and Davis.

47

By taking the position that the subject departments' July 19, 2011 announcement were nonetheless proper, in derogation of its knowledge that the CSC's determination, by express and necessary application, forbade that announcement, in every material respect, corporation counsel violated its affirmative duty not to take a position patently devoid of legal merit.

As an adjunct to that default and transgression, corporation counsel forced Cook to defend the CSC's decision in both cases, and thereby the integrity of the City merit system, properly Corporation Counsel's charge. That abdication – far beyond a mere failure to conduct a reasonable inquiry into the legal viability of the City's position in the referenced cases, given its participation throughout the subject CS process – further subjects the City to sanctions under the cited rules and standards. cf. <u>John J. Fannon v. Fannon Products, LLC</u>, 269 Mich 162 (2005) (counsel knew his client was involved in the transactions at issue in the litigation, and knew the evidence did not support the client's claims).

These same dynamics likewise pertain to City Corporation Counsel's default in Grant's collateral action, WCCC # 11-008334-CK, in which the City, by its Corporation Counsel, stipulated not only to the vacation of the CSC's decision in Cook's appeal of the 2007 process pending adjudication of Grant's grievance respecting his removal from the CEO Foreman position pursuant thereto, but also to the reversal of the CSC's decision (viz., that Grant would be eligible to re-apply even should the Commission uphold its June 21, 2011 decision in Cook's grievance on the 2007 process under auspices of Grant's grievance of his removal). See above at pp. 11-13.

48

The fact that the City counsel stipulated to this relief without informing the Court of the Commission's June 21 decision (after the extended hearings Cook and the City went through, described above), or Cook's counsel of the pendency of Grant's action, further confirms the City's complicity with Grant and abdication of its charge to defend the jurisdiction and authority of the CSC under the City Charter. That complicity and abdication not incidentally forced Cook to bear the burden of defending the Commission's jurisdiction and authority, and the integrity of the City's merit system.

By entering the City's proposed order in 11-010396-CK which simply provided that the CSC's decision "be implemented," and failed to mention Cook's request to submit a motion for attorney fees and costs (incurred in both cases; Cook's Verified Complaint in 12-004823-CL, dismissed without substantive hearing on grounds of res judicata and collateral estoppel, as described in B above, also requested an award of attorney fees and costs; verified complaint, p. 16), notwithstanding that Cook nominally prevailed in the case, the Court failed of its obligation to consider Cook's stated requests for attorney fees and costs.

Inasmuch as the trial Court failed to consider Cook's request, the issue is properly remanded to that Court for consideration in the premises presented herein, inasmuch as the issues concern law and fact. Cf. People v. Martin, 482 Mich 851 (2008); S. Abraham & Sons, Inc. v. Department of Treasury, 260 Mich App 1, 22 (fn 10) (2003); Independence Township v. Eghigian, 161 Mich App 110, 117 (1987), leave to app den, 429 Mich 872 (1987); Michigan Consolidated Gas Company v. State Tax Commission, 4 Mich App 33, 37 (1966); Reenders v. Parker, 217 Mich App 373, 380-381 (1996).

49

## CONCLUSION

Plaintiff-Appellant Ronald Cook urges the Court to grant the following relief herein:

A. Direct the Trial Court on remand to grant a writ of mandamus, specifically stating:

(i)     The directors of the City Human Resources and Water and Sewerage Departments, as applicable, are ordered to re-start the 2007 CEO Foreman promotion under the terms of the subject March 12, 2007 announcement, and the then-applicable June 25, 1984 job description, solely among the objectively-qualified candidates thereunder. Bradford Grant, Sylvester Davis and Ricardo Saenz are specifically excluded from participation or consideration in said re-started 2007 process.

(ii)    The announcement of the re-start of the 2007 CEO Foreman promotion shall be posted within 30 days of the entry of this order, and the administration of same shall be effected in strict accordance with Civil Service Rules and the Human Resources Department's proper practices under the City's Merit System, so as to ensure each candidate his full and fair due process.

(iii)   The successful candidate under the 2007 re-start shall be provided retro-active seniority and back pay in the position of CEO Foreman, from the date of Bradford Grant's appointment to the date of that candidate's appointment to the position.

B. Direct the Trial Court to conduct a hearing on plaintiff-appellant Cook's entitlement to the attorney fees and costs he incurred in prosecution of WCCC Nos. 11-010396-CK and 12-004823-CL.

