UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,      .      Docket No. 13-53846
        MICHIGAN,             .
                              .      Detroit, Michigan
                              .      August 28, 2013
                Debtor.       .      10:04 a.m.
. . . . . . . . . . . . . . . . . .

EXCERPT OF HEARING RE. OPINION RE. STAY ISSUE

STATUS HEARING RE. CORRECTED MOTION TO ASSUME LEASE OR
EXECUTORY CONTRACT

MOTION FOR PROTECTIVE ORDER

ADVERSARY PROCEEDING 13-04942 - STATUS CONFERENCE

(OPINION OF THE COURT)

BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:      Jones Day
                     By:  GREGORY M. SHUMAKER
                     51 Louisiana Avenue, N.W.
                     Washington, DC  20001-2113
                     (202) 879-3679

                     Jones Day
                     By:  CORINNE BALL
                     222 East 41st Street
                     New York, NY  10017-6702
                     (212) 326-7844

For Syncora Hold-    Kirkland & Ellis, LLP
ings, Ltd., Syncora  By:  STEPHEN C. HACKNEY
Guarantee, Inc.,     300 North LaSalle
and Syncora Capital  Chicago, IL  60654
Assurance, Inc.:     (312) 862-2074

For Detroit          Honigman, Miller, Schwartz & Cohn, LLP
Entertainment, LLC-  By:  JUDY B. CALTON
Motor City Casino    660 Woodward Avenue, Suite 2290
and Greektown        Detroit, MI  48226
Casino, LLC:         (313) 465-7344

APPEARANCES (continued):

