UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,          .          Docket No. 13-53846
        MICHIGAN,                 .
                                  .          Detroit, Michigan
                                  .          August 28, 2013
                    Debtor.       .          10:00 a.m.
. . . . . . . . . . . . . . . .

HEARING RE. OPINION RE. STAY ISSUE

STATUS HEARING RE. CORRECTED MOTION TO ASSUME LEASE OR
EXECUTORY CONTRACT

MOTION FOR PROTECTIVE ORDER

ADVERSARY PROCEEDING 13-04942 - STATUS CONFERENCE

BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:          Jones Day
                         By:  GREGORY M. SHUMAKER
                         51 Louisiana Avenue, N.W.
                         Washington, DC  20001-2113
                         (202) 879-3679

                         Jones Day
                         By:  CORINNE BALL
                         222 East 41st Street
                         New York, NY  10017-6702
                         (212) 326-7844

For Syncora Hold-        Kirkland & Ellis, LLP
ings, Ltd., Syncora      By:  STEPHEN C. HACKNEY
Guarantee, Inc.,         300 North LaSalle
and Syncora Capital      Chicago, IL  60654
Assurance, Inc.:         (312) 862-2074

For Detroit              Honigman, Miller, Schwartz & Cohn, LLP
Entertainment, LLC-      By:  JUDY B. CALTON
Motor City Casino        660 Woodward Avenue, Suite 2290
and Greektown            Detroit, MI  48226
Casino, LLC:             (313) 465-7344

APPEARANCES (continued):

