# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 9 |
|  | ) |  |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
|  | ) |  |
| Debtor. | ) | Hon. Steven W. Rhodes |
|  | ) |  |

**THE MICHIGAN COUNCIL 25 OF THE AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, AFL-CIO AND SUB-CHAPTER 98, CITY OF DETROIT RETIREES' (I) OBJECTIONS AND COMMENTS TO THE COURT'S AUGUST 26, 2013 ORDER REGARDING ELIGIBILITY OBJECTIONS NOTICES OF HEARING AND CERTIFICATIONS PURSUANT TO 28 U.S.C. § 2403(a) & (b) AND (II) EXPEDITED MOTION TO COMPEL DEPOSITIONS OF CITY WITNESSES**

The Michigan Council 25 of the American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees (the AFSCME retiree chapter for City of Detroit retirees) (collectively, "**AFSCME**") -- the representative of the interests of between at least forty and fifty percent (40-50%) of the about 11,943 retired City of Detroit (the "**City**" or "**Debtor**") non-uniformed employees (the "**Retired AFSCME Employees**"), and about 2,523 active City employees (the "**Active AFSCME Employees**", or about seventy percent (70%) of the active non-uniformed union-represented employees, and together with the Retired AFSCME Employees, collectively, the "**AFSCME Detroit Employees**") -- through its counsel submits this (I) objection (the "**Objection**") to the Court's August 26, 2013 *Order Regarding Eligibility Objections Notices of Hearing and Certifications Pursuant to 28 U.S.C. § 2403(a) & (b)* [Docket No. 642] (the "**August 26 Order**") and (II) expedited motion to compel depositions of City witnesses, and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The August 26 Order, in keeping with the Court's prior scheduling order regarding eligibility, seeks to continue to move the City's eligibility determination process along at prejudicial speed – particularly when compared to other recent chapter 9 proceedings where eligibility determinations have taken a year or longer.  Given the stakes at issue for all parties (in particular the AFSCME Detroit Employees), the mediation currently scheduled for September 17, 2013 (which will likely continue thereafter), and the significant and unprecedented legal and factual issues to be adjudicated, AFSCME respectfully requests (at minimum) a one (1) month extension of all the scheduling deadlines and trial dates regarding eligibility.

2.      Although AFSCME believes that an extension of the eligibility schedule is appropriate, to the extent such extension is not granted, AFSCME will, to the extent possible, comply with the Court's August 26 Order by, among other things, (i) identifying solely legal issues for immediate oral argument and (ii) proceeding with discovery and ultimately to trial on contested factual issues.

3.      However, the Court's (and City's) clear desire for expediency cannot impinge on or limit AFSCME's rights to, among other things, (i) challenge the Court's jurisdiction to rule on the constitutional issues, (ii) fully and completely argue and/or present **all** of the factual issues and legal theories regarding eligibility including those AFSCME asserted in its eligibility objection [Docket No. 505] (the "**Eligibility Objection**"), and (iii) properly conduct discovery related to all relevant information (or discovery that could lead to relevant information) to support AFSCME's positions.

4.  AFSCME respectfully objects to the August 26 Order to the extent, as further described below, that it improperly limits any of AFSCME's rights. Certain of AFSCME's comments and objections, as discussed further below, can be resolved by proposed modifications to the August 26 Order, and attached as **Exhibit A** hereto are specific comments to the August 26 Order which, if adopted by the Court, would resolve some of AFSCME's concerns.

5.  Additionally, AFSCME understands that the City and State may seek to utilize the August 26 Order to limit depositions sought by AFSCME of proper witnesses. While AFSCME responded to the State's motion to quash and has been meeting and conferring with the City regarding an agreed City witness list and deposition schedule and hopes to reach agreement, given the (i) current fast-tracked schedule, (ii) lack of any agreement to date on a schedule or scope for the now shorter list of agreed-to witnesses, and (iii) stated opposition by the City over producing Mayor David Bing, AFSCME, out of an abundance of caution, files this expedited motion to compel production of all the requested witnesses under the City's control, including Emergency Manager Kevyn Orr, Mayor David Bing, City Director of Labor Relations Lamont Satchel, Kenneth Buckfire (Miller Buckfire), Guarav Malhotra (Ernst & Young), Charles Moore (Conway McKenzie), Katherine A. Warren (Milliman) and Glenn Bowen (Milliman).[1]

---

[1] AFSCME also noticed depositions of additional individuals from the firms Miller Buckfire and Ernst & Young, but given the City's representations that Mr. Buckfire, Mr. Malhotra and Mr. Moore will be the individuals testifying regarding contested eligibility issues, AFSCME agreed with the City to withdraw the subpoenas for the depositions of Kyle Herman (Miller Buckfire), James Doak (Miller Buckfire), Daniel Jerneycic (Ernst & Young), and Juan Santambrogio (Ernst & Young), without prejudice to its right to re-issue those subpoenas if the circumstances so require.

