UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Chapter 9
CITY OF DETROIT, MICHIGAN.                      No. 13-53846

        Debtor.                                 HON. STEVEN W. RHODES

_____

**THE STATE OF MICHIGAN'S RESPONSE TO ELIGIBILITY
OBJECTIONS RAISING ONLY LEGAL ISSUES**

Matthew Schneider (P62190)
Chief Legal Counsel

Aaron D. Lindstrom(P72916)
Assistant Solicitor General

Margaret A. Nelson (P30342)
Steven B. Flancher (P47894)
Assistant Attorneys General
P.O. Box 30758
Lansing, MI 48909
517.373.6434

Steven G. Howell (P28982)
Special Assistant Attorney General
Dickinson Wright PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226-3425

Attorneys for the State of Michigan
Michigan Dep't of Attorney General

Dated:  September 6, 2013

# TABLE OF CONTENTS

Page

Table of Contents..................................................................................ii

Index of Authorities.............................................................................iv

Concise Statement of Issues Presented...................................................ix

Introduction ........................................................................................1

Argument ............................................................................................3

I.    Public Act 436 does not violate the Michigan Constitution
(Objection No. 3). ...........................................................................3

    A.    Section 18(1) of Public Act 436 is constitutional and
does not render the City ineligible to file this
bankruptcy case. .......................................................................4

    B.    Public Act 436 does not violate Home Rule Provisions
of Article VII of Michigan's Constitution. ..............................10

        1.    Public Act 436 does not violate the "charter"
provisions of article VII, § 22. ......................................10

        2.    Public Act 436 also does not violate other
provisions of the Michigan Constitution by
allowing an emergency manager to assume the
authority of a local government unit. ...........................13

        3.    PA 436 is not a local act as contemplated by
article IV, § 29, of Michigan's Constitution. ................17

        4.    Public Act 436 is not an unconstitutional
delegation of authority to the Emergency
Manager. .....................................................................18

II.    The Bankruptcy Court has the authority and jurisdiction to
determine the constitutionality of Michigan Public Act 436
(Objection No. 4). ........................................................................22

III.    Detroit's Emergency Manager had valid authority to file this bankruptcy case (Objection No. 5)...................................................27

IV.    The Governor's authorization to file this bankruptcy case did not impair any pension rights (Objection No. 6)...........................28

V.    The trial court's order in *Webster* did not deprive the Governor of authority to file the bankruptcy petition (Objection No. 7). ...............................................................................30

Conclusion and Relief Requested.............................................................33

iii

# INDEX OF AUTHORITIES

Page

**Cases**

*American Axle & Manufacturing, Inc. v. City of Hamtramck,*
461 Mich. 352 (2000) .............................................................. 12

*Bivens v. Grand Rapids,*
443 Mich. 391 (1993) .............................................................. 11

*Blue Cross & Blue Shield of Mich. v. Governor,*
422 Mich. 1 (1985) ................................................................. 19

*Brimmer v. Elk Rapids,*
365 Mich. 6 (1961) ................................................................. 12

*City of Ecorse v. Peoples Community Hosp. Auth.,*
336 Mich. 490 (1953) .............................................................. 12

*City of Taylor v. Detroit Edison,*
475 Mich. 109 (2006) .............................................................. 15

*Field v. Clark,*
143 U.S. 649 (1892) ................................................................ 18

*Gracie Webster, et al. v. The State of Michigan, et al.,*
Case No. 13-734-CZ (Ingham County Circuit Court) ........ ix, 30, 31, 33

*Harsha v. City of Detroit,*
261 Mich. 586 (1933) .............................................................. 12

*Hart v. Wayne Co,*
396 Mich. 259 (1976) .............................................................. 12

*Home Bldg. & Loan Ass'n v. Blaisdell,*
290 U.S. 398 (1934) ................................................................ 13

*In re City of Harrisburg, PA,*
465 B.R. 744 (Bankr. M.D. Pa. 2011) ................................... 7, 8

iv

*In re City of Stockton, California,*
  493 B.R. 772 (Bankr. E.D. Ca. 2013) .................................................... 7

*In re City of Vallejo,*
  403 B.R. 72 (Bankr. E.D. Cal. 2009) .................................................. 20

*In re Forfeiture of Bail Bond,*
  276 Mich. App. 482 (2007) ................................................................ 29

*In re Moon,*
  116 B.R. 75 (Bankr. E.D. Mich. 1990) ............................................... 32

*In re Rice,*
  2001 WL 34076613, (Bankr. N.D. Ohio 2001) .................................... 25

*Lemon v. Kurtzman,*
  411 U.S. 192 (1973) ........................................................................... 9

*Mack v. Detroit,*
  467 Mich. 186 (2002) ................................................................ 11, 15

*Marrese v. American Academy of Orthopedic Surgeons,*
  470 U.S. 373 (1985) ......................................................................... 32

*Marxer v. City of Saginaw,*
  270 Mich. 256 (1935) ....................................................................... 11

*Monat v. State Farm Ins. Co.,*
  469 Mich. 679; (2004) ...................................................................... 32

*NAACP v. Snyder,*
  No. 13-12098 (E.D. Mich.) ............................................................... 23

*Phillips v. Snyder,*
  No. 13-11370 (E.D. Mich.) ............................................................... 23

*Rental Property Owners Ass'n of Kent Co v. City of Grand Rapids,*
  455 Mich. 246 (1997) ....................................................................... 12

*Reynolds v. Sims,*
  377 U.S. 533 (1964) ......................................................................... 15

v

*Sailors v. Bd. of Ed. of Kent County,*
   387 U.S. 105 (1967) ..................................................................... 15

*State of Michigan v. Wayne Co Clerk,*
   466 Mich. 640 (2002) ................................................................... 17

