UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

CITY OF DETROIT, MICHIGAN,   Chapter 9

         Debtor.   Case No. 13-53846
                             Honorable Steven W. Rhodes

# OBJECTIONS/COMMENTS OF ROBBIE FLOWERS, MICHAEL WELLS, JANET WHITSON, MARY WASHINGTON AND BRUCE GOLDMAN TO ORDER OF 26 AUGUST 2013

Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington and Bruce Goldman (the "*Flowers* plaintiffs"), citizens of the State of Michigan, state:

**Background**

1. The *Flowers* plaintiffs are three City of Detroit retirees currently receiving pension benefits and two City of Detroit employees with vested pension benefits.

2. The *Flowers* plaintiffs as citizens of the State of Michigan have rights under Article 9, Section 24 of the Michigan Constitution. It provides: "The accrued financial benefits of each pension plan and retirement system of the state and its

political subdivisions shall be a contractual obligation whereof which shall not be diminished or impaired thereby."

3. The *Flowers* plaintiffs are plaintiffs in a Michigan civil action that sought and obtained injunctive relief precluding Governor Snyder from authorizing Detroit's Emergency Manager to proceed under Chapter 9 of the federal Bankruptcy Code because to do so threatened to abrogate their rights under Article 9, Section 24. *Flowers, et al. v. Snyder, et al.,* No. 13-729-CZ, Ingham County Circuit Court (complaint 3 July 2013; preliminary injunction 18 July 2013; amended preliminary injunction 19 July 2013).

4. Shortly before the *Flowers* plaintiffs filed this suit, the Detroit Emergency Manager had publicly announced that he intended to significantly cut vested pension amounts of the city's retirees and employees in violation of Article 9, Section 24 and had publicly threatened to seek to extinguish their Article 9, Section 24 rights in bankruptcy if they failed to agree.

5. The Detroit Emergency Manager has never retracted or in any way modified either this public announcement or this public threat.

6. This Court has stayed (at docket 166) the action described in ¶ 3.

7. The *Flowers* plaintiffs filed eligibility objections (at docket 504) that in part adopted the objections filed by the UAW (at docket 506).

## Adoption of UAW Response with Emphasis on Certain Points

8. The *Flowers* plaintiffs here join in the response the International Union, UAW makes in its filing of today in its entirety, while emphasizing at ¶¶ 9-11 below certain points from that response.

9. "[T]he Governor's July 18, 2013 letter authorizing the Emergency Manager to file the chapter 9 case refers extensively to certain conclusions reached by the Governor in issuing the authorization, each of which were presumably fact intensive inquiries. How the Governor came to reach those conclusions involves a factual inquiry, as does the process followed by the Governor in issuing the authorization. The authorization also states that the Governor determined not to impose any contingencies at that time. How and why the Governor chose not to impose any contingencies, as well as why he thought the reference to Section 943(b)(4)—which applies only at confirmation-- operated as a contingency upon the State's authorization are also factual inquiries for discovery." From UAW Response, ¶ 3.

10. "[T]he determination whether there are 'genuine issues of material fact' in dispute may only be known after discovery is conducted. Thus, to the extent the Court retains the early argument date, the list of issues identified by the Court in Section II and described as raising only legal issues should be revised to

3

eliminate any issues for which discovery may be had. Moreover, under Section VII of the Order, discovery should not be limited solely to the matters currently set forth in Section V." From UAW Response, ¶ 4 (citations omitted).

11. "In its Eligibility Objection, the UAW asserted that the City determined to use federal bankruptcy law as a strategic opportunity to strong-arm retirees and pension-vested workers into negotiating away accrued pension benefits that are protected against impairment by the Michigan Constitution through the tools of the bankruptcy process. *See* UAW Eligibility Objection, pp. 25-27. What is known to date about how that process unfolded, *see id.*, pp. 7-10, leaves little doubt that the City (aided by the Governor's office) intended to present a proposal *before* the bankruptcy filing that was premised on its presumed ability to use federal bankruptcy law to trump the protections of the state Constitution. UAW strongly believes that the discovery process will fill out the details of this tactical scheme and UAW has asserted that this course of events supports its assertion that the chapter 9 filing was made in bad faith. As a separate matter, however, a chapter 9 filing premised upon a proposed plan that includes a proposal to impair benefits the City cannot lawfully impair leads inevitably to the question of whether the proposed plan of adjustment is, in this respect, unlawful, since it could not be confirmed under Section 943(b)(4). Deferring this issue to confirmation, and thus

permitting the City to proceed with its chapter 9 case on this basis until that time in effect, fuels the City's plan—to use bankruptcy tools as leverage in order to obtain a result that impairs benefits that should not be part of this process to begin with. Accordingly, UAW submits that the Court's ruling rejecting UAW's eligibility objection under Section 109(c)(4) should be withdrawn and that UAW should be permitted to fully litigate the objection." From UAW Response, ¶ 9 (footnote omitted).

## Additional Points

12. In their objections the *Flowers* plaintiffs alleged: "Based on information and belief, Governor Snyder and his staff designed a legal strategy and assembled a Jones Day legal team to circumvent Article 9, Section 24. See the evidence cited at footnote 2 of the UAW objection." Docket 504, ¶ 19.

13. To be clear: the *Flowers* plaintiffs intend to show through discovery that there was a conscious strategy adopted by the Governor of the State of Michigan and other State actors – including Treasurer Dillon and the Detroit Emergency Manager and his former law firm – to use the Chapter 9 process to attempt to avoid the requirements of Article 9, Section 24 of the Michigan Constitution that accrued pension benefits not be reduced. Upon making such a showing, the *Flowers* plaintiffs will urge the Court to find that the Chapter 9 filing

5

was invalid as a constitutional tort. See *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388 (1971) (recognizing a cause of action for damages against federal officers for violation of individuals' federal constitutional rights), adopted in Michigan at *Smith v Department of Health,* 428 Mich. 540 (1987) (recognizing analogous state cause of action for violation of state constitution) and followed by the Michigan Court of Appeals in *Rodwell v. Forrest*, 2010 WL 2076933 (reversing a trial court that failed to determine whether claim as pled qualified as a constitutional tort under Michigan law).

14. In short, the Governor's authorization was the culmination of a course of action by State actors intended to undermine and make null the protections of Article 9, Section 24 of the Michigan Constitution, an enactment that only the citizens of the State of Michigan have the authority to set aside, through the provisions contained within the Michigan Constitution for its amendment.

15. This Court if it precludes discovery as to these matters will be deciding that, at least as to eligibility, it is of no moment that the Governor intentionally circumvented a state constitutional provision that he had and has a duty to uphold.

16. The Governor's acts are all the more subject to question given that the Michigan Attorney General has now filed a pleading unequivocally stating that

Article 9, Section 24 of the Michigan Constitution applies here and that the Detroit Emergency Manager has taken an oath to uphold the Michigan Constitution and must follow it by recognizing the applicability of Article 9, Section 24 in this Chapter 9 proceeding – something neither the Governor nor the Detroit Emergency Manager acting in his stead has at this or any other point been willing to do. Docket 481, pages 5-8.

> Respectfully submitted,
>
> /s/William A. Wertheimer
> William A. Wertheimer (P26275)
> Attorney for *Flowers* plaintiffs
> 30515 Timberbrook Lane
> Bingham Farms, MI 48025
> 248-644-9200

Dated: 6 September 2013

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed and served via the Court's electronic case filing and noticing system to all parties registered to receive electronic notices in this matter this 6th day of September 2013.

> By: /s/William A. Wertheimer
> William A. Wertheimer P26275)