UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

-------------------------------------------------------

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No.: 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

------------------------------------------------------- x

## RESPONSE AND OPPOSITION OF INTERNATIONAL UNION, UAW AND THE *FLOWERS* PLAINTIFFS TO MOTION TO QUASH

The International Union, United Automobile, Aerospace and

Agricultural Implement Workers of America ("UAW") and Robbie Flowers,

Michael Wells, Janet Whitson, Mary Washington and Bruce Goldman, as plaintiffs

in the suit *Flowers v. Snyder*, No. 13-729 CZ (Ingham County Circuit Court) (the

"*Flowers* Plaintiffs"), submit this response and objection to the Motion to Quash

and for Protective Order of State of Michigan, Governor Rick Snyder, Treasurer

Andrew Dillon, the Governor's Transformation Manager Richard L. Baird,

Department of Treasury Legal Counsel Frederick Headen, and Auditor General

Thomas McTavish (collectively, the "State of Michigan" or the "State") [Docket

No. 699] (the "Motion to Quash"):

# PRELIMINARY STATEMENT

1.     In a blunderbuss motion to quash subpoenas issued by the UAW and the *Flowers* Plaintiffs, pursuant to Rule 45 of the Federal Rules of Civil Procedure and Federal Rule of Bankruptcy Procedure 9016, the State of Michigan seeks to preclude *all discovery* of its actions related to the chapter 9 filing.  This audacious move by public officials charged with ensuring that the largest city bankruptcy filing in history proceeded in a lawful manner flouts Michigan law establishing that the public is "entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees"[1] and that official documents must be maintained in the "public domain." The Motion to Quash likewise runs afoul of basic principles of discovery under the Federal Rules of Civil Procedure, which recognize that discovery is necessarily broad, as well as this Court's rules concerning discovery disputes.

2.     Among other things, at issue in the pending challenge by the UAW and the *Flowers* Plaintiffs to the City's eligibility to file for Chapter 9 relief is whether Governor Snyder lawfully authorized the Emergency Manager to file the City of Detroit's chapter 9 petition, and whether the City, acting through its Emergency Manager — who was appointed by the Governor — proceeded with

---

[1] Mich. Comp. Laws § 15.231(2)

the chapter 9 filing in good faith. *See* 11 U.S.C. §§ 109(c)(2), (5) and 921(c). The UAW intends to show through discovery that there was a conscious strategy adopted by the Governor of the State of Michigan and other State actors — including Treasurer Dillon and Mr. Orr — to use the chapter 9 process to attempt to avoid the requirements of Article 9, Section 24 of the Michigan Constitution that accrued pension benefits not be reduced. Upon making such a showing, the UAW will urge the Court to find that the Chapter 9 filing was invalid, since the Governor's authorization was the culmination of a course of action by State actors intended to undermine and make null the protections of Article 9, Section 24 of the Michigan Constitution, an enactment that only the citizens of the State of Michigan have the authority to set aside, through the provisions contained within the Michigan Constitution for its amendment.[2] These are mixed factual and legal questions as to which discovery is not only appropriate but necessary.

3. As shown below, the discovery requests at issue go to these central factual issues as they would require the State of Michigan to produce, among other things, documents concerning the Governor's authorization of the chapter 9 filing, documents concerning the Governor's decision not to place any contingencies upon the chapter 9, documents concerning whether and how the Governor (and other State actors) considered the accrued pensions of City of

---

[2] *See, e.g., Smith v. Dep't of Health,* 428 Mich. 540, 410 N.W.2d 749 (1987).

Detroit retirees and vested employees in light of Article 9, Section 24 of the Michigan Constitution, especially given the intention to impair pension benefits reflected in the Emergency Manager's June 14, 2013 "Proposal for Creditors" ("Proposal") (and the work that led to that proposal), including, with respect to the foregoing, communications between and among the State witnesses and the Emergency Manager. The production requests are thus directly relevant both to the legality of the Governor's authorization of the chapter 9 filing and the requirement that the petition was filed in good faith. In addition, discovery directed to the State can also reasonably be expected to lead to relevant evidence concerning the (lack of) pre-bankruptcy negotiations prior to the filing given that the Governor appointed the Emergency Manager whose law firm, Jones Day, devised the chapter 9 game-plan followed to date. It is inconceivable that there were no discussions among Orr, Jones Day and the State concerning the tactics the Emergency Manager would take in pre-filing discussions with stakeholders, including the unions and the retirees.[3]

