UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN

Chapter 9
Case No. 13-53846-swr
Hon. Steven W. Rhodes

# RESPONSE OF THE RETIRED DETROIT POLICE MEMBERS ASSOCIATION TO STATE OF MICHIGAN'S MOTION TO QUASH AND FOR PROTECTIVE ORDER

The Retired Detroit Police Members Association ("RDPMA"), by and through its attorneys, Strobl & Sharp, P.C., without acknowledging the jurisdiction of this Court, the constitutionality of the City of Detroit's ("Debtor" or "Detroit") Chapter 9 bankruptcy filing, or the eligibility of Detroit to relief under Chapter 9 of the Bankruptcy Code, hereby submits its response to the Motion to Quash and for Protective Order (the "Motion") filed by the State of Michigan, Governor Rick Snyder, Treasurer Andrew Dillon, the Governor's Transformation Manager Richard L. Baird, Department of Treasury Legal Counsel Frederick Headen, and Auditor General Thomas McTavish (collectively, the "State"), and states as follows,

1. Pursuant to this Court's scheduling order of August 2, 2013 (the "August 2 Scheduling Order")[Docket No. 280], on August 19, 2013, RDPMA, along with 108 other creditors, filed its Objection to the City of Detroit's Chapter 9 Petition [Docket No. 520] (the "RDPMA's Eligibility Objection").

2. On August 23, 2013, also pursuant to the Court's August 2 Scheduling Order, the RDPMA filed and served, *inter alia*, a request for production of documents on the State of Michigan [Docket No. 596] seeking documents directly relevant to the RPDMA's Eligibility Objection (the "RDPMA Discovery").

3. Pursuant to the August 2 Scheduling Order, responses to the RDPMA Discovery are due September 13, 2013.

4. On August 26, 2013, the Court entered its Order Regarding Eligibility Objections, Notices of Hearings, and Certifications Pursuant to 28 U.S.C. § 2403(a) and (b) (the "August 26 Order") [Docket No.642].

5. The August 26 Order, identifies seven (7) objections asserted by various creditors, including the RDPMA, based, in the Court's determination, solely on legal issues and five (5) objections that require a resolution of genuine issues of material fact.

6. The August 26 Order further limits discovery to those objections requiring a resolution of genuine issues of material fact.

7. The Court identified the RDPMA as having raised four (4) of the five (5) objections requiring factual development for which discovery was permitted.

8. Late in the afternoon on Friday, August 30, 2013, at approximately 3:45 p.m., Mark Donnelley of the Michigan Department of Attorney General ("Donnelley") contacted counsel for the RPDMA asking counsel if, in light of the August 26 Order, the RDPMA would withdraw the RDPMA Discovery.

9. Despite counsel's representation that she would review the discovery over the weekend with the RDPMA and determine which, if any, requests could be withdrawn, and which requests could be narrowed in light of the August 26 Order, Donnelly indicated that a motion would be filed seeking to quash, in total, the RDPMA Discovery.

10. Approximately one hour after its first contact with counsel for the RDPMA, the State filed a Motion to Quash and for Protective Order [Docket No 699].

11. The State seeks to quash the RDPMA Discovery arguing that it is beyond the scope of discovery permitted under the August 26 Order.

12. Specifically, the State argues the following:

   a. Document Requests 4,5,6,7,8 and 11 – 22 are irrelevant;

   b. Document Requests 13, 14, 15, 16, 21 and 22 are more appropriately directed to the City of Detroit;

   c. Document Requests 1, 2, 3, 9 and 10 are outside the scope of discovery because they seek information relative to the appointment of the emergency manager; and

   d. The Court's expedited discovery schedule makes the production of the requested documents unduly burdensome.

**Legal Standards**

13. The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis v. ACB Bus. Servs.*, 135 F. 3d 389, 401 (6th Cir. 1998). Parties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P 26(b)(1). "Relevant evidence" is "evidence having **any tendency** to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed.R.Evid. 401 (emphasis added).

14. Admittedly, the scope of discovery is not unlimited. "District courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Geryhound Lines, Inc.,* 474 Fed.3d 288, 305 (6th Cir. 2007).

15. Rule 26(c) allows the Court to issue protective orders for good cause shown to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

3

expense, including that the disclosure or discovery not be had or that the disclosure or discovery be limited to certain matters. Fed. R. Civ. P. 26(c). The burden of establishing good cause for a protective order rests with the movant. *See Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir.2001) (copy attached as **Exhibit B**), see also, *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973). "To show good cause, a movant for a protective order must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987) (citations omitted); *Napier v. County of Washtenaw,* 2013 U.S. Dist. LEXIS 49311 (E.D. Mich., April 5, 2013) (copy attached as **Exhibit C**).

