--------------------------------------------------------

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

-------------------------------------------------------

### MOTION OF CREDITOR DEBORAH RYAN, AN INTERESTED PARTY, FOR RELIEF FROM THIS COURT'S ORDER STAYING PROCEEDINGS

NOW COMES DEBORAH RYAN, as Personal Representative of the Estate of Patricia "Katie" Williams, an interested party who is engaged in pending litigation against the City of Detroit and individual employees and/or agents of Detroit, *see Ryan v. City of Detroit, et al.*, No. 11-CV-10900 (E.D. Mich.), by and through her counsel, Goodman & Hurwitz, P.C. She asks that this Court enter an *Order Granting Relief from the Stay,* or otherwise modifying its *Order Pursuant to Section 105(a) of the Bankruptcy Code Confirming the Protections of Sections 362, 365 and 922 of the Bankruptcy Code* (hereinafter "*Order Staying Proceedings*") **[Doc. #167]** to exclude her case from the terms of the Stay, or in the alternative to modify the Stay in order to permit the District Court to adjudicate all pending and dispositive motions in the aforementioned case. This *Motion* is brought under

Sections 105(a) and 362(d) of the Bankruptcy Code Section 901(a)).  In support of her *Motion,* Ms. Ryan states as follows:

1. On September 22, 2009, Deborah Ryan's daughter, decedent Patricia ("Katie") Williams, was murdered by her husband Edward Williams, who then turned his gun on himself and committed suicide.. Both were Detroit police officers residing in the City of Canton, Michigan. Patricia left behind a 9 year old son and a devastated family.

2. On March 11, 2011, Deborah Ryan, as Personal Representative of the Estate of Patricia "Katie" Williams, brought an action against the Debtor City of Detroit, Detroit Police Sergeant Barbara Kozloff and Detroit Police Inspector Dwayne Blackmon (collectively, "the Detroit Defendants") under the Civil Rights Act of 1871, 42 U.S.C. §1983; and, on September 5, 2012, Ms. Ryan amended her complaint to include the City of Canton and two individual Canton Police officers (collectively, "the Canton Defendants"), also under 42 U.S.C. §1983. [*Deborah Ryan v. City of Detroit, et al.*, Case No. 11-CV-10900], (hereafter "the *Ryan* case").

3. As such, in her capacity as a Plaintiff in her claim against the City of Detroit and the individual Detroit Defendants, Ms. Ryan is a "creditor" within the meaning of the Bankruptcy Code.

4. The complex factual circumstances leading to this tragedy are as

2

13-53846-tjt    Doc 800    Filed 09/10/13    Entered 09/10/13 17:37:12    Page 2 of 13

follows:

    a. On Sunday morning, September 20, 2009, the Canton Police Department and its individual officers, Falk and Schultz became aware that Detroit Police Officer Ed Williams had assaulted his wife Patricia (aka "Katie"), also a Detroit Police Officer, (they actually saw and photographed her facial injuries), in their marital home.

    b. Also on that morning, Ed Williams wrote a suicide note and left it in the marital home, which was on that day obtained by the Canton Police Department and its officers (hereafter "Canton Defendants") and the contents were immediately communicated to the Detroit Police Department, (hereafter "Detroit Defendant") including Sgt. Barbara Kozloff and Insp. Dwayne Blackmon (hereafter "Detroit individual Defendants").

    c. The Canton officers did nothing to arrest or charge Ed Williams with a crime or detain him in any way -- although they would have done both had he not been a police officer – rather, they issued a "missing/endangered" LEIN notification and turned the problem over to the Detroit individual Defendants to make the exclusive determination whether Ed Williams was dangerous to himself or others. Notably, both Detroit individual Defendants were sued in their individual capacities.

    d. With absolutely no basis or qualifications for so doing the Detroit individual Defendants decided that Ed Williams was "mentally fine" and affirmatively so advised the Canton oficers. Consequently, and in reliance on the Detroit individual Defendants' affirmative representations, the Canton officers dropped the LEIN notice and stopped looking for Ed Williams.

    e. Had the Detroit individual Defendants not affirmatively and proactively sought to have canton drop the LEIN notice, the Canton officers would have tracked Ed Williams down and either had him arrested or alternatively "kick(ed) him into psychiatric."

    f. Instead, all notices were dropped by the end of the day on September 20, 2009. On the morning of September 22, 2009,

