EXHIBIT 3

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

--------------------------------------------------------

In re                                        Chapter 9

CITY OF DETROIT, MICHIGAN,                    Case No. 13-53846

              Debtor.              Hon. Steven W. Rhodes

------------------------------------------------------

## BRIEF IN SUPPORT OF MOTION OF CREDITOR DEBORAH RYAN, AN INTERESTED PARTY, FOR RELIEF FROM THIS COURT'S ORDER STAYING PROCEEDINGS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION ........................................................................1

STATEMENT OF FACTS ................................................................2

STANDARD OF REVIEW ...............................................................8

ARGUMENT ..........................................................................10

   I.    Deborah Ryan is entitled to have the stay of proceedings set aside because the stay violates her federal constitutional rights as secured by the Fifth and Fourteenth Amendments to the United States Constitution ...........................................................10

   II.   The Stay is Improper as it regards the individual Detroit Defendants because the individual Defendants are not "officials" of the Debtor.......16

   III.  Ms. Ryan can demonstrate cause to have the stay set aside as a violation of longstanding principles of judicial economy ........................17

CONCLUSION ........................................................................18

# TABLE OF AUTHORITIES

## CASES

*Accord Felder v. Casey*, 487 U.S. 131 (1988)..................................................12, 13

*Burnett v. Grattan*, 468 U.S. 42 (1984) ................................................................12

*Capital Commc'ns Fed. Credit Union v. Boodrow*, 197 B.R. 409
   (N.D.N.Y. 1996) ...............................................................................................15

*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*,
   912 F.2d 1162 (9th Cir. 1990) ............................................................................9

*Coleman v. Ann Arbor Transp. Auth.*, 904 F. Supp. 2d 670 (E.D. Mich. 2012) .....10

*In re Atl. Ambulance Assocs., Inc.*, 166 B.R. 613 (Bankr. E.D. Va. 1994) .............15

*In re Boodrow*, 126 F.3d 43 (2d Cir. 1997) ............................................................15

*In re Borbridge*, 81 B.R. 332 (Bankr. E.D. Pa. 1988) ............................................18

*In re Castlerock Props.*, 781 F.2d 159 (9th Cir. 1986)............................................17

*In re MacDonald*, 755 F.2d 715 (9th Cir. 1985)......................................................17

*In re Olmstead*, 608 F.2d 1365 (10th Cir. 1979) ....................................................17

*In re Philadelphia Athletic Club*, 9 B.R. 280 (Bankr. E.D. Pa. 1981).....................18

*In re Robbins*, 964 F.2d 342 (4th Cir. 1992)...........................................................17

*In re Wilson*, 85 B.R. 722 (Bankr. E.D. Pa. 1988) ..................................................17

*Jaco v. Bloechle*, 739 F.2d 239 (6th Cir. 1984)......................................................12

*Kallstrom v. City of Columbus*, 136 F.3rd 1955 (6th Cir. 1988) ................................3

*Matter of Holtkamp*, 669 F.2d 505 (7th Cir. 1982) ...................................................17

*Mitchum v. Foster*, 407 U.S. 225 (1972) ...............................................................2, 12

*New York v. Ferber*, 458 U.S. 747 (1982) .................................................................15

*Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496 (1981)..................................12

*Perez v. Campbell*, 402 U.S. 637 (1971) ............................................................13, 14

*Pursifull v. Eakin*, 814 F.2d 1501 (10th Cir. 1987) ...................................................9

*Ryan v. City of Detroit, et al.*, No. 11-10900 (E.D. Mich.) .............................*passim*

*Sumitomo Trust & Banking Co., Ltd. v. Holly's, Inc. (In re Holly's, Inc.)*,
    140 B.R. 643 (Bankr. W.D. Mich. 1992)..............................................................9

*V.W. ex rel. Barber v. City of Vallejo*, No. 12-1629, 2013 WL 3992403
    (E.D. Cal. Aug. 2, 2013) ...............................................................................14, 16

*Women's Med. Prof'l Corp. v. Voinovich,* 130 F.3d 187 (6th Cir. 1997) ...............11

