**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **In re:** | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Stephen W. Rhodes |

______________________________________/

**THE OFFICIAL COMMITTEE OF RETIREES'**
**MOTION TO WITHDRAW THE REFERENCE**

Comes now the Official Committee of Retirees (the "Retirees Committee"), by its counsel, Dentons and Brooks Wilkins Sharkey & Turco, and for its Motion to Withdraw the Reference, states:

1. The bases of the Motion are set forth in the Memorandum in Support filed concurrently herewith.

2. Counsel for the Retirees Committee has sought concurrence in the relief requested herein from counsel for the Debtor and concurrence was not obtained.

Respectfully submitted,


Carole Neville
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800
carole.neville@dentons.com

Sam J. Alberts
DENTONS US LLP
1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005-3364
Tel: (202) 408-6400
Fax: (202) 408-6399
sam.alberts@dentons.com

By: /s/ Claude D. Montgomery
Claude D. Montgomery (P29212)
SALANS FMC SNR DENTON
EUROPE LLP
Rockefeller Center
620 Fifth Avenue
New York, New York 10020
Direct: (212) 632-8390
claude.montgomery@dentons.com

By: /s/ Matthew E. Wilkins
Matthew E. Wilkins (P56697)
Paula A. Hall (P61101)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
Direct: (248) 971-1711
Cell: (248) 882-8496
Fax: (248) 971-1801
wilkins@bwst-law.com
hall@bwst-law.com

Dated: September 11, 2013

*Counsel for the Official Committee of Retirees*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re | : | |
| | : | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | : | Case No. 13-53846 |
| Debtor. | : | Hon. Stephen W. Rhodes |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE OFFICIAL COMMITTEE OF RETIREES TO WITHDRAW THE REFERENCE**

## TABLE OF CONTENTS

**I.** PRELIMINARY STATEMENT ........................................................................... 1

**II.** RELEVANT BACKGROUND ........................................................................... 2

- **A.** PA 436 and the Governor's Appointment of the Emergency Manager ......................... 2
- **B.** The Michigan State Constitution's Absolute Protection of Accrued Pension Benefits -- and PA 436's Violation of Those Constitutional Rights ............................................... 3
- **C.** The EM's Proposal to Impair Pension Rights in a Chapter 9 Proceeding. .................... 5
- **D.** Michigan's Retirees Seek Protection in the Michigan Circuit Court ............................ 6
- **E.** The City Commences Chapter 9 Proceedings. ............................................................ 6

**III.** JURISDICTION AND STANDING ........................................................................ 8

**IV.** PROCEDURAL BACKGROUND ........................................................................... 8

- **A.** Withdrawal Standard ............................................................................................... 8
- **B.** Chapter 9 Eligibility Standard. ................................................................................ 8
- **C.** The Committee's Constitutional Objections to the City's Chapter 9 Eligibility ......... 11

**V.** ARGUMENT ........................................................................................................ 16

- **A.** *Stern v. Marshall* Requires Withdrawal of the Reference of the Eligibility Objection Independently of 28 U.S.C. § 157(d). ........................................................................ 16
- **B.** Withdrawal of the Reference is Mandatory Under 28 U.S.C. § 157(d). ...................... 24
- **C.** Withdrawal for "Cause" is Warranted Under § 28 U.S.C. § 157(d). ........................... 26

**VI.** CONCLUSION ..................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashton v. Cameron Cty. Water Dist.*,
298 U.S. 513 (1936) .......... 27

*Bank Midwest, N.A. v. Cyberco Holdings (In re Cyberco Holdings, Inc.)*,
2005 WL 2704508 (W.D.Mich. Oct. 20, 2005) .......... 25

*Bond v. U.S.*,
131 S. Ct. 2355 (2011) .......... 24

*Brouwer v. Bronkema,*
377 Mich. 616, 141 N.W.2d 98 (Mich. 1966) .......... 14

*Campbell v. Detroit*,
51 Mich. App. 34, 214 N.W.2d 337 (Mich. 1973) .......... 18

*Chao v. Holman (In re Holman)*,
325 B.R. 569 (E.D. Ky. 2005) .......... 24

*Fisher Sand and Gravel Co. v. Neal A. Sweebe, Inc.,*
494 Mich. 543, --- N.W.2d ----, 2013 WL 3924324 (Mich., July 30, 2013) .......... 13

*Flowers, et al. v. Snyder, et al*.,
Case No. 13-729-CZ (Cir.Ct. Ingham Cty. July 8, 2013) .......... 5

*Garcia v. San Antonio Metro. Transit Auth.*,
469 U.S. 528 (1985) .......... 25

*In re Addison Community Hospital Authority*,
175 B.R. 646 (Bankr. E.D. Mich. 1994) .......... 9

*In re City of Colorado Springs Spring Creek Gen. Improvement Dist.*,
177 B.R. 684 (Bankr. D. Colo.1995) .......... 8, 9

*In re City of Detroit, Mich.*,
Case No. 13-53846 (Bankr. E.D. Mich. July 18, 2013) .......... 4

*In re City of Harrisburg, PA*,
465 B.R. 744 (Bankr. M.D.Pa. 2011) .......... 9, 10

*In re City of Stockton, Cal*.,
475 B.R. 720 (Bankr. E.D.Cal. 2012) .......... 19, 17

*In re City of Stockton, Cal.*,
493 B.R. 772 (Bankr. E.D.Cal. 2013)....................10, 17

*In re Cottonwood Water and Sanitation Dist.*,
138 B.R. 973 (Bankr. D.Col. 1992)....................10

*In re Enrolled Senate Bill 1269*,
389 Mich. 659, 209 N.W.2d 200 (Mich. 1973)....................3, 12

*In re Sullivan Cty. Reg'l Refuse Disposal Dist.*,
165 B.R. 60 (Bankr.D.N.H.1994)....................10, 27

*Laborer's Pension Trust Fund-Detroit & Vicinity v. Kiefer (In re Kiefer)*,
276 B.R. 196 (E.D.Mich. 2002)....................24

*Lehman Bros. Holdings Inc., et al. v. JPMorgan Chase Bank (In re Lehman Bros., Inc.)*,
480 B.R. 179 (S.D.N.Y. 2012)....................17, 19, 27

*McDougall v. Schanz,*
461 Mich. 15, 597 N.W.2d 148 (Mich. 1999)....................12

*Moyer v. Koloseik (In re Sutton)*,
470 B.R. 462 (W.D.Mich. 2012)....................20

*Murray v. Warren Cty. Sheriff's Dep't. (In re Avtex Fibers-Front Royal, Inc.)*,
1991 WL 25460 (E.D.Pa. Feb. 26, 1991)....................23

*New York v. United States,*
505 U.S. 144 (1992)....................19, 21

*N. Pipeline Constr. Co. v. Marathon Pipeline Co.*,
458 U.S. 50 (1982)....................22, 23

*People ex. rel. LeRoy v. Hurlbut,*
24 Mich. 44 (1871)....................14

*Picard v. Flinn Investments, LLC*,
463 B.R. 280 (S.D.N.Y. 2011)....................19, 24

*Picard v. Schneiderman, et al. (In re Madoff Securities)*,
492 B.R. 133 (S.D.N.Y. 2013)....................24

*Pillon v. Kavanagh*,
345 Mich. 536, 77 N.W.2d 257 (Mich. 1956)....................18

*Printz v. U.S.*,
521 U.S. 898 (1995)....................21

*Rabin v. Skoda Minotti & Co. (In re Inkstop, Inc.)*,
2012 WL 300626 (N.D.Ohio Jan. 31, 2012) .......... 26

*Rhodes v. Stewart*,
705 F.2d 159 (6th Cir. 1983), *cert. denied*, 464 U.S. 983 (1983) .......... 10

