# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re | Chapter 9 |
| **CITY OF DETROIT, MICHIGAN,** | Case No. 13-53846-swr |
| Debtor. | Hon. Steven W. Rhode |
| _____/ | |

## RESPONSE OF RETIREE ASSOCIATION PARTIES TO DEBTOR'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

The Retired Detroit Police & Fire Fighters Association ("RDPFFA"), and Detroit Retired City Employees Association ("DRCEA"), (collectively, "Retiree Association Parties"), by and through their counsel, Lippitt O'Keefe, PLLC and Silverman & Morris, P.L.L.C., submit their objections and responses to Debtor's First Requests for Production of Documents ("Debtor's First Document Request") as follows:

### PRELIMINARY STATEMENT

The Retiree Association Parties' investigation and discovery in this matter are ongoing. As such, these objections and responses are provided without prejudice to the Retiree Association Parties' right to provide or object to the production of further documents, evidence, and/or information not yet discovered.

The Retiree Association Parties reserve the right to amend and/or supplement these objections and responses to Debtor's First Document Request as additional responsive information is found by way of discovery and/or otherwise.

### GENERAL OBJECTIONS

A. The Retiree Association Parties' responses to Debtor's First Document Request have been prepared in accordance with the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure and pursuant to a reasonably diligent search for the information and/or documents requested. The Retiree Association Parties, collectively, have approximately 18,000 members located around Michigan, the U.S., and the world who collectively generate thousands of documents every year. Many of those members may change membership status, relocate or become unavailable for various reasons; the documents that they generate in the course of their retirement may or may not move with them. The Retiree Association Parties' operations are also run primarily by volunteers. Therefore, the filing and document retention systems are not akin to those of an enterprise with, for example, 18,000 employees. Moreover, because of the breadth of the Retiree Association Parties' membership and long history, responsive information may be maintained in numerous locations and may be moved from time-to-time or destroyed without the knowledge of the Retiree Association Parties. Accordingly, the Retiree Association Parties do not, and could not possibly, represent that these responses reflect or include "all" potentially responsive information and/or documents located anywhere in the world. Rather, the

scope of the investigation conducted to locate responsive information or documents has been limited to making inquiries to those Retiree Association Parties officers, directors and volunteers most likely to be knowledgeable about the specific matters at issue, and to reviewing files and databases in which information related to such matters ordinarily would be expected to be found.  On the basis that this discovery set purports to require or define an investigation that exceeds the foregoing scope, the Retiree Association Parties object thereto on the grounds that such a requirement or definition (i) exceeds the scope of permissible discovery, and (ii) improperly attempts to impose upon the Retiree Association Parties an unreasonable burden and expense and/or duties beyond those required under the applicable court rules.

B.	The Retiree Association Parties reserve the right to amend these responses and to offer related evidence, as additional facts are ascertained, analyses are made, research is completed, and contentions become apparent.  In addition, the Retiree Association Parties will fulfill any obligation to supplement these responses.

C.	Some of the requests contained herein appear to require information that is protected from disclosure by the attorney-client privilege and/or the attorney-work-product doctrine.  In addition, certain of the requests contained herein are so broad or ambiguous that privileged and/or work product information is arguably encompassed within the scope thereof, even though the Retiree Association Parties may not have specifically identified to date any information that is being withheld.  To the extent of

the foregoing, the Retiree Association Parties object to these requests as exceeding the scope of permissible discovery.

D. By submitting these objections and responses, the Retiree Association Parties do not in any way adopt Debtor's purported definitions of words and phrases contained in the Debtor's First Document Request. The Retiree Association Parties object to those definitions to the extent that they are inconsistent with (a) the ordinary and customary meaning of such words and phrases, (b) the rules governing the permissible scope of discovery or (c) the definitions set forth by the Retiree Association Parties in its objections and responses.

E. The Retiree Association Parties do not concede that any of the information or documents it will produce are or will be admissible evidence at trial or any evidentiary hearing. Furthermore, the Retiree Association Parties do not waive any objection, whether or not asserted herein, to the use of any such documents at trial.

