**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re | : | |
| | : | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | : | |
| | : | Case No. 13-53846 |
| Debtor. | : | |
| | : | Hon. Stephen W. Rhodes |

**MOTION BY OFFICIAL COMMITTEE OF RETIREES TO STAY DEADLINES AND THE HEARINGS CONCERNING A DETERMINATION OF ELIGIBILITY PENDING DECISION ON MOTION TO WITHDRAW THE REFERENCE**

The Official Committee of Retirees (the "Committee"), by and through its undersigned counsel, hereby moves this Court pursuant to Rule 5011(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of the proposed order attached hereto as Exhibit 1 granting a stay of all deadlines and the trial concerning a determination of the City of Detroit, Michigan's (the "City") eligibility to pursue this bankruptcy proceeding pursuant to Section 109 of Title 11 of the United States Code (the "Bankruptcy Code"), pending a decision by the United States District Court for the Eastern District of Michigan (the "District Court") on the Committee's motion to withdraw the reference (the "Withdrawal Motion") (Dkt. 806), and in support states:

## I. PRELIMINARY STATEMENT

The Committee has, by a separate pleading raised various objections, including state and federal constitutional objections, to the City's eligibility for Chapter 9 relief. (Dkt. 805) (the "Eligibility Objection"), and has moved to withdraw the reference of the Eligibility Objection to an Article III Court. While the Bankruptcy Court may properly adjudicate pure bankruptcy matters, the Bankruptcy Court is one of limited jurisdiction and lacks authority to

enter a final order on critical state and non-bankruptcy federal law issues raised by the Committee. Among these objections are that the City's proposed impairment of vested private rights of retirees is in contravention of the Michigan State Constitution and the Tenth Amendment of the U.S. Constitution. Withdrawal also is proper because a non-Article III court cannot determine the Constitutional limits of its own jurisdiction, especially in light of the U.S. Supreme Court's decision in *Stern v. Marshall*, 131 S.Ct. 2594 (2011) and the fact that constitutionally protected private rights stand to be affected by an eligibility determination authorizing the City to proceed with its bankruptcy.

Thus, a stay of the current eligibility determination schedule and hearing date is not only just and proper, but is necessary to protect retirees who are threatened by irreparable harm.

## II. JURISDICTION

1. This Court has jurisdiction to consider the stay relief requested in this motion (the "Motion") pursuant to 28 U.S.C. § 1334(b) and Federal Rule of Bankruptcy Procedure 5011(c).

## III. BACKGROUND

2. On March 14, 2013, Governor Richard D. Synder appointed Kevyn D. Orr as the City's emergency financial manager pursuant to Public Act 72 of 1990, the Local Government Fiscal Responsibility Act, M.C.L. §141.1201, *et seq*. On March 28, 2013, Mr. Orr automatically became emergency manager (the "EM") upon the effectiveness of Michigan's most recent emergency manager law, Public Act 436, the Local Financial Stability and Choice Act, M.C.L. §141.1541, *et seq*. ("PA 436"). The EM is not an elected official.

3. PA 436 provides that if, in the judgment of the EM, no reasonable alternative to rectifying the financial emergency of the local government which is in receivership exists, then the EM may recommend to the governor and state treasurer that the local government be

authorized to proceed under Chapter 9. If the governor approves of the recommendation, the governor shall inform the state treasurer and EM in writing of the decision. Upon receipt of this written approval, the EM is authorized to proceed under Chapter 9.

4. The Michigan State Constitution ("Michigan Constitution") categorically prohibits state governmental authorities and its municipal subdivisions from modifying accrued pension benefits and specifically provides that:

> The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which **shall not be diminished or impaired thereby**.
>
> Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities.

Mich. Const. art. IX, § 24 (emphasis added); *see also In re Enrolled Senate Bill* 1269, 209 N.W.2d 200, 202 (Mich. 1973) ("[U]nder [art. IX, § 24] constitutional limitation the legislature cannot diminish or impair accrued financial benefits.").

