**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

```
-------------------------------------------------------x
                                        :
In re                                   :    Chapter 9
                                        :
CITY OF DETROIT, MICHIGAN,              :    Case No. 13-53846
                                        :
                      Debtor.           :    Hon. Steven W. Rhodes
                                        :
                                        :
-------------------------------------------------------x
```

**CITY OF DETROIT'S REPLY TO THE**
**OBJECTION OF THE OFFICIAL COMMITTEE OF**
**RETIREES TO THE ENTRY OF AN ORDER FOR RELIEF**

# TABLE OF CONTENTS

I.      Preliminary Statement ...................................................................................1

II.     The Pensions Clause Does Not Invalidate the City's
        Clear Authorization to Be a Debtor Under Chapter 9 ...................................3

        A.      No Pensions Have Been Diminished or Impaired ..............................3

        B.      The Pensions Clause Does Not Preclude a Michigan
                Municipality from Commencing a Chapter 9 Case ...........................5

                1.      By Its Plain Terms, the Pensions Clause
                        Does Not Affect Actions in Chapter 9 ...................................5

                2.      Pensions Are Entitled to No More
                        Protection Than Contractual Obligations ..............................7

                3.      On the City's Reading, No Part
                        of the Pensions Clause Is Superfluous ...................................9

III.    Chapter 9 Is Not Unconstitutional ..............................................................13

IV.     The City Has Satisfied Sections 109(c)(5)
        and 921(c) of the Bankruptcy Code ...........................................................16

        A.      The City's Petition Was Filed in Good Faith ...................................17

        B.      The City Negotiated with Its Creditors in Good Faith .....................18

        C.      Negotiations with the City's Creditors Were Impracticable .............20

V.      Conclusion ...................................................................................................22

# TABLE OF AUTHORITIES

**CASES**

Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,
548 U.S. 291 (2006)............................................................................11

Ass'n of Prof'l & Technical Emps. v. City of Detroit,
398 N.W.2d 436 (Mich. Ct. App. 1986)..............................................8

Ass'n of Retired Emps. v. City of Stockton
(In re City of Stockton),
478 B.R. 8 (Bankr. E.D. Cal. 2012)...................................................15

Bond v. United States,
131 S. Ct. 2355 (2011)......................................................................15

Bruesewitz v. Wyeth LLC,
131 S. Ct. 1068 (2011)......................................................................13

Coca-Cola Bottling Co. of N.Y., Inc. v.
Soft Drink & Brewery Workers Union Local 812,
242 F.3d 52 (2d Cir. 2001) ........................................................ 10-11

Conn. Nat'l Bank v. Germain,
503 U.S. 249 (1992)..........................................................................11

In re Constitutionality of 2011 PA 38,
806 N.W.2d 683 (Mich. 2011)............................................................7

In re Enrolled Senate Bill
(Advisory Opinion re Constitutionality of 1972 PA 258),
209 N.W.2d 200 (Mich. 1973) ...........................................................7

In re Sullivan Cnty. Reg'l Refuse Disposal Dist.,
165 B.R. 60 (Bankr. D.N.H. 1994)...................................................19

Kosa v. State Treasurer,
292 N.W.2d 452 (Mich. 1980)............................................................7

Krause v. Titleserv, Inc.,
402 F.3d 119 (2d Cir. 2005) .............................................................11

13-53846-tjt   Doc 918   Filed 09/17/13   Entered 09/17/13 17:30:04   Page 3 of 28

Lamie v. U.S. Tr.,
    540 U.S. 526 (2004)................................................................11

Microsoft Corp. v. i4i Ltd. P'ship,
    131 S. Ct. 2238 (2011)...........................................................12

Musselman v. Governor of Mich.,
    533 N.W.2d 237 (Mich. 1995)..................................................8

New York v. United States,
    505 U.S. 144 (1992)..............................................................14

Printz v. United States,
    521 U.S. 898 (1997)..............................................................14

Rodriguez de Quijas v. Shearson/Am. Express, Inc.,
    490 U.S. 477 (1989)..............................................................13

Shook v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.,
    132 F.3d 775 (D.C. Cir. 1998).................................................10

United States v. Bekins,
    304 U.S. 27 (1938)........................................................4-5, 13-14

