**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

------------------------------------------------------x
                             :

In re                        : Chapter 9
                             :

CITY OF DETROIT, MICHIGAN,   : Case No. 13-53846
                             :

                Debtor.   : Hon. Steven W. Rhodes
                             :

------------------------------------------------------x

**CITY OF DETROIT'S OBJECTION TO MOTION**
**OF OFFICIAL RETIREE COMMITTEE TO STAY DEADLINES**
**AND HEARINGS RELATED TO ELIGIBILITY PROCEEDINGS**

CLI-2141675v5

# TABLE OF CONTENTS

Preliminary Statement...............................................................................1

Objection ...................................................................................................3

*The Motion to Withdraw Is Unlikely to Succeed on Its Merits* ......................5

*A Determination of Eligibility Causes No Harm to Retirees* ......................18

*The City Would Be Harmed by the Imposition of a Stay*..............................20

*The Public Interest Would Be Harmed by the Imposition of a Stay* ............23

# TABLE OF AUTHORITIES

## CASES

Anderson v. Prisoner Health Servs.,
  No. 10-15154, 2011 WL 2144205 (E.D. Mich. Apr. 27, 2011) .................. 14-15

Antioch Co. Litig. Trust v. Morgan (In re Antioch Co.),
  435 B.R. 493 (Bankr. S.D. Ohio 2010) ........................................... 4-5

Citizens for Rational Coastal Dev. v. Fed. Highway Admin.,
  No. 07-4551, 2008 WL 508666 (D.N.J. Feb. 21, 2008)....................................25

Cooey v. Strickland,
  604 F.3d 939 (6th Cir. 2010) ..............................................................14

Dearborn Lodging, Inc. v. City of Dearborn,
  No. 11-10057, 2012 WL 1658684 (E.D. Mich. May 11, 2012).................. 24-25

Hassett v. FDIC (In re CIS Corp.),
  140 B.R. 351 (S.D.N.Y. 1992) ..........................................................11

In re Chrysler LLC,
  No. 09-50002, 2009 WL 7386569 (Bankr. S.D.N.Y. May 20, 2009)..........4, 5, 7

In re Dana Corp.,
  No. 06-10354, 2007 WL 2908221 (Bankr. S.D.N.Y. Oct. 3, 2007)...................20

In re Level Propane Gases, Inc.,
  No. 06-00119, 2006 WL 3499916 (N.D. Ohio Dec. 5, 2006)...........................17

In re Motions to Withdraw Reference in Various Cases,
  Nos. 12-11556 to 60, 63 to 65, 2012 WL 5381208
  (E.D. Mich. Oct. 31, 2012) ................................................................13

Lewis v. Negri Bossi USA, Inc. (In re Mathson Indus., Inc.),
  408 B.R. 888 (E.D. Mich. 2009)..........................................................16

LTV Steel Co. v. Union Carbide Corp. (In re Chateaugay Corp.),
  193 B.R. 669 (S.D.N.Y. 1996) ............................................................14

Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,
  945 F.2d 150 (6th Cir. 1991) ......................................................5-6, 19-20

Moltan Co. v. Eagle-Picher Indus., Inc.,
    55 F.3d 1171 (6th Cir. 1995) ............................................................2

Moyer v. Koloseik (In re Sutton),
    470 B.R. 462 (Bankr. W.D. Mich. 2012) .................................... 11-12

N. Pipeline Constr. Co. v. Marathon Pipe Line Co.,
    458 U.S. 50 (1982)...........................................................................9

Omega Tool Corp. v. Alix Partners, LLP,
    416 B.R. 315 (E.D. Mich. 2009)......................................................16

Onkyo Europe Elecs. GMBH v. Global Technovations Inc.
    (In re Global Technovations Inc.),
    694 F.3d 705 (6th Cir. 2012) ..........................................................10

Priest v. Interco, Inc. (In re Interco, Inc.),
    135 B.R. 359 (Bankr. E.D. Mo. 1991)................................................5

Rhinehart v. Scutt,
    509 Fed. App'x 510 (6th Cir. 2013)..................................................14

Satyam Computer Servs., Ltd. v. Venture Global Eng'g, LLC,
    No. 06-CV-50351, 2006 WL 2571581 (E.D. Mich. Sept. 5, 2006) ................. 6-7

Stern v. Marshall,
    131 S. Ct. 2594 (2011)................................................................ 7-16

Stevenson v. State & Local Police Agencies,
    42 F. Supp. 2d 229 (W.D.N.Y. 1999)................................................25

TJN, Inc. v. Superior Container Corp. (In re TJN, Inc.),
    207 B.R. 499 (Bankr. D.S.C. 1996)....................................................3

United of Omaha Life Ins. Co. v. Solomon,
    960 F.2d 31 (6th Cir. 1992) ..............................................................6

United States v. Detroit Int'l Bridge Co.,
    7 F.3d 497 (6th Cir. 1993) ................................................................6

Valenti v. Snyder,
    853 F. Supp. 2d 691 (E.D. Mich. 2012) ............................................14

Walker, Truesdell, Roth & Assocs. v. Blackstone Grp., L.P.
  (In re Extended Stay, Inc.),
  466 B.R. 188 (S.D.N.Y. 2011) ........................................................... 9-10, 11, 15

**FEDERAL STATUTES AND RULES**

11 U.S.C. § 109 ..................................................................................................8

11 U.S.C. § 921 .................................................................................. 8, 9, 22-23

28 U.S.C. § 157 .................................................................................... 9, 12-15

Fed. R. Bankr. P. 5011(c) .......................................................................*passim*

**MICHIGAN STATUTES**

Public Act 436 of 2012 – MCL § 141.1549 ...........................................................21

**OTHER AUTHORITIES**

6 COLLIER ON BANKRUPTCY ¶ 921.05 (Alan N. Resnick &
  Henry J. Sommer eds., 16th ed. 2013)................................................................23

The City of Detroit (the "City" or the "Debtor") objects to the Motion by Official Committee of Retirees to Stay Deadlines and the Hearings Concerning a Determination of Eligibility Pending Decision on Motion to Withdraw the Reference (Docket No. 837) (the "Stay Motion") filed by the official committee of retirees appointed in this case (the "Retiree Committee") and respectfully represents as follows:

## Preliminary Statement

1.      As the City has consistently maintained throughout this chapter 9 case, in light of its State-declared financial emergency and its urgent need for restructuring, the City intends to complete the chapter 9 process as promptly as possible for the benefit of all parties in interest.  The sooner the City can demonstrate its eligibility for chapter 9, the sooner it can complete other restructuring steps and ultimately confirm and implement a plan of adjustment. A prompt exit from chapter 9 will facilitate the long process of rebuilding the City. Understanding that a determination of its eligibility to be a chapter 9 debtor is a threshold condition to achieving these goals, the City has requested – and the Court has established – a reasonable schedule for addressing objections to the City's eligibility which preserves the rights of all interested parties to be heard.

2.     Neither the Stay Motion nor the Retiree Committee's Motion to Withdraw the Reference (Docket No. 806) (the "Motion to Withdraw")[1] establish any legal or practical reason why any proceedings before this Court relating to the City's eligibility for chapter 9 (the "Eligibility Proceedings") – proceedings that are already well underway – should be stayed (the "Stay") while the Retiree Committee pursues a groundless procedural gambit in the District Court. Certainly, the Stay Motion fails to overcome the presumption, established by Rule 5011(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), that the Eligibility Proceedings should proceed unstayed notwithstanding the filing of a motion to withdraw the reference.

3.     Moreover, *none* of the standards for granting a preliminary injunction that the Court should consider in disposing of the Stay Motion[2] weigh in favor of the relief sought by the Retiree Committee where (a) the Motion to Withdraw is unlikely to succeed, (b) the City and its residents will be harmed by

---

[1]     The Motion to Withdraw is pending in the United States District Court for the Eastern District of Michigan (the "District Court") as Case No. 2:13-cv-13873-BAF-PJK (E.D. Mich.).

[2]     E.g., Moltan Co. v. Eagle-Picher Indus., Inc., 55 F.3d 1171, 1175 (6th Cir. 1995) (setting forth common factors considered in connection with requests for preliminary injunctions:  "1) the likelihood of [movant]'s success on the merits; 2) whether the injunction will save [movant] from irreparable injury; 3) whether the injunction would harm others; and 4) whether the public interest would be served.").

unwarranted delay in this chapter 9 case and (c) the Retiree Committee's constituents will not suffer *any* harm – much less irreparable harm – by continuing progress of the Eligibility Proceedings as scheduled by this Court.  Indeed, implicitly conceding the weakness of its request for relief, the Retiree Committee seems to ignore the relief it requests in the instant motion – i.e., a stay of Eligibility Proceedings – when applying three of the four applicable injunction factors.

4.     Accordingly, the Court should deny the Stay Motion.

## Objection

5.     Bankruptcy Rule 5011(c) expressly provides that proceedings pending before a bankruptcy court are *not* stayed upon the filing of a motion to withdraw the reference to the applicable district court.  "The filing of a motion for withdrawal of a case or proceeding … shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion."  Fed. R. Bankr. P. 5011(c); see TJN, Inc. v. Superior Container Corp. (In re TJN, Inc.), 207 B.R. 499, 500 (Bankr. D.S.C. 1996) (noting "no stay is created simply as a result of the filing of a Motion for Withdrawal of Reference").

6.     The plain language of Bankruptcy Rule 5011(c) effectively establishes a presumption in favor of the continuation of proceedings before the

Court during the pendency of a motion to withdraw the reference. See Antioch Co. Litig. Trust v. Morgan (In re Antioch Co.), 435 B.R. 493, 496, 502 (Bankr. S.D. Ohio 2010) (noting the "apparent presumption in favor of not staying … proceedings that arises out of the plain language of the Rule;" stating that "it is clear from the plain language of the Rule that the granting of a stay should be the exception – not the general rule"). The burden of demonstrating need for a stay despite this presumption rests with the movant. In re Chrysler LLC, No. 09-50002 (AJG), 2009 WL 7386569, at *1 (Bankr. S.D.N.Y. May 20, 2009) ("The moving party bears the burden of proof in demonstrating that a stay of proceedings pending a determination of a motion to withdraw the reference would be proper."); Antioch, 435 B.R. at 496 (same).

7. Courts regard motions to stay proceedings pending the disposition of a motion to withdraw the reference essentially as requests for preliminary injunctions. Antioch, 435 B.R. at 497 ("While the term 'may' in the Rule appears to grant the bankruptcy court broad discretion in determining such a motion, the case law applying the Rule has limited the circumstances under which a stay may be granted to essentially the circumstances under which a preliminary injunction would be appropriate under Federal Rule of Civil Procedure 65."). Specifically, a party seeking a stay of proceedings must demonstrate: "(1) the

likelihood that the pending motion to withdraw will be granted (i.e. likelihood of success on the merits); (2) that the movant will suffer irreparable harm if the stay is denied; (3) that the non-movants will not be substantially harmed by the stay; and (4) the public interest will be served by granting the stay." Id. (citing Moltan, 55 F.3d at 1175, for applicable injunction factors); Chrysler, 2009 WL 7386569, at *1 (same); Priest v. Interco, Inc. (In re Interco, Inc.), 135 B.R. 359, 361 (Bankr. E.D. Mo. 1991) (same). The Retiree Committee has failed to meet its burden on *any* of the four factors identified above (each, an "Injunction Factor").

### *The Motion to Withdraw is Unlikely to Succeed on Its Merits*

8.      No Stay should be imposed because the Retiree Committee is unable to demonstrate that the Motion to Withdraw is substantially likely to succeed on its merits.

9.      As a threshold matter, the Retiree Committee's citation to Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150 (6th Cir. 1991), for the proposition that "a stay may issue so long as 'more than the mere 'possibility' of success on the merits' is shown" (Stay Motion, at ¶ 11), thoroughly misrepresents Griepentrog – and Sixth Circuit law generally – regarding a movant's burden with respect to the first Injunction Factor.

10.      In Griepentrog, the Sixth Circuit indeed recognized that courts are required to balance the Injunction Factors, but it did <u>not</u> hold that the showing

of "a mere possibility of success on the merits" will ever be sufficient to satisfy the first of those factors. In fact, the Griepentrog court reached precisely the opposite result:

> Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; *the movant is always required to demonstrate more than the mere 'possibility' of success on the merits*. For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, serious questions going to the merits.

Griepentrog, 945 F.2d at 153-54 (emphasis added).

11.    Griepentrog is consistent with other Sixth Circuit law on this point: movants are required to show a "strong or substantial" likelihood of success on the merits – not just a mere "possibility" of success in order to reach the other Injunction Factors. E.g., United States v. Detroit Int'l Bridge Co., 7 F.3d 497, 503 (6th Cir. 1993) ("In determining whether the district court abused its discretion in denying [the plaintiffs'] motion for preliminary injunction we must consider … [w]hether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits."); United of Omaha Life Ins. Co. v. Solomon, 960 F.2d 31, 35 (6th Cir. 1992) ("To obtain a preliminary injunction, a plaintiff must demonstrate, among other things, a strong or substantial likelihood or probability of success on the merits."); Satyam Computer Servs., Ltd. v. Venture

Global Eng'g, LLC, No. 06-CV-50351, 2006 WL 2571581, at *3 (E.D. Mich. Sept. 5, 2006) ("In determining whether to use its discretion to grant a stay, a court should consider … [w]hether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits."); Chrysler, 2009 WL 7386569, at *3 (where movant sought a stay pending decision on movant's motion to withdraw the reference, holding that "the movant must … clearly demonstrate that it has a substantial likelihood of succeeding on the withdrawal motion").

12.     The Retiree Committee does not satisfy its burden of showing a "strong or substantial likelihood" that the Motion to Withdraw will be successful. The gravamen of the Motion to Withdraw is that Stern v. Marshall, 131 S. Ct. 2594 (2011), stripped this Court of constitutional authority to determine the City's eligibility to be a debtor and, thus, the Eligibility Proceedings must or should be withdrawn to an Article III court.  This proposition, however, is wrong, and Movant's error rests upon a mischaracterization of the precise issue before the District Court in the Motion to Withdraw.

13.     The Motion to Withdraw labors strenuously to cast an issue that can only arise in a chapter 9 bankruptcy case as being completely unrelated to this chapter 9 case.  Motion to Withdraw, at ¶ 29 (stating that the Eligibility Proceedings exist "wholly apart from and independently of any bankruptcy

proceedings."). But the Retiree Committee may not remove objections to eligibility that rely upon state and federal constitutional law from the actual context of the Eligibility Proceedings. The question of whether or not the City is eligible for chapter 9 stems from the bankruptcy itself, and a bankruptcy court has jurisdiction to determine this issue.

14. Thus, the Court is *not* being called upon to render final judgment on any state claims that might fall within the ambit of <u>Stern</u>. Rather, the matter before the Court is *eligibility*: <u>i.e.,</u> a question of federal law, governed by section 109(c) of the Bankruptcy Code, specifically assigned to this court by section 921(c) of the Bankruptcy Code and relevant only for purposes of assessing the applicability of a federal scheme.[3] That this determination may require the Court to *consider* federal and state constitutional questions does not implicate <u>Stern</u> or give rise to any jurisdictional infirmity.

15. Even if the Court were to conclude that chapter 9 or PA 436 is unconstitutional, it would not be called upon to issue any relief based on such constitutional arguments. The disposition of the Eligibility Proceedings would be limited to a determination that the City is ineligible for chapter 9 and dismissal of

---

[3]  <u>See</u> 11 U.S.C. § 921(c) ("After any objection to the petition, the court, after notice and a hearing, may dismiss the petition if the debtor did not file the petition in good faith or if the petition does not meet the requirements of this title.").

the City's petition. Thus, the Eligibility Proceedings do not implicate <u>Stern</u>, the Court's jurisdiction to enter judgment in the Eligibility Proceedings is uncompromised and withdrawal of the reference of the Eligibility Proceedings is completely unwarranted.

16. In any event, even if this Court lost constitutional authority to decide the matter assigned to it under section 921(c) of the Bankruptcy Code under <u>Stern</u>, withdrawal of the reference would not be the proper result. The Retiree Committee's suggestion to the contrary would work a dramatic upheaval of the division of labor between district courts and bankruptcy courts. Indeed, if withdrawal were mandated whenever the bankruptcy court's authority to enter final orders were in question, bankruptcy courts would be required to channel all arguably non-core proceedings through the district courts, and the procedures for adjudication of non-core claims established in the wake of <u>Northern Pipeline Construction Co. v. Marathon Pipe Line Co.</u>, 458 U.S. 50 (1982), and codified at section 157(c)(1) of the Judicial Code would be wholly subverted.

17. <u>Stern</u> does not contemplate any such upheaval. <u>Stern</u>, 131 S. Ct. at 2620 (stating that the Court did not anticipate that its decision would have a profound effect on the division of labor between the district and bankruptcy courts); <u>see</u> <u>also</u> <u>Walker, Truesdell, Roth & Assocs. v. Blackstone Grp., L.P. (In re</u>

Extended Stay, Inc.), 466 B.R. 188, 202 (S.D.N.Y. 2011) (rejecting argument that

withdrawal of the reference was constitutionally mandated in the event that the

bankruptcy court lacked authority to enter final orders under Stern).

> Plaintiffs' request, if granted, would dramatically
> restructure the division of labor between district courts
> and bankruptcy courts by requiring that district courts
> hear a substantial percentage of adversary proceedings….
> Requiring withdrawal of such actions would be contrary
> to the language of Stern, which categorizes itself as a
> "narrow" decision that does not "meaningfully change[ ]
> the division of labor" between bankruptcy courts and
> district courts.

Id.

18. Thus, the invocation of Stern does *not* mandate withdrawal of

the reference. Rather, as the Sixth Circuit has rightly held, where a matter falls

within the category of proceedings identified by the Supreme Court in Stern, the

bankruptcy court should enter proposed findings of fact and conclusions of law for

consideration by the district court. Onkyo Europe Elecs. GMBH v. Global

Technovations Inc. (In re Global Technovations Inc.), 694 F.3d 705, 722

(6th Cir. 2012) (stating that a bankruptcy court may enter findings of fact and

conclusions of law when it lacks authority to enter a final judgment under Stern).

This Court can and should decide whether it should enter an Order for Relief or a

report and recommendation to the District Court accompanying a proposed form of

Order for Relief.  There is no need for the withdrawal of the reference.[4]

19.    Citing to <u>Moyer v. Koloseik (In re Sutton)</u>, 470 B.R. 462

(Bankr. W.D. Mich. 2012), the Retiree Committee also argues that mandatory

withdrawal is required where "fundamental due process" considerations are

implicated (with the due process rights in question being the right of retirees not to

have their "pension rights dispute" determined by a non-Article III court).  Motion

to Withdraw, at ¶¶ 34, 39.  First, the due process concerns raised by the <u>Sutton</u>

court arose solely because the matter before it implicated <u>Stern</u>.  As demonstrated

immediately above, <u>Stern</u> is not implicated by the Eligibility Proceedings.  Second,

the <u>Sutton</u> court took pains to clarify that many core aspects of the bankruptcy

process – including the potential compromise of claims that troubles the Retiree

Committee – "do not … require invocation of a 'public right' exception because no

---

[4]    Citing decisions from the <u>Madoff</u> line of cases, the Retiree Committee
argues that a bankruptcy court is powerless even to determine whether <u>Stern</u>
is implicated (and that this alleged lack of power thus mandates withdrawal).
Motion to Withdraw, at ¶ 42.  This is incorrect.  "It is familiar law that a
court always has jurisdiction to determine its own jurisdiction."  <u>Hassett v.
FDIC (In re CIS Corp.)</u>, 140 B.R. 351, 353 (S.D.N.Y. 1992) (citing <u>United
States v. United Mine Workers of Am.</u>, 330 U.S. 258, 291-95 (1947));
<u>see</u> <u>also</u> <u>Extended Stay</u>, 466 B.R. at 201 (denying withdrawal of the
reference to consider the argument that the bankruptcy court's
post-confirmation retention of jurisdiction was constitutionally improper
because "the bankruptcy court has jurisdiction to determine its own
jurisdiction").

unconstitutional taking of property is at risk. For example, no Article III judge is needed when … the question is simply … which of the estate's creditors will be paid and which will not." Sutton, 470 B.R. at 473. Consistent with Sutton (and for all the reasons previously stated), the determination of the City's eligibility to be a debtor under chapter 9 does not implicate due process rights of retirees. The Retiree Committee's due process argument, thus, fails.[5]

20.    For much the same reason, the Retiree Committee's argument that principles of "federalism" require withdrawal of the reference lacks merit. Motion to Withdraw, at ¶¶ 36-40. The state and federal constitutional challenges that have been raised in the Eligibility Proceedings consist of arguments that chapter 9 or PA 436 are unconstitutional to the extent the City ultimately may seek to impair pension claims. No such considerations, however, are implicated by the Eligibility Proceedings, and the Court is *not* being asked to enter any relief with respect to these issues.

21.    The Retiree Committee devotes barely four pages of the Motion to Withdraw to application of the standards for mandatory and permissive withdrawal set forth in section 157(d) of the Judicial Code. Mandatory withdrawal

---

[5]    Moreover, to the extent that the Retiree Committee cites to Sutton in support of its argument that the Eligibility Proceedings implicate the Tenth Amendment to the United States Constitution, the citation is misplaced. Sutton is grounded entirely in consideration of the Fifth Amendment.

under section 157(d) of the Judicial Code requires a determination "that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). It is implicated only where the bankruptcy court is required "to make a significant interpretation, as opposed to a simple application, of federal non-bankruptcy statutes." In re Motions to Withdraw Reference in Various Cases, Nos. 12-11556 to 60, 63 to 65, 2012 WL 5381208, at *6 (E.D. Mich. Oct. 31, 2012).

22. The Retiree Committee argues that the potential impairment of retiree claims in chapter 9 mandates withdrawal under section 157(d) of the Judicial Code since such impairment is contrary to Michigan law. Motion to Withdraw, at ¶¶ 41-43. Because arguments based upon Michigan law do not trigger application of section 157(d) of the Judicial Code, the Retiree Committee attempts to convert an issue that might involve the intersection of state law and the Bankruptcy Code into one implicating mandatory statutory withdrawal by invoking the Tenth Amendment of the federal Constitution. Alleging a "constitutional" basis for a request for withdrawal, however, does not suffice to bring that request within section 157(d) of the Judicial Code. If it were otherwise, such an argument would be available to almost any party that lacked specific federal grounds for

mandatory withdrawal.  See LTV Steel Co. v. Union Carbide Corp. (In re

Chateaugay Corp.), 193 B.R. 669, 674 (S.D.N.Y. 1996) ("[T]he particular

constitutional issue here [i.e., due process concerns arising in connection with the

propriety of notice] is one that could almost always be raised by a party seeking

withdrawal of the reference.  Holding that that issue mandates withdrawal would

defeat Congress's purpose when it created the bankruptcy courts, and would

transform § 157(d) into an escape hatch through which numerous cases would

fall.").[6]

---

[6]     Courts require persuasive factual and legal substantiation of constitutional
arguments – substantiation that is absent from the Retiree Committee's
papers – before finding that a substantial likelihood of success on the merits
exists.  E.g., Rhinehart v. Scutt, 509 Fed. App'x 510, 513-14 (6th Cir. 2013)
(affirming denial of a prisoner's motion for a preliminary injunction based
on Eighth Amendment constitutional claims where the prisoner failed to
show, legally and factually, that he was likely to succeed on the merits);
Cooey v. Strickland, 604 F.3d 939, 944-46 (6th Cir. 2010) (same); Valenti v.
Snyder, 853 F. Supp. 2d 691, 694, 695, 697 (E.D. Mich. 2012) (finding no
likelihood of success on the merits and denying plaintiffs' motion for a
temporary restraining order where plaintiffs claimed, among other things,
that their federal Contracts Clause and Due Process rights would be
threatened absent such an order, because plaintiffs (a) failed to provide
sufficient factual support for their Contracts Clause claim; and (b) "have not
cited clear precedent that supports their position" regarding their Due
Process claim, meaning that "Plaintiffs' arguments fall short on the critical
factor of whether any of Plaintiffs' … claims have a strong likelihood of
success on the merits"); Anderson v. Prisoner Health Servs., No. 10-15154,
2011 WL 2144205, at **2-4 (E.D. Mich. Apr. 27, 2011) (report
recommending denial of a motion for a preliminary injunction and
temporary restraining order based upon Eighth Amendment claims because

23.     In any event, contrary to the Retiree Committee's arguments, the determination of whether a bankruptcy court possesses authority to finally adjudicate a matter in light of <u>Stern</u> does not implicate interstate commerce (<u>i.e.</u>, a requirement for mandatory withdrawal under section 157(d) of the Judicial Code).

> The holding of <u>Stern</u> does not mandate withdrawal under section 157(d) in these five actions because the question of whether the bankruptcy court has authority to enter a final judgment does not implicate the regulation of organizations or activities affecting interstate commerce. Although Congress could have provided for mandatory withdrawal where resolution of claims requires consideration of constitutional issues, it did not do so.

<u>Extended Stay</u>, 466 B.R. at 200-01.

24.     The Retiree Committee's argument that the Court should exercise its discretion to withdraw the reference for "cause" under section 157(d) of the Judicial Code – <u>i.e.</u>, in favor of "permissive withdrawal" – is likewise unlikely to succeed.  In this District and elsewhere, the following factors are relevant to the determination of the existence of sufficient "cause" to support

---

the plaintiff failed to supply adequate factual and legal support for his position; rejecting conclusory constitutional allegations as insufficient under the Sixth Circuit's four-factor framework; "Plaintiff is, in effect, seeking relief as if he has already prevailed on the merits …."), <u>order adopting recommendation</u>, No. 10-15154, 2011 WL 2143514 (E.D. Mich. May 31, 2011).

withdrawal: "(1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors." E.g., Lewis v. Negri Bossi USA, Inc. (In re Mathson Indus., Inc.), 408 B.R. 888, 892 (E.D. Mich. 2009); Omega Tool Corp. v. Alix Partners, LLP, 416 B.R. 315, 322 (E.D. Mich. 2009).

25.    The Retiree Committee does not argue that a determination of eligibility is not a core proceeding.  Rather, it argues that this Court lacks authority to finally adjudicate the Eligibility Proceedings under Stern.  Motion to Withdraw, at ¶ 45.  Since the Eligibility Proceedings are indeed core and exist solely because they are part of a chapter 9 case, Stern is not implicated and the Committee, thus, fails to satisfy the first prong of the inquiry for permissive withdrawal.

26.    The only other factor that the Retiree Committee even attempts to satisfy is the second, i.e., the interests of judicial economy.  The Retiree Committee argues that, because it intends to seek an interlocutory appeal of any ruling by this Court in favor of the City, the interests of judicial economy benefit from permissive withdrawal of the reference.  A movant's declared intent to appeal an adverse decision, however, does not constitute cause to withdraw a proceeding.

Indeed, if this were the case, all movants could satisfy the judicial economy factor of the permissive withdrawal analysis by simply declaring such an intent. This argument is likely to be rejected by the District Court as little more than thinly-disguised "forum shopping."

> The only justification put forth by [the movant] is that the bankruptcy judge is somehow unfit to rule on the instant motion, and that allowing the bankruptcy judge to rule would create the need for an otherwise unnecessary appeal, while this court, by agreeing with [the movant], would eliminate the need for such an appeal.
>
> Such "justification" is no more than "forum shopping", and counsels strongly against withdrawing the reference. Furthermore, as the motion is properly before the bankruptcy court, which possesses greater familiarity with the parties, the underlying case, and the instant motion itself, this court finds that withdrawal would not promote efficient use of judicial resources or prevent delay or costs to the parties.

In re Level Propane Gases, Inc., No. 06-00119, 2006 WL 3499916, at *1 (N.D. Ohio Dec. 5, 2006).

27. By the Eligibility Proceedings, the City is not attempting to impair the constitutional rights of any party, and including arguments based upon the federal or Michigan constitutions does not automatically entitle the Retiree Committee to withdrawal of the reference. Accordingly, the Retiree Committee is unlikely to convince the District Court that withdrawal of the reference is appropriate under any statutory or constitutional theory.

* * *

28.     Because the Motion to Withdraw is unlikely to be granted, the Stay Motion should be denied.

### *A Determination of Eligibility Causes No Harm to Retirees*

29.     The Retiree Committee utterly fails to demonstrate that the second Injunction Factor – whether the failure to stay Eligibility Proceedings will cause irreparable harm to retirees – weighs in favor of the imposition of the Stay. Indeed, the Retiree Committee *does not even attempt* to apply the second Injunction Factor to the matter before the Court.  Rather than apply the second Injunction Factor to the Stay (i.e., the subject matter of the Retiree Committee's motion) – and, thus, demonstrate how unstayed Eligibility Proceedings might result in irreparable harm to retirees – the Retiree Committee chooses to dwell instead on issues that are tangentially related, at best, to its requested relief.  Such misdirected argument is insufficient to satisfy the Retiree Committee's burden of proof.

30.     The Retiree Committee argues that irreparable harm to its constituents is established by an alleged violation of retirees' constitutional rights. Stay Motion, at ¶ 21.  But, the question before the Court is whether retirees would suffer irreparable harm *from a denial of the Stay*.  There is simply no suggestion in the Stay Motion that continuing Eligibility Proceedings will harm any retiree in

any way.  Indeed, there is no suggestion that a *determination of eligibility* will harm any retiree in any way.  The Retiree Committee's focus on the prejudice to its members' alleged rights and the potential harm that might result from the impairment of benefits at some later date is entirely misplaced.

31.     The Stay Motion presents the Court with a list of consequences that might result from an impairment of retirees' pension and other benefits. Retiree Committee, at ¶¶ 23-25.  None of these things, however, will arise from a finding that the City is eligible to be a debtor under chapter 9.  A denial of a stay of the Eligibility Proceedings will not cause these results either.  The Stay Motion conspicuously avoids this reality, which conclusively demonstrates that, not only will retirees not suffer irreparable harm from unstayed Eligibility Proceedings, they will not suffer *any harm at all*.

32.     The Retiree Committee's failure to demonstrate the existence of any injury resulting directly from a denial of the Stay Motion (as opposed to some speculative injury that may occur at some later date) dooms its attempt to satisfy the second Injunction Factor under Sixth Circuit law.  Griepentrog, 945 F.2d at 154 ("In evaluating the harm that will occur depending upon whether or not the stay is granted, we generally look to three factors:  (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof

provided…. [T]he harm alleged must be both certain and immediate, rather than speculative or theoretical.") (internal citations and quotation marks omitted).

33.     Because the Stay Motion completely fails to confront the second Injunction Factor, the Retiree Committee fails to satisfy its burden of demonstrating that it will suffer irreparable harm from the lack of a Stay.

### *The City Would Be Harmed by the Imposition of a Stay*

34.     Because the City and its residents will be injured by any delay in the administration of this chapter 9 case, the third Injunction Factor – whether non-movants would be substantially harmed by a stay – weighs in favor of denying the Stay Motion.[7]

35.     The City seeks the administration of this chapter 9 case on as expeditious a schedule as possible.  This is so not because the City is interested in speed for speed's sake, but because every day of delay in the administration of this case inflicts injury on the City and its residents through continuation of intolerably low levels of municipal services and public health and safety and the deferral of any opportunity that the City may have to revitalize itself.  As set forth in the

---

[7]     In the bankruptcy context, a court must concern itself not only with harm to the non-movant from a stay, but harm to the interests of the entire bankruptcy estate.  In re Dana Corp., No. 06-10354, 2007 WL 2908221, at *1 (Bankr. S.D.N.Y. Oct. 3, 2007).  Although the filing of a chapter 9 petition does not create an "estate" *per se*, harm to the City's residents is analogous to the harm to the estate contemplated by the Dana court.

Declaration of Kevyn D. Orr in Support of City of Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code (Docket No. 11) (the "Orr Declaration"), filed on July 18, 2013, the City is (a) currently unable to make investments critical to the health and safety of its residents, (b) plagued by shockingly high crime rates and low police response times, (c) struggling to keep the lights on (with 40% of the City's street lights inoperative as of April 2013), (d) ravaged by extensive and intractable urban blight and (e) saddled with obsolete and decaying infrastructure and equipment. Orr Declaration, at ¶¶ 31-44. Moreover, the City will only be able to attract residents and businesses and prevent existing residents and businesses from leaving when it can demonstrate that it has solved its financial problems and is in a position to finance a recovery. The imposition of the Stay would do nothing but defer progress on all of these fronts.

36. The substantial delay in this case sought by the Stay Motion also jeopardizes the City's best opportunity to effect a plan of adjustment in this matter. The tenure of the Emergency Manager – and, thus, the opportunity to improve public safety and implement a sustainable restructuring of the City that he represents – may be limited. See MCL § 141.1549(6)(c) (providing that the Emergency Manager may be removed from his position by a two-thirds vote of the City Council approved by the Mayor after 18 months of service). Imposition of a

Stay – which could last for months – will significantly reduce the time Mr. Orr will have to achieve his objectives for the City.

37. Instead of confronting the obvious and substantial harm to the City that would result from the relief requested, the Retiree Committee argues that "the only injury [to the City] is the choice of forum to decide issues such as the constitutionality of PA 436 in light of the legislative desire to override the Michigan's [sic] constitutional protections for retirement benefits as found in Article IX, § 24" and that "the City does not lose any constitutional rights and protections." Stay Motion, at ¶ 27. Arguments related to the relative injury to the parties' respective constitutional rights, however, are completely unrelated to the harms inflicted upon the parties by the Stay (which is the matter before the Court). As demonstrated above, substantial and identifiable harm would befall the City in the event of a Stay while retirees suffer no injury at all if such a Stay is denied.

38. Moreover, the Court should refuse to stay proceedings prior to the entry of an order for relief for the same reason that Congress has prohibited a stay of proceedings once an order for relief is entered: the threat of harm to the debtor. Section 921(e) of the Bankruptcy Code provides that "[t]he court may not, on account of an appeal from an order for relief, delay any proceeding under this chapter in the case in which the appeal is being taken; nor shall any court order a

stay of such proceeding pending such appeal." 11 U.S.C. § 921(e). COLLIER ON

BANKRUPTCY describes the purpose of section 921(e) of the Bankruptcy Code as

follows:

> To require a municipality to halt all action in a chapter 9
> case pending [an appeal of an order for relief] would
> defeat the purpose of chapter 9 to enable a municipality
> to obtain expeditious relief and to confirm a plan of
> adjustment quickly so that the municipality does not
> remain under the court's jurisdiction for so long a period
> as to increase the danger of the court's interference in the
> municipality's internal affairs.

6 COLLIER ON BANKRUPTCY ¶ 921.05 (Alan N. Resnick & Henry J. Sommer eds.,

16th ed. 2013). This same danger would arise if the Stay sought by the Retiree

Committee is granted.

39. Because the City has demonstrated that substantial harm would

be inflicted upon it by the imposition of the Stay, the third Injunction Factor

weighs in favor of denying the Stay Motion.

***The Public Interest Would Be Harmed by the Imposition of a Stay***

40. The Retiree Committee argues that the fourth Injunction Factor

– whether the public interest would be served by granting the Stay – weighs in

favor of granting the Stay Motion because "[u]pholding federal constitutional

CLI-2141675v5
13-53846-tjt   Doc 925   Filed 09/18/13   Entered 09/18/13 14:47:40   Page 28 of 32

rights by assuring that local government authorities do not act beyond the scope of their authority undoubtedly serves the public interest." Stay Motion, at ¶ 29.[8]

41.     Again, however, the Retiree Committee argues questions that are not before the Court and ignores matters that are.  Whether enforcing a public servant's proper sphere of action, or defending constitutional rights, promotes the public interest is not the issue before the Court.  The Court is called upon to determine whether the imposition of the Stay benefits the public interest.  As demonstrated with respect to the third Injunction Factor, the public interest would only be undermined by a stay of Eligibility Proceedings.  Unnecessary delay in the administration of these cases would impair, among other things, public health and safety and the City's ability to provide municipal services to its residents.  Courts commonly find that impairment of these and similar municipal functions works to the detriment of the public interest.  See Dearborn Lodging, Inc. v. City of Dearborn, No. 11-10057, 2012 WL 1658684, at *3 (E.D. Mich. May 11, 2012) (denying motion to stay order granting summary judgment to city in proceeding commenced to prevent city from demolishing dangerous structures; finding, among

---

[8]     The Retiree Committee's other argument that granting a Stay serves the public interest – that "the public interest weighs decidedly in favor of Constitutional protections afforded by Article IX, § 24 of the Michigan Constitution" (Stay Motion, at ¶ 30) – is a bromide at best, and meaningless at worst.

other things, that granting the stay would harm the public interest where a stay would (a) pose a threat to public safety and (b) unnecessarily drain public resources; explaining that time was of the essence because "[a]ny delay in the planned demolition would only cause an accumulation of … harms to the City and to the public interest."); Stevenson v. State & Local Police Agencies, 42 F. Supp. 2d 229, 232 (W.D.N.Y. 1999) (noting, while analyzing the "public interest" factor that, "[a]mong the factors that the court can take into account is the effect that issuance of an injunction might have on public safety"); Citizens for Rational Coastal Dev. v. Fed. Highway Admin., No. 07-4551, 2008 WL 508666, at **10-11 (D.N.J. Feb. 21, 2008) (denying plaintiffs' motion to enjoin the replacement of a deteriorating bridge; holding, among other things, that the public interest analysis weighed in favor of denying injunctive relief because (a) "the Court considers these safety issues to be paramount;" (b) "safety issues resulting from the bridge's deficiencies will only continue to increase over time;" and (c) "[g]iven these safety issues, an injunction that may delay the [bridge] project could have serious public safety consequences").

42.     Because a Stay would not be in the public interest, the fourth Injunction Factor weighs in favor of denying the Stay Motion.

WHEREFORE, for the reasons set forth herein, the City respectfully requests that this Court deny the Stay Motion.

CLI-2141675v5

Dated: September 18, 2013         Respectfully submitted,

/s/ Bruce Bennett
Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California  90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
   STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 963-6420
Facsimile:  (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY OF DETROIT