# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |
|  | ) **Expedited Consideration** |
|  | ) **Requested** |

## THE OBJECTORS' MOTION *IN LIMINE* TO PRECLUDE DEBTOR FROM OFFERING EVIDENCE REGARDING THE LIKELIHOOD OF SUCCESS, COMPLEXITY, AND EXPENSE OF CLAIMS THE CITY SEEKS TO SETTLE WITH THE FORBEARANCE AND OPTIONAL TERMINATION AGREEMENT

### Preliminary Statement

By this motion, the Objectors[1] seek to preclude the introduction of evidence by the debtor, the City of Detroit (the "City" or the "Debtor"), supporting the complexity, expense, inconvenience, delay, or probability of success in potential litigations arising from the claims purportedly being resolved in connection with the Debtor's motion to approve the Forbearance and Optional Termination Agreement ("Forbearance Agreement").[2] While these are required factors that

---

[1] This motion is joined by Syncora Capital Assurance and Syncora Guarantee Inc. ("Syncora"), Erste Europäische Pfandbriefund Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A., DEPFA Bank PLC, Retiree Association Parties, Retired Detroit Police Members Association, Ambac Assurance Corporation, National Public Finance Guarantee Corporation, Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit, and the Official Committee of Retirees.

[2] This motion relates to the September 23, 2013 hearing on the *Motion of Debtor for Entry of an Order (I) Authorizing the Assumption of that Certain Forbearance and Optional Termination Agreement Pursuant to*

both the City and the Court, in deciding this motion, must evaluate, the City has failed and refused to provide any evidence regarding the claims purportedly being settled by the Forbearance Agreement or its evaluation of those claims. Neither the exhibits nor the sworn declarations submitted by the City in support of its motion provide the necessary information. And, when questioned on the subjects in depositions, the City's representatives asserted broad claims of attorney-client privilege over all aspects of their evaluation of the potential claims by or against the City resolved by the Forbearance Agreement. In so doing, the City has blocked the Objectors from obtaining discovery regarding the justification for the settlement presented to the Court under Rule 9019. Because the City has shielded its analysis of the merits, complexity, and related cost of litigation of claims resolved by the Forbearance Agreement, it should be precluded from introducing such evidence at the hearing on the Assumption Motion.

## Background

**I.    The City's Motion and Supporting Documents Contain No Evidence Regarding the Probability Of Success, Complexity, and Expense of the Claims that the Forbearance Agreement Purports to Settle**

While the City's motion asserts in a conclusory fashion that the settlement embodied in the Forbearance Agreement is justified, not a shred of evidence supporting this has been provided. Specifically, the City has not provided any

---

*Section 365(a) of the Bankruptcy Code, (II) Approving Such Agreement Pursuant [to] Rule 9019, and (III) Granting Related Relief (the "Assumption Motion") [Docket No. 17].*

analysis in any of its filings regarding the probability of success of the claims by or against the City that are being settled. It has similarly not provided any analysis of the cost, delay, expense, and burden of litigating the claims that the City purports to settle with the Forbearance Agreement. Instead, the City's filings merely contain general statements regarding the "protracted" and "uncertain" nature of any litigation surrounding those claims. The sum total of the evidence provided by the City regarding its determination to settle rather than litigate can be found in just three generally-worded paragraphs:

- "The Forbearance Agreement allows the City to access much needed cash flows, provides for a workable unwind of its swap obligations at a discounted price, and avoids potentially protracted litigation involving the swap transactions." (Assumption Mot. ¶ 41.)

- "Further, while the City has examined whether there are viable actions to challenge the Swap Contracts or the City's pledge of the Casino Revenue to secure its obligations to the Swap Counterparties, litigation would be protracted, expensive and, in terms of success, uncertain." (Assumption Mot. ¶ 47.)

- "The Swap Contracts and related documents are exceedingly complex, as is any determination of the amounts owing and the rights of the parties thereunder. While certain creditors have informed the City of their views on these arrangements, regardless of the merits of these positions, the issues are extremely complicated and, accordingly, subject to a high degree of uncertainty." (Assumption Mot. ¶ 47.)

No evidentiary citations accompany the aforementioned paragraphs. And the City has not identified even a single piece of evidence that supports these bare bones contentions that a litigation analysis was actually performed. Indeed, the

3

City's motion never even identifies *what claims* are being settled by the Forbearance Agreement.

The declaration provided by Mr. Orr in support of the City's First Day Filings is similarly vague:

- "I believe that the assumption and approval of the compromise is fair, reasonable, equitable and in the best interests of the City and its creditors. The compromise, if approved, will allow the City access to much needed cash flows, provide for a workable unwind of its unfavorable swap obligations at a discounted price and avoid potentially protracted litigation involving the swap transactions." (Orr Dec. ¶ 12.)

But here again, no analysis of the "potentially protracted litigation" is indicated. In short, the paper record provided by the City in its Assumption Motion does not contain specific detail regarding the probability of success in litigation, nor does it address the complexity, expense, inconvenience and delay of the litigation resulting from the claims that the Forbearance Agreements proposes to resolve.

## II. The City Has Invoked the Attorney-Client Privilege with Respect to all Evidence Regarding the Probability of Success, Complexity, and Expense of the Claims the Forbearance Agreement Proposes to Resolve

In an effort to understand the City's reasoning, the Objectors deposed Emergency Manager Kevyn Orr and lead negotiator of the Forbearance Agreement, Kenneth Buckfire. In the depositions, these witnesses testified that the *only* assessment of legal claims and defenses was made by the City's counsel —

4

neither Mr. Orr nor Mr. Buckfire independently analyzed the strengths of the City's position vis-à-vis the Swap Counterparties with which they were negotiating and settling:

> MR. HACKNEY: And just for the record, if I asked . . . you [to] assess the likelihood of success of all of the different claims that are being resolved by the forbearance agreement, you would assert the attorney-client privilege and refuse to answer?

> MR. ORR: That is correct. I have made no independent assessment outside of any conversation I would have had with counsel and my advisors.

(Orr Dep. 142:16-23.)

> MS. ENGLISH: Did you make an independent assessment apart from advice of counsel as to the strengths -- strengths or weaknesses of the City's claims against the Swap counterparties?

> MR. ORR: Not without the advice of counsel, no.

(Orr Dep. 278:23-279:2.)

When asked, for instance, about the time and expense associated with litigation with the Swap Counterparties, the city's counsel made very clear that no information would be provided regarding those issues because no such information was available for which the City was not claiming privilege:

> MR. SHUMAKER: . . . I allowed you to go forward with whether he considered the length of litigation in his answer, but I don't want him to go into the specifics of any sort of analysis that was done by counsel.

(Orr Dep. 286:4-12.)

As Objectors' counsel sought to learn the elements of the analysis that was done — assuming one was actually done — the City invoked the attorney-client privilege at least thirty times and directed its witnesses not to answer any questions regarding the merits and costs of the claims purportedly being settled by the Forbearance Agreement. This included even the evaluation of *what claims* might be settled by the Forbearance Agreement:

> MR. HACKNEY: And if I ask you to tell me what claims you have, will you tell me . . . or will you assert the privilege?
>
> MR. SHUMAKER: I would instruct the witness that may implicate attorney-client communications.
>
> MR. ORR: I would have no independent knowledge of what claims [the City] may have other than discussions I've had with counsel so I wouldn't answer.

(Orr Dep. 140:4-10.)

Similarly, when asked about the validity of the pledge of casino revenues, Mr. Orr admitted he would decline to answer on the basis of the attorney-client privilege.

> MR. HACKNEY: If I ask you your view on the likelihood that the pledge of the gaming revenues under the Michigan Gaming Act is an invalid pledge, you'll assert the attorney-client privilege, correct?
>
> MR. ORR. Yes, more than likely.

(Orr Dep. 14:9-13.)

And again, when asked about the claims that the Swap Counterparties may have against the City, Mr. Orr declined to respond on the basis of attorney-client privilege:

> MR. HACKNEY: Have you evaluated . . . whether there are other tort or contract claims that the Swap counterparties may have against the City?
>
> MR. ORR. I think there were discussions, but, here again, those would be wrapped up in attorney-client communications.

(Orr Dep. 136:19-24.)

The City's counsel clarified that it would instruct Mr. Orr not to answer any questions regarding the content of the factors considered by the City in reaching its decisions, and Mr. Orr agreed that he would not provide conclusions regarding multiple factors underlying the approval of the Forbearance Agreement.[3]

> MR. SHUMAKER: Let me state for the record you can ask questions as to whether those -- those factors were considered by Mr. Orr, but obviously if you're going to ask what he was -- what he was advised by counsel, then I'm going to instruct him not to answer.

---

[3]    Mr. Buckfire was similarly instructed by counsel not to answer any questions regarding the substance of legal advice received from counsel on question related to the COPs, Swaps, and various rights thereunder.

> MR. HACKNEY: Did you take legal advice, you personally as the lead negotiator for the City, did you take legal advice from Jones Day in advance of the June 4 meeting?
> MR. BUCKFIRE: Yes.
> MR. HACKNEY: Would you disclose to me the legal advice you obtained from them?
> MR. CULLEN: I'll instruct him not to answer.
> MR. HACKNEY: So, if I ask questions about the legal advice you had been given about the COPs Swap structure or various parties' rights thereunder, you would instruct the witness not to answer those questions?
> MR. CULLEN: Right.

(Buckfire Dep. 109:22-110:14.)

Buckfire claimed privilege regarding, among other things, the nature and validity of the Swap Counterparties' liens. (Buckfire Dep. 203:21-23; Orr Dep. 14:9-12).

7

> MR. ORR: When I say more than likely, that's -- that's exactly the distinction that I'm trying to make. Did I have discussions with my counsel? Yes. Did those discussions take into consideration some of those factors? Yes. Am I going to tell you what those discussions were and what, if any, conclusions were made? No.

(Orr Dep. 14:24-15:1-11.)

Though Mr. Orr listed certain issues the City may have considered, he would only state that particular issues were "probably" or "more than likely" considered by the City in reaching its decision to enter into the Forbearance Agreement, not the issues that the City conclusively analyzed to reach its decision to enter into the Forbearance Agreement.[4]  When asked directly about one of the issues he did not list, Mr. Orr would not commit to its having played a role in the City's analysis and decisions:

> MS. ENGLISH: Was Act 34 [one of the issues explored with counsel]?
>
> MR. ORR: More than likely, yes.
>
> MS. ENGLISH: More than likely? You don't know?
>
> MR. ORR: No, sitting here today, I just said to you, for instance, that many of the issues, without being a compendium or being exhaustive, were examined. Act 34 was probably one of them.

(Orr Dep. 276:3-9.)

The City and its representatives thus repeatedly claimed attorney-client privilege on multiple issues and declined to describe in detail the content of the

---

[4]    Mr. Orr listed certain issues that he stated the City may have considered.  (*See, e.g.,* Orr Dep. 273:21-274:8.) However, Mr. Orr provided no further detail regarding any of these issues or what claims they may be referring to, and admitted that the list was not inclusive of all the issues actually considered.  (Orr Dep 277:23-24.)

City's conclusions and considerations. Privilege was claimed with respect to the following issues:

- Legal advice rendered to Mr. Orr in connection with the Forbearance Agreement's negotiation and execution. (Orr Dep. 13:16-24.)

- Likelihood of success of all claims being resolved by the Forbearance Agreement. (Orr Dep. 142:16-23.)

- Likelihood that the City's swap and validity arguments would prevail. (Orr Dep. 14:4-8.)

- Existence of City claims against Swap Counterparties. (Orr Dep. 140:4-10.)

- Likelihood that the City would prevail on a claim or defense against the Swap Counterparties. (Orr Dep. 14:13-18; 140:12-14.)

- Legal merits of the insurers' contentions regarding their consent rights under the Swap Agreements, Collateral Agreement, and Contract Administration Agreement. (Orr Dep. 85-88.)

- Likelihood of success of the City's argument that the operation of the Collateral Agreement's cash trapping provision is not automatic. (Orr Dep. 115:5-10.)

- Existence of defaults under the agreements where the Swap Counterparties are the defaulting parties. (Orr Dep. 134:4-20.)

- Existence of tort or contract claims that the Swap Counterparties may have against the City. (Orr Dep. 136:19-24.)

- Likelihood that the automatic stay applies to the casino revenues in the General Receipts Subaccount. (Orr Dep. 151:6-11.)

- Whether the casino revenues are "property of the estate" for purposes of the Bankruptcy Code. (Orr Dep. 153:8-18.)

- Validity of the Swap Agreements. (Orr Dep. 161:5-13.)

9

- Validity of the Certificates of Participation ("COPs"). (Orr Dep. 163:1-4.)

- Claims arising from the Forbearance Agreement's potential violation of the Service Contracts' priority scheme (or "waterfall"). (Orr Dep. 165: 7-21.)

- Claims of COP holders against Swap Counterparties if the Forbearance Agreement optional termination right is exercised. (Orr Dep. 166:4-12.)

- Whether and how much creditor recoveries would be enhanced if Forbearance Agreement is approved. (Orr Dep. 216:15-25.)

- Whether the Forbearance Agreement is part of an integrated transaction with the Amended Swap Agreements. (Orr Dep. 105:1-106:8.)

- Interaction between rights granted under the Contract Administration Agreement and rights granted by the Forbearance Agreement. (Orr Dep. 124:1-22.)

Additionally, the City has refused to provide any evidence that would either (a) support the City's contention that an analysis of the litigation factors was actually performed, or (b) support the City's contention that a privilege claim is warranted. Following the depositions, the Objectors submitted a request for any and all documents showing the purported analysis or, at a minimum for a privilege log showing the analytical documents. The City flatly refused to produce either. (*See* Email Correspondence From G. Shumaker Dated September 6, 2013, attached herein as Exhibit 6-C.)

Thus, in the course of the very limited discovery granted to Objectors in this matter, the City has either 1) made conclusory statements regarding the

complexity, merits, and costs associated with the claims being settled by the Forbearance Agreement without even a shred of evidentiary support or 2) shielded the substance of the evaluation of any such claims and litigation by invoking the attorney-client privilege. It has not offered any other witnesses who would testify about these issues, and the witnesses it has offered have formed no independent view regarding the probability of success of the claims by or against the City and the cost, delay, and inconvenience of litigating those claims.

<u>Argument</u>

I.    **The City Must Provide Detailed Evidence Regarding the Probability of Success, Complexity, and Expense of the Claims that the Forbearance Agreement Purports to Resolve.**

In order to approve a settlement as fair and equitable under Rule 9019 of the Bankruptcy Code, a court must apprise itself of the underlying facts of the settlement. *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988) ("The court is not permitted to act as a mere rubber stamp . . . ."). The Supreme Court has made clear that "[T]here can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Thus, a court must have a factual record before it that is sufficient for the

court's own evaluation of the fairness and equity of the settlement a party seeks to approve.

In deciding whether a proposal is fair and equitable, Courts in the Sixth Circuit must consider four factors: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views. *In re Haven, Inc.*, 326 B.R. 901 (B.A.P. 6th Cir. 2005) (internal quotations omitted). The City has the burden to establish that a settlement is appropriate with respect to these considerations. *See In re Hallet,* 33 B.R. 564, 565 (Bankr. D. Me. 1983).

The evidence submitted in support of a 9019(a) settlement must be detailed and must provide the court with enough information to assess each of the above four factors. *See In re Haven, Inc.*, 326 B.R. 901 (B.A.P. 6th Cir. 2005) (reversing a bankruptcy court's approval of a settlement where "the order approving the compromise does not make any specific findings of fact regarding any of [the] four factors."); *see also In re W. Pointe Properties, L.P.*, 249 B.R. 273, 285 (Bankr. E.D. Tenn. 2000) (denying a motion to approve a settlement under the four Rule 9019 approval factors after assessing detailed testimonial record regarding the merits of the claims being settled).

For example, in *In re Spansion, Inc.*, the court denied a settlement under Rule 9019 where the debtors provided no detailed information regarding the likelihood of success on the claims being settled, and the complexity, expense, inconvenience and delay attending litigation of those claims. *In re Spansion, Inc.*, 09-10690 (KJC), 2009 WL 1531788 (Bankr. D. Del. June 2, 2009). In considering these factors, the court noted that "the Debtors have provided little information as to the specifics of the Actions to provide a basis for evaluating the strengths and weaknesses of the litigation. . . . This likewise makes it difficult to conclude that the settlement is preferable to the expense, inconvenience and delay of litigation." *Id.* at *7-*8. Because of the impoverished factual basis provided to the court regarding the four required factors for 9019 settlement approval, the court declined to approve the settlement. *Id.* at *9.

II. **The City Has Not Provided Any Evidence of the Probability of Success, Complexity, and Expense of the Claims That the Forbearance Agreement Purports to Resolve and Has Systematically Blocked the Objectors' Efforts to Discover Its Views Regarding the Claims Being Settled.**

To date, the City and its representatives have not provided any evidence to support their statements that, for example, "while the City has examined whether there are viable actions to challenge the Swap Contracts or the City's pledge of the Casino Revenue to secure its obligations to the Swap Counterparties, litigation would be protracted, expensive and, in terms of success, uncertain." (Assumption

Mot. ¶ 47.) The City does not at any point, in pleadings, affidavits, or declarations provide the facts necessary to determine whether 1) the City would be successful on any of its or other parties' claims or 2) the litigation the Forbearance Agreement purports to settle is sufficiently complex, expensive, or inconvenient to merit approval of the Forbearance Agreement. Instead, the City has relied exclusively on vague assertions that the litigation would be "potentially protracted" and "uncertain." (Assumption Mot. ¶ 41, ¶ 47; *see also* Orr Dec. ¶ 12.) And, in fact, the City never even identifies what claims are being settled by the Forbearance Agreement.

When questioned directly regarding the merits and substance of the various claims in the course of deposition testimony, the City and its representatives declined to provide the basis for any of their assertions, choosing instead to withhold their analysis as protected by the attorney-client privilege. (*See supra* Background II). Moreover, Mr. Orr said, repeatedly, that he had no independent basis for any views regarding the likelihood of success of any claims, the cost and complexity of any litigation, outside of his discussions with counsel. (*See, e.g.,* Orr Dep. 271:23-272:5.)

In claiming attorney-client privilege over <u>all</u> analysis regarding the merits, complexity, and expense of the claims the City is attempting to resolve, the City has not given the Objectors (nor the Court) the opportunity to evaluate, or even

understand, the rationale for the settlement purportedly effected by the Forbearance Agreement.

**III. Having Blocked the Objectors' Efforts to Discover the City's Specific Analysis of the Probability of Success, Complexity, and Expense of the Claims Being Settled, the City Should Not Be Permitted to Introduce Evidence on These Points at Trial.**

It is foundational that a party is not permitted to use the attorney-client privilege as both a sword and a shield. *In re Lott*, 139 F. App'x 658, 660 (6th Cir. 2005) ("[L]itigants cannot hide behind the privilege if they are relying upon privileged communications to make their case. 'The attorney-client privilege cannot at once be used as a shield and a sword.'") *quoting United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991). If a party intends to rely on the advice of counsel as evidence at trial, it is required to permit discovery of that advice or waive its use at trial. *See Arista Records LLC v. Lime Grp. LLC*, 06 CV 5936 KMW, 2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011) ("[A] party who intends to rely at trial on the advice of counsel must make a full disclosure during discovery; failure to do so constitutes a waiver of the advice-of-counsel defense . . . ."); *see also Trouble v. Wet Seal, Inc.,* 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001) ("[Defendant] waived any available advice of counsel defense by objecting, based on the attorney-client privilege, to [Plaintiff's] discovery requests . . . .").

Conversely, where a litigant uses the attorney-client privilege to prevent an adversary's inquiry regarding the content of communications with counsel, he is

not permitted to use the substance of those communications to support claims at trial. *See In re Residential Capital, LLC*, 491 B.R. 63, 72 (Bankr. S.D.N.Y. 2013) ("[A]fter having asserted the attorney-client privilege throughout discovery, the Debtors cannot now introduce the substance of whatever advice it sought and received . . . ."). Multiple courts have explicitly excluded the presentation of evidence based on counsel's advice at trial where a party claimed privilege over that advice in discovery. *See, e.g., E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*, 90 F. Supp. 2d 277, 296 (S.D.N.Y. 2000) aff'd, 4 F. App'x 81 (2d Cir. 2001) ("Having blocked his adversary from conducting discovery on this issue, he will not now be heard to advance reliance on counsel."); *McLean v. Garage Mgmt. Corp.*, 10 CIV. 3950 DLC, 2012 WL 1358739 (S.D.N.Y. Apr. 19, 2012) ("GMC has invoked, as it is entitled to do, its attorney-client privilege. But absent a waiver of the privilege, GMC cannot sustain a defense based on good faith reliance on the advice of counsel.")

In *In re Residential Capital*, a debtor sought court approval of a settlement with certain parties under Rule 9019. 491 B.R. 63, 65 (Bankr. S.D.N.Y. 2013). In the discovery phase leading up to the hearing on its 9019 motion, the debtor claimed privilege throughout its document productions and depositions. *Id.* In deposition, the debtor's CEO was instructed by counsel not to reveal the substance of any of the communications forming the basis for the approval of the settlement,

16

including legal defenses, liabilities, operation of the underlying agreements, and other related issues. *Id.* Objectors to the settlement argued that the debtor should be precluded from introducing the substance of the advice of its counsel because the debtor had claimed attorney client privilege over that advice throughout the discovery period. *Id.* The court agreed, and ruled that "A court should exclude any testimony or evidentiary presentations by the Defendants at trial if that same testimony or evidence was withheld from Plaintiffs during discovery based on attorney-client privilege." *Id.* at 69.

As in *Residential Capital*, here, the City should not be permitted to introduce evidence or argument regarding its analysis of the probability of success in the litigation and the complexity, expense, inconvenience and delay attending litigation of those claims purportedly being resolved by the Forbearance Agreement. The City has entirely blocked the Objectors from the *only* source of information regarding these factors, stripping the Objectors of the opportunity to understand, consider, and rebut this evidence at the hearing. Because the City's representatives testified that they have no independent knowledge or judgment regarding the evaluation of such claims outside of the advice of counsel, the Objectors would be unfairly prejudiced if the City were permitted to introduce the substance of these communications for the first time at the hearing on the Assumption Motion. The City should thus be precluded from introducing any

evidence regarding the first and third factors used to evaluate Rule 9019 Settlements in the Sixth Circuit — evaluations regarding the merits of the litigations being settled and compromised, and evidence of the complexity, expense, and burden associated with those litigations.[5]

## Conclusion

For the foregoing reasons, the Objectors respectfully request that this Court preclude the City from introducing evidence concerning the likelihood of success on the merits, complexity, and cost of the litigation of claims being released by the Forbearance Agreement and enter an order substantially similar to that attached herein as Exhibit 1.

*[Remainder of this page intentionally left blank]*

---

[5] The second factor of the four-factor Rule 9019 test relating to difficulty in collection is typically construed as relating to the successful collection of amounts owed under a judgment. *See, e.g., In re Aldrich,* 325 B.R. 493, 498 (Bankr. D. Mass. 2005) (denying a motion under Rule 9019 in part on the grounds that the evidence suggested that the settling party could satisfy a judgment amount in excess of the settlement). To the extent it is construed here to relate to the City's ability to obtain *interim* access to the casino revenues, the City should be barred from introducing such evidence because it refused to answer questions regarding the likelihood of success in obtaining such access through litigation or by way of the automatic stay. (Orr Dep. 151:6-11.)

Dated: September 18, 2013

KIRKLAND & ELLIS LLP

By: _/s/ Stephen C. Hackney_____
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone:  (248) 646-5070
Facsimile:   (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*

By: _/s/ Vincent J. Marriott, III_____
Howard S. Sher
JACOB & WEINGARTEN, P.C.
Somerset Place
2301 W. Big Beaver Road, Suite 777
Troy, Michigan  48084
Telephone:  (248) 649-1200
Facsimile:  (248) 649-2920
E-mail:  howard@jacobweingarten.com

-and-

Vincent J. Marriott, III
BALLARD SPAHR LLP

19

1735 Market Street, 51st Flr.
Philadelphia, PA  19103
Phone: 215.864.8236
Fax: 215.864.9762
Email: marriott@ballardspahr.com

-and-

Matthew G. Summers
**BALLARD SPAHR LLP**
919 North Market Street, 11th Floor
Wilmington, Delaware  19801
Telephone:  (302) 252-4428
Facsimile:  (410) 361-8930
E-mail:  summersm@ballardspahr.com

*Attorneys for Erste Europaische Pfandbriefund
Kommunalkreditbank Aktiengesellschaft in
Luxemburg S.A.*

By: _/s/ Karen V. Newbury_____
Rick L. Frimmer
Karen V. Newbury
Michael W. Ott
SCHIFF HARDIN, LLP
233 S. Wacker Drive, Suite 6600
Chicago, IL  60606
Telephone:  (312) 258-5600
Facsimile:  (312) 258-5600
E-mail:  rfrimmer@schiffhardin.com
E-mail:  knewbury@schiffhardin.com
E-mail:  mott@schiffhardin.com

*Attorneys for DEPFA Bank PLC*

By: _/s/ Thomas R. Morris_____
Thomas R. Morris
Karin F. Avery
**SILVERMAN & MORRIS, P.L.L.C.**
30500 Northwestern Highway, Suite 200

20

Farmington Hills, Michigan 48334
Telephone:  (248) 539-1330
Facsimile:  (248) 539-1355
E-mail:  morris@silvermanmorris.com
E-mail:  avery@silvermanmorris.com

-and-

**LIPPITT O'KEEFE, PLLC**
Brian D. O'Keefe
Ryan C. Plecha
370 East Maple Road, 3rd Floor
Birmingham, Michigan  48009
Telephone:  (248); 646-8292
Facsimile:  (248) 646-8375
E-mail:  bokeefe@lippittokeefe.com
E-mail:  rplecha@lippittokeefe.com

*Attorneys for Retiree Association Parties*

By: _/s/Meredith E. Taunt_____
Lynn M. Brimer (P43291)
Meredith E. Taunt (P69698)
Mallory A. Field (P75289)
**STROBL & SHARP, P.C.**
300 East Long Lake Road, Suite 200
Bloomfield Hills, MI  48304-2376
Telephone:  (248) 540-2300
Facsimile:  (248) 645-2690
lbrimer@stroblpc.com
mtaunt@stroblpc.com
mfield@stroblpc.com

*Attorneys for Retired Detroit Police Members Association*

By: _/s/ Caroline Turner English_____
Carol Connor Cohen
Caroline Turner English
**ARENT FOX LLP**

21

1717 K Street, NW
Washington, DC  20036-5342
Telephone:  (202) 857-6054
E-mail:  Carol.Cohen@arentfox.com

-and-

David L. Dubrow
Mark A. Angelov
**ARENT FOX LLP**
1675 Broadway
New York, NY  10019
Telephone:  (212) 484-3900

-and-

SCHAFER AND WEINER, PLLC
Daniel J. Weiner (P32010)
Brendan G. Best (P66370)
40950 Woodward Ave., Suite 100
Bloomfield Hills, MI  48304
Telephone:  (248) 540-3340
E-mail:  bbest@schaferandweiner.com

*Attorneys for Ambac Assurance Corporation*

By: */s/ Guy S. Neal*_____
Eric D. Novetsky
Louis P. Rochkind
**JAFFE, RAITT, HEUER & WEISS, P.C.**
2777 Franklin Road, Suite 2500
Southfield, MI  48034
Telephone:  (248) 351-3000
Facsimile:  (248) 351-3082
E-mail:  enovetsky@jaffelaw.com

-and-

Jeffrey E. Bjork
**SIDLEY AUSTIN LLP**

22

555 West Fifth Street, Suite 4000
Los Angeles, CA  90013
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600
E-mail:  jbjork@sidley.com

-and-

**SIDLEY AUSTIN LLP**
Guy S. Neal
1501 K Street, N.W.
Washington, DC  20005
Telephone:  (202) 736-8000
Facsimile:  (202) 736-8711
E-mail:  gneal@sidley.com

*Attorneys for National Public Finance Guarantee*
*Corporation*


By:  */s/ Lawrence A. Larose*
Lawrence A. Larose, Esq.
Samuel S. Kohn, Esq.
Carrie V. Hardman, Esq.
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY  100166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700
E-mail:  llarose@winston.com
E-mail:  skohn@winston.com
E-mail:  chardman@winston.com

-and-

Sarah T. Foss, Esq.
**WINSTON & STRAWN LLP**
1111 Louisiana, 25th Floor
Houston, TX  77002-5242
Telephone:  (713) 651-2600

23

Facsimile:  (713) 651-2700
E-mail:  sfoss@winston.com

*Attorneys for Assured Guaranty Municipal Corp.*

By: _/s/ Mark R. James_
Ernest J. Essad Jr.
Mark R. James
**WILLIAMS, WILLIAMS, RATTNER &
PLUNKETT, P.C.**
280 North Old Woodward Avenue, Suite 300
Birmingham, MI  48009
Telephone:  (248) 642-0333
Facsimile:  (248) 642-0856
E-mail:  EJEssad@wwrplaw.com
E-mail:  mrjames@wwrplaw.com

-and-

Alfredo R. Pérez
**WEIL, GOTSHAL & MANGES LLP**
700 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
E-mail:  Alfredo.perez@weil.com

*Attorneys for Financial Guaranty Insurance
Company*

By:  _/s/Robert D. Gordon_
Robert D. Gordon
Shannon L. Deeby
CLARK HILL PLC
151 South Old Woodward Avenue, Suite 200
Birmingham, MI  48009
Telephone:  (248) 988-5882
Facsimile:  (248) 988-2502
E-mail:  rgordon@clarkhill.com

24

*Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*

By: */s/ Carole Neville*
Carole Neville
Claude Montgomery
DENTONS
1221 Avenue of the Americas
New York, New York  10020-1089
D +1 212 768 6700
F +1 212 768 6800
carole.neville@dentons.com
claude.montgomery@dentons.com

*Counsel to the Official Committee of Retirees*