UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) **Expedited Consideration** |
| | ) **Requested** |

**THE OBJECTORS' MOTION *IN LIMINE* TO PRECLUDE DEBTOR FROM OFFERING EVIDENCE REGARDING THE CITY'S NEED TO OBTAIN CASINO REVENUES IN CONNECTION WITH ITS DEBTOR-IN-POSSESSION FINANCING EFFORTS**

## Preliminary Statement

By this motion, the Objectors[1] seek to preclude the introduction of evidence and argument by the debtor, the City of Detroit (the "City"), regarding the City's post hoc rationalization for the Forbearance Agreement, i.e., that it needed to cut a deal with the Swap Counterparties in order to free up the casino revenues as collateral for post-petition debtor-in-possession ("DIP") financing. The City's

---

[1] This motion is joined by Syncora Capital Assurance and Syncora Guarantee Inc. ("Syncora"), Erste Europäische Pfandbriefund Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A., DEPFA Bank PLC, Retiree Association Parties, Retired Detroit Police Members Association, Ambac Assurance Corporation, National Public Finance Guarantee Corporation, Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit, and the Official Committee of Retirees.

motion and supporting exhibits never referenced this purported justification.[2] Instead, it surfaced for the very first time during the depositions of the City's representatives. Still, while the City's witnesses testified that the ability to collateralize the casino revenue for DIP financing was a driving factor and a business justification for the Forbearance Agreement, they refused to provide information regarding the request for proposals or the anticipated DIP loan collateral package on the grounds that such information was "commercially sensitive." The Objectors anticipate that the City will argue that its need for collateralization of the casinos revenues in order to obtain post-petition financing supports its exercise of business judgment and the fairness and equity of the settlement purportedly effectuated by the Forbearance Agreement. Because the City has refused to provide any information regarding its efforts to secure DIP financing, it should be precluded from offering any evidence at the hearing of its new-found theory that the need for casino revenue collateralization justified the Forbearance Agreement.

---

[2] This motion relates to the September 23, 2013 hearing on the *Motion of Debtor for Entry of an Order (I) Authorizing the Assumption of that Certain Forbearance and Optional Termination Agreement Pursuant to Section 365(a) of the Bankruptcy Code, (II) Approving Such Agreement Pursuant [to] Rule 9019, and (III) Granting Related Relief* (the "Assumption Motion") [Docket No. 17].

## Background

### I. Collateralization of the Casino Revenue Is a Post Hoc Justification for the Forbearance Agreement.

Neither the City's motion to approve the Forbearance Agreement nor any of its supporting exhibits cite collateralization of the casino revenue as a business reason supporting this settlement. The City's motion cited three reasons why the Forbearance Agreement purportedly constituted a sound exercise of business judgment and was fair and equitable: (1) it would allow the City access to cash flow; (2) it provides a workable unwind of the swap obligations; and (3) it avoids litigation with the swap counterparties. (*See* Assumption Motion ¶ 41.) These three reasons were discussed in the City's moving papers at length. Nowhere in its papers does the City discuss DIP financing or the need to offer a lien on casino revenues as part of the DIP collateral package. This purported justification was raised for the very first time during the depositions of the City's witnesses, Emergency Manager Kevyn Orr and the lead negotiator of the Forbearance Agreement, Kenneth Buckfire. Notably, these depositions occurred just after the City had issued a request for DIP financing proposals to more than thirty parties. (Buckfire Dep. 73:9-11.)

### II. The City and Its Representatives Have Barred Inquiry into Key Aspects of the DIP Financing.

While Mr. Buckfire and Mr. Orr suddenly testified that the Forbearance Agreement was necessary so that the City could offer collateralization of the

3

casino revenues in a DIP loan, the City's counsel blocked the Objectors from inquiring into details regarding the collateral package being offered as part of the City's DIP financing. Over 15 times throughout these depositions, it was claimed that this information could not be disclosed because it was "commercially sensitive."[3]

Mr. Buckfire would not, for instance, discuss the covenants in the term sheet, the collateral package (aside from the casino revenues), or the parties potentially involved in the financing.

> MR. SUMMERS: What covenants, if any, are included in the RFP as being acceptable or not acceptable?
>
> MR. BUCKFIRE: I'm not going to discuss that. It's commercially sensitive.

(Buckfire Dep. 73:24-74:2)

> MR. CULLEN: . . . So, we're not going to answer questions about individual parties, we're not going to answer questions about the strategy of negotiating with those parties . . . You can go through those general items, but the actual strategy, the terms of arrangements with individual parties I'm not going to have him go into now.

(Buckfire Dep 72:7-22.)

Mr. Buckfire also refused to answer any questions about the collateral package being offered as part of the DIP financing on the basis of the claim that this information was commercially sensitive.

---

[3] The City never sought a protective order with respect to this information; it merely directed its witnesses to refuse to answer the Objectors' questions.

> MR. SUMMERS: What other [in addition to a lien on casino revenues] collateral is the City offering to secure the DIP financing loan?
>
> MR. BUCKFIRE: I'm not going to answer that question.

(Buckfire Dep. 74:12-14.)

> MR. SUMMERS: Is the City offering art work as collateral?
>
> MR. BUCKFIRE: I'm not going to discuss the terms of the term sheet, sorry.

(Buckfire Dep. 75:2-4).

Specifically, Mr. Buckfire would not discuss at all whether the City had considered alternate sources of funding from the State of Michigan or federal government, continuing to claim that this is commercially sensitive information.

> MR. SUMMERS: Has the City looked into possible sources of funding from the State of Michigan?[4]
>
> MR. BUCKFIRE: I'm not going to discuss that.
>
> MR. SUMMERS: Has the City looked into possible sources of funding from the federal government?
>
> MR. BUCKFIRE: I'm not going to discuss that either.
>
> MR. SUMMERS: On what basis?
>
> MR. BUCKFIRE: Commercially sensitive information.

---

[4] Mr. Orr stated in his deposition that, though the information regarding aid from the State of Michigan and the Federal Government was commercially sensitive, he understood that neither liquidity nor credit enhancement would be provided by the State of Michigan or the Federal Government in connection with the DIP financing. (Orr Dep 207:6-21.) He did not provide specifics and admitted that Mr. Buckfire is leading the DIP financing process for the City. (Orr Dep 201:10-17.) Mr. Buckfire, as noted above, refused to answer the relevant questions.

5

(Buckfire Dep. 107:12-19.)

> MR. HACKNEY: And why aren't you going to tell me about [alternate sources of funding from the State or federal government]?
>
> MR. BUCKFIRE: It's commercially sensitive information,

(Buckfire Dep. 162:20-163:2.)

Mr. Buckfire also declined to provide specifics about the operation of the collateral package being offered in connection with the DIP financing, even though he had stated the DIP would be in part collateralized with casino revenues:

> MR. HACKNEY: As the banker who is leading the DIP, what's your understanding of the role the casino revenues will play in the collateral package offered in connection with the DIP?
>
> MR. BUCKFIRE: They will be part of the collateral package.
>
> MR. HACKNEY: So, they will be part, and when you say they, do you mean a specific period of time of the casino revenues or do you mean casino revenues projecting into the future?
>
> MR. BUCKFIRE: It's commercially sensitive so I'm going to decline to answer it.

(Buckfire Dep. 142:19-143:4.)

Finally, the City's counsel also invoked commercial sensitivity in Mr. Orr's deposition:

> MR. HACKNEY: Is the -- is the City considering pledging art as collateral?

6

13-53846-tjt    Doc 935    Filed 09/18/13    Entered 09/18/13 18:53:06    Page 6 of 18

> MR. SHUMAKER: Again, I'm going to get into now the -- this is a very commercially sensitive subject.
>
> MR. HACKNEY: I'm just asking the questions. You guys got to decide --
>
> MR. SHUMAKER: I'm just stating my objection, and the fact of the matter is, as was stated yesterday with -- with Mr. Buckfire, is that when we get into the -- as you said, the RFP, the DIP RFP process is just started. We're not going to go into strategy or what the terms are or what the specifics are, because we do not believe that this is something that would be down to the City's benefit.

(Orr Dep. 209:21-210:10.)

Thus, the City blocked from discovery all of the Objectors' inquiry into the content of the DIP financing collateral package, while at the same time contending that the collateral package was one of the reasons that justified entering into the Forbearance Agreement.

## Argument

**I.     The City Will Provide Evidence Regarding the Fairness and Equity of the Forbearance Agreement and the City's Use of Business Judgment in Entering the Forbearance Agreement.**

In order to approve a settlement under Rule 9019 of the Bankruptcy Code, a court must determine that the settlement is fair and equitable. *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988) *citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). The City has the burden to establish that a settlement is fair and equitable. *See In re Hallet,* 33 B.R. 564, 565 (Bankr. D. Me. 1983). In meeting that burden, the City

must provide the court with a factual basis for concluding that the settlement is fair and equitable. *Reynolds* 861 F.2d 469, 473 (6th Cit. 1988).

A debtor's decision to assume or reject a contract under section 365 of the Bankruptcy Code is reviewed under the "business judgment" standard. *In re Orion Pictures Corp.*, 4 F.3d 1095, 1099 (2d Cir. 1993). The business judgment standard "presupposes that the estate will assume a contract only where doing so will be to its economic advantage . . . ." *In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008). To satisfy this standard, "[t]he act of assumption must be grounded, at least in part, in the conclusion that maintenance of the contract is . . . beneficial to the estate." *In re Great Atlantic & Pacific Tea Co., Inc.*, 472 B.R. 666, 672 (S.D.N.Y. 2012) (quoting *Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.*), 208 F.3d 498, 505 (5th Cir. 2000).).

The Objectors anticipate that, in representing to the Court that the Forbearance Agreement is fair and equitable under Rule 9019 and a sound exercise of business judgment under section 365, the City will now attempt to argue that a sound business reason that justifies approval of the Forbearance Agreement is that it will allow for the casino revenues to be collateralized, which is necessary in order to obtain the post-petition DIP financing it seeks. (Orr Dep. 213:9-15.) However, as explained below, the City should not be permitted to make this newly

8

discovered argument because it has blocked the Objectors' inquiry into key features of the DIP financing and its collateral package.

**II. To the Extent the City seeks to Support Its Argument In Favor of Approving the Forbearance Agreement By Reference to Its Need For Casino Revenues in Connection With the DIP Loan, It Should be Precluded from Doing So Because It Has Blocked the Objectors' Inquiry into the Issue.**

A party is not permitted to withhold information during discovery and then introduce it at trial to support its claims. *See, e.g., In re Lott*, 139 F. App'x 658, 660 (6th Cir. 2005) ("[L]itigants cannot hide behind the privilege if they are relying upon privileged communications to make their case. 'The attorney-client privilege cannot at once be used as a shield and a sword.'") *quoting United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991). If a party intends to rely on information as evidence at trial, it is required to permit discovery of that information or waive its use at trial. *See, e.g., Arista Records LLC v. Lime Grp. LLC*, 06 CV 5936 KMW, 2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011) ("[A] party who intends to rely at trial on the advice of counsel must make a full disclosure during discovery; failure to do so constitutes a waiver of the advice-of-counsel defense . . . ."); *see also Trouble v. Wet Seal, Inc.,* 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001) ("[Defendant] waived any available advice of counsel defense by objecting . . . to [Plaintiff's] discovery requests . . . .").

Thus, where a litigant prevents an adversary's inquiry regarding facts relevant to the claims at issue, he should not be permitted to introduce evidence of those facts at trial. *See In re Residential Capital, LLC*, 491 B.R. 63, 72 (Bankr. S.D.N.Y. 2013); *E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*, 90 F. Supp. 2d 277, 296 (S.D.N.Y. 2000) aff'd, 4 F. App'x 81 (2d Cir. 2001) ("Having blocked his adversary from conducting discovery on this issue, he will not now be heard to advance reliance on counsel."). In *In re Residential Capital*, a debtor sought court approval of a settlement with certain parties under Rule 9019. *Id.* In the discovery phase leading up to the hearing on its 9019 motion, the debtor claimed privilege throughout its document productions and depositions. *Id.* In deposition, the debtor's CEO was instructed by counsel not to reveal the basis for any of the decisions to enter the settlement in question. *Id.* Objectors to the settlement argued that the debtor should be precluded from introducing the evidence because the debtor had blocked access to the information throughout the discovery period. *Id.* The court agreed, and ruled that "A court should exclude any testimony or evidentiary presentations by the Defendants at trial if that same testimony or evidence was withheld from Plaintiffs during discovery . . . ." *Id.* at 69.

Here, it is bad enough that this purported rationale supporting the Forbearance Agreement was never even mentioned in the City's moving papers. But the fact that the City then proffered the rationale, while denying any discovery

10

on it whatsoever, is wholly improper. To the extent the City seeks to justify its decision to enter into the Forbearance Agreement by reference to its need for collateralization of the casino revenues, it should not be permitted do so by relying on the casino revenues' use in the DIP loan's collateral package. The City should not be permitted to block all inquiry by the Objectors into the nature of the DIP loan's collateral and terms while, at the same time, advancing an argument in favor of the Forbearance Agreement that depends on this feature of the DIP loan's collateral package. Specifically, because the Objectors have not been given an opportunity to examine whether the City is using other sources of collateral and how much, relative to the casino revenues, might be available to the City from other sources, the Objectors would be unfairly prejudiced if evidence and arguments regarding the City's need for casino revenues in connection with the DIP loan were introduced at the hearing. The Objectors cannot adduce information regarding funding and collateral alternatives from any source other than the City. The City should therefore be precluded from introducing any evidence regarding the City's need for collateralization of casino revenues in connection with its DIP financing efforts.

## Conclusion

For the foregoing reasons, the Objectors respectfully request that this Court preclude the City from introducing evidence and argument concerning City's need

for collateralization of the casino revenues in connection with its DIP financing efforts as a business justification for the Forbearance Agreement and enter an order substantially similar to that attached herein as Exhibit 1.

Dated: September 18, 2013

**KIRKLAND & ELLIS LLP**

By: */s/ Stephen C. Hackney*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*

By: */s/ Vincent J. Marriott, III*
Howard S. Sher
**JACOB & WEINGARTEN, P.C.**
Somerset Place
2301 W. Big Beaver Road, Suite 777
Troy, Michigan 48084

Telephone: (248) 649-1200
Facsimile: (248) 649-2920
E-mail: howard@jacobweingarten.com

-and-

Vincent J. Marriott, III
**BALLARD SPAHR LLP**
1735 Market Street, 51st Flr.
Philadelphia, PA 19103
Phone: 215.864.8236
Fax: 215.864.9762
Email: marriott@ballardspahr.com

-and-

Matthew G. Summers
**BALLARD SPAHR LLP**
919 North Market Street, 11th Floor
Wilmington, Delaware 19801
Telephone: (302) 252-4428
Facsimile: (410) 361-8930
E-mail: summersm@ballardspahr.com

*Attorneys for Erste Europaische Pfandbriefund Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A.*

By: */s/ Karen V. Newbury*
Rick L. Frimmer
Karen V. Newbury
Michael W. Ott
SCHIFF HARDIN, LLP
233 S. Wacker Drive, Suite 6600
Chicago, IL 60606
Telephone: (312) 258-5600
Facsimile: (312) 258-5600
E-mail: rfrimmer@schiffhardin.com
E-mail: knewbury@schiffhardin.com
E-mail: mott@schiffhardin.com

13

*Attorneys for DEPFA Bank PLC*

By: */s/ Thomas R. Morris*
Thomas R. Morris
Karin F. Avery
**SILVERMAN & MORRIS, P.L.L.C.**
30500 Northwestern Highway, Suite 200
Farmington Hills, Michigan 48334
Telephone: (248) 539-1330
Facsimile: (248) 539-1355
E-mail: morris@silvermanmorris.com
E-mail: avery@silvermanmorris.com

-and-

**LIPPITT O'KEEFE, PLLC**
Brian D. O'Keefe
Ryan C. Plecha
370 East Maple Road, 3rd Floor
Birmingham, Michigan 48009
Telephone: (248); 646-8292
Facsimile: (248) 646-8375
E-mail: bokeefe@lippittokeefe.com
E-mail: rplecha@lippittokeefe.com

*Attorneys for Retiree Association Parties*

By: */s/Meredith E. Taunt*
Lynn M. Brimer (P43291)
Meredith E. Taunt (P69698)
Mallory A. Field (P75289)
**STROBL & SHARP, P.C.**
300 East Long Lake Road, Suite 200
Bloomfield Hills, MI 48304-2376
Telephone: (248) 540-2300
Facsimile: (248) 645-2690
lbrimer@stroblpc.com
mtaunt@stroblpc.com
mfield@stroblpc.com

14

*Attorneys for Retired Detroit Police Members Association*

By: */s/ Caroline Turner English*
Carol Connor Cohen
Caroline Turner English
**ARENT FOX LLP**
1717 K Street, NW
Washington, DC  20036-5342
Telephone:  (202) 857-6054
E-mail:  Carol.Cohen@arentfox.com

-and-

David L. Dubrow
Mark A. Angelov
**ARENT FOX LLP**
1675 Broadway
New York, NY  10019
Telephone:  (212) 484-3900

-and-

SCHAFER AND WEINER, PLLC
Daniel J. Weiner (P32010)
Brendan G. Best (P66370)
40950 Woodward Ave., Suite 100
Bloomfield Hills, MI  48304
Telephone:  (248) 540-3340
E-mail:  bbest@schaferandweiner.com

*Attorneys for Ambac Assurance Corporation*

By: */s/ Guy S. Neal*
Eric D. Novetsky
Louis P. Rochkind
**JAFFE, RAITT, HEUER & WEISS, P.C.**
2777 Franklin Road, Suite 2500
Southfield, MI  48034

15

Telephone: (248) 351-3000
Facsimile: (248) 351-3082
E-mail: enovetsky@jaffelaw.com

-and-

Jeffrey E. Bjork
**SIDLEY AUSTIN LLP**
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600
E-mail: jbjork@sidley.com

-and-

**SIDLEY AUSTIN LLP**
Guy S. Neal
1501 K Street, N.W.
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711
E-mail: gneal@sidley.com

*Attorneys for National Public Finance Guarantee Corporation*


By: */s/ Lawrence A. Larose*
Lawrence A. Larose, Esq.
Samuel S. Kohn, Esq.
Carrie V. Hardman, Esq.
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 100166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
E-mail: llarose@winston.com
E-mail: skohn@winston.com
E-mail: chardman@winston.com

16

-and-

Sarah T. Foss, Esq.
**WINSTON & STRAWN LLP**
1111 Louisiana, 25th Floor
Houston, TX  77002-5242
Telephone:  (713) 651-2600
Facsimile:  (713) 651-2700
E-mail:  sfoss@winston.com

*Attorneys for Assured Guaranty Municipal Corp.*

By:  */s/ Mark R. James*
Ernest J. Essad Jr.
Mark R. James
**WILLIAMS, WILLIAMS, RATTNER & PLUNKETT, P.C.**
280 North Old Woodward Avenue, Suite 300
Birmingham, MI  48009
Telephone:  (248) 642-0333
Facsimile:  (248) 642-0856
E-mail:  EJEssad@wwrplaw.com
E-mail:  mrjames@wwrplaw.com

-and-

Alfredo R. Pérez
**WEIL, GOTSHAL & MANGES LLP**
700 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
E-mail:  Alfredo.perez@weil.com

*Attorneys for Financial Guaranty Insurance Company*

By:  */s/Robert D. Gordon*
Robert D. Gordon

17

Shannon L. Deeby
CLARK HILL PLC
151 South Old Woodward Avenue, Suite 200
Birmingham, MI 48009
Telephone: (248) 988-5882
Facsimile: (248) 988-2502
E-mail: rgordon@clarkhill.com

*Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*

By: */s/ Carole Neville*
Carole Neville
Claude Montgomery
DENTONS
1221 Avenue of the Americas
New York, New York 10020-1089
D +1 212 768 6700
F +1 212 768 6800
carole.neville@dentons.com
claude.montgomery@dentons.com

*Counsel to the Official Committee of Retirees*

18

13-53846-tjt    Doc 935    Filed 09/18/13    Entered 09/18/13 18:53:06    Page 18 of 18