# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

## SYNCORA CAPITAL ASSURANCE AND SYNCORA GUARANTEE INC.'S RESPONSE TO DEBTOR'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF ALEXANDRA SCHWARZMAN

**I.   Introduction**

The City of Detroit (the "City") staggered into Chapter 9 with no executable deals with any of its creditors for a simple reason: the City's negotiating philosophy is "my way or the highway." In the course of attempting to negotiate with the City over its access to the Casino Revenues[1] that lie at the heart of the Forbearance Agreement, Syncora experienced first-hand the City's heavy-handed approach to negotiation. After signaling its desire to make a proposal that would facilitate the City's access to cash, Syncora was subjected to a bewildering game in which the City pretended to negotiate a non-disclosure agreement ("NDA") while it readied papers for an *ex parte* Temporary Restraining Order ("TRO"). After the City obtained a TRO without notice to the Syncora attorneys with whom it was corresponding, Syncora once again attempted to engage with the City in

---

[1]   Capitalized terms not defined herein have the definitions given to those terms in Syncora's Objection to the Motion to Assume the Forbearance and Optional Termination Agreement [Docket No. 366].

negotiation — only to see the City refuse to sign a fully negotiated NDA that addressed all of the City's concerns. When asked about the matter in his deposition, Emergency Manager Kevyn Orr complained that it was <u>Syncora</u> that had refused to execute an NDA. (Orr Dep. 93:21-94:3, attached herein as Exhibit 6-B.) His testimony is directly contradicted by not only Ms. Schwarzman, but also by the testimony of the City's Investment Banker Kenneth Buckfire, who admitted that it was the City that had refused to sign an NDA with Syncora. (Buckfire Dep. 136:13-15, attached herein as Exhibit 6-C.) Mr. Orr conceded that there was no reason for the City to refuse to sign an NDA with Syncora — a view Syncora shares. (Orr Dep. 99:5-7.) As a result of the gamesmanship, Syncora and the City never engaged in substantive negotiations in advance of the Forbearance Agreement. (Buckfire Dep. 138:7-14.)

In proffering Ms. Schwarzman's testimony, Syncora seeks to question whether the process by which the City negotiated the Forbearance Agreement is worthy of the deference called for by the business judgment rule, as the City has suggested. After all, in order to invoke the business judgment rule, a party must demonstrate that it complied with its duty to act with care. Here, the City has not proffered any logical reason why it would refuse to enter into an NDA in connection with a proposal from Syncora — a proposal that might have been better than the one it had negotiated with the Swap Counterparties. Ms. Schwarzman's

testimony regarding the City's illogical and uncommercial response to Syncora's simple request for an NDA is thus relevant to Syncora's contention that the City's "my way or the highway" approach to the Forbearance Agreement should not be accorded any deference under the business judgment rule pursuant to section 365 of the Bankruptcy Code. The Court should thus deny the City's motion *in limine* seeking to exclude Ms. Schwarzman's testimony.

## II. Background

Ms. Schwarzman will testify at the hearing on the Assumption Motion for the limited purpose of establishing the perplexing manner in which the City handled the NDA negotiations with Syncora. She is not being called as an opinion witness.

Ms. Schwarzman's testimony will show that the City would not cooperate with Syncora's attempts to negotiate and complete an NDA so that Syncora could make a proposal. (Schwarzman Dep. 9:12-10:13, attached herein as Exhibit 6-A.) Even though the City proposed changes to the NDA which Syncora accepted, and even though the City and Syncora exchanged drafts that culminated in an NDA signed by Syncora that the City's counsel represented was acceptable to the City, the City refused to sign its own proposed NDA. (Schwarzman Dec. ¶ 10, attached herein as Exhibit 5.) Even after repeated inquiry, the City would not return an executed NDA. (*Id.*) This run-around regarding the NDA stymied Syncora's

3

ability to make a proposal and negotiate meaningfully with the City. Emergency Manager Kevyn Orr could think of no reason why the City would <u>not</u> enter into an NDA with Syncora, and erroneously blamed Syncora for its refusal to sign. (Orr Dep. 99:5-7; 93:19-94:3.)

## III. Argument

### A. Ms. Schwarzman's Testimony is Clearly Relevant to Whether the City is Entitled to the Protection of the Business Judgment Rule

A debtor's decision to assume or reject a contract under section 365 of the Bankruptcy Code is reviewed under the "business judgment" standard. *In re Orion Pictures Corp.*, 4 F.3d 1095, 1099 (2d Cir. 1993). The business judgment rule is a rule by which courts will defer to the judgment of a debtor — but only where the debtor first shows that it has exercised its fiduciary duty of due care. *See In re Innkeepers USA Trust*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010). The duty of due care includes deliberate evaluation of available alternatives to the course of action that is ultimately adopted. *Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 275 (2d Cir. 1986) (the "paucity of information and . . . swiftness of decision-making strongly suggest a breach of the duty of due care. . . . the Board appears to have failed to ensure that alternative bids were negotiated or scrutinized.").

Here, Ms. Schwarzman's testimony calls into question the City's exercise of due care, because it suggests that the City refused to consider alternative proposals

from Syncora that might have been better than those offered by the Swap Counterparties. Mr. Orr admitted in his deposition testimony that the City has entered into "many" nondisclosure agreements. (Orr Dep. 98:17-99:2.) Mr. Orr could think of no reason why the City would not sign an NDA with Syncora. (Orr Dep. 99:5-7.)

Yet this is precisely what the City did. Ms. Schwarzman will testify that it was the City that refused to sign an NDA with Syncora on at least two occasions. (Schwarzman Dep. 139:19-23; 140:23.) Her testimony, considered along with Messrs. Orr's and Buckfire's, demonstrates that the City has not met its burden to act with due care because it has deliberately ignored the overtures and efforts of parties with alternative offers to the one it seeks to assume in the Forbearance Agreement. Having refused to sign a commercially standard agreement that it had executed with countless parties before, the City inexplicably rebuffed Syncora's effort to make it an offer that could have potentially been significantly better than its deal with the Swap Counterparties. Syncora should be permitted to introduce this evidence in support of its argument that the City cannot now invoke the protections of the business judgment rule in support of the Forbearance Agreement. *See Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 275 (2d Cir. 1986) (finding a violation of due care where proposals were accepted in haste and without careful consideration of alternatives).

### B. Syncora's Assertions of Privilege Were Proper

Ms. Schwarzman is being called a percipient witness to testify to the existence, duration, and events comprising the negotiation of an NDA between the City and Syncora. At the beginning of the deposition, Ms. Schwarzman's counsel clarified the purpose for Ms. Schwarzman's testimony:

> MR. ARNAULT: [W]e may call Miss Schwarzman as a rebuttal witness to testify about topics that are consistent with her declaration and the negotiations that she had with the City regarding an NDA. Given the limited categories of information that . . . Ms. Schwarzman may testify about, any questions should be limited to these narrow categories . . . Miss Schwarzman is an attorney at Kirkland & Ellis who has been providing legal advice to Syncora. So I want to be very clear up front that by putting her up for this deposition we are not waiving any protections afforded by the attorney-client privilege or the work product doctrine and she will not be providing answer — or providing answers to any questions that require her to divulge any privileged or otherwise-protected information.

(Schwarzman Dep. 9:21-10:13.)

Rather than honor Syncora's assurances and take a focused, half-hour deposition on Ms. Schwarzman's communications with the City, the City's counsel instead spent much of Ms. Schwarzman's deposition on a fishing expedition for the mental impressions of Syncora's counsel on issues significantly outside of the scope of her declaration. For example, notwithstanding assurance from Syncora's counsel that Ms. Schwarzman was being offered for the limited purpose of establishing that the City refused to sign an NDA with Syncora, the City's counsel

6

asked repeatedly about legal conclusions and statements in Syncora's objection to the City's Assumption Motion. (*See, e.g.*, Schwarzman Dep. 46:12-48:2.) The City's counsel also asked for details about legal advice and internal attorney-client communications between Kirkland and Syncora, which are properly protected by the attorney-client privilege and work-product doctrines. (*See, e.g.*, Schwarzman Dep. 30:3-17; 78:4-12.) In response to these improper inquiries, Syncora properly asserted the attorney-client privilege.

The City was not blocked in any way from exploring negotiations of the NDA with Syncora, about which Ms. Schwarzman answered multiple questions. She answered multiple questions in the scope of her testimony regarding the negotiations that led up to an NDA that was signed by Syncora, but not by the City's representatives. (Schwarzman Dep. 139:19-23.) Thus, the City does not have a basis for the claim that Syncora asserted "broad and improper" attorney-client privilege or refused to provide factual information related to the basis and scope of her testimony.

## IV. Conclusion

For the foregoing reasons, Syncora respectfully requests that the City's Motion *in Limine* to Exclude Testimony of Alexandra Schwarzman be denied.

Dated: September 18, 2013

Respectfully submitted,

**KIRKLAND & ELLIS LLP**

By: */s/ Stephen C. Hackney*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*