# Exhibit 6A
## Excerpts of Deposition of Alexandra Schwarzman

```
 1              UNITED STATES BANKRUPTCY COURT

 2              EASTERN DISTRICT OF MICHIGAN

 3                    SOUTHERN DIVISION

 4    _____

 5    In re                          )   Chapter 9

 6                                   )

 7    CITY OF DETROIT, MICHIGAN,     )   Case No. 13-53846

 8                                   )

 9                   Debtor.         )   Hon. Steven W. Rhodes

10    _____      )

11

12

13        The videotaped deposition of ALEXANDRA SCHWARZMAN,

14    called by the City of Detroit for examination, taken

15    pursuant to notice, agreement and by the provisions of

16    the Federal Rules of Civil Procedure 26 and 30 and

17    Federal Rules of Bankruptcy Procedure 7026 and 7030

18    pertaining to the taking of depositions, taken before

19    DEBORAH HABIAN, Registered Merit Reporter, Certified

20    LiveNote Reporter, a Notary Public within and for the

21    County of Cook, State of Illinois, and a Certified

22    Shorthand Reporter of said State, at the offices of

23    Jones Day, 77 West Washington Street, Chicago,

24    Illinois, on Thursday, the 12th day of September,

25    2013, at 12:00 p.m. CST.
```

Page 2

```
 1            A P P E A R A N C E S
 2
 3    ON BEHALF OF THE CITY OF DETROIT
 4        PEPPER HAMILTON, LLP, by
 5        DEBORAH KOVSKY-APAP, ESQ.
 6        Suite 1800
 7        4000 Town Center
 8        Southfield, Michigan  48075-1505
 9        (248) 359-7300
10        kovskyd@pepperlaw.com
11          and
12        JONES DAY, by
13        DAN T. MOSS (telephonically)
14        51 Louisiana Avenue, N.W.
15        Washington, D.C.  20001-2113
16        (202) 879-3939
17        dtmoss@jonesday.com
18
19    ON BEHALF OF THE SYNCORA ENTITIES
20        KIRKLAND & ELLIS, LLP, by
21        WILLIAM E. ARNAULT, ESQ.
22        300 North LaSalle Street
23        Chicago, Illinois  60654
24        (312) 862-3062
25        william.arnault@kirkland.com
```

Page 3

```
 1    (CONTINUED)
 2            A P P E A R A N C E S
 3
 4    ON BEHALF OF ERSTE EUROPÄISCHE PFANDBRIEFUND
 5    KOMMUNALKREDITBANK AKTIENGESELLSCHAFT
 6    IN LUXEMBURG S.A.
 7        BALLARD SPAHR, LLP, by
 8        MATTHEW G. SUMMERS, ESQ. (telephonically)
 9        919 North Market Street
10        11th Floor
11        Wilmington, Delaware  19801
12        (302) 252-4428
13        summersm@ballardspahr.com
14
15    ON BEHALF OF RETIREE ASSOCIATION PARTIES
16        LIPPITT O'KEEFE, PLLC, by
17        ANN CUBERA LIPP, ESQ. (telephonically)
18        370 East Maple Road
19        3rd Floor
20        Birmingham, Michigan  48009
21        (248) 646-8292
22        alipp@lippittokeefe.com
23
24
25
```

Page 4

```
 1    (CONTINUED)
 2            A P P E A R A N C E S
 3
 4    ON BEHALF OF ASSURED GUARANTY MUNICIPAL CORP.
 5        WINSTON & STRAWN, LLP, by
 6        BIANCA FORDE, ESQ. (telephonically)
 7        200 Park Avenue
 8        New York, New York  10166-4193
 9        (212) 294-6700
10        bforde@winston.com
11
12    ON BEHALF OF FINANCIAL GUARANTY INSURANCE COMPANY
13        WEIL GOTSCHAL & MANGES, LLP, by
14        DANA M. KAUFMAN, ESQ. (telephonically)
15        767 Fifth Avenue
16        New York, New York  10153
17        (212) 310-8000
18        dana.kaufman@weil.com
19
20
21
22
23
24
25          `
```

Page 5

```
 1    (CONTINUED)
 2            A P P E A R A N C E S
 3
 4    ON BEHALF OF MERRILL LYNCH CAPITAL SERVICES, INC.
 5        CADWALADER WICKERSHAM & TAFT, LLP, by
 6        ELLEN M. HALSTEAD, ESQ. (telephonically)
 7        One World Financial Center
 8        New York, New York  10153
 9        (212) 504-6732
10        ellen.halstead@cwt.com
11
12    ON BEHALF OF USB
13        BINGHAM McCUTCHEN, LLP, by
14        STEVEN WILAMOWSKY, ESQ. (telephonically)
15        399 Park Avenue
16        New York, New York  10022-4689
17        (212) 705-7000
18        steven.wilamowsky@bingham.com
19
20
21
22
23
24
25
```

Page 6

| | |
|---|---|
| 1 | INDEX |
| 2 | WITNESS                                              PAGE |
| 3 | ALEXANDRA SCHWARZMAN |
| 4 | Exam by Ms. Kovsky-Apap           10 |

QUESTIONS INSTRUCTED NOT TO ANSWER
  By Mr. Arnault
      Page 29, Line 8     Page 78, Line 4
      Page 30, Line 10    Page 81, Line 22
      Page 31, Line 18    Page 99, Line 15
      Page 44, Line 8     Page 105, Line 8
      Page 46, Line 12    Page 111, Line 9
      Page 47, Line 1     Page 125, Line 21
      Page 49, Line 13    Page 126, Line 3
      Page 49, Line 23    Page 127, Line 10
      Page 64, Line 7     Page 132, Line 20
      Page 66, Line 21

QUESTIONS WITNESS REFUSED TO ANSWER
      Page 32, Line 20
      Page 44, Line 18
      Page 52, Line 13
      Page 66, Line 1

Page 7

SCHWARZMAN EXHIBITS
NUMBER      DESCRIPTION                          PAGE
Exhibit 1   Syncora Amended Disclosure            27
            of Rebuttal Witnesses and
            Documents

Exhibit 2   Objection of Syncora Guarantee        40
            Inc. and Syncora Capital Assurance
            Inc. to Motion of Debtor for
            entry of an order

Exhibit 3   Declaration of Alexandra              55
            Schwarzman

Exhibit 4   Confidentiality Agreement,            84
            undated and unsigned

Exhibit 5   7/10/2013 Confidentiality            106
            Agreement

Exhibit 6   7/10/2013 Confidentiality            109
            Agreement, executed by Syncora

Exhibit 7   7/9/2013 Confidentiality             140
            Agreement re the Data Room

Page 8

1  THE VIDEOGRAPHER: We are now on the
2  record in the matter of In Re: City of Detroit,
3  Michigan.
4         Today's date is September 12th, 2013.
5  The time is now 12:03 p.m. according to the video
6  monitor. This is the video-recorded deposition of
7  Alexandra Schwarzman, being taken at 77 West Wacker
8  Drive in Chicago, Illinois.
9         I'm the camera operator. My name is
10 Peter Prezzano, in association with Alderson
11 Reporting, located at 1155 Connecticut Avenue,
12 Northwest, in Washington, D.C.
13        The court reporter is Debbie Habian,
14 also in association with Alderson Reporting.
15        Will all attorneys please identify
16 themselves and the parties they represent, beginning
17 with the party noticing this proceeding.
18        MS. KOVSKY-APAP: My name is Deborah
19 Kovsky-Apap. I'm with the law firm of Pepper
20 Hamilton. We're special litigation counsel to the
21 City of Detroit.
22        MR. ARNAULT: My name is William
23 Arnault. I'm with Kirkland & Ellis and we represent
24 Syncora Guarantee Incorporated and Syncora Capital
25 Insurance Incorporated.

Page 9

1  THE VIDEOGRAPHER: Will the court
2  reporter please administer the oath and we may
3  proceed.
4         THE REPORTER: Raise your right hand,
5  please.
6         (Witness sworn.)
7         THE WITNESS: Yes.
8         THE REPORTER: Thank you.
9         MS. KOVSKY-APAP: Okay. Before we
10 get started, I know Mr. Arnault has an objection he'd
11 like to place on the record.
12        ==MR. ARNAULT: That's correct.==
13 ==Thanks, Deb.==
14        ==So before we begin, I want to make a==
15 ==few comments on the record. First of all, I would==
16 ==like to note that -- for the record -- that this==
17 ==deposition is actually being videotaped right now,==
18 ==even though it was not noticed as a videotaped==
19 ==deposition. As a result, we object on the grounds of==
20 ==failure to provide adequate notice.==
21        ==Second of all, we've stated that, in==
22 ==our filing, that we may call Miss Schwarzman as a==
23 ==rebuttal witness to testify about topics that are==
24 ==consistent with her declaration and the negotiations==
25 ==that she had with the City regarding an NDA. Given==

3 (Pages 6 to 9)

```
                                            Page 10
 1    the limited categories of information that
 2    Miss Schwarzan -- Schwarzman may testify about, any
 3    questions should be limited to these narrow
 4    categories.
 5              Third and last, Miss Schwarzman is an
 6    attorney at Kirkland & Ellis who has been providing
 7    legal advice to Syncora.  So I want to be very clear
 8    up front that by putting her up for this deposition we
 9    are not waiving any protections afforded by the
10    attorney-client privilege or the work product doctrine
11    and she will not be providing answer -- or providing
12    answers to any questions that require her to divulge
13    any privileged or otherwise-protected information.
14              Thanks, Deb.
15              MS. KOVSKY-APAP:  Okay.  Well, we'll
16    respond to those objections in due course, I'm sure.
17              MR. ARNAULT:  Sure.
18              ALEXANDRA SCHWARZMAN,
19       called as a witness herein by the City of Detroit,
20         having been first duly sworn, was examined and
21              testified as follows:
22              EXAMINATION
23    BY MS. KOVSKY-APAP:
24       Q.   Okay.  Ms. Schwarzman, as I mentioned
25    before my name is Deb Kovsky and my firm is special
```

```
                                            Page 11
 1    litigation counsel to the City of Detroit and I'll be
 2    asking you some questions under oath today.
 3              My first question for you is, have
 4    you ever been deposed before?
 5       A.   No.
 6       Q.   Have you ever attended a deposition?
 7       A.   No.
 8       Q.   So I just want to give you some real
 9    basic what I call rules of road, just so that we're on
10    the same page and so that the court reporter is able
11    to get down your answers clearly.
12              First, I -- I'd ask that you give
13    verbal answers to questions since the court reporter,
14    even though we're videotaping, this the court reporter
15    still needs to be able to record your verbal answers.
16              If you need a break at any point or
17    if you need to consult with your colleague for any
18    reason, that's fine, just let us know.  But what I'd
19    ask is if there was a pending question to first answer
20    the question then we can take a break.  Okay?
21       A.   Okay.
22       Q.   If I ask a question and you don't
23    understand what I mean, will you ask me to rephrase
24    if?
25       A.   Yes.
```

```
                                            Page 12
 1       Q.   Okay.  And if you don't ask me to
 2    rephrase the question, I'm going to assume you
 3    understand it.
 4       A.   Okay.
 5       Q.   And if you answer the question, I
 6    will assume that you've understood what the question
 7    is asking.  Okay?
 8       A.   Okay.
 9       Q.   Is there any reason that you're
10    unable to testify fully and accurately today?
11       A.   No.
12       Q.   Are you taking any medications?
13       A.   No.
14       Q.   Are you under the influence of
15    alcohol or any drugs?
16       A.   No.
17       Q.   Are you represented here by counsel
18    today?
19       A.   Yes.  Well, my firm.
20       Q.   Well, when Mr. Arnault introduced
21    himself for the record, he indicated that he
22    represents Syncora.
23       A.   That's correct.
24       Q.   And he does not represent you
25    personally; is that correct?
```

```
                                            Page 13
 1       A.   Correct.
 2       Q.   Okay.  So you are not actually
 3    represented by counsel today?
 4       A.   Correct.
 5       Q.   Okay.  Did you have any discussions
 6    with anyone in preparation for this deposition?
 7       A.   Yes.
 8       Q.   Who did you have discussions with?
 9       A.   Mr. Arnault and Steve --
10              MR. ARNAULT:  Well, sorry.  I'll just
11    interject for the record.  We do -- I do represent
12    Miss Schwarzman in her -- into the capacity that she's
13    testifying today.
14              MS. KOVSKY-APAP:  Well, she's
15    testified that she believes she's not represented by
16    you, so...
17              MR. ARNAULT:  Well, I mean, we can
18    take this off the record or -- do you believe --
19    sorry.  Go ahead.
20              We can take this off the record
21    quickly.
22              THE VIDEOGRAPHER:  Now going off the
23    record at 12:07 p.m.
24       (Recess taken from 12:07 p.m. to 12:09 p.m.)
25              THE VIDEOGRAPHER:  Now going back on
```

Page 30

1  question again?
2  BY MS. KOVSKY-APAP:
3      Q.  My question is, were you aware,
4  before this was filed, that you might be called as a
5  witness?
6          MR. ARNAULT: You can answer "yes" or
7  "no."
8          THE WITNESS: Yes.
9  BY MS. KOVSKY-APAP:
10     Q.  And how did you come by that
11 awareness?            * * * *
12     A.  I don't want to reveal any
13 communications.
14         MR. ARNAULT: Yes. Objection. This
15 is -- objections, this would be internal Kirkland
16 communications and work product.
17         Instruct the witness not to answer.
18 BY MS. KOVSKY-APAP:
19     Q.  Now, the first paragraph of this
20 document makes reference to "the motion of Debtor for
21 entry of an order: (I) authorizing the assumption
22 about certain forbearance and optional termination
23 agreement pursuant to Section 365(a) of the Bankruptcy
24 Code (II) approving such agreement pursuant to
25 Rule 9019 and (III) granting related relief."

Page 31

1          Do you see that?
2      A.  Yes.
3      Q.  Now do you understand in that
4  reference, the Debtor that's being referred to is the
5  City of Detroit?
6      A.  Yes.
7      Q.  Are you familiar with the motion that
8  is referenced in the first paragraph of what I'll call
9  this disclosure?
10     A.  Yes.
11     Q.  Have -- and just because it's a real
12 mouth-full of a motion, if I refer to that as "the
13 Assumption Motion," would that be okay?
14     A.  Yes.
15     Q.  Okay. Have you reviewed the
16 Assumption Motion?
17     A.  Yes.
18     Q.  Do you have an understanding of what
19 relief the Debtor is seeking by the Assumption Motion?
20                * * * *
21         MR. ARNAULT: Objection. This calls
22 for work product information.
23         I'll instruct the witness not to
24 answer.
25         MS. KOVSKY-APAP: Mr. Arnault, she's

Page 32

1  testifying as to -- as a rebuttal witness with respect
2  to the motion.
3          MR. ARNAULT: No. She's actually
4  testifying as a rebuttal witness with respect to the
5  negotiations that she had surrounding the TRO, and
6  with respect to her declaration. She doesn't mention
7  the forbearance agreement or the order.
8          MS. KOVSKY-APAP: Well, this -- this
9  is -- this is the Amended Disclosure of Rebuttal
10 Witnesses and Documents In Advance of the September 23
11 Hearing and it makes specific reference to the
12 Assumption Motion. There is no hearing pending
13 regarding a nondisclosure agreement.
14         MR. ARNAULT: But if you look at what
15 she is -- what we specifically --
16         MS. KOVSKY-APAP: We're going to move
17 on.
18         MR. ARNAULT: Okay.
19 BY MS. KOVSKY-APAP:
20     Q.  So you decline to -- to state whether
21 you have an understanding of what relief the Debtor is
22 seeking?              * * * *
23     A.  Correct.
24     Q.  Are you aware that your firm's
25 clients, Syncora Guarantee Inc. and Syncora Capital

Page 33

1  Assurance Inc. have objected to the Assumption Motion?
2          MR. ARNAULT: You can answer "yes" or
3  "no."
4          THE WITNESS: Yes.
5          MS. KOVSKY-APAP: Unless you have an
6  objection to state for the record, I'd appreciate it
7  if you don't instruct the witness how to answer.
8          MR. ARNAULT: Okay. But I'm
9  telling -- because you're wading into potentially --
10         MS. KOVSKY-APAP: If you -- if you
11 want to state an objection for the record, you can
12 state an objection for the record. But I have to ask
13 you to stop instructing the witness how to answer my
14 questions.
15         MR. ARNAULT: Understood.
16 BY MS. KOVSKY-APAP:
17     Q.  So just to ask the question again:
18 You're aware that these two entities which I'll
19 refer -- convenience refer to as "Syncora," unless I'm
20 specifically referring to one or the other of them.
21 Is that okay if I refer to them collectively as
22 "Syncora"?
23     A.  Yes.
24     Q.  You are aware that they have objected
25 to the Assumption Motion, correct?

Page 46

 1  speaks for itself.
 2          MS. KOVSKY-APAP:  Your objection is
 3  noted counsel.  Thank you.
 4          MR. ARNAULT:  Um-hum.
 5          THE WITNESS:  I believe that that's
 6  an accurate reading one can make.
 7  BY MS. KOVSKY-APAP:
 8      Q.   Okay.  And take a moment, please, to
 9  review paragraphs 49, 50 and 51, if you would.
10      A.   (Reviewing document.)
11           Okay.
12      Q.   None of those reasons that are
13  identified in those three paragraphs, those paragraphs
14  that summarize the reasons for denial of the
15  Assumption Motion, none of those has anything to do
16  with the negotiation of an NDA; is that correct?
17                      * * * *
18          MR. ARNAULT:  Objection, the document
19  speaks for itself.  And this would require the witness
20  to make a legal conclusion which would invade the work
21  product doctrine and attorney-client privilege.
22          I instruct the witness not to answer.
23          MS. KOVSKY-APAP:  As far as the
24  document speaking for itself, your objection is noted.
25  BY MS. KOVSKY-APAP-APAP:

Page 47

 1      Q.   However, to the extent that all I am
 2  asking is, looking at the words on the page, do you
 3  agree that there's nothing in those three paragraphs
 4  that references a nondisclosure agreement?  * * * *
 5          MR. ARNAULT:  Objection.  This would
 6  require analysis of those three paragraphs which is
 7  work product and attorney-client.  And I instruct the
 8  witness not to answer.
 9          MS. KOVSKY-APAP:  Mr. Arnault, I
10  would hate to have to get the judge on the phone on
11  such a simple matter, although he did invite us to do
12  so.
13          I am not asking her to analyze.  If
14  she -- fine.  Let's do this -- we'll do it the hard
15  way.
16  BY MS. KOVSKY-APAP:
17      Q.   Miss Schwarzman, please read
18  Paragraph 49 out loud.
19      A.   "First, the Forbearance Agreement
20  purports to impair significant third-party rights and
21  seeks to mute state law contractual disputes of third
22  parties.  Neither Section 365 nor Bankruptcy Rule 9019
23  allow the Court to adjudicate complicated state law
24  issues that bear on third parties who are not parties
25  to the settlement or contract.  Instead, the

Page 48

 1  impairment of third-party rights is a clear basis to
 2  deny the Assumption Motion."
 3      Q.   Now, none of those words that you
 4  just read included the words "nondisclosure
 5  agreement," correct?
 6      A.   Correct.
 7      Q.   And using your basic understanding of
 8  English and not any legal analysis, do any of those
 9  sentences refer to the negotiation of a nondisclosure
10  agreement?
11          MR. ARNAULT:  Objection, form.  And
12  objection to the extent that you can separate out your
13  basic understanding of English and legal analysis
14  but --
15          MS. KOVSKY-APAP:  Mr. Arnault, I have
16  to ask you to stop with the speaking objections.
17          MR. ARNAULT:  Well, you're trying to
18  delve into what is clearly work product information.
19  You're going after strategy information and her
20  analysis of what the reasons are that Syncora's
21  objecting to -- to the Assumption Motion.  It's
22  clearly work product information and I'm going to
23  continue objecting and instructing the witness not
24  to -- not to answer.
25  BY MS. KOVSKY-APAP:

Page 49

 1      Q.   To the extent that you are able to
 2  answer based on your understanding of the English
 3  language -- which as a graduate of Vanderbilt and NYU,
 4  I assume is pretty good -- are you able to tell me
 5  whether any of these sentences that you just read in
 6  Paragraph 49 refer to the negotiation of a
 7  nondisclosure agreement?
 8          MR. ARNAULT:  Objection, the document
 9  speaks for itself.
10          THE WITNESS:  I did not read the
11  words "nondisclosure agreement."
12  BY MS. KOVSKY-APAP:
13      Q.   Did you read any words that indicated
14  a nondisclosure agreement without using those specific
15  words?                      * * * *
16          MR. ARNAULT:  Objection, form and,
17  again, this would, to the extent you're using
18  "indicated," this could reveal work product
19  information.
20          I'll instruct the witness not to
21  answer.
22  BY MS. KOVSKY-APAP:
23      Q.   Without revealing work product
24  information, do you see any reference to a negotiation
25  of a nondisclosure agreement?          * * * *

13 (Pages 46 to 49)

Page 78

```
 1   BY MS. KOVSKY-APAP:
 2       Q.   Yes, you do have an understanding?
 3       A.   Yes.
 4       Q.   So there was presumably some benefit
 5   that Syncora would achieve by offering a proposal to
 6   the City?              * * * *
 7            MR. ARNAULT: I'm going to object on
 8   the grounds that, again, you're delving into her
 9   mental impressions and her communications with our
10   client.
11            So I'm going to instruct the witness
12   not to answer.
13   BY MS. KOVSKY-APAP:
14       Q.   Is Syncora in the business of
15   altruism?
16       A.   You would have to ask them.
17            MR. ARNAULT: Objection, form.
18   BY MS. KOVSKY-APAP:
19       Q.   In your experience, does a business
20   party typically make a proposal that does not benefit
21   itself?
22            MR. ARNAULT: Objection, form,
23   foundation.
24   BY MS. KOVSKY-APAP:
25       Q.   You can answer.
```

Page 79

```
 1       A.   I suppose it depends on the business.
 2       Q.   In your discussions with counsel for
 3   the City regarding a nondisclosure agreement, was this
 4   proposal -- this potential proposal was discussed?
 5       A.   Not the terms.
 6       Q.   But, yes, this pro -- was this
 7   potential proposal discussed in any form?
 8       A.   The existence of a proposal was
 9   discussed.
10       Q.   Well, tell me what you said about the
11   potential proposal.
12       A.   We wanted the City to keep the terms
13   of the proposal confidential from the Swap
14   Counterparties.
15       Q.   Did you give the City any indication
16   of what the proposal might be about?
17       A.   I did not discuss what the proposal
18   would be about, no.
19       Q.   Did Mr. Bennett discuss, in your
20   hearing, anything about the proposal?
21       A.   No.
22       Q.   So you have no personal knowledge --
23   well, let me ask you: Do you have any personal
24   knowledge of what this potential proposal was to be?
25       A.   Yes.
```

Page 80

```
 1       Q.   You do have personal knowledge of
 2   that. And your -- even though this is the -- the
 3   whole reason for the existence of a potential
 4   nondisclosure agreement, which is the heart of your
 5   testimony, you are refusing to answer any questions
 6   regarding this potential proposal?
 7       A.   Yes.
 8            MR. ARNAULT: And I'll note for the
 9   record that this -- during the depositions of Mr. Orr
10   and Mr. Buckfire, they refused to answer questions
11   about the DIP or the DIP proposal on the grounds that
12   it was commercially sensitive information and --
13            MS. KOVSKY-APAP: Counsel, you really
14   need to make stop making talk speaking objections.
15   We're not arguing the motion in front of the court
16   right now. I'm asking questions of the witness.
17            MR. ARNAULT: I'm simply telling you
18   that we will be objecting on the same grounds.
19            MS. KOVSKY-APAP: Counsel, if you
20   have a objection to state for the record, by all
21   means, do so.
22            MR. ARNAULT: Okay. Objection. That
23   question would call for commercially sensitive
24   information that we will not be disclosing, much as
25   the City did not disclose in its --
```

Page 81

```
 1            MS. KOVSKY-APAP: Counsel, you can
 2   state your objection for the record. You do not need
 3   to make arguments. We're not deposing Mr. Orr today,
 4   nor are we arguing before the court.
 5   BY MS. KOVSKY-APAP:
 6       Q.   Without going into what that
 7   potential proposal might actually contain, are you
 8   aware -- was -- are you aware if a written proposal
 9   was actually prepared?
10       A.   Yes.
11       Q.   Were you involved in the preparation
12   of such a proposal?
13       A.   No.
14       Q.   Do you know who was involved?
15       A.   Yes.
16       Q.   Were there attorneys from Kirkland
17   who were involved?
18       A.   Yes.
19       Q.   Do you know which attorneys were
20   involved in the preparation of that proposal?
21       A.   Yes.
22       Q.   Who were they?        * * * *
23            MR. ARNAULT: Objection. This delves
24   into attorney-client privilege and work product
25   information.
```

21 (Pages 78 to 81)

|  | Page 106 | | Page 108 |
|---|---|---|---|
| 1 | Q. -- verbally for the record. | 1 | A. Correct. |
| 2 | A. No answer. | 2 | Q. Okay. Do you re- -- looking at this |
| 3 | Q. Okay. | 3 | document, are you able to tell how that was resolved? |
| 4 | A. Can't disclose that. | 4 | A. I'll go through the whole thing. |
| 5 | Q. Now, other than Paragraph 7 of the | 5 | (Reviewing document.) |
| 6 | draft NDA where you said you believed that a | 6 | I don't see anything in here. |
| 7 | resolution was reached, do you remember whether | 7 | Q. So you don't see any unilateral |
| 8 | resolution was reached on any of these other issues | 8 | termination provision? |
| 9 | that were raised? | 9 | A. No. If you can point me to it, if |
| 10 | A. Yeah. I believe we came to a | 10 | I'm missing it. |
| 11 | resolution except for the two points that I referenced | 11 | Q. Well, I didn't see one either. I |
| 12 | in Paragraph 5 of my declaration. | 12 | just wanted to see if this refreshed your recollection |
| 13 | Q. What is the resolution with respect | 13 | of -- of what was negotiated. |
| 14 | to Syncora's desire to unilaterally terminate the NDA? | 14 | So your client agreed to a proposed |
| 15 | A. I don't remember the specific | 15 | NDA that did not have the unilateral termination |
| 16 | resolution. | 16 | provision that was initially requested, correct? |
| 17 | Q. Well, let's do this, then. I'm going | 17 | A. That's what it appears to be. |
| 18 | to give you a later draft and see if this will refresh | 18 | Q. And with respect to the |
| 19 | your recollection. It's being marked as Exhibit 5. | 19 | confidentiality restrictions lifting 90 days after |
| 20 | (Schwarzman Exhibit 5 was marked for ID.) | 20 | termination of the NDA? |
| 21 | MS. KOVSKY-APAP: For those on the | 21 | A. I don't see those here either. |
| 22 | phone, we're handing the witness a document that's | 22 | Although I will note that this is not the final |
| 23 | also entitled "Confidentiality Agreement," dated July | 23 | version of the NDA, so... |
| 24 | 10th, 2013. And I'm going to see what I did with my | 24 | Q. Well, was there a final version that |
| 25 | copy of it. | 25 | was executed by all parties? |

|  | Page 107 | | Page 109 |
|---|---|---|---|
| 1 | THE WITNESS: (Reviewing document.) | 1 | A. By Syncora. The City never returned |
| 2 | BY MS. KOVSKY-APAP: | 2 | it. |
| 3 | Q. Just let me know when you're done | 3 | Q. Okay. How are you able to tell that |
| 4 | reviewing it. | 4 | this was not the final version? |
| 5 | A. Okay. | 5 | A. Because it's not the signature block |
| 6 | Q. And first, let me ask you: Do you | 6 | that's on the final version. |
| 7 | recognize this document? | 7 | Q. Okay. Let me see I may have that |
| 8 | A. Yes. | 8 | one. |
| 9 | Q. What is it? | 9 | MS. KOVSKY-APAP: Let's mark this as |
| 10 | A. This looks like a later in time draft | 10 | Number 6. |
| 11 | of the NDA. | 11 | (Schwarzman Exhibit 6 was marked for ID.) |
| 12 | Q. And this would be after the | 12 | MS. KOVSKY-APAP: We're marking as |
| 13 | resolution of most of the issues that we've talked | 13 | Exhibit 6 a "Confidentiality Agreement," also, dated |
| 14 | about so far, correct? | 14 | as July 10th, 2013. It is -- it's a version that is |
| 15 | A. I think so. Although it's not | 15 | appears to have two Syncora entities on the signature |
| 16 | red-lined, so I'd have to go searching for all the | 16 | block, executed by Syncora. |
| 17 | terms, but I would imagine. | 17 | THE WITNESS: (Reviewing document.) |
| 18 | Q. Well, you said that by the end of the | 18 | BY MS. KOVSKY-APAP: |
| 19 | call on July 2nd everything except two issues were | 19 | Q. Is this what, in your mind, would be |
| 20 | resolved, right? | 20 | the last version that was exchanged between the |
| 21 | A. Correct. | 21 | parties? |
| 22 | Q. And so leaving those two issues | 22 | A. Yes. |
| 23 | aside, one of the issues that you said was resolved | 23 | Q. And does this version have a |
| 24 | was the unilateral termination that Syncora was | 24 | unilateral termination provision? |
| 25 | requesting, correct? | 25 | A. You don't happen to have a red-line, |

28 (Pages 106 to 109)

Page 138

1  BY MS. KOVSKY-APAP:
2      Q.   In the end, since Syncora made a
3  proposal along the same lines as the proposal that it
4  was originally contemplating with respect to the NDA,
5  it went ahead and made the proposal without an NDA.
6  So ultimately the NDA was kind of irrelevant, wasn't
7  it?
8      A.   Well, there's two questions in there.
9  But as to irrelevance, I'm going to say, no, it was
10 not irrelevant.
11     Q.   So Syncora couldn't make its proposal
12 without the NDA?
13     A.   I don't want to reveal any
14 confidential communications, but suffice it to say
15 it's very different circumstances between the initial
16 time of what was going on here and what was happening
17 in the world when Syncora ultimately made the
18 proposal.
19     Q.   Yeah. But ultimately, Syncora was
20 able it make its proposal without benefit of any NDA
21 being signed.
22     A.   Correct.
23     Q.   Okay.
24          MS. KOVSKY-APAP: I'd like to go off
25 the record for a couple of minutes and take a short

Page 139

1  break.
2          THE VIDEOGRAPHER: Sure. This ends
3  Disk Number 2. Now going off the record at 2:14 p.m.
4      (Recess taken from 2:14 p.m. to 2:38 p.m.)
5          THE VIDEOGRAPHER: This begins Disk
6  Number 3. Now going back on the record at 2:38 p.m.
7  BY MS. KOVSKY-APAP:
8      Q.   Miss Schwarzman, do you recall that
9  you testified earlier that you have negotiated two
10 NDAs in your career so far?
11     A.   Correct.
12     Q.   And you said that Jones Day was the
13 counterparty to both of those NDAs; is that correct?
14     A.   Correct.
15     Q.   By "counterparty," do you mean the
16 signatory?
17     A.   By "counterparty," I mean the firm
18 with which I was negotiating.
19     Q.   Okay. So it's not your testimony
20 that Jones Day actually ever signed an NDA with
21 Syncora?
22     A.   No. I don't remember who signed the
23 other one. They never signed this.
24     Q.   Okay. And the other NDA was with
25 respect to what has been referred to as the City's

Page 140

1  data room; is that correct?
2      A.   Yes.
3      Q.   And would it -- well, I'll just
4  refresh your recollection.
5          MS. KOVSKY-APAP: Let's have this
6  marked as 7.
7       (Schwarzman Exhibit 7 was marked for ID.)
8  BY MS. KOVSKY-APAP:
9      Q.   I've handed you what's titled
10 "Confidentiality Agreement." It's dated July 9th. Do
11 you recognize this as the confidentiality agreement
12 related to the Data Room?
13     A.   Yeah.
14     Q.   And if you turn to the last page
15 where the signature blocks are --
16     A.   Um-hum.
17     Q.   -- you see that this was executed by
18 the City of Detroit and Syncora Capital Assurance Inc.
19     A.   Yes.
20     Q.   So Jones Day was not a party to this
21 agreement, correct?
22     A.   They are who I negotiated this
23 agreement with. But they did not sign the agreement.
24     Q.   Are you suggesting that,
25 notwithstanding the fact that they didn't sign the

Page 141

1  agreement, they were somehow a party to the agreement?
2      A.   No.
3      Q.   So Jones Day was not a party to this
4  agreement; is that correct?
5      A.   Correct.
6      Q.   Thank you.
7          Earlier I asked you some questions
8  about what has been called the "forbearance and
9  optional termination agreement."
10         Do you remember that?
11     A.   Yeah.
12     Q.   And you're aware of what agreement
13 I'm referring to when I say "forbearance and optional
14 termination agreement"?
15     A.   Yes.
16     Q.   Is my understanding correct that you
17 will refuse, on the basis of attorney-client privilege
18 and/or work product, to testify any further than
19 you've already done regarding your understanding of
20 what that agreement means and what its purpose is?
21     A.   Correct.
22         MS. KOVSKY-APAP: Okay. I will pass
23 the witness, if anyone else wants to ask any
24 questions. I think most of the people on the phone
25 indicated they did not.

36 (Pages 138 to 141)