UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED (I)

2013 SEP 19 P 12: 18

U.S. BANKRUPTCY COURT
E.D. MICHIGAN-DETROIT

In re

CITY OF DETROIT, MICHIGAN

Debtor.

Case No. 13-53846

Chapter 9

---

STEPHEN JOHNSON

   Plaintiff, Objector

Vs.

CITY OF DETROIT, MICHIGAN

   Defendant.

Attorney Kevyn D. Orr

---

## CREDITOR OBJECTION

---

Comes now, Stephen Johnson by and through Pro se, and supports his letter of objection to discharge of debtors pursuant to 11 USC § 523 (a) (4) - Exceptions to discharge; Bankruptcy Rule 3007-1 Objection to a Claim; and Letters to the Judge from pro se litigants to be treated as pleadings and docketed as such of the Federal Rules of Bankruptcy Procedure.

1

13-53846

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Table of Authorities | 3 |
| Statement of Facts | 5 |
| Argument | 7 |
| CONCLUSION | 14 |

# TABLE OF AUTHORITIES

**Cases**  Page

Benjamin Cardozo in Meinhard v. Salmon, 164 N.E. 545, 546 (N.Y. 1928):    10

Brigham v. Brigham, 11 So. 3d 374, 387 (Fla. 3d D.C.A. 2009)    11

Capital Bank, 644 So. 2d at 518;    10

Denton v. Hyman (In re Hyman), 502 F.3d 61, 68 (2d Cir. 2007)

cert. Denied , 129 S.Ct. 895 (2009).    7

Doe v. Evans, 814 So. 2d 370, 374 (Fla. 2002)    9,10

Faulkner v. Arista Records, LLC, 602 F. Sup. 2d 470, 482 (S.D.N.Y. 2009)    10

In re National Century Financial Enterprises, Inc., Investment Litigation, 604

F. Sup. 2d 1128, 1147-48 (S.D. Ohio 2009)    10

Marrama v. Citizens Bank of Massachusetts, et al.    11

Masztal v. The City of Miami, 971 So. 2d 803, 809 (Fla. 3d D.C.A. 2008)    11

Quinn v. Phipps, 113 So. 419, 421 (Fla. 1927)    9,10

Randy Bullock v. BankChampaign NA, 2013 U.S. LEXIS 3521 (U.S. May 13,

2013).    7

The University of Montreal Pension Plan v. Banc of America Securities, LLC,

592 F. Sup. 2d 608, 624 (S.D.N.Y. 2009)    10

U.S. v. Chestman, 947 F.2d 551, 567 (2d Cir. 1991)    8

**Statutes and Rules**

| | |
|---|---|
| 11 U.S.C. §109 (c) 4, | 6 |
| 11 U.S.C. §109 (c) 2. | 6,7 |
| 11 U.S.C. §523 (a) (4), | 1,14 |
| 11 U.S.C. §523 (a) (6), | 14 |
| Article IX, Section 24 of the 1963 Michigan Constitution | 5 |
| Bankruptcy Rule 3007-1 Objection to a Claim | 1 |
| Michigan 436 Act of 2012 | 5,7 |
| The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) | 11 |

**Other Authorities**

| | |
|---|---|
| Deborah A. DeMott, Beyond Metaphor at 914 | 8,9 |
| Ernest J. Weinrib, The Fiduciary Obligation, 25 U. Toronto L. J. 1, 4 (1975) | 8 |
| George A. Acre of University of California, Berkeley PAUL M. ROMER University of California, Berkeley Looting: The Economic Underworld of Bankruptcy for Profit | 13 |
| Susan T. Kelly's article "Unclaimed Billions: Federal Encroachment on State' Rights in Abandoned Property" published in the Boston College Law Review, Volume 33 Issue Number 5, Article 3, 9-1 | 8 |
| Tamar Frankel, Fiduciary Law, 71 Cal. L. Rev. 795, 807-808 (1983) | 4 |
| Thom Weidlich - May 12, 2011 12:00 AM ET | 6 |

## STATEMENT OF FACTS

The Debtor (City of Detroit) states in §V of its Motion cited as a CITY OF DETROIT'S CONSOLIDATED REPLY TO OBLIGATIONS TO THE ENTRY OF AN ORDER FOR RELIEF brought under a Chapter 9 bankruptcy filing in case No. 13-53846 that the states of Michigan's authorization of a Chapter 9 bankruptcy filing did not violate Article IX, Section 24 of the Michigan Constitution (Pension Clause).

Under Article IX, Section 24 of the 1963 Michigan Constitution the accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby. Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities.

The enactment of the Michigan 436 Act of 2012 allowed the state to appoint its emergency financial to commingle its interest with that of the city of Detroit (Debtor). Thus by statute and the placement of its agent over the city of Detroit (Debtor) it disguises itself as Debtor to file a chapter 9 bankruptcy, an act that it could not do as a state.

The emergency manager acting on behalf of the city of Detroit and the state of Michigan makes no secret of a strategy urged and directed by the state of Michigan to find a way to make the city of Detroit insolvent and eligible for a chapter 9 bankruptcy with the intent of using the Court to attack the Pension Clause through a self-serving

5

13-53846

13-53846-tjt    Doc 943    Filed 09/19/13    Entered 09/19/13 12:44:49    Page 5 of 14

reconstruction plan that even if allowed will not cure the Debtor from defalcation while acting in a fiduciary capacity.

I make no claim to have knowledge of all Debtor's acts of defalcation, recklessness, derelict of duties or any acts brought about by the Debtor's failure to perform fiduciary duties that led up to the Debtor's claim of insolvency and the filing of a Chapter 9 bankruptcy. The Debtor has failed to acknowledge that the state of Michigan is withholding and has withheld money owed to Debtor's and that if released Debtor could not be insolvent and the soundness of pension funds would not be in question.

The Debtor's in providing core services to thousands of delinquent abandoned properties owned by the state of Michigan that have been stripped inside and outside that now standing as shells to blight the city of Detroit may have accumulated millions of dollars in assets now held by the state of Michigan but purposely have not counted them as current assets[1]. If this is so, Debtor's has failed in its fiduciary duties to disclose all financial assets. Furthermore it reveals the Debtor's plan to deliberately choose not to disclose all assets but to seek a reconstruction plan sanctioned by the Court under a Chapter 9 bankruptcy to breach pension contracts. In this light Debtor has not bargained in good faith and may not be insolvent under rules 11 U.S.C. §109 (c) 4, and 11 U.S.C. §109 (c) 2.

---

1. Foreclosures Prompt Four US. Cities to Sue Banks for Mowing, Home Repairs, *Thom Weidlich - May 12, 2011 12:00 AM ET* Four major U.S. cities that pay for the upkeep of foreclosed properties are trying to recoup the costs of services including lawn mowing, repairs and security by suing banks their claim contributed to their "urban blight."

# ARGUMENT

A. The Debtor asks the bankruptcy court to aid it in a plan to discharge my pension debt that occurred during Debtor's defalcation[2] while acting in a fiduciary capacity. Debtor imagines that it could cure fifty years of mismanagement through an accelerated bankruptcy and reconstruction plan sanctioned by this Court. The Debtor knows that any plan that it drafts would only aid it in breaching pension contracts placed under the protection of the Michigan Constitution.[3] Debtor knows no reasonable sound minded person could trust it as a competent fiduciary after fifty years of abuse, gross recklessness, and willful and malicious behavior in the mismanagement of pension funds and other matters. Debtor by its past history is incapable of drafting a reconstruction plan that would cure its of fifty years of defalcation. [4] Even now as Debtor admits it failed in its fiduciary duties Debtor may conceal money that when uncovered would make Debtor net worth over an above that needed to pay its bills. But Debtor chooses not to disclose this money in order to claim insolvency and to be eligible to seek a chapter 9 bankruptcy to discharge pension debt.

As Debtor failed to perform its fiduciary duties Debtor fails to understand that at the heart of Courts' interpretations of the fiduciary relationship is a concern that those who

---

2. Defalcation occurs where a fiduciary misappropriates or fails to account for funds through conscious misbehavior or extreme recklessness. Denton v. Hyman (In re Hyman), 502 F.3d 61, 68 (2d Cir. 2007) cert. Denied , 129 S.Ct. 895 (2009).

3. Michigan act 436 of 2012 allows Michigan's Governor to appoint a fiduciary to act as Debtor on behalf of the city of Detroit

4. Randy Bullock v. BankChampaign NA, 2013 U.S. LEXIS 3521 (U.S. May 13, 2013). The US Supreme Court held that "defalcation" in the Bankruptcy Code includes a culpable state of mind requirement involving knowledge of, or gross recklessness with respect to, the improper nature of the fiduciary behavior.

assume trustee-like positions with discretionary power over the interests of others might abuse their positions[5].

Debtor in knowing that it has unaccounted assets yet declares insolvency while in pursuit of a chapter 9 bankruptcy. Fifty years of Debtor's unaccounted money are being withheld by the state of Michigan for providing police, fire and other core *services to thousands of abandoned properties owned by the state of Michigan*. These properties standing stripped inside and out to blight the city of Detroit for decades brought about a continuous migration of taxpayers from the city of Detroit. The migration of taxpayers has contributed to the reduction of Debtor's revenue and the reduction of the city of Detroit's workers that fund pensions[6].

The Debtor's financial position would be solvent and pensions would not be in question if the state of Michigan released Debtor's money that may amount to many billions of dollars. But to release Debtor's money would mean the state of Michigan would not be able to rid themselves of the billions owed to the Debtor, it then may be insolvent. Debtor's money held by the state of Michigan whether collectable or not is current assets that makes it ineligible to a Chapter 9 bankruptcy under rules 11 U. S. C. §109 (c) 2.

---

5. *U.S. v. Chestman*, 947 F.2d 551, 567 (2d Cir. 1991) ("A fiduciary relationship involves discretionary authority and dependency: One person depends on another — the fiduciary — to serve his interests."); DeMott, *Beyond Metaphor* at 914 ("Described instrumentally, the fiduciary obligation is a device that enables the law to respond to a range of situations in which, for a variety of reasons, one person's discretion ought to be controlled because of the characteristics of that person's relationship with another"); Tamar Frankel, *Fiduciary Law*, 71 Cal. L. Rev. 795, 807-808 (1983) ("all fiduciary relations give rise to the problem of abuse of power ... the purpose of fiduciary law should be to solve this problem"); Ernest J. Weinrib, *The Fiduciary Obligation*, 25 U. Toronto L. J. 1, 4 (1975) ("The fiduciary obligation is the law's blunt tool for the control of ... discretion.").

6 Susan T. Kelly's article "Unclaimed Billions: Federal Encroachment on State' Rights in Abandoned Property" published in the Boston College Law Review, Volume 33 Issue Number 5, Article 3, 9-1-

8

**13-53846**

B.  My pension contract should not be part of any reconstruction plan posed by the Debtor that have failed in its fiduciary duties in a reckless manner over a fifty year period during which it committed overt acts at will using the might of its position and taxpayer dollars.

No one principle fully captures all the circumstances in which Debtor's fiduciary capacity was abused and imposed because the concept of fiduciary duty has yet to be manifested under a strict legal rule. Instead, it is fundamentally a flexible equitable concept that arose to provide relief when no legal remedy was available[7].

It is applied through analogy to circumstances as seen in this case which Debtor's fiduciary duties traditionally apply and is, therefore, necessarily situation-specific[8]. The language used by Courts to describe the fiduciary relationship reflects its historical origin in equity. For instance the Florida Supreme Court[9], using centuries old language, characterized the fiduciary relationship as the relation and duties involved *need not be legal*; they may be moral, social, domestic, or personal. If a relation of trust and confidence exists between the parties where confidence is reposed by one party and a trust accepted by the other as in the city of Detroit (Debtor) and me a pensioner, or in the Debtor's fiduciary responsibility over my pension contract or where confidence has been acquired and abused by the Debtor, that is sufficient as a predicate for relief[10].

Courts in recent years have imposed a fiduciary duty on persons in numerous other types of relationships.

---

1992 reveals that in 1962, over fifty years ago, the value of abandoned properties (unclaimed) estimated at $15 billion was growing at the rate of $1 billion annually.

7. Deborah A. DeMott, *Beyond Metaphor: An Analysis of Fiduciary Obligation*, 37 Duke Law Journal 880-882 (1988).

8. Id. at 879, 880-81

9. *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002), *quoting Quinn v. Phipps*, 113 So. 419, 421 (Fla. 1927

9

13-53846

13-53846-tjt    Doc 943    Filed 09/19/13    Entered 09/19/13 12:44:49    Page 9 of 14

This Court along with other Courts hold that a fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relationship. The most basic duty of a fiduciary is the duty of loyalty, which obligates the fiduciary to put the interests of the beneficiary first, ahead of the fiduciary's self interest, and to refrain from exploiting the relationship for the fiduciary's self benefit, be it political, debt owed, personal or other. This gives rise to more specific duties, such as the prohibition against self-dealing, conflicts of interest, and the duty to disclose material facts[11], including undisclosed money.

The Debtor's fiduciary duty arose expressly when it established a technical trust with me and other pensioners through a contractual relationship years before its defalcation[10]. When a fiduciary relationship exists such as with the city of Detroit and me as a pensioner, the fiduciary is under a duty to act for the benefit of the beneficiary to matters within the scope of the fiduciary relationship[12].

---

10. *Doe*, 814 So. 2d at 374 (emphasis added). In *Quinn v. Phipps*, 113 So. 419, 421, 425-426 (Fla. 1927), the Florida Supreme Court addressed the fiduciary relationship in the context of the development of equity. Other courts characterize the fiduciary relationship in similar terms. *See, e.g., Faulkner v. Arista Records, LLC*, 602 F. Sup. 2d 470, 482 (S.D.N.Y. 2009) ("A fiduciary relationship arises when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another."); *Pension Committee of The University of Montreal Pension Plan v. Banc of America Securities, LLC*, 592 F. Sup. 2d 608, 624 (S.D.N.Y. 2009) ("While the 'exact limits' of what constitutes a fiduciary relationship are 'impossible of the statement,' a fiduciary relationship may be found in any case 'in which influence has been acquired and abused, in which confidence has been reposed and betrayed'").

11. Benjamin Cardozo in *Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928):

12. *See Capital Bank*, 644 So. 2d at 518; *see also In re National Century Financial Enterprises, Inc., Investment Litigation*, 604 F. Sup. 2d 1128, 1147-48 (S.D. Ohio 2009) ("The fiduciary's role may be assumed by formal appointment, or it may arise de facto from a more informal relationship between the parties; for the de facto status to be recognized, however, both parties must understand under the circumstances that a special trust and confidence has been reposed in one by the other." The party asserting a claim for breach of fiduciary duty must establish the existence of a fiduciary duty, a breach of that duty, and an injury proximately resulting therefrom.).

Courts use the following elements as a test of breach of fiduciary duty and reckless behavior: [13]

a. That I reposed my trust and confidence in the city of Detroit (Debtor), or that my trust and confidence is induced by the Debtor, and thus a fiduciary relationship existed between me and the Debtor;

b. That Debtor breached his fiduciary duty by defalcation while acting in a fiduciary capacity;

c. That through its failure to uphold its fiduciary duty it has caused and will cause me and others harm resulting in losses; and

d. That the loss I thus far incurred and the losses I will incur are caused by Debtor's breach of duty.

Debtor's claims of insolvency may only be an attempt to shield it from its real intention to raid pensions[13]. The Debtor's fiduciary actions over the past several decades reveal that an economic underground[14] has come to life that now gives Debtor the incentive to declare that it is insolvent and eligible to seek a Chapter 9 bankruptcy for revenue and to loot pension funds instead to honor its contract obligations.

Debtor's bankruptcy for revenue that appears to have been due to poor accounting, lax

---

12. *See Brigham v. Brigham*, 11 So. 3d 374, 387 (Fla. 3d D.C.A. 2009) ("To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel and protect the weaker party."); *Masztal v. The City of Miami*, 971 So. 2d 803, 809 (Fla. 3d D.C.A. 2008) ("An implied fiduciary relationship will lie when there is a degree of dependency on one side and an undertaking on the other side to protect and/or benefit the dependent party.").

13 The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). *Marrama v. Citizens Bank of Massachusetts, et al.* The Court denied Marrama's motion to convert because they found that he had intentionally concealed information regarding a property that he previously owned and had recently transferred into a trust in an apparent attempt to conceal the property from his creditors and the bankruptcy court.

11

regulation, and low penalties for abuses that now give themselves as the Debtor's incentive to claim more than the amount given away in tax incentives or allowed to be loss in their failure to protect properties from looters than the amount owed to me as a pensioner. And, now Debtor asks the Court to not only to help it to default on its fiduciary obligation to me and others, but to aid it in future overt acts of reckless fiduciary behavior.

Debtor's bankruptcy for revenue has occurred here in the city of Detroit due to its failure to abide and uphold its fiduciary responsibilities. The most obvious fiduciary responsibility manifested here is the underfunding of pensions or abuse of pension funds. Under the Debtor's watch pension funds were allowed to be under soft budget constraints and possibly abused. The Debtor's failure to enforce discipline and to limit opportunism may have been allowed or overlooked due to Debtor's relationship with deal makers. It is now known by the public that the Debtor has long failed in its fiduciary duties and its guarantee to protect contracts, a guarantee contingent on meeting specific targets for an accounting measure of pensioners' net worth. Perhaps, Debtor did so, in viewing my pension net worth as a small fraction of its total assets for revenue on hand and revenue to be generated in the future, with the option of bankruptcy for sustainable revenue as more the strategy for Debtor than to maximize true economic values.

In doing so, the normal economics of maximizing economic value were replaced by the Debtor's topsy-turvy economics of maximizing its debt and manipulating its extracted value, which drove its economic net worth and pension funds deeply negative. Once Debtor had decided that it could extract more from a bankruptcy filing by maximizing its

present losses, any action that allows the debtor to extract more currently was now attractive-even if it causes hardships for the loss of tens of thousands of pensioner's life sustaining income, and even at the concealment of its true debt and the economic net worth; whatever that may be.[14] Even knowing that a dollar in increased dividends today is worth a dollar to Debtor, but a dollar in increased future earnings of the Debtor is worth nothing to future payments accrue to me a pensioner— who is now left holding the empty looted bag. The goal of the Debtor's bankruptcy for revenue is to cause social losses and personal hardships that dwarf the discharge of pension debt that the Debtor will ask this bankruptcy court to induce. Because of this disparity between what the Debtor can capture and the losses that Debtor creates, bankruptcy is viewed as a tool for raising revenue through looting pension funds.

Unfortunately, pensioners as myself that been harmed through the Debtor's defalcation while acting in a fiduciary capacity are not the only ones that face severely distorted incentives. Debtor's looting of pension for revenue is a tactic that can spread symbiotically to other cities and even states, bringing to life a whole economic underworld with perverse incentives. Cities bound to honor fiduciary duties and to adhere to guarantee contracts will make trade with unaffiliated organizations outside their agreement, causing them to produce in a way that will help Debtors maximize their looting extractions with no regard to honoring pension contracts or any contract.

Rather than looking for business partners who will honor their contracts, the Debtor as a looter looks for partners who will sign contracts that appear to have high current value if

---

14. GEORGE A. AKERLOF University of California, Berkeley PAUL M. ROMER University of California, Berkeley Looting: The Economic Underworld of Bankruptcy for Profit

13

fulfilled but that will NOT-AND could not-be honored.

## CONCLUSION

There is nothing confusing about the Objection. The Debtor's reckless behavior that caused Debtor to defalcated while acting in a fiduciary capacity over a fifty year period has harmed me throughout my working years with the city of Detroit now comes before the bankruptcy Court to ask the Court to aid it in sustaining further abuse on me and others. Objector begs the Court to see through the Debtor's guise as it continues to consider this Objection as a letter to the Judge —which would still not alter Objector's entitlement to fairness and protection under the law.

The Debtor's craftiness in framing a response to the Objection does not emanate from any misunderstanding by the Objector. Rather, it emanates from the fact that the Debtor's failure to administer fiduciary duties is indefensible. The Objector's obligation is not to draft an Objection that is easy to defeat, but to draft— as he has done—an Objection that is easy to understand.

In pursuant to 11 U. S. C. §523 (a) (4) and 11 U. S. C. §523 (a) (6), which provides that an individual cannot obtain a bankruptcy discharge from a debt for defalcation while acting in a fiduciary capacity the motion of Debtor for eligibility to enter a Chapter 9 bankruptcy must be denied.

Dated: September 19, 2013

Respectfully submitted,

Stephen Johnson, Pro se
31354 Evergreen Road
Beverly Hills, MI 48025
248.520. 5292

14