UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| In re | Chapter 9 |
| | Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, | |
| | Hon. Steven W. Rhodes |
| Debtor. | **Expedited Consideration Requested** |

## MOTION *IN LIMINE* TO EXCLUDE TESTIMONY
## OF SAQIB BHATTI

Interested party David Sole seeks to call Saqib Bhatti, a fellow at the

Nathan Cummings Foundation, as a rebuttal witness at the hearing (the "Hearing")

on the Motion of Debtor for Entry of an Order (I) Authorizing the Assumption of

that Certain Forbearance and Optional Termination Agreement Pursuant to Section

365(a) of the Bankruptcy Code, (II) Approving Such Agreement Pursuant to Rule

9019, and (III) Granting Related Relief. *See* Docket No. 730.

In an affidavit provided to the City of Detroit immediately before his

deposition on September 18, 2013, Mr. Bhatti outlined the topics on which he

proposes to testify at the Hearing: "My testimony will speak specifically to the

impact that the illegal manipulation of LIBOR had on the City of Detroit's interest rate swaps. It will also focus on known instances of fraud, corruption, and criminal behavior that have been uncovered in the municipal derivatives market elsewhere in the country, including the bid-rigging scandal, the ISDAfix manipulation scandal, and the corruption scandal in Jefferson County." *See* Affidavit, Exhibit 6-A, at ¶ 7.

However, Mr. Bhatti will not seek to give expert opinion testimony on the foregoing topics. Rather, counsel for David Sole stated on the record at the deposition that Mr. Bhatti would be called as a *fact* witness with respect to those topics:

> MR. HERTZBERG:  Counsel, I'm asking, are you presenting him as an expert or not?
>
> MR. GOLDBERG:  We're presenting him to testify on what we stated in the last paragraph.
>
> MR. HERTZBERG:  Do you plan on presenting him as an expert witness or not?  I have a right to know what you intend to present him as.
>
> MR. GOLDBERG:  We plan on presenting him as a fact witness on the points that we talked about in the last paragraph --
>
> MR. HERTZBERG:  But not as an expert witness?
>
> MR. GOLDBERG:  Not as an expert witness.

*See* Excerpts from Rough Transcript of Deposition, Exhibit 6-B, at 79-80.

Mr. Bhatti's testimony is inadmissible. As he admitted at his deposition, he has no personal knowledge of any of the facts to which he seeks to testify at the Hearing:

BY MR. HERTZBERG:

Q.   Okay.  What do you -- you say you're going to talk about LIBOR manipulation.

A.   Yes.

Q.   Okay.  Besides reading articles and the information on UBS and looking at the city's financial report for 2012, have you done any independent fact finding or research to come to any conclusions you have come to?

A.   Aside from the calculations of the impact on Detroit?

Q.   Yeah.

A.   No.

Q.   Okay.  Were you present at any time when an alleged LIBOR fixing took place?

A.   No.

Q.   Okay.  So you weren't in the room with any banks at any point over the last ten years when alleged LIBOR manipulation took place?

A.   No.

Q.   So you are just relying solely based upon articles you've read and other published publications on the LIBOR manipulation?  You have no personal knowledge?

A.   And court findings and admissions from banks of their conduct.

Q. Okay.

A. But no personal knowledge.

Q. But you have no personal knowledge yourself?

A. No.

Q. So you can't testify to any facts that you actually witnessed --

A. No.

Q. -- yourself on manipulation of LIBOR?

A. No.

* * *

Q. Okay. Do you have any personal knowledge of any bid rigging with respect to the swaps at issue in the City of Detroit?

A. No.

Q. Do you have any personal knowledge of any corruption or undisclosed payments with regard to the swaps in the City of Detroit?

A. No.

Exhibit 6-B at 80-81, 91.

Mr. Bhatti cannot offer factual testimony on these topics since he has no personal knowledge of them. Nor can he offer opinion testimony, since he is not being offered as an expert and he fails to meet the prerequisites for lay opinion testimony under Rule 701 of the Federal Rules of Evidence. That rule provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. "If a witness's testimony fails to meet any one of the three foundational requirements, it is not admissible." *United States v. Freeman*, 2013 U.S. App. LEXIS 18976, *12 (6th Cir. 2013).

As the Advisory Committee Notes to the rule make clear, "Limitation (a) is the familiar requirement of ***first-hand knowledge or observation***." *See also Freeman*, U.S. App. LEXIS 18976, *10-11 (lay opinion testimony is permitted under Rule 701 "because it has the effect of describing something that the jurors could not otherwise experience for themselves by drawing upon the witness's ***sensory and experiential observations that were made as a first-hand witness to a particular event***") (citation omitted; emphasis added). Mr. Bhatti admitted that he has no such first-hand knowledge or sensory or experiential observation. Rather, his entire proposed testimony is based on articles and other published items he has read, which constitute inadmissible hearsay under Fed. R. Evid. 802.

Furthermore, any testimony Mr. Bhatti might give on the effect of alleged LIBOR manipulation on the interest rate swaps would be based on

technical or other specialized knowledge within the scope of Rule 702,[1] and thus fails the requirement of Rule 701(c). Mr. Sole cannot evade the requirements of Rule 702 by offering Mr. Bhatti as a fact witness. *See* Committee Notes on Rules – 2000 Amendment ("Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.")

## CONCURRENCE

Counsel for the City sought the concurrence of counsel for Mr. Sole in the relief sought in this motion, but such concurrence was not obtained.

## CONCLUSION

Mr. Bhatti is not being offered as an expert, and has no first-hand knowledge or experiential observation that would make his testimony admissible. For the reasons stated herein, the City respectfully requests that the Court enter an order, in the form attached hereto as Exhibit 1, excluding Mr. Bhatti from testifying at the Hearing.

---

[1] The City does not believe that Mr. Bhatti would qualify to give expert testimony pursuant to Rule 702 pursuant to the standard set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993).

Dated: September 19, 2013          Respectfully submitted,

/s/ Robert S. Hertzberg
Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, MI  48075
Telephone:  (248) 359-7300
Fax:  (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

- and -

Thomas F. Cullen, Jr.
Gregory M. Shumaker
Geoffrey S. Stewart
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001.2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700
tfcullen@jonesday.com
gshumaker@jonesday.com
gstewart@jonesday.com

**ATTORNEYS FOR THE CITY OF DETROIT**

#21370232 v1 (140967.3)

# EXHIBIT 1

## Proposed Order

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| In re | Chapter 9 |
| | Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, | |
| | Hon. Steven W. Rhodes |
| Debtor. | |

## ORDER EXCLUDING TESTIMONY OF SAQIB BHATTI

This matter having come before the Court on the motion (the "Motion") of the Debtor, City of Detroit, for entry of an order excluding the testimony of Saqib Bhatti at the hearing (the "Hearing") on the Motion of Debtor for Entry of an Order (I) Authorizing the Assumption of that Certain Forbearance and Optional Termination Agreement Pursuant to Section 365(a) of the Bankruptcy Code, (II) Approving Such Agreement Pursuant to Rule 9019, and (III) Granting Related Relief, and the Court being otherwise advised in the premises;

IT IS HEREBY ORDERED that the Motion is granted.

IT IS FURTHER ORDERED that the testimony of Saqib Bhatti is excluded from being presented at the Hearing.

# <u>EXHIBIT 2</u>

## Notice of Motion and Opportunity to Object

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| In re | Chapter 9 |
| | Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, | |
| | Hon. Steven W. Rhodes |
| Debtor. | **Expedited Consideration Requested** |

## NOTICE OF DEBTOR CITY OF DETROIT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF SAQIB BHATTI

    **PLEASE TAKE NOTICE** that on Sept 19, 2013, the Debtor, City of Detroit, filed its *Motion in Limine to Exclude Testimony of Saqib Bhatti* (the "**Motion *in Limine***") in the United States Bankruptcy Court for the Eastern District of Michigan (the "**Bankruptcy Court**") seeking entry of an order excluding the testimony of Saqib Bhatti at the hearing on the Motion of Debtor for Entry of an Order (I) Authorizing the Assumption of that Certain Forbearance and Optional Termination Agreement (the "Agreement") Pursuant to Section 365(a) of the Bankruptcy Code, (II) Approving Such Agreement Pursuant to Rule 9019, and (III) Granting Related Relief, set to take place in the Bankruptcy Court on September 23, 2013.

    **PLEASE TAKE FURTHER NOTICE** that **your rights may be affected by the relief sought in the Motion *in Limine*. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

    **PLEASE TAKE FURTHER NOTICE** that if you do not want the Bankruptcy Court to grant the Debtor's Motion *in Limine*, or you want the

Bankruptcy Court to consider your views on the Motion *in Limine*, by **October 8, 2013 at 4:00 p.m. (EDT)** you or your attorney must:

1.    File a written objection or response to the Motion *in Limine* explaining your position with the Bankruptcy Court electronically through the Bankruptcy Court's electronic case filing system in accordance with the Local Rules of the Bankruptcy Court or by mailing any objection or response to:[1]

**United States Bankruptcy Court**
Theodore Levin Courthouse
231 West Lafayette Street
Detroit, MI 48226

You must also serve a copy of any objection or response upon:

**Jones Day**
51 Louisiana Ave. NW
Washington, D.C. 20001-2113
Attention: Christopher DiPompeo

-and-

**Pepper Hamilton LLP**
Suite 1800, 4000 Town Center
Southfield, Michigan 48075
Attn: Robert Hertzberg and Deborah Kovsky-Apap

2.    If an objection or response is timely filed and served, the clerk will schedule a hearing on the Motion *in Limine* and you will be served with a notice of the date, time and location of the hearing.

**PLEASE TAKE FURTHER NOTICE that if you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the Motion *in Limine* and may enter an order granting such relief.**

---

[1] A response must comply with F. R. Civ. P. 8(b), (c) and (e).

Dated:  September 19, 2013                    Respectfully submitted,


                                             /s/ Robert S. Hertzberg
                                             Robert S. Hertzberg (P30261)
                                             Deborah Kovsky-Apap (P68258)
                                             PEPPER HAMILTON LLP
                                             4000 Town Center, Suite 1800
                                             Southfield, MI  48075
                                             Telephone:  (248) 359-7300
                                             Fax:  (248) 359-7700
                                             hertzbergr@pepperlaw.com
                                             kovskyd@pepperlaw.com

                                                - and -

                                             Thomas F. Cullen, Jr.
                                             Gregory M. Shumaker
                                             Geoffrey S. Stewart
                                             JONES DAY
                                             51 Louisiana Avenue, N.W.
                                             Washington, D.C.  20001.2113
                                             Telephone:  (202) 879-3939
                                             Facsimile:  (202) 626-1700
                                             tfcullen@jonesday.com
                                             gshumaker@jonesday.com
                                             gstewart@jonesday.com


                                             **ATTORNEYS FOR THE CITY OF
                                             DETROIT**

# EXHIBIT 3

**Brief**
**(Not Applicable)**

# EXHIBIT 4

## Certificate of Service

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| | Hon. Steven W. Rhodes |
| Debtor. | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 19, 2013, I electronically filed the

Debtor's Motion *in Limine* to Exclude the Testimony of Saqib Bhatti with the

Clerk of the Court which sends notice by operation of the Court's electronic filing

service to all ECF participants registered to receive notice in this case.

Dated: September 19, 2013          /s/ Robert S. Hertzberg
                                    Robert S. Hertzberg (P30261)

# EXHIBIT 5

**Affidavits**
**(Not Applicable)**

# EXHIBIT 6-A

## Affidavit of Saqib Bhatti

## AFFIDAVIT OF SAQIB BHATTI

STATE OF MICHIGAN )
                     ) SS
COUNTY OF WAYNE )

1.       I Saqib Bhatti, do affirm and state as follows:

2.       I am a Fellow at the Nathan Cummings Foundation researching the role that municipal finance deals play in public budget crises. Prior to my fellowship, I analyzed the financial industry for six years as a Senior Financial Analyst with the Service Employees International Union (SEIU). During this time, my work focused on two primary areas: municipal finance and the housing crisis.

3.       I have established myself as an expert on interest rate swaps in particular, leading a team of researchers that has uncovered more than 1,100 swap deals and quantified the costs of each to taxpayers. Through this research, I have been able to draw clear connections between interest rate swaps and budget deficits in cities and states across the country.

4.       This work has also allowed me to understand the rampant fraud in the municipal derivatives industry. I have studied the London Inter-Bank Offered Rate (LIBOR) manipulation scandal and helped analyze the State of Oregon's potential losses stemming from the illegal manipulation of LIBOR. I am also familiar with the municipal derivatives bid-rigging scandal, the International Swap Dealers Association's ISDAfix scandal, and other instances of criminal corruption in the industry, like the fraudulent interest rate swaps that bankrupted Jefferson County, Alabama.

5.       I have met with numerous public officials and/or their staff in more than ten states, including treasurers, attorneys general, comptrollers, mayors, city managers, chief financial officers, finance directors, state legislators, and city councilmembers to present my research and offer policy recommendations. My work has led to policy considerations in more

than 20 cities across the country, and it has been covered by major US and international press outlets, including the *Wall Street Journal, New York Times, Financial Times,* and *American Banker.* I am frequently consulted by financial reports writing stories about interest rate swaps as an expert for background research.

6.     I was awarded the highly competitive Nathan Cummings Foundation Fellowship in recognition of my work in the area of municipal finance to work with economists, academics, industry experts, public officials, and nonprofit organizations to develop and advocate for alternate models for government financing that are not dependent on risky financial instruments like interest rate swaps.

7.     My testimony will speak specifically to the impact that the illegal manipulation of LIBOR had on the City of Detroit's interest rate swaps. It will also focus on known instances of fraud, corruption, and criminal behavior that have been uncovered in the municipal derivatives market elsewhere in the country, including the bid-rigging scandal, the ISDAfix manipulation scandal, and the corruption scandal in Jefferson County.

FURTHER AFFIANT SAYETH NOT.


_____          _9/17/13_____
SAQIB BHATTI                                               Date

Subscribed and sworn to before me this _17th_ day of September, 2013

_____
Notary Public; _Vanessa G Fluker_____, Wayne County Michigan.

My commission expires: _01 - 11 - 2015_

Vanessa G Fluker
Notary Public of Michigan
Wayne County
Expires 01/11/2015
Acting in the County of Wayne

# EXHIBIT 6-B

## Deposition of Saqib Bhatti

```
 1        ********** DRAFT TRANSCRIPT *****
 2                    Southfield, Michigan
 3                    Wednesday, September 18, 2013
 4                    11:03 a.m.
 5                    * * * * *
 6          VIDEOGRAPHER:  We are now on the record
 7 in the matter of In Re: City of Detroit, Debtor.
 8 Today's date is September 18th, 2013.  The time is
 9 11:03 a.m.  This is a video-recorded deposition of
10 Saqib Bhatti, being taken at 4000 Town Center,
11 Southfield, Michigan.
12          I am the camera operator.  My name is
13 John Zawacki, in association with Alderson
14 Reporting, located at 1155 Connecticut Avenue,
15 Northwest, Washington, D.C.
16          The court reporter is Michele French, who
17 is also in association with Alderson Reporting.
18          Will all attorneys identify themselves
19 and the parties they represent.
20          MR. HERTZBERG:  Robert Hertzberg on
21 behalf of the City of Detroit, from Pepper Hamilton.
22          MS. KOVSKY-APAP:  Deborah Kovsky-Apap, on
23 behalf of the City of Detroit, from Pepper Hamilton.
24          MR. JURGENS:  Jason Jurgens, from
25 Cadwalader, Wickersham & Taft, LLP, on behalf of
```

1 Merrill Lynch Capital Services.

2           MR. RUNYAN:  I'm John Runyan on behalf of

3 Mr. Bhatti.

4           MR. GOLDBERG:  Jerome Goldberg on behalf

5 of Interested Party David Sole.

6                 SAQIB BHATTI,

7 was thereupon called as a witness herein, and after

8 having first been duly sworn to testify to the

9 truth, the whole truth and nothing but the truth,

10 was examined and testified as follows:

11               EXAMINATION

12 BY MR. HERTZBERG:

13     Q.    Mr. Bhatti, is that how you pronounce

14 your name?

15     A.    Yes.

16     Q.    Okay.  Mr. Bhatti.  Have you ever had

17 your deposition taken before?

18     A.    I have not.

19     Q.    Okay.  Have you ever testified in court

20 before?

21     A.    No.

22     Q.    Okay.  Well, I'm going to ask you a

23 series of questions.  If you don't understand the

24 question, please ask me to explain the question.

25               If you need the question repeated, feel

24      A.      Sure.

25      Q.      You'll appear before the hearing for

1 another deposition; is that correct?

2               MR. GOLDBERG:  I'm going to object.  He

3 said he would supply calculations, and also his

4 testimony is -- your characterization isn't an

5 expert, as expert testimony.  *

6 BY MR. HERTZBERG:

7      Q.      Okay.  Are you appearing as an expert?

8               Do you plan on testifying as an expert or

9 just as a fact witness?

10     A.      I do not know.

11     Q.      When are you going to decide whether

12 you're going to be an expert or fact witness?

13              MR. GOLDBERG:  That's a legal conclusion

14 on his part.  I would object.

15              MR. HERTZBERG:  It's not a legal

16 conclusion.

17              MR. GOLDBERG:  Yes, it's a legal

18 conclusion.

19              MR. HERTZBERG:  Counsel, I'm asking, are

20 you presenting him as an expert or not?

21              MR. GOLDBERG:  We're presenting him to

22 testify on what we stated in the last paragraph.

23              MR. HERTZBERG:  Do you plan on presenting

24 him as an expert witness or not?  I have a right to

25 know what you intend to present him as.

1          MR. GOLDBERG:  We plan on presenting him

2 as a fact witness on the points that we talked about

3 in the last paragraph --

4          MR. HERTZBERG:  But not as an expert

5 witness?

6          MR. GOLDBERG:  Not as an expert witness.

7          MR. HERTZBERG:  Okay.  Well, that's good.

8 BY MR. HERTZBERG:

9     Q.    Okay.  What do you -- you say you're

10 going to talk about LIBOR manipulation.

11     A.    Yes.

12     Q.    Okay.  Besides reading articles and the

13 information on UBS and looking at the city's

14 financial report for 2012, have you done any

15 independent fact finding or research to come to any

16 conclusions you have come to?

17     A.    Aside from the calculations of the impact

18 on Detroit?

19     Q.    Yeah.

20     A.    No.

21     Q.    Okay.  Were you present at any time when

22 an alleged LIBOR fixing took place?

23     A.    No.

24     Q.    Okay.  So you weren't in the room with

25 any banks at any point over the last ten years when

1 alleged LIBOR manipulation took place?

2        A.     No.

3        Q.     So you are just relying solely based upon

4 articles you've read and other published

5 publications on the LIBOR manipulation?  You have no

6 personal knowledge?

7        A.     And court findings and admissions from

8 banks of their conduct.

9        Q.     Okay.

10       A.     But no personal knowledge.

11       Q.     But you have no personal knowledge

12 yourself?

13       A.     No.

14       Q.     So you can't testify to any facts that

15 you actually witnessed --

16       A.     No.

17       Q.     -- yourself on manipulation of LIBOR?

18       A.     No.

19       Q.     Okay.  You said you're not getting paid

20 to testify?

21       A.     No.

22       Q.     And why aren't you getting paid?

23       A.     I'm not getting paid.

24       Q.     Did you ask for payment?

25       A.     No.

                                                        82

17 refunding bonds.  I'm asking only as to the swaps

18 today.

19     A.    Right.

20     Q.    Tell me what damages the whole

21 undisclosed payments and all the other stuff you

22 describe, the dollar amount that hurt the City of

23 Detroit swap agreements?

24     A.    I can't tell you that.  I can't tell you

25 the dollar amount that impacted the City of Detroit.

91

1 What I can say is that there are -- the research

2 done in other places have shown that there is a

3 pattern of wrongdoing with respect to these types of

4 deals, and certainly there are examples that do tie

5 back to the City of Detroit.  For instance, with the

6 Pension Obligation Certificates, the swaps related

7 to them UBS was actually the party that made the

8 payment to the city's swap advisors.  The swap

9 advisor is supposed to have fiduciary responsibility

10 to the city and --

11     Q.    But you can't quantify any damage to the

12 city caused by that?

13     A.    I can't quantify damage, no.

14     Q.    Okay.  Do you have any personal knowledge

15 of any bid rigging with respect to the swaps at

16 issue in the City of Detroit?

17     A.    No.

18     Q.    Do you have any personal knowledge of any

Page 85

19 corruption or undisclosed payments with regard to

20 the swaps in the City of Detroit?

21     A.   No.

22     Q.   Okay.

23          MR. HERTZBERG:  I have no further

24 questions.

25          Do you have any questions.

92

1          MR. JURGENS:  I do not.

2          MR. GOLDBERG:  Just give me a minute.

3 Okay?

4          MR. HERTZBERG:  Sure.  Absolutely.  Do

5 you want to go off the record.

6          MR. GOLDBERG:  Yeah, let's go off the

7 record.

8          VIDEOGRAPHER:  We are going off the

9 record at 1:13 p.m.

10          (Recess - 1:13 p.m. to 1:17 p.m.)

11          VIDEOGRAPHER:  We are going back on the

12 record at 1:17 p.m.

13          MR. HERTZBERG:  Okay.  I have no further

14 questions of the witness.

15          No one else here does.  Mr. Goldberg, do

16 you --

17          MR. GOLDBERG:  And we have no further

18 questions.

19          MR. HERTZBERG:  Thank you for appearing.

20          THE WITNESS:  Thank you.

               Page 86