<pre>
 1              UNITED STATES BANKRUPTCY COURT
               EASTERN DISTRICT OF MICHIGAN
 2                  SOUTHERN DIVISION

 3  IN THE MATTER OF,          Case No. 13-53846
                              Detroit, Michigan
 4  CITY OF DETROIT, MI        September 10, 2013
    _____/  10:01 a.m.
 5
           IN RE:  NOTICE OF PROPOSED FEE REVIEW ORDER.
 6     CREDITOR MICHAEL BEYDOUN'S MOTION FOR RELIEF FROM AUTOMATIC
                              STAY.
 7     RESPONSE OF INTERNATIONAL UNION, UAW TO AUGUST 26, 2013 ORDER
                    REGARDING ELIGIBILITY OBJECTIONS.
 8     THE MICHIGAN COUNCIL 25 OF THE AMERICAN FEDERATION OF STATE,
    COUNTY & MUNICIPAL EMPLOYEES, AFL-CIO AND SUB-CHAPTER 98, CITY
 9      OF DETROIT RETIREES' (I) OBJECTIONS AND COMMENTS TO THE
           COURT'S AUGUST 26, 2013 ORDER REGARDING ELIGIBILITY
10   OBJECTIONS, NOTICES OF HEARING AND CERTIFICATIONS PURSUANT TO
     28 U.S.C. 2403(a) & (b) and (II) EXPEDITED MOTION TO COMPEL
11                 DEPOSITIONS OF CITY WITNESSES.
          CONSOLIDATED COMMENT OF RETIREE ASSOCIATION PARTIES TO
12             ORDER REGARDING ELIGIBILITY OBJECTIONS.
      OBJECTIONS/COMMENTS OF ROBBIE FLOWERS, MICHAEL WELLS, JANET
13    WHITSON, MARY WASHINGTON, AND BRUCE GOLDMAN TO ORDER OF 26
                             AUGUST 2013.
14   RESPONSE OF THE RETIRED DETROIT POLICE MEMBERS ASSOCIATION TO
        AUGUST 26, 2013 ORDER REGARDING ELIGIBILITY OBJECTIONS,
15    NOTICES OF HEARING AND CERTIFICATIONS PURSUANT TO 28 U.S.C.
                          243(a) and (b).
16      COMMENTS OF THE DETROIT RETIREMENT SYSTEMS TO THE ORDER
        REGARDING ELIGIBILITY OBJECTIONS NOTICES OF HEARINGS AND
17      CERTIFICATIONS PURSUANT TO 28 U.S.C. 2403(a) and (b).
    MOTION TO QUASH AND FOR PROTECTIVE ORDER FILED BY THE STATE OF
18                              MICHIGAN.
             BEFORE THE HONORABLE STEVEN W. RHODES
19            TRANSCRIPT ORDERED BY: ROBIN WYSOCKI

20  APPEARANCES:

21  For the City of Detroit, MI:  JEFFREY B. ELLMAN, ESQ.
                                  Jones, Day
22                                1420 Peachtree Street, N.E.
                                  Suite 800
23                                Atlanta, GA 30309-3053
                                  404-581-8309
24

25
</pre>

```
1                                BRUCE BENNETT, ESQ.
                                 Jones, Day
2                                555 South Flower Street
                                 Fiftieth Floor
3                                Los Angeles, CA 90071-2452
                                 213-243-2382
4
     Fee Examiner:               ROBERT M. FISHMAN, ESQ.
5                                Shaw, Fishman, Glantz & Towbin,
                                 LLC
6                                321 North Clark Street
                                 Suite 800
7                                Chicago, IL 60654
                                 312-541-0151
8
     For the Official Committee of  MATTHEW E. WILKINS, ESQ.
9    Retirees:                   (P56697)
                                 Brooks, Wilkins, Sharkey &
10                               Turco, PLLC
                                 401 S. Old Woodward Avenue
11                               Suite 400
                                 Birmingham, MI 48009
12                               248-971-1711

13                               CLAUDE D. MONTGOMERY, ESQ.
                                 Salans, FMC, SNR, Dentons,
14                               Europe, LLP
                                 620 Fifth Avenue
15                               New York, NY 10020
                                 212-632-8390
16
     For Michael Beydoun:        RAYMOND GUZALL, III, ESQ.
17                               (P60980)
                                 Raymond Guzall, III, P.C.
18                               31555 W. Fourteen Mile Rd.
                                 Suite 320
19                               Farmington Hills, MI 48334
                                 248-702-6122
20
     For International Union, UAW:  BABETTE A. CECCOTTI, ESQ.
21                               PETER D. DECHIARA, ESQ.
                                 Cohen, Weiss, and Simon, LLP
22                               330 WEST 42nd Street
                                 New York, NY 10036-6976
23                               212-356-0227

24

25
```

```
 1   For Michigan Council 25 of      SHARON L. LEVINE, ESQ.
     the American Federation of      Lowenstein, Sandler, LLP
 2   State, County and Municipal     65 Livingston Avenue
     Employees (AFSCME), AFL-CIO     Roseland, NJ 07068
 3   and Sub-Chapter 98, City of     973-597-2500
     Detroit Retirees:
 4
     For Detroit Retirement          ROBERT D. GORDON, ESQ. (P48627)
 5   Systems - General Retirement    Clark, Hill, PLC
     System of Detroit, Police and   151 S. Old Woodward Avenue
 6   Fire Retirement System of       Suite 200
     the City of Detroit:            Birmingham, MI 48009
 7                                    248-988-5882

 8   For the Flowers Plaintiffs -    WILLIAM A. WERTHEIMER, ESQ.
     Robert Flowers, Michael Wells,  (P26275)
 9   Janet Whitson, Mary Washington  30515 Timberbrook Lane
     and Bruce Goldman:              Bingham Farms, MI 48025
10                                    248-644-9200

11   For the Retired Detroit         LYNN M. BRIMER, ESQ. (P43291)
     Police Members Association:     Strobl & Sharp, P.C.
12                                    300 East Long Lake Road
                                      Suite 200
13                                    Bloomfield Hills, MI 48304-2376
                                      248-540-2300
14
     For the State of Michigan,      MARGARET A. NELSON, ESQ.
15   Governor Rick Snyder,           (P30342)
     Treasurer Andrew Dillon,        Assistant Attorney General
16   the Governor's Transformation   Michigan Department of Attorney
     Manager Richard L. Baird,       General
17   Department of Treasury Legal    P.O. Box 30758
     Counsel Frederick Headen and    Lansing, MI 48909
18   Auditor General Thomas          517-373-1124
     McTavish:
19
     For Retiree Association         RYAN C. PLECHA, ESQ. (P71957)
20   Parties:                        Lippitt, O'Keefe, PLLC
                                      370 East Maple Road
21                                    3rd Floor
                                      Birmingham, MI 48009
22                                    248-646-8292

23

24

25
```

```
1                                    LISA HILL FENNING, ESQ.
                                     Arnold & Porter, LLP
2                                    44th Floor
                                     777 South Figueroa Street
3                                    Los Angeles, CA 90017-5844
                                     213-243-4019
4
   Court Recorder:                   Letrice Calloway
5
   Transcriber:                      Deborah L. Kremlick
6

7

8

9  Proceedings recorded by electronic sound recording, transcript
   produced by transcription service.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      (Court in Session)

2            THE CLERK:  All rise.  Court is in session.  Please

3   be seated.  Case number 13-53846, City of Detroit, Michigan.

4            THE COURT:  Good morning everybody.

5            THE ATTORNEYS:  Good morning.

6            THE COURT:  We have an application for admission to

7   the Bar of the Court.  Ms. Fenning, would you step forward,

8   please?

9            MS. FENNING:  Good morning, Your Honor.

10            THE COURT:  Good morning.  One second.  Are you

11   prepared to take the oath of admission to the Bar of the

12   Court?

13            MS. FENNING:  Yes, sir.

14            THE COURT:  Please raise your right hand.

15        Do you affirm that you will conduct yourself as an

16   attorney and counselor of this Court with integrity and

17   respect for the law, that you have read and -- and will abide

18   by the civility principles approved by the Court, and that you

19   will support and defend the Constitution and laws of the

20   United States?

21            MS. FENNING:  I do.

22            THE COURT:  Welcome.

23            MS. FENNING:  Thank you.

24            THE COURT:  We'll take care of your paperwork for

25   you.

1    Okay.  We have several things on our docket today.  I'd

2  like to take them -- one second -- in the following order.

3  First, the fee examiner order.  Second, the motion for relief

4  from stay.  Third, the comments regarding the eligibility

5  order.  And fourth, the motion to quash.  Is that okay with

6  everybody?

7             THE ATTORNEYS:  Yes.

8             THE COURT:  Okay.  So let's start with the fee

9  examiner order.  Mr. Fishman is here.

10            MR. FISHMAN:  Good morning, Your Honor.  Robert

11  Fishman.  I am the appointed fee examiner in this case.  I

12  would like to briefly explain to you how the piece of paper

13  that you have came to be.

14    As Your Honor will recall, you entered an order on August

15  19th appointing me as the fee examiner.  As directed, I met

16  with counsel for the city on August 20th.  We had a conceptual

17  discussion about many issues and after that meeting, I created

18  the first draft of a proposed order.  That order went back and

19  forth between me and counsel for the city many times with lots

20  of discussions about various points in it.

21    We finally arrived at an order that was acceptable to us

22  and I filed on August 30th, I believe, the proposed order that

23  the Court has.  And that was an order that the city was

24  prepared to consent to.

25    Subsequently, or at -- I think more like simultaneously,

1 the retirees' committee was being appointed and it eventually

2 retained counsel. And that counsel reached out to me, I

3 think, on the very day the order -- the proposed order was

4 filed.

5    I had a number of conversations with them. They raised

6 some issues, some of which I thought were entirely

7 appropriate. I know that there had been a number of

8 conversations that have taken place between counsel for the

9 committee and the city that I was not a party to.

10    And what I have to hand up, Your Honor, is a clean and

11 red line version of the order that has now currently been

12 agreed to with two open points that I will discuss after I

13 hand the order up to you.

14         THE COURT: Okay.

15         MR. FISHMAN: All right. The two open points, Your

16 Honor, are both in Paragraph 24. I don't know which --

17 whether you're looking at the clean or the red line version.

18         THE COURT: I have the -- the clean one open here.

19         MR. FISHMAN: Okay. The clean one, the two issues

20 are highlighted in bold text. And they are as follows, Your

21 Honor.

22    The city wishes to have the right to seek a judicial

23 determination of the reasonableness of the fees of the

24 committee professionals to the extent they disagree with

25 whatever conclusion that I might reach. And apparently the

1  committee is not in favor of that provision.

2      I'm actually quite neutral on this point.  Whether they

3  have access to the Court, or -- or don't, doesn't really

4  affect what I'll do or how I'll do it.  And therefore I

5  identified the issue, but I really don't have a position on

6  it.

7      The second open question, Your Honor, is later on in

8  Paragraph 24 on the next page.  And that involves what I'll

9  call a reciprocal right.

10     In the order that I negotiated with the city, it was

11 agreed that since the city was paying the bill, it ought to

12 have the right to look at the invoices and it ought to have

13 the right to express an opinion which I could then either

14 agree with, disagree with, modify, ignore, accept, whatever I

15 wanted to do and we built into the process an opportunity for

16 the city to send me whatever comments it wanted to and then I

17 would do with them as I saw fit.

18     The committee has asked for the same right to comment on

19 the invoices of the -- excuse me, the committee has asked for

20 the same right to comment on the invoices of the city's

21 professionals.  The city is unwilling to agree to that.  I'm a

22 little less neutral on this one, only -- only to this extent.

23     I -- I gave the -- I conceded to the city the right to

24 comment on the invoices because I perceived it to be their

25 money and they needed some opportunity to determine if they

1  had an issue with the way the city's money was being spent.

2  That seemed appropriate and while I'm not looking for their

3  help in evaluating reasonableness, I'm not unwilling to

4  receive their views if they want to take the time to send

5  them.

6       I don't so much see the committee as having the same role

7  with respect to the city's professionals.  I don't want to say

8  that I am opposed to it, that would be an overstatement.  But

9  I -- I think it less necessary than the converse which the

10 order does provide and those are the two open issues.  And at

11 this point, Your Honor, I think it's a discussion between the

12 city and the committee and I would yield the floor to them to

13 say whatever they want to say about this.

14            THE COURT:  Thank you, sir.

15            MR. WILKINS:  Good morning, Judge Rhodes.  Matthew

16 Wilkins.  We are co-counsel for the Official Committee of

17 Retirees.  With me is Mr. Claude Montgomery who's lead counsel

18 from the Dentons firm.

19      Your Honor, we do support the fee examiner process and

20 also commend Your Honor's choice of Mr. Fishman.  It was an

21 excellent choice.

22      Mr. Fishman did correctly lay out the -- the chain of

23 events.  We did have some very productive discussions with

24 him.  We had some very productive discussions with the city

25 counsel.  Those took place in a fairly compressed time frame

1  and he did characterize the two open issues and the

2  committee's view in short is this.

3      The committee would be fine with leaving all the

4  determinations to the fee examiner of -- of the fees of all

5  professionals.  Conversely, in the committee's view if the

6  city is going to have a chance to determine or make comments

7  on the reasonableness of our professional fees, we would like

8  that same ability with respect to their fees.

9      And that is it -- that is it in a nutshell.  So we -- we

10  don't really care which way it goes, either all examiner or

11  you know, both of us having comments, but that's how we think

12  it ought to be done to -- to keep it balanced, Your Honor.

13          THE COURT:  Thank you.

14          MR. ELLMAN:  Good morning, Your Honor.  Jeffrey

15  Ellman from Jones, Day on behalf of the city.  Thank you for

16  hearing us today.

17      As the Court is aware and recalls, the city did consent

18  to the fee examiner process and we do appreciate the Court's

19  effort to create a process that has developed some

20  accountability and transparency.  And we also very much

21  appreciate Mr. Fishman's willingness to engage us in a

22  dialogue, although there have been a number of back and forth

23  exchanges of drafts.  I would say the process was not a

24  difficult one.  And although we didn't agree with everything

25  that he wanted in the order, we did agree.

1    He -- he accommodated us on things and we agreed to

2    accommodate him.  And as the Court I'm sure is aware, we filed

3    a week ago our notice of our consent which I think is

4    important because there are a number of things in the order I

5    think the city needs to consent to to make this really work

6    under the statute.

7    With respect to the committee, we made really a lot of

8    progress in resolving the committee's issues as well as

9    counsel said in a short time frame.  We've engaged in

10   discussions.  You have the black line.  Of course I'd be happy

11   to go through anything in that black line, it's probably

12   difficult for you to -- to read it and listen to us talking at

13   the same time, so I know it's a challenge.

14   We are very close to agreement.  I think the two issues

15   have been framed.  I'd like to give a little more information

16   about those.

17   When the discussions started the real question was, as

18   you might imagine, how is the committee fee process going to

19   work because there wasn't -- there wasn't a lot of stuff in

20   the order about that of course.  And the city have committed

21   to pay the reasonable fees.

22   And the starting point of the discussion was the city

23   would like to review the bills.  And -- and just the way the

24   city reviews its own professional bills and there's an

25   internal process that is not insignificant in addition to the

1  fee examiner process.

2      The committee, maybe not surprisingly, said we don't

3  really want to show you our entire bill.  It has sensitive

4  information in it.  It has strategic information.

5      So we said okay, we will concede that the fee examiner

6  process should determine reasonableness.  We -- we should see

7  the redacted bill.  Of course it's not to be the full level of

8  information.  We'd be happy to give -- to be able to see it,

9  to be able to get at least some thoughts to the fee examiner

10  to consider as -- as Mr. Fishman said, for whatever the work,

11  he could think they're worth a lot or not very much.

12      We have no involvement in the discussion between the fee

13  examiner and the professional.  No involvement in the

14  preparation of the report.  Whatever he says is reasonable

15  we're going to pay.  And in fact the -- the order with our

16  agreement, which I think is important again, it very clearly

17  puts a stake in the ground that says we will pay what is found

18  to be reasonable.

19      Given that we -- we don't direct the -- the committee's

20  professionals, we don't have a relationship with them, we

21  don't get to see the unredacted bill, we have at least four

22  professionals already they have retained we're paying for with

23  public funds.  We believe it is appropriate to give a summary

24  course to Your Honor to help us look at this if we thought

25  they were -- the -- the conclusion of the fee examiner might

1   have something in it that we -- we didn't like.

2       We don't aspire to do that.  We're not looking to have

3   fee hearings all the time.  We're hoping we'll never have one.

4   But it seemed to us fair under those facts that we should have

5   the right to do that and we proposed -- we proposed that.  The

6   committee obviously didn't agree.

7       On the second -- on the second point, as far as their

8   review of our fees, our fees meaning the city's professional

9   fees, we felt pretty strongly that's not really the role of

10  the committee.

11      The only reason that the city wants to review the fees,

12  or have any role in the committee's fees is because they have

13  to pay for them out of -- out of the city's money.  And we

14  think we have a process that we've proposed that is fair and

15  limited in our review.  We only see the redacted bills, et

16  cetera.

17      And from the committee's perspective, they don't need the

18  bill to do their job which is to protect the retirees.  The

19  bills under this process will be filed publicly redacted

20  versions.

21      Obviously it's very important for the city to protect

22  confidentiality and privilege so that the public filing won't

23  unredacted, it won't be the full bill necessarily, but those

24  bills will be public.  They're not going to be secret.  And

25  they're also going to be reviewed by the city and the fee

1  examiner.  And that is his role to do this.  We're paying the

2  fee examiner to do that review.

3      So in our -- in our view the -- the fee review is not the

4  role of the committee.  They don't need the bills to do their

5  job.  So we -- we felt fairly strongly that that was not

6  something that was appropriate.  It wasn't really reciprocal

7  because the parties are in very different positions.

8      This Court is not approving our fees.  There isn't a fee

9  review process in that sense.  It's really simply a

10 determination of reasonableness which we -- we trust that the

11 fee examiner will do -- will do well.

12     And with that, I think the last thing would be any

13 comments or questions the Court has.  Obviously you have the

14 black line which has a number of other things in it we haven't

15 talked about, but they have -- they have been agreed to by the

16 parties.

17         THE COURT:  All right.  Stay where you are.  And Mr.

18 Fishman, would you approach the lectern as well?

19     First, I'm going to take these two issues under

20 advisement.  So I'm going to need one or the other of you to

21 submit really both the -- the black line and the clean

22 versions to the Court in Word format through the order

23 processing program of the Court.

24     I have two issues of my own that I'd like to raise with

25 you, one of which is -- is minor, and one of which will, I

1  think, require your consideration.

2      The first is that the judiciary has this newfound

3  preference that time periods in orders be in multiples of

4  seven days.  So can I ask you to adjust your ten and 15 day

5  periods and your 45 day periods accordingly.  Any objection to

6  that?

7          MR. FISHMAN:  I do not have an objection to that.

8          THE COURT:  And it doesn't' matter to me whether

9  your ten goes to seven, or 14.  You'll work all of that out.

10          MR. ELLMAN:  And that's fine, Your Honor.

11          THE COURT:  Second, and more significantly, if

12  you'll turn to Page 8 of the clean version, excuse me,

13  Paragraph 28, the last sentence.

14          MR. ELLMAN:  Paragraph 28, Your Honor?

15          THE COURT:  Paragraph 28, yes.

16          MR. ELLMAN:  Yes.

17          THE COURT:  It strikes me that the -- the deadline

18  of the 10th calendar day is short, too short.  I wonder if you

19  would consent to 28 days in that paragraph.

20          MR. FISHMAN:  Your Honor, I -- that is a paragraph

21  that I wrote not surprisingly.  It really comes almost

22  verbatim out of the American Airlines order.  I -- I don't

23  know if they spent a lot of time coming up with ten days, but

24  I spent no time coming up with it and therefore 28 days is as

25  arbitrarily acceptable to me as ten days was.

1          THE COURT:  Thank you.  All right.  I will -- I will

2  look for your Word versions of these two documents and enter

3  an order shortly.

4          MR. FISHMAN:  Thank you very much.

5          MR. ELLMAN:  Thank you, Your Honor.

6          THE COURT:  Thank you all for your work in preparing

7  this order.  I know all the work you put into it.

8          MR. FISHMAN:  Thank you.

9          THE COURT:  Okay.  Let's turn our attention to the

10  motion for relief from the stay.  Anyone here on that matter?

11          MR. ELLMAN:  Your Honor, Jeffrey Ellman from Jones,

12  Day on behalf of the debtor.  I'm -- I'm here on behalf of the

13  city.  We did oppose the motion.  It's obviously not our

14  motion -- it's not our motion to present.

15          THE COURT:  Are there -- are there attorneys or

16  others who need to be permitted to enter the courtroom?  All

17  right, please allow that.

18      Okay.  We'd like to proceed with the motion for relief

19  from the stay filed on behalf of creditor Michael Beydoun.  Is

20  anyone here on that matter?  Apparently not.  Is there

21  anything you'd like to say on behalf of the city on this

22  matter, sir?

23          MR. ELLMAN:  Well, again Jeffrey Ellman for the

24  record from Jones, Day on behalf of the city.  I don't think

25  so, Your Honor, unless you have questions since there's been

1 | no one to present on behalf of the movant.

2 | We did file an opposition which I think expresses our --
3 | our point of view pretty well.  I'll be happy to answer any
4 | questions that -- that you might have.

5 | THE COURT:  The Court will take the matter under
6 | advisement and issue an appropriate order.

7 | MR. ELLMAN:  Thank you, Your Honor.

8 | MR. GUZALL:  Your Honor, I'm sorry.  I'm here on
9 | behalf on Beydoun.  I apologize.  I was in 83rd District Court.
10 | I tried to get here, the road was closed.  I thought I'd be
11 | here on time.  I apologize, I just walked in.

12 | THE COURT:  Okay, go ahead.

13 | MR. GUZALL:  I apologize again, Your Honor.

14 | THE COURT:  Your appearance, please, sir.

15 | MR. GUZALL:  Raymond Guzall, Your Honor, on behalf
16 | of Michael Beydoun.

17 | THE COURT:  I'm sorry.  I have to ask you to repeat
18 | that into the microphone this time.

19 | MR. GUZALL:  I'm sorry, Raymond Guzall, Your Honor,
20 | on behalf of Michael Beydoun.

21 | THE COURT:  Go ahead, sir.

22 | MR. GUZALL:  Thank you, Your Honor.  Your Honor,
23 | briefly this is a factual inquiry as required to determine if
24 | the City of Detroit proceeded in bad faith or with improper
25 | actions when filing for bankruptcy as it relates to Mr.

 1  Beydoun.

 2      Now there are a number of questions that I'd ask this

 3  Court to consider when making that determination if plaintiff

 4  should be granted the relief he is requesting, including not

 5  -- but not limited to, does this Court consider the City of

 6  Detroit turning down the State of Michigan's offer to lease

 7  Belle Isle prior to filing good faith or an improper act in

 8  bad faith.

 9      Number two, does this Court consider that Detroit filed

10  for bankruptcy within months of hiring an emergency manager

11  bad faith when coupled with the fact that all of the

12  municipalities were forced to have an emergency manager went

13  for years without filing for bankruptcy, and still had not

14  filed for bankruptcy.

15      Number three, does this Court consider the fact that the

16  City of Detroit did not assess its assets prior to filing for

17  bankruptcy such as the Detroit Institutes of Arts, the

18  Institute of Arts bad faith.

19      Number four, does this Court consider the opinion and

20  finding of the Michigan Court of Appeals and the facts in the

21  Michael Beydoun case illustrating that Detroit's appeals were

22  without merit indicate that the City of Detroit's filing for

23  appeal was merely an attempt to improperly delay paying the

24  judgment owed for as long as they could and then file for

25  bankruptcy.

1        Number five, does this Court consider the timing of

2   Detroit's filing for bankruptcy to be indicative of bad faith

3   as to Mr. Beydoun.  Given the admissions of the Governor of

4   the State of Michigan, Rick Snyder, and the emergency manager,

5   Kevin Orr, that the City of Detroit was in financial ruin for

6   decades.  And I've cited to that in my brief, Your Honor,

7   those clips, those news clippings and the audio clippings as

8   well, Your Honor.

9        Number six, Governor Snyder stated that the City of

10  Detroit could have carried on without filing for bankruptcy.

11  That's at Page 6 of our brief with the audio statement of the

12  Governor on the news.  Does this Court consider that statement

13  to be proof of bad faith in filing for bankruptcy by Detroit's

14  emergency manager who was appointed by the Governor.

15       Point seven, does this Court find Detroit Mayor Bing's

16  statements in February and March of this year that Detroit did

17  not need an emergency manager to be bad faith on the part of

18  the City of Detroit.

19       Number eight, does this Court find bad faith given that

20  Mayor Bing met with Kevin Orr prior to an emergency manager

21  being appointed and purposely hid that fact that he negotiated

22  to save his salary along with that of his staff.  We've

23  pointed to that in our brief as well, Your Honor.

24       The next point, does the Court consider Detroit's Mayor

25  Bing hiring a contractor who owes back property taxes in

1  Detroit good faith.  Your Honor, this was a news story that

2  hit on Channel 2 news, Charlie Leduff, posted August 26th, 2013

3  at MyFoxDetroit.com under Leduff, Bing's Demolition Contractor

4  May Be Doing Business Illegally.  I'd point to that as proof,

5  Your Honor, as well.

6     The next point, Your Honor, does this Court consider the

7  City of Detroit hiring 90 new employees after they filed for

8  bankruptcy to be in bad faith.  This story hit the *Detroit*

9  *News*, Fox 2 News August 26th, 2013, Charlie Leduff's report.

10    Again, Your Honor, the actions by the City of Detroit fly

11  in the face of their claims that they cannot pay their bills

12  on time.  Who could pay their bills on time when they are

13  hiring more people after they file for bankruptcy and then

14  refuse to lease property prior to filing for bankruptcy in

15  order to earn money to pay for those bills.

16    Does the fact that Mr. Beydoun filed a motion for

17  immediate consideration of Detroit's appeal to the Michigan

18  Supreme Court on July 8th, 2013 and requested that a bond be

19  posted and/or an immediate decision be made in his case,

20  coupled with the fact that Detroit filed for bankruptcy just

21  ten days later, July 18th, 2013.  Does that give this Court

22  reasoning under the totality of the circumstances by law to

23  lift the automatic stay as to Mr. Beydoun.

24    Now, Your Honor, I've reviewed the response filed by the

25  City of Detroit.  They fail to address these facts as I've set

1  forth before you today in their totality would show bad faith

2  as to the filing of the bankruptcy by Detroit as it applies to

3  Mr. Beydoun.

4      The City of Detroit repeats in their brief multiple case

5  law that's been cited by Mr. Beydoun and argues that Mr.

6  Beydoun does not meet half of the guideline factors said to be

7  meaningful in <u>Laguna</u>.  Yet they cite to no case law requiring

8  half or any number of points in <u>Laguna</u> that need to be met.

9  Because there is no law indicating such, Your Honor.  It's

10 simply a totality -- a totality of circumstances on a case by

11 case basis.

12     In addition, the City of Detroit argues at Page 10 of its

13 brief that the <u>Beydoun v City of Detroit</u> appeal would distract

14 the city from its efforts to restructure and further divert

15 its scant resources.  What is hiring 90 new employees doing?

16 It's doing the same thing.  They're doing this after the fact,

17 Your Honor.  It makes no sense.

18     Why is Mayor Bing not collecting upon outstanding

19 property taxes?  Clearly that's a simple issue.  Clearly shows

20 bad faith on the part of Detroit.  They're not collecting on

21 the property taxes yet he hires this contractor to do

22 demolition work for him and the city paid him 1.3 million

23 dollars as indicated in the news article by Charlie Leduff on

24 video on the date that I mentioned.

25     Why is Mayor Bing and his staff being paid if the

1 emergency manager is running everything in the City of Detroit

2 at $275,000 a year. These facts show that Detroit purposely

3 pushed itself into bankruptcy. The leasing to Belle Isle was

4 a simple thing, Your Honor, it just wasn't done.

5     The facts show no payment on the part of Detroit to avoid

6 filing for bankruptcy. A Bankruptcy Court exercises its

7 discretion and in light of the specific facts for each case.

8 The Laguna factors cannot be applied mechanically.

9     Briefly, Your Honor, as to the bond issue raised by the

10 City of Detroit in their brief. There is nothing in the

11 statute or the Michigan Court Rule 6. -- 2.614(e) which

12 prevents a Court from ordering that a bond be posted for any

13 other reason, not just simply as a prerequisite for an appeal.

14     However, Your Honor, Mr. Beydoun requested immediate

15 action by the Supreme Court so he could begin collection upon

16 his judgment. And if the Court reviews the Court of Appeals

17 decision, you will see they ordered costs against the City of

18 Detroit and basically stated that Detroit had no case

19 whatsoever. There was no merit to that case and it's clear

20 that their filing in the Michigan Supreme Court was simply to

21 delay the proceedings once again, Your Honor.

22     And with that, I think I've gone through all of my

23 points. I really appreciate you taking me at this late time,

24 Your Honor. And I again apologize for being late.

25          THE COURT: Well, all right. Let's -- let's assume

1  without deciding, that what you say about the city's filing in

2  bad faith is true, why would that entitle your client to

3  pursue collection of his claim while all of the other people

4  who are owed money by the city are stayed?

5          MR. GUZALL:  Because the facts in this case

6  specifically as to Mr. Beydoun show bad faith.  The timing of

7  the city's filing with the Supreme Court and the timing of the

8  filing for bankruptcy ten days after Mr. Beydoun asked the

9  Supreme Court for immediate relief and for a bond for the 2.2

10  million dollars, when you have that type of timing coupled

11  with the facts that I've set forth, that's why we're specific

12  to Mr. Beydoun in this case.

13          THE COURT:  Let's assume that this filing was in

14  response to the pressure of your client's claim.

15          MR. GUZALL:  Sure.

16          THE COURT:  Again without deciding.

17          MR. GUZALL:  Sure.

18          THE COURT:  The fact is of course that virtually

19  every bankruptcy case that's ever filed is in response to

20  creditor pressure.  And if -- if it were the fact that

21  creditor pressure resulted in the bankruptcy meant the

22  bankruptcy was in bad faith, we wouldn't have any

23  bankruptcies, would we?

24          MR. GUZALL:  Well, if we put that in perspective,

25  Your Honor, and that's why I've given you an outline of the

1  fact that the Mayor -- I'm sorry, the Governor stated, along

2  with the emergency manager, the City of Detroit has been in

3  ruins for decades.  Now there have been no action taken --

4         THE COURT:  No, I -- I asked you -- I asked you

5  conceding that, why should that fact, or that set of facts,

6  give your client a preference over all the other creditors --

7         MR. GUZALL:  Because what I'm trying to --

8         THE COURT:  And your answer was well, they filed

9  because my client had a claim against them.

10        MR. GUZALL:  What I'm trying to impart to Your

11 Honor, is it's not creditor pressure specifically as you're

12 stating with all of these other creditors.  I'm narrowing down

13 to Michael Beydoun and the pressure that he put to obtain that

14 bond and to obtain the $2,000,000 when the city wouldn't even

15 lease Belle Isle to make some money to prevent filing for

16 bankruptcy.

17     Now the Governor stated, we --

18        THE COURT:  I get debtors who file -- well, I used

19 to.  Get creditors (sic) who file bankruptcy because their

20 home is about to be foreclosed upon, or because their car has

21 been repossessed, or because there's a garnishment.  Those

22 aren't all in bad faith, are they?

23        MR. GUZALL:  You cannot liquidate the assets of a

24 city.  It's -- that's why this is a different unique

25 situation.  In those cases, Your Honor, you can go in and

1   liquidate.

2       Here Mr. Beydoun can't ask the Court, please, Your Honor,

3   sell this building so I can get my money.  It doesn't work

4   that way with a city.  That's the uniqueness of this type of

5   case.

6       And the Governor can't come in and say well, we could

7   have kicked the can down the road another few years but you

8   know what, we're going to file now.  Well, why are they filing

9   now when he says they could have kicked the can down the road

10  for years and says Detroit was in financial ruins for decades.

11  Why now, Your Honor?

12      Now in these specific facts, if you take everything I've

13  said as accurate --

14              THE COURT:  Just a second, and do me a favor.

15              MR. GUZALL:  Sure.

16              THE COURT:  See that microphone right there in front

17  of you?

18              MR. GUZALL:  Yes.

19              THE COURT:  Move it about six inches closer to me.

20  Maybe a little bit more.  A little bit more this way.

21              MR. GUZALL:  Toward you?

22              THE COURT:  Yeah.

23              MR. GUZALL:  Okay.  All right, better?

24              THE COURT:  Go ahead.

25              MR. GUZALL:  I'm sorry.  I'm sorry, Your Honor, on

1  these specific facts as to Michael Beydoun, that's what we're

2  asking the Court to focus in on.  Mr. Beydoun knows all the

3  other creditors out there.

4      And it's a travesty as a side note that people who have

5  worked all their life in the City of Detroit are now at odds

6  with being able to obtain their pensions.  We understand that

7  and we get that.

8      We're asking the Court to focus in on just the particular

9  facts as they lay out.  And if the Court follows those facts

10 as to this case, the Court can easily make the determination

11 that Mr. Beydoun is entitled to the relief requested and move

12 forward on his case and with collection as he should have been

13 allowed to do.  Given all of these incidents of what the

14 city's done lining up with his motion, the Supreme Court when

15 they did it, how they did it, what they said, how they've

16 acted.  All of these line up in a totality of circumstances as

17 to Mr. Beydoun.

18     I don't know the circumstances what everybody else who

19 has a judgment in the City of Detroit.  All I know is these

20 facts on this case allow this Court to make the determination

21 and the relief requested by my client.

22         THE COURT:  Thank you, sir.

23         MR. GUZALL:  Thank you, Your Honor.

24         MR. ELLMAN:  For the record, Your Honor, Jeffrey

25 Ellman from -- from Jones, Day on behalf of the city.  I'll be

1  very brief unless the Court has questions or comments.

2      Obviously we have a number of lift stay matters as a

3  fundamental importance to the city to -- to preserve the

4  benefit supported by the automatic stay and minimize the

5  distraction, disruption, and costs of these various matters

6  while we're -- we're pursuing substantial work for the

7  restructuring and trying to pursue a fair adjudication

8  adjustment of debts.

9      I think that what happened here is that there was the

10 happenstance of the filing in the midst of what was a

11 meaningful part of this litigation with the movant.  I don't

12 think this is anything like what you see in the Laguna case

13 which is the case cited about bad faith.  Bad faith being the

14 only allegation of cause to lift the stay for that kind of a

15 -- a basic lift of stay under the factors cited there has to

16 be something much different than -- than what we have in front

17 of us today.

18      That was a case about one creditor, one asset.  This is a

19 obviously a much different situation we've outlined in our

20 papers.  I don't want to belabor it.  I think the Court's made

21 some good points already.  I'll be happy to answer any

22 questions.  We obviously would request that the motion be

23 denied.

24          THE COURT:  Thank you.  The Court will take this

25 under advisement and issue a written opinion and order.

```
1              MR. ELLMAN:  Thank you, Your Honor.

2              MR. GUZALL:  Thank you, Your Honor.

3              THE COURT:  Okay.  Let's turn our attention now to

4   the comments regarding -- or comments on the order regarding

5   eligibility objections.  Again, I want to -- I want to begin

6   by thanking all of you who took the time to share with the

7   Court your comments regarding its order.

8        It may surprise you to hear as it surprised me to come to

9   the conclusion that I actually agreed with a lot of what you

10  said.  There are really just two or three points that we have

11  to have further discussions on.

12       So what I'd like to do is go through those items that you

13  have raised that are acceptable to me, at least in principle.

14  And then we'll talk about the ones that need further

15  discussion.

16       So for example, there were several comments to the effect

17  that the proposed time allowed for your oral arguments was

18  insufficient.  And I think there was even a suggestion by

19  someone for an additional 90 minutes for the opening arguments

20  and 30 minute -- an additional 30 minutes for the rebuttal.

21  That's fine with me.  So unless anyone wants to state anything

22  further on that issue, we can move along.

23             MR. ELLMAN:  Your Honor, that's to both sides?

24             THE COURT:  Yes.

25             MR. ELLMAN:  Nothing further
```

1          THE COURT: Okay, good. The UAW comment was

2   concerned that the Court neglected to include its objection on

3   the grounds of bad faith. The Court will of course make that

4   correction as well.

5      Two or three of the comments suggested that the Court

6   include a specific provision in the order to the effect that

7   an argument, or an objection I should say, that's raised in

8   the written objection to eligibility is not waived if it is

9   not verbally argued because of the way you've decided to split

10  up the arguments. And again I think that's a perfectly

11  appropriate provision to include. One of the comments even

12  included proposed language which looked fine to me, so I will

13  make that addition to the order as well.

14     Two or three of the objections suggested that time was

15  needed by the objecting parties after the city's response to

16  coordinate the rebuttal argument and even potentially to have

17  the rebuttal argument on a different day, perhaps even the

18  next day. Again, I have no objection to that if it's -- if

19  it's the consensus of the objecting parties that that is

20  something you'd like to do and need to do, that's fine with

21  me. Is it?

22         MS. CECCOTTI: Your Honor, I think with respect to

23  coordination, that would be fine whether we'd take the next

24  day.

25         THE COURT: You should state your appearance on the

1  record, so --

2         MS. CECCOTTI:  I should go to the microphone.

3         THE COURT:  Yes, please.

4         MS. CECCOTTI:  Your Honor, Babette Ceccotti, Cohen,

5  Weiss, and Simon for the UAW.  The opportunity to coordinate

6  is -- is fine.  We may want to decide among ourselves whether

7  we think the next day is -- is needed or not.  But --

8         THE COURT:  Okay.

9         MS. CECCOTTI:  And that's --

10        THE COURT:  Well, let me ask you to do that.  And

11 nominate one of you to speak for your group and -- and let me

12 know.  Because I would like this, if it's going to be the next

13 day, to include that in the order itself.  Okay.  So perhaps

14 over a break or at some point you can discuss that among

15 yourselves.

16      The retirement systems comment number 770 identified a

17 mistake that we made in Paragraph 12 or maybe even a couple of

18 mistakes.  And we will of course correct that as well.

19      AFSCME's comment was concerned about the possibility that

20 the -- the order -- or the language in the order might in some

21 way limit the scope of its objections and therefore proposed

22 that its sub objections or sub arguments be included actually

23 in the form of the order.

24      So let me ask in that regard, Ms. Levine, if it would be

25 sufficient for the Court simply to state in the order that

1  we're talking about here, that all of the specific objections

2  and arguments in support of those objections are incorporated

3  by reference and that there is no intent to limit any of the

4  arguments by the sort of shorthand summary language that I

5  used.  Would that be acceptable to you?

6        MS. LEVINE:  Yes, Your Honor.  Sharon Levine,

7  Lowenstein, Sandler for AFSCME.

8      To the extent you were just re-writing the table of

9  contents, that's fine.  But to the extent we're concerned the

10 arguments were actually being limited, you've alleviated that

11 concern.

12       THE COURT:  Okay.

13       MS. LEVINE:  Thank you.

14       THE COURT:  Thank you.  While you're -- wait.  The

15 UAW argument or a comment requested that its objection be

16 added to the list of those parties who had asserted what I'll

17 call Webster objections.  And by that I mean the argument that

18 the Webster decision collaterally estops the city from

19 re-litigating the issue.

20     I actually did not see that argument made in the UAW's

21 objection.  What I saw was a citation to Webster as precedent

22 -- precedent for the legal argument being made, not in -- not

23 as the basis for a collateral estoppel argument.

24       MS. CECCOTTI:  Your Honor, I think that the -- I

25 think that Your Honor's comments on that particular point go

1   to, I guess, a broader question.  Not unlike the one that you

2   just discussed with -- with -- with Ms. Levine regarding the

3   extent to which the order in our view carves up the objection

4   in a way that leaves the parties, or at least for the UAW,

5   uncertain as to actually where its arguments fit.

6        So I suppose what I would say in general, because I

7   gather we're going to be discussing some additional items as

8   well, and I'll reserve my comments for then, that a -- a

9   solution if you will similar to the one that you just

10  discussed with -- with Ms. Levine would be acceptable to us

11  and perhaps we don't need to decide right now the contours of

12  any --

13            THE COURT:  Okay.

14            MS. CECCOTTI:  -- any objecting party's objection.

15            THE COURT:  That's a good response.  Thank you.

16       So as -- as I cull through your comments, the two

17  comments that I thought we needed to have a further and more

18  substantive discussion about were first, the statements in

19  several of the comments that discovery is needed on the issues

20  that the Court A, had identified as legal issues, and B, later

21  in the order prohibited discovery on.

22       And the second issue I think we need to further discuss

23  is the comment in one or more of the papers that an extension

24  of the dates that the Court has said should be considered.  So

25  let's discuss the first one first.  Would anyone like to

1  address why discovery is needed on the issues that the Court

2  has described as legal issues and/or why they are not just

3  legal issues, they are also factual issues.  Ms. Levine.

4         MS. LEVINE:  Thank you, Your Honor.  We would.  We

5  also -- and in that context there's also a third issue that we

6  would like to raise which maybe perhaps we just didn't state

7  clearly.  In addition to the fact that we're looking for more

8  time which is the speed issue which we'll get to.  And we'll

9  address the discovery issue.

10        Part of the reason for discovery is that you learn more

11  about your case during discovery which to the extent that we

12  did not include specifically, and that's just part of the

13  colloquy you were just having with other counsel as well.  A

14  specific legal argument, or a specific factual argument in the

15  response to the eligibility objection, we'd respectfully

16  submit that it should be appropriate to have it heard in

17  connection with the trial.

18        What we have here is, you know, the -- the city filed its

19  eligibility petition and the -- and its brief.  We filed

20  responses which is sort of like the answer or -- or a motion

21  to dismiss if you will.

22        But we haven't yet had the discovery.  So to say we're

23  bound by a trial brief or a summary judgment brief that was

24  drafted before discovery concludes without any ability to

25  augment and/or clarify the issues, we respectfully submit is

1  also prejudicial.

2      Turning to discovery --

3          THE COURT:  Well, let's -- let's deal with that

4  question right now since you've raised it.  My -- my view on

5  that is that there is a procedure for the amendment of

6  pleadings.  And that's the procedure that ought to be used

7  when you seek to assert objections beyond that which were

8  asserted initially.

9      So it might be for example your motion to amend your

10 objection to add the following objection.  And you would state

11 the grounds that the law sets forth for such an amendment.  Do

12 you have any objection to following that kind of procedure in

13 that circumstance?

14         MS. LEVINE:  May I consult with other counsel?

15         THE COURT:  Please.

16         MS. LEVINE:  Your Honor, and I'm sure I'll be

17 corrected if I misunderstood.  But I think the consensus is

18 and frankly we agree, that ordinarily the order is you have

19 discovery and then there's a period for dispositive motions.

20     Our concern is, you know, and we're running into it a

21 little bit which will be the next issue that we discuss.  But

22 we're going to get limited on other discovery as well if in

23 fact it's not expressly stated in the objection and there's no

24 right or expectation that we clean up the pleadings the way

25 you normally would expect at the end of any discovery period

1  in any litigation.

2            THE COURT:  Uh-huh.

3            MS. LEVINE:  Prior to trial and prior to opening

4  argument.  So rather than seriatim amendments and questions

5  with regard to whether or not there is discovery that relate

6  to those amendments --

7            THE COURT:  Okay.

8            MS. LEVINE:  -- it might make sense to go through

9  the witnesses that we've been working with the city to

10 schedule one at a time and then everybody cleans up their

11 pleadings and then we take it from the next step from there.

12           THE COURT:  So you would contemplate a date by which

13 amended objections would be filed prior to the hearing.

14           MS. LEVINE:  Yes, Your Honor.

15           THE COURT:  All right.  Well, let's hold on --

16           MS. LEVINE:  And I guess that goes back a little bit

17 into the timing because the question becomes prior to what

18 hearing.

19           THE COURT:  Right.

20           MS. LEVINE:  If we're bound by the oral argument and

21 only the --

22           THE COURT:  Right.

23           MS. LEVINE:  -- legal objections, we may --

24           THE COURT:  Right.  So let's -- let's hold on that

25 question until we have the discussion about what the schedule

1  will be.  Okay.

2          MS. LEVINE:  Now turning to discovery.  Your Honor,

3  there are certain arguments that we've made that we do agree

4  are strictly legal with regard to -- to constitutional issues.

5  However, there are other arguments that we've made that we

6  respectfully submit include factual inquiry.

7      And those are as applied constitutional arguments or good

8  faith.  And they -- and they blur.  And we're -- we

9  respectfully submit we need discovery on both.  And the

10  problem is if we just get discovery from the emergency manager

11  and the city, we don't get the factual basis, the who, what,

12  why, when, and how the Governor and the state made the

13  decisions it made that led up to this filing which were not

14  simply authorize and be done with.

15      So we'd respectfully submit that we do need fact

16  discovery with regard to those issues from the state.  And I'm

17  -- and I'm bleeding, I think, into the motion to quash.  With

18  Your Honor's permission, I guess we should go there or --

19  apparently not.

20          THE COURT:  I guess -- I guess not.

21          MS. LEVINE:  But the -- but dealing just with the

22  factual inquiry.  And -- and whether you call it good faith or

23  whether you call it appropriate authorization, the problem is

24  what happens at the government at the state level, at the

25  Governor's -- in the Governor's office with the Governor's

1  advisors is critical to having to pursue this motion.

2      THE COURT:  Well, let me -- let me -- let me reopen

3  the question that got vetoed here just a moment ago.  Which is

4  if the Court determines that the motion to quash should be

5  denied because it finds that the discovery that you seek from

6  the stay that its officers is relevant to the issue of bad

7  faith, does that solve this problem?

8      MS. LEVINE:  It solve -- Your Honor, it solves the

9  problem with regard to discovery.  We're still grappling with

10 how we characterize the -- I don't want to forego -- I'm going

11 back to whether Your Honor is just re-writing my table of

12 contents or whether I'm losing arguments at the time of the

13 hearing.

14     THE COURT:  Right.

15     MS. LEVINE:  So the answer is that --

16     THE COURT:  Well, I -- I don't want anyone to lose

17 any arguments.  So --

18     MS. LEVINE:  So the answer is if you deny --

19     THE COURT:  I want to be very sensitive to that

20 issue.

21     MS. LEVINE:  If you deny the motion to quash and the

22 facts come out that we present regardless of whether they fall

23 into the silo --

24     THE COURT:  Uh-huh.

25     MS. LEVINE:  -- of good faith or some other silo, or

1 we think they're in one silo and Your Honor concludes they're

2 in a different silo, that's fine so long as --

3            THE COURT:  But look, I -- I split these up only in

4 an effort to make the process as efficient as possible.  If

5 there's a specific issue that its advocate thinks goes in the

6 factual category rather than the legal category, this is not

7 of -- of great concern to me.

8     I think it -- we have to deal with it sooner or later.

9 So, you know, it's -- to me the issue isn't when to deal with

10 the issue.  The issue is, is it something you really need

11 discovery on or not.  Does that make sense to you?

12    So I guess the issue is why do you need discovery on the

13 issue for example of whether the filing was authorized.  It

14 clearly was authorized.

15            MS. LEVINE:  Your Honor, we respectfully submit that

16 we don't necessarily agree with that.  And if we're turning to

17 the motion to quash, that's the -- that's -- that's embedded

18 in that issue.  But if we're not, there -- there are a couple

19 of things that happened at the time of the authorization.  Or

20 the purported authorization.

21    Okay.  We're concerned about number one, the timing of

22 the authorization, not necessarily for the reasons that were

23 set forth in the arguments in connection with the stay motion

24 that Your Honor just heard, but it did appear to be motivated

25 rather than giving a fair amount of time to do the

1  pre-bankruptcy negotiations that we've seen in virtually every

2  other Chapter 9 case which extended for a longer period of

3  time than Detroit despite the fact that Detroit is the

4  largest.

5      Okay.  It seemed to have also been motivated perhaps by

6  forum shopping.  We're allowed to inquire into that analysis.

7  Two, they seem to --

8          THE COURT:  Okay.  But stop there.  Aren't both of

9  those issues already fully encompassed by other factual issues

10 that we've identified, including your assertion of bad faith

11 and your assertion that there were not the required

12 pre-petition good faith negotiations.

13         MS. LEVINE:  If -- if the Court's saying that we get

14 depositions at the state level based upon the theory of good

15 faith and we've also reserved our rights as we've previously

16 discussed with regard to reshaping the issues if and when it

17 becomes appropriate.

18         THE COURT:  Uh-huh.

19         MS. LEVINE:  I can be done.

20         THE COURT:  Well, I haven't quite gotten there yet.

21 But let's see what happens with the motion to quash and then

22 maybe we'll have to reopen this or not.  Okay?

23         MS. LEVINE:  Thank you.

24         THE COURT:  Ms. Ceccotti.

25         MS. CECCOTTI:  Yes.  Thank you, Your Honor.

1    I guess -- I guess I'd like to again emphasize, or

2  emphasize if I haven't already, that the -- and -- and we

3  certainly understand that the number of objections and the

4  scope of the objections presents certain case management

5  challenges.  I don't think any of us here is going to deny

6  that, it would be foolish of us to deny that some -- some sort

7  of case management process, you know, should be -- should be

8  attempted here.

9    But messing around with discovery is -- is -- is going to

10 in the -- in the end, create more problems than -- than it's

11 going to solve.  First of all, there is going to be -- there's

12 just going to be more disputes.  I can -- I can see it now.

13    I don't expect to be in those depositions other -- others

14 in my office will be.  We're going to have objection after

15 objection about scope.  It is going to take up the parties'

16 time.  It will inevitably take up Your Honor's time.  And we

17 know Your Honor's rules specifically discourage discovery

18 motions.

19    So in the long run the need to try to manage the process

20 is probably going to be overcome by just an overwhelming

21 number of -- of disputes over discovery unless we simply let

22 the federal rules operate as they do.  And what that means is,

23 we filed our objections, we've now had the city's response.

24 We are entitled, the objecting parties are entitled to

25 discovery on any matter relevant to any claim or defense.

1  And --

2         THE COURT:  Well, but let me ask you, you know, in

3  all good faith are any of the issues that I have identified as

4  legal issues in your view legal issues on which no discovery

5  is necessary?

6         MS. CECCOTTI:  It is quite possible, Your Honor,

7  that at the end of the discovery process we may well find that

8  there is a list for which there are simply no disputed facts,

9  or for which no -- no -- even undisputed facts need to be

10 argued.  But the orderly progression is to --

11        THE COURT:  So you're not willing to concede that

12 now.

13        MS. CECCOTTI:  I don't see how I can without running

14 the risk --

15        THE COURT:  The constitutionality of Chapter 9 of

16 the Bankruptcy Code is subject to discovery.

17        MS. CECCOTTI:  Well, Your Honor, I guess our -- our

18 formulation of it was slightly different as you know.  We

19 formulated it in a slightly different manner.  It is -- it is

20 entirely possible that we --

21        THE COURT:  Actually, I'm not aware -- I'm not aware

22 of that.

23        MS. CECCOTTI:  -- could argue the --

24        THE COURT:  How -- how did you formulate it

25 different from that?

1           MS. CECCOTTI:  As applied.  The -- the

2   constitutionality of Chapter 9 as applied depends upon the --

3   the proper operation of dual sovereignty principles.  It is

4   quite possible, Your Honor, that we will not discover any

5   facts that will change the way we have framed that argument

6   one way or another.  As you know we have taken issue with --

7   with setting up the argument weeks in advance of the trial

8   anyway and it's precisely for this reason.

9           THE COURT:  Uh-huh.

10           MS. CECCOTTI:  We are very concerned that we are

11   going to --

12           THE COURT:  Okay.  So what you would prefer is

13   discovery followed by a moment where you would identify the

14   issues that can be argued without a trial, followed by a

15   trial, followed by a process to resolve those issues.

16           MS. CECCOTTI:  Yes.  Not -- not unlike the process

17   you were describing a little -- a little bit before with Ms.

18   Levine where at the end of that --

19           THE COURT:  Uh-huh.

20           MS. CECCOTTI:  -- there is some sort of amendment or

21   clean up of the pleadings.

22           THE COURT:  Uh-huh.  Okay.

23           MS. CECCOTTI:  And during that process --

24           THE COURT:  All right.

25           MS. CECCOTTI.  -- we could then identify and then

1  set a separate date if Your Honor would like to handle it that

2  way --

3             THE COURT:  Uh-huh.

4             MS. CECCOTTI:  -- on those issues.

5             THE COURT:  Uh-huh.

6             MS. CECCOTTI:  Otherwise we just think that it is

7  too -- it's A, disruptive, but B, disruptive of -- of -- of

8  the Court processes but also disruptive frankly of our ability

9  to present our case in an orderly manner.

10             THE COURT:  Uh-huh.

11             MS. CECCOTTI:  To simply foreclose the discovery

12  prematurely.

13             THE COURT:  Thank you.

14             MR. GORDON:  Good morning, Your Honor.  For the

15  record, Robert Gordon of Clark, Hill on behalf of the Detroit

16  Retirement Systems.

17       Your Honor, just to elaborate on the discussion that's

18  just been had.  You know, our feeling is that while there may

19  be distinct legal issues that the Court can -- can address at

20  an appropriate point in time separate from the issues that

21  have been reserved to October 23, and we respect the idea of

22  -- of separating those things for the Court's efficiency, the

23  -- the problem simply is that until discovery has been

24  completed, it's very difficult to know whether there are any

25  facts that might be implicated on the issue

1          THE COURT:  I just don't accept that.  I just -- I

2   just do not accept that.  I think there are facts that

3   everyone knows are undisputed and that there are legal issues

4   that can be resolved without any discovery or the need to

5   resolve factual disputes.

6          MR. GORDON:  Your Honor, we respectfully disagree.

7   We think that there -- we just got the city's response --

8          THE COURT:  Well, I'll ask you the same question I

9   just asked Ms. Ceccotti.  The constitutionality of Chapter 9.

10  What possible facts in the case are there that would relate to

11  that, let alone disputed facts other than the fact that the

12  city filed a Chapter 9 case.  I know, it's a hard question,

13  isn't it?

14         MR. GORDON:  Well, it's a difficult question, but I

15  think -- I think the way things are implemented can make a

16  difference.  There's constitutionality as well as --

17         THE COURT:  Okay.

18         MR. GORDON:  -- constitutionality as applied.  So I

19  think as applied could really turn on how a statute is

20  applied.

21     To me, Your Honor, discovery should happen first.  It's

22  not going to shorten the overall process if the hearing on the

23  18th were adjourned for say two weeks, or something like

24  that --

25         THE COURT:  Uh-huh.

1          MR. GORDON:  -- and still held.

2          THE COURT:  Uh-huh.

3          MR. GORDON:  There wouldn't be any prejudice to

4  anyone and we wouldn't have to be guessing about what facts

5  actually may have some impact on -- on the overall issues.

6          THE COURT:  Okay.

7          MR. GORDON:   Thank you, Your Honor.

8          THE COURT:  That's a fair comment.

9          MR. GORDON:  Thank you, Your Honor.

10          THE COURT:  Anyone else?  Yes, sir.

11          MR. WERTHEIMER:  William Wertheimer, Your Honor, on

12  behalf of the Robbie Flowers and the other plaintiffs from one

13  of the three State Court cases.

14     Your Honor, in that State Court --

15          THE COURT:  Your comments repeated your eligibility

16  objections.

17          MR. WERTHEIMER:  Well, except that we made clear in

18  our comments that our State Court lawsuit and our objections

19  to eligibility were based on facts.  That is that we were

20  making an argument that the eligibility issue should be

21  decided based on the facts as -- as others have said as

22  applied.

23          THE COURT:  Fair enough.

24          MR. WERTHEIMER:  And we made that clear in our

25  objections and we think that it makes sense that there be

1  discovery before you decide whether you can decide the issue

2  of whether the filing was consistent with Article 9, Section

3  24 of the state constitution.

4      That you shouldn't decide in the abstract that this is

5  purely a legal issue.  We have pled it both in State Court and

6  in our objections as a factual issue and we think that we're

7  entitled to discovery on it.  Thank you.

8          MR. MONTGOMERY:  Good morning, Your Honor.  Claude

9  Montgomery for Dentons on behalf of the retiree committee.  I

10 rise for two simple propositions in connection with the

11 discussion of discovery.

12     First, to advise the Court that after consideration the

13 retiree committee will be filing an objection to eligibility

14 today, the 13th day after our retention was confirmed.

15         THE COURT:  Uh-huh.

16         MR. MONTGOMERY:  In that regard, we have come to

17 believe that the discoverable, we say arguably undisputed, but

18 nonetheless discoverable intentions of the Governor, the

19 Treasurer, and the emergency manager with respect to their

20 purpose in authorizing the filing, specifically whether or not

21 the purpose of the filing was to avoid Article 24 -- excuse

22 me, Article 9, Section 24 of the Michigan Constitution.

23     Because we believe if that was a purpose and if this

24 Court were to find that notwithstanding that purpose there was

25 authorization, that is when the constitutionality issue comes

1  into play and not before.  And so, Your Honor, we simply rise

2  to support the notion that the objectors which we'll include

3  ourselves as of tomorrow morning, be allowed as fulsome

4  discovery as possible before Your Honor finally determines

5  what the shape of the pleadings are on which you are going to

6  make a ruling.

7          THE COURT:  Thank you, sir.  Ms. Brimer.

8          MS. BRIMER:  Good morning, Your Honor.  Lynn M.

9  Brimer appearing on behalf of the Retired Detroit Police

10 Members Association.

11     Your Honor, at the risk of repeating what the Court has

12 heard, I would like to just point out that discovery under the

13 federal rules is intended to be extremely broad.  The Court's

14 order now has created an opportunity for unnecessary discovery

15 disputes as is evidenced by the motion to quash that perhaps

16 are unnecessary.

17     The -- the constitutionality for example of the Chapter 9

18 may in fact, Your Honor, be strictly a legal issue.  With

19 respect to discovery, we certainly don't want to be in a

20 dispute on discovery matters whether or not constitutionality

21 of Chapter 9 is legal or not and have the parties raising

22 those issues during discovery.  Those matters should be raised

23 at the conclusion of what should be extremely broad discovery,

24 Your Honor.

25          THE COURT:  Okay.

1          MR. BENNETT:  Good morning -- morning, Your Honor.

2    Bruce Bennett of Jones, Day on behalf of the city.

3       At the outset, I want to applaud Your Honor's use of Rule

4    1, to fashion procedures that can streamline litigation.  In

5    my --

6          THE COURT:  Would you just move the mike a little

7    closer to you?

8          MR. BENNETT:  Sure, is that better?

9          THE COURT:  A little more.

10         MR. BENNETT:  Is that better?

11         THE COURT:  There you go, yes.

12         MR. BENNETT:  Okay.  In -- in my formative years a

13   District Judge told me that Rule 1 was the most important rule

14   in the Rule of Civil Procedures.  And over time I think I've

15   come to agree with him more and more.

16      Second point, even more important than the first.  We are

17   supportive of any procedures that Your Honor wants to adopt

18   that will make it easier for Your Honor to work through the

19   very long list of objections that have been leveled to the

20   city's eligibility.

21      What is important to us more than anything else is that

22   the process conclude as rapidly as possible and -- and aiming

23   for the end of October as Your Honor's schedule appears to do

24   works well for other things that are going on in the case.

25   And we -- and whatever adjustments that Your Honor makes we

1  would hope that that doesn't change.

2      We find it helpful to break down the list as much as

3  possible because it's difficult I think for you, and difficult

4  for us, to stand here and deal with 30 items in opening 30

5  items in opposition, 30 items in -- in reply.  And so to -- to

6  the extent that this can be broken into smaller pieces and the

7  -- and the legal versus issues that cannot be resolved solely

8  as a matter of law, distinction is a distinction that actually

9  accomplishes this goal and I think it accomplishes the goal

10 quite nicely.  Because it limits the number of topics that

11 we'll have to handle at any particular session.

12     Now, I think that the objectors misstate what I think

13 Your Honor was trying to do which is there are issues here

14 that the city believes, and frankly it's many if you've read

15 our papers and I don't know that you have yet.  The hearing is

16 quite far away.

17     But there are many issues that we have dealt with by

18 saying they may be resolved as matters of law.  And as to

19 which we regard open paren either no facts -- either (1) no

20 facts are disputed or (2), no facts are material.

21     And the way it frequently works in arguments on summary

22 judgment, which this first round of hearings could be

23 analogized to, is that one party, sometimes both, but one

24 party asserts that a matter can be dealt with as a matter of

25 law, another party doesn't.  Sometimes the Court agrees with

1  the party asserting that it can be resolved solely as a matter

2  of law, other times the Court doesn't.

3      And if we ran into that situation and the Court decided

4  after an allegation of fact is made --

5          THE COURT:  Uh-huh.

6          MR. BENNETT:  -- that it actually is material to the

7  issue at hand or is disputed and may or may not therefore turn

8  the issue at hand, the issue or that part of the argument can

9  be deferred to the next day.

10      And so we can come to the hearing with the expectation

11  that yes, it's going to be asserted by one party, mostly the

12  city, that a number of the issues that have been asserted

13  whether or not they've been wrapped in facts, are issues that

14  can be resolved as a matter of law and we in fact can

15  consolidate considerably the number of issues that would have

16  to be determined at a subsequent hearing where facts are

17  involved.

18      And so for that reason, we think that Your Honor's

19  bifurcation with a tentative list of issues that might be

20  determined as a matter of law is a very sensible way to go and

21  does -- does no violence to anyone's legitimate expectations

22  or rights whatsoever.  Well within what's contemplated by Rule

23  1.

24      I want to make one more comment about something that

25  seems to be going on here.  And I want to remind everybody

1  where we are on the map.

2      The city filed its opening papers actually together with

3  the petition date.  Oppositions were due on a particular day.

4  And at the request I think of Mr. Gordon, but of the

5  objectors, Your Honor added an additional response by the city

6  in advance of the trial brief.  And I think actually that

7  helped a lot because we were able to deal with issues again

8  that we think are issues that can be resolved as a matter of

9  law.

10     We, of course, know that there will be new briefs that

11 will come out with factual issues that -- or facts that are

12 now known because of newly discovered evidence.  And we

13 discussed that at the very beginning when -- when the

14 procedures were being discussed.  It's of course sensible, it

15 has to happen and those papers come at the conclusion of

16 discovery.

17     What I'm hearing though is that in addition to that the

18 objectors want an opportunity to re-write their objections in

19 response to our reply papers.

20          THE COURT:  Well, in response to the discovery that

21 they get in the meantime.

22          MR. BENNETT:  Which -- right.  But so again it -- if

23 -- I'm for all the procedures and any procedure that Your

24 Honor will find helpful.  But if instead of having a round of

25 papers that are really about facts that -- that the objectors

1  want is another round of papers that are about the issues we

2  think are about law really a sur reply to our reply brief, I

3  feel myself compelled to ask at least for the opportunity to

4  figure out whether we need an opportunity for further briefing

5  to deal with such things.

6      We dealt with the objections that were filed.  They were

7  quite voluminous and there were many many topics and I

8  apologize for the length of the brief that resulted as a -- to

9  respond to all of that.  We'll do -- we'll do it again if we

10 -- if we need to.  I'm hoping to avoid it.  With that, I'll

11 leave -- I'm here to answer any questions that Your Honor

12 might have.

13         THE COURT:  Thank you.  By the way in the list of

14 things I -- I went through earlier regarding comments that I

15 agreed to, I neglected one which was -- one second.  In

16 AFSCME's comment there was the concern that the Court reworded

17 the stern issue from jurisdiction to authority and it needs to

18 be stayed in terms of jurisdiction.  Again, that's fine with

19 the Court.  The Court will make that change.

20         MS. CECCOTTI:  Your Honor, I'm not sure if you have

21 others on your list but I did want to point out that one --

22 one thing that you and I haven't discussed is our comments

23 regarding our (c)(4) objection.  So if you wanted to take

24 those up.

25         THE COURT:  Yeah.  Well okay, sure, go ahead.

1      MS. CECCOTTI:  Well, again our -- and again I think

2   some of the comments that -- that we've already heard, and I

3   -- and I've already stated previously apply as well.  Just in

4   essence we feel that just following the orderly progression,

5   we -- the UAW should be permitted to keep that objection alive

6   and continue to litigate it.

7      At the end of the day it may be that Your Honor's initial

8   ruling is correct, but frankly there is such a relative lack

9   of case law in Chapter 9 that I'm really not prepared today to

10  say that based on what's out there today, there is no possible

11  way that we could convince you based upon either the trial

12  process or some dispositive process, dispositive motion or

13  argument process that takes place later on, that we couldn't

14  convince you that in fact the (c)(4) objection on these set of

15  facts is a viable one.  And therefore we respectfully ask Your

16  Honor to withdraw your ruling on that at -- at this time.

17      THE COURT:  All right.  I assume others of you have

18  joined in that request and support that request as well.

19  Okay.

20      MR. MONTGOMERY:  If I may interrupt.  Disclosure and

21  consideration about how to respond to --

22      THE COURT:  Okay, go ahead.  Go ahead.

23      MR. MONTGOMERY:  All right.  Just the last point,

24  Your Honor.  Just for the purposes of disclosure and

25  consideration.

1      It is our expectation that following the filing of our

2  objection to the city's eligibility papers that because we and

3  others have raised both state and federal constitutional

4  issues, we will be filing a motion to withdraw the reference.

5  And we will also be filing a motion to this Court to stay your

6  proceedings pending the District Court's decision on whether

7  or not the reference should be withdrawn.

8      And we were going to put in an ex parte request for a

9  Thursday or Friday hearing on that request.  So if you would

10 fold that into your thinking, it would be appreciated, Your

11 Honor.

12      THE COURT:  Okay.  Well, I'm feeling the need to

13 turn our attention to the motion to quash and then circle back

14 to the issue of the scope of discovery and the timing of the

15 various hearings that have been set.  So who would like to be

16 heard from the Attorney General's office on the motion to

17 quash?

18      MS. NELSON:  Good morning, Your Honor.  Assistant

19 Attorney General Margaret A. Nelson on behalf of the state

20 with respect to its motion to quash.  I appreciate the

21 opportunity to address the Court on this.

22      We filed a response brief yesterday that essentially

23 outlines our legal arguments with respect to why in addition

24 to the objections stated in the original motion to quash, the

25 creditors have not satisfied the requirements of the Court's

1  September 3rd order to establish either the necessity or

2  requirement for the discovery they are seeking from these

3  highest executive officials of the State of Michigan.

4         THE COURT:  This is your privilege argument?

5         MS. NELSON:  This is part of the privilege argument,

6  but it also initially is the relevance.  I would submit to the

7  Court that examination of the responses.

8      First, the objections filed by AFSCME on September 1st do

9  not establish any relevance with respect to the required or

10 the requested deposition testimony, or at least that one might

11 imply from their response.

12     Particularly I refer the Court to document 701(12)(3)

13 where they discuss essentially the timings and the issues

14 related to the Webster case which we identified in our brief.

15 But for example, that is -- is hardly relevant to the bad

16 faith issue, number one.

17     Number two, they can obtain those records that are

18 necessary to address those particular issues, they're a matter

19 of record in the Circuit Court, and -- and otherwise

20 obtainable from other than the State of Michigan.

21     So for example they allege the petition was filed in the

22 dark of night.  Well, that's clearly not true because the

23 petition itself indicates when it was filed, the date and the

24 time.  The Court's orders that were entered for example on the

25 18th of July indicate they were all -- they were entered at

1  4:25 p.m. which was after the petition was filed.

2      The order in Webster that the creditors are relying on

3  for collateral estoppel purposes wasn't entered until the

4  following day, July 19th.  That order is also a matter of

5  record and available.  And because the party, the objectors

6  quote from it extensively and rely on it in their objections,

7  they clearly already possess it.  So I have to assume that

8  they possess all of these other arguments as well.

9      The other factors that the -- that they don't point the

10  Court to, which is also relevant, are the Court of Appeals

11  actions.  The emergency appeal that was filed on the 19th, the

12  order of stay that was entered by the Court of Appeals, all of

13  which of course are matters of public record.

14      So their inquiry into the status of these cases at the

15  time the bankruptcy petition was filed, is completely

16  irrelevant at this point of time.  They have access to that

17  information.  The pleadings that they've already filed in the

18  form of objections to the eligibility clearly indicate they

19  know that, they have possession of those orders, and there's

20  no purpose to try to obtain it separately from the State of

21  Michigan.

22      Now with respect to the good faith issue, Your Honor, I

23  would submit they have failed dramatically all three to

24  identify appropriately what the parameters of the bad faith

25  issue are.  And I would submit to the Court that in order to

1  determine the relevance of the balance of the discovery that's

2  being requested here, a determination of what constitutes bad

3  faith with respect to this filing under 921, has to be

4  determined.  Because the parameters of the bad faith will then

5  determine what fact issues are relevant to that.

6      And I would submit to you, Your Honor --

7      THE COURT:  Well, but doesn't the case law require

8  the Court in addressing an -- an argument that a case was

9  filed in bad faith, to look at the totality of circumstances,

10  meaning everything that led up to the filing?

11      MS. NELSON:  On the part of the debtor, Your Honor.

12  But how is for example, and I -- the Governor's motive for

13  signing the authorization at the time he signed it, which the

14  Court already acknowledged this morning, the authorization has

15  been made.

16      But what the plaintiffs -- I'm sorry, what the creditors

17  want to inquire into is the Governor's motive.  Why he signed

18  it.  Why he signed it the way that he did in terms of the

19  contents.  Why there were no contingencies put on it.

20      Because they claim the fact that there were no

21  contingencies or a carve out for the pensions, violates

22  Michigan's Constitution, not that it establishes bad faith on

23  the part of the debtor in terms of the filing.  Because the

24  authorization does not mandate a timing for the filing.

25      So the two simply do not relate.  So the Governor's

1 decisions and processes in deciding --

2          THE COURT:  The Governor gave his permission for the

3 filing.

4          MS. NELSON:  That's correct.

5          THE COURT:  Why isn't everything that he considered

6 in granting that authorization relevant to the issue of the

7 good faith of the filing?

8          MS. NELSON:  Well, that's not what they're asking

9 for though, Your Honor.  If you look at AFSCME's -- for

10 example, AFSCME's objections in 701 Paragraphs 17 and 18.

11 They're seeking the Governor's deliberative process in terms

12 of his motive and his decision making process.  His, not in

13 relation to the totality or the circumstances that existed in

14 the city or the information provided them, but his as to why

15 specifically he did not include contingencies.  Contingencies

16 that weren't mandated by the law.

17     So it doesn't go to the petition or the filing.  It goes

18 to his decision making process, his deliberative process in

19 deciding this is how I'm going to format this authorization.

20 And I've decided as he set forth in the authorization, there

21 is no need for contingencies by me because the law controls

22 here.

23     That is the Governor's motive and the Governor's

24 deliberative process which does not relate in coincident time

25 to the timing of the petition, or the filing of the petition,

1  or the emergency manager's ultimate decision that the petition

2  has to be filed.  Because the authorization doesn't mandate

3  the filing.  And it doesn't dictate the timing of the filing.

4      And so how does it lend itself to that totality of what

5  they're claiming is bad faith other than the fact that the

6  Governor authorized it based on the recommendation made by the

7  emergency manager.  Which is a matter also of public record.

8      It's the recommendation that was required under Section

9  18(1) of the statute.  It's been attached to the filing.  So

10  it's a matter of public record as to the information provided

11  on which the Governor acted and signed the authorization.

12      Similarly, Your Honor, the UAW objections -- or I'm

13  sorry, the UAW's subpoenas which seek 12 specific items of

14  documentation as well as the Governor's dep, all -- are all

15  looking at this question of the authorization.  Not

16  specifically or in relation to the bad faith, but in relation

17  to their constitutional challenge whether or not 436 is

18  unconstitutional, and whether or not the authorization is

19  invalid because it doesn't apply the Michigan Constitution.

20      They want again the Governor's deliberative process, not

21  in the context of informing the debtor's decisions that relate

22  to the bad faith issue, but in terms of the relationship to

23  the constitutional issues.  And that is where the relevance

24  issue comes into play.

25      Similarly with the Detroit Retirees -- I'm sorry, the

1  Detroit Police Members Association.  Now when you look at the

2  scope of what's being requested from the Retirees Association,

3  from the UAW, and from AFSCME, that also lends itself to the

4  relevance argument.

5      Because as the Court -- the 6th Circuit said in <u>Stockton</u>,

6  the focus on eligibility determinations and the eligibility

7  issue is pre-bankruptcy actions and conduct.  Every one of

8  these requests seeks in addition to pre-filing, all the

9  post-filing communications, documents which is not the focus

10  of the eligibility.

11      AFSCME's -- I'm sorry, the UAW's request goes back to

12  September 1st of 2012.  AFSCME places no parameters on it other

13  than they want everything.  And the Detroit Police Retiree

14  Member Association wants everything pre and post.  So that

15  alone is sufficient to at least focus those document requests

16  on the limited period of time if the Court determines that

17  what's being requested is relevant.

18      The totality of the circumstances, yes.  But the

19  circumstances related to the Governor's motive, irrelevant.

20  Also, I wanted to address the issue of waiver briefly, Your

21  Honor.  If you -- unless you have any other questions.

22      I believe our brief speaks for itself.  The objections

23  are overly broad -- I'm sorry, the requests are overly broad

24  in this context because they don't speak to good faith.  They

25  speak only to the Governor's motive.  They speak to the

1  Governor's and his staff and aides' deliberative process which

2  is not discoverable.  It's specifically privileged.

3        THE COURT:  Can you explain to the Court why you

4  didn't assert the privilege objection in your motion that you

5  filed last week?

6        MS. NELSON:  Absolutely.  Because it wasn't apparent

7  from the discovery that that was clearly what they were after,

8  number one.  Number two, we had to have an opportunity to look

9  at the documentation and see just exactly what we were talking

10  about.

11      When AFSCME filed its objection to our motion to quash on

12  September 1st, it became apparent that's exactly what they

13  wanted.  When you look at their Paragraphs 14 and 15, there is

14  absolutely no question, they want the deliberative process of

15  the Governor.  Number three, our motion was essentially formed

16  under the umbrella of relevance based on the Court's August

17  26th order which is a perfectly appropriate objection to start

18  with under Rule 26(c).

19      So we have to first determine what is relevant that we

20  have to produce what it is that they're seeking before we can

21  then assert a privilege.  Because as the Court knows, I'm

22  sure, you assert privilege specifically, not generally and --

23  and in a broad context.  You have to --

24        THE COURT:  All right.  Pause there.  Do you seek a

25  ruling from the Court today that all of the discovery that

1  these creditors seek is protected by one or more of these

2  privileges?

3          MS. NELSON:  We seek a ruling from the Court

4  today --

5          THE COURT:  That would be a yes or no question,

6  Ma'am.

7          MS. NELSON:  The answer is no.

8          THE COURT:  Okay.

9          MS. NELSON:  We are --

10          THE COURT:  What -- what do you seek today on the

11  issue of privilege?

12          MS. NELSON:  We're asking the Court to quash the

13  depositions of the remaining -- of the people that have been

14  noticed.  So for the UAW --

15          THE COURT:  Because of privilege.

16          MS. NELSON:  Correct.  That's the Governor.

17          THE COURT:  You want me to rule on that today?

18          MS. NELSON:  And that's the Treasurer.  Well, if you

19  -- if you intend to take it under advisement they have noticed

20  those deps for the -- the 12th.  They obviously can't go at

21  least as to the --

22          THE COURT:  You filed a brief yesterday for a

23  hearing today and you want the parties to respond and me to

24  rule on this?

25          MS. NELSON:  No, Your Honor, we were -- we filed

1   that yesterday as a response specifically to --

2          THE COURT:  At 20 minutes till 5:00.

3          MS. NELSON:  Correct.  I understand that.  So if the

4   Court doesn't believe that it's able to rule today on that

5   issue, that's appropriate and we understand that.

6          THE COURT:  How about the parties being given an

7   opportunity to respond to it?

8          MS. NELSON:  That's -- I have no -- no problem with

9   that either, Your Honor.  If the Court wants to take

10  additional time and allow the parties, that's perfectly --

11  perfectly appropriate.

12         THE COURT:  If it's your position that the

13  depositions should not go forward because of this deliberative

14  process privilege or whatever you choose to call it, why

15  wasn't that issue raised in the motion itself which would have

16  given the parties an opportunity to address it and the Court?

17         MS. NELSON:  Well, first of all, I think it was a

18  matter of timing, Your Honor.  We were working at the time

19  with discovery that had been filed prior to the Court's August

20  26th order.

21      When we received that discovery it was apparent that it

22  was broad in scope in the context of the Court's order and

23  what it was identifying as fact issues.  So we first have to

24  determine the relevancy of that discovery so that we know the

25  limits of what the -- of what the creditors are actually

1 seeking so that we can make specific privilege objections.  We

2 now have that information in the form of their responses.

3          THE COURT:  Right.  But you're not making a specific

4 privilege objection.  What you are making is a request to bar

5 the deposition all together on this ground.

6          MS. NELSON:  We are arguing that yes, the Governor's

7 deposition --

8          THE COURT:  And I'm asking you why that could not

9 have been made in your original motion?

10          MS. NELSON:  Because we -- because we didn't -- we

11 weren't clear and weren't certain that they in fact were

12 seeking only deliberative process.  And it's clear from their

13 response --

14          THE COURT:  Well, I -- I want to challenge you on

15 that -- I want to challenge you on that.  I have to challenge

16 you on that.

17     It's hard for me to imagine what you thought they were

18 going to ask the Governor in a deposition other than that.  I

19 mean every --

20          MS. NELSON:  They could have asked --

21          THE COURT:  The papers they have filed have -- have

22 challenged the Governor's authorization throughout.  What else

23 is there to ask him about?

24          MS. NELSON:  The Court identified that as its legal

25 issue number six.  And whether the fact that the Governor did

1  not include anything specific to a carve out with respect to

2  the pensions, is a constitutional issue, renders that

3  authorization invalid.

4      That was identified as a legal issue by the Court, not a

5  fact issue.  So we filed our response specific to that

6  identification by the Court.  Now we're talking about bad

7  faith.

8      The creditors stood here this morning and talked about

9  bad faith.  From our perspective, we saw the Court's order

10  dated August 26th, the issue related to the validity of the

11  Governor's authorization was identified as a legal issue based

12  on all of the objections.

13      All of the objections argued that because the

14  authorization did not provide a carve out if you will for the

15  pensions, it violated Michigan Constitution, Article 9,

16  Section 24.  That is a legal issue.  What fact issues would be

17  necessary for that?

18      Now AFSCME and the UAW stood here this morning and said,

19  well, they've -- they've tried to parse these as applied

20  issues.  But that's not an as applied issue.  That is clearly

21  an application of Michigan Constitution law here to that

22  authorization.  Did the Constitution require the Governor.

23  And so his thinking --

24          THE COURT:  Well --

25          MS. NELSON:  -- doesn't even inform that issue, Your

1  Honor.  His motive, his deliberative process for why he didn't

2  include contingencies, doesn't inform that constitutional

3  issue or that legal challenge.

4           THE COURT:  But you -- you made the conscious

5  decision to get a ruling on -- on -- on relevance and then if

6  you lose that to assert the privilege.

7           MS. NELSON:  Well, if we -- if --

8           THE COURT:  Is that -- is that what happened?

9           MS. NELSON:  Correct.  If the deposition goes

10 forward --

11          THE COURT:  Is that what happened?

12          MS. NELSON:  No.  Because if the deposition goes

13 forward --

14          THE COURT:  Well, I'm having a hard time

15 understanding what did happen if it wasn't that.  Because if

16 it wasn't that, you would have asserted the privilege and the

17 relevance argument at the same time.

18          MS. NELSON:  Well, only if we knew of specifically

19 what they were pursuing on behalf of the Governor.  That it

20 would include that deliberative process.

21          THE COURT:  I thought we had already cleared that

22 up.  Because there isn't anything the government -- Governor

23 could testify to other than his deliberative process.

24          MS. NELSON:  Well, Your Honor, if the conclusion was

25 that the Governor's deposition would go forward, we would be

1  able to assert privilege to a -- on a question by question

2  basis.  However, given the responses filed by the creditors,

3  it is clear that they are only intending to pursue the

4  deliberative process the Governor made --

5          THE COURT:  I guess what I'm suggesting to you is

6  that that has been clear from the first paper any of them

7  filed, or nearly then.

8          MS. NELSON:  Well, I -- I believe --

9          THE COURT:  I want to put to you a different -- I

10 want to put to you a different question.

11         MS. NELSON:  Yes.

12         THE COURT:  With all the seriousness I can muster

13 here.  We have a city who is struggling under a virtually

14 incomprehensible financial burden here.

15         MS. NELSON:  Correct.

16         THE COURT:  That has -- that has sought relief from

17 this Court with the permission of the Governor.

18         MS. NELSON:  Correct.

19         THE COURT:  In an -- in an attempt to create a

20 viable if not thriving future for itself, right?

21         MS. NELSON:  Yes.

22         THE COURT:  And it needs to do that with all

23 deliberate speed as I think Mr. Bennett said here today.  They

24 want to file a plan by the end of this year.  You heard that,

25 right?

1          MS. NELSON:  Yes.

2          THE COURT:  The end of this year.  Is it really in

3    the best interest of the city and the people of the State of

4    Michigan for the Governor to be asserting a deliberative

5    process privilege in this case, Ma'am?

6          MS. NELSON:  It is in the best interests of the city

7    and the people of the State of Michigan that this proceeding

8    go forward without being muddied up with sidetrack issues

9    focusing on matters that aren't relevant, that are otherwise

10   privileged in terms of the governance of the state which is

11   exactly what's at issue here.

12         THE COURT:  I didn't ask you about relevance.  I

13   asked you about privilege.

14         MS. NELSON:  I -- and that's what I'm addressing,

15   Your Honor.  I'm sorry if I wasn't clear.  Yes, it is in the

16   best interests of the city and the citizens of the State of

17   Michigan to move this case as quickly as possible and to avoid

18   the -- the delays and the -- that would be caused by

19   unnecessary and inappropriate discovery which our position is

20   constitutes these depositions and the bulk of the discovery

21   requests in terms of the document requests provided, or

22   requested by UAW, and the other Detroit Police Retirees

23   Association.

24         THE COURT:  Thank you.  Anything further?

25         MS. NELSON:  No, Your Honor.

1          MS. LEVINE:  Your Honor, Sharon Levine, Lowenstein,

2   Sandler for AFSCME.  Your Honor, we had some previous colloquy

3   with regard to the fact that we believe that there are factual

4   inquiries that we need to make into the state.

5          And particularly the Governor whether we characterized

6   them today as -- as applied constitutional issues, or good

7   faith or bad faith.  We understand that we may be coming up

8   with a process that seems to be percolating that's going to

9   let that get clarified right before the trial, but regardless,

10  we respectfully submit that this discovery is appropriate.  We

11  didn't lie in wait.  We haven't sought voluminous documents.

12         All we -- all we served was subpoenas.  We're seeking

13  documents directly from the city.  We filed those subpoenas on

14  the docket on August 23rd.  We asked the state to accept

15  service, they refused.  We ran process servers all around the

16  state until we tracked these people down.

17         We effected service.  We learned on Friday afternoon at

18  about -- at 3:00, that the state as asking us to withdraw the

19  subpoenas.  We asked them to convey it to us in writing so we

20  could -- we could respond appropriately.  We have a bunch of

21  channels that we have to get to.  We got through all those

22  channels, Your Honor, in less than an hour.

23         We cut our list in half.  We agreed to cooperate on

24  scheduling.  And in response to that subpoena, which I'm

25  guessing was a check the box, we got served with a motion to

1 quash Friday night of Labor Day weekend and we responded on

2 Sunday.  Apologize if it's not as artfully drafted as it could

3 have been, but we weren't sure what Your Honor's intention was

4 with regard to timing and ruling and we wanted to get papers

5 submitted to the Court.

6      In addition to that given the -- the -- the speed that

7 this process is moving, and we appreciate Your Honor's

8 consideration of some relaxation of some of those deadlines,

9 if we're really going to be doing oral arguments on the 18th,

10 mediation simultaneously, and trial at the beginning of

11 October, we don't have the ability to not take these

12 depositions immediately and understand what's going on out

13 there.

14      With regard to the privilege, we would respectfully

15 submit that if Your Honor were to take a look at In Re: NM

16 Holding Co., LLC, 407 BR 232, Page 287 at Footnote 163 and the

17 cases cited in that footnote, the idea of making substantive

18 legal arguments in a reply on the eve of the hearing is

19 inappropriate and shouldn't be condoned.

20      We understand that sometimes there are special

21 circumstances, but we'd respectfully submit that having

22 submitted the subpoenas on August 23, this just isn't one of

23 those circumstances.

24      With regard to the privilege itself, Your Honor -- well,

25 let me ask this.  We've gone some legal research through the

1  night on the issue of privilege.  I'm not sure if Your Honor

2  is -- is looking to hear that.

3      THE COURT:  I -- I can't ask you to respond to the

4  -- to the privilege assertion that was made at 20 minutes till

5  5:00.

6      MS. LEVINE:  What we don't want to do though, Your

7  Honor, is not respond to the extent it's going to preclude

8  discovery because we believe the privilege was inappropriately

9  asserted.

10     So I can -- I can basically read what is the notes of a

11 rough draft of what our reply brief would be if Your Honor

12 needs it, but given the schedule that we're on and the

13 importance of taking the Governor's deposition and the other

14 state official depositions --

15     THE COURT:  When are they scheduled?

16     MS. LEVINE:  I'm sorry?

17     THE COURT:  When are they scheduled?  I'm sorry.

18     MS. LEVINE:  Well, we've noticed them -- we -- we

19 noticed them on August 23 for the 12th, but as you'll hear

20 later, I'm assuming from the city as well, you know, we've --

21 we've -- the parties have been cooperating in terms of

22 discovery scheduling and we would presume to be able to do

23 that as well with the state witnesses as well.

24     THE COURT:  Uh-huh.

25     MS. LEVINE:  But they are all taking place between

1  now and the 23rd.  Maybe one is slipping into the 24th per Your

2  Honor's prior scheduling order.

3          THE COURT:  Uh-huh.

4          MS. LEVINE:  So should I keep going on privilege?

5          THE COURT:  This is -- this is --

6          MS. LEVINE:  I have one associate that worked really

7  hard on --

8          THE COURT:  This is so confounding because -- I'm

9  sorry?

10          MS. LEVINE:  I have an associate that worked really

11  hard on this.

12          THE COURT:  Yeah, I'm sure.  You know, as -- as my

13  law clerks did as well.  It's -- it's confounding because it's

14  -- it's obviously an important issue.

15      You know, in all honesty half of me came into Court today

16  perfectly willing to pound the gavel and hold a waiver.  It's

17  -- it's just -- it's incomprehensible to me that -- that --

18  that the Attorney General's office didn't make this privilege

19  argument in its initial paper in order to facilitate the

20  Court's processing of it.

21      Ma'am, I have to ask you.  When did you decide to make

22  this argument?

23          MS. NELSON:  We decided to make this argument on

24  Thursday.

25          THE COURT:  All right.  Then let me ask you this

1   question, Ma'am.  Why on Thursday did you not file a motion to

2   adjourn today's argument to give parties an opportunity to

3   address the privilege issue?

4           MS. NELSON:  Well --

5           THE COURT:  I ask that because we set this hearing

6   today at your request.

7           MS. NELSON:  Correct.  I understand that, Your

8   Honor.  We didn't think it was necessary to do that because we

9   felt that the -- the --

10          THE COURT:  You thought I would just accept the

11  privilege argument because you asserted it without giving the

12  other parties an opportunity to be heard?

13          MS. NELSON:  No, I did not, Your Honor.  And I don't

14  mean to offend the Court.  Our focus of this motion and this

15  hearing was the relevancy issue.

16      We -- our intent was to point out to the Court that there

17  were other privileges that when --

18          THE COURT:  Well, Ms. Levine is asking a pertinent

19  question then which is, how do we process the privilege issue

20  between now and when these depositions will occur which is

21  very soon.

22          MS. NELSON:  Correct, I understand.  And --

23          THE COURT:  What's your answer to that question?

24          MS. NELSON:  I believe that we can -- I have a

25  representative from the Governor's office here and I believe

1  that if we can have 15 to 20 minutes to confer with other

2  counsel, we may be able to resolve this issue for the Court.

3           THE COURT:  Resolve what issue?

4           MS. NELSON:  The issue of deposition of the Governor

5  and the parameters of that deposition in the context of

6  deliberative process.  As well as with respect to the other

7  individuals that they have sought.

8           THE COURT:  Well, all right.  I'm going to grant you

9  that but only because we need to take a break anyway.  We'll

10  reconvene at noon.

11           THE CLERK:  All rise.  Court is in recess.

12      (Court in Recess at 11:44 a.m.; Resume at 12:00 p.m.)

13           THE CLERK:  Court is in session.  Please be seated.

14  Recalling case number 13-53846, City of Detroit, Michigan.

15           MR. MONTGOMERY:  Your Honor, if I may be the

16  protagonist in your last discussion, they're all missing.

17           THE COURT:  I see that.  All right.  I need a

18  volunteer to go talk to the attorneys and ask them to please

19  come back into Court because we are back in session.  Thank

20  you.  Ah, they're coming.

21           MS. LEVINE:  Your Honor, Sharon Levin, Lowenstein,

22  Sandler for AFSCME sorry.  But we did use the time

23  productively.  And I'm pleased to report to the Court that I

24  think we're 75% towards a resolution.  And if the Court might

25  give us another five minutes,

1           THE COURT:  Uh-huh.

2           MS. LEVINE:  We might be there.

3           THE COURT:  Sure.  We'll reconvene at 12:15 then.

4           MS. LEVINE:  Thank you, Your Honor.

5           MS. NELSON:  Thank you, Your Honor.

6           THE CLERK:  All rise.  Court is in recess.

7       (Court in Recess at 12:03 p.m.; Resume at 12:15 p.m.)

8           THE CLERK:  Court is in session.  Please be seated.

9           MS. NELSON:  Thank you, Your Honor, for the

10  opportunity to sit and work this out.  We do have an agreement

11  in form.

12          THE COURT:  Uh-huh.

13          MS. NELSON:  The Governor has agreed to be deposed

14  and the -- and the objectors agree to the following

15  parameters.

16      The deposition will be for three hours.  The scope of the

17  inquiry will be those issues raised in the eligibility

18  objections.  The Governor will waive his deliberative process

19  privilege as to those issues.

20          THE COURT:  Uh-huh.

21          MS. NELSON:  The deposition of -- of the state

22  Treasurer Andrew Dillon and of Mr. Baird will follow

23  sequentially if -- subject to the objectors' determination of

24  necessity, as well as the UAW's 30(b)(6) deposition.

25          THE COURT:  Uh-huh.

1          MS. NELSON:  And we will meet and confer with

2  respect to the discovery requests, the duces tecum requests of

3  the UAW.  And deliberative process privilege will be waived

4  with respect to those documents, but no other privilege will

5  be waived.

6          THE COURT:  Uh-huh.

7          MS. NELSON:  And we will respond similarly to the

8  document request, the amended document request that was

9  attached to the Detroit Police Retiree Association.  I think I

10  have the name right.  I apologize if I keep confusing that

11  name.  So those will be responded to with appropriate

12  objections asserted as no objections will be waived.

13          THE COURT:  Is that your agreement?

14          MS. LEVINE:  Yes, Your Honor, two minor points.

15  There's a -- apparently a deposition transcript of Mr. Baird

16  which the -- which the state has agreed to share with us in

17  advance of the deposition.  And we appreciate the -- the

18  waiver of the deliberative process to the extent it exists,

19  but we're not acknowledging that in case it comes up again in

20  this case which is for seven hours.

21          THE COURT:  Uh-huh.

22          MR. DECHIARA:  Your Honor, Peter Dechiara from the

23  law firm of Cohen, Weiss, and Simon for the UAW.  We agree

24  with the terms as stated on the record.

25          THE COURT:  Okay.  Thank you, Ms. Brimer.

1        MS. BRIMER:  Just for the record, Your Honor, that

2  was I understand the agreement with respect to our document

3  request.  However, I want to be clear with respect to what is

4  not being waived.

5       Privileges are not being waived.  Other objections

6  relevance, based on their motion to quash, I understand

7  they're waiving.  We have substantially narrowed our document

8  request and we have agreed and I will put it on the record so

9  that it's clear, we have agreed to limit the documents we have

10  requested to the pre-petition period at this time.

11        THE COURT:  Thank you.

12        MS. NELSON:  Thank you, Your Honor.

13        THE COURT:  There's one -- one more.

14        MR. WERTHEIMER:  Flowers plaintiffs agree also, Your

15  Honor.

16        THE COURT:  Thank you.  All right.  The Court

17  concludes that this is an appropriate resolution of these

18  issues and does approve it.

19       I want to thank the Governor, the Attorney General, and

20  the other state officials for their cooperation here.  May I

21  ask what range of dates you're contemplating for these

22  depositions?

23        MS. NELSON:  Well, right now --

24        THE COURT:  As best you --

25        MS. NELSON:  -- it's --

1          THE COURT:  As best you know right now.

2          MS. NELSON:  Deps -- the dates that's set in your

3   order.  We have to have everything done by the 23rd of

4   September.

5          THE COURT:  All right.

6          MS. NELSON:  So we're going to try to -- we're

7   moving with all expediency to get the Governor's dep scheduled

8   because that's going to determine whether or not the objectors

9   decide they need the others.

10         THE COURT:  All right.  Well, not as an invitation

11  but as an offer, I will suggest to you that if any disputes

12  arise during the deposition concerning the scope of it, you

13  can get me on the phone.

14         MS. NELSON:  Thank you, Your Honor.

15         THE COURT:  Not as an invitation as an offer.  Not

16  an invitation to have disputes.

17         MS. NELSON:  Understand.

18         THE COURT:  All right.

19         MS. NELSON:  Thank you very much.

20         THE COURT:  All right.  So anything further on the

21  motion to quash?  Are you going to submit an order?  Is that

22  -- is that what you contemplate?

23         MS. NELSON:  I will prepare an order.

24         THE COURT:  All right.

25         MS. NELSON:  I will circulate it to counsel to make

1  sure that everybody is agreement.

2        THE COURT:  All right.  Now --

3        MR. WERTHEIMER:  Your Honor, I have one minor

4  matter.  It's not related to the motion to quash.

5        THE COURT:  Okay. You may proceed with that, sir.

6        MR. WERTHEIMER:  Your Honor, counsel for the UAW

7  earlier this morning, it seems like an awfully long time ago,

8  moved and you allowed the UAW to -- or your August 26th order

9  to reflect the fact that the UAW had asserted the bad faith

10  under 921(c).

11     I had, at least in part, adopted the objections made by

12  the UAW.  So I just wanted to make sure that your order would

13  apply to the Flowers plaintiffs also.

14        THE COURT:  Okay.  Yeah, and -- and what I'm -- you

15  know, just -- just to, you know, belts and suspenders here,

16  I'm going to put a sentence in -- in the order which says

17  something like nothing in this order is intended, except as

18  explicitly stated in it, to limit any of the objections that

19  any party has -- has made or adopted in their objections, in

20  their filed objections.  It was not the intent of the Court to

21  do that.

22        MR. WERTHEIMER:  Thank you, Your Honor.

23        THE COURT:  All right.  Now I want to circle --

24  oh --

25        MS. NELSON:  Are you circling back to your order?

1          THE COURT:  Yes.  That's exactly what I was going to

2    do.  I want to circle back to the issue of -- of timing.

3    Okay.  Because it's -- it's an opening issue at this point.

4        I'm -- I'm -- I'm getting more comfortable with -- that's

5    all right, take your time.

6          MS. NELSON:  I'm sorry.

7          THE COURT:  No, no, no, it's all right.  I

8    understand.  Yup, that's important.

9          MS. NELSON:  Before you move on, there is one other

10   issue I forgot to note, I apologize.  The subpoena, the AFSCME

11   subpoena for Mr. McTavish is being withdrawn.

12         THE COURT:  Is that your agreement?

13         MS. NELSON:  I'm sorry, and Ed.

14         THE COURT:  Okay.

15         MS. LEVINE:  We now have three expanded subpoenas,

16   assuming this agreement goes forward.

17         THE COURT:  Okay.  All right.

18       So what I was going to say was, I'm -- I'm -- I'm

19   becoming more comfortable with the concept of moving what I've

20   described of -- described as the legal issues to a time closer

21   to, if not at the start of the trial that we have set.  It

22   feels like you all are interested in that extra breathing room

23   if I can call it that.

24       In addition, I'm -- I'm -- I'm moving in the direction of

25   attempting to understand more specifically how it could be

1  that the issues that I have identified as legal issues, may be

2  discovery and may be factual issues.  So I'm going to

3  contemplate that a bit more.

4      At the same time I liked Mr. Bennett's idea that

5  characterizing in this order an issue as a legal issue should

6  not be interpreted to preclude any of the creditors from

7  arguing that it is not ripe for a decision as a legal issue

8  because there are genuine issues of material fact that need to

9  be resolved at a trial.  And -- and -- and thereby pushing it

10  into the factual issue side of the ledger if that's right.

11      Now what that means is that if we have arguments on what

12  I have preliminarily called legal issues and then I determine

13  that there are factual issues on that, then that gets pushed

14  into the factual issue column to be tried at this trial.

15      So, you know, again I want to express my appreciation to

16  all of you for your input into this process.  You know, we all

17  have our roles to play and it's important for -- for you to

18  play your role as it is important for me to play mine here.

19      In that vein, let me ask you if we're going to try to

20  have oral arguments on issues that are preliminary --

21  preliminarily characterized as legal issues.  If it's -- if

22  it's too soon to do it on the dates I suggested, when would be

23  a good time?  And as I ask that question, I have to caution

24  you all that we're not going to be able to fix exact dates

25  today because, you know, we are borrowing this space and --

1  and the other spaces in the building.

2      And so, you know, any dates we're talking about are

3  always subject to that issue.  So let me just throw the floor

4  open to that.

5      I mean our choices are for example, two weeks before, one

6  week before to begin the trial instead of beginning the trial

7  on factual issues.  So anybody out there, anybody.

8          MS. CECCOTTI:  Your Honor, I don't have the -- the

9  Court's schedule with me.  I guess one consideration would be,

10 and certainly closer to the start of the trial, is -- it makes

11 -- it makes a lot more sense.

12     There is a -- a deadline, I believe, that Your Honor has

13 established for the sufficient of a joint pre-trial order.  So

14 it might make sense to work --

15         THE COURT:  Uh-huh.

16         MS. CECCOTTI:  -- with the dates that are set there

17 to the extent that the trial is --

18         THE COURT:  Let's -- let me -- let me pull up --

19         MS. CECCOTTI:  -- going to only be then on a more

20 limited set of issues than the parties would not -- now the

21 other way to do that, I suppose, is to have the pre-trial due

22 closer to the time of the 23rd.  And I just unfortunately

23 don't --

24         THE COURT:  Let's -- let's get those dates.

25         MS. CECCOTTI:  Okay.

1          THE COURT:  Does anybody know the docket number of

2  the order?  Yeah.

3          THE CLERK:  280.

4          THE COURT:  280, thank you.  Yes, thank you.  Okay.

5  Well, the last of the depositions is October 10th.  October 17th

6  is the deadline to submit a joint final pre-trial order and to

7  file briefs, pre-trial conference the 21st, trial the 23rd.

8      What makes sense if we're going to keep with that

9  scheduled to do oral arguments on legal issues preliminarily

10 designated as such?

11         MS. CECCOTTI:  May we have a moment, Your Honor?

12 Thank you.

13         MR. BENNETT:  While they're discussing it, I would

14 propose a week before the 17th because we'll find out whether

15 there are -- what the factual issue landscape will really look

16 like which could possibly influence the pre-trial order and

17 everybody's trial preparation.

18     There is a -- I think we've been asked to reserve for

19 mediation the 7th and the 8th of October.

20         THE COURT:  Uh-huh, uh-huh.

21         MR. BENNETT:  So I don't remember what days of the

22 week that are -- those are, but the 9th or the -- 9th would be

23 fine.  October 9th is a Thursday, that would -- I'm sorry, the

24 9th -- the 9th would be available and would be perfectly fine.

25         THE COURT:  Are we having a genuine issue of

1 material fact on what day of the week is on what day?  Okay.

2 So you're committed to -- to mediation on what dates again?

3          MR. BENNETT:  The 7th.  We've been asked to reserve

4 the 7th and 8th.

5          THE COURT:  8th and 9th is Tuesday and Wednesday.

6          MR. BENNETT:  Okay.  So then -- then I guess we'd --

7 I'd propose the 10th.

8          MS. LEVINE:  Your Honor, I think the concept is that

9 we do the legal oral argument just before the pre-trial is

10 due, then have a little bit of time to negotiate the pre-trial

11 and then start the trial.

12     I would -- I would respectfully request that you give us

13 a little bit of flexibility to talk amongst ourselves.  We

14 perhaps can consult further with the Court on the dates so we

15 don't interfere with the mediation.

16          THE COURT:  You mean like take a break right now?

17          MS. LEVINE:  If that's -- if that's appropriate.  I

18 just don't have the scheduling in front of me.

19          THE COURT:  That's fine with me.  I -- I just want

20 to repeat my caution to you that to the extent you pick a

21 specific date as opposed to a date range, I may have trouble

22 accommodating you.  I may not, but I may.  So the more

23 flexibility you can give me the better.

24          MS. LEVINE:  Well, people were saying, Your Honor,

25 we're in agreement, is please don't interfere with the

1 mediation dates, that may be where the real concern --

2          THE COURT:  Right.  Well, right.

3          MS. LEVINE:  And secondly, I think we'd like to be

4 as close to the pre-trial conference as possible so we're

5 through and after the discovery period ends to the extent the

6 pre-trial deadline has to move slightly --

7          THE COURT:  Okay.  So you're --

8          MS. LEVINE:  -- to accommodate mediation and

9 discovery.  We would not oppose that.

10          THE COURT:  You're -- you're thinking sometime

11 between the 10th, 11th, 12th of October and the 17th is when your

12 joint final pre-trial statement is due.

13          MS. LEVINE:  Any objection?

14          MS. CECCOTTI:  Yeah.  Your Honor, I think we're

15 trying to confirm a time here.  It may just be that between

16 the mediation schedule and everything else including what we

17 -- we know the Court's available on the 23rd because you've

18 already said that.

19          THE COURT:  Right.

20          MS. CECCOTTI:  It may just be that that's where we

21 end up just by default and then the trial.  And we'll just

22 deal with those issues --

23          THE COURT:  You know, why don't -- why don't -- why

24 don't we just agree upon that right now.

25          MS. LEVINE:  That's fine.

1          THE COURT:  Why don't we just say the 23rd for these

2  eligibility objections.  I will try to give you a decision at

3  the conclusion then on which of the legal issues do require a

4  trial and we'll just barrel right into the trial.  Is that

5  okay?

6          MR. BENNETT:  I think I could to -- to -- if we want

7  to try to streamline the trial and -- and be in a position to

8  have fewer witnesses and -- and -- and possibly inconvenience

9  fewer people, it would make sense to try to have as many

10  issues resolved as possible on a legal basis.

11      It may be totally futile, but I doubt it.  And so I -- I

12  was just --

13          THE COURT:  I -- I -- I certainly -- I certainly

14  will not commit to giving you a ruling on the substance of the

15  legal issues immediately after the argument.  I don't perceive

16  doing that until the decision on the -- on the issues that

17  revolve -- resolve around the issues of fact.

18          MR. BENNETT:  So I -- I think it would help everyone

19  if we -- if we knew what issues -- what factual issues arose

20  that require some distance ahead of the pre-trial order.  So I

21  think that dates which do work around the proposed mediation

22  schedule of the 11th or 12th -- 10th, 11th, 12th, I think one of

23  those may be a weekend, that's a good time because it --

24  whatever guidance -- it gives us --

25          THE COURT:  Well, let's -- let's ask the creditors.

1  Can you -- can you agree to have an oral argument on the

2  preliminary legal issues on the 11th, Friday, the 11th of

3  October, or Monday the 14th?

4          MS. CECCOTTI:  Your Honor, I'm sorry.  Could you

5  repeat the dates again?  I apologize.

6          THE COURT:  Friday, the 11th, or Monday, the 14th.

7  The 14th is Columbus Day.

8          MS. CECCOTTI:  All right.

9          THE COURT:  A federal holiday.

10          MS. CECCOTTI:  Does that preclude us from the Court

11  -- of using the courtroom?

12          THE COURT:  It creates --

13          MS. CECCOTTI:  It creates a problem.

14          THE COURT:  -- issues that are not worth attempting

15  to address.

16          MS. CECCOTTI:  Right, okay.

17          THE COURT:  So it would be the 15th, two days before,

18  or the 11th, Friday -- Friday the 11th, or Tuesday the 15th.

19          MS. CECCOTTI:  15th, I think it would have to be the

20  15th then with the discovery cut off date.

21          THE COURT:  Can you live with that, Mr. Bennett?

22          MR. BENNETT:  I'll make it work, Your Honor.

23          THE COURT:  Sir?

24          MR. MONTGOMERY:  Your Honor, subject to the

25  (Inaudible).

1          THE COURT:  Right, all right.  Thank you.  All

2    right.  So we'll move the oral arguments to Tuesday, the 15th

3    at 10:00 a.m.  We'll -- we'll have to do the best we can to --

4    to get a courtroom on that date.

5        Is there any objection if I go ahead with my plan to hear

6    from the individuals who filed eligibility objections on the

7    date previously scheduled?  Which was what, Chris?

8          THE CLERK:  The 19th.

9          THE COURT:  The 19th of September.

10          MR. MONTGOMERY:  Again, Your Honor (Inaudible).

11    Some of those individuals fall within (Inaudible).

12          THE COURT:  Right.

13          MR. MONTGOMERY:  (Inaudible).

14          THE COURT:  Yeah.  Again, it wouldn't be my

15    intention to rule on those, I just want to give them an

16    opportunity to be heard and hear them.  Some of you may want

17    to attend, some of you may not feel the need to do that.  Of

18    course the city has an opportunity to respond as they see fit,

19    but I'd like to do that because if I reschedule that, then we

20    have to send out another mailing and confuse them even more.

21    Any objections?  All right.  Then -- then I -- I think, Chris,

22    we will still go ahead with that.

23        All right.  Are there any other open issues for today

24    then?

25          MS. CECCOTTI:  The -- we had an exchange earlier on

1  the UAW's 109(c)(4) objection, Your Honor.  I didn't know what

2  you were planning to -- I sincerely hoped you had planned

3  to --

4          THE COURT:  I don't -- I don't -- I don't either.  I

5  want to think about that some more.  I appreciate the position

6  you take on it and it does require further consideration on my

7  part.

8          MS. CECCOTTI:  Okay.  Thank you.

9          THE COURT:  Anybody else?  Somebody is stepping

10  forward.  Sir.

11         MR. PLECHA:  Good morning, Your Honor.  Ryan Plecha

12  on behalf of the Retiree Association parties.

13      I just wanted to bring to the Court's attention the issue

14  I brought up about the concern of coordinating rebuttal.  In

15  light of the new date I just wanted to make sure that the

16  Court considered that in making its determination.

17         THE COURT:  Oh, that's right.  You all were going to

18  talk about that and get back to me on that.  Thank you.

19      The question was, do you want to do rebuttal on the same

20  day, or do you want an opportunity to coordinate your rebuttal

21  to the next day.

22         MS. LEVINE:  Your Honor, let's reserve it for the

23  next day.  And if it turns out that we coordinate in four

24  minutes in the whole, then we haven't lost --

25         THE COURT:  That works for me too.

1          MR. PLECHA:  Thank you, Your Honor.

2          THE COURT:  So I will assume that all the arguments

3   will be on the one day, but if you tell me you need an

4   opportunity to go to the next day, I will certainly grant you

5   that.  And let's put that in the order as well.  Anything

6   further from anyone?  All right, we're done.  Thank you.

7          THE CLERK:  All rise.  Court is adjourned.

8       (Court Adjourned at 12:37 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7   We certify that the foregoing is a correct transcript from the

8   electronic sound recording of the proceedings in the

9   above-entitled matter.

10

11  /s/Deborah L. Kremlick, CER-4872          Dated: 9-19-13
    Letrice Calloway
12

13

14

15

16

17

18

19

20

21

22

23

24

25