**IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | : | Case No. 13-53846 |
| Debtor. | : | Hon. Steven W. Rhodes |

**BRIEF IN OPPOSITION TO DEVERY JONES MOTION FOR RELIEF FROM THE AUTOMATIC STAY[1]**

The Stay Relief Motion ("Motion") is one of several motions for relief from the Automatic Stay filed shortly after the commencement of this chapter 9 case by parties seeking to avoid the consequences of the bankruptcy filing on pending litigation. Such relief would undermine the breathing spell afforded to the City and can only be granted upon a demonstration of sufficient cause and where the scope of the requested relief is appropriate. The Plaintiff in this action fails to identify any basis to afford him the requested right to proceed as if the bankruptcy had not occurred.

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Debtor's Objection to Devery Jones Motion for Relief from the Automatic Stay.

The Plaintiff alleges, in a conclusory manner, that relief from the Automatic Stay should be granted for "cause." Stay Relief Brief at 2. Beyond this reference, the Plaintiff does not address the concept of cause, as interpreted by courts in this circuit, or attempt to satisfy its elements. Instead, the Plaintiff argues that the Automatic Stay should be lifted to allow him to establish the City's alleged liability and then pursue a recovery against the City because the City is self-insured under Michigan's No-Fault Act. The Plaintiff, however, offers no support for his request that the Court allow him not only to liquidate, but also collect, his unsecured prepetition claim wholly outside the ordinary course prescribed for unsecured creditors under a confirmed chapter 9 plan of adjustment. No such relief – effectively to be exempted from the entire chapter 9 process – is available.

As of the Petition Date, approximately 700 lawsuits were pending against the City. See Creditor List at Schedule G. Absent the enforcement of the Automatic Stay, the City would be spending its already limited resources defending these cases rather than focusing its efforts and resources on its restructuring. Allowing the Lawsuit, or any of the other routine litigations pending against the City, to proceed *ad hoc* outside the claims resolution process undermines one of the most fundamental protections afforded to the City as a chapter 9 debtor. This result is not changed because the Plaintiff's claim allegedly arises under Michigan's No-Fault Act. The claim is still simply a prepetition

unsecured claim. Consequently, the Plaintiff has not provided a basis to proceed outside of the normal claims resolution process established under the Bankruptcy Code and should not be afforded relief from the stay.

## ARGUMENT

Section 362(a) of the Bankruptcy Code provides in relevant part that:

> a petition filed under . . . this title . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 362(a). The Automatic Stay "is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." Javens v. City of Hazel Park (In re Javens), 107 F.3d 359, 363 (6th Cir. 1997) (quoting H.R. REP. NO. 95-595, at 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6296).

Section 362(d) of the Bankruptcy Code authorizes a bankruptcy court to grant relief from the Automatic Stay in limited circumstances. See 11 U.S.C. § 362(d). In particular, section 362(d)(1) of the Bankruptcy Code provides that a party in interest may obtain relief from the Automatic Stay "for cause, including

the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d)(1).

"The Bankruptcy Code does not define 'cause' as used in [section] 362(d)(1). Therefore, under [section] 362(d), 'courts must determine whether discretionary relief is appropriate on a case by case basis.'" Chrysler LLC v. Plastech Engineered Prods., Inc. (In re Plastech Engineered Prods., Inc.), 382 B.R. 90, 106 (Bankr. E.D. Mich. 2008) (quoting Laguna Assocs. L.P. v. Aetna Casualty & Surety Co. (In re Laguna Assocs. L.P.), 30 F.3d 734, 737 (6th Cir. 1994)). The determination of whether to grant relief from the Automatic Stay "resides within the sound discretion of the Bankruptcy Court." Sandweiss Law Center, P.C. v. Kozlowski (In re Bunting), No. 12-10472, 2013 WL 153309, at *17 (E.D. Mich. Jan. 15, 2013) (quoting In re Garzoni, 35 F. App'x 179, 181 (6th Cir. 2002)).

> To guide the bankruptcy court's exercise of its discretion . . . the Sixth Circuit identifies five factors for the court to consider: (1) judicial economy; (2) trial readiness; (3) the resolution of the preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; and (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors.

Bunting, 2013 WL 153309, at *17 (quoting Garzoni, 35 F. App'x at 181) (internal quotation marks omitted). In determining whether cause exists, however, "the bankruptcy court should base its decision on the hardships imposed on the parties

with an eye towards the overall goals of the Bankruptcy Code." Plastech, 382 B.R. at 106 (quoting In re C & S Grain Co., 47 F.3d 233, 238 (7th Cir. 1995)).

Here, consideration of the foregoing factors confirms that no cause (much less sufficient cause) exists to justify relief from the Automatic Stay to allow the Lawsuit to proceed. With respect to the first and third factors, the interests of judicial economy and the existence of preliminary bankruptcy issues weigh in favor of denying relief from the Automatic Stay.

A primary purpose of bankruptcy is the centralization of claims against the debtor for determination by the bankruptcy court through the claims allowance process. See In re Hermoyian, 435 B.R. 456, 464 (Bankr. E.D. Mich. 2010) (stating that an underlying policy of the Bankruptcy Code is the provision of a centralized forum for claims resolution and orderly distribution of assets). The Plaintiff's claim can be resolved most efficiently through the centralized claims resolution process, a fundamental aspect of bankruptcy, which affords both the claimant and debtor necessary protections.

With respect to the second factor, the discovery cutoff was less than a month before the Petition Date and the parties have yet to participate in case evaluation or a settlement conference, as mandated by the Circuit Court's scheduling order. The Circuit Court has not set a trial date. Further, with respect to the fourth factor, although the Plaintiff's providers have submitted some documentation to the City,

the Plaintiff has not provided any evidence of the amounts allegedly due for attendant care.  The City also has not determined whether any of the amounts allegedly due were reasonable and necessary.

The Plaintiff has not demonstrated that he will be prejudiced by the continuation of the Automatic Stay with respect to the Lawsuit.  The Automatic Stay benefits the creditor body at large by ensuring their equal treatment and preventing a race to the courthouse.  See H.R. REP. NO. 95-595, at 340 (1977) ("The automatic stay also provides creditor protection.  Without it, certain creditors would be able to pursue their own remedies against the debtor's property.  Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.").  In the Stay Relief Motion, the Plaintiff does not attempt to justify his request to receive preferential treatment over other litigants against the City and other creditors in general.  Instead, the Plaintiff relies on two decisions that did not involve self-insured debtors.  See Stay Relief Motion at ¶ 15.  In Gernstrom, the Seventh Circuit affirmed the district court's decision to grant stay relief because the plaintiff agreed to limit its recovery to proceeds available under an insurance policy provided to the debtor by a third party.  See In re Gernstrom Storage and Van Co., 938 F.2d 731, 735-36 (7th Cir. 1991) ("However under [plaintiff's] agreement to claim damages only to the limit of [debtor's] liability coverage, its potential recovery against [debtor] will not extend *beyond* the

proceeds of [debtor's] insurance policies.") (emphasis supplied). Similarly, in Holtkamp, the debtor's insurance company assumed full financial responsibility for defending the litigation and the bankruptcy court's order expressly prohibited the plaintiff from attempting to enforce any judgment. In re Holtkamp, 669 F.2d 505, 508-09 (7th Cir. 1982) ("Allowing the civil action to go forward did not jeopardize [debtor's] bankrupt estate because his insurance company assumed full financial responsibility for defending that litigation."). These decisions actually support the City's position that the Stay Relief Motion should be denied; as a self-insurer, the City is responsible for its defense costs and, if the Plaintiff were to prevail, there would be additional financial consequences to the City. Further, because the Plaintiff's claims are subject to treatment through the plan of adjustment in this case, the imposition of the fundamental protections offered by the Automatic Stay expose the Plaintiff to no particularized harm over and above that of any other similarly situated creditor of the City.

By contrast, requiring the City to continue to defend the Lawsuit in the Circuit Court would distract the City from its efforts to restructure, diverting its scant resources at a time when it is both working to negotiate and deliver a plan of adjustment quickly and engaged in a substantial amount of discovery and litigation (all on its own expedited timeframe) arising in the bankruptcy case itself. The City does not need further impediments to its restructuring efforts. In addition, if there

were any merit to the Plaintiff's cause of action, any judgment issued would constitute a prepetition claim against the City, if and when properly asserted as such.

The alternative relief sought by the Plaintiff, modification of the Automatic Stay to allow the Plaintiff to add Home-Owners Insurance as a party and proceed with litigation against it, should also be denied. This is not a situation where a party is seeking relief from the Automatic Stay to proceed against insurance coverage of a debtor while waiving any claim against the estate. Although the exact nature of the claim the Plaintiff may have against Home-Owners Insurance is not set forth (and no proposed amended complaint is attached to the Stay Relief Motion), imposition of liability against Home-Owners Insurance could give rise to a subrogation claim against the City or issue or claim preclusion with respect to the primary claim of the Plaintiff under the Michigan's No-Fault Act. Consequently the City may be compelled to participate in the litigation against Home-Owners Insurance to protect itself from the imposition of liability—the same result that would occur if the stay were lifted entirely. In short, any action by the Plaintiff in the Lawsuit will effectively deny the City the benefit of the Automatic Stay and should, for the reasons previously discussed, be prevented.

In short, allowing the Lawsuit to proceed would undermine the protections of the Automatic Stay and interfere with the City's efforts to restructure. The City

sought relief under chapter 9 in part to obtain the "breathing spell" afforded by the Automatic Stay and the consequent protection from its creditors while it restructures its affairs and prepares a plan of adjustment. The City's finances would be further depleted and its personnel distracted from their mission to operate the City and restructure its affairs if it were denied this basic protection of chapter 9 and forced to defend itself against the Plaintiff and the other essentially identical similar civil actions in various courts. Accordingly, the overall goals of chapter 9 weigh largely in favor of denying stay relief to the Plaintiff and other similarly situated litigants.

WHEREFORE, for the foregoing reasons, the City respectfully requests that this Court (a) deny the Motion; and (b) grant such other relief to the City as the Court may deem proper.

Dated: September 20, 2013 Respectfully submitted,

By: /s/Stephen S. LaPlante
Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com


ATTORNEYS FOR THE CITY OF DETROIT