# EXHIBIT6.1

**Complaint,**
***Catherine Phillips, et al. v. Richard Snyder and Andrew Dillon*,**
**Case No.13-CV-11370**
**[Doc. #1]**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Catherine Phillips, Staff Representative Michigan
AFSCME Council 25, and Chief Negotiator with the
City of Detroit; Joseph Valenti, Co-Chief Negotiator
with the Coalition of Unions of the City of Detroit;
Michigan AFSCME Council 25; Russ Bellant,
President of the Detroit Library Commission;
Tawanna Simpson, Lamar Lemmons, Elena Herrada,
Detroit Public Schools Board Members; Donald Watkins,
and Kermit Williams, Pontiac City Council Members;
Duane Seats, Dennis Knowles, Juanita Henry, and
Mary Alice Adams, Benton Harbor Commissioners;
William "Scott" Kincaid, Flint City Council President;
Bishop Bernadel Jefferson; Paul Jordan; Rev. Jim Holley,
National Board Member, Rainbow Push Coalition;
Rev. Charles E. Williams II, Michigan Chairman,
 National Action Network; Rev. Dr. Michael A. Owens,
Rev. Lawrence Glass, Rev. Dr. Deedee Coleman,
Bishop Allyson Abrams, Executive Board, Council
of Baptist Pastors of Detroit and Vicinity;

Case No.
Judge:

Plaintiffs,

vs.

RICHARD D. SNYDER, as Governor of the
State of Michigan, and ANDREW DILLON,
as the Treasurer of the State of Michigan, acting in
their individual and/or official capacities,

*Complaint for Declaratory*
*& Injunctive Relief*

Defendants.

_____/

Herbert A. Sanders (P43031)
**THE SANDERS LAW FIRM PC**
615 Griswold St. Ste. 913
Detroit, Michigan 48226
(313) 962-0099/Fax: (313) 962-0044
haslawpc@gmail.com
*Attorneys for Plaintiffs*

1

John C. Philo (P52721)
Anthony D. Paris (P71525)
**SUGAR LAW CENTER**
**FOR ECONOMIC & SOCIAL JUSTICE**
4605 Cass Ave., 2nd Floor
Detroit, Michigan 48201
(313) 993-4505/Fax: (313) 887-8470
jphilo@sugarlaw.org
tparis@sugarlaw.org
*Attorneys for Plaintiffs*

Julie H. Hurwitz (P34720)
William H. Goodman (P14173)
**GOODMAN & HURWITZ PC on behalf of**
**the DETROIT & MICHIGAN NATIONAL**
**LAWYERS GUILD**
1394 E. Jefferson Ave.
Detroit, Michigan 48207
(313) 567-6170/Fax: (313) 567-4827
jhurwitz@goodmanhurwitz.com
bgoodman@goodmanhurwitz.com
*Attorneys for Plaintiffs*

Richard G. Mack, Jr. (P58657)
Keith D. Flynn (P74192)
**MILLER COHEN, P.L.C.**
600 W. Lafayette Blvd., 4th Floor
Detroit, Michigan 48226
(313) 964-4454/Fax: (313) 964-4490
richardmack@millercohen.com
*Attorneys for Plaintiffs*

Darius Charney
Ghita Schwarz
**CENTER FOR CONSTITUTIONAL**
**RIGHTS**
666 Broadway, 7th floor
New York, New York 10012
(212) 614-6464/Fax: (212) 614-6499
dcharney@ccrjustice.org
*Attorneys for Plaintiffs*

Cynthia Heenan (P53664)
 Hugh M. Davis, Jr. (P12555)
**CONSTITUTIONAL LITIGATION**
**ASSOCIATES PC**

450 W Fort St Ste 200
Detroit, MI 48226
(313) 961-2255/Fax: (313) 961-5999
conlitpc@sbcglobal.net
*Attorneys for Plaintiffs*

Bertram L. Marks (P47829)
**Litigation Associates PLLC**
30300 Northwestern Hwy Ste 240
Farmington Hills, MI 48334
Phone: (248) 737-4444
Fax: (248) 932-6365
BertramMarks@aol.com
*Attorneys for Plaintiffs*

_____/

**THERE WAS ANOTHER PENDING CIVIL ACTION ARISING OUT OF THE SAME TRANSACTIONS OR OCCURRENCE AS ALLEGED IN THIS COMPLAINT, BEFORE THE HONORABLE JUDGE ARTHUR J TARNOW, THAT CIVIL ACTION BEING CASE NO. 12-11461.**

## COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

NOW COME Plaintiffs, and by and through their attorneys and for their Complaint, do hereby allege as follows.

### I. NATURE OF PLAINTIFFS' CLAIMS

1.      This is a federal civil rights and voting rights cause of action brought pursuant to 42 USC §1983 for violations of the Plaintiffs' federal and constitutional rights under the United States Constitution, Art. 4, §4; Amend. I; Amend. XIII; Amend. XIV; and pursuant to the *Voting Rights Act of 1965*, 42 U.S.C. §§ 1973 *et. seq.*

2.      The *Local Financial Stability and Choice Act*, Act No. 436, Public Acts of 2012, MCL §§ 141.1541 *et. seq.* (Public Act 436) effectively establishes a new form of government within the State of Michigan. The new form of government allows Michigan cities and other

3

forms of municipal corporations to be ruled by one unelected official, who is vested with broad legislative power and whose orders, appointments, expenditures, and other decisions are not reviewable by local voters.

    3.     Plaintiffs' rights under the United States Constitution, include:

        a.  A due process right to engage in collective bargaining.

        b.  A due process right to an elected, republican form of government;

        c.  A right to freedom of speech.

        d.  A right to petition local government.

        e.  A right to equal protection of laws granting Michigan citizens the right to vote in local elections and to remove emergency managers.

Each of these rights is violated by provisions of Public Act 436.

    4.     The Voting Rights Act of 1965 protects Plaintiffs from discriminatory laws that disenfranchise voters. Plaintiffs' voting rights are also violated by provisions of Public Act 436.

## II. JURISDICTION AND VENUE

    5.     Federal question jurisdiction is conferred by 28 USC §§ 1331, 1343(a)(3), 1343(a)(4), 1344, 2201 and 2202 over Plaintiffs' Constitutional and Voting Rights Act claims.

    6.     Venue is proper pursuant to 28 USC §1391, since all Defendants reside or are located in the Eastern District of Michigan and the events giving rise to this action occurred, in part, within this District.

## III. PARTIES

    7.     Plaintiff Catherine Phillips is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan. Plaintiff Catherine Phillips is also a Staff Representative for Michigan AFSCME Council 25, and Chief Negotiator with the City of Detroit.

4

8.     Plaintiff Joseph Valenti is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan. Plaintiff Valenti is also Co-Chief Negotiator for the Coalition of unions of the City of Detroit.

9.     Plaintiff, Michigan AFSCME Council 25 is an unincorporated, voluntary labor association certified by the Michigan Employment Relations Commission, pursuant to the Michigan Public Employee Relations Act, MCLA 432.201 *et seq*. Plaintiff Michigan AFSCME Council 25 has associational standing on behalf of its members as well as its own standing as party to collective bargaining agreements with numerous public entities that will be affected by PA 436, inclusive of, but not limited to the City of Detroit.

10.     Plaintiff Russ Bellant is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan. Plaintiff Bellant is also President of the Detroit Library Commission.

11.     Plaintiff Tawanna Simpson is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan. Plaintiff Simpson is also a Detroit Public Schools Board Member.

12.     Plaintiff Lamar Lemmons is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan. Plaintiff Lemmons is also a Detroit Public Schools Board Member.

13.     Plaintiff Elena Herrada is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan. Plaintiff Herrada is also a Detroit Public Schools Board Member.

5

14.     Plaintiff Donald Watkins is a citizen of the United States, a resident of the City of Pontiac, County of Wayne, and the State of Michigan. Plaintiff Watkins is also a member of the Pontiac City Council.

15.     Plaintiff Kermit Williams is a citizen of the United States, a resident of the City of Pontiac, County of Wayne, and the State of Michigan. Plaintiff Williams is also a member of the Pontiac City Council.

16.     Plaintiff Duane Seats is a citizen of the United States, a resident of the City of Benton Harbor Michigan, County of Berrien, and the State of Michigan. Plaintiff Seats is also a Benton Harbor Commissioner.

17.     Plaintiff Dennis Knowles is a citizen of the United States, a resident of the City of Benton Harbor Michigan, County of Berrien, and the State of Michigan. Plaintiff Knowles is also a Benton Harbor Commissioner.

18.     Plaintiff Juanita Henry is a citizen of the United States, a resident of the City of Benton Harbor Michigan, County of Berrien, and the State of Michigan. Plaintiff Henry is also a Benton Harbor Commissioner.

19.     Plaintiff Mary Alice Adams is a citizen of the United States, a resident of the City of Benton Harbor Michigan, County of Berrien, and the State of Michigan. Plaintiff Adams is also a Benton Harbor City Commissioner.

20.     Plaintiff William "Scott" Kincaid is a citizen of the United States, a resident of the City of Flint Michigan, County of Genesee, and the State of Michigan. Plaintiff Kincaid is also President of the Flint City Council.

21.     Bishop Bernadel Jefferson is a citizen of the United States, a resident of the City of Flint Michigan, County of Genesee, and the State of Michigan.

6

22.     Plaintiff Paul Jordan is a citizen of the United States and a resident of the City of Flint, County of Genesee, and State of Michigan.

23.     Plaintiff Rev. Jim Holley is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan.  Plaintiff Rev. Holley is also a National Board Member of the Rainbow Push Coalition.

24.     Rev. Charles E. Williams II is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan.  Plaintiff Rev. Williams is also the Michigan Chairman of the National Action Network.

25.     Plaintiff Rev. Dr. Michael A. Owens is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan.  Plaintiff Rev. Dr. Michael A. Owens is also President of the Council of Baptist Pastors of Detroit and Vicinity.

26.     Plaintiff Rev. Lawrence Glass is a citizen of the United States, a resident of the City of Redford, County of Wayne, and the State of Michigan.  Plaintiff Rev. Lawrence Glass is also First Vice-President of the Council of Baptist Pastors of Detroit and Vicinity.

27.     Plaintiff Rev. Dr. Deedee Coleman is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan.  Plaintiff Rev. Dr. Deedee Coleman is also Second Vice-President of the Council of Baptist Pastors of Detroit and Vicinity.

28.     Plaintiff Bishop Allyson Abrams is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan.  Plaintiff Bishop Allyson Abrams is also Secretary of the Council of Baptist Pastors of Detroit and Vicinity.

29.     Defendant Richard D. Snyder is the Governor of the State of Michigan. Governor Snyder maintains his principal residence in the City of Ann Arbor in Washtenaw County,

7

Michigan, and at all times relevant hereto was acting individually and in his official capacity as State Governor and top policymaker for the State of Michigan.

30. Defendant Andrew Dillon is the Treasurer of the State of Michigan. Treasurer Dillon maintains his principal residence in Redford Township in Wayne County, Michigan, and at all times relevant hereto was acting individually and in his official capacity as State Treasurer and as a policymaker.

## IV. COMMON FACTS

31. Through its provisions, Public Act 436 establishes a new form of local government, previously unknown within the United States or the State of Michigan, where the people within local municipalities may be governed by an unelected official who establishes local law by decree.

### Legislative Background Of
### Municipal Financial Distress In Michigan

32. During the Great Depression in the 1930s, 4,770 cities defaulted on their debt. Among all states, Michigan had the fourth highest number of defaulting municipalities throughout the depression years. At that time, creditors of defaulting cities were commonly required to file a mandamus action in state courts seeking to compel the municipality to raise taxes to pay debt obligations. Courts then appointed receivers to oversee the finances of municipal debtors.

33. To improve procedures for creditors and municipal debtors, the federal government adopted Chapter 9 of the federal bankruptcy code in 1937. Chapter 9 permits the use of federal bankruptcy procedures for debt-ridden municipalities. Under Chapter 9, elected officials remain in office and retain significant autonomy while bankruptcy procedures oversee

8

the development of a plan to adjust debts and pay creditors. Before a Chapter 9 petition may be filed however, the state must authorize the municipality to file for bankruptcy.

34. Prior to 1988, unless proceeding through Chapter 9, municipalities were placed into receivership by the courts, not the state legislature or executive branch. Compensation for court-appointed receivers was derived from property that the courts placed within the care of the receiver.

35. Since 1937, two Michigan cities have defaulted on bond payments or been placed under a court imposed receivership due to insolvency. Muskegon Township defaulted on revenue bond payments in the early 1960s and the City of Ecorse was placed in receivership by a Wayne County Circuit Court in 1986.

36. Neither municipality sought the protections of Chapter 9 bankruptcy. Muskegon Township entered into a settlement agreement with its creditors that resolved their defaults. Ecorse remained under court receivership through 1990 and was subject to further state oversight until the late 1990s.

37. In response to the troubled insolvency of the City of Ecorse, the state enacted Public Act 101 of 1988 (PA 101). Public Act 101 allowed the state to intervene when local municipalities were found to be in financial distress. The statute allowed the state to appoint emergency financial managers over cities experiencing a financial emergency.

38. In 1990, the legislature replaced PA 101 with the *Local Government Fiscal Responsibility Act*, Act No. 72, Public Acts of 1990 (PA 72). Public Act 72 authorizes state officials to intervene when local governments face a financial emergency. Pursuant to PA 72, Michigan's local financial emergency review board can appoint an emergency financial manager (EFM) only after the Governor declares a financial emergency within the local government.

9

39.     Under PA 72, local elected officials are not removed from office and the EFM's powers only extended to matters of municipal finances. Their powers did not extend to purely administrative or policy matters.  Furthermore, EFMs had the power to renegotiate, but not unilaterally break contracts.

40.     In the late 1990s, legislation was passed to revise municipal revenue sharing laws, severely reducing the amount of funds shared by the state with local government. Local governments saw further revenue reductions when income and property tax revenues sharply declined during the recession of 2000-2003. As a result, municipalities experienced significant financial stress during the late 1990s and early 2000s.

41.     During this time period, the state local financial emergency review board appointed PA 72 EFMs in the cities of Hamtramck, Highland Park, and Flint.

42.     These original Public Act 72 EFMs remained in place as follows:

    a.  Hamtramck from 2000 until 2007 (7 years)[1];

    b.  Highland Park from 2001 until 2010 (9 years);[2] and

    c.  Flint from 2002 until 2004 (2 years)[3].

43.     With the onset of the historic global recession that began in 2007 and resulted in record foreclosures and steep unemployment, cities and municipal corporations in Michigan saw further sharp reductions to income and property tax revenue.  State revenue sharing laws were further amended in recent years to reduce revenue sharing with local governments and thereby balance state budgets.  As a result, Michigan municipalities again faced widespread financial stress.

---

[1] In 2010, the City of Hamtramck requested permission from the state to file for Chapter 9 bankruptcy.  The state refused.

[2] One year later, DTE Energy repossessed the City of Highland Park's street lights due to the city's inability to pay its bills

[3] The City of Flint was again declared in a financial emergency in 2011.

10

44.     Again, the state local financial emergency review board appointed PA 72 EFMs in various cities, including Pontiac, Ecorse, and Benton Harbor. Public Act 72 EFMs were also appointed over the Village of Three Oaks (2008) and the Detroit Public Schools and the review board entered into a PA 72 consent agreement with the city of River Rogue.

45.     The second wave of Public Act 72 EFMs were appointed as follows:

   a.   Pontiac from 2009 until the present (4+ years)

   b.   Ecorse from 2009 until the present (4+ years)

   c.   Benton Harbor from 2010 through the present (3+ years);

   d.   Village of Three Oaks from 2008 until 2009 (1 year); and

   e.   Detroit Public Schools from 2009 until the present (4+ years).

The state's consent agreement with the city of River Rouge has also remained in place from 2009 to the present. Notably, since the onset of the global recession in 2007, the Village of Three Oaks is the only municipality that has emerged from a financial emergency following the appointment of an emergency financial manager, appointment of an emergency manager, or the entering of a consent agreement.

46.     Following elections in November of 2010 and the turnover of state offices in January 2011, the Michigan legislature introduced House Bill 4214 (2011) on February 9, 2011. The bill was widely seen as a response to a court ruling finding that the Detroit Public Schools' School Board, and not the EFM, possessed the power under state law to determine what curriculum would be taught and which texts would be used in the city's public schools. The decision provoked elements of the state legislature who then sought greater control over the content of the curriculum taught in Detroit's schools.

11

47.     House Bill 4214 was rushed through the legislature and quickly presented to the Governor for signature. Defendant Governor Richard D. Snyder signed the *Local Government and School District Fiscal Accountability Act*, Act No. 4, Public Acts of 2011 (PA 4) into law on March 16, 2011. Public Act 4 repealed Public Act 72 and was given immediate effect. Public Act 4 automatically converted all EFMs to Public Act 4 Emergency Managers (EM) and greatly expanded the scope of their powers. The Act also brought all existing consent agreements under the new law.

### *Public Act 4's Radical Revision of State Law*

48.     Public Act 4 radically revised state law governing the appointment of EMs over cities and school districts during times of financial stress.

49.     Public Act 4 provided that once the Governor had declared a financial emergency, the Governor could then appoint an individual to be the municipality's emergency manager. The Governor was granted broad discretion to declare a financial emergency and, in fact, a municipality was not actually required to be in a fiscal crisis before an EM could be appointed.

50.     Tellingly, the Act changed the title of municipal "emergency financial managers" to "emergency managers" and expanded the scope of their powers to cover all the conduct of local government.

51.     The PA 4 EM's powers extended not only to financial practices and fiscal policy, but rather permitted such managers to fully act "for and in the place of" the municipality's elected governing body. The grant of powers also included a general grant of legislative power (the power to unilaterally adopt local laws and resolutions) to PA 4 EMs.

12

52.     Public Act 4's grant of legislative power to EMs extended to the full scope of legislative power possessed by local elected officials. In the state of Michigan, local legislative power is of the same scope and nature as the police power possessed by the state - limited only by the jurisdictional limits of the municipality and where preempted by the general laws of the state. Public Act 4's grant of general legislative power to EMs thus extended to a grant of the full of scope of the local government's police power, previously reserved to local government's elected legislative body and elected mayor.

53.     Emergency managers were further granted powers to act in disregard of the local government's local laws – including city charters, ordinances, administrative regulations, school district bylaws, etc.

54.     The Act further granted a state financial review team the power to enter into a consent agreement with local government, again without a finding that a financial emergency existed.

55.     At the time PA 4 became law, reports from the State indicated that, based on their financial conditions, over eighty (80) municipalities and/or school systems were eligible to have emergency managers.

56.     After passage of PA 4, existing EFMs in the cities of Benton Harbor, Ecorse and Pontiac and over the Detroit Public Schools were converted to EMs and vested with PA 4 powers. The state's consent agreement with the city of River Rouge was also converted to a PA 4 agreement.

57.     With the continuing global economic recession and steep declines in state revenue sharing and municipal property tax and income tax revenue collection, PA 4 EMs were newly appointed as follows:

13

      a.  Flint from 2011 until the present (2+ years);

      b.  Highland Park Public Schools from 2012 until the present (1+ year); and

      c.  Muskegon Heights Public Schools until the present (1+ year).

Additionally, the state entered PA 4 consent agreements with the cities of Detroit[4] and Inkster.

58.     After becoming vested with Public Act 4 powers, EMs in Benton Harbor, Ecorse, Flint, and Pontiac have all exercised general legislative power to enact, repeal and suspend local laws and resolutions and have voided various contracts.

### Michigan Citizen's Rejection of Public Act 4 And the State's Resurrection of Public Act 72

59.     In opposition to Public Act 4, citizens began circulating petitions in May 2011. The petitions were to place a referendum on the ballot that would reject the law. Over 200,000 signatures were gathered and the petitions were submitted to the Secretary of State in February 2012. However to prevent Michigan citizens from having the opportunity to vote on the matter, the petitions were challenged by a lobbying group.

60.     The petitions were challenged on the basis that the title of the petitions were not printed in 14 point font but rather were printed in slightly smaller font of approximately 13.75 or larger.[5]

61.     Along party-line votes, the members of the state Board of Canvassers deadlocked and as a result, the petitions were not certified for the ballot.

62.     The matter was then appealed to the Michigan Court of Appeals. A panel of the Court of Appeals recognized and found that existing law required the referendum to be placed on

---

[4] The state has struggled to identify the state law(s) providing legal authority for the transfer of powers and oversight that was created by the agreement with the city of Detroit. Over time, the state seems to have settled into a belief that PA 4 provided such authority.

[5] No evidence was submitted and it was not argued that signatories of the petitions had been confused or misunderstood what they had signed. In fact, the difference in point size as argued by the challenger was invisible to the naked eye of many.

14

the ballot. However, the panel sought to overturn existing law, and thereby keep the referendum off the ballot. The panel requested that the full Court of Appeals be polled to convene a special panel to reconsider existing law. The full Court of Appeals however declined to convene the special panel.

63. An appeal was taken to the state Supreme Court. The Michigan Attorney General in his individual capacity and Governor in his individual and/or official capacity joined the challengers as amici at the state Supreme Court.

64. On August 3, 2012, the Michigan Supreme Court issued an opinion ordering the state Board of Canvassers certify the petitions and place the referendum on the ballot.

65. However on August 6, 2012, the state Attorney General issued a formal opinion stating that once the petitions were certified[6], PA 72 would spring back into effect and would remain in effect if voters rejected PA 4 at the November 2012 election.

66. The state Board of Canvassers certified the petitions on August 8, 2012 and by operation of Michigan law, PA 4 was then suspended until the November.

67. In response, state officials reappointed all existing PA 4EMs as PA 72 EFMs and proclaimed that all existing consent agreements would continue in place as PA 72 consent agreements.

68. After certification of the referendum, existing PA 4 EMs were converted to EFMs in the cities of:

    a.   Benton Harbor;

    b.   Ecorse;

    c.   Flint; and

---

[6] Pursuant to Michigan law, once the petitions were certified PA 4 was then suspended until the voters could decide the matter at the next general election.

15

d. Pontiac.

69. Additionally EMs over the following school districts were converted to Public Act 72 EFMs:

a. Detroit Public Schools;

b. Highland Park Public Schools; and

c. Muskegon Heights Public Schools.

70. Finally, the state's consent agreements with the cities of Detroit, Inkster and River Rogue were proclaimed converted to PA 72 agreements.

71. At the general election on November 6, 2012, Michigan voters overwhelmingly elected to reject PA 4.

### Michigan Legislature's Attempt to Overturn Citizen's Vote to Reject Public Act 4 by Enacting Public Act 436

72. In response to the decision of Michigan voters to reject PA 4, incensed state officials and segments within the state legislature quickly moved to reenact a new law with emergency manager provisions that are substantially identical to the rejected law.

73. During the lame-duck session, the state legislature moved quickly to reenact the emergency manager provisions of Public Act 4. The new bill passed the state House and Senate on December 13, 2012 and was signed into law as the *Local Financial Stability and Choice Act*, Act No. 436, Public Acts of 2012, on December 26, 2012.

74. Public Act 436 again changes the title of existing PA 72 "emergency financial managers" to "emergency managers" and again expands the scope of their powers to cover all the conduct of local government.

75. The PA 436 EM's powers are substantially identical to the powers that had been granted under PA 4. Public Act 436 EMs are empowered to fully act "for and in the place of"

16

the municipality's governing body. The grant of powers again includes a general grant of legislative power to emergency managers.

76.     Along with the general grant of legislative power to emergency managers, Public Act 436 exempts the EM from following existing city charters and local ordinances.

77.     The new law does not provide any process that EMs must follow in the adoption or repeal of local laws, but rather permits the EM to do so by private orders, not subject to open meetings requirements.

78.     Public Act 436 states that EMs appointed under PA 4 and EFMs appointed under PA 72 shall be considered EMs under PA 436 once the new law takes effect.

79.     Additionally, PA 436 permits the Governor to appoint persons appointed as EMs under PA 4 and as EFMs under PA 72 to serve as PA 436 EMs under the new law.

80.     Under PA 436, all EMs serve at the pleasure of the Governor and continue to serve until removed by the Governor or until the Governor finds that the financial emergency has been rectified.

81.     Public Act 436 permits the Governor to delegate his powers and duties to the state treasurer and the state treasurer oversees the activities of emergency managers.

82.     When PA 436 takes effect on March 28, 2013, EMs will be in place over the cities of Allen Park, Benton Harbor, Ecorse, Flint, Pontiac and Detroit and over the Detroit Public Schools, Highland Park Public Schools, and Muskegon Heights Public Schools. Finally, the state's consent agreements with Inkster and River Rouge will again be converted – now to PA 436 agreements.

83.     Under PA 436, elected officials in each of these communities will be displaced and/or be divested of governing and law-making authority and citizens will have effectively lost their right to vote for their local legislative bodies, chief executive officers, and school boards.

84.     Local elected officials are thereby effectively removed from office under PA 436 and this removal occurs without any showing of malfeasance or misfeasance causing or contributing to the financial circumstances faced by their municipality or school district. In so doing, the Act implicitly assumes that these local officials were guilty of corruption or gross incompetence that caused or contributed to the financial circumstances of their municipality or school district. Public Act 436 makes this assumption of guilt and removes elected officials without any finding of fault on the part of local elected officials and without any form of due process.

85.     In each of these communities, citizens will have effectively lost their right to vote for local elected officials or had that right diluted so as to render it an exercise in form without substance.

86.     There is no question that Michigan's emergency manager laws have disproportionately impacted the state's population of citizens from African-American descent.

87.     The Black/African-American population of each of the cities where an emergency manager or consent decree will be in place when PA 436 takes effect, is as follows:

        a.  Benton Harbor: 8,952 persons comprising 89.2% of the city's population;

        b.  Ecorse: 4,315 persons comprising 46.4% of the city's population;

        c.  Pontiac: 30,988 persons comprising 52.1% of the city's population;

        d.  Flint: 57,939 persons comprising 56.6% of the city's population;

        e.  Inkster: 18,569 persons comprising 73.2% of the city's population;

18

    f.   River Rouge: 3,994 persons comprising 50.5% of the city's population;

    g.   Detroit: 590,226 persons comprising 82.7% of the city's population,

    h.   Highland Park: 10,906 persons comprising 93.5% of the city's population;

    i.   Muskegon Heights: 8,501 persons comprising 78.3% of the city's population; and

    j.   Allen Park: 587 persons comprising 2.1% of the city's population.

The Black/African-American population of these cities totals 734,947 persons.

88.    As a result of the Defendants' actions under Public Act 436, fifty two (52%) of the state's Black/African-American population will come under the governance of an emergency manager or consent agreement. In each of these communities, citizens will have either lost or experienced severe restrictions imposed on their right to vote and to participate in public affairs.

89.    There is also no question that each of the aforementioned cities is economically poor communities where significant household wealth has been lost since the onset of the current recession. In these communities, the percentage of persons living below the poverty level is:

    a.   Benton Harbor – 48.7%;

    b.   Ecorse – 32.7%;

    c.   Pontiac- 32%;

    d.   Flint – 36.6%;

    e.   Inkster – 33.2%;

    f.   River Rouge – 40.1%;

    g.   Detroit – 34.5%; and

    h.   Highland Park – 43.7%;  and

    i.   Muskegon Heights – 45.6%.

The Michigan average is 15.7%. The City of Allen Park is thus the only city with an EM where

19

the poverty level is not at least double the state average.

90.     Like PA 4, Public Act 436 reestablishes a new form of local government that is repugnant to the constitutional liberties of all Americans.

91.     Despite a long national history of municipal financial crises following national and global economic depressions and recessions, no other state in the nation has engaged in similar experiments in undemocratic governance as a solution to economic downturns.

92.     Under Public Act 436, the people become subject to government that is composed of one unelected official who wields absolute power over all aspects of local government and whose decisions are without review by either local elected officials or local voters.

### Continued Frustration of Contractual Rights of City of Detroit Employees By Public Act 436 and Its Precursor Public Act 4

93.     The loss of rights suffered by the citizenry and the workforce of the City of Detroit reveals how emergency manager legislation threatens basic civil rights of Michiganders.

94.     In November 2011, the City of Detroit announced a financial crisis and requested that its labor unions offer wage and benefit concessions to alleviate the crisis. At that time, more than thirty of the City of Detroit's forty-eight unions banded together in a "Coalition of Unions" to jointly negotiate concessions with the City of Detroit. This Coalition represented approximately 5,000 City employees.

95.     The Coalition and the City of Detroit reached a Tentative Agreement, resulting in hundreds of millions of dollars in cost savings and revenue to the City, according to accounting estimates. The City encouraged the Coalition of unions to ratify the Tentative Agreement, which they did on March 22, 2012. The City celebrated the ratification, and planned for execution and implementation of this Coalition contract.

20

96.     Following Coalition ratification of the Tentative Agreement, the State of Michigan and its top-level agents threatened the City of Detroit's elected leadership with the appointment of an EM if City officials continued to bargain collectively with the City unions. The Defendants ordered the City Mayor and City Council not to sign the Coalition contract.

97.     The Defendants' issues with the contract were not financial.   Indeed, the Defendants acknowledged the significant financial concessions made within the Coalition contract.    However, the Defendants wanted unspecified nonfinancial changes made to the agreement.

98.     As a result of the Defendants' actions and interference, Detroit's Mayoral Administration asked the City Council not to finalize and execute the contract. To date, the Defendants have prevented the execution of the Coalition contract. Detroit's elected officials acknowledge that the State's threats caused them not to finalize contract.

99.     Under state labor law, the Public Employment Relations Act (MCLA sec 423.210, 215), cities have an obligation to bargain with its unionized workforce over terms and conditions of employment. The statutory obligation to bargain includes the obligation "to execute a written contract, ordinance, or resolution incorporating any agreement reached if requested by either party..." MCLA sec 423.215(1).

100.    At the insistence of the Defendants, the City of Detroit negotiated and signed a Consent Agreement with the state, on April 4, 2012, under Public Act 4. The consent agreement outlined various employment terms for Coalition employees.

101.    Due to the existence of the consent agreement and citing PA 4, the City of Detroit claimed authority to ignore the obligation to bargain with its unions. As such, it imposed

21

dramatic wage and benefit concessions on the unionized workforce without bargaining, during the months following the execution of the consent agreement.

102.    Following the Michigan voters' rejection of PA 4 in November 2012, the Defendants still have refused to permit the City of Detroit to execute a contract with the Coalition unions.  Thus, even though the PA 4 has been rejected, the City is enjoying the consequence of this rejected and unconstitutional law by refusing to adjust the wage and benefit concessions it had imposed on the Coalition members.

103.    With its continued refusal to permit the City to execute a contract with the Coalition union, the Defendants are frustrating the substantive and procedural due process of the Coalition members.

104.    Public Act 436 continues Defendants violation of the due process rights through provisions that seek to retroactively validate actions taken pursuant to powers and authority granted by Public Act 4 and consent agreements entered thereunder.

## V. CAUSES OF ACTION

### COUNT I – 42 U.S.C. §1983 - Constitutional Violation
### US Const, Amend. XIV – Substantive & Procedural Due Process –
### Right to Collectively Bargain – City of Detroit

105.    Plaintiffs incorporate by reference paragraphs 1 through 106 above as though fully stated herein.

106.    Plaintiffs bring this claim pursuant to 42 U.S.C. §1983.

107.    Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective individual and official capacities, have engaged in conduct that violates Plaintiffs' Catherine Phillips, Joseph Valenti, and Michigan AFSCME Council 25 rights under Amend. XIV of the U.S. Constitution.

22

108. Amendment XIV of the United States Constitution holds, in pertinent part: "nor shall any state deprive any person of life, liberty, or property without due process of Law."

109. Under the Due Process Clause, each person has a property interest in their employment, in the terms of employment negotiated pursuant to contract, and in rights granted under state law and these rights may not be taken away without due process of law.

110. Under state law, Plaintiffs Catherine Phillips, Joseph Valenti, and Michigan AFSCME Council 25 were granted a right to collectively bargain with their employer, the City of Detroit.

111. State law provides that:

> To bargain collectively is to perform the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or to negotiate an agreement, or any question arising under the agreement, and to execute a written contract, ordinance, or resolution incorporating any agreement reached if requested by either party, but this obligation does not compel either party to agree to a proposal or make a concession.#

MCL§ 423.215(1).

112. The Defendants Snyder and Dillon, acting in their respective individual and/or official capacities, violated Plaintiff's Due Process rights protected by US Const., Amend. XIV, by acts including but not limited to:

   a. Issuing threats and ultimatums to the Detroit City Council that if it approved the contract, then the State would appoint an EM to govern in the place of City Council;

   b. Issuing threats and ultimatums to the Detroit City Council that if it did not approve a consent agreement, before considering the contract, then an EM would be appointed;

   c. Subjecting the tentative agreement and any amended or renegotiated agreements to the approval of the Financial Advisory Board under the terms

23

   d.  Subjecting the tentative agreement and any amended or renegotiated
       agreements to the approval of the Project Management director under the
       terms of the consent agreement; and

   e.  Subjecting future bargaining to the terms of the consent agreement.

113.   On its face, as applied, and in practice, Public Act 436 violates the Due Process

Clause of US Const., Amend. XIV and rights of Plaintiffs Catherine Phillips, Joseph Valenti, and

Michigan AFSCME Council 25 through provisions of the statute that ratify actions taken by

under Public Act 4. See provisions including but not limited to MCL §141.1570.

114.   The provisions of PA 436 and the powers granted thereby, are not necessary,

narrowly tailored, rationally, or otherwise lawfully related to achieving the purported

government interests of achieving local government financial stability.

115.   As a direct and proximate result of the enactment of Public Act 436 and

Defendants' actions, Plaintiffs Catherine Phillips, Joseph Valenti, and Michigan AFSCME

Council 25 have suffered and will continue to suffer a loss of their constitutionally-protected

rights.

**COUNT II – 42 U.S.C. §1983 -- Constitutional Violation**
**US Const, Amend. XIV – Substantive Due Process –**
**Right to a To Elect Officials Who Possess General Legislative Power**

116.   Plaintiffs incorporate by reference paragraphs 1 through 115 above as though

fully stated herein.

117.   Plaintiffs bring this claim pursuant to 42 U.S.C. §1983.

118.   Acting under color of law and pursuant to the customs, policies and practices of

the State of Michigan, Defendants, acting in their respective individual and/or official capacities,

24

Defendants have engaged in conduct and adopted laws and policies that violate Plaintiffs' rights under Amend. XIV of the U.S. Constitution.

119.    Amendment XIV of the U. S. Constitution holds, in pertinent part: "nor shall any state deprive any person of life, liberty, or property without due process of Law."

120.    Under the Due Process Clause, each person has a liberty interest in their right to a democratically elected from of local government.

121.    Under the Due Process Clause, each person has a liberty interest in their right to elect officials of any level of government that exercise general legislative powers.

122.    Under state law, Michigan cities possess local legislative power to enact make charters, adopt and repeal local laws, and pass resolutions.

123.    Under state law, Michigan cities' legislative power over matters within their jurisdiction is of the same scope and nature as the police power of the state.

124.    When a state establishes a local government with legislative power, it must be democratic in form and substance.

125.    The right to a democratic form of government is a fundamental right afforded to all citizens in the state of Michigan through the United States Constitution.

126.    The right to a vote for the officials of local government who exercise general legislative powers is a fundamental right afforded to all citizens in the state of Michigan through the United States Constitution. When a state grants general legislative power to a governmental official, the official must be democratically elected.

127.    On its face, as applied, and in practice, Public Act 436 violates the Due Process Clause of US Const., Amend. XIV and disenfranchises citizens from their right to a

25

democratically elected form of local government and their right to elect local officials who possess general legislative power, through provisions that delegate to EMs the power to:

    a. Be selected and appointed solely at the discretion of the Governor; See provisions including but not limited to MCL §141.1549;

    b. Become vested with Public Act 436 EM powers for persons previously appointed or acting as EFMs under prior laws; See provisions including but not limited to MCL §141.1549;

    c. Act for and in the place and stead of the local governing body of cities and villages and to assume all the powers and authority of the local governing body and local elected officials. See provisions including but not limited to MCL §141.1549, §141.1550, and §141.1552;

    d. Rule by decree over cities and villages through powers that permit the EM to contravene and thereby implicitly repeal local laws such as city and village charters and ordinances; See provisions including but not limited to MCL §141.1552; and

    e. Explicitly repeal, amend, and enact local laws such as city and village ordinances. See provisions including but not limited to MCL §141.1549 and §141.1552.

128. On its face, as applied, and in practice, Public Act 436 violates the Due Process Clause of US Const., Amend. XIV and disenfranchises citizens from their right to a democratically elected form of local government and their right to elect local officials who possess general legislative power, through provisions of the statute that ratify appointments made and legislative acts taken by EMs acting under Public Act 4. See provisions including but not limited to MCL §141.1570.

129. The provisions of PA 436 and the powers granted thereby, are not necessary, narrowly tailored, rationally, or otherwise lawfully related to achieving the purported government interests of achieving local government financial stability.

130. As a direct and proximate result of the enactment of Public Act 436 and Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their

constitutionally-protected rights.

**COUNT III – 42 U.S.C. §1983 -- Constitutional Violation**
**US Const, Art 4, §4 – Republican Form of Government**

131.    Plaintiff incorporates by reference paragraphs 1 through 130 above as though fully stated herein.

132.    Plaintiffs bring this claim pursuant to 42 U.S.C. §1983.

133.    Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective official capacities, Defendants have engaged in conduct and adopted laws and policies that violate Plaintiffs' rights under Art. 4, §4 of the U.S. Constitution.

134.    Article 4, section 4 of the U.S. Constitution states that the "United States shall guarantee to every state in this union a republican form of government."

135.    Since our nation's founding, federal, state, and local governments throughout the country have been republican forms of government – governments of representatives chosen by the people governed.

136.    In the United States and in Michigan, local governments are traditionally democratically elected and republican in form.

137.    Public Act 436 unconstitutionally strips local voters of their right to a republican form of government by transferring governance, including but not limited to legislative powers, from local elected officials to one unelected emergency manager.

138.    On its face, as applied, and in practice, Public Act 436 violates the US Const., Art. 4, §4 through provisions of the statute that permit EMs to:

> a. Be selected and appointed solely at the discretion of the Governor; See provisions including but not limited to MCL §141.1549;

27

b. Become vested with Public Act 436 EM powers for persons previously appointed or acting as EFMs under prior laws; See provisions including but not limited to MCL §141.1549;

c. Act for and in the place and stead of the local governing body of cities and villages and to assume all the powers and authority of the local governing body and local elected officials. See provisions including but not limited to MCL §141.1549, §141.1550, and §141.1552;

d. Rule by decree over cities and villages through powers that permit the EM to contravene and thereby implicitly repeal local laws such as city and village charters and ordinances; See provisions including but not limited to MCL §141.1552; and

e. Explicitly repeal, amend, and enact local laws such as city and village ordinances. See provisions including but not limited to MCL §141.1549 and §141.1552.

139. On its face, as applied, and in practice, Public Act 436 violates the US Const., Art. 4, §4 through provisions of the statute that ratify the legislative acts taken by EMs acting under Public Act 4. See provisions including but not limited to MCL §141.1570.

140. Defendants have caused injury to the Plaintiffs by exercising the authority granted under Public Act 436 by terminating and/or removing the governing authority and legislative powers of duly elected public officials in affected municipalities throughout the state of Michigan.

141. As a direct and proximate result of the enactment of Public Act 436 and Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their constitutionally-protected rights.

## COUNT IV – 42 U.S.C. §1983 -- Constitutional Violation
## US Const, Amend. XIV, § 1 –Equal Protection a Fundamental Right – Voting Rights

142. Plaintiffs incorporate by reference paragraphs 1 through 141 above as though fully stated herein.

143. Plaintiffs bring this claim pursuant to 42 U.S.C. §1983.

28

144.    Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective individual and/or official capacities, have engaged in conduct and adopted laws and policies that violated Plaintiffs' rights under Amend. XIV, §1 of the U.S. Constitution

145.    Amendment XIV, § 1 states in pertinent part, "No state shall make or enforce any law which shall … deny to any person within its jurisdiction the equal protection of the laws."

146.    The Equal Protection Clause protects laws and the application of laws that invidiously discriminate between similarly situated individuals or between groups of persons in the exercise of fundamental rights.

147.    The right to vote in local elections is a fundamental right afforded to all citizens in the state of Michigan by the United States Constitution, the Michigan Constitution, and the Michigan Home Rule Cities Act.

148.    Public Act 436's EM provisions effectively revoke the right to vote by stripping governing authority from local elected officials and transferring such authority to one unelected EM with no accountability to local citizens.

149.    Public Act 436 impermissibly dilutes citizen's right to vote in local elections where EMs have been appointed.  In these municipalities and school districts, the local government – in the person of the EM - is appointed by state officials and the EM is vested with all governing authority over the municipality and school district.  While the some EMs may nominally retain elected officials in office as advisory personnel, elected officials' governing authority is substantially removed, circumscribed, and conditional – to be exercised at the sole discretion of the EM.

29

150.   Public Act 436 impermissibly dilutes citizen's right to vote in local elections where EMs have been appointed.   In these municipalities and school districts, the local government – in the person of the EM - is appointed by state officials who are elected by citizens across the entire state of Michigan.   Through the statewide vote of state officials and their derivative appointments, the state has publicly argued that democratic election of local government is preserved in the affected municipalities and school districts.   Thus, the entire state electorate participates in the selection of the local government in the affected municipalities and school districts, while in all other localities across the state, local residents alone directly vote for their local elected officials.   The vote of citizens for their local government in affected localities is grossly diluted by the statewide participation of the electorate, while the votes of citizens in localities without an EM are preserved for local residents alone and thereby attains greater weight.

151.   On its face, as applied, and in practice, Public Act 436 violates the Equal Protection Clause of US Const., Amend. XIV, § 1 through provisions of the statute that unduly revoke and/or impermissibly dilute the community's right to vote for local officials.   Such provisions include those that provide for EMs to:

   a. Be selected and appointed solely at the discretion of the Governor; See provisions including but not limited to MCL §141.1549;

   b. Become vested with Public Act 436 EM powers for persons previously appointed or acting as EFMs under prior laws; See provisions including but not limited to MCL §141.1549;

   c. Act for and in the place and stead of the local governing body of cities and villages and to assume all the powers and authority of the local governing body and local elected officials. See provisions including but not limited to MCL §141.1549, §141.1550, and §141.1552;

   d. Rule by decree over cities and villages through powers that permit the EM to contravene and thereby implicitly repeal local laws such as city and village

30

charters and ordinances; See provisions including but not limited to MCL §141.1552; and

e. Explicitly repeal, amend, and enact local laws such as city and village ordinances. See provisions including but not limited to MCL §141.1549 and §141.1552.

152.    On its face, as applied, and in practice, Public Act 436 violates the Equal Protection Clause of US Const., Amend. XIV, § 1 through provisions of the statute that unduly revoke the community's right to vote for local officials, through provisions of the statute that ratify appointments made and legislative acts taken by EMs acting under Public Act 4. See provisions including but not limited to MCL §141.1570.

153.    Under Public Act 436, Defendants have authority to deprive Plaintiffs of their rights to equal protection by divesting communities of their right to vote for local officials and by removing the authority of duly elected public officials in favor of an unelected EM in such communities.

154.    Defendants have caused injury to the Plaintiffs by exercising the authority granted under Public Act 436 by terminating and/or removing the authority of duly elected public officials in various municipalities with disproportionately high poverty rates.

155.    The provisions of PA 436 and the powers granted thereby, are not necessary, narrowly tailored, rationally, or otherwise lawfully related to achieving the asserted government interests of achieving local government financial stability.

156.    As a direct and proximate result of the enactment of Public Act 436 and Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their constitutionally-protected rights.

## COUNT V – 42 U.S.C. §1983 -- Constitutional Violation
## US Const, Amend. XIV, § 1 –Equal Protection based on Race – Voting Rights

31

157.    Plaintiffs incorporate by reference paragraphs 1 through 156 above as though fully stated herein.

158.    Plaintiffs bring this claim pursuant to 42 U.S.C. §1983.

159.    Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective individual and/or official capacities, have engaged in conduct and adopted laws and policies that violate Plaintiffs' rights under Amend. XIV, §1 of the U.S. Constitution

160.    Amendment XIV, § 1 states in pertinent part, "No state shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws."

161.    The Equal Protection Clause protects laws and the application of laws that invidiously discriminate between similarly situated individuals or between groups of persons in the exercise of fundamental rights.

162.    The right to vote in local elections is a fundamental right afforded to all citizens in the state of Michigan by the United States Constitution, the Michigan Constitution, and the Michigan Home Rule Cities Act.

163.    Public Act 436's EM provisions effectively revoke the right to vote by stripping governing authority from local elected officials and transferring such authority to one unelected EM with no accountability to local citizens.

164.    Public Act 436 impermissibly dilutes citizen's right to vote in local elections where EMs have been appointed. In these municipalities and school districts, the local government – in the person of the EM - is appointed by state officials and the EM is vested with all governing authority over the municipality and school district. While the some EMs may nominally retain elected officials in office as advisory personnel, elected officials' governing

32

authority is substantially removed, circumscribed, and conditional – to be exercised at the sole discretion of the EM.

165.    Public Act 436 impermissibly dilutes citizen's right to vote in local elections where EMs have been appointed.    In these municipalities and school districts, the local government – in the person of the EM - is appointed by state officials who are elected by citizens across the entire state of Michigan.    Through the statewide vote of state officials and their derivative appointments, the state has publicly argued that democratic election of local government is preserved in the affected municipalities and school districts.    Thus, the entire state electorate participates in the selection of the local government in the affected municipalities and school districts, while in all other localities across the state, local residents alone directly vote for their local elected officials.    The vote of citizens for their local government in affected localities is grossly diluted by the statewide participation of the electorate, while the votes of citizens in localities without an EM are preserved for local residents alone and thereby attains greater weight.

166.    Under Public Act 436, all stated criteria for appointing an EM are based on a community's wealth and by extension, the wealth of the persons who reside within a community.

167.    On its face, as applied, and in practice, Public Act 436 violates the Equal Protection Clause of US Const., Amend. XIV, § 1 through provisions of the statute that discriminate in the appointment of an EM and revocation of the community's right to vote for local officials based on the racial composition of that community.    Such provisions include those that provide for EMs to:

> a.  Be selected and appointed solely at the discretion of the Governor; See provisions including but not limited to MCL §141.1549;

33

b. Become vested with Public Act 436 EM powers for persons previously appointed or acting as EFMs under prior laws; See provisions including but not limited to MCL §141.1549;

c. Act for and in the place and stead of the local governing body of cities and villages and to assume all the powers and authority of the local governing body and local elected officials. See provisions including but not limited to MCL §141.1549, §141.1550, and §141.1552;

d. Rule by decree over cities and villages through powers that permit the EM to contravene and thereby implicitly repeal local laws such as city and village charters and ordinances; See provisions including but not limited to MCL §141.1552; and

e. Explicitly repeal, amend, and enact local laws such as city and village ordinances. See provisions including but not limited to MCL §141.1549 and §141.1552.

168.   On its face, as applied, and in practice, Public Act 436 violates the Equal Protection Clause of US Const., Amend. XIV, § 1 through provisions of the statute that discriminate in the appointment of an EM and revocation of the community's right to vote for local officials based on the racial composition of that community and that ratify appointments made and legislative acts taken by EMs acting under Public Act 4. See provisions including but not limited to MCL §141.1570.

169.   Defendants have caused injury to the Plaintiffs by exercising the authority granted under Public Act 436 by terminating and/or removing the authority of duly elected public officials in various municipalities comprising more than 53% of the state's population of citizens who are of African American descent.

170.   The provisions of PA 436 and the powers granted thereby, are not necessary, narrowly tailored, rationally, or otherwise lawfully related to achieving the asserted government interests of achieving local government financial stability.

171.   As a direct and proximate result of the enactment of Public Act 436 and

34

Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their constitutionally protected rights.

## COUNT VI – 42 U.S.C. §1983 -- Constitutional Violation
## US Const. Amend. XIV, § 1 –Equal Protection based on Wealth – Voting Rights

172.    Plaintiffs incorporate by reference paragraphs 1 through 171 above as though fully stated herein.

173.    Plaintiffs bring this claim pursuant to 42 U.S.C. §1983.

174.    Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective individual and/or official capacities, have engaged in conduct and adopted laws and policies that violate Plaintiffs' rights under Amend. XIV, §1 of the U.S. Constitution

175.    Amendment XIV, § 1 states in pertinent part, "No state shall make or enforce any law which shall … deny to any person within its jurisdiction the equal protection of the laws."

176.    The Equal Protection Clause protects laws and the application of laws that invidiously discriminate between similarly situated individuals or between groups of persons in the exercise of fundamental rights.

177.    The right to vote in local elections is a fundamental right afforded to all citizens in the state of Michigan by the United States Constitution, the Michigan Constitution, and the Michigan Home Rule Cities Act.

178.    Public Act 436's EM provisions effectively revoke the right to vote by stripping governing authority from local elected officials and transferring such authority to one unelected EM with no accountability to local citizens.

179.    Public Act 436 impermissibly dilutes citizen's right to vote in local elections where EMs have been appointed.  In these municipalities and school districts, the local

35

government – in the person of the EM - is appointed by state officials and the EM is vested with all governing authority over the municipality and school district. While the some EMs may nominally retain elected officials in office as advisory personnel, elected officials' governing authority is substantially removed, circumscribed, and conditional – to be exercised at the sole discretion of the EM.

180. Public Act 436 impermissibly dilutes citizen's right to vote in local elections where EMs have been appointed. In these municipalities and school districts, the local government – in the person of the EM - is appointed by state officials who are elected by citizens across the entire state of Michigan. Through the statewide vote of state officials and their derivative appointments, the state has publicly argued that democratic election of local government is preserved in the affected municipalities and school districts. Thus, the entire state electorate participates in the selection of the local government in the affected municipalities and school districts, while in all other localities across the state, local residents alone directly vote for their local elected officials. The vote of citizens for their local government in affected localities is grossly diluted by the statewide participation of the electorate, while the votes of citizens in localities without an EM are preserved for local residents alone and thereby attains greater weight.

181. Under Public Act 436, all stated criteria for appointing an EM are based on a community's wealth and by extension, the wealth of the persons who reside within a community.

182. On its face, as applied, and in practice, Public Act 436 violates the Equal Protection Clause of US Const., Amend. XIV, § 1 through provisions of the statute that condition the revocation of the community's right to vote for local officials based on the wealth of that

community and the individuals who reside there. Such provisions include those that provide for

EMs to:

    a. Be selected and appointed solely at the discretion of the Governor; See provisions including but not limited to MCL §141.1549;

    b. Become vested with Public Act 436 EM powers for persons previously appointed or acting as EFMs under prior laws; See provisions including but not limited to MCL §141.1549;

    c. Act for and in the place and stead of the local governing body of cities and villages and to assume all the powers and authority of the local governing body and local elected officials. See provisions including but not limited to MCL §141.1549, §141.1550, and §141.1552;

    d. Rule by decree over cities and villages through powers that permit the EM to contravene and thereby implicitly repeal local laws such as city and village charters and ordinances; See provisions including but not limited to MCL §141.1552; and

    e. Explicitly repeal, amend, and enact local laws such as city and village ordinances. See provisions including but not limited to MCL §141.1549 and §141.1552.

183.    On its face, as applied, and in practice, Public Act 436 violates the Equal

Protection Clause of US Const., Amend. XIV, § 1 through provisions of the statute that unduly

revoke citizen's right to vote for local officials based on the wealth of their community and

themselves, through provisions of the statute that ratify appointments made and legislative acts

taken by EMs acting under Public Act 4. See provisions including but not limited to MCL

§141.1570.

184.    Defendants have caused injury to the Plaintiffs by exercising the authority granted

under Public Act 436 by terminating and/or removing the authority of duly elected public

officials in various municipalities with disproportionately high poverty rates.

185.    The provisions of PA 436 and the powers granted thereby, are not necessary,

narrowly tailored, rationally, or otherwise lawfully related to achieving the asserted government

37

interests of achieving local government financial stability.

186.    As a direct and proximate result of the enactment of Public Act 436 and Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their constitutionally-protected rights.

**COUNT VII– Voting Rights Act of 1965,**
**42 U.S.C. § 1973 *et. seq.***

187.    Plaintiffs incorporate by reference paragraphs 1 through 186 above as though fully stated herein.

188.    Section 2 of the Voting Rights Act of 1965, as amended, reads:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 4(f)(2), as provided in subsection (b).

> (b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

189.    Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 prohibits the abridgement or dilution of Black/African-American citizens' right to vote in state and local elections.

190.    Michigan's population is estimated at 9,876,187 persons. The Black/African-American's comprise approximately 14.2% of the state's population (1,400,362 persons).

191.    As a result of the passage of PA 436, once the law comes into effect more than fifty percent of the state's Black/African-American population will have had their voting rights in local elections effectively revoked.

38

192. Public Act 436 impermissibly dilutes citizen's right to vote in local elections where EMs have been appointed. In these municipalities and school districts, the local government – in the person of the EM - is appointed by state officials and the EM is vested with all governing authority over the municipality and school district. While the some EMs may nominally retain elected officials in office as advisory personnel, elected officials' governing authority is substantially removed, circumscribed, and conditional – to be exercised at the sole discretion of the EM.

193. Public Act 436 impermissibly dilutes citizen's right to vote in local elections where EMs have been appointed. In these municipalities and school districts, the local government – in the person of the EM - is appointed by state officials who are elected by citizens across the entire state of Michigan. Through the statewide vote of state officials and their derivative appointments, the state has publicly argued that democratic election of local government is preserved in the affected municipalities and school districts. Thus, the entire state electorate participates in the selection of the local government in the affected municipalities and school districts, while in all other localities across the state, local residents alone directly vote for their local elected officials. The vote of citizens for their local government in affected localities is grossly diluted by the statewide participation of the electorate, while the votes of citizens in localities without an EM are preserved for local residents alone and thereby attains greater weight.

194. On its face, as applied, and in practice, Public Act 436 violates the Voting Rights Act through provisions that provide for the appointment of EMs and entering of consent agreements that abridge and dilute the voting rights of citizens within these localities. Such provisions include those that provide for EMs to:

39

a. Be selected and appointed solely at the discretion of the Governor; See provisions including but not limited to MCL §141.1549;

b. Become vested with Public Act 436 EM powers for persons previously appointed or acting as EFMs under prior laws; See provisions including but not limited to MCL §141.1549;

c. Act for and in the place and stead of the local governing body of cities and villages and to assume all the powers and authority of the local governing body and local elected officials. See provisions including but not limited to MCL §141.1549, §141.1550, and §141.1552;

d. Rule by decree over cities and villages through powers that permit the EM to contravene and thereby implicitly repeal local laws such as city and village charters and ordinances; See provisions including but not limited to MCL §141.1552; and

e. Explicitly repeal, amend, and enact local laws such as city and village ordinances. See provisions including but not limited to MCL §141.1549 and §141.1552.

195.     On its face, as applied, and in practice, Public Act 436 violates the Voting Rights Act through provisions of the statute that discriminate in the appointment of an EM and revocation of the community's right to vote for local officials based on the racial composition of that community and that ratify appointments made and legislative acts taken by EMs acting under Public Act 4. See provisions including but not limited to MCL §141.1570.

196.     Under the totality of the circumstances, the application of Public Act 436 and enforcement has resulted in Black/African American citizens having dramatically less opportunity for self-governance than other members of Michigan's electorate.

197.     As a direct and proximate result of the enactment of Public Act 436 and Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their constitutionally-protected rights.

## COUNT VIII – 42 U.S.C. §1983 -- Constitutional Violation
## US Const, Amend. I –Freedom of Speech & Right to Petition Government

40

198.    Plaintiffs incorporate by reference paragraphs 1 through 197 above as though fully stated herein.

199.    Plaintiffs bring this claim pursuant to 42 U.S.C. §1983.

200.    Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective individual and/or official capacities, have engaged in conduct and adopted laws and policies that violate Plaintiffs' rights under Amend. I of the U.S. Constitution.

201.    Amendment I of the US Constitution states in pertinent part, "Congress shall make no law ... abridging the freedom of speech ... and to petition the Government for a redress of grievances."

202.    Plaintiffs, as citizens of the State of Michigan, have engaged in constitutionally-protected speech on matters of public concern by voting and electing local government officials to serve as their elected representatives.

203.    Plaintiffs, as citizens of the State of Michigan, have engaged in a Constitutionally protected right to petition their local governments on matters of public concern by interacting with duly elected local officials, expressing their concerns, and having them serve as their elected representatives.

204.    The elected officials chosen by the Plaintiffs to serve as their representatives have been inclusive of, but not limited to, mayors, city councils, and local school board members of various municipalities.

205.    Plaintiffs, as citizens of the State of Michigan, have engaged in their Constitutionally protected right to free speech and to petition their government, by repealing Public Act 4.

41

206.   On its face, as applied, and in practice, Public Act 436 is the mirror image of Public Act 4 and its enactment contrary to the expressed will of the people through the referendum process violates the US Const., Amend. I.

207.   On its face, as applied, and in practice, Public Act 436 violates the US Const., Amend. I through provisions that empower EMs to:

a. Be selected and appointed solely at the discretion of the Governor; See provisions including but not limited to MCL §141.1549;

b. Become vested with Public Act 436 EM powers for persons previously appointed or acting as EFMs under prior laws; See provisions including but not limited to MCL §141.1549;

c. Act for and in the place and stead of the local governing body of cities and villages and to assume all the powers and authority of the local governing body and local elected officials. See provisions including but not limited to MCL §141.1549, §141.1550, and §141.1552;

d. Rule by decree over cities and villages through powers that permit the EM to contravene and thereby implicitly repeal local laws such as city and village charters and ordinances; See provisions including but not limited to MCL §141.1552; and

e. Explicitly repeal, amend, and enact local laws such as city and village ordinances. See provisions including but not limited to MCL §141.1549 and §141.1552.

208.   On its face, as applied, and in practice, Public Act 436 violates the US Const., Amend. I through provisions that provide for the appointment of EMs with powers that strip all authority of local elected officials, through provisions of the statute that ratify appointments made and legislative acts taken by EMs acting under Public Act 4. See provisions including but not limited to MCL §141.1570.

209.   The provisions of PA 436 and the powers granted thereby, are not necessary, narrowly tailored, rationally, or otherwise lawfully related to achieving the asserted government interests of achieving local government financial stability.

42

210.    As a direct and proximate result of the enactment of Public Act 436 and Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their constitutionally-protected rights.

**COUNT IX – 42 U.S.C. §1983 -- Constitutional Violation**
**US Const. Amend. I –Right to Petition Government – City of Detroit**

211.    Plaintiffs Catherine Phillips, Joseph Valenti, and Michigan AFSCME Council 25 incorporate by reference paragraphs 1 through 210 above as though fully stated herein.

212.    Plaintiffs Catherine Phillips, Joseph Valenti, and Michigan AFSCME Council 25 bring this claim pursuant to 42 U.S.C. §1983

213.    Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective individual and/or official capacities, have engaged in conduct and adopted laws and policies that violate Plaintiffs' Catherine Phillips, Joseph Valenti, and Michigan AFSCME Council 25 rights under Amend. I of the U.S. Constitution.

214.    Amendment I of the US Constitution states in pertinent part, "Congress shall make no law ... abridging ... [right] to petition the Government for a redress of grievances."

215.    Plaintiffs have a clearly established Constitutionally protected right to organize, assemble, and to engage in political, social and economic activities to advance their views and petition their local governments on matters of public concern by interacting with duly elected local officials, expressing their concerns, and having their concerns heard.

216.    The state Local Emergency Financial Assistance Loan Board appointed Kevyn Orr as EFM, and by the terms of the new law, he will be made an EM under Public Act 436 on and after March 28, 2013.

217.    Kevyn Orr is a partner in the Jones Day law firm and retains a financial interest in

43

the firm. Alternatively, Kevyn Orr nominally resigned from the Jones Day law firm at or about the time of his appointment as EFM of the City of Detroit.

218. At the same time, the Jones Day law firm has been selected as "restructuring counsel" for the City of Detroit under EM Kevyn Orr as the government of the City of Detroit. As such, the law firm is a contractual creditor to the City of Detroit.

219. Upon information and belief, the Jones Day law firm represents other financial institutions, including but not limited to the Bank of American, who are potential creditors to the City of Detroit.

220. On its face, as applied, and in practice, Public Act 436 and appointment of the City of Detroit's EFM and as EM violates the US Const., Amend. I through provisions that:

c. Permit Kevyn Orr to act for and in the place and stead of the local governing body of cities and villages and to assume all the powers and authority of the local governing body and local elected officials. See provisions including but not limited to MCL §141.1549, §141.1550, and §141.1552;

d. Vest the full powers of the local government of the City of Detroit, legislative, executive, administrative, police power, taxing power, powers to sue and be sued, to sell, lease, or purchase assets, to make governmental decisions regarding economic development, public safety, environmental health and, without limitation, all other powers of local government, would be concentrated and held by a single entity represented by Kevyn Orr and the Jones Day law firm;

e. Concentrate all local government powers in this way in a single entity abridges the rights of people who are citizens and residents of the City of Detroit to engage in core protected First Amendment activities to petition government, to organize, assemble, engage in political, social and economic activities to advance their views and interests;

f. Allow concentration of all local government powers in this way in a single entity offers opportunities to Defendants to exploit, profit, sell, lease, purchase, develop, contract and otherwise use their powers of local government for their own private and political as well as economic benefit, and that of their clients and associates, with no significant check or balance because of the disenfranchisement of Plaintiffs and all other residents of the

44

City of Detroit from participation in any of the decisions of local government, in violation of the First Amendment and the State Constitution;

g. Plaintiffs have no personal, political, commercial, economic or social connection or access to Defendants, and their fundamental First Amendment Rights to petition government, to organize, assemble, engage in political, social and economic activities to advance their views and interests, among other rights and constitutionally protected interests, are therefore violated by this new and unprecedented unitary form of local government of the City of Detroit.

221. The provisions of PA 436 and the powers granted thereby and the actions of the Defendants are not necessary, narrowly tailored, rationally or otherwise lawfully related to achieving the asserted government interests of achieving local government financial stability.

222. As a direct and proximate result of the enactment of Public Act 436 and Defendants' actions, Plaintiffs Catherine Phillips, Joseph Valenti, and Michigan AFSCME Council 25 have suffered and will continue to suffer a loss of their constitutionally-protected rights.

## COUNT X – 42 U.S.C. §1983 -- Constitutional Violation
## US Const, Amend. XIII, § 1 – Vestiges of Slavery – Voting Rights

223. Plaintiffs incorporate by reference paragraphs 1 through 222 above as though fully stated herein.

224. Plaintiffs bring this claim pursuant to 42 U.S.C. §1983.

225. Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective individual and/or official capacities, have engaged in conduct and adopted laws and policies that violate Plaintiffs' rights under Amend. XIII of the U.S. Constitution

45

226.   Amendment XIII, § 1 bans and form of "slavery or involuntary servitude" within the jurisdiction of the United States of America.   The Thirteenth Amendment further bans acts which perpetuate the badges and incidents of servitude.

227.   Systematic denial of voting rights in local elections to Michigan's Black/African-American citizens is a perpetuation of the vestiges of slavery and involuntary servitude.

228.   Public Act 436 effectively revokes the right to vote by intentionally stripping governing authority from local elected officials and transferring such authority to one unelected EM who serves as the overseer of municipalities or school districts, which are overwhelming Black/African American majority communities, with no accountability to local citizens.

229.   On its face, as applied, and in practice, Public Act 436 violates the US Const., Amend. XIII, § 1 through provisions of the statute that perpetuate the vestiges of slavery by discriminatorily and intentionally revoking the community's right to vote for local officials based on the racial composition of that community.   Such provisions include those that provide for EMs to:

     a.  Be selected and appointed solely at the discretion of the Governor; See provisions including but not limited to MCL §141.1549;

     b.  Become vested with Public Act 436 EM powers for persons previously appointed or acting as EFMs under prior laws; See provisions including but not limited to MCL §141.1549;

     c.  Act for and in the place and stead of the local governing body of cities and villages and to assume all the powers and authority of the local governing body and local elected officials. See provisions including but not limited to MCL §141.1549, §141.1550, and §141.1552;

     d.  Rule by decree over cities and villages through powers that permit the EM to contravene and thereby implicitly repeal local laws such as city and village charters and ordinances; See provisions including but not limited to MCL §141.1552; and

46

e.  Explicitly repeal, amend, and enact local laws such as city and village ordinances. See provisions including but not limited to MCL §141.1549 and §141.1552.

230.    On its face, as applied, and in practice, Public Act 436 violates the US Const., Amend. XIII, § 1 through provisions of the statute that perpetuate the vestiges of slavery by discriminatorily revoking the community's right to vote for local officials based on the racial composition of the community that ratify appointments made and legislative acts taken by EMs acting under Public Act 4. See provisions including but not limited to MCL §141.1570.

231.    Defendants have caused injury to the Plaintiffs by exercising the authority granted under Public Act 436 by intentionally terminating and/or removing the authority of duly elected public officials in various municipalities comprising more than fifty-two percent (52%) of the state's population of citizens who are of African American descent.

232.    The provisions of PA 436 and the powers granted thereby, are not necessary, narrowly tailored, rationally, or otherwise lawfully related to achieving the asserted government interests of achieving local government financial stability.

233.    As a direct and proximate result of the enactment of Public Act 436 and Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their constitutionally-protected rights.

## COUNT XI – 42 U.S.C. §1983 -- Constitutional Violation
## US Const, Amend. XIV, §1 –Equal Protection – Removal of Emergency Managers

234.    Plaintiffs incorporate by reference paragraphs 1 through 233 above as though fully stated herein.

235.    Plaintiffs bring this claim pursuant to 42 U.S.C. §1983.

236.    Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective individual and/or official capacities,

47

have engaged in conduct and adopted laws and policies that violate Plaintiffs' rights under Amend. XIV, §1 of the U.S. Constitution.

237. Amendment XIV, §1 states in pertinent part, "No state shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws."

238. The Equal Protection Clause protects against laws and the application of laws that invidiously discriminate between similarly situated individuals or between groups of persons in the exercise of fundamental rights.

239. The Equal Protection Clause also protects against laws and the application of laws that discriminate among similarly situated individuals or between groups of persons when no rational basis exists for such discrimination.

240. Public Act 436 permits cities and school boards to pass a resolution by a 2/3 vote and with the approval of strong mayors thereby remove their EMs after 18 months in office.

241. At the same time, Public Act 436 converts all existing EFMs to EMs. Many of the existing managers have been in place for months and even years longer than the 18 month time period after which elected officials to pass a resolution by a 2/3 vote and the approval of strong mayors for the removal such managers.

242. Thus, the law discriminates against cities and school districts where EFMs and EM have been and are currently in place. The law discriminates against these municipalities requiring them to suffer an additional 18 months with an EM despite their having had such officials in place much longer than this time period. At the same time, municipalities that newly receive such managers will be permitted to after which elected officials to pass a resolution by a 2/3 vote and the approval of strong mayors for the removal of such officials after they have been in office for 18 months.

48

243.   On its face, as applied, and in practice, Public Act 436 violates the Equal Protection Clause of US Const., Amend. XIV, § 1 through provisions of the statute discriminate between cities and school boards that presently have had EMs for significantly longer than 18 months and those that will receive EMs after March 28, 2013.   Such provisions include but are not limited to MCL §141.1549(11).

244.   The provisions of PA 436 and the powers granted thereby, are not necessary, narrowly tailored, rationally, or otherwise lawfully related to achieving the asserted government interests of achieving local government financial stability.

245.   As a direct and proximate result of the enactment of Public Act 436 and Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their constitutionally-protected rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray this Honorable court enter Judgment against Defendants providing:

    a. For declaratory relief holding that Public Act 436 violates the United States Constitution, Art. 4, §4; Amend I; Amend XIII; and Amend. XIV; and the Voting Rights Act of 1965, 42 U.S.C. §§ 1973 *et. seq.*;

    b. For injunctive relief restraining the Defendants and any present and future EMs from implementing or exercising authority and powers purportedly conveyed Public Act 436;

    c. For declaratory relief finding that Defendants have impaired and are impairing the rights of the Plaintiffs Catherine Phillips, Joseph Valenti, Michigan AFSCME Council 25 and their covered members in violation of their right to due process of law;

    d. For injunctive relief restraining Defendants, and all persons and entities acting in concert with them, from taking any actions to oppose or frustrate the City of Detroit's recognition and ratification of the Coalition-ratified contract or encourage rejection of said contract;

49

e.  For injunctive relief invalidating and restraining the terms of present and future consent agreements entered into under Public Act 436 that abridge or diminish powers granted to local elected officials under local charters and ordinances;

f.  For liquidated, compensatory, and punitive damages in an amount fair and just under the circumstances;

g.  For attorneys' fees and costs; and

h.  For such further relief as is just and equitable.

March 27, 2013                          Respectfully Submitted,


                                        By: /S/ Herbert A. Sanders
                                        Herbert A. Sanders (P43031)
                                        THE SANDERS LAW FIRM PC
                                        615 Griswold St. Ste. 913
                                        Detroit, Michigan 48226
                                        (313) 962-0099/Fax: (313) 962-0044
                                        haslawpc@gmail.com
                                        Attorneys for Plaintiffs

                                        John C. Philo (P52721)
                                        Anthony D. Paris (P71525)
                                        SUGAR LAW CENTER
                                        FOR ECONOMIC & SOCIAL JUSTICE
                                        4605 Cass Ave., 2nd Floor
                                        Detroit, Michigan 48201
                                        (313) 993-4505/Fax: (313) 887-8470
                                        jphilo@sugarlaw.org
                                        tparis@sugarlaw.org
                                        Attorneys for Plaintiffs

                                        Julie H. Hurwitz (P34720)
                                        William H. Goodman (P14173)
                                        GOODMAN & HURWITZ PC on behalf of the
                                        DETROIT & MICHIGAN NATIONAL
                                        LAWYERS GUILD
                                        1394 E. Jefferson Ave.
                                        Detroit, Michigan 48207

50

(313) 567-6170/Fax: (313) 567-4827
jhurwitz@goodmanhurwitz.com
bgoodman@goodmanhurwitz.com
Attorneys for Plaintiffs

Richard G. Mack, Jr. (P58657)
Keith D. Flynn (P74192)
MILLER COHEN, P.L.C.
600 W. Lafayette Blvd., 4th Floor
Detroit, Michigan 48226
(313) 964-4454/Fax: (313) 964-4490
richardmack@millercohen.com
Attorneys for Plaintiffs

Darius Charney
Ghita Schwarz
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th floor
New York, New York 10012
(212) 614-6464/Fax: (212) 614-6499
dcharney@ccrjustice.org
Attorneys for Plaintiffs

Cynthia Heenan (P53664)
Hugh M. Davis, Jr. (P12555)
CONSTITUTIONAL LITIGATION ASSOCIATES
PC
450 W Fort St Ste 200
Detroit, MI  48226
(313) 961-2255/Fax: (313) 961-5999
conlitpc@sbcglobal.net
Attorney for Plaintiffs

51