IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------------------- x
: 
In re : Chapter 9
: 
CITY OF DETROIT, MICHIGAN, : Case No. 13-53846
: 
Debtor. : Hon. Steven W. Rhodes
: 
------------------------------------------------- x

**BRIEF IN SUPPORT OF DEBTOR'S OBJECTION TO THE AMENDED MOTION OF CREDITOR DEBORAH RYAN, AN INTERESTED PARTY, FOR RELIEF FROM THIS COURT'S ORDER STAYING PROCEEDINGS[1]**

The Stay Relief Motion [Dkt. No. 819] is one of several motions for relief from the Automatic Stay filed shortly after the commencement of this chapter 9 case by parties seeking to avoid the consequences of the bankruptcy filing on pending litigation. The requested relief would undermine the breathing spell afforded to the City and can only be granted upon a demonstration of sufficient cause and where the scope of the requested relief is appropriate. The Plaintiff in this action fails to identify any basis to distinguish her case and afford her the requested right to proceed as if the bankruptcy had not occurred.

---

[1] Capitalized terms not otherwise defined in this Brief in Opposition have the meanings given to them in the Debtor's Objection to the Amended Motion of Creditor Deborah Ryan, an Interested Party, for Relief from this Court's Order Staying Proceedings, filed contemporaneously.

The Plaintiff claims that cause exists to set aside the Automatic Stay because doing so will promote judicial economy. Stay Relief Brief at 17. Beyond Plaintiff's brief discussion of judicial economy, the Plaintiff does not otherwise address the requisite factors to establish cause, as interpreted by courts in this circuit. The Plaintiff instead requests that the Court allow her to liquidate her unsecured prepetition claim wholly outside the ordinary course prescribed for unsecured creditors under the chapter 9 claims resolution process. No such relief – effectively to be exempted from the entire chapter 9 process – is warranted.

Asserting a novel theory, Plaintiff also argues that the Automatic Stay violates her federal constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution. Stay Relief Brief at 10. Finally, the Plaintiff claims that the Automatic Stay should not apply to the Individual Detroit Defendants because they are not "officials" within the meaning of Chapter 9 of the Bankruptcy Code and because both are being sued in their individual capacities and not in their roles as officers of the City of Detroit. Stay Relief Brief at 16. Plaintiff is incorrect in all respects, and her Motion should be denied.

As of the Petition Date, approximately 700 lawsuits were pending against the City. *See* Creditor List at Schedule G. Absent the enforcement of the Automatic Stay, the City would be spending its already limited resources defending these cases rather than focusing its efforts and resources on its

restructuring. Allowing this Litigation, or any of the other routine litigation pending against the City, to proceed *ad hoc* outside the claims resolution process undermines one of the most fundamental protections afforded to the City as a chapter 9 debtor. This result is not changed because the Plaintiff's claim allegedly arises under a theory that implicates federal constitutional due process rights.[2] Plaintiff's claim is still simply a prepetition unsecured claim that would, if successful, merely give rise to an unsecured claim that will be dealt with in the same manner as other similarly situated claimants. Consequently, the Plaintiff has not provided a basis to proceed outside of the normal claims resolution process established under the Bankruptcy Code and should not be afforded relief from the Automatic Stay.[3]

## ARGUMENT

**A.     Cause under 11 U.S.C. § 362**

Section 362(a) of the Bankruptcy Code provides in relevant part that:

a petition filed under . . . this title . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial,

---

[2] Plaintiff's claim is apparently based upon a "state created danger" theory of liability under which Plaintiff claims the Detroit Defendants took actions which increased the risk and the danger of serious injury and death to the decedent. Stay Relief Brief at 3.

[3] The City objects to the form of Proposed Order (Exhibit 1 to the Stay Relief Motion). It does not reflect the requested relief and would permit not only adjudication of claims in the District Court but post-judgment collection and other enforcement actions, as well as the pursuit of other claims outside the Litigation.

administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 362(a). The Automatic Stay "is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." *Javens v. City of Hazel Park (In re Javens)*, 107 F.3d 359, 363 (6th Cir. 1997) (quoting H.R. REP. NO. 95-595, at 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6296).

Section 362(d) of the Bankruptcy Code authorizes a bankruptcy court to grant relief from the Automatic Stay in limited circumstances. *See* 11 U.S.C. § 362(d). In particular, section 362(d)(1) of the Bankruptcy Code provides that a party in interest may obtain relief from the Automatic Stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d)(1).

"The Bankruptcy Code does not define 'cause' as used in [section] 362(d)(1). Therefore, under [section] 362(d), 'courts must determine whether discretionary relief is appropriate on a case by case basis.'" *Chrysler LLC v. Plastech Engineered Prods., Inc. (In re Plastech Engineered Prods., Inc.)*, 382 B.R. 90, 106 (Bankr. E.D. Mich. 2008) (*quoting Laguna Assocs. L.P. v. Aetna*

*Casualty & Surety Co. (In re Laguna Assocs. L.P.*), 30 F.3d 734, 737 (6th Cir. 1994)).  The determination of whether to grant relief from the Automatic Stay "resides within the sound discretion of the Bankruptcy Court." *Sandweiss Law Center, P.C. v. Kozlowski (In re Bunting)*, No. 12-10472, 2013 WL 153309, at *17 (E.D. Mich. Jan. 15, 2013) (*quoting In re Garzoni*, 35 F. App'x 179, 181 (6th Cir. 2002)).

> To guide the bankruptcy court's exercise of its discretion . . . the Sixth Circuit identifies five factors for the court to consider: (1) judicial economy; (2) trial readiness; (3) the resolution of the preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; and (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors.

*Bunting*, 2013 WL 153309, at *17 (*quoting Garzoni*, 35 F. App'x at 181) (internal quotation marks omitted).  In determining whether cause exists, however, "the bankruptcy court should base its decision on the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code." *Plastech*, 382 B.R. at 106 (*quoting In re C & S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995)).  In this case, consideration of each of the foregoing factors confirms that cause does not exist to justify relief from the Automatic Stay to allow the Litigation to proceed.

1. *Judicial Economy and Resolution of the Preliminary Bankruptcy Issues*

Plaintiff claims that "cause" exists to lift the Automatic Stay in her case because of (i) the factual and legal complexity of the underlying case, (ii) the intertwined nature of the claims brought against the Detroit Defendants and the Canton Defendants, (iii) the fact that the bankruptcy petition was filed after discovery closed in the Litigation and prior to the adjudication of summary judgment motions filed by the Detroit Defendants and the Canton Defendants. Stay Relief Motion at 4-6. Plaintiff asserts that judicial economy is therefore best served through immediate relief from the Automatic Stay so she may continue the Litigation in the United States District Court. Plaintiff's assertions are misplaced and fail to account for the harm to the City if stay relief is granted at this juncture of the bankruptcy case. Moreover, Plaintiff's Motion relies entirely on this single factor and completely ignores the other enumerated factors which must be considered by the Court.

As previously stated, the Litigation is one of approximately 700 lawsuits that existed as of the Petition Date against the City. In fact, this is not the first or only relief from stay motion filed in this case.[4] Judicial economy also requires the Court to consider the interplay between the current posture of the bankruptcy

---

[4] To date, approximately 11 relief from stay motions have been filed in this Chapter 9 case and more are expected.

proceeding and Plaintiff's status as a pre-petition unsecured creditor of the bankruptcy estate. In fact, this Chapter 9 proceeding is still in its infancy and fundamental issues, such as eligibility under Chapter 9, are front and center at this time. Expending estate assets, judicial resources and significant legal effort adjudicating and liquidating pre-petition unsecured claims at this point in the case, prior to resolution of fundamental bankruptcy issues such as eligibility, would not promote judicial economy.

    Even if this Court were to grant Plaintiff's Motion, and even if she were successful in the Litigation, her position would not be materially advanced. The most Plaintiff could obtain is a judgment that the City is liable to her in some amount, which judgment could not be immediately enforced against the City because of the Automatic Stay (as stated in footnote 3, the City objects to the form of the Proposed Order to the extent it suggests otherwise.) For Plaintiff to have this opportunity for marginal gain, the City would have to divert resources from advancing its bankruptcy case to defending the Litigation in the District Court. As this Court is aware, the City's Chapter 9 case is scheduled to move swiftly. *See*, for example, Dkt. No. 280 (setting dates and deadlines). This has two implications: first, the City cannot at this time afford the distractions of defending lawsuits unrelated to the bankruptcy process; and second, all creditors of the City

are best served by allowing the City to focus its legal efforts on the Chapter 9 proceeding in order to expedite resolution of all claims, not just Plaintiff's.

A primary purpose of bankruptcy is the centralization of claims against the debtor for determination by the bankruptcy court through the claims allowance process. *See In re Hermoyian*, 435 B.R. 456, 464 (Bankr. E.D. Mich. 2010) (stating that an underlying policy of the Bankruptcy Code is the provision of a centralized forum for claims resolution and orderly distribution of assets). But since a centralized claims resolution process has not been established in this case, the question to consider is why, in light of the hardships imposed on the City and the overall goals of the Bankruptcy Code, Plaintiff's claims should be immediately adjudicated and her claims immediately liquidated.[5] In light of the other factors addressed in these papers, cause does not exist to lift the Automatic Stay so that the Plaintiff's claims can be adjudicated and liquidated immediately.

2. *Trial Readiness*

Plaintiff's case is not ready for trial and considerable time and effort, (time and effort the City cannot afford at this point in the Chapter 9 proceeding), will be needed prior to trial. Discovery is closed and the Detroit Defendants and the

---

[5] Adjudicating or liquidating any pre-petition unsecured claims prior to resolving the eligibility issue and establishing a claims resolution process would be to place the proverbial "cart before the horse."

Canton Defendants have each filed Motions for Summary Judgment. However, responses to the Motions for Summary Judgment have not been filed and hearings on the same have not been held. The relief requested in the Motion is, at a minimum, premature in this early stage of the bankruptcy when the City's resources are stretched already. Simply stated, cause does not exist to interrupt the City's "breathing spell" at this critical time in the bankruptcy so that one pre-petition creditor's claim can be liquidated.

      3.    *The Creditor's Likelihood of Success on the Merits*

For all the reasons set forth in the Motion for Summary Judgment filed by the Detroit Defendants, attached (without exhibits) as **Exhibit A** ("SJ Motion"), the Plaintiff will not succeed on the merits. Plaintiff's claims for gross negligence against the Individual Detroit Defendants are subject to governmental immunity. SJ Motion at 6-8. Plaintiff's claims under the "State Created Danger" rule and her claims of an equal protection violation against the Detroit Defendants should be dismissed due to a lack of a genuine issue of material fact. SJ Motion at 9-15. Likewise, Plaintiff's claims under 42 U.S.C. § 1983 against the City of Detroit should be dismissed due to a lack of a genuine issue of material fact. SJ Motion at 17-20. Finally, Plaintiff's federal civil rights claims against the Individual Detroit Defendants are likewise barred by the doctrine of qualified immunity. SJ Motion at 13-17. Accordingly, the Plaintiff is unlikely to succeed on the merits and

therefore "cause" does not exist to grant relief from stay as requested in the Motion.

    4.    *The Cost of Defense or Other Potential Burden to the Bankruptcy Estate and the Impact of the Litigation on Other Creditors*

The Plaintiff has not demonstrated that she will be prejudiced by the continuation of the Automatic Stay with respect to the Litigation. The Automatic Stay benefits the creditor body at large by ensuring their equal treatment and by preventing a race to the courthouse. *See* H.R. REP. NO. 95-595, at 340 (1977) ("The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors."). The Plaintiff is not subject to any particularized harm that distinguishes her claims from the many others asserted against the City, and there is no justification to give her claims preferential treatment.

In contrast, requiring the City to continue to defend the Litigation would distract the City from its efforts to restructure, diverting its limited resources at a time when it is both working to negotiate and deliver a plan of adjustment quickly and is engaged in a substantial amount of discovery and litigation (all on an expedited timeframe) arising in the bankruptcy case itself. The City does not need further impediments to its restructuring efforts.

In short, allowing the Litigation to proceed would undermine the protections of the Automatic Stay and interfere with the City's efforts to restructure. The City sought relief under chapter 9 in part to obtain the "breathing spell" afforded by the Automatic Stay and the consequent protection from its creditors while it restructures its affairs and prepares a plan of adjustment. The City's finances would be further depleted and its personnel distracted from their mission to operate the City and restructure its affairs if it were denied this basic protection of chapter 9 and forced to defend itself against the Plaintiff and the other essentially identical similar civil actions in various courts.

B.     **Due Process and the Automatic Stay**

Plaintiff also argues that the Automatic Stay, as applied to the Litigation, violates Plaintiff's Fourteenth and Fifth Amendment right to due process. Plaintiff expends a great deal of effort arguing the alleged unconstitutionality of the automatic stay as applied to her, but her arguments miss the point. The Automatic Stay does not deny Plaintiff her Constitutional rights. Plaintiff's day in court is not denied but only delayed until the City and this Court can determine the most effective approach to dealing with the City's myriad creditors, including Plaintiff. *See Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Chicago, Rock Island & Pac. Ry. Co.*, 294 U.S. 648, 680-81 (1935) (holding that a delaying a creditor from implementing a contract remedy via a stay issued under the Bankruptcy Act did not

violate the Fifth Amendment's due process requirement). Indeed, coordinating Plaintiff's alleged rights with those of many others is patently different from depriving Plaintiff of those same rights. *In re Singer*, 205 B.R. 355, 357 (Bankr. S.D.N.Y. 1997) (noting that the Second Circuit has held that the automatic stay does not violate due process) (citation and internal quotation marks omitted); *Kagan v. St. Vincents Catholic Med. Ctrs. of N.Y. (In re St. Vincents Catholic Med. Ctrs. of N.Y.)*, 449 B.R. 209, 213-14 (Bankr. S.D.N.Y. 2011) (holding that 11 U.S.C. § 362 does not offend the First, Fifth, Tenth, or Fourteenth Amendments in stay of state FOIA claim) ("[I]f this claim had any merit, every stay of a judicial proceeding imposed by a Bankruptcy Court would violate the substantive due process rights of the litigants in that proceeding. Clearly this is not the law."). Indeed, the Second Circuit has determined that the automatic stay helps balance the rights of many creditors.

> The policy considerations underlying [the automatic stay] are considerable. The automatic stay . . . is designed to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another.

*Fid. Mortg. Invs. v. Camelia Builders, Inc. (In re Fid. Mortg. Invs.)*, 550 F.2d 47, 55 (2d Cir. 1977) (interpreting Bankruptcy Act). Further, the bankruptcy code and rules implementing the automatic stay provide a means to ensure that the stay does

not deprive creditors of their due process rights, including the opportunity to obtain relief from the stay in this Court if there is sufficient cause to grant relief. *Id.*

Plaintiff's argument fails to account for the City's rights, and, when these are added into the equation, the balance of harms to the City against the potential harm to the Plaintiff strongly favors leaving the stay in place at this juncture. The idea that providing the City with "breathing room" to reorganize somehow denies Plaintiff her Constitutional rights is simply not true. The Automatic Stay ensures that the Plaintiff's rights are not enforced to the detriment of both the City and its other creditors.

C. **The Individual Defendants and the Automatic Stay**

This Court has previously entered an Order which makes the Automatic Stay applicable to the Individual Detroit Defendants. Dkt. No. 166 ("Stay Extension Order"). Plaintiff, in her Motion, challenges the Court's authority to enter the Stay Extension Order and argues that, with respect to the Individual Detroit Defendants, the "Court is not explicitly authorized to provide bankruptcy protection to these persons because they are being sued in their "individual" capacities." Stay Motion at 9. Additionally, Plaintiff argues that the Stay Extension Order violates the

Plaintiff's Constitutional due process rights. For reasons already explained above[6] as well as those set forth below, Plaintiff is wrong on both counts.

Plaintiff's claims against the Individual Detroit Defendants arise out of alleged actions (or alleged inactions) of the Individual Detroit Defendants, each in his or her own capacity as a City of Detroit police officer. Based upon that fact, and in consideration of the City Municipal Code and the contractual provisions of the Master Agreement between the City of Detroit and the Detroit Police Officers Association, the City undertook the defense of the Individual Detroit Defendants in the Litigation. *See* Resolution of City Counsel attached as **Exhibit B**, authorizing the defense and indemnification as to Inspector Blackmon.[7] As a result, the effect

---

[6] Plaintiff's claims that the stay violates her due process rights have already been addressed above, and the City's arguments apply equally vis-à-vis the Individual Detroit Defendants. Whether addressed to the City or to the Individual Detroit Defendants, the Plaintiff's arguments continue to miss the point of the Automatic Stay.

[7] Sgt. Kozloff also petitioned the City Council to have the City defend and indemnify her under City Municipal Code Section 13-11-1 for her actions as a Detroit police officer. The City has not located the Council meeting minutes approving the defense and indemnification but has already appeared on behalf of Sgt. Kozloff in the Litigation and has undertaken to defend her. Furthermore, counsel for the Detroit Police Lieutenants and Sergeants Association ("DPLSA") and the Detroit Police Command Officers Association ("DPCOA"), Barb Patek, has informed counsel for the City that DPLSA and DPCOA both believe that the City is obligated to defend and indemnify Sgt. Kozloff. DPLSA and DPCOA will file a separate objection, but the threat to the City of indemnification obligations or an adverse outcome on shared or intertwined issues that may ultimately result in liability to the City if the Litigation goes forward against Sgt. Kozloff are real possibilities, and the stay must continue to apply to Sgt. Kozloff, as well.

on the City of allowing the Litigation to proceed against the Individual Detroit Defendants is indistinguishable from allowing the litigation to proceed directly against the City, as all costs associated with the Litigation will be borne by the City, and the outcome of the Litigation would directly implicate the City and its assets. This case is a prime example of why entering the Stay Extension Order was appropriate and well within this Court's authority. *See Am. Imaging Servs., Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Industries, Inc.)*, 963 F.2d 855, 860 (6th Cir. 1992) (*citing A.H. Robins, Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) (noting that in light of indemnity arrangements, irreparable harm would result in the form of diminished resources available to creditors if claimants were allowed to proceed with actions against nondebtors, therefore an injunction was proper).

Moreover, because elements of the claims against the Individual Detroit Defendants overlap with elements of the Plaintiff's claims against the City, extension of the Automatic Stay is appropriate. *See Eagle –Picher at 861.* (noting that, where the same issues have been asserted against the debtor and the non-debtor, and where the interests of the debtor and non-debtor are intertwined such that the debtor must actively participate in the litigation against the non-debtor in order to protect its interests and avoid risks, an injunction is appropriate.) S*ee also Hittle v. City of Stockton, Cal.*, 2012 WL 3886099 (*citing In re Family Health*

*Servs., Inc.*, 105 B.R. 937, 942 (C.D.Cal.1989), noting that an "'identity of interests' [between the bankrupt defendant and non-bankrupt codefendants] provides the special or 'unusual circumstances' which justify an order that stays proceedings against non-debtor parties."). Finally, in applying the Automatic Stay to related parties, Courts have held that they should not rule on issues that require them to consider the possible liability of the debtor in the underlying case. *See Hittle* at *1 (*citing Lewis*, 2009 WL 1260290, at 2) Clearly, in the Litigation, were the Plaintiff allowed to proceed against the Detroit Defendants, issues involving the liability of the City will also be subject to adjudication. Therefore, the Automatic Stay was and is appropriately applied to the Individual Detroit Defendants.[8]

WHEREFORE, for the foregoing reasons, the City respectfully requests that this Court: (a) deny the Motion; and (b) grant such other and further relief to the City as the Court may deem proper.

---

[8] Although not at issue in the Motion, it is quite possible that the same holds true with respect to continued litigation against the Canton Defendants, as well. No doubt, claims and liability issues against the Canton Defendants overlap with claims and liability issues against the City to some extent.

Dated: September 25, 2013         Respectfully submitted,

                By: /s/Stephen S. LaPlante
                Jonathan S. Green (MI P33140)
                Stephen S. LaPlante (MI P48063)
                MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
                150 West Jefferson
                Suite 2500
                Detroit, Michigan 48226
                Telephone: (313) 963-6420
                Facsimile: (313) 496-7500
                green@millercanfield.com
                laplante@millercanfield.com

                David G. Heiman (OH 0038271)
                Heather Lennox (OH 0059649)
                JONES DAY
                North Point
                901 Lakeside Avenue
                Cleveland, Ohio 44114
                Telephone: (216) 586-3939
                Facsimile: (216) 579-0212
                dgheiman@jonesday.com
                hlennox@jonesday.com

                Bruce Bennett (CA 105430)
                JONES DAY
                555 South Flower Street Fiftieth Floor
                Los Angeles, California 90071
                Telephone: (213) 243-2382
                Facsimile: (213) 243-2539
                bbennett@jonesday.com

                ATTORNEYS FOR THE CITY OF DETROIT