**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**Deborah Ryan**, on behalf of herself
individually and as Personal Representative
of the **Estate of Patricia "Katie' Williams**,

    Plaintiff,

v

**City of Detroit**, acting through its
agency the Detroit Police Department,
Detroit Police Sergeant **Barbara Kozloff**,
in her individual capacity, Detroit Police Inspector
(formerly Lieutenant) **Dwane Blackmon**, in his
individual capacity; **Canton Township**, Canton Police
Lieutenant **Mark Schultz**, in his individual capacity;
Canton Police Officer **Adam Falk**, in his individual
capacity,

    Defendants.

Honorable Mark A. Goldsmith
Magistrate Michael Hluchaniak
Case No. 2:11-cv-10900

---

**William H. Goodman (P-14173)**
**Julie H. Hurwitz (P-34720)**
**Kathryn Bruner James (P-71374)**
1394 East Jefferson Avenue
Detroit, Michigan 48207
(313) 567-6170
bgoodman@goodmanhurwitz.com
Attorneys for plaintiff

**Kathleen J. Kalahar (P-60301)**
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6165
kkalahar@goodmankalahar.com
Co-Counsel for plaintiff

**Michael M. Muller  (P-38070)**
2 Woodward Ave., Ste. 500
Detroit, MI 48226
(313) 237-5052
mullm@detroitmi.gov
Attorney for defendants, City of Detroit,
Blackmon and Kozloff

**James R. Acho (P-62175)**
33900 Schoolcraft
Livonia, MI 48150
(734) 261-2400
jacho@cmda-law.com
Attorney for defendants, Canton Township,
Schultz and Falk

---

K:\DOCS\LIT\mullm\A37000\MOT\MM4467.WPD

## MOTION FOR SUMMARY JUDGMENT ON BEHALF OF
## CITY OF DETROIT, DWANE BLACKMON AND BARBARA KOZLOFF

NOW COME defendants, City of Detroit, Dwane Blackmon and Barbara Kozloff, and for their Motion for Summary Judgment, state as follows:

1. That the instant case arises out of the September 22, 2009 murder-suicide of plaintiff's decedent, Detroit police officer Patricia Williams by her husband, Detroit police officer Ed Williams.

2. That Plaintiff has asserted a state tort claim of Gross Negligence against Detroit police Sergeant Barbara Kozloff and Detroit police Inspector Dwane Blackmon. (See plaintiff's First Amended Complaint).

3. That plaintiff has asserted federal civil rights claims against defendants Kozloff and Blackmon for violation of plaintiff's decedent's substantive due process rights under the "state created danger" rule, and under the equal protection clause of the 14th Amendment. (See plaintiff's First Amended Complaint).

4. That plaintiff has asserted federal civil rights claim against defendant, City of Detroit under Monell asserting that customs, policies and/or procedures of the City were the moving force behind the alleged constitutionally aberrant conduct of defendants Kozloff and Blackmon. (See plaintiff's First Amended Complaint).

5. That there is no genuine issue of material fact regarding any of the above claims, and as such, defendants are entitled to judgment as a matter of law. (As more fully set forth in the brief attached hereto).

6. That on several occasions, and most recently at the deposition of Lawrence Akbar on June 12, 2013 and the depositions of three Canton officers on June 19, 2013, this writer asked counsel

K:\DOCS\LIT\mullm\A37000\MOT\MM4467.WPD

for plaintiff if he would dismiss the Detroit defendants to preclude the necessity of having to file the instant motion. The actual theories of law were discussed, and counsel remain at odds as to legal interpretation of several issues. Understandably, counsel for plaintiff was unequivocal in his answer, to wit: NO.

WHEREFORE, defendants, City of Detroit, Dwane Blackmon and Barbara Kozloff request this honorable court enter an order dismissing plaintiff's claims against them with prejudice.

Respectfully submitted,


/s/Michael M. Muller
**MICHAEL M. MULLER (P-38070)**
**Senior Assistant Corporation Counsel**
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
Dated: July 15, 2013                                         (313 237-5052

K:\DOCS\LIT\mullm\A37000\MOT\MM4467.WPD

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**Deborah Ryan**, on behalf of herself
individually and as Personal Representative
of the **Estate of Patricia "Katie' Williams**,

     Plaintiff,

v

**City of Detroit**, acting through its
agency the Detroit Police Department,
Detroit Police Sergeant **Barbara Kozloff**,
in her individual capacity, Detroit Police Inspector
(formerly Lieutenant) **Dwane Blackmon**, in his
individual capacity; **Canton Township**, Canton Police
Lieutenant **Mark Schultz**, in his individual capacity;
Canton Police Officer **Adam Falk**, in his individual
capacity,

     Defendants.

Honorable Mark A. Goldsmith
Magistrate Michael Hluchaniak
Case No. 2:11-cv-10900

---

**William H. Goodman (P-14173)**
**Julie H. Hurwitz (P-34720)**
**Kathryn Bruner James (P-71374)**
1394 East Jefferson Avenue
Detroit, Michigan 48207
(313) 567-6170
bgoodman@goodmanhurwitz.com
Attorneys for plaintiff

**Kathleen J. Kalahar (P-60301)**
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6165
kkalahar@goodmankalahar.com
Co-Counsel for plaintiff

**Michael M. Muller (P-38070)**
2 Woodward Ave., Ste. 500
Detroit, MI 48226
(313) 237-5052
mullm@detroitmi.gov
Attorney for defendants, City of Detroit,
Blackmon and Kozloff

**James R. Acho (P-62175)**
33900 Schoolcraft
Livonia, MI 48150
(734) 261-2400
jacho@cmda-law.com
Attorney for defendants, Canton Township,
Schultz and Falk

---

K:\DOCS\LIT\mullm\A37000\MOT\MM4467.WPD

**MEMORANDUM OF LAW IN SUPPORT OF
CITY OF DETROIT, DWANE BLACKMON AND BARBARA KOZLOFF'S
MOTION FOR SUMMARY JUDGMENT**

**Oral Argument Requested**

# TABLE OF CONTENTS

|                                |  Page          |
|--------------------------------|----------------|
| Table of Contents              | (iii)          |
| Index of Authorities           | (iv) - (vi)    |
| Index of Exhibits              | (vii)          |
| Statement of Issues            | (viii)         |
| Controlling Authorities        | (ix) - (xi)    |
| Statement of Material Facts    | (xii) - (5)    |
| Standard of Review             | (5) - (6)      |
| Law and Argument               | (6)            |
| I.                             | (6) - (8)      |
| II                             | (9) - (12)     |
| III                            | (13) - (15)    |
| IV                             | (15) - (17)    |
| V                              | (17) - (19)    |
| Conclusion                     | (20)           |

# INDEX OF AUTHORITIES

| CASE | PAGES |
|------|-------|
| Allied Stores v. Bowers | 13 |
| Anderson v. Creighton | 16 |
| Anderson v. Liberty Lobby | 6 |
| Barber v. City of Salem | 18 |
| Berry v. City of Detroit | 18 |
| Binkowski v. Family Services Agency | 15 |
| Cartwright v. City of Marine City | 10 |
| Celotex Corporation v. Catrett | 5, 6 |
| City of Canton v. Harris | 18, 19 |
| City of Los Angeles v. Heller | 19 |
| Collins v. Harker Heights | 18 |
| County of Sacramento v. Lewis | 18 |
| Dedes v. Asche | 7 |
| DeShaney v. Winnebago County | 9 |
| Estate of Gracie Simmons v. Lisa Millyard | 8 |
| Estate of Leslie George v. State of Michigan | 8 |
| Garvie v. Jackson | 16 |
| Harlow v. Fitzgerald | 15 |
| Harvey Johnson, P. R. of the Estate of Harvey Steward | 8 |

Heller v. Doe by Doe                                              13

Jones v. Reynolds                                                10

Kallstrom v. City of Columbus                                    9, 10

Koulta v. City of Centerline                                     10

LRL Properties, et al v. Portage Metro Housing                   13

Maiden v. Rozwood                                                7

Malley v. Briggs                                                 16

Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp    6

Monell v. New York City Department of Social Services            17, 19

Oklahoma City v. Tuttle                                          17

Pembauer v. Cincinnati                                           17

Robinson v. City of Detroit                                      7, 8

Sargi v. Kent City Board of Education                            10

Sheets v. Mullins                                                9

Smith v. Yono                                                    19

Trihealth, Inc. v. Coard of Commissioners, Hamilton County       13

Wilson v. Morgan                                                 19

Zielasko v. State of Ohio                                        13


**OTHER AUTHORITY**                                              **PAGES**

Fed. R. Civ. P. 56                                               5, 6

42 U.S.C. § 1983                                                 15

M.C.L.A. 330.1401        4, 11, 12

M.C.L.A. 330.1427        4, 11, 12

M.C.L.A. 691.1407        6, 7

## INDEX OF EXHIBITS

**EXHIBIT**                                                        **PAGES**

1: CPD Report - Not A Crime - Other Service                        xii

2:  Deposition of Adam Falk                                        xii

3:  Deposition of Mark Scultz                                      xiii, 1, 2, 3, 4, 12

4:  Telephonic Transcript of Mark Schultz                          xiii, 1, 3, 4     1

5:  Deposition of Brian DeYoung                                    xiii, 1

6:  Deposition of Michael Steckel                                  1, 2, 4, 12

7:  Deposition of Anthony Wright                                   1, 5

8:  Deposition of Paul Jones                                       2

9:  Deposition of Barbara Kozloff                                  2, 3, 4, 12

10: CPD Crime Report dated September 22, 2009 by Pat Sullivan      5

11:  Deposition of Monique Patterson                               14

12:  Deposition of Whitney Walton                                  14

13: Deposition of Brian Stair                                      14

## STATEMENT OF ISSUES

I.    Are defendants, Barbara Kozloff and Dwane Blackmon entitled to summary judgment as to plaintiff's state tort claim of Gross Negligence set forth in Count V of plaintiff's First Amended Complaint due to governmental immunity?

      **Defendant says: "Yes"**

II    Are defendants, City of Detroit, Barbara Kozloff and Dwane Blackmon entitled to summary judgment as to plaintiff's federal civil rights claim for denial of substantive due process under the state created danger rule as set forth in Count I of plaintiff's First Amended Complaint for want of a genuine issue of material fact?

      **Defendant says: "Yes"**

III.   Are defendants, City of Detroit, Barbara Kozloff and Dwane Blackmon entitled to summary judgment as to plaintiff's federal civil rights claim for denial of equal protection under the law as set forth in Count II of plaintiff's First Amended Complaint for want of a genuine issue of material fact?

      **Defendant says: "Yes"**

IV.   Are defendants, Barbara Kozloff and Dwane Blackmon entitled to summary judgment as to all plaintiff's federal civil rights claim under 42 U.S.C. §1983 based on qualified immunity?

      **Defendant says: "Yes"**

V.    Is defendants, City of Detroit entitled to summary judgment as to plaintiff's plaintiff's federal civil rights claim Under <u>Monell</u> as set forth in Count III of plaintiff's First Amended Complaint for want of a genuine issue of material fact?

      **Defendant says: "Yes"**

# CONTROLLING AUTHORITIES

1. Allied Stores v. Bowers, 358 U.S. 522; 3 L. Ed.2d 480; 79 S. Ct. 437 (1959)

2. Anderson v. Creighton, 483 U.S. 635, 640; 97 L. Ed.2d 523; 107 S. Ct. 3034 (1987)

3. Anderson v. Liberty Lobby, 477 U.S. 242, 91 L. Ed.2d 202, 106 S. Ct. 2505 (1986)

4. Barber v. City of Salem, 953 F.2d 232 (6th Cir. 1992)

5. Berry v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994)

6. Binkowski v. Family Services Agency, 39 F. Supp.2d 882 (ED Mich. 1998)

7. Cartwright v. City of Marine City, 336 F.3d 487 (6th Cir. 2003)

8. Celotex Corporation v. Catrett, 477 U.S. 317; 91 L. Ed.2d 265; 106 S. Ct. 2548 (1986)

9. City of Canton v. Harris, 489 U.S. 378; 109; S.Ct. 1997; 103 L. Ed.2d 412 (1989)

10. City of Los Angeles v. Heller, 475 U.S. 796; 89 L. Ed.2d 806; 106 S. Ct. 1571 (1986)

11. Collins v. Harker Heights, 503 U.S. 115; 112 S. Ct. 1061; 117 L. Ed.2d 261 (1992)

12. County of Sacramento v. Lewis, 523 U.S. 833; 140 L. Ed.2d 1043; 118 S.Ct. 1708 (1998)

13. Dedes v. Asche, 446 Mich. 99; 521 N.W.2d 488 (1994)

14. DeShaney v. Winnebago County, 489 U.S. 189; 103 LEd. 2d 249; 109 S.Ct. 998 (1989)

15. Estate of Gracie Simmons v. Lisa Millyard and Carlton Korzeniowski, unpublished opinion per curiam of the Court of Appeals, issued June 26, 2012 (Docket No. 302561)

16. Estate of Leslie George v. State of Michigan, 136 F. Supp. 2d 695 (E.D. Mich, 2001)

17. Garvie v. Jackson, 845 F. 2d 647 (6th Cir. 1988)

18. Harlow v. Fitzgerald, 457 U.S. 800; 73 L. Ed.2d 396; 102 S. Ct. 2727 (1982)

19. Harvey Johnson, P. R. of the Estate of Harvey Steward v. Jeremy Driggett, unpublished opinion per curiam of the Court of Appeals, issued January 31, 2013 (Docket No. 306560)

20. <u>Heller v. Doe by Doe</u>, 509 U.S. 312;  125 L. Ed2d 257; 113 S. Ct. 2637 (1993)

21. <u>Jones v. Reynolds</u>, 438 F.3d 685 (6th Cir. 2006)

22. <u>Kallstrom v. City of Columbus</u>, 136 F. 3d 1055 (6th Cir. 1998)

23. <u>Koulta v. City of Centerline</u>, 477 F.3d 442 (6th Cir. 2007)

24. <u>LRL Properties, et al v. Portage Metro Housing</u>, 55 F.3d 1097 (6th Cir. 1995)

25. <u>Maiden v. Rozwood</u>, 461 Mich. 109; 597 N.W.2d 817 (1999)

26. <u>Malley v. Briggs</u>, 475 U.S. 335; 89 L. Ed2d 271; 106 S. Ct. 1092 (1986)

27. <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp</u>, 475 U.S. 574 (1986)

28. <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658; 56 L. Ed.2d 611; 98 S. Ct.2018 (1978)

29. <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808; 85 L. Ed.2d 791;105 S. Ct. 2427 (1985)

30. <u>Pembauer v. Cincinnati</u>, 475 U.S. 469; 89 L. Ed.2d 452;106 S. Ct. 1292 (1986)

31. <u>Robinson v. City of Detroit</u>, 462 Mich. 439; 613 N.W.2d 307 (2000)

32. <u>Sargi v. Kent City Board of Education</u>, 70 F.3d 907 (6th Cir. 1995)

33. <u>Sheets v. Mullins</u>, 287 F. 3d 581 (6th Cir. 2002)

34. <u>Smith v. Yono</u>, 613 F. Supp. 50 (E.D. Mich. 1985)

35. <u>Trihealth, Inc. v. Coard of Commissioners, Hamilton County</u>, 430 F.3d 783 (6th Cir. 2005)

36. <u>Wilson v. Morgan</u>, 477 F.3d 326 (6th Cir. 2007)

37. <u>Zielasko v. State of Ohio</u>, 873 F.2d 957 (6th Cir. 1989)


Fed. R. Civ. P. 56

42 U.S.C. § 1983

M.C.L.A. 330.1401

M.C.L.A. 330.1427

M.C.L.A. 691.1407

## STATEMENT OF MATERIAL FACTS

1.  At approximately 11:30 p.m., Saturday, September 19, 2009, Patricia Williams appeared at the Canton Police Department where she advised the desk officer, Adam Falk, that her husband had assaulted her earlier in the evening.  (Exhibit 1 - CPD Report - Not A Crime - Other Service).  She was accompanied by her boyfriend Clifford Lee.  (Exhibit 2 - Deposition of Adam Falk, p. 15, ln 7- 14).

2.  Patricia reported that she and her husband, Ed Williams,  separated several months earlier and that he came to their home where he discovered her speaking on the phone with her new boyfriend.  (Exhibit 1).  A verbal altercation ensued and escalated to physical contact when Patricia attempted to leave the house and Ed attempted to stop her by taking her car keys and pushing her to the ground.  (Exhibit 1).

3.  Patricia informed Falk that she, Clifford Lee, and Ed were all Detroit Police officers, and she refused to complete a witness statement or file any type of report against Ed because she did not want him to get into any trouble.  (Exhibit 1).   Patricia specifically stated that she did not want Ed to be charged with domestic violence.  (Exhibit 2, p. 13, ln 2-25).  Moreover, she refused to give her name, her husband's name, or the address at which the incident occurred.  (Exhibit 1).

4.  Neither Patricia nor Clifford gave any indication that Ed was mentally ill, posed a suicide risk, or was unable to care for himself.  (Exhibit 2, pp. 42-43, ln 7-4).  Patricia's demeanor was calm and unemotional.   (Exhibit 2, pp. 38-39, ln 23-13).   In fact, she giggled as she acknowledged that providing identifying information would result in Falk filing an assault report. (Exhibit 2, pp. 16-17, ln 21-6;  pp. 18-19, ln 18-4).  She and Clifford then walked out of the Canton police station.  (Exhibit 1; Exhibit 2,  p. 17, ln 7-20).

5.   At approximately 9:30 am the following morning, Sunday, September 20, 2009, Patricia Williams' mother, Plaintiff Deborah Ryan, called the Canton Police Department to report that Patricia and Ed, who was drinking and armed with a hand gun, were together at their home where they were embroiled in an argument.  (Exhibit 3 - Deposition of Mark Schultz, p. 37, ln 20-25; p. 25, ln 7-24; Exhibit 4 - Telephone Transcript of Mark Schultz, p. 3, ln 19-24).  A number of Canton Police Department officers responded; they reached the address given by Ryan to find Patricia and her mother leaving in their automobile.  (Exhibit 3, pp. 25-26, ln 24-9).  Ed, however, was not to be found.  (Exhibit 4, p. 4, ln 7-10).

6.  Canton Police Officer Brian DeYoung entered the house and found it to be orderly and clean. (Exhibit 5, Deposition of Brian DeYoung, p. 57, ln 1-7).  He also found a note, later characterized by many as a suicide note, left in plain view and in a place where its discovery was plainly intended. (Exhibit 5, pp. 57-58, ln 8-5; pp. 68-69, ln 24-3).

7.  Ryan, whose demeanor was pleasant, unemotional, and neither frightened, hysterical, nor overly concerned (Exhibit 5, p. 58, ln 6-22; pp. 69-70, ln 13-15), reported to the Canton officers that Ed did not threaten or point the hand gun at anyone and that he did not commit an assault with it.  (Exhibit 3, p. 42, ln 6-16; pp. 124-125, ln 13-5; Exhibit 5, p. 59-60, ln 20-12).  Ryan's daughter Patricia, whose demeanor was similarly calm, matter-of-fact, and neither overly emotional, frightened, fearful, nor hysterical (Exhibit 5, p. 61, ln 14-23; pp. 69-70, ln 13-15), agreed that Ed did not commit any manner of armed assault on her or her mother.  (Exhibit 4, p. 4, ln 4-7).

8.  When confronted with Ed's note, Patricia stated "well, I don't believe he would commit suicide. I believe that he's doing this to get a reaction from me."  (Exhibit 3, pp. 46-47, ln 19-4; Exhibit 4, p. 5, ln 1-7).  The prominence of the note's  display when found was consistent with such an

attention getting effort (Exhibit 5, pp. 68-69, ln 24-12), and in any event, it did not evidence any threat of harm to anyone else, including Patricia. (Exhibit 6, Deposition of Michael Steckel, pp. 31-32, ln 24-2). Patricia then contacted Ed by telephone, but he refused to return to the scene to speak with the Canton officers. (Exhibit 3, pp. 47-48, ln 21-7; pp. 48-49, ln 23-5; Exhibit 4, p. 5, ln1-3).

9. Immediately after the above events of Sunday morning, September 20, 2009, Canton Police Department Lieutenant Mark Schultz contacted the Detroit Police Department's Homicide Section where he spoke with Sergeant Michael Martel. (Exhibit 3, p. 50, ln 7-20). Schultz did not call to enlist the Detroit Police Department's investigative assistance, but rather to provide a simple 'heads up' as to what was taking place in Canton's jurisdiction; he also hoped someone within the Detroit Police Department would be able to contact Ed to assess his mental state. (Exhibit 3, pp. 127-128, ln19-9; p. 59, ln 3-17).

10. Schultz advised Martel of the events involving Patricia and Ed, together with reading Ed's note to Martel. (Exhibit 3, p. 54, ln 10-14; Exhibit 4, pp. 3-4, ln 19-24). Martel agreed with Schultz that the document could be interpreted as a suicide note. (Exhibit 3, p. 54, ln 16-20). Schultz then stated that his department would initiate a 'suspicious report' and fax a copy of it and the note to Martel. (Exhibit 4, p. 5, ln 9-11).

11. During the above conversation between Schultz and Martel, Martel asked a co-worker of Ed Williams, Anthony Wright to contact Ed via cell phone to see if Ed was alright. (Exhibit 7, Deposition of Anthony Wright, pp. 14-20; pp. 46-47). According to Wright, Ed Williams sounded like Ed Williams, and in his opinion, Ed was fine. (Exhibit 7, pp 46-47, ln 22-1).

12. Martel contacted Schultz a few minutes later and asked Schultz to relay the documents to the Detroit Police Department's Internal Affairs unit rather than to Martel at the DPD Homicide Unit

where Ed Williams was assigned. (Exhibit 3, pp. 55-56, ln 22-10; pp. 62-63, ln 14-11). Internal Affairs involvement was favored as it is the unit within the DPD which investigates allegations of officer misconduct, whether on- or off-duty, and to avoid the appearance of impropriety on the part of the Homicide unit. (Exhibit 3, pp. 63-64, ln 22-12).

13. During his conversations with Martel, Schultz clearly communicated that Ed Williams was not a criminal suspect, and that he did not foresee the situation turning into a criminal investigation or criminal complaint. (Exhibit 3, pp. 64-66, ln 17-19). No criminal warrant had, in fact, been issued for Ed Williams' arrest. (Exhibit 6, p. 32, ln 12-20). Schultz then directed Canton personnel to enter Ed Williams in the Law Enforcement Information Network (LEIN) system as a missing person who may be in danger. (Exhibit 3, pp. 69-70, ln 12-5).

14. Interestingly enough, at about 1:00 p.m. that same day, Ed Williams met up with one of his best friends, Sgt. Paul Jones at a golf driving range. (Exhibit 8, Deposition of Paul Jones, pp. 64-69; pp. 97-98). The two men spent about two hours together, and Paul Jones has testified that at no time did Ed Williams show any signs of abnormal affect or mentation. (Exhibit 8). Rather, Ed was Ed. (Exhibit 8).

15. At approximately 5:30 p.m., Schultz called the DPD Homicide unit to inform Martel that Ed Williams had in fact been listed in the LEIN system as "missing endangered", but as Martel was off duty, Schultz spoke with Defendant Sergeant Barbara Kozloff. (Exhibit 3, pp. 77-78, ln 22-13). When Schultz explained the purpose for making contact, Kozloff indicated that she was aware of the situation involving Ed Williams and she asked Schultz to read her the note; he did so. (Exhibit 3, p. 78, ln 7-13). Schultz again denied that Williams was the subject of a criminal investigation because the Canton Police did not have probable cause to make an arrest. (Exhibit 9, Deposition of

Barbara Kozloff, pp. 124-125, ln 22-13). Schultz did, however, advise Kozloff that Ed Williams was listed in the LEIN system and would remain so until personally observed by someone in law enforcement. (Exhibit 3, p. 80, ln 1-22; p. 107, ln 8-18; pp. 132-133, ln 13-13).

16. At approximately 6:00 p.m., Schultz used a cell phone number provided earlier by Martel and was able to speak directly with Ed Williams by telephone. (Exhibit 3, p. 86, ln 4-8; p. 81, ln 20-22). Schultz told Williams why he was calling and informed Williams of the LEIN entry and the two discussed the note. (Exhibit 3, pp. 82-83, ln 24-11). Schultz also inquired whether Williams intended any harm to himself and after receiving Williams' assurance that such was not the case, Schultz informed Williams that he would remain in the LEIN system until he either appeared at the Canton Police Department or saw his supervisor in Detroit. (Exhibit 3, p. 83, ln 11-23).

17. During the course of their conversation, Ed Williams explained the note as a means of devising his personal property to his mother in the event he met with foul play at the hands of his wife. (Exhibit 3, p. 83, ln 6-11; p. 85, ln 4-15; pp. 130-132, ln 10–7). Schultz did not necessarily believe Williams' explanation. (Exhibit 3, 85-86, ln 21-3). More importantly, Schultz detected no indications that Williams had been drinking or was in any manner of psychological or emotional distress. (Exhibit 3, pp. 83-84, ln 24-8).

18. At approximately 6:30 p.m., Kozloff called Schultz and the two spoke for a second time. (Exhibit 3, pp. 83-84, ln 24-8). Kozloff reported that Ed Williams had appeared at the Detroit Police Department, and that she had spoken with him personally. (Exhibit 3, p. 86, ln 23-24). Kozloff spent approximately ten minutes with Williams and found his demeanor to be completely consistent with his personality as she knew it from eight years as co-workers. (Exhibit 4, pp. 15-16, ln 20-2; Exhibit 9, pp. 120-121, ln 23-3). Williams said nothing which provided Kozloff probable cause to

effect his arrest, and Williams said nothing which communicated a threat or intent to harm his wife or himself.  (Exhibit 9, p.125-126, ln 14-5; p. 121, ln 11-25).  Barbara Kozloff, like Mark Schultz, Paul Jones and Anthony Wright detected no signs that Williams had been drinking, and no signs that he was depressed, despondent, otherwise unable to care for his basic needs, or that he posed a danger to himself.  (Exhibit 9, p. 62, ln 2-11; pp. 122-123, ln 1-6).

19.  Accordingly, when Schultz asked whether "all is well", Kozloff indicated that it was.  (Exhibit 3, pp. 87-88, ln 23-1; Exhibit 4, p. 16, ln 3-4).  Kozloff also reported that Williams explained the note just as he explained it to Schultz shortly before, that Williams assured her he was fine, and that she offered to refer Williams to the City of Detroit's Employee Assistance counseling program.  (Exhibit 3, p. 88, ln 1-5; Exhibit 4, p. 16, ln 4-15).

20.  Schultz did not expect Kozloff to conduct a full psychiatric evaluation of Williams, but instead, trusted that Kozloff spent more than a few seconds talking to Williams.  (Exhibit 3, p. 134, ln 4-16; p. 101, ln 9-16).  Schultz also expected that Kozloff would apply her personal knowledge of Williams in determining whether he was a danger to himself or otherwise unable to care for himself as this is what would provide a basis under Michigan law to take Williams into protective custody for hospitalization and psychological evaluation at a crisis center.  (Exhibit 3, pp. 99-100, ln 12-19; p. 100, ln 19; pp. 134-135, ln 17-1; Exhibit 6, pp. 36-37, ln 13-22; See also, MCLA 330.1401 and MCLA 330.1427).

21.  Without being asked or prodded, Schultz responded that he would remove Williams from the LEIN system as a missing/endangered person.  (Exhibit 3, pp. 135-136, ln 2-25; p. 92, ln 2-15; Exhibit 4, pp. 16-17, ln 19-1).  Lt. Schultz did so because Williams was no longer missing and was in no apparent distress or danger.  (Exhibit 3, p. 87, ln 15-22; pp. 93-94, ln 13-10).

22.  Two days later, Tuesday, September 22, 2009 between 8:00 a.m. and 8:30 a.m., Ed Williams called his work colleague, Anthony Wright.  (Exhibit 7, pp. 36-41).  Wright testified that Williams said he knew why Wright had called and talked to him two days prior, and that it was because he had written a note and folks thought he might kill himself.  (Exhibit 7, pp. 36-41).  Williams told Wright he had no intention of harming himself, displayed no despondence, depression, rage, weeping and left Wright with the impression that Ed was classic Ed.  (Exhibit 7, pp. 36-41; p. 47).

23.  About an hour after Ed Williams telephone conversation with Anthony Wright, he met with his wife, Patricia Williams in the Canton Library parking lot where he shot her to death and then took his own life.  (Exhibit 10, CPD Crime Report dated September 22, 2009 authored by (Pat Sullivan).

## **STANDARD OF REVIEW**

This motion is brought pursuant to Fed. R. Civ. P. 56(c). With reference to that rule, it is significant that the issue raised in the motion goes to the plaintiff's case in chief rather than an affirmative defense and that the plaintiff accordingly bears the burden of proof on that issue. In Celotex Corporation v. Catrett, 477 U.S. 317, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986) the Supreme Court noted that:

> ... the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party, who **fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at the trial.** In such a case there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'  [T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...' [cite omitted]  91 L.Ed.2d at 273 - 274  (Emphasis added).

Once the movant in a Rule 56(c) motion identifies the issue as to which it maintains there is no genuine issue of material fact, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Celotex holding was followed and developed in Anderson v. Liberty Lobby, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986), which was decided the same day as Celotex. In Anderson the Court emphasized that not just any issue of fact is sufficient to avoid summary judgment. Rather, the issue must be both material and genuine. A fact issue is material only if "it might affect the outcome of the suit under the governing law." 477 U.S. 248. "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A fact issue is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

## LAW AND ARGUMENT

### I

### PLAINTIFF'S STATE TORT CLAIM FOR GROSS NEGLIGENCE AGAINST DWANE BLACKMON AND BARBARA KOZLOFF SET FORTH IN COUNT V IS SUBJECT TO DISMISSAL DUE TO GOVERNMENTAL IMMUNITY

M.C.L.A. 691.1407 (2), in pertinent part, provides as follows:

> "Each...employee of a governmental agency...shall be immune from tort liability for injuries to person or damages to property caused by the...employee...while in the course of employment...while acting on behalf of a governmental agency if all the following are met:
>
> (A) The...employee...is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (B) The governmental agency is engaged in the exercise or discharge of a governmental function.

> **(C) The employee's...conduct does not amount to gross**
> **that is the proximate cause of the injury or damage. As used**
> **used in this subdivision, "gross negligence" means conduct**
> **so reckless as to demonstrate a substantial lack of concern**
> **for whether an injury results."** (Emphasis supplied)

It is clear that evidence of ordinary negligence does not create a material question of fact concerning gross negligence. Maiden v. Rozwood, 461 Mich. 109, 122-23; 597 N.W.2d 817 (1999). The Maiden court held that a Plaintiff must adduce proof of conduct "so reckless as to demonstrate a substantial lack of concern as to whether injury results", and to hold otherwise would create a jury question premised on something less than the statutory standard. Id. In addition to requiring Plaintiff to show reckless conduct, the Maiden court indicated that the content/substance of evidence proffered by Plaintiff has to be admissible. Id. at 123. Indeed, the court went on to state that to establish gross negligence, Plaintiff must focus on the employees actions, not on the result of those actions. Id. at 127 fn. 10. Finally, the court held that an expert witness' Affidavit or testimony stating that defendant's conduct constitutes gross negligence as defined by statute **does not** create a fact question sufficient to survive Summary Judgment. Id. at 129 fn. 11.

As indicated in the emphasized statutory language above, for liability to attach under M.C.L.A. 691.1407 (2)(c), Plaintiff must show that defendant's conduct was grossly negligent and that such conduct was "the" proximate cause of Plaintiff's incarceration. In Robinson v. City of Detroit, 462 Mich. 439; 613 N.W.2d 307 (2000), the Michigan Supreme Court over-ruled its holding in Dedes v. Asche, 446 Mich. 99; 521 N.W.2d 488 (1994) in which it effectively had ruled that the statutory language "the proximate cause" in M.C.L.A. 691.1407 (2)(c) meant "a proximate cause". The Robinson court reasoned that the legislature's deliberate choice to use the phrase "the proximate cause" required strict and restrictive statutory construction. ***The Robinson court redefined "the***

***proximate cause" as meaning "the one most immediate, efficient and direct cause of Plaintiff's injuries.*** Id.

The above principal has been specifically dealt with by this court in <u>Estate of Leslie George v. State of Michigan</u>, 136 F. Supp. 2d 695 (ED Mich, 2001). In <u>George</u>, Plaintiff's decedent was pulled over along the freeway for drunk driving. Id. at 697-98. While administering a field sobriety test on Plaintiff's decedent next to the freeway, a third party driver lost control of his vehicle and struck Plaintiff's decedent. Id. Defendants file a Motion for Summary Judgment asserting that "the most immediate, efficient and direct cause" of Plaintiff decedents death was the third party driver who struck her, and as such, no claim for gross negligence against the defendant state troopers existed. Id. at 702-03. In granting Defendants summary judgment, the <u>George</u> court agreed that the most immediate, direct and efficient cause of Ms. George's death was the driver that struck her. Id. See also, <u>Harvey Johnson, Personal Representative of the Estate of Harvey Steward v. Jeremy Driggett</u>, unpublished opinion per curiam of the Court of Appeals, issued January 31, 2013 (Docket No. 306560) where the one most direct cause of plaintiff decedent's death was held to be an intentionally fired gun shot rather than defendant's failure to render or summon medical care; <u>Estate of Gracie Simmons v. Lisa Millyard and Carlton Korzeniowski</u>, unpublished opinion per curiam of the Court of Appeals, issued June 26, 2012 (Docket No. 302561) where the one most direct cause of plaintiff decedent's death was held to be a murderer beating her to death as opposed to CPS workers negligence.

Application of the above principals to the case at bar indicates that defendant officers are entitled to dismissal of plaintiff's Gross Negligence claim. Undisputedly, "***the one most immediate, efficient and direct cause*** " of Patricia Williams death was Ed Williams shooting her.

**II**

**PLAINTIFF'S CLAIM OF A SUBSTANTIVE DUE PROCESS VIOLATION
UNDER THE STATE CREATED DANGER RULE AGAINST CITY OF DETROIT,
DWANE BLACKMON AND BARBARA KOZLOFF SET FORTH IN COUNT I
IS SUBJECT TO DISMISSAL DUE TO LACK OF A
GENUINE ISSUE OF MATERIAL FACT**

Generally, a governmental entity's failure to protect a citizen from private acts of violence does not constitute a violation of substantive due process because the 14th Amendment does not impose a duty upon government to provide adequate protection to its citizens. DeShaney v. Winnebago County, 489 U.S. 189, 195; 103 LEd. 2d 249; 109 S.Ct. 998 (1989); Sheets v. Mullins, 287 F. 3d 581, 586-87 (6th Cir. 2002); Kallstrom v. City of Columbus, 136 F. 3d 1055, 1065 (6th Cir. 1998). However, due process does impose a duty to protect against private acts of violence where a "special relationship" exists between the governmental entity and the citizen. DeShaney, supra at 199-201; Kallstrom, supra. This special relationship arises where the government has custody of the citizen or has otherwise imposed a restraint on the citizen's personal liberty. DeShaney, supra; Sheets, supra; Kallstrom, supra.

In DeShaney, the United States Supreme Court left open the possibility of liability to citizens for private acts of violence absent a special relationship. Sheets, supra; Kallstrom, supra at 1066. In Kallstrom, the City of Columbus released social security numbers, phone numbers, addresses and other personal information of various Columbus undercover police officers to defendant drug dealers attorney thereby placing them and their families in harm's way. Id. at 1059. The trial court granted the City's Motion for Summary Judgment, and the officers appealed. On appeal, the 6th Circuit first recognized the state created danger rule wherein liability can attach for private acts of violence where the government creates or increases the risk that a citizen will be exposed to private acts of

violence.  Id.  The Kallstrom Court went on to indicate that since many government activities have the potential to increase a citizen's risk of harm, a Plaintiff must show a "special danger" which entails government actions placing the specific Plaintiff at risk as opposed to a risk affecting the public at large.  Id. at 1066.  That is, the government must know or clearly should know that its actions specifically endanger a particular citizen.  Id.

Plaintiffs wishing to bring a claim under the "state created danger rule", must show three things: (1) an affirmative act by the state which either created or increased the risk that plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that it's actions specifically endangered plaintiff.  Koulta v. City of Centerline, 477 F.3d 442, 445 (6th Cir. 2007); Cartwright v. City of Marine City, 336 F.3d 487, 493 (6th Cir. 2003).

With regard to the requirement that the state engage in an affirmative act which creates or increases risk that plaintiff will be exposed to an act of violence from a third party, a failure to act does not satisfy the rule.  Koulta, supra at 445-46;  Cartwright, supra; Sargi v. Kent City Board of Education, 70 F.3d 907, 912-13 (6th Cir. 1995).  Because it is sometimes difficult to distinguish action from inaction, the 6th Circuit has refined the inquiry to "whether the victim was safer before the state action than he/she was after it".  Koulta, supra at 446;  Cartwright, supra.  Specifically, if plaintiff cannot identify conduct by the state which either created or increased the risk of harm to which plaintiff was exposed, 6th Circuit precedent requires the court to consider the officers' conduct as falling on the inaction side of the line.  Koulta, supra at 446; Jones v. Reynolds, 438 F.3d 685, 690 (6th Cir. 2006).

Application of the above principles to the case at bar leads to but one conclusion, to wit: plaintiffs substantive due process claim under the state created danger rule is subject to dismissal. First and foremost, the Detroit defendants did not engage in any form of affirmative act which created or increased the risk that Ed Williams would shoot and kill Patricia Williams. What plaintiff asserts is that the Detroit defendants should have arrested Ed Williams (taken into protective custody under MCLA 330.1401 and MCLA 330.1427), and driven him to the Crisis Center at Detroit Receiving Hospital for a psychiatric evaluation. This is a failure to act, and cannot form the basis of liability under the state created danger rule.

Plaintiff has characterized this inaction as an affirmative act by and through Barbara Kozloff calling Lt. Schultz of the Canton Police Department and telling him that she had spoken with Ed Williams in person for some 10 minutes and he appeared to be fine (ie no signs of mental illness indicative of him being a danger to himself, others or unable to care for his basic needs). Plaintiff then argues that as a result of this affirmative act, Lt. Schultz removed Ed Williams from the Michigan LIEN network as a "missing endangered". However, the query is "whether the victim was safer before the state action than she was after it". It is undisputed fact that Ed Williams was never pulled over by any law enforcement agency from the time he was removed from LIEN as a "missing endangered" until the time he shot his wife. Accordingly, plaintiffs claim fails for want of an affirmative act.

Equally destructive to plaintiff's claim is that the affirmative act has to increase the risk to plaintiff. The fact that Barbara Kozloff called Lt. Schultz and told him that Ed Williams appeared fine resulting in Schultz's decision to remove Williams from LIEN as a "endangered missing" did not in any way, shape or form increase the danger to Patricia Williams. Patricia Williams was in

the same danger of being shot by her husband as she would have been had the Detroit and Canton defendants never been involved. The most that can be said is that Kozloff's failing to take Ed Williams into protective custody did not potentially decrease the danger to Patricia Williams. Likewise, Lt. Schultz's removal of Ed Williams as an "endangered missing" from the LIEN network allegedly predicated on Kozloff reporting that Ed Williams seemed fine, at most, did not potentially decrease the danger to Patricia Williams by and through leaving Ed Williams in the LIEN system.

Moreover, it is undisputed that Ed Williams was never pulled over by law enforcement from the time he was removed from LIEN through the time he shot and killed his wife. Ergo, even if the act of contacting Lt. Schultz were considered an affirmative one, the resulting removal of Ed Williams from LIEN undisputedly was not causally related to Patricia Williams' shooting. Without any causal relationship, it is not possible to argue that it increased the danger of Patricia Williams being shot.

The final point comes into focus by looking at the gestalt. Assuming arguendo that Barbara Kozloff had taken Ed Williams into protective custody under MCLA 330.1401 and MCLA 330.1427, it is nothing short of pure speculation and conjecture to assume this would have prevented him from shooting his wife. This is because there is no way to guess as to whether the psychiatric unit at Detroit Receiving Hospital would hold Ed Williams for any given length of time, nor whether Williams would still shoot his wife upon his release. (Exhibit 9, p. 128, ln 1-21; Exhibit 6, p. 25, ln 13-22; pp. 44-45, ln 16-3; Exhibit 3, pp. 73-74, ln 15-6).

In sum, plaintiff's substantive due process claim under the state created danger rule is subject to dismissal.

**PLAINTIFF'S CLAIM OF AN EQUAL PROTECTION VIOLATION
AGAINST CITY OF DETROIT, DWANE BLACKMON AND BARBARA KOZLOFF
SET FORTH IN COUNT II IS SUBJECT TO DISMISSAL DUE TO LACK OF A
GENUINE ISSUE OF MATERIAL FACT**

The Equal Protection Clause of the 14th Amendment prohibits discrimination by government by and through burdening a fundamental right, targeting a suspect class or intentionally treating one differently than others similarly situated without a rational basis for the disparate treatment. Trihealth, Inc. v. Coard of Commissioners, Hamilton County, 430 F.3d 783, 788 (6th Cir. 2005). Where the classification at issue does not involve a suspect class or fundamental right, courts apply a rational basis scrutiny. Zielasko v. State of Ohio, 873 F.2d 957, 959 (6th Cir. 1989). Rational basis scrutiny only requires a state of facts that provide a conceivable basis for the classification. Allied Stores v. Bowers, 358 U.S. 522, 530; 3 L.Ed.2d 480; 79 S. Ct. 437 (1959).

In LRL Properties, et al v. Portage Metro Housing, 55 F.3d 1097, 1116-17 (6th Cir. 1995), the 6th Circuit best set forth the standard for rational basis scrutiny as follows:

> A classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose...Instead, the classification must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.
>
> A state, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification....The burden is on the one attacking the legislative arrangement to negative every conceivable basis upon which might support it, whether or not the basis has a foundation in the record. quoting, Heller v. Doe by Doe, 509 U.S. 312, 320-21; 125 L. Ed2d 257; 113 S. Ct. 2637 (1993) (citations omitted).

In the case at bar, plaintiff has alleged that the Detroit defendants treated plaintiff's class

(victims of domestic violence perpetrated by police officers) differently then victims of domestic violence in general. According to the commanding officer of the Domestic Violence Unit for the DPD, all allegations of criminal misconduct of Detroit police officers, including domestic violence, are handled by Internal Affairs. (Exhibit 11, deposition of Monique Patterson, p. 10, ln 7-10; p. 12, ln 2-14). According to the commanding officer of Internal Affairs, Internal Affairs uses the standard Domestic Violence Policy contained in the Detroit Police Manual for its guidelines and operations. (Exhibit 12, deposition of Whitney Walton, p. 11, ln 9-16; p. 49, ln 3-9; p. 50, ln 5-8). In fact, Lt. Walton testified that Internal Affairs engages in standard law enforcement with respect to domestic violence from arrests through court appearances and prosecution of police officers. (Exhibit 12, pp. 52-53, ln 21-17).

Finally, Commander Brian Stair, who is the commanding officer of Internal Controls which is composed of both Internal Affairs and Force Investigation has testified that criminal behavior of police officers is handled by Internal Affairs to avoid favoritism and the appearance of impropriety. (Exhibit 13, deposition of Brian Stair, p. 9, ln 16-24; p. 19, ln 3-15).

Clearly, just as the vast majority of law enforcement agencies across the United States, there is a rational basis for Internal Affairs handling all matters involving police officer criminal behavior including domestic violence. As Commander Stair put it, it is to avoid favoritism and the appearance of impropriety. Additionally, Internal Affairs uses the same Domestic Violence Policy used with the general public, and uses standard law enforcement procedures in investigating and prosecuting police officer perpetrators of domestic violence. Plaintiff has absolutely no evidence to the contrary.

In fact, over 350 Internal Affairs files regarding allegations of police officer domestic violence were produced for plaintiff. Plaintiff will not be able to produce evidence that police officer domestic violence is handled any less stringently then domestic violence amongst the general Detroit citizenry.

There is clearly a rational basis for Internal Affairs handling allegations of domestic violence against police officers, and plaintiff has failed to produce evidence that Internal Affairs does not pursue such allegations with the same fervor that domestic violence allegations are pursued against non police officers. Finally, there is no evidence that Ed Williams was treated differently by the Canton or Detroit defendants because he was a police officer. In fact, the argument is counter intuitive given Patricia Williams was also a Detroit police officer. Accordingly, the Detroit defendants are entitled to dismissal of plaintiff's Equal Protection claim.

### IV

### BARBARA KOZLOFF AND DWANE BLACKMON ARE ENTITLED TO SUMMARY JUDGMENT AS TO ALL PLAINTIFF'S FEDERAL CIVIL RIGHTS CLAIMS UNDER 42 U.S.C. §1983 BASED ON QUALIFIED IMMUNITY

Under the qualified immunity doctrine, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818; 73 L.Ed.2d 396; 102 S.Ct. 2727 (1982). To determine whether a right is clearly established, a District Court within the 6th Circuit must find binding precedent from the Supreme Court, 6th Circuit or itself. Binkowski v. Family and Childrens Services Agency, 39 F. Supp.2d 882, 886 (ED Mich. 1998). It is not enough for a Plaintiff to allege that the right to due process under the 14th Amendment was clearly established at the time of the

incident, but rather, the right the government employee is alleged to have violated must be clearly established such that the contours of the right are sufficiently clear so that a reasonable government official would understand that what he/she is doing violates that right. <u>Anderson v. Creighton</u>, 483 U.S. 635, 640; 97 L.Ed2d 523; 107 S.Ct. 3034 (1987).

A police officer is entitled to qualified immunity unless on an objective basis it is obvious that no reasonably competent officer would have concluded that his conduct was lawful. <u>Malley v. Briggs</u>, 475 U.S. 335, 341; 89 L.Ed2d 271; 106 S.Ct. 1092 (1986). Put another way, if officers of reasonable competence could disagree on the issue of whether particular conduct is unconstitutional, then immunity should be granted. <u>Malley, supra</u>. The qualified immunity standard gives ample room for mistaken judgment by protecting all but the plainly incompetent or those who knowingly violate the law. <u>Malley, supra</u>.

Finally, the issue of whether an official is entitled to qualified immunity is legal in nature, and must be determined by the court. <u>Garvie v. Jackson</u>, 845 F. 2d 647, 649 (6th Cir. 1988).

While it is clear that Kozloff and Blackmon did not violate Patricia Williams' 14th Amendment substantive due process rights under the state created danger rule or equal protection rights, if there is any argument that those rights were violated, both defendants are entitled to qualified immunity. First, a reasonably competent police officer would not, by any stretch of the imagination, know that he/she was violating Patricia Williams substantive due process rights under the state created danger rule by and through failing to take Ed Williams into protective custody when the officer does no believe there is probable cause to do so. At the very least, reasonably competent officers could disagree on the issue, and as proof positive, reasonably competent civil rights attorneys can and do disagree.

Second, Kozloff and Blackmon have absolutely nothing to do with the DPD policy that Internal Affairs handles all police officer criminal behavior, including domestic violence perpetrated by police officers. Nor would either know that because of this DPD classification, they were offending Patricia Williams' equal protection rights.

In sum, while Kozloff and Blackmon did not violate Patricia Williams constitutional rights, to the extent that one argues they did, then they would be entitled to qualified immunity.

**V**

### THE CITY OF DETROIT IS ENTITLED TO DISMISSAL OF PLAINTIFF'S MONELL CLAIMS FOR WANT OF A GENUINE ISSUE OF MATERIAL FACT

It is well settled that in order to establish a claim under 42 U.S.C. § 1983 against a municipality, Plaintiff must plead and prove a custom, policy, practice and/or procedure which caused a violation of Plaintiff's constitutional rights. Pembauer v. Cincinnati, 475 U.S. 469; 106 S.Ct. 1292; 89 L.Ed.2d 452 (1986); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91; 98 S.Ct. 2018; 56 L.Ed.2d 611 (1978). Liability must be predicated on more than allegations that a municipal employee is a tortfeasor. Monell, supra at 691. In fact, a municipality *cannot* be found liable under §1983 on a respondeat superior theory. Oklahoma City v. Tuttle, 471 U.S. 808; 105 S.Ct. 2427; 85 L.Ed.2d 791 (1985); Monell, supra.

With respect to proving a custom, policy, practice and/or procedure which caused an alleged constitutional violation, the same must have originated from a decision maker with final policy making authority. Pembauer, supra at 482. Moreover, the custom, policy, practice and/or procedure must be the "moving force" behind the alleged constitutional violation to establish municipal liability. Monell, supra at 694. Finally, where Plaintiff proceeds on a theory that factually lawful government policy lead an employee to violate Plaintiff's constitutional rights, Plaintiff must plead

and prove that the agency was not just negligent but acted with deliberate indifference to known or obvious consequences. City of Canton v. Harris, 489 U.S. 378; 109 S.Ct. 1997; 103 L.Ed.2d 412 (1989). Deliberate indifference is shown only where the municipal policy is constitutionally arbitrary such that it is egregious to the point of "shocking the conscience". County of Sacremento v. Lewis, 523 U.S. 833; 118 S.Ct. 1708; 140 L.Ed.2d 1043 (1998) quoting Collins v. Harker Heights, 503 U.S. 115, 129; 112 S.Ct. 1061; 117 L.Ed.2d 261 (1992).

The City of Canton v. Harris line of cases allows a Plaintiff to establish a municipal "policy or custom" through presenting evidence that a failure to train and/or discipline officers shows deliberate indifference on the part of municipal policymakers to the rights of it's citizens. City of Canton, supra; Berry v. City of Detroit, 25 F. 3d 1342 (6th Cir. 1994). *In establishing a de facto municipal policy predicated on failure to train, a Plaintiff must show that the City's training programs are inadequate to the tasks the officers are to perform; the inadequacy is a result of the City's deliberate indifference; and that the inadequacy actually caused the Plaintiff's injury*. Berry at 1346.

Deliberate indifference is shown only where the need for more or different training is so obvious, and the inadequacy so likely to result in constitutional violations, that the policy makers can be reasonably said to have been deliberately indifferent to this need. Canton, supra; Barber v. City of Salem, 953 F.2d 232, 236 (6th Cir. 1992). In addition, the Berry court indicated that in failure to train claims, deliberate indifference can be shown by establishing that the City was aware of wide spread constitutional violations, yet ignored them such that the City could be said to have given tacit authorization to the officers' constitutionally aberrant conduct. Berry, supra at 1354.

Additionally, the Canton court indicated that showing a particular officer is inadequately trained or that Plaintiff's injury could have been avoided had an officer had better training will not suffice to fasten liability to a municipality. Canton, supra at 391.

As a final matter, Summary Judgment is proper absent a showing that training deficiencies caused the constitutional deprivation alleged by plaintiff. Canton, supra; Smith v. Yono, 613 F. Supp. 50 (E.D. Mich. 1985).

In the case at bar, Barbara Kozloff and Dwane Blackmon did not violate plaintiff's decedents' constitutional rights as set forth in Arguments II, III and IV supra. It is well settled that where plaintiff does not suffer a constitutional injury at the hands of municipal employees, there can be no municipal liability under Monell, supra. City of Los Angeles v. Heller, 475 U.S. 796, 799; 89 L. Ed.2d 806; 106 S. Ct. 1571 (1986); Wilson v. Morgan, 477 F.3d 326, 340 (6th Cir. 2007).

Quite apart from the above, Plaintiff cannot proffer a single micro-dot of admissible evidence that any City of Detroit policy, custom or procedure was the moving force behind defendant officers alleged constitutionally aberrant conduct. First and foremost, there is no evidence that the City was aware of widespread constitutional violations of substantive due process rights under the state created danger rule and equal protection rights arising out of police officer domestic violence. There simply is no evidence that the need for further training was so obvious due to the wide spread constitutional violations that the City was deliberately indifferent. Further, there is no evidence that the City's training was inadequate to the tasks defendant officers were to perform, that any inadequacy was known to the City, that the City's alleged failure to train defendant officers was a result of deliberate indifference because of a pattern of widespread constitutional violations and/or that this alleged failure was the moving force behind Plaintiff's decedent's death at the hands of her husband.

In sum, Plaintiffs cannot show that a genuine issue of material fact exists with respect to

Plaintiffs Federal Civil Rights claims against the City of Detroit under <u>Monell</u>, <u>supra</u>. As such, the City is entitled to judgment as a matter of law on Count V of Plaintiff's Complaint.

<u>**CONCLUSION**</u>

For the forgoing reasons, Defendants, City of Detroit, Eric Raby and Curtis Goode respectfully request this Honorable Court enter an Order dismissing all claims against them.

Respectfully Submitted,


/s/Michael M. Muller
**MICHAEL M. MULLER (P-38070)**
**Senior Assistant Corporation Counsel**
Attorney for Defendants
2 Woodward Avenue, Suite 500
Detroit, MI 48226
Date: July 15, 2013                         (313) 237-5052

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**Deborah Ryan**, on behalf of herself
individually and as Personal Representative
of the **Estate of Patricia "Katie' Williams**,                    Honorable Mark A. Goldsmith
                                                                   Magistrate Michael Hluchaniak
    Plaintiff,                                 Case No. 2:11-cv-10900

v

**City of Detroit**, acting through its
agency the Detroit Police Department,
Detroit Police Sergeant **Barbara Kozloff**,
in her individual capacity, Detroit Police Inspector
(formerly Lieutenant) **Dwane Blackmon**, in his
individual capacity; Canton Township, Canton Police
Lieutenant **Mark Schultz**, in his individual capacity;
Canton Police Officer **Adam Falk**, in his individual
capacity,

    Defendants.

_____

| | |
|---|---|
| **William H. Goodman (P-14173)** | **Michael M. Muller  (P-38070)** |
| **Julie H. Hurwitz (P-34720)** | 2 Woodward Ave., Ste. 500 |
| **Kathryn Bruner James (P-71374)** | Detroit, MI 48226 |
| 1394 East Jefferson Avenue | (313) 237-5052 |
| Detroit, Michigan 48207 | mullm@detroitmi.gov |
| (313) 567-6170 | Attorney for defendants, City of Detroit, |
| bgoodman@goodmanhurwitz.com | Blackmon and Kozloff |
| Attorneys for plaintiff | |
| | **James R. Acho (P-62175)** |
| **Kathleen J. Kalahar (P-60301)** | 33900 Schoolcraft |
| 1394 E. Jefferson Ave. | Livonia, MI 48150 |
| Detroit, MI 48207 | (734) 261-2400 |
| (313) 567-6165 | jacho@cmda-law.com |
| kkalahar@goodmankalahar.com | Attorney for defendants, Canton Township, |
| Co-Counsel for plaintiff | Schultz and Falk |

_____

K:\DOCS\LIT\mullm\A37000\MOT\MM4467.WPD

## **PROOF OF SERVICE**

I hereby certify that on July 15, 2013, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record with the court.

**s/Michael M. Muller**