IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------- x
:
In re : Chapter 9
:
CITY OF DETROIT, MICHIGAN, : Case No. 13-53846
:
Debtor. : Hon. Steven W. Rhodes
x

**DEBTOR'S BRIEF IN OPPOSITION TO PETITION FOR ORDER LIFTING STAY[1]**

Six weeks after the Emergency Manager's appointment became effective, the Plaintiffs filed the Lawsuit seeking a judgment declaring not only the Emergency Manager's appointment to be invalid, but all actions he has taken, including the filing of this chapter 9 case, to be unenforceable. Yet, the Plaintiffs somehow assert that granting them relief from stay to prosecute this Lawsuit to judgment will have "no effect whatsoever on the City's ability to reorganize" because it is "completely unrelated" to the chapter 9 case. Stay Relief Brief at 3, 8. This is not accurate nor is the timing of the Lawsuit's filing a coincidence. The Stay Relief Motion is nothing more than a thinly veiled attempt to litigate the

---

[1] Capitalized terms not defined in this Brief in Opposition, have the meanings given to them in the City's Objection to Petition for Order Lifting Stay, filed contemporaneously with this brief.

City's eligibility before a different court in circumvention of the Court's Stay Extension Order and the process this Court adopted to resolve eligibility objections. The Plaintiffs have not identified any cause, much less sufficient cause, to allow them to proceed with the Lawsuit. Accordingly, the Stay Relief Motion must be denied.

## ARGUMENT

In support of the Stay Relief Motion, the Plaintiffs advance three arguments: (1) the Stay Extension Order does not apply to the Lawsuit, either because it did not specifically identify the Lawsuit or because it cannot be read so broadly as to include the Lawsuit; (2) the Court did not have the authority to enter the Stay Extension Order; (3) the Plaintiffs have demonstrated cause for relief from the Automatic Stay. None of these arguments have any merit.

### I. The Stay Extension Order Applies to the Lawsuit

The Plaintiffs misunderstand or misconstrue the relief granted in the Stay Extension Order. The Lawsuit is precisely the type of case that the Stay Extension Order was intended to cover and, contrary to the Plaintiffs' assertions, it does not provide the Defendants "complete immunity from all litigation." Stay Relief Brief at 9.

The Plaintiffs devote much of the Stay Relief Motion in a misguided attempt to argue that only a limited set of actions within the definition of "Prepetition

- 2 -
13-53846-tjt    Doc 1044    Filed 09/26/13    Entered 09/26/13 17:41:21    Page 2 of 12

Lawsuits" are covered by the Stay Extension Order.  The Plaintiffs reason that, because the Lawsuit is not covered by the definition of "Prepetition Lawsuits," that case is not subject to the Stay Extension Order.  Stay Relief Brief at 8.

The Plaintiffs quote only paragraph 3 of the Stay Extension Order which states: "For the avoidance of doubt, each of the Prepetition Lawsuits hereby is stayed, pursuant to section 105(a) of the Bankruptcy Code, pending further order of this Court."  This statement clarifies that a small group of three "Prepetition Lawsuits" are included in the relief granted and therefore are stayed.  But nowhere does this statement limit the scope of the relief sought or obtained so that it would apply only to these three Prepetition Lawsuits.

The primary relief is granted in the prior paragraphs of the Stay Extension Order.  Paragraph 1 states, without reservation or limitation of any kind, that the Stay Extension Motion is "granted." Paragraph 2 of the Stay Extension Order then states broadly that:

> Pursuant to section 105(a) of the Bankruptcy Code, the Chapter 9 stay hereby is extended in all respects (to the extent not otherwise applicable) to the State Entities (defined as the Governor, the State Treasurer and the members of the Loan Board, collectively with the State Treasurer and the Governor, and together with each entity's staff, agents and representatives), the Non-Office Employees and the City Agents and Representatives.

As such, the Stay Extension Order makes clear that the Automatic Stay was extended to the Governor and Treasurer to stay any and all cases that "have the

direct or practical effect of denying the City the protections of the" Automatic Stay so as to aid the City in the administration of its bankruptcy case and ensure the City is afforded the breathing spell it needs to focus on developing and negotiating a plan for adjusting its debts. See Stay Extension Motion at ¶ 15. This District Court judge in the Lawsuit agreed, finding, after review of an objection by the Plaintiffs, that "the plain language of the stay order would apply to this lawsuit."[2] Stay Relief Motion, Exhibit A.

If the Lawsuit were to continue, and if the District Court were to grant judgment in favor of the Plaintiffs, it is almost certain that the Plaintiffs (and others) would argue before this Court that the decisions and actions of the Emergency Manager – including the filing and prosecution of this chapter 9 case – are void and of no effect. Reading the prayer for relief in the Amended Complaint is all that is necessary to reach that conclusion. Reduced to its basics, the Lawsuit is yet another vehicle to challenge the City's eligibility for chapter 9 relief or otherwise attempt to interfere with the City's restructuring efforts. Such a result

---

[2] The Plaintiffs may not re-litigate this issue in this Court. See e.g., Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc., 701 F.3d 1093, 1098 (6th Cir. 2012) (holding that issue preclusion precludes relitigation where (1) the precise issue was raised and litigated in the prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceedings; (3) the prior proceedings resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought had a full and fair opportunity to litigate the issue in the prior proceeding).

would have the direct and practical effect of denying the City the protections of the Automatic Stay and "interfere with the City's activities in this chapter 9 case" (Stay Extension Motion at ¶ 20) – the precise result that the Stay Extension Order was seeking to avoid. Furthermore, this Court has assiduously and correctly endeavored to consolidate all possible objections to the eligibility of the City to seek chapter 9 relief before it and to avoid the exact result that would be occasioned if stay relief were to be granted to the Plaintiffs to permit an attack on PA 436 and all that implicates. Thus, the Plaintiffs' arguments that either the Stay Extension Order does not apply to the Lawsuit or that it is too broad to be enforced, fail. Stay Relief Brief at 9. Accordingly, as the District Court has already found, the Stay Extension Order applies to the Lawsuit.

## II. The Court Had Authority to Enter the Stay Extension Order

The Plaintiffs also argue that the Court did not have the authority to enter the Stay Extension Order. This is nothing more than a collateral attack upon the Stay Extension Order. Similar arguments were timely raised by other parties and rejected by this Court.[3] As the Plaintiffs recognize, a bankruptcy court may

---

[3] Other parties have raised similar objections to the Stay Extension Motion. See Dkt. No. 84 (the "AFSCME Objection"), ¶ 45-46 (arguing no identity of interests between the City and State Entities); Dkt. No. 141 (the "Retirement Systems Objection"), pp. 16-17 (same, and adding the argument that "[a] judgment obtained in any one of [certain pre-petition lawsuits against the Governor, the Emergency Manager, and others] will not be a judgment against the City. . . ."); see also Dkt. No. 146 (the "Flowers Objection"), ¶ 4 (arguing that "[a]t no point have the
*Continued on next page.*

extend the automatic stay where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." In re Eagle-Picher Indus., Inc., 963 F.2d 855, 861 (6th Cir. 1992) (quoting A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986)). The Lawsuit seeks a judgment against the Defendants declaring not only the Emergency Manager's appointment to be invalid, but all actions he has taken, including the filing of this chapter 9 case, to be unenforceable. Thus, any judgment against the Defendants would in effect be a judgment or finding against the City. As a result, under well-established Sixth Circuit precedent, this Court had the authority to enter the Stay Extension Motion. The Plaintiff's arguments to the contrary must be rejected.

### III. No Cause Exists to Grant Plaintiffs Relief from the Automatic Stay

Section 362(a) of the Bankruptcy Code provides in relevant part that:

> a petition filed under . . . this title . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the

---

*Continued from previous page.*
*Flowers* plaintiffs sued . . . or sought any relief against" the City, its officials, or employees). The Debtor addressed these arguments in its reply (Dkt. No. 128, ¶¶ 6-8). The Plaintiffs add nothing to this issue by raising these same arguments again.

debtor that arose before the commencement of the case . . . .

11 U.S.C. § 362(a). The Automatic Stay "is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." <u>Javens v. City of Hazel Park (In re Javens)</u>, 107 F.3d 359, 363 (6th Cir. 1997) (quoting H.R. REP. NO. 95-595, at 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6296).

Section 362(d) of the Bankruptcy Code authorizes a bankruptcy court to grant relief from the Automatic Stay in limited circumstances. <u>See</u> 11 U.S.C. § 362(d). In particular, section 362(d)(1) of the Bankruptcy Code provides that a party in interest may obtain relief from the Automatic Stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d)(1).

"The Bankruptcy Code does not define 'cause' as used in [section] 362(d)(1). Therefore, under [section] 362(d), 'courts must determine whether discretionary relief is appropriate on a case by case basis.'" <u>Chrysler LLC v. Plastech Engineered Prods., Inc. (In re Plastech Engineered Prods., Inc.)</u>, 382 B.R. 90, 106 (Bankr. E.D. Mich. 2008) (quoting <u>Laguna Assocs. L.P. v. Aetna Casualty & Surety Co. (In re Laguna Assocs. L.P.)</u>, 30 F.3d 734, 737 (6th Cir. 1994)). The determination of whether to grant relief from the Automatic Stay "resides within

- 7 -
13-53846-tjt    Doc 1044    Filed 09/26/13    Entered 09/26/13 17:41:21    Page 7 of 12

the sound discretion of the Bankruptcy Court." Sandweiss Law Center, P.C. v. Kozlowski (In re Bunting), No. 12-10472, 2013 WL 153309, at *17 (E.D. Mich. Jan. 15, 2013) (quoting In re Garzoni, 35 F. App'x 179, 181 (6th Cir. 2002)).

> To guide the bankruptcy court's exercise of its discretion . . . the Sixth Circuit identifies five factors for the court to consider: (1) judicial economy; (2) trial readiness; (3) the resolution of the preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; and (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors.

Bunting, 2013 WL 153309, at *17 (quoting Garzoni, 35 F. App'x at 181) (internal quotation marks omitted). In determining whether cause exists, however, "the bankruptcy court should base its decision on the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code." Plastech, 382 B.R. at 106 (quoting In re C & S Grain Co., 47 F.3d 233, 238 (7th Cir. 1995)).

Here, consideration of the these factors confirms that no cause (much less sufficient cause) exists to justify relief from the Automatic Stay to allow the Lawsuit to proceed. With respect to the first factor, the interests of judicial economy weigh heavily in favor of denying the Stay Relief Motion. Numerous parties have raised similar eligibility issues in this chapter 9 case[4] (the Plaintiffs not being one of them) that the Plaintiffs seek to litigate in the Lawsuit in front of

---

[4] See e.g., The City's Consolidated Reply to Objection to the Entry of an Order for Relief at 38-44, 89, 95-96, 98. [Dkt. No. 765].

the District Court. As this Court emphasized, litigating eligibility issues in two different courts, simultaneously "does not promote judicial or party efficiency; it is the antithesis. The most efficient way to litigate eligibility in this case is in one court – the bankruptcy court – and then on appeal in the next." Opinion and Order Denying Motion to Stay Proceedings Pending Determination of Motion to Withdraw the Reference at 19. [Dkt. No. 1039]. Accordingly, judicial economy dictates staying the Lawsuit so as to permit this Court to address the PA 436 Eligibility Objections in the single, unified context of the eligibility trial.

With respect to the second factor, the Lawsuit is in its preliminary stages. The Defendants' motion to dismiss remains pending. No discovery has been taken. Thus, the Lawsuit has not even advanced beyond the pleading stage and is not trial ready. The third factor also weighs in favor of denying the Stay Relief Motion as the Court has not even resolved the City's eligibility for relief in this chapter 9 case. Nothing could be more basic or preliminary to the ultimate outcome.

Further, concerning the fourth factor, as set forth in the Defendants' motion to dismiss and in the Defendants' Opposition to the Stay Relief Motion, the Plaintiffs have not demonstrated a likelihood of success on the merits.

Finally, the fifth factor weighs in favor of denying the Stay Relief Motion. Although the City is not currently a party in the Lawsuit, the impact that the

- 9 -
13-53846-tjt    Doc 1044    Filed 09/26/13    Entered 09/26/13 17:41:21    Page 9 of 12

the District Court. As this Court emphasized, litigating eligibility issues in two different courts, simultaneously "does not promote judicial or party efficiency; it is the antithesis. The most efficient way to litigate eligibility in this case is in one court – the bankruptcy court – and then on appeal in the next." Opinion and Order Denying Motion to Stay Proceedings Pending Determination of Motion to Withdraw the Reference at 19. [Dkt. No. 1039]. Accordingly, judicial economy dictates staying the Lawsuit so as to permit this Court to address the PA 436 Eligibility Objections in the single, unified context of the eligibility trial.

With respect to the second factor, the Lawsuit is in its preliminary stages. The Defendants' motion to dismiss remains pending. No discovery has been taken. Thus, the Lawsuit has not even advanced beyond the pleading stage and is not trial ready. The third factor also weighs in favor of denying the Stay Relief Motion as the Court has not even resolved the City's eligibility for relief in this chapter 9 case. Nothing could be more basic or preliminary to the ultimate outcome.

Further, concerning the fourth factor, as set forth in the Defendants' motion to dismiss and in the Defendants' Opposition to the Stay Relief Motion, the Plaintiffs have not demonstrated a likelihood of success on the merits.

Finally, the fifth factor weighs in favor of denying the Stay Relief Motion. Although the City is not currently a party in the Lawsuit, the impact that the

Lawsuit may have on the City and its restructuring efforts may require the City to intervene or otherwise become further involved and take other actions if the Stay Relief Motion is granted. Requiring the City to defend the Lawsuit in the District Court would distract the City from its efforts to restructure, diverting its limited resources at a time when it is both working to negotiate and deliver a plan of adjustment quickly and engaged in a substantial amount of discovery and litigation (all on its own expedited timeframe) arising in the bankruptcy case itself. The City does not need further impediments to its restructuring efforts. This Court has consistently endeavored to bring all matters which may affect the eligibility of the City before it and have the issues resolved in one forum. Allowing the Lawsuit to proceed in the District Court would cast uncertainty[5] over the eligibility and restructuring process and may chill negotiations among the parties or adversely affect the confirmation of the plan of adjustment.

In short, allowing the Lawsuit to proceed would undermine the protections of the Automatic Stay and interfere with the City's efforts to restructure. The City sought relief under chapter 9 in part to obtain the "breathing spell" afforded by the

---

[5] This Court acknowledged that the uncertainty occasioned just by the eligibility objections already before it will likely slow, if not stall entirely, the "City's progress in recovering its financial, civic, commercial, and cultural life and in revitalizing itself." Opinion and Order Denying Motion to Stay Proceedings Pending Determination of Motion to Withdraw the Reference at 23. [Dkt. No. 1039]. Having the City's eligibility adjudicated simultaneously in two courts obviously compounds that uncertainty.

- 10 -
13-53846-tjt    Doc 1044    Filed 09/26/13    Entered 09/26/13 17:41:21    Page 10 of 12

Automatic Stay and the consequent protection from its creditors while it restructures its affairs and prepares a plan of adjustment. The City's finances would be further depleted and its personnel distracted from their mission to operate the City for the benefit of its citizens and restructure its affairs if it were denied this basic protection of chapter 9 and forced to defend itself against the Plaintiffs so early in the case. Accordingly, the overall goals of chapter 9 weigh largely in favor of denying stay relief to the Plaintiffs.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the City respectfully requests that this Court (a) deny the Stay Relief Motion; and (b) grant such other relief to the City as the Court may deem proper.

Dated: September 26, 2013         Respectfully submitted,

                              By: /s/Stephen S. LaPlante
                              Jonathan S. Green (MI P33140)
                              Stephen S. LaPlante (MI P48063)
                              Timothy A. Fusco (P13768)
                              MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
                              150 West Jefferson
                              Suite 2500
                              Detroit, Michigan 48226
                              Telephone: (313) 963-6420
                              Facsimile: (313) 496-7500
                              green@millercanfield.com
                              laplante@millercanfield.com
                              fusco@millercanfield.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com


Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

ATTORNEYS FOR THE CITY OF DETROIT