IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------------------ x
                                                 :
In re                                            :    Chapter 9
                                                 :
CITY OF DETROIT, MICHIGAN,                       :    Case No. 13-53846
                                                 :
         Debtor.                                 :    Hon. Steven W. Rhodes
------------------------------------------------ x

**DEBTOR'S BRIEF IN OPPOSITION TO CATHERINE PHILLIPS, et al.'s MOTION FOR RELIEF FROM ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE ENTITIES, (B) NON OFFICER EMPLOYEES AND (C) AGENTS AND REPRESENTATIVES OF THE DEBTOR[1]**

Two days after Mr. Orr formally took office, the Plaintiffs filed the Lawsuit seeking a judgment enjoining Mr. Orr from taking any actions under PA 436 and declaring PA 436 to be unconstitutional. Yet, the Plaintiffs somehow assert that granting them relief from stay to prosecute this Lawsuit to judgment will "not interfere with the progression of the Debtor's bankruptcy case" because the City will not be "in any way affected." Stay Relief Motion at 12; Stay Relief Brief at 14. This is not accurate nor is the timing of the Lawsuit's filing a coincidence. Although some of the Plaintiffs are citizens of municipalities other than the City --

---

[1] Capitalized terms not otherwise defined in this Brief in Opposition have the meanings given to them in the Debtor's Objection, filed contemporaneously herewith.

- 1 -

Flint, Pontiac and Benton Harbor -- as the Complaint acknowledges, these municipalities have all had emergency managers for at least two years. The fact that the Plaintiffs did not file the Lawsuit until several years after the appointment of those emergency managers while doing so just two days after Mr. Orr formally took office, cannot be dismissed as mere happenstance. Instead, it is apparent that the Lawsuit is a direct challenge to Mr. Orr's appointment as Emergency Manager and inescapably, an attack on any actions he may take, including his decision to file and prosecute this chapter 9 case.

This Lawsuit, much like the suit and stay relief motion filed by the NAACP [Dkt. No. 740], is an effort to litigate the City's eligibility before a different court in circumvention of the Court's Stay Extension Order and the process this Court adopted to resolve eligibility objections. Granting stay relief to the Plaintiffs will open the flood gates allowing other parties to file suits in different courts which, at the end of the day, would be little more than eligibility challenges to the City's chapter 9 case.[2] As this Court emphasized, litigating eligibility issues in two different courts, simultaneously "does not promote judicial or party efficiency; it is the antithesis. The most efficient way to litigate eligibility in this case is in one court – the bankruptcy court – and then on appeal in the next." Opinion and Order

---

[2] It would appear to be axiomatic that granting stay relief to the Plaintiffs, would also compel the Court to grant stay relief to the NAACP.

Denying Motion to Stay Proceedings Pending Determination of Motion to Withdraw the Reference at 19. [Dkt. No. 1039]. As such, the Plaintiffs have not identified any cause, much less sufficient cause, to allow them to proceed with the Lawsuit. Accordingly, the Stay Relief Motion must be denied.

## I. BACKGROUND

### A. Appointment of the Emergency Manager

On February 19, 2013, a review team appointed by Rick Snyder, Governor of the State of Michigan (the "Governor"), pursuant to Public Act 72 of 1990, the Local Government Fiscal Responsibility Act, MCL § 141.1201, et seq. ("PA 72"), issued its report with respect to the City and its finances (the "Review Team Report"). The Review Team Report concluded that a local government financial emergency exists within the City.

On March 14, 2013, in response to the Review Team Report and the declining financial condition of the City and at the request of the Governor, the Local Emergency Financial Assistance Loan Board of the State of Michigan appointed Kevyn D. Orr as emergency financial manager with respect to the City under PA 72, effective as of March 25, 2013.

On March 28, 2013, upon the effectiveness of Public Act 436, the Local Financial Stability and Choice Act, MCL § 141.1541, et seq. ("PA 436"), Mr. Orr

21573415.3\022765-00202

became, and continues to act as, emergency manager with respect to the City under PA 436 (in such capacity, the "Emergency Manager").

On July 18, 2013, the Governor issued his written decision (the "Authorization") approving the Emergency Manager's recommendation that the City be authorized to proceed under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code"). Thereafter, also on July 18, 2013, the Emergency Manager issued an order approving the filing of the City's chapter 9 case consistent with the Authorization (the "Approval Order").

In accordance with the Authorization and Approval Order, on July 18, 2013 (the "Petition Date"), the City commenced this case under chapter 9 of the Bankruptcy Code.

### B. The Plaintiffs' Lawsuit in the District Court

On March 27, 2013, the Plaintiffs filed the Complaint against the Governor and State Treasurer Andrew Dillon (collectively, the "Defendants"), commencing Case No. 13-11370 (the "Lawsuit"), in the United States District Court for the Eastern District of Michigan, Southern Division (the "District Court"). The Complaint seeks a judgment (a) declaring PA 436 unconstitutional (Prayer A); (b) enjoining and restraining the Defendants and any present and future emergency managers from implement or exercising authority and powers purportedly conveyed by PA 436 (Prayer B); and (c) invalidating and restraining the terms of

present and future consent agreements entered into under PA 436 that abridge or diminish powers granted to local elected officials under local charters and ordinances (Prayer C). Complaint at 49-50.

Approximately six weeks later, the Defendants filed their Motion to Dismiss (the "Motion to Dismiss").  The Motion to Dismiss is attached as Exhibit A. As set forth in the Motion to Dismiss, the Complaint should be dismissed because the Plaintiffs fail to assert any cognizable legal claims.

On May 30, 2013, the District Court entered an order setting June 27, 2013, as the deadline for the Plaintiffs to file a response to the Motion to Dismiss and July 22, 2013, as the Defendants' reply deadline. The order also set a hearing on the Motion to Dismiss for August 22, 2013.

On August 7, 2013, the Defendants filed a Notice of Pendency of Bankruptcy Case and Application of the Automatic Stay and on August 22, 2013, the District Court entered an order staying the Lawsuit. The order provides that the "plain language" of the Stay Extension Order applies to the Lawsuit.

### C. The Stay Extension Order and Eligibility

On July 19, 2013, the City filed the Motion of Debtor for Entry of an Order (A) Directing and Approving Form of Notice of Commencement of Case and Manner of Service and Publication of Notice and (B) Establishing a Deadline for Objections to Eligibility and a Schedule for Their Consideration [Dkt. No. 18] (the

- 5 -
21573415.3\022765-00202
13-53846-tjt    Doc 1109    Filed 10/07/13    Entered 10/07/13 18:54:59    Page 5 of 19

"Eligibility Objection Motion"). The Eligibility Objection Motion requested that the Court set August 19, 2013 ("Objection Deadline"), as the deadline for all parties to file objections to the City's eligibility to obtain relief under chapter 9 of the Bankruptcy Code ("Eligibility Objections"). The Eligibility Objection Motion also asked the Court to set a schedule for hearing and resolving Eligibility Objections. Eligibility Objection Motion ¶ 28. The Court granted the Eligibility Objection Motion on August 2, 2013, and entered an order setting the Objection Deadline ("Objection Order," Dkt. No. 296). The Objection Order also set a schedule for hearing and resolving Eligibility Objections.

Plaintiffs Charles E. Williams II [Dkt. No. 391], Russ Bellant [Dkt. Nos. 402 & 405], AFSCME [Dkt. No. 505], and numerous creditors and other parties in interest objected to the City's eligibility to be a debtor under chapter 9 of the Bankruptcy Code on the basis that, for one reason or another, PA 436 is unconstitutional on its face or as applied ("PA 436 Eligibility Objections"). See list of objecting parties in the First Amended Order Regarding Eligibility Objections Notices and Hearings and Certifications Pursuant to 28 U.S.C. §2403(a) & (b) [Dkt. No. 821]. The Court conducted a hearing on some of the PA 436 Eligibility Objections and the remainder are scheduled to be heard next week.

On July 19, 2013, the City filed the Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order Extending the Chapter 9

Stay to Certain (A) State Entities, (B) Non-Officer Employees and (C) Agents and Representatives of the Debtor [Dkt. No. 56] (the "Stay Extension Motion"). The Stay Extension Motion requested that the Court extend the automatic stay provisions of sections 362 and 922 of the Bankruptcy Code (the "Automatic Stay") to, among others, the Governor and the Treasurer. The City requested such relief to "(a) aid in the administration of [the City's] bankruptcy case, (b) protect and preserve property for the benefit of citizens and stakeholders and (c) ensure that the City is afforded the breathing spell it needs to focus on developing and negotiating a plan for adjusting its debts." Stay Extension Motion at ¶ 15. The City specifically expressed the concern that litigation against the Governor and Treasurer could be used as a means to pursue claims against the City or interfere with the chapter 9 process. Id. at ¶ 22.

Plaintiff AFSCME objected to the Stay Extension Motion on several grounds, including those set forth in the Stay Relief Motion. See AFSCME Objection ¶¶ 45-46 [Dkt. No. 84]. The Plaintiffs and AFSCME also made these same arguments at the hearing during which this Court considered the Stay Extension Motion. See July 24, 2013, Hearing Tr. 1-2, 19-24, 52-54. Relevant portions of the July 24, 2013, Hearing Transcript are attached as Exhibit B.

On July 25, 2013, this Court overruled the objections and entered the Order Pursuant to Section 105(a) of the Bankruptcy Code Extending the Chapter 9 Stay

- 7 -
21573415.3\022765-00202
13-53846-tjt    Doc 1109    Filed 10/07/13    Entered 10/07/13 18:54:59    Page 7 of 19

to Certain (A) State Entities, (B) Non Officer Employees and (C) Agents and Representatives of the Debtor [Dkt. No. 166] (the "Stay Extension Order"). The Stay Extension Order is not subject to appeal and is a final order of the Court.

## II. ARGUMENT

In support of the Stay Relief Motion, the Plaintiffs advance three arguments: (1) the Stay Extension Order does not apply to the Lawsuit; (2) the Stay Extension Order applies to the Lawsuit but this Court did not have authority to enter it either because it is impermissibly broad or it does not further the purposes of the Bankruptcy Code; and (3) cause exists to grant relief from the Stay Extension Order either because the Complaint alleged constitutional violations or a balance of the equities favors the Plaintiffs. Again, these are essentially the same arguments asserted by the NAACP in its motion for relief from stay and none have any merit.

### A. The Stay Extension Order Applies to the Lawsuit

The Plaintiffs misunderstand or misconstrue the relief granted in the Stay Extension Order. The Lawsuit is precisely the type of case that the Stay Extension Order was intended to cover and, contrary to the Plaintiffs' assertions, it does not stay "all actions" against the Defendants. Stay Relief Brief at 6. The City addressed these assertions at pages two through five in its brief in response to the NAACP's motion for relief from stay and will not repeat the same arguments here. [Dkt. No. 1044]. The City's Brief in Opposition to the NAACP's motion for relief
- 8 -
21573415.3\022765-00202

13-53846-tjt    Doc 1109    Filed 10/07/13    Entered 10/07/13 18:54:59    Page 8 of 19

from stay is attached as Exhibit C. Moreover, it appears that the Plaintiffs have conceded that the Stay Extension Order applies to the Lawsuit since they state that "No matter what the facts, no matter what the claims against the State, under the broad language of this Court's *Order*, no lawsuit of any kind can proceed against the Governor or the State Treasurer until one community—the City of Detroit—emerges from Bankruptcy." Stay Relief Brief at 15.

### B. The Court Had Authority to Enter the Stay Extension Order

The Plaintiffs next argue, after conceding that the plain language of the Stay Extension Order applies to the Lawsuit, that this Court did not have the authority to enter the Stay Extension Order. Significantly, the Plaintiffs and AFSCME previously objected to the Stay Extension Motion on these same grounds. The Court overruled the objections and entered the Stay Extension Order. For the same reasons the Court articulated in overruling these objections, it should reject the Plaintiffs arguments here and find that the Stay Extension Order was properly entered. Furthermore, the Plaintiffs are precluded from relitigating these same issues in the context of the Stay Relief Motion. See e.g., Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc., 701 F.3d 1093, 1098 (6th Cir. 2012) (holding that issue preclusion precludes relitigation where (1) the precise issue was raised and litigated in the prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceedings; (3) the prior proceedings

resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought had a full and fair opportunity to litigate the issue in the prior proceeding).

Moreover, as the Plaintiffs recognize, a bankruptcy court may extend the automatic stay where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." In re Eagle-Picher Indus., Inc., 963 F.2d 855, 861 (6th Cir. 1992) (quoting A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986)). The Lawsuit seeks a judgment enjoining Mr. Orr from taking any actions under PA 436 and declaring PA 436 to be unconstitutional. Thus, any judgment against the Defendants would in effect be a judgment or finding against the City. As a result, under well-established Sixth Circuit precedent, this Court had the authority to enter the Stay Extension Motion. The Plaintiff's arguments to the contrary must be rejected.

### C. No Cause Exists to Grant Plaintiffs Relief from the Automatic Stay

Finally, the Plaintiffs allege that relief from the Automatic Stay should be granted for "cause." Rather than addressing the concept of cause, as interpreted by courts in this circuit, the Plaintiffs primarily assert that the alleged Constitutional violations take precedence over applying the Automatic Stay to non-debtor

21573415.3\022765-00202
13-53846-tjt    Doc 1109    Filed 10/07/13    Entered 10/07/13 18:54:59    Page 10 of 19

defendants. The Plaintiffs also seem to assert that the Constitutional violations they allege may only be determined by an Article III court and not this Court. However, as this Court recently decided, it has authority to determine constitutional questions and that referral of such questions to an Article III court is not necessary. Opinion and Order Denying Motion to Stay Proceedings Pending Determination of Motion to Withdraw the Reference at 4-12. [Dkt. No. 1039]. Further, mere allegations of Constitutional violations do not constitute a separate or independent basis to grant relief from the Automatic Stay. Accordingly, no cause (much less sufficient cause) exists to grant the Plaintiffs relief from the Automatic Stay.

**1. Under Sixth Circuit Law, No Cause Exists to Grant the Plaintiffs Relief from the Automatic Stay**

Although not directly discussed by the Plaintiffs, under the factors generally applied to stay motions in this circuit, there is no cause for relief from stay. Section 362(a) of the Bankruptcy Code provides in relevant part that:

> a petition filed under . . . this title . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case . . . .

21573415.3\022765-00202

11 U.S.C. § 362(a). The Automatic Stay "is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." Javens v. City of Hazel Park (In re Javens), 107 F.3d 359, 363 (6th Cir. 1997) (quoting H.R. REP. NO. 95-595, at 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6296).

Section 362(d) of the Bankruptcy Code authorizes a bankruptcy court to grant relief from the Automatic Stay in limited circumstances. See 11 U.S.C. § 362(d). In particular, section 362(d)(1) of the Bankruptcy Code provides that a party in interest may obtain relief from the Automatic Stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d)(1).

"The Bankruptcy Code does not define 'cause' as used in [section] 362(d)(1). Therefore, under [section] 362(d), 'courts must determine whether discretionary relief is appropriate on a case by case basis.'" Chrysler LLC v. Plastech Engineered Prods., Inc. (In re Plastech Engineered Prods., Inc.), 382 B.R. 90, 106 (Bankr. E.D. Mich. 2008) (quoting Laguna Assocs. L.P. v. Aetna Casualty & Surety Co. (In re Laguna Assocs. L.P.), 30 F.3d 734, 737 (6th Cir. 1994)). The determination of whether to grant relief from the Automatic Stay "resides within the sound discretion of the Bankruptcy Court." Sandweiss Law Center, P.C. v.

Kozlowski (In re Bunting), No. 12-10472, 2013 WL 153309, at *17 (E.D. Mich. Jan. 15, 2013) (quoting In re Garzoni, 35 F. App'x 179, 181 (6th Cir. 2002)).

> To guide the bankruptcy court's exercise of its discretion . . . the Sixth Circuit identifies five factors for the court to consider: (1) judicial economy; (2) trial readiness; (3) the resolution of the preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; and (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors.

Bunting, 2013 WL 153309, at *17 (quoting Garzoni, 35 F. App'x at 181) (internal quotation marks omitted). In determining whether cause exists, however, "the bankruptcy court should base its decision on the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code." Plastech, 382 B.R. at 106 (quoting In re C & S Grain Co., 47 F.3d 233, 238 (7th Cir. 1995)).

Here, consideration of the these factors confirms that no cause (much less sufficient cause) exists to justify relief from the Automatic Stay to allow the Lawsuit to proceed. With respect to the first factor, the interests of judicial economy weigh heavily in favor of denying the Stay Relief Motion. Numerous parties, including three of the Plaintiffs, have raised similar eligibility issues in this chapter 9 case that the Plaintiffs seek to litigate in the Lawsuit in front of the District Court. As set forth above, litigating eligibility issues in two different courts, simultaneously "does not promote judicial or party efficiency; it is the antithesis." Opinion and Order Denying Motion to Stay Proceedings Pending

Determination of Motion to Withdraw the Reference at 19. [Dkt. No. 1039]. Accordingly, judicial economy dictates staying the Lawsuit so as to permit this Court to address the PA 436 Eligibility Objections in the single, unified context of the eligibility trial.

With respect to the second factor, the Lawsuit is in its preliminary stages. The Defendants' motion to dismiss remains pending. No discovery has been taken. Thus, the Lawsuit has not even advanced beyond the pleading stage and is not trial ready. The third factor also weighs in favor of denying the Stay Relief Motion as the Court has not even resolved the City's eligibility for relief in this chapter 9 case. Nothing could be more basic or preliminary to the ultimate outcome. Further, concerning the fourth factor, as set forth in the Defendants' motion to dismiss, the Plaintiffs have not demonstrated a likelihood of success on the merits.

Finally, the fifth factor weighs in favor of denying the Stay Relief Motion. Although the City is not currently a party in the Lawsuit, the impact that the Lawsuit may have on the City and its restructuring efforts may require the City to intervene or otherwise become further involved and take other actions if the Stay Relief Motion is granted. Requiring the City to defend the Lawsuit in the District Court would distract the City from its efforts to restructure, diverting its limited resources at a time when it is both working to negotiate and deliver a plan of

adjustment quickly and engaged in a substantial amount of discovery and litigation (all on its own expedited timeframe) arising in the bankruptcy case itself.  The City does not need further impediments to its restructuring efforts.   This Court has consistently endeavored to bring all matters which may affect the eligibility of the City before it and have the issues resolved in one forum.  Allowing the Lawsuit to proceed in the District Court would cast uncertainty[3] over the eligibility and restructuring process and may chill negotiations among the parties or adversely affect the confirmation of the plan of adjustment.   Further, if relief is granted here, it will likely engender further constitutional challenges by other parties in different courts.

In short, allowing the Lawsuit to proceed would undermine the protections of the Automatic Stay and interfere with the City's efforts to restructure.  The City sought relief under chapter 9 in part to obtain the "breathing spell" afforded by the Automatic Stay and the consequent protection from its creditors while it restructures its affairs and prepares a plan of adjustment.  The City's finances would be further depleted and its personnel distracted from their mission to operate

---

[3] This Court acknowledged that the uncertainty occasioned just by the eligibility objections already before it will likely slow, if not stall entirely, the "City's progress in recovering its financial, civic, commercial, and cultural life and in revitalizing itself." Opinion and Order Denying Motion to Stay Proceedings Pending Determination of Motion to Withdraw the Reference at 23. [Dkt. No. 1039].  Having the City's eligibility adjudicated simultaneously in two courts obviously compounds that uncertainty.

the City for the benefit of its citizens and restructure its affairs if it were denied this basic protection of chapter 9 and forced to defend itself against the Plaintiffs so early in the case. Accordingly, the overall goals of chapter 9 weigh largely in favor of denying stay relief to the Plaintiffs.

### 2. The Automatic Stay Does Not Deprive the Plaintiffs of their Constitutional Rights

The Plaintiffs also argue that the Automatic Stay, as applied to the Lawsuit, violates their Fourteenth and Fifth Amendment right to due process. This argument misses the point. The Plaintiffs day in court is not denied but only delayed. See Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Chicago, Rock Island & Pac. Ry. Co., 294 U.S. 648, 680-81 (1935) (holding that delaying a creditor from implementing a contract remedy via a stay issued under the Bankruptcy Act did not violate the Fifth Amendment's due process requirement). Indeed, coordinating the Plaintiffs' alleged rights with those of many others is patently different from depriving the Plaintiffs of those same rights. In re Singer, 205 B.R. 355, 357 (Bankr. S.D.N.Y. 1997) (noting that the Second Circuit has held that the automatic stay does not violate due process) (citation and internal quotation marks omitted); Kagan v. St. Vincents Catholic Med. Ctrs. of N.Y. (In re St. Vincents Catholic Med. Ctrs. of N.Y.), 449 B.R. 209, 213-14 (Bankr. S.D.N.Y. 2011) (holding that 11 U.S.C. § 362 does not offend the First, Fifth, Tenth, or Fourteenth Amendments in stay of state FOIA claim) ("[I]f this claim had any

merit, every stay of a judicial proceeding imposed by a Bankruptcy Court would violate the substantive due process rights of the litigants in that proceeding. Clearly this is not the law."). Indeed, the Second Circuit determined that the automatic stay helps balance parties' rights.

> The policy considerations underlying [the automatic stay] are considerable. The automatic stay . . . is designed to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another.

Fid. Mortg. Invs. v. Camelia Builders, Inc. (In re Fid. Mortg. Invs.), 550 F.2d 47, 55 (2d Cir. 1977) (interpreting Bankruptcy Act). Further, the Bankruptcy Code and Rules implementing the automatic stay provide a means to ensure that the stay does not deprive parties of their due process rights, including the opportunity to obtain relief from the stay in this Court if there is sufficient cause to grant relief. Id.

The Plaintiffs argument fails to account for the City's rights, and, when these are added into the equation, the balance of harms to the City against the potential harm to the Plaintiff strongly favors leaving the stay in place at this juncture. The idea that providing the City with "breathing room" to reorganize somehow denies the Plaintiffs their Constitutional rights is simply not true. The

Automatic Stay ensures that the Plaintiff's rights are not enforced to the detriment of both the City and its creditors.

## III. CONCLUSION

For the reasons set forth in this Brief in Opposition, the City respectfully requests that this Court: (a) deny the Stay Relief Motion; and (b) grant such other and further relief to the City as the Court may deem proper.

Dated: October 7, 2013        Respectfully submitted,

By: /s/Stephen S. LaPlante
Jonathan S. Green (P33140)
Stephen S. LaPlante (P48063)
Timothy A. Fusco (P13768)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com
fusco@millercanfield.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939

Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com


ATTORNEYS FOR THE CITY OF DETROIT