# THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

—————————————————————————x

|  |  |  |
|---|---|---|
|  | : | **Chapter 9** |
| **In re:** | : | **Case No. 13-53846** |
| **CITY OF DETROIT, MICHIGAN,** | : | **Hon. Steven W. Rhodes** |
| Debtor. | : | |
|  | : | |
|  | : | |

—————————————————————————x

## PETITIONERS ROBERT DAVIS' AND DESMOND M. WHITE'S EMERGENCY MOTION FOR CLARIFICATION OF THE COURT'S JULY 25, 2013 STAY ORDER AND RELIEF FROM STAY

PETITIONERS, ROBERT DAVIS, and DESMOND M. WHITE (collectively "Petitioners") by and through their attorney, ANDREW A. PATERSON, submit this, their Emergency Motion for Clarification of the Court's July 25, 2013 Stay Order and Relief from Stay, states as follows:

1. On July 25, 2013, this Court entered an Order pursuant to Section 105(A) of the Bankruptcy Code extending the Stay in Debtor's Chapter 9 estate to Certain (A) State Entities, (B) Non Officer Employees and (C) Agents and Representatives of the Debtor.

2. In paragraph number 3 of the Court's July 25, 2013 Order, the Court stated: "For the avoidance of doubt, each Prepetition Lawsuits hereby is stayed, pursuant to section 105(a) of the Bankruptcy Code, pending further order of this Court."

3. Although this Court's July 25, 2013 Order did not define the phrase "Prepetition Lawsuits", in footnote number 1 to the Court's July 25, 2013 Order, the Court stated:

"Capitalized terms not otherwise defined herein have the meaning given to them in the Motion."

4. The Motion filed by the Debtor, the City of Detroit ("Debtor"), defined the terms "Prepetition Lawsuits" to mean specifically the three (3) Ingham County Circuit Court lawsuits that pertain to the contractual and constitutional rights of pensioners of the Debtor. The three (3) Ingham County lawsuits referenced and defined as the "Prepetition Lawsuits" were as follows:

    (1) *Webster v State of Michigan.,* Case No 13-734-CZ, Ingham County Circuit Court, filed July 3, 2013.

    (2) *Flowers v Snyder*, Case No 13-729-CZ, Ingham County Circuit Court, filed July 3, 2013.

    (3) *General Retirement System of the City of Detroit v Orr*, Case No. 13-768-CZ, filed July 17, 2013.

5. It has now come to the attention of counsel for the Petitioners that this Court's July 25, 2013 Stay Order *may* be applied to the Detroit City Clerk and Detroit Election Commission, as officers of the Debtor, in election-related matters that involve impending elections.

6. Considering that the Detroit City Clerk and Detroit Election Commission have ministerial duties under Michigan Election Law, actions regarding the proper administration of elections require them to be named as necessary parties. **For instance, *ALL* circuit courts in the State of Michigan have their court doors open for the entire day up to the time the ballots are counted to address any and all election irregularities that may develop on election day. Under the current**

**interpretation of this Court's July 25, 2013 Stay Order, the circuit courts of the relevant jurisdictions would not be able to adjudicate the emergency election-related matters without *first* coming to this Court.**

7.  This is a strained and dangerously narrow interpretation of this Court's July 25, 2013 Stay Order would operate to potentially disenfranchise electors and to deny individuals their fundamental right to participate in fair and properly administered elections. Further, it would allow Detroit election officials to hide behind the veil of this Court's Stay Order and violate Michigan Election Law without fearing any timely judicial review.

8.  Currently, Petitioners have an election-related matter pending in Wayne County Circuit Court against the Detroit City Clerk, Detroit Election Commission, ACCUFORM Printing and the Wayne County Board of Canvassers. It is Wayne County Circuit Court Case No. 13-013071-AW, and it is before the Honorable Judge Patricia Fresard ("**Judge Fresard**") ("***Petitioners' Election Case***"). It raises issues that can impact the upcoming November 5, 2013 General Election.  It is undisputed between counsel for the parties in this case that this Court's July 25, 2013 Stay Order **is not applicable** to ACCUFORM Printing, Inc., or to the Wayne County Board of Canvassers, for neither of whom are officers or representatives of the Debtor as defined in this Court's July 25, 2013 Stay Order.

9.  Further, this Court should know that in another recent election-related lawsuit in Wayne County Circuit Court that also can impact the upcoming November 5, 2013 General Election, being *Wilcoxon, et al. v Detroit City Clerk, et al.*, Wayne County Circuit Court Case No. 13-012502-AW ("***Wilcoxon Election Case***"), (also before

Judge Fresard), Assistant Corporation Counsel for the City of Detroit agreed on the record during an emergency hearing held September 25, 2013, that this Court's July 25, 2013 Stay Order *did not apply* to that election-related matter after counsel for the plaintiff agreed not to seek attorney fees and costs against the Debtor. Counsel for the Petitioners represents the plaintiff in the *Wilcoxon Election Case*.

10. There are **no additional costs** being expended by the Debtor to litigate these election-related matters because all of these cases have been litigated by attorneys in the Debtor's Law Department and thus, the Debtor has not incurred any additional outside legal costs for these election matters.

11. Petitioner Desmond White ("Petitioner White"), a registered and qualified elector of the City of Detroit, faces a real and imminent danger of irreparable harm of not having her vote count as cast on the absentee ballot she was issued by the Defendant City Clerk. Almost a century ago, in *Yick Wo v Hopkins*, 118 U.S. 356, the United States Supreme Court referred to "the political franchise of voting" as "**a fundamental political right, because preservative of all rights**." 118 U.S., at 370. (Emphasis supplied).

12. As our United States Supreme Court explained in *Reynolds v Sims*, 377 U.S. 533, at 554-555 (1964):

> "**Undeniably the Constitution of the United States protects the right of all qualified citizens to vote in state as well as in federal elections**. A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear. It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, *Ex Parte Yarbrough*, 110 U.S. 651, **and to have their votes counted**, *United States v. Mosley*, 238 U.S. 383. In *Mosley* the Court stated that it is "**as equally**

**unquestionable that the right to have one's vote counted is as open to
protection…. As the right to put a ballot in a box**." 23 U.S., at 386."

13. "[T]he right to vote is an implicit fundamental political right that is preservative of
all rights." *In re Request for Advisory Opinion Regarding Constitutionality of 2005
PA 71*, 479 Mich 1, 16; 740 NW2d 444 (2007) (internal quotations omitted).

14. Although the right to vote is constitutionally protected, as noted by the Michigan
Court of Appeals, in *Fleming v Macomb County Clerk*, unpublished per curiam
opinion of the Court of Appeals, issued June 26, 2008 (Docket No. 279966), "our
Supreme Court has noted that the "equal right to vote is not absolute." *Id.* (internal
quotations omitted). As the Court of Appeals explained in *Fleming, supra*, "Instead,
the Legislature must "preserve the purity of elections" and "guard against abuses of
the elective franchise." Const 1963, art 2, § 4." *Fleming, supra*, slip op p 10.

15. Just like the defendant clerk in *Fleming, supra*, the actions of the Defendant City
Clerk in the instant circuit court action has undeniably "undermined the
constitutional rights of the public (like Petitioner White and Petitioner Davis) to
participate in fair, evenhanded elections and therefore, constituted an injury."
*Fleming, supra*, slip op at p 10.

16. Thus, if proper ballots are not printed by the Defendant Election Commission in
accordance with Michigan Election Law, and the ballots currently in the possession
of Petitioner Desmond White and other electors are not declared VOID, Petitioner
Desmond White and other electors will be denied their **constitutional right to vote
and to have their votes counted.** This will be so because the ballots that are
currently being issued by the Defendant City Clerk **cannot be "counted**" under

MCL § 168.560 **BECAUSE THE BALLOTS WERE NOT PRINTED IN ACCORDANCE WITH MICHIGAN ELECTION LAW!!!**

17. Moreover, under the Purity of Elections Clause of the Michigan Constitution of 1963, Const 1963, art 2, § 4, the Legislature had every right to enact its amendment to MCL § 168.560 in order to ensure the purity of elections here in the State of Michigan. As the Michigan Supreme Court explained in *Socialist Workers Party v Secretary of State*, 412, Mich 571, 596 317 NW 2d 1 (1982): "The phrase "purity of elections" "requires… fairness and evenhandedness in the election laws of this state."

18. Petitioner Robert Davis specifically will suffer an irreparable injury as a result of the fact that Defendant City Clerk's actions violate the purity of elections clause of the Michigan Constitution, Const 1963, art 2, § 4. Petitioner Davis, who is supporting a number of candidates whose names appear on the general election ballot, will suffer an injury because the Defendant City Clerk's unlawful actions has undermined the constitutional right of the public to participate in fair, evenhanded elections and, therefore, constitutes an injury. As the Court of Appeals established in *Fleming, supra,* the issue of injury, for a general member of the public, in slip op at 10:

> "Defendant contends that even if the mass mailing violated state law or the constitution, plaintiffs are not entitled to relief because they failed to show any injury or harm. However, plaintiffs are not required to show a substantial injury distinct from that suffered by the public in general in order to establish standing in an election case. *Helmkamp v Livonia City Council*, 160 Mich App 442, 445; 408 NW2d 470 (1987). "[T]he right to vote is an implicit fundamental political right that is preservative of all rights." *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 16; 740 NW2d 444 (2007) (internal

quotations omitted). Although the right to vote is constitutionally protected, our Supreme Court has noted that the "equal right to vote is not absolute."[10] *Id.* (internal quotations omitted). Instead, the Legislature must "preserve the purity of elections" and "guard against abuses of the elective franchise." Const 1963, art 2, § 4. Defendant's actions undermined the constitutional right of the public to participate in fair, evenhanded elections and, therefore, constituted an injury. Consequently, plaintiffs had standing to bring a cause of action to remedy this injury. See *Helmkamp*, *supra*. " [Fleming, supra, slip op at p 10.]

19. Thus, if, as Petitioners have asserted, the ballots that electors have received are not proper and fail to comply with the mandatory prescribed format, NONE of the ballots cast can be counted and thus it is necessary for the Circuit Court to issue a TRO requiring the Defendant City Clerk and Election Commission to print ballots that conform with the statutory requirements and further to require the Defendants to properly approve the printing of said ballots in accordance with Michigan Election Law. Otherwise Petitioner White and all other electors will be denied their constitutional right to vote, but more importantly, have their votes counted!!

20. There is a strong likelihood that Petitioner White and Petitioner Davis will prevail on the merits because Petitioners have clearly shown that Plaintiff White's absentee ballot does not conform to the mandatory prescribed format as outlined in the various provisions of Michigan Election Law cited and referenced above.

21. As expressed in Petitioner Desmond White's affidavit filed in the circuit court and restated herein, Petitioner Desmond White will suffer irreparable harm if an injunction is not issued because Petitioner Desmond White will be denied her precious right to vote and to have her vote counted as a result of receiving an

"unlawful" ballot from the Defendant City Clerk, which under Michigan Election Law, MCL § 168.560 **shall not and cannot be counted, used or cas**t.

22. As noted above, there will be SUBSTANTIAL harm to the public if an injunction is not issued because like Petitioner Desmond White, their votes will not be counted as a result of the ballots not being properly printed in accordance with Michigan Election Law as cited herein.

23. The issuance of an injunction will ensure that properly approved ballots are being used by the electors, which will permit the Defendant Board of Canvassers to count said votes as cast.

24. Counsel for both sides agree that it is imperative and urgent for the Court to address the merits of Petitioners' Emergency Motion for Clarification of the Court's July 25, 2013 Stay Order as it relates to Petitioners' Election Case, because the merits of Petitioners' Election Case raises CRITICAL issues with respect to the legality of the printing of the ballots that are currently being used, and distributed to electors for the upcoming November 5, 2013 General Election.

25. There is thus an immediate need for this Court to enable Judge Fresard to adjudicate the merits of Petitioners' Election Case on an expedited basis. The allegations that require adjudication include that the Defendant City Clerk has unlawfully authorized, processed and distributed, facially invalid ballots, to absentee voters, including Petitioner Desmond M. White, for the upcoming November 5, 2013 General Election.  These ballots do not comply with the mandatory prescribed format as set forth in the various provisions of Michigan Election Law and thus

pursuant to MCL 168.560, as amended, **NONE** of the ballots, as currently printed, "**shall be used, cast, or counted**."

26. The Michigan Supreme Court has recognized the importance of election-related cases and has so required that election-related cases are heard in an expedited manner. See *Scott v Director of Elections*, 490 Mich 888, 889; 804 NW2d 119 (2011).

27. Additionally, MCR 7.213(C)(4) requires the Michigan Court of Appeals to expedite appeals from all cases involving election-related issues.

28. Accordingly, counsel for both sides have stipulated and agreed to the necessity that a hearing needs to be held by this Court on **Thursday, October 10, 2013,** with pleadings due the same day, to address and clarify this Court's July 25, 2013 Stay Order inapplicability to election-related matters against the Detroit City Clerk and Detroit Election Commission.

29. Accordingly, Petitioners respectfully request that the Court reduce the time for a party to take action or object to Petitioners' Emergency Motion and require that an emergency hearing and all pleadings are filed with respect thereto on or before **Thursday, October 10, 2013,** as stipulated and agreed to by counsel for the Petitioners and Eric Graabo, Assistant Corporation Counsel for the City of Detroit.

30. A copy of Petitioners' Complaint and Emergency Motion as filed in Wayne County Circuit Court are attached hereto for the Court's review in the Documentary Exhibits Section as Exhibits A and B, respectively.

## <u>NOTICE</u>

31. Notice of this Motion has been given to Eric Gaabo, Assistant Corporation Counsel for

the City of Detroit. Petitioners submit that no other or further notice, need to be provided.

## CONCLUSION/PRAYER FOR RELIEF

Petitioners pray that the Court enter an order (a) clarifying that the Court's July 25, 2013 Stay Order does not extend to Petitioners' Election Case, Case No. 13-013071-AW and (b) provide clarity that this Court's July 25, 2013 Stay Order does not apply to any election-related matter brought against the Detroit City Clerk and Detroit Election Commission relating to any election matter that impacts an impending election.

Respectfully submitted,

/S/ Andrew A. Paterson_____
Attorney for Petitioners
46350 Grand River, Suite C
Novi, MI 48374
(248) 645-0759

DATED; October 8, 2013