STATE OF MICHIGAN
IN THE 3rd JUDICIAL CIRCUIT COURT
FOR THE COUNTY OF WAYNE

**DESMOND M. WHITE**, an individual registered
and qualified elector of the City of Detroit,
and
**ROBERT DAVIS**, an individual registered and qualified
elector of the State of Michigan,
    **PLAINTIFFS**,

-v-

**CITY OF DETROIT ELECTION COMMISSION,**
**JANICE M. WINFREY,** in her official capacity as
City Clerk for the City of Detroit,
**ACCUFORM, INC, and WAYNE COUNTY BOARD**
**OF CANVASSERS,**
    **DEFENDANT**S.

Case No.
**Hon. Patricia Perez Fresard**

_____/

ANDREW A. PATERSON (P18690)
Attorney for Plaintiff Desmond White
46350 Grand River Ave., Suite C
Novi, MI 48374
(248) 568-9712

ROBERT DAVIS, *In Pro Per*
Plaintiff
180 Eason
Highland Park, MI 48203
(248) 470-8731

_____/

Civil action (entitled *Wilcoxon v Detroit Election Commission, et al*.) between other parties arising out of similar factual allegations, occurrences, and law alleged in the complaint, has been previously filed in this Court, where it was given docket number **Case No. 13-012502-AW and is assigned to Judge Patricia Fresard**. This action is **currently** pending in her Court.

## Plaintiffs' Emergency Motion for Writ of Mandamus, Declaratory Judgment, and Injunctive Relief

PLAINTIFF, DESMOND M. WHITE ("**Plaintiff White**"), by and through her attorney, ANDREW A. PATERSON, and PLAINTIFF ROBERT DAVIS ("**Plaintiff Davis**"), in his own proper person, for their Emergency Motion for Writ of Mandamus, Declaratory Judgment and Injunctive Relief, state and allege the following:

## NECESSITY FOR IMMEDIATE ACTION/HEARING

1.    There is an immediate need for this Court to adjudicate the merits of this election case on an expedited basis considering the Defendant City Clerk have processed and distributed unlawfully sent out ballots to absentee voters for the November 5, 2013 General Election that did not comply with the mandatory prescribed format set forth in various sections of Michigan Election Law.  These unlawful ballots are being distributed to electors on a daily basis by the Defendant City Clerk.

2.    Our Michigan Supreme Court has recognized the importance of election-related cases and has so required that election-related cases are heard in an expedite manner.  See *Scott v Director of Elections*, 490 Mich 888, 889; 804 NW2d 119 (2011).

3.    Additionally, MCR 7.213(C)(4) requires the Michigan Court of Appeals to expedite appeals from all cases involving election-related issues.

4.    Accordingly, pursuant to MCR 3.305(C), Plaintiff Desmond M. White ("Plaintiff White") and Plaintiff Robert Davis ("Plaintiff Davis") respectfully request this Honorable Court to issue an Order for the Defendants to Show Cause why a writ of mandamus, declaratory judgment, and injunctive relief shall not be issued against them individually and collectively.  Plaintiff further requests that said Order to Show Cause **sets a hearing to be held IMMEDIATELY this AFTERNOON** so that the merits of this case can be

adjudicated on an expedited basis **due to the exigencies of an impending election.**  See

*Scott v Director of Elections*, 490 Mich 888, 889; 804 NW2d 119 (2011).

<u>**GENERAL ALLEGATIONS**</u>

5.      Plaintiff, Desmond M. White ("**Plaintiff White**"), is a resident of and a duly qualified

and registered voter in the City of Detroit.  Plaintiff White voted in the August 6, 2013

Primary Election.  Plaintiff White applied to the Defendant Election Commission for an

absentee ballot on Friday, October 4, 2013 to vote by absentee ballot in the upcoming

November 5, 2013 General Election.  Plaintiff White received her absentee ballot on

Friday, October 4, 2013 from the Defendants City Clerk and Election Commission.

Plaintiff White has not yet cast her vote on the absentee ballot she currently have in her

possession because Plaintiff White has  numerous concerns regarding the legality of the

ballot that she received and thus is concerned about whether her vote will count.  **(See**

**Plaintiff White's affidavit attached hereto as Exhibit A**).

6.      Plaintiff, Robert Davis ("**Plaintiff Davis**"), is a resident of and a duly qualified and

registered voter in the City of Highland Park.  Plaintiff Davis is an activist concerned

about the proper administration of the upcoming November 5, 2013 General Election in

the City of Detroit.  Plaintiff Davis is also supporting a number of candidates in said

general election.  **(See Plaintiff Davis' affidavit attached hereto as Exhibit B).**

7.      Defendant, City of Detroit Elections Commission ("**Defendant Election Commission**")

is a three-member commission charged with the responsibility of heading and supervising

the City of Detroit's Department of Elections, pursuant to Sec. 3-102 and 3-103 of the

2012 Detroit City Charter, as amended ("**2012 Detroit City Charter**").  Pursuant to Sec.

3-102 of the 2012 Detroit City Charter, the Defendant Election Commission is composed

of the following officials:

- Janice M. Winfrey, Detroit City Clerk, who is Chairperson;

- Saunteel Jenkins, President of the Detroit City Council; and

- Portia Roberson, Corporation Counsel for the City of Detroit.

(**See Article 3 of 2012 Detroit City Charter, which prescribes and set forth the duties of the Defendant Election Commission is attached hereto as Exhibit C**).

8.  Defendant, Janice Winfrey ("**Defendant City Clerk**"), is the duly elected City Clerk for the City of Detroit and is also the Chairperson of the Defendant Election Commission.

9.  Defendant, Wayne County Board of Canvassers ("**Defendant Board of Canvassers"**), in accordance with MCL § 168.24a(1) of Michigan Election Law, is a 4-member board established in the County of Wayne, who are **NOW** vested with "all of the powers granted to and duties required by law to be performed by all boards of canvassers established by law." The Defendant Board of Canvassers is **NOW** required to canvass and certify *all* **elections**, primaries, generals, and special elections, of local municipalities, including the City of Detroit. Pursuant to MCL § 168.24c of Michigan Election Law, members of the Defendant Board are appointed by the Wayne County Board of Commissioners.

10. Pursuant to MCL § 168.24c(1) of Michigan Election Law, Defendant County Board consists of 2 members from each of the 2 political parties casting the greatest number of votes for Secretary of State at the preceding general November election in that county. In this case, that would be the Democratic and Republican Parties.

11. The current members of the Defendant County Board are Chairperson Carol Larkin (Democrat), Vice Chairperson Krista Hartounian (Republican), Leatha Larde (Democrat), and Jospeh Xuereb (Republican).   Pursuant to Michigan Const 1963, art 2, § 7, a majority of the Defendant County Board "shall not be composed of members of the same political party."

12. In accordance with MCL § 168.24(e) of Michigan Election Law, the Wayne County Clerk serves as the clerk of the Defendant County Board.

13. Defendant, ACCUFORM, Inc., of Southfield ("**Defendant Official Printer**"), is the "official printer" purportedly chosen and authorized by the Defendant Election Commission to print the official ballots for the November 5, 2013 General Election.

## JURISDICTION OF WAYNE COUNTY CIRCUIT COURT

14. "Mandamus is the appropriate remedy for a party seeking to compel action by election officials." *Citizens Protecting Michigan's Constitution v Secretary of State*, 280 Mich App 273, 283; 761 NW2d 210, aff'd in part 482 Mich 960 (2008).

15. "Circuit courts are courts of general jurisdiction, and have original jurisdiction over all civil claims and remedies 'except where exclusive jurisdiction is given by the constitution *or by statute to some other court* or *where the circuit courts are denied jurisdiction by the constitution or statutes of this state*. [MCL 600.605]'" *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd*, 240 Mich App 153, 160; 610 NW2d 613 (2000), quoting *Farmers Ins Exchange v South Lyon Community Schools*, 237 Mich App 235, 241; 602 NW2d 588 (1999).  (Emphasis supplied).

16. MCR 3.305 sets forth and expressly provides the proper venue for this original mandamus action against the named defendants. MCR 3.305(A)(2) states:

> **(A) Jurisdiction**.
>
> (2) All other actions for mandamus ***must be brought in the circuit court*** unless a statute or rule requires or allows the action to be brought in another court.

MCR 3.305(B)(1) and (2) state:

> (1) The general venue statutes and rules apply to actions for mandamus unless a specific statute or rule contains a special venue provision.
>
> (2) In addition to any other county in which venue is proper, an action for mandamus against a state officer may be brought in Ingham County.

17. This is an original action seeking a writ of mandamus. Plaintiff Davis requesting this Court to issue its writ of mandamus compelling Defendant County Board not to count any ballots cast on the ballots that were unlawfully printed by the Defendant Clerk and Defendant Printer in violation of Michigan Election Law as is thoroughly analyzed below.

18. Additionally, Plaintiff White and Plaintiff Davis, individually and collective are also requesting this Court to issue its writ of mandamus compelling the Defendant Election Commission to reprint the ballots that were previously unlawfully printed and distributed to the electors IMMEDIATELY!!

19. In addition to seeking the Court's issuance of its writ of mandamus, an actual controversy exits between the Plaintiffs and Defendants and Plaintiffs therefore also request that the Court enter a declaratory judgment in accordance with MCR 2.605 that Defendant Clerk did not have the statutory authority to authorize the printing of the ballots for the November General Election, declare that the Defendant Printer did not have the legal authority to print and delivery said ballots, and declare that the ballots that were unlawfully printed do not conform or are in compliance with Michigan Election Law.

20.   MCR 2.605(A) states:

> (A) **Power to Enter Declaratory Judgment**.
> (1) In a case of actual controversy within its jurisdiction, a Michigan Court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted,
> (2) For the purpose of this rule, an action is considered within the jurisdiction of a court if the court would have jurisdiction of an action on the same claim or claims in which the plaintiff sought relief other than a declaratory judgment.

## PLAINTIFFS' STANDING

21.   Plaintiff White and Plaintiff Davis, individually and collectively, have standing to commence this action against the Defendants for a writ of mandamus and for a declaratory judgment and injunctive relief.

22.   As a citizen, and qualified and registered voter of the City of Detroit, Plaintiff White has standing to seek a writ of mandamus and declaratory judgment against the named Defendants in this election related matter action.  More importantly, as an elector who is seeking to cast her vote in a manner that it is counted, Plaintiff White undeniably has standing to commence this action to ensure that the vote she cast by absentee ballot is in fact legal and is counted in accordance with the provisions of Michigan Election Law.

23.   As a citizen, and qualified and registered voter of the City of Highland Park, State of Michigan, Plaintiff Davis has standing to seek a writ of mandamus and declaratory judgment against the named Defendants in this election related matter.

24.   It is well-established, that ordinary citizens and persons have standing to seek a writ of mandamus against election officials in election related cases. "**It is generally held in the absence of a statute to the contrary, that a private person as relator may enforce by**

**mandamus a public right or duty relating to elections without showing a special interest distinct from the interest of the public**." *Helmkamp v Livonia*, 160 Mich App 442, 445; 408 NW2d 470 (1987). (citation and quotations omitted) (Emphasis supplied).

25. The rights of an ordinary citizen and/or private person to "enforce by mandamus a public right or duty relating to elections without showing a special interest distinct from the interest of the public" was recently upheld by the Michigan Court of Appeals in *Deleeuw v Bd of State Canvassers*, 263 Mich App 497;688 NW2d 847 (2004), where the Court of Appeals said:

> "Election cases are special, however, because without the process of elections, citizens lack their ordinary recourse. **For this reason we have found that ordinary citizens have standing to enforce the law in election cases.**" [*Deleeuw v Bd of State Canvassers*, 263 Mich App at 505-506.] (Citations omitted) (Emphasis supplied).

26. Citing *Deleeuw, supra*, and *Helmkamp, supra*, the Michigan Court of Appeals only last year addressed the standing issue in *Protect MI Constitution v Secretary of State*, 297 Mich App 553; 824 NW2d 299 (2012), reversed on other grounds 492 Mich 860 (2012), and it held:

> Michigan jurisprudence recognizes the special nature of election cases and the standing of ordinary citizens to enforce the law in election cases. *Deleeuw v State Bd of Canvassers*, 263 Mich App 497, 505-506; 688 NW2d 847 (2004). See also *Helmcamp v Livonia City Council*, 160 Mich App 442, 445; 408 NW2d 470 (2987) ("[I]n the absence of a statute to the contrary, [] a private person… may enforce by mandamus a public right or duty relation to elections without showing a special interest distinct from the interest of the public." [Quotation marks omitted]. The general interest of ordinary citizens to enforce the law in election cases is sufficient to confer standing to seek mandamus relief. See *Citizens Protecting Michigan's Constitution*, 280 Mich App at 282 (permitting a ballot

question committee to challenge a petition). [*Protect MI Constitution,* 297 Mich App at 566-567.]

27. Plaintiffs, individually and collectively, as citizens, registered voters, and persons of the State of Michigan and the City of Detroit and the City of Highland Park respectively, are seeking to enforce Michigan Election Law in this election case. Plaintiffs thus have standing to bring this mandamus action. Moreover, as noted above, Plaintiff White is not only a citizen and registered voter of the City of Detroit, but she also currently has in her possession an absentee ballot in which she desires to cast for the candidate of her choice. However, due to her concerns regarding the legality of the absentee ballot she received from the Defendant Clerk, Plaintiff White is unsure if her vote will count considering the absentee ballot currently in her possession does not comply with the provisions as set forth in Michigan Election Law.

28. In the present case, no Michigan statute expressly limits those who may seek to enforce Michigan Election Law or to enforce the provisions of the 2012 Detroit City Charter with respect to elections and the proper administration thereof. Thus, pursuant to the holdings in *Helmkamp, surpa, Deleeuw, supra*, and *Protect MI Constitution, supra*, Plaintiffs, individually and collectively, both have standing to bring this action because this action relates to "a public right or duty relating to elections." *Helmkamp, supra* at 445.

29. Standing for the declaratory judgment count exists for both Plaintiffs to seek the Court's issuance of a declaratory judgment because an "actual controversy" exists. As recognized under Michigan law, standing exists for such count because a legal cause of action exists. See, *Lansing Schools Education Ass'n v Lansing School Dist Bd. of Ed.*, 487 Mich 349, 372; 792 NW 2d 686 (2010). In *Lansing Schools Ed Ass'n,* the Michigan Supreme Court articulated Michigan's standing jurisprudence thusly as:

**[A] litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment.** Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [*Lansing Schools Ed Ass'n*, *supra* at 372.] (Emphasis supplied.)

30.   Plaintiffs, individually and collectively, each meet the requirements of MCR 2.605, thus permitting them to so seek a declaratory judgment to be issued by this Court against the named Defendants.

## COUNT I

**A DECLARATORY JUDGMENT SHALL BE ISSUED DECLARING THAT PLAINTIFF WHITE'S ABSENTEE BALLOT DOES NOT CONFORM WITH MCL 168.718 OF MICHIGAN ELECTION LAW, WHICH REQUIRES THE PERFORATED PORTION OF THE BALLOT TO BE OF A PRESCRIBED FORM AND CONTAIN SPECIFIC INFORMATION, AND FURTHER DECLARE THAT AS A RESULT OF PLAINTIFF WHITE'S ABSENTEE BALLOT FAILING TO BE IN ITS PROPER FORM, THE DEFENDANT PRINTER HAD NO LEGAL AUTHORITY TO PRINT SAID ABSENTEE BALLOT AND THUS, A WRIT OF MANDAMUS IS PROPER COMPELLING THE DEFENDANT BOARD OF CANVASSERS NOT TO COUNT SAID BALLOTS.**

31.   Plaintiffs incorporate, repeat, and reallege, the foregoing allegations as though fully set forth herein.

32.   On Friday, October 4, 2013, Plaintiff White personally visited the principal office of the Defendant Election Commission and Defendant Clerk on West Grand Blvd. and respectfully requested to receive an absentee ballot application for the purpose of obtaining an absentee ballot for the upcoming November 5, 2013 General Election. **(See Plaintiff White's affidavit attached hereto as Exhibit A).**

33. Upon requesting to vote by absentee ballot, Plaintiff White filed out and signed an absentee ballot application. Plaintiff White was asked her name and date of birth, but was not asked to provide proof of a driver's license or state identification. **(See Plaintiff White's affidavit attached hereto as Exhibit A**; and see **Plaintiff White's signed absentee ballot application attached hereto as Exhibit D**).

34. Plaintiff White received an absentee ballot and said absentee ballot was assigned number 023-0811. (**See Plaintiff White's affidavit attached hereto as Exhibit A**).

35. Plaintiff White also requested from the election official to receive a copy of her signed absentee ballot application. The election official provided Plaintiff White with a copy of her signed absentee ballot application. (**See Plaintiff White's signed absentee ballot application attached hereto as Exhibit D**).

36. Upon receiving her absentee ballot and absentee ballot envelope from the election official, Plaintiff White took her absentee ballot and left Defendants City Clerk and Election Commission's office and proceeded home. (**See Plaintiff White's affidavit attached hereto as Exhibit A**).

37. Upon reaching her Detroit residence, Plaintiff White opened the envelope that contained the absentee ballot that was issued to her by an employee of the Defendants City Clerk and Election Commission. Upon opening up her absentee ballot, Plaintiff White reviewed the contents that were enclosed in the absentee ballot envelope. (**See Plaintiff White's affidavit attached hereto as Exhibit A**).

38. Upon reviewing the absentee ballot that was issued to her, Plaintiff White made an initial observation that the absentee ballot did not seem correct and proper. Thus, Plaintiff White requested that Plaintiff Davis review her absentee ballot, while in her presence, to

ascertain the legality of the absentee ballot she was issued.  **(See Plaintiff White's affidavit attached hereto as Exhibit A)**.

39.     Plaintiff Davis, at Plaintiff White's request, reviewed the contents of Plaintiff White's absentee ballot and the enclosures that were contained in Plaintiff White's absentee ballot envelope.  (**See Plaintiff White's affidavit attached hereto as Exhibit A; see Plaintiff Davis' affidavit attached hereto as Exhibit B**).

40.     Plaintiff Davis never at any time while Plaintiff Davis reviewed Plaintiff White's "un-voted" and "unmarked" absentee ballot, did he suggest to Plaintiff White to vote for any of the candidates as were listed on her absentee ballot.  (See Plaintiff White's affidavit attached hereto as Exhibit A; see also Plaintiff Davis' affidavit attached hereto as Exhibit B).

41.     Upon reviewing the form, size, and content of Plaintiff White's absentee ballot, Plaintiff Davis informed Plaintiff White that it was his belief that the absentee ballot that was in her possession did not conform with the requirements as set forth in Michigan Election Law.  (**See Plaintiff White's affidavit attached hereto as Exhibit A; see also Plaintiff Davis' affidavit attached hereto as Exhibit B**).

42.     Plaintiff Davis provided Plaintiff White with a copy of the pertinent sections of Michigan Election Law that governed the printing of ballots for elections.  Plaintiff Davis also provided Plaintiff White with a copy of minutes from the three (3) meetings held in the year 2013 by the Defendant Election Commission.  (**See Plaintiff White's affidavit attached hereto as Exhibit A; see also Plaintiff Davis' affidavit attached hereto as Exhibit B**).

43.    After reviewing the law and the minutes from the Defendant Election Commission's

meetings, Plaintiff White then indicated to Plaintiff Davis that she was concerned that her

vote would not be counted if the absentee ballot that was in her possession was not

printed in accordance with the provisions of Michigan Election Law and that she wanted

to get a legal ruling to declare the legality of the absentee ballot that was in her

possession.  **(See Plaintiff White's affidavit attached hereto as Exhibit A; see also**

**Plaintiff Davis' affidavit attached hereto as Exhibit B**).

44.    Plaintiff Davis confered with Attorney Andrew Paterson and informed him of Plaintiff

White's concerns and this action was filed soon thereafter.  **(See Plaintiff White's**

**affidavit attached hereto as Exhibit A; and see Plaintiff Davis' affidavit attached**

**hereto as Exhibit B**).

A.    **Plaintiff White's Absentee Ballot as Printed by the Defendants Does Not Conform**
        **With the Prescribed Format As Set Forth in MCL 168.705 of Michigan Election**
        **Law**.

45.    Michigan Election Law sets forth specific requirements and provides the ***prescribed***

***format*** by which ***all*** ballots are to be printed for any election.

46.    MCL 168.705 states in relevant part:

> Sec. 705.  The ballots of each kind shall be of uniform size and printed in black
> ink on white paper of a grade equal to 50-pound book, machine finished, and
> sufficiently thick so that the printing cannot be distinguished from the back.  **The**
> **ballots of each kind** ***shall*** **be** ***perforated diagonally across the upper right-hand***
> ***corner*** **of the face thereof, so that the** ***corner*** **can be readily torn off**.  ***Printed***
> **on the** ***detachable corner shall*** be ***the name or kind of ballot, and a bold-face***
> ***letter corresponding to a similar letter on the ballot box***. The ballots shall be
> numbered consecutively on such corner, such number to be printed thereon.
> (Emphasis supplied).

47.    Upon reviewing the actual absentee ballot of Plaintiff White, it is clear and evident that Plaintiff White's absentee ballot **does not** conform to the **mandatory *prescribed format*** as set forth in MCL § 168.705.

48.    Plaintiff White has authorized her legal counsel to attach to this pleading a copy of her "unmarked" and "un-voted" absentee ballot.  However, in order for the Court to truly see the perforated portion of Plaintiff White's absentee ballot, it is necessary for the Court to see the actual physical copy of Plaintiff White's absentee ballot.  Plaintiff White has authorized her legal counsel to being with him to the emergency hearing on this matter Plaintiff White's actual absentee ballot and all the enclosures that went with it. **(See Plaintiff White's affidavit attached hereto as Exhibit A; see also Plaintiff White's unmarked and un-voted absentee ballot attached hereto as Exhibit E)**.

49.    Looking at the top of Plaintiff White's absentee ballot (**Exhibit E**), it is clear and evident that the perforated portion of Plaintiff White's absentee ballot does not conform to the ***mandatory*** prescribed format as set forth in MCL § 168.705.  The perforated portion, which is located at the top of the absentee ballot, of Plaintiff White's absentee ballot does not conform to the prescribed format as set forth in MCL § 168.705 in the following ways:

> (1) The perforated portion of Plaintiff White's absentee ballot is ***horizontal and not diagonal*** as MCL § 168.705 requires it to be.  In addition to being ***horizontal and not diagonal***, the perforated portion of Plaintiff White's absentee ballot **is the size of the entire width of the absentee ballot**.  Thus once detached, the ***horizontal perforated*** portion of Plaintiff White's absentee

ballot will be in the form of a "*__horizontal rectangle__*" and not a "*__diagonal corner__*" as the statute requires

    (2) The perforated portion of Plaintiff White's absentee ballot **is not** in the upper right-hand corner of the ballot as MCL § 168.705 requires. Rather, the perforated portion of Plaintiff White's absentee ballot is the entire top portion of the ballot.

    (3) The perforated portion of Plaintiff White's absentee ballot **does not** contain the name or kind of the ballot printed thereon as MCL § 168.705 requires

    (4) The perforated portion of Plaintiff White's absentee ballot does not have a bold-face letter corresponding to a similar letter on the ballot box for said ballots. (**See Plaintiff White's unmarked and un-voted absentee ballot attached hereto as Exhibit E**)

50. Upon receiving the actual copy in person of Plaintiff White's absentee ballot, this Court will be able to clearly see that perforated portion of Plaintiff White's absentee ballot does not conform to the prescribed format set forth in MCL § 168.705. Once detached, the *__horizontal perforated__* portion of Plaintiff White's absentee ballot will be in the form of a "*__horizontal rectangle__*" and not a "*__diagonal corner__*" as the statute requires.

51. MCL § 168.705 uses the mandatory term "shall". The word **"'shall' is mandatory; it expresses a directive, not an option**." *Wolverine Power Supply Coop, Inc v DEQ*, 285 Mich App 548, 561; 777 NW2d 1 (2009). (Emphasis supplied).

52. The Legislature is presumed to know the rules of grammar. *Greater Bethesda Healing Springs Ministry v Evangel Bldrs & Constr Mgrs, LLC*, 282 Mich App 410, 414; 766 NW2d 874 (2009). Statutory language must be read within its grammatical context

unless something else was clearly intended.  *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009).

53.     Thus, it was mandatory for the perforated portion of ***all*** of the ballots printed by the Defendant Official Printer for the November General Election to conform precisely to the mandatory prescribed format set forth in MCL § 168.705, which requires that ***all*** ballots are printed with a ***diagonal*** perforation in the ***upper-right hand corner*** of the ballot, and "***printed* on the *detachable corner shall*** be ***the name or kind of ballot, and a bold-face letter corresponding to a similar letter on the ballot box***."  As noted above, **NONE** of these mandatory requirements are present on Plaintiff White's absentee ballot and thus, Plaintiff White's absentee ballot does not conform to the mandatory prescribed format set forth in MCL § 168.705.

54.     As further evidence that **the *diagonal* perforation in the upper-right hand corner** is required and not discretionary, Michigan Election Law refers to said ***perforated corner*** in two (2) other sections of the statute when explaining how an elector is to properly cast his or her ballot and the proper manner that an election inspector is to record and deposit said elector's ballot.

55.     MCL § 168.738(1), as amended, describes the process by which an elector is to properly cast his or her ballot when voting at the polls on election day.  MCL § 168.738(1) states in relevant part:

> (1) Before leaving eh booth or voting compartment, the elector shall fold his or her ballot or each of the ballots so that no part of the face shall be exposed, **and with the *detachable corner* on the outside**……  Except as provided in subsection (2), **the inspector *shall tear off the corner of the ballot*, *where perforated*, containing the number** and shall then in the presence of the

elector and the board of inspectors deposit each ballot in the proper ballot box without opening the ballot.

56. In addition, MCL § 168.768, describes the process by which the board of election inspectors are to process and count absentee ballots as cast in an election. MCL § 168.768 states in relevant part:

> Sec. 768. If upon such examination of the envelope contained an absent voter's ballot or ballots, the board of inspectors of election shall determine that such vote is legal, the member of the board receiving ballots at such election shall open the absent voter's envelope, take out the ballot or ballots therein contained ***and shall,*** without unfolding such ballot or allots, ***detach from each such ballot the perforated numbered corner***, and shall deposit each such ballot in the proper ballot box…. (Emphasis supplied).

57. Thus, reading MCL § 168.738 and MCL § 168.768, it is clear that the perforated portion of the ballots that shall be detached **shall be a *diagonal corner* and not a horizontal rectangle as the current ballots have.**

58. As a result of the perforated portion of Plaintiff White's absentee ballot failing to conform to the prescribed format set forth in MCL § 168.705, it is Plaintiff White's and Plaintiff Davis' belief that a declaratory judgment needs to be issued by this Court declaring that the perforated portion of Plaintiff White's absentee ballot does not comply with the mandatory prescribed format set forth in MCL § 168.705, and thus, said absentee ballot and others like it are VOID.

59. As a result of the perforated portion of Plaintiff White's absentee ballot failing to conform to the prescribed format set forth in MCL § 168.705, it is Plaintiff White's and Plaintiff Davis' position that pursuant to MCL § 168.560, Plaintiff White's absentee ballot and all the other absentee ballots that have been distributed and printed by the

Defendants City Clerk, Election Commission, and Official Printer, "shall not be used, cast, or counted."

60. Furthermore, it is both Plaintiff White's and Plaintiff Davis' position that the Defendant Official Printer **did not** have any legal authority to print any ballots for the upcoming November 5, 2013 General Election that **did not** *precisely* conform to the mandatory prescribed format set forth in MCL § 168.705.

**B. <u>Defendant Official Printer Did Not Have Any Legal Authority To Print Ballots That Did Not Conform To the Mandatory Prescribed Format Set Forth In MCL § 168.705</u>**

61. Michigan Election Law imposes a separate and distinct duty upon the "official printer" that is properly selected by the Defendant Election Commission to print the official ballots that are to be cast and used in any election.

62. MCL § 168.718 of Michigan Election Law sets forth and prescribes the duties of the Defendant Official Printer as it relates to his authority to print ballots for any election held in the City of Detroit. MCL § 168.718 states in relevant part:

> "Sec. 718. **It *shall not be lawful for the printer of official ballots for use at any election*, or any other person, to give or deliver any of said ballots to, or knowingly permit any of said ballots to be taken by, any person other than the board of election commissioners for which such ballots are being printed**; *or to print, or cause or permit to be printed*, **any ballots in any other form than the one prescribed by this act**….." (Emphasis supplied).

63. As noted above, it is purported that Defendant Official Printer is the "official printer" as designated by the Defendant Election Commission. In a hearing held before Wayne County Circuit Court Judge Patricia Fresard ("Judge Fresard") on Tuesday, October 1, 2013, Defendant City Clerk provided sworn testimony under oath in a show cause hearing held in the matter of *Wilcoxon, et al. v Winfrey, et al.*, Case No. 13-012502-AW,

where Defendant City Clerk testified that the Defendant Official Printer is in fact the "official printer" chosen and selected by the Defendant Election Commission to print the ballots for the August 6, 2013 Primary Election, and the November 5, 2013 General Election.

64. Assuming *arguendo* that Defendant City Clerk's testimony before the Court was truthful and accurate and Defendant Official Printer was truly and properly approved as the "official printer" of ballots for all elections conducted by the Defendants City Clerk and Election Commission, as the "official printer", MCL § 168.718 of Michigan Election Law makes it "***unlawful***" for the Defendant Official Printer "***to print, or cause or permit to be printed, any ballots <u>in any other form than the one prescribed</u> by [Michigan Election Law].***" (Emphasis supplied).

65. As thoroughly set forth and analyzed above, Plaintiff White's absentee ballot was printed in a form not prescribed by MCL 168.705 of Michigan Election Law. Specifically, the perforated portion of Plaintiff White's absentee ballot **does not comply** with the mandatory prescribed format set forth in MCL § 168.705 of Michigan Election Law.

66. Accordingly, pursuant to MCL § 168.718, it was "unlawful" for the Defendant Official Printer to print said ballots without conforming and complying with the mandatory prescribed format for the perforated section of said ballots as set forth in MCL § 168.705.

67. Thus, Plaintiff White and Plaintiff Davis respectfully request this Court to declare that Plaintiff White's absentee ballot as printed by the Defendant Official Printer does not conform and comply with the mandatory prescribed format for the perforated section of said ballots as set forth in MCL § 168.705.

68. Additionally, Plaintiff White and Plaintiff Davis respectfully request for this Court to declare that, pursuant to MCL § 168.718 of Michigan Election Law, it was "unlawful" for the Defendant Official Printer to print said ballots, including Plaintiff White's, because said absentee ballots were not printed in a form prescribed by Michigan Election Law.

   **C. Writ of Mandamus Shall Be Issued Against Defendants City Clerk and Election Commission Compelling Them Not to Use the Ballots As Printed By the Defendant Official Printer and A Writ of Mandamus Shall Be Issued Against the Defendant Board of Canvassers Compelling Them Not to Count Plaintiff White's Absentee Ballot and all other Similar Ballots as Printed By the Defendant Official Printer.**

69. "Mandamus is the appropriate remedy for a party seeking to compel action by election officials." *Citizens Protecting Michigan's Constitution v Secretary of State*, 280 Mich App 273, 283; 761 NW2d 210, aff'd in part 482 Mich 960 (2008).

70. A writ of mandamus is an extraordinary remedy. *Coalition for a Safer Detroit v Detroit City Clerk*, 295 Mich App 362, 367-367; ___NW2d ___ (2012).

71. The plaintiff must show that (1) the plaintiff has a clear legal duty to the performance of the duty sought to be compelled, (2) the defendants have a clear legal duty to perform the requested act, (3) the act is ministerial, and (4) no other remedy exists that might achieve the same result. *Id*. See also *White-Bey v Dep't of Corrections*, 239 Mich App 221, 223-224; 608 NW2d 833 (1999).

72. An act is ministerial if it is "prescribed and defined by law with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Citizens Protecting Michigan's Constitution*, 280 Mich App at 286, quoting *Carter v Ann Arbor City Attorney*, 271 Mich App 425, 439; 722 NW2d 243 (2006).

73.    As set forth in *Helmkamp v Livonia, supra, Deleeuw v Bd of State Canvasser, surpa, and Protect MI Constitution v Sec of State, supra*, Plaintiff White and Plaintiff Davis have a clear legal right to the performance sought to be compelled, which is the proper administration of Michigan Election Law in the City of Detroit's contested November 5, 2013 General Election.

74.    As will be explained in thorough detail below, the duties imposed upon all of the named Defendants herein are ministerial in nature, but more importantly, there is no other adequate remedy at law than mandamus that will achieve the correct legal result.  Due to the exigencies of an impending election, Plaintiff White and Plaintiff Davis have no other adequate remedy at law or in equity.  See *Barrow v Detroit Election Commission*, 301 Mich App 404; ___ NW2d ____ (2013), slip op at p 4. ("Aside from the instant action , plaintiff has no other adequate legal remedy, particularly given that the election is mere weeks away and the ballot printing deadline is imminent.")  **(See Published (Slip Op) Opinion of Court of Appeals in *Barrow v Detroit Election Commission*, 301 Mich App 404 (2013), attached hereto as Exhibit H).**

75.    The Michigan Legislature has taken very seriously the "proper" printing of ballots used in any election held in this State or in any political subdivision thereof.  Proof of this, the Michigan Legislature in 2012 amended MCL § 168.560 of Michigan Election Law setting forth a strict and severe penalty for the use of ballots that were not furnished and properly authorized by the Defendant Election Commission in accordance with Michigan Election Law.

76.    MCL § 168.560, as amended, states:

    Sec. 560.  **Ballots *other than those furnished by the board of election commissioners, according to the provisions of this act*, shall not be used cast, or**

*counted in any election precinct at any election***.** The size of all official ballots shall be as the board of election commissioners prescribes. (Emphasis supplied).

77. With its amendment, the Michigan Legislature has now made the penalty set forth in MCL § 168.560 applicable to **ALL ELECTIONS**.

78. Thus, if it is determined and declared by this Court that Plaintiff White's absentee ballot was not printed in accordance with the mandatory prescribed format as set forth in MCL § 168.705, applying the clear and unambiguous language of MCL § 168.560, Plaintiff White's and all the other absentee ballots that have been distributed and voted "***shall not be used, cast, or counted***." Consequently, applying the plain, clear and unambiguous language of MCL § 168.560, Plaintiff White and ***all*** the other electors who currently have these same absentee ballots in their possession and care, **cannot** "*cast*" the absentee ballot she currently has in her possession.

79. Moreover, applying the plain, clear and unambiguous language of MCL § 168.560 to the Defendant Board of Canvassers, who is now responsible for canvassing and certifying the election results of the November 5, 2013 General Election, the Defendant Board of Canvassers **cannot** "*count*" Plaintiff White's absentee ballot and all the other absentee ballots that are printed the same.

80. In order to properly apply the language of MCL § 168.560 to the undisputed facts in this case, requires this Court to use the well-settled rules of statutory construction. The Michigan Court of Appeals recently analyzed the fundamental purpose of statutory construction in *Wilcoxon v Detroit City Clerk*, 301 Mich App 619; ___ NW2d___ (2013), (slip op at p 6) (**attached hereto Exhibit I**), in which they held:

"The fundamental purpose of judicial construction of statutes is to ascertain and give effect to the intent of the Legislature. *In re Certified Question,* 433 Mich 710, 722; 449 NW2d 669 (1989); *Amburgery v Saunder*, 238 Mich App 228, 231-231; 605 NW2d 84 (1999). Once the intention of the Legislature is discovered, it must prevail regardless of any rule of statutory construction to the contrary. *Certified Question*, 433 Mich at 722. The language of the statute expresses the legislative intent. *Dep't of Transp v Tomkins*, 481 Mich 184, 191; 749 NW2d 716 (2008). The rules of statutory construction provide that a clear and unambiguous statute is not subject to judicial construction or interpretation. Id. If the language of the statute is plain and unambiguous, effect must be given to the words used, and judicial construction is neither permitted nor required. *Johnson v Pstoriza*, 491 Mich 417, 436; 818 NW2d 279 (2012). Stated otherwise, when a statute plainly and unambiguously expresses the legislative intent, the role of the court is limited to applying the terms of the statute to the circumstances in a particular case. *Dep't of Transp*, 481 Mich at 191." [*Wilcoxon v Detroit City Clerk*, *supra*, slip op at p 6]

(**See Published (Slip Op) Opinion in the matter of *Wilcoxon v Detroit City Clerk*, 301 Mich App 619 (2013) attached hereto as Exhibit I**).

81. MCL 168.560 uses the mandatory term "shall." As noted by the Michigan Court of Appeals in *Wilcoxon v Detroit City Clerk*, 301 Mich App 619, ___ NW2d ____ (2013), slip op at p 6: "The Legislature's use of the term "**shall" denotes mandatory action or direction**, *Mich Educ Ass'n v Secretary of State* (On Rehearing), 489 Mich 194, 218; 801 NW2d 35 (2011**)."** (Emphasis supplied**). (See Published (Slip Op) Court of Appeals Opinion in the matter of *Wilcoxon v Detroit City Clerk*, 301 Mich App 619 (2013) attached hereto as Exhibit I).**

82. Additionally, the word "'**shall' is mandatory; it expresses a directive, not an option**." *Wolverine Power Supply Coop, Inc v DEQ*, 285 Mich App 548, 561; 777 NW2d 1 (2009). (Emphasis supplied).

83. Moreover, "the judiciary should presume that the drafter intended a statute to have the meaning that it clearly expresses. *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011*)." Barrow v Detroit Election Commission, supra*, slip op at p 5. **(See Published (Slip Op) Opinion of Court of Appeals in *Barrow v Detroit Election Commission*, 301 Mich App 404 (2013), attached hereto as Exhibit H).**

84. Thus, applying the clear and unambiguous language of MCL § 168.560 to the undisputed facts of this case, it is "*mandatory*" for Plaintiff White **not to "*use*" or "*cast*"** the absentee ballot she currently has in her possession because the absentee ballot that was issued to her by the Defendant City Clerk was not printed in compliance with MCL § 168.705.

85. In addition, applying the clear and unambiguous language of MCL § 168.560 to the undisputed facts of this case, it is "*mandatory*" for Defendants City Clerk and Election Commission **not to** "*use*" the ballots, like the one currently in the possession of Plaintiff White, that **do not comply** with the "*mandatory*" prescribed format set forth in MCL 168.705.

86. And lastly, applying the clear and unambiguous language of MCL § 168.560 to the undisputed facts of this case, it is "*mandatory*" for the Defendant Board of Canvassers not to "*count*" Plaintiff White's absentee ballot and *all* other ballots that were printed the same.

## COUNT II

**A DECLARATORY JUDGMENT SHALL BE ISSUED DECLARING THAT PLAINTIFF WHITE'S ABSENTEE BALLOT DOES NOT CONFORM WITH MCL 168.736d OF MICHIGAN ELECTION LAW, WHICH REQUIRES THAT THE BALLOT MARKING INSTRCUTIONS FOR ABSENTEE BALLOTS SHALL BE PRINTED ON THE FRONT OF THE BALLOT SECRECY SLEEVE OR SHALL HAVE A CLEAR PLASTIC POCKET ON THE FRONT OF THE BALLOT SECRECY SLEEVE, AND FURTHER DECLARE THAT AS A RESULT OF PLAINTIFF WHITE'S ABSENTEE BALLOT FAILING TO BE IN ITS PROPER FORM, THE DEFENDANT PRINTER HAD NO LEGAL AUTHORITY TO PRINT SAID ABSENTEE BALLOT AND THUS, A WRIT OF MANDAMUS IS PROPER COMPELLING THE DEFENDANT BOARD OF CANVASSERS NOT TO COUNT SAID BALLOTS.**

87. Plaintiffs incorporate, repeat, and reallege, the foregoing allegations as though fully set forth herein.

88. On Friday, October 4, 2013, Plaintiff White personally visited the principal office of the Defendant Election Commission and Defendant Clerk on West Grand Blvd. and respectfully requested to receive an absentee ballot application for the purpose of obtaining an absentee ballot for the upcoming November 5, 2013 General Election. **(See Plaintiff White's affidavit attached hereto as Exhibit A).**

89. Upon requesting to vote by absentee ballot, Plaintiff White filed out and signed an absentee ballot application. Plaintiff White was asked her name and date of birth, but was not asked to provide proof of a driver's license or state identification. **(See Plaintiff White's affidavit attached hereto as Exhibit A**; and see **Plaintiff White's signed absentee ballot application attached hereto as Exhibit D**).

90. Plaintiff White received an absentee ballot and said absentee ballot was assigned number 023-0811. **(See Plaintiff White's affidavit attached hereto as Exhibit A**).

91. Plaintiff White also requested from the election official to receive a copy of her signed absentee ballot application. The election official provided Plaintiff White with a copy of

her signed absentee ballot application. (**See Plaintiff White's signed absentee ballot application attached hereto as Exhibit D**).

92.     Upon receiving her absentee ballot and absentee ballot envelope from the election official, Plaintiff White took her absentee ballot and left Defendants City Clerk and Election Commission's office and proceeded home. (**See Plaintiff White's affidavit attached hereto as Exhibit A**).

93.     Upon reaching her Detroit residence, Plaintiff White opened the envelope that contained the absentee ballot that was issued to her the employee of the Defendants City Clerk and Election Commission. Upon opening up her absentee ballot, Plaintiff White reviewed the contents that were enclosed in the absentee ballot envelope. (**See Plaintiff White's affidavit attached hereto as Exhibit A**).

94.     Upon reviewing the absentee ballot that was issued to her, Plaintiff White made an initial observation that the absentee ballot did not seem correct and proper. Thus, Plaintiff White requested that Plaintiff Davis review her absentee ballot, while in her presence, to ascertain the legality of the absentee ballot she was issued. (**See Plaintiff White's affidavit attached hereto as Exhibit A**).

95.     Plaintiff Davis, at Plaintiff White's request, reviewed the contents of Plaintiff White's absentee ballot and the enclosures that were contained in Plaintiff White's absentee ballot envelope. (**See Plaintiff White's affidavit attached hereto as Exhibit A; see Plaintiff Davis' affidavit attached hereto as Exhibit B**).

96.     Plaintiff Davis never at any time while Plaintiff Davis reviewed Plaintiff White's "un-voted" and "unmarked" absentee ballot, did he suggest to Plaintiff White to vote for any of the candidates as were listed on her absentee ballot. (**See Plaintiff White's affidavit**

**attached hereto as Exhibit A; see also Plaintiff Davis' affidavit attached hereto as Exhibit B).**

97.     Up reviewing the form, size, and content of Plaintiff White's absentee ballot, Plaintiff Davis informed Plaintiff White that it was his belief that the absentee ballot that was in her possession did not conform with the requirements as set forth in Michigan Election Law.  **(See Plaintiff White's affidavit attached hereto as Exhibit A; see also Plaintiff Davis' affidavit attached hereto as Exhibit B**).

98.     Plaintiff Davis provided Plaintiff White with a copy of the pertinent sections of Michigan Election Law that governed the printing of ballots for elections.  Plaintiff Davis also provided Plaintiff White with a copy of minutes from the three (3) meetings held in the year 2013 by the Defendant Election Commission.  **(See Plaintiff White's affidavit attached hereto as Exhibit A; see also Plaintiff Davis' affidavit attached hereto as Exhibit B**).

99.     After reviewing the law and the minutes from the Defendant Election Commission's meetings, Plaintiff White then indicated to Plaintiff Davis that she was concerned that her vote would not be counted if the absentee ballot that was in her possession was not printed in accordance with the provisions of Michigan Election Law and that she wanted to get a legal ruling to declare the legality of the absentee ballot that was in her possession.  **(See Plaintiff White's affidavit attached hereto as Exhibit A; see also Plaintiff Davis' affidavit attached hereto as Exhibit B**).

100.    Plaintiff Davis conferred with Attorney Andrew Paterson and informed him of Plaintiff White's concerns and this action was filed soon thereafter.  **(See Plaintiff White's**

**affidavit attached hereto as Exhibit A; and see Plaintiff Davis' affidavit attached hereto as Exhibit B**).

A. **Plaintiff White's Absentee Ballot as Printed by the Defendants Does Not Conform With the Prescribed Format As Set Forth in MCL 168.736d of Michigan Election Law**.

101.     Michigan Election Law sets forth specific requirements and provides the ***prescribed format*** by which ***all*** absentee ballots and ballot secrecy sleeves are to be printed for any election.

102.     Michigan Election Law sets forth two (2) separate instructions that must be provided to an absentee voter like Plaintiff White.  Those instructions are the "Instructions for Absent Voters" and the "Ballot Marking Instructions".  These two (2) separate instructions are governed by two separate sections of the Michigan Election Law.  MCL 168.736d governs the proper printing of "Ballot Marking Instructions" and MCL 168.764a governs the proper printing of the "Instructions for Absent Voters."

103.     MCL § 168.764a states in relevant part:

>     Sec. 764a.  The following instructions for an absent voter shall be included with each ballot or set of ballots furnished an absent voter:…….

>          (Specific Instructions Are Listed In Statute)

104.     In order to clarify any confusion that may result with the various instructions that are required to be provided for absent voter ballots, MCL § 168.764 provides:

>     Sec. 764.  In addition to the instructions provided to an absent voter under section 764a, the following ballot marking instructions for an absent voter concerning the method of voting shall be included with each absent voter ballot furnished an absent voter:

(a) For a primary election, the ballot marking instructions as provided in section 736b.

(b) For a general election, the ballot marking instructions as provided in section 736c.

**(c) For a nonpartisan election, the ballot marking instructions as provided in section 736d.**

(d) For a special election, the ballot marking instructions as provided in section 736e.  (Emphasis supplied).

105.   The City of Detroit's November General Election is a nonpartisan election.  Thus, § 736d of Michigan Election Law applies for the ballot marking instructions that are to be provided to absentee voters like Plaintiff White.

106.   MCL § 168.736d states in relevant part:

Sec. 736d.  Each ballot secrecy sleeve **used at a nonpartisan election** *shall either contain the following ballot marking instructions printed on the front of the ballot secrecy sleeve <u>or</u> shall have a clear plastic pocket on the front of the ballot secrecy sleeve* **that contains a printed copy of the following ballot marking instructions:**

**NONPARTISAN ELECTION**

**TO VOTE**:    Completely darken the oval opposite each choice.

--OR—

**TO VOTE:**    Complete the arrow opposite each choice.

**IMPORTANT:**        To mark your ballot, use only a black or blue ink pen.

Do NOT vote for more candidates than indicated under each office title.

**WRITE-IN CANDIDATES**:         To vote for a candidate whose name is not printed on the ballot, write or place the name of that candidate in the blank space provided and (completely darken the oval) or (complete the arrow).  Do not cast a write-in vote for a candidate whose name is already printed on the ballot for that office.

**CHECK BOTH SIDES OF BALLOT:** This ballot has two sides. Be certain to check the reverse side of the ballot.

**WHEN YOU HAVE COMPLETED VOTING:** Place the ballot in the secrecy sleeve so that votes cannot be seen and the numbered stub is visible. Return the ballot to the election official stationed at the tabulator. (If voting by absentee ballot, follow the instructions provided by the clerk for returning the ballot.) NOTE: If you make a mistake, return your ballot to the election official and obtain a new ballot. Do not attempt to erase or correct any marks made in error.

107.    An examination of Plaintiff White's absentee ballot's secrecy sleeve (**Exhibit F**) clear reflects that Plaintiff White's absentee ballot is not in compliance with the mandatory prescribed form set forth in MCL 168.736d.

108.    Attached hereto as **Exhibit F**, is a copy of the "*front"* of Plaintiff White's absentee ballot's secrecy sleeve. It is clearly evident by reviewing the copy, attached as **Exhibit F,** that the "*front*" of Plaintiff White's absentee ballot's secrecy sleeve **does not** contain the required "Ballot Marking Instructions" printed thereon as MCL 168.736d. Furthermore, the "*front*" of Plaintiff White's absentee ballot's secrecy sleeve **does not** have a clear plastic pocket on the "*front"* that contains a printed copy of the "Ballot Marking Instructions". **(See "Front" of Plaintiff White's absentee ballot's secrecy sleeve attached hereto as Exhibit F).**

109.    Now, if you examine the "*back*" of Plaintiff White's absentee ballot's secrecy sleeve, printed thereon are the "Instructions for Absent Voters" as required under MCL § 168.764a. However, nowhere on the "*front*" or the "*back*" of Plaintiff White's absentee ballot's secrecy sleeve are the "Ballot Marking Instructions" that are required under MCL 168.736d. **(See "back" of Plaintiff White's absentee ballot secrecy sleeve attached as pg. 2 of Exhibit F).**

110. Instead of complying with the clear and unambiguous language of MCL 168.736d, which requires that the "Ballot Marking Instructions are to be printed on the front of the ballot secrecy sleeve or contained in a clear plastic pocket on the front of the ballot secrecy sleeve, Defendants City Clerk and Official Printer copies on a "separate" white sheet of paper the "Ballot Marking Instructions" and folded it in half and placed it in the Plaintiff White's absentee ballot envelope. **(See Separate Sheet of paper for the "Ballot Marking Instructions" attached hereto as Exhibit G).**

111. Plaintiff White's legal counsel will bring to Court with him the complete absentee ballot envelope Plaintiff White received, including all of the enclosures, which include the secrecy envelope and the other written material that was contained in Plaintiff White's absentee ballot envelope.

112. This blatant disregard for the law cannot be tolerated by this Court considering Defendants actions are impacting Plaintiff White and other electors' rights to vote for the candidate of their choice.

113. Accordingly, both Plaintiff White and Plaintiff Davis requests this Court to declare that Plaintiff White's absentee ballot secrecy sleeve does not comply with the mandatory prescribed format as set forth in MCL 168.736d, and thus, Plaintiff White's absentee ballot and others like it are VOID and this Court should declare them VOID.

## <u>COUNT III</u>

**<u>A DECLARATORY JUDGMENT SHALL BE ISSUED DECLARING THAT PLAINTIFF WHITE'S ABSENTEE BALLOT DOES NOT CONFORM WITH MCL 168.560 OF MICHIGAN ELECTION LAW, WHICH REQUIRES THAT THE SIZE OF ALL OFFICIAL BALLOTS SHALL BE AS THE DEFENDANT ELECTION COMMISSION PRESCRIBES, AND FURTHER DECLARE THAT THE ORDER THAT NAMES AND OFFICES APPEAR ON PLAINTIFF WHITE'S BALLOT WERE NOT APPROVED BY THE DEFENDANT ELECTION COMMISSION, AND FURTHER DECLARE THAT THE DEFENDANT PRINTER HAD NO LEGAL AUTHORITY TO PRINT SAID</u>**

## ABSENTEE BALLOTS IN SAID FORM AND THUS, A WRIT OF MANDAMUS IS PROPER COMPELLING THE DEFENDANT BOARD OF CANVASSERS NOT TO COUNT SAID BALLOTS.

114.    Plaintiffs incorporate, repeat, and reallege, the foregoing allegations as though fully set forth herein.

115.    On Friday, October 4, 2013, Plaintiff White personally visited the principal office of the Defendant Election Commission and Defendant Clerk on West Grand Blvd. and respectfully requested to receive an absentee ballot application for the purpose of obtaining an absentee ballot for the upcoming November 5, 2013 General Election.  **(See Plaintiff White's affidavit attached hereto as Exhibit A).**

116.    Upon requesting to vote by absentee ballot, Plaintiff White filed out and signed an absentee ballot application.  Plaintiff White was asked her name and date of birth, but was not asked to provide proof of a driver's license or state identification.  **(See Plaintiff White's affidavit attached hereto as Exhibit A**; and see **Plaintiff White's signed absentee ballot application attached hereto as Exhibit D**).

117.    Plaintiff White received an absentee ballot and said absentee ballot was assigned number 023-0811.  (**See Plaintiff White's affidavit attached hereto as Exhibit A**).

118.    Plaintiff White also requested from the election official to receive a copy of her signed absentee ballot application.  The election official provided Plaintiff White with a copy of her signed absentee ballot application.  (**See Plaintiff White's signed absentee ballot application attached hereto as Exhibit D**).

119.    Upon receiving her absentee ballot and absentee ballot envelope from the election official, Plaintiff White took her absentee ballot and left Defendants City Clerk and

Election Commission's office and proceeded home.  (**See Plaintiff White's affidavit attached hereto as Exhibit A**).

120.  Upon reaching her Detroit residence, Plaintiff White opened the envelope that contained the absentee ballot that was issued to her the employee of the Defendants City Clerk and Election Commission.  Upon opening up her absentee ballot, Plaintiff White reviewed the contents that were enclosed in the absentee ballot envelope.  (**See Plaintiff White's affidavit attached hereto as Exhibit A**).

121.  Upon reviewing the absentee ballot that was issued to her, Plaintiff White made an initial observation that the absentee ballot did not seem correct and proper.  Thus, Plaintiff White requested that Plaintiff Davis review her absentee ballot, while in her presence, to ascertain the legality of the absentee ballot she was issued.  (**See Plaintiff White's affidavit attached hereto as Exhibit A**).

122.  Plaintiff Davis, at Plaintiff White's request, reviewed the contents of Plaintiff White's absentee ballot and the enclosures that were contained in Plaintiff White's absentee ballot envelope.  (**See Plaintiff White's affidavit attached hereto as Exhibit A; see Plaintiff Davis' affidavit attached hereto as Exhibit B**).

123.  Plaintiff Davis never at any time while Plaintiff Davis reviewed Plaintiff White's "un-voted" and "unmarked" absentee ballot, did he suggest to Plaintiff White to vote for any of the candidates as were listed on her absentee ballot.  (**See Plaintiff White's affidavit attached hereto as Exhibit A; see also Plaintiff Davis' affidavit attached hereto as Exhibit B**).

124.  Up reviewing the form, size, and content of Plaintiff White's absentee ballot, Plaintiff Davis informed Plaintiff White that it was his belief that the absentee ballot that was in

her possession did not conform with the requirements as set forth in Michigan Election Law.  (**See Plaintiff White's affidavit attached hereto as Exhibit A; see also Plaintiff Davis' affidavit attached hereto as Exhibit B**).

125.    Plaintiff Davis provided Plaintiff White with a copy of the pertinent sections of Michigan Election Law that governed the printing of ballots for elections.  Plaintiff Davis also provided Plaintiff White with a copy of minutes from the three (3) meetings held in the year 2013 by the Defendant Election Commission.  (**See Plaintiff White's affidavit attached hereto as Exhibit A; see also Plaintiff Davis' affidavit attached hereto as Exhibit B**).

126.    After reviewing the law and the minutes from the Defendant Election Commission's meetings, Plaintiff White then indicated to Plaintiff Davis that she was concerned that her vote would not be counted if the absentee ballot that was in her possession was not printed in accordance with the provisions of Michigan Election Law and that she wanted to get a legal ruling to declare the legality of the absentee ballot that was in her possession.  (**See Plaintiff White's affidavit attached hereto as Exhibit A; see also Plaintiff Davis' affidavit attached hereto as Exhibit B**).

127.    Plaintiff Davis conferred with Attorney Andrew Paterson and informed him of Plaintiff White's concerns and this action was filed soon thereafter.  (**See Plaintiff White's affidavit attached hereto as Exhibit A; and see Plaintiff Davis' affidavit attached hereto as Exhibit B**).

**B.** **<u>Plaintiff White's Absentee Ballot as Printed by the Defendants Does Not Conform With the Prescribed Format As Set Forth in MCL 168.560 of Michigan Election Law</u>**.

128. Michigan Election Law sets forth specific requirements and provides the ***prescribed format*** by which ***all*** ballots are to be printed for any election.

129. MCL § 168.560 states:

> Sec. 560. Ballots other than those furnished by the board of election commissioners, according to the provisions of this act, shall not be used, cast, or counted in any election precinct at any election. **The size of *all* official ballots *shall be as the board of election commissioners prescribes***. (Emphasis supplied).

130. One of the many concerns Plaintiff White expressed to Plaintiff Davis regarding the legality of her absentee ballot was the "size" of the ballot. **(See Plaintiff White's affidavit attached hereto as Exhibit A; see also Plaintiff Davis' affidavit attached hereto as Exhibit B).**

131. Plaintiff White concerns were appropriate considering the ***second sentence*** of MCL 168.560 clearly and unambiguously requires that the "**size of all official ballots *shall* be as the *board of election commissioners prescribes*.**" (Emphasis supplied).

132. As will be discussed in fuller detail below, the Defendant Election Commission has never prescribed the size to be used for the November General Election ballot.

133. In fact, from the testimony provided by the Defendant City Clerk in the *Wilcoxon* election matter, it is evident that the Defendant City Clerk authorized the printing of the ballots because believes she is the "*Don Diva*" of Detroit Elections and that she does not have to comply with Michigan Election Law in the administration thereof. (Plaintiffs will provide the Court with a complete copy of the transcript of Defendant City Clerk's testimony in the matter of *Wilcoxon v Winfrey*, Case No.13-012502-AW ("***Wilcoxon election matter***").

134. However, Defendant City Clerk's "assumption of authority" relative to her power to authorize the printing of official ballots for any election is totally misplaced and should not be upheld or tolerated by this Court.

135. This very issue of whether a local city clerk could usurp the authority of the duly appointed election commission of a city in relation to the printing of the ballots to be cast at an election was analyzed in *Roseville Board v City Clerk*, 53 Mich App 477; 220 NW2d 181 (1974). In addressing the "very narrow legal question of whether defendant city clerk could be enjoined from distributing ballots which he had ordered to be printed", which is similar to the issue posed in the instant action, the Court of Appeals in Roseville Board, supra, held:

> "**Plaintiff [election commission] argues that they, not the city clerk, have the duty to prepare, print, and deliver the ballots to be used**. **In that assertion *they are absolutely correct*.** See MCLA 168.690; MSA 6.1690, see also MCLA 168.719; MSA 6.1719. We would hasten to add that we find no support for the board's assertion that they have the power to refuse to place a properly certified initiatory petition on the ballot. Thus, while the board's refusal to place the petition on the ballot exceed their statutory power, **they could quite properly enjoin defendant city clerk from usurping their lawful right to prepare and print the ballots.**
>
> *********
>
> "Defendant would have this Court construe the language "shall cause the proposed amendment to be submitted to the electors" **as authorizing his usurping the power and function of the board of election commissioners with respect to the preparation and printing of the ballots. We do not find that the language mandates that suggested construction.** Clearly the proper method by which the city clerk should proceed to effectuate this statutory mandate is to

seek a writ of mandamus against the board of election commissioners order that body to discharge its duty and to refrain from exceeding its statutory duty.  This the clerk has now belatedly done; however, that question has not yet been passed upon by the trial court."  [*Roseville Board v City Clerk*, 53 Mich App 477, pp 480-481.]

136.   Thus it is clear, from the holding in Roseville Board, supra, that the board of city election commissioners, not the city clerk, has the duty to prepare, print, and deliver the ballots to be used in a city election. *Roseville Board v City Clerk*, 53 Mich App 477, pp 480-481.

137.   Moreover, the provisions of Michigan Election Law that governs the conduct of the Defendant Election Commission makes it equally clear that the Defendant Election Commission, not the city clerk, has the duty to prepare, print, and deliver the ballots to be used in a city election.

138.   MCL § 168.323 states in relevant part:

Sec. 323. It is the duty of the board of city election commissioners to prepare the primary ballots to be used by the electors.  The returns shall be canvassed by the board of county canvassers and the results certified to the board of city election commissioners, who shall prepare and furnish ballots for the ensuing election… (Emphasis supplied).

139.   MCL § 168.690 states in relevant part:

Sec. 690.  The township, city, or village board of election commissioners for each jurisdiction conducting the election shall have the ballots required for a regular or special township, village, city, school, or community college election, or official primary election for the nomination of candidates for township, city, ward, or community college offices, to be printed and delivered to the election commission's township, village, or city clerk at least 10 days before the election.  The duties imposed upon county boards of election commissioners and upon county, township, and city clerks relative to the printing, counting, packaging,

sealing, and delivery of official ballots are imposed upon the township and
municipal boards of election commissioners….relative to the printing counting,
packaging, sealing, and delivery of official ballots for use in each precinct of the
township, village, or city at a municipal, township, village, school, or community
college election. (Emphasis supplied).

140.  And finally, MCL § 168.719 states in relevant part:

Sec. 719.  **The election commission of each city**, township and village ***shall
perform such duties relative to the preparation, printing and delivery of
ballots as are required by law of the boards of election commissioners of the
counties**… (Emphasis supplied).

141.  Thus the language of these three sections read together make it very clear that the
Defendant Election Commission is vested with the exclusive authority to approve the
form, size and the printing of the ballots to be used in any election, ***not*** the Defendant
City Clerk.

142.  The Defendant City Clerk's assumption and usurpation of the Defendant Election
Commission's exclusive authority to print and determine the size and form of the ballot
has no legal consequence or merit.

143.  This very issue of a city clerk's assumption of authority relative to election related
matters was discussed in by the Michigan Court of Appeals in *Taylor v Currie*, 277 Mich
App 85; 743 NW2d 571 (2007).  In addressing the issue of whether the former Detroit
City Clerk Jackie Currie had the statutory legal authority to mail out unsolicited absentee
ballot applications, the Court of Appeals held:

" 'The general rule, with regard to municipal officers, is that they have only such
powers as are expressly granted by statute or by sovereign authority or those
which are necessarily to be implied from those granted.' "  *Presnell v Wayne [Co]
Bd of Co RD Comm'rs*, 105 Mich App 362, 368; 306 NW 2d 516 (1981), quoting
56 Am Jur 2d, Municipal Corporations, Counties, and Other Political

Subdivisions, § 276, p 327.  Or as or Supreme Court has stated, **"[t]he extent of the authority of the people's public agents is measured by the statute from which they derive their authority, not by their own acts and assumption of authority**." *Sittler v Michigan College of Mining & Tech Bd of Control*, 333 Mich 681, 687; 53 NW2d 681 (1952) (citations and punctuation omitted).  **As such, "[p]ublic officers have and can exercise only such powers as are conferred on them by law**…" *Id.*  (citations and punctuation omitted)."

*****

"Second, on the basis of the maxim expression *uniusest exclusion alterius*, (the expression of one thing is the exclusion of another), *Feld v Robert & Charles Beauty Salon*, 435 Mich 352, 362; 459 NW2d 279 (1990) (opinion by RILEY, C.J.)…..

"**[W]hen a statute limits a thing to be done in a particular mode, it includes a negative of any other mode**." *Christensen v Harris Co*, 529 US 576, 583; 120 S Ct 1655; 146 L Ed 2d 621 (2000) (citation and punctuation omitted)."

[*Taylor v Currie*, 277 Mich App 85, at pp 94-95 (2007)]. (Emphasis supplied).

144. Thus, Defendant City Clerk had no statutory authority to usurp the power of the Defendant Election Commission and unlawfully authorize the printing of the ballots considering the Defendant Election Commission had not met at as a public body to approve the size, form, and order that the ballots should have been printed.

145. In fact, the order and arrangement of the candidates on the ballot were within the exclusive jurisdiction of the Defendant Election Commission. and not the Defendant City Clerk.

146. MCL § 168.795b, states in relevant part:

Ballot labels shall be printed or displayed in plain, clear, black type on white surface…  The offices and candidates shall be printed or displayed in the order provided by law, or if no such provision is made, in the order prescribed by the board of election commissioners of the county, city, village, township, or school district…"  (Emphasis supplied).

147. There is no provision contained within Michigan Election Law that prescribes the order in which the offices and candidates are to be printed on a nonpartisan ballot. Thus, in accordance with MCL § 168.795b, the order shall be prescribed by the Defendant Election Commission.

148. In fact, although the Defendant Board of Canvassers certified the names to the Defendant Election Commission after conducting a recount of the ballots cast in the August Primary, contrary to Defendant City Clerk's erroneous testimony, the Defendant Election Commission was required to convene as a public body to meet to certify the names to be placed on the November 2013 General Election Ballot. This very issue was discussed by the Michigan Court of Appeals in *SMFBC v Killeen*, 153 Mich App 370; 395 NW 2d 325 (1986), in which the Court held:

> While the language of the statute is not entirely clear, we see no reason for the Legislature to distinguish between candidates who are to be "*properly certified*" and *constitutional amendments or other questions which have to be so certified*. We therefore construe the statute to require *candidates, constitutional amendments, and questions* for use at any state, district, or count election to be "*properly*" certified before they are entitled to placement on the ballot. Since the statute is directed to the board of election commissioners, the use of the word "*properly*" evidences an intent of the Legislature that the board of county election commissioners not only determine that a proposed question *is* certified, but that it is indeed "properly" certified. Accordingly, where it is apparent to the board of county election commissioners that the question is not entitled to placement on the ballot, it may refuse to place it thereon and leave the certifying body to its legal recourse. We interpret "*properly*" in this context to mean that the election commissioners are required to determine

that, on its face, the question is entitled to placement on the ballot. (Emphasis in original).

149. Thus, like a county board of election commissioners, which by statute the Defendant Election Commission exercises their powers as well, the Defendant Election Commission had to convene to determine if the candidates as certified by the Defendant Board of Canvassers were "properly" certified. This did not occur. Particularly in the race for mayor where one of the top two vote getters was a write-in candidate that was previously removed from the ballot. See Barrow v Detroit Election Commission, supra.

150. Accordingly, it was necessary for the Defendant Election Commission to convene as a public body under the provisions of the Open Meetings Act ("**OMA**") and vote on the form, size, and order of then names and offices that were to be printed on the ballot. More importantly the Defendant Election Commission was required to meet to approve the printing of the ballots themselves and NONE of these actions occurred.

151. As this Court is aware, pursuant to § 3-103 of the 2012 Detroit City Charter, the Defendant Election Commission is required to conduct all of its meetings and proceedings in accordance with the provisions of the OMA. **(See 3-103 of the 2012 Detroit City Charter attached hereto as Exhibit C).**

152. Thus, any and all decisions that needed to be made by the Defendant Election Commission were required to be done in an open meeting under the provisions of the OMA.

153. As a public body subject to the OMA, "[t]he OMA mandates that all "decisions" must be made in a public meeting, MCL 15.263(2)." *Moore v Fennville Bd of Ed*, 223 Mich App 196, 200 (1997).

154. As noted by our Court of Appeals in *Moore, supra,* at 200-201:

According to the Michigan Supreme Court, a "decision" under the statute is defined as any of the following:

> [a.] a determination…by which a public body effectuates…policy;
> [b.] [an] action… by which a public body effectuates…policy;
> [c.] [a] vote… by which a public body effectuates…policy;
> [d.] [a] disposition upon a motion, proposal, recommendation, resolution, order, ordinance, bill or measure on which a vote by members of a public body is required and by which a public body effectuates or formulates public policy. [*Booth Newspapers, Inc v U of M Bd of Regents*, 444 Mich 211, 228, n 18; 507 NW2d 422 (1993).]

155. Thus, it is clear that the Defendant Election Commission would have had to have a public meeting to vote to approve the printing of the ballots for the November 2013 General Election.

156. It is undisputed that Defendant Election Commission has only convened and held three (3) meetings this year. Those meeting dates were May 23, 2013, August 5, 2013, and August 26, 2013.

157. In spite of Defendant City Clerk's flawed assertions during her testimony in the *Wilcoxon election matter*, Defendant Election Commission, as a public speaks only through its minutes and approved resolutions. "**A county board speaks only through its official minutes and resolutions and their import may not be altered or supplemented by parol evidence regarding the intention of the individual members**." *46th Circuit Court v Crawford C*o., 266 Mich App 150, at p 161; 702 NW2d 588 (2005), citing *Tavener v Elk Rural Ar. School Dist*., 341 Mich 244; 67 NW2d 136 (1954). (Emphasis supplied).

158. Plaintiff White and Plaintiff Davis having reviewed the minutes from the meetings of the Defendant Election Commission held on May 23, 2013, August 5, 2013, and August 26, 2013, it is quite clear that the Defendant Election Commission never approved any

resolution authorizing the size, form, or order of the names and offices, nor approved a resolution authorizing the printing of the ballots for the November 2013 General Election Ballot. **(See minutes from May 23, 2013 meeting attached hereto as Exhibit J; see minutes from Defendant Election Commission's August 5, 2013 meeting attached hereto as Exhibit K; see minutes from Defendant Election Commission's August 26, 2013 meeting attached hereto as Exhibit L)**

A. **Writ of Mandamus Shall Be Issued Against Defendants City Clerk and Election Commission Compelling Them Not to Use the Ballots As Printed By the Defendant Official Printer and A Writ of Mandamus Shall Be Issued Against the Defendant Board of Canvassers Compelling Them Not to Count Plaintiff White's Absentee Ballot and all other Similar Ballots as Printed By the Defendant Official Printer.**

159. "Mandamus is the appropriate remedy for a party seeking to compel action by election officials." *Citizens Protecting Michigan's Constitution v Secretary of State*, 280 Mich App 273, 283; 761 NW2d 210, aff'd in part 482 Mich 960 (2008).

160. A writ of mandamus is an extraordinary remedy. *Coalition for a Safer Detroit v Detroit City Clerk*, 295 Mich App 362, 367-367; ___NW2d ___ (2012).

161. The plaintiff must show that (1) the plaintiff has a clear legal duty to the performance of the duty sought to be compelled, (2) the defendants have a clear legal duty to perform the requested act, (3) the act is ministerial, and (4) no other remedy exists that might achieve the same result. *Id.* See also *White-Bey v Dep't of Corrections*, 239 Mich App 221, 223-224; 608 NW2d 833 (1999).

162. An act is ministerial if it is "prescribed and defined by law with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Citizens Protecting Michigan's Constitution*, 280 Mich App at 286, quoting *Carter v Ann Arbor City Attorney*, 271 Mich App 425, 439; 722 NW2d 243 (2006).

163. As set forth in *Helmkamp v Livonia, supra, Deleeuw v Bd of State Canvasser, surpa, and Protect MI Constitution v Sec of State, supra*, Plaintiff White and Plaintiff Davis have a clear legal right to the performance sought to be compelled, which is the proper administration of Michigan Election Law in the City of Detroit's contested November 5, 2013 General Election.

164. As will be explained in through detail below, the duties imposed upon all of the named Defendants herein are ministerial in nature, but more importantly, there is no other adequate remedy at law than mandamus that will achieve the correct legal result. Due to the exigencies of an impending election, Plaintiff White and Plaintiff Davis have no other adequate remedy at law or in equity. See *Barrow v Detroit Election Commission*, 301 Mich App 404; ___ NW2d ____ (2013), slip op at p 4. ("Aside from the instant action , plaintiff has no other adequate legal remedy, particularly given that the election is mere weeks away and the ballot printing deadline is imminent.") **(See Published (Slip Op) Opinion of Court of Appeals in *Barrow v Detroit Election Commission*, 301 Mich App 404 (2013), attached hereto as Exhibit H).**

165. The Michigan Legislature has taken very seriously the "proper" printing of ballots used in any election held in this State or in any political subdivision thereof. Proof of this, the Michigan Legislature in 2012 amended MCL § 168.560 of Michigan Election Law setting forth a strict and severe penalty for the use of ballots that were not furnished and properly authorized by the Defendant Election Commission in accordance with Michigan Election Law.

166. MCL § 168.560, as amended, states:

> Sec. 560. **Ballots *other than those furnished by the board of election commissioners, according to the provisions of this act*, shall not be used cast, or**

> *counted in any election precinct at any election.* The size of all official ballots
> shall be as the board of election commissioners prescribes. (Emphasis supplied).

167. With its amendment, the Michigan Legislature has now made the penalty set forth in
MCL § 168.560 applicable to **ALL ELECTIONS**.

168. Thus, if it is determined and declared by this Court that Plaintiff White's absentee ballot
was not printed in accordance with the mandatory prescribed format as set forth in MCL
§ 168.560, 168.323, 168.690, 168.719, and 168.795b applying the clear and unambiguous
language of MCL § 168.560, Plaintiff White's and all the other absentee ballots that have
been distributed and voted "*shall not be used, cast, or counted.*" Consequently, applying
the plain, clear and unambiguous language of MCL § 168.560, Plaintiff White and *all* the
other electors who currently have these same absentee ballots in their possession and
care, **cannot** "*cast*" the absentee ballot she currently has in her possession.

169. Moreover, applying the plain, clear and unambiguous language of MCL § 168.560 to the
Defendant Board of Canvassers, who is now responsible for canvassing and certifying the
election results of the November 5, 2013 General Election, the Defendant Board of
Canvassers **cannot** "*count*" Plaintiff White's absentee ballot and all the other absentee
ballots that are printed the same.

170. In order to properly apply the language of MCL § 168.560 to the undisputed facts in this
case, requires this Court to use the well-settled rules of statutory construction. The
Michigan Court of Appeals recently analyzed the fundamental purpose of statutory
construction in *Wilcoxon v Detroit City Clerk*, 301 Mich App 619; ___ NW2d___ (2013),
(slip op at p 6) (**attached hereto Exhibit I**), in which they held:

"The fundamental purpose of judicial construction of statutes is to ascertain and give effect to the intent of the Legislature. *In re Certified Question,* 433 Mich 710, 722; 449 NW2d 669 (1989); *Amburgery v Saunder*, 238 Mich App 228, 231-231; 605 NW2d 84 (1999). Once the intention of the Legislature is discovered, it must prevail regardless of any rule of statutory construction to the contrary. *Certified Question*, 433 Mich at 722. The language of the statute expresses the legislative intent. *Dep't of Transp v Tomkins*, 481 Mich 184, 191; 749 NW2d 716 (2008). The rules of statutory construction provide that a clear and unambiguous statute is not subject to judicial construction or interpretation. Id. If the language of the statute is plain and unambiguous, effect must be given to the words used, and judicial construction is neither permitted nor required. *Johnson v Pstoriza*, 491 Mich 417, 436; 818 NW2d 279 (2012). Stated otherwise, when a statute plainly and unambiguously expresses the legislative intent, the role of the court is limited to applying the terms of the statute to the circumstances in a particular case. *Dep't of Transp*, 481 Mich at 191." [*Wilcoxon v Detroit City Clerk*, *supra*, slip op at p 6]

(**See Published (Slip Op) Opinion in the matter of** *Wilcoxon v Detroit City Clerk***, 301 Mich App 619 (2013) attached hereto as Exhibit I**).

171.   MCL § 168.560 uses the mandatory term "shall." As noted by the Michigan Court of Appeals in *Wilcoxon v Detroit City Clerk*, 301 Mich App 619, ___ NW2d ____ (2013), slip op at p 6: "The Legislature's use of the term "**shall" denotes mandatory action or direction**, *Mich Educ Ass'n v Secretary of State* (On Rehearing), 489 Mich 194, 218; 801 NW2d 35 (2011**)."** (Emphasis supplied)**. (See Published (Slip Op) Court of Appeals Opinion in the matter of** *Wilcoxon v Detroit City Clerk***, 301 Mich App 619 (2013) attached hereto as Exhibit I).**

172. Additionally, the word "'**shall' is mandatory; it expresses a directive, not an option**." *Wolverine Power Supply Coop, Inc v DEQ*, 285 Mich App 548, 561; 777 NW2d 1 (2009). (Emphasis supplied).

173. Moreover, "the judiciary should presume that the drafter intended a statute to have the meaning that it clearly expresses. *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011*)." Barrow v Detroit Election Commission, supra*, slip op at p 5. **(See Published (Slip Op) Opinion of Court of Appeals in *Barrow v Detroit Election Commission*, 301 Mich App 404 (2013), attached hereto as Exhibit H).**

174. Thus, applying the clear and unambiguous language of MCL § 168.560 to the undisputed facts of this case, it is "*mandatory*" for Plaintiff White **not to "*use*" or "*cast*"** the absentee ballot she currently has in her possession because the absentee ballot that was issued to her by the Defendant City Clerk was not printed in compliance with MCL §§ 168.560, 168.323, 168.690, 168.719, and 168.795b

175. In addition, applying the clear and unambiguous language of MCL § 168.560 to the undisputed facts of this case, it is "*mandatory*" for Defendants City Clerk and Election Commission **not to** "*use*" the ballots, like the one currently in the possession of Plaintiff White, that **do not comply** with the "*mandatory*" prescribed format set forth in MCL §§ 168.560, 168.323, 168.690, 168.719, and 168.795b.

176. And lastly, applying the clear and unambiguous language of MCL § 168.560 to the undisputed facts of this case, it is "*mandatory*" for the Defendant Board of Canvassers not to "*count*" Plaintiff White's absentee ballot and ***all*** other ballots that were printed the same.

<u>**COUNT IV**</u>
<u>**INJUNCTIVE RELIEF**</u>

177. Plaintiff incorporates, repeats, and realleges, the foregoing allegations as though fully set forth herein.

178. "Injunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury." *Jeffrey v Clinton Twp*, 195 Mich App 260, 263-264; 489 NW2d 211 (1992).

179. Injunctive relief may be appropriate in the context of election law, where the exigency of a pending election often renders any legal remedy inadequate. See, e.g., *Treasurer of the Committee to Elect Gerald D Lostracco v Fox*, 150 Mich App 617, 621; 389 NW2d 446 (1986).

180. The Court of Appeals has identified four factors to consider in determining whether to grant a TRO or preliminary injunction:

> (1)The likelihood that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public interest if the injunction is issued. *Davis v Financial Review Team*, 296 Mich App 568, at ___; 821 NW2d 896 (2012).

181. Plaintiff White faces a real and imminent danger of irreparable harm of not having her vote count as cast on the absentee ballot she was issued by the Defendant City Clerk. Almost a century ago, in *Yick Wo v Hopkins*, 118 U.S. 356, the United States Supreme Court referred to "the political franchise of voting" as "**a fundamental political right, because preservative of all rights**." 118 U.S., at 370. (Emphasis supplied).

182.	As our United States Supreme Court explained in *Reynolds v Sims*, 377 U.S. 533, at 554-555 (1964):

> "**Undeniably the Constitution of the United States protects the right of all qualified citizens to vote in state as well as in federal elections**. A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear. It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, *Ex Parte Yarbrough*, 110 U.S. 651, **and to have their votes counted**, *United States v. Mosley*, 238 U.S. 383. In *Mosley* the Court stated that it is "**as equally unquestionable that the right to have one's vote counted is as open to protection…. As the right to put a ballot in a box**." 23 U.S., at 386."

183.	"[T]he right to vote is an implicit fundamental political right that is preservative of all rights." *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 16; 740 NW2d 444 (2007) (internal quotations omitted).

184.	Although the right to vote is constitutionally protected, as noted by the Michigan Court of Appeals in *Fleming v Macomb County Clerk*, Unpublished per curiam opinion of the Court of Appeals, issued June 26, 2008 (Docket No. 279966) (**Exhibit M**), "our Supreme Court has noted that the "equal right to vote is not absolute." *Id.* (internal quotations omitted). As the Court of Appeals explained in Fleming, supra, "Instead, the Legislature must "preserve the purity of elections" and "guard against abuses of the elective franchise." Const 1963, art 2, § 4." *Fleming, supra*, slip op p 10. (**See unpublished per curiam opinion of the Court of Appeals in *Fleming v Macomb County Clerk*, opinion issued June 26, 2008, Docket No. 279966 attached hereto as Exhibit M**).

185.	Like the defendant clerk in *Fleming, supra*, the actions of the Defendant City Clerk in the instant action has undeniably "undermined the constitutional right of the public (like

Plaintiff White and Plaintiff Davis) to participate in fair, evenhanded elections and therefore, constituted an injury." *Fleming, supra*, slip op at p 10. (**Exhibit M).**

186.    Thus, if the proper ballots are not re-printed by the Defendant Election Commission in accordance with Michigan Election Law, and the ballots that are currently in the possession of Plaintiff White and other electors are not declared VOID, Plaintiff White and other electors will be denied their **constitutional right to vote and to have their votes counted** because the ballots that are currently being issued by the Defendant City Clerk **cannot be "counted"** under MCL § 168.560 **BECAUSE THE BALLOTS WERE NOT PRINTED IN ACCORDANCE WITH MICHIGAN ELECTION LAW**!!!

187.    Moreover under the Purity of Elections Clause of the Michigan Constitution of 1963, Const 1963, art 2, § 4,  the Legislature had every right to implement said amendment to MCL § 168.560  in order to ensure the purity of elections here in the State of Michigan. As the Michigan Supreme Court explained in *Socialist Workers Party v Secretary of State*, 412, Mich 571, 596 317 NW 2d 1 (1982): "The phrase "purity of elections" "requires… fairness and evenhandedness in the election laws of this state."

188.    Plaintiff Davis specifically will suffer an irreparable injury as a result of the fact that Defendant Clerk's actions violate the purity of elections clause of the Michigan Constitution, Const 1963, art 2, § 4.   Plaintiff Davis, who will be supporting a number of candidates whose names appear on the general election ballot, will suffer an injury because the Defendant City Clerk's unlawful actions has undermined the constitutional right of the public to participate in fair, evenhanded elections and, therefore, constitutes an injury as the Court of Appeals established in *Fleming, supra*.  On the issue of injury

for a general member of the public, the Court of Appeals thoroughly explained in

*Fleming, supra*, slip op at 10:

> "Defendant contends that even if the mass mailing violated state law or the constitution, plaintiffs are not entitled to relief because they failed to show any injury or harm. However, plaintiffs are not required to show a substantial injury distinct from that suffered by the public in general in order to establish standing in an election case. *Helmkamp v Livonia City Council*, 160 Mich App 442, 445; 408 NW2d 470 (1987). "[T]he right to vote is an implicit fundamental political right that is preservative of all rights." *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 16; 740 NW2d 444 (2007) (internal quotations omitted). Although the right to vote is constitutionally protected, our Supreme Court has noted that the "equal right to vote is not absolute."[10] *Id.* (internal quotations omitted). Instead, the Legislature must "preserve the purity of elections" and "guard against abuses of the elective franchise." Const 1963, art 2, § 4. Defendant's actions undermined the constitutional right of the public to participate in fair, evenhanded elections and, therefore, constituted an injury. Consequently, plaintiffs had standing to bring a cause of action to remedy this injury. See *Helmkamp*, *supra*. " [Fleming, supra, slip op at p 10.] (**Exhibit M).**

189.    Thus, if the ballots that electors have received are not proper and fail to comply with the mandatory prescribed format, NONE of the ballots as cast can be counted and thus it is necessary for this Court to issue a TRO requiring the Defendants to print ballots that conform with the statutory requirements and further require the Defendants to properly approve the printing of said ballots in accordance with Michigan Election Law. Otherwise Plaintiff White and all other electors will be denied their constitutional right to vote, but more importantly, have their votes counted!!

190.    There is a strong likelihood that Plaintiff White and Plaintiff Davis will prevail on the merits because Plaintiffs have clearly shown that Plaintiff White's absentee ballot does

not conform with the mandatory prescribed format as outlined in the various provisions of Michigan Election Law cited and referenced above.

191.     As expressed in Plaintiff White's affidavit and restated herein, Plaintiff White will suffer irreparable harm if an injunction is not issued because Plaintiff White will be denied her precious right to vote and to have her vote counted as a result of receiving an "unlawful" ballot from the Defendant City Clerk, which under Michigan Election Law, MCL § 168.560 **shall not and cannot be counted, used or cas**t. **(See Plaintiff White's affidavit attached hereto as Exhibit A).**

192.     As noted above, there will be SUBSTANTIAL harm to the public if an injunction is issued because like Plaintiff White, their votes will not be counted as a result of the ballots not being properly printed in accordance with Michigan Election Law as cited herein.

193.     The issuance of an injunction will ensure that properly approved ballots are being used by the electors, which will permit the Defendant Board of Canvassers to count said votes as cast.

194.     It shall be further duly noted for the record that Plaintiff Davis has filed a $1,000 personal bond in accordance with the Michigan Court rules when this action was filed.  Moreover, if Defendants believe that the personal bond as posted by Plaintiff Davis is not adequate, in accordance with the Michigan Court Rules, Defendants have a right to file a motion with this Court seeking that a different type or form of bond is filed by Plaintiff Davis ONLY.

# PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff White and Plaintiff Davis pray and respectfully request that the Court grants relief as follows:

A. ISSUE a Declaratory Judgment declaring that Plaintiff White's absentee ballot does not conform to MCL 168.560, 168.705, 168.736d of Michigan Election Law and thus, pursuant to MCL 168.560 said ballots cannot be used, cast, or counted.

B. ISSUE a Declaratory Judgment declaring that the Defendant Official Printer had no legal authority to print said ballots as Plaintiff White received and declare it was unlawful to print said ballots for they did not conform with the mandatory formats set forth in the various sections of Michigan Election Law.

C. ISSUE a Declaratory Judgment that Defendant City Clerk had no statutory legal authority to authorize the printing of the official ballots for the November 2013 General Election.

D. ISSUE a Declaratory Judgment declaring that Defendant Election Commission is vested with the sole statutory legal authority to authorize the printing, distribution and preparation of all official ballots for any election held in the City of Detroit.

E. ISSUE a Declaratory Judgment declaring that the Defendant City Clerk and Defendant Official actions of unlawfully printing the ballots for the November General Election violated the purity of elections clause of the Michigan Constitution, Const 1963, art 2, § 4.

F. ISSUE a Writ of Mandamus compelling Defendant Election Commission to meet and convene in accordance with the OMA to authorize the printing of the ballots for the November 2013 General Election in accordance with the form and size it prescribes.

G. ISSUE a Writ of Mandamus against the Defendant Board of Canvassers compelling them not to count any ballots as unlawfully printed by the Defendants City Clerk and Official Printer.

H. ISSUE an Injunction enjoining the Defendant City Clerk from distributing any ballots that were previously unlawfully printed by the Defendant Official Printer and enjoin Defendant Official Printer from printing any more ballots until they receive official authorization from the Defendant Election Commission.

I. ISSUE a Writ of Mandamus and Declaratory Judgment against the Defendant Election Commission declaring  and compelling them to print and distribute new absentee ballots in accordance with the provisions of Michigan Election Law.

J. ORDER any and all such OTHER RELIEF as justice may so require.

Respectfully submitted,

**/S/ANDREW A. PATERSON**
ANDREW A. PATERSON (P18690)
Attorney for Plaintiff Desmond White
46350 Grand River Ave., Suite C
Novi, MI 48374
(248) 568-9712
DATED: October 6, 2013


**/S/ ROBERT DAVIS**
ROBERT DAVIS, *In Pro Per*
180 Eason
Highland Park, MI 48203
(248) 470-8731
DATED: October 6, 2013