# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

**FIFTH THIRD**
**MORTGAGE COMPANY**

Case No: 13-          -CH

            Plaintiff,

Hon.

**v.**

13-008219-CH
FILED IN MY OFFICE
WAYNE COUNTY CLERK
6/21/2013 1:20:54 PM
CATHY M. GARRETT

**WEST TOWN HOMES I, LLC**

**CITY OF DETROIT**

**CHARTER ONE BANK, NA**

            **Defendant.**

---

ORLANS ASSOCIATES, P.C.
Christian R. Biasell (P66419)
Attorney for Plaintiff
1650 W. Big Beaver Road
Troy, MI 48084
(248) 502-1510

---

**There is not any other pending or resolved civil action arising out**
**of the transaction or occurrence alleged in the Complaint.**

### COMPLAINT TO QUIET TITLE

Plaintiff Fifth Third Mortgage Company, (hereinafter "Plaintiff" or "Fifth Third") by and

through its attorneys, Orlans Associates, P.C. by Christian R. Biasell, and for its Complaint for

Quiet Title states as follows:

### GENERAL ALLEGATIONS

1.      Plaintiff, Fifth Third Mortgage Company, is a foreign entity that regularly conducts

business in Wayne County, MI.

**EXHIBIT**
**6-B**

2.      Defendant West Town Homes I, LLC ("West Town") is, upon information and belief, a Michigan corporation that regularly conducts business in Wayne County, MI.

3.      Defendant City of Detroit ("CoD") is, upon information and belief, a Michigan municipal corporation that regularly conducts business in Wayne County, MI.

4.      Defendant Charter One Bank, NA, ("Charter One") a national association that regularly conducts business in Wayne County, MI.

5.      This litigation involves a certain parcel of real property with a common address of 8445 St. Mary's, Detroit, MI 48228, which is more particularly described as:

> Lots 283 and 284, Bassett and Smiths Tireman Avenue Subdivision, as recorded in Liber 44 Page 7 of Plats, Wayne County Records.

> Tax I.D. Number: Ward 22 Item 059373-4

> (hereinafter referred to as the "Subject Property")

6.      The Subject Property is situated in the City of Detroit, County of Wayne, State of Michigan and involves title to real property, giving this Court jurisdiction and proper venue pursuant to MCL 600.2932, MCL 600.605 and MCL 600.1605.

## COUNT I – QUIET TITLE TO PARTIALLY DISCHARGE MORTGAGE INTERESTS

7.      Plaintiff realleges and incorporates all preceding paragraphs as if specifically set forth below.

8.      On or about September 17, 2009, West Town conveyed the Subject Property to Robert Fred Hellner ("Hellner") via a Warranty Deed recorded September 30, 2009 in Liber 48145, Page 1199. A copy of the Warranty Deed is attached hereto as **Exhibit 1.**

9.      On or about September 18, 2009, Hellner granted a mortgage (the "Fifth Third Mortgage") on the Subject Property to Fifth Third Mortgage – MI, LLC in exchange for a loan in the amount of $87,250.00. The Fifth Third Mortgage was recorded September 30,

2009 in Liber 48145, Page 1200. A copy of the Fifth Third Mortgage is attached hereto as **Exhibit 2**.

10. The Fifth Third Mortgage was assigned to Plaintiff via an Assignment of Mortgage recorded July 3, 2012 in Liber 49932, Page 200. A copy of the Assignment of Mortgage is attached hereto as **Exhibit 3**.

11. On or about August 21, 2006, West Town granted an Open-End Mortgage (the "Charter One Mortgage") on approximately 18 parcels of property to Charter One, in exchange for a loan in the amount of $2,000,000.00. The Charter One Mortgage was recorded September 20, 2006 in Liber 45304, Page 81. A copy of the Charter One Mortgage is attached hereto as **Exhibit 4**.

12. The Subject Property was one of the parcels encumbered by the Charter One Mortgage.

13. Upon information and belief, the Charter One Mortgage was granted in conjunction with a Note, Revolving Credit Agreement, or Residential Construction Loan Agreement.

14. Upon information and belief, once a parcel encumbered in the Charter One Mortgage was sold by West Town, a partial discharge of the Charter One Mortgage (as to the sold parcel) was to be recorded.

15. A partial discharge of the Charter One Mortgage, as to the Subject Property, was never recorded despite the sale of the Subject Property from West Town to Hellner.

16. On or about October 13, 2006, West Town granted a mortgage on approximately 19 parcels of property to CoD, (the "CoD Mortgage"), in exchange for a loan in the amount of $1,500,000.00. The CoD Mortgage was recorded October 31, 2006 in Liber 45524, Page 660. A copy of the CoD Mortgage is attached hereto as **Exhibit 5**.

17. The Subject Property was one of the parcels encumbered by the CoD Mortgage.

18. Pursuant to the terms of the CoD Mortgage (See Exhibit 5, Page 16 ¶28), CoD agreed to, upon the sale of an encumbered parcel, execute a partial discharge of the CoD Mortgage as to the sold parcel.

19. A partial discharge of the CoD Mortgage was never recorded despite the sale of the Subject Property from West Town to Hellner.

20. The Fifth Third Mortgage was intended to be a first mortgage on the Subject Property.

21. The HUD-1 Settlement Statement, executed at the closing of the Fifth Third Mortgage, indicates that the Fifth Third Mortgage is not taken subject to any existing loans. A copy of the HUD-1 Settlement Statement is attached hereto as **Exhibit 6**.

22. The HUD-1 Settlement Statement further indicates that the Charter One Mortgage was paid off at the closing of the Fifth Third Mortgage. See Exhibit 6, Page 1, Line 504 and Page 3, "Payoff First Mortgage" information.

23. The Fifth Third Mortgage would not have been granted if it did not occupy first lien position.

24. Charter One's failure to record a partial discharge of the Charter One Mortgage is creating a cloud on Plaintiff's claim to the Subject Property as the Fifth Third Mortgage was intended as a mortgage of first lien priority.

25. CoD's failure to record a partial discharge of the CoD Mortgage is creating a cloud on Plaintiff's claim to the Subject Property as the Fifth Third Mortgage was intended as a mortgage of first lien priority.

26. MCL 600.2932 authorizes this Court to quiet title to Plaintiff.

4

## Count II - Declaratory Relief

27. Fifth Third realleges and incorporates all preceding paragraphs as if specifically set forth below.

28. Pursuant to MCR 2.605, and pursuant to the facts set forth above, Fifth Third requests that this Court declare the rights of the parties herein with respect to title to the Property and the lien rights in the Property.

WHEREFORE, Plaintiff Fifth Third Mortgage Company respectfully requests that this Court enter a judgment in its favor, making the following rulings:

A. That any interest that the City of Detroit has or may have had as to property commonly known as 8445 St. Mary's, Detroit, Michigan 48228, pursuant to the mortgage recorded October 31, 2006, in Liber 45524, page 660 is hereby terminated;

B. That the mortgage recorded October 31, 2006, in Liber 45524, page 660 is hereby partially discharged, terminated, and of no further force or effect as to the property commonly known as 8445 St. Mary's, Detroit, Michigan 48228;

C. That any interest that Charter One Bank, NA has or may have had as to property commonly known as 8445 St. Mary's, Detroit, Michigan 48228, pursuant to the mortgage recorded September 20, 2006, in Liber 45304, page 81 is hereby terminated;

D. That the mortgage recorded September 20, 2006, in Liber 45304, page 81 is hereby partially discharged, terminated, and of no further force or effect as to the property commonly known as 8445 St. Mary's, Detroit, Michigan 48228;

E. That the mortgage recorded September 30, 2009, in Liber 48145, Page 1200 is a lien of first priority as to the property commonly known as 8445 St. Mary's, Detroit, Michigan 48228;

F. That Fifth Third may record this judgment with the Wayne County Register of Deeds to place all interested parties on notice of the termination of the mortgage interests;

G. Plaintiff may be granted such other and further relief as the Court deems just and fair.

5

Respectfully submitted,

ORLANS ASSOCIATES, P.C.

Dated: June 13, 2013

_____

Christian R. Biasell (P66419)
Attorney for Plaintiff
1650 W. Big Beaver Road
Troy, MI 48084
(248)-502-1510

Exhibit 1

2009 SEP 29 AM 9:39

2009 SEP 30 AM 10:53

**STATE OF**
**MICHIGAN**
Wayne County
September 30, 2009 10:49:00 AM
Receipt # 312434

**REAL ESTATE**
**TRANSFER TAX**
$97.90 - CO
$667.50 - ST
Stamp # 153564

Bernard J. Youngblood
Wayne County Register of Deeds
September 30, 2009 10:49 AM
Liber 48145 Page 1199-1199
#209938790 WD FEE: $18.00

*LAMONT TITLE CORPORATION*

## WARRANTY DEED

*KNOW ALL MEN BY THESE PRESENTS:* That West Town Homes I, LLC, a Michigan limited liability company, whose address is 1245 Chicago Road, Troy, MI 48083, Conveys and Warrants Robert Fred Hellner, a single man, whose address is 8445 St. Marys, Detroit, MI 48228, the following described premises situated in the City of Detroit, County of Wayne and State of Michigan:

Lots 283 and 284, Bassett and Tireman Avenue Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records

Commonly known as: 8445 St. Marys      Tax Parcel ID: Ward 22 Item 059373-4

For the sum of ($89,000.00) Eighty Nine Thousand and 00/100 Dollars subject to the existing building and use restrictions, easements, and zoning ordinances of record. This deed is given in full satisfaction of a certain land contract of even date.

Dated: September 17, 2009

Signed

West Town Homes, I LLC, a Michigan
limited liability company
By: Community Planning Association,
a Michigan non-profit corporation,
Managing Member

By: Anthon Clark, Executive Director
Urban Entity Group IV LLC, a Michigan
limited liability company, Member

By: Barclae Homes I LLC, a Michigan
limited liability company, Managing
Member

By: Peter Barclae, Member

State of Michigan          )
                           ) SS
County of Wayne            )

The foregoing was acknowledged before me this 18th day of September, 2009, Anthon Clark, Executive Director of Community Planning Association, a Michigan non-profit corporation, Managing Member of West Town Homes I, LLC, a Michigan limited liability company and Peter Barclae, Member of Barclae Homes I, LLC, a MI limited liability company, Managing Member of Urban Entity group VI, LLC, a Michigan limited liability company, Member West Town Homes I, LLC, a Michigan limited liability company to me known to be the person described in and who executed the foregoing instrument and acknowledged that they executed the same as their free act and deed.

Christina Robinson
Notary Public, Wayne County, MI
My Commission Expires January 24, 2012
Acting in Wayne County

Notary Public
Wayne County, Michigan
My Commission Expires:

Drafted by: Michael Donovan @ LaMont Title Corporation, 333 W. Fort, Suite 1750, Detroit, MI 48226 at seller's direction.

When recorded return to LaMont Title Corporation, 333 W. Fort, Suite 1750, Detroit, MI 48226

| Recording Fee | State Transfer Tax | County Transfer Tax |
|---|---|---|
| | | |

*City Treasurer's Certificate*

County Treasurer's Certificate

Exhibit 2

2009 SEP 30 AM 10:54

Bernard J. Youngblood
Wayne County Register of Deeds
September 30, 2009  10:49 AM
Liber 48146 Page 1200-1209
#2009398701  MTG  FEE: $42.00

LAMONT TITLE CORPORATION

State of Michigan

Return To:
**Fifth Third Mortgage - MI, LLC**
**5001 Kingsley Drive, MD: 1MOCBQ**
**Cincinnati, OH  45227**

## MORTGAGE
0500485-30

FHA Case No.

THIS MORTGAGE ("Security Instrument") is given on **September 18, 2009**
The Mortgagor is **Robert Fred Hellner, an unmarried man**

, whose address is

**8445 St. Mary's Street, Detroit, MI  48228**

("Borrower"). This Security Instrument is given to **Fifth Third Mortgage - MI, LLC**

which is organized and existing under the laws of the **state of Michigan**                        , and
whose address is **1850 East Paris, MD ROP817, Grand Rapids, MI  49546**
                                                    ("Lender"). Borrower owes Lender the principal sum of
**Eighty Seven Thousand Two Hundred Fifty And Zero/100**
                                        Dollars (U.S. $**87,250.00**                         ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on
**October 01, 2039**          . This Security Instrument secures to Lender: (a) the repayment of
the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b)
the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this

FHA Michigan Mortgage - 4/96
-4D(MI) (0401)          Amended 2/98
Page 1 of 9                Initials: R.H.
VMP Mortgage Solutions (800)521-7291



L 48145 - P 1201

Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with power of sale, the following described property located in **Wayne** County, Michigan:
**See Attached**

Parcel ID Number: **Ward 22 Item 059373-4**
which has the address of **8445 St. Mary's Street**                    [Street]
**Detroit**                    [City], Michigan **48228**          [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.
1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Initials: _R.F.H_

-4D(MI) (9401)                    Page 2 of 9

L 48145 · P 1202

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4D(MI) (9401)                  Page 3 of 8                  Initials: *RJH*

L 48145 · P 1203

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

4D(MI) (0401)          Page 4 of 9          Initials: R.J.H.

L 46145 - P 1204

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

-4D(MI) (0401)

Page 6 of 9

Initials: _K H_

L 48145 · P 1205

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

4D(MI) (0401)                         Page 6 of 9                         Initials: P J H

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in paragraph 13. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 17 or applicable law.

18. Release. Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument without charge to Borrower.

19. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Growing Equity Rider
- [ ] Graduated Payment Rider
- [ ] Other [specify]

L 48145 - P 1207

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____                    _Robert Fred Hellner_____(Seal)
                                                        **Robert Fred Hellner**          -Borrower

_____                    _____(Seal)
                                                                                       -Borrower

_____(Seal)                     _____(Seal)
              -Borrower                                                             -Borrower

_____(Seal)                     _____(Seal)
              -Borrower                                                             -Borrower

_____(Seal)                     _____(Seal)
              -Borrower                                                             -Borrower

-4D(MI) (0401)                    Page 8 of 8

——————————[Space Below This Line For Notary Acknowledgment]——————————

STATE OF MICHIGAN, Wayne                               County ss:

    The foregoing instrument was acknowledged before me this September 18, 2009
by Robert Fred Hellner

My Commission Expires:

Christina Robinson
Notary Public, Wayne County, MI
My Commission Expires January 24, 2012
Acting in Wayne County

Notary Public,
Acting in the County of Wayne        County, Michigan

This instrument was prepared by:

Diana Harrell
Fifth Third Mortgage - MI, LLC
1850 East Paris, MD ROPS17
Grand Rapids, MI 49546

-4D(MI) (0401)                    Page 9 of 9             Initials: PFH

L 48,145 - P 1209

Exhibit A

**Legal Description**

Lots 283 and 284, Bassett and Smiths Tireman Avenue Subdivision, as recorded in Liber 44 Page 7 of Plats, Wayne County Records.

Commonly known as: 8445 St. Marys
Tax Parcel ID: Ward 22 Item 059373-4

Exhibit 3

Bernard J. Youngblood
Wayne County Register of Deeds
July 03, 2012  01:18 PM
Inst:201227556A   ASG   Pages:1
Liber:49932  Page:200

## ASSIGNMENT OF MORTGAGE

Hellner, Robert Fred                                      T&T # 407543F01

Fifth Third Mortgage - MI, LLC, 1850 E Paris Ave SE, MD ROPS17, Grand Rapids, MI 49546-6253, for value received, assigns and transfers to: **Fifth Third Mortgage Company, Foreclosure Department, 5001 Kingsley Dr Maildrop 1MOBBW, Cincinnati, OH 45227-1114**, all its right, title and interest in and to a certain real estate mortgage made by Robert Fred Hellner, an unmarried man, original mortgagor(s), to Fifth Third Mortgage - MI, LLC, Mortgagee, dated September 18, 2009, and recorded on September 30, 2009 in Liber 48145 on Page 1200, in Wayne County records, Michigan.

Dated: __6/28/12__

In the presence of:                          Signed:

_____Jeff Brennan_____                   Fifth Third Mortgage - MI, LLC

                                             By _____
                                                     **Brad Griffith**
                                             Its _____Officer_____

STATE OF __OH__          )
                         )SS.
COUNTY OF __Hamilton__   )

This instrument was acknowledged before me in __Hamilton__ County, State of __OH__, on this __28th__ day of __June__, 2012, by __Brad Griffith__, its __Officer__ of Fifth Third Mortgage - MI, LLC, for the corporation.

Ian Spence
Notary Public, State of Ohio
My Commission Expires 07-17-2016

_____Ian Spence_____, Notary public
State of __OH__, County of __Hamilton__
My commission expires __7/17/2016__
Acting in the County of __Hamilton__

When Recorded Return To:                     Drafted by: Marcy J. Ford
Trott & Trott, P.C.                          Trott & Trott, P.C.
31440 Northwestern Highway, Suite            31440 Northwestern Highway, Suite
200                                          200
Farmington Hills, MI 48334-2525              Farmington Hills, MI 48334-2525

City of Detroit:
Legal Description:
Lots 283 and 284, Bassetts and Smiths Tireman Avenue Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records

Tax Parcel No.

Property Address
8445 Saint Marys St
Detroit, MI 48228-1960

Exhibit 4

601 55818 8 SEP 20 '06

L.I-45304        Pa-81
006451410   9/20/2006   09:00AM
Bernard J. Youngblood
Wayne Co. Register of Deeds

## OPEN-END MORTGAGE

        This mortgage and security agreement ("Mortgage") is made this 21st day of August, 2006 between **WEST TOWN HOMES I, LLC**, a Michigan limited liability company, whose mailing address is 1245 Chicago Road, Troy, Michigan  48083  (hereinafter referred to as "Borrower") and **CHARTER ONE BANK, N.A.**, a national banking association organized and existing under the laws of the United States of America, whose address is 27777 Franklin Road, Southfield, Michigan 48034 (hereinafter, together with its successors and assigns, referred to as "Lender"). For and in consideration of the loan amount (the "Loan Amount") of  **TWO MILLION Dollars U.S. ($ 2,000,000.00)** paid to Borrower by Lender, the receipt of which is hereby acknowledged, Borrower does hereby give, grant, bargain, sell, convey, assign and confirm unto Lender forever, the real property(s) more particularly described on Exhibit "A" attached hereto and made a part hereof, together with all buildings, structures, fixtures and other improvements (the "Improvements") located thereon and all appurtenances thereto (collectively all of the foregoing together with the real property(s) is referred to herein as the "Premises"). All terms not defined herein shall have the same meaning as set forth in the Note, Revolving Credit Agreement, or Residential Construction Loan Agreement, whichever is applicable, executed in connection with the the revolving line of credit (the "Line"), copies of which Borrower hereby acknowledges receiving.

        TO HAVE AND TO HOLD the above granted and bargained Premises, together with all the rents, issues and profits thereof which shall hereafter arise or accrue therefrom unto Lender, FOREVER.

        Borrower does for itself and its successors and assigns covenant with Lender, that at and until the ensealing of these presents Borrower is well seized of the Premises as a good and indefeasible estate in fee simple and has good right to bargain, sell and assign the same in manner and form as above written; that the Premises are FREE AND CLEAR FROM ALL LIENS, CLOUDS AND ENCUMBRANCES whatsoever, except real estate taxes and assessments not yet due and payable, and that it will WARRANT AND DEFEND the Premises, and all Improvements as aforesaid, unto Lender, FOREVER, against all claims and demands whatsoever.

        THE CONDITIONS of this Mortgage are such that:

        WHEREAS, Borrower has executed and delivered to Lender its promissory note of even date herewith (the "Note") with funds being disbursed pursuant to individual Borrowing Agreements in the collective amount of the Line, bearing interest on the disbursed, outstanding principal balance at the fixed rate of interest set forth, and in the manner specified in the Note; and providing for monthly payments, with all new fundings pursuant to the Borrowing Agreements to conclude on May 1, 2007, if not extended by mutual consent of the parties hereto.

        WHEREAS, it is intended that this Mortgage may secure unpaid balances of loan advances or future advances made by the holder of this Mortgage at the request of Borrower or its successors in title to the extent that such unpaid balances or future advances in the aggregate and exclusive of interest accrued thereon, do not exceed the Loan Amount at any time. Part or all of the Loan Amount is to be used for the construction of improvements upon the Premises, and disbursement of the Loan Amount shall be in

LAMONT TITLE CORPORATION

accordance with the provisions of the revolving credit agreement executed by Borrower in favor of Lender (the "Credit Agreement"), such Credit Agreement being incorporated herein by reference; and

WHEREAS, this Mortgage secures any renewal, substitution or extension of the Note and any other indebtedness, note, account, debt, or obligation whatsoever of Borrower which Lender may hold or acquire during the term of this Mortgage, including specifically all future advances necessary to protect the Premises and any such other indebtedness, note, account, debt, obligation or future advance shall, from this day forward, be secured by this Mortgage equally with and have the same priority over the rights of all persons who subsequent to this date acquire any rights in or liens upon said Premises; and

WHEREAS, Borrower for itself, its successors and assigns, does hereby covenant, agree and stipulate to and with Lender, as follows:

1.  Borrower hereby grants to Lender a continuing security interest in the Premises to secure Borrower's payment of the indebtedness described in the Note, this Mortgage and the Credit Agreement (the "Indebtedness").

2.  Borrower shall keep the Premises free and clear of all other encumbrances, clouds and liens.

3.  Borrower shall protect and defend the title and possession of the Premises to the end that this Mortgage shall be and remain a first and prior lien on the Premises until the Indebtedness shall be fully paid.

4.  Borrower shall pay before they become delinquent, all taxes, assessments, rents, rates, impositions and other charges of whatsoever nature which are now or shall hereafter be levied or assessed or which may otherwise be or become a lien upon or against the Premises, or any part thereof. In order to ensure such payment, Borrower may be required at the option of Lender to make monthly deposits in escrow with Lender pursuant to paragraph 18 hereof.

5.  Borrower shall, until full payment of the Indebtedness, keep the Premises and all Improvements continuously insured as required and described in the Credit Agreement.

6.  Lender is authorized and empowered, at its sole option, to adjust or compromise any loss under any insurance policies on the Premises, to collect and receive the proceeds from any such policy or policies and, after deducting from said insurance proceeds any expenses incurred by it in the collection or handling of said proceeds, to apply the proceeds after deduction of such expenses, at its option, either as a credit on any portion of the Indebtedness, whether then matured or to mature in the future, or to the restoration of the Improvements. And it is further agreed that Lender shall not be held responsible for any failure to collect any insurance proceeds due under the terms of any policy, regardless of the cause of such failure. Lender is likewise hereby authorized and empowered, at its option, to collect and receive any and all awards in condemnation proceedings heretofore made or hereafter to be made to any owner of the Premises and after deducting from the proceeds of any such award, any expenses incurred by it in the collection or handling of said Awards, to apply the net proceeds as a credit to any portion of the Indebtedness, whether then matured or subsequently to mature; and Lender shall not be held responsible for any failure to collect any award or awards, regardless of the cause of such failure. Nothing herein shall in any way affect the lien of this Mortgage or the liability of Borrower for payment of the entire balance of the Indebtedness.

7.  Without limiting the generality of any provision herein or in any of the Loan Documents, as defined in the Revolving Credit Agreement and hereby amended so as to include any and all Borrowing Agreement(s), Borrower hereby represents and warrants to Lender that neither Borrower nor, to the best knowledge and belief of Borrower, any previous owner or user of the Premises has used, generated, stored or disposed of, discharged or emitted in, on, under, around or above the Premises any Hazardous Materials (as hereinafter defined), and that, to the best knowledge and belief of Borrower, the Premises is not currently in violation of any Environmental Laws (as hereinafter defined). Borrower shall cause all employees, agents, contractors and subcontractors of Borrower and any other persons present on or

2

occupying the Premises to, (i) keep and maintain the Premises, including, without limitation, the soil and ground water thereof, in compliance with all federal, state and local laws, ordinances and regulations relating to industrial hygiene or to the environmental conditions thereon (including but not limited to any Environmental Laws), and (ii) not cause or knowingly permit the Premises, including the soil and groundwater thereof, to be in violation of any such laws, ordinances or regulations. Neither Borrower nor any employees, agents, contractors or subcontractors of Borrower nor any other persons occupying or present on the Premises shall (A) use, generate, manufacture, store or dispose of, discharge or emit in, on, under or about the Premises or transport to or from the Premises any flammable explosives, radioactive materials, hazardous wastes, toxic substances or related materials, including, without limitation, any substances defined as or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials," or "toxic substances" or which are otherwise regulated under any Environmental Laws (collectively referred to hereinafter as "Hazardous Materials"), except as such may be required to be used, stored, or transported in connection with the permitted uses of the Premises and then only to the extent permitted by law after obtaining all necessary permits and licenses therefor; or (B) perform, cause to be performed or permit any fill activities or other acts which would in any way destroy, eliminate, alter, obstruct, interfere with, or otherwise affect any Wetlands, as defined in 33 C.F.R. '328.3 or in any comparable state and/or local law, statute, ordinance, rule or regulation ("Wetlands"), in violation of any Environmental Laws.

Borrower shall immediately advise Lender in writing of: (i) any notices (whether such notices are received from the Environmental Protection Agency, or any other federal, state or local governmental agency or regional office thereof) of any violation or potential violation which are received by Borrower or any Guarantor (as set forth in the Guaranty) of any applicable federal, state or local laws, ordinances, or regulations relating to any Hazardous Materials including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, the Hazardous Materials Transportation Act, the Resource Conservation and Recovery Act of 1976, the Federal Water Pollution Control Act, the Clean Water Act, the Clean Air Act, Emergency Planning and Community Right-to-Know Act, Solid Waste Disposal Act, Toxic Substances Control Act, and the Michigan Natural Resources and Environmental Protection Act, as each of said statutes have been or are hereafter amended, together with all rules and regulations promulgated by the Environmental Protection Agency, the Michigan Department of Natural Resources or the Michigan Department of Environmental Quality and all additional environmental laws, rules, and regulations in effect on this date hereof and as may become enacted and effective (collectively, "Environmental Laws"); (ii) any and all enforcement, cleanup, removal or other governmental or regulatory actions instituted, completed or threatened pursuant to any Environmental Laws; (iii) all claims made or threatened by any third party against Borrower or the Premises relating to damage, contribution, cost recovery compensation, loss or injury resulting from any Hazardous Materials or Wetlands (the matters set forth in clauses (i), (ii) and (iii) above are hereinafter referred to as "Environmental Claims"); and (iv) discovery by Borrower of any occurrence or condition on any real property adjoining or in the vicinity of the Premises that could cause the Premises or any part thereof to be classified as in violation of the provisions of any Environmental Laws, or to be otherwise subject to any restrictions on the ownership, occupancy, transferability or use of the Premises under any Environmental Laws.

Lender shall have the right but not the obligation to join and participate in, as a party if it so elects, any legal proceedings or actions initiated in connection with any Environmental Claims and to have the actual fees of its attorneys and Consultant (as hereinafter defined) in connection therewith paid by Borrower upon demand.

Borrower shall be solely responsible for and shall indemnify and hold harmless Lender, its directors, officers, employees, agents, successors and assigns from and against any loss, damage, cost, expense or liability, including but not limited to actual attorneys' fees, directly or indirectly arising out of or attributable to the use, generation, storage, release, threatened release, discharge, emission, disposal, or presence (whether prior to, on or after the date hereof) of Hazardous Materials or Wetlands in, on,

3

under or about the Premises (whether such use, generation, storage, release, threatened release, discharge, emission, disposal or presence is by or caused by Borrower or any of its employees, agents, contractors or subcontractors or any other person or entity), including, without limitation: (i) all consequential damages; (ii) the cost of any required or necessary repair, cleanup or detoxification of the Premises, including the soil and ground water thereof, and the preparation and implementation of any closure, remedial or other required plans; (iii) damage to any Wetlands or natural resources; (iv) any loss of value in the Premises as a result of such lien, such cleanup and/or removal costs; and (v) all actual costs and expenses incurred by Lender in connection with clauses (i), (ii),(iii) and (iv), including, but not limited to actual attorneys= fees and Consultant=s fees; provided, however, that nothing contained in this Paragraph shall be deemed to (x) create or give any rights to any person other than Lender and its successors and assigns, it being intended that there shall be no third party beneficiary of such provisions, or (y) preclude Borrower from seeking indemnification from, or otherwise proceeding against, any third party, including but not limited to, any tenant or predecessor in title to the Premises. Notwithstanding the foregoing, Borrower shall not be responsible for or be liable to indemnify or hold harmless Lender or any of its directors, officers, employees, agents, successors or assigns from and against any loss, damage, cost, expense or liability which arises out of the use, generation, storage, release, threatened release, discharge, emission, disposal or presence of any Hazardous Materials which are first introduced in, on, under or about the Premises by Lender subsequent to the earlier of (a) the date Lender has received possession and control of the Premises following the foreclosure of the Mortgage, or a deed in lieu of foreclosure of the Mortgage, or (b) the date on which a receiver selected by Lender has been appointed by a court of competent jurisdiction to operate the Premises and such receiver has taken possession and control of the Premises.

Any costs or expenses actually incurred by Lender for which Borrower is responsible or for which Borrower has indemnified Lender shall be paid to Lender on demand, and failing prompt reimbursement, shall be added to the Indebtedness secured by this Mortgage and earn interest at the Default Rate (as defined in the Note) until paid in full.

Borrower shall take any and all remedial action in response to the presence of any Hazardous Materials or Wetlands in, on, under, or about the Premises required pursuant to any settlement agreement, consent decree or other governmental proceeding or any Environmental Laws; provided, however, that Borrower shall take such additional steps as may be necessary to preserve the value of Lender's security under the Loan Documents. Remedial action shall be performed under the supervision of an environmental consultant ("Consultant") the identity of whom shall have been approved by Lender, and which shall be obligated to report the progress of remedial action to Lender, at Borrower=s expense, at such intervals as Lender requires.

Upon Lender's reasonable request, Borrower shall retain, at no cost to Lender, a licensed geologist, industrial hygienist and/or an environmental Consultant acceptable to Lender to conduct a Phase I, Phase II investigation and/or any additional investigation desired to complete a Baseline Environmental Report of the Premises for the presence of Hazardous Materials or Wetlands ("Environmental Audit"). The Environmental Audit shall be performed in a manner reasonably calculated to discover the presence of Hazardous Materials contamination or Wetlands; provided, however, such investigation shall be of a scope and intensity no greater than a Phase I, Phase II investigation and/or any additional investigation desired to complete a Baseline Environmental Report whichever is applicable, taking into consideration the known uses of the Premises and property in the vicinity of the Premises and any factors unique to the Premises. The Consultant shall concurrently deliver the results of any such investigation in writing directly to Borrower and Lender. Such results shall be kept confidential by both Borrower and Lender unless legally compelled or required to disclose such results, or disclosure is reasonably required in order to pursue rights or remedies provided under this Mortgage or any of the other Loan Documents or at law or in equity.

4

If Borrower fails to pay for or obtain an Environmental Audit as provided for herein, Lender may, but shall not be obligated to obtain the Environmental Audit, and either demand reimbursement from Borrower, or add the cost thereof to the Indebtedness secured by this Mortgage, in which case interest shall accrue on such sum at the Default Rate.

Borrower covenants to reasonably cooperate with the Consultant and to allow entry and reasonable access to all portions of the Premises for the purpose of the Consultant's investigation. Borrower covenants to comply, at its sole cost and expense, with all recommendations contained in the Environmental Audit required to bring the Premises into compliance with all Environmental Laws, including any recommendation for additional testing and studies to detect the quantity and types of Hazardous Materials or Wetlands present.

8.   Borrower shall: (a) abstain from the commission of waste upon the Premises and shall permit no waste thereon; (b) keep and maintain all the Improvements in sound condition and in good and substantial repair; and (c) do or permit no act whatsoever whereby the Premises shall become less valuable. Borrower shall not remove, demolish or detrimentally alter any Improvement or other property on the Premises, without the prior written consent of Lender.

9.   Lender, for the protection of its interest in the Premises, is hereby authorized and empowered to enter in and upon the Premises at any and all reasonable times for the purpose of inspecting the same and ascertaining the condition thereof and of the Improvements.

10.  Borrower, without the prior written consent of Lender, shall not create, effect, consent to, attempt, contract for, agree to make, suffer or permit any conveyance, sale, assignment, transfer, lien, pledge, encumbrance, mortgage, security interest or alienation of all or any portion of, or any interest in, the Premises or the Borrower, whether effected directly, indirectly, voluntarily, involuntarily, by operation of law or otherwise. If any of the foregoing shall occur without Lender's prior written consent, then the same shall immediately constitute an Event of Default (as hereinafter defined).

11.  If Borrower defaults in the prompt discharge of any liens, clouds or encumbrances, or in defending the title to the Premises, or in the payment of any taxes, assessments, impositions, rents, rates or charges as aforesaid, or in the procuring and maintaining of insurance, as above provided, or in making of proper repairs to or in the proper maintenance and preservation of the Premises, Lender may, at its election, without demand or notice, pay and discharge such liens, clouds or encumbrances, defend the title, pay such interest and penalties thereon, procure such insurance and pay the premiums therefor, make such repairs and maintain and preserve the Premises, and all expenditures therefor, including actual attorneys' fees, shall forthwith become due and payable to Lender with interest at the Default Rate stated in the Note, until paid and shall, with the interest as aforesaid, be added to the amount of the Note and shall be a further lien on the Premises and shall be secured by this Mortgage all without prejudice to the right of Lender to declare the entire principal balance and accrued interest thereon immediately due and payable by reason of Borrower's default and breach of covenants herein contained. Lender shall be the sole judge of the validity of any tax, assessment, charge, rate, rent, lien, cloud or encumbrance asserted against the Premises and payment thereof by Lender shall establish its right to recover the amount so paid with interest.

12.  Any one or more of the following events shall constitute an "Event of Default" under this Mortgage:

A.   Failure by Borrower to make payment of any sum of money: (i) due and payable under this Mortgage within ten (10) days after the date such payment is due as herein provided, or (ii) which becomes due and payable under the Note, or (iii) due and payable under any of the other Loan Documents on the date when the same is due and payable or within any applicable grace period.

B.   The institution of any proceeding or action (i) which adversely affects Lender's interest in the Premises, or (ii) impairs the Premises, or any rights or remedies

5

of Lender under the Note or this Mortgage including, but not limited to, any proceedings pursuant to the Federal Bankruptcy Code, as now existing or hereafter amended, or any statute which may hereafter be substituted in place of it, whether instituted by or against Borrower, or (iii) to appoint a receiver, trustee or liquidator for Borrower. Notwithstanding the foregoing, Borrower shall have sixty (60) days to obtain a vacation or stay of an involuntary bankruptcy or the commencement of an action filed by a third party to appoint a receiver.

C.     The insolvency or inability of Borrower, or any Guarantor (as hereinafter defined) of the Loan to pay any debts as and when they become due, or any assignment or composition for the benefit of creditors of Borrower, or any Guarantor of the Loan, made or entered into by any of them, provided, however, the Borrower shall not be in default if Borrower or any Guarantor fails to pay any third party debts as and when they become due which do not arise as a result of the insolvency or overall financial deterioration of the Borrower and/or any Guarantor.

D.     The presentation by Borrower to Lender of any document, certificate, or oral or written statement which contains a materially false representation made for the purpose of inducing Lender to make the Loan, advance any sums in connection with the Loan, or to otherwise act in reliance upon the document, certificate or statement.

E.     The passage of any statute, ordinance or other law for the purposes of (i) taxation of mortgages or debts secured thereby, (ii) changing the manner of collection of any tax, or (iii) imposing any tax, either directly or indirectly, on the Note or this Mortgage. If Borrower is permitted by the law to pay the whole of the tax, in addition to all other payments required under this Mortgage, and Borrower pays the tax upon it becoming due, then there shall be no Event of Default. Lender shall give written notice to Borrower of its intent to treat the passage of any such statute, ordinance or law as an Event of Default. The period within which Borrower may cure such an Event of Default shall be sixty (60) calendar days from the effective date of the notice.

F.     The abandonment or vacation of the Premises such that cessation of construction continues for a period of thirty (30) consecutive days, unless such cessation is not attributable to Borrower or Borrower's subcontractors or materialmen.

G.     If any instrument given by Borrower or on Borrower's behalf to Lender at the closing of the Loan is either returned for insufficient funds or is otherwise not honored for any reason.

H.     Any sale or transfer of the Premises in violation of Paragraph 10 of this Mortgage.

I.     Default shall be made in the due observance or performance of any of the other covenants, agreements or conditions required to be kept, performed or observed by Borrower under this Mortgage and all other Loan Documents, and such default is not cured within thirty (30) days after written notice thereof has been delivered to Borrower by Lender; provided, however if such default cannot reasonably be cured within the thirty (30) day period, and Borrower

6

promptly commences such cure within the thirty (30) day period, then within such additional period during which Borrower diligently pursues and prosecutes such cure to completion and so long as the value of the Premises is not impaired.

    J.         Default shall be made in the due observance or performance of any of the covenants, agreements or conditions required to be kept, performed or observed by Borrower or any other party under the Note, or any of the other Loan Documents, and such default is not cured within the applicable grace period, if any, expressly provided for therein.

    K.         Any violation of the representations and warranties or the filing of formal charges or commencement of proceedings as contemplated by Paragraph 24 of this Mortgage.

13. Notwithstanding any provision in the Note, in this Mortgage, or the Credit Agreement to the contrary, upon the occurrence of any Event of Default as defined in paragraph 12 hereof, the entire unpaid principal balance disbursed pursuant to the Note or any and all Borrowing Agreement(s), or other Indebtedness, together with the interest accrued thereon, and together with all other sums or amounts payable to Lender shall, at the election of Lender, become immediately due and payable, and shall bear interest at the Default Rate, as stated in the Note, until paid, and this Mortgage shall become subject to foreclosure.

Lender shall have the right to commence foreclosure proceedings against the Premises, as an entirety (including personal property) or otherwise as Lender may determine, through judicial proceedings, pursuant to Chapter 31 of the Revised Judicature Act of 1961, as now existing or amended, or any other statute which may hereafter be substituted for it, or by advertisement, pursuant to Chapter 32 of the Revised Judicature Act of 1961, as now existing or amended, or any other statute which may hereafter be substituted for it, at the option of the Lender, pursuant to the aforementioned statutes and may sell the Premises or cause the same to be sold at public sale and convey the same to the purchaser, in accordance with such statutes, in a single parcel or in several parcels at the option of Lender. Lender is hereby granted the power to sell any or all of the Premises at public sale as provided herein.

Lender may, at its sole option and without costs, exercise any and all rights and remedies afforded to Lender by law or equity, in addition to any and all rights and remedies afforded to Lender under the Note, this Mortgage or any of the other Loan Documents. All of the aforesaid rights and remedies shall be considered cumulative and the exercise of any one of these rights or remedies shall not preclude Lender from exercising any of its other rights or remedies.

WARNING. THIS MORTGAGE CONTAINS A POWER OF SALE PURSUANT TO MCLA SECTION 600.3201 ET. SEQ. AS NOW EXISTING OR AMENDED, OR ANY OTHER STATUTE WHICH MAY BE SUBSTITUTED FOR IT AND, UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, MAY BE FORECLOSED BY ADVERTISEMENT. IN FORECLOSURE BY ADVERTISEMENT, NO HEARING IS INVOLVED AND THE ONLY NOTICE REQUIRED IS TO PUBLISH NOTICE IN A LOCAL NEWSPAPER AND TO POST A COPY OF THE NOTICE ON THE PREMISES. IF THIS MORTGAGE IS FORECLOSED BY ADVERTISEMENT, BORROWER HEREBY VOLUNTARILY INTELLIGENTLY AND KNOWINGLY WAIVES ALL RIGHTS UNDER THE CONSTITUTION AND LAWS OF THE STATE OF MICHIGAN AND CONSTITUTION AND LAWS OF THE UNITED STATES, TO ALL NOTICE AND A HEARING IN CONNECTION WITH THE ABOVE MENTIONED FORECLOSURE BY ADVERTISEMENT, EXCEPT AS SET FORTH IN THE MICHIGAN STATUTE PROVIDING FOR FORECLOSURE BY ADVERTISEMENT.

14. All the rents, issues and profits of the Premises are hereby specifically mortgaged, granted, pledged and assigned to Lender as further security for the payment of the Indebtedness hereby secured and Lender is hereby empowered, immediately upon and during the continuance of any Event of Default, neglect, breach or event described herein, to enter upon and take complete possession of and exercise full

7

management and control of and over the Premises and every part thereof and to rent the same on such terms as to Lender may seem advisable and to collect and receive all the rents, issues and profits thereof, whether overdue, due or to become due, and to apply the same, after payment of its expenses in managing the property and in collecting and handling said funds, on needful repairs, taxes, assessments, governmental liens and insurance premiums, and on account of any portion of the Indebtedness, all without first applying for a receiver, and Lender shall be accountable only to the extent that such monies or income are actually collected and applied, and Borrower agrees, if it is in possession or occupancy of any part of the Premises that such occupancy shall be as a tenant from month to month, and in default of such payment Borrower may be dispossessed by summary proceedings. Further, Lender may give notice of default and of its actual exercise of the above granted powers and rights by letter addressed to the Borrower at its last known address. And it is further expressly understood and agreed that the exercise of the above consent, authority and power shall in no manner affect, impair or restrict the right of Lender to foreclose this Mortgage in the Event of Default and shall not in any manner whatsoever delay or retard such foreclosure if the said Lender elects to commence such foreclosure proceedings.

15. Lender shall have the immediate right to collect and receive, personally or through a receiver, so long as such Event of Default shall exist and during the pendency of any foreclosure proceedings and during any redemption period, as the same becomes due, any and all unearned insurance premiums or refunds of insurance premiums, due or to become due, and all proceeds and other benefits to be received under insurance policies of every nature effecting or covering the Premises, and any and all refunds of taxes, assessments and other charges heretofore or hereafter paid on or with respect to the Premises, together with all Rents and Assurances, all of which having been hereby assigned to Lender. Borrower agrees to consent to a receiver if this is believed necessary or desireable by Lender to enforce its right to collect and receive the Rents, Assurances and other sums described in the preceding sentence. Lender shall be entitled to all of the rights and benefits conferred by Act No. 210 of the Michigan Public Acts of 1953, as amended by Act No. 151 of the Michigan Public Acts of 1966 (MCLA §554.231 et seq.,) In addition, Lender shall have the right, but shall not be obligated, without notice or demand, to enter immediately upon and take possession of the Premises, together with all documents, books, records, papers and accounts of Borrower relating to the Premises or any portion thereof without further consent or assignment by Borrower and shall have the right to cause to be conducted environmental investigations and analyses, to operate, manage, lease and control the Premises and conduct the business thereof, if any, either personally or by its agents, and terminate any management agreements, contracts, agents or managers responsible for the management of the Premises, and with full power to use such measures, legal or equitable, as Lender may deem proper or necessary to enforce the payment of Rents and Assurances.

16. In any suit which Lender may, in its opinion, be obliged to defend in order to protect the unimpaired priority of the lien hereof, Borrower agrees to pay the actual sum as attorneys' fees and all costs and expenses in connection with such suit, and also the actual cost of extending the title evidence, together with interest at the Default Rate, which sums shall be added to the amount of the Note and secured hereby.

17. Lender shall have a lien by virtue of this Mortgage on the Premises to secure any and all other indebtedness, notes, accounts, debts, obligation, advances, monies, or liabilities now or hereafter owing by Borrower to Lender, and for all future advances necessary to protect the Premises and for all advances made at the option of the parties up to the Loan Amount, Lender shall be secured by the lien of this Mortgage and shall have the priority over the rights of all persons who subsequent to the recording of this Mortgage acquire any rights in or liens upon the Premises.

18. A. Provided no default exists in the covenants, terms and conditions of any of the Loan Documents, Lender will permit Borrower to pay or cause to be paid all real estate taxes and assessments on the Premises and all insurance premiums for comprehensive general public liability, property damage and indemnity insurance covering the Premises as the same shall become due and before any interest or penalties accrue. Furthermore, Borrower shall submit evidence of payment of the same at least five (5) days prior to the date such amounts become delinquent. Upon the default in the payment of such taxes or insurance, then Lender shall be permitted to pay the taxes and/or insurance to protect the Premises and charge the same to the Borrower as additional Indebtedness secured by the Mortgage. Upon an Event of Default, Lender shall reserve the right to require Borrower to pay to Lender in addition to the monthly

8

J.1-45304          Pg-89

installment of interest a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments which may attain priority over this Mortgage plus one-twelfth of yearly premium installments for the aforementioned insurance, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. The Funds shall be held by Lender, who shall apply the Funds to pay said taxes, assessments and insurance premiums. Lender shall make no charge for so holding and applying the Funds or verifying and compiling said assessments and bills. Lender shall not be required to pay Borrower any interest on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the Indebtedness secured by this Mortgage. Funds paid hereunder may be commingled with other funds of the Lender.

B. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments and insurance premiums as they fall due, Borrower shall pay to Lender the amount of any such deficiency within thirty (30) days after notice from Lender to Borrower requesting payment thereof.

C. Upon the occurrence of an Event of Default hereunder, Lender may apply, in any amount and in any order as Lender shall determine, any Funds held by Lender (i) to pay taxes, assessments, and insurance premiums which are now or will hereafter become due, or (ii) as a credit against the Indebtedness secured by this Mortgage.

D. Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender.

19. The failure of Borrower to pay any taxes or assessments assessed against the Premises, or any installment thereof, or any premiums payable with respect to any insurance policy covering the Premises, shall constitute waste as provided by Act No. 236 of the Michigan Public Acts of 1961 (MCLA §600.2927) as now existing or amended, or any other statute which hereafter may be substituted for it and shall entitle Lender to exercise all remedies afforded by such Act. Borrower further hereby consents to the appointment of a receiver under such statute should Lender elect to seek such relief thereunder.

20. This Mortgage is granted in connection with a loan made other than for personal, family or household purposes.

21. Borrower will execute, acknowledge and deliver from time to time upon request of Lender, all further deeds, conveyances, security agreements, assignments of leases now existing or hereafter entered into and covering all or any portion of the Premises, transfers, and such other assurances as Lender will reasonably require for the better assuring, conveying and mortgaging unto Lender all of the property hereby mortgaged, or so intended to be, and all after acquired property located or placed on the Premises in order to fully carry out the purposes and intent of this Mortgage.

22. Borrower, without notice, and without regard to any consideration paid therefor, and notwithstanding the existence at the time of any inferior liens thereon, shall have the right to release (i) any part of the security for the Indebtedness secured hereby, including, without limitation, the lien and security interest created pursuant to this Mortgage in and to any of the Premises, or (ii) any person liable for any Indebtedness secured hereby, without affecting the priority of any part of the security and the obligations of any person not expressly released, and shall have the right to agree with any party remaining liable for such Indebtedness or having any interest therein to extend the time for payment of any part or all of the Indebtedness secured hereby. Such agreement shall not in any way release or impair the lien hereof, but shall extend the lien hereof as against all parties having any interest in such security.

23. The Premises are all located in the State of Michigan, and this Mortgage and the rights and indebtedness secured hereby shall, without regard to the place of contract or payment, be construed and enforced according to the laws of the State of Michigan. Nothing herein contained nor any transaction related hereto shall be construed or so operate as to require Borrower to do any act contrary to law, and

9

if any clauses or provisions herein contained operate or would prospectively operate to invalidate this Mortgage, in whole or in part, or any of the Borrower's obligations hereunder, such clauses and provisions only shall be held void and of no force or effect as though not herein contained, and the remainder of this Mortgage shall remain operative and in full force and effect. All of the obligations, rights and covenants herein contained shall run with the land, and shall bind and inure to the benefit of Borrower, its successors and permitted assigns, and Lender and any subsequent holder of the Note.

24. Borrower hereby further expressly represents and warrants to Lender that to the best of Borrower's knowledge there has not been committed by Borrower or any other person involved with the Premises or the Borrower any act or omission affording the federal government or any state or local government the right and/or remedy of forfeiture as against the Premises or any part thereof or any monies paid in performance of its Obligations under the Note or under any of the other Loan Documents, and Borrower hereby covenants and agrees not to commit, permit or suffer to exist any act or omission affording such right and/or remedy of forfeiture. In furtherance thereof, Borrower hereby indemnifies Lender and agrees to defend and hold Lender harmless from and against any loss, damage, cost or other injury, including without limitation, actual attorneys' fees and expenses, to the fullest extent not prohibited by applicable law, and all other costs and expenses incurred by Lender in preserving its lien, security interest and other rights and interests in the Premises and any additional collateral under any of the Loan Documents in any proceeding or other governmental action asserting forfeiture thereof, by reason of, or in any manner resulting from, the breach of the covenants and agreements or the warranties and representations set forth in the preceding sentence. Without limiting the generality of the foregoing, the filing of formal charges or the commencement of proceedings against Borrower, Lender, any Guarantor, any additional collateral under any of the Loan Documents or all or any part of the Premises under any federal, state or local laws, ordinances or regulations in respect of which forfeiture of the Premises or any part thereof or of any monies paid in performance of Borrower's Obligations under the Loan Documents is a potential result shall, at the election of the Lender in its absolute discretion, constitute an Event of Default hereunder without notice or opportunity to cure.

25. Any failure to exercise any right hereunder shall not constitute or be construed as a waiver of that right at any future time.

26. BORROWER ACKNOWLEDGES THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL RIGHT, BUT THAT THE SAME MAY BE WAIVED. BORROWER AFTER CONSULTATION (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS CHOICE, BORROWER HEREBY, AND LENDER BY ITS ACCEPTANCE HEREOF, EACH WAIVES THE RIGHT OF A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM OR ANY OTHER LITIGATION PROCEEDINGS BASED UPON OR ARISING OUT OF THIS MORTGAGE OR ANY OF THE OTHER LOAN DOCUMENTS, IT BEING ACKNOWLEDGED AND AGREED THAT ANY ISSUES OF FACT IN ANY SUCH ACTION ARE MORE APPROPRIATELY DETERMINED BY THE COURTS. THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. NO PARTY HAS IN ANY WAY AGREED WITH OR REPRESENTED TO ANY OTHER PARTY THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES. FURTHER, BORROWER HEREBY CONSENTS AND SUBJECTS ITSELF TO THE JURISDICTION OF THE COURTS OF THE STATE OF MICHIGAN AND, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, TO THE VENUE OF SUCH COURTS IN THE COUNTY IN WHICH THE PREMISES IS LOCATED.

NOW, THEREFORE, if Borrower shall well and truly pay the aforesaid Note according to the tenor thereof, together with all interest, taxes, assessments, and all other sums, amounts or charges which may be payable to Lender by reason of the Note or this Mortgage, and shall fully and punctually keep and perform the terms, covenants, agreements, provisions, and conditions herein to be kept and performed by Borrower, then this Mortgage shall be void; otherwise it shall be and remain in full force and effect.

10

Li-45504    Pa-91

All grants, covenants, agreements, terms, provisions and conditions herein contained shall inure to the benefit of, apply and extend to, and bind the heirs, executors, administrators, successors and assigns of Borrower and the successors and assigns of Lender, and are intended and shall be held to be real covenants running with the land.

When such interpretation is appropriate, any word used herein, denoting gender shall include all persons, natural or artificial, and words used in the plural shall include and apply to the singular.

This Mortgage has been signed and delivered by Borrower to Lender on the date given above.

BORROWER:
West Town Homes I, LLC, a Michigan limited liability company

By: Urban Entity Group VI, a Michigan limited liability company

Its: Member

    By: Barclae Homes I, LLC, a Michigan limited liability company
    Its: Managing Member
    By: _____
    Peter L. Barclae, Managing Member

By: Community Planning Association, a Michigan corporation

Its: Member

By: _____
Stephanie L. Madden, Executive Director

STATE OF MICHIGAN   )
                     ) SS:
COUNTY OF OAKLAND   )

The foregoing instrument was acknowledged before me this 21 day of August, 2006, by Peter Barclae, Managing Member of Barclae Homes I, LLC, Managing Member of Urban Entity Group VI, Member of West Town Homes I, LLC, a Michigan limited liability company on behalf of the limited liability company.

_____
Notary Public

SUZANNE RUTKOWSKI
Notary Public, State of MI
County of Macomb
My Commission Expires 05-28-2012
Acting in the County of OAKLAND

11

L1-45304        Pa-92

*SUZANNE RUTKOWSKI*
*Notary Public, State of MI*
*County of Macomb*
*My Commission Expires 05-28-2012*
*Acting in the County of OAKLAND*

STATE OF MICHIGAN        )
                                          ) SS:
COUNTY OF OAKLAND    )

    The foregoing instrument was acknowledged before me this 21 day of _March_, 2006, by Stephanie L. Madden, Executive Director of Community Planning Association, Member of West Town Homes I, LLC, a Michigan limited liability company on behalf of the limited liability company.

Notary Public

This instrument prepared by:
Kelly M. Bell (P 38681)
The Bell Law Firm, PLC
1250 W. 14 Mile Road
Troy, Michigan 48083

When recorded, return to:
Charter One Bank, N.A.
1250 W. 14 Mile Road
Troy, Michigan 48083
Attn: Commercial Real Estate Dept.

When recorded return to:
LaMont Title Corporation
500 Griswold Street, Suite #2100
Detroit, Michigan 48226

EXHIBIT "A" TO THE MORTGAGE AND SECURITY AGREEMENT
BETWEEN WEST TOWN HOMES I, LLC
and CHARTER ONE BANK, N.A.
DATED  _8-21-_  , 2006



13

11-45304     Pn-94

Land in the City of Detroit, County of Wayne, State of Michigan being more particularly described as:

Parcel 3
Lots 334 and 335, Gaynor Park Subdivision No. 1, of Lot 8, 9, 10 and 11 of Demick's Subdivision of the Northeast 1/4 of Southeast 1/4 and North 1/2 of Southeast 1/4 and North 1/2 of Southeast of Section 1, Town 2 South, Range 10 East, as recorded in Liber 46 Page 64 of Plats, Wayne County Records.

Commonly known as: 15733 Tireman and 15735 Tireman
Tax Parcel ID: Ward 22 Item 001102 and Ward 22 Item 001103

Parcel 4
Lots 378 and 379, Gaynor Park Subdivision No. 1, of Lot 8, 9, 10 and 11 of Demick's Subdivision of the Northeast 1/4 of Southeast 1/4 and North 1/2 of Southeast 1/4 and North 1/2 of Southeast of Section 1, Town 2 South, Range 10 East, as recorded in Liber 46 Page 64 of Plats, Wayne County Records.

Commonly known as: 15801 Tireman and 15803 Tireman
Tax Parcel ID: Ward 22 Item 001108 and Ward 22 Item 001109

Parcel 5
Lots 382 & 383, Gaynor Park Subdivision No. 1, of Lot 8, 9, 10 and 11 of Demick's Subdivision of the Northeast 1/4 of Southeast 1/4 and North 1/2 of Southeast 1/4 and North 1/2 of Southeast of Section 1, Town 2 South, Range 10 East, as recorded in Liber 46 Page 64 of Plats, Wayne County Records.

Commonly known as: 15819 Tireman and 15823 Tireman
Tax Parcel ID:  Ward 22 Item 001112 and Ward 22 Item 001113

Parcel 8
Lots 21 and 22, Bassett and Smiths Tireman Avenue Subdivision, of part of West 1/2 of Northwest 1/4 of Northeast 1/4 and part of the Southwest 1/4 of Northeast 1/4 of Section 1, Town 2 South, Range 10 East, as recorded in Liber 44 Page 7 of Plats, Wayne County Records.

Commonly known as:  16128 Tireman
Tax Parcel ID:  Ward 22 Item 001820-1

Parcel 9
Lots 23 and 24, Bassett and Smiths Tireman Avenue Subdivision, of part of West 1/2 of Northwest 1/4 of Northeast 1/4 and part of the Southwest 1/4 of Northeast 1/4 of Section 1, Town 2 South, Range 10 East, as recorded in Liber 44 Page 7 of Plats, Wayne County Records.

Commonly known as:  16132 Tireman and 16138 Tireman
Tax Parcel ID:  Ward 22 Item 001818 and Ward 22 Item 001819

Parcel 11
Lots 414 and the South 1/2 of Lot 415, Bassett and Smiths Tireman Avenue Subdivision, of part of West 1/2 of Northwest 1/4 of Northeast 1/4 and part of the Southwest 1/4 of Northeast 1/4 of Section 1, Town 2 South, Range 10 East, as recorded in Liber 44 Page 7 of Plats, Wayne County Records.

Commonly known as: 8242 Mansfield
Tax Parcel ID:  Ward 22 Item 057006

14

**Parcel 12**
Lot 416 and the North 1/2 of Lot 415, Bassett and Smiths Tireman Avenue Subdivision, of part of West 1/2 of Northwest 1/4 of Northeast 1/4 and part of the Southwest 1/4 of Northeast 1/4 of Section 1, Town 2 South, Range 10 East, as recorded in Liber 44 Page 7 of Plats, Wayne County Records.

Commonly known as: 8242 Mansfield and 8248 Mansfield
Tax Parcel ID: Ward 22 Item 057006 and Ward 22 Item 057007

**Parcel 13**
Lot 330 and the South 1/2 of Lot 331, Bassett and Smiths Tireman Avenue Subdivision, of part of West 1/2 of Northwest 1/4 of Northeast 1/4 and part of the Southwest 1/4 of Northeast 1/4 of Section 1, Town 2 South, Range 10 East, as recorded in Liber 44 Page 7 of Plats, Wayne County Records.

Commonly known as: 8054 St. Marys and 8060 St. Marys
Tax Parcel ID: Ward 22 Item 058314 and Ward 22 Item 058315

**Parcel 14**
Lot 332 and the North 1/2 of Lot 331, Bassett & Smiths Tireman Avenue Subdivision, of part of West 1/2 of Northwest 1/4 of Northeast 1/4 and part of the Southwest 1/4 of Northeast 1/4 of Section 1, Town 2 South, Range 10 East, as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 8060 St. Marys and 8068 St. Marys
Tax Parcel ID: Ward 22 Item 058315 and Ward 22 Item 058316

**Parcel 15**
Lots 283 and 284, Bassett and Smiths Tireman Avenue Subdivision, of part of West 1/2 of Northwest 1/4 of Northeast 1/4 and part of the Southwest 1/4 of Northeast 1/4 of Section 1, Town 2 South, Range 10 East, as recorded in Liber 44 Page 7 of Plats, Wayne County Records.

Commonly known as: 8445 St. Marys and 8451 St. Marys
Tax Parcel ID: Ward 22 Item 059374 and Ward 22 Item 059373

**Parcel 17**
The South 20 feet of Lot 150, Lot 151 and the North 2.5 feet of Lot 152, Bassett and Smiths Tireman Avenue Subdivision, of part of West 1/2 of Northwest 1/4 of Northeast 1/4 and part of the Southwest 1/4 of Northeast 1/4 of Section 1, Town 2 South, Range 10 East, as recorded in Liber 44 Page 7 of Plats, Wayne County Records.

Commonly known as: 8427 Mettetal and 8435 Mettetal
Tax Parcel ID: Ward 22 Item 060793 and Ward 22 Item 060794

**Parcel 18**
Lot 233, and the South 1/2 of Lot 234, Bassett and Smiths Tireman Avenue Subdivision, of part of West 1/2 of Northwest 1/4 of Northeast 1/4 and part of the Southwest 1/4 of Northeast 1/4 of Section 1, Town 2 South, Range 10 East, as recorded in Liber 44 Page 7 of Plats, Wayne County Records.

Commonly known as: 8448 Mettetal and 8454 Mettetal
Tax Parcel ID: Ward 22 Item 059673  Ward 22 Item 059674

15

Li-45304    Pg-96

Parcel 19
Lot 235 and the North 1/2 of Lot 234, Bassett and Smiths Tireman Avenue Subdivision, of part of West 1/2 of Northwest 1/4 of Northeast 1/4 and part of the Southwest 1/4 of Northeast 1/4 of Section 1, Town 2 South, Range 10 East, as recorded in Liber 44 Page 7 of Plats, Wayne County Records.

Commonly known as:  8454 Mettetal and 8460 Mettetal
Tax Parcel ID:  Ward 22 Item 059674 and  Ward 22 Item 059675

Parcel 20
Lot 236, and the South 1/2 of Lot 237, Bassett and Smiths Tireman Avenue Subdivision, of part of West 1/2 of Northwest 1/4 of Northeast 1/4 and part of the Southwest 1/4 of Northeast 1/4 of Section 1, Town 2 South, Range 10 East, as recorded in Liber 44 Page 7 of Plats, Wayne County Records.

Commonly known as:  8466 Mettetal and 8472 Mettetal
Tax Parcel ID:  Ward 22 Item 059676 and Ward 22 Item 059677

Parcel 21
Lot 238, and the North 1/2 of Lot 237, Bassett and Smiths Tireman Avenue Subdivision, of part of West 1/2 of Northwest 1/4 of Northeast 1/4 and part of the Southwest 1/4 of Northeast 1/4 of Section 1, Town 2 South, Range 10 East, as recorded in Liber 44 Page 7 of Plats, Wayne County Records.

Commonly known as:  8472 Mettetal and 8478 Mettetal
Tax Parcel ID:  Ward 22 Item 059677 and Ward 22 Item 059678

Parcel 22
The North 5 feet of Lot 142, Lot 141 and the South 12.5 feet of Lot 140, Bassett and Smiths Tireman Avenue Subdivision, of part of West 1/2 of Northwest 1/4 of Northeast 1/4 and part of the Southwest 1/4 of Northeast 1/4 of Section 1, Town 2 South, Range 10 East, as recorded in Liber 44 Page 7 of Plats, Wayne County Records.

Commonly known as:  8491 Mettetal and 8509 Mettetal
Tax Parcel ID:  Ward 22 Item 060783-4 and Ward 22 Item 060782

Parcel 23
Lot 139 and the South 17.5 feet of Lot 140, Bassett and Smiths Tireman Avenue Subdivision, of part of West 1/2 of Northwest 1/4 of Northeast 1/4 and part of the Southwest 1/4 of Northeast 1/4 of Section 1, Town 2 South, Range 10 East, as recorded in Liber 44 Page 7 of Plats, Wayne County Records.

Commonly known as:  8509 Mettetal and  8511 Mettetal
Tax Parcel ID:  Ward 22 Item 060782  Ward 22 Item 060781

Parcel 24
Lot 99 and the South 10 feet of Lot 100, Bassett and Smiths Tireman Avenue Subdivision, of part of West 1/2 of Northwest 1/4 of Northeast 1/4 and part of the Southwest 1/4 of Northeast 1/4 of Section 1, Town 2 South, Range 10 East, as recorded in Liber 44 Page 7 of Plats, Wayne County Records.

Commonly known as:  8464 Asbury Park
Tax Parcel ID:  Ward 22 Item 061078-9

16

Exhibit 5

6 0 1 7 9 6 4 1 OCT 31 '06

LI-45524       Pg-660
206522885  10/31/2006  09:00AM
Bernard J. Younsblood
Wayne Co. Resister of Deeds

## MORTGAGE

This Mortgage (the "Mortgage"), made this 31st day of October, 2006, between West Town Homes I, LLC, a Michigan limited liability company, with offices located at 243 West Congress, Suite 350, Detroit, Michigan 48226 ("Mortgagor"), and the City of Detroit, a Michigan municipal corporation, acting by and through its Planning and Development Department located at 65 Cadillac Square, 19th Floor, Detroit, Michigan 48226 ("Mortgagee").

## WITNESSETH:

That Mortgagor, to secure the payment of a loan in the principal sum of One Million Five Hundred Thousand and 00/100 ($1,500,000.00) Dollars, receipt of which is hereby acknowledged by Mortgagor, with no interest thereon, which shall be payable according to the terms of a Promissory Note, bearing even date herewith (hereafter called the "Note"), executed by the Mortgagor in favor of the Mortgagee, the proceeds of which are to be used to construct twenty (20) single family homes (hereinafter referred to as the "Project") for purposes of resale by the Mortgagor to qualified Home Buyers, all in accordance with the terms of a development and loan agreement of even date herewith entered into between the Mortgagor and Mortgagee (hereinafter referred to as the "Loan Agreement"), and to further secure the performance of the covenants and conditions hereinafter contained and in the Loan Agreement and the payment of any and all sums, indebtedness and liabilities of any and every kind to be due from the Mortgagor to the Mortgagee, its successors and assigns, under any other loan documents, agreements or instruments between Mortgagor and Mortgagee given in connection with or related to the Mortgage, the Loan Agreement or the Note, the Mortgagor hereby grants, conveys, mortgages and warrants unto Mortgagee its successors and assigns, the premises situated in the City of Detroit, County of Wayne, State of Michigan and described as follows (hereinafter called the "Premises" or "Mortgaged Property"):

SEE EXHIBIT A, ATTACHED HERETO

Together with all right, title and interest of Mortgagor in and to all leases or subleases covering the Premises or any portion thereof now or hereafter existing or entered into, and all right,

1974112.0579,400331v2.dat

Mtg 81 GR 25pgs Sul

LI-45524    Pa-661

title and interest of Mortgagor thereunder, including all cash or security deposits, advance rentals, rentals, and deposits or payments of a similar nature.

Together with all interests, estate of or other claims, both at law and in equity which Mortgagor now has or may hereafter acquire in the Premises.

Together with all easements, rights-of-way and rights used in connection therewith or as a means of access thereto and all tenements, hereditaments and appurtenances thereof and thereto, and all water rights.

Together with any and all improvements now or hereafter erected thereon, including, but not limited to, the fixtures, attachments, appliances, equipment, machinery, and other articles attached to the Premises pursuant to the Project Plans (sometimes hereinafter referred to as the "Improvements").

Together with all building material and equipment owned by the Mortgagor, now located on the Premises, or to be hereafter acquired, and intended to be incorporated into the buildings improvements or facilities to be constructed thereon.

Together with all right, title and interest, if any, of the Mortgagor in and to any streets and roads abutting said Premises to the centerlines thereof and to any strips or gorges of land therein.

Together with all fixtures, machinery, equipment and articles of personal property now or hereafter owned by Mortgagor and now or hereafter affixed to, placed upon or used in connection with the operation of the Premises (sometimes hereinafter referred to as the "Personal Property") in which Mortgagor hereby grants a security interest to Mortgagee.

This Mortgage constitutes both a real property mortgage and a security agreement within the meaning of the Uniform Commercial Code, and the Premises includes both real and Personal Property. Mortgagor hereby grants a security interest in the Personal Property to Mortgagee. Said Personal Property shall include, without limitation, appliances, machinery, furniture, equipment and other property owned or leased by Mortgagor in the Premises. By its execution of this Mortgage, Mortgagor authorizes and directs Mortgagee to prepare and file, without any further action on the part of Mortgagor, any and all financing statements, continuation statements, assignments, amendments and termination statements as Mortgagee determines to be necessary or advisable in order to create, perfect, continue, assign, amend or terminate a security interest or interests in the collateral described in this Mortgage and all Personal Property now or hereafter owned by Mortgagor and used in connection with the operation of the Premises covered hereby. Mortgagor shall have the right hereunder and under said financing statements or other chattel instruments to replace fixtures or appliances from time to time with similar items of equal value, provided the replacements are free of any outstanding ownership interest, financing statements or encumbrances of any kind in favor of anyone other than Mortgagee. In the event Mortgagor shall fail to execute and record chattel instruments as required herein within ten (10) days after written request by

1974112.0579.400331 v3.det

2

Mortgagee, then Mortgagor hereby irrevocably appoints Mortgagee its attorney-in-fact to execute and deliver such financing statements or other instruments.

Together with any and all interests of Mortgagor in awards or payments, including interest thereon, and the right to receive the same, which may be made with respect to the Premises as a result of (a) the exercise of the right of eminent domain or condemnation, (b) the alteration of the grade of any street, or (c) any other injury to or decrease in value of the Premises, to the extent of all amounts which may be secured by this Mortgage at the date of receipt of any such award or payment by the Mortgagor, as hereinafter set forth, and of the reasonable legal counsel fees, costs and disbursements, incurred by the Mortgagor in connection with the collection of such award or payment. All such awards and condemnation proceeds are hereby assigned to Mortgagee and the Mortgagee is hereby authorized, subject to the provisions contained in this Mortgage, to apply such awards and condemnation proceeds or any part thereof, after deducting therefrom any expenses incurred by the Mortgagee in the collection or handling thereof, toward the payment, in full or in part, of the Note secured by this Mortgage, notwithstanding the fact that the amount owing thereon may not then be due and payable, or as otherwise provided in Section 10(b) of this Mortgage. The Mortgagor agrees to execute and deliver, from time to time, such further instruments as may be reasonably requested by the Mortgagee to confirm such right.

Together with all rents, issues and profits of the Premises and all the estate, right, title and interest of every nature whatsoever of the Mortgagor in and to the same, including, but not limited to, all rights conferred by Act No. 210 of the Michigan Public Acts of 1953, as amended by Act No. 151 of the Michigan Public Acts of 1966 (MCLA 554.231 et seq.). Mortgagor will execute evidence of such assignment and such further evidence of assignment as Mortgagee may from time to time reasonably request, which evidence shall include, but not be limited to, such assignment of rents, issues and profits, in reasonable form, as Mortgagee may from time to time request. Mortgagor shall pay the cost of recording any such assignments. Mortgagee is authorized to notify any or all lessees, tenants or occupants of all or part of said Premises of the assignment of rents, issues or profits made hereunder or under any such special assignments. Mortgagee shall have no liability for the performance of Mortgagor's covenants under any of said leases either as a result of said general assignment or any special assignment or as the result of Mortgagee taking possession of the Premises or a part thereof for default as hereinafter provided. Mortgagee shall not be liable to Mortgagor for any action taken or omitted in connection with any such leases or rentals or the operation of said Premises. Until the occurrence of a default as hereinafter provided, Mortgagor may use and occupy the Premises and receive all rents, issues and profits thereof.

The property, rights, privileges and franchises referred to above are hereinafter collectively referred to as the "Mortgaged Property":

TO HAVE AND TO HOLD the Mortgaged Property, together with the appurtenances thereunto belonging or in any wise appertaining, as aforesaid, unto the Mortgagee and to its successors and assigns forever.

1974112.0579.400331.v3.det

3

Li-45524          Pa-663

Subject and subordinate and junior in all respects only to the Other Financing Mortgage as defined in the Loan Agreement and set forth more fully in Exhibit B hereto, together with any increases thereto or replacement thereof, as permitted in the Loan Agreement and the Permitted Encumbrances defined below.

Provided always, that if the Mortgagor shall pay all obligations evidenced by the Note or any note or notes at any time hereafter issued to evidence the total debt secured by this Mortgage, and perform all obligations under the Loan Agreement and all documents resulting therefrom required for the completion of the development of the Project, then this Mortgage and the estate hereby granted shall cease, terminate and become void.

AND, the Mortgagor covenants with the Mortgagee as follows:

1.     The Mortgagor warrants that (a) it is lawfully seized and possessed of good and marketable title to the Premises and that the Premises, the Improvements, and the Personal Property are subject to no mortgages, liens, charges, encumbrances or security interests, except those matters, if any, listed as exceptions to. title in the title policy insuring the lien of this Mortgage or any mortgages, liens, charges, encumbrances or security interests permitted and approved by Mortgagee as set forth on Exhibit C hereto (the "Permitted Encumbrances"); and (b) it has full power and lawful authority to grant, warrant, assign, mortgage, pledge and grant a security interest in the Premises, Improvements and the Personal Property unto Mortgagee as herein provided. Except those matters listed as exceptions to the title policy and all claims deriving therefrom, or Permitted Encumbrances by the Mortgagee, the Mortgagor will forever warrant and defend the title to the Mortgaged Property and the validity and priority of the lien of this Mortgage against the claims and demands of all persons whomever.

2.     (a)     The Mortgagor shall execute, acknowledge and deliver, from time to time, such further instruments as the Mortgagee may reasonably require to accomplish the purposes of this Mortgage.

(b)     The Mortgagor, immediately upon the execution and delivery of this Mortgage, and thereafter from time to time, shall cause this Mortgage, any mortgage or deed of trust supplemental hereto and each instrument of further assurance to be filed, registered or recorded and refiled, re-registered or re-recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and perfect the lien of this Mortgage upon the Mortgaged Property.

(c)     The Mortgagor shall pay all filing, registration and recording fees, all refiling, re-registration and re-recording fees, and all expenses incident to the execution and acknowledgement of this Mortgage, any mortgage or deed of trust supplemental hereto and any instrument of further assurance (as provided in (b) above), and all Federal, State, county and municipal stamp taxes and other taxes, duties, imposts, assessments and charges arising out of or in

4

1974112.0579.400331v3.det

connection with the execution and delivery of this Mortgage, any mortgage or deed of trust supplemental hereto or any instruments of further assurance (as provided in (b) above).

    3.    (a)    Mortgagor shall, at Mortgagor's sole cost and expense, maintain or cause to be maintained with respect to the Mortgaged Property, and each part thereof, the following insurances:

    (i)    Insurance against loss or damage to the Premises, the Improvements and the Personal Property by fire and any of the risks covered by insurance of the type now known as Broad Form and Extended Coverage, and shall also include "All Risk" insurance for physical loss or damage including, without duplication of coverage, at least, theft, vandalism, malicious mischief, transit, collapse, flood, testing and damage resulting from workmanship or material, in an amount not less than the full appraised value of the Premises, Improvements and Personal Property as fully completed pursuant to the Loan Agreement.

    (ii)    Comprehensive General Liability insurance with minimum limits of One Million ($1,000,000) Dollars each occurrence for bodily injury and property damage, and Two Million ($2,000,000) Dollars, general aggregate. Said policy shall include coverage for independent contractor's liability.

    (iii)    Worker's Compensation insurance which meets Michigan's statutory requirements or Employer's Liability insurance with minimum limits of Five Hundred Thousand ($500,000) Dollars each accident, each disease, and each disease per employee.

    (iv)    Such other insurance, and in such amounts, as may from time to time be reasonably required by Mortgagee against the same or other hazards.

    (b)    The insurance identified in 3(a)(i) above shall include a loss payable endorsement or agreement for the benefit of Mortgagee in form and substance satisfactory to Mortgagee. Further, where permitted by law, all other insurances required hereunder shall name the Mortgagor as insured and the Mortgagee as an additional insured.

    (c)    All policies of insurance shall be issued by companies and in amounts satisfactory to Mortgagee. Mortgagor shall furnish Mortgagee with an original of all policies of insurance required hereunder upon the execution of this Mortgage and thereafter not less than thirty (30) days prior to the expiration date of each policy then in effect pursuant to this Paragraph 3.

1974112.0579.400331v3.det

5

(d)    Any of the insurance coverage required hereunder may be provided through blanket policies carried by Mortgagor and covering more than one location; provided, however, that if, in the exercise of Mortgagee's reasonable judgment, such blanket policy is unacceptable to Mortgagee for any reason, Mortgagee may require Mortgagor to provide individual policies of insurance in accordance with this Mortgage. If a blanket policy is employed by Mortgagor with Mortgagee's consent, then Mortgagor shall furnish Mortgagee with a certificate of insurance for each such policy setting forth the coverage, the limits of liability, the name of the carrier as to the Mortgaged Property, the policy number and the expiration date. At least thirty (30) days prior to the expiration of each such policy, Mortgagor shall furnish Mortgagee with evidence satisfactory to Mortgagee of the payment of any and all premiums due and owing thereon and of the reissuance of such policy effectively preserving the coverage required by this Mortgage. All such policies shall contain a provision that such policies will not be canceled or materially amended, which term shall include any reduction in the scope or limits of coverage, without at least thirty (30) days' prior written notice to Mortgagee. In the event Mortgagor fails to provide, maintain, keep in force or deliver and furnish to Mortgagee the polices of insurance required by this Mortgage, Mortgagee may procure such insurance or single-interest insurance for such risks covering Mortgagee's interest, and Mortgagor will pay all premiums thereon promptly upon demand by Mortgagee, and until such payment is made by Mortgagor, the amount of all such premiums together with interest thereon at the rate reflected in the Note shall be secured by this Mortgage.

4.    The Mortgagor shall pay, before any fine, penalty, interest or cost attaches thereto, all taxes, assessments, water and sewer rates, and all other governmental charges or levies now or hereafter assessed or levied against any part of the Mortgaged Property or upon the lien or estate of the Mortgagee therein and all payments made by the Mortgagor to any governmental authority in the nature of payments in lieu of taxes (collectively, "Impositions"), as well as all claims for labor or materials which, if unpaid, might by law become a prior lien thereon, and upon request by the Mortgagee, shall furnish to the Mortgagee at least ten (10) days prior to the date when any Imposition would otherwise become delinquent, official receipts of the appropriate taxing authority or other evidence satisfactory to the Mortgagee showing payment of any of the foregoing; provided, however, that if by law any such Imposition may be paid in installments (whether or not interest shall accrue on the unpaid balance thereof), the Mortgagor may pay the same in installments (together with accrued interest on the unpaid balance thereof) as the same respectively become due, before any fine, penalty, interest or cost attaches thereto; and provided, further, that if the Mortgagor contests the validity or amount of any such Imposition or claim in good faith and by appropriate proceedings and provides to the Mortgagee security in such amount and in such form as the Mortgagee may reasonably require to assure the discharge thereof, the Mortgagor may defer payment thereof during the pendency of such contest. Mortgagor's failure to pay any Imposition upon the Premises, or any installment thereof, or any insurance premium upon policies covering the Premises or any part thereof shall constitute waste and shall entitle the Mortgagee to exercise the remedies afforded by Section 2927 of the Michigan Revised Judicature Act of 1961 (MCLA 600.2927), as now or hereafter amended, and by any other statute or law now or hereafter in effect.

1974112.0579.400331v3.det

5.      If the Mortgagor shall fail to (a) effect the insurance required by Paragraph 3 for a period of ten (10) days after it becomes aware of such failure, (b) make the payments required by Paragraph 4 for a period of ten (10) days after it becomes aware of such failure, or (c) perform or observe any of its other covenants or agreements hereunder, after thirty (30) days' written notice and opportunity to cure or to commence a cure if a cure cannot be reasonably accomplished within thirty (30) days, or if an Event of Default as hereinafter defined shall occur and be continuing, the Mortgagee may effect, pay or perform or observe the same, or expend moneys to remedy such Event of Default, but the exercise of such right by the Mortgagee shall not constitute a waiver of any Event of Default or of any rights or remedies which the Mortgagee may have under this Mortgage, any loan document, at law or in equity consequent thereon. All sums, including reasonable attorneys' fees, so expended by the Mortgagee or expended to sustain the lien of this Mortgage or its priority, or to protect or enforce any of the rights of the Mortgagee hereunder, or to recover any indebtedness hereby secured, shall be deemed to be added to the indebtedness secured by this Mortgage, and shall be paid by the Mortgagor within five (5) days after demand therefor, together with interest thereon at the default rate of six (6%) percent per annum. In any action or proceeding to foreclose this Mortgage, or to recover or collect the indebtedness secured hereby, the provisions of law respecting the recovery of costs, disbursements and allowances shall prevail unaffected by this covenant.

6.      The Mortgagor shall not abandon or cause or permit any waste to the Premises and shall maintain the Premises and Improvements in good repair, working order and condition, except for reasonable wear and use. Except as contemplated by the Loan Agreement, the Mortgagor shall not permit the Improvements to be removed, demolished or materially altered; provided, however, that the Mortgagor may make any replacements, alterations, or improvements of or to the Improvements which are required by law or which would not, in the judgment of the Mortgagor, reasonably exercised, impair the value of the Improvements. The Mortgagor may remove from the Premises such items of Personal Property as are consumed or worn out in ordinary usage or as are damaged or destroyed, provided the same are replaced with Personal Property of equivalent value.

7.      (a)      The Mortgagor shall comply with all laws, ordinances, orders, rules and regulations of all Federal, State and municipal governments and of the appropriate departments, commissions, boards and offices thereof, which at any time are applicable to the Mortgaged Property.

(b)      The Mortgagor shall comply in all material respects with the terms, covenants and conditions of all instruments of record which at any time are applicable to the Premises and the Improvements and shall at all times keep in full force and effect all licenses, easements, and permits necessary in connection with the construction or use of the Premises and the Improvements.

(c)      The Mortgagor will not permit or suffer the use of the Mortgaged Property for any purpose other than pursuant to the terms of the Loan Agreement, nor will it permit or suffer any alteration of or addition to any improvements hereafter constructed in or upon the Premises

7

1974112.0579.400331v3.del

Li-45524    Pu-667

other than pursuant to and as permitted under the terms of the Loan Agreement unless such alteration or addition is agreed to by the Mortgagee. The Mortgagor further agrees that it shall not convert or cause the conversion of the Premises to condominium ownership or any form of cooperative ownership or mutual housing that has a resale structure that does not enable the cooperative to maintain Affordable Rents, and that during the applicable Period of Affordability, the Mortgagor shall maintain the Affordable Rents and Occupancy Standard requirements set forth in the Loan Agreement, or cause same to be maintained.

8.      The Mortgagor shall promptly discharge all liens, encumbrances and charges upon the Mortgaged Property (other than those approved by the Mortgagee) or any part thereof, as well as all claims for labor or materials which, if unpaid, might by law become a prior lien thereon; provided, however, that the Mortgagor shall have the right to contest the same in good faith and by appropriate proceedings, provided the Mortgagor shall first deposit with the Mortgagee (or with a trustee for the benefit of the Mortgagee) a bond or other security in such amount and in such form as the Mortgagee shall reasonably require to assure the discharge thereof, or provide Mortgagee with the insurance (acceptable to Mortgagee in the reasonable exercise of its discretion) with respect thereto, and shall thereafter diligently proceed to cause the same to be removed, paid or discharged of record.

9.      The Mortgagor shall not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Premises and the Improvements or any part thereof without the prior written consent of the Mortgagee, which consent shall not be unreasonably withheld.

10.     Should the Premises, Improvements, or any part thereof be damaged by any cause covered by insurance or should the Premises, Improvements, or any part thereof or interest therein, be taken or damaged by reason of any public use or improvement or condemnation proceeding, or in any other similar manner (hereinafter referred to as "Condemnation"), or should Mortgagor receive any notice or other information regarding such insured event or Condemnation, Mortgagor shall give prompt written notice thereof to Mortgagee.

(a)      Mortgagee, in conjunction with Mortgagor, shall be entitled to all compensation, awards and other payments or relief granted in connection with such insured event or Condemnation and shall be entitled, at its option, to commence, appear in and prosecute in its own name any action or proceedings relating thereto. Mortgagee shall also be entitled to make any compromise or settlement in connection with such Condemnation or such insured event. All such compensation, awards, damages, rights of action and proceeds awarded to Mortgagor from an insured event or Condemnation (hereinafter referred to as the "Proceeds") are hereby assigned to Mortgagee and Mortgagor agrees to execute such further assignments of the Proceeds as Mortgagee may require.

(b)      In the event that any portion of the Premises or the Improvements is so taken or damaged, Mortgagee shall have the option, in its sole and absolute discretion, to apply all such

1974112.0579.400331v3.det

8

Proceeds, after deducting therefrom all costs and expenses (regardless of the particular nature thereof and whether incurred with or without suit), including attorneys' fees, incurred by it in connection with such Proceeds, upon any indebtedness secured hereby, or to apply all such Proceeds, after such deductions, to the restoration of the Premises or the Improvements upon such conditions as Mortgagee may determine. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(c)     Any amounts received by Mortgagee hereunder (after payment of any costs in connection with obtaining same) shall, if retained by Mortgagee, be applied in payment of any accrued interest and then in deduction of the then outstanding principal balance of the Note.

11.     Without waiving its right to challenge the right of the Mortgagor to lease the Premises, in the event there are any leases of the Premises or any part thereof, whether now existing or hereafter entered into, under which the Mortgagor is the landlord, the Mortgagor shall (a) perform or observe or cause to be performed or observed all material covenants or agreements on the part of the landlord thereunder to be performed or observed, (b) upon Mortgagee's request, furnish to the Mortgagee a written statement containing the names of all tenants, the space occupied and the rentals payable, and (c) furnish the Mortgagee a copy of the form of lease agreement being used, provided, however, in the event said lease agreement is amended or changed, Mortgagor shall provide Mortgagee a new copy incorporating said amendments or changes within fifteen (15) days of implementation. The Mortgagor shall not (i) assign the rents from any such leases to anyone other than the Mortgagee, (ii) except to the extent of its reasonable business judgment, consent to the cancellation or surrender thereof, (iii) other than security deposits, accept a prepayment of rent thereunder beyond one month in advance, or (iv) except to the extent of its reasonable business judgment, modify the same so as to shorten the term, decrease the rent, accelerate the payment of rent or change the term of any renewal option.

12.     The Mortgagor, within fifteen (15) days upon request in person or within fifteen (15) days upon request by mail, shall furnish the Mortgagee a written statement, duly acknowledged, of the amount due on the Note and whether any offsets or defenses exist against the indebtedness secured by this Mortgage.

13.     In the event of the passage after the date of this Mortgage of any law of the state where the Premises is located deducting from the value of the Premises, for the purpose of taxation, any lien thereon, or changing in any way the laws now in force for the taxation of mortgages or debts secured thereby, for state or local purposes, or the manner of the operation of any such taxes so as to affect the interest of the Mortgagee, then and in such event, the Mortgagor shall bear and pay the full amount of such taxes, provided, that if for any reason payment by the Mortgagor of any such new or additional taxes would be unlawful, the Mortgagee may either declare the whole sum secured by this Mortgage, with interest thereon, to be immediately due and payable, or pay that amount or portion of such taxes as would be unlawful to require the Mortgagor to pay, in which event the Mortgagor shall concurrently therewith pay the balance of said taxes.

1974112.0579.400331v3.det

9

Li-45524    Pa-669

14.    Unless otherwise indicated, each of the following shall be an "Event of Default" hereunder:

(a)    Failure of Mortgagor to make one or more payments required by the Note on the due date thereof.

(b)    The occurrence of a Default or the occurrence and continuation in excess of thirty (30) days of an "Event of Default" on the part of Mortgagor as defined in the Loan Agreement and all documents resulting therefrom.

(c)    Any willful misrepresentation by Mortgagor or any other person liable for the payment of all or any part of the indebtedness secured hereby to Mortgagee in any document related to this Mortgage including, but not limited to, the Loan Agreement.

(d)    Failure of Mortgagor to comply with or perform any of the covenants or agreements of the Mortgagor contained in Paragraphs 3 or 4 hereof.

(e)    Failure of Mortgagor to pay the amount of any costs, expenses or fees (including attorneys' fees) incurred by Mortgagee, with interest thereon, as required by any provision of this Mortgage.

(f)    Failure by Mortgagor to present to Mortgagee, within ten (10) days after demand, receipts showing payment of all taxes, water rates, sewer rents and assessments.

(g)    Failure by Mortgagor to maintain the Improvements and the Premises in reasonably good repair.

(h)    Failure to comply with any requirement, order, notice of violation of law or ordinance issued by any governmental agency claiming jurisdiction over the Mortgaged Property within three (3) months from the issuance thereof.

(i)    Failure of Mortgagor to comply with or perform any other warranty, covenant or agreement contained herein, in the Loan Agreement, or in the Note secured hereby.

(j)    Failure of Mortgagor to perform any covenant, term or condition in any instrument creating a lien upon the Mortgaged Property, or any part thereof, which shall have priority over the lien of this Mortgage.

(k)    The institution of any bankruptcy, reorganization or insolvency proceedings against Mortgagor or the then owner in possession of the Mortgaged Property or the appointment of a receiver or a similar official with respect to all or a substantial part of the properties of Mortgagor or the then owner in possession of the Mortgaged Property and a failure to have such proceedings dismissed or such appointment vacated within a period of forty-five (45) days.

10

1974112.0579.400331 v3.doc

(l)    The institution of any voluntary bankruptcy, reorganization or insolvency proceedings by Mortgagor or the then owner in possession of the Mortgaged Property or the appointment of a receiver or a similar official with respect to all or a substantial part of the properties of Mortgagor or the then owner in possession of the Mortgaged Property at the instance of Mortgagor or the then owner in possession of the Mortgaged Property.

(m)    Any Event of Default described in this Paragraph 14, for which proper notice is given and the applicable cure period has expired shall be a Default. Unless otherwise specified herein or in the Loan Agreement, the cure period for an Event of Default occurring under this Mortgage shall be thirty (30) days after written notice of the Event of Default is given by the non-defaulting party. Notwithstanding anything contained herein or in the City Loan documents to the contrary, the occurrence of any of the events listed in Paragraphs 14(a), (b), (c) or (l) does not require notice and upon such occurrence is a Default entitling the Mortgagee to immediately exercise all remedies provided herein.

15.    If a Default occurs, the Mortgagee may exercise any right, power or remedy permitted to it by law, and, without limiting the generality of the foregoing, the Mortgagee may, to the extent permitted by law:

(a)    enter and take possession of the Premises and Improvements, or any part thereof, exclude the Mortgagor, and all persons claiming under the Mortgagor whose claims are junior to the lien of this Mortgage wholly or partly therefrom, and use, operate, manage and control the same either in the name of the Mortgagor or otherwise as the Mortgagee shall deem best, and upon such entry, from time to time at the expense of the Mortgagor, make all such repairs, replacements, alterations, additions or improvements to the Premises or any Improvements or any part thereof as the Mortgagee may deem proper, and, whether or not the Mortgagee has so entered and taken possession of the Premises and Improvements, or any part thereof, collect and receive all the rents, revenues, issues, income and profits thereof and apply the same, to the extent permitted by law, to the payment of all expenses which the Mortgagee may be authorized to make under the provisions of this Mortgage, the remainder to be applied to the payment of the indebtedness secured hereby until the same shall have been repaid in full;

(b)    personally or, to the extent permitted by law, by agents, with or without entry, if the Mortgagee shall deem it advisable:

(1)    sell or cause to be sold the Premises and Improvements, and to convey the same to the purchaser, pursuant to the provisions of Act 236, Public Acts of Michigan, 1961 (MCLA 600.3201 et seq.) pertaining to "Foreclosure of Mortgage by Advertisement," which statute does not require that Mortgagor be personally notified of such sale or that a judicial hearing be held before the sale is held. Mortgagor further agrees that Mortgagee is authorized and empowered to retain out of the sale proceeds such moneys as are due it under the terms of this Mortgage and

1974112.0579.400331 v3.det

Li-45524     Pa-671

the Note, the costs and charges of such sale, and also the attorneys' fees provided by statute, rendering the surplus moneys (if any) to Mortgagor. In the event of public foreclosure sale, the Premises and any Improvements thereon, at the option of Mortgagee, may be sold in one parcel and as an entirety or in such parcels, manner and order as the Mortgagee may elect. Mortgagor hereby waives the right to require any such sale to be made in parcels or to select the parcels to be sold.

**WARNING: THIS MORTGAGE CONTAINS A POWER OF SALE AND UPON DEFAULT MAY BE FORECLOSED BY ADVERTISEMENT. IN FORECLOSURE BY ADVERTISEMENT AND THE SALE OF THE PREMISES AND ANY IMPROVEMENTS IN CONNECTION THEREWITH, NO HEARING IS REQUIRED AND THE ONLY NOTICE REQUIRED IS TO PUBLISH NOTICE IN A LOCAL NEWSPAPER AND TO POST A COPY OF THE NOTICE ON THE PREMISES.**

**WAIVER: MORTGAGOR HEREBY WAIVES ALL RIGHTS UNDER THE CONSTITUTION AND LAWS OF THE UNITED STATES AND UNDER THE CONSTITUTION AND LAWS OF THE STATE OF MICHIGAN TO A HEARING PRIOR TO SALE IN CONNECTION WITH THE ABOVE-MENTIONED FORECLOSURE BY ADVERTISEMENT AND ALL NOTICE REQUIREMENTS EXCEPT AS SET FORTH IN THE ABOVE-MENTIONED MICHIGAN STATUTE PROVIDING FOR FORECLOSURE BY ADVERTISEMENT; or**

(2)     proceed to protect and enforce its rights under this Mortgage by suit for specific performance of any covenant herein contained, or in aid of the execution of any power herein granted, or for the foreclosure of this Mortgage and the sale of the Premises and any Improvements thereon under the judgment or decree of a court of competent jurisdiction, or for the enforcement of any other right as the Mortgagee shall deem most effectual for such purpose; and/or

(c)     exercise any or all of the remedies available to a secured party under the Michigan Uniform Commercial Code (the "Code"), including, without limitation:

(1)     either personally or by means of a court appointed receiver, take possession of the Personal Property or any part thereof and exclude therefrom the Mortgagor and all others claiming under the Mortgagor and thereafter hold, store, use, manage, maintain, operate and control, make repairs, replacements, alterations additions and improvements to and exercise all rights and powers of the Mortgagor in respect of the Personal Property or any part thereof. In the event the Mortgagee demands or attempts to take possession of the Personal Property in the exercise of any rights hereunder or under the Loan Agreement, the Mortgagor shall promptly turn over and deliver complete possession thereof to the Mortgagee;

1974112.0579.400331v3.det

Li-45524     Pa-672

(2)     without notice to or demand upon the Mortgagor, make such payments and do such acts as the Mortgagee may deem necessary to protect the security interest granted hereby in the Personal Property, including, without limitation, paying, purchasing, contesting or compromising any encumbrance, charge or lien which is prior or superior thereto, and in exercising any such powers or authority to pay all expenses incurred in connection therewith;

(3)     require the Mortgagor to assemble the Personal Property, or any portion thereof, at a place designated by the Mortgagee and reasonably convenient to both parties, and promptly to deliver such Personal Property to the Mortgagee, or an agent or representative designated by it. The Mortgagee, and its agents and representatives, shall have the right to enter upon any or all of the Mortgagor's premises and property to exercise the Mortgagee's rights hereunder;

(4)     sell, lease or otherwise dispose of the Personal Property at public or private sale, with or without having the Personal Property at the place of sale, and upon such terms and in such manner as the Mortgagee may determine, and the Mortgagee may be a purchaser at any such sale; and

(5)     unless the Personal Property is perishable or threatens to decline rapidly in value or is of a type customarily sold in a recognized market, the Mortgagee shall give the Mortgagor at least ten (10) days' prior notice of the time and place of any public sale of the Personal Property or other intended disposition thereof.

As to any personal property interests included in the Mortgaged Property which are subject to Article 9 of the Code, the Mortgagee, in the event of an Event of Default, may proceed under the Code or may proceed as to both the real and personal property interests included in the Mortgaged Property in accordance with the provisions of this Mortgage and the rights and remedies which the Mortgagee may have, at law or in equity, in respect of real property, as specifically permitted under the Code, and treat both the real and personal property interests included in the Mortgaged Property as one parcel or package of security. The Mortgagor shall have the burden of proving that any sale pursuant to this Paragraph 15 was conducted in a commercially unreasonable manner.

16.     If a Default occurs, the Mortgagee, to the extent permitted by law, shall be entitled as a matter of right to the appointment of a receiver of the Premises and Improvements and of the rents, revenues, issues, income and profits thereof, without notice or demand, and without regard to the adequacy of the security for the indebtedness secured hereby or the solvency of the Mortgagor.

17.     In the event of any Default, the Mortgagor shall, to the extent permitted by law, pay monthly in advance to the Mortgagee, or to any receiver appointed at the request of the Mortgagee to collect the rents, revenues, issues, income and profits of the Premises, the fair and reasonable rental value for the use and occupancy of the units of the Premises or of such part thereof as may be

Li-45524          Pa-673

in the possession of the Mortgagor. Upon default in the payment thereof, the Mortgagor shall vacate and surrender possession of the Premises to the Mortgagee or such receiver, and upon a failure so to do may be evicted by summary proceedings.

18.     In any sale under any provision of this Mortgage or pursuant to any judgment or decree of court, the Mortgaged Property, to the extent permitted by law, may be sold in one or more parcels or as an entirety and in such order as the Mortgagee may elect, without regard to the right of the Mortgagor or any person claiming under the Mortgagor to the marshalling of assets. The purchaser at any sale shall take title to the Mortgaged Property or the part thereof so sold free and discharged of the estate of the Mortgagor therein, the purchaser being hereby discharged from all liability to see to the application of the purchase money. Any person, including the Mortgagee, may purchase at any such sale. The Mortgagee is hereby irrevocably appointed the attorney-in-fact of the Mortgagor in its name and stead to make all appropriate transfers and deliveries of the Mortgaged Property or any portions thereof so sold and, for that purpose, the Mortgagee, to the extent permitted by law, may execute all appropriate instruments of transfer and may substitute one or more persons with like power, the Mortgagor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Nevertheless, the Mortgagor shall ratify and confirm, or cause to be ratified and confirmed, any such sale or sales by executing and delivering, or by causing to be executed and delivered, to the Mortgagee or to such purchaser or purchasers all such instruments as may be advisable, in the judgment of the Mortgagee, for the purpose of ratifying and confirming any such sale or sales, and as may be designated in such request. Any sale or sales made under or by virtue of this Mortgage, to the extent not prohibited by law, shall operate to divest all the estate, right, title, interest, property, claim and demand whatsoever, whether at law or in equity, of the Mortgagor in, to and under the Mortgaged Property, or any portions thereof so sold, and shall be a perpetual bar both at law and in equity against the Mortgagor, its successors and assigns, and against any and all persons claiming or who may claim the same, or any part thereof, by, through or under the Mortgagor or its successors or assigns. The powers and agency herein granted are coupled with an interest and are irrevocable.

19.     The proceeds of any sale made either under the power of sale hereby given or under a judgment, order or decree made in any action to foreclose or to enforce this Mortgage shall be applied:

(a)     first to the payment of all costs and expenses of such sale, including reasonable attorneys' fees; and

(b)     then to the payment of all charges, expenses and advances incurred or made by the Mortgagee in order to protect the lien of this Mortgage or the security afforded thereby.

20.     The Mortgagee shall have the right from time to time to sue for any sums required to be paid by the Mortgagor under the terms of this Mortgage as the same become due, without regard to whether or not all obligations secured hereby shall be, or have become, due and without prejudice to the right of the Mortgagee thereafter to bring any action or proceeding of foreclosure or any other

14

1974112.0579.400331v3.det

LI~45524    Pa~674

action upon the occurrence of any Event of Default existing at the time such earlier action was commenced.

21.    No failure to exercise, nor any delay in exercising or any course of dealing in respect of, any right, power or remedy hereunder by the Mortgagee shall operate as a waiver thereof, nor shall any single or partial exercise by the Mortgagee of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies provided herein are cumulative and not exclusive of any remedies provided by law.

22.    The Mortgagee may, at any time or from time to time, renew or extend this Mortgage, or alter or modify the same in any way, or waive any of the terms, covenants or conditions hereof in whole or in part and may release any portion of the Mortgaged Property or any other security, and grant such extensions and indulgences in relation to the indebtedness secured hereby as the Mortgagee may determine without the consent of any junior lienor or encumbrancer and without any obligation to give notice of any kind thereto and without in any manner affecting the priority of the lien hereof on any part of the Mortgaged Property.

23.    All notices, consents, approvals, requests and other communications, herein called "Notices", required or permitted under this Mortgage, shall be given in writing, signed by an authorized representative of the Mortgagee or the Mortgagor and mailed by certified or registered mail, postage prepaid, return receipt requested, or sent by either "Federal Express" or "Airborne" overnight couriers, or hand delivered and addressed as follows:

| | |
|---|---|
| To Mortgagee: | City of Detroit<br>Planning and Development Department<br>65 Cadillac Square, 19th Floor<br>Detroit, Michigan 48226<br>Attention: Willie Moore |
| With a copy to: | Lewis & Munday, P.C.<br>660 Woodward Avenue<br>Suite 2490<br>Detroit, Michigan 48226<br>Attention: Blair A. Person, Esquire |
| To Mortgagor: | West Town Homes I, LLC<br>243 West Congress<br>Suite 350<br>Detroit, Michigan 48226<br>Attention: Stephanie L. Madden |

1974112.0579.400331v3.det

15

L1-45524    Pn-675

With a copy to:    Maddin, Hauser, Wartell, Roth & Heller, P.C.
                   28400 Northwestern Highway_
                   Floor 3
                   Southfield, Michigan 48034
                   Attention: Michael B. Perlman, Esquire

Except for Notices sent by an authorized courier, which shall be deemed given one (1) business day after the date of sending, all Notices shall be deemed given two (2) days after the date of mailing or on the date of hand delivery. Either party to this Mortgage may change its address for the receipt of Notices to an address in the United States or designate additional addressees to whom copies of Notices shall be sent at any time by giving notice thereof to the other as herein provided.

24.    This Mortgage cannot be modified, changed or discharged except by an agreement in writing, duly acknowledged in form for recording, signed by the party against whom enforcement of such modification, change or discharge is sought.

25.    Intentionally omitted.

26.    The covenants contained in this Mortgage shall run with the Premises and shall bind the Mortgagor and its successors and assigns, and all subsequent encumbrances, tenants and subtenants of the Premises and shall inure to the benefit of the Mortgagee, and its successors and assigns.

27.    No assignment of the Mortgagee's rights under this Mortgage and no forbearance on the part of the Mortgagee and no extension of the time for the payment of the debt or performance of all the obligations hereby secured given by the Mortgagee shall operate to release, discharge, modify, change or affect the original liability of the Mortgagor herein either in whole or in part.

28.    It is understood and agreed that the Mortgagor intends to sell each single family residence constructed on the Project Site to a qualified Home Buyer in accordance with the Loan Agreement. Absent a Default in the Loan Agreement, this Mortgage or any other City Loan Documents, the Mortgagee hereby covenants and agrees to execute a discharge of this Mortgage, releasing from the lien hereof that particular lot being sold to the Home Buyer, upon the closing of the Permanent Mortgage Financing, provided, that all provisions of the Loan Agreement, this Mortgage and the other City Loan Documents are satisfied and the amount of the Permanent Mortgage Financing is sufficient to repay the amount of Surplus HOME funds set forth on the attached Exhibit D, or the Mortgagee is reimbursed by the Mortgagor in the amount of such Surplus HOME Funds.

29.    The capitalized words and phrases used in this Mortgage shall, unless the context requires otherwise, have the same meaning as in the Loan Agreement; provided, however, that in the event any provisions of this Mortgage are in conflict with the provisions of the Loan Agreement, the latter shall prevail as to the parties to the Loan Agreement.

16

1974112.0579.400331v3.dct

L1-45524      Pu-676

30.    The covenants herein contained shall bind, and the benefits and advantages shall inure to, the respective successors and assigns of the parties hereto. Whenever used, the singular number shall include the plural and the singular, and use of any gender shall be applicable to all genders.

31.    So long as the Mortgaged Property shall be owned in whole or in part or held in whole or in part by a corporation, limited partnership, or limited liability company, such corporation, limited partnership, or limited liability company shall at all times maintain its existence as such and shall be fully authorized to do business in the State of Michigan and shall maintain in the State of Michigan a duly authorized registered agent for the service of process. Failure to comply with such obligations shall, in addition to being a default under this Mortgage, authorize Mortgagee, as attorney-in-fact of Mortgagor, to appoint any person as agent of Mortgagor for the service of process in any proceeding or proceedings concerning this Mortgage or the Note.

32.    Any provisions of this Mortgage prohibited or unenforceable by an applicable law shall be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.

33.    This Mortgage shall be governed by and construed in accordance with the laws of the State of Michigan.

17

1974112.0579.400331v3.det

Li-45524    Pa-677

IN WITNESS WHEREOF, this Mortgage has been duly executed by the Mortgagor as of the day and year first above written.

MORTGAGOR:

WEST TOWN HOMES I, LLC,
a Michigan limited liability company

By:    Community Planning Association, a
       Michigan nonprofit corporation

Its:   Managing Member

       By: _Stephanie L. Madden_____
           Stephanie L. Madden

Its:   Executive Director

STATE OF MICHIGAN    )
                     ) ss.
COUNTY OF WAYNE      )

The foregoing instrument was acknowledged before me this 13th day of October 2006, by Stephanie L. Madden, the Executive Director of Community Planning Association, a Michigan nonprofit corporation, the managing member of West Town Homes I, LLC, a Michigan limited liability company.

_____
Notary Public                  County, Michigan
My Commission Expires:_____
Acting in _____County, Michigan

Drafted by and when
recorded return to:

J. Taylor Teasdale, Esquire
Lewis & Munday, P.C.
660 Woodward Avenue
Suite 2490
Detroit, Michigan 48226

CHERYLL WEZNER
Notary Public, State of Michigan
County of Wayne
My Commission Expires Dec. 2, 2011
Acting in the County of Wayne

1974112.0579.400331v3.det

18

L1-45524    Pa-67B

# EXHIBIT A

## PROPERTY LEGAL DESCRIPTION

Land located in the City of Detroit, County of Wayne, State of Michigan, and described as follows:

Lots 334 and 335, Gaynor Park Sub. No. 1, as recorded in Liber 46, Page 64 of Plats, Wayne County Records.

Commonly known as: 15733 Tireman and 15735 Tireman
Tax ID No.:    Ward 22, Item 1102
               Ward 22, Item 1103

Lots 378 and 379, Gaynor Park Sub. No. 1, as recorded in Liber 46, Page 64 of Plats, Wayne County Records.

Commonly known as: 15801 Tireman and 15803 Tireman
Tax ID No.:    Ward 22, Item 1108
               Ward 22, Item 1109

Lots 382 and 383, Gaynor Park Sub. No. 1, as recorded in Liber 46, Page 64 of Plats, Wayne County Records.

Commonly known as: 15819 Tireman and 15823 Tireman
Tax ID No.:    Ward 22, Item 1112
               Ward 22, Item 1113

Lots 8, 9 and the East 7.66 feet of Lot 10, Bassett and Smith's Tireman Ave. Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 16042 Tireman
Tax ID No.:    Ward 22, Item 1833-4

Lots 21 and 22, Bassett and Smith's Tireman Ave. Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 16128 Tireman
Tax ID No.:    Ward 22, Item 1820-1

19

1974112.0579.400331v3.det

LI-45524    Pg-679

Lots 23 and 24, Bassett and Smith's Tireman Ave. Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 16132 Tireman and 16138 Tireman
Tax ID No.:    Ward 22, Item 1819
                Ward 22, Item 1818

Lot 414 and the South 1/2 of Lot 415, Bassett and Smith's Tireman Ave. Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 8242 Mansfield
Tax ID No.:    Ward 22, Item 57006

Lot 416 and the North 1/2 of Lot 415, Bassett and Smith's Tireman Ave. Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 8242 Mansfield and 8248 Mansfield
Tax ID No.:    Ward 22, Item 57006
                Ward 22, Item 57007

Lot 330, the South 1/2 of Lot 331 and 1/2 vacated alley, Bassett and Smith's Tireman as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 8054 St. Mary's and 8060 St. Mary's
Tax ID No.:    Ward 22, Item 58314
                Ward 22, Item 58315

Lot 332, the North 1/2 of Lot 331 and 1/2 vacated alley, Bassett and Smith's Tireman Ave. Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 8060 St. Mary's and 8068 St. Mary's
Tax ID No.:    Ward 22, Item 58315
                Ward 22, Item 58316

Lots 283 and 284, Bassett and Smith's Tireman Ave. Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 8445 St. Mary's and 8451 St. Mary's
Tax ID No.:    Ward 22, Item 59373
                Ward 22, Item 59374

l974112.0579.400331v3.det

L1-45524     Pa-680

The North 25 feet of Lot 153, the South 27.5 feet of Lot 152 and 1/2 vacated alley, Bassett and Smith's Tireman Ave. Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 8427 Mettetal and 8421 Mettetal
Tax ID No.:     Ward 22, Item 60795
                Ward 22, Item 60794

The South 20 feet of Lot 150, Lot 151, the North 2.5 feet of Lot 152 and 1/2 vacated alley, Bassett and Smith's Tireman Ave. Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 8427 Mettetal and 8435 Mettetal
Tax ID No.:     Ward 22, Item 60794
                Ward 22, Item 60793

Lot 233 and the South 1/2 of Lot 234, Bassett and Smith's Tireman Ave. Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 8448 Mettetal and 8454 Mettetal
Tax ID No.:     Ward 22, Item 59673
                Ward 22, Item 59674

The North 1/2 of Lot 234 and all of Lot 235, Bassett and Smith's Tireman Ave. Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 8454 Mettetal and 8460 Mettetal
Tax ID No.:     Ward 22, Item 59674
                Ward 22, Item 59675

Lot 236 and the South 1/2 of Lot 237, Bassett and Smith's Tireman Ave. Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 8466 Mettetal and 8472 Mettetal
Tax ID No.:     Ward 22, Item 59676
                Ward 22, Item 59677

The North 1/2 of Lot 237 and all of Lot 238, Bassett and Smith's Tireman Ave. Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 8472 Mettetal and 8478 Mettetal
Tax ID No.:     Ward 22, Item 59677
                Ward 22, Item 59678

1974112.0579.400331v3.det

21

The South 12.5 feet of Lot 140, all of Lot 141 and the North 5 feet of Lot 142, Bassett and Smith's Tireman Ave. Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 8491 Mettetal and 8509 Mettetal
Tax ID No.:    Ward 22, Item 60783-4
               Ward 22, Item 60782

Lot 139 and the North 17.5 feet of Lot 140, Bassett and Smith's Tireman Ave. Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 8509 Mettetal and 8511 Mettetal
Tax ID No.:    Ward 22, Item 60782
               Ward 22, Item 60781

Lot 99, the South 10 feet of Lot 100 and 1/2 vacated alley, Bassett and Smith's Tireman Ave. Subdivision, as recorded in Liber 44, Page 7 of Plats, Wayne County Records.

Commonly known as: 8464 Asbury Park
Tax ID No.:    Ward 22, Item 61078

L1-45524        Pn-682

## EXHIBIT B

## OTHER FINANCING MORTGAGE

Open-End Mortgage in the principal amount of $2,000,000.00 granted to Charter One Bank, N.A., executed on August 21, 2006



1974112.0579.400331v3.dtt

23

Li-45524        Pa-683

### EXHIBIT C

### PERMITTED ENCUMBRANCES

(1)    Matters listed as exceptions in the title policy insuring the lien of this Mortgage.
(2)    The Open-End Mortgage described in Exhibit B.



24

1974112.0579.400331v3.det

LI-45524          Pa-624

# EXHIBIT D

## SURPLUS HOME FUNDS PER UNIT

### $22,026.40



1974112.0579.400331v3.dot                    25

Exhibit 6

OMB NO. 2502-0265

| A. | | B. TYPE OF LOAN: | |
|---|---|---|---|
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | | 1. [X] FHA  2. [ ] FmHA  3. [ ] CONV. UNINS.  4. [ ] VA  5. [ ] CONV. INS. | |
| SETTLEMENT STATEMENT | | 6. FILE NUMBER: 0508466-30.LSB | 7. LOAN NUMBER: 408410124 |
| | | 8. MORTGAGE INS CASE NUMBER: 2840004780703 | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. NAME AND ADDRESS OF BUYER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| Robert Fred Heliner<br>8446 St. Marys<br>Detroit, MI 48228 | West Town Homes I, LLC<br>1245 Chicago Road<br>Troy, MI 48083 | Fifth Third Mortgage Company<br>5001 Kingsley Drive<br>Cincinnati, OH 45227 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT:  43-1846665 | I. SETTLEMENT DATE: |
|---|---|---|
| 8446 St. Marys<br>Detroit, MI 48228<br>Wayne County, Michigan<br>Lots 203 and 204<br>Liber 44, Page 7<br>Bassett and Smiths Tiromen Ave | LaMont Title Corporation<br><br>PLACE OF SETTLEMENT<br>333 W. Fort St., Ste. 1750<br>Detroit, MI 48226 | September 18, 2009 |

| J. SUMMARY OF BUYER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BUYER: | | 400. GROSS AMOUNT DUE TO SELLER: | |
| 101. Contract Sales Price | 89,000.00 | 401. Contract Sales Price | 89,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Buyer (Line 1400) | 6,246.77 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments For Items Paid By Seller in advance | | Adjustments For Items Paid By Seller in advance | |
| 106. City/Town Taxes  09/19/09 to 07/01/10 | 2,842.61 | 406. City/Town Taxes  09/19/09 to 07/01/10 | 2,842.61 |
| 107. County Taxes  09/19/09 to 12/01/09 | 106.59 | 407. County Taxes  09/19/09 to 12/01/09 | 106.59 |
| 108. Assessments  to | | 408. Assessments  to | |
| 109. | | 409. | |
| 110. September Rent Proration | 743.64 | 410. September Rent Proration | 743.64 |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BUYER | 97,940.61 | 420. GROSS AMOUNT DUE TO SELLER | 92,695.04 |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BUYER: | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER: | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See instructions) | |
| 202. Principal Amount of New Loan(s) | 87,250.00 | 502. Settlement Charges to Seller (Line 1400) | 6,664.62 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. ADDL Funds | 7,190.81 | 504. Payoff First Mortgage to Charter One/Citizens Bank | 87,015.01 |
| 205. | | 505. Payoff Second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. Seller Held Deposit | 3,500.00 | 509. Seller Held Deposit | 3,500.00 |
| Adjustments For Items Unpaid By Seller | | Adjustments For Items Unpaid By Seller | |
| 210. City/Town Taxes  to | | 510. City/Town Taxes  to | |
| 211. County Taxes  to | | 511. County Taxes  to | |
| 212. Assessments  to | | 512. Assessments  to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BUYER | 97,940.81 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | 97,079.63 |
| 300. CASH AT SETTLEMENT FROM/TO BUYER: | | 600. CASH AT SETTLEMENT TO/FROM SELLER: | |
| 301. Gross Amount Due From Buyer (Line 120) | 97,940.61 | 601. Gross Amount Due To Seller (Line 420) | 92,695.04 |
| 302. Less Amount Paid By/For Buyer (Line 220) | ( 97,940.61) | 602. Less Reductions Due Seller (Line 520) | ( 97,079.63) |
| 303. CASH ( FROM ) ( TO ) BUYER | 0.00 | 603. CASH ( TO ) ( X FROM ) SELLER | 4,384.59 |

## L. SETTLEMENT CHARGES

| | | PAID FROM BUYER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL COMMISSION Based on Price $ @ % | | | |
| Division of Commission (line 700) as Follows: | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission Paid at Settlement | | | |
| 704. | to | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee 0.0000 % | to | | |
| 802. Loan Discount % | to | | |
| 803. Appraisal Fee | to Interlink Appraisal Services LLC 300.00POCb | 175.00 | |
| 804. Credit Report | to Credit Plus POC $24.48b | | |
| 805. Lender's Inspection Fee | to | | |
| 806. Mortgage Ins. App. Fee | to | | |
| 807. Assumption Fee | to | | |
| 808. Processing Fee | to TLH and Associates | 575.00 | |
| 809. Tax Service Fee | to First American Real Estate Tax Services | | 72.00 |
| 810. Funding Fee | to Fifth Third Mortgage-MI, LLC | | 695.00 |
| 811. Broker Price | to Barron and Associates POC $3,197.71I | | |
| 812. Flood Certification Fee | to Southwest Financial Services, Inc. | | 4.00 |
| 813. | | | |
| 814. | | | |
| 815. | | | |
| 816. | | | |
| 817. | | | |
| 818. | | | |
| 819. | | | |
| 820. | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From 09/18/09 to 10/01/09 @ $ 14.34000/day ( 13 days %) | | 186.46 | |
| 902. Mortgage Insurance Premium for months to HUD | | 1,600.83 | |
| 903. Hazard Insurance Premium for 1.0 years to Farmers Insurance | | 1,402.23 | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance | 4.000 months @ $ 116.85 per month | 467.40 | |
| 1002. Mortgage Insurance | 0.000 months @ $ 39.00 per month | | |
| 1003. City/Town Taxes | 6.000 months @ $ 55.56 per month | 277.80 | |
| 1004. County Taxes | 12.000 months @ $ 8.09 per month | 97.08 | |
| 1005. Assessments | months @ $ per month | | |
| 1006. | months @ $ per month | | |
| 1007. | months @ $ per month | | |
| 1008. Aggregate Adjustment | months @ $ per month | -120.28 | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or Closing Fee | to LeMont Title Corporation | 350.00 | |
| 1102. Abstract or Title Search | to LeMont Title Corporation | | 300.00 |
| 1103. Title Examination | to | | |
| 1104. Title Insurance Binder | to | | |
| 1105. Document Preparation | to | | |
| 1106. Notary Fees | to | | |
| 1107. Attorney's Fees | to | | |
| (Includes above item numbers: ) | | | |
| 1108. Title Insurance | to Old Republic National Title Insurance Company | 92.44 | 956.51 |
| (Includes above item numbers: ) | | | |
| 1109. Lender's Coverage | $ 87,280.00 344.85 | | |
| 1110. Owner's Coverage | $ 89,000.00 684.10 | | |
| 1111. Tax Statement Fee | to LeMont Title Corporation | | 6.00 |
| 1112. Wire/Courier Fee | to LeMont Title Recording | 75.00 | 25.00 |
| 1113. Recording Processing Fee | to LeMont Title Recording | 25.00 | |
| 1114. Revision Fee | to LeMont Title Corporation | 25.00 | |
| 1115. | | | |
| 1116. | | | |
| 1117. | | | |
| 1118. | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees: Deed $ 10.00; Mortgage $ 42.00; Release $ 39.00 | | 61.00 | 39.00 |
| 1202. City/County Tax/Stamps: Deed 97.90; Mortgage | | | 97.90 |
| 1203. State Tax/Stamps: Revenue Stamps 667.50; Mortgage | | | 667.50 |
| 1204. Second Mortgage Recording Fee | to LeMont Title Recording | 33.00 | |
| 1205. Restriction Recording Fee | to LeMont Title Recording | 33.00 | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey | to | | |
| 1302. Pest Inspection | to | | |
| 1303. 2009 Summer Tax | to City of Detroit Treasurer | | 3,802.71 |
| 1304. | | | |
| 1305. | | | |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K).** | | 6,245.77 | 6,664.82 |

By signing page 1 of this statement, the signature is acknowledged receipt of a completed copy of page 2 of this two page statement.

LeMont Title Corporation
Settlement Agent

Certified to be a true copy.

Buyer (s): Robert Fred Hellner
8445 St. Marys
Detroit, MI 48228

Seller(s): West Town Homes I, LLC, a Michigan
limited liability company
1245 Chicago Road
Troy, MI 48083

Lender: Fifth Third Mortgage Company
Settlement Agent: LaMont Title Corporation
(313)963-3100
Place of Settlement: 333 W. Fort St., Ste. 1750
Detroit, MI 48226
Settlement Date: September 18, 2009
Property Location: 8445 St. Marys
Detroit, MI 48228
Wayne County, Michigan
Lots 283 and 284
Liber 44, Page 7
Bassett and Smiths Tireman Ave.

## Seller Loan Payoff Details

| Payoff First Mortgage | | to Charter One/Citizens Bank | |
|---|---|---|---|
| Loan Payoff | 87,015.01 | As of 08/14/09 | |
| Total Additional Interest | | 19 days @ | Per Diem |
| Total Loan Payoff | 87,015.01 | | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_Robert J. Hellner_
Robert Fred Hellner

West Town Homes, I LLC, a Michigan
limited liability company

By: Community Planning Association,
a Michigan non-profit corporation,
Managing Member

By: _[signature]_
Anthon Clark, Executive Director
Urban Entity Group IV LLC, a Michigan
limited liability company, Member

By: Barclay Homes I, LLC, a Michigan
limited liability company, Managing
Member

By: _[signature]_ Peter Barclae, Member

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

(0508468-30.LSB.PFD/0508468-30.LSB/47)

## BUYER / SELLER CERTIFICATION

Buyer: Robert Fred Hellner
Seller: West Town Homes I, LLC, a Michigan limited liability company
Lender: Fifth Third Mortgage Company
Settlement Agent: LaMont Title Corporation
(313)963-3100
Place of Settlement: 333 W. Fort St., Ste. 1760
Detroit, MI 48226
Settlement Date: September 18, 2009
Property Location: 8445 St. Marys
Detroit, MI 48228
Wayne County, Michigan
Lots 283 and 284
Liber 44, Page 7
Bassett and Smiths Tireman Ave

The Buyer and Seller this date have checked, reviewed and approved the figures appearing on the Disclosure/Settlement Statement (Statement of Actual Costs), consisting of two (2) pages. Buyer acknowledges receipt of the payment of the loan proceeds in full, and Seller acknowledges payment in full of the proceeds due Seller from the settlement.

Seller understands that the payoff figure(s) shown on the first page of the Settlement Statement are figures supplied to the Settlement Agent by the Seller's lender(s) and is/are subject to confirmation upon tender of payment. If the payoff figure(s) are inaccurate, Seller agrees to immediately pay any shortage(s) that may exist.

As part of the consideration of this sale, the contract between the parties is by reference incorporated herein and made a part hereof; the terms and conditions contained therein shall survive the closing and shall not merge upon the delivery of the warranty deed.

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Robert Fred Hellner

West Town Homes, I LLC, a Michigan
limited liability company

By: Community Planning Association,
a Michigan non-profit corporation,
Managing Member

By: Anthon Clark, Executive Director
Urban Entity Group IV LLC, a Michigan
limited liability company, Member

By: Barclae Homes I, LLC, a Michigan
limited liability company, Managing
Member

By: Peter Barclae, Member

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

LaMont Title Corporation
Settlement Agent

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 & Section 1010.