UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

**LOCAL 3308 AND LOCAL 917 OF THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES' BRIEF IN SUPPORT OF THEIR OBJECTION TO MOTION OF DEBTOR FOR ENTRY OF AN ORDER EXTENDING THE CHAPTER 9 STAY TO THE 36TH DISTRICT COURT AND CERTAIN RELATED PARTIES**

**INTRODUCTION**

In this Motion, the City of Detroit is attempting to extend the automatic bankruptcy stay to a solvent third party, 36th District Court. Such a motion is rarely granted and only available in unusual circumstances. No unusual circumstances are present. At its essence, the City is claiming that 36th District Court is or will be a creditor of the City of Detroit. Therefore, 36th District Court is itself entitled to the protections of the bankruptcy code and all of the litigation against it should cease. This argument is completely baseless.

Moreover, the City has not sought this measure in the proper manner. The only manner to seek such relief is through seeking injunctive relief through an adversary proceeding. The City must demonstrate that the traditional four factors necessary for injunctive relief are present. The City has not requested injunctive relief, filed an adversary proceeding, or argued that the necessary factors are present.

In addition, 36th District Court is not a department of the City, it is a state entity. The State is not eligible for bankruptcy protection. The obligation to fund the state court system originates with the State of Michigan, not the City. The State has passed its funding obligation onto the City. If the City cannot meet its obligation to fund its portion of the state court system, the obligation falls back upon the State under the traditional separation of powers doctrine which mandates that the State provide adequate funding for the Court.

**STATEMENT OF FACTS**

36th District Court is a trial court of limited jurisdiction sitting in the City of Detroit. As a state district court, the Michigan Supreme Court has general superintending control over it, like all subordinate courts. The Michigan Supreme Court controls 36th District Court's operation and management. Normally, the Michigan Supreme Court appoints a chief judge to control the day to day operations of trial courts. However, the Michigan Supreme Court has appointed a special administrator, Court of Appeals Judge Michael Talbot to control the day to day operations of 36th District Court.

It is unknown exactly what claims the City is attempting to make as part of the stay because they have not filed an adversary proceeding. However, in its Motion, it named some individuals, a local union and only one specific case. Below is a likely incomplete listing of pending claims.

Local 3308 is the AFSCME Local that represents most of 36th District Court's nonsupervisory employees. It has several pending claims. In a consolidated case pending before the Michigan Employment Relations Commission ("MERC"), an Administrative Law Judge

issued a Decision and Recommended Order finding that 36th District Court illegally ceased deducting dues, eliminated the just cause standard for discipline, and ceased arbitrating grievances. As part of the remedy, the ALJ awarded AFSCME the dues that it was owed and provided that the Court had to pay the costs of arbitrating some grievances. This case is pending action from the full Commission. Another matter is pending regarding the Court's unilateral imposition of a 10% wage reduction and change of other benefits without bargaining in good faith with the union. There are other actions pending.

Arnette Rodgers, Katrina Tate-Anderson, Jaunice Flowers Cheryl Sharpley, Anthony Cooper, Wendell Finley, Arecia Stevens, Crystal Allen-Cruce, Keith Carter, Lauren Hill and Alvita Moss are Plaintiffs in a matter pending in the Eastern District Michigan against former Chief Judge Marilyn Atkins[1] in her official capacity only as to injunctive relief and in her personal capacity as to damages. 36th District Court is not a party to this action.[2] However, due to the City including a list of the Plaintiffs in this action in their motion, one can only assume this is the claim they are referencing. This claim alleges a §1983 procedural due process claim against Atkins for her failure to provide a meaningful post-termination hearing consistent with the federal Constitutional Due Process Clause.

Alvita Moss and Crystal Allen-Cruce have had wrongful termination arbitration hearings and an arbitrator's decision is forthcoming. Donnita Cleveland was victorious in an arbitration

---

[1] Judge Atkins retired December 31, 2012.
[2] In the title of its Motion, the City is seeking to extend the stay to "the 36th District Court and Certain Related Parties." It defines the related parties as its officers, employees, agents and representatives. This is a greater degree of extension to 36th District Court than what even the Debtor is permitted. It is overly broad as written. With this definition all claims that an individual may have against a court clerk would be stayed. It seems to want to extend the stay to a retired judge of the court without any reason or rationale. It does not even assert that the retired judge at issue is entitled to indemnification from the Court.

regarding her discharge and was awarded reinstatement and back pay. These claims were brought by AFSCME Local 3308.

AFSCME Local 917 represents the Bailiffs and Court Officers of 36th District Court. It won the arbitration hearing attached to the Motion. It also has a pending grievance regarding the Court's unwillingness to indemnify a Court Officer's costs, fees, and nominal settlement amount for a suit he defended regarding actions that occurred while Jonathan Mapp was performing job duties. The parties' CBA demands such indemnification and 36th District Court has ignored its obligation.

It also has a pending case regarding 36th District Court's repeated attempts to make the Court Officers at-will employees or independent contractors in violation of state law.[3] If this last action is stayed, it is quite troublesome because the union members in this unit will not only cease having the benefit of their collective bargaining agreement but will lose their collective bargaining rights altogether.[4] The Michigan Supreme Court and MERC have already previously decided these issues but the Court continues to attempt to engage in this illegal behavior regardless of prior rulings.

Some of these actions are monetary, some of them are nonmonetary. Some are against 36th District Court, some are not. It is difficult to determine with any precision the claims that City is seeking to stay. Other than the one matter that has resulted in a large back pay award, the City gives no basis as to why the stay ought to apply.

---

[3] These actions are brought in two separate actions, one of the actions may not be part of the City's proposed stay because it arose post-petition.
[4] This issue is completely non-monetary. 36th District Court, through the City's motion, is seeking to illegally strip these employees of their clearly defined collective bargaining rights through this bankruptcy action.

Many of these actions are a result of horrific mismanagement in the past that are repeated and continued under the current management.

**LEGAL ANALYSIS**

I. **EXTENDING THE STAY TO A SOLVENT THIRD PARTY IS AN EXTRAORDINARY ACTION THAT IS RARELY GRANTED.**

It is well established that seeking to extend bankruptcy protections to benefit a non-debtor third party is an "extreme remedy" and is "exceedingly rare." ***Saleh v. Bank of America,*** 427 B.R. 415, 421 (Bankr. S.D. Ohio 2010). It permits a third party to obtain the benefits of the bankruptcy process without being subjected to any of its burdens and safeguards. ***Id.***

The Sixth Circuit has held that there is a strong hesitancy to grant such extraordinary relief because it conflicts with the language and intent of the bankruptcy code; "[i]t is universally acknowledged that an automatic stay of proceeding accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor." ***Lynch v. Johns-Manville Sales Corp.,*** 710 F.2d 1194, 1196 (6th Cir. 1983). This is based on the plain language of § 362 which expressly only applies to any "proceeding against the debtor." Therefore, § 362 does not authorize an extension of the stay to a third party. The ***Lynch*** Court also cited the legislative history of § 362, which demonstrates that the stay is to apply to "the debtor, and no other." ***Id.*** at 1197. Moreover, the automatic stay cannot be utilized to advance the interests of a third party, only the debtor and its creditors. ***Id***.

The *Lynch* Court refused to extend the automatic stay to a solvent third party that was a separate and distinct entity. *Id*.

In ***American Imaging Services, Inc. v. Eagle-Picher Industries, Inc.,*** 963 F.2d 855 (6th Cir. 1992), the Sixth Circuit did create a narrow exception. In ***Eagle-Picher,*** there was a pending state lawsuit against the Chief Financial Officer and General Counsel of the debtor. The debtor sought to extend the stay to that action so that the officers' attention would not be diverted from the bankruptcy action. The Court held that under the Bankruptcy Code's "necessary and appropriate" powers under 11 U.S.C. § 105(a) a Bankruptcy Court has the power to issue a preliminary injunction extending the stay to non-debtors only in unusual circumstances. *Id.* at 858. These unusual circumstances are only present when there is such an identity between the debtor and the third party that it may be said that the real party defendant is the debtor. *Id.* at 861. The Court found that if the state court action continued against its officers, the debtor would be forced to participate to protect its interests due to collateral estoppel and the diminishment of an insurance pool, which was an asset of the estate. *Id*. at 860.

None of these factors are present in the instant action. As discussed in more detail below, the City and the Court do not share any management personnel. They are completely separate entities, which the City admits in its Motion. The City has never intervened and has never had a need to intervene in any proceeding against 36th District Court. The City is not a party, and would not be a proper party, to any of the proceedings that it is seeking to stay. The ***Eagle-Picher*** Court distinguished the decision in ***Lynch***, supra, because the third parties in that case were "separate and distinct entities from the debtors" whereas in ***Eagle-Picher***, the parties

were the officials most necessary for the administration of the company's bankruptcy. *Eagle-Picher*, 963 F.2d at 862.

The City faces no diversion of key management personnel, it will not participate in discovery of any action against 36th District Court, and it is not a co-defendant in any pending action that may subject it to collateral estoppel or otherwise force the City to participate in 36th District Court's ongoing proceedings. At best, the City argues that it may have to pay the liabilities of 36th District Court.[5] This is not a proper rationale for extending the stay. In **Patton v. Bearden,** 8 F.3d 343 (6th Cir. 1993), the court held that the ability of a non-debtor third party to compel payment from the debtor is insufficient to extend the stay. In fact, such a rationale has been routinely and universally denied. See **Clemmer v. Alside Supply Center,** 178 B.R. 160 (Bankr.E.D. Tenn. 1995), **In re Sunbeam Securities**, 261 B.R. 534 (Bankr. S.D. Florida 2001), **Chicago Title Ins. v. Lerner,** 435 B.R. 732 (Bankr. S.D. Florida 2010), **Saleh**, 427 B.R. 415, supra. The City has not cited one case and the undersigned could not find a case where such a request has ever been granted in any court.

In **All Seasons Resorts, Inc. v. Milner**, 79 B.R. 901 (Bankr.C.D. Cal. 1987), the third party argued that it was entitled to indemnification from the debtor from a pending action and a stay of that action was warranted. The Court stated the obvious, given that the debtor was in bankruptcy, the third party would have to pay the judgment, the third party could then seek indemnification from the debtor and their claim would be treated like any pre-petition, unsecured claim.

---

[5] In so far that the City argues that claims against 36th District Court will have an effect on the City's bankruptcy, that argument is merely an argument to determine whether this Court has jurisdiction to hear the motion, not whether this Court should grant the motion. See. *In re Excel innovations, Inc.,* 502 F.3d 1086, 1096 (9th Cir. 2007)

## II. THE APPROPRIATE MEANS TO SEEK THE CITY'S REQUESTED RELIEF IS INJUNCTIVE RELIEF THROUGH AN ADVERSARY PROCEEDING.

In the only case cited in the City's Motion, *Eagle-Picher*, supra, the debtor sought to extend the automatic stay to third parties through the Bankruptcy Court's inherent equitable powers under § 105(a). Since third parties are explicitly denied access to § 362, which only applies to debtors, injunctive relief is the only means to seek such relief.[6] The *Eagle-Picher* Court found that in order to obtain such relief, the debtor much consider the traditional four factor test for injunctive relief, "(1) the likelihood of plaintiff's success on the merits, (2) whether plaintiff will suffer irreparable injury without the injunction, (3) the harm to others which will occur if the injunction is granted, and (4) whether the injunction would serve the public interest." *Id*. at 858. When a bankruptcy court enjoins an action under § 105(a) it must consider the four factor preliminary injunction standard and apply a standard of clear and convincing evidence. *In re National Century Fin. Ent. Inc.,* 423 F.3d 567, 579 (6th Cir. 2005). Pursuant to Fed. R. Bankr. P. 7001(7), a request for injunctive relief must be brought in an adversary proceeding. *In re Cincom iOutsource, Inc*. 398 B.R. 223, 227 (Bankr. S.D. Ohio 2008) (extending the stay to a non-debtor third party is not available through motion practice.)

In the Sixth Circuit, this is not a controversial issue. The Ninth Circuit has provided a detailed analysis of this test in *In re Excel Innovations, Inc.,* 502 F.3d 1086 (9th Cir. 2007). The Ninth Circuit came to the same conclusion that is well accepted in the Sixth Circuit and held that the above four factor test is required;

---

[6] A separate analysis is used to determine whether the claims against 36th District Court can become part of the plan in this action. The Sixth Circuit uses a seven factor test that will be relevant at that time which requires that the creditor of the third party has an opportunity to recover in full. *In re Dow Corning Corp*., 280 F.3d 648, 658 (6th Cir. 2002). Therefore, it is very unlikely that the monetary claims against 36th District Court will be subject to reduction or elimination in the bankruptcy proceeding.

> [w]e hold that the usual preliminary injunction standard applies to stays of proceedings against non-debtors under § 105(a). As the relevant House and Senate reports indicate, Congress intended that standard to apply to § 105(a) preliminary injunctions. Moreover, we have consistently held that the automatic stay does not apply to suits against non-debtors. The usual standard helps to ensure that stays would not be granted lightly.

*Id*. at 1094-1095. (Internal citations omitted).

Here, the City has sought injunctive relief but does not address the standard necessary to grant injunctive relief. The City does not argue that it satisfies any of the four factors. The likelihood of a successful reorganization is entirely unknown at this point. Since the City could deny any additional funds to 36th District Court and it has no involvement in 36th District Court's administration which would divert its attention from the bankruptcy, it would be impossible for it to argue that it would suffer any irreparable harm. The balance of the harms weighs overwhelmingly in favor of the employees of 36th District Court. The members of Local 3308 would not be able to challenge the illegally implemented pay cuts and alterations to their benefits that are having severe adverse consequences on the employees and their families. The members of Local 917 would not have the ability to challenge the 36th District Court's action of illegally removing their rights to collectively bargain. Those that were wrongfully terminated would continue to suffer from the adverse consequences of multi-year unemployment, including their personal bankruptcies, bill collectors and the adverse consequences to the health and welfare of their families. On the other hand, there is no foreseeable harm that the City faces since it can refuse to provide any additional funds or any funds at all to 36th District Court.[7] The public interest also weighs heavily in favor of denying the motion. The extension of

---

[7] The City also does not explain why 36th District Court cannot pay its debts over time within its currently appropriated funds.

the stay to 36th District Court permits it to continue to break the law and its contractual obligations with impunity without any oversight or safeguards of the bankruptcy process. Considering its history of flaunting the laws of this state and country, it would create a state entity that is not accountable for its actions in any proceeding.

The City argues that there is no need for an evidentiary hearing on this matter. However, it has presented no facts that tend to support any of the four factors. Certainly, Local 3308 and Local 917 could present the facts above, among others, to demonstrate that the four factors are not met. Local 917 and Local 3308 could also present additional facts in rebuttal to the City's arguments as to the four factors, if they had notice and an opportunity to respond to those arguments.

The City argues that if 36th District Court must pay appropriate judgments for its misdeeds, the City cannot pay these judgments. If the City cannot pay, the Court goes without proper funds to perform its judicial duties and the citizens of Detroit suffer. The analysis below demonstrates that this is not true because the State of Michigan has a Constitutional obligation to ensure that this does not occur.

### III. 36TH DISTRICT COURT IS NOT PART OF THE CITY; IT IS PART OF THE STATE GOVERNMENT.

The State is precluded from seeking the protections of Chapter 9 of the Bankruptcy Code. Extending the City of Detroit's stay to 36th District Court would be an end around that prohibition.

Michigan's Constitution establishes a unified state judicial system. The State's judicial power is vested; "exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish." Mich. Const. Art. VI § 1.

The Michigan Legislature created 36th District Court along with other district courts throughout the State. M.C.L. § 600.8121. For courts that the legislature may create, these courts still reside in the judicial branch of government and are given the judicial powers conferred by the Constitution. ***Judicial Attorneys Association v. State,*** 459 Mich. 291, 299-300 (1998). The judiciary is an independent department of the State and it derives its powers from the Constitution, not from the legislative branch or executive branch of government. ***Id***. at 299.

There is no doubt that 36th District Court is part of the State government. In fact, the Sixth Circuit Court of Appeals grants blanket sovereign immunity to all Michigan District Courts on the basis that they are part of the State and not part of municipal government. See ***Pucci v. Nineteenth District Court***, 628 F.3d 752 (2010). The Michigan Supreme Court has "general superintending control over all courts." Mich. Const. Art. VI § 4. The Michigan Supreme Court has held, "the fundamental and ultimate responsibility for all aspects of court administration, including operations and personnel matters within the trial courts, resides within the inherent authority of the judicial branch [of the State of Michigan]" ***Judicial Attorneys Association,*** 459 Mich. at 298.

The City does not deny that 36th District Court is a state entity but does not brief the implications of extending the stay to the State Judiciary.

IV. **THE OBLIGATION TO FUND THE COURTS, INLCUDING 36TH DISTRICT COURT, ORIGINATES WITH THE STATE, NOT THE CITY OF DETROIT.**

The City asserts that the City would have to pay all of the liabilities of 36th District Court. Absent a pending municipal bankruptcy action, this may be true. Given that 36th District Court would only become a creditor of the City and it cannot attempt to collect any funds from the City during the pendency of this bankruptcy action, the City can refuse to provide any funds to the Court. However, that does not mean that the Court would be without funding. The State of Michigan, just like the Federal Government, has a Constitutional obligation to adequately fund the Courts. If 36th District Court cannot obtain sufficient funds to carry out its Constitutional obligations, the State of Michigan must fund the Court. There is no threat that denying this Motion would result in the inability of the Court to fulfill its Constitutional role of dispatching justice.

Under the traditional separation of powers doctrine, the legislative branch controls the power of the purse. However, the power of purse is not absolute. Allocating sufficient funds to the judiciary in order for it to carry out its judicial powers is not within the legislature's discretion, "to that extent, is a part of the judicial power." *46th Circuit Trial Court v. County of Crawford*, 476 Mich. 131, 142 (2006). In order to carry out its constitutional powers, "the judiciary cannot be totally beholden to legislative determinations regarding its budgets." *Id.* at 143. A state court performs "a state function, not a local function. Funding of the state judicial system is a legislative function." *Grand Traverse County v. State,* 457 Mich. 457, 476 (1995). It

is the responsibility of the Michigan Legislature to ensure that the judiciary has sufficient funding to function serviceably as a co-equal branch of government. **46th Circuit,** 476 Mich. at 145.

In Michigan, the legislature has provided court funding in a hodgepodge manner. All of the funding for the Supreme Court and Court of Appeals is provided directly from the State Treasury. All of the salaries of the trial court judges are also provided by the State. Except for some limited means that the trial courts may have to raise money independently, the remainder of the trial court operations is typically funded by a local unit of government through a statutory scheme. In the case of 36th District Court, the funding unit is the City of Detroit. Funds from the City of Detroit are not available. The Michigan Supreme Court has been very clear that it is a state obligation to fund the courts which has been merely passed onto local funding units; "the expenses of justice are incurred for the benefit of the State and only charged against the [local funding units] in accordance with old usage, as a proper method of distributing the burden." **Grand Traverse,** 450 Mich. at 477.

The inherent power doctrine includes the power to compel the legislative branch to fund it; "the Judiciary must possess the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities." **46th Circuit,** 476 Mich. at 145. It is unconstitutional for the legislature to render a court inoperative by refusing to provide financial support. *Id*.

In its motion, the City claims that it would have to pay any of the liabilities of 36th District Court. This is not entirely true. Pursuant to the funding scheme the Michigan Legislature has

set out statutorily, that is true. However, if the City cannot pay due to the pending bankruptcy action that does not mean that the 36th District Court would be without funding.[8] The State is constitutionally obligated to properly fund the courts. The Legislature is forced to provide another source of funding for the court. If it refused, the court could compel it to provide appropriate funding. In fact, the inherent power to compel funds needs no legislative action, "[i]nherent power, when it is present, needs no statutory implementation." ***Employees and Judge of the Second Judicial District Court v. Hillsdale County,*** 423 Mich. 705, 761 (1985), (Williams concurring). This is the appropriate mechanism to address the lack of funding. Seeking to extend the bankruptcy protection of its local funding unit is not appropriate.

36th District Court should be a creditor in the bankruptcy. It has a claim that the City of Detroit is statutorily obligated to provide it sufficient funding to perform its mandated functions. However, merely because a branch of State Government claims that it will be a creditor of the City, it does not follow that it is entitled to the protections of bankruptcy.

Extending the stay to 36th District Court provides a great benefit to 36th District Court. It also provides a great benefit to the State in that it relieves the State of its Constitutional obligation to provide adequate funding to the Court. However and most relevantly, the stay provides no benefit to the debtor or its creditors. Therefore, extending the stay is inappropriate.

**Wherefore,** and for the reasons stated above, AFSCME Local 3308 and Local 917 respectfully request that this Court deny the City's Motion.

---

[8] 36th District Court is not listed as a creditor in this action insofar as the undersigned can determine. Any ability of the City to provide 36th District Court funds would be questionable from the point of view of other creditors.

Respectfully submitted,

**STEINBERG SHAPIRO & CLARK**

/s/ Tracy M. Clark
Tracy M. Clark (P60262)
Attorney for AFSCME Local 3308 and Local 917
25925 Telegraph Road, Suite 203
Southfield, MI 48033
(248) 352-4700
clark@steinbergshapiro.com

Dated: October 9, 2013