6.8.1(3).    such Holder or Holders have offered to the Contract Administrator satisfactory indemnity against the costs, expenses and liabilities to be incurred in compliance with such request;

6.8.1(4).    the Contract Administrator for 30 days after its receipt of such notice, request and offer of indemnity has failed to institute any such proceeding; and

6.8.1(5).    in the case of a written request made pursuant to **Section 6.8.1(2)** from the Holders of at least 25 percent in principal amount of the Outstanding Affected Certificates, no direction inconsistent with such written request has been given to the Contract Administrator during such 30-day period by the Holders of a greater percentage of the Holders of Outstanding Affected Certificates (for the avoidance of doubt, this paragraph does not apply when a written request has been made pursuant to **Section 6.8.1(2)** from Holders of at least 50 percent in principal amount of all Outstanding Certificates);

it being understood and intended that no one or more Holders of Certificates shall have any right in any manner to affect, disturb or prejudice the interest of the parties hereto or the rights of any other Holders of Certificates, or to obtain or to seek to obtain priority or preference over any other Holders or to enforce any right under any Service Contract, *except* in the manner herein provided and for the equal and ratable benefit of all Entitled Persons.

**Section 6.9.    Control by Majority**

*6.9.1.*    The Holders of a majority in principal amount of all Outstanding Certificates have the right to direct the time, method and place of conducting any proceeding for any remedy available to the Contract Administrator to exercise any power exercisable by the Contract Administrator (including any proceeding instituted following the delivery of notice pursuant to **Section 6.8.1(2)**); *provided* that such direction is not in conflict with any rule of law or this Agreement.

*6.9.2.*    Notwithstanding any other provision hereof, any Insurer not then in default under its Credit Insurance shall:

6.9.2(1).    be treated as the Holder of Outstanding Certificates equal to the principal amount of Certificates insured by it for the purposes of actions permitted to be taken by Certificateholders under **this Article** and for the purpose of giving all other consents, directions and waivers that Certificateholders may give; and

6.9.2(2).    control all actions that may be taken by any Specified Hedge Counterparty that is the beneficiary of such Credit Insurance, including for purposes of actions permitted to be taken by such Specified Hedge Counterparty under this Agreement and for the purposes of giving all other directions, consents and waivers that such Specified Hedge Counterparty may give.

**Section 6.10.    Actions by Beneficial Owners**

*6.10.1.* For the purpose of providing any consent, waiver or instruction to the Contract Administrator, **Holder** and *Certificateholder* includes a Person who provides the Contract Administrator an affidavit of beneficial ownership of a Certificate together with satisfactory indemnity against any loss, liability or expense to the Contract Administrator to the extent that it acts on the affidavit of beneficial ownership (including any consent, waiver or instruction given by a Person providing such affidavit and indemnity).

*6.10.2.* The principal amount of Outstanding Certificates owned by a Beneficial Owner meeting the requirements of **Section 6.10.1** shall be deemed held by such Beneficial Owner and *not* held by Certificateholders for the purposes of providing any consent, waiver or instruction to the Contract Administrator.

## Article VII — Concerning the Contract Administrator

### Section 7.1.    Certain Duties and Responsibilities.

*7.1.1.* *Except* during the continuance of an Event of Default:

7.1.1(1).    the Contract Administrator undertakes to perform such duties and only such duties as are specifically set forth in this Agreement, and no implied covenants or obligations shall be read into this Agreement against the Contract Administrator and no permissive power or authority availability to the Contract Administrator shall be considered a duty; and

7.1.1(2).    in the absence of bad faith on its part, the Contract Administrator may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates, documents, other instruments or opinions furnished to the Contract Administrator and conforming to the requirements of this Agreement or the Service Contract; *but* in the case of any such certificates, documents, other instruments or opinions which by any provision hereof or thereof are specifically required to be furnished to the Contract Administrator, the Contract Administrator is under a duty to examine the same to determine whether or not they conform to the requirements of this Agreement.

*7.1.2.* *If* an Event of Default occurs and is continuing, *then* the Contract Administrator shall exercise such of the rights and powers in respect of Funding Trust Receivables and use the same degree of care and skill in their exercise as a prudent corporate trustee would exercise or use under the circumstances.

*7.1.3.* No provision of this Agreement shall be construed to relieve the Contract Administrator from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, *except* that

7.1.3(1).    **this subsection** shall not be construed to limit the effect of **Section 7.1.1**.

7.1.3(2).    the Contract Administrator shall not be liable for any error of judgment made in good faith by an authorized officer of the Contract Administrator, *unless* it is proved that the Contract Administrator was negligent in ascertaining the pertinent facts;

7.1.3(3).    the Contract Administrator shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders of a majority in principal amount of all Outstanding Certificates relating to the time, method and place of conducting any proceeding for any remedy available to the Contract Administrator, or exercising any trust or power conferred upon the Contract Administrator, by or under this Agreement; and

7.1.3(4).    no provision of this Agreement shall require the Contract Administrator to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder or thereunder, or in the exercise of any of its rights or pow-

ers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

*7.1.4.* Whether or not therein expressly so provided, every provision of this Agreement relating to the conduct or affecting the liability of or affording protection to the Contract Administrator is subject to the provisions of this Article.

## Section 7.2.    Certain Rights of Contract Administrator.

*Except* as otherwise provided in **Section 7.1.1:**

7.2.1(1).    The Contract Administrator may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.

7.2.1(2).    Any request, direction or consent of a Corporation mentioned in this Agreement shall be sufficiently evidenced respectively by a Corporation Request, Corporation Order or Corporation Consent.

7.2.1(3).    Whenever in the administration of this Agreement, any Service Contract or any Stated Hedge the Contract Administrator shall deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Contract Administrator (unless other evidence be herein specifically prescribed) may, in the absence of bad faith on its part, rely upon a certificate of a representative of the particular Corporation.

7.2.1(4).    The Contract Administrator may consult with counsel, and the written advice of such counsel is full and complete authorization and protection in respect of any action taken, suffered or omitted by the Contract Administrator hereunder in good faith and in reliance thereon.

7.2.1(5).    The Contract Administrator is under no obligation to exercise any of the rights or powers vested in it by this Agreement at the request or direction of any of the Certificateholders pursuant to this Agreement, *unless* such Certificateholders shall have offered to the Contract Administrator reasonable security or indemnity against the costs, expenses and liabilities which might be incurred by it in compliance with such request or direction.

7.2.1(6).    The Contract Administrator shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, or other paper or document, *but* the Contract Administrator, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit.

7.2.1(7).    The Contract Administrator may execute any of its powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys and the Contract Administrator shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder.

7.2.1(8).    *Except* as provided in **Section 7.3**, the Contract Administrator shall have no duty to see to the recording, filing or registration of any instrument or document (in-

cluding financing or continuation statements or filing under tax or security laws) or any rerecording, refiling or re-registration.

7.2.1(9).    The Contract Administrator shall have the right at any time to seek instructions concerning the administration of the Service Contracts from any court of competent jurisdiction.

7.2.1(10).    The Contract Administrator shall not have any responsibility to examine or review and shall have no liability for the contents of any documents submitted to or delivered to any Certificateholder or any other Person in the nature of an official statement or offering circular, preliminary or final.

**Section 7.3.      Specific Duties of the Contract Administrator**

*Except* during an Event of Default or as required by applicable law, the duties of the Contract Administrator are limited to the following:

7.3.1(1).    deliver notice to the City to pay Hedge Payables pursuant to Section 7.02 of the respective Service Contract;

7.3.1(2).    continue the financing statements filed with respect to the Funding Trust Receivables and Hedge Payables;

7.3.1(3).    take such actions in the name and stead of either Corporation as may be required by **Section 5.4**;

7.3.1(4).    the specific duties set forth in **Article II** to receive Service Payments;

7.3.1(5).    the specific duties set forth in **Articles IV** and **VI**;

7.3.1(6).    notify the City of any realized loss resulting from the investment of Investable Funds, demand immediate payment of such loss and receive payment of such loss;

7.3.1(7).    pay to the City any realized gain from the investment of Investable Funds or otherwise apply such gain in accordance with **Section 7.04** of each **Service Contract**;

7.3.1(8).    perform such duties, if any, as may be required to be performed by the Contract Administrator in the Specific Terms of a Service Contract;

7.3.1(9).    the specific duties set forth in **Article X**;

7.3.1(10).   receive, recognize and give effect to a Notice of Transfer Event; and

7.3.1(11).   the specific duties set forth in **Article XII**.

**Section 7.4.      May Hold Certificates.**

The Contract Administrator, in its individual or any other capacity, may become the owner or pledgee of Certificates with the same rights it would have if it were not Contract Administrator.

**Section 7.5.    Money Held in Trust.**

Money held by the Contract Administrator in trust hereunder need not be segregated from other funds except to the extent required by law or by other provision of this Agreement. The Contract Administrator shall be under no liability for interest on any money received by it hereunder.

**Section 7.6.    Compensation and Reimbursement**

*7.6.1.* The Contract Administrator is entitled to payment or reimbursement:

7.6.1(1).    from time to time for reasonable compensation for all services rendered by it hereunder; and

7.6.1(2).    except as otherwise expressly provided herein, upon its request, for all reasonable expenses, disbursements and advances incurred or made by the Contract Administrator in accordance with any provision of this Agreement (including, without limitation, the reasonable compensation and the expenses and disbursements of its agents and counsel), except any such expense, disbursement or advance as may be attributable to the Contract Administrator's negligence, willful misconduct or bad faith.

*7.6.2.* The Contract Administrator is also entitled to indemnification for, and to be held harmless against, any loss, liability or expense incurred without negligence, willful misconduct or bad faith on its part, arising out of or in connection with the acceptance or administration of this Agreement or the exercise of it powers hereunder, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder.

*7.6.3.* The compensation, expenses and indemnification of the Contract Administrator hereunder shall constitute Contract Administrator Payments, a Component of Service Payments as provided in the Service Contracts.

**Section 7.7.    Lien of Contract Administrator**

The Contract Administrator shall not have any lien on any funds held by it under this Agreement.

**Section 7.8.    Corporate Contract Administrator Required; Eligibility.**

*7.8.1.* There shall at all times be a Contract Administrator hereunder which is a trust company or bank with trust powers organized under the laws of the United States of America or of any state of the United States with a combined capital and surplus of at least $50,000,000. *If* such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of such supervising or examining authority, *then* for the purposes of **this Section**, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published.

*7.8.2.* The Contract Administrator shall resign immediately in the manner and with the effect specified in this Article if it becomes ineligible under **this Section**.

**Section 7.9.    Replacement of Contract Administrator.**

*7.9.1.* No Vacancy.

No resignation or removal of the Contract Administrator and no appointment of a successor Contract Administrator pursuant to this Article shall be effective until the successor Contract Administrator accepts its appointment as provided in **this Section**.

*7.9.2.* Resignation.

The Contract Administrator may resign at any time, but such resignation shall become effective only in accordance with **Section 7.9.1**, above. A resigning Contract Administrator shall give notice of its resignation to each Insurer.

*7.9.3.* Removal by Certificateholders.

7.9.3(1). The Holders of a majority in principal amount of Outstanding Certificates may remove the Contract Administrator by so notifying the Contract Administrator.

7.9.3(2). If the Contract Administrator becomes ineligible under **Section 7.8**, any Certificateholder may petition a court of competent jurisdiction for the appointment of a successor.

*7.9.4.* Appointment of Successor.

7.9.4(1). The retiring Contract Administrator or the Corporations may appoint a successor at any time prior to the date on which a successor Contract Administrator takes office.

7.9.4(2). If a successor Contract Administrator does not take office within 45 days after the retiring Contract Administrator resigns or is removed, any Certificateholder may petition a court of competent jurisdiction for the appointment of a successor Contract Administrator.

7.9.4(3). Within one year after a successor Contract Administrator appointed by the Corporations or a court of competent jurisdiction takes office, the Holders of a majority in principal amount of Outstanding Certificates may appoint a successor Contract Administrator to replace such successor Contract Administrator.

*7.9.5.* Acceptance of Appointment.

7.9.5(1). A successor Contract Administrator shall deliver written acceptance of its appointment to the retiring Contract Administrator, each of the other parties hereto and to each Insurer. Thereupon the resignation or removal of the retiring Contract Administrator shall be effective, and the successor Contract Administrator shall have all the rights, powers and duties of the Contract Administrator under the Trust Agreement.

7.9.5(2). The successor Contract Administrator shall mail a notice of its succession to the Certificateholders.

7.9.5(3). Upon the appointment of a successor Contract Administrator becoming effective as provided in **this Section**, the retiring Contract Administrator shall promptly transfer all property held by it as Contract Administrator to the successor Contract Administrator.

**Section 7.10. Merger, Consolidation and Succession to Business.**

*7.10.1.* If the Contract Administrator consolidates, merges or converts into, or transfers all or substantially all its corporate trust business to, another corporation, the successor corpora-

tion without any further act shall be the successor Contract Administrator *if* such successor corporation is eligible under **Section 7.8**.

*7.10.2.* The successor Contract Administrator may adopt the authentication of Certificates authenticated by the predecessor Contract Administrator and deliver such Certificates with the same effect as if the successor Contract Administrator had authenticated such Certificates.

## Article VIII — Enforcement of Rights

### Section 8.1.    Effectiveness of Article

At any time of determination, **this Article** shall be in force and effective *if, but only if,* all Insurers are then in default under their respective Credit Insurance.

### Section 8.2.    Article Controlling

Whether or not herein expressly so provided, every provision of this Agreement relating to the enforcement of rights and remedies by any of the parties hereto, and their successors and assigns, is subject to the provisions of **this Article** notwithstanding anything in this Agreement to the contrary.

### Section 8.3.    Certain Definitions

*Affected Parties* means the Holders of Outstanding Certificates and Specified Hedge Counterparties affected by a particular Article 8 Event of Default; *affected Outstanding Certificates* and *affected Stated Hedges* have correlative meanings.

*Article 8 Event of Default* means any Event of Default described in Article VI or the City fails to pay any Hedge Payable as and when the same shall become due.

*Controlling Affected Parties* means on any particular date the Affected Parties in good standing having a majority of the Article 8 pro rata interests.

*Enforcement Committee* means the committee established pursuant to this Article.

*Enforcement Officer* means the same Person as the Person who is acting as Contract Administrator but in its separate capacity and not as Contract Administrator unless and until a successor Enforcement Officer is selected and thereafter *Enforcement Officer* means such successor.

### Section 8.4.    Determination of Article 8 *Pro Rata*

*8.4.1.* The **Combined Denominator** for determining Article 8 pro rata interests is the sum of (i) the total principal amount of all then affected Outstanding Certificates *and* (ii) the total of the maximum termination payments of the affected Specified Hedge Counterparties insured under the Credit Insurance.

*8.4.2.* When used with respect to affected Outstanding Certificates, *Article 8 pro rata* means a fraction, the numerator of which is the principal amount of the particular affected Outstanding Certificate and the denominator of which is the Combined Denominator.

*8.4.3.* When used with respect to affected Stated Hedges, *Article 8 pro rata* means a fraction, the numerator of which is the maximum termination payments of the particular affected

Specified Hedge Counterparty insured under the Credit Insurance and the <u>denominator</u> of which is the Combined Denominator.

*8.4.4.* Article 8 pro rata interests determined for the purposes of **Section 8.7.1(2)(i)**, shall be determined for all Certificateholders and all Specified Hedge Counterparties without consideration of whether or not they are affected by the particular Article 8 Event of Default.

### Section 8.5. Determination of *Good Standing*

An Affected Party is in **good standing** as of any particular date when it, or it and all others acting with it on a collective basis, have met all requirements by the Enforcement Officer for contributions to payments of its fees, expenses and indemnification.

### Section 8.6. Insurers

Any Insurer not in default under its Credit Insurance that is insuring Article 8 pro rata interests of an Affected Party shall be the only Affected Party with respect to those interests for all purposes of **this Article**.

### Section 8.7. Duration of *Exclusive Action Period*

*8.7.1.* An Exclusive Action Period commences upon the occurrence of an Article 8 Event of Default and ends on the date the earliest of the following occur with respect to the particular Article 8 Event of Default:

8.7.1(1). the Enforcement Officer fails to call the initial meeting of the Enforcement Committee within the time required by **Section 8.9.1**;

8.7.1(2). at the initial meeting of the Enforcement Committee,

(i) less than 25% of the Article 8 pro rata interests of the Certificateholders and Specified Hedge Counterparties are in good standing and are present or

(ii) the Enforcement Committee does not authorize the Enforcement Officer to take action;

8.7.1(3). at a subsequent meeting of the Enforcement Committee, the Enforcement Committee properly directs the Enforcement Officer to discontinue taking all action;

8.7.1(4). at the time the Enforcement Officer gives notice to all Affected Parties that it properly intends to take no further action;

8.7.1(5). the Enforcement Officer has been directed to take one or more enforcement actions by the Enforcement Committee and does not commence any such action within 30 days after being so directed;

8.7.1(6). a final decision or judgment is rendered that does not require the City to pay the full amount of the Funding Trust Receivables or the Hedge Payables for which the action was commenced;

8.7.1(7). a final judgment against the City is not satisfied in full by the end of the City's fiscal year following the fiscal year in which such final judgment is rendered.

*8.7.2.* As used in this Section, *a proper direction* of the Enforcement Committee is a direction not contrary to **Section 8.10**, and *a proper action* of the Enforcement Officer is an action that is not contrary to a proper direction of the Enforcement Committee.

*8.7.3.* As used in this Section, a *final decision* or *judgment* is a judgment or decision for which the time for the appeal thereof has expired, and no appeal thereof has been taken.

## Section 8.8.  Other Actions Stayed

*8.8.1.* Except by acting through the Enforcement Committee, no Affected Party may take any action to enforce its rights with respect to a particular Article 8 Event of Default until the Exclusive Action Period terminates with respect to such Article 8 Event of Default.

*8.8.2.* Except by acting through the Enforcement Committee, no Affected Party may take any action during the Exclusive Action Period that purports to bind the Enforcement Officer without the prior authorization of the Enforcement Committee.

*8.8.3.* The Contract Administrator shall not take any action under **Article VI** with respect to a particular Event of Default until the Exclusive Action Period terminates with respect to such Event of Default.

## Section 8.9.  Establishment of Enforcement Committee

*8.9.1.* Within 30 days after having knowledge of an Article 8 Event of Default whether in its capacity as Enforcement Officer or indirectly as Contract Administrator, the Enforcement Officer shall notify the parties hereto and call the initial meeting of the Enforcement Committee.

*8.9.2.* If the Enforcement Officer will be requiring indemnity or any fees and anticipated expenses to be provided in advance of taking any action, the Enforcement Officer shall indicate such requirements in its notice.

*8.9.3.* Each party hereto attending the initial meeting shall establish to the satisfaction of the Enforcement Officer that it is an Affected Party and its Article 8 pro rata interests.

## Section 8.10.  Meeting Required

No action or direction of the Enforcement Committee is effective for any purpose of **this Article** *unless* it is duly authorized at a meeting of the Enforcement Committee.

## Section 8.11.  Notice of Meeting of Enforcement Committee

*8.11.1.* Notice shall be given not less than ten Business Days before a meeting of the Enforcement Committee.

8.11.1(1).  Notice to the Holders of the affected Outstanding Certificates (including Beneficial Owners as provided in **Section 6.10**) shall be given as provided in **Section 6.7**, and all Beneficial Owners of such Outstanding Certificates shall be bound by any action properly taken at the meeting called in such notice.

8.11.1(2).  Notice to the affected Specified Hedge Counterparties shall be given to them at their respective notice addresses in this Agreement.

*8.11.2.* Notice may be waived before, at or within two Business Days after a meeting. Any Person entitled to notice of a meeting shall be conclusively presumed to have had proper

notice of such meeting *if* such Person attends such meeting other than for the sole purpose of objecting to the holding of such meeting.

*8.11.3.* Any defect in the giving of notice shall not invalidate such notice or any action taken at a meeting pursuant thereto if a majority of Article 8 pro rata interests of , respectively, the affected Holders of Outstanding Certificates and the affected Specified Hedge Counterparties received or waived proper notice.

*8.11.4.* Each notice shall specify the time and location of the particular meeting and provide a summary statement of the purpose of the meeting.

8.11.4(1). Each meeting shall be held at a location determined by the Enforcement Officer in the City of Detroit, Michigan, or at such other city agreed to by the Enforcement Officer and concurrent majorities of the Article 8 pro rata interest of the Holders of affected Outstanding Certificates and of the affected Specified Hedge Counterparties.

8.11.4(2). A summary statement of the purposes of such meeting is not required to state any particulars thereof or the actions to be proposed thereat.

## Section 8.12. Meetings of Enforcement Committee

*8.12.1.* No meeting of the Enforcement Committee shall be effective if it is not held pursuant to notice given in accordance with **Section 8.11**.

*8.12.2.* Only Affected Parties in good standing are permitted to vote at a meeting of the Enforcement Committee.

*8.12.3.* A single Affected Party in good standing present at a meeting of the Enforcement Committee constitutes a quorum for the purposes of that meeting.

*8.12.4.* The Enforcement Officer shall adjourn any meeting of the Enforcement Committee *sine die* at which a quorum is not present; *provided* that

8.12.4(1). the Enforcement Officer, at its election, may adjourn such meeting to a day certain not more than 10 days after the date of such meeting;

8.12.4(2). an adjourned meeting may only be adjourned *sine die*; and

8.12.4(3). an adjourned meeting is subject to the notice requirements of **Section 8.11**.

*8.12.5.* All actions at an Enforcement Committee meeting shall be taken by affirmative vote of a majority of the Article 8 pro rata interests of the Affected Parties present and voting at such meeting.

*8.12.6.* Meetings of the Enforcement Committee may be conducted by telephone so long as the participants in the meeting can concurrently speak to and hear each other.

*8.12.7.* Affected Parties in good standing may participate in a meeting in person or by representative or by telephone.

## Section 8.13. Enforcement Committee Actions Binding

All actions properly taken by the Enforcement Committee or by the Enforcement Officer are binding on every Certificateholder and Specified Hedge Counterparty.

### Section 8.14. Duties of Enforcement Officer

*Subject* to **Section 8.18**, the Enforcement Officer only has the duty to (i) call the initial meeting of the Enforcement Committee and (ii) follow proper directions of the Enforcement Committee.

### Section 8.15. Control by Enforcement Committee

*8.15.1.* The Enforcement Committee shall direct the time, method and place of conducting any proceeding for any remedy available to the Enforcement Officer to exercise any power exercisable by the Enforcement Officer.

*8.15.2.* Except for calling the initial meeting of the Enforcement Committee, the Enforcement Officer shall only take such actions under **this Article** that are directed by the Enforcement Committee.

### Section 8.16. Actions for Equal and Ratable Benefit

All actions of the Enforcement Officer shall be taken for the equal and ratable benefit of all Affected Parties in good standing.

### Section 8.17. Application of Money Collected

All money collected by the Enforcement Officer shall be applied in accordance with the Service Contract Priority Sections.

### Section 8.18. Certain Rights of the Enforcement Officer

The Enforcement Officer shall have the rights set forth in **this Section**.

*8.18.1.* The Enforcement Officer shall not be liable with respect to any action taken or omitted to be taken by it in accordance with any proper direction of the Enforcement Committee.

*8.18.2.* No provision of this Agreement shall require the Enforcement Officer to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers.

*8.18.3.* Whether or not expressly so provided, every provision of **this Article** relating to the conduct or affecting the liability of or affording protection to the Enforcement Officer is subject to the provisions of **this Section**.

*8.18.4.* The Enforcement Officer may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, instrument, opinion, report notice, request, direction, consent, order, bond, debenture or other paper or document believed by it to be genuine or to have been signed or presented by the proper party or parties.

*8.18.5.* Any direction of the Enforcement Committee shall be evidenced by a certificate of the officer of the Enforcement Committee charged with maintaining the official records of the Enforcement Committee stating in effect that the document purporting to be such direction is in fact a true and complete copy of a direction duly given by the Enforcement Committee at a meeting at which a quorum was present and acted throughout.

13-53846-swr Doc 3618-4 Filed 08/06/14 Entered 08/06/14 15:59:20 Page 11 of 46 311
19741 14.0009/461766
13-53846-tjt Doc 1140-7 Filed 10/10/13 Entered 10/10/13 14:54:54 Page 11 of 100

*8.18.6.* The Enforcement Officer (unless other evidence is herein specifically prescribed) may, in the absence of bad faith on its part, rely on a certificate of a representative of an Affected Party.

*8.18.7.* The Enforcement Officer may consult with counsel, and the written advice of such counsel is full and complete authorization and protection in respect of any action taken or suffered or omitted by the Enforcement Officer hereunder in good faith and in reliance thereon.

*8.18.8.* The Enforcement Officer shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, instrument, opinion, report notice, request, direction, consent, order, bond, debenture or other paper or document, *but* the Enforcement Officer, in its discretion, may make such further inquiry or investigation into such facts or matters as it sees fit.

*8.18.9.* The Enforcement Officer may execute any of its powers under **this Article** or perform any duties under **this Article** either directly or through agents or attorneys, and the Enforcement Officer shall not be responsible for any negligence on the part of any such agent or attorney appointed with due care by it under **this Article**.

## Section 8.19. Compensation and Reimbursement

*8.19.1.* The Enforcement Officer is entitled to payment or reimbursement:

8.19.1(1). from time to time for reasonable compensation for all services rendered by it hereunder; and

8.19.1(2). except as otherwise expressly provided herein, upon its request, for all reasonable expenses, disbursements and advances incurred or made by the Enforcement Officer in accordance with any provision of this Agreement (including, without limitation, the reasonable compensation and the expenses and disbursements of its agents and counsel), except any such expense, disbursement or advance as may be attributable to the Enforcement Officer's negligence, willful misconduct or bad faith.

*8.19.2.* The Enforcement Officer is also entitled to indemnification for, and to be held harmless against, any loss, liability or expense incurred without negligence, willful misconduct or bad faith on its part, arising out of or in connection with the acceptance or administration of this Agreement or the exercise of it powers hereunder, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder.

*8.19.3.* The compensation, expenses and indemnification of the Enforcement Officer hereunder shall be an Additional Service Payment under the Service Contracts.

## Section 8.20. Corporate Enforcement Officer Required; Eligibility.

*8.20.1.* There shall at all times be an Enforcement Officer hereunder which is a trust company or bank with trust powers organized under the laws of the United States of America or of any state of the United States with a combined capital and surplus of at least $50,000,000. *If* such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of such supervising or examining authority, *then* for the purposes of **this Section**, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published.

**8.20.2.** The Enforcement Officer shall resign immediately in the manner and with the effect specified in **this Article** if it becomes ineligible under **this Section**.

## Section 8.21.   Replacement of Enforcement Officer.

*8.21.1.* No Vacancy.

No resignation or removal of the Enforcement Officer and no appointment of a successor Enforcement Officer shall be effective until the successor Enforcement Officer accepts its appointment as provided in **this Section**.

*8.21.2.* Resignation.

8.21.2(1).   The Enforcement Officer may resign at any time but only for a permitted reason, and such resignation shall become effective only in accordance with **Section 8.21.1**, above.

8.21.2(2).   The Enforcement Officer may resign only if (i) it is no longer eligible under **Section 8.20.1** or (ii) it determines such resignation is necessary to resolve a conflict with its duties as Contract Administrator or Trustee.

*8.21.3.* Removal by Affected Parties.

8.21.3(1).   The Enforcement Committee may remove the Enforcement Officer by so notifying the Enforcement Officer and the parties hereto.

8.21.3(2).   If the Enforcement Officer becomes ineligible under **Section 8.20.1**, any Affected Party may petition a court of competent jurisdiction for the appointment of a successor.

*8.21.4.* Appointment of Successor.

8.21.4(1).   The Enforcement Committee has the power to appoint a successor Enforcement Officer, but if the Enforcement Committee fails to act within 30 days after the retiring Enforcement Committee resigns or is removed, the retiring Enforcement Officer or an Affected Party (whoever is first to act) may appoint a successor.

8.21.4(2).   If a successor Enforcement Officer does not take office within 45 days after the retiring Enforcement Officer resigns or is removed, any Controlling Affected Party may petition a court of competent jurisdiction for the appointment of a successor Enforcement Officer.

8.21.4(3).   Within one year after a successor Enforcement Officer appointed other than by the Enforcement Committee pursuant to **Section 8.21.4(1)** or **Section 8.21.4(2)** takes office, the Enforcement Committee may appoint a successor Enforcement Officer to replace such successor Enforcement Officer.

*8.21.5.* Acceptance of Appointment.

8.21.5(1).   A successor Enforcement Officer shall deliver written acceptance of its appointment to the retiring Enforcement Officer and to each of the other parties hereto. Thereupon the resignation or removal of the retiring Enforcement Officer shall be effective, and the successor Enforcement Officer shall have all the rights, powers and duties of the Enforcement Officer under **this Article**.

8.21.5(2). The successor Enforcement Officer shall mail a notice of its succession to all of the parties hereto.

8.21.5(3). Upon the appointment of a successor Enforcement Officer becoming effective as provided in **this Section**, the retiring Enforcement Officer shall promptly transfer all property held by it as Enforcement Officer to the successor Enforcement Officer.

### Section 8.22. Merger, Consolidation and Succession to Business.

*8.22.1.* If the Enforcement Officer consolidates, merges or converts into, or transfers all or substantially all its corporate trust business to, another corporation, the successor corporation without any further act shall be the successor Enforcement Officer *if* such successor corporation is eligible under **Section 8.20.1**. The successor Enforcement Officer may adopt the authentication of Certificates authenticated by the predecessor Enforcement Officer and deliver such Certificates with the same effect as if the successor Enforcement Officer had authenticated such Certificates.

### Section 8.23. Proof of Status

*8.23.1.* A Person (other than a Beneficial Owner) shall prove its status as an Affected Party by submitting an affidavit to the Enforcement Officer stating that such Person is a Certificateholder or a Specified Hedge Counterparty and stating such facts, sufficient in the reasonable judgment of the Enforcement Officer, as are necessary to show that it is an affected Certificateholder or Specified Hedge Counterparty.

*8.23.2.* A Beneficial Owner shall prove its status as an Affected Party by submitting an affidavit and indemnity to the Enforcement Officer meeting the requirements of **Section 6.10** (as if such requirements were in respect of the Enforcement Officer) and by including in such affidavit a statement of facts stating such facts, sufficient in the reasonable judgment of the Enforcement Officer, as are necessary to show that it is affected by the particular Article 8 Event of Default.

*8.23.3.* The principal amount of Outstanding Certificates owned by a Beneficial Owner meeting the requirements of **Section 8.23.2** shall be deemed held by such Beneficial Owner and *not* held by Certificateholders for the purposes of **this Article**.

### Article IX — Agreements Among the Parties.

### Section 9.1. Sharing Excess Payments Among the Parties

Each party hereto agrees with each other party hereto that if any such party receives payments in excess of or out of the order or priority established in the Service Contract Priority Sections, whether voluntary or involuntary, by realization upon security, through the exercise of any right of set-off or banker's lien (whether based on common law, statute, contract or otherwise) (excluding applications of funds pursuant to non-default contract rights), by counterclaim or cross action or by the enforcement of any right hereunder or under any of the Service Contracts, that any such amount shall be returned to the Contract Administrator for proper distribution in accordance with the amount, the order and priority as set forth in the Service Contract Priority Sections other than to the extent provided in **Section 4.8.2**.

## Section 9.2.    Independent Actions by the Parties

*Except* as otherwise provided in **Article VI** or **Article VIII**, nothing contained in this Agreement shall prohibit any Hedge Counterparty, the Funding Trust or any Certificateholders from exercising any rights, remedies or options it may have hereunder or under any Service Contract or at law or in equity, including, instituting legal action against the City, the Contract Administrator, any Corporation or any other party hereto to obtain a judgment or other legal process in respect of such Contract Payment, but any funds received from the City, the Contract Administrator, any Corporation or any other party hereto in connection with any recovery therefrom shall be subject to the terms of the Service Contract Priority Sections of the respective Service Contract; *provided* that, any action to enforce remedies with respect to Collateral may be taken only by the applicable Insurer, or if such Insurer is in default under its Credit Insurance, a party that has a Creditor Lien on such Collateral.

## Section 9.3.    Relation of Parties

*9.3.1.*  This Agreement is entered into solely for the purposes set forth herein, and, except as otherwise provided herein, no party assumes any responsibility to any other party hereto to advise such other party of information known to such other party regarding the financial condition of any other party or of any other circumstances bearing upon the risk of nonpayment of any Contract Payment.

*9.3.2.*  Each party specifically acknowledges and agrees that nothing contained in this Agreement is or is intended to be for the benefit of the City and nothing contained herein shall limit or in any way modify any of the obligations of the City to the parties.

## Section 9.4.    Acknowledgment of Documents

Each party hereto (i) expressly acknowledges the existence and validity of the Service Contracts and the Trust Agreement and that it has had an opportunity to review the Service Contracts and the Trust Agreement, (ii) agrees not to contest or challenge the validity of the Service Contracts and the Trust Agreement and (iii) agrees that the judicial or other determination of the invalidity of the Service Contracts and the Trust Agreement shall not affect the provisions of this Agreement.

## Section 9.5.    Notice of Certain Events

*9.5.1.*  The Contract Administrator agrees that, within one day after obtaining actual knowledge of the City failing to pay any amounts in respect of any Hedge Payable, it shall notify each other party hereto of such occurrence.

*9.5.2.*  The Contract Administrator shall give the other parties hereto a copy of any notice or other communication given by it to or received from any other party hereto or the City with respect to any Article 8 Event of Default (even though Article 8 may not be in effect at the time) or with respect to any other occurrence that would give any party hereto the right to exercise remedies under any such documents or this Agreement.

*9.5.3.*  Each party shall, within one Business Day of its taking any action described in **Section 9.2**, give each other party hereto notice of the taking of such action.

30

**Section 9.6.  Remedies Not Waived.**

No failure of a party hereto to perform any obligation or honor any agreement under this Agreement shall affect the obligations of the other parties under the Service Contracts or hereunder; *provided*, however, that the other parties hereto shall each have full right and power to enforce the obligations, covenants and agreements of each other party hereto directly against such other party by suit for specific performance or claims for damages or a combination of the foregoing.  In the event of any dispute between or among any of the parties hereto arising out of this Agreement, the prevailing party or parties shall be entitled to recover from the losing party or parties, all fees, costs and expenses, including, without limitation, attorneys' fees, incurred by such prevailing party or parties in connection with such dispute.

**Section 9.7.  Possession of Collateral.**

Each party hereto agrees that, if at any time such party possesses Collateral or a Creditor Lien thereon, such party holds such Collateral or Creditor Lien for the benefit of all the parties that have a Creditor Lien on such Collateral.

**Article X Concerning Each Insurer**

**Section 10.1.  Actions by Insurer**

An Insurer may exercise any power or right given it by this Agreement only if it is not then in default under its Credit Insurance.

**Section 10.2.  Party in Interest**

Each Insurer shall be included as a party in interest and as a party entitled to (i) notify either Corporation, the Contract Administrator or any applicable receiver of the occurrence of an Event of Default and (ii) request the Contract Administrator or receiver to intervene in judicial proceedings that affect the Certificates, the Stated Hedges or the security therefor, *subject* to the terms of this Agreement. The Contract Administrator is required to accept notice of an Event of Default  from such Insurer.

**Section 10.3.  Amendments; Notice to Rating Agencies**

Any amendment or supplement to this Agreement or either Service Contract shall be subject to the prior written consent of each Insurer.  Each Rating Agency shall receive notice of each amendment and a copy thereof at least 15 days in advance of its execution or adoption.  Each Insurer shall be provided with a full transcript of all proceedings relating to the execution of any such amendment or supplement.

**Section 10.4.  Reporting**

*10.4.1.* The Contract Administrator shall give each Insurer a copy of each Optional Redemption Notice it receives from a Corporation promptly upon the receipt thereof and, if known to the Contract Administrator, the CUSIP numbers of the Certificates affected thereby.  The same information shall be provided to both Insurers.

*10.4.2.* The Contract Administrator shall provide each Insurer with such additional information as the Insurer may reasonably request from time to time that is known to the Contract Administrator.

## Section 10.5.  Fees and Expenses

*10.5.1.* The Corporation shall pay or reimburse each Insurer for any and all charges, fees, costs and expenses that the Insurer may reasonably pay or incur in connection with the following:

10.5.1(1).  the administration, enforcement, defense or preservation of any rights or security hereunder or under any document contemplated hereby;

10.5.1(2).  the pursuit of any remedies hereunder or under any document contemplated hereby or otherwise afforded by law or equity,

10.5.1(3).  any amendment, waiver or other action with respect to or related to this Agreement or any document contemplated hereby whether or not executed or completed;

10.5.1(4).  the violation by either Corporation of any law, rule or regulation or any judgment, order or decree applicable to it;

10.5.1(5).  any advances or payments made by an Insurer to cure defaults of the Corporation hereunder or any document contemplated hereby; or

10.5.1(6).  any litigation or other dispute in connection with this Agreement, any document contemplated hereby or the transactions contemplated hereby or thereby, other than amounts resulting from the failure of an Insurer to honor its payment obligations under its respective Credit Insurance.

*10.5.2.* Each Insurer reserves the right to charge a reasonable fee as a condition to executing any amendment, waiver or consent proposed in respect of this Agreement or any document contemplated hereby.

*10.5.3.* The obligations of each Corporation to an Insurer shall survive discharge and termination of this Agreement or any document contemplated hereby.

*10.5.4.* Payments pursuant to this provision shall constitute an Additional Service Charge under each Service Contract payable as set forth in **Section 9.09** of each **Service Contract**.

## Article XI Miscellaneous

## Section 11.1.  Addresses for Notices.

All notices and other communications provided for hereunder shall be in writing unless otherwise stated herein mailed, sent or delivered:

11.1.1(1).  if to the City, at its address set forth in a Service Contract

11.1.1(2).  if to a Corporation, at its address set forth in the respective Service Contract

11.1.1(3).  if to the Contract Administrator, at
U.S. Bank National Association
535 Griswold, Suite 550
Detroit, Michigan 48226
Attention:  Susan T. Payne

11.1.1(4). if to any of the following to the extent that it is a <u>Rating Agency</u> at the time,

> Standard & Poor's Ratings Services
> 55 Water Street, 38th Floor
> New York, New York 10041
>
> Moody's Investors Service
> 99 Church Street
> New York, New York 10007
> Attention:  Public Finance Group
>
> Fitch Ratings
> 1 State Street Plaza
> New York, New York 10004
> Attention:  Municipal Structured Finance

11.1.1(5). if to Financial Guaranty Insurance Company at
> 125 Park Avenue
> New York, NY 10017
> Attention: Risk Management

11.1.1(6). if to XL Capital Assurance Inc. at
> 1221 Avenue of the Americas
> New York, NY 10020
> Attention: Surveillance

11.1.1(7). if to a Specified Hedge Counterparty, at its address shown opposite its signature on a signature page hereto,

or to such other address as such Person may specify to the other Person and shall be effective (i) if given by mail, 3 Business Days after such communication is deposited in the mails with first class postage prepaid or (ii) if given by any other means, when delivered at the address specified in or pursuant to this Section.

## Section 11.2.  Amendment

This Agreement may be amended only by written instrument signed by the parties hereto.

## Section 11.3.  No Waiver; Remedies.

No failure on the part of the Contract Administrator to exercise, and no delay in exercising, any right hereunder shall be a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other further exercise thereof or the exercise of any other right.

## Section 11.4.  Binding Obligation.

This Agreement is binding upon the parties hereto and their successors and assigns.

## Section 11.5.  Assignment.

No assignment by any party of its interests herein shall be valid.

### Section 11.6.  Third Party Beneficiaries

*11.6.1.* Each of the Third Party Beneficiaries not a signatory hereto may rely on the respective representations and warranties of each Corporation as if such representations and warranties were made to it.

*11.6.2.* The covenants of each Corporation made herein are also made for the benefit of each of such Third Party Beneficiaries, each of whom may enforce the same as if it were a party hereto.

*11.6.3.* Any amendment that diminishes the rights and remedies of any such Third Party Beneficiary without the prior written consent of such Third Party Beneficiary is acknowledged to have the effect in fact of hindering, delaying and defrauding such Third Party Beneficiary.

### Section 11.7.  Reliance on Representations and Warranties

Each party to this Agreement and each Third Party Beneficiary shall be conclusively presumed to have relied upon the representations and warranties contained herein, and such reliance shall survive any investigation made by such Person.

### Section 11.8.  Governing Law

The rights and obligations of the parties hereunder shall be governed by and construed in accordance with the law of the State of Michigan exclusive of its conflicts of law rules.

### Section 11.9.  Headings

Article and Section headings in the Service Contract are included herein for convenience of reference only and do not constitute a part of the Service Contract for any other purpose.

### Section 11.10. Integration

This Agreement is intended by the parties as the final, complete and exclusive statement of the transactions evidenced by this Agreement.  All prior contemporaneous promises, agreements and understandings relating to such transaction, whether oral or written, are deemed to be superseded by this Agreement, and no party is relying on any promise, agreement or understanding not set forth or referred to in this Agreement.

### Section 11.11. Counterparts

This Agreement may be executed in multiple counterparts, *but* all such counterparts taken together shall evidence by one and the same original.

### Article XII

### Section 12.1.  Supplements

*12.1.1.* Non-Tender Amount Supplement Agreement and the Tender Amount Supplement Agreement (each of which, a Supplement and together, the Supplements) appended hereto are made as part of the Agreement for all purposes, including **Article VII**.

### Section 12.2.  Duties of Contract Administrator

The Contract Administrator shall perform the duties set forth in each Supplement.

**In Witness Whereof**, the parties hereto have set their respective hands on and as of the date first written above.

*[Signatures appear on pages S-1 et seq.]*

*[Signature Page to **Contract Administration Agreement** among the **Detroit Retirement Systems Funding Trust 2006**, the **Detroit General Retirement System Service Corporation** and the **Detroit Police and Fire Retirement System Service Corporation**, severally and not jointly, **U.S. Bank National Association**, separately and not as Trustee of the Detroit Retirement Systems Funding Trust 2006, and the **Other Persons Parties Hereto**]*

**Detroit Retirement Systems Funding Trust 2006**
By **U.S. Bank National Association, Trustee**


By _____
Susan T. Payne
Vice President


**U.S. Bank National Association**,
separately and not as Trustee of the Detroit Retirement
Systems Funding Trust 2006


By _____
Susan T. Payne
Vice President

13-53846-swr  Doc 3618-4  Filed 08/06/24  Entered 08/06/24 13:09:20  Page 21 of 46    321
13-53846-tjt  Doc 1140-7  Filed 10/10/13  Entered 10/10/13 14:54:54  Page 21 of 100

S-11

*[Signature Page to Contract Administration Agreement between the Detroit Retirement Systems Funding Trust 2006, the Detroit General Retirement System Service Corporation and the Detroit Police and Fire Retirement System Service Corporation, severally and not jointly, and U.S. Bank National Association, separately and not as Trustee of the Detroit Retirement Systems Funding Trust 2006, and the Other Persons Parties Hereto]*

**Detroit General Retirement System Service Corporation**

By _____

Roger Short
President

**Detroit Police and Fire Retirement System Service Corporation**

By _____

Roger Short
President

*[Signature Page to **Contract Administration Agreement** among the **Detroit Retirement Systems Funding Trust 2006**, the **Detroit General Retirement System Service Corporation** and the **Detroit Police and Fire Retirement System Service Corporation**, severally and not jointly, **U.S. Bank National Association**, separately and not as Trustee of the Detroit Retirement Systems Funding Trust 2006, and the **Other Persons Parties Hereto**]*

**UBS AG**

By _____

John J. Magovern
Director & Counsel
Region Americas Legal
Fixed Income Section

By _____

Stephen A. Thatcher
Director and Counsel
Region Americas Legal
Fixed Income Section

UBS notice address is:

UBS Securities LLC
1285 Avenue of the Americas, 15th Floor
New York, New York 10019
Attention: Rhahime Bell
Facsimile: (212) 713-1303

and with a copy to:

UB AG, Stamford Branch
677 Washington Blvd.
Stamford, Connecticut 06912-0300
Attention: Legal Department
Facsimile: (203) 719-0680

S-3

*[Signature Page to **Contract Administration Agreement** among the **Detroit Retirement Systems Funding Trust 2006**, the **Detroit General Retirement System Service Corporation** and the **Detroit Police and Fire Retirement System Service Corporation**, severally and not jointly, **U.S. Bank National Association**, separately and not as Trustee of the Detroit Retirement Systems Funding Trust 2006, and the **Other Persons Parties Hereto**]*

### SBS Financial Products Company, LLC

By _____

John Carter
President

SBS Financial notice address is:

SBS Financial Products Company, LLC
100 Wall Street, 22ND Floor
New York, New York 10005
Attention: John Carter
Facsimile: (646) 576-9684

*[Signature Page to Contract Administration Agreement among the Detroit Retirement Systems Funding Trust 2006, the Detroit General Retirement System Service Corporation and the Detroit Police and Fire Retirement System Service Corporation, severally and not jointly, U.S. Bank National Association, separately and not as Trustee of the Detroit Retirement Systems Funding Trust 2006, and the Other Persons Parties Hereto]*

**Merrill Lynch Capital Services, Inc.**

By _James Nacos_____
James Nacos
Authorized Signatory

Merrill Lynch Capital notice address is:

Merrill Lynch Capital Services, Inc.
Merrill Lynch World Headquarters
4 World Financial Center, 18TH Floor
New York, New York 10080
Attention: Swap Group
Facsimile: (646) 805-0218

with a copy to:

GMI Counsel
Merrill Lynch World Headquarters
4 World Financial Center, 12TH Floor
New York, New York 10080
Attention: Swaps Legal
Facsimile: (212) 449-6993

Exhibit 4.5

## Funds and Accounts

| 12.2.1(1). Funds and Accounts | Component to be Credited[1] | Property Owners | Entitled Person(s) |
|---|---|---|---|
| 12.2.1(2). Interest Related Payments Fund | | | |
| Deficit Service Charges Account | Clause Second, Deficit Service Charges | Funding Trust | Distributed to Trustee as Deficit Interest Related Payments on the Applicable Distribution Date |
| Deficit Hedge Periodic Payables Account | Clause Second, Deficit Hedge Periodic Payables | the Corporations pro-rata as their interests may appear | Paid to the Specified Hedge Counterparties when due as Deficit Hedge Periodic Payables |
| Current Service Charges Account | Clause Third, Current Service Charges | Funding Trust | Distributed to Trustee as Interest Related Payments on the Applicable Distribution Date |
| Current Hedge Periodic Payables Account | Clause Third, Current Hedge Periodic Payables | the Corporations pro-rata as their interests may appear | Paid to the Specified Hedge Counterparties when due as Hedge Periodic Payables |
| 12.2.1(3). Principal Related Payments Fund | | | |
| 12.2.1(4). Deficit Principal Related Account | Clause Fourth | Funding Trust Distributed to Trustee as Deficit Principal Related Payments on the Applicable Distribution Date | |
| 12.2.1(5). Current Principal Related Account | Clause Fifth | Funding Trust Distributed to Trustee as Principal Related Payments and Sinking Fund Related Payments on the Applicable Distribution Date | |

---

[1] References to "Clauses" are to the Clauses set forth in Section 8.03 of the Service Contracts.

19741140058599031

11-Jun-06 17.58.56

Exhibit 4.5

12.2.1(6). Funds and Accounts

| Funds and Accounts | Component to be Credited | Property Owner(s) | Entitled Person(s) |
|---|---|---|---|

*Hedge Termination Payables Fund*

Deficit Hedge Termination Payables Account ............... Clause Sixth ............... the Corporations pro-rata as their interests may appear ............... Paid to such Specified Hedge Counterparties when due as Deficit Hedge Termination Payables

Current Hedge Termination Payables Account ........... Clause Seventh ........... the Corporations pro-rata as their interests may appear ........... Paid to Hedge Counterparties when due as Hedge Termination Payables

*Optional Prepayment Fund*

Current Optional Prepayments Account ................... Clause Eighth ................... Funding Trust ................... Distributed to Trustee as Redemption Related Payments on the Applicable Distribution Date

Exh. 4.5 – Page 1

11-Jun-06
17:58:56

**Exhibit 5**

**Trust Agreement (TA)**

# Trust Agreement

between the

## Detroit General Retirement System Service Corporation

and the

## Detroit Police and Fire Retirement System Service Corporation,

severally and not jointly,

and

## U. S Bank National Association,

as Trustee

### Dated June 12, 2006

establishing the
### Detroit Retirement Systems Funding Trust 2006

and providing for the issuance of

### Detroit Retirement Systems Funding Trust 2006
### Certificates of Participation Series 2006-A
and
### Detroit Retirement Systems Funding Trust 2006
### Certificates of Participation Series 2006-B

1974114.0058/401808
13-53846-swr    Doc 3001-5    Filed 08/24/13    Entered 08/24/13 20:59:20    Page 29 of 60    329
13-53846-tjt    Doc 1140-7    Filed 10/10/13    Entered 10/10/13 14:54:54    Page 29 of
100

## Table of Contents

**Section 1.** Incorporation by Reference ............................................................................ 1

**Section 2.** Definitions ...................................................................................................... 1

**Section 3.** Establishment of Funding Trust; Trust Estate .............................................. 2

**Section 4.** Establishment of Funding Costs .................................................................... 3

**Section 5.** Representation and Warranty of Each Corporation ....................................... 3

**Section 6.** The Initial Certificates .................................................................................. 3

**Section 7.** Miscellaneous. .............................................................................................. 4

**Section 8.** Insurance Claim Procedures ......................................................................... 4

**Signatures** ...................................................................................................S-1 et seq.
    **Detroit General Retirement System** and
    **Detroit Police and Fire Retirement System** ............................................................ S-1
    **U.S. Bank National Association** ............................................................................... S-2

**Exhibit 6.2 – Form of Initial Certificates**

This **Trust Agreement**, dated June 12, 2006, between the **Detroit General Retirement System Service Corporation** (the **GRS Corporation**) and the **Detroit Police and Fire Retirement System Service Corporation** (the **PFRS Corporation**), each a Michigan nonprofit corporation, severally and not jointly, and **U.S. Bank Trust National Association,** as trustee,

## W I T N E S S T H

**Whereas**, the GRS Corporation entered into the GRS Service Contract 2006, dated June 7, 2006 (the **GRS Service Contract**), with the City of Detroit (the **City**), and the PFRS Corporation entered into the PFRS Service Contract 2006, dated June 7, 2006 (the **PFRS Service Contract**), with the City;

**Whereas**, the **Trust Agreement** referred to in the first paragraph of this instrument (i) consists of this instrument (the **Specific Terms**) and the **General Terms**, hereafter defined and incorporated by reference herein and (ii) is further defined in the General Terms;

**Whereas**, the GRS Corporation is entering into this Trust Agreement in order to fund its Stated Funding Amount, which, as defined in GRS Service Contract, is equal to $352,696,000 (the **GRS Stated Funding Amount**);

**Whereas**, the PFRS Corporation is entering into this Trust Agreement in order to fund its Stated Funding Amount, which, as defined in PFRS Service Contract, is equal to $595,844,000 (the **PFRS Stated Funding Amount**); and

**Whereas**, this Trust Agreement provides for the issuance of certificates of participation representing undivided interests in certain of the respective Service Payments, as defined in the Service Contracts;

**Now, Therefore**, in consideration of the premises and the mutual promises contained herein, the parties hereto agree as follows:

**Section 1.     Incorporation by Reference**

**1.1.     General Terms**

The **General Terms and Conditions of Detroit Retirement Systems Funding Trusts**, dated as of May 1, 2005, and attached hereto (the **General Terms**) is incorporated by reference herein and made a part hereof as if set forth in full in this Trust Agreement *except* to the extent of any conflict with any particular terms of the General Terms may conflict with the terms of these Specific Terms.  Any such conflict shall be resolved in favor of the terms of these Specific Terms.

**Section 2.     Definitions**

**2.1.     Certain Definitions**

The following terms have the following respective meanings for the purposes of this Trust Agreement *unless* the context otherwise clearly otherwise requires.

**Additional Certificates** means one or more series of participation certificates established by supplement to this Trust Agreement.

**Certificates** means the Initial Certificates and any Additional Certificates.

1974114 0058/401808

13-53846-swr   Doc 3601-4   Filed 08/24/13   Entered 08/24/13 20:59:20   Page 31 of 60
13-53846-tjt   Doc 1140-7   Filed 10/10/13   Entered 10/10/13 14:54:54   Page 31 of 100

331

*Corporation* means either the GRS Corporation or the PFRS Corporation as the context may require.

*Funding Trust* means the Funding Trust established by this Trust Agreement.

*GRS Corporation* means the corporation defined in the first paragraph of these Specific Terms as the "GRS Corporation" *unless and until* a Person becomes the successor to the GRS Corporation pursuant to law; *thereafter*, *GRS Corporation* means such successor.

*Index Rate Interest* means an amount equal to Interest computed with respect to the Principal Amount of Outstanding Index Rate Certificates determined for the particular Index Rate Interest Period at the applicable rate in accordance with the Index Rate Supplement.

*Initial Certificates* means the certificates of participation of the series established in **Section 6**.

*PFRS Corporation* means the corporation defined in the first paragraph of these Specific Terms as the "PFRS Corporation" *unless and until* a Person becomes the successor to the PFRS Corporation pursuant to law; *thereafter*, *PFRS Corporation* means such successor.

*Service Contract* means either the GRS Service Contract or the PFRS Service Contract as the context may require.

*Stated Funding Amount* means the GRS Stated Funding Amount or the PFRS Stated Funding Amount as the context may require.

*Trustee* means the bank described in the first paragraph of these Specific Terms as "trustee" *unless and until* a successor as trustee is appointed pursuant to this Trust Agreement; *thereafter*, *Trustee* means such successor.

## 2.2.   Interpretation

2.2.1.   Unless otherwise provided, references to Sections with numbers less that 100 are references to the corresponding Sections of these Specific Terms.

2.2.2.   Unless otherwise provided, references to Sections with numbers 100 or greater are references to the corresponding Sections of the General Terms.

2.2.3.   References to Schedules and Exhibits refer to the corresponding schedules and exhibits attached hereto unless otherwise provided.

## Section 3.   Establishment of Funding Trust; Trust Estate

3.1.1.   There is hereby established a Funding Trust to be known as the *Detroit Retirement Systems Funding Trust 2006* for the purpose of funding the respective Stated Funding Amount of each Corporation on an aggregate, several and not joint, basis.

3.1.2.   The Trust Estate consists of:

- The Funding Trust Receivables arising under the GRS Service Contract

- The Funding Trust Receivables arising under the PFRS Service Contract

- All proceeds of the foregoing

## Section 4.  Establishment of Funding Costs

The Funding Costs that each Corporation shall incur in funding the portions set forth below of its respective Stated Funding Amount shall be determined in accordance with the Funding Rate Methodology set forth before each such portion.

**Funding Table**

| Funding Rate Methodology | Stated Funding Amount Portion | | Total Stated Funding Amount |
|---|---|---|---|
| | **GRS Corporation** | **PFRS Corporation** | |
| Fixed Rate .............. | $68,950,000 | $79,590,000 | $148,540,000 |
| Index Rate .............. | $283,746,000 | $516,254,000 | $800,000,000 |
| **Total** .................... | $352,696,000 | $595,844,000 | $948,540,000 |

## Section 5.  Representation and Warranty of Each Corporation

Each Corporation represents and warrants for itself that the Stated Funding Amount Portion set forth under its name in the table in **Section 4** (the *Funding Table*) opposite the respective Funding Rate Methodology is equal to the total amount of Scheduled Payments for the Service Charge Class for the corresponding Funding Rate Methodology in the Scheduled Payments Attachment to its Service Contract.

## Section 6.  The Initial Certificates

### 6.1.  Title

The general title of the Initial Certificates shall be as provided in **Section 303** of the General Terms with the further designation of this Funding Trust. The title of each Series of the Initial Certificates shall include the series designation provided in this Section so that the general title of the Certificates of each Series shall be *Detroit Retirement Systems Funding Trust 2006 Certificates of Participation Series* [*particular Series designation*].

### 6.2.  Establishment of Series; Form; Denominations

6.2.1.  Two Series of Initial Certificates are hereby established:

6.2.1(1)  One Series to be designated *Series 2006-A* (the *Fixed Rate Certificates*), and

6.2.1(2)  One Series of Initial Certificates is hereby established to be designated *Series 2006-B* (the *Index Rate Certificates*).

6.2.2.  The Initial Certificates shall be substantially in the form prescribed in **Exhibit 6.2.**

6.2.3.  The Capital Appreciation Certificates shall be in denominations of $5,000 of Maturity Value and any multiple thereof.

6.2.4.  The Fixed Rate Certificates shall be in denominations of $5,000 and any multiple thereof.

6.2.5. The Index Rate Certificates shall be in the denominations of $25,000 and multiples of $1,000 in excess thereof.

### 6.3. Accretions in Value

The Principal Amount of the Capital Appreciation Certificates of each respective maturity Date shall accrete in value in accordance with the Schedules of Accreted Values that are part of the Service Contracts.

### 6.4. Authorized Principal Amount

6.4.1. The Principal Amount of the Capital Appreciation Certificates on initial issuance shall equal the Total Stated Funding Amount set forth opposite Capital Appreciation in the Funding Table.

6.4.2. The Principal Amount of the Fixed Rate Certificates on initial issuance shall equal the Total Stated Funding Amount set forth opposite Fixed Rate in the Funding Table.

6.4.3. The Principal Amount of the Index Rate Certificates on initial issuance shall equal the Total Stated Funding Amount set forth opposite Index Rate in the Funding Table.

## Section 7.    Miscellaneous.

### 7.1. Notices.

All notices and other communications provided for hereunder shall be in writing unless otherwise stated herein mailed, sent or delivered

if to the GRS Corporation or the PFRS Corporation, at the respective Corporation's address set forth in its Service Contract.

if to the Trustee, at

> U.S. Bank National Association
> HO-MI-DTGR
> 535 Griswold, Suite 550
> Detroit, Michigan 48226

> Attention:    Trust Officer

or to such other address as such Person may specify to the other Person and shall be effective (i) if given by mail, 3 Business Days after such communication is deposited in the mails with first class postage prepaid or (ii) if given by any other means, when delivered at the address specified in or pursuant to this Section.

## Section 8.    Insurance Claim Procedures

### 8.1. FGIC

8.1.1. As used herein, *Financial Guaranty* means Financial Guaranty Insurance Company, a New York stock insurance company, or any successor thereto

8.1.2. Upon receipt by the Trustee of a Shortfall Notice from the Contract Administrator pursuant to **Section 4.2.3** of the **Contract Administration Agreement**, the Trustee shall immediately notify Financial Guaranty and U.S. Bank Trust National Association, New York, New

1974114.0058/401808                            4                                     11-Jun-06
                                                                                                      17:04:13
13-53846-swr    Doc 3061-5    Filed 08/24/13    Entered 08/24/13 20:59:20    Page 34 of    334
13-53846-tjt    Doc 1140-7    Filed 10/10/13    Entered 10/10/13 14:54:54    Page 34 of
                                          100

York or its successor as its Fiscal Agent (the **Fiscal Agent**) of the amount of such deficiency and the respective amounts thereof attributable to principal and interest. If, by said interest payment date, there has not been provided the amount of such deficiency, the Trustee shall simultaneously make available to Financial Guaranty and to the Fiscal Agent the registration books for the Certificates maintained by the Trustee. In addition:

8.1.2(1) The Trustee shall provide Financial Guaranty with a list of the Certificateholders entitled to receive principal or interest payments from Financial Guaranty under the terms of its Credit Insurance and shall make arrangements for Financial Guaranty and its Fiscal Agent (i) to mail checks or drafts to Certificateholders entitled to receive full or partial interest payments from Financial Guaranty and (ii) to pay principal of the Certificates surrendered to the Fiscal Agent by the Certificateholders entitled to receive full or partial principal payments from Financial Guaranty; and

8.1.2(2) The Trustee shall, at the time it makes the registration books available to Financial Guaranty pursuant to **Section 8.1.2(1)**, notify Certificateholders entitled to receive the payment of principal of or interest on the Certificates from Financial Guaranty:

8.1.2(2)(1) as to the fact of such entitlement,

8.1.2(2)(2) that Financial Guaranty will remit to them all or part of the interest payments coming due subject to the terms of its Credit Insurance,

8.1.2(2)(3) that, except as provided in **Section 8.1.3**, in the event that any Certificateholder is entitled to receive full payment of principal from Financial Guaranty, such Certificateholder must tender his Certificate with the instrument of transfer in the form provided on the Certificate executed in the name of Financial Guaranty, and

8.1.2(2)(4) that, *except* as provided in **Section 8.1.3**, in the event that such Certificateholder is entitled to receive partial payment of principal from Financial Guaranty, such Certificateholder must tender his Certificate for payment first to the Trustee, which shall note on such Certificate the portion of principal paid by the Trustee, and then, with an acceptable form of assignment executed in the name of Financial Guaranty, to the Fiscal Agent, which will then pay the unpaid portion of principal to the Certificateholder subject to the terms of its Credit Insurance.

8.1.3. In the event that the Trustee has written notice that any payment of principal of or interest on a Certificate has been recovered from a Certificateholder pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with the final, nonappealable order of a court having competent jurisdiction, the Trustee shall, at the time it provides notice to Financial Guaranty, notify all Certificateholders that in the event that any Certificateholder's payment is so recovered, such Certificateholder will be entitled to payment from Financial Guaranty to the extent of such recovery, and the Trustee shall furnish to Financial Guaranty its records evidencing the payments of principal of and interest on the Certificates which have been made by the Trustee and subsequently recovered from Certificateholders, and the dates on which such payments were made.

1974114.0058/401808
5
13-53846-swr   Doc 301-5-4   Filed 08/2/4/13   Entered 08/2/4/13 20:59:52 0   Page 35 of   335
13-53846-tjt   Doc 1140-7   Filed 10/10/13   Entered 10/10/13 14:54:54   Page 35 of
100

8.1.4. Financial Guaranty shall, to the extent it makes payment of principal of or interest on the Certificates, become subrogated to the rights of the recipients of such payments in accordance with the terms of its Credit Insurance and, to evidence such subrogation:

8.1.4(1) in the case of subrogation as to claims for past due interest, the Trustee shall note Financial Guaranty's rights as subrogee on the registration books maintained by the Trustee upon receipt from Financial Guaranty of proof of the payment of interest thereon to the Certificateholders of such Certificates and

8.1.4(2) in the case of subrogation as to claims for past due principal, the Trustee shall note Financial Guaranty's rights as subrogee on the registration books for the Certificates maintained by the Trustee upon receipt of proof of the payment of principal thereof to the Certificateholders of such Certificates. Notwithstanding anything in this authorizing document or the Certificates to the contrary, the Trustee shall make payment of such past due interest and past due principal directly to Financial Guaranty to the extent that Financial Guaranty is a subrogee with respect thereto.

## 8.2. XLCA

8.2.1. As used herein, *XLCA* means XL Capital Assurance Inc., a New York stock insurance company, or any successor thereto.

8.2.2. Upon receipt by the Trustee of a Shortfall Notice from the Contract Administrator pursuant to **Section 4.2.3** of the **Contract Administration Agreement**, the Trustee shall send immediate Notice to XLCA and its designated agent (if any) of the amount of such deficiency and the respective amounts thereof attributable to principal and interest, together with a certification in form and substance satisfactory to XLCA as to the Trustee's right to receive payments under the Credit Insurance. If, by said interest payment date, there has not been provided the amount of such deficiency, the Trustee shall simultaneously make available to XLCA the registration books for the Certificates maintained by the Trustee.

For the purposes of the preceding paragraph, *Notice* means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from the Trustee to XLCA, which notice shall specify (a) the name of the entity making the claim, (b) the policy number, (c) the claimed amount and (d) the date such claimed amount will become Due for Payment. *Due for Payment*, when referring to the principal of the Certificates, means when the stated maturity date or mandatory redemption date for the application of a required sinking fund installment has been reached and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by application of required sinking fund installments), acceleration or other advancement of maturity, unless XLCA shall elect, in its sole discretion, to pay such principal due upon such acceleration; and when referring to interest on the Certificates, means when the stated date for payment of interest has been reached. In addition:

8.2.2(1) The Trustee shall provide XLCA with a list of the Certificateholders entitled to receive principal or interest payments from XLCA under the terms of its Credit Insurance and shall make arrangements for XLCA (i) to mail checks or drafts to Certificateholders entitled to receive full or partial interest payments from XLCA and (ii) to pay principal of the Certificates surrendered to XLCA by the Certificateholders entitled to receive full or partial principal payments from XLCA; and

8.2.2(2)  The Trustee shall, at the time it makes the registration books available to XLCA pursuant to **Section 8.2.2(1)**, notify Certificateholders entitled to receive the payment of principal of or interest on the Certificates from XLCA (i) as to the fact of such entitlement, (ii) that XLCA will remit to them all or part of the interest payments coming due subject to the terms of its Credit Insurance, (iii) that, except as provided in **Section 8.2.3**, in the event that any Certificateholder is entitled to receive full payment of principal from XLCA, such Certificateholder must tender his Certificate with the instrument of transfer in the form provided on the Certificate executed in the name of XLCA, and (iv) that, except as provided in **Section 8.2.3**, in the event that such Certificateholder is entitled to receive partial payment of principal from XLCA, such Certificateholder must tender his Certificate for payment first to the Trustee, which shall note on such Certificate the portion of principal paid by the Trustee, and then, with an acceptable form of assignment executed in the name of XLCA, to XLCA, which will then pay the unpaid portion of principal to the Certificateholder subject to the terms of its Credit Insurance.

8.2.3.  In the event that the Trustee has written notice that any payment of principal of or interest on a Certificate has been recovered from a Certificateholder pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with the final, nonappealable order of a court having competent jurisdiction, the Trustee shall, at the time it provides notice to XLCA, notify all Certificateholders that in the event that any Certificateholder's payment is so recovered, such Certificateholder will be entitled to payment from XLCA to the extent of such recovery, and the Trustee shall furnish to XLCA its records evidencing the payments of principal of and interest on the Certificates which have been made by the Trustee and subsequently recovered from Certificateholders, and the dates on which such payments were made.

8.2.4.  XLCA shall, to the extent it makes payment of principal of or interest on the Certificates, become subrogated to the rights of the recipients of such payments in accordance with the terms of its Credit Insurance and, to evidence such subrogation, (i) in the case of subrogation as to claims for past due interest, the Trustee shall note XLCA's rights as subrogee on the registration books maintained by the Trustee upon receipt from XLCA of proof of the payment of interest thereon to the Certificateholders of such Certificates and (ii) in the case of subrogation as to claims for past due principal, the Trustee shall note XLCA's rights as subrogee on the registration books for the Certificates maintained by the Trustee upon receipt of proof of the payment of principal thereof to the Certificateholders of such Certificates.  Notwithstanding anything in this authorizing document or the Certificates to the contrary, the Trustee shall make payment of such past due interest and past due principal directly to XLCA to the extent that XLCA is a subrogee with respect thereto.

Upon payment of a claim under the Credit Insurance, the Trustee shall establish a separate special purpose trust account for the benefit of holders of Certificates referred to herein as the "Policy Payments Account" and over which the Trustee shall have exclusive control and sole right of withdrawal.  The Trustee shall receive any amount paid under the Credit Insurance in trust on behalf of holders of Certificates and shall deposit any such amount in the Policy Payments Account and distribute such amount only for purposes of making the payments for which a claim was made.  Such amounts shall be disbursed by the Trustee to holders of Certificates in the same manner as principal and interest payments are to be made with respect to the Certificates under the sections hereof regarding payment of Certificates.  It shall not be

necessary for such payments to be made by checks or wire transfers separate from the check or wire transfer used to pay debt service with other funds available to make such payments.

Funds held in the Policy Payments Account shall not be invested by the Trustee and may not be applied to satisfy any costs, expenses or liabilities of the Trustee.

Any funds remaining in the Policy Payments Account following a Certificate payment date shall promptly be remitted to XLCA.

**In Witness Whereof,** the parties hereto have set their respective hands on the date first set forth above.

*[Signatures appear on pages S-1 et seq.]*

1974114.0058/401808

8

11-Jun-06
17:04:13

13-53846-tjt    Doc 1140-7    Filed 10/10/13    Entered 10/10/13 14:54:54    Page 38 of
100

338

*[Signature Page to Trust Agreement between the **Detroit General Retirement System Service Corporation** and the **Detroit Police and Fire Retirement System Service Corporation**, severally and not Jointly, and **U.S. Bank National Association**, as Trustee, establishing the **Detroit Retirement Systems Funding Trust 2006**]*

**Detroit General Retirement System Service Corporation**

By _____

Roger Short
President

**Detroit Police and Fire Retirement System Service Corporation**

By _____

Roger Short
President

*[Signature Page to*
**Trust Agreement** *between the*
**Detroit General Retirement System**
**Service Corporation** *and the* **Detroit**
**Police and Fire Retirement System**
**Service Corporation**, *severally and not*
*jointly, and* **U.S. Bank National Association**,
 *as Trustee, establishing the* **Detroit**
**Retirement Systems Funding Trust 2006**]

**U.S. Bank National Association**

By _____
　　　　　　　Susan T. Payne
　　　　　　　Vice President

1974114.0058/401808　　　　　　　S-2　　　　　　　12-Jun-06
09:14:54
13-53846-swr　Doc 3616-4　Filed 03/06/14　Entered 03/06/14 13:59:20　Page 340 of 60　　340
13-53846-tjt　Doc 1140-7　Filed 10/10/13　Entered 10/10/13 14:54:54　Page 40 of
100

**Exhibit 6.2**

**Form of Initial Certificates**

The Initial Certificates shall be in the following form and tenor with such changes as are appropriate for the particular Funding Rate Methodology or are otherwise approved by the Person executing the same on behalf of the funding Trust, such signature to be conclusive evidence of such approval.

1974114.0058/401808

Exh. 6.2-Page 1

11-Jun-06
17:04:18

13-53846-tjt    Doc 1140-7    Filed 10/10/13    Entered 10/10/13 14:54:54    Page 41 of 100

341

NOTICE: Unless this certificate is presented by an authorized representative of The Depository Trust Company, a New York corporation (*DTC*) to the Detroit Retirement Systems Funding Trust 2006 or its agent for registration of transfer, exchange or payment, and any Certificate issued is registered in the name of Cede & Co. or to such other name as requested by an authorized representative of DTC (and any payment is made to Cede & Co. or to such other entity as is requested by an authorized representative of DTC), **any Transfer, Pledge or Other Use Hereof for Value or Otherwise by or to any Person is Wrongful** inasmuch as the registered holder hereof, Cede & Co., has an interest herein.

## R-1

## Detroit Retirement Systems Funding Trust 2006
## Certificates of Participation Series 2006-A

| FUNDING RATE (*INTEREST RATE*) PER ANNUM | PRINCIPAL PAYMENT DATE (*MATURITY DATE*) | CUSIP | ISIN | EUROCLEAR AND CLEARSTREAM COMMON CODE |
|---|---|---|---|---|
| 5.989% | JUNE 15, 2035 | 251228AA0 | US251228AA03 | 025779533 |

ORIGINAL ISSUE DATE: JUNE 12, 2006

REGISTERED HOLDER: CEDE & CO.

DENOMINATION (*PRINCIPAL*):　　**ONE HUNDRED FORTY EIGHT MILLION FIVE HUNDRED FORTY THOUSAND DOLLARS ($148,540,000 U.S.)**

　　　　**This is to Certify that** the Registered Holder, or registered assigns, is the registered owner of this certificate, which evidences a beneficial ownership interest in the trust estate (the *Trust Estate*) described in the Trust Agreement, dated June 12, 2006 (the *Trust Agreement*), between the below identified Service Corporations, severally and not jointly, and U.S. Bank National Association, as trustee (such trustee and any successors as trustee, the *Trustee*).

　　　　This certificate is the only certificate of a series of certificates (the *Series A Certificates*) issued by the Detroit Retirement Systems Funding Trust 2006 created pursuant to the Trust Agreement (the *Funding Trust*), each evidencing a beneficial ownership interest in the portions of the Trust Estate attributable to such certificates and which, together with the Detroit Retirement Systems Funding Trust 2006 Certificates of Participation Series 2006-B (the *Series B Certificates* and together with the Series A Certificates, the *Certificates* and each certificate of the Certificates, a *Certificate*), represent the entire beneficial ownership interests in the Trust Estate.

　　　　The Trust Estate consists of rights to receive certain payments (*Funding Trust Receivables* as defined in the Trust Agreement) made by the City of Detroit, Michigan (the *City*) pursuant to the Service Contract, dated June 7, 2006 (a *Service Contract*), between the City and the Detroit General Retirement System Service Corporation (a *Service Corporation*) and the Service Contract, dated June 7, 2006 (also a *Service Contract*), between the City and the Detroit Police and Fire Retirement System Service Corporation (also a *Service Corporation* and together

Page 1 of 10

with the other Service Corporation, the **Service Corporations**). U.S. Bank National Association, as contract administrator (such contract administrator and any successor thereto, the **Contract Administrator**) and not as Trustee, receives the payments of the Funding Trust Receivables when paid by the City, as the agent of the Funding Trust pursuant to the Contract Administration Agreement, dated June 12, 2006, among the Contract Administrator, the Funding Trust, the Service Corporations and certain other parties (the **Contract Administration Agreement**).

Capitalized terms not defined herein and defined in the Trust Agreement, the Contract Administration Agreement or either of the Service Contracts are used herein as therein defined.

The Registered Holder of this certificate is entitled to receive, subject to the terms of the Service Contracts, the Contract Administration Agreement and the Trust Agreement, in lawful money of the United States of America: (i) on the Maturity Date stated above, a portion of the Scheduled Payments coming due on that date equal to the Principal amount stated above, unless earlier redeemed as provided below, and (ii) a portion of the Service Charges (i.e., **Interest** on this certificate), payable on December 15, 2006 and semiannually thereafter (each an **Interest Payment Date**), from the Original Issue Date stated above, or the most recent date to which Interest has been paid, to (but not including) the next Interest Payment Date, computed as the cost of capital of this certificate by multiplying the outstanding Principal amount of this certificate by the Interest Rate per annum stated above. Interest on this certificate shall be computed on the basis of a 360-day year comprised of twelve 30-day months.

So long as the Registered Holder is Cede & Co., or any other nominee of DTC, distributions of Principal and premium, if any, payable upon maturity or earlier redemption of this certificate will be paid by the Trustee by wire. Distributions to any other Registered Holder will be paid by check or draft, mailed, with respect to distributions of Interest, to the Registered Owner shown in the Certificate registry kept by the Trustee at the close of business on the 15th day (whether or not a business day) preceding the respective Interest Payment Date (a **Regular Record Date**) and, with respect to payment of Principal and premium, if any, upon presentation and surrender of this certificate at the designated office of the Trustee.

Subject in all respects to the foregoing, the Trust Agreement, Service Contracts and Contract Administration Agreement provide for allocation, computation, distribution and payments from the Trust Estate to the Registered Holder and all other registered owners of the Certificates in accordance with their relative Percentage Interests in the event that the Trustee has received less than all of the Funding Trust Receivables payable on any date by the City under the Service Contracts, generally described as follows.

On each Interest Payment Date (ending on the Maturity Date set forth above) amounts are payable as Interest on this certificate from amounts the Trustee has received from the Contract Administrator as an Interest Related Payment for such Interest Payment Date, computed as stated above, provided that such Interest Related Payment is sufficient to pay Interest on all outstanding Certificates, computed in accordance with their respective terms on the aggregate outstanding Principal amounts of all outstanding Certificates. Such Interest is payable to the respective Record Holders as of the particular Regular Record Date immediately prior to such Interest Payment Date.

13-53846-swr   Doc 1140-7   Filed 10/10/13   Entered 10/10/13 14:54:54   Page 43 of   343
100

If such Interest Related Payment is not sufficient to pay all Interest on the Certificates in full on such Interest Payment Date, such Interest Related Payment shall be paid, to the extent thereof, as Interest on this certificate in an amount equal to such Interest Related Payment multiplied by a fraction, the underlineunderline numerator of which is the amount that would have been paid as Interest on this certificate if such Interest Related Payment had been sufficient to pay Interest on all Certificates on such Interest Payment Date and the denominator of which is the aggregate amount that would have been paid as Interest on all Certificates if such Interest Related Payment had been sufficient to pay Interest on all Certificates on such Interest Payment Date. A portion of any Deficit Interest Related Payment received by the Trustee from the Contract Administrator shall be payable on this certificate in accordance with a Special Record Date established by the Trustee in accordance with the Trust Agreement, in an amount equal to such Deficit Interest Related Payment multiplied by a fraction, the numerator of which is the amount of the unpaid Interest on this certificate and the denominator of which is the aggregate amount of the unpaid Interest on all Certificates.

Any principal of any particular Certificate shall be reduced by any amount previously paid as principal or Sinking Fund Installments on such Certificate from a Sinking Fund Related Payment or a Redemption Related Payment (excluding any amount representing a prepayment premium) (such principal to the extent not so reduced *outstanding Principal*).

Outstanding Principal of this certificate is payable on the Maturity Date or the Sinking Fund Installment Date (if any) to the Registered Holder hereof if the Trustee has received a Principal Related Payment or Sinking Fund Related Payment from the Contract Administrator for such Maturity Date or Sinking Fund Installment Date sufficient to pay outstanding Principal and Sinking Fund Installments of all Certificates payable on that date.

If such Principal Related Payment or Sinking Fund Related Payment is not sufficient to pay in full all Principal and Sinking Fund Installments due on the outstanding Certificates on such date, a portion of such Principal Related Payment or Sinking Fund Related Payments shall be paid, to the extent thereof, to reduce the outstanding Principal of this certificate in an amount equal to such Principal Related Payment or Sinking Fund Related Payment multiplied by a fraction, the numerator of which is the amount of the Principal or Sinking Fund Installment of this certificate payable on such date and the denominator of which is the aggregate amount of the Principal and Sinking Fund Installments of all Certificates payable on such date. A portion of any Deficit Principal Related Payment received by the Trustee from the Contract Administrator shall be payable on this certificate in accordance with a Special Record Date established by the Trustee in accordance with the Trust Agreement in an amount equal to such Deficit Principal Related Payment multiplied by a fraction, the numerator of which is the amount of the due and unpaid Principal and Sinking Fund Installments on this Certificate and the denominator of which is the aggregate amount of the due and unpaid Principal and Sinking Fund Installments on all Certificates.

Deficit Principal Related Payments representing Principal or Sinking Fund Installments not paid in full on the Maturity Date or applicable Sinking Fund Installment Date (if any) will be paid by the Trustee from any Service Payments thereafter received by the Contract Administrator and available for such purpose in accordance with the Service Contracts, the Contract Administration Agreement and the Trust Agreement.

13-53846-swr    Doc 3616-4  Filed 03/06/14  Entered 03/06/14 13:57:36  Page 74 of 60    344
13-53846-tjt    Doc 1140-7  Filed 10/10/13  Entered 10/10/13 14:54:54  Page 44 of
100

The Service Contracts provide for other payments to be made on a parity with or prior to Interest and Principal, and those other payments may result in either Interest or Principal not being timely paid in full. Reference is made to the Service Contracts for a statement of the applicable priorities of payments from Service Payments.

## Mandatory Sinking Fund Redemption

All Series A Certificates maturing on June 15, 2035 are subject to *pro rata* mandatory redemption in part prior to maturity, at a redemption price equal to par (100% of the principal amount to be redeemed), together with accrued interest to the redemption date, on June 15 of each of the years, and in the respective amounts set forth in Schedule 3 to the Service Contractss, except that the principal amount of the Series A Certificates to be redeemed on each such redemption date will be reduced by a *pro rata* portion of the principal amount of any Series A Certificate that has been purchased by the Trustee and canceled by the Trustee, or redeemed as described below under "Optional Redemption with Make-Whole Premium," at least 45 days before the redemption date. Mandatory Redemption from Sinking Fund Related Payments correspondingly reduces Principal payable on the Maturity Date.

## Optional Redemption with Make-Whole Premium

The Series A Certificates are subject to optional redemption prior to maturity from Scheduled Payments prepaid by the City, in whole or in part on any date, at a redemption price equal to the greater of (i) 100% of the principal amount of the Series A Certificates to be redeemed, or (ii) the sum of the present values of the remaining scheduled payments of Principal and Interest on the Series A Certificates to be redeemed (exclusive of interest accrued to the date fixed for redemption) discounted to the date of redemption on a semiannual basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Rate (defined below) plus 12.5 basis points, plus in each case accrued and unpaid Interest on the Series A Certificates being redeemed to the date fixed for redemption.

For the purpose of determining the Treasury Rate, the following definitions apply:

**Treasury Rate** means, with respect to any redemption date for a particular Series A Certificate, the rate per annum, expressed as a percentage of the principal amount, equal to the semiannual equivalent yield to maturity or interpolated maturity of the Comparable Treasury Issue, assuming that the Comparable Treasury Issue is purchased on the redemption date for a price equal to the Comparable Treasury Price, as calculated by the Designated Treasury Dealer.

**Comparable Treasury Issue** means, with respect to any redemption date for a particular Series A Certificate, the U. S. Treasury security or securities selected by the Designated Treasury Dealer which has an actual or interpolated maturity comparable to the remaining average life of the Series A Certificate to be redeemed, and that would be utilized in accordance with customary financial practice in pricing new issues of debt securities of comparable maturity to the remaining average life of the Series A Certificate to be redeemed.

**Comparable Treasury Price** means, with respect to any redemption date for a particular Series A

**Designated Treasury Dealer** means one of the Reference Treasury Dealers designated by the Contract Administrator.

**Reference Treasury Dealer** means UBS Securities LLC or its successor, and four other firms, selected by the Contract Administrator from time to time, that are primary U.S. Government securities dealers in the City of New York (each a **Primary Treasury Dealer**); provided, however, that if any of them ceases to be a Primary Treasury Dealer, the Contract Administrator will substitute another Primary Treasury Dealer.

**Reference Treasury Dealer Quotations** means, with respect to each Reference Treasury Dealer and any redemption date for a particular Series A Certificate, the average, as determined by the Designated Treasury Dealer, of the bid and asked prices for the Comparable Treasury Issue (expressed in each case as a percentage of its principal amount) quoted in writing to the Designated Treasury Dealer by such Reference Treasury Dealer at 3:30 p.m., New York City time, on the third business day preceding such redemption date.

Redemption from Redemption Related Payments correspondingly reduces Principal payable on the Maturity Date.

THIS CERTIFICATE DOES NOT CREATE ANY "INDEBTEDNESS" OF THE CITY OF DETROIT WITHIN THE MEANING OF ANY LIMITATION CONTAINED IN THE CONSTITUTION AND NON-TAX STATUTES OF THE STATE OF MICHIGAN OR IN THE CITY OF DETROIT CHARTER.

The Registered Holder, by purchasing or acquiring this certificate, and each beneficial owner of this certificate, by purchasing or acquiring a beneficial ownership interest therein, agree that for all U.S. federal, state and local income, business, franchise and modified value added tax purposes, (i) they will treat the Funding Trust as a grantor trust under the Internal Revenue Code of 1986, as amended, (ii) they will be treated as the owner of an undivided pro rata interest in the portion of the grantor Trust Estate attributable to this certificate, and (iii) they will treat the Funding Trust Receivables as payments in respect of indebtedness (and will thereby also acknowledge that the Service Charges and Scheduled Payments made by the City under the Service Contracts do not constitute indebtedness of the City for purposes of any State of Michigan constitutional or non-tax statutory or City charter limitation).

Reference is hereby made to the Trust Agreement, the Service Contracts and the Contract Administration Agreement (copies of which and other documents related to the Certificates are on file at the designated office of the Trustee, located in Detroit, Michigan on the Original Issue Date) for a description of the rights, responsibilities, and remedies of the Certificateholders, the Trustee and the Contract Administrator.

Notice of Redemption shall be mailed by first-class mail, not less than 30 days nor more than 45 days before the Redemption Date, to the Registered Holder of this certificate, as shown on the Certificate registry kept by the Trustee, but neither failure to receive notice of redemption given as provided in the Trust Agreement nor any defect in the notice so mailed shall affect the sufficiency of the proceedings for redemption of any Certificates for which no failure or deficiency occurred. The Trust Agreement provides that the Trustee shall provide additional notice that provides material compliance with Securities Exchange Act Release No. 34-23856 (December 3, 1986) as the same may be modified, amended or supplemented from time to time by formal action of the Securities and Exchange Commission or by generally accepted practice of cor-

13-53846-swr   Doc 1140-7   Filed 10/10/13   Entered 10/10/13 14:54:54   Page 46 of   346
13-53846-tjt   Doc 1140-7   Filed 10/10/13   Entered 10/10/13 14:54:54   Page 46 of
100

porate trustees. No failure to give such additional notice or defect therein or in the manner in which given shall affect the sufficiency of the proceedings for the redemption of any Certificates.

If this certificate is duly called for Redemption and payment is duly provided therefor as specified in the Trust Agreement, this certificate shall cease to accrue Interest from and after the date fixed for redemption.

Registration of the ownership of this certificate is transferable only upon the Registry kept by the Trustee at the designated corporate trust office of the Trustee by the Registered Holder hereof in person, or by such Registered Holder's attorney duly authorized in writing, upon the surrender of this certificate together with a written instrument of transfer satisfactory to the Trustee duly executed by the Registered Holder or such Registered Holder's attorney duly authorized in writing, and thereupon a new registered certificate or certificates of the same series and tenor, representing the same denomination in the aggregate and having the same Maturity Date shall be issued to the transferee in exchange therefor as provided in the Trust Agreement and upon the payment of the charges, if any, therein prescribed.

This certificate is not valid for any purpose until the Trustee's Certificate of Authentication on this certificate has been executed by the Trustee.

*[The Trustee's Certificate of Authentication follows]*

## Certificate of Authentication

This certificate is one of the Series A Certificates described in the within-mentioned Trust Agreement.

**U.S. Bank National Association**,
as Trustee of the Detroit Retirement
Systems Funding Trust 2006

By:_____

Date of Authentication: June 12, 2006

13-53846-swr   Doc 3016-4 Filed 03/06/14 Entered 03/06/14 15:59:20 Page 146 of 60
13-53846-tjt   Doc 1140-7   Filed 10/10/13   Entered 10/10/13 14:54:54   Page 48 of
100

348

## Assignment

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto

_____

(Please print or typewrite name and address of transferee)

the within certificate and all rights thereunder, and hereby irrevocably constitutes and appoints
_____ attorney to transfer the within certificate on the books
kept for registration thereof, with full power of substitution in the premises.

Dated:                                                    _____

_____              _____

Signature Guaranteed:                              NOTICE:  The signature(s) to this assignment
must correspond with the name as it appears
upon the face of the within certificate in every
particular, without alteration or enlargement or
any change whatever.  When assignment is
made by a guardian, trustee, executor or
administrator, an officer of a corporation, or
anyone in a representative capacity, proof of
such person's authority to act must accompany
the certificate.

Signature(s) must be guaranteed by an eligible guarantor institution participating in a
Securities Transfer Association recognized signature guarantee program. The Transfer Agent will
not effect transfer of this certificate unless the information concerning the transferee requested
below is provided.

Name and Address: _____

PLEASE INSERT SOCIAL _____

SECURITY NUMBER OR OTHER _____

IDENTIFYING NUMBER OF      (Include information for all joint owners

TRANSFEREE.      if the certificate is held by joint account.)

| |
|---|

(Insert number for first named
transferee if held by joint account)

## STATEMENT OF INSURANCE

Financial Guaranty Insurance Company ("Financial Guaranty") has issued a policy containing the following provisions with respect to only the DETROIT RETIREMENT SYSTEMS FUNDING TRUST 2006 CERTIFICATES OF PARTICIPATION SERIES 2006-A MATURING IN 2035 (the "Specified Certificates"), such policy being on file at the principal office of U.S. Bank National Association, Detroit, Michigan, or its successor as paying agent (the "Paying Agent") for the Specified Certificates.

Financial Guaranty hereby unconditionally and irrevocably agrees to pay for disbursement to the Specified Certificateholders that portion of the principal or accreted value (if applicable) of and interest on the Specified Certificates which is then due for payment and which the issuer of the Specified Certificates (the "Issuer") shall have failed to provide. Due for payment means, with respect to principal or accreted value (if applicable), the stated maturity date thereof, or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which the payment of principal or accreted value (if applicable) of the Specified Certificates is due by reason of call for redemption (other than mandatory sinking fund redemption), acceleration or other advancement of maturity, and with respect to interest, the stated date for payment of such interest.

Upon receipt of telephonic or telegraphic notice, subsequently confirmed in writing, or written notice by registered or certified mail, from a Specified Certificateholder or the Paying Agent to Financial Guaranty that the required payment of principal, accreted value or interest (as applicable) has not been made by the Issuer to the Paying Agent, Financial Guaranty on the due date of such payment or within one business day after receipt of notice of such nonpayment, whichever is later, will make a deposit of funds, in an account with U.S. Bank Trust National Association, or its successor as its agent (the "Fiscal Agent"), sufficient to make the portion of such payment not paid by the Issuer. Upon presentation to the Fiscal Agent of evidence satisfactory to it of the Specified Certificateholder's right to receive such payment and any appropriate instruments of assignment required to vest all of such Specified Certificateholder's right to such payment in Financial Guaranty, the Fiscal Agent will disburse such amount to the Specified Certificateholder.

As used herein the term "Specified Certificateholder" means the person other than the Issuer or the borrower(s) of proceeds of Specified Certificates who at the time of nonpayment of the Specified Certificate is entitled under the terms of such Specified Certificate to payment thereof.

The policy is non-cancellable for any reason.

13-53846-swr   Doc 1140-4   Filed 10/10/13   Entered 10/10/13 15:93:20   Page 45 of 60
13-53846-tjt   Doc 1140-7   Filed 10/10/13   Entered 10/10/13 14:54:54   Page 51 of
100                                                                            351

NOTICE: Unless this certificate is presented by an authorized representative of The Depository Trust Company, a New York corporation (**DTC**) to the Detroit Retirement Systems Funding Trust 2006 or its agent for registration of transfer, exchange or payment, and any Certificate issued is registered in the name of Cede & Co. or such other name as requested by an authorized representative of DTC (and any payment is made to Cede & Co. or to such other entity as is requested by an authorized representative of DTC), **any Transfer, Pledge or Other Use Hereof for Value or Otherwise by or to any Person is Wrongful** inasmuch as the registered holder hereof, Cede & Co., has an interest herein.

### R-●

## Detroit Retirement Systems Funding Trust 2006
## Certificates of Participation Series 2006-B

| FUNDING RATE (*INTEREST RATE*) PER ANNUM | PRINCIPAL PAY-MENT DATE (*MATURITY DATE*) | CUSIP | ISIN | EUROCLEAR AND CLEARSTREAM COMMON CODE |
|---|---|---|---|---|
| Set Forth Below | JUNE 15, 2034 | ● | ● | ● |

ORIGINAL ISSUE DATE: JUNE 12, 2006

REGISTERED HOLDER: CEDE & CO.

DENOMINATION (*PRINCIPAL*): ● DOLLARS ($● U.S.)

**This is to Certify that** the Registered Holder, or registered assigns, is the registered owner of this certificate, which evidences a beneficial ownership interest in the trust estate (the **Trust Estate**) described in the Trust Agreement, dated June 12, 2006 (the **Trust Agreement**), between the below identified Service Corporations, severally and not jointly, and U.S. Bank National Association, as trustee (such trustee and any successors as trustee, the **Trustee**).

This certificate is one of a series of certificates (the **Series B Certificates**) issued by the Detroit Retirement Systems Funding Trust 2006 created pursuant to the Trust Agreement (the **Funding Trust**), each evidencing a beneficial ownership interest in the portions of the Trust Estate attributable to such certificates and which, together with the Detroit Retirement Systems Funding Trust 2006 Certificates of Participation Series 2006-A (the **Series A Certificates** and together with the Series B Certificates, the **Certificates** and each certificate of the Certificates, a **Certificate**), represent the entire beneficial ownership interests in the Trust Estate.

The Trust Estate consists of rights to receive certain payments (**Funding Trust Receivables** as defined in the Trust Agreement) made by the City of Detroit, Michigan (the **City**) pursuant to the Service Contract, dated June 7, 2006 (a **Service Contract**), between the City and the Detroit General Retirement System Service Corporation (a **Service Corporation**) and the Service Contract, dated June 7, 2006 (also a **Service Contract**), between the City and the Detroit Police and Fire Retirement System Service Corporation (also a **Service Corporation** and together with the other Service Corporation, the **Service Corporations**). U.S. Bank National Association, as

1974114.0069/401808

contract administrator (such contract administrator and any successor thereto, the **Contract Administrator**) and not as Trustee, receives the payments of the Funding Trust Receivables when paid by the City, as the agent of the Funding Trust pursuant to the Contract Administration Agreement, dated June 12, 2006, among the Contract Administrator, the Funding Trust, the Service Corporations and certain other parties (the **Contract Administration Agreement**).

Capitalized terms not defined herein and defined in the Trust Agreement, the Contract Administration Agreement or either of the Service Contracts are used herein as therein defined.

The Registered Holder of this certificate is entitled to receive, subject to the terms of the Service Contracts, Contract Administration Agreement and the Trust Agreement, in lawful money of the United States of America: (i) a portion of the Scheduled Payments coming due on the Maturity Date stated above equal to the Principal amount stated above, unless earlier redeemed as provided below, and (ii) a portion of the Service Charges (i.e., **Interest** on this certificate) from the Original Issue Date stated above computed as the cost of capital of this certificate at a floating rate determined in the manner provided below, by multiplying the outstanding Principal amount of this certificate by such floating rate, payable on September 15, 2006, and quarterly thereafter on the 15th day of each December, March, June and September thereafter (each an **Interest Payment Date**) to the Registered Holder whose name was registered at the close of business on the 15th day (whether or not a business day) preceding the respective Interest Payment Date, subject to certain exceptions.

The per annum interest rate on this certificate (**Interest Rate**) in effect during an Interest Period (as defined below) shall be equal to the Three Month LIBOR plus 0.30% for Series B Certificates maturing on June 15, 2029 and 0.34% for Series B Certificates maturing on June 15, 2034. Interest on this certificate will accrue on the outstanding principal balance of this certificate. The outstanding principal balance is computed based upon the reduction of the principal balance of each Series B Certificate by the amount of the mandatory sinking fund prepayment on the specific dates set forth under the next subheading "Mandatory Sinking Fund Redemption" below.

For the initial Interest Period which begins on the Closing Date and ends on (but does not include) September 15, 2006, the Contract Administrator will set the Interest Rate on the Closing Date and will determine the LIBOR rate by reference to straight line interpolation between Three Month LIBOR and four month LIBOR based on the actual number of days in the initial Interest Period. The Interest Rate for each subsequent Interest Period for the Series B Certificates will be set on September 15, 2006 and quarterly thereafter on the 15th day of each December, March, June and September (each an **Interest Rate Adjustment Date**) until the principal of the Series B Certificates is paid or made available for payment. If any Interest Rate Adjustment Date (other than the initial Interest Rate Adjustment Date occurring on the Closing Date) and Interest Payment Date for the Series B Certificates would otherwise be a day that is not a LIBOR Business Day, such Interest Rate Adjustment Date and Interest Payment Date shall be the next succeeding LIBOR Business Day.

**LIBOR Business Day** means any day on which the City, the Trustee and banks in both London and New York City are open for the transaction of business. **Interest Period** means the period from and including the Closing Date or the most recent Interest Payment Date to but excluding the next succeeding Interest Payment Date on which interest on the outstanding Series B Certificates was paid in full.

1974114.0069/401808                    Page 2 of 10

The ***Three Month LIBOR*** for each Interest Period means the rate determined in accordance with the following provisions:

(i)     On the second LIBOR Business Day before the Closing Date and each subsequent Interest Rate Adjustment Date (each such date an ***Interest Determination Date*** for the ensuing Interest Period), the Contract Administrator will determine the Three Month LIBOR which shall be the London interbank offered rate for deposits in U.S. dollars with a three-month maturity that appears on Telerate Page 3750 as of 11:00 a.m., London time, on such Interest Determination Date. **Telerate Page 3750** means the display page so designated on Moneyline Telerate, Inc. (or such other page as may replace that page on that service or such other service or services as may be nominated by the British Bankers' Association for the purpose of displaying London interbank offered rates for U.S. dollar deposits). If the Three Month LIBOR on such Interest Determination Date does not appear on the Telerate Page 3750, the Three Month LIBOR will be determined as described in paragraph (ii) below.

(ii)     With respect to an Interest Determination Date for which the Three Month LIBOR does not appear on Telerate Page 3750 as specified in paragraph (i) above, the Three Month LIBOR will be determined on the basis of the rates at which deposits in U.S. dollars for a three-month maturity and in a principal amount of at least U.S. $1,000,000 are offered at approximately 11:00 a.m., London time, on such Interest Determination Date to prime banks in the London interbank market by at least three leading banks engaged in transactions in Eurodollar deposits in the international Eurocurrency market (the ***Reference Banks***) selected by the Contract Administrator. The Contract Administrator shall request the principal London office of each of such Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the Three Month LIBOR on such Interest Determination Date will be the arithmetic mean of such quotations. If fewer than two quotations are provided, the Three Month LIBOR on such Interest Determination Date will be the arithmetic mean of the rates quoted by three major banks in New York City, selected by the Contract Administrator, at approximately 11:00 a.m., New York City time, on such Interest Determination Date for loans in U.S. dollars to leading European banks in a principal amount of at least U.S. $1,000,000 having a three-month maturity; provided, however, that if the banks in New York City selected by the Contract Administrator are not then quoting rates for such loans, the relevant Interest Rate for the Interest Period commencing on the Interest Rate Adjustment Date following such Interest Determination Date will be the Interest Rate in effect on such Interest Determination Date.

The amount of interest for each day that the Series B Certificates are outstanding (the **Daily Interest Amount**) will be calculated by dividing the Interest Rate in effect for such day by 360 and multiplying the result by the principal amount of the Series B Certificates. The amount of interest to be paid on the Series B Certificates for any Interest Period will be calculated by adding the Daily Interest Amounts for each day in such Interest Period.

The Interest Rate on the Series B Certificates will in no event be higher than the maximum rate permitted by Michigan law as the same may be modified by United States law of general application.

The Interest Rate and amount of interest to be paid on the Series B Certificates for each Interest Period will be determined by the Contract Administrator. All calculations made by the Contract Administrator shall in the absence of manifest error be conclusive for all purposes and binding on the Funding Trust and the Holders of the Series B Certificates.

13-53846-swr    Doc 3616-4   Filed 10/10/13   Entered 10/10/13 15:35:20   Page 75 of 60    354
13-53846-tjt    Doc 1140-7   Filed 10/10/13   Entered 10/10/13 14:54:54   Page 54 of
100

So long as the Registered Holder is Cede & Co., or any other nominee of DTC, distributions of Principal and premium, if any, payable upon maturity or earlier redemption of this certificate will be paid by the Trustee by wire. Distributions to any other Registered Holder will be paid by check or draft, mailed, with respect to distributions of Interest, to the Registered Owner shown in the Certificate registry kept by the Trustee at the close of business on the 15th day (whether or not a business day) preceding the respective Interest Payment Date (a *Regular Record Date*) and, with respect to payment of Principal and premium, if any, upon presentation and surrender of this certificate at the designated office of the Trustee.

Subject in all respects to the foregoing, the Trust Agreement, Service Contracts and Contract Administration Agreement provide for allocation, computation, distribution and payments from the Trust Estate to the Registered Holder and all other registered owners of the Certificates in accordance with their relative Percentage Interests in the event that the Trustee has received less than all of the Funding Trust Receivables payable on any date by the City under the Service Contracts, generally described as follows.

On each Interest Payment Date (ending on the Maturity Date set forth above) amounts are payable as Interest on this certificate from amounts the Trustee has received from the Contract Administrator as an Interest Related Payment for such Interest Payment Date, computed as stated above, provided that such Interest Related Payment is sufficient to pay Interest on all outstanding Certificates, computed in accordance with their respective terms on the aggregate outstanding Principal Amounts of all outstanding Certificates. Such Interest is payable to the respective Record Holders as of the particular Regular Record Date immediately prior to such Interest Payment Date.

If such Interest Related Payment is not sufficient to pay all Interest on the Certificates in full on such Interest Payment Date, such Interest Related Payment shall be paid, to the extent thereof, as Interest on this certificate in an amount equal to such Interest Related Payment multiplied by a fraction, the numerator of which is the amount that would have been paid as Interest on this certificate if such Interest Related Payment had been sufficient to pay Interest on all Certificates on such Interest Payment Date and the denominator of which is the aggregate amount that would have been paid as Interest on all Certificates if such Interest Related Payment had been sufficient to pay Interest on all Certificates on such Interest Payment Date. A portion of any Deficit Interest Related Payment received by the Trustee from the Contract Administrator shall be payable on this certificate in accordance with a Special Record Date established by the Trustee in accordance with the Trust Agreement, in an amount equal to such Deficit Interest Related Payment multiplied by a fraction, the numerator of which is the amount of the unpaid Interest on this certificate and the denominator of which is the aggregate amount of the unpaid Interest on all Certificates.

Any principal of any particular Certificate shall be reduced by any amount previously paid as principal or Sinking Fund Installments on such Certificate from a Sinking Fund Related Payment or a Redemption Related Payment (excluding any amount representing a prepayment premium) (such principal to the extent not so reduced *outstanding Principal*).

Outstanding Principal of this certificate is payable on the Maturity Date or the Sinking Fund Installment Date (if any) to the Registered Holder hereof if the Trustee has received a Principal Related Payment or Sinking Fund Related Payment from the Contract Administrator for

13-53846-swr    Doc 3616-4  Filed 10/10/13   Entered 10/10/13 14:54:54   Page 55 of
13-53846-tjt    Doc 1140-7  Filed 10/10/13   Entered 10/10/13 14:54:54   Page 55 of
100                                                                          355
100

such Maturity Date or Sinking Fund Installment Date sufficient to pay outstanding Principal and Sinking Fund Installments of all Certificates payable on that date.

If such Principal Related Payment or Sinking Fund Related Payment is not sufficient to pay in full all Principal and Sinking Fund Installments due on the outstanding Certificates on such date, a portion of such Principal Related Payment or Sinking Fund Related Payment shall be paid, to the extent thereof, to reduce the outstanding Principal of this certificate in an amount equal to such Principal Related Payment or Sinking Fund Related Payment multiplied by a fraction, the numerator of which is the amount of the Principal or Sinking Fund Installment of this certificate payable on such date and the denominator of which is the aggregate amount of the Principal and Sinking Fund Installments of all Certificates payable on such date. A portion of any Deficit Principal Related Payment received by the Trustee from the Contract Administrator shall be payable on this certificate in accordance with a Special Record Date established by the Trustee in accordance with the Trust Agreement in an amount equal to such Deficit Principal Related Payment multiplied by a fraction, the numerator of which is the amount of the due and unpaid Principal and Sinking Fund Installments on this Certificate and the denominator of which is the aggregate amount of the due and unpaid Principal and Sinking Fund Installments on all Certificates.

Deficit Principal Related Payments representing Principal or Sinking Fund Installments not paid in full on the Maturity Date or applicable Sinking Fund Installment Date (if any) will be paid by the Trustee from any Service Payments thereafter received by the Contract Administrator and available for such purpose in accordance with the Service Contracts, the Contract Administration Agreement and the Trust Agreement.

The Service Contracts provide for other payments to be made on a parity with or prior to Interest and Principal, and those other payments may result in either Interest or Principal not being timely paid in full. Reference is made to the Service Contracts for a statement of the applicable priorities of payments from Service Payments.

### Mandatory Sinking Fund Redemption

All Series B Certificates maturing on June 15, 2029, or on June 15, 2034 are subject to *pro rata* mandatory redemption prior to maturity, at a redemption price equal to par (100% of the principal amount to be redeemed), together with accrued interest to the redemption date, on June 15 of each of the years, and in the respective amounts set forth in the Service Contract, except that the principal amount of Series B Certificates of such maturity to be redeemed on each such redemption date will be reduced by a *pro rata* portion of the principal amount of any such Series B Certificate that has been purchased by the Trustee and canceled by the Trustee, or redeemed as described under "Optional Redemption" below, at least 45 days before the redemption date.

Mandatory Redemption from Sinking Fund Related Payments correspondingly reduces Principal payable on the Maturity Date.

### Optional Redemption

The Series B Certificates are subject to optional redemption on any Interest Payment Date at par, on and after June 15, 2011, in whole or in part.

THIS CERTIFICATE DOES NOT CREATE ANY "INDEBTEDNESS" OF THE CITY OF DETROIT WITHIN THE MEANING OF ANY LIMITATION CONTAINED IN THE CONSTITUTION AND NON-TAX STATUTES OF THE STATE OF MICHIGAN OR IN THE CITY OF DETROIT CHARTER.

The Registered Holder, by purchasing or acquiring this certificate, and each beneficial owner of this certificate, by purchasing or acquiring a beneficial ownership interest therein, agree that for all U.S. federal, state and local income, business, franchise and modified value added tax purposes, (i) they will treat the Funding Trust as a grantor trust under the Internal Revenue Code of 1986, as amended, (ii) they will be treated as the owner of an undivided pro rata interest in the portion of the grantor Trust Estate attributable to this certificate, and (iii) they will treat the Funding Trust Receivables as payments in respect of indebtedness (and will thereby also acknowledge that the Service Charges and Scheduled Payments made by the City under the Service Contracts do not constitute indebtedness of the City for purposes of any State of Michigan constitutional or non-tax statutory or City charter limitation).

Reference is hereby made to the Trust Agreement, the Service Contracts and the Contract Administration Agreement (copies of which and other documents related to the Certificates are on file at the designated office of the Trustee, located in Detroit, Michigan on the Original Issue Date) for a description of the rights, responsibilities, and remedies of the Certificateholders, the Trustee and the Contract Administrator.

Notice of Redemption shall be mailed by first-class mail, not less than 30 days nor more than 45 days before the Redemption Date, to the Registered Holder of this certificate, as shown on the Certificate registry kept by the Trustee, but neither failure to receive notice of redemption given as provided in the Trust Agreement nor any defect in the notice so mailed shall affect the sufficiency of the proceedings for redemption of any Certificates for which no failure or deficiency occurred. The Trust Agreement provides that the Trustee shall provide additional notice that provides material compliance with Securities Exchange Act Release No. 34-23856 (December 3, 1986) as the same may be modified, amended or supplemented from time to time by formal action of the Securities and Exchange Commission or by generally accepted practice of corporate trustees. No failure to give such additional notice or defect therein or in the manner in which given shall affect the sufficiency of the proceedings for the redemption of any Certificates.

If this certificate is duly called for Redemption and payment is duly provided therefor as specified in the Trust Agreement, this certificate shall cease to accrue Interest from and after the date fixed for redemption.

Registration of the ownership of this certificate is transferable only upon the Registry kept by the Trustee at the designated corporate trust office of the Trustee by the Registered Holder hereof in person, or by such Registered Holder's attorney duly authorized in writing, upon the surrender of this certificate together with a written instrument of transfer satisfactory to the Trustee duly executed by the Registered Holder or such Registered Holder's attorney duly authorized in writing, and thereupon a new registered certificate or certificates of the same series and tenor, representing the same denomination in the aggregate and having the same Maturity Date shall be issued to the transferee in exchange therefor as provided in the Trust Agreement and upon the payment of the charges, if any, therein prescribed.

13-53846-swr    Doc 3615-4  Filed 03/09/14  Entered 03/09/14 13:15:08  Page 57 of 60
13-53846-tjt    Doc 1140-7  Filed 10/10/13  Entered 10/10/13 14:54:54  Page 57 of
100    357

This certificate is not valid for any purpose until the Trustee's Certificate of Authentication on this certificate has been executed by the Trustee.

*[The Trustee's Certificate of Authentication follows]*

# Certificate of Authentication

This certificate is one of the Series B Certificates described in the within-mentioned Trust Agreement.

**U.S. Bank National Association**,
as Trustee of the Detroit Retirement
Systems Funding Trust 2006

By:_____

Date of Authentication: June 12, 2006

## Assignment

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto

_____

(Please print or typewrite name and address of transferee)

the within certificate and all rights thereunder, and hereby irrevocably constitutes and appoints
_____ attorney to transfer the within certificate on the books
kept for registration thereof, with full power of substitution in the premises.

Dated:                                              _____

_____                _____

Signature Guaranteed:                      NOTICE: The signature(s) to this assignment
must correspond with the name as it appears
upon the face of the within certificate in every
particular, without alteration or enlargement or
any change whatever. When assignment is
made by a guardian, trustee, executor or
administrator, an officer of a corporation, or
anyone in a representative capacity, proof of
such person's authority to act must accompany
the certificate.

Signature(s) must be guaranteed by an eligible guarantor institution participating in a
Securities Transfer Association recognized signature guarantee program. The Transfer Agent will
not effect transfer of this certificate unless the information concerning the transferee requested
below is provided.

1974114.0069/401808                    Page 9 of 10

13-53846-swr    Doc 3616-4  Filed 03/06/14  Entered 03/06/14 13:59:20  Page 360 of 360
13-53846-tjt    Doc 1140-7  Filed 10/10/13  Entered 10/10/13 14:54:54  Page 60 of 100

Name and Address: _____

PLEASE INSERT SOCIAL
SECURITY NUMBER OR OTHER _____
IDENTIFYING NUMBER OF      (Include information for all joint owners
TRANSFEREE.       if the certificate is held by joint account.)

┌─────────────────────────────────────┐
│                                      │
└─────────────────────────────────────┘

(Insert number for first named
transferee if held by joint account)

**STATEMENT OF INSURANCE**
**[OF APPROPRIATE INSURER]**

# General Terms and Conditions

of

## Trust Agreements

creating

## Detroit Retirement Systems Funding Trusts

established severally and not jointly by the

## Detroit General Retirement System Service Corporation
and the
## Detroit Police and Fire Retirement System Service Corporation

Dated as of May 1, 2005

1974.110.0476\ xxx v1

# Table of Contents

ARTICLE I — DEFINITIONS AND INTERPRETATION ............................................................... 1

Section 101. Certain Definitions. ............................................................................................. 1
Section 102. Definitions Elsewhere in General Terms ............................................................ 4
Section 103. Definitions in Service Contract .......................................................................... 4
Section 104. Definitions in Contract Administration Agreement ............................................ 4
Section 105. Interpretation ....................................................................................................... 5

ARTICLE II — THE FUNDING TRUST ...................................................................................... 5

Section 201. Conveyance of Funding Trust Receivables; Grant of Security Interest ............. 5
Section 202. No City Indebtedness .......................................................................................... 5
Section 203. Tax Treatment; Restriction on Trustee's Powers ................................................ 6
Section 204. Authentication and Delivery of Certificates by Trustee; Execution of Other
Documents .......................................................................................................... 6
Section 205. Disposition of Certificate Proceeds. .................................................................. 6
Section 206. Additional Certificates ........................................................................................ 7

ARTICLE III — THE CERTIFICATES ......................................................................................... 7

Section 301. Interest Evidenced by Certificates. ..................................................................... 7
Section 302. Limitation on Amount. ........................................................................................ 7
Section 303. General Title. ....................................................................................................... 7
Section 304. Required Statement .............................................................................................. 7
Section 305. Issuable in Series ................................................................................................. 7
Section 306. Form, Numbers, Denominations and Dating ...................................................... 7
Section 307. Authentication ..................................................................................................... 8
Section 308. Capital Appreciation COPs ................................................................................. 8
Section 309. Payments in US Dollars ...................................................................................... 8
Section 310. Payment of Interest; Interest Rights Preserved ................................................... 8
Section 311. Registration, Exchanges and Transfers. .............................................................. 9
Section 312. Persons Deemed Owners. .................................................................................... 9
Section 313. Mutilated, Destroyed, Stolen or Lost Certificates. ............................................ 10
Section 314. Cancellation and Destruction of Certificates. ..................................................... 10
Section 315. Book-Entry Certificates; Securities Depository ................................................. 10

ARTICLE IV — REDEMPTION OF CERTIFICATES .................................................................. 11

Section 401. Selection of Certificates to be Redeemed ........................................................... 11
Section 402. Notice of Redemption. ........................................................................................ 12
Section 403. Certificates Payable on Redemption Date. ......................................................... 13
Section 404. Certificates Redeemed in Part. ........................................................................... 13

ARTICLE V — PAYMENTS TO CERTIFICATEHOLDERS ........................................................ 14

Section 501. Deficiency Payments. .......................................................................................... 14
Section 502. Other Payments ................................................................................................... 14
Section 503. Payments Made From Credit Insurance .............................................................. 14

ARTICLE VI — THE TRUSTEE ............................................................................ 15

Section 601.  Certain Duties and Responsibilities........................................ 15
Section 602.  Certain Rights of Trustee........................................................ 15
Section 603.  Not Responsible for Recitals or Issuance of Certificates. ........ 16
Section 604.  May Hold Certificates. ............................................................ 16
Section 605.  Money Held in Trust. .............................................................. 17
Section 606.  Compensation and Reimbursement ......................................... 17
Section 607.  No Lien ................................................................................... 17
Section 608.  Corporate Trustee Required; Eligibility.................................. 17
Section 609.  Replacement of Trustee.......................................................... 18
Section 610.  Merger, Consolidation and Succession to Business................. 18
Section 611.  ERISA ..................................................................................... 19

ARTICLE VII — SUPPLEMENTAL TRUST AGREEMENTS........................................ 19

Section 701.  Supplemental Trust Agreements without Consent of Certificateholders.............. 19
Section 702.  Supplemental Trust Agreements with Consent of Certificateholders. ................. 19
Section 703.  Execution of Supplemental Trust Agreements. ........................ 20
Section 704.  Preconditions to Effectiveness ............................................... 20
Section 705.  Effect of Supplemental Trust Agreements. .............................. 21
Section 706.  Copies to Insurer .................................................................... 21
Section 707.  Reference in Certificates to Supplemental Trust Agreements. ............... 21

ARTICLE VIII — MISCELLANEOUS PROVISIONS ................................................. 21

Section 801.  Notices to Certificateholders; Waiver..................................... 21
Section 802.  Insurer Treated as Certificateholder ...................................... 21
Section 803.  Severability............................................................................. 22
Section 804.  Payments Due on Saturdays, Sundays and Holidays ............... 22

GENERAL TERMS AND CONDITIONS
OF
TRUST AGREEMENTS
CREATING
DETROIT RETIREMENT SYSTEMS FUNDING TRUSTS
ESTABLISHED SEVERALLY AND NOT JOINTLY BY THE
DETROIT GENERAL RETIREMENT SYSTEM SERVICE CORPORATION
AND THE
DETROIT POLICE AND FIRE RETIREMENT SYSTEM SERVICE CORPORATION

Dated as of May 1, 2005
(the *General Terms*)

The General Terms govern Trust Agreements of the Detroit General Retirement Service Corporation and the Detroit Police and Fire Retirement Service Corporation (each, a *Corporation*) in which they are incorporated by reference (each, a *Trust Agreement*) for the establishment of Funding Trusts (each, a *Funding Trust*) for the purpose of funding of the several and not joint unfunded accrued actuarial liability (in each instance, *UAAL*) of the Detroit General Retirement System and the Detroit Police and Fire Retirement System (each, a *Retirement System*).

## Article I — Definitions and Interpretation

### Section 101.    Certain Definitions.

The following terms have the following respective meanings for all purposes of the Trust Agreement *unless* the context clearly otherwise requires:

*Accreted Value* means, at any time, the Principal Amount of particular Capital Appreciation COPs determined in accordance with the Trust Agreement.

*Authorized Officer* means the President of a Corporation or any other individual designated as an "Authorized Officer" in a Corporation Order signed by the President.

*Capital Appreciation COPs* means Zero Coupon COPs that have Principal Amounts that accrete in accordance with the Accreted Value of such COPs.

*Certificates*, *Certificates of Participation* or *COPs* mean the Certificates of Participation identified in the Trust Agreement.

*Certificateholder* or *Holder* means, as of any time with respect to any Certificate, the Person in whose name such Certificate is registered in the Registry.

*City* means the City of Detroit, Michigan.

*Corporation* has the meaning given that term in the Specific Terms.

*Corporation Certificate*, *Corporation Request*, *Corporation Order* and *Corporation Consent* mean, respectively, a written certificate, request, order or consent signed in the name of a Corporation by an Authorized Officer, and delivered to the Trustee.

1974.114.0058/ xxx v1

[Trust Agreement General Terms]
Final

13-53846-swr    Doc 3616-4 Filed 03/31/14 Entered 03/31/14 15:39:20 Page 66 of 366
13-53846-tjt    Doc 1140-7    Filed 10/10/13    Entered 10/10/13 14:54:54    Page 66 of 100

*Contract Administrator* means the bank serving as Trustee, in its separate capacity as Contract Administrator and not as Trustee.

*Contract Administration Agreement* means the agreement captioned as such among the Corporations, severally and not jointly, the Trustee and the Contract Administrator for the administration of the Service Contract.

*Deficiency Payment* means any Deficit Interest Related Payment or any Deficit Principal Related Payment as the context may require.

*Funding Trust* means the trust established by the Trust Agreement.

*Funding Trust Receivable* means any Principal Related Receivable or Interest Related Receivable.

*Funding Cost Supplement* means each document identified in a Service Contract as a "Funding Cost Supplement" and appended to the Trust Agreement.

*Interest* means (whether or not capitalized) amounts received by the Trustee as Service Charges.

*Interest Payment Dates* means (whether or not capitalized) dates that correspond to Service Charge Payment Dates.

*Interest Related Receivable* means an amount owing by the City as a Service Charge, including any Accrued Service Charges.

*Maturity* or *Maturity Date* means (whether or not capitalized), (i) as to any Certificate, the Scheduled Payment Date on which the Holder of such Certificate is entitled to receive a regular Scheduled Payment is due and (ii) as to any Regular Scheduled Payment, the Scheduled Payment Date on which such Regular Scheduled Payment is due from the City under a Service Contract. The verb *mature* has a correlative meaning.

*on* as in "Interest payable on a Certificate" or *of* as in "a Principal Payment of a Certificate" means "in respect of" as in "Interest payable in respect of a Certificate" and "a Principal Payment in respect of a Certificate".

*Outstanding* means (whether or not capitalized) all Certificates authenticated under the Trust Agreement *except*:

(1) Certificates theretofore canceled or surrendered to the Trustee for cancellation and

(2) Certificates replaced pursuant to **Section 313** *unless* the Trustee receives proof that the Holder of the replaced Certificate is a protected purchaser.

*Percentage Interest* means, as to any Certificate of a Series, the percentage obtained by dividing the denomination of such Certificate by the sum of the denominations of the outstanding Certificates of such Series.

*Person* means any individual, firm, association, corporation, trust, partnership, joint venture, joint-stock company, municipal corporation, public body or other entity, however organized.

13-53846-swr Doc 3616-4 Filed 03/06/14 Entered 03/06/14 15:36:20 Page 67 of
13-53846-tjt Doc 1140-7 Filed 10/10/13 Entered 10/10/13 14:54:54 Page 67 of
100

367

**Predecessor Certificate** of any particular Certificate means every previous Certificate evidencing all or a portion of the same beneficial interest as that evidenced by such particular Certificate; and for the purpose of this definition, any Certificate delivered under **Section 313** in lieu of a lost, destroyed or stolen Certificate shall be deemed to evidence the same beneficial interest as such lost, destroyed or stolen Certificate.

**Principal** or **Principal Amount** means (whether or not capitalized), (i) as to any Certificate, a notional amount equal to the denomination of such Certificate and (ii) as to any Series of Certificates, a notional amount equal to the total of the denominations of the Outstanding Certificates of such Series.

**Principal Payment Dates** means the dates that correspond to Scheduled Payment Dates for Regular Scheduled Payments.

**Principal Related Receivable** means an amount owing by the City as a Scheduled Payment (whether a Regular Scheduled Payment or a Sinking Fund Installment) or an Optional Prepayment Amount.

**Qualifying Opinion** means an opinion of counsel to the effect that the Trust will qualify as a grantor trust under Subpart E, Part I of Subchapter J of the Internal Revenue Code of 1986, as amended.

**Redeemed** or **Redemption** means (whether or not capitalized), the prepayment of all or a portion of the Principal Amount of a Certificate before its Maturity. A Certificate is redeemed to the extent of the prepayment of the Principal Amount thereof. Correlative terms have correlative meanings.

**Redemption Date** means the date that corresponds to a Sinking Fund Installment Date or an Optional Prepayment Date.

**Redemption Price** means an amount equal to the amount due from the City as a Sinking Fund Installment or an Optional Prepayment Amount plus any Accrued Service Charges.

**Regular Record Date** means, as to any Interest Payment Date with respect to Certificates of a Series, the date set forth in or determined pursuant to the Service Contract for such Series as the "Regular Record Date".

**Series** means all Certificates designated by the Trust Agreement as belonging to a particular series.

**Securities Depository** means The Depository Trust Company and any Person succeeding to the business of The Depository Trust Company qualified to do so under the rules of the Securities and Exchange Commission.

**Service Contract** means the agreement between a Corporation and the City identified in the Trust Agreement as a "Service Contract".

**Service Contract Specific Terms** means the Specific Terms of a Service Contract.

**Trust Agreement** means the Trust Agreement between the Corporations and the Trustee incorporating these General Terms as such Trust Agreement may be amended in accordance with its terms.

1974114.0058/394230

3

13-53846-swr   Doc 3616-4   Filed 10/10/13   Entered 10/10/13 14:54:54   Page 68 of   368
13-53846-tjt   Doc 1140-7   Filed 10/10/13   Entered 10/10/13 14:54:54   Page 68 of
100

*Trust Estate* means the revenues and assets identified as the "Trust Estate" in the Trust Agreement.

*Trustee* means the Person so named in the first paragraph of the Trust Agreement until a successor is appointed pursuant to applicable provisions of the Trust Agreement; thereafter, *Trustee* means such successor.

*Zero Coupon Certificates* means COPs that do not provide for periodic payments of Interest.

## Section 102. Definitions Elsewhere in General Terms

The terms defined elsewhere in the General Terms include:

| Term | Defined In |
| --- | --- |
| Beneficial Owner | Section 315 |
| Supplemental Trust Agreement | Section 701 |
| Participant | Section 315 |
| Registry | Section 311 |

## Section 103. Definitions in Service Contract

Undefined capitalized terms used herein and defined in the Service Contract are used here as therein defined, *unless* the context otherwise clearly requires, including:

| Term | Defined In |
| --- | --- |
| Credit Insurance | GT, Section 1.01 |
| Prepayment Receipt Day | GT, Section 5.03 |
| Rating Agency | GT, Section 9.02 |
| Regular Scheduled Payment | GT, Section 1.01 |
| Scheduled Payment Dates | SP, Scheduled Payments Attachment |
| Scheduled Payments | SP, Scheduled Payments Attachment |
| Service Payments | GT, Section 8.01 |
| Sinking Fund Installments | SP, Sinking Fund Installment Attachment |
| Sinking Fund Installment Dates | SP, Sinking Fund Installment Attachment |
| Subject UAAL | GT, Section 1.01 |

*GT* refers to Service Contract General Terms, and *SP* refers to Service Contract Specific Terms

## Section 104. Definitions in Contract Administration Agreement

Undefined capitalized terms used herein and defined in the Service Contract are used here as therein defined, *unless* the context otherwise clearly requires, including:

| Term | Defined In |
| --- | --- |
| Deficit Interest Related Payment | Section 4.6 |
| Deficit Principal Related Payments | Section 4.6 |
| Interest Related Payments | Section 4.6 |
| Principal Related Payments | Section 4.6 |
| Redemption Related Payments | Section 4.6 |

13-53846-swr  Doc 3666-4  Filed 03/06/14  Entered 03/06/14 01:59:20  Page 269 of 60
13-53846-tjt  Doc 1140-7  Filed 10/10/13  Entered 10/10/13 14:54:54  Page 69 of 100

369

**Section 105.  Interpretation.**

(a)     Words of the masculine gender include correlative words of the feminine and neuter genders.

(b)     *Unless* the context otherwise indicates, words importing the singular include the plural and vice versa.

(c)     Articles, Sections, Schedules and Exhibits referred to by number mean the corresponding Articles, Sections, Schedules and Exhibits of the Trust Agreement.

(d)     The terms *hereby, hereof, hereto, herein, hereunder* and any similar terms used in the Trust Agreement refer to the Trust Agreement as a whole and not to any particular portion thereof.

(e)     The term *or* is not exclusive.

(f)     The enumeration of things after the term *such as, including* or *for example (e.g.)* is to be interpreted as illustrative and not restrictive.

(g)     References to sections of a Public Act, or to a Public Act as a whole, also include any amendments thereto unless otherwise indicated and analogous sections or Public Acts enacted as substitutes therefor.

## Article II — The Funding Trust

**Section 201.  Conveyance of Funding Trust Receivables; Grant of Security Interest**

(a)     Effective as of the Closing Date, each Corporation hereby transfers, assigns and otherwise conveys to the Funding Trust all of its right, title and interest in, to and under the Funding Trust Receivables now or hereafter created under its respective Service Contract, and all monies due or to become due with respect thereto and all proceeds (as defined in Section 9-315 of the Uniform Commercial Code as in effect in the State of Michigan) of such Funding Trust Receivables. For the avoidance of doubt, the Trustee acknowledges that it has no power to transfer, assign or otherwise convey legal title to the Funding Trust Receivables and that beneficial interests in the Funding Trust Receivables may be transferred as transfers of Certificates.

(b)     Each Corporation intends that such sale, assignment and conveyance be an absolute transfer of such property for all purposes. However, in order to preserve rights if such sale, assignment and conveyance is deemed a pledge of such property, each Corporation hereby grants a security interest in all of its right, title and interest in, to and under such property to the Funding Trust for the benefit of the Certificateholders.

## Section 202.  No City Indebtedness

The Funding Trust and the Funding Trust Receivables do not constitute or create any indebtedness of the City within the meaning of the limitation contained in The Home Rule City Act or any Michigan constitutional or other non-tax statutory or City charter limitation.

13-53846-swr    Doc 3616-4  Filed 03/06/14  Entered 03/06/14 15:93:20  Page 370 of 60
13-53846-tjt    Doc 1140-7  Filed 10/10/13  Entered 10/10/13 14:54:54  Page 70 of 100
370

**Section 203.   Tax Treatment; Restriction on Trustee's Powers**

(a)      *Except* to the extent otherwise provided in the Trust Agreement, each Corporation entered into the Trust Agreement, Certificates will be issued and the Funding Trust will acquire the Funding Trust Receivables, with the intention that for federal, state and local income, business, franchise and modified value added tax purposes,

      (i)      the Trust will qualify as a grantor trust under Subpart E, Part I of Subchapter J of the Internal Revenue Code of 1986, as amended;

      (ii)      each Beneficial Owner of Certificates will be treated as the owner of an undivided pro rata interest in the portion of the Trust Estate attributable to such Beneficial Owner's Certificates; and

      (iii)      the Funding Trust Receivables will constitute payments in respect of indebtedness.

(b)      In furtherance of such intention, except to the extent otherwise provided in the Trust Agreement, the Trustee shall not have the power to vary the investment of the Beneficial Owners of the Certificates within the meaning of U.S. Treasury Department regulations section 301.7701-4(c) or to engage in any business unless the Trustee shall have received an opinion in form and substance reasonably satisfactory to the Trustee of counsel reasonably acceptable to the Trustee to the effect that such activity will not cause the Trust to fail to be treated as such a grantor trust.

(c)      Each Corporation and the Trustee by entering into the Trust Agreement and each Certificateholder by its acceptance of its Certificate agree to treat the Funding Trust, the Certificates and the Funding Trust Receivables in accordance with the intention expressed in **this Section** (or any alternative intention expressed in the Trust Agreement) for federal, state and local income, business, franchise and modified value added tax purposes.

**Section 204.   Authentication and Delivery of Certificates by Trustee; Execution of Other Documents**

(a)      The Trustee shall deliver the Certificates in accordance with a Corporation Order of each Corporation (a ***Delivery Order***) stating the amount of Certificate proceeds to be received by the Trustee in respect of the particular Corporation and providing for the disposition of such proceeds in accordance with **Section 205**.

(b)      The Trustee is authorized and directed to execute and deliver the Contract Administration Agreement in the name of and on behalf of the Funding Trust and such other documents and instruments as may be specified in a Delivery Order or other writing signed by the Authorized Officer of each Corporation.

**Section 205.   Disposition of Certificate Proceeds.**

The proceeds of the sale of Certificates shall be applied as provided in each Service Contract.

13-53846-swr   Doc 3616-4   Filed 03/06/14   Entered 03/06/14 15:59:20   Page 47 of 60
13-53846-tjt   Doc 1140-7   Filed 10/10/13   Entered 10/10/13 14:54:54   Page 71 of 100

371

**Section 206.    Additional Certificates**

(a)    One or more Series of Additional Certificates may be established by supplement to the Trust Agreement *if* (i) the City approves an amendment to either Service Contract to provide for (i) the funding of obligations under the particular Service Contract not part of the Initial Funding or (ii) to provide for the payment of all or a portion of Outstanding Certificates *and* (ii) the requirement of **Section 704** is met if applicable.

(b)    Such Series of Additional Certificates shall not have an aggregate principal amount that exceeds the total Scheduled Payments added by such amendment to the Service Contract, and the maturity dates and amounts maturing on such dates of such Additional Certificates shall correspond to the Scheduled Payments added by such amendment and their respective Scheduled Payment Dates.

(c)    Such Series of Additional Certificates shall provide for Service Charges determined in accordance with the Funding Methodology provided in such amendment.

## Article III — The Certificates

### Section 301.    Interest Evidenced by Certificates.

The Certificates evidence the entire beneficial interest in the Trust Estate.

### Section 302.    Limitation on Amount.

The total of the denominations of the Certificates that may be authenticated and delivered under the Trust Agreement is limited to the total specified in the Trust Agreement plus the denominations of any Certificates authenticated and delivered pursuant to **Section 311 or Section 307.**

### Section 303.    General Title.

The general title of the Certificates shall be ***Detroit Retirement Systems Funding Trust*** [*designation of particular Funding Trust*] ***Certificates of Participation Series*** [*Series designation*], and the specific title of Certificates shall include such other designations as may be provided in the Trust Agreement.

### Section 304.    Required Statement

Each Certificate shall state on its face that it does not create any indebtedness of the City within the meaning of any limitation contained in the constitution and non-tax statutes of the State of Michigan or in the City of Detroit Charter.

### Section 305.    Issuable in Series

The Certificates shall be issued in one or more Series as provided in the Trust Agreement.

### Section 306.    Form, Numbers, Denominations and Dating

(a)    The Certificates shall be issued as fully registered securities in the form prescribed by the Trust Agreement.  Certificates authenticated and delivered in definitive form

13-53846-swr    Doc 3616-4 Filed 03/06/14 Entered 03/06/14 15:93:20    Page 72 of 60    372
13-53846-tjt    Doc 1140-7    Filed 10/10/13    Entered 10/10/13 14:54:54    Page 72 of
100

shall be printed, lithographed or typewritten on plain or safety paper with or without printed or steel engraved borders.

(b)     *Unless* otherwise provided in the Trust Agreement, the Certificates shall be:

(1)     numbered consecutively from "R-1" within each Series; *provided* that a distinctive designation shall be in addition to such number to, or notation made on, any Certificate authenticated and delivered in substitution for any lost, mutilated or destroyed Certificate;

(2)     issued in the denomination of $5,000 and any multiple thereof; and

(3)     dated the date of initial issuance.

## Section 307.     Authentication.

No Certificate shall be valid for any purpose or be entitled to any security or benefit under the Trust Agreement unless and until a certificate of authentication on such Certificate, substantially in the form prescribed by the Trust Agreement, has been manually executed by the Trustee. Such executed certificate of the Trustee upon a Certificate shall be the only and conclusive evidence that such Certificate has been authenticated and delivered under the Trust Agreement.

## Section 308.     Capital Appreciation COPs

The Principal Amount of any Capital Appreciation COPs shall accrete in accordance with the Accreted Value provided for in the Trust Agreement.

## Section 309.     Payments in US Dollars

All payments on Certificates shall be made by negotiable instruments payable in funds representing legal tender in the United States or by means of transferring such funds.

## Section 310.     Payment of Interest; Interest Rights Preserved.

(a)     Interest payable on any Certificate and paid on an Interest Payment Date shall be paid to the Person in whose name that Certificate (or one or more Predecessor Certificates) is registered at the close of business on the Regular Record Date for such Series.

(b)     Interest payable on any Certificate and *not* paid on an Interest Payment Date when due shall be *not* paid to the registered Holder on the relevant Regular Record Date by virtue of being such Holder and shall be payable as a Deficit Interest Related Payment to the Person in whose name such Certificate (or a Predecessor Certificate) is registered at the close of business on a Special Record Date for the payment of such Deficit Interest Related Payment.

(c)     If an amount is payable as all or any part of a Deficit Interest Related Payment received by the Trustee, the Trustee shall establish a day for the payment of such amount not less than 10 days after the receipt of such amount and shall establish a Special Record Date which shall be not more than 15 nor fewer than 10 days before the date set for payment of such amount. The Trustee shall mail notice of a Special Record Date to the Certificateholders at least 10 days before such Special Record Date.

(d)     Subject to the foregoing provisions of **this Section**, each Certificate delivered under the Trust Agreement upon transfer of or in exchange for or in lieu of any other Certificate

shall carry all the rights to Interest accrued and unpaid, and to accrue, which were carried by such other Certificate.

## Section 311.    Registration, Exchanges and Transfers.

(a)        There shall be kept by the Trustee at the designated corporate trust office of the Trustee a register (the *Registry*) for the registration of Certificates and for the registration of transfers of Certificates as herein provided *subject* to such reasonable regulations as the Trustee may prescribe.

(b)        Upon surrender of any Certificate for transfer of the registration thereof, the Trustee shall authenticate and register in the name of the designated transferee or transferees one or more new Certificates of the same tenor in any authorized denomination in like aggregate Principal Amount.

(c)        At the option of the Holder, Certificates may be exchanged for other Certificates of the same tenor in any authorized denomination, of like aggregate principal amount, upon surrender of the Certificates to be exchanged at the designated corporate trust office of the Trustee. Whenever any Certificates are surrendered for exchange, the Trustee shall authenticate and deliver the Certificates that the Certificateholder making the exchange is entitled to receive.

(d)        All Certificates issued upon any transfer of registration or exchange of Certificates shall constitute valid evidences of beneficial interests in the Trust Estate evidencing the same beneficial interests and entitled to the same benefits under the Trust Agreement as the Certificates surrendered in such transfer or exchange.

(e)        No service charge may be made for any transfer of registration or exchange of Certificates, but the Trustee may make a charge sufficient to reimburse it for any tax, fee or other governmental charge required to be paid with respect such transfer or exchange. The Trustee may make the payment of such tax, fee or other governmental charge and the cost of preparing each new Certificate delivered in such transfer or exchange a condition precedent to making any transfer of registration or exchange of any Certificate, to be paid by the Person requesting such transfer or exchange *unless* otherwise provided in the Trust Agreement.

(f)        The Trustee shall not be required (i) to transfer or exchange any Certificate during a period beginning at the opening of business 15 days before the day of the mailing of a notice of redemption of such Certificate and ending at the close of business on the day of such mailing, or (ii) to transfer or exchange any Certificate selected for redemption in whole or in part, during a period beginning at the opening of business on any Regular Record Date for such Certificates and ending at the close of business on the relevant Interest Payment Date therefor.

## Section 312.    Persons Deemed Owners.

The Trustee may treat the Person in whose name any Certificate is registered in the Registry as the owner of such Certificate, whether payments with respect to such Certificate shall be overdue or not, for the purpose of receiving payment of the principal thereof, premium, if any, and (subject to **Section 310**) Interest thereon and for all other purposes whatsoever.

13-53846-swr   Doc 3616-4 Filed 03/06/14 Entered 03/06/14 15:35:20 Page 74 of 60      374
13-53846-tjt   Doc 1140-7   Filed 10/10/13   Entered 10/10/13 14:54:54   Page 74 of
100

**Section 313.    Mutilated, Destroyed, Stolen or Lost Certificates.**

(a)    To the extent not otherwise provided by law, *if* (i) any mutilated Certificate is surrendered to the Trustee, or the Trustee receives evidence to its satisfaction of the destruction, loss or theft of any Certificate, and (ii) there is delivered to the Trustee such security or indemnity as may be required by the Trustee to save the Trustee harmless, *then*, in the absence of notice to the Trustee that such Certificate has been acquired by a protected purchaser, the Trustee shall authenticate and deliver, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Certificate, a new Certificate of the same maturity and of like tenor and principal amount, bearing a number not contemporaneously outstanding.

(b)    In case any such mutilated, destroyed, lost or stolen Certificate has become or is about to become due and payable at Maturity, the Trustee in its discretion may, instead of issuing a new Certificate, pay such Certificate.

(c)    Upon the issuance of any new Certificate under **this Section**, the Trustee may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses connected therewith.

(d)    Every new Certificate issued pursuant to **this Section** in lieu of any destroyed, lost or stolen Certificate, shall constitute an original additional beneficial interest in the Funding Trust, whether or not the destroyed, lost or stolen Certificate shall be at any time enforceable by anyone, and shall be entitled to all the security and benefits of the Trust Agreement equally and ratably with all other Certificates issued thereunder

(e)    The provisions of **this Section** are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Certificates.

**Section 314.    Cancellation and Destruction of Certificates.**

(a)    All Certificates surrendered for payment, redemption, transfer or exchange shall be promptly cancelled by the Trustee upon its receipt thereof if not already cancelled.

(b)    No Certificate shall be authenticated in lieu of or in exchange for any Certificate cancelled as provided in **this Section**, *except* as expressly provided by the Trust Agreement.

(c)    All cancelled Certificates held by the Trustee shall be destroyed and disposed of by the Trustee in accordance with applicable record retention requirements.

**Section 315.    Book-Entry Certificates; Securities Depository.**

(a)    As used herein:

*Beneficial Owner* means any Person who indirectly owns Certificates pursuant to Part 5 of Article 8 of the Uniform Commercial Code in effect in the State of Michigan.

*Participant* means any Person whose ownership of Certificates and other securities is shown on books of the Securities Depository.

1974114.0058/394230                                      10

13-53846-swr    Doc 3616-4  Filed 03/06/14  Entered 03/06/14 01:59:20  Page 75 of 60
13-53846-tjt    Doc 1140-7   Filed 10/10/13   Entered 10/10/13 14:54:54   Page 75 of 100                    375

(b)     For so long as Certificates are registered in the name of a Securities Depository or its nominee, the Trustee shall not have any responsibility or obligation to any Participant or to any Beneficial Owner with respect to the following:

(1)     the accuracy of the records of the Securities Depository, its nominee or any Participant with respect to any ownership Interest in the Certificates,

(2)     the delivery to any Participant, and Beneficial Owner or any other Person, other than the Securities Depository of any notice with respect to the Certificates, including any notice of redemption, or

(3)     the payment to any Participant, any Beneficial Owner or any other Person, other than the Securities Depository of any amount with respect to the principal of or premium, if any, or Interest on the Certificates.

(c)     The Trustee shall pay all principal (and premium, if any) of and Interest on such Certificates only to or upon the order of the Securities Depository, and all such payments shall be valid and effective fully to satisfy and discharge the Funding Trust's obligations with respect to the principal (and premium, if any) of, and Interest on such Certificates to the extent of the sum or sums so paid.

(d)     Upon discontinuance of the use of the Book-Entry Only System maintained by the Securities Depository and upon receipt of notice from the Securities Depository containing sufficient information, the Trustee shall authenticate and deliver Certificates in certificated form to Beneficial Owners in exchange for the beneficial interests of such Beneficial Owners in corresponding principal amounts and in any Authorized Denomination.

(e)     Notwithstanding any other provision of the Trust Agreement to the contrary, *so long as* any Certificate is registered in the name of the Securities Depository or its nominee:

(1)     all payments with respect to the Principal and Interest on such Certificate and all notices of redemption, tender and otherwise with respect to such Certificate shall be made and given, respectively, to Securities Depository as provided in the representation letter with respect to such Certificates;

(2)     if less than all such Certificates of a maturity and series are to be redeemed, then the particular Certificates or portions of Certificates of such maturity and series to be redeemed shall be selected by the Securities Depository in such manner as the Securities Depository may determine; and

(3)     all payments with respect to principal of such Certificate and premium, if any, and Interest on such Certificate shall be made in such manner as shall be prescribed by the Securities Depository.

## Article IV — Redemption of Certificates

### Section 401.     Selection of Certificates to be Redeemed.

(a)     Whenever any Certificates of a Series are to be redeemed, the Trustee shall select the maturity or maturities that correspond to the prepaid Scheduled Payments giving rise to such redemption.

(b)     Whenever Certificates of less than all of a maturity are to be redeemed, the Trustee shall select the particular Certificates to be redeemed from the Outstanding Certificates of such maturity and Series that have not previously been called for redemption in such manner as results in pro-rata redemption among all Holders of Certificates of the maturity being redeemed.

(1)     All Certificates of the same Series and having the same maturity shall constitute a class for purposes of pro-rata redemption.

(2)     The Trustee shall select Certificates for redemption pro-rata within each class.

(c)     In the case of any maturity of Certificates for which Sinking Fund Installments have been established, any optional redemption of such Certificates shall be credited among such Sinking Fund Installments pro rata in accordance with the unpaid amounts thereof.

**Section 402.     Notice of Redemption.**

(a)     When any Certificates are to be redeemed, notice of any such redemption shall be given by the Trustee by first class mail, no fewer than 30 days and no more than 45 days before the Redemption Date to each Holder of Certificates to be redeemed at his/her last address in the Registry.

(b)     All notices of redemption shall be dated and shall state:

(1)     the Redemption Date;

(2)     the Redemption Price;

(3)     if less than all Outstanding Certificates are to be redeemed, the identification number, maturity dates and, in the case of a partial redemption of Certificates, the respective principal amounts of the Certificates to be redeemed;

(4)     that on the Redemption Date the Redemption Price will become due and payable upon each such Certificate or portion thereof called for redemption, and that interest thereon shall cease to accrue from and after said date;

(5)     the place where the Certificates to be redeemed are to be surrendered for payment of the Redemption Price, which place of payment shall be the designated corporate trust office of the Trustee or other Paying Agent; and

(6)     the proposed redemption (except in the case of a redemption from Sinking Fund Installments (a **Sinking Fund Redemption**) is conditioned on the Trustee having received a Redemption Related Payment on the Prepayment Receipt Day sufficient to pay the full Redemption Price of the Certificates to be redeemed.

(c)     The failure of the Holder of any Certificate to receive notice of redemption given as provided above, or any defect therein, shall not affect the sufficiency of the proceedings for the redemption of any Certificates as to which no failure or deficiency occurred.

(d)     Concurrently with giving any notice of redemption, the Trustee shall provide additional notices in accordance with **this subsection** to the extent applicable:

(1)     An additional notice that provides material compliance with Securities Exchange Act Release No. 34-23856 (Dec. 3, 1986) as the same may be modified, amended or supplemented from time to time by formal action of the Securities and Exchange Commission or by generally accepted practice of corporate trustees. No failure to give such additional notice or defect therein or in the manner in which given shall affect the sufficiency of the proceedings for the redemption of any Certificates.

(2)     Except in the case of a Sinking Fund Redemption, an additional notice that identifies the Certificates to be redeemed and the principal amounts and CUSIP numbers thereof shall be provided to each Insurer.

(3)     No failure to give any additional notice provided for in **this subsection** or defect therein or in the manner in which given shall affect the sufficiency of the proceedings for the redemption of any Certificates.

**Section 403.     Certificates Payable on Redemption Date.**

(a)     Notice of redemption having been given as aforesaid, the Holders of the Certificates so to be redeemed shall be entitled, on the Redemption Date, to payment of an amount equal to the Redemption Price therein specified and from and after such date (unless the full amount of the Redemption Price is not distributed) the Holders of such Certificates shall cease to be entitled to any further payment in respect of Interest. Upon surrender of any such Certificate for redemption in accordance with said notice, the Holder of such Certificate shall be paid by the Trustee an amount equal to the Redemption Price. Installments of Interest with a due date on or prior to the Redemption Date shall be payable to the Holders of the Certificates as of the relevant Record Dates.

(b)     If any Certificate called for redemption shall not be so paid upon surrender thereof for redemption, the principal (and premium, if any) shall, until paid, bear Interest from the Redemption Date at the rate prescribed in the Certificate.

**Section 404.     Certificates Redeemed in Part.**

Any Certificate which is to be redeemed only in part may, at the option of the Holder thereof:

(1)     be presented for notation thereon by the Trustee of the payment as of the Redemption Date of the redeemed portion of the principal thereof; or

(2)     be surrendered at the place of payment therefor (with, if the Trustee so requires, due endorsement by, or a written instrument of transfer in form satisfactory to the Trustee duly executed by, the Holder thereof or his attorney or legal representative duly authorized in writing), and the Trustee shall authenticate and deliver to such Holder, without service charge, a new Certificate or Certificates of the same maturity and Series of any authorized denomination or denominations as requested by such Holder in aggregate principal amount equal to and in exchange for the unredeemed portion of the principal of the Certificate so surrendered.

13-53846-swr     Doc 3616-4     Filed 03/06/14     Entered 03/06/14 15:39:20     Page 17 of 60     378
13-53846-tjt     Doc 1140-7     Filed 10/10/13     Entered 10/10/13 14:54:54     Page 78 of
100

## Article V — Payments to Certificateholders

### Section 501.    Deficiency Payments

(a)    On the day that the Trustee receives a <u>Deficit Interest Related Payment</u> from the Contract Administrator, the Trustee shall establish a Special Record Date pursuant to **Section 310** and pay the same to the Certificate Holders entitled thereto in accordance with their relative Percentage Interests.

(b)    On the day that the Trustee receives a Deficiency Payment, other than a Deficit Interest Payment, from the Administrator the Trustee shall pay the same to the Certificate Holders entitled thereto in accordance with their relative Percentage Interests.

### Section 502.    Other Payments

(a)    On each <u>Interest Payment Date</u> for which the Trustee has received an Interest Related Payment from the Contract Administrator, the Trustee shall pay the same to the Holders of Outstanding Certificates entitled to such Interest by the terms of their Certificates as of the Regular Record Date in accordance with their relative Percentage Interests.

(b)    On each <u>Principal Payment Date</u> for which the Trustee has received a Principal Related Payment from the Contract Administrator, the Trustee shall pay the same to the Holders of Certificates entitled to such Principal Related Payment by the terms of their Certificates in accordance with their relative Percentage Interests.

(c)    On each <u>Sinking Fund Installment Date</u> for which the Trustee has received a Sinking Fund Related Payment from the Contract Administrator, the Trustee shall pay the same to Holders of Outstanding Certificates entitled to such Sinking Fund Related Payment by reason of the redemption of their Certificates in accordance with their relative Percentage Interests of Certificates being redeemed.

(d)    On each <u>Redemption Date</u> that *is* also an Interest Payment Date for which the Trustee has received a Redemption Related Payment from the Contract Administrator, the Trustee shall pay the same to Holders of Outstanding Certificates entitled to such Redemption Related Payment by reason of the redemption of their Certificates in accordance with their relative Percentage Interests of Certificates being redeemed.

(e)    On each <u>Redemption Date</u> that is *not* also an Interest Payment Date for which the Trustee has received a Redemption Related Payment that includes associated Accrued Service Charges from the Contract Administrator, the Trustee shall pay the same to the Holders of Outstanding Certificates entitled to such Redemption Related Payment and Accrued Service Charges by reason of the redemption of their Certificates in accordance with their relative Percentage Interests of Certificates being redeemed.

### Section 503.    Payments Made From Credit Insurance

In determining if any payment under the Certificates has been made, no effect shall be given to any payment made with funds provided under any Credit Insurance.

## Article VI — The Trustee

### Section 601.  Certain Duties and Responsibilities.

(a)    The Trustee undertakes to perform such duties and only such duties as are specifically set forth in the Trust Agreement, and no implied covenants or obligations shall be read into the Trust Agreement against the Trustee.

(b)    In the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates, documents, other instruments or opinions furnished to the Trustee and conforming to the requirements of the Trust Agreement or the Service Contract; *but* in the case of any such certificates, documents, other instruments or opinions which by any provision hereof or thereof are specifically required to be furnished to the Trustee, the Trustee is under a duty to examine the same to determine whether or not they conform to the requirements of the Trust Agreement.

(c)    No provision of the Trust Agreement or the Service Contract shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, *except* that

(1)    the Trustee shall not be liable for any error of judgment made in good faith by an authorized officer of the Trustee, *unless* it is proved that the Trustee was negligent in ascertaining the pertinent facts;

(2)    the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders of a majority in principal amount of the Outstanding Certificates relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee, under the Trust Agreement or the Service Contract; and

(3)    no provision of the Trust Agreement shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder or thereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

(d)    Whether or not therein expressly so provided, every provision of the Trust Agreement relating to the conduct or affecting the liability of or affording protection to the Trustee is subject to the provisions of this Article.

### Section 602.  Certain Rights of Trustee.

(a)    The Trustee may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties;

(b)    Any request, direction or consent of a Corporation mentioned in the Trust Agreement shall be sufficiently evidenced respectively by a Corporation Request, Corporation Order or Corporation Consent.

13-53846-swr   Doc 3606-4 Filed 03/06/14 Entered 03/06/14 15:55:20 Page 80 of 60   380
13-53846-tjt   Doc 1140-7   Filed 10/10/13   Entered 10/10/13 14:54:54   Page 80 of
100

(c) Whenever in the administration of the Trust Agreement the Trustee shall deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Trustee (unless other evidence be herein specifically prescribed) may, in the absence of bad faith on its part, rely upon a certificate of the Contract Administrator.

(d) The Trustee may consult with counsel, and the written advice of such counsel is full and complete authorization and protection in respect of any action taken, suffered or omitted by the Trustee hereunder in good faith and in reliance thereon.

(e) The Trustee is under no obligation to exercise any of the rights or powers vested in it by the Trust Agreement at the request or direction of any of the Certificateholders pursuant to the Trust Agreement, *unless* such Certificateholders shall have offered to the Trustee reasonable security or indemnity against the costs, expenses and liabilities which might be incurred by it in compliance with such request or direction.

(f) The Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, or other paper or document, *but* the Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit.

(g) The Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys and the Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder.

(h) The Trustee shall have no duty to see to the recording, filing or registration of any instrument or document (including financing or continuation statements or filing under tax or security laws) or any rerecording, refiling or re-registration.

(i) The Trustee shall not have any responsibility to examine or review and shall have no liability for the contents of any documents submitted to or delivered to any Certificateholder or any other Person in the nature of an official statement or offering circular, preliminary or final.

**Section 603.    Not Responsible for Recitals or Issuance of Certificates.**

The Trustee assumes no responsibility for the correctness of the recitals contained in the Trust Agreement, in a Service Contract or in the Certificates *except* the certificate of authentication on the Certificates. The Trustee makes no representations as to the value or condition of the Trust Estate or any part thereof, or as to the title thereto or as to the security afforded thereby or hereby, or as to the validity or sufficiency of the Trust Agreement or of the Certificates.

**Section 604.    May Hold Certificates.**

The Trustee, in its individual or any other capacity, may become the owner or pledgee of Certificates with the same rights it would have if it were not Trustee.

### Section 605. Money Held in Trust.

Money held by the Trustee in trust hereunder need not be segregated from other funds except to the extent required by law or by other provision of the Trust Agreement. The Trustee shall be under no liability for interest on any money received by it hereunder.

### Section 606. Compensation and Reimbursement

(a) The Trustee is entitled to payment or reimbursement:

(1) from time to time for reasonable compensation for all services rendered by it hereunder (which compensation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust); and

(2) except as otherwise expressly provided herein, upon its request, for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of the Trust Agreement (including, without limitation, the reasonable compensation and the expenses and disbursements of its agents and counsel), except any such expense, disbursement or advance as may be attributable to the Trustee's negligence, willful misconduct or bad faith.

(b) The Trustee is also entitled indemnification for, and to be held harmless against, any loss, liability or expense incurred without negligence, willful misconduct or bad faith on its part, arising out of or in connection with the acceptance or administration of the Trust Agreement, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder.

(c) The compensation, expenses and indemnification of the Trustee here under shall be an Additional Service Payment under the Service Contracts.

### Section 607. No Lien

The Trustee shall not have any lien on any funds held by it under the Trust Agreement.

### Section 608. Corporate Trustee Required; Eligibility.

(a) There shall at all times be a Trustee hereunder which is a trust company or bank with trust powers organized under the laws of the United States of America or of any state of the United States with a combined capital and surplus of at least $50,000,000. *If* such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of such supervising or examining authority, *then* for the purposes of **this Section**, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published.

(b) The Trustee shall resign immediately in the manner and with the effect specified in this Article if it becomes ineligible under **this Section**.

## Section 609.   Replacement of Trustee.

    (a)    *No Vacancy.*

No resignation or removal of the Trustee and no appointment of a successor Trustee pursuant to this Article shall be effective until the successor Trustee accepts its appointment as provided in **this Section**.

    (b)    *Resignation.*

The Trustee may resign at any time, but such resignation shall become effective only in accordance with **subsection (a)**, above. Notice of any such resignation shall be given to the Corporations, the Holders of all Outstanding Certificates and any Insurer not then in default under its Credit Insurance.

    (c)    *Removal by Certificateholders.*

    (1)    The Holders of a majority in principal amount of Outstanding Certificates may remove the Trustee by so notifying the Trustee and any Insurer.

    (2)    If the Trustee becomes ineligible under **Section 608**, any Certificateholder may petition a court of competent jurisdiction for the appointment of a successor.

    (d)    *Appointment of Successor.*

    (1)    The retiring Trustee or the Corporations may appoint a successor at any time prior to the date on which a successor Trustee takes office.

    (2)    If a successor Trustee does not take office within 45 days after the retiring Trustee resigns or is removed, any Certificateholder may petition a court of competent jurisdiction for the appointment of a successor Trustee.

    (3)    Within one year after a successor Trustee appointed by the Corporations or a court of competent jurisdiction takes office, the Holders of a majority in principal amount of Outstanding Certificates may appoint a successor Trustee to replace such successor Trustee.

    (e)    *Acceptance of Appointment.*

    (1)    A successor Trustee shall deliver written acceptance of its appointment to the retiring Trustee and to each Corporation. Thereupon the resignation or removal of the retiring Trustee shall be effective, and the successor Trustee shall have all the rights, powers and duties of the Trustee under the Trust Agreement.

    (2)    The successor Trustee shall mail a notice of its succession to the Certificateholders.

    (3)    Upon the appointment of a successor Trustee becoming effective as provided in **this Section**, the retiring Trustee shall promptly transfer all property held by it as Trustee to the successor Trustee.

## Section 610.   Merger, Consolidation and Succession to Business.

If the Trustee consolidates, merges or converts into, or transfers all or substantially all its corporate trust business to, another corporation, the successor corporation without any further act

13-53846-swr   Doc 3616-4 Filed 03/09/21   Entered 03/09/21 15:35:20   Page 83 of 60
13-53846-tjt   Doc 1140-7   Filed 10/10/13   Entered 10/10/13 14:54:54   Page 83 of 100

383

shall be the successor Trustee *if* such successor corporation is eligible under **Section 608**. The successor Trustee may adopt the authentication of Certificates authenticated by the predecessor Trustee and deliver such Certificates with the same effect as if the successor Trustee had authenticated such Certificates.

## Section 611.   ERISA

The Trustee acknowledges and agrees that, in the event that assets of the Funding Trust are deemed to be plan assets of a Certificateholder that is an employee benefit plan subject to Title I of ERISA (an ***ERISA Plan***), the Trustee is a fiduciary to such ERISA Plan with respect to such ERISA Plan's undivided interests in the Trust Estate, and this Trust Agreement shall be deemed to be the management agreement between the Trustee and such ERISA Plan.

## Article VII — Supplemental Trust Agreements

### Section 701.   Supplemental Trust Agreements without Consent of Certificateholders.

Without the consent of the Holders of any Certificates, the Corporations and the Trustee may from time to time enter into one or more Trust Agreements supplemental to the Trust Agreement (a ***Supplemental Trust Agreement***) for any of the following purposes:

(1)     to correct or amplify the description of Trust Estate, or better to assure, convey and confirm unto the Trustee any of the Trust Estate or the lien of the Trust Agreement thereon, or to add to the Trust Estate subject to the lien of the Trust Agreement additional property; or

(2)     to add to the conditions, limitations and restrictions on the authorized amount, terms or purposes of the issue, authentication and delivery of the Certificates, as herein set forth, additional conditions, limitations and restrictions thereafter to be observed; or

(3)     to evidence the succession of a new trustee under the Trust Agreement; or

(4)     to add to rights, powers and remedies of the Trustee for the benefit of the Holders of the Certificates; or

(5)     to cure any ambiguity, to correct or to supplement any provision in the Trust Agreement which may be inconsistent with any other provision herein; or

(6)     to provide for the issuance of Additional Certificates; or

(7)     to make any other change that does not adversely affect the rights of Certificateholders.

## Section 702.   Supplemental Trust Agreements with Consent of Certificateholders.

(a)     With the consent of the Holders of not less than a majority in principal amount of the Certificates then Outstanding, the Trustee may enter into one or more Supplemental Trust Agreements for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Trust Agreement or of modifying in any manner the rights of the Holders of the Certificates under the Trust Agreement; *provided*, however, that no

such Supplemental Trust Agreement shall, without the consent of the Holder of each Outstanding Certificate affected thereby; or

(1)     change any Principal Payment Date, or Interest Payment Date of any Certificate, or reduce the principal amount thereof or Sinking Fund Installment or the Interest thereon or any premium payable upon the redemption thereof, or change any place of payment where, or the coin or currency in which, any Certificate, or the interest thereon is payable, or impair the right to institute suit for the enforcement of any such payment on or after the stated maturity thereof (or, in the case of redemption, on or after the Redemption Date); or

(2)     reduce the percentage in principal amount of the Outstanding Certificates, the consent of whose Holders is required for any such Supplemental Trust Agreement, or the consent of whose Holders is required for any waiver provided for in the Trust Agreement of compliance with certain provisions of the Trust Agreement or certain defaults hereunder and their consequences; or

(3)     modify any of the provisions of **Sections 202 and 203**; or

(4)     modify any of the provisions of **this Section**, or **Section 701** *except* to increase any percentage provided thereby or to provide that certain other provisions of the Trust Agreement cannot be modified or waived without the consent of each Holder affected thereby.

(b)     It is not necessary that the required percentage in principal amount of Certificateholders under **this Section** approve the particular form of any proposed Supplemental Trust Agreement. It is sufficient if the Certificateholders approve the substance thereof.

**Section 703.     Execution of Supplemental Trust Agreements.**

(a)     Prior to executing, or accepting the additional trusts created by, any Supplemental Trust Agreement permitted by this Article or the modification thereby of the trusts created by the Trust Agreement, the Trustee shall be entitled to receive and shall be fully protected in relying upon, an opinion of counsel addressed and delivered to the Trustee stating to the effect that the execution of such Supplemental Trust Agreement is authorized or permitted by the Trust Agreement and that the Supplemental Trust Agreement will be a valid and binding agreement of each Corporation, upon the execution and delivery thereof.

(b)     The Trustee is not obligated to enter into any Supplemental Trust Agreement that affects the Trustee's own rights, duties or immunities under the Trust Agreement.

**Section 704.     Preconditions to Effectiveness**

(a)     *If* the Trustee received a Qualifying Opinion in connection with the formation of the Trust, *then no* Supplemental Trust Agreement shall become effective *unless and until* the Trustee receives an opinion in form and substance reasonably satisfactory to the Trustee of counsel reasonably acceptable to the Trustee to the effect that such supplement will not cause the Trust to fail to be treated as such a grantor trust.

(b)     Each Supplemental Trust Agreement is subject to the prior written consent of any Insurer not then in default under its Credit Insurance.

1974114.0058/394230

20

13-53846-swr     Doc 3516-4     Filed 03/06/14     Entered 03/06/14 13:01:59     Page 85 of 100
13-53846-tjt     Doc 1140-7     Filed 10/10/13     Entered 10/10/13 14:54:54     Page 85 of 100

385

(c)     Any Rating Agency shall receive notice of each Supplemental the Trust Agreement and a copy thereof at least 15 days in advance of its execution.

### Section 705.    Effect of Supplemental Trust Agreements.

Upon the execution of any Supplemental Trust Agreement under this Article, the Trust Agreement shall be modified in accordance therewith and such Supplemental Trust Agreement shall form a part of the Trust Agreement for all purposes; and every Holder of Certificates theretofore or thereafter authenticated and delivered hereunder shall be bound thereby.

### Section 706.    Copies to Insurer

Any Insurer shall be provided with a full transcript of all proceedings relating to the execution of any Supplemental Trust Agreement.

### Section 707.    Reference in Certificates to Supplemental Trust Agreements.

(a)     Certificates authenticated and delivered after the execution of any Supplemental Trust Agreement pursuant to this Article may, and if required by the Trustee shall, bear a notation in form approved by the Trustee as to any matter provided for in such Supplemental Trust Agreement.

(b)     If a Corporation shall so determine, new Certificates so modified as to conform, in the opinion of the Trustee and such Corporation, to any such Supplemental Trust Agreement may be prepared and executed by such Corporation and authenticated and delivered by the Trustee in exchange for Outstanding Certificates.

## Article VIII — Miscellaneous Provisions

### Section 801.    Notices to Certificateholders; Waiver.

(a)     Where the Trust Agreement provides for the publication of notice to Certificateholders, such notice shall be sufficiently given (unless otherwise expressly provided in the Trust Agreement) if in writing and mailed, first-class postage prepaid, to each Certificateholder at his address as it last appears in the Registry, no later than the latest date and no earlier than the earliest date provide for the first publication of such notice.

(b)     Where the Trust Agreement provides for notice in any manner, such notice may be waived by the Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice shall be filed with the Trustee, *but* such filing shall not be a condition precedent to the validity of any action taken in reliance on the waiver.

### Section 802.    Insurer Treated as Certificateholder

*Notwithstanding any other provision hereof*, any Insurer not then in default under its Credit Insurance shall be treated as the Holder of the Certificates insured by it for the purposes of actions to be taken by Certificateholders under the Trust Agreement and for the purpose of giving all other consents, directions and waivers that Certificateholders may give.

1974114.0058/394230

21

13-53846-swr    Doc 1140-7    Filed 10/10/13    Entered 10/10/13 14:54:54    Page 86 of 386
13-53846-tjt    Doc 1140-7    Filed 10/10/13    Entered 10/10/13 14:54:54    Page 86 of 100

## Section 803.    Severability

The invalidity or unenforceability of any provision of the Trust Agreement shall not affect the remaining provisions hereof.

## Section 804.    Payments Due on Saturdays, Sundays and Holidays

In any case where the date fixed for payment of the Certificates shall not be a Business Day, *then* such payment need not be made on such date but may be made on the next succeeding Business Day with the same force and effect as if made on the date fixed for such payment.

*[End of General Terms]*

**Exhibit 6**

**Collateral Agreement (CA)**

# Collateral Agreement

among

## The City of Detroit,

## Detroit General Retirement System Service Corporation

and

## Detroit Police and Fire Retirement System Service Corporation,

**severally and not jointly,**

## U.S. Bank National Association,

**as Custodian**

and the

## Other Persons Party Hereto

---

**Dated as of June 15, 2009**

---

# Table of Contents

**Article I. Definitions and Related Matters** ................................................................1
    Section 1.1.    Certain Definitions..........................................................................1
    Section 1.2.    Definitions in Authorizing Ordinance ...............................................8
    Section 1.3.    Definition of *Counterparty* ...............................................................9
    Section 1.4.    Definition of *Developer Payments* and Ancillary Definitions ...........9
    Section 1.5.    Definition of *Holdback Requirement* and Ancillary Definitions......11
    Section 1.6.    Definition of *Wagering Tax Property* and Ancillary Definitions......12
    Section 1.7.    Time  12
    Section 1.8.    Business Days ...................................................................................12
    Section 1.9.    Interpretation....................................................................................12

**Article II. Effectiveness of this Agreement** ..............................................................13
    Section 2.1.    Closing Date .....................................................................................13
    Section 2.2.    Satisfaction of Conditions Precedent.................................................13
    Section 2.3.    Factual Conditions Precedent ............................................................13
    Section 2.4.    Documentary Conditions Precedent ...................................................13

**Article III. General Provisions; Irrevocable Instructions**.......................................13
    Section 3.1.    Appropriation....................................................................................13
    Section 3.2.    No Indebtedness................................................................................14
    Section 3.3.    Contractual Obligations ....................................................................14
    Section 3.4.    Irrevocable Instructions ....................................................................14
    Section 3.5.    Payments from Accounts ..................................................................15

**Article IV. Pledges and Grant of Security Interests**................................................15
    Section 4.1.    City Pledge.......................................................................................15
    Section 4.2.    Service Corporation Grant of Security Interests................................15
    Section 4.3.    Alternative Service Corporation Pledge ............................................16

**Article V. Certain Payments** .....................................................................................16
    Section 5.1.    Payment of Revenues .......................................................................16
    Section 5.2.    Monthly Payments by City ...............................................................17
    Section 5.3.    Payments to City from General Receipts Subaccount........................17
    Section 5.4.    When Payments from General Receipts Subaccount Prohibited.........18
    Section 5.5.    Payments to City from Holdback Account.........................................18
    Section 5.6.    Payments by City to Holdback Account.............................................19
    Section 5.7.    Payments to the Counterparties and the Custodian from Holdback Account .19
    Section 5.8.    Payment Determinations....................................................................19

**Article VI. Representations and Warranties of the City**..........................................20
    Section 6.1.    General Representations and Warranties.............................................20
    Section 6.2.    Revenues..........................................................................................21
    Section 6.3.    Developer Agreements and Guaranties ..............................................21
    Section 6.4.    No Other Liens, Charges or Encumbrances .......................................21
    Section 6.5.    No Control Granted ..........................................................................22

**Article VII. Representations and Warranties of Service Corporations** ..................22
    Section 7.1.    General Representations and Warranties.............................................22
    Section 7.2.    Concerning the Security Interests......................................................23

13-53846-swr    Doc 361-7-4   Filed 08/06/43  Entered 08/06/43 20:53:520  Page 3 90 72   390
13-53846-tjt    Doc 1140-7    Filed 10/10/13  Entered 10/10/13 14:54:54  Page 90 of
100

**Article VIII. The Accounts** ..................................................................................**24**
    Section 8.1.    Establishment of Accounts ......................................................24
    Section 8.2.    Developer Subaccounts ...........................................................25
    Section 8.3.    Receipt of Revenues ...............................................................25
    Section 8.4.    Transfer of Revenues to General Receipts Subaccount.................25
    Section 8.5.    Receipt of City Payments .......................................................26
    Section 8.6.    General Receipts Account .......................................................26
    Section 8.7.    Holdback Account ..................................................................26
    Section 8.8.    Investments ...........................................................................26

**Article IX. City Covenants** ..................................................................................**26**
    Section 9.1.    No Senior or Parity Pledges or Liens ......................................26
    Section 9.2.    Junior Pledges or Liens ..........................................................26
    Section 9.3.    Further Assurances .................................................................27
    Section 9.4.    No Control Granted .................................................................27
    Section 9.5.    Excluded Property ..................................................................27
    Section 9.6.    No Development Agreement Amendments.................................27

**Article X. Service Corporation Covenants** ..........................................................**28**
    Section 10.1.   No Pledges of Liens of Service Corporation Property ................28
    Section 10.2.   No Control Granted .................................................................28
    Section 10.3.   Excluded Property ..................................................................28
    Section 10.4.   Alternative Taxes...................................................................28
    Section 10.5.   Alternative Payment of Developer Payments............................28
    Section 10.6.   Further Assurances .................................................................28

**Article XI. Remedies** ...........................................................................................**29**
    Section 11.1.   Remedies under Hedges .........................................................29
    Section 11.2.   Remedies as Secured Party......................................................29
    Section 11.3.   Limitation on Remedies..........................................................30
    Section 11.4.   Failure to Appropriate............................................................30
    Section 11.5.   Indemnity .............................................................................30
    Section 11.6.   *Specified Event* means any of the following events: .................31

**Article XII. The Custodian** .................................................................................**33**
    Section 12.1.   No Fiduciary Duties or Responsibilities...................................33
    Section 12.2.   Duties and Responsibilities......................................................33
    Section 12.3.   Certain Rights of Custodian.....................................................34
    Section 12.4.   May Hold 2006 Pension Funding Securities. ............................34
    Section 12.5.   Reporting of City Payments....................................................35
    Section 12.6.   Weekly Reports .....................................................................35
    Section 12.7.   Monthly Holdback Compliance Notice ....................................35
    Section 12.8.   Quarterly Accounting ............................................................35
    Section 12.9.   Coverage Reports...................................................................35
    Section 12.10.  Compensation, Reimbursement and Indemnification.................36
    Section 12.11.  Prior Payment of Regular Custodian Payments.........................37
    Section 12.12.  Corporate Custodian Required; Eligibility. ..............................37
    Section 12.13.  Replacement of Custodian.......................................................37
    Section 12.14.  Merger, Consolidation and Succession to Business. ..................38

**Article XIII. Interest Rate Limitation** ..................................................................**38**

**Article XIV. Miscellaneous** ...............................................................................**39**
    Section 14.1.    Addresses for Notices ...............................................................39
    Section 14.2.    Copies of Notices ....................................................................40
    Section 14.3.    Expenses ................................................................................40
    Section 14.4.    Termination.............................................................................40
    Section 14.5.    Amendment.............................................................................41
    Section 14.6.    Rights of Insurer .....................................................................41
    Section 14.7.    No Waiver ...............................................................................41
    Section 14.8.    Binding Obligation ..................................................................41
    Section 14.9.    Assignment.............................................................................41
    Section 14.10.   Governing Law ........................................................................41
    Section 14.11.   Venue .....................................................................................41
    Section 14.12.   WAIVERS OF JURY TRIAL..........................................................42
    Section 14.13.   Headings and Table of Contents.................................................42
    Section 14.14.   Entire Agreement .....................................................................42
    Section 14.15.   Counterparts............................................................................42

# THIS COLLATERAL AGREEMENT IS ENTERED INTO FOR SETTLEMENT PURPOSES

**Collateral Agreement**, dated as of June 15, 2009 (the **Agreement**), among the **City of Detroit**, a municipal corporation organized and existing under the laws of the State of Michigan (the **City**), the **Detroit General Retirement System Service Corporation** (the **GRS Service Corporation**) and the **Detroit Police and Fire Retirement System Service Corporation** (the **PFRS Service Corporation**), each a nonprofit corporation organized and existing under the laws of the State of Michigan, acting severally and not jointly, **U.S. Bank National Association**, a national banking association with its principal place of business in Minneapolis, Minnesota (the **Custodian**), **UBS AG** (**UBS**), **SBS Financial Products Company, LLC** (**SBS** and collectively with UBS, the **2006 Counterparties**) and **Merrill Lynch Capital Services, Inc.**, as credit support provider to SBS and, upon the occurrence of certain events, successor to SBS,.

## W I T N E S S E T H:

**Whereas**, in January 2009, the 2006 Counterparties notified the City, the GRS Service Corporation and the PFRS Service Corporation (each, a **Service Corporation** and collectively, the **Service Corporations**) that they believed that an event had occurred which entitled them to declare a certain "additional termination event" (the **2006 Additional Termination Event**) under the respective interest rate swap agreements (each, a **2006 Hedge** and collectively, the **2006 Hedges**) entered into by the Service Corporations and the 2006 Counterparties as part of the 2006 Transaction (the **2006 Transaction**) described in Ordinance No. 05-09 (the **Authorizing Ordinance**) undertaken by the City as part of its Pension System Funding Program described in therein;

**Whereas**, also as part of the 2006 Transaction the City entered into a Service Contract (a **2006 Service Contract**) with each Service Corporation (collectively, the **2006 Service Contracts**), which, among other things, provided for the City to make payments to the Service Corporations sufficient to pay amounts owing by the Service Corporations under their respective 2006 Hedges;

**Whereas**, the declaration of the 2006 Additional Termination Event could have resulted in the imposition of an immediate obligation on the City to make a combined payment to the Service Corporations in the range, estimated in January 2009, of $300 million to $400 million;

**Whereas**, the City Council adopted the Authorizing Ordinance on May 26, 2009, in contemplation of settlement with the Counterparties pursuant to the Definitive Documents;

**Now, Therefore,** in exchange for a waiver of the rights of each Counterparty to declare the 2006 Additional Termination Event and for a rescission of any declaration of the 2006 Additional Termination Event by a Counterparty made through the below defined Closing Date, and in the interest of avoiding fees and expenses of litigation and the delays that would result should litigation ensue, the parties hereto agree as follows:

## Article I. Definitions and Related Matters

### Section 1.1.   Certain Definitions

*Account* means an account established by **Section 8**.

*Accrued Service Charges* has the meaning given that term in the Service Contracts.

*Additional Termination Event* has the meaning given that term in the Hedges.

*Additional Wagering Taxes* has the meaning given that term in **Section 1.6**.

*Affected Party* has the meaning given that term in the Hedges.

*Agreement* has the meaning given that term in the first paragraph of this instrument as it may be modified or amended pursuant to the terms hereof.

*Alternative Taxes* has the meaning given that term in **Section 1.6**.

*Article 9* has the meaning given that term in **Section 1.2**.

*Authorized Investments* means (i) Any of the following to the extent an authorized investment of City funds at the time of investment:

> (A)     full faith and credit obligations of the United States of America maturing (or subject to redemption at the option of the holder) on or before the first anniversary of the investment,

> (B)     shares or other undivided interests in First American U.S. Treasury Money Market Fund,

> (C)     shares or other undivided interests in First American Treasury Obligation Fund, and

> (ii)     such other investments to the extent authorized investments of City funds at the time of investment that are acceptable to the Counterparties.

*Authorizing Ordinance* has the meaning given that term in the preamble hereto.

*Business Day* means a day on which the Custodian is open for the transaction of business in the City and State of New York and the City is open for business in Detroit, Michigan.

*Casino Licensee* has the meaning given that term in **Section 1.2**.

*City* has the meaning given that term in the preamble hereto.

*City Charter* means the Charter of the City of Detroit, Michigan.

*City Hedge Payables Related Obligations* has the meaning given that term in **Section 1.2**.

*City Payment* has the meaning given that term in **Section 5.2**.

*City Pledge* has the meaning given that term in **Section 4.1**.

*Closing* means the satisfaction of the conditions precedent to the effectiveness of this Agreement as evidenced by the Closing Certificate.

*Closing Certificate* means the certificate identified as such in **Exhibit 2.4**.

*Closing Date* means the date on which the Closing occurs.

*Contract Administration Agreement* has the meaning given that term in the Service Contracts.

*Contract Administrator* has the meaning given that term in the Service Contracts.

*Counterparty* has the meaning given that term in **Section 1.3**.

***Custodian*** means the Person identified in the first paragraph of this Agreement as the "Custodian" *unless and until* a successor is appointed successor Custodian pursuant to applicable provisions of this Agreement; *thereafter,* ***Custodian*** means such successor.

***Custodian Payment*** means any amount to which the Custodian is entitled pursuant to **Section 12.10**.

***Defaulting Party*** has the meaning given that term in the Hedges.

***Definitive Documents*** means:

     (i)  this Agreement,

     (ii)  the Service Contract Amendments,

     (iii)  the Hedge Amendments and

     (iv)  the Irrevocable Instructions.

***Detroit Entertainment Subaccount*** means the Developer Subaccount with respect to Detroit Entertainment, L.L.C.

***Developer*** has the meaning given that term in **Section 1.4**.

***Developer Payments*** has the meaning given that term in **Section 1.4**.

***Developer Subaccount*** means a subaccount established in the Receipts Account with respect to a Developer.

***Development Agreement*** has the meaning given that term in **Section 1.4**.

***Event of Default*** has the meaning given that term in the Hedges.

***Excluded Indebtedness*** means any obligations of the City payable from receipts derived from the ownership, operation or disposition of projects or systems (such as the City's Water Supply System or Sewerage Disposal System Bonds) or other special revenues as defined in Bankruptcy Code Section 902.

***Excluded Property*** means:

     (i)  Revenues, and proceeds thereof, paid to the City from the General Receipts Subaccount, or released to the City from the Holdback Account, pursuant to this Agreement and

     (ii)  the right of the City to receive any such amounts as and when paid or released.

***Existing Casino*** has the meaning given that term in **Section 1.4**.

***Existing Developer*** has the meaning given that term in **Section 1.4**.

***Existing Development Agreement*** has the meaning given that term in **Section 1.4**.

***Existing Payment Section*** has the meaning given that term in **Section 1.4**.

***Final Payment*** means, as of a Term Period End Date or the date that an Unqualified Hedge Event occurs, the sum of:

     (i)  any Custodian Payment then due and owing to the Custodian *plus*

(ii)  in the case of:

    (A)  a Term Period End Date, the balance of any unpaid amounts (including, but not limited to, any Hedge Termination Payables) owing to the Counterparties under the Hedges and this Agreement *plus* an amount equal to any interest at the Interest Rate owing to the Counterparties under the Hedges; or

    (B)  an Unqualified Hedge Event, the payment of any unpaid amounts (including, but not limited to, any Hedge Termination Payables) owing to the Counterparties under the Hedges and this Agreement.

*Finance Director* means the Finance Director of the City or any other person authorized or permitted by law to fulfill functions of the Finance Director during any period of absence or incapacity of the Finance Director.

*Fiscal Year* means the City's fiscal year, which currently commences on July 1 and ends on the following June 30.

*Fixed Amounts* has the meaning given that term in the Hedges.

*Fixed Rate Payer Period End Date* means a March 15, June 15, September 15 or December 15.

*Floating Amounts* has the meaning given that term in the Hedges.

*General Receipts Subaccount* means the subaccount established in the Receipts Account pursuant to **Section 8.1**.

*Greektown Subaccount* means the Developer Subaccount with respect to Greektown Casino, L.L.C.

*GRS Service Corporation* means the Person so defined in the first paragraph of this Agreement and the successors of such Person.

*Government Exception* has the meaning given that term in **Section 4.3**.

*Guaranty* means any agreement or form of credit enhancement that protects the City against loss by reason of the failure of a Developer to make Developer Payments, whether by guaranty, assurance, subrogation, setoff, indemnity, insurance, collateral, security or otherwise.

*Hedge* means each of the 2006 Hedges as amended by the Hedge Amendments and as may be further amended in accordance with the terms thereof, including in the case of the 2006 Hedge with SBS, the Transaction Transfer Agreement and, upon a Transfer Party Accession Event, the related Transfer Hedge.

*Hedge Amendments* means the amendments to the 2006 Hedges with an effective date that corresponds to the Closing Date.

*Hedge Event* means the occurrence of a Termination Event or the continuance of an Event of Default under a Hedge (as such terms are defined in such Hedge) where the City is obligated to pay a termination payment to one or more Counterparties.

*Hedge Payables* has the meaning given that term in **Section 1.2**.

*Hedge Periodic Payables* has the meaning given that term in **Section 1.2**.

*Hedge Termination Payable* has the meaning given that term in the Service Contracts.

*Holdback Account* means the Account by that name established pursuant to **Section 8.1**.

*Holdback Requirement* has the meaning given that term in **Section 1.5**.

*Insurer* means, as the context may require, Financial Guaranty Insurance Corporation or Syncora Guaranty Inc, or any successor of either of them to the insurance obligations of its predecessor with respect to the insurance of the payment obligations of a Service Corporation under a Hedge.

*Interest Rate* means the "Specified Default Rate" (as such term is defined in the Hedges).

*Irrevocable Instruction* has the meaning given that term in **Section 3.4**.

*Limitation on Remedies* has the meaning given that term in **Section 11.3**.

*MGM Grand Subaccount* means the Developer Subaccount established with respect to MGM Grand Detroit, L.L.C.

*Month* means one of three months of a Quarterly Period, each of which has substantially equal days and ends on the 15th day (whether or not a Business Day) of the corresponding calendar month.

*Monthly Coverage* has the meaning given that term in **Section 12.9**.

*Monthly Coverage Report* has the meaning given that term in **Section 12.9**.

*Monthly Holdback Compliance Notice* has the meaning given that term in **Section 12.7**.

*New Developer* has the meaning given that term in **Section 1.4**.

*New Development Agreement* has the meaning given that term in **Section 1.4**.

*New Payment Section* has the meaning given that term in **Section 1.4**.

*Notional Holdback Amount* means the amount that would have been payable under clause (ii) of the definition of Standard Holdback Requirement had a Termination Event not occurred.

*Obligor* has the meaning given that term in **Section 3.4(c)**.

*Outside Supplemental Appropriations Date* means the date which is the earlier to occur of:

> (i)  the 120th day following the date on which the termination of any Hedge occurs and

> (ii)  the expiration of the first 60 calendar days during which the City Council is in regular session following the date on which the termination of any Hedge occurs.

*Payment Date* means the earlier to occur of (i) second Business Day preceding the end of a Month or (ii) the Term Period End Date.

*Payment Section* has the meaning given that term in **Section 1.4**.

*Payment Time* means 2:00 p.m.

*Permitted Liens* has the meaning given that term in **Section 9.2**.

**Person** means any natural person, firm, association, corporation, trust, partnership, joint venture, joint-stock company, municipal corporation, public body or other entity, however organized.

**PFRS Service Corporation** means the Person so defined in the first paragraph of this Agreement and the successors of such Person.

**Pledged Property** has the meaning given that term in **Section 1.2**.

**Predecessor Developer** has the meaning given that term in **Section 8.2**.

**Public Act** means a statute of the State of Michigan.

**Qualified Hedge Event** means a Hedge Event that arises because of a Specified Additional Termination Event.

**Quarterly Accounting** has the meaning given that term in **Section 12.8**.

**Quarterly Coverage** has the meaning given that term in **Section 12.9**.

**Quarterly Coverage Report** has the meaning given that term in **Section 12.9**.

**Quarterly Payment** means, as to any Quarterly Period, the amount of all City Payments due and owing as of the last day of such Quarterly Period.

**Quarterly Period** means a period of days from and including each Fixed Rate Payer Period End Date but excluding the next succeeding Fixed Rate Payer Period End Date (whether or not such date is a Business Day).

**Ratings Downgrade** has the meaning given that term in **Section 1.5**.

**Ratings Upgrade** has the meaning given that term in **Section 1.5**.

**Ratings Upgrade Period** has the meaning given that term in **Section 1.5**.

**Receipts Account** means the Account by that name established pursuant to **Section 8.1** and includes the General Receipts Subaccount and each Developer Subaccount established pursuant to **Section 8.2**.

**Receipt Day** means a Business Day on which the Custodian receives an amount of money at or before the Payment Time *or if* the Custodian receives an amount of money on any day after the Payment Time, *then* the following Business Day.

**Reduced Holdback Requirement** has the meaning given that term in **Section 1.5**.

**Regular Custodian Payments** means any amount to which the Custodian is entitled pursuant to **Section 12.10(a)**.

**Regular Scheduled Payments** has the meaning given that term in the Service Contracts.

**Release Date** has the meaning given such term in **Section 5.5**.

**Relevant Amount** means, for any Month during the Term Payment Period, an amount equal to the sum of the following:

> (i) any Regular Custodian Payment due and owing to the Custodian during such Month;

(ii) *plus* the greater of:

    (A) $4,228,081.30 and

    (B) the Notional Holdback Amount;

(iii) *plus*, subject to **Section 5.2(e)**, an amount equal to any interest at the Interest Rate owing to the Counterparties under the Hedges.

***Reporting Period*** has the meaning given that term in **Section 12.9.**

***Revenues*** has the meaning given that term in **Section 1.2.**

***SBS*** means SBS Financial Products Company, LLC and its successors and assigns.

***Service Charges*** has the meaning given that term in the Service Contracts.

***Service Contract*** means each of the 2006 Service Contracts as amended by the Service Contract Amendments and as each may be further amended in accordance with the terms thereof.

***Service Contract Amendments*** means the amendments to the 2006 Service Contracts with an effective date that corresponds to the Closing Date.

***Service Corporation*** means the GRS Service Corporation or the PFRS Service Corporation, as the context may require.

***Service Corporation Pledge*** has the meaning given that term in **Section 4.3.**

***Service Corporation Property*** has the meaning given that term in **Section 4.2.**

***Service Corporation Security Interest*** has the meaning given that term in **Section 4.2.**

***Settlement Transaction*** means, collectively, the terms contained in each of the following agreements: this Agreement, the Hedge Amendments, the Service Contract Amendments and any other substantive agreement or documents (including, but not limited to, the Irrevocable Instructions and, to the extent not listed in the foregoing, the Definitive Documents) delivered as part of the Closing. For the avoidance of doubt, "substantive agreement" does not include any certificate or opinion delivered as part of the Closing.

***Sinking Fund Installments*** has the meaning given that term in the Service Contracts.

***Specified Additional Termination Event*** means has the meaning given that term in each of the Hedges.

***Specified Event*** has the meaning given that term in **Section 11.6.**

***Standard Holdback Requirement*** has the meaning given that term in **Section 1.5.**

***Subject Month*** has the meaning given that term in **Section 12.9.**

***Subject Quarter*** has the meaning given that term in **Section 12.9.**

***Supplemental Appropriation*** means, with respect to any Fiscal Year in which a Qualified Hedge Event occurs, the amount necessary, when added to amounts previously appropriated and unexpended during such Fiscal Year, to pay the Relevant Amount each Month during such Fiscal Year.

***Termination Event*** has the meaning given that term in the Hedges.

***Term Payment Period*** means a period beginning on the day that a Qualified Hedge Event occurs and ending on Term Period End Date.

***Term Period End Date*** means, as to a Qualified Hedge Event and corresponding Term Payment Period, the earlier to occur of (i) the seventh anniversary of such Qualified Hedge Event and (ii) the date on which occurs a Specified Event.

***Threshold*** means ad valorem property taxes levied by the City, whether pursuant to the City Charter or Section 6093 *et seq.* of Public Act 236 of 1961, as amended, of 3 mills in any Fiscal Year in excess of 19.952 mils of ad valorem taxes levied by the City for general City purposes pursuant to the City Charter for the Fiscal Year ending on June 30, 2009.

***Transfer Hedge*** has meaning given that term in the Service Contracts.

***Transfer Party*** has the meaning given that term in the Service Contracts.

***Transfer Party Accession Event*** has the meaning given that term in the Contract Administration Agreement.

***2006 Funding Trust*** means the Detroit Retirement Systems Funding Trust 2006 established by the Trust Agreement, dated June 12, 2006, among the Service Corporations and U.S. Bank National Association as trustee, as amended in accordance with its terms.

***2006 Hedge*** has the meaning given that term in the preamble hereto.

***2006 Pension Funding Securities*** means the Certificates of Participation issued by the 2006 Funding Trust.

***2006 Service Contract*** has the meaning given that term in the preamble hereto.

***2006 Transaction*** has the meaning given that term in the preamble hereto.

***UCC*** means the Uniform Commercial Code as in effect in the State of Michigan.

***Unqualified Hedge Event*** means a Hedge Event *other* than a Qualified Hedge Event.

***Wagering Tax Property*** has the meaning given that term in **Section 1.6**.

***Wagering Tax Revenue Statute*** has the meaning given that term in **Section 1.2**.

***Wagering Taxes*** has the meaning given that term in **Section 1.6**.

## Section 1.2.  Definitions in Authorizing Ordinance

The following terms are defined in the <u>Authorizing Ordinance</u>, as in effect on the date hereof, and are used herein as therein defined as of the date hereof.  Such terms are set forth below for convenience of reference:

***Article 9*** means the Michigan Uniform Commercial Code – Secured Transactions, being MCL 440.9101 *et seq.*

***Casino Licensee*** has the same meaning given such term in <u>Section 18-14-2</u> of the <u>Detroit City Code</u>.

***City Hedge Payables Related Obligations*** mean the City's obligation, whether now existing or hereafter arising, to pay to each Service Corporation under the respective Service Contract