# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| CITY OF DETROIT, a Municipal Corporation Organized and Existing Under the Laws of the State of Michigan, | |
| Plaintiff, | |
| v. | |
| SYNCORA GUARANTEE INC., a New York corporation, | |
| and | |
| U.S. BANK, N.A., | Case No.:  2:13-cv-12987-LPZ-MKM |
| and | Hon. Lawrence P. Zatkoff |
| MGM GRAND DETROIT, LLC, | |
| and | |
| DETROIT ENTERTAINMENT, LLC d/b/a MOTORCITY CASINO HOTEL, | |
| and | |
| GREEKTOWN CASINO, LLC, | |
| Defendants. | |

## DEFENDANT SYNCORA GUARANTEE INC.'S FIRST SET OF DOCUMENT REQUESTS TO THE CITY OF DETROIT

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Syncora Guarantee Inc. ("Syncora") requests that Plaintiff City of Detroit (the "City") produce for its inspection and copying all documents and tangible things requested below in accordance with the Definitions and Instructions set forth below at the offices of their counsel, Mantese

Honigman Rossman and Williamson, P.C., 1361 E. Big Beaver Rd., Troy, Michigan 48083, by July 18, 2013. Each of the following requests is continuing in nature, such that if the plaintiff obtains or discovers additional responsive documents and things at a later date, such documents and things are to be made available to defendant for inspection and copying.

## DEFINITIONS

1.      The terms "you" or "The City of Detroit" or "The City" mean Plaintiff City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including but not limited to Emergency Manager Kevyn Orr and his advisors.

2.      The term "Complaint" means the July 5, 2013 Verified Complaint filed by Plaintiff in the Circuit Court for the County of Wayne in Case No. 13-00858-CZ.

3.      The term "Syncora" means Syncora Guarantee Inc..

4.      The term "Swap Counterparties" means UBS AG, SBS Financial Products Company, LLC, and Merrill Lynch Capital Services, Inc., the parties to the Collateral Agreement dated June 15, 2009.

5.      "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation.

6.      "U.S. Bank" means U.S. Bank National Association.

7.      The term "Service Contracts" has the same meaning given to that term in paragraph 12 of the Complaint.

8.      The term "Swaps" has the same meaning given to that term in paragraph 14 of the Complaint, but extends to and includes any amendments to the Swaps.

9.      The term "Certificates of Participation" has the same meaning given to that term in paragraph 12 of the Complaint.

10.     "Syncora's June 17, 2013" letter means the letter from Claude LeBlanc attached as Exhibit D to Kevyn Orr's July 4, 2013 affidavit.

11.     "Communication" means every contact of any nature, whether oral or written, from one person to another, whether in form of facts, ideas, inquiries or otherwise, and any evidence of such contact, including without limitation any correspondence, memoranda, notes, diaries, daily calendars, electronic mail messages, computer files, electronic or magnetic media, or other documents concerning such contacts.

12.     "Document" shall have the full meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure, and in particular includes (but is not limited to) every writing or record of every type and description, including letters, correspondence, diaries, memoranda, tapes, electronic data or storage, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, films, reports, financial statements, applications, emails, and tests, however produced or reproduced, in the City's possession, custody, or control.  "Document" also includes all copies and drafts of every writing or record when the copy or draft is not identical to the original.

13.     "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

14.     The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

15.     The terms "including," "include" or "includes" mean including, but not limited to.

16.     The terms "each," "any," and "all" shall be construed to mean "each and every."

17.     The use of the singular form of a noun includes the plural form, and vice versa.

## INSTRUCTIONS

1.      Each Request extends to all documents in the City's possession, custody, or control or in the possession, custody, or control of anyone acting on the City's behalf.  A document is to be deemed in the City's possession, custody, or control if it is in the City's physical custody, or if it is in the physical custody of any person and the City (i) owns such document in whole or in part; (ii) has a right, by contract, statute, or otherwise to use, inspect, examine, or copy such document on any terms; (iii) has an understanding, express or implied, that the City may use, inspect, examine, or copy such document on any terms; or (iv) has, as a practical matter, been able to use, inspect, examine or copy such document when the City sought to do so.

2.      If the location of any requested document is known but the document is not produced on the ground that the document is not in the City's possession, custody, or control, identify the document and identify the person believed to have possession, custody, or control of the document.

3.      The response shall expressly indicate if no responsive documents are known to exist.

4.      The original of each document requested herein shall be produced together with any drafts, revisions, or copies of the same that bear any mark or notation not present in the original or that otherwise differ from the original.

4

5.      All documents should be produced in their entirety without redaction and should include all attachments and enclosures.  Documents that are attached to each other should not be separated.

6.      The response should state whether the City will produce documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in the Request.

7.      The response to each Request shall state, with respect to each item or category, that production will be made or inspection will be permitted as requested, unless the Request is objected to, in which event the reason(s) for objection shall be stated.  If objection is made to part of a Request, the part shall be specified; documents responsive to the remainder of the Request shall be produced.  Any such objection shall not extend the time within which the City must otherwise respond to a Request to which no specific objection has been made.

8.      With respect to any documents or information withheld on a claim of attorney–client privilege, the attorney work product doctrine, or any other applicable privilege, the response shall provide an express statement of the asserted privilege that includes the following information: (i) the applicable date; (ii) the identity of the author(s), including the business or legal title(s) or position(s); (iii) the identity of the recipient(s), including business or legal title(s) or position(s); (iv) the subject matter of the document; (v) the identity of all other persons who received copies; and (vi) the specific factual basis of the claimed privilege or other protection from discovery.

9.      Each Request shall operate and be construed independently and, unless otherwise stated, no request limits the scope of any other request.

10.     In responding to any of these Requests, set forth any matter deemed ambiguous and the construction used in answering the Request.  These requests are to be liberally construed, and any doubts about whether a document is responsive to these Requests should be resolved in favor of production.

11.     These Requests shall be deemed continuing in nature to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure.

## DOCUMENT REQUESTS

1.     All documents or communications relating to the City's negotiations with the Swap Counterparties regarding termination of the Swaps, including, but not limited to, documents and communications relating to:

> a.     The date that the negotiations commenced;
>
> b.     The participants in any portion of the negotiations;
>
> c.     The role of the casino revenues in the negotiations;
>
> d.     The effect of Syncora's June 17, 2013 letter on the negotiations;
>
> e.     The current and ongoing status of the negotiations;
>
> f.     The Service Corporations' knowledge of or involvement in the negotiations;
>
> g.     U.S. Bank's knowledge of or involvement in the negotiations;
>
> h.     The substance of the negotiations.

2.     All documents or communications relating to the "final settlement" referenced in paragraph 40 of the Complaint.

3.     All documents or communications relating to the City's "promises to stakeholders" as alleged in paragraph 46 of the Verified Complaint.

4.     All documents or communications relating to the City's use of the gambling revenues remitted to them from the General Receipts Subaccount prior to June 14, 2013.

6

5.      All documents or communications relating to the City's potential uses of the gambling revenues remitted to them from the General Receipts Subaccount.

6.      All documents or communications relating to U.S. Bank's obligations under the Collateral Agreement, including, but not limited to, documents and communications relating to:

      a.      U.S. Bank's obligations under Section 5.4 of the Collateral Agreement;

      b.      U.S. Bank's actions under Section 5.4 of the Collateral Agreement.

7.      All documents or communications between the City and the Service Corporations regarding the City's and the Service Corporations' obligations under the Service Contracts, the Swaps, and the Collateral Agreement.

8.      All documents or communications relating to Syncora's June 17, 2013 letter.

9.      All documents or communications relating to Syncora's insurance of the Certificates of Participation and Swaps.

10.     All documents or communications relating to the harm the City claims it will experience due to Syncora's actions.

11.     All documents or communications relating to the City's attempts to realize additional sources of cash or revenue.

12.     All documents or communications relating to the City's June 14, 2013 decision to not make a payment to the Service Corporations.

13.     All documents or communications relating to the current or potential uses of the approximately $40 million that the City decided not to pay to the Service Corporations.

14.     All documents or communication relating to the City's Swaps termination obligations to the Service Corporations.

15.     All documents or communications relating to the casino taxes and developer payments that the City has received and expects to receive.

16.     All documents or communications relating to any termination events or events of default under the Collateral Agreement.

17.     All documents or communications relating to or supporting the "ten-year projections" in paragraph 25 of the Complaint.

18.     All documents or communications relating to the City's ongoing negotiations and proposed settlements between the City and its Stakeholders.  (*See, e.g.,* Compl. ¶ 39.)

19.     All documents or communications relating to the City's efforts and abilities to deliver municipal services.

20.     All documents or communications relating to the City's allegation that Syncora acted in bad faith and without legal justification.

21.     Documents or communications sufficient to show the City's available cash-on-hand as of June, 2013 and the previous 12 months.

22.     Documents or communications sufficient to show that the City is expected to run out of funds by December 31, 2013.

23.     All documents or communications relating to the impact of the "cash trap" effectuated by U.S. Bank.

24.     All documents or communications relating to the City's claim that it will lose "unique and irreplaceable opportunities" if it cannot quickly reach settlements with its stakeholders.

25.     All documents or communications relating to the "comprehensive plan" referenced in paragraph 4 of Kevyn Orr's July 4, 2013 Affidavit.

26.     All documents or communications relating to Syncora's rights under the Collateral Agreement.

27.     All documents or communications relating to the irreparable harm the City would have suffered if it had given notice to Syncora's counsel of the hearing on the City's Motion for an *Ex Parte* Temporary Restraining Order and an Order to Show Cause Why a Preliminary Injunction Should Not Issue.

28.     All documents or communications relating to the allegations in paragraphs 53-61, 63-68, 70-73, and 74-79 of the Complaint.

29.     All documents or communications relating to the damages the City alleges it has or will suffer as a result of Syncora's actions.

30.     All documents the City intends to introduce at the preliminary injunction hearing.

31.     All documents or communications relating to Kevyn Orr's authority over the Service Corporations.

Dated:  July __, 2013                                    Respectfully submitted,

                                                         By: _____

Stephen C. Hackney                                           Gerard V. Mantese
Ryan Blaine Bennett                                          Mantese Honigman Rossman and
William E. Arnault                                           Williamson, P.C.
Lally A. Gartel                                              1361 East Big Beaver Road
KIRKLAND & ELLIS LLP                                         Troy, Michigan 48083
300 North LaSalle                                            Phone: 248-457-9200
Chicago, Illinois 60654                                      Fax: 248-457-9201
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*ATTORNEYS FOR DEFENDANT*                                    *ATTORNEYS FOR DEFENDANT*
*SYNCORA GUARANTEE, INC.*                                    *SYNCORA GUARANTEE, INC.*

### Schedule A to Third-Party Subpoena to the Detroit General
### Retirement System Service Corporation

## DEFINITIONS

1.      The terms "you," "your," or "GRS Service Corporation" mean the Detroit General Retirement System Service Corporation, or any other persons or entities acting or purporting to act for or on its behalf.

2.      The terms "The City of Detroit" or "The City" mean the City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including but not limited to Emergency Manager Kevyn Orr and his advisors.

3.      The term "Complaint" means the July 5, 2013 Verified Complaint filed by Plaintiff in the Circuit Court for the County of Wayne in Case No. 13-00858-CZ, attached as Exhibit A.

4.      The term "Syncora" means Syncora Guarantee Inc.

5.      The term "Swap Counterparties" means UBS AG, SBS Financial Products Company, LLC, and Merrill Lynch Capital Services, Inc.

6.      "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation.

7.      "U.S. Bank" means U.S. Bank National Association.

8.      The term "Swaps" has the same meaning given to that term in paragraph 14 of the Complaint, but extends to and includes any amendments to the Swaps.

9.      The term "Service Contracts" has the same meaning given to that term in paragraph 12 of the Complaint.

10.      The term "Certificates of Participation" has the same meaning given to that term in paragraph 12 of the Complaint.

11.    "Syncora's June 17, 2013" letter means the letter from Claude LeBlanc attached as Exhibit D to Kevyn Orr's July 4, 2013 affidavit, attached as Exhibit B.

12.    "Communication" means every contact of any nature, whether oral or written, from one person to another, whether in form of facts, ideas, inquiries or otherwise, and any evidence of such contact, including without limitation any correspondence, memoranda, notes, diaries, daily calendars, electronic mail messages, computer files, electronic or magnetic media, or other documents concerning such contacts.

13.    "Document" shall have the full meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure, and in particular includes (but is not limited to) every writing or record of every type and description, including letters, correspondence, diaries, memoranda, tapes, electronic data or storage, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, films, reports, financial statements, applications, emails, and tests, however produced or reproduced, in GRS Service Corporation's possession, custody, or control. "Document" also includes all copies and drafts of every writing or record when the copy or draft is not identical to the original.

14.    "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

15.    The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

16.    The terms "including," "include" or "includes" mean including, but not limited to.

17.    The terms "each," "any," and "all" shall be construed to mean "each and every."

18.    The use of the singular form of a noun includes the plural form, and vice versa.

## <u>INSTRUCTIONS</u>

1.    Each Request extends to all documents in GRS Service Corporation's possession, custody, or control or in the possession, custody, or control of anyone acting on GRS Service Corporation's behalf.  A document is to be deemed in GRS Service Corporation's possession, custody, or control if it is in GRS Service Corporation's physical custody, or if it is in the physical custody of any person and GRS Service Corporation (i) owns such document in whole or in part; (ii) has a right, by contract, statute, or otherwise to use, inspect, examine, or copy such document on any terms; (iii) has an understanding, express or implied, that GRS Service Corporation may use, inspect, examine, or copy such document on any terms; or (iv) has, as a practical matter, been able to use, inspect, examine or copy such document when GRS Service Corporation sought to do so.

2.    If the location of any requested document is known but the document is not produced on the ground that the document is not in GRS Service Corporation's possession, custody, or control, identify the document and identify the person believed to have possession, custody, or control of the document.

3.    The response shall expressly indicate if no responsive documents are known to exist.

4.    The original of each document requested herein shall be produced together with any drafts, revisions, or copies of the same that bear any mark or notation not present in the original or that otherwise differ from the original.

5.      All documents should be produced in their entirety without redaction and should include all attachments and enclosures.  Documents that are attached to each other should not be separated.

6.      The response should state whether GRS Service Corporation will produce documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in the Request.

7.      The response to each Request shall state, with respect to each item or category, that production will be made or inspection will be permitted as requested, unless the Request is objected to, in which event the reason(s) for objection shall be stated.  If objection is made to part of a Request, the part shall be specified; documents responsive to the remainder of the Request shall be produced.  Any such objection shall not extend the time within which GRS Service Corporation must otherwise respond to a Request to which no specific objection has been made.

8.      With respect to any documents or information withheld on a claim of attorney–client privilege, the attorney work product doctrine, or any other applicable privilege, the response shall provide an express statement of the asserted privilege that includes the following information: (i) the applicable date; (ii) the identity of the author(s), including the business or legal title(s) or position(s); (iii) the identity of the recipient(s), including business or legal title(s) or position(s); (iv) the subject matter of the document; (v) the identity of all other persons who received copies; and (vi) the specific factual basis of the claimed privilege or other protection from discovery.

9.      Each Request shall operate and be construed independently and, unless otherwise stated, no request limits the scope of any other request.

4

10.     In responding to any of these Requests, set forth any matter deemed ambiguous and the construction used in answering the Request.  These requests are to be liberally construed, and any doubts about whether a document is responsive to these Requests should be resolved in favor of production.

11.     These Requests shall be deemed continuing in nature to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure.

### DOCUMENT REQUESTS

1.     All documents or communications relating to the City's negotiations with the Swap Counterparties regarding termination of the Swaps.

2.     All documents or communications relating to the obligations of the City and the Service Corporations under the Service Contracts, Swaps, and Collateral Agreement.

3.     All documents or communications relating to Syncora's June 17, 2013 letter.

4.     All documents or communications relating to Syncora's insurance of the Certificates of Participation and Swaps.

5.     All documents or communications relating to the City's June 14, 2013 decision to not make a payment to the Service Corporations.

6.     All documents or communication relating to the City's Swap termination obligations to the Service Corporations.

7.     All documents or communications relating to any termination events or events of default under the Collateral Agreement.

8.     All documents or communications relating to the impact of the "cash trap" effectuated by U.S. Bank.

9.     All documents or communications relating to Syncora's rights under the Collateral Agreement.

5

10.     All documents or communications relating to the Service Corporations' rights, duties, and obligations under the Collateral Agreement, including but not limited to documents or communications regarding:

> a.     The City's payment obligations to the Service Corporations.
>
> b.     The Service Corporations' payment obligations to the Swap Counterparties.

11.     All documents or communications relating to the City's obligations to the Service Corporations under the agreements governing the Certificates of Participation, including but not limited to:

> a.     The Service Contracts dated June 7, 2006;
>
> b.     The Contract Administration Agreement dated June 7, 2006;
>
> c.     The Trust Agreement dated June 12, 2006.

12.     All documents or communications relating to any waivers that U.S. Bank received regarding the provisions in the Collateral Agreement.

13.     All documents or communications relating to Kevyn Orr's authority over the Service Corporations.

Dated:  July __, 2013                          Respectfully submitted,

                                               By: _____

Stephen C. Hackney                                 Gerard V. Mantese
Ryan Blaine Bennett                                Mantese Honigman Rossman and
William E. Arnault                                 Williamson, P.C.
Lally A. Gartel                                    1361 East Big Beaver Road
KIRKLAND & ELLIS LLP                               Troy, Michigan 48083
300 North LaSalle                                  Phone: 248-457-9200
Chicago, Illinois 60654                            Fax: 248-457-9201
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*ATTORNEYS FOR DEFENDANT*                       *ATTORNEYS FOR DEFENDANT*
*SYNCORA GUARANTEE INC.*                        *SYNCORA GUARANTEE INC.*

7

## Schedule A to Third-Party Subpoena to Detroit Police and
## Fire Retirement System Service Corporation

## DEFINITIONS

1.      The terms "you," "your," or "PFRS Service Corporation" means the Detroit Police and Fire Retirement System Service Corporation, or any persons or entities acting or purporting to act for or on its behalf.

2.      The term "The City of Detroit" or "the City" means City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including but not limited to Emergency Manager Kevyn Orr and his advisors.

3.      The term "Complaint" means the July 5, 2013 Verified Complaint filed by Plaintiff in the Circuit Court for the County of Wayne in Case No. 13-00858-CZ, attached as Exhibit A.

4.      The term "Syncora" means Syncora Guarantee Inc.

5.      The term "Swap Counterparties" means UBS AG, SBS Financial Products Company, LLC, and Merrill Lynch Capital Services, Inc.

6.      "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation.

7.      "U.S. Bank" means U.S. Bank National Association.

8.      The term "Swaps" has the same meaning given to that term in paragraph 12 of the Complaint, but extends to and includes any amendments to the Swaps.

9.      The term "Service Contracts" has the same meaning given to that term in paragraph 12 of the Complaint.

10.     The term "Certificates of Participation" has the same meaning given to that term in paragraph 12 of the Complaint.

11.    "Syncora's June 17, 2013" letter means the letter from Claude LeBlanc attached as Exhibit D to Kevyn Orr's July 4, 2013 affidavit, attached as Exhibit B.

12.    "Communication" means every contact of any nature, whether oral or written, from one person to another, whether in form of facts, ideas, inquiries or otherwise, and any evidence of such contact, including without limitation any correspondence, memoranda, notes, diaries, daily calendars, electronic mail messages, computer files, electronic or magnetic media, or other documents concerning such contacts.

13.    "Document" shall have the full meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure, and in particular includes (but is not limited to) every writing or record of every type and description, including letters, correspondence, diaries, memoranda, tapes, electronic data or storage, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, films, reports, financial statements, applications, emails, and tests, however produced or reproduced, in PFRS Service Corporation's possession, custody, or control. "Document" also includes all copies and drafts of every writing or record when the copy or draft is not identical to the original.

14.    "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

15.    The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

16.     The terms "including," "include" or "includes" mean including, but not limited to.

17.     The terms "each," "any," and "all" shall be construed to mean "each and every."

18.     The use of the singular form of a noun includes the plural form, and vice versa.

## INSTRUCTIONS

1.      Each Request extends to all documents in PFRS Service Corporation's possession, custody, or control or in the possession, custody, or control of anyone acting on PFRS Service Corporation's behalf.  A document is to be deemed in PFRS Service Corporation's possession, custody, or control if it is in PFRS Service Corporation's physical custody, or if it is in the physical custody of any person and PFRS Service Corporation (i) owns such document in whole or in part; (ii) has a right, by contract, statute, or otherwise to use, inspect, examine, or copy such document on any terms; (iii) has an understanding, express or implied, that PFRS Service Corporation may use, inspect, examine, or copy such document on any terms; or (iv) has, as a practical matter, been able to use, inspect, examine or copy such document when PFRS Service Corporation sought to do so.

2.      If the location of any requested document is known but the document is not produced on the ground that the document is not in PFRS Service Corporation's possession, custody, or control, identify the document and identify the person believed to have possession, custody, or control of the document.

3.      The response shall expressly indicate if no responsive documents are known to exist.

4.      The original of each document requested herein shall be produced together with any drafts, revisions, or copies of the same that bear any mark or notation not present in the original or that otherwise differ from the original.

5.     All documents should be produced in their entirety without redaction and should include all attachments and enclosures.  Documents that are attached to each other should not be separated.

6.     The response should state whether PFRS Service Corporation will produce documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in the Request.

7.     The response to each Request shall state, with respect to each item or category, that production will be made or inspection will be permitted as requested, unless the Request is objected to, in which event the reason(s) for objection shall be stated.  If objection is made to part of a Request, the part shall be specified; documents responsive to the remainder of the Request shall be produced.  Any such objection shall not extend the time within which PFRS Service Corporation must otherwise respond to a Request to which no specific objection has been made.

8.     With respect to any documents or information withheld on a claim of attorney–client privilege, the attorney work product doctrine, or any other applicable privilege, the response shall provide an express statement of the asserted privilege that includes the following information: (i) the applicable date; (ii) the identity of the author(s), including the business or legal title(s) or position(s); (iii) the identity of the recipient(s), including business or legal title(s) or position(s); (iv) the subject matter of the document; (v) the identity of all other persons who received copies; and (vi) the specific factual basis of the claimed privilege or other protection from discovery.

9.     Each Request shall operate and be construed independently and, unless otherwise stated, no request limits the scope of any other request.

4

10.     In responding to any of these Requests, set forth any matter deemed ambiguous and the construction used in answering the Request.  These requests are to be liberally construed, and any doubts about whether a document is responsive to these Requests should be resolved in favor of production.

11.     These Requests shall be deemed continuing in nature to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure.

## DOCUMENT REQUESTS

1.     All documents or communications relating to the City's negotiations with the Swap Counterparties regarding termination of the Swaps.

2.     All documents or communications relating to the obligations of the City and Service Corporations under the Service Contracts, the Swaps, and the Collateral Agreement.

3.     All documents or communications relating to Syncora's June 17, 2013 letter.

4.     All documents or communications relating to Syncora's insurance of the Certificates of Participation and Swaps.

5.     All documents or communications relating to the City's June 14, 2013 decision to not make a payment to the Service Corporations.

6.     All documents or communication relating to the City's Swap termination obligations to the Service Corporations.

7.     All documents or communications relating to any termination events or events of default under the Collateral Agreement.

8.     All documents or communications relating to the impact of the "cash trap" effectuated by U.S. Bank.

9.     All documents or communications relating to Syncora's rights under the Collateral Agreement.

5

10.     All documents or communications relating to the Service Corporations' rights, duties, and obligations under the Collateral Agreement, including but not limited to documents or communications regarding:

      a.      The City's payment obligations to the Service Corporations.

      b.      The Service Corporations' payment obligations to the Swap Counterparties.

11.     All documents or communications relating to the City's obligations to the Service Corporations under the agreements governing the Certificates of Participation, including but not limited to:

      a.      The Service Contracts dated June 7, 2006;

      b.      The Contract Administration Agreement dated June 7, 2006;

      c.      The Trust Agreement dated June 12, 2006.

12.     All documents or communications relating to any waivers that U.S. Bank received regarding the provisions in the Collateral Agreement.

13.     All documents or communications relating to Kevyn Orr's authority over the Service Corporations.

Dated:  July __, 2013                          Respectfully submitted,

                                               By: _____

Stephen C. Hackney                                 Gerard V. Mantese
Ryan Blaine Bennett                                Mantese Honigman Rossman and
William E. Arnault                                 Williamson, P.C.
Lally A. Gartel                                    1361 East Big Beaver Road
KIRKLAND & ELLIS LLP                               Troy, Michigan 48083
300 North LaSalle                                  Phone: 248-457-9200
Chicago, Illinois 60654                            Fax: 248-457-9201
Telephone: (312) 862-2000
Facsimile: (312) 862-2200                          *ATTORNEYS FOR DEFENDANT*
                                                   *SYNCORA GUARANTEE INC.*
*ATTORNEYS FOR DEFENDANT*
*SYNCORA GUARANTEE INC.*

## Schedule A to Third-Party Subpoena to UBS AG

### DEFINITIONS

1.      The terms "you" or "UBS" shall mean UBS AG, or any other persons or entities acting or purporting to act for or on its behalf.

2.      The terms "The City of Detroit" or "The City" mean the City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including but not limited to Emergency Manager Kevyn Orr and his advisors

3.      The term "Complaint" means the July 5, 2013 Verified Complaint filed by Plaintiff in the Circuit Court for the County of Wayne in Case No. 13-00858-CZ, attached as Exhibit A.

4.      The term "Syncora" means Syncora Guarantee Inc.

5.      The term "Swap Counterparties" means UBS AG, SBS Financial Products Company, LLC, and Merrill Lynch Capital Services, Inc.

6.      "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation.

7.      "U.S. Bank" means U.S. Bank National Association.

8.      The term "Swaps" has the same meaning given to that term in paragraph 14 of the Complaint, but extends to and includes any amendments to the Swaps.

9.      The term "Service Contracts" has the same meaning given to that term in paragraph 12 of the Complaint.

10.     The term "Certificates of Participation" has the same meaning given to that term in paragraph 12 of the Complaint.

11.     "Syncora's June 17, 2013" letter means the letter from Claude LeBlanc attached as Exhibit D to Kevyn Orr's July 4, 2013 affidavit, attached as Exhibit B.

12.   "Communication" means every contact of any nature, whether oral or written, from one person to another, whether in form of facts, ideas, inquiries or otherwise, and any evidence of such contact, including without limitation any correspondence, memoranda, notes, diaries, daily calendars, electronic mail messages, computer files, electronic or magnetic media, or other documents concerning such contacts.

13.   "Document" shall have the full meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure, and in particular includes (but is not limited to) every writing or record of every type and description, including letters, correspondence, diaries, memoranda, tapes, electronic data or storage, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, films, reports, financial statements, applications, emails, and tests, however produced or reproduced, in UBS's possession, custody, or control.  "Document" also includes all copies and drafts of every writing or record when the copy or draft is not identical to the original.

14.   "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

15.   The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

16.   The terms "including," "include" or "includes" mean including, but not limited to.

17.   The terms "each," "any," and "all" shall be construed to mean "each and every."

18.   The use of the singular form of a noun includes the plural form, and vice versa.

## INSTRUCTIONS

1.      Each Request extends to all documents in UBS's possession, custody, or control or in the possession, custody, or control of anyone acting on the UBS's behalf.  A document is to be deemed in UBS's possession, custody, or control if it is in UBS's physical custody, or if it is in the physical custody of any person and UBS (i) owns such document in whole or in part; (ii) has a right, by contract, statute, or otherwise to use, inspect, examine, or copy such document on any terms; (iii) has an understanding, express or implied, that UBS may use, inspect, examine, or copy such document on any terms; or (iv) has, as a practical matter, been able to use, inspect, examine or copy such document when UBS sought to do so.

2.      If the location of any requested document is known but the document is not produced on the ground that the document is not in UBS's possession, custody, or control, identify the document and identify the person believed to have possession, custody, or control of the document.

3.      The response shall expressly indicate if no responsive documents are known to exist.

4.      The original of each document requested herein shall be produced together with any drafts, revisions, or copies of the same that bear any mark or notation not present in the original or that otherwise differ from the original.

5.      All documents should be produced in their entirety without redaction and should include all attachments and enclosures.  Documents that are attached to each other should not be separated.

6.      The response should state whether UBS will produce documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in the Request.

3

7.      The response to each Request shall state, with respect to each item or category, that production will be made or inspection will be permitted as requested, unless the Request is objected to, in which event the reason(s) for objection shall be stated.  If objection is made to part of a Request, the part shall be specified; documents responsive to the remainder of the Request shall be produced.  Any such objection shall not extend the time within which UBS must otherwise respond to a Request to which no specific objection has been made.

8.      With respect to any documents or information withheld on a claim of attorney–client privilege, the attorney work product doctrine, or any other applicable privilege, the response shall provide an express statement of the asserted privilege that includes the following information: (i) the applicable date; (ii) the identity of the author(s), including the business or legal title(s) or position(s); (iii) the identity of the recipient(s), including business or legal title(s) or position(s); (iv) the subject matter of the document; (v) the identity of all other persons who received copies; and (vi) the specific factual basis of the claimed privilege or other protection from discovery.

9.      Each Request shall operate and be construed independently and, unless otherwise stated, no request limits the scope of any other request.

10.     In responding to any of these Requests, set forth any matter deemed ambiguous and the construction used in answering the Request.  These requests are to be liberally construed, and any doubts about whether a document is responsive to these Requests should be resolved in favor of production.

11.     These Requests shall be deemed continuing in nature to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure.

## DOCUMENT REQUESTS

1.     All documents or communications relating to the City's negotiations with the Swap Counterparties regarding termination of the Swaps, including, but not limited to, documents and communications relating to:

        a.     The date that the negotiations commenced;

        b.     The participants in any portion of the negotiations;

        c.     The role of the casino revenues in the negotiations;

        d.     The effect of Syncora's June 17, 2013 letter on the negotiations;

        e.     The current and ongoing status of the negotiations;

        f.     The Service Corporations' knowledge of or involvement in the negotiations;

        g.     U.S. Bank's knowledge of or involvement in the negotiations;

        h.     The substance of the negotiations.

2.     All documents or communications relating to the "final settlement" referenced in paragraph 40 of the Complaint.

3.     All documents or communications relating to U.S. Bank's obligations under the Collateral Agreement, including, but not limited to, documents and communications relating to:

        a.     U.S. Bank's obligations under Section 5.4 of the Collateral Agreement;

        b.     U.S. Bank's actions under Section 5.4 of the Collateral Agreement.

4.     All documents or communications relating to Syncora's June 17, 2013 letter.

5.     All documents or communications relating to Syncora's insurance of the Certificates of Participation and Swaps.

6.     All documents or communications relating to the City's attempts to realize additional sources of cash or revenue.

5

7.      All documents or communications relating to the City's Swap termination obligations to the Service Corporations.

8.      All documents or communications relating to any termination events or events of default under the Collateral Agreement.

9.      All documents and communications relating to the impact of the "cash trap" effectuated by U.S. Bank.

10.      All documents and communications relating to Syncora's rights under the Collateral Agreement.

11.      All documents or communications relating to any waivers that U.S. Bank received regarding the provisions in the Collateral Agreement.

Dated:  July __, 2013                          Respectfully submitted,

                                        By: _____

Stephen C. Hackney                          Gerard V. Mantese
Ryan Blaine Bennett                          Mantese Honigman Rossman and
William E. Arnault                          Williamson, P.C.
Lally A. Gartel                          1361 East Big Beaver Road
KIRKLAND & ELLIS LLP                          Troy, Michigan 48083
300 North LaSalle                          Phone: 248-457-9200
Chicago, Illinois 60654                          Fax: 248-457-9201
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*ATTORNEYS FOR DEFENDANT*                          *ATTORNEYS FOR DEFENDANT*
*SYNCORA GUARANTEE INC.*                          *SYNCORA GUARANTEE INC.*

**Schedule A to Third-Party Subpoena to Ernst & Young LLP**

**DEFINITIONS**

1.      The terms "you," "your," or "E&Y" means Ernst & Young LLP.

2.      The terms "The City of Detroit" or "the City" mean the City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including but not limited to Emergency Manager Kevyn Orr and his advisors.

3.      The term "Complaint" means the July 5, 2013 Verified Complaint filed by Plaintiff in the Circuit Court for the County of Wayne in Case No. 13-00858-CZ, attached as Exhibit A.

4.      The term "Syncora" means Syncora Guarantee, Inc.

5.      The term "Swap Counterparties" means UBS AG, SBS Financial Products Company, LLC, and Merrill Lynch Capital Services, Inc.

6.      "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation.

7.      "U.S. Bank" means U.S. Bank National Association.

8.      The term "Swaps" has the same meaning given to that term in paragraph 14 of the Complaint.

9.      The term "Service Contracts" has the same meaning given to that term in paragraph 12 of the Complaint.

10.      The term "Certificates of Participation" has the same meaning given to that term in paragraph 12 of the Complaint.

11.      "Syncora's June 17, 2013" letter means the letter from Claude LeBlanc attached as Exhibit D to Kevyn Orr's July 4, 2013 affidavit, attached as Exhibit B.

12.    "Communication" means every contact of any nature, whether oral or written, from one person to another, whether in form of facts, ideas, inquiries or otherwise, and any evidence of such contact, including without limitation any correspondence, memoranda, notes, diaries, daily calendars, electronic mail messages, computer files, electronic or magnetic media, or other documents concerning such contacts.

13.    "Document" shall have the full meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure, and in particular includes (but is not limited to) every writing or record of every type and description, including letters, correspondence, diaries, memoranda, tapes, electronic data or storage, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, films, reports, financial statements, applications, emails, and tests, however produced or reproduced, in E&Y's possession, custody, or control.  "Document" also includes all copies and drafts of every writing or record when the copy or draft is not identical to the original.

14.    "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

15.    The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

16.    The terms "including," "include" or "includes" mean including, but not limited to.

17.    The terms "each," "any," and "all" shall be construed to mean "each and every."

18.    The use of the singular form of a noun includes the plural form, and vice versa.

## <u>INSTRUCTIONS</u>

1.        Each Request extends to all documents in E&Y's possession, custody, or control or in the possession, custody, or control of anyone acting on E&Y's behalf.  A document is to be deemed in E&Y's possession, custody, or control if it is in E&Y's physical custody, or if it is in the physical custody of any person and E&Y (i) owns such document in whole or in part; (ii) has a right, by contract, statute, or otherwise to use, inspect, examine, or copy such document on any terms; (iii) has an understanding, express or implied, that E&Y may use, inspect, examine, or copy such document on any terms; or (iv) has, as a practical matter, been able to use, inspect, examine or copy such document when E&Y sought to do so.

2.        If the location of any requested document is known but the document is not produced on the ground that the document is not in E&Y's possession, custody, or control, identify the document and identify the person believed to have possession, custody, or control of the document.

3.        The response shall expressly indicate if no responsive documents are known to exist.

4.        The original of each document requested herein shall be produced together with any drafts, revisions, or copies of the same that bear any mark or notation not present in the original or that otherwise differ from the original.

5.        All documents should be produced in their entirety without redaction and should include all attachments and enclosures.  Documents that are attached to each other should not be separated.

6.        The response should state whether E&Y will produce documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in the Request.

3

7.      The response to each Request shall state, with respect to each item or category, that production will be made or inspection will be permitted as requested, unless the Request is objected to, in which event the reason(s) for objection shall be stated.  If objection is made to part of a Request, the part shall be specified; documents responsive to the remainder of the Request shall be produced.  Any such objection shall not extend the time within which E&Y must otherwise respond to a Request to which no specific objection has been made.

8.      With respect to any documents or information withheld on a claim of attorney–client privilege, the attorney work product doctrine, or any other applicable privilege, the response shall provide an express statement of the asserted privilege that includes the following information: (i) the applicable date; (ii) the identity of the author(s), including the business or legal title(s) or position(s); (iii) the identity of the recipient(s), including business or legal title(s) or position(s); (iv) the subject matter of the document; (v) the identity of all other persons who received copies; and (vi) the specific factual basis of the claimed privilege or other protection from discovery.

9.      Each Request shall operate and be construed independently and, unless otherwise stated, no request limits the scope of any other request.

10.     In responding to any of these Requests, set forth any matter deemed ambiguous and the construction used in answering the Request.  These requests are to be liberally construed, and any doubts about whether a document is responsive to these Requests should be resolved in favor of production.

11.     These Requests shall be deemed continuing in nature to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure.

## DOCUMENT REQUESTS

1.      All documents or communications relating to the City's use of the gambling revenues remitted to them from the General Receipts Subaccount prior to June 14, 2013.

2.      All documents or communications relating to the City's potential uses of the gambling revenues remitted to them from the General Receipts Subaccount.

3.      All documents or communications relating to Syncora's insurance of the Certificates of Participation and Swaps.

4.      All documents or communications relating to the harm the City claims it will experience due to Syncora's actions.

5.      All documents or communications relating to the City's attempts to realize additional sources of cash or revenue.

6.      All documents or communications relating to the City's June 14, 2013 decision to not make a payment to the Service Corporations.

7.      All documents or communications relating to the current or potential uses of the approximately $40 million that the City decided not to pay to the Service Corporations.

8.      All documents or communication relating to the City's Swap termination obligations to the Service Corporations.

9.      All documents and communications relating to the casino taxes and developer payments that the City has received and expects to receive.

10.     All documents or communications relating to or supporting the "ten-year projections" in paragraph 25 of the Complaint.

11.     All documents or communications relating to the City's ongoing negotiations and proposed settlements between the City and its Stakeholders.  (*See, e.g.,* Compl. ¶ 39.)

12.    All documents or communications relating to the City's efforts and abilities to deliver municipal services.

13.    Documents and communications sufficient to show the City's available cash-on-hand as of June, 2013 and the previous 12 months.

14.    Documents and communications sufficient to show that the City is expected to run out of funds by December 31, 2013.

15.    All documents and communications relating to the impact of the "cash trap" effectuated by U.S. Bank.

16.    All documents and communications relating to the City's claim that it will lose unique and irreplaceable opportunities if it cannot quickly reach settlements with its stakeholders.

17.    All documents and communications relating to the "comprehensive plan" referenced in paragraph 4 of Kevyn Orr's Affidavit.

18.    All documents and communications relating to Syncora's rights under the Collateral Agreement.

19.    All documents and communications relating to the impact of the cash trap on the City's provision of municipal services.

Dated:  July __, 2013                          Respectfully submitted,

                                      By:  _____

Stephen C. Hackney                          Gerard V. Mantese
Ryan Blaine Bennett                         Mantese Honigman Rossman and
William E. Arnault                          Williamson, P.C.
Lally A. Gartel                             1361 East Big Beaver Road
KIRKLAND & ELLIS LLP                        Troy, Michigan 48083
300 North LaSalle                           Phone: 248-457-9200
Chicago, Illinois 60654                     Fax: 248-457-9201
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*ATTORNEYS FOR DEFENDANT*                    *ATTORNEYS FOR DEFENDANT*
*SYNCORA GUARANTEE INC.*                     *SYNCORA GUARANTEE INC.*

7

**Schedule A to Third-Party Subpoena to Jones Day LLP**

**DEFINITIONS**

1.      The term "you," "your," or "Jones Day" means Jones Day LLP.

2.      The term "The City of Detroit" or "the City" means the City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including but not limited to Emergency Manager Kevyn Orr and his advisors.

3.      The term "Complaint" means the July 5, 2013 Verified Complaint filed by Plaintiff in the Circuit Court for the County of Wayne in Case No. 13-00858-CZ, attached as Exhibit A.

4.      The term "Syncora" means Syncora Guarantee Inc.

5.      The term "Swap Counterparties" means UBS AG, SBS Financial Products Company, LLC, and Merrill Lynch Capital Services, Inc.

6.      "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation.

7.      "U.S. Bank" means U.S. Bank National Association.

8.      The term "Swaps" has the same meaning given to that term in paragraph 14 of the Complaint.

9.      The term "Service Contracts" has the same meaning given to that term in paragraph 12 of the Complaint.

10.     The term "Certifications of Participation" has the same meaning given to that term in paragraph 12 of the Complaint.

11.     "Syncora's June 17, 2013" letter means the letter from Claude LeBlanc attached as Exhibit D to Kevyn Orr's July 4, 2013 affidavit, attached as Exhibit B.

12.   "Communication" means every contact of any nature, whether oral or written, from one person to another, whether in form of facts, ideas, inquiries or otherwise, and any evidence of such contact, including without limitation any correspondence, memoranda, notes, diaries, daily calendars, electronic mail messages, computer files, electronic or magnetic media, or other documents concerning such contacts.

13.   "Document" shall have the full meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure, and in particular includes (but is not limited to) every writing or record of every type and description, including letters, correspondence, diaries, memoranda, tapes, electronic data or storage, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, films, reports, financial statements, applications, emails, and tests, however produced or reproduced, in Jones Day's possession, custody, or control.   "Document" also includes all copies and drafts of every writing or record when the copy or draft is not identical to the original.

14.   "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

15.   The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.   The singular form of a noun or pronoun includes the plural form and vice versa.

16.   The terms "including," "include" or "includes" mean including, but not limited to.

17.   The terms "each," "any," and "all" shall be construed to mean "each and every."

18.     The use of the singular form of a noun includes the plural form, and vice versa.

## INSTRUCTIONS

1.      Each Request extends to all documents in Jones Day's possession, custody, or control or in the possession, custody, or control of anyone acting on Jones Day's behalf.  A document is to be deemed in Jones Day's possession, custody, or control if it is in Jones Day's physical custody, or if it is in the physical custody of any person and Jones Day (i) owns such document in whole or in part; (ii) has a right, by contract, statute, or otherwise to use, inspect, examine, or copy such document on any terms; (iii) has an understanding, express or implied, that Jones Day may use, inspect, examine, or copy such document on any terms; or (iv) has, as a practical matter, been able to use, inspect, examine or copy such document when Jones Day sought to do so.

2.      If the location of any requested document is known but the document is not produced on the ground that the document is not in Jones Day's possession, custody, or control, identify the document and identify the person believed to have possession, custody, or control of the document.

3.      The response shall expressly indicate if no responsive documents are known to exist.

4.      The original of each document requested herein shall be produced together with any drafts, revisions, or copies of the same that bear any mark or notation not present in the original or that otherwise differ from the original.

5.      All documents should be produced in their entirety without redaction and should include all attachments and enclosures.  Documents that are attached to each other should not be separated.

3

6. The response should state whether Jones Day will produce documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in the Request.

7. The response to each Request shall state, with respect to each item or category, that production will be made or inspection will be permitted as requested, unless the Request is objected to, in which event the reason(s) for objection shall be stated. If objection is made to part of a Request, the part shall be specified; documents responsive to the remainder of the Request shall be produced. Any such objection shall not extend the time within which Jones Day must otherwise respond to a Request to which no specific objection has been made.

8. With respect to any documents or information withheld on a claim of attorney–client privilege, the attorney work product doctrine, or any other applicable privilege, the response shall provide an express statement of the asserted privilege that includes the following information: (i) the applicable date; (ii) the identity of the author(s), including the business or legal title(s) or position(s); (iii) the identity of the recipient(s), including business or legal title(s) or position(s); (iv) the subject matter of the document; (v) the identity of all other persons who received copies; and (vi) the specific factual basis of the claimed privilege or other protection from discovery.

9. Each Request shall operate and be construed independently and, unless otherwise stated, no request limits the scope of any other request.

10. In responding to any of these Requests, set forth any matter deemed ambiguous and the construction used in answering the Request.  These requests are to be liberally construed, and any doubts about whether a document is responsive to these Requests should be resolved in favor of production.

4

11.     These Requests shall be deemed continuing in nature to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure.

## DOCUMENT REQUESTS

1.     All documents or communications relating to the City's negotiations with the Swap Counterparties regarding termination of the Swaps, including, but not limited to, documents and communications relating to:

>       a.      The date that the negotiations commenced;
>
>       b.      The participants in any portion of the negotiations;
>
>       c.      The role of the casino revenues in the negotiations;
>
>       d.      The effect of Syncora's June 17, 2013 letter on the negotiations;
>
>       e.      The current and ongoing status of the negotiations;
>
>       f.      The Service Corporations' knowledge of or involvement in the negotiations;
>
>       g.      U.S. Bank's knowledge of or involvement in the negotiations;
>
>       h.      The substance of the negotiations.

2.     All documents or communications relating to the "final settlement" referenced in paragraph 40 of the Complaint.

3.     All documents or communications relating to the City's "promises to stakeholders" as alleged in paragraph 46 of the Verified Complaint.

4.     All documents or communications relating to the City's use of the gambling revenues remitted to them from the General Receipts Subaccount prior to June 14, 2013.

5.     All documents or communications relating to the City's potential uses of the gambling revenues remitted to them from the General Receipts Subaccount.

6.     All documents or communications relating to U.S. Bank's obligations under the Collateral Agreement, including, but not limited to, documents and communications relating to:

      a.      U.S. Bank's obligations under Section 5.4 of the Collateral Agreement;

      b.      U.S. Bank's actions under Section 5.4 of the Collateral Agreement

7.      All documents or communications between the City and the Service Corporations regarding the City and Service Corporations' obligations under the Service Contracts, the Swaps, and the Collateral Agreement.

8.      All documents or communications relating to Syncora's June 17, 2013 letter.

9.      All documents or communications relating to Syncora's insurance of the Certificates of Participation and Swaps.

10.      All documents or communications relating to the harm the City claims it will experience due to Syncora's actions.

11.      All documents or communications relating to the City's attempts to realize additional sources of cash or revenue.

12.      All documents or communications relating to the City's June 14, 2013 decision to not make a payment to the Service Corporations.

13.      All documents or communications relating to the current or potential uses of the approximately $40 million that the City decided not to pay to the Service Corporations.

14.      All documents or communication relating to the City's Swap termination obligations to the Service Obligations.

15.      All documents or communications relating to the casino taxes and developer payments that the City has received and expects to receive.

16.      All documents or communications relating to any termination events or events of default under the Collateral Agreement.

17.      All documents or communications relating to or supporting the "ten-year projections" in paragraph 25 of the Complaint.

6

18.     All documents or communications relating to the City's ongoing negotiations and proposed settlements between the City and its Stakeholders.  (*See, e.g.,* Compl. ¶ 39.)

19.     All documents or communications relating to the City's efforts and abilities to deliver municipal services.

20.     All documents or communications relating to the City's allegation that Syncora acted in bad faith and without legal justification.

21.     Documents or communications sufficient to show the City's available cash-on-hand as of June, 2013 and the previous 12 months.

22.     Documents or communications sufficient to show that the City is expected to run out of funds by December 31, 2013.

23.     All documents or communications relating to the impact of the "cash trap" effectuated by U.S. Bank.

24.     All documents or communications relating to the City's claim that it will lose unique and irreplaceable opportunities if it cannot quickly reach settlements with its stakeholders.

25.     All documents or communications relating to the "comprehensive plan" referenced in paragraph 4 of Kevyn Orr's Affidavit.

26.     All documents or communications relating to Syncora's rights under the Collateral Agreement.

27.     All documents or communications relating to the impact of the cash trap on the City's provision of municipal services.

28.     All documents or communications relating to the irreparable harm the City would have suffered if it had given notice to Syncora's counsel of the hearing on the City's Motion for

an *Ex Parte* Temporary Restraining Order and an Order to Show Cause Why a Preliminary Injunction Should Not Issue.

      29.    All documents or communications relating to the allegations in paragraphs 53-61, 63-68, 70-73, and 74-79 of the Complaint.

      30.    All documents or communications relating to the damages the City alleges it suffered as a result of Syncora's actions.

Dated:  July ___, 2013                              Respectfully submitted,

                                                    By: _____

Stephen C. Hackney                                      Gerard V. Mantese
Ryan Blaine Bennett                                     Mantese Honigman Rossman and
William E. Arnault                                      Williamson, P.C.
Lally A. Gartel                                         1361 East Big Beaver Road
KIRKLAND & ELLIS LLP                                    Troy, Michigan 48083
300 North LaSalle                                       Phone: 248-457-9200
Chicago, Illinois 60654                                 Fax: 248-457-9201
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*ATTORNEYS FOR DEFENDANT*                               *ATTORNEYS FOR DEFENDANT*
*SYNCORA GUARANTEE INC.*                                *SYNCORA GUARANTEE INC.*

**Schedule A to Third-Party Subpoena to SBS Financial Products Company, LLC**

**DEFINITIONS**

1.      The terms "you," "your," or "SBS" shall mean SBS Financial Products Company, LLC, or any other persons or entities acting or purporting to act for or on its behalf.

2.      The terms "The City of Detroit" or "the City" mean the City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including but not limited to Emergency Manager Kevyn Orr and his advisors.

3.      The term "Complaint" means the July 5, 2013 Verified Complaint filed by the City in the Circuit Court for the County of Wayne in Case No. 13-00858-CZ, attached as Exhibit A.

4.      The term "Syncora" means Syncora Guarantee Inc.

5.      The term "Swap Counterparties" means UBS AG, SBS Financial Products Company, LLC, and Merrill Lynch Capital Services, Inc.

6.      "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation.

7.      "U.S. Bank" means U.S. Bank National Association.

8.      The term "Swaps" has the same meaning given to that term in paragraph 14 of the Complaint, but extends to and includes any amendments to the Swaps.

9.      The term "Service Contracts" has the same meaning given to that term in paragraph 12 of the Complaint.

10.      The term "Certificates of Participation" has the same meaning given to that term in paragraph 12 of the Complaint.

11.     "Syncora's June 17, 2013" letter means the letter from Claude LeBlanc attached as Exhibit D to Kevyn Orr's July 4, 2013 affidavit, attached as Exhibit B.

12.     "Communication" means every contact of any nature, whether oral or written, from one person to another, whether in form of facts, ideas, inquiries or otherwise, and any evidence of such contact, including without limitation any correspondence, memoranda, notes, diaries, daily calendars, electronic mail messages, computer files, electronic or magnetic media, or other documents concerning such contacts.

13.     "Document" shall have the full meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure, and in particular includes (but is not limited to) every writing or record of every type and description, including letters, correspondence, diaries, memoranda, tapes, electronic data or storage, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, films, reports, financial statements, applications, emails, and tests, however produced or reproduced, in SBS's possession, custody, or control.  "Document" also includes all copies and drafts of every writing or record when the copy or draft is not identical to the original.

14.     "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

15.     The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

16.     The terms "including," "include" or "includes" mean including, but not limited to.

17.     The terms "each," "any," and "all" shall be construed to mean "each and every."

18.     The use of the singular form of a noun includes the plural form, and vice versa.

## INSTRUCTIONS

1.      Each Request extends to all documents in SBS's possession, custody, or control or in the possession, custody, or control of anyone acting on SBS's behalf.  A document is to be deemed in SBS's possession, custody, or control if it is in SBS's physical custody, or if it is in the physical custody of any person and SBS (i) owns such document in whole or in part; (ii) has a right, by contract, statute, or otherwise to use, inspect, examine, or copy such document on any terms; (iii) has an understanding, express or implied, that SBS may use, inspect, examine, or copy such document on any terms; or (iv) has, as a practical matter, been able to use, inspect, examine or copy such document when SBS sought to do so.

2.      If the location of any requested document is known but the document is not produced on the ground that the document is not in SBS's possession, custody, or control, identify the document and identify the person believed to have possession, custody, or control of the document.

3.      The response shall expressly indicate if no responsive documents are known to exist.

4.      The original of each document requested herein shall be produced together with any drafts, revisions, or copies of the same that bear any mark or notation not present in the original or that otherwise differ from the original.

5.      All documents should be produced in their entirety without redaction and should include all attachments and enclosures.  Documents that are attached to each other should not be separated.

3

6.      The response should state whether SBS will produce documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in the Request.

7.      The response to each Request shall state, with respect to each item or category, that production will be made or inspection will be permitted as requested, unless the Request is objected to, in which event the reason(s) for objection shall be stated.  If objection is made to part of a Request, the part shall be specified; documents responsive to the remainder of the Request shall be produced. Any such objection shall not extend the time within which SBS must otherwise respond to a Request to which no specific objection has been made.

8.      With respect to any documents or information withheld on a claim of attorney–client privilege, the attorney work product doctrine, or any other applicable privilege, the response shall provide an express statement of the asserted privilege that includes the following information: (i) the applicable date; (ii) the identity of the author(s), including the business or legal title(s) or position(s); (iii) the identity of the recipient(s), including business or legal title(s) or position(s); (iv) the subject matter of the document; (v) the identity of all other persons who received copies; and (vi) the specific factual basis of the claimed privilege or other protection from discovery.

9.      Each Request shall operate and be construed independently and, unless otherwise stated, no request limits the scope of any other request.

10.     In responding to any of these Requests, set forth any matter deemed ambiguous and the construction used in answering the Request.  These requests are to be liberally construed, and any doubts about whether a document is responsive to these Requests should be resolved in favor of production.

4

11.    These Requests shall be deemed continuing in nature to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure.

## DOCUMENT REQUESTS

1.    All documents or communications relating to the City's negotiations with the Swap Counterparties regarding termination of the Swaps, including, but not limited to, documents and communications relating to:

      a.    The date that the negotiations commenced;

      b.    The participants in any portion of the negotiations;

      c.    The role of the casino revenues in the negotiations;

      d.    The effect of Syncora's June 17, 2013 letter on the negotiations;

      e.    The current and ongoing status of the negotiations;

      f.    The Service Corporations' knowledge of or involvement in the negotiations;

      g.    U.S. Bank's knowledge of or involvement in the negotiations;

      h.    The substance of the negotiations.

2.    All documents or communications relating to the "final settlement" referenced in paragraph 40 of the Complaint.

3.    All documents or communications relating to U.S. Bank's obligations under the Collateral Agreement, including, but not limited to, documents and communications relating to:

      a.    U.S. Bank's obligations under Section 5.4 of the Collateral Agreement;

      b.    U.S. Bank's actions under Section 5.4 of the Collateral Agreement

4.    All documents or communications relating to Syncora's June 17, 2013 letter.

5.    All documents or communications relating to Syncora's insurance of the Certificates of Participation and Swaps.

6.      All documents or communications relating to the City's attempts to realize additional sources of cash or revenue.

7.      All documents or communication relating to the City's Swap termination obligations to the Service Corporations.

8.      All documents or communications relating to any termination events or events of default under the Collateral Agreement.

9.      All documents and communications relating to the impact of the "cash trap" effectuated by U.S. Bank.

10.      All documents and communications relating to Syncora's rights under the Collateral Agreement.

11.      All documents or communications relating to any waivers that U.S. Bank received regarding the provisions in the Collateral Agreement.

6

Dated:  July __, 2013

Respectfully submitted,

By:  _____

Stephen C. Hackney
Ryan Blaine Bennett
William E. Arnault
Lally A. Gartel
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*ATTORNEYS FOR DEFENDANT
SYNCORA GUARANTEE INC.*

Gerard V. Mantese
Mantese Honigman Rossman and
Williamson, P.C.
1361 East Big Beaver Road
Troy, Michigan 48083
Phone: 248-457-9200
Fax: 248-457-9201

*ATTORNEYS FOR DEFENDANT
SYNCORA GUARANTEE INC.*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CITY OF DETROIT, a Municipal
Corporation Organized and Existing
Under the Laws of the State of Michigan,

        Plaintiff,

    v.

SYNCORA GUARANTEE INC.,
a New York corporation,

and

U.S. BANK, N.A.,

and

MGM GRAND DETROIT, LLC,

and

DETROIT ENTERTAINMENT, LLC
d/b/a MOTORCITY CASINO HOTEL,

and

GREEKTOWN CASINO, LLC,

        Defendants.

Case No.: 2:13-cv-12987-LPZ-MKM

Hon. Lawrence P. Zatkoff

## DEFENDANT SYNCORA GUARANTEE INC.'S
## FIRST SET OF DOCUMENT REQUESTS TO U.S. BANK

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Syncora Guarantee, Inc. ("Syncora") requests that Defendant U.S. Bank, N.A. ("U.S. Bank") produce for its inspection and copying all documents and tangible things requested below in accordance with the Definitions and Instructions set forth below at the offices of their counsel, Mantese

Honigman Rossman and Williamson, P.C., 1361 E. Big Beaver Rd., Troy, Michigan 48083, by July 18, 2013.  Each of the following requests is continuing in nature, such that if U.S. Bank obtains or discovers additional responsive documents and things at a later date, such documents and things are to be made available to defendant for inspection and copying.

## DEFINITIONS

1.      The terms "you" or "U.S. Bank" or U.S. Bank National Association, or any other persons or entities acting or purporting to act for or on its behalf.

2.      The terms "The City of Detroit" or "The City" mean Plaintiff City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including but not limited to Emergency Manager Kevyn Orr and his advisors.

3.      The term "Complaint" means the July 5, 2013 Verified Complaint filed by Plaintiff in the Circuit Court for the County of Wayne in Case No. 13-00858-CZ.

4.      The term "Syncora" means Syncora Guarantee Inc., the defendant.

5.      The term "Swap Counterparties" means UBS AG, SBS Financial Products Company, LLC, and Merrill Lynch Capital Services, Inc.

6.      "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation.

7.      The term "Service Contracts" has the same meaning given to that term in paragraph 12 of the Complaint.

8.      The term "Swaps" has the same meaning given to that term in paragraph 14 of the Complaint, but extends to and includes any amendments to the Swaps.

9.      The term "Certificates of Participation" has the same meaning given to that term in paragraph 12 of the Complaint.

10.    "Syncora's June 17, 2013" letter means the letter from Claude LeBlanc attached as Exhibit D to Kevyn Orr's July 4, 2013 affidavit.

11.    "Syncora's June 24, 2013" letter means the letter from Ryan Bennett attached as Exhibit F to Kevyn Orr's July 4, 2013 affidavit.

12.    "U.S. Bank's June 24, 2013" email means the email from William Smith attached as Exhibit E to Kevyn Orr's July 4, 2013 affidavit.

13.    "Communication" means every contact of any nature, whether oral or written, from one person to another, whether in form of facts, ideas, inquiries or otherwise, and any evidence of such contact, including without limitation any correspondence, memoranda, notes, diaries, daily calendars, electronic mail messages, computer files, electronic or magnetic media, or other documents concerning such contacts.

14.    "Document" shall have the full meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure, and in particular includes (but is not limited to) every writing or record of every type and description, including letters, correspondence, diaries, memoranda, tapes, electronic data or storage, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, films, reports, financial statements, applications, emails, and tests, however produced or reproduced, in U.S. Bank's possession, custody, or control.  "Document" also includes all copies and drafts of every writing or record when the copy or draft is not identical to the original.

15.    "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting,

incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

16.     The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

17.     The terms "including," "include" or "includes" mean including, but not limited to.

18.     The terms "each," "any," and "all" shall be construed to mean "each and every."

19.     The use of the singular form of a noun includes the plural form, and vice versa.

## INSTRUCTIONS

1.     Each Request extends to all documents in U.S. Bank's possession, custody, or control or in the possession, custody, or control of anyone acting on U.S. Bank's behalf.  A document is to be deemed in U.S. Bank's possession, custody, or control if it is in U.S. Bank's physical custody, or if it is in the physical custody of any person and U.S. Bank (i) owns such document in whole or in part; (ii) has a right, by contract, statute, or otherwise to use, inspect, examine, or copy such document on any terms; (iii) has an understanding, express or implied, that U.S. Bank may use, inspect, examine, or copy such document on any terms; or (iv) has, as a practical matter, been able to use, inspect, examine or copy such document when U.S. Bank sought to do so.

2.     If the location of any requested document is known but the document is not produced on the ground that the document is not in U.S. Bank's possession, custody, or control, identify the document and identify the person believed to have possession, custody, or control of the document.

3.     The response shall expressly indicate if no responsive documents are known to exist.

4.     The original of each document requested herein shall be produced together with any drafts, revisions, or copies of the same that bear any mark or notation not present in the original or that otherwise differ from the original.

5.     All documents should be produced in their entirety without redaction and should include all attachments and enclosures.  Documents that are attached to each other should not be separated.

6.     The response should state whether U.S. Bank will produce documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in the Request.

7.     The response to each Request shall state, with respect to each item or category, that production will be made or inspection will be permitted as requested, unless the Request is objected to, in which event the reason(s) for objection shall be stated.  If objection is made to part of a Request, the part shall be specified; documents responsive to the remainder of the Request shall be produced.  Any such objection shall not extend the time within which U.S. Bank must otherwise respond to a Request to which no specific objection has been made.

8.     With respect to any documents or information withheld on a claim of attorney–client privilege, the attorney work product doctrine, or any other applicable privilege, the response shall provide an express statement of the asserted privilege that includes the following information: (i) the applicable date; (ii) the identity of the author(s), including the business or legal title(s) or position(s); (iii) the identity of the recipient(s), including business or legal title(s) or position(s); (iv) the subject matter of the document; (v) the identity of all other persons who received copies; and (vi) the specific factual basis of the claimed privilege or other protection from discovery.

5

9.      Each Request shall operate and be construed independently and, unless otherwise stated, no request limits the scope of any other request.

10.     In responding to any of these Requests, set forth any matter deemed ambiguous and the construction used in answering the Request.  These requests are to be liberally construed, and any doubts about whether a document is responsive to these Requests should be resolved in favor of production.

11.     These Requests shall be deemed continuing in nature to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure.

## DOCUMENT REQUESTS

1.      All documents or communications relating to U.S. Bank's obligations under the Collateral Agreement, including, but not limited to, documents and communications relating to:

      a.      U.S. Bank's obligations under Section 5.4 of the Collateral Agreement;

      b.      U.S. Bank's actions under Section 5.4 of the Collateral Agreement

2.      All documents or communications relating to U.S. Bank's knowledge of or involvement in any negotiations occurring between the City and the Swap Counterparties.

3.      All documents or communications relating to the City's negotiations with the Swap Counterparties regarding termination of the Swaps.

4.      All documents or communications relating to Syncora's June 17, 2013 letter.

5.      All documents or communications relating to Syncora's June 24, 2013 letter.

6.      All documents or communications relating to U.S. Bank's June 24, 2013 email.

7.      All documents or communications relating to Syncora's rights under the Collateral Agreement.

8.      All documents or communications relating to any termination events or events of default under the Collateral Agreement.

6

9.      All documents or communications relating to the "cash trap" effectuated by U.S. Bank.

10.     All documents or communications relating to any waivers that U.S. Bank received regarding the provisions in the Collateral Agreement.

7

Dated:  July __, 2013                          Respectfully submitted,

                                          By: _____

Stephen C. Hackney                             Gerard V. Mantese
Ryan Blaine Bennett                            Mantese Honigman Rossman and
William E. Arnault                             Williamson, P.C.
Lally A. Gartel                                1361 East Big Beaver Road
KIRKLAND & ELLIS LLP                           Troy, Michigan 48083
300 North LaSalle                              Phone: 248-457-9200
Chicago, Illinois 60654                        Fax: 248-457-9201
Telephone: (312) 862-2000
Facsimile: (312) 862-2200                      *ATTORNEYS FOR DEFENDANT*
                                               *SYNCORA GUARANTEE INC.*
*ATTORNEYS FOR DEFENDANT*
*SYNCORA GUARANTEE INC.*

8

### Schedule A to 30(b)(6) Deposition of Detroit General Retirement System Service Corporation

### INSTRUCTIONS

1.      Pursuant to Rule 30(b)(6), Detroit General Retirement System Service Corporation ("DGRS Service Corporation") is required to designate and produce one or more officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the matters set forth below.  The person(s) so designated shall be required to testify as to each of those matters known or reasonably available to DGRS Service Corporation.

### DEFINITIONS

1.      The terms "you," "your," or "GRS Service Corporation" mean the Detroit General Retirement System Service Corporation, or any other persons or entities acting or purporting to act for or on its behalf.

2.      The terms "The City of Detroit" or "The City" mean the City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including but not limited to Emergency Manager Kevyn Orr and his advisors.

3.      The term "Complaint" means the July 5, 2013 Verified Complaint filed by Plaintiff in the Circuit Court for the County of Wayne in Case No. 13-00858-CZ, attached as Exhibit A.

4.      The term "Syncora" means Syncora Guarantee Inc.

5.      The term "Swap Counterparties" means UBS AG, SBS Financial Products Company, LLC, and Merrill Lynch Capital Services, Inc.

6.      "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation.

7.      "U.S. Bank" means U.S. Bank National Association.

8.      The term "Swaps" has the same meaning given to that term in paragraph 14 of the Complaint, but extends to and includes any amendments to the Swaps.

9.      The term "Service Contracts" has the same meaning given to that term in paragraph 12 of the Complaint.

10.     The term "Certificates of Participation" has the same meaning given to that term in paragraph 12 of the Complaint.

11.     "Syncora's June 17, 2013" letter means the letter from Claude LeBlanc attached as Exhibit D to Kevyn Orr's July 4, 2013 affidavit, attached as Exhibit B.

12.      "Communication" means every contact of any nature, whether oral or written, from one person to another, whether in form of facts, ideas, inquiries or otherwise, and any evidence of such contact, including without limitation any correspondence, memoranda, notes, diaries, daily calendars, electronic mail messages, computer files, electronic or magnetic media, or other documents concerning such contacts.

13.     "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

14.     The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

15.     The terms "including," "include" or "includes" mean including, but not limited to.

16.     The terms "each," "any," and "all" shall be construed to mean "each and every."

17.     The use of the singular form of a noun includes the plural form, and vice versa.

## DEPOSITION TOPICS

1.      Any discussions between the City and DGRS Service Corporation regarding the obligations of the City and the Service Corporations under the Certificates of Participation and Swaps.

2.      DGRS Service Corporation's obligations under the Collateral Agreement.

3.      DGRS Service Corporation's knowledge of and involvement in any negotiations between the City and the Swap Counterparties.

4.      Communications between the DGRS Service Corporation and the City concerning Syncora, Syncora's letter dated June 17, 2013, or any other matter relating to Syncora's insurance of the Certificates of Participation or the swaps.

5.      Kevyn Orr's authority with respect to the Service Corporations.

3

**Schedule A to 30(b)(6) Deposition of the Detroit Police and Fire Retirement System Service Corporation**

## INSTRUCTIONS

1.     Pursuant to Rule 30(b)(6), Detroit Police and Fire Retirement System Service Corporation ("DPRFS Service Corporation") is required to designate and produce one or more officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the following matters set forth below.  The person(s) so designated shall be required to testify as to each of those matters known or reasonably available to DPRFS Service Corporation.

## DEFINITIONS

1.     The terms "you," "your," or "PFRS Service Corporation" means the Detroit Police and Fire Retirement System Service Corporation, or any persons or entities acting or purporting to act for or on its behalf.

2.     The term "The City of Detroit" or "the City" means City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including but not limited to Emergency Manager Kevyn Orr and his advisors.

3.     The term "Complaint" means the July 5, 2013 Verified Complaint filed by Plaintiff in the Circuit Court for the County of Wayne in Case No. 13-00858-CZ, attached as Exhibit A.

4.     The term "Syncora" means Syncora Guarantee Inc.

5.     The term "Swap Counterparties" means UBS AG, SBS Financial Products Company, LLC, and Merrill Lynch Capital Services, Inc.

6.     "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation.

7.     "U.S. Bank" means U.S. Bank National Association.

8.      The term "Swaps" has the same meaning given to that term in paragraph 12 of the Complaint, but extends to and includes any amendments to the Swaps.

9.      The term "Service Contracts" has the same meaning given to that term in paragraph 12 of the Complaint.

10.     The term "Certificates of Participation" has the same meaning given to that term in paragraph 12 of the Complaint.

11.     "Syncora's June 17, 2013" letter means the letter from Claude LeBlanc attached as Exhibit D to Kevyn Orr's July 4, 2013 affidavit, attached as Exhibit B.

12.      "Communication" means every contact of any nature, whether oral or written, from one person to another, whether in form of facts, ideas, inquiries or otherwise, and any evidence of such contact, including without limitation any correspondence, memoranda, notes, diaries, daily calendars, electronic mail messages, computer files, electronic or magnetic media, or other documents concerning such contacts.

13.     "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

14.     The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

15.     The terms "including," "include" or "includes" mean including, but not limited to.

16.     The terms "each," "any," and "all" shall be construed to mean "each and every."

17.     The use of the singular form of a noun includes the plural form, and vice versa.

## **DEPOSITION TOPICS**

1.      Any discussions between the City and DPRFS Service Corporation regarding the obligations of the City and the Service Corporations under the Certificates of Participation and Swaps.

2.      DPRFS Service Corporation's obligations under the Collateral Agreement.

3.      DPRFS Service Corporation's knowledge of and involvement in any negotiations between the City and the Swap Counterparties.

4.      Communications between the DPRFS Service Corporation and the City concerning Syncora, Syncora's letter dated June 17, 2013, or any other matter relating to Syncora's insurance of the Certificates of Participation or the Swaps.

5.      Kevin Orr's authority with respect to the Service Corporations.

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CITY OF DETROIT,
a Municipal Corporation Organized
and Existing Under the Laws of the
State of Michigan,

              Plaintiff,

      v.

SYNCORA GUARANTEE INC.,
a New York Corporation,

and

U.S. BANK, N.A.,

and

MGM GRAND DETROIT, LLC,

and

DETROIT ENTERTAINMENT, LLC,
d/b/a MOTORCITY CASINO HOTEL,

and

GREEKTOWN CASINO, LLC,

              Defendants.

Case No.: 2:13-cv-12987-LPZ-MKM

Hon. Lawrence P. Zatkoff

---

**DEFENDANT SYNCORA GUARANTEE INC.'S NOTICE OF
DEPOSITION OF KEVYN D. ORR**

PLEASE TAKE NOTICE THAT, pursuant to Rule 30 of the Federal Rules of Civil

Procedure, defendant Syncora Guarantee Inc. ("Syncora") will take deposition upon oral

examination of Kevyn D. Orr at 9:00 am EST on July 23, 2013 at the law offices of Mantese

Honigman Rossman and Williamson, P.C., 1361 E. Big Beaver Rd., Troy, Michigan 48083 or at

such other time and place as may be agreed upon by counsel for the parties.  The deposition will

be recorded by videotape and stenographer.  The deposition will continue from day to day until

completed.

Dated:  July __, 2013                                    Respectfully submitted,

                                                By:  _____

Stephen C. Hackney                                   Gerard V. Mantese
Ryan Blaine Bennett                                  Mantese Honigman Rossman and
William E. Arnault                                   Williamson, P.C.
Lally A. Gartel                                      1361 East Big Beaver Road
KIRKLAND & ELLIS LLP                                 Troy, Michigan 48083
300 North LaSalle                                    Phone: 248-457-9200
Chicago, Illinois 60654                              Fax: 248-457-9201
Telephone: (312) 862-2000
Facsimile: (312) 862-2200                            *ATTORNEYS FOR DEFENDANT*
                                                     *SYNCORA GUARANTEE INC.*
*ATTORNEYS FOR DEFENDANT*
*SYNCORA GUARANTEE INC.*

**Schedule A to 30(b)(6) Deposition of**
**SBS Financial Products Company, LLC**

**INSTRUCTIONS**

1.      Pursuant to Rule 30(b)(6), SBS Financial Products Company, LLC ("SBS") is required to designate and produce one or more officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the matters set forth in Schedule A. The person(s) so designated shall be required to testify as to each of those matters known or reasonably available to SBS

**DEFINITIONS**

1.      The terms "you" or "SBS" shall mean SBS Financial Products Company, LLC.

2.      The terms "The City of Detroit" or "The City" mean the City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including, but not limited to, Emergency Manager Kevyn Orr and his advisors.

3.      The term "Complaint" means the July 5, 2013 Verified Complaint filed by the City in the Circuit Court for the County of Wayne in Case No. 13-00858-CZ, attached as Exhibit A.

4.      The term "Syncora" means Syncora Guarantee Inc.

5.      The term "Swap Counterparties" means UBS AG, SBS Financial Products Company, LLC, and Merrill Lynch Capital Services, Inc.

6.      "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation.

7.      "U.S. Bank" means U.S. Bank National Association.

8.      The term "Swaps" has the definition given to that term in paragraph 14 of the Complaint, but extends to and includes any amendments to the Swaps.

9.      The term "Service Contracts" has the same meaning given to that term in paragraph 12 of the Complaint.

10.     The term "Certificates of Participation" has the same meaning given to that term in paragraph 12 of the Complaint.

11.     "Syncora's June 17, 2013" letter means the letter from Claude LeBlanc attached as Exhibit D to Kevyn Orr's July 4, 2013 affidavit, attached as Exhibit B.

12.      "Communication" means every contact of any nature, whether oral or written, from one person to another, whether in form of facts, ideas, inquiries or otherwise, and any evidence of such contact, including without limitation any correspondence, memoranda, notes, diaries, daily calendars, electronic mail messages, computer files, electronic or magnetic media, or other documents concerning such contacts.

13.     "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

14.     The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

15.     The terms "including," "include" or "includes" mean including, but not limited to.

16.     The terms "each," "any," and "all" shall be construed to mean "each and every."

17.     The use of the singular form of a noun includes the plural form, and vice versa.

2

## DEPOSITION TOPICS

1.     The negotiations between UBS, SBS, and the City regarding the termination of the Swaps.

2.     All communications relating to Syncora's June 17, 2013 letter.

3.     Syncora's insurance of the Certificates of Participation and the Swaps.

4.     SBS's consent or negotiation relating to the casino revenues, both prior and subsequent to June 17, 2013.

3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CITY OF DETROIT, a Municipal
Corporation Organized and Existing
Under the Laws of the State of Michigan,

        Plaintiff,

    v.

SYNCORA GUARANTEE INC.,

and

U.S. BANK, N.A.,

and

MGM GRAND DETROIT, LLC,

and

DETROIT ENTERTAINMENT, LLC
d/b/a MOTORCITY CASINO HOTEL,

and

GREEKTOWN CASINO, LLC,

        Defendants.

Case No.:  2:13-cv-12987-LPZ-MKM

Hon. Lawrence P. Zatkoff

**NOTICE OF DEPOSITION OF U.S. BANK NATIONAL ASSOCIATION**
**PURSUANT TO RULE 30(b)(6)**

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, defendant Syncora Guarantee Inc. ("Syncora") will take the deposition upon oral

examination of U.S. Bank National Association ("U.S. Bank") at 9:00 am EST on July 23, 2013

at the law offices of Mantese Honigman Rossman and Williamson, P.C., 1361 E. Big Beaver

Rd., Troy, Michigan 48083 or at such other time and place as may be agreed upon by counsel for

the parties. The deposition will be recorded by videotape and stenographer. The deposition will continue from day to day until completed. You are invited to attend and cross-examine the witness(es).

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Rule 30(b)(6), U.S. Bank National Association is required to designate and produce one or more officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the matters set forth in Schedule A. The person(s) so designated shall be required to testify as to each of those matters known or reasonably available to U.S. Bank National Association.

Dated: July __, 2013                           Respectfully submitted,

                                               By: _____

Stephen C. Hackney                               Gerard V. Mantese
Ryan Blaine Bennett                              Mantese Honigman Rossman and
William E. Arnault                               Williamson, P.C.
Lally A. Gartel                                  1361 East Big Beaver Road
KIRKLAND & ELLIS LLP                             Troy, Michigan 48083
300 North LaSalle                                Phone: 248-457-9200
Chicago, Illinois 60654                          Fax: 248-457-9201
Telephone: (312) 862-2000
Facsimile: (312) 862-2200                         *ATTORNEYS FOR DEFENDANT*
                                                 *SYNCORA GUARANTEE INC.*
*ATTORNEYS FOR DEFENDANT*
*SYNCORA GUARANTEE INC.*

2

**SCHEDULE A**

**DEFINITIONS**

1.      The term "you" shall mean "U.S. Bank" or U.S. Bank National Association.

2.      "The City of Detroit" or "The City" means Plaintiff City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including but not limited to Emergency Manager Kevyn Orr and his advisors.

3.      The term "Complaint" means the July 5, 2013 Verified Complaint filed by Plaintiff in the Circuit Court for the County of Wayne in Case No. 13-00858-CZ.

4.      The term "Syncora" means Syncora Guarantee Inc., the defendant.

5.      The term "Swap Counterparties" means UBS AG, SBS Financial Products Company, LLC, and Merrill Lynch Capital Services, Inc.

6.      "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation.

7.      The term "Swaps" has the definition given to that term in paragraph 14 of the Complaint, but extends to and includes any amendments to the Swaps.

8.      The term "Certificates of Participation" has the same meaning given to that term in paragraph 12 of the Complaint.

9.      "Syncora's June 17, 2013" letter means the letter from Claude LeBlanc attached as Exhibit D to Kevyn Orr's July 4, 2013 affidavit.

10.     "Syncora's June 24, 2013" letter means the letter from Ryan Bennett attached as Exhibit F to Kevyn Orr's July 4, 2013 affidavit.

11.     "U.S. Bank's June 24, 2013" email means the email from William Smith attached as Exhibit E to Kevyn Orr's July 4, 2013 affidavit.

12.     "Communication" means every contact of any nature, whether oral or written, from one person to another, whether in form of facts, ideas, inquiries or otherwise, and any evidence of such contact, including without limitation any correspondence, memoranda, notes, diaries, daily calendars, electronic mail messages, computer files, electronic or magnetic media, or other documents concerning such contacts.

13.     "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

14.     The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

15.     The terms "including," "include" or "includes" mean including, but not limited to.

16.     The terms "each," "any," and "all" shall be construed to mean "each and every."

17.     The use of the singular form of a noun includes the plural form, and vice versa.

## **DEPOSITION TOPICS**

1.     Any discussions within U.S. Bank relating to Syncora, including Syncora's insurance of the Certificates of Participation and the Swaps.

2.     Communications between U.S. Bank and the City, Swap Counterparties, or Service Corporations relating to Syncora, including Syncora's insurance of the Certificates of Participation and the Swaps.

3.      Any negotiations between the City and the Swap Counterparties regarding termination of the swap agreements.

4.      U.S. Bank's understanding of and actions under any Section of the Collateral Agreement, including Section 5.4.

5.      U.S. Bank's understanding of and communications about Syncora's correspondences, including Syncora's letter dated June 17, 2013.

6.      Any allegations in the Complaint in which U.S. Bank is mentioned.

7.      Any allegations in the Complaint with respect to which U.S. Bank has personal knowledge.

8.      Internal and external discussions relating to Syncora's June 17, 2013 letter.

9.      Internal and external discussions relating to Syncora's June 24, 2013 letter.

10.     Internal and external discussions relating to U.S. Bank's June 24, 2013 email.

## Schedule A to 30(b)(6) Deposition of UBS AG

### INSTRUCTIONS

1.      Pursuant to Rule 30(b)(6), UBS AG ("UBS") is required to designate and produce one or more officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the matters set forth in Schedule A.  The person(s) so designated shall be required to testify as to each of those matters known or reasonably available to UBS.

### DEFINITIONS

1.      The terms "you" or "UBS" shall mean UBS AG, or any other persons or entities acting or purporting to act for or on its behalf.

2.      The terms "The City of Detroit" or "The City" mean the City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including but not limited to Emergency Manager Kevyn Orr and his advisors

3.      The term "Complaint" means the July 5, 2013 Verified Complaint filed by Plaintiff in the Circuit Court for the County of Wayne in Case No. 13-00858-CZ, attached as Exhibit A.

4.      The term "Syncora" means Syncora Guarantee Inc.

5.      The term "Swap Counterparties" means UBS AG, SBS Financial Products Company, LLC, and Merrill Lynch Capital Services, Inc.

6.      "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation.

7.      "U.S. Bank" means U.S. Bank National Association.

8.      The term "Swaps" has the same meaning given to that term in paragraph 14 of the Complaint, but extends to and includes any amendments to the Swaps.

9.      The term "Service Contracts" has the same meaning given to that term in paragraph 12 of the Complaint.

10.     The term "Certificates of Participation" has the same meaning given to that term in paragraph 12 of the Complaint.

11.     "Syncora's June 17, 2013" letter means the letter from Claude LeBlanc attached as Exhibit D to Kevyn Orr's July 4, 2013 affidavit, attached as Exhibit B.

12.      "Communication" means every contact of any nature, whether oral or written, from one person to another, whether in form of facts, ideas, inquiries or otherwise, and any evidence of such contact, including without limitation any correspondence, memoranda, notes, diaries, daily calendars, electronic mail messages, computer files, electronic or magnetic media, or other documents concerning such contacts.

13.     "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

14.     The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

15.     The terms "including," "include" or "includes" mean including, but not limited to.

16.     The terms "each," "any," and "all" shall be construed to mean "each and every."

17.     The use of the singular form of a noun includes the plural form, and vice versa.

## **DEPOSITION TOPICS**

2

1.     The negotiations between UBS, SBS, and the City regarding the termination of the Swaps.

2.     All communications relating to Syncora's June 17, 2013 letter.

3.     Syncora's insurance of the Certificates of Participation and the Swaps.

4.     UBS's consent or negotiation relating to the casino revenues, both prior and subsequent to June 17, 2013.

3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CITY OF DETROIT, a Municipal
Corporation Organized and Existing
Under the Laws of the State of Michigan,

        Plaintiff,

     v.

SYNCORA GUARANTEE INC.,

and

U.S. BANK, N.A.,

and

MGM GRAND DETROIT, LLC,

and

DETROIT ENTERTAINMENT, LLC
d/b/a MOTORCITY CASINO HOTEL,

and

GREEKTOWN CASINO, LLC,

        Defendants.

Case No.:  2:13-cv-12987-LPZ-MKM

Hon. Lawrence P. Zatkoff

**NOTICE OF DEPOSITION OF PLAINTIFF CITY OF DETROIT**
**PURSUANT TO RULE 30(b)(6)**

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, defendant Syncora Guarantee Inc. ("Syncora") will take the deposition upon oral

examination of plaintiff City of Detroit (the "City") at 9:00 am EST on July 22, 2013 at the law

offices of Mantese Honigman Rossman and Williamson, P.C., 1361 E. Big Beaver Rd., Troy,

Michigan 48083 or at such other time and place as may be agreed upon by counsel for the

parties.  The deposition will be recorded by videotape and stenographer.  The deposition will continue from day to day until completed.  You are invited to attend and cross-examine the witness(es).

PLEASE TAKE FURTHER NOTICE THAT, pursuant to Rule 30(b)(6), the City is required to designate and produce one or more officers, directors, managing agents, or other persons who consent to testify on its behalf with respect to the matters set forth in Schedule A. The person(s) so designated shall be required to testify as to each of those matters known or reasonably available to U.S. Bank National Association.

Dated:  July __, 2013                                          Respectfully submitted,

                                                       By: _____

Stephen C. Hackney                                     Gerard V. Mantese
Ryan Blaine Bennett                                    Mantese Honigman Rossman and
William E. Arnault                                     Williamson, P.C.
Lally A. Gartel                                        1361 East Big Beaver Road
KIRKLAND & ELLIS LLP                                   Troy, Michigan 48083
300 North LaSalle                                      Phone: 248-457-9200
Chicago, Illinois 60654                                Fax: 248-457-9201
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*ATTORNEYS FOR DEFENDANT*                              *ATTORNEYS FOR DEFENDANT*
*SYNCORA GUARANTEE INC.*                               *SYNCORA GUARANTEE INC.*

**SCHEDULE A**

**DEFINITIONS**

1.      The terms "you" or "The City of Detroit" or "The City" mean Plaintiff City of Detroit, or any other persons or entities acting or purporting to act for or on its behalf, including but not limited to Emergency Manager Kevyn Orr and his advisors.

2.      The term "Complaint" means the July 5, 2013 Verified Complaint filed by Plaintiff in the Circuit Court for the County of Wayne in Case No. 13-00858-CZ.

3.      The term "Syncora" means Syncora Guarantee Inc..

4.      The term "Swap Counterparties" means UBS AG, SBS Financial Products Company, LLC, and Merrill Lynch Capital Services, Inc., the parties to the Collateral Agreement dated June 15, 2009.

5.      "Service Corporations" means the Detroit Police and Fire Retirement System Service Corporation and the Detroit General Retirement System Service Corporation.

6.      "U.S. Bank" means U.S. Bank National Association.

7.      The term "Service Contracts" has the same meaning given to that term in paragraph 12 of the Complaint.

8.      The term "Swaps" has the same meaning given to that term in paragraph 14 of the Complaint, but extends to and includes any amendments to the Swaps.

9.      The term "Certificates of Participation" has the same meaning given to that term in paragraph 12 of the Complaint.

10.     "Syncora's June 17, 2013" letter means the letter from Claude LeBlanc attached as Exhibit D to Kevyn Orr's July 4, 2013 affidavit.

3

11.     "Communication" means every contact of any nature, whether oral or written, from one person to another, whether in form of facts, ideas, inquiries or otherwise, and any evidence of such contact, including without limitation any correspondence, memoranda, notes, diaries, daily calendars, electronic mail messages, computer files, electronic or magnetic media, or other documents concerning such contacts.

12.     "Concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

13.     The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  The singular form of a noun or pronoun includes the plural form and vice versa.

14.     The terms "including," "include" or "includes" mean including, but not limited to.

15.     The terms "each," "any," and "all" shall be construed to mean "each and every."

16.     The use of the singular form of a noun includes the plural form, and vice versa.

## DEPOSITION TOPICS

1.      The City's negotiations with the Swap Counterparties regarding termination of the Swaps, including:

> (a)     The date that the negotiations commenced;
>
> (b)     The participants in any portion of the negotiations;
>
> (c)     The role of the casino revenues in the negotiations;
>
> (d)     The effect of Syncora's June 17, 2013 letter on the negotiations;
>
> (e)     The current and ongoing status of the negotiations;

4

(f)     The Service Corporations' knowledge of or involvement in the negotiations;

(g)     U.S. Bank's knowledge of or involvement in the negotiations;

(h)     The substance of the negotiations.

2.     The "final settlement" referenced in paragraph 40 of the Complaint.

3.     The City's "promises to stakeholders" as alleged in paragraph 46 of the Verified Complaint.

4.     The City's use of the gambling revenues remitted to them from the General Receipts Subaccount prior to June 14, 2013.

5.     The City's potential uses of the gambling revenues remitted to them from the General Receipts Subaccount.

6.     U.S. Bank's obligations under the Collateral Agreement.

7.     The City's and the Service Corporations' obligations under the Service Contracts, the Swaps, and the Collateral Agreement.

8.     Internal and external communications relating to Syncora's June 17, 2013 letter.

9.     The harm the City claims it will experience due to Syncora's actions and the June 17, 2013 letter.

10.     All of the City's attempts to realize additional sources of cash or revenue.

11.     The reasons behind the City's June 14, 2013 decision to not make a payment to the Service Corporations.

12.     The current or potential uses of the approximately $40 million that the City decided not to pay to the Service Corporations.

13.     All of the City's Swaps termination obligations to the Service Corporations.

14.    The casino taxes and developer payments that the City has received and expects to receive.

15.    Any termination events or events of default under the Collateral Agreement that have occurred.

16.    The "ten-year projections" in paragraph 25 of the Complaint.

17.    The City's ongoing negotiations and proposed settlements between the City and its Stakeholders.  (*See, e.g.,* Compl. ¶ 39.)

18.    The City's efforts and abilities to deliver municipal services.

19.    The City's allegation that Syncora acted in bad faith and without legal justification.

20.    The City's available cash-on-hand as of June, 2013 and the previous 12 months.

21.    The City's cash projections.

22.    All of the effects of the "cash trap" effectuated by U.S. Bank.

23.    All of the "unique and irreplaceable opportunities" that the City will lose if it cannot quickly reach settlements with its stakeholders.

24.    The "comprehensive plan" referenced in paragraph 4 of Kevyn Orr's July 4, 2013 Affidavit.

25.    Syncora's rights under the Collateral Agreement.

26.    The irreparable harm the City would have suffered if it had given notice to Syncora's counsel of the hearing on the City's Motion for an *Ex Parte* Temporary Restraining Order and an Order to Show Cause Why a Preliminary Injunction Should Not Issue.

27.    All of the damages the City alleges it has or will suffer as a result of Syncora's actions.

28.    Kevyn Orr's authority over the Service Corporations.

7

**Exhibit 12**

**City's Brief in Opposition to Defendant's
Emergency Motion to Dissolve TRO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

| | |
|---|---|
| **CITY OF DETROIT, a Municipal Corporation Organized and Existing Under the Laws of the State of Michigan** )<br><br>)<br><br>) | **Case No.: 2:13-cv-12987-LPZ-MKM** |
| **Plaintiff,** )<br><br>) | |
| **v.** )<br><br>) | **Hon. Lawrence P. Zatkoff** |
| **SYNCORA GUARANTEE INC., a New York Corporation,** )<br><br>) | |
| **and** )<br><br>) | |
| **U.S. BANK, N.A.,** )<br><br>) | |
| **and** )<br><br>) | |
| **MGM GRAND DETROIT, LLC,** )<br><br>) | |
| **and** )<br><br>) | |
| **DETROIT ENTERTAINMENT, LLC, d/b/a MOTORCITY CASINO HOTEL,** )<br><br>) | |
| **and** )<br><br>) | |
| **GREEKTOWN CASINO, LLC,** )<br><br>) | |
| **Defendants.** )<br><br>) | |

**CITY OF DETROIT'S BRIEF IN OPPOSITION TO DEFENDANT SYNCORA GUARANTEE INC.'S EMERGENCY MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER AND CONDUCT EXPEDITED DISCOVERY**

This case arises from Syncora's improper interference with the City of Detroit's banking relationships. Those relationships, which were established in June 2009, operated smoothly for years despite the City's financial challenges. Last month, Syncora—whose only involvement in those relationships is that of an insurer upon whom no claim has yet been made—saw fit to threaten the custodian bank in order to freeze (or "trap") money that the City desperately needed. Syncora's admitted motive was to exert leverage upon the City to obtain concessions on a different front, and it offered a flimsy legal justification for its actions. Unable to negotiate a solution with Syncora, the City brought this action on July 5 in the Circuit Court for Wayne County. Upon an extensive record, Judge Annette Berry determined that the City was likely to prevail upon its claims that Syncora had acted illegally and entered a temporary restraining order ("TRO") that gave the City access to the trapped money to prevent the immediate and irreparable harm facing the City if it could not access these funds. She also set July 26 for a hearing on a preliminary injunction.

The TRO permitted the City to have uninterrupted access—as it had for the previous four years—to the $15 million or so that accumulates each month in a bank account known as the General Receipts Subaccount. On Friday, July 12, Syncora demanded that the City agree to dissolve the TRO and adjourn the preliminary injunction hearing indefinitely. When counsel for the City unexpectedly agreed to do so, Syncora's counsel added a new demand, namely, that the City return to the General Receipts Subaccount the money it had been paid during the pendency of the TRO. The City refused, and a few hours later Syncora served lengthy emergency motion papers and extensive discovery demands.

There obviously is no emergency. The City has consented to dissolution of the TRO and adjournment of the preliminary injunction hearing. Although the City's declaratory judgment

action and tort claims remain pending, those claims can and should proceed on the normal

schedule called for by this Court's procedures and the Rules of Civil Procedure.  Syncora's sole

argument for exigency is the claim it devised for the first time late Friday afternoon that the City

should pay $15 million into the General Receipts Subaccount.  Yet this claim for monetary

damages, is clearly not emergent, and Syncora's claim is procedurally and substantively

defective for many reasons.

## ISSUES PRESENTED

1.  Whether good cause exists for expedited proceedings, given the fact that the City has consented to the dissolution of the State Court's TRO and an indefinite adjournment of the preliminary injunction hearing and that the monies in the General Receipts Subaccount are fully replenished each month?

2.  Whether defendant Syncora may properly make a claim for disgorgement of money in motion papers without filing a counterclaim as required by Federal Rule of Civil Procedure 13?

3.  Whether preservation of the *status quo* should involve protecting the City of Detroit's rights to casino tax revenues as they were exercised for the four years between June 2009 and June 2013 or instead permitting Syncora to cause the freezing of this money as it did between June 17 and July 5, 2013?

4.  Whether Syncora has the rights of a secured party under the Collateral Agreement between the City and the swap counterparties?

5.  Whether Syncora has met the requirements for entry of injunctive relief?

## RELEVANT AUTHORITY

### A.  Syncora's Request That The Court Order The City To Return Funds Is Procedurally Improper

Federal Rule of Civil Procedure 13(a) provides that "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:  (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."  Rule 13(c) provides that "[a] counterclaim need not diminish or defeat the recovery sought by the opposing party.  It may request relief that exceeds in amount or differs in kind from the relief sought by the opposing party."

### B.  Syncora Cannot Meet The Traditional Standards For Injunctive Relief

"When considering a motion for preliminary injunction, a district court must balance four factors:  (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction."  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007).

## FACTUAL BACKGROUND

### A. The COPs and Swaps Transactions

This case has its origins in complex financings the City of Detroit closed in 2005 and 2006 to fund its obligations to two retirement systems. The financing culminated in the sale to the public of "Pension Obligation Certificates of Participation" ("COPs").[1]

### 1. The COPs

The contractual arrangements underlying the COPs transactions hinge upon promises by the City to make periodic payments to two non-profit Service Corporations it established. The Service Corporations in turn created Funding Trusts, to which they assigned their interests in this income stream. Finally, the Funding Trusts sold "Certificates Of Participation" in the income stream to the public, with each certificate representing a proportional right to the City's payments.

To make the COPs attractive to investors, the Service Corporations purchased insurance against a default by the City on payments of interest or principal. The predecessor of defendant Syncora—an entity known as XL Capital Assurance, Inc.—was one of two monoline insurers that sold this insurance to the Service Corporations.

### 2. The Swaps

Some of the COPs had floating interest rates. Fearing rising interest rates, the City hedged its risk by having the Service Corporations enter into interest rate "swap" agreements

---

[1] Details of the transactional documents are set forth with particularity at Detroit City Code §§ 18-16-1 through 18-16-7, attached as Exhibit A to the City of Detroit's Motion and Brief in Support Of Its Motion For An Ex Parte Temporary Restraining Order And An Order To Show Cause Why A Preliminary Injunction Should Not Issue ("State Court Motion for a TRO"), included as Exhibit 2 to the Declaration of Christopher J. DiPompeo ("DiPompeo Decl."), filed concurrently herewith.

with two banks, commonly known as the "swap counterparties."[2]  Under the swaps, the Service Corporations and the swap counterparties agreed to a transaction that effectively converted each Service Corporation's floating interest rate exposure into a fixed payment.  This was done through an arrangement whereby, in return for each side "betting" against the other on interest rates, the Service Corporations agreed to pay periodic, fixed amounts to the swap counterparties, and the counterparties agreed to make payments to the Service Corporations in the event that floating interest rates exceeded certain levels.

As part of the swaps transaction, the swap counterparties required the Service Corporations to buy insurance against any default on their swaps payments.  The Service Corporations bought the insurance from the same two sureties—including Syncora's predecessor, XL Capital—that they had used for the insurance on the COPs.  Thus, Syncora is the surety for both the COPs and swaps.  These, however, are two different sets of insurance policies; they are separately documented; and Syncora's obligations and rights under the two policies are separate and independent.

### B.  2009 Collateral Agreement

The swaps documents gave the swap counterparties the right to terminate the swaps agreements and demand a large termination payment under certain conditions.  One such event was (a) if the rating on the COPs were ever reduced to below investment grade (b) at the same time the credit ratings of the two insurers fell below certain levels.  In January 2009, this happened, giving the swap counterparties the right to demand early termination of the swap agreements and a termination payment then estimated to be between $300 and $400 million.

---

[2] The banks were UBS A.G. and SBS Financial Products Company, LLC.  SBS had a credit support arrangement with Merrill Lynch Capital Services.

The City lacked the resources to make this termination payment, so it renegotiated the swaps with the swap counterparties. The renegotiated deal resulted in a Collateral Agreement between the City, the Service Corporations, the swap counterparties, and U.S. Bank as custodian that was signed in June 2009.[3] The essence of the Collateral Agreement was to secure the City's obligations to the swap counterparties by pledging the tax revenues and developer payments the City collected from Detroit's three casinos (collectively the "Casino Revenues"). The Collateral Agreement created a "lockbox" system to hold these pledged revenues until the City made its swaps payment each month.[4]

The Collateral Agreement created two bank accounts—a "Holdback Account" and a "General Receipts Subaccount," with U.S. Bank as custodian of both. *See* Collateral Agreement § 8.1 (Orr Aff., Ex. B). The casinos were instructed to remit every day to the General Receipts Subaccount all casino revenues they owed the City, where the revenues would sit until the conditions for releasing them to the City had been met.

The swaps contracts required the Service Corporations to make fixed payments to the swap counterparties on a quarterly basis. The Collateral Agreement, however, provided that the City would fund those quarterly payments directly, and would do so by depositing one-third of the Service Corporations' quarterly payment into the Holdback Account each month.[5] Once the City put this money into the Holdback Account, U.S. Bank would (a) release to the City the casino revenues that had already accumulated in the General Receipts Subaccount and (b) for the

---

[3] See Exhibit B to the Affidavit of Kevyn D. Orr, Emergency Manager for the City of Detroit ("Orr Aff."), filed concurrently herewith. The Orr Affidavit originally was filed with the Circuit Court, but for the convenience of the Court the City has resubmitted it with its present papers.

[4] A schematic of this lockbox arrangement is attached as Exhibit B to the City of Detroit's State Court Motion for a TRO (DiPompeo Decl., Ex. 2).

[5] At the end of each quarter, U.S. Bank would transfer funds from the Holdback Account to the swap counterparties to satisfy the Service Corporations' obligations under the swaps.

rest of the month continue to remit casino revenues to the City as they were deposited every day. If, however, there were an event of default or a termination event under the swaps transactions, the Collateral Agreement gave the swap counterparties—and only the swap counterparties—the right to serve a notice requiring U.S. Bank to hold—or "trap"—in the General Receipts Subaccount the monies that had accumulated there and not disburse them to the City.

Syncora was not a party to the Collateral Agreement, did not sign it, and has no general rights under it.  Instead, Syncora's rights under the document are limited to those one would expect of a third-party insurer and potential subrogee, namely, that the City and the swap counterparties could not amend the Collateral Agreement without Syncora's consent, and even then only when the amendment would affect Syncora's interests.  Collateral Agreement § 14.5 (Orr. Aff., Ex. B).  Moreover, the Collateral Agreement did not purport to affect in any way the structure of, or rights under, the COPs transaction.  As before, the two transactions were separate, distinct and unentangled.

### C.  Negotiations Between the City and the Swap Counterparties

On March 14, 2013, Kevyn D. Orr was appointed Emergency Financial Manager for the City of Detroit pursuant to Public Act 72 of 1990, *replaced and repealed by* Public Act 436 of 2012, MCL 141.1541 *et seq*.  Under the swaps contracts, Orr's appointment arguably was an Event of Default and possibly gave the swap counterparties the right to terminate the swaps, demand a termination payment, and direct U.S. Bank to trap the Casino Revenues in the General Receipts Subaccount.  However, despite the Emergency Manager's appointment and its difficult financial situation, the City never defaulted on its monthly payments into the Holdback Account and never failed to make its required swaps payments.  As a result, since March 2013, the swap counterparties have not declared an event of default under the swap contracts, have not sought to

terminate the swap contracts, have not sought to trap the cash in the General Receipts

Subaccount, and have not sought to make any claims for payment from the swap insurers.

Instead the swap counterparties have pursued a negotiated solution with the City.

These negotiations were productive and by June 17 the parties had agreed in principle to

a settlement under which the swap counterparties would agree not to seek to have U.S. Bank trap

the Casino Revenues in return for the City's promise to continue making swaps payments. In

addition, the City would be given an option to buy out its swaps obligations at a discount. This

buyout would be a major step forward in the City's restructuring effort, since the swap

counterparties are among the City's largest secured creditors.  More fundamentally, the

settlement would give the City continued access to the Casino Revenues.

### D.  Syncora's Efforts to Trap Casino Revenues

As described before, the COPs and the swaps were two different and distinct transactions.

They had separate documentation and dealt with different things.  Because of the 2009 Collateral

Agreement, the City's obligations under the swaps were collateralized; by contrast, its

obligations under the COPs were unsecured.

On June 14, the City failed to make a payment of approximately $40 million due to the

Service Corporations for payment to holders of the COPs.  This meant that Syncora became

liable for a portion of this amount and thus became subrogated to that extent to the Service

Corporations' rights against the City.  However, the City did ***not*** default on its swaps payments,

and instead continued to make timely payments to the Holdback Account as required by the

Collateral Agreement.  As a result, there has been no payment default under the swaps, Syncora

has incurred no payment obligations as insurer of the swaps, and Syncora is not subrogated to the

rights of the swap counterparties.

Nonetheless, on June 17, Syncora sent a letter to U.S. Bank, notifying the bank that Syncora believed there was an event of default under the swaps and demanding that U.S. Bank therefore trap the monies in the General Receipts Subaccount. *See* Orr Aff., Ex. D. U.S. Bank's counsel responded that the bank would have released Casino Revenues but for Syncora's letter and inquiring as to the basis for Syncora's "letter of instruction" to trap Casino Revenues rather than release them to the City. *Id.*, Ex. E. U.S. Bank also informed Syncora that release of the funds in the General Receipts Subaccount would have been "the normal course of events" and asked for Syncora's explanation why U.S. Bank should "deviate from the ordinary course of business." *Id.* Counsel for Syncora replied with another letter to U.S. Bank on June 24, repeating their prior demands and threatening to hold U.S. Bank responsible for any release of funds from the Subaccount. *See id.*, Ex. F.

On June 25, the Emergency Manager objected to Syncora's notice. *See id.*, Ex. G. He reemphasized the City's severe liquidity crisis and need for unimpeded access to the casino revenues in the General Receipts Subaccount. He also made clear that no payment default had occurred under the swaps and, because it was not a party to the Collateral Agreement, Syncora had no right to instruct U.S. Bank regarding the Casino Revenues.

Syncora rejected the Emergency Manager's request on June 26, continuing to insist that U.S. Bank trap the monies. *See id.*, Ex. H. Syncora asserted that its purpose was to protect its contractual rights as insurer of the swaps, due to the City's default on the ***COPs*** payment and Syncora's possible payment as a COPs insurer. The City's advisors met with Syncora on June 27 and 29, but made no progress.