IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------------------ x
                                                 :
In re                                            :    Chapter 9
                                                 :
CITY OF DETROIT, MICHIGAN,                       :    Case No. 13-53846
                                                 :
        Debtor.                                  :    Hon. Steven W. Rhodes
                                                 :
------------------------------------------------ x

## DECLARATION OF JAMES M. MOORE

1.  If called as a witness, I am competent to testify to the facts contained in this Declaration and these facts are true.

2.  I am an attorney with the law firm of Gregory, Moore, Jeakle & Brooks, PC in Detroit, Michigan ("Firm").

3.  The Firm represents the Detroit Police Officers Association ("DPOA").

4.  Detroit Police Officers Fulgenzi and Headapohl ("Defendants"), each a member of the DPOA, pursuant to Article 28 of the Collective Bargaining Agreement between the City of Detroit and the DPOA ("CBA"), have each filed, through the chain of command at the Detroit Police Department, a request for legal representation and indemnification in the pending United States District Court case

filed against them by Mr. Thomas Gerald Moore, case no. 2:13-cv-10010-SFC-LJM ("Lawsuit").[1]

5. It is my understanding that the Detroit Police Department has recommended that the request be denied.

6. The request will be submitted to the Detroit City Council. If the Detroit City Council denies the request, the DPOA will appeal the decision to binding arbitration in accordance with Section 28 of the CBA.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 10, 2013.

*James M. Moore (signature)*
James M. Moore

---

[1] A copy of Article 28 of the CBA is attached to this Declaration as Attachment 1.

evaluations or similar data b Joni ng in the Personnel File or Medical File shall be hidden from a member's inspection

D. A member shall have the right to include in his personnel record and in any other file kept by the Department, a written refutation of any material he considers to be detrimental and to request its removal.

E. Members may inspect their personnel file upon retirement and nothing shall be inserted in such files after date of retirement.

F. The Department need not comply with the above provisions for inspection in those areas where there is a current investigation of the officer. The officer must be told, however, that he is being investigated and appraised of the subject matter of the investigation.

G. Interpretation of the language in this Article 'shall be consistent with section 9 and 10 of Act No, 397 of P.A. 1978.

## 27. POLICE RESERVES

In continuing its policy on police reserves, the City will in no event use police reserves to perform the essential core duties of bargaining unit members or to circumvent the holiday overtime and/or any other provisions of this Agreement. Should a dispute over the deployment of reserves arise, the burden of proceeding and the burden of proof in any grievance/arbitration matter shall be on the Employer to establish by probative, objective evidence, that its use of reserves did not circumvent any provision of the collective bargaining agreement, and, but for the deployment of reserves, bargaining unit members would not have been used to participate in the particular event, duty, function, activity, etc.

Reserves cannot be assigned to ride with employees unless the employee consents. Reserves shall not ride with employees assigned to one person cars except in such situations that arise under Article 6. E. 4. f. of this Agreement.

## 28. LEGAL REPRESENTATION AND INDEMNIFICATION

The City will continue to defend and indemnify employees in accordance with Section 13-11-3 of the 1984 Municipal Code and all practices and procedures related thereto, in effect July 1, 1977, except that such defense and indemnification is mandatory upon a finding that the claim, demand or suit against the employee arises out of or involves the performance in good faith of the official duties of the employee. A contrary determination by the City Council is not final and binding as provided by the Code but is subject to review by an arbitration panel under Article 8 of this Agreement. Pending a final determination of whether Or not the employee is entitled to defense and indemnification by the City, the City shall promptly undertake such defense on behalf o f such employee.

In instances in which a recommendation against representation and indemnification is made to City Council, the Representation Packet shall not be transmitted when the written recommendation is

forwarded. In such cases, within twenty-one (21) days a conference between Law Department Counsel, counsel for the officer and the Association shall be scheduled at the Law Department. In addition to the parties' review of the Law Department's file in the case, the Law Department shall identify all the materials it intends to include in its Representation Packet to the City Council. After the review, counsel for the officer and/or a representative of the Association may request that additional materials from the Law Department's file be included in the Representation Packet. When submitted to City Council, a copy of the Representation Packet shall be served simultaneously on counsel for the officer and the Association. In the event that the Law Department fails or refuses to submit materials requested for inclusion by the officer and the Association, the Association shall not be precluded from arguing in the grievance-arbitration procedure that the absence of the requested materials constituted a procedural irregularity warranting reversal of the City Council's denial of representation and the umpire shall decide whether or not the absence of such materials actually did constitute a procedural irregularity warranting reversal or remand to the City Council for reconsideration in the circumstances of the particular ease. In the absence of such request, that argument shall be precluded in the arbitration.

Grievances concerning disputes under this Article shall not be heard at the lower steps of the grievance procedure and shall proceed to a hearing before an umpire within thirty (30) days of the grievance. In view of the obligation of the City to continue to provide legal representation during the pendency of the arbitration, the parties agree to undertake all reasonable measures to expedite the process. No written post-hearing briefs will be submitted without the concurrence of each party. The umpire shall issue an award within thirty (30) days from the date the record is closed. If necessary to comply with the deadline, an award may be issued with the opinion of the umpire to follow. To permit the time lines established in this paragraph to be effectuated, in the event that an umpire has not provided an award by that stated deadline, the umpire's next regular arbitration date(s) shall be canceled and assigned to another umpire for the purpose of affording additional time to complete the assignment. The number of arbitration dates shall not be diminished because of the operation of this provision.

Where a grievance is filed protesting the City Council's denial of representation and indemnification, the umpire may also be asked to detetinine if an officer's request for representation and indemnification was made in bad faith because the officer knew or should have known there was no reasonable basis for the request. In the event the City elects to present the issue of a request for representation and indemnification made in bad faith, it shall notify the Association at the time the case is scheduled for arbitration. Failure to notify the Association shall result in the waiver of this issue. Where the City establishes that an officer's request was made in bad faith because the officer knew or should have known there was no reasonable basis for the request, the officer will be subject to disciplinary action by a Trial Board with the penalty not to exceed a suspension of twenty (20) working days without pay. When disciplinary action is taken against an officer, in the event the disciplinary action is appealed to arbitration, the case shall not be heard by the umpire who heard the representation and indemnification case. This second arbitration shall not be de novo and the umpire shall not have authority to reverse the original arbitrator's finding of bad faith but rather shall be limited to considering whether the penalty was excessive and, if it is found to be too severe under the circumstances, to reducing the penalty to a suspension of lesser length.

Effective July 2004 and each fiscal year thereafter, the City shall either defend or reimburse the DPOA and/or member for all legal expenses and fees incurred by the DPOA or member if the

member is criminally charged and/or prosecuted for conduct that arises out of/or involved with the good faith performance of the official duties of the employee and the member is either exonerated or the criminal charges are dismissed. The City's obligation to defend or reimburse shall be capped at an amount of one hundred thousand dollars ($100,000) each fiscal year. The DPOA shall upon request provide documentation supporting a claim for reimbursement.

## 29. LONGEVITY PAY

A. Employees may qualify for the first step of longevity pay, provided they have served as City employees for an accumulated period of five (5) years.

B. Employees may qualify for the second step of longevity pay, inclusive of the first step provided they have served as City employees for an accumulated period of eleven (11) years.

C. Employees may qualify for the third step of longevity pay, inclusive of the first step and second steps, provided they have served as City employees for an accumulated period of sixteen (16) years.

D. Employees may qualify for the fourth step of longevity pay, inclusive of the first, second and third steps, provided they have served as City employees for an accumulated period of twenty-one (21) years.

E. Effective July 1, 1999, the first step of longevity increment shall be one percent (1%) of the employee's base salary. The second step of longevity increment, inclusive of the first step, shall be two percent (2%) of the employee's base salary. The third step of longevity increment, inclusive of the first and second steps, shall be three percent (3%) of the employee's base salary. The fourth step of longevity increment, inclusive of the first, second and third steps, shall be four percent (4%) of the employee's base salary.

F. Employees who have qualified for longevity pay and have accumulated at least 216 days of paid time exclusive of overtime or premium time during the year immediately preceding any December 1st date or other day of payment will qualify for a full longevity payment provided they are on the payroll on the December 1st date or any other date of qualification. Except for employees first qualifying for increments the payment will be made in a lump sum annually on the first pay date after December 1st.

No employee will be denied a full longevity payment on December 1st because of the temporary unpaid absence of thirty (30) continuous days or less extending through the December 1st date in question.

G. Employees who first qualify for longevity pay increments in any month after any December 1st date shall be paid such increment on a pro-rata basis upon attaining such qualification in the amount of a full increment less one-twelfth (1/12) thereof for each calendar month or fraction thereof from the previous December 1st date to date of such qualification.