# EXHIBIT B

*In Re: City of Detroit, Debtor*

*Governor Richard D. Snyder*
*October 9, 2013*

*Moretti Group*
*471 W. South Street*
*Suite 41B*
*Kalamazoo, MI 49007*
*800-536-0804*



Original File 100913RS.TXT
**Min-U-Script® with Word Index**

```
09:58:31  1          It doesn't say I agree with that or disagree with
09:58:34  2          that.  It simply says I authorized it to go forward
09:58:37  3          where a plan would be presented to a judge that
09:58:40  4          could be the result of further negotiations,
09:58:42  5          mediations, all kinds of work that ultimately a
09:58:44  6          judge would decide.
09:58:45  7     Q.   Okay.  I'm not addressing your July 18th letter.
09:58:48  8     A.   Yeah.
09:58:48  9     Q.   I'm just pegging the question --
09:58:51 10     A.   Okay.
09:58:51 11     Q.   -- by time frame as of July 18th.
09:58:54 12     A.   Okay.
09:58:54 13     Q.   So as of July 18th, did you share Mr. Orr's view
09:58:58 14          that there had to be significant cuts in pension
09:59:02 15          liabilities?
09:59:04 16     A.   Based on the current situations with negotiations,
09:59:11 17          that continued to be the position that would be on
09:59:13 18          the table going into bankruptcy.
09:59:17 19     Q.   Again, I'm not sure that was responsive.
09:59:20 20     A.   Uh-huh.
09:59:21 21     Q.   As of July 18th, 2013, did you share Mr. Orr's view
09:59:29 22          that whether through negotiation or other means that
09:59:38 23          there as an end result had to be significant cuts in
09:59:42 24          accrued pension liabilities?
09:59:44 25     A.   I wouldn't use the word had to be but likely could
```

| | | |
|---|---|---|
| 09:59:47 1 | | be. |
| 09:59:47 2 | Q. | Okay. Well, Mr. Orr used the word "there must be". |
| 09:59:50 3 | A. | Uh-huh. |
| 09:59:51 4 | Q. | Did you share that view that there had to be? |
| 09:59:53 5 | A. | Not necessarily. |
| 09:59:55 6 | Q. | Okay. |
| 09:59:55 7 | A. | Just as I said. |
| 09:59:56 8 | Q. | Okay. So did you think about this issue as of -- or |
| 10:00:01 9 | | as of the July 18th, 2013 time frame, had you given |
| 10:00:04 10 | | thought to whether or not there had to be cuts to |
| 10:00:10 11 | | accrued pension benefits? |
| 10:00:12 12 | A. | I gave thought to the issue because I have concern |
| 10:00:14 13 | | for the retirees, and that was why one of the |
| 10:00:16 14 | | important questions in my view was to have a retiree |
| 10:00:20 15 | | representative in the bankruptcy. |
| 10:00:22 16 | Q. | And what was your -- since you said you gave thought |
| 10:00:27 17 | | to it, can you articulate what your position was as |
| 10:00:29 18 | | to whether or not there had to be cuts in accrued |
| 10:00:33 19 | | pension liabilities? And I'm focusing on your views |
| 10:00:36 20 | | on the matter as of July 18th, 2013. |
| 10:00:40 21 | A. | My view going back prior to that is is I had hoped |
| 10:00:47 22 | | that there would be negotiations to resolve this |
| 10:00:50 23 | | short of bankruptcy because bankruptcy was a last |
| 10:00:54 24 | | resort; that I hoped that people could come to the |
| 10:00:57 25 | | table and come up with a mutual understanding and |

| | | |
|---|---|---|
| 10:01:00 1 | | negotiation that would be satisfactory to the |
| 10:01:01 2 | | parties involved. |
| 10:01:02 3 | | That didn't happen in terms of that regard |
| 10:01:05 4 | | but I still had hope to say that as you go through |
| 10:01:09 5 | | the bankruptcy process I viewed it as likelihood |
| 10:01:11 6 | | that there was less flexibility under the bankruptcy |
| 10:01:14 7 | | process just because of the nature of federal |
| 10:01:17 8 | | bankruptcy law than there probably was before. |
| 10:01:19 9 | Q. | Was it your view that as of July 18th in the |
| 10:01:28 10 | | bankruptcy one way or another accrued pension |
| 10:01:32 11 | | liabilities would have to be reduced? |
| 10:01:34 12 | A. | Based on the facts going into it, it was one of |
| 10:01:37 13 | | those questions, as you said, there was a likelihood |
| 10:01:40 14 | | of that happening. |
| 10:01:41 15 | Q. | That's not my question. |
| 10:01:42 16 | A. | Yes. Yeah, I believe there's a likelihood there |
| 10:01:46 17 | | could be reductions in unfunded pension liabilities. |
| 10:01:50 18 | Q. | Okay. I'm not asking -- |
| 10:01:51 19 | A. | Yeah. |
| 10:01:52 20 | Q. | Governor, I'm not asking you to predict the |
| 10:01:55 21 | | likelihood of what might have happened. |
| 10:01:56 22 | A. | Okay. |
| 10:01:56 23 | Q. | I'm asking you whether you believed that in |
| 10:02:00 24 | | bankruptcy there would have had to be one way or |
| 10:02:03 25 | | another reductions in Detroit's accrued pension |

| | | |
|---|---|---|
| 10:18:27 1 | | investigation of any facts or legal conclusions that |
| 10:18:30 2 | | were in the July 16th letter before you made your |
| 10:18:34 3 | | decision to sign the July 18th letter? |
| 10:18:39 4 | A. | Well, I mentioned the lawsuit issue, but besides |
| 10:18:43 5 | | that it was more looking at the consistency of what |
| 10:18:47 6 | | was in this letter with prior reports from Kevyn Orr |
| 10:18:50 7 | | and prior reports from the review team. Review |
| 10:18:54 8 | | teams I should say. |
| 10:18:54 9 | Q. | Let me refer you to page four of the July 18th |
| 10:18:59 10 | | letter. At the top there's a paragraph that bears |
| 10:19:05 11 | | the heading contingencies. |
| 10:19:07 12 | A. | Uh-huh. |
| 10:19:08 13 | Q. | And I'm going to read the first sentence. It says |
| 10:19:12 14 | | "2002 PA 436 provides that my approval of the |
| 10:19:18 15 | | recommendation to commence a Chapter 9 proceeding |
| 10:19:20 16 | | may place contingencies on such a filing." That's |
| 10:19:24 17 | | the end of the sentence. Then there's a legal |
| 10:19:27 18 | | citation, and then the next sentence says "I am |
| 10:19:30 19 | | choosing not to impose any such contingencies |
| 10:19:32 20 | | today." |
| 10:19:34 21 | | Did you consider at any point after you |
| 10:19:39 22 | | received the July 16th letter placing any |
| 10:19:42 23 | | contingencies on the City's bankruptcy filing? |
| 10:19:46 24 | A. | My legal counsel made me aware that contingencies |
| 10:19:50 25 | | were permitted under the law, but I chose not to |

```
10:19:55   1              place any.
10:19:55   2      Q.      Okay.
10:19:57   3      A.      Yeah.
10:19:57   4      Q.      It's clear from your letter that you chose not to
10:20:00   5              place any.
10:20:00   6                      My question is before you made that
10:20:02   7              decision not to place any, was there any period when
10:20:05   8              you considered placing any -- any contingencies on
10:20:08   9              the filing?
10:20:08  10      A.      I'm not trying to be difficult, but the matter was
10:20:11  11              brought to my attention and I dismissed it without
10:20:14  12              major discussion with my legal counsel because the
10:20:16  13              way I viewed it was placing contingencies could only
10:20:21  14              cause -- most likely cause more delay or confusion
10:20:24  15              in the bankruptcy process; that I have confidence in
10:20:27  16              the bankruptcy process itself in terms of being a
10:20:30  17              legal process, an appropriately legal process; and
10:20:33  18              that's why, in fact, I wanted that sentence added.
10:20:36  19      Q.      What sentence are you referring to?
10:20:38  20      A.      The sentence about federal law already contains the
10:20:41  21              most important contingency, a requirement that the
10:20:44  22              plan be legally executable.
10:20:46  23      Q.      Okay.  And I'm going to ask you about that in a
10:20:47  24              minute, but I just want to focus first on your
10:20:51  25              decision not to place any contingencies.
```

| | | |
|---|---|---|
| 10:20:53 1 | A. | Well, that's why I didn't.  I simply said I thought |
| 10:20:58 2 | | that was the one contingency that was appropriate, |
| 10:21:01 3 | | that it be in line with being legal. |
| 10:21:03 4 | Q. | Okay.  You were aware as of July 18th that some |
| 10:21:09 5 | | people, some entities, argued that the Michigan |
| 10:21:15 6 | | Constitution prohibited the reduction of accrued |
| 10:21:19 7 | | pension benefits? |
| 10:21:22 8 | | Were you aware of that as of July 18th? |
| 10:21:24 9 | A. | Yes. |
| 10:21:24 10 | Q. | Did you consider making the Detroit City bankruptcy |
| 10:21:31 11 | | filing contingent on the City not seeking to cut |
| 10:21:38 12 | | accrued pension liabilities?  Did you consider that? |
| 10:21:41 13 | A. | I considered it by adding this sentence, which |
| 10:21:47 14 | | basically says it's a matter -- it's a legal |
| 10:21:49 15 | | question to say Michigan Constitution versus federal |
| 10:21:53 16 | | law versus other Michigan statutes, and I was going |
| 10:21:57 17 | | to leave that, that's a legal question that I |
| 10:21:59 18 | | thought best left to the courts. |
| 10:22:01 19 | Q. | So is it your testimony that you did consider |
| 10:22:04 20 | | putting that contingency on but you decided not to |
| 10:22:07 21 | | because of the reason you just said? |
| 10:22:09 22 | A. | Well, again, I viewed this as an overriding |
| 10:22:10 23 | | statement that I thought whatever came out of this |
| 10:22:12 24 | | process through the bankruptcy needed to be a legal |
| 10:22:14 25 | | answer, because I do follow the law. |

| | | | |
|---|---|---|---|
| 10:22:17 | 1 | Q. | Okay. I just want to be clear -- |
| 10:22:19 | 2 | A. | Yeah. |
| 10:22:19 | 3 | Q. | -- I'm understanding your testimony. |

10:22:21  4      You did consider at some point before you
10:22:24  5   signed -- is it true that at some point before you
10:22:27  6   signed the July 18th letter that you considered
10:22:30  7   making the bankruptcy filing contingent on the City
10:22:34  8   not seeking to cut accrued pension benefits?
10:22:39  9   A.   I would say -- I wouldn't describe it that way.  I
10:22:42 10       would describe it not just on pensions or anything
10:22:44 11       else, just the totality of the situation to say that
10:22:49 12       there are many legal questions that are being
10:22:51 13       litigated through this bankruptcy process, as you
10:22:54 14       can see.
10:22:55 15            In terms of objections and my overriding
10:22:57 16       concern is that anything that should come out of
10:22:59 17       this needed to be legal.  So that's where I did
10:23:02 18       basically -- rather than specifically even
10:23:04 19       considering contingencies on one area or another,
10:23:08 20       because I viewed that as a troublesome area to say
10:23:10 21       should there -- if you put one contingency could you
10:23:13 22       end up with 15 contingencies versus saying the
10:23:16 23       overriding concern is that this plan be legal, and
10:23:18 24       that's already provided for under federal bankruptcy
10:23:21 25       law.

| | | |
|---|---|---|
| 10:23:21 1 | Q. | Was it your understanding that you could have placed |
| 10:23:25 2 | | just one contingency on the filing which is that the |
| 10:23:30 3 | | City could not seek to cut accrued pension benefits? |
| 10:23:35 4 | A. | Again, my concern is -- |
| 10:23:37 5 | Q. | I'm not asking your concern. |
| 10:23:39 6 | A. | Yes. |
| 10:23:39 7 | Q. | Was it your understanding that you, if you had |
| 10:23:42 8 | | chosen to, could have placed just one contingency? |
| 10:23:44 9 | A. | Yes. |
| 10:23:45 10 | Q. | Okay. Let me now refer you to the last sentence of |
| 10:23:48 11 | | the paragraph that says "Federal law already |
| 10:23:50 12 | | contains the most important contingency, a |
| 10:23:52 13 | | requirement that the plan be legally executable, and |
| 10:23:56 14 | | then it cites 11 USC 943(b)(4)." |
| 10:24:06 15 | | What was your understanding, if you had one |
| 10:24:10 16 | | as of July 18th when you signed this letter, of what |
| 10:24:13 17 | | 11 USC 943(b)(4) was? |
| 10:24:17 18 | A. | The statement was my primary concern. I had very |
| 10:24:21 19 | | good legal counsel. My legal advisors work on the |
| 10:24:25 20 | | citation. They thought it would be helpful. |
| 10:24:27 21 | Q. | Okay. So whose -- I should have asked you earlier. |
| 10:24:31 22 | | Who prepared this letter that's the |
| 10:24:33 23 | | July 18th letter? |
| 10:24:34 24 | A. | I did in conjunction with my legal counsel. |
| 10:24:37 25 | Q. | Okay. Was it just you and legal counsel that |