**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

```
-------------------------------------------------x
                                        :
In re                                   :      Chapter 9
                                        :
CITY OF DETROIT, MICHIGAN,              :      Case No. 13-53846
                                        :
                     Debtor.            :      Hon. Steven W. Rhodes
                                        :
                                        :
-------------------------------------------------x
```

**DEBTOR'S REPLY IN SUPPORT OF MOTION OF DEBTOR,**
**PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE,**
**FOR ENTRY OF AN ORDER EXTENDING THE CHAPTER 9 STAY**
**TO THE 36TH DISTRICT COURT AND CERTAIN RELATED PARTIES**

The City of Detroit (the "City") hereby files this reply in support of the

Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of

an Order Extending the Chapter 9 Stay to the 36th District Court and Certain

Related Parties (Docket No. 1027) (the "Stay Extension Motion")[1] and respectfully

represents as follows:

**Reply**

The purpose of the Stay Extension Motion is to extend the automatic stay

_____

[1]    Capitalized terms used but not defined herein shall have the meanings given
       to them in the Stay Extension Motion.

provisions of sections 362 and 922 of the Bankruptcy Code (the "Chapter 9 Stay")
to allow the City to continue funding the current day-to-day operations of the 36th
District Court while relieving the City of the burden of satisfying judgments
against the court that constitute prepetition claims against the City during the
pendency of this chapter 9 case.

Local 3308 and Local 917 of the American Federation of State, County and
Municipal Employees (together, "AFSCME") acknowledges repeatedly in its
objection[2] that the City is the sole, statutorily prescribed source of the relevant
funding for the 36th District Court. See, e.g., AFSCME Brief, at 2 ("The State has
passed its funding obligation onto [sic] the City."); id. at § IV ("[T]he City claims
that it would have to pay any of the liabilities of [the] 36th District Court . . .
Pursuant to the funding scheme the Michigan Legislature has set out statutorily,
that is true.").  Nevertheless, by characterizing the relationship between City and
the 36th District Court as no different than that between co-defendants, sureties or
similar entities, AFSCME argues that the City should refuse to provide funding to
the 36th District Court in the hope that the State of Michigan will step in and

---

[2]    AFSCME filed Local 3308 and Local 917 of the American Federation of
State, County and Municipal Employees' Objection to Motion of Debtor for
Entry of an Order Extending the Chapter 9 Stay to the 36th District Court
and Certain Related Parties (Docket No. 1125) (the "AFSCME Objection")
and a brief in support (Docket No. 1126) (the "AFSCME Brief").

recognize a constitutional obligation to fund directly all of the obligations of the 36th District Court where the City is unable to do so. Id.

AFSCME oversimplifies the relationship between the City and the 36th District Court. Moreover, AFSCME fails to acknowledge that the City's essential purpose in moving to extend the Chapter 9 Stay is to protect the limited resources of the City for the benefit of itself and its creditors — not the 36th District Court — while allowing it to fund the services provided by the 36th District Court for the welfare of its residents without such funding becoming subject to the claims of judgment creditors that arose prior to the City's Petition Date. As AFSCME acknowledges, the 36th District Court is not a department of the City or encompassed within the City's governance. AFSCME Brief, at § 1. Had it been otherwise, the Stay Extension Motion would have been unnecessary. But, as set forth in the Stay Extension Motion and not disputed by AFSCME, the structure and finances of the 36th District Court, while separate, are so inextricably intertwined with the City that the 36th District Court is entirely dependent on the City to provide for its continued operation under applicable Michigan law.

The unpaid accrued obligations of the 36th District Court as of the City's Petition Date constitute unsecured claims against the City because the City is the 36th District Court's sole relevant source of operational funding. The City funds the 36th District Court's operations in part through direct payments to vendors that

provide goods and services to the 36th District Court. With respect to certain obligations of the 36th District Court, however, the City may provide funding to the 36th District Court that it Court uses to satisfy its obligations. In addition, as set forth in the Motion, the 36th District Court receives certain revenues from, among other things, fines, fees and grants that the 36th District Court transfers to the City.

The City is funding the post July-18th operations of the 36th District Court in the ordinary course. If judgment creditors holding monetary claims against the 36th District Court arising prior to the City's Petition Date succeed in accessing and depleting the current funding provided by the City to the 36th District Court, however, the City will be *forced* either to (a) satisfy some or all of the 36th District Court's prepetition claim against the City to allow the 36th District Court to continue operating and providing services to City residents or (b) allow the 36th District Court to attempt to operate with insufficient funding.[3]

---

[3] The fact that the City's obligation to fund the operations of the 36th District Court arises by statute does not elevate the status of the 36th District Court's claim against the City relative to other unsecured prepetition claims or otherwise serve as an obstacle to the impairment of the 36th District Court's claim under a chapter 9 plan. To the extent that a state statute or municipal ordinance conflicts with the operation or purpose of chapter 9 and would proscribe or impair the City's right to impair claims, the Bankruptcy Code would preempt such a law. See Cnty. of Orange v. Merrill Lynch & Co., Inc.

The claims of the 36th District Court against the City should be treated and dealt with under the City's chapter 9 plan. The City cannot be forced, by the actions of AFSCME and similarly situated litigants, to satisfy these prepetition unsecured claims as the price of allowing the 36th District Court to remain operational for the benefit of its citizenry. Accordingly, because of the special funding relationship between the City and the 36th District Court — a relationship that could arise only in the public arena in Michigan — unusual circumstances exist to justify an extension of the Chapter 9 Stay to cover claims against the 36th District Court.

### *The 36th District Court Is Inextricably Intertwined with the City*

AFSCME relies principally on the Sixth Circuit's decision in <u>Lynch v. Johns-Manville Sales Corp.</u>, 710 F.2d 1194 (6th Cir. 1983), for its argument that the automatic stay should not be used to advance the interests of third parties and may not be "invoked by entities such as sureties, guarantors, co-obligors or others

---

(continued…)

> <u>(In re Cnty. of Orange)</u>, 191 B.R. 1005, 1016-17 (Bankr. C.D. Cal. 1996) (stating that to the extent a statute "conflicts with federal bankruptcy law," by "creat[ing] a special class of creditors . . . in conflict with the priority scheme in the [Bankruptcy] Code," it is "preempted"). "Chapter 9 does not permit individual states to override the priority scheme that is inherent in the Code, [because] [a] uniform bankruptcy code necessitates that federal law control creditor priorities." <u>Id.</u> at 1021.

with a similar legal or factual nexus to the Chapter 11 debtor." AFSCME

Brief, at 5 (quoting Johns-Manville Sales, 710 F.2d at 1196).

In Johns-Manville Sales, two non-debtor defendants in an action pending in

district court moved the court to stay the action because two other defendants had

commenced chapter 11 cases and, thus, were receiving the protections of the

automatic stay. Id. at 1196. The court refused to recognize any grounds for

extension of the automatic stay and ruled that the non-debtor co-defendants were

not entitled to invoke the automatic stay because it was not intended for their

benefit. Id. at 1196-97.

Nine years after Johns-Manville Sales, the Sixth Circuit revisited the issue of

extending the automatic stay in American Imaging Servs., Inc. v. Eagle-Picher

Indus., Inc., 963 F.2d 855 (6th Cir. 1992). In Eagle-Picher, the Sixth Circuit held

that it was appropriate to extend the automatic stay to two executives of a debtor

corporation that were co-defendants with the corporation in a lawsuit. Id. at 863.

The court found that "unusual circumstances" existed justifying extending the stay

because, if the lawsuit had been allowed to continue against the executives: (a) the

debtor's management would have been diverted from the debtor's reorganization

effort; (b) no insurance coverage was applicable, requiring to the debtor to pay the

costs of defense of the executives causing immediate harm to the debtor and its

creditors; and (c) the debtor would be forced to participate actively in the litigation

to protect its interests and avoid potential risks. Id. at 861. Based on these considerations, the court concluded that the interests of the debtor were inextricably intertwined with the interests of the executives and affirmed the lower court's entry of a preliminary injunction staying the lawsuit as to the executives. Id. at 863.

The Eagle-Picher court found Johns-Manville Sales to be "clearly distinguishable" because, in Johns-Manville Sales, the only connection between the debtors and the non-debtors seeking the protections of the automatic stay was that all parties were co-defendants in the same series of lawsuits. Id. at 862. Moreover, in Eagle-Picher, unlike in Johns-Manville, the purpose of the preliminary injunction request was to protect the debtor's numerous creditors, not to protect the non-debtor parties. Id.

The remaining authority cited by AFSCME on this point is clearly distinguishable on the same grounds, i.e., that the request to extend the automatic stay is asserted for the benefit of the non-debtor party, generally by the non-debtor party and in the nonbankruptcy proceeding. See Patton v. Bearden, 8 F.3d 343 (6th Cir. 1993) (request by and for the benefit of non-debtor general partners of

debtor with respect to litigation against general partners);[4] Chicago Title Ins. Co. v. Lerner, 435 B.R. 732, 737 (S.D. Fla. 2010) (request by and for the benefit of nondebtor former managers of debtor in district court action by third party title insurer); Metropolitan Life Ins. Co. v. Alside Supply Center of Knoxville (In re Clemmer), 178 B.R. 160, 167 (Bankr. E.D. Tenn. 1995) (request by and for the benefit of insurer arising from insurer's failure to comply with garnishment order in favor of third party); see also In re Sunbeam Securities Litig., 261 B.R. 534, 537 (S.D. Fla. 2001) (ruling that an extension of the automatic stay to a debtor's former officers and directors was inappropriate "first and foremost" because the debtor itself took no position on the issue and continuing actions against the officers and directors would not impede the debtor's reorganization or otherwise prejudice the debtor).[5]

---

[4]    AFSCME inverts the Sixth Circuit's holding in Patton to support its argument. AFSCME argues that, in Patton, the Sixth Circuit held that "the ability of a non-debtor third party to compel payment from the debtor is insufficient to extend the stay." AFSCME Brief, at 7. In Patton, the Sixth Circuit, in fact, held that there was insufficient evidence in that case that the interest of protecting the right of the debtor partnership to compel contributions *from* its non-debtor general partners warranted extending the partnership's stay to litigation against the general partners. Id. at 349.

[5]    AFSCME cites to only one case — a chapter 13 case — where the request to extend the automatic stay was even made by the debtor. See In re Saleh, 427 B.R. 415, 425 (Bankr. S.D. Ohio 2010) (denying request to extend automatic

Despite the obvious factual differences between the two cases, at bottom, the relationship between the City and the 36th District Court most closely resembles that between the executives and the debtor corporation in <u>Eagle-Picher</u>. AFSCME does not dispute that the 36th District Court is located within the City and that, by statute, the 36th District Court is entirely dependent on the City as its sole source of operational funding. As in <u>Eagle-Picher</u>, therefore, absent an extension of the Chapter 9 Stay, the City is faced with being forced either to pay all or a portion of the prepetition claims of the 36th District Court against the City, if the 36th District Court's judgment creditors skim the funding that the City provides for operations to pay their judgments, or to allow the 36th District Court to operate suboptimally.

The purpose of the requested extension of the Chapter 9 Stay is, therefore, to benefit the City and its creditors and residents by allowing it to provide current funding to the 36th District Court without the City's being forced to pay prepetition claims stemming from actual and potential lawsuits asserted against the 36th District Court. The fortunes of the City and the 36th District Court are thus

---

(continued…)

stay to debtor individual's wholly owned S corporation because the chapter 13 automatic stay does not allow for such requests).

ATI-2580862v5

inextricably intertwined, and unusual circumstances warrant extending the Chapter 9 Stay.

## *The Stay Extension Motion is Procedurally Proper*

By the Stay Extension Motion, the City seeks a broad extension of the Chapter 9 Stay to all claims against the 36th District Court that arose prior to the City's Petition Date. Stay Extension Motion, at ¶ 14. Such claims include, without limitation, all known claims, demands, arbitrations, causes of action, lawsuits and other legal proceedings (including administrative proceedings) (any such proceeding, a "Legal Proceeding") that were pending against the 36th District Court as of the City's Petition Date, as well as all Legal Proceedings that may be filed against the 36th District Court asserting liabilities that arose prior to the City's Petition Date.[6] Id. The City provided notice of the Stay Extension Motion to, among other entities, counsel to parties actually known to the City to be involved in Legal Proceedings against the 36th District Court. Id. at ¶ 19; see also Certificates of Service (Docket Nos. 1093, 1132).

---

[6] AFSCME argues that certain of the Legal Proceedings do not seek monetary relief. AFSCME Brief, at 4. In this regard, the City is willing to limit the requested relief to claims and Legal Proceedings seeking monetary relief. A revised proposed order reflecting this modification to the relief requested by the City and a blackline to the proposed order attached as an exhibit to the Stay Extension Motion are attached hereto as Exhibit A and Exhibit B, respectively.

AFSCME argues that the relief sought by the City in the Stay Extension

Motion can be obtained only by way of an adversary proceeding.  AFSCME Brief,

at § II.  This argument is incorrect and ignores the practicalities of the situation.

For example, by an order entered on July 25, 2013 (Docket No. 166) (the "Original

Stay Extension Order"), this Court, having concluded that notice was adequate in

the circumstances, granted a request by the City initiated by motion (Docket

No. 56) (the "Original Stay Extension Motion") to extend the Chapter 9 Stay to

certain parties.  It is not uncommon for courts to approve such requests.  See, e.g.,

In re Moore Freight Serv., Inc., No. 12-08921 (Bankr. M.D. Tenn. Dec. 21, 2012)

(order granting the debtors' motion to extend application of the automatic stay to

co-debtor guarantors with respect to actions by certain creditors of the debtor); In

re Two Brothers Liquor & Food, Inc., No. 11-66510 (Bankr. E.D. Mich. Jan. 23,

2012) (order granting motion to extend the automatic stay to non-debtor

co-defendants); In re Hostess Brands, Inc., No. 12-22052 (Bankr. S.D.N.Y. Feb.

23, 2012) (order granting motion seeking to extend the automatic stay to certain

employees pursuant to sections 105 and 362 of the Bankruptcy Code); In re

Shearin Family Invs., LLC, No. 08-07082, 2009 WL 3106477, at **1-2 (Bankr.

E.D.N.C. Sept. 23, 2009) (order granting debtor's motion to extend application the

automatic stay to the principal of the debtor).

Moreover, it would be impossible, as a practical matter, for the City to commence an adversary proceeding against all parties actually and potentially holding claims against the 36th District Court to obtain the requested relief — a difficulty the Court already has noted in overruling objections to the Original Stay Extension Motion:

> Now, several creditors have objected on the grounds that the debtor should have filed an adversary proceeding to obtain this relief. The Court concludes that this objection, too, should be overruled. The Court is satisfied that there was sufficient notice and opportunity to be heard, and the Court further observes that the imposition of this stay will only have the effect of requiring those parties who seek relief from it to file a motion for relief from it. And in rejecting this objection, the Court notes that there is substantial merit in the city's concern that it would be impossible for it to file an adversary proceeding naming as defendants all of the parties that might be impacted by this injunction. Indeed, it would be a procedural and administrative nightmare.

Transcript of July 24, 2013 Hearing (the "7/24 Transcript"), at 83:1-14. An excerpt of the 7/24 Transcript containing the Court's ruling on the Original Stay Extension Motion is attached hereto as Exhibit C.

Here, just as with respect to the Original Stay Extension Motion, the City has provided broad notice, including to all counsel to parties actually known to the City to be involved in Legal Proceedings against the 36th District Court. The relief requested by the City goes beyond seeking to extend the Chapter 9 Stay against a single entity or action where acting by adversary proceeding may be appropriate.

Just as with respect to the Original Stay Extension Motion, therefore, it would be impracticable, at the very least, for the City to file an adversary proceeding naming as defendants all parties that might potentially be impacted by the requested relief. Accordingly, due process is satisfied, and AFSCME's objection as to the form of the City's request for relief is unfounded.[7]

Relatedly, the City did not argue that it satisfied the four-factor test used to evaluate requests for a preliminary injunction[8] because the City is seeking to stay *all* claims seeking monetary damages against the 36th District Court, not a single

---

[7] The City also notes that, even if extensions to the automatic stay were available solely by way of an adversary proceeding — which they are not — Sixth Circuit authority establishes that objections to the form of a request do not triumph over the substance of the request, absent demonstrated prejudice to the complaining party. See, e.g., Hines v. Hines (In re Hines), 193 Fed. App'x 391, 397 (6th Cir. 2006) (rejecting argument that the lower court erred in determining dischargeability in the context of plan confirmation rather than by adversary proceeding); Tully Constr. Co. v. Cannonsburg Envtl. Assocs. Ltd. (In re Cannonsburg Envtl. Assocs. Ltd.), 72 F.3d 1260, 1264-65 (6th Cir. 1996) (affirming bankruptcy court's order even though request for relief technically "should have been filed" as an adversary proceeding).

[8] The four factors to be considered when issuing a preliminary injunction are:

> (1) the likelihood of the plaintiff's success on the merits, (2) whether plaintiff will suffer irreparable injury without the injunction, (3) the harm to others which will occur if the injunction is granted, and (4) whether the injunction would serve the public interest.

Eagle-Picher, 963 F.2d at 858.

ATI-2580862v5

action by way of a request for an injunction. Although courts may use the four-factor preliminary injunction standard to evaluate requests for extensions of the automatic stay, they also commonly focus solely on the "unusual circumstances" approach, where appropriate. See, e.g., Parry v. Mohawk Motors of Michigan, Inc., 236 F.3d 299, 314-15 (6th Cir. 2000) (evaluating request to extend automatic stay solely under "unusual circumstances" standard without considering four-factor preliminary injunction test); Cappuccilli v. Lewis, No. 10-11690, 2010 WL 4683932, at *6 (E.D. Mich. Nov. 10, 2010) (same); Saginaw Property, LLC v. Value City Dept. Stores, LLC, No. 08-13782, 2009 WL 189963, at **3-4 (E.D. Mich. Jan. 27, 2009) (same); In re Nat. Staffing Servs., LLC, 338 B.R. 35, 37-38 (Bankr. N.D. Ohio 2005) (same); Republic Techs. Int'l v. Maley (In re Republic Techs. Int'l, LLC), 275 B.R. 508, 520-21 (Bankr. N.D. Ohio 2002) (same).

Nevertheless, consideration of the relevant preliminary injunction factors demonstrates that extending the Chapter 9 Stay to the 36th District Court is appropriate. The four considerations of the preliminary injunction test are "factors to be balanced and not prerequisites that must be satisfied." Eagle-Picher, 963 F.2d at 859. The first factor, the likelihood of the plaintiff's success on the merits, is of diminished importance in the context of a request for extension of the automatic stay in bankruptcy. Id. at 860; see also Friendship Materials, Inc. v.

Michigan Brick, Inc., 679 F.2d 100, 105 (6th Cir. 1982) (stating that a court may grant a preliminary injunction even where the movant cannot show a strong or substantial probability of success on the merits). The relevant inquiry is into the probability of the City succeeding in its efforts to restructure in chapter 9 because the City's position is that the substantial unsecured claims it could be forced to pay absent the requested relief will materially impact its restructuring. See Eagle-Picher, 963 F.2d 859-60 (considering request for preliminary injunction in light of the possibility of the debtor successfully reorganizing in chapter 11). In this regard, this Court already has held that, at the very least, "serious questions going to the merits" exist in favor of the City's ability to restructure in chapter 9. 7/24 Transcript, at 80:4-7 ("As the Sixth Circuit noted in Eagle-Picher, it is enough for this Court to find that there are serious questions going to the merits, and the Court certainly so finds here."). As such, the City satisfies this factor of the preliminary injunction test.

The second consideration, whether plaintiff will suffer irreparable injury without the injunction, weighs heavily in favor of extending the Chapter 9 Stay. As previously stated, if the City does not obtain the requested relief, it likely will be faced with the prospect of either: (a) being compelled to pay the 36th District Court's prepetition claims against the City or (b) having the 36th District Court unable to operate adequately if judgment creditors attack its operating funds.

Under the third consideration, the harm to others that will occur if the injunction is granted, AFSCME and the other creditors of the 36th District Court will suffer minimal harm if the Chapter 9 Stay is extended. The City merely seeks a stay of Legal Proceedings and other claims against the 36th District Court during the pendency of the City's chapter 9 case. By the Stay Extension Motion, the City does not seek to impair the claims of creditors of the 36th District Court; it seeks only to stay them during the pendency of the City's chapter 9 case, and creditors will retain the right to move for relief from stay in appropriate circumstances. <u>See</u> 7/24 Transcript at 82:4-10 (concluding that extending the Chapter 9 Stay would not harm creditors in part because the court would preserve the right of any creditor to seek relief from the Chapter 9 Stay on an case-by-case basis).

With respect to the final consideration, whether the injunction would serve the public interest, it is clear that it would. The relief requested in the Stay Extension Motion will allow the City to prevent the payment in full of unsecured claims that arose prior to the City's Petition Date, thereby enhancing the City's likelihood of a successful restructuring. In addition, the requested extension of the Chapter 9 Stay will allow funding provided by the City to be directed toward the operations of the 36th District Court, rather than the satisfaction of the prepetition claims of the 36th District Court against the City, for the benefit of residents of the

City.  Accordingly, the relevant preliminary injunction factors weigh heavily in favor of extending the Chapter 9 Stay to the 36th District Court.

### *The City Is Not Seeking Bankruptcy Relief for the 36th District Court*

AFSCME suggests that the Chapter 9 Stay may not be extended to the 36th District Court because the court is a state entity, and the State of Michigan may not be a debtor under chapter 9 of the Bankruptcy Code.  AFSCME Brief, at § III.  The City is not aware of any basis for AFSCME's conclusion that the inability of a state to be a debtor under chapter 9 precludes the extension of the Chapter 9 Stay to the 36th District Court, and AFSCME cites to none.  See id. This Court already has extended the Chapter 9 Stay for limited purposes to several State entities, including the Governor of the State of Michigan, the State Treasurer and the Local Emergency Financial Assistance Loan Board of the State of Michigan and each such entity's staff, agents and representatives.  See Original Stay Extension Order, at ¶ 2.  The City seeks merely to extend the Chapter 9 Stay to stay claims against the 36th District Court that would be included in the 36th District Court's prepetition claim against the City for the benefit of the City and its residents and creditors, not to invoke the bankruptcy power to permanently restructure the assets and obligations of the 36th District Court.  Accordingly, this argument is misplaced.

***There Is No Basis to AFSCME's Argument that the 36th District***
***Court May Directly Access State Funds To Supplement City Funding***

AFSCME concludes by arguing that the obligation to fund Michigan's judiciary ultimately lies with the State of Michigan and, therefore, if the City determines not to satisfy all prepetition and postpetition claims against the 36th District Court, the State must step in and make up any shortfall.  AFSCME Brief, at § IV.  In support of its argument, AFSCME relies on the Michigan Supreme Court's decisions in 46th Circuit Trial Court v. Cnty. of Crawford, 719 N.W.2d 553 (Mich. 2006); Grand Traverse Cnty. v. State, 538 N.W.2d 1 (Mich. 1995); and Emps. and Judge of the Second Judicial District Court v. Hillsdale Cnty., 378 N.W.2d 744 (Mich. 1985).  Id.

Two of these cases merely support the proposition that, pursuant to the judiciary's "inherent power" to preserve its ability to carry out its constitutionally mandated responsibilities, courts may seek to compel funding units to appropriate reasonable and necessary funds to allow the courts to function serviceably.  See 46th Circuit Trial Court, 719 N.W.2d at 569-70 (declining to compel two of three funding units of the plaintiff court to appropriate funds to pay for enhanced employee pension and retiree healthcare benefits where there was no evidence that the funds were reasonable and necessary to the serviceability of the court); Hillsdale Cnty., 378 N.W.2d at 750 (declining to compel a funding unit to appropriate funds for salary increases because the increases were neither approved

by the funding unit nor "proven to be necessary to maintain a statutory function of the court or to provide for the overall administration of justice").

Nothing in the 46th District Court or Hillsdale Cnty. cases suggests that, in the event of a funding shortfall as a result of a funding unit's seeking relief under chapter 9 of the Bankruptcy Code and the attendant imposition of the Chapter 9 Stay, then an affected court may obtain direct funding from the State Treasury. In fact, the third case cited by AFSCME directly undermines this proposition. In Grand Traverse Cnty., 76 counties, 46 cities, 11 townships and one village brought consolidated lawsuits against the State of Michigan seeking to compel the State to fund certain courts, pursuant to express legislative commitments it had made. Grand Traverse Cnty., 538 N.W.2d at 2-3. The Michigan Supreme Court ruled that the relevant statutes did not create a private cause of action for the plaintiffs. Id. at 5. In response to the argument that, notwithstanding the provisions of the relevant legislation, the State is constitutionally obligated to fund trial court obligations itself, the Court disagreed, holding that nothing in Michigan's Constitution compels the State to directly fund the judiciary. Id. at 8.

> We agree with the Court of Appeals that none of the constitutional provisions relied on by plaintiffs requires the state to pay the entire cost of trial court operations. While strong arguments can be made that state funding would be a more desirable system of court financing, it is for the Legislature to determine whether to adopt such a system.

. . .

> Despite the fact that the courts have always been regarded as part of state government, they have operated historically on local funds and resources. An unbroken line of cases stretching back 130 years recognizes the practice of imposing the costs of operating the courts on local funding units.

Id.

AFSCME's argument that the State of Michigan can be compelled to provide funding — and a replacement mechanism to deliver such funding — if the City determines that it cannot provide the 36th District Court with unlimited funding to satisfy all obligations arising prior to the City's Petition Date, therefore, fails.

## Conclusion

The relief requested in the Stay Extension Motion will allow the City to make efficient use of its assets while maintaining the services of the local judiciary for the benefit of the people of the City. As such, unusual circumstances exist justifying an extension of the Chapter 9 Stay.

For all of the foregoing reasons, the City respectfully submits that the Stay Extension Motion should be granted and the AFSCME Objection should be overruled.

Dated: October 15, 2013     Respectfully submitted,


  /s/ Heather Lennox
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California  90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 963-6420
Facsimile:  (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY

# EXHIBIT A

**[Revised Proposed Order]**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
------------------------------------------------------x
                                   :
In re                              : Chapter 9
                                   :
CITY OF DETROIT, MICHIGAN,         : Case No. 13-53846
                                   :
                       Debtor.     : Hon. Steven W. Rhodes
                                   :
                                   :
------------------------------------------------------x
```

## ORDER, PURSUANT TO SECTION 105(a) OF THE
## BANKRUPTCY CODE, EXTENDING THE CHAPTER 9 STAY
## <u>TO THE 36TH DISTRICT COURT AND CERTAIN RELATED PARTIES</u>

This matter coming before the Court on the Motion of Debtor,

Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order

Extending the Chapter 9 Stay to the 36th District Court and Certain Related Parties

(Docket No. 1027) (the "<u>Motion</u>"),[1] filed by the City of Detroit, Michigan

(the "<u>City</u>"); Local 3308 and Local 917 of the American Federation of State,

County and Municipal Employees having filed Local 3308 and Local 917 of the

American Federation of State, County and Municipal Employees' Objection to

Motion of Debtor for Entry of an Order Extending the Chapter 9 Stay to the

---

[1]     Capitalized terms not otherwise defined herein have the meanings given to
them in the Motion.

36th District Court and Certain Related Parties (Docket No. 1125)

(the "Objection"); the State of Michigan having filed the State of Michigan's Reply

to Local 3308 and Local 917 of the American Federation of State, County and

Municipal Employees' Objection to Motion of Debtor for Entry of an Order

Extending the Chapter 9 Stay to the 36th District Court and Certain Related Parties

(Docket No. 1193) (the "State Reply"); the 36th District Court having filed the

Reply of 36th District Court to Local 3308 and Local 917 of the American

Federation of State, County and Municipal  Employees' Objection to Motion of

Debtor for Entry of an Order Extending the Chapter 9 Stay to the 36th District

Court and Certain Related Entities (Docket No. 1196) (the "36th District Court

Reply"); the City having filed the Debtor's Reply in Support of Motion of Debtor,

Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order

Extending the Chapter 9 Stay to the 36th District Court and Certain Related Parties

(the "City Reply"); the Court having reviewed the Motion, the Objection, the State

Reply, the 36th District Court Reply and the City Reply and having considered the

statements of counsel and the evidence adduced with respect to the Motion at a

hearing before the Court (the "Hearing"); and the Court finding that:  (a) the Court

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is

a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and the

Hearing was sufficient under the circumstances, (d) the unusual circumstances

present in this chapter 9 case warrant extending the Chapter 9 Stay to the

36th District Court Parties as provided herein; and the Court having determined

that the legal and factual bases set forth in the Motion and at the Hearing establish

just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED, and the Objection is

OVERRULED.

2.     Pursuant to section 105(a) of the Bankruptcy Code, the

Chapter 9 Stay is extended to apply in all respects to all claims and Legal

Proceedings seeking monetary relief against the 36th District Court Parties arising

prior to July 18, 2013.

3.     For the avoidance of doubt, all Legal Proceedings seeking

monetary relief for claims, incidents or events arising prior to July 18, 2013, and

any efforts or actions by any holders of monetary claims against the 36th District

Court Parties arising prior to July 18, 2013, are stayed pursuant to section 105(a) of

the Bankruptcy Code, pending further order of this Court.

4.     This Order is entered without prejudice to the right of any creditor of the 36th District Court to file a motion for relief from the stay imposed by this Order using the procedures, and under the standards, of sections 362(d) through (g) of the Bankruptcy Code.

# EXHIBIT B

**[Blackline to Order Attached to Stay Extension Motion]**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

-------------------------------------------------------x---
            :

In re                    : Chapter 9
            :

CITY OF DETROIT, MICHIGAN,   : Case No. 13-53846
            :

            Debtor.   : Hon. Steven W. Rhodes
            :
            :

------------------------------------------------- x
-

## ORDER, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, EXTENDING THE CHAPTER 9 STAY TO THE 36TH DISTRICT COURT AND CERTAIN RELATED PARTIES

This matter coming before the Court on the Motion of Debtor,
Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order
Extending the Chapter 9 Stay to the 36th District Court and Certain Related Parties
(**Docket No. 1027) (**the "Motion"),[1] filed by the City of Detroit, Michigan
(the "City"); **Local 3308 and Local 917 of the American Federation of State,**
**County and Municipal Employees having filed Local 3308 and Local 917 of**
**the American Federation of State, County and Municipal Employees'**
**Objection to Motion of Debtor for Entry of an Order Extending the Chapter 9**
**Stay to the 36th District Court and Certain Related Parties (Docket No. 1125)**
**(the "Objection"); the State of Michigan having filed the State of Michigan's**
**Reply to Local 3308 and Local 917 of the American Federation of State,**
**County and Municipal Employees' Objection to Motion of Debtor for Entry of**
**an Order Extending the Chapter 9 Stay to the 36th District Court and Certain**
**Related Parties (Docket No. 1193) (the "State Reply"); the 36th District Court**
**having filed the Reply of 36th District Court to Local 3308 and Local 917 of**
**the American Federation of State, County and Municipal  Employees'**
**Objection to Motion of Debtor for Entry of an Order Extending the Chapter 9**
**Stay to the 36th District Court and Certain Related Entities (Docket No. 1196)**

---

[1]   Capitalized terms not otherwise defined herein have the meanings given to
them in the Motion.

**(the "36th District Court Reply"); the City having filed the Debtor's Reply in Support of Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order Extending the Chapter 9 Stay to the 36th District Court and Certain Related Parties (the "City Reply");** the Court having reviewed the Motion**, the Objection, the State Reply, the 36th District Court Reply and the City Reply** and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing"); and the Court finding that:  (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and the Hearing was sufficient under the circumstances, (d) the unusual circumstances present in this chapter 9 case warrant extending the Chapter 9 Stay to the 36th District Court Parties **as provided herein**; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED**, and the Objection is OVERRULED**.

2.     Pursuant to section 105(a) of the Bankruptcy Code, the Chapter 9 Stay is extended to apply in all respects to all claims **and Legal Proceedings seeking monetary relief** against the 36th District Court Parties arising prior to July 18, 2013.

3.     For the avoidance of doubt, all Legal Proceedings **seeking monetary relief for claims, incidents or events arising prior to July 18, 2013**, and any efforts or actions by any holders of **monetary** claims against the 36th District Court Parties arising prior to July 18, 2013, are stayed pursuant to section 105(a) of the Bankruptcy Code, pending further order of this Court.

4.     This Order is entered without prejudice to the right of any creditor of the 36th District Court to file a motion for relief from the stay imposed by this Order using the procedures, and under the standards, of sections 362(d) through (g) of the Bankruptcy Code.

# EXHIBIT C

**[Excerpt of 7/24 Transcript]**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


IN RE:  CITY OF DETROIT,       .      Docket No. 13-53846
        MICHIGAN,               .
                               .      Detroit, Michigan
                               .      July 24, 2013
                Debtor.         .      10:02 a.m.
. . . . . . . . . . . . . . . .


HEARING RE. MOTION OF DEBTOR, PURSUANT TO SECTION 105(a)
OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER CONFIRMING
THE PROTECTIONS OF SECTIONS 362, 365 AND 922 OF THE
BANKRUPTCY CODE (DOCKET #53) AND MOTION OF DEBTOR, PURSUANT
TO SECTION 105(a) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN
ORDER EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE
ENTITIES, (B) NON-OFFICER EMPLOYEES AND (C) AGENTS AND
REPRESENTATIVES OF THE DEBTOR (DOCKET #56)
BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:      Jones Day
                     By:  HEATHER LENNOX
                     North Point
                     901 Lakeside Avenue
                     Cleveland, OH  44114-1190
                     (216) 586-3939

For AFSCME:          Lowenstein Sandler, LLP
                     By:  SHARON L. LEVINE
                     65 Livingston Avenue
                     Roseland, NJ  07068
                     (973) 597-2374

For Syncora          Kirkland & Ellis, LLP
Guarantee and        By:  RYAN BENNETT
Syncora Capital      300 North LaSalle
Assurance:           Chicago, IL  60654
                     (312) 862-2074

For Public Safety    Erman, Teicher, Miller, Zucker &
Unions:                 Freedman, PC
                     By:  BARBARA PATEK
                     400 Galleria Officentre, Suite 444
                     Southfield, MI  48034
                     (248) 827-4100

APPEARANCES (continued):


For Police and        Clark Hill, PLC
Fire Retirement       By:  ROBERT GORDON
System and            151 South Old Woodward, Suite 200
General Retirement    Birmingham, MI   48009
System of the City    (248) 988-5882
of Detroit:

For the UAW:          Cohen, Weiss & Simon, LLP
                      By:  BABETTE CECCOTTI
                      330 West 42nd Street, 25th Floor
                      New York, NY  10036
                      (212) 356-0227

For the Flowers       Law Offices of William A. Wertheimer
Plaintiffs:           By:  WILLIAM WERTHEIMER
                      30515 Timberbrook Lane
                      Bingham Farms, MI  48025
                      (248) 644-9200

For Nathaniel         In pro per
Brent:                NATHANIEL BRENT
                      538 South Livernois
                      Detroit, MI  48209

For the Phillips      The Sanders Law Firm, PC
Plaintiffs:           By:  HERBERT A. SANDERS
                      615 Griswold, Suite 913
                      Detroit, MI  48226
                      (313) 962-0099

For the State of      Michigan Department of Attorney General
Michigan:             By:  MATTHEW SCHNEIDER
                      525 West Ottawa Street, Fl. 7
                      P.O. Box 30212
                      Lansing, MI  48909
                      (517) 241-8403

For the Webster       McKnight, McClow, Canzano, Smith &
Plaintiffs:             Radtke, PC
                      By:  JOHN R. CANZANO
                      400 Galleria Officentre, Suite 117
                      Southfield, MI  48034
                      (248) 354-9650

```
Court Recorder:        Letrice Calloway
                       United States Bankruptcy Court
                       211 West Fort Street
                       21st Floor
                       Detroit, MI  48226-3211
                       (313) 234-0068

Transcribed By:        Lois Garrett
                       1290 West Barnes Road
                       Leslie, MI  49251
                       (517) 676-5092
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

manager and during the pendency of the receivership, the
governing body and the chief administrative officer of the
local government shall not exercise any of the powers of
those offices except as may be specifically authorized in
writing by the emergency manager or as otherwise provided by
this act and are subject to any conditions required by the
emergency manager," close quote.

Therefore, according to Michigan law, the emergency
manager steps into the shoes of the governing body and its
chief administrative officer. Accordingly, the Court readily
finds that the emergency manager is an officer within the
definition and scope of Section 922.

It does not appear that there are any other
substantive objections -- I should say any substantive
objections to this finding, and, accordingly, the Court
concludes that it is appropriate to grant the stay
confirmation motion and to have it state explicitly that the
emergency manager, Mr. Orr, is an officer covered by the
Section 922 stay.

The other motion is the stay extension motion. This
motion is filed pursuant to Section 105 of the Bankruptcy
Code, and it seeks an extension of the stay otherwise
effective as to acts against the city under Section 362 and
as to acts against the city, its officers and inhabitants,
under Section 922, and it seeks the extension to the

1  governor, the treasurer, the loan board, and their agents and

2  representatives.  As to this motion, it is initially argued

3  that principles of federalism, as embodied in the Tenth

4  Amendment, require a more stringent analysis of a request for

5  a Section 105 injunction in a Chapter 9 case compared to a

6  Chapter 11 case.  Again, the Court overrules this argument

7  and finds nothing in either the Tenth Amendment or principles

8  of federalism that suggests that any different or more

9  stringent analysis should be invoked.  The Court concludes,

10  rather, that in either event, whether Chapter 9 or Chapter

11  11, the Court has the authority to extend the scope of the

12  stay when necessary and appropriate.  Section 105(a) of the

13  Bankruptcy Code provides that the Bankruptcy Court may,

14  quote, "issue any order, process, or judgment that is

15  necessary or appropriate to carry out the provisions of this

16  title," close quote, and the Sixth Circuit has held that a

17  court may utilize its equitable power under Section 105(a) to

18  extend the automatic stay to nondebtor entities in unusual

19  circumstances, Parry versus Mohawk Motors of Michigan, 236

20  F.3d 299, Sixth Circuit, 2000, and American Imaging Services,

21  Inc. versus Eagle-Picher Industries, Inc., In re. Eagle-

22  Picher Industries, Inc., 963 F.2d 855, Sixth Circuit, 1992.

23  The Court also so held in Patton versus Bearden, 8 F.3d 343,

24  Sixth Circuit, 1993.

25          The case law is ambiguous on the standard that the

1  Court should apply in evaluating a request to extend the stay

2  under Section 105.  Is it this unusual circumstances test, or

3  is it the more traditional preliminary injunction four-factor

4  test?  The Court concludes that it is unnecessary to resolve

5  that ambiguity in this case.  Rather, the Court concludes

6  that under either of those standards, it is appropriate to

7  find that the stay extension motion requested by the debtor

8  should be granted.

9        The case law applying the unusual circumstances test

10  has noted that it should be and has been rare for a court to

11  find unusual circumstances.  Some courts say that the

12  automatic stay may be extended if the unusual circumstances

13  make the interests of the debtor and the nondebtor defendant

14  inextricably interwoven.  In this case, the Court readily

15  finds that the debtor -- the interests of the debtor and the

16  interests of those potential defendants to whom the debtor

17  seeks to extend the automatic stay are so intertwined that

18  the unusual circumstances test is met.  Any attempt by really

19  anyone to litigate the issues that the creditors have raised

20  or might raise regarding this bankruptcy case or the debtor's

21  eligibility to file this bankruptcy case against other

22  nondebtor parties such as the governor or the treasurer or

23  others may well have an ability on the debtor's -- may well

24  have an impact -- excuse me -- on the debtor's ability to

25  reorganize, so the Court finds that the unusual circumstances

1    test is met.

2            The Court further concludes that, to the extent it's

3    applicable, the traditional four-factor preliminary

4    injunction test is met as well.  Traditionally those four

5    factors are the likelihood of success on the merits of the

6    plaintiff's claim, the extent to which the moving party will

7    be prejudiced if the motion is denied, the extent to which

8    the party opposing the motion will be prejudiced if the

9    motion is granted, and any public interest considerations.

10   The case law firmly establishes that these are not each

11   elements that must be met.  They are, rather, factors and

12   considerations that the Court should take into account in

13   weighing its discretion on whether to grant the requested

14   relief.

15           Addressing first, therefore, the issue of the

16   debtor's likelihood of success on the merits, in the

17   circumstances of this case, the Court finds that it would be

18   entirely inappropriate to comment on the likelihood of the

19   debtor's success on the merits of any of the substantive

20   issues relating to eligibility or plan confirmation except to

21   say that the issues raised are very serious questions and

22   that these questions should be addressed, to the extent that

23   they are raised, in the context of eligibility to file this

24   case or perhaps in the plan confirmation context.  In any

25   event, the state court proceedings that the city of court --

1    specifically seeks to stay and enjoin are proceedings which

2    could conceivably have and may well have an impact on the

3    bankruptcy case here and the administration of this case or

4    on the debtor's assets.  As the Sixth Circuit noted in Eagle-

5    Picher, it is enough for this Court to find that there are

6    serious questions going to the merits, and the Court

7    certainly so finds here.

8         The Court further noted in that case, interestingly,

9    the following, quote, "The bankruptcy court's primary

10   emphasis on the last three factors," parenthetically not

11   including the likelihood of success on the merits, "for

12   granting a preliminary injunction was not error, especially

13   when considering the source of its authority to grant such an

14   injunction emanates from section 105 whose purpose is to

15   assist the court in carrying out the provisions of the

16   Bankruptcy Code, one of which is to oversee the

17   reorganization of a debtor's business.  In addition, as we

18   stated in Friendship Materials, a court may, in its

19   discretion, grant a preliminary injunction even when the

20   plaintiff fails to show a strong or substantial probability

21   of ultimate success on the merits of his claim, but where he

22   at least shows serious questions going to the merits and

23   irreparable harm which decidedly outweighs any potential harm

24   to the defendant if an injunction is issued."  As noted, the

25   second question -- oh, first, before concluding the first

1  element, the Court is -- the Court would find readily that

2  this factor, therefore, weighs in favor of granting the

3  requested stay and injunction.

4       The second factor, as noted, is the extent to which

5  the city will suffer prejudice if the requested injunction is

6  denied.  The Court readily finds that the city will suffer

7  substantial prejudice if this stay is denied.  The record

8  reflects that the creditors have already obtained temporary

9  restraining orders and a declaratory judgment and that the

10 city has felt compelled to appeal those.  Clearly, addressing

11 these issues both in the state court and in this Bankruptcy

12 Court is costly, expensive, and inefficient, and really

13 causes prejudice not only to the debtor but to the other

14 parties as well.  There is also, of course, a danger of

15 potentially inconsistent results.  So, accordingly, again,

16 the Court concludes that this favor -- does weigh in favor of

17 granting the requested injunction.

18      The third factor is the harm to others, which will

19 or may occur if the requested injunction is granted.  Again,

20 the Court readily finds that the creditors who have opposed

21 this extension will not really be harmed at all if this

22 motion is granted.  There is no prejudice to the substantive

23 rights of any party if this stay is extended, as the city has

24 requested.  All of the arguments, issues, and claims that

25 they could and might seek to make they can raise in this

1   court.  None of their procedural and substantive rights to
2   make their claims and arguments in this course -- in this
3   court in the course of this case are foreclosed by granting
4   this motion.  Further, the Court will fully retain the
5   opportunity and right of any creditor to seek relief from
6   this stay on an individual case-by-case basis, which, of
7   course, if granted, will permit that creditor to litigate
8   whatever their issues are in the appropriate court.  So,
9   again, the Court concludes that this factor weighs in favor
10  of granting the requested injunction.

11          The fourth consideration is whether granting the
12  requested injunction would serve the public interest.  In
13  normal two-party litigation or even in many bankruptcy cases,
14  this is not a significant consideration, but in the context
15  of a Chapter 9 case and especially this Chapter 9 case, the
16  Court concludes that it is probably the most important factor
17  of all.  Granting this motion will, the Court readily
18  concludes, enhance the debtor's likelihood of reorganization.
19  It will also create efficiency.  It will also assist in
20  expediting this reorganization, and it will reduce the city's
21  costs as well as those of other parties.  Accordingly, the
22  Court finds that this injunction is in the public interest,
23  and for all of these reasons, the Court readily concludes in
24  its discretion that the requested extension of the stay under
25  Section 105 should be granted.

1    Now, several creditors have objected on the grounds
2  that the debtor should have filed an adversary proceeding to
3  obtain this relief.  The Court concludes that this objection,
4  too, should be overruled.  The Court is satisfied that there
5  was sufficient notice and opportunity to be heard, and the
6  Court further observes that the imposition of this stay will
7  only have the effect of requiring those parties who seek
8  relief from it to file a motion for relief from it.  And in
9  rejecting this objection, the Court notes that there is
10  substantial merit in the city's concern that it would be
11  impossible for it to file an adversary proceeding naming as
12  defendants all of the parties that might be impacted by this
13  injunction.  Indeed, it would be a procedural and
14  administrative nightmare.

15    Finally, the Court rejects the argument that Section
16  105 cannot serve as the basis for an extended stay because it
17  creates new rights.  The Court finds that this injunction
18  does not create any new rights.  It simply assists the Court
19  in making the bankruptcy process more efficient and gives the
20  Court control over all of the issues that will have to be
21  resolved through the course of the bankruptcy.  In this
22  regard, the Court would further note that no cases have
23  rejected a Section 105 stay extension on this ground.

24    Before concluding, the Court would like to review
25  and state on the record what is not being decided here today.

1  Perhaps this is just as important for the record to reflect

2  as what is being decided here today.

3           The Court is making no ruling whatsoever on whether

4  the City of Detroit is eligible to be a debtor in Chapter 9.

5  The Court is making no ruling on whether the state

6  constitution prohibited the emergency manager's appointment

7  or prohibited the emergency -- excuse me -- prohibited the

8  governor from authorizing this Chapter 9 filing without

9  excepting from it the constitutionally protected pension

10 rights of its citizens.  The Court is not ruling on whether

11 the state court orders that were entered either pre- or post-

12 bankruptcy should be given preclusive effect under principles

13 of res judicata, collateral estoppel, Rooker-Feldman, or any

14 other preclusive doctrine.  The Court is not ruling on

15 whether any orders entered by the state court after this

16 bankruptcy case was filed violated the automatic stay.  The

17 Court is not ruling on whether the City of Detroit can

18 propose a feasible or confirmable plan in light of the state

19 constitution or any other consideration, for that matter.

20          All of these issues on which the Court is not ruling

21 today are fully preserved.  Of course, when and if these

22 issues are raised in an appropriate way, the Court will rule

23 on them in due course with adequate notice and opportunity to

24 be heard, and, of course, we will address the procedure for

25 dealing with some of these issues in our status conference on

1   August 2nd.

2           The Court will, therefore, grant both of these

3   motions.  The Court wants the opportunity to review the

4   proposed orders that were attached to the debtor's motions.

5   In the event the Court wants to tweak or edit any of them, I

6   would ask debtor's counsel to submit those orders in Word or

7   WordPerfect form through the Court's order processing

8   program.  I know for sure that one of the things I want the

9   stay extension order to do is to be sure it explicitly

10  preserves the opportunity for parties to file motions for

11  relief from it under Section 362(d), but we'll take care of

12  that, so just submit the orders in the order processing

13  program as they were attached to the motion.

14          That's all I have.  Is there anything that anyone

15  else would like to raise at this time?

16          MS. PATEK:  Your Honor, on behalf of the public

17  safety unions, we did ask to broaden --

18          THE COURT:  You should identify yourself for the

19  record.

20          MS. PATEK:  I'm sorry.  Barbara Patek on behalf of

21  the public safety unions.  We did make a request for

22  affirmative relief, which was not listed among the items that

23  your Honor did not rule on with respect --

24          THE COURT:  Yes.  Thank you for reminding me of

25  that.  In the interest of due process, the Court must