## McKNIGHT, McCLOW, CANZANO, SMITH & RADTKE, P.C.
*Attorneys at Law*
400 GALLERIA OFFICENTRE • SUITE 117
SOUTHFIELD, MI 48034-8460

TELEPHONE (248) 354-9650
FAX (248) 354-9656

SAMUEL C. MCKNIGHT
JOHN R. CANZANO
LISA M. SMITH
DAVID R. RADTKE
DARCIE R. BRAULT
PATRICK J. RORAI

ELLEN F. MOSS 1956-2011

OF COUNSEL

JUDITH A. SALE
ROGER J. MCCLOW

July 18, 2013

Thomas Quasarano
Assistant Attorney General
P.O. Box 30754
Lansing, MI 48909

Re:  Gracie Webster, et al v. The State of Michigan, et al
     Case No. 13-734-CZ

Dear Mr. Quasarano:

Enclosed please find the Plaintiffs' Reply Brief in Support of Motion for Declaratory Judgment and Expedited Hearing regarding the above matter.

Sincerely,

McKNIGHT, McCLOW, CANZANO
SMITH & RADTKE, P.C.

*John R. Canzano/sjc*

John R. Canzano

JRC/sjc
Enclosure

Dept of Attorney General

JUL 2 3 2013

State Operations Division
RECEIVED

GRACIE WEBSTER and
VERONICA THOMAS,

    Plaintiffs,

vs

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

    Defendants.

Case No. 13-000734-CZ-C30
Hon. Rosemarie E. Aquilina

/

JOHN R. CANZANO (P30417)
McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com

/

## REPLY BRIEF IN SUPPORT OF MOTION FOR DECLARATORY JUDGMENT AND EXPEDITED HEARING PURSUANT TO MCR 2.605(D), OR IN THE ALTERNATIVE FOR PRELIMINARY INJUNCTION

## INTRODUCTION

The pertinent facts have already been stated in Plaintiffs' Verified Complaint, Motion, and Brief in Support filed July 3, 2013, which are incorporated herein by reference. Notably, Defendants do not contest (or even mention) the most important facts here, which bear repeating: On June 14, 2013, Emergency Manager Kevyn Orr issused a formal "Proposal for Creditors" which expressly states that ***"there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons."*** The same day, the Emergency Manager -- who is himself a lawyer and bankruptcy expert -- publicly threatened that state laws -- including the Michigan Constitution -- protecting vested pension benefits will "not . . . protect" those pension rights in bankruptcy court.

Moreover, Defendants do not contest the substantive merits of Plaintiffs' claim that PA 436 is unconstitutional to the extent it allows accrued pension benefits to be "diminished or impaired" in violation of Article IX Section 24 of the Michigan Constitution. Rather, Defendants claim this case is not justiciable because the Emergency Manager has not yet actually requested and the Governor has not yet actually authorized a Chapter 9 filing pursuant to PA 436. Howver, as explained below and in Plaintiffs' original Brief, the instant controversy presents a classic case for declaratory relief under MCR 2.605. The need for a declaratory judgment to establish the rights and duties and to guide the conduct of all the parties here is urgent. Plaintiffs are entitled to a declaratory judgment that PA 436 is unconstitutional to the extent it allows the Governor to authorize Chapter 9 bankruptcy filing which, as the Emergency Manager has himself acknowledged, is intended to diminish or impair the accrued vested pension rights of Plaintiffs as well as thousands of their coworkers and fellow retirees. In the alternative, Plaintiffs are entitled to a preliminary injunction enjoining the Governor from authorizing such a unconstitutional bankruptcy filing.

A.  **Plaintiffs have established an actual controversy entitling them to declaratory relief under MCR 2.605.**

Although Defendants couch their arguments in terms of standing and ripeness, the only real issue is whether there is an "actual controversy" under MCR 2.605, which subsumes those justiciability issues. This matter clearly presents "a case of actual controversy" empowering the Court to "declare the rights and other legal relations of an interested party seeking a declaratory judgment" under MCR 2.605(A)(1). Defendants' argument that Plaintiffs' request for declaratory relief presents speculative or hypothetical claims must be rejected. Under longstanding and well-established Michigan law, Plaintiffs are entitled to a declaratory judgment.

Defendants correctly cite *Lansing Schools Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349; 792 NW2d 686 (2010), as the controlling law. But that case supports Plaintiffs, not Defendants. In *Lansing Schools Ed Ass'n*, the Supreme Court held that in the declaratory judgment context:

> [W]henever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment.

487 Mich at 372. The Court further held that the standard for whether a litigant meets the requirements of MCR 2.605 was that stated in *Associated Builders and Contractors v Wilbur*, 472 Mich 117, 126; 693 NW2d 374 (2005): "[t]he essential requirement of the term 'actual controversy' under the rule is that plaintiffs plead and prove facts which indicate an adverse interest necessitating a sharpening of the issues raised." *Lansing Schools Ed Ass'n*, 487 Mich at 372, n 20.[1]

---

[1] Notably, although *Lansing Schools Ed Ass'n* held that "Michigan standing jurisprudence should be restored to a limited, prudential doctrine that is consistent with Michigan's longstanding historical approach to standing" and overruled the standing doctrine adopting federal Article III standing jurisprudence established in *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726; 692 NW2d 900 (2001) and *Nat'l Wildlife Federation v Cleveland Cliffs*

2

Defendants also cite *UAW v Central Mich Univ Trustees*, 295 Mich App 486; 815 NW2d 132 (2012). Again that case supports Plaintiffs, not Defendants. In *Central Michigan*, the plaintiff union sought a declaratory judgment that a university policy governing employees who become candidates for public office was invalid and in violation of the Political Activities by Public Employees Act, MCL 15.401 *et seq*. The defendant university claimed the plaintiff lacked standing and that there was no actual controversy because none of its members had attempted to become candidates for political office. The Court held that "by granting declaratory relief in order to guide or direct future conduct, courts are not precluded from reaching issues before actual injuries or losses have occurred." The Court held that there was an actual controversy concerning the legitimacy of the candidacy policy, because "to hold otherwise would be inconsistent with the purpose of a declaratory judgment" which is "to enable the parties to obtain adjudication of rights *before an actual injury occurs*, to settle a matter *before it ripens into a violation of the law* or a breach of contract, or to avoid a multiplicity of actions by *affording a remedy for declaring in expedient action the rights and obligations of all litigants*. 295 Mich App at 496 (emphasis in original), quoting *Rose v State Farm Mutual Ins Co*, 274 Mich App 291, 294; 732 NW2d 160 (2006).

*City of Lake Angelus v Mich Aeronautics Comm*, 260 Mich App 371; 676 NW2d 642 (2004), cited in *Central Mich University*, is particularly instructive, and clearly shows that Plaintiffs are entitled to a declaratory judgment here. In *Lake Angelus*, the plaintiff city sought a declaratory judgment that the enabling legislation establishing the Michigan Aeronautics Commission, MCL 259.1 *et seq.*, did not authorize the Commission to override the city's

---

Iron Co, 471 Mich 608; 684 NW2d 800 (2004), *Lansing Schools* did not overrule *Associated Builders and Contractors* on this point, noting that *Associated Builders* had incorporated the pre-*Lee/Cleveland Cliffs* standard for establishing standing for a declaratory judgment under MCR 2.605. *Lansing Schools Ed Ass'n*, 487 Mich at 372, n 20. Thus Plaintiffs have established an

3

ordinance banning the use or docking of seaplanes on Lake Angelus. A lakefront property owner (Gustafson) had previously challenged the city ordinance in the federal courts and lost. Subsequently, the Seaplane Pilots Association requested that the Aeronautics Commission act to clarify that lakes such as Lake Angelus should be open to seaplane operations irrespective of any local ordinances. In response, the Commission promulgated a rule establishing a multistage administrative process by which local ordinances, such as the plaintiff city's ordinance, could be overridden.

The Attorney General, in defense of the Aeronautics Commission and the validity of its enabling legislation, argued that because Gustafson had not so requested, and the Aeronautics Commission had not begun an administrative process to override the city's ordinance, there was no actual controversy which would support declaratory relief under MCR 2.605. The Court of Appeals unequivocally disagreed:

> Hanging over the city is the prospect of being required to respond in administrative proceedings designed to override the ordinance, pursuant to an administrative rule adopted specifically to provide a means of overriding the ordinance respecting Lake Angelus. To be sure, the commission may not drop the sword. But the commission adopted the administrative rule, the Attorney General claims that it is valid, and, perforce, at any time, the city may be called upon to respond in an administrative context at considerable cost and expense, *and in circumstances that are not predictable.*

260 Mich App at 376. (emphasis supplied) The Court concluded there was an "actual controversy" and that it was "in the public interest to declare the rights of the parties on the question of whether the Commission has the authority to override the ordinance." The Court further noted that the modern declaratory judgment rule [MCR 2.605] "was intended to 'provide for the broadest type of declaratory judgment procedure." *Id.*, 377, citing *Shavers v. Kelley*, 402 Mich 554; 267 NW2d 72 (1978), and Longhofer, *Courtroom Handbook on Michigan Civil*

---

"actual controversy" under both *Associated Builders* as well as *Lansing Schools*.

*Procedure* (2003), §2605.6, p. 1020. *See also, City of Huntington Woods v City of Detroit*, 279 Mich App 603, 616-617; 761 NW2d 127 (2008) (finding actual controversy for a declaratory judgment concerning defendant city's authority to sell golf course property, and pursuant to what terms, even though there had been no violation of restrictive covenants and property had not yet been sold, *because city was seriously considering sale of the property* and had begun to solicit bidders; declaratory relief was "necessary in order to guide or direct future conduct" of defendant and because "courts are not precluded from reaching issues before actual injuries or losses have occurred.") (citation omitted)

The *Lake Angelus* case is on all fours with this case. There, as here, an adjudicative forum had been established which, once invoked, threatened to invalidate the plaintiff's rights. In *Lake Angelus* the forum was the Aeronautics Commission administrative procedure and the right threatened was the City's right under its local ordinance to ban seaplanes. Here, the forum is federal bankruptcy court under Chapter 9 and the rights threatened are Plaintiffs' rights under the Michigan Constitution protecting their accrued pension benefits. There, as here, an "actual controversy" existed under MCR 2.605 even though there had been no request to invoke the forum and the process which could abrogate the plaintiff's rights had not been initiated, because the process could commence at any time "in circumstances that are not predictable" and because declaratory relief was necessary in order to declare the rights of the parties as to the defendant's authority to begin proceedings which could override the plaintiff's rights.

As noted in Plaintiff's Verified Complaint and in their Brief in Support of Motion for Declaratory Judgment and Preliminary Injunction, the need for declaratory relief is urgent. Emergency Manager Orr -- himself an attorney and bankruptcy expert -- has stated in writing that "there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons." He has publicly threatened that vested pension benefits will be

5
13-53846-tjt    Doc 1219-5    Filed 10/17/13    Entered 10/17/13 13:56:17    Page 7 of 14

abrogated in a Chapter 9 proceeding authorized by the Governor pursuant to PA 436, and that any state law protecting pension benefits -- including the Michigan Constitution -- is "not going to protect" retirees or employees with vested pension benefits in bankruptcy court.[2] And, he is admittedly using the threat of bankruptcy in an attempt to force vested pensioners and employees to give in to his demands to diminish and impair their constitutionally protected pension rights *before* any bankruptcy filing, understandably causing Plaintiffs, and thousands of city retirees like them, great fear and anguish for their future well-being.[3]

---

[2] Despite the Emergency Manager's threats, Defendants argue that Plaintiffs' pension rights under Michigan law could be protected in Chapter 9. Although Plaintiffs obviously reserve the right to argue that a federal bankruptcy court must honor Michigan's Constitutional protections for vested pension benefits, what would happen to those rights in bankruptcy is unpredictable, at best. See, e.g., Comment, *Solving Insolvent Public Pensions: The Limitations of the Current Bankruptcy Option,* 28 Emory Bankr Dev Journal 89, * 121-122 (noting that "while some commentators and local officials have argued that state law restrictions on pension reductions or modifications may limit the bankruptcy court's ability to reduce or terminate these retirement obligations, [a decision of at least one bankruptcy court] affirmed the general proposition that, where states authorize a municipality to file bankruptcy, federal bankruptcy law is not subordinate to state law.") (citations and footnotes omitted)

[3] Defendants also cite to Section 32 of PA 436, MCL 141.1572, which purports to preclude causes of action under PA 436 for violation of the Act. But as Defendants correctly note, Plaintiffs are not aserting a cause of action under the Act. They are asserting a claim that PA 436 is unconstitutional to the extent it allows the Governor to authorize a bankruptcy filing which threatens to diminish or impair Plaintiffs' accrued pension rights in violation of Article IX Section 24 of the Michigan Constitution; and in the alternative for an injunction prohibiting the Governor from unconstitutionally authorizing such an unconstitutional bankruptcy filing under PA 436. It is black letter law that this court has jurisdiction over such claims, and Defendants do not contend otherwise. As the Supreme Court declared in *Diggs v State Bd of Embalmers & Funeral Directors,* 321 Mich 508, 514 (1948), "[t]his Court has repeatedly held that in cases where an irreparable injury will result from the acts of public officials in attempting to proceed under an invalid law, the jurisdiction of equity may be invoked for the purpose of obtaining injunctive relief and a determination as to the constitutionality of the statute that is involved."

Moreover, as Defendants also correctly note, a litigant also has standing in this context "if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large . . ." *Lansing Schools Ed Ass'n,* 487 Mich at 372. Plaintiffs obviously satisfy this standard. Plaintiffs are imminently threatened with the diminishment or impairment in federal bankruptcy court of their hard-earned vested pension benefits. And the threat of bankruptcy is being used *now* in an attempt to force Plaintiffs to give in to the Emergency Manager's demands to diminish or impair constitutionally protected pension

The Emergency Manager could request, and the Governor could authorize, a Chapter 9 bankruptcy filing at any moment. Plaintiffs need and are entitled to declaratory relief *now*.

### B. Plaintiffs have stated a valid claim for relief

Defendants argue at page 10-11 of their Response Brief that Plaintiffs' Complaint fails to state a claim upon which this court may grant relief. Defendants assert that because Plaintiffs have described their claim as a "facial" challenge, it is subject to the rule stated in *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 171*, 479 Mich 1; 740 NW2d 444 (2007) that "[a] facial challenge is a claim that the law is invalid *in toto* -- and therefore incapable of any valid application," *id* at 11, n 20, i.e., that "no set of circumstances exists under which the [a]ct would be valid." *Id* at 11. This argument must be rejected for several separate and independent reasons.

*First*, as explained above and in Plaintiff's original Brief in Support, Plaintiffs *have* stated a valid claim for declaratory relief. The rule stated in *Request for Advisory Opinion* is inapplicable to requests for declaratory relief such as this. For example, in the *Lake Angelus* case discussed above, the Court of Appeals found that the enabling legislation at issue was invalid in the sense that it did not allow the Aeronautics Commission to approve the landing and takeoff of seaplanes in violation of local ordinances. The court never considered, and did not need to consider, whether there was "no set of circumstances" under which the enabling legislation would be valid. In fact, the court considered the possibility that the legislation could be validly applied in that the Aeronautics Commission might not "drop the sword" -- i.e. might not override the local ordinance -- yet still granted the requested declaratory relief.

---

rights *before* a bankruptcy filing. The citizenry at large, unlike Plaintiffs, suffers no such special injury.

7

*Second*, Plaintiffs are not seeking to invalidate PA 436 "*in toto*" as required for application of the rule stated in *In Re Advisory Opinion*. Plaintiffs are only seeking a declaration that the provisions of PA 436 which allow a Chapter 9 bankruptcy filing are unconstitutional where, as here, such a filing threatens to impair or diminish vested pension benefits in violation of Article IX Section 24 of the Michigan Constitution. For example, in a case where a municipality had no pension plan, or a pension plan whose participants had no accrued benefits, a Chapter 9 filing would not violate Article IX Section 24.

Here, because the imminent Chapter 9 filing *does* threaten to impair or diminish vested pension benefits -- as Emergency Manager (and bankruptcy lawyer) Orr has explicitly stated -- Plaintiffs are entitled to a declaration that PA 436 is unconstitutional to the extent it allows the Governor to authorize a Chapter 9 bankruptcy filing by the Emergency Manager. This case is a challenge to the provisions of PA 436 which authorize a Chapter 9 filing in violation of Article IX Section 24 of the Michigan Constitution. Moreover, even if the Court were to find Plaintiffs' limited facial challenge somehow deficient, the Court can and should still find that the law is unconstitutional as applied, based on the particular facts here: the Emergency Manager's threat that "there must be significant cuts in accrued vested pension amounts" and that the Michigan Constitution is "not going to protect" retirees or employees with vested pension rights in bankruptcy court.

*Third*, the *In re Advisory Opinion* case was just that -- an advisory opinion. There were no facts and there were no parties. The Attorney General argued both sides of the case -- that the voter identification law in question was, and was not, constitutional. That case obviously presented a pure facial challenge to a law *in toto*. That case was nothing like this case, and the rule stated there has no application here.

8

C.  **In the alternative, Plaintiffs are entitled to a preliminary injunction**

In support of their alternative request for a preliminary injunction, Plaintiffs incorporate the arguments previously stated in support thereof in their original July 3, 2013 Brief in Support. Plaintiffs also incorporate by reference the arguments in support of a preliminary injunction in the July 3, 2013 Brief in Support and the July 18, 2013 Reply Brief filed in this Court by the Plaintiffs in *Flowers v State of Michigan,* No. 13-729-CZ.

Plaintiffs seek in the alternative a preliminary injunction prohibiting the Governor from authorizing a Chapter 9 filing by the Emergency Manager which threatens to impair and diminish Plaintiffs' accrued vested pension benefits in violation of Article IX Section 24 of the Michigan Constitution. The Emergency Manager has given every indication that he intends to use Chapter 9 to achieve "significant cuts in accrued vested pension amounts for both active and currently retired persons," and has threatened that in his expert opinion as a bankruptcy lawyer, the Michigan Constitution is "not going to protect you" from having pension benefits diminished or impaired in bankruptcy.

Defendants argue that Plaintiffs' request for injunctive relief is overbroad because it would prohibit the Governor from authorizing a bankruptcy filing which did not threaten to impair or diminish vested pension rights. However, in his recent filings in both this case and the *Flowers* case, although he had every opportunity to do so, the Governor gave no indication whatsoever that he would authorize a Chapter 9 filing only if the filing did not threaten to diminish or impair vested pension rights and by requiring that all accrued benefits be fully funded well before any bankruptcy filing. The Governor's silence in this regard is telling. Moreover, even if the Governor were to attach such a contingency, there is no guarantee that a bankruptcy judge would honor it, although Plaintiffs of course would argue that he or she should.

9

(See fn 2, *supra*.) Accordingly, there is no basis for the Defendants' claim that the injunctive relief which Plaintiffs seek is overbroad.

Defendants also argue that an injunction against the Governor prohibiting him from authorizing a bankruptcy filing which threatens to unconstitutionally diminish or impair vested pension rights is precluded under separation of powers principles, citing *Strauss v Governor*, 459 Mich 526, 532; 592 NW2d 53 (1999). But *Strauss* dealt with *mandatory* injunctive relief (mandamus) and not, as here, *prohibitory* injunctive relief. As Defendents concede, the Court in *Strauss* expressly *did not* decide that prohibitory injunctive relief against the Governor is precluded. Of course, as *Strauss* notes, it is expected that the Governor -- who has taken an oath to obey the Constitution -- will obey a declaratory judgment that he not violate the Constitution by authorizing a Chapter 9 bankruptcy which threatens to impair or diminish vested pension benefits. The problem is that if he attempts to authorize bankruptcy before declaratory relief is granted, or if he fails to obey a declaratory judgment, it will be too late for Plaintiffs, absent an injunction. Once the City has entered bankruptcy, there may be no turning back, and as noted in fn. 2, *supra*, the consequences for Plaintiffs' vested pension rights will be unpredictable, at best.[4]

Finally, as explained in Plaintiffs' Verified Complaint and July 3 Brief, as well as the Complaint, Brief and Reply Brief in the *Flowers* case, Plaintiffs satisfy all the factors for a preliminary injunction. In particular, the public interest will be served by stopping the unconstitutional destruction of the vested pension benefits of thousands of retirees and workers

---

[4] For the same reason, Defendants' claim that Plaintiffs will have an "adequate remedy at law" in bankruptcy court is ludicrous. As the Emergency Manager has threatened, the express purpose of a bankruptcy filing would be to abrogate pension rights, and in his professional opinion, the Michigan Constitution will "not . . . protect" retirees in bankruptcy court. While Plaintiffs would of course contest such a result, bankruptcy court proceedings are obviously not an "adequate remedy" for vindicating their rights under the Michigan Constitution.

who have planned their futures trusting that their pension benefits were constitutionally protected and that Article IX Section 24 of the Michigan Constitution means what it says.

## CONCLUSION

Wherefore, Plaintiffs respectfully request that their Motion for Declaratory Judgment and/or Preliminary Injunction be granted.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By: _____
John R. Canzano (P30417)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com

Date: July 18, 2013

P:\AFSCME\Emergency Mgr Litigation\Pleadings\Reply Brief-REV.doc

11
13-53846-tjt   Doc 1219-5   Filed 10/17/13   Entered 10/17/13 13:56:17   Page 13 of 14

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

    Plaintiffs,

vs

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

    Defendants.

Case No. 13-000734-CZ-C30
Hon. Rosemarie E. Aquilina

_____/

| JOHN R. CANZANO (P30417) | THOMAS QUASARANO (P27982) |
|---|---|
| McKNIGHT, McCLOW, CANZANO, | BRIAN DEVLIN (P34685) |
| SMITH & RADTKE, P.C. | Assistant Attorneys General |
| Attorneys for Plaintiffs | Attorney for Defendants |
| 400 Galleria Officentre, Suite 117 | P.O. Box 30754 |
| Southfield, MI 48034 | Lansing, MI 48909 |
| 248-354-9650 | 517-373-1162 |
| jcanzano@michworklaw.com | quasaranot@michigan.gov |
| | devlinb@michigan.gov |

_____/

## PROOF OF SERVICE

The undersigned certifies that on July 18, 2013, he served a copy of Reply Brief in Support of Motion for Declaratory Judgment and Expedited Hearing Pursuant to MCR 2.605(D), or in the Alternative for Preliminary Injunction by email and first class mail upon:

THOMAS QUASARANO
BRIAN DEVLIN
Assistant Attorneys General
Attorney for Defendants
P.O. Box 30754
Lansing, MI 48909

    /s/ John R. Canzano
    John R. Canzano