STATE OF MICHIGAN
IN THE COURT OF APPEALS

GRACIE WEBSTER and
VERONICA THOMAS,

      Plaintiffs-Appellees,

v

RICK SNYDER, as the Governor of the
State of Michigan, ANDY DILLON, as the
Treasurer of the State of Michigan, and the
STATE OF MICHIGAN,

      Defendants-Appellants,

Docket No.
Case No. 13-734-CZ
Hon. Rosemarie Aquilina

> **Relief requested by 5:00 p.m. on
> July 19, 2013, or by 9:00 a.m.,
> July 22, 2013, which is the date
> set for a show cause hearing in
> this matter.**

---

## DEFENDANTS' MOTIONS FOR STAY PENDING APPEAL, STAY OF PROCEEDINGS, AND FOR IMMEDIATE CONSIDERATION

Bill Schuette
Attorney General

John J. Bursch (P57679)
Solicitor General
Counsel of Record

Matthew Schneider (P62190)
Chief Legal Counsel

Margaret A. Nelson (P30342)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants–Appellants
P.O. Box 30754
Lansing, MI 48909
(517) 373-6889

Dated: July 19, 2013.

Defendants Governor Rick Snyder, Treasurer Andy Dillon, and the State of Michigan, by and through their attorneys, Solicitor General, John J. Bursch, and Assistant Attorneys General Heather S. Meingast and Margaret A. Nelson, bring these combined motions pursuant to MCR 7.209(A)(2)-(3), (D), and MCR 7.211(C)(6). Defendants state the following in support of these motions:

1. On July 3, 2013, Plaintiffs, as beneficiaries of the City of Detroit's pension system, brought a facial constitutional challenge to the Local Financial Stability and Choice Act (Act), MCL 141.1541, *et seq.* asserting that the Act is unconstitutional because section 18(1), MCL 141.1558(1), permits the Governor to authorize a proceeding in Chapter 9 bankruptcy, allegedly in violation of article 9, § 24 of the 1963 Constitution.

2. Plaintiffs alleged that their rights under article 9, § 24 were threatened, and they sought an expedited declaratory judgment and order precluding the Governor or the Treasurer from authorizing Detroit's Emergency Manager to proceed under Chapter 9 of the federal Bankruptcy Code.

3. The trial court scheduled a hearing on Plaintiffs' motion for expedited treatment of their Complaint on July 22, 2013.

4. On July 16, 2013, the Emergency Manager for the City recommended to the Governor that the City be authorized to proceed under Chapter 9 of Title 11 to the United States Code, as permitted by section 18(1) of the Act. And late in the day on July 18, 2013, the Governor approved the recommendation and authorized the Emergency Manager to proceed on behalf of the City in bankruptcy.

5.  The same day, at 4:06 p.m., the Emergency Manager filed the City's petition with the United States Bankruptcy Court for the Eastern District of Michigan. Before the actual filing, however, Plaintiffs filed an ex parte motion for TRO with the trial court. Defendants were notified of the request for TRO, and appeared at the trial court to argue against its issuance. Ultimately, the trial court entered the TRO against Defendants at 4:25 p.m. despite having knowledge of the City's bankruptcy filing. Defendants' motion to stay was denied.

6.  The trial court entered the following TRO:

> Defendants are immediately and temporarily enjoined and restrained from taking any action (including the authorization of an unconditional bankruptcy proceeding for the City of Detroit and/or the filing of a Chapter 9 bankruptcy), *or taking any further action with respect to* any filing which has already occurred *that may*: (i) cause the accrued financial benefits of the Retirement System or their participants from *in any way* being diminished or impaired as mandated by Article IX, section 24, of the Michigan Constitution, or (ii) otherwise abrogate Article IX, section 24, of the Michigan Constitution. [Exhibit 1 (emphasis added).]

7.  The trial court abused its discretion in entering the TRO because this case is moot and Plaintiffs did not demonstrate a substantial likelihood of success on the merits of their claim that the Act is unconstitutional under article 9, § 24 because they lack standing to sue; their claim is unripe; and, their facial constitutional challenge fails as a matter of a law.

8.  Here, Plaintiffs' Complaint asked the trial court to declare the Act unconstitutional because it permits the Governor to authorize the City to proceed in Chapter 9 bankruptcy, allegedly in violation of article 9, § 24. Plaintiffs asked the

Court to declare or prohibit the Governor and Treasurer from authorizing the bankruptcy.

9. But these requests are moot because the Governor has now authorized the Emergency Manager to proceed in bankruptcy, and the petition has been filed. The Defendants have no further duties with respect to the City's bankruptcy proceeding in federal court. Thus, there is no judgment the trial court could issue in this case that would have a practical effect on the alleged controversy. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). Indeed, the TRO will have no practical effect with respect to Plaintiffs' claims because, again, the Defendants have no further duties pertaining to the bankruptcy.

10. Plaintiffs' request for injunctive relief was also unwarranted because the Michigan Supreme Court has instructed that "[o]nly when declaratory relief has failed should the courts even begin to consider" injunctive relief against executive officials like the Governor and Treasurer. *Strauss v Governor*, 459 Mich 526, 532; 592 NW2d 53 (1999), quoting *Straus v Governor*, 230 Mich App 222; 583 NW2d 520 (1998) (citation omitted). That has not happened here. Their request for an injunction should have been denied as premature.

11. Plaintiffs failed to show a substantial likelihood of success because they lack standing to sue under any of the standards articulated in *Lansing School Education Ass'n v Lansing Board of Education*, 487 Mich 349, 355, 372; 792 NW2d 686 (2010). Plaintiffs' fears that their pension benefits will be detrimentally impacted by the City's bankruptcy proceeding are speculative at this time because

there is no way of knowing whether the pension funds will become part of any plan confirmed by the federal bankruptcy court. And Plaintiffs, as creditors, have an opportunity to raise their claim in the context of the bankruptcy proceeding.

12.     Plaintiffs also failed to show a substantial likelihood of success on the merits because their claim is not ripe for review. *Michigan Chiropractic Council v Comm'r of Ins,* 475 Mich 363, 378-379; 716 NW2d 561 (2006). Plaintiffs' contention that a future Chapter 9 bankruptcy would present what they characterize as a "threat" to their interests in their pensions is not ripe because it rests on contingent future events that may or may not occur, to wit; that their pensions will be impaired as a result of a confirmed federal bankruptcy plan.

13.     Finally, Plaintiffs failed to show a substantial likelihood of success on the merits because their constitutional facial challenge fails as a matter of law. The Act does not require or compel any particular treatment of pension funds during a Chapter 9 bankruptcy. Thus, nothing in the Act compels or requires any impairment of Plaintiffs' pension benefits contrary to article 9, § 24. Moreover, Plaintiffs cannot show "that no set of circumstances exists under which the [a]ct would be valid." *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71,* 479 Mich 1, 11; 740 NW2d 444 (2007), since the Governor could authorize a bankruptcy contingent upon the preservation of pension funds. MCL 141.1558(1).

14.     While Plaintiffs failed in their burden, Defendants demonstrated that their harm should an injunction issue outweighed the harm to Plaintiffs absent an

injunction. While Plaintiffs retain their access to the remedies set forth in the federal Bankruptcy Code without need of court-granted injunctive relief, the grant of the TRO harms Defendants and the operation of state government. The grant of this relief disregarded separation of powers principles. Const 1963, art 3, § 2. The relief also unlawfully intrudes on the Governor's and Treasurer's executive powers because it is both overbroad and vague.

15.　　Most important, the public interest is harmed by the injunction as well. Due to the City of Detroit's unsustainable debt load (estimated at $18-$20 *billion*, or $24,000 per resident, more than all but 11 *states*), the City has lost the ability to provide even the most basic services to its residents. Citizens wait an average of 58 minutes for the police to respond to their calls. Only 8.7% of criminal cases are solved. In the first quarter of 2013, 40% of the City's street lights were not functioning, and only one-third of the City's ambulances were in service. This is a city that needs and deserves a fresh start. By ignoring fundamental principles of justiciability, and the basic elements required to grant injunctive relief, the trial court jeopardizes public safety and welfare. Based on these circumstances, the trial court abused its discretion in granting the TRO, and Defendants respectfully request that the Court immediately dissolve the injunctive order.

16.　　Defendants also respectfully request that the trial court stay all trial court proceedings in this case and the two companion cases for the reasons set forth above.

17.     Finally, Defendants' request immediate consideration of their motions under MCR 7.211(C)(6). As demonstrated above, the trial court abused its discretion in entering the TRO against Defendants, and Defendants will be harmed if the unlawful injunction is allowed to stand.[1] Furthermore, the trial court has scheduled a hearing on July 22, 2013 at 9:00 a.m., for Defendants to show cause in this case and in *The General Retirement System of the City of Detroit v Orr et al.*, 13-768-CZ, also on appeal, as to why a declaratory judgment and/or a preliminary injunction should not issue against Defendants in these matters. Therefore, Defendants request relief on their motions by 5:00 p.m. on July 19, 2013, or at the latest by 9:00 a.m. on July 22, 2013.

WHEREFORE, Defendants Governor Rick Snyder, State Treasurer Andy Dillon, and the State of Michigan, respectfully request that this Court by the close of business today or by 9:00 a.m. on July 22, 2013 (1) grant the application for leave to appeal, (2) immediately dissolve and/or stay the TRO, (3) stay all proceedings in this trial court action and its two companion cases, and (4) grant immediate consideration under MCR 7.211(C)(6). Nothing less is at stake than the future of Michigan's largest city.

---

[1] MCR 7.211(C)(6) allows this Court to consider the motions without waiting seven days if the Defendants serve counsel or the parties in person. Defendants have served some counsel in person, but were only able to serve others by email given the proximity of their offices.

Respectfully submitted,

Bill Schuette
Attorney General

John J. Bursch (P57679)
Solicitor General
Counsel of Record

Matthew Schneider (P62190)
Chief Legal Counsel


s/Margaret A. Nelson (P30342)
s/Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants–Appellants
P.O. Box 30754
Lansing, MI  48909
(517) 373-6889

Dated:  July 19, 2013.

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

EXHIBIT 1

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

THE GENERAL RETIREMENT SYSTEM
OF THE CITY OF DETROIT, and THE
POLICE AND FIRE RETIREMENT
SYSTEM OF THE CITY OF DETROIT,

*Gracie Webster*
*and Veronica Thomas*

Plaintiffs,

Case No. ~~13-768-CZ~~  *13-000734-CZ*
*C30*

vs.  *State of Michigan*

Hon. ~~KEVYN D. ORR, in his official capacity as the~~
EMERGENCY MANAGER OF THE CITY OF
~~DETROIT,~~ and RICHARD SNYDER, in his
official capacity as the GOVERNOR OF THE
STATE OF MICHIGAN, *and Andy Dillon,*

Hon. *Rosemarie*
*(Aquilina*

*Treasurer in his Official Capacity*

Defendants.

Ronald A. King (P45088)
Aaron O. Matthews (P64744)
Michael J. Pattwell (P72419)
CLARK HILL PLC
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys for Plaintiffs

*John R Canzano P30417*
*McKnight, McClow, Canzano Smith*
*& Radtke P C*
*400 Galleria Oficenter*

## TEMPORARY RESTRAINING ORDER

At a session of said Court, held in the City of
Lansing, County of Ingham, State of Michigan
on ___18 July 13___  *and having appeared*

PRESENT: HON. _Rosemarie E Aquilina_  *during the hearing in 13-000734*
CIRCUIT COURT JUDGE  *for a TRO*

This matter having come before the Court on Plaintiffs' Complaint with verification and
*Declaratory Judgment and Preliminary Injunction,*
~~Ex Parte~~ Motion for a Temporary Restraining Order; the Court being fully advised in the

premises; Plaintiffs having shown a likelihood of success on the merits of the claims in

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

Plaintiffs' Complaint; Plaintiff having adequately shown that a failure to immediately issue a Temporary Restraining Order will cause irreparable injury to Plaintiffs by permitting the Governor and the Emergency Manager ("Defendants") to authorize and file a Chapter 9 bankruptcy petition wherein Plaintiffs' accrued financial benefits will be impaired prior this Court's scheduled preliminary injunction hearing on Monday, July 22, 2013; and the Court being otherwise fully informed in the premises and finding good cause:

IT IS HEREBY ORDERED that Plaintiffs' Motion is granted; *which has already occurred*

IT IS FURTHER ORDERED that Defendants are immediately and temporarily enjoined and restrained from taking any action (including the authorization of an unconditional Chapter 9 bankruptcy proceeding for the City of Detroit and/or the filing of a Chapter 9 bankruptcy *or taking any further action with respect to any filing* petition) that may: (i) cause the accrued financial benefits of the Retirement Systems or their participants from in any way being diminished or impaired as mandated by Article IX, section 24, of the Michigan Constitution, or (ii) otherwise abrogate Article IX, section 24, of the Michigan Constitution;

IT IS FURTHER ORDERED that the Court shall hold a hearing on ___*July 22*___, 2013 at *9:00 AM* whereby Defendants shall show cause why a *Declaratory Judgment and/or* Preliminary Injunction shall not issue; and

IT IS FURTHER ORDERED that this temporary restraining order shall remain in full force and effect until ___*further order of the Court*___ ~~2013 at 5:00 p.m.~~

IT IS SO ORDERED.

*Rosemarie E Aquilina*
CIRCUIT COURT JUDGE   *P37670*

DATE: *18 July 13*

TIME: *4:25 p.m.*

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

# EXHIBIT 2

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

        Plaintiffs,

vs

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

        Defendants.

Case No. 13-734-CZ

Hon. CLINTON CANADY III

_____/

JOHN R. CANZANO (P30417)
McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com

_____/

A civil action between these parties or
other parties arising out of the transaction
or occurrence alleged in the Complaint has
been previously filed in this Court,
where it was given docket number 13-729-CA
and was assigned to Judge Aquilina.
The action remains pending.

## VERIFIED COMPLAINT FOR
## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

## NATURE OF ACTION

1.    This action seeks a declaratory judgment that the "Local Financial Stability and

Choice Act," 2012 PA 436, MCL 141.1541 *et seq* ("PA 436") is unconstitutional and in violation of

Article IX Section 24 of the Michigan Constitution because PA 436 permits accrued pension benefits to be diminished or impaired by bankruptcy proceedings in direct contravention of the Constitution. This action also seeks a preliminary and/or final injunction enjoining the Governor and/or the State Treasurer from authorizing a bankruptcy proceeding permitting an unconstitutional diminishment or impairment of accrued pension benefits under PA 436.

## PARTIES, JURISDICTION AND VENUE

2.     Plaintiff Gracie Webster is a retiree from the City of Detroit. She retired in 2000 and is receiving a pension benefit under the City of Detroit's General Retirement System Pension Plan. She resides in Detroit and is a citizen of the State of Michigan.

3.     Plaintiff Veronica Thomas is an employee of the City of Detroit. She has worked for the City for 17 years. She is a participant in the City of Detroit's General Retirement System Pension Plan. Although she has not yet retired, based on her years of service Plaintiff Thomas has earned the right to an accrued vested pension benefit under the terms of the pension plan.

4.     Defendant State of Michigan is a governmental entity and sovereign state of the United States, retaining all powers reserved to it under the 10th Amendment to the United States Constitution.

5.     Defendant Richard Snyder is the Governor of the State of Michigan acting in his official capacity.

6.     Defendant Andy Dillon is Treasurer of the State of Michigan acting in his official capacity.

7.     The Governor may delegate his duties under Section 9 of PA 436, MCL 141.1549 to the State Treasurer.

8.     This court has jurisdiction under MCL 600.6419(4), which provides for the jurisdiction of circuit courts in proceedings for declaratory or equitable relief against the State, and

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

MCL 600.605, which provides original jurisdiction in the circuit courts.

9.    Venue is proper in this court under MCL 600.1621(a), because Defendants conduct business in Ingham County.

## COUNT I: DECLARATORY JUDGMENT

**PA 436 Is Unconstitutional Because It Permits Accrued Pension Benefits To Be Diminished Or Impaired In Direct Violation Of Article IX, Section 24 Of The Michigan Constitution**

10.    Article IX Section 24 of the Michigan Constitution provides in pertinent part:

> The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.

11.    PA 436 was enacted by the Michigan Legislature on December 28, 2012 and became effective March 28, 2013.

12.    Among the purposes of PA 436, as stated in its preamble, are to "prescribe remedial measures to address a financial emergency within a local unit of government;" "to prescribe the powers and duties of an emergency manager for a local unit of government;" and "to provide a process by which a local unit of government . . . may file for bankruptcy."

13.    On March 14, 2013, Defendant Snyder appointed Kevyn Orr as Emergency Financial Manager for the City of Detroit, pursuant to 1990 PA 72, MCL 141.1201 *et seq* ("PA 72"). PA 436 is a successor statute to, and expressly repeals, PA 72.

14.    Pursuant to Sec 9(10) of PA 436, MCL 141.1549(10), Kevyn Orr, as an emergency financial manager appointed under former 1990 PA 72 "and serving immediately prior to the effective date of this act, shall be considered an emergency manager under this act [PA 436] and shall continue under this act to fulfill his or her powers and duties."

15.    Chapter 9 of the U.S. Bankruptcy Code, 11 USC §§901 *et seq*, provides a process by

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

which a municipality may file for bankruptcy and become a debtor under Chapter 9 in federal bankruptcy court.

16.  However, in order to protect state sovereignty and in recognition of federalism principles under the 10th Amendment to the U.S. Constitution, Chapter 9 of the Bankruptcy Code prohibits municipalities from filing for bankruptcy unless the municipality "is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter." Absent such authorization, federal bankruptcy courts have no jurisdiction under Chapter 9 over a municipality as a debtor. 11 USC §109(c)(2). See *Ashton v Cameron County Water Improvement Dist No 1*, 298 US 513; 56 S Ct 892; 80 L Ed 1309 (1936); and *United States v Bekins*, 304 US 27, 58 S Ct 811; 82 L Ed 1137 (1938).

17.  Section 18 of PA 436, MCL 141.1558, specifically authorizes a local unit of government to become a debtor in a Chapter 9 bankruptcy proceeding if the emergency manager for the local government recommends to the Governor and the State Treasurer that the local government be authorized to proceed under Chapter 9, and if the Governor approves the recommendation by informing the emergency manager and State Treasurer in writing of his decision.

18.  PA 436 nowhere requires that in considering whether to approve an emergency manager's recommendation to proceed under Chapter 9, the Governor shall not approve such recommendation if accrued pension benefits may be diminished or impaired in violation of Article IX Section 24 of the Michigan Constitution.

19.  Accordingly, because PA 436 does not prohibit a municipality from proceeding under Chapter 9 of the U.S. Bankruptcy Code if accrued pension benefits may be unconstitutionally diminished or impaired , PA 436 is unconstitutional on its face in violation of Article IX Section 24 of the Michigan Constitution.

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

20. Section 11 of PA 436, MCL 141.1551, provides that "an emergency manager shall develop and may amend a written financial operating plan for the local government [and that] [t]he financial and operating plan shall provide for . . . [t]he timely deposit of required payments to the pension fund for the local government or in which the local government participates."

21. On May 12, 2013, Emergency Manager Orr issued a financial and operating plan pursuant to Section 11 of PA 436. (Available at www.freep.com/assets/freep/pdf/C4205233512.pdf.) The plan does not schedule the "timely deposit of required payments" to the pension funds as required by Section 11 of PA 436, but instead notes that payments have been deferred to manage a liquidity crisis.

22. On June 14, 2013, Emergency Manager Orr issued a "Proposal for Creditors" in which he presents various restructuring options. (Available at http://www.freep.com/assets/freep/pdf/C4206913614.pdf.) Nowhere in this document does Emergency Manager Orr indicate any intent to comply with Article IX Sec 24 of the Michigan Constitution. Instead, in direct contravention of the Michigan Constitution, the proposal expressly states that *"there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons."*

23. Emergency Manager Orr has publicly threatened, in a June 14 interview with the Detroit Free Press Editorial Board, that vested pension benefits will be abrogated in a Chapter 9 proceeding authorized by the Governor pursuant to PA 436, and that any state law protecting vested pension benefits is "not going to protect" retirees or employees with vested pension benefits in bankruptcy court. (See www.freep.com/article/20130616/OPINION05/306160052/kevyn-orr-detroit-emergency-manager-creditors-fiscal-crisis.)

24. Article IX Section 24 of the Michigan Constitution is such a state law, which Emergency Manager Orr has asserted will "not . . . protect" vested pension benefits.

25. Under PA 436, the only way Emergency Manager Orr could impose his desired "significant cuts in accrued, vested pension amounts for both active and currently retired persons" is through a Chapter 9 bankruptcy filing.

26. Plaintiffs are entitled to a declaratory judgment that PA 436 is unconstitutional under Article IX Section 24 of the Michigan Constitution because PA 436 does not prohibit the Governor from authorizing a Chapter 9 bankruptcy filing which threatens to unconstitutionally diminish or impair the Plaintiffs' accrued pension benefits, and a final judgment ordering that Defendant Snyder and/or Defendant Dillon not authorize a Chapter 9 filing which threatens to diminish or impair accrued pension benefits in violation of the Michigan Constitution.

27. This case presents an actual controversy entitling Plaintiffs to a declaratory judgment because the facts stated above indicate " an adverse interest necessitating the sharpening of the issues raised." *Lansing School Education Ass'n v Lansing Bd of Educ*, 487 Mich 349, 372 n20; 792 NW2d 686 (2010), quoting *Associated Builders and Contractors v Dep't of Consumer and Indus Servs Dir*, 472 Mich 117, 126; 693 NW2d 374 (2005). Plaintiffs are entitled to a declaratory judgment here "to obtain adjudication of rights before an actual injury occurs [and] to settle a matter before it ripens into a violation of the law . . ." *Rose v State Farm Mut Auto Ins Co*, 274 Mich App 291, 294; 732 NW2d 160 (2006).

28. Plaintiff's need for a Declaratory Judgment is urgent. Based on the above facts, a request by the Emergency Manager to proceed under Chapter 9 is imminent, because he has credibly threatened -- indeed, has given every indication -- that he intends to impair or diminish accrued pension benefits in contravention of Article IX Section 24 of the Michigan Constitution, and that Chapter 9 bankruptcy proceedings are the mechanism by which he can do so. Thus Plaintiffs' rights under the Michigan Constitution not to have their pension benefits "diminished or impaired" can

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

only be guaranteed if this Court acts *before* the Governor approves a request to proceed under Chapter 9. Moreover, Emergency Manager Orr's threats that he will unconstitutionally diminish or impair Plaintiffs' vested pension rights have themselves harmed Plaintiffs by instilling in Plaintiffs a reasonable fear that their constitutional rights will be trampled upon and, in the process, their future source of income drastically eroded.

29. Accordingly, Plaintiffs are entitled to a speedy hearing under MCR 2.605(D) on their request for declaratory relief.

## COUNT II: PRELIMINARY INJUNCTION

30. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 29 above.

31. Plaintiffs will suffer irreparable harm if Defendants Snyder and Dillon are not enjoined from authorizing the Emergency Manager to proceed under Chapter 9 of the U.S. Bankruptcy Code and thereby seeking to abrogate Plaintiffs' rights under the Michigan Constitution and the source of livelihood it guarantees them in a forum which the Emergency Manager contends does not protect those rights.

32. The harm to Plaintiffs absent injunctive relief outweighs the harm to Defendants if an injunction is granted because the Governor and Treasurer will not be harmed if they are enjoined from authorizing the Emergency Manager to file under Chapter 9.

33. Plaintiffs are likely to succeed on the merits.

34. There will be harm to the public interest absent an injunction, as the accrued vested pension rights of thousands of City of Detroit retirees and employees will be threatened with abrogation in violation of the Michigan Constitution.

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant the following relief:

A.    A declaratory judgment that PA 436 is unconstitutional in violation of Article IX Section 24 of the Michigan Constitution.

B.    A preliminary and/or permanent injunction enjoining Defendant Snyder and Defendant Dillon from authorizing the Detroit Emergency Manager to commence proceedings under Chapter 9 of the U.S. Bankruptcy Code.

C.    An award to Plaintiffs of their costs and expenses, including attorneys' fees, incurred in this action.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By:_____
John R. Canzano  (P30417)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com

Date: July 3, 2013

VERIFICATION

STATE OF MICHIGAN    )
                     )ss
COUNTY OF OAKLAND    )

John R. Canzano, being first duly sworn, deposes and states he is the attorney representing Plaintiffs herein; that he has read the foregoing verified complaint by him subscribed for and on

behalf of Plaintiffs; that he knows the contents thereof to be true except as to those matters stated upon information and belief, and as to those matters, he believes them to be true, and he is authorized to sign said Verified Complaint on behalf of Plaintiffs.

_____
John R. Canzano

Subscribed and sworn to before me this 3rd day of July 2013.

_____
Karen Ann Purslow, Notary Public
County of Oakland, State of Michigan
My Commission Expires:   April 19, 2014

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

# EXHIBIT 3

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM



STATE OF MICHIGAN
EXECUTIVE OFFICE
LANSING

RICK SNYDER
GOVERNOR

BRIAN CALLEY
LT. GOVERNOR

VIA HAND AND ELECTRONIC DELIVERY

July 18, 2013

Kevyn D. Orr
Emergency Manager
City of Detroit
Coleman A. Young Municipal Center
2 Woodward Ave., Suite 1126
Detroit, MI 48226

Andrew Dillon
State Treasurer
Michigan Department of Treasury
4th Floor Treasury Building
430 W. Allegan Street
Lansing, MI 48992

Re: Authorization to Commence Chapter 9 Bankruptcy Proceeding

Dear Mr. Orr and Mr. Dillon,

I have reviewed Mr. Orr's letter of July 16, 2013, requesting my approval of his recommendation to commence a bankruptcy proceeding for the City of Detroit under Chapter 9 of title 11 of the United States Code. As you know, state law requires that any such recommendation must first be approved by the Governor before the emergency manager may take that step. MCL 141.1558. For the reasons discussed below, I hereby approve that recommendation and authorize Mr. Orr to make such a filing.

### Current Financial Emergency

In reviewing Mr. Orr's letter, his Financial and Operating Plan, and his report to creditors, it is clear that the financial emergency in Detroit cannot be successfully addressed outside of such a filing, and it is the only reasonable alternative that is available. In other words, the City's financial emergency cannot be satisfactorily rectified in a reasonable period of time absent this filing.

I have reached the conclusion that this step is necessary after a thorough review of all the available alternatives, and I authorize this necessary step as a last resort to return this great City to financial and civic health for its residents and taxpayers. This decision comes in the wake of 60 years of decline for the City, a period in which reality was often

GEORGE W. ROMNEY BUILDING • 111 SOUTH CAPITOL AVENUE • LANSING, MICHIGAN 48909
www.michigan.gov

ignored. I know many will see this as a low point in the City's history. If so, I think it will also be the foundation of the City's future — a statement I cannot make in confidence absent giving the City a chance for a fresh start, without burdens of debt it cannot hope to fully pay. Without this decision, the City's condition would only worsen. With this decision, we begin to provide a foundation to rebuild and grow Detroit.

Both before and after the appointment of an emergency manager, many talented individuals have put enormous energy into attempting to avoid this outcome. I knew from the outset that it would be difficult to reverse 60 years of decline in which promises were made that did not reflect the reality of the ability to deliver on those promises. I very much hoped those efforts would succeed without resorting to bankruptcy. Unfortunately, they have not. We must face the fact that the City cannot and is not paying its debts as they become due, and is insolvent.

After reading Mr. Orr's letter, the Financial and Operating Plan, and the report to creditors, I have come to four conclusions.

1. Right now, the City cannot meet its basic obligations to its citizens.

2. Right now, the City cannot meet its basic obligations to its creditors.

3. The failure of the City to meet its obligations to its citizens is the primary cause of its inability to meet its obligations to its creditors.

4. The only feasible path to ensuring the City will be able to meet obligations in the future is to have a successful restructuring via the bankruptcy process that recognizes the fundamental importance of ensuring the City can meet its basic obligations to its citizens.

I will explain how I came to each conclusion.

**Inability to Meet Obligations to Its Citizens.** As Mr. Orr's Financial and Operating Plan and the June 14 Creditor Proposal have noted, the scale and depth of Detroit's problems are unique. The City's unemployment rate has nearly tripled since 2000 and is more than double the national average. Detroit's homicide rate is at the highest level in nearly 40 years, and it has been named as one of the most dangerous cities in America for more than 20 years. Its citizens wait an average of 58 minutes for the police to respond to their calls, compared to a national average of 11 minutes. Only 8.7% of cases are solved, compared to a statewide average of 30.5%. The City's police cars, fire trucks, and ambulances are so old that breakdowns make it impossible to keep up the fleet or properly carry out their roles. For instance, only a third of the City's ambulances were in service in the first quarter of 2013. Similarly, approximately 40% of the City's street lights were not functioning in that quarter and the backlog of complaints is more than 3,300 long. Having large swaths of largely abandoned structures — approximately 78,000 — creates additional public safety problems and reduces the quality of life in the City. Mr. Orr is correct that meeting the obligations the City has to

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

its citizens to provide basic services requires more revenue devoted to services, not less.

**Inability to Meet Obligations to Its Creditors.** The City has more than $18 billion in accrued obligations. A vital point in Mr. Orr's letter is that Detroit tax rates are at their current legal limits, and that even if the City was legally able to raise taxes, its residents cannot afford to pay additional taxes. Detroiters already have a higher tax rate than anywhere in Michigan, and even with that revenue the City has not been able to keep up with its basic obligations, both to its citizens and creditors. Detroit simply cannot raise enough revenue to meet its current obligations, and that is a situation that is only projected to get worse absent a bankruptcy filing.

**Failure to Meet Obligations to Citizens Creates Failure to Meet Obligations to Creditors.** Mr. Orr's letter and prior report put in stark reality the dramatic impact of the City's plummeting population. While many who love Detroit still live there, many other Detroiters at heart could not justify the sacrifice of adequate services. The City's population has declined 63% from its peak, including a 28% decline since 2000. That exodus has brought Detroit to the point that it cannot satisfy promises it made in the past. A decreasing tax base has made meeting obligations to creditors impossible. Mr. Orr is correct when he says the City cannot raise the necessary revenue through tax increases, and it cannot save the necessary revenue through reducing spending on basic services. Attempts to do so would only decrease the population and tax base further, making a new round of promises unfulfillable.

**Only One Feasible Path Offers a Way Out.** The citizens of Detroit need and deserve a clear road out of the cycle of ever-decreasing services. The City's creditors, as well as its many dedicated public servants, deserve to know what promises the City can and will keep. The only way to do those things is to radically restructure the City and allow it to reinvent itself without the burden of impossible obligations. Despite Mr. Orr's best efforts, he has been unable to reach a restructuring plan with the City's creditors. I therefore agree that the only feasible path to a stable and solid Detroit is to file for bankruptcy protection.

The past weeks have reaffirmed my confidence that Mr. Orr has the right priorities when it comes to the City of Detroit. I am reassured to see his prioritization of the needs of citizens to have improved services. I know we share a concern for the public employees who gave years of service to the City and now fear for their financial future in retirement, and I am confident that all of the City's creditors will be treated fairly in this process. We all believe that the City's future must allow it to make the investment it needs in talent and in infrastructure, all while making only the promises it can keep. Let us remain in close communication regarding measures Mr. Orr might take so we can discuss the possible impacts that might occur both within and outside of the City.

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

July 18, 2013

## Contingencies

2012 PA 436 provides that my approval of the recommendation to commence a Chapter 9 proceeding may place contingencies on such a filing. MCL 141.1558(1). I am choosing not to impose any such contingencies today. Federal law already contains the most important contingency – a requirement that the plan be legally executable. 11 USC 943(b)(4).

## Conclusion

In conclusion, I find Mr. Orr's Recommendation Letter to be persuasive, especially in conjunction with his prior reports laying out the level of services the City can provide and its financial ability to meet its obligations to creditors. I am also convinced that Mr. Orr has exercised his best efforts to arrive at a restructuring plan with the City's creditors outside of bankruptcy, to no avail. Given these facts, the only feasible path to sustainability for the City of Detroit is a filing under chapter 9 of the bankruptcy code. Therefore, I hereby approve Mr. Orr's recommendation and authorize the emergency manager to make such a filing on behalf of the City of Detroit and to take all actions that are necessary and appropriate toward that end.

Sincerely,

Richard D. Snyder
Governor
State of Michigan

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

EXHIBIT 4

**UNITED STATES BANKRUPTCY COURT**
Eastern District of Michigan

In re:

City of Detroit, Michigan,                                          Case No. 13-_____

_____ Debtor.              /

## BANKRUPTCY PETITION COVER SHEET

(The debtor must complete and file this form with the petition in every bankruptcy case. Instead of filling in the boxes on the petition requiring information on prior and pending cases, the debtor may refer to this form.)

### Part 1

"Companion cases," as defined in L.B.R. 1073-1(b), are cases involving any of the following: (1) The same debtor; (2) A corporation and any majority shareholder thereof; (3) Affiliated corporations; (4) A partnership and any of its general partners; (5) An individual and his or her general partner; (6) An individual and his or her spouse; or (7) Individuals or entities with any substantial identity of financial interest or assets.

Has a "companion case" to this case ever been filed at any time in this district or any other district?  Yes ___  No  **X**
(If yes, complete Part 2.)

### Part 2

For each companion case, state in chronological order of cases:

*Not applicable*

If the present case is a Chapter 13 case, state for each companion case:

*Not applicable*

### Part 3 - In a Chapter 13 Case Only

The Debtor(s) certify, re: 11 U.S.C. § 1328(f):                    *Not Applicable*
[indicate which]

☐ Debtor(s) received a discharge issued in a case filed under Chapter 7, 11, or 12 during the 4-years before filing this case.

☐ Debtor(s) did not receive a discharge issued in a case filed under Chapter 7, 11, or 12 during the 4-years before filing this case.

☐ Debtor(s) received a discharge in a Chapter 13 case filed during the 2-years before filing this case.

☐ Debtor(s) did not receive a discharge in a Chapter 13 case filed during the 2-years before filing this case.

I declare under penalty of perjury that I have read this form and that it is true and correct to the best of my information and belief.

Kevyn D. Orr
Emergency Manager
City of Detroit

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, MI 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY OF DETROIT, MICHIGAN

Date: July 18, 2013

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

13-53846-tjt   Doc 1221-2   Filed 10/17/13   Entered 10/17/13 14:22:01   Page 28 of 29
13-53846   Doc 1   Filed 07/18/13   Entered 07/18/13 16:06:22   Page 1 of 16

B1 (Official Form 1) (04/13)

VOLUNTARY PETITION

| Name of Debtor (if individual, enter Last, First, Middle): **City of Detroit, Michigan** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all): **38-6004606** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State): **2 Woodward Avenue Suite 1126 Detroit, Michigan** ZIP CODE **48226** | Street Address of Joint Debtor (No. and Street, City, and State): ZIP CODE |
| County of Residence or of the Principal Place of Business: **Wayne** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): ZIP CODE | Mailing Address of Joint Debtor (if different from street address): ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above): | ZIP CODE |

### Type of Debtor
(Form of Organization)
(Check one box.)

- [ ] Individual (includes Joint Debtors) *See Exhibit D on page 2 of this form.*
- [ ] Corporation (includes LLC and LLP)
- [ ] Partnership
- [x] Other (If debtor is not one of the above entities, check this box and state type of entity below.) **Municipality**

### Nature of Business
(Check one box.)

- [ ] Health Care Business
- [ ] Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)
- [ ] Railroad
- [ ] Stockbroker
- [ ] Commodity Broker
- [ ] Clearing Bank
- [x] Other

### Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box.)

- [ ] Chapter 7
- [x] Chapter 9
- [ ] Chapter 11
- [ ] Chapter 12
- [ ] Chapter 13
- [ ] Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- [ ] Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

### Chapter 15 Debtors

Country of debtor's center of main interests:

Each country in which a foreign proceeding by, regarding, or against debtor is pending:

### Tax-Exempt Entity
(Check box, if applicable.)

- [ ] Debtor is a tax-exempt organization under title 26 of the United States Code (the Internal Revenue Code).

### Nature of Debts
(Check one box.)

- [ ] Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
- [x] Debts are primarily business debts.

### Filing Fee (Check one box.)

- [x] Full Filing Fee attached.
- [ ] Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- [ ] Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

### Chapter 11 Debtors

**Check one box:**
- [ ] Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- [ ] Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

**Check if:**
- [ ] Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 *(amount subject to adjustment on 4/01/16 and every three years thereafter).*

**Check all applicable boxes:**
- [ ] A plan is being filed with this petition.
- [ ] Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

### Statistical/Administrative Information

THIS SPACE IS FOR COURT USE ONLY

- [x] Debtor estimates that funds will be available for distribution to unsecured creditors.
- [ ] Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

Estimated Number of Creditors

| [ ] 1-49 | [ ] 50-99 | [ ] 100-199 | [ ] 200-999 | [ ] 1,000-5,000 | [ ] 5,001-10,000 | [ ] 10,001-25,000 | [ ] 25,001-50,000 | [ ] 50,001-100,000 | [x] Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets

| [ ] $0 to $50,000 | [ ] $50,001 to $100,000 | [ ] $100,001 to $500,000 | [ ] $500,001 to $1 million | [ ] $1,000,001 to $10 million | [ ] $10,000,001 to $50 million | [ ] $50,000,001 to $100 million | [ ] $100,000,001 to $500 million | [ ] $500,000,001 to $1 billion | [x] More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities

| [ ] $0 to $50,000 | [ ] $50,001 to $100,000 | [ ] $100,001 to $500,000 | [ ] $500,001 to $1 million | [ ] $1,000,001 to $10 million | [ ] $10,000,001 to $50 million | [ ] $50,000,001 to $100 million | [ ] $100,000,001 to $500 million | [ ] $500,000,001 to $1 billion | [x] More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM