| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s):<br>**City of Detroit, Michigan** | |
|---|---|---|
| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.) | | |
| Location<br>Where Filed: | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |
| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.) | | |
| Name of Debtor: | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A**<br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐  Exhibit A is attached and made a part of this petition. | **Exhibit B**<br>(To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X _____<br>Signature of Attorney for Debtor(s)        (Date) |
|---|---|

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☒  Yes, and Exhibit C is attached and made a part of this petition.

☐  No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐  Exhibit D, completed and signed by the debtor, is attached and made a part of this petition.

If this is a joint petition:

☐  Exhibit D, also completed and signed by the joint debtor, is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☒  Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐  There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐  Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐  Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐  Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐  Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐  Debtor certifies that he/she has served the landlord with this certification. (11 U.S.C. § 362(l)).

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

B1 (Official Form 1) (04/13)

**Name of Debtor(s):** City of Detroit, Michigan

| **Voluntary Petition** |
| --- |
| *(This page must be completed and filed in every case.)* |

## Signatures

<table>
<tr><td>

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
   Signature of Debtor

X _____
   Signature of Joint Debtor

   Telephone Number (if not represented by attorney)

   Date

</td><td>

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
   (Signature of Foreign Representative)

   (Printed Name of Foreign Representative)

   Date

</td></tr>
<tr><td>

**Signature of Attorney***

X _____
   Signature of Attorney for Debtor(s)

David G. Heiman    Bruce Bennett    Jonathan S. Green
Heather Lennox    JONES DAY    Stephen S. LaPlante
JONES DAY    555 South Flower Street    MILLER, CANFIELD
North Point    Fiftieth Floor    PADDOCK AND STONE,
901 Lakeside Avenue    Los Angeles, CA 90071    P.L.C.
Cleveland, OH 44114    Tel: (213) 243-2382    150 West Jefferson
Tel: (216) 586-3939    Fax: (213) 243-2539    Suite 2500
Fax: (216) 579-0212    bbennett@jonesday.com    Detroit, MI 48226
dgheiman@jonesday.com       Tel: (313) 963-6420
hlennox@jonesday.com       Fax: (313) 496-7500
                                    green@millercanfield.com
                                    laplante@millercanfield.com

July 18, 2013
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

</td><td>

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

Printed Name and title, if any, of Bankruptcy Petition Preparer

Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

Address

X _____
   Signature

   Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

</td></tr>
<tr><td colspan="2">

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
   Signature of Authorized Individual

   Kevyn D. Orr
   Printed Name of Authorized Individual

   Emergency Manager, City of Detroit
   Title of Authorized Individual

   July 18, 2013
   Date

</td></tr>
</table>

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

B 1C (Official Form 1, Exhibit C) (9/01)

*[If, to the best of the debtor's knowledge, the debtor owns or has possession of property that poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety, attach this Exhibit "C" to the petition.]*

# UNITED STATES BANKRUPTCY COURT

### Eastern District of Michigan

| | | |
|---|---|---|
| In re   City of Detroit, Michigan,                , | ) | Case No.   13-_____ |
|                         Debtor. | ) | |
| | )' | |
| | ) | Chapter   9 |

## EXHIBIT "C" TO VOLUNTARY PETITION

1. Identify and briefly describe all real or personal property owned by or in possession of the debtor that, to the best of the debtor's knowledge, poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety (attach additional sheets if necessary):

Certain properties owned by City of Detroit, Michigan (the "City") have been (a) identified by the City as being structurally unsound and in danger of collapse and (b) scheduled for demolition (collectively, the "Demolition Properties"). The Demolition Properties may pose a threat of imminent harm to public health and/or safety. A list of the Demolition Properties is attached hereto as Schedule 1.

To its knowledge, the City currently does not own any property that is a Superfund Site as designated by the United States Environmental Protection Agency. The City currently owns (in whole or in part) various so-called "Brownfields properties" (collectively, the "Brownfields Properties") regulated by the Michigan Department of Environmental Quality. Currently, one or more private parties (rather than the City) are addressing any identified environmental conditions that might be present at the Brownfields Properties. To the City's knowledge, none of the Brownfields Properties are alleged to pose a threat of imminent and identifiable harm to the public health or safety. A representative list of certain Brownfields Properties is attached hereto as Schedule 2.

In addition to the foregoing, the City owns or is possession of approximately 60,000 parcels of land within the City's geographic boundaries and more than 7,000 vacant structures that are not designated as Demolition Properties or Brownfields Properties (collectively, the "Blighted Properties"). It is possible that some of the Blighted Properties could pose a threat to public health or safety. Although the City is not aware of any Blighted Properties currently posing a threat of "imminent and identifiable harm," the City notes the existence of these properties on this Exhibit C out of an abundance of caution.

2. With respect to each parcel of real property or item of personal property identified in question 1, describe the nature and location of the dangerous condition, whether environmental or otherwise, that poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety (attach additional sheets if necessary):

See attached Schedule 1 with respect to the Demolition Properties and the attached Schedule 2 with respect to the Brownfields Properties.

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

# SCHEDULE 1

## City of Detroit, Michigan Demolition Properties

| Street Address | Property Type | Street Address | Property Type |
|---|---|---|---|
| 3922 14th | Residential | 20245 Derby | Residential |
| 3654 30th | Residential | 125 Dey | Residential |
| 12032 Abington | Residential | 14190 Dolphin | Residential |
| 2668 Anderdon | Residential | 229 Edmund Pl. | Commercial |
| 821 Anderson | Commercial | 3333 Edsel | Residential |
| 13501 Appoline | Residential | 203 Erskine | Residential |
| 7593 Arcola | Residential | 209 Erskine | Residential |
| 14125 Ardmore | Residential | 4417 Ewers | Residential |
| 13476 Arlington | Residential | 19332 Exeter | Residential |
| 13544 Arlington | Residential | 19339 Exeter | Residential |
| 10384 Aurora | Residential | 20467 Exeter | Residential |
| 2457 Beaubien | Commercial | 1731 Fischer | Residential |
| 2486 Beaubien | Residential | 13556 Fleming | Residential |
| 14371 Bentler | Residential | 7666 W. Fort | Commercial |
| 5317 Bewick | Residential | 5334 French Rd. | Residential |
| 19411 Blake | Residential | 6007 Frontenac | Commercial |
| 19700 Bloom | Residential | 18627 Gable | Residential |
| 6072 Braden | Residential | 3727 Garland | Residential |
| 9665 Broadstreet | Residential | 3917 Garland | Residential |
| 9616 Bryden | Residential | 4466 Garland | Residential |
| 6810 Bulwer | Commercial | 4470 Garland | Residential |
| 1454 Burlingame | Residential | 4003 Gilbert | Residential |
| 13469 Caldwell | Residential | 12511 Glenfield | Residential |
| 2009 Campbell | Residential | 14232 Goddard | Residential |
| 14203 E. Canfield | Residential | 14239 Goddard | Residential |
| 19221 Cardoni | Residential | 11648 Grandmont | Residential |
| 19324 Carrie | Residential | 5801 Grandy [1] | Commercial |
| 7626 Central | Residential | 5801 Grandy [2] | Commercial |
| 2535 Chalmers | Residential | 2937 Grant | Residential |
| 8115 Chamberlain | Residential | 5589 Guilford | Residential |
| 13199 Charest | Residential | 222 S. Harbaugh | Residential |
| 20190 Charleston | Residential | 2900 Harding | Residential |
| 3164 Charlevoix | Commercial | 8815 Harper | Commercial |
| 5083 Chatsworth | Residential | 17226 Hasse | Residential |
| 5717 Chene | Commercial | 7975 Hathon | Residential |
| 3636 Cicotte | Residential | 19227 Havana | Residential |
| 3032 Clements | Residential | 19309 Havana | Residential |
| 1117 Concord | Residential | 19321 Havana | Residential |
| 6628 Crane | Residential | 19397 Havana | Residential |
| 1243 Crawford | Residential | 7886 Helen | Residential |
| 2012 Dalzelle | Residential | 6200 Hereford | Residential |
| 20258 Danbury | Residential | 9905 Herkimer | Residential |
| 7787 Dayton | Residential | 1955 Highland | Residential |
| 8475 Dearborn | Residential | 1778 Holcomb | Residential |
| 1950 Dearing | Residential | 4407 Holcomb | Residential |
| 1956 Dearing | Residential | 4412 Holcomb | Residential |
| 1960 Dearing | Residential | 7202 Holmes | Residential |
| 2027 Dearing | Residential | 9278 Holmur | Residential |
| 8839 Dennison | Residential | 19925 Hoover | Commercial |

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

| Street Address | Property Type |
|---|---|
| 6360 Horatio | Residential |
| 15518 Idaho [1] | Commercial |
| 15518 Idaho [2] | Commercial |
| 12748 Ilene | Residential |
| 20136 Ilene | Residential |
| 15778 Iliad | Residential |
| 5290 Ivanhoe | Residential |
| 6435 Julian | Commercial |
| 8545 Kenney | Residential |
| 13989 Kentucky | Residential |
| 13301 Kercheval | Commercial |
| 5925 Kopernick | Residential |
| 17137 Lamont | Residential |
| 17208 Lamont | Residential |
| 3839 Lanman | Residential |
| 5206 Lawndale | Residential |
| 2194 Lemay | Residential |
| 3958 Lemay | Residential |
| 1601 Liddesdale | Residential |
| 1029 Liebold | Residential |
| 5065 Lillibridge | Residential |
| 15744 Livernois | Commercial |
| 12558 Longview | Residential |
| 12767 Loretto | Residential |
| 8881 Louis | Residential |
| 13441 Lumpkin | Residential |
| 14242 Mack (a/k/a 3181 Lakewood) | Commercial |
| 12368 MacKay | Residential |
| 12393 MacKay | Residential |
| 12398 MacKay | Residential |
| 13569 MacKay | Residential |
| 13909 MacKay | Residential |
| 13927 MacKay | Residential |
| 13952 MacKay | Residential |
| 13977 MacKay | Residential |
| 13983 MacKay | Residential |
| 459 Manistique | Residential |
| 12000 Mansfield | Residential |
| 8129 Marcus | Residential |
| 4588 Marseilles | Residential |
| 9343 N. Martindale | Residential |
| 8320 Maxwell | Residential |
| 8326 Maxwell | Residential |
| 4766 McDougall | Commercial |
| 2122 Meade | Residential |
| 2420 Meade | Residential |
| 3697 Medbury | Residential |
| 11654 Meyers | Residential |
| 8911 Milner | Residential |
| 2652 Norman | Residential |
| 10002 Nottingham | Residential |

| Street Address | Property Type |
|---|---|
| 5115 Nottingham | Residential |
| 8811 Olivet | Residential |
| 8917 Otsego | Residential |
| 15799 Parkside | Residential |
| 18401 Pembroke | Residential |
| 11172 Promenade | Residential |
| 2101 Puritan | Commercial |
| 5807 Renville | Residential |
| 1957 Richton | Residential |
| 534 W. Robinwood | Residential |
| 6119 Rohns | Residential |
| 14381 Rosa Parks Blvd. | Unknown |
| 11735 Rutherford | Residential |
| 6835 Seminole | Residential |
| 5737 E. Seven Mile | Commercial |
| 2008 Sharon | Residential |
| 13422 Shields | Residential |
| 10201 Shoemaker | Commercial |
| 10956 Shoemaker | Commercial |
| 6750 Sparta | Residential |
| 14291 Spring Garden | Commercial |
| 4467 St. Clair | Residential |
| 6915 St. John | Residential |
| 7180 St. John | Residential |
| 18805 St. Louis | Commercial |
| 1928 Stanley | Residential |
| 12746 Strasburg | Residential |
| 8104 Thaddeus | Residential |
| 4832 Toledo | Residential |
| 6195 Townsend | Residential |
| 9778 Traverse | Residential |
| 17231 Trinity | Residential |
| 2634 Tuxedo | Residential |
| 2522-4 Tyler | Residential |
| 2660 Tyler | Residential |
| 9526 Van Dyke | Commercial |
| 2030 Vinewood | Residential |
| 5757 Vinewood | Commercial |
| 15451 Virgil | Residential |
| 15300 E. Warren (Bldgs. 101 & 102) | Commercial |
| 64 Watson | Commercial |
| 6414 Willette | Unknown |
| 4364 Woodhall | Residential |
| 11640 Woodmont | Residential |
| 12075 Woodmont | Residential |
| 12136 Woodmont | Residential |
| 12153 Woodmont | Residential |
| 11365 Yosemite | Residential |
| 11402 Yosemite | Residential |

13-53846-tjt   Doc 1221-3   Filed 10/17/13   Entered 10/17/13 14:22:01   Page 5 of 27
13-53846   Doc 1   Filed 07/18/13   Entered 07/18/13 16:06:22   Page 74 of 16

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

# SCHEDULE 2

## City of Detroit, Michigan Brownfields Properties

| Name of Site | Description |
|---|---|
| Former Detroit Coke Site | 7819 West Jefferson Avenue |
| Belleview Development (Uniroyal) Site | 600 East Jefferson. 43-acre former Uniroyal site located in the East Riverfront District, bounded by Jefferson Avenue (to the north), MacArthur Bridge (to the east), Detroit River (to the south) and Meldrum Street (to the west). |
| Riverside Park Site | 3085 West Jefferson Avenue. West Grand Boulevard and 24th Street along the Detroit River. |

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM



**EMERGENCY MANAGER**
**CITY OF DETROIT**

**ORDER No. 13**

**FILING OF A PETITION UNDER CHAPTER 9**
**OF TITLE 11 OF THE UNITED STATES CODE**

BY THE AUTHORITY VESTED IN THE EMERGENCY MANAGER
FOR THE CITY OF DETROIT
PURSUANT TO MICHIGAN'S PUBLIC ACT 436 OF 2012,
KEVYN D. ORR, THE EMERGENCY MANAGER,
ISSUES THE FOLLOWING ORDER:

*Whereas*, on March 28, 2013, Michigan Public Act 436 of 2012 ("PA 436") became effective and Kevyn D. Orr became the Emergency Manager (the "EM") for the City of Detroit (the "City") with all the powers and duties provided under PA 436; and

Pursuant to section 9(2) of PA 436, the EM "shall act for and in the place and stead of" the Detroit Mayor and City Council; and

Section 9(2) of PA 436 also grants the EM "broad powers in receivership to rectify the financial emergency and to assure the fiscal accountability of the [City] and the [City's] capacity to provide or cause to be provided necessary governmental services essential to the public health, safety, and welfare;" and

Pursuant to section 10(1) of PA 436, the EM may "issue to the appropriate local elected and appointed officials and employees, agents, and contractors of the local government the orders the [EM] considers necessary to accomplish the purposes of this act;" and

Section 18(1) of PA 436 provides that "[i]f, in the judgment of the [EM], no reasonable alternative to rectifying the financial emergency of the local government which is in receivership exists, then the [EM] may recommend to the governor and the

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

state treasurer that the local government be authorized to proceed under chapter 9" of title 11 of the United States Code (the "Bankruptcy Code"); and

Section 18(1) of PA 436 further provides that "[i]f the governor approves of the [EM's] recommendation, the governor shall inform the state treasurer and the emergency manager in writing of the decision.... Upon receipt of the written approval, the emergency manager is authorized to proceed under chapter 9 [of the Bankruptcy Code]. This section empowers the local government for which an emergency manager has been appointed to become a debtor under [the Bankruptcy Code], as required by section 109 of [the Bankruptcy Code], and empowers the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9" of the Bankruptcy Code; and

In accordance with section 18 of PA 436, the EM has recommended to the Governor of Michigan (the "Governor") and the Michigan State Treasurer (the "State Treasurer") that the City be authorized to proceed under chapter 9 of the Bankruptcy Code (the "Recommendation"); and

The Governor has provided the State Treasurer and the EM with his written approval of the Recommendation, a true and correct copy of which is attached hereto as Exhibit A, thereby authorizing the City to proceed under chapter 9.

**It is hereby ordered that:**

1. The City shall file a petition for relief under chapter 9 of the Bankruptcy Code (the "Petition") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court").

2. The City's Corporation Counsel, financial advisors, outside legal advisors and other officers and employees of the City, as applicable, are hereby authorized and directed, on behalf of and in the name of the City, to execute and verify the Petition and related Bankruptcy Court filings and perform any and all such acts as are reasonable, appropriate, advisable, expedient, convenient, proper or necessary to carry out this Order, as and to the extent directed by the EM or his designee.

3. If any component of this Order is declared illegal, unenforceable or ineffective in a legal or other forum or proceeding such component shall be deemed severable so that all other components contained in this Order shall remain valid and effective.

4. This Order is effective immediately upon the date of execution below.

5. This Order shall be distributed to the Mayor, City Council members and all department heads.

6. The EM may modify, rescind, or replace this Order at any time.

Dated: July 18, 2013                    By: _____
                                            Kevyn D. Orr
                                            Emergency Manager
                                            City of Detroit

cc:     State of Michigan Department of Treasury
        Mayor David Bing
        Members of Detroit City Council

3

# EXHIBIT A

## Governor's Written Approval of Recommendation

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM



STATE OF MICHIGAN
EXECUTIVE OFFICE
LANSING

RICK SNYDER
GOVERNOR

BRIAN CALLEY
LT. GOVERNOR

VIA HAND AND ELECTRONIC DELIVERY

July 18, 2013

Kevyn D. Orr
Emergency Manager
City of Detroit
Coleman A. Young Municipal Center
2 Woodward Ave., Suite 1126
Detroit, MI 48226

Andrew Dillon
State Treasurer
Michigan Department of Treasury
4th Floor Treasury Building
430 W. Allegan Street
Lansing, MI 48992

Re: Authorization to Commence Chapter 9 Bankruptcy Proceeding

Dear Mr. Orr and Mr. Dillon,

I have reviewed Mr. Orr's letter of July 16, 2013, requesting my approval of his recommendation to commence a bankruptcy proceeding for the City of Detroit under Chapter 9 of title 11 of the United States Code. As you know, state law requires that any such recommendation must first be approved by the Governor before the emergency manager may take that step. MCL 141.1558. For the reasons discussed below, I hereby approve that recommendation and authorize Mr. Orr to make such a filing.

### Current Financial Emergency

In reviewing Mr. Orr's letter, his Financial and Operating Plan, and his report to creditors, it is clear that the financial emergency in Detroit cannot be successfully addressed outside of such a filing, and it is the only reasonable alternative that is available. In other words, the City's financial emergency cannot be satisfactorily rectified in a reasonable period of time absent this filing.

I have reached the conclusion that this step is necessary after a thorough review of all the available alternatives, and I authorize this necessary step as a last resort to return this great City to financial and civic health for its residents and taxpayers. This decision comes in the wake of 60 years of decline for the City, a period in which reality was often

GEORGE W. ROMNEY BUILDING • 111 SOUTH CAPITOL AVENUE • LANSING, MICHIGAN 48909
www.michigan.gov

13-53846-tjt   Doc 1221-3   Filed 10/17/13   Entered 10/17/13 14:24:01   Page 11 of 27
13-53846   Doc 1   Filed 07/18/13   Entered 07/18/13 16:06:22   Page 13 of 16

ignored. I know many will see this as a low point in the City's history. If so, I think it will also be the foundation of the City's future – a statement I cannot make in confidence absent giving the City a chance for a fresh start, without burdens of debt it cannot hope to fully pay. Without this decision, the City's condition would only worsen. With this decision, we begin to provide a foundation to rebuild and grow Detroit.

Both before and after the appointment of an emergency manager, many talented individuals have put enormous energy into attempting to avoid this outcome. I knew from the outset that it would be difficult to reverse 60 years of decline in which promises were made that did not reflect the reality of the ability to deliver on those promises. I very much hoped those efforts would succeed without resorting to bankruptcy. Unfortunately, they have not. We must face the fact that the City cannot and is not paying its debts as they become due, and is insolvent.

After reading Mr. Orr's letter, the Financial and Operating Plan, and the report to creditors, I have come to four conclusions.

1. Right now, the City cannot meet its basic obligations to its citizens.

2. Right now, the City cannot meet its basic obligations to its creditors.

3. The failure of the City to meet its obligations to its citizens is the primary cause of its inability to meet its obligations to its creditors.

4. The only feasible path to ensuring the City will be able to meet obligations in the future is to have a successful restructuring via the bankruptcy process that recognizes the fundamental importance of ensuring the City can meet its basic obligations to its citizens.

I will explain how I came to each conclusion.

**Inability to Meet Obligations to its Citizens.** As Mr. Orr's Financial and Operating Plan and the June 14 Creditor Proposal have noted, the scale and depth of Detroit's problems are unique. The City's unemployment rate has nearly tripled since 2000 and is more than double the national average. Detroit's homicide rate is at the highest level in nearly 40 years, and it has been named as one of the most dangerous cities in America for more than 20 years. Its citizens wait an average of 58 minutes for the police to respond to their calls, compared to a national average of 11 minutes. Only 8.7% of cases are solved, compared to a statewide average of 30.5%. The City's police cars, fire trucks, and ambulances are so old that breakdowns make it impossible to keep up the fleet or properly carry out their roles. For instance, only a third of the City's ambulances were in service in the first quarter of 2013. Similarly, approximately 40% of the City's street lights were not functioning in that quarter and the backlog of complaints is more than 3,300 long. Having large swaths of largely abandoned structures -- approximately 78,000 -- creates additional public safety problems and reduces the quality of life in the City. Mr. Orr is correct that meeting the obligations the City has to

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

its citizens to provide basic services requires more revenue devoted to services, not less.

**Inability to Meet Obligations to Its Creditors.** The City has more than $18 billion in accrued obligations. A vital point in Mr. Orr's letter is that Detroit tax rates are at their current legal limits, and that even if the City was legally able to raise taxes, its residents cannot afford to pay additional taxes. Detroiters already have a higher tax rate than anywhere in Michigan, and even with that revenue the City has not been able to keep up with its basic obligations, both to its citizens and creditors. Detroit simply cannot raise enough revenue to meet its current obligations, and that is a situation that is only projected to get worse absent a bankruptcy filing.

**Failure to Meet Obligations to Citizens Creates Failure to Meet Obligations to Creditors.** Mr. Orr's letter and prior report put in stark reality the dramatic impact of the City's plummeting population. While many who love Detroit still live there, many other Detroiters at heart could not justify the sacrifice of adequate services. The City's population has declined 63% from its peak, including a 28% decline since 2000. That exodus has brought Detroit to the point that it cannot satisfy promises it made in the past. A decreasing tax base has made meeting obligations to creditors impossible. Mr. Orr is correct when he says the City cannot raise the necessary revenue through tax increases, and it cannot save the necessary revenue through reducing spending on basic services. Attempts to do so would only decrease the population and tax base further, making a new round of promises unfulfillable.

**Only One Feasible Path Offers a Way Out.** The citizens of Detroit need and deserve a clear road out of the cycle of ever-decreasing services. The City's creditors, as well as its many dedicated public servants, deserve to know what promises the City can and will keep. The only way to do those things is to radically restructure the City and allow it to reinvent itself without the burden of impossible obligations. Despite Mr. Orr's best efforts, he has been unable to reach a restructuring plan with the City's creditors. I therefore agree that the only feasible path to a stable and solid Detroit is to file for bankruptcy protection.

The past weeks have reaffirmed my confidence that Mr. Orr has the right priorities when it comes to the City of Detroit. I am reassured to see his prioritization of the needs of citizens to have improved services. I know we share a concern for the public employees who gave years of service to the City and now fear for their financial future in retirement, and I am confident that all of the City's creditors will be treated fairly in this process. We all believe that the City's future must allow it to make the investment it needs in talent and in infrastructure, all while making only the promises it can keep. Let us remain in close communication regarding measures Mr. Orr might take so we can discuss the possible impacts that might occur both within and outside of the City.

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

July 18, 2013

### Contingencies

2012 PA 436 provides that my approval of the recommendation to commence a Chapter 9 proceeding may place contingencies on such a filing. MCL 141.1558(1). I am choosing not to impose any such contingencies today. Federal law already contains the most important contingency – a requirement that the plan be legally executable. 11 USC 943(b)(4).

### Conclusion

In conclusion, I find Mr. Orr's Recommendation Letter to be persuasive, especially in conjunction with his prior reports laying out the level of services the City can provide and its financial ability to meet its obligations to creditors. I am also convinced that Mr. Orr has exercised his best efforts to arrive at a restructuring plan with the City's creditors outside of bankruptcy, to no avail. Given these facts, the only feasible path to sustainability for the City of Detroit is a filing under chapter 9 of the bankruptcy code. Therefore, I hereby approve Mr. Orr's recommendation and authorize the emergency manager to make such a filing on behalf of the City of Detroit and to take all actions that are necessary and appropriate toward that end.

Sincerely,

Richard D. Snyder
Governor
State of Michigan

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

# EXHIBIT 5

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

      Plaintiffs,

Case No. 13-734-CZ
Hon. CANADY

vs

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

      Defendants.
                                          /

JOHN R. CANZANO (P30417)
McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com
                                          /

## MOTION FOR DECLARATORY JUDGMENT
## AND EXPEDITED HEARING PURSUANT TO MCR 2.605(D),
## OR IN THE ALTERNATIVE FOR PRELIMINARY INJUNCTION.

For the reasons stated in the attached brief, Plaintiffs request that this Court order an

expedited hearing and grant a declaratory judgment and permanent injunction, or, in the

alternative, a preliminary injunction in their favor.

                Respectfully submitted,

                McKNIGHT, McCLOW, CANZANO,
                SMITH & RADTKE, P.C.

                By: _____
                    John R. Canzano (P30417)
                    Attorneys for Plaintiffs
                    400 Galleria Officentre, Suite 117
                    Southfield, MI 48034
                    248-354-9650
                    jcanzano@michworklaw.com

Date: July 3, 2013

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

        Plaintiffs,

vs                                  Case No. 13-734-CZ
                                      Hon.   CANADY

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

        Defendants.

_____/

JOHN R. CANZANO (P30417)
McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com
_____/

### BRIEF IN SUPPORT OF MOTION FOR DECLARATORY JUDGMENT AND EXPEDITED HEARING PURSUANT TO MCR 2.605(D), OR IN THE ALTERNATIVE FOR PRELIMINARY INJUNCTION.

       This action seeks a declaratory judgment that the "Local Financial Stability and Choice Act," 2012 PA 436, MCL 141.1541 *et seq.* ("PA 436") is unconstitutional in violation of Article IX Section 24 of the Michigan Constitution, which expressly protects vested pension rights by requiring that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions . . *shall not be diminished or impaired . . .*"

Pursuant to MCR 2.605(D), "[t]he court may order a speedy hearing of an action for declaratory relief and may advance it on the calendar" in appropriate cases. This is such a case. Plaintiffs, a City of Detroit pensioner who retired 13 years ago, and a City of Detroit employee with 17 years of accrued vested service, are facing an imminent threat that their vested pension rights will be irreparably and permanently diminished and impaired in a Chapter 9 bankruptcy proceeding authorized by PA 436, in direct violation of Article IX Section 24 of the Michigan Constitution. In the alternative, Plaintiffs are seeking a preliminary injunction enjoining Defendant Governor Snyder and Defendant State Treasurer Dillon from authorizing a Chapter 9 bankruptcy under PA 436.

## FACTS

Plaintiffs incorporate herein the facts stated in the Verified Complaint. This case presents essentially a pure question of law. The pertinent facts are not in dispute.

Kevyn Orr currently serves as the Emergency Manager of the City of Detroit under PA 436. Under Section 18 of PA 436, Defendant Governor Snyder is empowered to authorize Orr to file for Chapter 9 bankruptcy on behalf of the City if the Governor approves the Emergency Manager's recommendation to do so.

On June 14, 2013, Emergency Manager Orr issued a "Proposal for Creditors" which expressly states that *"there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons."* The same day, Emergency Manager Orr publicly threatened, in an interview with the Detroit Free Press Editorial Board, that vested pension benefits will not be protected in a Chapter 9 proceeding authorized by the Governor pursuant to PA 436, and that any state laws protecting vested pension benefits will "not . . . protect" retirees in bankruptcy court. As the Emergency Manager stated in the interview:

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

Q. You said in this report that you don't believe there is an obligation under our state constitution to pay pensions if the city can't afford it?

A. The reason we said it that way is to quantify the bankruptcy question. We think federal supremacy trumps state law.

Q. Which the Ninth Circuit agrees with for now.

A. It is what it is - so we said that in a soft way of saying, "Don't make us go into bankruptcy." **If you think your state-vested pension rights, either as an employee or a retiree -** *that's not going to protect you.* **If we don't reach an agreement one way or the other, we feel fairly confident that the state federal law, federalism, will trump state law or negotiate. The irony of the situation is we might reach a deal with creditors quicker because employees and retirees think there is some benefit and that might force our hand. That might force a bankruptcy.** (Emphasis added.)

## LAW

Plaintiffs are entitled to a declaratory judgment that PA 436 is unconstitutional in violation of Article IX Section 24 of the Michigan Constitution, because PA 436 permits accrued pension benefits to be diminished or impaired in direct contravention of the Constitution. Article IX Section 24 provides that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof *which shall not be diminished or impaired* thereby." There could not be a more clear and plain constitutional mandate. Article IX Section 24 means what it says: *accrued pension benefits "shall not be diminished or impaired."* See, *AFT Michigan v State of Michigan*, 297 Mich App 597, 610; 825 NW2d 595 (2012); *Mt Clemens Firefighters Union, Local 838, IAFF v City of Mt Clemens,* 58 Mich App 635, 644; 228 NW2d 500 (1975). The Official Record of the 1963 Constitutional Convention further supports that no governmental entity or its officials can do anything to diminish or impair vested pension benefits:

This is a new section that requires that accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions be a

contractual obligation which **cannot diminished or impaired by the action of its officials or governing body.**

2 Official Record, Constitutional Convention 1961, p. 3402 (emphasis added).

Chapter 9 of the U.S. Bankruptcy Code, 11 USC §§901 *et seq.*, provides a process by which a municipality may file for bankruptcy. However, because of federalism concerns and to protect the states' sovereignty, Chapter 9 prohibits a municipality from filing for bankruptcy unless "specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter." 11 USC §109(c)(2). Indeed, many states simply do not authorize their municipalities to file for bankruptcy at all. Absent such authorization, federal bankruptcy courts have no jurisdiction under Chapter 9 over a municipality as a debtor. See *Ashton v Cameron County Water District No 1*, 298 US 513; 56 S Ct 892; 80 L Ed 1309 (1936); and *United States v Bekins*, 304 US 27; 58 S Ct 811; 82 L Ed 1137 (1938).

Section 18 of PA 436 authorizes a municipality to commence Chapter 9 bankruptcy proceedings if the emergency manager appointed under PA 436 recommends, and the Governor authorizes, that the municipality file for bankruptcy under Chapter 9.

Notably, PA 436 explicitly recognizes that accrued pension benefits shall not be diminished or impaired outside the bankruptcy context. But PA 436 nowhere requires that the Governor shall not authorize a Chapter 9 bankruptcy filing if accrued pension benefits may be diminished or impaired thereby in violation of Article IX Section 24. *For example*, Section 11 of PA 436 requires that an emergency manager develop a written financial and operating plan for the local government and that such plan "shall provide" for "the timely deposit of required payments to the pension fund for the local government." *For example*, Section 13 of PA 436 authorizes the emergency manager to eliminate the salary, wages or other compensation and

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

benefits of the chief administrative officer and members of the governing body of the local government, but expressly provides that "[t]his section does not authorize the impairment of vested pension benefits." *For example*, Section 12(m) of PA 436 authorizes an emergency manager under certain circumstances to be appointed as the sole trustee of a local pension board and to replace the existing trustees, and requires that "the emergency manager shall fully comply with . . . Section 24 of Article IX of the state constitution . . ." when acting as the sole trustee.

By contrast, Section 18 of PA 436, which empowers the Governor to authorize a municipality to file for bankruptcy under Chapter 9, *nowhere* requires that the Governor shall not authorize such filing if accrued pension benefits may be unconstitutionally diminished or impaired. Clearly, the Legislature understood and honored the constitutional mandate not to diminish or impair accrued pension benefits outside of bankruptcy. Just as clearly, the Legislature *omitted* any constitutional protection against the impairment or diminishment of accrued pension benefits when the Governor authorizes a Chapter 9 bankruptcy filing under Section 18 of PA 436. In other words, by expressly *including* the protection of Article IX Section 24 in various sections of the law, but not Section 18, PA 436 plainly *excludes* those protections from Section 18.[1] Accordingly, PA 436 is unconstitutional on its face because it does not prohibit a municipality from proceeding under Chapter 9 if accrued pension benefits may be unconstitutionally diminished or impaired, in violation of Article IX Section 24 of the Michigan Constitution.

Plaintiffs are entitled to a declaratory judgment that PA 436 is unconstitutional under Article IX Section 24 of the Michigan Constitution because PA 436 does not prohibit the

---

[1] This conclusion is supported by the traditional maxim *"expressio unius est exclusio alterius"* (to express one thing is to exclude another). *See, e.g., Smitter v Thornapple Twp*, ____ Mich ____, 2013 Mich Lexis 912, *19, n 34 (June 19, 2013); *Johnson v Recca*, 492 Mich 169, 176, n 4; 821 NW2d 520 (2012).

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

Governor from authorizing a Chapter 9 bankruptcy filing which threatens to unconstitutionally diminish or impair the Plaintiffs' accrued pension benefits.

Plaintiffs' need for a Declaratory Judgment is urgent. The facts show that a request by the Emergency Manager to proceed under Chapter 9 is imminent, because he has given every indication that he intends to impair or diminish accrued pension benefits in contravention of Article IX Section 24 of the Michigan Constitution. Plaintiff's' rights under the Michigan Constitution not to have their pension benefits "diminished or impaired" can only be guaranteed if this Court acts *before* the Governor approves a request to proceed under Chapter 9.

This case presents an actual controversy entitling Plaintiffs to a declaratory judgment because the facts indicate "an adverse interest necessitating the sharpening of the issues raised." *Lansing School Education Ass'n v Lansing Bd of Educ*, 487 Mich 349, 372 n20; 792 NW2d 686 (2010), quoting *Associated Builders and Contractors v Wilbur*, 472 Mich 117, 126; 693 NW2d 374 (2005). Plaintiffs are entitled to a declaratory judgment here "to obtain adjudication of rights *before* an actual injury occurs [and] to settle a matter *before* it ripens into a violation of the law . . ." *Rose v State Farm Mutual Auto Insurance Co*, 274 Mich App 291, 294; 732 NW2d 160 (2006). (emphasis supplied)

This case presents the classic case for declaratory relief. Plaintiffs cannot wait to protect their constitutional rights until after the Governor authorizes a Chapter 9 filing. "Declaratory relief is designed to give litigants access to courts to preliminarily determine their rights. . . . the court is not precluded from reaching issues before actual injuries or loses have occurred." *City of Detroit v State of Michigan*, 262 Mich App 542, 550-551; 686 NW2d 514 (2004), citing *Shavers v Attorney General*, 402 Mich 554, 588-589; 267 NW2d 72 (1978) (explaining that plaintiff's request for declaratory relief "does not rely on the state having already violated the zoning ordinance [but] rather properly requests a determination whether the state had the

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

authority to proceed as planned"). Moreover, the Emergency Manager is admittedly using the threat of bankruptcy to force vested pensioners and employees to accede to his attempts to diminish and impair their accrued benefits now. Thus the harm to Plaintiffs is both imminent and actual.

Under MCR 2.605(D), this Court can and should order a speedy hearing and advance this case on the calendar. The need is urgent. *See,* Longhofer, 3 *Michigan Court Rules Practice* §2605.7 at 390. (Speedy hearing under 2.605(D) "will be done most frequently in actions involving clear-cut legal issues of public importance, with no factual issues to be tried"). *See also, Kuhn v Department of Treasury,* 384 Mich 378, 386-387; 183 NW2d 796 (1971) ("moving party is entitled to an expeditious disposition by the courts so that the right . . . guaranteed by the constitution is not jeopardized."); *State Farm v Savickas,* 1998 Mich App Lexis 984 (1998) (trial court accelerated trial and entered judgment, as authorized by MCR 2.605(D)).

In the alternative, Plaintiffs are entitled to a preliminary injunction. In deciding whether to issue a preliminary injunction, the court must weigh the following factors:

> Whether (1) the moving party made [a] required demonstration of irreparable harm, (2) the harm to the applicant absent such an injunction outweighs the harm it would cause to the adverse party, (3) the moving party showed that it is likely to prevail on the merits, and (4) there will be harm to the public interest if an injunction is not issued.

First, Plaintiffs will be irreparably harmed if the Governor authorizes a Chapter 9 filing in which the Emergency Manager has stated he intends to diminish or impair vested pension benefits in violation of Article IX Section 24. Because bankruptcy may foreclose further options or financial relief, this is not a case where money damages could remedy the constitutional impairment of Plaintiff's pension rights. Second, the Governor and Treasurer will not suffer any harm if they are enjoined from authorizing a Chapter 9 bankruptcy that would violate the Constitution's protection for Detroit's vested pensioners and employees. "[I]f the plaintiff shows

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere its enjoinment." *Déjà vu of Nashville v Metro Gov't of Nashville and Davidson City*, 274 F3d 377, 400 (CA6, 2001). Third, for all the reasons stated above in support of a declaratory judgment, Plaintiffs are likely to succeed on the merits. Fourth, the public interest will be saved by upholding the Constitution's protection for thousands of long term City of Detroit retirees.

### CONCLUSION

Plaintiffs respectfully request that this Court grant a declaratory judgment and permanent injunction and/or preliminary injunction in their favor, as specified in the Verified Complaint.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By: _____
John R. Canzano (P30417)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com

Date: July 3, 2013

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

# EXHIBIT 6

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

    Plaintiffs,

    No. 13-784-CZ

    HON. ROSEMARIE AQUILINA

v

THE STATE OF MICHIGAN, RICHARD
SNYDER, as Governor of the State of
Michigan, and ANDY DILLON, as Treasurer
of the State of Michigan,

    Defendants.

    /

John R. Canzano (P30417)
McKnight, McClow, Canzano, Smith & Radtke,
P.C.
Attorney for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
(248) 354-9650
jcanzano@michworklaw.com

Thomas Quasarano (P27982)
Brian Devlin (P34685)
Assistant Attorneys General
Attorney for Defendants
P.O. Box 30754
Lansing, MI 48909
(517) 373-1162
quasaranot@michigan.gov
devlinb@michigan.gov

    /

## ORDER DENYING DEFENDANTS' REQUEST FOR STAY

At a session of the Circuit Court
On _18 July 13_ before
HON. ROSEMARIE E. AQUILINA

Defendants having requested a Stay of Plaintiffs' request for Preliminary

Injunction and at the Show Cause Hearing having been held on July _18_, 2013;

1

IT IS HEREBY ORDERED, for the reasons stated on the record, that

*ORDER TO ENFORCEMENT OF ORDER GRANTING PLANTIFFS*

~~Defendants' Request for a Stay of this pending appeal is denied.~~ *AND OTHER RELIEF DESCRIBED*

*MOTION FOR PRELIMINARY INJUNCTION*

*IN THE ORDER IS DENIED,*

*Rosemarie E Aquilina*

*P37670*

**IT IS SO ORDERED**

HON. ROSEMARIE E. AQUILINA
COURT OF CLAIMS JUDGE

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM