**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

---

### CONSOLIDATED TRIAL BRIEF OF THE RETIREE ASSOCIATION PARTIES IN OPPOSITION TO ELIGIBILITY

The Retired Detroit Police & Fire Fighters Association ("RDPFFA"), Donald Taylor, individually and as President of the RDPFFA, the Detroit Retired City Employees Association ("DRCEA"), and Shirley V. Lightsey, individually and as President of the DRCEA (collectively "Retiree Association Parties") through their counsel, Lippitt O'Keefe, PLLC and Silverman & Morris, P.L.L.C., submit the following Consolidated Trial Brief in Opposition to the City's Eligibility to be a Debtor under Chapter 9 of the U.S. Bankruptcy Code.

# TABLE OF CONTENTS

Index of Authorities ............................................................................................... iii

Brief Statement .......................................................................................................1

Facts ........................................................................................................................2

The Retiree Associations Were Ready, Willing and Able to Negotiate with the City...........................................................................................................................5

    A.  The DRCEA ......................................................................................................5

    B.  The RDPFFA......................................................................................................6

Legal Standard ........................................................................................................8

    A.  11 U.S.C. §109(c)(5)(B) .................................................................................9

    B.  11 U.S.C. §109(c)(5)(C)................................................................................10

Analysis..................................................................................................................11

    A.  The City did not Negotiate with Retirees .....................................................11

    B.  Negotiations with Retirees Were Practicable and Welcomed ......................13

        1.  The existence of other retiree associations does not make negotiations impracticable with the Retiree Associations............................................................13

        2.  The RDPFFA is the natural representative for uniformed retirees and the DRCEA is the natural representative for non-uniformed retirees. ...........................14

        3.  The mere fact that one or more union(s) now contend that they are an appropriate bargaining representative for the retirees is not enough to establish that negotiations with retirees was impracticable ..........................................................15

        4.  A natural representative capable of bargaining on behalf of retirees does not need to have binding legal authority over its constituents.................................15

Conclusion ...........................................................................................................15

{00200872}4

# INDEX OF AUTHORITIES

## Case Law

*Gainey v. Brotherhood of Ry. and S.S. Clerks, Freight Handlers, Exp. & Station Emp., D.C. Pa.,* 275 F. Supp. 292, 300 (E.D. of PA 1967) .......................................9

*In re City of Harrisburg*, 465 B.R. 744, 752 (Bankr. M.D. Pa. 2011) ........................

*In re City of Vallejo*, 408 B.R. 280, 298 (B.A.P. 9th Cir. 2009) ......................10, 11

*In re City of Stockton, California*, 493 B.R. 772 (Bankr. E.D. Cal. 2013)........11, 15

*In re Cottonwood Water and Sanitation Dist.,* 138 B.R. 973, 979 (Bankr. D. Colo. 1992) ....................................................................................................................10

*In re Ellicot School Building Authority,* 150 B.R. 261, 266 (Bankr. D. Colo. 1992).....................................................................................10, 12

*In re Villages at Castle Rock Metro. Dist. No. 4,* 145 B.R. 76 (Bankr. D. Colo. 1990) ....................................................................................................................10, 11

## Statutes

11 U.S. C. §109(c)(5).....................................................................................*passim*

11 U.S.C §109(c)(5)(B) ...................................................................................*passim*

11 U.S.C §109(c)(5)(C) ...................................................................................*passim*

## Other

Black's Law Dictionary, 5th Edition .........................................................................9

# BRIEF STATEMENT

The City of Detroit ("City") is not eligible to be a chapter 9 debtor because it does not satisfy the requirements of 11 U.S.C. § 109(c). In this brief, the Retiree Association Parties will focus on the City's failure to negotiate in good-faith with retirees when such negotiations were practicable.[1] The City cannot prove that it attempted to negotiate with retirees, or that it did so in good-faith.

The City does not contest this fact in its Consolidated Reply to Objections to the Entry of an Order for Relief. Rather, it argues that negotiations with its creditors, including retirees, were impracticable. The City has never claimed that it engaged in negotiations with retirees, or even attempted to do so.

Instead of attempting to, or actually, negotiating with retirees, the City decided that it was expedient to simply claim that it was impracticable to do so. Section 109(c)(5) requires pre-filing negotiations. The City's approach cannot possibly fulfill the requirements of §109(c)(5).

In defense of its refusal to negotiate with retirees (when both DRCEA and the RDPFFA requested to have such negotiations), the City provides an array of red-

---

[1] The Retiree Association Parties have asserted other factual and legal objections to the City's eligibility. There are a number of objecting parties, and the Retiree Association Parties do not intend to present duplicative evidence. The Retiree Association Parties have not abandoned any of their objections and reserve all rights.

herring arguments and ignores decades of history for each of the DRCEA and RDPFFA.

An understanding of the facts as they pertain to the DRCEA and RDPFFA's histories, qualifications, successes, organizational structures and purposes reveals that the City could have negotiated with retirees if it had intended to do so. Because the City did not negotiate with retirees when negotiations were practicable, the City fails to meet the eligibility requirements of §109(c)(5) and, therefore, cannot be a debtor under chapter 9.

## FACTS

The City has listed as the creditors holding the two largest unsecured claims the General Retirement System of the City of Detroit and the Police and Fire Retirement System of the City of Detroit (together, the "Retirement Systems"). The Retirement Systems may in fact be the largest creditors in the sense that the ordinances establishing the Retirement Systems provide for the Retirement Systems to determine and collect from the City the amount necessary for the City to contribute in order that retiree pensions are properly funded, but the City is directly indebted to its retirees for their accrued benefits. The Retirement Systems represent a mechanism through which the City is to fulfill its responsibilities to its retired employees. It is the retirees who have the ultimate financial stake in the fulfillment

by the City of its pension obligations. Therefore, negotiation with the retirees, not just the Retirement Systems, was called for by § 109(c)(5).

The City has never denied, and in fact has affirmatively admitted, that it intends to impair the pension rights of retirees. The Emergency Manager, Kevyn Orr, admitted in his deposition that the impairment of vested pension rights was a necessary component of the restructuring process and would be included in a plan of adjustment. (Orr Dep. at 322: 3-7). The City's June, 14, 2013 Proposal also reveals that the City intends to impair vested pension rights. It specifically states that "there must be significant cuts in accrued vested pension amounts for both active and currently retired persons." (Docket 11, Ex. A at 116). Because the City "intends to impair" pension obligations "under a plan in a case under" Chapter 9, the City must show that it "negotiated in good faith" with retirees, or that "such negotiation was impracticable". § 109(c)(5).

The retirees, through the RDPFFA and the DRCEA, were ready, willing and able to negotiate with the City regarding retiree issues, including, but not limited to, accrued pension rights and other post-employment benefits ("OPEB"). The City claims that "the RDPFFA and the DRCEA are the natural representatives of retirees is not self evidently correct." The evidence will show that the Retiree Associations were and are the representatives of the retirees, indeed that they are the "natural

representatives" to adopt a term used by the court in *City of Stockton*, 493 B.R. 772, 794 (Bankr. E.D. Cal. 2013).

The Retiree Associations (RDPFFA and DRCEA) have provided and continue to provide a highly organized and representative voice of the retirees. The combined dues-paying membership of the Retiree Associations is estimated to be approximately 70% of all City retirees, but the Retiree Associations each represent and provide service and representation for all of their respective retirees, regardless of membership status. (Declaration of Shirley V. Lightsey, Docket 502-2, ¶6, and Declaration of Donald Taylor, Docket 502-3, ¶6). The RDPFFA has represented its constituent retirees for more than 30 years and has won and protected rights for them through litigation, (including securing the *Weiler* judgment), lobbying and other forms of representation. The DRCEA has represented its constituent retirees for more than 50 years and has likewise won and protected rights for them through litigation, lobbying and other forms of representation.

Both the RDPFFA's and the DRCEA's primary purpose is to represent the interests of their respective retiree members. Each of the Retiree Associations operates under its own by-laws and governing documents and serves its members through its elected and/or appointed board of directors and officers. The Retiree Associations regularly communicate with their constituents and hold periodic meetings to update their members on important matters.

Over the past 53 years, the DRCEA has been integral in securing pension improvements, protections and/or payment of entitled benefits. The same is true of the RDPFFA, which for over thirty years has been integral in securing pension improvements, protections and other benefits. The Retiree Associations are the natural representatives of the retirees, capable of bargaining on their memberships' behalf.

### *The Retiree Associations Were Ready, Willing and Able to Negotiate with the City*

### A.    *The DRCEA*

The DRCEA, through its President, Shirley V. Lightsey (accompanied by counsel on two occasions), attended three restructuring meetings held by the City and led by attorneys from Jones Day. The meetings were purely informational. At no point during any of these meetings was there an opportunity for negotiation or even for the consideration of the position of the retirees. The meetings are summarized as follows:

> June 20, 2013, 10:00 a.m. at the 13th floor auditorium of the Coleman A. Young Municipal Center. Several Jones Day attorneys and financial advisors presented a 23-page document and discussed the information. A take-it-or-leave-it (unconstitutional) proposal was made by the City which called for pension obligations to be treated as general unsecured debt which violates the Constitution because the proposal would both diminish and impair accrued pension obligations. No negotiation was permitted by the City. The City provided a "data room" to enable the Retiree Associations to research financial and other information.

> July 10, 2013, 1:00 p.m. at the Coleman A. Young Municipal Center, 3rd floor Labor Relations Conference Room. Attorney David Heiman led the discussion and other Jones Day attorneys were present. There were presentations regarding potential changes

to the Pension Fund configuration, and a "four-step process." " toward reaching a resolution was proposed by the City. The City did not get past step one of its own process, the presentation by the City of information. No negotiation occurred.

July 11, 2013, 10:00 a.m. at the Coleman A. Young Municipal Center, 3rd floor Labor Relations Conference Room. David Heiman and other attorneys from Jones Day conducted the presentation. The primary topic was health care. A draft of "Medicare Advantage Plan Design Options" was distributed. No negotiation took place because the meeting was purely informational.

Ms. Lightsey also sent a letter to Mr. Orr on May 4, 2013, requesting a meeting with him to discuss pension and other retirement benefits. (proposed exhibit, Bates stamped as RetAssnParties 000181). This letter and request went unanswered by Mr. Orr. Counsel for the Retiree Associations requested additional meetings with Mr. Orr and his representatives and these requests likewise went unanswered.

**B.    The RDPFFA**

The RDPFFA, through its president, Don Taylor, met with Michigan Treasurer, Andy Dillon, to discuss pension and other retiree issues. Representatives from the RDPFFA (accompanied by counsel on three occasions) also attended various meetings with the City and its representatives. The meetings were purely informational. At no point in the meetings was there an opportunity for negotiation or even for the consideration of the position of the retirees. The meetings are summarized as follows:

April 18, 2013, 10:00 a.m. at the Coleman A Young Municipal Center – Meeting with Emergency Financial Manager, Kevyn Orr. The meeting was presentational and Mr. Orr informed the group that he had no intention of impairing pensions or health benefits for retirees. More specifically, Mr. Orr stated that he had no intention to violate the state constitution or to set aside the settlement reached in *Weiler*. No negotiation occurred.

June 14, 2013 at Detroit Metropolitan Airport. The meeting was led by Jones Day attorneys and other professionals representing the City. Mr. Orr and Mr. Dillon were in attendance but did not speak. An initial proposal was presented during the meeting. No negotiation occurred.

June 20, 2013, at the Coleman A. Young Municipal Center, 13th-floor auditorium - Several Jones Day attorneys and financial advisors presented a 23-page document and discussed the information. A take-it-or-leave-it (unconstitutional) proposal was made by the City. The proposal made by the City called for pension obligations to be treated as general unsecured debt, which violates the Constitution because the proposal would both diminish and impair accrued pension obligations. No negotiation occurred. The City informed the Retiree Associations of the data room as a source for further information.

July 10, 2013, at the Coleman A. Young Municipal Center, 3rd-floor Labor Relations Conference Room. - David Heiman led the discussion and other Jones Day attorneys were present. There were presentations regarding potential changes to the pension fund configuration, and a "four-step process."" toward reaching a resolution was proposed by the City. The City did not get past step one of its own "four-step process." No negotiation occurred.

July 11, 2013, at the Coleman A. Young Bldg. 3rd floor Labor Relations Conference Room. David Heiman and associates from Jones Day conducted the presentation. The primary topic was health care. A draft of "Medicare Advantage Plan Design Options" was passed out. No negotiation was invited and the presentation was unilateral.

Despite the RDPFFA and the DRCEA's willingness, ability and desire to negotiate with the City, the City neither offered to negotiate nor accepted the Retiree Associations' invitation to negotiate. Instead, the City apparently chose to roll the dice on eligibility and claim that negotiations were impracticable.

## LEGAL STANDARD

It is undisputed that the burden of establishing eligibility to be a Chapter 9 debtor is placed squarely on the municipality. *In re City of Harrisburg*, 465 B.R. 744, 752 (Bankr. M.D. Pa. 2011). Again, while the Retiree Association Parties have already disputed numerous eligibility deficiencies, this brief focuses on the City's failure and inability to satisfy 109(c)(5)(B)&(C). Section 109(c) provides in pertinent part:

> An entity may be a debtor under chapter 9 of this title *if and only if* such entity—
>
> (5)    ***
> (B) has negotiated in good faith with creditors and has failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;
>
> (C) is unable to negotiate with creditors because such negotiation is impracticable…….

11 U.S.C §109(c)(5)(B)&(C). An examination of the standards of both 11 U.S.C §109(c)(5)(B) and (C) reveals the City's lack of compliance therewith.

### A.    *11 U.S.C. §109(c)(5)(B)*

To determine whether the City complied with the Bankruptcy Code's requirement that a debtor must "negotiate in good faith with creditors," negotiation must be defined. "Negotiation is [a] process of submission and consideration of offers until [an] acceptable offer is made and accepted." *Gainey v. Brotherhood of Ry. and S.S. Clerks, Freight Handlers, Exp. & Station Emp.,* 275 F. Supp. 292, 300 (E.D. Pa. 1967). Similarly, Black's Law Dictionary defines negotiation as "the deliberation, discussion, or conference upon the terms of a proposed agreement; the act of settling or arranging the terms and conditions of a bargain, sale, or other business transaction." BLACK'S LAW DICTIONARY (5th Ed., 1979).

The negotiation requirement of 11 U.S.C. 109(c)(5)(B) is a serious consideration and the courts must not "view lightly the negotiation requirements." *In re Villages at Castle Rock Metro. Dist. No. 4,* 145 B.R. 76, 85 (Bankr. D. Colo. 1990). Congress, through the Bankruptcy Code, intended to provide creditor protection by providing "an opportunity to negotiate concerning a plan on a level playing field." *In re Cottonwood Water and Sanitation Dist.,* 138 B.R. 973, 979 (Bankr. D. Colo. 1992). In line with the seriousness of the negotiation requirement and the need for a level playing field, it is not surprising that no negotiations occur when a creditor presents a "take it or leave it" proposal. *In re Ellicot School Building Authority,* 150 B.R. 261, 266 (Bankr. D. Colo. 1992). A debtor must be willing to

negotiate the substantive terms of the proposed plan in order to satisfy the standard. *Id.*

**B.     11 U.S.C. §109(c)(5)(C)**

Under 109(c)(5)(C)), the key to the analysis is the meaning of "impracticable" which has been defined to mean "not practicable; incapable of being performed or accomplished by the means employed or at command; infeasible." *In re City of Vallejo*, 408 B.R. 280, 298 (B.A.P. 9th Cir. 2009). The determination of impracticability under 109(c)(5)(C) must consider circumstances of the case using a fact specific inquiry. *Id.* Therefore, for negotiations to be impracticable under the Bankruptcy Code a "circumstance that excuses a party from performing an act…because (though possible) it would cause ***extreme and unreasonable*** difficulty" must be present and proven by the debtor. *Id.* (Emphasis added.) The perception that negotiations would be hard or ultimately unsuccessful is not sufficient. *Id.* Lastly, the analysis of a debtor's compliance with 109(c)(5)(C) is to be done on a creditor- class by creditor-class basis. *In re Village at Castle Rock Metro, supra,* at 85.

For negotiations to be practical a creditor class need not show that it can legally bind each and every member of the respective class, but there must be a "natural representative capable of bargaining on their [the class's] behalf. *Stockton,*

*supra* at 794. The court in *Stockton* did not state a requirement that the "natural representative" have the legal authority to bind all or any of the creditor class. *Id.*

## ANALYSIS

### A. The City did not Negotiate with Retirees.

The facts clearly show that (1) the City intends to impair the pension rights of retirees (and has already announced draconian reductions to health care benefits) through the bankruptcy process; (2) the City did not negotiate, or even attempt to negotiate, with retirees before the filing of the bankruptcy petition; (3) negotiations with the Retiree Associations were practicable, welcomed and requested, but the City still chose not to engage in such negotiations; (4) the admittedly informational/presentational (en masse) meetings hosted by the City were not negotiations; (5) and the City does not even contend that it negotiated with retirees, or even attempted to do so.

Each of the meetings hosted by the City and attended by the Retiree Associations can be uniformly described as unilateral presentation of proposal information from the City. No negotiation occurred or was invited by the City. Such a one-sided presentation of information, related to a take-it-or-leave-it proposal, does not constitute negotiations. The hosting of *en masse* presentational meetings to explain a take-it-or-leave-it restructuring proposal is not negotiation. *In re Ellicott School Building Authority*, 150 B.R. 261, 266 (Bankr. D. Colo. 1992). The mere

fact that a debtor held public meetings in *In Re Ellicott* to advise creditors of a nonnegotiable restructuring proposal was insufficient to fulfill the negotiation requirement of 109(c)(5)(B). This is the exact situation which unfolded in the current case. Therefore, the City did not negotiate with the retirees that it intended to and still intends to impair under a plan.[2]

### B. Negotiations with Retirees Were Practicable and Welcomed

The City went all-in on its 109(c)(5) eligibility gamble claiming that negotiations with each class of its creditors were impracticable. (City of Detroit's Consolidated Reply To Objections to the Entry of an Order For Relief, Dkt. 765, pp 45-62). This is not the case.

The City makes four primary arguments to support its claim that negotiations with the retirees were not practicable: (1) the City claims that the Retiree Associations are "but two of at least five associations purporting to represent City retirees" (City Reply at 47); (2) "neither the RDPFFA nor the DRCEA are 'the anything'" (*Id.* at 48); (3) the "unions now claim to be appropriate bargaining representatives for the retirees as well" (*Id.*); and (4) the Retiree Associations lacked the authority to bind the City's retirees. *Id.* Each of these red-herring arguments is addressed below.

---

[2] The Retiree Association Parties further assert that based on the briefing and arguments presented by other major objecting creditors, (i.e., the unions) it is clear that the City did not negotiate with any of the major creditors.

### 1. The existence of other retiree associations did not make negotiations with the Retiree Associations impracticable.

The City makes an issue of the existence of retiree associations in addition to the DRCEA and the RDPFFA. The existence of additional, newly-formed associations does not negate the histories of the DRCEA and the RDPFFA. Rather, the establishment of small specialized additional associations shows concern and commitment among retirees. Retirees may be diverse but they are well organized. The City has not disputed the Retiree Associations' histories of representation, negotiation, advocacy and success on behalf of retirees.

The Retiree Associations neither claimed to be the only two retiree associations in the City nor that they are the exclusive representative of the City's retirees. The Retiree Association Parties contend, and the facts support, that the Retiree Associations were and are the natural bargaining representatives of their respective retiree constituents. They each have the ability, expertise and experience to gather information, convey that information to their constituencies and motivate their constituencies to take action. These are all indices of a "natural representative" body, akin to appointed representative bodies like the retiree committee appointed in this case or to the creditors' committee in any other bankruptcy case.

### 2. The RDPFFA is the natural representative for uniformed retirees and the DRCEA is the natural representative for non-uniformed retirees.

The Retiree Association Parties are not sure what the City means when it says that "neither the RDPFFA nor the DRCEA are 'the' anything." (City Reply at 48). The Retiree Associations do not claim to quasi-governmental bodies established by statute. It is also undeniable that uniformed and non-uniformed retirees were previously represented by different unions during employment, are represented by different retiree associations and receive their pension benefits from separate pension systems, but the City appears to now claim, again, that decades of history are irrelevant to the practicability consideration. Moreover, even if the City's contention is true, it cannot be said that separate negotiations with RDPFFA and the DRCEA would be impracticable, and the City does not even make that argument. In fact, each Association was present at each meeting, employed counsel, reached out to the City to meet at other times and stood ready, willing and able to negotiate through elected and knowledgeable representatives.

> 3. *The mere fact that one or more union(s) now contend that they are an appropriate bargaining representative for the retirees is not enough to establish that negotiations with retirees was impracticable.*

The mere fact that multiple parties contend to be an appropriate representative to bargain on behalf of retirees does not make negotiations impracticable. By implication, the City contends that it was not "readily apparent" who the natural representative of the retirees was and that is where its inquiry stopped. The City did not endeavor to determine by means of communication or negotiation who would be

the representative bargaining body for the retirees, likely because it had no good-faith desire to do so.

As it applies to the City's assertion that unions were jockeying for position to bargain on behalf of the retirees, a quick review of case law reveals that this is not so. Generally, "a union's duty to bargain collectively on behalf of the members of the bargaining unit that the union represents does not extend to retired workers, because they are not members of the unit." *Allied Chemical & Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 166, 182 n. 20, 92 S. Ct. 383, 30 L. Ed. 2d 341 (1971). This, combined with the histories and prior actions of the Retiree Associations, makes it clear that they were the natural representatives for the City to negotiate with regarding retirees -- a fact also made known to the City by the Retiree Associations.

> *4. A natural representative capable of bargaining on behalf of retirees does not need to have binding legal authority over its constituents.*

Authority to enter into a binding agreement is not necessary to negotiation with a creditor organization. *In re City of Stockton, California*, supra. The proper legal standard, as announced in *Stockton*, is whether there is a "natural representative capable of bargaining on their behalf." *Id.* p 23. The Court in *Stockton* did not state a requirement that the "natural representative" have the legal authority to bind all of the retirees. *Id.*

The City's argument is even more disingenuous when viewed in light of the City's request for the appointment of an official committee of retirees, which similarly lacks the legal authority to directly bind individual retirees. Plans are routinely negotiated by creditors' committees. Indeed, the negotiation of plan terms by a creditors' committee is part of the very fabric of chapter 9 and chapter 11. The City's actions show that it failed to fulfill its responsibility to negotiate in good faith with creditors whom the City intends to impair under Plan.

## CONCLUSION

For reasons which include the particular factual argument outlined above, the City is not eligible to be a chapter 9 debtor and this case should be dismissed.

Lippitt O'Keefe, PLLC
Brian D. O'Keefe (P39603)
Ryan C. Plecha (P71957)
370 East Maple Road, 3rd Floor
Birmingham, Michigan 48009
(248) 646-8292
rplecha@lippittokeefe.com

SILVERMAN & MORRIS, P.L.L.C.
/s/ Thomas R. Morris
Thomas R. Morris (P39141)
30500 Northwestern Highway,Suite 200
Farmington Hills, Michigan 48334
(248) 539-1330
morris@silvermanmorris.com

*Counsel for Retiree Association Parties*