# **EXHIBIT B**

89 (Rev. 02-11)



RICK SNYDER
GOVERNOR

STATE OF MICHIGAN
DEPARTMENT OF TREASURY
LANSING

ANDY DILLON
STATE TREASURER

# CONTRACT FOR EMERGENCY FINANCIAL MANAGER SERVICES

The Local Emergency Financial Assistance Loan Board (the Board) retains and appoints Kevyn Orr as the Emergency Financial Manager (Emergency Financial Manager) for the City of Detroit (City) under Public Act 72 of 1990, the Local Government Fiscal Responsibility Act, MCL 141.1201 *et seq,* (the Act).

The Emergency Financial Manager will provide services to the City pursuant to the terms and conditions set forth in this Contract and the Act.

The Emergency Financial Manager's role is to remedy the financial distress of the City by requiring, within available resources, prudent fiscal management and an efficient provision of municipal services by exercising the necessary authority conferred herein to take appropriate action on behalf of the City and its residents. In accepting this appointment, the Emergency Financial Manager agrees to leverage all the Emergency Financial Manager's skills and abilities to accomplish these objectives on behalf of City residents.

## 1. PARTIES, PURPOSE, DUTIES, AND REPORTS

1.1 <u>Parties</u>. The parties to this Contract are the Board and Kevyn Orr.

1.2 <u>Purpose</u>. The parties to this Contract agree that Kevyn Orr will act as the Emergency Financial Manager for the City. The Emergency Financial Manager's duties and responsibilities are delineated in the Act and include conducting all aspects of the operations of the City and establishing and implementing a written financial plan as required by Section 20 of the Act.

1.3 <u>Duties</u>. The Emergency Financial Manager shall possess all the powers and duties authorized under the Act, including those specifically related to local governments. In addition, the Emergency Financial Manager shall work cooperatively with the Office of the Governor and the State Treasurer. The Emergency Financial Manager agrees to continue to keep these officials informed of major initiatives to be undertaken in furtherance of this Contract before their public announcement. The Emergency Financial Manager shall seek the approval of the State Treasurer before entering into a new collective bargaining agreement.

1.4 <u>Reports</u>. The Emergency Financial Manager shall file quarterly reports with the Department of Treasury beginning on July 15, 2013, for the immediately preceding quarter and shall file the first report required by Section 21a of the Act within six months of the Emergency Financial Manager's appointment and every six months thereafter.

P.O. BOX 30716 • LANSING, MICHIGAN 48909
www.michigan.gov/treasury • (517) 373-3200

1.5 <u>Communications</u>. The Emergency Financial Manager shall establish and maintain an appropriate protocol for ongoing communications with officials of the City, City residents, and the media. The communications protocol should include a variety of means, including personal interactions.

## 2. TERM OF CONTRACT

2.1 The Emergency Financial Manager serves at the pleasure of the Board as provided in Section 18 of the Act.

2.2 <u>Effective Date</u>. This contract is effective on Monday March 25, 2013 and shall terminate at midnight on Wednesday March 27, 2013.

2.3 <u>Oath of Office</u>. Before exercising the duties of office, the Emergency Financial Manager shall take and subscribe an oath of office administered by an official authorized to administer oaths under the laws of Michigan and file such oath with the Office of the Great Seal.

## 3. COMPENSATION FOR SERVICES PROVIDED

3.1 <u>Source of Payment</u>. The City shall pay the compensation of the Emergency Financial Manager for all services rendered under this Contract.

3.2 <u>Salary</u>. The Emergency Financial Manager's salary for services rendered under this Contract shall be $275,000 per year. If this Contract is terminated after the Emergency Financial Manager has provided services for a portion of a month, the Emergency Financial Manager shall be entitled, for that portion of that month, to $22,916.67 multiplied by the proportion that the number of days of the month for which services were provided bears to the number of days of the whole month. The Emergency Financial Manager shall not receive or accept any compensation from the City except as provided for in this contract.

3.3 <u>Payment for Services</u>. The Emergency Financial Manager shall be paid in installments consistent with the established written policies and procedures of the Michigan Department of Treasury. If requested by the State Treasurer, the Emergency Financial Manager shall provide to the Michigan Department of Treasury additional information regarding services performed pursuant to this Contract.

3.4 <u>Reimbursement for Actual and Necessary Expenses</u>. The actual and necessary expenses of the Emergency Financial Manager, including customary expenses related to travel, meals, and lodging which are incurred in connection with service to the City will be reimbursed by the City. The Emergency Financial Manager shall provide original copies of all receipts for meals, lodging, and travel reimbursement with any request for reimbursement. Any reimbursement for expenses under this contract shall be reviewed and approved in writing by the City's Chief Financial Officer.

## 4. ADDITIONAL STAFF AND CONSULTANT FEES

4.1 <u>Staff</u>. The Emergency Financial Manager may, as provided in the Act, appoint addi-

tional staff as necessary to fulfill the obligations of the Emergency Financial Manager's appointment and duties under this Contract. Payment of compensation for additional staff will be the obligation of the City. While authority to hire additional staff rests with the Emergency Financial Manager, the Emergency Financial Manager agrees to consult with the State Treasurer, or the designee of the State Treasurer, at least 24 hours before extending offers of employment for positions paying $50,000.00, or more, annually. The Emergency Financial Manager shall issue a written employment contract to each individual hired pursuant to this Section, regardless of the compensation paid to that individual. The employment contract issued pursuant to this Section shall, as of the date the individual is hired by the Emergency Financial Manager, prohibit the individual from engaging in any other employment for remuneration without the express written approval of the Emergency Financial Manager. The Emergency Financial Manager agrees to consult with the State Treasurer, or the designee of the State Treasurer, at least 24 hours before approving outside employment for any individual. A breach of this Section shall be a material breach of this Contract.

4.2 Professional Assistance. The Emergency Financial Manager may, as provided in the Act, secure professional assistance as necessary to fulfill the obligations of the Emergency Financial Manager's appointment and duties under this Contract. Payment of compensation for additional professional assistance will be the obligation of the City. The Emergency Financial Manager agrees to consult with the State Treasurer, or the designee of the State Treasurer, at least 24 hours before authorizing professional services contracts of $50,000.00, or more, per engagement or project.

4.3 Security. The Emergency Financial Manager will be entitled to receive security protection in connection with the Emergency Financial Manager's duties under this Contract. Security personnel will be retained only upon the approval of the State Treasurer, or the designee of the State Treasurer, and only after consultation with the Director of the Michigan Department of State Police, or the designee of the Director of the Michigan Department of State Police. Payment of compensation for security personnel will be the obligation of the City.

## 5. REPRESENTATIONS

5.1 Qualifications. By signing this Contract, the Emergency Financial Manager, represents that the Emergency Financial Manager meets the minimum qualifications for appointment set forth in the Act. The Emergency Financial Manager shall perform the duties of that office on a full-time basis and shall not accept any other employment or engage in any other activity for remuneration without the express written approval of the State Treasurer.

5.2 Conflict of Interest. The Emergency Financial Manager represents and warrants that the Emergency Financial Manager has no personal or financial interest, and will not acquire any such interest, that would conflict in any manner or degree with the performance of this Contract.

5.3 Non-competition. The Emergency Financial Manager represents and warrants that the Emergency Financial Manager is not subject to any non-disclosure, non-competition, or similar clause with current or prior clients or employers that will interfere with the performance of this Contract. The Board will not be subject to any liability for any such claim.

5.4 <u>Facilities and Personnel</u>. The City will provide the Emergency Financial Manager with proper facilities and personnel to perform the services and work required to be performed pursuant to this Contract.

5.5 <u>Records</u>. The Emergency Financial Manager shall maintain complete records in accordance with generally accepted accounting practices and sound business practices. This requirement applies to all information maintained or stored in the computer system of the Emergency Financial Manager or computer system of the City. The State Treasurer and his designees shall have the right to inspect all records related to this Contract.

5.6 <u>Non-Discrimination</u>.

a) The Emergency Financial Manager shall comply with Public Act 220 of 1976, the Persons with Disabilities Civil Rights Act, MCL 37.1101 *et seq.*, and all applicable federal, State, and local fair employment practices and equal opportunity laws. The Emergency Financial Manager covenants that the Emergency Financial Manager will not discriminate against any employee or applicant for employment with respect to hire, tenure, terms, conditions, or privileges of employment, or a matter directly or indirectly related to employment, because of a disability that is unrelated to the individual's ability to perform the duties of a particular job or position. The Emergency Financial Manager shall impose this covenant upon every subcontractor that enters into an agreement for the performance of any obligation imposed by this Contract. A breach of this covenant shall be a material breach of this Contract.

b) The Emergency Financial Manager shall comply with Public Act 453 of 1976, the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*, and all applicable federal, State, and local fair employment practices and equal opportunity laws. The Emergency Financial Manager covenants that the Emergency Financial Manager will not discriminate against an employee or applicant for employment with respect to hire, tenure, terms, conditions, or privileges of employment, or a matter directly or indirectly related to employment, because of race, color, religion, national origin, age, sex, height, weight, or marital status. The Emergency Financial Manager shall impose this covenant upon every subcontractor that enters into an agreement for the performance of any obligation imposed by this Contract. A breach of this covenant shall be a material breach of this Contract.

5.7 <u>Unfair Labor Practices</u>. The Emergency Financial Manager shall not enter into a contract for the performance of any obligation imposed by this Contract with a subcontractor, manufacturer, or supplier whose name appears in the register prepared pursuant to Public Act 278 of 1980, MCL 423.322, of employers found in contempt of court for failure to correct unfair labor practices. The State may void this Contract if the Emergency Financial Manager, or any subcontractor, manufacturer, or supplier of the Emergency Financial Manager that is a party to a contract for the performance of any obligation imposed by this Contract, appears in the above mentioned register.

5.8 <u>Independent Contractor</u>. The relationship of the Emergency Financial Manager to the Board and to the City under this Contract is that of an independent contractor. Except as specifically provided in the Act, no liability, benefits, workers compensation rights or liabilities, insur-

ance rights or liabilities, or any other rights or liabilities arising out of, or related to, a contract for hire, nor employer-employee relationship, shall arise, accrue, or be implied to either party under this Contract or to an agent, subcontractor, or employee of either party under this Contract, as a result of the performance of this Contract.

## 6. NOTICES

6.1 The State Treasurer is the designee of this Board for this Contract unless notice of another designation is provided by the Board. All notices, correspondence, requests, inquiries, billing statements, and other documents mentioned in this Contract shall be directed to the attention of the State Treasurer, Andy Dillon, and to the following:

For the Board:

    Michigan Department of Treasury
    Office of Legal Affairs
    Richard H. Austin Building, 430 West Allegan Street
    Lansing, Michigan 48922
    Phone: (517) 373-3223

For the Emergency Financial Manager:

    _____
    _____
    _____, MI 4____

## 7. LIMITATION UPON LIABILITY

7.1 <u>The Board</u>. The Board, this State, the Treasurer, and all other State officials are not liable for any obligation of or claim against the City resulting from actions taken in accordance with the Act or this Contract.

7.2 <u>The Emergency Financial Manager</u>. Pursuant to the Act, in performing this Contract the Emergency Financial Manager is engaging in a governmental function and is immune from liability for any action taken which the Emergency Financial Manager reasonably believes to be within the scope of the Emergency Financial Manager's authority granted by the Act or by this Contract.

## 8. INSURANCE

8.1 <u>General</u>. The Emergency Financial Manager may procure and maintain, at the expense of the City, health, worker's compensation, general liability, professional liability, and motor vehicle insurance for the Emergency Financial Manager and any employee, agent, appointee, or contractor of the Emergency Financial Manager as may be provided to elected officials, appointed officials, or employees of the City. The insurance procured and maintained by the Emergency Financial Manager may extend to any claim, demand, or lawsuit asserted or costs recovered against the Emergency Financial Manager and any employee, agent, appointee, or contractor of the

Emergency Financial Manager to the extent permitted by the Act.

8.2 Post-Contract. If, after the date that the service of the Emergency Financial Manager is concluded, the Emergency Financial Manager or any employee, agent, appointee, or contractor of the Emergency Manager is subject to a claim, demand, or lawsuit arising from an action taken during the service of the Emergency Financial Manager, and not covered by a procured insurance policy, litigation expenses, including but not limited to attorney fees, payments in satisfaction of judgments, and payments made in settlement as specified pursuant to the Act, shall be paid by the City. If such expenses are not paid by the City, they shall be treated as a debt owed to this State pursuant to section 17a(5) of Public Act 140 of 1971, the Glenn Steil State Revenue Sharing Act of 1971, MCL 141.917a.

8.3 Additional Insurance. If the City has purchased, or otherwise obtained, an errors and omissions policy, then the Emergency Financial Manager may choose to be covered under such policy at the expense of the City.

8.4 Payment by City. All insurance required under this Contract shall be acquired at the expense of the City under valid and enforceable policies, issued by insurers of recognized responsibility. The Board reserves the right to reject as unacceptable any insurer.

## 9. TERMINATION OF CONTRACT AND APPOINTMENT

9.1 Termination by the Board.

a) The Board. The Emergency Financial Manager serves at the pleasure of the Board which has the power to rescind the appointment and terminate this Contract at any time, and without cause, by issuing a Notice of Termination to the Emergency Financial Manager.

9.2 Termination Process. Upon receipt of a Notice of Termination, and except as otherwise directed by the Board, the Emergency Financial Manager shall:

a) Cease work under this Contract upon the date and to the extent specified in the Notice of Termination;

b) Incur no costs beyond the date specified by the Notice of Termination;

c) Submit to the State Treasurer on the date the termination is effective all records, reports and documents as this State shall specify and carry out such directives as the State Treasurer may issue concerning the safeguarding and disposition of files and property; and

d) Submit within 30 calendar days a closing memorandum and final billing, which shall be paid within 30 days.

9.3 Termination by Emergency Financial Manager. The Emergency Financial Manager may terminate this Contract at any time, with or without cause, with 30 days written notice to the State Treasurer. Within 30 days of the Emergency Financial Manager's final day of service, the

Emergency Financial Manager shall submit a closing memorandum and final billing, which shall be paid within 30 calendar days.

## 10. GENERAL PROVISIONS

10.1 <u>Governing Law and Jurisdiction</u>. This Contract shall be subject to, and construed according to, the laws of the State of Michigan, and no action shall be commenced against this State, its agents, or employees for any matter whatsoever arising out of this Contract, in any court other than a Michigan State court.

10.2 <u>No Waiver</u>. A party's failure to insist on the strict performance of this Contract shall not constitute waiver of any breach of the Contract.

10.3 <u>Other Debts</u>. The Emergency Financial Manager represents and warrants that the Emergency Financial Manager is not, and will not become, in arrears on any contract, debt, or other obligation to the State of Michigan, including taxes.

10.4 <u>Invalidity</u>. If any provision of this Contract or its application to any persons or circumstances shall, to any extent, be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Contract shall not be affected, and each remaining provision of this Contract shall be valid and enforceable to the fullest extent permitted by law.

10.5 <u>Headings</u>. Section headings contained in this Contract are for convenience only and shall not be used to interpret the scope or intent of this Contract.

10.6 <u>Entire Agreement</u>. This Contract represents the entire and exclusive agreement between the parties and supersedes all proposals or other prior agreements, oral or written, and all other communications between the parties.

10.7 <u>Amendment</u>. No Contract amendment will be effective and binding upon the parties to this Contract unless the amendment expressly makes reference to this Contract, is in writing, and is signed by duly authorized representatives of all parties and all the requisite State approvals are obtained.

10.8 <u>Order of Priority</u>. This Contract and the Act shall be read to be consistent one with the other. However, if a conflict is deemed to exist between the terms of this Contract and the Act, the Act shall supersede the terms of this Contract.

10.9 <u>Counterparts</u>. This Contract may be executed in separate counterparts, each of which when executed shall be deemed an original, but all of which when taken together shall constitute one and the same Contract.

IN WITNESS WHEREOF, the members of the Board, or their designees, and the Emergency Financial Manager have signed and executed this Contract.

LOCAL EMERGENCY FINANCIAL ASSISTANCE
LOAN BOARD

By _[signature]_____
Andy Dillon, State Treasurer

By _[signature]_____
John E. Nixon, Director
Department of Technology, Management and Budget

By _[signature]_____
Steve Arwood, Director
Department of Licensing and Regulatory Affairs

By _____
_____, Emergency Financial Manager

Dated: 3-14-13



STATE OF MICHIGAN
EXECUTIVE OFFICE
LANSING

RICK SNYDER
GOVERNOR

BRIAN CALLEY
LT. GOVERNOR

March 26, 2013

**BY ELECTRONIC MAIL**

Kevyn Orr
Emergency Financial Manager
City of Detroit
1126 Coleman A. Young Municipal Center
Detroit, Michigan 48226

Dear Mr. Orr:

This letter confirms your existing status as an Emergency Financial Manager, having been appointed pursuant to Section 18(1) of Public Act 72 of 1990, the Local Government Fiscal Responsibility Act and now maintained under Section 9(10) and Section 31 of Public Act 436 of 2012. Enclosed is a contract for your execution, reflecting the terms and conditions of your continuing appointment as an Emergency Manager under Public Act 436 of 2012, the Local Financial Stability and Choice Act.

Sincerely,

Rick Snyder
Governor

Enclosure

89 (Rev. 02-11)



STATE OF MICHIGAN
DEPARTMENT OF TREASURY
LANSING

RICK SNYDER
GOVERNOR

ANDY DILLON
STATE TREASURER

# CONTRACT FOR EMERGENCY MANAGER SERVICES

Rick Snyder, Governor of the State of Michigan (Governor) and the Michigan Department of Treasury retain and appoint Kevyn Orr as the Emergency Manager (Emergency Manager) for the City of Detroit (City) under Public Act 436 of 2012, the Local Financial Stability and Choice Act, MCL 141.1541 *et seq,* (the Act).

The Emergency Manager will provide services to the City pursuant to the terms and conditions set forth in this Contract and the Act.

The Emergency Manager's role is to remedy the financial distress of the City by requiring, within available resources, prudent fiscal management and an efficient provision of municipal services by exercising the necessary authority conferred herein to take appropriate action on behalf of the City and its residents. In accepting this appointment, the Emergency Manager agrees to leverage all the Emergency Manager's skills and abilities to accomplish these objectives on behalf of City residents.

## 1. PARTIES, PURPOSE, DUTIES, AND REPORTS

1.1 <u>Parties</u>. The parties to this Contract are the State of Michigan by the Department of Treasury and Kevyn Orr.

1.2 <u>Purpose</u>. The parties to this Contract agree that Kevyn Orr will act as the Emergency Manager for the City. The Emergency Manager's duties and responsibilities are delineated in the Act and include conducting all aspects of the operations of the City and establishing and implementing a written financial plan as required by Section 11 of the Act.

1.3 <u>Duties</u>. The Emergency Manager shall possess all the powers and duties authorized under the Act, including those specifically related to local governments. In addition, the Emergency Manager shall work cooperatively with the Office of the Governor and the State Treasurer. The Emergency Manager agrees to continue to keep these officials informed of major initiatives to be undertaken in furtherance of this Contract before their public announcement. The Emergency Manager shall seek the approval of the State Treasurer before entering into a new collective bargaining agreement.

1.4 <u>Reports</u>. The Emergency Manager shall file quarterly reports with the Department of Treasury beginning on July 15, 2013, for the immediately preceding quarter and shall file the first report required by Section 17 of the Act within six months of the Emergency Manager's appointment and every three months thereafter.

1.5 Communications. The Emergency Manager shall establish and maintain an appropriate protocol for ongoing communications with officials of the City, City residents, and the media. The communications protocol should include a variety of means, including personal interactions.

## 2. TERM OF CONTRACT

2.1 The Emergency Manager serves at the pleasure of the Governor except as provided in Section 9(3)(d) and Section 9(6)(c) of the Act.

2.2 Effective Date. This contract is effective on Thursday March 28, 2013.

## 3. COMPENSATION FOR SERVICES PROVIDED

3.1 Source of Payment. The State shall pay the compensation of the Emergency Manager for all services rendered under this Contract.

3.2 Salary. The Emergency Manager's salary for services rendered under this Contract shall be $275,000 per year. If this Contract is terminated after the Emergency Manager has provided services for a portion of a month, the Emergency Manager shall be entitled, for that portion of that month, to $22,916.67 multiplied by the proportion that the number of days of the month for which services were provided bears to the number of days of the whole month. The Emergency Manager shall not receive or accept any compensation from the City or the State except as provided for in this contract.

3.3 Payment for Services. The Emergency Manager salary shall be paid in installments consistent with the established written policies and procedures of the Michigan Department of Treasury. If requested by the State Treasurer, the Emergency Manager shall provide to the Michigan Department of Treasury additional information regarding services performed pursuant to this Contract. Performance and/or any early termination payments not to exceed the annual salary amount (prorated) shall be paid as mutually agreed among the parties.

3.4 Reimbursement for Actual and Necessary Expenses. The actual and necessary expenses of the Emergency Manager, including customary expenses related to travel, meals, and lodging which are incurred in connection with service to the City will be reimbursed by the City. The Emergency Manager shall provide original copies of all receipts for meals, lodging, and travel reimbursement with any request for reimbursement. Any reimbursement for expenses, including commuting, housing, and security detail automobile expenses, under this contract shall be reviewed and approved in writing by the City's Chief Financial Officer.

## 4. ADDITIONAL STAFF AND CONSULTANT FEES

4.1 Staff. The Emergency Manager may, as provided in the Act, appoint additional staff as necessary to fulfill the obligations of the Emergency Manager's appointment and duties under this Contract. Payment of compensation for additional staff will be the obligation of the City. While authority to hire additional staff rests with the Emergency Manager, the Emergency Manager agrees to consult with the State Treasurer, or the designee of the State Treasurer, at least 24 hours

2

before extending offers of employment for positions paying $50,000.00, or more, annually. The Emergency Manager shall issue a written employment contract to each individual hired pursuant to this Section, regardless of the compensation paid to that individual. The employment contract issued pursuant to this Section shall, as of the date the individual is hired by the Emergency Manager, prohibit the individual from engaging in any other employment for remuneration without the express written approval of the Emergency Manager. The Emergency Manager agrees to consult with the State Treasurer, or the designee of the State Treasurer, at least 24 hours before approving outside employment for any individual. A breach of this Section shall be a material breach of this Contract.

4.2 <u>Professional Assistance</u>. The Emergency Manager may, as provided in the Act, secure professional assistance as necessary to fulfill the obligations of the Emergency Manager's appointment and duties under this Contract. Payment of compensation for additional professional assistance will be the obligation of the City. The Emergency Manager agrees to consult with the State Treasurer, or the designee of the State Treasurer, at least 24 hours before authorizing professional services contracts of $50,000.00, or more, per engagement or project.

4.3 <u>Security</u>. The Emergency Manager will be entitled to receive security protection in connection with the Emergency Manager's duties under this Contract. Security personnel will be retained only upon the approval of the State Treasurer, or the designee of the State Treasurer, and only after consultation with the Director of the Michigan Department of State Police, or the designee of the Director of the Michigan Department of State Police. Payment of compensation for security personnel will be the obligation of the City.

## 5. REPRESENTATIONS

5.1 <u>Qualifications</u>. By signing this Contract, the Emergency Manager, represents that the Emergency Manager meets the minimum qualifications for appointment set forth in the Act. The Emergency Manager shall perform the duties of that office on a full-time basis, except as otherwise approved by the State Treasurer, and shall not accept any other employment or engage in any other activity for remuneration without the express written approval of the State Treasurer.

5.2 <u>Conflict of Interest</u>. The Emergency Manager represents and warrants that the Emergency Manager has no personal or financial interest, and will not acquire any such interest, that would conflict in any manner or degree with the performance of this Contract.

5.3 <u>Non-competition</u>. The Emergency Manager represents and warrants that the Emergency Manager is not subject to any non-disclosure, non-competition, or similar clause with current or prior clients or employers that will interfere with the performance of this Contract. The State will not be subject to any liability for any such claim.

5.4 <u>Facilities and Personnel</u>. The City will provide the Emergency Manager with proper facilities and personnel to perform the services and work required to be performed pursuant to this Contract.

5.5 <u>Records</u>. The Emergency Manager shall maintain complete records in accordance with

3
13-53846-tjt    Doc 1240-2    Filed 10/17/13    Entered 10/17/13 22:58:11    Page 13 of 18

generally accepted accounting practices and sound business practices. This requirement applies to all information maintained or stored in the computer system of the Emergency Manager or computer system of the City. The State Treasurer and his designees shall have the right to inspect all records related to this Contract.

5.6 Non-Discrimination.

a) The Emergency Manager shall comply with Public Act 220 of 1976, the Persons with Disabilities Civil Rights Act, MCL 37.1101 *et seq.*, and all applicable federal, State, and local fair employment practices and equal opportunity laws. The Emergency Manager covenants that the Emergency Manager will not discriminate against any employee or applicant for employment with respect to hire, tenure, terms, conditions, or privileges of employment, or a matter directly or indirectly related to employment, because of a disability that is unrelated to the individual's ability to perform the duties of a particular job or position. The Emergency Manager shall impose this covenant upon every subcontractor that enters into an agreement for the performance of any obligation imposed by this Contract. A breach of this covenant shall be a material breach of this Contract.

b) The Emergency Manager shall comply with Public Act 453 of 1976, the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*, and all applicable federal, State, and local fair employment practices and equal opportunity laws. The Emergency Manager covenants that the Emergency Manager will not discriminate against an employee or applicant for employment with respect to hire, tenure, terms, conditions, or privileges of employment, or a matter directly or indirectly related to employment, because of race, color, religion, national origin, age, sex, height, weight, or marital status. The Emergency Manager shall impose this covenant upon every subcontractor that enters into an agreement for the performance of any obligation imposed by this Contract. A breach of this covenant shall be a material breach of this Contract.

5.7 Unfair Labor Practices. The Emergency Manager shall not enter into a contract for the performance of any obligation imposed by this Contract with a subcontractor, manufacturer, or supplier whose name appears in the register prepared pursuant to Public Act 278 of 1980, MCL 423.322, of employers found in contempt of court for failure to correct unfair labor practices. The State may void this Contract if the Emergency Manager, or any subcontractor, manufacturer, or supplier of the Emergency Manager that is a party to a contract for the performance of any obligation imposed by this Contract, appears in the above mentioned register.

5.8 Independent Contractor. The relationship of the Emergency Manager to the State and to the City under this Contract is that of an independent contractor. Except as specifically provided in the Act, no liability, benefits, workers compensation rights or liabilities, insurance rights or liabilities, or any other rights or liabilities arising out of, or related to, a contract for hire, nor employer-employee relationship, shall arise, accrue, or be implied to either party under this Contract or to an agent, subcontractor, or employee of either party under this Contract, as a result of the performance of this Contract.

## 6. NOTICES

6.1 The State Treasurer is the designee for this Contract unless notice of another designation is provided by the Governor. All notices, correspondence, requests, inquiries, billing statements, and other documents mentioned in this Contract shall be directed to the attention of the State Treasurer, Andy Dillon, and to the following:

For the State:

> Michigan Department of Treasury
> Office of Legal Affairs
> Richard H. Austin Building, 430 West Allegan Street
> Lansing, Michigan 48922
> Phone: (517) 373-3223

For the Emergency Manager:

> Kevyn Orr
> 1126 Coleman A. Young Municipal Center
> Detroit, Michigan 48226

## 7. LIMITATION UPON LIABILITY

7.1 <u>The State</u>. The State, the Governor, the State Treasurer, and all other State officials are not liable for any obligation of or claim against the City resulting from actions taken in accordance with the Act or this Contract.

7.2 <u>The Emergency Manager</u>. Pursuant to the Act, in performing this Contract the Emergency Manager is engaging in a governmental function and is immune from liability for any action taken which the Emergency Manager reasonably believes to be within the scope of the Emergency Manager's authority granted by the Act or by this Contract.

## 8. INSURANCE

8.1 <u>General</u>. The Emergency Manager may procure and maintain, at the expense of the City, health, worker's compensation, general liability, professional liability, and motor vehicle insurance for the Emergency Manager and any employee, agent, appointee, or contractor of the Emergency Manager as may be provided to elected officials, appointed officials, or employees of the City. The insurance procured and maintained by the Emergency Manager may extend to any claim, demand, or lawsuit asserted or costs recovered against the Emergency Manager and any employee, agent, appointee, or contractor of the Emergency Manager to the extent permitted by the Act.

8.2 <u>Post-Contract</u>. If, after the date that the service of the Emergency Manager is concluded, the Emergency Manager or any employee, agent, appointee, or contractor of the Emergency Manager is subject to a claim, demand, or lawsuit arising from an action taken during the service of the Emergency Manager, and not covered by a procured insurance policy, litigation

5

expenses, including but not limited to attorney fees, payments in satisfaction of judgments, and payments made in settlement as specified pursuant to the Act, shall be paid by the City. If such expenses are not paid by the City, they shall be treated as a debt owed to this State pursuant to section 17a(5) of Public Act 140 of 1971, the Glenn Steil State Revenue Sharing Act of 1971, MCL 141.917a.

8.3 Additional Insurance. If the City has purchased, or otherwise obtained, an errors and omissions policy, then the Emergency Manager may choose to be covered under such policy at the expense of the City.

8.4 Payment by City. All insurance required under this Contract shall be acquired at the expense of the City under valid and enforceable policies, issued by insurers of recognized responsibility. The State Treasurer reserves the right to reject as unacceptable any insurer.

## 9. TERMINATION OF CONTRACT AND APPOINTMENT

9.1 Termination by the State.

a) The State. The Emergency Manager serves at the pleasure of the Governor except as provided in Section 9(3)(d) and Section 9(6)(c) of the Act. The Governor has the power to rescind the appointment and terminate this Contract at any time, and without cause, by issuing a Notice of Termination to the Emergency Manager.

9.2 Termination Process. Upon receipt of a Notice of Termination, and except as otherwise directed, the Emergency Manager shall:

a) Cease work under this Contract upon the date and to the extent specified in the Notice of Termination;

b) Incur no costs beyond the date specified by the Notice of Termination;

c) Submit to the State Treasurer on the date the termination is effective all records, reports and documents as this State shall specify and carry out such directives as the State Treasurer may issue concerning the safeguarding and disposition of files and property; and

d) Submit within 30 calendar days a closing memorandum and final billing, which shall be paid within 30 days.

9.3 Termination by Emergency Manager. The Emergency Manager may terminate this Contract at any time, with or without cause, with 30 days written notice to the State Treasurer. Within 30 days of the Emergency Manager's final day of service, the Emergency Manager shall submit a closing memorandum and final billing, which shall be paid within 30 calendar days.

## 10. GENERAL PROVISIONS

10.1 Governing Law and Jurisdiction. This Contract shall be subject to, and construed ac-

6
13-53846-tjt   Doc 1240-2   Filed 10/17/13   Entered 10/17/13 22:58:11   Page 16 of 18

cording to, the laws of the State of Michigan, and no action shall be commenced against this State, its agents, or employees for any matter whatsoever arising out of this Contract, in any court other than a Michigan State court.

10.2 No Waiver. A party's failure to insist on the strict performance of this Contract shall not constitute waiver of any breach of the Contract.

10.3 Other Debts. The Emergency Manager represents and warrants that the Emergency Manager is not, and will not become, in arrears on any contract, debt, or other obligation to the State of Michigan, including taxes.

10.4 Invalidity. If any provision of this Contract or its application to any persons or circumstances shall, to any extent, be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Contract shall not be affected, and each remaining provision of this Contract shall be valid and enforceable to the fullest extent permitted by law.

10.5 Headings. Section headings contained in this Contract are for convenience only and shall not be used to interpret the scope or intent of this Contract.

10.6 Entire Agreement. This Contract represents the entire and exclusive agreement between the parties and supersedes all proposals or other prior agreements, oral or written, and all other communications between the parties.

10.7 Amendment. No Contract amendment will be effective and binding upon the parties to this Contract unless the amendment expressly makes reference to this Contract, is in writing, and is signed by duly authorized representatives of all parties and all the requisite State approvals are obtained.

10.8 Order of Priority. This Contract and the Act shall be read to be consistent one with the other. However, if a conflict is deemed to exist between the terms of this Contract and the Act, the Act shall supersede the terms of this Contract.

10.9 Counterparts. This Contract may be executed in separate counterparts, each of which when executed shall be deemed an original, but all of which when taken together shall constitute one and the same Contract.

IN WITNESS WHEREOF, the Governor and the Emergency Manager have signed and executed this Contract.

STATE OF MICHIGAN

Dated: 3/27/13

_____
Rick Snyder, Governor

Dated: March 27th, 2013

_____
Kevyn Orr, Emergency Manager

Approved as to form and content pursuant to Section 9(3)(e) of Public Act 436 of 2012, the Local Financial Stability and Choice Act, MCL 141.1541 *et seq.*

Dated: March 27, 2013

_____
Andy Dillon, State treasurer