EXHIBIT B

TO THE DECLARATION OF CLAUDE D. MONTGOMERY, ESQ.

# In the Matter Of:

## IN RE CITY OF DETROIT, MICHIGAN

13-53846

## GAURAV MALHOTRA

*September 20, 2013*



800.211.DEPO (3376)
*EsquireSolutions.com*

1 So they were looking at those forecasts in isolation.
2 But that work sort of stopped I think right around in
3 the first four or five months of the engagement.
4     Q.    And why did that work stop?
5     A.    It was because the focus continued to be
6 on the general fund and these were self-sustaining
7 funds with respect to at least the Water and Sewer
8 Department. And so they were monitoring their -- and
9 dealing with their cash activity, although connected
10 to the City, but we weren't helping forecast receipts
11 and disbursements because they were not impacting the
12 general fund.
13     Q.    You previously testified in your prior
14 deposition that Ernst & Young was not asked to look at
15 possible disposition of City assets, is that correct?
16     A.    That's correct.
17     Q.    Why -- did you have a discussion with the
18 City regarding whether that would be valuable work for
19 Ernst & Young to provide?
20     MR. STEWART: Objection.
21 BY THE WITNESS:
22     A.    I -- I'm not sure I follow the question.
23 BY MS. BRUNO:
24     Q.    How did it come about that Ernst & Young



1  didn't evaluate the value of disposition of some of
2  the City assets?
3      A.   It was not a part of our scope of work.
4      Q.   You would agree that there could be cash
5  value to the disposition of some of those assets,
6  would you not?
7      MR. STEWART:  Objection.
8  BY THE WITNESS:
9      A.   I think that's a better question to ask
10 for the City's investment banker.
11 BY MS. BRUNO:
12     Q.   Well, I'm not talking about the specific
13 numbers here, but you know what some of the assets
14 available to the City are, correct?
15     A.   In general, yes.
16     Q.   And you understand that some of those
17 assets could be valuable or quite valuable, correct?
18     MR. STEWART:  Objection.
19 BY THE WITNESS:
20     A.   It depends on what assets you are talking
21 about.
22 BY MS. BRUNO:
23     Q.   Why don't we look at Exhibit No. 4 -- oh,
24 I'm sorry.  I'll hand it to you.  Exhibit No. 4 from



800.211.DEPO (3376)
EsquireSolutions.com

```
 1  your prior deposition, I'll hand it to you.  It was
 2  the Proposal For Creditors --
 3       A.   Okay.
 4       Q.   -- dated June 14.
 5            And I believe the assets are identified on
 6  90.  And it is 90 of the computer generated numbers on
 7  the bottom.
 8            And on pages 90 through 96, the
 9  presentation discussed various assets that the City
10  could derive some cash benefit from, correct?
11       MR. STEWART:  Objection.
12  BY THE WITNESS:
13       A.   Yes.
14  BY MS. BRUNO:
15       Q.   And, well, I don't want to quarrel or even
16  discuss with you what the actual specific value of any
17  one of those assets are, but you would agree that the
18  implementation of any of these proposals would improve
19  the City's cash position, would it not?
20       MR. STEWART:  Objection.
21  BY THE WITNESS:
22       A.   Here is what I would say.  The current
23  ten-year projections right now do not include any
24  incremental proceeds that could be available to the
```



1  City from asset sales.  And that's where I -- because
2  that's what's very clearly laid out in the proposal.
3         If there are proceeds available that are
4  available to the City, those numbers would change.
5  But I can at least highlight and articulate what the
6  assumptions are with respect to the ten-year forecast
7  that the City has put out.
8  BY MS. BRUNO:
9      Q.    And so your assumptions include that none
10 of these assets will be disposed of in any way, is
11 that correct?
12     A.    That's generally correct.
13     Q.    Sticking with Exhibit No. 4 before you, if
14 you'd turn to page 80 of the document.  I'm sorry.  I
15 should say 87 of the computer generated numbers.
16        And this is a portion of the presentation
17 that discusses increasing the tax collection.  You
18 look like you are on a different page than I am here.
19     A.    87.
20     Q.    You've got it?
21     A.    Yes.
22     Q.    You would agree that increasing the tax
23 collection rates and improving the collection of past
24 due taxes could materially improve the City's



```
 1                REPORTER'S CERTIFICATE
 2         I, JULIANA F. ZAJICEK, C.S.R. No. 84-2604,
 3   a Certified Shorthand Reporter, do hereby certify:
 4         That previous to the commencement of the
 5   examination of the witness herein, the witness was
 6   duly sworn to testify the whole truth concerning the
 7   matters herein;
 8         That the foregoing deposition transcript
 9   was reported stenographically by me, was thereafter
10   reduced to typewriting under my personal direction and
11   constitutes a true record of the testimony given and
12   the proceedings had;
13         That the said deposition was taken before
14   me at the time and place specified;
15         That I am not a relative or employee or
16   attorney or counsel, nor a relative or employee of
17   such attorney or counsel for any of the parties
18   hereto, nor interested directly or indirectly in the
19   outcome of this action.
20         IN WITNESS WHEREOF, I do hereunto set my
21   hand on this 21st day of September, 2013.
22
23   
24   JULIANA F. ZAJICEK, Certified Reporter
```

ESQUIRE

800.211.DEPO (3376)  
EsquireSolutions.com