# Exhibit B

## Page 1

```
 1        IN THE UNITED STATES BANKRUPTCY COURT
 2              EASTERN DISTRICT OF MICHIGAN
 3                    SOUTHERN DIVISION
 4
 5   In re                        Chapter 9
 6   CITY OF DETROIT, MICHIGAN,   Case No. 13-53846
 7             Debtor.            Hon. Steven W. Rhodes
 8   _____/
 9              VIDEOTAPED DEPOSITION
10
11   DEPONENT:  KEVYN ORR
12   DATE:      Monday, September 16, 2013
13   TIME:      10:08 a.m.
14   LOCATION:  MILLER CANFIELD PADDOCK & STONE PLC
15              150 West Jefferson, Suite 2500
16              Detroit, Michigan
17   REPORTER:  Jeanette M. Fallon, CRR/RMR/CSR-3267
```

## Page 2

```
 1   APPEARANCES:
 2
 3   JONES DAY
 4   By:  Gregory M. Shumaker
 5        Dan T. Moss
 6   51 Louisiana Avenue, NW
 7   Washington, D.C. 20001.2113
 8   202.879.3939
 9        Appearing on behalf of the Debtor
10
11   DENTONS
12   By:  Anthony B. Ullman
13   620 Fifth Avenue
14   New York, NY 10020.2457
15   212.632.8342
16        Appearing on behalf of Retirees Committee
17
18   COHEN WEISS AND SIMON LLP
19   By:  Peter D. DeChiara
20   330 West 42nd Street
21   New York, NY 10036.6979
22   212.356.0216
23        Appearing on behalf of UAW
```

## Page 3

```
 1   APPEARANCES (continued):
 2
 3   LOWENSTEIN SANDLER LLP
 4   By:  Sharon L. Levine
 5   65 Livingston Avenue
 6   Roseland, NJ 07068
 7   973.597.2374
 8   -and-
 9   AFSCME
10   By:  Michael L. Artz
11        Tiffany Ricci
12   1101 17th Street, NW
13   Suite 900
14   Washington, D.C. 20036
15   202.775.5900
16        Appearing on behalf of AFSCME
17
18   CLARK HILL PLC
19   By:  Jennifer K. Green
20   500 Woodward Avenue, Suite 3500
21   Detroit, MI 48226
22   313.965.8274
23        Appearing on behalf of Retirement Systems
```

## Page 4

```
 1   APPEARANCES (continued):
 2
 3   WILLIAMS WILLIAMS RATTNER & PLUNKETT PC
 4   By:  Ernest J. Essad, Jr.
 5   380 N Old Woodward Ave Ste 300
 6   Birmingham, MI 48009
 7   248.642.0333
 8        Appearing on behalf of FGIC
 9
10   SIDLEY AUSTIN LLP
11   By:  Guy S. Neal (appearing via LiveNote Streaming)
12   1501 K St., NW
13   Washington, D.C.
14   202.736.8000
15        Appearing on behalf of National Public Finance
16        Guarantee Corp.
17
18   WINSTON & STRAWN LLP
19   By:  Bianca M. Forde (appearing via LiveNote Streaming)
20   200 Park Avenue
21   New York, NY 10166.4193
22   212.294.4733
23        Appearing on behalf of Assured Guaranty Municipal
24        Corp.
25   ALSO PRESENT:  Mark Meyers, videographer
```



Page 129

1 Q. And this meeting took about two hours total; is that
2    right?
3 A. Approximately that time.
4 Q. And you indicated in your -- the declaration that you
5    filed here that at the June 14th meeting you presented
6    the proposal and you presented the executive summary
7    and people got the full proposal as they exited and I
8    think you said that you answered questions posed by
9    the attendees?
10 A. I believe that's correct.
11 Q. Is that an accurate and truthful description of what
12    happened at the June 14th meeting?
13 A. Yes.
14 Q. There were no actual negotiations at that meeting;
15    were they?
16 A. I don't think that -- you know, be careful of the word
17    negotiations, but no, not as it's generally
18    understood.
19 Q. Now, the next meeting that I believe took place was on
20    June 20; is that right?
21 A. Are you reading through my declaration?
22 Q. Uh-huh.
23 A. Page 55 has a list of meetings, around that
24    approximate time.
25 Q. Uh-huh.

Page 130

1 A. Okay, yes.
2 Q. So the next one was June 20; is that right?
3 A. If that's what it says in my declaration, yes.
4 Q. And there were both morning and afternoon sessions; is
5    that right?
6 A. Yes.
7 Q. And this was six days after the proposal had been
8    presented; correct?
9 A. Yeah, I haven't done the counting, but 14th to 20th,
10    yeah, it would be six calendar days, yes.
11 Q. And it was a two-hour morning session and about 90
12    minutes for the afternoon session?
13 A. That sounds about right.
14 Q. And in your affidavit or your declaration you
15    indicated that at this meeting, these meetings, the
16    City presented a more in-depth look at its analysis of
17    the health and pension obligations and suggested for
18    proposals -- suggested proposals for the modification
19    thereof that the City could fund within its means
20    going forward and you provided handouts of the
21    presentations. Are those accurate descriptions of
22    what --
23 A. Yes.
24 Q. So there were no actual negotiations at that meeting
25    either; were there?

Page 131

1 A. I'm going to defer as to whether or not those
2    constitute negotiations. There was a give and take is
3    my understanding, but I'm not going to testify that
4    those did not constitute negotiations.
5 Q. Well, was there any actual sit down, you know, and
6    bargaining as to what the City would agree to as an
7    alternative to what was put in the June 4th (sic)
8    proposal and what it would not?
9 A. Here again, let me be careful here. The obligation to
10    collectively bargain is suspended for five years so I
11    just want to state that for the record. We are not in
12    any way by answering this question seeking to waive
13    that right, as it is traditionally understood. That
14    being said, I think at those meetings and all the
15    meetings I've referenced we generally asked during
16    those meetings for proposals which could be
17    characterized as negotiations.
18 Q. Did the City make any counterproposals to the June
19    14th proposal at the June 20 meetings?
20 A. Well, we wouldn't bargain against ourselves.
21 Q. It's a yes or no question; okay?
22 A. Sir, throughout the day I'm trying to give you a
23    response. I know you want yes or no questions for
24    purposes of your briefing, I suppose, but I'm trying
25    to give you an accurate response.

Page 132

1 Q. I would appreciate it if you could answer the question
2    without making speeches.
3       MR. ULLMAN: Can you have the question
4    read back, please?
5       THE WITNESS: It's not a speech, it's a
6    response.
7       MR. ULLMAN: Question read back.
8    (Record read back as requested.)
9       MR. SHUMAKER: Object to the form.
10 A. We didn't receive any counterproposals so there was
11    nothing to counter.
12 Q. And did you make any further mod -- did you make any
13    modifications on June 20 to the proposal you had made
14    on June 14th?
15 A. Here again, I'm going to be careful as to whether or
16    not what we discussed at the 20 referred to
17    modifications but suffice it to say we went over in
18    detail as I said in my declaration our proposal on the
19    14th and asked for responses.
20 Q. Okay. The next meeting I believe took place in July;
21    is that right? July 10th and 11th?
22 A. Yes, here again, if you're reading my declaration,
23    that's what I state.
24 Q. Now, in this set of meetings there were -- first of
25    all, were you present there?

Page 301

1 pursuant to my contract and in fact I have not been
2 seeking any benefits under that contract such as
3 commuting expense, healthcare, malpractice insurance,
4 directors and officers insurance. In fact, I've been
5 subsidizing my efforts out of my own pocket.
6     MS. GREEN: If that situation changes and
7 private funds are provided, I would request a standing
8 request for supplementation to be made aware if that
9 happens.
10     MR. SHUMAKER: I'm sure --
11     MS. GREEN: I'm directing that to your
12 counsel. You don't have to personally let me know.
13     MR. SHUMAKER: We'll look into that if that
14 would happen.
15     MS. GREEN: I appreciate that.
16     THE WITNESS: I have not asked and there is
17 no intent or expectation in that regard.
18 Q. The -- I have one last question.
19     We talked about the draft of the petition
20 being prepared by Jones Day. There were media reports
21 that the City was planning to file on Friday, July
22 19th. Do you recall seeing those?
23 A. Yes.
24 Q. What was it that made the City -- that prompted the
25 City to file them instead on July 18th at 4:06 p.m.?

Page 302

1 A. Counselor, just because they're media reports doesn't
2 mean that that was accurate.
3 Q. Was there ever a plan to file them on the 19th?
4 Setting aside what the media reported, was there a
5 plan to file them on the 19th?
6 A. No, my plan was to have the permission, the authority,
7 to file them and make that call at some point after I
8 transmitted my letter of July 16.
9 Q. Were any of your conversations on the 18th or the 17th
10 relating to the timing of the petition?
11 A. Outside of communications with counsel?
12     MR. SHUMAKER: I'm going to object to the
13 form just -- I'm not following your question,
14 counselor.
15 Q. Were any of the conversations that you had on the 17th
16 or the 18th with, for instance, the governor, we've
17 talked about these conversations, were any of those
18 conversations relating to the timing of the filing
19 itself?
20     MR. SHUMAKER: Again, to the extent that
21 you're going to go into the content of the
22 conversations where counsel was present between
23 Mr. Orr and the governor, I'm going to instruct him
24 not to answer.
25 Q. Were there any conversations that you had without

Page 303

1 counsel present?
2 A. No.
3 Q. And are you not willing to answer even what topics --
4 in broad categories of topics that were discussed?
5     MR. SHUMAKER: Again, to the extent that
6 they reveal what the communications are, I'm going to
7 instruct him not to answer.
8 Q. Do you know if anyone else from your team had
9 conversations, outside of conversations with counsel,
10 relating to the timing of the filing?
11 A. There may have been conversations. I'm not aware of
12 any specific ones.
13     MS. GREEN: I don't have any further
14 questions. Do you have follow-up?
15     MR. SHUMAKER: Thank you, counsel.
16     THE VIDEOGRAPHER: This concludes the
17 deposition and we're going off the record at 6:12 p.m.
18     (Deposition adjourned at 6:12 p.m.)
19         *  *  *

Page 304

1 State of Michigan)
2 County of Genesee)
3         Certificate of Notary Public
4   I certify that this transcript is a complete, true and
5 correct record of the testimony of the witness held in this
6 case.
7   I also certify that prior to taking this deposition,
8 the witness was duly sworn or affirmed to tell the truth.
9   I further certify that I am not a relative or an
10 employee of or an attorney for a party; and that I am not
11 financially interested, directly or indirectly, in the
12 matter.
13         WITNESS my hand this 19th day of September,
14 2013.

*(signature)*
Jeanette M. Fallon, CRR/RMR/CLR/CSR-3267
Certified Realtime Reporter
Registered Merit Reporter
Certified LiveNote Reporter
Certified Shorthand Reporter
Notary Public, Genesee, Michigan
Acting in Oakland County, Michigan
My Commission Expires: 9-19-18

