6 0 0 8 2 6 0 3 MAY 1 9 '06

Li-44727      Pa-867
206286376    5/19/2006   09:00AM
Bernard J. Youngblood
Wayne Co. Register of Deeds

State of Michigan                              **MORTGAGE**
After Recording Return To:
FLAGSTAR BANK
5151 CORPORATE DRIVE
TROY, MI 48098
FINAL DOCUMENTS, MAIL STOP W-530-3

This instrument was prepared by: AMY RANDS
                                5151 CORPORATE DIVE
                                TROY, MI 48098

———————————————— [Space Above This Line For Recording Data] ——

THIS MORTGAGE ("Security Instrument") is given on  MAY 11, 2006.        The Mortgagor is

                                                              whose address is

15746 ROCKDALE
DETROIT, MI 48223

                                                              ("Borrower").
**This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") as Mortgagee.**
MERS is the nominee for Lender, as hereinafter defined, and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026,
telephone (888) 679-MERS.
GOLDEN MORTGAGE CORPORATION, A MICHIGAN CORPORATION

                                                       ("Lender") is organized and
existing under the laws of MICHIGAN,                              and has an address of
43252 WOODWARD AVE, SUITE 150, BLOOMFIELD HILLS, MI   48302.

Borrower owes Lender the principal sum of  *****************SIXTY EIGHT THOUSAND FIVE AND NO/100
******************************************************************* Dollars (U.S.      $68,005.00   ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on  JUNE 1, 2036.
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under
paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant
and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns

FHA Michigan Mortgage - 4/96
© 2000-2002 Online Documents, Inc.              Page 1 of 5                     Initials: |

13-53846-tjt   Doc 1266-4   Filed 10/18/13   Entered 10/18/13 17:28:03   Page 1 of 6

of MERS, with power of sale, the following described property located in Wayne ~~Li-44727~~    V1 p~~WBCD~~ LOAN #
County, Michigan:
METES AND BOUNDS
APN #: WARD 22 ITEM 106930

which has the address of 15709 PIERSON ST, Detroit

[Street, City],

Michigan            48223            ("Property Address");
            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

1.    **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.    **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.    **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
Third, to interest due under the Note;
Fourth, to amortization of the principal of the Note; and
Fifth, to late charges due under the Note.

4.    **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including

FHA Michigan Mortgage - 4/96
© 2000-2002 Online Documents, Inc.                              Page 2 of 5                              Initials:

                                                                                                        05-1

V1 WBCD LOAN #

Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Ler
Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against
loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender.
The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and
in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made
promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such
loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be
applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security
Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal,
or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not
extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount
of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under
the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the
indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application;
Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after
the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to
occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender
determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are
beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste
or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear
excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take
reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower,
during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to
provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited
to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is
on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the
leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with
any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby
assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the
Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note
and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to
prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of
the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess
proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall
be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental
or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations
on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the
Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other
covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly
affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or
regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights
in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be
secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate,
and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a)
agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests
in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion
operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to
Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject
to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.
Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment
defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior
to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this
Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the
Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the
Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or
otherwise transferred (other than by devise or descent), and

FHA Michigan Mortgage - 4/96
© 2000-2002 Online Documents, Inc.                        Page 3 of 5                              Initials:

05-10

**Printed on:9/5/2013 1:26 PM**
13-53846-tjt   Doc 1266-4   Filed 10/18/13   Entered 10/18/13 17:28:03   Page 3 of 6

Li -44727          Pa-870

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

FHA Michigan Mortgage - 4/96
© 2000-2002 Online Documents, Inc.                        **Page 4 of 5**                        Initials

05-1(

13-53846-tjt    Doc 1266-4    Filed 10/18/13    Entered 10/18/13 17:28:03    Page 4 of 6

Lɨ-44727

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in paragraph 13. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 17 or applicable law.

**18. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument without charge to Borrower.

**19. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider        ☐ Growing Equity Rider        ☐ Graduated Payment Rider
☐ Planned Unit Development Rider        ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signature Redacted _____ (Seal)

Signature Redacted _____ eal)

State of MICHIGAN                                    County of WAYNE

The foregoing instrument was acknowledged before me this MAY 11, 2006 (date)
by ____                                    a married man, and
____                                    his wife
____
(name of person acknowledged).

_____
Signature of Person Taking Acknowledgment

Kevin A. McNulty, Notary Public
State of Michigan, County of Oakland
My Commission Expires 6/24/2011
Acting in the County of ____

Kevin A. McNulty, Notary Public
State of Michigan, County of Oakland
My Commission Expires 6/24/2011
Acting in the County of Wayne

_____
Title or Rank

_____
Serial Number, if any

FHA Michigan Mortgage - 4/96
© 2000-2002 Online Documents, Inc.                Page 5 of 5                MIEFHADE
                                                                           05-10-2006 13:33

Li-44727        Pa-872

Land in the City of Detroit, County of Wayne, State of Michigan being more particularly described as:

Lot 56, REDFORD MANOR SUBDIVISION, according to the plat thereof as recorded in Liber 38, Page 11 of Plats, Wayne County Records.

Commonly known as: 15709 Pierson
Tax Parcel ID:  Ward 22   Item 106930



(0510749.LSB.PFD/0510749.LSB/37)

13-53846-tjt   Doc 1266-4   Filed 10/18/13   Entered 10/18/13 17:28:03   Page 6 of 6