# EXHIBIT 6-G



## EMERGENCY MANAGER
## CITY OF DETROIT

### ORDER No. 4

## APPROVAL OF THE CONTRACT FOR PROFESSIONAL LEGAL SERVICES BETWEEN THE CITY OF DETROIT AND JONES DAY

BY THE AUTHORITY VESTED IN THE EMERGENCY MANAGER
FOR THE CITY OF DETROIT
PURSUANT TO MICHIGAN'S PUBLIC ACT 436 OF 2012,
KEVYN D. ORR, THE EMERGENCY MANAGER,
ISSUES THE FOLLOWING ORDER:

*Whereas*, on April 16, 2013, the Detroit City Council voted to approve the Contract for Professional Legal Services Between the City of Detroit and Jones Day (including the related engagement letter between Jones Day and the City dates as of March 15, 2013, the "Jones Day Contract"); and

Pursuant to Emergency Manager Order No. 3, contracts entered into by the Detroit Mayor and City Council are not valid or effective unless and until approved by the Emergency Manager or his designee in writing; and

The Emergency Manager believes that, at the present time, retaining the law firm of Jones Day to perform the work necessary for restructuring planning and negotiations is in the best interest of the City of Detroit;

It is hereby ordered that:

1. The Jones Day Contract is approved in all respects.

2. Jones Day is authorized to perform work as restructuring counsel to the City on the terms set forth in the Jones Day Contract, effective as of March 15, 2013.

1

3. This Order is effective immediately upon the date of execution below.

4. This Order shall be distributed to the Mayor, City Council members and the City's Chief Financial Officer.

5. The Emergency Manager may modify, rescind, or replace this Order at any time.

Dated: April 25, 2013

By: _____

Kevyn D. Orr
Emergency Manager
City of Detroit

cc:    State of Michigan Department of Treasury
       Mayor David Bing
       Members of Detroit City Council

# EXHIBIT 6-H

**Page 1**

```
 1        IN THE UNITED STATES BANKRUPTCY COURT
 2             EASTERN DISTRICT OF MICHIGAN
 3                  SOUTHERN DIVISION
 4
 5   In re                    Chapter 9
 6   CITY OF DETROIT, MICHIGAN,    Case No. 13-53846
 7            Debtor.           Hon. Steven W. Rhodes
 8   _____/
 9              VIDEOTAPED DEPOSITION
10
11   DEPONENT: KEVYN ORR
12   DATE:     Monday, September 16, 2013
13   TIME:     10:08 a.m.
14   LOCATION: MILLER CANFIELD PADDOCK & STONE PLC
15             150 West Jefferson, Suite 2500
16             Detroit, Michigan
17   REPORTER: Jeanette M. Fallon, CRR/RMR/CSR-3267
18
19
20
21
22
23
24
25
```

**Page 2**

```
 1   APPEARANCES:
 2
 3   JONES DAY
 4   By:  Gregory M. Shumaker
 5        Dan T. Moss
 6   51 Louisiana Avenue, NW
 7   Washington, D.C. 20001.2113
 8   202.879.3939
 9        Appearing on behalf of the Debtor
10
11   DENTONS
12   By:  Anthony B. Ullman
13   620 Fifth Avenue
14   New York, NY 10020.2457
15   212.632.8342
16        Appearing on behalf of Retirees Committee
17
18   COHEN WEISS AND SIMON LLP
19   By:  Peter D. DeChiara
20   330 West 42nd Street
21   New York, NY 10036.6979
22   212.356.0216
23        Appearing on behalf of UAW
24
25
```

**Page 3**

```
 1   APPEARANCES (continued):
 2
 3   LOWENSTEIN SANDLER LLP
 4   By:  Sharon L. Levine
 5   65 Livingston Avenue
 6   Roseland, NJ 07068
 7   973.597.2374
 8   -and-
 9   AFSCME
10   By:  Michael L. Artz
11        Tiffany Ricci
12   1101 17th Street, NW
13   Suite 900
14   Washington, D.C. 20036
15   202.775.5900
16        Appearing on behalf of AFSCME
17
18   CLARK HILL PLC
19   By:  Jennifer K. Green
20   500 Woodward Avenue, Suite 3500
21   Detroit, MI 48226
22   313.965.8274
23        Appearing on behalf of Retirement Systems
24
25
```

**Page 4**

```
 1   APPEARANCES (continued):
 2
 3   WILLIAMS WILLIAMS RATTNER & PLUNKETT PC
 4   By:  Ernest J. Essad, Jr.
 5   380 N Old Woodward Ave Ste 300
 6   Birmingham, MI 48009
 7   248.642.0333
 8        Appearing on behalf of FGIC
 9
10   SIDLEY AUSTIN LLP
11   By:  Guy S. Neal (appearing via LiveNote Streaming)
12   1501 K St., NW
13   Washington, D.C.
14   202.736.8000
15        Appearing on behalf of National Public Finance
16        Guarantee Corp.
17
18   WINSTON & STRAWN LLP
19   By:  Bianca M. Forde (appearing via LiveNote Streaming)
20   200 Park Avenue
21   New York, NY 10166.4193
22   212.294.4733
23        Appearing on behalf of Assured Guaranty Municipal
24        Corp.
25   ALSO PRESENT:  Mark Meyers, videographer
```



Page 25

1  or the city of Michigan (sic) about the possibility of
2  becoming Emergency Manager?
3  A.  Absolutely not.
4  Q.  And at the top it says, bet he asked if Kevyn could be
5  EM, and that in fact is why he was calling?
6  A.  Yes, I see that.
7  Q.  And then that's what happened?  He did call and -- he
8  had called Corinne Ball to ask about you being the EM?
9      MR. SHUMAKER:  Object to the form.
10  A.  This document -- I don't know.  My testimony is that I
11  believe Rich had called my managing partner, who was
12  Steve Brogan.  I don't know if he called Corinne Ball.
13  This seems to be an email exchange between him and
14  Corinne Ball and then Heather Lennox and Amy Ferber.
15  Q.  Okay, fair enough.  But you recall around that day
16  someone telling you that Baird had called talking
17  about the EM position and then shortly thereafter you
18  in fact got a call; is that right?
19      MR. SHUMAKER:  Object to the form.
20  A.  Yeah.  I don't know if it was -- it was soon
21  thereafter.  I don't know if it was that specific day,
22  but it was soon thereafter.
23  Q.  And you then got -- did you get a call from Mr. Baird
24  directly?
25  A.  No.

Page 26

1  Q.  Who did you get a call from?
2  A.  Steve Brogan.
3  Q.  Okay, that's your managing partner?
4  A.  Yes.
5  Q.  And he told you that Baird wanted you to be the EM?
6  A.  He told me that they had inquired whether I was
7  interested in applying to become the EM.
8  Q.  Okay, and your response was?
9  A.  No.
10  Q.  Okay.  And I take it there were further conversations?
11  A.  Yes.  That conversation was no.  I did not want to
12  leave the firm and that we would tell them that.
13  Q.  And did you have a conversation with Richard Baird
14  concerning the possibility of your becoming the EM on
15  or about this time frame at the end of January of
16  2013?
17  A.  Yeah, I don't know if it was end of January, here
18  again being in February, but I recall having a
19  conversation with Rich Baird soon thereafter.
20  Q.  Okay, let's look at the next document, which we'll
21  mark as Orr 2.
22      (Marked Exhibit No. 2.)
23  Q.  What we've marked as Orr 2 is a document ending in
24  Bates number 303.
25  A.  Yes.

Page 27

1  Q.  You've seen this email chain before, Mr. Orr?
2  A.  Yes.
3  Q.  And in fact you are on both emails; are you?
4  A.  I think I wrote the top one.
5  Q.  Okay.  Now, what is the role of Jones Day at this
6  time?  Does it have an official role with Detroit or
7  with the State of Michigan?
8  A.  No, at this time, as far as I recall, Jones Day was a
9  candidate to be the attorneys for the City.
10  Q.  Now, starting with the bottom email, this is from
11  Corinne Ball to you.
12  A.  Yes.
13  Q.  And she goes on to talk about food for thought for
14  your conversation with Baird.  Obviously referring to
15  a conversation expected between you and Baird.  She
16  makes reference to the Bloomberg Foundation and
17  talking about whether someone should ask Baird about
18  financial support for the project and in particular
19  the EM.  Can you tell me what that's referring to?
20  A.  This is Corinne's email to me and I think she was
21  talking in some form about the Bloomberg Foundation
22  supporting Detroit efforts with the EM.  And I think
23  -- I don't know if in this email or subsequently said
24  something along the lines of I don't want anything to
25  be extraordinary, but I think at that point -- as I

Page 28

1  said, on the 31st, so it wasn't on the 30th, it was
2  the 31st -- that I wasn't interested in the job.
3  Q.  Do you know what financial support she's referring to?
4  Did you have a conversation with her about this?
5  A.  He we did not have a -- well, we may have had a
6  subsequent conversation about financial support.  We
7  -- I don't want to speculate but there may have been a
8  conversation about supplementing the EM salary.
9  Q.  An additional salary that would be funded privately?
10  Is that what you're saying?
11  A.  Yeah, I think the statute allows the EM to have
12  additional compensation and that may have been what
13  this was referring to or it may have been about the
14  Bloomberg Foundation helping Detroit directly.  I'm
15  not sure, but there may have been that discussion.
16  That seems to remind me of something along those
17  lines.
18  Q.  The next statement from -- or the last sentence in
19  Ms. Ball's email says, I can ask Harry for contact
20  information.  This kind of support in ways
21  nationalizes the issue in the project.
22      Do you have an understanding of what she's
23  referring to?
24  A.  I do not.
25  Q.  You don't know what she meant when she said -- she



Page 225

1  said before, I think my family and I were out that
2  preceding Friday, Saturday and Sunday and we actually
3  ran into the governor's family coming onto the island
4  I believe that Sunday so I don't think we had that
5  meeting that week so it may have actually been the
6  following week.
7  Q.  Meaning sometime during the week of July 15th?
8  A.  No, or the end of --
9  Q.  So it was during --
10 A.  -- the week of the 8th.  The 8th.  But I did not have
11    a meeting with the governor that week.
12 Q.  Well --
13 A.  Now that I look at the calendar.
14 Q.  Okay.
15 A.  Okay.
16 Q.  So just to clarify, it appears more likely than not
17    that you did not have a meeting between you and the
18    governor the week of July 8th but your understanding
19    is that during the week of July 8th, probably the
20    latter part of that week, somebody on behalf of the
21    Emergency Manager let the governor or the state know
22    that you were drafting or starting to draft the July
23    16th request and that you had concerns about the
24    Flower s/Webster litigations?
25 A.  Yeah, and here again, I don't know if so much concerns

Page 226

1  -- it wasn't like we were focused on Flowers/Webster,
2  we were saying in the universe of the world that
3  litigation, whatever name, and the Syncora struggle,
4  were creating a situation that was untenable and
5  threatening what we had wanted to do.
6  Q.  Lamont Satchel.
7  A.  Yes.
8  Q.  He's your -- what's his title?
9  A.  He is the, I believe, labor negotiator for the City.
10 Q.  And what's his scope of authority?
11 A.  His scope of authority initially as labor negotiator
12    was to oversee, monitor and lead labor relationships
13    with the City and its labor partners.
14 Q.  And to whom -- and who is his direct report?
15 A.  At this point Lamont's direct report -- well, it is --
16    the org chart is being revised, but his direct report
17    would have been to the chief operating officer.
18 Q.  And who was that?
19 A.  At that time it would have been Gary Brown.
20 Q.  And who is it today?
21 A.  It still goes through Gary Brown, but I am intimately
22    involved with the process.
23 Q.  And do you know whether or not during the month of
24    June prior and up through -- starting with June 1
25    through July 18th --

Page 227

1  A.  Yes, July 18th.
2  Q.  -- did Lamont Satchel have any meetings with the labor
3    organizations?
4  A.  Do I know?  I know that during this time the CBAs,
5    some of the City's Collective Bargaining Agreements
6    were expiring and I believe that Lamont did have
7    meetings during that time not just related with that
8    but with other issues as well.
9  Q.  During your prior testimony -- and I apologize for
10   skipping around, but I don't want to duplicate what's
11   already been done.
12 A.  That's okay.
13 Q.  You spoke about Jones Day doing a presentation or
14   interview to the state back in January, the end of
15   February.
16 A.  Yeah, the documents I was shown this morning would
17   make it January.
18 Q.  And with whom did Jones Day meet at that time, who
19   physically was in the room?
20 A.  Treasurer Dillon, then CFO Jack Martin, Rich Baird,
21   Kriss Andrews, Ken Buckfire and one of his colleagues.
22 Q.  Any other outside consultants besides Miller Buckfire?
23 A.  Well, Rich Baird is on contract to the state, but I
24   don't -- I think -- I don't recall if Ernst & Young
25   was there.  There was a member of the financial

Page 228

1  advisory board.
2  Q.  Do you recall who that was?
3  A.  As soon as you said that, it went out of my head.
4    Very, very sharp, as -- Ken -- Ken Whipple was there.
5    I'm just going through the room.  Andy, Ken Whipple,
6    Jack Martin, Kriss Andrews, Rich Baird.  That's all
7    that I recall off the top of my head and Miller
8    Buckfire and one of his colleagues.
9  Q.  And who was there from Jones Day?
10 A.  Aaron Agenbroad -- they were all partners.  Aaron
11   Agenbroad, Bruce Bennett, Heather Lennox, myself,
12   Corinne Ball, Steve Brogan, and I think that was -- I
13   think that was our team.
14 Q.  What was Aaron's last name again?
15 A.  Agenbroad, A-G-E-N-B-R-O-A-D.
16 Q.  What department is he in?
17 A.  Aaron Agenbroad is a partner in charge of the
18   San Francisco office.  He is in the labor.
19 Q.  He's in the labor group?
20 A.  Uh-huh.
21 Q.  Corinne, all the rest of the attorneys on the team
22   were bankruptcy?
23 A.  No.  Bruce Bennett is in the bankruptcy group.
24   Corinne Ball was in the bankruptcy group.  Heather
25   Lennox is in the structured finance and bankruptcy.



# EXHIBIT 6-I

```
 1              UNITED STATES BANKRUPTCY COURT
          FOR THE EASTERN DISTRICT OF MICHIGAN
 2                SOUTHERN DIVISION - DETROIT
     --------------------------------
 3   In re:                          Chapter 9

 4   CITY OF DETROIT, MICHIGAN,      Case No. 13-53846

 5              Debtor,              Hon. Steven W. Rhodes
     --------------------------------
 6   V I D E O T A P E D   D E P O S I T I O N   O F

 7   WITNESS:      GOVERNOR RICHARD D. SNYDER

 8   LOCATION:     The Romney Building
                   111 S. Capitol Avenue
 9                 Lansing, Michigan

10   DATE:         Wednesday, October 9, 2013
                   8:38 a.m.
11

12   APPEARANCES:
     FOR PLAINTIFFS FLOWERS:
13
                   LAW OFFICE OF WILLIAM A. WERTHEIMER
14                 30515 Timberbrook Lane
                   Bingham Farms, Michigan   48025
15                 248.644.9200
                   billwertheimer@gmail.com
16                 BY: WILLIAM A. WERTHEIMER   (P26275)

17   FOR INTERNATIONAL UNION, UAW:

18                 COHEN, WEISS and SIMON, LLP
                   330 West 42nd Street
19                 New York, New York  10036-6976
                   212.563.4100
20                 pdechiara@cwsny.com
                   BY: PETER D. DeCHIARA, ESQUIRE
21
     FOR THE RETIREES COMMITTEE:
22
                   DENTONS US LLP
23                 1221 Avenue of the Americas
                   New York, New York  10020-1089
24                 212.768.6881
                   arthur.ruegger@dentons.com
25                 BY: ARTHUR H. RUEGGER, ESQUIRE
```

Time stamps (08:25:11) appear on lines 1 through 25.

| | | |
|---|---|---|
| 09:17:33 | 1 | Q. From June 2012 through the present, does Jones Day |
| 09:17:43 | 2 | provide any services or is it retained or an |
| 09:17:47 | 3 | approved attorney for the State? |
| 09:17:51 | 4 | A. I don't know. My understanding is Jones Day's |
| 09:17:55 | 5 | relationship is with the City of Detroit. |
| 09:17:57 | 6 | Q. Did you ever consider disqualifying either Jones Day |
| 09:18:03 | 7 | or Kevyn Orr because Kevyn Orr was a partner at |
| 09:18:05 | 8 | Jones Day? |
| 09:18:06 | 9 | A. They were separate processes. That the City of |
| 09:18:11 | 10 | Detroit was making a determination to retain Jones |
| 09:18:14 | 11 | Day, and they were making that through their own |
| 09:18:17 | 12 | decision-making processes. |
| 09:18:17 | 13 | We were looking for candidates for |
| 09:18:21 | 14 | emergency manager, and we specifically asked |
| 09:18:22 | 15 | permission if we could contact Kevyn Orr and have |
| 09:18:25 | 16 | that discussion. So I viewed them as separate |
| 09:18:26 | 17 | discussions. |
| 09:18:27 | 18 | Q. Did you ever consider that the close relationship |
| 09:18:29 | 19 | between Kevyn Orr and Jones Day created a conflict |
| 09:18:33 | 20 | or appearance of conflict? |
| 09:18:35 | 21 | A. Kevyn Orr, part of the requirement was is he |
| 09:18:36 | 22 | resigned as a partner and severed his ties with the |
| 09:18:39 | 23 | firm as part of becoming emergency manager to avoid |
| 09:18:42 | 24 | any conflict of interest. |
| 09:18:43 | 25 | Q. Well, were you concerned that he might be |

# EXHIBIT 6-J

```
01:50:27  1            UNITED STATES BANKRUPTCY COURT
                    FOR THE EASTERN DISTRICT OF MICHIGAN
01:50:27  2              SOUTHERN DIVISION - DETROIT
                -----------------------------------
01:50:27  3    In re:                        Chapter 9

01:50:27  4    CITY OF DETROIT, MICHIGAN,     Case No. 13-53846

01:50:27  5              Debtor,        Hon. Steven W. Rhodes
                -----------------------------------
01:50:27  6    V I D E O T A P E D   D E P O S I T I O N   O F

01:50:27  7    WITNESS:     RICHARD BAIRD

01:50:27  8    LOCATION:    Dickinson Wright, PLLC
                            215 South Washington Street, Suite 200
01:50:27  9                 Lansing, Michigan  48933

01:50:27 10    DATE:        Thursday, October 10, 2013
                            1:56 p.m.

01:50:27 11

01:50:27 12    APPEARANCES:
               FOR PLAINTIFFS FLOWERS:
01:50:27 13
                            LAW OFFICE OF WILLIAM A. WERTHEIMER
01:50:27 14                 30515 Timberbrook Lane
                            Bingham Farms, Michigan  48025
01:50:27 15                 248.644.9200
                            billwertheimer@gmail.com
01:50:27 16                 BY: WILLIAM A. WERTHEIMER  (P26275)

01:50:27 17    FOR INTERNATIONAL UNION, UAW:

01:50:27 18                 COHEN, WEISS and SIMON, LLP
                            330 West 42nd Street
01:50:27 19                 New York, New York  10036-6976
                            212.563.4100
01:50:27 20                 pdechiara@cwsny.com
                            BY: PETER D. DeCHIARA, ESQUIRE
01:50:27 21
               FOR THE RETIREES COMMITTEE:
01:50:27 22
                            DENTONS US LLP
01:50:27 23                 1221 Avenue of the Americas
                            New York, New York  10020-1089
01:50:27 24                 212.768.6881
                            arthur.ruegger@dentons.com
01:50:27 25                 BY: ARTHUR H. RUEGGER, ESQUIRE
```

| | | |
|---|---|---|
| 02:09:54 1 | | all, let me say that this was not a formal pitch. |
| 02:10:00 2 | | This meeting was set up to provide the City, the |
| 02:10:06 3 | | emergency -- I'm sorry, the program management |
| 02:10:08 4 | | director and the CFO with some parameters associated |
| 02:10:13 5 | | with what needs to be going into an RFP that had yet |
| 02:10:18 6 | | to be completed. |
| 02:10:19 7 | | So this was simply bringing together a |
| 02:10:22 8 | | number of law firms with relevant experience to |
| 02:10:27 9 | | discuss things that the City should contemplate |
| 02:10:30 10 | | keeping in mind for a future RFP. |
| 02:10:34 11 | Q. | Okay. Before I -- I have a -- I had asked you a |
| 02:10:38 12 | | question about what was said by the Jones Day |
| 02:10:41 13 | | people, but before I ask you that, let me ask you do |
| 02:10:44 14 | | you know whether Jones Day provided any services |
| 02:10:47 15 | | paid or unpaid or legal advice to the State prior -- |
| 02:10:58 16 | | at any time prior to this meeting? |
| 02:11:00 17 | A. | I don't know. I was not aware of any such services |
| 02:11:05 18 | | provided. |
| 02:11:06 19 | Q. | Okay. All right. So what's the best of your |
| 02:11:08 20 | | recollection of what the Jones Day people said at |
| 02:11:12 21 | | the meeting? |
| 02:11:12 22 | A. | Well, they went through this presentation. |
| 02:11:15 23 | Q. | You're referring to Exhibit 1? |
| 02:11:17 24 | A. | Exhibit 1. |
| 02:11:17 25 | Q. | Okay. |

# EXHIBIT 6-K

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,        .    Docket No. 13-53846
        MICHIGAN,               .
                                .    Detroit, Michigan
                                .    September 19, 2013
                Debtor.         .    3:00 p.m.
. . . . . . . . . . . . . .     .

HEARING RE. MOTION BY OFFICIAL COMMITTEE OF RETIREES TO
STAY DEADLINES AND THE HEARINGS CONCERNING A DETERMINATION
OF ELIGIBILITY PENDING DECISION ON MOTION TO WITHDRAW THE
REFERENCE; MICHIGAN COUNCIL 25 OF THE AMERICAN FEDERATION OF
STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, AND
SUB-CHAPTER 98, CITY OF DETROIT RETIREES' MOTION TO COMPEL
TESTIMONY OF KEVYN ORR AND ALL OTHER CITY AND STATE WITNESSES
REGARDING CITY-STATE COMMUNICATIONS PRIOR TO JULY 17, 2013
BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:        Jones Day
                       By:  BRUCE BENNETT
                       555 South Flower Street, Fiftieth Floor
                       Los Angeles, CA  90071-2452
                       (213) 243-2382

For the State of       Dickinson Wright, PLLC
Michigan:              By:  STEVEN G. HOWELL
                       500 Woodward Avenue, Suite 4000
                       Detroit, MI  48226-3425
                       (313) 223-3033

For Official           Dentons
Committee of           By:  CLAUDE D. MONTGOMERY
Retirees:              620 Fifth Avenue
                       New York, NY  10020
                       (212) 632-8390

For AFSCME,            Lowenstein Sandler, LLP
AFL-CIO, and Sub-      By:  SHARON L. LEVINE
Chapter 98, City       65 Livingston Avenue
of Detroit             Roseland, NJ  07068
Retirees:              (973) 597-2374

1  eligibility that the UAW has filed and that other parties

2  have filed in this case, so the scope of that exception is

3  very critical because what -- it seems from our perspective

4  that what is the common interest here is in shielding those

5  discussions, in shielding those directions, in shielding the

6  course of action that was decided upon.

7         Second point that I just wanted to briefly make is

8  that this issue is not only with respect to a dozen questions

9  that were raised at Mr. Orr's deposition.  Reference was made

10  earlier to document production in this case.  Last Friday we

11  received literally tens of thousands of pages of documents

12  that were produced by the city on an expedited basis.

13  Obviously we have not received a privilege log.  One could

14  not expect that.  However, I would expect, based on the

15  position that the city has taken, that that log is going to

16  be very long and detailed indeed because we are certain that

17  there are multiple documents, e-mail communications, memos,

18  other things that would have passed between these parties

19  that would be comprised by this, so it's not just a question

20  of a discrete number of questions asked in a deposition.  It

21  really goes to the heart and soul of the eligibility

22  objections that have been raised.  Thank you.

23         THE COURT:  Thank you.

24         MS. GREEN:  I will also be brief.  Jennifer Green on

25  behalf of the General and Police and Fire Retirement Systems.

1    Speaking of the privilege log, there was a privilege log

2    produced on Friday, September 13th.  There were just under

3    11,000 documents that are claimed to be privileged.  Out of

4    those 11,000 documents, we have so far determined that there

5    are roughly 400 to 600 documents that they are claiming are

6    protected by the common interest privilege.

7        On Monday, during Mr. Orr's deposition, the city

8    appeared to limit this common interest privilege to -- and

9    I'm going to quote from the deposition -- "what Mr. Orr has

10   been doing since he became emergency manager where there was

11   a common interest between the state and the emergency

12   manager's office," and I believe today counsel limited it to

13   that as well.  And we all know the emergency manager was not

14   appointed until March of 2013.  The Chapter 9 proceeding

15   obviously began in July of 2013.  The privilege log, however,

16   asserts the common interest privilege as far back as December

17   15th of 2011, well before the emergency manager was ever

18   appointed, and so that raises a concern about whether or not

19   this privilege is being abused and whether it's being

20   asserted too broadly.

21       Today in the papers filed by the city they have

22   characterized the common interest between the city and the

23   state as, quote, "they share a common interest in rectifying

24   the financial emergency of the city," which may be a

25   political or may be a commercial interest, but I don't think

1    that that's necessarily a legal interest that they share in

2    common.

3           The other thing that's of concern is in the

4    privilege log these communications are -- there are some that

5    are without any counsel between -- it'll be, for instance,

6    Andy Dillon, the state treasurer, or Richard Baird, who is

7    not even a state employee.  My understanding is he is a

8    consultant who is -- has some sort of contract with either

9    the State of Michigan or with the governor, and he's all of a

10   sudden part of this common interest privilege, so that is our

11   concern.  And while we concur with AFSCME's motion and

12   support the relief requested today, there may be another

13   issue relating to these documents that may need to be raised

14   with the Court at an appropriate time, and we would like to

15   ask that today's ruling perhaps be without prejudice in case

16   we need to file a motion to compel on the documents

17   themselves.  We would obviously like to raise the issue with

18   the city.  Perhaps we can work something out without having

19   to involve the Court --

20           THE COURT:  Okay.

21           MS. GREEN:  -- before that.  One last thing

22   dovetailing with what the UAW mentioned.  There is a Sixth

23   Circuit case called Reed versus Baxter -- it's 134 F.3d 351,

24   1998 case -- that talks about the need to prevent the abuse

25   of the attorney-client privilege where it is a governmental

1   entity or a governmental actor that is asserting it.  And in
2   that case they say that courts and commentators have
3   cautioned against broadly applying the privilege to
4   governmental entities.  The recognition of a governmental
5   attorney-client privilege imposes the same costs as are
6   imposed in the application of the corporate privilege but
7   with an added disadvantage.  The governmental privilege
8   stands squarely in conflict with a strong public interest in
9   open and honest government.  And that's sort of what we face
10  here is, you know, we have questions about decisions that
11  were made the day of the filing, and we asked questions about
12  were contingencies discussed, did you and the governor have a
13  meeting on July 18th, and they said, "Well, counsel was
14  there.  We're not answering."
15          THE COURT:  No, but pause there.  Does that Sixth
16  Circuit case impose any identifiable functional restriction
17  on the attorney-client privilege in the context of a
18  governmental officer claiming it?
19          MS. GREEN:  In that case it was -- I believe there
20  was a city council member and another officer of the city,
21  and the Court said your legal interests were not identical.
22  They were not aligned.  And in this case, even if their
23  political or maybe commercial interests were aligned, it's
24  not necessarily clear that their legal interests were
25  aligned, and that would be our objection.

# EXHIBIT 6-L



COHEN
WEISS
—AND—
SIMON
October 2, 2013$^{LLP}$

330 West 42nd Street • New York, NY 10036-6979

Thomas N. Ciantra, Partner
Tel: 212.356.0228
Fax: 646.473.8228
Cell: 917.748.9423
tciantra@cwsny.com
www.cwsny.com

By E-mail

Bruce Bennett, Esq.
Jones Day
555 South Flower Street, 50th Floor
Los Angeles, California 90071

    Re:  <u>In re City of Detroit</u>

Dear Mr. Bennett:

    Pursuant to Local Rule 7.1 of the U.S. District Court for the Eastern District of Michigan and Local Bankruptcy Rule 9014-1(g), I write to advise that International Union, United Automobile Workers ("UAW") intends to file a motion to compel discovery of certain documents identified on the privilege log accompanying the City of Detroit's document production and to seek to narrow the potential issues or documents that would be involved in such a motion. Because of the exigent schedule, UAW requests that the City respond to this correspondence by October 7, 2013.

    The City has withheld numerous documents under an assertion of a Common Interest privilege with the State of Michigan. In opposition to the motion of Michigan Council 25 of the American Federation of State, County and Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees' Motion To Compel Testimony of Kevyn Orr and All Other City and State Witnesses Regarding City-State Communications Prior To July 17, 2013 (the "AFSCME Motion"), the City and the State entered into a common interest agreement "at the time of the appointment of the Emergency Manager" (¶10) and that "pursuant to PA 436, the City, acting through its Emergency Manager, and State share the same legal interest in 'rectify[ing] the financial emergency' and 'assur[ing] the fiscal accountability' of the City during the Emergency Manager's term of service." (¶11).

    The September 12, 2013 Common Interest Agreement recites that "on or around the appointment of the Emergency Manager" the City and State entered into a verbal common interest agreement. In its opposition to the AFSCME Motion, the City notes that "Mr. Orr was appointed to the position of "emergency financial manager" for the City by the Local Emergency Financial Assistance Loan Board created under the Emergency Municipal Loan Act, M.C.L. §§ 141.931-141.942, on March 15, 2013, pursuant to Public Act 72 of 1990 of the State of Michigan, also known as the Local Government Fiscal Responsibility Act, M.C.L. §§ 141.1201 141.1291. Mr. Orr formally took office as the emergency financial manager for the City under PA 72 on March 25, 2013."



COHEN
WEISS
AND
SIMON
L.L.P

Accordingly, and at a minimum, documents which antedate March 15, 2013, cannot be covered by the common interest privilege with the State that the City has asserted here. Yet, the privilege log produced with the documents identifies a number of documents dated before March 15, 2013, on which common interest privilege is asserted. UAW requests production of these documents, to wit:

| | | | | |
|---|---|---|---|---|
| PRIV0349 | PRIV10606 | PRIV7273 | PRIV8825 | PRIV8923 |
| PRIV0405 | PRIV10621 | PRIV7274 | PRIV8826 | PRIV8924 |
| PRIV0484 | PRIV10629 | PRIV7280 | PRIV8841 | PRIV8925 |
| PRIV0565 | PRIV10645 | PRIV7283 | PRIV8898 | PRIV8926 |
| PRIV10482 | PRIV2930 | PRIV7284 | PRIV8900 | PRIV8931 |
| PRIV10483 | PRIV2931 | PRIV7287 | PRIV8901 | PRIV9732 |
| PRIV10509 | PRIV3401 | PRIV7289 | PRIV8902 | PRIV9733 |
| PRIV10544 | PRIV7219 | PRIV7571 | PRIV8903 | PRIV9749 |
| PRIV10556 | PRIV7220 | PRIV7596 | PRIV8904 | PRIV9830 |
| PRIV10557 | PRIV7232 | PRIV8784 | PRIV8905 | PRIV4959 |
| PRIV10568 | PRIV7242 | PRIV8823 | PRIV8906 | |
| PRIV10592 | PRIV7268 | PRIV8824 | PRIV8910 | |

Attachment A to this letter are the entries on the City's privilege log for the above items.

In addition, the City has claimed attorney-client privilege for a host of documents to or from Jones Day which antedate Jones Days' retention by the City of Detroit which we understand to have been March 11, 2013. The possible basis for the assertion of privilege in the case of these documents (most of which are dated 2012) is not clear and we would request their production:

| | | | | | |
|---|---|---|---|---|---|
| PRIV2930 | PRIV2931 | PRIV5630 | PRIV0414 | PRIV0411 | PRIV0408 |
| PRIV0407 | PRIV9749 | PRIV0405 | PRIV0399 | PRIV0400 | PRIV0397 |
| PRIV0398 | PRIV0395 | PRIV9745 | PRIV0394 | PRIV0386 | PRIV0388 |
| PRIV0378 | PRIV0380 | PRIV0381 | PRIV0382 | PRIV0383 | PRIV9742 |
| PRIV0375 | PRIV0376 | PRIV0377 | PRIV0373 | PRIV9739 | PRIV9740 |
| PRIV0369 | PRIV0370 | PRIV0371 | PRIV0372 | PRIV9738 | PRIV0359 |
| PRIV0348 | PRIV0349 | PRIV0565 | PRIV0566 | PRIV0344 | PRIV0342 |
| PRIV0335 | PRIV0340 | PRIV0339 | PRIV9731 | PRIV0333 | PRIV5755 |
| PRIV5968 | PRIV9726 | PRIV0321 | PRIV0322 | PRIV9719 | PRIV9720 |
| PRIV5698 | PRIV5710 | PRIV0267 | PRIV0523 | PRIV0524 | PRIV5662 |
| PRIV5663 | PRIV5664 | PRIV5665 | PRIV0308 | PRIV0310 | PRIV5658 |
| PRIV5660 | PRIV0521 | PRIV0519 | PRIV0520 | PRIV0517 | PRIV0505 |
| PRIV0506 | PRIV0507 | PRIV0508 | PRIV0509 | PRIV0511 | PRIV0512 |
| PRIV0513 | PRIV0514 | PRIV5656 | PRIV0301 | PRIV0302 | PRIV0303 |
| PRIV0304 | PRIV0305 | PRIV0306 | PRIV0307 | PRIV9692 | PRIV0298 |
| PRIV0502 | PRIV5652 | PRIV0297 | PRIV0494 | PRIV0496 | PRIV0497 |





COHEN
WEISS
AND
SIMON
L.L.P

| | | | | | |
|---|---|---|---|---|---|
| PRIV0498 | PRIV0499 | PRIV0555 | PRIV0551 | PRIV0553 | PRIV5649 |
| PRIV5650 | PRIV0296 | PRIV0493 | PRIV9672 | PRIV9685 | PRIV4890 |
| PRIV0277 | PRIV5637 | PRIV9661 | PRIV9664 | PRIV9667 | PRIV9660 |

Attachment B to this letter are the entries on the City's privilege log for the above items.

      With respect to a number of other documents identified on the privilege log where common interest privilege is asserted there is insufficient detail for UAW to determine whether the privilege is properly invoked. With respect to the following, no attorney is identified in connection with the document:

| | | | | |
|---|---|---|---|---|
| PRIV0020 | PRIV3012 | PRIV4334 | PRIV7284 | PRIV8416 |
| PRIV0081 | PRIV3084 | PRIV4335 | PRIV7287 | PRIV8417 |
| PRIV0086 | PRIV3118 | PRIV4336 | PRIV7289 | PRIV8418 |
| PRIV0093 | PRIV3142 | PRIV4338 | PRIV7516 | PRIV8419 |
| PRIV0224 | PRIV3144 | PRIV4403 | PRIV7523 | PRIV8420 |
| PRIV0458 | PRIV3165 | PRIV4406 | PRIV7524 | PRIV8450 |
| PRIV0732 | PRIV3185 | PRIV4407 | PRIV7525 | PRIV8530 |
| PRIV0979 | PRIV3208 | PRIV4423 | PRIV7540 | PRIV8531 |
| PRIV0980 | PRIV3210 | PRIV4424 | PRIV7566 | PRIV8532 |
| PRIV0981 | PRIV3211 | PRIV4427 | PRIV7567 | PRIV8542 |
| PRIV10423 | PRIV3236 | PRIV4461 | PRIV7569 | PRIV8543 |
| PRIV10635 | PRIV3276 | PRIV4490 | PRIV7674 | PRIV8544 |
| PRIV10636 | PRIV3332 | PRIV6275 | PRIV7679 | PRIV8567 |
| PRIV10637 | PRIV3333 | PRIV6483 | PRIV7813 | PRIV8636 |
| PRIV10730 | PRIV3368 | PRIV6569 | PRIV7814 | PRIV8647 |
| PRIV10767 | PRIV3415 | PRIV6601 | PRIV8005 | PRIV8664 |
| PRIV10800 | PRIV3428 | PRIV6645 | PRIV8006 | PRIV8664 |
| PRIV10801 | PRIV3460 | PRIV7121 | PRIV8152 | PRIV8666 |
| PRIV10802 | PRIV3602 | PRIV7165 | PRIV8153 | PRIV8667 |
| PRIV10803 | PRIV3765 | PRIV7173 | PRIV8220 | PRIV8668 |
| PRIV10804 | PRIV3795 | PRIV7221 | PRIV8223 | PRIV8694 |
| PRIV10805 | PRIV3798 | PRIV7228 | PRIV8390 | PRIV8695 |
| PRIV10848 | PRIV3979 | PRIV7234 | PRIV8391 | PRIV8696 |
| PRIV1351 | PRIV3981 | PRIV7242 | PRIV8393 | PRIV8713 |
| PRIV1527 | PRIV3991 | PRIV7247 | PRIV8405 | PRIV8823 |
| PRIV2315 | PRIV4022 | PRIV7248 | PRIV8406 | PRIV8825 |
| PRIV2316 | PRIV4066 | PRIV7253 | PRIV8407 | PRIV8826 |
| PRIV2317 | PRIV4079 | PRIV7260 | PRIV8411 | PRIV8890 |
| PRIV2744 | PRIV4183 | PRIV7267 | PRIV8412 | PRIV8894 |
| PRIV2750 | PRIV4230 | PRIV7268 | PRIV8413 | PRIV8900 |
| PRIV2944 | PRIV4233 | PRIV7274 | PRIV8414 | PRIV8901 |
| PRIV2982 | PRIV4266 | PRIV7283 | PRIV8415 | PRIV8902 |



Bruce Bennett, Esq.
October 2, 2013
Page 4

| PRIV8903 | PRIV8905 | PRIV8907 | PRIV9018 | PRIV9442 |
| PRIV8904 | PRIV8906 | PRIV8932 | PRIV9355 | |

Attachment C to this letter are the entries on the City's privilege log for the above items.

With respect to the following documents no source or recipient of the document is identified:

| PRIV0088 | PRIV10627 | PRIV8637 |
| PRIV0089 | PRIV10628 | PRIV8639 |
| PRIV0090 | PRIV10631 | PRIV8648 |
| PRIV0094 | PRIV10632 | PRIV8650 |
| PRIV0094 | PRIV1955 | PRIV8699 |
| PRIV0450 | PRIV2697 | PRIV8700 |
| PRIV0451 | PRIV2698 | PRIV8785 |
| PRIV0484 | PRIV3060 | PRIV8824 |
| PRIV10454 | PRIV3401 | PRIV8895 |
| PRIV10500 | PRIV3417 | PRIV8954 |
| PRIV10509 | PRIV4416 | PRIV8955 |
| PRIV10510 | PRIV5371 | PRIV9443 |
| PRIV10518 | PRIV5372 | PRIV9733 |
| PRIV10519 | PRIV6131 | PRIV9750 |
| PRIV10523 | PRIV6139 | |
| PRIV10524 | PRIV6232 | |
| PRIV10526 | PRIV6315 | |
| PRIV10527 | PRIV6390 | |
| PRIV10545 | PRIV6984 | |
| PRIV10546 | PRIV7148 | |
| PRIV10553 | PRIV7225 | |
| PRIV10554 | PRIV7505 | |
| PRIV10563 | PRIV7571 | |
| PRIV10564 | PRIV7602 | |
| PRIV10566 | PRIV7680 | |
| PRIV10567 | PRIV8008 | |
| PRIV10597 | PRIV8339 | |
| PRIV10598 | PRIV8399 | |
| PRIV10599 | PRIV8431 | |
| PRIV10600 | PRIV8432 | |
| PRIV10612 | PRIV8433 | |
| PRIV10613 | PRIV8534 | |
| PRIV10614 | PRIV8535 | |
| PRIV10625 | PRIV8537 | |
| PRIV10626 | PRIV8538 | |





Attachment D to this letter are the entries on the City's privilege log for the above items. In some of these cases the document description notes that it discusses or contains a privileged communication but it does not identify the participants in that communication. In such cases we would ask that the attorney involved be identified and the documents be produced redacting the material the City contends is privileged.

Our review of the privilege log has been complicated by the fact that while the City has produced a number of documents with redactions, it has not cross referenced the Bates number on the production to the item numbers on the privilege log. Thus, it is not clear (in many cases) the bases for the redaction. Please provide us with a log with the necessary cross-references.

I look forward to reviewing your response.

Very truly yours,

Thomas N. Ciantra

TNC:vlf
Enclosures

# EXHIBIT 6-M

**Page 308**

```
 1        UNITED STATES BANKRUPTCY COURT
 2        EASTERN DISTRICT OF MICHIGAN
 3             SOUTHERN DIVISION
 4   -------------------------------X
 5   IN RE                ) Chapter 9
 6   CITY OF DETROIT, MICHIGAN,   ) Case No. 13-53846
 7          Debtor.        ) Hon. Steven W. Rhodes
 8   -------------------------------X
 9
10
11       CONTINUED VIDEOTAPED DEPOSITION of
12                KEYVN D. ORR
13                 Volume II
14              Washington, D.C.
15            Friday, October 4, 2013
16
17
18   Pages:  308 - 496
19   Reported by: Cindy L. Sebo, RMR, CSR, RPR, CRR,
20              CCR, CLR, RSA
21   Assignment Number:  14008
22   File Number:  105824
```

**Page 309**

```
 1              October 4, 2013
 2                11:11 a.m.
 3
 4
 5       Continued Videotaped Deposition of KEYVN D.
 6   ORR held at the law offices of:
 7
 8
 9               Jones Day
10       51 Louisiana Avenue, Northwest
11            Washington, D.C. 20001
12
13
14
15
16       Pursuant to notice, before Cindy L. Sebo,
17   Registered Merit Reporter, Certified Shorthand
18   Reporter, Registered Professional Reporter,
19   Certified Real-Time Reporter, Certified Court
20   Reporter, Certified LiveNote Reporter, Real-Time
21   Systems Administrator, a Notary Public in and for
22   the District of Columbia.
```

**Page 310**

```
 1   APPEARANCES:
 2
 3   JONES DAY
 4     For the Debtor:
 5          51 Louisiana Avenue, Northwest
 6          Washington, D.C. 20001-2113
 7          202.879.3939
 8     BY:   GREGORY M. SHUMAKER, ESQUIRE
 9          gshumaker@jonesday.com
10     BY:   DAN T. MOSS, ESQUIRE
11          dtmoss@jonesday.com
12
13   DENTONS US LLP
14     For the Retirees Committee:
15          1221 Avenue of the Americas
16          New York, New York 10020-1089
17          212.632.8342
18     BY:   ANTHONY B. ULLMAN, ESQUIRE
19          anthony.ullman@dentons.com
20
21
22
```

**Page 311**

```
 1   APPEARANCES (Continued):
 2
 3   LOWENSTEIN SANDLER LLP
 4     For the AFSCME:
 5          65 Livingston Avenue
 6          Roseland, New Jersey 07068
 7          973.597.2374
 8     BY:   SHARON L. LEVINE, ESQUIRE
 9          slevine@lowenstein.com
10
11   COHEN, WEISS AND SIMON LLP
12     For the United Auto Workers Union:
13          330 West 42nd Street
14          New York, New York 10036-6979
15          212.356.0216
16     BY:   PETER D. DECHIARA, ESQUIRE
17          pdechiara@cwsny.com
18
19
20
21
22
```

Page 480

1    A.    Okay.
2    Q.    Okay.
3         And then the other question I have
4 for you -- this is referring to the unfunded
5 pension liability --
6    A.    Um-hum.
7    Q.    -- you're also familiar with the
8 medical benefits for retirees --
9    A.    Yes.
10   Q.    -- the health -- and I think that's
11 sometimes referred to as OPEB?
12   A.    Yes, other [sic] employee benefits.
13   Q.    Okay.  And for the OPEB is -- are --
14 is the -- is the situation similar that some
15 amount of the total OPEB liability that the City
16 faces is allocable to sources other than the
17 general fund?
18   A.    You -- you know, I think it is; but
19 I'm not recalling that mechanism as well as I
20 recall the pension mechanism, but I think it is.
21   Q.    Okay.  And would then some portion of
22 the total OPEB unfunded liability be allocable

Page 481

1 also to the Department of Water and Sewer to their
2 retirees?
3    A.    It might well be, but I'd need to
4 confirm that.
5    Q.    Okay.  And have you done any analysis
6 of that question?
7    A.    Yes --
8    Q.    Okay.
9    A.    -- well, our contractors have done an
10 analysis of the question.
11   Q.    Okay.  And who specifically has done
12 an analysis of that?
13   A.    Oh, I think our team at -- the entire
14 team: Conway MacKenzie, Ernst & Young,
15 Miller Buckfire.
16   Q.    And do you recall their general
17 conclusions to what percentage of the total
18 unfunded OPEB liability is allocable to the -- A,
19 to the Department of Water of Sewer; or, B, some
20 other fund or entity apart from the general fund?
21   A.    I'm -- I'm not -- I don't recall if
22 it is, and I don't recall the percentage.

Page 482

1         MR. ULLMAN:  Okay.  Could I ask for
2 any documents relating to that to be produced,
3 Greg?
4         MR. SHUMAKER:  You can certainly put
5 that in writing and look into it.  I'm pretty sure
6 that that has already been produced, but we'll
7 certainly look into it.
8         MR. ULLMAN:  Okay.
9         I don't believe I have anything else,
10 so --
11        THE WITNESS:  Okay.
12        MR. ULLMAN:  -- anything further
13 from -- no.
14        MR. DECHIARA:  I think Jennifer
15 Green.
16        MR. ULLMAN:  Jennifer, are you there?
17        MS. GREEN:  No.
18        MR. ULLMAN:  Okay.
19        MS. GREEN:  My turn?
20        MR. ULLMAN:  Yeah, if you are
21 ready -- if you have questions and you want to go.
22        MS. GREEN:  I literally have a

Page 483

1 handful.  Very quickly.
2         MR. ULLMAN:  Go -- go ahead.  I'm
3 done.
4         Thank you very much, Mr. Orr.
5         THE WITNESS:  Thank you very much,
6 Mr. Ullman.
7         Hello, Jennifer -- hello, Ms. Green.
8              - - -
9         EXAMINATION (CONTINUED) BY COUNSEL FOR
10 GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT AND
11     THE POLICE AND FIRE RETIREMENT SYSTEM OF THE
12             CITY OF DETROIT
13              - - -
14 BY MS. GREEN:
15   Q.    Hi, how are you?
16   A.    Just fine.
17   Q.    You began acting as emergency manager
18 as of March 26th, and Jones Day was hired to
19 represent the City after you became emergency
20 manager, correct?
21   A.    The relationship was formalized after
22 I became emergency manager, yes.

Page 484

1    Q.    Are you saying there was an informal
2  relationship before then?
3    A.    No.  As -- as I said before today,
4  the -- the question of when the attorney-client
5  privilege attaches isn't necessarily based upon
6  just a formalization of a relationship; it's based
7  upon one of confidence and reposed and -- and a
8  relationship is accepted.  An exact date of that,
9  I don't know sitting here today from a legal
10  perspective.
11    Q.    Can you tell me, from your view as
12  emergency manager, was the firm of Jones Day
13  acting as legal representation -- giving legal
14  representation to the City prior to your being
15  appointed EM on March 26th?
16    A.    I don't -- I don't know.
17         I -- as I testified earlier today,
18  I recused myself from that process, so I don't know
19  when that relationship arose.
20    Q.    Well, let me ask you this:  You
21  worked at Jones Day, and you worked on the pitch
22  materials, correct?

Page 485

1    A.    Yes.
2    Q.    And so you were involved with the
3  process of the pitch and the PowerPoint?
4    A.    Yes; but that was in early -- that
5  was in late January and early February, sometime
6  in February, and I think the e-mails have been
7  discussed in my prior deposition.
8         I -- I pulled myself out of that
9  process, it was in early February prior to the
10  meeting we discussed today.  So I don't know what
11  happened after I recused myself.
12    Q.    I understand that.  I understand
13  that.
14         But what I'm saying is, the pitch
15  that occurred, you were not acting as legal
16  counsel when you did the pitch, right?
17    A.    No, no, we were not --
18    Q.    Okay.
19    A.    -- we were soliciting becoming legal
20  counsel.
21    Q.    Exactly.
22         So at least it was some point after

Page 486

1  the pitch, correct?
2    A.    Yes.
3    Q.    And similar to that, Jones Day was
4  never hired by the State of Michigan at any point
5  for any sort of representation, correct?
6         MR. SHUMAKER:  Object to the form:
7  Foundation.
8         THE WITNESS:  Yeah, I think I
9  testified earlier today -- I said earlier today,
10  I -- I don't know if Jones Day has ever
11  represented the State of Michigan, but -- but with
12  regard to this matter, I don't -- I don't know of
13  Jones Day representing the State of Michigan other
14  than --
15  BY MS. GREEN:
16    Q.    Okay.
17    A.    -- through my office.
18    Q.    So in 2011 and in 2012, and prior to
19  spring of 2013, you have no knowledge of there
20  being any attorney-client relationship between
21  Jones Day and the State of Michigan, correct?
22    A.    I have no knowledge.

Page 487

1    Q.    Okay.
2         And, certainly, I would assume if you
3  were preparing pitch materials in a PowerPoint,
4  where you were pitching Jones Day to the State and
5  to the City, you would've, I assume, included any
6  prior representation of the City and the State,
7  correct?
8         MR. SHUMAKER:  Objection: calls for
9  speculation.
10         THE WITNESS:  Calls for speculation,
11  that's what I was going to say.
12         It -- you know, I -- I don't know.
13  It would be speculative on my part to say that --
14  that it may or may not included it.  We -- I would
15  like to think that we -- before the retention, I
16  would like to think that any law firm would have
17  run a conflicts check.
18         I'm not sure whether or not that
19  would have been included in the pitch material.
20  BY MS. GREEN:
21    Q.    Well, during the pitch, was there any
22  point where any of the Jones Day attorneys that

# EXHIBIT 6-N

| | |
|---|---|
| **From:** | Green, Jennifer K. |
| **Sent:** | Saturday, October 05, 2013 10:47 AM |
| **To:** | gshumaker@jonesday.com |
| **Subject:** | Privilege Log Issue |
| **Attachments:** | 3631_001.pdf |

Greg:

Pursuant to our telephone conversation on October 3, 2013, I am writing to request copies of certain documents where the work product and attorney-client privilege were asserted on the privilege log produced by the City of Detroit. I have received and reviewed the letter dated October 2, 2013 from Thomas Ciantra from Cohen Weiss and Simon, LLP, and I concur in full with the points raised by Mr. Ciantra and hereby request production of the same documents. Furthermore, Mr. Orr's testimony was quite clear yesterday that Jones Day was not acting as legal counsel to the City of Detroit at any time prior to the spring of 2013—regardless of whether it was acting in that capacity at some point after Mr. Orr was appointed on March 26, 2013 but before Jones Day's formal retention on April 23, 2013. At a minimum, Mr. Orr admitted that Jones Day was not representing the City at the time it was in the process of pitching its services the City. If there was no attorney-client *relationship*, then there is obviously no concomitant attorney-client *privilege*. In addition, there has been no testimony that Jones Day served as legal counsel for the State of Michigan at any time. Yet, there are numerous documents on the privilege log dating as far back as 2005 where the work product and attorney-client privileges were asserted as a basis to withhold documents involving Jones Day attorneys. Since it is undisputed that there was no attorney-client relationship until the spring of 2013 at the earliest, we request the documents identified on the attached privilege log be produced immediately. I marked the documents that fall into this category with a check mark next to them. This is not to say that I am ignoring the other problematic documents that may be objectionable for other reasons (such as documents where no attorney is listed on the document whatsoever or where the document allegedly "reflects" attorney-client communications but has not been produced in an even partially-redacted form). Rather, because there is no dispute regarding the applicability of the privilege during this time frame, I am requesting that these be produced immediately.

Finally, there are numerous documents where Guarov Malholtra and James Doak are listed as attorneys (there is an asterisk next to their name) and the attorney-client privilege is claimed. My understanding from Mr. Malholtra's deposition (page 115, specifically) is that he is not a lawyer. While Mr. Doak does have a law degree, if Mr. Doak was acting in his capacity as a financial advisor for Miller Buckfire and not as an attorney, then those documents are not privileged merely because an individual with a law degree took part in the communication. Please produce all of the documents where this discrepancy appears, as well.

As outlined in Mr. Ciantra's letter, there are hundreds (if not thousands) of documents where there is no attorney listed as either authoring or receiving the document, yet attorney-client privilege is being claimed. If we do not have a satisfactory response by October 7, we will have no choice but to file a motion to compel these records and seek an *in camera* review of the records that you have refused to produce. Please feel free to email or call if you have any questions. I look forward to speaking with you soon. I am hopeful that we can resolve this short of court interference.

Jen

**Jennifer K. Green**
CLARK HILL PLC

500 Woodward Ave | Suite 3500 | Detroit, Michigan 48226
313.965.8274 (direct) | 313.309.6944 (fax) | 248.321.8525 (cell)
**jgreen@clarkhill.com** | www.clarkhill.com

# EXHIBIT 6-O

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001.2113
TELEPHONE: +1.202.879.3939 • FACSIMILE: +1.202.626.1700

October 7, 2013

**BY FIRST CLASS MAIL**

Thomas N. Ciantra
Cohen Weiss and Simon
330 West 42nd Street
New York, New York  10036-6979

Re:     **City of Detroit**

Dear Mr. Ciantra:

In our letter yesterday, we informed you that we would get you the results of our analysis of the documents you categorized as Exhibit D documents in your letter of October 2, 2013, as soon as possible.  This letter provides the results of that analysis.

**Exhibit D Documents**

Your letter describes these documents as having no source or recipient listed on the privilege log.

The following Exhibit D documents have already been produced:

| | | | |
|---|---|---|---|
| 3417 | - DTMI00211376-380 | 8537 | - DTMI00203327-3328 |
| 8538 | - DTMI00203329-3348 | 10518 | - DTMI00150711-0855 |
| 10519 | - DTMI00150856-1012 | 10553 | - DTMI00151050-1071 |
| 10554 | - DTMI00151072-1213 | 8824 | - DTMI00234951-4956 |

We are preparing the following Exhibit D documents for production, and no longer claim any privilege with respect to these documents.

| | | | | | |
|---|---|---|---|---|---|
| 0094 | 0484 | 5371 | 5372 | 6131 | 3401 |
| 5317 | 5372 | 6984 | 7225 | 7505 | 7680 |
| 8008 | 8534 | 8535 | 8648 | 8650 | 8699 |
| 8700 | 8895 | 8954 | 8955 | 9443 | 9733 |
| 10500 | 10509 | 10510 | 10523 | 10524 | 10526 |
| 10527 | 10545 | 10546 | 10563 | 10564 | 10566 |
| 10567 | 10598 | 10599 | 10600 | 10612 | 10613 |
| 10614 | 10625 | 10626 | | | |

The City of Detroit is asserting attorney-client privilege, but not the common interest privilege, with respect to the Exhibit D documents listed in the chart that follows.  We have provided additional information when available, as well as identified corrections to the privilege log.

ALKHOBAR • ATLANTA • BEIJING • BOSTON • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DUBAI
FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID • MEXICO CITY
MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH • RIYADH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

| PRIV Number | Additional Information/Comments |
|---|---|
| 0450 | The privilege log erroneously reflects no date or author for this document. This draft report is dated 05/29/2013, and was authored by Jones Day. Reference to the parent email, PRIV 449, will reflect the lawyers and advisors involved with this document. |
| 0451 | The privilege log erroneously reflects no date or author for this document. This draft report is dated 05/29/2013, and was authored by Jones Day. Reference to the parent email, PRIV 449, will reflect the lawyers and advisors involved with this document. |
| 1955 | The privilege log erroneously reflects no author for this document. The author is Oliver S. Zeltner, a Jones Day lawyer. Reference to the parent email, PRIV 1953, will reflect the lawyer this document was sent to. |
| 2697 | The privilege log erroneously reflects no author for this document. The author is Oliver S. Zeltner, a Jones Day attorney. Reference to the parent email PRIV 2696, will reflect the lawyer this document was sent to. |
| 2698 | The privilege log erroneously reflects no author for this document. The author is Oliver S. Zeltner, a Jones Day attorney. Reference to the parent email 2696, will reflect the lawyer this document was sent to. |
| 6139 | The privilege log erroneously reflects no author or date for this document. This document is dated 02/07/2013, and was authored by Michael McGee and Richard Warren of Miller Canfield. |
| 6232 | The privilege log erroneously reflects no author for this document. This document was authored by Jones Day. |
| 6315 | The privilege log erroneously reflects no author for this document. This document was authored by Jones Day. |
| 6390 | The privilege log erroneously reflects no author for this document. This draft letter was authored by John Willems of Miller Canfield. |
| 10454 | The privilege log erroneously reflects no author or date for this document. The author is Cadwalader, a firm that does not represent the City. However, the document reflects comments by Miller Canfield. The date of the document is 03/02/2013. |

With respect to the Exhibit D documents listed in the chart that follows, the City of Detroit is asserting both attorney-client privilege and common interest privilege. Errors in the privilege log as well as additional information about the documents are listed below.

| PRIV Number | Additional Information/Comments |
|---|---|
| 0088 | The privilege log erroneously reflects no author for this document. This draft presentation was created by Ernst & Young for Jones Day, and was shared with Michigan state officials. Reference to the parent email, PRIV 0087, reflects the attorneys and Michigan state officials involved with this document. |
| 0089 | The privilege log erroneously reflects no author for this document. This draft presentation was authored by Jones Day. Reference to the parent email, PRIV 0087, reflects the attorneys and Michigan state officials involved with this document. |
| 0090 | The privilege log erroneously reflects no author for this document. This draft presentation was authored by Jones Day, and was shared with Michigan state officials. Reference to the parent email, PRIV 0087, reflects the attorneys and Michigan state officials involved with this document. |
| 3060 | The privilege log erroneously reflects no author for this document. This draft report was drafted by Jones Day. Reference to the parent email, PRIV 3058, reflects the attorneys and Michigan state officials involved with this document. |
| 7148 | The privilege log erroneously reflects no author, recipient or cc's for this email. The document is an email string among Brom Stibitz, a Michigan state official, Shani Penn, Jeff Ellman*, Laura Bassett* and Michael McGee.* CCs include K. Orr, A. Dillon, T. Saxton, and G. Tedder (the last three are Michigan officials) |
| 8339 | The privilege log erroneously reflects no author for this document. The author is Daniel Moss of Jones Day. Although the document is not dated, the parent email, PRIV 8338, reflects a date of 05/09/2013, and also reflects that the original email to which this document was attached was sent to Greg Tedder, a Michigan state official. |
| 8399 | The privilege log erroneously reflects no author for this document. The author is Ernst & Young. Reference to the parent email, PRIV 8398, reflects the lawyers and |

| PRIV Number | Additional Information/Comments |
|---|---|
| | Michigan state officials, involved with this document. |
| 8431 | The privilege log erroneously reflects no author or date for this document. The date is 04/25/2013, and the author is Ernst & Young. Reference to the parent email, PRIV 8429, reflects the lawyers and Michigan officials involved with this document. |
| 8432 | The privilege log erroneously reflects this document as undated. It is dated 04/26/2013. Reference to the parent email, PRIV 8429, reflects the lawyers and Michigan officials involved with this document.` |
| 8433 | The privilege log erroneously reflects this document as undated. It is dated 04/26/2013. Reference to the parent email, PRIV 8429, reflects the lawyers and Michigan officials involved with this document. |

The City of Detroit is still assessing its position with respect to privileges applicable to the following documents: 7571, 8637, 8639, 8785, 8824. We will get back to you shortly on those documents.

In addition, we produced one document, PRIV 4416 – DTMI00209362, that we request you destroy all copies of, pursuant to the terms under which we produced these documents, because it is a privileged document, authored by a Jones Day attorney.

Sincerely,

Geoffrey S. Irwin

# EXHIBIT 6-P

| | |
|---|---|
| **From:** | Geoffrey S Irwin <gsirwin@JonesDay.com> |
| **Sent:** | Tuesday, October 08, 2013 7:41 PM |
| **To:** | Green, Jennifer K. |
| **Subject:** | Fw: In re City of Detroit, Michigan, Case No 13-53846 |
| **Attachments:** | DOC012.PDF |

Here is the second letter on the Cohen Weiss requests, with additional documents to follow tomorrow.

We are still working our way through the documents on your list that were not covered by Cohen Weiss. I hope to be able to provide more info on that tomorrow.

Geoff

 **Geoffrey S. Irwin** • Partner

Washington Office • 51 Louisiana Ave. NW • Washington, DC 20001-2113
**Direct:** 202.879.3768 • **Fax:** 202.626.1700 • gsirwin@jonesday.com

----- Forwarded by Geoffrey S Irwin/JonesDay on 10/08/2013 07:39 PM -----
From:  sboyce@jonesday.com
To:  slevine@lowenstein.com, wjung@lowenstein.com, pgross@lowenstein.com, bceccotti@cwsny.com, pdechiara@cwsny.com, pellis@cwsny.com,
  lbrimer@stroblpc.com, mtaunt@stroblpc.com, mfield@stroblpc.com, eerman@ermanteicher.com, czucker@ermanteicher.com,
  bpatek@ermanteicher.com, rgordon@clarkhill.com, sdeeby@clarkhill.com, jgreen@clarkhill.com, efeldman@clarkhill.com,
  charlesidelsohnattorney@yahoo.com, gneal@sidley.com, gsirwin@jonesday.com, mlhale@jonesday.com, dtmoss@jonesday.com,
Date:  10/08/2013 07:16 PM
Subject:  In re City of Detroit, Michigan, Case No 13-53846

Counsel:

Please see atached.

File(s) will be available for download until **18 October 2013**:

File: 2013.10.08 Ltr. to Counsel re transmittal of document production.pdf, 51.92 KB  [Fingerprint: ddf258666167de00f48f08f2ea8d8f53]
File: DTMI008.zip, 135,800.43 KB  [Fingerprint: 8b537ce83fa7793aba56b1cbad8e3b8a]

You have received attachment link(s) within this email sent via Jones Day's Secure File Transfer (powered by Accellion). To retrieve the attachment(s), please click on the link(s).

By clicking on any of the links above, you agree that the following terms and conditions govern your access and use of this site. You acknowledge and agree that the materials and information made available to you via this site ("Content") may be protected by the attorney-client privilege and/or the attorney work-product doctrine and

that you will maintain the appropriate level of confidentiality for all such Content. You are responsible for all actions taken by you while logged into this site. Jones Day, to the fullest extent permitted by law, disclaims all warranties and liability related to this site and the Content. In no event shall Jones Day be liable for any damages whatsoever arising from, relating to, or resulting from your use of or inability to use this site or the Content. You covenant not to institute any claim, action or suit against Jones Day relating to, or resulting from your use of or inability to use this site or the Content.

To learn how your company can benefit from Accellion Secure File Transfer, please visit http://www.accellion.com.
Accellion File Transfer

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001.2113
TELEPHONE: +1.202.879.3939 • FACSIMILE: +1.202.626.1700

October 8, 2013

*Via Electronic Mail*

Sharon L. Levine
Wojciech F. Jung
Philip J. Gross
LOWENSTEIN SANDLER LLP
65 Livingston Avenue
Roseland, New Jersey 07068
Tel.: (973) 597-2500
Fax: (973) 597-2400
E-mail: slevine@lowenstein.com
E-mail: wjung@lowenstein.com
E-mail: pgross@lowenstein.com

Lynn M. Brimer
Meredith E. Taunt
Mallory A. Field
STROBL & SHARP, P.C.
300 East Long Lake Road, Suite 200
Bloomfield Hills, MI 48304-2376
Tel.: (248) 540-2300
Fax: (248) 645-2690
E-mail: lbrimer@stroblpc.com

Robert D. Gordon
Shannon L. Deeby
Jennifer K. Green
Evan J. Feldman
CLARK HILL PLC
151 South Old Woodward Avenue
Suite 200
Birmingham, Michigan 48009
Tel.: (248) 988-5882
Fax: (248) 988-2502
E-mail: rgordon@clarkhill.com

Charles Bruce Idelsohn
P.O. Box 856
Detroit, MI 48231
Tel.: (586) 450-0128
Fax: (248) 827-4106
E-mail: charlesidelsohnattorney@yahoo.com

Earle I. Erman
Craig E. Zucker
Barbara A. Patek
ERMAN, TEICHER, MILLER, ZUCKER
& FREEDMAN, P.C.
400 Galleria Officentre
Suite 444
Southfield, MI 48034
Tel.: (248) 827-4100
Fax: (248) 827-4106
E-mail: bpatek@ermanteicher.com

Babette A. Ceccotti
Peter D. DeChiara
ATTN: Peter Ellis
COHEN, WEISS AND SIMON LLP
330 West 42nd Street
25th Floor
New York, New York 10036-6976
Tel.: (212) 563-4100
Fax: 212-695-5436
E-mail: bceccotti@cwsny.com
E-mail: pdechiara@cwsny.com

Anthony B. Ullman
DENTONS
221 Avenue of the Americas
New York, NY 10020-1089
United States
Tel.: (212) 768 6700
Fax: (212) 768 6800
E-mail: anthony.ullman@dentons.com

October 8, 2013
Page 2

**Re:** *In re: City of Detroit, Michigan*, Case No. 13-53846
(E.D. Mich. Bankr.)

Counsel:

Enclosed please find the October 8, 2013 supplemental production of documents by the City of Detroit (the "City") in response to your August 23, 2013 requests for the production of documents. The inadvertent production of any documents protected by the work product doctrine, common interest doctrine, the attorney-client privilege or any other applicable privilege shall not be deemed a waiver or impairment of any claim of privilege, immunity or other rights the City might assert.

The City reserves the right to supplement its production as necessary.

Very truly yours,

Geoffrey S. Irwin

# EXHIBIT 6-Q

| | |
|---|---|
| **From:** | Green, Jennifer K. |
| **Sent:** | Saturday, October 12, 2013 11:40 PM |
| **To:** | gshumaker@jonesday.com |
| **Cc:** | Deeby, Shannon L.; Gallagher, Sean P. |
| **Subject:** | Production Issue |

Greg:

Apologies for reaching out to you over the weekend, but given the schedule over the next few weeks, I did not want to wait until Monday to raise this issue and waste another day. Upon review of the documents produced last Tuesday, we noticed that there are certain emails where the attachments were not produced. I assume this was merely an oversight. For example, in one email (Bates numbered DTMI00233349), there are numerous memos listed, including (i) "a summary and comparison of PA 4 and Chapter 9," (ii) "Memoranda on Constitutional Protections for Pension and OPEB Liabilities," and (iii) "Analysis of Filing requirements of section 109(c)(5) of Bankruptcy Code ("Negotiation is Impracticable" and "Negotiated in Good Faith"). Can you please provide copies of these memos to us ASAP? Thanks. See you next week.

Jen


**Jennifer K. Green**
CLARK HILL PLC
500 Woodward Ave | Suite 3500 | Detroit, Michigan 48226
313.965.8274 (direct) | 313.309.6944 (fax) | 248.321.8525 (cell)
jgreen@clarkhill.com | www.clarkhill.com

# EXHIBIT 6-R

| | |
|---|---|
| **From:** | Geoffrey S Irwin <gsirwin@JonesDay.com> |
| **Sent:** | Tuesday, October 15, 2013 10:49 PM |
| **Cc:** | slevine@lowenstein.com; wjung@lowenstein.com; pgross@lowenstein.com; bceccotti@cwsny.com; pdechiara@cwsny.com; anthony.ullman@dentons.com; lbrimer@stroblpc.com; mtaunt@stroblpc.com; mfield@stroblpc.com; eerman@ermanteicher.com; czucker@ermanteicher.com; bpatek@ermanteicher.com; Gordon, Robert D.; Deeby, Shannon L.; Green, Jennifer K.; Feldman, Evan J.; charlesidelsohnattorney@yahoo.com; Gregory Shumaker |
| **Subject:** | City of Detroit |

Ms. Green:

I am in receipt of your email on Saturday night to Greg Shumaker regarding privilege claims. As to your general question regarding the production of attachments, each document in the review is analyzed as a stand-alone document for privilege purposes, unless there are circumstances in the cover email or attachment which would make the attachment privileged or work product in the context of the entire collection of documents (for example, the cover email reflects that the markings on the attachment are from an attorney; or the cover email is forwarding a set of documents and requesting attorney advice with respect to those documents). Each document on the privilege log, whether a parent email or an attachment, is designated with its own number, and when counsel sends us a request to produce a document on the privilege log with reference to a specific number, we analyze that document alone, not that document and all the attachments. Of course, the log also reflects if the document is a parent or attachment, to aid you in determining the relationship between the documents. The bottom line is that we did not analyze the privileged status of the documents that you did not request that we analyze, whether they were parents or attachments. Another reason we proceed in this way is that if we assume you are challenging the privileged status of all of the attachments to a document, it increases the time it takes to respond to your request, perhaps needlessly, if you have no intention of challenging the privileged status of the attachment.

The example you provided is a case in point (DTMI002333348-3349). This document has eight attachments. Based on your request that we produce those attachments, we have gone back and reviewed the status of the attachments. The attachments to this email, and the email itself, are all privileged. To the extent any of this email and any of its attachments have previously been inadvertently produced, we request that you return or destroy them pursuant to the reservation of rights regarding the inadvertent production of any documents protected by the work product doctrine, common interest doctrine, the attorney-client privilege or any other applicable privilege.

We will address the status of each of the parent email, as well as each attachment, as they are described at the bottom of the parent email:

(1) Email dated 06/05/2012 from Thomas A. Wilson to Heather Lennox; cc to Corinne Ball, and Jeffrey Ellman. This email appears as PRIV 9731 on our first privilege log, and 2677 on our second privilege log, and the attorney-client privilege is claimed for this document. After further investigation, we believe that this document is shielded from production by the work product doctrine. The document was inadvertently produced at DTMI00233348, and we request its return or destruction.

(2) Document listed as "NYI_4399007_4_Detroit_Memo Re Public Act 4 and Chapter 9.DOCX." This

document was listed on our first privilege log as PRIV 5621, and on our second privilege log as PRIV 2678. Both the attorney-client and work product doctrine were claimed with respect to this document. After further investigation, we believe that this document is shielded from production by the work product doctrine. The document has not been produced.

(3) Document _1933683_13_Detroit - Memorandum Analyzing Various Aspects of Proposed DWSD Transaction.DOCX." This document was listed on our first privilege log as PRIV 1199, PRIV 9732, PRIV 1204, and PRIV 9681, and on our second privilege log as PRIV 2618. The attorney-client privilege was claimed, as well as the common legal interest doctrine. After further investigation, we believe that this document is shielded from production by the work product doctrine. It was inadvertently produced at DTMI00233350-3404, and we request its return or destruction.

(4) Document listed as "CLI_1934731_6_Detroit - Cover Memo for DWSD Transaction Memo.DOCX." This document was listed on our first privilege log as PRIV 1201, PRIV 1205, PRIV 5625, and on our second privilege log as PRIV 2680. Both attorney-client privilege and the work product doctrine were claimed for this document. After further investigation, we believe that this document is shielded from production by the work product doctrine. It has not been produced.

(5) Document listed as "ATI_2484061_2_City of Detroit - Memo on Michigan Constitutional OPEB Protections.DOC." This document was listed on our first privilege log as PRIV 5708 and on our second privilege log as PRIV 0077, and PRIV 2681, and attorney-client privilege was claimed. After further investigation, we believe that this document is shielded from production by the work product doctrine. It has not been produced.

(6) Document listed as ATI_2483523_2_City of Detroit - Memo on Michigan Constitutional Pension Plan Protections.DOC." This document was listed on our first privilege log as PRIV 5709 and PRIV 5627, and on our second privilege log as PRIV 0076 and PRIV 2682. Both attorney-client privilege and the work product doctrine were claimed. After further investigation, we believe that this document is shielded from production by the work product doctrine. It has not been produced.

(7) Document listed as "CLI_1933048_2_Detroit - Establishing Tri County Authority.DOCX." This document was listed on our first privilege log as PRIV 0482, PRIV 0563, and PRIV 0628 and on our second privilege log as PRIV 2683, PRIV 2619 and PRIV 0139. Claims of both attorney-client privilege and the work product doctrine were claimed. After further investigation, we believe that this document is shielded from production by the work product doctrine. It has not been produced.

(8) Document "Detroit - Seidman Email Memos.pdf." This document was listed on our first privilege log as PRIV 9733, PRIV 5630, PRIV 0399, and on our second privilege log as PRIV 2685. The attorney-client privilege was claimed. On further investigation, we believe that this document is shielded from production by the work product doctrine. It was inadvertently produced at DTMI00233405-3406, DTMI100233441-3442, and DTMI00234872-4873, and we request its return or destruction.

(9) Document "Ability of Various Entities to Enter into Interlocal Agreement.pdf." This document was listed on our first privilege log as PRIV 0564, and PRIV 5629, and on our second privilege log as PRIV 2620 and PRIV 2684. Both the attorney-client privilege and the work product doctrine, as well as the common interest doctrine were claimed. On further investigation, we believe that this document is shielded from production by the work product doctrine. It has not been produced.

Thank you.

Geoff Irwin



**Geoffrey S. Irwin** • Partner

Washington Office • 51 Louisiana Ave. NW • Washington, DC 20001-2113
**Direct:** 202.879.3768 • **Fax:** 202.626.1700 • gsirwin@jonesday.com

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========