**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---------------------------------------------------------------x
: Chapter 9
In re :
: Case No. 13-53846
CITY OF DETROIT, MICHIGAN, :
: Hon. Steven W. Rhodes
                     Debtor. :
: **Expedited Consideration**
: **Requested**
:
---------------------------------------------------------------x

# MOTION *IN LIMINE* TO EXCLUDE OPINIONS OR CONCLUSIONS AS TO THE CITY OF DETROIT, MICHIGAN'S UNDERFUNDING OF PENSION LIABILITY

      1.      The City of Detroit, Michigan (the "City) failed to designate any expert witnesses at the outset of this proceeding, but it may now seek to cloak expert opinion in the guise of lay testimony from Charles Moore of Conway MacKenzie, Inc., the City's restructuring consultant. Specifically, the City maintains it has "$3.5 billion" in unfunded pension liabilities and may seek to offer this purported fact through the "lay testimony" of Charles Moore. This testimony would constitute an improper attempt to evade evidentiary requirements set forth under FED. R. EVID. 702 and federal common law for expert testimony. It represents the precise evidentiary shortcut that Congress sought to prohibit by enacting subsection (c) of FED. R. EVID. 701.

      2.      The Objectors have learned through discovery that the City's representations as to its unfunded pension liabilities are questionable and potentially misleading. Charles Moore, the witness to be proffered on pension liabilities, is an accountant who admits that he has no actuarial training and is not relying on an actuarial valuation for his estimates. In any event, none of the City's professionals have completed an independent actuarial valuation and, instead,

rely on "rough guesses" predicated on historical data that they admit remains unverified. Accordingly, the Official Committee of Retirees (the "Committee") respectfully moves *in limine* to exclude any opinion or conclusion that Mr. Charles Moore or any other consultant may offer as to the quantum of the City's asserted unfunded pension liability at the Eligibility hearing scheduled to commence on October 23, 2013 (the "Eligibility Hearing").

I. **THE CITY CANNOT SUBSTITUTE LAY TESTIMONY FROM CONSULTANTS FOR AN INDEPENDENT ACTUARIAL ANALYSIS AS IS REQUIRED TO ESTABLISH UNDERFUNDING OF PENSION LIABILITY**

3. FED. R. OF EVID. 701[1] sets forth that:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) ***not based on scientific, technical, or other specialized knowledge within the scope of Rule 702***. FED. R. EVID. 701.

The purpose of FED. R. EVID. 701(c), as explicitly recognized by the Sixth Circuit, is "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 370 F.3d 519, 525 (6th Cir. 2004) (quoting Committee Notes to the 2000 Amendment to FED. R. EVID. 701).[2]

---

[1] The Federal Rules of Evidence are made applicable in this bankruptcy proceeding pursuant to FED. R. BANKR. P. 9017.

[2] The Committee Notes to the 2000 Amendment to FED. R. EVID. 701 provide, in relevant part, that:

> "Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. Under the amendment, a witness's testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge

4. The Federal Rules of Evidence impose a special "gatekeeping" obligation upon a trial judge to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). In particular, FED. R. EVID. 702 sets forth certain reliability requirements for expert testimony that prohibits testimony as to "scientific, technical, or other specialized knowledge" unless offered by a "witness qualified as an expert by knowledge, skill, experience training, or education" and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product or reliable principles and methods and (3) the witness has applied the principles and methods reliably to the facts of the case." *JGR, Inc.*, 370 F.3d at 525 n.4 (citing FED. R. EVID. 702). In addition to the reliability requirements set forth in FED. R. EVID. 702, the United States Supreme Court has articulated that the following considerations also "bear on" a judge's gatekeeping determination as to expert testimony:

(i) whether a "theory or technique can be and has been tested;"
(ii) "whether it has been subjected to peer review and publication;"
(iii) whether, in respect to a particular technique, there is a high "known or potential rate of error" and whether there are "standards controlling the technique's operation;" and
(iv) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community."

*See Kumho Tire Co., Ltd.*, 526 U.S. at 149-50 (citing *Daubert*, 509 U.S. at 592-94.)

5. The Federal Rules of Civil Procedure aid a trial judge's gatekeeping determination by requiring heightened disclosure requirements for expert testimony. FED. R.

---

within the scope of Rule 702 … By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26 and Fed.R.Crim.P. 16 by simply calling an expert witness in the guise of a layperson."

- 3 -

CIV. P. 26(a)(2) requires that a party discloses expert witnesses and evidence at the outset of the case, and that such disclosure be "companied by a written report – prepared and signed by the witness …." FED. R. CIV. P. 26(a)(2). An expert's written report must contain, *inter alia,* "a complete statement of all opinions the witness will express and the basis and reasons for them," "facts or data considered by the witness," and the "witness's qualifications." FED. R. CIV. P. 26(a)(2)(B).[3]

6. The calculation of pension benefits, which includes "complicated tasks such as calculating life-expectancy, assessing amortization rates, … discounting to present value, or calculating earnings potential in a pension portfolio," is of a "specialized or technical nature" and therefore requires expert testimony. *See Donlin v. Philips Lighting N.A. Corp.*, 581 F.3d 73, 83-84 (3d Cir. 2009) (finding trial court abused discretion in allowing employee's "lay" testimony as to the "pension component of her back pay damages" where calculation required forward-looking speculation for which employee lacked requisite educational background, training and experience with retirement benefits).

7. Within the Sixth Circuit, admission of such specialized or technical opinion testimony as "lay" testimony is an abuse of discretion that mandates reversal. *JGR, Inc.,* 370

---

[3] FED. R. CIV. P. 26(a)(2)(B) sets forth that an expert report must contain:
- (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
- (ii) the facts or data considered by the witness in forming them;
- (iii) any exhibits that will be used to summarize or support them;
- (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
- (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
- (vi) a statement of the compensation to be paid for the study and testimony in the case.

F.3d at 525 n.4 (reversing trial court judgment based upon trial court's abuse of discretion in admitting accountant's "lay" testimony as to company's lost profits and lost business value where accountant was never employed by company and instead relied upon information that he received from a company officer that accountant did not independently verify).

8. The City's representations regarding the magnitude of its unfunded pension liability are not reliable in that they were based, in part, upon calculations and assumptions by persons without actuarial expertise and, in any event, were made without conducting an independent actuarial analysis. Charles Moore testified that he is a certified public accountant with no formal training in actuarial areas. Transcript of Deposition of Charles Moore, dated September 18, 2013, Case No. 13-53846 ("Moore Dep."), at 22:2-7; 65:4-11. Mr. Moore further testified that, as of his September 18, 2013 deposition, the City ***had not completed an actuarial valuation*** placing the City's unfunded pension liability at $3.5 billion and did not have complete information to undertake such an analysis. Moore Dep. at 61:18-62:7. Glenn Bowen of Milliman, the City's actuary, clarified that the figures that the City has cited for high-end estimates of unfunded pension liability were predicated only on "rough guesses." Transcript of Deposition of Glenn Bowen, dated September 24, 2013, Case No. 13-53846 ("Bowen Dep."), at 146:8-18. By way of example, the 7.0 percent rate of return referenced in Mr. Moore's declaration submitted in support of the City's Chapter 9 Eligibility, was not an actuarial estimate, rather, it was only provided for "illustrative purposes." Moore Dep. at 62:25-63:6. Glenn Bowen further testified that, as of September 24, 2013, Milliman had not been able to replicate the data and analysis it received from the actuary for the City's General Retirement Systems. Bowen Dep. at 205:7-206:11.

9. Absent sufficient academic background and training, and having failed to verify the information relied upon in making its calculations, neither Charles Moore nor any other individual designated by the City to testify should be permitted to offer an opinion or conclusion concerning the quantum of the City's underfunding of pension liabilities.

## II. CONCLUSION

10. For the foregoing reasons, the Committee respectfully requests that the Court enter an order, in the form attached hereto as Exhibit 1, precluding Charles Moore or any other individual designated by the City to testify at the Eligibility Hearing from offering an opinion or conclusion as to the City's pension liabilities.

Dated: October 21, 2013

| Carole Neville | Sam J. Alberts | By: /s/ Claude D. Montgomery |
|---|---|---|
| DENTONS US LLP | DENTONS US LLP | Claude D. Montgomery (P29212) |
| 1221 Avenue of the Americas | 1301 K. Street, NW | DENTONS US LLP |
| New York, New York 10020 | Suite 600, East Tower | 1221 Avenue of the Americas |
| Tel: (212) 768-6700 | Washington, DC 2005-3364 | New York, New York 10020 |
| Fax: (212) 768-6800 | Tel: (202) 408-6400 | Tel: (212) 768-6700 |
| carole.neville@dentons.com | Fax: (202) 408-6399 | Fax: (212) 768-6800 |
| | sam.alberts@dentons.com | claude.montgomery@dentons.com |

Matthew E. Wilkins (P56697)
Paula A. Hall (P61101)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
Direct: (248) 971-1711
Cell: (248) 882-8496
Fax: (248) 971-1801
wilkins@bwst-law.com
hal@bwst-law.com

*Counsel for the Official Committee of Retirees*

- 6 -

13-53846-tjt    Doc 1276    Filed 10/21/13    Entered 10/21/13 10:50:11    Page 6 of 6