# EXHIBIT 2

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------x
                                                   :   Chapter 9
In re                                              :
                                                   :   Case No. 13-53846
CITY OF DETROIT, MICHIGAN,                         :
                                                   :
                    Debtor.                        :   Hon. Steven W. Rhodes
                                                   :
                                                   :
---------------------------------------------------x

### DECLARATION OF CAROLE NEVILLE IN SUPPORT OF APPLICATION FOR ORDER APPROVING RETENTION OF DENTONS US LLP AS COUNSEL TO THE OFFICIAL RETIREE COMMITTEE

I, Carole Neville, declare as follows:

1.  I am a partner of at Dentons US LLP ("Dentons") which maintains offices for the practice of law in New York at 1221 Avenue of the Americas, 25th floor, New York, New York 10020, among other locations in the United States. I am admitted to practice law in the State of New York and in the United States District Court for the Eastern District of Michigan. I submit this declaration in support of the accompanying Application (the "Application") for an Order Approving the Retention of Dentons as Counsel to the Official Retiree Committee (the "Retiree Committee") in this Chapter 9 case.

2.  At a meeting of the Retiree Committee held on August 28, 2013, the Retiree Committee unanimously voted to employ and retain Dentons as counsel to the Retiree Committee to perform services and give such advice as may be necessary and desirable for the equitable and orderly conduct of this Chapter 9 case on behalf of the Retiree Committee. The services to be rendered by Dentons on behalf of the Retiree Committee include:

a. to give legal advice with respect to the Retiree Committee's powers and duties in the context of this case;

b. to assist and advise the Retiree Committee in its consultation with the Debtor and others regarding the administration of this case;

c. to attend meetings and negotiate with the Debtor's representatives and others;

d. to appear, as appropriate, before the Court, the relevant Appellate Courts, and the United States Trustee, and to represent the interests of the Retiree Committee before said Courts and the United States Trustee;

e. to advise the Retiree Committee in connection with proposals and pleadings submitted by the Debtor or others to this Court;

f. to generally prepare on behalf of the Retiree Committee all necessary applications, motions, answers, orders, reports and other legal papers in support of positions taken by the Retiree Committee;

g. to assist the Retiree Committee in the review, analysis and negotiation of any plan(s) of adjustment that may be filed and to assist the Retiree Committee in the review, analysis, and negotiation of the disclosure statement accompanying any plan(s) of adjustment;

h. to take all necessary action to protect and preserve the interests of retirees represented by the Retiree Committee, including: (i) to investigate and prosecute actions on the Retiree Committee's behalf, (ii) challenge the City's eligibility to use Chapter 9 to terminate retirement promises and (iii) to conduct negotiations concerning all litigation in which the Debtor are involved;

i. to advise the committee on the retention of other professionals and experts to assists in the engagement, including local counsel;

j. to retain expert professional assistance and witnesses, as necessary; and

k. to perform all other necessary legal services for the Retiree Committee in connection with this Case.

3. Dentons is a leading international law firm created by the combination of SNR Denton, Fraser Milner Casgrain, and Salans (the "Combination"). The Combination was effectuated by the use of a Swiss verein structure, comparable to an association of limited partnerships. The retention of Dentons includes and contemplates the retention of Dentons' verein affiliate Salans FMC SNR Denton Europe LLP ("Dentons Europe") and lawyers and non-lawyer staff in its New York office. Effective October 1, 2013, Claude Montgomery, and other individuals from Dentons Europe expected to assist in this engagement, relocated to the New York office of Dentons and joined Dentons.

4. Dentons is uniquely qualified to represent the Retiree Committee. Dentons has lawyers with the expertise to address the major issues facing the Committee, including (i) a strong, well known restructuring group; (ii) an experienced pension and benefits group, (iii) financing and capital markets practices with understanding of municipal bonds, swaps and other financing mechanisms, (iv) an incentive development group that has been involved in the redevelopment of American cities destroyed by natural disasters, and (iv) public policy and attorney general practitioners who understand how governments operate. The restructuring group may also draw on the resources of the firm's litigation, tax, real estate and corporate groups--each of which is familiar with the demands and concerns of bankruptcy cases.

5. Dentons has had significant representations in many of the recent major reorganizations, including the Lehman Brothers, MF Global, American Airlines, and Kodak chapter 11 cases. In addition, the firm has served as committee counsel in large, complex chapter 11 cases including the United Airlines and Federal Mogul cases.

6. Dentons' lawyers have also represented retiree interests and committees in cases filed before the enactment of section 1114 of the Bankruptcy Code including the Century Brass and Allis Chalmers cases, and negotiated the first post-retiree benefits trust as part of a plan of reorganization in the White Motor case.

7. Dentons has conducted a conflict check of the parties named and identified in the City's initial pleadings, on the City's service lists, on the mediation lists and in a separate listing provided by the City, as well notices of appearance filed by various parties. This search included secured and unsecured creditors, the City's current professionals, pertinent City officials, City law firms and other professionals. A similar search was performed by Dentons Europe.

8. The Dentons and the Dentons Europe conflict checking procedures are similar. The process is initiated by a request from an attorney. The relevant department responsible for conflicts analysis then performs a computer search through its database. The computerized search examines information in the conflicts database, including both ongoing and closed matters. The report identifies each matter in which one of the parties searched for was or is involved; whether the party was a client, adverse to a client, or otherwise involved in the matter; and whether the matter is still pending or has been closed. However, Dentons' and Dentons Europe's computerized searches may not identify all ongoing matters which relate to a specific entity in its capacity other than as an existing client of the firm. This may be because the name of all defendants to a suit or parties involved in a transaction are not included in the new matter intake and/or conflict form, or because additional parties become involved in a matter subsequent to the opening of the matter and the intake/conflict form is not amended.

9. Dentons' and Dentons Europe's computerized searches also do not always enable attorneys to fully identify wider interests. Accordingly, the computerized conflict search is supplemented by circulating an e-mail containing a list of parties to be searched for conflicts to all attorneys, and asking them to advise of any known conflict issues raised by a potential representation. Dentons Europe makes a similar inquiry of all supervising or originating attorneys where there is a historical identified connection to the client, the situation or the identified historical points of contact. These supplemental inquiries were done at Dentons and Dentons Europe in connection with this engagement.

10. Once the computerized conflict report comes back from the accounting department, members of my team or I contact the various partners to clarify any information reflected therein that may implicate a potential conflict. All the partners on whom inquiry is

made are asked to provide additional information as to whether any of the matters upon which they or their staff have been engaged involve the Debtor in any capacity or have been adverse to the Debtor's interests. That was also done at both Dentons and Dentons Europe.

11. I, Dentons and its members, counsel and associates, have no connection with the City, its creditors or any other party in interest, or its attorneys or accountants, or with the U.S. Trustee, members of the Retirees Committee or the professionals retained by individual members of the Retiree Committee except that Dentons US LLP previously has represented, currently represents and may represent in the future the entities described below (or their affiliates), in matters totally unrelated to this case or the City:

> a. BlackRock Financial Management, Inc. and certain of its affiliates;
> b. Blue Cross Blue Shield of Michigan and certain of its affiliates;
> c. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America;
> d. MBIA Insurance;
> e. Merrill Lynch capital Services, Inc.
> f. Syncora Guarantee Inc., and certain of its affiliates;
> g. U.S. Bank National Association;
> h. Assured Guaranty Limited;
> i. Berkshire Hathaway Reinsurance Group, and certain of its affiliates; and
> j. FGIC Corporation.

12. Dentons Europe and its members, counsel and associates have no connection with the City, its creditors or any other party in interest, or its attorneys or accountants, or with the U.S. Trustee, members of the Retirees Committee or the professionals retained by individual members of the Retiree Committee, except that Dentons Europe previously has represented, currently represents and may represent in the future the entities described below (or their affiliates), in matters totally unrelated to this case or the City:

> a. UBS or certain of its non US affiliates;

b. Dexia Credit Locale or certain of its non US affiliates;

   c. AT&T or certain of its non US affiliates;

   d. Black Rock or certain of its non US affiliates;

   e. Deutsche Bank AG or certain of its non US affiliates; and

   f. General Motors or certain of its non US affiliates.

13. In addition, Dentons and Dentons Europe may have in the past represented, may currently represent and may in the future represent such individual creditors or their affiliates in matters unrelated to the City. Dentons and Dentons Europe may continue its representation of such parties or their affiliates, but has not and will not represent any of them in any matter relating to the City or this Chapter 9 case.

14. As part of its practice, Dentons and Dentons Europe appear in cases, proceedings, and transactions involving different attorneys, accountants, financial consultants and investment bankers, some of whom now or may in the future represent the City, creditors and other parties in interest in the City's Chapter 9 case. In addition, Dentons and Dentons Europe represent thousands of clients, some of whom may be creditors of the City. Dentons and Dentons Europe have not and will not, however, represent any of the entities referred to in this paragraph in connection with the City's Chapter 9 case.

15. Dentons and Dentons Europe are currently unaware of any other representations that they have which may impede or interfere with their ability to fully, completely and in a disinterested manner represent the Committee in all respects. Nevertheless, in the event that any issue may arise which would cause the City to be adverse to any of Dentons' clients such that it would not be appropriate for Dentons to represent the Retiree Committee with respect to such matters, the Retiree Committee, the Court and the United States Trustee will be made so aware in

order that arrangements may be made for another firm to represent the Retiree Committee with respect to such matters.

16. Dentons has agreed to charge, subject to this Court's approval in accordance the Bankruptcy Code, Dentons' customary hourly rates and its customary reimbursements as charged to its bankruptcy and non-bankruptcy clients, subject to the following adjustment. Dentons has agreed that its hourly rate for each attorney would not exceed the hourly rates charged by Jones Day attorneys of comparable year of admission to the bar. At present, subject to periodic revisions in accordance with our firm's general billing procedures and to the adjustment not to exceed the Jones Day rates, the range of hourly billing rates for partners and counsel of Dentons is $455 - $1070, the range of hourly billing rates for associates is $230 - $520, and the range of hourly billing rates for legal assistants, law clerks and paraprofessionals is $200 - $775.

17. The lead team at Dentons consists of Sam Alberts, Claude Montgomery, and me. My current hourly rate is $985. I have reduced my hourly rate to $895. Sam Alberts' hourly rate is $705. Claude Montgomery's hourly rate is $750.

18. Dentons, with the consent of the Committee, has agreed to retain Segal Inc. ("Segal"), an actuarial consulting firm with an expertise in municipal pensions and other retiree compensation, to assist Dentons in performing the necessary services for the Committee. The Segal engagement letter, a copy of which is attached hereto as Exhibit A, requires Dentons to submit the invoice for Segal's time and expenses to the Fee Examiner and the City as an Dentons' expense and to reimburse Segal when Dentons receives payment on the approved invoice from the City.

19. Dentons has further advised the Committee that, consistent with Dentons' practice with respect to its other clients, it will also charge for other services rendered in these matters including, but not limited to, photocopying (not to exceed $0.10 per page for black and white), travel, and other fees and expenses which are consistent with Fee Order entered by the Court on September 11, 2013 [Dkt #810].

20. Among the expenses Dentons anticipates incurring in connection with its representation of the Retiree Committee relates to the engagement of actuaries to provide services in furtherance of Dentons provision of legal advise to the Retiree Committee.

21. Dentons professionals have reviewed the Fee Order and will abide by its terms.

22. No agreement or understanding in any form exists to share any compensation received by Dentons (including Dentons Europe) for services to the Retiree Committee with any other person or firm, other than as permitted by the Bankruptcy Code.

23. In light of the foregoing and to the best of my knowledge, I, Dentons, its members, counsel and its associates neither hold nor represent any adverse interest in connection with the case as required by section 1103(b) of the Bankruptcy Code.

24. To the extent that Dentons discovers any facts bearing on matters described herein or its representation of the Committee during the period of its employment, Dentons will supplement the information contained in this affidavit.

25. I have read the Application accompanying this declaration and, to the best of my knowledge, information and belief, the contents of the Application are true and correct.

Pursuant to 28 U.S.C. section 1746, I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Executed this 10th of October, 2013 in New York, New York.

By:      /s/ Carole Neville
           Carole Neville

# EXHIBIT A

# Segal Consulting

1920 N Street NW Suite 400 Washington, DC 20036-1659
T 202.833.6400 www.segalco.com

October 3, 2013

Carole Neville, Esq.
Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020-1089

Re: Consulting Services Agreement - Official Retiree Committee of the City of Detroit

Dear Ms. Neville:

This letter sets forth the agreement between Dentons US LLP ("Counsel") and The Segal Company (Eastern States), Inc., on behalf of itself and its affiliates (collectively, "Segal"), effective as of September 4, 2013, to provide to Counsel the services described herein. We understand that such services are being requested by Counsel in connection with Counsel's representation of the Official Retiree Committee (the "Retiree Committee"), in the Chapter 9 Case of the City of Detroit (the "City"), Case No. 13-53846, pending in the United States Bankruptcy Court for the Eastern District of Michigan (the "Proceeding").

## AGREEMENT FOR ACTUARIAL AND CONSULTING SERVICES

### 1. SERVICES

This agreement contemplates services of a character and quality that are necessarily adjunct to Counsel's services. In connection with Counsel's retention of Segal, all communications between Segal and the Retiree Committee, Segal and Counsel, as well as communication between Segal and any of its agents, or employees acting on its behalf, shall be regarded as privileged and confidential and made solely for the purpose of assisting Counsel in giving legal advice to the Retiree Committee. Segal hereby agrees that it will not disclose to anyone, without Counsel's written permission, the nature or content of any oral or written communication with Counsel or with the Retiree Committee, nor any information gained from the inspection of any records or documents submitted to Segal, and Segal will not permit inspection of any papers or documents without Counsel's permission in advance.

Benefits, Compensation and HR Consulting. Member of The Segal Group. Offices throughout the United States and Canada

(a)  **Effective Date.** This Agreement is effective on September 4, 2013.

(b)  **Scope of Services.** Segal shall perform services pursuant to this Agreement as a non-testifying consultant. Segal's services do not include rendering legal or accounting services.

The services provided by Segal shall include the following:

a. Translate actuarial concepts and data for Counsel to facilitate Counsel in giving legal advice to the Retiree Committee;

b. Advise and assist Counsel in its actuarial analysis of any plans;

c. Educate Counsel regarding benefits;

d. Advise and assist Counsel in its examination and analysis of any proposed retiree benefit modifications by the City that impact the Retiree Committee and/or its constituents;

e. Participate in meetings and negotiations with the City, its advisors and counsel regarding proposed modifications, underlying assumptions, and support information;

f. Upon written request of counsel, provide testimony on related matters, as appropriate; and

g. Provide other services as requested by Counsel.

## 2.  FEES

Segal shall bill on a time and expense basis. The fees shall be based on the tasks required and the related time spent charged at the regular time charge rates of the members of Segal's consulting team. Segal's billing rates currently range from $180 to $750 an hour, subject to upward adjustment on or after each January 1st. In addition to professional fees, Segal's bills shall include out-of-pocket expenses. Segal agrees to comply in all respects with procedures established and orders entered by the U.S. Bankruptcy Court, Eastern District of Michigan ("Court"), with respect to the Proceeding. Segal understands that its fees and expenses are subject to review by the Fee Examiner appointed by the Court, by the Retiree Committee, and by the City.

Segal understands and agrees that it shall remit monthly invoices for fees and expenses each month for the prior month's services and payment shall be contingent upon Counsel's receipt of such compensation and reimbursement of expenses from the City  Segal agrees that Counsel is not responsible for the payment of Segal's fees and expenses pursuant to this Agreement unless and until Counsel receives payment on Segal's invoices from the City. Counsel will remit payment to Segal on each undisputed invoice (or portion thereof) immediately upon receipt of such payment from the City. Segal also agrees that neither the Retiree Committee nor its members shall be responsible for Segal's fees and expenses.

Counsel agrees to include a provision for the payment of Segal's fees and expenses in any order of the Court approving Counsel's retention as counsel to the Retiree Committee.

### 3. STANDARD OF CARE

Segal warrants that all services performed by Segal employees shall be of a high quality according to applicable industry standards. Counsel understands that Segal will be provided information and data from the City (or its agents and representatives). Segal shall have the right to rely on the accuracy and completeness of the data and information and shall have no responsibility for independently verifying or checking this data and information. However, notwithstanding the foregoing, Segal shall have the duty to test the data for reasonableness and advise Counsel if the data and information appears to be abnormal, unusual, or incorrect.

### 4. CONFIDENTIALITY

Segal understands that is Counsel's intention and position that the services provided by Segal pursuant to this Agreement will be covered by all applicable privileges, including the attorney-client privilege and attorney work-product privilege. Segal agrees to hold in confidence, and to not disclose to any third party, without Counsels written permission, the existence, nature, or content of any oral or written communications related in any manner to the subject matter of Counsel's representation of the Client. Segal agrees not to disclose any information it obtains form the inspection of any record or document submitted to it, including information obtained from records or documents coming into its possession, during the performance of its services under this Agreement. Segal will not acknowledge the existence of, or permit inspection of, any such papers or documents without written permission from Counsel in advance.

Segal acknowledges that all work papers, records, or other documents, regardless of their nature and the source from which they emanate, shall be held by Segal solely for Counsel's convenience and subject to Counsel's unqualified right to instruct with respect to possession and control. Any work papers prepared by Segal or anyone working with or under it or on its behalf will belong to Counsel.

Segal agrees to notify Counsel promptly of the occurrence of any one of the following events: (1) receipt by Segal of a written request to examine, inspect, or copy such documents; or (2) any attempt to serve or the actual service of any court order, subpoena, or summons upon Segal that requires the production of such documents or records. Counsel agrees to pay any costs reasonably incurred by Segal, including reasonable attorney's fees, in the course of resisting such a request immediately upon reimbursement by the City.

### 5. LIMITATION OF LIABILITY

Segal shall not be liable for any claim arising out of or relating to this Agreement or its performance or nonperformance of its obligations thereunder for an aggregate amount in excess of the fee paid by Counsel to Segal. The parties agree that this liability amount is reasonable and that Segal shall not be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs) arising under

this Agreement, except, the aforementioned limitation shall not apply in the event that a judge determines that such liability is attributable to the gross negligence or willful misconduct of Segal. This limit on liability shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss, whether in contract, statute, tort (including, without limitation, breach of contract, breach of warranty, negligence of any kind, whether active or passive, strict liability, misrepresentations, claims for failure to exercise due care in the performance of services hereunder and other torts), or any other legal or equitable grounds.

## 6. WARRANTIES AND DISCLAIMERS

Segal warrants that the services it will provide under this Agreement will be performed in a competent and professional manner by qualified personnel. Counsel agrees that Segal shall not be responsible for any inaccurate or incomplete information provided by the debtor or its employees or agents, or any work performed by Counsel or the Client or any third party acting as an agent of either of them.

Neither party shall be liable to the other for failure to comply with the terms of this Agreement or delays in the performance of any of their respective obligations hereunder attributable to causes beyond reasonable control, including, but not limited to, acts of God, or, government order, rule or regulation or the other party's -failure to timely fulfill its responsibilities under this Agreement for the period during which the effects of such causes continue.

## 7. ACKNOWLEDGEMENTS

The parties acknowledge they have read this Agreement, understand it and agree to be bound by its terms. This Agreement will be valid and in effect for all future services unless reissued or revised. Each signatory below is a valid agent with the authority to bind their respective organization to the terms and conditions contained herein.

## 8. ENTIRE AGREEMENT

This Agreement, together with any fully executed proposals and any fully executed riders attached hereto, sets forth the entire agreement between the parties as to the subject matter hereof and merges all prior discussions between them. Neither party shall be bound by any conditions, definitions, warranties, understandings or representations with respect to such subject matter other than as expressly provided herein, or in any prior written agreement between the parties, or as duly set forth on or after the effective date of this Agreement in writing and signed by a duly authorized representative of the party to be bound thereby.

## 9. SEVERABILITY/CONSTRUCTION

If any provision of this Agreement is held to be illegal, invalid or unenforceable, the validity, legality and enforceability of the remaining provisions shall not be affected. No consent to or waiver of any default hereunder shall be effective unless in writing and no such consent or waiver shall be construed as a consent to or waiver of any default in the future or of any other default hereunder.

### 10. ASSIGNMENT/TRANSFER

This Agreement may not be assigned or otherwise transferred by one party without the prior written consent of the other party or the Retiree Committee. In addition, no assignment shall discharge a party from its obligations or duties herein regarding the provisions of ownership of Segal Know-how and confidentiality

### 11. RELATIONSHIP OF THE PARTIES

The parties agree that Segal is acting as an independent contractor in performing the services detailed in this Agreement. Nothing contained herein or done pursuant to this Agreement shall be interpreted as the parties entering into a joint venture or into a partnership or shall constitute either party hereto as the agent for the other for any purpose and neither party shall have the right to make any warranty or representation to such effect.

### 12. TERMINATION OF THE AGREEMENT

Counsel shall have the right, for any reason, including at the direction of the Retiree Committee, to terminate this Agreement immediately in accordance with Section 16 below. Segal shall have the right, for any reason, to terminate this Agreement upon ninety (90) days written notice to Counsel sent in accordance with Section 16 below and with the applicable sections of the Bankruptcy Code and Bankruptcy Rules. Upon receipt of a notice to terminate this Agreement, Segal shall cease any further work as of the effective date of the Agreement's termination and shall be entitled to payment for its services performed and expenses incurred up to the effective date of the Agreement's termination.

If one of the parties commits a material breach of its obligations hereunder, intent to terminate may be conveyed by the non-breaching party by written notice, setting forth the details of the breach, sent to the breaching party. Termination shall become effective thirty (30) days from the date that the notification of intent to terminate was mailed, unless the breaching party corrects the breach before the 30-day period expires.

Notwithstanding termination of this Agreement, Sections 4 and 5 of this Agreement shall remain in full force and effect.

### 13. NOTICES

All notices, requests, demands and other communications given or made in accordance with this Agreement shall be in writing, shall be given either by mail or by facsimile, or shall be deemed to have been given when deposited in the mails, as the case may be, postage pre-paid, or in the case of facsimile notices, when sent.

All such writings shall be sent to:

If to Counsel

        Carole Neville, Esq
        Dentons US LLP
        1221 Avenue of the Americas
        New York, NY 10020-1089

If to Segal:

        Stuart I. Wohl
        Senior Vice President
        The Segal Company
        1920 N Street, NW
        Washington, DC 20036
        Telephone: 202-833-6431
        Fax: 202-833-6490

        With a copy to:

        Attn: General Counsel
        The Segal Company
        333 West 34th Street
        New York, NY 10001-2402
        Telephone: (212) 251-5000
        Fax: (212) 251-5275

### 14. NO THIRD PARTY BENEFICIARIES

This Agreement is for the benefit of the parties to the Agreement and does not confer any rights or privileges upon any third parties.

### 15. DISPUTE RESOLUTION

(a) Mediation. Any disputes between the parties hereto are subject to mediation in accordance with the Judicial Arbitration and Mediation Service ("JAMS") as a condition precedent to the commencement of any legal proceeding hereunder.

(b) Waiver of Jury Trial. Each party hereby irrevocably waive, to the fullest extent permitted by law, all rights to a trial by jury in any action, suit, proceeding, or counterclaim (whether in contract, statute, tort (such as negligence), or otherwise) arising out or relating to this Agreement.

### 16. APPLICABLE LAW

This Agreement and all matters relating to his engagement (whether in contract, statute, tort (such as negligence), or otherwise), shall will be governed by, and construed in accordance with, the laws of the State of New York, without regard to the conflicts of law thereof. Exclusive jurisdiction for litigation of any dispute, controversy or claim arising out of or in connection with this Agreement, or breach thereof shall be only in the court.

If this Agreement is in accordance with your understanding, please have a duly authorized representative execute the signature line below.

**AGREED TO AND ACCEPTED ON BEHALF OF DENTONS US LLP**

By: ___*/s/ Carole Neville*___ Date: ___10/3/2013___
Carole Neville, Esq.

**ACCEPTED AND AGREED ON BEHALF OF THE SEGAL COMPANY (EASTERN STATES), INC.**

By: ___*/s/ Stuart I. Wohl*___ Date: ___10/3/2013___
Stuart I. Wohl
Senior Vice President