UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

-------------------------------------------------------x
                                        :

In re                                      :         Chapter 9

CITY OF DETROIT, MICHIGAN,     :         Case No. 13-53846

                   Debtor.           :         Hon. Steven W. Rhodes

-------------------------------------------------------x

**DEBTOR'S RESPONSE TO MOTION *IN LIMINE* TO EXCLUDE
OPINIONS OR CONCLUSIONS AS TO THE CITY OF DETROIT,
MICHIGAN'S UNDERFUNDING OF PENSION LIABILITY**

      The Official Committee of Retirees moves the Court to preclude any testimony by Charles Moore regarding the City's estimation that its pension funds are underfunded by $3.5 billion because he has not been qualified as an expert under Fed. R. Evid. 702.  Specifically, the Committee argues that any testimony regarding a $3.5 billion underfunding should not be admitted because such representations are based upon actuarial expertise and "the City ha[s] not completed an actuarial valuation placing the City's underfunded pension liability at $3.5 billion."  Motion at ¶ 8.

      The Committee misunderstands the scope of Mr. Moore's testimony.  Mr. Moore will not offer any testimony, expert or otherwise, about a $3.5 billion underfunding.  Indeed, he will not offer any financial projections of his own, or

from Milliman (the City's actuarial consultant), regarding the City's unfunded pension liability, but will instead testify about the level of unfunded liability that has been reported by the pension funds themselves. Specifically, his testimony will rely upon his personal knowledge of particular financial records reviewed during his work as a Certified Public Accountant ("CPA"), and will involve straightforward calculations derived from the pensions funds' own actuarial reports (which the Objectors have agreed are admissible). Although Mr. Moore's knowledge as a CPA may have made him more efficient at reviewing the City's pension records, his review and resulting perceptions do not implicate Rule 702.

This Court has broad discretion to rule on evidentiary issues under Rules 701 and 702 of the Federal Rules of Evidence. See JGR, Inc. v. Thomasville Furniture Indus., Inc., 370 F.3d 519, 524 (6th Cir. 2004) (evidentiary rulings reviewed for abuse of discretion); United States v. Bartholomew, 310 F.3d 912, 920 (6th Cir. 2002) (same).

It is well established that lay witnesses may testify based on their own perceptions or "personal observation[s]" of historical facts. Harris v. J.B. Robinson Jewelers, 627 F.3d 235, 241 (6th Cir. 2010). In addition, a non-expert witness may testify "in the form of opinions or inferences" if these "are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. See also Harris, 527 F.3d at 240 (noting that "the modern trend among courts favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination") (citation omitted).

The fact that a witness may have expert credentials does not preclude him from testifying as a non-expert witness. "As the precedent clarifies, the Federal Rules of Evidence distinguish between lay and expert *testimony*, not *witnesses*." United States v. White, 492 F.3d 380, 403 (6th Cir. 2007) (emphasis in original). As a result, a witness with "expert" credentials "may properly offer lay testimony," even if he is "precluded from putting forth expert testimony" on the same subject. Id. In such a case, the witness may offer testimony based on "personal knowledge of facts relevant to the case," based on tasks such as "auditing cost reports" that have been prepared by someone else. Id.

The case of United States v. Madison, 226 Fed. Appx. 535 (6th Cir. 2007) (unpublished), is instructive. In that case, the Government called an FBI "financial analyst" to "facilitate[] [the] review of accounting records," to prove that a criminal defendant "would not have been able to make [a] down payment . . . without funds converted from [a victim]." Id. at 544. That testimony did not rise to the level of expert testimony because it was based on reports that had already

been prepared by someone else, and the witness's analysis was only "a matter of arithmetic." Id. Quoting approvingly from a similar case in the Eleventh Circuit, the Court noted that "while [the witness's] expertise . . . may have made him more efficient at reviewing [the financial] records, his review itself was within the capacity of any reasonable lay person." Id. at 543-44 (quoting United States v. Hamaker, 455 F.3d 1316, 1331-32 (11th Cir. 2006)).

Here, the testimony of Mr. Moore is of a piece. Far from offering his own complex financial analysis of the City's unfunded pension liability, he will testify only to his own personal observations of the numbers contained in recent reports submitted by Gabriel Roeder, the actuary employed by the pension funds themselves. To the extent Mr. Moore applies any of his own analysis to those reports, he will use basic math to show how the pension funds' own underfunding calculations relate to the City's financial forecasts (which the Objectors also agree are admissible). Contrary to the Committee's contention, he will not engage in any "complicated tasks such as calculating life-expectancy, assessing amortization rates, . . . discounting to present value, or calculating earnings potential in a pension portfolio." Motion at ¶ 6. Nor will he offer testimony about actuarial assumptions, estimated investment returns, or anything else cited by the Committee. See id. ¶ 8.

In addition, Mr. Moore will testify about why the City retained his firm and the tasks he was asked to undertake as its restructuring advisor. Once again, his testimony regarding these issues will be based on his perceptions and personal observations and will not implicate Rule 702. To be sure, Mr. Moore's experience and credentials as a CPA may add to his credibility and provide some reason to give weight to his testimony, but the actual substance of his testimony will not implicate Rule 702.

Dated: October 22, 2013

Respectfully submitted,

/s/ Bruce Bennett
Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY OF DETROIT