UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re | No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, | Chapter 9 |
| Debtor. | HON. STEVEN W. RHODES |

# EXHIBIT B

# STATE OF MICHIGAN'S RESPONSE TO MOTION OF INTERNATIONAL UNION, UAW AND FLOWERS PLAINTIFFS TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON GROUNDS OF PRIVILEGE BY THE STATE OF MICHIGAN

EXHIBIT B - Common Interest Agreement

## Common Interest Agreement

This Common Interest Agreement (this "Agreement") is entered into between the following undersigned parties (collectively, the "Parties"): (a) the State of Michigan (the "State"), and (b) the City of Detroit, Michigan (the "City"), by and through its Emergency Manager, Kevyn D. Orr (in his capacity as the Emergency Manager for the City and hereinafter the "Emergency Manager"). This Agreement memorializes and confirms the oral understanding of the Parties with respect to the formation of their Common Interests (as defined below) and extends to any information that the Parties (including their departments and subdivisions, as applicable), their counsel, and their agents already have exchanged or will exchange in connection with their Common Interests, which are discussed below.

WHEREAS, the Governor of the State of Michigan, Richard Snyder (the "Governor") declared the City to be in a financial emergency as early as February 2012 (the "Financial Emergency");

WHEREAS, the City and the State entered into a Financial Stability Agreement, which was certified on April 9, 2012;

WHEREAS, the continuing Financial Emergency resulted in the appointment of the Emergency Manager for the City on March 14, 2013;

WHEREAS, the Parties have been and continue to be engaged in taking steps to evaluate and alleviate the Financial Emergency;

WHEREAS, by letter dated July 16, 2013, the Emergency Manager recommended to the Governor that the City commence a bankruptcy case under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, by letter dated July 18, 2013, the Governor of the State of Michigan authorized the City to commence a chapter 9 case;

WHEREAS, the City commenced a case under chapter 9 of the Bankruptcy Code (Case No. 13-53846) (the "Bankruptcy Case") by filing its petition with the United States Bankruptcy Court for the Eastern District of Michigan on July 18, 2013, after receiving the Governor's written approval;

WHEREAS, the Emergency Manager and officials of the State of Michigan are both defendants in the case of *General Retirement System of the City of Detroit vs. Orr*, Case No. 13-768 filed in Ingham County Circuit Court on July 17, 2013;

WHEREAS, the validity of the appointment and actions of the Emergency Manager and the State of Michigan and its officials have been challenged in a number of other court actions;

WHEREAS, the Parties have reason to expect additional litigation regarding the authority of the Emergency Manager or of the State to have taken and to take actions to address the City's Financial Emergency in the Bankruptcy Case, separate and apart from the State's position as a creditor of the City;

WHEREAS, the City's Financial Emergency continues notwithstanding the filing of the Bankruptcy Case;

WHEREAS, on or around the appointment of the Emergency Manager, the Parties verbally agreed to a common interest agreement and have now concluded that placing the terms of that verbal agreement and newly agreed upon terms in written form is reasonable and appropriate;

WHEREAS, the Parties share certain common interests including, but not limited to, those in connection with the legal and policy issues that arise as a result of and in relation to the City's Financial Emergency, the appointment of the Emergency Manager, and the Bankruptcy

2

Case (collectively, the "Common Interests");

WHEREAS, the Parties and their counsel wish to pursue their Common Interests, and wish to avoid any suggestion of waiver of confidentiality or immunity of communications and documents protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity;

WHEREAS, the Parties and their counsel, in pursuing their Common Interests, may wish to enlist the services of experts, consultants, advisors, or other agents, and intend for such agents to be bound by the restrictions created by this Agreement, as appropriate;

WHEREAS, it is the intention of the Parties that past and future communications among or between them, their counsel, or their agents related to their Common Interests are and shall remain confidential and continue to be protected from disclosure to any third party by applicable privileges and immunities, except as set forth herein;

WHEREAS, to pursue their Common Interests effectively, the Parties and their counsel also have concluded that, from time to time, their Common Interests will be best served by sharing among themselves and their agents documents, factual material, mental impressions, memoranda, data or information analyses, written or oral reports, litigation strategies, and other information, including the confidences of the Parties with counsel (hereinafter "Shared Materials"); and,

WHEREAS, it is the intention of the Parties that no Shared Materials shall be disclosed to any member of the Attorney General's office or other state representative that has taken, is taking, or plans to take a position in the Bankruptcy Case adverse to the position of the City and the Emergency Manager consistent with the Attorney General's internal conflict wall;

3

IT IS THEREFORE AGREED as follows:

1. Any communications made between or among the Parties, their counsel, and/or their agents with respect to the Common Interests shall be considered confidential and subject to the common interest privilege, as well as any and all other applicable privileges.

2. Except as expressly stated in writing to the contrary, any and all Shared Materials obtained by any of the Parties, their counsel, or their agents are being provided solely for use of the Parties, their counsel, and their agents in connection with the Common Interests and shall remain confidential and shall be protected from disclosure to any third party by the common interest privilege, attorney-client privilege, work product doctrine, and other applicable privileges and immunities, except to the extent waived by a Party asserting the privilege. All Shared Materials shall be used solely in connection with the Common Interests.

3. All persons permitted access to the Shared Materials will be advised that the materials are confidential, privileged, and subject to the terms of this Agreement. In addition, Shared Materials shall be marked to the extent practicable with the following (or similar) header or footer:

**PRIVILEGED AND CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
**ATTORNEY-CLIENT COMMUNICATION**
**SUBJECT TO COMMON INTEREST AGREEMENT**
**NOT SUBJECT TO DISCLOSURE UNDER FOIA**

Failure to include this header/footer will not undermine the protections afforded hereunder.

4. If any person or entity subpoenas, requests under the Michigan Freedom of Information Act, or otherwise demands any Shared Materials from any of the Parties, their counsel, or their agents, such recipient of the subpoena, request, or demand shall immediately

4

notify all of the Parties' counsel. In addition, the recipient shall take all steps necessary to assert all applicable rights, privileges, and immunities with respect to the Shared Materials to ensure that the Shared Materials remain confidential unless that confidentiality or privilege has been expressly waived in writing by the Party asserting confidentiality or privilege. If a request for Shared Materials is made under the Michigan Freedom of Information Act, the recipient shall raise any and all applicable defenses and/or exemptions under Mich. Comp. Laws § 15.243 available to it or to any other Party to avoid disclosure unless the confidentiality or privilege for the Shared Materials or individual documents or communications that are part of the Shared Materials has been expressly waived in writing by the Party asserting confidentiality or privilege. Waiver of the confidentiality or privilege for an individual document or communication does not waive the confidentiality or privilege of all Shared Materials. The recipient also shall allow the other affected Parties a reasonable opportunity to intervene and be heard, and otherwise cooperate fully with the other affected parties in any administrative or judicial proceeding relating to the disclosure of Shared Materials.

5. The Parties, their counsel, and their agents are not obliged to communicate any independently obtained or created materials with any other Party, counsel, or agent as a result of this Agreement.

6. Nothing in this Agreement shall be deemed to create an attorney-client relationship between any persons, including the attorneys that have signed this Agreement. The fact that any attorney has signed this Agreement shall not in any way preclude that attorney from representing any interest that may be construed to be adverse to any other Party or Party's agent, and shall not be used as a basis for seeking to disqualify any counsel from representing any other

party in this or any other proceeding or matter; and no attorney who has signed this Agreement shall be disqualified from examining or cross-examining any Party or other person who testifies at any proceeding, whether under a grant of immunity or otherwise, because of such attorney's participation in this Agreement.

7. Either Party may withdraw from this Agreement by promptly sending written notice to the other Party, in which case this Agreement shall no longer be operative. The withdrawing Party shall comply with any request to return or destroy any Shared Materials, and shall continue to be bound by the obligations of confidentiality with respect to the Shared Materials previously furnished pursuant to this Agreement.

8. If a Party inadvertently produces any Shared Materials provided by another Party to an entity that is not a Party to this Agreement, in a manner that is not authorized by the terms of this Agreement, such production shall not be deemed a waiver of the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity of any Party hereto. In such circumstances, the producing Party must immediately notify the Party whose Shared Materials are included in such inadvertently produced Shared Materials and must further notify the receiving entity of the inadvertent production and request the return or confirmed destruction of the privileged materials.

9. If a Party inadvertently produces to any or all of the other Parties a privileged document or privileged material that was not intended to be provided under this Agreement, the production of that document or other material shall not be deemed to constitute the waiver of any applicable privileges. In such circumstances, the producing Party must immediately notify the receiving Party of the inadvertent production, and request the return or confirmed destruction of

6

the privileged materials. Within five days of receiving such notification, the receiving Party shall return or confirm destruction of all such documents or other materials, including any derivative works thereof.

10. This Agreement incorporates all prior oral understandings and it extends to all prior exchanges of Shared Materials. This Agreement is the entire understanding of the Parties with respect to this subject matter and may be modified only by a duly signed writing.

11. This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan.

12. This Agreement may not be amended or modified except by a written agreement signed by each signatory of this Agreement.

13. This Agreement may be executed in any number of counterparts, each counterpart constituting an original, but all together one and the same agreement.

Dated: September 12, 2013

Matthew Schneider
Chief Legal Counsel
Michigan Department of Attorney General
525 W. Ottawa Street
Lansing, MI 48909
Phone: (517) 373-1110
Fax: (517) 373-3042

By: _____
Matthew Schneider
SchneiderM7@michigan.gov

*Counsel for the State of Michigan*

Heather Lennox
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

By: _____
Heather Lennox
hlennox@jonesday.com

*Counsel for the City of Detroit*

7