Open Meetings Act, 1976 PA 267, MCL 15.261 to 15.275. After organization, the Board shall adopt a schedule of regular meetings and adopt a regular meeting date, place, and time.

**Section 7.** The Board shall keep a written or printed record of each meeting, which record and any other document or record prepared, owned, used, in the possession of, or retained by the Authority in the performance of an official function shall be made available to the public in compliance with the Freedom of Information Act, 1976 PA 442, MCL 15.231 to 15.246.

**Section 8.** The Board shall provide for a system of accounts for the Authority to conform to a uniform system required by law and for the auditing of the accounts of the Authority. The Board shall obtain an annual audit of the Authority by an independent certified public accountant and report on the audit and auditing procedures in the manner provided by Sections 6 to 13 of the Uniform Budgeting and Accounting Act, 1968 PA 2, MCL 141.426 to 141.433. The audit also shall be in accordance with generally accepted government auditing standards and shall satisfy federal regulations relating to federal grant compliance audit requirements.

**Section 9.** The Board shall provide a monthly progress report to the Mayor and the City Council and shall make that monthly progress report available on the Authority's internet website.

**Section 10.** The Board shall provide an annual progress report to the chairpersons of the Michigan Senate and House Government Operations Committees and shall make that annual progress report available on the Authority's internet website. The annual progress report shall detail the Authority's operating revenues, expenditures, vendor contracts, and all major decisions on lighting within the City, including all rulings concerning the future locations of streetlights within the City.

### Article VIII
### Lighting System Planning

**Section 1.** On or before March 15 after the creation of the Authority, and on or before March 15 of every second year after the creation of the Authority, the Board shall prepare and submit to the City Council a plan for the next 3 succeeding fiscal years. The plan shall contain all of the following:

a. The number and placement of streetlights in the City.

b. A budget that includes, but is not limited to, the following:

　　i. Anticipated expenses of administration, operation, and maintenance of the Authority and the Lighting System.

　　ii. Any reserve to be established for the administration, operation, and maintenance of the Authority and the Lighting System.

iii. A statement showing the amounts necessary to retire all principal and interest on any Bonds of the Authority maturing during the applicable fiscal years.

iv. A plan to implement Best Value practices.

v. Any other item specified in these Articles of Incorporation.

c. The budget prepared by the Authority shall provide that any money derived from the collection of rates and charges shall be applied and used by the Authority in the following manner and in the following priority:

i. To provide for the payment during each fiscal year of all current expenses of administration, operation, and maintenance as may be necessary to preserve the Lighting System in good repair and working order, including payments required under Bonds incurred in accordance with the authorization contained in the Act.

ii. In the discretion of the Board, there may be set aside during each fiscal year money to provide a reserve fund for replacements or major repairs and improvements not anticipated or considered to be a part of current expenses of administration, operation, or maintenance of the Lighting System.

**Section 2.** The City Council may vote to accept or reject the plan as provided by the Act. The City Council does not have the power to amend the plan in any respect. Unless the City Council votes to reject the plan within 45 days of its submittal, the plan is considered approved.

**Section 3.** If the City Council rejects the plan as provided in Section 2, the Authority shall revise the plan and shall submit the revised plan to the City Council within 30 days of the vote that rejected the plan as provided by the Act.

**Section 4.** The City Council may vote to accept or reject the revised plan within 30 days of its submittal as provided by the Act. Unless the City Council votes to reject the revised plan, the revised plan is considered approved as provided by the Act.

**Section 5.** If the City Council votes to reject the revised plan, the City Council must contemporaneously adopt, by a vote of at least 2/3 of the members of the City Council elected and serving, a resolution that includes a list of items that, if altered, would result in a vote to adopt the plan as provided by the Act. Failure to adopt a resolution in compliance with this Section is considered acceptance of the revised plan by the City Council as provided by the Act.

**Section 6.** If the City Council votes to reject the revised plan and submits the required resolution as provided in Section 5, the Authority shall prepare a final proposed plan not more than 20 days following the vote to reject the revised plan. The final proposed plan shall be sent to the Mayor, and the Mayor shall make the final proposed plan available on the City's internet website as soon as is practicable. The final proposed plan shall also be made available at a public hearing to be held not more than 10 days after the final proposed plan is complete. Public

comment shall be taken at the public hearing concerning the final proposed plan. On or after the tenth day after the public hearing, the Authority shall vote on the final proposed plan.

Section 7. Except as otherwise provided in this Section, if 2/3 of the Board members of the Authority vote to adopt the final proposed plan, it is adopted. If the final proposed plan incorporates a majority of the items identified in the appropriate resolution or resolutions adopted by the City Council, then the final proposed plan is adopted if approved by a majority vote of the Board of Directors of the Authority.

Section 8. If a plan is not adopted on or before July 1 of the year in which a plan is required to be prepared under Section 1, then the adopted plan shall be the final proposed plan, except that all changes identified in the resolution of the City Council submitted under Section 5 are considered amendments to the final proposed plan so that the plan as adopted contains all changes listed in the resolution from the City Council.

Section 9. A plan adopted by the Board may be amended by a vote of 4 of the 5 members on the Board as provide by the Act.

## Article IX
## Fiscal Year

Section 1. Unless the Board, by resolution, establishes a different fiscal year, the fiscal year of the Authority shall commence on July 1 of each year and end on the following June 30.

## Article X
## Employment Relations

Section 1. The City has the responsibility, authority, and right to manage and direct on behalf of the public the services performed or exercised as provided in these Articles of Incorporation to the extent the Articles of Incorporation are consistent with, and not otherwise limited by, the Act.

Section 2. The contents or language of these Articles of Incorporation shall be a permissive subject of collective bargaining between the City and a bargaining representative of its employees. If the City and a bargaining representative of its employees engage in collective bargaining before these Articles of Incorporation are approved and the City and that bargaining representative reach an agreement on issues that would obligate an entity that will function as an employer in the Authority, these Articles of Incorporation shall include those obligations.

Section 3. Nothing in these Articles of Incorporation creates an employment relationship between the existing employees of the City and the Authority.

Section 4. The Authority shall be effective through these Articles of Incorporation at least 180 days before the actual transfer of any City personnel and equipment. Before the Authority's

effective date, the City shall affirm in writing to the Authority those City employees, if any, who will be transferred to the Authority.

**Section 5.** If any City employees who are to be transferred to the Authority are represented by a labor organization, those employees are subject to their previous terms and conditions of employment until those terms and conditions of employment are modified in accordance with 1947 PA 336, MCL 423.201 to 423.217, or for 6 months after the transfer to the Authority, whichever is earlier. Negotiations on a collective bargaining agreement with the Authority shall begin no later than 180 days before the date that such represented City employees, if any, transfer to the Authority.

**Section 6.** Subject to Section 7, a representative of the City employees or group of employees who previously represented or was entitled to represent the City employees or group of employees under 1947 PA 336, MCL 423.201 to 423.217, shall continue to represent the City employees or group of employees if those employees or group of employees are transferred to the Authority.

**Section 7.** This Section does not limit the rights of City employees, under applicable law, to assert that a bargaining representative protected by Section 6 is no longer their representative. The employees of the Authority are eligible as of the day the Authority becomes effective through these Articles of Incorporation to choose their representative under 1947 PA 336, MCL 423.201 to 423.217. This Section does not extend the time limits as provided in Section 4.

**Section 8.** If multiple labor organizations assert the right to represent all or part of the Authority's workforce or where a substantial portion of the transferred employees were not previously represented, in the absence of a voluntary mutual agreement, at the request of any party or on the initiative of the Michigan employment relations commission, the Michigan employment relations commission shall conduct a representation election.

**Section 9.** In the absence of a voluntary mutual agreement, the Authority's workforce shall be merged by using a single seniority list in accordance with the Act. Disputes concerning the single seniority list or its use shall be heard in the manner provided for by the Act.

**Section 10.** Nothing in this Section requires the City or the Authority to assume a collective bargaining agreement between another local government and its employees.

**Section 11.** An employee who left the employ of the City to enter the military service of the United States shall have the same employment rights as to the City or the Authority as he or she would have had under 1951 PA 263, MCL 35.351 to 35.356.

## Article XI
## Authority Borrowing and Bonds

**Section 1.** For the purpose of constructing, acquiring, improving, enlarging, or extending a Lighting System, including the payment of engineering, legal, and financing expenses, and after the establishment of the initial service rates and the execution of contracts for the provision of construction services, purchase of power, and other related activities within the corporate limits of the Authority, the Authority may borrow money and issue Bonds and Notes for the purposes provided by the Act subject to limitations provided by the Act. The Authority may also enter into Ancillary Facilities and Contracts, including trust indentures and contracts with the City, relating to such Bonds and Notes as provided by the Act.

## Article XII
## Public Purpose

**Section 1.** The property of the Authority is public property devoted to an essential public and governmental purpose. Income of the Authority is for a public and governmental purpose.

**Section 2.** Except as otherwise provided in this Section or by law, the property of the Authority and its income, activities, and operations are exempt from all taxes and special assessments of this state or a political Subsection of this state. Property of the Authority and its income, activities, and operations that are leased to private persons are not exempt from any tax or special assessment of this state or a political subdivision of this state. Property of the Authority is exempt from any ad valorem property taxes levied under the General Property Tax Act, 1893 PA 206, MCL 211.1 to 211.155, or other law of this state authorizing the taxation of real or personal property. The Authority is an entity of government for purposes of Section 4a(1)(a) of the General Sales Tax Act, 1933 PA 167, MCL 205.54a, and Section 4(1)(h) of the Use Tax Act, 1937 PA 94, MCL 205.94.

## Article XIII
## Implementation

**Section 1.** As provided in the Utility Users Tax Act, upon the formation of the Authority, notwithstanding any ordinance of the City to the contrary, the City shall pay $12,500,000.00 annually to the Authority from the proceeds of the Utility Users Tax. If the Authority issues Bonds pursuant to a contract with the City and pledges revenues from Utility Users Tax, those revenues shall be deposited and used as provided Utility Users Tax Act. After a contract is entered into with the City relating to Bonds pursuant to the Utility Users Act, the trustee, after setting aside funds as required by the trust indenture, shall pay to the Authority $12,500,000.00, less the amount set aside. The trust indenture shall provide that the remaining revenues be returned to the City. Nothing in these Articles of Incorporation shall obligate the City to remit to the Authority more than is collected from taxes levied under the Utility Users Tax Act.

**Section 2.** As provided by the Utility Users Tax Act, notwithstanding any ordinance of the City, if the City enters into a contract with the Authority, all of the following shall apply:

(a) The City shall send notice to each public utility and resale customer (each as defined in the Utility Users Tax Act) to remit taxes collected under the Utility Users Tax Act to a trustee until notified by that trustee to return the funds to the City.

(b) After receiving a notice described in subdivision (a), each public utility and resale customer so notified shall remit taxes as directed by the notice to the trustee until notified by the trustee to remit taxes to the City.

(c) The trustee shall notify each public utility and resale customer to remit taxes collected under the Utility Users Tax Act to the City within 45 days of the retirement of debt service on the Bonds issued by the Authority.

**Section 3.** Notwithstanding any ordinance of City, any utility, resale customer, other entity, or person that collects a tax or any money represented to be a tax authorized under the Utility Users Tax Act holds the amount so collected in trust for the benefit of the City, or for Bondholders secured by a pledge with the Authority.

## Article XIV
## Best Value Objectives

**Section 1.** The Board shall provide for a contract and procurement process to be followed by the Authority that encourages and considers bids from locally headquartered companies and that considers use of the local workforce.

## Article XV
## Miscellaneous

**Section 1.** The Authority may acquire property for a Lighting System by purchase, construction, lease, gift, or devise, either within or outside the City. The Authority may hold, manage, control, sell, exchange, or lease the property, except that if the property at issue was purchased, constructed, gifted, devised, leased, or otherwise came into the Authority's ownership or control from the City, the Authority may not sell, exchange, or otherwise dispose of the property unless the other party to the transaction is the City so that the property will return to the ownership of the City.

**Section 2.** The City Council may advance or loan to the Authority any money required for administrative expenses or for the purpose of obtaining maps, plans, designs, specifications, and cost estimates of a proposed Lighting System. An advance or loan may be included as a part of any Bond issue by the Authority under the Act and repaid to the City upon the sale of the Bonds.

**Section 3.** The powers granted under the Act and these Articles of Incorporation are in addition to those granted by any charter or statute.

**Section 4.** The Act and these Articles of Incorporation shall be liberally construed in the interest of the public health, safety, and welfare of the persons and property within the City.

**Section 5.** These Articles of Incorporation may be amended by a majority vote of the City Council in the same manner that these Articles of Incorporation were adopted; provided, however, that no such amendment shall impair any obligation related to Bonds.

**Section 6.** One printed copy of these Articles of Incorporation certified as a true copy by the person or persons designated by the certification, with the date and place of the publication, shall be filed with the Michigan Secretary of State and the Wayne County Clerk. The Authority shall become effective upon the filing with the Secretary of State and the County Clerk. The City Clerk shall publish these Articles of Incorporation in a newspaper that is used for publication of other legal notices of the City.

**Section 7.** The validity of the Authority is conclusively presumed unless questioned in an original action filed in the Michigan Court of Appeals within 60 days after the creation of the Authority.

The foregoing Articles of Incorporation were adopted by the City Council of the City of Detroit, Wayne County, Michigan, at a meeting held on the 6th day of February, 2013.

_____  Dated: 3/31/13
Dave Bing, Mayor
City of Detroit

## CERTIFICATION

Janice M. Winfrey, City Clerk of the City of Detroit, certifies that the foregoing document is a true copy of the Articles of Incorporation adopted by the City Council of the City of Detroit at a meeting held on the 5th day of February 2013, which Articles of Incorporation were duly published as required by law on the 14th day of March 2013, in Detroit Legal News.

_____ Dated: 3/22/13     (Seal)
Janice M. Winfrey, City Clerk
City of Detroit


Filed with the Michigan Secretary of State on: _____

Acknowledged by: _____

Title: _____     (Seal)


Filed with the Wayne County Clerk on: 29th March 2013

Acknowledged by: _____     (Seal)

Title: Department Administrator

20.766.298 3\088888-03795



STATE OF MICHIGAN
RUTH JOHNSON, SECRETARY OF STATE
DEPARTMENT OF STATE
LANSING

April 23, 2013

City of Detroit
Adam Hollier
Coleman A. Young Municipal Center
2 Woodward Ave., Ste. 1126
Detroit, MI 48226

RE: Detroit Public Lighting Authority

Dear Mr. Hollier:

This will acknowledge receipt of a copy of the Articles of Incorporation for the Detroit Public Lighting Authority, under the provisions of Act 392, Public Acts of 2012, filed on April 5, 2013, with the Secretary of State, Office of the Great Seal.

Sincerely,

Office of the Great Seal
1-888-767-6424

OFFICE OF THE GREAT SEAL
RICHARD H. AUSTIN BUILDING • 1ST FLOOR • 430 W. ALLEGAN • LANSING, MICHIGAN 48918
1-888-SOS-MICH (1-888-767-6424)
www.Michigan.gov/sos

# APPENDIX B

# TRUST AGREEMENT

**THIS TRUST AGREEMENT** (this "*Agreement*") is made and entered into as of July 31, 2013, by and among: the Public Lighting Authority, a Michigan municipal corporation ("*Authority*"); the City of Detroit, a Michigan municipal corporation ("*City*"); and Wilmington Trust, National Association, a national banking association lawfully authorized to conduct business in the State of Michigan ("*Trustee* "). Collectively, the signatories are referred to as the Parties, and individually, as a Party. Capitalized terms used in this Agreement and not otherwise defined shall have the meanings given to them in their respective contexts under the laws of the state of Michigan or under such other authority as otherwise indicated herein.

## RECITALS

**WHEREAS**, the Michigan Municipal Lighting Authority Act, 2012 PA 392, MCL §§123.1261 *et seq.* ("*Act 392*"), authorizes municipalities to create public lighting authorities for the purposes of providing an equitable and reasonable method and means of financing, operating, and maintaining a lighting system in sufficient quantities within a city; and

**WHEREAS**, City has passed a resolution and approved the Articles of Incorporation forming the Public Lighting Authority of the City of Detroit (the Authority), pursuant to which Authority shall construct, improve, enlarge, reduce or extend City's street lighting system; and

**WHEREAS**, the Emergency Manager of the City, appointed under the local financial stability and choice act, 2012 PA 436, MCL §§141. *et seq.*, has entered Order No. 6 approving the Initial Funding Agreement for the Public Lighting Authority (the "*Order No. 6*") and Order No. 14 approving the Trust Agreement by and among the City of Detroit, the Public Lighting Authority, and the Trustee (the "*Order No. 14*" together with Order No. 6, the "*Orders*"); and

**WHEREAS**, the Emergency Manager desires to direct all public utilities and resale customers that collect utility users tax revenues pursuant to the City Utility Users Tax Act, 1990 PA 100, MCL 141.1151 to MCL 141.1171 ("*Act 100*"), to remit such revenues ("*Utility Revenues*") directly to a trustee to be used by Authority or for the benefit of bondholders of any bonds issued by Authority; and

**WHEREAS**, the Authority and the City seek to create a trust to receive Utility Revenues and disburse such funds hereinafter held in trust pursuant to the Orders, Act 100 and Act 392.

**NOW, THEREFORE**, in consideration of the respective covenants, agreements and representations and warranties set forth herein, the Parties to this Agreement, intending to be legally bound, agree as follows:

1. <u>Establishment of Trust and Trust Fund</u>.

   (a) <u>Establishment of Trust and Deposit of Trust Fund</u>. The City and the Authority hereby direct the Trustee to establish a trust account designated and maintained by the Trustee for the deposit of all Utility Revenues collected and so designated under this Agreement by the Authority ( the "*Trust Fund*"). Pursuant to Act 392, Act 100, and direction of the Emergency Manager, all public utilities and resale customers that collect Utility Revenues are required to

deliver all such Utility Revenues to Trustee for deposit in the Trust Fund by the Trustee, not more frequently than monthly. All such deposits of Utility Revenues shall become part of the Trust Fund. The direction of funds by the Emergency Manager is irrevocable during the term of this Agreement. The Trust Fund shall be held and disbursed pursuant to this Agreement or a successor trust agreement as contemplated under Sections 6(i), 7, or 8 of this Agreement. Exhibit C contains delivery instructions to the Trustee.

(b) Appointment of Trustee. Authority and City hereby appoint and designate Trustee as trustee to receive, hold, invest and disburse the Trust Fund in accordance with the terms of this Agreement. Trustee hereby agrees to act as trustee and to hold, safeguard and disburse funds from the Trust Fund pursuant to the terms and conditions of this Agreement. The Trustee shall invest and reinvest funds held in the Trust Fund as directed in writing by an authorized agent of both the City and the Authority. Such funds will be held uninvested by the Trustee until such joint written direction is received. The Trustee shall be entitled to rely on the investment directions of the Authority as to the suitability and legality of such investment. The Trustee shall not be liable for losses on investments made in compliance with the provisions of this Agreement. The Trustee may make any and all such investments through its own investment department or that of its affiliates or subsidiaries, and may charge its ordinary and customary fees for such trades, including investment maintenance fees. The Trustee shall not be responsible for providing broker confirmations.

(c) Trust Fund. No Party shall permit or cause to be created against the Trust Fund any lien, attachment, trustee process or any other judicial process of any creditor. Trustee shall hold and safeguard the Trust Fund, at the cost and expense of the City and Authority, until it is released pursuant to Section 2 of this Agreement. Notwithstanding the foregoing, if the Trust Fund shall be attached, garnished, or levied upon pursuant to judicial process of competent jurisdiction, or the delivery of funds held in the Trust Fund shall be stayed or enjoined by any court order of competent jurisdiction, or any court order shall be made or entered into affecting the Trust Fund, or any part thereof, Trustee is hereby expressly authorized to obey and comply with such judicial process or court order, and shall provide Authority and City as much advance written notice as is reasonably practicable thereof. In the event Trustee obeys or complies with any judicial process or court order, it shall not be liable to any Party, public utilities, resale customers or to any other person, firm or corporation by reason of such compliance, notwithstanding the subsequent reversal, modification, annulment, or setting aside of such court order.

(d) Trustee shall furnish Authority and City with a monthly written accounting of the complete account activity of, and transactions executed with respect to, the Trust Fund, within fifteen (15) days after the end of such month.

2. Administration and Disbursements of Trust Fund. The available funds in the Trust Fund shall be disbursed by Trustee beginning August 17, 2013, on the 17th of each month thereafter, or the next Business Day (defined herein as any day other than a Saturday, Sunday or other day on which commercial banks are authorized to close under the laws of, or are in fact closed in, the state of Michigan), if the 17th is not a business day, as follows:

    a. For disbursements made from July 1, 2013 through December 31, 2013: