i. The first One Million, Seven Hundred and Eighty-Three Thousand, Three Hundred and Thirty-Three Dollars and Zero/100 ($1,783,333.00) in each month, as follows:

1. First, to the parties and in the amount directed by the Authority to satisfy any obligations under any bonded indebtedness of Authority, including the following costs: principal and interest on the bonds, including any payments due under an ancillary credit facility entered into by Authority; the administrative costs associated with the bonds; and any other bonds issued by the Authority that may be secured by the Utility Revenues;

   The Authority shall notify the Trustee by the 12th of each month of any bonded indebtedness secured by the Trust Fund by the filing of a certificate with the Trustee detailing all obligations of the Authority and the name, address and wire information of each person to which payment should be made. Trustee is entitled to rely on such certificate. If the Trustee has not received such a certificate from the Authority by 5 pm (eastern) on such date, it can assume the Authority has no such bonded obligations and may make disbursements to the Authority pursuant to <u>Section 2.a.i.2.</u> below.

2. Second, any amount remaining to the Authority, to be used as directed by an authorized officer of the Authority in compliance with Act 392 and this Agreement. The Trustee has no responsibility for determining such compliance with Act 329 or this Agreement.

ii. Any monthly amounts that exceed the amounts in <u>Section 2.a.i.</u>, to City.

b. For disbursements made from January 1, 2014 through the termination of this Agreement, on the 17th of each month, or the next Business Day if the 17th is not a Business Day:

i. The first One Million, Forty-One Thousand, Six Hundred and Sixty-Six Dollars and Zero/100 ($1,041,666.00) in each month, as follows,

1. First, to the parties and in the amount directed by the Authority to satisfy any obligations under any bonded indebtedness of Authority, including the following costs: principal and interest on the bonds, including any payments due under an ancillary credit facility entered into by Authority; the administrative costs associated with the bonds; and any other bonds issued by the Authority that may be secured by the Utility Revenues.

The Authority shall notify the Trustee by the 12th of each month of any bonded indebtedness secured by the Trust Fund by the filing of a certificate with the Trustee detailing all obligations of the Authority and the name, address and wire information of each person to which payment should be made. Trustee is entitled to rely on such certificate. If the Trustee has not received such a certificate from the Authority by 5pm (eastern) on such date, it can assume the Authority has no such bonded obligations and may make disbursements to the Authority pursuant to Section 2.b.i.2. below.

2. Second, any amount remaining to the Authority, to be used as directed by an authorized officer of the Authority in compliance with Act 392 and this Agreement. The Trustee has no responsibility for determining such compliance with Act 329 or this Agreement.

c. Any monthly amounts that exceed the amounts in Section 2.b.i., to City.

The Trust Fund shall be disbursed pursuant to this Section 2 on no less than a monthly basis, or as otherwise directed under a successor trust agreement.

3. Covenant of Trustee. Trustee hereby agrees and covenants with the Parties hereto that it will perform all of its obligations under this Agreement and will not deliver custody or possession of any of the Trust Fund to anyone except pursuant to the express terms of this Agreement.

4. Fees and Expenses of Trustee. The Authority shall pay to the Trustee from time to time such compensation as shall be agreed upon in writing between the Authority and the Trustee for its acceptance of this Agreement and services hereunder. The Trustee's compensation shall not be limited by any law on compensation of a trustee of an express trust. The Authority shall reimburse the Trustee promptly upon request for all reasonable disbursements, advances and expenses incurred or made by it in addition to the compensation for its services, including extraordinary time and services. Such expenses shall include the reasonable compensation, disbursements and expenses of the Trustee's agents and legal counsel. The Authority agrees that it shall pay all such fees owed the Trustee within 30 days of receipt of an invoice.

5. Limitation of Trustee's Liability. The responsibilities of the Trustee are administrative in nature and are strictly limited to those specifically set forth herein. No implied duties, covenants or obligations shall be read into this Agreement against the Trustees including, without limitation, the obligation to make any discretionary decisions. No fiduciary relationship exists between or among the Trustee, the City or the Authority. Trustee undertakes to perform such duties as are specifically set forth in this Agreement only and shall have no liabilities or obligations with respect to the Trust Fund or its administration of this Agreement except for Trustee's negligence or willful misconduct. Trustee shall have no implied duties or obligations and shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein or in any notices given to it in accordance with the notice provisions of this Agreement. Trustee shall incur no liability with respect to any action taken by it or for any

inaction on its part in reliance upon any notice, direction, instruction, consent, statement or other document believed by it in good faith to be genuine and duly authorized, nor for any other action or inaction except for its own negligence or willful misconduct. Trustee may consult legal counsel selected by it in the event of any dispute or question of the construction of this Agreement or seek the assistance of a court of competent jurisdiction, and shall incur no liability and shall be fully protected in acting in accordance with the opinion or advice of such counsel or the direction of such court. The Trustee shall not be liable for any error of judgment made in good faith by a responsible partner, director, officer, affiliate, employee, employer, professional, agent or representative of the Trustee unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts. In no event shall Trustee be liable for incidental, indirect, special, punitive or consequential damages. The Trustee shall have the right to perform any of its duties hereunder through agents, attorneys, custodians or nominees, and shall not be responsible for the misconduct or negligence of such agents, attorneys, custodians and nominees appointed by it with due care. None of the provisions contained in this Agreement shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers vested in it by this Agreement, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it. The permissive rights of the Trustee to do things enumerated in this Agreement shall not be construed as duties. The Trustee shall not be accountable for the use or application of any money paid over by the Trustee in accordance with the provisions of this Agreement. The Trustee shall have no duty to collect any Utility Revenues which are required to be deposited with it hereunder.

The Authority shall defend, at its cost and expense, any claim (by whomever asserted) against the Trustee arising out of or in connection with the acceptance, administration, exercise or performance of its duties under this Agreement. The Authority shall satisfy any liability, judgment and cost, of or relating to such claim, except to the extent that a court of competent jurisdiction has determined that such claim, liability or expense is attributable to the Trustee's negligence or willful misconduct. The Trustee may have separate legal counsel and the Authority shall pay the reasonable fees and expenses of such separate legal counsel.

The Trustee shall notify the Authority promptly of any claim against for which it may seek defense. Failure by the Trustee to so notify the Authority shall not relieve the Authority from its obligations hereunder. The Trustee shall cooperate in the defense. The forgoing shall survive the termination of this Agreement pursuant to Section 6 hereof.

The Trustee agrees to accept and act upon written instructions or directions pursuant to this Agreement sent by unsecured e-mail (in .pdf file format), facsimile transmission or other similar unsecured electronic methods, provided, however, that the instructions or directions shall be signed by a person as may be designated and authorized to sign for the Authority or the City, respectively, or in the name of the Authority or the City, respectively, by an authorized representative of the Authority or City, respectively, and the Authority or the City, respectively shall provide to the Trustee an incumbency certificate listing such designated persons, which incumbency certificate shall be amended whenever a person is to be added or deleted from the listing. If the Authority or City, respectively, elects to give the Trustee e-mail or facsimile instructions (or instructions by a similar electronic method) and the Trustee in its discretion elects to act upon such instructions, the Trustee's understanding of such instructions shall be

deemed controlling. The Trustee shall not be liable for any losses, costs or expenses arising directly or indirectly from the Trustee's reliance upon and compliance with such instructions notwithstanding such instructions conflict or are inconsistent with a subsequent written instruction. The Authority and City agree: (i) to assume all risks arising out of the useof such electronic methods to submit instructions and directions to the Trustee, including without limitation the risk of the Trustee acting on unauthorized instructions, and the risk of interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the Trustee and that there may be more secure methods of transmitting instructions than the method(s) selected by the Authority or the City; and (iii) that the security procedures (if any) to be followed in connection with their transmission of instructions provide to them a commercially reasonable degree of protection in light of their particular needs and circumstances.

6. <u>Termination</u>. This Agreement will automatically terminate upon the earlier of the following: (i) the execution of a trust agreement between Authority, City, the Michigan Finance Authority, and a trustee in connection with the issuance of bonds by Authority as authorized under Act 392 with a notice of such execution delivered to the Trustee; or (ii) receipt by the Trustee and the City of a notice delivered by the Authority of the final receipt of Utility Revenues under <u>Section 1.a.</u> and the final disbursement of the Trust Fund pursuant to <u>Section 2</u> of this Agreement. Following such termination, this Agreement shall be of no further force or effect, and no further fees or expenses shall be invoiced by Trustee pursuant hereto except for unbilled fees or expenses incurred by Trustee prior to such time.

7. <u>Successor Trustee</u>.

(a) In the event Trustee becomes unavailable or unwilling to continue as trustee under this Agreement, Trustee may resign and be discharged from its duties and obligations hereunder by giving its written resignation to the Parties to this Agreement. In addition, Trustee may be removed at any time, with or without cause, upon 30 days' prior written notice delivered to Trustee and executed by both Authority and City. Such resignation or removal shall take effect not less than thirty (30) days after notice is given to all Parties hereto. In such event, Authority may appoint, with the consent of City, which consent shall not be unreasonably withheld, a successor trustee, which shall be a commercial bank, trust company or other financial institution qualified to act as a trustee under Michigan law. If Authority fails to appoint a successor trustee within fifteen (15) days after receiving Trustee's written resignation, Trustee shall have the right to apply to a court of competent jurisdiction for the appointment of a successor trustee. The successor trustee shall execute and deliver to Trustee an instrument accepting such appointment, and the successor trustee shall, without further acts, be vested with all the estates, property rights, powers and duties of the predecessor Trustee as if originally named as Trustee herein. Trustee shall act in accordance with written instructions from Authority and City as to the transfer of the Trust Fund to a successor trustee.

(b) Any corporation, association or other entity into which the Trustee may be converted or merged, or with which it may be consolidated, or to which it may sell or otherwise transfer all or substantially all of its corporate trust assets and businesses or any corporation, association or other entity resulting from any such conversion, sale, merger consolidation or other transfer to which it is a party, <u>ipso facto</u>, shall be and become successor Trustee hereunder, as applicable, vested with all other matters as was its predecessor, without the execution or filing of any

instrument or any further act on the part of the Parties hereto, notwithstanding anything herein to the contrary.

8. <u>Miscellaneous</u>.

(a) <u>Amendment; Waiver</u>. Any agreement on the part of a Party to any extension or waiver of any provision hereof shall be valid only if set forth in an instrument in writing signed on behalf of such Party with a copy sent to the other Parties. A waiver by a Party of the performance of any covenant, agreement, obligation, condition, representation or warranty shall not be construed as a waiver of any other covenant, agreement, obligation, condition, representation or warranty. A waiver by any Party of the performance of any act shall not constitute a waiver of the performance of any other act or an identical act required to be performed at a later time. This Agreement may not be amended, modified or supplemented except by written agreement of all of the Parties.

(b) <u>Notices</u>. All notices, consents, waivers and other communications required or permitted by this Agreement shall be in writing and shall be deemed given to a Party when delivered to the appropriate address by hand or by nationally recognized overnight courier service (costs prepaid to the following addresses and marked to the attention of the person (by name or title) designated below (or to such other address or person as a Party may designate by notice to the other Parties):

**If to Authority:**

        Public Lighting Authority
        65 Cadillac Square
        Suite 2900
        Detroit, MI 48226

**with a mandatory copy to** (which copy shall not constitute notice):

        The Allen Law Group, P.C.
        2500 Fisher Building
        3011 West Grand Boulevard
        Detroit, MI 48202

**If to City:**

        City of Detroit
        Office of the Mayor
        Coleman A. Young Municipal Center
        2 Woodward Ave.
        11th Floor
        Detroit, MI 48226

**with a mandatory copy to** (which copy shall not constitute notice):

        City of Detroit
        Office of the Emergency Manager

Coleman A. Young Municipal Center
2 Woodward Ave.
11th Floor
Detroit, MI 48226

**with a mandatory copy to** (which copy shall not constitute notice):

City of Detroit
Corporation Counsel
660 Woodward Ave, Ste 1650
Detroit, MI 48226

**If to Trustee**:

Wilmington Trust, N.A.
Corporate Trust Services
25 South Charles Street, 11th Floor
Baltimore, MD 21201

**with a mandatory copy to** (which copy shall not constitute notice):

Drinker Biddle & Reath
Kristin Going
1500 K. St., N.W., Suite 1100
Washington, DC 20005

 (c) <u>Interpretation</u>. Unless the context otherwise requires, references in this Agreement to Sections and Exhibits refer to the Sections and Exhibits to this Agreement. The words "include," "includes" and "including" when used herein shall be deemed in each case to be followed by the words "without limitation." The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. All references to dollar amounts contained in this Agreement shall mean United States dollars. References in this Agreement to any gender include references to all genders, and references to the singular include references to the plural and vice versa. Unless the context otherwise requires, the words "hereof," "hereby" and "herein" and words of similar meaning when used in this Agreement refer to this Agreement in its entirety and not to any particular Article, Section or provision of this Agreement.

 (d) <u>Entire Agreement</u>. This Agreement and the other agreements referred to herein constitute the entire agreement of the Parties to this Agreement and supersede all prior agreements and understandings, both written and oral, among or between any of the Parties with respect to the subject matter hereof.

 (e) <u>Parties in Interest</u>. Except as expressly provided herein, none of the provisions of this Agreement is intended to provide any rights or remedies to any Person other than the Parties hereto and their respective successors and assigns (if any).

(f) <u>Severability</u>. If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

(g) <u>Governing Law; Jurisdiction and Venue</u>.

  (i) This Agreement shall be construed in accordance with, and governed in all respects by, the internal laws of the State of Michigan (without giving effect to principles of conflicts of laws).

  (ii) Each Party to this Agreement:

  (1) irrevocably submits to the exclusive jurisdiction of the Circuit Court for the County of Wayne in the State of Michigan and any state appellate court therefrom within the State of Michigan for the purpose of any legal proceeding directly or indirectly based upon, relating to arising out of this Agreement or any transaction contemplated hereby or the negotiation, execution or performance hereof or thereof and irrevocably agrees that all claims in respect of such action or proceeding shall be brought in, and may be heard and determined, exclusively in such state or federal courts;

  (2) irrevocably consents to the service of the summons and complaint and any other process in any other action or proceeding relating to the transactions contemplated by this Agreement, on behalf of itself or its property, by personal delivery of copies of such process to such Party at the addresses set forth in <u>Section 8(b)</u>, provided that nothing in this <u>Section 8(g)</u> shall affect the right of any Party to serve legal process in any other manner permitted by law;

  (3) acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues, and therefore each such Party hereby irrevocably and unconditionally waives any right such Party may have to a trial by jury in any legal proceeding directly or indirectly based upon, relating to or arising out of this Agreement or any transaction contemplated hereby or the negotiation, execution or performance hereof or thereof;

  (4) certifies and acknowledges that (a) no representative, agent or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of any legal proceeding, seek to enforce the foregoing waiver in <u>Section 8(g)(3)</u>, (b) each Party understands and has considered the implication of such waiver, (c) each Party makes such waiver voluntarily, and (d) each Party has been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this <u>Section 8(g)</u>.

(h) <u>Rules of Construction</u>. The Parties hereto agree that they have been represented by counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any law, regulation, holding or rule of construction providing that ambiguities in an agreement or other document will be construed against the party drafting such agreement or document.

(i) <u>Assignment and Successors</u>. No Party may assign any of its rights or delegate any of its obligations under this Agreement without the prior written consent of the other Parties, except with respect to the Trustee as set otherwise forth under <u>Section 7(b)</u> of this Agreement. This Agreement will apply to, be binding in all respects upon and inure to the benefit of the successors and permitted assigns of the Parties.

(j) <u>Further Assurances</u>. Each Party hereto shall execute and cause to be delivered to each other Party hereto such instruments and other documents, and shall take such other actions, as such other Party may reasonably request for the purpose of carrying out or evidencing any of the transactions contemplated by this Agreement.

(k) <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument. The exchange of copies of this Agreement and of signature pages by facsimile or PDF transmission shall constitute effective execution and delivery of this Agreement as to the parties hereto and may be used in lieu of the original Agreement for all purposes. Signatures of the Parties hereto transmitted by facsimile or PDF shall be deemed to be their original signatures for all purposes.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the Parties have duly caused this Agreement to be executed as of the day and year first above written.

**PUBLIC LIGHTING AUTHORITY**

By: Odis Jones *(signed)*
Its: Executive Director

Date: 7/31/13

Witness for Public Lighting Authority:

*(signed)*

**CITY OF DETROIT**

_____
By: Kevyn D. Orr
Its: Emergency Manager

Date: _____

Witness for City:

_____

**Wilmington Trust, N.A., AS TRUSTEE**

_____
By:
Its:

Date: _____

Witness for Trustee:

_____

IN WITNESS WHEREOF, the Parties have duly caused this Agreement to be executed as of the day and year first above written.

PUBLIC LIGHTING AUTHORITY

By: Odis Jones
Its: Executive Director

Date: _____

Witness for Public Lighting Authority:

_____

CITY OF DETROIT

By: Kevyn D. Orr
Its: Emergency Manager

Date: August 1, 2013

Witness for City:

_____

**Wilmington Trust, N.A., AS TRUSTEE**

By: _____
Its:

Date: _____

Witness for Trustee:

_____

IN WITNESS WHEREOF, the Parties have duly caused this Agreement to be executed as of the day and year first above written.

**PUBLIC LIGHTING AUTHORITY**

By: Odis Jones
Its: Executive Director

Date: _____

Witness for Public Lighting Authority:

_____

**CITY OF DETROIT**

By: Kevyn D. Orr
Its: Emergency Manager

Date: _____

Witness for City:

_____

**Wilmington Trust, N.A., AS TRUSTEE**

By: JAY SMITH
Its: Vice PResident

Date: 7-31-13

Witness for Trustee:

_____

# Public Lighting Authority Trust

## Exhibit A
## Fee Schedule

Administration Fee  $2,500.00 per annum, payable at closing

- Assumes proceeds are placed in Wilmington Trust's non-collateralized escrow depository account.

- Assumes one account.

*The fees as quoted and the acceptance of our duties as Escrow Agent are subject to the satisfactory review and acceptance of all related financing documents by the Escrow Agent, our counsel and the New Business Acceptance Committee. In the event the escrow changes prior to or after closing, Wilmington Bank reserves the right to review and renegotiate the fees accordingly.*

# Public Lighting Authority Trust

## Exhibit B
## Certificate as to Authorized Signatures

The specimen signatures shown below are the specimen signatures of the individuals who have been designated as authorized representatives of the Public Lighting Authority and are authorized to initiate and approve transactions of all types for the escrow account or accounts established under the Escrow Agreement to which this Exhibit B is attached, on behalf of the Public Lighting Authority.

| Name / Title / Phone Number | Specimen Signature |
|---|---|
| ODIS JONES — Name | *(signature)* |
| EXECUTIVE DIRECTOR — Title | |
| (313) 324-8290 — Phone Number | |
| — Name | — Signature |
| — Title | |
| — Phone Number | |
| — Name | — Signature |
| — Title | |
| — Phone Number | |

# Public Lighting Authority Trust

## Exhibit C
## Payment Instructions

**By Wire:**

Bank: M & T Bank
ABA: 022000046
Account: Corporate Trust Clearing
Account No.: 3088001950200
ffc  Public Lighting Authority Trust
Attn: Jay Smith

**By Check:**

Payable to: Wilmington Trust, National Association

**Mailed to:**

Wilmington Trust, National Association
Global Capital Markets
25 S. Charles Street, 11th Floor
Baltimore, MD 21201
Attn: Jay Smith

CHI-1898778v2

# Appendix C



Appendix D



East PLA Pilot Area

Appendix D



<600>
<700>
<800>
<900>
<1000>

<600>
<700>
<800>
<900>
<1000>

<600>
<700>
<800>
<900>
<1000>

<600>
<700>
<800>
<900>
<1000>

<600>




Public Lighting Authority
Short Term and Long Term Summary Schedule