# EXHIBIT 6.3

**(Trust Agreement)**

## AMENDED AND RESTATED TRUST AGREEMENT

THIS AMENDED AND RESTATED TRUST AGREEMENT is made and entered into as of _____, 2013, by and among: the Public Lighting Authority, a Michigan municipal corporation *("Authority");* the City of Detroit, a Michigan municipal corporation *("City");* the Michigan Finance Authority (the *"MFA"*) and Wilmington Trust, National Association, a national banking association lawfully authorized to conduct business in the State of Michigan *("Trustee ").* Collectively, the signatories are referred to as the Parties, and individually, as a Party. Capitalized terms used in this Amended and Restated Trust Agreement and not otherwise defined shall have the meanings given to them in their respective contexts under the laws of the State of Michigan (the *"State"*) or under such other authority as otherwise indicated herein.

RECITALS

WHEREAS, the Michigan Municipal Lighting Authority Act, 2012 PA 392, MCL §§123.1261 *et seq. ("Act 392"),* authorizes municipalities to create public lighting authorities for the purposes of providing an equitable and reasonable method and means of financing, operating, and maintaining a municipally owned lighting system to supply lighting in sufficient quantities to a city; and

WHEREAS, the City has duly incorporated the Authority pursuant to Act 392 for the purpose of constructing, improving, enlarging, reducing, extending, financing, operating or maintaining the City's street lighting system (the *"System"*); and

WHEREAS, the Emergency Manager of the City (the *"Emergency Manager"*), appointed under the Local Financial Stability and Choice Act, 2012 PA 436, MCL §§141.1541 *et seq.,* has entered Order No. 6 approving the initial funding for the Public Lighting Authority (*"Order No. 6");* and

WHEREAS, the Authority and the City have entered into an Interlocal Agreement for the Construction and Financing of a Public Lighting System, pursuant to Act 392 (the *"Contract"*); and

WHEREAS, the Authority is authorized to issue bonds of the Authority, pursuant to appropriate action of its Board of Directors (the *"Authority Board"*), and to enter into Ancillary Facility, also as referred to herein "Ancillary Facilities" (as defined in Act 392) with respect to the bonds, to provide the funds therefor, payable from proceeds described in the resolution authorizing the bonds, which proceeds may include revenues pledged directly to support the bonds of the Authority pursuant to the Contract, specifically, the revenues to be received by the City pursuant to the City Utility Users Tax Act, 1990 PA 100, MCL §§141.1151 *et seq. ("Act 100"),* to finance certain improvements to the System, together with all related appurtenances and attachments (the *"Improvements"*); and

WHEREAS, on _____, 2013, the Authority Board adopted a resolution (the *"Bond Resolution"*) authorizing the issuance of bonds in the principal amount of not to

1

exceed $_____ (the *"Authority Bonds"*), authorizing the Authority to enter into an Ancillary Facility (as defined in Act 392) with respect to the Authority Bonds (together with the Authority Bonds, the *"Bonds"*), to pay the costs of the Improvements, authorizing certain officers to negotiate the terms and enter into agreements as may be necessary to accomplish the sale and delivery of the Bonds, and to take such other actions and make such other determinations as may be necessary or desirable to accomplish the sale and delivery of the Bonds; and

WHEREAS, before the pledge of revenues for payment of the Bonds and the Contract become effective, the Authority shall, among other things, enter into an agreement with the City, the MFA and the Trustee to provide for the collection of utility tax revenues pursuant to Act 100 (the *"Utility Revenues"*), and to direct payment of those Utility Revenues to the Trustee to be held in trust for the benefit of bondholders of the Bonds and any additional bonds, Ancillary Facilities or obligations issued by the Authority (the "*Additional Obligations*", together with the Bonds, the *"Obligations"*, and each singularly, an *"Obligation"*), or to be used by the Authority for lawful purposes of the Authority, provided that not more than $12,500,000 of the Utility Revenues may be used to satisfy the Obligations or to further other lawful purposes under Act 392 as directed by the Authority; and

WHEREAS, the Emergency Manager has directed all public utilities and resale customers that collect Utility Revenues pursuant to Act 100 (the *"Customers"*) to remit such revenues directly to the Trustee for deposit in the Trust Fund; and

WHEREAS, the Authority, the City and the Trustee have previously entered into a Trust Agreement, effective as of August 1, 2013 (the *"Trust Agreement"*), and approved by Order No. 14 of the Emergency Manager (*"Order No. 14"*, and together with Order No. 6, the *"Orders"*), providing for the creation of a trust to receive and disburse Utility Revenues pursuant to the Orders, Act 100 and Act 392; and

WHEREAS the Authority, the City and the Trustee desire to amend and restate the Trust Agreement (as amended and restated herein, this *"Agreement"*), and to add the MFA as a Party; and

WHEREAS, the Emergency Manager has issued Order No. __, approving the execution of this Agreement.

NOW, THEREFORE, IN CONSIDERATION OF THE RESPECTIVE COVENANTS, AGREEMENTS AND REPRESENTATIONS AND WARRANTIES SET FORTH HEREIN, THE PARTIES TO THIS AGREEMENT, INTENDING TO BE LEGALLY BOUND, AGREE AS FOLLOWS:

## ARTICLE I

### ESTABLISHMENT OF FUNDS AND ACCOUNTS

Section 101. <u>Establishment of Trust Fund and Appointment of Trustee</u>. The City and the Authority hereby direct the Trustee to establish a trust account designated and

maintained by the Trustee for the deposit of all Utility Revenues collected and so designated under this Agreement by the Authority (the *"Trust Fund"*). Pursuant to Act 392, Act 100, and the Orders of the Emergency Manager on behalf of the City, the Customers are directed to deliver all such Utility Revenues to the Trustee for deposit in the Trust Fund held by the Trustee, not more frequently than monthly. All such deposits of Utility Revenues shall become part of the Trust Fund. The direction of funds by the Emergency Manager on behalf of the City as described in this Section 101 is irrevocable for so long as any Obligations are Outstanding pursuant to their terms. The Trust Fund shall be held and disbursed pursuant to this Agreement or a successor trust agreement as contemplated under Section 303 of this Agreement. Exhibit D attached hereto and made a part hereof contains delivery instructions to the Trustee.

The City and the Authority hereby appoint the Trustee as depository and trustee for the Trust Fund pursuant to the terms of this Agreement. Trustee hereby agrees to act as trustee and to receive, hold, invest and disburse funds from the Trust Fund pursuant to the terms and conditions of this Agreement. The Trustee shall deposit Utility Revenues in the Trust Fund and allocate and set aside Utility Revenues into the Debt Retirement Escrow Fund in accordance with Section 103 and in the amounts as required for disbursements under Section 105 herein below.

Section 102.     <u>Establishment of Funds and Accounts Within Trust Fund</u>. (a)     The City and the Authority hereby establish and create within the Trust Fund the following special, separate and segregated accounts which shall be held by the Trustee:

     A.     Debt Retirement Escrow Fund.
     B.     PLA Fund.
     C.     City Disbursement Fund.

The Executive Director of the Authority is hereby authorized to direct the Trustee to establish such accounts, subaccounts or funds within the Debt Retirement Escrow Fund as shall be required for each series of Obligations, if any, to accommodate the requirements of such Obligations to the extent permitted by Act 100, Act 392 and other applicable law.

(b)     The Utility Revenues held by the Trustee shall be subject to a lien in favor of the holders of Outstanding Obligations, provided that the Authority and the City have an interest in the Utility Revenues, but only to the extent of the transfers made pursuant to Section 105(b)(ii) and Sections 105(a)(ii) and 105(b)(iii) respectively, and once the Utility Revenues have been disbursed from the Trust Fund, they shall be disbursed free and clear of all liens. The lien in this Section 102(b) is paramount and superior to all other liens and interests of any kind, including any interest of the Authority or the City, and shall be for the sole purpose of ensuring payment of the principal, interest and related administrative and issuance costs of the Obligations. The lien is created and perfected without delivery, recording or notice.

(c)     Notwithstanding the provision in Section 102(b) hereinabove, no Party shall permit or cause to be created against the Trust Fund any lien, attachment, trustee process or any other judicial process of any creditor. Trustee shall hold and safeguard the Trust Fund, at the cost and expense of the Authority and the City, until no Obligations remain Outstanding and the Trust Fund is released pursuant to Section 105(d) of this Agreement. Notwithstanding the

3

foregoing, if the Trust Fund shall be attached, garnished or levied upon pursuant to judicial process, or the delivery of the funds held in the Trust Fund shall be stayed or enjoined by any court order, or any court order shall be made or entered into affecting the Trust Fund, or any part thereof, the Trustee is hereby expressly authorized to obey and comply with such judicial process, stay, injunction or court order, and shall provide the Authority and the City as much advance written notice as is reasonably practicable thereof.  In the event the Trustee obeys or complies with any judicial process or court order, it shall not be liable to any Party or Customer, or to any other person, firm (public or private) or corporation (public or private) by reason of such compliance, notwithstanding the subsequent reversal, modification, annulment or setting aside of such judicial process, stay, injunction or court order.

Section 103.    <u>Debt Retirement Escrow Fund</u>.  A fund within the Trust Fund to be designated the Debt Retirement Escrow Fund (the *"Debt Retirement Escrow Fund"*) shall be established and created under this Trust Agreement for the purpose of disbursing Utility Revenues pledged to payment of the Bonds to the party designated in an agreement (the *"Bond Trust Indenture"*) among the Authority, the purchaser or purchasers of such Bonds and Wilmington Trust National Association, as trustee appointed by the Authority to act as trustee, transfer agent and paying agent for the Bonds (the *"Bond Trustee"*), and to any party designated in an agreement (each, a *"Trust Indenture"*) among the Authority, the purchaser or purchasers of any Additional Obligations and a trustee appointed by the Authority to act as transfer agent and paying agent for such Additional Obligations, for the purpose of paying debt service on Bonds and Additional Obligations issued by the Authority, including any related reserve requirements as provided in the Bond Trust Indenture or another Indenture (*"Reserve Requirements"*), and any administrative and issuance costs associated with the Bonds or Additional Obligations.

Section 104.    <u>PLA Fund; City Disbursement Fund</u>.  (a)    A PLA Fund (the *"PLA Fund"*) is hereby created within the Trust Fund, as provided in Section 105 herein below. Moneys in the PLA Fund shall be used by the Authority for any purpose permitted by Act 392, provided that no Utility Revenues shall be deposited to the PLA Fund so long as the Bonds are Outstanding and no Additional Obligations have been issued.

(b)    The Executive Director of the Authority is authorized and directed to expend money from the PLA Fund for costs permitted by Act 392.

(c)    In the event that the Authority has no remaining expenses or use for moneys as permitted by Act 392, any balance in the PLA Fund shall be (i) transferred to the Debt Retirement Escrow Fund for disbursement to the Bond Trustee in accordance with Section 103 hereof, or (ii) if no Obligations remain Outstanding, upon agreement by the Parties (other than the Trustee), transferred to a general City Disbursement Fund (the *"City Disbursement Fund"*), which the Trustee is hereby directed to create within the Trust Fund.  The Trustee is hereby authorized to disburse moneys from the City Disbursement Fund to the City for deposit to the General Fund of the City in the City's account specified on Exhibit E attached hereto, free and clear of all liens as provided in Sections 105(a)(ii), 105(b)(iii) and 105(d).

Section 105.    <u>Disbursements from the Trust Fund</u>.  The available funds in the Trust Fund shall be disbursed by the Trustee on the 1st day of each month, or the next Business Day (defined herein as any day other than a Saturday, a Sunday, a day on which banking institutions

4

in the city in which the designated corporate trust office of the Trustee is located are closed, or a day on which the New York Stock Exchange is closed), if the 1st day is not a Business Day, as follows:

      (a)     For disbursements made beginning the 1st day of the month, or the next Business Day if the 1st day is not a Business Day, immediately following the date of this Agreement through December 31, 2013:

      (i)     Each month, from the available funds in the Trust Fund, the lesser of (i) the available funds in the Trust Fund and (ii) $1,783,333, shall be transferred to the Debt Retirement Escrow Fund and following such transfer, on the same day of such month, such amount shall be remitted directly to the Bond Trustee for the purpose of paying any principal of and interest on the Obligations, including any Reserve Requirements, any administrative and issuance costs associated with the Obligations and to be further disbursed as provided in the relevant Bond Indenture.

      (ii)     Any amounts remaining in the Trust Fund after making the disbursement as provided in Section 105(a)(i) shall be transferred to the City Disbursement Fund. The Trustee is hereby authorized to disburse moneys from the City Disbursement Fund to the City for deposit to the General Fund of the City free and clear of all liens.

      (b)     For disbursements made from January 1, 2014 until no Obligations are Outstanding, on the 1st day of each month, or the next Business Day, if the 1st day is not a Business Day, as follows:

      (i)     Each month, from the available funds in the Trust Fund, the lesser of (i) the available funds in the Trust Fund and (ii) $1,041,666 (for a maximum annual aggregate amount of not to exceed $12,500,000 per calendar year), shall be transferred to the Debt Retirement Escrow Fund and following such transfer, on the same day of such month, such amount shall be remitted directly to the Bond Trustee or an Additional Obligation Trustee for the purpose of paying any principal of and interest on the Bonds and any Additional Obligations, including any Reserve Requirements, any issuance costs associated with Additional Obligations and to be further disbursed as provided in the relevant Bond Indenture.

      (ii)     After making the disbursements in Section 105(b)(i) above, from the remaining available funds in the Debt Retirement Escrow Fund, in an amount which including the amount of the deposit made pursuant to Section 105(b)(i) above does not exceed $1,041,666 per month (and not to exceed an annual aggregate amount of $12,500,000 per calendar year, which, for the avoidance of doubt, shall be inclusive of the amount of the deposit made pursuant to Section 105(b)(i) above) shall be deposited to the PLA Fund.

      (iii)     Any amounts remaining in the Trust Fund after making the deposits as provided in Sections 105(b)(i) and 105(b)(ii) shall be transferred to the City Disbursement Fund. The Trustee is hereby authorized to disburse moneys from the City Disbursement Fund to the City for deposit to the General Fund of the City free and clear of all liens.

(c)    The Trustee shall furnish the Authority and the City with a monthly written accounting of the complete account activity of, and transactions executed with respect to, the Trust Fund, within fifteen (15) days after the end of such month.

(d)    Within 45 days of the retirement of all Outstanding Obligations issued by the Authority, the Trustee shall use best efforts to notify each Customer (identified with contact information provided by the City or Authority) to remit Utility Revenues collected under Act 100 to the City, and if the Trustee receives any funds following the retirement of all Outstanding Obligations issued by the Authority, the Trustee shall transmit such funds directly to the City. Thereupon the Trust Fund shall be released.

Section 106.    Additional Obligations.    The Trustee, Authority and the MFA may enter into Supplements to this Trust Agreement (each, a *"Supplement"*) without the consent of the City of the limited purpose of providing for the issuance of Additional Obligations to be secured by this Trust Agreement pursuant to this Section 106.

The issuance and delivery of Additional Obligations secured shall be conditioned upon the following:

(a)    A certificate of the Executive Director or other authorized officer of the Authority, as provided in Exhibit B (the *"Authorized Officer"*) certifying that the maximum aggregate principal and interest due and payable in any one calendar year on all Obligations that are Outstanding shall not exceed $12,500,000 and that all the conditions precedent to the issuance and delivery of Additional Obligations have been met.

(b)    A Supplement executed by the Trustee, the Authority and the MFA.

(c)    Delivery to the Trustee, the MFA, the City and the Authority of an opinion of counsel to the Authority that the Supplement has been duly authorized and is legal, binding, valid and enforceable in accordance with its terms.

For purposes of this Agreement *"Outstanding"* means, in the case of any Obligations, all such Obligations secured by the Trust Agreement which have been issued except any such portion thereof canceled after purchase or surrendered for cancellation or because of payment at or redemption prior to maturity, any such Obligations in lieu of which other Obligations have been duly incurred and any such Obligations which are no longer deemed Outstanding under their respective terms and with respect to which the Authority is no longer liable under the terms of such Obligations.

Section 107.    Utility Tax Revenue Information.

(a)    *Delivery of Information*.    The City shall direct all Customers to send to the Trustee the information to be submitted in connection with the Utility Revenues, including, but not limited to, the utility users tax form (the *"Utility Tax Revenue Information"*) to the Trustee in connection with the Customers' delivery of the Utility Revenues. Upon receipt of such Utility Tax Revenue Information, the Trustee shall deliver to the individuals specified on Exhibit F an electronic copy in PDF form of such Utility Tax Revenue Information. The Trustee will use commercially reasonable efforts to deliver such Utility Tax Revenue Information within one (1) business day of its receipt, but in no event no later than three (3) business days after receipt. The

6

City may alter or amend the information on Exhibit F by delivery of written notice to the Trustee and the Authority.

(b)    *Records*.  The Trustee shall keep the original Utility Tax Revenue Information with its records for the Trust Fund, provided that the Trustee shall, upon request of the City and Authority, send such original Utility Tax Revenue Information to the address set forth below within ten (10) business days of receipt of the request:

> City of Detroit Finance Department
> Income Tax Division
> Coleman A. Young Municipal Center
> 2 Woodward Avenue, Suite 1220
> Detroit, MI 48226
> ATTN:  Utility Users Tax

(c)    *Trustee's Role*.  The Trustee's duties with respect to the Utility Tax Revenue Information is limited to the duties expressly set forth herein, and, for the avoidance of doubt, all Parties hereby agree and acknowledge that the Trustee has no oversight duties as to correctness or completeness of any Utility Tax Revenue Information and the Trustee's receipt of the Utility Tax Revenue Information shall not constitute constructive notice of any information contained therein.

## ARTICLE II

### INVESTMENT OF FUNDS

Section 201.   <u>Investment of Funds</u>.  All moneys held by the Trustee pursuant to this Agreement shall be invested by the Trustee in accordance with written instruction from an Authorized Officer of the Authority, which instruction shall be in accordance with the laws of the State.  Such moneys will be held uninvested by the Trustee unless and until such joint written instruction is received.  The Trustee shall be entitled to rely on said investment instruction as to the suitability and legality of such investments.  The Trustee shall not be liable for losses on investments made in compliance with the provisions of this Agreement or such investment instructions.  The Trustee may make any and all such investments through its own investment department or that of its affiliates or subsidiaries, and may charge its ordinary and customary fees for such trades, including investment maintenance fees.  The Trustee shall not be responsible for providing broker confirmations or investment advice.

Section 202.   <u>Eligibility of Financial Institutions</u>.  Except as provided in Section 1(5) of the Investment of Surplus Funds of Political Subdivisions Act, 1943 PA 20, MCL §§ 129.91, *et seq*., the Authority and City shall not instruct the Trustee to deposit or invest the funds in a financial institution that is not eligible to be a depository of funds belonging to the State under a law or rule of the State or the United States.  For purposes of this Section 202, "financial institution" means a state or nationally chartered bank or a state or federally chartered savings and loan association, savings bank or credit union whose deposits are insured by an agency of the United States government and that maintains a principal office or branch office located in the State under the laws of the State or the United States.

7

## ARTICLE III

### THE TRUSTEE

Section 301. <u>Powers and Duties of Trustee</u>.

(a)    The Trustee hereby agrees and covenants with the Parties hereto that it will perform all of its obligations under this Agreement and will not deliver custody or possession of any of the Trust Fund to anyone except pursuant to the express terms of this Agreement.

(b)    The responsibilities of the Trustee are administrative in nature and are strictly limited to those specifically set forth herein.  No implied duties, covenants or obligations shall be read into this Agreement against the Trustee including, without limitation, the obligation to make any discretionary decisions.  No fiduciary relationship exists between or among the Trustee or the City.  The Trustee undertakes to perform such duties as are specifically set forth in this Agreement only and shall have no liabilities or obligations with respect to the Trust Fund or its administration of this Agreement except for the Trustee's negligence or willful misconduct.  The Trustee shall have no implied duties or obligations and shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein or in any notices given to it in accordance with the notice provisions of this Agreement.  The Trustee shall incur no liability with respect to any action taken by it or for any inaction on its part in reliance upon any notice, direction, instruction, consent, statement or other document believed by it in good faith to be genuine and duly authorized, nor for any other action or inaction except for its own negligence or willful misconduct.  The Trustee may consult legal counsel selected by it in the event of any dispute or question of the construction of this Agreement or seek the assistance of a court of competent jurisdiction, and shall incur no liability and shall be fully protected in acting in accordance with the opinion or advice of such counsel or the direction of such court.  The Trustee shall not be liable for any error of judgment made in good faith by a responsible partner, director, officer, affiliate, employee, employer, professional, agent or representative of the Trustee unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts.  In no event shall the Trustee be liable for incidental, indirect, special, punitive or consequential damages.  The Trustee shall have the right to perform any of its duties hereunder through agents, attorneys, custodians or nominees, and shall not be responsible for the misconduct or negligence of such agents, attorneys, custodians and nominees appointed by it with due care.  None of the provisions contained in this Agreement shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers vested in it by this Agreement, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.  The permissive rights of the Trustee to do things enumerated in this Agreement shall not be construed as duties.  The Trustee shall not be accountable for the use or application of any money paid over by the Trustee in accordance with the provisions of this Agreement.  The

8

Trustee shall have no duty to collect any Utility Revenues which are required to be deposited with it hereunder.

(c)     The Authority shall defend, at its cost and expense, but only from funds other than Utility Revenues, any claim (by whomever asserted) against the Trustee arising out of or in connection with the acceptance, administration, exercise or performance of its duties under this Agreement.  The Authority shall satisfy any liability, judgment and cost, of or relating to such claim, except to the extent that a court of competent jurisdiction has determined that such claim, liability or expense is attributable to the Trustee's negligence or willful misconduct.  The Trustee may have separate legal counsel and the Authority shall pay the reasonable fees and expenses of such separate legal counsel.

The Trustee shall notify the Authority promptly of any claim against for which it may seek defense. Failure by the Trustee to so notify the Authority shall not relieve the Authority from its obligations hereunder. The Trustee shall cooperate in the defense. The forgoing shall survive the termination of this Agreement pursuant to Section 402 hereof.

(d)     The Trustee agrees to accept and act upon written instructions or directions pursuant to this Agreement sent by unsecured e-mail (in pdf file format), facsimile transmission or other similar unsecured electronic methods, provided, however, that the instructions or directions shall be signed by a person as may be designated and authorized to sign for the Authority or the City, respectively, or in the name of the Authority or the City, respectively, by an authorized representative of the Authority or City, respectively, and the Authority or the City, respectively shall provide to the Trustee an incumbency certificate listing such designated persons, which incumbency certificate shall be amended whenever a person is to be added or deleted from the listing.  If the Authority or City, respectively, elects to give the Trustee e-mail or facsimile instructions (or instructions by a similar electronic method) and the Trustee in its discretion elects to act upon such instructions, the Trustee's understanding of such instructions shall be deemed controlling.  The Trustee shall not be liable for any losses, costs or expenses arising directly or indirectly from the Trustee's reliance upon and compliance with such instructions notwithstanding such instructions conflict or are inconsistent with a subsequent written instruction.  The Authority and City agree:  (i) to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Trustee, including without limitation the risk of the Trustee acting on unauthorized instructions, and the risk of interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the Trustee and that there may be more secure methods of transmitting instructions than the method(s) selected by the Authority or the City; and (iii) that the security procedures (if any) to be followed in connection with their transmission of instructions provide to them a commercially reasonable degree of protection in light of their particular needs and circumstances.

Section 302.   <u>Fees and Expenses of the Trustee</u>.  The Authority shall pay to the Trustee from time to time such compensation as shall be agreed upon in writing between the Authority and the Trustee for its acceptance of this Agreement and services hereunder.  The Trustee's compensation shall not be limited by any law on compensation of a trustee of an express trust.  The Authority shall reimburse the Trustee promptly upon request for all reasonable disbursements, advances and expenses incurred or made by it in addition to the

9

compensation for its services, including extraordinary time and services. Such expenses shall include the reasonable compensation, disbursements and expenses of the Trustee's agents and legal counsel. The Authority agrees that it shall pay all such fees owed the Trustee within 30 days of receipt of an invoice.

Section 303. <u>Successor Trustee</u>.

(a) In the event the Trustee becomes unavailable or unwilling to continue as Trustee under this Agreement, the Trustee may resign and be discharged from its duties and obligations hereunder by giving its written resignation to the Parties to this Agreement. In addition, the Trustee may be removed at any time, with or without cause, upon 30 days prior written notice delivered to the Trustee and the Bond Trustee (and any trustee for any Additional Obligations) and executed by each of the Parties. Such resignation or removal shall not take effect until the successor has been appointed and has accepted its appointment. In such event, the Authority may appoint, with the consent of the City and the MFA which consent shall not be unreasonably withheld, a successor trustee, which shall be a commercial bank, trust company or other financial institution qualified to act as a trustee under Michigan law. If the Authority fails to appoint a successor trustee within fifteen (15) days after receiving the Trustee's written resignation, the Trustee shall have the right to apply to a court of competent jurisdiction for the appointment of a successor trustee. The successor trustee shall execute and delivery to the Trustee an instrument accepting such appointment, and the successor trustee shall, without further acts, be vested with all the estates, property rights, powers and duties of the predecessor Trustee as if originally named as Trustee herein. The Trustee shall act in accordance with written instructions from the Authority, the City and the MFA as to the transfer of the Trust Fund to a successor trustee.

(b) Any corporation, association or other entity into which the Trustee may be converted or merged, or with which it may be consolidated, or to which it may sell or otherwise transfer all or substantially all of its corporate trust assets and businesses or any corporation, association or other entity resulting from any such conversion, sale, merger, consolidation or other transfer to which it is a party, <u>ipso facto</u>, shall be and become successor Trustee hereunder, as applicable, vested with all other matters as was its predecessor, without the execution or filing of any instrument or any further act on the part of the Parties hereto, notwithstanding anything herein to the contrary.

ARTICLE IV

REMEDIES

Section 401. <u>Events of Default</u>.

Each of the following events is hereby declared an "event of default":

(a) failure of the any of the Parties to apply the Utility Revenues as required hereby; or

10

(b)     any judgment, writ or warrant of attachment or of any similar process shall be entered or filed against the Utility Revenues and remains unvacated, unpaid, unbonded, unstayed or uncontested in good faith for a period of 60 days.

Upon the occurrence and during the continuance of an event of default described in this Section 401 and known to a responsible officer of the Trustee who is responsible for the administration of this Agreement, the Trustee shall give written notice to the City, the Authority and the MFA and the Bond Trustee.

Section 402.    Remedies; Rights of Obligation Holders.

Upon the occurrence of any event of default, the Trustee may, but is not required to, pursue any available remedy including a suit, action or proceeding at law or in equity to enforce the payment of the principal of, premium, if any, and interest on the Outstanding Obligations hereunder and any other sums due hereunder and may collect such sums in the manner provided by law out of the Utility Revenues, subject to the provisions of applicable State and federal law.

No remedy by the terms of this Agreement conferred upon or reserved to the Trustee (or to the beneficiary or holder of any Outstanding Obligations) is intended to be exclusive of any other remedy, but each and every such remedy shall be cumulative and shall be in addition to any other remedy given to the Trustee or to the holders of Outstanding Obligations hereunder now or hereafter existing at law or in equity or by statute.

No delay or omission to exercise any right or power accruing upon any default or event of default shall impair any such right or power or shall be construed to be a waiver of any such default or event of default, or acquiescence therein; and every such right and power may be exercised from time to time and as often as may be deemed expedient.

No waiver of any default or event of default hereunder, whether by the Trustee or by the holders of Outstanding Obligations, shall extend to or shall affect any subsequent default or event of default or shall impair any rights or remedies consequent thereon.

Section 403.    Direction of Proceedings by Holders.

The Bond Trustee or the holders of a majority in aggregate principal amount of the Outstanding Obligations which have become due and payable in accordance with their terms and have not been paid in full in the case of remedies exercised to enforce such payment, or the Bond Trustee or the holders of not less than a majority in aggregate principal amount of the Outstanding Obligations in the case of any other remedy, shall have the right, subject to the Trustee's right to be indemnified to its satisfaction, at any time, by an instrument or instruments in writing executed and delivered to the Trustee, to direct the method and place of conducting all proceedings to be taken in connection with the enforcement of the terms and conditions of this Agreement.

The foregoing notwithstanding, the Bond Trustee or the holders of not less than a majority in aggregate principal amount of the Outstanding Obligations which are entitled to the exclusive benefit of certain security in addition to that intended to secure all or other Outstanding Obligations shall have the right, subject to the Trustee's right to be indemnified to its

11

satisfaction, at any time, by an instrument or instruments in writing executed and delivered to the Trustee, to direct the method and place of conducting all proceedings to be taken in connection with the enforcement of the terms and conditions of this Agreement and any supplemental agreement, if any, pursuant to which such Outstanding Obligations were issued or so secured or any separate security document in order to realize on such security; provided, however, that such direction shall not be otherwise than in accordance with the provisions of law and of this Agreement and that the Trustee shall have the right to decline to comply with any such request if the Trustee shall be advised by counsel (who may be its own counsel) that the action so directed may not lawfully be taken.

Section 404.   <u>Application of Moneys</u>.

All moneys received by the Trustee pursuant to any right given or action taken under the provisions of this Article shall, after payment of the cost and expenses of the proceedings resulting in the collection of such moneys and of the fees of, expenses, liabilities and advances incurred or made by the Trustee, be applied as follows:

First:  after payment as provided above in this Section, to the payment to the persons entitled thereto of all installments of interest then due on the Outstanding Obligations, in the order of the maturity of the installments of such interest, and, if the amount available shall not be sufficient to pay in full any particular installment, then to the payment ratably, according to the amounts due on such installment, to the persons entitled thereto, without any discrimination or privilege; and

Second:  to the payment to the persons entitled thereto of the unpaid principal and premium, if any, on the Outstanding Obligations which shall have become due (other than Outstanding Obligations called for redemption or payment for payment of which moneys are held pursuant to the provisions of this Agreement), in the order of the scheduled dates of their payment, and, if the amount available shall not be sufficient to pay in full the Outstanding Obligations due on any particular date, then to the payment ratably, according to the amount of principal and premium due on such date, to the persons entitled thereto without any discrimination or privilege; and

Third:  to the payment to the persons entitled thereto of all unpaid principal and interest on Outstanding Obligations, payment of which was extended by such persons as described in Section 401 hereof.

Whenever moneys are to be applied by the Trustee pursuant to the provisions of this Section 404, such moneys shall be applied by it at such times, and from time to time, as the Trustee shall determine in its sole discretion, having due regard for the amount of such moneys available for application and the likelihood of additional moneys becoming available for such application in the future.  Whenever the Trustee shall apply such moneys, it shall fix the date (which shall be an interest payment date unless it shall deem another date more suitable) upon which such application is to be made and upon such date interest on the amounts of principal to be paid on such date shall cease to accrue.  The Trustee shall give such notice as it may deem appropriate of the deposit with it of any such moneys and of the fixing of any such date, and shall not be required to make payment to the holder of any unpaid Outstanding Obligations until

12

such Outstanding Obligations shall be presented to the Trustee for appropriate endorsement or for cancellation if fully paid.

Whenever all Outstanding Obligations and interest thereon have been paid under the provisions of this Section 404 and all expenses and charges of the Master Trustee have been paid, any balance remaining shall be paid as provided above.

Notwithstanding any of the provisions in this Article above, the Trustee shall only apply moneys held by it that have been deposited in the Debt Retirement Escrow Fund or the PLA Fund pursuant to Section 105 hereof and in no event shall the amount applied pursuant to this Section 404 exceed $12,500,000 per calendar year. If any Ancillary Facility is entered into pursuant to a supplemental indenture, the Trustee shall apply moneys to such Ancillary Facility as provided in such supplemental indenture and in accordance with this Section, provided that any such supplemental indenture shall state whether the related Ancillary Facility will be treated as interest or principal for purposes of the application of moneys pursuant to this Section 404.

Section 405.    Remedies Vested in Trustee.

All rights of action including the right to file proof of claims under this Agreement or under any of the Outstanding Obligations may be enforced by the Trustee without the possession of any of the Outstanding Obligations or the production thereof in any trial or other proceedings relating thereto and any such suit or proceeding instituted by the Trustee shall be brought in its name as Trustee without the necessity of joining as plaintiffs or defendants any holders of the Outstanding Obligations, and any recovery of judgment shall be for the equal benefit of the holders of the Outstanding Obligations.

Section 406.    Rights and Remedies of Obligation Holders.

No holder of Outstanding Obligations shall have any right to institute any suit, action or proceeding in equity or at law for the enforcement of this Agreement or for the execution of any trust hereof or for the appointment of a receiver or any other remedy hereunder, unless a default shall have become an event of default and (a) the holders of 25% or more in aggregate principal amount (i) of the Outstanding Obligations which have become due and payable in accordance with their terms and have not been paid in full in the case of powers exercised to enforce such payment or (ii) the Obligations then Outstanding in the case of any other exercise of power, and unless the Trustee shall thereafter fail or refuse to exercise the powers hereinbefore granted, or to institute such action, suit or proceeding in its own name; and such notification, request and offer of indemnity are hereby declared in every case at the option of the Trustee to be conditions precedent to the execution of the powers and trusts of this Agreement and to any action or cause of action for the enforcement of this Agreement, or for the appointment of a receiver or for any other remedy hereunder; it being understood and intended that no one or more holders of the Outstanding Obligations shall have any right in any manner whatsoever to affect, disturb or prejudice the lien of this Agreement by its, his or their action or to enforce any right hereunder except in the manner herein provided, and that all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided and for the equal benefit of the holders of all Outstanding Obligations. Nothing in this Agreement contained shall, however, affect or impair the right of any holder to enforce the payment of the principal of, premium, if

13

any, and interest on any Outstanding Obligations at and after the maturity thereof, or the obligation of the Authority to pay the principal, premium, if any, and interest on each of the Outstanding Obligations issued hereunder to the respective holders thereof at the time and place, from the source and in the manner in said Outstanding Obligations expressed.

Section 407. <u>Termination of Proceedings</u>.

In case the Trustee shall have proceeded to enforce any right under this Agreement by the appointment of a receiver, or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to the Trustee shall, subject to any determination in such proceeding, be restored to their former positions and rights hereunder with respect to the Utility Revenues pledged and assigned hereunder, and all rights, remedies and powers of the Trustee shall continue as if no such proceedings had been taken.

Section 408. <u>Trustee or Bondholders Deemed to be Related Obligation Holders</u>.

For the purposes of this Agreement, any trustee appointed pursuant to the Bond Trust Indenture or a Trust Indenture shall be deemed the holder of the Obligation or Obligations pledged to secure the related MFA bonds for which the trustee is acting pursuant to the related Trust Indenture, unless said trustee elects to the contrary or contrary provision is made in the related Trust Indenture, in which event the related Trust Indenture shall provide that the holders of the Obligation or Obligations pledged to secure the MFA Bonds shall be deemed the holders of the Obligation or Obligations to the extent of the principal amount of the Obligation or Obligations to which the MFA Bonds secured by such Obligation or Obligations relate.

ARTICLE V

MISCELLANEOUS

Section 501. <u>Notices</u>. All notices, consents, waivers and other communications required or permitted by this Agreement shall be in writing and shall be deemed given to a Party when delivered to the appropriate address by hand or by nationally recognized overnight courier service (costs prepaid) to the following addresses and marked to the attention of the person (by name or title) designated below (or to such other addresses or person as a Party may designate by written notice to the other Parties):

**If to the Authority:**

Public Lighting Authority
Executive Director
65 Cadillac Square, Suite 2900
Detroit, MI 48226

with a mandatory copy to (which copy shall not constitute notice):

The Allen Law Group, P.C.
2500 Fisher Building
3011 West Grand Boulevard
Detroit, MI 48202

14

**If to the City:**

     City of Detroit
     Office of the Mayor
     Coleman A. Young Municipal Center
     2 Woodward Avenue, 11th Floor
     Detroit, MI 48226

with a mandatory copy to (which copy shall not constitute notice), while applicable:

     City of Detroit
     Office of the Emergency Manager
     Coleman A. Young Municipal Center
     2 Woodward Avenue, 11th Floor
     Detroit, MI 48226

**If to the MFA:**

     Michigan Finance Authority
     Department of Treasury
     Austin Building, 1st Floor
     430 West Allegan Street
     Lansing, MI 48922

**If to the Trustee:**

     Wilmington Trust, National Association
     Corporate Trust Services
     25 South Charles Street, 11th Floor
     Baltimore, MD 21201

with a mandatory copy to (which copy shall not constitute notice):

     Drinker Biddle & Reath
     Kristin Going
     1500 K. St., N.W., Suite 1100
     Washington, DC 20005

     Section 502. <u>Termination</u>. This Agreement will terminate 30 days following the date on which no Obligations are Outstanding. Following such termination, this Agreement shall be of no further force or effect, and no further fees or expenses shall be invoiced by the Trustee pursuant hereto except for unbilled fees or expenses incurred by the Trustee prior to such time.

15

Section 503. <u>Interpretation</u>. Unless the context otherwise requires, references in this Agreement to Sections and Exhibits refer to the Sections and Exhibits to this Agreement. The words "include," "includes" and "including" when used herein shall be deemed in each case to be followed by the words "without limitation." The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. All references to dollar amounts contained in this Agreement shall mean United States dollars. References in this Agreement to any gender include references to all genders, and references to the singular include references to the plural and vice versa. Unless the context otherwise requires, the words "hereof," "hereby" and "herein" and words of similar meaning when used in this Agreement refer to this Agreement in its entirety and not to any particular Article, Section or provision of this Agreement.

Section 504. <u>Entire Agreement</u>. This Agreement and the other agreements referred to herein constitute the entire agreement of the Parties to this Agreement and supersede all prior agreements and understandings, both written and oral, among or between any of the Parties with respect to the subject matter hereof.

Section 505. <u>Parties in Interest</u>. Except as expressly provided herein, none of the provisions of this Agreement is intended to provide any rights or remedies to any Person other than the Parties hereto and their respective successors and assigns (if any), the Bond Trustee, the purchasers of Obligations and of the MFA Bonds and the trustee for any Additional Obligations.

Section 506. <u>Severability</u>. If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

Section 507. <u>Governing Law; Jurisdiction and Venue</u>.

(a) This Agreement shall be construed in accordance with, and governed in all respects by, the internal laws of the State of Michigan (without giving effect to principles of conflicts of laws).

(b) Each Party to this Agreement (other than the MFA):

(i) irrevocably submits to the exclusive jurisdiction of the Circuit Court for the County of Wayne in the State of Michigan and any state appellate court therefrom within the State of Michigan for the purpose of any legal proceeding directly or indirectly based upon, relating to arising out of this Agreement or any transaction contemplated hereby or the negotiation, execution or performance hereof or thereof and irrevocably agrees that all claims in respect of such action or proceeding shall be brought in, and may be heard and determined, exclusively in such state or federal courts;

(ii) irrevocably consents to the service of the summons and complaint and any other process in any other action or proceeding relating to the transactions contemplated by this Agreement, on behalf of itself or its property, by personal delivery of copies of such process to such Party at the addresses set forth in Section

16

501, provided that nothing in this Section 507 shall affect the right of any Party to serve legal process in any other manner permitted by law;

> (iii)    acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues, and therefore each such Party hereby irrevocably and unconditionally waives any right such Party may have to a trial by jury in any legal proceeding directly or indirectly based upon, relating to or arising out of this Agreement or any transaction contemplated hereby or the negotiation, execution or performance hereof or thereof; and

> (iv)    certifies and acknowledges that (A) no representative, agent or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of any legal proceeding, seek to enforce the foregoing waiver in Section 507(b)(iii); (B) each Party understands and has considered the implication of such waiver; (C) each Party makes such waiver voluntarily and (D) each Party has been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this Section 507.

Section 508.    <u>Rules of Construction</u>.   The Parties hereto agree that they have been represented by counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any law, regulation, holding or rule of construction providing that ambiguities in an agreement or other document will be construed against the party drafting such agreement or document.

Section 509.    <u>Assignment and Successors</u>.   No Party may assign any of its rights or delegate any of its obligations under this Agreement without the prior written consent of the other Parties, except with respect to a successor trustee as set forth under Section 303(b) of this Agreement.  This Agreement will apply to, be binding in all respects upon and inure to the benefit of the successors and permitted assigns of the Parties, including the holders of the Obligations.

Section 510.    <u>Further Assurances</u>.   Each Party hereto shall execute and cause to be delivered to each other Party hereto such instruments and other documents, and shall take such other actions, as such other Party may reasonably request for the purpose of carrying out or evidencing any of the transactions contemplated by this Agreement.

Section 511.    <u>Counterparts</u>.   This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument.  The exchange of copies of this Agreement and of signature pages by facsimile or pdf transmission shall constitute effective execution and delivery of this Agreement as to the parties hereto and may be used in lieu of the original Agreement for all purposes.  Signatures of the Parties hereto transmitted by facsimile or pdf shall   be   deemed   to   be   their   original   signatures   for   all   purposes.

IN WITNESS WHEREOF, the Parties hereto have duly caused this Agreement to be executed as of the date first written above.

PUBLIC LIGHTING AUTHORITY

By _____

Its:  Executive Director

Witness for the Public Lighting Authority

_____


CITY OF DETROIT

By _____

Its:  Emergency Manager

Witness for the City of Detroit

_____


MICHIGAN FINANCE AUTHORITY

By _____

Its:  _____

Witness for the Michigan Finance Authority

_____

WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE

By _____

Its:  _____

Witness for Wilmington Trust, NATIONAL ASSOCIATION

_____

18

**Public Lighting Authority Trust**

**Exhibit A**

**Fee Schedule**

Administrative Fee                      $2,500.00 per annum, payable at closing

- Assumes proceeds are placed with Wilmington Trust, National Association's non-collateralized escrow depository account.

- Assumes one account.

_The fees as quoted and the acceptance of our duties as escrow agent (Trustee ) are subject to the satisfactory review and acceptance of all related financing documents by the escrow agent, our counsel and the New Business Acceptance Committee. In the event the escrow changes prior to or after closing, Wilmington Bank reserves the right to review and renegotiate the fees accordingly._

19

**Public Lighting Authority Trust**

**Exhibit B**

**Certificate as to Authorized Signatures**

The specimen signatures shown below are the specimen signatures of the individuals who have been designated as authorized representatives of the Public Lighting Authority and are authorized to initiate and approve transactions of all types for the escrow account or accounts established under the Trust Agreement to which this Exhibit B is attached, on behalf of the Public Lighting Authority.

Name/Title/Phone Number                    Specimen Signature

_____                      _____
Name                                       Signature
_____
Title
_____
Phone Number


_____                      _____
Name                                       Signature
_____
Title
_____
Phone Number


_____                      _____
Name                                       Signature
_____
Title
_____
Phone Number


_____                      _____
Name                                       Signature
_____
Title
_____
Phone Number

20

**Public Lighting Authority Trust**

**Exhibit C**

**Certificate as to City's Authorized Signatures**

The specimen signatures shown below are the specimen signatures of the individuals who have been designated as authorized representatives of the City and are authorized to initiate and approve transactions of all types for the escrow account or accounts established under the Amended and Restated Trust Agreement to which this Exhibit C is attached, on behalf of the City.

Name/Title/Phone Number                    Specimen Signature


_____        _____
Name                                                     Signature
_____
Title
_____
Phone Number


_____        _____
Name                                                     Signature
_____
Title
_____
Phone Number


_____        _____
Name                                                     Signature
_____
Title
_____
Phone Number


_____        _____
Name                                                     Signature
_____
Title
_____
Phone Number

21

**Exhibit D**

**Payment Instructions**

**By Wire:**

Bank:  M & T Bank
ABA:  022000046
Account:  Corporate Trust Clearing
Account No.:  3088001950200
ffc Public Lighting Trust
Attn:  Jay Smith

**By Check:**

Payable to:  Wilmington Trust, National Association

**Mailed to:**

Wilmington Trust, National Association
Global Capital Markets
25 S. Charles Street, 11th Floor
Baltimore, MD 21201
Attn:  Jay Smith

**Public Lighting Authority Trust**

**Exhibit E**

**City Account Information**

<u>City Account Information</u>

Bank:          Comerica Bank
ABA:           072000096
Account:       City of Detroit Utilities
Account No.    1850-706191

23

**Public Lighting Authority Trust**

**Exhibit F**

**City Recipients**

Tanya Stoudemire – tanya@detroitmi.gov

Karen King – kingk@itax.ci.detroit.mi.us

Kimberly Dancy-Walker – kimdan@detroitmi.gov

Shyam Karwande – shyamk@itax.ci.detroit.mi.us

21522619.11\060531-00072
21,522,619.11\060531-00072
21,522,619.12\060531-00072
21,522,619.12\060531-00072
21522619.12\060531-00072

24