# EXHIBIT 6.4

# (Emergency Manager Order)



**EMERGENCY MANAGER
CITY OF DETROIT**

**ORDER No. 18**

**APPROVAL OF CERTAIN AGREEMENTS RELATED TO THE PUBLIC
LIGHTING AUTHORITY**

By the Authority Vested in the Emergency Manager
For the City of Detroit
Pursuant to Michigan's Public Act 436 of 2012,
Kevyn D. Orr, the Emergency Manager,
Issues the Following Order:

*Whereas*, on March 28, 2013, Michigan Public Act 436 of 2012 ("PA 436") became effective and Kevyn D. Orr became the Emergency Manager ("EM") for the City of Detroit (the "City") with all the powers and duties provided under PA 436; and

Pursuant to section 9(2) of PA 436, the EM "shall act for and in the place and stead of" the Detroit Mayor and City Council; and

Section 9(2) of PA 436 also grants the EM "broad powers in receivership to rectify the financial emergency and to assure the fiscal accountability of the [City] and the [City's] capacity to provide or cause to be provided necessary governmental services essential to the public health, safety, and welfare;" and

Further, section 9(2) of PA 436 prohibits, during the pendency of receivership, the Detroit Mayor and City Council from exercising "any powers of those offices except as may be specifically authorized in writing by the [EM] or as otherwise provided by [PA 436] and are subject to any conditions required by the [EM]; and

1

Pursuant to section 10(1) of PA 436, the EM may "issue to the appropriate local elected and appointed officials and employees, agents, and contractors of the local government the orders the emergency manager considers necessary to accomplish the purposes of [PA 436], including but not limited to, orders for the timely and satisfactory implementation of a financial and operating plan" or "to take actions, or refrain from taking actions, to enable the orderly accomplishment of the financial and operating plan"; and

Pursuant to section 12(1)(b) of PA 436, the EM is empowered, "notwithstanding any charter provision to the contrary," to "[a]mend, revise, approve, or disapprove the budget of the local government, and limit the total amount appropriated or expended;" and

Pursuant to section 12(1)(c) of PA 436, the EM is empowered, "notwithstanding any charter provision to the contrary," to "[r]eceive and disburse on behalf of the local government all federal, state, and local funds earmarked for the local government. These funds may include, but are not limited to, funds for specific programs and the retirement of debt;" and

Section 12(1)(g) of PA 436 authorizes the EM, "notwithstanding any charter provision to the contrary" to "[m]ake, approve, or disapprove any appropriation, contract, expenditure, or loan...;" and

Section 12(1)(r) of PA 436 authorizes the EM to "[subject to Section 19 of PA 436], if provided in the financial and operating plan, or otherwise with the prior written approval of the governor or his or her designee, sell, lease, convey, assign or otherwise use or transfer the assets, liabilities, functions or responsibilities of the local government" (a "Proposed Transaction"), "provided the use or transfer of assets, liabilities, functions, or responsibilities for this purpose does not endanger the health, safety, or welfare of residents of the local government or unconstitutionally impair a bond, note, security, or uncontested legal obligation of the local government."

Pursuant to section 12(1)(y), the EM is empowered, "notwithstanding any charter provision to the contrary," to "[e]nter into agreements with other local governments, public bodies, or entities for the provision of services, the joint exercise of powers, or the transfer of functions and responsibilities;" and

Pursuant to section 19(1) of PA 436, the EM, before executing the Proposed Transaction, "shall submit the [Proposed Transaction] to the governing body of the local government [which] shall have 10 days from the date of submission to approve or disapprove the [Proposed Transaction]. If the governing body of the local government does not act within 10 days, the [Proposed Transaction] is considered approved by the governing body of the local government and the emergency manager may then execute the [Proposed Transaction];" and

Pursuant to Section 19(2) of PA 436, "[i]f the governing body of the local government disapproves a [Proposed Transaction] within 10 days, the governing body of the local government shall, within 7 days of its disapproval of the [Proposed Transaction], submit to the local emergency financial assistance loan board an alternative proposal that would yield substantially the same financial result as the [Proposed Transaction]. The local emergency financial assistance loan board shall have 30 days to review both the alternative proposal submitted by the governing body of the local government and the [Proposed Transaction] and to approve either the alternative proposal submitted by the governing body of the local government or the [Proposed Transaction]. The local emergency financial assistance loan board shall approve the proposal that best serves the interest of the public in that local government;" and

The Public Lighting Authority (the "PLA"), created pursuant to the Michigan Municipal Lighting Authority Act, 2012 PA 392, MCL §§ 123.1261 et seq. ("Act 392"), is responsible for constructing, improving, enlarging, reducing or extending the City's street light system and providing an equitable and reasonable method and means of financing, operating and maintaining a lighting system in sufficient quantities within the City; and

The EM issued Order No. 6, the "Approval of Initial Public Funding Agreement for the Public Lighting Authority," on May 2, 2013 and Order No. 14, the "Approval of Trust Agreement Between and Among the City of Detroit, the Public Lighting Authority and the Trustee"; and

Pursuant to the City Utility Users Tax Act, 1990 PA 100, MCL 141.1151 et seq. ("Act 100"), the City has levied a utility users tax to be collected by public utilities and resale customers (the "Utility Taxes"); and

The PLA is in the process of issuing bonds, pursuant to Act 392, that will be secured by the revenues that the PLA will receive from the Utility Taxes.

Pursuant to Act 100 and Act 392, PLA is authorized to receive in each calendar year the "Utility Revenues", defined as the lesser of (i) $12,500,000 and (ii) the revenues received from the Utility Taxes in any given year; and

The EM, acting on behalf of the City, has the power under Section 25 of Act 392 to pledge the revenues received from the Utility Taxes in connection with bonds issued by the PLA; and

In connection with those bonds and pursuant to Act 392, the City and the PLA will enter into an Interlocal Agreement for the Construction and Financing of a Public Lighting System (the "C&F Interlocal Agreement"), in substantially the form attached hereto as Exhibit 1.

Pursuant to the C&F Interlocal Agreement, the PLA has agreed to construct and improve the public street lighting system of the City pursuant to the lighting plan created by the PLA, and the City has agreed to pledge all revenues received from the Utility Taxes to the bonds to be issued by the PLA to finance such construction and improvement, provided, however, the PLA shall only be entitled to the Utility Revenues; and

Contemporaneous with the C&F Interlocal Agreement, the City and the PLA will enter into an Interlocal Agreement for the Operation, Maintenance and Management of a Public Lighting System (the "O&M Interlocal Agreement"), in substantially the form attached hereto as Exhibit 2.

Pursuant to the O&M Interlocal Agreement, the PLA will cause the street public lighting system constructed and improved pursuant to the C&F Agreement to be operated and maintained and which will relieve the City of the obligation to so maintain the system and the City shall pay the PLA a fee therefor; and

In order to fulfill the requirements of Act 392, the EM, on behalf of the City, the PLA, the Michigan Finance Authority and a Trustee will enter into a Amended and Restated Trust Agreement for the establishment of a trust and trust fund (the "Trust Agreement"), in substantially the form attached hereto as Exhibit 3, whereby all revenues received from the Utility Taxes shall be deposited, which Trust Agreement shall amend and restate the Trust Agreement by and among the City, the PLA and the Trustee, approved pursuant to EM Order No. 14; and

3

The Utility Revenues will be used by the PLA as permitted by Act 392, the C&F Interlocal Agreement and the Trust Agreement; and

Consistent with the EM's May 12, 2013, Financial and Operating Plan the EM believes that the C&F Interlocal Agreement, the O&M Interlocal Agreement and the Trust Agreement (collectively, the "Agreements") will allow the PLA to provide necessary governmental services essential to the public health, safety, and welfare. The PLA will be able to use the Utility Revenues to, among other things, secure any debt obligations (bonds) of the PLA to reconfigure the City's streetlight footprint to provide reliable public lighting service and safety to the City's citizens in a timely manner.

**It is hereby ordered that:**

1. The Agreements are hereby approved in all respects. In furtherance of the City's obligations under the C&F Interlocal Agreement, the City hereby pledges the revenues received from the Utility Taxes to secure the bonds of the PLA issued pursuant to such agreement, but it is hereby reiterated that, in accordance with Act 392 and Act 100, the PLA shall only be entitled to the Utility Revenues from the revenues received from the Utility Taxes. The full faith and credit of the City is not pledged to the obligations of the City under the C&F Interlocal Agreement.

2. The EM hereby directs all public utilities and resale customers that collect Utility Taxes within the geographic City limits to remit all revenues received from the Utility Taxes to the Trustee to be deposited into the trust fund established by the Trust Agreement.

3. The revenues received from the Utility Taxes shall be disbursed in accordance with the Trust Agreement.

4. The PLA is hereby directed to serve a copy of this Order on all public utilities and resale customers that collect Utility Taxes within the geographic City limits as directed by the EM or his designee in writing.

5. Pursuant to section 19 of PA 436, the C&F Interlocal Agreement is hereby submitted to the City Council, and City Council is hereby instructed to review the C&F Interlocal Agreement and to either approve or disapprove the C&F Interlocal Agreement within 10 days from the date hereof.

6. Pursuant to section 19 of PA 436, the O&M Interlocal Agreement is hereby submitted to the City Council, and City Council is hereby instructed to review the O&M Interlocal Agreement and to either approve or disapprove the O&M Interlocal Agreement within 10 days from the date hereof.

7. Nothing in this Order shall be interpreted as contrary to Federal law.

8. If any component of this Order is declared illegal, unenforceable or ineffective by a court of competent jurisdiction, such component shall be deemed severable so that all other components contained in this Order shall remain valid and effective.

9. This Order is effective immediately upon the date of execution below.

10. The EM may modify, amend, rescind, replace, supplement or otherwise revise this Order at any time; provided, however, that the direction set forth in paragraph 2 hereof shall be irrevocable until all debt obligation secured by Utility Taxes shall have been paid in full.

11. This Order shall be distributed to the Mayor, City Council members and all department heads.

Dated: October 23rd, 2013        By: /s/ Kevyn D. Orr
                                 Kevyn D. Orr
                                 Emergency Manager
                                 City of Detroit

cc:  State of Michigan Department of Treasury
     Mayor David Bing
     Members of Detroit City Council
     Chief Financial Officer of the City of Detroit
     Public Lighting Authority
     Michigan Finance Authority

# Exhibit 1

## C&F Interlocal Agreement

Please see attached.

6

13-53846-tjt    Doc 1341-11    Filed 10/23/13    Entered 10/23/13 17:15:55    Page 7 of 9

# Exhibit 2

## O&M Interlocal Agreement

Please see attached.

7

# Exhibit 3

## Trust Agreement

Please see attached.