# Exhibit 1

# Proposed Order

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

ORDER AUTHORIZING SYNCORA GUARANTEE INC.
AND SYNCORA CAPITAL ASSURANCE INC.
TO ISSUE DOCUMENT AND DEPOSITION
SUBPOENAS TO THE DEBTOR, THE EMERGENCY
MANAGER, AND CERTAIN OF THE DEBTOR'S ADVISORS
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004

Upon consideration of the motion (the "Motion")[1] of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (collectively, "Syncora") for entry of an order (this "Order") pursuant to rule 2004 of the Federal Rules of Bankruptcy Procedure authorizing the Rule 2004 Discovery, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the Motion being adequate and appropriate under the particular circumstances; and a hearing having been held to consider the relief requested in the Motion (the "Hearing"); and upon consideration

---

[1] Capitalized terms used but otherwise not defined herein shall have the meaning set forth in the Motion.

of the record of the Hearing and all proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor, its creditors, and other parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1. The Motion is granted in its entirety as set forth herein.

2. The Debtor is directed to produce those documents identified on <u>Exhibit A</u> on or before November ___, 2013 in the manner and format in manner and format in which those documents are maintained in the City's records.

3. Syncora is authorized to examine the City on November ___, 2013 regarding the process the City employed to solicit, review, negotiate, and make determinations, as well as the substance of the City's negotiations, analyses, and decision making, about all DIP Proposals submitted to the City and the nature and substance of the City's communications with the City Council regarding the Barclays' DIP, including the City's compliance with PA 436.

4. Syncora may file additional motions seeking authority to obtain discovery under Rule 2004 from other entities or individuals.

5. This Court shall retain jurisdiction to resolve any disputes arising from or related to this Order, and to interpret, implement, and enforce the provisions of this Order.

**IT IS SO ORDERED.**

                                                _____
STEVEN W. RHODES
United States Bankruptcy Judge

# Exhibit A

## DEFINITIONS

A. The term "City" means Detroit, Michigan.

B. The term "EM" means the emergency manager of the City appointed pursuant to PA 436.

C. The term "DIP Solicitation Process" means the process under taken by the City and its advisors to request and solicit proposals from Potential DIP Lenders for a DIP Loan.

D. The term "DIP Loan" means the debtor in possession financing sought by the City through the DIP Solicitation Process.

E. The term "DIP Negotiation" means the conversations, negotiations, and interactions with parties participating in the DIP Solicitation Process intended to lead to an acceptable proposal for a debtor in possession financing facility.

F. The term "PA 436" means Michigan Public Act 436 of 2012.

G. The term "PA 436 Compliance Process" means the steps taken by the City, the City's advisors, and the EM to comply with section 19(2) of PA 436, which requires the EM, before authorizing the borrowing of money, to submit the terms of the proposed borrowing of money to the governing body of the local government, which shall then have 10 days from the date of submission to approve or disapprove the borrowing.

H. The term "Detroit Post Petition Financing Term Sheet" means the proposed term sheet circulated by the City to Potential DIP Lenders in connection with the DIP Solicitation Process.

I. The term "Potential DIP Lender(s)" means those parties to whom the Detroit Post Petition Financing Term Sheet was circulated.

J. The term "Document(s)" shall be interpreted in the broad and liberal sense and means written, typed, printed, recorded, graphic, or photographic matter or any other medium upon which intelligence or information can be recorded, stored, or retrieved, however produced or reproduced, of any kind and description, and whether an original, master, duplicate, or copy, including, but not limited to, paper, notes, accounts, books, journals, advertisements, catalogs, manuals, publications, correspondence, cablegrams, mailgrams, telegrams, memoranda, letters, documents, communications, including interoffice and intra-office communications, reports, studies, analyses, pamphlets, calculations, projections, contracts, charts, graphs, plans, specifications, drawings, sketches, surveys, agreements, working papers, corporate records, minutes of committee meetings, books of account, ledger books, notebooks, vouchers, bank checks, cashier's checks, receipts for cashier's check, canceled checks, check stubs, bills, receipts, invoices, delivery tickets, bills of lading, time sheets, desk calendars, appointment books, log books, diaries, diary entries, photographs, microfilm, microfiche, and

2

notes, minutes, transcriptions, or sound recordings of any conversations, negotiations, meetings, or conferences, conducted either in person or by telephone, or things similar to any of the foregoing, and all other papers, writings, or physical things containing information, including data compilations from which information can be obtained by detection devices, and including preliminary drafts of or marginal notes appearing on any document, however denominated or described.

  K. The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make each particular request inclusive rather than exclusive.

  L. The term "relating to" means in whole or in part and directly or indirectly relating to, pertaining to, connected with, concerning, commenting on, referring to, responding to, showing, evidencing, describing, analyzing, regarding, reflecting, or constituting.

## INSTRUCTIONS

  1. All documents should be produced in the manner and format in which they are kept. Thus, to the extent any of the Documents listed below are kept or available in electronic format, such Documents should be produced in their native and original electronic format. Moreover, to the extent financial records are maintained in electronic format, those files should be provided in one of the

following formats: Microsoft Excel, Microsoft Access, or CSV (Comma Delimited Text).

2. These requests encompass all documents in the Debtor's possession, custody, or control, whether or not such documents were prepared by or for the Debtors. Where documents in the Debtor's possession, custody, or control are requested or inquired of, such request or inquiry includes documents in the possession, custody, or control of each of the Debtor's employees, agents, accountants, attorneys, auditors, representatives, consultants, advisors, all other persons or entities acting or purporting to act on behalf of the Debtor, and any other persons or entities from which the Debtor could obtain documents.

3. If the Debtor contends that no documents exist relating to all or part of a request, the Debtor shall state this contention and respond as fully as possible to all parts of the request for which documents exist.

4. If the Debtor claims that any privilege or protection excuses production of any document or part thereof, the Debtor must expressly make such claim in writing and provide a general description of the categories of documents being withheld and the basis for doing so, sufficient in detail for Syncora to determine whether there is an adequate basis for invoking privilege or protection.

5. In the event that any document covered hereunder has been destroyed, discarded, or lost, the Debtors shall inform the Committee of this in writing and

provide a general description of the categories of documents destroyed or lost and the circumstances of their destruction or loss.

6. If any document cannot be produced in full, it shall be produced to the maximum extent possible and the Debtors shall specify in writing the reasons for their inability to produce the remainder.

7. Each document is to be produced with all non-identical copies and drafts thereof in their entirety without abbreviation or redaction (other than for a claim of privilege consistent with the Instructions herein).

8. Unless stated otherwise, the time period applicable to the Documents called for is from [DATE], through the date of the document requests, subject to the Debtors' ongoing obligation to supplement responses under the applicable rules.

## **MATTERS UPON WHICH TESTIMONY IS REQUIRED**

Syncora requires testimony from the City's identified witness or witnesses regarding each of the topics identified in the following document requests.

A. **DIP SOLICITATION PROCESS:** The following Documents relating to the DIP Solicitation Process:

1. All Documents relating to any communication between the City, the City's advisors, the EM, or any other individual or entity regarding the need and/or purported uses for the DIP Loan.

2. All Documents and communication relating to the terms of the Detroit Post Petition Financing Term Sheet that was circulated to Potential DIP Lenders.

3. All Documents containing any opinion, study, inspection, or analysis of the necessity of the DIP Loan.

4. All Documents relating to, supporting, or explaining any changes in the Detroit Post Petition Financing Term Sheet before it was circulated to Potential DIP Lenders.

B. **DIP NEGOTIATION:** The following Documents relating to the DIP Negotiation:

5. All Documents and communication relating to the terms of any DIP Proposal.

6. All Documents and communications relating to, supporting, or explaining the City's reasoning for pursuing or not pursuing negotiations with a Potential DIP Lender, including any analysis of the perceived economic, political, or social benefits or drawbacks of any DIP Proposal.

7. All Documents and communication relating to, supporting, or explaining any changes made to the DIP Proposals after their initial submission by the Potential DIP Lenders.

8. All Documents and communication relating to the Barclay's DIP.

**C.  PA 436 COMPLIANCE PROCESS: The following Documents relating to the City's compliance with PA 436 relating to the DIP Loan:**

9. All Documents sent to the City Council relating to the Barclays' DIP.

10. All Documents and communication between the City, its advisors, and the City Council relating to the process by which the City negotiated with Potential DIP Lenders, evaluated the DIP Proposals, and selected the Barclays' DIP.

11. All Documents and communication between the City, its advisors, and the City Council relating to the substance of the City's negotiations, analyses, and decision making about all DIP Proposals, including the Barclays' DIP.

12. All Documents and communication between the City, its advisors, and the City Council regarding the merits and perceived benefits of the Barclays' DIP.