UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


IN RE:  CITY OF DETROIT,       .        Docket No. 13-53846
        MICHIGAN,              .
                               .        Detroit, Michigan
                               .        October 21, 2013
                 Debtor.       .        10:00 a.m.
. . . . . . . . . . . . . . . .


        HEARING RE. PRETRIAL CONFERENCE RE. ELIGIBILITY
            BEFORE THE HONORABLE STEVEN W. RHODES
            UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:        Jones Day
                       By:  BRUCE BENNETT
                       555 South Flower Street
                       Fiftieth Floor
                       Los Angeles, CA  90071-2452
                       (213) 243-2382

                       Jones Day
                       By:  GEOFFREY S. IRWIN
                       51 Louisiana Avenue, N.W.
                       Washington, D.C.  20001-2113
                       (202) 879-3768

                       Pepper Hamilton, LLP
                       By:  ROBERT S. HERTZBERG
                       4000 Town Center, Suite 1800
                       Southfield, MI  48075-1505
                       (248) 359-7333

For the State of       State of Michigan
Michigan:              Michigan Department of Attorney General
                       By:  MATTHEW SCHNEIDER
                       P.O. Box 30754
                       Lansing, MI  48909
                       (517) 241-8403

APPEARANCES (continued):

```
For AFSCME,          Lowenstein Sandler, LLP
AFL-CIO, and Sub-    By:  SHARON L. LEVINE
Chapter 98, City     65 Livingston Avenue
of Detroit           Roseland, NJ  07068
Retirees:            (973) 597-2374

For Detroit          Clark Hill, PLC
Retirement Systems-  By:  ROBERT D. GORDON
General Retirement   151 South Old Woodward, Suite 200
System of Detroit,   Birmingham, MI  48009
Police and Fire      (248) 988-5882
Retirement System
of the City of
Detroit:

For the Detroit      Erman, Teicher, Miller, Zucker &
Fire Fighters           Freedman, P.C.
Association, the     By:  BARBARA A. PATEK
Detroit Police       400 Galleria Officentre, Suite 444
Officers Associa-    Southfield, MI  48034
tion and the         (248) 827-4100
Detroit Police
Lieutenants &
Sergeants
Association:

For the Inter-       Cohen, Weiss & Simon, LLP
national Union,      By:  BABETTE A. CECCOTTI
UAW:                      PETER D. DECHIARA
                     330 West 42nd Street, 25th Floor
                     New York, NY  10036-6976
                     (212) 356-0227

For Detroit          Silverman & Morris, PLLC
Retired City         By:  THOMAS R. MORRIS
Employees            30500 Northwestern Highway, Suite 200
Association,         Farmington Hills, MI  48334
Retired Detroit      (248) 539-1330
Police and Fire
Fighters Associa-    Lippitt O'Keefe, PLLC
tion, Shirley V.     By:  RYAN C. PLECHA
Lightsey, and        370 East Maple Road, Fl. 3
Donald Taylor:       Birmingham, MI  48009
                     (248) 646-8292
```

APPEARANCES (continued):

```
For the Official      Dentons
Committee of          By:  CLAUDE D. MONTGOMERY
Retirees:                  ANTHONY B. ULLMAN
                      1121 Avenue of the Americas
                      New York, NY  10020-1089
                      (212) 632-8390

                      Brooks, Wilkins, Sharkey & Turco, PLLC
                      By:  MATTHEW E. WILKINS
                      401 South Old Woodward, Suite 400
                      Birmingham, MI  48009
                      (248) 971-1711

For Retired           Strobl & Sharp, PC
Detroit Police        By:  LYNN M. BRIMER
Members               300 East Long Lake Road, Suite 200
Association:          Bloomfield Hills, MI  48304-2376
                      (248) 540-2300

For the Flowers       Law Offices of William A. Wertheimer
Plaintiffs:           By:  WILLIAM WERTHEIMER
                      30515 Timberbrook Lane
                      Bingham Farms, MI  48025
                      (248) 644-9200

For Ambac             Schafer and Weiner, PLLC
Assurance Corp.:      By:  DANIEL J. WEINER
                      40950 Woodward Avenue, Suite 100
                      Bloomfield Hills, MI  48304
                      (248) 540-3340


Court Recorder:       Letrice Calloway
                      United States Bankruptcy Court
                      211 West Fort Street
                      21st Floor
                      Detroit, MI  48226-3211
                      (313) 234-0068

Transcribed By:       Lois Garrett
                      1290 West Barnes Road
                      Leslie, MI  49251
                      (517) 676-5092
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1          THE CLERK:  All rise.  Court is in session.  Please

2    be seated.  Case Number 13-53846, City of Detroit, Michigan.

3          THE COURT:  Good morning.  Our first order of

4    business is to admit a new attorney to the Bar of the Court.

5          MR. WILKINS:  Good morning, Judge Rhodes.  Matthew

6    Wilkins for the Retiree Committee.  Please meet Anthony

7    Ullman from the Dentons office in New York.

8          THE COURT:  Mr. Ullman.

9          MR. ULLMAN:  Good morning, your Honor.

10          THE COURT:  Welcome.  Are you prepared to take the

11    oath of admission to the Bar of the Court?

12          MR. ULLMAN:  I am, your Honor.

13          THE COURT:  All right.  Please raise your right

14    hand.  Do you affirm that you will conduct yourself as an

15    attorney and counselor of this Court with integrity and

16    respect for the law; that you have read and will abide by the

17    civility principles approved by the Court; and that you will

18    support and defend the Constitution and laws of the United

19    States?

20          MR. ULLMAN:  I do.

21          THE COURT:  Welcome again.

22          MR. ULLMAN:  Thank you, your Honor.

23          THE COURT:  We'll take care of your paperwork for

24    you.  You're all set.

25          MR. ULLMAN:  Thank you very much, your Honor.

```
1           MR. MONTGOMERY:  Your Honor, matter of personal
2    privilege, I'd like to yield my seat at the pretrial
3    discussion to Mr. Ullman.
4           THE COURT:  Okay.  That's fine.  I think we should
5    begin with appearances for this pretrial conferences.
6    Counsel, please.
7           MR. IRWIN:  Good morning, your Honor.  Geoff Irwin
8    from Jones Day on behalf of the city.
9           THE COURT:  Okay.
10          MR. HERTZBERG:  Your Honor, Robert Hertzberg, Pepper
11   Hamilton, on behalf of the city.
12          MR. BENNETT:  Bruce Bennett, Jones Day, on behalf of
13   the city.
14          MS. LEVINE:  Good morning, your Honor.  Sharon
15   Levine, Lowenstein Sandler for AFSCME.  Thank you.
16          MR. ULLMAN:  Your Honor, Anthony Ullman for the
17   Retiree Committee from Dentons.
18          MR. GORDON:  Good morning, your Honor.  Robert
19   Gordon of Clark Hill on behalf of the Detroit Retirement
20   Systems.  Also in attendance with me is Ron King from Clark
21   Hill, Shannon Deeby, and I believe Jennifer Green is going to
22   be here.  She's stuck in security right now.
23          THE COURT:  Okay.
24          MR. GORDON:  Thank you.
25          MS. PATEK:  Your Honor, Barbara Patek and Julie
```

1  Teicher of Erman Teicher for the Detroit Public Safety

2  Unions.

3        MR. DECHIARA:  Good morning, your Honor.  Peter

4  DeChiara from the law firm of Cohen, Weiss & Simon, LLP, for

5  the International Union UAW.

6        MR. MORRIS:  Good morning, your Honor.  Thomas

7  Morris of Silverman & Morris, also Ryan Plecha of Lippitt

8  O'Keefe for the Retiree Association parties.

9        MR. MONTGOMERY:  Your Honor, Claude Montgomery from

10  Dentons US, LLP, rounding out the appearances for the Retiree

11  Committee.

12        MS. BRIMER:  Good morning, your Honor.  Lynn M.

13  Brimer appearing on behalf of the Retired Detroit Police

14  Members Association.

15        MR. WERTHEIMER:  Good morning, your Honor.  William

16  Wertheimer on behalf of the Flowers plaintiffs.

17        MR. SCHNEIDER:  Good morning.  Matthew Schneider,

18  Michigan Department of Attorney General, on behalf of the

19  state.

20        MR. WEINER:  Good morning, your Honor.  Dan Weiner,

21  Schafer & Weiner, counsel for Ambac.

22        THE COURT:  Thank you, counsel.  The Court reviewed

23  the joint final pretrial order.  Thank you very much for your

24  cooperation in preparing that.  It looks perfectly acceptable

25  to me with the exception of the exhibit numbering.  Is that

1　being taken care of by somebody?

2　　　　MR. IRWIN:  Yes, your Honor.  We intend to submit a

3　modified pretrial order, and we will take care of that and a

4　number of other administrative or other nits that have been

5　pointed out to me.  This came together very quickly, and

6　so --

7　　　　THE COURT:  Okay.

8　　　　MR. IRWIN:  -- we'll try to fix as much as we can.

9　I think we'll try to do that today.  It would certainly be no

10　later than tomorrow.

11　　　　THE COURT:  Okay.  That's fine.  So what I would

12　like to discuss with you is how long this trial might take.

13　Anybody have any thoughts on that question?  It's important

14　because, as you all know, we are visitors here in this

15　courthouse, and so we need to make arrangements for

16　courtrooms to the extent we can foresee the need.

17　　　　MR. IRWIN:  Certainly, your Honor.  This is

18　something that we have not yet engaged objectors on and had a

19　discussion that I can really use to predict how long it will

20　take.  I will tell you that we will try to put in a tight

21　case.  We can't control cross-examination.  I would think

22　that in order to put on the city's case, we would expect to

23　be done on Friday at the latest.  If crosses are crisp and we

24　can get through issues and there are a lead cross-examiner

25　and perhaps some follow-ups, then I think that we could

1 probably get our case in by the end of the day Friday, again,

2 at the latest.

3 THE COURT: Anyone else have any thoughts on this

4 question, please?

5 MS. LEVINE: Your Honor, for the objectors, we've

6 had some conversations along similar lines, so the city's

7 timeline for getting its case on makes sense. Each of the

8 objectors probably has one, maybe two witnesses, but they

9 would be short depending upon whether or not your Honor

10 accepts declarations and/or quick direct. Then it would be

11 subject to cross. In addition to that, there will be some

12 videotape depositions, which are still under discussion but

13 we believe would likely come in at the end of the case, so

14 whether and to what extent your Honor needs a full courtroom

15 for that would be up to the Court. Thank you.

16 THE COURT: Since you raise the issue of

17 declarations, I suppose if you all agree to it I would accept

18 it. I am not, however, a fan of that process. My preference

19 is for live testimony of direct examination, but, like I say,

20 if you all stipulate to it and insist upon it, I won't stand

21 in the way.

22 MR. IRWIN: Your Honor, it is our intent to bring

23 all of our witnesses live. The witnesses who submitted

24 declarations in connection with the opening motion will all

25 be here. They will all give fulsome direct testimony. I

1   believe it will be consistent with the declarations that were

2   submitted, and if there is some utility to admitting

3   declarations in addition to the live testimony, particularly

4   insofar as perhaps shortening some of the witnesses who

5   objectors might call and the cross that's needed on them, we

6   would certainly be willing to consider that, and we'll work

7   with objectors on that, but our witnesses are coming live.

8           THE COURT:  Okay.

9           MR. ULLMAN:  Your Honor, one question we had is how

10  you wanted to handle things in terms of the playing of video

11  depositions and transcripts.  Did you want that played live

12  in the courtroom and, to the extent there are transcripts,

13  read with question and answers as opposed to a submission to

14  you?

15          THE COURT:  No.  My preference on both of those is

16  for you all to allow me to do that privately in chambers.

17          MR. ULLMAN:  Very good.  Thank you.

18          MR. SCHNEIDER:  Your Honor, on behalf of the State

19  of Michigan, we're still having some discussions because it

20  does go to the issue of timing as to whether the governor's

21  testimony is actually necessary.  As you know, both the

22  governor and the treasurer, they gave videotape depositions.

23  We do not believe the governor should testify because it's

24  unnecessary, so if he is not testifying, it would speed up

25  the trial.

1      THE COURT:  Okay.  Have the objectors made any

2   decision on this issue, anybody?

3      MR. DECHIARA:  Peter DeChiara for the UAW, your

4   Honor.  The UAW and the Flowers plaintiffs have issued trial

5   subpoenas upon Governor Snyder, Treasurer Dillon, and Richard

6   Baird.  We have not heard back from the state as to whether

7   the state is going to -- and we have not received any motion

8   from the state opposing the subpoenas or resisting the

9   subpoenas, so our plan is to go ahead and have them testify

10   live at trial.

11      THE COURT:  Okay.  So did anyone actually sit down

12   and count up the number of witnesses on the objectors' side,

13   an approximate count?  Anybody?

14      MR. ULLMAN:  I think we -- the answer is we don't

15   know, but what we can do is do a count and promptly inform

16   the Court.

17      THE COURT:  Let's just take a brief pause and ask

18   one of you to just total it up as best you can, you know,

19   give or take a few.  And I'm not going to hold you to a

20   number.  I just want to get an approximate number of

21   witnesses that you're talking about.

22      MR. IRWIN:  Your Honor, if I may, while --

23      THE COURT:  Hang on.

24      MR. IRWIN:  Yeah.

25      THE COURT:  I want to get this number and have them

1    focus on that, and then I'll hear from you.  Sir?

2         MR. ULLMAN:  Your Honor, for the live witnesses, the

3    count I came up with is 16, possibly 15.  That includes the

4    state witnesses.  Some of them will be short.  And this

5    excludes deposition or witnesses who come in by transcript.

6         THE COURT:  Okay.  Thank you very much.  Sir?

7         MR. IRWIN:  Your Honor, I was simply going to add at

8    the end of Mr. DeChiara's statement about the state witnesses

9    and the need for live testimony, the city has offered to have

10   the entire depositions of each of those three witnesses

11   admitted without objection, and we are still willing to do

12   that.  I don't know if there's an opportunity to do that, but

13   we'd work with objectors to get that accomplished.

14        MR. SCHNEIDER:  Just to be clear, your Honor, for

15   the record, the state is now making an oral motion to make

16   sure that the depositions are the ones that are played of the

17   governor, of the treasurer, and Mr. Baird.  We can supplement

18   that in writing, but I thought since we were all here, I

19   would make that motion now.

20        THE COURT:  You mean in lieu of live testimony?

21        MR. SCHNEIDER:  That's correct, your Honor.

22        THE COURT:  That's not exactly what the Federal

23   Rules of Civil Procedure or of Evidence contemplate, is it?

24        MR. SCHNEIDER:  I'd be happy to put it in writing,

25   but I wanted to -- just because I was here, the parties are

1    here, I wanted to bring that to the Court's attention.

2         THE COURT:  The rules contemplate the use of

3    deposition testimony when witnesses are not available, so why

4    should there be a different process here?

5         MR. SCHNEIDER:  Well, one thing we would like to

6    know is if the objectors want the governor as a witness, we

7    would --

8         THE COURT:  I asked that question and thought I

9    heard the answer was yes.

10        MR. SCHNEIDER:  I'm sorry.  If the governor -- if

11   the objectors want the governor as a witness, then we would

12   want direction as to when would we be doing this in the trial

13   because --

14        THE COURT:  Okay.  That's a fair question.

15        MR. SCHNEIDER:  Yes.

16        THE COURT:  Yeah.  Can anyone address that?

17        MR. DECHIARA:  Peter DeChiara, your Honor.  We

18   recognize that the governor is a very busy man, as are Mr.

19   Dillon and Mr. Baird, and we would be perfectly happy to

20   accommodate their schedule so that they testify during the

21   trial at a time that is convenient to them and makes sense to

22   the Court, so we're certainly not going to make any

23   unreasonable demands to, for example, have the governor of

24   the state sit here for the duration of the trial.

25        THE COURT:  All right.  Let me just ask the two of

1    you to try to work this out in a way that makes sense. I'm
2    sure you'll be able to.

3    MR. DECHIARA: Okay. Your Honor, if the state is
4    making a motion to oppose having the governor and the
5    treasurer and Mr. Baird appear live at trial, we would ask
6    that that motion be in writing, we'd be given proper time to
7    respond in writing, and that it be done according to the
8    court rules. Thank you.

9    THE COURT: All right. The only other issue I
10   wanted to raise is whether or not to impose time limits on
11   the presentation of evidence by each side, so let me ask you
12   what your views on that should be and if it is decided to do
13   that, how much time is appropriate on each side.

14   MR. IRWIN: Your Honor, we have given this a little
15   bit of thought, and consistent with what I indicated when you
16   asked for a preview of how long our case would take to put
17   in, it would be our hope and expectation that the entire case
18   could be completed by Tuesday of the next week, that we would
19   not need to spill into the additional time that the Court had
20   allocated. I think we have a three-day break after Tuesday
21   and then we return the following week. I suspect we could
22   probably, if we had that type of time constraint, work out
23   among ourselves a good allocation of time. I think we would
24   be done, as I indicated, by Friday, which I think, based on
25   what I know of the nature of the testimony that will come in

1  from the witnesses, even though it's a dozen or more, I think

2  that those can be accomplished in a very short period of

3  time.  The crosses would be very short, very tight.  I

4  suspect that there be some cumulative testimony that we

5  will need to work through but that the parties could work

6  through it and may need the Court's intervention at some

7  point, but I believe, based on what I understand the response

8  case to be in its entirety, even with the state witnesses

9  coming live, we should be able to get this done in the five

10  days that don't spill over into the second week.

11           MR. ULLMAN:  Your Honor, speaking for the committee,

12  when I heard the estimate that the city's case would take

13  through the end of Friday, my reaction was that was longer

14  than I had expected, so for the committee, I think we'd be

15  interested in talking about reasonable time lines, reasonable

16  time frame for the testimony.  To do that, we'd really have

17  to first confer with the city and understand exactly how long

18  they intended to put witnesses on, but I certainly would have

19  thought that we would have been done with the city's case

20  before the end of Friday.

21           THE COURT:  Um-hmm.  Okay.

22           MR. IRWIN:  If I may, just to be -- we would be done

23  much sooner than Friday.  I'm trying to allow for what I

24  can't control.  I have no idea how long cross will be on

25  someone like Mr. Orr.  If it -- if we are talking about the

1   city's affirmative case, we could probably be done in a day.

2   We might take some of Thursday.  We would be done very

3   quickly, but I just don't know what I don't know.

4         THE COURT:  Right.  One of the things I want to

5   control by imposing a time limit is the concern about

6   duplicate questioning on cross-examination.  Have you all

7   thought about how to deal with that question other than by

8   time limits, for example?

9         MS. LEVINE:  Your Honor, the objectors have started

10  coordinating and have put together an order where, for

11  example, AFSCME has agreed to go last so that if the

12  questions have already been asked, we don't have to ask

13  anything.  And the goal is -- and I think you've seen this in

14  the oral argument -- that we parse it together carefully

15  and --

16        THE COURT:  Um-hmm.

17        MS. LEVINE:  -- we don't overstep, so with the

18  Court's permission, we'd like to let that try without

19  imposing potentially artificial time limits that stop actual

20  questions from being asked once.

21        THE COURT:  And when you say "an order," you mean an

22  order of questioning?  That's what you mean?

23        MS. LEVINE:  Yes.

24        THE COURT:  Yeah.

25        MS. LEVINE:  Sequencing.

1      THE COURT:  All right.  Okay.  Well, I am pleased to

2  hear that everyone, at least at the outset, has the intent to

3  proceed here efficiently and crisply.  I commend you for

4  that.  It will, of course, remain to be seen whether this

5  intent actually gets executed or not, but in the

6  circumstances I'm feeling less inclined to impose actual

7  hours of time limits, so let me ask you to continue your

8  efforts to try to make this as efficient a process as

9  possible.  So that's really all that I thought was necessary

10  to discuss this morning, but I would like to turn the agenda

11  over to anyone to address any issues that you'd like to bring

12  up at this time.

13      MR. ULLMAN:  Your Honor, I just wanted to apprise

14  the Court that we have either filed or are in the process of

15  filing a motion in limine seeking to exclude any purported

16  expert evidence to the effect that the unfunded pension

17  liability is 3.5 billion, and I just wanted to let you know

18  that that either has been done or is in the works so that the

19  Court is aware of that, your Honor.

20      THE COURT:  Well, okay.  Thank you for that notice.

21  I will say for your -- that's okay.

22      MR. ULLMAN:  Apologize, your Honor.

23      THE COURT:  If you need to consult, I'll pause here.

24      MR. ULLMAN:  No, no.  I'm not sure if it's been

25  done, but it's being -- it's in process.

1    THE COURT:  Okay.  Obviously I can't control what

2  you file, so you file what you'd like to file.  I will tell

3  you, however, that I am not a fan of motions in limine.  Most

4  of the time when they are filed, in my experience, the

5  resolution of the motion has to await the trial process, and

6  it's more often than not not something that the Court can

7  clearly rule on in advance of the trial, but, like I say, if

8  this is something you feel the need to file, you file it.

9    MR. ULLMAN:  We did, your Honor, and I appreciate

10  that.  And one virtue is it's short.

11    THE COURT:  Okay.  That would be a virtue.  Is there

12  anything else that anyone would like to bring up today this

13  morning?

14    MR. GORDON:  I just want to ask a question, and I

15  apologize --

16    THE COURT:  Sir.

17    MR. GORDON:  -- your Honor.  Robert Gordon again.

18  Is there an agreed upon order for the witnesses that the city

19  is going to put on?  I'm not sure if that was clear from the

20  pretrial order.

21    THE COURT:  Um-hmm.  Can you share with everyone

22  here what the order of your witnesses will be?

23    MR. IRWIN:  I can, your Honor, and I appreciate from

24  Mr. -- the order of witnesses was slightly impacted by some

25  discussions we were having on a few exhibits, and so we don't

 1  need to call a couple of custodial witnesses, which I think

 2  is in everyone's interest.  Yes.  Our order of witnesses will

 3  be -- we will start with Mr. Malhotra from Ernst & Young.  He

 4  submitted a declaration, and I think the Court is familiar

 5  with Mr. Malhotra.  He will be followed by Mr. Moore, who

 6  also submitted a declaration, who will be followed by Mr.

 7  Buckfire, Ken Buckfire.  Then he will be followed by Police

 8  Chief Craig, and he will be followed by Mr. Orr, the

 9  emergency manager, and that's the order that we're planning

10  to call.

11          THE COURT:  All right.  Thank you.

12          MR. IRWIN:  The other -- your Honor, just a few

13  housekeeping matters and just some direction from the Court

14  perhaps.  As I indicated, we will be submitting a modified

15  pretrial order consistent with the Court's request for

16  exhibit ranges from the objectors and other clean-up that we

17  needed to do from last week.  There are -- and I wanted to

18  alert the Court to this.  There are ongoing depositions.

19  There are still a few to be concluded, but there were

20  depositions that took place either in the middle or through

21  the end of last week and even over the weekend that the

22  designations or import of which could not have been

23  incorporated into the pretrial order --

24          THE COURT:  Um-hmm.

25          MR. IRWIN:  -- on Thursday, so there may be

1   additions to the pretrial order as a consequence, and there

2   may even need to be some further supplementation in the form

3   of --

4                THE COURT:  Um-hmm.

5                MR. IRWIN:  -- supplemental dep designations and the

6   like that just could not have been done before these things

7   were required to have been submitted.  And I think that may

8   be true on both sides.

9                THE COURT:  Um-hmm.

10               MR. IRWIN:  And we'll work together on that.

11               THE COURT:  Can I suggest that on that issue that

12  you hold up the filing of any such supplementation until the

13  end of the trial so that it only has to be done once?

14               MR. IRWIN:  Thank you, your Honor.

15               THE COURT:  Is that okay?

16               MR. IRWIN:  Yes.  As a matter of procedure, your

17  Honor, we have made disclosures to each other in advance of

18  the pretrial order, particularly on exhibits and witnesses.

19  There are a number of exhibits on both sides to which there

20  are no objections.  Does the Court have a preference as to

21  how those objections -- or how those exhibits can be moved

22  into the record?

23               THE COURT:  Oh, I meant to mention this before, and

24  thank you for bringing it up.  It is the Court's practice to

25  enter an order admitting into evidence today or tomorrow

1  those exhibits as to which your joint final pretrial

2  statement shows there's no objection, and we will identify

3  those by number in the order.

4         MR. IRWIN:  Thank you, your Honor.

5         THE COURT:  It is not my usual practice to rule on

6  objections in advance of trial and to just deal with them

7  when and if there is a motion to admit the document and an

8  objection stated at that time.

9         MR. IRWIN:  Your Honor, in that regard, in terms of

10  just the mechanics of witness examination -- and we've had

11  people into court and we've talked about technology, and I

12  think we're pretty set up in that regard.  It is our

13  expectation that we will have complete exhibit books for the

14  witnesses.  We do not intend to hold the witness books.

15  That's cumbersome in --

16         THE COURT:  Right.

17         MR. IRWIN:  -- this case, and so many of the

18  documents are not objected to.

19         THE COURT:  Right.

20         MR. IRWIN:  We'll have books ready for everyone

21  there.

22         THE COURT:  Good.

23         MR. IRWIN:  Does the Court have a preference in

24  terms of once a final set of deposition designations is

25  agreed upon, how those are submitted?  We can submit, you

1  know, with color-coded designations or counter-designations

2  from the two sides.  Does the Court have a preference in that

3  regard, or would the Court just prefer that we work that out

4  together?

5          THE COURT:  Again, whatever you work out and

6  whatever you all think will be the most efficient way to do

7  that is fine with me.

8          MR. IRWIN:  Okay.

9          THE COURT:  I'm completely flexible on that issue.

10          MR. IRWIN:  Okay.  The last point, your Honor, the

11  city is prepared -- and we had made exhibit exchanges.  The

12  city is prepared to provide its now premarked set of trial

13  exhibits to objectors.  I think the Retiree Committee has --

14  we have not -- we have not provided anyone copies yet, but we

15  have them.  The Retiree Committee provided us with theirs

16  last night.  We still need those from other objectors and

17  something that we'll work through today, but we are at a

18  little bit of a disadvantage not having a full set of trial

19  exhibits from a number of the objectors yet, so we'll work on

20  that, but we really need those today because the disclosures

21  that were made early last week were sufficient for that

22  purpose, but we have to have -- we have to know exactly what

23  their exhibits correspond to in connection with putting the

24  final pretrial order in today.

25          THE COURT:  Does anyone object to providing sets of

1  exhibits to the city by, say, noon tomorrow?

2          MS. LEVINE:  Your Honor, that'll be fine because in

3  conferring with the Retirement System, it's our understanding

4  actually that all of the objectors forwarded their exhibits

5  to the Retirement System, who's just got better technology

6  than some of the rest of us, and that they have actually

7  shared a global list with the city's counsel.

8          THE COURT:  Okay.

9          MR. ULLMAN:  Your Honor, I was asked to find out

10  whether there's a secure spot in the courtroom where the

11  exhibits can be stored.

12          THE COURT:  You mean like for overnight and --

13          MR. ULLMAN:  Yeah.

14          THE COURT:  -- breaks?

15          MR. ULLMAN:  Yeah, in terms of making sure

16  everything is kept in place and nothing happens.  We all know

17  where everything is.

18          THE COURT:  Well, is it your concern that locking

19  the courtroom overnight is not sufficient for security --

20          MR. ULLMAN:  Actually --

21          THE COURT:  -- because that is what happens?

22          MR. ULLMAN:  Having seen the security people in

23  place here, I think that would actually work very well

24  because --

25          THE COURT:  All right.

1    MR. ULLMAN:  -- they're extremely vigilant.

2    THE COURT:  All right.

3    MR. ULLMAN:  And then the last question --

4    THE COURT:  If you discover at some point that you

5  need more security than that for whatever reason, please let

6  me know, but at this point my preference would be to say that

7  locking the courtroom is what we can provide for you.

8    MR. ULLMAN:  Okay.  Thank you.  And then the last

9  question I had, at least as I recall the pretrial order, each

10  objector is going to have a separate number series of

11  designations, and I was just wondering because it occurs to

12  me that a lot of the objectors may designate as an exhibit

13  the same document, so we'd have the same document potentially

14  coming in with six different numbers, whether we should try

15  to find some way for common documents.

16    THE COURT:  I'd sure like to see you minimize that.

17    MR. ULLMAN:  Okay.  So perhaps the objectors -- we

18  can work amongst ourselves to have like a common Objectors'

19  Exhibit 1, Exhibit 2, et cetera.

20    THE COURT:  Please.

21    MR. ULLMAN:  Okay.  We'll try, your Honor.  Thank

22  you.

23    THE COURT:  Yes.

24    MR. IRWIN:  One other question occurs to us in terms

25  of what the Court might expect in the form of openings and

1  closings.

2      THE COURT:  Well, I do like opening statements.  I

3  think they are a very important part of the trial process as

4  are closing arguments.  It is not my intention, so that you

5  can prepare properly for closing, to ask for post-trial

6  briefs, so you should focus the full thrust of your arguments

7  that you want to make to the Court that are based on the

8  evidence on your closing argument and not on any written work

9  product.

10      MR. IRWIN:  Okay.  Would we expect or anticipate

11 some break between when the last witness finishes his or her

12 testimony and the closings, or should we expect the closings

13 to occur promptly thereafter?

14      THE COURT:  If you have been as efficient at

15 presenting your testimony as you all are holding out you will

16 be, I am willing to be flexible on that, absolutely.

17      MR. IRWIN:  All right.

18      THE COURT:  We can work with that.

19      MR. IRWIN:  And my last question, your Honor, we've

20 talked about the city's witness sequence, which we just --

21 which I just described, but we haven't talked about a process

22 whereby the objectors would give us proper notice of the

23 sequence of their witnesses.  It would be great if they could

24 tell us now what the witnesses -- the identities and the

25 sequence of the witnesses are.  I'm not sure if they could,

1    but at a minimum there needs to be some process whereby we

2    can get the resources in place for cross-examination with

3    some notice.

4              THE COURT:  Is there any objection to this request?

5              MS. LEVINE:  No objection, your Honor.  The

6    logistical issue that we've been discussing over the weekend

7    and trying to grapple with is that a lot of our witnesses are

8    really just going to be here for an hour, maybe two, and they

9    have a lot of other things on their plate and travel

10   schedules, so we were hoping for a little bit of flexibility

11   just in terms of getting them here and back, but other than

12   that, we have no objection.

13             THE COURT:  Okay.  When can city's counsel expect

14   you to give them your best estimate of what the order of your

15   witnesses will be?

16             MS. LEVINE:  Maybe we can consult after this,

17   especially now that we have an understanding of what they

18   think their direct case will take.

19             THE COURT:  Okay.

20             MS. LEVINE:  Thank you.

21             THE COURT:  So I think they're willing to work with

22   you yet here today after court.  I have been asked to remind

23   you that in order for us to make a proper audio recording of

24   this, people who speak need to speak near microphones.  Now,

25   at this time, as you can see, we only have one per table, and

1   that's a problem.  I have asked that we get a second

2   microphone for each table, and we're still going to try to do

3   that, I think, but when you, for example, object in the heat

4   of the moment to some trial testimony that you don't think is

5   admissible, please try to be cognizant of this concern, as

6   challenging as it may be.  Anything further from anyone here

7   this morning?

8           Okay.  One more thing that I do need to bring to

9   your attention.  We have been requested to enforce certain

10  procedures for getting you all into the courtroom and out of

11  the courtroom that will minimize the disruption of other

12  trial proceedings on this floor, so I am requesting of you

13  and actually really instructing you to come up to the court

14  here on the 7th floor and to leave the court using the

15  Lafayette Street side elevators, not the Fort Street side

16  elevators, not to linger in the hall either before, after, or

17  during court at all, and while you are in the court to

18  maintain that same decorum of silence that you would if you

19  were in court and to try to hold your discussions among

20  yourselves till you get either into the elevator or all the

21  way down to the 1st floor.  And we will be in this courtroom

22  for this afternoon's oral arguments as well as all of court

23  on Wednesday, Thursday, and Friday.  Okay.  Anything further?

24          MR. GORDON:  Your Honor --

25          THE COURT:  Mr. Gordon.

1       MR. GORDON:  -- I just wanted to ask -- last night

2   the Retirement Systems did file a motion to compel, and I

3   believe there were other motions to compel that have been

4   filed over the weekend.  Do you anticipate addressing those

5   on Wednesday of this week?

6       THE COURT:  We entered an order granting your motion

7   for an expedited hearing.  You probably just didn't see it

8   yet.  It is scheduled for Wednesday first thing along with

9   the UAW.  Are there any others that I don't know about?  As

10  far as I know, there's just those two, and then if there's a

11  motion in limine, we'll probably set that for Wednesday

12  morning as well.

13      MR. GORDON:  All right.  Thank you, your Honor.

14      MR. WERTHEIMER:  Your Honor, the UAW and the Flowers

15  plaintiffs will be filing a motion today dealing with the

16  executive -- or excuse me -- the attorney-client privilege

17  issue relative to the state documents, so that'll be filed

18  today, and I just notify the Court of that because the Court

19  may want to schedule that.

20      THE COURT:  You'll be requesting an expedited

21  hearing --

22      MR. WERTHEIMER:  Yes, we will.

23      THE COURT:  -- on that as well, sir?

24      MR. WERTHEIMER:  Yes.

25      THE COURT:  All right.  Well, if you do get it in

1  today before the close of business at five, I will likely

2  grant an expedited hearing for Wednesday, but, you know, I do

3  have to be sensitive to the issue of adequate notice.

4          MR. WERTHEIMER:  And it does have to do with the

5  state witnesses, which are not going to come up from our

6  perspective until our case, so --

7          THE COURT:  All right.  Thank you.

8          MR. WERTHEIMER:  Thank you.

9          THE COURT:  Anyone have anything else?  Apparently

10  not.  All right.  We'll be in recess until one o'clock.

11          THE CLERK:  All rise.  Court is in recess.

12      (Proceedings concluded at 10:34 a.m.)

INDEX


<u>WITNESSES:</u>

None

<u>EXHIBITS:</u>

None


I certify that the foregoing is a correct transcript from the sound recording of the proceedings in the above-entitled matter.


/s/ Lois Garrett                    October 23, 2013
_____              _____
Lois Garrett