UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------------------------x
                                                      :
In re                                                 :    Chapter 9
                                                      :
CITY OF DETROIT, MICHIGAN,                            :    Case No. 13-53846
                                                      :
                 Debtor.                              :    Hon. Steven W. Rhodes
                                                      :
                                                      :
                                                      :
------------------------------------------------------ x

# DEBTOR'S MEMORANDUM REGARDING ADMISSIBILITY OF TESTIMONY REGARDING THE CITY'S FINANCIAL PROJECTIONS

1.  The City of Detroit files this memorandum in response to the Court's invitation to provide support for the proposition that a lay witness is permitted to testify to financial projections falling within the scope of his particularized knowledge.

2.  Courts routinely admit economic projections and forecasts through the testimony of non-expert witnesses who, through their own personal work experience, have acquired intimate familiarity with an entity's finances. For example, the Sixth Circuit has explained that:

> "[M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the

1

particularized knowledge that the witness has by virtue of his or her position in the business."

JGR, Inc. v. Thomasville Furniture Indus., Inc., 370 F.3d 519, 525 (6th Cir. 2004) (quoting Fed. R. Evid. 701, Advisory Committee Notes for the 2000 Amendments) (alteration in original). This rule is grounded on the idea that particularized knowledge about an entity's economic future can arise from personal experience with the entity's finances, as well as from the application of some technical skill that would implicate Rule 702. As the Third Circuit has explained, "[w]hen a lay witness has *particularized knowledge by virtue of her experience*, she may testify—even if the subject matter is specialized or technical—because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of rule 702 . . . ." Donlin v. Phillips Lighting N. Am. Corp., 581 F.3d 73, 81 (3d Cir. 2009) (emphasis added). Thus, "someone who has intimate and thorough knowledge of the business gathered from either a lengthy tenure or a position of authority" may testify about "future projections of a business" as a lay witness. Id.

       3.      Another Sixth Circuit case—Latifiver Liquidating Trust v. Clear Channel Commc'ns, Inc., 345 F. App'x 46 (6th Cir. 2009)—further illustrates this point. In Latifiver, the district court allowed a venture capitalist who investigated a company's finances and later became a member of its board to testify as a lay witness about the value that the company would have had were it

not for another company's breach of contract.  The Sixth Circuit upheld the district court's decision, explaining:  "As an investor who researched Eon's financial condition, and later as a member of Eon's board, [the investor] had personal, particularized knowledge of Eon's value," allowing him to testify "about [the company's] projected value."  Id. at 50–51;  see also Miss. Chem. Corp. v. Dresser-Rand Co., 287 F.3d 359, 362 (5th Cir. 2002) (allowing corporation's director of risk management to testify as to lost profits due to his particularized knowledge about the company's underlying accounts); Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd., No. 09-290, 2013 BL 108030, at *2 (W.D. Pa. Apr. 24, 2013) (holding that a lay witness's opinions "can include future predictions or opinions on what would have occurred under certain circumstances, as long as these opinions are based on personal knowledge"); In re LTV Steel Co., 285 B.R. 259, 265 (Bankr. N.D. Ohio 2012) (witness testifies as to projected cost of environmental liabilities based "upon his own knowledge and daily participation in the Debtor's affairs to prepare his projections").

    4.  In determining whether a lay witness can testify about economic projections based on particularized experience, what matters is the depth of the witness's personal knowledge, not whether the witness is an employee.  The touchstone of the analysis is whether the witness "has intimate and thorough knowledge of the business."  Donilon, 581 F.3d at 81.  In Tampa Bay Shipbuilding

& Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1220 (11th Cir. 2003), for example, a "consultant working with Tampa Bay in the areas of cost estimating, bid price review and contract administration" testified as a lay witness about whether the repair costs charged by Tampa Bay were reasonable for the industry. The Eleventh Circuit affirmed admission of the testimony; just like the testimony of Tampa Bay's officers (who also testified as lay witnesses in the case), his testimony was "based on particularized knowledge garnered from years of experience within the field" and detailed involvement with the ship in question. Id. at 1220, 1223.

5. Likewise, the Sixth Circuit also focuses on whether the witness's testimony is based on his "own independent knowledge or observations," not the way in which his bills are paid. JGR, Inc., 370 F.3d at 525 (quoting DIJO, Inc. v. Hilton Hotels Corp., 351 F.3d 679, 686 (5th Cir. 2003)). Thus, in JGR, the Sixth Circuit declined to allow an outside consultant retained shortly before litigation to testify about financial projections he made for the company because the consultant did not have the type of first-hand knowledge necessary to provide reliable forecasts. See 370 F.3d at 526.[1] In doing so, however, the court made

---

[1] As the court explained, the consultant was "first experience with JGR was . . . when he was contacted by JGR's trial counsel for the purpose of 'putting down on paper what the financial statements of [the business] would have looked like'" had the alleged breach of contract not occurred. Id. at 524 n.3.

clear that its ruling was not based on an artificial distinction between internal employees and outside contractors, explaining that a witness who is "employed by *or directly involved* in a business" may "have the type of first-hand knowledge necessary to provide reliable forecasts" about the business's future economic performance in the form of lay testimony. Id. (quoting DIJO, Inc., 351 F.3d at 686) (emphasis added).

6. That is the case here. Mr. Malhotra has been deeply and "directly involved" in the City's finances for the past two years, enabling him to offer lay testimony based on his own "particularized knowledge" as to whether the City will be able to pay its bills as they come due in the current fiscal year. Id. The City hired Mr. Malhotra in May 2011 as part of a team from Ernst & Young to help sort through its finances. As a result, Mr. Malhotra has personally gathered significant amounts of data and become very well-versed in the particular details of the City's revenue streams and financial commitments.[2] Based on his intimate knowledge of this information, Mr. Malhotra is prepared to offer fact-based projections regarding the City's finances. These projections do not depend upon complex mathematical modeling, but instead follow straightforwardly from the

---

[2] Cf. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1175 (3d Cir. 1993) ("It is logical that in preparing a damages report the author may incorporate documents that were prepared by others, while still possessing the requisite personal knowledge or foundation to render his lay opinion admissible under Fed. R. Evid. 701." (alteration and quotation marks omitted)).

data gathered. While long-term cash projections may require more complicated calculations and detailed assumptions, the 12-month projections at issue here follow closely from the City's actual cash flows over the prior two years. Indeed, to the extent Mr. Malhotra has brought to bear any expertise, it has only been to make his work "more efficient" in poring through and identifying relevant data. United States v. Madison, 226 Fed. Appx. 535, 544 (6th Cir. 2007) (quoting United States v. Hamaker, 455 F.3d 1316, 1331–32 (11th Cir. 2006)).

7. In any event, even if the Court does not permit Mr. Malhotra to provide lay testimony on the cash-flow forecasts he prepared for the City, the economic projections offered in Mr. Malhotra's testimony will still be probative of the City's financial condition. It is an historical fact that Ernst & Young provided these projections to the City, predicting that the City would face cash-flow insolvency in the immediate future. That historical fact is within the direct knowledge of Mr. Malhotra, and he is competent to testify to it.

8. Moreover, especially in light of the circumstances surrounding the creation of these projections, the projections themselves are reliable. These are not *post hoc* numbers prepared in anticipation of litigation. Instead, they stem from the City's decision to hire Ernst & Young more than two years ago in order to "get a handle on the City's liquidity position" for the troubles it faced at the time. (Malhotra Rough Transcript 196:2–3). Accordingly, the projections do not have

the circumstances that come with data produced with an eye toward a lawsuit, and, in any event, the objectors deposed the witness twice regarding the projections he performed on behalf of the City.

Dated: October 24, 2013

Respectfully submitted,

/s/ Bruce Bennett
Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY OF DETROIT