IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------------------- x
                                                       :

In re                                              :                 Chapter 9

CITY OF DETROIT, MICHIGAN,    :                 Case No. 13-53846

                 Debtor.                    :                 Hon. Steven W. Rhodes
------------------------------------------------- x

**DEBTOR'S BRIEF IN OPPOSITION TO MOTION FOR
LIMITED RELIEF FROM AUTOMATIC STAY[1]**

Although the Plaintiffs style their motion as one for "limited relief," in actuality, the motion requests complete relief from the automatic stay. The Plaintiffs ask that their potential class action lawsuit proceed as if the City's bankruptcy had not occurred. This is not "limited" relief; it is exemption from the automatic stay applicable to all lawsuits pending against the City. The Plaintiffs fail to identify any legitimate basis for this exemption or explain why their alleged general unsecured claims differ from the thousands of other general unsecured claims that will be resolved through the claims resolution process. Additionally, courts have consistently held that once a bankruptcy case is filed, judicial economy favors resolving potential class claims in the bankruptcy case rather than in a

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Debtor's Objection to Motion for Relief from the Automatic Stay.

separate class action lawsuit. A bankruptcy case consolidates all claims in one forum and allows class action claimants to file proofs of claim without counsel and at virtually no cost. It is, in reality, a more effective process than a class action lawsuit.

As set forth in the City's motion to establish a claims bar date, the City intends to file a motion seeking approval of an efficient process for liquidating prepetition claims asserted against the City. Allowing the Plaintiffs' lawsuit to proceed *ad hoc* outside the claims resolution process would undermine one of the most fundamental protections afforded to the City as a chapter 9 debtor. As of the Petition Date, approximately 700 lawsuits were pending against the City. *See* Creditor List at Schedule G. Absent the enforcement of the automatic stay, the City would be spending its already limited resources defending these cases rather than focusing its efforts and resources on its restructuring. The Plaintiffs fail to provide a basis to proceed outside of the normal claims resolution process and should not be afforded relief from the stay to do so.

I. **BACKGROUND**

    A. **The Lawsuit in the District Court**

On August 23, 2012, the Plaintiffs filed a complaint against the City of Detroit, acting through its Detroit Water and Sewerage Department, in the United States District Court for the Eastern District of Michigan ("District Court"),

commencing case number 12-13747 ("Lawsuit"). The Complaint (without exhibits) is attached as Exhibit 1. Paragraph one of the Complaint alleges that the Lawsuit involves a "class of all persons and entities which own dwellings or buildings with multiple units that are utilized for residential purposes or other entities that pay water and sewerage utility charges for such dwelling/buildings, such as, but not limited to apartment buildings, cooperatives, town houses and condominiums whom and which have been charged improper or commercial rates by the Detroit Water and Sewerage Department." Complaint ¶ 1. The relief sought in the Complaint includes class certification, money damages in an amount equal to the allegedly improperly paid commercial rates, and an incentive fee to the named plaintiffs. Complaint at 10.

On October 2, 2012, the City, represented by Clark Hill PLC ("Clark Hill"), filed its answer and affirmative defenses ("Answer"). The Answer is attached as Exhibit 2. In the Answer, the City denies that the Plaintiffs are entitled to the relief sought in the Complaint and raises numerous affirmative defenses, including *res judicata* based upon a prior settlement between many of the Plaintiffs and the City.

On January 16, 2013, the District Court entered its Order Setting Discovery and Motion Deadlines Relative to Class Certification and Setting Hearing Date ("Pre-Certification Scheduling Order"). The Pre-Certification Scheduling Order is attached as Exhibit 3. As set forth in the Pre-Certification Scheduling Order, at the

parties' request, the District Court divided the Lawsuit into pre-certification and post-certification stages. Pre-Certification Scheduling Order at 1. The Court established March 31, 2013 as the pre-certification discovery cutoff and June 4, 2013, as the deadline for the final brief on the Plaintiffs' motion for certification. *Id.* at 2.

On May 21, 2013, the City filed its motion to dismiss the Complaint ("Motion to Dismiss"). The Motion to Dismiss (without exhibits) is attached as Exhibit 4. As set forth in the Motion to Dismiss, the Plaintiffs' claims are barred by *res judicata* because they could and should have been asserted in an earlier equal protection action against the City. Further, the Plaintiffs' equal protection claim fails as a matter of law because the City has a rational basis for charging commercial water and sewerage rates to multiple family buildings with five or more units. Motion to Dismiss at 1.

On July 11, 2013, the District Court conducted a hearing on the Motion to Dismiss and the Plaintiffs' Motion to Certify Class. At the conclusion of the hearing, the District Court took both matters under advisement. On July 29, 2013, the District Court entered an order staying and administratively closing the Lawsuit due to the City's bankruptcy filing. In or around July 2013, Clark Hill was terminated as counsel due to the irreconcilable conflict caused by its representation

of the General Retirement System of the City of Detroit in connection with this chapter 9 case. Exhibit 5, Wolfson Dec. ¶¶ 6-7.

### B. The City's Bankruptcy Case

On July 18, 2013 (the "Petition Date"), the City filed a petition for relief in this Court, commencing the largest chapter 9 case in history.

On October 10, 2013, the City filed its Motion for Entry of Order Establishing Bar Dates for Filings Proofs of Claim ("Bar Date Motion"). [Dkt. No. 1146]. As set forth in the Bar Date Motion, consistent with this Court's order of October 8, 2013 [Dkt. No. 1114], the City intends to file a motion by November 12, 2013 for approval of an efficient process for liquidating prepetition tort claims asserted against the City. Bar Date Motion ¶ 25. The City anticipates that this process: (a) may involve the use of alternative dispute resolution practices, including mediation or consensual arbitration; and (b) would be implemented once the tort claims have been asserted through the proof of claims process. *Id*. The City also intends to establish a process for the assertion of other administrative expense claims at a future date if and to the extent necessary. *Id*. ¶ 13.

## II. ARGUMENT

Under the factors generally applied to stay motions in this circuit, there is no cause for relief from stay. Section 362(a) of the Bankruptcy Code provides in relevant part that:

> a petition filed under . . . this title . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 362(a). The Automatic Stay "is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." *Javens v. City of Hazel Park (In re Javens)*, 107 F.3d 359, 363 (6th Cir. 1997) (quoting H.R. REP. NO. 95-595, at 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6296).

Section 362(d) of the Bankruptcy Code authorizes a bankruptcy court to grant relief from the Automatic Stay in limited circumstances. *See* 11 U.S.C. § 362(d). In particular, section 362(d)(1) of the Bankruptcy Code provides that a party in interest may obtain relief from the Automatic Stay "for cause, including

the lack of adequate protection of an interest in property of such party in interest."
11 U.S.C. §362(d)(1).

"The Bankruptcy Code does not define 'cause' as used in [section] 362(d)(1). Therefore, under [section] 362(d), 'courts must determine whether discretionary relief is appropriate on a case by case basis.'" *Chrysler LLC v. Plastech Engineered Prods., Inc. (In re Plastech Engineered Prods., Inc.)*, 382 B.R. 90, 106 (Bankr. E.D. Mich. 2008) (*quoting Laguna Assocs. L.P. v. Aetna Casualty & Surety Co. (In re Laguna Assocs. L.P.)*, 30 F.3d 734, 737 (6th Cir. 1994)). The determination of whether to grant relief from the Automatic Stay "resides within the sound discretion of the Bankruptcy Court." *Sandweiss Law Center, P.C. v. Kozlowski (In re Bunting)*, No. 12-10472, 2013 WL 153309, at *17 (E.D. Mich. Jan. 15, 2013) (*quoting In re Garzoni*, 35 F. App'x 179, 181 (6th Cir. 2002)).

> To guide the bankruptcy court's exercise of its discretion . . . the Sixth Circuit identifies five factors for the court to consider: (1) judicial economy; (2) trial readiness; (3) the resolution of the preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; and (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors.

*Bunting*, 2013 WL 153309, at *17 (*quoting Garzoni*, 35 F. App'x at 181) (internal quotation marks omitted). In determining whether cause exists, however, "the

bankruptcy court should base its decision on the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code." *Plastech*, 382 B.R. at 106 (*quoting In re C & S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995)). In that regard, a primary purpose of bankruptcy is the centralization of claims against the debtor for determination by the bankruptcy court through the claims allowance process. *See In re Hermoyian*, 435 B.R. 456, 464 (Bankr. E.D. Mich. 2010) (stating that an underlying policy of the Bankruptcy Code is the provision of a centralized forum for claims resolution and orderly distribution of assets). Further, the automatic stay benefits the creditor body at large by ensuring their equal treatment and preventing a race to the courthouse. *See* H.R. REP. NO. 95-595, at 340 (1977) ("The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.").

    Here, consideration of these factors confirms that no cause (much less sufficient cause) exists to justify relief from the Automatic Stay to allow the Lawsuit to proceed. With respect to the first factor, the interests of judicial economy weigh heavily in favor of denying the Stay Relief Motion. Courts have generally held that once a bankruptcy case is filed, judicial economy favors resolving claims of any alleged class by the bankruptcy claim resolution process

rather than in a separate non-bankruptcy class action lawsuit. "[B]ankruptcy significantly changes the balance of factors to be considered in determining whether to allow a class action and . . . class certification may be less desirable in bankruptcy than in ordinary civil litigation." *TL Admin. Corp. v. Twinlab Corp. (In re Ephedra Prods. Liab. Litig.)*, 329 B.R. 1, 5 (S.D.N.Y. 2005) (citations and internal quotation marks omitted). As the *Ephedra* court noted, "[the] superiority of the class action vanishes when the 'other available method' is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost." *Id.* at 9; *see also In re Motors Liq. Co.*, 447 B.R. 150, 163-65 (Bankr. S.D.N.Y. 2011) (noting that "class litigation is inherently more time-consuming than the expedited bankruptcy procedure for resolving contested matters"). In short, the claims of the Plaintiffs and any other putative members of the class can be resolved most efficiently through the centralized claims resolution process, a fundamental aspect of bankruptcy, which affords both the claimant and debtor necessary protections.

With respect to the second factor, the Lawsuit is in its preliminary stages. The City's Motion to Dismiss and the Plaintiff's motion for class certification are pending. There is no timeline for a decision by the Court, and it is inevitable that

the non-prevailing party will seek to appeal an adverse ruling.[2] No trial date appears on the docket. Thus, the Lawsuit is not even advanced beyond the pre-certification stage, much less trial ready.

The third and fourth factors also weigh in favor of denying the Stay Relief Motion. The Court has not yet resolved the City's eligibility for relief in this chapter 9 case. Nothing could be more basic or preliminary to the ultimate outcome of this chapter 9 case. Further, as set forth in the Motion to Dismiss, the Plaintiffs have not demonstrated a likelihood of success on the merits. *See* Exhibit 4.

Additionally, the fifth factor weighs in favor of denying the Stay Relief Motion. If this Court were to allow the Plaintiffs to proceed with the Lawsuit, the City would be required to obtain new outside counsel to represent it in the Lawsuit. Wolfson Dec. ¶ 8. Hiring new outside counsel would cause the City to incur substantial expenses. *Id.* ¶ 9. New outside counsel would be required to, among other things, review the numerous motions, pleadings and discovery responses filed in the Lawsuit. *Id.* Further, if the Lawsuit were allowed to proceed and the

---

[2] The broad relief requested by the Plaintiffs to "liquidate the claim" would seemingly permit all necessary appeals or other motions until liquidation is achieved. At a minimum, it would be fundamentally unfair to permit a ruling on the class certification issue and, if certification is granted, deny the City the ability to further challenge such a ruling. Liquidating all of the claims in the bankruptcy process avoids all of these issues and both expedites the claims liquidation process and reduces its cost.

- 10 -
13-53846-tjt    Doc 1363    Filed 10/24/13    Entered 10/24/13 15:51:08    Page 10 of 13

Motion to Dismiss not granted by the District Court, the Lawsuit would consume large resources. *Id.* ¶ 10. As a potential class action, the Lawsuit is a significant matter requiring considerable legal expenses. *Id.* Requiring the City to defend the Lawsuit would distract its restructuring efforts, diverting its limited resources at a time when it is both working to negotiate and deliver a plan of adjustment quickly and engaged in a substantial amount of discovery and litigation (all on an expedited timeframe) arising in the bankruptcy case itself.

Perhaps sensing that the stay relief factors do not tilt in their favor, the Plaintiffs cite to *Urbain v. Knapp Brothers Manufacturing Company* for the proposition that this Court should "stay its actions." Stay Relief Motion ¶ 15. *Urbain*, however, did not involve the automatic stay or a bankruptcy case, but instead focused on the idea that if two separate but related Federal District Court actions are filed, the court in which the first action is filed can stay proceedings in the second until matters in the first proceeding are resolved. *Urbain v. Knap Bros. Mfg. Co.*, 217 F.2d 810 (6th Cir. 1954). That case is entirely different from the facts here, where a bankruptcy case has been filed and the Bankruptcy Code § 362 automatic stay is in effect. The entire purpose of the automatic stay is to provide debtors with breathing room and avoid the race to the courthouse. The Plaintiffs' assertion, which is essentially that they "won the race to the courthouse" and thus should be allowed to proceed is contrary to the Bankruptcy Code.

In short, allowing the Lawsuit to proceed undermines the protections of the automatic stay. The City sought relief under chapter 9 in part to obtain the "breathing spell" afforded by the automatic stay and the consequent protection from its creditors while it restructures its affairs and prepares a plan of adjustment. The City's finances would be further depleted and its personnel distracted from their mission to operate the City for the benefit of its citizens and restructure its affairs if it were denied this basic protection of chapter 9 and forced to defend itself against the Plaintiffs so early in the case. Accordingly, the overall goals of chapter 9 weigh heavily in favor of denying stay relief to the Plaintiffs.

## III. CONCLUSION

WHEREFORE, the City respectfully requests that this Court: (a) deny the Stay Relief Motion; and (b) grant such other and further relief to the City as the Court may deem proper.

Dated: October 24, 2013    Respectfully submitted,

By: /s/Timothy A. Fusco
Jonathan S. Green (P33140)
Stephen S. LaPlante (P48063)
Timothy A. Fusco (P13768)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420

Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com
fusco@millercanfield.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

ATTORNEYS FOR THE CITY OF DETROIT