**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| | ) | |

**THE MICHIGAN COUNCIL 25 OF THE AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, AFL-CIO AND SUB-CHAPTER 98, CITY OF DETROIT RETIREES' AMENDED RESPONSE AND OBJECTION TO THE DEBTORS' MEMORANDUM REGARDING ADMISSIBILITY OF TESTIMONY REGARDING THE CITY'S FINANCIAL PROJECTIONS**

The Michigan Council 25 of the American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees ("**AFSCME**") -- the representative of the interests of between at least forty and fifty percent (40-50%) of the about 11,943 retired City of Detroit (the "**City**" or "**Debtor**") non-uniformed retired employees (the "**Retired AFSCME Employees**"), and about 2,523 active City employees (the "**Active AFSCME Employee**", or about seventy percent (70%) of the active non-uniformed union-represented employees, and together with the Retired AFSCME Employees, collectively, the "**AFSCME Detroit Employees**") -- through its undersigned counsel, hereby submits this response and objection (the "**Objection**") to the *Debtor's Memorandum Regarding Admissibility of Testimony Regarding the City's Financial Projections* (the "**Memo**") [Docket No. 1352]. In support of this Objection, AFSCME respectfully states as follows:

1

1. The City is offering Mr. Guarav Malhotra ("**Malhotra**") as a non-expert, lay witness yet seeks to elicit his testimony in an unlimited fashion regarding any and all "financial projections" based on his "particularized knowledge" (Memo, pg. 1) akin to a business owner with intimate knowledge of a company testifying about lost profits. However, the language of Rule 701 and relevant case law bars the lay testimony of Malhotra on such subjects. Malhotra's testimony is not the same as a business owner or other insider with certain specific firsthand knowledge testifying about lost profits or business valuation, and even in such scenarios, courts limit such testimony where it strays beyond the realm of lay witness testimony.

2. The Sixth Circuit, citing Rule 701, has explained that a lay witness may only offer opinions that are: "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) **not based on scientific, technical, or other specialized knowledge within the scope of Rule 702**." *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 370 F.3d 519, 525 (6th Cir. 2004) (quoting Fed. R. Evid. 701) (emphasis added). The requirement that the testimony not be based on "specialized knowledge" demands that the lay opinion "'be the product of reasoning processes familiar to the average person in everyday life[.]'" *United States v. Kaplan*, 490 F.3d 110, 118 (2d Cir. 2007) (citation omitted); *see also LifeWise Master Funding v. Telebank*, 374 F. 3d 917, 929 (10th Cir. 2004) ("a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person") (citation omitted).

3. In fact, subsection (c) was added to Rule 701 "specifically to 'eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple

expedient of proffering an expert in lay witness clothing.'" *JGR, Inc.*, 370 F.3d at 525 (quoting Fed. R. Evid. 701, Advisory Committee Notes for the 2000 Amendments).

    4.    The Sixth Circuit and other courts have refused to allow lay opinion testimony due to the witness's lack of the requisite "particularized knowledge." For example, in *JGR*, a furniture retailer sued a manufacturer for breach of contract, claiming lost profits and loss of business value resulting from the alleged breach. The plaintiff called a certified public accountant and lawyer hired by plaintiff as a lay witness to testify about JGR's lost profits and business value. 370 F.3d at 524. However, (1) Gornik was not an owner, officer or director of JGR; and (2) "the information upon which he relied in making his calculations of lost profits and lost business value came primarily from [JGR's main principal]", not from his personal knowledge. *Id.* at 526. On those facts, the Court concluded that the witness "had no basis upon which to offer lay opinion testimony about JGR's lost profits or loss of business value, and the district court abused its discretion in admitting that testimony." *Id.* Indeed, the witness testified that his "role was not to verify a whole lot of things ... I only verified them against my own experience." *Id.* at fn.5. The Sixth Circuit cited at length to the opinion of the Fifth Circuit in *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679 (5th Cir. 2003), in which that court held that the district court had abused its discretion in permitting a 'financial consultant' to testify as a lay witness regarding the plaintiff company's lost profits. *JGR*, 370 F.3d at 525. The Sixth Circuit noted that the witness in *DIJO* "was the plaintiff's 'primary contact' at a commercial lending facility . . . [but] he had not served as an owner or officer of the plaintiff's company." *Id.* (citing *DIJO*, 351 F.3d at 685). The witness' "'opinion ... was based on preliminary income figures and other information that he had received from [the plaintiff's founder],' and his 'appraisal was not

3

based upon his own independent knowledge or observations.'" *JGR*, 370 F.3d at 525 (citing *DIJO*, 351 F.3d at 685-86).

5. The testimony offered here does not concern the value of a business or projected profit offered by an officer or owner of a business, and therefore is far afield from the *dicta* in *JGR* suggesting that lay testimony of "forecasts of future lost profits" might be permissible under the Advisory Committee Note to the 2000 Amendments to Rule 701 dealing with testimony by "the owner or officer of a business."

6. Moreover, even where a witness is testifying based on personalized knowledge or specialized experience, there are limits, particularly where a witness is relying on data and information provided by others. As recognized by the Sixth Circuit in explaining the holding in *JGR*, the court in *U.S. v. White* explained that:

> In *JGR, Inc.* ... we reviewed a district court's decision to admit under Rule 701 the testimony of a certified public accountant and lawyer on the loss of profits and business value incurred by the plaintiff following the defendant's alleged breach of contract. Although the challenged witness rendered accounting services to the plaintiff company, he had no ownership stake in the company, nor did he serve as an officer or director. ... **Because the witness relied solely on information provided by the plaintiff company to calculate projected loss, we concluded that he lacked the basis necessary to offer such lay testimony**.

492 F.3d 380, 403 n. 10 (6th Cir. 2007) (citing and explaining holding in *JGR*) (emphasis added).

7. Furthermore, additional case law makes clear that (i) admitting testimony of a non-expert regarding the value of a lost contract was an abuse of discretion where "the witness's '"opinion ... was based on preliminary income figures and other information that he had received from [the plaintiff's founder],' and his 'appraisal ... was [not] based upon his own independent knowledge or observations.'" *U.S. v. Madison*, 226 Fed. Appx. 535 (6th Cir. 2007) (citing, in part, *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 685-87 (5th Cir.2003)); and (ii)

4

while business owners and officers may offer lay opinion testimony as to the business' lost profits based on straightforward calculations, courts do not permit business owners (or business insiders), even with personal knowledge, to give highly complex lost profits projections or analyses to the extent that such testimony shifts into the realm of technical expert testimony involving complex calculations and projections.

8. For example, in *In re MarketXT Holdings, Corp.*, 2011 WL 1422012 (Bankr. S.D.N.Y. Jan. 7, 2011), the court excluded lay witness testimony and a financial projection exhibit prepared **by a business owner** which "combine[d] the revenues of a period . . . with hypothetical costs . . . based on a model that incorporates the types of assumptions used in an expert report. 2011 WL 1422012, at *3. The court explained that the witness's testimony went "beyond his 'personal knowledge and his experience as [president] of the company' and **enters a realm of calculation beyond the pale of lay opinion under Rule 701**." *Id*. at * 3 (emphasis added) (citing, in part, *Lifewise Master Funding v. Telebank*, 374 F. 3d 917, 928-30 (10th Cir. 2004) (holding that business owner can testify under Rule 701 via "a straightforward opinion as to the lost profits using conventional methods based on [company's] actual operating history," but is not permitted to testify regarding plaintiff's complex lost profits damages model where that model is "an amalgam of logic, hope, and economic jargon" which is not "rationally based on [witness's] perception, and therefore cannot be admissible as lay opinion testimony.")).

9. Other cases hold similarly to the *MarketXT* and *LifeWise* decisions and have refused to admit lay testimony, even of a business owner regarding value of a business or lost profits, where the testimony strays into the realm of expert opinion. *See*, *e.g.*, *Lamoureux v. Anazaohealth Corp.*, No. 3:03cv0138 (WIG), 2009 WL 1162875, at *2-*4 (D. Conn. Apr. 30, 2009) (CEO/president of plaintiff could testify under Rule 701 regarding his own companies'

lost profits, but could not submit an expert report containing a complex damages model and "an even more detailed six-page damages summary" because witness was "not an economist and he is not an expert on damages models."); *Autoforge, Inc. v. American Axle and Mfg., Inc.*, Civil Action No. 02-01265, 2008 WL 65603 (W.D. Pa. Jan. 4, 2008) (finding plaintiff's president and sole shareholder could offer a "'straightforward opinion as to lost profits using conventional methods based on [the company's] actual operating history'" but granting motion to strike testimony to the extent that it "lack[ed] the proper foundation, [was] speculative in nature and amount[ed] to a proffer by [plaintiff] of 'an expert in lay witness clothing.' "); *Nationwide Transport Finance v. Cass Info. Sys., Inc.*, No. 2:04-CV-08-BESLRL, 2006 WL 5242377, at *7-*8 (D. Nev. Mar. 6, 2006) (under Rule 701, plaintiff's general partner and credit administrator could testify regarding "Plaintiff's historical revenue losses . . . based on Plaintiff's actual operating history" but could not testify regarding projected future revenue losses because "Plaintiff has not established an adequate foundation . . . to testify [regarding] Plaintiff's projected revenue losses under Rule 701.").

10. Here, Malhotra's projections were not based on any particularized, first-hand knowledge of the facts. Malhotra based his projections on data he received from others who themselves had received that information from yet more distant third parties. As such, the data relied on by Malhotra included additional assumptions by various unidentified people working for the City and others. Malhotra is a lay witness offering opinions on a subject that is highly specialized and reserved for experts. Thus, the testimony violates the reliability requirements of Rule 702, and Rule 701 prevents such testimony and evidence.

11. The City argues that "Mr. Malhotra has personally gathered significant amounts of data and become very well-versed in the particular details of the City's revenue

6

streams and financial commitments" and that "[b]ased on his intimate knowledge of this information, Mr. Malhotra is prepared to offer **fact-based projections** regarding the City's finances." Memo, p. 5. However, Malhotra has purported to testify that he and others at Ernst & Young developed their spreadsheets, forecasts and projections together based on the assumptions developed in conjunction with the City. There is no foundation or other evidence to explain the bases for these assumptions, the reliability of such assumptions, and whether data and assumptions given to or made by Malhotra (and/or his team) is reliable.

12. The City's Memo cites to several highly fact-specific cases, some of which involved the appellate courts reviewing lower court decisions and affirming such decisions (on an abuse of discretion standard) permitting an owner or business insider to provide lay testimony based on personal knowledge. While certain cases have permitted lay opinion testimony from a business owner regarding lost profits, **no case** AFSCME is aware of has permitted lay opinion testimony (even in situations involving personal knowledge) in situations such as here involving highly complex and significant assumptions based on input from others (including regarding base case and other scenarios and future projections beyond the scope of a non-expert), and expert determinations regarding voluminous data which had to be scrubbed by Malhotra and his team.

13. The City argues that the non-precedential *Lativafter* case, 345 Fed. Appx. 46 (6th Cir. 2009) supports its assertion that Malhotra can testify as a lay witness on forecasts and projections of the magnitude Malhotra seeks to do here. However, the Sixth Circuit's unpublished opinion in *Lativafter* unsurprisingly gave few details as to the underlying facts, and the City simply cannot compare an individual testifying about what may have been relatively straightforward testimony to Malhotra's proposed testimony regarding data that has been

7

scrubbed with projections based on unfounded assumptions. Malhotra was not an officer or director of the City, and was performing the financial projections at issue in these proceedings prepared in the May through July 2013 time frame for the Emergency Manager and other City and State officials as a paid consultant. This is all the more reason why the spreadsheets, data and financial projections related to this highly complex City should be subject to higher scrutiny under the standards of Rule 702. Indeed, even in the context of expert testimony, courts must independently "exercise a gatekeeping role" and "determine whether a putative expert's testimony would be inadmissible junk science or instead would be falling within the 'range where experts might reasonably differ.'" *See Design Basics, L.L.C. v. Deshano Companies, Inc.*, No. 10–14419, 2012 WL 4340784 (E.D. Mich. Sept. 21, 2012) (citations omitted).[1]

14. Accordingly, this Court should not disturb its decision barring Mr. Malhotra from providing testimony in areas of complex financial projections and calculations reserved for an expert witness.

Dated: October 25, 2013

                                             **LOWENSTEIN SANDLER LLP**
By: /s/ *Sharon L. Levine*
Sharon L. Levine, Esq.

---

[1] AFSCME further notes that it is well-settled that a determination of insolvency is a highly technical inquiry that relies heavily upon expert testimony. *In re Roblin Industries, Inc.*, 78 F.3d 30, 38 (2d Cir. 1996) ("Whenever possible, a determination of insolvency should be based on ... expert testimony"); *Klein v. Tabatchnick*, 610 F.2d 1043, 1048 (2d Cir. 1979) ("a finding on the issue of insolvency often depends upon the factual inferences and conclusions of expert witnesses" and therefore "intelligent adjudication requires more than the use of lay knowledge"); *see also Lucas v. Swan*, 67 F.2d 106, 110-11 (4th Cir. 1933) ("an expert who has had opportunity to examine the facts may express an opinion on the question [of insolvency]"); *In re Student Finance Corp.*, No. 04-1551 JJF, 2007 WL 2936195, at *45 (D.Del. Oct. 5, 2007) (Farnan, J.) (striking trustee's damages claims in part because newly raised issues of solvency would require the defendants to "reopen ... expert discovery"); *In re Prime Realty, Inc.*, 376 B.R. 274, 279 (D. Neb. 2007) (finding that the trustee failed to establish insolvency during a specific time period in part because "[t]he trustee presented no expert witness testimony concerning the 'fair valuation' of the debtor's property on any date.").

In fact, because an insolvency analysis clearly relies upon scientific, technical, and other specialized knowledge within the scope of Rule 702, it is subject to the tests articulated in *Daubert* and its progeny to ensure that it is the product of reliable principles and methods. *In re Iridium Operating LLC*, 373 B.R. 283, 349-52 (S.D.N.Y. 2007) (questioning the reliability of expert testimony on solvency where the expert used faulty financial projections); *cf. In re American Classic Voyages Co.*, 367 B.R. 500, 514-15 (D.Del. 2007) (rejecting methodology used in expert's insolvency analysis).

John K. Sherwood, Esq.
Philip J. Gross, Esq.
Keara M. Waldron, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-6247 (Facsimile)
slevine@lowenstein.com
wjung@lowenstein.com
pgross@lowenstein.com

-and-

Herbert A. Sanders, Esq.
THE SANDERS LAW FIRM PC
615 Griswold St., Suite 913
Detroit, MI 48226
(313) 962-0099 (Telephone)
(313) 962-0044 (Facsimile)
hsanders@miafscme.org

-and-

Richard G. Mack, Jr., Esq.
Miller Cohen, P.L.C.
600 West Lafayette Boulevard
4th Floor
Detroit, MI 48226-3191

*Counsel to Michigan Council 25 of the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO and Sub-Chapter 98, City of Detroit Retirees*