IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------------------ x
                                                 :
In re                                            :    Chapter 9
                                                 :
CITY OF DETROIT, MICHIGAN,                       :    Case No. 13-53846
                                                 :
         Debtor.                                 :    Hon. Steven W. Rhodes
------------------------------------------------ x

## DEBTOR'S BRIEF IN OPPOSITION TO MOTION FOR RELIEF FROM STAY[1]

The Stay Relief Motion is one of nearly two dozen motions for relief from the automatic stay filed shortly after the commencement of this chapter 9 case by parties seeking to avoid the consequences of the bankruptcy filing on pending litigation. Granting the relief sought would undermine the breathing spell afforded to the City and can only be granted upon a demonstration of sufficient cause where the scope of the requested relief is appropriate. The Plaintiff in this action fails to identify any valid reason why its lawsuit -- over allegedly incorrect water bills -- should be exempted from the claims resolution process and proceed as if the bankruptcy had not occurred.

As set forth in the City's motion to establish a claims bar date, the City intends to file a motion seeking approval of an efficient process for liquidating

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Debtor's Objection to Motion for Relief from Stay.

prepetition claims asserted against the City. Allowing the Plaintiff's lawsuit to proceed *ad hoc* outside the claims resolution process would undermine one of the most fundamental protections afforded to the City as a chapter 9 debtor. As of the Petition Date, approximately 700 lawsuits were pending against the City. *See* Creditor List at Schedule G. Absent the enforcement of the automatic stay, the City would be spending its already limited resources defending these cases rather than focusing its efforts and resources on its restructuring. The Plaintiff offers no explanation for why its lawsuit deserves special, preferential treatment. It should not be afforded relief from the stay.

**I.     BACKGROUND**

    **A.     The Lawsuits**

For several decades, the Plaintiff has owned buildings located in the City. *See* Exhibit 1, City's Brief in Opposition to Plaintiff's Motion for Partial Summary Disposition ("City's Brief in Opposition to Summary Disposition"). During this time, the City provided water and sewage services to the buildings. City's Brief in Opposition to Summary Disposition at 1. The City's bills for these services included charges for basic water usage, plus an industrial waste charge and a drainage fee. *Id.*

On August 10, 2009, the Plaintiff filed its first complaint against the City of Detroit Water and Sewerage Department and the Detroit Board of Water

- 2 -
21638795.4\022765-00202
13-53846-tjt    Doc 1402    Filed 10/25/13    Entered 10/25/13 18:33:52    Page 2 of 11

Commissioners (collectively, the "Defendants") in the United States District Court for the Eastern District of Michigan, commencing case number 09-13128 ("District Court"). The complaint alleged four counts: (I) Breach of Contract; (II) Actual Fraud/Intentional Misrepresentation; (III) Constructive Fraud/Negligence Or Innocent Misrepresentation; and (IV) Unjust Enrichment (collectively, the "State Law Claims").

In response, the City conceded that it miscalculated its past bills to Plaintiff with respect to industrial waste charges and drainage fees. City's Brief in Opposition to Summary Disposition at 3. However, the City explained that when the Plaintiff brought this issue to City's attention, it corrected the drainage fee calculation in late 2006. *Id.* To compensate the Plaintiff, the City calculated the amount the Plaintiff was overcharged from 2000 through 2006 (the 6-year period for which the Plaintiff could file suit under the applicable statute of limitations) and applied this credit to the Plaintiff's bill in January 2007. *Id.* As to the industrial waste charge fees, the City maintained that the overcharge was no more than approximately $5,000. *Id.* By July 2010, the City repaid all but $19,319.83 of the overcharges through credits applied to current bills, and by September 2010, the City repaid all of the drainage fee overcharges dating back to 2000. *Id.*

Eventually, the District Court dismissed all of the Plaintiff's State Law Claims related to both the drainage fees and industrial waste charge without

prejudice. *See* Stay Relief Motion, Exhibit J at 9. The City and the Plaintiff agreed that the City owed $5,132.55 for industrial waste overcharges and the District Court entered an order in that amount on the Plaintiff's federal claim. *Id.* at 7-9.

On December 11, 2012, the Plaintiff filed another complaint ("Complaint") against the Defendants in Wayne County, Michigan Circuit Court ("Circuit Court"), commencing case number 12-016332 ("Lawsuit"). The Complaint is attached as Exhibit 2. The Complaint contains the same State Law Claims that were set forth in the complaint filed in the District Court. The Plaintiff appears to seek damages of at least $500,000. *See* Complaint, ¶ 19. Despite the six year statute of limitation, the Plaintiff continues to erroneously assert damages for water bills issued prior to 2000.

On January 25, 2013, the Plaintiff filed a motion for partial summary judgment requesting that the Circuit Court bar the City from using a statute of limitations request. The Circuit Court denied the motion on April 12, 2013.

On February 6, 2013, the City filed a Counter-Complaint against the Plaintiff. The Counter-Complaint is attached as Exhibit 3. Despite the fact that the Plaintiff has continued to use water and sewage services supplied by the City and continued to receive bills requesting payment for such services, the Plaintiff has failed to pay the City in full for such services. Counter-Complaint, ¶ 11. As of the

21638795.4\022765-00202

date the Counter-Complaint was filed, the Plaintiff owed the City approximately $67,178.66. *Id.*, ¶ 12.

On March 15, 2013, the Circuit Court entered the Status Conference Scheduling Order which the following deadlines: (1) witness exchange filing – June 4, 2013; (2) discovery cutoff – July 23, 2013; (3) case evaluation month – September 2013; (4) settlement conference -- 42 days after case evaluation. The Status Conference Scheduling Order is attached as Exhibit 4.

On July 11, 2013, the Plaintiff filed its second motion for partial summary disposition. Despite the Circuit Court's denial of the first motion for partial summary disposition, the second motion for partial summary disposition reiterated the argument that that the Circuit Court bar the City from using a state of limitations defense. Prior to ruling on the second motion for partial summary disposition, on August 22, the Circuit Court stayed the Lawsuit.

### B. The City's Bankruptcy Case

On July 18, 2013 (the "Petition Date"), the City filed a petition for relief in this Court, commencing the largest chapter 9 case in history.

On October 10, 2013, the City filed its Motion for Entry of Order Establishing Bar Dates for Filings Proofs of Claim ("Bar Date Motion"). [Dkt. No. 1146]. As set forth in the Bar Date Motion, consistent with this Court's order of October 8, 2013 [Dkt. No. 1114], the City intends to file a motion by November

12, 2013, for approval of an efficient process for liquidating prepetition tort and, in all likelihood, other claims asserted against the City. Bar Date Motion, ¶ 25. The City anticipates that this process (a) may involve the use of alternative dispute resolution practices, including mediation or consensual arbitration; and (b) would be implemented once the tort claims have been asserted through the proof of claims process. *Id*. The City also intends to establish a process for the assertion of other administrative expense claims at a future date if and to the extent necessary. *Id*., ¶ 13.

## II. ARGUMENT

Under the factors generally applied to stay motions in this circuit, there is no cause for relief from stay. Section 362(a) of the Bankruptcy Code provides in relevant part that

> a petition filed under . . . this title . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 362(a). The automatic stay "is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." *Javens v. City of Hazel Park (In re Javens)*, 107 F.3d 359, 363 (6th Cir.

- 6 -
21638795.4\022765-00202
13-53846-tjt    Doc 1402    Filed 10/25/13    Entered 10/25/13 18:33:52    Page 6 of 11

1997) (quoting H.R. REP. NO. 95-595, at 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6296).

Section 362(d) of the Bankruptcy Code authorizes a bankruptcy court to grant relief from the Automatic Stay in limited circumstances. *See* 11 U.S.C. § 362(d). In particular, section 362(d)(1) of the Bankruptcy Code provides that a party in interest may obtain relief from the Automatic Stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

"The Bankruptcy Code does not define 'cause' as used in [section] 362(d)(1). Therefore, under [section] 362(d), 'courts must determine whether discretionary relief is appropriate on a case by case basis.'" *Chrysler LLC v. Plastech Engineered Prods., Inc. (In re Plastech Engineered Prods., Inc.)*, 382 B.R. 90, 106 (Bankr. E.D. Mich. 2008) (*quoting Laguna Assocs. L.P. v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. L.P.)*, 30 F.3d 734, 737 (6th Cir. 1994)). The determination of whether to grant relief from the Automatic Stay "resides within the sound discretion of the Bankruptcy Court." *Sandweiss Law Ctr., P.C. v. Kozlowski (In re Bunting)*, No. 12-10472, 2013 WL 153309 at *17 (E.D. Mich. Jan. 15, 2013) (*quoting In re Garzoni*, 35 F. App'x 179, 181 (6th Cir. 2002)).

> To guide the bankruptcy court's exercise of its discretion . . . the Sixth Circuit identifies five factors for the court to consider: (1) judicial economy; (2) trial readiness; (3) the resolution of the preliminary bankruptcy issues;

> (4) the creditor's chance of success on the merits; and
> (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors.

*Bunting*, 2013 WL 153309 at *17 (*quoting Garzoni*, 35 F. App'x at 181) (internal quotation marks omitted). In determining whether cause exists, however, "the bankruptcy court should base its decision on the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code." *Plastech*, 382 B.R. at 106 (*quoting In re C & S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995)). In that regard, a primary purpose of bankruptcy is the centralization of claims against the debtor for determination by the bankruptcy court through the claims allowance process. *See In re Hermoyian*, 435 B.R. 456, 464 (Bankr. E.D. Mich. 2010) (stating that an underlying policy of the Bankruptcy Code is the provision of a centralized forum for claims resolution and orderly distribution of assets). Further, the automatic stay benefits the creditor body at large by ensuring their equal treatment and preventing a race to the courthouse. *See* H.R. REP. NO. 95-595, at 340 (1977) ("The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.").

Here, consideration of these factors confirms that no cause (much less sufficient cause) exists to justify relief from the Automatic Stay to allow the

21638795.4\022765-00202

Lawsuit to proceed. With respect to the first factor, the interests of judicial economy weigh in favor of denying the Stay Relief Motion. The Plaintiff itself asserts that the matter "has been pending for more than four years," yet no trial date has even been set. Stay Relief Motion, ¶ 38A. In contrast, a bankruptcy case is designed for speedy resolution of claims. The Plaintiff's alleged claim, that the City miscalculated its water bills, will be resolved more efficiently through the centralized claims resolution process than in the Circuit Court.

With respect to the second factor, the Lawsuit is still in its preliminary stages. No trial date has been set. The mandatory settlement conference has not occurred. In short, the Lawsuit is not trial ready.

The third and fourth factors also weigh in favor of denying the Stay Relief Motion. The Court has not yet resolved the City's eligibility for relief in this chapter 9 case. Nothing could be more basic or preliminary to the ultimate outcome of this chapter 9 case. Further, a threshold issue for the Plaintiff's claim is favorable ruling on the statute of limitations issue and it has already lost on that issue once. As set forth in the Counter-Complaint and the City's Brief in Opposition to Summary Disposition, the Plaintiff has not demonstrated a likelihood of success on the merits.

Additionally, the fifth factor weighs in favor of denying the Stay Relief Motion. The City sought relief under chapter 9 in part to obtain the "breathing

spell" afforded by the automatic stay and the consequent protection from its creditors while it restructures its affairs and prepares a plan of adjustment. The City's finances would be further depleted and its personnel distracted from their mission to operate the City for the benefit of its citizens and restructure its affairs if it were denied this basic protection of chapter 9 and forced to defend itself against the Plaintiff so early in the case. Accordingly, the overall goals of chapter 9 weigh heavily in favor of denying stay relief to the Plaintiffs.

## III. **CONCLUSION**

WHEREFORE, the City respectfully requests that this Court: (a) deny the Stay Relief Motion; and (b) grant such other and further relief to the City as the Court may deem proper.

Dated: October 25, 2013	Respectfully submitted,

By: /s/Timothy A. Fusco
Jonathan S. Green (P33140)
Stephen S. LaPlante (P48063)
Timothy A. Fusco (P13768)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com
fusco@millercanfield.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

ATTORNEYS FOR THE CITY OF DETROIT

- 11 -

21638795.4\022765-00202
13-53846-tjt    Doc 1402    Filed 10/25/13    Entered 10/25/13 18:33:52    Page 11 of 11