STATE OF MICHIGAN
IN THE WAYNE COUNTY CIRCUIT COURT

ST. MARTIN'S COOPERATIVE,

   Plaintiff,

v

THE DETROIT WATER AND SEWERAGE DEPARTMENT,
and CITY OF DETROIT BOARD OF WATER COMMISSIONERS,

   Defendants.

Case No. 12-016332-CK
Hon. Patricia Fresard

12-016332-CZ
FILED IN MY OFFICE
WAYNE COUNTY CLERK
4/5/2013 3:58:03 PM
CATHY M. GARRETT

| LAW OFFICES OF LEE & CORRELL | CITY OF DETROIT LAW DEPARTMENT |
|---|---|
| By: Michael Lee (P40012) | By: Eric B. Gaabo (P39213) |
|  mlee@leeandcorrell.com |  gaabe@detroitmi.gov |
| Attorneys for Plaintiff | Assistant Corporation Counsel |
| 24901 Northwestern Highway | Attorney for Defendant City of Detroit |
| Suite 113 | Coleman A. Young Municipal Center |
| Southfield, MI 48074 | 2 Woodward Avenue, 5th Floor |
| (248) 350-5900 | Detroit, MI 48226 |
| | (313) 237-3052 |

DEFENDANT CITY OF DETROIT'S ANSWER TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY DISPOSITION

   Defendant, the City of Detroit, answers the motion for partial summary disposition filed

by Plaintiff, St. Martin's Cooperative, as follows:

   1.  The City lacks knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraph 1, and therefore neither admits nor denies such allegations,

leaving Plaintiff to its proofs.

   2.  The City admits the allegations contained in paragraph 2.

   3.  The City denies the allegations contained in paragraph 3 because they are untrue.

   4.  The City denies the allegations contained in paragraph 4 because they are untrue.

5. The City lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 5, and therefore neither admits nor denies such allegations, leaving Plaintiff to its proofs.

6. To the extent that Plaintiff requested the City for information and assistance, the City denies that it refused to do so, because this is untrue.

7. In response to paragraph 7, the City admits only that at some time, Plaintiff shared its calculations of past water bills with the City, but the City lacks knowledge or information sufficient to form a belief as to when this occurred, and therefore neither admits nor denies this allegation, leaving Plaintiff to its proofs.

8. The City lacks knowledge or information sufficient to form a belief as to the allegations contained in paragraph 8, and therefore neither admits nor denies such allegations, leaving Plaintiff to its proofs.

9. In response to paragraph 9, the City denies that it "fraudulently concealed the inaccuracy of its billings to Plaintiff St. Martins for nearly forty years, because this is untrue. The City need not respond to the remaining legal conclusion in paragraph 9 because this is not a factual assertion. To the extent that an answer is required, the City denies the legal conclusion contained in paragraph 9 because they are untrue.

10. In response to paragraph 10, the City states that MCL 600.5855 speaks for itself.

11. The City need not respond to paragraph 11, because this states legal conclusions rather than factual assertions. In further answer, the City states that State of Michigan ex rel Kelley v McDonald Dairy Co., 905 F. Supp 447 (E.D. Mich 1995) speaks for itself. In further answer, the City denies that any of the elements of fraudulent concealment are present in the present case.

12. In response to paragraph 12, the City states that <u>Draws v Levin</u>, 332 Mich 447, 453; 52 NW2d 180 (1952) speaks for itself, but that this case has no application to the present case.

13. In response to paragraph 13, the City admits only that in approximately 2006, the City discovered that its past bills to St. Martins, which included an Industrial Waste Charge ("IWC") and a drainage fee, had been incorrectly calculated, resulting in an overcharge to St. Martins,[1] that the City then calculated the amount of the drainage fee overcharges dating back to 2000, and provided St. Martins with a credit going forward on all future bills, until the full amount of the overcharges was exhausted, and that the amount of the drainage fee overcharges was fully paid back by the City of Detroit through credits against St. Martins' water and sewage bills by September 2010.

14. The City denies the allegations contained in paragraph 14 because they are untrue.

15. The City denies the allegations contained in paragraph 15 because they are untrue.

16. The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16, and therefore neither admits nor denies such allegations, leaving Plaintiff to its proofs.

17. In response to paragraph 17, the City denies that it engaged in concealment of any kind because this is untrue. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 17, and therefore neither admits nor denies such allegations, leaving Plaintiff to its proofs.

WHEREFORE, Defendant, the City of Detroit, requests that this Honorable Court

---

[1] In a separate lawsuit filed in federal court in 2009 (St. Martins Cooperative v City of Detroit, et al, United States District Court for the Eastern District of Michigan, Case No. 09-13128) St. Martins received a judgment in the amount of $5,132.55 against the City relating to the IWC charges. The remainder of Plaintiff's claims, including Plaintiff's claims relating to drainage fee overcharges, was dismissed.

deny Plaintiff's Motion for Partial Summary Disposition, dismiss all claims against the City pursuant to MCR 2.116(I)(2), grant the City its reasonable costs and attorney fees, and award the City such additional relief as the Court deems appropriate.

Respectfully submitted,

S/ Eric B. Gaabo (P39213)
gaabe@detroitmi.gov
Assistant Corporation Counsel
Attorney for Defendant City of Detroit
Coleman A. Young Municipal Center
2 Woodward Avenue, 5th Floor
Detroit, MI 48226
(313) 237-3052

Dated: April 5, 2013

STATE OF MICHIGAN
IN THE WAYNE COUNTY CIRCUIT COURT

**ST. MARTIN'S COOPERATIVE,**

      Plaintiff,

v

**THE DETROIT WATER AND SEWERAGE DEPARTMENT,**
**and CITY OF DETROIT BOARD OF WATER COMMISSIONERS,**

      Defendants.

Case No. 12-016332-CK
Hon. Patricia Fresard

_____/

| | |
|---|---|
| **LAW OFFICES OF LEE & CORRELL** | **CITY OF DETROIT LAW DEPARTMENT** |
| By: Michael Lee (P40012) | By: Eric B. Gaabo (P39213) |
|     mlee@leeandcorrell.com |     gaabe@detroitmi.gov |
| Attorneys for Plaintiff | Assistant Corporation Counsel |
| 24901 Northwestern Highway | Attorney for Defendant City of Detroit |
| Suite 113 | Coleman A. Young Municipal Center |
| Southfield, MI 48074 | 2 Woodward Avenue, 5th Floor |
| (248) 350-5900 | Detroit, MI 48226 |
| | (313) 237-3052 |

_____/

### DEFENDANT CITY OF DETROIT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY DISPOSITION

### FACTS

1.     **The Parties and the Accounts at Issue.**

    For several decades, Plaintiff, St. Martins Cooperative, has owned buildings located at the following locations in the City of Detroit: 19780 Monte Vista, 19781-815 Monte Vista, 19820-38 Monte Vista, 10600 St Martins Avenue, and 10710-18 St Martins Avenue ("the subject properties").

    During this time, Defendant, the City of Detroit, has provided water and sewage services to the subject properties, and has sent regular bills to St. Martins for such services. The bills

included charges for basic water usage, plus an "Industrial Waste Charge" ("IWC") and a drainage fee, which was calculated by using a formula based on the size of the area in question and the degree of imperviousness.[1]

## 2. The Parties' Discovery of the Errors in the City's Water and Sewer Bills.

In 2006, the City discovered that both its IWC and drainage fees had been incorrectly calculated, resulting in the City overcharging Plaintiff and other Detroit property owners. On information and belief, Plaintiff contacted the City in August 2006 or earlier, arguing that its bills were too high. In October, 2006, Plaintiff submitted its own survey, showing that the City's acreage calculations were incorrect, causing the bills to be erroneously high. The City calculated the amount of the excess charges going back to the year 2000, and applied this amount as credits to Plaintiff's water bills, beginning in January 2007. The City agreed that Plaintiff would not have to make any additional payments on future bills until the credits were exhausted.

## 3. The Class Action Suit Relating to the IWC charge.

In 2007, several property owners filed a class action suit against the City in regard to the IWC. Plaintiff, however, elected to opt out of the class and did not participate in the case. All IWC claims were resolved in that litigation.

## 4. Plaintiff's 2009 Federal Lawsuit.

On August 7, 2009, Plaintiff filed a complaint in the United States District Court for the

---

[1] If a DWSD customer's property is very impervious, much more of the rainwater falling on the area would eventually drain into the City's stormwater collection system, and would have to be processed at the City's wastewater treatment plant, increasing the City's costs. On the other hand, if the area is not very impervious, much of the rainwater would soak into the ground, with less draining into the City's system, thus reducing the City's treatment costs.

Eastern District of Michigan, entitled St. Martins Cooperative v City of Detroit Water and Sewerage Department, et al, Case No. 09-13128, raising claims very similar to those it has raised in this case. Plaintiff's claims contained the following counts:

I.     Breach of Contract;

II.    Actual Fraud/Intentional Misrepresentation;

III.   Constructive Fraud/Negligence or "Innocent" Misrepresentation;

IV.    Unjust Enrichment; and

V.     Preliminary Injunction.[2]

In its complaint, St. Martins alleged that the City had intentionally overcharged it since at least 1975.

The City responded to the suit by conceding that its past bills to St. Martins had been miscalculated. However, the City maintained that it had corrected the calculation of the drainage fee years earlier, *in late 2006*, had calculated the amount of such overcharges for the 6-year period dating back to 2000 (the 6-year period for which Plaintiff could file suit under the applicable statute of limitations) and had begun applying credits to St. Martins bill in January 2007. See Affidavit of Gary Watkins, attached as **Exhibit A**.) As to the IWC fees, the City maintained that the amount of such overcharge was no more than approximately $5,000. By July of 2010, the City had repaid all but $19,319.83 of the overcharges through credits applied to current bills (See Exhibit A), and by September 2010, the City had repaid all of the drainage fee overcharges dating back to 2000. (See Affidavit of Jetaun Coleman, attached as **Exhibit B**.)

---

[2] This count requested that the City be enjoined from terminating water service at any of the buildings owned by St. Martins.

The City also raised several affirmative defenses to St. Martins' claims, including that the claims were barred, in whole or in part, by the statute of limitations.

Eventually, the federal court dismissed all of St. Martins' claims as to the drainage fees without prejudice. The court also dismissed Plaintiff's federal claims as to the IWC charges without prejudice, but entered judgment against the City in the amount of $5,132.55 on St. Martins' state law claims relating to the IWC charges. (See Order of Dismissal and Judgment, attached as **Exhibit C**.)

## 5. The Present Lawsuit.

From the date of the dismissal of the 2009 suit to the present, St. Martins has continued to use the City's water and sewer services, and the City has continued to bill St. Martins for such services, but St. Martins has failed to pay the bills. On information and belief, St. Martins has not filed any written protests of the bills, as is required by DWSD's Interim Collection Rules and Procedures ("the Rules") (attached as **Exhibit D**). Part III, Rule 7 of the Rules provides:

> A quarterly billed customer may dispute a bill no later than forty-two (42) days after the billing date. A monthly billed customer may dispute a bill no later than twenty-eight (28) days after the billing date. After the period to dispute expires, the customer forfeits the right to dispute the bill.

On December 12, 2012, St. Martins filed the present case, which is essentially a re-filing of the 2009 case. Plaintiff's Complaint contains the following counts:

I. Breach of Contract;

II. Actual Fraud/Intentional Misrepresentation;

III. Constructive Fraud/Negligence or "Innocent" Misrepresentation; and

IV. Unjust Enrichment.[3]

---

[3] Unlike the 2009 federal suit, Plaintiff does not seek injunctive relief in this case.

As in its 2009 federal lawsuit, Plaintiff again alleges that the City has intentionally overcharged it since at least 1975, and seeks damages relating to such overcharges.

The City filed its Answer and Affirmative Defenses on January 23, 2013, again raising multiple defenses Plaintiff's claims - including the most obvious defense, that Plaintiff's claims, now dating back nearly 40 years, are barred by the statute of limitations.

**6. The Present Motion.**

On January 24, 2013, Plaintiff filed a motion for partial summary disposition. In its motion, Plaintiff argues that the statute of limitations should not apply in this case, because the City "fraudulently concealed" the existence of Plaintiff's potential causes of action.

For the reasons set forth below, the Court should deny Plaintiff's motion, and enter summary disposition in the City's favor pursuant to MCR 2.116(I)(2).

<strong>ARGUMENT</strong>

In this case, Plaintiff has re-stated the same claims previously asserted in its 2009 federal suit: (1) Breach of Contract; (2) Actual Fraud/Intentional Misrepresentation; (3) Constructive Fraud/Negligence or "Innocent" Misrepresentation; and (4) Unjust Enrichment. The statute of limitations for a negligence action is three years. Lemmerman v Fealk, 449 Mich 56, 63-64; 534 NW2d 695 (1995); MCL 600.5805(10). The statute of limitations for Plaintiff's other claims is 6 years. See, e.g., Miller-Davis Co. v. Ahrens Constr., Inc., 489 Mich. 355, 358 (Mich. 2011) (breach of contract); (Boyle v GMC, 468 Mich 226 (2003) (fraud action); Mercy Servs. v. City of Rochester Hills, 2010 Mich. App. LEXIS 2044, 9-10 (Mich. Ct. App. Oct. 21, 2010) (unjust enrichment action).

The disputes Plaintiff raises in this case were first asserted by Plaintiff in 2006 (on

information and belief, in August 2006 or earlier), when it contacted the City's Water and Sewerage Department to question the bills it had received. Because this lawsuit was not filed until December 12, 2012, more than 6 years later, all of Plaintiff's claims are barred by the statute of limitations.

To avoid this problem, Plaintiff has asserted in this motion that under MCL 600.5855, the claims are not barred, because the City fraudulently concealed them from Plaintiff since 1975. The Court must reject this argument.

1.    **MCL 600.5855**

Fraudulent concealment is a tolling provision for the statute of limitations in Michigan, and as codified in MCLA 600.5855, provides as follows:

> Sec. 5855. If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, *the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers or should have discovered the existence of the claim or the identity of the person who is liable for the claim,* although the action would otherwise be barred by the period of limitations. (Emphasis supplied).

The above statute is a tolling provision for statutes of limitation, and is not itself a substantive cause of action for which a plaintiff may recover damages. Shember v. University of Michigan Medical Center, 280 Mich. App. 309, 316-7; 760 N.W.2d 699 (2008); Sills v. Oakland General Hospital, 220 Mich. App. 305, 310; 559 N.W.2d 348 (1996); Dunmore v. Sinai Hospital, 149 Mich. App. 140, 146-7; 386 N.W.2d 154 (1985).

Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action.

Shember, supra; Dunmore, supra. To prove fraudulent concealment, plaintiff must show that a person who is or may be liable for the claim engaged in some arrangement or contrivance of an affirmative character, which was designed to prevent subsequent discovery of the existence of the claim. Shember, supra; Doe v. Roman Catholic Archbishop, 264 Mich. App. 632, 642-3; 692 N.W.2d 398 (2004); Sills, supra. Mere silence on the part of defendant is patently insufficient to establish fraudulent concealment. Sills, supra; Dunmore, supra; Buszek v. Harper Hospital, 116 Mich. App. 650, 654; 323 N.W.2d 330 (1982).

Plaintiff is required to plead in the complaint the specific acts and/or misrepresentations that comprise the fraudulent concealment. Shember, supra; Arent v. Hatch, 133 Mich. App. 700, 706; 349 N.W.2d 536 (1984). Additionally, it has been repeatedly held that delay in instituting suit cannot be excused on the ground of fraudulent concealment where the failure to discover is attributable to plaintiff's own neglect. McNaughton v. Rockford State Bank, 261 Mich. 265, 269; 246 N.W 84 (1933); Grebner v. Runyon, 132 Mich. App. 327, 340; 347 N.W.2d 741 (1984); Tonegatto v. Budak, 112 Mich. App. 575; 316 N.W.2d 262 (1982).

Plaintiff cannot establish a claim against the City based on MCL 600.5855 for the reasons set forth below.

2. **MCL 600.5855 Requires a Party to File Suit Within 2 Years after the Plaintiff Discovers or Should Have Discovered the Claim, but Plaintiff Discovered its Potential Claims Against the City More than 6 Years Ago, in 2006.**

A plaintiff seeking to rely on MCL 600.5855's fraudulent concealment tolling provision must bring suit *"within 2 years after the person who is entitled to bring the action discovers or should have discovered the existence of the claim."* However, it is undisputed that Plaintiff discovered or should have discovered its potential claim for drainage fee overcharges *more than 6 years ago*. On

information and belief, Plaintiff first raised objections to its water and sewer bills in August 2006 or earlier. In any event, it is undisputed that *in October of 2006*, Plaintiff submitted to DWSD a Stormwater Drainage Survey for its 5 properties which clearly and unequivocally showed that DWSD's imperviousness and acreage figures used to establish plaintiff's drainage fee rate were much too large, resulting in significant overcharges to Plaintiff. At that time, again, *in 2006*, DWSD acknowledged this, credited Plaintiff with over $300,000.00 in overcharges dating back to September of 2000, and began applying these credits to Plaintiff's water bills *in January of 2007*. (See Affidavit of Gary Watkins, attached as **Exhibit A**.)

Thus, because Plaintiff was aware of its potential claims against the City in 2006 (despite the City's alleged "fraudulent concealment"), in order to rely on MCL 600.5855's tolling provision, Plaintiff had to file suit within 2 years of learning of its potential claims against the City, or by 2008.[4] This lawsuit was filed more than 6 years after Plaintiff learned of its claims, so Plaintiff may not rely on MCL 600.5855.

3. **Plaintiff Has Produced No Evidence of Any Actual Concealment by the City in Any Event.**

But even if Plaintiff's claims were not clearly time-barred, Plaintiff has failed to plead any specific acts and misrepresentations that allegedly comprised the fraudulent concealment of its claims in any event. In paragraph 11 of its Complaint, Plaintiff makes the vague allegation that the City "purposely and consciously withheld its overcharging of Plaintiff St. Martins" for more than

---

[4] Indeed, Plaintiff filed essentially the same suit as the present case in federal court in August 2009, more than 3 years before instituting the present action. That suit was barred by the statute of limitations as well, since Plaintiff was aware of the great discrepancy between the City's acreage and imperviousness calculations and its own calculations more than 2 years before it filed that lawsuit.

30 years. In paragraph 20, Plaintiff also claims that the City "purposefully, fraudulently and maliciously misrepresented to Plaintiff St. Martins that invoices regarding its services were, in fact, accurately calculated."

However, in essence, the Complaint merely states that the City sent Plaintiff bills that were inaccurate. This is not the type of action or representation that constitutes active concealment of a claim. As noted above, mere silence on the part of defendant is patently insufficient to establish fraudulent concealment. Sills, supra; Dunmore, supra; Buszek v. Harper Hospital, 116 Mich. App. 650, 654; 323 N.W.2d 330 (1982). Plaintiff's Complaint simply sets forth no specific acts or misrepresentations designed by DWSD to prevent Plaintiff from discovering its claim for overcharges.

**4.     With Greater Diligence, Plaintiff Could Have Easily Discovered its Potential Claims at Any Time Prior to 2006.**

It is undisputed that the nature of the errors in the City's bills sent to Plaintiff was that the City incorrectly calculated the acreage and the degree of imperviousness of the subject properties. However, Plaintiff had the absolute right to challenge the drainage fee charges at any time, and had the right by City Ordinance to submit a Stormwater Drainage Survey to DWSD instead of relying on DWSD's predetermined rates for those customers who choose not to submit a Survey. Yet, through abject neglect, Plaintiff did nothing for more than 30 years, until it finally submitted its own survey to the City in 2006 (which showed the errors in the City's calculations). Plaintiff could have easily discovered the errors in the City's analysis at any time dating back to 1975 if it had inquired. Again, the law is clear that one cannot avail oneself of tolling via fraudulent concealment when the failure to discover the claim for drainage fee overcharges is attributable to the plaintiff's own

neglect.

For these reasons, the Court must deny Plaintiff's motion for partial summary disposition.

**5.     The Court Should Grant Summary Disposition in Favor of the City Pursuant to MCR 2.116(I)(2).**

Motions for summary disposition are governed by MCR 2.116. MCR 2.116(I)(2) provides:

If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party.

As shown above, Plaintiff's claims in this case are clearly time-barred by the statute of limitations, and Plaintiff cannot rely on MCL 600.5855's fraudulent concealment tolling provision, because far more than 2 years have elapsed since Plaintiff learned of its potential claims against the City in 2006.     Therefore, the Court should enter judgment in the City's favor dismissing this lawsuit.

## CONCLUSION

For the foregoing reasons, Defendant, City of Detroit respectfully requests this Honorable Court enter an Order:

A.     Denying Plaintiff's Motion for Partial Summary Disposition;

B.     Dismissing all claims against the City pursuant to 2.116(I)(2); and

C.     Granting the City such additional relief as the Court deems appropriate.

Respectfully submitted,

S/ Eric B. Gaabo (P39213)
gaabe@detroitmi.gov
Assistant Corporation Counsel
Attorney for Defendant City of Detroit
Coleman A. Young Municipal Center
2 Woodward Avenue, 5th Floor
Detroit, MI 48226
(313) 237-3052

Dated: April 5, 2013

## INDEX OF EXHIBITS

A.    Affidavit of Gary Watkins

B.    Affidavit of Jetaun Coleman

C.    Order of Dismissal and Judgment entered in St. Martins Cooperative v City of Detroit Water and Sewerage Department, et al, United States District Court for the Eastern District of Michigan Case No. 09-13128

D.    DWSD's Interim Collection Rules and Procedures

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ST. MARTINS COOPERATIVE

            Plaintiff,

v.

CITY OF DETROIT WATER AND
SEWERAGE DEPARTMENT; CITY
OF DETROIT BOARD OF WATER
COMMISSIONERS,

            Defendants.

USDC Case No. 09-13128

USDC Hon: John Feikens

Magistrate Judge: Majzoub

| MICHAEL K. LEE (P-40012) | MICHAEL M. MULLER (P-38070) |
|---|---|
| Attorney for Plaintiff | Attorneys for Defendants |
| 24901 Northwestern Hwy., Suite 113 | 660 Woodward Ave., Suite 1650 |
| Southfield, MI 48075 | Detroit, MI 48226 |
| (248) 350-5900 | (313) 237-5052 |

### AFFIDAVIT OF GARY WATKINS

STATE OF MICHIGAN)
         ) SS
COUNTY OF WAYNE )

I, Gary Watkins, say under penalty of perjury that:

1.    My name is Gary Watkins, and I have personal knowledge of the matters contained herein and am competent to testify to the truth of the same.

2.    That I am currently employed by the City of Detroit as Manager of the Commercial Operations Division of the Detroit Water and Sewerage Department (hereinafter DWSD), and was so employed at all times relevant hereto.

K:\DOCS\LIT\mullm\A41000\afdvt\MM3948.WPD

Exhibit A

3.    St. Martins Cooperative has 5 accounts with DWSD as follows:

| Service Address | Account Number |
|---|---|
| 19820-38 Monte Vista | 20-0920-400 |
| 19780 Monte Vista | 20-0921.401 |
| 19781-815 Monte Vista | 20-0922.401 |
| 10710-18 St. Martins | 20-0923.400 |
| 10600 St. Martins | 20-0924.400 |

4.    That up until October of 2006, St. Martins Cooperative's 5 accounts were billed drainage

fees based on the unsurveyed rate of 72% imperviousness, and with the following acreage:

| Service Address | Account Number | Acreage |
|---|---|---|
| 19820-38 Monte Vista | 20-0920-400 | 1.45 |
| 19780 Monte Vista | 20-0921.401 | 10.48 |
| 19781-815 Monte Vista | 20-0922.401 | 6.94 |
| 10710-18 St. Martins | 20-0923.400 | 1.68 |
| 10600 St. Martins | 20-0924.400 | 3.5 |

5.    That in October of 2006, St. Martins Cooperative presented DWSD with a new Stormwater

Drainage Survey which showed that the drainage fees for the 5 accounts should have been

based on a rate of 25-49% imperviousness, and with the following acreage:

| Service Address | Account Number | Acreage |
|---|---|---|
| 19820-38 Monte Vista | 20-0920-400 | .894 |
| 19780 Monte Vista | 20-0921.401 | .933 |
| 19781-815 Monte Vista | 20-0922.401 | .930 |
| 10710-18 St. Martins | 20-0923.400 | .939 |
| 10600 St. Martins | 20-0924.400 | .933 |

K:\DOCS\LJT\mullin\A41000\affdvt\MM3948.WPD

6. That as a result of St. Martins Cooperative's new Stormwater Drainage Survey, DWSD calculated the amount St. Martins Cooperative was overcharged for the drainage fees on their 5 accounts back to September of 2000 as follows:

| Service Address | Account Number | Overcharge |
|---|---|---|
| 19820-38 Monte Vista | 20-0920-400 | $13,578.25 |
| 19780 Monte Vista | 20-0921.401 | $137,074.01 |
| 19781-815 Monte Vista | 20-0922.401 | $88,573.60 |
| 10710-18 St. Martins | 20-0923.400 | $15,520.56 |
| 10600 St. Martins | 20-0924.400 | $41,401.54 |

7. That as a result of St. Martins Cooperative's new Stormwater Drainage Survey, DWSD also canceled all late fees on their 5 accounts back to September of 2000 as follows:

| Service Address | Account Number | Late Fees Canceled |
|---|---|---|
| 19820-38 Monte Vista | 20-0920-400 | $1,503.80 |
| 19780 Monte Vista | 20-0921.401 | $4,013.91 |
| 19781-815 Monte Vista | 20-0922.401 | $4,463.19 |
| 10710-18 St. Martins | 20-0923.400 | $1,708.35 |
| 10600 St. Martins | 20-0924.400 | $1,967.24 |

8. That the overcharges set forth in Paragraph 6 above have been and are currently being directly credited to St. Martins Cooperative's corresponding 5 accounts on a monthly basis.

9. In May of 2008, St. Martins Cooperative resubmitted their Stormwater Drainage Survey to show that from August 1, 2002 their downspouts had been disconnected from the sewer system. This resulted in a change of the imperviousness on their 5 accounts to 10-24% from the previously adjusted 25-49%. Accordingly, dating back to August 1, 2002, and through May 13, 2008, DWSD gave additional credits for overcharges to St. Martins Cooperative's 5 accounts as follows:

| Service Address | Account Number | Overcharge |
|---|---|---|
| 19820-38 Monte Vista | 20-0920-400 | $1,340.33 |
| 19780 Monte Vista | 20-0921.401 | $1,399.21 |
| 19781-815 Monte Vista | 20-0922.401 | $1,394.50 |
| 10710-18 St. Martins | 20-0923.400 | $2,300.77 |
| 10600 St. Martins | 20-0924.400 | $1,399.21 |

10. That the overcharges set forth in Paragraph 9 above have been and are currently being directly credited to St. Martins Cooperative's corresponding 5 accounts on a monthly basis.

11. That DWSD's detailed billing history records for all 5 of St. Martin Cooperative's accounts are attached to the instant Motion as the following Exhibits:

| Service Address | Account Number | Exhibit |
|---|---|---|
| 19820-38 Monte Vista | 20-0920-400 | C |
| 19780 Monte Vista | 20-0921.401 | D |
| 19781-815 Monte Vista | 20-0922.401 | E |
| 10710-18 St. Martins | 20-0923.400 | F |
| 10600 St. Martins | 20-0924.400 | G |

12. That DWSD's detailed billing history records for all 5 of St. Martins Cooperatives's accounts reflect the following account balances as of July, 2010:

| Service Address | Account Number | Balance |
|---|---|---|
| 19820-38 Monte Vista | 20-0920-400 | $11,321.06 |
| 19780 Monte Vista | 20-0921.401 | $24,475.18 |
| 19781-815 Monte Vista | 20-0922.401 | $30,311.20 |
| 10710-18 St. Martins | 20-0923.400 | $26,042.75 |
| 10600 St. Martins | 20-0924.400 | $ 1,897.26 |

13. That as of July, 2010, DWSD has satisfied/credited to St. Martins Cooperative all overcharges of the drainage fees on St. Martin Cooperative's 5 accounts back to September of 2000 except a total aggregate amount of $19,319.83.

K:\DOCS\LIT\mullin\A41000\afdvt\MM3948.WPD

FURTHER THE AFFIANT SAYETH NOT

_Gary Watkins_

Subscribed and sworn or affirmed before
me this _14_ day of _July_, 2010,

Notary Public, Wayne County, Michigan
My commission expires _1-19-14_

LISA SZWAST
Notary Public, State of Michigan
County of Macomb
My Commission Expires Jan. 19, 2014
Acting in the County of _Wayne_

K:\DOCS\LIT\mullin\A41000\afdvt\MM3948.WPD

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ST. MARTINS COOPERATIVE

Plaintiff,

USDC Case No. 09-13128

v.

USDC Hon: John Feikens

CITY OF DETROIT WATER AND
SEWERAGE DEPARTMENT; CITY
OF DETROIT BOARD OF WATER
COMMISSIONERS,

Magistrate Judge: Majzoub

Defendants.

| | |
|---|---|
| MICHAEL K. LEE (P-40012) | MICHAEL M. MULLER (P-38070) |
| Attorney for Plaintiff | Attorneys for Defendants |
| 24901 Northwestern Hwy., Suite 113 | 660 Woodward Ave., Suite 1650 |
| Southfield, MI 48075 | Detroit, MI 48226 |
| (248) 350-5900 | (313) 237-5052 |

AFFIDAVIT OF JETAUN COLEMAN

STATE OF MICHIGAN)
                                 ) SS
COUNTY OF WAYNE )

I, Jetaun Coleman, say under penalty of perjury that:

1.      My name is Jetaun Coleman, and I have personal knowledge of the matters contained herein

         and am competent to testify to the truth of the same.

2.      That I am currently employed by the City of Detroit as Commercial Operations Specialist II

         in the Commercial Operations Division  of the Detroit Water and Sewerage Department

         (hereinafter DWSD).

K:\DOCS\LIT\mullm\A41000\mfdv\MM3995.WPD

Exhibit H

Exhibit B

3.  I have reviewed the detailed billing history of St. Martins Cooperative's 5 accounts with

    DWSD, and those accounts are as follows:

    | Service Address | Account Number |
    | --- | --- |
    | 19820-38 Monte Vista | 20-0920-400 |
    | 19780 Monte Vista | 20-0921-401 |
    | 19781-815 Monte Vista | 20-0922-401 |
    | 10710-18 St. Martins | 20-0923-400 |

4.  That DWSD overcharged St. Martins Cooperative's 5 accounts a total of $181,892.50 from

    August, 2003 through present.

5.  That as of November, 2010, DWSD has fully and completely satisfied/credited to St. Martins

    Cooperative all overcharges of the drainage fees on St. Martin Cooperative's 5 accounts

    going back to September of 2000.

FURTHER THE AFFIANT SAYETH NOT

Jetaun Coleman

Subscribed and sworn or affirmed before
me this 19 day of November 2010.

Notary Public, Wayne County, Michigan
My commission expires 1—19—14

LISA SZWAST
Notary Public, State of Michigan
County of Macomb
My Commission Expires Jan. 19, 2014
Acting in the County of Wayne

K:\DOCS\LT\mullin\A41000\affdvt\MM3995.WPD

EXHIBIT H

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ST. MARTINS COOPERATIVE

Plaintiff,                                    USDC Case No. 09-13128

v.                                            USDC Hon: Sean F. Cox

CITY OF DETROIT WATER AND
SEWERAGE DEPARTMENT; CITY
OF DETROIT BOARD OF WATER
COMMISSIONERS,

Defendants.

---

MICHAEL K. LEE (P-40012)          MICHAEL M. MULLER (P-38070)
Attorney for Plaintiff            Attorneys for Defendants
24901 Northwestern Hwy., Suite 113  660 Woodward Ave., Suite 1650
Southfield, MI 48075              Detroit, MI 48226
(248) 350-5900                    (313) 237-5052

---

ORDER OF DISMISSAL AND JUDGMENT

It is hereby Ordered and Adjudged that any and all claims arising out of drainage fee

overcharges be and the same are hereby dismissed without prejudice or costs to any party;

It is further Ordered and Adjudged that any and all claims brought under Federal law arising

out of the industrial waste charges assessed to plaintiff by defendants be and the same are hereby

dismissed with prejudice and without costs to any party;

It is finally Ordered and Adjudged that Judgment be, and the same is hereby entered in favor

of plaintiff and against defendant, City of Detroit on all claims brought under Michigan law arising

K:\DOCS\LIT\mullm\A41000\order\MM4132.WPD

Exhibit C

out of the industrial waste charges in the total amount of Five Thousand One Hundred Thirty Two

Dollars and Fifty Five Cents ($5,132.55) inclusive of all pre and post judgment interest and costs.

This case is now closed.


S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  October 14, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on
October 14, 2011, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager


Stipulated as to Substance and Form:


s/Michael K. Lee                                          s/Michael M. Muller
MICHAEL K. LEE (P-40012)                   MICHAEL M. MULLER (P-38070)
Attorney for Plaintiff                                    Attorney for Defendants


K:\DOCS\LIT\mullin\A41000\ords\MM4132.WPD

# INTERIM



# COLLECTION RULES AND PROCEDURES

**City of Detroit
Water & Sewerage Department**

Exhibit D

DETROIT WATER & SEWERAGE DEPARTMENT

INTERIM

COLLECTION RULES AND PROCEDURES

Revised January 22, 2003

CITY OF DETROIT

KWAME M. KILPATRICK, MAYOR

DETROIT WATER AND SEWERAGE

VICTOR M. MERCADO, DIRECTOR


COLLECTION RULES AND PROCEDURES

APPROVED BY THE BOARD OF

WATER COMMISSIONERS ON

January 22, 2003

REVISED AND APPROVED

JANUARY 17, 1979

OCTOBER 1, 1980

OCTOBER 3, 1984

FEBRUARY 6, 1985

DECEMBER 15, 1999

JANUARY 22, 2003

# TABLE OF CONTENTS

| PART | SUBJECT | PAGE |
|------|---------|------|
| I | BILLING AND BILLS | 1 |
| II | COMPLAINT PROCEDURES | 4 |
| III | ADMINISTRATIVE HEARING PROCEDURES | 5 |
| IV | SHUT OFF SERVICE | 9 |
| | A) Tenants | 12 |
| | B) Medical Emergency | 12 |
| V | PAYMENT PLAN AGREEMENT | 13 |

## PART I. BILLING AND BILLS

### Rule 1:  Frequency

(1)  Residential accounts and accounts with meters two (2) inches and smaller are billed quarterly, but are approved for monthly billings.

Large volume consumers will be billed monthly.  Monthly billed accounts will include meters three (3) inches or larger and large volume accounts, regardless of meter size.

(2)  Bills will be mailed at least twenty (20) calendar days before the due date.

(3)  The service address shall be the billing address.  Upon written request, the Detroit Water and Sewerage Department (DWSD) will mail bills to an address other than the service address.  It is the responsibility of the owner to keep account mailing information current.  An obsolete address will not be a reason for non-payment of the bill.

### Rule 2:  Rates

(1)  The DWSD will bill accounts using the Rate Schedule approved by the Board of Water Commissioners.  Rate Schedules will be provided to a customer upon request.

(2)  Bills will include charges for: water, monthly meter service, sewage disposal, monthly sewage service monthly drainage and, as appropriate, high strength pollutant surcharges, industrial waste control, and monthly fire line service. Bills may also include charges, as appropriate, for water meter repairs, unrecovered meters, illegal usage, meter violations, service line repairs, or any other charges approved by the Board of Water Commissioners.

### Rule 3:  Actual Reads – Estimated Reads

(1)  The utility will strive to use actual meter reads for billing purposes.  Bills will be based upon actual readings obtained from the water meter and/or Outside Reading Device (ORD) by DWSD personnel or from customers via telephone, in person, or by dial postcards marked and returned by the customer, when possible.

(2)  When necessary, bills will be based upon estimated reads by DWSD.

(3)     If a previous bill (s) was based upon an estimated read, all water metered, but not already billed, will be billed when the next actual read is obtained. No adjustment to the consumption billed will be granted if the meter is found to be accurate.

(4)     Upon request and following payment of a Real Estate Closing Read fee, DWSD will secure an actual read from the meter and issue a *guaranteed* closing bill.

(5)     The Customer is solely responsible for all water that flows through the meter. DWSD will not assume responsibility for wastage caused by faulty plumbing, fixtures or pipes.

## Rule 4: Payment

(1)     The date the payment is received by DWSD will be the date used for posting purposes.

(2)     Payments received will be applied as credits to the oldest balance(s) shown on the account.

## Rule 5: Late Payment

Bills paid after the due date will be charged a five (5) percent late payment charge on the unpaid portion of the current bill and on the following charges, when applicable:

(a)     Meter repair charges

(b)     Service repair charge

(c)     Unrecovered meter charge

## Rule 6: Billing Information

(1)     **Current Bills**

Current bills will include the following information:

(a)     Service address

(b)     Mailing address

(c)     Account number

(d)     Account classification

2

(e)     Number of service months

(f)     Meter size

(g)     Meter read date

(h)     Meter read

(i)     A statement including the bill type

(j)     Consumption in hundred cubic feet

(k)     Previous balance

(l)     Separate charges for water, sewage, and miscellaneous debits and credits as appropriate

(m)     Due date

(n)     Amount to be paid by the due date

(o)     Amount to be paid after the due date

(2)     **Delinquent Bills**: DWSD will prepare two (2) delinquent bills as follows:

(a)     **Past Due Notice**: When a current bill is not paid in full by its due date, a notice requesting payment will be issued (11) days after the bill becomes due.

(b)     **Final Notice**: A WATER SHUT OFF-FINAL NOTICE, will be issued when an account is unpaid thirty-two (32) days after the billing date. The notice will be mailed to the service address and mailing address, if applicable. The WATER SHUT OFF – FINAL NOTICE will contain the following information:

(a)     The address of the property served.

(b)     A clear and concise statement of the reasons for the proposed shut off.

(c)     A statement that water will be shut off in ten (10) days, or any time thereafter, unless the customer takes appropriate action.

(d)     A statement informing the customer of the opportunity to enter into a Payment Plan Agreement (PPA) with DWSD, if the amount of the bill

3

is not in dispute and the customer is presently unable to pay in full the amount due.

(e)    A statement informing the customer of the right to file a complaint disputing the bill within ten (10) days of the date the "WATER SHUT OFF – FINAL NOTICE" was issued.

(f)    A statement informing the customer of the right to request a Hearing, if the disputed billing cannot be resolved.

(g)    A statement informing the customer of the right to represent himself/herself or to be represented by counselor other person(s) of his/her choice, at a Hearing.

(h)    A statement informing the customer that service will not be shut off pending resolution of the disputed bill(s).

(i)    The telephone number and address of the Department where the customer may make inquiry, enter into a PPA, or file a complaint.

(j)    A customer who alleges that a serious illness exists, has the right to postpone shut off for 21 days, or have the service restored, if someone living in the house has a medical emergency verified by a statement from a doctor or public health official.

## PART II. COMPLAINT PROCEDURES

### Rule 7:  Complaints and Disputes

It is the customer's responsibility to inform the utility of any billing dispute.  A quarterly billed customer may dispute a bill no later than forty-two (42) days after the billing date.  A monthly billed customer may dispute a bill no later than twenty-eight (28) days after the billing date.  After the period to dispute expires, the customer forfeits the right to dispute the bill.  All amounts not in dispute are due and payable.  When a bill is disputed, DWSD will:

(1)    Provide the customer with a copy of the rules and procedures for disputing a bill.

(2)    Record the service address, account number, complainant's name, telephone number, date and nature of the complaint.

(3)    Reread the meter and examine plumbing fixtures and pipes, if necessary.

(4)    At the request of the customer, test the meter for accuracy.  The test will be conducted in the DWSD's meter shop in accordance with the American Water

4

Works Association Standards. The customer may witness the meter test. The request to do so must be made at the time that the meter test is requested.

(5)     Allow the meter to be tested in an independent laboratory at the expense of the customer, if DWSD test results are disputed. A representative of DWSD must be present during the testing. The customer is responsible for the meter throughout the testing process.

(6)     Advise the customer in writing of the results of the examination and the right to request a Hearing within ten (10) days if the examination results are disputed.

(7)     Advise the customer that failure to request a Hearing within ten (10) days of the date on which the Hearing was offered, gives DWSD the ability to exercise its rights pursuant to these rules, including termination of service for nonpayment.

(8)     Attempt to resolve the dispute informally and in a manner mutually satisfactory to both parties.

## PART III. ADMINISTRATIVE HEARING PROCEDURES

### Rule 8:  Opportunity for Hearing

(1)     If billing complaints are not resolved to the customer's satisfaction by staff investigation, the customer will be afforded the opportunity for a Hearing before an impartial Hearing Officer. Only the owner of record or a tenant with a valid landlord/tenant agreement may request a Hearing with DWSD.

(2)     A Hearing request must be personally submitted in writing at a DWSD Customer Service Office. All requests for Hearings will be recorded and scheduled by DWSD staff members.

(3)     If the customer fails to request a Hearing within ten (10) days of the date on which the Hearing was offered, then DWSD may exercise its rights pursuant to these rules, including termination of service for nonpayment.

(4)     A customer requesting a Hearing must pay all bills not in dispute, in order to avoid water being shut for nonpayment.

(5)     The DWSD is not required to offer a Hearing more than once for the same billing dispute.

### Rule 9:  Payment of Undisputed Billings

5

(1)      A customer requesting a Hearing must pay all bills not in dispute.

(2)      If the customer fails to pay a bill which is not in dispute, DWSD may proceed to shut off the service.

(3)      DWSD may not terminate water services for a customer if the only arrearage on the account is the disputed amount.

## Rule 10: Notice of Hearing

(1)      The customer will be notified by certified letter of the time, date, and place of the Hearing at least ten (10) days before the scheduled Hearing. Receipt of the certified letter will serve as date of notification.

(2)      The notice will include a copy of the Collection Rules and Procedures and will further state that the customer must pay subsequent billings which are not in dispute; otherwise, the water may be shut off.

(3)      Current information as to the status of the account will be included with the Hearing notice.

(4)      Hearings will be scheduled by DWSD according to availability of the Hearing Officer(s).

## Rule 11: Adjournment

(1)      A complainant who cannot attend a scheduled Hearing must request an adjournment at least 48 hours prior to the scheduled Hearing date.

(2)      Only one (1) adjournment will be granted.

(3)      Failure of the complainant to attend the Hearing as scheduled will constitute a waiver of the right to a Hearing. In this case, the disputed bill becomes due and payable immediately.

## Rule 12: Procedure

(1)      The Hearing Procedure shall provide that the complainant and DWSD.

     (a)      have the right to represent themselves or be represented by counsel or other person(s). The customer should notify the DWSD Hearings Unit at least five (5) days prior to the Hearing date if being represented by an attorney;

6

(b)    have the right to present witnesses, evidence, testimony, and/or written arguments;

(c)    have the right to question and cross-examine witnesses appearing on behalf of the other party;

(d)    have the right to examine, no later than two (2) days prior to the Hearing, a list of all witnesses who will testify and have the right to examine all documents, records, files, and other material which may be used at the Hearing. The customer will be charged a nominal fee for copies of records.

(2)    The Hearing shall be held during normal business hours.

(3)    All witnesses appearing for either party will testify under oath

(4)    The Hearing shall be informal and will be recorded by DWSD. Person(s) desiring a transcript must furnish their own stenographic service at their expense.

## Rule 13: Burden of Proof

(1)    DWSD will have the burden of showing that reasonable grounds exist requiring payment of the disputed bill(s).

(2)    Metered water consumption/usage is reasonable grounds for requiring payment.

(3)    The person(s) who requested the Hearing will have the burden of showing that the disputed bill is incorrect and that sufficient extenuating circumstances exist to prevent water shut off.

## Rule 14: Hearing Officers

(1)    Hearing Officers shall be approved by the Board of Water Commissioners.

(2)    Hearing Officers will be qualified arbitrators or attorneys who may be contractually hired by DWSD.

(3)    Upon approval by the Board of Water Commissioners, DWSD will execute a contract to provide that Hearing Officers will be paid for services rendered on a per diem basis, or services will be provided on a pro-bono basis.

7

## Rule 15: Duties of the Hearing Officer

(1) The Hearing Officer will determine whether or not the customer is liable for the disputed bill.

(2) The Hearing Officer's decision will be based upon evidence presented at the Hearing and applicable Legislative, Judicial and Administrative Law.

(3) The Hearing Officer will allow both parties to present their respective positions relative to the dispute.

(4) The Hearing Officer's decision will be in writing and a copy will be mailed to DWSD, the customer and/or their representatives, within thirty (30) calendar days of the Hearing date.

(5) The Hearing Officer's decision will state his/her findings and decision in writing, which will include:

    (a) A concise summary of the evidence and arguments presented.

    (b) The reasons for the decision, based upon the evidence presented.

## Rule 16: Payment Subsequent to Hearing

(1) If the Hearing Officer rules that DWSD is entitled to a sum of money, the customer will have thirty (30) days after the date on the Hearing Officer's decision to pay the outstanding bill, or enter into a PPA. If payment in full or a PPA has not been made at the end of the 30th day, water service will be shut.

(2) If the Hearing Officer determines that the customer is liable for all or part of the disputed bill, and the customer is unable to pay the bill in full, DWSD will consider the following factors when negotiating a PPA:

    (a) the amount due

    (b) ability to pay

    (c) other factors which may be relevant to the proposed extended Payment Plan Agreement.

## Rule 17: Decision Binding Upon the Parties

The Hearing Officer's decision is binding upon both parties.

8

**Rule 18: Public Access to Procedure**

    (1)    DWSD will prepare and distribute a pamphlet in laymen's terms summarizing the rights and responsibilities of its customers in accordance with these regulations.

    (2)    The pamphlet will be displayed prominently and will be available at all DWSD Customer Service locations.

## PART IV. SHUT OFF OF SERVICE

**Rule 19: Discontinuation of Service**

    (1)    Subject to the requirements of these Rules, DWSD may discontinue service, if a bill is not paid within ten (10) days of the date specified as "Notice Date" on the WATER SHUT OFF –FINAL NOTICE, or anytime thereafter.

    (2)    Service will not be discontinued on a day immediately preceding a day when DWSD offices will be closed to the general public, for the purpose of making payment and having service restored.

**Rule 20A: Shut Off Procedure for Delinquent Water Bill Collectors**

    (1)    Upon arriving at the premises, the Delinquent Water Bill Collector (DWBC) will identify himself/herself to the customer or other responsible person residing on the premises and request payment of the delinquent amount.

    (2)    The DWBC will have in his or her possession the past due water account of the customer. The DWBC will request verification that the outstanding bill(s) have been paid; a valid PPA has been entered into, or that the bill is in dispute. Upon presentation of such evidence, service will not be shut off.

    (3)    If there is no verification that the outstanding bill(s) have been paid or other such evidence, the DWBC will be authorized to accept payment of the outstanding delinquent bill(s). Payment may be made by cash, money order, or personal check. However, payment by personal check will not be accepted if on a previous occasion, within the past twelve months, the customer's check or other instrument for payment was returned for any reason by the institution upon which it was drawn.

    (4)    If the customer is unable to pay the outstanding bill(s), the DWBC will shut off the water and leave notice upon the premises, in a manner conspicuous to the customer that the service has been shut off. The notice will include the address and telephone number where the customer may pay the bill to have the

9

service restored.   Full payment of the delinquent amount and any associated fees are due, in order to restore the service.

(5)   If the water is not shut, the DWBC will leave notice upon the premises, in a manner conspicuous to the customer stating that the account will be referred to the DWSD Field Service Representatives or Maintenance and Repair personnel for shut off at a later date.

(6)   The DWBC will post a notice upon the premises in a conspicuous location regarding the proposed shut off of water to a multiple-unit apartment, if the delinquent balance is not paid in ten (10) days.

(7)   A site visit fee, in the amount specified in the schedule of rates, will be assessed when a DWBC is sent to the premises.

**Rule 20B: Shut Off Procedure for Field Service Representatives**

(1)   Upon arriving at the premises, the Field Service Representative (FSR) will identify himself/herself to the customer or other responsible person residing on the premises.

(2)   The FSR will have in his or her possession the past due account of the customer.  The FSR will request verification that the outstanding bill(s) have been paid; a PPA entered into, or that the bill is in dispute.  Upon present of such evidence, service will not be shut off.

(3)   If there is no verification that the outstanding bill(s) have been paid or other such evidence, the FSR will shut off the water and leave notice upon the premises, in a manner conspicuous to the customer, that the service has been shut off.  The notice will include the address and telephone number where the customer may pay the bill to have the service restored. Full payment of the delinquent amount and any associated fees are due, in order to restore the service

(4)   If the water is not shut, the FSR will leave a notice at the premises, in a manner conspicuous to the customer stating that the account will be referred to DWSD Maintenance and Repair personnel for shut off at a later date.

(5)   The FSR will post a notice upon the premises in a conspicuous location regarding the proposed shut off of water to a multiple-unit apartment, if the delinquent balance is not paid in ten (10) days. Full payment of the delinquent amount and any associated fees are due, in order to restore the service.

(6)   A site visit fee, in the amount specified in the schedule of rates, will be assessed when a FSR is sent to the premises.

10

## Rule 21: Turn On

(1) Following a shut off and upon full payment of the delinquent amount, service will be restored by DWSD within twenty-four (24) hours.

(2) Service will not be turned on in the absence of a responsible person at the premises.

(3) A turn-on fee, in the amount specified in the schedule of rates, will be assessed when service is restored following shut off for non-payment.

## Rule 22: Tampering with DWSD Property

No person other than an authorized representative of DWSD shall at any time or in any manner operate or cause to be operated any valve in or connected with a water main, water service, or fire hydrant, or tamper with or otherwise interfere with any water meter, detector check valve, or other part of the water system.

Unauthorized tampering with DWSD equipment, property or fixtures will result in prosecution under Michigan Public Act 37-1984, Michigan Compiled Laws Annotated, section 750.282 and application of such other sanctions as may be approved by the Board of Water Commissioners of the City of Detroit.

## Rule 23: Penalty for Unauthorized Use of Water

No person, other than an authorized representative of DWSD may turn water on or cause water to be turned on at the control box, or at a meter valve which has been turned off and sealed by the Department. A penalty charge for violation of this rule will be assessed for such unauthorized use of water service. The penalty charge shall be computed by applying double the effective water rate to the consumption registered on the meter or estimated by DWSD, for the period of unauthorized usage as determined by the DWSD. Additionally, other sanctions may occur as approved by the Board of Water Commissioners including prosecution under Michigan Public Act 37-1984 and Michigan Compiled Laws Annotated, section 750.282.

## Rule 24: Grounds for Shut Off

(1) Subject to the requirements of these Rules, DWSD may shut off service, with notice, to a customer for the following reasons:

    (a) nonpayment of a delinquent balance, provided that DWSD has notified the customer of the delinquency and made diligent effort to have the

customer pay the outstanding or delinquent balance, either in whole or through a reasonable PPA.;

(b) fraud or misrepresentation in obtaining water service;

(c) unauthorized tampering with pipes, meter by-pass seals, meter by-passes, water or sewer meters or other equipment of DWSD;

(d) where the furnishing of service would be in contravention of any orders, laws, or ordinances of the Federal Government, State of Michigan or Municipal Law;

(e) failure to comply with the terms and conditions of a PPA;

(f) refusal of the customer to grant DWSD access, at reasonable times, to its equipment for the purpose of inspecting the meter, meter reading, maintenance, or replacement.

(2) Service may be shut off without notice for reasons of health, safety, or state of emergency. In the event DWSD has advance knowledge of a proposed emergency shut off, customers will be notified, if possible.

## Rule 25: Shut Off of Service to Tenants

(1) DWSD may shut off service to a tenant in the absence of a PPA or valid Landlord Tenant Agreement, when the account is more than one bill delinquent.

(2) Where the responsibility for payment is with the landlord, the tenant has the right to continue service in accordance with the following provisions:

(a) Within ten (10) days of receiving notice of the proposed shut off, the tenant must contact DWSD to have service continued.

(b) Service shall be continued if the tenant executes a statement indicating responsibility for all future bills, pays the required deposit and provides the documentation required by DWSD.

(c) If the tenant fails to pay future bills as agreed, DWSD may proceed with the shut off.

(d) If the tenant signs a statement agreeing to pay future bills, the tenant shall be afforded all the rights and protections as set forth in these rules and procedures.

12

**Rule 26: Medical Emergency**

    (1)    Notwithstanding any other provision of these rules, DWSD shall not shut off or refuse to restore service to a customer, if the shut off will aggravate a medical emergency of anyone residing in the home.

    (2)    Upon the customer informing DWSD of a medical emergency, the customer will required to provide documentation from a physician or public health official. When such documentation is submitted and approved by DWSD personnel, a twenty-one (21) day extension will be given and a payment plan agreement will be made that will commence at the expiration of twenty-one (21) day extension.

## PART V. PAYMENT PLAN AGREEMENT

**Rule 27: Right of Customer to be Offered Payment Plan Agreement**

DWSD may negotiate a reasonable PPA with a customer when extenuating circumstances exist and payment in full cannot be made.

    (1)    Payment Plan in Writing – PPA'S will be in writing on the Payment Plan Agreement form and will indicate:

        (a)    account number
        (b)    service address
        (c)    amount due
        (d)    billing period ending date
        (e)    down payment required
        (f)    payment amounts and frequency
        (g)    payment due dates
        (h)    customer address and telephone number
        (i)    customer name
        (j)    customer signature
        (k)    authorized DWSD signature

    (2)    Confirmation of Telephone Payment Plan Agreement

        (a)    A DWSD representative and a customer may discuss the terms of an extended PPA over the telephone.

        (b)    Such an agreement will not take effect until it has been put in writing and signed in accordance with Rule 27-1.

    (3)    The PPA will be mailed to the customer with instructions to sign a confirming copy and return it in a pre-paid, self-addressed envelope provided by DWSD.

13

(4)     The PPA will be signed by the customer and the DWSD representative who is authorized to enter into the agreement.

(5)     The PPA shall contain in bold type, the following information:

**IF YOU ARE NOT SATISFIED WITH THIS AGREEMENT, DO NOT SIGN IT. YOU MAY FILE FOR A HEARING AND HAVE A HEARING BEFORE YOUR SERVICE MAY BE SHUT OFF. HOWEVER, IF YOU SIGN THIS AGREEMENT AND FAIL TO FOLLOW IT, YOUR SERVICE MAY BE SHUT OFF <u>AND YOU MAY BE DENIED THE OPPORTUNITY TO MAKE FUTURE AGREEMENTS.</u>**

(6)     DWSD will shut off service provided that the terms of the PPA are not met by the customer.

(7)     DWSD shall offer to the customer a PPA which is reasonable. For the purposes of determining reasonableness under these rules, the parties shall consider the factors set forth in Rule (16).

## Rule 28: Default of Payment Plan Agreement

(1)     If a customer fails to comply with the terms and conditions of a PPA, DWSD may discontinue service after notifying the customer by telephone or first class mail. The default notice shall contain the following information.

      (a)     a statement that the customer is delinquent or did not otherwise comply with the terms of the PPA;

      (b)     a statement that unless missed payment(s) is made within ten (10) days of the DEFAULT NOTICE date, DWSD will shut off service;

      (c)     the date, or reasonable time period thereafter, within which service is disconnected;

      (d)     a statement that the customer has a right to request a Hearing before an impartial Hearing officer if the customer alleges the Department failed or refused to follow the terms of the PPA;

      (e)     an address and a telephone number where the customer may file a request a Hearing.

(2)     DWSD is not required to offer a PPA more than once for the same billing charges.

14

## PART VI. MISCELLANEOUS

### Rule 29: Final Determination

DWSD may treat a decision or resolution of a particular dispute or claim as a final determination and is not required to comply with these Rules more than once with respect to the same facts and issues.

### Rule 30: Obligation of Owners to Pay

Except as provided by Rule 15, nothing contained in these rules shall be construed as relieving the owner of properties served by DWSD from the responsibility of paying all charges for services billed.

**As provided by Michigan Statute, MCL 123.162 and Ordinance Number 106-D of the City of Detroit, water rates, assessments or charges of the Board of Water Commissioners are a lien against the property served.**

ST. MARTIN'S COOPERATIVE,

        Plaintiff,

v

THE DETROIT WATER AND SEWERAGE DEPARTMENT,
and CITY OF DETROIT BOARD OF WATER COMMISSIONERS,

        Defendants.

Case No. 12-016332-CK
Hon. Patricia Fresard

_____/

| **LAW OFFICES OF LEE & CORRELL** | **CITY OF DETROIT LAW DEPARTMENT** |
|---|---|
| By: Michael Lee (P40012) | By: Eric B. Gaabo (P39213) |
|     mlee@leeandcorrell.com |     gaabe@detroitmi.gov |
| Attorneys for Plaintiff | Assistant Corporation Counsel |
| 24901 Northwestern Highway | Attorney for Defendant City of Detroit |
| Suite 113 | Coleman A. Young Municipal Center |
| Southfield, MI 48074 | 2 Woodward Avenue, 5th Floor |
| (248) 350-5900 | Detroit, MI 48226 |
| | (313) 237-3052 |

_____/

## CERTIFICATE OF SERVICE

On April 5, 2013, I sent a copy of Defendant City of Detroit's Answer and Brief in

Opposition to Plaintiff's Motion for Partial Summary Disposition and this Certificate of Service

via e-mail to Michael Lee at mlee@leeandcorrell.com.

The statements above are true to the best of my information, knowledge, and belief.

Respectfully submitted,

/s/ Eric B. Gaabo (P-39213)
gaabe@detroitmi.gov
Attorney for City of Detroit

Dated: April 5, 2013

K:\DOCS\LIT\GAABE\A41000\PROOF\EG6131.WPD