UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  Chapter 9
 Case No. 13-53846

City of Detroit, Michigan,

    Debtor.
_____/

**SUPPLEMENTAL BRIEF IN SUPPORT OF OBJECTION BY INTERESTED PARTY DAVID SOLE TO THE CITY OF DETROIT'S ELIGIBILITY TO OBTAIN RELIEF UNDER CHAPTER 9 OF THE BANKRUPTCY CODE [DOCKET 495]**

Interested Party David Sole's Objection to the City of Detroit's Eligibility Petition for Relief under Chapter 9 of the Bankruptcy code centered on two issues: (1) that the authorizing statute, PA 436, specifically mandated that the Michigan Constitutional protection against the impairment of public pensions be a contingency of any bankruptcy filing under the statute, and (2) that including such a bar to the impairment of pensions in the Chapter 9 filing would not be preempted by federal law. Interested Party Sole offers this brief as a supplement to arguments put forward in his initial objection [Docket 495] and in oral argument in front of this honorable Court on October 15, 2013.

**I. STATE LAW IS DETERMINATIVE AT THE ELIGIBILITY STAGE OF A CHAPTER 9 BANKRUTPCY**

As outlined in Interested Party Sole's objection [Docket 495], 11 USC 109 states that a local municipality must be "specifically authorized by state law to file a Chapter 9 bankruptcy." The phrase "authorized by law" refers to the law of the state. *U.S. v Bekins*, 304 U.S. 27, 49, 58 SCt 811, 82 Led 1137 (1937) " "States act as gatekeepers to their municipalities to access to relief under the Bankruptcy Code." *In Re: City of Harrisburg*, 465 BR 744 (U.S. Bankruptcy Court Middle District of PA, 2011).

1

## II. PURSUANT TO THE STATE AUTHORIZING STATUTE, PA 436, AND APPLYING MICHIGAN PRINCIPLES OF STATUTORY CONSTRUCTION, THE CITY OF DETROIT'S CHAPTER 9 FILING MUST INCLUDE AS A CONTINGENCY THE MICHIGAN CONSTITUTION'S NON-IMPAIRMENT OF PUBLIC PENSIONS

Article IX Section 24 of the Michigan Constitution states:

The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.

Article IX Section 24, the constitutional non-diminishment of pension clause, is incorporated into two sections of PA 436. Section 12(1)(m), the section of PA 436 that designates the powers of an emergency manager relative to pension funds, specifically mandates that "the emergency manager shall fully comply with . . .section 24 of article IX of the state constitution of 1963." Section 12(1)(m)(ii).

Section 13 of PA 436 gives the emergency manager the discretion to reduce and even eliminate the salary, wages and other compensation of the chief administrative officer and members of the governing body of the local government. However, Section 13 "does not authorize the impairment of vested pension benefits."

Section 18 of PA 436 empowers the emergency manager to recommend a Chapter 9 bankruptcy filing to the governor, and states that the governor may place contingencies of a local government in order to proceed under chapter 9.

In *Pohutski*, 465 Mich at 683, 684 (2002), the Michigan Supreme held:

When parsing a statute, we presume every word is used for a purpose. As far as possible, we give effect to every clause and sentence. "HN6The Court may not assume that the Legislature inadvertently made use of one word or [***10] phrase instead of another." Robinson v Detroit, 462 Mich. 439, 459; 613 N.W.2d 307 (2000). **Similarly, we should take care to avoid a construction that renders any part of the statute surplusage or nugatory**.

2

At the October 15 hearing in front of this honorable Court, City of Detroit attorneys argued that because Article IX, Section 24, of the Michigan constitution was not specifically included into Section 18 of PA 436, the governor and emergency manager were not required to include a contingency barring the diminishment or impairment of pensions with the Chapter 9 filing. However, this interpretation of PA 436 completely misapplies Michigan law on statutory construction. It parses the statute and renders the sections of the statute incorporating the non-impairment of pensions nugatory, in express violation of the Michigan rules of statutory construction.

In *General Motors Acceptance Corporation v Citizens Commercial & Savings Bank*, 2001 Mich App LEXIS 295, the Michigan Court of Appeals noted that the *Pohutski* interpretation on statutory construction even extends to separate statutes that relate to the same subject matter. The Court held:

> Generally, statutes that 'relate to the same subject or share a common purpose are in pari materia and must be read together as one law. Reviewing courts should also avoid any statutory construction that would render a statute, or merely part of it, surplusage or nugatory. [internal citations omitted]

In this case, the court interpreted the two statutes in a manner consistent with both in rendering its decision.

**Exhibit 1, attached.**

In *Bolhuis v Public School Retirement System*, 2011 Mich App LEXIS 1392, the court read various sections of the statute in conjunction with each other in making a determination as to what constitutes compensation under that law. Significantly, the Court noted the exclusion of certain amounts from the calculation of compensation in one part of the statute played a role in making its determination on how to interpret a separate section of the statute.

**Exhibit 2, attached.**

3

In *Knight Enterprises v Fairlane Car Wash*, 482 Mich 1006 (2008), the Michigan Supreme Court overturned a lower court decision on contract interpretation, where the lower court's interpretation would have rendered one section of the contract surplusage or nugatory. The Court held: "Courts must give effect to every word, phrase and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." Michigan courts apply the same principles of construction to contract interpretation as they do to statutes. *Klapp v United Insurance Agency, Inc.*, 468 Mich 459 (2003).

In the present case, the fact that PA 436 incorporates the Michigan constitutional non-impairment of pensions bar into two sections of the law, including the section that specifically delineates the powers of the emergency manager relative to pension funds, demonstrates the legislative intent to insure that this constitutional protection of pensions is to be respected and upheld, even in the context of a Chapter 9 bankrutpcy filing.

This legislative intent is further demonstrated by the absence of the power to impair pensions in Section 12 of PA 436, which provides the emergency power with the power to break all sorts of other contracts including collective bargaining agreement, but specifically excludes pensions. Michigan courts follow the doctrine of expression unius exclusion alterius (the expression of one thing is the exclusion of another). *Smitter v. Thornapple Twp.*, 494 Mich. 121 (Mich. 2013)

In *In re City of Vallejo, CA,* 432 BR 262, 270 (2010)(US Dist Ct., Eastern District CA), , while the Court held on appeal that the California statute authorizing a Chapter 9 filing did not preclude the modification of labor contracts, the Court's explanation is relevant to the facts of this fact. The Court noted:

> State labor law is not explicitly identified in California Government Code Section 53760 as an exception to the general grant of authority for municipalities to

pursue Chapter 9 bankruptcy. **If California had desired to restrict the ability of its municipalities to reject public employee contracts in light of state labor law, it could have done so as a pre-condition to seeking relief under Chapter 9**. (emphasis added)

In present case, the Chapter 9 authorizing statute, PA 436, specifically incorporates the Michigan constitutional protection of pensions into the law. Because the legislature in its writing of PA 436 evidenced its intent to maintain the constitutional protections of public pensions, any Michigan Chapter 9 filing pursuant to PA 436 must incorporate the non-impairment of pensions as a contingency attached to Chapter 9 filing.

The failure to incorporate the non-impairment of pensions into the City of Detroit's Chapter 9 filing violates the specific authorization for the filing under Michigan law. As a result, the City of Detroit's bankruptcy filing must be declared void ab initio, or at the minimum, this honorable Court must amend the petition to include a contingency protecting public pensions into the City of Detroit's bankruptcy filing.

### III. PA 436 ANTICIPATES A PENSION SHORTFALL BUT STILL MAINTAINS THE CONSTITUTIONAL BAN ON IMPAIRMENT OF ACCRUED PENSIONS

At the October 15, 2013, this honorable Court focused on whether the Michigan constitutional bar on impairment of accrued pensions could be maintained if there was, in fact, a pension shortfall.

Significantly, PA 436, Section 12(1)(m) anticipates such a shortfall and offers the emergency manager remedies to restructure the pension fund operation in the face of such a shortfall. However, Section 12(1)(m)(ii) specifically mandates that even in the fact of such a shortfall the emergency manager must full comply with the constitutional prohibition on impairing pensions pursuant to Article IX Section 24. The explicit language of PA 436 makes

5

13-53846-tjt    Doc 1458    Filed 10/30/13    Entered 10/30/13 15:54:08    Page 5 of 9

clear that even in the face of financial difficulties including in the funding of the pensions themselves, the constitutional bar on impairment of accrued pensions is to be adhered to.

In addition, while PA 436 affords the emergency broad latitude to renegotiate or even abrogate most municipal contracts, and even to stop paying local officials, the legislative intent to maintain the constitutional bar on diminishing accrued pensions is explicitly affirmed by the Act's language that the emergency manager shall fully comply with section 24 of article IX of the Michigan constitution even with regard to public officials whose wages and benefits are otherwise cut-off pursuant to Section 13.

Viewing the statute in its entirety, the only possible interpretation of PA 436 is that non-impairment of accrued pension must be a contingency for a Chapter 9 filing to be strictly authorized under PA 436.

## IV. SIXTH CIRCUIT PRECEDENT UPHOLDS THE POWER OF A STATE TO LEGISLATE LIMITATIONS ON BANKRUPTCY

During the October 15 hearing, the City of Detroit attorneys argued that a contingency protecting accrued pensions attached to the City of Detroit's Chapter 9 filing would be in violation of federal preemption. However, in his objection, Interested Party Sole noted that pursuant to the 2012 Sixth Circuit decision in *Richardson v Schafer*, 689 F3d 601 (2012), a narrow state limitation on the scope of the relief available in a Chapter 9 bankruptcy is not preempted by federal law.

In *Schafer*, supra, the Court noted that the interpretation of the phrase "uniform laws" by both the Supreme Court and this Court permits states to act in the arena of bankruptcy exemptions even if they do so by making certain exemptions available only to debtors in bankruptcy, and that such exemptions schemes are not invalidated by the Supremacy clause." *Id*. at 603.

The Sixth Circuit cited to its own holding in *Rhodes v Stewart*, 705 F2d 159 (6th Cir 1983) for the proposition that states have concurrent authority to promulgate laws governing exemptions applicable in bankruptcy cases. The Court further noted that "this understanding that the federal power was exclusive eventually gave way to an acceptance that states could, in the absence of federal legislation, pass laws on bankruptcy." *Id*. at 606. The Court noted that the standard in evaluating whether a state activity was preempted by federal law was conflict preemption., whether "the laws in question conflict such that it is impossible for a party to comply with both laws simultaneously, or where the enforcement of the state law would hinder or frustrate the full purposes and objectives of the federal law." Id. at 611.

In *Rhodes v. Stewart*, 705 F.2d 159, 163, the Sixth Circuit held:

> It is fundamental that the state and federal legislatures share concurrent authority to promulgate bankruptcy laws, *Sturges v. Crowninshield*, 17 U.S. (4 Wheat) 122, 4 L. Ed. 529 (1819), and that the Supremacy Clause and the doctrine of preemption will serve to invalidate state promulgations to the extent that they are inconsistent with or contrary to federal laws. *Perez v. Campbell*, 402 U.S. 637, 91 S. Ct. 1704, 29 L. Ed. 2d 233 (1971). It is equally axiomatic, however, that Congress has not preempted an area wherein it has legislated when it expressly and concurrently authorizes the state legislatures to disregard or opt-out of such federal legislative area. In such instance, rather than preempting the area, Congress expressly authorizes the states to "preempt" the federal legislation. Congress did not intend to preempt bankruptcy exemptions through promulgation of 11 U.S.C. § 522(d) since it vested in the states the ultimate authority to determine their own bankruptcy exemptions. 11 U.S.C. § 522(b)(1).

The principle of concurrent state and federal authority to determine bankruptcy exemptions is especially apt in the Chapter 9 setting, where Congress has delegated to individual states whether or not to even authorize a Chapter 9 filing, and approximately half of the states have chosen to not do so. A contingency attached to the City of Detroit bankruptcy would not fundamentally conflict with the bankruptcy scheme under Chapter 9. It allows ample room for adjustment of debt, even debt associated with retiree benefits where unaccrued pension benefits

7

are not afforded the constitutional protection and it is questionable whether health benefits for retirees are covered as well.

It should be noted that the legislative purpose behind PA 436 is in part to provide necessary services essential to the public, health, safety and welfare. Certainly, the protection of what amount to pretty meager pension benefits is consistent with that public purpose, where retirees are a significant portion of the population in the City of Detroit.

Moreover, at the same time the City of Detroit contends that it should have the right to reduce pensions to as little as 16 cents on the dollar owed, the City has the audacity to ask this Court to approve a forebearance agreement it negotiated with Bank of America and UBS, allowing for payment of 80 cents to the dollar on termination fees associated with interest rate swaps that the City admits have drained the treasury while providing no public benefit except to line the pockets of the bankers for engineering hedging derivatives to their own benefit.

## CONCLUSION

For the reasons stated herein and in the objection filed by Interested Party David Sole [Docket 495], Interested Party Sole respectfully requests that this honorable Court deny the City of Detroit's (through the Emergency Manager) eligibility for filing this Chapter 9 bankruptcy because the petition violates the state authorization statute which mandates that any Chapter 9 filing under PA 436 must be subject to the Michigan constitutional limitation on not diminishing or impairing accrued pensions, or in the alternative, that this honorable Court specifically exclude any diminishing or impairing of accrued pension benefits as part of the City of Detroit's restructuring of debt pursuant to this Chapter 9 bankruptcy.

Respectfully submitted,

JEROME D. GOLDBERG, PLLC

By: */s/ Jerome D. Goldberg*
Jerome D. Goldberg (P61678)
Attorney for David Sole, Party in Interest
2921 East Jefferson, Suite 205
Detroit, MI 48207
Phone: 313-393-6001
Fax: 313-393-6007
Email: apclawyer@sbcglobal.net

DATED: October 30, 2013