# EXHIBIT 1



**GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff-Appellant, v CITIZENS COMMERCIAL & SAVINGS BANK, Defendant-Appellee.**

No. 222080

COURT OF APPEALS OF MICHIGAN

*2001 Mich. App. LEXIS 295*

December 18, 2001, Decided

**NOTICE:** [*1] IN ACCORDANCE WITH THE MICHIGAN COURT OF APPEALS RULES, UNPUBLISHED OPINIONS ARE NOT PRECEDENTIALLY BINDING UNDER THE RULES OF STARE DECISIS.

**PRIOR HISTORY:** Genesee Circuit Court. LC No. 97-057734-CK.

**DISPOSITION:** Affirmed.

**JUDGES:** Before: Owens, P.J., and Holbrook, Jr. and Gage, JJ.

**OPINION**

PER CURIAM.

Plaintiff appeals as of right from a trial court order denying its motion for summary disposition against defendant Citizens Commercial & Savings Bank, as well as a judgment of no cause of action against defendant following a bench trial. Plaintiff had sought to recover from defendant under a conversion theory. We affirm.

The underlying facts in this matter are not in dispute. On October 30, 1992, Lafonza and Joan Washington purchased a new 1993 Pontiac Transport Van. As part of the purchase, the Washingtons executed a purchase security agreement with plaintiff ("GMAC loan"), which required them to make weekly payments of $ 84.81. A final payment of $ 8,221.68 was due on November 4, 1996.

On April 1, 1996, the Washingtons executed an installment loan agreement with NBD Bank, which apparently was intended to both pay off the balance of the GMAC loan and provide the Washingtons approximately $ 1,000. NBD [*2] Bank issued a cashier's check for $ 9,126.87, made payable to both plaintiff and the Washingtons, and gave the check to the Washingtons. The title for the vehicle was modified to both reflect NBD Bank's new security interest and delete plaintiff's security interest. The Washingtons endorsed the check and presented it to defendant without plaintiff's endorsement. Defendant erroneously accepted the cashier's check without plaintiff's endorsement, and paid the Washingtons the entire check proceeds. However, in the absence of plaintiff's endorsement, NBD Bank refused to honor the check.

The Washingtons continued making payments on the GMAC loan, but eventually defaulted. The vehicle was involved in an accident on October 24, 1996, resulting in NBD Bank--the party holding a security interest according to the title--receiving insurance proceeds for the van's salvage value. Plaintiff filed an action against the Washingtons and NBD Bank, and subsequently amended its complaint to add defendant as a party under

13-53846-tjt Doc 1458-2 Filed 10/30/13 Entered 10/30/13 15:54:08 Page 2 of 4

a conversion theory. NBD Bank eventually transferred the insurance proceeds to plaintiff, and was voluntarily dismissed from the lawsuit. The trial court, however, denied plaintiff's [*3] motion for summary disposition against defendant on the conversion claim. In addition, following a bench trial, the trial court ruled that plaintiff could not recover for conversion against defendant because NBD Bank never honored the cashier's check.

On appeal, plaintiff argues that the trial court erred as a matter of law by ruling that defendant was not liable for conversion of the cashier's check. Plaintiff contends that defendant, as the depository bank, converted the cashier's check when it paid funds to the Washingtons without plaintiff's endorsement. However, defendant contends that it did not convert the check because NBD Bank (the drawee bank) dishonored the check, thereby prevented it from receiving any check proceeds. The parties' arguments concern the application of 440.3420(1), which provides in pertinent part:

> The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. [*4]

We must decide whether a depository bank that improperly pays on a presented check to one of multiple intended payees is liable to the other intended payees for conversion under *MCL 440.3420(1)* if the drawee bank dishonors the check (i.e., the depository bank does not receive proceeds on the check).

We review de novo conclusions of law. *Walters v Snyder*, 239 Mich. App. 453, 456; 608 N.W.2d 97 (2000). Issues of statutory construction are also reviewed de novo. *Hinkle v Wayne Co Clerk*, 245 Mich. App. 405, 413-414; 631 N.W.2d 27 (2001). In regard to statutory construction, we have opined:

> The primary goal of statutory interpretation is to give effect to the intent of the Legislature. This determination is accomplished by reviewing the plain language of the statute itself. If the statutory language is unambiguous, it is presumed that the Legislature intended the clearly expressed meaning, and judicial construction is neither required nor permitted. If the statutory language is ambiguous, only then may we look outside the statute to ascertain the Legislature's intent. [*Hinkle, supra at 414* [*5] (citations omitted).]

Generally, statutes that "relate to the same subject or share a common purpose are in pari materia and must be read together as one law." *Ypsilanti Housing Comm'n v O'Day*, 240 Mich. App. 621, 625; 618 N.W.2d 18 (2000). Reviewing courts should also avoid any statutory construction that would render a statute, or merely part of it, surplusage or nugatory. *Id. at 624*.

Here, defendant contends that *MCL 440.3420(1)* should be read to impose conversion liability on a depository bank when it obtains payment on a check and a drawee bank when it makes payment on a check. In contrast, plaintiff contends that the statutory language should be read to allow both a drawee bank and a depository bank to be liable for *either* making or obtaining payment. At first glance, plaintiff's construction seems consistent with the term "a bank," rather than the more specific breakdown suggested by defendant. However, a drawee is a party ordered to *make* payment on a check, and, by definition, does not ever *obtain* payment on a check. See *MCL 440.3103(1)(b)*.[1] As such, plaintiff's interpretation [*6] of *MCL 440.3420(1)* conflicts with another pertinent statute. At the very least, therefore, we find an ambiguity in *MCL 440.3420(1)* that mandates statutory construction. *Hinkle, supra at 414*.

---

1 This definition occurs within the negotiable instruments section of the Uniform Commercial Code, as codified in Michigan. Sharing a common subject and purpose, we believe that these statutes-- *MCL 440.3420(1)* and *MCL 440.3103(1)(b)*--are in pari materia and must be read together. *Ypsilanti, supra at 625*.

---

Generally, the remedies allowed by the various UCC provisions "shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed . . . ." "A conversion is any distinct act of dominion wrongfully exerted over another person's personal property." *Pamar Enterprises,*

*Inc v Huntington Banks of Michigan*, 228 Mich. App. 727, 734; [*7] 580 N.W.2d 11 (1998). A check is the personal property of the designated payee or payees. *Id.*; *MCL 440.3420(1)*. An intended payee may bring a conversion action against either the drawee bank or the depository bank. *Pamar, supra at 734*. For example, where a depository bank improperly allows one of multiple intended payees to cash a check, and the drawee bank honors the check and pays the depository bank, it follows that either the depository bank or the drawee bank should bear the responsibility of making the other intended payees whole.

However, plaintiff seeks to make defendant liable even though the drawee bank did not honor the check. In other words, defendant would have to pay plaintiff the face value of the cashier's check. If so, this remedy would essentially "punish" defendant twice for one error because both the Washingtons and plaintiff would have received the full face value of the cashier's check. Plaintiff's risk in financing the Washington's automobile would be eliminated. Similarly, NBD Bank, who assumed the risk of loaning money to the Washingtons, would not have to pay anything. In other words, the two parties [*8] who knowingly assumed the risk of dealing with the Washingtons would have their risk obviated by one error. Even though defendant erroneously accepted the cashier's check from the Washingtons, we do not believe that such a "double punishment" is consistent with the UCC goal of leaving the parties in as good a position as they would have been in but for the error.

Again, had defendant received money from NBD Bank, defendant would have commensurate liability to plaintiff for conversion. Indeed, under this scenario, the drawee bank (NBD Bank) would have "made payment" and the depository bank (defendant) would have "obtained payment"—the circumstances suggested by defendant's interpretation of *MCL 440.3420(1)*.

Moreover, in *Alumax Aluminum Corp v Norstar Bank, NA*, 168 A.D.2d 163, 572 N.Y.S.2d 133, 135 (NY App., 1991), a case involving similar facts, the court reached the same conclusion: "In order to be liable for conversion under the statute, the depositary [sic] bank must, at some point, have received the proceeds of the wrongfully accepted check." We agree. Therefore, we hold that a depository bank is liable for conversion under *MCL 440.3420(1)* [*9] only if the drawee bank honors the improperly accepted check. Because NBD Bank did not honor the cashier's check in the instant matter, we conclude that the trial court did not err as a matter of law by dismissing plaintiff's conversion claim.

Affirmed.

/s/ Donald S. Owens

/s/ Donald E. Holbrook, Jr.

/s/ Hilda R. Gage