

MARGARET K. BOLHUIS, Petitioner-Appellee, v PUBLIC SCHOOL EMPLOYEES RETIREMENT SYSTEM and PUBLIC SCHOOL EMPLOYEES RETIREMENT BOARD, Respondents-Appellants.

No. 298279

COURT OF APPEALS OF MICHIGAN

2011 Mich. App. LEXIS 1392

July 26, 2011, Decided

**NOTICE:** THIS IS AN UNPUBLISHED OPINION. IN ACCORDANCE WITH MICHIGAN COURT OF APPEALS RULES, UNPUBLISHED OPINIONS ARE NOT PRECEDENTIALLY BINDING UNDER THE RULES OF STARE DECISIS.

**SUBSEQUENT HISTORY:** Leave to appeal denied by *Bolhuis v. Mich. Pub. Sch. Employees' Ret. Sys.*, 2012 Mich. LEXIS 452 (Mich., Apr. 18, 2012)

**PRIOR HISTORY:** [*1]
Ingham Circuit Court. LC No. 09-001515-AA.

**JUDGES:** Before: BECKERING, P.J., and FORT HOOD and STEPHENS, JJ.

**OPINION**

PER CURIAM.

Respondents, Public School Employees Retirement System and Public School Employees Retirement Board (board), appeal by leave granted the circuit court order reversing their calculation of pension benefits and remanding for a determination whether the lump sum longevity payment to petitioner, Margaret K. Bolhuis, is "creditable compensation" pursuant to the retirement act. We vacate the circuit court order and reinstate the order of respondent board.

Following petitioner's application for retirement, an estimate of benefits was prepared. According to the estimate, petitioner's final average compensation (FAC) of $71,376.25 was premised on the last three years of employment when her wages were $62,892.74 for the 2002/2003 school year, $85,695.61 for the 2003/2004 school year, and $65,540.40 for the 2004/2005 school year. On March 1, 2006, a benefit award letter mailed to petitioner concluded that her FAC was $72,044.21, with a monthly pension of $2,522.39. However, the wage calculation of $85,695.61 included a retroactive lump-sum longevity payment of $10,247 covering the years [*2] from 1989 to 2003. The lump sum payment of $10,247 was actually erroneously included twice. Petitioner testified that she was unaware of any error in the computation of her income for the 2003/2004 school year because she received the lump sum longevity payment, mentored two teachers, and was the head of the English Department. She also testified that the lump sum longevity payment of $10,247 was included in her paycheck. In May 2006, petitioner sent a letter seeking an adjustment to her pension benefits because a contract was not in place for the last eighteen months of her employment, and a settlement had recently resolved the outstanding contract issue. In April 2007, petitioner received a response by letter indicating that the contract settlement was taken into account with regard to her FAC. However, the letter also advised that $20,494 in

compensation had erroneously been reported for the 2003/2004 wages. Therefore, petitioner's FAC was reduced to $66,111.75.

Petitioner appealed the reduction in her benefits to the circuit court. The circuit court held that the decision by respondent board was arbitrary and capricious because there was no clear definition or standard to determine [*3] when an amount was earned under the retirement act. The circuit court remanded the case to respondent board to determine whether a lump sum longevity payment was "creditable compensation." We granted respondents' application for leave to appeal.

The Michigan Constitution provides for judicial review of administrative decisions, stating in relevant part:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. [*Const 1963, art 6, § 28.*]

The application of the standard of review is contingent on the type of challenge at issue and must be in accordance with separation-of-power principles. *In re Complaint of Rovas Against SBC Mich, 482 Mich 90, 97-99; 754 NW2d 259 (2008).* The agency's interpretation [*4] of a statute "is not binding on the courts, and it cannot conflict with the Legislature's intent as expressed in the language of the statute at issue." *Id. at 103.* Rather, a reviewing court must give "respectful consideration" to the agency's construction of the statute and provide "cogent reasons" for overruling an agency's interpretation. *Id.* When the law is doubtful or obscure, the agency's interpretation can be particularly helpful. *Id. at 108.* Therefore, "[w]hen considering an agency's statutory construction, the primary question presented is whether the interpretation is consistent with or contrary to the plain language of the statute." *Id.* Respectful consideration is not equal to deference. *Id.* Ultimately, the key issue is the proper construction of the plain language of the statute, and the agency's interpretation cannot conflict with this meaning. *Id.*

The rules regarding statutory construction are well established:

> Our primary task in construing a statute is to discern and give effect to the intent of the Legislature. The words contained in a statute provide us with the most reliable evidence of the Legislature's intent. In ascertaining legislative intent, this Court gives effect [*5] to every word, phrase, and clause in the statute. We must consider both the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme. This Court must avoid a construction that would render any part of a statute surplusage or nugatory. The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended. If the wording or language of a statute is unambiguous, the Legislature is deemed to have intended the meaning clearly expressed, and we must enforce the statute as written. A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. [*Zwiers v Growney, 286 Mich App 38, 44; 778 NW2d 81 (2009)* (citations and quotations omitted).]

"When a statute specifically defines a given term, that definition alone controls." *Haynes v Neshewat, 477 Mich 29, 35; 729 NW2d 488 (2007).*

The public school employees retirement act of 1979, MCL 38.1301 *et seq.*, contains a provision defining compensation:

> (1) Except as otherwise provided in this [*6] act, "compensation" means the

remuneration earned by a member for service performed as a public school employee.

(2) Compensation includes salary and wages and all of the following:

(a) Remuneration earned for all services performed as a public school employee including, but not limited to, teaching, coaching, and participation in extracurricular activities.

(b) On a current basis, investments made in a tax sheltered annuity for a public school employee as remuneration for service under this act. The remuneration shall be valued at the amount of money actually paid into the annuity.

(c) All amounts deducted from the pay of a public school employee, including amounts deducted pursuant to the member investment plan.

(d) Longevity pay.

(e) Overtime pay for service performed outside of what is considered normal working hours for the affected employee.

(f) Pay for vacation, holiday, and sick leave while absent from work. As used in this subdivision, "sick leave" includes weekly worker's disability compensation payments received for personal injury in the employ of and while employed by a reporting unit.

(g) [*7] Items of deferred compensation, exclusive of employer contributions to the retirement system.

(h) Merit pay as established by a reporting unit for the purpose of rewarding achievement of specific performance objectives.

(3) Compensation does not include any of the following:

(a) Payments for unused sick or annual leave.

(b) Bonus payments.

(c) Payments for hospitalization insurance and life insurance premiums.

(d) Other fringe benefits paid by and from the funds of employers of public school employees.

(e) Remuneration paid for the specific purpose of increasing the final average compensation.

(f) Compensation in excess of an amount over the level of compensation reported for the preceding year except increases provided by the normal salary schedule for the current job classification. ... [*MCL 38.1303a.*]

The retirement board must determine whether any form of remuneration paid to a member is included in the definition of compensation, *MCL 38.1303a(2), (3)*, and if not identified as compensation, determine if it should be compensation reportable to the retirement system. *MCL 38.1303a(5)*. "In any case where a petitioner seeks to have remuneration included in compensation reportable to the retirement [*8] system, the petitioner shall have the burden of proof." *MCL 38.1303a(6)*.

In the present case, the circuit court erred in holding that the decision by respondent board was arbitrary and capricious. The issue in this case involves a matter of statutory construction. Accordingly, a reviewing court does not examine the decision under the arbitrary and capricious standard, but rather, must determine if the agency's interpretation is consistent with the plain language of the statute. *Rovas, 482 Mich at 103*.

*MCL 38.1303a(1)* defines "compensation" as "remuneration earned by a member for service performed as a public school employee." The statute further provides that salary and wages are compensation as well as longevity pay. *MCL 38.1303a(2)(d)*. However, the statute also delineates items that are not compensation and prohibits inclusion of payments deliberately designed to increase the final average compensation, such as payment of unused sick or annual leave. *MCL*

*38.1303a(3)(a), (e)*. Additionally, as set forth above, compensation does not include: "(f) Compensation in excess of an amount over the level of compensation reported for the preceding year except increases provided by the normal salary [*9] schedule for the current job classification." *MCL 38.1303a(3)(f)*. In the present case, although petitioner received a lumpsum payment of $10,247.00 to govern the underpayment of longevity, she also received an itemization of the year and the corresponding amount of the longevity pay earned that year. For example, in 1989, petitioner's longevity pay was only $392, in 1995, she received $1095, and in 2003, she received $673.

The plain language of *MCL 38.1303a* details the items that are compensation, including longevity pay, *MCL 38.1303a(2)(d)*, but also excludes from compensation amounts that exceed the prior year unless it is a normal increase, *MCL 38.1303a(3)(f)*. The plain language of *MCL 38.1303a(3)(f)* precludes the aggregation of retroactive longevity payments into a lump sum for purposes of calculating compensation for a given year. *Zwiers, 286 Mich App at 44*. Rather, it requires that compensation include the amount designated for a particular year by holding that only normal increases are to be included and requires an examination of compensation to the extent that it deviates substantially from the preceding year. This statutory interpretation of the plain language of the statute [*10] is consistent with the decision rendered by respondents.[1] Accordingly, the circuit court erred in holding that the decision was arbitrary and capricious. We vacate the decision of the circuit court and remand for reinstatement of the decision by respondent board.

---

1 Contrary to the assertions raised by petitioner, this decision is consistent with case law regarding calculation of a retiree's average final compensation, albeit when considered under another statutory provision. In *Stover v Retirement Bd of the City of St Clair Shores Firemen & Police Pension Sys, 78 Mich App 409, 412-413; 260 NW2d 112 (1977)*, this Court held that payments for unused sick and vacation days should not be included in calculating a retiree's average final compensation, because those payments were not pay that an employee received "for work done that year." See also *Lansing Firefighters Ass'n Local 421 v Bd of Trustees of the City of Lansing Policemen's & Firemen's Retirement Sys, 90 Mich App 441, 445; 282 NW2d 346 (1979)*. Petitioner's reliance on the tax code is not properly presented for review. It was not raised in the statement of questions presented by respondents, see *Leavitt v Monaco Coach Corp, 241 Mich App 288, 312 n.4;* [*11] *616 NW2d 175 (2000)*, and petitioner failed to file a cross appeal. See *MCR 7.207*. Moreover, petitioner's reliance on the federal tax code is misplaced in light of the statute at issue in the present case.

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane M. Beckering

/s/ Karen M. Fort Hood

/s/ Cynthia Diane Stephens