UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:

CITY OF DETROIT, MICHIGAN          Chapter 9
                                                   Case No. 13-53846-swr
          Debtor.                    Hon. Stephen W. Rhodes

_____/

**SUPPLEMENTAL BRIEF OF THE**
**<u>RETIREE ASSOCIATION PARTIES ON ELIGIBILITY</u>**

The Retired Detroit Police & Fire Fighters Association ("RDPFFA"), Donald Taylor, individually and as President of the RDPFFA, the Detroit Retired City Employees Association ("DRCEA"), and Shirley V. Lightsey, individually and as President of the DRCEA (collectively "Retiree Association Parties"), through their counsel, Lippitt O'Keefe, PLLC and Silverman & Morris, P.L.L.C., submit this supplemental brief pursuant to the Court's order of October 17, 2013 (docket #1217).

## DISCUSSION

### I. The early development of American bankruptcy law reflects state sovereignty.

Our first federal bankruptcy law was enacted in 1800, and was in effect until its repeal in 1803. This early bankruptcy experiment provided a discharge for an eligible debtor (primarily merchants) "from all debts by him or her owing at the time he or she became bankrupt." The discharge did not include obligations owing to the government (*e.g.,* taxes). Section 62 provided that "nothing in this law… shall be construed to lessen or impair any right to, or security for, money due to the United States ***or to any of them***." (emphasis added). This provision preserved the sovereignty of the states with respect to debts owing to them. This was still the case under the Bankruptcy Act of 1867. *U.S. v. Herron*, 87 U.S. 251 (1873).

Also not dischargeable under the original act was what we now categorize as "domestic support obligations" under 11 U.S.C. § 523(a)(5), and other obligations to a child or former spouse (*e.g.,* a property settlement) under 11 U.S.C. § 523(a)(15).

These "family obligations" were not considered "debts" under the 1800 act. Ravin, *Dischargeability in Bankruptcy of Alimony, Maintenance and Support Obligations*, 60 Am. Bankr. L.J. 1, 2 (1986).

The next bankruptcy law was the Bankruptcy Act of 1841. Under that law, only debts that were "provable" were discharged. 5 Stat. 440, § 4. "Provable" debts did not include family obligations such as child support. Collier, *The Law and Practice in Bankruptcy Under the National Bankruptcy Act of 1898*, Vol. I, p. 388 (12th ed., 1921); *In re Cotton,* 6 F. Cas. 617 (D. Conn. 1843). Section 2 of the Act also explicitly provided that "the lawful *rights* of married women or minors… which may be valid under the law of the states respectively, and which are not inconsistent with… this act" were not impaired. 5 Stat. 440, §2 (emphasis added). The term "rights" was apparently used to differentiate the debtor's family obligations from mere debts.

Alimony continued to be excluded from the category of "provable" claims under the next two bankruptcy acts, the 1867 Act and 1898 Act. *Audubon v. Shufeldt*, 181 U.S. 575, 578-579 (1901). The Supreme Court's logic in *Audubon* was that because alimony is under the control of the state court awarding it, it is not dischargeable in bankruptcy. This was a recognition of state sovereignty in the area of domestic relations. Family obligations, determined under *state* law, remain today generally non-dischargeable.

There are parallels between the 19th-Century acts and modern chapter 9. Chapter 9, like the early bankruptcy acts, is limited in its scope due to federalism constraints. The early bankruptcy acts recognized sovereign immunity, including state sovereign immunity, on the issue of the discharge of taxes. The states were also, and still are, recognized as having the exclusive power to decide, adjust and enforce family obligations. Despite changes in the law to provide for the possibility of a discharge of certain tax obligations and certain family obligations, the states retain the authority to levy taxes, and a claim for those taxes which are levied by a state may be entitled to priority in the bankruptcy case. Thus, state law partially governs the extent to which a state may share as a creditor.

State law is important in bankruptcy cases in myriad other ways. Property rights, even in bankruptcy, are primarily determined by state law. *Butner v. United States,* 440 U.S. 48, 54 (1979). Despite the inclusion in the present Bankruptcy Code of federal exemptions, it is the states which hold the power to "opt-in" to allow their residents to elect such exemptions. *Rhodes v. Stewart,* 705 F.2d 159 (6th Cir. 1983). Bankruptcy-specific state exemptions, including Michigan's, have been upheld. *In re Schafer,* 689 F.3d 601 (6th Cir. 2012). As the *Schafer* court explained "[i]t is fundamental that the state and federal legislatures share concurrent authority to promulgate bankruptcy laws. . . ." *Id.* at 606 (quoting *Rhodes v. Stewart,* 705 F.2d at 163). *See also, Midlantic National Bank v. N.J. Dept. of Environ. Prot.,* 474 U.S. 494

3

13-53846-tjt    Doc 1462    Filed 10/30/13    Entered 10/30/13 17:00:34    Page 4 of 10

(1986) (trustee may not abandon property in contravention of state statute protecting public health or safety); *Integrated Solutions, Inc. v. Service Support Specialties, Inc.,* 124 F.3d 487 (3rd Cir. 1997) (neither § 363 nor § 704 authorize trustee to sell property in violation of state-law transfer restrictions).

The Bankruptcy Code recognizes the primacy of state law with respect to the governance of a chapter 9 debtor and actions by a chapter 9 debtor. As has been recounted in other briefs, under § 901 numerous provisions of the Bankruptcy Code, including those which create an estate, provide for the appointment of a trustee, and provide for conversation of a case to chapter 7, are not applicable. Section 903 provides for a reservation of state power to control its municipalities. Section 904 provides further limitations on the jurisdiction and powers of the Bankruptcy Court, including interference with any of the property or revenues of the debtor. The Bankruptcy Court could not prohibit the debtor from utilizing its property or revenues to fulfill its obligations to its retirees under the Pensions Clause.

The City argues that Michigan's constitutional prohibition on impairment or restriction of pension obligations is not effective once a bankruptcy is filed. The City currently claims that the issue is not the terms of the plan to be proposed by the City, but the scope of the discharge, and that the scope of the discharge is a uniquely federal question. This argument is not supported by an historical analysis of American bankruptcy law. Rather, the counter-argument, which is that bankruptcy law has

always recognized the authority of the states over certain matters, is supported by the historical view.

The authority of a municipality to propose a particular provision in a plan of adjustment is governed by state law. Neither the Bankruptcy Code nor any other provision of federal law purports to govern the powers of a Michigan municipal corporation or of any official of such municipality.

## II. The Pensions Clause does not establish a "priority".

The City has mischaracterized the Pensions Clause as a state law giving public-pension obligations a priority in bankruptcy. This argument is intended to advance the City's plan to "trump" the Pensions Clause through preemption.

The Pensions Clause does not provide for priority of payment. A state usually provides a priority by specifying that the debt is entitled to priority in payment. An example is found in the Workers' Disability Compensation Act (M.C.L. § 418.821), which provides that liability of an employer for workers' compensation payments shall be paramount to other claims, except for wages and taxes. Another way to ensure a priority is to provide for a statutory lien. M.C.L. § 211.40 provides for property taxes to be secured by a "first lien, prior, superior and paramount." Further, M.C.L. § 324.3115 provides that certain fines for pollution "constitute a lien on any property, of any nature or kind, owned by the defendant". A construction lien is entitled to priority under state law. The Pensions Clause does not provide for either a lien or a

priority. Moreover, the only priority applicable in chapter 9 is § 507(a)(2), which provides for administrative priority claims. That priority is applicable so that a municipality is obligated to pay court fees, post-petition taxes and post-petition trade claims as a condition to confirmation of its plan of adjustment. This is a limited intrusion into a municipality's independence. It is a simple requirement that if the court confirms a plan, the municipality needs to pay those expenses it incurred during the time that it had voluntarily submitted to the court's jurisdiction.

The priorities provided for in § 507 are applicable in chapter 7 because chapter 7 is a process of liquidation of assets and distribution of the proceeds. Those priorities are also applicable in chapter 11 because liquidation is the implied alternative against which a plan of reorganization is measured. Liquidation is not provided for in chapter 9. Therefore, priorities are not provided for in chapter 9. Moreover, § 1129(a)(9), which mandates certain treatment in a plan for priority claims, is not applicable in chapter 9. Without the possibility of liquidation in chapter 9, priorities are not necessary. The Pensions Clause is a state constitutional provision, a fundamental and supreme state law, which controls the City in the exercise of its political and/or governmental power. The Pensions Clause establishes a rule, binding on all branches of state and city government, addressing the authority of a municipality to reduce or impair its pension obligations. It is an essential definition of the duties of the state and its subdivisions.

A correct understanding of the Pensions Clause supports three conclusions: First, that the Pensions Clause is not preempted by federal law. Second, that the provisions of chapter 9 require the City's adherence to this provision of the Michigan Constitution. Third, the Bankruptcy Code and the Tenth Amendment require that the Pensions Clause be respected. The City cannot ignore the Pensions Clause by arguing that it is superseded by priorities provided for in the Bankruptcy Code. Therefore, this case, which was filed with the avowed purpose of violating the Pensions Clause, and which does not satisfy the eligibility requirements, must be dismissed.

**III. The City will be the impairer of vested accrued pension benefits under a plan of adjustment, to the extent that such pensions are diminished or reduced.**

At the hearing on eligibility, there was a discussion of Justice Cardozo's dissent in *Ashton* [1] and whether certain logic used in that dissent might have influenced statements made in the majority opinion in *Bekins* [2]. However, *Bekins* is inapplicable to this case. What was at issue in *Bekins* was a reconciliation of the Municipal Corporation Bankruptcy Act with the Tenth Amendment <u>not</u> an analysis of whether bankruptcy law preempts state constitutional provisions. Therefore, if the Supreme Court in *Bekins* used language, in dicta, which described the process of bankruptcy relief as a process of federal law, the choice of that language does not dictate that the Pensions Clause of the Michigan Constitution be interpreted such that the City, by

---

[1] *Ashton v. Cameron Cty District,* 298 U.S. 513 (1936).
[2] *U.S. v. Bekins,* 304 U.S. 27 (1938)

proposing a plan of adjustment, seeking confirmation of that plan of adjustment, and implementing that plan of adjustment, would not thereby impermissibly reduce or impair pensions.

The City argues that, if it proposes a plan of adjustment which impairs pensions, it will not have violated the Pensions Clause because confirmation of that plan would be effectuated by court order. The City's argument is the logical equivalent of saying that a person who uses a gun for a violent purpose is innocent of any wrongdoing. In this analogy, the plan is the bullet, the target is accrued vested pensions benefits, the City is the person holding the gun, and chapter 9 is the gun. The bullet does not get into the gun unless a person loads it. The gun does not fire itself; the person must pull the trigger. The target is not hit if the bullet is not fired. Here, the City is the only party that can load the plan into the bankruptcy process; the City is the only party that can seek confirmation. The Bankruptcy Code is simply the legal machinery used by the City.

### IV. Conclusion.

For the reasons stated above and previously argued by the Retiree Association Parties, the Court should dismiss the case for the reason that the City is ineligible to be a debtor under chapter 9 of the Bankruptcy Code because Article IX § 24 of the Michigan Constitution prohibits the City from diminishing or impairing accrued pensions.

Dated: October 30, 2013

Lippitt O'Keefe, PLLC

Brian D. O'Keefe (P39603)
Ryan C. Plecha (P71957)
370 East Maple Road, 3rd Floor
Birmingham, Michigan 48009
(248) 646-8292
rplecha@lippittokeefe.com

SILVERMAN & MORRIS, P.L.L.C.

*/s/ Thomas R. Morris*
Thomas R. Morris (P39141)
30500 Northwestern Highway, Suite 200
Farmington Hills, Michigan 48334
(248) 539-1330
morris@silvermanmorris.com

*Counsel for Retiree Association Parties*