**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

CITY OF DETROIT, MICHIGAN

Chapter 9
Case No. 13-53846-swr
Hon. Steven W. Rhodes

---

**RETIRED DETROIT POLICE MEMBERS ASSOCIATION'S**
**SUPPLEMENTAL BRIEF IN SUPPORT OF OBJECTIO TO ELIGIBILITY**

The Retired Detroit Police Members Association ("RDPMA"), by and through its attorneys, Strobl & Sharp, P.C., without acknowledging the jurisdiction of this Court, the constitutionality of the City of Detroit's ("Debtor" or "Detroit") Chapter 9 bankruptcy filing, or the eligibility of Detroit to relief under Chapter 9 of the Bankruptcy Code, hereby submits this Supplemental Brief in support of its Objection to the Chapter 9 Petition filed by the Debtor. The RDPMA hereby adopts its Objection to the City of Detroit Chapter 9 Petition filed on August 18, 2013 [Docket #520] as if fully set forth herein

## I.
## PRELIMINARY STATEMENT

On March 16, 2011, Michigan Governor Richard Snyder signed into law the Local Government and School District Fiscal Accountability Act, 2011 Public Act 4 ("PA 4"). On February 29, 2012, Stand Up for Democracy filed a referendum petition with the Michigan Secretary of State to invoke a referendum with respect to PA 4. On August 3, 2012, the Michigan Supreme Court issued a writ of mandamus to the Board of State Canvassers to certify the petition as sufficient thereby placing PA 4 on the November 2012 ballot.

Within days of the filing of Stand Up for Democracy's referendum petition, the State began discussions with various parties, including attorneys at Jones Day, regarding ways to

immunize PA 4 or a new law from the referendum vote. In early March 2012, attorneys from the firm of Jones Day, along with representatives of Miller Buckfire, were involved in discussions with the Michigan Department of Treasury regarding the consent agreement the State was seeking to compel the City of Detroit to agree to under the provisions of PA 4. On March 2, 2012, attorneys from Jones Day determined that the cleanest way for the State to take control of the City of Detroit was to pass new legislation that included a spending provision which would insulate such legislation from repeal by the referendum process.

Concerned that PA 4 would in fact be rejected in the November 2012 general election, the Michigan Department of Treasury began drafting replacement legislation months before the vote. The new legislation contained two *de minimis* spending provisions which allocated $5,780,000 in appropriations,[1] thus removing it from the referendum provision of the Michigan Constitution. The new legislation, the Local Financial Stability and Choice Act, 2012 Public Act 436 ("PA 436"), is, in the words of Kevyn Orr, nothing more than a redo and a thin veneer of revision of PA 4.

Under Section 921(c) of the Bankruptcy Code, a municipality's bankruptcy petition must be dismissed if either the debtor did not file the petition in good faith or the debtor does not meet the requirements of Chapter 9. 11 USC § 921(c). An entity may be a debtor under Chapter 9 if the entity files its petition in good faith, and it meets all of the requirements of Section 109(c), including that it "(2) is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization

---

[1] In his testimony, Kenneth Buckfire testified that "In June of 2013, the city was operating on a razors edge. If the city were to make the 40 million dollar bond payment on June 15 to the POC bond holders, that would only make sense if it collected all of its anticipated tax revenue on schedule in the amounts stipulated here. **The 7 million dollar cushion on a budget of this magnitude is almost, effectively, nothing."** (Audio File, Docket No. 1369, October 24, 2013, 1:52.18 – 39)

empowered by State law to authorize such entity to be a debtor under such chapter." 11 USC § 109(c). The debtor bears the burden of establishing that it meets each of the five statutory requirements of Section 109(c). *In re Valley Health*, 383 BR at 161; *In re County of Orange*, 183 BR 594, 599 (Bankr. C. D. Cal. 1995). Therefore, the Debtor must establish that the Michigan law under which it was purportedly authorized by Governor Richard Snyder to file this Chapter 9 proceeding is constitutional under the applicable provisions of the Michigan Constitution. Specifically, the City of Detroit bears the burden of establishing that Public Act 436, in relevant part, did not violate Article II, Section 9 of the Michigan Constitution.

## II.
## ARGUMENT

### A. The State of Michigan is bound by the testimony of Howard Ryan with respect to the inclusion of the spending provisions in Public Act 436.

On August 23, 2013, the UAW and the Flowers Plaintiffs served the State of Michigan c/o the Attorney General with a subpoena which included a request for the State to designate an individual pursuant to Federal Rule of Civil Procedure 30(b)(6) (the "Subpoena") to testify to, among other things, "(t)he content of communications between the Governor and the State Treasurer and their aides and agents and the legislative branch relating to the legislation that became PA 436, including but not limited to communications that considered the issue of the interplay of Article 9, Section 24 of the Michigan Constitution specifically or vested pension benefits generally with this legislation." (See Docket No. 656, p. 4). In response to the Subpoena, the State of Michigan designated Howard Ryan to appear and testify on behalf of the State.

Howard Ryan appeared and was deposed pursuant to the Subpoena on October 14, 2013. During his deposition, Mr. Ryan had the following exchanges referring to the appropriation of funds included as part of PA 436:

> Q: Do you recall when that provision of the legislation was added to the draft bill?
>
> A: Pretty early on, I believe. It was quite early. Maybe from the inception. I can't remember, but it's very early on.
>
> Q: So at least from your perspective, I think you've testified that your involvement was in – began in October, is that correct?
>
> A: Pretty much, yeah.
>
> Q: So – okay. I'm just trying to understand the timing of early on. What in your mind was early on?
>
> A: Early on would have been subsequent to the vote or after the vote, and probably mid to late November is early on in my mind.
>
> Q: And by vote, your referring to the repeal of PA 4?
>
> A: Yes.
>
> Q: 2011 PA 4?
>
> A. Yes.

Ryan Dep. 44:7 – 45:5, October 14, 2013.

Mr. Ryan Further testified that PA 436 was merely a contingency plan of the Governor in the event PA 4 was rejected through the upcoming referendum:

> Q: Do you know whether there were any discussion about passing a new emergency manager statute before the referendum election, either at Treasury, the Governor's office of among Treasury and the Governor's office and the Legislature?
>
> A: Yes.
>
> Q: When did those conversations begin?
>
> A: Oh, probably in October.

> Q: And do you know what the impetus was? Was it simply that it was up there on a referendum and that it might lose?
>
> A: Yes, it's a contingency.
>
> Q: Okay, in other words, it was a contingency if the referendum lost. If the referendum passed then the legislation was not going to be introduced? There was not going to be a change in the emergency manager law if the legislation passed; do I understand that right? I mean, if the emergency manager statute was upheld in the referendum, then there would be no need for this legislation that was being discussed.
>
> A: Correct.

Ryan Dep. 36:18 – 37:14, October 14, 2013.

In his testimony, the Rule 30(b)(6) deponent represents the corporation or entity's knowledge or position on the topic at issue. *Richardson v. Rock City Mech. Co., LLC*, 2010 U.S. Dist. LEXIS 16647, 16-17 (M.D. Tenn. Feb. 24, 2010). Furthermore, pursuant to FRCP 30(b)(6), "a corporation 'has an affirmative duty to make available such number of persons as will be able to give **complete, knowledgeable and binding** answers on its behalf.'" *Convertino v. United States DOJ*, 2013 U.S. Dist. LEXIS 5716, 12 ( E.D. Mich. Jan. 15, 2013), citing *Reilly v. Natwest Mkts. Grp., Inc.*, 181 F.3d 253, 268 (2d Cir. 1999) (citations omitted)(emphasis added). As the 30(b)(6) witness for the State of Michigan, Mr. Ryan's testimony regarding the motive for including the appropriation provisions in PA 436 is binding on the State and City.

**B. The Holding in *Michigan United Conservation Clubs v. Secretary of State* is not controlling in this case.**

In the City of Detroit's Opening Statement in the Trial on Eligibility, the City relied heavily on Justice Corrigan's concurring opinion in *Michigan United Conservation Clubs v. Secretary of State*, 464 Mich. 359 (2001), to assert that the motive of the Legislature in passing a

statute was irrelevant.[2] *Id.* A factual comparison to *Michigan United* and a more critical review of Justice Corrigan's concurrence will differentiate the instant case.

The facts of *Michigan United*, as identified by Justice Young in his concurring opinion, are significantly different from the facts involved in the passage of PA 436. *Michigan United* involved the enactment of 2000 PA 381, a statute involving the issuance of concealed weapons permits. *Id.* at 369. Michigan voters signed and submitted a petition to the Secretary of State requesting a referendum on 2000 PA 381 and the Board of Canvassers initially declined to certify the petition. *Id*. at 369. Plaintiffs, organizations that lobbied for the passage of 2000 PA 381, requested that the Court of Appeals prevent the Board of Canvassers from certifying the petition based on the fact that 2000 PA 381 was not subject to referendum. *Id*. at 370. The plaintiffs argued that two provisions within 2000 PA 381 contained appropriations to the Department of State Police and stated that the Michigan Constitution does not allow referendums on "acts making appropriations for state institutions." *Id*.; Const 1963, Art 2, § 9. The Court of Appeals found that 2000 PA 381 was "not an act making appropriations for state institutions as contemplated by Const 1963, art 2, § 9, and that it therefore was subject to referendum." *Id*. at 372. The Michigan Supreme Court reversed the decision of the Court of Appeals. *Id*. at 365.

The facts of *Michigan United* and the facts leading up to the enactment of PA 436 are inherently distinguishable. PA 436 was enacted approximately one month after PA 4 was rejected by Michigan voters on referendum. PA 4 and PA 436 are substantially similar; however, PA 436 includes an appropriations provision. The facts of *Michigan United* do not involve a law that was rejected on referendum then presented as a new law approximately one

---

[2] It is worth noting that the counsel for the City of Detroit relied heavily upon the intent of the legislators when passing the 2000 amendments to Federal Rule of Evidence 701 in the responding to the motion regarding the opinion testimony of lay witnesses. The City cannot utilize legislative intent as both a sword and a shield.

month later. The main question of *Michigan United* was whether the spending provision originally included in 2000 PA 381 caused that act outside the scope of the referendum. The court found that the appropriations added to the act removed the act from the referendum process. The RDPMA wholly accepts and acknowledges the holding of the majority opinion of *Michigan United*. It is undeniable that PA 436 is not subject to referendum due to the appropriations provisions.

In its Opening Statement, the City stated that "[i]n the state of Michigan -- frankly I think in other places at all, other places as well -- the judiciary is not supposed to engage in guessing about the legislature's intent." (Audio File from October 23, 2013 Hearing, 2:07.30, Docket No. 1349). The City continues its argument by quoting Justice Corrigan's concurrence which states that "[t]his Court has repeatedly held that courts must not be concerned with the alleged motives of a legislative body in enacting a law, but only with the end result, the actual language of the legislation." *Id*. at 367. However, the City failed to acknowledge the factual differences in the passage of PA 436 and the importance of Justice Corrigan's footnote. The footnote offers a significant clarification: "[E]ven assuming that such a motive could be ascertained, there is no testimonial record in this original action. Accordingly, we have no means by which to decide these disputed claims regarding legislative motivation." *Id*. at 367, fn 1. As the objecting parties have shown, and will continue to show in this Trial, evidence exists regarding the motive behind the inclusion of the appropriations provision in PA 436. Further, the State of Michigan's 30(b)(6) witness, Howard Ryan, acknowledged the intent in enacting PA 436. In this case, unlike *Michigan United*, the objectors have a significant amount of testimonial evidence to establish the legislative motivation behind the inclusion of the appropriation provisions in PA

436. Therefore, this Court will be able to determine whether the passage of PA 436 violates the Referendum Clause of the Michigan Constitution.

### C. Public Act 436 Violates the Michigan Constitution and Therefore the City of Detroit was not Properly Authorized to File a Chapter 9 Petition.

Article II, Section 9 of the Michigan Constitution provides in relevant part that:

> The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative, and the power to approve or reject laws enacted by the legislature, called the referendum. . . . The power of referendum does not extend to acts making appropriations for state institutions or to meet deficiencies in state funds and must be invoked in the manner prescribed by law within 90 days following the final adjournment of the legislative session at which the law was enacted.
>
> **No law as to which the power of referendum properly has been invoked shall be effective thereafter unless approved by a majority of the electors voting thereon at the next general election.**

Mich. Const. Art. II, § 9 (1963) (emphasis added). The power of the referendum has been reserved to the people as a check on the government to ensure that it respects the will of the citizens of the State. The Michigan Supreme Court has recognized that "under a system of government based on grants of power from the people, constitutional provisions by which the people reserve to themselves a direct legislative voice ought to be liberally construed." *Kuhn v. Dep't. of Treas.*, 382 Mich. 378, 385 (1971). In discussing PA 436, the Sixth Circuit has, albeit in dictum, clearly acknowledged that:

> [U]naffected that votes had just rejected PA 4, the Michigan Legislature enacted, and the Michigan governor signed, Public Act 436. Public Act 436 largely reenacted the provisions of Public Act 4, the law that Michigan citizens had just revoked. In enacting Public Act 436, the Michigan Legislature included a minor appropriation provision, apparently to stop Michigan voters from putting Public Act 436 to a referendum.

*City of Pontiac Retired Employees Ass'n v. Schimmel*, 2013 U.S. App LEXIS 16519, *5 - *6 (6th Cir. Mich., August 9, 2013).

The Michigan Supreme Court has long recognized that the Legislature is not permitted to contrive mechanisms designed specifically to "thwart" the referral process. For example, in *Michigan Farm Bur. v. Secretary of State*, 379 Mich. 387 (1967), the Court held that "[t]here is nevertheless an overriding rule of constitutional construction which requires that the commonly understood referral process, forming as it does a specific power the people themselves have expressly reserved, be saved if possible as against conceivable if not likely evasion or parry by the legislature." *Id*. at 393.

The City and State have argued that the holdings in *Reynolds v. Martin*, 240 Mich. App. 84 (2000) and *Michigan United, supra.,* are controlling. However, both cases support the RDPMA's position that the inclusion of the appropriation provisions in PA 436 was improper. Both cases stand for the proposition that the State cannot contrive a scheme to avoid the people's right to referendum. In this case, we have clear evidence in the form of testimony from Mr. Ryan and communication from attorneys at Jones Day, that the State devised a scheme to insulate PA 436 from a referendum vote, to appoint an emergency manager over Detroit under PA 436 and to compel the filing of a Chapter 9 petition by the City.

Moreover, the State improperly enacted PA 436 by failing to comply with the requirement in the Michigan Constitution that any law properly referred to the referendum not be enacted unless it has been approved by a majority of the voters. Mich. Const., Art. 2, § 9. Even Mr. Orr has acknowledged that PA 436 was nothing more than a redo of PA 4. Moreover, the Sixth Circuit has clearly concluded that PA 436 "largely reenacted the provisions of Public Act 4." *City of Pontiac, supra* at *6. PA 436 was clearly engineered to disregard the peoples' reserved right of referendum in order to ultimately allow the filing of this Chapter 9 proceeding.

## III.
## CONCLUSION

Based upon the foregoing, Public Act 436 should be found to be unconstitutional under Article II, Section 9 of the Michigan Constitution and therefore the City of Detroit has failed to establish that it is eligible for Chapter 9 relief under Section 109(c) and Section 921(c) and this case must be dismissed.

Respectfully Submitted,

**STROBL & SHARP, P.C.**

*/s/ Lynn M. Brimer*
LYNN M. BRIMER (P43291)
MEREDITH E. TAUNT (P69698)
MALLORY A. FIELD (P75289)
Attorneys for the Retired Detroit
Police Members Association
300 East Long Lake Road, Suite 200
Bloomfield Hills, MI 48304-2376
Telephone: (248) 540-2300
Facsimile: (248) 645-2690
E-mail: lbrimer@stroblpc.com
mtaunt@stroblpc.com
mfield@stroblpc.com

Dated: October 30, 2013

*S&B\85244\001\PLDG\SB431916.DOCX