**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| *In re:* | ) | |
| | ) | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | Hon. Steven W. Rhodes |
| *Debtor.* | ) | |
| | ) | |

**SUPPLEMENTAL BRIEF IN SUPPORT OF OBJECTION OF THE DETROIT RETIREMENT SYSTEMS TO THE ELIGIBILITY OF THE CITY OF DETROIT, MICHIGAN, TO BE A DEBTOR UNDER CHAPTER 9 OF THE BANKRUPTCY CODE**[1]

[1] The Retirement Systems are filing this Supplemental Brief pursuant to the Court's Order Regarding Further Briefing on Eligibility, dated October 17, 2013 (Dkt. No. 1217). This Supplemental Brief is filed subject to the reservations of rights in the Appearance filed by the undersigned counsel in this case, including the Retirement Systems' right to argue that this Court lacks subject matter jurisdiction. This Supplemental Brief incorporates by reference the arguments and objections previously raised by the Retirement Systems in the Objection of the Detroit Retirement Systems to the Eligibility of the City of Detroit, Michigan to Be a Debtor Under Chapter 9 of the Bankruptcy Code (Dkt. No. 519) (the "Objection") and the Reply in Support of Objection of the Detroit Retirement Systems to the Eligibility of the City of Detroit, Michigan to Be a Debtor Under Chapter 9 of the Bankruptcy Code (Dkt. No. 1166) (the "Reply"). The Retirement Systems also join in the objection of the Retired Detroit Police Members Association that PA 436 is ineffective because it was enacted in violation of the Referendum Clause of the Michigan Constitution.

<u>**TABLE OF CONTENTS**</u>

I. THE PENSIONS CLAUSE CAN BE ENFORCED CONSISTENTLY WITH THE BANKRUPTCY CODE....1

A. State Law Determines the Legal Nature and Substance of Claims in Bankruptcy....2

B. Under Michigan Law, Accrued Pension Obligations are Vested Property Rights that Cannot Be Impaired....2

C. The Bankruptcy Code Provides for Different Treatment of Legally Distinct Claims....4

D. Non-Impairment of Pension Obligations Will Not Violate the Bankruptcy Code....6

II. IMPAIRMENT OF ACCRUED BENEFITS IN THIS CASE WOULD INDEED VIOLATE THE PENSIONS CLAUSE....9

III. UNLESS ELIGIBILITY IS CONDITIONED UPON NON-IMPAIRMENT OF PENSIONS, THE CASE MUST BE DISMISSED....10

## TABLE OF AUTHORITIES

**Cases**

*Aetna Cas. & Sur. Co. v. Clerk* (*In re Chateaugay Corp.*), 89 F.3d 942, 949 (2d Cir. 1996)........5

*Bekins v. United States*, 304 U.S. 27 (1938)........9

*Board of Regents v. Roth*, 408 U.S. 564 (1972)........2, 3

*Butner v. U.S.*, 440 U.S. 48, 55 (1979)........2, 8

*Class Five Nev. Claimants v. Dow Corning Corp.* (*In re Dow Corning Corp.*), 280 F.3d 648, 661-63 (6th Cir. 2002)........4

*Cty. of Orange v. Merrill Lynch & Co.* (*In re Cty. of Orange*), 191 B.R. 1005, 1020 (Bankr. C.D. Cal. 1996)........5-6, 10

*In re City of Colorado Springs Spring Creek Gen. Imp. Dist.*, 177 B.R. 684, 695 (Bankr. D. Colo. 1995)........8

*In re General Homes Corp.*, 134 B.R. 853, 863 (Bankr. S.D. Tex. 1991)........4

*In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060-61 (3d Cir. 1987)........5

*In re Weingarden*, 84 B.R. 691, 692 (Bankr. S.D. Cal. 1988)........7

*Marconi v. Chicago Heights Police Pension Bd.*, 361 Ill. App. 3d. 1, 24 (Ill. App. 2005)........3

*Musselman v. Governor of Mich.*, 533 N.W.2d 237, 243 (Mich. 1995)........3

*Rhodes v. Stewart*, 705 F.2d 159, 163 (6th Cir. 1983)........8

*Richardson v. Schafer* (*In re Schafer*), 689 F.3d 601, 607 (6th Cir. 2012)........8, 9

*Russell v. Dunston*, 896 F.2d 664, 668-669 (2d Cir. 1990)........3

*Sanitary & Improvement Dist. 65 of Sarpy Cty., Neb. v. First Nat'l Bank of Aurora*, 79 B.R. 877 (D. Neb. 1987)........5

*Seitz v. Probate Judges Ret. Sys.*, 474 N.W.2d 125, 130 (Mich. App. 1991)........4

*Stellwagen v. Clum*, 245 U.S. 605, 613 (1918)....9

*Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co.* (*In re U.S. Truck Co.*), 800 F.2d 581, 584-87 (6th Cir. 1986) ....4

*Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450-51 (2007)....2, 8

**Statutes**

11 U.S.C. §109(c)(2)....10

11 U.S.C. §109(c)(5)....9

11 U.S.C. §901 .... 5, 6, 7

11 U.S.C. §943(b)(4)....8

11 U.S.C. §943(b)(7)....5

11 U.S.C. §943(b)(6)....8

11 U.S.C. §944(c) .... 6, 7, 9

11 U.S.C. §1122....5, 7

11 U.S.C. §1123(a)(1)....7

11 U.S.C. §1129(b)(2)(B) ....7

The Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit (together, the "Retirement Systems") respectfully submit this Supplemental Brief in support of their objection to the eligibility of the City of Detroit, Michigan (the "City") to be a debtor under Chapter 9 of the Bankruptcy Code. For the reasons set forth in the Retirement Systems' Objection and Reply and in other objections: (a) the Pensions Clause does not conflict with the Bankruptcy Code's priority scheme; (b) any impairment of accrued pension benefits in this case is prohibited by the Pensions Clause; and (c) if the Court were to conclude that the protections of the Pensions Clause are irreconcilable with Chapter 9, then the only conclusion is that the City's petition must be dismissed.

## I. THE PENSIONS CLAUSE CAN BE ENFORCED CONSISTENTLY WITH THE BANKRUPTCY CODE

An order for relief that gives effect to the Pensions Clause and prohibits diminution or impairment of the City's pensions does not contravene any provision of the Bankruptcy Code, including the claims priority scheme under Chapter 9.[2]

[2] To what extent a priority scheme exists under Chapter 9 is not entirely clear, in the absence of the incorporation of most of section 507(a) into Chapter 9. The Retirement Systems reserve all rights regarding this issue.

### A. State Law Determines the Legal Nature and Substance of Claims in Bankruptcy

The nature of a claim, and the substantive rights of creditors, are always determined in the first instance by state law. *See Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450-51 (2007) ("'state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law'") (citation omitted); *Butner v. U.S.*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."). Here, applicable state law – the Michigan Constitution – provides that vested pensions constitute property rights that shall not be diminished or impaired.

### B. Under Michigan Law, Accrued Pension Obligations are Vested Property Rights that Cannot Be Impaired

*Board of Regents v. Roth*, 408 U.S. 564 (1972), explains that certain types of contract rights rise to the level of "property" protected by the Constitution from deprivation by state action:

> To have a property interest in a benefit [provided by the state], a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. . . .
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as

> state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 577. The vested pension benefits of Detroit's employees and retirees fall squarely within this definition of "property" for purposes of constitutional protection: they are claims of entitlement which are protected under the State's highest law, and public employees rely in their daily lives upon the inviolability of these rights. Indeed, courts have applied *Roth* to pension benefits when interpreting constitutional provisions very similar to the Pensions Clause. *See, e.g., Russell v. Dunston*, 896 F.2d 664, 668-669 (2d Cir. 1990) (applying *Roth* to pension obligations protected by state constitutional provision); *Marconi v. Chicago Heights Police Pension Bd.*, 361 Ill. App. 3d. 1, 24 (Ill. App. 2005), *rev'd on other grounds*, 225 Ill.2d 497 (2006) (same).

Michigan case law confirms that accrued pension benefits are earned and vested rights, to which, in accordance with *Roth*, each vested employee or retiree has a "legitimate claim of entitlement," amounting to a "property interest in a benefit." As the Michigan Supreme Court has recognized, "pension obligations differ from nearly every other type of government spending insofar as they simply cannot be reduced or cut. . . . Michigan governmental units do not have the option . . . of not paying retirement benefits." *Musselman v. Governor of Mich.*, 533 N.W.2d 237, 243 (Mich. 1995), *aff'd on reh'g*, 545 N.W.2d 346 (Mich. 1996). Moreover, "the state may not reduce the pension benefit of any state employee or

official, or local employee or official, once a pension right has been granted." *Seitz v. Probate Judges Ret. Sys.*, 474 N.W.2d 125, 130 (Mich. App. 1991), *appeal denied*, 482 N.W.2d 459 (Mich. 1992), *reconsideration denied*, 483 N.W.2d 898 (Mich. 1992).

### C. The Bankruptcy Code Provides for Different Treatment of Legally Distinct Claims

Giving full effect to Michigan law protecting pension benefits is fully consistent with the Bankruptcy Code. The Code defines claims by their rights under state law, and not all unsecured claims are equal under state law. The Code permits even radically different treatment among classes of unsecured claims, when such distinctions are justified by differences in the claims' legal rights and attributes. The Sixth Circuit has so held. *See, e.g.*, *Class Five Nev. Claimants v. Dow Corning Corp.* (*In re Dow Corning Corp.*), 280 F.3d 648, 661-63 (6th Cir. 2002), *cert. denied*, 537 U.S. 816 (2002) (separate classification and treatment of foreign and domestic unsecured tort claimants, resulting in a recovery differential of 35-60%, was proper because tort awards in other countries were significantly lower than U.S. tort awards); *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co.* (*In re U.S. Truck Co.*), 800 F.2d 581, 584-87 (6th Cir. 1986) (permitting separate classification of union's claims, due to unique interest of its represented employees in debtor's ongoing business and impact on future collective bargaining process); *In re General Homes Corp.*, 134 B.R. 853, 863

(Bankr. S.D. Tex. 1991) ("The legal character of a claim may also itself justify both disparate classification and treatment."). Indeed, where the legal rights differ materially from one type of claim to another, separate classification is not just permitted, it is *required*. As provided by §1122(a), "a plan may place a claim or an interest in a particular class *only if such claim or interest is substantially similar to the other claims or interests of such class*." (emphasis supplied). *See also Aetna Cas. & Sur. Co. v. Clerk* (*In re Chateaugay Corp*.), 89 F.3d 942, 949 (2d Cir. 1996) ("Dissimilar claims may not be classified together . . . ."). Separate classification and disparate treatment is not limited to Chapter 11: it is also appropriate in Chapter 9, as §901 expressly incorporates §1122. *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060-61 (3d Cir. 1987) (upholding separate classification and disparate treatment of, *inter alia*, employee benefit plan claims versus trade creditor claims); *Sanitary & Improvement Dist. 65 of Sarpy Cty., Neb. v. First Nat'l Bank of Aurora*, 79 B.R. 877 (D. Neb. 1987), *aff'd on other grounds*, 873 F.2d 209 (8th Cir. 1989) (upholding separate classification and treatment of bondholders versus warrantholders, due to different attributes and rights of repayment under state law). Unsecured claims with substantially different legal rights under applicable state law are simply *not* required to be treated *pari passu*.[3]

[3] Similarly, §943(b)(7)'s "best interests of creditors" requirement would not bar preservation of accrued pension obligations under a plan. Unlike Chapter 11, Chapter 9 does not test a plan by comparison to a liquidation alternative – the alternative is dismissal of the case. *See Cty. of*

### D. Non-Impairment of Pension Obligations Will Not Violate the Bankruptcy Code

Enforcing the Pensions Clause by prohibiting the impairment of accrued pension benefits in this case does not conflict with any claims priority scheme under Chapter 9. To the contrary, Chapter 9 itself contemplates classes of unimpaired unsecured claims. Section 944(c)(1) provides that a municipal debtor will not be discharged from any debt that is "excepted from discharge by the plan or order confirming the plan . . . ." Yet Chapter 9 contains no specific provisions identifying claims that may or must be excepted from discharge.[4] The City argued in rebuttal that §944(c) was simply designed to provide unilateral flexibility to the reorganizing entity. But nothing in the Bankruptcy Code suggests that §944(c) is so limited, and that it cannot accommodate a constitutional mandate to protect certain claims. Rather, §944(c) can and should be interpreted as recognizing the nondischargeability of pension benefits under the Michigan Constitution, due to the unique sovereignty and federalism issues implicated in Chapter 9.

---

*Orange v. Merrill Lynch & Co.* (*In re Cty. of Orange*), 191 B.R. 1005, 1020 (Bankr. C.D. Cal. 1996). For the tens of thousands of Detroit pensioners, absent non-impairment in the Chapter 9 case, their non-bankruptcy alternative is better: strict enforcement of the Pensions Clause under Michigan law.

[4] Other than incorporating parts of §524(a) describing the *effect* of a discharge, §944(c) is the only provision of Chapter 9 that addresses discharge; §§523, 727, and 1141(d) of the Bankruptcy Code are not applicable in Chapter 9. *See* 11 U.S.C. § 901(a).

It is widely accepted that cities *may* separately classify pension obligations and treat them as unimpaired, while materially impairing bondholders and other classes of unsecured creditors: Vallejo's plan did so;[5] Stockton's plan proposes to do so.[6] If such treatment is permitted on a voluntary basis, it is likewise appropriate when compelled by fundamental differences in the legal rights granted to pensions under state law and the cities' special relationship to their employees.[7] No conflict exists between Chapter 9 and state laws protecting pensions.

Here, the City could comply with the Michigan Constitution by excepting accrued pension obligations from discharge, consistent with the Pensions Clause. Such compliance would avoid (i) rendering PA 436 unconstitutional or (ii)

---

[5] *In re City of Vallejo, CA.*, Case No. 08-26813, Order Confirming Second Amended Plan for the Adjustment of Debts of City of Vallejo, California, as Modified August 2, 2011, Ex. 1, at 34 (Doc. No. 1113) (Bankr. E.D. Cal. Aug. 4, 2011) (CalPERS pension plan was not impaired; city would continue to honor its pension obligations pursuant to non-bankruptcy law).

[6] *In re City of Stockton, CA.*, Case No. 12-32118, Plan for the Adjustment of Debts of City of Stockton, California, at 71-72 (Doc. No. 1133) (Bankr. E.D. Cal. Oct. 10, 2013) (CalPERS pension plan not impaired; city would continue to honor its pension obligations pursuant to non-bankruptcy law).

[7] Non-impairment of pension obligations would be permissible whether a plan is confirmed consensually or under the Code's cram-down provisions, because the absolute priority rule in §1129(b)(2)(B) (which is incorporated by §901) requires only that if a class of unsecured claims is not paid in full, no *junior* class will receive or retain any property on account of such claim, and the Retirement Systems' claims are not junior to any other unsecured claims. Even without the imprimatur of §944(c), §§1122(a) and 1123(a)(1) have been held to permit separate classification of nondischargeable claims and different treatment from that afforded to unsecured creditors whose claims are subject to the §1141(d)(1)(A) discharge. *See In re Weingarden*, 84 B.R. 691, 692 (Bankr. S.D. Cal. 1988).

rendering the City's eventual plan unconfirmable, either as contrary to state law under §943(b)(4) or because it is subject to a popular vote on a constitutional amendment of the Pensions Clause under §943(b)(6).[8] Nor would treating accrued pension obligations as unimpaired, as required by the Pensions Clause, violate the uniformity of bankruptcy law. Federal bankruptcy law does not preempt the field with respect to the characterization and treatment of claims in bankruptcy cases. On the contrary, *Butner* and *Travelers* **require** bankruptcy courts to look to state law to determine claims and property interests. Absent a direct conflict between state and federal law, "the state and federal legislatures share concurrent authority to promulgate bankruptcy laws . . . ." *Rhodes v. Stewart*, 705 F.2d 159, 163 (6th Cir. 1983), *cert. denied*, 464 U.S. 983 (1983) (citations omitted). Accordingly, states are presumptively permitted to act in the sphere of bankruptcy laws, subject to the Supremacy Clause and the doctrine of conflict preemption. *See Richardson v. Schafer* (*In re Schafer*), 689 F.3d 601, 607 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 1244 (2013) (upholding Michigan exemption statute).

No grounds for conflict preemption exist here: (1) state law determines the legal character of pension-benefit claims in bankruptcy, (2) the Bankruptcy Code

[8] *See, e.g., In re City of Colorado Springs Spring Creek Gen. Imp. Dist.*, 177 B.R. 684, 695 (Bankr. D. Colo. 1995) ("Federal law cannot obliterate or supersede requirements for elections imposed by Colorado law. Chapter 9 provides only a forum and a mechanism for reorganization; state law establishes the eligibility and substantive requirements for and limitations upon reorganization").

permits different treatment of claims based on their underlying legal rights, (3) such differences in treatment do not violate any priority scheme of Chapter 9, and (4) §944(c)(1) broadly permits a municipal debtor to except claims from discharge. The Pensions Clause is not *actually* in conflict with any federal bankruptcy provision or policy, and can and must be enforced in the City's Chapter 9 case. *See Schafer*, 689 F.3d at 613 ("state laws are thus suspended *only to the extent of actual conflict* with the system provided by the Bankruptcy Act of Congress") (quoting *Stellwagen v. Clum*, 245 U.S. 605, 613 (1918)).

## II. IMPAIRMENT OF ACCRUED BENEFITS IN THIS CASE WOULD INDEED VIOLATE THE PENSIONS CLAUSE

The City has argued that the only "impairer" of accrued pension benefits in this case would be the federal government, and therefore the Pensions Clause's prohibition against impairment by the State or its political subdivisions is of no moment. At oral argument, the City specifically relied upon *Bekins v. United States*, 304 U.S. 27 (1938). However, *Bekins* did not hold that the Chapter 9 debtor is not an active participant in the impairment of contracts under its own proposed plan. Moreover, this argument runs directly contrary to the language of §109(c)(5)(A) and (B), which recognizes that the *debtor* is the relevant actor by explicitly referring to the *debtor entity's* intention to impair claims under a plan.[9]

[9] *Bekins* interprets only the *federal* Constitution, not Michigan's, in holding that, provided the state has affirmatively consented to a filing, the predecessor of Chapter 9 is not unconstitutional.

## III. UNLESS ELIGIBILITY IS CONDITIONED UPON NON-IMPAIRMENT OF PENSIONS, THE CASE MUST BE DISMISSED

The only way for the City to proceed in Chapter 9 without violating the United States and Michigan Constitutions is to condition the filing on the non-impairment of accrued pension benefits. If the Court were to find that this condition conflicts impermissibly with the Bankruptcy Code, then the City simply is not eligible to be a debtor under §109(c), and the petition must be dismissed.[10] Respectfully, this is the only solution that comports with the Tenth Amendment.

Dated: October 30, 2013

Respectfully submitted,


CLARK HILL PLC

*<u>/s/Robert D. Gordon</u>*
Robert D. Gordon (P48627)
151 South Old Woodward Ave., Ste. 200
Birmingham, Michigan 48009
Telephone: (248) 988-5882
Facsimile: (248) 988-2502
rgordon@clarkhill.com

ARNOLD & PORTER LLP

Lisa Hill Fenning
777 South Figueroa St., 44th Floor
Los Angeles, California 90017
Telephone: (213) 243-4000
Facsimile: (213) 243-4199
lisa.fenning@aporter.com

*Counsel to Police and Fire Retirement System of the City of Detroit and General Retirement System of the City of Detroit*


---

*Bekins* does not address, much less rule upon, the issue of whether the circumstances of a Chapter 9 filing might violate a *state* constitution.

[10] *Cty. of Orange* and the City's other authorities are inapposite because they neither (a) involved a state *constitutionally* protected class of claims, nor (b) addressed such a protection as a ***threshold, gating*** eligibility issue under §109(c)(2).

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 30, 2013, the foregoing document was filed using the Court's CM/ECF system, which CM/ECF system will send notification of such filing to all parties of record.

CLARK HILL PLC

/s/ *Robert D. Gordon*
Robert D. Gordon
151 South Old Woodward Avenue
Suite 200
Birmingham, Michigan 48009
Telephone: (248) 988-5882
rgordon@clarkhill.com

Dated: October 30, 2013