UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------------x
:
In re : Chapter 9
:
CITY OF DETROIT, MICHIGAN, : Case No. 13-53846
:
Debtor. : Hon. Steven W. Rhodes
:
:
---------------------------------------------------------x

# LIMITED OBJECTION OF DEBTOR TO APPLICATION FOR AN ORDER APPROVING THE RETENTION OF DENTONS US LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF RETIREES OF THE CITY OF DETROIT EFFECTIVE AUGUST 28, 2013

The City of Detroit, Michigan (the "City"), as the debtor in the above-captioned case, hereby asserts this limited objection (this "Objection") to the Application for an Order Approving the Retention of Dentons US LLP as Counsel to the Official Committee of Retirees of the City of Detroit Effective August 28, 2013 (Docket No. 1299) (the "Application") filed by the Official Committee of Retirees appointed in the City's chapter 9 case (the "Committee"). In support of this Objection, the City respectfully represents as follows:

## Limited Objection

1. The City does not object to the Committee's retention of Dentons US LLP ("Dentons") as lead counsel to the Committee. In fact, in

connection with the formation of the Committee, the City agreed that the Committee could retain counsel and that the City would pay for reasonable compensation of the Committee's counsel. Having reviewed the Application, the City does not see a reason why Dentons cannot be retained in that capacity under sections 901(a), 1102(a)(1) and 1103(a) of title 11 of the United States Code (the "Bankruptcy Code").

2.  Initially, the City raised concerns about certain aspects of Dentons' retention. After discussions, those issues largely have been resolved. For example, the City raised the following issues:

- The Application indicates that Dentons' fees and expenses will be paid by the City "subject to the approval of this Court," and the proposed form of order attached to the Application suggests that the Court could order the City to pay compensation to Dentons. The City asked for clarification that Dentons' fees and expenses would be paid only as agreed upon by the City consistent with the Fee Review Order entered by this Court on September 11, 2013 (Docket No. 810) (the "Fee Review Order"),[1] or as may be agreed upon by the City in the future. Dentons has agreed to modify the proposed order granting the Application to address this issue.

- When it consented to pay Dentons' reasonable fees and expenses, the City understood that Dentons had agreed to provide a 10% fee discount, consistent with the billing arrangement of Jones Day in this case. Although difficult to

---

[1] The City agreed to pay the reasonable fees and expenses of Dentons and the other Committee Professionals (as defined in the Fee Review Order) consistent with the review process established in the Fee Review Order. See Fee Review Order at ¶ 24.

assess, Dentons has represented to the City that (a) it has reduced its hourly rates so they will not exceed the Jones Day billing rates for lawyers of similar seniority (see Application, Ex. 2 at ¶ 16) and (b) these modified rates result in reductions totaling at least a 10% discount from Dentons' normal hourly rates. The City believes that this representation should be evaluated by the Fee Examiner in his reasonableness review of the invoices submitted by Dentons.

3. Although the City believes that the foregoing issues have been adequately addressed, one other issue remains unresolved. In particular, the City opposes the attempt by the Committee in the Application to retain another professional – the Committee's actuary, The Segal Company (Eastern States), Inc. ("Segal") – as a subcontractor to Dentons.

4. As set forth in the Application, Dentons proposes to retain Segal to provide actuarial services "in furtherance of Dentons provision of legal advise [sic] to the [] Committee." Application ¶ 12. The Application further provides that "Dentons will include Segal's fees and expenses as a Dentons expense and apply for reimbursement of such expense in accordance with the Fee [Review] Order. Upon receiving payment from the City, Dentons will reimburse Segal for its services." Id.

5. This proposed retention structure is contrary to the Fee Review Order and should not be permitted. Pursuant to the Fee Review Order, the City agreed to pay the reasonable fees and expenses of the Committee Professionals. Fee Review Order ¶ 24. The Fee Review Order defines "Committee Professionals"

CLI-2155984v2
-3-
13-53846-tjt    Doc 1527    Filed 11/05/13    Entered 11/05/13 16:38:19    Page 3 of 10

as "all professionals who have been retained by the *Committee* … to render services in connection with the case and who will be compensated for fees and expenses by the City." Id. at ¶ 1 (emphasis added).

6. Segal is among the Committee Professionals specifically identified in the Fee Review Order. See id. at ¶ 24 ("The City has agreed to pay the reasonable fees and expenses of the Committee's Professionals, which at this time are lead counsel (Dentons) … and an actuary (Segal Consulting)…"). Thus, the Fee Review Order clearly contemplates that Segal will be separately retained by the *Committee* and that its fees and expenses will be subject to review by the Fee Examiner (as defined in the Fee Review Order). See, e.g., id. at ¶ 4 ("Each Professional must provide the Fee Examiner and its respective client with a complete copy of its respective monthly invoice…"). This was among the conditions to the City's agreement to pay the fees and expenses of Segal. Therefore, the Application must be denied to the extent that it seeks to have Segal retained by Dentons as opposed to the Committee.

7. Retaining Segal as a subcontractor to Dentons is inconsistent with the fee review and payment process established in the Fee Review Order. In particular, the Fee Review Order contemplates that Committee Professionals will submit their monthly invoices directly to the City and that the City, upon receipt of such invoices, will pay "85% of the requested fees and 100% of the

requested expenses" set forth therein. Id. at ¶ 24. As set forth above, however, the Application contemplates that Segal's fees and expenses will be considered an "expense" of Dentons. See Application at ¶ 12. Thus, as drafted, the Application suggests that Segal's fees and expenses would be paid 100% as an expense of Dentons and, in this manner, would be shielded from the 15% fee holdback otherwise applicable to Committee Professionals, as well as the detailed review of Segal's bills.

8.  In discussions, Dentons has indicated that Segal is willing to submit its fees and expenses to the Fee Examiner on the same terms as other Committee Professionals, including the fee holdback. At a minimum, any order approving the Application should provide for this review. But the City submits that a better – and more logical – approach is to have Segal retained separately consistent with the Fee Review Order and the Bankruptcy Code. Segal should file its own retention application and make the disclosures required by other professionals retained under sections 1102 and 1103 and the relevant Bankruptcy Rules, and it should participate in the fee review process as an independent professional. If Segal intends to be treated otherwise as a Committee Professional, it should be retained in the same fashion.

9.  There is only one apparent reason that the Committee proposes to have Segal retained as a subcontractor to Dentons: to establish an argument for

13-53846-tjt    Doc 1527    Filed 11/05/13    Entered 11/05/13 16:38:19    Page 5 of 10

the Committee to inhibit the City's discovery from Segal in any litigation between the parties. The engagement letter between Dentons and Segal (the "Segal Engagement Letter")[2] provides, among other things, that (a) all communications between Segal and the Committee, Segal and Dentons, and Segal and its agents shall be regarded as privileged and confidential; and (b) all work papers, records or other documents shall be held by Segal solely for Dentons' convenience and subject to Dentons' unqualified right to instruct with respect to possession and control. See Segal Engagement Letter at §§ 1, 4. Through this structure, the Committee hopes to shield Segal's work from discovery to the fullest extent possible.

10. The Court should not allow the Committee to use its retention structure in an effort to obstruct or limit discovery in this way. As noted, this is contrary to the Fee Review Order and the City's agreement to pay Segal's compensation thereunder. Moreover, the City's actuary, Milliman, Inc. ("Milliman"), is not retained in this manner, and the City has not attempted to use a retention structure to block the Committee's access to actuarial data. In fact, the City already has shared with the Committee the relevant documents prepared by Milliman relating to retiree legacy costs.

---

[2] The Segal Engagement Letter is attached as Exhibit A to the Declaration of Carole Neville, which is Exhibit 2 to the Application.

11. The Committee's attempt to shield Segal from discovery is particularly surprising under the circumstances because Segal already has been offered as a testifying witness that will be subject to discovery.[3] Just within the last two weeks, the Committee has offered Segal as a testifying witnesses in a pending adversary proceeding commenced in the City's chapter 9 case in an effort to block healthcare changes. See Motion for Preliminary Injunction or, in the Alternative, Relief from the Automatic Stay (Adv. Proc. No. 13-05244) (Docket No. 3), Exhibit 5(A), Declaration of Stuart I. Wohl (Senior Vice President of Segal). Thus, as a testifying witness, Segal already has been opened up to discovery, and the Committee should not be permitted to attempt to protect Segal

---

[3] Witnesses and potential witnesses generally are subject to discovery under the Federal Rules of Civil Procedure ("FRCP") and must comply with discovery requests. See FRCP 26(b)(1) (providing that, unless otherwise limited by the court, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense …."); FRCP 30(a) (providing that, generally, "[a] party may depose *any person*….") (emphasis added); 8A Charles Alan Wright *et al.*, Federal Practice & Procedure § 2102 (3d ed. rev. 2013) ("The taking of depositions is not limited to parties to the action but extends to any person, including … any potential witness."); FRCP 45 (providing, among other things, that a party has authority to subpoena a nonparty witness to appear at a deposition and/or produce documents); 8A Federal Practice & Procedure § 2108 (noting that for nonparty witnesses, document productions can be "compelled by a subpoena duces tecum issued under [Federal Rule of Civil Procedure] 45. … Indeed, as amended in 1991, Rule 45(a)(1)(C) authorizes a subpoena to command production of documents at a deposition or without a deposition.").

from the rules of discovery — to which all other parties' actuaries are subject — by channeling their retention through Dentons.[4]

12. Finally, the Segal Engagement Letter contains reimbursement provisions and liability protections to which the City does not and cannot agree. See Segal Engagement Letter § 4 ("Counsel agrees to pay any costs reasonably incurred by Segal, including reasonable attorney's fees, in the course of resisting [] a request [for confidential documents] immediately upon reimbursement by the City."); see id. at § 5 (limitation on Segal's liability). The City has not agreed to reimburse Segal for contesting subpoenas or compensating its outside lawyers for these services. Likewise the City has not agreed to limit Segal's liability in this engagement. The Court may not require the City to agree to such provisions. As such, the reimbursement provision in Section 4 of the Segal Engagement Letter and the limitation of liability provisions in Section 5 of the Segal Engagement Letter must be stricken.

---

[4] This is not to say that all communications between Dentons and Segal would be open to discovery were Segal to be retained directly by the Committee. There may be communications between Segal and Dentons sufficiently attendant to Dentons' provision of legal advice to the Committee that such communications would be appropriately shielded from disclosure as attorney-client protected. But these decisions on privilege should be made on a case-by-case basis and not circumvented by establishing a retention structure through counsel.

13. For all of these reasons, the Application must be denied to the extent that it proposes that Segal be retained by Dentons, rather than independently retained by the Committee. In the event that the Court finds that Dentons' retention of Segal is permissible, the City respectfully requests that the Court nevertheless (a) require that Segal comply with all provisions of the Fee Review Order applicable to Committee Professionals; and (b) prohibit Dentons from broadly shielding Segal from discovery on the basis of any purported privilege. In addition, because the City does not agree to the reimbursement and limitation of liability provisions in Sections 4 and 5 of the Segal Engagement Letter, such provisions much be stricken therefrom.

WHEREFORE, the City respectfully requests that this Court: (a) enter an order either denying the Application or granting the Application consistent with the terms hereof; and (b) grant such other and further relief to the City as the Court may deem proper.

Dated: November 5, 2013              Respectfully submitted,

/s/ Heather Lennox
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY

CLI-2155984v2                    -10-
13-53846-tjt    Doc 1527    Filed 11/05/13    Entered 11/05/13 16:38:19    Page 10 of 10