UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | No. 13-53846 |
| Debtor. | HON. STEVEN W. RHODES |

_____/

**THE STATE'S RESPONSE TO SUPPLEMENTAL
BRIEFING ON ELIGIBILITY**

**I.  Both P.A. 436 and the authorization are constitutional.**  (Doc. #1458 at 1-5; Doc #1467 at 2-3, 8-10; Doc #1469 at 4-7; Doc. #1472 at 2-3, 9-10; Doc #1473 at 1-3; Doc. #1474 at 1-5.)

Certain objectors argue that (1) P.A. 436 is facially invalid because it does not specifically exclude pensions from bankruptcy proceedings; and (2) the Governor's authorization was unconstitutional as applied because it did not provide a contingency excluding pensions.

These arguments fail for three reasons.  First, they are not ripe because neither the passage of Public Act 436 nor the authorization has caused or compelled a diminishment or impairment of accrued pension benefits.  Second, § 18 of P.A. 436 is not unconstitutional in all applications and the authorization was a valid exercise of discretion.  Third, the common understanding of the pension clause does not limit a municipality's bankruptcy options.

### A. These arguments are not ripe.

In determining eligibility, this Court need not decide the constitutionality of P.A. 436 or the Governor's authorization because no diminishment or impairment has occurred. Article IX, § 24 prevents the diminishment or impairment of the accrued financial benefits of State and local pensions. An "accrued financial benefit" is the right to receive certain pension payments upon retirement, based upon service performed. *In re Request for Advisory Opinion Regarding Constitutionality of 1972 PA 258,* 209 N.W.2d 200, 202 (Mich. 1973). And, "the accrued financial benefit of a pension plan is the pension income itself." *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 806 N.W.2d 683, 698 (Mich. 2011) ("The 'deferred compensation' protected as a 'contractual obligation' by § 24 is the pension payments themselves.")

Neither § 18 of P.A. 436 nor the authorization have caused or compelled an *actual* lessening of any pension income.

### B. Section 18(1) of 2012 P.A. 436 is not invalid on its face or as applied.

Even if this Court were to consider the constitutionality of § 18 of P.A. 436, it is not facially invalid. Under established rules of statutory construction, statutes are presumed constitutional and courts have a duty to construe a statute as constitutional unless unconstitutionality is clearly apparent. *Mahaffey v. Attorney General*, 564 N.W.2d 104,113 (Mich. App. 1997). "The party challenging the facial

constitutionality of an act 'must establish that *no set of circumstances* exists under which the [a]ct would be valid. The fact that the ... [a]ct might operate unconstitutionally under some conceivable set of circumstances is insufficient… .'" *Straus v. Governor*, 592 N.W.2d 53, 61 (Mich. 1999)(emphasis added)(quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Applying this standard of review, the facial challenge fails because, as argued above, § 18 does not lessen actual pension income and properly reposes discretion in the Governor to impose or reject contingencies.

Nor does § 18 conflict with § 12(1)(m) of P.A. 436. Section 12 applies art. IX, § 24 of the Michigan Constitution to the EM's management of a pension fund, which has not occurred in Detroit, while § 18(1) speaks to the authorization of bankruptcy, not funds management. These provisions do not conflict, nor do they form a basis for invalidation of § 18(1). See *Reiter v. Sonotone Corp*., 442 U.S. 330, 339 (1979) (explaining that when "construing a statute we are obliged to give effect, if possible, to every word Congress used.").

The Governor's authorization does not defeat eligibility either. 11 U.S.C. 109(c)(2) requires only that the municipality be authorized to file under state law. That requirement has been met here. Nothing in the plain language of § 109(c)(2) requires that provisions of the state constitution be honored as a condition of authorization. If it did, the existence of a contract clause, for example, in a state

3

constitution would effectively block Chapter 9 bankruptcy in nearly every situation. To determine otherwise ignores the purpose of the various stages of bankruptcy proceedings. It also ignores the separation of powers doctrine embodied in art III, § 2 of the Michigan Constitution. *Straus*, 592 N.W. at 58. By using the word "may," § 18(1) allows the Governor to exercise his discretion to impose or reject contingencies without legislative or judicial intervention.

### C. The drafters' common understanding would not have limited a municipality's bankruptcy options.

Historically, the revised Municipal Bankruptcy Act, as upheld in *United States v. Bekins*, 304 U.S. 27, 54 (1938), existed well before the ratification of Michigan's 1963 Constitution. Given this context, § 24 would not be understood to limit a municipality's bankruptcy options absent express language. The intent of § 24 was to treat public pensions as contractual obligations that could not be revoked at the will of the public authority. *In re Advisory Opinion*, 806 N.W.2d at 694. But, like the protections in the Contract Clauses of both the federal and state constitutions, art I, § 10, the language of § 24 may not be absolute. *Id.* at 702 ("The opposing Attorney General contends that come war, come natural disaster, come impending bankruptcy, only the pension income of public employees, among all individual income, will be off-limits from ever being used to pay the costs of government…The opposing Attorney General, in our judgment, argues in behalf of a Constitution that does not exist, and we firmly reject those arguments.").

4

## II. P. A. 436 does not violate the Home Rule or Local Act provisions of Michigan's Constitution. (Doc. #1467 at 9-11.)

In addition to its original and supplemental objections, AFSCME now argues P.A. 436 is unconstitutional because the State's interpretation of art. VII, § 22 could lead to a law granting the Governor or even the Legislature the right to pick the Mayor of Detroit. AFSCME's arguments are misplaced.

First, AFSCME's argument that the statute authorizes the Governor "to pick the Mayor of Detroit" is based on a fact scenario that does not exist in this case.

Second, AFSCME's argument ignores the relationship between the State and its local governments. Local governments are not sovereign entities, but creatures of the State that derive their authority from the State and are subject to constitutional and statutory limitations. *Mack v. Detroit,* 649 N.W.2d 47, 52 (Mich. 2002); Mich. Comp. Laws § 117.1, *et. seq.*

The State can pass laws of general concern that limit the authority and power of a mayor consistent with the State constitution and other law. *American Axle & Mfg., Inc., v. Hamtramck,* 604 N.W.2d 330, 342 (Mich. 2000). P.A. 436 is directly related to maters of general concern—the fiscal integrity of the State's local governments and the health, safety, and welfare of its citizens. It is a proper exercise of the State's authority.

Third, AFSCME also attacks P.A. 436 as violating Const. 1963, art. IV, § 29 —Local or Special Acts. This argument is premised on the assertion that local

authority belongs to the local electors so the Legislature has no power to delegate that local authority to an Emergency Manager. In fact, this provision does not impose limitations on the Legislature's general authority over local governments. Rather, it prohibits the Legislature from passing a "local act" absent the prescribed procedure. The test to determine the local or general nature of a statute is whether it can "apply to other units of government. If yes, the statute is a general act." *Michigan v. Wayne Co. Clerk,* 648 N.W.2d 202, 203-204 (Mich. 2002). P.A. 436 applies equally to all local governments and is a law of general nature. This is not contradicted by the fact it may be implemented locally or have a local impact. *Id.*

### III. Kevyn Orr was the EM with authority to file the City's bankruptcy petition. (Doc. #1222.)

Relying on Mich. Comp. Laws § 8.4, Michigan's "repealer statute," Ms. Crittendon first argues the rejection of P.A. 4 by Michigan voters left the State without an emergency manager or emergency financial manager law, rendering EM Orr's acts void. But the plain language of the statute "includes no reference to statutes that have been rejected by referendum." It refers only to statutes "subject to repeal"—not referendum. *Davis v. Roberts,* No. 313297 (Mich. Ct. App. November 16, 2012) (order) (Ex. 1); *see also*, 2010 Mich. Att'y Gen. Op. 7267. Accordingly, as the Michigan Court of Appeals has already held, § 8.4 does not apply to the voters' rejection, by referendum, of P.A. 4.

Ms. Crittendon next argues that because Orr's initial contract expired "at midnight on Wednesday, March 27, 2013" he was not an Emergency Financial Manager (EFM) under P.A. 72 when P.A. 436 took effect. This argument erroneously assumes Orr's appointment by the Emergency Financial Assistance Loan Board (ELB) expired with his contract. But Orr was appointed by separate Order of the ELB, which did not terminate with the contract governing the terms and conditions of that appointment. (Ex. 2, Board Order)

Finally, Ms. Crittendon argues the petition filed by EM Orr is defective because 11 U.S.C. § 109 (c) provides that only a "municipality" may file for relief under chapter 9. The argument wrongly assumes that a mayor or city council are the only authorized filers. EM Orr is a lawful city representative who acts for the Mayor and Council. Mich. Comp. Laws § 141.1549(2). He was specifically authorized, as the City's representative, to file the Chapter 9 Petition. Mich. Comp. Laws § 141.1558(1).

**IV. P.A. 436 does not violate Const. 1963, art. II § 9.** (Doc. #1471)

The RDPMA argues the State is bound by the testimony of Howard Ryan. (Doc. #1471 at 4, 5.) Yet it does not establish a violation of art. II, § 9. Instead, it confirms that pre-election discussions on the need for emergency manager legislation occurred in October 2012, and work began "early on," described as subsequent to the vote, in mid-to-late November. The pre-election discussions were to explore

7

contingencies *should* P.A. 4 be rejected. Rather than supporting a conspiracy urged by the RDPMA, this demonstrates good governance and proper planning. P.A. 72 had proven an ineffective tool in resolving financial emergencies among local governments. In November 2012, Michigan had several local governments under emergency management—some for the second time. The emerging situation required a stronger law and sharper tools to solve these problems. Yet, it is clear from Ryan's testimony that legislation was not developed until after the November 2012 election.

Mr. Ryan also testified that "one or more of" the purposes for the appropriations in P.A. 436 was to prevent its defeat by referendum. (Ryan Dep. 45:6-11.) But this testimony alone does not support the conclusion that P.A. 436 violates art. II, § 9.

- First, inclusion of an appropriation in an enacted law is a constitutional mechanism for funding a state obligation. Mich. Const. art. IX, §17.

- Second, legislative motivation for an appropriation that renders an act "referendum proof" is not an appropriate consideration when construing the constitutionality of a statute. *Michigan United Conservation Clubs v. Secretary of State,* 630 N.W.2d 297, 299 (Mich. 2001) (Corrigan, J., concurring) (citing *Kuhn v. Dep't of Treasury,* 183 N.W.2d 796 (Mich. 1971); *C.F. Smith Co. v. Fitzgerald,* 259 N.W. 352 (Mich. 1935); *People v. Gibbs,* 152 N.W. 1053 (Mich. 1915)).

- Third, other evidence supports the necessity and purposes for the appropriations — the payment of new obligations imposed on the State. Mich. Comp. Laws §§ 141.1574 and 1575. At least seven Emergency Managers were serving when P.A. 436 took effect March 28, 2013. Because no money can be paid by the State unless it is first appropriated by the Legislature, these appropriations were necessary and purposeful. Mich. Const. art. IX, § 17. Additionally, because the State's obligation

8

arose in mid-fiscal year, inclusion of the appropriation in P.A. 436 was the most efficient mechanism to assure money would be available upon the law's effective date. Further, this was not a one-time appropriation. Because these are ongoing obligations for the State, an appropriation was required and included in the Fiscal Year 2014 budget bill — 2013 P.A. 59. (10/28/2013 Tr. trans., at 251-253.)

The RDPMA's argument that P.A. 436 violates the second clause of art. II, § 9 is equally without merit. Contrary to the Sixth Circuit's *dictum* in *City of Pontiac Retired Employees Assn. v. Schimmel,* 726 F.3d 767, 770 (6th Cir. 2013), P.A. 436 is substantially different from P.A. 4—including providing options to the local government to manage and resolve the fiscal emergency; placing the obligation to pay costs and salaries on the State; providing the local government the option of presenting its own plan(s) as alternatives to the EM's and for hearing before the ELB; providing the local government the opportunity to petition to terminate the emergency management; providing specific budget obligations at the termination of the emergency management; and providing for a Transition Advisory Board to assist with the transition from emergency management. Further, the majority's dicta in *Schimmel* is without benefit of briefing or relevant facts related to the issue.

Finally, the ability of the Legislature to pass legislation identical to an Act that is subject to the referendum process has previously been addressed and upheld. *See Reynolds v. Martin,* 610 N.W.2d 597, 604-605 (Mich. 2000), *app. den.* 624 N.W.2d 195 (Mich. 2001). Where a state appellate court has resolved an issue on which the state's high court has not spoken, that decision "'is a datum for ascertaining state law

9

which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Schimmel,* 726 F.3d at 775 (citing *West v. AT&T Co.,* 311 U.S. 223, 237 (1940)). Further guidance indicates a federal court should not reject a state rule just because it was not announced by the highest court of the state, even if it believes the rule is unsound. *FL Aerospace v. Aetna Cas. & Sur. Co.,* 897 F.2d 214, 218-19 (6th Cir. 1990). The RDMPA presents no facts or argument indicting Michigan's Supreme Court would decide this case differently. Indeed, it denied leave in *Reynolds,* allowing the decision to stand. Additionally, *Reynolds* notes the Michigan Supreme Court provided the identical analysis and conclusions, although dicta, in *Michigan Farm Bureau v. Secretary of State,* 151 N.W.2d 797, 801-802 (Mich. 1967). In this context there is no other persuasive data indicating a different result would occur if the question were considered again today.

Respectfully submitted,

*/s/Matthew Schneider*
Matthew Schneider
Chief Legal Counsel
Attorney for State of Michigan
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-3203
SchneiderM7@michigan.gov [P62190]

Ann M. Sherman
Assistant Solicitor General

|  |  |
|---|---|
| | Margaret A. Nelson<br>Assistant Attorney General |
| | Steven G. Howell<br>Special Assistant Attorney General<br>Dickinson Wright PLLC<br>500 Woodward Avenue, Suite 4000<br>Detroit, Michigan  48226-3425 |
| Dated: November 6, 2013 | Attorneys for the State of Michigan<br>Michigan Dep't of Attorney General |