UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re                                       Chapter 9
CITY OF DETROIT, MICHIGAN,                  Case No. 13-53846
Debtor.                                     Hon. Steven W. Rhodes

**OBJECTION AND REQUEST FOR RECUSAL, with expedited hearing**
**(addendum to Docket 440)**

*Eligibility objector Mary Diane Bukowski's objection to continued service by Hon. Steven W. Rhodes in this case without disclosure of his function as chair of the October 10, 2012 Federal Bar Association of Eastern Michigan Bankruptcy Committee Forum, "Between a Rock and a Hard Place—Municipal Entities in Distress;" disclosure of his connections with the parties who participated in that forum, including Charles Moore of Conway McKenzie, a witness in the instant case; and disclosure of the Judge's comments on the topics discussed in this forum, which include issues regarding the City of Detroit, emergency managers, and bankruptcy.*

On Oct. 10, 2012, Judge Steven W. Rhodes chaired a Federal Bar Association (FBA) of Eastern Michigan Bankruptcy Committee forum, called **"Between a Rock and a Hard Place–Municipal Entities in Distress."** In its notice of the forum, the FBA said it was "a panel discussion on emergency managers and Chapter 9 bankruptcy."

Participants in the forum are shown below:

*Left to right, Frederick Headen, Edward Plawecki, Judge Steven Rhodes, Douglas Bernstein, Judy O'Neill, and Charles Moore*

Objector Bukowski has been told by the FBA and the U.S. Trustees' Office that there are no video or audiotapes of this forum. However, attached as Exhibits 1, 2 and 3 are the FBA notice of the forum, and articles from the Flint-Genesee Legal News and the Oakland Legal News which quote comments from participants in the forum. The comments appear to favorable toward

replacing public officials of municipalities with business officials, Michigan's emergency manager laws, and other opinions consistent with presentations by Jones Day attorneys on behalf of the City of Detroit in the instant case.

Conway McKenzie has a one-year $19.3 million consultant contract on the Detroit bankruptcy case, and has already been paid nearly $3 million. The firm's Charles Moore, an accountant and participant in the forum, testified on behalf of the City of Detroit at the bankruptcy hearing Oct. 24, 2013.

During the Oct. 10, 2012 forum, the Flint-Genesee Legal News quoted Moore, as follows:

"Why aren't municipalities addressing these issues?" referring to what had been termed excess numbers of municipal workers in Detroit.

"If this is what is causing financial distress, why aren't leaders taking more action, as companies would, to address them? . . . .Many times those elected officials have no experience in business at all. . . . No politician ever gets rewarded for solving tomorrow's problems today. So you have a situation where you see the trends happening, but there's no incentive to act, even if the leader knew what to do. They're not equipped with crisis management skills or expertise."

Judy O'Neill is a partner in the law firm Foley & Lardner. According to their website, she "assisted with drafting Public Act 4 [the predecessor to PA 436] . . . and has assisted at two Emergency Manager training sessions." She "practices in bankruptcy, insolvency, reorganization, commercial transactions, and corporate law, concentrating on issues arising under the bankruptcy code."

She is quoted at the forum as follows: "What we've heard from everybody here today is that every method of implementation is replete with litigation. Even Chapter 9, which probably has the strongest hold, has this eligibility fight that consumes resources and time."

Attorney Douglas Bernstein of Plunkett Cooney also helped train candidates for Emergency Manager positions, along with other Plunkett Cooney Associates, according to their website. Plunkett Cooney itself held a similar forum in April of 2012.

Headen said during the forum that he has served on 16 financial review teams, five each under former Michigan Governors John Engler and Jennifer Granholm, and six "so far," under Snyder."

"Back in January our review team was in Detroit," the Flint-Genesee Legal News quotes Headen. "The city at that time had between nine and ten thousand employees. It also had 48 bargaining units, one of which I believe had only one member. The state of Michigan, by contrast, has about 50,000 employees with less than half a dozen bargaining units. In Detroit, 65 people are doing payroll while we have 15 people doing payroll for the entire state of Michigan."

The Code of Conduct for U.S. Judges is at http://www.uscourts.gov/RulesAndPolicies/CodesOfConduct/CodeConductUnitedStatesJudges.aspx.

It states in pertinent sections:

## CANON 2: A JUDGE SHOULD AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY IN ALL ACTIVITIES

**Canon 2A. An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired.** Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. This prohibition applies to both professional and personal conduct. A judge must expect to be the subject of constant public scrutiny and accept freely and willingly restrictions that might be viewed as burdensome by the ordinary citizen. Because it is not practicable to list all prohibited acts, the prohibition is necessarily cast in general terms that extend to conduct by judges that is harmful although not specifically mentioned in the Code. Actual improprieties under this standard include violations of law, court rules, or other specific provisions of this Code.

## CANON 4: A JUDGE MAY ENGAGE IN EXTRAJUDICIAL ACTIVITIES THAT ARE CONSISTENT WITH THE OBLIGATIONS OF JUDICIAL OFFICE

A judge may engage in extrajudicial activities, including law-related pursuits and civic, charitable, educational, religious, social, financial, fiduciary, and governmental activities, and may speak, write, lecture, and teach on both law-related and nonlegal subjects. However, a judge should not participate in extrajudicial activities that detract from the dignity of the judge's office, interfere with the performance of the judge's official duties, **reflect adversely on the judge's impartiality**, lead to frequent disqualification, or violate the limitations set forth below.

Objector Bukowski states that the Hon. Judge Steven Rhodes neglect to disclose his participation in this forum nearly a year before the instant bankruptcy trial, and to disclose his comments at the forum and his connections with the forum participants, constitutes an "appearanceof impropriety," and raises questions about his impartiality in the instant case.

I hereby request that the Hon. Judge Steven Rhodes conduct a hearing on this objection and request for recusal forthwith, and before the conclusion of the eligibility trial in Case No. 13-53846.

Respectfully submitted,

Nov. 6, 2013

(signed) *Mary Diane Bukowski*

Mary Diane Bukowski
Creditor/eligibility objector Docket 440
9000 E. Jefferson #10-9
Detroit, Michigan 48213
Phone: 313-825-6126
Email: diane_bukowski@hotmail.com

**PROOF OF SERVICE TO CERTIFICATION FILERS:**

On September 26, 2013, a copy of this objection was emailed to the following:

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382

Facsimile: (213) 243-2539
bbennett@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY

# EXHIBIT 1

# Panel to examine Municipal Entities in Distress

The Bankruptcy Committee of the Federal Bar Association, Eastern District of Michigan Chapter, will present "Between a Rock and a Hard Place--Municipal Entities in Distress" a panel discussion on emergency managers and Chapter 9 bankruptcy.

The panel will feature U.S. Bankruptcy Court Judge Steven Rhodes, Eastern District of Michigan; Frederick Headen, director of the Bureau of Local Government Services in the Michigan Department of Treasury; Edward Plawecki, general counsel/director of Government Relations at Pierce, Monroe, & Associates; Judy A. O'Neill, Partner at Foley & Lardner; Douglas C. Bernstein, shareholder at Plunkett Cooney; and Charles M. Moore, principal at Conway MacKenzie.

The program will take place Wednesday, Oct. 10, from 4 to 6 p.m. at the Southfield Westin, 1500 Town Center. Networking, hors d'oeuvres and cash bar to follow the discussion.

Cost is $60 before Wednesday, Oct. 3, and $65 after Oct. 3/at the door. Municipal employees receive a 50% discount on admission.

To register, visit www.fbamich.org and click on "events."

For additional information, contact either David Lerner at 248-901-4010, Leslie Berg at 313-226-7950, Michael Hammer at 734-623-1696, or Craig Schoenherr at 586-997-6458.

Published: Thu, Sep 20, 2012

**Posted** October 19, 2012
Tweet This | Share on Facebook
**Between a rock and hard place**
http://www.legalnews.com/flintgenesee/1368328

**Panelists for "Between a Rock and a Hard Place: Municipal Entities in Distress" were, left to right, Frederick Headen, director of the Bureau of Local Government Services in the Michigan Department of the Treasury; Edward Plawecki of Pierce, Monroe & Associates; and Judge Steven Rhodes; Douglas Bernstein of Plunkett Cooney; Judy O'Neill of Foley & Lardner; and Charles Moore of Conway MacKenzie.**

Photo by John Meiu
**Seminar looks at emergency managers and municipal bankruptcy**
**By Steve Thorpe**
Legal News

There is a wide diversity of opinion on how to deal with the financial crisis facing some Michigan cities. What nearly all the experts agree on is that it won't be easy.

The Bankruptcy Committee of the Federal Bar Association, Eastern District of Michigan presented "Between a Rock and a Hard Place: Municipal Entities in Distress." The panel discussion on emergency managers and Chapter 9 bankruptcy was held Wednesday, Oct. 10, at the Southfield Westin Hotel.

Speakers and panelists included Judge Steven Rhodes, Frederick Headen, director of the Bureau of Local Government Services in the Michigan Department of the Treasury, Edward Plawecki of Pierce, Monroe & Associates, Judy O'Neill of Foley & Lardner, Douglas Bernstein of Plunkett Cooney and Charles Moore of Conway MacKenzie.

With Public Act 4 on the November ballot, the emergency manager solution has gotten a lot of attention, both positive and negative, lately. The subject generates a lot of heat, but little consensus. The theory of the emergency manager is that an outsider can come in and balance the books

But Frederick Headen from the State of Michigan says that simply generating more revenue and spending less oversimplifies the problems and solutions.

"There also are what I'll call the operational inefficiencies, which can be equally frustrating," Headen says. "Back in January our review team was in Detroit. The city at that time had between nine and ten thousand employees. It also had 48 bargaining units, one of which I believe had only one member. The state of Michigan, by contrast, has about 50,000 employees with less than half a dozen bargaining units. In Detroit, 65 people are doing payroll while we have 15 people doing payroll for the entire state of Michigan."

Several of the panelists were convinced that the problems are too great for conventional city leadership to solve and that until they change their ways of identifying problems and dealing with them, outside managers with business experience must play a role.

"Why aren't municipalities addressing these issues?" Charles Moore asked rhetorically. "If this is what is causing financial distress, why aren't leaders taking more action, as companies would, to address them?"

Moore bemoans the lack of financial and business experience that many municipal leaders bring to the table.

"Many times those elected officials have no experience in business at all."

Plus, the usual checks and balances that occur in a business environment are usually absent in government. This can lead to a lack of urgency, even when all involved see a problem looming on the horizon.

"No politician ever gets rewarded for solving tomorrow's problems today," Moore said. "So you have a situation where you see the trends happening, but there's no incentive to act, even if the leader knew what to do. They're not equipped with crisis management skills or expertise."

Some experts point out that Detroit's population is half what it once was and they advocate shrinking the city services in to serve that greatly reduced number. Edward Plawecki argues that population isn't the only factor that should be considered when discussing "resizing" the city of Detroit. Geography plays a big role in getting essential services like police and fire to citizens in a timely fashion.

"I hear all the time that we have too many police officers," Plawecki said. "Well, if you look at a study that says for 700,000 people you should have 5000 officers, statistically that's too many. However, you can't look at it that way. A geographical analysis would

show that just two precincts in Detroit — the 7th and the 9th — are larger than the entire cities of Cleveland or Paris. So when you're talking about resources you would have to move firefighters or officers from one side of the city to the other. You've got to look at the size of the land when you look at the size of the services."

All of the panelists seemed to agree on the difficulty of taking meaningful, effective action to relieve municipal financial distress. And they agreed that remedies are often fought every inch of the way.

"What we've heard from everybody here today is that every method of implementation is replete with litigation," Judy O'Neill said. "Even Chapter 9, which probably has the strongest hold, has this eligibility fight that consumes resources and time."

Headen hopes that more effective solutions to municipal troubles are on the way. For his sake as well as for the sake of citizens.

"I have the distinction of having served on 16 financial review teams and I have the battle scars to prove it," he said. "I was appointed to five by Gov. Engler, five by Gov. Granholm and six, so far, by Gov. Snyder. That's a record that I hope is never broken because no one else should ever have to witness so much financial distress."

# Exhibit 3

# Distressed Municipalities Event Rhodes (Legal News Oakland County)

On October 10, 2012, the Chapter Bankruptcy Committee hosted a timely roundtable discussion on "Municipal Entities in Distress – Between a Rock and a Hard Place" at the Westin Hotel in Southfield. Bankruptcy Judge Steven W. Rhodes moderated the event, which began with short presentations by the panelists.

Frederick Headen, Director of the Bureau of Local Government Services in the Michigan Department of Treasury, discussed the various Michigan statutes relating to emergency managers. Edward J. Plawecki, Jr., General Counsel/Director of Government Relations at Pierce Monroe & Associates, discussed how the Michigan emergency manager statutes work in practice. Charles M. Moore, Principal at Conway MacKenzie, discussed the practical realities of emergency managers, ways municipalities can avoid emergency managers and otherwise deal with financial distress issues. Judy A. O'Neill, Partner at Foley & Lardner, discussed Chapter 9 bankruptcy issues, including constitutional concerns, contract, and plan confirmation issues. Douglas C. Bernstein, Shareholder at Plunkett Cooney, spoke on Chapter 9 eligibility and filing challenges.

The panelists, led by Judge Rhodes, then engaged in a lively discussion and took numerous questions from the audience. The event was a great source of information about this timely topic. The event concluded with a cocktail/networking event.