UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

```
--------------------------------------------------------x
                                              :
In re                                         :          Chapter 9
                                              :
CITY OF DETROIT, MICHIGAN,                    :          Case No. 13-53846
                                              :
                  Debtor.                     :          Hon. Steven W. Rhodes
                                              :
                                              :
--------------------------------------------------------x
```

**CITY OF DETROIT'S SUPPLEMENTAL BRIEF
IN SUPPORT OF ENTRY OF AN ORDER FOR RELIEF**

The City of Detroit (the "City") respectfully submits this supplemental brief in support of the entry of an Order for Relief[1] in this chapter 9 case and in response to supplemental briefs (each, a "Supplemental Brief") filed by certain Objectors.

**I.   PA 436 Does Not Violate Art. II, § 9 of the Michigan Constitution**

The Objectors suggest that PA 436 violates Article 2, Section 9 of the Michigan Constitution because it is allegedly a "contrive[d] mechanism[ ] designed

---

[1] Capitalized terms used but not defined herein shall have the meaning given to them in the (a) Declaration of Kevyn D. Orr in Support of City of Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code (Docket No. 11) (the "Orr Declaration") and (b) City of Detroit's Pre-Trial Brief in (I) Support of Entry of an Order for Relief and (II) Opposition to Objections Requiring the Resolution of Issues of Material Fact (Docket No. 1240) (the "City Pre-Trial Brief").

specifically to 'thwart' the referral process." See, e.g., RDPMA Supplemental Brief, at 8-9.[2] This assertion is unwarranted.

Under Michigan law, the motives of the Michigan legislature in passing PA 436 (or any provision thereof) are irrelevant to an inquiry into the statute's constitutionality. Michigan United Conservation Clubs v. Secretary of State, 630 N.W.2d 297 (Mich. 2001), is instructive on this point. Concurring with the Michigan United majority's reversal of the Court of Appeals' holding that a statute including an appropriations provision was nevertheless subject to referendum, Chief Justice Corrigan observed that

> the Legislature's subjective motivation for making a $1,000,000 appropriation … – assuming one can be accurately identified – is irrelevant. Intervening defendant contends that … the "purpose" of the appropriation … was to evade a referendum. This argument is misplaced. This Court has repeatedly held that courts must not be concerned with the alleged motives of a legislative body in enacting a law, but only with the end result – the actual language of the legislation….

---

[2] A related argument offered by the RDPMA – that PA 436 is ineffective and violates Article 2, Section 9 by virtue of having been enacted by the State legislature prior to having been approved by a majority of the Michigan voters – improperly assumes an identity between the rejected PA 4 and PA 436 and is easily dispatched. Unlike PA 4, PA 436 has never been the subject of a referendum pursuant to Article 2, Section 9, and cannot be the target of such power. Voter approval of PA 436 was not a prerequisite to the effectiveness thereof. Likewise, Objectors identify no constitutional prohibition against PA 436's passage solely because it addressed subject matter similar to the recently-rejected PA 4 and none should be implied.

13-53846-tjt    Doc 1556    Filed 11/06/13    Entered 11/06/13 16:56:37    Page 2 of 10

> [T]o make legislation depend upon motives would render all statute law uncertain…. Therefore the courts do not permit a question of improper legislative motives to be raised, but they will in every instance assume that the motives were public and befitting the station. They will also assume that the legislature had before it any evidence necessary to enable it to take the action it did take.

Mich. United, 630 N.W.2d at 298-99 (Corrigan, C.J., concurring) (quoting Cooley, Constitutional Law, pp. 154-55).[3] The Michigan Supreme Court has made clear that, if the State's citizens believe its legislators to have been improperly motivated, their recourse is not the judiciary, but the constitutional powers of referendum and initiative *and the ballot box*. See, e.g., Houston, 810 N.W.2d at 256 ("[I]t is the responsibility of the democratic, and representative, processes of government to check what the people may view as political or partisan excess by their Legislature."); Mich. United, 630 N.W.2d at 298 (emphasizing that "the intervening defendant retains a direct remedy, the initiative process. Under our

---

[3] See also Houston v. Governor, 810 N.W.2d 255, 256 (Mich. 2012) (stating that "nothing that is relevant [to determining the constitutionality of a statute] can be drawn from the political or partisan motivations of the parties"); Kuhn v. Dep't of Treasury, 183 N.W.2d 796, 799 (Mich. 1971) (rejecting argument that statutory language addressing meeting deficiencies in state funds was "a devious attempt to avoid the people's constitutional power of referendum;" stating that "[w]e will not concern ourselves with the legislators' motives for inserting the language regarding meeting deficiencies in the Act"); People v. Gardner, 106 N.W. 541, 542 (Mich. 1906) ("Nothing is better settled than the rule that the motives of a legislature or of the members cannot be inquired into, for the purpose of determining the validity of its laws.").

state constitution, this remedy is available even when the Legislature has made an appropriation…."").[4]

Even if Michigan law did not prohibit an inquiry into the motivations of Michigan's legislators (which it does), the evidence does not demonstrate that the State included appropriations provisions in PA 436 for the sole purpose of improperly insulating the legislation from referendum. The RDPMA's citation to the deposition testimony of Howard Ryan, the State's Rule 30(b)(6) witness, shows only that (A) the appropriations provision was included in the legislation at an early stage in its development and (B) that PA 436 was intended to provide the State with options in the event of a municipal financial emergency should PA 4 be rejected. See RDPMA Supplemental Brief, at 4-5. There is nothing in the testimony cited by the RDPMA that suggests – much less that demonstrates – that such provisions were included for the allegedly improper purpose of frustrating

---

[4] Consideration of the evidentiary challenges inherent in the attempt to divine a legislature's motivations demonstrates that the Michigan Supreme Court's long-standing rule against such attempts is well-founded. For example, it would be essentially impossible for a court to determine the intentions of the sundry legislators in each of the legislature's two houses involved in a bill's passage. Even if such a determination were possible, the court would be charged with determining whose intent was relevant (the majority's? a majority of the majority?) and possibly whether such intent was the legislators' sole or even primary motivation. See Houston, 810 N.W.2d at 256 ("[T]his Court possesses no special capacity, and there are no legal standards, by which to assess the political propriety of actions undertaken by the legislative branch.").

Article 2, Section 9.[5] Mr. Ryan is not a State legislator and, thus, did not vote on the bill, nor could he divine the intent of each legislator that voted on the bill.[6]

Moreover, the inclusion of appropriations provisions in PA 436 is simply irrelevant to an inquiry into the constitutionality of the statute. The inclusion of appropriation provisions may be relevant to a frustrated attempt to subject legislation to the referendum process. See Mich. United, 630 N.W.2d at 299-300 (Young, J., concurring) (describing an unsuccessful attempt to subject legislation to referendum). Yet even a successful challenge to the inclusion of such provisions would not render the legislation unconstitutional; it would merely render it subject to referendum. Where no such challenge has been made and no referendum process ever initiated (as is the case with PA 436), there is no practical, much less constitutional, consequence to the inclusion of such provisions.

---

[5]  Similarly, contrary to the RDPMA's suggestion, Jones Day and the State did not conspire to include an appropriations provision in PA 436. The document cited to this effect – Objectors' Exhibit 201 – is an email dated March 2, 2012 (i.e., months prior to the drafting and proposal of PA 436) that does not even refer to an emergency manager statute in discussing the effect of appropriations provisions. The notion that a months-old email – on a different topic – might have influenced the drafting of PA 436 is absurd.

[6]  Moreover, on October 28, 2013, the Governor testified – under direct examination from the RDPMA – that the appropriations provisions in PA 436 were included (a) to relieve municipalities of the burden of paying the salaries of emergency managers and the costs of financial consultants and (b) in direct response to concerns raised during the referendum process related to PA 4. See Transcript of Hearing regarding Eligibility Trial conducted on October 28, 2013, at 223:4-14.

Accordingly, PA 436 does not violate Article 2, Section 9 of the Michigan Constitution and the City's satisfaction of section 109(c)(2) of the Bankruptcy Code cannot be undermined by the circumstances of PA 436's passage.

## II. *Bekins* Confirms That Impairment of Municipal Contractual Obligations is Effected by the Bankruptcy Court

Numerous Objectors – concerned that the Pensions Clause's prohibition on impairment of pension obligations "[ ]by" the State would not apply to potential impairments of such obligations pursuant to a plan of adjustment – contest the proposition that any impairment of the City's various contractual obligations in this chapter 9 case will be effected not by the City or the State, but by the federal government through the Court. E.g., AFSCME Supplemental Brief, at 4-8; Retiree Associations Supplemental Brief, at 7-8. Yet the United States Supreme Court in United States v. Bekins, 304 U.S. 27 (1938), made clear that it is federal, and not state, power being exercised. Citing the legislative history of former Chapter X of the Bankruptcy Act (the predecessor to chapter 9), the Bekins court identified the dilemma confronting "taxing agencies" (i.e., Chapter X's version of "municipality") in the absence of federal relief: an inability to pay their debts on one hand and the lack of recourse to state municipal debt adjustment regimes forbidden by the Contracts Clause on the other. "There is no hope for relief through statutes enacted by the States, because the Constitution forbids the passing of State laws impairing the obligations of existing contracts. *Therefore, relief must come from Congress, if*

*at all*." Bekins, 304 U.S. at 51 (citing S. Rep. No. 911, 75th Cong., 1st Sess.) (emphasis added).

Chapter X resolved this dilemma:

> In the instant case we have cooperation to provide a remedy for a serious condition in which the States alone were unable to afford relief…. The natural and reasonable remedy through composition of the debts of the district was not available under State law by reason of the restriction imposed by the Federal Constitution upon the impairment of contracts by state legislation. The bankruptcy power is competent to give relief to debtors in such a plight…. Through [the State's] cooperation with the national government the needed relief is given.

Id. at 53-54. Thus, Bekins confirms that, through consenting to the filing of a municipality's bankruptcy petition, a State that is constitutionally forbidden from impairing a municipality's improvident contracts nevertheless may allow such municipality to obtain relief from the entity that *is* empowered to impair such contracts: the federal government, acting through the bankruptcy court.

That federal power is exercised to impair municipal contracts in bankruptcy was likewise recognized in Justice Cardozo's dissent in Ashton v. Cameron County Improvement District No. 1, 298 U.S. 513 (1936), which dissent was joined by three of the Justices in the Bekins majority, including Chief Justice Hughes, the author of Bekins.

> The Act does not authorize the states to impair through their own laws the obligation of existing contracts. Any interference by the states is remote and indirect…. If

> contracts are impaired, the tie is cut or loosened through the action of the court of bankruptcy approving a plan of composition under the authority of federal law. There, and not beyond in an ascending train of antecedents, is the cause of the impairment to which the law will have regard. Impairment by the central government through laws concerning bankruptcies is not forbidden by the Constitution. Impairment is not forbidden unless effected by the states themselves. No change in obligation results from the filing of a petition by one seeking a discharge, whether a public or a private corporation invokes the jurisdiction. The court, not the petitioner, is the efficient cause of the release.

Ashton, 298 U.S. at 541-42 (Cardozo, J., dissenting) (citations omitted). This rationale would be adopted by the Bekins majority just two years later in confirming the constitutionality of chapter 9's predecessor. Accordingly, longstanding Supreme Court precedent confirms that it is the federal – and not state – government that impairs contractual obligations in chapter 9, and the Objectors' arguments to the contrary must be rejected.

### III. The Pensions Clause Enjoys No Special Status in Chapter 9

The Objectors contend that the constitutional status of the Pensions Clause renders it qualitatively different than mere state statutory law and, thus, insulates it from pre-emption by the federal Bankruptcy Code. See AFSCME Supplemental Brief, at 2. The Objectors, however, offer no citation that might support their differentiation of one form of state law from another for pre-emption purposes. Indeed, as demonstrated in the City's prior briefing, far from being forbidden, the

pre-emption of state constitutional law – notably, the various state contracts clauses – is a commonplace in municipal bankruptcies.  See Ass'n of Retired Emps. v. City of Stockton (In re City of Stockton), 478 B.R. 8, 16 (Bankr. E.D. Cal. 2012) ("The federal bankruptcy power also, by operation of the Supremacy Clause, trumps the similar contracts clause in the California state constitution.").

The Pensions Clause similarly establishes no special priority for claims for pension underfunding.  It merely establishes that such claims are contractual obligations of the State.  Accordingly, arguments that claims for underfunding require separate classification under a plan of adjustment or that such claims should be exempted from discharge (see Retirement Systems' Supplemental Brief, at 6-8), in addition to being premature and irrelevant to a determination of eligibility, should be rejected.

Finally, multiple Objectors (see, e.g., AFSCME Supplemental Brief, at 3-4) identify the Supreme Court's decision in Midlantic National Bank v. New Jersey Department of Environmental Protection, 474 U.S. 494 (1986), as a source of protection for rights created by the Pensions Clause, which are characterized as necessary to public health and safety.  The Objectors offer no citation in support of the proposition that the impairment of monetary claims implicates public health and safety, and the City's research has uncovered none.  Accordingly, this argument must be rejected.

For the foregoing reasons, and those set forth in the Prior Submissions and City Pre-Trial Brief, the Court should enter an Order for Relief in this case.

Dated:  November 6, 2013

Respectfully submitted,

 /s/  Bruce Bennett
Bruce Bennett (CA 105430)
JONES DAY
555 South Flowers Street
Fiftieth Floor
Los Angeles, California  90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
   STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 963-6420
Facsimile:  (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY