UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| | ) | |

**UNITED STATES OF AMERICA'S SUPPLEMENTAL BRIEF IN SUPPORT OF
THE CONSTITUTIONALITY OF CHAPTER 9**

Pursuant to this Court's Order Regarding Further Briefing on Eligibility (Docket No. 1217), the United States hereby responds to (1) *AFSCME's Supplemental Brief Regarding Eligibility* (Docket No. 1467) ("AFSCME Brief") and (2) *Supplemental Brief of the Official Committee of Retirees Regarding Ripeness* (Docket No. 1474) ("Committee Brief"). As with its *Memorandum in Support of Constitutionality of Chapter 9 of Title 11 of the United States Code* (Docket No. 1149), the United States addresses herein only those arguments concerning whether chapter 9 violates the United States Constitution.

**I. The Court Must Interpret Chapter 9 to Avoid Finding It Unconstitutional**

AFSCME's and the Committee's constitutional challenges to chapter 9 rest in large part upon (1) an unfounded assertion that the Supreme Court has overturned, *sub silentio,* its seventy-five year old decision in *United States v. Bekins*, 304 U.S. 27 (1938), and (2) a novel and unprecedented extension of the Supreme Court's anti-commandeering decisions. Such arguments are an ill-advised invitation for this Court to reach out and declare a federal statute unconstitutional which would clearly contravene the Supreme Court's direction regarding the consideration of constitutional challenges:

> The cardinal principle of statutory construction is to save and not to destroy. We have repeatedly held that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act. Even to avoid a serious doubt the rule is the same.

*NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30 (1937); *see also Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988); *Tennessee Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 454 (6th Cir. 2009). This bedrock rule applies with equal force to federal bankruptcy laws. *U.S. v. Security Indus. Bank*, 459 U.S. 70, 78 (1982).

As explained below, chapter 9 is not unconstitutional, and even any doubt on that issue must be resolved by upholding the statute.

**II. Chapter 9 Does Not Violate Article I, Section 10 of the Constitution**

AFSCME claims that "[t]he plain language of Article I, Section 10 [of the Constitution] . . . makes clear that Congress cannot pass a law consenting to an impairment of contracts by the state," which is what chapter 9 allegedly does. *AFSCME Br.* at 4-5. This claim misreads section 10, which articulates no restriction on Congress as opposed to the States.

Section 10 of Article I articulates the powers expressly forbidden to the States, not Congress. Section 9 separately prescribes those powers forbidden to Congress. As to the powers granted to each sovereign, section 8 delineates those powers specifically granted to Congress, and the Tenth Amendment to the Constitution grants to the States all other powers not delegated to the federal government or otherwise prohibited to them. Thus, sections 8 and 9 of Article I define the scope of Congress's powers, and section 10 of Article I and the Tenth Amendment define the scope of the States' powers. In short,

2

States -- not Congress -- are bound by the restrictions in section 10. A plain reading of that section confirms this.

Each of the three clauses in section 10 begins "[n]o State shall," indicating unequivocally that the section addresses only what a State cannot do, e.g., enter into a treaty (cl. 1), pass *ex post facto* laws or laws impairing contracts (cl. 1), lay any imposts or duties on imports or exports (cl. 2), or keep troops or ships of war in time of peace (cl. 3). Clauses 2 and 3 provide a congressional consent exception for powers otherwise forbidden the States, i.e., Congress can pass a statute authorizing States to lay imposts or duties on imports or exports, and States can thereby do so without violating section 10. But the absence of that exception in clause 1 does not, as AFSCME suggests, transform clause 1 into a restriction not only on what laws States can enact but also on congressional enactments, which restrictions belong in section 9. Rather, the absence simply means that, even if a federal statute authorized States to pass laws impairing contracts, States still cannot pass such a law without violating clause 1 of section 10.[1]

In this case, however, the challenged law (chapter 9) is not one passed by a State. It is a federal law subject to the scope of Congress's powers set forth in sections 8 and 9 but not section 10. Simply put, chapter 9 cannot violate section 10 because it is not a law passed by a State.

---

[1] The only case AFSCME cites in support of its argument, *Rhode Island v. Massachusetts*, 37 U.S. 657 (1838), does not undermine this plain reading. There, the Court noted in dicta that clause 1 of section 10 prohibited any exercise of government power from validating a State's entry into any treaty, alliance or confederation. 37 U.S. at 724-25. That statement simply means a State cannot enter into a treaty even with Congress's authorization to do so – the same way "[n]o State shall . . . *pass* any . . . law impairing the obligation of contracts," U.S. Const., art. I, § 10, cl. 1 (emphasis added), even if Congress says it is fine for States to do so. Here, no State has passed a law impairing contracts.

### III. *Bekins* Remains Good Law Despite *Asbury Park* and the Anti-Commandeering Decisions

The balance of AFSCME's constitutional challenge to chapter 9, *AFSCME Br.* at 6-8, restates arguments already made regarding the viability of *Bekins* in light of *Faitoute Iron & Steel Co. v. City of Asbury Park, N.J.*, 316 U.S. 502 (1942), and the Supreme Court's anti-commandeering decisions. The United States has already responded to those arguments and believes AFSCME's challenge cannot stand. The United States offers, however, two additional responses further demonstrating the lack of merit in AFSCME's position.

#### A. The Bankruptcy Clause Precludes State Municipal Debt Adjustments

AFSCME's constitutional argument hinges on its assertion that, under *Asbury Park*, States can enact their own statutes for reorganizing municipal debt because the "necessity compelled by unexpected financial conditions to modify an original arrangement for *discharging* a city's debt is implied in every such obligation." *AFSCME Br.* at 6 (quoting *Asbury Park*) (emphasis added). Without this supposed holding gleaned from *Asbury Park*, AFSCME's constitutional challenge to chapter 9 fails.

Yet, this holding has efficacy only under the unique facts *Asbury Park* presented. Recall that *Asbury Park* involved a state debt adjustment plan approved <u>after</u> the Supreme Court declared the 1934 municipal bankruptcy act unconstitutional, *Ashton v. Cameron County Water Improvement Dist. No. 1*, 298 U.S. 513 (1936), but <u>before</u> Congress passed the 1937 act upheld in *Bekins*. *Asbury Park*, 316 U.S. at 507-08. In other words, no federal municipal bankruptcy act was in effect when the state debt adjustment plan was approved.

If such an act did exist, as chapter 9 does today, the validity of New Jersey's municipal debt adjustment statute would have failed in the face of the Bankruptcy Clause. U.S. Const., art. I, § 8, cl. 4. Under that clause, "[t]he power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States is unrestricted and paramount." *Int'l Shoe Co. v. Pinkus*, 278 U.S. 261, 265 (1929). Indeed, "Congress did not intend to give insolvent debtors seeking discharge, or their creditors seeking to collect claims, choice between the relief provided by the Bankruptcy Act and that specified in state laws." *Id.*; *see also Richardson v. Schafer* (*In re Schafer*), 689 F.3d 601, 610 (6th Cir. 2012) ("'So long as there is no national bankruptcy act, each state has full authority to pass insolvency laws binding persons and property within its jurisdiction.' Upon national action, however, states lost such power.") (citation omitted). Thus, state laws are suspended to the extent that they conflict with the laws of Congress, enacted under its constitutional authority, on the subject of bankruptcies, *Stellwagen v. Clum*, 245 U.S. 605, 613 (1918), and the New Jersey statute in *Asbury Park* would have failed this test as it provided for the discharge of debt, conflicting with one of the primary purposes of federal bankruptcy law, *Perez v. Campbell*, 402 U.S. 637, 648 (1971).[2]

Given the absence of an applicable federal municipal bankruptcy law in *Asbury Park*, however, the dissenting bondholders could not put the New Jersey statute to the Bankruptcy Clause test, which is why that clause is not even addressed in the decision.[3]

---

[2] The New Jersey statute provided that "no creditor whose claim is included in such adjustment or composition shall be authorized to bring any action or proceeding of any kind or character for the enforcement of his claim." 316 U.S. at 504.

[3] The dissenting bondholders did make a preemption argument based on the 1937 municipal bankruptcy act. Since that act said nothing, however, about "terminat[ing] a
*(continued on next page)*

5

In contrast, chapter 9 applies today, and the Bankruptcy Clause would preclude a statute such as New Jersey's. For that reason, *Asbury Park* has no force beyond the facts present there, and AFSCME's reliance on it to undermine *Bekins* must fail.

### B. The Anti-Commandeering Doctrine Does Not Apply to Chapter 9

AFSCME's reliance on the anti-commandeering doctrine from *New York v. U.S.*, 505 U.S. 144 (1992), and *Printz v. U.S.*, 521 U.S. 898 (1997), a doctrine which the Supreme Court has rarely applied to invalidate federal law, is unavailing. Indeed, those two decisions are the only instances where the Supreme Court has so applied that doctrine, and the United States has already demonstrated the stark differences between chapter 9 and the intrusive statutes in those cases.

In contrast, the Supreme Court unanimously rejected an anti-commandeering challenge in *Reno v. Condon*, 528 U.S. 141 (2000), where the challenged statute involved a restriction on what States could do rather than a command to engage in affirmative regulatory action. In *Reno*, South Carolina challenged the constitutionality of the Driver's Privacy Protection Act of 1994 ("DPPA"), which prohibits States from selling personal information obtained in connection with a motor vehicle record. The Supreme Court rejected the State's anti-commandeering claim because the DPPA "does not require the South Carolina Legislature to enact any laws or regulations, and it does not require state officials to assist in the enforcement of federal statutes regulating private individuals." *Reno*, 528 U.S. at 151.

---

pending state court proceeding" such as New Jersey's, the Supreme Court rejected the argument as an implied retroactive nullification of state authority. 316 U.S. at 507-08.

Like the DPPA in *Reno*, and unlike the Brady Act in *Printz* and the waste storage act in *New York*, chapter 9 does not require a State legislature "to enact any laws or regulations, and it does not require state officials to assist in the enforcement of federal statutes regulating private individuals." *Reno*, 528 U.S. at 151; *see also Nat'l Collegiate Athletic Ass'n v. Governor of N.J.*, 730 F.3d 208, 231 (3rd Cir. 2013) ("Unlike the problematic 'take title' provision and the background check requirements, [the federal law] does not *require* or coerce the states to lift a finger – they are not required to pass laws . . . to expend any funds, or to in any way enforce federal law.") (emphasis in original).[4] More generally, chapter 9 imposes no affirmative duty on States to take any action whatsoever and in fact, leaves unfettered a State's power to bar its municipalities from gaining access to chapter 9. Chapter 9, therefore, does not offend the Tenth Amendment's commandeering prohibition.

## IV. THE COMMITTEE LACKS STANDING TO CHALLENGE CHAPTER 9

To demonstrate standing, the Committee claims its members have suffered an injury in fact from the Debtor's mere filing of chapter 9 because they have (1) had to make adjustments to their current habits and future plans and (2) lost negotiating leverage with the Debtor over the possible impairment of pension benefits. *Committee Br.* at 4 and 8.[5] The cases the Committee cites are, however, inapposite.

---

[4] In other words, and to address one of the Court's questions from the October 16 hearing regarding the meaning of *New York*, the Tenth Amendment's commandeering prohibition is not offended unless the language of the federal statute itself "compel[s] the States to enact or administer a federal regulatory program." *New York*, 505 U.S. at 188. Chapter 9 does not compel the States to do either.

[5] As parties in interest under 11 U.S.C. § 1109(b), the Committee's members have standing to appear and be heard on any issue is this case but as the Committee concedes, *(continued on next page)*

As to the first injury, the Committee cites *Thomas More Law Center v. Obama*, 651 F.3d 529 (6th Cir. 2011). There, the injury arose from the minimum coverage provisions of the Patient Protection and Affordable Care Act that prompted plaintiffs to change their present spending and saving habits to avoid a tax penalty the act imposed for not having conforming health insurance. *Id*. at 535.[6] Here, no provision of chapter 9 imposes a similar requirement on the Committee's members that necessitates they expend personal funds or change saving habits. Unlike under the Affordable Care Act, the Committee's members are not in danger of being penalized under any provision of chapter 9 if they do not change their spending and saving habits.

As to the second injury, the Committee relies on *Clinton v. City of New York*, 524 U.S. 417 (1988), in which the Court held, among other things, that an association of potato farmers formed for the purpose of *acquiring* potato processing facilities had standing to challenge the line item veto by the President of a statutory provision that gave tax relief to the *sellers* of such facilities. *Id*. at 432. The Supreme Court recognized that the government's action, an elimination of a financial incentive for sellers, created a sufficient probability of harm to potential purchasers to fulfill the causation requirement for standing. *Id*. The veto of the tax relief had eliminated the benefit purchasers gained

---

*Committee Br.* at 6, they must also satisfy the standing requirements of *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). *In re Barnwell Cnty. Hosp.*, 459 B.R. 903, 908 (Bankr. D.S.C. 2011) ("Standing of the Committee to raise and contest such [chapter 9] authority and eligibility is dependent on the Committee meeting the test set forth in *Lujan*, as well as satisfying the party in interest standard.").

[6] After the Sixth Circuit's decision in *Thomas More*, the Supreme Court held that the Affordable Care Act "leaves an individual with a lawful choice" to buy or not buy health insurance, "so long as he is willing to pay a tax levied on" the choice not to buy. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2600 (2012).

8

when they "received the equivalent of a statutory 'bargaining chip'" to use in negotiations with sellers. *Id*. Here, unlike the challenged line item veto which excised a specific statutory right providing the challenging party bargaining power, chapter 9 has not itself eliminated any such right of the retirees. Nor has chapter 9 itself vested the Debtor with a specific, statutory bargaining chip to eliminate pension benefits; absent creditor consent, the Debtor must still obtain this Court's approval of any plan of adjustment that proposes the impairment of such benefits or, for that matter, the impairment of any claims.

## V. THE COMMITTEE'S CHALLENGE IS NOT RIPE

The Committee's challenge is also not ripe. The Committee contends its constitutional objection is ripe for adjudication because its "members need not wait until their pension benefits are impaired in violation of the [Michigan Constitution] Pension Clause," when the Debtor has made manifest its intent to impair those benefits. *Committee Br.* at 2-3. But the ripeness cases the Committee cites differ in one key aspect from this case – this Court must approve any plan of adjustment in which the Debtor seeks to impair pension benefits. The Debtor cannot impair those benefits unless and until this Court says that it can.[7]

The challenge to chapter 9 here is analogous to the zoning ordinance challenge the Sixth Circuit rejected on ripeness grounds in *Miles Christi Religious Order v. Township of Northville*, 629 F.3d 533 (6th Cir. 2010). Interlineating the Committee's own

---

[7] For example, the Committee cites *Rose v. Volvo Construction Equipment North America, Inc.*, 412 F. Supp. 2d 740 (N.D. Ohio 2005), but that case involved a challenge to a private employer's unilateral actions allegedly in violation of a collective bargaining agreement and a retirement plan. Here, the Debtor cannot impair pension benefits unilaterally and then defend that impairment post hoc.

9

description of that case, *Committee Br.* at 2 n.3, "the zoning ordinance [chapter 9] challenge was unripe because a zoning board [this Court] had not determined how the ordinances applied to plaintiff's property [retirees' pension benefits] or whether a variance [impairment] would be granted." That determination, i.e., whether Debtor's plan of adjustment can impair pension benefits, may come in due course at which point the Committee's challenge arises in a concrete factual context and is therefore fit for judicial decision. *Miles Christi*, 629 F.3d at 537. Until then, the challenge is not ripe.

The Committee faults the United States for failing to specify how the factual landscape might change in this case, which would justify this Court staying its hand for prudential reasons. *Brown v. Ferro Corp.*, 763 F.2d 798, 801 (6th Cir. 1985). In fact, the Committee dismisses the chance of a successful mediation as "speculative at best." *Committee Br.* at 5 n.7. Yet, the Committee also seeks to retain Lazard Freres & Co. LLC ("Lazard") as a financial advisor to be paid a fixed monthly fee to assist it, among other things, in "connection with the financial aspects of negotiations with the City" and "reviewing and analyzing any restructuring alternatives for the City proposed by any party."[8] Indeed, the Committee seeks to pay Lazard, in addition to a monthly fee, a success fee if there is "a settlement of the material claims of the Retiree Committee and the consummation of the City's chapter 9 proceedings." *Lazard App.* at 6. Clearly then, settlement remains a viable possibility which would certainly change the factual

---

[8] *Application Pursuant to Sections 901, 1102 and 1103 of the Bankruptcy Code and Bankruptcy Rule 2014 for Entry of an Order Authorizing the Retention and Employment of Lazard Freres & Co. LLC as Financial Advisor to the Official Committee of Retirees Effective as of September 3, 2013* at 5 (Docket No. 1476) ("Lazard Application").

landscape in which any constitutional challenge arises, if at all. Given this, the Court should not consider the constitutional challenges ripe for review.

## CONCLUSION

For all the foregoing reasons, the Court should reject the constitutional challenges to chapter 9.

Dated: November 6, 2013      Respectfully submitted,

                 STUART F. DELERY
                 Assistant Attorney General


                 BARBARA L. MCQUADE
                 United States Attorney

                 J. CHRISTOPHER KOHN
                 Director

                 /s/ Matthew J. Troy
                 TRACY J. WHITAKER
                 JOHN T. STEMPLEWICZ
                 MATTHEW J. TROY
                 Attorneys, Civil Division
                 U.S. Department of Justice
                 P.O. Box 875
                 Ben Franklin Station
                 Washington, DC 20044
                 Tel: (202) 514-9038
                 Fax: (202) 514-9163
                 Tracy.Whitaker@usdoj.gov
                 John.Stemplewicz@usdoj.gov
                 Matthew.Troy@usdoj.gov
                 Attorneys for the United States

11

13-53846-tjt  Doc 1560  Filed 11/06/13  Entered 11/06/13 18:40:17  Page 11 of 12

## CERTIFICATE OF SERVICE

 I, Matthew J. Troy, hereby certify that the service of this United States of America's Supplemental Brief in Support of the Constitutionality of Chapter 9was filed and served via the Court's electronic case filing and noticing system on November 6, 2013.

/s/ Matthew J. Troy