# EXHIBIT 6-2

# IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

BRENDAN MILEWSKI

            Plaintiff,                    Docket No:  12-        CK

-vs-

CITY OF DETROIT,

            Defendant.

_____/

**JAMI JONES, PLLC**
**JAMI W. JONES P64720**
Counsel for Plaintiff
33200 DequindreSuite 100
Sterling Heights, MI48310
Tel: (586) 268-8200 / Fax: (586) 268-8518

There is no other pending or resolved civil action
arising out of the transaction or occurrence alleged
in the complaint.  MCR 2.113(a).

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

    **NOW COMES** the Plaintiff, BRENDAN MILEWSKI, by and through his attorneys,

**JAMI JONES PLLC,** and for his Complaint against the Defendant, CITY OF DETROIT, states

unto this Honorable Court the following:

### JURISDICTION

1.     That Plaintiff, BRENDAN MILEWSKI, (also, herein, "Plaintiff" or "Milewski"), at all

    times pertinent hereto was a resident of the Township of Washington, County of

    Macomb, State of Michigan.

2.     That Defendant, CITY OF DETROIT, ("Detroit", the "City", or "Defendant"), is a self-

    insured municipality located in Wayne County within the State of Michigan.

3.     That the amount in controversy is over $25,000.00 exclusive of costs, interest, and

attorney fees.

## COUNT I - BREACH OF CONTRACT/VIOLATION OF DETROIT CITY CHARTER

Plaintiff hereby incorporates paragraphs one (1) through three (3) as if fully stated herein.

4. That Plaintiff was employed by the City of Detroit as a firefighter at all times relevant hereto.

5. That on or about August 13, 2010, Plaintiff was engaged in firefighting duties on behalf of the City in a building at the intersection of Drexel Road and Jefferson Avenue.

6. That during and in the course of his firefighting duties as described in the preceding paragraph, Plaintiff Brendan Milewski became permanently and completely disabled when he suffered multiple severe injuries, including but not limited to T-5 parapalegia.

7. That, pursuant to both the Detroit City Charter, (the "Charter"), and the Master Agreement between the City of Detroit and the Detroit Fire Fighter's Association, (the "Agreement"), Plaintiff, upon becoming so disabled, became entitled to certain benefits as a duty disability retiree. These benefits include, but are not limited to, benefits "like" those devised in the Michigan Worker's Disability Compensation Act, such as:

   a. Medical expenses;

   b. Home modifications;

   c. Prescription coverage;

   d. Attendant Care;

   e. Medical equipment and supplies; and,

   f. Case Management

   h. Vehicle Modification

   i. Wage loss

   j. Attorney fees for medical benefits wrongfully denied

2

8.     That under the terms and conditions of the Charter and Agreement, Defendant became obligated to pay, on behalf of Plaintiff, the foregoing expenses or losses which the Plaintiff sustained relative to his duty-related bodily injury and total disability.

9.     That Plaintiff meets all the requirements of total disability and total incapacity under the Charter and the Agreement, as he is, within the meaning of the Agreement, therefore entitled to benefits.

10.    Specifically, Plaintiff is unable to perform, for wage or profit, due to injury, illness or disease, the material and substantial duties of either his occupation or of any occupation for which he is suited, based on education, training and experience.

11.    Upon information and belief, Defendant does not dispute that the Plaintiff is totally disabled and totally incapacitated within the meaning of the Agreement and thus entitled to duty disability retirement benefits, however, Defendant has, without reason, discontinued and/or refused to pay the following benefits on behalf of the Plaintiff, to which he is entitled as stated above:

    a.     Medical expenses, including, but not limited to, hospitalizations, doctor's bills, and physical therapy;

    b.     Home and vehicle modifications;

    c.     Prescription medications;

    d.     Attendant Care;

    e.     Medical equipment and supplies; and,

    f.     Case Management services.

12.    That Plaintiff has exhausted administrative or other remedies, if any, and this Court has jurisdiction over the subject matter of this case.

13.    That Plaintiff's injuries and total disability/incapacitation persist, and benefits are (past)

3

due and owing, and Plaintiff is further unable to obtain some of the services and/or items to which he is entitled under the Agreement/Charter because of Defendant's inexplicable refusal to pay.

14. That the aforementioned contract of duty disability benefits was personal in nature in that it was foreseeable to the parties at the time of contracting that the Plaintiff relied and depended upon the performance of said contract in the event that he suffered a covered injury so as to insure his well-being.

15. It was also foreseeable to Defendant at the time of contracting, and at the time of the breach, that the failure to perform such contract would cause the Plaintiff to suffer anxiety, distress, fear, worry, and mental anguish and further daily difficulties from lack of needed care and equipment/modifications.

16. That Plaintiff has suffered mental anguish, damages, worry, distress and anxiety as a consequence of the breach of contract by Defendant.

17. That Plaintiff is claiming damages for any and all other items of loss and damage that he may be entitled to receive under the law as a result of Defendant's breach.

18. That Plaintiff has complied with any and all obligations on his part under the Agreement/Charter, both with regard to his duty disability retirement claim and otherwise.

19. That Defendant has wrongfully refused to pay for the items recited above in Paragraph Eleven, despite being supplied adequate proof of loss and entitlement to benefits.

20. That Defendant last paid any benefits of the type and variety listed in paragraph Eleven on or about January, 2012, and has provided no reasonable basis for its further refusal to pay the benefits to which Plaintiff is entitled.

4

21.   That Plaintiff herein is claiming damages for any and all losses and expenses and for any and all other items of damage he may be entitled to receive under the law as a result of the wrongful breach of contract of the Defendant herein.

**WHEREFORE**, Plaintiff, BRENDAN MILEWSKI, seeks damages in whatever amount he is found to be entitled to in excess of Twenty-Five Thousand Dollars, ($25,000.00), plus interest, and attorney fees for wrongfully denied medical benefits, as well as any other and/or further relief in his favor which the Court deems appropriate and just.

## COUNT II - DECLARATORY RELIEF

Plaintiff adopts by reference paragraphs 1 through 21 as if fully re-stated herein.

22.   The Court must determine the following:

a.   The applicability of the Detroit City Charter, the Master Agreement, and Defendant's Duty Disability Retirement benefits to Plaintiff's claims;

b.   The amount of medical expenses, attendant care expenses, and other expenses as set forth above in Paragraph Eleven of this Complaint, and/or other benefits, owed to Plaintiff by the Defendant; and,

c.   Any other determinations, orders, and/or judgments necessary to fully adjudicate the rights of the parties.

**WHEREFORE**, Plaintiff, BRENDAN MILEWSKI, seeks damages in whatever amount Plaintiff is found to be entitled to in excess of Twenty-Five Thousand Dollars, ($25,000.00), plus interest, declaratory relief as above, as well as attorney fees for wrongfully denied benefits and any other and/or further relief in his favor which the Court deems appropriate and just.

Respectfully Submitted,

**JAMI JONES, PLLC**

__/s/ *Jami W. Jones*_____
By:  JAMI W. JONES P64720
Counsel for Plaintiff
33200 DequindreSuite 100
Sterling Heights, MI48310
Tel: (586) 268-8200 / Fax: (586) 268-8518

August 31, 2012

5

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

BRENDAN MILEWSKI

        Plaintiff,                Docket No: 12-        CK

  -vs-

CITY OF DETROIT,

        Defendant.

_____/

**JAMI JONES, PLLC**
**JAMI W. JONES P64720**
Counsel for Plaintiff
33200 DequindreSuite 100
Sterling Heights, MI48310
Tel: (586) 268-8200 / Fax: (586) 268-8518

## JURY DEMAND

    NOW COMES the Plaintiff, BRENDAN MILEWSKI, by and through his attorneys, JAMI JONES, PLLC, and hereby makes this demand for trial by jury relative to the above-captioned matter. The appropriate fee has been paid herewith.

                Respectfully Submitted,

                **JAMI JONES, PLLC**

                **/s/ Jami W. Jones**
                **By: JAMI W. JONES P64720**
                Counsel for Plaintiff
                33200 DequindreSuite 100
                Sterling Heights, MI48310
                Tel: (586) 268-8200 / Fax: (586) 268-8518

August 31, 2012

# EXHIBIT 6-3

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE**

BRENDAN MILEWSKI,

        Plaintiff,

v.

CITY OF DETROIT,

        Defendant.

Case No. 12 -011731-CK

Hon. Daniel P. Ryan

12-011731-CK
FILED IN MY OFFICE
WAYNE COUNTY CLERK
7/1/2013 3:52:06 PM
CATHY M. GARRETT

| | |
|---|---|
| Jami W. Jones (P64720)<br>JAMI JONES, PLLC<br>Attorney for Plaintiff<br>33200 Dequindre, Suite 100<br>Sterling Heights, MI 48310<br>(586) 268-8200 | Christine M. Greig (P58116)<br>CITY OF DETROIT LAW DEPT.<br>Attorney for Defendant<br>Coleman A. Young Municipal Center<br>2 Woodward Ave., Ste. 500<br>Detroit, MI 48226<br>(313) 237-5037 |

Mary Ann Cartwright (P28678)
Stephen J. Hulst (P70257)
RHOADES McKEE PC
Attorneys for AdvisaCare Healthcare Solutions
161 Ottawa Ave., NW, Ste. 600
Grand Rapids, MI 49503
(616) 235-3500

---

### ADVISACARE HEALTHCARE SOLUTIONS' MOTION TO INTERVENE

AdvisaCare Healthcare Solutions, Inc. ("AdvisaCare"), pursuant to MCR 2.209 and

through its attorneys Rhoades McKee PC, moves to intervene in the above-captioned matter. As

explained in more detail in the accompanying Brief in Support (incorporated by reference),

AdvisaCare has provided daily in-home care to Plaintiff Brendan Milewski since April of

2012,but Defendant City of Detroit has failed to pay any of AdvisaCare's invoices. In order to

1

protect its legitimate interests in receiving compensation for the substantial services it has provided, and continues to provide, to Mr. Milewski, AdvisaCare moves to intervene in this matter as a plaintiff, pursuant to the pleading attached as **Exhibit 1** to the Brief in Support of this Motion.

WHEREFORE, AdvisaCare respectfully requests that the Court grant its Motion to Intervene and permit AdvisaCare to join this case as an Intervening Plaintiff pursuant to the pleading attached as **Exhibit 1.**

Dated: July 1, 2013

RHOADES McKEE PC
Attorneys for AdvisaCare

By: /s/ Stephen J. Hulst
      Mary Ann Cartwright (P28678)
      Stephen J. Hulst (P70257)
Business Address:
161 Ottawa Avenue, NW, Ste. 600
Grand Rapids, MI 49503
Telephone: (616) 235-3500

BRENDAN MILEWSKI,

       Plaintiff,

v.

CITY OF DETROIT,

       Defendant.

Case No. 12 -011731-CK

Hon. Daniel P. Ryan

---

| | |
|---|---|
| Jami W. Jones (P64720)<br>JAMI JONES, PLLC<br>Attorney for Plaintiff<br>33200 Dequindre, Suite 100<br>Sterling Heights, MI 48310<br>(586) 268-8200 | Christine M. Greig (P58116)<br>CITY OF DETROIT LAW DEPT.<br>Attorney for Defendant<br>Coleman A. Young Municipal Center<br>2 Woodward Ave., Ste. 500<br>Detroit, MI 48226<br>(313) 237-5037 |

Mary Ann Cartwright (P28678)
Stephen J. Hulst (P70257)
RHOADES McKEE PC
Attorneys for AdvisaCare Healthcare Solutions
161 Ottawa Ave., NW, Ste. 600
Grand Rapids, MI 49503
(616) 235-3500

---

## ADVISACARE HEALTHCARE SOLUTIONS' MOTION TO INTERVENE

    AdvisaCare Healthcare Solutions, Inc. ("AdvisaCare"), pursuant to MCR 2.209 and through its attorneys Rhoades McKee PC, moves to intervene in the above-captioned matter. As explained in more detail in the accompanying Brief in Support (incorporated by reference), AdvisaCare has provided daily in-home care to Plaintiff Brendan Milewski since April of 2012,but Defendant City of Detroit has failed to pay any of AdvisaCare's invoices. In order to

1

protect its legitimate interests in receiving compensation for the substantial services it has provided, and continues to provide, to Mr. Milewski, AdvisaCare moves to intervene in this matter as a plaintiff, pursuant to the pleading attached as **Exhibit 1** to the Brief in Support of this Motion.

WHEREFORE, AdvisaCare respectfully requests that the Court grant its Motion to Intervene and permit AdvisaCare to join this case as an Intervening Plaintiff pursuant to the pleading attached as **Exhibit 1.**

Dated: July 1, 2013

<div style="margin-left:40%">

RHOADES McKEE PC
Attorneys for AdvisaCare

By: /s/ Stephen J. Hulst
     Mary Ann Cartwright (P28678)
     Stephen J. Hulst (P70257)
Business Address:
161 Ottawa Avenue, NW, Ste. 600
Grand Rapids, MI 49503
Telephone: (616) 235-3500

</div>

BRENDAN MILEWSKI,

        Plaintiff,

                                         Case No. 12 -011731-CK

v.

                                         Hon. Daniel P. Ryan

CITY OF DETROIT,

        Defendant.

Jami W. Jones (P64720)
JAMI JONES, PLLC
Attorney for Plaintiff
33200 Dequindre, Suite 100
Sterling Heights, MI 48310
(586) 268-8200

Christine M. Greig (P58116)
CITY OF DETROIT LAW DEPT.
Attorney for Defendant
Coleman A. Young Municipal Center
2 Woodward Ave., Ste. 500
Detroit, MI 48226
(313) 237-5037

Mary Ann Cartwright (P28678)
Stephen J. Hulst (P70257)
RHOADES McKEE PC
Attorneys for AdvisaCare Healthcare Solutions
161 Ottawa Ave., NW, Ste. 600
Grand Rapids, MI 49503
(616) 235-3500

## ADVISACARE HEALTHCARE SOLUTIONS' BRIEF IN SUPPORT OF MOTION TO INTERVENE

### INTRODUCTION

      AdvisaCare Healthcare Solutions, Inc. ("AdvisaCare"), has provided daily in-home care

to Plaintiff Brendan Milewski since April of 2012, following Mr. Milewski's tragic injuries

suffered while working as a firefighter for Defendant City of Detroit. Despite the City of

Detroit's obligation to pay for Mr. Milewski's physician-authorized, in-home attendant care, the

1

City of Detroit has failed to pay any of AdvisaCare's invoices and presently owes well over $100,000. While Mr. Milewski's Complaint includes a claim against the City of Detroit for his attendant care services, the City of Detroit has recently stated that it will not negotiate with AdvisaCare in an effort to resolve its outstanding invoices because AdvisaCare is not a party to this action. Therefore, in order to protect its legitimate interests in receiving compensation for the substantial services it has provided, and continues to provide, to Mr. Milewski, AdvisaCare moves to intervene in this matter as a plaintiff, pursuant to the pleading attached as **Exhibit 1**.

## BACKGROUND

This case involves claims by Plaintiff Brendan Milewski for certain benefits to which he is entitled from Defendant City of Detroit. Mr. Milewski was a firefighter for the City of Detroit who was tragically injured while performing his firefighting duties. Mr. Milewski's injuries have rendered him a paraplegic. As pled in his initial Complaint, Mr. Milewski seeks "benefits 'like' those devised in the Michigan Workers' Disability Compensation Act, such as…Attendant Care." Mr. Milewski's Complaint, ¶ 11.

AdvisaCare has provided daily in-home, attendant care for Mr. Milewski since April of 2012. The in-home care provided by AdvisaCare to Mr. Milewski is pursuant to a plan of care certified by his doctors and is necessitated by the injuries he suffered performing his firefighting duties for the City of Detroit. AdvisaCare has issued invoices to the City of Detroit for this in-home care, but the City of Detroit has failed and refused to make even one payment to AdvisaCare. The amount due to AdvisaCare for the services provided to Mr. Milewski through June 23, 2013, is $130,822.44.

Although Mr. Milewski included claims for attendant care in his Complaint against the City of Detroit, and despite the fact that only AdvisaCare can properly negotiate its bills, the City

of Detroit has recently made clear that they will not negotiate with AdvisaCare to resolve its outstanding bills because AdvisaCare is not a party to this proceeding. See email attached as **Exhibit 2**. Therefore, to adequately protect its legitimate interests, AdvisaCare now moves to intervene in this case as a plaintiff.

### ARGUMENT

Intervention has been described as "an action where a third party becomes a party in a suit that is pending between others." *Hill v L.F. Transp, Inc,* 277 Mich App 500, 508; 746 NW2d 118 (2008). "The rule for intervention should be **liberally construed to allow intervention** where the applicant's interests may be inadequately represented." *Neal v Neal,* 219 Mich App 490, 492; 557 NW2d 133 (1996) (emphasis added). Intervention is a "favored method" for purposes of judicial economy and avoiding a multiplicity of suits. *See, e.g., Tucker v Clare Bros Limited,* 196 Mich App 513, 520 n 2; 493 NW2d 918 (1992).

The applicable rule addressing intervention is MCR 2.209. That Rule permits both intervention as a matter of right as well as permissive intervention:

> **(A) Intervention of Right.** On timely application a person has a right to intervene in an action:
> (1) when a Michigan statute or court rule confers an unconditional right to intervene;
> (2) by stipulation of all the parties; or
> (3) **when the applicant claims an interest relating to the property or transaction which is the subject of the action** and is so situated that the disposition of the action **may as a practical matter impair or impede the applicant's ability to protect that interest,** unless the applicant's interest is adequately represented by existing parties.
>
> **(B) Permissive Intervention.** On timely application a person may intervene in an action
> (1) when a Michigan statute or court rule confers a conditional right to intervene; or
> (2) **when an applicant's claim or defense and the main action have a question of law or fact in common.**

3

In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

MCR 2.209(A), (B) (emphasis added). Procedurally, the person seeking to intervene must simply apply to the court by motion, stating the grounds for intervention and including a pleading stating the claim or defense for which intervention is sought. MCR 2.209(C).

These rules were recently applied by the Michigan Court of Appeals in *Johnson v Titan Indemnity Co,* 2013 WL 2226962 (Mich App, May 21, 2013) (**Exhibit 3**). There, the plaintiff was injured in an auto accident and received medical treatment from Southeast Michigan Hospital. The plaintiff filed a first-party suit against an insurance company for personal injury protection benefits under the no-fault act. The parties ultimately entered into a settlement agreement, but that agreement failed to account for the Hospital's bills and lien. The Hospital moved to intervene but was denied by the trial court. The Court of Appeals reversed.

On appeal, the court reviewed MCR 2.209 and noted that the rule for intervention "should be liberally construed." *Id.,* at *3 (internal citation omitted). Reviewing the record, the court concluded that the Hospital had an interest in the "property or transaction" that was the subject of the action, namely, "Southeast provided over $56,000 of medical treatment to [plaintiff]." *Id.* In addition, the court held that the disposition of the action would impair or impede the Hospital's ability to protect its interest in recovering the unpaid medical bills and that the Hospital's intervention would not overcomplicate the proceedings because "its claim is similar to the other claims involved in the case." *Id.* Therefore, the Court of Appeals held that the trial court abused its discretion in denying the Hospital's motion to intervene. *Id.; see also Tucker, supra* at 517-518 (stating that the proper procedure for parties looking to protect their workers' compensation lien is to "formally intervene").

4

Here, AdvisaCare is entitled to intervene as a matter of right. Like Southeast Hospital in *Johnson*, AdvisaCare has a clear interest in the subject matter of this case, namely, the fact that it has provided over $100,000 of in-home care to Mr. Milewski. Only AdvisaCare can properly negotiate its bills for the substantial services it has rendered to Mr. Milewski. Moreover, given the City of Detroit's recent indication that it will not negotiate with AdvisaCare because it is currently a non-party, AdvisaCare's interest certainly may be impaired if this case continues in its absence. Therefore, AdvisaCare has a right to intervene as a plaintiff and assert its claims in order to protect its interests. Those claims are reflected in the pleading attached as **Exhibit 1**, as required by MCR 2.209(C).

At the very least, AdvisaCare should be allowed to permissively intervene. AdvisaCare's claims for payment and the case filed by Mr. Milewski unquestionably involve common issues of law and fact. Indeed, Mr. Milewski included claims for attendant care in his own Complaint and, therefore, AdvisaCare's claims involve the same facts and law applicable to Mr. Milewski's claims for attendant care benefits. Moreover, there is no undue delay or prejudice to Mr. Milewski or the City of Detroit. The City of Detroit only recently indicated its unwillingness to negotiate with AdvisaCare to resolve its substantial bills for the in-home care provided to Mr. Milewski, discovery in this matter does not close until September of 2013, this case has yet to go to case evaluation, and, as noted above, AdvisaCare's claims seek the same damages that Mr. Milewski has been seeking from the beginning of this litigation.

Finally, permitting AdvisaCare to intervene in this matter makes abundant sense from a judicial economy standpoint. All of the benefits to which Mr. Milewski is entitled, including AdvisaCare's bills, can and should be resolved in this proceeding, thereby avoiding separate litigation of these issues.

5

## CONCLUSION

AdvisaCare is entitled as a matter of right to intervene in this case in order to protect its legitimate interests and pursue recovery for the substantial in-home care provided to Mr. Milewski. At a minimum, given the common questions of law and fact and the lack of any undue delay or prejudice, AdvisaCare should be permitted to intervene in this case.

WHEREFORE, AdvisaCare respectfully requests that the Court grant its Motion to Intervene and permit AdvisaCare to join this case as an Intervening Plaintiff pursuant to the pleading attached as **Exhibit 1.**

Dated: July 1, 2013

RHOADES McKEE PC
Attorneys for AdvisaCare


By: /s/ Stephn J. Hulst
     Mary Ann Cartwright (P28678)
     Stephen J. Hulst (P70257)
Business Address:
161 Ottawa Avenue, NW, Ste. 600
Grand Rapids, MI 49503
Telephone: (616) 235-3500

6

# Exhibit 1 to
## Advisacare's Motion to Intervene

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE**

BRENDAN MILEWSKI,

             Plaintiff,                                Case No. 12 -011731-CK

and

ADVISACARE HEALTHCARE
SOLUTIONS, INC.

             Intervening Plaintiff,

v.                                          Hon. Daniel P. Ryan

CITY OF DETROIT,

             Defendant.

---

| | |
|---|---|
| Jami W. Jones (P64720) | Christine M. Greig (P58116) |
| JAMI JONES, PLLC | CITY OF DETROIT LAW DEPT. |
| Attorney for Plaintiff | Attorney for Defendant |
| 33200 Dequindre, Suite 100 | Coleman A. Young Municipal Center |
| Sterling Heights, MI 48310 | 2 Woodward Ave., Ste. 500 |
| (586) 268-8200 | Detroit, MI 48226 |
| | (313) 237-5037 |

Mary Ann Cartwright (P28678)
Stephen J. Hulst (P70257)
RHOADES McKEE PC
Attorneys for Intervening Plaintiff
AdvisaCare Healthcare Solutions
161 Ottawa Ave., NW, Ste. 600
Grand Rapids, MI 49503
(616) 235-3500

---

## INTERVENING PLAINTIFF ADVISACARE HEALTHCARE SOLUTIONS' COMPLAINT

Intervening Plaintiff AdvisaCare Healthcare Solutions, Inc. ("AdvisaCare"), through its

attorneys Rhoades McKee PC, states as follows for its Complaint in the above-captioned matter:

1

## JURISDICTION AND VENUE

1.      Plaintiff Brendan Milewski is a resident of the Township of Washington, Macomb County, Michigan.

2.      Intervening Plaintiff AdvisaCare is a Michigan corporation with a registered office address of 4234 Cascade Road, Suite 3, Grand Rapids, Kent County, Michigan.

3.      Defendant City of Detroit ("the City" or "City of Detroit") is a self-insured municipality located in Wayne County, Michigan.

4.      This Complaint arises out of the City's agreement and obligation under its Charter and the Master Agreement between the City and the Detroit Firefighter's Association to pay AdvisaCare for medical treatment and care rendered to Brendan Milewski, as a permanently and completely disabled firefighter for the City.

5.      AdvisaCare is seeking damages in excess of $25,000.00, exclusive of interest and costs.

6.      Jurisdiction and venue are proper in this Court.

## GENERAL ALLEGATIONS

7.      AdvisaCare incorporates all foregoing allegations by reference.

8.      On or about August 13, 2010, Brendan Milewski was engaged in firefighting duties on behalf of the City in a building at the intersection of Drexel Road and Jefferson Avenue.

9.      During and in the course of his firefighting duties, Mr. Milewski became permanently and completely disabled when he suffered multiple severe injuries, including but not limited to T-5 paraplegia.

2

10. Pursuant to both the Detroit City Charter ("Charter") and the Master Agreement ("Agreement") between the City of Detroit and the Detroit Fire Fighter's Association, Mr. Milewski, upon becoming so disabled, became entitled to certain benefits as a duty disability retiree. These benefits include, but are not limited to, benefits "like" those provided under Michigan's Worker's Disability Compensation Act, such as:

    a.    Medical expenses;

    b.    Home modifications;

    c.    Prescription coverage;

    d.    Attendant care;

    e.    Medical equipment and supplies;

    f.    Case management;

    g.    Vehicle modification;

    h.    Wage loss; and

    i.    Attorney fees for medical benefits wrongfully denied.

11. Under the terms and conditions of the Charter, Agreement, and applicable law, Defendant City became obligated to pay, on behalf of Mr. Milewski, the foregoing expenses or losses which Mr. Milewski incurred or sustained relative to his duty-related bodily injury and total disability.

12. Upon information and belief, the City does not dispute that Mr. Milewski is entitled to attendant care benefits and does not dispute that it is required to pay for such benefits on Mr. Milewski's behalf.

13. AdvisaCare has been providing in-home, attendant care for Mr. Milewski since April of 2012.

14. The in-home care provided by AdvisaCare to Mr. Milewski is pursuant to a plan of care certified by his doctors and is necessitated by the permanent injuries he suffered performing his firefighting duties for the City of Detroit.

15. The City of Detroit is obligated to pay AdvisaCare for the care and treatment provided to Mr. Milewski.

16. AdvisaCare has provided, and continues to provide, Mr. Milewski with quality medical care and treatment.

17. AdvisaCare has issued invoices to the City of Detroit for Mr. Milewski's in-home care.

18. The amounts charged by AdvisaCare to the City of Detroit relating to Mr. Milewski were and are reasonable, customary, and fair under the Charter, Agreement, and applicable law.

19. The City of Detroit, however, has failed and refused to make even one payment to AdvisaCare for the care and treatment provided to Mr. Milewski.

20. The amount due to AdvisaCare for the services provided to Mr. Milewski through June 23, 2013, is $130,822.44.

21. AdvisaCare continues to provide quality medical care and treatment to Mr. Milewski to date and continues to bill the City for such services.

## COUNT I – BREACH OF CONTRACT AND OBLIGATIONS UNDER CHARTER, AGREEMENT, AND APPLICABLE LAW

22. AdvisaCare incorporates all foregoing allegations by reference.

23. The City is obligated and agreed to pay AdvisaCare for the medical care and treatment provided by AdvisaCare to Brendan Milewski.

4

24.     The City of Detroit breached its obligations and agreement to pay AdvisaCare by failing and refusing to pay AdvisaCare for the reasonable, customary, and fair fees charged by AdvisaCare for the care and treatment provided to Mr. Milewski.

25.     As a result of the City's breach, AdvisaCare has suffered damages.

26.     The City has unreasonably refused to pay or has unreasonably delayed making proper payments to AdvisaCare.

27.     The City is also liable for the costs and fees incurred by AdvisaCare relative to this action.

WHEREFORE, AdvisaCare requests that judgment enter in its favor and against Defendant City of Detroit in the amount of $130,822.44 for care rendered through June 23, 2013, damages for any amounts unpaid from June 23, 2013 forward, interest, attorneys' fees as provided by law, including but not limited to MCL 418.315, prejudgment interest, and that the Court grant AdvisaCare all other relief deemed equitable and just.

## COUNT II – DECLARATORY RELIEF

28.     Plaintiff AdvisaCare incorporates all foregoing allegations by reference.

29.     An actual controversy exists between the parties regarding the following:

a.      The applicability of the Charter, Agreement, and the City's Duty Disability Retirement benefits to Mr. Milewski's claims;

b.      The amount of medical expenses, attendant care expenses – including the expenses relating to the care and treatment provided by AdvisaCare – and other expenses and/or benefits owed to Mr. Milewski or to be paid on his behalf by the City;

c.      Any other determinations, orders, and/or judgments necessary to fully

5

adjudicate the rights of the parties.

30.    Declaratory relief is also needed to guide the parties' future conduct.

WHEREFORE, AdvisaCare requests that the Court declare that the City is required to pay the reasonable, customary, and fair fees charged by AdvisaCare for the care and treatment rendered by AdvisaCare to Mr. Milewski in the past, present, and future, and that the Court enter judgment in its favor for damages, interest, attorneys' fees as provided by law, prejudgment interest, and that the Court grant AdvisaCare all other relief deemed equitable and just.

Dated: July 1, 2013

RHOADES McKEE PC
Attorneys    for    Intervening    Plaintiff
AdvisaCare

By: /s/ Stephen J. Hulst
      Mary Ann Cartwright (P28678)
      Stephen J. Hulst (P70257)
Business Address:
161 Ottawa Avenue, NW, Ste. 600
Grand Rapids, MI 49503
Telephone: (616) 235-3500

6

# EXHIBIT 2 TO
# ADVISACARE'S MOTION TO INTERVENE

Jami,

I received your message regarding the medical bills at issue in this matter. When we previously spoke, you indicated that there were $34,000.00 in unpaid medical bills. I spoke extensively with risk management about unpaid medical bills. We need copies of any medical bills that Plaintiff is alleging the City has not paid. In your message you referenced RIM bills. We need all bills that Mr. Milewski is alleging have not been paid. Also, we need a letter of medical necessity for physical therapy. The City has continuously paid for Mr. Milewski's physical therapy despite the fact that no letter of medical necessity has been provided by his physician. At his deposition, Mr. Milewski presented the City with only three (3) unpaid bills (1) TIMMS; (2) Reflexonic; and (3) the exercise equipment. None of these bills was supported by either a letter of medical necessity or even a prescription.

In our previous conversation, you referenced a prescription written by Dr. Hinderer pertaining to attendant care and the stairlift. It is clear to me that I need to depose Dr. Hinderer. My office will attempt to schedule this deposition. Hopefully, we can get a date in the next 2 weeks.

Also, in speaking with Yolanda Carter and Valerie Bryant from risk managemenbt, they informed me that on several occassions they have atempted to contact Mr. Milewski regarding matters pertaining to his benefits. Mr. Milewski has not returned their calls. This a problem. It is disingenuous for Mr. Milewski to allege that the City is not responsive to his claims and concerns, yet he will not contact us.

I think the best course of action at this time is to postpone our meeting. I do not think the July 1st meeting will be productive without all of the medical bills and Dr. Hinderer's deposition. We can re-schedule after Dr. Hindrerer's deposition and all the medical bills in dispute have been produced. Furthermore, AdvisaCare should not attend any meeting to discuss settlement. They are not a party in this case. The City has no contract with AdvisaCare and has never come to terms of any kind to administer Mr. Milewski's attendant care benefit payments to AdvisaCare.

Please call with any questions or concerns. Thank you.

Christine M. Greig
City of Detroit Law Department
Assistant Corporation Counsel

Coleman A. Young Municipal Center
2 Woodward Ave., Ste. 500

Detroit, Michigan  48226
(313) 237-5037

FAX: (313) 224-5505

The information contained in this electronic message is privileged and/or confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of the communication is neither allowed nor intended.  If you have received
this communication in error, please immediately notify us by reply email or telephone at the above number and return the original message to the sender.  Thank you!

This message has been scanned for malware by SurfControl plc. www.surfcontrol.com

3

# EXHIBIT 3 TO
# ADVISACARE'S MOTION TO INTERVENE

Westlaw.

Not Reported in N.W.2d, 2013 WL 2226962 (Mich.App.)
(Cite as: 2013 WL 2226962 (Mich.App.))

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

UNPUBLISHED

Court of Appeals of Michigan.
Anthony JOHNSON, Plaintiff,
and
Southeast Michigan Surgical Hospital LLC d/b/a
Southeast Michigan Surgical Hospital, Intervening
Plaintiff–Appellant,
and
Great Lakes Anesthesia PLLC and Greater Lakes
Ambulatory Surgical Center PLLC d/b/a Endosur-
gical Center at Great Lakes, Intervening Plaintiffs,
v.
TITAN INDEMNITY COMPANY, Defendant,
and
Victoria General Insurance Company, Defend-
ant–Appellee,
and
Lee Boma Johnson, Defendant.

Docket No. 308685.
May 21, 2013.

Wayne Circuit Court; LC No. 09–020352–NI.

Before: BORRELLO, P.J., and K.F. KELLY and
MURRAY, JJ.

PER CURIAM.

*1 In this action to recover benefits under the
no-fault act, intervening plaintiff Southeast
Michigan Surgical Hospital (Southeast) appeals as
of right a February 3, 2012, trial court order grant-
ing defendant Victoria General Insurance Com-
pany's (Victoria General's) motion for reconsidera-
tion wherein the court set aside an October 14,
2011, order reopening the case to allow Southeast
to intervene in the proceeding. The trial court also

held that Victoria General and plaintiff Anthony
Johnson had a binding settlement agreement and
held that Southeast's patient lien agreement was
void and stricken from the record. For the reasons
set forth in this opinion, we reverse and remand for
further proceedings.

I. FACTS AND PROCEDURAL HISTORY

In August 2008, Johnson was a passenger in an
automobile that was involved in an accident. Vic-
toria General was the no-fault insurer of the auto-
mobile. Johnson suffered injuries that necessitated
professional medical treatment from several medic-
al care providers including Southeast. According to
Southeast, Johnson's medical bill totaled $56,182.19.

On August 18, 2009, Johnson commenced this
lawsuit against Victoria General seeking to recover
personal injury protection (PIP) benefits under the
no fault act, MCL 500.3101 et seq. After Johnson
filed his complaint and commenced discovery, on
August 24, 2010, he signed a "Patient Lien Agree-
ment" with Southeast wherein he agreed to grant
the hospital a lien "against any judgments, settle-
ments or other recoveries, for any and all services
provided" by the hospital. Johnson agreed that the
lien would extend to "any settlements or litigation
proceeds, including proceeds from third party ac-
tions related to any injuries or conditions for which
I am receiving treatment...." Further, the lien in-
structed Johnson's attorney to "withhold from any
and all judgment, settlements or other recoveries
monies owed to [Southeast] prior to any distribu-
tion...."

At or about the time Johnson signed the lien,
according to Southeast, the hospital retained Ira
Saperstein as counsel to "look into" Johnson's un-
paid medical bills. According to Southeast, Saper-
stein wrote a letter to Kevin Geer, counsel for John-
son, inquiring about the instant lawsuit. Geer re-
sponded by letter on May 23, 2011, wherein he
stated that Southeast was aware that "we filed a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2013 WL 2226962 (Mich.App.)
(Cite as: 2013 WL 2226962 (Mich.App.))

first party lawsuit *and have been pursuing claims on their behalf* " (emphasis added). Geer further stated, "[a]ccordingly please fully expect that any proceeds payable to your client will have our office as a payee due to our attorney lien."

On May 24, 2011, the parties proceeded to case evaluation. Thereafter, Johnson and Victoria General agreed to terms of a settlement agreement where Johnson would receive $50,000 and relinquish his right to any further recovery for all medical services provided between August 2008 and August 2011. The parties did not place a settlement agreement on the record.

**\*2** When Southeast learned of the terms of the settlement agreement, Saperstein wrote a letter to Geer and counsel for Victoria General indicating that Geer failed to include Southeast's bill at case evaluation. Saperstein indicated that Southeast would move to intervene as a party plaintiff. The next day, on September 22, 2011, Southeast moved to intervene pursuant to MCR 2.209(A) and (B), arguing that the parties would not adequately represent its right to recover from Victoria General.

On September 30, 2011, the trial court granted Southeast's motion to intervene after a hearing where Geer indicated that he had been under the mistaken belief that Southeast had already intervened or filed a separate suit to recover the unpaid medical bill. Victoria General opposed the motion to intervene. Two weeks later, on October 14, 2011, following a settlement conference, the trial court entered an order reopening the case.

Victoria General moved for reconsideration, arguing that Southeast was not entitled to intervene because it was aware of the pending litigation before case evaluation, yet failed to become involved until after the parties agreed to settle. At a motion hearing, Geer argued that Southeast lost its right to assert the patient lien because Southeast failed to become involved in the case until after case evaluation. Geer argued that it would be unjust to allow Southeast to assert the lien against Johnson.

In response, Southeast argued that it had no reason to suspect that Geer would fail to include its bill at case evaluation where Geer requested documents from Southeast to include in the case evaluation and where Southeast sent Geer the hospital bill, records, and the patient lien prior to case evaluation.

After hearing arguments, the trial court granted Victoria General's motion for reconsideration and held that Southeast's patient lien was void because Southeast "sat on their rights." On February 3, 2012, the trial court entered a written order granting Victoria General's motion for reconsideration, setting aside its October 14, 2011, order reopening the case, and declaring the Southeast patient lien "stricken and void." This appeal ensued.

## II. ANALYSIS

Southeast contends that the trial court erred in denying its motion to intervene and in granting Victoria General's motion for reconsideration. We review a trial court's decision on a motion to intervene for an abuse of discretion. *Auto–Owners Ins. Co. v. Keizer–Morris, Inc.,* 284 Mich.App 610, 612; 773 NW2d 267 (2009). Similarly, we review a trial court's decision on a motion for reconsideration for an abuse of discretion. *Tinman v. Blue Cross & Blue Shield,* 264 Mich.App 546, 556–557; 692 NW2d 58 (2004). A trial court abuses its discretion when it reaches a decision that falls "outside the principled range of outcomes." *Auto–Owners Ins. Co.,* 284 Mich.App at 612. "This Court reviews de novo a trial court's resolution of issues of law including the interpretation of statutes and court rules." *Hill v. L.F. Transp ., Inc.,* 277 Mich.App 500, 507; 746 NW2d 118 (2008). "A court by definition abuses its discretion when it makes an error of law." *In re Waters Drainage Dist.,* 296 Mich.App 214, 220; 818 NW2d 478 (2012).

**\*3** MCR 2.209(A)(3) provides that a party has a right to intervene when:

the applicant claims an interest relating to the property or transaction which is the subject of the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2013 WL 2226962 (Mich.App.)
(Cite as: 2013 WL 2226962 (Mich.App.))

action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

"The decision whether to grant a motion to intervene is within the court's discretion." *Precision Pipe & Supply, Inc. v. Meram Const., Inc.,* 195 Mich.App 153, 156; 489 NW2d 166 (1992). "The rule for intervention should be liberally construed to allow intervention where the applicant's interests may be inadequately represented." *Neal v. Neal,* 219 Mich.App 490, 492; 557 NW2d 133 (1996). However, "intervention may not be proper where it will have the effect of delaying the action or producing a multifariousness of parties and causes of action." *Precision Pipe & Supply, Inc.,* 195 Mich.App at 157.

Southeast contends that it had the right to intervene pursuant to MCR 2.209(A)(3), because it had an interest in the underlying action where its unpaid medical bill was a component of the PIP benefits that Victoria General owed Johnson.

Having reviewed the record, we conclude that Southeast had a right to intervene under MCR 2.209(A)(3) and that the trial court erred as a matter of law in concluding otherwise. In this case, Southeast had an interest in the "property or transaction" that was the subject of the underlying no-fault action. Specifically, Southeast provided over $56,000 of medical treatment to Johnson. The benefits were directly related to Johnson's no fault action. In addition, disposition of the present action absent Southeast's participation would impair or impede Southeast's ability to protect its interest in recovering the unpaid medical bill. The proposed settlement agreement between Johnson and Victoria General did not take into account the amounts owed to Southeast, and the agreement would either impair or impede Southeast's future recovery from Victoria General.

Moreover, Southeast did not intentionally delay its motion to intervene by sitting on its rights. See

*Precision Pipe & Supply, Inc.,* 195 Mich.App at 157 (reversing the trial court's order denying the appellant's motion to intervene in part because any delay caused by the intervention was not the fault of the appellant). Here, the record does not support that Southeast "sat on its rights." Rather, Southeast had reason to believe that Geer would include its bill in case evaluation and settlement talks. In particular, on the day before case evaluation, Geer sent a letter to Southeast's counsel representing that he was "pursuing claims" on Southeast's behalf. Furthermore, Geer acknowledged that Southeast sent him copies of the medical bill, records, and a copy of the patient lien agreement. Nevertheless, contrary to the representations in his letter, Geer did not include Southeast's unpaid medical bill in the case evaluation or settlement talks. Instead, Geer and Victoria General reached an informal settlement agreement without considering Southeast's interests. Once Southeast learned that Geer did not include its bill in agreeing to terms of the settlement agreement, it timely moved to intervene two weeks later.[FN1] Moreover, Southeast's intervention will not overcomplicate the proceedings where its claim is similar to the other claims involved in the case. See *id.* In short, we find that the trial court abused its discretion in denying Southeast's motion to intervene.

> FN1. We are mindful that Geer claimed at oral argument that he did not include Southeast's bill in the case evaluation because he thought that Saperstein indicated that he would move separately to recover the bill. However, at most, this assertion created an issue of fact regarding the communications between Geer and Saperstein concerning their respective plans going forward. It did not constitute proof that Southeast lost its right to intervene under MCR 2.209(A)(3) by sitting on its rights.

*4 Southeast also contends that the trial court erred in finding that Johnson and Victoria General had an enforceable settlement agreement. We re-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d, 2013 WL 2226962 (Mich.App.)
**(Cite as: 2013 WL 2226962 (Mich.App.))**

view a trial court's decision to enforce a settlement agreement for an abuse of discretion. *Keyser v. Keyser,* 182 Mich.App 268, 270; 451 NW2d 587 (1990). An agreement to settle litigation is contractual in nature. *Kloian v. Domino's Pizza LLC,* 273 Mich.App 449, 456; 733 NW2d 766 (2006). "We review for clear error the findings of fact underlying the circuit judge's determination whether a valid contract was formed." *46th Circuit Trial Court v. Cty. of Crawford,* 476 Mich. 131, 140; 719 NW2d 553 (2006).

In this case, the record supports that the parties negotiated terms of a settlement agreement, but had not finalized the agreement. Here, the parties did not place a settlement agreement on the record. Further, at the time Southeast moved to intervene, based on the assertions of the attorneys for both Victoria General and for Johnson, it appears that Johnson had not yet signed the settlement agreement. At a hearing to address Victoria General's motion for reconsideration, Johnson's counsel agreed that, "the only reason that there isn't a settlement anymore is because of this intervention." Counsel for Victoria General stated: "The settlement was with Mr. Geer. When the intervenor hit ... following that negotiation, everything came to a screeching halt...." Thus, based on the representations of counsel for both parties, the trial court clearly erred in concluding that there was a binding settlement agreement as of January 6, 2012.

Finally, Southeast contends that the trial court erred in voiding its patient lien agreement. Whether a lien is authorized in a particular case involves a question of law that we review de novo. *Ypsilanti Charter Twp. v. Kircher,* 281 Mich.App 251, 281; 761 NW2d (2008).

Here, the trial court stated that the lien was void after finding that Southeast "sat on its rights." Given our conclusion above that the record does not support that Southeast "sat on its rights," the trial court necessarily erred in voiding the lien agreement on that basis. Furthermore, at the time the court made its ruling, Johnson had not yet final-

ized the settlement with Victoria General; thus, Southeast could not have "sat on its rights" with respect to asserting the lien against the settlement.

In sum, we conclude that Southeast had the right to intervene under MCR 2.209(A)(3), and that the trial court erred as a matter of law in concluding otherwise. Consequently, the trial court abused its discretion in denying Southeast's motion to intervene and in granting Victoria General's motion for reconsideration.[FN2] See *Waters Drainage Dist.,* 296 Mich.App at 220 ("A court by definition abuses its discretion when it makes an error of law"). In addition, the trial court clearly erred in concluding that there was a binding settlement agreement between Johnson and Victoria General and in voiding Southeast's lien agreement.

> FN2. Given our conclusion that Southeast had a right to intervene under MCR 2.209(A)(3), we need not address Southeast's argument that it also had a right to intervene under MCR 2.209(A)(1).

**\*5** Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Appellant having prevailed, may tax costs. MCR 7.219(A).

Mich.App.,2013.
Johnson v. Titan Indem. Co.
Not Reported in N.W.2d, 2013 WL 2226962 (Mich.App.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.