# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |
| NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, a New York Corporation, and ASSURED GUARANTY MUNICIPAL CORP., a New York Corporation, | |
| Plaintiffs, | Chapter 9 |
| v. | Adv. Pro. No. 13-[_____] |
| CITY OF DETROIT, MICHIGAN, KEVYN D. ORR, in his individual and official capacity as the EMERGENCY MANAGER, JOHN NAGLICK, in his individual and official capacity as FINANCE DIRECTOR, MICHAEL JAMISON in his individual and official capacity as DEPUTY FINANCE DIRECTOR, and CHERYL JOHNSON, in her individual and official capacity as TREASURER, | Hon. Steven W. Rhodes |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND ORDER

Plaintiffs, National Public Finance Guarantee Corporation ("National") and

Assured Guaranty Municipal Corp., formerly known as Financial Security

Assurance Inc. ("Assured," and together with National, "Plaintiffs"), by and through their respective undersigned attorneys, seek a declaratory judgment and order, and allege as follows:

## INTRODUCTION

1.       Having issued hundreds of millions of dollars of unlimited tax general obligation bonds (collectively, the "Unlimited Tax Bonds") to fund vital capital improvements identified by the Mayor and the City Council of Detroit (the "City Council"), the City of Detroit (the "City") is now unlawfully diverting voter-approved *ad valorem* taxes that the City must levy and collect for the sole purpose of paying principal and interest on the Unlimited Tax Bonds.

2.       Unique among the City's financial obligations, the Unlimited Tax Bonds were issued only after authorizing resolutions by the City Council, the legislative body of the City, and approval by a majority of the voters in a city-wide election establishing a pledge of *ad valorem* taxes, as security, to repay these obligations exclusively.  Attached as Exhibit A is a true and correct copy of six ballot questions seeking voter approval of specific capital projects that were financed with a portion of the proceeds of the Unlimited Tax Bonds.  Similar ballot questions were passed with respect to every capital project financed by the City with Unlimited Tax Bonds.

2629911.1

3.     In approving each bond referendum the City's voters authorized the City to exceed the otherwise applicable maximum rate for *ad valorem* taxes contained in article IX, section 6 of the Michigan Constitution (a true and correct copy of which is attached hereto as Exhibit B).  Because the City had reached the constitutional tax rate limitations at the time the Unlimited Tax Bonds were issued, the City, in the absence of voter approval, would have had no authority to levy and collect these *ad valorem* taxes.

4.     Further, pursuant to Act 34 of the 2001 Revised Municipal Finance Act, Michigan Compiled Laws ("MCL") 141.2101 *et seq.* ("Act 34," a true and correct copy of which is attached hereto as Exhibit C), and the six resolutions and supplemental resolutions adopted by the City Council on March 3, 1999 (the "1999 Resolution"), April 6, 2001 (the "Bond Resolution"), June 13, 2001 (the "2001 Resolution"), July 24, 2002, (the "2002 Resolution"), July 6, 2005 (the "2005 Resolution"), November 17, 2006 (the "2006 Resolution" and, collectively with the 1999 Resolution, Bond Resolution, 2001 Resolution, 2002 Resolution, and 2005 Resolution, the "Resolutions," true and correct copies of which are attached hereto as Exhibit D), Michigan law requires the City to:

- levy the full amount of *ad valorem* taxes, without limitation as to rate or amount, necessary to repay the Unlimited Tax Bonds, which are in addition to other *ad valorem* taxes the City is authorized to levy;

- collect the proceeds of the *ad valorem* taxes levied for Unlimited Tax Bond debt service and deposit such proceeds in segregated debt retirement funds (the "<u>Debt Retirement Funds</u>"); and

- use the proceeds of the *ad valorem* taxes only to pay principal and interest on the Unlimited Tax Bonds.

5.     Act 34 also provides that any officer who willfully violates such payment restrictions is personally liable to the holders of the relevant bonds for the loss arising from the failure to comply with the restrictions.  MCL § 141.2701(7).

6.     Under Michigan law, the City has no equitable or beneficial interest in the proceeds of the *ad valorem* taxes levied and pledged specifically to secure the repayment of the Unlimited Tax Bonds.  Those revenues are restricted funds that cannot be collected and used by the City for any other purpose except to satisfy the City's repayment obligations with respect to the Unlimited Tax Bonds (such *ad valorem* tax revenues are referred to herein as the "<u>Restricted Funds</u>").

7.     On October 1, 2013, the City defaulted on its obligation to make interest payments on the Unlimited Tax Bonds in the amount of $9,372,275.63, including $2,290,787 and $4,200,991 in interest payments due on the Unlimited Tax Bonds insured by National and Assured, respectively.  The paying agent as defined in Section 601 of the Resolutions (the "<u>Paying Agent</u>") made claims under the respective municipal bond insurance policies in such amounts, which were duly

paid by National and Assured. Thus, National and Assured are subrogated to the rights of the holders of the Unlimited Tax Bonds (the "Bondholders") and hold direct claims against the City in such amounts.

8.      The City has stated publicly that it intends to continue to levy and collect the Restricted Funds, but that it will not segregate the Restricted Funds. The City also has indicated that post-petition it is using and intends to continue to use the Restricted Funds for payment of its general operations. This conduct violates Michigan law (including the express terms of Act 34) and the Resolutions.

9.      The City has rejected Plaintiffs' numerous efforts to resolve this dispute consensually. The City's refusal to segregate the Restricted Funds in compliance with state law during the pendency of this chapter 9 case (and while the parties are in mediation), and the City's improper use of the Restricted Funds in derogation of Plaintiffs' rights, necessitate the filing of this action at this time.

10.     Plaintiffs commence this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001 to obtain a declaratory judgment that, under Michigan law, (i) the Defendants are required to deposit the Restricted Funds into the Debt Retirement Funds as the Defendants collect *ad valorem* taxes, (ii) the Defendants are required to segregate and not commingle the Restricted Funds with other funds of the City, (iii) the proceeds of the *ad valorem* taxes levied and collected by the City for the sole purpose of paying the Bondholders are Restricted

2629911.1

Funds, and the Defendants are prohibited from using the Restricted Funds for any purpose other than repaying the Bondholders, and (iv) the Defendants are prohibited from granting any super-priority status or any other interest to any creditor or any other person under Section 364 (defined herein) pursuant to the relief requested in the Financing Motion (defined herein), or otherwise, that would impair the Bondholders' and Plaintiffs' interests in the Restricted Funds.[1] Plaintiffs further seek an order directing the Defendants to deposit the Restricted Funds in the Debt Retirement Funds and to segregate and not commingle the Restricted Funds with other funds of the City, and prohibiting the Defendants from granting any super-priority status or any other interest to any creditor or any other person under Section 364 pursuant to the relief requested in the Financing Motion, or otherwise, that would impair the Bondholders' and Plaintiffs' interests in the Restricted Funds.

11.     Because Plaintiffs are simply asking the Court to require the City to abide by the law, and because the City has no equitable or beneficial interest in

---

[1] By their Complaint, Plaintiffs do not seek declaratory relief regarding the ultimate disposition of the Restricted Funds at this time, but rather seek to ensure that the Restricted Funds remain restricted during the pendency of the chapter 9 case in accordance with state law.  If this Court determines that the City is eligible to be a debtor under chapter 9 of Title 11, issues as to whether the Restricted Funds are impressed with a statutory lien as defined in section 11 U.S.C. § 101(53) and constitute "special revenues" as defined in 11 U.S.C. § 902 will likely need to be determined at a later time following necessary and appropriate fact and expert discovery.

these Restricted Funds, 11 U.S.C. § 904 ("<u>Section 904</u>") is not implicated by this complaint, and this Court has subject matter jurisdiction to award the relief requested herein. Moreover, Section 904 does not prohibit the Court from entering any form of relief against any Individual Defendants (as defined below).

**<u>PARTIES</u>**

12.  Plaintiff National Public Finance Guarantee Corporation is a New York corporation with its principal place of business at 113 King Street, Armonk, New York 10504. National is a monoline insurer that provides financial guarantees to the U.S. public finance market. National insures approximately $2.4 billion in aggregate principal amount of outstanding bonds issued by the City, including water supply system bonds, sewage disposal system bonds, and Unlimited Tax Bonds. The Unlimited Tax Bonds are the only bonds insured by National that are at issue here. National insures or reinsures $87,204,600 in current net principal balance of Unlimited Tax Bonds.

13.  Plaintiff Assured Guaranty Municipal Corp. is a New York corporation with its principal place of business at 31 West 52nd Street, New York, New York 10019. Assured is a monoline insurer that provides financial guarantees to the U.S. public finance market. Assured and its affiliates insure or reinsure approximately $2.1 billion in aggregate net principal amount of outstanding bonds issued by the City, including water supply system bonds, sewage disposal system

7

bonds, and the Unlimited Tax Bonds. The Unlimited Tax Bonds are the only bonds insured by Assured that are at issue here. Assured insures or reinsures approximately $146 million in current net principal balance of Unlimited Tax Bonds. "Assured" herein shall include Assured and any of its affiliates that insure or reinsure Unlimited Tax Bonds.

14.     Defendant City is a home rule city under Act 279 of 1909, as amended, the Home Rule City Act, MCL § 117.1, *et seq.* ("Act 279," a true and correct copy of which is attached hereto as Exhibit E). The City is a municipality that commenced a chapter 9 proceeding in the United States Bankruptcy Court for the Eastern District of Michigan on July 18, 2013.

15.     Defendant Kevyn D. Orr is the Emergency Manager for the City (the "Emergency Manager"), serving in accordance with Public Act 436 of 2012 of the State of Michigan, also known as the Local Financial Stability and Choice Act, MCL §§ 141.1541-141.1575 ("Act 436," a true and correct copy of which is attached hereto as Exhibit F), his appointment to the position having been made effective on March 28, 2013.

16.     Defendant John Naglick is the Finance Director for the City (the "Finance Director"), having served in that position since October 7, 2013.

2629911.1

17.     Defendant Michael Jamison is the Deputy Finance Director for the City (the "<u>Deputy Finance Director</u>"), having served in that position since August 2012.

18.     Defendant Cheryl Johnson is the former Finance Director and current Treasurer for the City (the "<u>Treasurer</u>," and collectively with the Emergency Manager, Finance Director, and Deputy Finance Director, the "<u>Individual Defendants</u>").

19.     Joinder of all defendants is proper under Rule 20 of the Federal Rules of Civil Procedure, made applicable hereto by Bankruptcy Rule 7020.

## <u>VENUE AND JURISDICTION</u>

20.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference to the Bankruptcy Court in the Eastern District of Michigan, E.D. Mich. L.R. 83.50(a), pursuant to 28 U.S.C. § 157(a).  Subject matter jurisdiction exists pursuant to 28 U.S.C. § 157(b) as a case under Title 11 of the United States Code (the "<u>Bankruptcy Code</u>" or "<u>Title 11</u>") and a core proceeding arising under Title 11, or arising in a case under Title 11 in accordance with 28 U.S.C. § 157(b)(2).

21.     As described in greater detail herein, there is an actual case and controversy under 28 U.S.C. § 2201(a).

22. Venue of the case is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

23. For the reasons articulated above, Section 904 is not implicated by this Complaint, and this Court has subject matter jurisdiction to award the relief requested herein. *See* paragraph 11 *supra.*

## GENERAL ALLEGATIONS

### A.     The City's Unlimited Tax Bonds

24. According to the City's Proposal to Creditors, dated June 14, 2013 (the "Prepetition Proposal," a true and correct copy of which is attached hereto as Exhibit G), the City estimates that, as of the close of Fiscal Year 2013 (i.e., June 30, 2013), it had $369.1 million in outstanding principal amount of Unlimited Tax Bonds maturing through November 1, 2035 (excluding $100 million of bonds purported to be secured by a second lien on distributable state aid). On a net basis, in amounts outstanding as of June 30, 2013, National and Assured together insure or reinsure approximately $233,204,600 of the City's Unlimited Tax Bonds.

25. As bond insurers, National and Assured are obligated to pay to owners of the Unlimited Tax Bonds the full principal and interest when due as required by their respective bond insurance policies to the extent the City does not discharge its obligations under the insured Unlimited Tax Bonds. Under relevant provisions of the applicable bond documents, bond insurance policies, and applicable law, to the

extent National and Assured make payments under their respective policies, they are subrogated to the rights of the Bondholders and effectively step into the shoes of such Bondholders.

### B. The National-Insured Bonds

26.     Pursuant to the Bond Resolution, the 2001 Resolution and a sale order issued by the City's then finance director on August 1, 2001 (the "2001 Sale Order"), the City issued General Obligation Bonds (Unlimited Tax) Series 2001-A(1) (the "2001-A(1) Bonds"), General Obligation Bonds (Unlimited Tax) Series 2001-A(2) (the "2001-A(2) Bonds"), and General Obligation Refunding Bonds (Unlimited Tax), Series 2001-B (the "2001-B Bonds," and, collectively with the 2001-A(1) and 2001-A(2) Bonds, the "2001 Bonds").

27.     Pursuant to the 2002 Resolution and a sale order issued by the City's then finance director on August 2, 2002 (the "2002 Sale Order"), the City issued General Obligation Bonds (Unlimited Tax), Series 2002 (the "2002 Bonds," and, collectively with the 2001 Bonds, the "National Bonds," true and correct specimens of which are attached hereto as Exhibit H).

28.     National issued Financial Guaranty Insurance Policies (the "National Policies," true and correct copies of which are attached hereto as Exhibit I) insuring the City's payment obligations under the National Bonds. National issued Financial Guaranty Insurance Policy numbers 35874, 35875, and 35876, effective

11

August 8, 2001, insuring the City's payment obligations under the 2001-A(1) Bonds, the 2001-A(2) Bonds, and the 2001-B Bonds, respectively. National issued Financial Guaranty Insurance Policy number 38697, effective August 8, 2002, insuring the City's payment obligations under the 2002 Bonds.

### C. The Assured-Insured Bonds

29. Pursuant to the 1999 Resolution and a sale order issued by the then finance director on April 1, 1999 (the "1999 Sale Order"), the City issued General Obligation Bonds (Unlimited Tax) Series 1999-A (the "1999 Bonds").

30. Pursuant to the 2005 Resolution and a sale order issued by the then finance director on December 5, 2005 (the "2005 Sale Order"), the City issued General Obligation Bonds (Unlimited Tax) Series 2005-B (the "2005-B Bonds") and General Obligation Refunding Bonds (Unlimited Tax) Series 2005-C (the "2005-C Bonds" and, collectively with the 2005-B Bonds, the "2005 Bonds").

31. Pursuant to the 2006 Resolution and a sale order issued by the then finance director on May 30, 2008 (the "2008 Sale Order" and, collectively with the 1999 Sale Order, 2001 Sale Order, 2002 Sale Order, and 2005 Sale Order, the "Sale Orders," true and correct copies of which are attached hereto as Exhibit J), the City issued General Obligation Bonds (Unlimited Tax) Series 2008-A (the "2008-A Bonds"), General Obligation Refunding Bonds (Unlimited Tax) Series 2008-B(1) (the "2008-B(1) Bonds") and General Obligation Refunding Bonds

(Unlimited Tax) Series 2008-B(2) (the "2008-B(2) Bonds" and, collectively with the 2008-A Bonds, 2008-B(1) Bonds, the "2008 Bonds"; and the 2008 Bonds together with the 1999 Bonds and 2005 Bonds, the "Assured Bonds," true and correct specimens of which are attached hereto as Exhibit K).

32.     Assured, under its former name Financial Security Assurance Inc., and its affiliate, Assured Guaranty Corp., issued municipal bond insurance policies (the "Assured Policies," true and correct copies of which are attached hereto as Exhibit L) insuring the City's payment obligations under the Assured Bonds. Assured issued Municipal Bond Insurance Policy number 25071-N, effective April 13, 1999, insuring the City's payment obligations under certain 1999 Bonds. Assured issued Municipal Bond Insurance Policy numbers 206130-N and 206129-N, effective December 13, 2005, insuring the City's payment obligations under the 2005-B Bonds and the 2005-C Bonds, respectively. Assured Guaranty Corp. issued Financial Guaranty Insurance Policy number D-2008-477, effective June 9, 2008, insuring the City's payment obligations under the 2008 Bonds.

### D.     The City is Required to Levy and Collect the Restricted Funds and Deposit Them in Segregated Debt Retirement Funds

33.     Authority for the City's issuance of the Unlimited Tax Bonds is governed by Act 34, Act 279, and the Michigan Constitution. Under Act 34, municipal securities such as the Unlimited Tax Bonds "may be payable from or secured by" any of the following: (i) *ad valorem* real and personal property taxes,

(ii) special assessments, (iii) the unlimited full faith and credit pledge of the municipality, and (iv) other sources of revenue described in Act 34 for debt or securities authorized by Act 34.  MCL § 141.2103(l).

34.     Michigan has adopted a separate statute (the "Unlimited Tax Election Act," a true and correct copy of which is attached hereto as Exhibit M) specifically to regulate the imposition of *ad valorem* tax levies and the use of tax proceeds for the payment of Unlimited Tax Bonds.  MCL § 141.161 *et seq.*   The Unlimited Tax Election Act provides that the voters of the City "may make 1 or more binding unlimited tax pledges for the payment of 1 or more tax obligations referred to in the ballot, . . . .  [h]owever, the tax which may be levied shall not be excess of a rate or amount sufficient for the payment of the obligations."   MCL § 141.164(4)(3).

35.     In addition, the Uniform Budgeting and Accounting Act (a true and correct copy of which is attached hereto as Exhibit N) requires the City's tax legislation to specify the purpose for each component of the *ad valorem* tax levy, which dictates that Unlimited Tax Bond debt service must be a specific and separate line item in each budget and tax bill.  MCL § 141.421 *et seq.*

36.     The City had already reached the applicable charter, statutory, or constitutional tax rate limitations at the time the Unlimited Tax Bonds were issued.   Accordingly, the City levied *ad valorem* taxes in excess of the applicable

charter, statutory, or constitutional tax rate limitations for the sole purpose of repaying the Unlimited Tax Bonds.

37.  The Restricted Funds are *ad valorem* taxes specifically levied to finance (as evidenced by the Unlimited Tax Bonds) certain specific City projects and systems, including but not limited to projects relating to neighborhood/economic development, recreation, zoo and cultural facilities improvements, police and fire buildings and sites and other public safety facilities, public lighting system improvements, Detroit Institute of Arts improvements, Department of Public Works improvements, funding of the City's risk management pool, and public health facilities improvements.  The specific projects are described in the official statements of the City prepared in connection with the sale and issuance of the Unlimited Tax Bonds and separately described and voted upon in the related bond referenda.

38.  Act 34 and the Resolutions provide strict controls over and limitations upon use of the *ad valorem* taxes levied to secure the repayment of the Unlimited Tax Bonds.  *See* MCL § 141.2701(1)-(3); Resolutions § 301(a).

39.  Section 701(1)(a) of Act 34 requires the City to include the following in the amount of *ad valorem* taxes levied each year:  "An amount such that the estimated collections will be sufficient to promptly pay, when due, the interest on [the Unlimited Tax Bonds] and the portion of the principal falling due whether by

15

maturity or by mandatory redemption before the time of the following year's tax collection." MCL § 141.2701(1)(a). In addition, section 701(3) of Act 34 requires that the City "levy the full amount of taxes required . . . for the payment of [the Unlimited Tax Bonds] without limitation as to rate or amount and in addition to other taxes that the municipality may be authorized to levy." MCL § 141.2701(3).

40. Act 34 then requires that the *ad valorem* taxes be deposited in segregated Debt Retirement Funds as they are collected: "As taxes are collected, there shall be set aside that portion of the collections that is allocable to the payment of the principal and interest on [the Unlimited Tax Bonds]. The portion set aside shall be divided pro rata among the various sinking funds and debt retirement funds in accordance with the amount levied for that purpose." MCL § 141.2701(6).

41. Section 701(1)(d)(i) of Act 34 further provides that the taxes specifically collected and pledged for repayment of the Unlimited Tax Bonds must be deposited in the applicable Debt Retirement Funds and used for no purpose other than to pay the debt service on the Unlimited Tax Bonds. As relevant here, section 701(1)(d)(i) requires that the proceeds of the tax levy be "[d]eposit[ed] in the debt retirement fund established for the [Unlimited Tax Bonds] and used to pay debt service charges or obligations on [the Unlimited Tax Bonds]." MCL § 141.2701(1)(d)(i).

42.     Section 705 of Act 34 states, in relevant part, that each debt retirement fund "shall be accounted for separately."  Section 705 further makes clear that the "debt retirement funds . . . shall be used only to retire the municipal securities of the municipality for which the debt retirement fund was created" and that they cannot be used for other purposes until after those municipal securities have been retired.  MCL § 141.2705.

43.     The Resolutions require that the proceeds of all taxes levied to pay the Unlimited Tax Bonds are pledged as security for the timely payment of principal and interest on the Unlimited Tax Bonds when due.  Section 301(a) of the Resolutions states:

> [T]he unlimited tax, full faith, credit and resources of the City are hereby *irrevocably pledged* for the prompt payment of the principal of and interest on the [b]onds.  The City pledges to pay the principal of and the interest on the [b]onds from the proceeds of an annual levy of ad valorem taxes on all taxable property in the City without limitation as to the rate or amount for the payment thereof.

Resolutions § 301(a) (emphasis added).  The plain language of Section 301 of the Resolutions creates an irrevocable pledge of the City's *ad valorem* taxes as security to guarantee repayment of the Unlimited Tax Bonds.

44.     In addition, the proceeds of all taxes levied to pay the Unlimited Tax Bonds "shall be placed in the Debt Retirement Fund[s] and held in trust by the Paying Agent."  Resolutions § 502.  Further, so long as principal and interest on the Unlimited Tax Bonds remains unpaid, such amounts shall be used *only* to pay

principal and interest and "no moneys shall be withdrawn from the Debt Retirement Fund[s] *except* to pay such principal and interest." *Id*. (emphasis added). Section 601 of the Resolutions and Section 401 of the Sale Orders provide that U.S. Bank National Association shall serve as the Paying Agent for the Unlimited Tax Bonds.

45. The limitations set forth in the Resolutions were expressly recognized in the State of Michigan Attorney General Opinion dated February 19, 1982 (the "Attorney General Opinion," a true and correct copy of which is attached hereto as Exhibit O), which states that the taxes levied for the payment of principal and interest on bonds must "be placed in a segregated account" and "may only be used to pay principal and interest on the bonds for which the millage was levied while the bonds are outstanding." 1981-1982 Mich. Op. Att'y Gen. 575 (1982).

46. Accordingly, the City lacks any equitable or beneficial interest in the Restricted Funds, which consist of the revenues generated by the *ad valorem* taxes specifically authorized, levied, and pledged to secure the repayment of the Unlimited Tax Bonds. But for voter approval, the City could not levy and collect these *ad valorem* taxes. Further, the City is prohibited by law from collecting and distributing these *ad valorem* taxes except to repay principal and interest on the Unlimited Tax Bonds. Nothing in chapter 9 or federal bankruptcy law allows the

City to disregard state-law restrictions imposed on the Restricted Funds and use such funds for a non-authorized purpose.

47.     Act 34 further provides that "[a]n officer who willfully fails to perform the duties" described above "is *personally liable* to the municipality or to a holder of a municipal security for loss or damage arising from his or her failure." MCL § 141.2701(7) (emphasis added).  Based on the City's representations, and the duties and responsibilities of the Emergency Manager, the CFO, the Finance Director, the Deputy Finance Director, and the Treasurer, the Individual Defendants have willfully failed to perform their duties under Act 34 and therefore are personally liable to Plaintiffs for loss or damage arising from those failures.

### E.     The Prepetition Proposal; National's Demand Letter; and Proposed Postpetition Financing

48.     As evidenced in the Prepetition Proposal, prior to its chapter 9 filing, the City collected and set aside a specific portion of the Restricted Funds for the repayment of the Unlimited Tax Bonds, as required by Michigan law.

49.     In both the City's Comprehensive Annual Financial Report for the Fiscal Year Ended June 30, 2012, independently audited by KPMG LLP pursuant to Michigan law (a true and correct copy of which is attached hereto as Exhibit P), and the City's Ten-Year Plan, dated June 26, 2013 (the "Ten-Year Plan," a true and correct copy of which is attached hereto as Exhibit Q), the City reports that it levied and collected *ad valorem* taxes in an amount sufficient to pay the debt

service owed on the Unlimited Tax Bonds, excluding the Series 2010E Bonds which are payable from distributable state aid (the "UTGO Debt Service").

50.     For Fiscal Year 2013-14, the City's Ten-Year Plan forecasts that the City will levy and collect an amount sufficient to pay the UTGO Debt Service.

51.     In its Prepetition Proposal, the City indicated that it would continue to collect the Restricted Funds, but it would use the Restricted Funds for purposes other than to pay principal and interest on the Unlimited Tax Bonds, in direct violation of Michigan law.

52.     On July 12, 2013, National wrote the City a letter (the "Demand Letter," a true and correct copy of which is attached hereto as Exhibit R) demanding, among other things, that the City demonstrate by July 18, 2013 that the City was segregating the *ad valorem* taxes and that it had not used such taxes for any purposes other than to pay principal and interest on the Unlimited Tax Bonds. The City provided only limited information in response to the Demand Letter, and failed to provide National any assurance that the Restricted Funds would be segregated and used in compliance with Michigan law.

53.     On October 1, 2013, the City failed to make a payment due on the Unlimited Tax Bonds in the amount of $9,372,275.63, and the Paying Agent made claims under the respective polices for a portion of such amount, which were duly

paid by National and Assured.  Thus, National and Assured are subrogated to the rights of the Bondholders and hold direct claims against the City in such amount.

54. On November 5, 2013, the City filed the *Motion of the Debtor for a Final Order Pursuant to 11 U.S.C. §§ 105, 362, 364(c)(1), 364(c)(2), 364(e), 364(f), 503, 507(a)(2), 904, 921 and 922 (I) Approving Post-Petition Financing, (II) Granting Liens and Providing Superpriority Claim Status and (III) Modifying Automatic Stay* [Docket No. 1520] (the "<u>Financing Motion</u>").[2]

55. The relief requested in the Financing Motion (if approved by this Court) would grant Barclays Capital, Inc. ("Barclays") super-priority status, pursuant to sections 364 ("<u>Section 364</u>"), 503, and 507 of the Bankruptcy Code, over administrative expenses, postpetition claims, and all prepetition unsecured claims.  It appears the City is attempting to manufacture and confer upon Barclays a direct right of payment in and to the Restricted Funds in direct contravention of Michigan law (which restricts the payment of such funds to the holders of the Unlimited Tax Bonds).  If approved by this Court in the form proposed by the City, the City's postpetition financing would directly harm Plaintiffs by unjustifiably impairing the Bondholders' and Plaintiffs' interests in the Restricted Funds.

---

[2] Each Plaintiff reserves its right to object to the Financing Motion on any and all grounds.  The relief requested in this Complaint is not requested in lieu of asserting any such objections to the Financing Motion.

56. The relief sought in this Complaint is ripe for adjudication by this Court because, among other reasons, (1) the City in its Prepetition Proposal indicated that it would not segregate the Restricted Funds as required by Michigan law, (2) the City defaulted on its obligation to pay $9.4 million in interest payments on the Unlimited Tax Bonds due on October 1, 2013 notwithstanding that it had sufficient *ad valorem* tax proceeds to pay the Bondholders and apparently intends to default on $47.58 million in principal and interest payments due on April 1, 2014, (3) the City has not segregated but rather has diverted (and apparently intends to continue to divert) the funds specifically collected for the purpose of paying the Bondholders, and (4) the City has requested approval for postpetition financing in the Financing Motion that would directly impair the Bondholders' and Plaintiffs' interests in the Restricted Funds.

## COUNT ONE

### Declaratory Judgment that Michigan Law Requires Defendants to Deposit the Restricted Funds into the Debt Retirement Funds

57. Plaintiffs hereby incorporate the preceding paragraphs as if fully set forth herein.

58. An actual, ripe, and justiciable controversy has arisen between the parties regarding whether Michigan law requires the Defendants to segregate the Restricted Funds. Defendants have made clear to Plaintiffs that they will not

segregate the Restricted Funds and have already used, and intend to continue to use, the Restricted Funds for purposes other than repayment of the Unlimited Tax Bonds, in contravention of Michigan law and in derogation of Plaintiffs' rights.

59.     For the reasons stated herein, Plaintiffs are entitled to a declaratory judgment that Michigan law requires that, as the City and the Individual Defendants collect *ad valorem* taxes, they deposit the Restricted Funds allocable to each series of Unlimited Tax Bonds into the related Debt Retirement Funds.

## COUNT TWO

### Declaratory Judgment that Michigan Law Requires Defendants to Segregate and Not Commingle the Restricted Funds

60.     Plaintiffs hereby incorporate the preceding paragraphs as if fully set forth herein.

61.     An actual, ripe, and justiciable controversy has arisen between the parties regarding whether Michigan law requires the Defendants to segregate the Restricted Funds.  Defendants have made clear to Plaintiffs that they will not segregate the Restricted Funds and have already used, and intend to continue to use, the Restricted Funds for purposes other than repayment of the Unlimited Tax Bonds, in contravention of Michigan law and in derogation of Plaintiffs' rights.

62.     For the reasons stated herein, Plaintiffs are entitled to a declaratory judgment that Michigan law requires the City and the Individual Defendants to segregate and not commingle the Restricted Funds with other funds of the City.

## COUNT THREE

**Declaratory Judgment that the *Ad Valorem* Tax
Proceeds Are Restricted Funds and that Michigan Law
Prohibits Defendants From Using Restricted Funds
for Purposes Other Than Repaying the Bondholders**

63.     Plaintiffs hereby incorporate the preceding paragraphs as if fully set forth herein.

64.     An actual, ripe, and justiciable controversy has arisen between the parties regarding whether Michigan law requires the Defendants to segregate the Restricted Funds.  Defendants have made clear to Plaintiffs that they will not segregate the Restricted Funds and have already used, and intend to continue to use, the Restricted Funds for purposes other than repayment of the Unlimited Tax Bonds, in contravention of Michigan law and in derogation of Plaintiffs' rights.

65.     For the reasons stated herein, Plaintiffs are entitled to a declaratory judgment that the proceeds of the *ad valorem* taxes levied and collected by the City for the sole purpose of paying the Bondholders are Restricted Funds and that Michigan law prohibits the City and the Individual Defendants from using the Restricted Funds for any purpose other than repaying the Bondholders.

24

## COUNT FOUR

**Declaratory Judgment that Defendants are Prohibited
From Granting Any Super-Priority Status or Any Other
Interest Under 11 U.S.C. § 364 That Would Impair the
Bondholders' and Plaintiffs' Interests in the Restricted Funds**

66.    Plaintiffs hereby incorporate the preceding paragraphs as if fully set forth herein.

67.    An actual, ripe, and justiciable controversy has arisen between the parties regarding whether Michigan law requires the Defendants to segregate the Restricted Funds.  Defendants have made clear to Plaintiffs that they will not segregate the Restricted Funds and have already used, and intend to continue to use, the Restricted Funds for purposes other than repayment of the Unlimited Tax Bonds, in contravention of Michigan law and in derogation of Plaintiffs' rights.

68.    For the reasons stated herein, Plaintiffs are entitled to a declaratory judgment that the City and the Individual Defendants are prohibited from granting any super-priority status or any other interest to any creditor or any other person under Section 364 pursuant to the relief requested in the Financing Motion, or otherwise, that would impair the Bondholders' and Plaintiffs' interests in the Restricted Funds.

2629911.1

## COUNT FIVE

### Order Requiring Defendants to
### Comply With the Court's Declarations

69.     Plaintiffs hereby incorporate the preceding paragraphs as if fully set forth herein.

70.     If the Court determines that Plaintiffs are entitled to relief under Counts One, Two, Three, and/or Four, Plaintiffs are entitled to an order directing the Defendants to deposit the Restricted Funds in the Debt Retirement Funds and to segregate and not commingle the Restricted Funds with other funds of the City, and prohibiting Defendants from granting any super-priority status or any other interest to any creditor or any other person under Section 364 pursuant to the relief requested in the Financing Motion, or otherwise, that would impair the Bondholders' and Plaintiffs' interests in the Restricted Funds.

### REQUESTS FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request entry of a declaratory judgment and order:

   i.   On Count One, declaring that, under Michigan law, the City and the Individual Defendants must deposit the Restricted Funds in the Debt Retirement Funds as the Defendants collect *ad valorem* taxes;

2629911.1

ii.  On Count Two, declaring that, under Michigan law, the City and the Individual Defendants are required to segregate and not commingle the Restricted Funds with other funds of the City;

iii. On Count Three, declaring that, under Michigan law, the proceeds of the *ad valorem* taxes levied and collected by the City for the sole purpose of paying the Bondholders are Restricted Funds and the City and the Individual Defendants are prohibited from using the Restricted Funds for any purposes other than repaying holders of the Unlimited Tax Bonds;

iv.  On Count Four, declaring that, under Michigan law, the City and the Individual Defendants are prohibited from granting any super-priority status or any other interest to any creditor or any other person under Section 364 pursuant to the relief requested in the Financing Motion, or otherwise, that would impair the Bondholders' and Plaintiffs' interests in the Restricted Funds;

v.   On Count Five, an order directing the Defendants to deposit the Restricted Funds in the Debt Retirement Funds and to segregate and not commingle the Restricted Funds with other funds of the City, and prohibiting the Defendants from granting any super-priority status or any other interest to any creditor or any other person under Section

364 pursuant to the relief requested in the Financing Motion, or otherwise, that would impair the Bondholders' and Plaintiffs' interests in the Restricted Funds; and

vi. On all Counts, such other and further relief to the Plaintiffs as the Court may deem proper.

Dated:  November 8, 2013

**JAFFE RAITT HEUER & WEISS, P.C.**

By:   /s/ Paul R. Hage
Louis P. Rochkind (P24121)
Paul R. Hage (P70460)
27777 Franklin Road, Suite 2500
Southfield, MI 48034-8214
Telephone: (248) 351-3000
lrochkind@jaffelaw.com
phage@jaffelaw.com

 -and-

**SIDLEY AUSTIN LLP**

James F. Bendernagel, Jr.
Guy S. Neal
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8041
jbendernagel@sidley.com
gneal@sidley.com

Jeffrey E. Bjork
Gabriel MacConaill
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone:  (213) 896-6000
jbjork@sidley.com
gmacconaill@sidley.com

*Counsel for National Public Finance*
*Guarantee Corp.*

**CHADBOURNE & PARKE LLP**

Lawrence A. Larose
Samuel S. Kohn
Marc D. Ashley
30 Rockefeller Plaza
New York, NY 10012
Telephone:  (212) 408-5100
llarose@chadbourne.com
skohn@chadbourne.com
mashley@chadbourne.com

*Counsel for Assured Guaranty Municipal Corp.*

## EXHIBITS

**Exhibit A**      City of Detroit Proposals to Voters

**Exhibit B**      Michigan Constitution of 1963, Article IX, Section 6

**Exhibit C**      Revised Municipal Finance Act (Act 34 of 2001)

**Exhibit D**      The Bond Resolutions

**Exhibit E**      The Home Rule City Act (Act 279 of 1909)

**Exhibit F**      Local Financial Stability and Choice Act (Act 436 of 2012)

**Exhibit G**      City of Detroit Proposal for Creditors (June 14, 2013)

**Exhibit H**      Specimens of the National-Insured Bonds

**Exhibit I**      The National Policies

**Exhibit J**      The Sale Orders

**Exhibit K**      Specimens of the Assured-Insured Bonds

**Exhibit L**      The Assured Policies

**Exhibit M**      The Unlimited Tax Election Act (Act 189 of 1979)

**Exhibit N**      The Uniform Budgeting and Accounting Act (Act 2 of 1968)

**Exhibit O**      State of Michigan Attorney General Opinion (February 19, 1982)

**Exhibit P**      City of Detroit Comprehensive Annual Financial Report for the Fiscal Year Ended June 30, 2012

**Exhibit Q**      City of Detroit Ten-Year Plan

**Exhibit R**      The Demand Letter