UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,                         Case No. 13-53846-SWR

                                           Chapter 9

                 Debtor.            Hon. Steven W. Rhodes

_____/

## MOVANTS' REPLY TO DEBTOR'S BRIEF IN OPPOSITION TO MOTION FOR LIMITED RELIEF FROM AUTOMATIC STAY

Lasalle Town Houses Cooperative Association, Nicolet Town Houses Cooperative Association, Lafayette Town Houses, Inc., Joliet Town Houses Cooperative Association, and St. James Cooperative ("Movants") are plaintiffs in a class action suit filed in U.S. District Court against the Detroit Water and Sewerage Department ("DWSD"), case no. 4:12-cv-13747 (the "Class Action"). Movants have sought relief from the automatic stay to continue prosecution of the Class Action for the limited purpose of certifying the class; establishing liability; and seeking to enjoin the DWSD from charging improper rates. The stay will remain in effect with respect to the enforcement by Movants of any pre-petition debts.

### Introduction

Movants are being charged improper water rates by the Detroit Water and Sewerage Department, in violation of state and federal guarantees of equal protection. The improper charging did not cease when the City's bankruptcy was filed. And, Movants are not stayed from prosecuting their post-petition claims in the district court. By lifting the automatic stay to allow Movants to proceed with the liquidation of all their claims in one court—the district court—the parties will avoid the expense and complexity of litigating the same issues in two courts and avert the risk of inconsistent results.

Class Action Merits

The City argues that it should prevail on its Rule 12(b)(6) on the basis of *res judicata* and its assertion that it has not violated the equal protection clause in establishing different rate classifications. Movants maintain that the City's motion to dismiss is premature and requires the development of the factual record.

More importantly, however, Movants argue that their rate classification is unconstitutional and violates the equal protection clause. A prior classification employed by the City was found to have violated the equal protection clause. In *Alexander v City of Detroit,* 392 Mich 30; 219 NW2d 41 (1994), it was alleged that all owners of residential structures with more than four units were charged commercial waste charges in connection with garbage collection. Those charges were not imposed upon residential properties with four or fewer units. Not only was class certification found and upheld, but the City's classification failed constitutional equal protection scrutiny. *Alexander* at 45. The City has a poor track record. Movants expect the same unconstitutional result will be found in the Class Action.

More significantly from a jurisprudential point of view, Movants simply do not see how any governmental entity can plausibly argue that *Constitutional limitations* imposed upon it by the equal protection clause are unenforceable because prior litigation included a release of all future claims. This untenable position would permit any civil government by the use of a skillfully drafted release, to thereafter violate with impunity the constitutional rights of its citizens in perpetuity. Should such a breach of society's fundamental civil compact be subject to a stay? In light of its magnitude, the Class Action should move forward as proposed by Movants.

Attached as Exhibit A, is a copy of the oral argument hearing transcript dated July 11, 2013. The transcript reflects argument of counsel in connection with the City's motion to dismiss

pursuant to Rule 12(b)(6) and the Movants' motion for class certification pursuant to Rule 23. The hearing transcript is attached to illustrate to this Court, that the district court was inclined to deny the City's motion to dismiss and allow the parties to move forward to develop a factual record.

> THE COURT:   And let me just say, I'm still kind of mulling this issue over, but I do want to indicate, even at this point, that I'm leaning towards denying it, but I haven't made a final decision about that, really for the reasons that have been argued, the factual development that needs to occur here, and I just say that off the cuff, because I haven't made a final decision yet, and I'm going to keep moving forward here.
> MR. GOLDSTEIN:   So, when you say you're, without binding yourself, your initial inclination is to deny "it", was that "it" a reference to the summary judgment motion?
> THE COURT:   Yes, the 12(b)(6).

> [Exhibit A, Transcript, p. 26, lns. 9-21.]

Moreover, in connection with the Plaintiff's motion to certify a class the district court offered this observation:

> THE COURT: Again, I don't want to, I don't want to make a decision on this today. I am still mulling this over, and I'll make a final decision by order. But I will indicate my leaning, again, my leaning is a little toward certifying the class. That's the way I'm leaning. Again, I want to mull over and process these issues more, especially since the class cert issue is tied into the res judicata issue. So, I'm going to take this matter under advisement and I expect to issue an official decision probably within a week or so. All right.

> [Exhibit A, Transcript, p. 36, lns. 6-19.]

A reading of the City's response to the stay relief motion would suggest that the Class Action was teetering on the verge of dismissal. But, the transcript indicates that Judge Drain isn't as confident in the City's assessment of the case.

Cause for Relief

Recently, this Court addressed the standard for determining if cause exists to lift the stay imposed by the City's filing—

> "Determining cause is not a litmus test or a checklist of factors. It requires consideration of many factors and a balancing of competing interests." *Chrysler LLC v. Plastech Engineered Prods., Inc.* (*In re Plastech Engineered Prods., Inc.*), 382 B.R. 90, 109 (Bankr. E.D. Mich. 2008); *see also In re Cardinal Indus., Inc.*,116 B.R. 964, 983 (Bankr. S.D. Ohio 1990) ("In determining whether or not cause exists, the bankruptcy court must balance the inherent hardships on all parties and base its decision on the degree of hardship and the overall goals of the Bankruptcy Code.").

(See docket no. 1536-1, p. 10).

The circumstances in the instant matter are somewhat atypical because the harm (charging of improper water rates) is ongoing, so Movants have the option of bringing a post-petition lawsuit in the district court to recoup charges assessed post-petition and to enjoin the DWSD from continuing the unconstitutional practice of charging residential multi-units at commercial rates. So, the hardship that will be suffered—by Movants, the City, and the court system—if relief is not granted boils down to the time and cost of litigating a new class action based on post-petition charges while, simultaneously, addressing separate objections to each of the Movants' bankruptcy claims for pre-petition charges.

1.      Relief from the stay should be granted because the harm (charging of improper rates by the DWSD) is ongoing giving rise to post-petition claims that can be brought in district court notwithstanding the bankruptcy.

The City contends that class actions are unnecessary and disfavored in the context of a bankruptcy case, and "the claims of the Plaintiffs and any other putative members of the class can be resolved most efficiently through the centralized claims resolution process…." (Docket no. 1363, p. 9). For support, the City selectively pulls a few derogatory quotes from *TL Admin.Corp v. Twinlab Corp.*

4

The issue in *Twinlab* was not whether to grant relief from the stay to allow a class action to proceed in another court, but whether to allow or expunge three class actions involving products liability claims. The court opted to expunge the class actions for two reasons: First, the class action claims were not timely presented to the court and, at the time of the opinion, "the Debtors [sic] assets have been marshaled and liquidated, all other disputed claims have been resolved (including 60 claims of personal injury or wrongful death), the plan has been confirmed, and the estate ready for distribution." *Twinlab* at 8. Second, the putative class failed to "meet the requirements of Rule 23 for class certification." *Id.*

Notably, there were three product liability class actions in *Twinlab*, all of which would require pre-certification discovery and "protracted litigation". *Twinlab* at 5. Also, *Twinlab* involved a liquidating Chapter 11, so any deterrent effect that a class action might have was lost and the claims really just boiled down to money. *Twinlab* at 7. Finally, due to the minimal amount of each class claim—averaging $30—the "only real beneficiaries of [the class action] would be the lawyers representing the class." *Twinlab* at 10 (citation omitted).

In the instant case, the district court has already heard arguments on certification and just needs to rule. The overriding issue in the Class Action is homogeneous—did the City charge the class members improper water rates? And, if so, the practice should be stopped and money damages should be assessed. In other words, this isn't just about the money. It is about putting an end to an improper practice. And, because that practice has continued post-petition, the class members have post-petition claims that are not subject to the automatic stay. *See e.g., Bellini Imports, Ltd. v. Mason & Dixon Lines, Inc.*, 944 F2d 199, 201 (4th Cir. 1990) ("The stay is limited to actions that could have been instituted before the petition was filed or that are based on

claims that arose before the petition was filed …[and] does not include actions arising post-petition.") (citations omitted).

If the Movants are not afforded relief to pursue the pending claims in district court, they can simply file a new action based on the post-petition charges and continued violations of the equal protection clause. Then, not only will the bankruptcy court have to determine the amount of the Movants' claims for pre-petition damages, the district court will have to start from scratch on Movants' new request for class certification, post-petition damages, and injunctive relief. Thus, judicial economy favors granting relief from the stay to allow all of the claims to be addressed in one action by the district court.

2.      Relief from the stay should be granted because the bankruptcy court lacks jurisdiction over the claims.

The Class Action seeks redress for violation of equal protection rights. By seeking relief to continue the Class Action, the Movants are not seeking to collect any money from the Debtor, only to liquidate their claims and obtain injunctive relief. If Movants are denied relief from the stay and forced to file an adversary proceeding seeking to enjoin the DWSD from charging residential units at commercial rates, the bankruptcy court would not have jurisdiction over the proceedings.

Section 1334(a) of title 11 confers on each federal district court "original and exclusive jurisdiction of all cases under title 11," except as provided in 28 U.S.C. § 1334(b). 28 U.S.C. § 1334(a). Under 28 U.S.C. § 1334(b), each district court has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

6

The district court has the authority under 28 U.S.C. § 157(a) to refer to the bankruptcy judges for that district "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11."

Under the local district rule 83.50 "all cases under Title 11 of the United States Code and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to bankruptcy judges." E.D. Mich. L.R. 83.50(1)-(3).

To determine whether the matter at issue is within § 1334(b) jurisdiction, the Court need only determine whether the matter is at least "related to" the bankruptcy. *In re Wolverine Radio Co.*, 930 F.2d 1132 (6th Cir. 1991).

The "usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996) (citation omitted). An action is "related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.*

Because the Movants are seeking relief from the stay as to non-monetary issues only, there will be no effect on the Debtor's estate even if Movants' claims against the DWSD are successful. The DWSD is a separate entity whose budget is not under the City's general fund, but is based on revenues from water and sewerage rate-payers.

Even if the bankruptcy court is deemed to have "related to" jurisdiction over the non-monetary claims, it would lack authority to enter a final order, requiring action by the district court anyway. *See* 28 U.S.C. 157(c)(1).

7

Moreover, regardless of jurisdictional issues, cause would exist to withdraw the reference. The district court has discretion to withdraw the reference for "any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

Courts have considered the following factors to determine whether cause exists to withdraw the reference: 1) judicial economy; 2) uniformity in bankruptcy administration; 3) reducing forum shopping and confusion; 4) fostering economical use of the debtor's and creditor's resources; 5) expediting the bankruptcy process; and 6) the presence of a jury demand. *In re Motions to Withdraw Reference in Various Cases*: 12-11555, 2012 U.S. Dist. LEXIS 158674, 19-20 ( E.D. Mich. Oct. 31, 2012). Because many of these factors overlap the factors considered in determining if cause exists for granting relief from the automatic stay, they will not be addressed separately here.

To put it simply, the Class Action claims would be more conveniently and speedily determined in another forum. The Class Action was pending almost a year in advance of the bankruptcy filing. The Class Action claims are non-bankruptcy related. U.S. District Court Judge Gershwin Drain has already heard and considered arguments on the motion for class certification and motion to dismiss and can dispose of these issues efficiently. Judicial economy will be furthered by allowing the case to continue in the district court where it originated, given the familiarity of the district court with the case at hand and the substantive laws governing the claims. Given the limited relief requested, there will be little, if any, interference with the bankruptcy proceeding. At the same time, the amount of any money damages resulting from the Class Action can be reduced to judgment so that Movants and the City of Detroit know the extent

of any claim that may be filed in the bankruptcy matter.

Thus, it makes more economic sense to grant the Movants the requested relief so that they can continue a proceeding already under way in the district court than to require the Movants to bring another suit in district court seeking the same relief but limited to post-petition conduct or to bring their equitable claims in bankruptcy court only to have those same claims later heard by the district court due to lack of jurisdiction or because the reference is withdrawn.

3.    Relief from the stay should be granted because the City will spend more defending the Movants' claims if relief from the stay is not granted.

The City contends that relief should not be granted because it will be forced to hire new counsel to represent it in the Class Action. However, as indicated above, if the Movants do not obtain relief from the stay to continue the Class Action, they can simply file a new action in the district court based on post-petition water rates assessed in violation of the equal protection clause. So, the City is going to have to hire counsel whether the stay is lifted or not. And, as indicated above, an adversary proceeding may be filed to enjoin the DSWD from continuing its practice of charging commercial rates to Movants. Jurisdiction will be an issue in the adversary proceeding, as will withdrawal of the reference and the limited ability of the bankruptcy court to enter a final order. On the other hand, none of these issues will come into play if relief is granted; thus, limiting the litigation expenses incurred by both parties.

Also, if the Movants are not allowed to liquidate their monetary claims in the Class Action, the City will have to examine every filed claim anyway. The City's Answer and Affirmative Defenses to the Class Action (docket 1363-2, Exhibit 2) indicates that the City will raise objections to each of the claims. Separate objections will have to be filed to each claim. *See*

Fed. R. Bankr. R. 3007. If the City objects to all of the claims on the same basis, the objections will be consolidated, and the parties will effectively litigate the same class action. *See Schuman v. Connaught Group, Ltd.* (*In re Connaught Group, Ltd.*)*,* 491 B.R. 88 (Bankr. S.D.N.Y. 2013) (citing Fed. R. Bankr. P. 9014(c) (providing *inter alia*, that Fed. R. Bankr. 7042 applies in contested matters) (finding class action superior to the claims administration process in resolving claims under the WARN act)).

Request for Relief

Movants request that this Court modify the automatic stay to allow Movants to continue the prosecution of the Class Action for the limited purpose of pursuing class certification, establishing liability, and seeking to enjoin the DWSD from charging improper rates; and grant such further relief as the Court deems just and equitable considering the facts and circumstances of this case.

STEINBERG SHAPIRO & CLARK

/s/ Tracy M. Clark (P60262)
Attorney for Movants
25925 Telegraph Rd., Suite 203
Southfield, MI 48033
(248) 352-4700
clark@steinbergshapiro.com

Date:   November 11, 2013

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,                          Case No. 13-53846-SWR
                                                     Chapter 9
                         Debtor.                     Hon. Steven W. Rhodes
_____/

**EXHIBIT LIST**

| Exhibit | Description |
|---------|-------------|
| A       | Transcript  |

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3    LASALLE TOWN HOUSES
      COOPERATIVE ASSOCIATION, a
 4    Domestic Nonprofit
      Corporation, NICOLET TOWN
 5    HOUSES COOPERATIVE              No. 12-cv-13747
      ASSOCIATION, a Domestic
 6    Nonprofit Corporation,
      LAFAYETTE TOWN HOUSES,
 7    INC., a Domestic Nonprofit
      Corporation, and JOLIET
 8    TOWN HOUSES COOPERATIVE
      ASSOCIATION, a Domestic
 9    Nonprofit Corporation, ST.
      JAMES COOPERATIVE, a
10    Domestic Nonprofit
      Corporation, individually
11    and on behalf of all
      similarly situated
12    entities,

13             Plaintiffs,

14       v

15

      CITY OF DETROIT, acting
16    through its DETROIT WATER
      AND SEWERAGE DEPARTMENT,
17
               Defendant.
18    _____/

19
                          MOTION
20
           BEFORE THE HONORABLE GERSHWIN A. DRAIN
21              UNITED STATES DISTRICT JUDGE
           Theodore Levin United States Courthouse
22              231 West Lafayette Boulevard
                     Detroit, Michigan
23               Thursday, July 11, 2013

24

25
```

```
1    APPEARANCES:

2

3      For the Plaintiffs:    MR. ERIC S. GOLDSTEIN  (P45842)
                              Johnston, Sztykiel, Hunt,
                              Goldstein & Fitzgibbons, P.C.
4                             3250 W. Big Beaver Road
                              Suite 500
5                             Troy, Michigan  48084
                              (248) 641-1800
6
       For the Defendant:     MR. REGINALD M. TURNER, JR.
7                             (P40543)
                              Clark Hill, PLC
8                             500 Woodward Avenue, Suite 3500
                              Detroit, Michigan  48226
9                             (313) 965-8300

10   Reported by:            Merilyn J. Jones, RPR, CSR
                             Official Federal Court Reporter
11                           merilyn_jones@mied.uscourts.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                          TABLE OF CONTENTS

2    **WITNESSES:  PLAINTIFF**                                    **PAGE**
     None
3

4

5

6

7

8

9    **WITNESSES:  DEFENDANT**
     None
10

11

12

13

14   **EXHIBITS:**                   Identified              Received
     None
15

16

17

18

19

20

21

22

23

24

25

1          Detroit, Michigan

2          Thursday, July 11, 2013 - 11:02 a.m.

3          THE CLERK: All rise.  The United States

4  District Court for the Eastern District of Michigan is

5  now in session.  Honorable Gershwin Drain presiding.

6          Calling Civil Action LaSalle Town Houses

7  Cooperative Association, et al. versus City of Detroit,

8  acting through its Detroit Water and Sewerage

9  Department.  Case Number 12-cv-13747.

10          Counsel, please state your appearance for

11  the record.

12          MR. GOLDSTEIN: Good morning.  Eric Goldstein

13  on behalf of the plaintiff.

14          THE COURT:  All right.

15          MR. TURNER: Good morning.  Reginald Turner

16  on behalf of defendant.

17          THE COURT:  All right.  You can be seated,

18  gentlemen.

19          There are two motions before the Court:

20  One, a 12(b)(6) and a 12(c) motion, and then there's a

21  motion for class certification.

22          And I have -- I'm ready to proceed with the

23  arguments if you gentlemen want to argue, and I'll give

24  both sides no more than 20 minutes to argue the two

25  issues.

1        So, how do you gentlemen want to proceed?

2        MR. GOLDSTEIN: Your Honor, we had discussed

3    that a little bit ourselves.

4        THE COURT:   Okay.

5        MR. GOLDSTEIN:  And our bottom line

6    conclusion was we thought to defer to you, given the

7    interrelationship of some of the issues.  We saw that it

8    made sense to proceed with one motion, but just as much

9    sense to proceed with the other, you know, and the

10   distinctions procedurally may not be that important,

11   hence, our initial call to defer to you.

12       THE COURT: Okay.

13       MR. GOLDSTEIN:  If you want us to decide, we

14   can do that.

15       THE COURT:  Well, when people defer to me,

16   sometimes I just say, I will not have any argument and

17   just rely on the briefs.  But I don't know if you all

18   want to waive argument.

19       MR. GOLDSTEIN: Well, if I may?

20       THE COURT:  Okay.

21       MR. GOLDSTEIN: Thank you.

22       Your Honor --

23       THE COURT:  Let me just say from a

24   procedural point of view, I guess, the motion to dismiss

25   would be the first one to argue and the second one class

1 | certification.
2 |     MR. GOLDSTEIN: That's fine.
3 |     THE COURT: Okay.
4 |     MR. GOLDSTEIN: We'll proceed.
5 |     THE COURT: Okay.
6 |     MR. TURNER: Thank you, your Honor. May it
7 | please the Court, Reginald Turner on behalf of the
8 | defendant, City of Detroit. This is the time for our
9 | hearing on defendant's motion to dismiss pursuant to
10 | 12(b)(6) and 12(c).
11 |     The City of Detroit seeks dismissal of the
12 | plaintiffs' complaint because it fails to state a claim
13 | upon which relief can be granted.
14 |     Plaintiff now asserts in this 2012 matter
15 | issues that they could have raised in the now settled
16 | 2007 matter, and I'm well aware of this Court's practice
17 | of reviewing the pleadings and understand that the Court
18 | gave us the option to dispense with oral argument, so
19 | I'll try to be as brief as possible and address the most
20 | salient points.
21 |     The Village Center case was settled and was
22 | dismissed with prejudice on the merits pursuant to a
23 | final judgment and order dated February 3rd, 2009.
24 | That order and all documents related to the settlement
25 | are public records, which are appropriate for inclusion

1   in the record for purposes of either a 12(b) or 12(c)

2   motion.

3           Plaintiffs' claims are subject to dismissal

4   on the pleadings because all of plaintiffs' claims are

5   barred by res judicata, and it's very, very clear from

6   the plaintiffs' complaint in this matter that they

7   recognize that these are the same parties and the same

8   issues that were addressed in the earlier case.

9   They've actually pled that in the complaint.

10          And I would highlight for the Court --

11          THE COURT:  Mr. Turner, do you know who the

12  lawyers were in that case?  I don't think I came across

13  that in the reading.

14          MR. TURNER: They were not the same lawyers.

15          THE COURT:  Okay.

16          MR. TURNER:  This is a different law firm

17  that was involved.  I can't think of the names off the

18  top of my head right now, your Honor.  I could look it

19  up, but I was not familiar with any of the counsel in

20  that case.  I don't believe there are any of the same

21  lawyers involved in this case.

22          MR. GOLDSTEIN: Carl Becker was lead counsel

23  for the plaintiffs.

24          THE COURT:  Okay.

25          MR. GOLDSTEIN: And Jim, or James Noseda,

1  N-O-S-E-D-A, was lead for the City.

2            THE COURT:   Is he with corporation counsel?

3            MR. GOLDSTEIN: That I don't know, but the

4  address on the caption was 660 Woodward Avenue, Suite

5  660, and that information maybe Mr. Turner knows.

6            THE COURT:   Okay.   And, I guess, I'm

7  curious, too, do you know how many parties were actually

8  involved in that settlement?

9            MR. TURNER: Well, your Honor, the entire

10 class, which was estimated to be approximately 2300

11 dwellings of five or more units were involved in the

12 settlement in that matter.

13           There is attached to our motion a copy of

14 the, of the final order as well as a listing of all of

15 the known plaintiffs in that case, and there's actually

16 a document that shows the distribution of the damages in

17 that case that is attached to our motion as Exhibit F.

18           The plaintiffs have cited Zechem

19 Incorporated versus Bristol-Meyers Squibb for the

20 proposition that a 12(b)(6) motion is not appropriate

21 for dismissal on the basis of an affirmative defense.

22 But if the Xechem case is read even cursorily, it's very

23 clear that this is appropriate, this is an appropriate

24 setting and the Xechem case, and I'll quote, says:

25           "When the plaintiff pleads itself out of

1    court; that is, 'admits all the ingredients of

2    an impenetrable defense', a complaint that

3    otherwise states a claim may be dismissed under

4    Rule 12(b)(6)."

5    So, yes, we are asking for dismissal on the

6 basis of our affirmative defense, but when our

7 affirmative defense is actually pled in the plaintiffs'

8 complaint, the Xechem case stands for the proposition

9 that it is appropriate to consider that in a 12(b)(6)

10 motion, and in this case, your Honor, it is very clear

11 on the face of the complaint, as the plaintiffs

12 themselves have indicated, that a number of the persons

13 covered in the proposed class were parties to and

14 received settlements in the Village Center case, the

15 prior case, and all of the named plaintiffs, by their

16 own admission, were involved in that case.

17    So, even if the Court did not find, as we

18 hope it will, and believe it will, that these claims are

19 barred by res judicata with respect to the entire class,

20 certainly, then, the named plaintiffs would be bound by

21 that prior settlement, your Honor, and would be

22 inappropriate representatives for any parties in the

23 proposed class who were not bound by the prior

24 settlement.

25    Your Honor, we, we also took a look at

1   another case that was cited in the plaintiffs' brief,
2   Browning versus Levy.  They cite that case for the
3   proposition that it is inappropriate to, to grant
4   summary disposition, summary judgment, I'm sorry, in
5   this matter.  But the Browning case actually involved
6   the confirmation of a plan of organization in a
7   bankruptcy case, and the Browning court made clear that
8   a court's confirmation of a plan submitted by the
9   parties in the case resolving that matter is tantamount
10  to a decision of a Federal District Court to approve a
11  settlement and enter a final order on a settlement as
12  occurred in the Village Center case.
13          And, so, I'll quote Browning versus Levy,
14  which the plaintiff cited, Page 8 of their brief:
15          "Confirmation of a plan of reorganization
16          constitutes a final judgment in bankruptcy
17          proceedings.  Such confirmation had the effect
18          of a judgment by the district court and res
19          judicata principles bar relitigation of any
20          issues raised or could have been raised in the
21          confirmation proceedings."
22          So, Browning actually supports the position
23  taken by the defendant in this case that it is
24  appropriate for a court to view a final settlement order
25  on the merits, which has become the decision dismissing

1    a case with prejudice as a basis for res judicata in a

2    subsequent action where the parties are the same, the

3    issues involved in the second action were raised or

4    could have been raised in the previous action, the cause

5    of action is identical, as it is in this case, where we

6    have an equal protection claim, which was raised by the

7    plaintiffs here, as was raised by the plaintiffs in the

8    Village Center case.

9              I'd also cite a passage from another case

10   cited by plaintiffs in this case, Arizona versus

11   California, and in there, your Honor, again, with

12   respect to this question whether or not a consent

13   judgment or final order of a Federal Court may be used

14   to provide the basis for a res judicata finding in a

15   subsequent action, here again quoting from, from Arizona

16   versus California, the court said:

17             "It is recognized that consent judgments

18             ordinarily are intended to preclude any further

19             litigation on the claim presented, the claim

20             presented, but are not intended to preclude

21             further litigation on any of the issues

22             presented.  Thus consent judgments ordinarily

23             support claim preclusion, but not issue

24             preclusion."

25             And that's really important in this case,

your Honor, because the plaintiffs seem to be conflating
those two concepts in the arguments that they're making
in their brief.   They seem to, to suggest that we're
seeking issue preclusion in our motion for dismissal,
when, in fact, we are dealing with claim preclusion.
Claim preclusion is the basis for res judicata and issue
preclusion is, of course, the basis for collateral
estoppel.   Those are two separate legal theories, and we
are only proceeding with respect to the question of
claim preclusion as we present our arguments to the
Court.

It is very clear that both the defendant in
this case and all the named plaintiffs in this case were
parties to the Village Center settlement which also
bound all of the owners asserting claims in this matter.

Stated another way, the settlement class
members in Village Center are plaintiffs and proposed
class members in this matter.

Next, all of the members of the Village
Center settlement class were aware that they were being
charged commercial rates and could have, but failed to
challenge those commercial rates in that case.   They
actually pled in their complaint, as the plaintiffs in
this case have pled in their complaint, that the
department of water and sewage was charging them

commercial rates improperly.   That gravamen complained
of was present in the earlier Village Center action and
is present in this case.

So, as the court indicated in Xechem, the
plaintiffs themselves have pled themselves out of court
by acknowledging the key facts of res judicata.   Same
issue, same parties, final judgment, those are the key
questions, all of which are resolved here in favor of
granting summary judgment to the defendants.

I would also note that the plaintiffs have
failed to state an equal protection claim.   The rate
making classification of which they complain is
rationally related to the cost of providing sewage
services, and the other cases cited by the plaintiff,
and I won't spend a lot of time on this, your Honor, but
they're reliance on Alexander versus City of Detroit is
completely misplaced.

In the Alexander case the court found that
it was inappropriate for the City to distinguish between
types of dwellings with five or more units for purposes
of the garbage disposal charge at issue in that case.

Here the City is not distinguishing between
types of units that had five or more, or types of
dwellings that had five or more units in them.   They're
covering all of the residential buildings that had five

or more units.  So it's quite distinguishable.

What the court found to be the infirmity in the Alexander versus City of Detroit case was that there was no evidence whatsoever that the City of Detroit was incurring any additional expenses on the basis of whether they were picking up the garbage at a condominium project versus a rental apartment project, each of which would have five or more units.  The court said that's not a rational distinction, and I agree, it wasn't.  Here the distinction being complained of relates to unit, to residential facilities that are four or less units and those that are five or more units and that's a very important distinction because of the way that these buildings are constructed.  These large residential facilities have flat roofs, large parking lots, and they cause more storm water runoff into the City's system.

So the size of the unit and the configuration of these units and the amount of storm water that runs off of these residential facilities with five or more units is greater, and, accordingly, the City incurs greater expense.

So, again, the plaintiffs have essentially pled themselves out of court by attacking a very rational classification, rational on its face that shows

the city seeking to recover the costs of its service to

these facilities.

And, your Honor, just to be clear, do you

want me to proceed on the class certification issue at

this time as well or would you, do you want to hear

plaintiffs' response to our arguments?

THE COURT:   Let me hear the plaintiffs'

response.

MR. TURNER: Thank you.

THE COURT:   Yes, let's do that.

MR. GOLDSTEIN: Your Honor, there's much that

I stated in the briefing that I am not going to restate

now.

THE COURT:   Okay.

MR. GOLDSTEIN: But that doesn't mean that I

don't think it's important, and I know you appreciate

that.

THE COURT:   Okay.

MR. GOLDSTEIN: I've been in front of you and

I know you look very hard at everything.

THE COURT:   Okay.

MR. GOLDSTEIN: We are accused of failing to

state a claim.  If you look at our complaint on its

face, we have stated a claim.

I'm going to sidestep all of the discussions

1  in the briefing about whether it's a Rule 12 or
2  Conversion Rule 56 and what you consider extrinsic.  I'm
3  going to sidestep all that and just argue substance for
4  right now, but I'm not waiving those issues.
5          We have stated a claim.  Their contention
6  that we have pled ourselves out of the claim in light of
7  the affirmative defense of res judicata does not
8  withstand careful scrutiny of the prior case to which
9  they point.
10         Res judicata requires that the issues
11 falling within the umbrella of the bar arise out of the
12 same core operative facts.  There are a number of
13 distinctions, not the least of which is the passage of
14 time, and we don't even know if the storm water fee
15 calculation was in effect then.  So I'm not even sure
16 we could have known about it with due diligence then if
17 it did not exist.
18         But I'm getting a little ahead of my thought
19 process.  I'll come back to that.
20         The core operative facts on the face of the
21 pleadings are in the old case there was a bureaucratic
22 whoopsy, if I can speak colloquially for a moment.  The
23 water department, we have come to learn, has set up a
24 classification system wherein residential units with
25 five or more units for some purposes, but not all, are

1    considered commercial.

2            And if you look at the definitions of

3    commercial, it's not the same thing as zoning.  So it

4    kind of envelops industrial, it kind of envelops

5    business, and in the old case it was observed on the

6    water bill that there was this IWC charge appearing.

7    What is that?  An inquiry was made and it was determined

8    that's an Industrial Waste Control charge.  We're

9    residential.  Why are we being hit with an Industrial

10   Waste Control charge?  Because of this bureaucratic

11   assumption just borrowing from classifications.  It was

12   a, on top of, it was above the waterline, sea level, if

13   you will.  It was visible.  Where there's no need for

14   sonar to find out what's going on underneath the water.

15   It was right there on the top.

16           We're residential.  This charge should not

17   be put on us and the City wants, it had its attention

18   focused on the issue because of the litigation, finally

19   went, oh, yeah.

20           If you look at the docket entries in that

21   case, do you see lots of protracted litigation discovery

22   motion practice?  No.  It's not there.  Then they just

23   sat down with the mechanism of trying to fix it.

24   Finding an exit strategy that worked and they found one

25   by supplying credits, future credits because there

wasn't the cash.  That's what their focus was on, an
efficient resolution of a problem that was right there
on the horizon.  It was Industrial Waste Control.

    Okay, that's that case.

    This case --

    THE COURT:  Okay.  When you say "there
wasn't the cash", is there cash now?

    MR. GOLDSTEIN: That's an issue to discuss
later as well.  I understand -- but you know --

    THE COURT:  I'm just --

    MR. GOLDSTEIN: I understand that the water
bills generate huge cash flow and, you know, if we want
to discuss a prudent exit strategy, I guarantee you the
interest is there in finding a winning way for everyone
to walk away and address the issues.

    But that's not pertinent for this motion.

    THE COURT:  I know.  I know.  I just --
when you said the credit system --

    MR. GOLDSTEIN: We all read the paper.

    THE COURT:  -- made me, you know -- okay.

    MR. GOLDSTEIN: Well, sure.  Every case has
its obstacles and we can approach them civilly as I
believe Mr. Turner and I have an established history of
being able to work civilly with each other.

    THE COURT:  Okay.  And that's important.

1          MR. GOLDSTEIN: We share clients in our

2     history.  I mean --

3          THE COURT:   Okay.

4          MR. GOLDSTEIN: The operative facts here,

5     we're not challenging the propriety of being billed for

6     storm water runoff.  That's the key distinction here.

7          And the other case wasn't proper to assess

8     the fee.  Who cares how you calculate it.  It's just all

9     wrong.

10          Here the main distinction is the fee itself

11     as an item is probably just fine.  We're not challenging

12     that, but the method of calculating it is the focus of

13     our challenge.  It's a completely different set of

14     facts.  It's a completely different set of issues.

15     We're not talking about whether the fee should be

16     charged.  We're talking about the proper method of

17     calculating it.  And I submit that is a significant

18     distinction, given the fact that there's nothing in

19     front of you that demonstrates when this process started

20     and if it even existed during the time of the other

21     case.  I'm not sure that's determinative, but what I'm

22     suggesting is that's an important consideration here.

23          Now, I'd like to step to the question of

24     "should have known".  The IWC charge was on the bills.

25     It was on the bills.  The storm water calculation fee is

1    not on the bills.  If it is suggested that the burden,

2    or consequence for not raising what you could have with

3    due diligence, it's applied in this context.

4            Now, this is not a situation where they

5    engaged in discovery -- oh, in the old case, we see this

6    fee that shouldn't be there, and you tend to agree with

7    us that it shouldn't be there, so we're going to focus

8    on getting out, but just to be safe can you give us

9    discovery on every other possible way you're violating

10   our rights under the equal protection clause.  How are

11   we supposed to be duly diligent in that.  I'm not sure

12   how that works.  I'm not sure how they can say we should

13   have known, other than, to ask a very broad-based and

14   inflammatory question:  Can you please identify every

15   other way in which you are violating our rights under

16   the equal protection clause based on this distinct or

17   any other distinct that might apply to residential

18   structures.  And, quite frankly, being a defense

19   attorney I'm not sure I would find that a discoverable

20   answer.  I might object.  That is not pertinent to the

21   claim; that is not material to this controversy.  This

22   controversy is about this charge, this Industrial Waste

23   Control charge.  I would object to that.

24           Now, you're a judge.  You've ruled on

25   motions to compel on whether something is going to

```
 1    amount to discovery or not.  I think that issue is
 2    complicated and not easily to predict.
 3              But by suggesting it, absolutely we should
 4    have done that in order to discover this claim now with
 5    the harsh consequence of not being allowed to sue, I
 6    don't think that's strong ground, at least not strong
 7    enough for a res judicata motion at the, at a 12(b)(6)
 8    motion where we haven't even figured out:  How they're
 9    calculating the fee.  What the difference is.  When they
10    started doing it.  Why they started doing it.  What was
11    the real basis for it.  We haven't gotten there yet.
12    But we do see from the prior case, the LaSalle case, and
13    the Alexander Waste Hauling case, Alexander v Detroit.
14              Mr. Turner and I have a different
15    characterization of what that case was about.  I think
16    it was a clean distinct between five or more or four or
17    less, but the case says what it says.
18              I think we have a demonstrated history that
19    the City has made this classification in various
20    different contexts.  They did it with the waste hauling,
21    well, violating equal protection.  They did it in
22    LaSalle -- excuse me.  They did it in the Village Center
23    case.  It was asserted to be violation of equal
24    protection, and they're doing it now.  And this, way
25    underneath the sea level manifestation.  They have done
```

1   this arbitrarily throughout, at least that's our
2   contention; that's our claim. We've stated it, and I
3   don't believe it is appropriate to dismiss the case at
4   this time.
5           Let me suggest that if the fact that we did
6   not engage -- not "we" -- but if the class and the prior
7   attorneys were focused on what their litigation was
8   about are somehow prejudicing our ability to bring the
9   case now, because they stayed focused on the Industrial
10  Waste Control charge, what that really does, if it bars
11  this case, is that rewards the complexity of
12  bureaucracy, that rewards them for hiding the fee and
13  punishing us for not catching them.
14          Now, I'm not suggesting anything sinister
15  with defense counsel or the City of Detroit. But I'm
16  looking at objectively the nature of the relief they're
17  requesting, at the time they're requesting it, and the
18  basis for it, and that's what I'm saying.
19          Shame on you for not figuring it out then
20  when you were focused on a conspicuous issue and when
21  you were not making the assumption that the City was
22  also giving it to you in other ways that you can't see.
23          Shame on us for not catching that? That's
24  the relief they're requesting, and I have difficulty
25  with that.

1          Now, if we engage in full course discovery

2     and the case gets fully developed and we see what was

3     going on, maybe the facts generated would sustain all

4     kinds of motions, motions on our side of the caption,

5     motions on their side of the caption, but they'd be

6     based upon the real facts and the real substance and

7     that would speak to fairness.

8          I did throw you a case cite that I notice he

9     didn't turn around and use against me, and that was one

10    that suggested res judicata is not intended to be an

11    automatic machine that prohibits you from making a

12    judgment call.

13              THE COURT:  Is that the Rumery case?

14              MR. GOLDSTEIN: No, but I like that case very

15    much.

16          I'm not good at thumbing through briefs when

17    I make oral argument, but I'd be glad to identify the

18    case.

19              THE COURT:  That's okay.

20              MR. GOLDSTEIN: It is in my res judicata

21    discussion.

22              THE COURT:  That's okay on my part.

23              MR. GOLDSTEIN: It's a good case.  I like it.

24          But I, it stands for the proposition that

25    it's a judicial doctrine designed to promote efficiency

1   of litigation and to protect against serial, bad faith,

2   relitigation of issues where people are just trying to

3   hurt each other.

4            I think we have our faith -- on the face of

5   it a very good faith claim. We've supplied for you the

6   distinctions. This is not serial. This is not

7   nuisance. This is significant.

8            Here's the other impact that I think you

9   ought to give serious consideration to in considering a

10  res judicata-based dismissal.

11           THE COURT:  Okay. You've only got a few

12  minutes left.

13           MR. GOLDSTEIN: I'll do that, and thank you

14  for the warning.

15           THE COURT:  Okay.

16           MR. GOLDSTEIN: And on this

17  undeveloped-pleading-based record that ruling would

18  conclude that because of the Village Center dismissal,

19  from now on the City of Detroit has open season on any

20  kind of equal protection violation it wants to impose

21  upon residential structures with five or more units.

22           Look at that settlement agreement they rely

23  on.  Look at the language.  Any and all equal protection

24  claims from now on.  I mean, that's the only conclusion

25  we have because we don't even have it established that

1   the storm water fee existed then.

2          Now let me make a few points about equal

3   protection, while I pick up my pen.

4          I'll say -- I've briefed it thoroughly.

5   I'll say one thing.  All we've got right now is what

6   appears to be an ex post facto justification imposed

7   upon this classification to make it seem rational.  I

8   submit on its face it is arbitrary.  Why?  Four versus

9   five.  Why not five versus six?  Why not three versus

10  four?  What is the basis for this?

11         I know you have to draw a line somewhere if

12  you need to make a classification, but that line needs

13  to be drawn with a rational basis, not an arbitrary one.

14  We've got nothing here.

15         And I'll submit that the City of Detroit,

16  like many older communities, has no shortage of old,

17  large structures that used to be single family homes

18  that have no driveway and are now broken up into

19  multiple units.  I lived in one when I attended Detroit

20  College of Law back where Comerica Park is now over

21  there in West Village, and there were lots of units in

22  that building.  It used to be a single family home, no

23  driveway, and it would be sucked into this, and that's

24  all because it's arbitrary.  This is an ex post facto

25  construction to justify it.

```
 1              If you have no questions for me, I'll go
 2    sit.
 3              THE COURT:   Okay.   But you know what, I'm
 4    going to move on to the class certification issue, and
 5    that's your motion.
 6              MR. GOLDSTEIN: May I switch folders?
 7              THE COURT:   Yes.
 8              MR. GOLDSTEIN: Thank you.
 9              THE COURT:   And let me just say, I'm still
10    kind of mulling this issue over, but I do want to
11    indicate, even at this point, that I'm leaning towards
12    denying it, but I haven't made a final decision about
13    that, really for the reasons that have been argued, the
14    factual development that needs to occur here, and I just
15    say that off the cuff, because I haven't made a final
16    decision yet, and I'm going to keep moving forward here.
17              MR. GOLDSTEIN:  So, when you say you're,
18    without binding yourself, your initial inclination is to
19    deny "it", was that "it" a reference to the summary
20    judgment motion?
21              THE COURT:   Yes, the 12(b)(6).
22              MR. GOLDSTEIN: Got you.
23              THE COURT:  And the 12(c).
24              MR. GOLDSTEIN: That's not going to impact my
25    argument now --
```

```
1              THE COURT:   Okay.
2              MR. GOLDSTEIN: -- anymore than the arguments
3    that we just did will, because so much of the opposition
4    to the motion for certification is bootstrapped with res
5    judicata, I mean, they're inextricably intertwined.
6              I've said what I need to say about res
7    judicata, I think.
8              THE COURT:  You don't need to say anything
9    else -- oh, okay.
10             MR. GOLDSTEIN:  And, so, there is one other
11   thing I see in their motion.  It speaks to the
12   numerosity element, the number of people in the class
13   suggesting that we're only speculating, and they're
14   paralleling us to the case they cite, I don't have the
15   name of the case at my fingertips, it's in their brief,
16   and they put in a fact pattern of folks who moved into
17   apartment structures, the prior tenant or landlords
18   didn't pay the water bill, and the water company
19   wouldn't turn it on, and that was the basis of the class
20   action.
21             And the classification motion was, I don't
22   remember if it was denied or if it was granted and then
23   reversed, but that was not an adequate basis for a class
24   because it was speculative.  It was speculative because
25   there was a variable in the class definition.  The
```

1  variable was:  Did the prior tenant not pay the bill?

2  See, all they could do was present the court with a

3  number reflecting tenants.  Not tenants -- if they had

4  submitted a class with a number of tenants who were not

5  getting water because of the prior tenant or landlord,

6  that would have been fine.  But they left an open-ended

7  variable in the class definition.  And the open-ended

8  variable was, if their water had been shut off, leaving

9  it open to their remote, unlikely, but real possibility

10  objectively that there's so few of them there's no point

11  in going through the class structure, the class action

12  system.  We don't have that variable here.  Every

13  single residential structure in the City with five or

14  more units is subject to this.  No variable.

15        And if you look at the numbers from the

16  prior litigation, it's large, and if you look at the

17  materials recently exchanged in these last few months,

18  it's still large.  We're looking at thousands of units.

19        THE COURT:  Okay.  Mr. Turner, let me hear

20  what you have to say about that.

21        MR. GOLDSTEIN: Thank you.

22        THE COURT:  Okay.

23        MR. TURNER:  Thank you, your Honor.

24        May it please the court, of course, as

25  you've acknowledged, our argument against class

certification is that the named plaintiffs in this case
and virtually all of the members of the class are barred
from pursuing the claims in this case on the basis of
the prior action, and that's the central issue here.

In response to learned counsel's rhetorical
question about, what, if anything, could the plaintiffs
in the previous case have inquired about in discovery,
or at any point, in informal settlement discussions, to
learn what other problems might exist with the rate
making classifications, it's a very simple question:
City of Detroit, what are the components of commercial
water rates?

City of Detroit, what are the components of
commercial water rates?

An attorney who failed to ask that question
formally or informally during the pendency of litigation
for thousands of clients being charged commercial rates
as set forth in the plaintiffs' complaint in the Village
Center case, and in plaintiffs' complaint in the present
case, what are the components? Very simple question.
They didn't make the inquiry or if they did make the
inquiry, they didn't act on the results of that inquiry.

And, accordingly, they knew or should have
known that the commercial rates included the storm water
fees on the basis of the impermeability of the roofs and

1   lots on these large residential complexes.  It's very,

2   very straightforward, your Honor.

3           Plaintiffs haven't satisfied the class

4   certification requirements because they bear the burden

5   of establishing numerosity, commonality, typicality, and

6   adequacy of representation.

7           They have problems here because it appears

8   from the pleadings in the complaint that they seek to

9   represent the very same class that was in the Village

10  Center case, and those class members filed an equal

11  protection claim against the City of Detroit, arguing

12  that their commercial water rates, including the

13  Industrial Waste Control charge, but you can't separate

14  the two, it was commercial rates and the Industrial

15  Waste Control charge in the prior action, and the

16  current action is about commercial water rates,

17  excluding the Industrial Waste Control charge, because

18  that charge has gone away, but they, but both, in both

19  cases the plaintiffs complained about the commercial

20  rates.

21          Accordingly, plaintiffs must demonstrate in

22  this case how a class, which is barred by the doctrine

23  of res judicata, can meet the requirements of Rule 23,

24  and they have a very, very steep burden in order to meet

25  that threshold, and in determining whether or not a

1    class is appropriate under Rule 23(b), and I quote:

2             "Sometimes it may be necessary for the court

3         to probe behind the pleadings before coming to

4         rest on the certification question."

5             That's quoting Wal-Mart versus Dukes, which

6    is quoting the General Telephone Company versus Falcon,

7    and these cases are cited in our brief.

8             Class certification is proper only if the

9    trial court is satisfied after a rigorous analysis that

10   the prerequisites of Rule 23(a) have been satisfied.

11            Although the plaintiffs have cited the In Re

12   Cardizem Antitrust Litigation case, 200 Federal Rule

13   Decision 297, for the proposition that talks about class

14   certification should be resolved in favor of

15   certification, the court in that case made very clear

16   that rigorous analysis must be applied before any

17   conclusion, and I quote Cardizem:

18            "Nonetheless, the court must conduct a

19        rigorous analysis into whether the

20        prerequisites of Rule 23 are met before

21        certifying a class."

22            Plaintiffs acknowledge at Page 4 of their

23   reply brief that a district court must conduct a

24   preliminary inquiry into the merits of a suit, a class

25   certification where quote:

1           "It is necessary to determine the propriety

2         of the certification."

3           And at their brief at Page 4, they're

4  quoting the Amgen case, 133 Supreme Court 1184, and we

5  agree:

6           "To prove numerosity, the plaintiffs must

7         demonstrate that the putative case is so

8         numerous that joinder of all the members is

9         impracticable."

10           And what they say is, and I'm paraphrasing

11  Mr. Goldstein, but essentially while acknowledging that

12  the 2300 or so plaintiffs who had their claims resolved

13  in the prior action overlaps substantially with the

14  thousands of plaintiffs they seek to represent here.

15           It is possible that there are some buildings

16  that existed then that don't exist anymore.  We've had a

17  lot of demolition in our town.  It's possible that there

18  has been some new construction with dwellings with five

19  or more units during the period since 2009 when the

20  previous case was settled.

21           But, they have made no showing that

22  construction since that period has created a number of

23  dwellings, a number of new dwellings sufficient to

24  satisfy the numerosity requirement for Rule 23, and I

25  would venture to argue that we haven't had that much new

development in Detroit in that period of time to create
new dwellings not previously covered by the settlement
in the Village Center case that would be sufficient to
satisfy Rule 23.

With respect to commonality, again, there's
a real big problem.  This res judicata issue is the
elephant in the room.  If you knew or should have known
about the component of commercial water rates in 2009
because you participated in a settlement that became a
final order of the court, which final order included
language indicating that you are waiving any and all
claims against the defendant, City of Detroit, forever,
known or unknown, then it seems to me that the named
plaintiffs in this case, who were parties, have nothing
in common with those newer dwellings that could
potentially be members of the class sought to be covered
in this case, at least those members of class sought to
be covered in this case who were not barred by res
judicata.

Now, in the Golden case that we cited in our
brief the plaintiffs filed an equal protection claim
regarding the City of Columbus' denial of water
services, and both parties have talked about that, but
what, the defect in Golden, which Mr. Goldstein has ably
discussed, almost, because there is a distinction here,

1    what the, what the court was saying is, what you haven't
2    done is show us essentially the numerosity in any
3    precise incalculable way, and they did cite the fact
4    that the plaintiffs in that case sought to represent
5    every apartment tenant in the City of Columbus, and they
6    hadn't made refinements with respect to one of the key
7    issues in the case, but that defect applies in this case
8    as well because, again, the plaintiffs have said, we're,
9    we want to represent everybody who has five units or
10   more in a residential complex without any attempt to
11   account for the problem of res judicata.  And I do keep
12   coming back to that, your Honor, because that's the
13   defect here.  They can't, they can't talk about
14   numerosity or commonality without addressing the
15   elephant in the room.
16           Their only allegation in this respect is in
17   the two sentences that they offer and they say:
18           "Preliminary discovery provided by the City
19               demonstrates that there are easily hundreds, if
20               not thousands in excess, if not in excess of a
21               thousand members that meet the proposed class
22               definition.  The listing of apartment accounts
23               provided by defendant in preliminary discovery
24               identify 23, 2,343 structures alone."
25           And that's in plaintiffs' motion at Pages 3

1    and 4.

2              Well, there are 2300 plaintiffs who received

3    relief in the previous case.   So, you know, by my math,

4    I think, it was 2310, by my math that leaves about 33.

5              THE COURT:   Well, let's see, that's still

6    within the range of 21 to 40, isn't it?  Isn't that

7    within numerosity threshold --

8              MR. TURNER:  Maximum.

9              THE COURT:  -- threshold, I should say.

10             MR. TURNER:  But the plaintiff have not, the

11   plaintiffs have not made specific allegations that would

12   address the question of which, which of those dwellings

13   would not have been the subject of the previous lawsuit.

14             The final and weakest aspect of the

15   plaintiffs' proposed class action is predominance.

16   Again, they can't state that with respect to that small

17   number of dwelling units, of dwelling complexes that are

18   not barred by the previous litigation that those --

19   their -- that the named plaintiffs' situation is similar

20   enough on the key issues in the case that they would be

21   suitable to represent that smaller group of dwelling

22   complexes, and so, accordingly, this class is not

23   appropriate for certification, your Honor.   They just

24   have a very, very substantial defect on the basis of the

25   participation of the majority of the proposed plaintiff

 1    class members in the previous litigation.

 2            And I'll be happy to answer any questions

 3    your Honor would have.

 4            THE COURT:  I don't have any.

 5            MR. TURNER: Thank you, your Honor.

 6            THE COURT:  Again, I don't want to, I don't

 7    want to make a decision on this today.  I am still

 8    mulling this over, and I'll make a final decision by

 9    order.

10            But I will indicate my leaning, again, my

11    leaning is a little toward certifying the class.

12    That's the way I'm leaning.

13            Again, I want to mull over and process these

14    issues more, especially since the class cert issue is

15    tied into the res judicata issue.

16            So, I'm going to take this matter under

17    advisement and I expect to issue an official decision

18    probably within a week or so.

19            All right.

20            Yes, sir?

21            MR. GOLDSTEIN: I don't have argument, but I

22    could not recall the name of the case you asked me

23    about.

24            THE COURT:  Okay.

25            MR. GOLDSTEIN:  I looked in my brief.

1           THE COURT:   Okay.

2           MR. GOLDSTEIN: It's the Maldonado versus

3   Attorney General case on Page 12.

4           THE COURT:   Okay.

5           MR. GOLDSTEIN: Thank you.

6           THE COURT:  All right.  Then, we are

7   officially in recess, and I want to go off the record

8   for a minute.

9           (At 11:55 a.m. proceedings concluded)

10

11              C E R T I F I C A T E

12           I, Merilyn J. Jones, Official Court Reporter

13   of the United States District Court, Eastern District of

14   Michigan, appointed pursuant to the provisions of Title

15   28, United States Code, Section 753, do hereby certify

16   that the foregoing pages 1-37, inclusive, comprise a

17   full, true and correct transcript taken in the matter of

18   LaSalle Town Houses, et al versus City of Detroit, et

19   al, 12-cv-13747 on Thursday, July 11, 2013.

20

21

22              /s/Merilyn J. Jones
                 Merilyn J. Jones, CSR, RPR
23              Federal Official Reporter
                 231 W. Lafayette Boulevard, Suite 123
24              Detroit, Michigan  48226

25   Date: November 5, 2013