# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

| | )  |
|---|---|
| In re | ) Chapter 9 |
| | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) |

## MOTION OF THE OBJECTORS FOR (I) CLARIFICATION REGARDING THE PURPOSE OF THE HEARING FOR DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO ENTER INTO AND PERFORM UNDER CERTAIN TRANSACTION DOCUMENTS WITH THE PUBLIC LIGHTING AUTHORITY AND GRANTING OTHER RELATED RELIEF AND (II) LEAVE TO CONDUCT LIMITED DISCOVERY

The Objectors[1] submit this motion for (i) clarification of the purpose of the hearing set for *Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to Enter Into and Perform Under Certain Transaction Documents with the Public Lighting Authority and (II) Granting Other Related Relief* [Docket No. 1341] (the "PLA Motion"); and (ii) leave to conduct limited discovery relating to the PLA Motion pursuant to Local Rule 7026-3 of the United States Bankruptcy Court of the Eastern District of Michigan. In support of this motion, the Objectors respectfully represent as follows:

---

[1] Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (collectively, "Syncora"), Ambac Assurance Corporation, and Michigan Counsel 25 of the American Federation of State, County and Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees join in this motion.

## BACKGROUND

1. On October 23, 2013, the City of Detroit (the "City") filed a motion requesting authorization pursuant to section 364(c) of the Bankruptcy Code to pledge approximately $12.5 million of its annual utility tax revenues to secure the Public Lighting Authority's (the "PLA") issuance of approximately $153 million of debt to fund the City's public lighting system upgrade (the "PLA Transaction"). (PLA Mot. ¶ 17). The PLA Motion also requests that the Court find that the PLA Transaction constitutes a "good faith" financing transaction under section 364(e) of the Bankruptcy Code. (*Id.*)

2. The transaction structure, broadly, is as follows: the Michigan Finance Authority (the "MFA") first issues certain bonds ("MFA Bonds") to third party lenders. (PLA Mot. ¶ 6.) The proceeds from this sale are then used to purchase approximately $153 million of bonds issued by the PLA pursuant to Act 392 (the "Act 392 Bonds"). (PLA Mot. ¶ 6.) The City, in turn, pledges to the trustee for the Act 392 Bonds the lesser of (a) $12.5 million and (b) the total revenues generated by a utility tax which the City continues to levy pursuant to MCL §§ 141.1151 to 141.1177 ("Act 100"). This pledge is provided pursuant to a trust agreement and Act 392. It requires the transfer of all of the City's right, title, and interest in the utility tax to the trustee for the Act 392 Bonds and is the primary source for repayment of the Act 392 bonds. (PLA Mot. ¶ 7.) The lighting improvements will

be financed with the proceeds from a $60 million "bridge loan," and subsequently the Act 392 bonds. (Ex. 6.1 to PLA Mot. p 22.)

3. The financing is intended to support a short term and long term plan for implementation, which is described on two pages of the Public Authority Lighting Plan in general terms. (Ex. 6.1 to PLA Mot. pp. 23–24.) The operation and maintenance of the City's lighting infrastructure is the subject of an operations and maintenance agreement ("O&M Agreement") over which negotiations have not yet begun. (Ex. 6.1 to PLA Mot. p 22.) The City's Lighting Plan states that it anticipates that it will pay for operations, maintenance, and PLA administrative costs with $11–12 million a year from the City's General Fund.[2] (*Id.*)

4. The City claims that the PLA Transaction is necessary "to finance the cost to construct, improve, enlarge, reduce or extend the City's Public Lighting System for the benefit of the City." (PLA Mot. ¶ 6.) The City also suggests that "it is well known that the City and its residents suffer from the City's inability to maintain the street light system," and as such the PLA Transaction represents the "best (and perhaps only) opportunity to remedy this public safety concern." (PLA Mot. ¶ 21.)

5. The PLA Transaction is a large transaction that may adversely affect the position of creditors of the City because it contemplates the diversion of a

---

[2] However, the proposed O&M Agreement itself caps the City's general fund contribution to $8,024,000. (Ex. 6.2 to DIP Mot. p 8.)

3

significant source of the City's revenues. For this reason and others, Syncora has submitted its Limited Objection to the PLA Motion which explains the numerous concerns regarding the PLA Transaction [Doc. No. 1557]. As of the filing of this motion, Ambac Assurance Corporation, FMS Wertmanagement AöR, Michigan Council 25 of the American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees ("AFSCME"), and Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A., and Erste Europäische Pfandbrief- und Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A. (collectively "EEPK") (collectively, the "Objectors") have joined in Syncora's Limited Objection.

6. The Court issued a Notice of Hearing regarding the PLA Motion [Doc. No. 1579] setting a hearing date for the PLA Motion for November 27, 2013. There is no indication of whether this hearing will be evidentiary in nature. The Objectors now bring this motion to clarify the purpose of the November 27 hearing and to seek leave to conduct limited discovery related to the PLA Transaction.

## JURISDICTION

7. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4

13-53846-tjt    Doc 1638    Filed 11/11/13    Entered 11/11/13 20:36:33    Page 4 of 13

## RELIEF REQUESTED

8.  The Objectors respectfully requests the entry of an order substantially in the form attached hereto as <u>Exhibit 1</u> (i) clarifying the purpose of the hearing on the PLA Motion and (ii) granting the Objectors leave to conduct limited discovery relating to the PLA Motion.

## BASIS FOR RELIEF

**A.  Clarification of the Purpose of the Hearing on the PLA Motion**

9.  The hearing on the PLA Motion was set by this Court for November 27, 2013 [Doc. No. 1579]. However, there is no indication whether this hearing will be evidentiary in nature. The Objectors believe they will be prejudiced in their ability to participate in a comprehensive hearing on the PLA Motion if the hearing is held prior to their ability to conduct discovery with respect to the PLA Transaction. Accordingly, the Objectors respectfully request that the Court clarify the purpose of the November 27, 2013 hearing.

**B.  The Objectors' Request for Leave to Seek Limited Discovery Relating to the PLA Motion.**

10.  Local Bankruptcy Rule 7026-3 states that "[d]iscovery in a contested matter is permitted only upon a court order for cause shown." E.D. Mich. LBR 7026-3. The Objectors submit that, in this case, good cause exists for limited discovery surrounding the PLA Motion.

11. Courts consider the following factors to determine whether the terms of a postpetition financing transaction under section 364 of the Bankruptcy Code are appropriate: (a) whether the proposed transaction is an exercise of the debtor's reasonable business judgment; (b) whether alternative financing is available on any other basis; (c) whether the proposed transaction is in the best interests of both the estate and its creditors; (d) whether any better offers, bids, or timely proposals are before the court; (e) whether the transaction is necessary, essential, and appropriate to preserve estate assets and for the continued operation of a debtor's business; (f) whether the terms of the proposed financing are fair, reasonable, and adequate given the circumstances; and (g) whether the proposed transaction was negotiated in good faith and at arm's length. *In re Farmland Industries, Inc.*, 294 B.R. 855, 879–80 (Bankr. W.D. Mo. 2003). Discovery is necessary in order to competently assess whether the PLA Transaction meets these requirements.

12. *First*, the Objectors and other creditors have little to no substantive information regarding the negotiation and structuring of the PLA Transaction. The City seeks to secure an order that provides that section 364(e) of the Bankruptcy Code, which states that the negotiations related to this transaction were the result of good faith, arm's length negotiations, applies to and protects the PLA Transaction. (Ex. 1 to PLA Mot. ¶ E.) The City states it needs this determination in order to secure financing from MFA bond buyers in the face of potential appeal

6

13-53846-tjt    Doc 1638    Filed 11/11/13    Entered 11/11/13 20:36:33    Page 6 of 13

of any potential Court order. (PLA Mot. ¶ 25.) However, the PLA Motion does not provide any meaningful information regarding the negotiations among the PLA, MFA, City, and prospective purchasers. Discovery is required to assess whether the negotiations of the PLA Transactions were conducted in good faith.

13. *Second*, the City does not explain in the PLA Motion whether it entertained alternate lighting or financing proposals or whether any alternative proposals existed. The City claims that PLA Transaction was the "best (and perhaps only) opportunity" to address the City's lighting concerns. (PLA Mot. ¶ 21.) However, it does not specify any alternative proposals it entertained or why the PLA Transaction is superior to other proposals. Discovery is required to assess whether the PLA Transaction was in fact the best opportunity to address the City's concerns.

14. *Third,* the PLA Motion does not specify the basis for the necessity of the PLA Transaction or nature of the relationship between the PLA Transaction and the City's other initiatives or crime problems. In fact, the City does not provide any detailed information regarding the costs and benefits associated with its plan for the City's lighting or the ultimate scope of the improvements to be made using the proceeds of the PLA Transaction. In order to assess the necessity of the transaction, and consequently the PLA Transaction's value to the City, its

creditors, and other stakeholders, discovery regarding the City's plan and objectives for the use of the PLA Transaction's proceeds is required.

15. *Fourth,* the PLA Motion and exhibits are unclear as to the actual cost of and other relevant details of the PLA Transaction. For instance, the PLA Motion does not disclose the amount of borrowing or the interest rate. The Lighting Plan states that the borrowing will be $153 million and the budget attached to the plan contemplates an approximately 7.5% interest rate. (App. G to Ex. 6.1 to DIP Mot. p 2.) However, neither makes clear whether these amounts are contemplated based on the lighting needs or the contemplated permitted debt service payments. Further, the City's Proposal to Creditors contemplated that any PLA plan would move operations and maintenance costs to the Public Lighting Authority. (*See* Ex. B to Dec. of Kevyn D. Orr p 43[Doc. No. 11].) However, the documents are unclear as to the City's full continuing contribution. The O&M Agreement indicates that the City will not pay more than approximately $8 million for operational and maintenance costs. (Ex. 6.2 to DIP Mot. p 8.) However, the Lighting Plan contemplates this amount to be between $11 and $12 million, (Ex. 6.1 to PLA Mot. p 22), and this payment is not included as a source of revenues in the Plan's budget. (App. G to Ex. 6.1 to DIP Mot. p 2.) Consequently, discovery is needed to clarify the details of the City's plan and the costs of the PLA Transaction.

16. Given the limited information that is currently available to the Objectors on these issues, the Objectors request leave to seek limited discovery on topics such as the following:

(a) The process and analysis surrounding the PLA Transaction;

(b) The PLA Transaction's compliance with PA 436 and PA 392;

(c) The current lighting outages affecting the City and the necessity of fixing the lighting system;

(d) The intended use of the proposed proceeds of the PLA Transaction.

The Objectors may also request depositions of:

(a) Odis Jones, the Executive Director of the Public Lighting Authority;

(b) Parties that structured and negotiated the PLA Transaction on behalf of the City, the PLA, and the Michigan Finance Authority.

## STATEMENT OF CONCURRENCE SOUGHT

17. Local Bankruptcy Rule 9014-1 provides that "in a bankruptcy case unless it is unduly burdensome, the motion shall affirmatively state that concurrence of opposing counsel in the relief sought has been requested on a specified date and that the concurrence was denied." Local Rule 9014-1(g).

18. Counsel for Syncora sought concurrence from opposing counsel for the relief requested in this motion on November 11, 2013. Counsel for the City agreed that the Objectors were entitled to certain discovery regarding the PLA

Motion. Specifically, counsel for the City stated that it had no objection to the discovery regarding the process and negotiation of the PLA Transaction. The City also stated that it would not move to quash or object to any of the Objectors' proposed depositions.

19. However, counsel for the City stated that the City would object to any discovery relating to the City's need for, and intended use of, the PLA transaction proceeds. According to the City's counsel, information relating to the City's need for, and intended use of, the PLA transaction proceeds is irrelevant and not something that the Court can consider.

## **RESERVATION OF RIGHTS**

20. The Objectors file this motion without prejudice or waiver of its rights under the Bankruptcy Code.

WHEREFORE, the Objectors respectfully request that this Court (a) enter an order substantially in the form attached hereto as Exhibit 1, granting the relief sought herein; and (b) grant such other and further relief as the Court may deem proper.

[*Remainder of this page intentionally left blank.*]

Dated:  November 11, 2013    /s/ *Stephen C. Hackney*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200

    - and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS LLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone:  (248) 646-5070
Facsimile:   (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*

By: */s/ Carol Connor Cohen*
Carol Connor Cohen
Caroline Turner English
**ARENT FOX LLP**
1717 K Street, NW
Washington, DC  20036-5342
Telephone: (202) 857-6054
E-mail:  Carol.Cohen@arentfox.com

-and-

David L. Dubrow
Mark A. Angelov
**ARENT FOX LLP**
1675 Broadway
New York, NY  10019
Telephone: (212) 484-3900

11

-and-

SCHAFER AND WEINER, PLLC
Daniel J. Weiner (P32010)
Brendan G. Best (P66370)
40950 Woodward Ave., Suite 100
Bloomfield Hills, MI  48304
Telephone:  (248) 540-3340
E-mail:  bbest@schaferandweiner.com

*Attorneys for Ambac Assurance Corporation*

**LOWENSTEIN SANDLER LLP**
By: /s/ *Sharon L. Levine*
Sharon L. Levine, Esq.
John K. Sherwood, Esq.
Philip J. Gross, Esq.
Keara M. Waldron, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-6247 (Facsimile)
slevine@lowenstein.com
jsherwood@lowenstein.com
pgross@lowenstein.com
kwaldron@lowenstein.com

-and-

Herbert A. Sanders, Esq.
THE SANDERS LAW FIRM PC
615 Griswold St., Suite 913
Detroit, MI 48226
(313) 962-0099 (Telephone)
(313) 962-0044 (Facsimile)
hsanders@miafscme.org

-and-

12

Richard G. Mack, Jr., Esq.
Miller Cohen, P.L.C.
600 West Lafayette Boulevard
4th Floor
Detroit, MI 48226-3191

*Counsel to Michigan Council 25 of the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO and Sub-Chapter 98, City of Detroit Retirees*