UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

**MOTION OF THE OBJECTORS FOR LEAVE TO CONDUCT LIMITED DISCOVERY IN CONNECTION WITH MOTION OF THE DEBTOR FOR A FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 364(C)(1), 364(C)(2), 364(E), 364(F), 503, 507(A)(2), 904, 921 AND 922 (I) APPROVING POST-PETITION FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY CLAIM STATUS AND (III) MODIFYING AUTOMATIC STAY**

The Objectors[1] submit this motion for leave to conduct limited discovery relating to the *Motion of the Debtor for a Final Order Pursuant to 11 U.S.C. §§105, 362, 364(c)(1), 364(c)(2), 364(e), 364(f), 503, 507(a)(2), 904, 921 and 922 (I) Approving Post-Petition Financing, (II) Granting Liens and Providing Superpriority Claim Status and (III) Modifying Automatic Stay* (the "DIP Motion") pursuant to Local Rule 7026-3 of the United States Bankruptcy Court of the Eastern District of Michigan. In support of this motion, the Objectors respectfully represent as follows:

---

[1] Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (collectively, "Syncora"). Ambac Assurance Corporation, and Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A., and Erste Europäische Pfandbrief- und Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A. (collectively "EEPK"), and David Sole, Party in Interest, join in this motion.

## BACKGROUND

1.  On November 5, 2013, the City of Detroit (the "City") filed the DIP Motion, requesting approval for postpetition financing in the form of two series of secured bonds: the Swap Termination Bonds and the Quality of Life Bonds,[2] described generally as "financial recovery bonds" under Michigan law. (DIP Mot. ¶ 42.) The City intends to utilize the DIP financing proceeds to 1) terminate certain Swap Agreements pursuant to the Forbearance Agreement[3] and 2) to advance "certain key investment initiatives of the City." (DIP Mot. ¶ 6.)

2.  The terms of the financing are, broadly, as follows: the sum of the financing is $350 million, with the proceeds split between bonds intended to finance the termination of certain Swap Agreements, and the balance consisting of bonds to finance certain City improvement projects. (DIP Mot. ¶ 47.) The DIP financing is projected to result in anywhere from $110 million in Quality of Life financing and $240 million in Swap Termination financing depending on the price of the Swap Termination. (DIP Mot. ¶ 16.) The interest rate is 250 basis points plus 1-month LIBOR and the purchaser, Barclays Capital Inc. ("Barclays"), will

---

[2] Capitalized terms not defined in this motion have the meanings given to them in the DIP Motion.

[3] The Forbearance Agreement is the subject of another contested matter in these Bankruptcy proceedings. Pursuant to the Court's November 7, 2013 Order, the hearing on a motion to assume the Forbearance Agreement is scheduled to occur at the same time as the hearing related to the DIP Motion. [Doc. No. 1564]. Multiple parties have filed objections to the City's motion to assume the Forbearance Agreement [Doc. No. 157].

receive a first priority lien on the City's casino revenues[4] and a second priority lien on the City's income tax revenues. (*Id.*) Barclays will also purportedly receive super-priority status over administrative expenses, postpetition claims, and all prepetition unsecured claims. (*Id.*)

3. The City seeks to use the proceeds of the Swap Termination Bonds to exercise an option under the Forbearance Agreement that allows the City to terminate the Swaps. (DIP Mot. ¶ 9–11.) Though the status of the Forbearance Agreement is in question and will be addressed by this Court at a hearing on December 10, 2013, the City has stated in its DIP Motion that the City will save "approximately $50 million in obligations owing" as a result of the City's termination of the Swap Agreements pursuant to the Forbearance Agreement. (DIP Mot. ¶ 15.)

4. The City asserts that the Quality of Life Bond proceeds will be used for some, but not all, of the City's reinvestment program. (DIP Mot. ¶ 22.) The City has also stated that "the City may ultimately decide to apply the proceeds of the Quality of Life Financing to pursue an array of specific projects," but that the City's current focus includes public safety, information technology upgrades, and blight removal. (DIP Mot. ¶ 23.)

---

[4] This lien is currently held by parties to the Swap transaction that the City seeks to terminate via the DIP financing. *See* Ex. 6 p 1 to Debtor's Mot. to Assume Forbearance Agreement [Doc. No. 157].

5. In the course of the solicitation and negotiation of the DIP financing, the City has stated that it "formally approached over 50 potential financing sources" and eventually received 16 lending proposals. (DIP Mot. ¶ 35–36.) Of these 16, the City chose four "Final Prospective Lenders." According to the City, Barclays' proposal was the "best available." (DIP Mot. ¶ 39.)

6. The City claims that it sought approval from the City Council and Emergency Loan Board for the DIP financing transaction. (DIP Mot. ¶ 41.) On October 25, 2013, the City Council rejected the City's proposal on October 25, 2013. (DIP Mot. ¶ 45.) The City then submitted the proposal to the Emergency Loan Board simultaneously with its submission of the DIP Motion. (*Id.*)

7. On October 23, 2013, approximately two weeks prior to the filing of the City's DIP Motion, Syncora sought the Court's permission to seek more information about the DIP financing pursuant to Bankruptcy Rule 2004 ("2004 Motion").[5] On November 7, two days after it filed its DIP Motion, the City filed an objection to Syncora's 2004 Motion ("2004 Objection").[6]

---

[5] *Motion of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. for Authority to Issue Document and Deposition Subpoenas to the Debtor, the Emergency Manager, and Certain of the Debtor's Advisors Pursuant to Federal Rule of Bankruptcy Procedure 2004* [Docket No. 1342].

[6] *City of Detroit's Objection to Rule 2004 Motion of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (D.E. 1342)* [Doc. No. 1568].

8. On November 7, 2013, this Court scheduled a hearing on the DIP Motion for December 10, 2013 [Doc. No. 1564]. Objections to the City's DIP Motion are due on November 22, 2013. (*Id.*) The Objectors intend to file objections to the City's DIP Motion.

## JURISDICTION

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

10. The Objectors respectfully request the entry of an order granting the Objectors leave to conduct limited discovery relating to the DIP Motion.

## BASIS FOR RELIEF

**A. The Objectors' Request for Leave to Conduct Limited Discovery Relating to the DIP Motion.**

11. Local Rule 7026-3 states that "[d]iscovery in a contested matter is permitted only upon a court order for cause shown." E.D. Mich. LBR 7026-3. The Objectors submit that, in this case, good cause exists for limited discovery surrounding the DIP Motion.

12. Courts consider the following factors to determine whether the terms of a postpetition financing transaction under section 364 of the Bankruptcy Code are appropriate: (a) whether the proposed transaction is an exercise of the debtor's

13-53846-tjt    Doc 1640    Filed 11/11/13    Entered 11/11/13 22:12:26    Page 5 of 14

reasonable business judgment; (b) whether alternative financing is available on any other basis; (c) whether the proposed transaction is in the best interests of both the estate and its creditors; (d) whether any better offers, bids, or timely proposals are before the court; (e) whether the transaction is necessary, essential, and appropriate to preserve estate assets and for the continued operation of a debtor's business; (f) whether the terms of the proposed financing are fair, reasonable, and adequate given the circumstances; and (g) whether the proposed transaction was negotiated in good faith and at arm's length. *In re Farmland Industries, Inc.*, 294 B.R. 855, 879–80 (Bankr. W.D. Mo. 2003). Here, discovery is necessary in order to competently assess whether the DIP financing proposed by the City in its DIP Motion meets these requirements.

13. Syncora sought permission to investigate the terms of the DIP financing approximately two weeks in advance of the City's DIP Motion, after the proposal was made available to the City Council. In its 2004 Objection, the City suggests that Syncora improperly used Rule 2004 to "jump the queue" in seeking this information. (2004 Obj. p 2.) However, in its DIP Motion, the City states that "time is of the essence with respect to the relief sought in this Motion." (DIP Mot. ¶ 18.) Notwithstanding the City's selective approach to the importance of timing in relation to its DIP financing, discovery remains necessary with respect to

6

significant aspects of the DIP financing even following the City's filing of the DIP Motion.

14. *First*, Syncora and other creditors have little information regarding the solicitation and negotiation of the DIP financing. The City's statements in its motion and attached declarations are general and do not provide sufficient information to evaluate the propriety of the City's solicitation and negotiation process. For example, the City states that the process it engaged in was "robust and subject to significant market testing." (DIP Mot. ¶ 35.) However, the City primarily recites the number of institutions it approached for financing as evidence that its process was robust. (*Id.*) It states that it believes that the lending proposals from the final four lenders represented the best potential structures and that the final proposal it chose was the best in terms of "overall pricing, certainty of closing and other structural aspects." (DIP Mot. ¶ 39.) However, the City does not provide sufficient detail regarding the other proposals to evaluate whether those proposals were superior. As a result, further discovery is necessary to evaluate whether the process the City engaged in was reasonable, in good faith, at arm's length, and whether the alternative proposals the City entertained were inferior to the Barclays proposal.

15. *Second*, the Objectors and other creditors have little information regarding the City and Emergency Manager's compliance with P.A. 436. Under

7

P.A. 436, the City was required to seek approval from the City Council and the Emergency Loan Board before it could incur any debt. (DIP Mot. ¶ 41.) To date, the City Council has rejected the proposal and the Emergency Loan Board has not released an opinion. (DIP Mot. ¶ 41.) In the first instance, the City's authorization to borrow money depends on its meeting the requirements of P.A. 436. Moreover, compliance with this legislation is also central to the City's consideration of the best interests of its "estate," the public, and its creditors. The City's statements regarding its compliance and its steps to evaluate the requirements of P.A. 436 are thus essential to determine whether the City is eligible to receive financing. Thus, good cause exists for the Objectors to conduct discovery relating to the City's compliance with PA 436.

16. *Third*, to date, the City has failed to provide any detailed information regarding the use of and need for the proceeds from the Quality of Life Bonds. Though the City notes that these expenditures will be part of its desire to "aggressively pursue" reinvestment initiatives in the City, the City alleges these proceeds will most likely be used to advance "investments in blight removal, public safety and technology infrastructure." (DIP Mot. ¶ 23.) However, the City concedes that it may change the use of the proceeds at any time, and does not articulate why it needs these proceeds specifically at this time. (*Id.*) Because the use of financing by the City can be approved only when it is necessary and

8

reasonable, the Objectors are entitled to understand exactly how the City intends to use the proceeds from the Quality of Life bonds and why these proceeds are needed. Given that the City has not yet provided that information, there is good cause for discovery on this issue.

17. Given the limited information that is currently available to the Objectors on the aforementioned issues, the Objectors request leave to seek limited discovery on topics to include the following:

(a) The DIP solicitation process;

(b) The DIP negotiation process;

(c) The process the City undertook to comply with PA 436;

(d) The uses the City contemplates for the proceeds of the sale of Quality of Life notes;

(e) All documents and communication relating to the Barclay's DIP, including but not limited to the Fee Letter, the Engagement Letter, and any other documents relating to any fees the City has agreed to pay to Barclays in connection with the DIP and/or any exit financing, and any documents made available to Barclays or other potential Bondholders via a virtual data room established in connection with the Post-Petition Facility.

The Objectors may also request depositions of:

(a) James Doak, an employee of Miller Buckfire;

(b) Charles Moore, an employee of Conway Mackenzie;

(c) A representative of Barclays;

(d) A representative of Ernst and Young;

(e) A member of the Detroit City Council;

(f) A representative of the Swap Counterparties.

## STATEMENT OF CONCURRENCE SOUGHT

18. Local Bankruptcy Rule 9014-1 provides that "in a bankruptcy case unless it is unduly burdensome, the motion shall affirmatively state that concurrence of opposing counsel in the relief sought has been requested on a specified date and that the concurrence was denied." Local Rule 9014-1(g).

19. Counsel for Syncora sought concurrence from opposing counsel for the relief requested in this motion on November 11, 2013. Counsel for the City agreed that the Objectors were entitled to certain discovery regarding the DIP Motion. Specifically, counsel for the City stated that it had no objection to the scope of discovery contained in Syncora's 2004 Motion (*i.e.*, the process and negotiation surrounding the DIP Financing). The City also stated that it would not move to quash or object to any of the Objectors' proposed depositions.

20. However, counsel for the City stated that the City would object to any discovery relating to the City's need for, or intended use of, the DIP Financing proceeds. According to the City's counsel, information relating to the need for and

10

13-53846-tjt    Doc 1640    Filed 11/11/13    Entered 11/11/13 22:12:26    Page 10 of 14

use of the DIP Financing proceeds is irrelevant and not something that the Court can consider.

## **RESERVATION OF RIGHTS**

21. The Objectors file this motion without prejudice or waiver of their rights under the Bankruptcy Code.

WHEREFORE, the Objectors respectfully request that this Court (a) enter an order substantially in the form attached hereto as Exhibit 1, granting the relief sought herein; and (b) grant such other and further relief as the Court may deem proper.

*[Remainder of this page intentionally left blank.]*

Dated: November 11, 2013  /s/ *Stephen C. Hackney*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS LLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*

By: */s/ Carol Connor Cohen*
Carol Connor Cohen
Caroline Turner English
**ARENT FOX LLP**
1717 K Street, NW
Washington, DC 20036-5342
Telephone: (202) 857-6054
E-mail: Carol.Cohen@arentfox.com

-and-

David L. Dubrow
Mark A. Angelov
**ARENT FOX LLP**
1675 Broadway
New York, NY 10019
Telephone: (212) 484-3900

-and-

SCHAFER AND WEINER, PLLC
Daniel J. Weiner (P32010)
Brendan G. Best (P66370)
40950 Woodward Ave., Suite 100
Bloomfield Hills, MI 48304
Telephone: (248) 540-3340
E-mail: bbest@schaferandweiner.com

*Attorneys for Ambac Assurance Corporation*

By: */s/ Vincent J. Marriott, III*
Howard S. Sher
**JACOB & WEINGARTEN, P.C.**
Somerset Place
2301 W. Big Beaver Road, Suite 777
Troy, Michigan 48084
Telephone: (248) 649-1200
Facsimile: (248) 649-2920
E-mail: howard@jacobweingarten.com

-and-

Vincent J. Marriott, III
**BALLARD SPAHR LLP**
1735 Market Street, 51st Flr.
Philadelphia, PA 19103
Phone: 215.864.8236
Fax: 215.864.9762
Email: marriott@ballardspahr.com

-and-

Matthew G. Summers
**BALLARD SPAHR LLP**
919 North Market Street, 11th Floor
Wilmington, Delaware 19801
Telephone: (302) 252-4428

Facsimile: (410) 361-8930
E-mail: summersm@ballardspahr.com

*Attorneys for Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A., and Erste Europäische Pfandbrief- und Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A. (collectively "EEPK")*

JEROME D. GOLDBERG, PLLC

By: /s/ *Jerome D. Goldberg*
Jerome D. Goldberg (P61678)
2921 East Jefferson, Suite 205
Detroit, MI 48207
Phone: 313-393-6001
Fax: 313-393-6007
Email: apclawyer@sbcglobal.net

*Attorney for David Sole, Party in Interest*

14