UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re<br><br>CITY OF DETROIT, MICHIGAN,<br><br>Debtor. | No. 13-53846<br><br>Chapter 9<br><br>HON. STEVEN W. RHODES |

**STATE OF MICHIGAN'S
BRIEF REGARDING "GOOD FAITH NEGOTIATIONS"**

The State of Michigan, through its undersigned counsel, submits this brief pursuant to the Court's Notice Regarding Briefing on "Good Faith Negotiations." [Dkt. #1353].

**INTRODUCTION**

The Court invited parties to file briefs on: (1) whether the case law that addresses good faith negotiations under 11 U.S.C. §§ 1113 and 1114, and in labor law, should apply when determining eligibility under 11 U.S.C. § 109(c), and (2) if so, how that case law suggests that the issue should be resolved in this case.

As discussed more fully below: The "good faith negotiations" standards developed by case law under §§ 1113 and 1114 and labor law do not apply in determining whether a debtor has complied with § 109(c)(5)(B) for several reasons. First, although it has had numerous opportunities to do so, Congress elected not to make § 1113 and 1114 applicable to Chapter 9 cases. Second, §§ 1113 and 1114 set out requirements for a Chapter 11 corporate debtor's postpetition rejection or modification of collective bargaining agreements and retiree health benefits, while § 109(c)(5)(B) is one of four alternative prepetition methods by which a

municipality may qualify for Chapter 9[1]. Standards and procedures developed for postpetition rejection of collective bargaining agreements and modification of retiree benefits – which relate only to *certain* types of creditors – should not be applied to a prepetition method for negotiating claims of *all* types of creditors. Third, even if § 109(c)(5)(B) could be treated as tantamount to a rejection of a collective bargaining agreement, the appropriate standard to apply would be the standard set out in *National Labor Relations Board v. Bildisco & Bildisco*, 465 U.S. 513 (1983), not the procedures set out in § 1113. Finally, compliance with § 109(c)(5)(B) is determined in accordance with federal law and thus, collective bargaining standards under state labor law should not be applied to the evaluation of compliance with § 109(c)(5)(B). None of the courts that have considered the issue have applied labor laws to § 109(c)(5)(B) but rather, have all applied more general standards of "good faith."

Applying the good faith standards that have been developed under case law specifically addressing § 109(c)(5)(B), the City has fully complied with the "good faith negotiation" requirement of § 109(c)(5)(B).

## ARGUMENT

**I.  Standards developed by case law under §§ 1113 and 1114 and labor law do not apply in determining whether a debtor has complied with § 109(c)(5)(b).**

**A.  Sections 1113 and 1114 are inapplicable to Chapter 9.**

Section 901 designates those sections of other chapters of the Bankruptcy Code that are applicable in a Chapter 9 case. Sections 1113 and 1114 are not designated in Section 901 and

---

[1] Section 109(c)(5) is written in the disjunctive, meaning that a debtor proves its eligibility by demonstrating that it complied with just one of the four alternatives set out in § 109(c)(5). *See, In re Valley Health System*, 383 B.R. 156, 162 (Bankr. C.D. Cal. 2008). Thus, a debtor is not necessarily required to comply with the "good faith negotiations" provisions of § 109(c)(5)(B) provided that it demonstrates compliance with an alternative provision, e.g., that "negotiation is impracticable" under § 109(c)(5)(C). Further, a debtor may qualify under § 109(c)(5)(C) by showing that negotiations were impracticable without first having engaged in prepetition good faith negotiations with its creditors. *Valley Health System*, 383 B.R. at 163.

thus, under the plain language of §901(a), §§ 1113 and 1114 are not applicable in a Chapter 9 case in any context. 11 U.S.C. § 901(a).

Moreover, it is clear from the legislative history of §§ 1113 and 1114 that Congress did not intend these sections to apply in a Chapter 9 case. In *Bildisco*, the Supreme Court held that a Chapter 11 debtor could modify or reject collective bargaining agreements pursuant to § 365, that collective bargaining agreements were not enforceable in bankruptcy prior to rejection, and because collective bargaining agreements are unenforceable, a debtor is not required to comply with the collective bargaining provisions of § 8(d) of the National Labor Relations Act (NLRA) prior to rejection. *Bildisco*, 465 U.S. at 522, 533. In response to the *Bildisco* holding, in 1984, Congress enacted § 1113 pursuant to the Bankruptcy Amendments and Federal Judgeship Act of 1984. *See*, *In re County of Orange*, 179 B.R. 177, n. 14 (Bankr. C.D. Cal. 1995); Pub. L. No. 98-353 § 541(a) (1984). Section 1114 was added to the Bankruptcy Code by the Retiree Benefits Bankruptcy Protection Act of 1988. Pub. L. No. 100-334, § 2 (1988). Congress did not, however, make either § 1113 or § 1114 applicable to Chapter 9 at the times that these sections were respectively added to the Bankruptcy Code, nor subsequently, even though it had opportunities to do so. *See*, *County of Orange*, 179 B.R. at 183 ("The legislative history of the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, 103d Cong., 2d Sess., 108 Stat. 4106, indicates that Congress contemplated enacting a '§ 1113-like' statute for Chapter 9… This section would have forced a Chapter 9 debtor to comply with its collective bargaining agreement; however, it was never enacted into law."); *see also* the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No 109-8 (2005) (revised § 901(a) to make §§ 555, 556, 559, 560, 561, 562 and 1123(d) applicable in Chapter 9, yet did not add §§ 1113 and 1114).

3

This legislative history evidences Congress' intention not to make §§ 1113 and 1114 applicable to any power granted to, or action taken by, a Chapter 9 debtor in any context.

> **B.  Standards and procedures developed for postpetition rejection of collective bargaining agreements and modification of retiree benefits by a Chapter 11 corporate debtor should not be applied to eligibility standards in a Chapter 9 case.**

Before a Chapter 11 debtor can seek postpetition rejection or modification of a collective bargaining agreement or retiree benefits, the procedures set out in §§ 1113 and 1114 require a Chapter 11 corporate debtor to, among other things, make a proposal to the authorized representative of the effected employees or retirees and to provide the representative with such information as is necessary for the representative to evaluate the proposal 11 U.S.C. § 1113(b)(1)(A) and (B); 11 U.S.C. § 1114(f)(1)(A) and (B), and "meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications" 11 U.S.C. § 1113(b)(2); 11 U.S.C. § 1114(f)(2). The authorized representative may refuse to accept the proposal only upon a showing of "good cause." 11 U.S.C. § 1113(c)(2); 11 U.S.C. § 1114(g)(2). However, in recognition of a municipality's unique character as a creation of a state, Congress chose not to impose these strict procedural requirements on a Chapter 9 debtor before the debtor may seek postpetition rejection or modification. *In re City of Stockton*, 478 B.R. 8, 23 (Bankr. E.D. Cal. 2012) (in omitting §§ 1113 and 1114 from § 901(a), Congress "[took] care not to overstep the Tenth Amendment constraint"); *In re City of Desert Hot Springs*, 399 F.3d 782, 789 (9th Cir. 2003) ("Congress, in an effort to avoid possible constitutional problems, designed Chapter 9 of the bankruptcy code in a manner much different from the other chapters. Many of the protections afforded to creditors in the other chapters are missing in chapter 9.").

Because the negotiation procedures of §§ 1113 and 1114 cannot be imposed on a Chapter 9 debtor even when the debtor seeks postpetition rejection or modification, it is axiomatic that these negotiation procedures cannot be imposed on a Chapter 9 debtor's prepetition negotiations with its creditors under § 109(c)(5)(B). In fact, no court has ever applied the specific §§ 1113 and 1114 procedures to its evaluation of a Chapter 9 debtor's compliance with the good faith negotiations requirements of § 109(c)(5)(B) but instead, apply more general standards of good faith. *See, In re City of Vallejo*, 408 B.R. 280 (9th Cir. BAP 2009); *In re Pierce County Housing Authority*, 414 B.R. 702 (Bankr. W.D. Wash. 2009); *In re Ellicott School Building Authority*, 150 B.R. 261 (Bankr. D. Colo. 1992); *In re Cottonwood Water and Sanitation District*, 138 B.R. 973 (Bankr. D. Colo. 1992); *In re Sullivan County Regional Refuse Disposal District*, 165 B.R. 60 (Bankr. D. N.H. 1994); *In re City of Stockton*, 493 B.R. 772 (Bankr. E.D. Cal. 2013).

Further, even in Chapter 11 cases, §§ 1113 and 1114, by their express terms, apply only to collective bargaining agreements and retiree benefits. Since § 109(c)(5)(B) requires the Chapter 9 debtor to negotiate with all of its creditors – of all types, not just represented employees and retirees – regarding impairment of their claims, it would be illogical to impose the collective bargaining – type procedures of §§ 1113 and 1114 on § 109(c)(5)(B).

**C.   If § 109(c)(5)(b) is treated as tantamount to a rejection of a collective bargaining agreement, *Bildisco* is the appropriate standard to apply.**

In *Bildisco*, the Supreme Court held that collective bargaining agreements are subject to rejection under § 365. Congress enacted § 1113 to overturn application of *Bildisco* to Chapter 11 cases and provide specific procedures for the rejection of collective bargaining agreements in Chapter 11 cases. However, because § 1113 is inapplicable in a Chapter 9 case, *Bildisco* still applies to rejection of collective bargaining agreements in Chapter 9. *County of Orange*, 179

5

B.R. at 183; *Stockton*, 478 B.R. at 23; *In re City of Vallejo*, 432 B.R. 262, 270-272 (E.D. Cal. 2010) affirming *In re City of Vallejo*, 403 B.R. 72, 77-78 (Bankr. E.D. Cal. 2009).

Under *Bildisco*, a Chapter 9 debtor may reject a collective bargaining agreement "if the debtor can show that the collective-bargaining agreement burdens the estate, and that after careful scrutiny, the equities balance in favor of rejecting the labor contract." *Bildisco*, 465 U.S. at 526. *Bildisco* further requires that before authorizing rejection of a collective bargaining agreement "the Bankruptcy Court should be persuaded that reasonable efforts to negotiate a voluntary modification have been made and are not likely to produce a prompt and satisfactory solution." The Court further held that once a bankruptcy petition is filed, "a collective bargaining agreement is no longer immediately enforceable, and may never be enforceable again," and therefore, a debtor "need not comply with the [collective bargaining] provisions of § 8(d) [of the NLRA, 29 U.S.C. § 158(d)][2] prior to seeking the Bankruptcy Court's permission to reject the agreement."

Thus, if § 109(c)(5)(B) is treated as tantamount to the rejection of a collective bargaining agreement, the standards set out in *Bildisco* apply. Under *Bildisco*, a Chapter 9 debtor is required only to make "reasonable efforts to negotiate a voluntary modification" but is not required to engage in specific collective bargaining procedures developed under §§ 1113 and 1114 or labor laws.

**D.     Compliance with § 109(c)(5)(b) is determined in accordance with federal law.**

Although § 109(c)(2) requires application of state law, "[a]ll other eligibility questions under § 109(c) -- … [including] § 109(c)(5) creditor negotiation – and the good faith question under § 921(c) are federal questions based on, and created by, the federal Bankruptcy Code and

---

[2] The procedures of § 1113 and 1114 closely resemble the provisions of § 8(d) of the NLRA.

subject to a federal rule of decision …" *In re City of Stockton*, 475 B.R. 720, 729 (Bankr. E.D. Cal. 2012). Thus, rather than applying standards developed under labor laws[3], the Court should apply more general standards of good faith as other courts addressing the issue have done. *See, Vallejo*, *e.g.*, 408 B.R. 280; *Pierce County Housing Authority*, 414 B.R. 702; *Ellicott School Building Authority*, 150 B.R. 261; *City of Stockton*, 493 B.R. 772. None of these cases discussed, nor applied, labor law to determining whether the debtor engaged in good faith negotiations.

**II.  The City has fully complied with the "good faith negotiation" requirement of § 109(c)(5)(b).**

Applying the appropriate good faith standards that have been developed under case law specifically addressing § 109(c)(5)(B), as fully discussed in the City's *Memorandum in Support of Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code* [Dkt. #14] (the "Memorandum"), the City has fully complied with the "good faith negotiation" requirement of § 109(c)(5)(B).

"Prior to the commencement of this Chapter 9 proceeding, the City engaged in extensive good faith negotiations with various of its creditor constituencies." Memorandum, p. 54. The City convened a meeting on June 14, 2013 (the "June 14 Meeting") "which was attended by approximately 150 representatives of the City's bondholders, Bond Insurers, unions, pensioners and others." *Id*., p. 54. The City presented a proposal (the "June 14 Creditor Proposal") "for the purpose of engaging its creditors with respect to a consensual restructuring of the City's various classes of debt." *Id*., p. 54. Subsequent to the June 14 Meeting, the City held several separate meetings with various of its creditor constituencies. *Id*., pp. 55-59.

---

[3] The NLRA applies only to private employers, not public employers. *Associated Builders and Contractors, Inc. v. City of Seward*, 966 F.2d 492, 497 (9th Cir. 1992); *Crilly v. Southeastern Pennsylvania Transportation Authority*, 529 F.2d 1355, 1357 (3rd Cir. 1976).

Thus, the City negotiated, or attempted negotiations, with the various classes of creditors that it will seek to impair under a plan of adjustment and informed these creditor classes of the proposed treatment they would be accorded in connection with the City's restructuring (as set forth in the June 14 Creditor Proposal). Memorandum, p. 59. *See, e.g.*, *New York City Off-Track Betting Corp.*, 427 B.R. 256, 275 (Bankr. S.D.N.Y. 2010); *Vallejo*, 408 B.R. at 297 (§ 109(c)(5)(B) is satisfied where the debtor conducts "negotiations with creditors revolving around a proposed plan, at least in concept … [that] designates classes of creditors and their treatment ….").

The City has complied with the good faith negotiation requirements of § 109(c)(5)(B).

Respectfully submitted,

*/s/ Matthew Schneider*
Matthew Schneider
Chief Legal Counsel
Attorney for State of Michigan
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-3203
SchneiderM7@michigan.gov
[P62190]

Steven G. Howell
Dawn R. Copley
Special Assistant Attorneys General
Dickinson Wright PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226-3425
SHowell@dickinson-wright.com
[P28982]

Margaret A. Nelson
Assistant Attorney General

Attorneys for the State of Michigan

Dated: November 13, 2013