IN RE:                                                                          Chapter 9

City of Detroit, Michigan,                       Case No. 13-53846

                Debtor.                                Hon. Steven W. Rhodes

_____/

**THE DETROIT FIRE FIGHTERS ASSOCIATION, THE DETROIT
POLICE OFFICERS ASSOCIATION, THE DETROIT POLICE
LIEUTENANTS & SERGEANTS ASSOCIATION AND
THE DETROIT POLICE COMMAND OFFICERS ASSOCIATION
SUPPLEMENTAL TRIAL BRIEF ON GOOD FAITH NEGOTIATIONS IN
SUPPORT OF THEIR AMENDED OJBECTION TO DEBTOR'S
BANKRUPTCY PETITION AND STATEMENT OF QUALIFICATIONS
<u>UNDER 11 U.S.C. SECTION 109(c)</u>**

The Detroit Fire Fighters Association (the "DFFA"), the Detroit Police Officers Association (the "DPOA"), the Detroit Police Lieutenants & Sergeants Association (the "DPLSA") and the Detroit Police Command Officers Association (the "DPCOA") (collectively, the "Detroit Public Safety Unions"), through their counsel, Erman, Teicher, Miller, Zucker & Freedman, P.C., file this supplemental brief in accordance with this Court's Notice Regarding Briefing on "Good Faith Negotiations" [Docket No. 1353] in support of their Amended Objection to Debtor's Bankruptcy Petition and Statement of Qualifications under 11 U.S.C. Section 109(c) and state as follows:

## INTRODUCTION

On October 24, 2013, during the course of the eligibility trial, this Court invited the parties to address, through supplemental briefing, "(1) whether the case law that addresses good faith negotiations under 11 U.S.C. §§ 1113 and 1114, and labor law, should apply when determining eligibility under 11 U.S.C. §109(c)(2), and, (2) if so, how that case law suggests the issue should be resolved in this case." A central issue in this case is whether the City negotiated in good faith with the Detroit Public Safety Unions and other labor constituents when, after announcing its intention to impair their constitutionally protected, accrued, vested pension benefits at the June 14, 2013 meeting in which it presented its "Proposal for Creditors," Exhibits 43 and 44, it sought Chapter 9 bankruptcy protection only 35 days later after a series of brief and perfunctory meetings at which no negotiations occurred.

In justifying its actions, the City points to the facts that (1) under PA 436, MCL 141.1567(3), when Mr. Orr became the Emergency Manager under that act, its duty to bargain collectively with the Detroit Public Safety Unions was suspended and (2) the Detroit Public Safety Unions would not (and, in fact, as a matter of law, could not) agree to negotiate on behalf of their respective retirees. The Detroit Public Safety Unions respectfully suggest that, by its plain terms,

2

Section 109(c)(2) imposed an independent obligation on both the City and the Detroit Public Safety Unions to negotiate in good faith, and, under near universal principles of labor law, the City not only failed to meet that obligation and also successfully blocked the Detroit Public Safety Unions' efforts to do so.

## ARGUMENT

Assuming that the City could not "'cherry pick'" its way into bankruptcy by using PA 436 and the timing of the appointment of the Emergency Manager to write Section 109(c)(2) out of the Bankruptcy Code with regard to its active and essential public safety employees,[1] a brief review of state and federal labor law suggests that, both inside and outside of bankruptcy, there is a near universal, totality of the circumstances approach to evaluating a party's obligation of good faith in negotiations that was not met by the City in this case.

The Detroit Public Safety Unions have argued that the City did not negotiate as contemplated by the Bankruptcy Code, nor in any other context contemplated by the plain meaning of the word.

According to Black's Law Dictionary, 5th Ed, 1979:

> Negotiation is process of submission and consideration of offers until acceptable offer is made and accepted. Gainey v. Brotherhood of Ry. And S.S. Clerks, Freight Handlers, Exp. & Station Emp., D.C. Pa., 275 F.Supp. 292, 300. The deliberation, discussion or conference upon the terms of a proposed agreement; the act of settling or

---

[1] *See In re City of Stockton*, 478 B.R. 8, 16-17 (E.D. Cal. 2012) and cases cited therein.

arranging the terms and conditions of a bargain, sale or other business transaction.

Similarly, the record before the Court establishes that, under any definition of good faith in the labor context, the City's carefully planned and orchestrated acts, which largely stripped the Detroit Public Safety Unions of the ability to negotiate with the City through (i) the enactment of the referendum-proof PA 436, (ii) the timing of the appointment of Kevyn Orr under former PA 72, (iii) the refusal to negotiate with the Public Safety Unions after the effective date of PA 436 (Gurewitz Testimony), (iv) the blocking of Act 312 proceedings (Gurewitz Testimony, Exhibit 718) to prevent negotiations and to ensure that the collective bargaining agreements governing three of the four Detroit Public Safety Unions would expire by June 30, 2013 (Stipulation with City) prior to the chapter 9 filing[2] and (v) the City's acknowledged refusal to negotiate with the Detroit Public Safety Unions (based on the suspension of its duty to bargain under PA 436) regarding the City's proposal to significantly impair their constitutionally protected, accrued, vested pension benefits not only failed the "good faith" negotiation requirement of Section 109(c)(2), it neutralized the Detroit Public Safety Unions' efforts to engage the City in such negotiations and compels the conclusion that the City did not

---

[2] Notably, in stating its intent to unilaterally modify the DPOA's pension rights under its collective bargaining agreement (as established by the March 25, 2013 Act 312 Award, DPSU Exhibits 706, 707), the City also failed to comply with the requirements of MCL 141.1552(k) or 141.1559 during the 35 days it allotted for "discussions" with the Detroit Public Safety Unions prior to filing the petition.

4

satisfy the requirements of 109(c)(2). *See In re Stockton*, 493 B.R. 772, 784-785 (E.D. Cal. 2013) ("*Stockton III*"), applying California law with regard to neutral evaluation process, recognizing that good faith negotiations are a "two way street," and declining to find to find that certain bondholders could not complain about the municipal debtor's failure to negotiate in good faith after they refused to participate in the neutral evaluation process.

Interestingly, as a threshold matter, the California definition of "good faith" in *Stockton III* is virtually identical to the definition of good faith that would have applied to the City had it elected the neutral evaluation process set forth in PA 436:

> "'Good faith' means participation by an interested party or a local government representative in the neutral evaluation process ***with the intent to negotiate a resolution*** of the issues that are the subject of the neutral evaluation process, including the timely provision of complete and accurate information to provide the relevant participants through the neutral evaluation process with sufficient information, in a confidential manner, to negotiate the readjustment of the local government's debt."

MCL 141.1524(h) (emphasis added). Here, rather than engaging in such a "two way" negotiation with the Detroit Public Safety Unions, the City chose to rely on the suspension of its duty to bargain collectively under MCL 141.1567(3) to not negotiate at all with the Detroit Public Safety Unions and other labor constituents. Further, the draconian nature of the Proposal for Creditors and the brief time the City allotted for "discussion" of same with those constituents belies any suggestion

5

that the City intended to negotiate a resolution of the pension issue prior to the bankruptcy filing.

In establishing the standards for labor negotiations, Bankruptcy Code Section 1113(B)(2), NLRA Section 8(d)[3] and PERA, MCL 141.215(1) all require the parties to "meet and confer in good faith." Like the "good faith" standard under PA 436, generally, under labor law, what constitutes good faith is determined based upon the "'totality of the circumstances,'" including the employer's conduct outside the formal negotiations. *NLRB v. Hardesty Co., Inc*. 308 F.3d 859, 865 (8th Cir. 2002) (citations omitted). Michigan labor law on good faith negotiations also applies a totality of the circumstances approach:

The exact meaning of the duty to bargain in good faith has not been rigidly defined in the case law. Rather, **the courts look to the overall conduct of a party to determine if it has actively engaged in the bargaining process with <u>an open mind</u> and a sincere desire to reach an agreement**. *National Labor Relations Board v. Montgomery Ward & Co.*, 133 F.2d 676, 686, 146 A.L.R. 1045 (CA 9, 1943); *National Labor relations Board v. General Electric Co.,* 418 F.2d 736, 756 (CA 2, 1949) *(sic), cert. den*. 397 U.S. 965, 90 S.Ct. 995, 25 L.Ed.2d 257 (1970); Morris, Ed, *The Developing Labor Law*, ch. 11, 1971). The law does not mandate that the parties ultimately reach agreement, nor does it dictate the substance of the terms on which the parties manifest such an attitude and conduct that will be conducive to reaching an agreement.

*Detroit Police Officers Ass'n v. Detroit*, 391 Mich. 44, 53-54 (1974) (emphasis added).

While, in the present case, the City may not, by virtue of PA 436, have had the duty to bargain collectively for the purpose of negotiating a collective bargaining

---

[3] 11 U.S.C. §158(d).

agreement, under Section 109(c)(2), it most certainly had the duty to negotiate in good faith with the Detroit Public Safety Unions over its stated intention to impair their constitutionally protected, vested, accrued pension benefits prior to filing its chapter 9 bankruptcy petition. While, as *Stockton III* recognized, the obligation of good faith may have different meanings, depending upon its context,[4] 478 B.R. at 784, in the context of labor negotiations and given the consistency with which the "meet and confer in good faith" standard permeates both the bankruptcy code and state and federal labor law, it makes perfect sense to apply that good faith standard to these proceedings. Furthermore, that standard's focus on the parties' intent to attempt to reach agreement is consistent with the good faith standard set forth in *Stockton III* and PA 436.

As argued by the Detroit Public Safety Unions and others in closing arguments in this matter, rather than engaging the Detroit Public Safety Unions in good faith negotiations in an effort to reach a resolution in a timely fashion, the City, consciously and deliberately, elected to avoid and to prevent any negotiations at all with the Detroit Public Safety Unions and others until after it had made its decision to file the petition. Even then, while steadfastly maintaining that the June and July meetings were not negotiations, the City engaged in the sort of "surface

---

[4] Interestingly, by engaging its union constituents in good faith negotiations through the neutral evaluation process in *Stockton III*, the municipal debtor reached concessionary agreements with those constituents.

7

bargaining" or orchestrated sham meetings with no real intent to reach an agreement that, under federal labor law, has been found to show a lack of good faith. *See, e.g.*, *Hardesty, supra*.

Based upon the record before this Court, it cannot be said that, in the context the June and July meetings with the Detroit Public Safety Unions occurred, that the City bargained in good faith with them, as required by Section 109(c)(2).

Respectfully submitted,

ERMAN, TEICHER, MILLER,
ZUCKER & FREEDMAN, P.C.

By: */s/ Barbara A. Patek*
    Earle I. Erman (P24296)
    Craig E. Zucker (P39907)
    Barbara A. Patek (P34666)
    Counsel for the Detroit Public Safety Unions
    400 Galleria Officentre, Suite 444
    Southfield, MI 48034
    Telephone: (248) 827-4100
    Facsimile: (248) 827-4106
    E-mail: bpatek@ermanteicher.com

DATED: November 13, 2013

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                                                    Chapter 9

City of Detroit, Michigan,                                Case No. 13-53846

          Debtor.                                     Hon. Steven W. Rhodes
_____/

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 13, 2013, The Detroit Fire Fighters Association, The Detroit Police Officers Association, The Detroit Police Lieutenants & Sergeants Association and The Detroit Police Command Officers Association's Supplemental Trial Brief on Good Faith Negotiations in Support of Their Amended Objection to Debtor's Bankruptcy Petition and Statement of Qualifications Under 11 U.S.C. Section 109(c) and Certificate of Service were electronically filed with the Clerk of the Court for the United States Bankruptcy Court, Eastern District of Michigan, Southern Division using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically.

                                                            By:  */s/ Barbara A. Patek*
                                                                   Barbara A. Patek (P34666)
                                                                   Erman, Teicher, Miller,
                                                                   Zucker & Freedman, P.C.
                                                                   400 Galleria Officentre, Suite 444
                                                                   Southfield, MI  48034
                                                                   Telephone:  (248) 827-4100

Facsimile: (248) 827-4106
E-mail: bpatek@ermanteicher.com

DATED: November 13, 2013