## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-------------------------------------------------------x
:
In re : Chapter 9
:
CITY OF DETROIT, MICHIGAN, : Case No. 13-53846
:
                    Debtor. : Hon. Steven W. Rhodes
:
-------------------------------------------------------x

## NOTICE OF FILING OF FEE LETTER IN CONNECTION WITH MOTION OF THE DEBTOR FOR A FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 364(C)(1), 364(C)(2), 364(E), 364(F), 503, 507(A)(2), 904, 921 AND 922 (I) APPROVING POST-PETITION FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY CLAIM STATUS AND (III) MODIFYING AUTOMATIC STAY

**PLEASE TAKE NOTICE THAT** the City of Detroit, Michigan

("Detroit" or the "City"), in connection with the *Motion of the Debtor for a Final Order Pursuant to 11 U.S.C. §§ 105, 362, 364(C)(1),364(C)(2), 364(E), 364(F), 503, 507(A)(2), 904, 921 and 922 (I) Approving Post-Petition Financing, (II) Granting Liens and Providing Superpriority Claim Status and (III) Modifying Automatic Stay* (Docket No. 1520), hereby files the Fee Letter dated as of October 6, 2013 (the "Fee Letter"), between Barclays Capital Inc. and the City. A copy of the Fee Letter is attached hereto as Exhibit A.

Dated: November 18, 2013

Respectfully submitted,

/s/ David G. Heiman
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Brad B. Erens (IL 6206864)
JONES DAY
77 West Wacker
Chicago, Illinois  60601-1692
Telephone:  (312) 782-3939
Facsimile: ( 312) 782-8585
bberens@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California  90071
Telephone:  (213) 489-3939
Facsimile:  (213) 243-2539
bbennett@jonesday.com

ATTORNEYS FOR THE CITY

## CERTIFICATE OF SERVICE

I, David G. Heiman, hereby certify that the foregoing Notice of Filing of Fee Letter was filed and served via the Court's electronic case filing and noticing system on this 18th day of November, 2013.


/s/ David G. Heiman

# EXHIBIT A

BARCLAYS CAPITAL INC.

**PERSONAL AND CONFIDENTIAL**

October 6, 2013

The City of Detroit, Michigan
c/o Norma Corio
Co-President and Managing Director
Miller Buckfire & Co., LLC
601 Lexington Avenue, 22nd Floor
New York, New York 10022

$350,000,000 Post-Petition Bond Financing—Fee Letter

Dear Ms. Corio:

Reference is made to the Commitment Letter dated the date hereof (the "Commitment Letter") between the City of Detroit, Michigan (the "City" or "you") and Barclays Capital Inc. ("Barclays", "we" or "us"). Terms used but not defined in this letter agreement shall have the meanings assigned to them in the Commitment Letter (including the exhibits thereto). This Fee Letter is the "Fee Letter" referenced in the Commitment Letter. By accepting the Commitment Letter, you agree to pay (or cause to be paid) the fees set forth in this Fee Letter in accordance with the other terms and conditions set forth therein.

1.    Post-Petition Facility

As consideration for Barclays's commitment with respect to the Post-Petition Facility under the Commitment Letter and agreement under the Commitment Letter to structure, arrange and syndicate the Post-Petition Facility, you agree to pay to Barclays, solely for its own account, a commitment fee (the "Commitment Fee") equal to the sum of (a) 1.25% of the aggregate principal amount of the Quality of Life Note and (b) 1.25% of the aggregate principal amount of the Swap Termination Note; provided, however, that the aggregate Commitment Fee in respect of the Post-Petition Facility shall be no less than $750,000. The Commitment Fee shall be earned in full on the date upon which the City delivers its signed signature page to the Commitment Letter to Barclays, regardless of whether any debt is issued or whether the transactions contemplated by the Commitment Letter are consummated, and shall be due and payable to Barclays as follows: (a) 50% on the date hereof and (b) 50% on the earlier of (i) 60 days from the date hereof and (ii) the Closing Date. You acknowledge that a subsequent fee in an amount to be determined by Barclays and agreed to by you shall be required in respect of any additional facility or any amendment to the Post-Petition Facility entered into between you and Barclays (or its affiliate) that has the effect of extending the Maturity Date of the Quality of Life Note or the Swap Termination Note. Further, you acknowledge that, in the event we or our affiliates act in any other capacity with respect

to the Post-Petition Facility, any fees owed to us in connection therewith that are agreed to by you shall be in addition to any fees payable to us hereunder.

The Participants' (including the Purchaser's) several commitments to provide the Post-Petition Facility are conditioned upon the payment on or prior to the Closing Date of the fees described in this Section 1 and any other fees required to be paid under the Commitment Letter, but the consummation of the Transactions is not a condition of the payment of the fees.

2.    Fees Generally; Expenses

All fees payable hereunder will be payable in U.S. dollars in immediately available funds to the Purchaser, the Arranger, the Note Agent and/or the other Participants (as applicable) for their own accounts, or as directed by them, in any such case, free and clear of and without deduction for any and all present or future applicable taxes, levies, imposts, deductions, charges or withholdings, and all liabilities with respect thereto (with appropriate gross-up for withholding taxes) and will not be subject to reduction by way of setoff or counterclaim. You agree that, once paid, the fees or any part thereof payable hereunder or under the Term Sheets shall not be refundable under any circumstances regardless of whether the transactions contemplated by the Commitment Letter are consummated or the Post-Petition Financing Order is entered by the Bankruptcy Court. All fees payable hereunder shall not be subject to any contingency or condition (except as expressly set forth in this Fee Letter) and shall be in addition to reimbursement of Barclays's out-of-pocket expenses (to the extent required to be reimbursed under the terms of the Commitment Letter). You agree that we may, in our sole discretion, share all or any portion of the fees payable hereunder to us with any other Participant.

3.    Market Flex

You hereby agree that the Purchaser may, after consultation with you, make any or all of the following changes, which will be approved by the Bankruptcy Court in the Post-Petition Financing Order and will require no additional authorizations or approvals, to the Post-Petition Facility (in respect of either or both of the Quality of Life Note and the Swap Termination Note, to be determined in the sole discretion of the Purchaser), at any time, and from time to time (including after the Closing Date), if the Purchaser determines, in its discretion and in consultation with you, that (i) such changes are reasonably necessary to facilitate the Successful Syndication (as defined below) of the Post-Petition Facility within 90 days after the Closing Date or (ii) a Successful Syndication on the terms set forth in the Term Sheets is unable to be achieved within 90 days after the Closing Date:

(i) the LIBOR floor may be increased by up to 1.00% per annum; and

(ii) the weighted average interest rate margins under the Post-Petition Facility (taken as a whole) may be increased by up to 2.00% per annum.

2

In the event that the Closing Date has occurred and the Note Documents have been executed and delivered prior to the Successful Syndication of the Post-Petition Facility, you hereby agree, at your own expense, to take all such action as may be required in order to effect any amendments to the Post-Petition Facility, or other changes, as may be necessary or reasonably requested by the Purchaser to document any changes pursuant to this Section 3. You further agree to reasonably cooperate with us with regard to immaterial changes requested by potential Participants prior to the Successful Syndication of the Post-Petition Facility. The Purchaser's commitment in the Commitment Letter is subject to the agreements set forth in this Section 3, and the provisions of this Section 3 will survive the closing of the Post-Petition Facility and the execution and delivery of the Note Documents.

For purposes hereof, a "Successful Syndication" shall mean one in which the Purchaser and its affiliates are able to achieve a targeted hold level of no more than $175,000,000 of the Post-Petition Facility (taken as a whole).

4.    General

This Fee Letter shall not be assignable by you, and your rights and obligations hereunder may not be assigned or delegated, without the prior written consent of Barclays, and any attempted assignment without such consent shall be void. This Fee Letter may not be amended or any provision hereof waived or modified except by an instrument in writing signed by each of Barclays and you. This Fee Letter may be executed in any number of counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one agreement. Delivery of an executed counterpart of a signature page of this Fee Letter by facsimile transmission or other electronic transmission (in "pdf" or "tif" format) shall be effective as delivery of a manually executed counterpart of this Fee Letter. This Fee Letter, the Commitment Letter and the Term Sheets are the only agreements that have been entered into among us with respect to the Post-Petition Facility and set forth the entire understanding of the parties with respect thereto. This Fee Letter, the Commitment Letter and the Term Sheets supersede all prior understandings, whether written or oral, between us with respect to the Post-Petition Facility. This Fee Letter is intended to be solely for the benefit of the parties hereto and is not intended to confer any benefits upon, or create any rights in favor of, any person other than the parties hereto. This Fee Letter and any claims, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Fee Letter and the transactions contemplated hereby shall be governed by, and construed in accordance with, the laws of the State of Michigan. Barclays may perform the duties and activities described hereunder through any of its affiliates and the provisions of Section 4 of the Commitment Letter shall apply with equal force and effect to any of such affiliates so performing any such duties or activities.

In addition, please note that neither the Purchaser nor the Arranger nor any of their respective affiliates provides tax, accounting or legal advice.

3

You agree that you will not disclose, directly or indirectly, this Fee Letter or the contents hereof other than as permitted by the Commitment Letter.

It is understood and agreed that this Fee Letter shall not constitute or give rise to any commitment, undertaking or obligation on the part of Barclays or its affiliates to purchase any note or provide any financing in respect of the Post-Petition Facility; such an obligation shall arise only under the Commitment Letter (subject to the conditions and limitations set forth therein) if accepted in accordance with its terms.

The provisions of this Fee Letter will survive the expiration or termination (including, if applicable, in the event the Post-Petition Financing Order is not entered by the Bankruptcy Court) of the Commitment Letter (including any extensions thereof) and the funding of the Post-Petition Facility.

[The remainder of this page intentionally left blank]

4

Please confirm that the foregoing is our mutual understanding by signing and returning to Barclays an executed counterpart of this Fee Letter.

Very truly yours,

BARCLAYS CAPITAL INC.

By _____

Name: John Gerbino
Title:  Managing Director


Accepted and agreed to as of
the date first written above:

THE CITY OF DETROIT, MICHIGAN

By _____
Name: *KEVYN D. ORR*
Title: *EMERGENCY MANAGER*

5