UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,        .        Docket No. 13-53846
        MICHIGAN,               .
                               .        Detroit, Michigan
                               .        November 14, 2013
                Debtor.         .        3:40 p.m.
. . . . . . . . . . . . . . . .

HEARING RE. MOTION OF DEBTOR, PURSUANT TO SECTIONS 105,
501 AND 503 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002
AND 3003(c) FOR ENTRY OF AN ORDER ESTABLISHING BAR DATES
FOR FILING PROOFS OF CLAIM AND APPROVING FORM AND
MANNER OF NOTICE THEREOF
BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:          Jones Day
                         By:  JEFFREY B. ELLMAN
                         1420 Peachtree Street, N.E., Suite 800
                         Atlanta, GA  30309-3053
                         (312) 782-3939

For Detroit              Clark Hill, PLC
Retirement               By:  ROBERT D. GORDON
Systems - General        151 South Old Woodward, Suite 200
Retirement System        Birmingham, MI  48009
of Detroit, Police       (248) 988-5882
and Fire Retirement
System of the City
of Detroit:

For Assured              Chadbourne & Parke, LLP
Guaranty Municipal       By:  SAMUEL S. KOHN
Group:                   30 Rockefeller Plaza
                         New York, NY  10112
                         (212) 408-1060

For Official             Dentons
Committee of             By:  CAROLE NEVILLE
Retirees:                1221 Avenue of the Americas
                         New York, NY  10020-1089
                         (212) 768-6889

APPEARANCES (continued):

```
For Ambac            Arent Fox, LLP
Assurance            By:  CAROL CONNOR COHEN
Corporation:         1717 K Street, N.W.
                     Washington, DC  20036
                     (202) 857-6054


For Michigan         Lowenstein Sandler, LLP
Council 25 of the    By:  JOHN K. SHERWOOD
American Federa-     65 Livingston Avenue
tion of State,       Roseland, NJ  07068
County and           (973) 597-2538
Municipal
Employees (AFSCME),
AFL-CIO and Sub-
Chapter 98, City of
Detroit Retirees:


For National         Jaffe, Raitt, Heuer & Weiss, PC
Public Finance       By:  PAUL HAGE
Guarantee            27777 Franklin Road, Suite 2500
Corporation:         Southfield, MI  48034-8214
                     (248) 351-3000


For the Detroit      Erman, Teicher, Miller, Zucker &
Public Safety           Freedman, PC
Unions:              By:  JULIE BETH TEICHER
                     400 Galleria Officentre, Suite 444
                     Southfield, MI  48034
                     (248) 827-4100


For U.S. Bank:       McDermott, Will & Emery
                     By:  NATHAN COCO
                     227 West Monroe Street
                     Chicago, IL  60606-5096
                     (312) 984-3658


For Retiree          Lippitt O'Keefe, PLLC
Association          By:  RYAN C. PLECHA
Parties:             370 East Maple Road, Fl. 3
                     Birmingham, MI  48009
                     (248) 646-8292
```

```
Court Recorder:      Letrice Calloway
                     United States Bankruptcy Court
                     211 West Fort Street
                     21st Floor
                     Detroit, MI  48226-3211
                     (313) 234-0068

Transcribed By:      Lois Garrett
                     1290 West Barnes Road
                     Leslie, MI  49251
                     (517) 676-5092
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1          THE COURT:  All right.  So can we move on to our

2     next motion then set for two o'clock?  And that's the bar

3     date motion.

4          MR. ELLMAN:  Your Honor, Jeffrey Ellman from Jones

5     Day on behalf of the debtor.  If I could have one moment to

6     get organized.

7          THE COURT:  Let's stand by while people clear out,

8     and then I'm going to take appearances from everyone.

9          MR. ELLMAN:  That would be great.  Thank you.

10         THE COURT:  Okay.  May I have appearances, please?

11         MR. ELLMAN:  Your Honor, Jeffrey Ellman from Jones

12    Day again on behalf of the city.

13         THE COURT:  Yes.

14         MS. NEVILLE:  Carole Neville from Dentons on behalf

15    of the Retiree Committee.

16         MR. KOHN:  Your Honor, Samuel Kohn of Chadbourne &

17    Parke on behalf of Assured Guaranty Municipal Corp.

18         MR. SHERWOOD:  Your Honor, Jack Sherwood on behalf

19    of AFSCME.  Your Honor, based on discussions with the city --

20         THE COURT:  I want to get all the appearances, and

21    then I'll take statements.

22         MR. HAGE:  Your Honor, Paul Hage, Jaffe, Raitt,

23    Heuer & Weiss, on behalf of National Public Finance Guarantee

24    Corporation.

25         MR. GORDON:  Robert Gordon on behalf of the Detroit

1  Retirement Systems.

2       MS. CONNOR COHEN:  Carol Cohen on behalf of Ambac

3  Assurance Corporation.

4       MS. TEICHER:  Julie Teicher, Erman, Teicher, Miller,

5  Zucker & Freedman, on behalf of the Detroit public safety

6  unions.

7       MR. COCO:  Good afternoon, your Honor.  Nathan Coco

8  from McDermott, Will & Emery on behalf of U.S. Bank.

9       MR. PLECHA:  Good afternoon, your Honor.  Ryan

10 Plecha on behalf of the Retiree Association parties.

11      THE COURT:  Mr. Sherwood, was there something you

12 wanted to say?

13      MR. SHERWOOD:  Yeah.  Your Honor, based on some

14 discussions between us and counsel for the city, we have

15 reached a resolution with respect to language that I

16 understand is being inserted into the order, and,

17 accordingly, that resolves our objection.  I just wanted to

18 say it now, your Honor, because I might try to leave in about

19 ten or fifteen minutes to catch a --

20      THE COURT:  Okay.

21      MR. SHERWOOD:  -- plane, and I didn't want to -- I

22 just wanted to get that on the record.

23      THE COURT:  Yeah.  I appreciate that, and, of

24 course, you can leave whenever it's convenient for you.

25      MR. SHERWOOD:  Thank you, your Honor.

1          THE COURT:  Okay.  And I want to begin with this

2     question to you, Mr. Ellman.

3          MR. ELLMAN:  Yes.

4          THE COURT:  Have you pursued every conceivable

5     discussion with the objecting creditors in an attempt to

6     resolve all of their differences with the city on this issue

7     of the bar date order?

8          MR. ELLMAN:  I believe so, your Honor.  There's

9     always more time leads to more discussions.  We have, I

10    believe, resolved the majority of the objections.  I think

11    the -- there are a couple parties that haven't necessarily

12    told us for sure, and I think that the monoline insurer issue

13    is the one that is unresolved.  I do have a chart I'd be

14    happy to present to the Court that summarizes where we are

15    with all the objections, what we did to resolve them.  I also

16    have a new blackline of the order, which I'd be happy to

17    share with the Court and discuss.

18         THE COURT:  Well, on the issues that you have not

19    heard are resolved or not, do you want me to give you five

20    minutes to see?

21         MR. ELLMAN:  Well, I think one thing that might be

22    useful is maybe to have the objectors indicate if they have

23    open issues.  I believe, just for the record, I can tell --

24         THE COURT:  I'd rather have them say that to you

25    privately.

1          MR. ELLMAN:  That would be fine.  I can tell you --

2    I can tell you that the UAW is not here today, and they've

3    authorized me to say they are resolved.

4          THE COURT:  Okay.

5          MR. ELLMAN:  We've heard from AFSCME just now.  The

6    public safety unions and the Retiree Committee all resolved.

7    The Retirement Systems I believe were resolved.  Mr. Gordon.

8          MR. GORDON:  Subject to my placing it on the record,

9    if I may, your Honor.  I need to clarify something that --

10          THE COURT:  I need you to get by the microphone.

11          MR. GORDON:  Your Honor, we were provided with a

12    redline last night and then an updated redline just at

13    lunchtime of the proposed order and notice.

14          THE COURT:  This is why I want to give you five

15    minutes because --

16          MR. GORDON:  Right.

17          THE COURT:  -- I just want to know if you're settled

18    or not and if there's something for me to resolve.

19          MR. ELLMAN:  We'll take the five minutes.  I think

20    that's a good suggestion, your Honor.

21          THE COURT:  Okay.

22          MR. ELLMAN:  I appreciate that.

23          THE COURT:  While you're discussing this in five

24    minutes, I have two issues.

25          MR. KOHN:  Your Honor --

1      THE COURT:  What?

2      MR. KOHN:  I'm sorry.  Just to make the record

3  clear, the debtor did not -- the city did not reach out to

4  any of the monolines to resolve the monoline objections, so

5  your Honor will have to resolve the monoline objections.

6      THE COURT:  Great.  Happy to do that for you --

7      MR. KOHN:  Thank you.

8      THE COURT:  -- later.  My two issues are -- and I

9  don't know if you have gotten this from others or not.  It

10  strikes me that the deadline for filing claims that you have

11  proposed is a very short deadline.  It seems to me it ought

12  to go into February, maybe even mid- to late February.

13  Number two, your order proposed that claims be mailed to or

14  delivered to the office of your claims agent in California.

15      MR. ELLMAN:  That is correct.

16      THE COURT:  I want you to amend that to say either

17  there or our clerk's office.

18      MR. ELLMAN:  We'd be happy to do that.

19      THE COURT:  It seems to me entirely appropriate that

20  creditors of the City of Detroit be permitted to file their

21  proofs of claims in the City of Detroit.

22      MR. ELLMAN:  That's perfectly fine, your Honor.

23      THE COURT:  And then pursuant to the earlier order

24  that appointed your claims agent, they can supply mailing and

25  packing and shipping materials to our clerk's office, who

1  will then take the responsibility of shipping them to the

2  claims agent.

3          MR. ELLMAN:  My understanding, your Honor, is that

4  that already does occur in real life.

5          THE COURT:  It has.

6          MR. ELLMAN:  And our attempt was to relieve the

7  burden on the clerk's office, but I understand your point.

8  It's very fair, yeah.

9          THE COURT:  I've discussed that with my clerk.

10         MR. ELLMAN:  That's great.

11         THE COURT:  And it is not an issue.

12         MR. ELLMAN:  That is fine.  And, your Honor, as you

13  take -- as we take the five minutes and you go in the back,

14  if you would like the updated blackline, I'd be happy to

15  provide it if you wanted to look at it, if you are interested

16  at all.

17         THE COURT:  Oh, that's probably a good idea, yes.

18         MR. ELLMAN:  I have two flavors of blacklines.  One

19  is the cumulative blackline, which is all the changes since

20  the original filing, and we did file a reply that had a new

21  revised draft with a blackline as well, so I also have one

22  that shows just the interim --

23         THE COURT:  Actually, you know what?  What's most

24  helpful to me is a new clean one.  Do you have a new clean

25  one?

1     MR. ELLMAN:  I have a clean one as well.

2     THE COURT:  Yes.  That would be most helpful.

3     MR. ELLMAN:  Would you like the blackline at all or

4  just the clean --

5     THE COURT:  No.  Just the clean.

6     MR. ELLMAN:  I have that as well.

7     THE COURT:  All right.  We'll be in recess until

8  four o'clock.

9     MR. ELLMAN:  Thank you very much.

10    THE CLERK:  All rise.  Court is in recess.

11    (Recess at 3:48 p.m. until 4:00 p.m.)

12    THE CLERK:  All rise.  Court is in session.  Please

13  be seated.  Recalling Case Number 13-53846, City of Detroit,

14  Michigan.

15    MR. ELLMAN:  Your Honor, Jeffrey Ellman, for the

16  record, from Jones Day on behalf of the city.  Thank you for

17  the five minutes.  I think I have confirmed that we are

18  resolved with all parties other than the insurers.  We have

19  one party that is not here, the Retired Detroit Police

20  Members Association, who has never responded to us.  They

21  were a concurrence in the Retiree Committee's objection.

22  They were going to say a few brief words about that, but I

23  believe that will be considered resolved.

24    MS. NEVILLE:  Good afternoon, your Honor.  I believe

25  that the Retired Detroit Police Retirement Association agrees

 1   with the changes that we've agreed to, but I would like to

 2   point out that it might be very difficult to file any kind of

 3   claim for either pension or OPEB before a plan is really on

 4   the table for us to really know what the city is doing, and,

 5   of course, we would love to see a plan that passed through

 6   unimpaired the pensions, so hopefully we wouldn't have to

 7   file a claim at all, but we have in here that we have the

 8   ability to file a protective proof of claim which is what our

 9   intent is.

10           THE COURT:  All right.

11           MS. NEVILLE:  Thank you.  May I have your authority

12   to leave now?

13           THE COURT:  Yes.

14           MS. NEVILLE:  Thank you.

15           MR. ELLMAN:  Your Honor, Jeffrey Ellman again for

16   the city.  I don't know how you'd like to proceed at this

17   point.  I can -- we can talk about the issues you had raised

18   or we can hear from the monolines or from me about their

19   issue, whatever you would prefer to --

20           THE COURT:  Whatever suits you all.

21           MR. ELLMAN:  Okay.  Well, I think --

22           THE COURT:  Mr. Gordon would like your attention.

23           MR. ELLMAN:  Oh, I'm sorry.  Mr. Gordon, I think,

24   wanted to make a statement about his resolution of

25   objections --

1      THE COURT:  Okay.

2      MR. ELLMAN:  -- so let's have that.

3      MR. GORDON:  Thank you.  Thank you for the

4  indulgence, your Honor.  I just want to -- it's like a

5  housekeeping matter more than anything.  In the -- sort of in

6  the same vein as Ms. Neville was mentioning, the one concern

7  that I had and I believe Ms. Teicher also has on behalf of

8  her clients is that the claims that we may be filing are

9  complex, difficult to calculate, and there may not be really

10  sufficient time, and certainly it may depend very much on

11  treatment under a plan, and so it is certainly possible that

12  we may need to, in order to comply with the bar date, file

13  claims that are essentially unliquidated claims subject to

14  our good faith effort to liquidate that claim in due course,

15  and we just wanted to -- we wanted to at least make a record

16  of that that we hope that that is an acceptable placeholder

17  as we in good faith seek to liquidate the claim.  I've at

18  least discussed this concept with Mr. Ellman.  Obviously he

19  said, you know, it'll be what it'll be, I suppose, but it is

20  a concern for us.  It's not in the order.  I don't know how

21  you would fashion language for that, but I wanted to at least

22  express that concern.

23      THE COURT:  Well, it's a substantial concern and it

24  seems to me a bad idea to do anything but deal with it now

25  because we don't want to place at risk, for example, any

1  retiree's claim to pension because of some ambiguity about
2  this order or how it's -- how it was intended to be
3  effectuated; right?
4          MR. GORDON:  Yes, your Honor.
5          THE COURT:  So what that resolution is doesn't jump
6  off the page at me.  What thoughts did you all have about
7  that subject?
8          MR. GORDON:  Well, quite frankly, I --
9          THE COURT:  It seems to me it would be unjust to
10  require any particular retiree or any particular retiree's
11  representative to file a specific claim by -- a specific
12  claim with a specific amount by a specific date when it's not
13  quite possible to do that, and so we can't require the
14  impossible.  But having said that, I'm not sure I quite
15  understand what the plan or the treatment under the plan has
16  to do with filing a claim at all.  They are entirely
17  different concepts, and even if the plan does somehow leave
18  pensions unimpaired, a claim has to be filed unless it's
19  waived -- I mean unless there's a procedure for not filing a
20  claim, but generally speaking, a claim has to be filed.
21          MR. GORDON:  Your Honor, all fair questions.  First,
22  I would say that actually the treatment of the pension plans
23  does affect the claims.  For example, if the defined benefit
24  plans are kept open or if there is some hybrid plan that is
25  proposed or if the plans are closed and frozen, that all

1    would affect the amounts of the claims, quite frankly.

2    That's just one example.

3         THE COURT:  Isn't a claim determined as of the date

4    of filing?

5         MR. GORDON:  I don't know how you could in this

6    instance because --

7         THE COURT:  Okay.  But that's a different question.

8         MR. GORDON:  Yes.

9         THE COURT:  Generally speaking, isn't a claim

10   determined as of filing?

11        MR. GORDON:  Well, I'd have to think about that.  I

12   mean under 3002 --

13        THE COURT:  Okay.

14        MR. GORDON:  -- (c)(4) there are rejection damage

15   claims and so forth that there's a bar date set for those

16   that could, you know, include things that occur post -- I

17   don't know.  I'd have to think about that, your Honor.  I

18   understand the general concept.

19        THE COURT:  Well, I think we all do.

20        MR. GORDON:  Yes.

21        THE COURT:  I think we all do.  It may be in the

22   best interest of all concerned, including the city, for this

23   matter to have a separate later bar date for pension claims.

24        MR. GORDON:  I could see the same thing with OPEB.

25        THE COURT:  I would encourage you to talk about

1   that.

2          MR. GORDON:  I could see the same thing with OPEB.

3   I mean it's just -- I think it's difficult for individuals.

4          THE COURT:  Yeah.  I mean whatever --

5          MR. GORDON:  Yes; right.

6          THE COURT:  Whatever types of claims that would make

7   sense for.

8          MR. GORDON:  And I apologize, your Honor.  I just

9   haven't had time to research what has been done in other

10  Chapter 9's thus far in that regard.  I'd be curious what's

11  happened in other places.  I don't know what they've done

12  because it's a difficult issue, but I'm more than happy to

13  look at it.

14         THE COURT:  I don't know how much you're going to

15  find because I'm not sure other Chapter 9 cases have dealt

16  with pension claims on this massive a scale; right?  I mean

17  that's the obstacle.  That's the challenge, so I don't know.

18         MS. NEVILLE:  Your Honor, if I may be heard, I

19  actually have looked at how the claims are filed in other

20  cases, and they were a significantly smaller population, so,

21  for example, in Stockton --

22         THE COURT:  Right.

23         MS. NEVILLE:  -- the actuary actually calculated a

24  claim for every retiree, but there were something like 1,200

25  retirees --

1          THE COURT:  Right.

2          MS. NEVILLE:  -- not 22,000.

3          THE COURT:  Right.

4          MS. NEVILLE:  But I do represent the PBGC in other

5    cases, and I know that they file claims which are based on a

6    statutory formula for the population that is part of the

7    plan, and that kind of calculation could be done.  Whether

8    that's helpful or not --

9          THE COURT:  Well, but they have a -- they have a

10   statutory formula.  You don't.

11         MS. NEVILLE:  Yes, they do.  They do.  But the

12   statutory --

13         THE COURT:  Or do you?  I don't think you do, do

14   you?

15         MS. NEVILLE:  No.

16         THE COURT:  No, so --

17         MS. NEVILLE:  But the statutory formula is kind of

18   based on a rationale that the plan is terminated, and these

19   are the figures that are necessary to calculate a claim as if

20   you were going to replicate those benefits, so that's what

21   the formula does.  And we could file a claim like that, but

22   I'm not sure that it would be that helpful.

23         THE COURT:  Right.

24         MS. NEVILLE:  I was just going to add one more

25   thing.  In the cases where -- the one case that I really have

1    looked at that pensions were impaired, everybody filed a

2    claim.  Associations filed claims.  Individuals filed claims.

3    But, again, there were only -- there were 900 people in

4    Central Falls.

5            THE COURT:  Right.

6            MR. ELLMAN:  If I could speak briefly to this, your

7    Honor.  Jeffrey Ellman for the city.  The way we drafted this

8    bar date motion at the outset on the OPEB piece of what

9    you're discussing, I think even still now there's nothing in

10   the bar date procedures that requires anyone to file an OPEB

11   claim.  Just doesn't because we didn't believe that that

12   would be helpful to anyone, a burden on individuals --

13           THE COURT:  Okay.

14           MR. ELLMAN:  -- so that's not even in there at all.

15   And really no one has to file a pension claim as far as an

16   individual.  Our original draft suggested that the Retirement

17   Systems would file the pension claim because our belief was

18   they were the proper party to do it, and they could file a

19   claim.  They're familiar with the pension systems obviously,

20   and they can file a claim.  Whether it has to be amended

21   later, whether it has to be conditioned --

22           THE COURT:  This would be a claim that asserted an

23   amount of money that the city has to pay to the plans

24   themselves in order to fully fund the plan?

25           MR. ELLMAN:  I presume that would be the kind of

1  claim they would file, yes, and that's how we set it up to
2  make it fairly we thought less burdensome on everyone and
3  fairly straightforward.  Now, since we filed this motion,
4  we've had a number of parties come forward and say we'd like
5  to file an OPEB claim or pension claim, and, of course, our
6  bar date motion didn't preclude anyone from filing any kind
7  of claim they would like to file.  If the clerk or KCC
8  receives it, it'll be filed and might be objected to.  So the
9  revised order has a lot of stuff in there about the Retiree
10  Committee can file a claim.  That's optional.  They don't
11  have to do it.  They said they would like to do it.  There's
12  no -- it wasn't because we wanted to set a bar date for that.
13          THE COURT:  But if they would like to do it, then
14  they are subject to the date, to the bar date.
15          MR. ELLMAN:  Yes, I guess.
16          THE COURT:  The deadline date.
17          MR. ELLMAN:  I guess so.  I mean there's no -- I'm
18  not really sure it's even true because we didn't set a bar
19  date for those kinds of claims, I guess.  I mean you could
20  say they're sort of not.  It's really an option.  If they'd
21  like to file a claim, they can.  That's how we looked at it.
22  The pension systems, we did look at that as a party that was
23  authorized to file just based on how the systems work on
24  behalf of the systems, on behalf of the amounts they're owed,
25  and they should file by the deadline, but the OPEB we have

1  concluded and the way the notices are now set up it indicates

2  that we're going to work with all the parties who are

3  relevant to this process to figure out the best way to

4  establish a voting process and deal with distribution.  We're

5  not quite there yet.  We don't have a plan filed as has been

6  mentioned a couple times.  We've acknowledged that, I think,

7  in our reply as well.  When we have a plan in place and we

8  can talk to everyone, we can figure out the best way to --

9  whether it's estimation or 3018 so people can vote or

10 something else, I don't know.  I don't think we need to

11 preclude anyone right now, but this was the biggest area of

12 concern among the objecting parties obviously in an area we

13 were very sensitive to, and the last thing we wanted to do is

14 create something that was a special burden especially on the

15 retirees and employees at this point or to create an

16 obligation that was unfair or impossible, so we tried to

17 straddle that line that way, and I think that kind of works.

18           THE COURT:  Mr. Gordon, why is it a burden on your

19 client to file a claim by whatever date we're going to agree

20 upon here?

21           MR. GORDON:  Well, your Honor, in a vacuum it's

22 difficult to say whether it's a burden or not.  What I

23 indicated was that if for some reason it's not feasible to

24 really have calculated the claim because it is complex and it

25 does depend on the proposed treatment of the plans and so

1    forth and how clear that is --

2            THE COURT:  I don't see that at all.

3            MR. GORDON:  It is.  I mean underfunding liability

4    is completely contingent upon how you treat the plans,

5    whether they stay open or don't stay open.  I mean that's

6    just a fact.  That's an actuarial fact.

7            THE COURT:  But that's like saying in a Chapter 11

8    case the amount of my claim depends on how it's treated in

9    the plan.

10           MR. GORDON:  No, it's --

11           THE COURT:  Absolutely not.

12           MR. GORDON:  It's not.  It depends on -- this is --

13   it could be the difference between having a rejection damage

14   claim or not a rejection damage claim, but if the plans stay

15   open, the cost of funding them is one thing.  If the plans

16   don't stay open, the cost is something else.  I don't know

17   which one it is.  I just don't know which one it is.  So

18   we're more than happy to --

19           THE COURT:  No, no, no.  I don't buy that for a

20   second.  On the date of filing, how much money did the city

21   owe your clients -- your client?  How much was it?

22           MR. GORDON:  There are two, two pensions.

23           THE COURT:  Yeah.  Okay.  How much was it?

24           MR. GORDON:  In terms of employer contributions due

25   on that day, somewhere north --

1      THE COURT:  That's the number that goes in your

2  proof of claim, period.  You're done.

3      MR. GORDON:  Until the plan -- okay.  I see what

4  you're saying.

5      THE COURT:  If you want to amend it later, we'll

6  deal with that --

7      MR. GORDON:  Okay.

8      THE COURT:  -- but how much did they owe you on the

9  day the case was filed?

10      MR. GORDON:  I understand the viewpoint, and we can

11  do that.

12      THE COURT:  All right.  So I think it is appropriate

13  to set a deadline for that, and --

14      MR. GORDON:  That's fine.

15      THE COURT:  -- unless you want a different deadline,

16  we'll go with the general deadline.  As to other retirees and

17  other retiree associations, I agree with the concept of

18  keeping that open and making it entirely optional.  That's

19  the best way to handle that.

20      MR. GORDON:  That's fine, your Honor, and I --

21  obviously I -- in our response to the bar date motion, we

22  suggested that -- it's kind of ironic.  Some people would

23  argue that the Retirement Systems shouldn't file a claim and

24  that the -- a union that represents a small portion of the

25  retirees or something should file a claim when we're the only

1  ones who actually in our own right have a claim to assert on

2  behalf of the Retirement Systems, but we certainly in our

3  response said it ought to be made clear that all retirees can

4  file claims but that if they don't file claims, there's a

5  separate issue there that they shouldn't be precluded from

6  being able to vote on a plan later.

7  　　　　THE COURT:  Right.  I absolutely agree with that.

8  　　　　MR. GORDON:  Fair enough.

9  　　　　THE COURT:  Absolutely.

10 　　　　MR. GORDON:  The only other thing --

11 　　　　THE COURT:  And we should say that in the order.  If

12 it isn't clear in the proposed order, it should --

13 　　　　MR. GORDON:  And Mr. Ellman --

14 　　　　THE COURT:  -- it should be crystal clear.

15 　　　　MR. GORDON:  And Mr. Ellman has made that clear.

16 The only other thing, you know, I guess reasonable minds

17 could differ is, you know, if you allow people to file

18 claims, some will and some won't, and --

19 　　　　THE COURT:  Fine.

20 　　　　MR. GORDON:  -- I don't even know if they'll know

21 how to calculate their claim, but --

22 　　　　THE COURT:  Of course, of course.

23 　　　　MR. GORDON:  -- so be it.

24 　　　　THE COURT:  Right.  You know, we'll deal with that.

25 No retiree will be denied any voting rights or pension rights

1  because they don't file their own claim.  I want that crystal

2  clear.

3          MR. GORDON:  Understood.

4          THE COURT:  Absolutely.

5          MR. GORDON:  Thank you, your Honor.

6          THE COURT:  Okay.  So what's left?

7          MR. ELLMAN:  Well, maybe it's worthwhile just since

8  we're on this topic just -- if I could point out just the

9  five, I think, major things we did in --

10         THE COURT:  Okay.

11         MR. ELLMAN:  -- the document so you're aware of them

12 because we're talking about one of the main ones, which was

13 to clarify in multiple places that retirees and employees do

14 not need to file a claim of these kinds and that their rights

15 to vote on the plan or seek distributions, whatever they

16 might be, are preserved, so there are a number of places in

17 the document.  I'd be happy to point those out to your Honor.

18 In fact, at the end of the presentation, I do have a little

19 chart that goes through all the objections of where we made

20 the changes which you might like to have.  I'd be happy to

21 present it if it's useful to you.

22         THE COURT:  No.  That's all right.  I'm just going

23 to --

24         MR. ELLMAN:  That's fine.

25         THE COURT:  -- finish my review of the clean copy.

1       MR. ELLMAN:  There was a suggestion that employees

2  should not have to file claims for ordinary compensation,

3  their regular wages, and we agreed that that was prudent, and

4  there is now a provision in the order and in the notice

5  saying if you just have a -- you're owed wages, you don't

6  have to worry about it.

7       This notion about people being permitted to file

8  claims and someone prohibited, we made very clear in a couple

9  places in bold and italics anyone who wants to file a claim

10  you're able to do it, no prohibition.

11       Oh, and the thing we talked about, the optional

12  claims by all the various unions and Retiree Committee, their

13  ability to file claims, again, there's specific paragraphs

14  right now in the order for -- everyone wanted a paragraph, so

15  for UAW, et cetera, et cetera, we have those.

16       And the last thing was the date because I believe it

17  was the Retirement Systems that said, well, maybe we should

18  move the date a little bit past the holidays, past the 21st,

19  and so they suggested the 28th of January, which we thought

20  was, again, prudent to move it back a day -- or a week.

21  Excuse me.  In response to your Honor's question, we're

22  sensitive to wanting to move the process along without delay

23  getting the bar date order on file, getting the bar date

24  notices out, and setting a date that we thought was prompt

25  but was absolutely not cutting anyone's time short.  We

1   weren't going to ask for 21 days or whatever the minimum is
2   in 2002, so we determined that people would get at least 60
3   days under this process.  Another week would -- I guess
4   that's 67 days -- I think would be -- I think that's
5   sufficient, in my opinion.  Obviously if the Court feels more
6   time is useful or necessary, then I would suggest we move the
7   date back as --
8           THE COURT:  Well, how would it prejudice your client
9   or the process to give another month, for example?
10          MR. ELLMAN:  The prejudice to the process, and, of
11  course, the process is not fully defined, but we have a
12  limited time frame in some respects, so getting those claims
13  in, starting to look at them, being prepared for whatever
14  solicitation might occur, the claims list in this case, which
15  is like the schedules, which I for whatever reason brought
16  with me -- it's in a box.  It's gigantic.  It's going to be
17  extremely -- I think there's well over a hundred thousand
18  people on that list.  I don't know how many claims we're
19  going to get, but I am concerned that it's going to be a very
20  large project to organize those claims, and so I don't want
21  to cut people short in filing the claims.  I don't want to
22  cut us short in however much time it takes us to get the
23  claims organized especially now there will be claims going to
24  two different places.  I don't think that really adds a lot
25  of time to it, but I'm -- the main point is just the volume

1  of it I think is going to be substantial, so --

2          THE COURT:  Let's figure this out.  When would you

3  foresee sending out notice?

4          MR. ELLMAN:  Of the bar date?  Within five business

5  days.  We gave ourselves a little wiggle room in the order.

6  I think it says five business days or as soon thereafter as

7  is practicable, but our claims agent says they can get it out

8  in five business days from whenever your Honor signs the

9  piece of paper.

10          THE COURT:  Okay.  So if it's signed tomorrow, that

11  would be by the 22nd.

12          MR. ELLMAN:  Would be one week.  One week, yeah.

13  It's next Friday.  If you sign it on Friday, it would be the

14  next Friday.

15          THE COURT:  Okay.

16          MR. ELLMAN:  And that would give people 60 -- I

17  don't have the math in front of me but 67 or so days I'm

18  guessing if you use the 28th of January as the end date.

19          THE COURT:  All right.  I'm going to suggest

20  February 21st.

21          MR. ELLMAN:  "Suggest" meaning that's your ruling?

22          THE COURT:  Meaning order, yes.  That's it.

23          MR. ELLMAN:  February 21st?

24          THE COURT:  Yes.

25          MR. ELLMAN:  That's fine.  One -- actually, I think

1    maybe two points just to follow up on something your Honor

2    said about the filing here in Detroit at the clerk's office.

3    I think it would be appropriate -- we had set a time for

4    filing of 5 p.m. eastern time.  There's some discussion of if

5    California should be Pacific time or something else, but I

6    think if we're using the Detroit clerk's office, it probably

7    should be 4 p.m., which --

8         THE COURT:  4 p.m.

9         MR. ELLMAN:  -- I believe is when they close, so --

10        THE COURT:  Yep.  4 p.m.

11        MR. ELLMAN:  -- I would suggest that change.

12        THE COURT:  Yes.

13        MR. ELLMAN:  And I assume we're not using any kind

14   of electronic filing.  I think that's obvious, but --

15        THE COURT:  You need to say that.

16        MR. ELLMAN:  -- it was asked of me during the break,

17   and I assume that there's no --

18        THE COURT:  Right.  I saw in the order no electronic

19   and no facsimile.

20        MR. ELLMAN:  That's going to be all the same.

21        THE COURT:  Absolutely, all paper.

22        MR. ELLMAN:  Okay.  So that covers all of that, so

23   that's what we did in the order.  I think the last issue then

24   is the monoline issue, which I'd be happy to address.

25        THE COURT:  Before we go there --

1       MR. ELLMAN:  Okay.

2       THE COURT:  -- the form of the notice that people

3  get --

4       MR. ELLMAN:  Yes.

5       THE COURT:  -- that's in here --

6       MR. ELLMAN:  It is.

7       THE COURT:  -- or attached?

8       MR. ELLMAN:  It is attached, and what we tried to

9  do, your Honor -- I don't think we were able to successfully

10 hide the fact that it was written by a lawyer, unfortunately.

11      THE COURT:  Well, that was going to be my question.

12      MR. ELLMAN:  But what we tried to do -- and you can

13 assess if it's successful -- it was important to us to put --

14 we drafted the notice just the way we thought it would be

15 appropriate, and at the front of the notice we put in a

16 little box, something that we hoped would be, you know, the

17 simple summary of the key points for the key parties,

18 including the retirees and the employees.  We tried.  Some of

19 the comments we got from the objecting parties were, gee,

20 it's not that clear.  If we make it better -- always happy to

21 make it better.  Sometimes hard to get out of the mind of

22 being a lawyer and writing something that people will

23 appreciate and understand but also be precise and accurate.

24 That's the challenge.  So we tried to do that.  I think it's

25 pretty good, but that was the attempt.  There are a couple

1  other places in the text where we put a little box around
2  something to say, you know, please read this, and it's
3  intended to be kind of simpler.
4          THE COURT:  You know, I can't emphasize enough the
5  importance of plain English in this document.
6          MR. ELLMAN:  I understand completely, your Honor.
7          THE COURT:  I have to say I wish you had an eighth-
8  grade English teacher on staff to edit this for you.  Any
9  ideas?
10         MR. ELLMAN:  Well, our --
11         THE COURT:  It's not plain English.
12         MR. ELLMAN:  Well, as I said, our idea was to try to
13  write the notice in the sort of more typical legal language
14  and have a summary at the front that helped people.  I can
15  tell your Honor doesn't feel that we've accomplished that,
16  but that was our goal.  Now, we can certainly take another
17  attempt at doing that.  I do feel like the best way to write
18  a precise legal notice and also have something for the public
19  is to have a -- something at the front that is shorter.
20         THE COURT:  Well, for example, in your second bullet
21  point in the summary -- have you got it there?
22         MR. ELLMAN:  I will, yes.  Yes, I do.  I have it.
23         THE COURT:  If you need to file a claim against the
24  city, the deadline for most claimants is January 28, and then
25  you've got your date and time there.

1      MR. ELLMAN:  Right.  And I did one comment on that

2  during the break that we were going to change that to say the

3  general deadline is January 28th instead of for most

4  claimants.  That's one minor change that we talked about

5  during a break.  I don't know if that solves your concern,

6  but --

7      THE COURT:  It strikes me that the more plain

8  English way to say that is "you must file your claim by."

9      MR. ELLMAN:  We can certainly write it that way.

10     THE COURT:  But I don't bring this up to ask you to

11  make that change.  I bring this up to ask you to go through

12  this entire document to simplify the language to the greatest

13  extent possible while still being accurate.

14     MR. ELLMAN:  Well, let me ask your Honor --

15     THE COURT:  I mean I understand that you want to get

16  this out, but what I don't want to get and what you don't

17  want to get are late filed claims because people didn't

18  understand this document.

19     MR. ELLMAN:  I appreciate that, your Honor, although

20  I would say that having the details are going to be helpful

21  to a lot of people who are going to get this document because

22  often significant creditors will get this who are -- who do

23  have lawyers and do understand these kinds of -- this looks

24  like a lot of what these kinds of notices look like, so I

25  still maintain that the most helpful thing --

1      THE COURT:  All right.  I'm not going to order you

2  to do anything.  This is just me suggesting and truly

3  suggesting, but I'm just -- I'm concerned about minimizing

4  confusion because we've got, you know, a very broad cross-

5  section --

6      MR. ELLMAN:  I agree.

7      THE COURT:  -- of creditors who are going to get

8  this, and the more understandable it is, the easier our jobs

9  will be in the future, all of us.

10     MR. ELLMAN:  I understand, your Honor.  Like I said

11  at the beginning, it was one of our concerns, and, like I

12  said, we didn't really necessarily hide that it was written

13  by lawyers.  We tried to make it a little better.  We will go

14  through it at the Court's request and find places where we

15  can improve upon it.

16     THE COURT:  All right.

17     MR. ELLMAN:  One of the issues we have, just so the

18  Court is aware, is that a lot of the language is -- the

19  language that is in this document is the way it is because

20  that's how we negotiated people resolving their, you know --

21     THE COURT:  All right.

22     MR. ELLMAN:  This is the challenge we have with it

23  because everyone wants it to be simpler, but they also want

24  their extra language in it, so, you know, we have to undo

25  some of that to --

1          THE COURT:  All right.  I think --

2          MR. ELLMAN:  -- make it easier to read.

3          THE COURT:  Realistically, the most important thing

4   to try to simplify is the summary.

5          MR. ELLMAN:  Well, that's what I would like to do.

6          THE COURT:  I think, you know, I would be surprised

7   if more than a great percentage get past the first page.

8          MR. ELLMAN:  My suggestion would be exactly that,

9   and I think we can do better.  And maybe for each section of

10  the note is to have something in a box that says this section

11  is about this --

12         THE COURT:  Right; right.

13         MR. ELLMAN:  -- and help them navigate through it.

14  That's my suggestion --

15         THE COURT:  Right.

16         MR. ELLMAN:  -- and we'll work on doing that.

17         THE COURT:  Let's get to the last issue then.

18         MR. ELLMAN:  Let's get to the last issue, the

19  monoline issue.  So for the -- for certain of the bonds we

20  have a trustee who can file a claim, and for the certificates

21  of participation we have that.  And so we have a party under

22  3003(c)(1), trustee, who can file a claim.  We have some of

23  the unsecured bonds.  We don't really have that.  We have a

24  paying agent.  Paying agent says they're not going to file a

25  claim.  They don't feel like they have -- they don't

represent the parties.  The monolines contacted us, and I
agree.  We didn't really have much of a discussion because we
didn't have really a lot to tell them as far as ideas.  They
said they would like to file the claim and not have the
bondholders get notice for filing the claim, and we said that
sounds like a great idea.  We'd love to do something that's
simpler, but we could never quite figure out on what basis
they could represent that group today and file the claim on
their behalf and we would not give notice to that group, and
we felt that under the circumstances it was better due
processwise and noticewise to simply give notice to the
bondholders and allow them to file a claim if they so choose.
They don't have to.  We have a claim scheduled or listed on
our claims list in a liquidated amount for the entire series.
I'm sure that the insurers will file a claim.  They're
certainly permitted to do, as I've said a couple of times, so
that is where we ended up.  I heard a little bit during the
break, I guess, sort of for the first time that -- and I
guess we'll hear this argument in a moment that the process
of soliciting the bondholders through DTC and getting the
institutional holders and soliciting down to the beneficial
holders, that that will not work.  We don't have a reason to
believe it won't work.  It obviously takes an extra step and
it costs a little bit of money to do, but our view is that
was an appropriate thing to do in the absence of anyone that

1  we could identify really did speak definitively for these

2  people because otherwise they're not on our claims list.

3  They're not going to get this notice, and they're not going

4  to have any way to file a claim if they were to so choose, so

5  that was our approach to it, your Honor, and that's what we

6  propose to do.

7          THE COURT:  Thank you.

8          MR. KOHN:  Thank you, your Honor.  Samuel Kohn of

9  Chadbourne & Parke on behalf of Assured Guaranty Municipal

10  Corp.  The reason why the monolines are raising this is not

11  so much for their own self-interest.  This is not the reason

12  why we're raising it.  It's not that Assured or National or

13  Ambac are going to lose a lot of money because of this.

14  That's not the reason.  The reason why we're bringing it up

15  is because we, our three respective clients, have been in

16  every Chapter 9 case in the last three years.  And I've

17  canvassed -- we've canvassed them.  Every single Chapter 9

18  case in the last three -- in modern history, not one, not

19  one -- and I'll list them for your Honor -- the City of

20  Vallejo in June of 2010; Connector 2000 in June of 2010; the

21  City of Central Falls, Rhode Island, August of 2011;

22  Jefferson County, Alabama, April 2012; City of Stockton,

23  California, June of 2013; City of San Bernardino, California,

24  October of 2013.  Not one required a proof of claim to be

25  filed by an individual bondholder, and the question is why.

1  Why would that be?  And the reason is is because --

2          THE COURT:  The city isn't going to -- isn't

3  proposing to require that here, is it?

4          MR. KOHN:  Yes, because there's a bar date.  The way

5  I read the order, if you're required to file a proof of

6  claim, you are going to be barred.

7          THE COURT:  I thought, Mr. Ellman, didn't you say

8  that individual bondholders are not required to file proof of

9  claim -- proofs of claim?

10          MR. ELLMAN:  They would be --

11          MR. KOHN:  That's not what the order says.  I'm

12  sorry.

13          MR. ELLMAN:  I'm sorry.  Your Honor, they would be

14  subject to the bar date.  What I was trying to express is

15  that if they did not file a claim, we have listed --

16  scheduled a liquidated noncontingent undisputed amount, so if

17  they did not file a claim, they would not be left without a

18  claim.  I think this will work itself out.  I mean this is in

19  a sense --

20          THE COURT:  All right.  You've answered my question.

21  I'll hear from you.

22          MR. KOHN:  If I make one or two more points, your

23  Honor, the people that are going to be prejudiced by this are

24  not the institutional holders.  It's not going to be the

25  Barclays.  It's not going to be the banks.  It's going to be

1   the individual moms and pops that are going -- never -- that
2   have never gotten a proof of claim to send in for a bond, for
3   their claim of bond.  They've gotten voting and solicitation
4   for distribution purposes.  I personally have been working on
5   the Jefferson County case with the city's claims agent.  It
6   took six months.  Your Honor, if you go to details about what
7   has to happen, there is -- DTC has something called a global
8   certificate.  There are 25 series of GO's.  Each of those 25
9   series of general obligation bonds has a global certificate.
10  Then there's a CUSIP, and then there's something called a
11  contra-CUSIP, and then there's something called DWAC'ing.  It
12  was a mechanical nightmare just for voting and solicitation,
13  which was required under the Code.  There was no other way.
14  Here the city is going to do it twice.  They're going to do
15  it in the proof of claim process, and they're going to do it
16  in the voting process, so right away KCC is going to have
17  double the fees to the city, is going to incur -- the city is
18  going to incur twice as much fees as they would have if
19  they've just -- if they've just not solicited at all or
20  not -- I'm sorry -- not sent any proofs of claim to any of
21  the bondholders at all.  Now, they say what's the authority.
22  Well, first of all, there's Bankruptcy Rule 3005(a).
23          THE COURT:  What happens if I sustain your position?
24  What happens to their claims?
25          MR. KOHN:  Their claims are allowed.  Their claims

1  are -- subject to the plan, their claims would be allowed.

2  What's going to --

3       THE COURT:  Allowed in what amount?

4       MR. KOHN:  Allowed in the amount that they were

5  scheduled, that is owed on the books of -- on the books of

6  the debtor right now.  What's going to happen if you -- your

7  Honor is --

8       THE COURT:  So the debtor has already agreed to

9  that?

10      MR. KOHN:  Yeah, but -- the debtor has already

11  agreed to what?  The debtor agreed that if an individual

12  bondholder does not file the proof of claim -- the way I read

13  the order, if you're required to file the proof of claim, you

14  are barred from asserting any claim against the city right

15  now that's going to be substantive rights effective right

16  now.  You couldn't vote, and you can't receive --

17      THE COURT:  Mr. Ellman told me that the claim will

18  be allowed in the amount in the schedule of claims.

19      MR. KOHN:  As unsecured.  I don't know.

20      THE COURT:  Isn't that what you said?

21      MR. ELLMAN:  Yes.  Well, to start --

22      THE COURT:  Yes.

23      MR. ELLMAN:  Yes.

24      MR. KOHN:  And what happens if --

25      THE COURT:  It doesn't sound to me like the two of

 1  you disagree except on the point of whether a bondholder is
 2  given the opportunity to file a claim if they want to file a
 3  claim.
 4         MR. ELLMAN:  Correct.
 5         MR. KOHN:  But why would you do that?  If they're
 6  allowed, why --
 7         THE COURT:  Because it's a free country.  That's
 8  why.
 9         MR. KOHN:  No, no, no.  But it's going to be a mess.
10  It's really going to be a mess.  If you go ahead and you
11  solicit and send through institutional -- the institutional
12  nominees are not geniuses.  They're back office push-button
13  people, and this is the problem we're dealing with.
14         THE COURT:  That's encouraging to hear.
15         MR. KOHN:  Seriously, seriously.  If bondholders are
16  prejudiced at any point because of this order right now --
17  and that's what we're saying.  If they're not prejudiced,
18  that's fine.
19         THE COURT:  Okay.
20         MR. KOHN:  If they say --
21         THE COURT:  But I need you to tell me how you think
22  they're going to be prejudiced --
23         MR. KOHN:  If let's say --
24         THE COURT:  -- because I don't hear it yet.
25         MR. KOHN:  If let's say the monolines win and say --

```
 1            THE COURT:  Win what?
 2            MR. KOHN:  Win the issue of whether or not the GO --
 3   what they call unsecured is secured.  They're going to say,
 4   "Wait a second.  You should have filed your claim to say it's
 5   secured because we scheduled you as unsecured."  So their
 6   substantive right -- what's going to happen is you're going
 7   to have some GO's that are going to be allowed based on the
 8   debtor as unsecured and not as secured.  We filed a complaint
 9   recently.  I'm not sure if your Honor had a chance to read it
10   yet, but --
11            THE COURT:  I saw your complaint.
12            MR. KOHN:  Yeah.  One of the issues is that --
13            THE COURT:  Your complaint doesn't assert that those
14   claims are secured.
15            MR. KOHN:  Well, they -- we assert that the revenues
16   need to be set aside and we need to be paid.
17            THE COURT:  The word "secured" isn't in there, is
18   it?
19            MR. KOHN:  We reserved our right.  We reserved our
20   right to assert in a footnote -- I hope your Honor read it --
21   to assert that --
22            THE COURT:  Apparently not.
23            MR. KOHN:  Okay.  I'm not sure you did.  If the
24   order makes clear -- if the order makes clear that no matter
25   what a bondholder does, the treatment in the plan will be
```

1    pursuant to the confirmation order whether they're secured or

2    unsecured, that's fine, but it has to be made clear in

3    paragraph 15 that even if a GO holder does not file a proof

4    of claim, they're not subject to the bar of Section -- of

5    paragraph 15.  If the city agrees to that, that's fine.  We

6    could stand down.

7             MR. ELLMAN:  They will be subject to the bar to the

8    extent they have other kinds of claims they want to raise.

9    If their claim is simply for their principal and interest and

10   it's part of what we've scheduled, they'll still get that

11   claim whether they file anything or not because it's there.

12   I presume that there's nothing we can put on our list of

13   claims that would overrule a court subsequent determination

14   about the treatment of tax revenues or anything else.  That's

15   not intended.  Our concern was -- these are all good points,

16   and we would -- and our first reaction was we would -- we

17   embrace this idea.  It's less work for us.  It's less money.

18   But at least for me we haven't gotten comfortable not to get

19   nervous.

20            THE COURT:  I guess I'm not sure why we can't do

21   everything here.  I think, as a matter of due process, we

22   have to give anyone who we can reasonably determine is a

23   creditor a reasonable opportunity to file a claim, but at the

24   same time we can say that if the Court determines that a

25   given class of claims is secured or entitled to some kind of

1  special treatment, we will afford them that treatment even if

2  their claim came in differently.

3  　　　　MR. KOHN:  Yeah.  So I just don't --

4  　　　　THE COURT:  Can we do that?

5  　　　　MR. KOHN:  I just don't understand the city's

6  position --

7  　　　　THE COURT:  Hold on.

8  　　　　MR. KOHN:  -- for a second --

9  　　　　THE COURT:  Hold on.

10  　　　　MR. KOHN:  -- because --

11  　　　　THE COURT:  Can you agree to that?

12  　　　　MR. KOHN:  Yeah.  I could agree --

13  　　　　THE COURT:  Can you agree to that?

14  　　　　MR. ELLMAN:  Yes, your Honor.

15  　　　　MR. KOHN:  Yeah, but I --

16  　　　　THE COURT:  We're done.

17  　　　　MR. KOHN:  No.  Your Honor --

18  　　　　THE COURT:  We're done.  You win.

19  　　　　MR. KOHN:  Okay.  You may say I win, but don't

20  solicit -- don't send the proofs of claims to the moms and

21  pops.  Don't do -- I'm asking the city not to do that.

22  　　　　THE COURT:  No.  I'm sorry.  I'm sorry.  We have to.

23  As a matter -- as a matter of constitutional due process, we

24  have to try.

25  　　　　MR. KOHN:  It never happened before.

1          THE COURT:  Okay.  We have to try.

2          MR. KOHN:  There's Bankruptcy Rule 3005(a) that says

3     that we can file on their behalf.  They couldn't find an

4     authority.  We did.  And Bankruptcy Rule 3005(a) says, okay,

5     if they don't file a proof of claim within 30 days, then the

6     guarantor or surety can file on their behalf, but your Honor

7     is using 105(a) to say that the UAL Healthcare people do not

8     have to file a claim.

9          THE COURT:  Well, but hold on.

10         MR. KOHN:  The employees don't have to --

11         THE COURT:  There's nothing in what I just said that

12    precludes you from filing a claim, whatever claim you want

13    under the rule.

14         MR. KOHN:  Yeah, but why can't the order just say

15    they don't have to file a proof of claim?  Under 105 their

16    claim is allowed as scheduled.  That's it, period.

17         THE COURT:  For the simple reason that it's a free

18    country, and if they want to file a claim in the bankruptcy

19    case that affects them, how can I prevent that?

20         MR. KOHN:  But then the bar -- then the language in

21    paragraph 15 has to be crystal clear.

22         MS. CONNOR COHEN:  May I be heard, your Honor?

23         THE COURT:  I would invite -- I would invite your

24    participation with the city on clarifying that.

25         MS. CONNOR COHEN:  One last point, your Honor,

1   please.  I know you've had enough of this.

2           THE COURT:  Yeah.

3           MS. CONNOR COHEN:  I just want to point out on

4   behalf of Ambac that we actually have a contractual right to

5   act on behalf of the insured bondholders of the series that

6   we insure both for purposes of voting and for purposes of

7   filing claims, and if the city had contacted us, we would

8   have tried to work something out with them on an exception

9   that would say that, and that's all we would like is that

10  the -- there be an exception that says that our bondholders

11  don't have to file proofs of claim.

12          THE COURT:  No.  If they want to file a proof of

13  claim, they file it.  If you want to object to it on the

14  grounds that you have control over it, you do that.

15          MS. CONNOR COHEN:  I'm not going to object to it.  I

16  assume the city will object to it because we'll file on

17  behalf of all covered bonds.

18          THE COURT:  This is just about filing claims.

19          MS. CONNOR COHEN:  Okay.

20          THE COURT:  This is not about ruling on anything.

21          MR. KOHN:  Right.

22          THE COURT:  This is just filing claims, folks.  Work

23  it out.

24          MR. KOHN:  So just as a matter of clarification --

25          MS. CONNOR COHEN:  Thank you.

1          MR. KOHN:  -- if the orders -- if the order should

2  make crystal clear that if a bondholder does not file a proof

3  of claim, they will never be barred -- they're not barred by

4  this process from what's stated in paragraph 15 at all.

5          THE COURT:  I'm sorry.  And what's in 15?  Let's

6  have a look at that.

7          MR. ELLMAN:  Paragraph 15 of --

8          THE COURT:  Hold on one second.

9          MR. KOHN:  Paragraph 15 of your order.

10         THE COURT:  Yeah.  Hold on.

11         MR. KOHN:  Pursuant to Section 105(a), whoever fails

12  to properly file a claim by the bar date shall be forever

13  barred and estopped from making any -- asserting any claims

14  against the city in an amount that the -- voting upon,

15  receiving distribution under any plan of adjustment.

16         THE COURT:  You must have a different paragraph 15

17  than I do.

18         MR. ELLMAN:  Paragraph 21, your Honor, I think, in

19  the newer draft.

20         MR. KOHN:  Oh, I don't have -- I was not --

21         THE COURT:  Okay.  Okay.

22         MR. KOHN:  Nobody gave me a newer draft.

23         THE COURT:  All right.  Hold on one second.

24         MR. ELLMAN:  I gave it to you earlier.

25         MR. KOHN:  When did you give it to me?

1              THE COURT:  Hold on.  Hold on.

2              MR. KOHN:  I never got it.

3              MR. ELLMAN:  I sent it to you a couple --

4              MS. CONNOR COHEN:  Here.  I did.

5              MR. ELLMAN:  It is 21.

6              THE COURT:  Well, if it doesn't say in here that an

7    entity that doesn't file a claim will get the claim if it's

8    listed as liquidated in your --

9              MR. ELLMAN:  It does, though.  That's what this

10   paragraph says.  You're barred if you have to file a claim

11   and you don't.  If you already have a claim --

12             THE COURT:  Point that language out to me.

13             MR. ELLMAN:  Well, it says -- I have to read this

14   for a second.  I'm sorry, your Honor.  Well, it says, "Any

15   entity that is required to file a proof of claim --

16             THE COURT:  Okay.  So where does it say the claim

17   is --

18             MR. ELLMAN:  -- but that fails to properly do so" --

19   so you get to (a), asserting a claim against the city in an

20   amount that exceeds the amount identified in the claims as

21   undisputed, noncontingent, liquidated, so if they want to ask

22   for more than we've scheduled, they have to file a claim.  If

23   they want to ask for a different class than we've scheduled,

24   they have to file a claim.  So that's where that language is,

25   your Honor.

1     MR. KOHN:  So why couldn't you just say that they're

2  not required?  Take them out of the list that's required to

3  file.

4     MR. ELLMAN:  They're not required to file.

5     MR. KOHN:  They are in the list that they're

6  required to file.

7     MR. ELLMAN:  If they want to assert something

8  different, they are required to file.  This is the

9  distinction.

10     MR. KOHN:  No.  That's not what it says here.

11     THE COURT:  No.  It is.  It's just --

12     MR. ELLMAN:  That is what it says.  I mean it's

13  written in this legalese that --

14     MR. KOHN:  No.  It says --

15     THE COURT:  No.  I'm going to -- I'm going to

16  suggest that -- is paragraph 8 the one where you list the

17  people not required to file proofs of claim?

18     MR. ELLMAN:  It may be.  It sounds familiar.

19  Looking for the final paragraph.

20     THE COURT:  Page 7?

21     MR. ELLMAN:  Yeah.  I'm trying to find it, your

22  Honor.  Yes, yes.  Maybe we should list them as --

23     THE COURT:  Yes.

24     MR. ELLMAN:  If they are happy to accept the --

25     THE COURT:  Yes.

1          MR. ELLMAN:  -- claims amount --

2          THE COURT:  They don't have to file a proof of claim

3     if they accept the amount and -- I guess the word is

4     "class" -- that you have asserted in your list of claims.

5          MR. KOHN:  But not treatment.

6          MS. CONNOR COHEN:  But then --

7          THE COURT:  But what?

8          MR. KOHN:  Not treatment as unsecured, not

9     treatment.

10          THE COURT:  Right.  That's subject to --

11          MR. KOHN:  Right.

12          THE COURT:  -- all your litigation.

13          MR. KOHN:  Okay.  Great.  Thank you.

14          THE COURT:  All right.

15          MR. KOHN:  That's all we want.

16          THE COURT:  But I do think it's important to make

17     those changes, have it approved as to form by both counsel

18     here and then submit it to the Court in the electronic order

19     processing program.

20          MR. ELLMAN:  That would be fine.  And like I said,

21     the one thing that I do anticipate being challenged, not to

22     repeat myself, but is trying to make the words easier to read

23     without undoing the agreements among the parties.

24          THE COURT:  Just do the best you can.

25          MR. ELLMAN:  And so I think we'll have to write

1  around the words we've agreed to and try to fix it up

2  otherwise.

3         THE COURT:  But primarily I want you to focus on the

4  summary.

5         MR. ELLMAN:  Which, you know -- but it does have --

6  some of that summary is language that was to resolve

7  objections, so we'll do our best.  I'll just commit to that,

8  your Honor.

9         THE COURT:  Well, but I don't want you to submit

10  this order for approval as to form to anyone other than your

11  two objecting parties here.  I don't want you to recirculate

12  it to everyone.

13        MR. ELLMAN:  You do not.  Okay.

14        THE COURT:  No.  No, no, no.  That'll take forever.

15        MR. ELLMAN:  It will.  It's a typical thing we would

16  do, but we will take that instruction.

17        THE COURT:  Yeah.  I want you to -- I want you to --

18  counsel, I want you to turn this around right away.  That's

19  it.

20        MR. ELLMAN:  Thank you, your Honor.

21        MR. HAGE:  Your Honor, one point.

22        THE COURT:  What?

23        MR. HAGE:  Just to be clear, there's actually three

24  parties, National Public --

25        THE COURT:  There's two.

1          MR. HAGE:  Well --

2          THE COURT:  One, two.

3          MR. HAGE:  But National Public Finance --

4          THE COURT:  One, two.

5          ATTORNEY:  They filed a joinder.

6          MR. HAGE:  But we joined in the objection.  I just

7    didn't jump into the pool of the oral arguments.

8          THE COURT:  And I appreciate that, but you don't

9    need to review language.  They're going to review it for you.

10          MR. KOHN:  We'll see.  Will do.  We'll send it to

11    you guys.

12          THE COURT:  I don't want this held up.  Do you hear

13    me?

14          MR. KOHN:  Okay.

15          MS. CONNOR COHEN:  Except that I've missed my plane,

16    so I'm going to be home at one o'clock in the morning, so --

17          THE COURT:  Oh, I'm so sorry.

18          MS. CONNOR COHEN:  -- it'll be tomorrow.

19          THE COURT:  All right.  If you have any issues, get

20    me on the phone, seriously.  I want this in.  We're done.

21          MR. ELLMAN:  Thank you, your Honor.

22          THE CLERK:  All rise.  Court is adjourned.

23       (Proceedings concluded at 4:46 p.m.)

INDEX


<u>WITNESSES:</u>

   None

<u>EXHIBITS:</u>

   None


        I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.


/s/ Lois Garrett                    November 19, 2013
_____    _____
Lois Garrett