UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


IN RE:  CITY OF DETROIT,      .        Docket No. 13-53846
        MICHIGAN,             .
                             .        Detroit, Michigan
                             .        November 14, 2013
                Debtor.       .        9:00 a.m.
. . . . . . . . . . . . . . .


        HEARING RE. PETITIONERS ROBERT DAVIS' AND CITIZENS
     UNITED AGAINST CORRUPT GOVERNMENT'S EMERGENCY MOTION
       FOR CLARIFICATION OF THE COURT'S JULY 25, 2013,
     STAY ORDER; MOTION FOR RELIEF FROM THE AUTOMATIC STAY
      AND TO WAIVE PROVISIONS OF F.R.BANKR.P. 4001(a)(3)
             FILED BY CLIFFORD PROPERTIES, INC.
          BEFORE THE HONORABLE STEVEN W. RHODES
             UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:       Miller, Canfield, Paddock & Stone, PLC
                      By:  TIMOTHY A. FUSCO
                           STEPHEN S. LAPLANTE
                      150 West Jefferson, Suite 2500
                      Detroit, MI  48226
                      (313) 496-8435

For Clifford          FLG, PLLC
Properties:           By:  MICHAEL A. GREINER
                      29601 Hoover
                      Warren, MI  48093
                      (586) 693-2000

For Robert Davis      Paterson Law Office
and Citizens          By:  ANDREW A. PATERSON
United Against        46350 Grand River, Suite C
Corrupt               Novi, MI  48374
Government:           (248) 568-9712

Court Recorder:          Letrice Calloway
                         United States Bankruptcy Court
                         211 West Fort Street
                         21st Floor
                         Detroit, MI  48226-3211
                         (313) 234-0068

Transcribed By:          Lois Garrett
                         1290 West Barnes Road
                         Leslie, MI  49251
                         (517) 676-5092

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1          THE CLERK:  All rise.  Court is in session.  Please
2     be seated.  Case Number 13-53846, City of Detroit, Michigan.
3          THE COURT:  Good morning.
4          MR. LAPLANTE:  Good morning, your Honor.
5          MR. FUSCO:  Good morning, your Honor.
6          THE COURT:  I wanted to proceed with Mr. Davis'
7     motion for clarification.
8          MR. LAPLANTE:  Good morning, your Honor.  Steve
9     LaPlante appearing on behalf of the city.  I don't see Mr.
10    Davis or Mr. Paterson here yet.
11         THE COURT:  Are the attorneys here on the Clifford
12    Properties motion?
13         MR. FUSCO:  Your Honor, I am here for the city.
14         THE COURT:  And no one for the moving party.  All
15    right.  Well, we'll just sit here and wait a few minutes.
16         MR. FUSCO:  There were two people ahead of me, I
17    believe, at about quarter till.
18         THE COURT:  Okay.
19         MS. CALTON:  Your Honor, when I came through
20    security and I asked which courtroom the hearing was in, they
21    said, "Oh, we didn't even know there was a hearing today."
22         THE COURT:  Okay.
23         MR. FUSCO:  They seemed surprised when I said I was
24    coming to a City of Detroit --
25         THE COURT:  For once we're off the radar screen.

1   I've been advised that there is a long line on the Lafayette

2   Street side. All right. Chris, let's -- all right. I think

3   it's best here to take a recess, and we will try to reach

4   counsel on both of these matters to see if they plan to be

5   here today. I suppose it's possible that they missed the

6   notice that changed the time of the hearing, so we'll see if

7   we can track this down, so we'll be in recess.

8         THE CLERK: All rise. Court is in recess.

9     (Recess at 9:08 a.m. until 9:13 a.m.)

10        THE CLERK: Court is in session. Please be seated.

11   Recalling Case Number 13-53846, City of Detroit, Michigan.

12        MR. FUSCO: Can I get --

13        THE COURT: Okay. I understand --

14        MR. FUSCO: Can I get Mr. LaPlante, your Honor?

15        THE COURT: Yes. I understand counsel are here on

16   the Clifford matter --

17        MR. GREINER: Yes.

18        THE COURT: -- Clifford Properties matter?

19        MR. GREINER: Yes, your Honor. Michael Greiner

20   appearing for the movant. Your Honor, I apologize for my

21   tardiness.

22        THE COURT: All right.

23        MR. GREINER: I went to the incorrect courtroom.

24        THE COURT: Stand by one second.

25        MR. FUSCO: Timothy Fusco, Miller Canfield, on

1  behalf of the city.

2          MR. GREINER:  Yes, your Honor.  This is our motion

3  for relief from the automatic stay.  I'm not going to belabor

4  the points that we made, but essentially what the issue is

5  here, your Honor, is that the movant is a property owner, a

6  business, essentially a bar in the City of Detroit.  There

7  were various issues of title with respect to the property.

8  We filed a quiet title action essentially to really clear up

9  the title and, as a result of that, essentially noticed every

10 party -- possible party in interest.  Obviously the City of

11 Detroit would be one of them since the property is located in

12 the City of Detroit.

13          We would submit to the Court, your Honor, that

14 reading the debtor's response, they claim, as they say, that

15 they lack a dog in the fight.  If this is correct, your

16 Honor, then I would submit to the Court that really that's

17 the essence of granting relief from the stay, you know, that

18 there -- that the property is not necessary for an effective

19 reorganization.

20          THE COURT:  Why did you sue the city?

21          MR. GREINER:  Your Honor, we essentially sued every

22 party that could -- that we saw any reference on the title to

23 because we essentially wanted to make sure that the title was

24 clear.  If it turns --

25          THE COURT:  A reference on the -- in the title -- in

1  the chain of title to the City of Detroit?

2         MR. GREINER:  Well, the City of Detroit -- there had

3  been, I believe, property tax liens in the past, and so as a

4  result of that --

5         THE COURT:  Were they discharged?

6         MR. GREINER:  I believe that they were, your Honor.

7         THE COURT:  So I ask again why did you sue them?

8         MR. GREINER:  Again, we just wanted to make

9  absolutely certain that any possible party who might, you

10  know, be able to put any kind of --

11         THE COURT:  Does Rule 11 or whatever the state

12  equivalent of that is permit that?

13         MR. GREINER:  My understanding, your Honor, is that

14  the typical procedure with quiet title actions is that they

15  would include every party who at some point or another has

16  had an interest in the title.

17         THE COURT:  And not just every party who you

18  reasonably conclude might assert such an interest?

19         MR. GREINER:  Well, your Honor, I would submit to

20  the Court that we -- that is reasonable to assume considering

21  the fact that there was a tax lien.  This is the taxing

22  entity.

23         THE COURT:  You told me that they were discharged.

24         MR. GREINER:  Well, again, this is the taxing

25  entity, so there could be potentially outstanding taxes that

1  still have not -- that no lien is evident on the record for.

2  We just want to make sure that as of a certain date it's

3  clear with --

4          THE COURT:  Well, but a quiet title action wouldn't

5  deal with that.

6          MR. GREINER:  Well, it would certainly make sure

7  that the -- that as of today essentially we have marketable

8  title.

9          THE COURT:  Not if there's an unfiled tax lien that

10  needs to be paid.  All right.  What's the city's position?

11          MR. FUSCO:  Your Honor, when we first received this,

12  I contacted Mr. Greiner on October 14th and said we don't

13  know why you're naming the city as a defendant.  It's not

14  required by the statute, and, on the other hand, please let

15  us know what interest you claim the city has.  And you

16  mentioned the court rule.  Michigan Court Rule 3.411 requires

17  the complaint to quiet title to allege the interest the

18  plaintiff claims, the interest the defendant claims in the

19  property, and the facts establishing the superiority of the

20  plaintiff's claim.  That's all we've been trying to find out.

21  We ran a search using both the parcel number, the address,

22  and we've come up with conflicting information on who owns

23  it.  One search shows Clifford Street Properties.  The other

24  shows an interest to Prime Financial.  We're just not sure.

25          Now, if it is taxes, then, as your Honor says, I

1    don't think that's proper in a quiet title action to

2    extinguish outstanding taxes.  As recently as yesterday, I

3    asked Mr. Greiner to give me a copy of the title policy.  I'm

4    assuming you wouldn't start a quiet title action without

5    having run title.  Let me see what the interest of the city

6    is, and we'll determine if we believe it's a cognizable

7    interest and if we believe defendant.  We don't think the

8    city should be involved in an action when there's no evidence

9    that it has any interest that's properly the subject of a

10   quiet title action, so we believe the motion should be

11   denied.

12           Again, if he can show me an interest, we will

13   promptly -- we've stipulated to lift of stay in numerous

14   cases involving mortgage foreclosures where the other party

15   has demonstrated to us that, in fact, our liens are junior.

16   We're not requiring people to go through motions for no

17   reason.

18           THE COURT:  It appears to the Court that the

19   plaintiff's claim against the city borders on the frivolous

20   if it's not altogether frivolous, so in the circumstances the

21   motion for relief from stay is denied.  The city really

22   shouldn't spend another minute on this matter until it is

23   shown that there is a necessity to do so, and that certainly

24   hasn't been established of record here, so the Court will

25   prepare an order denying the motion.

1    We have been advised that Mr. Paterson is on -- or,
2  yes, Paterson -- is on his way and will be here momentarily,
3  so we'll just stand by and wait for him.
4    THE CLERK:  All rise.
5    THE COURT:  Actually, I was going to stay in court.
6    THE CLERK:  You may be seated.
7    THE COURT:  I'm going to -- I'm just going to stay
8  here, so you can have your seats.  Yes?  Okay.  Thank you.
9  Sir.
10    MR. PATERSON:  Andrew Paterson.  Do I need to check
11  in, your Honor?
12    THE COURT:  No, no.  We can just proceed with your
13  motion for clarification.
14    MR. PATERSON:  Your Honor, the --
15    THE COURT:  And when you -- yeah.  When you address
16  the Court, just stand at the lectern there for me, and speak
17  right into the microphone.
18    MR. PATERSON:  Your Honor, the plaintiff's action in
19  the state court is one sounding in quo warranto that
20  questions the authority by which the officeholder holds
21  office.  It's not designed to seek any damages that is
22  considered under the Bankruptcy Act.  It's largely a issue of
23  following the -- in this case, the city charter in the
24  selection of the president of the common council.
25    And counsel for the city and I and the debtor have

1    reached an agreement in substance on what we think an order

2    could fashion.  Our only difference of opinion -- and it

3    really isn't an opinion -- is I had asked for an additional

4    paragraph that would, as we did in the election cases, apply

5    to any subsequent cases that were filed in sounding in quo

6    warranto not seeking damages or monetary costs or anything of

7    that sort because I anticipate that my client and I'm sure

8    others may file similar actions questioning different

9    appointments or actions.

10           THE COURT:  Who?  What?

11           MR. PATERSON:  Well, the city charter, as you may or

12   may not know, is relatively new, and the provisions of it

13   have some transitional items in it that require following the

14   old charter up to a certain point in time and then following

15   the new charter after that, and the -- in the present case,

16   the appointment of the successor president of the City

17   Council did not comply with the old method.  They sought to

18   apply the new method, and that's the basis of the lawsuit

19   seeking to force them to --

20           THE COURT:  I understand that.  My question,

21   inarticulate as it was, was who else's office do you plan to

22   challenge?

23           MR. PATERSON:  Well, not the emergency manager's.

24   That was part of --

25           THE COURT:  I'm asking who.

1          MR. PATERSON:  That was part of the stipulation.

2    Offhand, you know, it's not a certainty, but there's some

3    questions surrounding the appointment of the chief of police.

4    There's some questions surrounding some other appointments.

5    It's your call.  I mean I can come back here each time, and

6    we can address it.

7          THE COURT:  It's just unfathomable to me that in a

8    city with the problems this city has, you want to file an

9    action that calls into question the office of the chief of

10   police.  Why do you want to do that?

11         MR. PATERSON:  I don't.  My client does.

12         THE COURT:  Why does your client want to do that?

13         MR. PATERSON:  Because he doesn't believe they

14   followed the law, but --

15         THE COURT:  Do you want to be heard on this, sir?

16   I'm sorry.  Was there something more you wanted to say, Mr.

17   Paterson?

18         MR. PATERSON:  It really is your call, not ours.  I

19   mean I don't mind coming back each time if -- to find out

20   whether the stay applies or not.  I mean I guess I'm

21   indifferent to that.

22         THE COURT:  Sir.

23         MR. LAPLANTE:  Good morning, your Honor.  Again, for

24   the record, Stephen LaPlante appearing on behalf of the city.

25   I hope you've seen our supplemental brief.  We believe that

1   in filing that that we were following the Court's direction

2   from the prior Davis and White hearing; that we had a way to

3   have the plaintiffs state before this Court that if they

4   weren't going to pursue any claims against Saunteel Jenkins

5   or the City of Detroit, directly or indirectly, and that

6   that -- in that manner the stay wouldn't apply but that it

7   did apply if they were going to pursue such claims, and so

8   that's why we offered the stipulation we did.

9         As far as a blanket relief from stay for unknown

10   parties to bring quo warranto actions on unknown facts

11   against unknown defendants, we would ask that the Court deny

12   that request for relief.  First of all, it's raised for the

13   first time here and not in their papers, and there has been

14   no due process to anyone else in this case, just the people

15   that managed to show up for the nine o'clock call this

16   morning.  And while Mr. Paterson expects that he'll file

17   something on behalf of Mr. Davis or Citizens United, more

18   importantly, it's the unknown defendants that matter.  We

19   don't know whether the stay extension order pertains to them,

20   for example, the city's agents and representatives that

21   Emergency Manager Orr is acting through, and we will, I

22   think, need to see what facts and circumstances are applied

23   in that quo warranto action that's yet to be filed.

24         I expect that one of the actors is Mayor Elect

25   Duggan.  Mr. Davis has said emphatically that he will not be

1    sworn in as the mayor of the City of Detroit in a radio
2    interview with a radio station in Lansing, so I expect he's
3    going to be one of the actors.  Now, we don't know what role
4    he's going to play in this Chapter 9.  I don't know what the
5    emergency manager may ask of him as the mayor when he is
6    sworn in, but if he's going to be a target, then it may well
7    jeopardize the city's ability to restructure, and so I think
8    that we should maintain this Court as the gatekeeper to
9    determine whether the stay applies or not on a case-by-case
10   basis.

11        THE COURT:  Does the city seek stay violation
12   damages against Mr. Davis and Citizens United for filing this
13   quo warranto action?

14        MR. LAPLANTE:  We have not, your Honor, considered
15   it, but --

16        THE COURT:  Do you reserve the right to?

17        MR. LAPLANTE:  We do, particularly since this has
18   been a series of motions to determine, you know, to what
19   extent the Court's order applies rather than paying the $176
20   and filing a motion for relief from stay, which would be the
21   normal procedure.

22        THE COURT:  You already have a court order saying
23   that this lawsuit violated the automatic stay.

24        MR. LAPLANTE:  That's right.  Judge Popke did say
25   that, in fact, this lawsuit did file the automatic stay, and

1  on separate grounds she denied the application to file a

2  complaint for a writ of quo warranto.

3        THE COURT:  Do you have the proposed order?

4        MR. LAPLANTE:  I have attached to -- I have attached

5  to these papers --

6        THE COURT:  Let me see what you have.

7        MR. LAPLANTE:  May I approach?

8        THE COURT:  Mr. Paterson --

9        MR. PATERSON:  Yes.

10        THE COURT:  -- given the Circuit Court's order here,

11  what is there left to do in that case?

12        MR. PATERSON:  Appeal it.  I think she was incorrect

13  on the substantive facts.

14        THE COURT:  And the city is willing to lift the stay

15  for that purpose?

16        MR. LAPLANTE:  Yes, your Honor.

17        THE COURT:  All right.  Assuming the Court will deny

18  your request for a blanket clarification regarding future

19  such actions, is this form of order acceptable to you, sir?

20        MR. PATERSON:  It is, your Honor.

21        THE COURT:  All right.  The Court will enter this

22  order with two cautions to you I guess is the best way to put

23  it.  First, the Court does deny the request for a blanket

24  order which says that future quo warranto actions may be

25  filed without permission of this Court.  Second, I think it's

1  fair to caution you and your client on the record that if any

2  such actions are filed without clarification or relief from

3  the stay, you and your client risk sanctions for violating

4  the automatic stay.

5  MR. PATERSON:  Well, your Honor, if I may speak to

6  that for a second, the nature of the quo warranto under

7  Michigan law is that the plaintiff files an application for

8  leave to file a complaint and is not required or mandated to

9  even deliver to the defendant a copy of that, so in this

10  instance --

11  THE COURT:  Well, I'm not saying it does violate the

12  automatic stay.  We're not in a position to rule that now.

13  I'm just saying that your client risks it.  That's all.

14  MR. PATERSON:  I understand.  Understand.

15  THE COURT:  All right.

16  MR. PATERSON:  Thank you.

17  THE COURT:  So, Mr. LaPlante, you can upload that

18  form of order in our order processing program, and I'll

19  return this paper to you.

20  MR. LAPLANTE:  Okay.  We will do so, your Honor.

21  MR. PATERSON:  Thank you, your Honor.

22  THE COURT:  All right.

23  MR. LAPLANTE:  Thank you.

24  THE COURT:  So I think that's it for the nine

25  o'clock matters, and we'll reconvene at eleven.

1          THE CLERK:  All rise.  Court is in recess.

2      (Proceedings concluded at 9:35 a.m.)

3                          *  *  *


                          INDEX


WITNESSES:

     None

EXHIBITS:

     None


          I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.


/s/ Lois Garrett                 November 19, 2013
_____            _____
Lois Garrett