# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-------------------------------------------------------------x
                                     :

In re                             : Chapter 9
                                       :

CITY OF DETROIT, MICHIGAN,     : Case No. 13-53846
                                       :

                Debtor.      : Hon. Steven W. Rhodes
                                       :
                                       :
-------------------------------------------------------------x

## MOTION OF CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE APPOINTING AND DIRECTING THE DEBTOR TO COOPERATE WITH A COMMITTEE OF CREDITORS AND INTERESTED PERSONS TO ASSESS THE ART COLLECTION OF THE DETROIT INSTITUTE OF ARTS BASED ON ARMS-LENGTH MARKET TRANSACTIONS TO ESTABLISH A BENCHMARK VALUATION

The Creditors[1] hereby submit this motion (the "**Motion**") for entry of an order[2]

pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**")

directing the City of Detroit, Michigan (the "**City**" or the "**Debtor**"), the debtor in the above-

captioned case (the "**Chapter 9 Case**"), to cooperate with a Court-appointed committee of

creditors and interested parties to assess the Detroit Institute of Arts (the "**DIA**") art collection

(the "**Art**") using a process, structured and executed by a leading art intermediary or

---

[1] Financial Guaranty Insurance Company ("**FGIC**"), Syncora Guarantee Inc. and Syncora Capital
Assurance Inc., FMS-WM Service, solely in its capacity as servicer for FMS Wertmanagement, Ambac
Assurance Corporation, Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A.,
and Erste Europäische Pfandbrief- und Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A.,
Michigan Council 25 of the American Federation of State, County and Municipal Employees, AFL-CIO
and Sub-Chapter 98, City of Detroit Retirees, Wilmington Trust Company, National Association, as
Successor Trustee and Successor Contract Administrator, Dexia Crédit Local, Dexia Holdings, Inc., and
NORD/LB Covered Finance Bank S.A. join in this Motion.

[2] Pursuant to Rule 9014-1(b)(1) of the Local Rules of the Bankruptcy Court for the Eastern District of
Michigan (the "**Local Rules**"), a copy of the proposed form of order granting this Motion is attached
hereto as **Exhibit 1**.

US_ACTIVE:\43662701\11\45259.0007

intermediaries, that considers a wide range of potential options to monetize the Art based on arms-length market transactions, in order to establish a benchmark valuation for the Art in connection with the plan confirmation process. In support of this Motion, the Creditors respectfully represent as follows:

## Preliminary Statement

1. The City has made it clear that it intends to file and attempt to confirm a plan of adjustment as soon as possible, so that it can emerge from chapter 9 and focus on what will inevitably be a long process of revitalization and recovery. While the Creditors understand and support the City's goals – assuming the City files an appropriate plan of adjustment – there is a concern that the City's singular focus on exiting chapter 9 quickly may backfire. Based on the City's conduct to date, there is a significant chance that the plan of adjustment it files will engender lengthy and contentious litigation due to a failure to provide for monetization of its non-essential assets, including the Art, potentially one of the City's most valuable assets. By this Motion, the Creditors seek to put in place a process that will allow the City to reach a consensus with creditors and avoid the delay and waste of resources that would result from such litigation.

2. As part of the plan confirmation process, in order to meet the "best interests of creditors" confirmation requirement, the City will need to prove that it has undertaken a reasonable effort to repay creditors by affording creditors the greatest possible return from the City's assets. The City is unique in this regard. Generally, a municipal debtor's most valuable "asset" is its ability to raise taxes, as municipalities rarely own tangible, non-essential assets. The City, however, has the Art, a valuable asset (speculated to be worth billions of dollars) that is not connected with the delivery of any core services the City provides to ensure the health, safety and welfare of its citizens. Accordingly, the "best interests of creditors"

US_ACTIVE:\44366270\11\45259.0007

requirement dictates that the City must demonstrate that its plan maximizes the value of the Art to enhance creditor recoveries. The only way to prove this is to provide an assessment of the Art based on arms-length market transactions, against which creditors and the Court can compare the City's plan's proposed treatment of the Art (or any proceeds of a transaction that monetizes the Art).

3.      The City has given no indication that it has taken steps to test the market value of the Art. Although the City has hired Christie's, at this late date in the process before the imminent filing of the plan, creditors have no specific information about what Christie's has done with respect to the Art, the nature or scope of Christie's appraisal or when the appraisal will be complete. Accordingly, the Creditors request the Court to direct the City to cooperate with a committee of creditors to assess the value of the Art based on arms-length market transactions that are consistent with recommendations regarding value-maximization strategies made by and subject to consultation with a leading art intermediary or intermediaries. This collaborative process will enable the City and creditors to explore a wide range of options to monetize the Art, including options that preserve the DIA as a culturally relevant institution as well as enhance creditor recoveries, in order to reach a consensus about the treatment of the Art under the plan.

4.      By filing this Motion, the Creditors are not seeking to lodge a premature confirmation objection. The Creditors are simply trying to ensure that the City's efforts to file and confirm an appropriate plan quickly are not wasted. Putting in place a process that will generate consensus over the proper benchmark value of the Art will streamline the plan confirmation process by avoiding unending litigation over this issue.

US_ACTIVE:\44366270\11\45259.0007
3

## Jurisdiction

5.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Factual Background

6.     On June 14, 2013, approximately one month prior to the commencement of the Chapter 9 Case, Kevyn D. Orr, the emergency manger of the City (in such capacity, the "**Emergency Manager**") met with approximately 150 representatives of the City's bondholders, bond insurers, unions, pensioners, retiree associations, and other key constituents, including the Creditors, and presented the City's "Proposal for Creditors" (the "**Proposal**").  In the Proposal, the City conceded that one of its key restructuring objectives must be, "to the fullest extent possible under all of the circumstances . . . [to] [m]aximize recoveries for creditors . . . [and] [g]enerate value from City assets where it is appropriate to do so."  Proposal at 41.  To that end, the Proposal included a "Realization of Value of Assets" section that purportedly described the City's plan for realizing the value of certain assets, including, among others, Belle Isle Park and the Art.  *Id.* at 83-89.

7.     With respect to Belle Isle Park, the Proposal indicated that the City intended to enter into a lease transaction with the State of Michigan (the "**State**") on generally the same terms as a proposal the Governor had made to the City in January 2013.  *Id.* at 87.  On July 16, 2013, the City made available in its data room copies of (i) a draft lease between the City and the State (by its Department of Natural Resources (the "**DNR**")), dated January 18, 2013 (the "**January Lease**"), (ii) an analysis of the January Lease, recommending approval thereof, written by the director of the City Council Fiscal Analysis Division, and (iii) a

US_ACTIVE:\44366270\11\45259.0007

breakdown of the expenses the City incurred to operate Belle Isle Park in Fiscal Year 2012. Neither the Proposal nor the analysis of the January Lease disclosed whether the City had undertaken, or even entertained the idea of, a competitive bidding process or private purchaser transaction to maximize the value of the park. Nor was there any information about the park's value or any effort by the City to obtain a valuation.

8.     After July 16, 2013, the City provided no information to creditors regarding the status of its negotiations with the State, or any alternative transactions it was considering, with respect to Belle Isle Park, despite a request from FGIC for such information. Then, on October 1, 2013, the Governor announced that the Emergency Manager and the director of the DNR had executed a lease that same day, providing for the DNR to assume management of Belle Isle Park for a 30-year term, with two optional 15 year renewals. Like the January Lease, the lease does not provide for the State to make any monetary payments to the City; however, the Emergency Manager estimates that the DNR's management of Belle Isle Park will save the City between $4 million and $6 million per year in maintenance and operating expenses. *See* Guillen, Joe, *Detroit council Oks its own lease deal for Belle Isle: 10 years instead of 30*, Detroit Free Press, Oct. 15, 2013 available at http://www.freep.com/article/20131014/NEWS01/310140106/. The Emergency Manager did not provide creditors with any notice of the execution of this transaction and failed to solicit or consider input from creditors with respect to maximizing the value of Belle Isle Park. In addition, to date, the Emergency Manager has not shared with creditors any information demonstrating that the lease transaction maximizes the value of the park. Certainly, the City must have informed itself before deciding to execute the lease. This non-collaborative process

5

surrounding the City's negotiations of the lease of Belle Isle Park makes it impossible for creditors to determine whether the transaction maximizes the value of this important asset.

9. Having been dealt a significant transaction negotiated behind closed doors without creditor input, the Creditors fear the City will similarly keep creditors in the dark about what steps, if any, it has taken or will take to explore options to monetize the Art in a manner that maximizes value. The Proposal did not disclose any information about the City's efforts to assess or explore strategies for monetizing the Art, other than to note that the City anticipated having "further dialogue" with the DIA regarding its contention (echoed by the State Attorney General) that the Art is held in public trust and cannot be used for any purpose other than to exhibit, maintain or enhance the collection itself. Proposal at 88.[3] To date, other than retaining Christie's, the Emergency Manager has failed to provide creditors with any information regarding any further steps the City has taken or intends to take to explore options and strategies to monetize the Art in a manner that maximizes value. And, creditors have very little information about the nature and scope of Christie's appraisal, including with respect to the underlying assumptions it is using or types of potential transactions it is considering, or when its appraisal will be complete. It is entirely possible, for example, that Christie's is valuing only certain pieces and not using a competitive marketing process, the strategy that would yield the highest and most accurate value. *See e.g.* Vogel, Carol, *At $124.4 Million, Triptych Is the Most Expensive Artwork Ever Sold at an Auction*, The New York Times, Nov. 12, 2013, *available at*

---

[3] On June 13, 2013, the Attorney General of the State of Michigan issued Attorney General Opinion Number 7272 (the "**AG Opinion**"), concluding that "the Art is held by the City in a charitable trust for the people of Michigan, and no piece in the collection may thus be sold, conveyed, or transferred to satisfy City debtor or obligations." The Creditors believe that the AG Opinion is not supported by the law or the facts for multiple reasons. However, given that the Motion only requests that the Court direct the City to engage in a process to value the Art, and not to sell, convey or transfer it, the Motion does not address the AG Opinion.

http://www.nytimes.com/2013/11/13/arts/design/bacons-study-of-freud-sells-for-more-than-142-million.html?_r=0 (noting that a piece of artwork recently sold for $142.4 million, making it the most expensive work of art ever sold, after a competitive auction that was the culmination of over a month of a public, international marketing efforts). Thus, Christie's appraisal, to the extent inconsistent (for whatever reason) with such a robust sale process, could result in an inappropriately low assessment, substantially below the market value of the Art, which is speculated to be in the billions of dollars range. *See* Christoff, Chris, *Christies Will Appraise Detroit Art Institute Collection*, Bloomberg Aug. 6, 2013 *available at* http://www.bloomberg.com/news/2013-08-06/christie-s-to-appraise-detroit-art-institute-s-holdings.html (noting that the Art may be worth at least $2.5 billion).

10.     In addition, the Emergency Manager is being pressured to take the Art "off the table" as a potential source of recovery for creditors. Selweski, Chad, *Final push to save DIA art as bankruptcy takes shape*, The Macomb Daily, Nov. 14, 2013 *available at* http://www.macombdaily.com/20131114/final-push-to-save-dia-art-as-bankruptcy-takes-shape.

11.     All of the foregoing is extremely concerning, particularly in light of the expedited timetable the City has imposed on the Chapter 9 Case. Although the Court has given the City until March 1, 2014 to file a proposed plan of adjustment, the City has insisted that it will file a plan by the end of 2013.[4] However, without an assessment of the Art based on arms-length market transactions, against which creditors can evaluate whatever strategy the City pursues for monetizing the Art, no plan can succeed.

---

[4] *See* 8/2/13 Tr. at 42:1 – 42:8 ("Our view is that time is our enemy . . . it is our hope and desire that we will file a plan by year end, which is well in advance of the [March 1, 2014] deadline [the court has] set.").

US_ACTIVE:\44366270\11\45259.0007

## Relief Requested

12.     By this Motion, the Creditors respectfully seek entry of an order, a form of which is attached hereto as **Exhibit 1** (the "**Order**"), appointing an ad hoc committee of creditors and interested parties to work with the City to both value the Art and to develop a strategy that considers potential viable options to monetize the Art based on arms-length market transactions, and directing the City to cooperate with such committee, including with respect to all reasonable requests for information regarding the Art.  The committee of creditors and interested parties (the "**Art Committee**") should consist of (i) five representatives of the general obligation bondholders, COPs holders, general obligation bond insurers and COPs insurers and (ii) five representatives of the unions, retirees and pension systems.  The Order further provides that the City shall schedule its first meeting with the Art Committee as soon as practicable after entry of the Order, and that, promptly upon entry of the Order, the City shall turn over all information responsive to any reasonable requests for information with respect to the Art made by the Art Committee or any of the creditors or interested persons that will be represented on the Art Committee, as soon as the City receives such information.  Finally, the Order provides that the City shall file with the Court a valuation report that reflects the value of the Art based on arms-length market transactions and is consistent with a monetization process designed to maximize the Art's value, as developed with the Art Committee in consultation with Christie's or other leading art intermediaries, expeditiously and as soon as such report is complete.

## Basis for Relief Requested

13.     Pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title."[5]  The Creditors respectfully submit that, in light of the unique circumstances and expedited nature of the Chapter 9 Case, the relief requested herein is necessary and appropriate.  As part of the plan confirmation process, in order to meet the "best interests of creditors" requirement set forth in section 943(b)(7) of the Bankruptcy Code, the City will need to prove that its plan of adjustment maximizes the value of the Art to enhance creditor recoveries.  In order to meet its burden of proof, the City will need to demonstrate that its plan treats the Art in a way that generates value no less than the maximum value that could be generated pursuant to arms-length market transactions.  The City, however, has given no indication that it intends to provide such a benchmark assessment of the Art.  Although the City has hired Christie's to conduct an appraisal, given the City's track record of negotiating transactions to realize value on its assets behind closed doors, without demonstrating that it considered whether such transactions generated market value, there is reason to be concerned that such appraisal will not be sufficient. Thus, directing the City to cooperate with the Art Committee now, to explore a wide range of options and strategies to monetize the Art based on arms-length market transactions, will minimize the likelihood of a protracted, expensive litigation over the appropriate benchmark valuation of the Art during the plan confirmation process.

14.     Given the expedited nature of the Chapter 9 Case, it is imperative that the Court grant the relief requested at this time, before it is too late for the City and creditors to reach a consensus with respect to the treatment of the Art under the plan.  The Creditors understand the City's desire to file and attempt to confirm a plan as soon as possible, and the relief requested herein is not intended to slow down that process.  To the contrary, by filing this Motion, the Creditors seek to avoid the significant expense and delay that would result if the Court were

---

[5] Pursuant to section 103(f) of the Bankruptcy Code, chapter 1, including section 105(a), applies in chapter 9 cases.

US_ACTIVE:\44366270\11\45259.0007

required to preside over a lengthy litigation over the appropriate benchmark value against which to judge the City's plan's proposed treatment of the Art. Accordingly, the Creditors respectfully submit that the relief requested is necessary and appropriate and falls within the Court's broad equitable authority under section 105(a) of the Bankruptcy Code. *See In re Mitan*, 573 F.3d 237, 246 (6th Cir. 2009) (noting "the broad grant of equitable power to bankruptcy courts found within Section 105(a)").

## I.    To Meet the "Best Interests of Creditors" Confirmation Requirement, the City's Plan Must Maximize the Value of the Art to Enhance Creditor Recoveries

### A.    The "Best Interests of Creditors" Standard in Chapter 9

15.    Section 943(b)(7) of the Bankruptcy Code provides that "[t]he court shall confirm [a chapter 9 plan of adjustment] if . . . the plan is in the best interests of creditors and is feasible."[6] A municipal debtor "bears the burden of satisfying the confirmation requirements of § 943(b) by a preponderance of the evidence." *Pierce Cnty. Hous. Auth.*, 414 B.R. 702, 715 (Bankr. W.D. Wash. 2009) *citing In re Mount Carbon Metro. Dist.* 242 B.R. 18, 31 (Bankr. D. Col. 1999).

16.    In the chapter 9 context, "[t]he 'best interest' test has been described as a 'floor requiring a reasonable effort at payment of creditors by the municipal debtor.'" *Pierce Cnty.*, 414 B.R. at 718 *citing Mount Carbon Metro. Dist* 242 B.R. at 34; *see also W. Coast Life Ins. Co. Merced Irrigation Dist.*, 114 F.2d 654, 678 (9th Cir. 1940) (in considering whether a plan was "for the best interests of creditors," the court considered whether the creditors' recovery

---

[6] Notably, "this is not the same requirement found in § 1129(a)(7)(A)," the so-called "best interest" test that applies in chapter 11. *In re City of Colorado Springs Spring Creek General Improvement District*, 187 B.R. 683, 690 (Bankr. D. Colo. 1995). Section 1129(a)(7)(A) of the Bankruptcy Code, which does not apply in chapter 9 (*see* 11 U.S.C. § 901(a)), provides that one of the requirements for confirmation of a chapter 11 plan is that "each holder of a claim or interest of such class – (i) has accepted the plan; or (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if such debtor were liquidated under chapter 7 of this title on such date."

US_ACTIVE:\44366270\11\45259.0007

was "all that could reasonably be expected in all the existing circumstances"); 6-943 Collier on Bankruptcy ¶ 943.03 ("A plan that makes little or no effort to repay creditors over a reasonable time may not be in the best interest of creditors."). In evaluating whether a chapter 9 plan meets the "best interests of creditors" requirement, bankruptcy courts consider whether "the Plan affords all creditors the potential for the greatest economic return from Debtor's assets." *In re Barnwell Cnty. Hosp.*, 471 B.R. 849, 869 (Bankr. D. S.C. 2012); *In re Bamberg Cnty. Mem'l Hosp.*, 2012 WL 1890259 (Bankr. D.S.C. May 23, 2012); *In re Connector 2000 Ass'n, Inc.*, 447 B.R. 752, 765-66 (Bankr. D.S.C. 2011). Legislative history indicates that "[c]reditors must be provided, under the plan, the going concern value of their claims. The going concern value . . . is intended to provide more of a return to creditors than the liquidation value if the city's assets could be liquidated like those of a private corporation." Senate Report No. 95-989, 95th Cong., 2d Sess. 113 (1978). Courts have construed section 943(b)(7) "as requiring that a proposed plan provide a better alternative for creditors than what they already have.'" *Pierce Cnty.*, 414 B.R. at 718, *citing Mount Carbon*, 242 B.R. at 34; *see also Sanitary & Improvement Dist. No. 7*, 98 B.R. at 974.

17.     More specifically, caselaw indicates that the "best interests of creditors" standard requires a chapter 9 debtor to prove that it has maximized the value of its primary assets and utilized its powers under state law to enhance creditor recoveries. For example, in *In re Sullivan Cnty. Reg'l Refuse Disposal Dist.*, in the context of eligibility, the bankruptcy court noted that "[a] commercial party can hardly 'negotiate in good faith' regarding unpaid obligations if it . . . *refuses to acknowledge or throw into the negotiating equations a large and significant asset it holds*." 165 B.R. 60, 78 (Bankr. D. N.H. 1994) (emphasis added). The *Sullivan County* bankruptcy court concluded that the municipal debtors did not negotiate in good

US_ACTIVE:\44366270\1\45259.0007

faith because they "ignored any timely resort to their primary asset," their ability to access the borrowing or taxing powers of other municipalities. *Id.* If a municipality is required to make its significant assets available for distribution in the context of pre-filing negotiations, then it certainly must include such assets, or the proceeds thereof, in its chapter 9 plan.

18.     Similarly, in *Fano v. NewPort Heights Irrigation Dist.*, the Ninth Circuit held that a chapter 9 plan that failed to pay claims based on missed interest payments the debtor owed on certain prepetition bonds was not in the "best interest of the creditors" where the debtor (i) owned "assets in value many times the indebtedness, all in most excellent physical and almost new condition" and (ii) failed to make a "sufficient showing that [its] taxing power was inadequate to raise the taxes to pay" such claims. 114 F.2d 563, 566 (9th Cir. 1940). The legislative history of section 943 specifically references *Fano*:

> The best interests of creditors test does not mean liquidation value as under chapter XI under the Bankruptcy Act. In making such a determination, it is expected that the court will be guided by standards set forth in Kelley v. Everglades Drainage District, 319 U.S. 415 (1943) and Fano v. Newport Heights Irrigation District, 114 F.2d 563 (9th Cir. 1940), as under the present law, the bankruptcy court should make findings as detailed as possible to support a conclusion that this test has been met.

124 Cong. Rec. H 11,100 (Sept. 28, 1978); S 17,417 (Oct. 6, 1978). Collier cites *Fano* for the proposition that a chapter 9 plan "is not fair and equitable and is not in the best interest of creditors" where "a debtor that had invested heavily in improvements in its facilities at a time when it was unable to pay the claims of its bondholders cannot rely on its cash-poor position resulting from the investment as a reason why it should pay less to bondholders, because the bondholders should not be required in effect to subsidize the improvements." 6-943 Collier on Bankruptcy ¶ 943.03 *citing Fano*, 114 F.2d at 565-66.

US_ACTIVE:\44366270\1\45259.0007

**B.** **Application of the Best Interests of Creditors Test Requires the City to Maximize the Value of the Art to Enhance Creditor Recoveries**

19.     The Creditors submit that, in order to meet its burden of proving that its plan satisfies the "best interests of creditors" standard, the City must prove that such plan maximizes the value of the Art to enhance creditor recoveries.  Consistent with *Sullivan County*, the City can hardly be said to have made a reasonable effort to afford all creditors with the potential for the greatest economic return from its assets if it refuses to maximize the value of the Art, potentially one of its most valuable assets, for the benefit of creditors.  The City owns and has spent considerable funds accumulating and maintaining a significant asset, the true value of which is unknown but has been speculated to be in the billions of dollars range.  *See* Christoff, Chris, *Christies Will Appraise Detroit Art Institute Collection*, Bloomberg Aug. 6, 2013 *available at* http://www.bloomberg.com/news/2013-08-06/christie-s-to-appraise-detroit-art-institute-s-holdings.html (noting that the Art may be worth at least $2.5 billion).  As the court in *Fano* counseled, this value must be distributed to creditors in order for the City to meet its burden with respect to the best interests of creditors confirmation requirement.  Notably, in *Sullivan County* and *Fano*, the courts' focus was on whether the municipal debtors sufficiently utilized their power to raise taxes as a source of creditor recoveries.  This is unsurprising considering that, generally, municipal debtors do not own non-essential, tangible assets that can be monetized, making their taxing powers their most valuable "assets."  However, the City may not be in a position to raise taxes.  Instead, one of its most valuable assets is the Art.  Thus, the City finds itself in the unique position of owning a valuable asset that can be monetized because it is not essential to its delivery of core services that ensure the health, safety or welfare of its citizens.  *See* Public Act 436, the Local Financial Stability and Choice Act, MCL § 141.1541, *et seq.* ("**PA 436**") § 12(r) (giving the Emergency Manager the authority to use or transfer assets of

the City, as long as such use or transfer does not endanger the health, safety, or welfare of residents). Thus, the "best interests of creditors" standard requires the City to prove that it has maximized the value of the Art to enhance creditor recoveries.

### C. The City Must Provide a Benchmark Valuation of the Art Based on Arms-Length Market Transactions to Prove the Value of the Art is Maximized

20. The Supreme Court has held that, "in cases of municipal bankruptcy . . . [i]n order that a court may determine the fairness of the total amount of cash or securities offered to creditors by the plan, the court must have before it data which will permit a reasonable, and hence informed, estimate of the probable future revenues available for the satisfaction of creditors." *Kelley v. Everglades Drainage Dist.*, 319 U.S. 415, 420 (1943). In order to provide the Court with sufficient data to consider the plan of adjustment's treatment of the Art, the City must provide a benchmark valuation based on an assessment that considers all possible options for monetizing the Art pursuant to arms-length market transactions. As noted above, the legislative history of the "best interests of creditors" test of section 943(7) of the Bankruptcy Code specifically references *Kelley* and requires "as under present law, *the bankruptcy court should make findings as detailed as possible* to support a conclusion that this test has been met." 124 Cong. Rec. H 11,100 (Sept. 28, 1978); S 17,417 (Oct. 6, 1978) (emphasis added).

21. The Supreme Court has recognized that market exposure is the best way to determine value. *See Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999) (noting that "[u]nder a plan granting an exclusive right, making no provision for competing bids or competing plans, any determination that the price was top dollar would necessarily be made by a judge in bankruptcy court, whereas the best way to determine value is exposure to a market"). Yet, as demonstrated by the Belle Isle Park lease, the City has no hesitation in pursuing transactions to realize value on City assets behind closed doors, without

notice to or input from creditors, and without running a competitive sale process or investigating what could be generated from such a process, making it impossible to determine whether the resulting transactions maximize value. The City has given creditors no reason to believe that the City has any intention of changing course with respect to the Art. Although the City retained Christie's to provide an appraisal, to date the results of such appraisal are not publicly available, and, as discussed above, the City has given creditors no specific information about what Christie's has done with the Art, the nature or scope of Christie's appraisal, or when Christie's appraisal will be complete. Given the City's conduct with respect to Belle Isle Park, there is cause for concern that the appraisal is not being conducted in a manner that will provide a market-based assessment of the Art. Accordingly, the relief requested is necessary to ensure that the City and the creditors are informed of all available options and strategies that could be used to monetize the Art in a transparent and arms-length fashion so that the City can demonstrate that it satisfies the best interests of creditors test without resort to needless litigation.

### D. The Relief Requested is Not Premature

22. The Creditors recognize that the City has not yet filed its plan and now is not the time to file objections to confirmation. However, unless the Court grants the relief requested as soon as possible, the City's plan, once filed, will be subject to unnecessary litigation regarding the appropriate benchmark value against which to assess its treatment of the Art. The resulting expense and litigation delay would cause significant harm to the City, its creditors and its residents alike. Accordingly, it is imperative that the City cooperate with the Art Committee to explore a wide range of options to monetize the Art pursuant to market-based arms-length transactions before it files its plan of adjustment. Given the City's stated intention to file a plan of adjustment by the end of the year, the Creditors respectfully request that the Court grant the relief requested as soon as possible.

US_ACTIVE:\44366270\1\45259.0007

## II.    The Court Has the Authority to Grant the Relief Requested

23.    The Court has broad authority under section 105(a) of the Bankruptcy Code to constitute the Art Committee and direct the city to cooperate with such committee to assess the Art by exploring options and strategies to monetize the Art based on arms-length market transactions, without running afoul of sections 903 and 904.  Section 903 of the Bankruptcy Code provides that "[t]his chapter does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality."  11 U.S.C. § 903.  The relief requested does not violate section 903 because the Creditors are not trying to dictate what strategy the City must pursue with respect to the Art and, pursuant to section 12(r) of PA 436, the Emergency Manager will still be required to seek the prior approval of the Governor before any transaction to realize the value of the Art is consummated.  Thus, the relief requested does not limit or impair the power of the State to control the City.

24.    For similar reasons, the relief requested does not violate section 904 of the Bankruptcy Code.  Section 904 of the Bankruptcy Code provides that, "[n]otwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with . . . any property or revenues of the debtor."  11 U.S.C. § 904.  Directing the City to cooperate with the Art Committee to assess the Art using a process that explores all available options and strategies that could be used to monetize the Art based on arms-length market transactions is not tantamount to interfering with the City's property.  Instead, the relief requested simply allows the City to generate consensus regarding a benchmark valuation of the Art to enable the City to prove that its chapter 9 plan complies with the best interests of creditors test, without resort to lengthy and contentious litigation.  The City will retain the discretion to determine how to structure any transaction that

US_ACTIVE:\44366270\1\45259.0007

realizes the value of the Art, and how its plan of adjustment treats the Art or the proceeds thereof.

25.     In addition, even if the relief requested constituted an "interference" with City property, it does not violate section 904 because the Art is not a core asset of the City, integral to the services and benefits the City provides to its citizens.  Legislative history indicates that section 904 was intended to "make[] clear that the court may not interfere with the choices a municipality makes as to what services and benefits it will provide its inhabitants."  House Report No. 95-595, 95th Cong., 1st Sess. 398 (1977).  Accordingly, although section 904 may prevent the Court from directing the City to take actions with respect to certain core assets that impact the safety and welfare of citizens, the Court is not similarly restrained with respect to surplus assets, such as the Art.

26.     As noted above, PA 436 also recognizes a distinction between core assets that affect the services and benefits the City provides, and surplus assets that do not, in that the statute restricts the Emergency Manager's ability to dispose of assets in a manner that "endanger[s] the health, safety, or welfare of residents of the local government."  At least one other state has similarly recognized this distinction in the context of the involuntary dissolution of one of its municipalities.  *See Ex Parte City of Mobile*, 46 So. 766, 767 (Ala. 1908) (noting that the state law that revoked the City of Mobile's charter and provided for its dissolution directed that "all property of the late municipality not necessary to its governmental operation, etc., should be devoted to the liquidation . . . of the late city . . .").  Since the Art is not a core asset that is necessary to the City's governmental operations, or that affects the services and benefits the City provides to ensure the health and safety of its residents, the Creditors

US_ACTIVE:\44366270\11\45259.0007

respectfully submit that the Court can enter the Order without violating section 904 of the Bankruptcy Code.

## Notice

27.     Notice of this Motion has been given to all parties registered to receive electronic notices in this matter.  The Creditors submit that no other or further notice need be provided.

## Statement of Concurrence Sought

28.     Pursuant to Local Rule 9014-1(g), on November 25, 2013, counsel for FGIC sought the concurrence of counsel for the City in the relief sought and, as of the date of the filing of this Motion, the concurrence has not been given.

## No Prior Request

29.     No prior request for the relief sought herein has been made to this or any other court.

US_ACTIVE:\44366270\1\45259.0007

WHEREFORE, the Creditors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit 1**, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

DATED:          November 26, 2013

/s/ Mark R. James
Ernest J. Essad Jr.
Mark R. James
WILLIAMS, WILLIAMS, RATTNER &
PLUNKETT, P.C.
280 North Old Woodward Avenue, Suite 300
Birmingham, MI 48009
Telephone:  (248) 642-0333
Facsimile:  (248) 642-0856
Email:  EJEssad@wwrplaw.com
Email:  mrjames@wwrplaw.com

– and –

Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  alfredo.perez@weil.com

*Attorneys for Financial Guaranty Insurance Company*

/s/Ryan Blaine Bennett
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

- and -

US_ACTIVE:\44366270\1\45259.0007

19

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone:    (248) 646-5070
Facsimile:    (248) 646-5075

*Attorneys for Syncora Capital Assurance Inc.*
*and Syncora Guarantee Inc.*

By: */s/ Rick L. Frimmer*
Rick L. Frimmer
Karen V. Newbury
Michael W. Ott
**SCHIFF HARDIN, LLP**
233 S. Wacker Drive, Suite 6600
Chicago, IL  60606
Telephone:  (312) 258-5600
Facsimile:  (312) 258-5600
E-mail:  rfrimmer@schiffhardin.com
E-mail:  knewbury@schiffhardin.com
E-mail:  mott@schiffhardin.com

*Attorneys for FMS Wertmanagement*

**ARENT FOX LLP**

By:  /s/ Carol Connor Cohen
CAROL CONNOR COHEN
CAROLINE TURNER ENGLISH
1717 K Street, NW
Washington, DC  20036-5342
(202) 857-6054
Carol.Cohen@arentfox.com
DAVID L. DUBROW
MARK A. ANGELOV
1675 BROADWAY
NEW YORK, NY 10019
(212) 484-3900

and

**SCHAFER AND WEINER, PLLC**
DANIEL J. WEINER (P32010)
BRENDAN G. BEST (P66370)
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
(248) 540-3340
bbest@schaferandweiner.com

*Counsel for Ambac Assurance Corporation*

*/s/ Howard S. Sher*
Howard S. Sher, Esquire
Jacob & Weingarten, P.C.
Somerset Place
2301 W. Big Beaver Road, Suite 777
Troy, Michigan 48084
Tel: (248) 649-1200
Fax: (248) 649-2920
E-mail: howard@jacobweingarten.com

Vincent J. Marriott, III, Esquire
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Tel: (215) 864-8236
Fax: (215) 864-9762
E-mail: marriott@ballardspahr.com

-and-

Matthew G. Summers, Esquire
Ballard Spahr LLP
919 North Market Street, 11th Floor
Wilmington, Delaware 19801
Telephone: (302) 252-4428
Facsimile: (302) 252-4466
E-mail: summersm@ballardspahr.com

*Attorneys for Hypothekenbank Frankfurt AG,*
*Hypothekenbank Frankfurt International S.A., Erste*
*Europäische Pfandbrief- und Kommunalkreditbank*
*Aktiengesellschaft in Luxemburg S.A.*

**LOWENSTEIN SANDLER LLP**

By: /s/ *Sharon L. Levine*
Sharon L. Levine, Esq.
Philip J. Gross, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-6247 (Facsimile)
slevine@lowenstein.com
pgross@lowenstein.com

-and-

Herbert A. Sanders, Esq.
THE SANDERS LAW FIRM PC
615 Griswold St., Suite 913
Detroit, MI 48226
(313) 962-0099 (Telephone)
(313) 962-0044 (Facsimile)
hsanders@miafscme.org

-and-

Richard G. Mack, Jr., Esq.
Miller Cohen, P.L.C.
600 West Lafayette Boulevard
4th Floor
Detroit, MI 48226-3191

*Counsel to Michigan Council 25 of the American
Federation of State, County and Municipal
Employees (AFSCME), AFL-CIO and Sub-Chapter
98, City of Detroit Retirees*

By: /s/ *Kristin K. Going*
Kristin K. Going  (Application Pending)
Heath D. Rosenblat (Application Pending)
Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
E-mail: Heath.Rosenblat@dbr.com
Telephone: (212) 248-3140

*Counsel for Wilmington Trust Company, National
Association, as Successor Trustee and Successor
Contract Administrator*

*/s/ Deborah L. Fish*

ALLARD & FISH, P.C.
Deborah L. Fish
2600 Buhl Building
535 Griswold
Detroit, MI 48226
Telephone: (313) 961-6141
Facsimile: (313) 961-6142

KRAMER LEVIN NAFTALIS
& FRANKEL LLP
Thomas Moers Mayer
Jonathan M. Wagner
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile:  (212) 715-8000

*Counsel to Dexia Crédit Local, Dexia Holdings,
Inc., and NORD/LB Covered Finance Bank S.A.*

US_ACTIVE:\44366270\1\45259.0007

## **ATTACHMENTS**

Exhibit 1            Proposed Form of Order

Exhibit 2            Notice

Exhibit 3            None [Brief Not Required]

Exhibit 4            Certificate of Service

Exhibit 5            None [No Affidavits]

Exhibit 6            None [No Documentary Exhibits]

US_ACTIVE:\44366270\11\45259.0007

# EXHIBIT 1

**Proposed Form of Order**

US_ACTIVE:\44366270\1\45259.0007

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-------------------------------------------------------------x
:
In re                             : Chapter 9
:
CITY OF DETROIT, MICHIGAN,    : Case No. 13-53846
:
              Debtor.     : Hon. Steven W. Rhodes
:
:
-------------------------------------------------------------x

## ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE APPOINTING AND DIRECTING THE DEBTOR TO COOPERATE WITH A COMMITTEE OF CREDITORS AND INTERESTED PERSONS TO ASSESS THE ART COLLECTION OF THE DETROIT INSTITUTE OF ARTS BASED ON ARMS-LENGTH MARKET TRANSACTIONS TO ESTABLISH A BENCHMARK VALUATION

Upon the motion (the "**Motion**") of the Creditors[1] for an order directing the City

of Detroit, Michigan (the "**City**"), the debtor in the above-captioned case (the "**Chapter 9**

**Case**"), to cooperate with a Court-appointed committee of creditors and interested parties to

assess the Detroit Institute of Arts (the "**DIA**") art collection (the "**Art**") using a process that

considers a wide range of potential options to monetize the Art based on arms-length market

transactions, in order to establish a benchmark valuation for the Art; and the Court having

jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334; and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the hearing to consider the relief requested therein (the

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

US_ACTIVE:\44366270\11\45259.0007

"**Hearing**") having been given to all parties registered to receive electronic notices in this matter; and the Court having held the Hearing with the appearances of interested parties noted in the record of the Hearing; and upon the entire record of all the proceedings before the Court; and the legal and factual bases set forth in the Motion establishing just and sufficient cause to grant the relief requested therein; and the relief granted herein being in the best interests of the City, its creditors and other parties in interest; and the relief requested herein being necessary, reasonable and appropriate;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The objections, if any, to entry of this Order are overruled in their entirety.

3.      The City shall form an ad hoc committee of creditors and interested persons (the "**Art Committee**") consisting of (i) five representatives of the general obligation bondholders, COPs holders, general obligation bond insurers and COPs insurers and (ii) five representatives of the unions, retirees and pension systems.

4.      The City shall meet with the Art Committee periodically to develop an agreed-upon process for assessing the Art that is structured and executed by a leading art intermediary or intermediaries, considers a wide range of potential options to monetize the Art based on arms-length market transactions, and is designed to maximize the Art's value, in order to establish a benchmark valuation for the Art. The City shall schedule its first meeting with the Art Committee as soon as practicable after entry of this Order. Promptly upon entry of this Order, the City shall turn over all information responsive to any reasonable requests for information with respect to the Art made by the Art Committee or any of the creditors or

interested persons that will be represented on the Art Committee, as soon as the City receives such information.

5.     The City shall file with the Court a valuation report that reflects the assessment procured by the Art Committee, expeditiously and as soon as such report is complete.

6.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, enforcement and/or interpretation of this Order.

Dated: _____, 2013
     Detroit, Michigan

_____
**STEVEN RHODES**
**UNITED STATES BANKRUPTCY JUDGE**

**EXHIBIT 2**

**Notice**

US_ACTIVE:\44366270\11\45259.0007

Form B20A(Official Form 20A
12/1/10

# UNITED STATES BANKRUPTCY COURT
## Eastern District of Michigan

In re:

**CITY OF DETROIT, MICHIGAN**

Chapter:  9

Case No.:  13-53846

**Debtor.**

Judge:  Hon. Steven W. Rhodes

Address      2 Woodward Avenue, Suite 1126
              Detroit, Michigan 48266

Last four digits of Social Security or
Employer's Tax Identification (EIN) No(s).(if any):  38-6004606

### NOTICE OF MOTION OF MOTION OF CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE APPOINTING AND DIRECTING THE DEBTOR TO COOPERATE WITH A COMMITTEE OF CREDITORS AND INTERESTED PERSONS TO ASSESS THE ART COLLECTION OF THE DETROIT INSTITUTE OF ARTS BASED ON ARMS-LENGTH MARKET TRANSACTIONS TO ESTABLISH A BENCHMARK VALUATION

The Creditors[1] have filed papers with the Court seeking entry of an order pursuant to 11 U.S.C. § 105(a) Appointing and Directing the Debtor to Cooperate with a Committee of Creditors and Interested Persons to Assess the Art Collection of the Detroit Institute of Arts Based on Arms-Length Market Transactions to Establish a Benchmark Valuation

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

---

[1] Financial Guaranty Insurance Company, Syncora Guarantee Inc. and Syncora Capital Assurance Inc., FMS-WM Service, solely in its capacity as servicer for FMS Wertmanagement, Ambac Assurance Corporation, Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A., and Erste Europäische Pfandbrief- und Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A., Michigan Council 25 of the American Federation of State, County and Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees, Wilmington Trust Company, National Association, as Successor Trustee and Successor Contract Administrator, Dexia Crédit Local, Dexia Holdings, Inc., and NORD/LB Covered Finance Bank S.A.join in this Motion.

US_ACTIVE:\44366270\1\45259.0007

If you do not want the court to grant the relief sought in the motion, or if you want the court to consider your views on the motion, **on or by December 10, 2013**, you or your attorney must:

1.      File with the court a written response or an answer, explaining your position at:[2]

**United States Bankruptcy Court**
211 W. Fort Street, Suite 2100
Detroit, Michigan 48266

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.  All attorneys are required to file pleadings electronically.

You must also mail a copy to:

Ernest J. Essad Jr.
Mark R. James
WILLIAMS, WILLIAMS, RATTNER & PLUNKETT, P.C.
280 North Old Woodward Avenue, Suite 300
Birmingham, MI 48009
Telephone:  (248) 642-0333
Facsimile:  (248) 642-0856

Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511

2.      If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

---

[2] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e)

US_ACTIVE:\44366270\11\45259.0007

DATED:    November 26, 2013        Respectfully submitted,

_/s/ Mark R. James_____
Ernest J. Essad Jr.
Mark R. James
WILLIAMS, WILLIAMS, RATTNER &
PLUNKETT, P.C.
280 North Old Woodward Avenue, Suite 300
Birmingham, MI 48009
Telephone:  (248) 642-0333
Facsimile:  (248) 642-0856
Email:  EJEssad@wwrplaw.com
Email:  mrjames@wwrplaw.com

 – and –

Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  alfredo.perez@weil.com

_Attorneys for Financial Guaranty Insurance_
_Company_

_/s/ Ryan Blaine Bennett_____
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
- and -

US_ACTIVE:\44366270\1\45259.0007

3

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone:    (248) 646-5070
Facsimile:      (248) 646-5075

*Attorneys for Syncora Capital Assurance Inc.*
*and Syncora Guarantee Inc.*

By: */s/ Rick L. Frimmer*
Rick L. Frimmer
Karen V. Newbury
Michael W. Ott
**SCHIFF HARDIN, LLP**
233 S. Wacker Drive, Suite 6600
Chicago, IL  60606
Telephone:  (312) 258-5600
Facsimile:  (312) 258-5600
E-mail:  rfrimmer@schiffhardin.com
E-mail:  knewbury@schiffhardin.com
E-mail:  mott@schiffhardin.com

*Attorneys for FMS Wertmanagement*
**ARENT FOX LLP**

By:  /s/ Carol Connor Cohen
CAROL CONNOR COHEN
CAROLINE TURNER ENGLISH
1717 K Street, NW
Washington, DC  20036-5342
(202) 857-6054
Carol.Cohen@arentfox.com
 David L. Dubrow
Mark A. Angelov
1675 Broadway
New York, NY 10019
(212) 484-3900

and

**SCHAFER AND WEINER, PLLC**
DANIEL J. WEINER (P32010)
BRENDAN G. BEST (P66370)
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
(248) 540-3340
bbest@schaferandweiner.com

*Counsel for Ambac Assurance Corporation*

*/s/ Howard S. Sher*
Howard S. Sher, Esquire
Jacob & Weingarten, P.C.
Somerset Place
2301 W. Big Beaver Road, Suite 777
Troy, Michigan 48084
Tel: (248) 649-1200
Fax: (248) 649-2920
E-mail: howard@jacobweingarten.com

Vincent J. Marriott, III, Esquire
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Tel: (215) 864-8236
Fax: (215) 864-9762
E-mail: marriott@ballardspahr.com

-and-

Matthew G. Summers, Esquire
Ballard Spahr LLP
919 North Market Street, 11th Floor
Wilmington, Delaware 19801
Telephone: (302) 252-4428
Facsimile: (302) 252-4466
E-mail: summersm@ballardspahr.com

*Attorneys for Hypothekenbank Frankfurt AG,*
*Hypothekenbank Frankfurt International S.A., Erste*
*Europäische Pfandbrief- und Kommunalkreditbank*
*Aktiengesellschaft in Luxemburg S.A.*

US_ACTIVE:\44366270\11\45259.0007

5

**LOWENSTEIN SANDLER LLP**
By: /s/  Sharon L. Levine
Sharon L. Levine, Esq.
Philip J. Gross, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-6247 (Facsimile)
slevine@lowenstein.com
pgross@lowenstein.com

-and-

Herbert A. Sanders, Esq.
THE SANDERS LAW FIRM PC
615 Griswold St., Suite 913
Detroit, MI 48226
(313) 962-0099 (Telephone)
(313) 962-0044 (Facsimile)
hsanders@miafscme.org

-and-

Richard G. Mack, Jr., Esq.
Miller Cohen, P.L.C.
600 West Lafayette Boulevard
4th Floor
Detroit, MI 48226-3191

*Counsel to Michigan Council 25 of the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO and Sub-Chapter 98, City of Detroit Retirees*

By: /s/ Kristin K. Going
Kristin K. Going  (Application Pending)
Heath D. Rosenblat (Application Pending)
Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
E-mail: Heath.Rosenblat@dbr.com
Telephone: (212) 248-3140

*Counsel for Wilmington Trust Company, National Association, as Successor Trustee and Successor Contract Administrator*

*/s/ Deborah L. Fish*

ALLARD & FISH, P.C.
Deborah L. Fish
2600 Buhl Building
535 Griswold
Detroit, MI 48226
Telephone: (313) 961-6141
Facsimile: (313) 961-6142

KRAMER LEVIN NAFTALIS
& FRANKEL LLP
Thomas Moers Mayer
Jonathan M. Wagner
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile:  (212) 715-8000

*Counsel to Dexia Crédit Local, Dexia Holdings, Inc., and NORD/LB Covered Finance Bank S.A.*

US_ACTIVE:\44366270\1\45259.0007

7

**EXHIBIT 3**

**Brief [NONE REQUIRED]**

US_ACTIVE:\44366270\11\45259.0007

# EXHIBIT 4

**Certificate of Service**

US_ACTIVE:\44366270\1\45259.0007

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-------------------------------------------------------------x
:
In re                                 : Chapter 9
:
CITY OF DETROIT, MICHIGAN,     : Case No. 13-53846
:
                Debtor.     : Hon. Steven W. Rhodes
:
:
-------------------------------------------------------------x

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 26, 2013 the *Motion of Creditors for Entry of an Order Pursuant to Section 105(A) of the Bankruptcy Code Appointing and Directing the Debtor to Cooperate with a Committee of Creditors and Interested Persons to Assess the Art Collection of The Detroit Institute of Arts Based on Arms-Length Market Transactions to Establish a Benchmark Valuation* was filed and served via the Court's electronic case filing and noticing system to all parties registered to received electronic notices in this matter.

/s/ Mark R. James
Mark R. James (P54375)
Attorney for Financial Guaranty
Insurance Company
Williams, Williams, Rattner & Plunkett, P.C.
380 North Old Woodward Ave., Suite 300
Birmingham, MI 48009
(248) 642-0333
mrj@wwrplaw.com

Dated: November 26, 2013

## EXHIBIT 5

**Affidavits [NONE]**

US_ACTIVE:\44366270\1\45259.0007

## EXHIBIT 6

**Documentary Exhibits [NONE]**

US_ACTIVE:\44366270\1\45259.0007