IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| In re: | Chapter 9 |
|---|---|
| CITY OF DETROIT, MICHIGAN | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

**LIMITED OBJECTION OF ASSURED GUARANTY MUNICIPAL CORP.
TO MOTION OF THE DEBTOR FOR A FINAL ORDER PURSUANT
TO 11 U.S.C. §§ 105, 362, 364(c)(1), 364(c)(2), 364(e), 364(f), 503, 507(a)(2),
904, 921 AND 922 (I) APPROVING POST-PETITION FINANCING,
(II) GRANTING LIENS AND PROVIDING SUPERPRIORITY
CLAIM STATUS AND (III) MODIFYING AUTOMATIC STAY**

Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance Inc. ("Assured"), a creditor and party in interest in the chapter 9 case of the City of Detroit, Michigan (the "City"),[1] hereby files this limited objection (the "Limited Objection") to the Motion of the Debtor for a Final Order (the "Proposed Order") Pursuant to 11 U.S.C. §§ 105, 362, 364(c)(1), 364(c)(2), 364(e), 364(f), 503, 507(a)(2), 904, 921 and 922 (I) Approving Post-Petition Financing, (II) Granting Liens and Providing Superpriority Claim Status, and (III)

---

[1] Assured is a monoline insurer that provides financial guarantees to the U.S. public finance market. Assured and its affiliates insure or reinsure approximately $2.1 billion in net aggregate principal amount of outstanding bonds issued by the City, including water supply system bonds, sewage disposal system bonds, and the Unlimited Tax Bonds (as defined below).

Modifying Automatic Stay [Docket No. 1520] (the "Financing Motion"),[2] and respectfully states as follows:

## PRELIMINARY STATEMENT

1. In the Financing Motion, the City seeks authorization to incur $350 million in post-petition financing, comprised of Series 2013A "Swap Termination Bonds" and Series 2013B "Quality of Life Bonds" (collectively, the "Proposed Financing"). The terms of the Proposed Financing provide that both the Quality of Life Bonds and the Swap Termination Bonds will have "superpriority" status over all "pre-petition unsecured claims."[3]

2. The City's Second Amended Schedule of Claims lists the City's unlimited tax general obligation bonds (collectively, the "Unlimited Tax Bonds") as *unsecured*. As a result, and for the reasons stated below, it appears that the City intends the grant of superpriority claim status to the post-petition lenders to

---

[2] Additionally, Assured hereby joins in U.S. Bank National Association's Limited Objection and Reservation of Rights with Respect to the Financing Motion [Docket No. 1797] (the "Water/Sewer Trustee Limited Objection"), and adopts and incorporates the arguments and reservation of rights in the Water/Sewer Trustee Limited Objection as if set forth in this Limited Objection.

[3] Specifically, the Proposed Order provides:

> Upon entry of [the Proposed] Order, the Purchaser, the Indenture Trustee and the Bondholders are granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority claim . . . for all Bond Obligations . . . with priority over . . . pre-petition unsecured claims against the City.

Proposed Order at 12.

improperly circumvent and prejudice the exclusive rights of holders of Unlimited Tax Bonds (the "Unlimited Tax Bondholders") under Michigan Law to the *ad valorem* taxes specifically levied and irrevocably pledged to secure the repayment of the Unlimited Tax Bonds (such *ad valorem* tax revenues are referred to herein as the "Restricted Funds").

3. On November 8, 2013, Assured and National Public Finance Guarantee Corporation ("National") filed a complaint (the "Complaint") seeking, among other things, a declaratory judgment and order that Michigan law requires the City to segregate and not divert the Restricted Funds. The Complaint also seeks a declaratory judgment and order that the City is prohibited from granting any superpriority claim status or any other interest to any creditor or any other person under section 364 of the Bankruptcy Code pursuant to the relief requested in the Financing Motion, or otherwise, that would impair the Unlimited Tax Bondholders' and/or Assured's or National's interests in the Restricted Funds.

4. In order to avoid the risk of inconsistent or confusing rulings, Assured respectfully submits that this Court should enter an order that carves out the Restricted Funds from the grant of superpriority claim status under the Proposed Financing, subject to resolution of the issues raised in the Complaint. Such a carve-out will ensure that the pertinent legal issues regarding the Restricted Funds will be adjudicated in the appropriate procedural context.

# BACKGROUND

I.  The Unlimited Tax Bonds

5. As more fully described in the Complaint, the City has issued several series of Unlimited Tax Bonds to fund vital capital improvements identified by the Mayor and the City Council and, most importantly, approved by the City's voters in a bond referendum for each series. The repayment of each series of Unlimited Tax Bonds is secured by a specific pledge of an unlimited *ad valorem* tax on real property and the full faith and credit of the City. Authority for the City's issuance of the Unlimited Tax Bonds is governed by Act 34 of the 2001 Revised Municipal Finance Act, MCL § 141.2101 *et seq.* ("Act 34"), Act 279 of 1909, as amended, the Home Rule City Act, MCL § 117.1, *et seq*. (the "Home Rule City Act"), and the Michigan Constitution.

6. Unique among the City's financial obligations, the Unlimited Tax Bonds were issued only after authorizing resolutions and supplemental resolutions adopted by the Detroit City Council (the "Resolutions"), and approval by a majority of voters in city-wide elections establishing a pledge of the Restricted Funds to repay the Unlimited Tax Bonds exclusively. In approving each bond referendum, the City's voters authorized the City to exceed the otherwise applicable maximum rate for *ad valorem* taxes contained in article IX, section 6 of the Michigan Constitution. Because the City had reached the constitutional tax

rate limitations at the time the Unlimited Tax Bonds were issued, the City, in the absence of voter approval, would have had no authority to levy and collect these *ad valorem* taxes.

7. Under Act 34, municipal securities such as the Unlimited Tax Bonds "may be payable from or secured by" any of the following: (i) *ad valorem* real and personal property taxes, (ii) special assessments, (iii) the unlimited full faith and credit pledge of the municipality, and (iv) other sources of revenue described in Act 34 for debt or securities authorized by Act 34. MCL § 141.2103(l). The Unlimited Tax Bonds are payable from and secured by an irrevocable pledge of the Restricted Funds in addition to the full faith, credit and resources of the City. Resolutions § 301(a).

8. The Restricted Funds are *ad valorem* taxes specifically levied to finance particular City projects and systems, including but not limited to projects relating to neighborhood/economic development, recreation, zoo and cultural facilities improvements, police and fire buildings and sites and other public safety facilities, public lighting system improvements, Detroit Institute of Arts improvements, Department of Public Works improvements, funding of the City's risk management pool, and public health facilities improvements. The specific projects are described in the official statements of the City prepared in connection

with the sale and issuance of the Unlimited Tax Bonds and separately described and voted upon in the related bond referenda.

II. The Assured/National Adversary Proceeding

9. On November 8, 2013, Assured and National commenced an adversary proceeding (Case No. 13-05309) by filing the Complaint to obtain a declaratory judgment and order that Michigan law requires the City and certain individuals to segregate and not divert the voter-approved *ad valorem* taxes that the City must levy and collect for the sole purpose of paying principal and interest on its Unlimited Tax Bonds insured by Assured and National. All of the allegations of the Complaint are incorporated by reference herein.

10. Specifically, Assured and National requested entry of a declaratory judgment declaring that, under Michigan law: (1) the City must deposit the Restricted Funds into certain debt retirement funds as it collects *ad valorem* taxes; (2) the City is required to segregate and not commingle the Restricted Funds with other funds of the City; (3) the proceeds of the *ad valorem* taxes levied and collected by the City for the sole purpose of paying the Unlimited Tax Bondholders are Restricted Funds, and the City is prohibited from using the Restricted Funds for any purposes other than repaying the Unlimited Tax Bondholders; and (4) the City is prohibited from granting any superpriority claim status or any other interest to any creditor or any other person under section 364 of

the Bankruptcy Code pursuant to the relief requested in the Financing Motion, or otherwise, that would impair the Unlimited Tax Bondholders' and/or Assured's or National's interests in the Restricted Funds.

**LIMITED OBJECTION**

I. <u>The Proposed Financing Improperly Violates Michigan Law</u>

11. As described above, Michigan law expressly prohibits the City from using the Restricted Funds for any purpose other than payment of debt service on the Unlimited Tax Bonds. Accordingly, because the Proposed Financing, based on the City's characterization of the Unlimited Tax Bonds, purports to permit the lenders to receive payment from the Restricted Funds ahead of, and at the expense of, the Unlimited Tax Bonds, the Proposed Financing violates Michigan law.

12. Bankruptcy Code section 364(c) "was not intended as an independent authorization in chapter 9 cases for the court to provide for liens where it is not permitted under state law." *See* 6 COLLIER ON BANKRUPTCY ¶ 901.04[8] (16th ed.). Indeed, by reserving the state's power to control its municipalities by legislation, Bankruptcy Code section 903 "supersede[s] any authority of the court to authorize the debtor to grant a lien in violation of state law . . . ." *Id.*; *see also In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 144 (Bankr. S.D.N.Y. 2010) (chapter 9 debtors "must follow state laws" unless those laws are specifically preempted by federal law). Application of that logic to the present

issue makes clear that the City does not have any authority to grant superpriority claim status in the Restricted Funds in derogation of Michigan law.

13. Further, by attempting to bypass Michigan law, the City appears to violate the terms of the Proposed Financing itself. The Purchase Agreements (as defined in the Financing Motion) underlying the Proposed Financing require the City to represent as follows:

> The City represents and warrants to, and agrees with, the Purchaser that . . . [t]he execution, delivery and performance of the terms and conditions of the [Proposed Order and the] Bond Documents . . . including the issue, sale and delivery of the Bonds, do not and will not . . . conflict with or constitute, on the part of the City, a breach of, or a default under, any applicable law (including, without limitation, the Constitution of the United States or the State or the [Home Rule City] Act), any ordinance . . . or any agreement, indenture, mortgage, lease or other instrument to which the City is a party or by or to which it or its revenues, properties, assets or operations are bound or subject or by which it is bound in such manner as to adversely affect the validity or enforceability of the Bonds or the security interests of the Purchaser in the Bond Collateral.

Purchase Agreements § 6(i).

14. By scheduling the Unlimited Tax Bonds as "unsecured" and then, through the Proposed Financing, granting superpriority claim status over all unsecured claims, the City is apparently seeking to contravene Michigan law and the terms of the financing itself and improperly subordinate the Unlimited Tax Bondholders' rights to the Restricted Funds. Therefore, the Court should deny the Financing Motion to the extent it grants superpriority claim status in the Restricted

Funds, in violation of both Michigan law and the express terms of the financing, and enter an order that carves out the Restricted Funds from the proposed grant of superpriority claim status, subject to resolution of the issues raised in the Complaint.

## II. Acts That Cannot Be Part Of A Plan Of Adjustment Should Not Be Permitted During The Case

15. Bankruptcy Code section 943(b)(4) provides that a bankruptcy court may only confirm a chapter 9 plan of adjustment if "the debtor is not prohibited by law from taking any action necessary to carry out the plan . . . ." 11 U.S.C. § 943(b)(4).

16. A plan of adjustment "cannot be confirmed if it permits a debtor to do something that is prohibited by state law." *In re Sanitary & Improvement Dist., #7*, 98 B.R. 970, 974 (Bankr. D. Neb. 1989); *see also In re City of Colorado Springs Spring Creek Gen. Improvement Dist.*, 177 B.R. 684, 694 (Bankr. D. Colo. 1995) (same). Although a chapter 9 debtor is permitted to modify the terms of pre-petition bonds, including by changing the interest rates or payment period, new debt obligations "must be issued in conformance with state law and the terms of their redemption and payment must be in conformance with state law." *Sanitary & Improvement Dist.*, 98 B.R. at 974. In other words, "to the extent new debt instruments are proposed to be issued . . . such new debt instruments must comply

9
13-53846-tjt    Doc 1842    Filed 11/27/13    Entered 11/27/13 12:15:32    Page 9 of 14

with applicable state law . . . ." *See* Jones Day, *An Overview of Chapter 9 of the Bankruptcy Code: Municipal Debt Adjustments*, August 2010, at 11.

17. Here, the City proposes to issue new bonds in connection with the Proposed Financing that apparently are intended to impair the rights of the Unlimited Tax Bondholders to the Restricted Funds. The City would not be permitted to issue such bonds under a plan of adjustment because, as described above, such impairment of the Unlimited Tax Bondholders' rights to the Restricted Funds violates state law. The City should not be permitted to take actions during the case that cannot be part of a plan of adjustment. Therefore, the Court should deny the Financing Motion to the extent it grants superpriority claim status in the Restricted Funds, in violation of both Michigan law and the express terms of the financing, and enter an order that carves out the Restricted Funds from the proposed grant of superpriority claim status, subject to resolution of the issues raised in the Complaint.

III. <u>The City Must Prove It Is Unable To Obtain Credit Without Granting Superpriority Claim Status In The Restricted Funds</u>

18. To obtain approval of the Proposed Financing under section 364(c) of the Bankruptcy Code, the City must prove the following three requirements are met: (1) the City is unable to obtain credit unencumbered or without superpriority claim status under section 364(b), (2) the credit transaction is necessary to preserve the assets of the estate, and (3) the terms of the transactions are fair, reasonable and

adequate, given the circumstances. *See, e.g.*, *In re Los Angeles Dodgers LLC*, 457 B.R. 308, 312 (Bankr. D. Del. 2011) (citing *In re St. Mary Hosp.*, 86 B.R. 393, 401 (Bankr. E.D. Pa. 1988)).[4]

19.     The City asserts, in fairly perfunctory fashion, that it has determined in its reasonable business judgment that the Proposed Financing is the best available financing. *See* Financing Motion ¶ 53-54. The City further asserts that the Proposed Financing is in the best interests of the City, its creditors, citizens, and all other parties in interest. *See id.* at ¶ 55.

20.     However, the City has not asserted—let alone presented ***any*** evidence—that the post-petition lenders relied on (or even knew about) the superpriority claim status in the Restricted Funds when they agreed to the Proposed Financing, nor has the City presented evidence that the grant of superpriority claim status in the Restricted Funds is necessary, fair, or reasonable. Given the fact that the Restricted Funds are only a small percentage of the City's revenues and assets, and the Proposed Financing contemplates granting the lenders

---

[4] Courts also consider additional factors for purposes of section 364(c), including whether (1) the proposed financing is an exercise of sound and reasonable business judgment, (2) the financing is in the best interests of the debtor and its creditors, (3) any better offers or bids were proposed, and (4) the financing agreement was negotiated in good faith and at arm's length. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 879–80 (Bankr. W.D. Mo. 2003) (citing *In re The Crouse Grp., Inc.*, 71 B.R. 544, 547 (Bankr. E.D. Pa. 1987); *In re Worldcom, Inc.*, No. 02-13533, 2002 WL 1732646, at *3 (Bankr. S.D.N.Y. July 22, 2002)).

liens on much more significant assets of the City as well as superpriority claims,[5] it is neither necessary nor essential for the lenders to obtain a superpriority claim on the Restricted Funds. Therefore, the Court should deny the Financing Motion to the extent it grants superpriority claim status in the Restricted Funds, in violation of both Michigan law and the express terms of the financing, and enter an order that carves out the Restricted Funds from the proposed grant of superpriority claim status, subject to resolution of the issues raised in the Complaint.

IV. The Carve-Out Proposed Herein Is Procedurally Appropriate While The Issues Raised In The Complaint Remain Unresolved

21. Many of the issues raised in this Limited Objection in connection with the Unlimited Tax Bonds, and the related issues that pertain more broadly to the rights of Unlimited Tax Bondholders and the bond insurers to the Restricted Funds, are properly adjudicated in the procedural context of the Complaint.[6] Assured

---

[5] The Quality of Life Bonds are proposed to be secured pursuant to Bankruptcy Code section 364(c)(2) by (1) a first priority lien on (a) taxes owing to the City in respect of the gross receipts earned by each of the City's casinos, and (b) the net proceeds of any voluntary disposition or monetization of any City owned asset, and (2) a second priority lien on the income tax revenues of the City. Proposed Order at 10–11. The Swap Termination Bonds are proposed to be secured pursuant to Bankruptcy Code section 364(c)(2) by (1) a *pari passu* first priority lien on the net proceeds of any voluntary disposition or monetization of any City owned asset, and (2) a first priority lien on the income tax revenues of the City. Proposed Order at 11. Both the Quality of Life Bonds and the Swap Termination Bonds are proposed to receive allowed superpriority claims pursuant to Bankruptcy Code section 364(c)(1) with priority over (1) any and all administrative expenses of the City, (2) all other post-petition claims against the City, and (3) pre-petition unsecured claims against the City. Proposed Order at 12.

[6] This Limited Objection, and the relief requested herein, is not stated in lieu of any arguments that Assured may advance in connection with the Complaint.

recognizes that the City desires that the Proposed Financing be approved before disposition of the matters raised in the Complaint. The proposed carve-out will permit the Proposed Financing to go forward without addressing those issues now and will ensure that all legal issues regarding the Restricted Funds are adjudicated in the appropriate procedural context.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, Assured respectfully requests that the Court deny the Financing Motion only to the extent set forth in this Limited Objection and enter an order that carves out the Restricted Funds from the grant of superpriority claim status to the lenders under the Proposed Financing, subject to resolution of the issues raised in the Complaint, and grant Assured such other and further relief as may be just and proper.

Dated: November 27, 2013
New York, New York

**CHADBOURNE & PARKE LLP**

By: /s/ Lawrence A. Larose
Lawrence A. Larose
Samuel S. Kohn
Marc D. Ashley
Marc B. Roitman
30 Rockefeller Plaza
New York, NY 10012
Telephone: (212) 408-5100
llarose@chadbourne.com
skohn@chadbourne.com
mashley@chadbourne.com
mroitman@chadbourne.com

*Counsel for Assured Guaranty Municipal Corp.*