IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------------------x
:
In re : Chapter 9
:
CITY OF DETROIT, MICHIGAN, : Case No. 13-53846
:
Debtor. : Hon. Steven W. Rhodes
:
:
---------------------------------------------------------------x

**JOINDER OF WILMINGTON TRUST COMPANY, NATIONAL ASSOCIATION, AS SUCCESSOR CONTRACT ADMINISTRATOR, TO THE OBJECTIONS OF (A) FINANCIAL GUARANTY INSURANCE COMPANY AND (B) HYPOTHEKENBANK FRANKFURT AG, HYPOTHEKENBANK FRANKFURT INTERNATIONAL S.A., ERSTE EUROPÄISCHE PFANDBRIEF- UND KOMMUNALKREDITBANK AKTIENGESELLSCHAFT IN LUXEMBURG S.A., AND FMS WERTMANAGEMENT SERVICE GMMBH AS SERVICER TO FMS WERTMANAGEMENT, TO THE DEBTOR'S MOTION FOR A FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 364(c)(1), 364(c)(2), 364(e), 364(f), 503, 507(a)(2), 904, 921 AND 922 (I) APPROVING POST-PETITION FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY CLAIM STATUS AND (III) MODIFYING AUTOMATIC STAY**

Wilmington Trust Company, National Association ("WTC"), not individually, but solely in its capacity as Contract Administrator[1], hereby submits this joinder (this "Joinder") to:

(a) *Objection Of Financial Guaranty Insurance Company To Motion Of The Debtor For A Final*

---

[1] Wilmington Trust Company, National Association, serves as successor to U.S. Bank National Association ("U.S. Bank"), as: (a) Trustee under that certain Trust Agreement, dated June 2, 2005, by and among the Detroit General Retirement System Service Corporation (the "GRS Corporation"), the Detroit Police and Fire Retirement System Service Corporation (the "PFRS Corporation"), and U.S. Bank, and Contract Administrator under that certain Contract Administration Agreement, dated June 2, 2005, by and among the Detroit Retirement Systems Funding Trust (the "2005 Funding Trust"), the GRS Corporation, the PFRS Corporation, and U.S. Bank, regarding the issuance of Certificates of Participation Series 2005-A by the 2005 Funding Trust and the transactions contemplated thereby; and (b) Trustee under that certain Trust Agreement, dated June 12, 2006, by and among the GRS Corporation, the PFRS Corporation, and U.S. Bank, and as contract administrator ("Contract Administrator") under that certain Contract Administration Agreement, dated June 12, 2006, by and among the Detroit Retirement Systems Funding Trust 2006 (the "2006 Funding Trust"), the GRS Corporation, the PFRS Corporation and U.S. Bank, in each case, regarding the issuance of Certificates of Participation Series 2006-A and 2006-B by the 2006 Funding Trust and the transactions contemplated thereby.

*Order Pursuant To 11 U.S.C. §§ 105, 362, 364(C)(1), 364(C)(2), 364(E), 364(F), 503, 507(A)(2), 904, 921 And 922 (I) Approving Post-Petition Financing, (II) Granting Liens And Providing Superpriority Claim Status And (III) Modifying Automatic Stay* (Docket No. 1847) (the "<u>FGIC Financing Objection</u>") and (b) *Objection Of Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A., Erste Europäische Pfandbrief- und Kommunalkreditbank Aktiengesellschaft In Luxemburg S.A., And FMS Wertmanagement Service GmbH, As Servicer To FMS Wertmanagement To Motion Of The Debtor For A Final Order Pursuant To 11 U.S.C. §§ 105, 362, 364(C)(1), 364(C)(2), 364(E), 364(F), 503, 507(A)(2), 904, 921 And 922 (I) Approving Post-Petition Financing, (II) Granting Liens And Providing Superpriority Claim Status And (III) Modifying Automatic Stay* (Docket No. 1835) (the "<u>EEPK/FMS Financing Objection</u>" and, together with, the "<u>FGIC Financing Objection</u>," collectively, the "<u>Objections</u>"). In support of this Joinder, WTC respectfully states as follows:

1. WTC hereby joins in and adopts the arguments set forth in the Objections. Moreover, WTC agrees with and supports the Objections and incorporates the Objections as though fully set forth herein at length. Accordingly, WTC requests that the Objections be sustained and the *Motion of the Debtor For A Final Order Pursuant To 11 U.S.C. §§ 105, 362, 364(C)(1), 364(C)(2), 364(E), 364(F), 503, 507(A)(2), 904, 921 And 922 (I) Approving Post-Petition Financing, (II) Granting Liens And Providing Superpriority Claim Status And (III) Modifying Automatic Stay* (Docket No. 1520) ("<u>Motion to Borrow</u>") be denied.

## **OBJECTION**

2. The Postpetition Financing[2], which the City Council refused to approve, will most likely mature and need to be repaid before the City of Detroit (the "<u>City</u>") could even deploy the

---

[2] Capitalized terms used but not defined in this Joinder shall have the meanings ascribed to them in the Motion to Borrow or the Objections, as is applicable.

proceeds in connection with the Reinvestment Initiatives.[3]  In fact, the City's last cash flow forecast demonstrated that $170.1 million is set to be spent on various initiatives in 2014 without the need of the Quality of Life Financing.  *See* Monthly Cash Flow Forecast for FY 2014, dated October 3, 2013 (the "October 3rd Cash Flows") 3, 7, 9.  Further, the City's actual net cash as of the end of September 2013 was $35 million above that which was originally projected.  *See* Quarterly Report of the Emergency Manager, dated October 15, 2013 (the "Quarterly Report") 3; October 3rd Cash Flows 3.

3.  Additionally, the cost of the proposed Postpetition Financing is concerning, especially given the fact that the City has said it will file a plan of adjustment by year end, and such plan will certainly include additional financing that also has fees.  In essence, the City is paying a multi-million dollar fee for the use of funds for no more than a month.  Added to this fee is another fee if the City does not use the Purchaser for its exit-financing strategy.

4.  Further, as set forth in the Objections, the Postpetition Financing and the Motion to Borrow are nothing more than a *sub rosa* plan.  The City squarely admits it is seeking the Postpetition Financing for the main purpose of exercising the Termination Rights under the Forbearance Agreement.  This is clearly demonstrated by the fact that the funding the amount of Quality of Life Financing is not calculated by need, but instead is calculated from the total amount of the Postpetition Financing less the actual amount needed to fund the Termination Rights contemplated under the Forbearance Agreement.  As such, the Postpetition Financing is at its core a financing to prefer certain creditors (the Swap Counterparties) over all other creditors outside a plan of adjustment.  As the Objections outline, the Postpetition Financing is not integral to the Reinvestment Initiatives (given the fact the City has the necessary funds to

---

[3]  The Postpetition Financing matures at the effective date of a plan of adjustment, which the City has stated will be filed by year end.

begin this long-term project now and gains nothing from this short-term cash infusion) and such an assertion is simply a red herring.

5. While Section 904 of the Bankruptcy Code delineates a courts role in a Chapter 9 proceeding so as to protect the municipality from interference respecting property or revenues (*see* 11 U.S.C. § 904) that is not tantamount to a free pass in a matter such as the proposed Postpetition Financing. The City is not immune from inquiry into the terms, conditions, and impact of the Postpetition Financing, and the Court should, similar to the process and factors analyzed in a Chapter 11 proceeding, scrutinize the Postpetition Financing and evaluate its overall impact. Moreover and as noted above, the City Council rejected the Postpetition Financing proposal. Therefore, denial of the Postpetition Financing is consistent with the views and desires of the City Council.

6. The collateral that the City is providing to support the Postpetition Financing could have value in excess of even the maximum amount of the proposed Postpetition Financing. Quite simply, the Postpetition Financing is an excellent deal for Purchaser, but the City and its creditors are not so fortunate. Furthermore, certain of the collateral is currently unencumbered, which means that it will likely be critical to any proposed plan of adjustment. To impair the value of these assets just a month or so before any plan of adjustment is filed is not in the best interest of creditors.

7. Accordingly, the Motion to Borrow should be denied for the reasons set forth in the Objections and herein.

## RESERVATION OF RIGHTS

8. WTC hereby reserves and preserves all of its rights, remedies, and arguments in connection with the Motion to Borrow and reserves all rights to supplement this Joinder and to

be heard before the Court with regard to the arguments set forth in this Joinder and the Objections – even if the Objections are resolved or otherwise withdrawn – as well as reserves the right to make any other applicable arguments, including those raised in other objections and/or other joinder to the Objections raised by other parties with respect to the Motion to Borrow. Nothing contained herein is intended to contravene or supersede any arguments or positions that have been made or taken, or that may be made or taken, by any Outstanding Holders (as defined in the relevant Trust Agreements set forth in footnote 1).

WHEREFORE, WTC requests that the Court (a) deny the Motion to Borrow, and (b) sustain the Objections.

Dated: November 27, 2013
Farmington Hills, Michigan

RESPECTFULLY SUBMITTED,

Foster Swift Collins & Smith PC

/s/ Dirk H. Beckwith
Dirk H. Beckwith (P35609)
32300 Northwestern Highway, Suite 230
Farmington Hills, Michigan 48334-1471
Telephone: (248) 539-9918
E-mail: dbeckwith@fosterswift.com

Kristin K. Going (Application Pending)
Heath D. Rosenblat (Application Pending)
Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
E-mail: Heath.Rosenblat@dbr.com
Telephone: (212) 248-3140

*Counsel for Wilmington Trust Company, National Association, as Successor Contract Administrator*

1772840