**<u>Exhibit D</u>**

**Hr'g Tr., Nov. 14, 2013, 14:36 ET**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,        .        Docket No. 13-53846
        MICHIGAN,               .
                                .        Detroit, Michigan
                                .        November 14, 2013
                    Debtor.     .        2:36 p.m.
. . . . . . . . . . . . . . . . .

HEARING RE. MOTION OF THE OBJECTORS FOR LEAVE TO
CONDUCT LIMITED DISCOVERY IN CONNECTION WITH MOTION OF
THE DEBTOR FOR A FINAL ORDER PURSUANT TO 11 U.S.C.
SEC. 105, 362, 364(c)(1), 364(c)(2), 364(e), 364(f),
503, 507(a)(2), 904, 921 and 922 (I) APPROVING POST-
PETITION FINANCING, (II) GRANTING LIENS AND PROVIDING
SUPERPRIORITY CLAIM STATUS AND (III) MODIFYING
AUTOMATIC STAY
BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:         Jones Day
                        By:  BRAD B. ERENS
                        77 West Wacker
                        Chicago, IL  60601-1692
                        (312) 782-3939

                        Jones Day
                        By:  ROBERT W. HAMILTON
                        325 John H McConnell Blvd., Suite 600
                        Columbus, OH  43215
                        (614) 469-3939

For Detroit            Clark Hill, PLC
Retirement             By:  ROBERT D. GORDON
Systems - General      151 South Old Woodward, Suite 200
Retirement System      Birmingham, MI  48009
of Detroit, Police     (248) 988-5882
and Fire Retirement
System of the City
of Detroit:

For National           Sidley Austin, LLP
Public Finance         By:  GUY S. NEAL
Guarantee              1501 K Street, N.W.
Corporation:           Washington, DC  20005
                       (202) 736-8041

APPEARANCES (continued):

| | |
|---|---|
| For Syncora Holdings, Ltd., Syncora Guarantee, Inc., and Syncora Capital Assurance, Inc.: | Kirkland & Ellis, LLP By:  STEPHEN HACKNEY 300 North LaSalle Chicago, IL  60654 (312) 862-2074 |
| For Ambac Assurance Corporation: | Arent Fox, LLP By:  CAROL CONNOR COHEN 1717 K Street, N.W. Washington, DC  20036 (202) 857-6054 |
| Court Recorder: | Letrice Calloway United States Bankruptcy Court 211 West Fort Street 21st Floor Detroit, MI  48226-3211 (313) 234-0068 |
| Transcribed By: | Lois Garrett 1290 West Barnes Road Leslie, MI  49251 (517) 676-5092 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1    THE COURT:  And let's move on and talk about

2  discovery.

3    MR. HACKNEY:  Good afternoon, your Honor.  Stephen

4  Hackney on behalf of Syncora.

5    THE COURT:  Yes, sir.

6    MR. HACKNEY:  Your Honor, we're here on a motion

7  that Syncora filed with several other parties joining that

8  relates to discovery that we'd like to take in anticipation

9  of the hearing on the motion for post-petition financing that

10  you spent most of the morning and afternoon discussing.

11  Before I -- I know that we're running into your next call,

12  and I will get right into the discovery itself, but I was

13  wondering if I could --

14    THE COURT:  Well, don't worry about that.  Don't

15  feel rushed.  I want to --

16    MR. HACKNEY:  Okay.  I will try.

17    THE COURT:  I want to take our time and do this

18  properly.

19    MR. HACKNEY:  I wanted to at the start, if I could,

20  your Honor, frame the importance of the DIP motion itself to

21  the case because I think its importance is significant not

22  only to this case but to other Chapter 9's that may follow,

23  and I think it's important to think about that in the context

24  of why we believe discovery is important.  As you've heard

25  today, the proposed DIP loan in question is believed to be

1 the first of its kind.  We actually -- our research indicates

2 that it's not literally the first Chapter 9 DIP loan.  Our

3 research indicates that there have been a couple small DIP

4 loans in other Chapter 9's, and there was a sizeable one that

5 was done as part of a plan, but it is the first of its kind

6 in terms of being the largest and also one I think that is

7 unabashedly about revitalization of the city in part as

8 opposed to immediate cash flow needs, so the DIP loan in this

9 case that's being proposed is significant.

10          It is significant for a second reason, and that is

11 because the proceeds of the DIP loan, the $350 million, 230

12 million about will be used to pay certain creditors outside

13 of the plan context, and the $120 million that's going to be

14 devoted to what are called quality of life initiatives, the

15 idea of a revitalization of the City of Detroit, a

16 renaissance on the street, so to speak, is also one that will

17 be happening outside the plan context, so they're coming to

18 you on an interim basis between eligibility and confirmation

19 and saying that they would like to be able to do this today.

20          The reason this is of great sensitivity and concern

21 to creditors is because if the city pledges away income

22 streams or assigns them to different parties now, it has

23 obviously an important impact on the city's ability to later

24 fairly adjust the debts of creditors like Syncora or the

25 pensioners or the others, so we perceive there to be

1   significant plan implications by some of these interim

2   motions that are being brought to the Court, and that is why

3   this is an area of great focus and concern for creditors, and

4   that informs somewhat the discovery that we've sought.

5           I believe there is some agreement with the city that

6   some discovery is appropriate, and I'd like to recite that

7   for the record and try and narrow it.  The city, as I

8   understand it, is amenable to the idea that the objectors can

9   obtain discovery into the DIP solicitation process, the DIP

10  evaluation process, and the process by which the DIP was

11  submitted to the City Council under PA 436.  It's my

12  understanding, at least, that we have general agreement that

13  that's okay and also that the city is willing for its

14  deponents, Mr. Doak and Mr. Moore, to be deposed.

15          Where there is disagreement with respect to the

16  scope of potential document requests and inquiry is on the

17  subject of the uses and the need for the quality of life

18  proceeds, and this is where I will confess I was taken a

19  little aback by our disagreement on this because the motion

20  itself is replete with references to Mr. Moore's declaration

21  but also to a discussion of all of the challenges that the

22  City of Detroit faces, for example, with respect to blight

23  remediation, the fire department, the police department, and

24  IT infrastructure.  These are some of the areas where the

25  city has said it may -- it's not obligating itself to, but it

1  has said it may or that it intends to direct the quality of

2  life proceeds at these subject matter areas.  We believe that

3  discovery into --

4          THE COURT:  Excuse me.  Why does Syncora care about

5  what the city's priorities are in terms of quality of life

6  spending?

7          MR. HACKNEY:  The answer, your Honor, is because, as

8  a creditor who, you know, expects to see a plan of adjustment

9  at the end of the case that fairly allocates or fairly

10 adjusts its debts along with the debts of the others in the

11 case, the way the city spends its money and the impact or

12 lack of impact that has on creditor recoveries Syncora

13 believes is endemic to analyzing whether it is, for example,

14 within the business judgment, as the city has contended it is

15 and which is one of the elements under Section 364 or one of

16 the factors you'll consider, whether it's in the best

17 interest of creditors, as they have suggested that it is in

18 their papers and as the order they proposed would find, and

19 it also goes to whether --

20         THE COURT:  Do you think the city is going to ask me

21 to approve its allocation of how it's going to spend the

22 proceeds of the loan?

23         MR. HACKNEY:  I think that --

24         THE COURT:  That makes me sound like a mayor or a

25 city council.

1      MR. HACKNEY:  Well, these -- your questions go right

2   to the core, I think, of this matter, but also in some

3   respects of the case, and I was -- let me respond in two

4   respects, your Honor.

5      THE COURT:  Well, we don't have to have an answer

6   now, but the issue is why have discovery on all of this?

7      MR. HACKNEY:  Yeah.  So I will answer your question,

8   which is I know that the city -- or I believe that the city

9   is taking the position that you're not permitted to consider

10  either the needs or the uses of the funds and that they have

11  sovereignty to administer themselves sort of thematically

12  under Section 904.

13     THE COURT:  Is that a proposition you disagree with?

14     MR. HACKNEY:  It is.  It is because, your Honor, I

15  acknowledge that under Section 904 that the city has the

16  right to administer itself without the Bankruptcy Court

17  interfering.  That's the language of Section 904.  But where

18  things change substantially is when you come to this Court

19  and ask this Court to begin to work the controls of the

20  Bankruptcy Code to the benefit of the city when they invoke

21  concepts like obtaining superpriority liens or good faith

22  assurances to be given to parties so that they're protected

23  no matter the outcome of various appeals and so on and so

24  forth.  When you come into that context, we believe you've

25  now entered -- first of all, you've put your dispute --

1  you've consented to the idea that the Bankruptcy Court must

2  determine whether it's appropriate, and we believe that

3  unlike a mayor or another political leader who thinks about

4  the needs of his citizens or her citizens in administering

5  the body politic, a bankruptcy judge, under Chapter 9 and the

6  history behind Chapter 9, the legislative purpose, does think

7  in terms of fairness to creditors, that that is an essential

8  aspect of the purpose of Chapter 9, and that the bankruptcy

9  judge is duty bound to consider --

10             THE COURT:  The fairness of what, though?

11             MR. HACKNEY:  What's that?

12             THE COURT:  The fairness of what?

13             MR. HACKNEY:  The fairness of the proposed action in

14  terms of how it will impact creditors.  For example, we

15  believe, your Honor, if I could go back to answer your

16  question about will you have to involve yourself in assessing

17  how they propose to use the money and whether they're using

18  it in the right way, we think that, at a minimum, we should

19  be entitled to take discovery on the subject but also that

20  you should consider evidence later that there are less

21  burdensome ways, for example, for the city to improve the

22  quality of life in Detroit that may not impair creditor

23  recoveries or that may not require superpriority liens and

24  the like, that there are different ways that the money can be

25  spent so that creditors will obtain either a better return on

1    their -- a better return on their claims.  And, for example,
2    your Honor, this is particularly appropriate when you think
3    about the concept of Section 364 and its incorporation into
4    Chapter 9, which hasn't always been part of Chapter 9, but
5    when it was incorporated, there's some of the legislative
6    history that suggests that the reason it was a good idea to
7    incorporate it into Chapter 9 was similar to the reason that
8    it is a good idea in Chapter 11, which is that post-petition
9    financing can be used to enhance the value of the estate and
10   enhance the value to creditors.  So we believe that the
11   question of how the money is being spent is germane to the
12   question of whether or not it's serving the purposes of
13   Section 364 even in the Chapter 9 context.

14        And your Court is asking -- the Court is asking
15   questions that I think are momentous ones.  I think the --
16   formulating the appropriate legal standard by which the Court
17   can determine that the interests of creditors are being
18   safeguarded whenever a municipal debtor invokes the
19   provisions of Chapter 9 that are outside Section 904 I think
20   is going to be critical and precedent setting, not only in
21   this case but also in the other cases, and I think that it is
22   inconsistent for the city, I guess, in my mind, your Honor,
23   to say that this evidence isn't relevant or that you're not
24   permitted to consider it when it dominates their motion and
25   where they are asserting that they have exercised good

1    business judgment and that what they're going to do is in the
2    best interest of creditors and is necessary to enhance the
3    value of the estate and so forth, the other elements that
4    you'll consider under Section 364.  That is why we want to
5    obtain that discovery, and we want to test the proposition
6    that the city is advancing that this is a good way to spend
7    the money and, by the way, so important that it has to be
8    done now outside of the plan context at a time where the city
9    doesn't have some sort of cash flow emergency.  It's my
10   understanding that the city's cash coffers have actually
11   increased substantially during the bankruptcy in part because
12   it isn't -- it is not paying bond debt such as the debt held
13   by my client in part, so this isn't a situation where the
14   city is coming to you and saying we need $5 million to get us
15   through the case or to pay professionals or to literally pay
16   the police officers.  The city has more cash today than it
17   did when it started the cases.  It is about a novel and
18   distinct concept, in our view, novel in the history of
19   Chapter 9, which is that during the pendency of the case, you
20   can use the Bankruptcy Code to revitalize the city and to
21   allow for a renaissance, which is the word from the
22   declaration and from the motion.  And whether you can do that
23   outside the plan context and whether you can actually
24   subordinate creditor recoveries to the notion of
25   revitalization is, we believe, a threshold issue of critical

1  importance to the cases, and that's why we are urging the

2  Court to allow us to take discovery, to allow for a fully

3  developed record before you for whatever decision that you'll

4  make on this subject when we try it.

5          THE COURT:  What does this discovery entail

6  specifically?

7          MR. HACKNEY:  What I would think it would entail

8  is -- I understand that we haven't proffered requests yet,

9  but I've already mentioned to counsel for the city that I

10  understand we'll have to put some thought into formulating it

11  because we don't want every piece of paper that relates to

12  the fire department or the police department or to blight,

13  and it's likely burdensome for the city to go collect all of

14  that information.  What I was thinking that we would want

15  were two principal types of information.  The first type of

16  information would be information that relates to assessments

17  of how the City of Detroit can improve itself.  There have

18  been consultants obviously in this case who have been doing

19  this type of work.  There have also been other consultants,

20  it's my understanding, in the history of the City of Detroit

21  who have looked at some of these questions, and the types of

22  documents or reports, whether it's from a consultant or

23  whether it's something internal at the Detroit

24  Fire Department itself that says here are our needs, here are

25  the most important things to us that would most allow us to

achieve our mission, here's the anticipated costs, those
types of analytical documents I think would be of extreme
importance to creditors so that they can make an assessment
of whether or not the city is exercising its judgment in a
way that's most appropriate or that is most efficient, and
the second type of document that I could see would be
documents that Mr. Orr himself considered as the decider
behind the loan as he's looking out at the city he's
administering and trying to decide how much money do I need
and what pacing and where will I put it and why, documents
that he considered that show how he selected the priorities
that he selected and documents that show what perceived
impact his decisions will have on the creditors in terms of
their recoveries to the extent these documents exist.  Those
are the types of documents I was thinking of when we broadly
described the concept of discovery into the uses and needs of
the quality of life note.

         A third category of documents would be additional
specificity around the deployment of the capital in terms of
how it will be spent, the specific uses.

         There are also some depositions that we had proposed
in addition to the two affiants, and the city, I think, is of
the view that it may object to some of those depositions.
There were four that we had put forward, a Barclays
deposition that relates to the negotiation of the DIP itself;

depositions of City Council members that would be germane to discovery of the compliance with PA 436; discovery of an Ernst & Young representative, which is germane to the cash flow forecasts that have been assembled and what they say about the city's cash flow needs; and, last, depositions of the swap counterparties. And I want to make clear for the Court in proposing the concept that we would depose the swap counterparties, it wasn't my intention that we would revisit the forbearance agreement discovery that was done previously. It was my intention that we would examine them on the subject of whether they're going to close on the optional termination payment under a variety of circumstances because you wouldn't want the city to take down $350 million in credit if it was not going to be able to deploy the money in the way that it was saying and pay the interest costs and so forth and not being able to close. The city has suggested that they oppose the swap counterparty depositions and that they, I think, needed additional information on the Ernst & Young purpose.

But those were the categories, and those were the depositions that we propose to take, and I wanted to make sure that I contextualize that within what's at stake here in the motion itself. Thank you.

THE COURT: I'd like to hear from the city, please.

MR. HAMILTON: Good afternoon, your Honor. Robert Hamilton of Jones Day on behalf of the City of Detroit. When

1   we received on October 23rd Syncora's motion for authority to
2   take discovery under Rule 2004, while we thought the
3   procedure was incorrect, we understood that discovery was
4   inevitable and going to occur with respect to our at that
5   time anticipated motion to obtain approval for the post-
6   petition financing from Barclays, and we immediately began
7   the process of collecting and reviewing documents for
8   eventual production to Barclays -- I mean to Syncora and
9   others who may decide to object to our motion for approval of
10  the financing facility.

11         We have collected and reviewed documents with
12  respect to how much financing -- external financing the city
13  will need to fund the assumption of the forbearance agreement
14  if this Court were to approve that assumption in a separate
15  hearing as well as how much external financing would be
16  needed to start the funding of the restructuring initiatives
17  that were the subject of the July 14th proposal to creditors
18  and that was the subject of extensive testimony during the
19  eligibility trial that your Honor oversaw over the last few
20  weeks.

21         We've also collected documents regarding the
22  solicitation process for potential participants in the post-
23  petition financing facilities as well as the myriad of
24  proposals that we received from various potential lenders and
25  their terms and documents regarding the exercise of the

1    city's business judgment in selecting the Barclays proposal

2    as the best one for the city.  As a result of that process,

3    we have collected and are prepared to produce tomorrow or

4    Monday over 5,000 pages of documents on each one of those

5    topics to those parties who indicate that they want to take

6    that discovery and, with respect to some of the documents,

7    agree to a protective -- or a confidentiality agreement to

8    maintain the confidentiality of some of the documents that

9    we're submitting.

10            We have also offered to Syncora to make our

11   witnesses, our two declarants, available for deposition, Mr.

12   Doak, who you heard from today, on Friday, November 22nd, in

13   New York, and on Monday, November 25th, Mr. Moore in Detroit.

14   The city consents to the discovery that I've just outlined

15   the production of all these documents on the need for

16   external financing, the process for obtaining that financing,

17   and the selection of Barclays.  We consent to the deposition

18   of those two declarants.

19            Syncora is asking for leave to take discovery on

20   other subjects that go substantially beyond the scope of what

21   we consented to, we believe on subjects that threaten to

22   impose substantial economic and logistical burdens on the

23   city on topics that we believe are not what this Court must

24   adjudicate when it hears and determines our motion for

25   approval of the post-petition financing motion.  Those

1  categories where they're going beyond what we think is the
2  legitimate scope fall under -- or there's two categories.
3  The first is relatively simple to deal with, and that's the
4  category with respect to our proposal -- or our request that
5  the Court approve our motion to assume the forbearance
6  agreement.  With respect to the motion that Syncora filed for
7  leave to take discovery, they did not list that as one of the
8  topics on which they were seeking documents, but they did
9  identify they wanted to take depositions of the swap
10 counterparties.  I did not follow entirely what counsel's
11 explanation was for why the depositions of the swap
12 counterparties is not a back door effort to take additional
13 discovery on the forbearance agreement, but I would just
14 suggest that if this Court at a separate hearing determines
15 to approve the city's assumption of the forbearance
16 agreement, the city, as -- pursuant to the terms of that
17 forbearance agreement that are detailed in our motion and in
18 the motion to assume the forbearance agreement, the city
19 would have the option to then cause the termination events
20 that would trigger our obligation to pay the $230 million --
21 $230 million -- 210 -- $210 million pursuant to that
22 forbearance agreement, so there would be, as we can see it,
23 no reason to depose in connection with the finance motion the
24 swap counterparties because the finance motion only becomes
25 material if you approve the forbearance agreement.  And if

1  you approve the -- if you approve the forbearance agreement,

2  what the swap counterparties say about what their intentions

3  are are immaterial and irrelevant because at that point the

4  city controls what happens upon seven or ten days' notice

5  under the forbearance agreement.

6       The bottom line is this Court has already heard and

7  considered and decided what discovery should occur in

8  connection with our motion to assume the forbearance

9  agreement.  That discovery has occurred, and the hearing is

10 scheduled to occur, and it should -- it will be decided based

11 on the record that this Court already dictated should be

12 developed for that hearing, and Syncora or others should not

13 be allowed to pursue discovery on the finance motion as a way

14 to get back door discovery and supplement the record on the

15 motion to assume the forbearance agreement.

16       The more difficult argument and the more difficult

17 category is what counsel spent most of his time in his

18 argument on, and that is the request for discovery on our

19 proposed use of the quality of life -- the proceeds of the

20 quality of life bonds.  The devil in this request is

21 substantial.  While he indicates that they want to take just

22 limited document discovery, just assessments that the city

23 may have developed both at the macro level and at individual

24 department levels, the fire department, the police

25 department, and how much money they think they need for what

1  particular improvements, documents that Mr. Orr may have
2  considered in deciding what restructuring initiatives to
3  approve and which ones to table, and how the money will be
4  spent among various different departments, I can't think of
5  what kind of evidentiary hearing counsel is contemplating
6  that that discovery would go to other than sort of a super-
7  tribunal in which this Court second-guesses and sits in
8  judgments of every single governmental decision that the City
9  of Detroit is making on how to go forward with its
10  revitalization and restructuring initiatives.  There is no
11  way that kind of hearing could be completed in one or two
12  days.

13       Essentially, I think what counsel is suggesting is
14  that Section 364 constitutes an effective repeal of Section
15  904 in a Chapter 9 case where the Bankruptcy Court does not
16  have authority or jurisdiction to interfere with a
17  municipality's governmental decisionmaking and its decisions
18  on how to use its property and revenue unless the
19  municipality decides they have to borrow some money, and if
20  the municipality decides it has to borrow some money, then
21  the Bankruptcy Court, notwithstanding 904, can sit in
22  ultimate judgment and second-guess every single spending
23  decision that the city makes on how much money to spend on
24  fire, how much money to spend on police, how much money to
25  spend on lighting, how much spending -- money to spend on

1    roads, versus creditor recoveries.  And, in essence, they

2    would turn the 364 --

3              THE COURT:  Don't forget pensions.

4              MR. HAMILTON:  Very important, pensions, maybe not

5    sacrosanct, but very important.  And the point would be that

6    instead of the Chapter 9 plan of adjustment process working

7    those things out, they want to turn the 364 hearing into some

8    macro hearing that decides how all the money that the City of

9    Detroit should spend for the next ten years, how it should be

10   spent, what dollars should go to creditor recoveries, what

11   dollars should go to fire improvement, what dollars should go

12   to police improvement, all because we have to borrow some

13   money in order to fund some of these initiatives.  We do not

14   think that is a proper construction of either 904 or 364.  We

15   believe that when you hear the 364 motion, we have to

16   demonstrate that we exercise sound business judgment in

17   determining that we needed to borrow money in order to meet

18   our cash needs.  We will also have to demonstrate that we --

19   in order to borrow that money under 364(c)(2), we had to give

20   super administrative priority status and liens because

21   general unsecured credit was not available.  That does not

22   mean that this Court will sit in review of the city's

23   business judgment on the underlying money that is needed.

24   You do sit in judgment on whether or not forbearance

25   agreements should be approved, but that's on a separate

1   motion under 365 and a 9019 motion.  And if you decide that
2   that forbearance agreement should be approved, then we know
3   we need $210 million.   Then, in connection with the 364
4   motion, you will hear and adjudicate our business judgment as
5   to whether or not we needed to borrow the money to pay that
6   $210 million and whether or not the terms on which we want to
7   borrow that money are reasonable and in everybody's best
8   interest.  That is your call.

9        Similarly, by the same token, with respect to the
10  restructuring initiatives, the city has exercised its
11  governmental and political judgment as to how much money it
12  should invest in its restructuring initiatives over the next
13  ten years.  You do not sit in judgment and review the city's
14  exercise of its governmental and political decision-making in
15  that regard.  That's up to the city to figure out how to do
16  with the mayor, with the emergency manager, and with all the
17  constituents.  We have already presented an extensive
18  evidentiary record on how those calculations were made, what
19  the restructuring initiatives are, and how much they will
20  cost over the next ten years.  And we lay that out in our
21  motion just like we lay out all the details of the
22  forbearance agreement, but in connection to whether or not
23  you're going to approve the financing arrangement, what you
24  sit in judgment on is not our decision to spend $1.25 billion
25  over the next ten years on those restructuring initiatives

1    because that's a governmental political decision that only
2    the City of Detroit has the authority to make.  What you sit
3    in judgment on is our business judgment that we need to
4    borrow some money to start paying for those initiatives and
5    the terms on which we want to borrow that money are
6    reasonable.  That's what you sit in judgment on, and we are
7    going to produce the documents that are relevant to that
8    inquiry, but it is not appropriate to turn the 364(c) hearing
9    into some mega trial that kind of makes moot the whole plan
10   of adjustment in which the parties ask you to decide what's
11   an appropriate use of loan proceeds and what's not.  Should
12   we use the loan proceeds to pay creditor recoveries, or
13   should we use it to pay pensions, should we pay it to use --
14   to pay for OPEB, or should we use it to pay for lighting?
15   That's not what this hearing is about, and I think it's
16   improper for them to try and seek discovery on that.
17        We are willing to make Mr. Moore and E&Y available
18   for deposition on the fact that we need to borrow money to
19   start paying -- to start funding the initiatives, the
20   restructuring initiatives, but we think it is improper for
21   them to take discovery on the underlying decision-making, the
22   political and governmental decision-making that the City of
23   Detroit has undertaken in deciding what restructuring
24   initiatives they're going to undertake and when over the next
25   ten years and how much they're going to cost.  That's not

1 | appropriate for this motion.

2 | THE COURT: Thank you, sir.

3 | MS. CONNOR COHEN: Your Honor, may I also be heard

4 | in support of the motion?

5 | THE COURT: Yes, ma'am.

6 | MS. CONNOR COHEN: Carol Connor Cohen, your Honor,

7 | on behalf of Ambac Assurance Corporation. Your Honor --

8 | THE COURT: But not to repeat anything.

9 | MS. CONNOR COHEN: I'm sorry.

10 | THE COURT: But not to repeat anything.

11 | MS. CONNOR COHEN: I will not repeat anything. I

12 | want to start with, though, talking about what the test is

13 | under 364 because quite clearly the city has moved to have

14 | your Honor make a ruling under 364(c) in this bond financing.

15 | The Court will have to look at whether the debtors exercise

16 | reasonable business judgment, whether --

17 | THE COURT: On what?

18 | MS. CONNOR COHEN: On -- I'm going to -- would you

19 | just let me finish, and I'll get back to that? I want to

20 | come back to that.

21 | THE COURT: You're asking me not to ask you any

22 | questions?

23 | MS. CONNOR COHEN: No.

24 | THE COURT: I didn't think so.

25 | MS. CONNOR COHEN: No, but actually there's a point

1  I want to make --

2          THE COURT:  Okay.

3          MS. CONNOR COHEN:  -- here that --

4          THE COURT:  I'll let you work into it.  That's fine.

5          MS. CONNOR COHEN:  -- the Court has to exercise

6  reasonable business judgment, has to evaluate whether it's in

7  the best interest of creditors and the estate, has to look at

8  alternative financing that might have been available, whether

9  there are any better bids and all that kind of stuff -- we've

10 talked about that -- whether it's necessary, essential, and

11 appropriate to preserve the estate and continue operations,

12 whether the terms are fair, reasonable, and adequate, whether

13 it was negotiated in good faith and at arm's length.  Now,

14 some of those criteria are the same as in a Chapter 11, and

15 some of those criteria the debtor has said they're happy to

16 give us discovery on.  But there's two or three of these that

17 really have never been applied before on a Chapter 9, and

18 that's exactly my point, the reasonable business judgment and

19 the best interest of creditors and the estate and whether

20 it's necessary, essential, and appropriate to preserve the

21 estate and continue operations.  Those have never been

22 applied before in a Chapter 9, and part of what the Court

23 will have to do in deciding the motion before the Court will

24 be to decide what the proper criteria is, in fact.  I don't

25 believe that's what we're here for today because there is

1  going to be extensive briefing, I'm sure, on those questions,

2  and, you know, we will --

3          THE COURT:  Well, but some judgment about that is

4  necessary to control or decide the dispute about discovery.

5          MS. CONNOR COHEN:  Of course it is, and what we will

6  point to in discussing that issue, for example, is the

7  legislative history that was -- when 364 was first

8  incorporated into what was then the version of Chapter 9, and

9  at that time Congress said the reason they were doing it, the

10 reason they were adding this ability in for a municipality

11 was so that the municipality could maintain essential city

12 services directed to public safety and public health during

13 the reorganization proceeding, kind of a narrow purpose

14 because it was very controversial to add this provision into

15 Chapter 9.

16         Now, the question is going to become -- and we

17 don't -- this isn't a question for today again, but the

18 question is going to become at what level is the city

19 permitted to spend at the creditors' expense and still be

20 able to confirm a plan because it is pretty well settled --

21 there's tons of cases out there that when it comes time to

22 confirming a plan of adjustment, that the best interest of

23 creditors test does limit the city's ability to spend lots of

24 money on improving and glossing the current situation as

25 opposed to paying off creditors, that there's a limit to how

1   much money the city can expend at the expense of creditors.

2   We believe that same criteria should apply on the best

3   interest of creditors position here.

4           THE COURT:  Fixing the lights in the city is

5   glossing the city?

6           MS. CONNOR COHEN:  No.  And we're not talking about

7   the Lighting Authority motion right now anyway, but you're

8   right.

9           THE COURT:  All right.  Fair enough.  I'll change

10  the question.

11          MS. CONNOR COHEN:  To ask --

12          THE COURT:  Getting adequate police and fire is

13  glossing the city?

14          MS. CONNOR COHEN:  Having adequate police and fire

15  is not putting a gloss, absolutely not.  And the legislative

16  history suggests that's exactly why this provision was added

17  to Chapter 9, but how and whether you're doing it in the most

18  efficient manner or at the expense of repayment of creditors

19  is something that's in this Court's purview under this test.

20          Now, we keep hearing 904, 904, 904.  904 is not an

21  absolute.  904 says quite clearly that the debtor can consent

22  to the Court's involvement, interference, as the statute

23  says.  Here the debtor has come to the Court.  They could

24  have gone off and spent their money however they wanted.

25  They could have borrowed money if -- and spent it how they

1    wanted, but they came to your Honor and asked for an order,

2    and the reason they're coming to your Honor and asking for an

3    order is because --

4          THE COURT:  They came to the Court for an order but

5    only to approve the necessity of the borrowing, the necessity

6    of the priority and the senior liens, and to establish the

7    reasonableness of the terms.

8          MS. CONNOR COHEN:  But --

9          THE COURT:  What suggests there's any consent beyond

10   that?

11         MS. CONNOR COHEN:  Well, once you do that, when they

12   come to your Honor and asked to be able to give Barclays this

13   superpriority treatment and the like, then that has to be

14   considered consent to having the criteria under 364(c) apply,

15   which includes looking at the best interest of creditors and

16   whether they are not --

17         THE COURT:  Okay.  Can you walk me through the baby

18   steps as to why that follows because I don't exactly see it?

19         MS. CONNOR COHEN:  Well, simply coming to the Court

20   in the first instance has in other situations effectively

21   been treated as consent.  All right.  But they didn't have to

22   come to your Honor.

23         THE COURT:  I'm not sure the proponents of Stern

24   versus Marshall would a hundred percent agree with you on

25   that.

1    MS. CONNOR COHEN:  Well, I don't -- okay.  I'm going

2  to let that one pass, but --

3    THE COURT:  Well, no.  It's an important point,

4  which is the mere fact that a party comes to court can mean

5  consent to some things, but you have to be very careful in

6  measuring what the consent is.

7    MS. CONNOR COHEN:  All right.  I'll take that as a

8  given, but what the -- again, what the --

9    THE COURT:  Why I'm asking --

10    MS. CONNOR COHEN:  What the debtors --

11    THE COURT:  Why does this motion constitute consent

12  for this Court to approve, for example, how the city will

13  spend $350 million?

14    MS. CONNOR COHEN:  Because they're asking your Honor

15  to give them -- to give Barclays, this new lender who's going

16  to come in and layer on $350 million worth of new debt --

17    THE COURT:  Um-hmm.

18    MS. CONNOR COHEN:  -- over and above most of the

19  other creditors in this case --

20    THE COURT:  Um-hmm.

21    MS. CONNOR COHEN:  -- they're asking them to have

22  that superpriority status, to become a superpriority creditor

23  of the city, and part of the criteria for deciding whether

24  that's appropriate is to look at the best interest of

25  creditors, a test we believe has to be interpreted the same

1  way as the best interest of creditors test in confirming a

2  plan of adjustment, which, again, looks at a balance of the

3  extent to which the city can spend at the expense of the

4  creditors, so that does require -- now, the litany of

5  horribles we got about the kind of trial, we don't think

6  that's what you were looking at.

7              THE COURT:  Is there a 943 case that says that?

8              MS. CONNOR COHEN:  I'm not aware of a 943 case, no,

9  but when -- what we're talking --

10             THE COURT:  You know what I'm asking.  I'm asking in

11  defining best interest of creditors in plan confirmation, is

12  there a case that gives the -- that says the Court has that

13  broad authority?

14             MS. CONNOR COHEN:  There actually was case law cited

15  in Syncora's objection to the Public Lighting Authority

16  motion that we joined in that says it's --

17             THE COURT:  I should look there?

18             MS. CONNOR COHEN:  Those cases say exactly that.

19             THE COURT:  All right.  I'll look there.  Thank you.

20  That's all right.  If it's there, you don't need to pull it

21  out again.

22             MS. CONNOR COHEN:  Sorry.

23             THE COURT:  That's all right.

24             MS. CONNOR COHEN:  I don't retain case names.

25             THE COURT:  Right.

1        MS. CONNOR COHEN:  And I lost what I was saying.

2        THE COURT:  Oh, I'm sorry.

3        MS. CONNOR COHEN:  No.  It's not your fault.

4        THE COURT:  Okay.  I won't take any then.

5        MS. CONNOR COHEN:  Because that is a factor that has

6   to be taken into account at plan time in that text -- in that

7   context, then we think that's something that has to be taken

8   into account also in applying 364 because it also

9   incorporates a best interest of creditors component in the

10  factors, at least according to the case law, and that -- by

11  invoking the Court's jurisdiction to ask for that order, we

12  believe they have consented to having the Court look at the

13  things that have to be looked at.

14       Oh, I know what I was saying.  I was saying that the

15  hearing that we're looking for doesn't envision, you know, a

16  lengthy exposition of all of the operational details of all

17  of these various departments and so forth and so on but

18  rather a testimony about what they're going to spend it on,

19  why they need it, why they need those things, and why it has

20  to cost what they think they're asking for, and once your

21  Honor hears the testimony, then you decide does it meet this

22  criteria or not.  It's not saying this expenditure is okay

23  and this expenditure isn't.

24       THE COURT:  Where in this process do the citizens of

25  Detroit get to be heard?

1    MS. CONNOR COHEN:  Well, they will be heard through

2   their various representatives, many of whom are here, the

3   unions, the retiree representatives.

4        THE COURT:  There's 680-some thousand citizens.  A

5   small percentage of them are represented by unions.

6        MS. CONNOR COHEN:  Your Honor, I'm afraid I don't

7   see that --

8        THE COURT:  I guess my question is, you know, not to

9   be flip about it, don't the citizens have a right to be heard

10  on the question of how the city will spend the proceeds of

11  this loan if it's approved, and if the answer to that

12  question is yes, isn't the mechanism for providing for that

13  right to be heard the political process, not the judicial

14  process?

15       MS. CONNOR COHEN:  Well, it is, and -- it is.

16       THE COURT:  Isn't that the end of the discussion?

17       MS. CONNOR COHEN:  And that's part of the 436

18  process.  I mean the political process is represented in this

19  situation in part by the 436 requirements, the City Council

20  and the Emergency Loan Board, for example, and for the city

21  officials who will be elected -- who have been elected and

22  who will be taking over when Mr. Orr's term is completed, but

23  with --

24       THE COURT:  Right, so why -- but doesn't that mean

25  it's a political process, not a judicial process?

1          MS. CONNOR COHEN:  Well, it's a judicial process to

2    the extent that your Honor has to apply the standards that

3    are in the statute and in the case law interpreting the

4    statute for providing Barclays with the superpriority status.

5          THE COURT:  Suppose the creditors' interests are

6    different from the citizens' interests?  What do I do then?

7          MS. CONNOR COHEN:  Your Honor applies the statute,

8    the statutory --

9          THE COURT:  Creditors win over the --

10          MS. CONNOR COHEN:  -- standard, which says that you

11    have to balance -- obviously the -- we don't -- none of us

12    would disagree that the city is entitled to and should spend

13    those amounts necessary to provide essential service to

14    provide public safety and health but doing so in a way and at

15    a cost that is reasonable and that doesn't do so at the

16    expense of the creditors.  Thank you, your Honor.

17          THE COURT:  All right.

18          MR. HACKNEY:  Your Honor, can I reply to Mr.

19    Hamilton?

20          THE COURT:  You can, but let me see if there are any

21    other objecting parties --

22          MR. HACKNEY:  Absolutely.

23          THE COURT:  -- who want to be heard, and then I'll

24    give you a chance.  Did you want to be heard, Mr. Gordon?

25          MR. GORDON:  Thank you, your Honor.  Robert Gordon

1  of Clark Hill on behalf of the Detroit Retirement Systems.

2  Thank you, your Honor.  In some respects, your Honor, I feel

3  like I'm still trying to catch up from last week's trial to

4  this issue, and I think it highlights what I'm seeing from

5  over there as a chicken and egg and chicken again issue right

6  now, which is it sounds like we're arguing objections that --

7  legal issues that may be implicated by the motion that was

8  filed for the DIP financing, which is supposed to be heard

9  later, which hasn't been fully briefed yet, which may

10  determine what the total contours are of what's fair to ask

11  for in discovery.  We're arguing today to figure out what we

12  can ask for in discovery, and I'm concerned about that

13  because we haven't had a chance to fully brief this.

14  There's significant legal issues that are being discussed

15  here, but I don't think all of us have a chance to brief that

16  just yet, so I'm concerned about that.  So I'm not sure

17  whether --

18          THE COURT:  Well, I don't know what to do about

19  that.

20          MR. GORDON:  Yes.

21          THE COURT:  It is a concern, but the fact is that

22  Syncora filed this motion, and the choice was deal with it

23  now or deal with it later, and the reason why I chose now is

24  because the city says it's got to get going on this loan.

25          MR. GORDON:  Well, there seem to be a couple of

1  options here.  One, I'm just trying to think this out --

2  think this through with you before we're --

3          THE COURT:  Um-hmm.

4          MR. GORDON:  -- prejudiced in some way because I

5  would like to be able to brief this if we're really going to

6  go down this path today.  The discovery could be held in

7  abeyance while we file objections to the DIP financing and

8  claim that there's all sorts of reasonable business judgment

9  issues that the Court should be probing, and the Court could

10 then rule upon whether those are fair game or not subject to

11 discovery, but then we'll be into mid-December, and then

12 we'll be starting discovery.  The city says that's not fast

13 enough for us.  Everything has to be immediately because our

14 hair is on fire and everything else, and, you know,

15 everything has to be done like yesterday for reasons I'm not

16 exactly sure since they're accumulating cash in the meantime

17 and they're still paying payroll and so forth.  That's one

18 option.  Doesn't seem real efficient, but that's one option.

19 The other option --

20         THE COURT:  Well, hold on.

21         MR. GORDON:  Yes, sir.

22         THE COURT:  I'm sure the city is as concerned as you

23 are about the fact that the retirement contributions aren't

24 being made.

25         MR. GORDON:  I hope they're concerned about it.  I'm

1   not sure, but I hope so.  I'm sorry, your Honor.  I'm not

2   sure if I'm following --

3          THE COURT:  You missed my point.

4          MR. GORDON:  I missed your point.  I'm sorry.

5          THE COURT:  Well, your point was there's no urgency

6   here.

7          MR. GORDON:  Oh, I didn't say no urgency.  I'm just

8   trying to think of what's prudent.

9          THE COURT:  Well, your point was that there was no

10  urgency here, that we can wait till January.

11         MR. GORDON:  Not necessarily, your Honor.  The other

12  option is that we allow this discovery because it's not as --

13  certainly not as broad as what we just engaged in in the last

14  45 days in connection with eligibility, that we allow this

15  discovery, and if some of it turns out to, in your mind, not

16  be relevant, then I mean we've certainly incurred an expense.

17  There's no doubt about that.  But if the urgency is more

18  important, then so be it, but I don't think we should be

19  precluded from at least taking the discovery and being fully

20  prepared to point out things.  I think we all actually were

21  surprised at some of the things that came out in discovery

22  relative to the trial last week that -- anyway, I won't go

23  into that, but I do -- no problem.  Sorry.  So that's another

24  option is I mean, you know, if urgency is that important,

25  then the discovery seems to be fairly narrowly tailored.  We

 1  can discuss -- I haven't had a chance to really think about

 2  it.  We can discuss whether the swap participants are

 3  necessary.

 4       THE COURT:  It's hard for me to see how discovery on

 5  the subject of how the city should spend $350 million is

 6  anything but gigantic, enormous.

 7       MR. GORDON:  Yes.  I totally agree, and I think that

 8  the suggestion that 364(c) --

 9       THE COURT:  I mean because that opens up the

10  possibility that any objecting party -- and by that I mean

11  objecting to the motion -- can call its own expert or experts

12  to testify about how he or she from an urban planning

13  perspective thinks this money ought to be spent.

14       MR. GORDON:  Well --

15       THE COURT:  Wow.

16       MR. GORDON:  -- as your Honor knows, it's a

17  reasonable business judgment standard.  It's not reinventing

18  the wheel.  To suggest, as city council -- as city's counsel

19  has, that 364(c) in the context of Chapter 9 doesn't even

20  implicate reasonable business judgment -- at least that's

21  what I was hearing --

22       THE COURT:  Yeah.

23       MR. GORDON:  That seems pretty big to me.  That

24  seems a bit odd.  That kind of reads 364(c) out of Chapter 9,

25  which is not the case.

1         THE COURT: Well, no.

2         MR. GORDON: I don't know how you -- I don't know --

3         THE COURT: I think the argument is you reconcile

4 364(c) with 904.

5         MR. GORDON: And how do you do that? I mean I

6 didn't hear anything here that could parse that and -- well

7 enough to say that we shouldn't be talking about what is

8 reasonable business judgment in terms of what you're going to

9 use this for if you're going to incumber unincumbered assets

10 that could otherwise be used in various ways and which are

11 not being proposed -- these initiatives are not being

12 proposed in the context of an overall Chapter 9 plan.

13 They're saying they need to commence these things, but

14 they're not doing it in the context of a Chapter 9 plan.

15 They're doing it outside of a plan. I think there are

16 serious implications there.

17         THE COURT: So you think, just to summarize, that

18 the city should go with an understaffed police department, an

19 understaffed fire department, 40 percent of lights lit, I'm

20 not sure how many tens of thousands of abandoned properties,

21 until a plan is confirmed?

22         MR. GORDON: No, your Honor, but I'm not -- I am not

23 sure that the $150 million portion of the DIP loan has been

24 clearly identified as to what it will go for, so I think that

25 there are fair questions to be asked about that, but if it is

1  going to provide essential services, that would be a
2  different story.  And as to the $200 million portion of it,
3  of course, all subject to the arguments we've made -- that
4  all the parties have made regarding whether the swap
5  participants are even entitled to it, there needs to be some
6  analysis of whether if that part goes away, if the Court
7  determines that the swap participants are not secured
8  creditors, is the 150 million still there?  How is that
9  affected?  I don't know that we've fully analyzed that yet.
10            THE COURT:  All right.  Thank you.
11            MR. GORDON:  Thank you, your Honor.
12            THE COURT:  Before I get back to you, I want to ask
13  a question of the city because I want to give you the last
14  word.  Sir, at the lectern, please.
15            MR. HAMILTON:  Yes, sir.
16            THE COURT:  I didn't quite hear your response on the
17  request for discovery regarding compliance with PA 436.
18            MR. HAMILTON:  We have no -- we have no problem with
19  that.  They wanted to take a deposition of a City Council
20  member.  We took no position on that.  We don't represent the
21  City Council.  We would appear at the deposition if it
22  happens.
23            THE COURT:  All right.  Thank you.  Sir.
24            MR. HACKNEY:  Thank you, your Honor.  I will be
25  brief, but the stakes are very high, and I think that the

1  legal position that the city is taking is breathtaking here
2  because you heard Mr. Hamilton say that when they come to you
3  on a 364 motion and they ask you to work the controls of the
4  Bankruptcy Code to their advantage, should you deign to
5  ask -- to probe behind what they're using the money for, why
6  they believe they need it and assess whether this borrowing
7  is in the best interest of creditors, apply some of those
8  different elements you heard both counsel and I talk about,
9  that if you're to do that, now you're sitting as a super
10 tribunal almost how dare you interfere with our
11 administration.  You are now acting as a super tribunal when
12 there's no question that if they did these very plan-like
13 steps, paying $220 million to a creditor, investing in the
14 city, revitalizing the city and pushing down on the creditor
15 stack to do so, if they did that in the context of a plan,
16 there is no question that the Court would be within its
17 rights to make all of those assessments, whether it's fair
18 and equitable, whether it's in the best interest of
19 creditors, those precise elements that are designed to
20 protect creditors and make sure that the plan is fair, that
21 it does fairly adjust the debts.  The thesis here is, well,
22 why don't we just pull it forward because if we can pull it
23 forward out of the plan context, we can engage in a number of
24 these key set pieces with the Court where their position is
25 that they will come in and say, "In my judgment, it's

1　necessary, and you must defer to my judgment." You're given

2　no opportunity to assess, and you could give away the city,

3　so to speak, in the process of improving itself because you

4　could -- Detroit's challenges are well-known, and I'm

5　sympathetic to and sensitive to your questions. I don't mean

6　to be callous. I understand that there are issues with the

7　lights, with 911 response times, and I understand that there

8　are real people out there today that are living with these

9　challenges, and I'm not being callous, but I do want to say

10　this. They've been living with these challenges for a very

11　long time, and while it is important that --

12　　　　　THE COURT: This argument does not impress me,

13　counsel. Don't go there.

14　　　　　MR. HACKNEY: But while it's important, it is

15　something that must be fairly balanced with the other aspects

16　of the city's --

17　　　　　THE COURT: That's a fair point, but the fact that

18　they've been living with it for a long time --

19　　　　　MR. HACKNEY: Agree. Well, and --

20　　　　　THE COURT: -- is no justification for imposing it

21　upon them for another day.

22　　　　　MR. HACKNEY: I'm not trying to say that we should

23　make them wait for no reason at all. I am saying that there

24　is a good reason to approach this with both the benefit of a

25　fulsome record and with caution because, your Honor, even as

1  we talk about the business judgment rule in this context, I

2  think that your rulings on what the business judgment rule

3  means in Chapter 9 are going to be questions of first

4  impression in some respects, and I think they are going to be

5  momentous rulings.  I know what it means in Chapter 11.  I

6  deal with that a lot, and I know the Court does as well.  But

7  when you talk about the way the business judgment rule works

8  in Chapter 11, it's not clear how it translates into Chapter

9  9.  For example -- and don't -- this is not intended to be

10  flip or callous, but I'm trying to map these two things very

11  precisely.  Are the citizens of the city, are they like the

12  equity in a Chapter 11?  That would be -- that would be --

13          THE COURT:  Those analogies are so imperfect that

14  it's not even worth trying.

15          MR. HACKNEY:  There are challenges there, and so I

16  actually think that when you say what the business judgment

17  rule means under 364 in the context of Chapter 9, I think

18  that ruling is going to grapple with these concepts of

19  balance, necessity, rights of the citizens vis-a-vis rights

20  of the creditors, and I -- and those are the types of issues

21  that you would grapple with, I believe, in a plan.  I don't

22  believe that the city can say that you are not entitled to

23  grapple with them in the context of 364.

24          I'd like to finish with one point.  I want to thank

25  you for your patience.  There's one thing that doesn't make

1  any sense to me about the city's position here today, which

2  is they are willing to allow us to take the deposition of Mr.

3  Moore, so he's the Conway MacKenzie consultant whose

4  deposition is a very colorful recitation of the challenges

5  and how they need the money to address the challenges, so

6  it's both about needs and uses.  It doesn't square with me

7  that they're saying, yeah, you can depose Mr. Moore because,

8  of course, we're going to call him, and we are going to paint

9  a picture of the City of Detroit that justifies this loan for

10  Judge Rhodes, but we won't give you discovery that relates to

11  the work and the assessments and the types of things that he

12  engaged in and reviewed and considered in order to generate

13  the declaration that we attached.  I don't see how those two

14  things fit with one another.  If the needs and the uses are

15  irrelevant, why does it dominate their motion?  Why is Mr.

16  Moore's declaration devoted entirely to it?  Why is he

17  proposed as a witness?  If those things make sense for the

18  city because they admit that they are relevant to their

19  motion, then the discovery on the uses and needs I believe

20  also would be relevant.  I agree that while we can try to

21  minimize the burden, it will be substantial discovery because

22  of what you said.  I'm not going to disagree with that, but

23  this is a big loan, and this is a big issue for the

24  creditors.  We're talking about $120 million on top of the

25  swap counterparty termination amount.

1       THE COURT:  It's a big number, but it pales in

2   comparison to the numbers I heard the city needs for its

3   revitalization program over -- I think it was ten years.

4       MR. HACKNEY:  I think that in some respects, your

5   Honor, the whole case is about that word "need," and I think

6   it's a hard question because I think that this is something

7   that's --

8       THE COURT:  Isn't "hard" just another word for

9   political?

10      MR. HACKNEY:  No.  I think in this case it's

11  emphatically going -- it is certainly also a political

12  question that people wrestle with, that certainly the city

13  wrestled with before bankruptcy under the constraints that it

14  had to operate under.  I think it is -- no matter how much we

15  struggle with the difficulty, it is a legal question, though,

16  for you because -- because necessity is something that

17  municipalities struggle with everywhere outside of

18  bankruptcy, when they come to bankruptcy and they now want to

19  confirm a plan and get out, they have to prove to you that

20  the steps that they propose to take, the recoveries that they

21  propose to offer are fair and equitable and are in the best

22  interest of creditors.  In the case of the City of Detroit

23  that has these well-documented challenges -- and I won't

24  shirk from saying that they are significant challenges -- at

25  some point doesn't Kevyn Orr just come in and say, "Why would

1  I ever give creditors a dollar?  I mean the needs here are
2  substantial, and I intend to invest not a billion" --
3          THE COURT:  A lot of people think that's what he
4  already said.
5          MR. HACKNEY:  I guess I would say he's come
6  relatively close to it, but I'll finish with one point, which
7  is you can see there's a logical way to back into the fact
8  that the Court must be as vigilant, we believe, in the
9  interregnum period between eligibility and closing as it is
10 in confirmation.  And the logical point is that if you put
11 the plan together that said we are going to revitalize the
12 city, improve services, speed up police officer response
13 time, protect our firemen, remediate blight, build parks, all
14 sorts of different types of things, and give the creditors
15 nothing or very little, pretend that the plan said that --
16 some people feel that the plan does say that today, but
17 pretend in this hypothetical the plan said that and it didn't
18 marshal any creditor support, it wouldn't be a confirmable
19 plan that would allow the city to exit, so you know that in
20 the backdrop of all of this, the need to have at least some
21 creditor support -- and the history of Chapter 9 indicates --
22         THE COURT:  Well, it's way premature to come to the
23 conclusion about what plan is confirmable and what isn't.
24         MR. HACKNEY:  This motion --
25         THE COURT:  There are provisions for cramdown --

1          MR. HACKNEY:  There are.

2          THE COURT:  -- in Chapter 9.

3          MR. HACKNEY:  There are, but those provisions

4    still --

5          THE COURT:  A plan can be confirmed with no creditor

6    support.

7          MR. HACKNEY:  Well, at least an impaired assenting

8    class I would expect even in cramdown, but understood.  You

9    could have a small minority, but it would still have to

10   satisfy all those factors of what's fair and equitable,

11   what's in the best interest of creditors.

12         THE COURT:  True.

13         MR. HACKNEY:  Those never go away, and I think

14   that's the difference between when you come to a bankruptcy

15   judge in a Bankruptcy Court and start asking for these unique

16   aspects of the Code is that that is the perspective, and this

17   is one of the things we intend to brief for you in our

18   objection because I do want to -- it is absolutely

19   complicated and I believe reasonably a first impression.

20   We've been --

21         THE COURT:  All right.  I'm inventing a process here

22   that I think will at least go some good measure of the way

23   toward accommodating everyone's interest here because I think

24   there -- I think there is merit in the concerns that you have

25   raised and that Mr. Gordon have raised about process here, so

1  here's the best I can come up with to try to accommodate

2  everyone's interest here.  The first is between now and when

3  we start the hearing to limit discovery in the ways that the

4  city has proposed or, in the case of PA 436, not opposed, and

5  then this will give you then an opportunity to brief more

6  fully than we have in connection with today's hearing the

7  issue of what is the appropriate scope of the Court's review

8  of this motion under Section 364(c).  And then in the context

9  of that hearing, which the Court will take so much evidence

10 as the city thinks is relevant to the motion, according to

11 its view of the scope of the Court's review, the Court will

12 then decide whether, based on its determination of the scope,

13 that the record is complete or to provide for further

14 discovery on a more expanded scope of review, so I know it's

15 a little bit more cumbersome and complex, but I think there

16 is merit in trying to make a determination of the scope of

17 review in a more fulsome way than this discovery motion has

18 allowed us to do, so that will be my order at this point in

19 time.  I will try to prepare an order that perhaps more

20 articulately sets forth what I'm trying to do here than I

21 have been able to on the record here.

22         MS. CONNOR COHEN:  Thank you, your Honor.

23         MR. NEAL:  Your Honor, just -- good afternoon again.

24 Guy Neal.  Just a question on the objection deadline.  I know

25 there's been talk potentially of having that date moved.  I

1  believe it's --

2       THE COURT:  What is the deadline now?

3       MR. NEAL:  I believe it's on the 22nd, but I thought

4  that it might be moved to the 27th.  I'm just not sure where

5  it stands today.

6       MR. ERENS:  Your Honor, the notice that the debtor

7  sent out had set the 21st as the objection deadline.  We've

8  already talked to Syncora because of the need to accommodate

9  discovery that we would move that objection deadline to the

10  27th.  The debtor then would reply on the 4th consistent with

11  the order your Honor issued in connection with the 10th, the

12  hearing on the 10th, and then we'd have the hearing on the

13  10th.

14       THE COURT:  All right.  So if that's your

15  stipulation, you may submit that, but you'll engage in

16  discovery in the meantime.  Is that the idea?

17       MR. HACKNEY:  It is.

18       THE COURT:  All right.

19       MR. HACKNEY:  Your Honor, can I ask one clarifying

20  fact?

21       THE COURT:  Sure.

22       MR. HACKNEY:  I promise not to hector you to death

23  with questions, but the one --

24       THE COURT:  Thank you.

25       MR. HACKNEY:  The one thing that I do want to

1    understand because I don't want to violate this order, which

2    is Mr. Moore's deposition, because -- can I --

3              THE COURT:  The city has offered it up.  You take --

4    you ask him whatever questions you want to ask him.

5              MR. HACKNEY:  Okay.  That's the best way because

6    then we don't have to do them twice or whatever.  I just

7    wanted to clarify that.  Thank you.

8              MR. ERENS:  Also, I should make clear, your Honor,

9    we would try, if it was okay with your Honor, to have the

10   objection deadline moved to the 27th only for parties who

11   felt they needed to participate in discovery.  If parties did

12   not think they needed to participate in discovery, we'd like

13   to get those objections so that we can start reviewing them.

14   The city will not have a long period of reply.

15             THE COURT:  Can you readily identify those parties

16   or are we going to have a dispute about which parties and

17   which category?

18             MR. ERENS:  We will certainly try, so we'll do our

19   best.

20             THE COURT:  All right.  Well, I'll trust you to try

21   to work it out.  If there are issues, you can get me on the

22   telephone.

23             MR. ERENS:  Okay.  Thank you.

24         (Hearing concluded at 3:40 p.m.)

INDEX

<u>WITNESSES:</u>

    None

<u>EXHIBITS:</u>

    None

        I certify that the foregoing is a correct transcript from the sound recording of the proceedings in the above-entitled matter.

/s/ Lois Garrett           November 19, 2013
_____    _____
Lois Garrett