UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Chapter 9

City of Detroit, Michigan,  Case No. 13-53846

    Debtor.  Hon. Steven W. Rhodes

_____/

EXHIBIT 3 - BRIEF IN SUPPORT OF:

**PETITIONERS' RESPONSE TO RESPONDENTS SNYDER AND DILLON'S MOTION FOR RECONSIDERATION (DKT. #1745) OF OPINION AND ORDER (DKT. # 1536-1) DENYING NAACP'S MOTION FOR RELIEF FROM STAY AND <u>GRANTING PHILLIPS MOTION FOR RELIEF FROM STAY</u>**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Chapter 9

City of Detroit, Michigan,  Case No. 13-53846

Debtor.  Hon. Steven W. Rhodes

_____/

# BRIEF IN OPPOSITION TO RESPONDENTS SNYDER AND DILLON'S MOTION FOR RECONSIDERATION (DKT. #1745) OF OPINION AND ORDER (DKT. # 1536) DENYING NAACP'S MOTION FOR RELIEF FROM STAY AND GRANTING PHILLIPS MOTION FOR RELIEF FROM STAY

## INTRODUCTION

Petitioners (Plaintiffs in *Catherine Phillips, et al. v. Snyder and Dillon*, Case No. 13-CV-11370, filed on March 27, 2013 in the United States District Court for the Eastern District of Michigan (hereinafter, "the *Phillips* case")) filed a Motion for Relief from Stay (Dkt. # 1004), seeking clarification or modification of this Court's Extended Stay Order (Dkt. # 166), offering to voluntarily withdraw several plaintiffs and amend the remaining plaintiffs' complaint by removing Count I. On November 6, 2013, this Court issued an Opinion and Order (Dkt. #1536) ruling that, in light of Petitioners' offer to withdraw those plaintiffs and amend the complaint, the Extended Stay Order did not apply to Petitioners' suit against Governor Snyder and former Treasurer Dillon.

Specifically, this Court stated:

> In contrast to the NAACP case, the *Phillips* case includes residents and officials of not only the City of Detroit but also some of the other municipalities in which

1

emergency managers have been appointed. Significantly, in the motion for relief from the stay that the plaintiffs in the *Phillips* case filed, they have attempted to overcome the concerns that compelled the conclusion that the NAACP case is subject to the July 25, 2013 order. The Phillips motion states:

> 15. Petitioners also seek to amend their Complaint, (Exh. 6.1, the Phillips case Dkt. #1), to withdraw the plaintiffs Phillips, Valenti and AFSCME Council 25 as plaintiffs from the underlying action and to voluntarily dismiss, without prejudice, Count I of the Complaint, which was asserted by the withdrawing plaintiffs.

(Dkt. #1004) Count I of the complaint, which the plaintiffs propose to withdraw, asserted the plaintiffs' claims in relation to the effect of P.A. 436 in Detroit.

Moreover, the conclusion of the motion reiterates that the plaintiffs intend to "amend their Complaint to provide for the voluntary withdrawal of individual plaintiffs Phillips, Valenti, and AFSCME Council 25 and the voluntary dismissal of Count I of their Complaint, without bearing on the Debtor's rights in this bankruptcy proceeding." (Dkt. #1004, at 15)

By these representations, which the Court accepts, it appears that the plaintiffs in the *Phillips* case intend to withdraw from their suit any request for relief as to the Detroit emergency manager. The Court concludes that this proposed amendment would eliminate the potential that the *Phillips* case might result in the removal of the Detroit emergency manager. Therefore, the potential amendment also removes the *Phillips* case from the effect of the July 25, 2013 order. Accordingly, subject to that condition, the Court concludes that the *Phillips* case is not subject to the July 25, 2103 order.

(Dkt. # 1536 at 8-9)

This Court's determination that the *Phillips* case is not subject to the Extended Stay Order was "conditioned on the Phillips plaintiffs' amendment of their complaint to eliminate their request for the removal of the Detroit emergency manager and for any other relief that diminishes the Detroit emergency manager's authority under P.A. 436." *Id.* at 14.

Based upon the above quoted language of the Court's order, and prior to the Respondents Snyder and Dillon filing their *Motion for Reconsideration* (Dkt. #1745), Petitioners concluded that in addition to the voluntary withdrawal of plaintiffs Phillips, Valenti, and AFSCME Council 25, and the voluntary dismissal of Count I of the Complaint, (Exh.6, *Proposed Amended*

*Complaint*, attached hereto) they would also voluntarily dismiss Count IX. After re-drafting their proposed Amended Complaint, but prior to the filing of their motion to re-open the case before Hon. Judge Steeh, Respondents Snyder and Dillon filed the instant *Motion for Reconsideration*, (Dkt. #1745). They seek to have this Court reconsider its *Opinion and Order*, (Dkt. #1536), based not upon the actual language of the *Order*, but rather upon Respondents' apparent belief that Petitioners would not make any other revisions to their Complaint in order to comply with this Court's *Order*. Indeed, rather than communicate with Petitioners' counsel to seek a cooperative approach to fulfilling this Court's *Order* while allowing Federal Judge Steeh to proceed, Respondents filed this *Motion* in an attempt to prevent the fundamental Constitutional issue from being adjudicated at all.

Respondents assert that *any* adjudication of PA 436's constitutionality by a Federal District Court would, by definition, "pose serious questions regarding the validity of Detroit's bankruptcy filing." (Dkt. #1745, Page 10). The Respondents suggest, incredibly, that so long as the City of Detroit is in the midst of this bankruptcy proceeding, the citizens of the State of Michigan have no right to seek judicial relief to ensure that the Michigan legislation – enacted by our State legislature – complies with the United States Constitution. Notably, Debtor City of Detroit does not seek reconsideration of this Court's Order. Regardless, because the Court's Order adequately protects the Debtor while also acknowledging the important constitutional rights that Petitioners must be allowed to vindicate, Respondents' Motion for Reconsideration should be DENIED in its entirety.

### STANDARD OF REVIEW

As Respondents correctly conceded, a motion for reconsideration should only be granted in the rare case where the movant can meet its burden of demonstrating: (1) a palpable defect; (2)

that the palpable defect has misled the court and the parties; and (3) that the palpable defect was outcome-determinative. LR 9024-1(a)(3), *Papas v. Buchwald Capital Advisors, LLC (In re Greektown Holdings, LLC)*, 728 F.3d 567, 574 (6th Cir. Mich. 2013). "A 'palpable defect' is 'a defect that is obvious, clear, unmistakable, manifest, or plain.'" *United States v. Lockett*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004) (quoting *United States v. Cican*, 156 F. Supp. 2d 661, 668 (E.D. Mich. 2001)). Because Respondents cannot demonstrate an outcome-determinative palpable error that misled the Court and the parties, their motion for reconsideration should be denied.

## ARGUMENT

I. **THE PLAIN LANGUAGE OF THIS COURT'S NOVEMBER 6, 2013 OPINION AND ORDER ADDRESSES THE ARGUMENTS RAISED BY RESPONDENTS.**

The thrust of the Respondents' argument for reconsideration is that this Court erred by permitting Petitioners' suit to go forward in the District Court since the suit could potentially result in the removal of Kevin Orr because the Court's only required Petitioners to withdraw Plaintiffs Phillips, Valenti, and AFSCME Council 25 and dismiss Count I.

This Court's *Order and Opinion* however directly addressed Respondents' arguments while preserving the Constitutional rights of the Petitioners. This Court's *Order* does not state that Petitioners' suit is not subject to the Extended Stay Order if Plaintiffs Phillips, Valenti, and AFSCME Council 25 withdraw and the remaining Plaintiffs simply dismiss Count I. Rather, the *Order* states that Petitioners must amend their complaint "to eliminate their request for the removal of the Detroit Emergency Manager and for any other relief that diminishes the Detroit Emergency Manager's authority under P.A. 436." *Id.* at 14. In light of that language, Respondents are attacking a straw man. And as set forth in Section II, *infra*, Petitioners

understood the conditions set forth by this Court to encompass more than the simple dismissal of Count I and have revised their Proposed Amended Complaint (Exh. 6) to comply with this Court's directive. Because this Court's Order—as written—suffers from no palpable error, Respondents' *Motion* should be denied.

## II. PETITIONERS' REVISED PROPOSED AMENDED COMPLAINT COMPLIES WITH THIS COURT'S ORDER THAT PETITIONERS NOT SEEK TO REMOVE DEBTOR'S EMERGENCY MANAGER OR DIMINISH HIS AUTHORITY.

In order to satisfy the conditions set forth by this Court in its Order provisionally finding that the Extended Stay Order does not apply to the *Phillips* case, Petitioners had already decided to make further amendments to their complaint. Specifically, and with respect to this Court's directive that Petitioners' amended complaint must not "request . . . the removal of the Detroit emergency manager," Petitioners' revised Proposed Amended Complaint thus also voluntarily dismisses Count IX. (Exh. 6). Petitioners' revised Amended Complaint also eliminates any claims for injunctive relief, which satisfies this Court's condition that Petitioners not seek relief that would "diminish the Detroit emergency manager's authority." (Dkt. #1536).

With regard to Respondents' claim that "Count XI . . . argues that all emergency managers, including Detroit's Emergency Manager, must be removed," (Dkt. #1745, Page 9), Respondents grossly misrepresent the relief sought by Petitioners in that count. Count XI (renumbered as Count IX in Petitioners' revised Proposed Amended Complaint (Exh. 6)) is, like the other remaining counts, a claim challenging the constitutionality of a provision of PA 436 (in this count challenging, on equal-protection grounds, PA 436's own provisions for the removal of an emergency manager). Like the other remaining counts in Petitioners' revised Proposed

5
13-53846-tjt    Doc 1888-4    Filed 12/02/13    Entered 12/02/13 15:09:25    Page 6 of 10

Amended Complaint, (Exh. 6), Petitioners seek neither the removal of Debtor's emergency manager nor the diminution of his authority.

What Petitioners' revised Proposed Amended Complaint (Exh. 6) does seek is declaratory relief; specifically, Petitioners seek a declaration, from an Article III court, regarding the constitutionality of PA 436. Respondents argue that "any finding that the statute is unconstitutional would pose serious questions regarding the validity of Detroit's bankruptcy filing and its ability to move forward in the restructuring of its debts," and therefore, "Petitioners' lawsuit would unquestionably impact, directly or indirectly, bankruptcy proceedings before this Court." (Dkt. #1745 at 8). Setting aside for a moment the troubling question of whether the State has any legitimate interest in perpetuating an unconstitutional law for Debtor's benefit, Respondents' *in terrorem* argument is necessarily based on forecasting what relief might be granted by the District Court.

If Petitioners are successful, the impact of the declaratory relief on the bankruptcy is unknown because the scope of the relief granted cannot be known until such time as the District Court actually issues its findings. PA 436 could be held unconstitutional in its entirety, in part, or not at all. But until or unless an Article III court rules on the declaratory relief Petitioners seek, any argument regarding the impact on Debtor's bankruptcy is pure speculation, particularly because nothing in Petitioners' revised proposed amended complaint seeks to remove Debtor's emergency manager or put a stop to Debtor's bankruptcy proceedings.

Assuming that Petitioners succeed in obtaining a declaration that PA 436 is facially unconstitutional in its entirety, a new, separate action would be required to seek the removal of Debtor's emergency manager and/or challenge the validity of actions undertaken by him. To the extent that such an action sought to challenge the validity of Debtor's bankruptcy proceedings, it

6

would necessarily be heard by this Court. At that time, this Court would be able to order the necessary in-depth briefing to properly determine the impact of any declaratory judgment on the bankruptcy proceedings, <u>based upon the actual text of the ruling</u>. But until and unless that happens, the State is essentially arguing that the question of the constitutionality of a law with statewide effect should not be heard by any court because it might call into question the lawfulness of a chain of events that found their genesis in an unconstitutional law.

There is no question that the State recognizes this possibility—it argues that "any finding that the statute is unconstitutional would pose serious questions regarding the validity of Detroit's bankruptcy filing and its ability to move forward in the restructuring of its debts," (Dkt. #1745, Page 10), as if the importance of fidelity to our State and Federal Constitutions is somehow subordinate to Respondents' desire, now laid bare, to ensure that Debtor enjoys an untrammeled fast-track ride through bankruptcy proceedings. This kind of result-driven, ends-justify-the-means argument is repugnant to our tripartite system; indeed, it is repugnant to the integrity of our Constitutional democracy. It is true that a finding that PA 436 is unconstitutional might raise some "serious questions" regarding the validity of actions taken by emergency managers appointed pursuant to PA 436 throughout the State of Michigan. But the far more serious question is why Respondents argue that a law (and executive actions taken pursuant to that law) should be immune from judicial review for the very reason that such actions might be found to be in violation of the United States Constitution.

Put another way, it seems that Respondents would prefer that "progress" not be impeded by the inconvenience of upholding the Constitution. And to be sure, a great many things could be accomplished much faster if laws could simply be suspended or ignored whenever it was deemed "necessary." But thankfully, we are part of a system that prizes the rule of law over

speed. And if or when the time comes that PA 436 is declared unconstitutional, it will be up to this Court to deliberate and decide what impact such a finding has on Debtor's bankruptcy proceedings. In the meantime, however, the discrete question of the constitutionality of a statute that affects citizens statewide cannot be held hostage to the bankruptcy proceedings of a single municipality.

## CONCLUSION AND RELIEF REQUESTD

Because this Court's November 6, 2013 *Order* (Dkt. #1536) was correctly decided and for all of the reasons stated above (as well as in Petitioner's *Motion for Relief From Stay and Brief in Support* (Dkt. #1004 and #1004-4). Petitioners respectfully request that this Honorable Court DENY *Respondents' Motion for Reconsideration*, (Dkt.#1745), thereby allowing Petitioners to file their revised Proposed Amended Complaint and a determination can be made on the merits regarding the question of PA 436's constitutionality.

Dated: December 2, 2013  Respectfully submitted,

*/s/Hugh M. Davis*
Hugh M. Davis (P12555)
Cynthia Heenan (P53664)
Constitutional Litigation Associates, PC
450 W. Fort St., Ste. 200
Detroit, MI 48226
(313) 961-2255/Fax: (313) 961-5999
Davis@ConLitPC.com and
Heenan@ConLitPC.com
Attorneys for Petitioners

Julie H. Hurwitz (P34720)
William H. Goodman (P14173)
Attorneys for Petitioners
Goodman & Hurwitz PC on behalf of Detroit &
Michigan National Lawyers Guild
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170/Fax: (313) 567-4827

jhurwitz@goodmanhurwitz.com
bgoodman@goodmanhurwitz.com
Attorneys for Petitioners

John C. Philo (P52721)
Anthony D. Paris (P71525)
SUGAR LAW CENTER
FOR ECONOMIC & SOCIAL JUSTICE
4605 Cass Ave., 2nd Floor
Detroit, Michigan 48201
(313) 993-4505/Fax: (313) 887-8470
jphilo@sugarlaw.org
tparis@sugarlaw.org
Attorneys for Petitioners

Herbert A. Sanders (P43031)
THE SANDERS LAW FIRM PC
615 Griswold St. Ste. 913
Detroit, Michigan 48226
(313) 962-0099/Fax: (313) 962-0044
haslawpc@gmail.com
Attorneys for Petitioners

Richard G. Mack, Jr. (P58657)
Keith D. Flynn (P74192)
MILLER COHEN, P.L.C.
600 W. Lafayette Blvd., 4th Floor
Detroit, Michigan 48226
(313) 964-4454/Fax: (313) 964-4490
richardmack@millercohen.com
Attorneys for Petitioners

Darius Charney
Ghita Schwarz
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th floor
New York, New York 10012
(212) 614-6464/Fax: (212) 614-6499
dcharney@ccrjustice.org
Attorneys for Petitioners

F:\Cases\DPS (P v. S)\In Re Detroit Bankruptcy\Pldgs\Response to motion for recon - final after track changes accepted.docx