UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Chapter 9

CITY OF DETROIT, MICHIGAN,                          Case No. 13-53846

    Debtor.                                         Hon. Steven W. Rhodes

_____/

**LIMITED OBJECTION BY THE DETROIT PUBLIC SAFETY UNIONS
TO THE DEBTOR'S MOTION, PURSUANT TO SECTIONS 105 AND 502
OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER
APPROVING ALTERNATIVE DISPUTE RESOLUTION
PROCEDURES TO PROMOTE THE LIQUIDATION
OF CERTAIN PREPETITION CLAIMS**

    The Detroit Fire Fighters Association (the "DFFA"), the Detroit Police Officers Association (the "DPOA"), the Detroit Police Lieutenants & Sergeants Association (the "DPLSA") and the Detroit Police Command Officers Association (the "DPCOA") (collectively, the "Detroit Public Safety Unions" or "DPSU"), through their counsel, Erman, Teicher, Miller, Zucker & Freedman, P.C., state their Limited Objection to the Motion of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims (the "Motion") [Docket No. 1665] as follows:

    1.    The Detroit Public Safety Unions, whose collective members provide essential police and fire protection to the City, its residents, businesses and visitors

1

on a daily basis under extremely difficult conditions, object to the Motion to the extent that: (a) the ADR Procedures fail to adequately address and protect DPSU members' rights to a defense and indemnification from the City in connection with the resolution of Designated Claims and (b) the ADR Procedures appear to propose to include certain pending DPSU matters that do not involve (1) personal injury tort or wrongful death, (2) property damage or (3) claims relating to the operation of motor vehicles as Initial Designated Claims, when such claims are either already being addressed in the ongoing, Court-ordered confidential mediation process or are otherwise inappropriate for submission to the ADR Procedures. This Limited Objection is being filed by stipulation between the City and the DPSU establishing the deadline for its filing to Monday, December 2, 2013.

**PROTECTION OF DEFENSE AND INDEMNIFICATION RIGHTS**

2.  The City filed the Motion on November 12, 2013 after being directed to do so by this Court's October 8, 2013 Order [Docket No. 1114]. That Order was the result of a hearing on the Motion of Creditor Deborah Ryan for Relief from Stay [Docket No. 819] in which the DPSU participated.

3.  Members of each of the four Detroit Public Safety Unions have the right, pursuant to City Ordinance Section 13-11-b, *et seq*, certain applicable Collective Bargaining Agreements and certain CETs, to a defense and indemnification from the City against any claims for damages arising out of the

2

good faith performance of their duties as City employees. This right belongs to any member against whom such a claim is brought, whether or not he or she is actively employed by the City when the claim is made.

4. For virtually all (if not all) Public Safety Union members, the defense and indemnification rights provided by their City employment is their sole source of a defense and indemnification for claims arising out of that employment and is the only thing that stands between them and personal financial catastrophe.

5. Currently, all such claims are stayed pursuant to Sections 105(a), 362(a), 922(a) and this Court's prior orders (a) confirming the applicability of the stay to these proceedings [Docket No. 167], (b) extending it to active public safety employees [Docket No. 166], and, (c) pursuant to the previously filed motion of the DPSU, extending the stay to former and retired public safety employees [Docket No. 1744].

6. The DPSU have repeatedly supported the City in opposing stay relief sought by tort claimants and have also, since at least mid-September, requested that they be part of any discussion of the liquidation and/or resolution of such claims, in order to insure that their defense and indemnification rights are adequately protected by any such process.

7. While the Motion is silent with regard to such indemnification rights, the Proposed ADR Procedures do provide that "all settlements [pursuant to the ADR Procedures] shall include a release of all claims relating to the underlying occurrence, including the Designated Claim and the Designated Claimant's claim against any other party with respect to whom the stay applies pursuant to sections 362 and 922 of the Bankruptcy Code or orders of the Bankruptcy Court" [Docket No. 1665, Exhibit 6, p. 66 of 92]. Hence, as currently drafted, the ADR Procedures protect any named Detroit Public Safety Union member/defendant (hereinafter, a "DPSU Defendant") as long as the Designated Claim is settled through the ADR Procedures, the ADR Procedures. However, the Motion does not address how DPSU Defendants' defense and indemnification rights are to be addressed (if at all) within the ADR Procedures if the claim is not settled and must be liquidated through arbitration or a trial on the merits, whether or not there is a dispute as any DPSU Defendant's right to indemnification.

8. As presently drafted, if a claim against one or more DPSU Defendants and/or the City[1] were liquidated, for example, by a jury trial or an arbitration proceeding, the Designated Claimant would have a claim for the liquidated

---

[1] There is at least one known Initially Designated Claim listed on Exhibit H that was the subject of a Motion for Relief from Stay that includes allegations against Detroit police officers acting as such, in which the City is not presently named as a Defendant. See *Thomas Moore v. Fulgenzi and Headapohl,* E.D. Mich. Case No. 13-10010.

4

amount, but there would be no mechanism to protect the DPSU Defendant's indemnification rights, with the right to assert such defense and indemnification rights stayed by Section 362(a) and 922(a), in the absence of their inclusion in the ADR Procedures in a manner that fully and finally resolves such claims without exposing the DPSU Defendant to personal liability.

9. Under City Ordinance Section 13-11-3, historical practice and applicable CETs and collective bargaining agreements, the City must ". . . continue to defend and indemnify employees in accordance with Section 13-11-3 of the 1984 Municipal Code and all practices and procedures related thereto, in effect July 1, 1977, *except that such defense and indemnification is <u>mandatory</u> upon a finding that the claim, demand or suit against the employee arises out of or involves the performance in good faith of the official duties of the employee*." See Exhibit A, portion of DPOA Master Collective Bargaining Agreement.

10. The DPSU respectfully suggest that a mechanism be established that will allow the issue of defense and indemnification rights to be addressed as part of the ADR Procedures so that no DPSU Defendant against whom a claim arising out of the good faith performance of his or her official duties is asserted faces potential financial catastrophe as a result of the manner in which the claim is liquidated. The DPSU further objects to any procedure in which the City has the sole discretion to determine which claims should be liquidated outside the ADR

5

Procedures in the absence of a mechanism that adequately protects the defense and indemnification rights of any DPSU Defendant who is the subject of such claim. The DPSU has suggested the development of such a process and is prepared to work with the City on developing such a process within the ADR Procedures, but to date, while the City has not indicated any opposition to such a process, it has shown little interest in pursuing one in spite of the DPSU's efforts to engage it on that issue.

11.     In addition, in order to identify potential Designated Claims for which a DPSU Defendant's right to indemnification is disputed, the DPSU previously requested that the City provide a list of all known tort claims to which a DPSU Defendant is a party and has further requested that the City identify any claims on the list where it disputes the DPSU Defendant's right to indemnification. To date, the DPSU has not received such a response to its request.[2] Obtaining this information, which could be as simple as being provided with a copy of the most recent complaint filed for each of the Initially Designated Claims and identifying those for which the right to defense and/or indemnification may be disputed, will be essential to the development of a process within the ADR Procedures that

---

[2] This list of all claims pending against DPSU Defendants and was previously sought from the City in connection with the DPSU's efforts to serve their Motion to Extend the Stay. At that time, the City, assisted by its corporation counsel and Ernst and Young, was only able to provide a list, culled from its list of creditors (Schedule H, List of Creditors), of all claims which the City had classified as police or fire matters.

6

adequately addresses all such issues, particularly given the fact that the City does not intend to address any such claims until a valid proof of claim is filed and the DPSU have no way of identifying such claims unless the City provides the requested information.

12. In order to protect the rights of individual DPSU Defendants and for the sake of consistency in the ADR Procedures, the DPSU urges that it is in the mutual best interests of the City, the DPSU and their affected members to develop such a process that includes the provision of the requested information to the DPSU and which resolves by release the Designated Claims against any DPSU Defendants who has a right to indemnification, whether or not the Designated Claim is resolved by settlement or by liquidation through arbitration, court hearing or some other process.

### CLARIFICATION OF DPSU CLAIMS NOT SUBJECT TO ADR PROCEDURES AND/OR INITIAL INJUNCTION

13. To the extent the ADR Procedures appear to propose to include certain pending DPSU matters that do not involve (1) personal injury tort or wrongful death, (2) property damage or (3) claims relating to the operation of motor vehicles as Initial Designated Claims because they appear on Schedule H, the List of Creditors, the DPSU objects to such claims being treated as Initial Designated Claims. These claims are either already the subject of the alternative

dispute resolution process established by this Court's prior orders for mediation and, may otherwise involve declaratory relief sought with respect to complex constitutional issues, and/or involve specialized questions of public sector labor law not amenable to treatment under the ADR Procedures set forth in the Motion. As such, neither should these claims be subject to the Initial Injunction.

14. Based upon DPSU counsel's communications with the City in regard to these matters, the ongoing confidential mediation process, and agreement reached with the City in connection with the Claims Bar Order [Docket No. 1782], the DPSU believes that the City may not intend to include those matters as Initial Designated Claims or to make them subject to the Initial Injunction. Nevertheless, out of an abundance of caution, the DPSU seeks clarification that the DPSU claims identified on Schedule H are neither Initial Designated Claims nor subject to the Initial Injunction.

15. In that regard, the DPSU would respectfully request that any order approving the ADR Procedures expressly indicate that any claim by any of the Detroit Public Safety Unions that is listed on Schedule H shall not be treated as a Designated Claim or as an Initially Designated Claim, shall not be subject to the ADR Procedures and shall not be subject to any injunction associated therewith.

WHEREFORE, the DPSU respectfully requests that any order establishing ADR Procedures (a) provide a mechanism for the prompt resolution of any disputed indemnification rights affected by the ADR Procedures; (b) insure that the ADR Procedures protect the indemnification rights of <u>all</u> DPSU Defendants by providing, upon a determination that any affected DPSU Defendant has a right to indemnification by the City, for the release of any Designated Claimant's claim against any other party with respect to whom the stay applies pursuant to sections 362 and 922 of the Bankruptcy Code or orders of the Bankruptcy Court , whether or not that Designated Claim is resolved by settlement, arbitration or further court proceedings; and (c) clarify that the DPSU claims listed on Schedule H are not otherwise subject to the ADR Procedures or any injunction associated therewith.

Respectfully submitted,

ERMAN, TEICHER, MILLER,
ZUCKER & FREEDMAN, P.C.

By: */s/ Barbara A. Patek*
Barbara A. Patek (P34666)
Earle I. Erman (P24296)
Craig E. Zucker (P39907)
Counsel for the Detroit Public Safety Unions
400 Galleria Officentre, Suite 444
Southfield, MI 48034
Telephone: (248) 827-4100
Facsimile: (248) 827-4106
E-mail: bpatek@ermanteicher.com

Dated: December 2, 2013