**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 9 |
|  | ) |  |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
|  | ) |  |
| Debtor. | ) | Hon. Steven W. Rhodes |
|  | ) |  |

## MOTION FOR LEAVE TO APPEAL ORDER ON ELIGIBILTY OF CITY OF DETROIT, MICHIGAN

The Michigan Council 25 of the American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees (the AFSCME retiree chapter for City of Detroit retirees) (collectively, "**AFSCME**"),[1] by and through its undersigned attorneys, submits this motion (the "**Motion**") pursuant to 28 U.S.C. § 158(a) and Fed. R. Bankr. 8003 for leave to appeal the bankruptcy court's Order, announced orally from the bench on December 3, 2013, finding the City of Detroit, Michigan (the "**City**" or "**Debtor**") eligible for relief under chapter 9 of the Bankruptcy Code (the "**Eligibility Order**").[2]

### INTRODUCTION AND SUMMARY OF ARGUMENT

**I.** For the reasons set out in **Part I** of this Motion, it is AFSCME's contention that the bankruptcy court's Eligibility Order is appealable to this Court *as of right* on either of two alternative legal grounds: *First*, the Eligibility Order is a "final" order under the test for

---

[1] AFSCME serves as the representative of the interests of between at least forty and fifty percent (40-50%) of the about 11,943 City of Detroit non-uniformed retired employees (the "**Retired AFSCME Employees**"), and about 2,523 active City employees (the "**Active AFSCME Employees**", or about seventy percent (70%) of the active non-uniformed union-represented employees, and together with the Retired AFSCME Employees, collectively, the "**AFSCME Detroit Employees**").

[2] AFSCME reserves the right to amend this Motion upon the bankruptcy court's issuance of its written order and accompanying written opinion finding the City eligible for relief under chapter 9.

determining the "finality" of bankruptcy court orders most recently articulated by the Sixth Circuit in *Huntington Nat'l Bank v. Richardson (In re Cyberco Holdings, Inc.)*, 734 F. 3d 432 (6th Cir. 2013). *Second*, even assuming <u>arguendo</u> that the Eligibility Order is non-final, it is nonetheless appealable as of right under the "collateral order doctrine" applied by the Sixth Circuit in the bankruptcy context in *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482 (6th Cir.1996).

However, as further set out in **Part I** of this Motion, because the appealability as of right of an eligibility order issued in a chapter 9 bankruptcy proceeding is an issue of first impression within the Sixth Circuit, and because there is at least some case law both within and outside the Sixth Circuit that the City of Detroit could point to that arguably cuts against a finding of appealability as of right, it cannot be said with mathematical certainty that the Eligibility Order here is indeed appealable as of right as AFSCME contends. That being so, if AFSCME were simply to file a notice of appeal from that Eligibility Order and proceed with its appeal on the legal premise that its appeal is as of right, the proceedings on that appeal would, from beginning to end, be shrouded in a cloud of jurisdictional uncertainty, with the ever-present prospect hovering over those proceedings that any decision issued by this Court on appeal would later be set aside by the Sixth Circuit for lack of jurisdiction, sending the parties back to square one.

The Ninth Circuit has held that when confronted with such jurisdictional uncertainty as to the appealability as of right of a bankruptcy court order, the proper course for a litigant to follow is to file *both* a notice of appeal *and* a motion for leave to appeal arguing that the litigant has the right to appeal but seeking leave to appeal nonetheless in light of the existing jurisdictional uncertainty. *See Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 339 F.3d 782, 787 (9th Cir. 2003). Taking its cue from the Ninth Circuit, that is precisely what AFSCME is doing here.

AFSCME submits that this Court would be more than justified in granting leave to appeal here on the following grounds: (1) there is, at a bare minimum, a very strong argument that the Eligibility Order is appealable as of right either as a "final" order or under the collateral order doctrine; and (2) granting leave to appeal would serve the twin purposes of (a) avoiding senseless litigation over this non-merits, side issue that would unduly delay these appellate proceedings, and (b) removing the cloud of jurisdictional uncertainty that would otherwise hover over these appellate proceedings.

**II.** For the reasons set out in **Part II** of this Motion, AFSCME also submits, in the alternative, that leave to appeal is warranted here wholly without regard to the strength of AFSCME's argument that the Eligibility Order is appealable as of right. That is so, in a nutshell, because the bankruptcy court's finding of eligibility in this case rests on a number of highly debatable legal conclusions on novel and unsettled issues of law, the proper legal resolution of which are matters of the utmost public importance—both to the parties to this landmark chapter 9 bankruptcy proceeding involving one of this country's largest and most economically significant cities, and to the future administration of chapter 9 generally.

**I.** **The Eligibility Order Is Immediately Appealable As Of Right, But This Court Should Grant Leave To Appeal Nonetheless In Light Of The Jurisdictional Uncertainty On That Issue**

**A.** **The Eligibility Order Is A "Final" Appealable Order**

Under 28 U.S.C. § 158(a)(1), the federal district courts have jurisdiction to hear appeals from all "final" bankruptcy court judgments, orders and decrees. In its most recent decision on this subject, the Sixth Circuit reaffirmed the holding of its prior cases that a bankruptcy court order will be considered a "final" appealable order under 28 U.S.C. § 158(a)(1) when that order constitutes the "final[ ] dispos[ition]" of a "discrete proceeding[ ]" or "discrete dispute" within "the larger bankruptcy case itself." *Cyberco Holdings*, *supra*, 734 F.3d at 437. Explaining the

rationale behind this relatively "pragmatic" and "relaxed" approach to finality in the bankruptcy context, the Sixth Circuit stated:

> [F]inality concepts that easily apply to lawsuits typically brought in the district courts do not really translate into the more far reaching proceedings that characterize bankruptcy cases. The latter have been described as sprawling events that are made up of smaller, discrete proceedings. . . . Those discrete proceedings can have a beginning, middle, and end much detached from the larger bankruptcy case itself, and result in the final determination of rights and responsibilities of parties beyond the debtor and certain other creditors. We have recognized, therefore, that where an order in a bankruptcy case finally dispose[s] of discrete disputes within the larger case, it may be appealed immediately.

*Id.* (internal quotations and citations omitted).

The Eligibility Order here, we submit, easily satisfies the Sixth Circuit's "final[ ] dispos[ition]"-of-a-"discrete proceeding[ ]"-or-"discrete dispute" test for finality of a bankruptcy court order. That Eligibility Order was issued by the bankruptcy court in this case on the authority of, and in accordance with the procedures dictated by, 11 U.S.C. § 921, a core provision of chapter 9 of title 11 of the United States Code (the "**Bankruptcy Code**") entitled "**Petition and proceedings related to petition.**" Under that provision, a bankruptcy court must conduct a "hearing" on "any objection" to the filing of a chapter 9 bankruptcy petition—which the bankruptcy court in this case did, *see infra* pp. 13-14—and must dismiss the petition if it concludes that "the debtor did not file the petition in good faith or if the petition does not meet the [various eligibility] requirements of this title." *See* 11 U.S.C. § 921(c).[3] But where, *as here*, the bankruptcy court finds that dismissal of the petition is unwarranted, the court must then issue

---

[3] Those eligibility requirements include, *inter alia*, that the filer of the chapter 9 petition "is a municipality"; "is specifically authorized in its capacity as a municipality or by name to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter"; "is insolvent"; and "desires to effect a plan to adjust [its] debts." *See* 11 U.S.C. § 109(c).

an affirmative "order for relief" in favor of the municipality that filed the petition. *See id.* §
921(d).

On its face, such an affirmative "order for relief" by the bankruptcy court represents *a
final determination* by that court, upon the culmination of *the discrete proceedings* provided for
in 11 U.S.C. § 921, that the municipality is an eligible and proper chapter 9 debtor entitled to
*some* type of affirmative "relief" from the bankruptcy court in the form of *some* type of debt
adjustment. On the face of things, then, an "order for relief" such as the one granted in favor of
the City of Detroit here easily satisfies the Sixth Circuit's "final[ ] dispos[ition]"-of-a-"discrete
proceeding[ ]"-or-"discrete dispute" test for finality of a bankruptcy court order, and is
appealable *as of right* on that ground.

Indeed, the following language in subdivision (e) of 11 U.S.C. § 921 stands as a strong, if
not dispositive, indicator of congressional intent that an "order for relief" issued by a bankruptcy
court upon the culmination of § 921 proceedings be treated as a final order giving rise to an
immediate right of appeal on the part of objectors to the municipality's chapter 9 petition:

> The court may not, on account of *an appeal from an order for relief*, delay any
> proceeding under this chapter in the case in which the appeal is being taken;
> nor shall any court order a stay of such proceeding pending such appeal. The
> reversal on appeal of a finding of jurisdiction does not affect the validity of any
> debt incurred that is authorized by the court under Section 364(c) or 364(d) of
> this title. [(Emphasis added).]

Needless to say, the foregoing language clearly reflects an understanding on Congress'
part that, in the normal course, there *will be* "an appeal from an order for relief" in those cases
where a municipality's eligibility for chapter 9 relief has been challenged and upheld by the
bankruptcy court, *not* as a matter of judicial grace, but as a matter of *statutory right*.

To be sure, a bankruptcy court "order for relief" finally determining upon the culmination
of the discrete proceedings provided for by 11 U.S.C. § 921 that a municipality is an eligible and

proper chapter 9 debtor entitled to *some* type of debt relief will, in the natural order of chapter 9 events, be followed in due course by separate proceedings under 11 U.S.C. §§ 941-43 in which the specific parameters of that debt relief will be finally determined by the bankruptcy court through the plan "confirmation" process. But on the reasoning of the Sixth Circuit's recent decision in *Cyberco Holdings*, that reality concerning anticipated, future proceedings "in the larger bankruptcy case itself" cannot somehow be taken to transform a bankruptcy court "order for relief" from a final, appealable order into a non-final, non-appealable order.

To conclude otherwise, we would add, would stand chapter 9 of the Bankruptcy Code on its head and defeat the clear congressional intent reflected in 11 U.S.C. § 921(e) to allow parties objecting to the legality and propriety of a municipality's chapter 9 petition to take an immediate appeal as of right from the bankruptcy court's rejection of their objections. Without in any way minimizing the importance of the issue to be resolved in the latter stages of a chapter 9 case respecting the specific parameters of the debt relief to which a municipality may be legally entitled, it cannot be gainsaid that the antecedent issue of whether a municipality is legally entitled *to any type of debt relief at all under chapter 9* is a separate issue of paramount importance. For as numerous courts and commentators have observed, given the serious constitutional and policy issues posed by any effort on the part of a municipality to repudiate its debts, through the bankruptcy process or otherwise, Congress made the deliberate judgment "to limit accessibility to the bankruptcy court by municipalities" through the imposition of a number of strict eligibility requirements that are difficult to meet. *See In re Cottonwood Water & Sanitary Dist.*, 138 B.R. 973, 979 (Bankr. D. Colo. 1992); *see also e.g. In re Sullivan County Regional Refuse Disposal Dist.*, 165 B.R. 60, 82 (Bankr. D.N.H. 1994) ("The bankruptcy court's jurisdiction should not be exercised lightly in chapter 9 cases. . . . [A]ccess to Chapter 9 relief

has been designed to be an intentionally difficult task."); NATIONAL BANKRUPTCY REVIEW COMMISSION, *Bankruptcy: The Next Twenty Years* Oct. 20, 1997, at p. 995, *available at* http://govinfo.library.unt.edu/nbrc/report/22chapte.pdf (last accessed December 3, 2013) ("Strong policy considerations against municipal filings led to creation of the hurdles that a municipality must comply with prior to being eligible for Chapter 9 relief.").

Against this background, it is no small wonder that Congress, in enacting 11 U.S.C. § 921, proceeded on the understanding that, in the normal course, there *will be* "an appeal from an order for relief" in those cases where the critical threshold issue of a municipality's eligibility for chapter 9 relief has been duly raised by objectors and decided in favor of the municipality.

**B.     The Eligibility Order Also Is Appealable As A Collateral Order**

In *In re Dow Corning, supra*, 86 F.3d at 488, the Sixth Circuit held that a bankruptcy court order may also be appealable as of right "under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949)." AFSCME submits that the Eligibility Order here is appealable as of right on this separate ground as well.

In the *Dow Corning* case, the Sixth Circuit explained that "a collateral order is reviewable under *Cohen* when it: (1) conclusively determines the disputed question; (2) resolves an important question completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from final judgment." 86 F.3d at 488. And, in an addendum to this statement that goes to the heart of the matter here, the Sixth Circuit added that "[t]hese three factors are equally fluid *and are applied flexibly* in determining whether an order involving a bankruptcy proceeding is reviewable." *Id.* (emphasis added).

A flexible application of the *Cohen* factors, as mandated by the Sixth Circuit in the *Dow Corning* case, leads to the conclusion that the Eligibility Order here is immediately appealable as of right under the collateral order doctrine. *First*, by its terms, the Eligibility Order

"conclusively determines the disputed question" of the City's eligibility for relief under chapter 9.  *Second*, for the reasons already touched upon above, the Eligibility Order resolves an issue of paramount importance "completely separate from the [ultimate] merits," which in a chapter 9 case is the "merits" of a plan of adjustment proposed by the municipal debtor.  *Third,* the Eligibility Order could be "effectively unreviewable" if AFSCME's appellate challenge to that Order must await and be folded into a future appeal from a subsequent bankruptcy court order confirming the City's proposed plan of adjustment because the "equitable mootness doctrine" might arguably bar such a future appeal if the City's confirmed plan of adjustment is substantially consummated during the pendency of that future appeal.  *See In re United Producers, Inc.*, 526 F.3d 942 (6th Cir.  2008) (applying that doctrine in a chapter 11 case).[4]

### C.    Leave To Appeal Is Appropriate Nonetheless

Having said this much, AFSCME is compelled to acknowledge that it cannot be said with mathematical certainty that an "order for relief" issued by a bankruptcy court at the conclusion of a contested § 921 eligibility proceeding is appealable as of right as AFSCME contends.  That is true, first and foremost, because the Sixth Circuit has never been called upon to address this specific appealability-as-of-right issue, with the reality thus being that this issue is one of first impression within this Circuit.  But it is also true because, as set out in the

---

[4]   AFSCME believes, and expressly reserves the right to argue should the issue arise, that the "equitable mootness doctrine" has no proper application in this chapter 9 case under any scenario.  But given that the *Cohen* factors are to be applied flexibly in the bankruptcy context, it is perfectly appropriate for this Court, in applying the third *Cohen* factor, to take account of the possibility, however remote, that a court might find the "equitable mootness doctrine" applicable in this chapter 9 case under some scenario that is presently unknowable.

accompanying footnote, there is some case law both within and outside the Sixth Circuit that the City could point to that arguably cuts against a finding of appealability as of right.[5]

The upshot of the foregoing is this: If AFSCME were simply to file a notice of appeal from the bankruptcy court's Eligibility Order and proceed with its appeal on the legal premise that its appeal is as of right, the proceedings on that appeal would, from beginning to end, be shrouded in a cloud of jurisdictional uncertainty, with the ever-present prospect hovering over those proceedings that any decision issued by this Court on appeal would later be set aside by the Sixth Circuit for lack of jurisdiction, sending the parties back to square one. Although AFSCME is convinced of the correctness of its position on the appealability-as-of-right issue, AFSCME is asking this Court to grant leave to appeal on the following grounds: (1) there is, at a bare minimum, a very strong argument that the Eligibility Order is appealable as of right either as a "final" order or under the collateral order doctrine; and (2) granting leave to appeal would serve the twin purposes of (a) avoiding senseless litigation over this non-merits, side issue that would

---

[5]   Insofar as the case law within the Sixth Circuit is concerned, a mere one week prior to the issuance of the decision in *In re Cyberco Holdings* relied on by AFSCME herein, a different Sixth Circuit panel issued a decision that arguably stands in some tension with *In re Cyberco Holdings* to the extent it opines that the concept of finality in bankruptcy cases "largely mirror[s]" the concept of finality in non-bankruptcy cases. *See In re Lindsey*, 726 F.3d 857, 859 (6th Cir. 2013).

Insofar as the case law outside the Sixth Circuit is concerned, both the Ninth and Fifth Circuits have concluded that—in certain factual settings at least—bankruptcy court orders overruling objections to a municipality's eligibility for relief under chapter 9 are not immediately appealable as of right. *See City of Desert Hot Springs*, *supra*, 339 F.3d 782 (9th Circ. 2003); *Path Science Labs., Inc. v. Greene Cnty. Hosp.*, 835 F.2d 589 (5th Cir. 1988). For what it may be worth, AFSCME's view is that both of these out-of-Circuit decisions are distinguishable on their facts and wrong as a matter of law even on their own terms. But the salient point for present purposes is that both decisions contribute to the state of jurisdictional uncertainty in this area.

unduly delay these appellate proceedings, and (b) removing the cloud of jurisdictional uncertainty that would otherwise hover over these appellate proceedings.

The statutory provision authorizing appeals from bankruptcy court orders "with leave of the [district] court," 28 U.S.C. § 158(a)(3), does not confine or delimit the grounds on which leave may be granted, thus conferring broad discretion on the district courts to grant leave on whatever grounds the court may deem appropriate under the particular circumstances presented. AFSCME submits that a grant of leave in the present circumstances on the grounds set forth above falls well within that broad discretion conferred on this Court by 28 U.S.C. § 158(a)(3).

## II. Leave To Appeal Is Warranted Here Without Regard To The Strength Of AFSCME's Argument That The Eligibility Order Is Appealable As Of Right.

The Bankruptcy Rules provide:

> A motion for leave to appeal under 28 U.S.C. § 158(a) shall contain: (1) a statement of facts necessary to an understanding of the questions to be presented by the appeal; (2) a statement of those questions and the relief sought; (3) a statement of the reasons why an appeal should be granted; and (4) a copy of the judgment, order, or decree complained of and any opinion or memorandum relating thereto.

Fed. R. Bankr. P. 8003(a). AFSCME sets out the first three of these required elements of a motion for leave below; and, as previously noted, reserves the right to amend this Motion to include copies of the bankruptcy court's written Order and accompanying Opinion upon their issuance.

## A. Statement of Facts Necessary To An Understanding Of The Questions Presented By This Appeal

### 1. Events Leading To The City's Bankruptcy Filing.

Michigan Governor Richard Snyder (the "**Governor**") appointed Kevyn Orr as the City's Emergency Manager ("**EM**") under Public Act 436 of 2012 of the State of Michigan, also known as the Local Financial Stability and Choice Act, Michigan Compiled Laws §§ 141.1541-

13-53846-tjt    Doc 1909    Filed 12/03/13    Entered 12/03/13 13:25:25    Page 10 of 26

141.1575 ("**PA 436**"), effective as of March 28, 2013. As EM, Mr. Orr had the purported authority, even assuming for the sake of argument that PA 436 did not unconstitutionality strip Detroit residents of their right to home rule under the Michigan Constitution, to seek authorization for the City to commence a chapter 9 proceeding.

On June 14, 2013, the EM issued a "Proposal for Creditors" (the "**Restructuring Proposal**") expressly stating that "there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons." The same day, the EM publicly threatened, in an interview with the Detroit Free Press Editorial Board, that vested pension benefits would not be protected in a chapter 9 proceeding authorized by the Governor pursuant to PA 436. Yet incredibly, four days earlier, on July 10, 2013, the EM expressly told retirees that vested pension benefits were "sacrosanct" and would not be touched.

Following a mere four or five weeks, with presentations and no, or at best few, true meetings with creditors regarding the Restructuring Proposal, which limited encounters lacked the hallmark good faith negotiations required prior to commencing a chapter 9 proceeding, on July 16, 2013, the EM sought authorization from the Governor to commence the City's chapter 9 case, and on July 18, 2013, the Governor issued a letter authorizing the City's chapter 9 filing (the "**Governor's Authorization Letter**").

The chapter 9 filing occurred on the same day, July 18, 2013, minutes prior to a scheduled hearing before the Ingham County Circuit Court for the State of Michigan to consider a temporary restraining order request filed by a City employee and a City retiree (the "**Webster Litigation**") against the Governor and other State officials enjoining the authorization of any chapter 9 case within which vested pension benefits might be reduced or impaired. The plaintiffs in the Webster Litigation also sought a declaratory judgment that PA 436 violated Article IX,

Section 24 of the Michigan Constitution (the "**Pensions Clause**") to the extent that it purported to authorize chapter 9 cases within which vested pension benefits might be sought to be compromised.

Also on July 18, 2013, following the City's chapter 9 filing, the state court entered a temporary restraining order (the "**TRO**") enjoining the Governor, the State Treasurer and the other defendants in the Webster Litigation from authorizing a chapter 9 filing and taking any further action "with respect to any filing which has already occurred," including the authorizing of an "unconditional" chapter 9 filing (*i.e.* one in which the EM would represent himself as having authority to modify and/or terminate pension obligations without limit in derogation of the Michigan Constitution's Pensions Clause).

The Governor (and other State of Michigan officials) and the EM were well aware, both prior to and subsequent to the issuance of the Governor's Authorization Letter, of the City's intentions to modify and/or terminate vested pension obligations in chapter 9 without limit in derogation of the Michigan Constitution's Pensions Clause.

On July 19, 2013, the state court held a further hearing on the Webster Litigation and entered an Order of Declaratory Judgment (the "**Declaratory Judgment**", a copy of which is attached hereto as **Exhibit A**). The Declaratory Judgment (a) found PA 436 unconstitutional and of no force and effect to the extent it permits the Governor to authorize the EM to proceed under chapter 9 in any manner that threatens to diminish or impair vested pension benefits, and (b) ruled that the Governor must direct the EM "to immediately withdraw the chapter 9 petition … and … not authorize any further chapter 9 filing which threatens to diminish or impair accrued pension benefits." *See* Declaratory Judgment at 3.

To the extent there was any authorization for the chapter 9 filing, the state court clearly ordered that the Governor revoke it to the extent it was intended to lead to the diminishment or impairment of accrued vested pension benefits. However, subsequent to the issuance of the Declaratory Judgment, on July 25, 2013, the bankruptcy court granted the City's motion to extend the automatic stay, which, *inter alia*, stayed all appeals of the Declaratory Judgment (and other similar state court proceedings). *See* Docket No. 166.

**2.      Eligibility Briefing, Court Scheduling Orders, Bifurcation Of Contested Legal Issues And Factual Issues For Trial, And The Bankruptcy Court's Determination of the City's Eligibility.**

Immediately following the City's chapter 9 filing, the City filed its *Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code* [Docket No. 10] and *Memorandum in Support of Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code* [Docket No. 14].

On August 6, 2013, the bankruptcy court entered a scheduling order [Docket No. 298] setting a deadline of August 19, 2013 (the "**Objection Deadline**") for any party to file objections to the City's eligibility and setting an elaborate discovery and trial schedule on eligibility objections. Over 100 persons and entities, including AFSCME, objected to the City's eligibility for relief under chapter 9 and to the entry of an order for relief. AFSCME's eligibility objection (subsequently amended at Docket No. 1156) raised "pure" (*i.e.*, non-fact-intensive) legal issues of monumental importance, both to this particular chapter 9 case and chapter 9 jurisprudence generally. First, AFSCME argued that chapter 9 violates the federal constitution and thus is invalid on its face and as applied (the "**Federal Constitutional Issue**"). Second, AFSCME argued that, even assuming the constitutional validity of chapter 9, the City is not authorized to be a chapter 9 debtor under state law as required by 11 U.S.C. § 109(c)(2) for at least two independent legal reasons: (1) Public Act 436, the state statute purporting to authorize the City's

petition, violates Article IX, Section 24 of the Michigan Constitution insofar as it permits the City to use chapter 9 to impair or diminish vested pension benefits (the **"Pensions Clause Issue"**), and (2) PA 436 violates the strong Home Rule provisions of the Michigan Constitution (the **"Home Rule Issue"**).[6] AFSCME further argued that the question of whether its members' constitutionally protected vested pension benefits could be reduced in a chapter 9 bankruptcy proceeding should be resolved conclusively at the eligibility stage to prevent imminent, unconstitutional injury.

AFSCME also asserted the following additional objections which turn on certain facts that may be in dispute, though resolution of these objections depended in large part on the applicable legal standards (as yet undefined in the Sixth Circuit and hotly contested): (i) the City is not eligible to file for chapter 9 protection under 11 U.S.C. § 109(c)(5) of the Bankruptcy Code because (a) it failed to participate in any good faith negotiations with creditors such as AFSCME prior to the filing for bankruptcy (the "**Good Faith Negotiations Issue**"), and (b) such negotiations were not impracticable, as required for eligibility under chapter 9 of the Bankruptcy Code (the "**Impracticability Issue**"); (ii) the City's Petition should be dismissed under 11 U.S.C. § 921(c) because it was filed in bad faith (the "**General Good Faith Issue**"); and (iii) the City has failed to meet its burden of proving its insolvency as required under 11 U.S.C. § 109(c)(3) (the "**Insolvency Issue**").

On August 26, 2013, the bankruptcy court entered an *Order Regarding Eligibility Objections, Notices of Hearings and Certifications Pursuant to 28 U.S.C. § 2403(a) & (b)* [Docket No. 642], which order was further amended on September 12, 2013 [Docket No. 821] (the "**Eligibility Scheduling Order**"). Pursuant to the Eligibility Scheduling Order, the

---

[6] To the extent any background facts are relevant to these pure legal issues, they are undisputed.

bankruptcy court scheduled (i) oral argument on eligibility objections raising purely legal issues, including the Federal Constitutional Issue, the Pensions Clause Issue, and the Home Rule Issue; and (ii) discovery and a trial on the additional eligibility objections raising both legal and factual issues, including the Good Faith Negotiations Issue, the Impracticability Issue, the General Good Faith Issue, and the Insolvency Issue. The bankruptcy court further certified to the United States Attorney General and the Michigan Attorney General notices of constitutional challenge, and both the State of Michigan and the United States Attorney General subsequently filed several pleadings regarding the legal eligibility issues. [See Docket Nos. 756, 1085, 1149, 1219, 1560, 1698]

The bankruptcy court held oral argument on the contested legal issues over three days on October 15-16 and 21, 2013. AFSCME, other objectors, and the City submitted pre-trial briefs on October 17, 2013 [Docket Nos. 1227, 1229, 1230, 1231, 1235, 1240, 1241, 1244], and the bankruptcy court conducted an extensive, 9-day trial on the eligibility objections raising both legal and factual issues on October 23-25 & 28-29 and November 4-5 & 7-8, 2013. Pursuant to order of the bankruptcy court, parties were given the opportunity to submit supplemental briefing on certain of the purely legal issues, and AFSCME submitted a *Supplemental Brief on Eligibility* [Docket No. 1467] on October 30, 2013 and an additional brief regarding the Good Faith Negotiations Issue on November 13, 2013 [Docket No. 1695]. **The bankruptcy court requested this additional briefing in light of the unique and unsettled disputed legal issues being litigated,** including with respect to the meaning of the Pensions Clause, the arguments regarding the federal and state constitutional issues, and the meaning of certain of the eligibility requirements under § 109(c).

### 3. The Bankruptcy Court's Determination Of The City's Eligibility.

On December 3, 2013, the bankruptcy court announced its aforementioned oral ruling finding the City eligible for chapter 9 relief and rejecting the objections to the City's eligibility asserted by AFSCME and the other objectors.

Though rejecting the objections, the Court did agree with the objectors that the City failed to negotiate in good faith within the meaning of 11 U.S.C. § 109(c)(5)(B), but nevertheless concluded that because negotiations were impracticable the City had satisfied the eligibility requirement contained at 11 U.S.C. § 109(c)(5). The Court also confirmed as a matter of fact that, inter alia, the evidence at trial established that the EM intends to propose a plan that impairs vested pension rights, and that therefore the objectors' "as applied" challenges regarding the impairment of pensions in this bankruptcy are ripe for review at this time.

### B. Statement Of Questions To Be Presented By AFSCME's Appeal And Relief Sought.

Subject to a detailed review of the bankruptcy court's written opinion in this matter, as well as further consultation with appellate counsel, AFSCME's current intention is to raise some or all of the following questions on appeal:

> Whether the bankruptcy court committed legal error in rejecting these independently fatal objections raised by AFSCME to the entry of an order for relief:
>
> o chapter 9 is unconstitutional under the Federal Constitution, both facially and as applied;
>
> o PA 436 is unconstitutional under the Pensions Clause of the Michigan Constitution;
>
> o PA 436 is unconstitutional under the Home Rule provisions of the Michigan Constitution;
>
> o Because PA 436 violates the Michigan Constitution, any authorization for the City to commence this chapter 9 case thereunder was invalid under Michigan law and thus the City is

not eligible to be a debtor under 11 U.S.C. § 109(c)(2);

o Under the Pensions Clause of the Michigan Constitution, the City cannot use this bankruptcy to discharge vested pension benefits as general unsecured claims;

o Because the City filed its petition without even attempting to engage in any good faith negotiations within the meaning of 11 U.S.C. § 109(c)(5)(B) as the Court found, it cannot satisfy 11 U.S.C. § 109(c)(5;

o negotiations were practicable within the meaning of 11 U.S.C. § 109(c)(5)(C), yet the City chose not to negotiate;

o the City failed to establish its alleged insolvency via competent expert testimony, and the bankruptcy court improperly found the City insolvent based on an incorrect legal determination to admit lay witness testimony clothed as expert opinion; and

o the City filed its petition in bad faith after years of careful planning and with the goal of unconstitutionally impairing vested pension benefits.

## C.     Statement of Reasons Why An Appeal Should Be Granted.

28 U.S.C. § 1292(b) provides that a district court may certify an order to the court of appeals for an immediate appeal when that order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and where "an immediate appeal from the order may materially advance the ultimate termination of the litigation." While 28 U.S.C. § 1292(b) obviously has no direct application here, many district courts and bankruptcy appeal panels have looked to the § 1292(b) certification standards in determining whether to grant a motion for leave to appeal a bankruptcy court order. *See e.g.*, *In re Wicheff*, 215 B.R. 839, 844 (6th Cir. B.A.P. 1998); *In re Trans–Industries, Inc.*, No. 10-10401, 2010 WL 727971,

at *1 (Bankr. E.D. Mich. Feb. 12, 2010); *Roderick Timber Co. v. Levy (In re Roderick Timber Co.)*, 185 B.R. 601, 604 (9th Cir. BAP 1995); *In re Coudert Bros. LLP Law Firm Adversary Proceedings*, 447 B.R. 706, 711 (S.D.N.Y. 2011).

For certification to be given under 28 U.S.C. § 1292(b), the appellant must establish that: (i) the issue involves a controlling issue of law; (ii) substantial ground for a difference of opinion as to the outcome of the issue; and (iii) an immediate appeal would materially advance the ultimate termination of the litigation. *See, e.g.*, *City of Detroit v. State of Michigan*, No. 10–12427, 2013 WL 1340108, at *2 (E.D. Mich. Apr. 3, 2013); *JP Morgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 725 F. Supp. 2d 619, 624 (E.D. Mich. 2010) (citing *W. Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis (In re City of Memphis)*, 293 F.3d 345, 350 (6th Cir. 2002)). While the Sixth Circuit has held that an interlocutory appeal is improper where the only legal issues presented are fact-dependent legal issue, *see, e.g., McKenna v. City of Royal Oak,* 469 F.3d 559, 561 (6th Cir. 2006), the Sixth Circuit has subsequently held that an interlocutory appeal is perfectly proper where, as here, the proposed appeal involves *both* fact-dependent legal issues *and* pure legal issues. *See Kennedy v. City of Cincinnati*, 595 F. 3d 327, 334 (6th Cir. 2010). Moreover, where, as here, the controlling legal standards are unsettled and open to substantial disagreement, courts both and in out of the chapter 9 context have permitted interlocutory appeals without regard for the fact that some or even all of the issues presented on appeal were fact-dependent legal issues. *See, e.g.*, *In re City of Vallejo*, 408 B.R. 280, 285 (9th Cir. B.A.P. 2009) (granting objecting unions leave to appeal the denial of their objection to the City of Vallejo's eligibility to file a chapter 9 petition); *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625-27 (7th Cir. 2010) (explaining that a § 1292(b) certification request regarding application of law to facts was appropriate where the controlling legal standard was unclear).

The certification standards from section 1292(b) are easily satisfied in the instant case—as we now show.

## 1. The Appeal Involves Controlling Questions of Law On Which There Is A Substantial Ground for Difference of Opinion.

As set out in detail above, this appeal raises a variety of pure issues of law that are controlling here, including the Federal Constitutional Issue, the Pensions Clause Issue, and the Home Rule Issue. "A legal issue is controlling if it could materially affect the outcome of the case." *City of Detroit*, 2013 WL 1340108, at *2 (citing *City of Memphis*, 293 F.3d at 351); *see also In re Capen Wholesale, Inc.*, 184 B.R. 547, 549 (N.D. Ill. 1995) (noting that a "controlling" issue of law is ordinarily "outcome determinative"). Each legal issue decided in the Eligibility Opinion, if reversed, independently requires dismissal of the City's chapter 9 case; indeed, Section 921(c) of the Bankruptcy Code requires dismissal of the City's bankruptcy case if the debtor is not eligible for relief for failure to meet the eligibility requirements of § 109. It is difficult to imagine a more impactful issue than the City's eligibility for relief and ability to stay in bankruptcy.

Furthermore, substantial grounds plainly exist for differences of opinion as to the various legal conclusions reached by the bankruptcy court. A substantial ground for difference of opinion exists where "(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question." *City of Detroit v. State of Michigan*, 2013 WL 1340108, at *2 (citing *Newsome v. Young Supply Co.*, 873 F.Supp.2d 872, 876–77 (E.D. Mich. 2012) (internal citations omitted)). In *City of Detroit*, the District Court found, in an analogous situation, a substantial ground for difference of opinion existed where a

novel issue involving interpretation of a Michigan Act and its potential preemption were not previously addressed by the Sixth Circuit or Michigan courts, little precedent existed on the issue, and parties vigorously disagreed on the correct statutory interpretation. 2013 WL 1340108, at *3.

Here, there is no controlling Sixth Circuit or Michigan appellate authority that squarely analyzes the issues surrounding the Federal Constitutional Issue, the Pensions Clause Issue, the Home Rule Issue, or the other § 109(c) eligibility requirements. Indeed, the only court previously to consider certain of these novel issues, the state court in the Webster Litigation, ruled differently on these issues in the Declaratory Judgment action than the bankruptcy court has in the Eligibility Order. The bankruptcy court heard three days of oral arguments followed by several rounds of legal briefing due to the complexities of the purely legal issues presented. Against this background, it cannot seriously be disputed that there are substantial grounds for differences of opinion as to the various legal conclusions reached by the bankruptcy court.

## 2.     An Immediate Appeal Will Materially Advance The Resolution Of This Bankruptcy Case.

An immediate appeal materially advances the ultimate termination of litigation "when outcome-determinative legal issues [will] be resolved before the parties and the Court expend valuable resources on further litigation." *JP Morgan Chase Bank,* 725 F. Supp. 2d at 625 (citation omitted); s*ee also Colonial Bank v. Freeman (In re Pac. Forest Prods. Corp.)*, 335 B.R 910, 919 (S.D. Fla. 2005) ("[T]he most compelling grounds for interlocutory review exist when the reversal of an appellate issue would dispose of the entire case.").

Here, if the bankruptcy court's Eligibility Order is reversed, this entire bankruptcy case will end. If leave is not granted, the City will proceed in bankruptcy—a lengthy, time consuming and expensive process—with the specter of a possible reversal on appeal.

Furthermore, immediate relief is likely the only way to avoid protracted litigation and expense in light of § 921(e). Bankruptcy is unique in that the parties' rights and legal relationship with a debtor are altered and modified throughout the bankruptcy process—whether through a debtor's assumption or rejection of executory contracts, claims allowance or plan confirmation. The more time that passes in the City's case, the more difficult it becomes for this Court to grant AFSCME (and other parties) meaningful relief because the City will continue to take additional irreversible actions and other additional steps to move towards confirmation of a plan of adjustment and may, as previously noted, argue "equitable mootness" on any subsequent appeal of the Eligibility Order.

Moreover, an immediate appeal should be allowed here because the eligibility determination is the threshold decision in chapter 9 that allows the City to take advantage of the panoply of provisions in the Bankruptcy Code to the detriment of AFSCME and many other creditors. Should the Court grant leave to appeal, the consideration of the largely untested pure legal issues in an expeditious appeal includes the added benefit of providing meaningful guidance to financially distressed municipalities contemplating bankruptcy and provides more certainty to Retired AFSCME Employees currently on edge and wondering whether the City will be able to proceed to impair or reduce their constitutionally protected vested pension benefits. The parties should not have to engage in additional costly and time-intensive litigation if the City is, in fact, ineligible for *any* type of debt adjustment relief under chapter 9.

## CONCLUSION

For the foregoing reasons, the instant Motion should be granted.

Dated: December 3, 2013

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

By: /s/  *Sharon L. Levine*
Sharon L. Levine, Esq.
Philip J. Gross, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-6247 (Facsimile)
slevine@lowenstein.com
pgross@lowenstein.com

-and-

Herbert A. Sanders, Esq.
THE SANDERS LAW FIRM PC
615 Griswold St., Suite 913
Detroit, MI 48226
(313) 962-0099 (Telephone)
(313) 962-0044 (Facsimile)
hsanders@miafscme.org

-and-

Richard G. Mack, Jr., Esq.
Miller Cohen, P.L.C.
600 West Lafayette Boulevard
4th Floor
Detroit, MI 48226-3191

*Counsel to Michigan Council 25 of the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO and Sub-Chapter 98, City of Detroit Retirees*

# EXHIBIT  A

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

       Plaintiffs,

vs                                    Case No. 13-734-CZ
                                        Hon.  Rosemarie Aquilina

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

       Defendants.

_____/

ORDER OF DECLARATORY JUDGMENT

At a session of said Court held in Ingham County Circuit Court,
State of Michigan, this _19th_ day of July, 2013.

PRESENT: _Rosemarie E Aquilina_
              Circuit Court Judge

      Plaintiffs request declaratory relief pursuant to MCR 2.605 concerning (1) the

constitutionality under Article IX Section 24 of the Michigan Constitution of the Local Financial

Stability and Choice Act, 2012 PA 436, MCL 141.1541, *et seq*. ("PA 436"), insofar as PA 436

permits the Governor to authorize an emergency manager to proceed under chapter 9 of the

bankruptcy code, chapter 9 of title 11 of the United States Code, 29 USC 901 to 946 ("Chapter

9") in a manner which threatens to diminish or impair accrued pension benefits; and (2) the

authority of the Governor and/or State Treasurer to authorize an emergency manager to proceed under Chapter 9 in a manner which threatens to diminish or impair accrued pension benefits.

Plaintiffs have requested, and Defendants have agreed in their Response, that the hearing in this matter may be advanced pursuant to MCR 2.605(D) and the court finds that expedited treatment is appropriate and that final declaratory relief is proper at this time.

The Court having reviewed the parties filings and submissions, and having heard oral argument by counsel for the parties, and being otherwise fully advised in the premises, and for the reasons stated on the record,

IT IS HEREBY ORDERED:

PA 436 is unconstitutional and in violation of Article IX Section 24 of the Michigan Constitution to the extent that it permits the Governor to authorize an emergency manager to proceed under Chapter 9 in any manner which threatens to diminish or impair accrued pension benefits; and PA 436 is to that extent of no force or effect;

The Governor is prohibited by Article IX Section 24 of the Michigan Constitution from authorizing an emergency manager under PA 436 to proceed under Chapter 9 in a manner which threatens to diminish or impair accrued pension benefits, and any such action by the Governor is without authority and in violation of Article IX Section 24 of the Michigan Constitution.

On July 16, 2013, City of Detroit Emergency Manager Kevyn Orr submitted a recommendation to Defendant Governor Snyder and Defendant Treasurer Dillon pursuant to Section 18(1) of PA 436 to proceed under Chapter 9, which together with the facts presented in Plaintiffs' filings, reflect that Emergency Manager Orr intended to diminish or impair accrued pension benefits if he were authorized to proceed under Chapter 9. On July 18, 2013, Defendant

Governor Snyder approved the Emergency Manager's recommendation without placing any contingencies on a Chapter 9 filing by the Emergency Manager; and the Emergency Manager filed a Chapter 9 petition shortly thereafter. By authorizing the Emergency Manager to proceed under Chapter 9 to diminish or impair accrued pension benefits, Defendant Snyder acted without authority under Michigan law and in violation of Article IX Section 24 of the Michigan Constitution.

In order to rectify his unauthorized and unconstitutional actions described above, the Governor must (1) direct the Emergency Manager to immediately withdraw the Chapter 9 petition filed on July 18, and (2) not authorize any further Chapter 9 filing which threatens to diminish or impair accrued pension benefits.

*A copy of this Order shall be transmitted to President Obama.*

*It is so Ordered.*

Rosemarie E. Aquilina
P37670
Circuit Court Judge