UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN

Case No. 13-53846-SWR
Chapter 9
Hon. Steven W. Rhodes

_____

# BRIEF OF THE PUBLIC LIGHTING AUTHORITY
# ON SUPPLEMENTAL QUESTIONS REQUESTED BY THE COURT

The Public Lighting Authority (the "PLA"), through its undersigned counsel, submits this Brief on the supplemental questions requested by the Court on the City of Detroit's Motion for Entry Of An Order (I) Authorizing the Debtor to Enter Into And Perform Under Certain Transaction Documents With The Public Lighting Authority And (II) Granting Other Related Relief (the "Motion") [Dkt. #1341].

## INTRODUCTION

The Court heard oral argument on the City of Detroit's (the "City") Motion on November 27, 2013. At the motion hearing, attorney Jonathan Green of Miller Canfield, P.L.C. ("Miller Canfield") addressed the Court on behalf of the PLA. The Court raised, *sua sponte*, the issue of whether Miller Canfield's joint representation of both the City and the PLA constituted a prohibited conflict of

1

interest under Michigan Rule of Professional Conduct 1.7(a) ("Rule 1.7"), which could preclude the Court's entry of an Order under 11 U.S.C. 364 ("§364").

In response to these concerns, the Court requested briefing on two issues: (1) whether Rule 1.7 requires the mandatory disqualification of Miller Canfield from representing the PLA in the contemplated transaction, or whether such potential conflict is waivable by the parties; and (2) whether, if the conflict is waivable, the Court can find that the PLA Transactions were negotiated at arm's length and in good faith as required under §364.

The PLA submits this Brief to provide the Court with additional facts it was not privy to during the motion hearing. We believe that the second briefing issue requested by the Court presumes the existence of a conflict. However, it is the PLA's position that, upon clarification, the Court will be satisfied that no conflict exists under Rule 1.7, and therefore, the second issue does not require analysis.

## STATEMENT OF FACTS

The City filed the Motion on October 23, 2013, seeking the Court's approval of certain foundational documents that make up a portion of multiple transactions (collectively, the "PLA Transactions") the PLA will enter into to effectuate the

issuance of its bonds under the Michigan Municipal Lighting Authority Act, 2012 PA 392, Mich.Comp.Laws §§ 123.1261 *et seq.*[1] ("Act 392").

The PLA Transactions are multi-layered transactions. The foundational layer consists of the following documents: (1) the Interlocal Agreement for the Construction & Finance of a Public Lighting System (the "C&F Agreement"); (2) the Interlocal Agreement for the Operations & Maintenance of a Public Lighting System (the "O&M Agreement"); and (3) the Amended and Restated Trust Agreement (the "Amended Trust," collectively, the C&F Agreement, the O&M Agreement, and the Amended Trust are referred to as the "Motion Documents")[2,3]. The Motion Documents are the only documents presented to the Court for its approval.

---

[1] 2012 PA 392 was one bill of a three-bill, tie-barred legislative package that collectively authorized the City to establish a lighting authority (PA 392), provided for the repayment of PLA bonds with utility users tax ("UUT") revenues (2012 PA 393)("Act 393"), and permitted the City to impose an elevated income tax to hold it harmless from the re-direction of UUT revenues to the PLA (2012 PA 394).

[2] The PLA, the City, and the Trustee entered into a Trust Agreement with an effective date of August 1, 2013 for the purpose of directing the utility users' tax revenues to the trust, and providing for the disbursement of those funds. The Amended and Restated Trust Agreement was amended for the purpose of aligning the mechanics of the trust with the bond deal. As stated in Exhibit A, the Trust Agreement was drafted by attorney Ron Liscombe of the Allen Law Group, P.C. on behalf of the PLA. The changes captured in the Amended and Restated Trust were recommended by Miller Canfield, and negotiated by all of the parties thereto.

[3] The Motion originally included the proposed Interlocal Agreement for the Operations & Maintenance of a Public Lighting System. However, to the extent the Court excludes the O&M Agreement from its Order, the PLA hereby excludes that document for purposes of this brief.

3

The financial documents consist of several documents that are typical in bond transactions[4] (the "Bond Documents"). The Bond Documents, and any representation of the PLA in the preparation and negotiation of them, are not before the Court for its approval.

The Motion Documents are specifically required under Acts 392 and 393 in order to authorize the PLA to issue bonds secured by the pledge of a portion of the utility users' tax revenues (the C&F Agreement), while providing the framework by which those bonds will be repaid (the Amended Trust). Notably, the Motion Documents: (1) are the only documents submitted for the Court's approval pursuant to the Motion, and (2) are the only documents to which the City is a party.

As the Court is aware, the contemplated PLA Transactions[5] are structured as follows: (1) the City and the PLA must enter into the Motion Documents in order to authorize the PLA to issue its bonds to the Michigan Finance Authority (the "MFA"); (2) the PLA will sell its bond(s) to the MFA; which will then (3) sell MFA bonds under the local government loan program to the purchasers. The second and third steps of the transactions, i.e. the steps relating to the Bond

---

[4] Such documents typically consist of a bond indenture, a bond purchase agreement, a trust indenture, and other related documents.

[5] The PLA Transactions will consist of both a short-term and long-term deal. The short-term transaction consists of a negotiated direct-placement facility with Citi Bank in the amount of sixty million dollars ($60,000,000). This short-term facility will be refunded through the contemplated execution of a long-term fixed rate facility within the next twelve months, which has not yet been negotiated.

Documents, are separate acts and simply effectuate the authority granted under Act 392, the City Utility Users Tax Act, Mich.Comp.Laws §§141.1151 *et seq.*, and the Motion Documents.

The Allen Law Group, P.C. ("ALG") is the primary legal counsel to the PLA. As legal counsel to the PLA, ALG acted as the principal drafter and negotiator of the Motion Documents on behalf of the PLA. (*See* Exhibit A, Affidavit of Ron Liscombe).

Jones Day represented the City in the negotiation of the Motion Documents.

The negotiation of the C&F Agreement commenced between ALG and Jones Day commenced in early July 2013, and was concluded in mid-October. The negotiation of the O&M Agreement between ALG and Jones Day commenced in mid-August, and was concluded in mid-October. Both the C&F and O&M Agreements were initially negotiated exclusively between ALG on behalf of the PLA and Jones Day on behalf of the City.

Miller Canfield's representation of the PLA has been limited to its role as bond and special counsel in the PLA's bond transaction, which consists of the drafting of the Bond Documents, the delivery of certain bond opinions, opining on certain bankruptcy-related elements of the financial transactions, and providing input into the Motion Documents specifically as they relate to the bond transactions. In this role, Miller Canfield's input into the Motion Documents was

limited to modifications that had an effect on the bond transactions, and was only provided when the bond negotiations reached a mature stage in late September.

## ARGUMENT

    i.   *Miller Canfield's representation of the PLA relating to the Bond Documents does not present a conflict fatal to the relief requested because both the City and the PLA were independently represented in the negotiation of the Motion Documents.*

The Michigan Rules of Professional Conduct provide that "[a] lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) each client consents after consultation." MRPC 1.7(a). Under Michigan law, "… a lawyer may not, absent consent, represent two current clients with adverse interests, even if the clients' matters are unrelated." CenTra, Inc. v. Estrin, 639 F. Supp. 2d 790, 809, 2009 U.S. Dist. LEXIS 46757 (E.D. Mich. 2009) (citing MRPC 1.7 cmt. P3).

"The first step in dealing with assertions of conflicts of interest under MRPC 1.7(a) is to determine whether a lawyer's representation of a client will be 'directly adverse' to the interest of another client." Avink v. SMG, 282 Mich. App. 110, 117, 761 N.W.2d 826, 2009 Mich. App. LEXIS 97 (Mich. Ct. App. 2009). A necessary prerequisite of a conflict is a lawyer's representation of two clients with adverse interests. The first, and most evident conflict arises, when the same attorney or firm represents opposing parties with adverse interests in the

same transaction or case. However, a conflict can also arise if the same lawyer represents two clients with adverse interests, yet the representation is in unrelated matters.

It is axiomatic that a conflict cannot be created where one does not exist. In the instant matter, both the City and the PLA were independently represented in the negotiation of the Motion Documents. (See Exhibit A). Miller Canfield did not represent both sides of the same matter; therefore, no conflict exists and no further analysis is required.

> ii. *The interests of the PLA and the City with respect to the Motion Documents are not directly adverse; therefore, Miller Canfield's representation of the parties in separate matters does not present an impermissible conflict of interest.*

In determining whether a lawyer's representation of a client will be directly adverse to the interest of another client … the term "adverse" is defined as opposed or contrary. <u>Avink v. SMG</u>, 282 Mich. App. 110, 117, 761 N.W.2d 826, 2009 Mich. App. LEXIS 97 (Mich. Ct. App. 2009). Further, "a lawyer may not represent multiple parties in a negotiation whose interests are fundamentally antagonistic to each other, <u>but common representation is permissible where the clients are generally aligned in interest even though there is some difference of interest among them</u>." MRPC 1.7 cmt. P4 (emphasis added).

While it is evident that Miller Canfield did not represent both parties to the Motion Documents, it could be argued that its dual representation of the City in the bankruptcy case and the PLA in the bond transactions creates an impermissible conflict of interest. However, this position does not stand up to scrutiny because the parties' interests are not directly adverse. The PLA has no interest in the eligibility, outcome, or proceedings of the City's bankruptcy matter. The PLA will remain in the same position notwithstanding the course of the City's case in that the PLA will still be entitled to the statutorily-required payment of $12,500,000 annually. To the extent that the Court rules favorably on the Motion, it can be argued that the interests of the PLA and the City are aligned in interest, as such a ruling would enable the PLA to securitize its annual payment to obtain access to the capital markets, thereby enabling a far greater positive impact on the City.

The PLA exists solely to serve the residents of the City. Mich.Comp.Laws § 123.1269. The City created the PLA pursuant to Act 392 for the purpose of "provid[ing] an equitable and reasonable method and means of financing, operating, and maintaining a lighting system <u>to supply lighting in sufficient quantities to a local government</u>." Mich.Comp.Laws § 123.1265(1) (emphasis added). The PLA's sole purpose is to provide street lights to the City. Because of the singular purpose of the PLA, it is uncontested that the interests of both the PLA and the City are unified: to obtain the most financing available on the best terms

possible in order to install the best lighting system for the benefit of the City's stakeholders.

In addition to the unified interests of the PLA and the City, the Motion Documents[6] generally memorialize the rights and duties created under Act 392, rather than conveying novel substantive rights between the parties. Therefore, the interests of the parties regarding the Motion Documents are not "opposed or contrary," thereby requiring separate, adversarial representation. The Motion Documents are required to be executed by the City and the PLA under Act 392 and Act 393 prior to the issuance of the PLA bonds. Mich.Comp.Laws § 123.1281(3); Mich.Comp.Laws § 141.1152(5). The primary purposes of the Motion Documents are merely: (1) to authorize the PLA to perform work on City assets; (2) to authorize the PLA to issue bonds; (3) to grant the pledge against the utility users' tax revenues to secure the bonds; and (4) to direct the utility users' tax revenues to be routed through the trustee in conformance with state law. Because each of the functions addressed in the Motion Documents generally evidence an alignment of interests between the City and the PLA, with only slight differences of interest, separate representation would not be required, and hence, no conflict exists.

## CONCLUSION

---

[6] Arguably, the O&M Agreement conveys substantive rights between the parties but, pursuant to footnote 3, the PLA is excluding that document from this analysis to the extent the Court excludes it from its Order.

Miller Canfield's representation of the PLA as bond and special counsel in the PLA's financial transaction does not present a disqualifying conflict in the matter before the court because: (1) such representation was not directly adverse to the interests of the PLA, and (2) the PLA was independently represented in the negotiation of the Motion Documents. Because no conflict arises under the questioned representation, the Court need not consider its potential impact on the §364 question. For these reasons, the PLA respectfully requests the Court enter the relief requested in the City's Motion.

Respectfully submitted,

/s/ Ronald C. Liscombe
Ronald C. Liscombe (P68524)
Allen Law Group, P.C.
3011 West Grand Boulevard
2500 Fisher Building
Detroit, MI 48202

Dated: December 4, 2013

Attorneys for the Public Lighting Authority