UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------------------------x
                                                                 :

In re                                               : Chapter 9

CITY OF DETROIT, MICHIGAN,        : Case No. 13-53846

                        Debtor.     : Hon. Steven W. Rhodes

------------------------------------------------------x

**DEBTOR'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE
DEBTOR TO ENTER INTO AND PERFORM UNDER CERTAIN
TRANSACTION DOCUMENTS WITH THE PUBLIC LIGHTING
AUTHORITY AND (II) GRANTING OTHER RELATED RELIEF**

The City of Detroit, Michigan (the "Debtor" or the "City"), as the debtor in the above-captioned case, submits this Supplemental Brief in Support of Motion for Entry of an Order (I) Authorizing the Debtor to Enter Into and Perform Under Certain Transaction Documents with the Public Lighting Authority and (II) Granting Other Related Relief.

# INTRODUCTION

At a hearing on the Debtor's Motion for Entry of an Order Authorizing the Public Lighting Authority Transaction (Docket No. 1341) (the "Motion")[1] held on November 27, 2013, this Court requested additional briefing on two issues:

i. Whether rule 1.7(a) of the Michigan Rules of Professional Conduct ("Rule1.7(a)") requires the Court to disqualify Miller Canfield from its representation of the Public Lighting Authority (the "PLA");[2] and

ii. If the answer to the above question is no, can the Court make a "good faith" finding under section 364(e) of the Bankruptcy Code given Miller Canfield's representation of the City in other matters.

---

[1] The City also filed its Reply to Limited Objections to Motion for Entry of an Order (I) Authorizing the Debtor to Enter Into and Perform Under Certain Transaction Documents With the Public Lighting Authority and (II) Granting Other Related Relief (Docket No. 1795) prior to the hearing.

[2] Rule 1.7 of the Michigan Rules of Professional Conduct states:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
> (2) each client consents after consultation.

As set forth herein, the Debtor respectfully submits that the City, the Public Lighting Authority (the "PLA") and the Michigan Finance Authority (the "MFA") all possess a common interest with respect to the financing transactions described in the Motion (the "PLA Financing Transactions"), and therefore no adversity among these entities exists in regard to the PLA Financing Transactions. Further, the City believes that the Allen Law Group, and not Miller Canfield, represents the PLA on matters where the City and the PLA may possess differing interests. As a result, Rule 1.7(a) is inapplicable in the instant case.[3]

Finally, as the City believes no conflict between the City, the PLA and the MFA exists with respect to the PLA Financing Transactions, a finding of "good faith" under section 364(e) of title 11 of the United States Code (the "Bankruptcy Code") is appropriate in the instant case, because the sole party adverse to the City, the MFA and the PLA—Citibank N.A. ("Citibank")— possessed separate counsel. The adverse party's retention of separate counsel allowed for good faith and arm's-length negotiations of the PLA Financing Transactions.

## ARGUMENT

**A.   The City, the MFA and the PLA All Held a Common Interest**

The City, the PLA and the MFA all hold a common interest in the two agreements that relate to the City's role in the financing of the PLA. These

---

[3]   The City, the PLA and the MFA were all aware of Miller Canfield's role in the PLA Financing Transactions and had no objection to this role.

agreements are (i) the Interlocal Agreement for the Construction and Financing of a Public Lighting System (the "C&F Agreement") and (ii) the Amended and Restated Trust Agreement (the "A&R Trust Agreement" and, together with the C&F Agreement, the "PLA Financing Agreements"). Collectively, the PLA Financing Agreements are vital components of the City's and the PLA's ability to fix the problems associated with its public lighting system as contemplated under the Municipal Lighting Authority Act, Act No. 392, Public Acts of Michigan, 2012, as amended, MCL § 123.1261, *et seq*. ("PA 392").

An equally vital component is the PLA's ability to issue an initial set of bonds in the amount of $60 million (the "PLA Bonds"). The PLA Bonds will provide the capital necessary to complete the initial phase of improvements to the City's public lighting system. Under PA 392, the MFA is the sole entity that may purchase the PLA Bonds.[4] The MFA will purchase the PLA Bonds with proceeds from the sale of its own bonds (the "MFA Bonds", and together with the PLA Bonds, the "PLA Transaction Bonds") to Citibank.

The structure of the PLA Financing Transactions described above dictates that the three governmental entities involved in the PLA financing transaction (*i.e.* the City, the PLA and the MFA) all possess a unified interest—the procurement of the most cost effective financing possible that will allow the PLA

---

[4] M.C.L. § 123.1281(7).

to make the necessary improvements to the City's public lighting system.  This interest aligns directly with the stated rationale behind the enactment of PA 392: "It is the intent of this act to provide an equitable and reasonable method and means of financing, operating and maintaining a lighting system to supply lighting in sufficient quantities to a local government."[5]  Moreover, none of the City, the PLA or the MFA possessed any economic incentive with respect to the issuance of the PLA Transaction Bonds other than to obtain the lowest financing costs possible for the ultimate benefit of the City and its residents.

As bond counsel to the PLA and MFA, Miller Canfield provided comments and input on the PLA Financing Agreements and the PLA Transaction Bonds, all of which focused on ensuring that the City, the PLA and the MFA drafted the PLA Financing Agreements and the PLA Transaction Bonds in a manner that would allow for the issuance of the PLA Transaction Bonds at the lowest possible interest rate.

In contrast, the sole private and for-profit entity involved in the PLA financing transaction, Citibank, held a directly competing interest from that of the City, the PLA and the MFA—the purchase of bonds that included the highest rate of return possible.  Citibank engaged its own counsel, Kutak Rock, to represent

---

[5] M.C.L. § 123.1265(1).

Citibank's interests with respect to the negotiation and documentation of the PLA Financing Agreements and the ultimate terms of the PLA Transaction Bonds.

While they possessed a common interest with respect to the PLA Financing Agreements and the PLA Transaction Bonds, the City and the PLA may have possessed differing interests with respect to the portions of the C&F Agreement that address the PLA's responsibilities to construct and improve the City's public lighting system and the Interlocal Agreement for the Operation, Maintenance and Management of a Public Lighting System, which governs the PLA's obligation to maintain the portions of the City's public lighting system on which the PLA has completed improvements. With respect to these specific items, however, the City and its attorneys interfaced with a separate law firm, the Allen Law Group, which the City believes led the drafting and negotiation process on behalf of the PLA. To the best of the City's knowledge, the Allen Law Group is not presently representing the City in any matter.

Thus, as set forth above, the City believes Miller Canfield's role as bond counsel to the PLA and MFA in this matter does not present an adversity to the City. The PLA's interests were aligned with those of the City with respect to the matters and issues on which Miller Canfield advised the PLA and the MFA on. As such, Miller Canfield's representation of the PLA in this matter should have no impact on whether the Court approves the Motion.

CHI-1913312v5
-6-
13-53846-tjt    Doc 1927    Filed 12/04/13    Entered 12/04/13 16:40:54    Page 6 of 10

## B. A Good Faith Finding Is Appropriate

Following a similar logic, Miller Canfield's representation of the PLA and MFA in this matter in no way precludes the Court from making a finding of "good faith" under section 364(e) of the Bankruptcy Code, because the real adverse party in negotiating the PLA Financing Agreements and PLA Transaction Bonds was Citibank, which possessed its own counsel. The basic purpose of section 364(e) of the Bankruptcy Code is "to encourage postpetition financing by ... giving the lender priority.... [and] protect[ing] the authorization for priority on a lien from reversal or modification on appeal, as long as the order has not been stayed pending appeal and the creditor extended credit in good faith." In re Ellingsen MacLean Oil Co., Inc., 834 F.2d 599, 603 (6th Cir. 1987). While the Bankruptcy Code fails to define the term "good faith", the Sixth Circuit has acknowledged courts look to the definition found in the Uniform Commercial Code: "Good faith means honesty in fact in the conduct or transaction concerned." Id. at 604-605; see also In re Pan Am Corp., 1992 WL 154200 at *4 (S.D.N.Y. June 18, 1992) (examining whether factors such as fraud or collusion existed in determining whether a lender acted in "good faith" under section 364(e) of the Bankruptcy Code).

Courts have found a lack of good faith when parties fail to disclose ulterior motives or material facts to the bankruptcy court and those motives or facts

may impact a court's reasoning.  In re White Crane Trading Co., Inc., 170 B.R. 694, 705 (Bankr. E.D. Cal. 1994) (deciding that a party extending credit secured by certain inventory it planned to liquidate failed to act in "good faith" because the party failed to disclose it was subject to a permanent injunction that impacted its ability to conduct the sale).  A lack of "good faith" also may exist when it is "evident from the loan agreement itself that the transaction has an intended effect that is improper under the Bankruptcy Code."  In re EDC Holding Co., 676 F.2d 945, 948 (7th Cir. 1982) (deciding that a lender lacked good faith with respect to a portion of its loan agreement that required the debtor to utilize $77,000 of the loan proceeds to pay the attorney's fees of an unsecured creditor group).

Here, Miller Canfield's role as bond counsel to the PLA and MFA provides no basis to prevent this Court from making a "good faith" finding with respect to the financing contemplated under the PLA Financing Agreements and the PLA Transaction Bonds.  As set forth above, the City's, the PLA's and the MFA's interests all were aligned in the negotiation and documentation of the PLA Financing Agreements and the PLA Transaction Bonds.  Citibank was the sole entity with an adverse position to the City, the PLA and the MFA in connection with the negotiation and documentation of the PLA Financing Agreements and the PLA Transaction Bonds.

The terms of the PLA Financing Agreements resulted from an arm's-length negotiation between the City, the PLA and the MFA on one side and Citibank on the other. This arm's-length negotiation between two sets of adverse parties falls squarely within the definition of "good faith" for purposes of section 364(e) of the Bankruptcy Code. Thus, a finding of "good faith" is appropriate with respect to the approval of the PLA Financing Agreements.

## CONCLUSION

For the reasons stated above, the Debtor respectfully submits approval of the Motion in its entirety is appropriate.

## RESERVATION OF RIGHTS

The City files this Supplemental Brief without prejudice to or waiver of its rights pursuant to section 904 of the Bankruptcy Code, and nothing herein is intended to, shall constitute or shall be deemed to constitute the City's consent, pursuant to section 904 of the Bankruptcy Code, to this Court's interference with (a) any of the political or governmental powers of the City, (b) any of the property or revenues of the City or (c) the City's use or enjoyment of any income-producing property.

Dated: December 4, 2013					Respectfully submitted,

 /s/ David G. Heiman
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

and

Robert S. Hertzberg
PEPPER HAMILTON LLP
4000 Town Center
Southfield, Michigan 48075
Telephone: (248) 359-7300
Facsimile: (248) 359-7700
hertzbergr@pepperlaw.com