------------------------------------------------------------------x
:
In re                                                             :
:  Chapter 9
:
CITY OF DETROIT, MICHIGAN,                                        :
:  Case No. 13-53846
Debtor.                                  :
:
:  Hon. Stephen W. Rhodes
:
**Re: Dkt. 1341**

------------------------------------------------------------------x

**SUPPLEMENT TO JOINDER OF THE OFFICIAL COMMITTEE OF RETIREES TO THE LIMITED OBJECTION OF SYNCORA GUARANTEE INC. AND SYNCORA CAPITAL ASSURANCE INC. TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE PUBLIC LIGHTING AUTHORITY TRANSACTION**

DENTONS US LLP

Claude D. Montgomery
Carole Neville
1221 Avenue of the Americas
New York New York 10020
Tel: (212) 768-6700
claude.montgomery@dentons.com
carole.neville@dentons.com

- and -

Sam J. Alberts
DENTONS US LLP
1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005-3364
Tel: (202) 408-6400
sam.alberts@dentons.com

- and -

Matthew E. Wilkins
Paula A. Hall
BROOKS WILKINS SHARKEY & TURCO
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
Tel: (248) 971-1800
wilkins@bwst-law.com
hall@bwst-law.com

*Attorneys for the Official Committee of Retirees*

The Official Committee of Retirees (the "Committee") files this supplement to joinder (Dkt. 1713) to the Limited Objection of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. dated November 6, 2013 (Dkt. 1557) to the *Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to Enter Into and Perform Under Certain Transaction Documents with the Public Lighting Authority and (II) Granting Other Related Relief* (the "Motion") (Dkt. 1341).

## PRELIMINARY STATEMENT

1.  The City of Detroit (the "City") created the Public Lighting Authority (the "PLA") as a separate municipal corporation to manage and maintain the City's public lighting system. (Motion, at 4.) The PLA reportedly "is responsible for constructing, improving, enlarging, reducing or extending the City's street light system." (*Id.*, Ex. 6.4, at 3.) Upon completion of the transaction that is the subject of the Motion, (the "PLA Transaction"), "the PLA will commence the improvement of the City's public lighting system and will assume operational control of the portions of the public lighting system the PLA improves." (*Id.*, at 2.) In order to provide funding for the aforesaid activities by the PLA and induce the PLA to provide the public lighting system improvements contemplated by the PLA Transaction, the City has agreed to "irrevocably pledge and cause the existing and future revenue" generated from the utility tax normally imposed by the City on public utilities and other resellers of electricity "as security for, and the primary source for the repayment of, the [Public Act 392] [b]onds." (*Id.*, at 5.) The utility tax revenue to which the PLA is entitled to "is the lesser of (i) $12.5 million, and (ii) the total revenues generated by the [u]tility [t]ax." (*Id.*)

2.  Miller Canfield, P.L.C. ("Miller Canfield") has been and currently is counsel for the City in the Chapter 9 case. During the eligibility proceedings, the Committee and other objectors (collectively, "Objectors") questioned the good faith of the City and the Emergency

1

Manager. Miller Canfield participated in the defense of the City, which defense proved to be successful at the conclusion of the trial. Thereafter, during the November 27, 2013 Hearing on the Motion (the "11/27/13 Hearing"), the Court, as well as other interested parties, learned for the very first time that Miller Canfield also represents the PLA in its negotiations with the City over the PLA Transaction and in connection with the Motion. Following this revelation, the Court was understandably sensitive to the questions of conflict and good faith on the part of others towards the City and raised questions as to (a) whether Miller Canfield's simultaneous representation of the City and the PLA is in compliance with the Michigan Rules of Professional Conduct (hereinafter "M.R.P.C."), particularly Rule 1.7, and (b) the implications of any conflict due to such simultaneous representation, even if waivable, regarding whether the PLA Transaction was entered into in good faith for purposes of 11 U.S.C. § 364(e).

3. The Committee submits that, in the unique circumstances present here, Miller Canfield is in a conflict of interest position that cannot be cured by client consent and that the ethical violations resulting therefrom preclude a finding that, in entering into the PLA Transaction and extending credit to the City in connection therewith, the PLA was acting in good faith for purposes of 11 U.S.C. § 364(e). Specifically:

(a) Miller Canfield's representation of the PLA in the public lighting negotiations is directly adverse to the City, since it actively represents the City in the Chapter 9 bankruptcy proceedings, and a disinterested lawyer would conclude that, by reason of the knowledge it has necessarily obtained in that latter capacity as to the City's financial strategies, Miller Canfield could not simultaneously represent the PLA without using that knowledge, whether consciously or subconsciously, to the advantage of the PLA and the detriment of the City. This presents a conflict of interest that cannot be cured by consent from either the City or the PLA; and

2

(b) Under Michigan law, the actions and knowledge of Miller Canfield are imputed to the PLA. Accordingly, the PLA must be treated as having negotiated with the City in a situation where it presumptively had and employed, to its advantage, confidential information of the City to which it should not have had access. From this, it necessarily follows that, for purposes of 11 U.S.C. § 364(e), this Court cannot conclude that, in its negotiations with the City, the PLA acted in good faith. This lack of good faith is further compounded by the PLA's failure to disclose that Miller Canfield was representing it in connection with the PLA Transaction until the 11/27/13 Hearing when, to the surprise of the Court and Objectors, Miller Canfield stood up and announced that, as regards the PLA Transaction, it was in fact not acting for its client the City, but rather was acting for the PLA.

## I. MILLER CANFIELD'S SIMULTANEOUS REPRESENTATION OF BOTH THE CITY AND THE PLA GAVE RISE TO AN ETHICAL CONFLICT THAT IS NOT CURABLE BY CLIENT CONSENT

4. Miller Canfield is counsel before this Court for the City. As such, it has among other things participated, as an advocate for the City, in proceedings before this Court, including the recent eligibility trial. Miller Canfield has now violated M.R.P.C. Rule 1.7 by simultaneously representing the PLA in direct, adversarial negotiations against the City, while in possession of inside knowledge of the City's financial condition and strategic plans, including its ability and willingness to commit its scarce financial resources to achieve various ends. This presents a conflict of interest that cannot be waived.

5. According to M.R.P.C. Rule 1.7(a), "A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) each client consents after consultation." Compliance with this prong is assessed under the "disinterested lawyer" standard; under that standard, "when a disinterested lawyer

3

13-53846-tjt    Doc 1939    Filed 12/04/13    Entered 12/04/13 23:51:04    Page 4 of 11

would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent." Rule 1.7(a), Cmt. 5, "Consultation and Consent."

6. Under M.R.P.C. Rule 1.7, as well as other analogous rules in other states, a non-waivable conflict exists where an attorney is privy to certain confidences of one client that can be used to the disadvantage of the other. *See* MI Eth. Op. RI-66, 1990 WL 504887, at *2 (Dec. 21, 1990) (attorney could not represent individual despite client consent because attorney would be in possession of information gained from one representation that would necessarily affect his conduct in other, to the detriment of one of the two clients, even though the two matters were unrelated); IL. Adv. Op. 851, 1983 WL 190427, at *2 (Nov. 8, 1983) (attorney representing a corporation in a bankruptcy proceeding could not also simultaneously file a Workmen's Compensation claim on behalf of a former employee of the corporation because during the attorney's representation of the corporation he may "have learned confidential information which would be susceptible of use on behalf of the individual claimant"; opinion issued pursuant to Illinois Code Rule 5-105, which is substantively similar to Rule 1.7); *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.,* 722 F. Supp. 2d 295, 307 (E.D.N.Y. 2010) (disqualifying firm that represented plaintiff in suit against school Board where one firm associate, who was not working on matter, served as vice-president of Board, since associate had access to confidential Board information that could be used to benefit plaintiff).[1]

7. In this case, Miller Canfield represents the City in the bankruptcy proceedings, and by virtue of this representation, has necessarily become privy to certain confidential

---

[1] S*ee also* MI Eth. Op. RI-307, 1998 WL 1053845, at *3 (May 8, 1998) (due to the differing interests and obligations of each entity, "it is difficult to conceive of a situation in which a disinterested lawyer could confidently and reasonably believe that the lawyer's obligations to the county will not adversely affect the representation of the municipality" by simultaneously representing each in property tax assessments and appeal matters).

4

information that would not otherwise be known, including the City's financial condition and internal strategies as relate to its willingness and ability to commit funds to secure the PLA Transaction. *See* ¶ 4 above. The City's interest is to effectuate the public lighting improvements contemplated by the PLA transaction while maximizing its general fund access to utility tax revenues. The PLA's interest is in extracting as much secure funding as possible from the City to support the payments due on the bonds issued by it.

8. Irrespective of any client consent, a disinterested lawyer could not reasonably conclude that Miller Canfield could properly represent both clients. By virtue of its representation of the City, Miller Canfield acquired information concerning the City that would be of substantial advantage to the PLA -- and corresponding detriment to the City -- in the PLA's negotiations with the City. In those circumstances, Miller Canfield's simultaneous representation of both the City and the PLA was in violation of M.R.P.C. Rule 1.7(a). *See* authorities cited at ¶ 6 above. *See also Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 236 (2d Cir. 1977) ("Even the most rigorous self-discipline might not prevent a lawyer from unconsciously using or manipulating a confidence acquired in the earlier representation and transforming it to telling advantage in the subsequent litigation . . . .").[2]

---

[2] The City's recent assertion that there is no conflict because the City, PLA and MFA have a "common interest" in providing "cost effective financing" (Dkt. 1927, at 4) misses the point--that, because the PLA is a separate municipal entity and will rely on the pledged utility revenues for repayment of the bonds issued by it, the PLA intrinsically and necessarily has an interest in maximizing the amount of the pledged revenues, whereas the City clearly has an interest that is opposite and antagonistic to that, namely to pledge as little utility revenues as possible. The City's unsupported suggestion that Miller Canfield can avoid the conflict by somehow "not" representing the PLA on discrete matters, within the scope of the same representation, on which "the City and the PLA may represent different interests" is made up out of whole cloth. A lawyer either represents a client or does not, and, if there is a representation, the lawyer owes a full and complete duty of loyalty to the client. In this case, the duty of loyalty owed by Miller Canfield to the PLA covers all matters in which the PLA has an interest. In this regard, the City concedes that Miller Canfield represented the PLA in connection with the "PLA Financing Agreements," which include Amended and Restated Trust Agreement (Dkt. 1341, Ex.

## II. BECAUSE MILLER CANFIELD'S ACTIONS AND KNOWLEDGE ARE IMPUTED TO THE PLA, THE PLA CANNOT MEET THE "GOOD FAITH" REQUIREMENT SET FORTH IN 11 U.S.C. § 364(e)

9. Section 364(e) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under this section to obtain credit and incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that **extended such credit in good faith**, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal. (emphasis added).

10. Section 364(e) encourages extending "credit to debtors in bankruptcy by eliminating the risk that any lien securing the loan will be modified on appeal." *Keltic Fin. Partners, LP v. Foreside Mgmt. Co., LLC (In re Foreside Mgmt. Co., LLC)*, 402 B.R. 446, 451 (B.A.P. 1st Cir. 2009). However, in order to take advantage of this safe harbor provision, an entity extending post-petition credit to a debtor must have done so in "good faith". While the Bankruptcy Code itself does not provide a definition of "good faith," it has been defined as "honesty in fact in the conduct or transaction concerned." *Unsecured Creditors' Comm. v. First Nat'l Bank & Trust Co. of Escanaba (In re Ellingsen MacLean Oil Co.)*, 834 F.2d 599, 605 (6th Cir. 1987), *cert. denied*, 488 U.S. 817 (1988).

11. As discussed in further detail below, under Michigan law, Miller Canfield's actions and knowledge arising from its concurrent and unethical representation of both the PLA and the City are imputed to the PLA. As a result, during its negotiations with the City, the PLA presumptively had access to confidential City information and was in a position to take unfair advantage of the City in these negotiations. The PLA's honesty has been rendered suspect and in

---

6.3) to which both the City and the PLA are parties and which governs the utility pledge amounts. The existing tension between the City's interests and those of the PLA was further demonstrated by the PLA's request made mid-hearing that the City drop its request for approval of the Operations and Maintenance Agreement.

these circumstances and on this record the PLA cannot be found to have acted in good faith within the meaning of 11 U.S.C. §364(e).

### A. Under Michigan Law, Miller Canfield's Actions and Knowledge Are Imputed to the PLA

12. Under Michigan law, the attorney's relationship with the client is one of agency, and an attorney's actions and knowledge are generally imputed to the client. *See, e.g., Manni v. United States*, No. 89-CV-73621-DT, 1990 U.S. Dist. LEXIS 19579, at *8, n. 4 (E.D. Mich. Jan. 31, 1990) ("'it is well settled that the knowledge of an attorney is imputable to his client'") (quoting *Orgeron v. Mine Safety Appliances Co.*, 603 F. Supp. 364, 369 (E.D. La. 1985)); *Creswell v. Comm'r of Soc. Sec.,* No. 11-CV-12492, 2011 U.S. Dist. LEXIS 117756, at *6 (E.D. Mich. Sept. 12, 2011) ("'the actions of a privately retained attorney are imputed to the client'"); *Krim v. Osborne*, 20 Mich. App. 237, 242 (1969) ("'each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney'") (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962)); *see also In re Estate of Widdifield*, No. 252678, 2005 WL 1522160, at *2 (Mich. App. June 28, 2005) ("[T]he relationship between an attorney and his client is one of agency, and an attorney's assertions and arguments are imputed to the client he represents.").

13. This rule of imputation applies equally in bankruptcy cases. *See, e.g., Matter of Frankina*, 29 B.R. 983, 985-86 (Bankr. E.D. Mich. 1983) (holding that an attorney's notice of a bankruptcy proceeding is imputed to his client); *In re Shaw*, 210 B.R. 992, 996 (Bankr. W.D. Mich. 1997) (denying party's request to vacate consent judgment that was agreed to by his attorney because "it is well-settled that a party to litigation is bound by the acts of his attorney and is charged with notice of facts to the extent the attorney is so charged").

14. Accordingly, and as a matter of law, the actions and knowledge of Miller

7

Canfield, including its concurrent representation of the PLA in the PLA's Chapter 9 negotiations with Miller Canfield's other Chapter 9 client , the City, are imputed, and chargeable, to the PLA.

### B. Because it Stands in the Shoes of Miller Canfield, the PLA Did Not Act in Good Faith

15. Given that the acts and knowledge of an attorney are imputed to the client, it necessarily follows that, for purposes of 11 U.S.C. § 364(e), the PLA did not conduct itself in good faith. By virtue of the imputation, the PLA stands in the shoes of Miller Canfield and conducted negotiations with the City while in possession of the confidential City information, discussed above, to which Miller Canfield was privy. That exceeds the bounds of honesty in fact, and put the PLA in a position to take gross advantage of the City in the bargaining process.

16. The foregoing is further compounded by the PLA's apparent intent to obscure the dual role played by Miller Canfield. For reasons unknown, the PLA Transaction documents that were prepared in connection with the PLA Transaction and filed with this Court by the City in support of its Motion identify the PLA's counsel as, and only as, The Allen Law Group, P.C. (s*ee* Motion, Ex. 6.3, at 14) -- Miller Canfield is not disclosed as counsel for the PLA anywhere therein. It was not until the 11/27/13 Hearing in the City's bankruptcy case that it came out -- and then only serendipitously -- that, so far as the PLA Transaction was concerned, Miller Canfield was in fact acting not for the City but rather for the PLA. The PLA's failure to disclose the conflicted role played by Miller Canfield provides an additional reason why the PLA has not acted with "honesty in fact".[3]

---

[3] The Committee acknowledges that, if the Court were to conclude either that Miller Canfield's simultaneous representation of the City and the PLA did not give rise to a conflict or that it did but the conflict was both waivable and properly waived (which it should not), then there would be no basis for a determination that the PLA transaction was not entered into in good faith for Section 364(e) purposes.

**CONCLUSION**

Wherefore, for the above reasons, the Committee respectfully requests that the Court deny the Motion.

Dated: December 4, 2013  
      New York, New York

DENTONS US LLP

By: */s/ Claude D. Montgomery*  
Claude D. Montgomery  
Carole Neville  
1221 Avenue of the Americas  
New York New York 10020  
Tel: (212) 768-6700  
claude.montgomery@dentons.com  
carole.neville@dentons.com

- and -

Sam J. Alberts  
DENTONS US LLP  
1301 K Street, NW  
Suite 600, East Tower  
Washington, DC 20005-3364  
Tel: (202) 408-6400  
sam.alberts@dentons.com

- and -

Matthew E. Wilkins  
Paula A. Hall  
BROOKS WILKINS SHARKEY & TURCO  
401 South Old Woodward, Suite 400  
Birmingham, Michigan 48009  
Tel: (248) 971-1800  
wilkins@bwst-law.com  
hall@bwst-law.com

*Attorneys for the Official Committee of Retirees*

**CERTIFICATE OF SERVICE**

I, Claude D. Montgomery, hereby certify that service of this Supplement to Joinder of the Official Committee of Retirees to the Limited Objection of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. to Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to Enter Into and Perform Under Certain Transaction Documents with the Public Lighting Authority and (II) Granting Other Related Relief was filed and served via the Court's electronic case filing and noticing system on December 4, 2013.

/*s*/ Claude D. Montgomery