# EXHIBIT L

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SYNCORA GUARANTEE INC., | |
| Plaintiff, | 13-cv-5335 (LAK) |
| v. | ECF Filed |
| UBS AG, SBS FINANCIAL PRODUCTS COMPANY, LLC, and MERRILL LYNCH CAPITAL SERVICES, INC., | |
| Defendants. | |

**PLAINTIFF SYNCORA GUARANTEE INC.'S  MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR AN ORDER DIRECTING SYNCORA TO SHOW CAUSE WHY THIS ACTION SHOULD NOT BE <u>TRANSFERRED TO THE EASTERN DISTRICT OF MICHIGAN</u>**

QUINN EMANUEL URQUHART &
 SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York, 10038
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Plaintiff Syncora Guarantee Inc*

Syncora (along with another non-party insurer, the Financial Guaranty Insurance Co.) also insured payments under the Swap Agreements. *See* Defendants' Motion at 5.

By fixing the amount of interest in the Swap Agreements, both the Corporations and Syncora insulated themselves against variations in interest rates. Because a termination of the Swap Agreements could expose the Corporations, and consequently Syncora, to higher interest rates that could force the COPs into default, Syncora negotiated express contractual provisions that require the Swap Counterparties and Corporations to obtain Syncora's written consent to any amendment, modification, waiver, or early termination of the Swap Agreements in the event of a termination event or default. *See, e.g.* Hawkins Ex. I § 5(i) ("if any Event of Default . . . or Termination Event . . . occurs; then, in either such case, neither [UBS nor the Corporations] shall designate an Early Termination Date . . . without the prior written consent of the Swap Insurer [Syncora]"). Consequently, Syncora's written consent is required for any modification or termination of the Swap Agreements. *See id.; see also* QE Decl. Ex. C (Contract Administration Agreement 2006) § 6.9.2(2) ("any Insurer not then in default . . . shall . . . control all actions that may be taken by any Specified Hedge Counterparty that is the beneficiary of such Credit insurance, including . . . for the purposes of giving all other directions, consents and waivers that such Specified Hedge Counterparty may give"); QE Decl. Ex. D (2006 GRS Service Contract) § 9.02(a) (similar).[4]

---

[4] Defendants contend that they have a unilateral right to terminate the Swap Agreements without Syncora's consent. Defendants' Motion at 7. This is not the case, and is the subject of this lawsuit. Whether pursuant to a declared Event of Default under Section 5 of the Master Swap Agreements, or pursuant to Defendants' optional termination right under Part 6 of the Amended and Restated Schedules thereto, to terminate the Swap Agreements, Defendants must designate a Termination Date under Section 6 of the Master Swap Agreements. *See* Hawkins Decl. Exs. F and G. Under the plain terms of the Swap Agreements, Defendants cannot designate such a termination date without Syncora's consent. *See* Hawkins Decl. Ex. G at Part 5. Syncora's consent rights are further confirmed through provisions under related agreements which provided

### C. The Forbearance Agreement And The Swap Counterparties' Attempt To Manufacture Bankruptcy Court Jurisdiction

On July 15, 2013—just days before the City of Detroit filed for bankruptcy on July 18, 2013—the Swap Counterparties, the Corporations, and the City (the "Forbearance Agreement Parties") entered into the Forbearance Agreement. *See* Hawkins Decl. Ex. D. Among other things, the Forbearance Agreement grants the City—a non-party to the Swap Agreements—an option to direct the Swap Counterparties to terminate the Swap Agreements. *See* Hawkins Decl. Ex. D §§ 1, 3. In that agreement, for the first time in the years since the Swap Agreements were negotiated, the Swap Counterparties represented (falsely) that they have the contractual right to unilaterally terminate the Swap Agreements. *See id.* at 2 ("WHEREAS . . . it is *the view of UBS* that UBS has the right (but not the obligation) to terminate the UBS Swap Agreements. . .") (emphasis added). The Forbearance Agreement, however, does not purport to modify or amend the Swap Agreements—which, as noted above, cannot be done without Syncora's consent. *See e.g.* Hawkins Ex. I § 5(i). Under the terms of the Forbearance Agreement, the City has until March 13, 2014 to exercise its option to direct the Swap Counterparties to terminate the Swap Agreements. *See* Defendants' Motion at 9.

Given the timing, it appears that a primary reason that the Swap Counterparties granted the City an option to direct them to terminate the Swap Agreements was to manufacture federal bankruptcy court jurisdiction over any state law contract dispute between Syncora and the Swap

---

Syncora with similarly broad protection. *See e.g.* QE Decl. Ex. E (2006 PFRS Service Contract), § 9.02(a) ("[a]t the request of the City and with the prior written consent of the Insurer…the Corporation shall terminate any Stated Hedge"). Moreover, Defendants' contention that Syncora lost its consent rights as it no longer maintains a claims-paying ability rating of at least A- or a financial strength rating of at least A3 is wrong. At most, Syncora's failure to maintain such ratings provides the Service Corporations with the ability to declare an Event of Default—which they have not done. *See* Hawkins Decl. Ex. G § 5(b). Assuming such an Event of Default is ever declared, it would not impair Syncora's consent rights.

7

## CONCLUSION

For the foregoing reasons, Defendants' Motion to transfer venue to the Eastern District of Michigan should be denied.

DATED: New York, New York
August 10, 2013

        QUINN EMANUEL URQUHART &
          SULLIVAN, LLP

By: s/ Jonathan Pickhardt
Jonathan E. Pickhardt
Susheel Kirpalani
Jake M. Shields
Nicholas J. Calamari
Monica Tarazi
51 Madison Avenue, 22nd Floor
New York, New York  10038
(212) 849–7000

*Attorneys for Syncora Guarantee Inc.*