November 4, 2013

Honorable Michigan Attorney General Bill Schuette
P.O. Box 30212
Lansing, MI 48909

Re: Application for Quo Warranto against Mike Duggan, in his official capacity as the Mayor-Elect of the City of Detroit.

Dear Attorney General Schuette:

My name is Robert Davis, and as Director of Citizens United Against Corrupt Government ("Citizens United"), a Michigan nonprofit corporation, I am respectfully submitting this written communication/application on their behalf pursuant to Michigan Court Rule ("MCR") 3.306(B)(3) respectfully requesting for you, in your official capacity as Michigan Attorney General, to bring an action of Quo Warranto against Mike Duggan, in his official capacity as the Mayor-Elect of the City of Detroit, pursuant to MCR 3.306(B)(1)(b). This request is submitted, in the event that Mike Duggan is elected mayor during the November 5, 2013 General Election. Mike Duggan is usurping and/or wrongfully holding and/or exercising the "public office" of Mayor of the City of Detroit as a result of him failing to file the requisite nominating petitions as set forth in the 2012 Detroit City Charter and affidavit of identity in accordance with Michigan Election Law when he filed his declaration of intent to run as a write-in candidate for the August 2013 Primary Election. Consequently, his subsequent nomination and election to the office of Mayor of the City Detroit during the November 5, 2013 General Election shall be declared void as a matter of law. In accordance with MCR 3.306(3)(a), on behalf of Citizens United, I hereby offer to provide you and/or your office with a bond and/or any and all other security you may deem necessary to indemnify the state against all costs and expenses of the action.

Page **1** of **11**

13-53846-tjt    Doc 2102-7    Filed 12/13/13    Entered 12/13/13 13:07:34    Page 1 of 11

Although I submit this written communication to you requesting that you bring forth a Quo Warranto action in the appropriate circuit court or court of appeals on this matter, the Michigan Court Rules provides an opportunity for Citizens United to bring forth an action as a nonprofit corporation upon your refusal. Citizens United respectfully prefers to bring forth the action themselves considering the amount of more serious cases your office is inundated with. Citizens United believes they can provide this case with the attention it needs considering this is of a local issue. Therefore, I respectfully request that you provide a written denial as quickly as possible so that Citizens United can petition the appropriate circuit court or court of appeals expeditiously pursuant to MCR 3.306(3)(b).

Although Citizens United prefers to bring the case themselves, please find outlined herein a written synopsis of the facts of this case below.

## Facts and Legal Arguments

As you are aware, Mike Duggan's name was removed from the August 6, 2013 Primary Election Ballot as a result of his failure to meet the qualification requirements as set forth in § 2-101 of the 2012 Detroit City Charter as amended. As the Court of Appeals held in *Barrow v Detroit Election Commission*, 301 Mich App 404, at 417:

> "For the reasons expressed, the plain and unambiguous language of the carter requires a candidate to be a registered voter of Detroit one year prior to filing for office. As noted, it is undisputed that Duggan was not. Hence, unless there is some independent impediment to enforcing this charter provision against Duggan, he is ineligible to be placed on the ballot for mayor in the August 2013 primary." [*Barrow v Detroit Election Commission*, 301 Mich App 404, at 417].

Accordingly on July 1, 2013, Mike Duggan filed his Declaration of Intent to be a Write-In Candidate with the Detroit City Clerk and Election Commission. It is undisputed that at that

time, Mike Duggan did not file any new or additional nominating petitions to run as a write-in candidate for the office of mayor, nor did Mike Duggan file a new affidavit of identity, as required under MCL § 168.558 of Michigan Election Law. The *only* document Duggan filed with the City Clerk on July 1, 2013, was his Declaration of Intent to be a write-in candidate for the office of mayor for the August 6, 2013 Primary Election.

As noted by this Court in *Barrow*, "Michigan statutory law provides that city's charter governs qualifications [and the method of nomination] for persons running for office, MCL § 168.321(1)." *Barrow v Detroit Election Commission*, 301 Mich App 404, at 413. MCL § 168.321(1) states:

> (1) ***Except as provided in*** subsection (3) and *sections 327, 641, 642*, and *644g*, **the qualifications, nomination**, *election*, appointment, term of office, and removal from office of a city officer **shall be in accordance with the charter provisions governing the city**. (Emphasis supplied).

Section 2-101 of the 2012 Detroit City Charter, as amended, sets forth qualifications a person must meet in order to qualify to run as a candidate for elective office in the City of Detroit. Section 2-101 of the Detroit City Charter states in relevant part:

> "A person seeking elective office must be a citizen of the United States, a resident and a qualified and registered voter of the City of Detroit for one (1) year at the time of filing for office, and retain that status throughout their tenure in any such elective office…."

It is undisputed that Duggan filed *to run as a write-in candidate* on July 1, 2013 when he filed his Declaration of Intent *to become a write-in candidate* with the Detroit City Clerk. Therefore, the trial court was correct in determining that as of the date Duggan filed his Declaration of Intent to become a write-in candidate on July 1, 2013, he in fact met the qualifications set forth in § 2-101 of the 2012 Detroit City Charter. However the trial court

Page **3** of **11**

13-53846-tjt    Doc 2102-7    Filed 12/13/13    Entered 12/13/13 13:07:34    Page 3 of 11

erred, when the trial court ignored the *nomination requirements that are applicable to all candidates*, including write-in candidates, and set forth in § 3-109 of the 2012 Detroit City Charter.

> Section 3-109 of the 2012 Detroit City Charter states in relevant part:
> "***A candidate for nomination* to an elective city office *shall* file with the City Clerk a non-partisan nominating petition** consisting of one (1) or more petition forms."
> (Emphasis supplied).

Section 3-109 of the 2012 Detroit City Charter further provides, in paragraph two of said section, the number of signatures *that are required*. Paragraph two of § 3-109 of the 2012 Detroit City Charter states:

> "The candidate's petition shall be signed by a number of voters of the City equal to not more than one percent (1%) nor less than one-fourth percent (1/4%) of the total number of votes cast in the preceding Regular City Election for the office which the candidate seeks."

Thus, it is evident *from the plain reading of § 3-109 of the 2012 Detroit City Charter*, a candidate, *including a write in candidate*, is **required to file** nonpartisan nominating petitions containing *the requisite signatures* set forth in paragraph two of § 3-109 of the 2012 Detroit City Charter.

Duggan failed to file new non-partisan nominating petitions when he filed his Declaration of Intent to run as a write-in candidate on July 1, 2013.

As noted by this Court in *Barrow*:

> "When reviewing the provisions of a home rule city charter, we apply the same rules that we apply to the construction of statutes. *Detroit v Walker*, 445 Mich 682, 691; 520 NW2d 135 (1994). The provisions are to be read in context, with the plain and ordinary meaning given to every word. *Driver v Naini*, 490 Mich 239, 247' 802

Page **4** of **11**

13-53846-tjt    Doc 2102-7    Filed 12/13/13    Entered 12/13/13 13:07:34    Page 4 of 11

NW2d 311 (2011). Judicial construction is not permitted when the language is clear and unambiguous. *Id.* Courts apply unambiguous statutes as written. *Id.*

"Alternately, when we "interpret" a statute, the primary goal must be to ascertain and give effect to the drafter's intent, and the judiciary should presume that the drafter intended a statute to have the meaning that it clearly expresses. *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011). This Court determines intent by examining the language used. *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n* (On Rehearing), 484 Mich 1, 13; 795 NW2d 101 (2009)" [*Barrow v Detroit Election Commission,* 301 Mich App 404, at 413-414].

Thus at issue is the language and phrase "*a candidate for nomination to an elective city office*" that is contained in § 3-109 and whether or not it applied to Duggan as a write-in **candidate for nomination to an elective city office** in the August 2013 Primary Election. The 2012 Detroit City Charter in § 2-105(A)(13) defines the terms "elective officers" to mean "the Mayor, each member of the City Council, elected Board of Police Commissioners and the City Clerk." See *Barrow, supra* at p 408.

However, the 2012 Detroit City Charter does not provide a definition for the term "candidate" as it is used in the Charter. Thus, "when a statute does not define words contained within it, we must construe and understand them according to the common and approved usage of the language." *Davis v Detroit Financial Review Team*, 296 Mich App 568, at p 592. This Court has defined, *in three (3) separate cases: Grand Rapids v Harper*, 32 Mich App 324; 188 NW2d 668 (1971); *Okros v Myslakowski*, 67 Mich App 397; 241 NW2d 223 (1976); *Gallagher v Keefe*, 232 Mich App 363; 591 NW2d 297 (1998), the term "*candidate*" and has thus provided clarity on when a person is considered a candidate for an elective office.

In *Grand Rapids v Harper*, to settle an election dispute, this Court defined the term "candidate" as used in a local city charter as follows:

"Finally, defendant maintains that one is not a true 'candidate' for office until he has been nominated in the primary. Plaintiffs, on the other hand, maintain the word "candidate" applies to persons running wither in primary or regular elections. Unfortunately, the city charter does not define "candidate". We must therefore look elsewhere for the solution to our problem.

"Counsel for the parties have not cited, and we have been unable to find, a single Michigan case which is squarely in point. It appears, however, that the great majority of state and Federal courts which have passed upon the question have adopted a definition of "candidate" similar to that set forth in the New York case *Matter of Burns v Wiltse* (1951), 2000 Misc 3556, 357 (108 NYS 2d 62, 65):

"The term 'candidate' is not defined in the election law. The meaning of the term is that ordinarily and customarily understood. Primarily it means one who seeks an office or honor; the secondary meaning is one who is selected by others as a contestant for office."

"**In accordance with the weight of authority, we hold that *a participant in a primary election is a candidate for office within the meaning of the charter…*"** [*Grand Rapids v Harper*, 32 Mich App 324, at p 329-330]. (Emphasis supplied).

The definition the Court of Appeals established for the term "*candidate*" as so used in the local city charter in *Grand Rapids v Harper*, has been quoted and cited with approval in two subsequent election cases decided by the Court of Appeals. In *Okros v Myslakowski*, 67 Mich App 397, at p 401-402, citing *Grand Rapids v Harper*, the Court of Appeals held: "**One becomes a candidate when he files for election to office**." (Emphasis supplied). And in *Gallagher v Keefe*, 232 Mich App 363 at p 374, citing and quoting with approval *Grand Rapids v Harper*, and *Okros v Myslakowski*, the Court of Appeals further held:

"Even if we agreed with defendant that this Court's statement in *Okros, supra* at 401-402, was dicta, we would adopt the reasoning of the panel in *Okros* and hold in this case that the status of a candidate regarding residency and voter requirements is determined as of the date that the candidate files for election to office, not the date of

the primary…. **Defendant became a candidate by filing an affidavit of identification with the clerk's office and paying the filing fee**. See MCL 168.558(1); MSA 6.1558(1); *Grand Rapids, supra* at 330 ("**a participant in a primary election is a candidate for office**"). (Emphasis supplied).

Thus, it is clear from the Court of Appeals' holdings in *Grand Rapids v Harper, supra; Okros v Myslakowski, supra; and Gallagher v Keefe, supra*, that Duggan was a "*candidate*" within the meaning of § 3-109 of the 2012 Detroit City Charter. This is simply because Duggan was, undeniably, "**a participant in a primary election" and thus was "a candidate for office**." *Grand Rapids v Harper*, supra at 330. Accordingly, Duggan was required to and subject to, the filing requirements of the 2012 Detroit City Charter including in particular the filing of nominating petitions as required in § 3-109 of the 2012 Detroit City Charter. He was required to so file when he filed his declaration of intent to run as a write-in candidate on July 1, 2013 for the August Primary Election.

If Duggan and Duggan for Mayor Committee were to assert the argument that their previous petitions filed on April 2, 2013 must satisfy this requirement, Citizens United will simply direct your attention to the Court of Appeals' holding in *Barrow, supra*. That as a result of the Court of Appeals determining that Duggan *did not meet the eligibility requirements at the time he filed his initial nominating petitions* on April 2, 2013 he could not be considered a candidate because such nominating petitions and affidavit of identification, were VOID. Thus, Duggan, to become a candidate, he was required to comply with the 2012 Detroit City Charter. He was required to file nominating petitions at the time he filed his declaration of intent to become a write-in candidate for the office of mayor on July 1, 2013 for the August Primary Election. He was not – *by the Court of Appeals' own decision – a candidate* on July 1, 2013. He

was not a candidate by the Court of Appeals' own decision and he even so acknowledged same publicly prior to July 1, 2013.

It can be anticipated that Duggan and Duggan for Mayor Committee will also attempt to assert the argument that MCL § 168.737a of Michigan Election Law -- which requires a person seeking to have his votes counted by the board of election inspectors as a write-in candidate -- was the *only* filing requirement Duggan was required and obligated to file.  But Citizens United must direct your attention back to MCL § 168.321 of Michigan Election Law, which clearly states that: "the qualifications, nomination, election, appointment, term of office, and removal from office of a city officer *shall be* in accordance with the charter provisions governing the city."  (Emphasis supplied).  As analyzed above, § 3-109 applies "to *a candidate for nomination to an elective city office*."  Duggan was undeniably a "candidate for nomination to an elective city office."  He announced that he was to become a write-in candidate for mayor.  Thus, when Duggan filed his declaration of intent to be a write-in candidate he also *had to file new nominating petitions* as a write-in candidate as well.  MCL § 168.737a, which requires a person to file a declaration of intent, *does not* replace or substitute for the nominating petition requirements as set forth in § 3-109 of the 2012 Detroit City Charter.  MCL §168.737a simply adds *an additional* filing requirement for a person seeking to run as a write-in candidate.  In fact, MCL §168.321 does not include MCL §168.737a amongst the list of exempted statutes to which MCL §168.321 does not apply.   Thus, in reading these two statutes together, it is clear that **a person must adhere to the requirements as set forth in their local city charter as well as file a declaration of intent to run as a write-in candidate as set forth in MCL 168.737a**.

## Duggan Was Also Required to File A New Affidavit of Identification When He Filed to Run as A Write-In Candidate

As a result of being subject to the nominating petition requirement set forth in § 3-109 of the 2012 Detroit City Charter, Duggan was also required to file a new affidavit of identification as MCL § 168.558 requires. MCL § 168.558(1) states:

> (1) ***When filing a nominating petition***, qualifying petition, filing fee, or affidavit of candidacy ***for a*** federal, county, state, ***city***, township, village, metropolitan district, or school district ***office in any election***, **a candidate** *shall file with the officer* **with whom the petitions, fee, or affidavit is filed** *2 copies of an affidavit of identity*… (Emphasis supplied).

As noted, Duggan was required to file nominating petitions when he filed his declaration of intent to run as a write-candidate on July 1, 2013. Accordingly, the provisions of MCL §168.558(1) of Michigan Election Law were triggered. Duggan, at the time he filed his declaration of intent to run as a write-in candidate failed to file 2 copies of an affidavit of identity as required under MCL § 168.558(1). MCL § 168.558 provides the consequence for a person failing to file the required affidavit of identity when filing nomination petitions. MCL § 168.558(4) states in relevant part:

> (4) *An affidavit of identity shall include* a statement that as of the date of the affidavit, all statements, reports, late filing fees, and fines required of the candidate or any candidate committee organized to support the candidate's election under the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282, have been filed paid; and a statement that the candidate acknowledges that making a false statement in the affidavit is perjury, punishable by a fine up to $1,000.00 or imprisonment for up to 5 years, or both…..**An officer *shall not* certify to the board of election commissioners the name of a candidate who fails to comply with this section**. (Emphasis supplied).

Duggan failed to file a new affidavit of identity when he filed to run as a write-in candidate on July 1, 2013.  As further evidence that Duggan was required to file a new affidavit of identity when he filed to run as a write-in candidate, the declaration of intent that Duggan filed on July 1, 2013 does not contain *any* of the information that is required by MCL § 168.558. Certainly, the requirements for having a person's name printed on the ballot cannot be different – even lesser – than for a person running as a write-in candidate. They both are seeking the nomination in a primary election. Can unequal treatment advantage one and disadvantage the other?  It is equally clear that, as a consequence of Duggan failing to file a new affidavit of identity in accordance with MCL § 168.558 when he filed to run as a write-in candidate on July 1, 2013, the Detroit City Clerk and Election Commission *did not have the authority to place his name on the November General Election ballot*.

Thus unless a Court determines that the method of nomination as set forth in § 3-109 of the Detroit City Charter -- even though it does not so state -- is not applicable to write-in candidates, then it is clear that Duggan was required to file, *and did not file*, new nominating petitions containing the requisite signatures as set forth in § 3-109 of the 2012 Detroit City Charter and that Duggan was also required to file, a*nd did not file*,  a new affidavit of identity with the Detroit City Clerk, when he filed his declaration of intent to run as a write-in candidate on July 1, 2013.

## Conclusion

Therefore, I hope you address this request ASAP, and honor my request to allow Citizens Untied to bring this action so that they can proceed immediately in the appropriate circuit court or court of appeals.

Respectfully submitted,

Robert Davis
Director, Citizens United
180 Eason
Highland Park, MI 48203

Cc: Heather Meingast, Assistant Attorney General for Law via email