STATE OF MICHIGAN
IN THE 3RD JUDICIAL CIRCUIT COURT
FOR THE COUNTY OF WAYNE

**CITIZENS UNITED AGAINST CORRUPT GOVERNMENT,** Case No. 13--AW

A Michigan Nonprofit Corporation,                    **Hon. Lita M. Popke**

      PETITIONER/PLAINTIFF,

-v-

**MICHAEL DUGGAN**,

      RESPONDENT/DEFENDANT.

_____/

ANDREW A. PATERSON (P18690)
Attorney for Petitioner/Plaintiff
46350 Grand River Ave., Suite C
Novi, MI 48374
(248) 568-9712

_____/

### *EMERGENCY*
### *EX PARTE* APPLICATION FOR LEAVE
### TO FILE COMPLAINT FOR WRIT OF QUO WARRANTO

PETITIONER, CITIZENS UNITED AGAINST CORRUPT GOVERNMENT, by

and through its attorney, Andrew A. Paterson, and in support of its *Emergency Ex Parte*

*Application for Leave to File Complaint for Writ of Quo Warranto* ("**Application**") to

remove Respondent/Defendant, pursuant to MCR 3.306(B)(2), states the following:

## I.      GENERAL ALLEGATIONS

### The Parties

1.      Petitioner, Citizens United Against Corrupt Government ("**Petitioner**"), is a

Michigan nonprofit corporation organized for the purpose of promoting and ensuring

corrupt-free and law-abiding civic government through social actions and court

actions designed to eliminate unlawful illegal actions by all governmental officials,

representatives and entities in all levels of government**.** Petitioner's director, Robert

Davis, serves as the Director of Petitioner and is a resident and qualified registered elector in the County of Wayne, State of Michigan ("**Davis**").

2.    Davis, on behalf of Petitioner, sent the written request/application to the Attorney General requesting that he bring a *quo warranto* action against the named Respondents. Accordingly, Petitioner is the proper party that has standing to bring this *quo warranto* action to remove the named Respondents. See *Gallagher v Keefe*, 232 Mich App 363, 369; 591 NW2d 297 (1998) ("the only restriction on the face of the court rule is that the *person* who is granted leave to bring the action must be the one who gave the information to the Attorney General. MCR 3.306(B)(1); MCR 3.306(B)(3)(b)."). (**See Davis' affidavit attached hereto as Exhibit A**).

3.    As set forth in further detail, *infra*, Petitioner, as a domestic nonprofit corporation, is a "person" that has standing to bring this action in *quo warranto*.

4.    In accordance with the 2012 Detroit City Charter, as amended, the City of Detroit held its municipal general election on Tuesday, November 6, 2013 whereby the electors of the City of Detroit elected a mayor, city clerk, nine members of the Detroit City Council, and members of the Detroit Police Commission.

5.    On November 6, 2013, Respondent/Defendant Michael Duggan ("Respondent") received the highest number of votes in the race for Mayor of the City of Detroit. The Wayne County Board of Canvassers certified the general election results on or about November 21, 2013. Respondent's term of office is to commence on January 1, 2014.

6.    Although Respondent's term of office does not commence until January 1, 2014, quo warranto proceedings are the appropriate and proper proceedings to enjoin

Respondent from assuming the duties of the office of Mayor of the City of Detroit on January 1, 2014. As the Michigan Court of Appeals determined in *Davis v Chatman*, 292 Mich App 603, 624; 784 NW2d 823 (2011):

> "Notably, the fact that a person has yet to assume office is not a bar to this statute's [quo warranto] application. *In re Servasss*, 484 Mich 634, 643 n 15; 774 NW2d 46 (2009) (opinion by WAEVER J.) (rejecting the notion that a quo warranto action "may only be brought for 'claims that an office is *currently* exercising an invalid title office'") (citation omitted).

7. Accordingly, Petitioner seeks the removal of Respondent from the office of Mayor of the City of Detroit prior to his term commencing on January 1, 2014.

8. Furthermore, *quo warranto* is the proper proceeding to have Respondent's subsequent nomination and election to office declared void as a result of Respondent's failure to meet the nomination requirements as set forth in the 2012 Detroit City Charter. See *Okros v Myslakowski*, 67 Mich App 397, 401-402; 241 NW2d 223 (1976).

### A. The Nature of the Quo Warranto Action

9. Petitioner's action is in *quo warranto* and seeks thereby Respondent's removal for holding office illegally. "**[Q]uo warranto is the proper and *exclusive remedy* to try title to office finally and conclusively**." *Layle v Adjutant Gen. of Mich.*, 384 Mich 638, 641; 186 NW2d 559 (1971). (Emphasis supplied). And see, numerous Court of Appeals and Michigan Supreme Court decisions that have held that "[Q]uo warranto is the proper remedy to try title to office finally and conclusively." *Wayne Rep Comm v Bd of Commers*, 70 Mich App 620, 627; 247 NW2d 571 (1976), citing *Layle, supra*, and see, *Attorney General, ex rel Cook v*

*Burhans*, 304 Mich 108; 7 NW2d 370 (1942); *Stokes v Clerk of the Monroe County Canvassers*, 29 Mich App 80; 184 NW2d 746 (1970).

10. This Court has jurisdiction to decide the merits of a *quo warranto* action. This Court can invoke the *quo warranto* "exclusive remedy" of removal of Respondent from the office of Mayor of the City of Detroit.

11. For the purposes of this action in *quo warranto*, and for which this Application seeking "leave" to file Petitioner's Complaint is sought, it is alleged that the City of Detroit is a "public corporation." (See, *Dartland v. Hancock Public Schools*, 25 Mich App 14; 181 NW2d 41 (1970)[1].)

12. For the purposes of this action in quo warranto, and for which this Application seeking "leave" to file Petitioner's Complaint is sought, it is alleged that the Respondent "unlawfully holds or exercises a state office" in a "public corporation" that was created by "this state's authority." See, *Dartland v. Hancock Public Schools*, *supra fn 1*.

13. Petitioner alleges that its Application herein is made by a Petitioner that is "a person" who has the necessary standing to bring this action against Respondent. Petitioner is a "person" with standing pursuant to MCR 3.306(B)(3)(a) and (b), because it did apply to the Michigan Attorney General and request that the Attorney General bring this *quo warranto* action against the Respondent. (**See Petitioner's November 4,**

---

[1] The Court determined that school districts are public corporations for purposes of *quo warranto* actions - "It is patent to us that … the School District of the City of Hancock is a 'public corporation'…" citing numerous other decisions so finding school districts public corporations in other contexts.

Page **4** of **23**

13-53846-tjt   Doc 2102-9   Filed 12/13/13   Entered 12/13/13 13:07:34   Page 4 of 23

**2013 Quo Warranto Request to the Attorney General attached hereto as Exhibit B)**.

14.  MCR 3.306(B)(3)(b) states: "If, … the Attorney General refuses to bring the action, the person may apply to the appropriate court for leave to bring the action himself or herself." Petitioner is a "person" who has acquired standing to bring this action. See, *City of Grand Rapids v. Harper*, 32 Mich App 324, 328; 188 NW2d 668 (1971) ("the word 'person' is commonly held to *embrace bodies politic and corporate* as well as individuals.") (Emphasis supplied).

15.  Petitioner has standing to file this Application pursuant to MCR 3.306(B)(3)(b), because the Attorney General has declined to file the action himself. **(See Letter from Attorney General, Bill Schuette, to Petitioner dated December 9, 2013 a copy being attached hereto as Exhibit C)**.

16.  The *quo warranto* statute, MCL 600.4501, as well as MCR 3.306, authorizes Petitioner, as a "person", to bring this action, for which this Application seeks leave to file its Complaint.

17.  MCL 600.4501 states in relevant part: "The attorney general shall bring an action for quo warranto when the facts clearly warrant the bringing of that action. If the attorney general receives information from a private party and refuses to act, that *private party may bring the action upon leave of court*." And see *Davis v Chatman*, 292 Mich App 603, 613-614; 808 NW 2d 555 (2011).

### B.  This Court Has The Authority To Grant Petitioner's *Ex Parte* Application Without Petitioner Providing Any Notice To Respondents Of Its Application

18.  The Court has the right to grant *ex parte*, Petitioner's Application to file its Complaint. Respondent is **NOT** required to receive notice of this Application. As

the Court of Appeals held in *Davis v Chatman*, 292 Mich App 603, at 612-613; 784

NW2d 823 (2011):

> Initially, we reject defendant's argument that plaintiff was required to provide notice before seeking leave to file for quo warranto. Neither the relevant court rule (MCR 3.306) nor the statute (600.4501) contains a notice requirement, and our Supreme Court has found that fact dispositive of this issue:
>
>> 'It will be observed that the statute does not require notice. There appears to be no necessity for notice. It is the initial step in the proceeding. Its object is to obtain permission to take out a summons in *quo warranto*. Leave of the court is required by the statute to prevent an extravagant use of the writ unless there is some real basis for it. <u>Failure to give notice to the defendant does not deprive him of any substantial right. He has his full day in court after leave is granted and summons is served on him.</u> *<u>To require notice results in giving the defendanttwo flings at his defense.</u>* If defendant be given notice, of the application he will make the same showing that he afterward does on the merits. If the matter is of such character that the circuit judge would like to hear from defendant before granting leave, he may always make an order requiring him to show cause why leave should not be granted. This leaves the matter open so that no harm can result. [*Ferzacca v. Freeman*, 240 Mich 682, 684-685; 216 NW 469 (1927)**.]**

*Davis v Chatman*, 292 Mich App 603, at 612-613. (Emphasis supplied.)

19. Accordingly, Petitioner is not obligated to provide Respondent with notice of this *Ex Parte* Application. This Court has the power and authority to grant the requested relief and permit Petitioner to file its Complaint, without receiving a response or argument by the Respondent. *Davis v Chatman, supra*, 292 Mich App at 612-613.

## II.    Jurisdiction of the 3rd Judicial Circuit Court

20. MCR 3.306 governs actions in *quo warranto,* and section A(1) thereof, provides this Court with original jurisdiction. It states:

**3.306 Quo Warranto**

(A) **Jurisdiction.**

> **(1)** **An action for quo warranto against a person who usurps, intrudes into, or unlawfully holds or exercises a state office, or against a *state officer* who does or suffers an act that by law works a forfeiture of the office, must be brought in the Court of Appeals.**
>
> **(2)** All other actions for quo warranto must be brought in the circuit court.
>
> **(B)** **Parties.**
>
> **(1)** **Actions by Attorney General.  An action for quo warranto is to be brought by the Attorney General when the action is against:**
>
> **(a)** **a person specified in subrule (A)(1);**
>
> **(b)** **a person who usurps, intrudes into, or wrongfully holds or exercises an office in a public corporation created by this state's authority;**
>
> ***********
>
> **(2)** **Actions by Prosecutor or Citizen.**  Other actions for quo warranto may be brought by the prosecuting attorney of the proper county, without leave of court, **or by a citizen of the county by special leave of the court.**
>
> **(3)** **Application to Attorney General.**
>
> **(a)**  **A person may apply to the Attorney General to have the Attorney General bring an action specified in subrule (B)(1).**  The Attorney General may require the person to give security to indemnify the state against all costs and expenses of the action.  The person making the application, and any other person having the proper interest, may be joined as parties plaintiff.
>
> **(b)** **If, on proper application and offer of security, the Attorney General refuses to bring the action, the person may apply to the appropriate court for leave to bring the action himself or herself.**
>
> ***************
>
> **(C)** **Venue.  The general venue statutes and rules apply to actions for quo warranto, unless a specific statute or rule contains a special venue provision applicable to an action for quo warranto.**
>
> **(D)** Hearing.  The court may hear the matter or may allow the issues to be tried by a jury.(Emphasis added.)

21.     The 3^rd^ Judicial Circuit Court for the County of Wayne, has jurisdiction over

Petitioner's Application and Complaint for the reason that Respondent, in his official

capacity as the ***"Mayor-Elect"*** of the City of Detroit, is **not** a "state officer" and

Respondent's office is **not** a "state office."  Pursuant to MCR 3.306(A)(2), a *quo warranto* action against Respondent, must be brought in this court.

22. MCR 3.306(A) states:

> (1) An action for quo warranto against a person who usurps, intrudes into, or unlawfully holds or exercises a state office, or against a state officer who does or suffers an act that by law works a forfeiture of the office, must be brought in the Court of Appeals.
>
> **(2) All other actions for quo warranto must be brought in the circuit court.** (Emphasis supplied).

23. "[A] proceeding in the nature of quo warranto pertaining to a state officer must be brought in the Court of Appeals, **but any other quo warranto proceeding must originate in the circuit court**."  *Williams v Lansing Bd. of Ed.*, 69 Mich App 654, 660-661; 245 NW2d 365 (1976).  (Emphasis supplied).

24. In accordance with the 2012 Detroit City Charter, as amended, Respondent is a local elected official of the City of Detroit, whose terms commences **on January 1, 2014**.

25. Accordingly, pursuant to MCR 3.306(A), this Circuit Court is the proper venue for this *quo warranto* action.

## II.  <u>Factual and Legal Allegations Demonstrate Leave Must Be Granted</u>

26. On June 11, 2013, Wayne County Circuit Court Judge Lita M. Popke ("Judge Popke") issued a thorough and well-written 22-page opinion removing Respondent's name from the list of certified candidates for the office of Mayor for the August 2013 Primary.  On June 18, 2013, the Michigan Court of Appeals issued a published opinion AFFIRMING Judge Popke's June 11, 2013 Opinion and Order removing

Respondent's name from the August 2013 Primary Election. See *Barrow v Detroit Election Commission*, 301 Mich App 404 (2013).

27. On June 19, 2013, Respondent announced that he would not be appealing the Court of Appeals' June 18, 2013 Published Opinion and that he would not be commencing a write-in candidacy. However, on or about June 28, 2013, Respondent announced that he would be seeking a write-in candidacy for the office of Mayor of City of Detroit. On July 1, 2013, Respondent filed his Declaration of Intent to be a Write-In Candidate with the Detroit City Clerk and Election Commission.

28. On that same day, July 1, 2013, mayoral candidate Tom Barrow ("Barrow") filed an official challenge with the Detroit City Clerk and Elections Commission challenging the legality of Respondent's write-in candidacy.

29. One day later, On July 2, 2013, Respondent, sent a formal written request, via facsimile, to the Michigan Secretary of State respectfully requesting that she take supervisory control over the issue of whether Respondent could legally run as a write-in candidate for the office of Mayor of the City of Detroit, after he was removed from the primary ballot for failing to meet the one (1) year voter registration requirement as set forth in the 2012 Detroit City Charter.

30. On July 8, 2013, Barrow and D. Michelle White ("Plaintiffs"), and Petitioner filed an emergency complaint for writ of mandamus, declaratory judgment, and injunctive relief accompanied with an emergency ex parte motion for temporary restraining order. Judge Popke reviewed the pleadings as filed and set a time for the Defendants to respond on or before July 12, 2013 at noon, with Plaintiffs and Petitioner's response due on July 15, 2013 at 9 a.m. Judge Popke further scheduled a hearing on

Plaintiffs' and Petitioner's emergency motion for temporary restraining order to be held on July 15, 2013 at 2 p.m.

31.     Over the objections of Petitioner's counsel, the trial court proceeded to dispose of the entire complaint in spite of the fact that Plaintiffs and Petitioner only filed an emergency motion for temporary restraining order.  Nonetheless, the Judge Popke proceeded and after hearing argument, Judge Popke entered an order denying Plaintiffs' and Petitioner's emergency motion for temporary restraining order and further granted Defendants' motion for summary disposition under MCR 2.116(C)(10).  Petitioner and Plaintiffs have since appealed Judge Popke's ruling to the Michigan Court of Appeals.

32.     **It is important to note that Judge Popke DID NOT address nor rule on the legal issues presented in this quo warranto action**.

33.     During the August 2013 Primary Election, Respondent received the highest number of votes of all candidates running for the office of Mayor of the City of Detroit.  Consequently, Respondent's name appeared on the November 5, 2013 General Election ballot.  On November 5, 2013, Respondent received the highest number of votes in the General Election and thus was elected Mayor of the City of Detroit to a term commencing January 1, 2014.

34.     As this Court is aware and as noted above, Respondent's name was removed from the August 6, 2013 Primary Election Ballot as a result of his failure to meet the qualification requirements as set forth in § 2-101 of the 2012 Detroit City Charter as amended.  As the Michigan Court of Appeals held in *Barrow, supra*:

> "For the reasons expressed, the plain and unambiguous language of the
> carter requires a candidate to be a registered voter of Detroit one year prior to

filing for office.  As noted, it is undisputed that Duggan was not.  Hence, unless there is some independent impediment to enforcing this charter provision against Duggan, he is ineligible to be placed on the ballot for mayor in the August 2013 primary." [*Barrow v Detroit Election Commission*, 301 Mich App 404, at 417].

35.  Accordingly, on July 1, 2013, Respondent filed his Declaration of Intent to be a Write-In Candidate with the Detroit City Clerk and Election Commission.  It is undisputed that at that time, Respondent did not file any new or additional nominating petitions to run as a write-in candidate for the office of mayor nor did Respondent file a new affidavit of identity as required under MCL 168.558 of Michigan Election Law.  The only document Respondent filed with the Detroit City Clerk on July 1, 2013 was his Declaration of Intent to be a write-in candidate for the office of mayor for the August 6, 2013 Primary Election.

36.  As noted by the Michigan Court of Appeals in *Barrow*: "Michigan statutory law provides that city's charter governs qualifications [and the method of nomination] for persons running for office, MCL 168.321(1)."  *Barrow v Detroit Election Commission*, 301 Mich App 404, at 413.

37.  MCL 168.321(1) states:

> (1) ***Except as provided in*** subsection (3) and *sections 327, 641, 642*, and *644g, **the qualifications, nomination***, ***election***, appointment, term of office, and removal from office of a city officer ***shall be in accordance with the charter provisions governing the city***.  (Emphasis supplied).

38.  Section 2-101 of the 2012 Detroit City Charter, as amended, sets forth qualifications a person must meet in order to qualify to run as a candidate for elective office in the City of Detroit.  Section 2-101 of the Detroit City Charter states in relevant part:

"A person seeking elective office must be a citizen of the United States, a resident and a qualified and registered voter of the City of Detroit for one (1) year at the time of filing for office, and retain that status throughout their tenure in any such elective office…." **(See § 2-101 of the 2012 Detroit City Charter attached hereto as Exhibit D).**

39.     It is undisputed that Respondent filed to run as a write-in candidate on July 1, 2013 when he filed his Declaration of Intent to be a write-in candidate with the Detroit City Clerk.  Therefore, Judge Popke was correct in determining that as of the date Respondent filed his Declaration of Intent to be a write-in candidate on July 1, 2013, he in fact met the qualifications as set forth in § 2-101 of the 2012 Detroit City Charter.  However, where Judge Popke failed to rule on and ignored were the nomination requirements that are applicable to all candidates, including write-in candidates, as set forth in § 3-109 of the 2012 Detroit City Charter.

40.     Section 3-109 of the 2012 Detroit City Charter states in relevant part:

"*A candidate for nomination* to an elective city office *shall* file with the City Clerk a non-partisan nominating petition consisting of one (1) or more petition forms."  (Emphasis supplied).  **(See Article 3 of the 2012 Detroit City Charter attached hereto as Exhibit E).**

41.     Section 3-109 of the 2012 Detroit City Charter further provides, in paragraph two of said section, the number of signatures that are required.  Paragraph two of § 3-109 of the 2012 Detroit City Charter states:

"The candidate's petition shall be signed by a number of voters of the City equal to not more than one percent (1%) nor less than one-fourth percent (1/4%) of the total number of votes cast in the preceding Regular City Election for the office which the candidate seeks."  **(See Article 3 of the 2012 Detroit City Charter attached hereto as Exhibit E).**

42.     Thus, it is evident from the plain reading of § 3-109 of the 2012 Detroit City Charter, a candidate, including a write in candidate, is required to file nonpartisan nominating petitions containing the requisite signatures set forth in paragraph two of § 3-109 of the 2012 Detroit City Charter.  Respondent failed to file new non-partisan nominating petitions when he filed his Declaration of Intent to run as a write-in candidate on July 1, 2013.

43.     As noted by the Court of Appeals in *Barrow*:

> "When reviewing the provisions of a home rule city charter, we apply the same rules that we apply to the construction of statutes. *Detroit v Walker*, 445 Mich 682, 691; 520 NW2d 135 (1994).  The provisions are to be read in context, with the plain and ordinary meaning given to every word. *Driver v Naini*, 490 Mich 239, 247' 802 NW2d 311 (2011).  Judicial construction is not permitted when the language is clear and unambiguous. *Id.*  Courts apply unambiguous statutes as written. *Id.*
>
> "Alternately, when we "interpret" a statute, the primary goal must be to ascertain and give effect to the drafter's intent, and the judiciary should presume that the drafter intended a statute to have the meaning that it clearly expresses. *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011).  This Court determines intent by examining the language used. *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n* (On Rehearing), 484 Mich 1, 13; 795 NW2d 101 (2009)" [*Barrow v Detroit Election Commission,* 301 Mich App 404, at 413-414].

44.     At issue here is the phrase "a candidate for nomination to an elective city office" that is contained in § 3-109 and whether it applied to Respondent as a *write-in* candidate for the August Primary Election.  The 2012 Detroit City Charter in § 2-105(A)(13) defines the terms "elective officers" to mean "the Mayor, each member of the City

Council, elected Board of Police Commissioners and the City Clerk." See *Barrow, supra* at p 408.

45. However, the 2012 Detroit City Charter does not provide a definition for the term "candidate" as used in the Charter. "[W]hen a statute does not define words contained within it, we must construe and understand them according to the common and approved usage of the language." *Davis v Detroit Financial Review Team*, 296 Mich App 568, at p 592.

46. The Michigan Court of Appeals, in three (3) separate cases, *Grand Rapids v Harper*, 32 Mich App 324; 188 NW2d 668 (1971); *Okros v Myslakowski*, 67 Mich App 397; 241 NW2d 223 (1976); *Gallagher v Keefe*, 232 Mich App 363; 591 NW2d 297 (1998), has defined the term "candidate" and have further provided clarity on when a person is considered a candidate for an elective office.

47. In *Grand Rapids v Harper*, to settle an election dispute, this Court defined the term "candidate" as used in a local city charter as follows:

> "Finally, defendant maintains that one is not a true 'candidate' for office until he has been nominated in the primary. Plaintiffs, on the other hand, maintain the word "candidate" applies to persons running wither in primary or regular elections. Unfortunately, the city charter does not define "candidate". We must therefore look elsewhere for the solution to our problem.

> "Counsel for the parties have not cited, and we have been unable to find, a single Michigan case which is squarely in point. It appears, however, that the great majority of state and Federal courts which have passed upon the question have adopted a definition of "candidate" similar to that set forth in the New York case *Matter of Burns v Wiltse* (1951), 2000 Misc 3556, 357 (108 NYS 2d 62, 65):

> "The term 'candidate' is not defined in the election law. The meaning of the term is that ordinarily and customarily understood. Primarily it means one who seeks an office or honor; the secondary meaning is one who is selected by others as a contestant for office."

> "**In accordance with the weight of authority, we hold that *a participant in a primary election is a candidate for office within the meaning of the charter…***" [*Grand Rapids v Harper*, 32 Mich App 324, at p 329-330]. (Emphasis supplied).

48. The definition the Court of Appeals established for the term "candidate" as used in the local city charter in *Grand Rapids v Harper*, has been quoted and cited with approval in two subsequent election cases decided by the Court of Appeas. In *Okros v Myslakowski*, 67 Mich App 397, at p 401-402, citing *Grand Rapids v Harper*, the Court of Appeals held: "**One becomes a candidate when he files for election to office.**" (Emphasis supplied).

49. And in *Gallagher v Keefe*, 232 Mich App 363 at p 374, citing and quoting with approval *Grand Rapids v Harper*, and *Okros v Myslakowski*, the Court of Appeals further held:

> "Even if we agreed with defendant that this Court's statement in *Okros, supra* at 401-402, was dicta, we would adopt the reasoning of the panel in *Okros* and hold in this case that the status of a candidate regarding residency and voter requirements is determined as of the date that the candidate files for election to office, not the date of the primary…. **Defendant became a candidate by filing an affidavit of identification with the clerk's office and paying the filing fee**. See MCL 168.558(1); MSA 6.1558(1); *Grand Rapids, supra* at 330 ("**a participant in a primary election is a candidate for office**"). (Emphasis supplied).

50.     Thus, it is clear from this Court's holdings in *Grand Rapids v Harper, supra; Okros v*

        *Myslakowski, supra; and Gallagher v Keefe, supra*, that Respondent was a

        "candidate" within the meaning of § 3-109 of the 2012 Detroit City Charter because

        Respondent was undeniably "**a participant in a primary election" and thus was "a**

        **candidate for office**." *Grand Rapids v Harper*, supra at 330.

51.     Accordingly, Respondent was subject to the filing of nominating petitions as set forth

        in § 3-109 of the 2012 Detroit City Charter when he filed his declaration of intent to

        run as a write-in candidate on July 1, 2013 for the August Primary Election.

        Additionally, just in case Respondent tries to assert the frivolous argument that the

        previous petitions that he filed on April 2, 2013 satisfies this requirement, Petitioner

        will simply direct this Court's attention to the Court of Appeals holding in *Barrow,*

        *supra*.

52.     As a result of the Court of Appeals determining that Respondent did not meet the

        eligibility requirements at the time he filed his initial nominating petitions on April 2,

        2013, said nominating petitions and affidavit of identification are VOID. Thus,

        Respondent was required to file ***new*** nominating petitions when he filed his

        declaration of intent to run as a write-in candidate for the office of mayor on July 1,

        2013 for the August Primary Election.

53.     It is anticipated that Respondent will also attempt to assert the frivolous argument that

        MCL 168.737a of Michigan Election Law, which requires a person seeking to have

        his votes counted by the board of election inspectors as a write-in candidate, was the

        only filing requirement Respondent was obligated to file. Petitioner directs this

        Court's attention back to MCL 168.321 of Michigan Election Law, which states: "***the***

*qualifications, nomination*, election, appointment, term of office, and removal from office of a city officer **shall be in accordance with the charter provisions governing the city**." (Emphasis supplied).

54.     As analyzed above, § 3-109 applies "to a candidate for ***nomination*** to an elective city office." Respondent was undeniably a "candidate for ***nomination*** to an elective city office" as a write-in candidate for mayor. Thus, when Respondent filed his declaration of intent to be a write-in candidate he also had to file new nominating petitions as a write-in candidate as well.

55.     MCL 168.737a, which requires a person to file a declaration of intent, does not replace the nominating petition requirements as set forth in § 3-109 of the 2012 Detroit City Charter. MCL 168.737a simply adds *an additional* filing requirement for a person seeking to run as a write-in candidate.

56.     In fact, MCL 168.321 does not include MCL 168.737a amongst the list of exempted statutes to which MCL 168.321 does not apply. Thus, in reading these two statutes together, it is clear that a person must adhere to the requirements as set forth in their local city charter as well as file a declaration of intent to run as a write-in candidate as set forth in MCL 168.737a.

**<u>Respondent Was Also Required to File A New Affidavit of Identification When He Filed to Run as A Write-In Candidate</u>**

57.     As a result of being subject to the nominating petition requirement as set forth in § 3-109 of the 2012 Detroit City Charter, Respondent Duggan was also required to file a new affidavit of identification as MCL 168.558 requires.

58.     MCL 168.558(1) states in pertinent part:

(1) ***When filing a nominating petition***, qualifying petition, filing fee, or affidavit of candidacy for a federal, county, state, ***city***, township, village, metropolitan district, or school district ***office in any election***, **a candidate *shall file with the officer* with whom the petitions, fee, or affidavit is filed *2 copies of an affidavit of identity*** … (Emphasis supplied).

59.  As noted above, Respondent was required to file nominating petitions when he filed his declaration of intent to run as a write-candidate on July 1, 2013. Accordingly, the provisions of MCL 168.558(1) of Michigan Election Law were triggered.

60.  Respondent, at the time he filed his declaration of intent to run as a write-in candidate, failed to file 2 copies of an affidavit of identity as required under MCL 168.558(1).

61.  MCL 1687.558 provides the consequence for a person failing to file the required affidavit of identity when filing nomination petitions. MCL 168.558(4) states in relevant part:

> (4) ***An affidavit of identity shall include*** a statement that as of the date of the affidavit, all statements, reports, late filing fees, and fines required of the candidate or any candidate committee organized to support the candidate's election under the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282, have been filed paid; and a statement that the candidate acknowledges that making a false statement in the affidavit is perjury, punishable by a fine up to $1,000.00 or imprisonment for up to 5 years, or both…..**An officer *shall not* certify to the board of election commissioners the name of a candidate who fails to comply with this section**. (Emphasis supplied).

62.  Respondent failed to file a new affidavit of identity when he filed to run as a write-in candidate on July 1, 2013. As further evidence that Respondent was required to file a new affidavit of identity when he filed to run as a write-in candidate, the declaration

of intent that Respondent filed on July 1, 2013 does not contain any of the information that is set forth in MCL 168.558. Certainly, the requirements for having a person's name printed on the ballot cannot be different for a person running as a write-in candidate considering they both are seeking the nomination in a primary election.

63. It is equally clear that as a consequence of Respondent failing to file a new affidavit of identity in accordance with MCL 168.558 when he filed to run as a write-in candidate on July 1, 2013, that the Detroit City Clerk and Election Commission did not have the authority to place his name on the November General Election ballot.

64. Thus, unless this Court determines that the method of nomination as set forth in § 3-109 of the Detroit City Charter is not applicable to write-in candidates, it is clear that Respondent was required to file new nominating petitions containing the requisite signatures as set forth in § 3-109 of the 2012 Detroit City Charter and Respondent was required to also file a new affidavit of identity with the Detroit City Clerk when he filed his declaration of intent to run as a write-in candidate on July 1, 2013.

**<u>Petitioner Has Met All Of The Legal Requirements Necessary For This Court To Grant Leave</u>**

65. On November 4, 2013, Petitioner:

   i) Submitted an application to the Attorney General, pursuant to MCR 3.306(B)(3), requesting the Attorney General to institute *quo warranto* proceedings against Respondent in this Court pursuant to MCR 3.306(B)(1)(a)&(b);

   ii) Such application was properly made pursuant to MCR 3.306(B)(3)and offered to provide any security deemed necessary to indemnify the state against all costs and expenses of the action;

iii)    Such application outlined the factual basis for, and necessity of, instituting a *quo warranto* action against Respondent.  (See, Petitioner's Quo Warranto Application to Attorney General Bill Schuette, dated July 30, 2013, attached hereto as **Exhibit B).**

66.    After a review of Petitioner's application (**Exhibit B**), on December 9, 2013, the Attorney General delivered to Petitioner his response, declining to file a *quo warranto* action against Respondent.  **(See, Attorney General's letter responding to Petitioner's application for *quo warranto* attached hereto as Exhibit C**).

67.    Petitioner has followed the requirements of the Michigan Court Rules, and the statute, providing for a *quo warranto* action and writ, and Petitioner, pursuant to MCR 3.306(B)(3)(b), submits to this Court this Application for leave to file a *quo warranto* complaint against Respondents.

68.    Petitioner submits to the Court that it is well-settled that the Court is obligated, in the interest of justice, and as required by law, to grant Petitioner's Application for Leave to File a Complaint for a Writ of *Quo Warranto* against Respondents.  The legal test or standard to grant a private person, such as Petitioner, leave to file a *quo warranto* action, has been set forth by the Court of Appeals in *City of Grand Rapids v. Harper, supra*.  The standard or test is twofold:

> "… especially in light of the trend to provide more liberal requirements in the area of who may petition for a writ of *quo warranto*.  The personal interest of the relator, or lack of it, is no longer relevant.   The most important considerations in granting leave to file *quo warranto*:
>
> \* \* \*
>
> 'would be whether an appropriate application was made to the Attorney General, in cases where required, and whether the application discloses sufficient apparent merit to justify further inquiry by quo warranto

proceedings.' 4 Honigman & Hawkins, Michigan Court Rules Annotated (2d Ed), Rule 715, p 231."[*Id.*at 328-329] (Emphasis added.)

69.    The Michigan Court of Appeals, again, recently applied and upheld, the twofold *City of Grand Rapids* standard or test that must be met in the granting of leave to file an action for *quo warranto*. They did so in *Davis v Chatman*, 292 Mich App 603, at 613-614. The Court in *Davis v Chatman, supra*, citing *City of Grand Rapids, supra*, held:

> [T]his Court has previously stated that the most important considerations in granting leave to file quo warranto are (1) whether an appropriate application was made to the Attorney General and (2) whether the application disclosed sufficient apparent merit to justify further inquiry by quo warranto proceedings. [*Davis v Chatman*, 292 Mich App 603, at 613.]

70.    Both requirements set forth in *City of Grand Rapids*, and reiterated in *Davis v Chatman,* have been met by Petitioner's Application herein**:** (1). The Petitioner first made application to the Attorney General as required by MCR 3.306(B)(3), and the Attorney General declined to file such action, but gave thereby, Petitioner any necessary authority to proceed with this Application in this Court to seek leave file such an action himself; (2). This Application adequately and thoroughly discloses sufficient and apparent merit to justify further inquiry by means of Petitioner's *quo warranto* action against Respondent, to wit:

> Respondent did not meet the nomination requirements as set forth in the 2012 Detroit City Charter to run as a write-in candidate in the August Primary Election and thus, his subsequent nomination and election in the November General Election is void as a matter of law.

71.     It is manifest that Petitioner's complaint herein, for which leave is hereby sought, is meritorious, and the successful remedy resulting therefrom, will be the Court's removal of the Respondent from the office of Mayor of the City of Detroit.

## Conclusion

The Petitioner has complied with the requirements of the Michigan Court Rules and the *quo warranto* statute, by first imposing upon the Attorney General to bring the action in *quo warranto*. The Attorney General having declined to commence such action, the Petitioner may now proceed. Petitioner's application has disclosed sufficient facts concerning Respondent's unlawfully assuming the office of Mayor of City of Detroit, thus justifying further inquiry into Respondent's unlawful appointment. See *Davis v Chatman*, 292 Mich App 603, at 613-614; see also *Okros v Myslakowski*, 67 Mich App 397, at 401-402.

The Court should therefore assume its jurisdiction, grant leave to the Petitioner, permit the filing of his complaint in *quo warranto* against Respondent, hear the matter and grant Petitioner the relief sought in such action. The Court should thus grant Petitioner the initial relief sought of leave to file herein the complaint and action for quo warranto against Respondent.

## REQUEST FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Petitioner, Citizens United Against Corrupt Government, prays and requests that the Court grant and issue the following relief:

1. *Ex parte,* an **ORDER** Granting Petitioner's *Application for Leave to File a Complaint for a Writ of Quo Warranto*, against Respondent pursuant to MCR 3.306(B)(3)(b), *Ferzacca v. Freeman*, *supra*, and *Davis v Chatman*, *supra*;

2. Alternatively, *ex parte,* **ORDER** Respondent to **Show Cause**, why leave should not be granted to Petitioner to file his *Complaint for a Writ of Quo Warranto* against Respondents, and **ORDER** a hearing thereon on an expedited basis and advance such hearing on an emergency basis on the Court's docket in accordance with MCR 3.301(D);

3. **ORDER** any and all such other relief, as justice may so require.

Respectfully submitted,

/s/ ANDREW A. PATERSON
ANDREW A. PATERSON (P18690)
Attorney for Petitioner Citizens United
46350 Grand River Ave., Suite C
Novi, MI 48374
(248) 568-9712

DATED: December 13, 2013