UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,      .      Docket No. 13-53846
        MICHIGAN,             .
                              .      Detroit, Michigan
                              .      December 13, 2013
                 Debtor.      .      10:01 a.m.
. . . . . . . . . . . . . . .

HEARING RE. MOTION TO ADJOURN HEARING; MOTION TO COMPEL
   THE PRODUCTION OF PRIVILEGE LOG; PRETRIAL CONFERENCE
        BEFORE THE HONORABLE STEVEN W. RHODES
        UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:       Jones Day
                      By:  ROBERT W. HAMILTON
                      325 John H McConnell Blvd., Suite 600
                      Columbus, OH  43215
                      (614) 469-3939

                      Jones Day
                      By:  GREGORY M. SHUMAKER
                      51 Louisiana Avenue, N.W.
                      Washington, DC  20001-2113
                      (202) 879-3679

For Syncora          Kirkland & Ellis, LLP
Guarantee and        By:  STEPHEN HACKNEY
Syncora Capital      300 North LaSalle
Assurance:           Chicago, IL  60654
                     (312) 862-2074

For Erste            Ballard Spahr, LLP
Europaische          By:  VINCENT J. MARRIOTT, III
Pfandbrief-und       1735 Market Street, 51st Floor
Kommunalkreditbank   Philadelphia, PA  19103-7599
Aktiengesellschaft   (215) 864-8236
in Luxemburg, S.A.:

For UBS:             Bingham McCutchen, LLP
                     By:  JARED R. CLARK
                     399 Park Avenue
                     New York, NY  10022-4689
                     (212) 705-7770

APPEARANCES (continued):

```
For Detroit            Clark Hill, PLC
Retirement Systems-    By:  JENNIFER GREEN
General Retirement     500 Woodward, Suite 3500
System of Detroit,     Detroit, MI  48226
Police and Fire        (313) 965-8300
Retirement System
of the City of
Detroit:

For David Sole:        Jerome D. Goldberg, PLLC
                       By:  JEROME GOLDBERG
                       2921 East Jefferson, Suite 205
                       Detroit, MI  48207
                       (313) 393-6001

For FGIC:              Weil, Gotshal & Manges, LLP
                       By:  KELLY DIBLASI
                       767 5th Avenue
                       New York, NY  10153
                       (212) 310-8032

For Ad Hoc COP         Allard & Fish, PC
Holders:               By:  DEBORAH L. FISH
                       535 Griswold, Suite 2600
                       Detroit, MI  48226
                       (313) 961-6141


Court Recorder:        Letrice Calloway
                       United States Bankruptcy Court
                       211 West Fort Street
                       21st Floor
                       Detroit, MI  48226-3211
                       (313) 234-0068

Transcribed By:        Lois Garrett
                       1290 West Barnes Road
                       Leslie, MI  49251
                       (517) 676-5092
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1          THE CLERK:  All rise.  Court is in session.  Please

2   be seated.  Case Number 13-53846, City of Detroit, Michigan.

3          THE COURT:  It appears we have an attorney swearing

4   in for this morning.  Okay.  Would you stand at the lectern,

5   please?  And what is your name?

6          MS. DIBLASI:  Kelly DiBlasi

7          THE COURT:  Okay.  Are you prepared to take the oath

8   of admission to the Bar of the Court?

9          MS. DIBLASI:  Yes, I am.

10         THE COURT:  Please raise your right hand.  Do you

11  affirm that you will conduct yourself as an attorney and

12  counselor of this Court with integrity and respect for the

13  law, that you have read and will abide by the civility

14  principles approved by this Court, and that you will support

15  and defend the Constitution and laws of the United States?

16         MS. DIBLASI:  I do.

17         THE COURT:  Welcome.

18         MS. DIBLASI:  Thank you.

19         THE COURT:  We'll take care of your paperwork for

20  you.  Okay.  I think we should begin with Syncora's motion to

21  adjourn.

22         MR. HACKNEY:  Good morning, your Honor.  Stephen

23  Hackney on behalf of Syncora.  Your Honor, we brought the

24  adjournment motion I would say for two broad reasons, and

25  then there are a couple discrete issues that are also

1  included in the motion, but the first broad reason was that

2  we previously had pretty significant colloquy with the Court

3  on November 14th, I believe, with respect to the interplay

4  between Section 364 and Section 904 as the Court is

5  considering whether to approve the post-petition financing.

6  And it came up in the context of our request for discovery

7  into the needs of the city for the money, the uses of the

8  quality of life proceeds, and how the anticipated uses will

9  relate to the interest of the city and the interest of

10  creditors in this case, and I think the Court may recall that

11  we had -- you had relatively extensive colloquy both with me

12  and with Ms. Connor and with Mr. Gordon.  And at the

13  conclusion of that, what the Court had said was I'm not going

14  to grant the discovery today, but I invite you to return on

15  this issue at the hearing, and we can revisit it.  And part

16  of the reason we tied that up for today, your Honor, was

17  because we were having this -- we teed it up for today is

18  because we were having this pretrial conference and we

19  thought it was appropriately considered in anticipation of

20  the hearing next week.

21         Your Honor, I think, in our view, there is the issue

22  of the standard and the issue of what you are entitled to

23  consider when you're deciding whether to grant the post-

24  petition financing is a bit of a predicate issue to how the

25  hearing should flow, and it's a predicate issue to the types

1   and the nature of the discovery that's been granted because I
2   think that the city has taken -- took in that hearing and has
3   taken the position that the Court is not entitled under
4   Section 904 to consider whether the city needs the money, how
5   it wants to use the money, and how those uses will impact the
6   interests of creditors as well as the interest of the city.
7   It has taken a narrower position, which is that the Court may
8   merely consider whether the city has sought to obtain
9   unsecured credit and, if it's unavailable, whether the
10  secured credit that it purports -- that it wants to borrow is
11  on the best terms that are available.

12          Depending on how you resolve that question I think
13  should have an impact on both whether you grant discovery to
14  the creditors of the type that we had previously requested
15  or, alteratively, whether you streamline that portion of the
16  post-petition financing hearing and say given that the city
17  has taken the position that I cannot consider these issues
18  under Section 904, the city has to have the courage of its
19  convictions and also not make a record detailing all of the
20  different challenges that the city faces and why the money
21  will be used to assuage those challenges because I think
22  there's a bit of a swinging door here, which is the city
23  wants to put on through Mr. Orr or Mr. Moore, the Conway
24  MacKenzie restructuring expert, the story of the City of
25  Detroit and the different challenges that it faces, and it

1    wants to introduce that evidence into the record in order to
2    persuade the Court to grant it the post-petition financing,
3    but it also at the same time is saying that you're actually
4    not entitled to review their decisions on that subject and
5    that you're not -- that you ought not to grant us discovery
6    that allows us to check the work of the city and its
7    consultants in reaching the conclusions and recommendations
8    that they've reached.  So I think that is appropriately
9    addressed today, your Honor, and what I think that you had
10   said at the last hearing that we had before you was -- you
11   know, at that time I don't think we had even filed our
12   objection, so my sense of the hearing was that you were
13   saying, "My current view is that I'm not going to grant the
14   discovery, but I won't finally decide this issue and I'll
15   deny your request without prejudice to come back."  It seems
16   appropriate to us for the Court to decide the issue now
17   because if we go through the hearing and in the course of the
18   hearing the Court decides, you know, I actually -- I've
19   decided that under 364 I do need to decide if this post-
20   petition financing is in the best interest of creditors, and
21   I do need to make an assessment of how this money is going to
22   be used, whether there are alternative noneconomic ways for
23   the city to address certain short-term needs, whether there
24   are other existing cash flows that it can use, and in order
25   to -- and the potential impact on creditor recovery.  I need

1    to assess that.  Well, I think then we will be in the middle

2    of a hearing where we will not have been given discovery into

3    those questions in a way that allows us to develop a

4    sufficient record.

5              Alternatively, if you decide today, no, I agree with

6    the city, and I'm not entitled under 904 to probe behind how

7    the city -- how the city intends to use the money that it

8    wants to borrow, my review is much more limited, then I

9    think, alteratively, that the Court should make that ruling

10   but also that the city should have the courage of its

11   convictions and that that portion of the post-petition

12   financing hearing should be presented in a way that's

13   consistent with its legal posture.  This was the first -- and

14   I will tell you, your Honor, that to the extent the Court

15   wants to have argument on the standard under Section 364

16   versus 904, the individual who -- the individual attorney who

17   is preparing on those arguments for the hearing next week is

18   available and in the court today and will do a better job

19   than I will of getting deep into the weeds on some of the

20   different case law and so forth that we think informs the

21   standard, but we did think it was an important issue that was

22   worth bringing up today, and that is one of the first

23   motivations for our adjournment motion.

24             The second one, your Honor, was specific to the

25   forbearance agreement, and it flowed from the replies that

1    were filed both by the city and by the swap counterparties

2    because in those replies, those two parties made clear that

3    they aren't just seeking assumption of the motion -- of the

4    forbearance agreement, warts and all, for what it is worth

5    subject to the third-party claims.  They are seeking the type

6    of broad relief that they outlined in the proposed order that

7    they submitted to you, and this is of concern to us because

8    you'll remember that the first time you and I had the

9    opportunity to meet one another was at a hearing back on

10    August 2nd right at the outset of the case where we had

11    sought discovery on the forbearance agreement, and the Court

12    in that hearing -- and I went back and reviewed the

13    transcript again last night -- I would say was relatively

14    clear about saying, look, let me assure you that when I

15    decide this, I decide it -- you know, it comes warts and all,

16    comes subject to all of the third-party claims that are

17    asserted by parties as a result of it, and that decision then

18    heavily informed the colloquy that you and I had about the

19    nature of discovery because you were saying, given the

20    limited role that I perform, why do you need all this

21    discovery, and you denied our initial request for --

22            THE COURT:  You're focusing on the consent issue.

23            MR. HACKNEY:  Well, I would say in terms of the

24    third-party rights, there is not only the consent issue but

25    also the argument that the swap counterparties cannot

1   transfer rights under the swap to third parties, that they
2   cannot modify or amend the swap or the collateral agreement
3   without consent, the fact that payments to the swap
4   counterparties under the forbearance agreement violate the
5   waterfall that's contained in the service contracts.  The
6   forbearance agreement implicates all of those things or it
7   certainly does ab initio, and then it also does when you
8   perform under it in connection with the DIP.  So I think that
9   the fact that the swap counterparties and the city are now
10  coming to the Court and saying, no, we want you to finally
11  determine these legal issues and we want the proposed order
12  that we submitted to you that says we can perform without
13  liability, no one else's consent is required -- you know,
14  when you and I were engaging in our dialogue back on August
15  2nd, the city did not at that point pop up and say, "Wait a
16  second, like we have a different view of what you can do
17  under Section 365 and Rule 9019.  We don't agree that you
18  have this limited role.  We think that you're going to decide
19  these issues."  They didn't say that, and so they actually
20  said, yes, limited discovery is appropriate, but now we've
21  come to the end, and they stick the reply brief in that says,
22  no, you should decide all of these issues.  So that was cause
23  for concern for us and was the second major motivating reason
24  in bringing the adjournment motion.  Now, I do want to be up
25  front with the Court.

1      THE COURT:  What does that have to do with an
2  adjournment?
3      MR. HACKNEY:  Well, I guess what I would say is
4  this, which is it's similar to the concerns under Section 364
5  versus 904, which is we will not change our argument
6  regarding the nature of a 365 hearing or a 9019 hearing, but
7  if we're going to go into battle where there's a risk that
8  the Court may be deciding all of these issues, then our
9  position is if we're at risk that the Court may decide all
10 these issues, we need to depose, for example, the swap
11 counterparties.
12     THE COURT:  Why?
13     MR. HACKNEY:  Because they're all parties to this
14 transaction, and understanding --
15     THE COURT:  But aren't those issues all to be
16 determined, if at all, based on the documents?
17     MR. HACKNEY:  No, I don't think so.  I don't think
18 so.  I think that -- I don't think that you can say at this
19 point, oh, these are just pure legal questions.  I think that
20 the way that they structure these documents, the substance of
21 the transaction, their intentions in structuring the
22 documents, not only are going to be relevant to your
23 consideration, but to the extent there are ambiguities, when
24 you have different parties going at it hammer and tong like
25 this on what the documents mean, there is a real potential

1   for the need for parol evidence.

2       THE COURT:  Every time that the parties disagree

3   about what a document means, there's an ambiguity that opens

4   up discovery?  Is that the --

5       MR. HACKNEY:  Not necessarily.

6       THE COURT:  Is that the law?

7       MR. HACKNEY:  Well, I think the law is that where

8   the parties have advanced reasonable interpretations of the

9   documents, multiple reasonable interpretations --

10      THE COURT:  Isn't it the Court's job to interpret

11  contracts as a matter of law?

12      MR. HACKNEY:  In the proper context informed by the

13  proper procedures, and both Orion and Sportstuff are cases

14  that say the limited either assumption or 9019 context is not

15  a substitute for the trial on the merits.  Those are quotes.

16  And now the city is trying to say, no, it should be --

17      THE COURT:  Okay.  But that's a different question

18  from opening up discovery to the extent you seek it.  I don't

19  know if I agree with you or not on the question of whether

20  this is the right time to decide those issues, but it's a

21  long way from that to if it is, you need more discovery.

22      MR. HACKNEY:  I think that you're right that they're

23  separate questions.  I agree that you might --

24      THE COURT:  I'm only asking about why you need

25  discovery, and I haven't heard it yet.

1      MR. HACKNEY:  Well, I think the circumstances
2   regarding the negotiation of the forbearance agreement and
3   what the provisions mean and why they were structured in the
4   way they were structured and whether that structuring was
5   designed, for example, to evade consent rights, those are
6   factual determinations that I think could be validly before
7   the Court.

8           THE COURT:  Suppose they were.  So what?

9           MR. HACKNEY:  That would be relevant evidence.  It
10  would be relevant --

11          THE COURT:  To what?  To how to interpret the
12  contracts?

13          MR. HACKNEY:  Absolutely.  Absolutely, your Honor.
14  I don't think that -- I think --

15          THE COURT:  You need to move on.

16          MR. HACKNEY:  Okay.  Well, your Honor, the
17  additional issues that are contained in the adjournment
18  motion are two.  One of them relates to the privilege log and
19  our request for a privilege log.

20          THE COURT:  And what's the relevance of that?

21          MR. HACKNEY:  The relevance of that is this is with
22  respect to discovery that the city did agree to produce in
23  connection with the DIP hearing.

24          THE COURT:  What's the relevance of it?

25          MR. HACKNEY:  The relevance of it is that if the

1  information has not been validly withheld by a privilege, it

2  may be discoverable and, thus, relevant.

3          THE COURT:  I'll just ask one more time.  What's the

4  relevance of the privilege log?

5          MR. HACKNEY:  The privilege log allows --

6          THE COURT:  Suppose you look at the privilege log

7  and say, "Ah, that's not privileged.  We want it," I would

8  ask what's the relevance of whatever it is you want?

9          MR. HACKNEY:  You can't know until you see it, but

10  you know it's relevant because they agreed to produce

11  documents on this subject matter.  If it's not reasonably

12  calculated to lead to the discovery of admissible evidence,

13  then it wouldn't be on the log.

14          THE COURT:  What else?

15          MR. HACKNEY:  The last issue, your Honor, is an

16  issue that relates to the mediation, and it is an issue that

17  has some importance, I think, to this hearing, but it's also

18  just a generally more important hearing to the case that I

19  wanted to raise with the Court.  There have been

20  presentations that were made by the city's consultants that

21  existed prior to the mediation that were done under

22  confidentiality agreements, nondisclosure agreements, that

23  related to the way that you could use the information that

24  was provided in those presentations, and they relate to the

25  work that the consultants were doing.  After the mediation

1  was ordered, the mediation I would say generally has taken
2  two forms where there are --
3         THE COURT:  I don't want to hear anything about the
4  mediation.
5         MR. HACKNEY:  I'm not going to get into the
6  substance of the mediation negotiations.  I'm just
7  describing --
8         THE COURT:  Why are you telling me anything about
9  the mediation?
10        MR. HACKNEY:  Because it impacts the evidential
11 admissibility of evidence that's produced by the consultants
12 in the mediation despite the fact that the presentations that
13 are being --
14        THE COURT:  Is the city asserting -- excuse me.  Is
15 the city -- is the city offering evidence from the mediation?
16        MR. HACKNEY:  It is not, but it is also saying that
17 none of the presentations that are being made by the
18 financial advisors can be used as evidence even under seal
19 and so on and so forth.
20        THE COURT:  I agree with that.
21        MR. HACKNEY:  We wanted to raise that issue now as a
22 point of concern.
23        THE COURT:  You have a different position?
24        MR. HACKNEY:  Yeah, because the presentations by the
25 financial advisors are -- I would describe them as in the way

1  of 2004-type information.  They're not being done pursuant to

2  2004, but they are, "Hey, creditors, here's what's going on

3  with our efforts on the -- on blight or police or fire," and

4  then, yeah, separately there are negotiations, but the

5  presentations that are being made, as I understand it, are

6  the same type of presentations that were being made before

7  the mediation.

8        THE COURT:  Oh, I see what you're saying.

9        MR. HACKNEY:  So --

10       THE COURT:  Okay.  Well, all right.  We'll have a

11  discussion about that.

12       MR. HACKNEY:  The only reason it's relevant, your

13  Honor, is just because that is the basis for a lot of our

14  information about what's going on with the city, and so it

15  does interplay --

16       THE COURT:  I'm inclined to agree with you that just

17  because information was presented in a mediation doesn't mean

18  that that information is not admissible --

19       MR. HACKNEY:  And, look --

20       THE COURT:  -- if it's otherwise admissible.

21       MR. HACKNEY:  Right.  And one thing I want to --

22       THE COURT:  It doesn't get shielded from our court

23  process just because it was presented in mediation.

24       MR. HACKNEY:  Right.  And -- I agree, and I want to

25  tell you that I'm not trying to evade the other parts of the

1   mediation where you may want the broader protections of there

2   won't be any evidential admissibility because you want people

3   to be candid in back and forth.  I'm just saying given the

4   way this has gone together, can't we have like a little bit

5   of a switch that we flip where we say this is an FA

6   presentation about blight, this is a negotiation.  Okay.  And

7   let's flip the switch so that we can say, okay, well these

8   decks that they're putting forward that provide this level of

9   detail, that's subject to the NDA protections because that's

10  how it was -- the same presentation could have been made

11  before the mediation, and that's how it would have been

12  handled.  The only reason I'm raising that, your Honor, is it

13  came up in one of the depositions when I was using two

14  documents, and we ultimately got past that issue with respect

15  to those two documents, but the city then at that point

16  asserted, hey, these two documents --

17          THE COURT:  This may be -- this may be something we

18  have to deal with in the context of specific witnesses and

19  specific documents, but --

20          MR. HACKNEY:  I think that's fine.  I agree with

21  you, your Honor.  I just want to --

22          THE COURT:  If the question is did you say in

23  mediation A, B, and C, I don't like that --

24          MR. HACKNEY:  Yeah.

25          THE COURT:  -- but if the question is are A, B, and

1    C true, that's a different question.  There's nothing
2    objectionable about that assuming A, B, and C are otherwise
3    relevant.

4              MR. HACKNEY:  Okay.

5              THE COURT:  All right.  Anything further?

6              MR. HACKNEY:  I don't think so.  Thank you, your
7    Honor.

8              THE COURT:  Anyone else want to speak in favor of an
9    adjournment?

10             MR. MARRIOTT:  Good morning, your Honor.  At the
11   risk of being a glutton for punishment, Vince Marriott,
12   Ballard Spahr, EEPK and affiliates.  We also support
13   adjournment on the basis that Mr. Hackney has indicated.
14   Syncora has asked for it.  We believe that the production of
15   documents and the witnesses presented by the city were based
16   on the city's view of what we were entitled to based on the
17   city's view of what this Court is entitled to make a decision
18   on or not.  As and to the extent -- it's our view that this
19   Court is entitled to make a much broader inquiry and findings
20   than the city has suggested, and the discovery that has
21   proceeded to date is based on their narrow gatekeeping view
22   of what this Court is entitled to.  And if this Court does
23   not agree with that narrow view, there's more discovery that
24   we'll need.

25             As to the forbearance agreement piece, let me just

1    make two quick observations.  One is that as and to the

2    extent contracts are ambiguous, then I believe that parties

3    are entitled to and the Court needs to hear parol evidence

4    based upon intent, negotiations, and the like.

5          And, second, your Honor, as and to the extent that

6    the city and the swap counterparties are taking the view that

7    third-party rights under those contracts need to be

8    determined in the context of assumption of the forbearance

9    agreement and as and to the extent, therefore, that such

10   assumption and settlement embodied in it will affect third-

11   party rights via those findings by this Court, then I think

12   third parties are entitled to discovery around those issues.

13         THE COURT:  Around what?

14         MR. MARRIOTT:  Around --

15         THE COURT:  I ask that because every settlement in

16   bankruptcy affects third parties.

17         MR. MARRIOTT:  Yes, and that effect has to be -- if

18   it affects third parties, your Honor, affects third-party

19   rights, has to be fair, and I think fairness goes to an

20   inquiry into, well, what do the documents actually say, what

21   was intended by the parties at the time that these documents

22   were entered into.  They are ambiguous.  There has been a

23   great deal of dispute about what various provisions in very

24   complicated documents mean.

25         THE COURT:  So you agree with the city and the swap

1  counterparties that these issues should be determined now

2  unlike Syncora?

3       MR. MARRIOTT:  I'm not saying I agree that it should

4  be.  If this Court were to stick to its statement in August

5  that third-party rights would flow through entirely

6  unaffected, then that would be fine, and we wouldn't need any

7  additional discovery.

8       THE COURT:  Oh, all right.

9       MR. MARRIOTT:  If, however, this Court adopts the

10  city, swap counterparty view that these are issues that now

11  are before it, that would require, in our view, additional

12  discovery.

13       THE COURT:  Thank you.  Anyone else want to speak in

14  favor of adjournment?  Okay.  Would the city like to be heard

15  on this matter?

16       MR. HAMILTON:  Yes, your Honor.  Good morning, your

17  Honor.  Robert Hamilton of Jones Day on behalf of the City of

18  Detroit.  If I can take the matters that were raised by

19  counsel for Syncora in reverse order, since the ones at the

20  end are the easiest to resolve, on the mediation issue that

21  Mr. Hackney raised, there is no dispute among the parties,

22  and we were able to work out what arose during the

23  deposition.  Everybody agrees, as far as I can tell, with the

24  rules and the protocol that your Honor articulated in the

25  colloquy with Mr. Hackney.  Our point at the deposition is if

1  you're going -- that we made at the deposition is if you're

2  going to whip out a document that was shared only at a

3  mediation, you ought to talk with us first to see if we have

4  a problem about that because maybe it would reveal something

5  that was confidential that we didn't want disclosed to the

6  outside world, but with the particular document that counsel

7  did whip out at the deposition, we determined that that was

8  the type of document that, as your Honor described, is

9  information that should be made public even though it was

10  initially distributed in the mediation, and we did make it

11  public and put it in the data room.  So, as far as I can

12  tell, we're engaged at this point in a purely hypothetical

13  discussion about maybe there might be some other documents

14  that were shared in the mediation that we might want to use

15  at trial, but as we're going to get to the status conference

16  later today, everybody is going to share their exhibits.

17  We're all going to decide in advance what's relevant, what

18  isn't, or if we have an objection, so we're not going to have

19  this mediation issue arise at all.  So I don't understand and

20  I certainly don't think there is any basis to adjourn the

21  hearing so that we can somehow decide in advance whether or

22  not there's additional information that was shared in

23  mediation that might be a problem at the hearing because that

24  issue is never going to arise.

25          On the privilege log, there was some ambiguity in

1    the request that we received 12 days ago from Syncora about

2    what type of privilege log they wanted, whether they wanted a

3    particular document-by-document description of every document

4    we withheld on privilege grounds or whether instead they

5    wanted some category basis of a privilege log.  When counsel

6    for Syncora contacted me about 13 days ago or 12 days ago

7    about that issue, I indicated that we did not understand your

8    Honor's ruling on November 14th to require us to prepare and

9    produce a privilege log, but we were willing to discuss it,

10   and I wanted to -- I invited him to call me to tell me

11   whether or not a general category one would be sufficient

12   given the ambiguity in his original request.  Counsel chose

13   not to take my invitation to call me and instead just filed

14   the motion to compel.

15        We are willing to do whatever the Court wants us to

16   do as regard to a privilege log.  We've been working on it

17   for the past 12 days.  And if the Court wants us to produce a

18   general category privilege log, we can do that by Monday.  If

19   you want us to produce a document-by-document description of

20   every document withheld on privilege grounds, we can do that

21   by Monday, but it's certainly no reason to adjourn the

22   hearing.  I don't think it is materially enough in this

23   context of a summary proceeding that they even need the

24   privilege log, but if your Honor believes it's sufficiently

25   material to order it, we can get it done by Monday on

1   whatever basis the Court or Syncora requests.

2          With respect to the forbearance agreement and the
3   request for additional discovery with respect to the
4   forbearance agreement and the assumption motion to assume it,
5   the City of Detroit contests Syncora counsel's suggestion
6   that our position has changed in any way from when this Court
7   already ruled on these arguments back in August.  To the
8   extent there is some -- it is certainly the position of the
9   City of Detroit consistent with how the Court articulated it
10  that to the extent the Court needs to make rulings with
11  respect to the construction of particular contract
12  provisions, it can do so as a matter of law, to the extent it
13  needs to do so, in ruling on the 9019 motion for a compromise
14  of the parties' rights underneath those contracts.  To the
15  extent the Court determines that there might be some
16  evidentiary issues involved if you were to have a full-blown
17  trial on those contracts, as we articulated, I believe, back
18  in August, in the context of a 9019 motion, you don't conduct
19  a mini-trial or an evidentiary ruling on those legal issues.
20  You consider those issues in deciding whether or not the
21  compromise is fair and equitable or is appropriate under the
22  standards for approving a 9019 compromise.

23         To the extent this Court were to determine, based on
24  the evidentiary record and arguments that are made at the
25  assumption hearing, that for whatever reason it cannot rule

1  on the merits of the 9019 motion unless it makes a factual
2  finding on a particular ambiguity and a particular document
3  and it is barred from making that finding because adequate
4  discovery hasn't happened yet, then the Court can decide at
5  that time whether it needs to allow that discovery to occur,
6  but there is no reason to adjourn this hearing now because
7  there's no reason to believe that such a necessary factual
8  finding is going to arise.

9        The bottom line is this Court already dealt with
10 this issue back in August, and nothing has changed, so
11 there's no reason two days -- two business days before the
12 hearing is about to start to adjourn it based on the issues
13 that this Court already decided back in August.

14        Now, with respect to the DIP and the 364 versus 904
15 issue that Mr. Hackney described, the City of Detroit has
16 gone to great lengths to provide discovery and an evidentiary
17 record to accommodate whatever ruling this Court makes as to
18 what the scope of -- the proper appropriate scope of review
19 is with respect to a request for 364(c) relief in a Chapter 9
20 case.  We have set forth in our reply -- in our motion and in
21 our reply brief what our views are as to what the appropriate
22 legal standards are for this Court's review of our request
23 for relief under 364(c) to get the DIP by granting
24 superpriority administrative status in certain liens.
25 However, we have done whatever we can do to accommodate any

1  ruling this Court may make that says the scope of review is

2  broader than what we've laid out in our brief, and counsel

3  for Syncora is not correct to say that we have refused to

4  provide discovery on any of the broader issues that we say in

5  our reply brief are not within the appropriate scope of

6  review under the law.  We have given all the information we

7  have on the need for borrowing this money, even though we

8  believe that, given the legislative history of the 1976-77

9  amendments to Chapter 9 with respect to 364 and the fact that

10 364(b) doesn't apply and the idea that the city should have

11 the same right to borrow unfettered by Bankruptcy Court

12 involvement in bankruptcy that it has outside of bankruptcy,

13 we believe that the need to borrow or the decision to borrow

14 money to fund city services is a decision that is committed

15 at the sole discretion of the City of Detroit and is not

16 subject to Bankruptcy Court review under both 904 and the

17 Supreme Court's decision in Bekins.

18      THE COURT:  How would you articulate in one sentence

19 what the Court's role is on your 364 motion?

20      MR. HAMILTON:  I would -- it is to the extent the

21 City of Detroit wishes to use special powers that are given

22 to it in bankruptcy that it doesn't have outside of

23 bankruptcy to borrow money, the Bankruptcy Court reviews

24 whether or not the use of those special powers is

25 appropriate.  The ability to borrow money is not a special

1    power.

2          THE COURT:  Those powers are the superpriority and

3    the administrative expense priority?

4          MR. HAMILTON:  And the finding of good faith under

5    364(e).  Those three things give --

6          THE COURT:  Is appropriate?

7          MR. HAMILTON:  Is appropriate for you to review

8    whether or not it is appropriate to allow the City of Detroit

9    to use those special powers to borrow money, and in that

10   context --

11         THE COURT:  Is appropriate?

12         MR. HAMILTON:  Well, whether the -- for instance,

13   if -- it would be -- you cannot -- we would have to convince

14   your Honor at the hearing that the City of Detroit cannot go

15   get the financing that we have determined we need without

16   offering those -- without offering the superpriority status

17   or the liens, which is typical in a 364(c) hearing anyway,

18   and we would also have to establish that the terms on which

19   we are offering those liens in super -- in a sort of super

20   administrative priority status, the terms on which we are

21   offering them are reasonable.  That would be relevant both to

22   the use of those powers and to a finding of good faith under

23   364(e), but the decision whether to borrow the money in order

24   to fund quality of life's or any city services is a

25   decision -- is a political decision that, as we've

1   articulated in the reply brief, is one we don't think is

2   within your scope of review.  However, we have provided full

3   discovery on that.  We've given them everything we have on

4   how we decided how much we needed to borrow, why we needed to

5   borrow it, and the time --

6          THE COURT:  When you say "reasonable terms," you

7   mean -- well, let me just ask.  What do you mean?

8          MR. HAMILTON:  Like whether the commitment fee,

9   interest rates are within market -- are within market --

10          THE COURT:  Market standards?

11          MR. HAMILTON:  Yeah.  We need to establish in order

12   to get a finding under 364(e) that this was the result of

13   arm's length bargaining, good faith, and the terms are

14   reasonable.

15          THE COURT:  I ask you what you mean by "reasonable"

16   because certain of the objections can be read to suggest that

17   the terms aren't reasonable given what you want to do with

18   the money.

19          MR. HAMILTON:  Right.  And the problem with that is

20   that goes into the political decision of whether you should

21   be borrowing money to fund city services, and our position,

22   as we lay out in the reply brief, is under 904 and Bekins,

23   that's not an appropriate review for this Court to do, but

24   the point I'm trying to make here is if you decide that --

25   notwithstanding our best effort to be eloquent, that you

1  don't agree with us, we have provided full discovery to the

2  objectors on what information we have as to why we think we

3  need to borrow this money and how much.  That essentially

4  comes down to brass tacks, the cash flow projections prepared

5  by E&Y, which we've provided.

6          THE COURT:  What's the standard of review on the

7  assumption motion?

8          MR. HAMILTON:  I believe that's pretty much

9  straightforward 9019 standard, whether it falls below the

10  lowest level of reasonableness, I believe.  I don't think

11  that's a --

12          THE COURT:  Okay.

13          MR. HAMILTON:  -- novel area of law.

14          THE COURT:  How close can you pin down how much of

15  the DIP loan you're going to use to pay off the swaps?

16          MR. HAMILTON:  That will be the subject of testimony

17  at the hearing, and it is my understanding that that amount

18  fluctuates -- I don't know -- I think perhaps even on a daily

19  basis based on interest rates, so we'll give you the most

20  current estimate at the time of --

21          THE COURT:  But what is it?

22          MR. HAMILTON:  -- the assumption hearing, and

23  whatever is left over is then the quality of life proceeds.

24          THE COURT:  What's the number?

25          MR. HAMILTON:  I don't know what the current number

1  is, your Honor.

2          THE COURT:  Approximately.

3          MR. HAMILTON:  It was the subject of deposition

4  testimony.

5          THE COURT:  Approximately.  Are we talking 200

6  million or 300 million or what?

7          MR. HAMILTON:  I think it's closer to 230.

8          THE COURT:  Within $25 million, what's the number?

9          MR. HAMILTON:  230 million.

10         THE COURT:  Okay.  Is it the Court's role to

11 determine whether 230 million or whatever the number is is a

12 fair number?

13         MR. HAMILTON:  I'm not sure what you mean by -- oh,

14 in terms of the compromise?  It is the Court's role --

15         THE COURT:  In terms of the buy-out of the swaps.

16         MR. HAMILTON:  It is the -- I believe it is the

17 Court's role to determine whether or not the city's decision

18 to make that payment falls within the reasonable range of

19 possible outcomes if --

20         THE COURT:  Okay.

21         MR. HAMILTON:  -- the underlying legal issues were

22 litigated, and so fairness in that context is defined by as

23 long as it falls within the range of reasonable outcomes,

24 it's fair.  If that's what you mean by "fair," then, yes,

25 that's within your role.

1    THE COURT:  What impact would a negative decision by
2    this Court on that question on the assumption motion have on
3    the DIP motion?

4    MR. HAMILTON:  It is a condition to closing on the
5    DIP that the parties be able to -- be able to perform under
6    the termination -- under the forbearance agreement.  If you
7    don't approve the forbearance agreement, there's no DIP.  It
8    won't close.

9    THE COURT:  Okay.

10    MR. HAMILTON:  And that was confirmed in depositions
11    last week.

12    THE COURT:  Okay.

13    MR. HAMILTON:  The only thing the city has not
14    agreed to provide in discovery is the vast multitude of
15    underlying communications that undoubtedly occurred in
16    connection with the elaborate work that Conway MacKenzie and
17    others have done in determining which restructuring
18    initiatives should be pursued, how much was needed for
19    particular restructuring initiatives, and when the money
20    should be spent and how.   We have produced the end product
21    of all that work in detail updated through the middle of
22    November.  We have allowed them to depose a full day Mr.
23    Moore on how those determinations were made, what standards
24    were used, but we haven't produced all the e-mails that may
25    have occurred between the various people at Conway MacKenzie

1   or the other outside consultants with the people at the city,

2   at the fire department, the police chief, the police people,

3   that they've done for the past year in determining how many

4   vests need to be bought, how many new cruisers they need,

5   what needs to be done in order to get police response times

6   down to a national average.  All those e-mail communications

7   we have not undertaken to collect and review and produce

8   because, quite frankly, the burden would be astronomical, and

9   to the extent this Court were to undertake a review of each

10  of the individual decisions that the City of Detroit has

11  undertaken over the past year to determine what restructuring

12  initiatives they want to pursue at this point, that type of

13  hearing would take weeks, if not months, and we think no

14  matter how you decide what the appropriate scope of review is

15  under 364(c), there is no scenario where you will find that

16  it is appropriate for the Bankruptcy Court to sit in judgment

17  on those individual decisions about how many cruisers the

18  City of Detroit should buy or what -- or how the police --

19  how the bulletproof vests -- how many needed to buy, those

20  type of decisions, and you don't -- they don't need to see

21  all the e-mail communications on those type of issues, but

22  everything else we've provided discovery.  We don't think

23  it's relevant, but if you decide that you need to hear it and

24  it is relevant, they've got discovery, and we've got

25  witnesses available, and you can hear the -- you can hear the

1  evidence.  We'll accommodate whatever ruling you make as to

2  what the scope is of the evidentiary record you need in order

3  to consider our request for relief under 364(c).  On that

4  basis, we don't think there's any justification for

5  adjourning a hearing that has been scheduled, that

6  everybody's been working at breakneck speed to be able to be

7  in a position to present to you starting Tuesday of next

8  week.

9          THE COURT:  Anyone else want to speak against an

10  adjournment?

11          MR. CLARK:  Your Honor, Jared Clark, Bingham

12  McCutchen, counsel to UBS.  I'll speak very briefly just on

13  one issue that counsel for Syncora raised.  Syncora has

14  argued since after the August 2nd hearing in its objection on

15  the assumption motion that an exercise of the city's option

16  under the forbearance agreement is void ab initio and of no

17  force and effect, and, therefore, your Honor need -- should

18  not approve the forbearance agreement, and this is based on

19  what I believe your Honor referred to as the consent right

20  issues.  The swap counterparties believe that your Honor can

21  and needs to look at the consent right issues as a matter of

22  contract interpretation, as indicated; however, we do not

23  believe that that supports any need for an adjournment.

24          THE COURT: All right.  Thank you.  Anyone else have

25  anything further?  All right.  The Court will take this under

1    advisement until 11 o'clock and give you a decision at that

2    time.

3         THE CLERK:  All rise.  Court is in recess.

4         (Recess at 10:42 a.m. until 11:17 a.m.)

5         THE CLERK:  All rise.  Court is in session.  Please

6    be seated.  Recalling Case Number 13-53846, City of Detroit,

7    Michigan.

8         THE COURT:  Counsel are present.  I do have a

9    question for the city before I give a ruling.

10        MR. HAMILTON:  Robert Hamilton of Jones Day on

11   behalf of the City of Detroit, your Honor.

12        THE COURT:  Of course, I said "a question," but I

13   exaggerated.  It's more than one.  Is it the city's position

14   that the issue of whether Syncora -- Syncora's consent to the

15   forbearance agreement is -- or was required is an issue that

16   the Court must determine in connection with this approval

17   motion under 9019?

18        MR. HAMILTON:  May I have a moment, your Honor, to

19   confer?  Your Honor, as we have articulated in our reply

20   brief, it is our position that the Court has to determine

21   that the contract we are trying to assume is a valid

22   contract.  In order to make the finding that the contract

23   we're asking to assume is a valid contract, you have to make

24   a determination on that issue.

25        THE COURT:  So you agree with Syncora on that?

1          MR. HAMILTON:  I don't -- I think we took the

2     position that Syncora said the same thing in one of their

3     earlier pleadings.  I'm not sure if they've been consistent

4     in that regard, but to the extent that they take that

5     position, we agree with them.

6          THE COURT:  Okay.  Well, then there was just the one

7     question.  Thank you.  All right.  The matter is before the

8     Court on the motion of Syncora --

9          MS. GREEN:  Your Honor, if I may, something came up

10    at the break relating to discovery.  We have a third-party

11    witness on our may call list named Thomas Gavin, and we were

12    planning to depose him Monday morning to make him available

13    for the city if they had questions for him.  The city has

14    just stated it will object to third-party discovery because

15    they had not previously agreed to third-party discovery.  I

16    just wanted to --

17         THE COURT:  What does the phrase "third-party

18    discovery" mean?

19         MS. GREEN:  That he's not a party.  He used to be a

20    financial advisor for the City of Detroit.  He no longer is

21    a -- is not currently a financial advisor for the City of

22    Detroit.

23         We wanted to depose him Monday and call him as a

24    witness at the evidentiary hearing.  I wanted to confirm with

25    the Court that that was appropriate to deal with any

1  objections.  I don't want to call him as a witness at the
2  evidentiary hearing and have some sort of objection to him by
3  the city.
4       THE COURT:  Let me suggest this.  I've been advised
5  you didn't put your appearance on the record.
6       MS. GREEN:  I'm sorry.  Jennifer Green on behalf of
7  the Retirement Systems for the City of Detroit.
8       THE COURT:  Let me suggest this to you to resolve
9  your question.  In connection with the motion to adjourn, I'm
10  going to articulate as best I can the issues as I see them,
11  and then you can consult among yourselves and see if the
12  testimony of this witness that you want to proffer would be
13  relevant given that these are the issues.
14       MS. GREEN:  Okay.  And I believe he would be
15  relevant --
16       THE COURT:  So let me ask you to stand by on that
17  one.
18       MS. GREEN:  I think he would be relevant to the
19  business judgment of the city in entering into the
20  forbearance agreement.  That's what we would be proffering
21  the witness for.  He has testimony that the swap
22  counterparties themselves had concerns about the pledge of
23  the casino revenue back in 2009.  He was a financial advisor
24  on behalf of the city, and he worked with the city during the
25  collateral agreement execution.

1     THE COURT:  Okay.  But to that I would ask you what

2  is the relevance of the fact that the swap parties had

3  concerns?

4     MS. GREEN:  To the extent that both the city and/or

5  the swap counterparties had concerns about the pledge of the

6  casino revenue and the collateral agreement itself and

7  certain objecting parties are arguing that the collateral

8  agreement is invalid or that the casino revenue pledged does

9  not survive the bankruptcy petition, if the city and the swap

10  counterparties also were aware of these potential issues, I

11  think that informs the city's business judgment in entering

12  into the forbearance agreement, your Honor.

13     THE COURT:  How, though?

14     MS. GREEN:  If there were issues that they should

15  have litigated, that is one of the arguments by some of the

16  objecting parties.

17     THE COURT:  Okay.  But we can look at that question

18  without having a witness tell us that Syncora or the swap

19  counterparties were concerned about it at the time; right?

20     MS. GREEN:  Well, I assume, your Honor, if I expect

21  an objection --

22     THE COURT:  Look, an issue is an issue whether the

23  parties knew about it at the time or not.

24     MS. GREEN:  Well, if they knew about it then and

25  they knew about it at the time that the forbearance agreement

1  was being negotiated, it seems to me as though it's

2  questionable to enter into the forbearance agreement if you

3  knew you had very strong legal arguments that could have

4  been --

5      THE COURT:  Ah, but the strength of the legal

6  arguments doesn't depend on whether the parties were aware of

7  those legal arguments at the time, does it, or does it?

8      MS. GREEN:  I believe it does.  If you --

9      THE COURT:  Why?

10     MS. GREEN:  -- enter into a forbearance agreement

11 and the argument from some of the objecting parties is that

12 you should have litigated it rather than settle it, then to

13 me it seems as though the knowledge of the city and the swap

14 counterparties as to the strength of their legal arguments or

15 the existence of certain arguments are admissions as to the

16 strength of those arguments.

17     THE COURT:  Are what?  Admissions?

18     MS. GREEN:  Could be admissions as to the strength

19 or the existence of certain arguments that could have been

20 made or defenses that existed.

21     THE COURT:  Well, but we would evaluate the strength

22 based on the applicable law and if there's conflicts in the

23 law, et cetera, et cetera.  All right.

24     MS. GREEN:  Thank you, your Honor.

25     THE COURT:  All right.  First, on the motion to

1  adjourn, this motion suggests to the Court that it's in the
2  best interest of all concerned and to facilitate resolution
3  of the motion itself for the Court to identify, as best it
4  can, what the issues are for next week's hearing, so I'm
5  going to attempt that.

6          The motion to assume the forbearance agreement under
7  Section 365, the city at least recognizes, and I believe
8  other parties do as well, that it's as much a motion for
9  approval of a settlement under Rule 9019 as it is a motion to
10  assume an executory contract.  I just do not believe that the
11  fact that this agreement was reached a few days before the
12  bankruptcy as opposed to a few days after the bankruptcy
13  should make any substantive difference in either the outcome
14  or the nature of the Court's consideration in determining the
15  outcome.

16          As a general matter, I think the parties agree that
17  when considering a motion to approve a settlement, the
18  Court's role is to determine whether that settlement is fair
19  and equitable and whether it's in the best interest of the
20  estate as a whole.  Accordingly, what is not relevant is
21  whether the settlement prejudices creditors or any particular
22  creditor because every settlement that's proposed to the
23  Court arguably prejudices one or more or even all creditors.
24  The question will remain whether the settlement is fair and
25  equitable and in the best interest of the estate.

1    In determining that question, the Court concludes

2  that the following factors in the context of this case are

3  significant.  The forbearance agreement is clearly an attempt

4  by the parties to it to settle and resolve on a going forward

5  basis the legal and economic issues that they faced at the

6  time, so, accordingly, the probability of success that the

7  city might have if it pursued any challenge to the rights of

8  the other parties or to its own obligations as they existed

9  at that time is a major consideration.  More on this in a

10  moment.

11    A second major consideration is the issue of

12  collection.  Now, when the claim to be compromised is a claim

13  that the debtor has against a third party, of course, it's

14  that third party's collectibility that is an issue.  On the

15  other hand, when the claim to be compromised is a third

16  party's claim against the city or the debtor more generally,

17  of course, the collectibility of the debtor is an issue.  And

18  in the context of this case, the Court concludes that that is

19  an issue to be considered in determining this motion.  At the

20  same time, the Court recognizes that on this issue of

21  collectibility it is asserted that the issue is a minimal

22  issue because of the security interests that are claimed

23  here, but if there are potential challenges to the validity

24  of those security interests, those would obviously come into

25  play in determining whether to grant this motion or not.

1          A third consideration is the complexity of the

2     litigation, although more specifically considering the

3     complexity of the litigation is only important because it

4     bears upon the costs to the city of litigating it if there is

5     no settlement or no settlement is approved and the delay to

6     the process, which leads really to the fourth consideration,

7     which is the interest of creditors.  The issue here would be

8     what impact would granting the motion or denying the motion

9     have on the plan process, upon the city's and the public's

10    interest in the city's reconstruction and revitalization.

11         Those are the factors that the Court considers

12    important in determining whether this settlement is fair and

13    equitable and in the best interest of the city and its

14    creditors and its residents, but I want to -- I want to drop

15    a significant asterisk or footnote here.  In considering the

16    probability of success on any of the issues that are

17    compromised by this proposed settlement, it is clearly not

18    the Court's role to resolve those issues, and the Court will

19    not resolve any of those issues.

20         A motion to compromise puts its proponent in a very

21    awkward position, and you can see that awkwardness in the

22    city's papers here because at the same time it is

23    acknowledging the strengths of the other parties' positions

24    or the weaknesses of its own positions, it dare not be too

25    articulate about either side of that lest the motion be

1   denied and it has to actually litigate those issues, so in

2   the context of this motion, the Court is not interested in

3   any evidence about what Jones Day or Mr. Orr or any of its

4   employees or agents thought were the strengths or weaknesses

5   of any challenges it might have to the other parties'

6   positions in this matter or with regard to any of the

7   positions that those other parties might take against the

8   city.  The parties' papers have identified what those

9   challenges are on both sides, and it's for the Court, with

10  the assistance of counsel, surely, to try to evaluate as best

11  it can but in a summary way the strengths and weaknesses of

12  those challenges.

13       So, for example, and acknowledging this violation of

14  the general rule against giving an advisory opinion, it would

15  be inappropriate to ask Mr. Orr what he thought the city's

16  probability of success was in asserting issue "X" not only

17  because that would plainly require him to disclose his

18  communications with his counsel that are protected, but, more

19  importantly, and with all due respect to him, the Court isn't

20  actually that interested in what his assessment of the city's

21  probability on issue "X" is.

22       Now, it appears to the Court that most of the

23  underlying disputes between the parties that this agreement

24  compromises are, frankly, issues of contract interpretation

25  that would, in the ordinary course, be resolved by the Court

1  without evidence as a matter of law.  It is certainly not the
2  law that simply because parties disagree about contract
3  interpretation, it's, therefore, ambiguous and under the
4  parol evidence rule subject to the testimony of witnesses.
5  And on this point, the Court will go one step further and
6  conclude that after reading all of the parties' briefs, the
7  Court does not identify a single issue of contract
8  interpretation as to which there is such ambiguity as would
9  permit a party to present parol evidence in support of its
10 interpretation.

11        Now, this does not mean that there is not a genuine
12 good faith dispute about the interpretation of the contract.
13 It appears to the Court there is, but that does not mean that
14 the contract is ambiguous.  There are, however, certain
15 defenses that the city might have that may turn on the
16 establishment of certain facts, so, for example, I think one
17 of the parties, perhaps Mr. Sole -- correct me if I'm
18 wrong -- asserted that the city might have an equitable
19 subordination argument here.  It would be the purpose and
20 function of this hearing not to try that case, not to call
21 witnesses in support of a claim the city has that some claim
22 or another of a given party should be equitably subordinated,
23 but still there should be some testimony by someone or some
24 evidence somewhere of what the factual predicate in a summary
25 way of such a claim might be.

1    All right.  I think that's as much as I want to say
2 about the 9019, 365 motion.

3    On the debtor in possession financing motion under
4 Section 364, the Court basically agrees with the city's
5 position that Section 904 of the Bankruptcy Code prohibits
6 any review of what the city proposes to do with the proceeds
7 of the loan and actually prohibits any review beyond the
8 narrow review that Section 364 itself requires to determine
9 the reasonableness of the terms of the borrowing given the
10 current market conditions for similar kinds of loans and the
11 other technical requirements of Section 364, including the
12 city's inability to obtain a loan on any better terms.  And,
13 of course, the Court welcomes any evidence on the issue of
14 whether the debtor in possession financing was negotiated in
15 good faith, but the city's proposed use of the proceeds is
16 not a matter for this Court's consideration next week.

17    Having concluded all of that, the Court must
18 conclude that the record fails to establish cause for any
19 adjournment.  Accordingly, it is denied.

20    Now, can we move to the final pretrial conference on
21 this?  Did you all prepare a joint pretrial statement?

22    MR. SHUMAKER:  Good morning, your Honor.  Greg
23 Shumaker of Jones Day for the City of Detroit.  Yes, your
24 Honor, we did prepare a joint statement of facts in
25 connection with the -- what we've referred to as the

1  assumption motion.  We were able to hash that out over the
2  last week or so, and I believe we filed that on Wednesday
3  night.

4          THE COURT:  Um-hmm.

5          MR. SHUMAKER:  The joint statement of facts with
6  regard to what we referred to as the PPF motion, the DIP
7  motion, is still in progress.  We're hopeful, your Honor,
8  that the parties will be able to come up with something
9  before the hearing next week.  We've sent back some -- the
10 city sent back a number of comments to the objectors, I
11 think, last night, so we are very hopeful that we'll be able
12 to achieve that, but it's still --

13         THE COURT:  Hopeful you'll be able to achieve what?

14         MR. SHUMAKER:  Well, a joint statement of facts with
15 regard to the DIP motion.

16         THE COURT:  Okay.

17         MR. SHUMAKER:  We've submitted that to your Honor.
18 The parties have agreed --

19         THE COURT:  Okay.

20         MR. SHUMAKER:  -- with regard to the assumption, the
21 forbearance agreement facts.

22         THE COURT:  Okay.  And that's all wonderful, and I
23 appreciate that all very much.  My question had more to do
24 with the more standard, you know, joint pretrial statement
25 where you state your claims, you state the defenses, you

1   state who the witnesses will be and what the exhibits will

2   be.

3          MR. SHUMAKER:  Well, along those lines, the short

4   answer, I think, your Honor, is, no, we have not been

5   operating under the standard joint pretrial order process

6   because we thought that it was not appropriate, but we have

7   been working on --

8          THE COURT:  That's okay.  We can still accomplish a

9   lot here this morning.  Have all of the exhibit lists been

10  finalized --

11         MR. SHUMAKER:  I believe they have, your Honor.

12         THE COURT:  -- by all of the parties on both sides?

13         MR. SHUMAKER:  All of the exhibit lists have been

14  submitted to the Court.  The only reservation is that there

15  are continuing depositions.  There's one or two depositions

16  left.  The parties reserve the right to supplement, but, yes,

17  the exhibit lists have all been provided, have been filed,

18  and what we are hoping to do along the lines of a pretrial

19  order that we haven't been following, but is to come up with

20  what we've talked about with regard to the eligibility

21  hearing where we do what your Honor is I would suggest

22  proposing, which is that there would be a joint list where

23  there would be a list of the documents to which there is no

24  objection, and your Honor could rule on the admissibility of

25  those, and then a corollary with the list of exhibits to

1    which there have been objections.

2        Now, the city has provided its objections to the

3    objectors.  We're waiting and discussing with them waiting

4    for their objections to the city's exhibits, but that's

5    underway, and we also hope to have that filed hopefully

6    Monday.  Obviously there's not a lot of time, but we are

7    working on that actively.

8        THE COURT:  Okay.  All right.  Does anyone see any

9    obstacle to getting that to the Court by the close of

10    business on Monday?  All right.  But just to be, you know, as

11    technically accurate about this as we can, there was some

12    overlap in exhibits at the eligibility trial --

13        MR. SHUMAKER:  Yes, your Honor.

14        THE COURT:  -- which created a little bit of

15    confusion.  I would encourage you to try to minimize that as

16    much as possible, so if the city has offered an exhibit, I

17    would discourage other parties from including that same

18    exhibit on their lists.

19        MR. SHUMAKER:  We'll do everything we can, your

20    Honor.

21        THE COURT:  If it's an exhibit, you know, in a

22    different form or if it has, you know, attachments to it that

23    the city's doesn't have, okay, but if it's the exact same

24    pieces of paper, we don't need it twice.

25        MR. SHUMAKER:  Thank you, your Honor.

1          THE COURT:  In terms of numbering, I like the

2     numbering system we used last time where, you know, each

3     party takes a range of numbers in the hundreds.

4          MR. SHUMAKER:  Your Honor, I believe that the city

5     had zero through a hundred, although we have more than a

6     hundred exhibits, so we may have to hog the --

7          THE COURT:  Yeah.

8          MR. SHUMAKER:  -- zero to 200 range.

9          THE COURT:  Fine.

10          MR. SHUMAKER:  But we can figure --

11          THE COURT:  Whatever you work out is fine.  I just

12     don't want parties to use the same numbers --

13          MR. SHUMAKER:  Understood, your Honor.

14          THE COURT:  -- because that's going to be confusing.

15          MR. SHUMAKER:  One outstanding issue on that is,

16     your Honor, the city has provided electronic copies of all of

17     its exhibits to the objectors.  We've asked for those in

18     return, but I think we've -- I don't know how many objectors

19     have responded.  As of yesterday, it was one, but it

20     facilitates the issue of figuring out what exhibit it is and

21     so that we can give the objections back.  I don't know if a

22     deadline is necessary, but we have had some difficulty in

23     that regard.

24          THE COURT:  Well, let me just ask.  Can you all get

25     your exhibits to the city in the electronic format that they

1  provided to you by the close of business today?  All right.

2  Hearing no objection, I'll assume that will be done.  So

3  after the hearing today, I would encourage you all to

4  collaborate together on who gets what exhibit numbers, what

5  exhibit ranges are assigned to which parties.  Okay?

6          MR. SHUMAKER:  Certainly, your Honor.

7          THE COURT:  Now, who are your witnesses?

8          MR. SHUMAKER:  The witnesses right now are the five

9  that I mentioned last time we met, your Honor, the day before

10  Thanksgiving --

11          THE COURT:  Remind me.

12          MR. SHUMAKER:  -- which was Mr. Moore from Conway

13  MacKenzie, Mr. Doak from Miller Buckfire, Mr. Malhotra from

14  Ernst & Young, Mr. Buckfire, and Mr. Orr.  Those are the

15  five.  And I think I have --

16          THE COURT:  All right.  But I want to be sure that

17  you constrain your examination of those witnesses to the

18  issues that I identified here.

19          MR. SHUMAKER:  We will do that, your Honor.

20          THE COURT:  All right.  I'd like to hear the names

21  of the witnesses that the objecting parties intend to call,

22  so let's have that, please.  Who'd like to go?

23          MR. HACKNEY:  I'm sorry.  I didn't hear.  I'm sorry.

24          THE COURT:  I'm sorry to you, sir.  My question is

25  who's -- what witnesses are the objecting parties going to

1  call?

2      MR. HACKNEY:  I'll let each speak for their --

3      THE COURT:  Yeah.

4      MR. HACKNEY:  My name is Stephen Hackney, your

5  Honor, on behalf of Syncora.  At this point, we only have a

6  may call witness.  We have not determined today that we will

7  call him, and I would propose to monitor the course of the

8  hearing and give counsel for the other side 24 hours' notice

9  or 48 hours' notice if I refine that.  I was -- refine that

10  into the intention to call for certain.  I was hoping that I

11  might ask the city to provide us with the order of the

12  witnesses by the close of business today.  It helps us

13  coordinate our preparation of cross-examination amongst

14  objectors.

15      THE COURT:  So who's your may call witness?

16      MR. HACKNEY:  It is a potential expert witness by

17  the name of Mr. Davido.

18      THE COURT:  Okay.

19      MR. HACKNEY:  Yeah.

20      THE COURT:  Who else is going to call witnesses?

21      MR. GOLDBERG:  Good morning, your Honor.  Jerome

22  Goldberg appearing on behalf of interested party David Sole.

23  Your Honor, I'd like -- I just had one question, if I may.  I

24  was a little confused on the second point in your order on

25  the issue of collectibility.  I guess maybe I should just

1 listen to it again, but I was a little confused.  There were

2 two --

3          THE COURT:  Well, it's not that complex.  To the

4 extent that whatever claims third parties have against the

5 city, the issue of the collectibility of the city is an issue

6 to be taken into account in determining the fairness of the

7 settlement.  Anyway --

8          MR. GOLDBERG:  Okay.  I understand it better now.

9          THE COURT:  Okay.  Who's your --

10          MR. GOLDBERG:  I was -- my own confusion.

11          THE COURT:  Who's your witness?

12          MR. GOLDBERG:  I intend to call, at least at this

13 point, Wallace C. Turbeville as basically an expert on the

14 first issue.  That's my -- the one witness.

15          THE COURT:  When you say "the first issue," you

16 mean --

17          MR. GOLDBERG:  The issue on the equitable questions

18 concerning the forbearance agreement itself and the DIP in

19 relation to the forbearance agreement.  I also do have a

20 recall witness that's a -- a rebuttal witness who is Sharon

21 McPhail.  It was one of the people involved in the -- on City

22 Council at the time of the hearing itself -- I just actually

23 ran into her two days ago -- as a potential rebuttal witness.

24          THE COURT:  Thank you.

25          MR. GOLDBERG:  Can I ask one other question, your

1    Honor?

2              THE COURT:  Sure.

3              MR. GOLDBERG:  I'm sorry for --

4              THE COURT:  That's all right.

5              MR. GOLDBERG:  -- my inexperience.  The city did

6    file a number of objections to exhibits that, you know, I

7    proffered, and will there be a hearing?  You don't intend to

8    hear those objections today or -- I was just trying to get

9    some advice on that.

10             THE COURT:  No, I don't.  You know, during the

11   course of the hearing when it comes time for your case --

12             MR. GOLDBERG:  Okay.

13             THE COURT:  -- you will proffer those exhibits in

14   the ordinary course, and if the city still objects, I'll hear

15   those objections and your response.

16             MR. GOLDBERG:  Thank you, your Honor.

17             MS. DIBLASI:  Your Honor, Kelly DiBlasi on behalf of

18   Financial Guaranty Insurance Company.  We intend to call

19   Stephen Spencer of Houlihan Lokey as a witness.

20             THE COURT:  Okay.  Thank you.

21             MS. DIBLASI:  Thank you.

22             MS. GREEN:  Jennifer Green on behalf of the

23   Retirement Systems.  We had intended as may call witnesses

24   Ann Langan and Irvin Corley of the City Council staff and

25   Thomas Gavin.  However, based upon today's ruling, we'll be

1  reassessing our may call list.

2          THE COURT:  Okay.  Any other witness names?  I do

3  want to discuss the issue of limiting time on each side for

4  presentations.

5          MR. HACKNEY:  Your Honor, I had some collected

6  thoughts I was going to offer at some point, and I just

7  wanted to make you aware of that.

8          THE COURT:  Regarding this issue or a different

9  issue?

10          MR. HACKNEY:  It relates very directly to this issue

11  and to the organization of the hearing.

12          THE COURT:  Go for it.

13          MR. HACKNEY:  Your Honor, I wanted to tell you that

14  the objectors have been working together to try to organize

15  the presentation of it for the Court so it's as coherent as

16  possible.  That's not always easy because --

17          THE COURT:  Right.

18          MR. HACKNEY:  -- the objectors don't always

19  object -- in addition to the fact that we're all different

20  firms and entities, but --

21          THE COURT:  Right.

22          MR. HACKNEY:  -- we don't always object for the same

23  reasons, but we've had some success.  We have eight hours

24  that's been allocated to our side by your order, and what we

25  have done is we had a proposal for you about how we hope to

1    strike the allocation of time, and I was hoping I could lay

2    that out for you in the way of suggestion as to how it may

3    be --

4              THE COURT:  Okay.

5              MR. HACKNEY:  -- most efficient.  The first thing is

6    we are going to endeavor to use a lead cross-examinationer as

7    a way of trying to get someone to cover the main body of a

8    witness' cross on behalf of all objectors subject to the

9    important point that each individual objector will retain the

10   right to do discrete amounts of cleanup if they have unique

11   issues, but we hope to use a lead questioner style method of

12   cross-examination.  We hope to spend approximately -- we

13   intend not to do opening statements unless the Court really

14   wanted them.  The briefs so --

15             THE COURT:  Yeah.  I leave it optional to you.

16             MR. HACKNEY:  Our intention was not to spend our

17   time on opening statement unless you just preferred

18   otherwise.

19             THE COURT:  I don't.

20             MR. HACKNEY:  We hoped to spend approximately four

21   and three-quarters hours on our witness cross-examination

22   and/or our directs.  I will tell you that it is somewhat --

23   it's more art than science when you're trying to predict time

24   on that.  It relates to things like witness responsiveness

25   and a host of factors.

1          THE COURT:  Of course.

2          MR. HACKNEY:  That is our going in strategy, and we

3     would then retain three and a quarter hours for closing

4     argument.

5          THE COURT:  Okay.

6          MR. HACKNEY:  We propose to have an -- what we call

7     an issue-based closing argument as opposed to a party-based

8     closing argument.  The idea is to try to avoid repetition.

9     And so I wanted to suggest to you what we had thought the

10    different mainline issues would be, although it's been

11    impacted somewhat by today, but I was going to offer them for

12    your consideration.

13         THE COURT:  I have to say in this regard, you know,

14    that how you divide this up among yourselves or what issues

15    you articulate is not something I need right now, so if you

16    want to keep this to yourselves and/or reconsider it at some

17    point, that's fine, but, you know, my main issue is in fixing

18    this time and making sure we're all on the same page

19    regarding it, and it sounds like we are.

20         MR. HACKNEY:  Yeah.  Thank you, your Honor.  I just

21    didn't want to be in a position where I was presuming to tell

22    you what we would be spending our argument time on because

23    the argument, of course, is supposed to aid you in your

24    determination, so I wanted you to have an opportunity to tell

25    me, no, I don't want argument on that, I want argument on

1  this, and so forth, but we can caucus in light of today.

2         THE COURT:  You can rest assured that if anyone is

3  arguing into a vicinity that I don't think is helpful, I will

4  let you know.

5         MR. HACKNEY:  I have personal experience with that,

6  so thank you, your Honor.

7         THE COURT:  You do.

8         MR. HACKNEY:  Your Honor --

9         THE COURT:  You asked for that.

10        MR. HACKNEY:  I did.  I did, and I take it

11  willingly.  I have a follow-up question, if I could ask you,

12  about witnesses because -- and I'll let Mr. Hamilton respond

13  to this after I do, but with respect to the views you

14  expressed on 904 versus 364, obviously notwithstanding our

15  disagreement, it's heard and understood on our part, but I

16  wanted to tell you that my interpretation of what you said to

17  me when I look at Mr. Moore's declaration -- he's the Conway

18  MacKenzie individual who he details here are the different

19  problems, here's how we're going to use the money, and here's

20  why it's going to fix them, and so on and so forth -- that

21  that would not be relevant under the standard as you

22  articulate it.  Now, I don't want overstep, but --

23        THE COURT:  That's right.

24        MR. HACKNEY:  -- do you agree?  Okay.  That's

25  helpful to me because we're in the process of preparing, so

1    I'll caucus with Mr. Hamilton about that, but that was a
2    point of clarification.
3            THE COURT:  All right.
4            MR. HACKNEY:  So I've hit all the issues that I hit,
5    and I hope I addressed your question about how we intend to
6    use our time and --
7            THE COURT:  Yes.
8            MR. HACKNEY:  -- who we intend to use it with.
9    Thank you.
10           MR. HAMILTON:  Robert Hamilton of Jones Day on
11   behalf of the City of Detroit, your Honor.  I did have just a
12   brief moment to caucus with Mr. Hackney, and I'm not sure
13   we've worked all of this out.  With respect to witnesses that
14   both sides are going to call on the motion to approve the
15   post-petition financing, it seems, given the Court's ruling,
16   that most, if not all, of the testimony that was previewed in
17   Mr. Moore's declaration would not be necessary and, in fact,
18   would be immaterial under the standard you've articulated.
19           THE COURT:  Under the standard that you advocated.
20           MR. HAMILTON:  Under the standard that we advocated.
21   I've advocated things, and I don't always win what I
22   advocate, your Honor, so we were trying to cover all our
23   bases.  The two experts that the objectors have identified,
24   Mr. Davido and Mr. Spencer, the opinions that they proffered
25   at their depositions relate to an issue that appears to fall

1   on the irrelevant side, but if it doesn't, then Mr. Moore
2   would be relevant.

3          THE COURT:  Okay.  I have to -- I have to ask you to
4   defer your argument on this until they actually testify.

5          MR. HAMILTON:  Well, it goes to whether we're going
6   to have three witnesses here or zero on the issue of do we
7   need to borrow the money now.  If the question of do we need
8   to borrow the money now or do we have enough money without
9   borrowing to do what we want to do, if that's not within your
10  scope of review under your ruling today, then neither Mr.
11  Moore nor Mr. Spencer nor Mr. Davido are relevant, and they
12  don't need to come here next Tuesday.

13         THE COURT:  If you want me to find that it is
14  relevant that it is necessary to borrow this money now --
15  this is your motion, you know -- then that suggests all that
16  is relevant.

17         MR. HAMILTON:  Our position is you don't need to
18  find that, and we don't need to ask you to find that.  And if
19  that's the case, we would not need to call Mr. Moore, but
20  then neither would Mr. Spencer or Mr. Davido need to come.
21  And the only reason I raise it now is because it's a
22  pretrial, and we'd kind of like to know in advance whether
23  these three witnesses are going to have to be here on Tuesday
24  or not.  Our position is it's not relevant given your ruling,
25  and I have not had a full opportunity to confer with Mr.

1 Hackney other than we thought it might be appropriate to

2 raise it today to get it resolved.  That's all I had to say

3 at the moment.

4        MR. MARRIOTT:  Your Honor, Vince Marriott, EEPK.  If

5 I could just speak to the findings, I think that the city's

6 proposed order that accompanied the motion does request

7 findings on those issues.  If the city is prepared to submit

8 a revised proposed order that strips out asking for these

9 things, then I think we are in a better position to decide

10 whether we need that, but so long as the proposed order asks

11 findings on that sort of thing, you know, we're sort of

12 stuck.

13        THE COURT:  And that's why I asked the question that

14 I asked, so I think the answer is really in -- of the city's

15 own making.  If there's a finding you want me to make, you

16 better submit evidence of it, but then you open the door to

17 rebuttal evidence on it.  Otherwise I don't see the relevance

18 of the necessity of the borrowing for the 364 motion, but,

19 you know, it's your motion, so if you want me to make a

20 finding on it, it's up to you.  If you say no, then the

21 objecting parties will rely on that, and, you know, you can't

22 argue that they didn't submit any evidence.

23        MR. HAMILTON:  Your Honor, I think we are going to

24 take the position that it's irrelevant.  I think what we

25 should do is that I should just caucus with Mr. Marriott and

1    Mr. Hackney, and we should work this out by Tuesday.

2              THE COURT:  That's an excellent idea.  I have to say

3    one more thing in the interest of justice.  I wouldn't

4    normally say this, but with all due respect to Mr. Orr, I

5    need to emphasize to him through his counsel here the

6    necessity of him being responsive to the questions and with

7    the caution that if he is not, as he was not during the

8    eligibility trial, that may constitute grounds or cause to

9    extend the objecting parties' time to present their case.

10             All right.  I need to get back to the issue of the

11   privilege log, but before I do that, I want to see if there's

12   anything else we need to cover in the context of this final

13   pretrial conference.  We have several willing attorneys, so

14   we'll just race to the lectern.

15             MR. GOLDBERG:  Sorry, your Honor.  Jerome Goldberg

16   on behalf of interested party Sole.  I know I'm asking the

17   indulgence of the Court, and if I'm out of line, let me know,

18   but I have a -- honestly speaking, I'm operating in this case

19   on virtually no budget, and my expert is testifying on that

20   basis.  I was just wondering if it's possible for me to get a

21   sense of when I would need to -- and I have to fly him in

22   from New York --

23             THE COURT:  Um-hmm.

24             MR. GOLDBERG:  -- when he might be testifying.  I

25   mean I normally would not ask, but I'm not in a position to

1  even pay him as my client is not in a position to pay myself.

2        THE COURT:  Remind me how much time we allocated for

3  the city.  Was it seven, seven hours?

4        MR. SHUMAKER:  Yes, your Honor.

5        THE COURT:  Okay.  So we may or may not quite get

6  through the city's case on Tuesday, right, depending on

7  recesses and whatnot, so it would either be sometime during

8  the day on Wednesday or Thursday, so I would suggest that you

9  collaborate with your fellow objecting parties' attorneys and

10 see if you can agree upon the order in which witnesses are

11 called, and that'll give you a much better sense of when your

12 witness would come up.

13       MR. GOLDBERG:  Thank you very much, your Honor.

14       THE COURT:  Okay.  Ms. Fish, you wanted to be heard?

15       MS. FISH:  Yes.  I didn't know if Mr. Shumaker was

16 finished with the city's presentation.  Deborah Fish from the

17 law firm of Allard & Fish on behalf of the ad hoc COP

18 holders.  Similar to Mr. Goldberg, your Honor, my client

19 would only like to make a five-minute presentation at the

20 hearing.  Wondering if, in fact, that could be made at the

21 beginning so that we wouldn't have to appear every day and

22 could just listen by phone.

23       THE COURT:  Does anyone object to that?

24       MS. FISH:  Thank you, your Honor.

25       THE COURT:  All right.  We will hear you first thing

1   Tuesday morning then.  Would anyone else like to be heard in

2   the context of any joint -- of any final pretrial order

3   issues, questions?

4       MR. HACKNEY:  Your Honor, would you indulge me in

5   just one more brief colloquy on part of your ruling because I

6   think it will help us determine whether witnesses need to

7   come?

8       THE COURT:  Um-hmm.  Go ahead.

9       MR. HACKNEY:  Steve Hackney again on behalf of

10  Syncora.  You know, I'm loath always to question the Court

11  extensively, and I'll try to avoid that.

12      THE COURT:  I appreciate that.

13      MR. HACKNEY:  Your job is to rule, and our job is to

14  figure it out, but you talked about the word "need" in the

15  context of the Section 364 versus 904 context, and Mr.

16  Hamilton and you talked about that subject with respect to

17  different witnesses, and I just wanted to articulate a

18  possible distinction and make sure we understand it.

19      The first thing I could see the Court saying is if

20  Mr. Orr decides that the city needs a hundred police cars,

21  I -- as the Court, I am not going to review that decision

22  under 904.  My reading of your ruling is that's clearly what

23  you were saying on that point.  There is a second concept,

24  though, which is whether or not he should borrow the money to

25  buy the police cars or whether or not he has existing funds

1   with which to borrow the police cars, and this is a second

2   concept, which is the need to borrow.  Is that also within

3   the rubric of a decision that you will not review, which

4   is --

5           THE COURT:  It is.

6           MR. HACKNEY:  It is.  That clarifies it, and I

7   appreciate it.

8           THE COURT:  But there's an "unless" there, which I

9   asked the city about, unless they want me to find that they

10  need to borrow the money, but the city said, no, they don't

11  want me to find that even though it's apparently in --

12  someone said it's in the order that was proposed with the

13  motion and they're going to collaborate with you on all of

14  that, so --

15          MR. HACKNEY:  Thank you.

16          THE COURT:  -- if they open that issue up, go for

17  it.  If they don't want that finding, I don't think it's

18  necessary or appropriate under 364 in a Chapter 9 case.

19          MR. HACKNEY:  Thank you, your Honor.

20          MR. SHUMAKER:  One issue, your Honor, which we'd

21  appreciate some clarification on, and that is the time

22  limits.  And now that it appears that the city will have

23  seven hours and that the objectors will have eight hours to

24  present their case, does the time allotted to each side

25  include the cross-examination of the --

```
 1              THE COURT:  Oh, no.  That's lectern time.
 2              MR. SHUMAKER:  Okay.  Okay.  Yes.
 3              THE COURT:  Does that answer your question?
 4              MR. SHUMAKER:  Yes, that does.  That does, yes.
 5    Thank you.
 6              THE COURT:  I keep a running clock by minutes of the
 7    time each side is standing at the lectern --
 8              MR. SHUMAKER:  Thank you, your Honor.
 9              THE COURT:  -- whether it's opening, cross, direct,
10    or closing.  On the privilege log issue, one of the
11    consequences of my earlier statement of the issues is that as
12    an evidentiary matter, I don't think it's relevant what any
13    particular attorney concludes regarding the strengths or
14    weaknesses of any of the claims or defenses are nor do I
15    think it's relevant what any particular attorney on either
16    side for this matter told a client were the strengths or
17    weaknesses of any particular claim or defense.  So on the
18    issue of the privilege log, I don't think that any attorney-
19    client communications are particularly relevant in the first
20    instance, so in those circumstances, I cannot conclude that
21    the disclosure of a privilege log is necessary, so I won't
22    require it.
23              All right.  Anything further for today?
24              MR. HACKNEY:  Can I be heard on that just briefly?
25              THE COURT:  Yes.
```

1      MR. HACKNEY:  The only desire for the log is to

2  confirm that the documents that have been withheld are

3  privileged.  If they are privileged, I'm not disputing the

4  idea that they can withhold them under the privilege.  I'm

5  not saying you'd put it at issue.  I'm just saying I want to

6  check.

7      THE COURT:  Your concern is that they have withheld

8  documents that weren't communications between attorneys and

9  clients?

10      MR. HACKNEY:  Well, yes, because the way

11  privilege --

12      THE COURT:  That would be pretty ugly.

13      MR. HACKNEY:  Well, no.  It's not necessarily

14  uncommon when people are reviewing, especially a pace like

15  this, which is you'll look at the to and from on an e-mail,

16  and if you see an attorney, you'll just mark it, and then

17  you -- when you do the log, then you do the hard calls and

18  say, "Well, yeah, there was an attorney cc'd on this, but

19  this is really Miller Buckfire to business guys talking

20  business stuff."

21      THE COURT:  Okay.

22      MR. HACKNEY:  Then you produce it.  So I didn't want

23  there to be confusion about why I want the log.  I'm not

24  trying to say, "Oh, look at what they withheld.  This is

25  relevant."  I'm trying to check their privilege calls.

1          THE COURT:  Any response to that?

2          MR. SHUMAKER:  Your Honor, my response would be that

3    when we produce documents, when we gather the documents from

4    the city and we review them and produce them, we do our

5    darndest to give the responsive documents as we did in

6    connection with the PPF motion, and --

7          THE COURT:  What motion?

8          MR. SHUMAKER:  I'm sorry.  The post-petition

9    financing, the DIP motion.  I forget which one we're calling

10   it.  And so, you know, we've -- we do have to go through a

11   review.  We do have a number of people who look at those

12   documents.  They operate in good faith, do the best they can.

13   It's, you know, a significant amount of work to undertake

14   just under the possibility that a document was withheld that

15   shouldn't have been.  I can't represent to your Honor that

16   that's not possible, but we do have an affirmative ongoing

17   obligation that if we uncover something that is not

18   privileged, we produce it.

19         THE COURT:  All right.  Well, I'll ask you to file

20   an affidavit then by Tuesday which describes what process you

21   used to determine which documents were privileged or to be

22   claimed as privileged and not disclosed, therefore, what

23   standards the staff used, and I want the representation of

24   who's ever affidavit this is that it is that affiant's good

25   faith belief that all of the documents withheld are subject

1   to a proper claim of attorney-client privilege.

2           MR. SHUMAKER:  Certainly will do that, your Honor.

3           THE COURT:  All right.  We'll be in recess.

4           THE CLERK:  All rise.  Court is adjourned.

5       (Proceedings concluded at 12:13 p.m.)

INDEX


WITNESSES:

     None

EXHIBITS:

     None


          I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.


/s/ Lois Garrett                    December 15, 2013
_____          _____
Lois Garrett