# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  Chapter 9
Case No. 13-53846

City of Detroit, Michigan,

    Debtor.

_____/

## DECLARATION OF SHARON MCPHAIL

State of Michigan)

County of Wayne)

1. My name is Sharon McPhail. I reside at 567 Fiske, Detroit, MI 49214.

2. I was a member of the Detroit City Council from January 1, 2002 to December 31, 2005.

3. I am currently the Superintendent of Detroit Community Schools located in the City of Detroit. We are currently in the last week before the winter break, an extremely hectic time for the students and administration.

4. I was a member of Detroit City Council when Mayor Kilpatrick brought a proposal for the City Council to approve the issuing of Pension Obligation Certificates, a portion of which included Swap agreements, to City Council for approval.

5. I am not an economist and neither were my fellow City Council members.

6. However, for a period of months I recall raising questions as to the risks associated with these novel economic formations which were supposed to help resolve the City's long-term pension debt.

7. I researched other cities that had entered into similar pension obligation certificates and learned that the municipalities' that had entered into them were already encountering financial difficulties as the result. I recall one of the cities was in Pennsylvania but I do not specifically recall the areas involved.

8. During the period of months the City Council was debating the adoption of these financial instruments, I recall representatives of the banking institutions, their law firms and representatives of the ratings agencies appearing before Council. To the best of my recollection, Fitch and Standard and Poors appeared before City Council.

9. The debate between me and them related to the risk associated with Detroit entering into the Pension Obligation Certificates and these financial instruments, in light of the absolute authority of the pension boards to make investments (good and bad) the potential for a financial downturn, and in light of Detroit's precarious financial situation that had existed for years.

10. All of the representatives of the banks continually assured Council members that there would be no risk associated with the City adopting these financial instruments, and they would be a good deal for the City and the only way to address the debt burden of the City.

11. I recall that the City of Detroit Chief Financial Officer, who was a strong proponent of adopting the Financial Obligation Certificates, was Sean Werdlow.

12. After opposing the Pension Obligation Certificates and holding up their adoption for a number of months, under extreme pressure from the media, the Wall Street representatives, and even at the urging of some of the union leadership, and having

been repeatedly reassured by the banks and their agents that these financial instruments carried no risk for the City's future, the Council representatives who had supported me in my opposition to the adoption of the Pension Obligation Certificates, conceded and the administration had the votes for adoption of the issue.

13. This process reminded me of mortgage predatory lending, where unsophisticated homeowners were placed in exotic mortgage loans, assured there was no risk involved, and then lost their homes when the housing bubble burst.

14. After this process was over, Chief Financial Officer Werdlow was given a lucrative job with one of the financial institutions involved in the Pension Obligation Certificates.

FURTHER AFFIANT SAYETH NOT.

_____   DATE: Dec. 15, 2013
Sharon McPhail

Subscribed and sworn to before me
This _____ day of December, 2013.

_____
Notary Public
_____ County, _____
Acting in _____ County
My commission expires: _____