# U.S. Bankruptcy Court
## Eastern District of Michigan (Detroit)
## Bankruptcy Petition #: 13–53846–swr

*Date filed:* 07/18/2013

*Assigned to:* Judge Steven W. Rhodes
Chapter 9
Voluntary
No asset

| | | |
|---|---|---|
| ***Debtor In Possession***<br>**City of Detroit, Michigan**<br>2 Woodward Avenue<br>Suite 1126<br>Detroit, MI 48226<br>WAYNE–MI<br>Tax ID / EIN: 38–6004606 | represented by | **Bruce Bennett**<br>555 S. Flower Street<br>50th Floor<br>Los Angeles, CA 90071<br>(213) 489–3939<br>Email: bbennett@jonesday.com |

**Judy B. Calton**
Honigman Miller Schwartz &Cohn LLP
2290 First National Building
Detroit, MI 48226
(313) 465–7344
Fax : (313) 465–7345
Email: jcalton@honigman.com

**Eric D. Carlson**
150 West Jefferson
Suite 2500
Detroit, MI 48226
313–496–7567
Email: carlson@millercanfield.com

**Timothy A. Fusco**
150 West Jefferson
Suite 2500
Detroit, MI 48226–4415
(313) 496–8435
Email: fusco@millercanfield.com

**Jonathan S. Green**
150 W. Jefferson
Ste. 2500
Detroit, MI 48226
(313) 963–6420
Email: green@millercanfield.com

**David Gilbert Heiman**
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586–7175
Email: dgheiman@jonesday.com

**Robert S. Hertzberg**
4000 Town Center
Suite 1800

Southfield, MI 48075–1505
248–359–7300
Fax : 248–359–7700
Email: hertzbergr@pepperlaw.com

**Deborah Kovsky–Apap**
Pepper Hamilton LLP
4000 Town Center
Suite 1800
Southfield, MI 48075
(248) 359–7300
Fax : (248) 359–7700
Email: kovskyd@pepperlaw.com

**Kay Standridge Kress**
4000 Town Center
Southfield, MI 48075–1505
(248) 359–7300
Fax : (248) 359–7700
Email: kressk@pepperlaw.com

**Stephen S. LaPlante**
150 W. Jefferson Ave.
Suite 2500
Detroit, MI 48226
(313) 496–8478
Email: laplante@millercanfield.com

**Heather Lennox**
222 East 41st Street
New York, NY 10017
212–326–3939
Email: hlennox@jonesday.com

**Marc N. Swanson**
Miller Canfield Paddock and Stone, P.L.C
150 W. Jefferson
Suite 2500
Detroit, MI 48226
(313) 496–7591
Email: swansonm@millercanfield.com

| | | |
|---|---|---|
| *U.S. Trustee*<br>**Daniel M. McDermott** | represented by | **Sean M. Cowley (UST)**<br>United States Trustee<br>211 West Fort Street<br>Suite 700<br>Detroit, MI 48226<br>(313) 226–3432<br>Email: Sean.cowley@usdoj.gov |
| *Retiree Committee*<br>**Official Committee of Retirees** | represented by | **Sam J. Alberts**<br>1301 K Street, NW<br>Suite 600, East Tower<br>Washington, DC 20005–3364<br>(202) 408–7004<br>Email: sam.alberts@dentons.com |

**Paula A. Hall**
401 S. Old Woodward Ave.
Suite 400
Birmingham, MI 48009
(248) 971–1800

Email: hall@bwst–law.com

**Claude D. Montgomery**
620 Fifth Avenue
New York, NY 10020
(212) 632–8390
Email: claude.montgomery@dentons.com,docketny@dentons.com

**Carole Neville**
1221 Avenue of the Americas
25th Floor
New York, NY 10020
(212) 768–6889
Email: carole.neville@dentons.com

**Matthew Wilkins**
401 S. Old Woodward Ave.
Suite 400
Birmingham, MI 48009
(248) 971–1800
Email: wilkins@bwst–law.com

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 07/18/2013 | | 1 | Chapter 9 Voluntary Petition . Fee Amount $1213. Filed by City of Detroit, Michigan (Heiman, David) (Entered: 07/18/2013) |
| 08/19/2013 | | 481 | Brief *Attorney General Bill Schuette's Statement Regarding the Michigan Constitution and the Bankruptcy of the City of Detroit* Filed by Interested Party Bill Schuette (RE: related document(s)1 Voluntary Petition (Chapter 9)). (Bell, Michael) (Entered: 08/19/2013) |
| 08/19/2013 | | 504 | Objection to Eligibility to Chapter 9 Petition *filed by creditors Michael Wells, Janet Whitson, Mary Washington, Bruce Goldman and* Filed by Creditor Robbie Lee Flowers (Wertheimer, William) (Entered: 08/19/2013) |
| 08/19/2013 | | 506 | Objection to Eligibility to Chapter 9 Petition Filed by Creditor International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (Ceccotti, Babette) (Entered: 08/19/2013) |
| 08/26/2013 | | 642 | Order Regarding Eligibility Objections Notices of Hearings and Certifications Pursuant to 28 U.S.C. Section 2403(a) &(b) (RE: related document(s)335 Objection to Eligibility to Chapter 9 Petition filed by Creditor Lou Ann Pelletier, 337 Objection to Eligibility to Chapter 9 Petition filed by Creditor Michael K. Pelletier, 338 Objection to Eligibility to Chapter 9 Petition filed by Creditor Regina G. Bryant, 339 Objection to Eligibility to Chapter 9 Petition filed by Creditor Regina G. Bryant, 384 Objection to Eligibility to Chapter 9 Petition filed by Creditor Krystal A. Crittendon, 385 Objection to Eligibility to Chapter 9 Petition filed by Creditor Michael J. Abbott, 386 Objection to Eligibility to Chapter 9 Petition filed by Creditor Donald Glass, 387 Objection to Eligibility to Chapter 9 Petition filed by Creditor Calvin Turner, 388 Objection to Eligibility to Chapter 9 Petition filed by Creditor Michael G Benson, 389 Objection to Eligibility to Chapter 9 Petition filed by Creditor Joseph H Jones, 390 Objection to Eligibility to Chapter 9 Petition filed by Creditor Tracey Renee |

Tresvant, 391 Objection to Eligibility to Chapter 9 Petition filed by Creditor Charles Williams, 392 Objection to Eligibility to Chapter 9 Petition filed by Creditor Joyce Davis, 393 Objection to Eligibility to Chapter 9 Petition filed by Creditor David Bullock, 394 Objection to Eligibility to Chapter 9 Petition filed by Creditor Lewis Dukens, 395 Objection to Eligibility to Chapter 9 Petition filed by Creditor Shirley Tollivel, 396 Objection to Eligibility to Chapter 9 Petition filed by Creditor Zelma Kinchloe, 397 Objection to Eligibility to Chapter 9 Petition filed by Creditor LaVern Holloway, 398 Objection to Eligibility to Chapter 9 Petition filed by Creditor Karl E. Shaw, 399 Objection to Eligibility to Chapter 9 Petition filed by Creditor Althea Long, 400 Objection to Eligibility to Chapter 9 Petition filed by Creditor Alma Cozart, 401 Objection to Eligibility to Chapter 9 Petition filed by Creditor Olivia Gillon, 402 Objection to Eligibility to Chapter 9 Petition filed by Creditor Russ Bellant, 403 Objection to Eligibility to Chapter 9 Petition filed by Creditor Lorene Brown, 404 Objection to Eligibility to Chapter 9 Petition filed by Creditor Helen Powers, 405 Objection to Eligibility to Chapter 9 Petition filed by Creditor Russ Bellant, 407 Objection to Eligibility to Chapter 9 Petition filed by Creditor Preston West, 408 Objection to Eligibility to Chapter 9 Petition filed by Creditor Claudette Campbell, 409 Objection to Eligibility to Chapter 9 Petition filed by Creditor Raleigh Chambers, 411 Objection to Eligibility to Chapter 9 Petition filed by Creditor William Curtis Walton, 412 Objection to Eligibility to Chapter 9 Petition filed by Creditor Dwight Boyd, 413 Objection to Eligibility to Chapter 9 Petition filed by Creditor Johnnie R. Carr, 414 Objection to Eligibility to Chapter 9 Petition filed by Creditor Elmarie Dixon, 415 Objection to Eligibility to Chapter 9 Petition filed by Creditor Mary Dugans, 416 Objection to Eligibility to Chapter 9 Petition filed by Creditor Jacqueline Esters, 417 Objection to Eligibility to Chapter 9 Petition filed by Creditor William D. Ford, 418 Objection to Eligibility to Chapter 9 Petition filed by Creditor Stephen Johnson, 419 Objection to Eligibility to Chapter 9 Petition filed by Creditor Sallie M. Jones, 420 Objection to Eligibility to Chapter 9 Petition filed by Creditor Larene Parrish, 421 Objection to Eligibility to Chapter 9 Petition filed by Creditor Deborah Pollard, 422 Objection to Eligibility to Chapter 9 Petition filed by Creditor Samuel L. Riddle, 423 Objection to Eligibility to Chapter 9 Petition filed by Creditor Charles Taylor, 425 Objection to Eligibility to Chapter 9 Petition filed by Creditor Edward Lowe, 426 Objection to Eligibility to Chapter 9 Petition filed by Creditor Kwabena Shabu, 427 Objection to Eligibility to Chapter 9 Petition filed by Creditor Keetha R. Kittrell, 428 Objection to Eligibility to Chapter 9 Petition filed by Creditor Lorna Lee Mason, 429 Objection to Eligibility to Chapter 9 Petition filed by Creditor Ulysses Freeman, 430 Objection to Eligibility to Chapter 9 Petition filed by Creditor William Davis, 431 Objection to Eligibility to Chapter 9 Petition filed by Creditor Paulette Brown, 432 Objection to Eligibility to Chapter 9 Petition filed by Creditor Jerry Ford, 433 Objection to Eligibility to Chapter 9 Petition filed by Creditor William J. Howard, 435 Objection to Eligibility to Chapter 9 Petition filed by Creditor Sylvester Davis, 436 Objection to Eligibility to Chapter 9 Petition filed by Creditor Frank M. Sloan, 437 Objection to Eligibility to Chapter 9 Petition filed by Creditor Joann Jackson, 439 Objection to Eligibility to Chapter 9 Petition filed by Creditor Jean Vortkamp, 440 Objection to Eligibility to Chapter 9 Petition filed by Creditor Mary Diane Bukowski, 442 Objection to Eligibility to Chapter 9 Petition filed by Creditor William Hickey, 443 Objection to Eligibility to Chapter 9 Petition filed by Creditor Michael D Shane, 444 Objection to Eligibility to Chapter 9 Petition filed by Creditor Judith West, 446 Objection to

Eligibility to Chapter 9 Petition filed by Creditor Dennis Taubitz, 447 Objection to Eligibility to Chapter 9 Petition filed by Creditor Lucinda J. Darrah, 448 Objection to Eligibility to Chapter 9 Petition filed by Creditor David Dye, 451 Objection to Eligibility to Chapter 9 Petition filed by Creditor Sheilah Johnson, 454 Objection to Eligibility to Chapter 9 Petition filed by Creditor Leola Regina Crittendon, 455 Objection to Eligibility to Chapter 9 Petition filed by Creditor Angela Crockett, 456 Objection to Eligibility to Chapter 9 Petition filed by Creditor Dolores A. Thomas, 457 Objection to Eligibility to Chapter 9 Petition filed by Creditor Ailene Jeter, 458 Objection to Eligibility to Chapter 9 Petition filed by Creditor Cheryl Smith Williams, 459 Objection to Eligibility to Chapter 9 Petition filed by Creditor Phebe Lee Woodberry, 460 Objection to Eligibility to Chapter 9 Petition filed by Creditor Charles D Brown, 461 Objection to Eligibility to Chapter 9 Petition filed by Creditor Thomas Stephens, 462 Objection to Eligibility to Chapter 9 Petition filed by Creditor Aleta Atchinson–Jorgan, 463 Objection to Eligibility to Chapter 9 Petition filed by Creditor Arthur Evans, 464 Objection to Eligibility to Chapter 9 Petition filed by Creditor Horace E. Stallings, 465 Objection to Eligibility to Chapter 9 Petition filed by Creditor Lavarre W. Greene, 466 Objection to Eligibility to Chapter 9 Petition filed by Creditor Leonard Wilson, 467 Objection to Eligibility to Chapter 9 Petition filed by Creditor Rakiba Brown, 468 Objection to Eligibility to Chapter 9 Petition filed by Creditor Roosevelt Lee, 469 Objection to Eligibility to Chapter 9 Petition filed by Creditor Sandra Carver, 470 Objection to Eligibility to Chapter 9 Petition filed by Creditor Deborah Moore, 472 Objection to Eligibility to Chapter 9 Petition filed by Creditor Alice Pruitt, 474 Objection to Eligibility to Chapter 9 Petition filed by Creditor Linda Bain, 475 Objection to Eligibility to Chapter 9 Petition filed by Creditor Marzelia Taylor, 477 Objection to Eligibility to Chapter 9 Petition filed by Creditor Lucinda J. Darrah, 479 Objection to Eligibility to Chapter 9 Petition filed by Creditor Fraustin Williams, 480 Objection to Eligibility to Chapter 9 Petition filed by Creditor Randy Beard, 482 Objection to Eligibility to Chapter 9 Petition filed by Creditor Dempsey Addison, 484 Objection to Eligibility to Chapter 9 Petition filed by Interested Party International Union of Operating Engineers, Local 324, 485 Objection to Eligibility to Chapter 9 Petition filed by Creditor Anthony G. Wright, 486 Objection to Eligibility to Chapter 9 Petition filed by Interested Party Service Employees International Union, Local 517M, 489 Objection to Eligibility to Chapter 9 Petition filed by Creditor Timothy King, 490 Objection to Eligibility to Chapter 9 Petition filed by Creditor Jo Ann Watson, 491 Objection to Eligibility to Chapter 9 Petition filed by Creditor Charles D Brown, 492 Objection to Eligibility to Chapter 9 Petition filed by Creditor Cynthia Blair, 493 Objection to Eligibility to Chapter 9 Petition filed by Creditor The Chair of Saint Peter, 494 Objection to Eligibility to Chapter 9 Petition filed by Creditor Gretchen R Smith, 495 Objection to Eligibility to Chapter 9 Petition filed by Creditor David Sole, 496 Objection to Eligibility to Chapter 9 Petition filed by Creditor Floreen Williams, 502 Objection to Eligibility to Chapter 9 Petition filed by Creditor Donald Taylor, Interested Party Retired Detroit Police and Fire Fighers Association, Interested Party Donald Taylor, Interested Party Detroit Retired City Employees Association, Interested Party Shirley V Lightsey, Creditor Shirley V Lightsey, 504 Objection to Eligibility to Chapter 9 Petition filed by Creditor Robbie Lee Flowers, 505 Objection to Eligibility to Chapter 9 Petition filed by Creditor Michigan Council 25 Of The American Federation of State, County &Municipal Employees, AFL–CIO and

| | | | |
|---|---|---|---|
| | | | Sub–Chapter 98, City of Detroit Retirees, 506 Objection to Eligibility to Chapter 9 Petition filed by Creditor International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, 510 Objection filed by Creditor Michael Joseph Karwoski, 512 Objection to Eligibility to Chapter 9 Petition filed by Creditor Detroit Fire Fighters Association, I.A.F.F. Local 344, Creditor Detroit Police Officers Association, Creditor Detroit Police Lieutenants and Sergeants Association, Creditor Detroit Police Command Officers Association, 513 Objection filed by Creditor Heidi Peterson, 514 Objection to Eligibility to Chapter 9 Petition filed by Interested Party Center for Community Justice and Advocacy, 519 Objection to Eligibility to Chapter 9 Petition filed by Creditor General Retirement System of the City of Detroit, Creditor Police and Fire Retirement System of the City of Detroit, 520 Objection to Eligibility to Chapter 9 Petition filed by Creditor Retired Detroit Police Members Association). Hearing to be held on 9/18/2013 at 10:00 AM Courtroom 716, U.S. Courthouse, 231 W. Lafayette, Detroit, MI 48226 for 484 and for 504 and for 384 and for 506 and for 502 and for 486 and for 505 and for 512 and for 495 and for 519 and for 514 and for 520, Hearing to be held on 9/19/2013 at 10:00 AM Courtroom 242, U.S. Courthouse, 231 W. Lafayette, Detroit, MI 48226 for 422 and for 416 and for 338 and for 496 and for 459 and for 414 and for 454 and for 419 and for 408 and for 413 and for 409 and for 399 and for 401 and for 339 and for 468 and for 455 and for 494 and for 407 and for 394 and for 461 and for 479 and for 436 and for 433 and for 388 and for 426 and for 472 and for 395 and for 470 and for 482 and for 447 and for 456 and for 444 and for 469 and for 462 and for 465 and for 477 and for 389 and for 485 and for 474 and for 429 and for 437 and for 513 and for 427 and for 415 and for 404 and for 440 and for 335 and for 464 and for 489 and for 510 and for 475 and for 337 and for 411 and for 435 and for 425 and for 417 and for 443 and for 397 and for 442 and for 400 and for 405 and for 439 and for 490 and for 396 and for 432 and for 403 and for 466 and for 423 and for 391 and for 390 and for 386 and for 460 and for 392 and for 446 and for 421 and for 428 and for 387 and for 457 and for 420 and for 398 and for 451 and for 448 and for 385 and for 431 and for 402 and for 412 and for 393 and for 493 and for 491 and for 463 and for 458 and for 418 and for 492 and for 480 and for 467 and for 430; Eligibility Objections Overruled Because They Were Untimely 565, 539, 532, 536, 541, 530, 549, [534 and 633. (jjm) (Entered: 08/26/2013) |
| 09/06/2013 | | 741 | Response to (related document(s): 642 Order To Set Hearing) *Order Regarding Eligibility Objections* Filed by Creditor International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (Ceccotti, Babette) (Entered: 09/06/2013) |
| 09/12/2013 | | 821 | First Amended Order Regarding Eligibility Objections Notices of Hearings and Certifications Pursuant to 28 U.S.C. Sec. 2403(a) &(b) (RE: related document(s)642,384 Objection to Eligibility to Chapter 9 Petition filed by Creditor Krystal A. Crittendon, 484 Objection to Eligibility to Chapter 9 Petition filed by Interested Party International Union of Operating Engineers, Local 324, 486 Objection to Eligibility to Chapter 9 Petition filed by Interested Party Service Employees International Union, Local 517M, 495 Objection to Eligibility to Chapter 9 Petition filed by Creditor David Sole, 502 Objection to Eligibility to Chapter 9 Petition filed by Creditor Donald Taylor, Interested Party Retired Detroit Police and Fire Fighers Association, Interested Party Donald Taylor, |

| | | | |
|---|---|---|---|
| | | | Interested Party Detroit Retired City Employees Association, Interested Party Shirley V Lightsey, Creditor Shirley V Lightsey, 504 Objection to Eligibility to Chapter 9 Petition filed by Creditor Robbie Lee Flowers, 505 Objection to Eligibility to Chapter 9 Petition filed by Creditor Michigan Council 25 Of The American Federation of State, County &Municipal Employees, AFL–CIO and Sub–Chapter 98, City of Detroit Retirees, 506 Objection to Eligibility to Chapter 9 Petition filed by Creditor International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, 512 Objection to Eligibility to Chapter 9 Petition filed by Creditor Detroit Fire Fighters Association, I.A.F.F. Local 344, Creditor Detroit Police Officers Association, Creditor Detroit Police Lieutenants and Sergeants Association, Creditor Detroit Police Command Officers Association, 514 Objection to Eligibility to Chapter 9 Petition filed by Interested Party Center for Community Justice and Advocacy, 519 Objection to Eligibility to Chapter 9 Petition filed by Creditor General Retirement System of the City of Detroit, Creditor Police and Fire Retirement System of the City of Detroit, 520 Objection to Eligibility to Chapter 9 Petition filed by Creditor Retired Detroit Police Members Association, 805 Objection to Eligibility to Chapter 9 Petition filed by Retiree Committee Official Committee of Retirees). Hearing to be held on 10/15/2013 at 10:00 AM Courtroom 716, U.S. Courthouse, 231 W. Lafayette, Detroit, MI 48226 for 484 and for 504 and for 384 and for 506 and for 502 and for 486 and for 505 and for 512 and for 495 and for 519 and for 805 and for 514 and for 520, and Hearing to be held on 10/16/2013 at 10:00 AM Courtroom 716, U.S. Courthouse, 231 W. Lafayette, Detroit, MI 48226 (ckata) (Entered: 09/12/2013) |
| 10/11/2013 | | 1170 | Amended Objection to Eligibility to Chapter 9 Petition *(Amended Joint Objection of International Union, UAW and the Flowers Plaintiffs to the City of Detroit, Michigan's Eligibility for an Order for Relief Under Chapter 9 of the Bankruptcy Code)* Filed by Creditor International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (Ceccotti, Babette) (Entered: 10/11/2013) |
| 10/17/2013 | | 1217 | Order Regarding Further Briefing on Eligibility (RE: related document(s)821 ). (ckata) (Entered: 10/17/2013) |
| 10/17/2013 | | 1219 | Supplemental Response to (related document(s): 1085 Response) Filed by Interested Party State of Michigan (Attachments: # 1 Exhibit register of actions # 2 Exhibit 13–734–CZ summons and Complaint # 3 Exhibit 13–734CZ Dillion acknowledgment # 4 Exhibit 13–734CZ Defendants' Response to Declaratory Judgment # 5 Exhibit 13–734CZ Plaintiffs' Reply Brief # 6 Exhibit 13–734CZ Temporary Restraining Order # 7 Exhibit 13–734CZ Notice of Suggestion of Pendency # 8 Exhibit 13–734CZ POS # 9 Exhibit 13–734CZ Transcript 7–18–13 hearing # 10 Exhibit 13–734CZ transcript 7–19–13 hearing # 11 Exhibit 13–734CZ Order MSD # 12 Exhibit 13–734CZ Order Declaratory Judgment # 13 Exhibit 13–734CZ Order Motion to Stay) (Flancher, Steven) (Entered: 10/17/2013) |
| 10/17/2013 | | 1235 | Brief −− *Pre–Trial Brief of International Union, UAW and the Flowers Plaintiffs with Respect to the Eligibility of the City of Detroit, Michigan for an Order for Relief Under Chapter 9 of the Bankruptcy Code* Filed by Creditor International Union, United Automobile, Aerospace and Agricultural Implement Workers of |

| | | | |
|---|---|---|---|
| | | | America. (Ceccotti, Babette) (Entered: 10/17/2013) |
| 10/24/2013 | | 1356 | Pre−Trial Order (RE: 1354 Amended Final Pre−Trial Order (Related Doc # 1350)). (jjm) (Entered: 10/24/2013) |
| 10/25/2013 | | 1387 | Order Denying Motion in Limine (Related Doc # 1276). (jjm) (Entered: 10/25/2013) |
| 10/30/2013 | | 1469 | Supplemental Objection to Eligibility to Chapter 9 Petition (*Supplemental Brief of International Union, UAW in Support of Their Amended Objection [DE 1170]*) Filed by Creditor International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (Ceccotti, Babette) (Entered: 10/30/2013) |
| 11/08/2013 | | 1591 | Transcript Order Form of Hearing,*10/23/2013* Filed by Creditor International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (RE: related document(s)1411 Transcript). (Ceccotti, Babette) (Entered: 11/08/2013) |
| 11/08/2013 | | 1592 | Transcript Order Form of Hearing 10/24/2013, Filed by Creditor International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (RE: related document(s)1490 Transcript). (Ceccotti, Babette) (Entered: 11/08/2013) |
| 11/08/2013 | | 1593 | Transcript Order Form of Hearing 10/25/2013, Filed by Creditor International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (RE: related document(s)1501 Transcript). (Ceccotti, Babette) (Entered: 11/08/2013) |
| 11/08/2013 | | 1594 | Transcript Order Form of Hearing 10/28/2013, Filed by Creditor International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (RE: related document(s)1502 Transcript). (Ceccotti, Babette) (Entered: 11/08/2013) |
| 11/08/2013 | | 1595 | Transcript Order Form of Hearing 10/29/2013, Filed by Creditor International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (RE: related document(s)1503 Transcript). (Ceccotti, Babette) (Entered: 11/08/2013) |
| 11/08/2013 | | 1596 | Transcript Order Form of Hearing 11/4/13, Filed by Creditor International Union, United Automobile, Aerospace and Agricultural Implement Workers of America. (Ceccotti, Babette) (Entered: 11/08/2013) |
| 11/08/2013 | | 1597 | Transcript Order Form of Hearing 11/5/13, Filed by Creditor International Union, United Automobile, Aerospace and Agricultural Implement Workers of America. (Ceccotti, Babette) (Entered: 11/08/2013) |
| 11/08/2013 | | 1606 | Stipulation By and Between City of Detroit; Shirley V. Lightsey; Don Taylor; the Detroit Retired City Employees Association; the Retired Detroit Police and Firefighters Association; the Official |

| | | | |
|---|---|---|---|
| | | | Committee of Retirees; the United Automobile Workers; the General Retirement System of the City of Detroit; the Police and Fire Retirement System of the City of Detroit; the Detroit Public Safety Unions; and the Retired Detroit Police Members Association Re: Entry of Second Amended Final Pre–Trial Order . Filed by Debtor In Possession City of Detroit, Michigan. (Bennett, Bruce) (Entered: 11/08/2013) |
| 11/10/2013 | | 1647 | Second Amended Final Pre–Trial Order (RE: 1606 Stipulation By and Between City of Detroit; Shirley V. Lightsey; Don Taylor; the Detroit Retired City Employees Association; the Retired Detroit Police and Firefighters Association; the Official Committee of Retirees; the United Automobile Workers; the General Retirement System of the City of Detroit; the Police and Fire Retirement System of the City of Detroit; the Detroit Public Safety Unions; and the Retired Detroit Police Members Association Re: Entry of Second Amended Final Pre–Trial Order). (jjm) (Entered: 11/12/2013) |
| 11/11/2013 | | 1631 | Transcript Order Form of Hearing 11/7/13, Filed by Creditor International Union, United Automobile, Aerospace and Agricultural Implement Workers of America. (Ceccotti, Babette) (Entered: 11/11/2013) |
| 11/11/2013 | | 1632 | Transcript Order Form of Hearing 11/8/13, Filed by Creditor International Union, United Automobile, Aerospace and Agricultural Implement Workers of America. (Ceccotti, Babette) (Entered: 11/11/2013) |
| 11/13/2013 | | 1709 | Supplemental Brief *on Good Faith Negotiations* Filed by Creditor International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (RE: related document(s)1353 generic Notice). (Ceccotti, Babette) (Entered: 11/13/2013) |
| 11/22/2013 | | 1789 | Stipulation By and Between The City of Detroit, the Official Committee of Retirees, Shirley V. Lightsey, et al., the UAW, the Flowers Plaintiffs, the Detroit Public Safety Unions, AFSCME, the Retired Detroit Police Members Association and the Police and Fire Retirement System and the General Retirement System of the City of Detroit Re: Entry of an Order Regarding Exhibits Admitted into Evidence . Filed by Debtor In Possession City of Detroit, Michigan. (Bennett, Bruce) (Entered: 11/22/2013) |
| 11/25/2013 | | 1800 | Supplemental Order on Exhibits. (RE: related document(s)1789 Stipulation filed by Debtor In Possession City of Detroit, Michigan). (jjm) (Entered: 11/25/2013) |

Revised 05/08

# UNITED STATES BANKRUPTCY COURT
## Eastern District of Michigan

In re:

**City of Detroit, Michigan,**

Case No. 13-_____

_____ Debtor. _____ /

## BANKRUPTCY PETITION COVER SHEET

(The debtor must complete and file this form with the petition in every bankruptcy case. Instead of filling in the boxes on the petition requiring information on prior and pending cases, the debtor may refer to this form.)

### Part 1

"Companion cases," as defined in L.B.R. 1073-1(b), are cases involving any of the following: (1) The same debtor; (2) A corporation and any majority shareholder thereof; (3) Affiliated corporations; (4) A partnership and any of its general partners; (5) An individual and his or her general partner; (6) An individual and his or her spouse; or (7) Individuals or entities with any substantial identity of financial interest or assets.

Has a "companion case" to this case ever been filed at any time in this district or any other district? Yes ___ No **X**
**(If yes, complete Part 2.)**

### Part 2

For each companion case, state in chronological order of cases:

*Not applicable*

If the present case is a Chapter 13 case, state for each companion case:

*Not applicable*

### Part 3 - In a Chapter 13 Case Only

The Debtor(s) certify, re: 11 U.S.C. § 1328(f):                    *Not Applicable*
  **[indicate which]**

☐ Debtor(s) received a discharge issued in a case filed under Chapter 7, 11, or 12 during the 4-years before filing this case.

☐ Debtor(s) did **not** receive a discharge issued in a case filed under Chapter 7, 11, or 12 during the 4-years before filing this case.

☐ Debtor(s) received a discharge in a Chapter 13 case filed during the 2-years before filing this case.

☐ Debtor(s) did **not** receive a discharge in a Chapter 13 case filed during the 2-years before filing this case.

I declare under penalty of perjury that I have read this form and that it is true and correct to the best of my information and belief.

| | | |
|---|---|---|
| Kevyn D. Orr<br>Emergency Manager<br>City of Detroit | David G. Heiman (OH 0038271)<br>Heather Lennox (OH 0059649)<br>JONES DAY<br>North Point<br>901 Lakeside Avenue<br>Cleveland, OH 44114<br>Telephone: (216) 586-3939<br>Facsimile: (216) 579-0212<br>dgheiman@jonesday.com<br>hlennox@jonesday.com | Bruce Bennett (CA 105430)<br>JONES DAY<br>555 South Flower Street<br>Fiftieth Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 243-2382<br>Facsimile: (213) 243-2539<br>bbennett@jonesday.com | Jonathan S. Green (MI P33140)<br>Stephen S. LaPlante (MI P48063)<br>MILLER, CANFIELD, PADDOCK<br>  AND STONE, P.L.C.<br>150 West Jefferson<br>Suite 2500<br>Detroit, MI 48226<br>Telephone: (313) 963-6420<br>Facsimile: (313) 496-7500<br>green@millercanfield.com<br>laplante@millercanfield.com |

Date: July 18, 2013

ATTORNEYS FOR THE CITY OF DETROIT, MICHIGAN

B1 (Official Form 1) (04/13)

| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF MICHIGAN | VOLUNTARY PETITION |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**City of Detroit, Michigan** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all):<br>38-6004606 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**2 Woodward Avenue**<br>**Suite 1126**<br>**Detroit, Michigan**<br>ZIP CODE `48226` | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP CODE |
| County of Residence or of the Principal Place of Business:<br>**Wayne** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>ZIP CODE | |

| Type of Debtor<br>(Form of Organization)<br>(Check one box.) | Nature of Business<br>(Check one box.) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box.) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☒ Other (If debtor is not one of the above entities, check this box and state type of entity below.)<br>**Municipality** | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☒ Other | ☐ Chapter 7<br>☒ Chapter 9<br>☐ Chapter 11<br>☐ Chapter 12<br>☐ Chapter 13    ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding |

| Chapter 15 Debtors | Tax-Exempt Entity<br>(Check box, if applicable.) | Nature of Debts<br>(Check one box.) |
|---|---|---|
| Country of debtor's center of main interests:<br><br>Each country in which a foreign proceeding by, regarding, or against debtor is pending: | ☐ Debtor is a tax-exempt organization under title 26 of the United States Code (the Internal Revenue Code). | ☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."    ☒ Debts are primarily business debts. |

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☒ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | **Check one box:**<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>**Check if:**<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 (*amount subject to adjustment on 4/01/16 and every three years thereafter*).<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>**Check all applicable boxes:**<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☒ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| ☐ 1-49 | ☐ 50-99 | ☐ 100-199 | ☐ 200-999 | ☐ 1,000-5,000 | ☐ 5,001-10,000 | ☐ 10,001-25,000 | ☐ 25,001-50,000 | ☐ 50,001-100,000 | ☒ Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ☐ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☒ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ☐ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☒ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

| **Voluntary Petition** *(This page must be completed and filed in every case.)* | **Name of Debtor(s):** City of Detroit, Michigan |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.) | | |
|---|---|---|
| Location Where Filed: | Case Number: | Date Filed: |
| Location Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.) | | |
|---|---|---|
| Name of Debtor: | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

<table>
<tr>
<td>

**Exhibit A**

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)

☐ Exhibit A is attached and made a part of this petition.

</td>
<td>

**Exhibit B**

(To be completed if debtor is an individual whose debts are primarily consumer debts.)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).

X _____

Signature of Attorney for Debtor(s)        (Date)

</td>
</tr>
</table>

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☒ Yes, and Exhibit C is attached and made a part of this petition.

☐ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D, completed and signed by the debtor, is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D, also completed and signed by the joint debtor, is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____

(Name of landlord that obtained judgment)

_____

(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

B1 (Official Form 1) (04/13)

| Voluntary Petition | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case.)* | **City of Detroit, Michigan** |

## Signatures

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct. | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition. |
| [If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7. | (Check only one box.) |
| [If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b). | ☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached. |
| I request relief in accordance with the chapter of title 11, United States Code, specified in this petition. | ☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached. |
| X _____<br>Signature of Debtor | |
| X _____<br>Signature of Joint Debtor | X _____<br>(Signature of Foreign Representative) |
| Telephone Number (if not represented by attorney) | |
| Date | _____<br>(Printed Name of Foreign Representative) |

| Signature of Attorney* | Signature of Non-Attorney Bankruptcy Petition Preparer |
|---|---|
| X _[signature]_____<br>Signature of Attorney for Debtor(s) | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached. |
| David G. Heiman    Bruce Bennett    Jonathan S. Green<br>Heather Lennox    JONES DAY    Stephen S. LaPlante<br>JONES DAY    555 South Flower Street    MILLER, CANFIELD<br>North Point    Fiftieth Floor    PADDOCK AND STONE,<br>901 Lakeside Avenue    Los Angeles, CA 90071    P.L.C.<br>Cleveland, OH 44114    Tel: (213) 243-2382    150 West Jefferson<br>Tel: (216) 586-3939    Fax: (213) 243-2539    Suite 2500<br>Fax: (216) 579-0212    bbennett@jonesday.com    Detroit, MI 48226<br>dgheiman@jonesday.com      Tel: (313) 963-6420<br>hlennox@jonesday.com      Fax: (313) 496-7500<br>       green@millercanfield.com<br>       laplante@millercanfield.com | _____<br>Printed Name and title, if any, of Bankruptcy Petition Preparer |
| _July 18, 2013_<br>Date | _____<br>Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.) |
| *In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | _____<br>_____ |
| | Address |

| Signature of Debtor (Corporation/Partnership) | |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor. | X _____<br>Signature |
| The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition. | _____<br>Date |
| X _[signature]_____<br>Signature of Authorized Individual | Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above. |
| Kevyn D. Orr<br>Printed Name of Authorized Individual | Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual. |
| Emergency Manager, City of Detroit<br>Title of Authorized Individual | If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person. |
| July 18, 2013<br>Date | *A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

B 1C (Official Form 1, Exhibit C) (9/01)

*[If, to the best of the debtor's knowledge, the debtor owns or has possession of property that poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety, attach this Exhibit "C" to the petition.]*

# UNITED STATES BANKRUPTCY COURT

## Eastern District of Michigan

| | | | |
|---|---|---|---|
| In re City of Detroit, Michigan, _____ , | ) | Case No. 13-_____ | |
| Debtor. | ) | | |
| | )· | | |
| | ) | Chapter 9 _____ | |

## EXHIBIT "C" TO VOLUNTARY PETITION

1. Identify and briefly describe all real or personal property owned by or in possession of the debtor that, to the best of the debtor's knowledge, poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety (attach additional sheets if necessary):

Certain properties owned by City of Detroit, Michigan (the "City") have been (a) identified by the City as being structurally unsound and in danger of collapse and (b) scheduled for demolition (collectively, the "Demolition Properties"). The Demolition Properties may pose a threat of imminent harm to public health and/or safety. A list of the Demolition Properties is attached hereto as Schedule 1.

To its knowledge, the City currently does not own any property that is a Superfund Site as designated by the United States Environmental Protection Agency. The City currently owns (in whole or in part) various so-called "Brownfields properties" (collectively, the "Brownfields Properties") regulated by the Michigan Department of Environmental Quality. Currently, one or more private parties (rather than the City) are addressing any identified environmental conditions that might be present at the Brownfields Properties. To the City's knowledge, none of the Brownfields Properties are alleged to pose a threat of imminent and identifiable harm to the public health or safety. A representative list of certain Brownfields Properties is attached hereto as Schedule 2.

In addition to the foregoing, the City owns or is possession of approximately 60,000 parcels of land within the City's geographic boundaries and more than 7,000 vacant structures that are not designated as Demolition Properties or Brownfields Properties (collectively, the "Blighted Properties"). It is possible that some of the Blighted Properties could pose a threat to public health or safety. Although the City is not aware of any Blighted Properties currently posing a threat of "imminent and identifiable harm," the City notes the existence of these properties on this Exhibit C out of an abundance of caution.

2. With respect to each parcel of real property or item of personal property identified in question 1, describe the nature and location of the dangerous condition, whether environmental or otherwise, that poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety (attach additional sheets if necessary):

See attached Schedule 1 with respect to the Demolition Properties and the attached Schedule 2 with respect to the Brownfields Properties.

# SCHEDULE 1

## City of Detroit, Michigan Demolition Properties

| Street Address | Property Type | Street Address | Property Type |
|---|---|---|---|
| 3922 14th | Residential | 20245 Derby | Residential |
| 3654 30th | Residential | 125 Dey | Residential |
| 12032 Abington | Residential | 14190 Dolphin | Residential |
| 2668 Anderdon | Residential | 229 Edmund Pl. | Commercial |
| 821 Anderson | Commercial | 3333 Edsel | Residential |
| 13501 Appoline | Residential | 203 Erskine | Residential |
| 7593 Arcola | Residential | 209 Erskine | Residential |
| 14125 Ardmore | Residential | 4417 Ewers | Residential |
| 13476 Arlington | Residential | 19332 Exeter | Residential |
| 13544 Arlington | Residential | 19339 Exeter | Residential |
| 10384 Aurora | Residential | 20467 Exeter | Residential |
| 2457 Beaubien | Commercial | 1731 Fischer | Residential |
| 2486 Beaubien | Residential | 13556 Fleming | Residential |
| 14371 Bentler | Residential | 7666 W. Fort | Commercial |
| 5317 Bewick | Residential | 5334 French Rd. | Residential |
| 19411 Blake | Residential | 6007 Frontenac | Commercial |
| 19700 Bloom | Residential | 18627 Gable | Residential |
| 6072 Braden | Residential | 3727 Garland | Residential |
| 9665 Broadstreet | Residential | 3917 Garland | Residential |
| 9616 Bryden | Residential | 4466 Garland | Residential |
| 6810 Bulwer | Commercial | 4470 Garland | Residential |
| 1454 Burlingame | Residential | 4003 Gilbert | Residential |
| 13469 Caldwell | Residential | 12511 Glenfield | Residential |
| 2009 Campbell | Residential | 14232 Goddard | Residential |
| 14203 E. Canfield | Residential | 14239 Goddard | Residential |
| 19221 Cardoni | Residential | 11648 Grandmont | Residential |
| 19324 Carrie | Residential | 5801 Grandy [1] | Commercial |
| 7626 Central | Residential | 5801 Grandy [2] | Commercial |
| 2535 Chalmers | Residential | 2937 Grant | Residential |
| 8115 Chamberlain | Residential | 5589 Guilford | Residential |
| 13199 Charest | Residential | 222 S. Harbaugh | Residential |
| 20190 Charleston | Residential | 2900 Harding | Residential |
| 3164 Charlevoix | Commercial | 8815 Harper | Commercial |
| 5083 Chatsworth | Residential | 17226 Hasse | Residential |
| 5717 Chene | Commercial | 7975 Hathon | Residential |
| 3636 Cicotte | Residential | 19227 Havana | Residential |
| 3032 Clements | Residential | 19309 Havana | Residential |
| 1117 Concord | Residential | 19321 Havana | Residential |
| 6628 Crane | Residential | 19397 Havana | Residential |
| 1243 Crawford | Residential | 7886 Helen | Residential |
| 2012 Dalzelle | Residential | 6200 Hereford | Residential |
| 20258 Danbury | Residential | 9905 Herkimer | Residential |
| 7787 Dayton | Residential | 1955 Highland | Residential |
| 8475 Dearborn | Residential | 1778 Holcomb | Residential |
| 1950 Dearing | Residential | 4407 Holcomb | Residential |
| 1956 Dearing | Residential | 4412 Holcomb | Residential |
| 1960 Dearing | Residential | 7202 Holmes | Residential |
| 2027 Dearing | Residential | 9278 Holmur | Residential |
| 8839 Dennison | Residential | 19925 Hoover | Commercial |

13-53846-tjt Doc 2276-1 Filed 12/20/13 Entered 12/20/13 16:08:43 Page 15 of 58
13-53846-swr Doc 6 Filed 07/18/13 Entered 07/18/13 16:09:24 Page 15 of 58

15

| Street Address | Property Type | | Street Address | Property Type |
|---|---|---|---|---|
| 6360 Horatio | Residential | | 5115 Nottingham | Residential |
| 15518 Idaho [1] | Commercial | | 8811 Olivet | Residential |
| 15518 Idaho [2] | Commercial | | 8917 Otsego | Residential |
| 12748 Ilene | Residential | | 15799 Parkside | Residential |
| 20136 Ilene | Residential | | 18401 Pembroke | Residential |
| 15778 Iliad | Residential | | 11172 Promenade | Residential |
| 5290 Ivanhoe | Residential | | 2101 Puritan | Commercial |
| 6435 Julian | Commercial | | 5807 Renville | Residential |
| 8545 Kenney | Residential | | 1957 Richton | Residential |
| 13989 Kentucky | Residential | | 534 W. Robinwood | Residential |
| 13301 Kercheval | Commercial | | 6119 Rohns | Residential |
| 5925 Kopernick | Residential | | 14381 Rosa Parks Blvd. | Unknown |
| 17137 Lamont | Residential | | 11735 Rutherford | Residential |
| 17208 Lamont | Residential | | 6835 Seminole | Residential |
| 3839 Lanman | Residential | | 5737 E. Seven Mile | Commercial |
| 5206 Lawndale | Residential | | 2008 Sharon | Residential |
| 2194 Lemay | Residential | | 13422 Shields | Residential |
| 3958 Lemay | Residential | | 10201 Shoemaker | Commercial |
| 1601 Liddesdale | Residential | | 10956 Shoemaker | Commercial |
| 1029 Liebold | Residential | | 6750 Sparta | Residential |
| 5065 Lillibridge | Residential | | 14291 Spring Garden | Commercial |
| 15744 Livernois | Commercial | | 4467 St. Clair | Residential |
| 12558 Longview | Residential | | 6915 St. John | Residential |
| 12767 Loretto | Residential | | 7180 St. John | Residential |
| 8881 Louis | Residential | | 18805 St. Louis | Commercial |
| 13441 Lumpkin | Residential | | 1928 Stanley | Residential |
| 14242 Mack (a/k/a 3181 Lakewood) | Commercial | | 12746 Strasburg | Residential |
| 12368 MacKay | Residential | | 8104 Thaddeus | Residential |
| 12393 MacKay | Residential | | 4832 Toledo | Residential |
| 12398 MacKay | Residential | | 6195 Townsend | Residential |
| 13569 MacKay | Residential | | 9778 Traverse | Residential |
| 13909 MacKay | Residential | | 17231 Trinity | Residential |
| 13927 MacKay | Residential | | 2634 Tuxedo | Residential |
| 13952 MacKay | Residential | | 2522-4 Tyler | Residential |
| 13977 MacKay | Residential | | 2660 Tyler | Residential |
| 13983 MacKay | Residential | | 9526 Van Dyke | Commercial |
| 459 Manistique | Residential | | 2030 Vinewood | Residential |
| 12000 Mansfield | Residential | | 5757 Vinewood | Commercial |
| 8129 Marcus | Residential | | 15451 Virgil | Residential |
| 4588 Marseilles | Residential | | 15300 E. Warren (Bldgs. 101 & 102) | Commercial |
| 9343 N. Martindale | Residential | | 64 Watson | Commercial |
| 8320 Maxwell | Residential | | 6414 Willette | Unknown |
| 8326 Maxwell | Residential | | 4364 Woodhall | Residential |
| 4766 McDougall | Commercial | | 11640 Woodmont | Residential |
| 2122 Meade | Residential | | 12075 Woodmont | Residential |
| 2420 Meade | Residential | | 12136 Woodmont | Residential |
| 3697 Medbury | Residential | | 12153 Woodmont | Residential |
| 11654 Meyers | Residential | | 11365 Yosemite | Residential |
| 8911 Milner | Residential | | 11402 Yosemite | Residential |
| 2652 Norman | Residential | | | |
| 10002 Nottingham | Residential | | | |

# SCHEDULE 2

## City of Detroit, Michigan Brownfields Properties

| Name of Site | Description |
|---|---|
| Former Detroit Coke Site | 7819 West Jefferson Avenue |
| Belleview Development (Uniroyal) Site | 600 East Jefferson. 43-acre former Uniroyal site located in the East Riverfront District, bounded by Jefferson Avenue (to the north), MacArthur Bridge (to the east), Detroit River (to the south) and Meldrum Street (to the west). |
| Riverside Park Site | 3085 West Jefferson Avenue. West Grand Boulevard and 24th Street along the Detroit River. |

13-53846-tjt Doc 2276-1 Filed 12/20/13 Entered 12/20/13 16:08:43 Page 17 of 58
18-53846-swr Doc 6 Filed 07/18/13 Entered 07/18/13 16:09:22 Page 17 of 26

17



### EMERGENCY MANAGER
### CITY OF DETROIT

### ORDER No. 13

### FILING OF A PETITION UNDER CHAPTER 9
### OF TITLE 11 OF THE UNITED STATES CODE

BY THE AUTHORITY VESTED IN THE EMERGENCY MANAGER
FOR THE CITY OF DETROIT
PURSUANT TO MICHIGAN'S PUBLIC ACT 436 OF 2012,
KEVYN D. ORR, THE EMERGENCY MANAGER,
ISSUES THE FOLLOWING ORDER:

*Whereas,* on March 28, 2013, Michigan Public Act 436 of 2012 ("PA 436") became effective and Kevyn D. Orr became the Emergency Manager (the "EM") for the City of Detroit (the "City") with all the powers and duties provided under PA 436; and

Pursuant to section 9(2) of PA 436, the EM "shall act for and in the place and stead of" the Detroit Mayor and City Council; and

Section 9(2) of PA 436 also grants the EM "broad powers in receivership to rectify the financial emergency and to assure the fiscal accountability of the [City] and the [City's] capacity to provide or cause to be provided necessary governmental services essential to the public health, safety, and welfare;" and

Pursuant to section 10(1) of PA 436, the EM may "issue to the appropriate local elected and appointed officials and employees, agents, and contractors of the local government the orders the [EM] considers necessary to accomplish the purposes of this act;" and

Section 18(1) of PA 436 provides that "[i]f, in the judgment of the [EM], no reasonable alternative to rectifying the financial emergency of the local government which is in receivership exists, then the [EM] may recommend to the governor and the

state treasurer that the local government be authorized to proceed under chapter 9" of title 11 of the United States Code (the "Bankruptcy Code"); and

Section 18(1) of PA 436 further provides that "[i]f the governor approves of the [EM's] recommendation, the governor shall inform the state treasurer and the emergency manager in writing of the decision.... Upon receipt of the written approval, the emergency manager is authorized to proceed under chapter 9 [of the Bankruptcy Code]. This section empowers the local government for which an emergency manager has been appointed to become a debtor under [the Bankruptcy Code], as required by section 109 of [the Bankruptcy Code], and empowers the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9" of the Bankruptcy Code; and

In accordance with section 18 of PA 436, the EM has recommended to the Governor of Michigan (the "Governor") and the Michigan State Treasurer (the "State Treasurer") that the City be authorized to proceed under chapter 9 of the Bankruptcy Code (the "Recommendation"); and

The Governor has provided the State Treasurer and the EM with his written approval of the Recommendation, a true and correct copy of which is attached hereto as Exhibit A, thereby authorizing the City to proceed under chapter 9.

**It is hereby ordered that:**

1. The City shall file a petition for relief under chapter 9 of the Bankruptcy Code (the "Petition") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court").

2. The City's Corporation Counsel, financial advisors, outside legal advisors and other officers and employees of the City, as applicable, are hereby authorized and directed, on behalf of and in the name of the City, to execute and verify the Petition and related Bankruptcy Court filings and perform any and all such acts as are reasonable, appropriate, advisable, expedient, convenient, proper or necessary to carry out this Order, as and to the extent directed by the EM or his designee.

3. If any component of this Order is declared illegal, unenforceable or ineffective in a legal or other forum or proceeding such component shall be deemed severable so that all other components contained in this Order shall remain valid and effective.

4. This Order is effective immediately upon the date of execution below.

5. This Order shall be distributed to the Mayor, City Council members and all department heads.

6. The EM may modify, rescind, or replace this Order at any time.

Dated:   July 18, 2013

By: _____
Kevyn D. Orr
Emergency Manager
City of Detroit

cc:      State of Michigan Department of Treasury
         Mayor David Bing
         Members of Detroit City Council

3

# EXHIBIT A

**Governor's Written Approval of Recommendation**



RICK SNYDER
GOVERNOR

BRIAN CALLEY
LT. GOVERNOR

**VIA HAND AND ELECTRONIC DELIVERY**                    July 18, 2013

Kevyn D. Orr
Emergency Manager
City of Detroit
Coleman A. Young Municipal Center
2 Woodward Ave., Suite 1126
Detroit, MI 48226

Andrew Dillon
State Treasurer
Michigan Department of Treasury
4th Floor Treasury Building
430 W. Allegan Street
Lansing, MI 48992

Re: Authorization to Commence Chapter 9 Bankruptcy Proceeding

Dear Mr. Orr and Mr. Dillon,

I have reviewed Mr. Orr's letter of July 16, 2013, requesting my approval of his recommendation to commence a bankruptcy proceeding for the City of Detroit under Chapter 9 of title 11 of the United States Code. As you know, state law requires that any such recommendation must first be approved by the Governor before the emergency manager may take that step. MCL 141.1558. For the reasons discussed below, I hereby approve that recommendation and authorize Mr. Orr to make such a filing.

<u>**Current Financial Emergency**</u>

In reviewing Mr. Orr's letter, his Financial and Operating Plan, and his report to creditors, it is clear that the financial emergency in Detroit cannot be successfully addressed outside of such a filing, and it is the only reasonable alternative that is available. In other words, the City's financial emergency cannot be satisfactorily rectified in a reasonable period of time absent this filing.

I have reached the conclusion that this step is necessary after a thorough review of all the available alternatives, and I authorize this necessary step as a last resort to return this great City to financial and civic health for its residents and taxpayers. This decision comes in the wake of 60 years of decline for the City, a period in which reality was often

ignored. I know many will see this as a low point in the City's history. If so, I think it will also be the foundation of the City's future – a statement I cannot make in confidence absent giving the City a chance for a fresh start, without burdens of debt it cannot hope to fully pay. Without this decision, the City's condition would only worsen. With this decision, we begin to provide a foundation to rebuild and grow Detroit.

Both before and after the appointment of an emergency manager, many talented individuals have put enormous energy into attempting to avoid this outcome. I knew from the outset that it would be difficult to reverse 60 years of decline in which promises were made that did not reflect the reality of the ability to deliver on those promises. I very much hoped those efforts would succeed without resorting to bankruptcy. Unfortunately, they have not. We must face the fact that the City cannot and is not paying its debts as they become due, and is insolvent.

After reading Mr. Orr's letter, the Financial and Operating Plan, and the report to creditors, I have come to four conclusions.

1. Right now, the City cannot meet its basic obligations to its citizens.

2. Right now, the City cannot meet its basic obligations to its creditors.

3. The failure of the City to meet its obligations to its citizens is the primary cause of its inability to meet its obligations to its creditors.

4. The only feasible path to ensuring the City will be able to meet obligations in the future is to have a successful restructuring via the bankruptcy process that recognizes the fundamental importance of ensuring the City can meet its basic obligations to its citizens.

I will explain how I came to each conclusion.

**Inability to Meet Obligations to Its Citizens.** As Mr. Orr's Financial and Operating Plan and the June 14 Creditor Proposal have noted, the scale and depth of Detroit's problems are unique. The City's unemployment rate has nearly tripled since 2000 and is more than double the national average. Detroit's homicide rate is at the highest level in nearly 40 years, and it has been named as one of the most dangerous cities in America for more than 20 years. Its citizens wait an average of 58 minutes for the police to respond to their calls, compared to a national average of 11 minutes. Only 8.7% of cases are solved, compared to a statewide average of 30.5%. The City's police cars, fire trucks, and ambulances are so old that breakdowns make it impossible to keep up the fleet or properly carry out their roles. For instance, only a third of the City's ambulances were in service in the first quarter of 2013. Similarly, approximately 40% of the City's street lights were not functioning in that quarter and the backlog of complaints is more than 3,300 long. Having large swaths of largely abandoned structures -- approximately 78,000 -- creates additional public safety problems and reduces the quality of life in the City. Mr. Orr is correct that meeting the obligations the City has to

its citizens to provide basic services requires more revenue devoted to services, not less.

**Inability to Meet Obligations to Its Creditors.** The City has more than $18 billion in accrued obligations. A vital point in Mr. Orr's letter is that Detroit tax rates are at their current legal limits, and that even if the City was legally able to raise taxes, its residents cannot afford to pay additional taxes. Detroiters already have a higher tax rate than anywhere in Michigan, and even with that revenue the City has not been able to keep up with its basic obligations, both to its citizens and creditors. Detroit simply cannot raise enough revenue to meet its current obligations, and that is a situation that is only projected to get worse absent a bankruptcy filing.

**Failure to Meet Obligations to Citizens Creates Failure to Meet Obligations to Creditors.** Mr. Orr's letter and prior report put in stark reality the dramatic impact of the City's plummeting population. While many who love Detroit still live there, many other Detroiters at heart could not justify the sacrifice of adequate services. The City's population has declined 63% from its peak, including a 28% decline since 2000. That exodus has brought Detroit to the point that it cannot satisfy promises it made in the past. A decreasing tax base has made meeting obligations to creditors impossible. Mr. Orr is correct when he says the City cannot raise the necessary revenue through tax increases, and it cannot save the necessary revenue through reducing spending on basic services. Attempts to do so would only decrease the population and tax base further, making a new round of promises unfulfillable.

**Only One Feasible Path Offers a Way Out.** The citizens of Detroit need and deserve a clear road out of the cycle of ever-decreasing services. The City's creditors, as well as its many dedicated public servants, deserve to know what promises the City can and will keep. The only way to do those things is to radically restructure the City and allow it to reinvent itself without the burden of impossible obligations. Despite Mr. Orr's best efforts, he has been unable to reach a restructuring plan with the City's creditors. I therefore agree that the only feasible path to a stable and solid Detroit is to file for bankruptcy protection.

The past weeks have reaffirmed my confidence that Mr. Orr has the right priorities when it comes to the City of Detroit. I am reassured to see his prioritization of the needs of citizens to have improved services. I know we share a concern for the public employees who gave years of service to the City and now fear for their financial future in retirement, and I am confident that all of the City's creditors will be treated fairly in this process. We all believe that the City's future must allow it to make the investment it needs in talent and in infrastructure, all while making only the promises it can keep. Let us remain in close communication regarding measures Mr. Orr might take so we can discuss the possible impacts that might occur both within and outside of the City.

## Contingencies

2012 PA 436 provides that my approval of the recommendation to commence a Chapter 9 proceeding may place contingencies on such a filing. MCL 141.1558(1). I am choosing not to impose any such contingencies today. Federal law already contains the most important contingency – a requirement that the plan be legally executable. 11 USC 943(b)(4).

## Conclusion

In conclusion, I find Mr. Orr's Recommendation Letter to be persuasive, especially in conjunction with his prior reports laying out the level of services the City can provide and its financial ability to meet its obligations to creditors. I am also convinced that Mr. Orr has exercised his best efforts to arrive at a restructuring plan with the City's creditors outside of bankruptcy, to no avail. Given these facts, the only feasible path to sustainability for the City of Detroit is a filing under chapter 9 of the bankruptcy code. Therefore, I hereby approve Mr. Orr's recommendation and authorize the emergency manager to make such a filing on behalf of the City of Detroit and to take all actions that are necessary and appropriate toward that end.

Sincerely,

Richard D. Snyder
Governor
State of Michigan

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN.
    Debtor.

Chapter 9

No. 13-53846

HON. STEVEN W. RHODES

_____/

## ATTORNEY GENERAL BILL SCHUETTE'S STATEMENT REGARDING THE MICHIGAN CONSTITUTION AND THE BANKRUPTCY OF THE CITY OF DETROIT

Bill Schuette
Attorney General

John J. Bursch
Solicitor General

B. Eric Restuccia
Deputy Solicitor General

Larry Brya
Special Assistant Attorney General

Michael Bell
Patrick Fitzgerald
Linus Banghart-Linn
Heather Meingast
Will Bloomfield
Assistant Attorneys General

Attorneys for
Attorney General Bill Schuette
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-3203
BellM1@michigan.gov
P47890

Dated: August 19, 2013

# TABLE OF CONTENTS

Page

Table of Contents .................................................................................i

Index of Authorities..............................................................................ii

Concise Statement of Issue Presented....................................................v

Statement of Interest of Attorney General..............................................1

Introduction........................................................................................2

Argument............................................................................................5

I.  The City of Detroit is eligible to proceed under Chapter 9,
    but the City remains subject to Michigan's Constitution. .............5

II. Michigan's Constitution bars the diminution or impairment
    of pensions by any means................................................................9

    A.  The Michigan Constitution established that pensioners
        have a contractual right to their pensions. ..........................9

    B.  Michigan's constitutional protection of pensions is
        broader than that afforded to ordinary contracts. ..............13

    C.  The Bankruptcy Code recognizes the State's
        constitutional limits on municipalities in Chapter 9
        bankruptcy. ........................................................................17

Conclusion and Relief Requested.........................................................19

i

13-53846-swr Doc 2274-1  Filed 08/29/13  Entered 08/29/13 17:48:62  Page 26 of 58
13-53846-swr Doc 2274-1  Filed 08/29/13  Entered 08/29/13 15:49:02  Page 27 of 58    27

# INDEX OF AUTHORITIES

Page

**Cases**

*Ass'n of Prof'l & Technical Employees v. City of Detroit,*
398 N.W.2d 436 (Mich. Ct. App. 1986) ................................................. 11

*Attorney General v. Connolly,*
160 N.W. 581 (Mich. 1916) ...................................................................... 9

*Brown v. Highland Park,*
30 N.W.2d 798 (Mich. 1948) .................................................................... 9

*Cranford v. Wayne County,*
402 N.W.2d 64 (Mich. 1986) .................................................................. 15

*Energy Reserves Group, Inc. v. Kan. Power & Light Co.,*
459 U.S. 400 (1983) ......................................................................... 3, 13

*Garcia v. San Antonio Metro. Transit Auth.,*
469 U.S. 528 (1985) .............................................................................. 17

*In re Advisory Opinion re Constitutionality of 1972 PA 258,*
209 N.W.2d 200 (Mich. 1973) ........................................................ 12, 16

*In re City of Stockton,*
475 B.R. 720 (Bankr. E.D. Cal. 2012) ...................................... 6, 13, 14

*In re City of Vallejo,*
403 B.R. 72 (Bankr. E.D. Cal. 2009) ................................................... 18

*In re City of Vallejo,*
432 B.R. 262 (E.D. Cal. 2010) ............................................................. 18

*In re Request for Advisory Opinion Regarding Constitutionality of
2011 PA 38,*
806 N.W. 2d 683 (Mich. 2011) .............................................................. 14

*New York v. United States,*
505 U.S. 144 (1992) ................................................................................ 8

*Romein v. General Motors Corp.*,
   462 N.W.2d 555 (Mich. 1990)......................................................3, 13, 14

*Seitz v. Probate Judges Ret. Sys.*,
   474 N.W.2d 125 (Mich. Ct. App. 1991) ..........................................11, 16

*Stone v. State*,
   651 N.W.2d 64 (Mich. 2002)................................................................15

*Studier v. Michigan Pub. Sch. Employees' Retirement Bd.*,
   698 N.W.2d 350 (Mich. 2005)........................................................14, 16

*United States Trust Co. v. New Jersey*,
   431 U.S. 1 (1977) ...............................................................................14

## Statutes

11 U.S.C. § 109(c)(2) ..............................................................................2

11 U.S.C. § 1121(a) ................................................................................2

11 U.S.C. § 1121(c) ................................................................................2

11 U.S.C. § 365 ....................................................................................18

11 U.S.C. § 903 .........................................................................8, 17, 18

11 U.S.C. § 904 ....................................................................................18

11 U.S.C. § 941 ..................................................................................2, 6

11 U.S.C. § 943(b)(4)...............................................................................2

Mich Comp. Laws § 141.1549(9)(a) ..........................................................5

Mich Comp. Laws § 141.1549(9)(b) ..........................................................5

Mich Comp. Laws § 141.1549(9)(c) ..........................................................5

Mich. Comp. Laws § 14.28 .......................................................................1

Mich. Comp. Laws § 141.1549(2) .............................................................5

Mich. Comp. Laws § 141.1549(3)(d) ............................................ 5

Mich. Comp. Laws § 141.1552(1)(m)(ii) ...................................... 7

Mich. Comp. Laws § 141.1558(1) ...................................... 5, 6, 7

Mich. Comp. Laws § 15.151 ....................................................... 5

## Other Authorities

1 Official Record of the State of Michigan Constitutional
  Convention of 1961, 770–71 ........................................ 10, 12

2012 PA 436 ............................................................... 5, 6, 7

5 William J. Norton, Jr. & William L. Norton III, Norton
  Bankruptcy Law and Practice § 90:4 (3d ed. 2009) ............................ 8

6 Collier on Bankruptcy ¶ 903.02 (Alan N. Resnick and Henry J.
  Sommer eds. 16th ed.) ................................................ 6

AG Op. No. 7272, June 13, 2013 ............................................ 15

Article 11, §11-101, ¶ 3 of the City of Detroit's Home Rule City
  Charter ............................................................. 11

## Constitutional Provisions

Cal. Const. art. I, § 9 .......................................................... 14

Mich. Const. art. I, § 3 .......................................................... 3

Mich. Const. art. I, § 4 .......................................................... 3

Mich. Const. art. I, § 10 ....................................................... 3, 13

Mich. Const. art. V, § 21 ......................................................... 1

Mich. Const. art. IX, § 24 ............................................... passim

Mich. Const. art. X, § 2 ...................................................... 11, 15

Mich. Const. art. XI, § 1 .................................................... 1, 5

# CONCISE STATEMENT OF ISSUE PRESENTED

1. Whether the City of Detroit was eligible to file Chapter 9 bankruptcy under 11 U.S.C. § 109(c).

# STATEMENT OF INTEREST OF ATTORNEY GENERAL

The Attorney General is the chief legal officer for the State of Michigan and is empowered by State law to intervene and appear in any legal action in which the People of Michigan "in his own judgment" have an interest.  Mich. Comp. Laws § 14.28.  His office is created by the Michigan Constitution, and he is elected by the people.  Mich. Const. art. V, § 21.  He is sworn to uphold the Michigan Constitution. Mich. Const. art. XI, § 1.

Consistent with this responsibility and authority, Attorney General Bill Schuette participates in this case to ensure that all necessary actions are taken to fully protect (a) the City's pensioners (as required by the Michigan Constitution and other applicable law), (b) the art collection of the Detroit Institute of Arts, and (c) all other interests of the People of Michigan.

The City of Detroit is Michigan's largest city and municipal employer.  It is imperative that this bankruptcy yield a new, revitalized City, but this process must occur in such a way as to ensure the City abides by its constitutional limitations.  The State's most fundamental law—its Constitution—cannot be sacrificed during the process.

## INTRODUCTION

Michigan Attorney General Bill Schuette does not take issue with the City of Detroit's eligibility to file a Chapter 9 bankruptcy under 11 U.S.C. § 109(c)(2). Michigan Governor Rick Snyder had the authority to and did properly authorize the City's filing, and there is no serious question that the City is insolvent. Accordingly, this Court is the proper venue to decide the issues related to the City's financial crisis.

But a bankruptcy filing does not relieve the City and its emergency manager of their obligation to follow Michigan's Constitution. And that restriction includes the constitutional provision that prohibits a political subdivision like Detroit from diminishing or impairing an accrued financial benefit of a pension plan or retirement system. Mich. Const. art. IX, § 24.

Unlike other chapters of the Bankruptcy Code, Chapter 9 authorizes only one party to propose a plan in a municipal bankruptcy—the debtor. *Compare* 11 U.S.C. § 941 (Chapter 9 debtor "shall file a plan") *with* 11 U.S.C. § 1121(a), (c) ("any party in interest" "may" file a plan). And when the City proposes its plan, it must act within all of the state-law limits that guide the City's conduct. 11 U.S.C. § 943(b)(4).

For example, under Michigan law, the City and its emergency manager have no authority to propose a plan that supports a particular religion or violates an individual's right to religious liberty. Mich. Const. art. I, § 4. Nor could they propose a plan that limits citizens from petitioning the City for redress. Mich. Const. art. I, § 3. Similarly, the City cannot propose a plan that diminishes or impairs accrued pension rights of public employees. Mich. Const. art. IX, § 24.

It has been suggested that the constitutional protection of public pensioners is akin to Michigan's Contracts Clause, which prohibits any law "impairing the obligation of contract." Mich. Const. art. I, § 10. Not so. State and United States Supreme Court decisions have oft recognized that the Contracts Clause prohibition is not absolute and must be "accommodated to the inherent police power of the State 'to safeguard the vital interest of its people.'" *Romein v. General Motors Corp.*, 462 N.W.2d 555, 565 (Mich. 1990) (quoting *Energy Reserves Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 410 (1983)). Insolvency is undoubtedly an exigency that authorizes such an accommodation; thus, there is no conflict between the bankruptcy laws and the Contracts Clause of the U.S. or any state constitution.

But under Michigan law, there is no such accommodation when it comes to the accrued financial benefits of a public pension plan or retirement system. The constitutional protection is absolute. So the City can no more authorize a plan that reduces accrued obligations to public pensions than a plan that discriminates on the basis of religion. Accordingly, while the City has the ability to address health benefits or *unaccrued* pension benefits (neither of which Michigan's Constitution specifically protects), *vested* pension benefits are inviolate.

This result is as it should be. According to the Detroit General Retirement System, general City workers like librarians or sanitation workers receive an average payment of roughly $18,000 per year. For retired City police and firefighters, the figure is roughly $30,000 per year, and without the benefit of Social Security payments. These retirees are among Michigan's most vulnerable citizens. The People of Michigan recognized as much and sought to protect them when enacting article IX, § 24. Accordingly, the City of Detroit is constitutionally obligated to keep the People's promise as it proposes a plan that will allow the City to flourish while honoring the lifelong commitment of Detroit's retired public servants.

4

## ARGUMENT

## I. The City of Detroit is eligible to proceed under Chapter 9, but the City remains subject to Michigan's Constitution.

Under Public Act 436 of 2012, the City's emergency manager acts as its receiver, and stands in the place of its governing body and chief executive officer. Mich. Comp. Laws § 141.1549(2). The manager also represents the City in bankruptcy. Mich. Comp. Laws § 141.1558(1). He is a public officer subject to the laws applicable to public servants and officers. Mich. Comp. Laws § 141.1549(3)(d) and (9)(a), (b), and (c). And the emergency manager has taken an oath to uphold the Michigan Constitution. Mich. Comp. Laws § 15.151; Mich. Const. art. XI, § 1.

As a public officer, and like any citizen of the State, the emergency manager must follow the Michigan Constitution and statutes enacted by the Legislature pursuant to its constitutional authority. This interplay of Michigan's Constitution and Public Act 436 requires that the emergency manager abide by all applicable laws in governing the City.

The same obligation to comply with the Michigan Constitution applies to the emergency manager during this Chapter 9 proceeding. "Indeed, absent a specific provision to the contrary, a municipality is required to continue to comply with state law during a Chapter 9 case."

5

13-53846-tjt Doc 2461-1 Filed 02/20/13 Entered 02/20/13 17:48:03 Page 36 of 58
13-53846-swr Doc 461 Filed 08/19/13 Entered 08/19/13 15:48:03 Page 36 of 58     36

6 Collier on Bankruptcy ¶ 903.02 (Alan N. Resnick and Henry J. Sommer eds. 16th ed.)  This is significant, because under Chapter 9, the City, through the emergency manager, is the only party with authority to propose a plan of adjustment, 11 U.S.C. § 941, and therefore controls the plan process in a way that is unique to bankruptcy law.

The scope of a state's authorization of a municipal-bankruptcy filing is a "question of pure state law" and thus "state law provides the rule of decision." *In re City of Stockton*, 475 B.R. 720, 728–29 (Bankr. E.D. Cal. 2012).  The Michigan Legislature cannot enact laws that authorize local governments to violate the Michigan Constitution, and the Legislature's enactment of Public Act 436—specifically the bankruptcy authorization in § 18(1),  Mich. Comp. Laws § 141.1558(1)— must thus be construed according to this basic legal principle.  This means that when the Legislature enacted Public Act 436 and empowered the City and its emergency manager to pursue bankruptcy, the City and the manager's actions in proposing a reorganization plan remain subject to applicable Michigan law, including article IX, § 24 of Michigan's Constitution.

6

13-53846-tjt  Doc 2276-1  Filed 12/30/13  Entered 12/30/13 17:48:03  Page 37 of 58
13-53846-swr  Doc 461  Filed 08/19/13  Entered 08/19/13 15:49:01  Page 37 of 58        37

Article IX, § 24 unambiguously prevents public officials from diminishing vested public-employee pension rights:

> The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which *shall not be diminished or impaired* thereby.

Mich. Const. art. IX, § 24 (emphasis added). This provision prohibits the State, its officers, and any of its political units, including the City and its officers, from diminishing or impairing the pension benefits currently being received by retired City pensioners.

The fact that § 18(1), Mich. Comp. Laws § 141.1558(1), does not incorporate article IX, § 24 is of no moment, because the proscription arises by operation of constitutional law. Moreover, it is plain that the Michigan Legislature was aware of this constitutional provision when it enacted Public Act 436 because the Act requires emergency managers appointed under the act to "fully comply with . . . section 24 of article IX of the state constitution of 1963," in the event an emergency manager becomes the trustee for a local unit's pension fund. Mich. Comp. Laws § 141.1552(1)(m)(ii).

7

13-53846-tjt  Doc 2276-1  Filed 12/20/13  Entered 12/20/13 15:48:03  Page 38 of 58
13-53846-swr  Doc 461  Filed 08/19/13  Entered 08/19/13 17:48:03  Page 38 of 58    38

The continued application of state constitutional law during the Chapter 9 case is also consistent with state sovereignty principles, which are incorporated under 11 U.S.C. § 903 (Chapter 9 "does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality . . . ."). See also *New York v. United States*, 505 U.S. 144, 155–66 (1992) (recognizing dual sovereignty and observing that "the Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions"); 5 William J. Norton, Jr. & William L. Norton III, Norton Bankruptcy Law and Practice § 90:4 (3d ed. 2009) ("Without the consent of the municipality, the court may not interfere with any of the political or governmental powers of the debtor, any property or revenues of the debtor, or the debtor's use or enjoyment of any income-producing property.").

Based on these principles, as the City and its emergency manager progress under Chapter 9 and ultimately propose a plan for the City's reorganization, they remain subject to applicable state laws, including the Michigan Constitution and article IX, § 24.

8

13-53846-tjt Doc 2261 Filed 12/29/13 Entered 12/29/13 17:48:03 Page 39 of 58    39
13-53846-swr Doc 461 Filed 08/19/13 Entered 08/19/13 15:48:03 Page 39 of 58

## II. Michigan's Constitution bars the diminution or impairment of pensions by any means.

### A. The Michigan Constitution established that pensioners have a contractual right to their pensions.

At common law, public pensions in Michigan were viewed as gratuitous allowances that could be revoked at will because a retiree lacked any vested right in their continuation. *See, e.g.*, *Brown v. Highland Park*, 30 N.W.2d 798 (Mich. 1948); *Attorney General v. Connolly*, 160 N.W. 581 (Mich. 1916). That view is captured succinctly in the Michigan Supreme Court's holding in *Brown*:

> [A] public pension granted by public authorities is *not* a contractual obligation, that the pensioner has *no* vested right, and that a pension is *terminable at the will* of a municipality, at least while acting within reasonable limits.

*Brown*, 30 N.W.2d at 800 (emphasis added).

The People of Michigan reversed this public policy when they adopted art. IX, § 24 in the 1963 Michigan Constitution. The purpose for adopting this provision was made clear by delegates to the 1963 Constitutional Convention. In particular, delegate Richard VanDusen, one of the chief drafters of § 24, explained that accrued financial benefits were a kind of "deferred compensation":

Now, it is the belief of the committee that the benefits of the pension plans are in the same deferred compensation for work performed. And with respect to work performed, it is the opinion of the committee that the public employee should have a contractual right to benefits of the pension plan, which should not be diminished by the employing unit after the service has been performed.

1 Official Record of the State of Michigan Constitutional Convention of 1961, 770–71 [hereinafter *Constitutional Convention Record*].

Michigan courts have supported this conclusion and have recognized, repeatedly, that article IX, § 24 is an express and unambiguous statement of the will of the People of the State of Michigan that the accrued financial benefits of each pension plan and retirement system of the State and its political subdivisions "shall not be diminished or impaired." This constitutional promise thus ensures that there is never a time, a place, or a method for diminishing or impairing the State's *or a political subdivision's* obligation with respect to the accrued financial benefits of a pension plan or retirement system.

For example, based on § 24, the Michigan Court of Appeals has held that the City of Detroit's attempt to increase the age at which an employee could receive his vested pension (and thereby *decrease* the amount of pension payments) violated art. IV, § 24. *Ass'n of Prof'l &*

10

13-53846-tjt  Doc 2276-1  Filed 12/30/13  Entered 12/30/13 17:48:03  Page 41 of 58
13-53846-swr  Doc 461  Filed 08/19/13  Entered 08/19/13 15:48:01  Page 41 of 58    41

*Technical Employees v. City of Detroit*, 398 N.W.2d 436 (Mich. Ct. App. 1986). The Court of Appeals has also held that § 24 prohibits the State or a local pension plan from reducing a retiree's pension. *Seitz v. Probate Judges Ret. Sys.*, 474 N.W.2d 125 (Mich. Ct. App. 1991).

Similarly, § 24 prohibits the City of Detroit and its emergency manager from unilaterally reducing the pensions of existing retirees, because any reduction would diminish or impair the accrued financial benefits previously earned by such retirees. Just as the City and its manager have no authority to propose a plan that supports a particular religion or violates an individual's right to religious liberty (or, for that matter, a plan that seizes the assets of retired employees in violation of the Michigan Constitution's Takings Clause, *see* Mich. Const. art. X, § 2), the City and the emergency manager cannot propose a plan that has the effect of diminishing or impairing the accrued rights of public-employee pensions.[1]

---

[1] Article 11, §11-101, ¶ 3 of the City of Detroit's Home Rule City Charter equally treats and protects the accrued financial benefits of active and retired city employees as contractual obligations that "shall in no event be diminished or impaired."

11

13-53846-tjt Doc 2276-1 Filed 12/20/13 Entered 12/20/13 17:48:03 Page 42 of 58
13-53846-swr Doc 461 Filed 08/19/13 Entered 08/19/13 15:48:03 Page 42 of 58    42

The entire thrust of article IX, § 24 is to safeguard a level of benefits for governmental employees who make a decision to retire. The public employees performed the work relying on a "particular level of benefits." 1 *Constitutional Convention Record* at 770–71 ("the service in reliance upon the then prescribed level of benefits"). The *post hoc* reduction of these vested rights would create an untenable position for the retirants by reducing their compensation after the benefits have already vested. *See In re Advisory Opinion re Constitutionality of 1972 PA 258,* 209 N.W.2d 200, 202–03 (Mich. 1973) (rejecting any new conditions on accrued financial benefits that were "unreasonable and hence subversive of the constitutional protection"). It is analogous to forcing the pensioners to return deferred compensation. It is this very kind of reduction of pension payments that the constitutional provision is designed to prevent.

In sum, it cannot be reasonably disputed that the City has been authorized for and is eligible to file Chapter 9 bankruptcy. But in moving forward and proposing a plan, the City and its manager are bound by the strictures of Michigan law, including article IX, § 24 of Michigan's Constitution.

12

13-53846-tjt Doc 2276-1 Filed 12/20/13 Entered 12/20/13 17:43:04 Page 43 of 58
13-53846-swr Doc 461 Filed 08/19/13 Entered 08/19/13 15:49:01 Page 48 of 58   43

## B. Michigan's constitutional protection of pensions is broader than that afforded to ordinary contracts.

At the core of a bankruptcy process is the adjustment of the relationship between a debtor and its creditors, and attendant in that process is the impairment of contracts. *In re Stockton*, 478 B.R. at 15. The State of Michigan's Contracts Clause, Mich. Const. art. I, § 10, mirrors that of the United States Constitution and the contracts clauses of other states, and it is well understood that such a provision must stand aside in the bankruptcy process. But the subversion of a state constitution's contracts clause does not come about as a result of bankruptcy law or the Supremacy Clause of the United States Constitution; a contracts clause steps aside as a matter of state law.

Both the Michigan Supreme Court and the United States Supreme Court have recognized that a constitutional contracts clause is not absolute. The prohibition against impairing contracts must be "accommodated to the inherent police power of the State 'to safeguard the vital interests of the people.'" *Romein*, 462 N.W.2d at 565 (quoting *Energy Reserves Group*, 459 U.S. at 410). Thus, state action can impair a contract provided that there is a legitimate public purpose for the impairment (i.e., the state is validly exercising its police power and not

merely providing a benefit to special interests), and the means of adjustment are necessary and reasonable. *Romein*, 462 N.W.2d at 565–66 (citing *United States Trust Co. v. New Jersey*, 431 U.S. 1, 22-23 (1977)). Accordingly, a Michigan political subdivision is cloaked with the authority of Michigan law when it proposes a plan that impairs ordinary contracts. Here, for example, it cannot be disputed that the police power of the State and the City of Detroit is being exercised for a necessary and reasonable public purpose—to restore basic governmental services (police and fire protection, street lights, ambulance services, etc.) to the citizens of Detroit.

But article IX, § 24 is not similarly subject to such exigencies.[2] The 1963 Constitution and the language of § 24 is understood according to its plain meaning. *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 806 N.W. 2d 683, 693 (Mich. 2011); *Studier v. Michigan Pub. Sch. Employees' Retirement Bd.*, 698 N.W.2d 350, 356–57 (Mich. 2005).

---

[2] Article IX, § 24 makes the City of Detroit's bankruptcy quite different than the one at issue in *In re Stockton*, because the California Constitution contains no specific protection for pensions, only a generic Contracts Clause. Cal. Const. art. I, § 9.

14

13-53846-tjt Doc 2276-1 Filed 12/20/13 Entered 12/20/13 15:48:03 Page 45 of 58
13-53846-swr Doc 461 Filed 08/19/13 Entered 08/19/13 15:48:03 Page 45 of 58    45

In other words, article IX, § 24 is an impermeable imperative, and its place in the pantheon of Michigan constitutional rights is akin to the prohibition on taking property without just compensation, Mich. Const. art. X, § 2, or any other constitutional prohibition on the power of a government to affect the life, liberty, and property of its citizenry. Constitutional provisions of this nature are innate to the People of Michigan—not subject to discharge by exigency including a Chapter 9 proceeding under the federal Bankruptcy Code. The City and its emergency manager therefore cannot jettison article IX, § 24 when they propose a reorganization plan.[3]

Importantly, article IX, § 24 is not an absolute bar on the City's ability to adjust its debts in a Chapter 9 proceeding. The City may negotiate to adjust contractual terms under pension plans and retirement systems. *Cranford v. Wayne County*, 402 N.W.2d 64, 66 (Mich. 1986); *see also Stone v. State*, 651 N.W.2d 64 (Mich. 2002). Similarly, the City is not prevented from taking even unilateral action

---

[3] The same is true for similar reasons with respect to the City's role as trustee of the art collection of the Detroit Institute of Arts. Because the collection is held in charitable trust, the beneficial interest in the collection ultimately rests with the People of Michigan and is likewise inviolate. See AG Op. No. 7272, June 13, 2013.

15

13-53846-tjt wr Doc 22761 Filed 02/20/13 Entered 02/20/13 17:48:43 Page 46 of 58
13-53846-swr Doc 461 Filed 08/19/13 Entered 08/19/13 15:48:01 Page 46 of 58    46

with respect to *unaccrued* financial benefits. *Advisory Opinion re Constitutionality of 1972 PA 258*, 209 N.W.2d at 202–03 (1973) ("the legislature cannot diminish or impair accrued financial benefits, but we think it may properly attach new conditions for earning financial benefits which have not accrued."); *see also Seitz*, 474 N.W.2d at 127. And § 24 does not implicate the City's obligation with respect to promised health benefits. *Studier,* 698 N.W.2d at 358 ("the ratifiers of our Constitution would have commonly understood 'financial' to include only those benefits that consist of monetary payments, and not benefits of a nonmonetary nature such as health care benefits").

These are all constitutionally acceptable ways for the City of Detroit to reduce its liabilities for its pension plans without violating the constitutional rights of existing retirees. But to the extent the City or its manager desire to diminish or impair *vested* pension benefits, Michigan law prohibits them from even proposing such a plan.

16

13-53846-tjtwr Doc 2276-1 Filed 12/20/13 Entered 12/20/13 15:48:04 Page 47 of 58   47
13-53846-swr Doc 461 Filed 08/19/13 Entered 08/19/13 15:48:01 Page 27 of 28

**C. The Bankruptcy Code recognizes the State's constitutional limits on municipalities in Chapter 9 bankruptcy.**

Independent of the City's obligation to act within state-law limits when proposing a plan, article IX, § 24 applies to a Chapter 9 bankruptcy by virtue of 11 U.S.C. § 903. Section 903 guarantees that state law continues to bind a political subdivision's actions once in bankruptcy:

> This chapter [9] does not limit or impair the power of a State to control, *by legislation or otherwise*, a municipality of or in such State in the exercise of the political or governmental powers of such municipality . . . .

11 U.S.C. § 903. In § 903, Congress protected the "States as States" as dual sovereigns under the federal Constitution. State participation in the national political process is the "fundamental limitation that the [United States] constitutional scheme imposes on" the powers granted to the federal government. *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 554 (1985). Section 903 is a result of the states' place in the constitutional framework and participation in federal government and enacted legislation. *Id*. at 552. By including § 903 in the Bankruptcy Code, Congress preserved state constitutional protection provisions, like § 24, within the Code's structure and purpose.

Indeed, nowhere in the Bankruptcy Code provisions applicable to Chapter 9 did Congress expressly provide for the treatment of municipalities' pension plans or retirement systems. Chapter 9's applicable provisions, structure, and purpose do not disclose any Congressional intent to preempt state constitutional protection provisions like § 24.[4]

Moreover, through Chapter 9 Congress has recognized that the bankruptcy of a State's political subdivision is a particular concern of a state and its relations with its political subdivisions. This conclusion is embedded in the preservation of the states of complete control over their political subdivision in the exercise of the political or governmental powers of such subdivisions, 11 U.S.C. § 903.

Consistent with § 903, the Bankruptcy Code imposes strict limitations on the power of this Court to direct municipal action regarding its political process, property, or revenue "unless the debtor consents." 11 U.S.C. § 904. Just as the City lacks the authority under

_____

[4] The pension obligations in question are not executory contracts subject to rejection under 11 U.S.C. § 365. This further distinguishes them from the collective bargaining agreement treatment set forth in *Vallejo*. *In re City of Vallejo*, 432 B.R. 262 (E.D. Cal. 2010*); In re City of Vallejo*, 403 B.R. 72 (Bankr. E.D. Cal. 2009).

18

13-53846-tjt Doc 2276-1 Filed 12/20/13 Entered 12/20/13 17:48:03 Page 49 of 58
13-53846-swr Doc 461 Filed 08/19/13 Entered 08/19/13 15:49:01 Page 49 of 58 49

Michigan law to propose a plan that diminishes accrued pension rights, it similarly lacks power to consent to any proposed action that would violate the Michigan Constitution.

## CONCLUSION AND RELIEF REQUESTED

This matter is only at the eligibility stage, and, as noted above, the Attorney General does not take issue with the City's eligibility to file bankruptcy. Michigan Governor Rick Snyder had the authority to and did properly authorize the City's filing, and there is no serious question that the City is insolvent.

But through this submission, the Attorney General seeks to illuminate the legal rights and obligations of the City and its emergency manager as they move forward and exercise their exclusive Chapter 9 authority to propose a plan of reorganization. Those obligations include the requirement to act in accord with State law, including article IX, § 24's prohibition on a Michigan political subdivision's authority to diminish or impair accrued pension rights. In this initial filing, the Attorney General also seeks to apprise the Court of his legal positions, and he will offer additional arguments and support for his positions at the appropriate stages of this important proceeding.

19

13-53846-tjt wr Doc 2276-1 Filed 12/20/13 Entered 12/20/13 17:48:43 Page 50 of 58
13-53846-swr Doc 461 Filed 08/19/13 Entered 08/19/13 15:48:01 Page 20 of 28    50

Respectfully submitted,

Bill Schuette
Attorney General

John J. Bursch
Solicitor General

B. Eric Restuccia
Deputy Solicitor General

Larry Brya
Special Assistant Attorney General

/s/ Michael Bell

Michael Bell
Patrick Fitzgerald
Linus Banghart-Linn
Heather Meingast
Will Bloomfield
Assistant Attorneys General

Attorneys for
Attorney General Bill Schuette
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-3203
BellM1@michigan.gov
Dated:  August 19, 2013          P47890

20

13-53846-tjt  Doc 2276-1  Filed 12/20/13  Entered 12/20/13 17:48:43  Page 51 of 58
13-53846-swr  Doc 461  Filed 08/19/13  Entered 08/19/13 15:49:01  Page 51 of 58    51

**CERTIFICATE OF SERVICE (E-FILE)**

I hereby certify that on August 19, 2013, I electronically filed the

above document(s) with the Clerk of the Court using the ECF System,

which will provide electronic copies to counsel of record.

/s/ Michael Bell
Assistant Attorney General
Attorney for
Attorney General Bill Schuette
Revenue and Collections
Division
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-3203
BellM1@michigan.gov
Dated:  August 19, 2013                     P47890

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - DETROIT**

In re:

CITY OF DETROIT, MICHIGAN,                    Chapter 9

                Debtor.                    Case No. 13-53846
                                    Honorable Steven W. Rhodes

## OBJECTION OF ROBBIE FLOWERS, MICHAEL WELLS, JANET WHITSON, MARY WASHINGTON AND BRUCE GOLDMAN TO THE PUTATIVE DEBTOR'S ELIGIBILITY TO BE A DEBTOR

Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington and Bruce Goldman (the "*Flowers* plaintiffs"), citizens of the State of Michigan, state:

### Preliminary Statement

1.    The *Flowers* plaintiffs will first provide this Court with what they believe is appropriate background information. The *Flowers* plaintiffs will then adopt by reference the facts and arguments the UAW is making in its objection being filed today, and include a summary of their understanding of the UAW's argument that the filing is unconstitutional under the Michigan Constitution. The *Flowers* plaintiffs will then make additional discrete points. Finally, the *Flowers* plaintiffs will address their need for discovery.

### Background

2.    The *Flowers* plaintiffs are three City of Detroit retirees currently receiving pension benefits and two City of Detroit employees with vested pension benefits.

3.     The *Flowers* plaintiffs as citizens of the State of Michigan have rights under Article 9, Section 24 of the Michigan Constitution. It provides: "The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation whereof which shall not be diminished or impaired thereby."

4.     The *Flowers* plaintiffs are plaintiffs in a Michigan civil action that sought and obtained injunctive relief precluding Governor Snyder from authorizing Detroit's Emergency Manager to proceed under Chapter 9 of the federal Bankruptcy Code because to do so threatened to abrogate their rights under Article 9, Section 24. *Flowers, et al. v. Snyder, et al.,* No. 13-729-CZ, Ingham County Circuit Court (complaint 3 July 2013; preliminary injunction 18 July 2013; amended preliminary injunction 19 July 2013).

5.     This Court has stayed (at docket 166) that action.

6.     This Court at oral argument on the stay extension motion made clear with a rhetorical question that its ruling was procedural only: "Well, but why isn't the extended stay that the city seeks here simply a procedural mechanism to funnel such challenges to the Bankruptcy Court and, therefore, does not have the effect of denying citizens or other creditors of their rights to have their constitutional claims heard." Transcript of 24 July 2013 hearing at page 22.

7.     This Court at this oral argument suggested that the Article 9, Section 24 constitutional issue would be decided in the context of eligibility: "I asked you how your clients would be prejudiced by dealing with this issue on the constitutionality of this filing later in the context of eligibility . . . ." Transcript of 24 July 2013 hearing at page 36.

2

8.     Finally, this Court in its bench ruling stated: "The Court is making no ruling on whether the state constitution prohibited the emergency manager's appointment or prohibited the emergency – excuse me – prohibited the governor from authorizing this Chapter 9 filing without excepting from it the constitutionally protected pension rights of its citizens." Transcript of 24 July 2013 hearing at page 84.

### Adoption of UAW Objection

9.     The *Flowers* plaintiffs join in the facts alleged and eligibility arguments the International Union, UAW makes in its filing of today.

10.     The *Flowers* plaintiffs' understanding of the UAW's argument that the filing is unconstitutional under the Michigan Constitution can be summarized as follows: By authorizing the Chapter 9 filing, Governor Snyder has intentionally diminished and impaired the accrued financial benefits of Michigan citizens, including the *Flowers* plaintiffs, by voluntarily invoking a federal law that conflicts with its constitution. Congress drafted Chapter 9 in deference to the Tenth Amendment in order to avoid constitutional issues; this is at the heart of the requirement under Section 109(c)(2) of the Bankruptcy Code, 11 U.S.C. § 109(c)(2), that a Chapter 9 bankruptcy filing be specifically authorized. This provision is meaningless if a filing can be "specifically authorized" in violation of a state constitution.

### Additional Points

11.     This Court has recognized the need for sensitivity to the sovereignty of the state in a Chapter 9 proceeding. *In re Addison Community Hosp. Authority,* 175 B.R. 646, 649 (Bankr. E.D. Mich. 1994): "The primary distinction between chapter 11 and chapter 9 proceedings is that in the latter, the law must be sensitive to the issue of the sovereignty of the states."

3

12.     Where the interpretation of a state's grant of authority and assent to the filing of bankruptcy necessitates consideration of the meaning of a state statute [or constitution], its meaning is governed by that state's case and statutory law.  *State of Louisiana ex rel Francis v. Resweber,* 329 U.S. 459, 461-62 (1947).

13.     While this Court may only be bound by decisions of Michigan's highest court, it can and should review and consider decisions from lower state courts and other traditional sources, such as constitutional history. *In re McMurdie,* 448 B.R. 826, 829 (Bankr. D. Idaho 2010).

14.     In addition to the case law the UAW cites, the debates concerning what is now Article 9, Section 24 make clear that municipal retirees are entitled to have the entire assets of their employer at their disposal in order to realize their vested benefits: "MR. VAN DUSEN: An employee who continued in the service of the public employer in reliance upon the benefits which the plan says he would receive would have the contractual right to receive those benefits, and would have the entire assets of the employer at his disposal from which to realize those benefits." 1 Official Record, Constitutional Convention 1961, p. 774.

15.     Additionally, the address to the people accompanying the 1963 Constitution states:

> This is a new section [Article 9, Section 24] that requires that accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions be a contractual obligation which cannot be diminished or impaired by the action of its officials or governing body.

2 Official Record, Constitutional Convention 1961, p. 3402.

4

16.     Additionally, Michigan's Attorney General has clearly and unequivocally stated in the context of this bankruptcy filing that: "Michigan's Constitution is crystal clear in stating that pension obligations may not be 'diminished or impaired' . . .". The 27 July 2013 press release in which this quote appears goes on to state that: "Schuette will be informing the federal bankruptcy court that Michigan residents live under a constitution that protects hard-earned pensions." Available online at www.michigan.gov/ag under press releases for July 2013. This Court can and should take cognizance of the opinion of the state attorney general. *In re Barnwell County Hospital,* 471 B.R. 849, 863 (Bankr. D. S.C. 2012). And an earlier Michigan Attorney General had opined consistent with our current one that Article 9, Section 24 means what it says. See OAG No. 6294 dated 13 May 1985.

17.     Finally, on 19 July 2013 the Circuit Court for Ingham County entered an order of declaratory judgment, a copy of which is attached as Exhibit 6.4 to the stay extension motion (docket 56). *Webster, et al. v. Snyder, et al.,* No. 13-734-CZ. In it the Court determined, among other things, that the Governor's authorization of the commencement of this Chapter 9 case was violative of the State Constitution and was therefore given without power or authority.

18.     There is no Michigan law that contradicts or in any way qualifies the authority cited by the UAW and above at ¶¶ 14-17. The debtor has no Michigan authority that would support what it will in effect be asking this Court to do -- add a proviso to the words of Article 9, Section 24:  "The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation whereof which shall not be diminished or impaired thereby" – "unless the governor decides to allow a municipality to file for bankruptcy in order to void such benefits in which case all bets are off."

5

19.     Based on information and belief, Governor Snyder and his staff designed a legal strategy and assembled a Jones Day legal team to circumvent Article 9, Section 24. See the evidence cited at footnote 2 of the UAW objection.

20.     The *Flowers* plaintiffs will need to take discovery to further disclose the communications between the Governor, Jones Day and the Detroit Emergency Manager, a former partner at Jones Day.

21.     The *Flowers* plaintiffs believe that such discovery will prove that the dealings between these parties violated Article 9, Section 24 of the Michigan Constitution, and invalidate these proceedings.

Respectfully submitted,

/s/William A. Wertheimer
William A. Wertheimer (P26275)
Attorney for *Flowers* plaintiffs
30515 Timberbrook Lane
Bingham Farms, MI 48025
248-644-9200

Dated: 19 August 2013

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed and served via the Court's electronic case filing and noticing system to all parties registered to receive electronic notices in this matter this 19th day of August 2013.

By:     /s/William A. Wertheimer
William A. Wertheimer P26275)

6