UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

-------------------------------------------------------- x

In re:      Chapter 9

CITY OF DETROIT, MICHIGAN,      Case No.: 13-53846

         Debtor.      Hon. Steven W. Rhodes

-------------------------------------------------------- x

## AMENDED JOINT OBJECTION OF INTERNATIONAL UNION, UAW AND THE *FLOWERS* PLAINTIFFS TO THE CITY OF DETROIT, MICHIGAN'S ELIGIBILITY FOR AN ORDER FOR <u>RELIEF UNDER CHAPTER 9 OF THE BANKRUPTCY CODE</u>

The International Union, United Automobile, Aerospace and

Agricultural Implement Workers of America ("UAW") and Robbie Flowers,

Michael Wells, Janet Whitson, Mary Washington and Bruce Goldman, as plaintiffs

in the suit *Flowers v. Snyder*, No. 13-729 CZ (Ingham County Circuit Court) (the

"*Flowers* plaintiffs")[1] hereby amend their respective August 19, 2013 objections to

the City of Detroit's (the "City") eligibility for an order of relief under chapter 9 of

the U.S. Bankruptcy Code and state for their amended objection as follows:

---

[1] The *Flowers* plaintiffs hereby restate and incorporate their *Objection of Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington and Bruce Goldman to the Putative Debtor's Eligibility to be a Debtor* [DE 504] herein.

**Preliminary Statement**

1.      Less than three months after his appointment by State of Michigan Governor Richard Snyder ("Governor Snyder" or "Snyder"), and barely one month before filing the City of Detroit's chapter 9 petition, the City's Emergency Manager Kevyn Orr ("EM Orr" or "Orr") released a detailed proposal for creditors which he claims will transform Detroit and its operations. The June 14, 2013 "Proposal for Creditors" (the "Proposal") laid out an ambitious program of upgrades and improvements for the City's residents and businesses but spelled deep trouble for the City's employees and retirees. Orr proposed radical changes in pension and health care benefits for City workers who have already been subjected to reductions in force and wage and benefit cuts under the City's imposed employment terms. Orr's plan took particularly brutal aim at the City's retirees, proposing drastic cuts in the City's retiree health care program, and, in derogation of Article 9, Section 24 of the Michigan Constitution which expressly prohibits the impairment of accrued pension benefits, a pension funding proposal that would force "significant cuts" in accrued, vested pension benefits. Under the Proposal, the City would pay no further contributions to the retirement systems and turn enlarged estimates of the retirement plans' underfunding into bankruptcy claims to be paid pennies on the dollar. Without funding, the retirement plans would run out of

money; thus, according to the Orr's Proposal "significant cuts" in accrued vested benefits would be required.

2.      That the City landed in chapter 9 so soon after Orr launched his Proposal was entirely predictable and in all likelihood the intended result in any event.  The Emergency Manager and his team are gambling on federal bankruptcy law to wipe out the City's pension obligations, taking vested pension benefits earned by the City's retirees and employees down in the process.  Unfortunately for the City, this strategy fatally undermines its eligibility for chapter 9 bankruptcy.

3.      As we demonstrate below, the City is ineligible for chapter 9 relief on four grounds.  First, there was no valid authorization for the filing as required by Section 109(c)(2) of the Bankruptcy Code.  The Governor failed to condition the authorization on adherence to Article 9, Section 24 of the Michigan State Constitution and lacked authority to authorize a chapter 9 filing that would be used to impair pensions in derogation of the protections afforded by Article 9, Section 24.

4.      By its design, chapter 9 reflects our system of dual federal and state sovereignty.  Initially declared an unconstitutional exercise of Congressional power, *see Ashton v. Cameron County Water Improvement District*, 298 U.S. 513 (1936), the lawful exercise of federal municipal bankruptcy hinges on strict adherence to deep-rooted principles of dual sovereignty.  Moreover, Michigan

citizens have the right under the Tenth Amendment to insist that chapter 9 not be used to deprive them of their Michigan constitutional rights.

5. The Governor could not authorize a chapter 9 proceeding brought in order to force cuts in accrued pensions because the Governor has no authority to ignore, or waive, the protections of Article 9, Section 24 of the Michigan Constitution; only the citizens of Michigan are empowered to amend the State's Constitution. And, without that authority himself, he was powerless to take action that would permit the City to do so through the actions of the Emergency Manager.

6. Second, the City cannot meet the requirement of Section 109(c)(4) because EM Orr has plainly shown that the City desires to "effect a plan to adjust" its debts through an unlawful proposal that would lead to cuts in accrued pension benefits. Orr and his team devised a proposal premised upon, among other things, no further pension contributions to the retirement system. The plan offers only a miniscule recovery on a bankruptcy claim for the underfunding, and declares that, without adequate funding, accrued benefits would have to be cut significantly. A plan of adjustment incorporating these features of the Proposal could not be confirmed under Section 943 of the Bankruptcy Code, because the City could not show that "the debtor is not prohibited by law from taking any action necessary to carry out the plan." 11 U.S.C. § 943(b)(4). Such a plan would plainly run afoul of

Article 9, Section 24 of the Michigan Constitution. Cutting off the City's retirement system contributions was Orr's plan from at least the time he presented his Proposal (and likely earlier). Therefore, because EM Orr sought authorization to commence a chapter 9 case in order to effect a plan that would be patently *unlawful* for the state to implement, the City cannot meet the threshold eligibility requirement that a debtor "desire[s] to effect a plan to adjust its debts" under Section 109(c)(4).

7. Third, the City cannot demonstrate compliance with the requirements of Section 109(c)(5)(B) or (C) in its pre-bankruptcy interactions regarding its Proposal. The City's pension proposal to force cuts in accrued vested pension benefits in derogation of the protections under the Michigan Constitution was, on its face, a proposal the City intended would lead to a result that contravened Article 9, Section 24 and, as such, was a proposal that could not be accepted. Moreover, its pension proposal was jerry-built on an incomplete picture of the pension plan underfunding, seemingly to create the specter of a large, insurmountable obligation. After a brief period of stakeholder meetings designed more to give the appearance of discussions than serve as substantive negotiations, Orr sought the Governor's approval for a chapter 9 filing barely 30 days after the launch of the Proposal.

8. Nor can the City demonstrate that further attempts to negotiate were impractical under Section 109(c)(5)(C). Impracticality, for purposes of Section

109(c)(5), cannot mean putting up a proposal that could not lawfully be implemented or accepted and then tallying up the problems associated with engaging the affected stakeholders.[2]

9.     For the foregoing reasons as well, the City's chapter 9 petition was not filed in good faith.  *See* 11 U.S.C. § 921(c).  The City's pre-bankruptcy course of conduct shows that it determined to pursue a plan to cut its pension funding obligation that would force the retirement systems to significantly slash already modest pension benefits, rushing into bankruptcy where it thought its plan could be pursued through the processes of the Bankruptcy Code.  Raising the specter of an unwieldy underfunding obligation, the City declared it would walk away from that its pension funding obligation, leaving behind a miniscule recovery, while diverting resources (and identifying other assets to monetize) for its modernization projects.  The City simply wrote off inconvenient state constitutional protections as

---

[2] Such active disrespect for the Michigan Constitution by itself invalidates the City's chapter 9 proceedings.  *See* Think Progress, July 23, 2013, "Banking on Bankruptcy: Emails Suggest Negotiations With Detroit Retirees Were Designed to Fail," (*e.g.*, "In one email, an assistant to Snyder promises to set a meeting with someone 'who is not FOIAble,' suggesting an intent to evade transparency laws"), *available at*:  http://www.thinkprogress.org/economy/2013/07/23/ 2342511/banking-on-bankruptcy-emails-suggest-negotiations-with-detroit-retirees-were-designed-to-fail/.  Because the parties' pre-trial discovery remains ongoing, the UAW reserves its rights to further amend and supplement its eligibility objections, including in connection with the submission of its pre-trial brief pursuant to this Court's case management order.

irrelevant under its weak federal supremacy theory, perhaps counting on the legal uncertainties of the bankruptcy process as a source of leverage.[3]

10. In sum, absent a lawful state authorization for the filing, absent a plan of adjustment that the City can lawfully execute, and without the requisite showing of good faith and required pre-bankruptcy negotiations, the City of Detroit is ineligible for chapter 9 relief. The City's chapter 9 petition therefore must be dismissed.

## Background

### The UAW

11. International Union, UAW is a labor organization headquartered in Detroit, Michigan whose members include both City of Detroit employees and retirees and employees and retirees of public entities related to the City of Detroit that participate in common with City of Detroit employees in retirement benefit plans, including the City of Detroit General Retirement System pension plan. UAW is representing the interests of these active and retired employees in this bankruptcy case. There are approximately 200 retirees from UAW-represented bargaining units of City of Detroit component units. There are, additionally, many active UAW-

---

[3] *See* Jeffrey B. Ellman, Daniel J. Merrett, *Pensions and Chapter 9: Can Municipalities Use Bankruptcy to Solve Their Pension Woes?* 27 Emory Bankr. Dev. J. 365 (2011) (hereafter, "Ellman and Merrett, *Pensions and Chapter 9*") (federal bankruptcy law offers "significant" sources of leverage which can be used to "force[]" pensioners to bargain and "place[] substantial pressure" on them to "reach a resolution as quickly as possible.")

represented employees who are vested in their retirement benefits, all of whose

pensions are at risk under EM Orr's Proposal. UAW-represented employees and

retirees are drawn from the following units: Civilian Police Investigators, City Law

Department attorneys, City of Detroit Law Department paralegals, Water & Sewer

waste water treatment operators, Detroit librarians and associated skilled trades

workers.

<u>Michigan's Constitution Protects Accrued Pensions</u>

12.     Article 9, Section 24 of the Constitution of the State of Michigan

makes clear that neither the state nor a municipality may reduce accrued pension

benefits:  "[t]he accrued financial benefits of each pension plan and retirement

system of the state and its political subdivisions shall be a contractual obligation

thereof which shall not be diminished or impaired thereby."[4]  Thus, "under this

---

[4] The address to the people accompanying the 1963 Constitution states that Article 9, Section 24 "requires that accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions be a contractual obligation *which cannot be diminished or impaired by the action of its officials or governing body*." 2 Official Record, Constitutional Convention 1961, p. 3402 (emphasis added). The Constitution also requires benefits to be funded in the year they are accrued and prohibits the legislature and municipalities from using those funds for other unfunded liabilities.  Mich. Comp. Laws Const. Art. 9, § 24.  The debates concerning what is not Article 9, Section 24 confirm that municipal employees have the entire assets of their employer at their disposal for these benefits:  "Mr. VAN DUSEN:  An employee who continued in the service of the public employer in reliance upon the benefits which the plan says he would receive would have the contractual right to receive those benefits, and would have the entire assets of the employer at his disposal from which to realize those benefits."  1 Official Record, Constitutional Convention 1961, p. 774.

constitutional limitation the legislature cannot diminish or impair accrued financial

benefits." *In re Enrolled Senate Bill 1269*, 209 N.W.2d 200, 202 (Mich. 1973). *See

also In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*,

806 N.W.2d 683, 694 (Mich. 2011) ("The obvious intent of § 24 … was to ensure

that public pensions be treated as contractual obligations that, once earned, could not

be diminished."); *Detroit Police Officers Ass'n v. City of Detroit*, 214 N.W.2d 803,

816 (Mich. 1974) ("With this paramount law of the state as a protection, those

already covered by a pension plan are assured that their benefits will not be

diminished by future collective bargaining agreements.").

The Emergency Manager and Pre-Bankruptcy Events

       13.    The Emergency Manager serves under the Local Financial

Stability and Choice Act Public Law 436 (2012) Mich. Comp. Laws § 141.1541 *et

seq.* ("PA 436"). PA 436 is the most recent in a series of emergency manager laws

Michigan has enacted concerning Michigan's local government units. *See City of

Pontiac Retired Employees Ass'n v. Schimmel, et al.*, No. 12-2087, 2013 WL

4038582, *1-*2 (6th Cir. August 9, 2013) (hereafter, "*Pontiac Retired Employees

Ass'n*") (summarizing the State's Emergency Manager laws). In 1990, Michigan

enacted Public Act 72, known as the "Local Government Fiscal Responsibility Act."

Mich. Comp. Laws § 141.151(1)(j)(2005). In 2011, Public Act 72 was repealed

with the enactment of Public Act 4, the "Local Government and School District

Fiscal Accountability Act," Mich. Comp. Laws §§ 141.1501-1531, in March 2011.

"Unlike P[ublic] A[ct] 72, PA 4 gave emergency managers the power to temporarily

reject, modify or terminate existing collective bargaining agreements." *Pontiac*

*Retired Employees Ass'n*, 2013 WL 4038582 at 3. Public Act 4 was rejected by

Michigan voters under the state's voter rejection procedures in November, 2012. *Id.*

at 4. In the words of the Sixth Circuit, "[a]pparently unaffected that the voters had

just rejected Public Act 4, the Michigan Legislature enacted, and the Michigan

Governor signed, Public Act 436. Public Act 436 largely reenacted the provisions of

Public Act 4, the law that Michigan citizens had just revoked. In enacting Public

Act 436, the Michigan Legislature included a minor appropriation provision,

apparently to stop Michigan voters from putting Public Act 436 to a referendum."

*Id.* (citations omitted).

      14.    Public Act 436 became effective on March 28, 2013. As

detailed in EM Orr's Declaration, a number of legal challenges to Public Act 436

have been filed and remain pending.[5] Declaration of Kevyn Orr ("Orr Decl."),

---

[5] The lawsuits raise serious challenges affecting the legality of the EM's
appointment and other actions taken under the statute, including whether the
Emergency Manager's appointment violated Michigan's Open Meetings laws, or
was otherwise defective as a result of the voters' repeal of PA 4; whether PA 436
violates the U.S. Constitution and the federal Voting Rights Act. Other litigation,
such as the *Pontiac Retiree Employees Association* case recently decided by the
Sixth Circuit, involve challenges to emergency managers appointed in other towns.
To the extent Governor Snyder's appointment of EM Orr was ineffective, as UAW

Exhibit A, pp. 57-59.  Mr. Orr was appointed Emergency Manager and took office on or about March 25, 2013, under the predecessor Emergency Manager law and now serves under PA 436.  *Id*. at p. 57.

15.     The Creditor's Proposal was released by the Emergency Manager on June 14, 2013.  Orr Decl., Exhibit A.  As relevant to the UAW's objection, the Proposal takes broad aim at the City's workers and retirees; city employees have already been subjected to headcount reductions and "City Employment Terms" (the "CETs") imposed a year ago which cut wages and benefits and unilaterally changed work rules.  *See* Orr Decl., Exhibit A, pp. 53-54 (describing the imposition of the CETs).  The proposal indicates that these imposed changes will serve as a "baseline" for the City in its contract talks with the unions, although the City may seek cuts and changes "beyond those included in the CETs." *Id.* p. 76.  Additional reductions in staffing levels and outsourcing functions are also contemplated.  *Id.* p. 78.  Regarding retiree obligations, the City intends to modify retiree medical benefits through a replacement program and indicates that "claims will result from the modification of benefits."  *Id.* p. 109.

---

believes and asserts, the City's Chapter 9 filing is void, as this Court would be bound to find.

16.     The City's pension proposal garnered immediate and significant opposition, including at least three lawsuits commenced prior to the chapter 9 filing.[6] Although PA 436 directs that the Emergency Manager's financial and operating plan "shall provide for" the "timely deposit of required payments to the pension fund for the local government or in which the local government participates," Mich. Comp. Laws 141.1551 Sec. 11(1)(d), the Emergency Manager's proposal announced that annual contributions required to fully fund currently accrued, vested benefits "will not be made under the plan." Orr Decl., Exhibit A, p. 109. The Creditors' Proposal provides that the retirement system underfunding, which Orr and his team claimed was understated, would be "exchanged for a pro rata … principal amount of New Notes."[7] *Id.* Put another way, the Emergency Manager proposed to transform the

---

[6] *Flowers, et al. v. Snyder, et al.,* No. 13-734-CZ (Ingham County Circuit Court July 3, 2013); *General Ret. Sys. of the City of Detroit v. Kevyn D. Orr*, No. 13.768-CZ (Ingham County Circuit Court); *Webster v. State of Michigan*, 13-734-CZ (Ingham County Circuit Court July 3, 2013). The City and the State make much of the lawsuit activity in connection with the bankruptcy filing. But Orr's proposal left the affected parties little choice given the City's blatant disregard of the State Constitution.

[7] What we know from the discovery to date, and expect the evidence at trial will show, is that the City engaged an actuarial consulting firm, Milliman, in 2012, which also assisted EM Orr and his team. Milliman prepared several analyses based on different scenarios fed to the firm by a "pension task force" consisting of lawyers and Conway MacKenzie's Charles Moore. *See* Declaration of Charles M. Moore [DE 13], ¶¶ 8, 13. Among other things, the analyses were run to show the effects of various hypothetical changes in funding and funding policy, investment rate assumptions and, perhaps most critically, the use of a market value of assets more appropriate to a terminated plan analysis than to a valuation of an ongoing pension

plan's underfunding into a bankruptcy claim which will share a $2 billion recovery pro-rata with billions of dollars in additional general obligation bond and other general unsecured claims. The Proposal then goes on to state that "[b]ecause the amounts realized on the underfunding claims will be substantially less than the underfunding amount there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons." *Id.*

17. Labor unions and retiree organizations attended a series of presentations attended by representatives of the Emergency Manager and various stakeholders. Only a handful of presentations were scheduled with labor groups despite the breadth of the proposals affecting workers and retirees. *See* Orr Decl., ¶¶ 90-96 (describing post-June 14, 2013 meetings attended by stakeholders). Abruptly, on July 18, 2013 (and apparently only one day earlier than planned, *see* Orr Decl., Exhibit L) the City filed its chapter 9 petition following a written submission by Governor Snyder issued in response to Mr. Orr's July 16, 2013 request for approval to commence the bankruptcy. Although PA 436 expressly permits the Governor to condition the authorization for a chapter 9 filing, *see* Mich. Comp. Laws 141.1558(1), he did not do so. *See* Orr Decl., Exhibit L.

---

plan. One or two of these analyses were made public and the results drew fire as controversial. *See, e.g.*, Economic Policy Institute, August 1, 2013, *Detroit's Pension Problems: Not as Bad as They're Portrayed, available at* http://www.epi.org/blog/truthiness-detroit. At best, the studies present an incomplete picture of the retirement system underfunding.

## Argument

## The Petition Must Be Dismissed Because the City Is Not Eligible For Chapter 9 Relief

The Bankruptcy Petition Must Be Dismissed
for Lack of Lawful Authorization by the State

*Chapter 9 Reflects Our System of Dual Sovereignty*

18.    In deference to dual sovereignty principles, "[b]ankruptcy courts should review chapter 9 petitions with a jaded eye." *In re N.Y. Off-Track Betting Corp.*, 427 B.R. 256, 264 (Bankr. S.D.N.Y. 2010).  The debtor bears the burden of proof as to each element of eligibility under Section 109(c).  *See In re City of Harrisburg, PA,* 465 B.R. 744, 752 (Bankr. M.D. Penn. 2011).  *See also id.* at 754 (when authority to file is questioned, "bankruptcy courts exercise jurisdiction carefully, 'in light of the interplay between Congress' bankruptcy power and the limitations on federal power under the Tenth Amendment'").  Under Section 109(c)(2), to qualify for Chapter 9 protection, a debtor must be "specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter."  11 U.S.C. § 109(c)(2).  *See In re City of Harrisburg, PA,* 465 B.R. at 754.  ("Express authority is defined as that which confers power to do a particular identical thing set forth and declared exactly, plainly and directly with well-defined limits").

- 14 -

13-53846-tjt  Doc 2276  Filed 12/20/13  Entered 12/20/13 17:38:02  Page 14 of 76
13-53846-swr  Doc 2276  Filed 12/20/13  Entered 12/20/13 17:24:02  Page 14 of 76  136

19.     Because the Governor's authorization of Detroit's chapter 9 petition did not require adherence to Article 9, Section 24 of the Michigan Constitution, the state's authorization is invalid.  In the absence of a valid state authorization duly recognizing the protections of Article 9, Section 24, chapter 9 as applied here is unconstitutional.

20.     The power of the federal courts under chapter 9 is necessarily limited by principles of federalism inherent in our Constitutional structure and reflected in the Tenth Amendment.[8]  "Principles of dual sovereignty, deeply embedded in the fabric of this nation and commemorated in the Tenth Amendment of the United States Constitution, severely curtails the power of bankruptcy courts to act once a petition is filed."  *In re N.Y. Off-Track Betting Corp.*, 427 B.R. 256 (Bankr. S.D.N.Y. 2010).  Thus, as this Court has observed, "[a] primary distinction between chapter 11 and chapter 9 proceedings is that in the latter, the law must be sensitive to the issue of the sovereignty of the states."  *In re Addison Cmty. Hosp. Auth.*, 175 B.R. 646, 649 (Bankr. E.D. Mich. 1994).

21.     The U.S. Supreme Court has twice considered the constitutionality of federal municipal bankruptcy legislation with reference to the

---

[8] The Tenth Amendment provides:

> The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.  U.S. Const. amend X.

dual sovereignty principles embodied in the Tenth Amendment.  In 1934, Congress,

enacted the first federal legislation providing for municipal debt adjustments.  The

Supreme Court held the 1934 Act unconstitutional in *Ashton v. Cameron County*

*Water Improvement District No. 1*, 298 U.S. 513 (1936) on the ground that the

federal bankruptcy power is "impliedly limited by the necessity of preserving the

independence of the States," and thus did not extend to the states or their

subdivisions.  *Id.* at 530.  The Court held that the provisions would

unconstitutionally impinge upon the "indestructible" "separate and independent

existence" of the states by restricting municipal debtors' control over their fiscal

affairs.  *Id*. at 528, 530.

22.     Congress enacted modified municipal bankruptcy provisions in

1937 which the Court upheld in *Bekins*, rejecting a claim that the statute violated the

Tenth Amendment and state sovereignty principles.  The Court distinguished its

earlier decision in *Ashton* by emphasizing that Congress in the 1937 Act had been

"especially solicitous" to avoid interference with the autonomy of municipalities.

*Bekins*, 304 U.S. at 50.  The Court stressed that under the revised legislation, the

federal bankruptcy power may be exercised only where the actions of the municipal

agency are authorized by state law:

> The statute is carefully drawn so as not to impinge upon the
> sovereignty of the State.  The State retains control of its fiscal affairs.
> The bankruptcy power is exercised in relation to a matter normally
> within its province and ***only in a case where the action of the taxing***

> ***agency in carrying out a plan of composition approved by the***
> ***bankruptcy court is authorized by state law.***

*Id*. at 51 (emphasis added).

23.     For purposes of the present case, the most significant aspect of

the *Bekins* opinion is that the Court itself determined that the relief sought by the

local agency was authorized by California law.  The Court's ultimate conclusion that

the State had given its consent to the bankruptcy proceeding was based on its own

analysis of the relevant provisions of the state statute:

> [T]he State has given its consent.  We think that this sufficiently
> appears from the statute of California enacted in 1934. St. of 1934, Ex.
> Sess., c. 4, p. 5.  This statute (section 1) adopts the definition of 'taxing
> districts' as described in an amendment of the Bankruptcy Act, to wit
> chapter 9 approved May 24, 1934, 11 U.S.C. §§ 301-303, and further
> provides that the Bankruptcy Act and 'acts amendatory and
> supplementary thereto,' as the same may be amended from time to
> time, are herein referred to as the 'Federal Bankruptcy Statute.'
> Chapter 10 of the Bankruptcy Act is an amendment and appears to be
> embraced within the state's definition.  We have not been referred to
> any decision to the contrary.  Section 3 of the state act then provides
> that any taxing district in the State is authorized to file the petition
> mentioned in the Federal Bankruptcy Statute.  Subsequent sections
> empower the taxing district upon the conditions stated to consummate a
> plan of readjustment in the event of its confirmation by the federal
> court.

*Id.* at 47-48 (internal citations and quotations omitted).

24.     The teaching of *Bekins* is clear.  This Court's exercise of

jurisdiction over the City's petition cannot rest on the mere fact that the Emergency

Manager (and based upon the Governor's authorization) filed the petition

- 17 -

voluntarily.  Rather, the Court must itself determine that the filing of the petition is authorized by, *and consistent with*, the law of Michigan, in this case, the Constitution of the State of Michigan.  If the Court finds that the petition is inconsistent with state law, then the further exercise of its jurisdiction is barred by the Then Amendment.

25.     In its Consolidated Reply, the City seeks to draw a distinction between the filing of the instant petition, which must admittedly be authorized by state law, and any subsequent relief granted by the Court.  It supports this distinction by citing *In re Sanitary & Improvement Dist., No. 7*, 98 B.R. 970, 973 (Bankr. D. Neb. 1989) for the proposition that the Bankruptcy Code permits federal courts through confirmation of a Chapter 9 plan to impair contract rights and "such impairment is not a violation by the state or the municipality of [the Contracts Clause] which prohibits a state from impairing such contract rights."  (Consolidated Reply, pp. 24-25.)

26.     But this attempt to analogize the Contracts Clause with the Tenth Amendment is wholly unavailing.  The Contracts Clause of the U.S. Constitution applies solely to the States.[9]  By contrast, the Tenth Amendment is an explicit limitation on the power of the Federal Government, including this Court, to displace

---

[9] U.S. Const., Art. I, Sec. 10 provides: "No state shall … pass any … Law impairing the Obligation of Contracts."

- 18 -

13-53846-swr   Doc 2276   Filed 10/20/13   Entered 10/20/13 17:28:03   Page 18 of 76
13-53846-tjt   Doc 2276   Filed 10/20/13   Entered 10/20/13 17:24:02   Page 18 of 76   140

state law.[10]  As the Supreme Court has put it, "the Tenth Amendment confirms that the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States.  The Tenth Amendment thus directs us to determine, as in this case, whether an incident of state sovereignty is protected by a limitation on an Article I power."  *New York v. United States*, 505 U.S. 144, 157 (1992).

27.     The Court's Tenth Amendment decisions clearly show that the power of the federal courts under Chapter 9 is necessarily limited by principles of federalism inherent in our Constitutional structure and reflected in the Tenth Amendment.  This dual system of sovereignty increases democratic governance:

> The federal structure allows local policies 'more sensitive to the diverse needs of a heterogeneous society,' permits 'innovation and experimentation,' enables greater citizen 'involvement in democratic processes,' and makes government 'more responsive by putting the States in competition for a mobile citizenry.'  *Gregory v. Ashcroft,* 501 U.S. 452, 458, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991).  Federalism secures the freedom of the individual.  It allows States to respond, through the enactment of positive law, to the initiative of those who seek a voice in shaping the destiny of their own times without having to rely solely upon the political processes that control a remote central power.

*Bond v. United States*, 131 S.Ct. 2355, 2364 (2011) (emphasis added).  Accordingly, as the Court held in *Bond*, not only the states, but state citizens themselves have

---

[10] In fact the court ruled that the debtor's chapter 9 plan could not be confirmed under Section 943(b)(4) for lack of compliance with *state law*.  *In re Sanitary & Improvement Dist. No. 7,* 98 B.R at 973.

- 19 -

standing to assert that federal law contravenes the Tenth Amendment precisely because of the vital relationship between freedom of the individual and the federal structure of our government. *Id.*

28. Under the Bankruptcy Code, strict adherence to State sovereignty principles is intrinsic to the lawful functioning of chapter 9. Chapter 9 "was drafted to assure that application of federal bankruptcy power would not infringe upon the sovereignty, powers and rights of the states." *In re Richmond Unified Sch. Dist.*, 133 B.R. 221, 226 (Bankr. N.D. Cal. 1991). "Both Congress and the Supreme Court have thus been careful to stress that the federal municipal Bankruptcy Act is not in any way intended to infringe on the sovereign power of a state to control its political subdivisions; for as the Supreme Court held in the *Ashton* and *Bekins* cases, to the extent that the federal Bankruptcy Act does infringe on a state or a municipality's function it is unconstitutional." *Ropico, Inc v. City of N.Y.*, 425 F.Supp. 970, 983 (S.D.N.Y. 1976).

29. The municipal bankruptcy provisions of the Bankruptcy Code chart a carefully circumscribed course limiting the power that can be lawfully exercised by the federal bankruptcy court. First, the municipality must be "specifically authorized" to be a debtor under *State* law "or by a governmental officer or organization *empowered by State law* to authorize such entity to be a debtor under" chapter 9. 11 U.S.C. § 109(c)(2) (emphasis added). *See In re City of*

- 20 -

13-53846-tjt Doc 2276 Filed 10/20/13 Entered 10/20/13 17:28:02 Page 20 of 76
13-53846-swr Doc 1676 Filed 10/20/13 Entered 10/20/13 17:28:02 Page 20 of 76    142

*Bridgeport*, 128 B.R. 688, 692 (Bankr. D. Conn. 1991).  In addition, Section 903 of the Bankruptcy Code establishes that chapter 9 "does not impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality including expenditures by such exercise.…"  11 U.S.C. § 903.  Section 903 "'is the constitutional mooring' for municipal debt adjustment and makes clear that nothing in chapter 9 should be construed to limit a State's power to control its municipalities."  *In re N.Y. City Off-Track Betting Corp.*, 434 B.R. 131, 144 (Bankr. S.D.N.Y. 2010); *see also City of Richmond*, 133 B.R. at 226 (describing Section 903 as a "reaffirmation that Chapter 9 does not limit or impair the power of the states to control municipalities").

30.     Similarly, Section 904 prevents the bankruptcy court from interfering with "any of the political or governmental powers of the debtor" or "any of the property or revenues of the debtor" or "the debtor's use and enjoyment of any income-producing property."  11 U.S.C. § 904; *see In re Addison Cmty. Hosp. Auth.*, 175 B.R. at 649 (the "foundation" of Section 904 "is the doctrine that neither Congress nor the courts can change the existing system of government in this country" and that, in recognition of the Constitutional limitations on the power of the federal government, "chapter 9 was created to give courts only enough jurisdiction

to provide meaningful assistance to municipalities that require it, not to address the policy matters that such municipalities control.").[11]

31.     State sovereignty interests also operate to require that the bankruptcy court find that the debtor's plan of adjustment be consistent with state law.  The bankruptcy court shall only confirm the plan if, among other requirements, "the debtor is not prohibited by law from taking any action necessary to carry out the plan."  11 U.S.C. § 943(b)(4).  Indeed, in *In re Sanitary & Improvement District, # 7*, 98 B.R. 970, 975-76 (Bankr. D. Neb. 1989) cited by the City, the court held that a plan of adjustment could not be confirmed because it conflicted with the terms of state law that required that bondholders be paid in full before warrantholders could receive compensation.[12]  *See also In re City of Colorado Springs Spring Creek Gen. Improvement Dist.*, 177 B.R. 684, 694 (Bankr. D. Colo. 1995) (ruling that plan of adjustment could not be confirmed unless and until it was approved under the elections provisions of state law: "[w]here a plan proposes action not authorized by state law, or without satisfying state law requirements, the plan cannot be

---

[11] "The effect [of Sections 903 and 904] is to preserve the power of political authorities to set their own domestic spending priorities, without restraint from the bankruptcy court."  M. McConnell, *When Cities Go Broke: A Conceptual Introduction to Municipal Bankruptcy*, 60 U. Chi. L. Rev. 425, 462-63 (1993).

[12] Thus, contrary to the City's assertions, the reorganization power is necessarily confined by the state's paramount authority over the governance of the municipality itself, and by such state constitutional limits as the state's citizens have placed on the power of the state itself.

- 22 -

13-53846-tjt   Doc 2276   Filed 10/20/13   Entered 10/20/13 17:28:62   Page 22 of 76
13-53846-swr   Doc 2276   Filed 10/20/13   Entered 10/20/13 17:24:02   Page 22 of 76     144

confirmed.").[13]  *See also* 11 U.S.C. § 943(b)(6) (stating as additional plan

confirmation requirement that "any regulatory approval or electoral approval

necessary under applicable nonbankruptcy law in order to carry out any provision of

the plan has been obtained, or such provision is expressly conditioned on such

approval").  The Bankruptcy Code recognizes both that the state necessarily controls

the actions of its subdivisions and the content of the any plan of adjustment.

32.     In sum, the Tenth Amendment case law belies the City's

contention that the Bankruptcy Court is free to set aside the protections of a state's

constitution.  The state sovereignty principles that form the fabric of chapter 9 are at

the core of the bankruptcy court's constitutional exercise of authority over a

municipal debtor, whether as a matter of eligibility or otherwise.[14]

---

[13] The court further explained that this is because "[u]nlike any other chapter of
the Bankruptcy Code, Chapter 9 places federal law in juxtaposition to the rights of
states to create and govern their own subdivisions." *Id*. at 693.  "Though Congress
intended Chapter 9 to be a forum for reorganization of municipalities, it is clear that
Congress did not intend for federal bankruptcy law to supersede or impair the power
of the state to create, limit, authorize or control a municipality in the exercise of its
political or governmental powers." *Id*.

[14] The State of Michigan makes a similarly unavailing argument that because it is
not the filing of the petition itself that impairs the pension benefits, the Governor's
authorization was valid. However, for chapter 9 to be applied in a manner consistent
with the federal Constitution, specifically, the Tenth Amendment, there is no lawful
or practical distinction between disregarding state law for purposes of the City's
authorization to file the petition and disregarding state law with respect to the plan
that it may lawfully pursue while in chapter 9.  If the City's filing is not properly
authorized, then each day the City remains in chapter 9 is a day it is not authorized
to be there.

33.    Moreover, dual sovereignty principles are not merely the states'

province to enforce.  The Supreme Court has extended the protections of federalism

to individual citizens: "An individual has a direct interest in objecting to laws that

upset the constitutional balance between the National Government and the States

when enforcement of those laws causes injury that is concrete, particular, and

redressable.  Fidelity to principles of federalism is not for the States alone to

vindicate." *Bond v. United States*, 131 S.Ct. at 2364.

*The City's Reliance on Federal Preemption is Unavailing*

34.    Apart from misreading *Bekins*, the City also relies on a line of

pre-emption cases to justify its position.  But the pre-emption case law actually

shows that there is no legal basis for setting aside the protections of Article 9,

Section 24 of the Michigan Constitution.  Chapter 9 does not "preempt" or otherwise

displace the positive requirements of Michigan's Constitution or its laws.  Indeed, as

shown above, because of core federalism concerns, state law defining the

governmental powers of a municipality *must be honored* under chapter 9 to preserve

the constitutionality of municipal reorganizations.  This is reflected even in the

threshold eligibility requirement that a chapter 9 petition be specifically authorized

to be a debtor under state law.  *See In re Harrisburg, PA,* 465 B.R. at 755 (rejecting

City Council's contention that Supremacy Clause to bar state law prohibition filing

and motive that the state "serves as a municipality as gatekeeper into Chapter 9").

The City's contention is fundamentally undermined by those specific provisions of chapter 9, *e.g.*, Sections 903 and 904, and the applicable plan confirmation requirements which plainly refute the notion that the limits on the bankruptcy court's authority imposed by the reservation of state sovereignty are somehow *superseded* with a chapter 9 filing.[15]

35.     Aside from Tenth Amendment and other federal constitutional limitations, "[i]n determining whether a state statute is pre-empted by federal law" the analysis follows three tracks, where the touchstone "is to ascertain the intent of Congress." *California Federal Sav. and Loan Ass'n v. Guerra*, 479 U.S. 272, 280 (1987).

> First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms.  Second, congressional intent to pre-empt state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation….
>
> As a third alternative, in those areas where Congress has not completely displaced state regulation, federal law may nonetheless pre-empt state law to the extent it actually conflicts with federal law.  Such a conflict occurs either because "compliance with both federal and state regulations is a physical impossibility," or because the state law stands

---

[15] *See* Thomas Moers Mayer, *State Sovereignty, State Bankruptcy, and a Reconsideration of Chapter 9*," 85 Am. Bankr. L. J. 363, 384-5 (Fall, 2011) (raising the "serious question" whether an interpretation of chapter 9 that renders section 903 a "dead letter" is "consistent with" the Tenth Amendment and state sovereignty).  To the extent that it were do so, chapter 9 would be unconstitutional under the Tenth Amendment, and we ask the Court to so find.

"as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Nevertheless, pre-emption is not to be lightly presumed.

*Id*. at 280-82.

36.     Here, as shown above, federal displacement of the power of the State of Michigan and its citizens — through the State Constitution and otherwise — to control the authority of Governor Snyder and the discretion of the Emergency Manager should not "be lightly presumed" because it would violate the sovereignty of the state.  Nothing in chapter 9 provides for an express federal displacement of the prerogative of the state and its citizens to define the powers of its Governor and the Emergency Manager.  *Cf. Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 557 (6th Cir. 2012) (express federal preemption of state law claims which relate to an employee benefit plan under 29 U.S.C. §1144(a)).

37.     Indeed, Sections 903 and 904 are to the contrary because they expressly recognize that the Code does not "impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality[.]"  Under Section 943(b)(4), the terms of the plan of adjustment must comport with the terms of state law.

Nothing in chapter 9 supports an express preemption of the state law defining the

scope and authority of Governor Snyder and EM Orr.[16]

        38.    For the same reason, there is no basis to conclude from chapter 9

that Congress left no room for the operation of the constitutions of the several states,

and of their legislation.  This, too, is recognized in Sections 903 and 904 expressly

recognize the continued vitality of state law.  Indeed, in *Faitoute Iron & Steel*

*Company v. City of Asbury Park*, 316 U.S. 502, 508 (1942), the Supreme Court held

that Congress has not completely dominated the field of municipal reorganization as

to preclude the operation of a state municipal insolvency statute.  *Cf. Molosky v.*

*Washington Mutual, Inc.*, 664 F.2d 109, 113-14 (6th Cir. 2011) (federal Home

Owners' Loan Act preempts claim under Michigan statute because Congress

intended the federal act to occupy the entire field of lending regulation for federal

savings associations and leave no room for state regulatory control); *Modin v. New*

---

[16] The City's reliance on *In re City of Stockton, California,* 478 B.R. 8 (Bankr. E.D. Cal. 2012) and *In re City of Vallejo,* 403 B.R. 72 (Bankr. E.D. Cal. 2009) is misplaced.  The Supremacy clause analysis in these cases is turned on its head: fundamentally, chapter 9 reflects *dual* sovereignty and must be applied with due regard for the sovereignty of *the state*.  Neither federal supremacy nor the Uniformity Clause operate to negate state sovereignty principles which, as we show above, must be given effect for chapter 9 to operate constitutionally.  Indeed, the Uniformity requirement does *not*  mean that bankruptcy must look alike in every state, and the courts have so held.  *E.g., Schultz v. United States*, 529 F.3d 343, 351 (6th Cir. 2008) (rejecting uniformity challenge based on means-test tied to median income in debtor's state).  *In re Kulp*, 949 F.2d 1106, 1103 n.3 (10th Cir. 1991) (no uniformity violation where "11 U.S.C. § 522 expressly delegates to states the power to create bankruptcy exemptions.").

*York Cent. Co.*, 650 F.2d 829, 835 (6th Cir. 1981) (Interstate Commerce

Commission creates a comprehensive scheme of federal regulation of railroads that

preempts state law).

39.     Adherence to the impairment prohibition in Article 9, Section 24

of the Michigan Constitution is not "physically impossible," nor would it stand as an

obstacle to a successful chapter 9 plan (where, in fact, state law compliance is

*required* for confirmation).  The objectives of chapter 9 must be read consistently

with basic constitutional principles that recognize the autonomy of the state and its

citizens to control the political affairs of its subdivision as reflected in Sections 903

and 904.  While the Michigan Constitution forbids the choice of the citizens who

enacted Article 9, Section 24 of the Michigan Constitution must be honored

consistent with Sections 903, 904 and 943 of the Bankruptcy Code and the Tenth

Amendment.[17]

*The State's Authorization Was Unlawful Under Michigan's Constitution and Laws*

40.     Governor Snyder was fully aware that part of the Emergency

Manager's bankruptcy authorization request was a plan to impair accrued vested

---

[17] Article 9, Section 24 of the Michigan Constitution is plainly an exercise by its
citizens of their Tenth Amendment-based right "to control a municipality of or in
such state in the exercise of the political or governmental powers of such
municipality" under Section 903.

13-53846-swr   Doc 1076   Filed 10/20/13   Entered 10/20/13 17:24:02   Page 28 of 40   150

pensions.[18] Yet the Governor placed no contingencies on his July 18, 2013

bankruptcy authorization. *See* Orr Decl., Exhibit J. The Governor's failure to

condition his authorization on adherence to Article 9, Section 24 breached the

State's constitution. *See* 2 Official Record, Constitutional Convention 1961, p. 3402

(accrued pensions are obligations "*which cannot be diminished or impaired by the*

*action of its officials or governing body*.") (emphasis added). Governor Snyder

lacks any authority to ignore Michigan's constitutional proscription against the

impairment of accrued pensions, and the Michigan Supreme Court has made clear

that the Governor is bound by the Michigan Constitution.[19] *See Wood v. State*

*Admin. Bd.*, 238 N.W. 16 (Mich. 1931) (Governor's reduction of appropriations in

bill approved by legislature invalid due to violation of constitution's veto clause);

*Dullam v. Wilson*, 19 N.W. 112 (Mich. 1884) (Governor may not remove public

---

[18] *See, e.g.*, Orr Declaration, Exhibit J, EM Orr's letter of July 16, 2013 to
Governor Snyder and Michigan Treasurer Dillon, p. 8.

[19] Indeed, the Michigan Constitution can be altered only as set forth therein,
notably, with respect to each permitted process, requiring the approval of Michigan
voters. Under Article 12, Section 1, the Legislature, by two-thirds vote of each
chamber, can place a proposed constitutional amendment on the ballot. The
proposed amendment becomes effective only if approved by a majority of the
voters. Pursuant to Article 12, Section 2, a citizen petition for a proposed
amendment can be placed on the ballot, which becomes effective only if approved
by a majority of the voters; or 3. Pursuant to Article 12, Section 3, a duly called
constitutional convention may place a proposed constitutional amendment on the
ballot. The proposed amendment becomes effective only if approved by a majority
of the voters. *See* Mich. Comp. Laws Const. Art. 12 §§ 1-3.

official without due process required by constitution); *see also Buback v. Romney*, 156 N.W.2d 49 (Mich. 1968) (statute permitting Governor to use judicial officers to adjudicate removal of executive branch officials violated constitutional separation of powers and was invalid).

41.     The Governor's statement in his July 18, 2013 letter that the plan of adjustment must be legally executable, under Section 943(b)(4), Orr Decl., Exhibit K,  was insufficient because the Governor nonetheless authorized the filing knowing that EM Orr was pursuing the pension proposal.  The reference to Section 943(b)(4) — which applies to confirmation of the plan — does not provide the requisite gatekeeping "specific authorization" that is required by Section 109(c)(2). *See In re City of Harrisburg, PA,* 465 B.R at 754-55.

42.     Nor did PA 436 authorize EM Orr to contravene Article 9, Section 24 in issuing his request to file the chapter 9 case.[20]  The power of the Emergency Manager is defined by Michigan law and is subject to the Michigan

---

[20] The Governor's authorization does not — and cannot — increase the Emergency Manager's powers shown above, the Governor has no authority to disregard the Michigan Constitution or to change Michigan's laws. Indeed, the Governor has sworn to *uphold* the state Constitution.  As mandated by Article XI, section 1 of the Michigan Constitution and section 64 of the Michigan Election Law, 1954 P.A. 116, M.C.L. §168.1 *et seq.*, the Governor swore the following oath, later filed with the Michigan Secretary of State:  *"I do solemnly swear that I will support the Constitution of the United States and the Constitution of this State, and that I will faithfully discharge the duties of the office of Governor according to the best of my ability."*

- 30 -

13-53846-tjw  Doc 2276  Filed 10/20/13  Entered 10/20/13 17:28:62  Page 30 of 76
13-53846-swr  Doc 1676  Filed 10/20/13  Entered 10/20/13 17:24:02  Page 30 of 76    152

Constitution as well. Under PA 436, the Emergency Manager exercises the power of the government of the City of Detroit. The Emergency Manager "Act[s] for and in the place and stead of the governing body and the office of chief administrative officer of the local government." Mich. Comp. Laws § 141.1549(2). Like the Governor, EM Orr has no authority to pursue cuts in accrued pension benefits through chapter 9 nor, consistent with the Michigan Constitution, could the Michigan legislature lawfully have given him such authority. *See In re Enrolled Senate Bill 1269*, 209 N.W.2d 200, 202 (Mich. 1973) ("under this constitutional limitation the legislature cannot diminish or impair accrued financial benefits"); *see also Pontiac Retired Employees Ass'n*, No. 12-2087, 2013 WL 4038582, *1-*2 (6th Cir. August 9, 2013) (noting that State Legislature could not end the Michigan Constitution's two-thirds vote requirement to give PA 4 immediate effect because "[t]o conclude otherwise would effectively allow the Michigan Legislature to unilaterally amend the Michigan Constitution."); *Webster v. State of Michigan*, No. 13-734-CZ (Ingham County Circuit Court July 19, 2013) (order declaring "PA 436 is unconstitutional and in violation of Article 9 Section 24 of the Michigan Constitution to the extent that it permits the Governor to authorize an emergency manager to proceed under Chapter 9 in any manner which threatens to diminish or impair accrued pension benefits").[21]

---

[21] The *Webster* lawsuit is stayed as a result of this Court's July 25, 2013 order.

43.     Indeed, PA 436 itself expressly references Article 9, Section 24,
for example, in enumerating the Emergency Manager powers in the event a
municipality's pension fund became underfunded (authority EM Orr has not
exercised, notwithstanding his team's review of the underfunding).  Under Section
141.1552(1)(m), "[t]he emergency manager shall fully comply with the public
employee retirement system investment act, 1965 PA 314, Mich. Comp. Laws
§ 38.1132 to 38.1140m, *and section 24 of article IX of the state constitution of 1963,*
and any actions taken shall be consistent with the pension fund's qualified plan
status under the federal internal revenue code."  Mich. Comp. Laws
§ 141.1552(1)(m)(ii)(emphasis added).  And, in authorizing the EM to suspend
certain compensation of local officials, the statute also makes clear that "[t]his
section does not authorize the impairment of vested pension benefits."  Mich. Comp.
Laws 141.1553.

44.     Thus, in the exercise of their respective authority under
Michigan law, Governor Snyder and EM Orr are bound by the prohibition against
impairment of accrued pensions set forth in the Michigan Constitution.  And,
because the state legislature could not permit otherwise, the state legislature
necessarily must limit the circumstances under which a chapter 9 filing could be

Nevertheless, the ruling was issued by a court of competent jurisdiction as a result of
litigation in which those in privity with the City and EM Orr participated.

pursued under the financial emergency laws. Thus the legislature could not purport to authorize either the Governor nor the Emergency Manager to take steps in contravention of the Michigan State Constitution. Nevertheless, both EM Orr and Governor Snyder unlawfully acted beyond those limits in seeking and granting, respectively, authorization for the chapter 9 filing.

45. Accordingly, because the Emergency manager has sought to use chapter 9 to impair accrued pensions and because the Governor's authorization did not condition the bankruptcy filing on adherence to Article 9, Section 24 of the Michigan Constitution, the authorization was invalid under Michigan law. The authorization is, therefore, of no force and is ineffective under Section 109(c)(2). *See In re Harrisburg*, 465 B.R. at 765 (dismissing petition because the City of Harrisburg was not "specifically authorized under state law to be a debtor" under Chapter 9).

The Bankruptcy Petition Must be Dismissed Because
the City Seeks to Effect an Unlawful Plan to Adjust Debts

46. To be eligible for Chapter 9, a debtor must demonstrate that it "desires to effect a plan to adjust [its] debts." 11 U.S.C. § 109(c)(4). For purposes of Section 109(c)(4), the debts intended for adjustment are to be measured as of the petition date. *See In re Town of Westlake, Tex.*, 211 B.R. 860, 867 (Bankr. N.D. Tex. 1997). Here, well before the petition date, the Emergency Manager made known that his plan was to use chapter 9 bankruptcy to turn the retirement system

underfunding obligations into bankruptcy claims, pay them on a pro-rata basis with other unsecured debt and, based on the shortfall created in the retirement system, cut vested pension benefits and accruals. *See* Orr Decl., Exhibit A, p. 109.

47.     This strategy plainly violates the Michigan Constitution's prohibition under Article 9, Section 24 against the impairment of accrued pensions, and, as we show above, invalidates the Governor's authorization and the chapter 9 petition. As such, it also violates the eligibility requirement that the debtor must "desire[] to effect a plan of adjustment" under Section 109(c)(4), in that a plan that the City pursues in order to impair accrued pensions that are protected against impairment by the Michigan Constitution could not be confirmed in any event because such a plan would require that debtor take an action that is "prohibited by law." *See Bekins*, 304 U.S. at 815 (approving municipality's bankruptcy plan where action of the taxing agency in carrying out the plan "is authorized by state law."); *see also In re Sanitary & Improvement Dist.*, # 7, 98 B.R. at 975-76; *In re City of Colorado Springs Spring Creek General Improvement District*, 177 B.R. at 694. Arguably, a proposal is a proposal and not the plan of adjustment and courts have permitted various forms of plans or indicia of proposed plans to fulfill their requirements. *E.g., In re Stockton, Cal.,* 973 B.R. 772, 791 (Bankr. E.D. Cal. 2013). But here, the City devised a pension proposal that it could not ultimately achieve under Section 943(b). The City gave no indication that its proposal was hypothetical

or tentative; instead it was determined to fulfill it, the confirmation issue notwithstanding.[22]  Accordingly, the City cannot be said to desire to effect a *lawful* plan of adjustment.  The City thus fails to meet the requirement of Section 109(c)(4).

**The Bankruptcy Petition Must be Dismissed Because the Petition Was Not Filed in <u>Good Faith and the City Cannot Demonstrate That It Has Complied With Section 109(c)(5)</u>**

48.    The Court must dismiss a chapter 9 petition "if the debtor did not file the petition in good faith" or otherwise meet the requirements of Title 11. 11 U.S.C. § 921(c).  Specifically with respect to the eligibility requirements, where a municipality has not obtained the agreement of creditors holding at least a majority in amount of the claims of each class that it intends to impair under its adjustment plan — which is the case here — then, in order to be eligible for Chapter 9, the municipality must demonstrate (as relevant here) that it "has negotiated in good faith with creditors and has failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan," or that it is "unable to negotiate with creditors because such negotiation is impracticable[.]" 11 U.S.C. § 109(c)(5).

---

[22] The City's Proposal reflects deliberate steps to leading to the forced cuts in benefits.  *See*  Orr Decl., Exhibit A, p. 109.  Although, as has become clear in discovery, the legwork under pinning the proposal was incomplete at best, the City's intent was clear:  show the underfunding to be prohibitively larger than expected, and stop the funding.

49.    Enforcing the "good faith" requirement serves "[i]mportant constitutional issues that arise when a municipality enters the bankruptcy arena" by requiring that, "before rushing to" bankruptcy court, the municipality first sought to negotiate in good faith concerning the treatment the creditors may be expected to receive under a plan. *In re Cottonwood Water and Sanitation Dist.,* 138 B.R. 973, 979 (Bankr. D. Colo. 1992). Thus, a debtor who adopts a "take it or leave it" approach to prepetition negotiations fails to satisfy the good faith element. *In re Ellicott School Bldg. Auth.*, 150 B.R. 261, 266 (Bankr. D. Colo. 1992). There, the court noted that the debtor "h[e]ld three public meetings at which it 'explained' its proposed plan of restructuring to the bondholders" but creditors "were advised that the 'economic provisions' of that proposed plan were not negotiable." *Id.* at 266. *See also id*. (court reasoned that "[i]t is difficult to imagine that any true negotiations [can] take place in an environment where the substantive terms of a proposal were not open to discussion" and dismissed the petition in part because the good faith requirement was not satisfied.). *Id.* In other words, there must be genuine substantive negotiations over the terms of a repayment plan, and Section 109(c)(5)(B) will not be satisfied where a debtor fails to negotiate prepetition over "a comprehensive workout plan dealing with all of their liabilities and all of their assets in terms comparable to a plan of adjustment that could be effectuated under Chapter 9 of the Bankruptcy Code." *See also In re Pierce County Housing Auth.*,

414 B.R. 702 (Bankr. W.D. Wash. 2009) (requirement not met where "there is no evidence that the Debtor ever negotiated prepetition with any of its creditors over the possible terms of a plan of adjustment").

50.     The City's efforts to negotiate with stakeholders over their pension proposal fall far short of the "good faith" requirement.  First, as noted above, Orr's Proposal was obviously crafted with chapter 9 in mind (or, the City's flawed view of what could be lawfully accomplished in chapter 9) and with no effort whatsoever to acknowledge the legitimacy of Article 9, Section 24 of the Michigan Constitution.  By completely disregarding the State Constitution's prohibition on impairing vested benefits, the City tendered a proposal that the affected stakeholders could not possibly accept consistent with applicable State law.

51.     The evidence will show that Orr, aided by the Governor, embarked on a direct path to chapter 9 to implement a proposal designed to shed its pension and retiree health obligations as general unsecured claims and promote an ambitious program of improvements for the City.  We show above how this gamble plays havoc with core principles of federalism and the right of the citizenry to enact State Constitutional provisions — a right protected by the Tenth Amendment.  In addition, because of the City's rush to file, its Proposal was deeply flawed.  For example, the City had barely identified certain assets that might be available either for creditors or for its program of improvements.  *See*  Orr Decl., Exhibit A, pp. 83-

89.  The pension funding estimate, likewise, was based on scenarios deemed "more realistic" by the City's turnaround consultant but requiring additional work that is to this day not yet complete.  As such, the Emergency Manager's Proposal and short march toward chapter 9 indicate that the City's efforts were not intended to engage in a good faith process with their stakeholders.  Instead, the use of bankruptcy specifically to achieve its transformation proposal was always the intended goal of the process.[23]  The Proposal was not designed as a plan for discussion among stakeholders but a milepost in the road to chapter 9.  The City's filing cannot be said to be in good faith where the bankruptcy filing is, in effect, the goal of the process.

52.     The City relies upon the impracticability of negotiations available as an alternative grounds under Section 109(c)(5)(C).  *See* Consolidated Reply, pp. 45-53.  But the issues cited by the City, *i.e.*, who to identify as "representatives" of various retiree groups, competing bargaining authority, or the extent to which legal authority would be considered binding, are by-products of the proposals that involved forced cuts in accrued pensions protected from impairment under the Michigan State Constitution.  The City cannot, on the one hand, tender a

---

[23] *See* Ellman and Merrett, *Pensions and Chapter 9* at 370 (noting that "there are many unanswered questions about what can and cannot be achieved in a chapter 9 case" and "the reality that this area of the law [whether chapter 9 is an available means to address protected pensions] is largely untested in the courts and very little is certain."); *see also id.* at 391 (noting that through the use of bankruptcy tools, such as the automatic stay "chapter 9 debtors have exerted substantial pressure on retirees to negotiate over a reduction in benefits.").

- 38 -

13-53846-swr  Doc 2276  Filed 10/20/13  Entered 10/20/13 17:28:62  Page 38 of 76    160

proposal designed to yield an unlawful result and then attempt to shield itself behind "impracticability" to claim eligibility under Section 109. That negotiations may have been, technically speaking, "impracticable" did not so much stem from the unwieldy size and scope of the stakeholder population, as from the impossibility of lawfully engaging in negotiations over the pension proposal.

53.     Accordingly, the City cannot show that its filing was made in good faith, or that is has complied with the requirements of Section 109(c)(5). Where the debtor is unable to demonstrate that all elements have been satisfied, "[t]he petition must be dismissed." *In re Harrisburg*, 465 B.R. at 752.[24]

---

[24] UAW and the *Flowers* plaintiffs reserve their right to further supplement their objections, including in connection with the pre-trial brief in this matter, in light of continuing discovery and potential challenges UAW and the *Flowers* plaintiffs may pursue with respect to material withheld on the grounds of attorney-client and other privileges.

## Conclusion

For the foregoing reasons, the City of Detroit, Michigan's Chapter 9

Petition should be dismissed.

Dated:      New York, NY
            October 11, 2013

                              Respectfully submitted,

                              International Union, UAW

                              By: /s/ Babette A. Ceccotti
                                  Cohen, Weiss and Simon LLP
                                  Babette A. Ceccotti
                                  Keith E. Secular
                                  Thomas N. Ciantra
                                  Peter D. DeChiara
                                  Joshua J. Ellison
                                  330 West 42nd Street
                                  New York, New York 10036-6976
                                  T: 212-563-4100
                                  F: 212-695-5436
                                  bceccotti@cwsny.com

                                        -   and -

                                  Niraj R. Ganatra (P63150)
                                  Michael Nicholson (P33421)
                                  8000 East Jefferson Avenue
                                  Detroit, Michigan  48214
                                  T: (313) 926-5216
                                  F: (313) 926-5240
                                  nganatra@uaw.net
                                  mnicholson@uaw.net

                                  *Attorneys for International Union,
                                  UAW*

                                        -   and -

_/s/ William A. Wertheimer_____

William A. Wertheimer
30515 Timberbrook Lane
Bingham Farms, MI 48025
T: (248) 644-9200
billwertheimer@gmail.com

Andrew A. Nickelhoff
Sachs Waldman, P.C.
2211 East Jefferson Avenue
Deoit, MI 48207
T: (313) 965-3464
F: (313) 965-0268
anickelhoff@sachswaldman.com

*Attorneys for Flowers Plaintiffs*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Chapter 9
                                                Case No. 13-53846
City of Detroit, Michigan,                      Hon. Steven W. Rhodes

        Debtor.
_____/

### Order Regarding Further Briefing on Eligibility

For the reasons stated on the record in open Court on October 16, 2013, it is hereby ordered that the objecting parties may file supplemental briefs by October 30, 2013, and the City, the State Attorney General and the United States Attorney General may file supplemental briefs by November 6, 2013. Such supplemental briefs may be no more than 10 pages in length, which page limit will not be extended. Counsel are requested not to address issues that their briefs have already addressed.

.

**Signed on October 17, 2013**

                                    _____/s/ Steven Rhodes_____
                                    **Steven Rhodes**
                                    **United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| In re | No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, | Chapter 9 |
| Debtor. | HON. STEVEN W. RHODES |

## STATE OF MICHIGAN'S SUPPLEMENT TO
## THE RECORD REGARDING ELIGIBILITY

Per the Court's request during the October 15, 2013, hearing to determine the City's eligibility to be a debtor under Chapter 9, the State of Michigan supplements the record with the attached documents regarding the State court case of *Gracie Webster v State of Michigan*, Court of Claims Case No. 13-734-CZ, Court of Appeal Nos 317286 & 317292.

Respectfully submitted,

*/s/ Steven B. Flancher*
Steven B. Flancher (P47894)
Assistant Attorney General
Attorney for State of Michigan
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-3203
flanchers@michigan.gov

Dated: October 17, 2013

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2013, I electronically filed the above

document(s) with the Clerk of the Court using the ECF System, which

will provide electronic copies to counsel of record.

*/s/ Steven B. Flancher*
Steven B. Flancher (P47894)
Assistant Attorney General
Attorney for State of Michigan
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-3203
flanchers@michigan.gov

INGHAM COUNTY 30TH CIRCUIT
313 W. Kalamazoo St.

LANSING, MICHIGAN 48933

| Case Number | Status | Judge |
|---|---|---|
| 13-000734-CZ-C30 | OPEN | AQUILINA, ROSEMARIE E. |

In The Matter Of                                         Action

WEBSTER, GRACIE et al VS DEFENDANT: MI STATE OF et al     COMPLAINT W/ SUMMONS

| Party | Type | Attorneys |
|---|---|---|
| THOMAS, VERONICA | PLNTF | CANZANO, JOHN R. 400 GALLERIA OFFICENTER #117 SOUTHFIELD, MI 48034 |
| WEBSTER, GRACIE | PLNTF | CANZANO, JOHN R. 400 GALLERIA OFFICENTER #117 SOUTHFIELD, MI 48034 |
| GOV MI | DFNDT | |
| MI STATE OF | DFNDT | |
| TREASURER MI | DFNDT | |

| Opened | Judgment Date | Case Type |
|---|---|---|
| 07/03/2013 | | CZ - OTHER GENERAL CIVIL |

Comments:

| No. | Date of Filing | Operator | Pleadings and Actions Journal Book-Page-Nbr          Ref Nbr | Original Amt Due/ Amt Dismissed | Balance Due |
|---|---|---|---|---|---|
| 1 | 07/03/13 | ATIMMER | COMPLAINT FILED  Receipt: 322485  Date: 07/03/2013 | 150.00 | 0.00 |
| 2 | 07/03/13 | ATIMMER | SUMMONS ISSUED | 0.00 | 0.00 |
| 3 | 07/03/13 | MKAHARI | MISCELLANEOUS MOTION FOR DECLARATORY JUDGMENT AND EXPEDITED HEARING OR IN THE ALT FOR PRELIM INJUNCTION | 0.00 | 0.00 |
| 4 | 07/03/13 | MKAHARI | BRIEF IN SUPPORT OF MOTION FOR DECLARATORY JUDGMENT AND EXPEDITED HEARING OR IN THE ALT FOR PRELIM INJUNCTION | 0.00 | 0.00 |
| 5 | 07/03/13 | KAMILTON 1 | ORDER OF REASSIGNMENT FROM JUDGE CANADY TO JUDGE AQUILINA | 0.00 | 0.00 |
| 6 | 07/05/13 | MKAHARI | ORDER TO SHOW CAUSE ON JULY 22, 2013 AT 9 | 0.00 | 0.00 |
| 7 | 07/05/13 | MKAHARI | SUMMONS ISSUED | 0.00 | 0.00 |
| 8 | 07/09/13 | KAMILTON 1 | CASE REASSIGNED FROM TO The judge was changed from CANADY III, CLINTON | 0.00 | 0.00 |

Date: 07/19/2013  09:17:55.2
MIJR5926

INGHAM COUNTY 30TH CIRCUIT
313 W. Kalamazoo St.

LANSING, MICHIGAN 48933

13-000734-CZ-C30   WEBSTER, GRACIE et al VS DEFENDANT:      MI STATE OF et al
                   *** End of Report ***

INGHAM COUNTY 30TH CIRCUIT
313 W. Kalamazoo St.

LANSING, MICHIGAN 48933

13-000734-CZ-C30    WEBSTER, GRACIE et al VS DEFENDANT: MI STATE OF et al

| No. | Date of Filing | Operator | Pleadings and Actions<br><br>Journal Book-Page-Nbr      Ref Nbr | Original Amt Due/<br>Amt Dismissed | Balance Due |
|-----|-------|---------|------------------|---------|--------|
| 9 | 07/09/13 | DCLINE | HEARING SET:<br>Event: SHOW CAUSE HEARING<br>Date: 07/22/2013    Time: 9:00 am<br>Judge: AQUILINA, ROSEMARIE E.    Location:<br>COURTROOM 5 - VETERANS MEMORIAL | 0.00 | 0.00 |
| 10 | 07/11/13 | KAMILTON 1 | PROOF OF SERVICE ON 070513 A COPY OF SUMMONS & COMPLAINT PERSONALLY SERVED UPON GOVERNOR SYNDER; STATE OF MICHIGAN; DEPT OF TREASURY | 0.00 | 0.00 |
| 11 | 07/16/13 | KAMILTON 1 | REQUEST FOR FILM AND ELECTRONIC MEDIA COVERAGE OF COURT PROCEEDINGS / DETROIT NEWS PHOTOGRAPHER TO APPEAR ON 7/22/13 @ 9AM | 0.00 | 0.00 |

|  | Totals By: | COURT COSTS | 150.00 | 0.00 |
|--|------------|-------------|--------|------|
|  |            | INFORMATION | 0.00 | 0.00 |

Approved, SCAO

| Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>30th JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT | CASE NO.<br>13-734-CZ |
|---|---|---|

Court address: 313 W. Kalamazoo, Lansing MI 48901     Court telephone no. (517) 483-6500

| Plaintiff's name(s), address(es), and telephone no(s). | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| Gracie Webster and<br>Veronica Thomas | v | The State of Michigan,<br>Richard Snyder, Governor of the The State of Michigan, and<br>Andy Dillon, Treasurer of the State of Michigan |

Plaintiff's attorney, bar no., address, and telephone no.

John R. Canzano (P30417)
McKnight, McClow, Canzano, Smith & Radtke, P.C.
400 Galleria Officentre, Suite 117
Southfield MI 48034
248-354-9650

*H.D.*

JUL 05 2013

**Tax Policy Division**

---

**SUMMONS**   NOTICE TO THE DEFENDANT: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>JUL 03 2013 | This summons expires<br>OCT 02 2013 | Court clerk<br>ELIZABETH ROBERTSON |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.
This document must be sealed by the seal of the court.

---

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in this Court. _____ Court.
The action ☑ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| 13-729-CZ | Aquilina | P37670 |

---

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Detroit MI, Wayne County | Defendant(s) residence (include city, township, or village)<br>Lansing, MI, Ingham County |
|---|---|
| Place where action arose or business conducted<br>Ingham County | |

07/05/2013 _____     Signature of attorney/plaintiff
Date

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (3/08) SUMMONS AND COMPLAINT   MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
| --- | --- | --- |
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization required) |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____

List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
| --- | --- | --- |
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
| --- | --- | --- |
| | | |
| | | |
| | | |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Mileage fee | Total fee |
| --- | --- | --- | --- |
| $ | | $ | $ |

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.

Date

My commission expires: _____ Signature: _____

Date                                                                  Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____

Attachments

_____ on _____

Day, date, time

_____ on behalf of _____

Signature

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

        Plaintiffs,

vs

                            Case No. 13-734-CZ
                            Hon. CLINTON CANADY III

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

        Defendants.

_____/

JOHN R. CANZANO (P30417)
McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com
_____/

A civil action between these parties or
other parties arising out of the transaction
or occurrence alleged in the Complaint has
been previously filed in this Court,
where it was given docket number 13-729-CA
and was assigned to Judge Aquilina.
The action remains pending.

**VERIFIED COMPLAINT FOR
DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

**NATURE OF ACTION**

    1.    This action seeks a declaratory judgment that the "Local Financial Stability and

Choice Act," 2012 PA 436, MCL 141.1541 *et seq* ("PA 436") is unconstitutional and in violation of

Article IX Section 24 of the Michigan Constitution because PA 436 permits accrued pension benefits to be diminished or impaired by bankruptcy proceedings in direct contravention of the Constitution. This action also seeks a preliminary and/or final injunction enjoining the Governor and/or the State Treasurer from authorizing a bankruptcy proceeding permitting an unconstitutional diminishment or impairment of accrued pension benefits under PA 436.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff Gracie Webster is a retiree from the City of Detroit. She retired in 2000 and is receiving a pension benefit under the City of Detroit's General Retirement System Pension Plan. She resides in Detroit and is a citizen of the State of Michigan.

3. Plaintiff Veronica Thomas is an employee of the City of Detroit. She has worked for the City for 17 years. She is a participant in the City of Detroit's General Retirement System Pension Plan. Although she has not yet retired, based on her years of service Plaintiff Thomas has earned the right to an accrued vested pension benefit under the terms of the pension plan.

4. Defendant State of Michigan is a governmental entity and sovereign state of the United States, retaining all powers reserved to it under the 10th Amendment to the United States Constitution.

5. Defendant Richard Snyder is the Governor of the State of Michigan acting in his official capacity.

6. Defendant Andy Dillon is Treasurer of the State of Michigan acting in his official capacity.

7. The Governor may delegate his duties under Section 9 of PA 436, MCL 141.1549 to the State Treasurer.

8. This court has jurisdiction under MCL 600.6419(4), which provides for the jurisdiction of circuit courts in proceedings for declaratory or equitable relief against the State, and

2

MCL 600.605, which provides original jurisdiction in the circuit courts.

9.      Venue is proper in this court under MCL 600.1621(a), because Defendants conduct business in Ingham County.

## COUNT I:  DECLARATORY JUDGMENT

**PA 436 Is Unconstitutional Because It Permits Accrued Pension Benefits To Be Diminished Or Impaired In Direct Violation Of Article IX, Section 24 Of The Michigan Constitution**

10.      Article IX Section 24 of the Michigan Constitution provides in pertinent part:

> The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof **which shall not be diminished or impaired** thereby.

11.      PA 436 was enacted by the Michigan Legislature on December 28, 2012 and became effective March 28, 2013.

12.      Among the purposes of PA 436, as stated in its preamble, are to "prescribe remedial measures to address a financial emergency within a local unit of government;" "to prescribe the powers and duties of an emergency manager for a local unit of government;" and "to provide a process by which a local unit of government . . . may file for bankruptcy."

13.      On March 14, 2013, Defendant Snyder appointed Kevyn Orr as Emergency Financial Manager for the City of Detroit, pursuant to 1990 PA 72, MCL 141.1201 *et seq* ("PA 72").  PA 436 is a successor statute to, and expressly repeals, PA 72.

14.      Pursuant to Sec 9(10) of PA 436, MCL 141.1549(10), Kevyn Orr, as an emergency financial manager appointed under former 1990 PA 72 "and serving immediately prior to the effective date of this act, shall be considered an emergency manager under this act [PA 436] and shall continue under this act to fulfill his or her powers and duties."

15.      Chapter 9 of the U.S. Bankruptcy Code, 11 USC §§901 *et seq*, provides a process by

3

which a municipality may file for bankruptcy and become a debtor under Chapter 9 in federal bankruptcy court.

16.    However, in order to protect state sovereignty and in recognition of federalism principles under the 10th Amendment to the U.S. Constitution, Chapter 9 of the Bankruptcy Code prohibits municipalities from filing for bankruptcy unless the municipality "is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter." Absent such authorization, federal bankruptcy courts have no jurisdiction under Chapter 9 over a municipality as a debtor. 11 USC §109(c)(2). See *Ashton v Cameron County Water Improvement Dist No 1*, 298 US 513; 56 S Ct 892; 80 L Ed 1309 (1936); and *United States v Bekins*, 304 US 27, 58 S Ct 811; 82 L Ed 1137 (1938).

17.    Section 18 of PA 436, MCL 141.1558, specifically authorizes a local unit of government to become a debtor in a Chapter 9 bankruptcy proceeding if the emergency manager for the local government recommends to the Governor and the State Treasurer that the local government be authorized to proceed under Chapter 9, and if the Governor approves the recommendation by informing the emergency manager and State Treasurer in writing of his decision.

18.    PA 436 nowhere requires that in considering whether to approve an emergency manager's recommendation to proceed under Chapter 9, the Governor shall not approve such recommendation if accrued pension benefits may be diminished or impaired in violation of Article IX Section 24 of the Michigan Constitution.

19.    Accordingly, because PA 436 does not prohibit a municipality from proceeding under Chapter 9 of the U.S. Bankruptcy Code if accrued pension benefits may be unconstitutionally diminished or impaired , PA 436 is unconstitutional on its face in violation of Article IX Section 24 of the Michigan Constitution.

4

20.     Section 11 of PA 436, MCL 141.1551, provides that "an emergency manager shall develop and may amend a written financial operating plan for the local government [and that] [t]he financial and operating plan shall provide for . . . [t]he timely deposit of required payments to the pension fund for the local government or in which the local government participates."

21.     On May 12, 2013, Emergency Manager Orr issued a financial and operating plan pursuant to Section 11 of PA 436. (Available at www.freep.com/assets/freep/pdf/C4205233512.pdf.) The plan does not schedule the "timely deposit of required payments" to the pension funds as required by Section 11 of PA 436, but instead notes that payments have been deferred to manage a liquidity crisis.

22.     On June 14, 2013, Emergency Manager Orr issued a "Proposal for Creditors" in which he presents various restructuring options. (Available at http://www.freep.com/assets/freep/pdf/C4206913614.pdf.) Nowhere in this document does Emergency Manager Orr indicate any intent to comply with Article IX Sec 24 of the Michigan Constitution. Instead, in direct contravention of the Michigan Constitution, the proposal expressly states that "*there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons*."

23.     Emergency Manager Orr has publicly threatened, in a June 14 interview with the Detroit Free Press Editorial Board, that vested pension benefits will be abrogated in a Chapter 9 proceeding authorized by the Governor pursuant to PA 436, and that any state law protecting vested pension benefits is "not going to protect" retirees or employees with vested pension benefits in bankruptcy court. (See www.freep.com/article/20130616/OPINION05/306160052/kevyn-orr-detroit-emergency-manager-creditors-fiscal-crisis.)

24.     Article IX Section 24 of the Michigan Constitution is such a state law, which Emergency Manager Orr has asserted will "not . . . protect" vested pension benefits.

25. Under PA 436, the only way Emergency Manager Orr could impose his desired "significant cuts in accrued, vested pension amounts for both active and currently retired persons" is through a Chapter 9 bankruptcy filing.

26. Plaintiffs are entitled to a declaratory judgment that PA 436 is unconstitutional under Article IX Section 24 of the Michigan Constitution because PA 436 does not prohibit the Governor from authorizing a Chapter 9 bankruptcy filing which threatens to unconstitutionally diminish or impair the Plaintiffs' accrued pension benefits, and a final judgment ordering that Defendant Snyder and/or Defendant Dillon not authorize a Chapter 9 filing which threatens to diminish or impair accrued pension benefits in violation of the Michigan Constitution.

27. This case presents an actual controversy entitling Plaintiffs to a declaratory judgment because the facts stated above indicate " an adverse interest necessitating the sharpening of the issues raised." *Lansing School Education Ass'n v Lansing Bd of Educ*, 487 Mich 349, 372 n20; 792 NW2d 686 (2010), quoting *Associated Builders and Contractors v Dep't of Consumer and Indus Servs Dir*, 472 Mich 117, 126; 693 NW2d 374 (2005). Plaintiffs are entitled to a declaratory judgment here "to obtain adjudication of rights before an actual injury occurs [and] to settle a matter before it ripens into a violation of the law . . ." *Rose v State Farm Mut Auto Ins Co*, 274 Mich App 291, 294; 732 NW2d 160 (2006).

28. Plaintiff's need for a Declaratory Judgment is urgent. Based on the above facts, a request by the Emergency Manager to proceed under Chapter 9 is imminent, because he has credibly threatened – indeed, has given every indication – that he intends to impair or diminish accrued pension benefits in contravention of Article IX Section 24 of the Michigan Constitution, and that Chapter 9 bankruptcy proceedings are the mechanism by which he can do so. Thus Plaintiffs' rights under the Michigan Constitution not to have their pension benefits "diminished or impaired" can

6

only be guaranteed if this Court acts *before* the Governor approves a request to proceed under Chapter 9. Moreover, Emergency Manager Orr's threats that he will unconstitutionally diminish or impair Plaintiffs' vested pension rights have themselves harmed Plaintiffs by instilling in Plaintiffs a reasonable fear that their constitutional rights will be trampled upon and, in the process, their future source of income drastically eroded.

29. Accordingly, Plaintiffs are entitled to a speedy hearing under MCR 2.605(D) on their request for declaratory relief.

## COUNT II: PRELIMINARY INJUNCTION

30. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 29 above.

31. Plaintiffs will suffer irreparable harm if Defendants Snyder and Dillon are not enjoined from authorizing the Emergency Manager to proceed under Chapter 9 of the U.S. Bankruptcy Code and thereby seeking to abrogate Plaintiffs' rights under the Michigan Constitution and the source of livelihood it guarantees them in a forum which the Emergency Manager contends does not protect those rights.

32. The harm to Plaintiffs absent injunctive relief outweighs the harm to Defendants if an injunction is granted because the Governor and Treasurer will not be harmed if they are enjoined from authorizing the Emergency Manager to file under Chapter 9.

33. Plaintiffs are likely to succeed on the merits.

34. There will be harm to the public interest absent an injunction, as the accrued vested pension rights of thousands of City of Detroit retirees and employees will be threatened with abrogation in violation of the Michigan Constitution.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant the following relief:

A.    A declaratory judgment that PA 436 is unconstitutional in violation of Article IX Section 24 of the Michigan Constitution.

B.    A preliminary and/or permanent injunction enjoining Defendant Snyder and Defendant Dillon from authorizing the Detroit Emergency Manager to commence proceedings under Chapter 9 of the U.S. Bankruptcy Code.

C.    An award to Plaintiffs of their costs and expenses, including attorneys' fees, incurred in this action.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By: _____
John R. Canzano (P30417)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com

Date: July 3, 2013

**VERIFICATION**

STATE OF MICHIGAN    )
                     )ss
COUNTY OF OAKLAND    )

John R. Canzano, being first duly sworn, deposes and states he is the attorney representing Plaintiffs herein; that he has read the foregoing verified complaint by him subscribed for and on

8

behalf of Plaintiffs; that he knows the contents thereof to be true except as to those matters stated upon information and belief, and as to those matters, he believes them to be true, and he is authorized to sign said Verified Complaint on behalf of Plaintiffs.

John R. Canzano

Subscribed and sworn to before me this 3rd day of July 2013.

Karen Ann Purslow, Notary Public
County of Oakland, State of Michigan
My Commission Expires:    April 19, 2014

9

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

        Plaintiffs,

vs

                                  Case No. 13-734-CZ
                                  Hon. CANADY

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

        Defendants.

                                                /

JOHN R. CANZANO (P30417)
McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com

                                                /

## MOTION FOR DECLARATORY JUDGMENT
## AND EXPEDITED HEARING PURSUANT TO MCR 2.605(D),
## OR IN THE ALTERNATIVE FOR PRELIMINARY INJUNCTION.

    For the reasons stated in the attached brief, Plaintiffs request that this Court order an

expedited hearing and grant a declaratory judgment and permanent injunction, or, in the

alternative, a preliminary injunction in their favor.

                        Respectfully submitted,

                        McKNIGHT, McCLOW, CANZANO,
                        SMITH & RADTKE, P.C.

                      By: _____
                          John R. Canzano (P30417)
                          Attorneys for Plaintiffs
                          400 Galleria Officentre, Suite 117
                          Southfield, MI 48034
                          248-354-9650
                          jcanzano@michworklaw.com

Date: July 3, 2013

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

      Plaintiffs,

vs

                                  Case No. 13-734-CZ
                                  Hon.    CANADY

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

      Defendants.

_____/

JOHN R. CANZANO (P30417)
McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com

_____/

**BRIEF IN SUPPORT OF MOTION FOR
DECLARATORY JUDGMENT AND EXPEDITED
HEARING PURSUANT TO MCR 2.605(D), OR
IN THE ALTERNATIVE FOR PRELIMINARY INJUNCTION**

      This action seeks a declaratory judgment that the "Local Financial Stability and Choice Act," 2012 PA 436, MCL 141.1541 *et seq.* ("PA 436") is unconstitutional in violation of Article IX Section 24 of the Michigan Constitution, which expressly protects vested pension rights by requiring that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions . . *shall not be diminished or impaired . . .*"

Pursuant to MCR 2.605(D), "[t]he court may order a speedy hearing of an action for declaratory relief and may advance it on the calendar" in appropriate cases. This is such a case. Plaintiffs, a City of Detroit pensioner who retired 13 years ago, and a City of Detroit employee with 17 years of accrued vested service, are facing an imminent threat that their vested pension rights will be irreparably and permanently diminished and impaired in a Chapter 9 bankruptcy proceeding authorized by PA 436, in direct violation of Article IX Section 24 of the Michigan Constitution. In the alternative, Plaintiffs are seeking a preliminary injunction enjoining Defendant Governor Snyder and Defendant State Treasurer Dillon from authorizing a Chapter 9 bankruptcy under PA 436.

## FACTS

Plaintiffs incorporate herein the facts stated in the Verified Complaint. This case presents essentially a pure question of law. The pertinent facts are not in dispute.

Kevyn Orr currently serves as the Emergency Manager of the City of Detroit under PA 436. Under Section 18 of PA 436, Defendant Governor Snyder is empowered to authorize Orr to file for Chapter 9 bankruptcy on behalf of the City if the Governor approves the Emergency Manager's recommendation to do so.

On June 14, 2013, Emergency Manager Orr issued a "Proposal for Creditors" which expressly states that *"there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons."* The same day, Emergency Manager Orr publicly threatened, in an interview with the Detroit Free Press Editorial Board, that vested pension benefits will not be protected in a Chapter 9 proceeding authorized by the Governor pursuant to PA 436, and that any state laws protecting vested pension benefits will "not . . . protect" retirees in bankruptcy court. As the Emergency Manager stated in the interview:

2

Q. You said in this report that you don't believe there is an obligation under our state constitution to pay pensions if the city can't afford it?

A. The reason we said it that way is to quantify the bankruptcy question. We think federal supremacy trumps state law.

Q. Which the Ninth Circuit agrees with for now.

A. It is what it is - so we said that in a soft way of saying, "Don't make us go into bankruptcy." **If you think your state-vested pension rights, either as an employee or a retiree -** *that's not going to protect you.* **If we don't reach an agreement one way or the other, we feel fairly confident that the state federal law, federalism, will trump state law or negotiate.** The irony of the situation is we might reach a deal with creditors quicker because employees and retirees think there is some benefit and that might force our hand. That might force a bankruptcy. (Emphasis added.)

## LAW

Plaintiffs are entitled to a declaratory judgment that PA 436 is unconstitutional in violation of Article IX Section 24 of the Michigan Constitution, because PA 436 permits accrued pension benefits to be diminished or impaired in direct contravention of the Constitution. Article IX Section 24 provides that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof *which shall not be diminished or impaired* thereby." There could not be a more clear and plain constitutional mandate. Article IX Section 24 means what it says: *accrued pension benefits "shall not be diminished or impaired."* See, *AFT Michigan v State of Michigan*, 297 Mich App 597, 610; 825 NW2d 595 (2012); *Mt Clemens Firefighters Union, Local 838, IAFF v City of Mt Clemens,* 58 Mich App 635, 644; 228 NW2d 500 (1975). The Official Record of the 1963 Constitutional Convention further supports that no governmental entity or its officials can do anything to diminish or impair vested pension benefits:

This is a new section that requires that accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions be a

contractual obligation which **cannot diminished or impaired by the action of its officials or governing body.**

2 Official Record, Constitutional Convention 1961, p. 3402 (emphasis added).

Chapter 9 of the U.S. Bankruptcy Code, 11 USC §§901 *et seq.*, provides a process by which a municipality may file for bankruptcy. However, because of federalism concerns and to protect the states' sovereignty, Chapter 9 prohibits a municipality from filing for bankruptcy unless "specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter." 11 USC §109(c)(2). Indeed, many states simply do not authorize their municipalities to file for bankruptcy at all. Absent such authorization, federal bankruptcy courts have no jurisdiction under Chapter 9 over a municipality as a debtor. See *Ashton v Cameron County Water District No 1,* 298 US 513; 56 S Ct 892; 80 L Ed 1309 (1936); and *United States v Bekins,* 304 US 27; 58 S Ct 811; 82 L Ed 1137 (1938).

Section 18 of PA 436 authorizes a municipality to commence Chapter 9 bankruptcy proceedings if the emergency manager appointed under PA 436 recommends, and the Governor authorizes, that the municipality file for bankruptcy under Chapter 9.

Notably, PA 436 explicitly recognizes that accrued pension benefits shall not be diminished or impaired outside the bankruptcy context. But PA 436 nowhere requires that the Governor shall not authorize a Chapter 9 bankruptcy filing if accrued pension benefits may be diminished or impaired thereby in violation of Article IX Section 24. *For example,* Section 11 of PA 436 requires that an emergency manager develop a written financial and operating plan for the local government and that such plan "shall provide" for "the timely deposit of required payments to the pension fund for the local government." *For example,* Section 13 of PA 436 authorizes the emergency manager to eliminate the salary, wages or other compensation and

4

benefits of the chief administrative officer and members of the governing body of the local government, but expressly provides that "[t]his section does not authorize the impairment of vested pension benefits." *For example,* Section 12(m) of PA 436 authorizes an emergency manager under certain circumstances to be appointed as the sole trustee of a local pension board and to replace the existing trustees, and requires that "the emergency manager shall fully comply with . . . Section 24 of Article IX of the state constitution . . ." when acting as the sole trustee.

By contrast, Section 18 of PA 436, which empowers the Governor to authorize a municipality to file for bankruptcy under Chapter 9, *nowhere* requires that the Governor shall not authorize such filing if accrued pension benefits may be unconstitutionally diminished or impaired. Clearly, the Legislature understood and honored the constitutional mandate not to diminish or impair accrued pension benefits outside of bankruptcy. Just as clearly, the Legislature *omitted* any constitutional protection against the impairment or diminishment of accrued pension benefits when the Governor authorizes a Chapter 9 bankruptcy filing under Section 18 of PA 436. In other words, by expressly **including** the protection of Article IX Section 24 in various sections of the law, but not Section 18, PA 436 plainly **excludes** those protections from Section 18.[1] Accordingly, PA 436 is unconstitutional on its face because it does not prohibit a municipality from proceeding under Chapter 9 if accrued pension benefits may be unconstitutionally diminished or impaired, in violation of Article IX Section 24 of the Michigan Constitution.

Plaintiffs are entitled to a declaratory judgment that PA 436 is unconstitutional under Article IX Section 24 of the Michigan Constitution because PA 436 does not prohibit the

---

[1] This conclusion is supported by the traditional maxim "*expressio unius est exclusio alterius*" (to express one thing is to exclude another). *See, e.g., Smitter v Thornapple Twp,* ____ Mich ____, 2013 Mich Lexis 912, *19, n 34 (June 19, 2013); *Johnson v Recca,* 492 Mich 169, 176, n 4; 821 NW2d 520 (2012).

Governor from authorizing a Chapter 9 bankruptcy filing which threatens to unconstitutionally diminish or impair the Plaintiffs' accrued pension benefits.

Plaintiffs' need for a Declaratory Judgment is urgent. The facts show that a request by the Emergency Manager to proceed under Chapter 9 is imminent, because he has given every indication that he intends to impair or diminish accrued pension benefits in contravention of Article IX Section 24 of the Michigan Constitution. Plaintiff's' rights under the Michigan Constitution not to have their pension benefits "diminished or impaired" can only be guaranteed if this Court acts *before* the Governor approves a request to proceed under Chapter 9.

This case presents an actual controversy entitling Plaintiffs to a declaratory judgment because the facts indicate "an adverse interest necessitating the sharpening of the issues raised." *Lansing School Education Ass'n v Lansing Bd of Educ*, 487 Mich 349, 372 n20; 792 NW2d 686 (2010), quoting *Associated Builders and Contractors v Wilbur*, 472 Mich 117, 126; 693 NW2d 374 (2005). Plaintiffs are entitled to a declaratory judgment here "to obtain adjudication of rights *before* an actual injury occurs [and] to settle a matter *before* it ripens into a violation of the law . . ." *Rose v State Farm Mutual Auto Insurance Co*, 274 Mich App 291, 294; 732 NW2d 160 (2006). (emphasis supplied)

This case presents the classic case for declaratory relief. Plaintiffs cannot wait to protect their constitutional rights until after the Governor authorizes a Chapter 9 filing. "Declaratory relief is designed to give litigants access to courts to preliminarily determine their rights. . . . the court is not precluded from reaching issues before actual injuries or loses have occurred." *City of Detroit v State of Michigan*, 262 Mich App 542, 550-551; 686 NW2d 514 (2004), citing *Shavers v Attorney General*, 402 Mich 554, 588-589; 267 NW2d 72 (1978) (explaining that plaintiff's request for declaratory relief "does not rely on the state having already violated the zoning ordinance [but] rather properly requests a determination whether the state had the

authority to proceed as planned"). Moreover, the Emergency Manager is admittedly using the threat of bankruptcy to force vested pensioners and employees to accede to his attempts to diminish and impair their accrued benefits **now.** Thus the harm to Plaintiffs is both imminent and actual.

Under MCR 2.605(D), this Court can and should order a speedy hearing and advance this case on the calendar. The need is urgent. *See,* Longhofer, 3 *Michigan Court Rules Practice* §2605.7 at 390. (Speedy hearing under 2.605(D) "will be done most frequently in actions involving clear-cut legal issues of public importance, with no factual issues to be tried"). *See also, Kuhn v Department of Treasury,* 384 Mich 378, 386-387; 183 NW2d 796 (1971) ("moving party is entitled to an expeditious disposition by the courts so that the right . . . guaranteed by the constitution is not jeopardized."); *State Farm v Savickas,* 1998 Mich App Lexis 984 (1998) (trial court accelerated trial and entered judgment, as authorized by MCR 2.605(D)).

In the alternative, Plaintiffs are entitled to a preliminary injunction. In deciding whether to issue a preliminary injunction, the court must weigh the following factors:

> Whether (1) the moving party made [a] required demonstration of irreparable harm, (2) the harm to the applicant absent such an injunction outweighs the harm it would cause to the adverse party, (3) the moving party showed that it is likely to prevail on the merits, and (4) there will be harm to the public interest if an injunction is not issued.

First, Plaintiffs will be irreparably harmed if the Governor authorizes a Chapter 9 filing in which the Emergency Manager has stated he intends to diminish or impair vested pension benefits in violation of Article IX Section 24. Because bankruptcy may foreclose further options or financial relief, this is not a case where money damages could remedy the constitutional impairment of Plaintiff's pension rights. Second, the Governor and Treasurer will not suffer any harm if they are enjoined from authorizing a Chapter 9 bankruptcy that would violate the Constitution's protection for Detroit's vested pensioners and employees. "[I]f the plaintiff shows

a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere its enjoinment." *Déjà vu of Nashville v Metro Gov't of Nashville and Davidson City*, 274 F3d 377, 400 (CA6, 2001). Third, for all the reasons stated above in support of a declaratory judgment, Plaintiffs are likely to succeed on the merits. Fourth, the public interest will be saved by upholding the Constitution's protection for thousands of long term City of Detroit retirees.

## CONCLUSION

Plaintiffs respectfully request that this Court grant a declaratory judgment and permanent injunction and/or preliminary injunction in their favor, as specified in the Verified Complaint.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By:_____
John R. Canzano  (P30417)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI  48034
248-354-9650
jcanzano@michworklaw.com

Date:  July 3, 2013

8

| Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>30th JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT | CASE NO.<br><br>13-734-CZ |
|---|---|---|

| Court address<br>313 W. Kalamazoo, Lansing MI 48901 | Court telephone no.<br>(517) 483-6500 |
|---|---|

| Plaintiff's name(s), address(es), and telephone no(s).<br>Gracie Webster and<br>Veronica Thomas | v | Defendant's name(s), address(es), and telephone no(s).<br>The State of Michigan,<br>Richard Snyder, Governor of the The State of Michigan, and<br>Andy Dillon, Treasurer of the State of Michigan |
|---|---|---|

| Plaintiff's attorney, bar no., address, and telephone no.<br>John R. Canzano (P30417)<br>McKnight, McClow, Canzano, Smith & Radtke, P.C.<br>400 Galleria Officentre, Suite 117<br>Southfield MI 48034<br>248-354-9650 | |
|---|---|

**SUMMONS**  NOTICE TO THE DEFENDANT:  In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons **to file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>JUL 0 3 2013 | This summons expires<br>OCT 0 2 2013 | Court clerk<br>ELIZABETH ROBERTSON |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.
This document must be sealed by the seal of the court.

**COMPLAINT**  *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in this Court _____ Court.
The action ☑ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no.<br>13-729-CZ | Judge<br>Aquilina | Bar no.<br>P37670 |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Detroit MI, Wayne County | Defendant(s) residence (include city, township, or village)<br>Lansing, MI, Ingham County |
|---|---|
| Place where action arose or business conducted<br>Ingham County | |

07/05/2013
_____
Date                                    Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01  (3/08)  SUMMONS AND COMPLAINT    MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

13-53846-swr  Doc 2272-3  Filed 12/20/13  Entered 12/20/13 13:56:17  Page 68 of 76      190

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
| :--- | :---: | :--- |
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:  (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:  (notarization required) |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

   together with _____

   List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
| :--- | :--- | :--- |
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
| :--- | :--- | :--- |
| | | |
| | | |
| | | |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Mileage fee | Total fee | Signature |
| :--- | :--- | :--- | :--- | :--- |
| $ | | $ | $ | Name (type or print) |
| | | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.

   Date

My commission expires: _____  Signature: _____

   Date                                    Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with *Motion and Briefing*

_____    *Support*

Attachments

on *July 5 2013*

   Day, date, time

on behalf of *Treasurer Andy Dillon*

*Melissa Te*

Signature

Approved, SCAO

| | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>30th JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT | CASE NO.<br>13-734-CZ |
|---|---|---|

Court address
313 W. Kalamazoo, Lansing MI 48901

Court telephone no.
(517) 483-6500

| Plaintiff's name(s), address(es), and telephone no(s). | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| Gracie Webster and<br>Veronica Thomas | v | The State of Michigan,<br>Richard Snyder, Governor of the The State of Michigan, and<br>Andy Dillon, Treasurer of the State of Michigan |

Plaintiff's attorney, bar no., address, and telephone no.
John R. Canzano (P30417)
McKnight, McClow, Canzano, Smith & Radtke, P.C.
400 Galleria Officentre, Suite 117
Southfield MI 48034
248-354-9650

---

**SUMMONS** NOTICE TO THE DEFENDANT: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). (MCR2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>JUL 0 3 2013 | This summons expires<br>OCT 0 2 2013 | Court clerk | ELIZABETH ROBERTSON |
|---|---|---|---|

*This summons is invalid unless served on or before its expiration date.
This document must be sealed by the seal of the court.

---

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in this Court _____ Court.
The action ☑ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| 13-729-CZ | Aquilina | P37670 |

---

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Detroit MI, Wayne County | Lansing, MI, Ingham County. |

Place where action arose or business conducted
Ingham County

07/05/2013
Date

Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (3/08) SUMMONS AND COMPLAINT MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:  (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:  (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,
together with _____
List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee<br>$ | Miles traveled | Mileage fee<br>$ | Total fee<br>$ |
|---|---|---|---|

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                                          Date

My commission expires: _____ Signature: _____
                          Date                        Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _Motion & Brief in Supp_
                                                                                        Attachments

on _July 5, 2013_
    Day, date, time

_Samantha Summers_                     on behalf of _State of Michigan_
Signature

| | Original - Court<br>1st copy - Defendant | | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|---|

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>30th JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT | CASE NO.<br><br>13-734-CZ |
|---|---|---|

| Court address | Court telephone no. |
|---|---|
| 313 W. Kalamazoo, Lansing MI 48901 | (517) 483-6500 |

| Plaintiff's name(s), address(es), and telephone no(s). | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| Gracie Webster and<br>Veronica Thomas | v | The State of Michigan,<br>Richard Snyder, Governor of the The State of Michigan, and<br>Andy Dillon, Treasurer of the State of Michigan |

| Plaintiff's attorney, bar no., address, and telephone no. |
|---|
| John R. Canzano (P30417)<br>McKnight, McClow, Canzano, Smith & Radtke, P.C.<br>400 Galleria Officentre, Suite 117<br>Southfield MI 48034<br>248-354-9650 |

**SUMMONS** NOTICE TO THE DEFENDANT: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>JUL 0 3 2013 | This summons expires<br>OCT 0 2 2013 | Court clerk<br>ELIZABETH ROBERTSON |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.

This document must be sealed by the seal of the court.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in this Court _____ Court.

The action ☑ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no.<br>13-729-CZ | Judge<br>Aquilina | Bar no.<br>P37670 |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Detroit MI, Wayne County | Defendant(s) residence (include city, township, or village)<br>Lansing, MI, Ingham County |
|---|---|
| Place where action arose or business conducted<br>Ingham County | |

07/05/2013
_____          _____
Date                                              Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (3/08) SUMMONS AND COMPLAINT MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

13-53846-swr Doc 7219-3 Filed 10/17/13 Entered 10/17/13 13:56:17 Page 72 of 76 194

**PROOF OF SERVICE**

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____
List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Mileage fee | Total fee |
|---|---|---|---|
| $ | | $ | $ |

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                                  Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with *Motion & Brief in Support*
Attachments

on *July 5, 2013*
Day, date, time

on behalf of *Governor Snyder*

*Samantha Simmons*
Signature

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

        Plaintiffs,

vs

        Case No. 13-734-CZ
        Hon.

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

        Defendants.

Dept of Attorney General

JUL 0 9 2013

State Of ___ Division
RECEIVED

---

## ORDER TO SHOW CAUSE

At a session of said Court held in Ingham County Circuit Court,
State of Michigan, this __5__ day of July, 2013.

PRESENT:_____
        Circuit Court Judge

The Court reviewed Plaintiffs' Verified Complaint, Motion for Declaratory Judgment and

Expedited Hearing Pursuant to MCR 2.605(D), or in the Alternative for Preliminary Injunction

and Brief in support thereof, and being otherwise fully advised in the premises.

**IT IS HEREBY ORDERED:**

    1.    Defendants shall file and serve their Answer and any other responses to Plaintiffs'

Motion on or before __July 15__, 2013.

    2.    Defendants shall show cause on __July 22__, 2013 at __9__ o'clock in the

__fore__noon why the declaratory judgment and permanent and/or preliminary injunction sought

by Plaintiffs should not be granted.

                          _____
                          Circuit Court Judge

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

Plaintiffs,

vs

Case No. 13-734-CZ
Hon.

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

Defendants.

Dept of Attorney General

JUL 09 2013

State Operations Division
RECEIVED

## ORDER TO SHOW CAUSE

At a session of said Court held in Ingham County Circuit Court,
State of Michigan, this __5__ day of July, 2013.

PRESENT:_____
Circuit Court Judge

The Court reviewed Plaintiffs' Verified Complaint, Motion for Declaratory Judgment and

Expedited Hearing Pursuant to MCR 2.605(D), or in the Alternative for Preliminary Injunction

and Brief in support thereof, and being otherwise fully advised in the premises.

**IT IS HEREBY ORDERED:**

1.  Defendants shall file and serve their Answer and any other responses to Plaintiffs'

Motion on or before __July 15__, 2013.

2.  Defendants shall show cause on __July 22__, 2013 at __9__ o'clock in the

__fore__noon why the declaratory judgment and permanent and/or preliminary injunction sought

by Plaintiffs should not be granted.

_____
Circuit Court Judge

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

        Plaintiffs,

vs

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

        Defendants.

Case No. 13-734-CZ
Hon.

_____/

## ORDER TO SHOW CAUSE

At a session of said Court held in Ingham County Circuit Court,
State of Michigan, this _5_ day of July, 2013.

      PRESENT:_____
                     Circuit Court Judge

    The Court reviewed Plaintiffs' Verified Complaint, Motion for Declaratory Judgment and

Expedited Hearing Pursuant to MCR 2.605(D), or in the Alternative for Preliminary Injunction

and Brief in support thereof, and being otherwise fully advised in the premises.

**IT IS HEREBY ORDERED:**

    1.    Defendants shall file and serve their Answer and any other responses to Plaintiffs'

Motion on or before _July 15_, 2013.

    2.    Defendants shall show cause on _July 22_, 2013 at _9_ o'clock in the

_fore_ noon why the declaratory judgment and permanent and/or preliminary injunction sought

by Plaintiffs should not be granted.

                                             _____
                                           Circuit Court Judge