C. Award Cook his attorney fees and costs in the instant appeals.

50

C. Award Cook his attorney fees and costs in the instant appeals.

Respectfully Submitted,

L. Rodger Webb, P.C.

By: L. Rodger Webb (P33356)
17000 West Ten Mile Road
Goodman Acker Bldg, 2nd Floor
Southfield, MI 48075
Tel: 248 395 9750
Fax: 248 395 9760

Dated: December 3, 2012

2012 DEC -5 AM 10: 08

51

STATE OF MICHIGAN
IN THE COURT OF APPEALS

RONALD COOK,
                    Plaintiff-Appellant                    COA#: 308561
                                                           COA#: 310509
vs.                                                        LC#: 11-010396-CK
                                                               12-004823-CL
CITY OF DETROIT, and the Directors
of its Human Resources and Water and Sewerage Department,
in Their Official Capacities,
                    Defendants-Apellees

_____/

AFFIDAVIT OF RONALD COOK

STATE OF MICHIGAN    )ss.
COUNTY OF OAKLAND )

        I, Ronald Cook, being first duly sworn, depose and say as follows:

        1.      That I am the plaintiff-appellant herein, that I make the following statements

based on personal knowledge, that same are true to the best of my knowledge, information and

relief, and that I could testify competently thereto if called as a witness.

        2.      Since I filed a grievance over the conduct of the 2007 CEO Foreman Promotional

Opportunity, I have been denied every opportunity to work in the CEO Foreman position (prior

to the 2007 announcement, I had worked over 18 months in that position on an out of class

basis).

        3.      Ricardo Saenz, who was, like Bradford Grant, held to be disqualified from the

2007 process by the Detroit Civil Service Commission and its Hearing Officer, has worked as

temporary relief in the Foreman position since Grant's appointment to the position (in violation

of CS rules).

4.      Leslie Tucker, a CEO in the Detroit Water and Sewerage Department, has worked on a temporary assignment basis in the CEO Foreman position, over the same time period. Tucker did not apply for the Foreman position in 2007. She has less City and CEO seniority than I do.

5.      Kelvin Kidd, a CEO who did apply for the Foreman position in 2007 (he is, like me, a CEO Foreman candidate under the 2007 announcement who was objectively-qualified under the Civil Service Commission decision), has also been assigned to work on a temporary basis in the Foreman position. He also has less City and CEO seniority than me.

6.      Derrick Thornton, a CEO who also applied for the CEO Foreman position in 2007, and like Kidd and me, was not disqualified from that process by the Civil Service Commission, has also been assigned to the Foreman position on a temporary basis.

7.      I have protested my exclusion from being permitted to work in the CEO Foreman position since I filed the grievance. I have never been given an explanation why other CEOs, including lesser senior, and those disqualified under the 2007 CEO Foreman process, have been assigned as relief Foremen while I have not. Donavon Walton, formerly a Supervisor, who is now the DWSD's acting assistant superintendent, told me that the word came down that he could use anyone but me as a relief CEO Foreman.

FURTHER DEPONENT SAYETH NOT.

_Ronald Cook_
Ronald Cook

Subscribed and sworn to before me
on this 29 day of November 2012.

_Jessica Mosier_
Notary Public
My commission expires: 1-18-17

JESSICA MOSIER
Notary Public, State of Michigan
County of Wayne
My Commission Expires Jan. 18, 2017
Acting in the County of [illegible]

2012 DEC -3 AM 10: 24
COURT OF APPEALS
TROY OFFICE
LARRY S. ROYSTER
CHIEF CLERK
RECEIVED

2

STATE OF MICHIGAN
IN THE COURT OF APPEALS

RONALD COOK

        Plaintiff-Appellant

vs.

                                              COA #: 308561
                                              LC#: 11-010396 CK

CITY OF DETROIT, and the Directors
                                              11-008334CL
of its Human Resources and Water and Sewerage Departments,
In Their Official Capacities,

                Defendants-Appellees

---

L. RODGER WEBB P33356
Attorney for Ronald Cook
17000 W. Ten Mile Road
Goodman Acker Building 2nd Floor
Southfield, MI 48075
(248) 395-9750

ANDREW JARVIS P59191
Assistant Corp Counsel for City of Detroit
660 Woodward Ave, Ste 1650
Detroit, MI 48226-3535
(313) 224-4550

## PROOF OF SERVICE

    L. Rodger Webb, counsel for Ronald Cook, states as an officer of the Court that on December 3, 2012 he served a copy of Plaintiff-Appellee Ronald Cook's Brief on Appeal in the captioned case on Andrew Jarvis, counsel of record, and Jason McFarlane, on information and belief Jarvis's successor at the Detroit Law Department, at the captioned address.

                    Respectfully submitted,

                    L. Rodger Webb, P.C.
                    Counsel for Ronald Cook
                    BY: _____
                    L. Rodger Webb (P 33356)
                    17000 W. Ten Mile Road, 2nd Floor
                    Southfield, MI 48075
                    Phone: 248-395-9750

Dated: December 3, 2012