| | |
|---|---|
| For Ambac Assurance Corporation: | Arent Fox, LLP<br>By:  CAROLINE TURNER ENGLISH<br>1717 K Street, N.W.<br>Washington, DC  20036-5342<br>(202) 857-6178 |
| For Financial Guaranty Insurance Company: | Weil, Gotshal & Manges, LLP<br>By:  ALFREDO R. PEREZ<br>700 Louisiana, Suite 1600<br>Houston, TX  77002<br>(713) 546-5040 |
| For Erste Europaische Pfandbrief-und Kommunalkreditbank Aktiengesellschaft in Luxemburg, S.A.: | Ballard Spahr, LLP<br>By:  VINCENT J. MARRIOTT, III<br>1735 Market Street, 51st Floor<br>Philadelphia, PA  19103-7599<br>(215) 864-8236 |
| For FMS: | Schiff Hardin, LLP<br>By:  RICK L. FRIMMER<br>233 S. Wacker Drive, Suite 6600<br>Chicago, IL  60606<br>(312) 258-5511 |
| For Retiree Association Parties (Retired Detroit Police & Fire Fighters Association, Donald Taylor, individually and as President of the RDPFFA, the Detroit Retired City Employees Association and Shirley V. Lightsey, individually and as President of the DRCEA): | Lippitt O'Keefe, PLLC<br>By:  RYAN C. PLECHA<br>370 East Maple Road, 3rd Floor<br>Birmingham, MI  48009<br>(248) 723-6263 |

```
Court Recorder:        Letrice Calloway
                       United States Bankruptcy Court
                       211 West Fort Street
                       21st Floor
                       Detroit, MI  48226-3211
                       (313) 234-0068

Transcribed By:        Lois Garrett
                       1290 West Barnes Road
                       Leslie, MI  49251
                       (517) 676-5092
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1                              - - -

2          THE COURT:  Okay.  One moment, please.  Okay.  So in

3    terms of our order of proceeding today, I thought we would

4    start with the Court's opinion regarding the stay issue and

5    Syncora, and then we would do the status conference on the

6    Syncora adversary proceeding, and then the status conference

7    on the motion to assume and then the city's motion for a

8    protective order regarding the data room and then if there's

9    anything else anyone would like to bring up.  Is that order

10   okay with everybody?  Okay.  Perhaps so the record is clear,

11   we should just take appearances in regard to this stay issue

12   for the record.

13         MS. BALL:  Good morning, your Honor.  Corinne Ball

14   for the City of Detroit.

15         MR. HACKNEY:  Good morning, your Honor.  Nice to see

16   you again.  It's Steve Hackney on behalf of Syncora.

17         THE COURT:  All right.  Thank you.  The issue before

18   the Court is whether the casino revenues in the subaccount

19   held by U.S. Bank are property of the city protected by the

20   automatic stay.  It is the position of Syncora that these

21   casino revenues in this account held by U.S. Bank are not

22   property of the city.  In the alternative, Syncora contends

23   that either Section 362(b)(17) or Section 922(d) of the

24   Bankruptcy Code apply to provide an exception to the

25   automatic stay.  The city contends that these funds are

1    property of the city.

2            Section 362(a)(3) of the Bankruptcy Code stays any

3    act to obtain possession of property of the estate or of

4    property from the estate or to exercise control over property

5    of the estate.  Section 902(1) makes the references in

6    362(a)(3) to property of the estate to mean property of the

7    debtor.  So the application of the stay depends on whether

8    the property is property of the city.

9            Syncora argues that the subaccount in which the

10   casino revenues are held is similar to an escrow account,

11   and, therefore, the funds in the account are not property of

12   the city.  Under New York law, apparently applicable here, an

13   escrow is defined as, quote, "a written instrument which by

14   its terms imports a legal obligation and which is deposited

15   by the grantor, promisor, or obligor and -- or against

16   thereof, with a stranger or third party to be kept by the

17   depository until the performance of a condition or the

18   happening of a certain event.  The escrow relationship is of

19   a fiduciary nature and has some characteristics of a trust,"

20   close quote.  This is from -- excuse me -- 55 New York

21   Jurisprudence 2d Escrows Section 1.  With an escrow account,

22   the, quote, "incidents of ownership remain in the person

23   depositing the property into escrow until the conditions of

24   the escrow are fulfilled," close quote, 55 New York

25   Jurisprudence 2d Escrows Section 9.  See also 99 Commercial

1    <u>Street, Inc.</u> v. <u>Goldberg</u>, 811 F. Supp. 900 at 906, Southern
2    District of New York, 1993.

3              Pursuant to the collateral agreement, the casino
4    deposit -- the casino deposits -- sorry -- the casinos
5    deposit the funds owed to the city into the subaccount.  For
6    the subaccount to be an escrow account, as Syncora argues,
7    the arrangement would have to be such that the casinos would
8    retain ownership of the funds; however, there is simply no
9    basis in the collateral agreement for such a finding.

10             Likewise, there is no support for Syncora's
11   alternative argument that U.S. Bank, as the custodian, owns
12   the funds.  The fact that the city is not in possession of
13   the casino revenues is of no consequence in determining
14   whether they are the city's property.  See, for example,
15   <u>United States</u> versus <u>Whiting Pools, Inc.</u>, 462 U.S. 198, 103
16   Supreme Court Reporter 2309, 1983.  The Court must conclude
17   that the casino revenues are, under applicable state law,
18   property of the city.

19             Section 362(b)(17) of the Bankruptcy Code exempts
20   from the automatic stay, quote, "the exercise by a swap
21   participant or a financial participant of any contractual
22   right (as defined in section 560) under any security
23   agreement or arrangement or other credit enhancement forming
24   a part of or related to any swap agreement, or of any
25   contractual right (as defined in section 560) to offset or

1  net out any termination value, payment amount, or other

2  transfer obligation arising under or in connection with 1 or

3  more such agreements, including any master agreement for such

4  agreements."

5      Section 101(53C) of the Bankruptcy Code defines swap

6  participant as, quote, "an entity that, at any time before

7  the filing of the petition, has an outstanding swap agreement

8  with the debtor," close quote.

9      It is Syncora's position that the swap

10 counterparties are swap participants and that Syncora has the

11 right to direct the actions of the swap counterparties under

12 the collateral agreement and that, therefore, any action

13 taken by the swap counterparties at the direction of Syncora

14 is not subject to the automatic stay.  Syncora also contends

15 that because it is a third-party beneficiary of the

16 collateral agreement, it is a swap participant.  The Court

17 concludes, however, that there is no legal support for either

18 of Syncora's arguments.  Syncora is not a swap participant as

19 that term is defined by the Bankruptcy Code, and the Court

20 concludes, therefore, that it cannot rely on Section

21 362(b)(17).  If Congress had intended to include a party like

22 Syncora within the definition of a swap participant on the

23 grounds that Syncora now asserts, Congress could readily have

24 done that with more expansive language, but it did not.

25 Instead, it limited the definition to those who have swap

1  agreements with the debtor, which Syncora does not.

2       Lastly, Syncora argues that Section 922(d) of the

3  Bankruptcy Code is applicable.  That section provides, quote,

4  "Notwithstanding section 362 of this title and subsection (a)

5  of this section, a petition filed under this chapter does not

6  operate as a stay of application of pledged special revenues

7  in a manner consistent with section 927 of this title to

8  payment of indebtedness secured by such revenues."  Assuming,

9  without deciding, that the funds on deposit with U.S. Bank

10  are special revenues, this section is inapplicable.  Syncora

11  does not have a lien on the revenues.  Further, the

12  accumulation of the funds in the subaccount is not the,

13  quote, "application of special pledged revenues to the

14  payment of indebtedness," close quote.  It is merely an

15  administrative act.  Therefore, there is no indebtedness to

16  Syncora here.

17       Accordingly, the Court concludes that the casino

18  revenues are protected by the automatic stay.  The Court will

19  prepare and enter an order to that effect.  This order will,

20  of course, be without prejudice to the right of any party to

21  seek relief from the stay under Section 362(d).

22       (Excerpt concluded at 10:12 a.m.)

23                            - - -

INDEX


<u>WITNESSES:</u>

    None

<u>EXHIBITS:</u>

    None


        I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.


/s/ Lois Garrett                        August 30, 2013
_____                  _____
Lois Garrett