| | |
|---|---|
| For Ambac Assurance Corporation: | Arent Fox, LLP<br>By:  CAROLINE TURNER ENGLISH<br>1717 K Street, N.W.<br>Washington, DC  20036-5342<br>(202) 857-6178 |
| For Financial Guaranty Insurance Company: | Weil, Gotshal & Manges, LLP<br>By:  ALFREDO R. PEREZ<br>700 Louisiana, Suite 1600<br>Houston, TX  77002<br>(713) 546-5040 |
| For Erste Europaische Pfandbrief-und Kommunalkreditbank Aktiengesellschaft in Luxemburg, S.A.: | Ballard Spahr, LLP<br>By:  VINCENT J. MARRIOTT, III<br>1735 Market Street, 51st Floor<br>Philadelphia, PA  19103-7599<br>(215) 864-8236 |
| For FMS: | Schiff Hardin, LLP<br>By:  RICK L. FRIMMER<br>233 S. Wacker Drive, Suite 6600<br>Chicago, IL  60606<br>(312) 258-5511 |
| For Retiree Association Parties (Retired Detroit Police & Fire Fighters Association, Donald Taylor, individually and as President of the RDPFFA, the Detroit Retired City Employees Association and Shirley V. Lightsey, individually and as President of the DRCEA): | Lippitt O'Keefe, PLLC<br>By:  RYAN C. PLECHA<br>370 East Maple Road, 3rd Floor<br>Birmingham, MI  48009<br>(248) 723-6263 |

```
Court Recorder:      Letrice Calloway
                     United States Bankruptcy Court
                     211 West Fort Street
                     21st Floor
                     Detroit, MI  48226-3211
                     (313) 234-0068

Transcribed By:      Lois Garrett
                     1290 West Barnes Road
                     Leslie, MI  49251
                     (517) 676-5092
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1          THE CLERK:  All rise.  Court is in session.  Please

2     be seated.  Case Number 13-53846, City of Detroit, Michigan,

3     and Case Number 13-04942, City of Detroit versus Syncora

4     Guarantee, Incorporated, et al.

5          THE COURT:  Okay.  I'd like to begin with

6     administering the oath of admission to attorneys who seek

7     admission to the Bar of the Court.  I think we have one

8     today, Ms. Newbury.

9          MS. NEWBURY:  Good morning, your Honor.

10          THE COURT:  Good morning.  And you are Ms. Newbury?

11          MS. NEWBURY:  Yes, I am.  Karen Newbury.

12          THE COURT:  And are you prepared to take the oath of

13     admission to the Bar of the Court?

14          MS. NEWBURY:  Yes, I am, your Honor.

15          THE COURT:  Please raise your right hand.  Do you

16     affirm that you will conduct yourself as an attorney and

17     counselor of this Court with integrity and respect for the

18     law, that you have read and will abide by the civility

19     principles approved by the Court, and that you will support

20     and defend the Constitution and laws of the United States?

21          MS. NEWBURY:  I do, your Honor.

22          THE COURT:  Welcome.

23          MS. NEWBURY:  Thank you.

24          THE COURT:  We'll take care of your paperwork for

25     you.

1          MS. NEWBURY:  Thank you very much.

2          THE COURT:  Okay.  One moment, please.  Okay.  So in

3     terms of our order of proceeding today, I thought we would

4     start with the Court's opinion regarding the stay issue and

5     Syncora, and then we would do the status conference on the

6     Syncora adversary proceeding, and then the status conference

7     on the motion to assume and then the city's motion for a

8     protective order regarding the data room and then if there's

9     anything else anyone would like to bring up.  Is that order

10    okay with everybody?  Okay.  Perhaps so the record is clear,

11    we should just take appearances in regard to this stay issue

12    for the record.

13         MS. BALL:  Good morning, your Honor.  Corinne Ball

14    for the City of Detroit.

15         MR. HACKNEY:  Good morning, your Honor.  Nice to see

16    you again.  It's Steve Hackney on behalf of Syncora.

17         THE COURT:  All right.  Thank you.  The issue before

18    the Court is whether the casino revenues in the subaccount

19    held by U.S. Bank are property of the city protected by the

20    automatic stay.  It is the position of Syncora that these

21    casino revenues in this account held by U.S. Bank are not

22    property of the city.  In the alternative, Syncora contends

23    that either Section 362(b)(17) or Section 922(d) of the

24    Bankruptcy Code apply to provide an exception to the

25    automatic stay.  The city contends that these funds are

1    property of the city.

2            Section 362(a)(3) of the Bankruptcy Code stays any

3    act to obtain possession of property of the estate or of

4    property from the estate or to exercise control over property

5    of the estate.  Section 902(1) makes the references in

6    362(a)(3) to property of the estate to mean property of the

7    debtor.  So the application of the stay depends on whether

8    the property is property of the city.

9            Syncora argues that the subaccount in which the

10   casino revenues are held is similar to an escrow account,

11   and, therefore, the funds in the account are not property of

12   the city.  Under New York law, apparently applicable here, an

13   escrow is defined as, quote, "a written instrument which by

14   its terms imports a legal obligation and which is deposited

15   by the grantor, promisor, or obligor and -- or against

16   thereof, with a stranger or third party to be kept by the

17   depository until the performance of a condition or the

18   happening of a certain event.  The escrow relationship is of

19   a fiduciary nature and has some characteristics of a trust,"

20   close quote.  This is from -- excuse me -- 55 New York

21   Jurisprudence 2d Escrows Section 1.  With an escrow account,

22   the, quote, "incidents of ownership remain in the person

23   depositing the property into escrow until the conditions of

24   the escrow are fulfilled," close quote, 55 New York

25   Jurisprudence 2d Escrows Section 9.  See also 99 Commercial

1   Street, Inc. v. Goldberg, 811 F. Supp. 900 at 906, Southern

2   District of New York, 1993.

3           Pursuant to the collateral agreement, the casino

4   deposit -- the casino deposits -- sorry -- the casinos

5   deposit the funds owed to the city into the subaccount.  For

6   the subaccount to be an escrow account, as Syncora argues,

7   the arrangement would have to be such that the casinos would

8   retain ownership of the funds; however, there is simply no

9   basis in the collateral agreement for such a finding.

10          Likewise, there is no support for Syncora's

11  alternative argument that U.S. Bank, as the custodian, owns

12  the funds.  The fact that the city is not in possession of

13  the casino revenues is of no consequence in determining

14  whether they are the city's property.  See, for example,

15  United States versus Whiting Pools, Inc., 462 U.S. 198, 103

16  Supreme Court Reporter 2309, 1983.  The Court must conclude

17  that the casino revenues are, under applicable state law,

18  property of the city.

19          Section 362(b)(17) of the Bankruptcy Code exempts

20  from the automatic stay, quote, "the exercise by a swap

21  participant or a financial participant of any contractual

22  right (as defined in section 560) under any security

23  agreement or arrangement or other credit enhancement forming

24  a part of or related to any swap agreement, or of any

25  contractual right (as defined in section 560) to offset or

1   net out any termination value, payment amount, or other

2   transfer obligation arising under or in connection with 1 or

3   more such agreements, including any master agreement for such

4   agreements."

5           Section 101(53C) of the Bankruptcy Code defines swap

6   participant as, quote, "an entity that, at any time before

7   the filing of the petition, has an outstanding swap agreement

8   with the debtor," close quote.

9           It is Syncora's position that the swap

10  counterparties are swap participants and that Syncora has the

11  right to direct the actions of the swap counterparties under

12  the collateral agreement and that, therefore, any action

13  taken by the swap counterparties at the direction of Syncora

14  is not subject to the automatic stay.  Syncora also contends

15  that because it is a third-party beneficiary of the

16  collateral agreement, it is a swap participant.  The Court

17  concludes, however, that there is no legal support for either

18  of Syncora's arguments.  Syncora is not a swap participant as

19  that term is defined by the Bankruptcy Code, and the Court

20  concludes, therefore, that it cannot rely on Section

21  362(b)(17).  If Congress had intended to include a party like

22  Syncora within the definition of a swap participant on the

23  grounds that Syncora now asserts, Congress could readily have

24  done that with more expansive language, but it did not.

25  Instead, it limited the definition to those who have swap

1    agreements with the debtor, which Syncora does not.

2         Lastly, Syncora argues that Section 922(d) of the

3    Bankruptcy Code is applicable.  That section provides, quote,

4    "Notwithstanding section 362 of this title and subsection (a)

5    of this section, a petition filed under this chapter does not

6    operate as a stay of application of pledged special revenues

7    in a manner consistent with section 927 of this title to

8    payment of indebtedness secured by such revenues."  Assuming,

9    without deciding, that the funds on deposit with U.S. Bank

10   are special revenues, this section is inapplicable.  Syncora

11   does not have a lien on the revenues.  Further, the

12   accumulation of the funds in the subaccount is not the,

13   quote, "application of special pledged revenues to the

14   payment of indebtedness," close quote.  It is merely an

15   administrative act.  Therefore, there is no indebtedness to

16   Syncora here.

17        Accordingly, the Court concludes that the casino

18   revenues are protected by the automatic stay.  The Court will

19   prepare and enter an order to that effect.  This order will,

20   of course, be without prejudice to the right of any party to

21   seek relief from the stay under Section 362(d).

22        So let's turn then to the adversary proceeding.  In

23   light of this order, is the city prepared to dismiss the

24   adversary proceeding against Syncora and others?

25        MR. SHUMAKER:  Your Honor, Gregory Shumaker of Jones

1   Day, for the record.  It's a pleasure to be here.  Your

2   Honor, the answer to your question is -- well, first is --

3   I'm not -- we obviously just heard your ruling, so a final

4   determination as to whether we might be able to dismiss the

5   case -- we would appreciate the opportunity to do that.

6   We're not sure if your Honor's ruling, however, covers all of

7   the factual findings that we would need and the declaratory

8   judgment that the city is seeking with regard to Syncora's

9   rights vis-a-vis the collateral agreement and the casino

10  revenues, and so I think that that determination remains

11  outstanding as does Syncora's lawsuit against the swap

12  counterparties in New York where they will be seeking a

13  similar -- and currently seek a similar -- not a similar

14  declaration, but a declaration of their rights -- a

15  declaratory judgment as to their rights.  We also -- so I

16  believe we still have the need to get those rights

17  adjudicated finally, all of the rights that are asserted by,

18  for example, Syncora in its motion -- its pending motion to

19  dismiss.  The New York action, too, remains out there.  It's

20  subject to a motion to transfer it to this Court.  When -- if

21  and when that action were to come here, perhaps a

22  consolidation would be appropriate, but, in any event, I'm

23  not -- I can't tell you right now, your Honor, that the city

24  is amenable to a dismissal because we --

25          THE COURT:  So if the motion to assume is denied,

1  that would moot out those claims as well; right?

2         MR. SHUMAKER:  Well, it would depend on why your

3  Honor denied it, I presume.  There are multiple objections to

4  the assumption motion.  If it had to do with Syncora's

5  rights, I think there is some question as to whether you will

6  be making findings in that regard.  We believe that you

7  should, but we -- based upon earlier comments from your

8  Honor, that seems to still be a question as to the --

9         THE COURT:  Can you be more specific about what you

10  want declared in the adversary proceeding?

11         MR. SHUMAKER:  Well, in the adversary proceeding

12  right now, it's a little bit complicated, your Honor,

13  because, if you'll recall, the adversary proceeding was filed

14  prior to the forbearance and optional termination agreement

15  being executed.  In fact, we pursued that so that the

16  forbearance agreement could be executed -- or negotiated,

17  finalized, and executed.  So right now the TRO that we

18  discussed last week relates to the city's allegations about

19  the irreparable harm that it would suffer if the casino

20  revenues were attached.  Syncora has, in response to that

21  complaint, filed a motion to dismiss, which asserts a broader

22  set of rights to the casino revenues based not only on the

23  collateral agreement but a number of other agreements, which

24  your Honor is probably all too aware of at this point, but,

25  you know, if the city would need to amend its complaint in

1   order to deal with those broader issues, I'm not sure, but
2   the New York action that is still out there, your Honor, is a
3   post-forbearance agreement suit, and it may or may not come
4   here, so it's a bit complicated.  And I'm not sure that your
5   ruling is going to -- on the assumption motion is going to
6   address that adjudication of rights.
7           THE COURT:  Okay.  So presently pending in the
8   adversary are the two motions that we've been discussing, the
9   motion to dismiss and the motion for a protective order; is
10  that right?
11          MR. SHUMAKER:  That's correct, your Honor.  The
12  motion to dismiss is not yet fully briefed.  The city filed
13  its reply brief earlier this week or late last week, and then
14  the motion for protective order emanated from the discovery
15  that Syncora sought back in the beginning of July, which we
16  believe for a number of reasons was oppressive, and we should
17  not be required to go through that.
18          THE COURT:  Is it premature to set hearing dates on
19  those two motions?
20          MR. SHUMAKER:  Well, your Honor, I believe that the
21  motion to dismiss reply brief is due September 12th, and
22  certainly at that time that would be --
23          THE COURT:  Obviously --
24          MR. SHUMAKER:  -- I would think a threshold issue.
25          THE COURT:  Obviously after that.

1          MR. SHUMAKER:  Yes, your Honor, because I presume

2     you would want to adjudicate that prior to discovery

3     proceeding, if you will.

4          THE COURT:  All right.  We'll have to work with my

5     schedule and the district courtroom's availability to provide

6     you with a date.  Mr. Hackney, would you concur that after

7     September 12 we can set hearings on these two motions?

8          MR. HACKNEY:  Absolutely, your Honor.  If I could --

9     I guess I have a couple quick observations --

10          THE COURT:  Sure.

11          MR. HACKNEY:  -- that might facilitate things.  I

12     guess it seems to me that the TRO is dissolved and that

13     logically that the preliminary injunction motion would be

14     withdrawn.  Now, if I'm wrong about that, I'll --

15          THE COURT:  Well, let's inquire.

16          MR. SHUMAKER:  With the stay in place, your Honor,

17     that would be fair, yes.

18          THE COURT:  All right.  There you go.

19          MR. HACKNEY:  The protective order -- the discovery

20     we sought was principally in connection with the anticipated

21     preliminary injunction hearing that we might have.  If there

22     is no preliminary injunction hearing, I do not believe that

23     there is a need for expedited interim discovery.  I would

24     instead propose that we proceed in the normal course under a

25     Rule 26 discovery conference, so I view that as sort of

1   mooting the protective order issues.  I had a --

2           THE COURT:  Would you concur with that, sir?

3           MR. SHUMAKER:  I would, your Honor.

4           THE COURT:  All right.  So all we'll set for hearing

5   is the motion to dismiss.

6           MR. HACKNEY:  That hopefully streamlines things,

7   your Honor.

8           THE COURT:  Good.  Thank you.

9           MR. HACKNEY:  I had a -- I did have a favor to ask,

10  which is we've been running relatively hard.  We are able to

11  do two things at once, but I will tell you we've been

12  relatively busy.  I was wondering if I could have an

13  extension of time of four days until September 16th to do our

14  reply brief.  The briefs in this --

15          THE COURT:  Any objections?

16          MR. SHUMAKER:  No, your Honor.

17          MR. HACKNEY:  And then we would, of course, be

18  willing to argue before -- subsequent to that time.

19          THE COURT:  All right.

20          MR. HACKNEY:  And those were all of the issues that

21  I had to discuss today.

22          THE COURT:  Okay.

23          MR. HACKNEY:  Thank you.

24          THE COURT:  Okay.  All right.  In regard to the

25  motion to assume, is there -- are there any issues or

1   comments or suggestions that anyone would like to make in
2   regard to that?

3          MR. SHUMAKER:  Your Honor, there are a few scattered
4   issues.  I should apprise your Honor of this.  You may have
5   noticed that deposition notices were filed.  Mr. Buckfire's
6   deposition is scheduled for 9:30 tomorrow morning, and Mr.
7   Orr's deposition is set for Friday at 8:30.  One issue that's
8   arisen as the -- and I've been dealing with Mr. Hackney,
9   who's been the liaison for the objectors -- is consistent
10  with your Honor's guidelines or at least proposed guidelines
11  for the September 9th hearing where we -- where the
12  suggestion, I believe, your Honor, was three hours for the
13  city to put on its case and then the objectors three hours to
14  respond.  We were -- one of the things that we did was we
15  withdrew one of the proposed witnesses, Gaurav Malhotra, who
16  is with Ernst & Young, who submitted a declaration on the
17  first day.  We did that to -- because we wanted to
18  consolidate.  We know that this is not supposed to be a mini
19  trial.  Your Honor really was not looking for, I think,
20  extensive discovery and had the debtor put forward its
21  witnesses, and those depositions are the ones that are going
22  to occur.  We withdrew that.  There seems to be a developing
23  question as to whether the Court can take judicial notice of
24  Mr. Malhotra's first day declaration, which is in the record.
25  There are a few paragraphs that relate to the COP's and the

1    swaps and the assumption motion.  I'm not -- we've had some

2    discussions earlier today just before coming into court.  If

3    your Honor is able to do that, wants to take judicial notice

4    of Mr. Malhotra's testimony, then we would continue to leave

5    him off.  If your Honor, however, believes that he needs to

6    appear as a witness and in order for that declaration to

7    get -- gain weight from the Court, which it would have if we

8    had not had discovery presumably, then I think we would have

9    to revisit the notion of Mr. Malhotra's presence on our

10   witness list.

11         THE COURT:  Well, I'm certainly willing to take

12   judicial notice of the fact that there is an affidavit there,

13   but that's not particularly pertinent.  You want me to take

14   judicial notice of the facts that he asserts in his

15   affidavit?

16         MR. SHUMAKER:  Well, as you would have, your Honor,

17   if there had not been discovery.  If you had -- if you had --

18   if you had proceeded on the papers for the assumption motion,

19   you would have considered the declaration and given it

20   whatever weight you believe necessary.  And given the --

21         THE COURT:  Well, but that's subject to the

22   opportunity of the opposing parties to question the witness.

23         MR. SHUMAKER:  I guess if you were then going -- if

24   you were going to look at the city's motion to assume and

25   then have discovery on it, but at least it was my

1  understanding, your Honor, that you were limiting that

2  discovery to just the debtor's witnesses that were going to

3  appear at the hearing so that the objectors would have some

4  idea of what -- how they would cross-examine the witness as

5  opposed to, you know, reopening the issue of what evidence

6  had been submitted to your Honor in connection with the

7  motion.

8          THE COURT:  Well, the Rules of Evidence apply, and

9  what he says in his affidavit is hearsay even though it's in

10  a court-filed document, so unless the parties opposing -- all

11  of them are willing to waive that hearsay objection, which I

12  would doubt, I would have to sustain any effort on your --

13  sustain an objection to any effort on your part to offer it

14  into evidence to prove the truth of any of the matters

15  asserted in it.

16          MR. SHUMAKER:  Your Honor, if that's your ruling,

17  then I would ask if we could reserve the right to put Mr.

18  Malhotra back on our witness list and schedule a deposition

19  for him.  Now, the deadline that you previously set was

20  August 30th.  I'm not certain of his availability at the

21  moment.  If that deposition moved a couple days into next

22  week, would that be all right with your Honor?

23          THE COURT:  It's fine with me so long as we can

24  stand firm with our hearing date.

25          MR. SHUMAKER:  Sure, sure.  And I presume we could

1  do that.  As your Honor knows, after Mr. Orr's deposition

2  concludes on Friday, the rebuttal witnesses will be named

3  within 24 hours, so those will be going on at the same time.

4          THE COURT:  Mr. Hackney.

5          MR. HACKNEY:  Well, I guess I'll just say that I

6  think the city made a decision about what witnesses it was

7  going to call, and it withdrew one of them, and now it's

8  regretting the evidential implications for the hearing, and

9  so I guess for me it's simple, which is when they decided to

10  withdraw Mr. Malhotra, they took him off the case as someone

11  that they could call at the hearing, and now they're asking

12  you to amend the discovery schedule that they previously, I

13  think, were agreeable to because of their decision to

14  withdraw him, so I guess I don't follow the cause for it.

15  That's all I'll say, your Honor.  We'll be guided by your

16  decision.

17          THE COURT:  Well, the question the Court needs to

18  address in these circumstances is how would the city's

19  changing its mind again prejudice your presentation or the

20  presentation of others at the hearing?

21          MR. HACKNEY:  Yeah.  And I guess the answer to

22  that -- I mean I've been coordinating all these folks, and

23  we've actually been working well in concert together.  I want

24  to share credit with the other objectors.  It's been very

25  constructive.  It's not that easy.

```
 1              THE COURT:  Right.

 2              MR. HACKNEY:  And so what we've been trying to do is

 3     be orderly in the way we depose these witnesses so it's not

 4     just this chaotic deposition, and so when Malhotra came off,

 5     a lot of prep for that deposition didn't happen.  If he went

 6     back on, we would want it to be sometime after the Labor Day

 7     holiday so that whomever can get ready for it.  That's, I

 8     guess -- I wouldn't want to try and jam it into this week.  I

 9     would want it to be like on Thursday or Friday of that

10     following week just so whomever -- in light of the holiday

11     and et cetera.

12              THE COURT:  Okay.

13              MR. HACKNEY:  Sorry, your Honor.

14              THE COURT:  No.  I appreciate it and understand it.

15              MR. PEREZ:  Good morning, your Honor.  Alfredo

16     Perez.  I represent FGIC.  Two things, your Honor.  With

17     respect to how you want the evidence presented, one of the

18     things that we would like to do is to make a presentation

19     with respect to how the swaps work in connection with the

20     COP's.  And we could certainly do that through a witness, but

21     I think, since it's a matter of, you know, reading the

22     documents, if the Court would indulge just a straightforward

23     presentation, that might expedite things.  I don't think it's

24     particularly -- it would be particularly controversial, so

25     that's one thing.
```

1          THE COURT:  Well, if you don't think it would be

2     controversial, what I would encourage you to do is work with

3     the city on a joint statement.

4          MR. PEREZ:  We can certainly do that, your Honor.

5     Then the other thing, your Honor, is I was tasked by the

6     various objectors to file a statement yesterday requesting

7     some additional time, and --

8          THE COURT:  I saw that.

9          MR. PEREZ:  And, your Honor, we would -- if the

10    issue were just the objectors versus the city, I think that

11    we could certainly comply -- fully comply and do a good job

12    for our clients, but there are -- as between the objectors,

13    there's really a lot of different issues, and, in fact, you

14    know, we're much more aligned with Syncora than we are with

15    anybody else since Syncora and FGIC are the only two people

16    who actually insure the swaps, so I would request additional

17    time with respect to that, your Honor.

18          THE COURT:  Six hours?

19          MR. PEREZ:  I think we could do it in six hours,

20    your Honor.

21          THE COURT:  You're dubious about even that?

22          MR. PEREZ:  Well, it depends.  Let me give you --

23    and that's why I asked the first question.

24          THE COURT:  Fully understanding that the issue here

25    is only whether to assume or reject this.  It has -- the

1    issue is not who has what rights under this contract.

2        MR. PEREZ:  I understand that, your Honor, but I

3    think in order -- in order for us to do a good job of

4    presenting whether we think -- you know, basically the facts

5    so that we can argue them to the Court, I really -- we really

6    kind of do think that the Court needs to understand the

7    transaction, and it's a complicated transaction.

8        THE COURT:  Well, but you're going to come up with a

9    joint statement with the debtor on that point.

10        MR. PEREZ:  Well, we're certainly going to try.

11        THE COURT:  Let's negotiate.  Five hours, and you

12    come up with a joint statement.

13        MR. PEREZ:  We'll do that, your Honor.  Thank you.

14        THE COURT:  Anything else in regard to preparation

15    for the hearing on the motion to assume?  Sir.

16        MR. MARRIOTT:  Briefly, your Honor.  Vince Marriott,

17    Ballard Spahr, on behalf of EEPK.  I would just like to echo

18    Mr. Hackney's observation that coordinating preparation for

19    these depositions among the objectors has been a complicated

20    process, and we've been designating who's going to prepare

21    for what, and Ballard Spahr has been heavily involved in that

22    process.  When that one witness came off, it did affect the

23    preparation.  And if the witness is going back on, we really

24    do need time to sort of reload in preparing for that witness.

25        THE COURT:  Yes.  Thank you.  Let me just ask will

1   this witness be available Thursday or Friday of next week?

2        MR. SHUMAKER:  Your Honor, I don't know, but I will

3   certainly attempt to make him available then.

4        THE COURT:  Well, doesn't he pretty much have to be

5   in order for our hearing date to proceed and to --

6        MR. SHUMAKER:  Yes.  You know --

7        THE COURT:  -- give the objecting parties the time

8   they have requested?

9        MR. SHUMAKER:  So the request, your Honor, just so

10  I'm clear, is that it's on Thursday or Friday of next week.

11       THE COURT:  That's what I heard.

12       MR. SHUMAKER:  Okay.

13       THE COURT:  Okay.

14       MR. SHUMAKER:  I don't know of him being out of the

15  country or anything like that, your Honor, but I'll do

16  everything within my power to make that happen.  And I'm sure

17  the odds are extremely low that he would not be available.

18       THE COURT:  Well, I hope you understand that if he's

19  not available for deposition, it will be challenging to

20  establish that he should be called as a witness.

21       MR. SHUMAKER:  Understood, your Honor.  Understood.

22       THE COURT:  Sir.

23       MR. FRIMMER:  Good morning, your Honor.  Rick

24  Frimmer from Schiff Hardin representing FMS Wertmanagement,

25  which was incorrectly listed previously as DEPFA Bank, PLC.

1          THE COURT:  Okay.

2          MR. FRIMMER:  I almost hesitate to do this, but just

3     to remind counsel that next Thursday and Friday are the

4     Jewish holidays.  Some of us won't be available.  So whether

5     or not the witness is available does cause of a bit of a

6     monkeywrench for some of the other players, so --

7          THE COURT:  That's a problem.

8          MR. FRIMMER:  -- I just wanted the Court and the

9     counsel to be sensitive to that.

10          THE COURT:  Well, let me ask is Wednesday an

11     acceptable day, and can you all prepare in time for the

12     deposition on that date?

13          MR. FRIMMER:  As Mr. Hackney correctly noted, we've

14     been trying to work together to coordinate this.  I'm sure

15     someone will be available.  I just wanted to alert the Court

16     just to remind everybody that some portion of the populous

17     here will not be available.

18          MS. ENGLISH:  Good morning, your Honor.  Caroline

19     English from Arent Fox on behalf of Ambac.  Just to point out

20     another wrinkle, if Malhotra testifies, we need the right to

21     call a potential rebuttal witness, which is going to put more

22     time into the schedule, and right now our hearing is

23     scheduled for Monday.  Thank you, your Honor.

24          THE COURT:  I was wondering when that issue was

25     going to arise.

1          MR. HACKNEY:  Your Honor --

2          THE COURT:  Sir.

3          MR. HACKNEY:  I was wondering.  I guess I'd like to

4   stick my head in the lion's mouth, so to speak, because I

5   think the Court has been clear that you want to have this

6   hearing on September 9th, and I appreciate that.  I

7   understand what you're trying to do.  I really do.  I've been

8   in situations before where it makes sense to hold the foot on

9   the accelerator, but I did want to make an observation to the

10  Court in light of two developments.  One of them is that

11  today you held that the city is going to have at least

12  interim access to these casino revenues during its case, and,

13  second, under the forbearance agreement, what's ostensibly

14  driving the schedule and the hurry-up is the idea that if

15  they don't get a final and unappealable order by September

16  16th, which is 60 days from the commencement of the case, the

17  swap counterparties may terminate the forbearance agreement.

18  It's a fact today that they will not have a final and

19  unappealable order by September 16th.  That is already

20  established.  If the Court's order is final, it will be

21  appealable, and if it's not final and unappealable, then it

22  won't be final.  I just raise this to ask a practical

23  question about whether or not we need to strictly adhere to

24  the schedule in light of some of the challenges it's posing.

25  And I also wanted to add one thing, your Honor, that may be

1    nearer and dearer to your heart, which is it impacts things

2    like the mediation.  You know, I'm part of the Syncora team.

3    I'm not going to the mediation tomorrow because I have to be

4    in the deposition.  I know Mr. Marriott was originally

5    planning to take the Buckfire deposition, but now he's going

6    to the mediation.  We can do two things at once.  We can take

7    depositions and mediate, but there is sometimes a desire to

8    see whether a mediation can be fruitful before parties take

9    up the time and expense of litigation, and it seems to me

10   that even a two- to three-week adjournment of the hearing may

11   solve many of the different issues that are coming up.  Just

12   a suggestion, your Honor.

13          THE COURT:  Anyone else want to say anything?

14          MR. SHUMAKER:  Your Honor, one -- excuse me -- two

15   things.  One, I've been asked to advise your Honor that a

16   retirees' committee has been formed and is, I think, in the

17   process of retaining counsel, who is here, Carole Neville of

18   Dentons, and I believe she may wish to address the Court, but

19   before she does, if I would, your Honor, if the objectors

20   would have five hours and Mr. Malhotra is on the slate for

21   the city, we'd ask this, that we be given an hour to make

22   sure that we could get his testimony because we were --

23          THE COURT:  So you want four instead of three?

24          MR. SHUMAKER:  Exactly, your Honor.  One of our

25   considerations was how can we do three witnesses in three

1  hours.

2          THE COURT:  Is he available next Wednesday?

3          MR. SHUMAKER:  I can check on a break.  I could

4  leave right now if your Honor would --

5          THE COURT:  All right.  I'm going to give you that

6  opportunity and sit here while you do that.  Wait.  What?

7  The issue is use of the telephone?

8          MR. HERTZBERG:  He can't use it out in the hallway,

9  your Honor, under the rules of the District Court.  He has to

10  go downstairs.

11          THE COURT:  I will grant you relief from that --

12          MR. SHUMAKER:  Thank you, your Honor.  Be right

13  back.

14          THE COURT:  -- and instruct the security personnel

15  to allow you to use your phone in the hallway.

16          MR. SHUMAKER:  Thank you, your Honor.

17          THE COURT:  Thank you, Mr. Hertzberg.

18      (Pause at 10:37 a.m., until 10:41 a.m.)

19          MR. HACKNEY:  Your Honor, can I propose something to

20  the Court while we're waiting on this information?

21          THE COURT:  Sure.

22          MR. HACKNEY:  I understand the city's sensitivity on

23  the subject of the schedule because under the forbearance

24  agreement they have a best efforts obligation, best efforts

25  to try and get this final appealable order within 60 days, so

1  I respect the fact that they need to exercise best efforts,

2  but I think the objectors in the court, we don't have that

3  obligation, and what I would propose is that we continue the

4  hearing one month and that the city vigorously oppose my

5  motion for a continuance.  And, your Honor, I think that may

6  allow for a number of things to happen that are potentially

7  conducive both to the use of your time, which is also

8  occupied by other matters, and to the coherence of the

9  presentation and to the mediation, and the city will comply

10 with its best efforts obligation to attempt to get a final

11 appealable order within 60 days, which, by the way, it

12 already cannot get, but it has used its best efforts.

13          THE COURT:  Ms. Ball.

14          MS. BALL:  Thank you, your Honor, with vigor.  Your

15 Honor, Mr. Hackney has correctly calculated the dates, so I

16 cannot contest his description of where we will find

17 ourselves should your Honor approve the settlement and the

18 assumption of the forbearance agreement.  We do also have the

19 obligation that Mr. Hackney has described as a best efforts

20 obligation.  Your Honor, we have all tried mightily, and my

21 partner, Greg, is out trying to find out if we can do a

22 deposition on Wednesday.  I certainly question whether a

23 month is necessary because, your Honor, there are other

24 economic provisions in the agreement, which Mr. Hackney may

25 not be as aware of at this point, but I'm sure by the time of

our hearing he will be, where some of the economic benefits
that we must obtain are important.  But in fairness to your
Honor, our ability to obtain those economic benefits is in
some respects tied to two other events, which are on a
different schedule, and those two other events, your Honor,
you scheduled with an order earlier this week, the
eligibility hearing as well as, your Honor, any effort to
obtain -- and we are working mightily -- post-petition
financing.  Actually funding it will likely require a
resolution of the eligibility issue.  So we have not just the
parallel tracks of mediation and litigation.  We actually
have the track -- if the city is going to get the benefit
of -- one of the reasons why it did this, clearly one, your
Honor's ruling -- we thank you; it was very important -- was
getting immediate access, continuing access to casino
revenues, and I certainly am grateful for your ruling and
don't want to under -- in any way understate the importance
of that.  So, your Honor, I really question whether or not 30
days is appropriate.  I do think that if -- in fairness to
the Court and in light of what you've already heard certainly
from Mr. Perez on behalf of FGIC and from Ambac as well as
Syncora, this is complicated, and a better presentation --
the more we work out in advance of this hearing, the better
off we will all be in terms of as much being stipulated facts
and a very short succinct but accurate joint statement.  So

1  with that, your Honor, we are -- we will go forward on

2  September 9th assuming Mr. Malhotra is available on

3  Wednesday, but at my -- discharging my obligations to this

4  Court, I have to just make those three points.  That

5  condition is virtually impossible to meet through no fault.

6  Secondly, there are other -- two other deadlines out there

7  that we're mindful of for getting the economic benefit.  Your

8  Honor, I'm talking about when the discount of 75 percent

9  increases to 77, so we think a month is too long if you're

10  even considering this motion.  And, thirdly, your Honor, as

11  I've apprised you, we're going to be somewhat in a bind with

12  financing on the schedule, so a short adjournment would not

13  injure the city terribly, but obviously, your Honor, we will

14  be prepared to go forward on September 9th, if that's your

15  Honor's ruling, on the motion for continuance.  Thank you.

16       THE COURT:  Ms. Ball or Mr. Hackney, what are your

17  appearance obligations in relation to mediation?

18       MR. PEREZ:  Thursday, your Honor, is the mediation

19  with respect to the swaps, and then on the 17th is the

20  overall mediation.  And I would imagine that there would be

21  other dates set as soon as we have those dates.

22       MS. BALL:  And, your Honor, the retirees' committee

23  has asked to participate in the assumption, and they have to

24  get up to speed.

25       THE COURT:  Right.

1      MR. PLECHA:  If I may, your Honor, Ryan Plecha on

2  behalf of the Retiree Association Parties.  It is my

3  knowledge that counsel for the committee has been selected,

4  but it has not yet been formally retained.  But it does wish

5  to participate relative to the motion on the lease, so I did

6  just want to make that clear for the Court.

7      THE COURT:  Thank you.

8      MR. PLECHA:  Thank you.

9      THE COURT:  What is your report, sir?

10      MR. SHUMAKER:  Your Honor, I'm sorry.  As luck would

11  have it, we called his office, his cell, and e-mailed him and

12  haven't heard anything yet.  Perhaps by the time we adjourn,

13  I'll know if I can keep looking at my Blackberry.  I'm sorry.

14      THE COURT:  One more second, please.  What would be

15  the consequences to the city that would concern it if the

16  matter were adjourned to Monday and Tuesday, the 23rd and

17  24th?

18      MR. SHUMAKER:  I'm sorry, your Honor.  I was reading

19  the e-mail that says that the witness would be available on

20  Wednesday if that's -- I'm sorry -- moving the assumption

21  motion --

22      THE COURT:  23rd and 24th.

23      MS. BALL:  Your Honor, noting our objection to any

24  adjournment to be in compliance with our best efforts, we do

25  not believe that it will adversely affect any other provision

1 of the agreement.

2         THE COURT: Mr. Hackney.

3         MR. HACKNEY: Your Honor, I think that that would be

4 helpful, and I would have one additional suggestion, which is

5 that I think that the way we should use this adjournment is

6 to, in addition to creating order on the litigation side, to

7 create a little bit of space to see what happens with the

8 mediation. That would be the purpose, in my mind. I would

9 recommend then that -- I would recommend allowing depositions

10 to complete at a time that's closer to the hearing so that we

11 all don't remain in the same litigation scrum that we're

12 currently in and have to --

13        THE COURT: What would you suggest, sir?

14        MR. HACKNEY: And the 23rd, your Honor -- I'm sorry.

15 I don't have my --

16        THE COURT: 23rd is a Monday, Monday and Tuesday,

17 the 23rd and 24th.

18        MR. HACKNEY: You know what? In bankruptcy

19 litigation a lot of times the depositions will run up a

20 little bit closer to the hearings, and I would say that I

21 would do it -- I would cut it off on the Wednesday before.

22        THE COURT: That would be the 19th?

23        MR. HACKNEY: Yes, sir.

24        THE COURT: Any objection to that, Mr. Shumaker?

25        MR. SHUMAKER: Your Honor, we have the eligibility

1  track going on, and the nonexpert depositions are to be
2  completed on the 23rd for that.  The witnesses are also here
3  and available tomorrow and Friday.  We would propose --
4        THE COURT:  Oh, I think you should go ahead with
5  those regardless.
6        MR. SHUMAKER:  And I think --
7        THE COURT:  They're scheduled.
8        MR. SHUMAKER:  I think that's --
9        THE COURT:  And with a third of the city's witnesses
10  next Wednesday.
11        MR. SHUMAKER:  Yes.  I think subject to what Ms.
12  Ball has already said, then that would be fine with the city.
13        THE COURT:  I'm sorry if I misunderstood you, Mr.
14  Hackney.  I thought you were talking about extending the
15  opportunity for rebuttal witnesses' depositions through the
16  19th.
17        MR. HACKNEY:  That's correct.
18        THE COURT:  All right.  Sorry.  Let's stick with the
19  schedule you have for the city's witnesses' depositions.
20  Okay.  All right.  Subject to the availability of a courtroom
21  here in this building, we will reschedule the hearing on the
22  assumption motion for the 23rd and the 24th.  The Court will
23  allow the city four hours and the objecting parties five
24  hours, and I want you to work with your best efforts to come
25  up with a joint statement on how the swaps and COP's work.

1    MR. SHUMAKER:  We will do that, your Honor.

2    THE COURT:  Yes.  Okay.  Let's turn our attention

3 then to the city's motion for a protective order regarding

4 the data room.

5    MR. SHUMAKER:  Your Honor, you recall our colloquy

6 last week about the data room, and consistent with my

7 representation to you, the city filed the motion for

8 protective order.  I don't believe that there are any

9 objections to it.  It has to do with the access to the data

10 room.  Two of the things that have occurred, as reflected in

11 the motion, are we have removed any requirement that the

12 objectors or others with discovery rights sign an NDA, and we

13 have also gone back to the city's pension actuary, Milliman,

14 and essentially renegotiated that contract such that they no

15 longer will require an NDA to access their materials.  The

16 only outstanding issue was, just for clarity purposes, that

17 the city would still be able to redact personally

18 identifiable information.  There's very few documents -- I

19 mean I think less than a handful -- that have Social Security

20 numbers, home addresses, and even the city's own bank account

21 number, but that's what the city seeks to do with this

22 motion.

23    THE COURT:  Anyone object to the city's redaction of

24 personally -- of personal information?  There was an

25 objection or a request really, more appropriately stated,

1  that the city waive any NDA obligations of people who have

2  already signed them and waive any releases that people

3  entered into as a condition previously of entering into this

4  room.

5        MR. SHUMAKER:  We'll, of course, do that, your

6  Honor.

7        THE COURT:  You will.  All right.  One of the papers

8  actually had proposed language, I think, to be added to the

9  order that you seek.  Did you see that language?

10        MR. SHUMAKER:  I know that came in last night.

11  Thank you.

12        THE COURT:  Well, we don't have to review it now.

13  Let me just ask you to work with --

14        MR. SHUMAKER:  Certainly.

15        THE COURT:  -- whoever filed that to see if you can

16  agree upon the language and to submit an amended order

17  through our order processing program.

18        MR. SHUMAKER:  We will do that, your Honor.

19        THE COURT:  Ms. Calton, did you want to be heard?

20        MS. CALTON:  Yes, your Honor.  Judy Calton for

21  Detroit Entertainment, LLC, which is Motor City Casino.  At

22  present the casino has to file financial information

23  regularly with the city under the Michigan Gaming Control

24  Act, and under the Act that information is confidential, and

25  it can't be subject of a Freedom of Information Act

1 disclosure. As far as I can tell, that information today is

2 not in the data room. My client is concerned that its right

3 for that information to be confidential maintains

4 confidential or at least if they're going to feel that they

5 should make it public that we have an opportunity for advance

6 knowledge and to seek a protective order. And I feel kind

7 of -- it's not a today issue, but we need to be protected in

8 case tomorrow they decide to put it in there.

9       THE COURT: Any thoughts on this?

10       MR. SHUMAKER: Your Honor, we have no intention of

11 putting the financial statements that Ms. Calton talks about

12 in there. If for some reason that would change, we would

13 endeavor to talk to counsel about that.

14       THE COURT: That representation sufficient for you?

15       MS. CALTON: Yes. Thank you.

16       THE COURT: All right. The motion is granted with

17 the condition that the city seeks and the additional

18 condition that we've discussed here. Please submit an order.

19 Would anyone else like to raise anything else here today?

20 All right.

21       MR. SHUMAKER: Your Honor, if I may, one --

22       THE COURT: Sir.

23       MR. SHUMAKER: I'm sorry. One issue that has arisen

24 with the depositions -- and I don't have any firsthand

25 knowledge of this, and I tread lightly given our exchange

1  last week, but apparently there has been some media inquiries

2  about attending the depositions of Mr. Buckfire and Mr. Orr.

3  I raise that because we want to avoid tomorrow or Friday some

4  sort of situation where people are trying to get into the

5  deposition room, the witnesses are prejudiced by, you know,

6  the commotion, and we're just -- we're seeking whether --

7  wondering if we could get some clarification from your Honor

8  as to the fact that hopefully --

9         THE COURT:  What's your position on whether it

10  should be allowed or not?

11        MR. SHUMAKER:  Well, the witnesses will be present

12  on September 9th for the hearing, so obviously they will be

13  present then.  If your Honor wants us to provide a transcript

14  from the deposition to the press, we could do that if need

15  be, but I really am worried about crowd control, if you will,

16  tomorrow where the deposition is going to take place.

17        THE COURT:  Mr. Hackney.

18        MR. HACKNEY:  I do share Mr. Shumaker's concerns

19  just on the subject of crowd control.  I had a suggestion for

20  your Honor, which is -- I'm not entirely certain, I'll

21  confess, about whether parties in interest in the case

22  generally that haven't objected to the motion are entitled to

23  appear at a deposition and ask questions.  I'll just tell you

24  that I just don't know the answer to that.  From an orderly

25  process --

1          THE COURT:  The answer is no.

2          MR. HACKNEY:  Okay.  That's helpful because my

3  suggestion was that the only people that be allowed to appear

4  in person at the deposition would be parties that have

5  objected and that perhaps could --

6          THE COURT:  I agree with that.

7          MR. HACKNEY:  -- communicate with me and Mr.

8  Shumaker who they will be maybe I'll just say.

9          THE COURT:  Um-hmm.

10          MR. HACKNEY:  That will allow us to exercise some

11  crowd control over the physical room we're taking the

12  deposition in.

13          THE COURT:  Um-hmm.

14          MR. HACKNEY:  We have a conference call line that

15  we're going to set up for people that want to listen in, and

16  so that was requested by certain people that couldn't be in

17  Detroit, and separately --

18          THE COURT:  Certain attorneys representing parties

19  who have filed objections?

20          MR. HACKNEY:  Yes, for sure.  Like I said, I didn't

21  know coming to the podium today how parties in interest were

22  handled in terms of their ability to even attend.  And the

23  idea of giving a transcript after the deposition would seem

24  to address some of the public interest concerns that the

25  people of the city legitimately have --

1          THE COURT:  Um-hmm.

2          MR. HACKNEY:  -- you know, so that would be our

3    suggestion.

4          THE COURT:  Um-hmm.  Would anyone else like to be

5    heard regarding this specific issue?

6          MR. PLECHA:  Good morning, your Honor.  Ryan Plecha

7    again on behalf of the Retiree Association Parties.  Because

8    of the new nature of the retiree committee, I would request

9    that they be allowed to attend even though they've not had

10   the opportunity to file a formal objection at this point.

11         THE COURT:  Um-hmm.  Interesting point.  Anybody

12   object to that?

13         MR. HACKNEY:  No, your Honor.

14         THE COURT:  The Court will permit that then.  All

15   right.  I do think it is appropriate to order that only

16   parties plus a representative of the retiree committee to

17   attend these depositions.  The Court will order the release

18   of the transcript of the depositions to the press upon their

19   request but that no other members -- no other parties in the

20   case or no members of the press otherwise be permitted to

21   attend these depositions.  Anything further yet?  Thank you

22   for bringing that up.  All right.  We'll be in recess then.

23         THE CLERK:  All rise.

24         MR. HACKNEY:  Thank you, your Honor.

25         THE CLERK:  Court is adjourned.

1       (Proceedings concluded at 11:01 a.m.)

2                                    *  *  *




                                  INDEX



WITNESSES:

        None

EXHIBITS:

        None



        I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.



/s/ Lois Garrett                      August 30, 2013
_____      _____
Lois Garrett