**A.     AFSCME Reasserts Its Objection To This Court's Jurisdiction To Decide Constitutional Issues**

6.     While the August 26 Order lists AFSCME as one of the parties asserting that this Court "does not have **authority** to determine the constitutionality of Chapter 9 of the Bankruptcy Code" (August 26 Order, § II.2, emphasis added), AFSCME's argument in the Eligibility Objection included that "the Bankruptcy Court lacks **jurisdiction** over matters related to the federal constitutionality of chapter 9 of the Bankruptcy Code" (not only that this Court lacks authority) and requested that this "Court should immediately refer this constitutional challenge to chapter 9 to the District Court for the Eastern District of Michigan." *See* Eligibility Objection, pp. 2; 29-31 (emphasis added).  AFSCME should expressly be allowed to argue this point regarding jurisdiction at oral argument (and, as set forth in Exhibit A, the order should so provide), and AFSCME is of the view that any decision rendered regarding the constitutionality of chapter 9 must be decided by an Article III judge.

7.     Furthermore, to the extent the August 26 Order purports to limit parties such as AFSCME from arguing whether the Bankruptcy Court has the authority or jurisdiction to determine the constitutionality of chapter 9, Michigan Public Act 436 of 2012, or any other statute, these jurisdictional arguments, such as those based on *Stern v. Marshall,* cannot be waived whether or not asserted in prior briefing or on appeal.  *See*, *e.g., Wellness Int'l Network, Ltd. v. Sharif*, 2013 WL 4441926 (7th Cir. Aug. 21, 2013) ("constitutional objection based on *Stern* [*v. Marshall*] is not waivable because it implicates separation-of-powers principles."); *In re Semcrude, L.P.*, 2013 WL 4517238 (3d Cir. Aug. 27, 2013); *In re Archdiocese of Milwaukee*, 2013 WL 3937021 (E.D. Wis. July 29, 2013).

8.     Given the statement in the August 26 Order permitting the United States to "intervene for argument on the question of the constitutionality of chapter 9 of the Bankruptcy

Code" (August 26 Order, § IX), it appears that the Court intends to consider ruling on the constitutional questions on the merits, which AFSCME opposes given this Court's lack of jurisdiction to rule on this issue.

9.      Moreover, AFSCME reiterates that by participating in the eligibility objection process (including taking discovery regarding eligibility), AFSCME does not consent to this Court's jurisdiction or waive its rights to have an Article III court with proper jurisdiction decide the constitutionality of chapter 9.

**B.      AFSCME Must Be Permitted To Argue And/Or Take Discovery On All The Issues Asserted In AFSCME's Eligibility Objection**

10.     While the August 26 Order identifies several eligibility objections made by AFSCME as raising purely legal issues and thus as appropriate for oral argument on September 18, 2013 without the aid of discovery and trial presentation, AFSCME objects to the Order's characterization of AFSCME's arguments on several grounds: (i) the Order fails to schedule for oral argument all of the legal issues relating to eligibility including the full panoply of legal issues explicitly raised in AFSCME's Eligibility Objection; (ii) the Order fails to identify as appropriate for discovery and trial the full panoply of genuine issues of fact including those raised by AFSCME's Eligibility Objection; (iii) the Order omits AFSCME as a party to certain legal arguments raised in its Eligibility Objection; and (iv) the Order appears to mischaracterize (and improperly rule) that certain issues raised by AFSCME's Eligibility Objection, including for example issues relating to authorization, are purely legal, when these issues contain issues of fact which require discovery and trial.   These limiting mischaracterizations, if left uncorrected, prevent AFSCME from preserving its full rights to obtain all necessary and relevant discovery and/or fully develop the record.

**(i)** **The Order Should Confirm AFSCME Can Raise At Oral Argument The Full Scope Of The Federal Constitutional Issues Raised In AFSCME'S Eligibility Objection (Which Are Likely Subsumed By The Order Already)**

11. First, out of an abundance of caution, AFSCME believes that the August 26 Order should clarify that AFSCME can be heard on all federal constitutional issues at oral argument, without limitation, including those raised in AFSCME's Eligibility Objection and perhaps included under several of the categories listed in Section II of the August 26 Order:

1. Chapter 9 Violates the U.S. Constitution (Eligibility Objection, ¶¶ 40-66)

   a. Chapter 9 unconstitutionally violates the federal structure of government because it allows Congress to exert impermissible control over state fiscal self-management. (Eligibility Objection, ¶¶ 40-62)

   b. Chapter 9 unconstitutionally violates the federal structure of government by allowing a state to commit otherwise unlawful acts simply by consenting to comply with an Act of Congress. (Eligibility Objection, ¶¶ 40-43)

   c. The rationale of the Supreme Court in upholding municipal bankruptcy in *United States v. Bekins* is no longer present because states can now pass their own statutes for municipal debt adjustment. (Eligibility Objection, ¶¶ 44-45)

   d. The rationale of the Supreme Court in upholding municipal bankruptcy in *United States v. Bekins* is no longer present because intervening Supreme Court precedent strengthening the federalism doctrine has effectively overruled *Bekins.* (Eligibility Objection, ¶¶ 46-62)

      i. An individual citizen, such as an AFSCME Employee, possesses the right to the strict demarcation of authority between his federal and state government as a constitutional right against each of the federal government and the state government separately. (Eligibility Objection, ¶¶ 48, 59)

      ii. The strict separation of powers in the U.S. Constitution protects individual liberty by ensuring that each of the state and federal government remain accountable to its citizens for defined functions and not accumulate excessive power, and chapter 9 violates that constitutionally required system of accountability by obscuring whether the state or federal government is responsible for the outcome of bankruptcy proceedings. (Eligibility Objection, ¶¶ 49-59)

         1. Chapter 9 impinges an individual citizen's right to hold his state accountable by, *inter alia,* empowering the Bankruptcy Court during

bankruptcy proceedings to use its equitable powers to order the state debtor to turn over documents; engage in mediation and negotiation; and appoint a trustee, who can in turn recover preferential transfers from the debtor. (Eligibility Objection, ¶¶ 52-53)

2. Chapter 9 impinges an individual citizen's right to hold his state accountable by, *inter alia,* empowering the Bankruptcy Court to require that priorities of distribution from the Bankruptcy Code be satisfied in any plan of adjustment. (Eligibility Objection, ¶ 54)

iii. An adjustment of a municipality's debts should be accomplished by the state political process in order to protect the accountability of a state to its citizens. (Eligibility Objection, ¶ 57)

e. The degree of autonomy retained by a state under chapter 9 is irrelevant because the statute compromises the very principle of separate state sovereignty. (Eligibility Objection, ¶ 56)

f. Chapter 9 is a non-uniform law in violation of the Bankruptcy Clause because it permits the promulgation of non-uniform state laws which define each state's own distinct qualifications for eligibility. (Eligibility Objection, ¶ 58)

g. Chapter 9 would have been foreign to the framers' original intent for use of the Bankruptcy Clause of the Constitution. (Eligibility Objection, ¶ 58)

h. Under *New York v. United States,* the state consent requirement in chapter 9 does not cure the violation of individual rights. (Eligibility Objection, ¶¶ 60-62)

i. The state consent requirement in chapter 9 increases accountability problems presented by chapter 9 (Eligibility Objection, ¶ 62)

2. AFSCME members have individual standing to assert that chapter 9 violates their individual rights. (Eligibility Objection, ¶¶ 63-66)

a. *Bond v. United States* squarely holds that individuals can challenge a congressional statute on the ground that it intrudes upon the sovereignty and authority of the states. (Eligibility Objection, ¶ 63)

i. Under *Bond,* chapter 9 is invalid because it insulates the state from a democratic process for adjusting the debts of its political subdivisions. (Eligibility Objection, ¶ 64)

ii. Under *Bond,* chapter 9 is invalid because it gives the federal government arbitrary and excessive power over the concerns of public life. (Eligibility Objection, ¶ 64)

b. Whether a state has invited federal incursion on state authority is not relevant under *Bond.* (Eligibility Objection, ¶ 65)

     c.   Because Michigan citizens have the right to design their own law for municipal debt adjustment which might differ from chapter 9, and because chapter 9 designs a process for the state and its political subdivisions to adjust debts in ways impermissible outside of chapter 9, individual Michigan citizens (such as AFSCME members) have standing to object to chapter 9 on federalism grounds. (Eligibility Objection, ¶ 66)

3.   The Bankruptcy Court lacks jurisdiction to decide whether chapter 9 violates the Constitution under *Stern v. Marshall.* (Eligibility Objection, ¶¶ 67-71)

     a.   Resolution of federal constitutional questions is an exercise of the "judicial power of the United States," which is reserved for Article III judges. (Eligibility Objection, ¶ 67)

     b.   The "public rights" exception permitting bankruptcy courts to issue certain final orders does not apply to AFSCME's constitutional challenge to chapter 9 because AFSCME's challenge is independent of the federal bankruptcy statute itself and not resolvable simply by ruling on a proof of claim under that statute. (Eligibility Objection, ¶ 68)

     c.   The "public rights" exception permitting bankruptcy courts to issue certain final orders does not apply to AFSCME's constitutional challenge to chapter 9 because AFSCME's challenge is disconnected from any federal regulatory scheme and does not seek to enforce a right created by congressional statute, but rather a constitutional right. (Eligibility Objection, ¶¶ 69-70)

     d.   In light of its lack of jurisdiction, this Court should immediately refer this case to the District Court for the Eastern District of Michigan. (Eligibility Objection, ¶ 71)

     **(ii)**   **The Order Should Confirm That AFSCME Can Take Discovery On The Full Scope Of Factual Issues Raised By AFSCME'S Eligibility Objection Regarding Good Faith, Insolvency, and Treatment of Pension Rights (Which Are Likely Subsumed By The Order Already)**

12.     Additionally, and further out of an abundance of caution and without limitation, AFSCME believes that the August 26 Order should clarify that AFSCME can take discovery on the following issues involving contested material facts, which are likely already subsumed under several of the categories listed in Section V of the August 26 Order:

1.   11 U.S.C. § 109(c)(5)(B) – The City failed to negotiate in good faith with creditors. (Eligibility Objection, ¶¶ 101-114)

     a.   City engaged only in "discussions," which it explicitly emphasized were not negotiations, at fewer than 5 short meetings where multiple stakeholders were present at the same time. (Eligibility Objection, ¶¶ 28-30, 105-06)

b. City's take-it-or-leave-it Restructuring Plan was not open to any negotiations, which falls short of the requirements of section 109(c)(5)(B). (Eligibility Objection, ¶¶ 107-108)

c. City flatly refused AFSCME's offers to jump-start one-on-one negotiations, instead explicitly refusing to meet with AFSCME one-on-one. (Eligibility Objection, ¶¶ 31-33, 108)

d. City refused AFSCME's requests for adequate backup data used to generate the City's financial assumptions, which would have been necessary information for any "negotiations." (Eligibility Objection, ¶¶ 31, 33)

e. The City's refusal to negotiate with AFSCME has continued post-filing. (Eligibility Objection, ¶¶ 36-39)

f. Assuming *arguendo* that any negotiations took place, such negotiations did not relate to a plan that was in the best interests of creditors as required by section 109(c)(5)(B). (Eligibility Objection, ¶¶ 109-114)

> i. The proposed Restructuring Plan was not in the best interests of creditors because it was unconfirmable as, among other things, it seeks to impair or diminish vested pension rights in violation of Article IX, Section 24 of the Michigan Constitution, which renders it a plan requiring action by the debtor "prohibited by law" and thus unable to be confirmed under 11 U.S.C. § 943(b)(4). (Eligibility Objection, ¶¶ 109-111)
> ii. The Emergency Manager failed to consider before filing for chapter 9 an equitable argument that creditors extending debt after funding concerns surfaced should be subject to equitable subordination or fraudulent conveyance under sections 510(c) and 544(b)/548(a) of the Code. (Eligibility Objection, ¶ 113)
> iii. Under section 928(b), the Emergency Manager should be exploring whether certain creditors should bear the burden of the City's operating expenses before pension cuts are imposed. (Eligibility Objection, ¶ 114)

2. 11 U.S.C. § 109(c)(5)(C) – The City cannot meet its burden of proving that negotiations were impracticable because no negotiations occurred. (Eligibility Objection, ¶¶ 115-123)

a. The City's prepetition plotting to hire the EM, an experienced bankruptcy counsel, to control the City before a financial emergency was even declared demonstrates that the City never had any intention of negotiating outside of bankruptcy. (Eligibility Objection ¶¶ 23-27, 118)

b. The City's main creditors are the unions, its retirees, and the bond trustees, and while the City claims it could not negotiate retiree benefits with the unions or retirees, the City has in the past negotiated for retiree health benefits and pension benefits outside of chapter 9. (Eligibility Objection, ¶¶ 117-120)

c. The City cannot demonstrate impracticability without even attempting to negotiate with its largest creditors, especially where those creditors have, like AFSCME, requested negotiations. (Eligibility Objection, ¶¶ 121-23)

3. 11 U.S.C. § 921(c) – The case should be dismissed as filed in bad faith. (Eligibility Objection, ¶¶ 124-131)

    a. The State authorized (without contingencies) and the City commenced its filing "in dark of night" to avoid a bad state court ruling in the *Webster* litigation, and declined to take action to cease the filing in violation of the Declaratory Judgment there issued. (Eligibility Objection, ¶¶ 13-22, 130)

    b. AFSCME should be able to take discovery regarding the knowledge of the City/State as to the status of the *Webster* litigation when the State authorized (without contingencies) and the City requested the Governor's permission to file the chapter 9 petition; the Governor granted that permission; the City filed the petition; the Governor failed to withdraw his permission in compliance with the state court order requiring him to do so which was in effect from July 18, 2013 until the Court entered its Stay Order on July 26, 2013; and the City failed to honor that same order. (Eligibility Objection, ¶¶ 21-22, 130)

    c. The City failed to consider reasonable alternatives to chapter 9. (Eligibility Objection, ¶ 131)

4. 11 U.S.C. § 109(c)(3) – The City is not insolvent. (Eligibility Objection, ¶¶ 132-140)

    a. The City may have budgeted itself into insolvency. (Eligibility Objection, ¶ 137)

    b. The City may have available, but unexplored, options to enable it to pay debts. (Eligibility Objection, ¶ 138)

    c. The City's current financial difficulties are less severe than in prior years, and the City may have other means to enhance revenues. (Eligibility Objection, ¶ 139)

    d. Given the highly factual arguments regarding insolvency, AFSCME reserves the right to make, and likely will make, additional fact-based arguments on insolvency following discovery. (Eligibility Objection, ¶ 140)

13. Relatedly, the Court indicated in § VI of the August 26 Order that "the Court will not consider the issue of the treatment of pension rights when considering the eligibility objection in paragraph 9 [related to the eligibility objection under 11 U.S.C. § 109(c)(4) that the City does not desire to effect a plan to adjust its debts]." AFSCME specifically raised objections to the City's eligibility based on the treatment of pension rights on the grounds that (i) the Governor's grant of permission to the EM to file the petition was made with full knowledge that the EM intended to propose a plan of adjustment which violated the Michigan

Constitution's absolute protection of vested pension rights, and therefore the Governor's grant of permission was not valid under 11 U.S.C. § 109(c)(2), and (ii) the City did not negotiate in good faith prior to the chapter 9 filing because it proposed a Restructuring Plan that was not in the best interests of creditors insofar as it was patently unconfirmable under section 943(b) because it would have required the City to take the illegal act of impairing or diminishing vested pension rights in violation of the Michigan Constitution. *See* Eligibility Objection, pp. 33-38; 49-51. Out of an abundance of caution and without limitation, AFSCME believes that the August 26 Order should clarify that AFSCME is permitted to argue and take discovery at the eligibility stage as to these two fact-intensive arguments, and that section VI of the Court's Order is in no way intended to limit AFSCME from pursuing these arguments at this juncture. *See also* Part B(iv), *infra*.

> **(iii)** **The August 26 Order Incorrectly Omits AFSCME As An Objector With Respect To An Issue Of Michigan Constitutional Law, And The Court Should Clarify That AFSCME Can Raise At Oral Argument Both This Omitted Argument As Well As The Full Scope Of The State Constitutional Arguments Raised In AFSCME'S Eligibility Objection Which Are Likely Subsumed By The Order Already And Do Not Involve Contested Questions Of Fact**

14. Section II.5 of the August 26 Order allows for oral argument regarding the issue of whether the City's Emergency Manager "is not an elected official and therefore did not have valid authority to file this bankruptcy case," but only provides for objector Krystal Crittendon to argue this issue. However, AFSCME properly asserted this same basic issue in the context of AFSCME's argument that Michigan Public Act 436 of 2012 ("**PA 436**") violates the Michigan Constitution's requirement that the people of Detroit select their own local officers and structure their own government via charter – and, specifically, that because Orr is not an

elected official, the City has not "voluntarily" filed a petition under Section 301 of the Code. *See* Eligibility Objection, ¶ 94.

15. AFSCME's arguments on the constitutional issues surrounding PA 436, including the argument that PA 436 violates the strong home rule provisions of the Michigan Constitution, are far broader than the issues apparently identified by Section II.5 of the Court's Order. While it may be that the balance of AFSCME's constitutional issues surrounding PA 436 are also included under Section II.3 of the Court's Order and thus already identified by the Court as proper for argument, out of an abundance of caution AFSCME states that those arguments which it must be permitted to raise before this Court for consideration include, but are not limited to, the following legal points which AFSCME raised in its Eligibility Objection:[2]

1. PA 436 violates the strong home rule provisions of the Michigan Constitution. (Eligibility Objection, ¶¶ 85-100)

   a. PA 436 strips the Detroit electorate of its Michigan constitutional rights to select its own local government officials and to structure its local government via charter. (Eligibility Objection, ¶¶ 87-88)

      i. Article VII of the Michigan Constitution incorporates the rule from *People ex rel. Le Roy v. Hurlbut* that the citizens have the right to select their local government officers. (Eligibility Objection, ¶¶ 87-88)
      ii. PA 436 violates Article VII of the Michigan Constitution by effectively adopting a new charter for the City not designed by the local electorate. (Eligibility Objection, ¶¶ 89, 90-91)
      iii. PA 436 violates Article VII by allowing the EM to serve in the role of mayor and city council of Detroit simultaneously without being selected by the people of Detroit. (Eligibility Objection, ¶ 90)

_____

[2] In light of the Court's evident desire that legal and factual arguments be bifurcated, AFSCME is prepared to make its home rule arguments under the Michigan Constitution, set forth at Paragraphs 85-100 of AFSCME's Eligibility Objection, on purely legal grounds at the hearing on September 18. However, in the event that the Debtor or any other party argues that AFSCME's home rule arguments are not adequately supported by facts showing that the EM has in fact taken certain acts identified by AFSCME's objection as contrary to the home rule provisions of the Michigan Constitution – *e.g.*, adoption or amendment of local ordinances (¶¶ 91, 96), entrance of contracts on behalf of the City (¶ 92), acts in direct conflict with the Detroit Charter (¶ 93), approval of settlements with creditors in and outside of bankruptcy (¶ 99), the filing of the City's Chapter 9 petition and other acts taken pursuant to that filing (¶¶ 94, 97-100 ), and more – then AFSCME is entitled to discovery.

iv. PA 436 swallows rights reserved to local electors to execute their own visions of local government by allowing the EM to entirely disregard the Detroit Charter and, therefore, in practice to unilaterally amend the charter at will – but the right to amend the City's charter is constitutionally reserved to the citizens of Detroit. (Eligibility Objection, ¶ 93)

v. Because the EM is unelected, he was never authorized under Michigan law to file the petition, and thus the City has not voluntarily filed a petition under section 301 of the Bankruptcy Code. (Eligibility Objection, ¶ 94)

b. PA 436 delegates excess power to the Emergency Manager beyond that held by the state legislature because, under Article IV, Section 29 of the Michigan Constitution the legislature cannot pass a local act if a general act can accomplish the same purpose; unless approved by two-thirds of the members of each house of the legislature; *and* until approved by a majority vote of electors in the affected locality, but under PA 436 the EM can adopt local ordinances and take purely local legal acts without these constraints, thus exceeding the power possessed by the legislature which passed PA 436. (Eligibility Objection, ¶¶ 95-97)

i. The Chapter 9 petition is a local act of the EM affecting only the locality of Detroit and therefore violates the Michigan Constitution. (Eligibility Objection ¶ 97)

c. Because the legislature can only delegate power if that power is subject to (1) standards and (2) due process, and because the EM's actions are subject to neither, PA 436 is unconstitutional. (Eligibility Objection, ¶¶ 98-100)

i. Among the unconstitutionally unfettered discretion accorded to the Emergency Manager is the power to enter into settlement agreements, which are a necessary ingredient for the City's ability to adjust its debts in bankruptcy, and therefore the City is not authorized under state law to participate in chapter 9 proceedings. (Eligibility Objection, ¶ 99)

ii. There is no state-law judicial review of the EM's actions during bankruptcy – both because the bankruptcy court cannot evaluate freestanding state law claims under *Stern v. Marshall*, and also because, for federalism reasons, the Bankruptcy Court generally does not interfere with settlements made during the course of a chapter 9 bankruptcy – and therefore individuals affected by the EM's actions in bankruptcy are devoid of the due process they are constitutionally entitled to of any legislative act delegated by the legislature to an administrator via statute. (Eligibility Objection, ¶ 100)

### (iv) The August 26 Order Mischaracterizes Certain Issues as Purely Legal Which Improperly Limits Discovery on Issues that Require Factual Discovery

16. Section II.6 of the August 26 Order improperly characterizes AFSCME's argument – that because the Governor's authorization to file this bankruptcy case did not prohibit the City from impairing the pension rights of its employees and retirees, the

authorization was not valid under the Michigan Constitution – as a purely legal argument ready for oral argument on September 18 without the benefit of discovery and/or factual evidence.

17. AFSCME's state constitutional challenge to the Governor's purported authorization includes an "as applied" challenge (*i.e.* a challenge which finds the Emergency Manager law unconstitutional based on the individual facts of this case) which turns, in part, on the fact that the Governor knew when he granted permission to file under chapter 9 that the EM intended to use that permission to seek to reduce pension rights in violation of the Michigan Constitution. At minimum, AFSCME has the right to depositions inquiring as to the Governor's (i) failure to attach any contingencies to his purported authorization, and (ii) statement in the authorization letter that he was relying on 11 U.S.C. § 943(b) as an all-encompassing contingency rather than attaching specific contingencies on the claimed authorization. Thus, AFSCME objects to the August 26 Order to the extent it purports to prevent or limit AFSCME from taking discovery and/or presenting to the Court a full factual record on the issue of whether the Governor's alleged grant of the authorization to file under chapter 9 was constitutional.

18. AFSCME has already sought discovery on the following issues related to the Governor's purported grant of authorization to the EM, and the Court should clarify that each of these issues is appropriate for discovery and will be heard at the eligibility trial in October following such discovery:

1. The Governor's blanket grant of permission to the EM to file under chapter 9 without prohibiting the impairment or diminishment of vested pension rights violated Article IX, Section 24 of the Michigan constitution, therefore the City is not authorized under state law to be a debtor. (Eligibility Objection, ¶¶ 76-84)

    a. As already determined by a Michigan state court, Michigan state law forbids authorization of the City's bankruptcy petition insofar as it seeks to reduce accrued pension benefits in violation of the State Constitution. (Eligibility Objection, ¶ 76)

b. The Emergency Manager made clear his intention to use this chapter 9 proceeding to reduce accrued pension benefits in violation of the state constitution prior to requesting permission from the Governor to file the City's chapter 9 petition. (Eligibility Objection, ¶ 76)

c. Article IX, Section 24 of the Michigan Constitution means what it says: under no circumstances can accrued pension benefits be reduced. (Eligibility Objection, ¶¶ 77-78)

d. The EM law is unconstitutional as applied where, as here, the Governor has abused his discretion by purporting to authorize a bankruptcy which he knows is intended to violate the constitution in view of the available information that the EM would be seeking to impair vested pension rights in this chapter 9 proceeding; where the Governor, despite such information, fails to attach explicit contingencies to the chapter 9 petition to protect the constitutional rights of Michigan citizens with accrued pension rights, Section 18 of PA 436 is unconstitutional as applied. (Eligibility Objection, ¶¶ 79-81)

e. Alternatively, because the Governor's authorization required that any plan of adjustment proposed by the City be legally executable under Section 943(b), and because the Michigan Constitution – under which the Governor is bound – prohibits any reduction in accrued pension rights, the Governor's authorization should be construed to have required that any plan of adjustment by the City comply with Article IX, Section 24 of the Michigan Constitution. (Eligibility Objection, ¶ 82)

f. AFSME's members with accrued pension rights are being harmed *now* by the EM's threat to use this chapter 9 proceeding to unconstitutionally reduce their pension benefits, and therefore they cannot be made to wait until after the Court decides all issues of eligibility to be heard on the argument that no plan of adjustment proposed by the City can be confirmed if it would reduce accrued pension benefits – this argument must be addressed *now* as a preliminary matter of eligibility. (Eligibility Objection, ¶ 83)

## C.  Motion to Compel Depositions of City's Witnesses

19.  Given the open factual issues raised and discussed extensively above which require development of the record regarding issues including but not limited to good faith, authorization, and insolvency, AFSCME on August 23, 2013 noticed subpoenas [Docket No. 600] of various witnesses, including the following witnesses (the "**Subpoenaed City Witnesses**") employed and/or controlled by the City:  Emergency Manager Kevyn Orr, Mayor David Bing, City Director of Labor Relations Lamont Satchel, Kenneth Buckfire (Miller Buckfire), Kyle Herman (Miller Buckfire), James Doak (Miller Buckfire), Guarav Malhotra

(Ernst & Young), Daniel Jerneycic (Ernst & Young), Juan Santambrogio (Ernst & Young), and Charles Moore (Conway McKenzie).[3]   Shortly after AFSCME filed its notice of the Subpoenaed City Witnesses, the City agreed that it would accept service for all of the Subpoenaed City Witnesses.

20.     AFSCME subsequently met and conferred with the City regarding an agreed City witness list and deposition schedule, and the City agreed preliminarily (although no final agreement has been reached or schedule set) that it would produce Emergency Manager Kevyn Orr, City Director of Labor Relations Lamont Satchel, Kenneth Buckfire (Miller Buckfire), and Charles Moore (Conway McKenzie).   However, to date, the City has refused to agree to produce Mayor David Bing and has yet to finalize a schedule or agreement regarding the other witnesses.

21.     Given the (i) current fast-tracked schedule, (ii) lack of any final agreement to date, and (iii) stated opposition by the City of producing Mayor David Bing, out of an abundance of caution, AFSCME files this expedited motion to compel production of all the following requested witnesses (the "**Proposed City Witnesses**") under the City's control: Emergency Manager Kevyn Orr, Mayor David Bing, City Director of Labor Relations Lamont Satchel, Kenneth Buckfire (Miller Buckfire), Guarav Malhotra (Ernst & Young), and Charles Moore (Conway McKenzie).[4]

---

[3] AFSCME later filed and served subpoenas on two employees and witnesses from Milliman, Inc., the actuarial firm involved in analyzing the pension underfunding of the City's retirement systems.  AFSCME understands at least one employee from Milliman, Inc. will be produced for deposition, but to the extent that does not occur, AFSCME has moved to compel the depositions of both.

[4] AFSCME also noticed depositions of additional individuals from the firms Miller Buckfire and Ernst & Young, but given the City's representations that Mr. Buckfire, Mr. Malhotra and Mr. Moore will be the individuals testifying regarding contested eligibility issues, as well as the City's representation that Mr. Buckfire, Mr. Malhotra, and Mr. Moore will testify both in their individual capacities and as witnesses on behalf of their respective employers under Fed. R. Civ. P. 30(b)(6) without limitation as to subject matter, AFSCME would agree to withdraw the subpoenas for the depositions of Kyle Herman (Miller Buckfire), James Doak (Miller Buckfire),

22.     Any opposition to the production by the City for deposition of the Proposed City Witnesses would be unjustified and prevent AFSCME from taking relevant and potentially vital discovery to which AFSCME is unquestionably entitled under the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and the scheduling orders issued by the Court (whether or not the August 26 Order is modified as requested herein).

23.     As indicated previously in AFSCME's opposition to the State's motion to quash [Docket No. 701], particularly in light of the expedited schedule imposed by the Court, any attempts to forestall AFSCME's access to information relevant to any of the contested issues of fact discussed above should be rejected.  Provided the City will produce all of the Proposed City Witnesses, AFSCME has offered to and preliminarily agreed to not depose the remaining Subpoenaed City Witnesses.

24.     With respect to Mayor David Bing, the City cannot come close to meeting its high burden necessary to quash his subpoena.  The party moving to quash "must show, with specificity, that disclosure will work a clearly defined and serious injury to the moving party." *Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enterprises, Inc.*, 160 F.R.D. 70, 72 (E.D. Pa. 1995).  Moreover, establishing that a subpoena is unduly burdensome requires the City to prove that "compliance with the subpoena would be unreasonable and oppressive."  *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (citations omitted).  Common examples of undue burden include: inability to appear, inability to produce the requested documents or things, failure to identify items requested, or excessive costs. *See In re County of Orange*, 208 B.R. 117, 120 (Bankr. S.D.N.Y. 1997) (*quoting* Moore's Federal Practice § 45.04[3][b]).

Daniel Jerneycic (Ernst & Young), and Juan Santambrogio (Ernst & Young), without prejudice to its right to re-issue those subpoenas if the circumstances so require.

25.     Further, the Federal Rules of Civil Procedure, incorporated in this contested matter by Fed. R. Bankr. P. 9014, permit parties, as a general matter, to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). The scope of examination permitted under Rule 26(b) is broader than that permitted at trial, with the ultimate test being "whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Lewis v. ACB Business Servs., Inc.,* 135 F.3d 389, 402 (6th Cir.1998) (quoting *Mellon v. Cooper–Jarrett, Inc.,* 424 F.2d 499, 500–01 (6th Cir. 1970)); *Martin Properties, Inc. v. Florida Industries Investment Corp.,* 2003 WL 1877963, at *2 (N.D. Ill. Apr. 14, 2003). Relevance for discovery purposes is extremely broad. *Lewis v. ACB Business Servs., Inc.,* 135 F.3d at 402. Courts permit discovery if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. *See, e.g., Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001).

26.     Given that Mr. Orr, Mr. Buckfire, Mr. Malhotra and Mr. Moore will likely be fact and/or expert witnesses for the City at trial, there is little doubt that AFSCME has the right to question these individuals regarding any contested eligibility issues. Further, Mr. Satchel, as the City's Director of Labor Relations, has been intimately involved in the City's internal pre-petition discussions regarding the unions and likely has information as to good faith issues which are highly relevant.

27.     Finally, there can be little doubt as to the relevancy of Mayor David Bing for questioning by AFSCME. Mayor Bing was involved in discussions around the appointment of Mr. Orr (which goes to good faith issues generally), and was also likely involved and consulted with in the days and weeks prior to the filing. Thus, Mr. Bing likely will have crucial

information regarding many (if not all) of the contested eligibility issues and should be compelled to appear for a deposition.

**RESERVATION OF RIGHTS**

28.     AFSCME filed its lengthy Eligibility Objection in a timely fashion, but should not be limited or prevented from arguing or raising at oral argument, trial and/or on appeal **<u>any</u>** issue regarding eligibility that is ultimately raised and/or ruled on by the Court.

**CONCLUSION**

29.     AFSCME is not seeking to pursue a fishing expedition via discovery, but needs to preserve its rights to obtain any information that AFSCME deems relevant to its objection to eligibility.  Particularly at this early stage of discovery, the Court cannot substitute its judgment for AFSCME's as to what may be relevant, and the (i) August 26 Order should be clear that parties (such as AFSCME) may pursue, within the limits of the Federal Rules, any discovery deemed relevant to the City's eligibility, including with respect to issues regarding authorization and (ii) the Court should enter the proposed order attached hereto as **<u>Exhibit B</u>**, to the extent necessary, compelling the Proposed City Witnesses to appear for depositions.

WHEREFORE, for the reasons set forth herein, AFSCME respectfully (i) objects to the August 26 Order and requests that this Court modify the August 26 Order to the extent set forth herein and on Exhibit A; and (ii) requests entry of an order compelling the Proposed City Witnesses to appear for depositions as set forth herein and on Exhibit B, and (iii) grant such other and further relief as is just and proper under the circumstances.

Dated: September __, 2013

LOWENSTEIN SANDLER LLP
By: /s/ Sharon L. Levine_____
    Sharon L. Levine, Esq.
    John K. Sherwood, Esq.
    Philip J. Gross, Esq.
    Keara M. Waldron, Esq.
    65 Livingston Avenue
    Roseland, New Jersey 07068
    (973) 597-2500 (Telephone)
    (973) 597-6247 (Facsimile)
    slevine@lowenstein.com
    jsherwood@lowenstein.com
    pgross@lowenstein.com
    kwaldron@lowenstein.com

    -and-

    Herbert A. Sanders, Esq.
    THE SANDERS LAW FIRM PC
    615 Griswold St., Suite 913
    Detroit, MI 48226
    (313) 962-0099 (Telephone)
    (313) 962-0044 (Facsimile)
    hsanders@miafscme.org

    -and-

    Richard G. Mack, Jr., Esq.
    Miller Cohen, P.L.C.
    600 West Lafayette Boulevard
    4th Floor
    Detroit, MI 48226-3191

*Counsel to Michigan Council 25 of the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO and Sub-Chapter 98, City of Detroit Retirees*