*Stern v. Marshall,*
   131 S. Ct. 2594 (2011) ........................................................... 25, 26

*Storey v. Meijer, Inc.,*
   431 Mich. 368; (1988) .................................................................. 32

*Taunt v. General Retirement System (In re Wilcox),*
   233 F.3d 899 (6th Cir. 2000) ...................................................... 12

*Taylor v. Smithline Beecham Corp.,*
   468 Mich. 1 (2003) ................................................................. 15, 18

*Vale v. Gary National Bank,*
   406 F.2d 39 (7th Cir. 1969) ......................................................... 25

**Statutes**

11 U.S.C. § 109............................................................................ passim

11 U.S.C. § 301.................................................................................. 30

11 U.S.C. § 362............................................................................ 22, 30

11 U.S.C. § 365............................................................................ 12, 22

11 U.S.C. § 901.................................................................................. 30

11 U.S.C. § 903............................................................................ 20, 21

11 U.S.C. § 922............................................................................ 22, 30

11 U.S.C. § 941.................................................................................. 27

11 U.S.C. § 943(b) ........................................................................... 2, 7

28 U.S.C. § 157.................................................................................. 24

28 U.S.C. § 1332.................................................................24

28 U.S.C. § 1334(b) .........................................................24

28 U.S.C. § 1738.................................................................32

2012 Mich. Pub. Act 436................................................ passim

2012 Mich. Pub. Act 436 §18 (1) ..................................ii, 4

Mich. Comp. Laws § 78.27 .............................................11

Mich. Comp. Laws § 117.1 *et. seq* ...............................11

Mich. Comp. Laws § 117.4j(3) .......................................11

Mich. Comp. Laws § 117.36 ......................................11, 15

Mich. Comp. Laws § 141.1528m(1) ...............................14

Mich. Comp. Laws § 141.1528m(1) (x)...........................14

Mich. Comp. Laws § 141.1541(k) ...................................17

Mich. Comp. Laws § 141.1543..........................................13

Mich. Comp. Laws § 141.1549(2) ........................18, 21, 27

Mich. Comp. Laws § 141.1558....................................passim

Mich. Comp. Laws § 141.1588(1) .....................6, 10, 28, 33

## Other Authorities

Black's Law Dictionary 363 (8th ed. 2004)...........................24

## Constitutional Provisions

Mich. Const. Art. III, § 2 ...............................................18

Mich. Const. Art. IV, § 29.........................................16, 17

Mich. Const. Art. V, § 8 ...............................................19

Mich. Const. Art. VII ....................................................................3, 13, 15

Mich. Const. Art. VII, § 22 ....................................................10, 11, 13

Mich. Const. Art. VII, § 21 ...........................................................13, 14

Mich. Const. Art. VII, § 34 ...........................................................13, 14

Mich. Const. Art. IX, § 24................................................................3, 6, 28

# CONCISE STATEMENT OF ISSUES PRESENTED

This Court identified seven legal objections to eligibility in its order regarding eligibility. (Doc. # 642, 8/26/13 Order, at 1–3.) The State of Michigan will address issue Nos. 3 through 7:

3. Whether Michigan Public Act 436 of 2012 violates the Michigan constitution and therefore the City was not validly authorized to file this bankruptcy case as required for eligibility by 11 U.S.C. § 109(c)(2).

4. Whether the Bankruptcy Court has the authority and jurisdiction to determine the constitutionality of Michigan Public Act 436 of 2012.

5. Whether Detroit's Emergency Manager is not an elected official and therefore did not have valid authority to file this bankruptcy case as required for eligibility by 11 U.S.C. § 109(c)(2).

6. Whether because the Governor's authorization to file this bankruptcy case did not prohibit the City from impairing the pension rights of its employees and retirees, the authorization was not valid under the Michigan constitution, as required for eligibility by 11 U.S.C. § 109(c)(2).

7. Whether because of the proceedings and judgment in *Gracie Webster, et al. v. The State of Michigan, et al.*, Case No. 13-734-CZ (Ingham County Circuit Court), the City is precluded by law from claiming that the Governor's authorization to file this bankruptcy case was valid, as required for eligibility by 11 U.S.C. § 109(c)(2).

## INTRODUCTION

The State of Michigan believes that the City of Detroit meets all the requirements of 11 U.S.C. § 109(c) and is eligible to be a debtor. In particular, the State agrees that the City is, as § 109(c)(2) requires, specifically authorized under state law to file for chapter 9 bankruptcy. Accordingly, the State submits this brief to address eligibility objections 3 through 7, which relate to state law and § 109(c)(2).

Some of the parties who filed objections have asserted that the Governor violated state law, including Michigan's Constitution, by authorizing the bankruptcy filing, even suggesting that he violated his oath of office. To the contrary, the Governor remained faithful to all applicable law—from the supreme law of the land, the United States Constitution, to the Michigan Constitution, to Michigan's emergency-manager statute—and properly exercised the authority given to him by the Legislature and the people of Michigan to address the grave financial problems of the City of Detroit.

Authorizing Detroit's bankruptcy was not a step taken lightly. Two different financial reviews conducted one year apart confirmed the existence of Detroit's financial emergency. After his own review, the

1

Emergency Manager determined that no reasonable alternative existed to rectify the financial emergency.

With this context in mind, the eligibility question before the Court is a discrete and narrow one; it presents threshold questions of authority only, and not the ultimate merits of the yet-to-be-created plan for adjustment—a determination reserved for confirmation. 11 U.S.C. § 943(b).

But eligibility for bankruptcy is an exceptionally important question for the people of Michigan, and especially the people of Detroit. Indeed, the health, safety, and welfare of the citizens of Detroit and the people who work in and visit Detroit depend on all of our efforts in this case. This bankruptcy presents the only opportunity to change the City's direction. Rather than allowing Detroit's increasing debt burden to choke off the City's ability to protect the lives and well-being of its residents, chapter 9 provides a forum designed to address the types of financial problems Detroit faces, and to confront these problems through a systematic, open process.

Some want to maintain the status quo, rather than addressing Detroit's challenges. But the status quo is neither sustainable nor

2

acceptable. A finding of eligibility is not only the correct legal result, it is also in the best interests of *all* of the constituent groups interested in the success and future of the City of Detroit. Having been properly authorized to file its petition, Detroit is eligible for relief under chapter 9 and should be allowed to address its problems under the protections and authority of the Bankruptcy Code.

## ARGUMENT

### I. Public Act 436 does not violate the Michigan Constitution (Objection No. 3).

The objections allege that Public Act 436 violates Michigan's Constitution in four ways:

- by failing to protect public pensions from inclusion in bankruptcy proceedings initiated by the local government, assertedly in violation of the Pension Clause, Mich. Const. art. IX, § 24;

- by violating the Home Rule Provisions, Mich. Const. art. VII;

- by improperly delegating authority to an emergency manager; and

- by lacking adequate standards to guide an emergency manager's action in bankruptcy.

None of these arguments is persuasive.

3

### A. Section 18(1) of Public Act 436 is constitutional and does not render the City ineligible to file this bankruptcy case.

The sole issue relevant to eligibility under § 109(c)(2) of the Bankruptcy Code is whether the City has satisfied § 109(c)(2)'s mandate either that the State "specifically authorize" the City to proceed, or that a "government officer or organization empowered by State law to authorize" the City to be a chapter 9 debtor has been given such authorization. 11 U.S.C. § 109(c)(2). Section 109(c)(2) does not require analyzing a city's home rule powers, or the scope of an emergency manager's authority to act on behalf of the City in receivership; it only requires analyzing whether the conditions—if any—for the State's authorization have been satisfied.

The State set forth its conditions for authorization in Section 18 of the Act. Mich. Comp. Laws § 141.1558. Section 18(1) provides, in relevant part, as follows:

> If, in the judgment of the emergency manager, no reasonable alternative to rectifying the financial emergency of the local government which is in receivership exists, then the emergency manager may recommend to the governor and the state treasurer that the local government be authorized to proceed under chapter 9. If the governor approves of the recommendation, the governor shall inform the state treasurer and the emergency manager in writing of the

4

decision . . . .  The governor may place contingencies on a local government in order to proceed under chapter 9.  Upon receipt of written approval, the emergency manager is authorized to proceed under chapter 9.  This section empowers the local government for which an emergency manager has been appointed to become a debtor under title 11 of the United States Code, 11 USC 101 to 1532, as required by section 109 of title 11 of the United States Code, 11 USC 109, and empowers the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9.  [Mich. Comp. Laws § 141.1558(1).]

Each of the conditions has been satisfied.  On July 16, 2013, the Emergency manager recommended to the Governor and the State Treasurer that the City be authorized to proceed as a chapter 9 debtor. He did so in accordance with § 18(2), which requires him to communicate his determination that "no feasible financial plan can be adopted that can satisfactorily rectify the financial emergency of the local government in a timely manner."  Mich. Comp. Laws § 141.1558(2). On July 18, the Governor issued his approval for the City to proceed.  At that time, the City became "specifically authorized" to proceed as a chapter 9 debtor.  All the requirements of § 109(c)(2) had been satisfied.

Nothing in the Act requires the Governor to include conditions along with his authorization; instead, § 18 expressly states that "[t]he

5

governor *may* place contingencies on a local government in order to proceed under chapter 9." Mich. Comp. Laws § 141.1588(1) (emphasis added). Nonetheless, many objections argue that the Governor's authorization was unconstitutional because the Governor did not condition the City's chapter 9 authorization on the protection of accrued pension benefits in the filing of the City's ultimate plan of adjustment. (See, e.g., Doc. # 505, AFSCME Obj., ¶ 79.) This objection relies on Michigan's Pension Clause, which provides that pensions are "contractual obligation[s]" that "shall not be diminished or impaired" by the government entity providing the pension. Mich. Const. art. IX, §24.

Even aside from the fact that § 18(1) does not require the Governor to impose any conditions, this argument fails for two additional reasons.

First, simply authorizing the filing under chapter 9 does not diminish or impair a single pension. By providing the governor authority to "authorize" a local government to proceed in chapter 9, the Act does not impair accrued benefits or even address (much less approve) the inclusion of accrued pension benefits in a subsequently filed plan. State law simply provides for the authorization to begin the

6

chapter 9 process; once the bankruptcy is underway, the Bankruptcy Code controls the filing of a specific plan and ultimately its confirmation. 11 U.S.C. § 943(b). The City's contractual obligations can thus be impaired, if at all, only under a confirmed plan of adjustment. *See In re City of Stockton, California,* 493 B.R. 772, 776 (Bankr. E.D. Ca. 2013) ("Without a confirmed plan, a municipality lacks constitutional authority to compel impairment of contracts."). Indeed, this Court recognized this very point in its order reserving the pension issue until a plan is proposed. (Doc. # 642 at 6 ("[T]he requirement of eligibility . . . does not obligate the City to prove that any particular plan that it might later propose is confirmable.").)

Certain objectors cite *In re City of Harrisburg, PA*, 465 B.R. 744 (Bankr. M.D. Pa. 2011), for the precept that other state law must be considered in determining whether substantive, as opposed to technical, authorization has been secured. In *City of Harrisburg,* the city argued that it was specifically authorized to proceed under chapter 9 by Pennsylvania law, which authorized cities meeting key conditions to seek bankruptcy protection. But another state law specifically precluded class 3 cities, including Harrisburg, from such relief. *Id.* at

7

754-55. The court in *City of Harrisburg* held that the class-3 cities prohibition both was constitutional and applied to the municipal debtor such that Harrisburg lacked the required "specific authorization" of § 109(c)(2). That *In re Harrisburg* is inapplicable to the instant case is plain: Pennsylvania law expressly *precluded* the City of Harrisburg from being a chapter 9 debtor; Michigan law expressly *permits* the City of Detroit to proceed.

Second, the objector's view (e.g., Doc. # 505, AFSCME Obj., ¶ 80; Doc. # 519, Detroit Retirement Systems Obj., at 36–37) that the Act is unconstitutional and that the Governor violated the Pension Clause simply because the statute and his authorization did not expressly require protection of unfunded pension obligations is wrong. Because the Michigan Legislature cannot enact laws that authorize local governments or the Governor to violate the Michigan Constitution, there is no need for statutes to repeat restrictions found in the Constitution. Under this theory, a statute complies with the Constitution only if the statute incorporates the language of the Constitution. This is not the case. Statutes and the constitution exist in tandem. A validly enacted statute is presumed constitutional and is

8

invalid only if in conflict with the language of the Constitution. E.g., *Lemon v. Kurtzman*, 411 U.S. 192 (1973) (plurality) (explaining that "the basic presumption of the constitutional validity of a duly enacted state or federal law" is "one of the first principles of constitutional adjudication") (quotation marks omitted) The authorization to file for bankruptcy protection is valid even though § 18 does not mention the Pension Clause because the Pension Clause (assuming for the moment that it applies in bankruptcy) exists independent of Public Act 436 and does not need to be referenced in the Act to remain part of the law.

The remaining objections to eligibility seek either (1) to insert into the eligibility stage issues that relate to and can only be addressed at the confirmation stage or (2) to raise issues relating to Michigan's emergency manager laws wholly unrelated to whether the City *itself* is eligible to file a petition under chapter 9. Because various objections have raised those issues, they are addressed below. But in the final analysis, all that matters is that § 18 has been satisfied. The City has thus met the conditions necessary to proceed.

**B.  Public Act 436 does not violate Home Rule Provisions of Article VII of Michigan's Constitution.**

**1.  Public Act 436 does not violate the "charter" provisions of article VII, § 22.**

Certain objectors argue that Public Act 436 violates article VII, § 22 of Michigan's Constitution, which vests exclusive power in local residents to frame, adopt, and amend their charters. As a result, AFSCME concludes, the Act is unconstitutional in its entirety, voiding § 18(1)'s bankruptcy-authorization provision, and the City is thus ineligible to file for bankruptcy. This argument is without merit.

First, the article VII, § 22 power is *not* exclusive as asserted. Rather, § 22's plain terms explain that cities remain subject to constitutional limitations and state laws:

> *Under general laws* the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village.  Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, *subject to the constitution and law.*  No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section.  [Emphasis added.]

10

Thus, although article VII, § 22 grants broad authority to municipalities, it subjects their authority to constitutional and statutory limitations. *Mack v. Detroit*, 467 Mich. 186,194 (2002).

The Home Rule City Act (HRCA), 1909 P.A. 279, as amended, Mich. Comp. Laws § 117.1 *et. seq.*, reiterates this constitutional limitation on a municipality's authority. Section 117.36 prohibits city charter provisions from "conflict[ing] with or contraven[ing] the provisions of any general law of the state." Mich. Comp. Laws § 117.36. Similarly, § 117.4j(3) provides that municipal laws are "subject to the constitution and general laws of the state." Mich. Comp. Laws § 117.4j(3). Section 27 of the Home Rule Village Act (HRVA) likewise prohibits village charters from conflicting with or contravening state law. Mich. Comp. Laws § 78.27. In sum, local government units have never had the "exclusive" power on which the objection is based.

That reality is unsurprising. Cities and villages are not sovereign entities, but rather creations of the State that derive their power and authority from the State. *Bivens v. Grand Rapids*, 443 Mich. 391, 397 (1993) (citing *Marxer v. City of Saginaw*, 270 Mich. 256, 259 (1935)). State courts have historically and regularly concluded that state law

11

controls over local enactments. *See Taunt v. General Retirement System* (*In re Wilcox*), 233 F.3d 899, 906 (6th Cir. 2000) (citing *Rental Property Owners Ass'n of Kent Co v. City of Grand Rapids*, 455 Mich. 246 (1997)).

Further, although the power to amend a charter is vested in the local electors in purely local matters, the Legislature has amendatory powers as to matters of general concern. *Brimmer v. Elk Rapids*, 365 Mich 6, 12–13 (1961); *Hart v. Wayne Co.*, 396 Mich. 259 (1976) (citing *City of Ecorse v. Peoples Community Hosp. Auth.*, 336 Mich. 490 (1953)). More recently, in *American Axle & Manufacturing, Inc. v. City of Hamtramck*, Michigan's Supreme Court held "the legislature might modify the charters of municipal corporations *at will* and that the State still retained authority to amend charters and enlarge and diminish their powers." 461 Mich 352, 377 (2000) (citing *Harsha v. City of Detroit*, 261 Mich 586 (1933)) (emphasis added).

Finally, even if other parts of Public Act 436 were unconstitutional (which they are not), that would not affect the validity of § 18 (which does not involve the power to amend a city charter) in view of Michigan's statutory severability rule. *See* MCL 8.5.

Public Act 436 is an enactment necessary to protect local governments, the State of Michigan, and its citizens as a whole. Its purpose is to assure the financial accountability of local governments and thereby preserve their ability to "provide or cause to be provided necessary services essential to the public health, safety, and welfare." 2013 P.A. 436, Title. The legislature recognized that the financial distress of local governments ultimately affects the entire State and all its citizens. Mich. Comp. Laws § 141.1543(a), (b), (c). Thus, Public Act 436 is related to matters of general concern to the State and is a valid exercise of the State's police power and authority. *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 437 (1934) (a state may exercise its police power to promote general welfare).

> **2.** **Public Act 436 also does not violate other provisions of the Michigan Constitution by allowing an emergency manager to assume the authority of a local government unit.**

Certain objectors also assert that Public Act 436 violates article VII, §§ 21 and 34. But like § 22, these articles recognize the State's power to limit and control the authority of its local governments.

Section 21, provides that:

13

> The legislature shall provide by *general laws* for the incorporation of cities and villages. *Such laws shall limit* their rate of ad valorem property taxation for municipal purposes, and restrict the powers of cities and villages to borrow money and contract debts. Each city and village is granted power to levy other taxes for public purposes, subject to limitations and prohibitions provided by this constitution or by law. [Mich. Const. art. VII, § 21 (emphasis added).]

Section 21's plain language thus makes clear that the "general laws for the incorporation of cities and villages" "shall limit" the authority of the local government to tax, borrow money, and contract debts—these matters remain subject to State authority and control. Public Act 436 recognizes and imposes these same limitations on the Emergency Manager and provides state oversight and control over these matters for the local government under a financial emergency. See Mich. Comp. Laws § 141.1528m(1) (t), (u), (v), (w), (x). The Act simply transfers authority to perform these duties and responsibilities to the Emergency Manager, an oversight properly imposed under the State's police power. In short, article VII, § 21 imposes no limitation of the State's authority to transfer that authority during a local government's financial emergency.

14

Article VII, § 34 also does not limit the State's power to change, transfer, or limit the authority granted to local governments. It provides:

> The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor. Powers granted to counties and townships by this constitution and by law shall include those fairly implied and not prohibited by this constitution. [Mich. Const. art. VII, § 34.]

This provision simply establishes the standard for interpreting the authority that is granted by constitution and state law; it does not make it absolute. Nor does it limit the State's power to change that authority provided by law. The authority to regulate matters of local concern remains limited in manner and degree by state law. *City of Taylor v. Detroit Edison*, 475 Mich 109, 118 (2006). The Michigan Legislature retains the authority to define and modify the powers, duties, and obligations of its local governments, which are derived from the State in the first instance. Mich. Const. art. VII, §§ 1–34; *Mack,* 467 Mich. at 194; Mich. Comp. Laws § 117.36.

This analysis is also consistent with that given by the federal courts in the same context. Political subdivisions of the State have never "been considered as sovereign entities." *Sailors v. Bd. of Ed. of*

15

*Kent County,* 387 U.S. 105, 107 (1967) (quoting *Reynolds v. Sims*, 377 U.S. 533, 575 (1964)). To the contrary, they are "traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental function." *Sailors,* 387 U.S. at 107–08 (quoting *Reynolds*, 377 U.S. at 575). Significantly, the Supreme Court recognizes that local governments may need innovations to remain viable, and that nothing in the federal Constitution prevents such experimentation. *Id.*

The application of Public Act 436 and its predecessor laws comport with the State's sovereign powers to reshape local government to address changing urban conditions and related fiscal distress. It is rationally related to a legitimate government purpose—the health, safety, and welfare of citizens through the preservation of the fiscal integrity of local governments. The Act is narrowly tailored to achieve this purpose with as little disruption to the government unit and the provision of services as possible. It prescribes specific guidelines, requirements, standards, and procedures governing official decision making in every application. It is a valid exercise of the State's police power and constitutional on its face.

16

### 3. PA 436 is not a local act as contemplated by article IV, § 29, of Michigan's Constitution.

Another challenge to Public Act 436's constitutionality is the asserted violation of article IV, § 29 of Michigan's Constitution. (Doc. # 505, ¶ 95.) This provision prohibits the Legislature from passing a "local act." The objection contends Public Act 436 is a local act and thus an improper delegation of authority. Like the other facial challenges, this too is without merit.

A local act is one that applies specifically and exclusively to a particular locality and is prohibited "in any case where a general act can be made applicable" and until approved by a two-thirds majority of each house and by "a majority of the electors voting thereon in the district affected." Mich. Const. art. IV, § 29; *State of Michigan v. Wayne Co. Clerk*, 466 Mich. 640, 642, 643 (2002). The test to determine the local or general nature of a statute, then, is whether it can "apply to other units of government." If yes, the statute is a general act. *Id.* at 642–43.

Public Act 436 is a general act because it applies to all local governments. Mich. Comp. Laws § 141.1541(k). While a specific emergency manager uses the authority delegated under the Act locally,

17

the statute provides that authority to all emergency managers. This is no different from the authority generally granted by law to local elected officials but exercised locally. This objection is without merit.

### 4. Public Act 436 is not an unconstitutional delegation of authority to the Emergency Manager.

The final challenge to the constitutionality of Public Act 436 is a challenge to the delegation of authority to the Emergency Manager. The objection asserts that Public Act 436 lacks adequate standards to guide the Emergency Manager's action in bankruptcy and, therefore, is unconstitutional.

Michigan's "separation of powers" provision, Mich. Const. art. III, § 2, has "led to the constitutional discipline that is described as the nondelegation doctrine." *Taylor v. Smithline Beecham Corp.,* 468 Mich. 1, 7 (2003). This doctrine recognizes the "integrity and maintenance of the system of government ordained by the Constitution. . . ." *Id.* (citing *Field v. Clark,* 143 U.S. 649, 692 (1892)).

This objection fails at the outset because the Act does not implicate this separation-of-powers doctrine—it does not delegate legislative power to the executive branch. To the contrary, the powers

18

an emergency manager receives under the Act are executive powers—the power to "govern[]" and to act as the "chief administrative officer of the local government." MCL 141.1549(2). His power "to rectify the financial emergency" and "to assure" both "the fiscal accountability of the local government" and that necessary services are provided, *id.*, are executive powers just like those the Michigan Constitution gives to the Governor. *E.g.*, Mich. Const. art. V, § 8 (empowering the Governor to "transact all necessary business with the officers of government" and to supervise the principal departments). In short, the powers the Emergency Manager is exercising when deciding who to hire and fire, which contracts to enter, what property to buy and sell, and how to administer the City's finances are executive powers. Just as the Legislature is not exercising judicial power when it approves pay for the judiciary, the Emergency Manager is not exercising legislative powers when he manages the City's finances. Further, any authority the Emergency Manager has to pass "local" ordinances is not part of the state legislative power in the first place. Mich. Const. art. IV, § 29.

In any event, even if the delegation were a delegation of legislative authority, it would nonetheless be proper. A delegation is valid if it is

accompanied by adequate standards for the exercise of that authority, *Blue Cross & Blue Shield of Mich. v. Governor,* 422 Mich. 1, 55 (1985), and here adequate standards exist to guide the Emergency Manager's actions.

First, the Michigan Legislature has set forth well-defined standards for the Emergency Manager to guide the authorization determination. These include not only requiring the Governor's independent approval, but a finding by the Emergency Manager that "no feasible financial plan can be adopted that can satisfactorily rectify the financial emergency . . . in a timely manner." M.C.L. § 141.1558(2)(a).

Second, the objection assumes that the Legislature has the authority to determine how the City's debts will be addressed under chapter 9 independent of the Bankruptcy Code itself. But once the order for relief is entered, the Bankruptcy Court has sole authority to approve or reject the settlement of individual claims included in the bankruptcy case. *See* 11 U.S.C. § 903(1) ("[A] State law prescribing a method of composition of indebtedness of such municipality may not bind any creditor that does not consent to such composition."); *see also*

20

*In re City of Vallejo*, 403 B.R. 72, 76 (Bankr. E.D. Cal. 2009) ("'[B]y authorizing the use of chapter 9 by its municipalities, California must accept chapter 9 in its totality; it cannot cherry pick what it likes while disregarding the rest.'"). By authorizing the City to proceed in chapter 9, the State recognizes and accepts the Bankruptcy Court's authority to resolve local governments' claims that are included in the case. It is not a matter of delegation of authority but rather of recognizing the exclusive jurisdiction of the Bankruptcy Court over these matters.

Third, for those matters not included in the bankruptcy case, the Emergency Manager proceeds as before the filing. *See* 11 U.S.C. § 903 ("This chapter does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the *political or governmental* powers of such municipality, including expenditures for such exercise,") (emphasis added). He employs the same standards that apply to the local government officials because he operates in their place and stead. Mich. Comp. Laws § 141.1549(2). The objection does not assert an absence of standards by which the local government officials operated—those same adequate standards apply to all non-bankruptcy related matters.

Finally, the objection argues in the alternative that none of the Emergency Manager's actions are subject to judicial review now because of the automatic stay applicable with the chapter 9 filing. As a result, the objection asserts, challenges to the Emergency Manager's actions may be raised only in this Court. That is not correct— challengers may seek relief from the automatic-stay provision from this Court. Indeed, the Court recently granted such relief to a plaintiff asserting challenges under the State's Open Meetings Act to proceed in state court. (Doc. # 645, 8/27/2013 Order.) Because controlling law governs the Emergency Manager's actions both within and outside of the bankruptcy, sufficient legal standards exist to guide his discretion, and there is therefore no delegation problem.

## II. The Bankruptcy Court has the authority and jurisdiction to determine the constitutionality of Michigan Public Act 436 (Objection No. 4).

Another objection (Doc. # 384, Crittendon Obj.) asserts that the bankruptcy court lacks the authority and jurisdiction to resolve whether Public Act 436 is constitutional. Based on this assertion, the objection seeks to turn the automatic stay upside down: it asks that the "bankruptcy proceedings . . . be stayed" and that "all pending litigation

22

raising legal and constitutional challenges" to the authority of state and local officials to file the bankruptcy be resolved first. (*Id.* ¶ 7.) Not only does this suggestion run counter to the process established by the Bankruptcy Code, 11 U.S.C. §§ 362, 365, & 922, it also seeks to invert this Court's prior orders staying other litigation so that the bankruptcy could proceed. (Doc. ## 166 & 167.)

Although asserting that the Act is unconstitutional, the objection does not identify what defect supposedly violates the constitution (or even which constitution, state or federal); it does not cite any constitutional provisions or even any cases addressing constitutional rights. The closest the objection comes to identifying some constitutional provision is to refer to constitutional grounds raised in "several civil matters pending in the United States District Court." (Crittendon Obj. ¶ 6.) Based on the cases that fit this description—*NAACP v. Snyder*, No. 13-12098 (E.D. Mich.), and *Phillips v. Snyder*, No. 13-11370 (E.D. Mich.)—it appears the objection relates to federal constitutional issues, not state ones. Compl., *NAACP*, ECF No. 1 ¶¶ 1, 75–91; Compl., *Phillips*, ECF No. 1, ¶¶ 1, 105–186, 198–245.

In any event, this objection asks this Court to conclude that it does not have the jurisdiction to decide the essential question currently before the Court—whether the City of Detroit is eligible for bankruptcy—because that question implicates questions of state law. But it is axiomatic that federal courts have the authority to decide questions of state law; if that were not true, diversity jurisdiction could not exist independent of a federal question. *But see* 28 U.S.C. § 1332.

This Court has jurisdiction to decide these questions relating to eligibility. It has statutory jurisdiction over this case because it is a case "arising under" and "arising in" title 11. 28 U.S.C. § 157(a) & (b); 28 U.S.C. § 1334(b). Indeed, in title 11 Congress necessarily contemplated that bankruptcy courts would determine whether a municipality seeking to file for bankruptcy satisfies the eligibility requirements set out in the Bankruptcy Code, including the precise question whether state law authorized the bankruptcy. 11 U.S.C. § 109(c)(2). If it were not Congress's intent to allow bankruptcy courts to decide this question, § 109(c)(2) would make no sense, and no municipal bankruptcy could be referred to a bankruptcy court.

Further, determining whether a municipality is eligible for bankruptcy is a fundamental question for a chapter 9 bankruptcy—it is a "core proceeding" within the plain meaning of that term, because it is a "proceeding involving claims that substantially affect the debtor-creditor relationship." BLACK'S LAW DICTIONARY 363 (8th ed. 2004) (defining "core proceeding"); *see also* 28 U.S.C. § 157(b)(2)(O) (listing as an illustrative example of a core proceeding "other proceedings affecting . . . the adjustment of the debtor-creditor or the equity security holder relationship"); *Vale v. Gary Nat'l Bank,* 406 F.2d 39, 44 (7th Cir. 1969) (finding bankruptcy court had power to declare Indiana law invalid under Indiana's state constitution, since the "constitutional question was necessarily involved in determining the issues presented in the trustee's suit"); *In re Rice,* 2001 WL 34076613, *5 (Bankr. N.D. Ohio 2001) ("A federal court should refrain from holding a state statute unconstitutional under its applicable state constitution *unless no other remedy is available to the moving party.*") (emphasis added). The eligibility proceedings before the Court, proceedings which will culminate in a multi-day trial on the eligibility objections, will substantially affect the relationship between Detroit and its creditors—

25

it can safely be said that deciding whether those relationships will be resolved through bankruptcy or outside bankruptcy will "substantially affect" those relationships.

This Court also has constitutional authority to resolve the eligibility issue. In *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the Supreme Court considered whether a state tort action that "in no way derived from or [was] dependent upon bankruptcy law" was within the authority of an Article I bankruptcy judge to decide. *Id.* at 2618. The Court concluded that it was not: "There [ ] was never reason to believe that the process of ruling on [creditor] Pierce's proof of claim would necessarily result in the resolution of [debtor] Vickie's counterclaim." *Id.* at 2617–18. The Court thus concluded "that Congress, in one isolated respect, exceeded" its authority by allowing bankruptcy courts to "enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620.

The eligibility question before this Court, in contrast, is dependent on bankruptcy law and must be resolved in the process of reaching and ruling on the creditors' proofs of claim and the adjustment of the debtor-

creditor relationship in this bankruptcy.  It is an issue that, unlike the claim at issue in *Stern*, must "*necessarily be resolved* in the claims allowance process," *id.* at 2618 (emphasis added), because this Court will be able to rule on proofs of claim only if it first decides that the City was eligible to be a debtor, 11 U.S.C. § 109(c), a determination that in turn includes verifying that the entity was "specifically authorized" to be a debtor by state law, 11 U.S.C. § 109(c)(2).  Since the legal question the objection raises must necessarily be resolved in the process of deciding if the City is eligible for bankruptcy and therefore whether any claims will be allowed in the bankruptcy, this Court has the authority and jurisdiction to answer it.

## III.  Detroit's Emergency Manager had valid authority to file this bankruptcy case (Objection No. 5).

The Emergency Manager represents the City in this bankruptcy case.  Mich. Comp. Laws §§ 141.1549(2); 1558(1).  The Emergency Manager is the only party with authority to propose a plan of adjustment—he controls the plan process.  11 U.S.C. § 941.  Nothing in the Bankruptcy Code limits authority to file chapter 9 proceedings to an elected official.  11 U.S.C. §§ 109(c)(2) & 941.  To the contrary,

27

§ 109(c)(2) requires only that the bankruptcy be authorized by a "governmental officer" who is "empowered by State law," without making any reference to whether that "governmental officer" is elected or not. This is consistent with the fact that many appointed officers in both state and federal agencies (such as members of the Civil Rights Commission, the Michigan Public Service Commission, and the U.S. Environmental Protection Agency) have the authority to initiate suits.

State law does not limit authority to file chapter 9 proceedings to an elected official either. In fact, state law expressly provides that "upon receipt of the written approval [from the governor], the *emergency manager* is authorized to proceed under chapter 9." Mich. Comp. Laws § 141.1558(1) (emphasis added).

## IV. The Governor's authorization to file this bankruptcy case did not impair any pension rights (Objection No. 6).

This objection raises a challenge similar to Objection No. 3 discussed above, and it fails for many of the same reasons. The Governor's approval of the Emergency Manager's recommendation that the City be authorized to proceed in chapter 9 did not approve a specific plan. It merely approved "a filing under chapter 9 of the bankruptcy

28

code." (Doc. # 1, Ex. A, at 4.)  The fact that § 18(1) of Public Act 436,

Mich. Comp. Laws § 141.1558(1), leaves the imposition of

"contingencies" to the governor's discretion does not violate article IX.

The objection alleges that the Governor violated article IX, § 24

when he approved the City proceeding in chapter 9 without

contingencies.  Mich. Comp. Laws § 141.1558(1).  Even though the

imposition of contingencies is discretionary, *In re Forfeiture of Bail

Bond*, 276 Mich. App. 482, 492 (2007), the objection asserts the

Governor abuses that discretion by not "carving out" the City's pension

benefits.  The objection conflates authorization with confirmation, and

further conflates the Governor's discretionary act of not including

contingencies with this Court's ultimate determination as to the terms

and confirmation of the yet-to-be-devised plan of adjustment.

After reviewing the documents submitted in support of the

Emergency Manager's recommendation, the Governor reached four

conclusions:  the City cannot meet its basic obligations to its citizens;

the City cannot meet its basic obligations to its creditors; the failure of

the City to meet its obligations to its citizens is the primary cause of its

inability to meet its obligations to is creditors; and the only feasible

path to ensuring the City will be able to meet obligations in the future is to have a successful restructuring vial the bankruptcy process. (Doc. # 1, Ex. A, at 2.). For these reasons, the Governor found chapter 9 relief to be in the City's best interest and authorized the City to so proceed. That is all; he properly left to this Court the question of ultimate confirmation of a plan of adjustment. He neither exceeded his statutory power nor failed to exercise his discretion in a reasonable manner.

## V. The trial court's order in *Webster* did not deprive the Governor of authority to file the bankruptcy petition (Objection No. 7).

The order entered in *Webster* does not preclude the City from asserting in this proceeding that the Governor's authorization to file the bankruptcy petition was valid for a number of reasons: (1) because the automatic stay took effect before the order, (2) because the declaratory-judgment order was not yet final and enforceable (it was still within the appeal period, *see* MCR 2.614(1),(3)) because the Michigan Court of Appeals separately stayed the order, (4) because this Court's July 25 order (Doc. # 166) also confirmed and extended the stay of the *Webster* order, and (5) because the requirements for collateral estoppel are not met.

Section 362 of the Bankruptcy Code provides an automatic stay of all actions against the debtor and its property upon the filing of a petition under section 301. The section is made applicable in its entirety in cases under chapter 9. 11 U.S.C. §§ 901, 922. The automatic stay was applicable to this case because it impacted fundamental proceedings before the Bankruptcy Court. This bankruptcy case was filed at 4:06 p.m., July 18, 2013, and none of the state trial court's orders were issued or entered until after the filing, when the automatic stay had already automatically taken effect, by operation of the statute, as a result of the chapter 9 filing. The objection does not even attempt to address this crucial fact.

Also on July 19, 2013, Governor Snyder and Treasurer Dillon responded to the trial court's order by filing with the Michigan Court of Appeals motions for immediate consideration, for leave to appeal, and for a stay of proceedings. A few days later, on July 23, 2013, the Michigan Court of Appeals granted the motions for immediate consideration and for stay pending appeal, and ordered that the trial court's July 18, 2013 temporary restraining order, the July 19, 2013 declaratory judgment, and all further proceedings be stayed pending

31

resolution of the appeal. (Ex. 1.) Subsequently, this Court granted the City's motion to extend the automatic stay to the certain "state entities" including the Governor and Treasurer, including the *Webster* case. (Doc. # 166, July 25, 2013 Order.) In an order dated August 1, 2013, the Michigan Court of Appeals closed the case without prejudice, noting the existence of the chapter 9 stay. (Ex. 2.)

The case also fails to meet the requirements of Michigan law concerning collateral estoppel. Michigan law governs because 28 U.S.C. § 1738 requires a federal court to give a state court judgment the same full faith and credit as the judgment would be given by the courts of the rendering state. With respect to issues actually litigated in state court proceedings, a federal court must give such proceedings the same preclusive effect as they would be given by the courts of the rendering state, whether such issues are federal, general, or local. *Marrese v. American Academy of Orthopedic Surgeons,* 470 U.S. 373, 380 (1985). *See also In re Moon,* 116 B.R. 75, 78 (Bankr. E.D. Mich. 1990).

An attempt to collaterally estop the chapter 9 proceedings must fail. The following elements are required for the application of the doctrine of collateral estoppel under Michigan law: "'(1) a question of

32

fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel.'" *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 684 (2004) (quoting *Storey v. Meijer, Inc.,* 431 Mich. 368, 373 n. 3 (1988).)

None of the necessary elements for collateral estoppel is satisfied here. There was no question of fact essential to the judgment actually litigated. There was no full and fair opportunity to litigate these issues. There is no final judgment, as the matter was stayed by the Michigan Court of Appeals. The parties are not the same, as the *Webster* decision applied only to the pre-petition actions of defendants Governor Snyder and Treasurer Dillon in authorizing the filing; the City of Detroit and the Emergency Manager were not parties to the action. In short, the Ingham Circuit Court order in *Webster* is simply not binding on other circuit courts, and not binding on a federal court.

## CONCLUSION AND RELIEF REQUESTED

The issue before the Court is a narrow one: was the City of Detroit specifically authorized under state law to be a chapter 9 debtor?

A straightforward application of the § 18(1)'s requirements shows that the answer to that question is yes. The Emergency Manager recommended the chapter 9 filing, having determined that no feasible financial plan could be adopted that could satisfactorily rectify Detroit's financial emergency in a timely manner. The Governor then approved the filing. Detroit thus received the specific authorization under state law that § 109(c)(2) requires. None of the numerous objections overcome this basic point.

For these reasons, the State urges the Court to conclude that Detroit is eligible to proceed in chapter 9 bankruptcy.

Respectfully submitted,

*/s/ Steven B. Flancher*
Steven B. Flancher (P47894)
Assistant Attorney General

Matthew Schneider (P62190)
Chief Legal Counsel

Aaron D. Lindstrom (P72916)
Assistant Solicitor General

Margaret A. Nelson (P30342)
Assistant Attorneys General
P.O. Box 30758
Lansing, MI 48909
517.373.6434

34

Steven G. Howell (P28982)
Special Assistant Attorney General
Dickinson Wright PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226-3425

Attorneys for the State of Michigan
Michigan Dep't of Attorney General