        4.      The State's claim that it should be excused from any discovery because the "eligibility determination" was made by the City of Detroit alone and

---

[3] In the Addendum to this Objection, in accordance with the Court's September 3, 2013 Order, UAW and the *Flowers* Plaintiffs summarize each document request in the subpoenas and identify the relevance of each to the factual issue or issues identified in this Court's August 26, 2013 Order Regarding Eligibility Objections.

its alternative claim that, at minimum, such discovery should await the completion of discovery of the City, both misread chapter 9's eligibility requirements, which are fundamentally dependent upon lawful state authorization and good faith. Moreover, the sequential discovery urged as an alternative by the State is unsupported by case law or this Court's orders concerning discovery on the eligibility issue and is also impractical given the brief time available to conduct discovery.

5. Nor has the State of Michigan followed the requirements of the Federal Rules of Civil Procedure or the Local Rules of this court in filing this motion. As the State would have it, it can seek to preclude discovery entirely and then, if that is unsuccessful, raise unspecified privilege objections to producing documents or information called for in the subpoenas. Rather, the State was required to assert all of its objections and meet and confer with UAW and the *Flowers* Plaintiffs concerning all of its objections *before* seeking relief from this Court. This effort to selectively litigate grounds for objecting to the subpoenas undermines the meet and confer obligations of this Court's Local Rules and wastes judicial time and resources.

6. Accordingly, the Motion to Quash should be denied.

## STATEMENT OF FACTS

7.     UAW is a labor organization headquartered in Detroit,

Michigan whose members include both City of Detroit employees and retirees and

employees and retirees of public entities related to the City of Detroit that

participate in common with City of Detroit employees in retirement benefit plans

such as the City of Detroit General Retirement System pension plan.   UAW-

represented employees and retirees are drawn from the following units: Civilian

Police Investigators, City Law Department attorneys, City of Detroit Law

Department paralegals, Water & Sewer waste water treatment operators, Detroit

librarians and associated skilled trades workers.  The *Flowers* Plaintiffs

commenced the action, *Flowers v. Snyder*, No. 13-729 CZ (Ingham County Circuit

Court), prior to the bankruptcy filing.

8.     In the Objections filed by the UAW to the City of Detroit's

Eligibility for an Order for Relief Under Sections 109(c) and 921(c) of the

Bankruptcy Code (the "Objection") [Docket no. 506], and by the *Flowers* Plaintiffs

[Docket No. 504], UAW and the *Flowers* Plaintiffs challenge the City of Detroit's

eligibility for chapter 9 relief on the grounds that, *inter alia*, the Governor's

authorization was not valid under the Michigan Constitution and Michigan state

law because the authorization did not prohibit the City from pursuing a plan to

impair accrued pension benefits.  In addition, UAW and the *Flowers* Plaintiffs

assert that the chapter 9 filing was not made in good faith and was not preceded by good faith negotiations by Emergency Manager Kevyn Orr. Instead, Mr. Orr's strategy was to release his Proposal showing a cessation in pension funding and containing a directive that vested benefits must be cut — proposals that patently violate Michigan's constitutional prohibition on the impairment of accrued pensions and the requirement that funding for the years of such accruals be maintained — and then rush to file the chapter 9 case after minimal efforts to engage stakeholders regarding the Proposal. The bankruptcy thus became a means of leverage to force cuts in the vested benefits of active and retired employees.

9. In connection with their Objections, UAW and the *Flowers* Plaintiffs served Rule 45 subpoenas upon the State (pursuant to Fed. R. Civ. P. 30(b)(6)), Hon. Rick Snyder, Governor of the State of Michigan and Andy Dillon, State Treasurer. A copy of these subpoenas are attached as Exhibit A.

10. In addition to requiring deposition testimony, the subpoenas call for the production of documents relating to the decision-making process culminating in the filing. For example, Request 3 of each of the subpoenas calls for the production of

> All documents or communications regarding a chapter 9
> filing by the City of Detroit, including the authorization
> for filing the chapter 9 petition … that were sent by, sent
> to or received by or between any of the following:
> Governor Rick Snyder, State Treasurer Andy Dillon, or
> any of the Governor's aides or agents, anyone at Jones

> Day; any other legal, financial or actuarial consultant …
> the Emergency Manager and/or any staff member of his
> office….

Exhibit A, Item 3, "Request for Documents." Requests 4 and 5 call for the

production of documents regarding the appointment of the Emergency Manager

and the Governor's decision to authorize the filing. *Id.*, Items 4 and 5. Other

requests seek documents relating to the Governor's decision not to condition the

filing as permitted by Section 18(1) of the Local Financial Stability and Choice Act

Public Law 436 (2012), Mich. Comp. Laws § 141.1541, *et seq.* ("PA 436"), as well

as the reference in the authorization to 11 U.S.C.§ 943(b)(4). *Id.,* Items 6 and 7.

11.    Finally, the subpoenas require the production of documents or

communications relating to the Proposal, and related presentations prepared by the

City, concerning pension and retiree health obligations as well as specific

documents targeting retirement and retiree health benefits. *Id.,* Item 10.

12.    On August 30, Assistant Attorney General Mark Donnelly, of

the Michigan Department of the Attorney General, contacted UAW's counsel to

determine whether the UAW would withdraw the subpoenas. When informed that

the subpoenas would not be withdrawn, counsel advised that the State intended to

move to quash the subpoenas on the grounds that the Court's Order Regarding

Eligibility Objections did not authorize discovery of the State and that compliance

with the subpoenas would be burdensome. The State's attorney did not object to

specific requests, nor did he assert that the requested documents were privileged from discovery. *See* Exhibit B attached hereto.

13.     Late in the day on August 30, the State filed the Motion to Quash. While acknowledging that this Court has expressly permitted discovery concerning "whether the City negotiated in good faith with creditors; whether the City was unable to negotiate with creditors because such negotiation was impracticable; and whether the petition was filed in bad faith," Motion to Quash ¶ 5, the State urges that UAW's discovery is "outside the scope of discovery allowed by this Court" and unduly burdensome. *Id*. ¶ 6. In this connection the State urges that if the subpoenas are not quashed *in toto* that it should be permitted to later contend that production should be barred by unspecified "recognized privileges." Motion to Quash ¶ 7.[4]

14.     In its supporting brief, the State argues that because it "was not involved in making the determination that the eligibility factors were met" discovery of information in the State's possession is somehow "irrelevant" to the

---

[4] Although the Court has denoted UAW's eligibility challenge under Section 109(c)(2) as presenting a purely legal question, the UAW respectfully disagrees and contends that discovery must be permitted regarding the State's authorization to file the chapter 9 case. *See* Response of International Union, UAW to August 26, 2013 Order Regarding Eligibility Objections, dated September 6, 2013 [Docket No. 741]; Objections/Comments of Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington and Bruce Goldman to Order of 26 August 2013 [Docket No. 757].

issues concerning the City's eligibility to file the bankruptcy case. Brief in Support of Motion to Quash at ¶¶ 4-5. It asserts that, to the extent any discovery is permitted, "discovery from the State should follow discovery sought from Mr. Orr and the City — and only after a showing of relevant state involvement." *Id*. at 7.

15.     Although it did not address particular requests with UAW counsel before filing this motion, the State now urges (without any discussion of the particulars of the requests) that certain of the requests solely concern legal issues and that, in any event, "it would be unduly burdensome to sort through the tens of thousands of available e-mails to determine whether they are responsive" to the production requests. Brief in Support of Motion to Quash at 7.

## ARGUMENT
## THE MOTION SHOULD BE DENIED

A.     The Subpoenas Call for the Production of Relevant Documents

16.     It is axiomatic that "because discovery itself is designed to help define and clarify the issues," the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). The operative test in determining whether discovery on a particular matter is permissible is "'whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence.'" *Conti v. American Axle and Mfg. Corp.*, 326 Fed.Appx.

900, 904 (6th Cir. 2009). Discovery of non-parties under Rule 45 is similarly broad. *See Monsanto Co. v. Ralph*, No. 01-MC-1004, 2001 WL 35957201, *3 (W.D. Tenn. May 10, 2001) ("The scope of the material that may be obtained pursuant to a Rule 45 subpoena duces tecum is as broad as that permitted under the rules of discovery.")

17.     The State's principal argument is that UAW's discovery requests are irrelevant, but it fails to demonstrate how this is so. Under PA 436, the Governor appointed the Emergency Manager and he was required to review and approve the Emergency Manager's recommendation to file the petition. Mich. Comp. Laws §§ 141.1549, 1558. Thus, it can be expected that the Emergency Manager's analysis of the central issues involved in the case — including the decision to demand reductions in accrued pension and retiree health benefits — will have been discussed with State officials and that the State will have documents reflecting those discussions. Thus, for example, in Request Items 3 and 8-10, UAW requested documents concerning the State's communications with the Emergency Manager, his former law firm or other financial and actuarial advisors, or concerning his presentations to creditors. These documents would reasonably be expected provide information relevant to the Governor's decision to authorize the chapter 9 filing; his decision to refrain from imposing any contingencies on the filing, while at the same time including a reference to the confirmation requirement

under Section 943(b)(4), and whether there were bona fide pre-filing negotiations or whether the filing was made in bad faith.

18.     UAW and the *Flowers* Plaintiffs are entitled to take discovery concerning the appointment of the Emergency Manager (including whether the Jones Day firm's prescription for using chapter 9 as leverage to achieve cuts in accrued pensions factored into the decision to appoint Mr. Orr) and the Governor's decision to authorize the filing and do so without contingencies.  Documents concerning the eligibility criteria specifically as sought in Requests 4-7 and 11 are also relevant given that discovery into these topics will likely reveal the motivations of the Emergency Manager critical to the good faith inquiry. Similarly, the documents sought in Requests 2 and 12 concern documents and information relating to the pension plans and the crucial issues of the requirements of the Michigan Constitution with respect to accrued benefits, as well as documents concerning compliance or non-compliance with those provisions. Those requests go to the heart of UAW's and the *Flowers* Plaintiffs' contentions that the chapter 9 filing was not properly authorized under state law and not made in good faith.  While the UAW and the *Flowers* Plaintiffs maintain that the state authorization eligibility requirement incorporates an inquiry into facts, thus entitling them to discovery, even the issues identified by the Court for trial — specifically, the good faith requirements — require that the State be subject to

discovery.  Neither the chapter 9 eligibility requirements nor this Court's order offer a "free pass" to the State to shield itself from discovery.

19.     The State of Michigan's contention that the discovery is irrelevant because only the City makes the determination regarding eligibility is also meritless.  First, the determination as to whether the City is eligible for chapter 9 relief is made by the court.  While the City bears the burden of demonstrating that it meets the eligibility criteria, to do so, the City must show that it was specifically authorized to file the chapter 9 petition, as set forth in Section 109(c)(2).  *See In re City of Harrisburg, PA,* 465 B.R. 744, 754 (Bankr. M.D. Penn. 2011).  The State of Michigan cannot escape scrutiny here, because it is the Governor's authorization that provides the basis for the eligibility requirement (or, as UAW and *Flowers* Plaintiffs contend, invalidates the filing).  Mich. Comp. Laws § 141.558(1) ("If, in the judgment of the emergency manager, no reasonable alternative to rectifying the financial emergency of the local government which is in receivership exists, then the emergency manager may recommend to the governor and the state treasurer that the local government be authorized to proceed under chapter 9.  If the governor approves of the recommendation … [u]pon receipt of the written approval, the emergency manager is authorized to proceed under chapter 9.")  Indeed, even the State points to the Governor's written

authorization for the filing.  Yet the State appears to suggest that *only this one document* is relevant to the authorization decision.

20.    Even assuming *arguendo* the State was not involved in the decision to file the chapter 9 case — a proposition that defies common sense given that the Emergency Manager was selected by the Governor and that the Governor was required by law to review and approve his recommendation to file the case — there is no basis to conclude that discovery of the State will not shed light on the factual issues relating to eligibility.  The State has not advanced any such argument and a bald assertion that witnesses have no relevant information is insufficient as a matter of law to establish that compliance with a Rule 45 subpoena would result in an undue burden.  *See CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002).

21.    The State's argument that production of the requested documents would be burdensome is also without merit.  The State complains that "there are over 30,000 e-mails that would have to be individually evaluated for relevance to eligibility."  Brief in Support of Motion to Quash at 7.  But that alone cannot be sufficient to excuse compliance.  It is to be expected that complying with discovery will entail some burden, and modern discovery practice typically entails the production of large numbers of emails.  What is required is a showing of "undue" burden and that the State has failed to make.  Fed. R. Civ. P. 45(c).

22.    So, too, the State cites no basis for its contention that discovery should only be allowed *after* discovery is taken from the City and only then after some showing of State involvement.  This Court's Order Regarding Eligibility Objections does not so provide (nor does the Court's August 2, 2013 First Order Establishing Dates and Deadlines [Docket No. 280]) and, given the limited time available for discovery, such a limitation would be impractical.  Rather, the State's position would appear to be motivated by a desire to shield its actions concerning this filing from public scrutiny entirely.  It is a fundamental principal of our system of justice, however, that "'the public … has a right to every man's evidence.'" *Trammel v. United States*, 445 U.S. 40, 50 (1980) (alteration in original) (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)).  Under Michigan law, "[a]ll official books, papers or records created by or received in any office or agency of the state of Michigan" are "public property" which must be maintained.  M.C.L.A. §750.491.  The State of Michigan has a "strong public policy favoring public access to government information, recognizing the need that citizens be informed as they exercise their role in a democracy, and the need to hold public officials accountable for the manner in which they discharge their duties."  *Great Lakes Media v. City of* Pontiac, Nos. 208306, 208320, 2000 WL 33419383, *2 (Mich. App. May 19, 2000) (internal citation omitted).  The State should not be allowed to

hide relevant information within its possession, particularly when such information

should be in the public domain.

B.     The State's Failure to Raise Objections or to Comply with the
       Requirements of the Local Rules Preclude Serial Litigation of
       Its Objections to Discovery by UAW and the *Flowers* Plaintiffs

       23.     Under the Federal, Bankruptcy, and Local Rules of civil

procedure, a party must specifically set forth all of its objections in its initial

response to a request for discovery.

       24.     Federal Rule of Civil Procedure 34(b)(2)(B) provides that "For

each item or category [of documents requested], the response must either state that

inspection and related activities will be permitted as requested or state an objection

to the request, *including the reasons*." (emphasis added).  A party's failure to

specify all of its objections to discovery in its initial response results in a waiver of

the objections not raised.  *See PulseCard, Inc. v. Discover Card Servs., Inc.*, 168

F.R.D 295, 304 (D. Kan. 1996) ("When parties fail to make specific legitimate

objections to particular interrogatories within the time allowed, the court may

appropriately deem objections to those interrogatories waived. The same can be

said of failing to make *specific legitimate objections* to requests for production.")

(internal citation and quotation omitted) (emphasis added); *Dunlap v. Midcoast-

Little Rock, Inc.*, 166 F.R.D. 29, 30 (E.D. Ark. 1995) ("Rule 34 requires that the

'reasons for the objection shall be stated' and that an objection to part of an item

requires that the 'part shall be specified.' Fed. R. Civ. Pro. Rule 34(b). Plaintiff's

response to Defendant's request for production (paragraph 11) does not meet these

requirements. Plaintiff may not now object to this request."); *North American*

*Rescue Prods., Inc. v. Bound Tree Medical, LLC*, No. 2:08-cv-101, 2009 WL

4110889, *7 (S.D. Ohio, Nov. 19, 2009) ("[a]s a general rule, when a party fails to

object timely to interrogatories, production requests, or other discovery efforts,

objections thereto are waived.")

       25.    Further, the State should have raised whatever additional

specific objections it may have as part of the meet and confer process. Pursuant to

Rule 7.1 of the Local Rules for the Eastern District of Michigan, a party making a

motion must first attempt to obtain concurrence from the party expected to oppose

the motion, and if such concurrence is not obtained, the motion must state that

there was a conference in which the movant explained the nature of the motion and

its legal basis. The Court's individual practices state that "Discovery motions are

not encouraged. Counsel must always comply with the 'meet and confer'

requirements of L.B.R. 9014-1(h)." Local Bankruptcy Rule 9014-1(h) requires

parties to meet and confer prior to any hearing on a discovery motion to "narrow

the areas of disagreement," and "it shall be the responsibility of counsel for the

movant to arrange for the conference." Local Bankruptcy Rule 9014-1(g) requires

a moving party, in its motion, to state that it sought concurrence of opposing counsel and that concurrence was denied.

26. Here, counsel for the State, in conferring with counsel for the UAW, simply asked whether the UAW would withdraw the subpoenas in their entirety based on the Court's August 26, 2013 order. Beyond a reference to the Court's August 26th order, counsel for the State did not explain its objection to any particular request in the UAW's subpoenas. Nor did counsel for the State explain the legal basis, or even mention, any "recognized privileges" that it now asserts would provide an additional basis for an objection to the UAW subpoena. Motion to Quash ¶7. If it had offered such explanations, counsel for UAW would have had an opportunity to consider narrowing the scope of the subpoena to address the State's concerns. *See Gabriel Tech. Corp. v. Qualcomm, Inc.*, No. 08cv1992 AJB (MDD), 2012 WL 31506054, *3 (S.D. Cal. Aug. 2, 2012). Instead, the State has chosen to press a blanket objection, believing that it could hold its specific objections in reserve for a later date. Permitting the State to have multiple bites at the apple in this manner serves neither judicial economy nor common sense. [5]

---

[5] In addition and without repeating them, the UAW adopts the arguments of Michigan Council 25 of the American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees in opposition to the Motion to Quash [Docket No. 701].

## CONCLUSION

For the foregoing reasons, the State of Michigan's Motion to Quash should be denied.

Dated:      New York, New York
              September 9, 2013

        /s/ Babette A. Ceccotti
Babette A. Ceccotti
Thomas N. Ciantra
Peter D. DeChiara
Joshua J. Ellison
Cohen, Weiss and Simon LLP
330 West 42nd Street
New York, New York 10036-6976
T: 212-563-4100
F: 212-695-5436
bceccotti@cwsny.com

Michael Nicholson (P33421)
Niraj R. Ganatra (P63150)
8000 East Jefferson Avenue
Detroit, Michigan 48214
T: (313) 926-5216
F: (313) 926-5240
mnicholson@uaw.net
nganatra@uaw.net

*Attorneys for International Union, UAW*

        /s/ William A. Wertheimer
William A. Wertheimer
30515 Timberbrook Lane
Bingham Farms, MI 48025
T: (248) 644-9200
billwertheimer@gmail.com

Andrew A. Nickelhoff
Sachs Waldman, P.C.
2211 East Jefferson Avenue
Deoit, MI 48207
T: (313) 965-3464
F: (313) 965-0268
anickelhoff@sachswaldman.com

*Attorneys for Flowers Plaintiffs*

# Addendum

| Request No. | Factual Issue Relevant | August 26 Order |
|---|---|---|
| 1. All documents or communications relating to Governor Rick Snyder's and State Treasurer Andy Dillon's and their aides and agents' (including members of the Governor's office of Legislative Affairs) communications with state legislators regarding the legislation that became 2012 PA 436, including but not limited to communications that considered. the issue of the interplay of Article 9, Section 24 of the Michigan Constitution specifically or vested pension benefits generally with this legislation. | Relevant to the Governor's decision to authorize the chapter 9 filing,[1] and whether the filing was made in bad faith | ¶¶6, 12 |
| 2. All documents or conunnications relating to pensions of and pension plans for active and retired employees of the City of Detroit and its component units, and/or to Article 9, Section 24 of the Michigan. Constitution created during the requested time period, including all documents and communications that discuss, relate to or constitute any communications with any investment bankers, financial advisors, actuaries or actuarial consulting firms, or accounting firms relating to the City of Detroit and pension benefits including pension finding and contributions to the General Retirement System. | Relevant to the Governor's decision to authorize the chapter 9 filing, and whether the filing was made in bad faith. | ¶¶6, 12 |
| 3. All documents or communications regarding a chapter 9 filing by the City of Detroit, including the authorization for filing the chapter 9 petition in this case, that were sent by, sent to or received by or between any of the following: Governor Rick Snyder, State Treasurer Andy Dillon, any of the Governor's aides or agents, anyone at Jones Day; any other outside legal, financial or actuarial consultant; Detroit City Mayor Dave Bing and/or any staff member of his office; and, following the appointment of the Detroit Emergency Manager; the Emergency Manager and/or any staff member of his office or any legal, financial or actuarial advisors consulted by the City, or the Detroit Emergency Manager. | Relevant to the Governor's decision to authorize the chapter 9 filing; whether there were bona fide pre-filing negotiations, and whether the filing was made in bad faith. | ¶¶6, 10, 12 |

---

[1] UAW and the *Flowers* Plaintiffs assert that the issue whether the chapter 9 filing was authorized raises issues of fact as to which discovery is appropriate.

1

| Request No. | Factual Issue Relevant | August 26 Order |
|---|---|---|
| 4. All documents or communications regarding the appointment of any Emergency Managers for the City of Detroit sent by, or sent to or received by any of the following: Governor Rick Snyder and/or ally of the Governor's aides or agents; Richard Baird; Detroit City Mayor David Bing and/or any staff member of his office; and the Detroit Emergency Manager and/or any staff member of his office, including any legal, financial or actuarial advisors consulted by the City, or the Detroit Emergency Manager. | Relevant to the Governor's decision to authorize the chapter 9 filing, and whether the filing was made in bad faith. | ¶¶6, 12 |
| 5. All documents or ebnunnications relating to the Governor's decision to authorize the filing of a chapter 9 bankruptcy petition, including but not limited to those that preceded the 16 July 2013 request from the Detroit Emergency Manager or his office; the City of Detroit's eligibility to file under chapter 9, and the Detroit Emergency Manager's request for authorization to file a chapter 9 petition. | Relevant to the Governor's decision to authorize the chapter 9 filing, and whether the filing was made in bad faith. | ¶¶6, 12 |
| 6. All documents or communications relating to the Governor's decision not to place contingencies on this bankruptcy filing as expressly permitted by Section 18(1) of 2012 PA 436, including documents or communications relating to any consideration of whether contingencies should be included in light of Article 9, Section 24 of the Michigan Constitution. | Relevant to the Governor's decision to authorize the chapter 9 filing, and whether the filing was made in bad faith. | ¶¶6, 12 |
| 7. All documents or communications relating to the Governor's decision to include the following statement in the 18 July 2013 Authorization to Commence Chapter 9 Bankruptcy Proceeding: "Federal law already contains the most important contingency—a requirement that the plan be legally executable. 11 U.S.C. 943(b)(4)." | Relevant to the Governor's decision to authorize the chapter 9 filing, and whether the filing was made in bad faith. | ¶¶6, 12 |
| 8. All documents or communications relating to the 14 June 2013 Detroit Emergency Manager's "Proposal For Creditors," as the Proposal relates to pension benefits, contributions to the General Retirement System, funding for pension benefits, and retiree health benefits matters, including but not limited to documents relating to the development of the Proposal's terms with respect to the General Retirement System, freezing pension accruals, accrued pension benefits and retiree health benefits. | Relevant to the Governor's decision to authorize the chapter 9 filing; whether there were bona fide pre-filing negotiations, and whether the filing was made in bad faith. | ¶¶6, 10, 12 |

2

| Request No. | Factual Issue Relevant | August 26 Order |
|---|---|---|
| 9. All documents or conunnunications relating to the 14 June 2013 City of Detroit "Executive Summary" as it relates to pension benefits, contributions to the General Retirement System, funding for pension benefits, and retiree health benefits matters, including but not limited to documents relating to the development of the terms with respect to the General Retirement System, freezing pension accruals, accrued pension benefits and retiree health benefits. | Relevant to the Governor's decision to authorize the chapter 9 filing; whether there were bona fide pre-filing negotiations, and whether the filing was made in bad faith. | ¶¶6, 10, 12 |
| 10. All documents or communications relating to the City of Detroit June 20, 2013 "Retiree Legacy Cost Restructuring Non-Uniform Retirees," as it relates to pension benefits, contributions to the General Retirement System, funding for pension benefits, and retiree health benefits matters, including but not limited to documents relating to the development of the "Objectives for Retiree Health Care Restructuring," "Proposed Retiree Health Care Restructuring" and all sections related to pensions. | Relevant to the Governor's decision to authorize the chapter 9 filing; whether there were bona fide pre-filing negotiations, and whether the filing was made in bad faith. | ¶¶6, 10, 12 |
| 11. All documents or communications obtained by you from any source during the course of any investigation of the City, the State of Michigan, any governmental unit or government official or employee regarding or related to the City of Detroit's eligibility to file a chapter 9 bankruptcy case. | Relevant to the Governor's decision to authorize the chapter 9 filing, and whether the filing was made in bad faith. | ¶¶6, 10, 12 |
| 12. All documents or communications that discuss or relate to any compliance or non-compliance by the City with any pension or retiree health benefits obligations of the City, or and labor agreements, including, without limitation, collectively bargained agreements. | Relevant to the Governor's decision to authorize the chapter 9 filing, and whether the filing was made in bad faith. | ¶¶6, 12 |

3