16. To determine whether a burden is undue, Rule 26(b)(2)(C)(iii) specifically provides that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues." Fed.R.Civ.P 26(b)(2)(C)(iii). Matters involving public policy issues ":may have importance far beyond the monetary amount involved." *US v. Blue Cross Blue Shield of MI*, 2012 U.S. Dist. LEXIS 141355 (E.D. Mich., October 1, 2012)(citing Fed.R.Civ.P 26 (Advisory Committee Notices, 1983 Amendment, Subdivision (b)) (copy attached as **Exhibit D**).

17. A court only entertains an unduly burdensome objection to discovery when the responding party demonstrates how discovery of the document is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden. *Convertino v. United States DOJ*, 565 F. Supp. 2d 10, (D.D.C. 2008).

18. Moreover, before restricting discovery, the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and

taking into account society's interest in furthering "**the truth seeking function**" in the particular case before the court. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 ( 7th Cir, 2002)(emphasis added).

**The Discovery Requests of the RDPMA are Reasonable, Relevant and Not Unduly Burdensome**

19. Without admitting that any of its discovery requests are outside the scope of discovery, irrelevant or unduly burdensome, for purposes of its Eligibility Objection and the pending Discovery, the RDPMA is prepared to withdraw Requests No. 5, 6, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20, 21, and 22. Attached as **Exhibit A** is an Amended Request for Production of Documents with the remaining seven document requests.

20. The remaining requests for production are as follows:

> **REQUEST NO. 1:** Please provide for inspection and copying any and all correspondence or other written communication, whether hard copy, electronic or otherwise, between Kevin Orr, Emergency Manager ("Orr"), or any agent, employee or counsel on his behalf to or from Richard D. Snyder, Governor of the State of Michigan (hereinafter "Snyder") or any agent, employee or counsel on his behalf regarding, referring or relating to the Chapter 9 Bankruptcy Petition filed in this matter on or about July 17, 2013, whether such correspondence or other communication was before or after the date the Petition was filed in this matter.

> **REQUEST NO. 2:** Please provide for inspection and copying any and all correspondence or other written communication, whether hard copy, electronic or otherwise, between Kevin Orr, Emergency Manager ("Orr"), or any of his employees, agents, staff, servants and attorneys to or from Andrew "Andy" Dillon, Treasurer of the State of Michigan (hereinafter "Dillon") or any or any of his employees, agents, staff, servants and attorneys regarding, referring or relating to the Chapter 9 Bankruptcy Petition filed in this matter on or about July 17, 2013, whether such correspondence or other communication was before or after the date the Petition was filed in this matter.

> **REQUEST NO. 3:** Please provide for inspection and copying any and all correspondence or other written communication, whether hard copy, electronic or otherwise, between Kevin Orr, Emergency Manager ("Orr"), or any of his employees, agents, staff, servants and attorneys to or from Bill Schuette, Attorney General of the State of Michigan (hereinafter "Schuette") regarding, referring or relating to the Chapter 9 Bankruptcy Petition filed in this matter on or about July 17, 2013, whether

5

such correspondence or other communication was before or after the date the Petition was filed in this matter.

**REQUEST NO. 4:** Please provide for inspection and copying any and all reports or memoranda of meetings of any agent of the State of Michigan with Kevin Orr, Emergency Financial Manager, or his employees, agents, staff, servants and attorneys regarding, referring or in any way relating to the Petition filed in this matter.

**REQUEST NO. 7:** Please provide for inspection and copying any and all documents analyzing which was the appropriate or best time to file the Chapter 9 Petition in this matter, including the impact the various possible times for filing such Petition would have on all the various creditors of the City of Detroit, including, but not limited to RDPMA.

**REQUEST NO. 8:** Please provide for inspection and copying any and all documents in possession of the State of Michigan, or any of its employees, agents, staff, servants and attorneys regarding any and all possible alternatives to filing a Chapter 9 Bankruptcy Petition.

**REQUEST NO. 9:** Please provide for inspection and copying any and all correspondence or other written communication, whether hard copy, electronic or otherwise, between Kevin Orr, Emergency Manager, or any agent, employee or counsel on his behalf to or from Snyder or any agent, employee, staff member, servant or attorney on his behalf regarding the possible appointment of Kevin Orr as Emergency Manager of the City of Detroit and prior to such appointment.

**REQUEST NO. 18:** Please provide for inspection and copying any and all documents, including internal memoranda prepared by Snyder, Dillon or Schuette, their employees, agents, staff, servants and attorneys regarding possible alternatives to a Chapter 9 filing prior to the filing of the Petition in this matter.

21. Requests No. 1, 2, 3 and 4 request copies of communication in the custody and/or possession of the State between the Emergency Manager and the State regarding the filing of the Chapter 9 Petition; which directly relate to the factual issues identified in paragraphs 8, 9, 10 and 12 of the August 26 Order.

22. Request No. 7 requests copies of documents in the custody and/or possession of the State regarding the timing of the filing of the Chapter 9 Petition in this matter, which directly relate to the factual issues identified in paragraphs 8, 9, 10 and 12 of the August 26 Order..

23. Requests No. 8 and 18 request copies of documents in the custody and/or possession of the State regarding the alternatives to filing a Chapter 9 Petition that were considered, which directly relate to the factual issues identified in paragraphs 8, 9, 10 and 12 of the August 26 Order.

24. Request No. 9 requests copies of documents between the State and the Emergency Manager regarding his appointment, which directly relate to the factual issues identified in paragraphs 8, 9, 10 and 12 of the August 26 Order.

25. The State has objected to Requests 1, 2, 3 and 9 on the grounds that these requests should are beyond the scope of discovery.

26. The State has objected to Requests 7, 8, and 18 on the grounds that they are irrelevant and outside the scope of the August 26 Order.

27. The filing of a Chapter 9 Petition is clearly a matter of public concern. Therefore, the scope of discovery in this matter is, and should be, very broad, even in light of limitations in the August 26 Order.

28. The State is clearly involved in the Chapter 9 filing process.

> If, in the judgment of the emergency manager, no reasonable alternative to rectifying the financial emergency of the local government which is in receivership exists, then the emergency manager may recommend to the governor and the state treasurer that the local government be authorized to proceed under chapter 9. **If the governor approves of the recommendation**, the governor shall inform the state treasurer and the emergency manager in writing of the decision, with a copy to the superintendent of public instruction if the local government is a school district. The governor may place contingencies on a local government in order to proceed under chapter 9. Upon receipt of the written approval, the emergency manager is authorized to proceed under chapter 9. This section empowers the local government for which an emergency manager has been appointed to become a debtor under title 11 of the United States Code, 11 USC 101 to 1532, as required by section 109 of title 11 of the United States Code, 11 USC 109, and empowers the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9.

M.C.L § 141.1558 (emphasis added).

29. Consequently, the information in the custody of the Governor, his agents and employees, is directly related to the factual issues in this matter, including the good faith filing requirement of Section 921(c) of the Bankruptcy Code. The communication between the emergency manager prior to his appointment, the expectations of the State upon his appointment, and the communication and information provided to the State after his appointment, but prior to the filing are directly relevant to the genuine issues of fact.

30. The relevance standard for discovery is also very broad. The RDPMA need merely establish that the documents requested have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid.401.

31. Certainly, the communication between the State and the Emergency Manager, the State's internal determinations regarding the need for a Chapter 9 filing by the City and the documents and communication regarding alternatives to the filing, a requirement for a good faith filing under Section 921(c), are relevant to the factual issues in this matter and within the scope of discovery, even under the August 26 Order.

**The State has Failed to Meet its Burden of Proof**

32. The burden of proof to quash the discovery or for the entry of a protective order squarely rests with the State.

33. The State has merely provided conclusory statements that the discovery requested by the RDPMA will be burdensome.

34. The State has not provided any affidavit or supporting evidence regarding the specific cost or burden producing the requested documents will require, nor has it identified any injury it will suffer if the requested discovery is enforced.

35. In light of the August 26 Order, the RDPMA has narrowed it document requests. The documents requested are reasonable and relevant in light of the factual issues set forth in the August 26 Order.

**WHEREFORE**, the RDPMA requests that this Honorable Court deny the State's Motion and compel the State to produce the documents requested in the Amended Request For Production of Documents Directed to the State of Michigan Attached as **Exhibit A**, and grant such further and additional relief as deemed appropriate..

Respectfully Submitted,

**STROBL & SHARP, P.C.**

    /s/    *Lynn M. Brimer*
LYNN M. BRIMER (P43291)
MEREDITH E. TAUNT (P69698)
MALLORY A. FIELD (75289)
Attorneys for the Retired Detroit
Police Members Association
300 East Long Lake Road, Suite 200
Bloomfield Hills, MI 48304-2376
Telephone: (248) 540-2300
Facsimile: (248) 645-2690
E-mail: lbrimer@stroblpc.com
E-mail: mtaunt@stroblpc.com

Dated: September 9, 2013
*S&B\85244\001\PLDG\SB424893.DOCX