3

after stalking Katie Williams over the previous two days, Ed Williams shot and killed Ms. Williams in the Canton Police Department parking lot, where he then turned the gun on himself and committed suicide.

    g. All of the aforementioned actions of the Detroit Defendants were taken pursuant to a Detroit unwritten policy, later identified by the City of Detroit itself, to wit: Despite the fact that the Detroit Police Department suffers from the "highest national rate of suicide amongst police officers and has endured an appalling number of suicides," there is no policy in place to guide DPD supervisors as " to officers with duty-related or non-duty-related mental stress **.**"

5. Thus, both the Detroit Defendants and the City of Canton Defendants proximately caused and/or contributed to Katie Williams' death, to wit:

    a. The Detroit Defendants took several affirmative acts that prevented Ed Williams, a known dangerous man, from being arrested, detained or even evaluated by a psychiatrist. Through these affirmative acts, these Detroit Defendants allowed him, as well, to remain armed. These acts culpably and significantly increased the risk and the danger of serious injury and death to Katie Williams and constituted both a "state created danger" and a violation of the Due Process clause of the Fourteenth Amendment; and

    b. The Canton Defendants failed, without any rational basis, to provide Katie Williams with equal protection, in that they failed to enforce the law as they would have if her domestic abuser had not been a police officer.

6. This case thus involves a highly complex area of substantive federal constitutional law, specifically the right to substantive due, as secured by the Fourteenth Amendment. The theory of liability at issue in this case, "state-created danger," is a highly nuanced doctrine that is not frequently litigated. As

4

such, the parties and the District Court have undertaken significant efforts to elucidate and grapple with this area of the law through a series of dispositive motions and opinions. At this point in the case, after nearly two years of litigation, the presiding Court has become quite familiar with both the heavily detailed facts and the case law at issue as it relates to those facts.

7. Discovery has now been completed in the *Ryan* case, a process that has involved an enormous amount of work, to wit:

   a. A total of twenty-nine (29) separate depositions, often very lengthy;

   b. Several motions, filed by the Plaintiff, to compel discovery and for sanctions;

   c. The court ordered production and inspection of tens of thousands of documents; and

   d. Substantial additional written discovery, e.g. ten (10) separate Requests for Production.

8. On or about June 4, 2013, the Canton Defendants filed a dispositive *Motion for Summary Judgment* pursuant to Federal Rule of Civil Procedure 56(c). This matter was fully briefed, (*See Ryan* case, Docs. # 93, #107, #109), and on July 18, 2013 was argued before the presiding United States District Court, Honorable Judge Mark Goldsmith. The parties await a ruling on that motion from the District Court.

9. In addition, on or about July 15, 2013—just three days before the Debtor City of Detroit commenced the instant filing under Chapter 9 of the United

States Bankruptcy Code—the Detroit Defendants filed their *Motion for Summary Judgment* in the *Ryan* case. *See* Detroit Defs' Mot. Summ. J. (*Ryan* case, Doc. #111). This matter was originally scheduled for a hearing on September 12, 2013. (*See* Notice of Hearing, *Ryan* case, Doc. #112)

10. Under these circumstances, the bankruptcy principles of judicial economy strongly apply to the *Ryan* case insofar as the liquidation of the Creditor Ms. Ryan's claim may be more conveniently and speedily determined in the forum in which it has originally been pending since 2011. (*See, e.g.*, *In re Robbins*, 964 F.2d 342, 344 (4th Cir. 1992); *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985); *see also* 2 Collier on Bankruptcy ¶ 362.07[3] (15th ed. 1991)).

11. However, on July 18, 2013, before the Creditor Ms. Ryan could file her *Response* to the Detroit Defendants' *Motion for Summary Judgment*, the City of Detroit commenced the instant filing under Chapter 9 of the Bankruptcy Code, and on July 23, 2013, the Detroit Defendants filed a *Notice of Pendency of Bankruptcy and Application for Automatic Stay* ("the Notice") in the *Ryan* case. (*See* Notice, *Ryan* case, Doc. #113). This Notice asserted that "the City will not defend against, or take any other action with respect to the above-captioned proceeding" "without the Bankruptcy Court first issuing an order lifting or modifying the Stay for such specific purpose." *Id.* at 3, 2 (Pg ID 2655, 2654).

12. On July 25, 2013, this Court entered two Orders that imposed a

6

Chapter 9 stay on all "judicial, administrative or other proceeding against the City," including any "officer or inhabitant of the City . . . that seeks to enforce a claim against the City" and "the Non-Officer Employees and the City Agents and Representatives."  See *Order Pursuant to Section 105(a) of the Bankruptcy Code Confirming the Protections of Sections 362, 365 and 922 of the Bankruptcy Code* (Doc. #167); and, *Order Pursuant to Section 105(a) of the Bankruptcy Code Extending the Chapter 9 Stay to Certain (A) State Entities and (B) Non Officer Employees and (C)Agents and Representatives of the Debtor* (Doc. #166).

13. In its *Order Extending the Chapter 9 Stay*, this Court expressly acknowledged "the right of any creditor to file a motion for relief from the stay imposed by this order using the procedures of and under the standards of 11 U.S.C. § 362(d)-(g)." (Doc. #166, ¶ 4).

14. Following the entry of the *Order Extending the Chapter 9 Stay*, the District Court in the *Ryan* case entered a similar order staying the underlying matter as to the Detroit Defendants only. *See Order Staying Case as to Defendants City of Detroit, Blackmon and Kozloff Only,* (*Ryan* case, Doc. #115). The District Court appropriately refused to stay any proceedings as against the Canton Defendants. In that same *Order*, the District Court further indicated that "if . . . a party obtains relief from the stay, then proceedings may be resumed as to claims" brought against the Detroit Defendants. *Id.*

## The Stay Violates the Fourteenth and Fifth Amendments

15. The primary basis for seeking obtain relief from the stay for the *Ryan* case is that the Bankruptcy Court's Orders (Doc. #166 & 167) clash with and infringe upon Ms. Ryan's Fourteenth Amendment rights, specifically the Civil Rights Act of 1871, 42 U.S.C. § 1983. This Act, which was enacted to enforce the Fourteenth Amendment to the U.S. Constitution and specifically authorized by that Amendment, provides that when a person acting under color of law violates the constitutional rights of "any citizen," they "shall be liable to the party injured" for full and complete damages.

16. To diminish this clearly established right to liability for injuries wrought as a result of constitutional violations by state actors—including the Detroit Defendants—is in direct conflict with the Civil Rights Act and, therefore, thus also with the Fourteenth Amendment, its historic constitutional progenitor. The stay herein thus undermines and weakens the power of Congress "to enforce, by appropriate legislation, the provisions" of that Amendment, not the least of which includes the fundamental right to due process. *See* U.S. Const. amend. XIV, § 5.

17. As merely one example of the way in which this stay violates Ms. Ryan's right to due process, the Assistant Corporation Counsel for the City of Detroit has advised Plaintiff's counsel that he cannot assure that, if subpoenaed to

testify in the case against the Canton Defendants, the Detroit police officers - who are critical witnesses - will honor the subpoena and appear to testify. [See Exhibit 5, Affidavit of William Goodman] This reluctance is based upon the breadth and sweep of the stay of proceedings imposed by this Court.

18. In addition to the aforementioned violations of the Fourteenth Amendment, the stay also violates the Due Process Clause of the Fifth Amendment by denying both substantive and procedural due process to the underlying Plaintiff.

19. Specifically, with respect to the § 1983 lawsuits against the individual Detroit Defendants, Sgt. Kozloff and Insp. Blackmon, this Court is not explicitly authorized to provide bankruptcy protection to these persons because they are being sued in their "individual" capacities. Thus, the Order Extending the Chapter 9 Stay (Doc. 166) violates Ms. Ryan's Fifth and Fourteenth Amendment due process rights, to the extent that it stays any action against these officers.

**The Stay is an Unreasonable Violation of Principles of Judicial Economy**

20. In addition to the principles of judicial economy set forth above, at Paragraphs 7-10 of this *Motion,* prior to the entry of the District Court *Order Staying Case,* (*Ryan* case, Doc. #115), the Detroit Defendants' filing of a summary judgment motion and the court's scheduling of a hearing date had set the case up for an important and critical stage of intermediate resolution concerning the core constitutional issues in the case.

21. This stage represented the culmination of an enormous amount of work by the parties, and the critical resolution of these efforts has been needlessly—since any further resolution involves minimal cost to the Detroit Defendants—forestalled, prolonged, and delayed as a result of the Chapter 9 filing in the present case. *See In re Wilson*, 85 B.R. 722, 728 (Bankr. E.D. Pa. 1988) (citing *Matter of Holtkamp*, 669 F.2d 505, 509 (7th Cir. 1982)); *see also In re Castlerock Props.*, 781 F.2d 159, 163 (9th Cir. 1986); *In re Olmstead*, 608 F.2d 1365, 1368 (10th Cir. 1979); *In re Borbridge*, 81 B.R. 332, 335 (Bankr. E.D. Pa. 1988); *In re Philadelphia Athletic Club*, 9 B.R. 280, 282 (Bankr. E.D. Pa. 1981).

22. Additionally, given the fact that the Debtor City of Detroit's bankruptcy petition was filed after the close of discovery in the *Ryan* case and essentially on the eve of the adjudication of various summary judgment motions, granting relief from the stay would best promote judicial economy since the District Court has spent over two years familiarizing itself with the nuanced, overlapping facts and the complex constitutional doctrines at issue in this case.

23. Furthermore, to separate one group of Defendants from the other and thereby force the Creditor Ms. Ryan to sever her claims between the two sets of defendants presents the risk that there will be an incomplete presentation of the case in such a way as to preclude a jury from fully adjudicating the claims and providing all parties with a just result.

24. This concern is particularly prevalent in the *Ryan* case, because the actions taken by the two groups of Defendants were often simultaneous, overlapping, and dependent on the actions of the other group of Defendants.

25. For example, the following course of events ultimately resulted in and contributed to Katie Williams's murder:

   a. The Canton Defendants called the Detroit Defendants and asked them to interview Ed Williams to determine whether he was "mentally stable." The Detroit Defendants claim that they, in turn, asked the Canton Defendants whether they believed there was probable cause to proceed against Ed Williams with criminal charges and whether they should hold him in custody. They further claim that the Canton Defendants denied that there was probable cause to arrest Ed and that the Detroit Defendants should not detain him.

   b. The Canton Defendants strenuously deny that they said that there was no probable cause to arrest Ed Williams or that the Detroit Defendants should not detain him. Instead, they affirmatively admit that, as of the time that he was interviewed by Defendant Kozloff, there was indeed probable cause to arrest Ed. They further deny that Detroit ever even inquired as to whether Ed Williams should be detained.

26. A full exposition through the adversarial process of the facts and accusations between these two groups of defendants in the *Ryan* case would provide the proper perspective and resonance for a jury to disentangle the truth and, thereby to make a just determination.

27. The Stay of Proceedings instead requires that the case against the Detroit Defendants and the case against the Canton Defendants will have to be

addressed separately and in proceedings that will require duplicative testimony and evidence from the very same witnesses. Such duplication of evidence, witnesses, and judicial resources will result in a flagrant violation of entrenched and respected principles of judicial economy.

28. As required by L.B.R. 9104-1(g), Deborah Ryan has sought concurrence in this Motion from counsel for the Debtor, City of Detroit, on September 4, 2013 and September 9, 2013 and has failed to obtain the same. As the attempt to obtain concurrence specifically advises that failure to respond will be interpreted as a denial, Deborah Ryan hereby states that she had complied with the above cited Local Rule.

**WHEREFORE,** for the reasons stated above and in the attached *Brief in Support*, in the interests of justice and so as to comply with the mandates of the United States Constitution, the Plaintiff requests that this Court provide the following relief:

A. Determine that, insofar as any stay of proceedings issued in this matter may affect the Petitioner's case, it is in conflict with the Fifth and Fourteenth Amendments of the United States Constitutions and 42 U.S.C. § 1983;

B. Determine that, insofar as any stay of proceedings issued in this matter may affect the Petitioner's case, it is in conflict with sound principles of judicial economy; and

C. Issue an Order:

1. Setting aside any Stay of Proceedings as it may apply to the Petitioner's specific case against Defendants CITY OF DETROIT, BARBARA KOZLOFF and DWAYNE BLACKMON; and/or

2. Modifying any Stay of Proceedings, as it may apply to the Petitioner's specific case against Defendants CITY OF DETROIT, BARBARA KOZLOFF, and DWAYNE BLACKMON, so that the United States District Court may adjudicate the pending Motion for Summary Judgment that has been filed by Defendants CITY OF DETROIT, KOZLOFF, and BLACKMON.

Respectfully submitted,

*s/William H. Goodman*
William H. Goodman
Goodman & Hurwitz, P.C.
*Attorneys for Plaintiff*
1394 E. Jefferson Ave.
Detroit, MI 48207
313-567-6170
bgoodman@goodmanhurwitz.com
P14173

Dated: September 10, 2013