## BOOKS

2 Collier on Bankruptcy ¶ 362.07[3] (15th ed. 1991)...............................................17

## STATUTES

11 U.S.C. § 362(d)-(g) ........................................................................................7, 8, 9

17 Stat. 13 (1871)...........................................................................................................1

28 U.S.C. § 1343(3) .....................................................................................................12

42 U.S.C. § 1983 .........................................................................................1, 11, 12, 18

***CONSTITUTIONS***

U.S. Const. amend. VII ............................................................................12

***OTHER***

S. Rep. No. 989, 95th Cong., 2d Sess. 50, *reprinted in* 1978 U.S. Code Cong. &
    Admin. News 5780, 5836 ...................................................................9

# INTRODUCTION

When Congress adopted the Fourteenth Amendment in 1868, it made sure that the promise of that blood soaked Civil War Amendment—freedom from violations of due process and equal protection by public officials—would be fulfilled by appropriate legislation. Thus, in 1871, the United States Congress first enacted Section 1 of the Klu Klux Klan Act, which is specifically entitled, "An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other purposes," 17 Stat. 13 (1871), pursuant to Section 5 of the Fourteenth Amendment and with the express intent to provide for the enforcement of that Amendment.

As early as 1874, Congress enacted an early core version of the Civil Rights Act, 42 U.S.C. § 1983. The Supreme Court has broadly described the primary purpose of § 1983 as follows:

> As a result of the new structure of law that emerged in the post-Civil War era—and especially of the Fourteenth Amendment, which was its centerpiece—the role of the Federal Government as the guarantor of basic federal rights against state power was clearly established. Section 1983 opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation . . . .

> The very purpose of section 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law . . . .

1

*Mitchum v. Foster*, 407 U.S. 225, 238-39, 242 (1972). Thus, for almost one hundred fifty years, the right of our citizens to enforce their rights under the U.S. Constitution in a United States District Court has been a bulwark of the democratic principles that inspire the world. Weakening, diluting or eliminating those rights should not be undertaken lightly.

The facts of the underlying case, at issue in this Motion, arise from the violation of the Constitution by two separate municipalities and their respective police officers, which culminated in the tragic and needless death of a young police officer in the prime of her life. The current stay of proceedings, effectuated by the Chapter 9 Bankruptcy Petition filed by the City of Detroit's Emergency Manager, has further violated the rights of this young woman's estate to enforce the Constitution as it applied to her and to those responsible for her death. This cannot be permitted.

## STATEMENT OF FACTS

This Motion involves an underlying case that has been pending before the U.S. District Court for the Eastern District of Michigan since March 2011. In this underlying case, Plaintiff Deborah Ryan, as Personal Representative of the Estate of Patricia "Katie" Williams, alleges that her daughter, Katie, was murdered by Edward Williams, Katie's husband, who then turned the gun on himself and

2

committed suicide. *See* Exh. 6, DPD Force Investigation Report at 3. Both Katie and Ed were police officers with the Detroit Police Department (DPD).

Ms. Ryan has sued the City of Detroit, DPD Sergeant Barbara Kozloff, DPD Inspector Dwayne Blackmon (collectively, "the Detroit Defendants), the City of Canton, Canton Police Department (CPD) Lieutenant Mark Schultz, and CPD Officer Adam Falk (collectively, "the Canton Defendants"). In her complaint, she alleges that the two groupings of Defendants, both separately and mutually, contributed to and/or caused her daughter's death.

Specifically, she alleges that the Detroit Defendants took several affirmative acts that prevented Ed Williams, a very dangerous man, from being arrested, detained, and then evaluated by psychiatric professionals. By taking these affirmative acts, the Detroit Defendants also permitted Ed to remain armed. The Detroit Defendants undertook these acts despite their knowledge that Ed Williams had assaulted Katie Williams during the preceding weekend and had left a suicide note at their marital home earlier that morning. These acts culpably, palpably and significantly increased the risk and the danger of serious injury and death to Katie Williams. By affirmatively acting so as to increase the risk to Katie, the actions of the Detroit Defendants thus constituted a "state created danger" and a violation of Katie's federal constitutional due process rights see *Kallstrom v. City of Columbus*, 136 F.3rd 1955 (6th Cir. 1988). Ms. Ryan also alleges that the Canton Defendants

denied Katie the equal protection of the laws, without any rational basis, due to the fact that her assailant was a police officer.

The facts establishing liability against these two groups of Defendants are, at times, heavily entangled and difficult to separate. One instance, for example, clearly illustrates the enmeshed nature of the events at issue in this case: After Ed's drew his gun in Katie's presence, Canton officers learned Katie's and Ed's identities and status as DPD officers. They also discovered the suicide note left by Ed that morning before he fled the scene, armed and intoxicated. The Canton Defendants made no efforts to arrest or detain Ed Williams, despite their knowledge about his mental state and participation in the crime of domestic violence; instead, they entered a notice in the Law Enforcement Information Network (LEIN) listing Ed as "missing/endangered."

After filing this notice, the Canton Defendants contacted the Detroit Defendants. At this point there is much finger-pointing amongst the various Defendants in that case. The Detroit Defendants assert that the Canton Defendants told them that no probable cause existed to arrest or detain Ed and declined the Detroit Defendants' offer to detain Ed. The Canton Defendants deny that they ever told the Detroit Defendants that probable cause did not exist and deny that the Detroit Defendants ever offered to detain Ed. Nonetheless, the Canton Defendants turned the matter over to the Detroit Defendants to make the exclusive

4

determination of whether Ed was a danger to himself or others. The Detroit Defendants concluded, without basis or qualifications for so doing, that Ed was "mentally fine" and advised the Canton Defendants of their conclusion.

As a result and in reliance on these representations, the Canton Defendants dropped the LEIN notice and stopped pursuing Ed entirely. The Canton Defendants claim they would have tracked Ed down and would have either arrested him or had him admitted into a psychiatric facility had the Detroit Defendants not affirmatively represented that he was fine." After stalking and harassing Katie continuously for two days, Ed killed her and then himself.

At a minimum, these contrasting and overlapping accounts necessitate resolution in a single venue; these accounts may well set forth a series of related, interdependent, and interconnected actions by both groups of Defendants that constitute a single and unitary pattern of deliberate indifference to Katie Williams's constitutional rights by two municipal entities, acting in response to and coordination with one another.

These issues recently came to a head when the two groups of Defendants separately filed Motions for Summary Judgment. The Canton Defendants' Motion was filed in early June 2013 and oral argument occurred on July 18, 2013, followed by extensive briefing on both sides. *See* Canton Defs' Mot. Summ. J. (Doc. #93), *Ryan v. City of Detroit, et al.*, No. 11-10900 (E.D. Mich. Jun. 4, 2013);

5

13-53846-tjt    Doc 800-4    Filed 09/10/13    Entered 09/10/13 17:37:12    Page 9 of 23

Plaintiff's Response, (Doc. #106), *Ryan v. City of Detroit, et al.*, No. 11-10900 (E.D. Mich. Jun. 4, 2013). This matter is presently under advisement and awaiting resolution by the District Court.

The Detroit Defendants filed their Motion for Summary Judgment on July 15, 2013, just three days before the Debtor City of Detroit commenced the instant case under Chapter 9 of the U.S. Bankruptcy Code. *See* Detroit Defs' Mot. Summ. J. (Doc. #111), *Ryan v. City of Detroit, et al.*, No. 11-10900 (E.D. Mich. Jul. 15, 2013). The City then filed the present Bankruptcy petition before Ms. Ryan could even file a Response to the Detroit Defendants' Motion.

Following receipt of the Bankruptcy petition, this Court entered two Orders officially imposing a stay on all matters against the City of Detroit and its officers, agents, and inhabitants, to the extent that any such matters sought to enforce claims against the City or its agents. *See* Order Pursuant to Section 105(a) of the Bankruptcy Code Confirming the Protections of Sections 362, 365 and 922 of the Bankruptcy Code (Doc. #167), *In re City of Detroit, Mich.*, No. 13-53846; Order Pursuant to Section 105(a) of the Bankruptcy Code Extending the Chapter 9 Stay to Certain (A) State Entities and (B) Non Officer Employees and (C)Agents and Representatives of the Debtor (hereinafter "Order Extending the Chapter 9 Stay") (Doc. #166), *In re City of Detroit, Mich.*, No. 13-53846. These Orders, however, acknowledged "the right of any creditor to file a motion for relief from the stay

6

imposed by this order using the procedures of and under the standards of 11 U.S.C. § 362(d)-(g)." Order Extending the Chapter 9 Stay (Doc. #166), ¶ 4.

The Detroit Defendants filed a Notice of Pendency of Bankruptcy and Application for Automatic Stay ("the Notice") in the underlying matter. *See* Notice (Doc. #113), *Ryan v. City of Detroit, et al.*, No. 11-10900 (E.D. Mich.). This Notice asserted that "the City will not defend against, or take any other action with respect to the above-captioned proceeding" "without the Bankruptcy Court first issuing an order lifting or modifying the Stay for such specific purpose." *Id.* at 3, 2 (Pg ID 2655, 2654).

The District Court then entered an order staying the underlying matter as to the Detroit Defendants only. *See* Order Staying Case as to Defendants City of Detroit, Blackmon and Kozloff Only (Doc. #115), *Ryan v. City of Detroit, et al.*, No. 11-10900 (E.D. Mich.). The District Court appropriately refused to stay any proceedings against the Canton Defendants. However, in that same Order, the District Court further indicated that "if . . . a party obtains relief from the stay, then proceedings may be resumed as to the claims" brought against the Detroit Defendants. *Id.*

Prior to the entry of this stay, the parties had expended a prodigious amount of effort completing discovery in the underlying matter, which included 29 depositions, several motions to compel discovery and for sanctions against the

7

Defendants, court-ordered production and inspection of tens of thousands of documents, and at least ten separate Requests for Production by the Plaintiff. The underlying matter has now reached an important stage of intermediate resolution concerning the core constitutional issues at play, but the critical resolution of these efforts has been needlessly and entirely forestalled, prolonged, and delayed as a result of the Chapter 9 filing in the present case.

As a result, Ms. Ryan now asks the Court to modify the stay vis-à-vis her case against the Detroit Defendants to a full resolution of her commingled and overlapping claims against the two groups of Defendants (or, at a minimum, to allow the District Court to resolve the pending dispositive motions, which would impose minimal cost on the Debtors).

## STANDARD OF REVIEW

When a bankruptcy petition is filed, most judicial actions against the debtor that were commenced before the filing of the petition are automatically stayed during the pendency of the bankruptcy petition. 11 U.S.C. § 362(a)(1). However, this automatic stay provision was not intended to immutably relegate creditors to a world of limbo or to the resolution of the civil claims within the limitations of a bankruptcy proceeding. Instead, as Congress recognized when enacting the automatic stay provision,

> it will often be more appropriate to permit proceedings to continue
> in their place of origin, when no great prejudice to the bankruptcy

8

estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

S. Rep. No. 989, 95th Cong., 2d Sess. 50, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5780, 5836.

Recognizing that some actions are better suited to resolution outside the bankruptcy forum, Congress specifically granted—in the same provision establishing the automatic stay—full discretion to the bankruptcy court to lift the stay and allow litigation to go forward in another forum. Section § 362(d) of the Bankruptcy Code provides:

On request of a party in interest and after notice and a hearing, the court shall *grant relief from the stay* provided under [§ 362(a)], such as by terminating, annulling, modifying, or conditioning such stay—(1) *for cause,* including the lack of adequate protection of an interest in property of such party in interest . . . .

11 U.S.C. § 362(d)(1) (emphasis added).

To determine whether sufficient cause exists to grant relief from the stay in a non-bankruptcy forum, the bankruptcy court must scrutinize the factual circumstances of the case before it. *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990); *Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987); *Sumitomo Trust & Banking Co., Ltd. v. Holly's, Inc. (In re Holly's, Inc.)*, 140 B.R. 643, 687 (Bankr. W.D. Mich. 1992).

9

## ARGUMENT

Petitioner Deborah Ryan asserts several bases on which the stay of her case against the Debtor City of Detroit should be set aside. First, the automatic stay provision of Chapter 9 of the Bankruptcy Code as applied to her case is unconstitutional in that the stay violates her federal constitutional rights. Second, the individual Detroit Defendants are not covered by the stay, as they are not "officials" of the Debtor City of Detroit and are individually liable for the constitutional violations that occurred to Katie Williams. Finally, Ms. Ryan can demonstrate cause to set aside the stay vis-à-vis her particular case given the factual and legal complexity and intertwinement of the underlying claims, the fact that the bankruptcy petition was filed on the eve of resolution of pending matters, and the fact that granting relief from the stay would best promote judicial efficiency since the District Court has spent over two years familiarizing itself with the nuanced facts and the complex constitutional doctrines at issue in this case.

I. **Deborah Ryan is entitled to have the stay of proceedings set aside because the stay violates her federal constitutional rights as secured by the Fifth and Fourteenth Amendments to the United States Constitution**

A court can hold a statute unconstitutional either because it is facially invalid or unconstitutional as applied in a particular set of circumstances. *See Coleman v. Ann Arbor Transp. Auth.*, 904 F. Supp. 2d 670, 682-83 (E.D. Mich.

10

2012) (citing *Women's Med. Prof'l Corp. v. Voinovich,* 130 F.3d 187, 193 (6th Cir. 1997)).  In an "as applied" challenge, "the plaintiff contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional."  *Women's Med. Prof'l Corp.*, 130 F.3d at 193 (internal citations omitted).

The stay of proceedings as applied to Ms. Ryan's underlying case against the Detroit Defendants, *see* Order Staying Case as to Defendants City of Detroit, Blackmon and Kozloff Only (Doc. #115), *Ryan v. City of Detroit, et al.*, No. 11-10900 (E.D. Mich.), violates her rights under the United States Constitution and the Civil Rights Act, 42 U.S.C. § 1983, to a full remedy for the deprivation of her decedent's constitutional rights.  As such, Ms. Ryan asks the Court to find that the automatic stay provision of the Chapter 9 bankruptcy statute is unconstitutional as applied to her case because the imposition of the stay violates her rights under the Fifth and Fourteenth Amendments.

Section 1983 of Title 42 was enacted under the enforcement power given to Congress by Section 5 of the Fourteenth Amendment and provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Congress enacted § 1983 with the "goal of compensating the

11

injured" and "preventing official illegality." *Jaco v. Bloechle*, 739 F.2d 239, 244 (6th Cir. 1984) (internal quotations omitted).  In doing so, it clearly established the Federal Government as the guarantor of "the basic federal rights of individuals against incursions by state power." *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 503 (1981).

The application of the automatic stay to the *Ryan* case contravenes the very purpose and intent of Congress and the Supreme Court in enacting and enforcing § 1983, to provide a judicial remedy for the violation of one's rights under the Constitution. *Accord Felder v. Casey*, 487 U.S. 131, 148 (1988) (recognizing that civil rights actions "belong in court") (quoting *Burnett v. Grattan*, 468 U.S. 42, 50 (1984); *Mitchum*, 407 U.S. at 242-43 (noting that the enforcement of federal rights is of the highest priority).

Specifically, the stay violates Ms. Ryan's right to due process in that she no longer has an avenue to vindicate the deprivation of her constitutional rights through 42 U.S.C. § 1983.  Ms. Ryan's federal statutory right to vindicate the deprivation of her decedent's constitutional rights includes her right to have the United States District Court and a jury of her peers adjudicate her § 1983 cause of action, as guaranteed by 28 U.S.C. § 1343(3).  *See* U.S. Const. amend. VII (guaranteeing the right to trial by jury); 28 U.S.C. § 1343(3) (providing that "[t]he district courts shall have original jurisdiction of any civil action . . . [t]o redress the

deprivation under color of any State law . . . of any right, privilege or immunity secured by the Constitution of the United States . . . ."). By delaying proceedings in the underlying matter indefinitely, the stay has in essence taken from Ms. Ryan— without any process, let alone adequate process—the opportunity to have the deprivation of her civil rights adjudicated by the district court and a jury of her peers. This stay thus interferes with Ms. Ryan's right to full and timely recovery from the City of Detroit for the violations of her and her decedent's constitutional rights wrought by the customs, policies, and practices of the City that proximately contributed to Katie Williams's death. *See Accord Felder*, 487 U.S. at 148.

In this regard, *Perez v. Campbell*, 402 U.S. 637 (1971), is noteworthy. In that case the Court dealt with the conflict between the Bankruptcy Act and a state 'financial responsibility' motorist statute. In so doing, it found that the conflicts presented by the state statute violated the Supremacy Clause. The Court also noted that the conflict was created, and the state law invalidated by the Supremacy Clause, because the state law undermined the "declared purpose" *id* 654 of the federal Bankruptcy Act. In that case the court held that there was "no reason why the States should have broader power to nullify federal law." *Id* 652.

Here, however, the Supremacy Clause is useless to resolve statutory conflicts with other federal legislation. Conversely and ironically it is not the federal Bankruptcy Act that is being frustrated and interfered with. Rather, it is the

13

Civil Rights Act that is being undermined - by the exercise of discretion by this Court in staying proceedings in this and other §1983 cases that interferes with the purposes, intent and effectiveness of that statute, the Civil Rights Act. As in *Perez*, in this case there can be "no reason" for the Stay entered by this Court to "nullify federal law" - i.e. the Civil Rights Act of 1871 - in a way that "frustrates" its "full effectiveness." *Id.*

The constitutional conundrum caused by the application of the stay to the underlying case herein is well described in a recent opinion out of the Eastern District of California, *V.W. ex rel. Barber v. City of Vallejo*, No. 12-1629, 2013 WL 3992403 (E.D. Cal. Aug. 2, 2013). In *Vallejo*, the court makes the following highly pertinent observation with regard to the issue of a conflict between the purposes of the Bankruptcy Code and the Civil Rights Act:

> [A]larming as it is, as the bankruptcy statute appears to be written, a municipality may erase its own liability to persons whom it and its officers have willfully and maliciously deprived of their civil rights—and even their lives—by filing for bankruptcy. This extraordinary result would appear to exalt the bankruptcy laws over the civil rights laws (even though the civil rights laws, like the bankruptcy laws, are anchored in the constitution).

*Id.* at 4. In *Vallejo*, however, because neither party actually raised this issue - and indeed the Plaintiff had conceded the jurisdiction of the Bankruptcy Court to discharge her claims - the Court did not decide the merits of this issue. Nonetheless, the *Vallejo* court went out of its way to identify and flag how the

14

Bankruptcy Code, if improperly applied, may well unconstitutionally interfere with rights secured by § 1983 and the Fourteenth Amendment.

Rather than "exalt" the Bankruptcy Code over the Civil Rights Acts, the automatic stay provision of Chapter 9 should be construed so as to be consistent with § 1983, thus avoiding a constitutional conflict. Where a federal statute is overbroad, as is Chapter 9 here, the Court should construe the statute to avoid constitutional problems if the statute is subject to such a limiting construction. *New York v. Ferber*, 458 U.S. 747, 769 (1982).

Here, the automatic stay provision of Chapter 9 can be limited through a grant of relief from the stay, which is within this court's discretion. *In re Atl. Ambulance Assocs., Inc.*, 166 B.R. 613, 615 (Bankr. E.D. Va. 1994) (noting that the bankruptcy "code gives the court a fairly broad discretion to provide appropriate relief from the stay as may fit the facts of the case."); *Capital Commc'ns Fed. Credit Union v. Boodrow*, 197 B.R. 409, 413 (N.D.N.Y. 1996) *aff'd sub nom. In re Boodrow*, 126 F.3d 43 (2d Cir. 1997) ("[A] court has broad discretion to lift the stay in appropriate circumstances." (internal citations omitted)). Deborah Ryan thus asks this Court to modify the Stay as it applies to her case, to allow Chapter 9 to be read consistently with the constitutionally imposed values and principles of § 1983 and, therefore, applied in a constitutional manner.

15

## II. The Stay is Improper as it regards the individual Detroit Defendants because the individual Defendants are not "officials" of the Debtor

As to the two individual defendants in the *Ryan* case, Sgt. Kozloff and Insp. Blackmon, although both are Detroit police officers, neither are "officials" within the meaning of Chapter 9 of the Bankruptcy Code. Notably, both individual Defendants are being sued in their individual capacities and not in their roles as officers of the City of Detroit. Therefore, neither is protected from either litigation or potential liability.

In *V.W. ex rel. Barber v. City of Vallejo*, the court held that individually named defendants could not be discharged by the bankruptcy court nor protected by the provisions (such as stays) of the Bankruptcy Code. 2013 WL 3992403, at *4-7. The court emphasized the fact that indemnification was discretionary and that the individual officers were therefore not automatically entitled to any protection for the municipal bankruptcy. So it is in this case: indemnification and representation are indeed discretionary for employees of the City of Detroit.[1] Debtor City of Detroit has failed to offer any evidence that these two individuals, Kozloff and Blackmon, have been offered or provided indemnification by the City of Detroit. Without this evidence, the Court must presume that the individual

---

[1] "Upon request, the Corporation Counsel *may* represent any officer or employee of the city in any action or proceeding involving official duties."

Defendants are not being indemnified by the Debtor City and thus are not subject to the protections of the Bankruptcy Code, including its automatic stay provision.

Consequently, the Stay of Proceedings should be set aside as to these two individual Defendants.

### III. Ms. Ryan can demonstrate cause to have the stay set aside as a violation of longstanding principles of judicial economy

Finally, there is good cause to set aside the stay vis-à-vis Ms. Ryan's particular case, given the factual and legal complexity of the underlying case and the intertwinement of the underlying claims as between the City of Detroit defendants and the City of Canton defendants.

One important factor in considering a request to lift or modify a bankruptcy stay is whether modifying the stay will promote judicial economy. *See, e.g.*, *In re Robbins*, 964 F.2d 342, 344 (4th Cir. 1992); *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985); *see also* 2 Collier on Bankruptcy ¶ 362.07[3] (15th ed. 1991) (noting that relief may be granted from the automatic stay where "the liquidation of a claim may be more conveniently and speedily determined in another forum"). Another particularly compelling consideration is whether the bankruptcy petition was filed by the debtor "on the eve of the resolution of pending prepetition litigation." *In re Wilson*, 85 B.R. 722, 728 (Bankr. E.D. Pa. 1988) (citing *Matter of Holtkamp*, 669 F.2d 505, 509 (7th Cir. 1982)); *see also In re Castlerock Props.*, 781 F.2d 159, 163 (9th Cir. 1986); *In re Olmstead*, 608 F.2d 1365, 1368 (10th Cir.

1979); *In re Borbridge*, 81 B.R. 332, 335 (Bankr. E.D. Pa. 1988); *In re Philadelphia Athletic Club*, 9 B.R. 280, 282 (Bankr. E.D. Pa. 1981).

Additionally, given the fact that the bankruptcy petition was filed after the close of discovery in the *Ryan* case and on the eve of the adjudication of various summary judgment motions, granting relief from the stay would best promote judicial efficiency since the District Court has spent over two years familiarizing itself with the nuanced, overlapping facts and the complex constitutional doctrines at issue in this case.

Standing alone, these considerations of judicial economy are sufficiently compelling to validate the exercise of discretion to lift the stay as it applies to this case.

**WHEREFORE,** for the reasons stated above and in the attached *Motion*, in the interests of justice and so as to comply with the mandates of the United States Constitution, the Petitioner requests that this Court provide the following relief:

A.      Determine that, insofar as any stay of proceedings issued in this matter may affect the Petitioner's case, it is in conflict with the Fifth and Fourteenth Amendments of the United States Constitutions and 42 U.S.C. § 1983;

B.    Determine that, insofar as any stay of proceedings issued in this matter may affect the Petitioner's case, it is in conflict with sound principles of judicial economy; and

C.    Issue an Order:

1. Setting aside any Stay of Proceedings as it may apply to the Petitioner's specific case against Defendants CITY OF DETROIT, BARBARA KOZLOFF and DWAYNE BLACKMON; and/or

2. Modifying any Stay of Proceedings, as it may apply to the Petitioner's specific case against Defendants CITY OF DETROIT, BARBARA KOZLOFF, and DWAYNE BLACKMON, so that the United States District Court may adjudicate the pending Motion for Summary Judgment that has been filed by Defendants CITY OF DETROIT, KOZLOFF, and BLACKMON.


Respectfully submitted,

**GOODMAN & HURWITZ, P.C.**

By:  _s/William H. Goodman_____
William H. Goodman, P14173
1394 E. Jefferson Avenue
Detroit, MI  48226
(313) 567-6170

Dated:  September 9, 2013