*Rodriguez de Quijas v. Shearson/American Express, Inc.,*
490 U.S. 477 (1989) .......... 15

*Schnelling v. Dynamic Sec., Inc. et al., (In re James River Coal Co.)*,
2006 WL 3761965 (M.D.Tenn. 2006) .......... 26

*S.V. v. Kratz*,
2012 WL 3070979 (E.D.Wis. July 26, 2012) .......... 15

*Small v. Seterus*,
2011 WL 7645816 (Bankr.S.D.Ala. Nov. 22, 2011) .......... 15

*Stern v. Marshall*,
131 S.Ct. 2594 (2011) .......... passim

*The General Ret. Sys. of the City of Detroit, et al v. Orr et al.*,
Case No 13-768-CZ (Cir.Ct. Ingham Cty. July 17, 2013) .......... 6

*TTOD Liquidation, Inc., et al. v. Lim (In re Dott Acquisition, LLC)*,
2012 WL 3257882 (E.D.Mich. 2012) .......... 23, 25, 26

*U.S. v. Darby*,
312 U.S. 100 (1941) .......... 25

*Waldman v. Stone*,
698 F.3d 910 (6th Cir. 2006) .......... 27

*Webster v. State of Michigan*,
No. 13-734-CZ (Cir. Ct., Ingham Cty. July 19, 2013) .......... 5, 6

*Wellness Int'l Network Ltd. v. Sharif*,
2013 WL 4441926 (7th Cir. Aug. 21, 2013) .......... 26

**STATUTES**

11 U.S.C. § 109(c) .......... passim

11 U.S.C. § 109(c)(2) .......... 8, 9, 13, 16

28 U.S.C. § 157 .......... 23

28 U.S.C. § 157(a) .......... 8


13-53846-swr Doc 806 Filed 09/11/13 Entered 09/11/13 08:38:32 Page 7 of 39

28 U.S.C. § 157(b) ....................................................................................................8

28 U.S.C. § 157(d) ....................................................................................................1,8, 25

28 U.S.C. § 158(a)(3)....................................................................................................26

11 U.S.C. § 157(d) ....................................................................................................10, 15, 23, 25

11 U.S.C. § 901....................................................................................................7, 11

11 U.S.C. § 1102(a)(2)....................................................................................................6

11 U.S.C. § 1109(b) ....................................................................................................7

28 U.S.C. § 1292(b) ....................................................................................................26

28 U.S.C. § 1334....................................................................................................8

28 U.S.C. § 1334(a)-(b) ....................................................................................................8

28 U.S.C. § 1409(a) ....................................................................................................7

28 U.S.C. § 2403(a) ....................................................................................................24

29 U.S.C. § 1302....................................................................................................5

29 U.S.C. § 1321(b)(2) ....................................................................................................5

M.C.L. § 141.1541 ....................................................................................................3

M.C.L. § 141.1549(1) ....................................................................................................3

M.C.L. § 141.1549(2) ....................................................................................................3

M.C.L. § 141.1551 ....................................................................................................13

M.C.L. § 141.1551(1)(d)....................................................................................................4, 5

M.C.L. § 141.1552(1)(dd)....................................................................................................4

M.C.L. § 141.1552(i)(m)(ii) ....................................................................................................4

M.C.L. § 141.1553....................................................................................................3, 12

M.C.L. § 141.1558....................................................................................................12

M.C.L. § 141.1558(1) ....................................................................................................3

M.C.L. § 141.1559(1) ....................................................................................................4

M.C.L. § 141.1566(1) ....................................................................................................3

M.C.L. § 141.1552(m) ....................................................................................................12

Public Act 436, the Local Financial Stability and Choice Act, M.C.L. §141.1541.............. passim

Public Act 72 of 1990, M.C.L. §141.1201....................................................................................2

**OTHER AUTHORITIES**

Local Rule 83.50(a)(1)....................................................................................................8

Mich. Const. art. I, § 10 ....................................................................................................11

Mich. Const. art. IV, § 29 ....................................................................................................4

Mich. Const. art. VII....................................................................................................14

Mich. Const. art. VII, § 21 ....................................................................................................4, 14

Mich. Const. art. VII, § 22 ....................................................................................................4, 14

Mich. Const. art. IX, § 24 ....................................................................................................3, 10, 11

U.S. Const. art. I, § 10....................................................................................................4

U.S. Const. amend. X....................................................................................................4

The Official Committee of Retirees (the "Committee") files this legal memorandum in support of their Motion (the "Withdrawal Motion") to the United States District Court for the Eastern District of Michigan (the "District Court") for immediate withdrawal of the reference from the United States Bankruptcy Court for the Eastern District of Michigan ("Bankruptcy Court") of the state law and constitutional issues of first impression raised in the "Objection of the Official Committee of Retiree to Eligibility of the City of Detroit, Michigan To Be a Debtor Under Chapter 9 of the Bankruptcy Code," dated September 10, 2013 and filed concurrently herewith ("Eligibility Objection"), and in support thereof states as follows:

## I. PRELIMINARY STATEMENT

1. The Committee's Eligibility Objection asserts that the Emergency Manager was not duly authorized, as a matter of Michigan law, to have filed a Chapter 9 petition on behalf of the City. The Committee seeks withdrawal of the reference of the Eligibility Objection to have the District Court decide the various constitutional, statutory and factual issues necessary to determine whether the City is in fact eligible for Chapter 9 relief, or whether its petition must be dismissed. As explained below, the Bankruptcy Court, a non-Article III court, is without constitutional authority to hear and determine the issues raised in the Eligibility Objection, and withdrawal of the reference is warranted on that basis alone. The retirees are constitutionally entitled to have an Article III court determine basic redressable issues affecting their livelihood as current or past citizens of the State of Michigan. Furthermore, as explained in greater detail below, both mandatory and permissive withdrawal of the reference under 28 U.S.C. § 157(d) are warranted.

2. Following a declaration of financial emergency on March 28, 2013 by Richard D. Snyder, Governor of the State of Michigan (the "Governor"), the State appointed


13-53846-swr Doc 806 Filed 09/11/13 Entered 09/11/13 09:38:32 Page 10 of 39

Kevyn Orr as the receiver for the City of Detroit (the "City"). Shortly thereafter, the Governor named Mr. Orr the Emergency Manger pursuant to PA 436 (defined below) (the "EM"). From the record available to the Retiree Community, the appointment of the EM was part of a plan developed well before Mr. Orr's appointment to unilaterally alter, reduce or eliminate retirement compensation benefits promised by the City. Acting under the assertion of improving the City's much deteriorated health and safety, on July 18, 2013 the EM took a further step to alter, reduce or eliminate promised retirement compensation benefits by authorizing the filing of a petition to initiate a case under Chapter 9 of the United States Bankruptcy Code for the City of Detroit. The determination of whether the City is eligible for Chapter 9 relief, and therefore can seek in a Chapter 9 proceeding to impair benefits that are protected under the Michigan Constitution, will have an enormous impact on the City's retirees that cannot be overstated.

3. Included among the retired employee community affected by the City's filing are individuals who are over 100 years old and who completed their service with the City (or their spouses did) over 35 years ago. Many such individuals and many others between the ages of 65 and 100 are not eligible for social security benefits, rendering their entire economic existence dependent upon retirement compensation promised by the City. It is therefore essential, and the interests of due process and justice require, that the retirees have their dispute heard in the Article III forum which is their constitutional right.

## II. RELEVANT BACKGROUND

### A. PA 436 and the Governor's Appointment of the Emergency Manager

4. On March 14, 2013, Governor Richard D. Synder appointed Kevyn D. Orr as the City's emergency financial manager pursuant to Public Act 72 of 1990, M.C.L.


13-53846-swr Doc 806 Filed 09/11/13 Entered 09/11/13 08:38:32 Page 11 of 39

§141.1201, *et seq*. On March 28, 2013, Mr. Orr automatically became EM upon the effectiveness Public Act 436, the Local Financial Stability and Choice Act, M.C.L. §141.1541, *et seq*. ("PA 436"). PA 436 authorizes the Governor to appoint an emergency manager to address a financial emergency within a local government. M.C.L. § 141.1549(1). The emergency manager "act[s] for and in the place and stead" of the elected Mayor and City Council. M.C.L. § 141.1549(2). He is vested with "broad powers" to address the city's financial emergency, *id.*, including the filing of a Chapter 9 petition if he concludes that there is "no reasonable alternative" and obtains written approval of the Governor, M.C.L. § 141.1558(1), who may place contingencies on the filing of any petition. M.C.L. § 141.1566(1).

**B. The Michigan State Constitution's Absolute Protection of Accrued Pension Benefits - and PA 436's Violation of Those Constitutional Rights**

5. The Michigan Constitution ("Michigan Constitution") categorically prohibits state governmental authorities and its subdivisions from modifying accrued pension benefits:

> The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions ***shall be a contractual obligation thereof which shall not be diminished or impaired*** thereby.
>
> Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities.

Mich. Const. art. IX, § 24 (emphasis added); *see also In re Enrolled Senate Bill 1269*, 389 Mich. 659, 663, 209 N.W.2d 200, 202 (Mich. 1973) ("[U]nder [art. IX, § 24] constitutional limitation the legislature cannot diminish or impair accrued financial benefits.").

6. PA 436 contains several protections for accrued pension benefits. PA 436(13) states that it "does not authorize the impairment of vested pension benefits." M.C.L. § 141.1553. The emergency manager must provide for timely deposits of required payments to the fund, M.C.L. § 141.1551(1)(d), and, if acting as sole trustee of the pension board, must fully comply with Article IX. *See* M.C.L. § 141.1552(i)(m)(ii). PA 436 does *not* however impose any obligations on the emergency manager to protect accrued pension benefits in the event of a Chapter 9 filing by a local subdivision of the state government. Thus, to the extent that PA 436 does not protect pension benefits from impairment and require the funding of those pensions, in bankruptcy, it violates the Michigan Constitution.

7. PA 436 also violates the Michigan Constitution by effectively stripping the voters of their right to democratically elected representatives. The statute substitutes an unelected emergency manager for the elected officials and authorizes him "to act for and in the place and stead . . . of the local government." M.C.L. § 141.1559(1). The emergency manager can exercise powers in excess of those granted to the legislature under the Constitution. The emergency manager can adopt local ordinances and take purely local legal acts, M.C.L. § 141.1552(1)(dd), but is not restricted by the constitutional limitations imposed on the local governments for the passage of such acts. *See*, *e.g.*, Mich. Const. art. VII, §§ 21, 22 (authorizing the legislature to incorporate cities and the electors of each city and village "to frame, adopt and amend its charter"); *Id.* art. IV § 29 (local acts must be approved by two-thirds of the members elected to each house and by a majority of local voters).


13-53846-swr Doc 806 Filed 09/11/13 Entered 09/11/13 09:38:32 Page 13 of 39

### C. The EM's Proposal to Impair Pension Rights in a Chapter 9 Proceeding.

8. The EM presented his "Proposal for Creditors" (the "City Proposal") on June 14, 2013. (Dkt. 11, Ex. A).[1] The City Proposal estimates unfunded pension liabilities at $3.5 billion and proposes to exchange claims for the underfunded amounts for a pro-rata principal amount of new limited recourse participation notes. *Id.* The City Proposal states that "there *must be significant cuts in accrued, vested pension amounts for both active and currently retired persons*." *Id*. (emphasis added). The EM proposes to modify the medical benefits of current retirees and to satisfy those claims as well with a pro-rata distribution of Notes. *Id*. In violation of the statutory requirement that the EM "shall provide for" the "timely deposit of required payments to the pension fund for the local government or in which the local government participates," M.C.L. § 141.1551(1)(d), the City Proposal provides that such payments "will not be made under the plan." *Id.*

9. The City Proposal will have dire consequences for the City's retirees. The protections of the Federal Retirement Income Security Act ("ERISA") apply to private, not public workers. *See* 29 U.S.C. § 1321(b)(2) (ERISA inapplicable "to any plan . . . established and maintained for its employees . . . by the government of any State or political subdivision thereof . . . ."). The Pension Benefit Guarantee Corporation, established under ERISA, *see* 29 U.S.C. § 1302, to guarantee the pension obligations of failed private pension plans, will not protect the City's retired employees.

---

[1] All docket number references in the Withdrawal Motion refer to docket entries in the matter *In re City of Detroit, Mich.*, Case No. 13-53846 (Bankr. E.D.Mich. July 18, 2013) (SWR).

**D. Michigan's Retirees Seek Protection in the Michigan Circuit Court**

10. In July 2013 several current and former employees of the City commenced actions in the Michigan Circuit Court seeking to enjoin the Governor from authorizing the filing of a Chapter 9 petition and a declaration that PA 436 is unconstitutional.[2] (Dkt. 14, Ex. A). On July 18, 2013, Judge Rosmarie Aquilina entered an order enjoining the Governor from taking "any further action" that may cause the impairment of accrued financial benefits in violation of Article IX, Section 24 of the Michigan Constitution, and the following date, on July 19, issued a declaration that, *inter alia*, PA 436 violates the Michigan Constitution insofar as it permits impairment of accrued pension benefits and is "to that extent of no force and effect," and that the acts taken by the Governor to impair those benefits were prohibited by the Michigan Constitution. (Dkt. 438, Exs. A, B). Judge Aquilina directed the EM to withdraw immediately the Chapter 9 petition.

**a. The City Commences Chapter 9 Proceedings.**

11. On July 18, 2013, the City filed its Chapter 9 petition. On August 2, 2013, the Bankruptcy Court issued an order directing the appointment of an Official Committee of Retirees pursuant to Section 1102(a)(2) of the Bankruptcy Code. (Dkt. 279). On August 22, 2013, the United States Trustee for Region 9 filed a notice of appointment of the Official

---

[2] *See Flowers, et al. v. Snyder, et al.*, Case No. 13-729-CZ (Cir.Ct. Ingham Cty. July 8, 2013); *Gracie Webster, et al. v. The State of Michigan, et al.*, Case No. 13-734-CZ (Cir.Ct. Ingham Cty. July 3, 2013); *The General Retirement Sys. of the City of Detroit, et al v. Orr et al.*, Case No 13-768-CZ (Cir.Ct. Ingham Cty. July 17, 2013) (together, the "State Court Actions").

Committee of Retirees (the "Committee").[3] On August 26, 2013 the Bankruptcy Court issued an Order classifying the various Eligibility Objection and Notices of Hearings. (Dkt. 642).

12. On July 19, 2013, the City filed its motion for an order establishing a deadline for objections to the City's eligibility to be a Chapter 9 debtor ("Eligibility Motion"). (Dkt. 18). The Bankruptcy Court has not stayed proceedings in the Chapter 9 case pending the Court's adjudication of the Eligibility Motion. (Dkt. 296, at 10). One hundred-and-nine parties timely objected to the Eligibility Motion, including the City's various unions, employee and retiree associations and individuals. (Dkt. 642, at 1). Among the legal objections ("Legal Eligibility Objections") are that (1) Chapter 9 violates the U.S. Constitution; (2) the City's authorization to file its Chapter 9 petition was invalid as a matter of state constitutional and statutory law; (3) the Bankruptcy Court is without authority to adjudicate the foregoing state law and constitutional law disputes; and (4) the injunction issued in the State Court Actions bars the City from contesting the invalidity of the Governor's authorization. (Dkt. 642, at 1-3).[4]

---

[3] The Committee are: (1) Edward L. McNeil (Detroit, Michigan, Retiree Sub-Chapter 98 of the American Federation of State, County and Municipal Employees, AFL-CIO – Edward L. McNeil), (2) Michael J. Karwoski, (3) Shirley V. Lightsey, (4) Terri Renshaw, (5) Robert A. Shinske, (6) Donald Taylor, (7) Gail Wilson Turner, (8) Gail M. Wilson and (9) Wendy Fields-Jacobs (International Union, UAW). (Dkt. 575).

[4] The factual challenges raised by the various filed objections to the petition are that the City (i) was not insolvent, (ii) does not "desire to adjust its debts," (iii) did not negotiate in good faith with creditors and negotiation was not impracticable, and (iv) filed its bankruptcy petition in bad faith. (Dkt. 642, at 4-5).

13. The Legal Eligibility Objections are now scheduled for hearing before the Bankruptcy Court on October 15, 2013.[5] A trial on other, factual eligibility objections is scheduled for October 23 and 24, 2013. (Dkt. 642, at 4). The Committee has filed its own Objection to Eligibility. (Dkt. 805). In order to prevent the irreparable harm that will result from a determination by the Bankruptcy Court of the Committee's Eligibility Objection, the Committee is filing a motion to stay proceedings pending resolution of the Withdrawal Motion.

## III. JURISDICTION AND STANDING

14. The District Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(d). Venue is proper under 28 U.S.C. § 1409(a). The Committee has standing under Bankruptcy Code section 1109(b), which is applicable in Chapter 9. *See* 11 U.S.C. § 901.

## IV. PROCEDURAL BACKGROUND

### A. Withdrawal Standard.

15. Congress vested bankruptcy jurisdiction in the district courts, 28 U.S.C. § 1334(a)-(b), and authorized the district courts to refer bankruptcy cases and any or all proceedings arising in or related to bankruptcy cases to specialized bankruptcy courts. 28 U.S.C. § 157(a). In the Eastern District of Michigan such matters are automatically referred pursuant to Local Rule 83.50(a)(1). Bankruptcy judges are authorized to "hear and determine all cases under title 11" and all "core proceedings arising under . . . or arising in a case under title 11." 28 U.S.C. § 157(b). Section 157(d) of the Bankruptcy Code provides, however, for withdrawal of

[5] At a hearing held September 10, the Bankruptcy Court indicated that it would move the Legal Eligibility Objections hearing date from September 18 to October 15, 2013. That change is not yet reflected in an order.

the reference of any referred matter on both mandatory and permissive grounds. Withdrawal is mandatory if resolution of the proceeding "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Permissive withdrawal may be granted "for cause shown." As demonstrated below, both mandatory and permissive withdrawal are warranted. 28 U.S.C. § 157(d). More importantly, withdrawal is warranted because the Bankruptcy Court, as a non-Article III court, is not constitutionally authorized to exercise the judicial power to determine the state and federal constitutional questions of first impression raised by the Committee.

**B. Chapter 9 Debtor Eligibility Standard**

16. Congress was cognizant of federalism principles and the potential for federal government intrusion into the affairs of the state sovereign posed by municipal bankruptcies when it enacted Chapter 9. "Unlike any other chapter of the Bankruptcy Code, Chapter 9 places federal law in juxtaposition to the rights of states to create and govern their own subdivisions." *In re City of Colorado Springs Spring Creek Gen. Improvement Dist.*, 177 B.R. 684, 693 (Bankr. D. Colo.1995); *see also In re Addison Comty. Hospital Auth.*, 175 B.R. 646, 649 (Bankr. E.D. Mich. 1994) ("A primary distinction between chapter 11 and Chapter 9 proceedings is that in the latter, the law must be sensitive to the issue of the sovereignty of the states.") Thus, in enacting Chapter 9, "Congress did not intend for federal bankruptcy law to supersede or impair the power of the state to create, limit, authorize or control a municipality in the exercise of its political or governmental powers." *Colorado Springs*, 177 B.R. at 693.


13-53846-swr Doc 806 Filed 09/11/13 Entered 09/11/13 00:38:32 Page 18 of 39

17. Principles of federalism and dual sovereignty are protected in the gatekeeper requirement that a state must specifically authorize the Chapter 9 filing of any of its subdivisions. Thus, a municipality may be a debtor only if it is:

> [S]**pecifically authorized**, in its capacity as a municipality or by name, to be a debtor under such chapter **by State law**, **or by a governmental officer or organization empowered by State law** to authorize such entity to be a debtor under such chapter.

11 U.S.C. § 109(c)(2) (emphasis added). The authorization requirement is mandated by "the interplay between Congress' bankruptcy power and the limitations on federal power under the Tenth Amendment." *In re City of Harrisburg, PA*, 465 B.R. 744, 754 (Bankr. M.D.Pa. 2011) (allegations that city sought Chapter 9 relief in violation of state law requirements "raise[d] important concerns of federalism"). Given these Tenth Amendment concerns, where, as here, "the authority to file under state law is questioned, bankruptcy courts exercise jurisdiction carefully." *In re Cottonwood Water and Sanitation Dist*., 138 B.R. 973, 979 (Bankr. D.Col. 1992) (constitutional issues raised by Chapter 9 cases caused Congress "to limit accessibility to the bankruptcy court by municipalities."); *see also In re Sullivan Cty. Reg'l Refuse Disposal Dist*., 165 B.R. 60, 82 (Bankr.D.N.H.1994) ("In light of [dual sovereignty] concerns, bankruptcy courts scrutinize petitions for relief under chapter 9.").

18. Section 109(c)(2) is unequivocal that the question of whether a city is properly authorized to commence a Chapter 9 case "presents a question of pure state law." *In City of Stockton, Cal*., 475 B.R. 720, 729 (Bankr. E.D.Cal. 2012); *In re City of Colorado Springs Spring Creek General Imp. Dist*., 177 B.R. 684, 694 (Bankr. D.Colo. 1995) ("It is state law rather than the federal law which determines the eligibility of municipalities to seek relief under Chapter 9."). The "state serves as a municipality's gatekeeper into Chapter 9." *In re City of*

*Harrisburg*, 465 B.R. 744, 752 (Bankr. M.D. Pa. 2011).[6] The Chapter 9 debtor bears the burden of showing that it was authorized to file a petition, *see, e.g., In re City of Stockton, Cal.*, 493 B.R. 772, 794 (Bankr. E.D.Cal. 2013), and dismissal is required if the city can't meet this burden. *Harrisburg*, 465 B.R. at 752.

### C. The Committee's Federal and State Constitutional Objections to the City's Chapter 9 Eligibility

19. This proceeding presents at least five critical questions under the Constitutions of the United States and of the State of the Michigan that must be decided to determine whether the City was validly authorized to file its Chapter 9 Petition. As explained below, withdrawal of the reference is required for determination of each of these questions.

20. *First,* the Committee argues in its Objection that Article IX, Section 24 of the Constitution of the State of Michigan (the "Pension Clause") explicitly provides that vested pension rights "shall not be diminished or impaired." The EM contends that he may use Chapter 9 of the Bankruptcy Code, 11 U.S.C. § 901 *et seq.* to "trump" the Pension Clause, and intends to ask the Bankruptcy Court to approve a plan which would diminish those vested rights. But that application of Chapter 9 would violate the Tenth Amendment to the U.S. Constitution.[7] As noted above, the Pension Clause provides that accrued pensions obligations "shall not be diminished or impaired" by Michigan or its subdivisions, including the City. Mich. Const. art.

---

[6] For this reason the Supremacy Clause is not at issue here. *See Rhodes v. Stewart*, 705 F.2d 159, 163 (6th Cir. 1983), *cert. denied*, 464 U.S. 983 (1983) (holding in exemptions context that where the Bankruptcy Code expressly reserves authority to the states, the Supremacy Clause and preemption principles do not apply).


13-53846-swr Doc 806 Filed 09/11/13 Entered 09/11/13 09:38:32 Page 20 of 39

IX, § 24. The Michigan Constitution also contains a Contracts Clause (similar in language to that in the U.S. Constitution[8]), which provides that, "No bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted." Mich. Const. art. I, § 10.

21. The Committee and certain other objectors argue that the Pension Clause provides broader protection for retirement benefits than the Contracts Clause. *See* Objection, ¶¶ 26-28. If the Pension Clause had been intended merely to establish that accrued pension rights were contractual obligations and thus protected by the Contract Clause, the Pension Clause would have ended with the phrase "… shall be a contractual obligation." That would have been sufficient to lay to rest the concept that "pensions granted by public authorities were not contractual obligations but gratuitous allowances." *In re Enrolled Senate Bill 1269 (Advisory Opinion re Constitutionality of 1972 PA 258)*, 389 Mich. 659, 662, 209 N.W.2d 200, 202 (Mich. 1973).

22. *Second,* the Committee argues in its Objection that because PA 436 purports to authorize the EM, as part of a Chapter 9 plan, to modify vested pension rights, even though such modification would violate the Pension Clause, PA 436 is itself unconstitutional, under the Constitution of the State of Michigan.

---

(*continued from previous page*)

[7] The Tenth Amendment provides, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.

[8] The parallel language of Article I, Section 10 of the U.S. Constitution provides, "[n]o State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, . . . ." U.S. Const. art. I, § 10.

23. In a statement filed in the Bankruptcy Court, Attorney General Bill Schuette has taken the position that because "[t]he Michigan Legislature cannot enact laws that authorize local governments to violate the Michigan Constitution," PA 436 should be construed to require that any bankruptcy plan submitted by the EM comply with the Pension Clause.[9] Would that it were so. If PA 436 were ambiguous in this respect, then the Attorney General's proposed construction would be supported by the principle that any ambiguity in a statute should be construed in a manner that renders the statute constitutional. *McDougall v. Schanz,* 461 Mich. 15, 24, 597 N.W.2d 148, 153 (1999). But PA 436 is not ambiguous. PA 436 clearly provides that actions taken by the EM outside of bankruptcy be in full compliance with the Pension Clause, M.C.L. §§ 141.1551, 1552(m), 1553, but contains no such restriction on actions by the EM taken in a bankruptcy proceeding. M.C.L. § 141.1558. PA 436 is as clear (and as unconstitutional, under the Michigan Constitution) as if it explicitly stated, "Outside of a bankruptcy proceeding, the EM must abide by the Pension Clause, but in any bankruptcy proceeding, the EM is hereby authorized to violate the Pension Clause." The Michigan Legislature, the Governor, and the EM have each made clear that that was its intent. The Legislature omitted any obligation to abide by the Pension Clause in the bankruptcy provisions of PA 436. Instead of attempting to cure this problem, the Governor did the opposite: Although authorized by PA 436 to "place contingencies" on a local government's proceeding under Chapter 9 -- and thus could have made explicit that any bankruptcy plan must respect the

[9] (Dkt. 481, at 6).

Pension Clause -- the Governor explicitly chose "not to impose any such contingencies."[10] And the EM has expressly stated that "there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons," which he states are permissible because "federal supremacy trumps state law."[11] Because PA 436 is unambiguous, it must be construed as written. *Fisher Sand and Gravel Co. v. Neal A. Sweebe, Inc.,* 494 Mich. 543, --- N.W.2d ----, 2013 WL 3924324, at *5 (Mich., July 30, 2013) (*citing Sun Valley Foods Co. v. Ward,* 596 N.W.2d 119 (1999)). The Statute is unconstitutional under Michigan law.

24. *Third*, the Committee argues in its Objection that the unconstitutionality of PA 436, under the Michigan Constitution, also compels the conclusion that the petition was not authorized under Section 109(c) of the Bankruptcy Code, which provides that a municipality may not file in bankruptcy unless it "is specifically authorized . . . to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor . . . ." 11 U.S.C. § 109(c)(2). Because PA 436 (or, at a minimum, those provisions of PA 436 which authorize the filing of a bankruptcy petition unconstrained by the Pension Clause) is unconstitutional, under the Michigan Constitution, it is of no effect. Therefore, neither the City of Detroit, nor the EM, as been "specifically authorized … by State law" to file a bankruptcy petition.

25. *Fourth*, by purporting to authorize the EM to act in place of the Mayor and City Council of Detroit in filing the petition and in all bankruptcy proceedings, the Committee has joined those objections, which argue PA 436 violates Article VII of the Michigan

[10] (Dkt. 1, at 16).


13-53846-swr Doc 806 Filed 09/11/13 Entered 09/11/13 09:38:32 Page 23 of 39

Constitution, which guarantees local self-government. *See* Eligibility Objection at 1-2. Article VII provides that "The legislature shall provide by general laws for the incorporation of cities and villages," and that under those general laws, "the electors of each city and village shall have the power and authority to frame, adopt and amend its charter." Mich. Const. art. VII, §§ 21, 22. *See also Brouwer v. Bronkema,* 141 N.W.2d 98 (Mich. 1966); *People ex. rel. LeRoy v. Hurlbut,* 24 Mich. 44, 65 (Mich. 1871). It is hard to imagine a more extreme violation of the principles of home rule than giving an appointed EM the right to act, in place of the Mayor and City Council, in what are among the gravest actions that any municipality may take -- a decision to file in bankruptcy, and to develop and submit a plan to a Bankruptcy Court.

26. *Fifth*, there is a serious question identified by the Committee in its Objection whether, in light of recent Supreme Court precedent, Chapter 9 violates the Tenth Amendment to the U.S. Constitution as applied to the facts of this case. It should not be necessary to reach this question, because the case can be resolved on any or all of the narrower grounds set forth above. But if it is necessary to reach this question, its resolution will have profound implications for municipalities, and creditors of municipalities, across the nation.[12]

---

(*continued from previous page*)

[11] (Dkt. 505, ¶ 12).

[12] The EM has also argued, in reliance on *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484 (1989), that even if this Court reaches the conclusion that *Bekins* is no longer good law -- and that Chapter 9 is therefore unconstitutional -- it should nevertheless follow Bekins, "leaving to [the Supreme] Court the prerogative of overruling its own decisions." 490 U.S. at 484. City of Detroit's Consolidated Reply To Objections To the Entry of an Order of Relief. Dkt. 765, at 12. That argument is a compelling reason to resolve this case on one of the narrower grounds set forth above.

## V. ARGUMENT

### A. *Stern v. Marshall* Requires Withdrawal of the Reference of the Eligibility Objection Independently of 28 U.S.C. § 157(d).

27. The decision of the United States Supreme Court (the "Supreme Court") in *Stern v. Marshall*, 131 S.Ct. 2594 (2011) requires the Eligibility Objection to be withdrawn from the Bankruptcy Court for determination by the Federal District Court for the Eastern District of Michigan. *Stern* mandates this result independently of statutory withdrawal under 28 U.S.C. § 157(d). *See*, *e.g.*, *S.V. v. Kratz*, 2012 WL 3070979, at *2 (E.D.Wis. July 26, 2012) (withdrawal of the reference of plaintiff's § 1983 claim was "constitutionally mandated" by *Stern*); *Small v. Seterus*, 2011 WL 7645816, at *2 (Bankr. S.D.Ala. Nov. 22, 2011) (although withdrawal of state law causes of action was not required under section 157(d) it was required under *Stern* because the court could not enter final judgment on such claims).

28. In *Stern*, the Supreme Court reaffirmed that the bankruptcy courts, as non-Article III courts, lack constitutional authority to exercise the judicial power to resolve disputes concerning private, as opposed to public, rights. 131 S.Ct. 2594, 2620 (2011). The Supreme Court emphasized that "Article III could neither serve its purpose in the system of checks and balances nor preserve the integrity of judicial decision-making if the other branches of the Federal Government could confer the Government's 'judicial Power' on entities outside Article III." *Id.* at 2609. *Stern* teaches that the essential question for determining whether an Article III court must hear a proceeding is therefore not whether a proceeding is core or non-core or whether the proceeding "may have *some* bearing on a bankruptcy case," but rather "whether the action at issue stems from the bankruptcy itself or would not necessarily be resolved in the claims allowance process." *Id.* at 2618.

29. Private rights disputes concern "the liability of one individual to another under the law as defined." *Id.* at 2612. They do not depend upon the will of Congress. *Id.* Indeed, "congress has nothing to do with it." *Id.* The Eligibility Objection challenging the validity of the City's authorization to file a bankruptcy petition under 11 U.S.C. § 109(c)(2) requires the adjudication of private rights that exist wholly apart from and independently of any bankruptcy proceedings and are not resolvable as part of the claims allowance process. As a result, the Bankruptcy Court does not have the constitutional authority to enter final judgment on the Eligibility Objection. They must be determined by an Article III Court.[13]

30. It is beyond dispute that the issue of a municipality's authorization to file a Chapter 9 petition presents a "question of pure state law" and that "state law provides the rule of decision." *In re City of Stockton, Cal.*, 475 B.R. 720, 728–29 (Bankr. E.D. Cal. 2012). The Committee's Eligibility Objection raises several issues of first impression under the Michigan Constitution that will be heard by a federal court unaided by any appellate decision of the State. Even more to the point, the question of whether a legislative enactment or an executive action by a state official violates a state constitutional provision is a question wholly-created by state law. These challenges will require the interpretation, interaction and application of both the Michigan Constitution and the new emergency manager statute enacted immediately after Michigan voters

[13] *Stern* acknowledged that there is a narrow category of "public rights" that are appropriate for resolution by non-Article III courts. *Id.* at 2610. Public rights cases involve "matters arising between individuals and the Government in connection with the performance of the constitutional functions of the executive or legislative departments . . . that historically could have been determined exclusively by those" branches. *Id.* at 2609 (*citing N. Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 67-68 (1982)). The questions raised by the challenges to the City's authorization concern matters arising among the state of Michigan and its citizens, and not any federal regulatory scheme.

rejected by referendum a similar predecessor statute by referendum, PA 436. These disputes that could not fall more firmly within the category of private rights and arise independently of any bankruptcy filing. Indeed, as urged by the Michigan Attorney General, Title 11 has nothing to do with the constraints placed upon elected and appointed officials to uphold the Michigan Constitution. (Dkt. 481, at 6).[14]

Three of the challenges presented by the Committee's challenge to the City's authority to file its petition involve a questions of pure (state) constitutional interpretation:

> (i) Does the Michigan Constitution Pension Clause, which provides that accrued pension benefits "shall not be diminished or impaired" by the state or its subdivisions, provide protections for accrued pension benefits in addition to those granted by the Michigan Constitution's Contracts Clause?
>
> (ii) Does PA 436 violate Article VII of the Michigan Constitution because it contravenes home rule principles which guarantees local self-government and grants to the electors of each city the power to frame, adopt and amend municipal charters?
>
> (iii) Is PA 436 unconstitutional as a matter of Michigan law because PA 436 purports to authorize the EM to modify pension benefits in violation of the Michigan Constitution?

[14] That these questions may relate to the Bankruptcy Court's determination of the City's eligibility to be a Chapter 9 debtor does not change anything. "Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case." *Stern*, 131 S.Ct. at 2617-18 (bankruptcy court lacked authority to determine debtor's tortious interference claim unless "all of the substantial factual and legal bases" of claim could were be resolved "in passing on objections to the creditor[s]'s proof of claim"); *see also Lehman Bros. Holdings Inc., et al. v. JPMorgan Chase Bank (In re Lehman Bros., Inc.)*, 480 B.R. 179, 190 (S.D.N.Y. 2012) ("To trigger the "public rights" exception, partial overlap of the action is insufficient, rather a plaintiff must demonstrate that each factual and legal element of its claim will be decided in the claims allowance process such that after the process 'nothing remains for adjudication in a plenary suit.'").

31. Each of the foregoing challenges, if successful, could result in a determination that PA 436 was unconstitutional and that the acts taken thereunder to impair those obligations were ultra vires and are *void ab initio*. *See*, *e.g.*, *Campbell v. Detroit*, 51 Mich. App. 34, 37, 214 N.W.2d 337, 338 (Mich. 1973) (internal citations omitted) ("An unconstitutional act is not a law; it confers no rights; it imposes no duties . . . [and is] as inoperative as though it had never passed."); *Pillon v. Kavanagh*, 345 Mich. 536, 546, 77 N.W.2d 257, 263 (Mich. 1956) (statute contravening constitutional requirements for board of state canvassers was "unconstitutional and void"). The foregoing constitutional and statutory challenges raised by the Eligibility Objection will be resolved solely as a matter of Michigan law. None of the questions "stems from the bankruptcy itself" or would be "necessarily resolved in the claims allowance process." *Stern*, 131 S.Ct. at 2618. *Stern* mandates that private rights disputes arising under Michigan law regarding the City's authorization to file a Chapter 9 petition can only be determined by an Article III judge.

32. The Committee's Eligibility Objection also raises federal constitutional challenges to the City's bankruptcy petition. One challenge concerns the constitutionality of Chapter 9 under the 10th Amendment if the former permits Michigan to authorize a municipal bankruptcy in derogation of its own state sovereign powers. Another challenge is that Chapter 9 may violate the 10th Amendment because of the lack of individual consent from the state's citizens. *See*, *e.g.*, *New York v. United States,* 505 U.S. 144, 149 (1992) ("[T]he Constitution divides authority between federal and state governments for the protection of individuals.").

33. The resolution of these questions will involve the application of federalism principles to Michigan state law and must be heard by an Article III court.[15] These federal constitutional objections pose difficult legal challenges that are well beyond the scope of the Bankruptcy Court's constitutional authority. *See*, *e.g.*, *Picard v. Flinn Invs., LLC*, 463 B.R. 280, 288 n. 3 (S.D.N.Y. 2011) ("[i]f mandatory withdrawal protects litigants' constitutional interest in having Article III courts interpret federal statutes that implicate the regulation of interstate commerce, then it should also protect, *a fortiori*, litigants' interest in having the Article III courts interpret the Constitution. This conclusion follows from the Constitution, if not from 28 U.S.C. § 157 itself.").

34. One Michigan bankruptcy court has summed up *Stern* as "ultimately about due process." *Moyer v. Koloseik (In re Sutton)*, 470 B.R. 462, 468 (W.D.Mich. 2012) (bankruptcy court could not determine trustee's open account claim without violating defendant's Fifth Amendment right not to be deprived of property without due process of law). "[F]undamental due process" requires that the City retirees have their pension rights dispute resolved by "the independent oversight of an Article III judge." *Id.* at 469. If the City is

[15]That these questions arise under 11 U.S.C. § 109(c) as part of the Bankruptcy Court's determination of the City is eligibility le to be a Chapter 9 debtor does not change anything. Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case." *Stern*, 131 S.Ct. at 2617-18 (bankruptcy court lacked authority to determine debtor's tortious interference claim unless "all of the substantial factual and legal bases" of claim could were be resolved "in passing on objections to the creditor[s]'s proof of claim"); *see also Lehman Bros. Holdings Inc., et al. v. JPMorgan Chase Bank (In re: Lehman Bros., Inc.)*, 480 B.R. 179, 190 (S.D.N.Y. 2012) ("To trigger the "public rights" exception, partial overlap of the action is insufficient, rather a plaintiff must demonstrate that each factual and legal element of its claim will be decided in the claims allowance process such that after the process 'nothing remains for adjudication in a plenary suit.'").


13-53846-swr Doc 806 Filed 09/11/13 Entered 09/11/13 08:38:32 Page 29 of 39

permitted to impair accrued pension benefits in a Chapter 9 proceeding, the retirees will be denied due process.

35. Article III preserves liberty by ensuring that that no property is taken without due process. It is "an inseparable element of the constitutional system of checks and balances" that "defines the power and protects the independence of the Judicial Branch." *Stern*, 131 S.Ct. at 2594. These "structural principles protect the individual as well." *Id*. "Article III could neither serve its purpose in the system of checks and balances nor preserve the integrity of judicial decisionmaking" if the judicial power could be conferred on the other branches of the Federal Government. *Id*. As a result, "congress cannot withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at common law, or in equity, or admiralty." *Id*. at 2612 (internal citations omitted). "If such an exercise of judicial power may nonetheless be taken from the Article III Judiciary simply by deeming it part of some amorphous 'public right,' the Article III would be transformed from the guardian of individual liberty and separation of powers we have long recognized into mere wishful thinking." *Id*. at 2615.

36. Federalism principles also mandate that the Eligibility Objection be heard by an Article III court. Our federalist system of government is designed to enable Congress to exercise its legislative authority directly over individuals rather than states. *New York v. U.S.*, 505 U.S. 144, 166 (1992). This separation ensures political accountability of the respective state and federal branches to the citizenry. *See Printz v. U.S.*, 521 U.S. 898, 920 (1995) (federalism "contemplates that a State's government will represent and remain accountable to its own citizens").

37. The City's own internal correspondence also reveals that political and accountability concerns may have played a role in the decision to proceed with a Chapter 9 filing. In weighing potential courses of action the City's counsel noted that:

> It seems that the ideal scenario would be that Snyder and (Mayor) Bing both agree that the best option is simply to go through an orderly Chapter 9. . . . This avoids an unnecessary political fight over the scope/authority of any appointed emergency manager and, moreover, moves the ball forward on setting Detroit on the right track.[16]

Counsel further noted that making Detroit's bankruptcy a national issue:

> provides political cover for the state politicians . . . . Indeed, this gives them an even greater incentive to do this right because, if it succeeds, there will be more than enough patronage to allow either Bing or Snyder to look for higher callings — whether cabinet, Senate or corporate. Further, this could give you cover and options on the back end to make up for lost time here.

*Id.*

38. The City's counsel's comments highlight the importance of preserving accountability in the Chapter 9 process. Justice White, in his dissent in *Northern Pipeline* expressly anticipated the need for the constitutional protections of an Article III court in precisely this type of situation, where political considerations may be involved:

> Bankruptcy matters are, for the most part, private adjudications of little political significance. Although some bankruptcies may indeed present politically controversial circumstances or issues, Congress has far more direct ways to involve itself in such matters than through some sort of subtle, or not so subtle, influence on

[16] See Matt Helms, Detroit Bankruptcy, Kevyn Orr's Doubts Discussed Weeks Before EM Was Hired, E-mails Show, http://www.freep.com/article/20130722/NEWS01/307220086/Kevyn-Orr-Detroit-bankruptcy-emails.

> bankruptcy judges. Furthermore, were such circumstances to arise, the Due Process Clause might very well require that the matter be considered by an Art. III judge: Bankruptcy proceedings remain, after all, subject to all of the strictures of that constitutional provision.

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858 (1982) (Justice White, dissenting).

39. Numerous parties in addition to the Committee have raised state and federal constitutional challenges to the City's Chapter 9 petition, and argument on most of these issues was set for September 18, 2013. *See* Order, dated Aug. 26, 2013 (Dkt. 642).[17] The determination of these issues by a non-Article III such as the Bankruptcy Court will deny the City's retirees their fundamental due process rights. *Stern* teaches that only an Article III court is vested with constitutional authority to hear and determine the private rights disputes raised by Eligibility Objection -- on which the validity of the City's petition turns. "The Constitution assigns that job -- resolution of "the mundane as well as the glamorous, matters of common law and statute as well as *constitutional law*, issues of fact as well as issues of law" - to the Judiciary." *Stern*. 131 S.Ct. at 2609 (citing *Northern Pipeline*); *see also TTOD Liquidation, Inv. v. Lim (In re Dott Acquisition)*, 2012 WL 3257882, at *4 (E.D.Mich. 2012) (responsibility for deciding matters of common law brought under the federal court's federal jurisdiction "rests with Article III judges in Article III courts").

40. Indeed, the very question of the Bankruptcy Court constitutional authority to "decid[e] whether a matter has in any measure been committed by the constitution to another

[17] The hearing schedule may have changed. *See* n. 5, *supra.*

branch of government . . . is itself a delicate exercise in constitutional interpretation," and the responsibility of an Article III court. *Northern Pipeline*, S.Ct. 458 U.S. 50, 62 (1982). The Eligibility Objection, which poses state and federal constitutional questions concerning private rights, cannot constitutionally be heard and determined by the Bankruptcy Court. The reference to the bankruptcy court for the determination of these questions must therefore be withdrawn.

**B. Withdrawal of the Reference is Mandatory Under 28 U.S.C. § 157(d).**

41. Section 157(d) mandates withdrawal of the reference if "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Here, the "other law" at issue is "[t]he ultimate non-code law," the U.S. Constitution. *Murray v. Warren Cty. Sheriff's Dep't. (In re Avtex Fibers-Front Royal, Inc.)*, 1991 WL 25460, at *2 (E.D.Pa. Feb. 26, 1991) (11th Amendment issue of whether Bankruptcy Code constitutionally abrogated State's sovereign immunity mandated withdrawal). The Committee's challenges to eligibility that Chapter 9 cannot be used to "trump" the Pension Clause in the Michigan Constitution and that subjecting retirees with vested pension rights to federal bankruptcy law implicates the Tenth Amendment and federalism.[18]

42. "An individual has a direct interest in objecting to laws that upset the constitutional balance between the National Government and the States when the enforcement of those laws causes injury that is concrete, particular, and redressable." *Bond v. U.S.*, 131 S. Ct. 2355, 2364 (2011). Chapter 9 "upsets" this balance. At issue here is whether Congress can

[18] The Bankruptcy Court has certified this constitutional challenge to the Attorney Generals of the United States pursuant to 28 U.S.C. § 2403(a). (Dkt. 642, at 7).

validate acts of the Michigan government that are in derogation of Michigan's own sovereign powers and that impair property rights constitutionally guaranteed to Michigan' citizens. If the answer is yes, then retirees will suffer "concrete, particular, and redressable," injury. Furthermore, the determination of whether Chapter 9 permits this impairment will require "substantial and material" consideration of both the U.S. Constitution and federalism principles. *Compare Chao v. Holman (In re Holman)*, 325 B.R. 569, 572–73 (E.D. Ky. 2005) (applying "substantial and material" test) *with Laborer's Pension Trust Fund-Detroit & Vicinity v. Kiefer (In re Kiefer)*, 276 B.R. 196, 202 (E.D.Mich. 2002) (requiring only "consideration" of other federal laws). Furthermore, the Committee's constitutional challenge to the very authority of the bankruptcy to determine the Eligibility Objection in and of itself mandates withdrawal. *See Picard v. Schneiderman, et al. (In re Madoff Securities)*, 492 B.R. 133, 140 (S.D.N.Y. 2013) (mandatory withdrawal would be appropriate *sua sponte* for consideration of "broad issues of federalism and comity" which "should first be heard and decided by an Article III court"); *Picard v. Flinn Invs., LLC*, et al., 463 B.R. 280, 287 n. 3 (S.D.N.Y. 2011) (mandatory withdrawal on question of whether resolution of fraudulent transfer action required an exercise of "judicial Power").

43. The Committee's Tenth Amendment challenge to Chapter 9 also implicates interstate commerce. The Court will be required to examine the limits of Congress' ability under the Tenth Amendment to effect, through Chapter 9, the impairment of pension rights that a state constitutionally guaranteed to its citizens. *See Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 560 (1985) (Commerce Clause permitted, and Tenth Amendment did not prohibit, federal government from regulating state employees). The "organizations and

activities" indirectly regulated by Chapter 9 here -- states, their pension funds and other state fiscal activities -- are engaged in an economic activity, namely, employment and paying wages and other employment benefits. Any restructuring of the City's fiscal activities among a state and its employees and retirees affects interstate and even international commerce. *See U.S. v. Darby*, 312 U.S. 100 (1941) (regulation of employees affects interstate commerce). Withdrawal of the reference is mandatory under section 157(d).

**C. Withdrawal for "Cause" Is Warranted Under 28 U.S.C. § 157(d).**

44. The Bankruptcy Court may withdraw "in whole or in part, any case or proceeding referred under this section . . . for cause shown." 28 U.S.C. § 157(d). The traditional factors in determining "cause" for withdrawal include: (1) whether the claim is core; (2) promoting uniformity of bankruptcy administration; (3) reducing forum shopping; (4) fostering economy; (5) expediting the bankruptcy process; and (6) the timing of the motion for withdrawal. *Bank Midwest, N.A. v. Cyberco Holdings (In re Cyberco Holdings, Inc.)*, 2005 WL 2704508 at *3 (W.D.Mich. Oct. 20, 2005). "If one or more of these factors is present, the court may find that cause exists to withdraw the matter." *Rabin v. Skoda Minotti & Co. (In re Inkstop, Inc.)*, 2012 WL 300626, at *1 (N.D.Ohio Jan. 31, 2012) (quotation and citation omitted).

45. Post-*Stern*, the most relevant factor is whether a bankruptcy court can enter final judgment on the matter. *See*, *e.g.*, *In re Dott Acquisition*, 2012 WL 3257882, at *4 (E.D.Mich. July 25, 2012) (withdrawing the reference for cause under *Stern* because only the district court "has the constitutional authority under Article III to enter a final judgment"). This is logical, since efficiency and uniformity certainly rely on a bankruptcy court's ability to enter final judgment. Since the Bankruptcy Court cannot enter final judgment on the question of its

own authority to enter judgment on the Committee's Eligibility Objection, let alone decide the Objections themselves, "cause" for withdrawal exists. *Cf. Waldman v. Stone*, 698 F.3d 910, 919-21 (6th Cir. 2006) (bankruptcy court entered judgment on debtor's fraud claims in violation of Article III).

46. Withdrawal will promote judicial and party efficiency. Given the stakes for all of the respective parties and the novel issues of state and federal constitutional law raised by this dispute, any decision of the Bankruptcy Court is likely to be appealed. Assuming, *arguendo*, that the Bankruptcy Court has constitutional authority to determine these legal issues, which it does not, they will be subject to *de novo* review. To the extent that any decision is deemed interlocutory it will be subject to certification for interlocutory appeal, because the constitutional challenges to the City's authorization posed by the Committee involves a "controlling question of law as to which there is a substantial ground for difference of opinion." *Schnelling v. Dynamic Sec., Inc. et al., (In re James River Coal Co.)*, 2006 WL 3761965, at *3 (M.D.Tenn. 2006) (applying 28 U.S.C. § 1292(b) standard to 28 U.S.C. § 158(a)(3) request for interlocutory appeal). These concerns are even more particularly implicated where, as here, an unwaivable challenge to the constitutional authority of bankruptcy court to enter final judgment has been made. *Wellness Int'l Network Ltd. v. Sharif*, 2013 WL 4441926, at *1 (7th Cir. Aug. 21, 2013) ("constitutional objection based on *Stern* is not waivable because it implicates separation-of-powers principles").

47. This case arguably presents the most serious constitutional challenge to Chapter 9 since the last municipal bankruptcy code was overturned in *Ashton v. Cameron Cty. Water Dist.*, 298 U.S. 513 (1936). The federalism concerns implicated by the Committee's


13-53846-swr Doc 806 Filed 09/11/13 Entered 09/11/13 09:38:32 Page 36 of 39

constitutional challenges to Chapter 9 also counsel in favor of resolution in an Article III court. The "bankruptcy court's jurisdiction should not be exercised lightly in Chapter 9 cases, in light of the interplay between Congress' bankruptcy power and the limitations on federal power under the Tenth Amendment. . . . access to Chapter 9 relief has been designed to be an intentionally difficult task." *In re Sullivan Cty. Reg'l Refuse Disposal Dist.*, 165 B.R. 60, 82 (Bankr. D.N.H. 1994) (footnote omitted). Any Chapter 9 case warrants jurisdictional scrutiny by an Article III court, and in this case especially, where treatment of a municipality's pension plans -- a subject on which Chapter 9 is silent -- is at issue.

48. Finally, the Bankruptcy Court has no special legal expertise to determine the Eligibility Objection based on novel issues of state and federal constitutional law and related to a newly-enacted state statute. Since this case is less than two months old, the Bankruptcy Court does not yet have a "wealth of knowledge and experience" regarding this case. *Cf. In re Lehman Bros. Holdings, Inc.*, 480 B.R. 179, 196-97 (S.D.N.Y. 2012).

**VI. CONCLUSION**

49. For the foregoing reasons, the Committee requests that their Motion be granted and the District Court enter an order immediately withdrawing the reference of the Eligibility Objection so that they may be heard and determined by the District Court.

Dated: New York, New York
September 11, 2013

Carole Neville
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700

Sam J. Alberts
DENTONS US LLP
1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005-3364

By: /s/ Claude D. Montgomery
Claude D. Montgomery (P29212)
SALANS FMC SNR DENTON
EUROPE LLP
Rockefeller Center

Fax: (212) 768-6800
carole.neville@dentons.com

Tel: (202) 408-6400
Fax: (202) 408-6399
sam.alberts@dentons.com

620 Fifth Avenue
New York, New York 10020
Direct: (212) 632-8390
claude.montgomery@dentons.com

By: /s/ Matthew E. Wilkins
Matthew E. Wilkins (P56697)
Paula A. Hall (P61101)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
Direct: (248) 971-1711
Cell: (248) 882-8496
Fax: (248) 971-1801
wilkins@bwst-law.com
hall@bwst-law.com

*Counsel for the Official Committee of Retirees*

## CERTIFICATE OF SERVICE

I, Matthew E. Wilkins, hereby certify that service of the Motion to Withdraw the Reference and Memorandum of Law in Support of Motion of The Official Committee of Retirees to Withdraw the Reference was filed and served via the Court's electronic case filing and noticing system on September 11, 2013.

*/s/* Matthew E. Wilkins