F. The Retiree Association Parties object to these requests to the extent they purport to require disclosure of information protected by any claim of privilege (including but not limited to the attorney-client and/or work-product privilege(s)).

G. The Retiree Association Parties object to these requests on the basis that they are oppressive, over broad and/or unduly burdensome.

H. The Retiree Association Parties object to these requests on the basis that they contain erroneous and/or misleading assertions.

Subject to and without waiving its objections, the Retiree Association Parties respond to Debtor's First Requests for Production of Documents to the Retiree Association Parties as follows:

### DOCUMENT REQUESTS

1. All documents relating to the authority of the Retired Detroit Police and Fire Fighters Association ("RDPFFA") to act as the legal representative of retired former employees of the City of Detroit.

**RESPONSE:**

**In addition to restating its general objections as if fully set forth herein, the RDPFFA objects to this request to the extent that (I) it seeks a legal conclusion, (II) it seeks information protected by attorney-client privilege, (III) it seeks information not reasonably calculated to reveal admissible evidence and (IV) it was designed to harass, oppress and unduly burden the RDPFFA.**

**However, without waiving said objections and in the spirit of cooperation, the RDPFFA states as follows:**

**Pursuant to M.C.L. 141.1542(i) (§ 2(i), P.A. 436, 2012) a representative selected by the RDPFFA meets the definition of "interested party" for the purpose of the neutral evaluator process provided for in M.C.L. 141.1565. The RDPFFA is, in that context and, by analogy, in the context of pre-bankruptcy negotiations, the "legal representative" of its constituents and other retirees eligible for membership. In a broader sense, the RDPFFA acts as a conduit for information to its members and other retired Detroit police officers and fire fighters. The RDPFFA has lobbied for its members and for the benefit of non-member retirees. The RDPFFA has been granted legal standing in the courts on behalf of its constituents.** *See, e.g. Hannan v. Detroit City Council*, **2000 WL 33407200 (Mich. App., 2000). The RDPFFA is a Michigan nonprofit corporation incorporated in 1986 but its predecessor organizations have been continually active since 1946. See §2 and §25 of 2012 P.A. 436, which define "interested party" to include "a representative selected by an association of retired employees of the public entity who receive income or benefits from the public entity".**

Copies of those sections of Act 436 and of documents relating to the cited case will be produced upon request.

The RDPFFA has not identified any other document "relating to" authority for it to act as the "legal representative" of any person.

2. All documents relating to the authority of the Detroit Retired City Employees Association ("DRCEA") to act as the legal representative of retired former employees of the City of Detroit.

**RESPONSE:**

**In addition to restating its general objections as if fully set forth herein, the DRCEA objects to this request to the extent that (I) it seeks a legal conclusion, (II) it seeks information protected by attorney-client privilege, (III) it seeks information not reasonably calculated to reveal admissible evidence and (IV) it was designed to harass, oppress and unduly burden the DRCEA. However, without waiving said objections and in the spirit of cooperation, the DRCEA states as follows:**

**Pursuant to M.C.L. 141.1542(i) (§ 2(i),P.A. 436, 2012) a representative selected by the DRCEA meets the definition of "interested party" for the purpose of the neutral evaluator process provided for in M.C.L. 141.1565. The DRCEA is, in that context and, by analogy, in the context of pre-bankruptcy negotiations, the "legal representative" of its constituents and other retirees eligible for membership. In a broader sense, the DRCEA acts as a conduit for information to its members and other retired Detroit city employees. The DRCEA has lobbied for its members and for the benefit of non-member retirees. The DRCEA has been granted legal standing in the courts on behalf of its constituents.** *See, e.g. Hannan v. Detroit City Council*, **2000 WL 33407200 (Mich. App., 2000).**

**Copies of those sections of Act 436 and of documents relating to the cited case will be produced upon request.**

*See also* **Charter of the City of Detroit, § 9-601, which provides that "[r]etired general city employees are entitled to be represented in the city legislative and budgetary proceedings on issues affecting their interests by persons elected by them." The DRCEA board and officers are recognized as persons**

**elected by the retirees. A copy of this provision of the Charter will be produced upon request.**

**The DRCEA has not identified any other document "relating to" authority for it to act as the "legal representative" of any person.**

3. All documents that support the statement in Paragraph 22 of the Retiree Associations' Combined Objections that "retirees are represented and organized through the Retiree associations."

**RESPONSE:**

The Retiree Association Parties restate their general objections as if fully set forth herein. However, without waiving said objections and in the spirit of cooperation, the Retiree Association Parties state that the following documents support the statement that "retirees are represented and organized through the Retiree associations:"

- **(i) Membership lists of the respective Retiree Associations;**

- **(ii) By-Laws of the respective Retiree Associations;**

- **(iii) "Notice and Consent" forms executed by members of the Retiree Associations. The Retiree Associations have gathered thousands of such forms signed by their respective members;**

- **(iv) Minutes of meetings, other organizational records, the websites of the respective Retiree Associations and publications of the respective Retiree Associations;**

- **(v) Newspaper articles, business records, litigation records and other records related to past activities of the Retiree Associations in the nature of litigation, lobbying and negotiation.**

The Retiree Associations will make these documents available for inspection upon reasonable request.

4. All documents relating to any agreement entered into by RDPFFA and the

City of Detroit in which RDPFFA agreed to reduce, limit, or abridge the health benefits provided by the City of Detroit to existing RDPFFA member retirees.

**RESPONSE:**

**In addition to restating its general objections as if fully set forth herein, the RDPFFA objects to this request to the extent that (I) it seeks information protected by attorney-client privilege, (II) it seeks information not reasonably calculated to reveal admissible evidence and (III) it was designed to harass, oppress and unduly burden the RDPFFA. However, without waiving said objections and in the spirit of cooperation, the RDPFFA states that it is not aware of any documents responsive to this request other than a stipulation pursuant to which the RDPFFA withdrew as a plaintiff in the case of** *Weiler et al. v. City of Detroit,* **Wayne County Circuit Court case no. 06-619737-CK. That stipulation is referred to in the Consent Judgment and Order of Dismissal entered in the matter on August 26, 2009. A copy of that Consent Judgment will be furnished. By way of further statement the purpose of the RDPFFA has always been and remains to protect and preserve benefits of retirees, not to reduce such benefits, which cannot be construed to mean that they were not the "natural representatives" to negotiate for the retirees.**

5. All documents relating to any attempt prior to July 19, 2013, by RDPFFA to obtain any form of legal authority from its members to appoint RDPFFA as their representative in connection with negotiations to reduce, limit, or abridge health benefits provided by the City of Detroit to RDPFFA retirees.

**RESPONSE:**

**In addition to restating its general objections as if fully set forth herein, the RDPFFA objects to this request to the extent that (I) it seeks information protected by attorney-client privilege, (II) it seeks information not reasonably calculated to reveal admissible evidence, (III) it contains erroneous or misleading facts that the City was open to or conducted negotiations and (IV) it was designed to harass, oppress and unduly burden the RDPFFA. However, without waiving said objections and in the spirit of cooperation, the RDPFFA states that it is not aware of any documents responsive to this request. By way of**

**further statement the purpose of the RDPFFA has always been and remains to protect and preserve benefits of retirees, not to reduce such benefits, which cannot be construed to mean that they were not the "natural representatives" to negotiate for the retirees.**

**No such negotiation took place, and no such negotiation was proposed or pursued by the City. Therefore, the RDPFFA is not aware of any documents responsive to this request.**

6. All documents relating to any attempt prior to July 19, 2013, by RDPFFA to obtain any form of legal authority from its members to appoint RDPFFA as their representative in connection with negotiations to reduce, limit, or abridge pension rights or benefits – on a prospective basis only – provided by the Police and Fire Retirement System of the City of Detroit ("PFRS").

**RESPONSE:**

**In addition to restating its general objections as if fully set forth herein, the RDPFFA objects to this request to the extent that (I) it seeks information protected by attorney-client privilege, (II) it seeks information not reasonably calculated to reveal admissible evidence, (III) it contains erroneous or misleading facts that the City was open to or conducted negotiations and (IV) it was designed to harass, oppress and unduly burden the RDPFFA. However, without waiving said objections and in the spirit of cooperation, the RDPFFA states that it is not aware of any documents responsive to this request. By way of further statement the purpose of the RDPFFA has always been and remains to protect and preserve benefits of retirees, not to reduce such benefits, which cannot be construed to mean that they were not the "natural representatives" to negotiate for the retirees. The RDPFFA would not take any action to obtain or solicit authority from its members to do something prohibited by the Michigan Constitution.**

**No such negotiation took place, and no such negotiation was proposed or pursued by the City. Therefore, the RDPFFA is not aware of any documents responsive to this request.**

7. All documents relating to any agreement entered into by DRCEA and the City of Detroit in which DRCEA agreed to reduce, limit, or abridge the health benefits provided by the City of Detroit to existing DRCEA retirees.

**RESPONSE:**

**In addition to restating its general objections as if fully set forth herein, the DRCEA objects to this request to the extent that (I) it seeks information protected by attorney-client privilege, (II) it seeks information not reasonably calculated to reveal admissible evidence and (III) it was designed to harass, oppress and unduly burden the DRCEA. However, without waiving said objections and in the spirit of cooperation, the DRCEA states that it is not aware of any documents responsive to this request. By way of further statement the purpose of the DRCEA has always been and remains to protect and preserve benefits of retirees, not to reduce such benefits, which cannot be construed to mean that they were not the "natural representatives" to negotiate for the retirees.**

**No such negotiation took place, and no such negotiation was proposed or pursued by the City. Therefore, the DRCEA is not aware of any documents responsive to this request.**

8. All documents relating to any attempt prior to July 19, 2013 by DRCEA to obtain any form of legal authority from its members to appoint DRCEA their representative in connection with negotiations to reduce, limit, or abridge health benefits provided by the City of Detroit to DRCEA retirees.

**RESPONSE:**

**In addition to restating its general objections as if fully set forth herein, the DRCEA objects to this request to the extent that (I) it seeks information protected by attorney-client privilege, (II) it seeks information not reasonably calculated to reveal admissible evidence and (III) it was designed to harass, oppress and unduly burden the DRCEA. However, without waiving said objections and in the spirit of cooperation, the DRCEA states that it is not aware of any individual with knowledge responsive to this interrogatory. By way of further statement the purpose of the DRCEA has always been and remains to protect and preserve**

**benefits of retirees, not to reduce such benefits, which cannot be construed to mean that they were not the "natural representatives" to negotiate for the retirees.**

**No such negotiation took place, and no such negotiation was proposed or pursued by the City. Therefore, the DRCEA is not aware of any documents responsive to this request.**

9. All documents relating to any attempt prior to July 19, 2013 by DRCEA to obtain any form of legal authority from its members to appoint DRCEA as their representative in connection with DRCEA negotiations to reduce, limit, or abridge pension benefits – on a prospective basis only – provided by the GRS.

**RESPONSE:**

**In addition to restating its general objections as if fully set forth herein, the DRCEA objects to this request to the extent that (I) it seeks information protected by attorney-client privilege, (II) it seeks information not reasonably calculated to reveal admissible evidence, (III) it contains erroneous or misleading facts that the City was open to or conducted negotiations and (IV) it was designed to harass, oppress and unduly burden the DRCEA. However, without waiving said objections and in the spirit of cooperation, the DRCEA states that it is not aware of any documents responsive to this request. By way of further statement the purpose of the DRCEA has always been and remains to protect and preserve benefits of retirees, not to reduce such benefits, which cannot be construed to mean that they were not the "natural representatives" to negotiate for the retirees. The DRCEA would not take any action to obtain or solicit authority from its members to do something prohibited by the Michigan Constitution.**

**The City did not allow for any negotiations. Therefore, the DRCEA is not aware of any documents responsive to this request.**

10. All documents relating to any feedback, criticism, reactions, proposals, or counterproposals made by RDPFFA to the City of Detroit, between March 14, 2013, and July 19, 2013, in connection with a restructuring, reduction, modification, or elimination of any benefits, rights and features of the PFRS, including but not limited to

feedback, criticism, reactions, or counterproposals in response to the proposals the City of Detroit made respecting the PFRS at each of the following meetings:

    a.    The June 14, 2013, City of Detroit Proposal for Creditors;

    b.    The June 20, 2013, presentation by the City of Detroit's professional advisors to the Retirement Systems, unions, and retiree associations; and

    c.    The July 11, 2013, presentation by the City of Detroit's professional advisors to the Retirement Systems, unions, and retiree associations.

**RESPONSE:**

**In addition to restating its general objections as if fully set forth herein, the RDPFFA objects to this request to the extent that (I) it seeks information protected by attorney-client privilege, (II) it seeks information not reasonably calculated to reveal admissible evidence, (III) it contains erroneous or misleading assertions that the City was open and willing to accept "feedback, criticism reactions, proposals or counterproposals" and (IV) it was designed to harass, oppress and unduly burden the RDPFFA. However, without waiving said objections and in the spirit of cooperation, the RDPFFA states as follows:**

**No such opportunity to provide "feedback, criticism reactions, proposals or counterproposal" was offered by the City. Therefore, the RDPFFA is not aware of any documents responsive to this request.**

    11.    All documents relating to any feedback, criticism, reactions, proposals, or counterproposals made by DRCEA to the City of Detroit, between March 14, 2013, and July 19, 2013, in connection with a restructuring, reduction, modification, or elimination of any benefits, rights and features of the GRS, including but not limited to

feedback, criticism, reactions, or counterproposals in response to the proposals the City of Detroit made respecting the GRS at each of the following meetings:

    a.    The June 14, 2013, City of Detroit Proposal for Creditors

    b.    The June 20, 2013, presentation by the City of Detroit's professional advisors to the Retirement Systems, unions, and retiree associations; and

    c.    The July 11, 2013, presentation by the City of Detroit's professional advisors to the Retirement Systems, unions, and retiree associations.[1]

**RESPONSE:**

**In addition to restating its general objections as if fully set forth herein, the DRCEA objects to this request to the extent that (I) it seeks information protected by attorney-client privilege, (II) it seeks information not reasonably calculated to reveal admissible evidence, (III) it contains erroneous or misleading assertions that the City was open and willing to accept "feedback, criticism reactions, proposals or counterproposals" and (IV) it was designed to harass, oppress and unduly burden the DRCEA. However, without waiving said objections and in the spirit of cooperation, the DRCEA states as follows:**

**No opportunity to provide "feedback, criticism reactions, proposals or counterproposal" was afforded by the City. Therefore, the DRCEA is not aware of any documents responsive to this request.**

**Debtor's footnote and classification of the July 11th meeting as being subject to MRE 408 and FRE 408 is of no consequence because there was no negotiation at the meeting and, therefore, no responsive documents.**

---

[1] The July 11, 2013, meeting was conducted pursuant to an agreement regarding Michigan Rule of Evidence and Federal Rule of Evidence 408. Accordingly, these document requests should not be read to include a requirement to disclose documents, to the extent any exist, produced or discussed at such meeting.

12. All documents relating to any feedback, criticism, reactions, proposals, or counterproposals made by RDPFFA to the City of Detroit, between March 14, 2013, and July 19, 2013, in connection with a restructuring, reduction, modification, or elimination of any health benefits provided to existing retiree members of RDPFFA, including but not limited to feedback, criticism, reactions, or counterproposals in response to the proposals the City of Detroit made respecting retiree health benefits at each of the following meetings:

    a. The June 14, 2013, City of Detroit Proposal for Creditors;

    b. The June 20, 2013, presentation by the City of Detroit's professional advisors to the Retirement Systems, unions, and retiree associations; and

    c. The July 11, 2013, presentation by the City of Detroit's professional advisors to the Retirement Systems, unions, and retiree associations.

**RESPONSE:**

**In addition to restating its general objections as if fully set forth herein, the RDPFFA objects to this request to the extent that (I) it seeks information protected by attorney-client privilege, (II) it seeks information not reasonably calculated to reveal admissible evidence, (III) it contains erroneous or misleading assertions that the City was open and willing to accept "feedback, criticism reactions, proposals or counterproposals," and (IV) it was designed to harass, oppress and unduly burden the RDPFFA. However, without waiving said objections and in the spirit of cooperation, the RDPFFA states as follows:**

**No opportunity to provide "feedback, criticism reactions, proposals or counterproposal" was afforded by the City. Therefore, the RDPFFA is not aware of any documents responsive to this request.**

13. All documents relating to any feedback, criticism, reactions, proposals, or counterproposals made by DRCEA to the City of Detroit, between March 14, 2013, and July 19, 2013, in connection with a restructuring, reduction, modification, or elimination of any health benefits provided to existing retiree members of DRCEA, including but not limited to feedback, criticism, reactions, or counterproposals in response to the proposals the City of Detroit made respecting retiree health benefits at each of the following meetings:

    a. The June 14, 2013, City of Detroit Proposal for Creditors;

    b. The June 20, 2013, presentation by the City of Detroit's professional advisors to the Retirement Systems, unions, and retiree associations; and

    c. The July 11, 2013, presentation by the City of Detroit's professional advisors to the Retirement Systems, unions, and retiree associations.

**RESPONSE:**

**In addition to restating its general objections as if fully set forth herein, the DRCEA objects to this request to the extent that (I) it seeks information protected by attorney-client privilege, (II) it seeks information not reasonably calculated to reveal admissible evidence, (III) it contains erroneous or misleading assertions that the City was open and willing to accept "feedback, criticism reactions, proposals or counterproposals," (IV) it incorrectly asserts that the DRCEA attended the June 14, 2013, meeting and (V) it was designed to harass, oppress and unduly burden the DRCEA. However, without waiving said objections and in the spirit of cooperation, the DRCEA states as follows:**

**No opportunity to provide "feedback, criticism reactions, proposals or counterproposal" was afforded by the City. Therefore, the DRCEA is not aware of any documents responsive to this request.**

14. All documents relating to any research, studies, or analysis conducted by, requested, reviewed, or received by any Retiree Association Party regarding the City of Detroit's financial health, including but not limited to, the City's cash flow, budgets, projected budgets, ability/inability to pay its debts when they become due, or ability/inability to provide civic services.

**RESPONSE:**

**In addition to restating their general objections as if fully set forth herein, the Retiree Association Parties object to this request to the extent that it seeks information protected by attorney-client privilege. Information protected as attorney-client communications would be responsive insofar as some of the analysis was communicated between the Associations and their attorneys for the purpose of the development of their strategy in this matter. The Retiree Association Parties object to the request as not being reasonably calculated to lead to the discovery of admissible evidence in that few of the numerous sources of information consulted by the Retiree Association Parties would be admissible through witnesses offered by the Retiree Association Parties. Further, the request is unduly burdensome because the Retiree Association Parties have a number of officers and directors, attorneys and other advisors and it would be impracticable for the attorneys for the Retiree Association Parties to interview each of these persons and have each of them compile every document, without time limitation, relating to the City's financial health. The topic is broad and the number of potential documents uncountable. However, without waiving said objections and in the spirit of cooperation, the Retiree Association Parties, through their officers, directors, attorneys and members, have reviewed and studied documents relating to the City's financial health. Those documents include documents provided by the City, other documents obtained through discovery in this matter, and other sources such as news articles and analyses. The City has most of those same documents available to it. Thus, this request to the Retiree Association Parties is objected to as being for the purpose of harassing or burdening the Retiree Association Parties.**

Respectfully submitted,

**SILVERMAN & MORRIS, P.L.L.C.**

By: */s/ Thomas R. Morris*
THOMAS R. MORRIS (P39141)
KARIN F. AVERY (P45364)
30500 Northwestern Highway, Suite 200
Farmington Hills, Michigan 48334
 (248) 539-1330   Fax:  (248) 539-1355
morris@silvermanmorris.com
avery@silvermanmorris.com

**LIPPITT O'KEEFE, PLLC**
Brian D. O'Keefe (P39603)
Ryan C. Plecha (P71957)
Attorneys for Retiree Association Parties
370 East Maple Road, 3rd Floor
Birmingham, Michigan 48009
(248) 646-8292   Fax:  (248) 646-8375
bokeefe@lippittokeefe.com
rplecha@lippittokeefe.com

Dated:  September 13, 2013          *Counsel for Retiree Association Parties*