5. The EM has presented a "Proposal for Creditors" (the "City Proposal"). (Dkt. 11, Ex. A). The City Proposal estimates the City's unfunded pension liabilities at $3.5 billion and provides that claims for underfunding will be exchanged for a pro-rata principal amount of new notes. *Id.* The City Proposal also notes that "there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons." *Id.* The EM also proposes to modify the medical benefits of current retirees (some of whom may not be covered by social security or Medicare), and to satisfy those claims as well with a pro-rata distribution of Notes. *Id.* Furthermore, in violation of the statutory requirement that the EM "shall provide for" the "timely deposit of required payments to the pension fund for the local government or in which

the local government participates," M.C.L. § 141.1551(1)(d), the Creditor Proposal provides that such payments "will not be made under the plan." *Id.*

6. Moments after the City's Chapter 9 filing, a Michigan Circuit Court judge found that the plaintiffs in several state court actions contesting the validity of PA 436 were likely to succeed on the merits and would be irreparably harmed if a preliminary injunction were not granted and entered a preliminary injunction enjoining, *inter alia*, the Governor and the Emergency Manager from taking any action to impair accrued pension benefits. The following day the Circuit Court issued a declaration that PA 436 is unconstitutional to the extent that it purports to authorize the City to impair accrued pension benefits, and that Article IX of the Michigan Constitution prohibits the Governor from authorizing the EM to impair pension benefits in a Chapter 9 proceeding. *Flowers, et al. v. Snyder, et al*., Case No. 13-729-CZ (Cir.Ct. Ingham Cty. July 8, 2013) (Dkts. 438-14-15); *The General Ret. Sys. of the City of Detroit, et al v. Orr et al*., Case No 13-768-CZ (Cir.Ct. Ingham Cty. July 17, 2013); *Webster v. State of Michigan*, No. 13-734-CZ (Cir. Ct. Ingham Cty. July 19, 2013). The Michigan Circuit court judgment has been stayed due to the Chapter 9 filing.

7. As noted above, the Committee filed its Withdrawal Motion on September 11, 2013. (Dkt. 806). In the Withdrawal Motion, the Committee requested that the Eligibility Objection, which raises issues under both the Michigan Constitution and U.S. Constitution, be heard by an Article III Court and determined by the review of an Article III judge.

8. Stay relief during the pendency of the determination of the Withdrawal Motion is warranted. In the absence of such a stay, the Committee may suffer the loss of rights guaranteed by Article III of the U.S. Constitution. Furthermore, any appeal from an order for relief would not stay proceedings in the Bankruptcy Court. It may also find its Constitutional challenges to

eligibility equitably mooted through confirmation of a plan of reorganization on appeal and therefore bound by the decisions of a non-Article III Court in contravention of basic due process rights to an Article III Court.

## IV. RELIEF REQUESTED

9. The Committee seeks the entry of an order pursuant to Bankruptcy Rule 5011(c) staying all hearing deadlines and the trial date concerning a determination of the City's eligibility to file this bankruptcy proceeding pending a decision by the District Court on the Withdrawal Motion, and granting such other and further relief to the Committee as the Court may deem just and proper.

## V. BASIS FOR RELIEF

10. The Committee has filed its motion to withdraw the reference to preserve important constitutional rights that are both economic and life preserving. Retirement compensation in the form of pension benefits and medical insurance is critical for municipal retirees who are not eligible for either social security or Medicare. Promises made by the City and protected by the Michigan Constitution are in some cases literally all that keeps retirees alive. A stay should be granted so that these private rights, which are not dependent upon the largess of the federal government, can be reviewed by a Court with the Article III authority to resolve them. *See Stern v. Marshall*, 131 S.Ct. at 2615.

11. In determining whether a stay should issue pursuant to Bankruptcy Rule 5011(c), the Court is to apply the familiar factors of: (i) the Committee's likelihood of success on the merits, (ii) whether the City's retirees and pensioners will be irreparably harmed if the stay is not granted; (iii) the harm to the City if a stay is granted, and (iv) the public interest. *Miller v. Vigilant Ins. Co.* (*In re Eagle Enters., Inc.*), 259 B.R. 83, 86 (Bankr. E.D. Pa. 2001); *Vieira v. Anderson (In re Beach First Nat'l Bancshares, Inc.)*, Adv. Proc. No. 10-80143, 2011 Bankr.

LEXIS 2691, at *4 (Bankr. D.S.C. Jan. 21, 2011); *see also Moltan Co. v. Eagle-Picher Indus., Inc*., 55 F.3d 1171, 1175 (6th Cir. 1995) (affirming preliminary injunction under F.R.C.P. 65); *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) (granting stay pending appeal under FRAP 8). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coalition of Radioactive Material Users, Inc*., 945 F.2d at 153. For example, "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury . . . absent the stay. Simply stated, more of one excuses less of the other" and a stay may issue so long as "more than the mere 'possibility' of success on the merits" is shown. *Id.*

### A. The Committee is Likely to Succeed on the Merits of the Withdrawal Motion Because the Issues are of a Constitutional Nature

12. Matters of a constitutional nature are to be decided by an Article III court. *See TTOD Liquidation, Inv. v. Lim (In re Dott Acquisition*), No. 12-12133, 2012 WL 3257882, at *4 (E.D.Mich. July 25, 2012) (withdrawing the reference under *Stern* and for cause "because only [the district] court has the constitutional authority under Article III to enter a final judgment"); *Northern Pipeline*, S.Ct. 458 U.S. 50, 62 (1982); *Picard v. Schneiderman, et al. (In re Madoff Securities)*, 492 B.R. 133, 140 (S.D.N.Y. 2013) (mandatory withdrawal would be appropriate sua sponte for consideration of "broad issues of federalism and comity" which "should first be heard and decided by an Article III court"); *Picard v. Flinn Invs., LLC*, et al., 463 B.R. 280, 287 n. 3 (S.D.N.Y. 2011) (mandatory withdrawal on question of whether resolution of fraudulent transfer action required an exercise of "judicial Power"). This issue alone warrants a stay of the bankruptcy proceedings.

13. In fact, only the threat of a violation of constitutional rights is generally needed to find a sufficient likelihood of success on the merits. *See Obama for Am. v. Husted*, 697 F.3d

423, 436-37 (6th Cir. 2012) (affirming grant of preliminary injunction and holding that a likelihood of success on the merits was shown based upon prospective violation of constitutional rights, where Ohio early voting law provided for disparate treatment but voting deadline had not yet passed); *Planned Parenthood Ass'n of Cincinnati, Inc. v. The City of Cincinnati*, 822 F.2d 1390, 1399 (6th Cir. 1987) (affirming grant of preliminary injunction and holding that reasonable fear of prosecution for violation of allegedly unconstitutional city ordinance that had not yet come into effect constituted likelihood of success on the merits). Here the threat is three-fold: (i) retirees may be deprived of rights protected under the Michigan Constitution; (ii) determinations of constitutional law will be made by a non-Article III Court, and (iii) the Committee has not consented to have the Eligibility Objection heard by the Bankruptcy Court.

14. The Withdrawal Motion also raises a serious question whether, in light of recent Supreme Court precedent, Chapter 9 violates the Tenth Amendment to the U.S. Constitution in a broader manner. "Fundamental due process" requires that the City retirees have their pension rights dispute resolved by "the independent oversight of an Article III judge." *Moyer v. Koloseik (In re Sutton)*, 470 B.R. 462, 468 (W.D.Mich. 2012). The City Proposal, if effected in a Chapter 9 proceeding in a non-Article III court, would deny the City's retirees this due process. Resolution of this question will have profound implications for municipalities, and creditors of municipalities, across the nation and must be made by an Article III court.

15. Article III preserves liberty because it ensures that that no property is taken without due process. It is "an inseparable element of the constitutional system of checks and balances" that "defines the power and protects the independence of the Judicial Branch." *Stern*, 131 S.Ct. at 2608. These "structural principles …. protect the individual as well." *Id.* at 2609 "Article III could neither serve its purpose in the system of checks and balances nor preserve the

integrity of judicial decision making" if the judicial power could be conferred on the other branches of the Federal Government. *Id.* As a result, "congress cannot withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at common law, or in equity, or admiralty." *Id.* at 2612 (internal citations omitted). "If such an exercise of judicial power may nonetheless be taken from the Article III Judiciary simply by deeming it part of some amorphous 'public right,' the Article III would be transformed from the guardian of individual liberty and separation of powers we have long recognized into mere wishful thinking." *Id.* at 2598.

16. Our federalist system of government is designed to enable Congress to exercise its legislative authority directly over individuals rather than states. *New York v. U.S.*, 505 U.S. 144, 166 (1992). This separation ensures political accountability of the respective state and federal branches to the citizenry. *See Printz v. U.S.*, 521 U.S. 898, 920 (1995) (federalism "contemplates that a State's government will represent and remain accountable to its own citizens"). The City's own internal correspondence reveals that political and accountability concerns may have played a role in the decision to proceed with a Chapter 9 filing. In considering potential courses of action the City's counsel noted that:

> It seems that the ideal scenario would be that Snyder and (Mayor) Bing both agree that the best option is simply to go through an orderly Chapter 9. . . . This avoids an unnecessary political fight over the scope/authority of any appointed emergency manager and, moreover, moves the ball forward on setting Detroit on the right track.[1]

Counsel further noted that making Detroit's bankruptcy a national issue:

[1] *See* Matt Helms, Detroit Bankruptcy, Kevyn Orr's Doubts Discussed Weeks Before EM Was Hired, E-mails Show, http://www.freep.com/article/20130722/NEWS01/307220086/Kevyn-Orr-Detroit-bankruptcy-emails.

> It provides political cover for the state politicians . . . . Indeed, this gives them an even greater incentive to do this right because, if it succeeds, there will be more than enough patronage to allow either Bing or Snyder to look for higher callings — whether cabinet, Senate or corporate. *Further, this could give you cover and options on the back end to make up for lost time here*.

*Id.*

17. Federalism principles also mandate that the Eligibility Objections be heard by an Article III court. The determination of these issues by a non-Article III court will violate the fundamental due process rights of the retirees. The Eligibility Objection involves questions of private rights that exist wholly independently of a bankruptcy proceeding. *Stern v. Marshall* confirms that only an Article III court is vested with constitutional authority to hear and determine these issues - on which the validity of the City's authorization to file a Chapter 9 petition turns.

18. At issue here is whether Congress can validate acts of the Michigan government that are in derogation of Michigan's own sovereign powers and that impair property rights constitutionally guaranteed to Michigan's citizens. If the answer is yes, then retirees will suffer "concrete, particular, and redressable" injury. Furthermore, the determination of whether Chapter 9 permits this impairment will require "substantial and material" consideration of both the U.S. Constitution and federalism principles.

19. Finally, the Committee's challenge to the bankruptcy court's constitutional authority to determine the Eligibility Objection in and of itself mandates withdrawal. *See Picard v. Schneiderman, et al.*, 492 B.R. at 140; *Picard v. Flinn Invs., LLC, et al.*, 463 B.R. at 287 n. 3.

20. The Committee's Tenth Amendment challenge to Chapter 9 also implicates interstate commerce. Resolution of this issue will require this Court to examine the limits under the Tenth Amendment of Congress' ability to effect, through Chapter 9, the impairment of

pension rights that a state has constitutionally guaranteed to its citizens. *See Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 560 (1985) (Commerce Clause permitted, and Tenth Amendment did not prohibit, federal government from regulating state employees). The "organizations and activities" indirectly regulated by Chapter 9 here - states, their pension funds and other state fiscal activities - are engaged in an economic activity, namely, employment and paying wages and other employment benefits. Any restructuring of the fiscal activities among a state and its employees affects interstate commerce. *See e.g. U.S. v. Darby*, 312 U.S. 100 (1941) (regulation of employees affects interstate commerce). Withdrawal of the reference is therefore mandatory under section 157(d). While the decision of the Michigan State Court which sought to stay the filing of Chapter 9 issued after such filing, it bears noting that that Court found the Retirees had a high probability of success on the merits on the Constitutional issues raised. The Retirees clearly meet this requirement for the issuance of a stay.

### B. The Committee's Constituency Will be Irreparably Injured if the Stay is Not Granted

#### i. Individuals Entitled to Vested Retirement Benefits Will be Irreparably Injured by the City's Violation of Their Constitutional Rights

21. Constitutional "rights are so fundamental to our legal system and to our society that any violation thereof will cause irreparable harm irrespective of the financial impact." *Bannum, Inc. v. City of Memphis*, 666 F. Supp. 1091, 1096 (W.D. Tenn. 1986); *see Stile v. Copley Township, Ohio*, 115 F. Supp. 2d 854, 865 (N.D. Ohio 2000) (*quoting Bannum, Inc.*, 666 F. Supp. at 1096); *Obergefell v. Kasich*, No. 13-cv-501, 2013 U.S. Dist. LEXIS 102077, at *16–17 (S.D. Ohio July 22, 2013). Stated otherwise, "if it is found that a constitutional right is being threatened or impaired, a finding of irreparably injury is mandated." *Hillside Productions, Inc. v. Duchane*, 249 F. Supp. 2d 880, 900 (E.D. Mich. 2003) (granting preliminary injunction and

finding irreparable injury based upon likelihood of success on the merits of alleged violations of constitutional rights); *see Obama for Am*., 697 F.3d at 436 (similar); *River Oaks Mgmt. v. Brown*, Civ. Action No. 06-00451, 2007 U.S. Dist. LEXIS 65286, at *24 (W.D. Ky. Sept. 4, 2007) (similar).

22. As with the likelihood of success on the merits, a prospective violation of constitutional rights supports a finding of irreparably injury. *See Obama for Am*., 697 F.3d at 436; *Planned Parenthood Ass'n of Cincinnati, Inc*., 822 F.2d at 1400. A monetary award for any erroneous determination as to the protected status of retirement compensation is not sufficient under these circumstances. *See Hillside Productions, Inc*., 249 F. Supp. 2d at 900 (Such "arguments are to no avail. . . . . [W]hen reviewing a motion for a preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated.") (*quoting Bonnell v. Lorenzo*, 241 F. 3d 800, 809 6th Cir. 2001); *Stile v Copley*, 115 F. Supp. 2d 854, 865 (granting preliminary injunction after finding irreparably injury due to violation of constitutional rights despite financial harm that would be caused by loss of a contract with GMC to build automobile dealerships on property); *Bannum, Inc*., 666 F. Supp. at 1093, 1096 (granting injunction after finding of irreparable injury due to violation of constitutional rights despite financial harm caused by disruption of services provided by community treatment center); *River Oaks Mgmt*., 2007 U.S. Dist. LEXIS 65286, at *23 (granting injunction after finding of irreparable injury due to violation of constitutional rights despite that state statute "ensure[d] that virtually all commissions [on sales of real estate in Kentucky] are kept in Kentucky. This is achieved, however, at an unconstitutional cost to interstate commerce.").

### ii. Individuals Entitled to Vested Retirement Benefits Will be Irreparably Injured by the City's Curtailment of Their Retirement Benefits

23. The EM has threatened to cut off all City provided retiree medical and other health related coverage and to drastically reduce pension benefits used for ordinary living expenses. According to the EM, "there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons." *See* June 14 Proposal to Creditors. (Dkt. 11-1, Ex. A at 109) ("City Proposal"). Ultimately, the risk is the loss of life-preserving or even life-enhancing retirement compensation in the form of pension benefits for ordinary living expenses and City provided medical insurance for individuals not eligible for social security, Medicare and without additional resources. The City's effort to shift costs to retirees by attempting to cut their retirement compensation benefits, including pensions and healthcare benefits, either through elimination of certain insurance coverages or increase in the cost of modified coverage, constitutes irreparable injury in several ways. First, retirees with limited means may forego necessary medical treatment due to the inability to pay increased costs of healthcare. *Schalk v. Teledyne, Inc*., 751 F. Supp. 1261, 1268 (W.D. Mich. 1990); *Welch v. Brown*, No. 12-13808, 2013 U.S. Dist. LEXIS 45681, at *31-32 (E.D. Mich. Mar. 29, 2013); *Merkner v. AK Steel Corp*., Case No. 09-423, 2010 WL 373998, at *5 (S.D. Ohio Jan. 29, 2010).

24. Second, vulnerable and elderly retirees will find it impossible to know the cost of medical expenses and to budget or pay for them, adding emotional anxiety to the harms that the Michigan Constitution intended to prevent. *See Schalk*, 751 F. Supp. at 1268; *Merkner*, 2010 WL 373998, at *5.

25. Third, under the City Proposal, retirees may be forced to forego basic living necessities on account of the increased cost of their life preserving medical treatment. *Schalk*, 751 F. Supp. at 1268; Welch, 2013 U.S. Dist. LEXIS 45681, at *31–32; *Merkner*, 2010 WL

373998, at *5. "The reduction in or denial of medical treatment and services at a time in life when it is critical to [the retirees'] welfare exacerbates the harm." *Merkner*, 2010 WL 373998, at *5.

26. The Michigan State Court already determined, based solely on the Michigan Constitution, that retirees would be irreparably harmed because they would lose constitutionally protected property rights under Michigan law. If the Stay is not granted, the Retirees may also lose the U.S. Constitutional right to have the Constitutional issues decided by an Article III Court.

**C. Irreparable Injury to the Individuals Entitled to Vested Retirement Benefits Outweighs the Minimal Inconvenience to the City Caused by the Stay**

27. For the City the only injury is the choice of forum to decide issues such as the constitutionality of PA 436 in light of the legislative desire to override the Michigan's constitutional protections for retirement benefits as found in Article IX, §24. When an act is prohibited by [law] . . . the public interest is best served by preventing the prohibited act." *Schalk*, 751 F. Supp. at 1268. In the process of determining which court should hear the eligibility challenges, the City does not lose any constitutional rights or protections

28. By virtue of the Michigan constitution the City is forced to continue its promised benefits to individuals who may have worked 30 or more years for the city and repeatedly put their health and lives at risk, for the City and its citizens. As a result, the balance tips in favor of the retirees. The additional cost to the City of honoring its promises to pay for retirees' healthcare benefits is far outweighed by the harm to retirees of having to go without medical care or basic necessities. *Schalk*, 751 F. Supp. at 1268 ("I am unconvinced that this harm outweighs that of a retiree forced to go without medical care, or forced to choose between the basic necessities of life in order to pay his or her medical deductibles and co-pays or life insurance.");

*Merkner*, 2010 WL 373998, at *5 ("[T]he financial impact on Defendants being required to continue to pay these benefits [pending determination of a final judgment] is far less than the financial burden that would be placed on Plaintiffs if their request for a preliminary injunction is denied.").

**D. Public Interest Weighs Decidedly in Favor of Granting a Stay**

29. "[U]pholding federal constitutional rights by assuring that local government authorities do not act beyond the scope of their authority undoubtedly serves the public interest. . . ." *Stile*, 115 F. Supp. 2d at 866; *see Obergefell*, 2013 U.S. Dist. LEXIS 102077, at *20 ("public interest is promoted by the robust enforcement of constitutional rights"); *River Oaks Mgmt.*, 2007 U.S. Dist. LEXIS 65286, at *24 (holding that public interest weighed in favor of granting preliminary injunction due to likelihood of success on the merits of alleged violations of constitutional rights). In addition, there are serious issues regarding the balance of sovereignty issues and whether the legislature or the State's executives may ignore the right of the people of Michigan to control or limit waivers of state sovereignty.

30. The public interest weighs decidedly in favor of Constitutional protections afforded by Article IX, §24 of the Michigan constitution. Such protection of promised retirement benefits gives rise to the retirees' legitimate expectations that the City would continue to provide healthcare benefits as required. *Merkner*, 2010 WL 373998, at *5 ("The public interest lies in protecting the legitimate expectations of retirees that their health insurance will be provided. . . ."). Only an Article III court should decide whether the federal government may play any role in the deprivation of such rights.

## VI. NO PRIOR REQUEST

31. No prior motion or application for the relief requested herein has been made to this or any other Court. Concurrence of counsel for the City in the relief sought was requested on September 9, 2013 but concurrence was not obtained.

## VII. CONCLUSION

WHEREFORE, the Committee respectfully requests that this Court grant this Motion and enter the proposed order staying all deadlines, excepting discovery deadlines, and the trial concerning a determination of the City's eligibility to file this bankruptcy proceeding pending a decision by the District Court on the Withdrawal Motion, and granting such other and further relief to the Committee as the Court may deem just and proper.

Dated: September 13, 2013

Carole Neville
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800
carole.neville@dentons.com

Sam J. Alberts
DENTONS US LLP
1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005-3364
Tel: (202) 408-6400
Fax: (202) 408-6399
sam.alberts@dentons.com

By: /s/ Claude D. Montgomery
Claude D. Montgomery (P29212)
SALANS FMC SNR DENTON EUROPE LLP
Rockefeller Center
620 Fifth Avenue
New York, New York 10020
Direct: (212) 632-8390
claude.montgomery@dentons.com

By: /s/ Matthew E. Wilkins
Matthew E. Wilkins (P56697)
Paula A. Hall (P61101)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
Direct: (248) 971-1711
Cell: (248) 882-8496
Fax: (248) 971-1801
wilkins@bwst-law.com
hall@bwst-law.com

*Counsel for the Official Committee of Retirees*