United States v. Hansen,
    772 F.2d 940 (D.C. Cir. 1985).................................................11

## Constitutions

Mich. Const. art. IX, § 24 ..............................................................*passim*

## Statutes

11 U.S.C. § 109.................................................................... 16-21

11 U.S.C. § 903.........................................................................15

11 U.S.C. § 921.................................................................... 16-21

11 U.S.C. § 943...........................................................................6

11 U.S.C. § 944...........................................................................6

**OTHER AUTHORITIES**

STATE OF MICH., CONSTITUTIONAL CONVENTION OF 1961: OFFICIAL RECORD
(Austin C. Knapp ed., 1964)..................................................................................7

13-53846-tjt    Doc 918    Filed 09/17/13    Entered 09/17/13 17:30:04    Page 5 of 28

The City of Detroit (the "City" or the "Debtor") respectfully submits this reply to the objection (Docket No. 805) (the "Retiree Committee Objection") of the official committee of retirees appointed in this chapter 9 case (the "Retiree Committee") to the entry of an order for relief in this chapter 9 case (any such order, an "Order for Relief").

## I. PRELIMINARY STATEMENT

As set forth in the City's (A) Memorandum in Support of Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code (Docket No. 14) (the "Eligibility Memorandum"), (B) first-day declarations and (C) Consolidated Reply to Objections to the Entry of an Order for Relief (Docket No. 765) (the "Consolidated Reply"),[1] the City has exhaustively documented – through argument and supporting evidence – its overwhelming need for debt relief and its eligibility to be a debtor under chapter 9 of the Bankruptcy Code.

The Retiree Committee Objection offers little to no argument that the City has not already addressed at length in its previous submissions to the Court. Rather, the Retiree Committee Objection limits itself to rehearsing and re-casting arguments made by other objectors (and already addressed by the City in its Consolidated Reply), while positioning the Retiree Committee for procedural

---

[1] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Consolidated Reply, which is incorporated herein in its entirety.

maneuvering and delaying tactics in other fora.[2] This Reply addresses each of the Retiree Committee's arguments in turn (with citation to the City's prior submissions where appropriate) and again demonstrates (A) the consonance of the City's chapter 9 filing with both the Federal and Michigan Constitutions, (B) the City's satisfaction of the eligibility requirements set forth at section 109(c) of the Bankruptcy Code and (C) the City's good faith in filing its chapter 9 petition.

Accordingly, for the reasons set forth herein and in the City's prior filings, the City is eligible to be a debtor under chapter 9, and the Court should promptly enter an Order for Relief.

---

[2]  See Retiree Committee Objection, at p.14, n.10 (stating the Retiree Committee's intention to file a motion to withdraw the reference of "the eligibility dispute"); The Official Committee of Retirees' Motion to Withdraw the Reference (Docket No. 806), filed on September 11, 2013 (subsequently referred to the United States District Court for the Eastern District of Michigan, Case No. 2:13-cv-13873-BAF-PJK); Motion by Official Committee of Retirees to Stay Deadlines and the Hearings Concerning a Determination of Eligibility Pending Decision on Motion to Withdraw the Reference (Docket No. 837), filed on September 13, 2013.

## II. THE PENSIONS CLAUSE DOES NOT INVALIDATE THE CITY'S CLEAR AUTHORIZATION TO BE A DEBTOR UNDER CHAPTER 9

The Retiree Committee joins various other Objectors in arguing that the State's authorization of the City to become a debtor under chapter 9 violated the Pensions Clause.[3] It is mistaken.

### A. No Pensions Have Been Diminished or Impaired

As the City has explained, the mere authorization and filing of the City's chapter 9 petition did not violate the Pensions Clause because it did not "diminish or impair" any pension.[4] The City's pension obligations remain unimpaired, and they cannot be impaired in chapter 9 unless and until this Court enters an order, likely in connection with a plan of adjustment, to that effect.

Nonetheless, according to the Retiree Committee, "the mere act of authorization is properly considered an impairment [of pensions]" because "unilateral impairment of pension rights is not possible without authorization of a bankruptcy petition."[5] This argument fails for several reasons. *First*, chapter 9 does not allow for any "unilateral" impairment by the City. The only ways

---

[3]    Mich. Const. art. IX, § 24 ("The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.").

[4]    Consolidated Reply, at pp. 21-22.

[5]    Retiree Committee Objection, at ¶ 64.

impairment can occur in chapter 9 are (a) if the relevant parties agree to modify benefits or (b) by order of the bankruptcy court after a full and fair hearing where creditors can raise objections. *Second*, the fact that impairment of pensions may not be possible absent the authorization of a chapter 9 case does *not* mean that authorization equals impairment. Obtaining a passport may be necessary to travel abroad, but the two are hardly the same, nor does the former mandate the latter. So, too, here.

*Finally*, in equating "the mere act of authorization" with the impairment of pensions, the Retiree Committee's argument is squarely at odds with United States v. Bekins, 304 U.S. 27 (1938). In Bekins, the Supreme Court indicated that a state's authorization of municipal bankruptcy does not impair the state's obligations but merely "invites the intervention of the bankruptcy power to save its agency which the State itself is powerless to rescue." Id. at 54. In other words, even where states are themselves "powerless" to impair their own obligations, they are not powerless to authorize bankruptcy, where obligations may be impaired under federal law. Indeed, as the City has already noted, if the mere act of authorizing municipal bankruptcy were equivalent to impairment, then every authorization of municipal bankruptcy would trigger the protection of the Contracts Clause and every authorization of municipal bankruptcy in Michigan would similarly

implicate the State Contracts Clause.[6]  That cannot be correct, as no court since

Bekins has found it necessary to conduct a Contracts Clause analysis to determine

the validity of a chapter 9 authorization and we are not aware that any court has

found it necessary to consider the constitutional protection of contracts by

Michigan or other states in considering a chapter 9 authorization by statute or

executive action.  The Retiree Committee makes no attempt to respond to this

point.

B.    The Pensions Clause Does Not Preclude
       A Michigan Municipality From Commencing a Chapter 9 Case

The Retiree Committee spends multiple pages arguing that the Pensions

Clause provides such "special" and "absolute" protection that it not only prohibits

the impairment of pensions in chapter 9, it also prohibits the State from authorizing

any chapter 9 case where pensions might be impaired.[7]  The Retiree Committee is

incorrect.

1.    By Its Plain Terms, the Pensions Clause
       Does Not Affect Actions in Chapter 9

The Retiree Committee simply fails to engage the City's argument

demonstrating that the Pensions Clause has no bearing on actions that might occur

---

[6]      Consolidated Reply, at pp. 24-25.

[7]      Retiree Committee Objection, at ¶¶ 26-30.

in chapter 9.[8]  By its plain terms, the Pensions Clause applies only to impairments "[ ]by" the State or its political subdivisions.  The text expressly states that pensions are contractual obligations "of the state and its political subdivisions … which may not be diminished or impaired *thereby*."  Mich. Const. art. IX, § 24 (emphasis added).  This language could not be any clearer:  the Pensions Clause prohibits impairments "[ ]by" the State and its political subdivisions.  It does not speak to, much less prohibit, impairments "[ ]by" any other lawful authority.  This limitation is crucial, because non-consensual impairment of pensions in chapter 9 can occur only by order of a federal bankruptcy court pursuant to federal law.[9]  Consequently, the Pensions Clause is consistent with any impairment that might take place in chapter 9.  For that reason alone, there is no need to accept the Retiree Committee's claims that the bankruptcy process somehow "suspend[s] the Pensions Clause," or is otherwise inconsistent with the Michigan Constitution.[10]

By ignoring the relevant text of the Pensions Clause, the Retiree Committee overlooks the key similarity between the Pensions Clause and the

---

[8]     Consolidated Reply, at pp. 24-25.

[9]     See 11 U.S.C. § 943(b) ("*The court* shall confirm the plan …") (emphasis added); 11 U.S.C. § 944(b)(1) ("[T]he debtor is discharged from all debts" only "as of the time when … the plan is confirmed.").

[10]    Retiree Committee Objection, at ¶ 33.

Contracts Clause.  Both clauses apply only *against impairments by the State*.

Neither clause purports to restrict any impairment *by federal law*.  For that reason,

it is beside the point (and also incorrect) to assert that the protection for pensions is

in some sense more "absolute" than the protection of contracts.  What matters is

that the provision has no bearing on actions taken in a chapter 9 case.

2.    *Pensions Are Entitled to No More*
       *Protection than Contractual Obligations*

In any event, the Retiree Committee is mistaken in asserting that the

protection of pensions under the Pensions Clause is in any way different from the

protection of contracts under the Contracts Clause.  As the Michigan courts have

recognized, the Pensions Clause was enacted for the clear purpose of overturning

previous state-court decisions holding that pensions were not contractual in nature

and were, thus, revocable at will by public employers.[11]  Given that historical

purpose, there is no reason to think that the Pensions Clause was intended to grant

some "special and greater protection" for pensions.[12]

---

[11]    See In re Constitutionality of 2011 PA 38, 806 N.W.2d 683, 694
        (Mich. 2011); Kosa v. State Treasurer, 292 N.W.2d 452, 454-55
        (Mich. 1980); In re Enrolled Senate Bill (Advisory Opinion re
        Constitutionality of 1972 PA 258), 209 N.W.2d 200, 202 (Mich. 1973);
        STATE OF MICH., CONSTITUTIONAL CONVENTION OF 1961: OFFICIAL RECORD
        770-74, 2659, 3402 (Austin C. Knapp ed., 1964).

[12]    Retiree Committee Objection, at ¶ 28.

The cases that the Retiree Committee cites as evidence of the "absolute" protection of the Pensions Clause are completely inapposite.[13] Nowhere do these cases say that protection for pensions is "absolute," or even different from the protection for contracts generally. Indeed, the two main cases cited by the Retiree Committee strongly undermine the Retiree Committee's argument.[14] One case finds that the purpose of the Pensions Clause "was to obviate the harsh rule that pensions granted by public authorities were not contractual obligations, but gratuitous allowances …."[15] The other case cited by the Retiree Committee states repeatedly that pension benefits must be treated as "contractual right[s]" and "contractual obligations," because "[m]any delegates to the 1961 Constitutional Convention perceived as unfair the rule that pensions granted by public authorities were not contractual obligations, but rather gratuitous allowances that could be revoked at will."[16]

Moreover, because none of the cases cited by the Retiree Committee has anything to do with bankruptcy, these cases do not even begin to support the Retiree Committee's remarkable claim that that the Pensions Clause implicitly

---

[13]    See Musselman v. Governor of Mich., 533 N.W.2d 237, 244-45 (Mich. 1995); Ass'n of Prof'l & Technical Emps. v. City of Detroit, 398 N.W.2d 436, 439 (Mich. Ct. App. 1986).

[14]    Retiree Committee Objection, at ¶¶ 29, 67-68.

[15]    Ass'n of Prof'l and Technical Emps., 398 N.W.2d at 438.

[16]    Musselman, 533 N.W.2d at 241 n.8, 243 n.12.

prohibits the State from authorizing a chapter 9 case. Indeed, as the City has noted, the Pensions Clause was ratified at a time when Michigan law expressly authorized municipal bankruptcy, without eliciting any concern of a conflict.[17] The Retiree Committee does not respond to this reality.

Finally, contrary to the Retiree Committee's argument, there is no significance to the fact that Michigan has deemed pensions to be contractual obligations via an express constitutional provision, while other states such as California and Alabama have reached the same result through judicial decisions interpreting the Contracts Clause.[18] The salient point is that, in all of these states, pensions are protected as contractual obligations, and in none of these states does that protection pose any obstacle to the authorization of the filing of a case under chapter 9.

        3.    *On the City's Reading,*
               *No Part of the Pensions Clause Is Superfluous*

The Retiree Committee argues that granting pensions the same level of protection as contracts would render some of the text of the Pensions Clause superfluous.[19] According to the Retiree Committee, if the drafters had intended to treat pensions and contracts equally, they would have simply stated that pensions

---

[17]     Consolidated Reply, at p. 26.

[18]     Retiree Committee Objection, at ¶ 30.

[19]     Retiree Committee Objection, at ¶¶ 26-29.

are "contractual obligations" of the State, without going on to say that such obligations "shall not be diminished or impaired thereby." Mich. Const. art. IX, § 24.

The Retiree Committee is incorrect. In fact, the drafters of the Pensions Clause had good reason to emphasize the point that treating pensions as contractual obligations would mean that they could not "be diminished or impaired." By expressly stating this prohibition, the drafters made explicit both the purpose and the real-world effect of granting contractual status to pensions – namely, to prevent them from being revoked at will by public employers. With this explanatory language, the drafters sent a very clear signal, both to potential ratifiers and to the public at large, as to what the consequence of adopting the Pensions Clause would be. If the drafters had omitted this language, the legal effect of the provision would have been far less clear. In light of this clarifying purpose, the canon against superfluity relied upon by the Retiree Committee does not apply.

It is not uncommon for a legislature to "draft[ ] provisions that appear duplicative of others – simply, in Macbeth's words, 'to make assurance double sure.'" Shook v. D.C. Fin. Responsibility & Mgmt. Assistance Auth., 132 F.3d 775, 782 (D.C. Cir. 1998). "While the impermissibility of [a] procedure may have been implicit absent the new limiting phrase … it would not have been explicit, and the phrase is therefore not superfluous." Coca-Cola Bottling Co. of N.Y., Inc. v. Soft

Drink & Brewery Workers Union Local 812, 242 F.3d 52, 57 (2d Cir. 2001).

Aside from benefitting the public, redundant language can serve "as a means of clarifying for its own Members who voted upon [a law] the consequences of their action." United States v. Hansen, 772 F.2d 940, 946 (D.C. Cir. 1985). Accordingly, there is "no reason to ascribe specialized meaning to [a] phrase simply for the sake of avoiding slight repetition in the statutory text. Some repetition can help clarify the meaning of a statute, and [courts] are reluctant to endorse an awkward reading of its words for no better reason than to satisfy the canon [against superfluity]." Krause v. Titleserv, Inc., 402 F.3d 119, 127-28 (2d Cir. 2005). As the U.S. Supreme Court has recognized, "[r]edundancies across statutes are not unusual events in drafting," Connecticut National Bank v. Germain, 503 U.S. 249, 253 (1992), and the "preference for avoiding surplusage constructions is not absolute," Lamie v. United States Trustee, 540 U.S. 526, 536 (2004). See also Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 299 n.1 (2006) (rejecting the notion that "costs" and "expenses" must be given independent meaning, and noting that "[w]hile it is generally presumed that statutes do not contain surplusage, instances of surplusage are not unknown").

In addition, by stating that pensions are contractual obligations of "the State and its political subdivisions" that "shall not be diminished or impaired *thereby*," the drafters of the Pensions Clause accomplished another important purpose. They

made clear that the prohibition applies only to the State and its political subdivisions, and does not restrict the impairment of pensions "[ ]by" operation of federal law and by order of a federal bankruptcy court.

Ironically, the canon against superfluity cuts strongly *against* the Retiree Committee's reading of the Pensions Clause. If the drafters had really intended to treat pensions and contracts differently, they would have had no reason to refer to pensions as "contractual obligation[s]." Instead, they could have simply drafted the provision to say, "Pensions shall not be diminished or impaired." Because the Retiree Committee's own reading renders the "contractual obligation" language superfluous, the Retiree Committee cannot invoke the superfluity canon in its favor. See Microsoft Corp. v. i4i Ltd. P'ship, 131 S. Ct. 2238, 2248 (2011) ("[T]he canon against superfluity assists only where a competing interpretation gives effect to every clause and word of a statute.") (internal quotation marks omitted).

Indeed, on the Retiree Committee's reading, the language of the Pensions Clause would be worse than superfluous – it would be affirmatively confusing. According to the Retiree Committee, the drafters went out of their way to deem pensions to be "contractual obligation[s]," and then in the very next breath decreed that pensions are entitled to a completely unique protection that is entirely different from the protection that applies to contractual obligations. Such an interpretation places the Pensions Clause at odds with itself and is entirely unwarranted.

-12-

"[T]he rule against giving a portion of text an interpretation which renders it superfluous does not prescribe that a passage which could have been more terse does not mean what it says. The rule applies only if verbosity and prolixity can be eliminated by giving the offending passage, or the remainder of the text, a competing interpretation." Bruesewitz v. Wyeth LLC, 131 S. Ct. 1068, 1078 (2011).

## III.    CHAPTER 9 IS NOT UNCONSTITUTIONAL

Like other Objectors, the Retiree Committee also contends that, "in light of recent Supreme Court precedent," the Supreme Court has surreptitiously invalidated chapter 9 by "weaken[ing] if not reject[ing] the entire foundation of Bekins."[20] Remarkably, however, the Retiree Committee concedes that there is a "compelling reason" not to hold chapter 9 unconstitutional:  the Supreme Court upheld a substantially identical municipal bankruptcy statute over 70 years ago in Bekins.[21] Because Bekins has "direct application" in this case and has never been overruled by the Supreme Court, this Court must follow it, even if it "appears to rest on reasons rejected in some other line of decisions." Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989).

---

[20]    Retiree Committee Objection, at ¶¶ 35, 37

[21]    Retiree Committee Objection, at ¶ 35 n.16.

It also clear that, contrary to the Retiree Committee's claim, none of the Supreme Court's federalism cases since <u>Bekins</u> casts even the slightest doubt on the ongoing constitutional validity of chapter 9.  Perhaps recognizing the weakness of its case, the Retiree Committee makes no effort to respond to any of the City's arguments in the Consolidated Reply.[22]  Instead, the Retiree Committee merely restates the same argument advanced by the other Objectors:  chapter 9's infringement of state sovereignty cannot be cured by State consent.  Retiree Committee Objection, at ¶¶ 42-45.

Conspicuously absent from the Retiree Committee Objection, however, is any explanation of how chapter 9 actually effects such an infringement.  The Retiree Committee, like the other Objectors, relies on <u>New York v. United States</u>, 505 U.S. 144 (1992), and <u>Printz v. United States</u>, 521 U.S. 898 (1997), in support of its argument.  Those cases, however, stand only for the proposition that "[t]he Federal Government may not compel the States to enact or administer a federal regulatory program."  <u>Printz</u>, 521 U.S. at 933 (quoting <u>New York</u>, 505 U.S. at 188).  Chapter 9, by contrast, does not compel States to enact, administer or otherwise

---

[22]    Consolidated Reply, at pp. 9-19.

-14-
13-53846-tjt   Doc 918   Filed 09/17/13   Entered 09/17/13 17:30:04   Page 19 of 28

participate in any federal bankruptcy scheme.  To the contrary, State participation is wholly voluntary.[23]

Not only is chapter 9 non-coercive, it is carefully crafted "to preserve the niceties of the state-federal relationship" for those States that voluntarily authorize their municipalities to seek bankruptcy relief.  Ass'n of Retired Emps. v. City of Stockton (In re City of Stockton), 478 B.R. 8, 20 (Bankr. E.D. Cal. 2012).  Under 11 U.S.C. § 903, a bankruptcy court is prohibited from "limit[ing] or impair[ing] the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality."  Therefore, even if there is some core of sovereign State functions that cannot be ceded to the Federal Government by State consent, chapter 9 expressly prohibits the bankruptcy court from intruding on those core functions. The impairment of municipal obligations by a bankruptcy court does not prevent the State from controlling the municipality's political or governmental powers or in any other way intrude on the State's sovereignty.  If it did, the Supreme Court would not have upheld the municipal bankruptcy structure embodied in chapter 9.

---

[23]    The other case relied upon by the Retiree Committee, and by the other Objectors as well, is Bond v. United States, 131 S. Ct. 2355 (2011).  Retiree Committee Objection, at ¶ 40.  Bond, however, does not delineate the line between federal and state power; it merely holds that an individual who is a party to an otherwise justiciable case or controversy has standing to challenge a federal statute on grounds that it intrudes on powers reserved to the States.  Bond, 131 S. Ct. at 2366-67.

Accordingly, for all of the foregoing reasons, the Retiree Committee's objection that the City was not specifically authorized to commence this chapter 9 case – and, thus, that section 109(c)(2) of the Bankruptcy Code was not satisfied – should be overruled.

## IV. THE CITY HAS SATISFIED SECTIONS 109(C)(5) AND 921(C) OF THE BANKRUPTCY CODE

Having devoted nearly its entirety to the various constitutional-based arguments addressed above, the Retiree Committee Objection devotes less than three pages to the following issues: (A) whether the City negotiated in good faith with its creditors as required by section 109(c)(5)(B) of the Bankruptcy Code; (B) whether such negotiations were "impracticable" as a threshold matter within the meaning of section 109(c)(5)(C) of the Bankruptcy Code; and (C) whether the City filed its petition for relief (the "Petition") in "good faith" within the meaning of section 921(c) of the Bankruptcy Code.[24] The Retiree Committee Objection with respect to the foregoing issues is rife with legal and factual errors and should be overruled.

---

[24] The Retiree Committee Objection does not specifically address either of the requirements for eligibility set forth at section 109(c)(3) of the Bankruptcy Code (insolvency) and section 109(c)(4) of the Bankruptcy Code (the City's desire to effect a plan to adjust its debts).

A.    The City's Petition Was Filed in Good Faith

The Retiree Committee contests the good faith filing of the City's Petition

under section 921(c) of the Bankruptcy Code.  Retiree Committee Objection,

at ¶ 74.  The Retiree Committee Objection, however, improperly conflates the

separate tests of sections 109(c)(5)(B) (good faith negotiations) and 921(c) (filing

of case in good faith) of the Bankruptcy Code by suggesting that an alleged failure

by the City to negotiate in good faith with its creditors also leads to the conclusion

that the Petition was not filed in good faith.  The Retiree Committee cites no

authority in support of this proposition.

Indeed, the Retiree Committee cites to the proper standard for

determinations of "good faith" under section 921(c) of the Bankruptcy Code but

then fails to even attempt to apply that standard.  This is understandable.  As the

City demonstrated in the Consolidated Reply, application of the standards

governing section 921(c) of the Bankruptcy Code to the relevant facts clearly

demonstrates the City's good faith in filing the Petition.  Consolidated Reply,

at pp. 62-69.  Even if the City had not negotiated in good faith with its creditors

(which it did), that would not lead to a conclusion that its Petition had been filed in

bad faith.

Accordingly, because the Retiree Committee (A) misconstrues the standard

applicable to the section 921(c) inquiry into good faith and (B) offers no argument

or evidence with respect to the proper standard, the Retiree Committee's objection that the Petition was filed in bad faith must be overruled.[25]

B.    The City Negotiated With Its Creditors in Good Faith

The Retiree Committee argues that, because the Emergency Manager and the Governor allegedly (and in some unspecified context) "ignored 'clear, unambiguous' contractual rights protected by the Pension clause," the City cannot be found to have negotiated in good faith with its creditors.  Retiree Committee Objection, at ¶¶ 75-76.  There is, of course, no evidence that any representative of the City or State "ignored" the existence of any contractual right to pension benefits at any time.  Rather, the Retiree Committee's complaint is with the potential *treatment* of those rights.  Indeed, the Retiree Committee appears to argue that, because the City has contemplated the impairment of pension benefits or proposed that the City and its retirees agree to a proposed treatment of claims arising from the underfunding of pension benefits, the City is incapable of satisfying section 109(c)(5)(B) of the Bankruptcy Code.  Yet, the proposed impairment of a class of creditors' claims cannot be fatal to a debtor's satisfaction of section 109(c)(5)(B) of the Bankruptcy Code, *which expressly contemplates*

---

[25]    The Retiree Committee's argument that "[t]here is no evidence that the City investigated other alternatives to chapter 9" is simply false.  As set forth in the Consolidated Reply, the Orr Declaration contains a wealth of evidence demonstrating this very fact.  See Consolidated Reply, at pp. 67-68; Orr Declaration, at ¶¶ 58-73.

*such impairment.*  See 11 U.S.C. § 109(c)(5)(B) (requiring that the debtor must have "negotiated in good faith with creditors and … failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class *that such entity intends to impair under a plan in a case under such chapter*") (emphasis added).  The Retiree Committee Objection must be overruled on this point.[26]

Moreover, the factual allegations contained in the Retiree Committee Objection that allegedly demonstrate a failure to engage in good faith negotiations – to the extent such allegations are not already addressed in the Eligibility Memorandum and Consolidated Reply[27] – are easily dismissed as unsupported, misleading or false.

- The Retiree Committee alleges that "[b]oth the Governor and Emergency [M]anager evidenced a desire to achieve a result that they knew was unconstitutional as a matter of Michigan law."  Retiree

---

[26]   In re Sullivan County Regional Refuse Disposal District, 165 B.R. 60 (Bankr. D.N.H. 1994), cited by the Retiree Committee in support of its argument, is easily distinguishable.  In Sullivan County, the debtor invented its own contractual right to set off valid debts in clear derogation of express contractual language to the contrary, and negotiated from that standpoint.  The bankruptcy court found that this tactic constituted bad faith.  Id. at 78.  No such invention of contractual rights was at work here.

[27]   For example, the charges that the City (a) presented its creditors with a "take it or leave it" proposal and (b) refused to negotiate with its creditors (see Retiree Committee Objection, at ¶ 77) are addressed in depth at pages 54-59 of the Consolidated Reply and pages 55-59 of the Eligibility Memorandum.

Committee Objection, at ¶ 76. The Retiree Committee offers no evidence to support this false statement.

- The Retiree Committee alleges that the Emergency Manager believed that "the planning for a chapter 9 was a 'run around' the Michigan Constitution and the repeal of PA 4." Id. The Emergency Manager has never said anything of the sort, and the Retiree Committee, again, offers no evidence in support of its claim.

- The Retiree Committee criticizes the Emergency Manager for allegedly waiting "more than fifteen months after a financial review team issued its initial report advising that the City was 'in a condition of severe financial distress'" before submitting the June 14 Creditor Proposal to the public. Id. Of course, the Emergency Manager did not assume his office until March of 2013 and submitted his comprehensive, 128-page June 14 Creditor Proposal to the public a scant three months later.

Accordingly, the Retiree Committee Objection does nothing to undermine the City's showing that it has satisfied section 109(c)(5)(B) of the Bankruptcy Code, and its objections related thereto should be overruled.

## C.   Negotiations with the City's Creditors Were Impracticable

The Retiree Committee's argument that negotiations with all of the City's creditors were practicable runs the length of one clause and one footnote. Specifically, the Retiree Committee contends that, because (1) certain entities indicated a willingness to engage the City in negotiations and (2) the City might have bound its retiree constituency to a restructuring through class action litigation, negotiations with all of the City's creditor constituencies were not "impracticable" within the meaning of section 109(c)(5)(C) of the Bankruptcy Code. Retiree Committee Objection, at ¶ 77, n.23.

These "toss-in" arguments cannot be regarded as serious. First, the plain language of section 109(c)(5)(C) of the Bankruptcy Code requires an inquiry into the impracticability of "negotiation." 11 U.S.C. § 109(c)(5)(C). Even assuming that the City might have been able to bind its entire retiree constituency to the June 14 Creditor Proposal through (presumably mandatory non-opt out) class action litigation, such an attempt would have borne little resemblance to "negotiation." The asserted availability of such an alternative is, thus, completely irrelevant to an inquiry under section 109(c)(5)(C) of the Bankruptcy Code. Second, as set forth in detail in the Eligibility Memorandum and the Consolidated Reply, the alleged willingness of "retiree associations, the Retirement System[s] and various unions" (Retiree Committee Objection, at ¶ 77) to engage the City in negotiations does not render the City's negotiations with its creditors practicable where, among other things, (1) the City was unable to practicably negotiate with the holders of billions of dollars in bond debt, (2) no natural bargaining representative for all of the City's retirees exists and (3) contrary to the Retiree Committee's suggestion, many unions expressly indicated either unwillingness or legal inability to represent their retirees in negotiations with the City.

Accordingly, the Retiree Committee's suggestion that negotiations with the City's creditors were practicable should be rejected, and its objections related to section 109(c)(5)(C) of the Bankruptcy Code overruled.

## V.    CONCLUSION

For the foregoing reasons, the Court should promptly enter an Order for

Relief in this case.

Dated: September 17, 2013          Respectfully submitted,


 /s/  Bruce Bennett
Bruce Bennett (CA 105430)
JONES DAY
555 South Flowers Street
Fiftieth Floor
Los Angeles, California  90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 963-6420
Facsimile:  (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY