## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-------------------------------------------------------x
                                              :
In re                                         :          Chapter 9
                                              :
CITY OF DETROIT, MICHIGAN,                    :          Case No. 13-53846
                                              :
                              Debtor.         :          Hon. Steven W. Rhodes
                                              :
                                              :
-------------------------------------------------------x

**OBJECTION TO INTERESTED PARTY DAVID SOLE'S EXPEDITED
MOTION, DUE TO CONFLICT OF INTEREST PURSUANT TO MRPC 1.7,
TO DISMISS DEBTOR CITY OF DETROIT'S MOTION TO APPROVE
FORBEARANCE AGREEMENT AND TO DISMISS AT LEAST IN PART
DEBTOR'S MOTION FOR A FINAL ORDER APPROVING POST-PETITION
FINANCING, GRANTING LIENS AND PROVIDING SUPERPRIORITY
CLAIM STATUS AND MODIFYING AUTOMATIC STAY**

The City of Detroit (the "City"), debtor in the above captioned case, objects

to interested party David Sole's expedited motion, due to a claimed conflict of

interest pursuant to MRPC 1.7, to dismiss Debtor City of Detroit's motion to

approve forbearance agreement and to dismiss at least in part Debtor's motion for a

final order approving post-petition financing, granting liens and providing

superpriority claim status and modifying automatic stay (Dkt. No. 1931).

Sole argues that the City's motion for assumption of the Forbearance and

Optional Termination Agreement and for approval pursuant to Rule 9019

("Assumption Motion," Dkt. No. 157) should be dismissed because the City did

not adequately investigate whether Bank of America Merrill Lynch ("BAML") and UBS AG engaged in wrongdoing related to the swap transactions that are the subject of the Forbearance and Optional Termination Agreement ("Forbearance Agreement"). (Mot. to Dismiss at 6.) Sole claims that the City relied on Jones Day to investigate BAML and UBS AG and that Jones Day could not do so because it represented those two entities in other unrelated matters. (*Id.*)

Sole's motion to dismiss should be denied. The City was informed that Jones Day represented BAML and that it does not represent UBS AG, although it does represent other entities related to UBS AG. The City was further informed that Jones Day received and documented a waiver to represent the City adverse to BAML in non-litigation matters. The City then consented to Jones Day's representation of the City in non-litigation matters adverse to BAML in the settlement negotiations that resulted in the Forbearance Agreement. And, prior to entering into the Forbearance Agreement, the City retained conflicts counsel at Pepper Hamilton LLP ("Pepper Hamilton") to assess and, if necessary, bring litigation claims against BAML and UBS AG related to the swap transactions. Thus, contrary to Sole's claims, the City was fully able to evaluate claims against BAML and UBS AG with the advice of counsel.

## BACKGROUND

1.  The City retained Jones Day on March 15, 2013, to represent it in restructuring matters. Among the many financial matters Jones Day began to evaluate were transactions in 2005, 2006, and 2009 that led to the issuance of the Pension Obligation Certificates of Participation ("COPs"), the several interest rate swap transactions relating to the Detroit General Retirement System Service Corporation and the Detroit Police and Fire Retirement System Service Corporation ("swap transactions"), and the restructuring and collateralization of the swaps in 2009. These transactions are very "complex and confusing." Eligibility Op. at 11 (Dkt. No. 1945).

2.  The swap counterparties under the swap transactions were UBS AG and SBS Financial Products Company, LLC ("SBS") (and later, BAML, which stepped in for SBS pursuant to a credit support arrangement). Jones Day does not have a client relationship with UBS AG (although Jones Day does have a client relationship with certain entities related to UBS AG in matters unrelated to the swap transactions and the engagement letters with those entities confirm that UBS AG is not a client of the firm) or SBS. Jones Day does have a client relationship with BAML unrelated to the swap transactions. Prior to its retention by the City,

Jones Day informed the City of its client relationships with BAML and entities related to UBS AG.[1]

3. Jones Day received and documented a waiver from BAML to represent the City adverse to BAML in negotiations relating to the swap transactions.[2] Specifically, the conflict waiver confirmed that Jones Day could represent the City in any negotiations or discussions relating to the swap transactions. The conflict waiver did not allow Jones Day to represent the City in any litigation, arbitration or other adversarial proceeding or claim against BAML. The conflict waiver nonetheless did extend to those matters Jones Day needed to investigate to determine the specifics of the COPs and swaps transactions and the strength of the City's negotiating position with the swap counterparties.

---

[1] Prior to the firm's retention, Jones Day disclosed to the City in its presentation that Jones Day represented BAML and UBS (although, as Jones Day subsequently explained to the City, it did not represent UBS AG, but only a few entities related to UBS AG). *See* Materials Prepared for the City of Detroit (Mar. 5, 2013) at Tab 9. (Exh. A).

[2] The waiver as described in this paragraph comes from the BAML waiver letter, which contains non-public information relating to another client and is therefore not attached to this response. *See City of Kalamazoo v. Mich. Disposal Serv. Corp.*, 125 F. Supp. 2d 219, 242 (W.D. Mich. 2000) (citation omitted). If the Court wants to review the waiver letter in its entirety, the City's counsel will of course provide it to the Court but requests that it be allowed to do so on an *in camera* basis.

4.        The City consented to Jones Day's representation of the City adverse to BAML in the settlement negotiations. (*See* Letter from Jones Day to K. Orr at 3 (Exh. B).)

5.        In the course of counseling the City on the settlement negotiations, Jones Day advised the City that the City needed to consider the option of litigation against BAML and UBS AG. Because Jones Day could not represent the City adverse to BAML on litigation matters, and to evaluate this option, the City retained a different law firm, Pepper Hamilton, to serve as conflicts counsel. (*See* Decl. of B. Hertzberg at ¶¶ 4 – 6 (Exh. C).) Pepper Hamilton independently evaluated the City's potential claims against BAML and UBS AG relating to the swap transactions and prepared to bring suit against them, if necessary. (*Id*. at ¶¶ 8 – 9, 12.) In doing so, Pepper Hamilton assessed whether BAML and UBS AG engaged in misconduct related to the swap transactions. (*Id*. at ¶¶ 8 – 10.)

6.        The City was in default of its obligations under the swaps and in danger of having them terminated by the counterparties. This, in turn, would have triggered an obligation to make a large termination payment to BAML and UBS AG and probably would have resulted in the "trapping" of the City's casino

revenues.[3]  Thus, throughout this period, Jones Day continued to negotiate on behalf of the City with the counterparties to secure their forbearance from exercising their rights and to determine their willingness to terminate the swaps at a substantial discount.  In those negotiations, Jones Day made it clear that the City had grounds to sue the counterparties and that the City had retained separate litigation counsel to evaluate and bring any such suit.  After a week of contentious, round the clock negotiations, the City entered into the Forbearance Agreement on July 15, 2013.

## ARGUMENT

7.          Sole argues that the City's Assumption Motion should be dismissed because, before entering the Forbearance Agreement, the City was unable to "uncover wrongdoing by Bank of America and UBS in connection with the swaps, that could then be raised as an equitable argument during bankruptcy fairness proceedings for a much lower payment to Bank of America and UBS on the Swaps."  (Mot. to Dismiss at 6.)  Sole contends that the City "relied on Jones Day . . . to conduct such an investigation into wrongdoing and even criminal conduct," but that Jones Day could not do so because it represented BAML and

---

[3] By June of 2013, it had become clear that the City was at imminent risk of running out of cash and was operating on a "razor's edge."  (*See, e.g.*, Eligibility Op. at 18, 106.)  On June 14, 2013, the City missed the scheduled interest payment on the COPs, which gave the counterparties an additional ground to terminate the swaps and trap the City's casino revenues.  (*Id.* at  13-14.)

UBS AG in other matters at the time. (*Id*.) Specifically, Sole argues that "relying on Jones Day to investigate its own clients for wrongdoing presents a conflict of interest in violation of MRPC 1.7." (*Id*.) Sole's claims are baseless.

8.     As an initial matter, Sole's motion to dismiss should be denied because the City retained conflicts counsel at Pepper Hamilton to explore and pursue any litigation against BAML and UBS AG, including claims related to the 2009 Collateral Agreement as well as the 2005 and 2006 swap agreements. (*See* Hertzberg Decl. at ¶¶ 6 – 9.) In fact, in June 2013, Pepper Hamilton prepared a complaint against BAML and UBS AG, among others, in the event that a settlement with the swap counterparties was not reached. (*Id*. at ¶ 12.) Pepper Hamilton continues to advise the City in this regard. (*Id*. at ¶ 6.) The City *is* able to pursue litigation against BAML and UBS AG related to the swap agreements through its counsel at Pepper Hamilton if that becomes necessary. (*Id*. at ¶ 12.)

9.     Sole's motion to dismiss also should be denied because the City consented to Jones Day's representation of the City in the settlement negotiations adverse to BAML. (As previously explained, Jones Day could represent the City adverse to UBS AG without any waiver.) In obtaining that consent, Jones Day disclosed that it represented BAML in matters unrelated to the City, and that it had received a waiver from BAML to represent the City in negotiations related to the

swap transactions. And, as explained above, the City retained Pepper Hamilton to advise the City on litigation matters adverse to BAML and UBS AG.

10. Michigan Rule of Professional Conduct 1.7 expressly provides that a lawyer may represent a client adverse to another client where "(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) each client consents after consultation." Thus, "even if a conflict of interest is found, there is no violation of the rule if the clients are informed and consent to the dual representation." *Edgin v. Cobb*, 2008 WL 2858741, at *5 (E.D. Mich. July 23, 2008). *See also Packaged Ice Antitrust Litig. v. Arctic Glacier, Inc.*, 2010 WL 5146384, at *3 (E.D. Mich. Dec. 13, 2010) (finding potential conflict in joint representation of co-defendants did not violate the rules of professional conduct where all clients consented); MRPC 1.7 cmt. 7 (concluding that lawyer could represent party in transactional matter and also represent opposing party in an unrelated matter with the "informed consent of each client"). A client may consent to a conflict of interest at the time of a conflicted representation or in advance of a conflicted representation. *See Rymal v. Baergen*, 262 Mich. App. 274, 285 (2004); *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1105-1110 (N.D. Cal. 2003). That is exactly what happened here: Jones Day needed waivers in order to represent the City adverse to BAML, and BAML and the City provided non-litigation waivers.

11.      For all of these reasons, Sole's motion to dismiss the City's Assumption Motion should be denied.  The City was able—and remains able if the Assumption Motion is denied— to pursue litigation against BAML and UBS AG related to the swap agreements through its conflicts counsel at Pepper Hamilton. In addition, the City and BAML consented to Jones Day's representation of the City adverse to BAML in matters other than litigation consistent with Rule 1.7 and understood that Jones Day could represent the City adverse to UBS AG.  Jones Day therefore has been and remains able to represent the City adverse to BAML and UBS AG in all matters other than litigation.

WHEREFORE, the City respectfully requests that this Court deny the interested party Sole's motion to dismiss.

Dated: December 23, 2013        Respectfully submitted,


 /s/ David G. Heiman
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

Thomas F. Cullen, Jr. (DC 224733)
Gregory M. Shumaker (DC 416537)
Geoffrey S. Stewart (DC 287979)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
tfcullen@jonesday.com
gshumaker@jonesday.com
gstewart@jonesday.com

Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
Telephone: (248) 359-7300
Facsimile: (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

ATTORNEYS FOR THE CITY OF DETROIT

**CERTIFICATE OF SERVICE**

I, David G. Heiman, hereby certify that the foregoing Objection to Interested Party David Sole's Expedited Motion, Due to a Claimed Conflict of Interest Pursuant to MRPC 1.7, to Dismiss Debtor City of Detroit's Motion to Approve Forbearance Agreement and to Dismiss at least in part Debtor's Motion for a Final Order Approving Post-Petition Financing, Granting Liens and Providing Superpriority Claim Status and Modifying Automatic Stay was filed and served via the Court's electronic case filing and noticing system on this 23rd day of December, 2013.

/s/ David G. Heiman

**EXHIBIT A**



Materials Prepared for:

# City of Detroit



March 5, 2013



The contents of this document are proprietary and should not be duplicated or shared without express permission from Jones Day.

This proposal includes data that shall not be disclosed outside the government and shall not be duplicated, used, or disclosed – in whole or in part – for any purpose other than to evaluate this proposal. If, however, a contract is awarded to this offeror as a result of – or in connection with – the submission of this data, the government shall have the right to duplicate, use, or disclose the data to the extent provided in the resulting contract. This restriction does not limit the government's right to use information contained in this data if it is obtained from another source without restriction. The data subject to this restriction are contained in Tab 10 hereto.

Certain sections of this proposal contain trade secret or confidential business or financial information exempt from disclosure under the Michigan Freedom of Information Act ("MI FOIA"), Mich. Comp. Laws § 15.231 et seq., and should be treated as confidential.

Materials Prepared for:

**City of Detroit**

March 5, 2013

Contact Information:

**Corinne Ball**
Partner
Tel: +1.212.326.7844
cball@jonesday.com

**Bruce Bennett**
Partner
Tel:+1.213.243.2382
bbennett@jonesday.com

**Heather Lennox**
Partner
Tel: +1.216.586.7111 – Cleveland
Tel: +1.212.326.3837 – New York
hlennox@jonesday.com

Tab 1    Executive Summary

Tab 2    The Firm – Why Jones Day is the Right Choice for the City of Detroit

Tab 3    Proposed Staffing – A Seasoned Team

Tab 4    Significant Experience in Michigan

Tab 5    Significant Experience in Large and Complex Restructurings

Tab 6    Significant Municipal Finance, Infrastructure, and Public Sector Experience

Tab 7    Significant Labor, Employee Benefits, and Public Pension Experience

Tab 8    Significant Experience and Expertise in Other Relevant Areas

Tab 9    Conflicts Review and Waivers

Tab 10    Proposed Fee Structure

Tab 11    The Chrysler Example

Tab 12    The Orange County Chapter 9 Case: A Success Story

Tab 13    Selected Lawyer Profiles

JONES DAY

# Tab 1 — Executive Summary

Jones Day thanks the City of Detroit for the opportunity to demonstrate our credentials to assist in the City's restructuring efforts. We believe that Jones Day is uniquely qualified to provide the broad range of legal services required to complete a successful long-term restructuring of the City. These materials summarize our qualifications, as requested in your letter of February 27, 2013. We would be happy to meet with you, if requested, to have a frank and open discussion of the issues facing the City of Detroit and the possible paths forward. We hope that we will have an opportunity to work with you to help make Detroit a strong, safe, financially-sound, and vibrant 21st century city.

~ ~ ~

**A Midwestern Firm with Global Reach.** Jones Day is a large global law firm of over 2,400 lawyers in 37 cities on five continents. Despite its global breadth and capabilities that stretch to business and financial centers around the world, Jones Day is deeply rooted in its Midwestern heritage as a Cleveland firm formed in the late 1800s. The Firm continues to have a strong presence in the Midwest and a core of Midwestern clients. The Firm's foundational values are Midwestern, focused on hard work, client service, integrity and ethics, and a commitment to public service.

**Ties to Michigan.** The Firm has strong ties to the State of Michigan and companies in the state. Some of Jones Day's most ground-breaking work has involved helping Michigan companies, including General Motors and Chrysler, address their most important and difficult challenges. In fact, Fortune 500 companies and other large institutions repeatedly turn to Jones Day to address their most important and complex legal challenges. During the past 12 months, Jones Day has advised no fewer than 66 clients based in Michigan, including by serving as primary outside pension and retiree health counsel to General Motors. A total of 116 Jones Day lawyers have one or more degrees from an institution of higher learning in Michigan, and dozens more hail from Michigan. A total of 25 Jones Day lawyers have clerked for judges on the Sixth Circuit Court of Appeals.

**The One Firm Benefit.** Jones Day operates as a true partnership and treats all clients as clients of the Firm rather than a particular lawyer. This allows the Firm to bring to bear the best resources for each client from whatever legal discipline and from whatever location, all focused on serving the client's needs. This is the One Firm benefit. This interdisciplinary, collaborative approach to providing legal services has won Jones Day the highest accolades for legal services and client service time and again. Jones Day works with clients – and other parties – to achieve practical and creative solutions to complex legal problems.

**Broad, Relevant Experience.** Jones Day has relevant experience in all of the major disciplines needed to help the City of Detroit formulate and implement a successful restructuring strategy, including Restructuring/Bankruptcy, Employee Benefits, Labor, Municipal Finance, Public Pensions, Public Projects and Infrastructure, and Litigation. Jones Day has experience and expertise in numerous other areas that could be relevant to the City of Detroit, including: state and federal tax, environmental, internal investigations, government contracts, and open meeting and freedom of information act issues (among others).

**Top Restructuring Practice with Large-Debtor and Chapter 9 Experience.** Jones Day is widely-recognized as having one of the top restructuring practices in the world. In fact, just last month Jones Day was named a "Bankruptcy Group of the Year" by the publication *Law 360*. Jones Day has represented a variety of parties in the largest restructuring matters in history, but has been noted in particular for its representations of debtors in both in-court and out-of-court restructurings. Among many other chapter 11 matters, Jones Day was lead counsel in the historic Chrysler bankruptcy, and was the architect of the successful strategy employed in that case. *See* Tab 11. Jones Day also developed and implemented a comprehensive union, pension, and OPEB strategy through a groundbreaking global settlement in the Dana Corporation bankruptcy. *See* Tab 5. Jones Day lawyers also have significant chapter 9 experience, notably by leading Orange County through an efficient and successful bankruptcy and back to investment grade 18 months later. *See* Tab 12. In addition, Jones Day serves as derivatives counsel in the Lehman Brothers bankruptcy case, and has pioneered legal strategies to address the restructuring of complex financial instruments.

**Strong Practices in All Other Key Areas.** Jones Day's other key practices are top notch and are well prepared and highly qualified to assist the City of Detroit. For example:

- Our **labor** lawyers are among the country's best and have worked in numerous restructuring and bankruptcy matters, including most recently Hostess Brands. They have negotiated hundreds of union contracts across the country in both the private and public sectors, including in the state of Michigan. Jones Day has negotiated labor contracts for both General Motors and Chrysler. Our lawyers have negotiated concessionary contracts for the Minneapolis Star Tribune in the face of declining circulation. Our Firm also served as the principal outside labor counsel to the Chicago Board of Education in connection with the 2012 teachers strike, achieving a settlement only one day after we filed a motion for a temporary restraining order against the union, seeking to enjoin the strike as illegal under the Illinois Educational Labor Relations Act. Jones Day's lawyers are routinely called upon to address union issues central to a client's success, whether through bargaining or litigation. Jones Day's history of successfully attaining concessionary contracts, and its success in litigation, makes it an exceptional negotiating partner and, if necessary, a formidable adversary across any union negotiating table.

- Jones Day's **benefits** practice has been involved in dozens of chapter 11 cases and have been at the forefront of developing solutions to union benefit costs, such as the ground-breaking VEBA trust structure to resolve OPEB liabilities that Jones Day helped develop for General Motors and Goodyear Tire and Rubber, and the pension liability transfer transactions Jones Day pioneered in 2012 for General Motors and Verizon Communications. In addition, Jones Day lawyers are nationally recognized in the practice of benefits litigation, and we are particularly experienced at litigating OPEB liability issues within the courts of the Sixth Circuit. Unlike many other firms, Jones Day also has substantial experience in representing and problem solving for **public pensions and health benefits plans**. The Firm's benefits lawyers are well prepared to develop and aggressively pursue a strategy to address the City's pension and OPEB underfunding issues. For example, Jones Day recently worked with Los Angeles County, its unions and the Los Angeles County Employees Retirement Association, the administrator of its pension plan and retiree health program, to develop a unique trust fund structure for the County's retiree health obligations.

- Jones Day has substantial **public finance** experience, including in connection with municipal restructurings and chapter 9 cases. Jones Day knows what it takes to obtain financing in the public bond market, how monoline insurance products impact this market and how public debtholders likely

will approach restructuring talks. Beyond municipal finance, Jones Day has extensive experience in **public projects and infrastructure** matters, including privatization transactions. Jones Day is experienced in the divestiture of parking lots, water systems, airports, and other infrastructure assets. In addition, Jones Day has represented **public sector** clients throughout the country in connection with a wide-array of other legal issues, including appellate issues, employment and wage issues, general litigation, intellectual property, tax, and workers' compensation matters.

▪ Jones Day has been recognized for having one of the top **litigation** departments in the world due to its breadth of knowledge and depth of resources, numbering 1,100 skilled litigators firm-wide. Jones Day litigators are highly experienced in bankruptcy, restructuring, and other distressed situations, and have litigated issues relating to public debt, monoline insurance, swaps, and other derivatives. For example, Jones Day's litigation experience on behalf of Lehman Brothers has put it on the cutting edge in adjudicating issues relating to financial products of all kinds in a bankruptcy setting. Jones Day's **corporate criminal investigations** practice has extensive experience in conducting internal investigations (including in municipal and county governments) and defending individuals and entities with respect to claims of all kinds. Jones Day also has substantial **appellate** experience at all levels, and has 28 former U.S. Supreme Court clerks among its lawyers.

~ ~ ~

**Collaboration.** Jones Day is knowledgeable about state and local laws applicable to the restructuring efforts of the City of Detroit. Jones Day regularly collaborates with other firms with complementary skill sets and is prepared to collaborate with the City's other legal advisors and/or other local firms in Michigan with the skills, expertise, background and knowledge to achieve prompt, efficient and practical solutions to the City's problems.

**Passion and Commitment.** Beyond the experiences and the professional skills, Jones Day has a deep passion for this project. Many of the Jones Day lawyers who would work on this project are from Michigan, were educated in Michigan or have professional ties to the state. Jones Day's team has a deep-rooted commitment to work collaboratively with the City and its other advisors and stakeholders to find solutions to Detroit's most difficult problems. Jones Day views this as an engagement of the utmost importance and is prepared to devote the full resources of the Firm, as they may be needed, to achieve a successful outcome. In fact, Jones Day already has spent over 1,000 uncompensated hours studying the Detroit situation, and serving as a sounding board to other professionals involved in this matter, over the past 18 months.

**Vision of a New Detroit.** Although we acknowledge the challenges ahead, Jones Day embraces the opportunity to help bring a new vision of Detroit to reality: a revitalized city that can serve as an economic driver for the state and the region, and a model for other troubled cities around the country.

JONES DAY

# Tab 2 — The Firm:  Why Jones Day is the Right Choice for the City of Detroit

## Midwestern Roots / Midwestern Values

Founded in Cleveland, Ohio in 1893, Jones Day has grown from a small Midwestern firm to a global institution that is poised to serve the needs of clients at home and abroad.  In the face of the globalization of the Firm and many of its clients, Jones Day continues to take pride in its Midwestern roots, which underpin the Firm's unique culture and value system.  Retired Managing Partner Richard W. Pogue, whose interview is available on the Jones Day web site (http://www.jonesday.com/cleveland), characterizes the Firm's ties to the Midwest this way:

> "The Firm grew up in Cleveland…(w)e work hard, we're efficient, we're true to our clients…(we) always act ethically proper.  It is a combination of those solid Midwestern values that are hard to define, but people know what you are talking about."

From its start in the Midwest in the nineteenth century, Jones Day now operates out of locations in the most important centers of business and finance in the Unites States and throughout the world.  Jones Day has more than 2,400 lawyers in 37 offices around the world (including over 400 lawyers in Europe



**EUROPE**
425+ lawyers

| Brussels | London | Moscow |
| Düsseldorf | Madrid | Munich |
| Frankfurt | Milan | Paris |

**UNITED STATES**
1,700+ lawyers

| Atlanta | Los Angeles |
| Boston | New York |
| Chicago | Pittsburgh |
| Cleveland | San Diego |
| Columbus | San Francisco |
| Dallas | Silicon Valley |
| Houston | Washington |
| Irvine | |

**LATIN AMERICA**
60+ lawyers

Mexico City
São Paulo

**MIDDLE EAST**
15+ lawyers

Alkhobar
Dubai
Jeddah
Riyadh

**ASIA/PACIFIC**
200+ lawyers

Beijing
Hong Kong
Shanghai
Singapore
Sydney
Taipei
Tokyo

and 200 in Asia). Jones Day has announced that in 2013 it will open an office in Amsterdam.

This global reach provides clients with extraordinary resources and legal expertise in all major disciplines in jurisdictions around the world. Nevertheless, Jones Day has always remained centered by Midwestern values and work ethic and its "strength up the middle" – *i.e.*, the continuing strength of the Firm and its relationships in communities throughout the middle of America (including nearly 650 lawyers in Atlanta, Cleveland, Columbus, Chicago, and Pittsburgh and a long list of Midwest-based clients).

Jones Day also has leading practices in California, Texas, and the Northeast, including a substantial and highly regarded full service office of nearly 300 lawyers in the financial center of New York. In addition, Jones Day has a substantial presence in Washington, DC, with more than 200 lawyers and particular expertise in assisting in federal tax, regulatory, and appellate matters.

## Representative Clients

Just some of the clients who have trusted Jones Day are shown below. We have been honored to represent most of these industry leaders for more than 10 years. We count approximately half of the *Fortune* 500, the *Fortune* Global 500 and the *FT* Global 500 among our clients. The world's largest enterprises regularly call on Jones Day to address their most difficult and important legal issues.



# Representative Clients (*Fortune* 500 and Global 500 companies in bold, Michigan-based companies are highlighted)

**Abbott Laboratories**
Abercrombie & Fitch Co.
Alcatel-Lucent
**Ameren Corporation**
American Airlines
American Greetings Corporation
Amway Corporation
AZ Automotive Corporation
**Apple, Inc.**
**Bank of America Corporation**
**Bayer AG**
Beiqi Foton Motor Co., Ltd.
Blue Cross Blue Shield of Michigan
**BMW AG**
A Public University in the State of Michigan
Bombardier, Inc.
Borders Group, Inc.
**Bridgestone Corporation**
The British Land Company PLC
**Cardinal Health, Inc.**
**CBS Corporation**
**Celgene Corporation**
**CenterPoint Energy, Inc.**
Chem-Trend, Inc.
**Chevron Corporation**
Chrysler Group
**Citigroup Inc.**
**ConAgra Foods, Inc.**
Cooper Tire & Rubber Company
Cumulus Media Inc.
**CVS Caremark Corporation**
DDR Corp.
**Dell Inc.**
**Deutsche Bank AG**
Diebold, Incorporated
**DIRECTV**
The Dow Chemical Company
Dow Corning Corporation
DTE Energy Company
Dun & Bradstreet Corp.
**Eastman Chemical Company**
Eastman Kodak Company

Edison Mission Energy
Edward C. Levy Company
**Exelon Corporation**
Exide Technologies
Experian
**ExxonMobil Corporation**
Federal-Mogul Corporation
**FirstEnergy Corp.**
Frito-Lay, Inc.
GenCorp Inc.
**General Electric Company**
General Motors LLC
Georgia Gulf Corporation
**The Goldman Sachs Group**
Hanson PLC
**HCA Inc.**
**Honda Motor Co.**
**Husky Energy Inc.**
**International Business Machines**
International Automotive Components Group North America
Jefferies & Company, Inc.
Jones Lang LaSalle Incorporated
**JPMorgan Chase**
**KeyCorp**
Lehman Brothers Holdings Inc.
Lennar Corporation
**Liberty Media Group**
The Lincoln Electric Company
Living Essentials
**Macy's**
Materion Corporation
Metaldyne Corporation
**Mitsubishi Heavy Industries**
**Morgan Stanley**
NACCO Industries, Inc.
**Nationwide Insurance Companies**
National Heritage Academies
Nikon Corporation
OGE Energy Corp.
**Omnicom Group**
**Parker Hannifin Corporation**
Penske Automotive Group, Inc.

**PepsiCo, Inc.**
**Pfizer Inc.**
Potash Corporation of Saskatchewan
Primus Capital Fund
**The Procter & Gamble Company**
Purdue Pharma L.P.
Research In Motion Limited
**Reynolds American Inc.**
The Riverside Company
**The Royal Bank of Scotland**
**SanDisk Corporation**
**Sanofi SA**
SAP AG
SCANA Corporation
**The Sherwin-Williams Company**
Simon Property Group, Inc.
**The Southern Company**
**Sprint Nextel Corporation**
Standard Bank Plc
Stefanini TechTeam Global
SunPower Corporation
**Tenet Healthcare Corporation**
**Texas Instruments Incorporated**
**Textron Inc.**
**The Timken Company**
**TNK-BP**
**TOTAL S.A.**
**Toyota Motor Corporation**
Trammell Crow Residential
Trinity Health
TRW Automotive Holdings Corp.
**United Air Lines, Inc.**
**URS Corporation**
USG Corporation
**Verizon Communications Inc.**
Verizon Wireless
The Washington Post Company
**Wells Fargo & Company**
WL Ross & Co.
**Xcel Energy, Inc.**
Yamaha Motor Co.
Yazaki North America, Inc.

JONES DAY

## A Full Service Firm

Legal matters rarely touch on just one aspect of law, and client needs today are often not the same needs tomorrow. Our strength is the ability to provide clients true depth, focus, and experience in a specific practice or industry; the capacity to leverage our strengths across practices; and integrated teams to handle complex matters that may involve multiple matters, jurisdictions, or borders. Practice areas include:

- Antitrust & Competition Law
- Banking & Finance
- Business Restructuring & Reorganization
- Business and Tort Litigation (USA)
- Capital Markets
- Corporate Criminal Investigations
- Employee Benefits & Executive Compensation
- Energy
- Environmental, Health & Safety
- Financial Institutions Litigation & Regulation
- Global Disputes

- Global Infrastructure
- Government Regulation
- Health Care
- Insurance Recovery
- Intellectual Property
- Issues & Appeals
- Labor & Employment
- Mergers & Acquisitions
- Private Equity
- Real Estate
- Securities Litigation & SEC Enforcement
- Tax

As described in Tab 5, Jones Day's **Business Restructuring and Reorganization** Practice is among the most experienced in the world in tackling large and complex restructuring matters both in-court and out-of-court. Large debtor engagements include Chrysler, Lehman Brothers, Hostess Brands, Dana Corporation, Metaldyne, LTV Steel, Montgomery Ward, and Federated Department Stores. In addition to this wealth of experience across a wide range of industries, Jones Day lawyers also have unique experiences in chapter 9 municipal bankruptcy matters. Jones Day has represented bondholders and bond insurers in large chapter 9 matters, such as the Jefferson County, Alabama case. Of particular relevance is the groundbreaking work of Jones Day lawyers on behalf of Orange County, California, as the debtor in the largest and perhaps most successful chapter 9 case in history. Through careful planning, the Orange County bankruptcy was completed efficiently and effectively, allowing the county to return to economic stability and investment grade status. *See* Tab 12.

Any sizeable restructuring matter requires a cross disciplinary team of experts. Jones Day's other practices are skilled in addressing issues in the context of a restructuring or bankruptcy. Most relevant here, as described at Tabs 6 and 7, Jones Day has substantial expertise in **municipal finance**, **public projects and infrastructure**, **labor**, **employee benefits** and **public pensions**, and **litigation and internal investigations**.

## Unparalleled Client Service

Our commitment to client service has repeatedly earned the Firm first-place ratings from The BTI Consulting Group, an organization that monitors client satisfaction with legal services.

The annual ranking by The BTI Consulting Group is based on independent, individual interviews with more than 300 general counsel, who rated the performance of their law firms in multiple categories driving client service excellence:

- Anticipates the Client's Needs
- Breadth of Services
- Brings Together National Resources
- Client Focus
- Commitment to Help
- Handles Problems

- Helps Advise on Business Issues
- Innovative Approach
- Keeps Clients Informed
- Legal Skills
- Quality Products

### The Only Firm to Earn Top Ratings Year After Year

**"Jones Day, a member of the BTI Client Service Hall of Fame, has earned a spot on The BTI Client Service 30 for 12 straight years. Jones Day earned Best of the Best honors for 11 different activities driving superior client relationships including Client Focus and Commitment to Help."**



## Longstanding Ties to Michigan Companies Across a Range of Legal Disciplines

Our relationships with Michigan companies have long been important to Jones Day. In many ways, it is safe to say that our early representations of General Motors were groundbreaking for the Firm, as they brought us our first single-product multijurisdictional litigation, which today is a premier area of expertise for the Firm. Although our earliest representations were litigation-oriented – including our representations of General Motors in the Chevy Corvair, "Chevymobile" Oldsmobile engine switching, and Cadillac V-8-6-4 cases – our Michigan practice soon advanced into other disciplines. In the 1980s, we obtained antitrust clearance for the unprecedented international joint venture between General Motors and Toyota.

More recently, we oversaw Chrysler's restructuring and historic battle up to the Supreme Court, which resulted in its successful emergence from bankruptcy (*see* Tab 11 for a case study of the Chrysler representation). We have been at the forefront of ground-breaking employee benefits matters for General Motors, including the creation of a retiree health VEBA trust and, most recently, assisting General Motors in structuring a transaction to eliminate approximately $26 billion in balance sheet liability through the largest single-employer plan termination and pension risk transfer in U.S. history.

> ### Ties to Michigan
>
> - Over 100 recent clients based in Michigan, including General Motors and Chrysler.
>
> - 116 lawyers have degrees from Michigan universities and colleges; dozens of others are from Michigan.
>
> - 52 lawyers clerked in courts in the 6th Circuit, including 25 in the Court of Appeals.
>
> - Long record of *pro bono* activity, sponsorship and involvement with Michigan's schools.

Although representations in the automotive industry have been extremely high profile, we also represent Michigan-based clients in industries spanning manufacturing, health insurance, health care, education, biotech, insurance, and chemicals and in legal disciplines ranging from labor to intellectual property to municipal finance, tax, and beyond. In the past five years, Jones Day has counted more than 100 Michigan-based companies among our clients, and has been involved in numerous other matters in Michigan courts.

This is not surprising, considering that a significant number of our lawyers are Michigan natives or graduates of Michigan's institutions of higher education, such as Calvin College, Central Michigan University, Kalamazoo College, Michigan State University, the University of Detroit Mercy, the University of Michigan, and Wayne State University. A total of 116 Jones Day lawyers received one or more degrees from Michigan institutions and dozens more were born and/or raised in Michigan. A total of 25 Jones Day lawyers have clerked for the Sixth Circuit Court of Appeals, and 27 others have clerked for district courts within the Sixth Circuit (Kentucky, Michigan, Ohio, and Tennessee).

In 2011, Dick Pogue, Senior Advisor and former Managing Partner (1984–1992), was chosen as one of three inaugural recipients of the University of Michigan Law School's new Distinguished Alumni Award. In addition, Cleveland partner John Biernacki was presented with the Adjunct Professor of the Year Award at the University of Detroit Mercy School of Law, where John co-teaches an Intellectual Property course.

Jones Day lawyers have a long history of giving back to Michigan. Jones Day lawyers, working together with Professor Doug Laycock of the University of Michigan Law School, prepared an *amicus* brief on behalf of various nonprofit organizations urging the United States Supreme Court to review the Fifth Circuit's recent decision in *Palmer v. Waxahachie Independent School District*. For the past several years,

Jones Day has served as a sponsor of the University of Michigan's Juan Luis Tienda Scholarship Banquet. In addition, Jones Day sponsored the 34th Annual Alden J "Butch" Carpenter Scholarship Banquet at the University of Michigan Law School.

*See* Tab 4 for a representative list of engagements in Michigan.

## Deep Experience and the One Firm Benefit

A decided advantage of Jones Day's scope and size is our ability to accumulate experience. Whether it is in a certain location, be it Michigan or Milan, a certain area of the law, or a certain industry, Jones Day lawyers have been in court or negotiated across the table over and over again. Whatever experience our clients need, it is likely that we have it – and that we have completed relevant matters not once, but numerous times in numerous places. This is particularly important in a representation such as the restructuring of the City of Detroit that inevitably will involve numerous legal disciplines, as well as currently unanticipated legal needs. It is Jones Day's deep experience across multiple disciplines that contributes to our undisputed record of excellence, earning us such distinctions as the following (among many others):

**LEGAL 500**
- For the fifth year in a row, The Legal 500 United States (2012) gave Jones Day its top recommendation for labor and employment litigation. The Firm was also recommended in workplace and employment counseling, ERISA litigation, and labor and management relations.

**U.S. NEWS & WORLD REPORT AND BEST LAWYERS®**
- Tier one national rankings in multiple practices, including Bankruptcy/Restructuring, Bankruptcy Litigation, ERISA/Benefits Litigation, Labor Law, Labor Litigation, Mergers & Acquisitions, and Public Finance (2013).

**THE AMERICAN LAWYER**
- Jones Day was named the nation's best Labor & Employment practice as part of the magazine's prestigious Litigation Department of the Year competition (2008).

- Litigation Department of the Year (Winner 2002; Finalist 2004; Honorable Mentions: 2006, 2010, 2012).

**CHAMBERS USA**
- 17 practices ranked nationally, with top-tier recognition for several, including Bankruptcy/Restructuring and Labor & Employment (2012).

**THOMSON REUTERS & BLOOMBERG**
- Jones Day has been listed #1 for the number of M&A Deals every quarter since 2000.

**CORPORATE BOARD MEMBER/FTI CONSULTING**
- Jones Day has ranked in the top 10 every year since 2001.

**LAW360**
- Business Restructuring & Reorganization Practice Named as Bankruptcy Group of the Year (January 2013).

- Labor and Employment Practice has been named a 2010 "Employment Group of the Year" (January 2011).

**THE BOND BUYER**
- Public Finance Deal of the Year (2012).

**BTI CONSULTING**
- Top Client-Recommended Firm for Litigation (2013); recognized as a "Litigation Powerhouse" based on interviews with Fortune 100 companies (2013).

**FT US INNOVATIVE LAWYERS**
- Ranked Among the Top 25 Most Innovative Law Firms in the United States (2012).

**TURNAROUND MANAGEMENT ASSOCIATION**
- Business Restructuring & Reorganization Practice recognized for "Turnaround of the Year: Large Company Award" (2012).

**HUMAN RESOURCE EXECUTIVE MAGAZINE**
- Six Jones Day lawyers named among the top 100 in "The Nation's Most Powerful Employment Attorneys," two were named among the 20 most powerful employment lawyers for labor law and one selected as one of the top 40 Up-and-Comers. (2012).

JONES DAY

In every engagement, Jones Day's One Firm culture means our clients benefit from the efforts of interdisciplinary teams who – regardless of location – are aligned with client objectives. Our global reach, management structure, and integrated global technologies have been purposefully designed to permit us to respond efficiently with the most effective team, strategy, and experience to serve our clients best.

The Firm acts as a single entity on behalf of our clients. Our award-winning client service is the result of a dedication to delivering the best of the Firm to every client engagement. We are One Firm Worldwide.

## A Solution-Oriented Approach

We know how to develop effective strategies, staff and manage transactions efficiently, handle complex and demanding matters, and organize our resources for the benefit of our clients. In particular, for the City of Detroit, our significant experience in bringing multiple groups with competing interests together to achieve consensual restructurings – either in-court or out-of-court – will be invaluable.

We have consistently achieved positive results for our clients in multi-party, multi-issue situations over the past several decades. We are adept at facilitating consensus to achieve the City's aims. This approach is anchored by a collaborative, team-based approach to engagements. Jones Day's lawyers work seamlessly together across disciplines and offices. Jones Day is committed to working with clients to understand and pursue their goals. Jones Day has collaborated successfully with other counsel and advisors, including the legal and financial advisors already hired by the City. And Jones Day has a reputation and track record of working with opposing counsel to craft practical solutions to complex and difficult problems.

| The *One Firm* Benefit |
| --- |
| ▪ All clients are Firm clients. |
| ▪ Cross-practice teams aligned with client needs. |
| ▪ Singular commitment to client objectives. |
| ▪ Consistent delivery of the best resources, everywhere. |
| ▪ Efficient, effective delivery of legal services. |
| ▪ Innovative, cost-effective business solutions. |

If, despite the parties' best efforts, consensus is not achievable, Jones Day will be prepared to pursue other alternatives to obtain the City's objectives. From the outset, Jones Day will advise the City of its strategic alternatives and will assist the City in implementing those alternatives as expediently and efficiently as possible. The overarching focus of the Firm always will be on achieving the City's objectives in the fashion that is most advantageous for it, consistent with the law. If solutions cannot be achieved consensually, Jones Day will be prepared to take tough positions in negotiations or in court, if necessary. Jones Day has a history of developing creative and cutting-edge solutions to achieve client goals.

This solution-oriented approach is directly supported by Jones Day's One Firm philosophy. As a true legal partnership (and not a quasi-corporate entity), collaboration is built into the fabric of the Firm and its culture. All clients are Firm clients (not clients of particular lawyers), and the Firm acts as a single enterprise on behalf of our clients. This approach allows us to create multi-office and multidisciplinary teams specifically designed to address the demands of any client matter.

With a bias toward long-term and multifaceted client relationships, lessons learned and experience gained are quickly communicated across the Firm. We see ourselves as a global legal institution based on a set of principles to which a large number of men and women can commit – principles that have a social purpose and permanence, that transcend individual interests.

JONES DAY

## A Civic-Minded Firm

Jones Day and its lawyers are committed to giving back to their communities and serving the public interest. Jones Day lawyers have taken leadership positions in many of the country's top civic and nonprofit organizations. By way of example, and among literally hundreds of other civic positions, Jones Day lawyers serve as a trustee of the Cleveland Clinic, a director of Cabrini Green Legal Aid, a board member of Make-A-Wish Foundation, and a member of the United Way's Women's Leadership Council. Moreover, teams of lawyers across offices and practice areas regularly engage in community service projects such as cleaning parks and camps for kids, fixing up schools, and collecting and bagging groceries for food banks.

Jones Day lawyers also are committed to community service by providing a wide array of *pro bono* legal services. The Firm's lawyers represent individuals and nonprofit organizations in both civil and criminal litigation before a variety of administrative agencies, state and federal courts in Michigan and throughout the United States, the federal courts of appeal, and the U.S. Supreme Court. Across the Firm, our lawyers participate in various local clinics that offer free legal advice to the poor on such matters as landlord/tenant law, public benefits, immigration, probate, family law, and consumer fraud. Our lawyers assist nonprofit organizations with corporate-related issues such as incorporation and tax advice. In addition, we have represented defendants at all levels of the criminal justice system, from wrongfully charged individuals facing their first trials to death row inmates seeking new ones. For example, in 2012, our lawyers secured a writ of *habeas corpus* on behalf of Michael Brown, an indigent man imprisoned in Detroit.

Jones Day has been recognized for its *pro bono* services with multiple awards, including:

| Office | Award |
|---|---|
| New York | Jones Day associates Lauren Buonome, Michael Dailey and Jordan Schneider were awarded the 2013 Commitment to Justice Award by inMotion, an organization that provides free legal services to low-income women in New York City, particularly women who have suffered domestic violence or other abuse. (February 2013) |
| Dallas | Silver Award for Pro Bono Services from The Dallas Volunteer Attorney Program, a joint program of the Dallas Bar Association and Legal Aid of NorthWest Texas, for the Silver Award for Pro Bono Services. (November 2012) |
| Atlanta | Jones Day associate earned state and national recognition for her work in the Truancy Intervention Project ("TIP"). TIP was created by the Fulton County (Georgia) Juvenile Court and the Atlanta Bar Association to pair volunteer advocates with children who are reported as truants. (November 2012) |
| Washington | Carmen McLean, a partner in Jones Day's Washington Office, was named Pro Bono Lawyer of the Year by the District of Columbia Bar. The award recognizes her work with Washington's Children's Law Center (CLC) securing safe and permanent homes for the District's most vulnerable children. (May 2012) |

| Office | Award |
|--------|-------|
| Firmwide | Chosen from more than 50 elite law firms, Jones Day was one of five firms to receive a Safe Haven Award from Immigration Equality for going "above and beyond to provide top-notch legal counsel to people fleeing for their lives." (May 2012) |
| Dallas | The United Way of Metropolitan Dallas recognized Jones Day for its accomplishments in the United Way Workplace Campaign at their annual Heroes of Hope event. (March 2012) |
| Firmwide | Jones Day received The National Legal Aid & Defender Association's Beacon of Justice Award honoring law firms that have innovative public-private partnerships that protect equal justice for all through appellate litigation. (December 2011) |
| New York | Received the Pro Bono Publico Award for "outstanding service to The Legal Aid Society and its clients." (November 2011) |
| Chicago | The Illinois Legal Aid Online named a Jones Day associate "Pro Bono Volunteer of the Month," the majority of the matters have focused on representing immigrants and refugees seeking asylum in the U.S. (February 2011) |
| Cleveland | David Kutik, a litigation partner in the Jones Day's Cleveland office, was recognized by the Legal Aid Society of Cleveland as he concluded five years of service on its Board of Directors. (November 2010) |
| Chicago | Received the Award for Excellence in Pro Bono Service, presented by the Northern District of Illinois and the Federal Bar Association. (May 2010) |
| Columbus | Columbus partner, Chad Readler, received the Ohio State Bar Foundation Community Service Award for Attorneys 40 and Under for his outstanding service to the community. The award recognizes attorneys aged 40 or younger who contribute substantial time and effort to a local social service, or a local civic, artistic, or cultural organization. (May 2009) |
| Cleveland | Ann Weinzimmer was one of six recipients of the 2009 Center for Community Solutions Most Treasured Volunteer Award ("MTV"). The MTV Awards were established in 1984 as a means to recognize the invaluable contribution of volunteers in health and social service organizations serving Greater Cleveland. Ann received the MTV Award in recognition of her volunteer career, including her work with the West Side Ecumenical Ministry. (April 2009) |
| Firmwide | Jones Day was named "Pro Bono Firm of the Year" by the District of Columbia Bar, the nation's second largest bar association. (April 2009) |

In addition, the Firm established the Jones Day Foundation in 1987. The Jones Day Foundation is a nonprofit organization funded by Jones Day's lawyers and staff, with a mission to financially support efforts that include promoting the rule of law in developing countries, fostering innovation in academics, medicine, and the arts, improving the living conditions and economic opportunities for people in

JONES DAY

impoverished settings (particularly children and women), and providing support and comfort to people suffering from natural and other disasters around the world.

In the last several years, The Foundation has provided grants to the following organizations (among others):

- **New York Police Athletic League**:  Donated funds to rebuild several PAL youth centers following Superstorm Sandy.
- **Holy Cross International, Inc.**:  Donated funds to establish a college campus for Holy Cross College in Agartala, India.
- **National Center for Civil and Human Rights**:  Provided funding to sponsor the permanent exhibit, "What Are Human Rights," which will open in Atlanta in 2014.
- **The Fund for the Future of Children Affected by the Great East Japan Earthquake**:  Contributed funds to assure that children who lost their parents in the East Japan earthquake may continue with their education.
- **Room to Read**:  Contributed funds to build libraries and publish thousands of copies of local language children's books.
- **Hands Together, Inc.**:  Provided funding to help rebuild the St. Ann's campus in the Cité Soleil slums in Port-au-Prince Haiti.
- **Mentor Teacher Brother**:  Donated funding to reconstruct a facility in Chicago for youth housing and mentoring programs.
- **Lawyers Without Borders**:  Contributed funding to implement a lawyer-training program in Kenya that focuses on gender violence.
- **Wounded Warrior Project**:  Provided funding to assist severely injured service members.

## Commitment to Diversity

Jones Day as a Firm is committed to diversity and equal opportunity for people of all backgrounds, and has a history of leadership in promoting diversity.  One of the most important manifestations of this commitment is the fact that our lawyers come to us from all over the world.  We have 37 offices, in 17 countries, on five continents.  Our lawyers are citizens of 38 countries; they speak 57 languages. They have been trained in scores of law schools; they have served in the military, in government, in the judiciary, in academia, and in the corporate world.  They truly reflect the entirety of the human race.

Jones Day envisions a future in which the Firm and every component of the legal profession is diverse in the broadest sense of the term.  To make our vision for the future a reality, the Firm and its lawyers contribute to and participate in diversity activities and programs on the national, regional, and local levels. We support and underwrite research; sponsor organizations; attend programs; host receptions, law camps, and other events; provide panelists; offer internships, scholarships, and fellowships; participate in job fairs; serve as judges for mock trial and moot court competitions; conduct mock interviews and mentor law students; and work to build the pipeline of minorities into the profession through our efforts in schools and colleges across the country (including in Michigan).

In recognition of this commitment, Jones Day was given the 2012 NASABA Law Firm Achievement Award, which honors the law firm that has demonstrated undying commitment to supporting the community and improving diversity in the legal market.  Criteria considered for this award include:  the percentage of minority partnership and associates in the firm; the types of diversity programs and initiatives sponsored

- 15 -

and/or implemented by the firm; the *pro bono* initiatives undertaken by the firm; innovative initiatives related to client needs; and a demonstrated commitment to the community interest, including attention to legal ethics and corporate responsibility.

# Tab 3 — Proposed Staffing: A Seasoned Team

Our proposed team includes lawyers recognized for their significant experience, thought leadership, and unwavering dedication to client needs. Many of these lawyers are from Michigan, were educated in Michigan, or have other personal or professional connections to the state. More detailed profiles for each of these lawyers are attached behind Tab 13.

Under Jones Day's interdisciplinary approach, these key lawyers will work closely with each other and with other lawyers (including junior lawyers and lawyers from other relevant practice areas, as needed) to provide the most responsive and efficient services possible. As the engagement proceeds, it is anticipated that a more detailed staffing plan will be developed to meet to the specific needs of the City.

## Restructuring



**Corinne Ball, Partner (New York):** Named "Dealmaker of the Year" by *The American Lawyer* and one of "The Decade's Most Influential Lawyers" by *The National Law Journal*, Corinne Ball has over 30 years of experience in restructuring matters, focusing on complex corporate reorganizations and distressed acquisitions, both court-supervised and extra judicial, including matters involving multijurisdictional and cross-border enterprises. Corinne led a team of attorneys representing Chrysler LLC in connection with its historic chapter 11 case, which won the *Investment Dealers' Digest* Deal of the Year award for 2009. She also led the Jones Day team in the worldwide reorganization of Dana Corporation, which included a groundbreaking global settlement that addressed complex union, pension, and other post-employment benefits issues and won the *Turnaround Management Association's* prestigious International Turnaround Company of the Year award in 2008. Corinne has extensive experience in municipal restructuring matters, in particular through numerous representations of leading bond insurers. For example, Corinne currently represents National Public Finance Guarantee Corporation as the insurer of nearly $150 million in general obligation bonds in the Jefferson County, Alabama chapter 9 case. Corinne also has advised on loans, acquisitions, and workouts involving professional sports franchises, including the Detroit Red Wings.

Corinne is a director of the American College of Bankruptcy and the American Bankruptcy Institute. She is co-head of the New York Office's Business Restructuring & Reorganization Practice and is a frequent speaker on a wide range of restructuring topics. In 2012, Corinne was recognized as the International Women's Insolvency & Restructuring Confederation (IWIRC) "Woman of the Year in Restructuring." Most recently, Corinne was selected for the 2013 Leadership Achievement Award by *The M&A Advisor*. She is the recipient of numerous other professional recognitions, including the following: named a leading lawyer for numerous years in *Chambers USA* and *Chambers Global* (most recently receiving a top tier ranking in 2012), listed as among *Super Lawyers'* "Top 50 Women Attorneys in New York" since 2007, named a "Leading Lawyer" for Corporate Restructuring multiple times by *Legal 500*, listed as among Top 100 Restructuring Attorneys in America for 2010 and 2011 by *K&A Restructuring Register*, and listed among the best lawyers of 2011-2012 in the field of Bankruptcy by *Lawdragon 500*.

Corinne also is a trustee of Catholic Charities and the founder of Catholic Renewal, an organization dedicated to feeding the hungry and sheltering the homeless. In 2011, Corinne won the Anti-Defamation League New York Lawyers Division Human Relations Award for "her tireless commitment to fighting anti-Semitism, racism, and all forms of bigotry."

Corinne would serve as the overall lead on an engagement by the City of Detroit.



**Bruce Bennett, Partner (Los Angeles):** Recognized multiple times by *Chambers USA* and *The Best Lawyers in* America, Bruce Bennett has represented debtors, creditors, and business acquirers in many of the largest corporate reorganization cases in the United States in the fields of retail, telecommunications, heavy industry, aviation, manufacturing, real estate, insurance, energy, banking, and computer technology. Bruce was the lead lawyer for the Los Angeles Dodgers on their recent $2 billion acquisition by Magic Johnson and other partners. He also was lead debtor's counsel for Orange County, California in the country's largest municipal bankruptcy, which commenced following a $1.7 billion loss in county investment pools and involved over $10 billion in debt. As counsel to the debtor, Bruce was the architect of the plan of adjustment that comprehensively resolved the county's financial problems. That plan was confirmed and successfully implemented in approximately 18 months, and the related litigation resulted in the recovery of more than $870 million for the county. Bruce also represented Desert Hot Springs, the first California city to file a chapter 9 debt adjustment case and currently represents Franklin Advisors as a bondholder in the chapter 9 case of Stockton, California.



**Heather Lennox, Partner (Cleveland / New York):** Recognized for eight consecutive years by *The Best Lawyers in America*; listed by *Super Lawyers* 2010-2012 as among the "Top 50 Women Ohio Super Lawyers" in bankruptcy & creditor/debtor rights, and named one of 14 "Outstanding Young Turnaround Lawyers" by the Turnaround Management Association, Heather has played a leading role in Jones Day's representations of debtors and potential debtors, creditors' committees, prepetition secured lenders, bank groups, DIP lenders, credit card processors, and other significant creditors in many of the nation's largest in-court and out-of-court corporate restructurings. She recently was extensively involved in the labor negotiations for Hostess Brands in its chapter 11 cases, and has represented General Motors in disputes with the UAW. Heather also was counsel to the Michigan-based Metaldyne Corporation in its bankruptcy cases. She has written and lectured on chapter 9 issues.



**Jeffrey B. Ellman, Partner (Atlanta):** Recognized for excellence by *Chambers USA*, *Turnarounds & Workouts*, and *Georgia Trend*, Jeff has over 20 years of experience representing parties of all types in large restructurings, including debtors, secured lenders, asset purchasers, significant creditors, contract counterparties, equity sponsors, and other parties in interest. Jeff has represented clients in the State of Michigan, including Chrysler LLC in its historic bankruptcy case and the liquidation trust formed to wrap up Chrysler's affairs. He has had a leading role in numerous other large chapter 11 cases, including Dana Corporation, LTV Steel and Montgomery Ward. Jeff published an extensive law review article on the municipal pension crisis and articles on related topics. He a member



of the board of the Southeastern Bankruptcy Law Institute. Jeff has an undergraduate degree from the University of Michigan.

## Employee Benefits



**Evan Miller, Partner (Washington, DC):** Recognized by *Chambers USA* as a "leading individual" in employee benefits, executive compensation, and ERISA litigation both in Washington, D.C. and nationally and recognized by *The National Law Journal* as one of the nation's 40 best ERISA attorneys, Evan provides employee benefits counsel and represents companies in complex ERISA litigation. He co-chairs the Firm's Employee Benefits & Executive Compensation Practice. As a litigator, Evan has defended companies and individuals in stock drop cases, fiduciary duty class actions against plan service providers, and cash balance and accrued benefit cutback litigation. He also has been involved in a variety of retiree health cutback cases and has helped pioneer for both General Motors and Ford Motor Company the use of retiree health VEBAs to shift legacy costs. Evan has represented Blue Cross Blue Shield of Michigan in several matters, including a successful 6th Circuit appeal addressing ERISA fiduciary duties. Evan was a lead lawyer in addressing the benefits issues in the Hostess Brands bankruptcy. He also lead a team representing General Motors in a 2012 transaction to eliminate approximately $26 billion in balance sheet liability, and thereby result in the largest single-employer plan termination and pension risk transfer in U.S. history

## Public Pensions



**Sarah Heck Griffin, Partner (Los Angeles):** Sarah Griffin advises employers on the full range of tax and ERISA issues concerning the employee benefit plans and compensation arrangements they sponsor. She has extensive experience in health and welfare plans and funding vehicles (including VEBAs, 401(h) accounts, HRAs and HSAs), fringe benefits, nonqualified deferred compensation plans (including ineligible deferred compensation plans for tax-exempt organizations and government employers), and qualified retirement plans. Sarah has a particular expertise in public pension matters. For example, a significant part of her practice involves advising California governmental entities and retirement systems regarding the state's pension laws and the common law of trusts. Among her clients is the County of Los Angeles. Sarah has been recognized for her outstanding work by *Chambers USA*.

## Public Finance



**David J. Kates, Partner (Chicago):** David practices primarily in the area of public finance, and has worked as bond counsel, underwriter's counsel, issuer's counsel, borrower's counsel, restructuring counsel, and purchaser's counsel in both tax-exempt and taxable transactions. These transactions have entailed a wide variety of document structures, including multimodal transactions, imbedded derivatives, forward commitments, and swaps. Recent representative transactions include $88,460,000 Economic Development Authority of the City of Roanoke, Virginia Hospital Revenue Bonds (Carilion Clinic Obligated Group) Series 2012; and $127,150,000 Illinois Finance Authority Variable Rate Demand Revenue Bonds, Series 2011A and Series 2011B (CDH-Delnor Health System). David also represents National Public Finance Guarantee Corporation with respect to the

JONES DAY

enforcement and protection of National's rights and remedies in connection with the chapter 9 municipal bankruptcy filing by Jefferson County, Alabama. David has represented MBIA as bond insurer in other public finance restructurings, and represented Lehman Brothers in connection with certain complex derivatives and other financial transactions. David is a frequent lecturer at national conferences on issues related to tax-exempt bond financings and bond compliance.

## Public Projects and Infrastructure



**Brian L. Sedlak, Partner (Chicago):** Brian Sedlak oversees the Firm's Corporate Real Estate Services Practice and is co-chair of the Firm's Global Infrastructure & Project Finance Practice. He advises clients with respect to large-scale infrastructure projects and represents public sector entities, Fortune 500 companies, large U.S. developers, and real estate funds with their real estate portfolios and investments. He represents the owners and financing parties of major infrastructure assets in the United States, including power generation facilities and toll roads. Brian recently represented The Ohio State University in connection with the University's 50-year concession of its parking assets (comprised of over 35,000 parking spaces) for $483 million to a private consortium. This transaction is the first public-private partnership relating to the long-term lease and concession of a university parking system in the United States. Brian is a member of The Economic Club of Chicago and a board member of the Dean's Advisory Council for the Department of Business and Management of Northeastern Illinois University.



**Peter D. Clarke, Partner (Chicago):** Peter Clarke chairs the Firm's Energy Practice, which addresses issues relating to water, gas, lighting and other utilities. Peter has more than 30 years of experience representing the public utility industry, with a particular focus on corporate finance, disclosure obligations under the federal securities laws, corporate governance, and mergers and acquisitions. Peter has represented utility clients in hundreds of corporate finance transactions, as well as acquisitions, dispositions, and mergers. Recently, he represented clients in the construction and ownership of high-voltage transmission lines, in the purchase of traditional fossil-fueled generating facilities, and in the development and ownership of wind farms. Representative clients include Xcel Energy, E.ON US LLC, OGE Energy Corp., and their respective utility and non-utility clients. In 2011, Peter was designated as a member of BTI Consulting Group's "Client Service All-Star List" and has been recognized multiple times in *The Best Lawyers in America*. Peter has an undergraduate degree from the University of Michigan.



**Rebecca MacPherson, of Counsel (Washington, DC):** Rebecca MacPherson recently joined Jones Day's Airlines & Aviation Practice from her most recent position as the Federal Aviation Administration's Assistant Chief Counsel for International Law, Legislation and Regulations. Rebecca's role at the FAA included responsibility for reviewing and approving rulemaking documents, providing legal advice on issues arising from existing regulations, and developing positions on international law issues. Her legislation portfolio addressed agency representation on all policy matters before Congress. Prior to joining the FAA in 2004 as Assistant Chief Counsel for Regulations, Rebecca served for eight years as Associate Chief Counsel of the National Highway

Traffic Safety Administration. Rebecca was named the 2008 Transportation Lawyer of the Year by the Federal Bar Association.



**Naveen C. Rao, Associate (Washington, DC):** Naveen Rao advises air carriers, aerospace firms, and other companies on regulatory matters involving the Federal Aviation Administration and the United States Secretary of Transportation. Prior to joining Jones Day, Naveen spent more than seven years at the U.S. Department of Transportation working in a number of capacities beginning with the Department's Honors Attorney program. He was a counselor to the assistant secretary for Aviation and International Affairs, advising on the licensing of all carriers serving the United States, formulation of aviation policy, and negotiations with foreign civil aviation authorities. Naveen also worked in the Regulations Division of the Office of the Chief Counsel at the FAA. At the FAA, he was involved in rulemaking activities, letters of interpretation, and provided legal support to the agency's Office of Aviation Safety. In 2003, Naveen was selected to be a Mansfield Fellow. During this two-year program, he spent one year in Washington, D.C. studying the Japanese language and also Japan area studies at the U.S. Department of State. He spent his second year in Tokyo focusing on Japanese aviation policy at the Ministry of Land, Infrastructure, and Transport; the Japan Fair Trade Commission; and All Nippon Airways where he worked on legal, economic, business, and technical matters.

## Labor



**Aaron L. Agenbroad, Partner (San Francisco):** Aaron Agenbroad has over 15 years of traditional labor experience and has served as the chief negotiator in bargaining a number of collective bargaining agreements. Most recently, Aaron negotiated collective bargaining agreements for two public sector employers in the Bay Area: Alameda County Medical Center and the Port of Oakland. Aaron also has experience in negotiating labor issues in bankruptcy matters, including the chapter 11 cases of automotive supplier Dana Corporation. Aaron is the Partner in Charge of Jones Day's San Francisco office. He was born in Detroit, Michigan and later moved to Ann Arbor, Michigan.



**Robert Louis Ford, Partner (San Francisco):** Bob Ford has almost 40 years of traditional labor experience and has negotiated countless collective bargaining agreements for both private sector companies and public sector entities. Additionally, he has recent experience in renegotiating labor contracts in the bankruptcy context. In 2009, he was the chief negotiator for the Minneapolis Star Tribune when it renegotiated all the paper's labor contracts as part of its bankruptcy. Last year, he also renegotiated SP Fiber Technologies' labor contract as it emerged from bankruptcy. Most recently, Bob was part of the Jones Day team renegotiating the labor contracts for Hostess Brands in connection with its bankruptcy filing. Bob has an economics degree from the University of Notre Dame.



**Lawrence C. DiNardo (Chicago):** Larry DiNardo oversees the Firm's Labor & Employment Practice and practices in all areas of employment and labor law. His labor practice includes the representation of employers before the National Labor Relations Board, labor arbitrations, and labor negotiations. Larry also has served as labor counsel in numerous business restructurings, sales, and mergers. Larry has extensive trial and appellate experience. He has tried more than 35 cases to verdict before juries around the United States and handled an equal number of cases before federal and state appellate courts. Recently, Larry represented the Chicago Board of Education in connection with the 2012 teachers strike, ultimately reaching a successful settlement after seeking a temporary restraining order in court. Larry has been repeatedly named to "America's Leading Lawyers" by *Chambers USA*, *The Best Lawyers in America*, and the "Top 50 Most Powerful Employment Lawyers in the U.S." by *Human Resource Executive Magazine*. Larry has an undergraduate and a law degree from the University of Notre Dame and is admitted to practice in the United States District Court for the Eastern District of Michigan.

## Mergers & Acquisitions



**Wesley R. Johnson, Jr., Partner (New York):** Wesley Johnson has over 30 years of experience in mergers and acquisitions, in a wide variety of business sectors. His experience includes significant cross-border and infrastructure transactions. Currently, he is the partner in charge of Jones Day's New York office. Wesley's major client representations have included chemical group Rhodia, La Poste Française, France Telecom/Orange, Canadian paper group Cascades, China Guangdong Nuclear Power Corporation, Compass Group, Parker Hannifin, and WL Ross. Wesley spent his childhood in Grosse Pointe, Michigan, where his family was involved in the community. His father was president of Libby Owens Ford Plastics, president of the Detroit Economic Club and a member of the board of a Detroit bank. Wesley has an undergraduate degree from the University of Michigan.

## Litigation



**Richard Deane, Partner (Atlanta):** Rick Deane handles a variety of general litigation matters, and has broad experience in both state and federal courts. He also has particular expertise in troubled situations and assists clients who are facing all types of criminal or civil investigations by the United States Department of Justice and other investigative agencies. Rick has represented multiple public entities, including the Atlanta School Board and the Fulton County District Attorney's Office. Rick has been involved in numerous corporate and municipal investigations, including the investigation of potential theft and misuse of funds in the Fulton County (GA) government. Before joining Jones Day, Rick served in multiple governmental roles, including U.S. Attorney for the Northern District of Georgia; Magistrate Judge in the U.S. District Court for the Northern District of Georgia; and Chief of the Criminal Division and Chief of the General Crimes Section for the Northern District of Georgia, United States Department of Justice. Rick was appointed a Special Assistant District Attorney to conduct an investigation of the Atlanta Police Department. Rick is head of the litigation group for the Atlanta office and co-chair of the Firm's Corporate Criminal Investigations Practice. He is president of the National

JONES DAY

Association of Former United States Attorneys (NAFUSA). In February of this year, Rick was awarded the 12th Annual Chief Justice Thomas D. Marshall Professionalism Award by the State Bar of Georgia's Bench and Bar Committee. Rick has an LL.M degree from the University of Michigan.



**Yvette McGee Brown, Partner (Columbus):** Yvette McGee Brown joined Jones Day in 2013 after a long and distinguished judicial and public service career, most recently serving on the Ohio Supreme Court. Her practice focuses on business and tort litigation and appellate practice. Justice McGee Brown was first elected to the Franklin County Common Pleas Court, Domestic Relations and Juvenile division in 1992. She served on the Common Pleas Court until 2002, when she retired from the bench to create the Center for Child and Family Advocacy at Nationwide Children's Hospital. Justice McGee Brown has been an active community leader in Columbus and throughout Ohio. She has served on the boards of Ohio University, the Dave Thomas Foundation for Adoption, the Ohio State University Wexner Medical Center, and the National Council of the Ohio State University Moritz College of Law. She is a former chair of the United Way of Central Ohio, The Ohio State University Alumni Association, and the YWCA Columbus Board of Directors. She is the winner of numerous awards, including the Ohio State University Distinguished Service Award, the YWCA Woman of Achievement Award, and the Women of Color Foundation Woman of the Year.



**Jayant W. Tambe, Partner (New York):** Jay Tambe advises clients on litigation concerning securities, derivatives, and other financial products, including credit default swaps and collateralized debt obligations. Jay also is experienced in securities class action litigation and often represents non-U.S. issuers. He has broad litigation experience under federal and state consumer protection and disclosure statutes. Jay also has experience in bankruptcy courts, including by serving as one of the lead litigators for Lehman Bros. Holdings, Inc. and its affiliated debtors in various derivatives litigation matters and other disputes. He also litigated issues that led to a global union settlement and the establishment of a VEBA trust for retiree benefits in the Dana Corp. chapter 11 cases and has represented monoline insurers in multiple matters. Jay is co-leader of the Firm's Financial Institutions Litigation & Regulation Practice. He is a frequent speaker on CDO and derivatives litigation topics. Jay has a law degree from the University of Notre Dame.



**Chad Readler, Partner (Columbus):** Chad Readler handles complex civil and criminal matters, with an emphasis on appellate litigation. Before the United States Supreme Court, Chad assisted in successful representations involving preemption, the First Amendment, and the death penalty. In the Ohio Supreme Court, he recently prevailed on behalf of the Cleveland Clinic and, separately, successfully defended the constitutionality of Ohio's public charter schools. On behalf of Chrysler, Chad recently resolved a series of arbitrations filed by former automobile dealers. Chad also has experience litigating matters in bankruptcy cases, including the chapter 11 case of National Century Financial Enterprises. Chad is a past recipient of the American Marshall Memorial Fellowship awarded by the German Marshall Fund of the United States, and he traveled for three weeks in Europe, meeting with prominent members of the business, political, and NGO communities. Recently, Chad traveled to Nairobi, Kenya to participate in a Lawyers

JONES DAY

Without Borders program focused on improving the trial skills of Kenyan lawyers. He handles numerous *pro bono* matters, recently securing habeas corpus relief for a client serving a life sentence for murder in Detroit. Chad is a Michigan native with undergraduate and law degrees from the University of Michigan, and served as a law clerk on the Sixth Circuit Court of Appeals.

## Issues and Appeals



**Beth Heifetz, Partner (Washington, DC):** Beth Heifetz has more than 25 years of experience in appellate litigation, representing clients in constitutional, tax, antitrust, securities, insurance, and bankruptcy matters. She also has led successful international arbitration teams in commercial disputes, as well as trial teams in cases concerning remedies for constitutional violations. Beth's recent experience includes representing bankruptcy creditors' committees in professional negligence litigation in the U.S. Courts of Appeals and in state courts and representing clients in bankruptcy appeals involving government contracts and executive compensation. Beth was involved in several of the appeals arising out of the Chrysler bankruptcy cases. Beth has authored briefs and petitions for certiorari in the United States Supreme Court on a variety of issues including the First Amendment, federal constitutional challenges to state taxes, predatory behavior in the antitrust context, and state regulation of federally chartered banks. Beth is a former co-chair of the Appellate Practice Committee of the American Bar Association Litigation Section and former co-chair of the Litigation Section's Pro Bono Committee. Beth served as a law clerk to Justice Harry A. Blackmun, United States Supreme Court, during the 1985 Term. She is coauthor of "The Supreme Court and State Taxation: 1996-97, and a Glimpse of the Future to Come," published in *The State and Local Tax Lawyer*.

## Health Care



**Catherine E. Livingston, Partner (Washington, DC):** Cathy Livingston is a leading authority on the Affordable Care Act. She has in-depth knowledge of the multitude of tax provisions contained in the act, including the employer coverage requirement, the individual coverage requirement, the premium tax credit, insurance reforms, insurer fees, the medical device excise tax, and new requirements for tax-exempt hospitals. Prior to joining Jones Day in 2013, Cathy was Health Care Counsel in the IRS Office of Chief Counsel, where she served as principal legal advisor to IRS senior leadership on all aspects of the Affordable Care Act and its implementation. She worked closely with the White House and the Department of Health and Human Services in all aspects of Affordable Care Act implementation. She also worked closely with the Department of Justice on the cases challenging the constitutionality of the Affordable Care Act from the district courts through the U.S. Supreme Court. Prior to working on the Affordable Care Act, Cathy supervised all IRS legal work with respect to tax-exempt organizations, employment taxes, and government entities. Cathy has served on several committees of the D.C. Bar Tax Section and ABA Tax Section, as well as the board of the National Center on Philanthropy and the Law. In 2013, she was a recipient of the IRS Commissioner's Award, the IRS Chief Counsel's Distinguished Service Award and the U.S. Department of the Treasury Meritorious Service Award.

# Tab 4 — Significant Experience in Michigan

Jones Day has significant experience representing Michigan companies and in other matters in the State of Michigan. For example, during the past five years, Jones Day has counted more than 100 Michigan-based companies among our clients. Jones Day, as a Midwestern firm founded in Ohio, also has a long history of representing clients throughout the Midwest.

The following is a representative listing of Michigan-related representations in which the participation of Jones Day lawyers is a matter of public record.

~ ~ ~

**ABM Industries, Inc.**
Acquisition of HHA Services, Inc., a provider of support service management to hospitals, long-term care facilities based in Michigan, and other healthcare facilities throughout the United States.

**Ascension Health**
*Pontiac, City of v. Blue Cross Blue Shield of Michigan et al.*, Case No. 2:11-cv-10276 (E.D. Mich.)
Obtained dismissal of antitrust litigation brought on behalf of a class of purchasers of health care services, claiming that Ascension Health entered into agreements with Blue Cross that allegedly adversely affected the ability of other health care insurers to enter into hospital contracts in Michigan.

**Asher, Henry E.**
*Yoost v. Caspari*, --- N.W.2d --- (Mich. Ct. App. 2011)
Obtained dismissal of case in state appellate court against client for lack of personal jurisdiction, reversing a contrary ruling by trial court.

**Bloomer Plastics, Inc.**
Counsel to shareholders of Bloomer Plastics, Inc., a supplier of specialty and technical cast plastic films to a wide variety of industrial, consumer, and medical end markets, in the sale of the company to an affiliate of Huron Capital Partners LLC, which is based in Michigan.

**Blue Cross Blue Shield of Michigan**
*Anthony DeLuca v. Blue Cross Blue Shield of Michigan*, Appeal No. 08-1085 (December 8, 2010)
On December 8, 2010, the U.S. Court of Appeals for the Sixth Circuit ruled in favor of Jones Day's client Blue Cross Blue Shield of Michigan in an important case involving the scope of ERISA's fiduciary conduct rules. The case involved the question of whether Blue Cross acts as a fiduciary and is subject to ERISA's stringent fiduciary conduct rules when it negotiates hospital reimbursement rates that apply to its self-insured book of business. The Court, in a 2-1 decision, affirmed the District Court's grant of summary judgment. It held that the negotiation of hospital rates constitutes a business practice, and that Blue Cross did not owe fiduciary duties of care under ERISA to its self-insured customers respecting the setting of such rates, notwithstanding that other services Blue Cross provided to its self-insured customers were to be treated as ERISA fiduciary conduct. The Court concluded that because ERISA fiduciary duty principles do not regulate the setting of hospital reimbursement rates, Blue Cross did not engage in ERISA violations when it took its own business interests into account, as well as those of its insured customers, in setting such rates. The majority opinion expressly adopted Jones Day's public policy argument that application of ERISA's stringent fiduciary duty rules to the setting of hospital reimbursement rates inevitably would lead to negotiation of health care provider rates on a benefit "plan by plan basis," and ultimately would be harmful and "self-defeating" for corporate and individual health insurance consumers. The Court also ruled that Blue Cross did not engage in any prohibited transactions under ERISA. It rejected the appellant's contention that a person can engage in a prohibited transaction under ERISA section 406(b)(2) even when such person is not acting in a fiduciary capacity under ERISA.

**Blue Cross Blue Shield of Michigan**
Jones Day represented Blue Cross Blue Shield of Michigan and Blue Care Network in connection with a Department of Justice investigation of its proposed acquisition of Physicians Health Plan of Mid-Michigan.



**Blue Cross Blue Shield of Michigan**
Jones Day provided antitrust advice to Blue Cross Blue Shield of Michigan in connection with its acquisition of M-CARE, a health plan owned by the University of Michigan. The Department of Justice ultimately cleared the transaction without issuing a Second Request.

**Bridgestone Americas Holding, Inc.**
*United Rubber Workers of America v. Bridgestone* (M.D. Tenn.), *United Automobile Workers of America v. Bridgestone* (E.D. Mich.)
Jones Day represented Bridgestone Americas Holding Inc. in litigation brought by the United Steelworkers of America (formerly, United Rubberworkers of America) after Bridgestone changed the level of benefits provided to some 14,000 retirees formerly represented by the union. After substantial discovery, the parties agreed to a reduced level of benefits for the purported class, certified the class for settlement purposes, and had the case dismissed. A nearly identical case was brought by United Automobile Workers for a smaller number of retirees from UAW plants.

**Chem-Trend, Inc.**
Jones Day advised Chem-Trend regarding (1) all facets of qualified and nonqualified (SERP) retirement benefits, including IRS qualification issues, DOL audit issues and JOBs Act compliance; and (2) design, funding, implementation, and taxation of various welfare benefits (including retiree medical, VEBA issues, educational assistance, severance, disability, and life insurance).

**Chrysler LLC**
After a historic battle all the way to the United States Supreme Court, Chrysler LLC sold substantially all of its assets to Fiat-led "New Chrysler" (Chrysler Group LLC) on June 10, 2009, providing the opportunity for its iconic brands and U.S. operations to survive.

The transaction resulted from intensive negotiations involving Fiat, the U.S. Department of the Treasury, the Presidential Auto Task Force, the United Auto Workers union (UAW), the Pension Benefit Guaranty Corporation (PBGC), Chrysler Financial, GMAC Financial Services, and the holders of almost $7 billion of secured Chrysler bank debt. These negotiations led to an accelerated court process which commenced on April 30, 2009, when Chrysler LLC filed for protection under chapter 11 of the U.S. Bankruptcy Code and sought approval for an expedited bid process and sale.

The assets were sold in exchange for $2 billion in cash and the assumption of numerous Chrysler debts by New Chrysler. The transaction was consummated pursuant to an order of the U.S. Bankruptcy Court. Although it involved substantial filings and hearings in the Bankruptcy Court and a massive effort by Jones Day bankruptcy and litigation specialists, the evolution, design, and execution of the sale was an M&A deal, requiring the skill and experience of a large transactional team from Jones Day as Chrysler's restructuring counsel. For more information about this engagement, *see* Tab 11.

**Chrysler LLC**
Jones Day advised Old Carco LLC (Chrysler) in the $20 million sale of a Sterling Heights, Michigan, assembly plant to Chrysler Group LLC.

**Continental Tire North America, Inc.**
*Beaty, et al. v. Continental Automotive Systems U.S., Inc.*, Case No. 10-CV-14217-BAF-RSW (E.D. Mich.)
Representation in connection with a lawsuit alleging that the client refused to provide vested lifetime retiree benefits under collective bargaining agreements.

**Connell Limited Partnership**
$200 million sale of Dayton Progress Corporation and the components business of The Anchor Danly Company, based in Michigan, to MISUMI

**Dana Corporation**
*In re Dana Corporation, et al.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y.)
Jones Day successfully represented Dana Corporation (including several of its auto and truck parts and equipment manufacturing facilities located in Michigan) in their reorganization under chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York. To reorganize the company, Jones Day assisted Dana in obtaining a series of settlements to eliminate an enormous accumulated liability for health and life insurance benefits for retirees from its unionized and nonunion workforces, and to modify its collective bargaining agreements with active employees, allowing Dana to compete in the troubled auto industry upon emergence from bankruptcy. This "Global Settlement" resulted in the elimination of almost $1.5 billion in accumulated post-employment benefit

obligations, and the creation and funding of Voluntary Employee Benefit Association (VEBA) trusts to provide non-pension retiree benefits, a freezing of the current defined benefit pension plans (the savings from the labor contracts permitted freezing, rather than a wholesale termination of the pensions), institution of consumer-driven healthcare programs for active unionized employees with sharing of medical inflation costs, a competitive two-tier wage structure, elimination of liability for long-term disability benefits, elimination of cost of living increases, buy-outs of high-wage employees, cost-saving changes to work rules, and agreement on plant closings, work movement and other manufacturing footprint changes. Several creditors filed objections to Dana's motion for court approval of the settlement and all but two of these objections were withdrawn as a result of successful negotiations with Dana's main creditor constituents. On July 26, 2007, Judge Burton Lifland approved the Global Settlement, after hearing testimony from then-Dana CEO Michael J. Burns. In his decision, Judge Lifland described the Global Settlement as "groundbreaking" and "paving the way" for Dana's reorganization.

### Dana Corporation
Sale of trailer axle manufacturing business under section 363 of the Bankruptcy Code to Hendrickson USA, LLC, a subsidiary of The Boler Company.

### Delphi Automotive Systems Corp., General Motors Corporation
*Dorn, et al. v. General Motors Corp., et al.*, 2005 Fed. Appx. 0326 N, Case Nos. 02-70956 & 03-72246 (E.D. Mich. 2003); *Dorn, et. al. v. General Motors Corp., et al.*, Case Nos. 04-1094 & 04-1121 (6th Cir.)
Jones Day represented both Delphi Automotive Systems Corp. and General Motors Corporation (Troy, MI) in this class action litigation involving LRMA, state law claims, and the Thirteenth Amendment concerning ownership transfer of a Trenton, New Jersey, plant. The District Court granted summary judgment on class claims by 22 plaintiffs under Section 301 of the LMRA, state law claims of tortious interference with contractual rights, and a unique claim under the Thirteenth Amendment arguing indentured servitude, arising from the plaintiffs' transfer from General Motors employment to Delphi Corporation. The plaintiffs subsequently appealed the dismissals to the U.S. Court of Appeals for the Sixth Circuit. The Circuit Court upheld the District Court decision.

### The Detroit Newspaper Agency, d/b/a Detroit Newspapers; Detroit News, Inc., and The Detroit Free Press, Inc.
*The Detroit Free Press, Inc. and The Newspaper Guild of Detroit Local 22, et al.*, NLRB Case No. 7-CA-41284; *Schaub v. Detroit Newspaper Agency*, 984 F. Supp. 1048 (E.D. Mich. 1997), affirmed mem., 145 F.3d 1333 (6th Cir. 1998)
Jones Day represented The Detroit Newspaper Agency, d/b/a Detroit Newspapers; Detroit News, Inc., and The Detroit Free Press, Inc. in injunction proceedings arising out of the employer's response to the Detroit Newspaper strike in 1997. After issuing a complaint alleging that the client violated the NLRA and that the strike was an unfair labor practice strike, the National Labor Relations Board sought a § 10(j) injunction in the form of an order to reinstate employees alleged to be unfair labor practice strikers. The district court denied the NLRB's petition for injunctive relief, and the Sixth Circuit affirmed on appeal.

### DDR Corp.
*BP1, LLC v. DDR Corp. et al, Case No. 09-099741-CZ* (Oakland Cty. Circ. Ct., Mich.)
On August 18, 2012, after a five-week trial, a Michigan state court jury handed down a full defense verdict for Jones Day's client, DDR Corp., a major shopping center owner and developer, in a breach of contract suit seeking over $200 million in damages. The lawsuit claimed that DDR failed to provide development services under the Project Development Agreement for a planned mixed use project called Bloomfield Park, located in Pontiac and Bloomfield Township Michigan. The project was halted, halfway through construction, when its owner ran out of money in November, 2008.

### Detroit Edison Company/DTE Energy Company
Jones Day represented The Detroit Edison Company on federal regulatory matters related to its formation of a holding company, DTE Energy Company, including application for approval under PUHCA 1935 to the SEC and completion of the successful holding company formation.

**Dow Chemical Company, The**
Jones Day managed The Dow Chemical Company's global patent portfolio and prosecuted key patents for polyolefin technologies, including opposition practice in Europe and Japan.

**Dow Corning Corporation**
Jones Day acted as special tax counsel to Dow Corning in its chapter 11 reorganization filed in May 1995 in response to thousands of personal-injury suits involving silicone-gel breast implants. The company emerged in June 2004, making it the longest chapter 11 case in history. We litigated regarding the (a) deductibility of $70 million in professional fees and other costs incurred during the first two years of bankruptcy (pending decision, bankruptcy court, Eastern District of Michigan); and (b) deductibility of $80 million in postpetition interest on prepetition debt (partial summary judgment in favor of debtor, In re Dow Corning Corporation, 270 B.R. 393) (Bankr. E.D. Mich. 2001). Jones Day also obtained a private letter ruling from the IRS involving the determination that the settlement trust at the center of the debtor's plan of reorganization would be treated as a "qualified settlement fund" for federal income tax purposes and that the debtor's transfers to the fund, which would exceed $3 billion, would be deductible when made.

**Edward C. Levy Company**
Jones Day represented The Levy Company, d/b/a The Levy Company, Levy Indiana Slag Co. and Edward C. Levy Company, Inc. (and Staff Source, LLC), in an unfair labor practice dispute. After employees of The Levy Company initiated an economic strike, employees at sister companies Levy Indiana Slag Co. and Edward C. Levy Company, Inc. also engaged in a work stoppage, all breaching the "no strike" clauses in the applicable collective bargaining agreements. Jones Day filed federal lawsuits on behalf of its client against the International Union of Operating Engineers, Local 150 (Union). Summary judgment was granted on the question of liability to ECL and LISCO, ruling that the Union breached the "no strike" clauses in the applicable collective bargaining agreements.

**Electrolux Home Products, Inc.**
*The Whirlpool Corp. v. Thomas Vining*, Case No. 1:04-CV-0036 (W.D. Mich.)
Jones Day successfully defeated attempts by Whirlpool to obtain preliminary and permanent injunctive relief prohibiting a former Whirlpool executive from working in the home appliance industry at Electrolux.

**Federal-Mogul Corporation**
Jones Day successfully defended Federal Mogul Corporation against a lawsuit filed by a former supplier, which claimed that a competing manufacturer's decision to pay an "up-front" discount as requested by Federal-Mogul in return for a multiyear exclusive right to sell to Federal-Mogul constituted both an illegal brokerage in violation of Section 2(c) of the Robinson-Patman Act and price discrimination that Federal-Mogul allegedly induced in violation of Section 2(f). The District Court dismissed the Section 2(c) claim and the Sixth Circuit affirmed. The plaintiff later dismissed the Section 2(a) claim after taking some discovery.

**FirstMerit Corporation**
$912 million stock-for-stock acquisition of Citizens Republic Bancorp, Inc., based in Michigan.

**FleetPride, Inc.**
Acquisition of the assets of Great Lakes Truck & Trailer.

**Fruehauf Trailer Corp.**
*Fuller v. Fruehauf*, (E.D. Mich. 1996)
Jones Day represented Fruehauf Trailer Corp. in a class action related to changes to retiree medical benefits brought by several thousand retirees. Fruehauf changed the retiree medical benefits for its salaried retirees. The case was terminated by Fruehauf's subsequent commencement of bankruptcy cases.

**General Motors Corporation**
Jones Day serves as primary outside labor counsel to General Motors on a variety of matters and served as special labor counsel to General Motors during its chapter 11 case.

**General Motors Corporation**
*General Motors v. UAW*, Proceeding before Umpire Roberts
Jones Day represented General Motors in the umpire proceeding to determine whether a strike at two GM Flint, Michigan facilities, which led to a nationwide shutdown of GM, violated the no-strike clause in the labor agreement and, if so, whether the UAW was liable for GM's losses as a result of the strike. After the hearing and briefing, but prior to the issuance of a decision, Jones Day resolved the case as part of a strike settlement.

## General Motors Corporation

General Motors retained Jones Day to negotiate a landmark class action settlement agreement with the United Auto Workers over retiree health care costs. The parties had been deadlocked over whether GM could unilaterally modify retiree health benefits. As a result of the settlement agreement negotiated by Jones Day, along with GM lawyers, GM will be able to reduce its $70 billion long-term retiree health care (OPEB) liability by $15 billion. On an annual basis, GM will save $3 billion in health care expense and $1 billion in cash. Negotiations with the UAW and Class Counsel covered myriad issues, including the financing and operations of a Voluntary Employee Beneficiary Association (VEBA) to mitigate the effects of the new monthly contributions and deductible payments on retirees; defining the class and protecting low income retirees; establishing dispute resolution procedures; and setting the legal standards for any future litigation between the parties. This settlement agreement has played a key part in GM's turnaround plan.

## General Motors Corporation

*Dana Corporation, Employer; International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO, Union; and Gary Smeltzer, Joseph Montage and Kenneth Gray, Charging Parties, 7-CA-46965,7-CB-14803,7-CA-47078,7-CB-14119.*

Jones Day represented companies as *amicus curiae* before the National Labor Relations Board concerning the right of employers to negotiate guidelines with the union that will apply in the event the union successfully organizes a non-represented facility.

## General Motors Corporation

*Garrish v. Int'l Union and General Motors Corp., 417 F.3d 590 (6th Cir. 2005)*

Jones Day represented General Motors Corporation in litigation alleging wrongful conduct by GM and the UAW with respect to negotiations arising out of GM Pontiac Truck bargaining and a subsequent strike. The district court granted summary judgment on statute of limitations grounds.

## General Motors LLC

Jones Day has advised General Motors LLC in connection with a transaction announced on June 1, 2012 to eliminate approximately $26 billion in GM balance sheet liability, which will result at closing in the largest single-employer plan termination and pension risk transfer in U.S. history. This continues the Firm's tradition of advising GM on ground-breaking employee benefits matters, including GM's creation of a retiree health VEBA trust.

The transaction involves the General Motors Retirement Program for Salaried Employees, under which approximately 118,000 former salaried GM employees currently receive pensions. This pension de-risking transaction involves three complex steps.

First, GM offers lump-sum pension buy-outs to approximately 42,000 of the 118,000 salaried pensioners. Second, active salaried employees and deferred vested employees are spun-off from the Retirement Program for Salaried Employees into a new pension plan. Finally, the Retirement Program for Salaried Employees is terminated, and Prudential Insurance Company of America issues a group annuity contract to assume the pension annuity payment responsibility to the pensioners, including those who do not accept a lump-sum pension payment. The group annuity contract – the largest in U.S. history – was issued on November 1, 2012, at which time the Plan transferred certain assets to Prudential, including a new contribution from GM to the Plan.

## General Motors LLC

*International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW v. General Motors LLC, Case No. 2:10-cv-11366-AC-MJH (E.D. Mich.)*

Jones Day represents General Motors LLC in connection with a lawsuit filed by the UAW in Michigan federal district court. The lawsuit seeks a $450 million payment from GM to a Voluntary Employees' Beneficiary Association (VEBA) established in connection with the bankruptcy sale of assets to satisfy obligations regarding the provision of post-employment medical benefits to UAW retirees. GM filed a motion with the United States Bankruptcy Court for the Southern District of New York to enforce the order approving, among other things, the sale of the debtors' assets and a related retiree settlement agreement between GM and the UAW, seeking to enjoin the Michigan lawsuit and to have the issue decided by the bankruptcy court. The bankruptcy court requested briefing with respect to its exclusive jurisdiction over the motion to enforce and whether it should abstain from exercising any such jurisdiction. The bankruptcy court agreed with GM that it had exclusive jurisdiction to resolve the dispute, but exercised its discretion to abstain in order to allow the proceedings to continue in Michigan federal district court.

**International Automotive Components Group North America, Inc.**

Formation of Reyes Automotive Group II, a joint venture with Reyes Holdings, LLP, which will supply injection and blow molded interior trim components and sequence and assembly services for the Toyota Tundra and Tacoma built at Toyota Motor Manufacturing, Texas, Inc. in San Antonio, Texas.

**Living Essentials**

*Innovation Ventures, LLC, d/b/a Living Essentials v. N.V.E., Inc.*, Case Nos. 10-2353, 10-2355 (6th Cir. 2012)

On behalf of Innovation Ventures, LLC (d/b/a Living Essentials), the manufacturer of 5-hour ENERGY, Jones Day recently prevailed in a significant Sixth Circuit appeal seeking to reverse a lower court's holding that a competing product, 6 Hour POWER, did not infringe the 5-hour ENERGY trademark.

**Merial Limited**

Sale of Igenity animal genomics business to Neogen Corporation, headquartered in Michigan.

**Metaldyne Corporation**

Jones Day advised Metaldyne Corporation, a leading designer and producer of engine, driveline, and chassis products, in the over-$400 million sale of Powertrain, Balance Shaft Module, Tubular Products, and Chassis assets to MD Investors Corporation, a new company formed by a coalition of existing term lenders led by The Carlyle Group and Solus Alternative Asset Management LP, via a section 363 sale in chapter 11.

**Metaldyne Corporation**

Jones Day represented Metaldyne Corporation – one of the top 50 North American auto parts suppliers with over $1 billion in sales – and its subsidiaries in an out-of-court tender offer transaction pursuant to which over $350 million in long term debt was extinguished. Although this transaction resolved certain of Metaldyne's financial problems, conditions in the automotive industry continued to worsen in late 2008 and early 2009. Accordingly, on May 27, 2009, Metaldyne Corporation and its subsidiaries filed chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York.

In connection with the filing, Jones Day assisted Metaldyne in negotiating a $20 million debtor in possession financing facility and a related accommodation agreement with Metaldyne's major customers (the Detroit 3 OEMs) and worked to implement first-day relief to stabilize Metaldyne's businesses in a highly volatile time for the industry.

**Micron Technology, Inc.**

*In re Energy Conversion Devices, Inc.*, Case No. 12-43166(TJT), (Bankr. E. D. Mich.)

Acquisition of a minority stake in Ovonyx, Inc. from Energy Conversion Devices, Inc., a chapter 11 debtor, pursuant to a transaction consummated under section 363 of the Bankruptcy Code.

**Parallel 2005 Equity Fund L.P.**

Acquisition of Superior Auto, Inc. and SAC Finance, Inc., companies engaged in the business of buying and selling vehicles in Michigan, Ohio, and Indiana

**Park-Ohio Industries, Inc.**

$97.5 million acquisition of Fluid Routing Solutions, Inc., a leading manufacturer of industrial hose products and fluid assemblies in Michigan.

**Procter & Gamble Company, The**

$2.7 billion sale of Pringles snack business to The Kellogg Company.

**Riverside Company, The**

Acquisition and related financing by portfolio company Specialized Medical Services, Inc. of Future Medical Home Health, Inc., a provider of rental respiratory equipment, liquid oxygen, and related services to skilled nursing facilities in 13 Midwestern and Southeastern states. The financing consisted of amendments to, and increases of, the portfolio company's existing senior secured asset-based revolving credit facility and senior secured second lien term loan facility.

**Viking Range Corporation**

*Whirlpool v. Larkin and Viking Range Corp.*, Case No. 1:07-CV-1241 (W.D. Mich.)

Defense of client and former Whirlpool executive in a lawsuit asserting claims of trade secret violations, breach of contract, breach of duty of loyalty and interference with contract.



**The W.W. Williams Company**

*Diamond International Trucks, Inc., et al. v. Detroit Diesel Corporation, et al.*, 2:05-CV-74930, and *Cumberland Truck Equipment Co., et al. v. Detroit Diesel Corp., et al.*, 2:05-CV-74594) (E.D. Mich.)

Jones Day represented co-defendant W.W. Williams Company in two antitrust class actions filed by plaintiff truck dealers against Detroit Diesel Corporation and its independent distributors in the United States District Court for the Eastern District of Michigan. The plaintiffs brought price-fixing and illegal boycott claims against defendants under Section 1 of the Sherman Act, requesting judgment against the defendants for three times the amount of damages sustained by the classes, the costs of the actions, and permanent injunctions. The claims against W.W. Williams were settled and the settlement was approved after hearing.

**Yazaki Corporation**

*In re Automotive Parts Antitrust Litigation*, MDL No. 2311 (E.D. Mich.)

Defense of consolidated antitrust class action litigation alleging that auto parts manufacturers violated antitrust laws by engaging in bid-rigging and price-fixing.

# Tab 5 — Significant Experience in Large and Complex Restructurings



- Business Restructuring & Reorganization Overview

- Awards and Recognition

- Out-of-Court Restructurings

- Chapter 11 Debtor Representations

- Municipal Restructuring, Monoline Insurer and Chapter 9 Representations

# Business Restructuring & Reorganization Overview

Jones Day's Business Restructuring & Reorganization team is one of the premier restructuring and reorganization practices in the world. The practice consists of more than 100 lawyers located in nearly all of the major U.S. and international financial hubs.

## Global Capabilities, Fast Response

Jones Day's global reach and international capabilities enable us to respond quickly and efficiently to any restructuring engagement within the U.S. or abroad. Our insolvency lawyers are intimately involved in workout transactions of all kinds, both in-court and out-of-court. With a presence in every major commercial center worldwide and a broad multidisciplinary team of complementary practices, we can readily deploy the skills and resources that any client requires to promote or safeguard its interests in any type of insolvency or restructuring proceeding.



Named as Bankruptcy Group of the Year by Law 360 in January 2013. Winners were recognized based on the significance, the size and complexity, and the number of deals the firms worked on or court decisions they won.

## Extensive Experience in All Facets of Restructuring

We have counseled clients from virtually every service and industry sector, as well as entities in the public sector, in:

- Chapter 11 Debtor Reorganizations or Liquidations
- Municipal Restructurings and Chapter 9 Municipal Bankruptcy
- Labor and Benefits Issues in Restructuring or Bankruptcy
- Distressed Mergers & Acquisitions (including tax analyses, structuring, and documentation)
- Bondholder Committees (representing official and unofficial committees and individual creditor members)
- Official Unsecured Creditors' Committees (negotiation and/or litigation strategies)
- Other Significant Creditor Representations
- Out-of-Court Restructurings
- Secured Lender Groups
- Sovereign Debt (representing sovereign nations and their creditors)
- Nonperforming Loan Portfolios (restructuring, disposition, and acquisition of nonperforming loan portfolios)
- Distressed Litigation
- Restructuring-Related Tax Matters



"A truly national practice … spread out among its New York, Chicago, Ohio, Dallas and California offices. [A]ttracts praise for managing expectations … and delivering a finished project that is top notch." 2012

This breadth of experience allows us to understand issues from a variety of perspectives and develop solutions to meet client needs.



## Deep Experience in Debtor Restructurings and Multi-Party Negotiations

As reflected in the attached deal lists, Jones Day has years of experience assisting large debtors to reorganize. The Firm has served as lead counsel in some of the largest and most complex restructuring matters in U.S. history. As a result, our lawyers are skilled in coordinating multi-party and multi-issue negotiations to achieve a successful result in the most complex and challenging situations. Jones Day's experience in large bankruptcy restructurings also spans a wide range of industry sectors, including the automotive, manufacturing, retail, telecommunications, finance, real estate, health care, energy, chemical, hospitality, and aviation, shipping, and other transportation sectors. In these matters, our professionals have navigated successfully virtually all of the issues that can arise in any complex case under chapter 11 of the Bankruptcy Code.

Jones Day further leverages this restructuring experience through the use of a multidisciplinary team of supporting practices in key areas, such as labor, benefits, public finance, mergers & acquisitions, tax, and litigation, among others. These supporting lawyers themselves are leading experts in addressing issues in their field in the restructuring context.

## Recognized Expertise in Key Issues

Jones Day restructuring lawyers have years of experience helping debtors address the fundamental issues that also are of importance to the City. For example, Jones Day has represented numerous restructuring clients – particularly in the industrial Midwest – where labor, pension, and OPEB issues were front and center. These matters include Chrysler, LTV Steel, Copperweld Steel, Metaldyne Corp., and most recently Hostess Brands, among many others. In the General Motors bankruptcy, Jones Day was special labor counsel, tasked with addressing the labor and related benefits issues critical to saving the company. In Kaiser Aluminum, Jones Day successfully defended its pension termination strategy up to the Third Circuit Court of Appeals.

The chapter 11 case of Dana Corporation offers a good example of Jones Day's success in addressing labor and benefit issues in bankruptcy. Jones Day assisted Dana in obtaining a series of settlements to eliminate an enormous accumulated liability for health and life insurance benefits for retirees from its unionized and nonunion workforces, and to modify its collective bargaining agreements with active employees, allowing Dana to compete in the troubled auto industry upon emergence from bankruptcy. This "Global Settlement" – which the bankruptcy court in New York called "groundbreaking" – resulted in the elimination of almost $1.5 billion in accumulated post-retirement benefit obligations, and the creation and funding of Voluntary Employee Benefit Association (VEBA) trusts to provide non-pension retiree benefits, a freezing of the current defined benefit pension plans (the savings from the labor contracts permitted freezing, rather than a wholesale termination of the pensions), institution of consumer-driven healthcare programs for active unionized employees with sharing of medical inflation costs, a competitive two-tier wage structure, elimination of liability for long-term disability benefits, elimination of cost of living increases, buy-outs of high-wage employees, cost-saving changes to work rules, and agreement on plant closings, work movement, and other manufacturing footprint changes. This settlement required Jones Day to bring together multiple parties with widely divergent points of view, and then to defend the settlement in court.

The labor settlement was only one aspect of a multifaceted restructuring approach for Dana that included fundamental changes in customer, vendor, and debtholder relationships, as well as substantial asset sales and a complex European restructuring. The successful worldwide restructuring of Dana Corporation, earned Jones Day the Turnaround Management Association's prestigious International

Turnaround Company of the Year award in 2008. The following year, Jones Day was recognized for its historic navigation of Chrysler LLC through its court-supervised sale pursuant to section 363 of the Bankruptcy Code under tight external deadlines – a transaction that won the Investment Dealers' Digest Deal of the Year award for 2009. *See* Tab 11 for a detailed description of Jones Day's work on the Chrysler case. Recently, Jones Day also won the Large Company Award for 2012 for the business turnaround of Harry & David, one of the largest suppliers of premium fresh fruit and gourmet food gifts in North America, which emerged from bankruptcy in less than six months with no long-term debt.

Jones Day also is among the most experienced firms in addressing swaps, derivatives, and other financial products in a restructuring or bankruptcy setting. In its role as special counsel to Lehman Brothers in its bankruptcy, Jones Day has successfully addressed, analyzed, resolved, or litigated numerous issues relating to financial products, like the swaps entered into by the City of Detroit. Through its litigation activities, Jones Day has been at the forefront of establishing precedent-setting law in this important area.

## Unique Chapter 9 Experience

Jones Day offers a unique set of skills and experience in chapter 9 matters. As reflected on the attached deal list, Jones Day has played a key role in numerous municipal restructurings and chapter 9 matters. Our representations of bondholders and credit insurers – for example in the chapter 9 cases of Jefferson County, Alabama and Stockton, California – give us a clear perspective on the approach that may be taken by creditors in any restructuring of the City.

More importantly, Jones Day lawyers have experience representing municipalities in chapter 9 cases, such as Desert Hot Springs, California and Orange County, California. The Orange County case – the largest municipal bankruptcy in U.S. history – in particular demonstrates Jones Day's unique capabilities. Unlike many chapter 9 cases that have languished or failed to achieve the key restructuring needs of the debtor, the Orange County case was a well organized, efficient, and successful case that brought the county back to a sound fiscal footing and an investment grade credit rating in 18 months. Lawyers now at Jones Day were instrumental in developing and implementing this successful strategy as lead counsel to Orange County. Jones Day offers a further unique perspective because the Department of Justice lawyer who represented approximately 100 federal agencies in the Orange County case is now a Jones Day partner as well. For a further description of the Orange County case, *see* Tab 12. In addition, Jones Day lawyers have studied municipal restructurings, have written extensively on chapter 9 topics and are among the most knowledgeable lawyers in this field. As a result, Jones Day is well positioned to develop and implement unique and cutting edge solutions in this often untested area of the law.

## An Approach to Negotiations / Implementing a Strategy

Jones Day works closely with its clients to understand their needs and develop solutions and strategic alternatives. Jones Day does not believe in a one-size-fits-all approach. Nevertheless, the following is an example of Jones Day's general approach to complex restructuring matters that could be employed on behalf of the City of Detroit.

- ▪ ***Develop a Comprehensive Restructuring Strategy.*** A comprehensive set of goals and initiatives should be set at the outset of the engagement to serve as a guide to the restructuring process. This typically involves a coordinated effort of the client (*i.e.*, the City), all of its advisors and sometimes other key stakeholders. Notably, Jones Day is familiar with the City's other financial and legal advisors and – based on experiences in other engagements – is confident that it can work well with

them on a collaborative process. Ultimately, a strategy and alternatives can be developed based on this initial assessment to ensure that the restructuring efforts are focused on achieving the fundamental changes needed.

- **Communicate Openly.** Our general philosophy is to attempt to maintain open and cordial working relationships with all parties, including the parties' professional advisors, throughout the restructuring process, *although it frequently will be necessary to take firm positions and communicate unwelcome messages.*

- **Carefully Coordinated Negotiations With Restructuring Partners, Major Creditors and Other Stakeholders.** As the restructuring progresses, Jones Day generally encourages debtor clients to maintain open lines of communication with major constituencies, including, in this case, unions, bondholders, employees, and residents, as well as the media, apprising them of all major developments regarding the status of restructuring efforts. To this end, negotiations must be carefully coordinated with major stakeholders to ensure that they are consistent in their approach to the overall restructuring. Throughout the restructuring process, City officials likely will need to cooperate with and solicit assistance from outside parties (*e.g.*, the State of Michigan) with vested interests in the City's ability to successfully restructure.

- **The Bankruptcy Alternative.** An out-of-court solution often is the preferred path for a restructuring and all out-of-court restructuring options for the City should be explored. Nevertheless, it may prove that, despite all efforts, the City of Detroit determines that the best course is to pursue an in-court option to achieve its goals. As part of the planning process – and to assess the progress being made – *the City will need to understand thoroughly how unions, bondholders, insurers, employees, and other key constituencies would be treated if a chapter 9 case were to be commenced.* Understanding the impact, risks, and opportunities afforded by a chapter 9 proceeding on all stakeholders will be a critical aspect of assessing the City's restructuring activities out of court. Given its breadth of relevant experience, Jones Day is well suited to advise the City on these matters and to chart the best available path either to avoid or utilize chapter 9 – whichever makes the most sense to achieve the City's overall restructuring goals.

# Awards and Recognition

## LAW 360

- Named as Bankruptcy Group of the Year by Law 360 in January 2013.

## LEGAL 500

- Eight lawyers are recommended in Legal 500 (US) 2012 editorial -- two on the elite "leading lawyers" list; Philip Hoser named a "Leading Individual" in the field of Restructuring & Insolvency; Yuichiro Mori was "Recommended" in the field of Dispute Resolution by *Legal 500 Asia Pacific* – 2012.

- Volker Kammel recommended by Legal 500 EMEA in 2011 and 2012.

- Paul Leake, Heather Lennox, Richard Wynne and Carl Black all recommended for Corporate Restructuring; Corinne Ball named a "Leading Lawyer," for Corporate Restructuring – 2011.

- Paul Leake named one of 13 "Leading Lawyers" nationally for Corporate Restructuring; David Heiman, Corinne Ball, Richard Engman, Charles Oellermann and Matthew Kairis recommended for Corporate Restructuring – 2010.

## WHO'S WHO

- Seven partners named to *Who's Who Legal* with Corinne Ball being named one of the "Most Highly Regarded Individuals" – 2012 edition.

- Five partners were named in *Who's Who Legal* – 2011 edition.

- Seven partners named to *The International Who's Who Of Insolvency & Restructuring Lawyers* – 2010.

## TURNAROUND MANAGEMENT ASSOCIATION

- Lisa Laukitis was included among the "Outstanding Young Restructuring Lawyers" for 2011 by *Turnarounds & Workouts*.

- Selected Jones Day's representation of the Dana Corporation's restructuring as the 2008 "most successful turnaround of an international company".

- Jones Day's representation of Harry & David was given the Turnaround of the Year: Large Company Award for 2012.

## THE M&A ADVISOR

- Amy Ferber winner of 40 UNDER 40 M&A Advisor Recognition Awards – 2012.

## CHAMBERS & PARTNERS

- *Chambers UK* recommended Sion Richards and Michael Rustein (London) as leading individuals in field of Restructuring & Insolvency – 2013, the London office was ranked in same field; *Chambers Europe* recommends the following as Leaders in their Field: Volker Kammel (Germany), Sion Richards (London) and Laurent Assaya (France) – 2011-2012. The Practice was also ranked in France and the United Kingdom for 2011 and 2012.

- *Chambers USA* ranked the Practice nationally and in California, Illinois, New York, Ohio and Texas 2010 – 2012; Corinne Ball and Bruce Bennett received top-tier recognition at the national level – 2012; the Practice was nominated for the *Chambers USA* Awards for Excellence – 2010 and 2011; David Heiman was given a "Star" ranking; 21 lawyers recognized – 2012.

- Philip Hoser recognized by *Chambers Asia* as one of the finest attorneys in the practice area in 2011-2013.

- The 2013 edition of Chambers Global recommends 14 lawyers as Leaders in their Field for Dispute Resolution, Restructuring / Insolvency or Bankruptcy / Restructuring. In 2011 and 2012, Chambers Global recommended nine lawyers as Leaders in their Field in the same areas around the world. The practice was also recognized globally 2011 - 2013.

## INTERNATIONAL FINANCIAL LAW REVIEW 1000

- David Heiman was designated as a "leading lawyer" in the field of "restructuring and insolvency" – 2012.

## INVESTMENT DEALERS' DIGEST

- Chrysler-Fiat transaction wins *Investment Dealers' Digest*'s M&A Deal of the Year award – 2010.

## K&A RESTRUCTURING REGISTER

- Paul Leake, Corinne Ball, David Heiman and Richard Wynne named to the Top 100 list of Restructuring Attorneys in America for 2010 and 2011.

## LAWDRAGON 500

- Corinne Ball listed among the best lawyers of 2011-2012 in the field of Bankruptcy; *Lawdragon 500* selected two partners as leading lawyers in America to their 2010 edition.

## GEORGIA TREND

- *Georgia Trend* named partner Jeff Ellman among their Legal Elite in 2010, 2011 and 2012.

### D MAGAZINE

- Gregory Gordon was recognized as being among D magazine's "Best Lawyers."

### SUPER LAWYERS

- 2012 Business Edition features 15 restructuring lawyers across nation; Ohio recognized as one of the Top Law Firms for Business & Transactions.

- Corinne Ball recognized as one of the *Top 50 Women Attorneys In The New York Metro Area* – 2012.

- Brad Erens and Mark Cody included on the list of *Illinois Super Lawyers* for 2012; Joseph Tiller designated a "Rising Star"; Brad Erens named in 2011.

- Dan Prieto designated a "Rising Star" in *Texas Super Lawyers* for 2012.

- David Heiman, Heather Lennox, and Charles Oellermann selected as *Ohio Super Lawyers* for 2011-2012; David Heiman also selected as a Top 50 Cleveland Area Super Lawyer 2012 and Top 100 Ohio Super Lawyers 2012; Heather Lennox listed among "Top 50 Women Ohio Super Lawyers 2010-2012" by *Super Lawyers* magazine; Tom Wilson and Chris Healey each designated a "Rising Star" in *Ohio Super Lawyers* for 2012.

- Jeff Ellman and Aldo LaFiandra selected for inclusion on the 2011 and 2012 *Georgia Super Lawyers* list.

- Paul Leake, Corinne Ball, Robert Profusek, Steven Bennett and John Cornell were recognized as 2011 *New York Super Lawyers*.

- Gregory Gordon named 2011 *Texas Super Lawyer*; Daniel Prieto named 2011 *Rising Star* in Texas.

- Susan Siebert recognized as 2011 *Massachusetts Super Lawyer*.

- In the 2012 issue of *California Super Lawyers*, Bruce Bennett, James Johnston, Sidney Levinson, Bennett Spiegel and Richard Wynne were recognized as Super Lawyers while Joshua Mester, Erin Brady, Lori Sinanyan, and Michael Schneidereit were recognized as Rising Stars. Richard Wynne, Bennett Spiegel and Peter Benvenutti were recognized in the 2011 issue.

- Eleven partners were chosen for the 2010 *Super Lawyers* – Corporate Counsel Edition; nine partners selected in the field of Bankruptcy & Creditor/Debtor Rights; two associates named as "Rising Stars".

### BEST LAWYERS

- Restructuring Practice received a "National Tier 1" designation in the 2011-13 editions of *U.S. News & World Report* and *Best Lawyers*® "Best Law Firms" in the field of Bankruptcy and Creditor Debtor Rights/Insolvency and Reorganization Law.

- Ten partners listed in the 2012 edition of *Best Lawyers* in the field of Bankruptcy and Creditor Debtor Rights Law; four partners listed in the field of Bankruptcy and one partner listed for Equipment Finance Law.

- Ten partners across the nation recognized by *Best Lawyers* 2011; Peter Benvenutti named as one of the "Lawyers of the Year" for 2011; David Heiman named as one of Cleveland's "Lawyers of the Year" for 2010; nine partners recognized in the 2010 edition.

### EXPERT GUIDES

- Eight of our partners from around the world have been chosen as leading business lawyers for the 9th Edition of *Expert Guides* – 2010

### THE AMERICAN LAWYER

- *The American Lawyer* named Corinne Ball to its annual list of Dealmakers for 2009 and 2010 citing her work in the Financial Guaranty Insurance Corp. and Chrysler cases.

- Recognition of Jones Day as one of "bankruptcy's big four."

### PLC WHICH LAWYER?

- The 2012 edition of PLC Cross-border Restructuring and Insolvency multi-jurisdictional guide has recommended Paul Leake, Corinne Ball, Peter Benvenutti, Tobias Keller, David Heiman and Brad Erens.

- Paul Leake, Corinne Ball, David Heiman, Brad Erens, Philip Hoser, Volker Kammel, Richard Wynne, Peter Benvenutti, and Tobias Keller were designated as either leading, recommended, or highly recommended in the Restructuring and Insolvency category in *Practical Law Company's Which lawyer?* 2011.

### The BTI CONSULTING GROUP — CLIENT SERVICE ALL-STARS

- David Heiman is one of eleven Jones Day lawyers chosen by clients as "Client Service All-Stars" BTI Consulting Group's 2011 survey. The survey identifies lawyers who possess the rare combination of outstanding legal skills, practical business knowledge, extraordinary attention to client needs, and noteworthy responsiveness. No other firm boasts as many "All-Stars" in the annual survey.

JONES DAY®

# Out-Of-Court Restructurings

A bankruptcy filing is only one of several possible alternatives available to an entity in financial distress. In many cases, a workout, either as a stand-alone restructuring or in tandem with a later bankruptcy filing, better serves the best interests of all parties concerned, whether they are debtors or creditors. We represent all of these constituencies in connection with out-of-court restructurings both in the U.S. and around the world.

**AZ Automotive**
Representation of Michigan automotive supplier regarding out-of-court restructuring.

**CIESA and Gas Argentino S.A. Noteholder Steering Committee**
Representation of steering committee in out-of-court debt-to-equity conversions of both CIESA and Gas Argentino S.A.

**Cleveland Unlimited, Inc.**
Represented $200 million local wireless communications provider in an out-of-court workout of $150 million in bond debt.

**Dana Credit Corporation**
Representation of financing arm of Dana Corporation in connection with its out-of-court restructuring of bond indebtedness in excess of $250 million.

**Doskocil Manufacturing**
Representation of manufacturer of plastic pet products, carriers, and cases in $200 million restructuring of bank and bond debt.

**El Paso Corporation**
Representation of company in out-of-court restructuring by which the company obtained a new $3 billion revolving credit facility and the restructuring of eight existing financings aggregating to almost $2 billion with shared collateral and intercreditor arrangements.

**Examination Management Services, Inc.**
Representation of company and its affiliates in connection with its $120 million out-of-court restructuring.

**F&P GmbH Beteiligungsgesellschaf**
Representation of client in the out-of-court restructuring of Pluralis AG, a subsidiary of client.

**Financial Guaranty Insurance Company ("FGIC")**
Representation of the third largest monoline insurer in its voluntary $5 billion solvent restructuring, review of its transactions and otherwise assist in its loss mitigation strategies to address significant losses occasioned by the precipitous decline in the sub-prime mortgage market.

**FLYi, Inc./Independence Air**
Representation of independent low-cost airline serving 42 destinations in the United States in out-of-court restructuring.

**Georgia Gulf Corporation**
Assisted Georgia Gulf Corporation in obtaining amendment to senior secured credit agreement, and its pending exchange offer to exchange $800 million of its senior and subordinated unsecured notes for new secured second lien notes and shares of common stock.

**Global Village Telecom Noteholder Steering Committee**
Representation of steering committee in out-of-court restructuring of Global Village Telecom.

**Goodyear**
Representation of Goodyear Corp. in connection with its out-of-court restructuring of its labor and related agreements with the United Auto Workers labor union.

**Hagemeyer N.V.**
Representation of Dutch company specializing in the business-to-business market in connection with the out-of-court restructuring of its German subsidiaries.

**Hollywood Tans**
Representation of the largest U.S. chain of tanning salons in its out-of-court restructuring.

**Interep**
Representation of nation's largest independent sales and marketing company specializing in radio, the internet, television, and other media in connection with its pre-negotiated plan of reorganization in excess of $100 million of unsecured notes.

**International Textile Group**
Representation of WL Ross portfolio company, International Textile Group, in connection with its out-of court restructuring of three different series of debt.

**Metaldyne Corporation**
Representation of one of the top 50 North American auto parts suppliers with over $1 billion in sales and its subsidiaries in an out-of-court tender offer transaction pursuant to which over $350 million in long term debt was extinguished.

**Norwood Promotional Products, Inc.**
Representation of promotional products company in out-of-court restructuring involving more than $800 million of debt.

**Oceans Casino Cruises, Inc.**
Representation of largest offshore gaming operation in the U.S. in the restructuring of a $60 million loan.

**ProQuest Corporation**
Representation of company and its subsidiaries in connection with its $530 million out-of-court restructuring.

**Reichhold Inc.**
Representation of multinational corporation providing advanced polymers and polymer systems in connection with its restructuring.

**Renaissance Technologies, Inc.**
Representation of client as counterparty in derivative transactions with European banks.

**Tarragon Corporation**
Representation of client in its successful efforts to resolve liquidity issues occasioned by, among other things, the difficulties in the markets for sub-prime and prime mortgages and to reinstate over $1 billion of secured debt that had been in payment default as a consequence thereof.

JONES DAY®

-40-

# Chapter 11 Debtor Representations

Our substantial experience and knowledge in counseling debtors in possession under the Bankruptcy Code positions our professionals to navigate successfully the rigors of any complex bankruptcy proceeding. Jones Day's lawyers have helped clients in a wide range of industry sectors, including manufacturing, retail, telecommunications, finance, real estate, health care, and transportation.

**AFA Foods, Inc.**
Representation of one of the largest beef processing companies, with annual sales of nearly $1 billion, in its chapter 11 cases.

**Amfac Hawaii LLC**
Chapter 11 cases filed by Hawaiian real estate affiliate of JMB Realty involving more than $300 million in institutional debt.

**Arctic Glacier Inc.**
Jones Day represents Arctic Glacier International, Inc. and its affiliates as U.S. counsel in their reorganization proceedings under Canada's Companies' Creditors Arrangement Act and in their chapter 15 recognition proceedings in the United States Bankruptcy Court for the District of Delaware.

**Black Diamond Mining Company**
Representation of coal company with over $200 million in debt in chapter 11 case.

**Borden Chemicals and Plastics Operating Limited Partnership and BCP Finance Corporation**
$370 million chapter 11 reorganization of fifth-largest domestic producer of PVC resin.

**Bowater Inc.**
Represented client, a part of the world's largest producer of newsprint, as conflicts counsel in its chapter 11 case.

**Boscov's, Inc.**
Reorganization of the nation's largest privately-held full service department store chain, with 50 store locations across six states in the Mid-Atlantic region generating approximately $1.3 billion in sales on an annual basis.

**Burlington Industries, Inc.**
$1.1 billion chapter 11 reorganization of one of the world's largest and most diversified manufacturers of fabrics and other textile products for apparel and interior furnishings.

**Chrysler LLC**
Representation of client as restructuring counsel in a strategic alliance with Italian automaker, Fiat SpA, as well as in obtaining financing from the U.S. Department of Treasury to allow client to operate in chapter 11 and closing the sale transaction.

**Clothestime, Inc.**
Reorganization of women's clothing retailer with $350 million in annual prepetition sales.

**CSC Industries, Inc. and Copperweld Steel Company**
$240 million chapter 11 reorganization of carbon and alloy specialty steel bar manufacturer and parent holding company.

**CTC Communications Group, Inc.**
$400 million chapter 11 case filed by East Coast provider of broadband voice, data, Internet, and video services.

**Dana Corporation**
Representation of tier one auto supplier with reported assets and liabilities of $7.9 billion and $6.8 billion, respectively, in its chapter 11 case. On January 31, 2008, less than two years after the institution of their bankruptcy cases, Dana and its affiliated debtor companies became one of the first large manufacturing entities with fully funded exit financing to emerge from chapter 11 under the recently revised Bankruptcy Code. Having achieved nearly half a billion dollars in annual cost savings, rationalized its global business structure, resolved

approximately $3 billion in unsecured claims, and secured $2 billion in exit financing, Dana emerged from bankruptcy protection well-positioned to compete vigorously in the global automotive supply market.

As primary debtors' counsel, Jones Day was a key contributor to Dana's remarkable achievement. Jones Day's restructuring professionals understood the necessity of conceiving, implementing, and executing a comprehensive strategy for the sprawling, global restructuring ahead - a strategy designed to be achieved in discrete segments, yet consistently focused on the reorganization of the whole enterprise and the ultimate endgame of confirmation and fully funded emergence from chapter 11. The foundation of this strategy was the identification of parties that had a vested interest in Dana's continued survival and success. Core constituencies, such as Dana's customers (which require a viable tier-one supplier of automotive drivetrains), its suppliers (many of which depended on the business they transacted with Dana for survival), and, especially, its largely unionized workforce, immediately presented themselves as potential negotiating counterparties and, ultimately, sources of savings for Dana. Jones Day and Dana defined what concessions would be necessary to emerge from chapter 11 as a healthy competitor in the automotive parts industry and then set about achieving that goal - developing a staged plan to approach, in turn, Dana's suppliers, its customers and, finally, its unions, emphasizing the shared sacrifice necessary to produce the long-term benefits desired by all parties. After obtaining such concessions and establishing a viable business profile, Dana would be able to approach its financial constituencies, as well as potential new investors, to craft and fully fund a plan of reorganization premised upon the already committed contributions of its customers, vendors, and workforce. Emphasizing collaboration with Dana's primary stakeholder constituencies and exhibiting a willingness to pursue and embrace innovative solutions to Dana's problems, Jones Day charted and navigated a strategic course for Dana's reorganization of its domestic operations and, concurrently, a realignment of its overseas operations, including a Company Voluntary Arrangement of Dana's U.K. subsidiaries and the development of a groundbreaking pan-European financing facility.

Given the troubles experienced by other tier-one automotive suppliers in chapter 11, Dana's simply emerging from chapter 11 likely would have been considered a success. That Dana emerged from bankruptcy with $2 billion in committed financing, a successfully rationalized corporate structure, a deleveraged cost structure, and new union agreements in place - all achieved within the new and substantially abbreviated deadlines imposed by the revised Bankruptcy Code - is nothing short of remarkable. This transaction was named "Deal of the Year" by the Turnaround Management Association in 2008.

**Elder-Beerman Stores Corp.**
$300 million reorganization of regional full-line retailer and related specialty retailers.

**Federated Department Stores, Inc., Allied Stores Corporation, and 65 affiliated corporations, including Bloomingdale's, Inc.; The Bon, Inc.; Burdine's Inc.; Jordan Marsh Stores Corporation; Rich's Inc.; and Stern's, Inc.**
Second-largest chapter 11 case in history at the time; involved $9.6 billion in assets and asserted claims in excess of $60 billion.

**FLYi Inc./Independence Air**
Representation of independent low-cost airline in its chapter 11 cases with more than $450 million in debt.

**Franciscan Communities St. Mary of the Woods**
Representation of client, a not-for-profit continuing care retirement community, in its chapter 11 case.

**General Motors Corporation**
Jones Day served as special labor counsel to General Motors during its chapter 11 case, responsible for negotiating labor contracts and related issues.

**Globalstar L.P.**
$3.4 billion chapter 11 case involving operator of worldwide, low-earth-orbit satellite-based digital telecommunications system.

**Great American Communications Company**
$900 million prepackaged chapter 11 case; completed in 32 days.

**Harry & David Holdings, Inc.**
Representation of client, a provider of fruit baskets and other gifts, along with its affiliates in a pre-arranged chapter 11 plan which includes a $55 million rights offering and corresponding backstop commitment from the *ad hoc* committee. This representation won the 2012 Large Company Turnaround of the Year award from the Turnaround Management Association.

**Hostess Brands, Inc.**
Representation of client, a wholesale baker and distributor of bakery products, in its chapter 11 case involving more than $800 million in secured debt and involving significant labor and pension issues.

**HQ Global Holdings, Inc.**
$500 million chapter 11 restructuring, and subsequent sale, of one of North America's largest providers of office workspace solutions.

**Imperial Home Decor Group Inc.**
$550 million chapter 11 debt restructuring of world's largest manufacturer and distributor of wall coverings and related home décor products.

**Interep National Radio Sales**
Chapter 11 reorganization of nation's largest independent advertising sales and marketing company specializing in radio, the Internet, television, and complementary media with approximately $120 million in debt.

**James River Coal Corporation**
Restructuring of coal producer operating multiple mines in Kentucky.

**Kaiser Aluminum Corporation**
Chapter 11 reorganization of North America's third-largest aluminum producer, with $3.3 billion in assets and $3.1 billion in debt.

**Laidlaw Inc.**
$4.8 billion prenegotiated chapter 11 reorganization of international conglomerate providing student transportation, intercity, and municipal busing, and ambulance and emergency department management services.

**Lehman Brothers Holdings Inc.**
Served as special counsel investigating events relating to Lehman's historic sale of substantial assets to Barclays Capital Inc. and moving for relief from the order approving sale. Jones Day also assisted with disputes relating to various derivative and structured products transactions.

**Levitz Home Furnishings Inc.**
Chapter 11 cases involving one of the nation's leading specialty furniture retailers, with more than $430 million in total debt.

**Loewen Group International, Inc.**
Largest number of consolidated chapter 11 cases in history; $4 billion debt restructuring of second-largest operator of funeral homes and cemeteries in North America.

**LTV Steel Company, Inc.**
$5 billion chapter 11 restructuring of the leading domestic producer of integrated steel; the largest producer of mechanical and structural steel tubing products in North America; the world's largest producer of bimetallic wire products; and one of North America's largest manufacturers of pre-engineered metal building systems.

**Metaldyne Corporation**
Chapter 11 asset sale of one of the largest auto parts suppliers in the world, with over $1 billion in annual sales, based in Michigan.

**Montgomery Ward Holding Corp.**
First chapter 11 cases of nationwide chain of department stores and specialty retailers, involving more than $5 billion in liabilities.

**Napster Inc.**
Chapter 11 cases filed by the popular Internet music service provider that, at its peak, had active membership exceeding that of AOL, with 91 million users.

**National Century Financial Enterprises, Inc.**
Representation of largest provider of health-care accounts receivable financing in chapter 11 case involving more than $3 billion in debt.

**National Farm Finance Corporation**
Representation of chapter 11 trustee in restructuring of holding company of California insurer with $40 million in debt.

**NationsRent Inc.**
$1.2 billion chapter 11 reorganization of company that rents a comprehensive line of construction equipment to contractors and sells new and used equipment and parts.

**NexPak Corp.**
$200 million prenegotiated chapter 11 case completed in approximately five months involving Ohio-based plastics packager and debt-for-equity swap.

**Oglebay Norton Company**
$560 million prearranged chapter 11 reorganization cases of conglomerate of companies that mine, process, transport, and market industrial minerals and aggregates.

**Osyka Corporation**
Representation of chapter 11 debtor on general corporate and oil and gas matters and, where necessary, assisted general bankruptcy counsel with restructuring matters.

**Panda Hereford Ethanol**
Representation of a manure fueled ethanol production facility with approximately $100 million in debt.

**Performance Transportation Services**
Representation of second largest hauler of new vehicles to dealerships in their chapter 11 cases to restructure over $185 million in secured debt.

**Pillowtex Corporation**
$1.4 billion chapter 11 restructuring of one of North America's largest designers, manufacturers, and marketers of home textile products.

**Plant Insulation Company**
Representation of client, an industrial insulation products and installation company, with approximately $1 billion in asbestos liability.

**PLVTZ Inc.**
Representation of leading specialty retailer of furniture, bedding and home furnishings in the U.S. in the liquidation of its assets.

**Proliance International, Inc.**
Jones Day represented Proliance as chapter 11 counsel; effectuating the successful sale of its North American business pursuant to section 363 of the Bankruptcy Code.

**Purina Mills, Inc.**
$750 million chapter 11 debt restructuring of largest animal feed manufacturer in the United States.

**Slater Steel U.S., Inc.**
$100 million chapter 11 case filed by manufacturer and marketer of steel products in conjunction with Canadian restructuring.

**Spansion Japan Limited**
Assisted client in its chapter 15 case by obtaining recognition of its Japanese corporate reorganization proceedings and staying the initiation and continuation of certain actions commenced against Spansion Japan within the United States, including litigation initiated by Samsung Corporation before the United States International Trade Commission.

**Trans World Airlines, Inc.**
First chapter 11 case for TWA; $4 billion case resulting in employee and creditor ownership of airline.

**USG Corporation**
Two chapter 11 cases involving Fortune 500 building materials manufacturer and distributor; first case was largest prepackaged chapter 11 case in history at the time and was completed in 37 days; second chapter 11 case involved $3.8 billion restructuring of company whose primary subsidiary faced approximately 100,000 asbestos personal-injury claims.

**Washington Group International, Inc.  (formerly known as Morrison Knudsen Corp.)**
Prepackaged chapter 11 case of largest contracting company in North America.

**WHX Corporation**
Representation of holding company of diverse group of businesses in its prearranged chapter 11 cases with $350 million in debt and $400 million in assets.

**Williams Communications Group, Inc. and subsidiary CG Austria, Inc.**
$5 billion chapter 11 reorganization of parent of company that operates worldwide next-generation fiber-optic broadband network; company emerged from bankruptcy with confirmed plan of reorganization less than six months after chapter 11 filing.

**World Kitchen, Inc.**
Chapter 11 cases involving more than $1 billion in liabilities and one of the world's leading developers, manufacturers, marketers, and distributors of household products.

**XO Communications, Inc.**
Represented client as special counsel in its chapter 11 case filed by a leading broadband communications service provider offering a complete set of communications services, including local and long-distance voice, internet access, virtual private networking, ethernet, wavelength, web hosting, and integrated voice and data services.

# Municipal Restructuring, Monoline Insurer and Chapter 9 Representations

Jones Day is uniquely qualified to assist clients in municipal bankruptcy matters, including in proceedings under chapter 9 of the Bankruptcy Code. Jones Day has experience on behalf of debtors, bondholders and credit insurers in municipal restructuring matters.

### Orange County, California
Jones Day lawyers were lead counsel to Orange County, California in connection with its chapter 9 debt adjustment case – the largest chapter 9 case ever at that time. The matter involved a $1.7 billion loss suffered by the County's investment pool and the restructuring of more than $9 billion in debt. Litigation to recover losses suffered by the investment pools resulted in recoveries of approximately $871 million in litigation claims, involving matters of securities, bankruptcy, commercial fraud, municipal government, and professional malpractice law. The County's plan of adjustment resulted in the payment or restructuring of approximately $10 billion in indebtedness. In addition, the County's debt rating returned to investment grade within 18 months after completing the chapter 9 case – ascending from a rating of D ("default") to AA. The Orange County case provides a model for a successful chapter 9 process (*see* additional description at Tab 12).

### Desert Hot Springs, California
Jones Day lawyers represented the City of Desert Hot Springs, the first California city to successfully reorganize under chapter 9. The case ultimately confirmed a consensual plan of adjustment that paid creditors in full.

### Financial Guaranty Insurance Company (FGIC) / U.S. Public Finance
Jones Day advised FGIC, a leading national monoline financial guaranty assurance company, in a transaction in which MBIA reinsured FGIC's risk under financial guaranty policies covering $166 billion in par of public finance obligations. This reinsurance transaction was one of the largest and most notable reinsurance transactions in history and is, in many ways, unprecedented.

### Financial Guaranty Insurance Company (FGIC) / ResCap
Representation of client in its capacity as co-chair of the official committee of unsecured creditors and as one of the largest creditors in the Residential Capital LLC chapter 11 bankruptcy, with a claim in excess of $1 billion.

### Financial Guaranty Insurance Company (FGIC) / Subprime Portfolio
Representation of the third largest monoline insurer in its voluntary $5 billion solvent restructuring, review of its transactions and otherwise assist in its loss mitigation strategies to address significant losses occasioned by the precipitous decline in the sub-prime mortgage market.

### Franklin Resources / Stockton, California
Jones Day currently represents Franklin Resources as a substantial bondholder in the pending chapter 9 case for the City of Stockton, California (currently the largest California city bankruptcy). Franklin is the sole holder of the $35,080,000 Stockton Public Financing Authority Lease Revenue Bonds, 2009 Series A (Capital Improvement Projects), which are the only uninsured bonds and notes that the City seeks to impair in its chapter 9 proceeding. Franklin is actively involved in litigation over the City's eligibility to be a chapter 9 debtor and in negotiations regarding the City's proposed plan of adjustment. Issues regarding the treatment and impairment of the City's unfunded pension liabilities are at the forefront of the case.

### MBIA Insurance Corporation / Monterrey Toll Road
Representation of client regarding its debt exposure of more than $210 million related to the Monterrey-Cadereyta toll road in Mexico.

### MBIA Insurance Corporation / Taylor Bean
Representation of client's interest as a creditor of Taylor Bean & Whitaker Mortgage Corp., the 12th largest mortgage lender at the time of its chapter 11 filing.

**MBIA Insurance Corporation / Forum Health**
Representation of client as secured creditor in the chapter 11 cases of Forum Health, a regional health care system, with over $160 million in debt.

**MBIA Insurance Corporation / Asian Art Museum**
Representation of MBIA Insurance Corporation, National Public Finance Guarantee Corporation and Optinuity Alliance Resources Corporation in the out-of-court restructuring of the variable rate revenue bonds, Series 2005 of the Asian Art Museum Foundation of San Francisco. With Jones Day's help, MBIA successfully negotiated a standstill agreement and an eventual restructuring including an unprecedented guarantee of the Asian Art Museum Foundation's debt, allowing MBIA to exit the transaction.

**MBIA Insurance Corporation / American Business Financial Services**
Representation of MBIA as a contingent creditor in the American Business Financial Services chapter 11 cases, a subprime mortgage finance company

**National Public Finance Guarantee Corporation / Harris County Houston Sports Authority**
Jones Day represents National Public Finance Guarantee Corporation in its capacity as bond insurer relating to over $900 million in municipal bond debt. The bond debt was issued by the Harris County Houston Sports Authority. The proceeds of these bonds were used to construct the stadiums for the Houston Texans, Houston Astros and Houston Rockets. The primary collateral is tax revenues generated by two sources: hotel occupancy taxes and motor vehicle rental taxes. Jones Day is actively negotiating a restructuring of the bonds.

**National Public Finance Guarantee Corporation / Jefferson County, Alabama**
Jones Day represents National Public Finance Guarantee Corporation as a substantial warrant holder in the pending chapter 9 case for Jefferson County, Alabama (now the largest municipal bankruptcy). National insures: (a) $94,000,000 in original aggregate principal amount of General Obligation Capital Improvement and Refunding Warrants, Series 2003-A and (b) $51,020,000 in original aggregate principal amount of General Obligation Capital Improvement Warrants, Series 2004-A. With approximately $95 million outstanding, these warrants represent just under 50 percent of the total amount of the County's outstanding general obligation warrants. Jones Day is assisting National in all aspects of the Jefferson County chapter 9 case, including assessing risk and litigation strategies and negotiating any proposed plan of adjustment.

JONES DAY

# Tab 6 — Significant Municipal Finance, Infrastructure, and Public Sector Experience



- Municipal Finance
  - Overview
  - Representative Municipal Finance Engagements
- Global Infrastructure
  - Overview
  - Jones Day and The Ohio State University Parking Deal
  - Select Global Infrastructure Representative Transactions
- Other Domestic Governmental Entity Representations

# Municipal Finance

Jones Day's lawyers regularly represent borrowers, investment and commercial banks, bond insurers and other credit enhancers, swap and other derivative providers, bond trustees, bond issuers, and financial advisors involved in municipal financings. We believe that our years of experience with the numerous and intricate ramifications of finance for the future operations of a municipality have helped us become one of the most knowledgeable and versatile municipal finance practices in the nation.

We have completed transactions in almost every state, including Michigan. These financings involve a wide variety of transaction structures, including multimodal debt documentation, imbedded derivatives, forward commitments, swaps, swaptions, FHA and GNMA credit enhancement, and pooled financings, as well as the complex tax issues presented by such structures.

Jones Day has served as bond counsel, underwriters' counsel, borrower's counsel, and special tax counsel on a wide range of bond types, including:

- Transportation
- IDA Financings
- 501 (c)(3)
- Health Care
- Revenue Bonds
- Exempt Facility
- Housing
- Governmental
- Small Issue
- Off Balance Sheet
- Conduit
- General Obligations
- Loans
- Leases

Our lawyers have broad experience with the full range of bond structures, including:

- Fixed Rate
- Index Bonds
- Variable Rate
- Multi Modal
- Auction Mode

## Relevant Experience

- **Financial Guaranty Insurance Company**
  Jones Day advised Financial Guaranty Insurance Company (FGIC), a leading national mono-line financial guaranty assurance company, in a transaction in which MBIA Insurance Corporation (MBIA), a subsidiary of MBIA Inc. and another leading national mono-line financial guaranty assurance company, reinsured FGIC's risk under financial guaranty policies covering $166 billion in par of public finance obligations. This reinsurance transaction was one of the largest and most notable reinsurance transactions in history; in many ways an unprecedented transaction.

- **Major Market Funds**
  Representation of several major market funds in connection with policy and strategy for distressed municipal investments and potential chapter 9 filings.

- Reset Bonds
- Tender Option Bonds
- Stepped Coupon Bonds
- Index Bonds
- CABS
- VRDBs
- Derivatives
- Credit Enhanced Bonds

Financings include complex transactions involving project finance bonds, current refundings, advance refundings, reissuances, derivative structures, and reimbursement bonds.

Jones Day lawyers have a sophisticated understanding and a sensitivity to the requirements and expectations of all parties to a financing transaction. Our Banking & Finance Practice works closely and is fully integrated with our Mergers & Acquisitions, Capital Markets, Private Equity, and Business Restructuring and Reorganization practices to provide our clients complete, effective, and efficient guidance throughout their transactions.

# Representative Municipal Finance Engagements

Jones Day has represented various state and local bond issuers, as well as underwriters, financial advisors, broker-dealers, mutual funds, and swap advisors on all aspects of various primary and secondary market transactions involving tax-exempt bonds. The following is a representative list of recent engagements, with particular focus on those in the Midwest.

**Adventist Health System/West**
$120,000,000 California Health Facilities Financing Authority Revenue Bonds, Series 2009A and B (Goldman, Sachs & Co.)

**Atrium Medical Center**
$86,000,000 City of Middletown, Ohio Hospital Facilities Revenue Bonds, Series 2010 (Atrium Medical Center Obligated Group).

**Bentley School**
$27,740,000 California Statewide Communities Development Authority Refunding Revenue Bond (Bentley School) 2010 Series.

**The Carle Foundation**
$234,735,000 Illinois Finance Authority Revenue Bonds, Series 2011A (The Carle Foundation).

**The Carle Foundation**
$100,000,000 Illinois Finance Authority Variable Rate Demand Revenue Bonds, Series 2011B and 2011C (The Carle Foundation).

**Charleston Area Medical Center, Inc.**
$127,355,000 West Virginia Hospital Finance Authority Variable Rate Revenue Bonds, 2008 Series A (Merrill Lynch).

**Chicago Historical Society**
$51 million of Series 2006 Bonds in a public offering by Illinois Finance Authority, underwritten by J.P. Morgan Securities, Inc.

**City of Chicago**
Conversion of City of Chicago Variable / Fixed Rate Demand Special Facilities Airport Revenue Bonds (Centerpoint O'Hare L.L.C. Project) Series 1997.

**Citigroup Global Markets Inc.**
$75,000,000 City of Kalamazoo Hospital Finance Authority Hospital Revenue Bonds, Series 2006 (Bronson Methodist Hospital).

**Dormitory Authority of the State of New York**
$57,050,000 Revenue Bonds (Department of Health of the State of New York Refunding Issue), 2004.

**E.ON U.S. LLC (Kentucky Utilities Company)**
$17.9 million County of Carroll, Kentucky Environmental Facilities Revenue Bonds, 2007 Series A, a Kentucky Utilities Company project; and $8.9 million County of Trimble, Kentucky Environmental Facilities Revenue Bonds, 2007 Series A, a Kentucky Utilities Company project.

**E.ON U.S. LLC (Louisville Gas and Electric Company)**
$31 million Louisville/Jefferson County Metro Government, Kentucky Environmental Facilities Revenue Refunding Bonds, 2007 Series A, a Louisville Gas and Electric Company project, and $35.2 million Louisville/Jefferson County Metro Government, Kentucky Environmental Facilities Revenue Refunding Bonds, 2007 Series B, a Louisville Gas and Electric Company project.

**E.ON U.S. LLC (Louisville Gas and Electric Company)**
$60 million County of Trimble, Kentucky Environmental Facilities Revenue Refunding Bonds, 2007 Series A, a Louisville Gas and Electric Company project.

**Essentia Health Obligated Group**
$234,195,000 Health and Educational Facilities Authority Health Care Facilities Revenue Bonds, Series 2008 (Goldman, Sachs & Co. and Piper Jaffray).

**Georgia Institute of Technology**
$53,970,000 Development Authority of Fulton County, Georgia Tech Foundation, Inc. Revenue Bonds (Tax-exempt and Taxable Series 2009) (Merrill Lynch & Co. and Morgan Keegan & Company).

**Iowa Health System**
$244,270,000 Iowa Finance Authority Revenue Bonds, Series 2009 (J .P. Morgan Securities Inc., Banc of America Securities LLC, and Wells Fargo Brokerage Services. LLC).

**Loyola University of Chicago**
$107 million of Tax-exempt and Taxable Revenue Bonds in a public offering by the Illinois Educational Facilities Authority and direct note obligations by Loyola University of Chicago, underwritten by RBC Dain Rauscher and Banc One Capital Markets, Inc.

**Loyola University of Chicago**
$58 million of Tax-exempt Revenue Bonds in a public offering by the Illinois Finance Authority, underwritten by Piper Jaffray & Co. The proceeds will be used to finance a portion of the acquisition, construction, improvement and equipping of a new student residence hall and a new life sciences building.

**Loyola University of Chicago**
$27,635,000 Illinois Finance Authority Revenue Refunding Bonds, Loyola University of Chicago, Series 2007.

**Merrill Lynch, Pierce, Fenner & Smith Incorporated**
$148,135,000 Wisconsin Health and Educational Facilities Authority Revenue Bonds, Series 2010B (Aurora Health Care, Inc.)

**Merrill Lynch, Pierce, Fenner & Smith Incorporated, BMO Capital Markets GKST Inc., J.P. Morgan Securities LLC**
$103,405,000 Wisconsin Health and Educational Facilities Authority Variable Rate Revenue Bonds, Series 2010C (Aurora Health Care, Inc.)

**Methodist Medical Center of Illinois**
$51,220,000 Illinois Finance Authority Variable Rate Demand Revenue Bonds, Series 2011B (The Methodist Medical Center of Illinois).

**Miami Valley Hospital**
$100,000,000 County of Montgomery, Ohio Revenue Bonds, Series 2011A (Miami Valley Hospital).

**Miami Valley Hospital**
$85,000,000 County of Montgomery, Ohio Revenue Bonds, Series 2011B and 2011C (Miami Valley Hospital).

**Michigan State Hospital Finance Authority**
$15,100,000 Michigan State Hospital Finance Authority Revenue Refunding Bonds (OSF Healthcare System)

**Piper Jaffray & Co. and J.P. Morgan Securities LLC**
$35,060,000 Wisconsin Health and Educational Facilities Authority Revenue Refunding Bonds, Series 2011 (ProHealth Care, Inc. Obligated Group).

**ProMedica Healthcare**
$181,410,000 County of Lucas, Ohio Hospital Revenue Bonds, Series 2011A (ProMedica Healthcare Obligated Group).

**Seattle Cancer Care Alliance**
$90,000,000 Washington State Health Care Facilities Authority Revenue Bonds, Series 2008 (Merrill Lynch, Bank of America).

**SunPower Corporation**
$30,000,000 California Enterprise Development Authority Recovery Zone Facility Revenue Bonds (SunPower Corporation—Headquarters Project) Series 2010.

**Terwilliger Plaza Continuing Care Retirement Center Project**
$39,765,000 The Hospital Facilities Authority of Multnomah County, Oregon, Revenue Bonds, Series 2006 (Citi, M&T Securities).

**University of Chicago Medical Center, The**
$92,500,000 Illinois Finance Authority Variable Rate Demand Revenue Bonds, Series 2011A and Series 2011B (The University of Chicago Medical Center).

**University of Chicago Medical Center, The**
$90,000,000 Illinois Finance Authority Revenue Bonds, Series 2011C (The University of Chicago Medical Center).

**University of Maryland Medical System**
$253,460,000 Maryland Health and Higher Educational Facilities Authority, Revenue Bonds, Issue, Series 2004 A-D (Bank of America, RBC Dain Rauscher Inc., UBS, J.P. Morgan Securities Inc.)

JONES DAY

# Global Infrastructure

Jones Day is uniquely qualified to provide legal services in connection with public private projects (PPP) due to our extensive experience globally, nationally and in Michigan in providing multi-disciplinary advice to governmental authorities, financial institutions, project sponsors, other capital providers, and consortiums for complex and sensitive infrastructure transactions.

Jones Day is extremely active in PPP and other privatization transactions in the U.S. and abroad. Our lawyers recently represented The Ohio State University in connection with the closing of a $483 million monetization transaction for the University's parking facilities. This was the first monetization of a university's parking facilities and the first closed concession-style PPP infrastructure transaction in Ohio.

In December 2012, we represented Bank of America Merrill Lynch and JP Morgan as bond underwriters' counsel in support of the Virginia US-460 Toll Road expansion under a 63-20 structure. We also currently serve as special counsel to Greenhill & Co. in its role as financial advisor to the Commonwealth of Pennsylvania in connection with the proposed monetization of the Pennsylvania Lottery.

Jones Day has represented companies such as LCOR, FCC Construcciones, Befesa, Itinere Infrastructure, and Cintra Infrastructure in transactions in the U.S. relating to concession agreements for government infrastructure assets including the JFK International Arrivals Terminal, the Indiana Toll Road, the Chicago Downtown Parking System, the Chicago Parking Meter System, and the Northwest Parkway Toll Road in Denver.

In the immediately following pages we have summarized the Ohio State parking monetization, as well as select infrastructure transactions in which we have had a significant role. Jones Day believes the City will find that we have been involved in all aspects of PPP projects from all sides of these transactions.

## Relevant Experience

- **The Ohio State University**
  Represented The Ohio State University in connection with the $483 million monetization of its parking facilities to a consortium lead by Queensland Investment Corporation.

- **Greenhill & Co.**
  Special counsel to Greenhill & Co., financial advisor to the Commonwealth of Pennsylvania prepaid lottery monetization.

- **VA-460**
  Represented Bank of America Merrill Lynch and JP Morgan as bond underwriters' counsel for US-460 in Virginia.

- **United Continental Holdings**
  Represented United Airlines (formerly Continental Airlines) in connection with the issuance and refinance of $730 million in bonds for the development of terminals in Cleveland Hopkins Airport and Newark International Airport.

- **Dulles Metro Extension**
  Negotiated primary construction documents for multi-billion dollar design / build project for a 23-mile extension to the existing Metro Rail system in Northern Virginia (extending ultimately to Dulles International Airport), including the construction of elevated track, tunnels and related station facilities.

- **City of Akron**
  Represented the City of Akron in evaluating the privatization if the City's sewer system.

-54-

# Jones Day and The Ohio State University Parking Deal

## Overview

Jones Day assisted The Ohio State University with the privatization of its over 37,000 parking spaces on the Columbus Campus, for which a consortium headed by Queensland Investment Corporation paid $483 million upfront. The OSU parking privatization process was designed to (i) monetize non-core parking operations, (ii) enhance the quality of parking service through private operator expertise, and (iii) generate proceeds for reinvestment in the University. The transaction, which ultimately closed on September 21, 2012, was the culmination of significant discussions and negotiations, which included a bid process that received seven separate pre-qualified bids and three final bids ranging from $390 million to $523 million, depending on certain variable factors identified by the University. Despite the size of the transaction, Ohio State, with the help of its advisers, was able to launch and receive binding proposals within eight months. Brian Sedlak of Jones Day served as the lead attorney for Ohio State in drafting the Concession Agreement, negotiating with bidders and closing the transaction.

## Deal Statistics

Ohio State anticipates that the $483 million upfront payment, which represents very strong multiples of 25.3x prior year EBITDA and 17.2x prior year revenue, with proper investment, will create a total cash flow of $1.3 billion in present value as compared with $396 million in present value for the parking system over that time. The graphic to the right shows the strong multiples based on the number of spaces available generated by the $483 million payment. To ensure stability of pricing for its stakeholders, the University required that the concessionaire cap the increase in parking rates at 5.5% per annum for the first ten years and that rate increases thereafter will be capped at the greater of 4.0% or CPI per annum. However, to give itself flexibility, Ohio State required bidders to submit final, binding bids for three different scenarios with different caps on the parking rates, giving itself the latitude to choose the optimal scenario for itself and its stakeholders.



With respect to scope, the OSU campus supports approximately 82,000 people on a daily basis, excluding visitors; this figure far exceeds the amount of available parking: 37,604 spaces. The Parking System is composed of the following: Garages (13,532 spaces); Surface Lots (23,914 spaces); and On-Street Meters (158 spaces).

-55-

## Investment Highlights

| | |
|---|---|
| **Prior Board Approval** | Assuming certain criteria were satisfied, the winning bid would not require any additional Board of Trustees approval in order to reach financial close |
| **Limited Competition** | Little to no competing parking exists in the footprint of the Columbus Campus |
| **New Condition of Assets** | Of the 17 garages included in the Concession, approximately 50% were built or newly expanded in the nine years leading up to the Transaction |
| **Predictable and Growing Cash Flows** | The System's ability to generate dependable and growing EBITDA combined with limited capital expenditures creates a strong cash flow profile |
| **Compelling Market Dynamics** | With approximately 56,000 students and 26,000 employees, the Columbus Campus supports approximately 82,000 people on a daily basis, excluding visitors; this figure far exceeds the amount of available parking—approximately 37,000 spaces |

## Keys to Success

Throughout its experience with infrastructure projects including projects such as this OSU deal, Jones Day has gleaned several important factors for entities to be successful in privatizing their assets:

1. **Creativity**: Given the size and complexity of the assets typically being privatized, privatizing entities need to entertain creative methods by which they can monetize their assets so as to maximize the consideration paid for them. For example, Ohio State specifically excluded parking revenue from certain events, such as football games, given the importance of that revenue to certain departments within the University.

2. **Flexibility**: Depending on the nature of the assets to be privatized and the types of bidders, bidders may request certain changes or flexibility in the proposed privatization. For example, Ohio State, in its official Request for Proposal, requested bids for different scenarios depending on the maximum rate increase that would be allowed by the University so as to provide the bidders flexibility in crafting their bids.

3. **Stakeholder Involvement and Transparency**: To minimize any potential negative public reaction and ensure the viability of the privatization project, it is important to engage all stakeholders, such as employees and labor unions, in the asset early in the process. For example, Ohio State created a Parking Advisory Committee for stakeholders to provide feedback on the transaction as negotiations were taking place.

## Summary of Deal

- Concession Compensation: **$483,000,000**

- Length of Concession: **50 Years**

- Number of Spaces: **37,604**

  - **13,532** Garage Spaces
  - **23,914** Surface Lot Spaces
  - **158** On-Street Metered Spaces

- Average Daily Campus Population: **82,000**

- Prior Year EBITDA: **25.3x**

- Prior Year Revenue Multiple: **17.2x**

- Present Value of Cash Flow (assuming 9% return): **$1,300,000,000**

- Rate Scenarios:

  - Rates capped at **5.5%** for first 10 years and 4.0% thereafter
    - High Bid: **$483,000,000**
    - Low Bid: **$390,000,000**
  - Rates capped at **6.5%** for first 10 years and 4.0% thereafter
    - High Bid: **$509,000,000**
    - Low Bid: **$421,000,000**
  - Rates capped at **7.5%** for first 10 years and 4.0% thereafter
    - High Bid: **$523,000,000**
    - Low Bid: **$454,000,000**

# Select Global Infrastructure Representative Transactions

The following is a listing of representations in which Jones Day lawyer participation has been a matter of public record.

## U.S. Public-Private Partnerships

**Acciona, S.A.**
Representation of client in connection with construction documentation relating to proposed California High Speed Rail Project.

**Alameda Corridor Transportation Authority**
Drafted construction documents for bridges and street overpasses for design-bid-build portions of the $2.4 billion Alameda Corridor, which is a consolidated freight rail line from the ports of Los Angeles and Long Beach to the downtown rail yards.

**Cintra**
Representation of bidder in connection with the long term concession and lease of the Chicago Downtown Public Parking System and Chicago Downtown Metered Parking System.

**Continental Airlines, Inc.**
$730 million project bond issuance (at the time the largest-ever tax-exempt noninvestment-grade issuance) in connection with the $1 billion expansion of Continental's hub operation at Newark International Airport in New Jersey; development of a new cargo facility at New York's JFK International Airport

**Crocker Park, LLC**
Structuring of public bond financing for parking garages, streetscapes, parks and other infrastructure improvements costing between $30 to $40 million in connection with the Crocker Park mixed-use development in Westlake, Ohio

**FCC Construccion, S.A.**
Jones Day advised FCC in connection with its potential bid for Indiana Toll Road.

**Itinere Infrastructure**
We advised Itinere in connection with its bid for Northwest Parking Toll Road in Denver.

**JFK International Air Terminal, LLC**
$2 billion redevelopment of the New York JFK international arrivals terminal

**Robert L. Stark Enterprises, Inc.**
Structuring of approximately $200 million in construction financing for its Crocker Park mixed-use development in Westlake, Ohio, including tax-exempt special assessment bonds for the purpose of constructing streets and parking garages, and a taxable port authority revenue bond issue structured as a financing lease for the purpose of constructing the mixed-use buildings in the development

**The Ohio State University**
Advised Ohio State in connection with the monetization of its 35,000 parking space facilities for consideration in of approximately $493,000,000.

## Additional U.S. Infrastructure Transactions

**AREVA SA**
$2 billion loan guarantee from the U.S. Department of Energy to finance the construction of the Eagle Rock uranium enrichment plant in Bonneville County, Idaho.

**Banco Bilbao Vizcaya Argentaria, S.A., Banco Santander, S.A., Bayerische Landesbank, J.P. Morgan Chase Bank, N.A.**
$280 million construction financing for the 180 MW Tatanka wind power project in North and South Dakota, developed by Acciona Energy North America Corporation.

**Base Resources Limited**
Advised on the U.S. aspects of the A$170 million placement and rights issue of equity shares by Base Resources Limited, a minerals exploration and development company, and subsequent US$170 million syndicated project finance facility.

**Bayerische Landesbank, New York Branch**
$250 million construction financing for the 123 MW Red Hills wind power project in Oklahoma, developed by Acciona Energy North America Corporation.

**Cascades, Inc.**
$430 million project financing by GreenPac Mill, LLC, a subsidiary of Casades Inc., for the construction and operation of a new paper mill to be constructed in Niagara Falls, New York. The financing was comprised of equity investments and senior and subordinated credit facilities.

**CIT Lending Corporation**
Multiple operating and holding company level secured credit facilities to finance a professional NHL team and the construction of its new, state of the art, multi-purpose arena.

**City of Akron**
Advised the City of Akron with respect to the privatization of the Akron Sewer System

**Chevron Corporation**
Sale by Chevron Midstream Investments, LLC of its 23.44% stake in the Colonial Pipeline Company to a Kohlberg Kravis & Roberts & Co. L.P. investment vehicle funded by the National Pension Service of Korea, the fourth largest public pension fund in the world.

**E.ON AG**
$1.9 billion acquisition of the North American activities of Airtricity Inc.

**FirstEnergy Corp.**
Represented FirstEnergy on its $57.47 million Smart Grid Investment Grant and related contracts.  FirstEnergy's grant was part of $3.4 billion for smart grid investments from the U.S. Department of Energy that was authorized by the American Recovery and Reinvestment Act of 2009.

**GIC Special Investments Pte Ltd and OMERS Administration Corporation**
$1.25 billion acquisition of a 19.9% interest in Oncor Electric Delivery Company LLC, a Texas-based regulated distributor of electricity.

**Greenhill & Co.**
Represent Greenhill in connection with Pennsylvania lottery monetization.

**KeyBank National Association**
$30 million project financing provided to Kingman Energy Corp., a subsidiary of Western Wind Energy Corp., for the construction, development, and operation of a combined wind and solar project with a total generating capacity of 10.5 MW located in Kingman, Arizona. This project is believed to be the first utility scale renewable energy project that combines wind and solar under one power purchase agreement. The KeyBank loans are secured by substantially all the real and personal assets of and equity interests in Kingman Energy Corp.

Construction and commencement of commercial operation of a combined wind and solar project located in Kingman, Arizona. In connection with the successful completion of this project, Kingman Energy Corp., a subsidiary of Western Wind Energy Corp., received cash proceeds from the U.S. Department of Treasury pursuant to its cash grant program under Section 1603 of the American Recovery and Reinvestment Act of 2009.

JONES DAY®

$29.2 million project financing provided to Idaho Winds LLC, a subsidiary of PowerWorks LLC, for the operation of a wind power facility with a total generating capacity of 22 MW located in Elmore County, Idaho. The loans are secured by substantially all the real and personal assets of and equity interests in Idaho Winds LLC.

$101 million project financing provided to Big Savage, LLC, a subsidiary of EverPower Wind Holdings, Inc., for the construction, development, and operation of a wind power renewable energy project with a total generating capacity of 139.4 MW located in Somerset County, Pennsylvania.

**Large commercial bank**
$150 million project financing of a new ethanol production facility in the midwestern United States.

**NRG Energy, Inc.**
Acquisition of the 250 MW California Valley Solar Ranch project from SunPower Corp. The project has received a loan guarantee of up to $1.237 billion from the Department of Energy's Loan Programs Office, which supports the deployment of commercial technologies along with innovative technologies that avoid, reduce, or sequester greenhouse gas emissions.

Acquisition of an equity interest and related financing of the proposed 752 MW distributed generation rooftop solar project on approximately 750 rooftops in 28 states and the District of Columbia. The project has received a loan guarantee of up to $1.4 billion from the Department of Energy's Loan Programs Office.

$688 million project financing for the development, construction, operation, and management of a 550 MW combined cycle power plant to be located on a site in El Segundo, California. A syndicate of financial institutions led by Credit Agricole Corporate and Investment Bank, Mizuhi Corporate Bank, Ltd., and RBS Securities Inc. provided the 10-year project financing on a non-recourse basis to NRG West Holdings LLC, the borrower affiliate of NRG. Southern California Edison will purchase power produced by the plant under a 10-year power purchase agreement.

**OGE Energy Corp.**
Represented OG&E on its Smart Grid Investment Grant for $130 million from the U.S. Department of Energy. OG&E's grant was part of $3.4 billion for smart grid investments authorized by the American Recovery and Reinvestment Act of 2009. The team counseled OG&E on DOE and Recovery Act standards and regulations, negotiated the terms and conditions of OG&E's smart grid grant agreement with DOE, and prepared a standard form addendum for purchase orders issued by the client for procurements involved in OG&E's smart grid project.

**ProLiance Energy, LLC**
Acquisition of a 25% interest in Liberty Gas Storage, LLC from Sempra Energy.

**Rangeland Energy, LLC**
Senior secured loan from Amegy Bank, N.A. in connection with the project financing for the development and construction of a crude oil storage terminal and related assets in the Bakken shale production area.

**Standard Bank Plc**
$7.2 million credit agreement for construction of an ethanol plant in Wyoming and a $2.8 million single-lender loan to US subsidiaries of Renova Energy plc to be used for operating income.

**Top Deer Wind Ventures, LLC**
$72 million project financing of two 80 MW wind projects located in Iowa and Texas, owned directly by EWO Wind II, LLC, Entergy Power Gas Operations Corporation and Shell WindEnergy Inc.

**Unity Power plc**
Guaranteed Secured Loan Notes due 2014 issued by Horizon Mining Limited, a mining and trading company.

**Washington Group International, Inc.**
$360 million project financing for the engineering, procurement and construction of a sulfur handling facility to be located at the Ras Laffan Industrial City in connection with a contract with Qatargas Operating Company Limited, a liquefied natural gas transporter, and a consortium led by Washington Group International, Inc., one of the largest engineering and construction firms in the United States, and Al Jaber Energy Services of Abu Dhabi, a construction and procurement company.

JONES DAY®

# Selected Water and Wastewater Representations

**American Water Works Company, Inc.**
Illinois regulatory counsel in $8.1 billion acquisition by RWE AG.

Jones Day also advised American Water Works Company on regulatory matters in a $835 million acquisition of Citizens Water Resources. As part of a six-state transaction, Illinois-American contracted to acquire the water/wastewater assets of Citizens. Jones Day represented Illinois American and American Water Works in obtaining expeditious approval of the transaction.

**Aqua Illinois Water**
Jones Day represented Aqua Illinois in connection with the acquisition of water and wastewater assets for a new service area and successfully represented the utility in negotiating numerous complicated aspects of the arrangements with municipalities and the developer and in obtaining regulatory approval for complicated contractual arrangements.

**BEFESA, S.A.**
Financing of the construction of an industrial waste treatment facility in Hidalgo, Mexico.

**Brush Wellman Inc.**
Comprehensive water pollution control counseling, including adoption of water quality standards and criteria, effluent guidelines, and issuance of NPDES permits.

Obtained a modification to the existing hazardous waste permit in order to establish an integrated approach to corrective action and post-closure obligations.

Representation in connection with EPA's drinking water standards for beryllium.

Obtained a *de minimis* settlement through development of waste-in list at the Berks Landfill Superfund site.

**Cargill, Inc.**
Represented Cargill in connection with a grand jury investigation into the waste management practices of one of its Ohio subsidiaries.

**CMA CGM SA**
Acquisition of ChengLi Navigation Co., Ltd.

**Consumers Illinois Water**
Advised Consumers Illinois Water in connection with an OSHA Section 11(c) investigation.

$13 million of First Mortgage Bonds in a private placement.

**Deutsche Bank AG**
$60 million syndicated credit facility and $37 million export credit facility for large irrigation project in Bozova, Turkey.

**Hall Corporation, The**
Represented the Hall Corporation in a series of transactions with separate purchasers for the sale of nonessential production facilities having varying degrees of soil and ground water contamination from historic operations.

**Illinois-American Water Company**
Jones Day represented Illinois-American Water Company in an approval for merger with affiliated company and cost recovery associated with merger transaction at Illinois Commerce Commission and in Illinois Appellate Court.

**National City Bank**
$175 million loan to Calgon Carbon Corporation, a global leader in services and solutions for making air and water cleaner and safer.



**Riverside acquires business unit of GE**

Jones Day represented The Riverside Company in connection with the acquisition and related financing by portfolio company Axiom Automotive Technologies, Inc. of the Sentinel business unit of GE Infrastructure, Water and Process Technologies, a manufacturer of water process systems. The financing consisted of term and revolving credit facilities for repayment of investor loan and ongoing working capital purposes.

**Thames Water plc**

$40 million acquisition of water treatment equipment manufacturer Leopold Inc.

**Thames Water plc**

Acquisition of manufacturer of water purification equipment Flo-Covery Inc.

**Veolia Environnement**

Assisted Veolia Environnement, a worldwide supplier of environmental services for water management, energy services, transportation and waste management, in connection with the €600 million limited recourse financing for RWE Berlinwasser, Veolia Environnement's Berlin water affiliate.

# Other Domestic Governmental Entity Representations

Jones Day represents public sector clients in a wide array of other matters, including appellate issues, employment and wage issues, general litigation, financial transactions, governance infrastructure transactions, intellectual property, labor, tax, and workers' compensation matters. The following is a listing of certain U.S. public sector representations in which Jones Day's participation has been a matter of public record. Note that his list does not include all of the restructuring, public pension and benefits, and municipal finance matters listed elsewhere.

**Alameda Corridor Transportation Authority**
Drafted construction documents for bridges and street overpasses for design-bid-build portions of the $2.4 billion Alameda Corridor, which is a consolidated freight rail line from the ports of Los Angeles and Long Beach to the downtown rail yards.

**Alameda County Medical Center**
Represented client in connection with collective bargaining negotiations for nurse unit and service, technical and non-RN professionals unit.

**City of Akron**
Advised the City of Akron with respect to the privatization of the Akron Sewer System.

**City of Costa Mesa**
*Costa Mesa Employees Association v. City of Costa Mesa*, Case No. 30-2012-0055390 (Orange County Superior Court)
Appealed the entry of a preliminary injunction granted against client in suit brought by The Costa Mesa Employees Association after client privatized various aspects of its labor and laid off half of its workforce.

**County of Los Angeles**
*Patrick Owens and Patricia Munoz, as individuals, and on behalf of a class of similarly situated residents of Los Angeles County, both business and individual*, Case No. BC419572 (Super. Ct. Ca., Cty. of L.A.)
Successfully represented client in challenge to the validity of the County's November 2008 election regarding Measure U which authorized the collection of the Utility User Tax.

**County of Los Angeles**
*Joe Oronoz and Larry Pitts, as individuals and on behalf of all other similarly situated "PERSONS' or Unincorporated Los Angeles County v. The County of Los Angeles*, Case Nos. BC334027 [consolidated with BC334145] (Super. Ct. of Ca., Cty. of L.A., Cent. Dist.)
Achieved favorable judgment for client in taxpayer class action challenging the County's utility use tax.

**County of Los Angeles**
Achieved favorable resolution for client in a class action tax refund case.

**County of Los Angeles**
Obtained a major victory for Los Angeles County when the district court granted summary judgment in a multi-billion dollar False Claims Act case.

**County of Los Angeles**
Obtained and defended on appeal a judgment in favor of client rejecting plaintiffs' contention that the payment of local judicial benefits to Superior Court judges violates the state's constitution.

**County of Los Angeles**
Obtained partial summary judgment on behalf of client and Los Angeles Sheriff's Department in declaratory relief action relating to Glendale Metrolink derailment.

**County of Los Angeles**
Putative class action on behalf of probation officers employed by the County of Los Angeles seeking to recover wages and penalties for missed meal and rest breaks.

**County of Los Angeles**
Represented client in California state trademark infringement and breach of contract action against domain registrar and former contractor, respectively, regarding unlawful termination and use of client's domain name.

**County of Los Angeles**
Successfully represented client in post-trial motions and appeal from an adverse jury verdict involving race discrimination claims brought by a class of more than 600 employees seeking more than $150 million in relief.

**County of Los Angeles**
Defense of employment class action brought under the California and federal Equal Pay Acts.

**County of Los Angeles**
Lead trial counsel for the County of Los Angeles in dispute concerning proper recording of reconveyances; judgment awarded for the County of Los Angeles on all causes of action.

**County of Los Angeles**
Obtained affirmation of trial court decisions rejecting two class actions brought against the client by contract workers.

**County of Los Angeles**
Obtained summary judgment in FLSA collective action involving the calculation of bonuses.

**Dormitory Authority of the State of New York**
Acted as bond counsel to Dormitory Authority of the State of New York in connection with $57,050,000 Revenue Bonds (Department of Health of the State of New York Refunding Issue), 2004.

**Dormitory Authority of the State of New York**
Acted as bond counsel in connection with $21,870,000 Dormitory Authority of the State of New York New School University Insured Revenue Bonds, Series 2005.

**Dormitory Authority of the State of New York**
Acted as bond counsel to the Dormitory Authority of the State of New York in connection with the offering of $32,330,000 White Plains Hospital Medical Center FHA Insured Mortgage Revenue Bonds, Series 2004.

**Fulton County, Georgia District Attorney's Office**
Retained by client to conduct an investigation of allegations of theft and misuse of county funds.

**Los Angeles County Metropolitan Transportation Authority**
Representation in post-trial matters and appeals arising from disputes over several contracts for construction of portions of the Metro Rail subway system.

**Los Angeles County Metropolitan Transportation Authority**
Argued as *amicus curiae* on behalf of the client in support of employer parties before the Supreme Court, which resulted in a determination that worker's compensation benefits had not been changed by legislative actions and the Court's 1976 decision in *Fuentes* controlled the determination as to how benefits were to be calculated.

**Los Angeles County Metropolitan Transportation Authority**
Representation of client in connection with several related cases pursuant to the Rehabilitation Act and Title II of the ADA.

**Los Angeles County Metropolitan Transportation Authority**
Representing the MTA in a lawsuit challenging fare increases under the California Environmental Quality Act; judgment was entered on MTA's behalf.



**Los Angeles County Metropolitan Transportation Authority**
Representing the Metropolitan Transportation Authority in a meal and rest period class action.

**Los Angeles Unified School District**
Represented client in connection with pre-litigation disputes with general contractor responsible for the construction of a new high school.

**Los Angeles Unified School District**
Defense of employer in claim under state harassment law for failure to stop sexual harassment.

**Los Angeles Unified School District**
Representation in multi-party, coordinated litigation involving disputes among the owner, general contractor, surety, subcontractors, and insurance providers regarding two separate new school construction projects.

**Maricopa County Elections Department**
Representation in civil rights action challenging the establishment of separate DUI courts for Native American and Spanish speakers.

**Monitor for the Department of Justice**
Represented monitor appointed by the Department of Justice to oversee FCPA compliance by a company pursuant to the terms of a deferred prosecution agreement.

**Ohio State Bar Association**
*Miller v. Miller*, 2012-Ohio-2928 (Ohio Supreme Court)
Represented client as *amicus curiae* and successfully petitioned the Supreme Court of Ohio to review, and then reverse, a decision from the Eleventh District that threatened directors' right to advancement.

**Ohio State University, The**
$483 million bid by QIC Global Infrastructure for the 50 year lease of the parking operations of Ohio State University. This transaction is the first public-private partnership relating to the long-term lease and concession of a university parking system in the United States.

**Orange County Transportation Authority (OCTA)**
Defense of construction litigation brought by a design-build contractor of the high occupancy vehicle lanes and other improvements on California State Route 22, involving claims in excess of $120 million.

**Port Authority of New York and New Jersey**
Representation in a series of legal proceedings arising out of the planned auction by the U.S. Department of Transportation, including the Federal Aviation Administration and the Office of the Secretary, of landing and take-off operating authorizations at JFK, La Guardia, and Newark airports.

**Port of Oakland**
Defended employer in numerous arbitrations and unfair labor practice charges stemming from a reduction in force.

**Port of Oakland**
Obtained full defense verdict for employer in discrimination and wrongful termination case.

**Public Utility District No. 1 of Snohomish County, Washington**
Representation of client in related actions pending in federal court in Seattle and New York over the terms of a 30-year interest rate swap agreement that the parties executed in 1995.

**South Dakota Health and Educational Facilities Authority**
Served as bond counsel in connection with the issuance of $139,205,000 variable rate demand revenue bonds, Series 2008A (Avera Health Issue).

**South Dakota Health and Educational Facilities Authority**
Served as bond counsel in connection with the issuance of $50,320,000 revenue bonds, Series 2008.



**State of Georgia**

Obtained dismissal of case involving constitutionality of the right to a speedy trial.

**State of Georgia**

Successful representation of the State of Georgia in a prisoner's challenge to prison conditions under the Americans with Disabilities Act.

**State of North Carolina**

*North Carolina v. Holder*, No. 1:11-cv-01592 (D.D.C.)

Successfully represented the State of North Carolina in Voting Rights Act preclearance proceedings before the U.S. Department of Justice and U.S. District Court for the District of Columbia.

**United States Chamber of Commerce**

*Lawson v. FMR LLC,* No. 10–2240, 2012 WL 335647 (1st Cir. Feb. 3, 2012)

On behalf of the U.S. Chamber of Commerce, Jones Day filed a brief as amicus curiae in the U.S. Court of Appeals for the First Circuit in support of employers who successfully argued that the language of the Sarbanes-Oxley Act provided whistleblower protection only for employees of publicly held companies, not employees of contractors or subcontractors of public companies. In a 2-1 opinion, the appeals court agreed, reversing and remanding a district court decision to the contrary.

**Vermont Insurance Commission**

Obtained affirmation in the Third Circuit of jury verdict entered in 2005 by federal trial court against accounting firm PricewaterhouseCoopers.

**West Basin Municipal Water District**

Prosecuted claims on behalf of client seeking rescission of an interest rate derivative swap transaction, disgorgement of fees earned by the defendants from those transactions, and fraud damages.

# Tab 7 — Significant Labor, Employee Benefits, and Public Pension Experience



- Labor & Employment
  - Overview
  - Traditional Labor & Collective Bargaining
  - Awards and Recognition
  - Selected Labor & Employment Experience
- Employee Benefits & Public Pensions
  - Overview
  - Awards and Recognition
  - Public Pension-Related Representations
  - OPEB Litigation Experience Within the Sixth Circuit
  - Selected ERISA-Related Experience

JONES DAY®

# Labor & Employment

Jones Day's Labor & Employment Practice offers the City of Detroit the skills and experience necessary to move its labor contracts towards a more sustainable path. The Firm's more than 160 counselors and litigators offer corporate clients experienced, sophisticated, and cost-effective representation concerning all aspects of personnel-related legal matters. A true labor *and* employment practice, Jones Day offers significant traditional labor experience, including the negotiation of collective bargaining agreements in and out of bankruptcy proceedings. We have worked with private and public sector clients alike. Public sector clients include the Port of Oakland, Alameda County Medical Center, and Los Angeles County. Our lawyers have been centrally involved in the labor issues associated with some of the most significant bankruptcies and restructurings in recent years, including Chrysler, Hostess, and the General Motors VEBA restructuring.

Our experience includes a long and significant history of assisting corporate and public employers with the issues and pitfalls presented by unionized labor and their existing collective bargaining agreements in bankruptcy proceedings. Our lawyers have substantial experience in negotiating collective bargaining agreements, having negotiated literally hundreds of such agreements in both the private and public sectors. We also are well versed in negotiating and rejecting collective bargaining agreements in bankruptcy. In many instances, the value of the bankruptcy to the employer's ability to continue operations will hinge significantly upon the savings achieved through renegotiated labor contracts with its unions. Our history of successfully attaining concessionary contracts at the bargaining table greatly aids in pursuing the savings needed by employers to emerge from bankruptcy successfully.

For example, our lawyers served as lead labor counsel in connection with the 2012 Hostess Brands bankruptcy last year. The Teamsters and Bakers' unions represented a majority of the 15,000 member unionized workforce. Our lawyers worked with the Company to draft proposals under sections 1113 and 1114 of the Bankruptcy Code for modifications to more than 300 collective bargaining agreements, including retiree benefits, and negotiated with the unions in an attempt to reach a consensual resolution on concessions, and litigating for an order allowing the debtors to implement their labor and benefits proposals in the event no consensual resolution could be reached. Similarly, in the 2009 Chrysler bankruptcy, we represented the debtors as labor counsel and worked with the U.S. government and the unions on a global settlement to achieve modifications of the debtors' collective bargaining agreements and retiree benefits, including the institution of a VEBA.

## Recent Practice Recognition

- **Labor & Employment Department of the Year**
  *The American Lawyer* (2008)

- ***The Legal 500 US* Recognition**
  The guide recognized Jones Day as a "first tier firm" in Labor & Employment Litigation (2012).

- **Awarded National Band 1 Ranking by *Chambers USA***
  *Chambers USA* honored Jones Day's Labor & Employment practice with top-tier ratings. (2012)

- **"Most Powerful Employment Attorneys" in the Nation**
  Nine Jones Day partners—including Lawrence DiNardo, chair of our Labor & Employment Practice—were named among the most powerful employment attorneys in the U.S. by Human Resource Executive magazine. (2011)

- ***PLC Which lawyer?*** recognized Jones Day's Labor & Employment practice as one of top three "Leading" practices in their Cross-Border Labour and Employee Benefits Handbook. (2011-2012)

JONES DAY®

Our lawyers have broad experience not only with the direct contract negotiations themselves, but in defending employers from the unfair labor practice charges and other litigation that often arises in the process. We have a deep and talented bench of lawyers that has tried and defended cases before Administrative Law Judges, Public Employment Relations Boards across the country, and the National Labor Relations Board. This experience, and the commitment we bring to the litigation process, most often results in such charges being withdrawn, mutually resolved, or dismissed. We are also well-versed in the strategic implications of unfair labor practice charges and the timing of their filing and defense. We incorporate that experience into a comprehensive strategy that guides our discussions with the unions, the sequencing of events, and our objectives and actions at the bargaining table.

Jones Day lawyers have significant experience in defending employers against significant class action and multiplaintiff cases. For example, in 2008, our lawyers successfully defended the County of Los Angeles in multiple class actions that sought determinations that independent contractors (in one matter) and lawyers and paralegals employed by an entity created by the County (in another matter) were entitled to civil service status, pay, benefits and pensions, which actions potentially could have cost the County and taxpayers millions of dollars. Jones Day attorneys have represented Los Angeles County and various entities organized therein in multiple actions over the last ten years. Jones Day labor and employment attorneys also commonly advise clients on the myriad labor and employment issues that arise in mergers and acquisitions, joint ventures, bankruptcies/restructurings, and other changes in corporate ownership. In these contexts, we counsel clients on workforce restructuring, union successorship, termination benefits, and benefits continuation.

In 2008, *The American Lawyer* named Jones Day as the nation's best Labor & Employment practice in the magazine's prestigious Litigation Department of the Year competition. The award highlighted Jones Day's successes in both the traditional labor and employment arenas. In 2012, *Chambers USA* recognized our U.S. Labor & Employment Practice as one of the three top practices (Band 1) in the nation. In addition, 14 Labor & Employment partners were recognized, based on client interviews, for their significant contributions to the practice. *The Legal 500 US* (2012) acknowledged Jones Day as a first-tier firm, noting that the Firm *"is praised for 'outstanding partner responses in terms of timeliness, personal availability, substantive legal guidance and patience with our own internal processes and schedules.'"*

Jones Day's Labor & Employment Practice serves as lead employment counsel for clients such as Abbott Laboratories, AstraZeneca, Bank of America, CareerBuilder, CBS Corporation, Continental Tire North America, General Electric, IBM, McDonald's Corporation, Morton's Restaurant Group, U.S. Steel, Verizon Communications, Verizon Wireless, and other diverse companies.

# Traditional Labor & Collective Bargaining

Jones Day attorneys advise both public and private sector employers concerning union-related legal issues that arise under state and federal labor laws. We have substantial experience practicing before the NLRB, the Public Employment Relations Board, and other state agencies. We have bargained hundreds of collective bargaining agreements across the country on behalf of employers in dozens of industries and sectors. Our lawyers provide the full gamut of labor counseling and service and can address any issue faced by an employer.

## Extensive Experience Before the NLRB, PERB and State Agencies

Jones Day attorneys practice extensively before NLRB regional offices throughout the country, before the NLRB in Washington, before Public Employment Relations Boards, and in the courts, representing employers in unfair labor practice and union representation proceedings and appeals. In situations where unfair labor practice charges have been filed, our attorneys are well equipped to successfully litigate the charges before the NLRB and PERB. From the initial charge through the complaint and investigation to hearings before administrative law judges and proceedings before boards themselves, Jones Day provides efficient and effective representation.

## Protecting The Right to Make Business Decisions

We also appear for our clients before state and federal courts on labor matters throughout the country. Disputes sometimes arise between an employer and union concerning the employer's right to take certain entrepreneurial action, such as the sale of assets or the closing or relocation of a plant. Occasionally, these disputes will be litigated in court injunction or temporary restraining order actions, brought under state law or Section 301 of the Labor-Management Relations Act. Jones Day has been extremely successful at avoiding injunctive relief so that a client's business plan is not halted by a labor injunction.

## Proactive Collective Bargaining

As noted above, Jones Day has always provided extensive representation in the collective bargaining arena to our clients. The representation runs the gamut from long-range

## Relevant Experience

**General Motors**
Strategic advice and labor negotiations with the United Auto Workers and other unions regarding containing retiree healthcare and pension costs. Worked with company to formulate, negotiate, and implement a VEBA to deal with retiree healthcare benefits and litigation.

**The Goodyear Tire & Rubber Company**
Representation and advice with respect to negotiations with the United Steelworkers, including counsel over issues pertaining to the strike at master bargaining unit locations. Counsel and advice with respect to establishment of a VEBA to deal with retiree healthcare benefits and litigation related thereto.

**Verizon Communications**
Represented client in its recent bargaining with the Communication Workers of America and IBEW. The company successfully reached agreement covering approximately 65,000 employees in the Northeast and Mid-Atlantic states. The three-year agreement affords Verizon the flexibility to restructure its workforce as new technology is deployed, while addressing the union's concerns about disappearing wireline work, rapid rise in health care expense and retirement benefit changes.

**Hostess**
Jones Day helped employer in bankruptcy proceedings with renegotiating a number of union contracts for economic concessions and financial sustainability. Collective bargaining negotiations led to agreement with almost all unions.

JONES DAY

planning and counseling concerning bargaining objectives, through advising on specific contract proposals and their likely enforceability/construction, to the development of contract language and serving as chief spokesperson at the table — and everything in between. We also have abundant experience with negotiations in the context of bankruptcies; plant shutdowns; reductions in force; acquisitions; and divestitures. We represent some of the nation's largest employers in collective bargaining with virtually every major international union. Our proactive counseling and advice help clients reduce the risk of facing unfair labor practice charges and lawsuits/grievances based on contract violations.

## Strategic Response to Union Tactics

Jones Day attorneys are also well acquainted with responding to strikes and other union leverage tactics. Unions can and will engage in economic action, and Jones Day can assist an employer in being fully prepared. We advise employers with respect to strategic issues as well as strike-related issues, including prestrike planning and operating during strikes. Our attorneys also provide advice and litigate matters concerning union corporate campaigns, secondary boycott issues, and picket line violence.

Unsurprisingly, the Firm's strengths and experience in the traditional labor field have resulted in its retention by America's major corporations for all types of labor representations, including ones of critical importance and immense scope. It has also resulted in the Firm's consistent rankings as one of the premier labor practices in the United States.

# Awards & Recognition

## LEGAL 500

- For the fifth year in a row, The Legal 500 United States (2012) gave Jones Day its top recommendation for labor and employment litigation. The Firm was also recommended in workplace and employment counseling, ERISA litigation, and labor and management relations. Fifteen attorneys have been recommended, including Lawrence C. DiNardo and Willis J. Goldsmith who were identified as "leading lawyers" (one who is considered a thought leader in the field).

## U.S. NEWS & WORLD REPORT AND BEST LAWYERS®

- For the second year in a row, Jones Day garnered Tier 1 National Ranking for Employment Law – Management and Tier 1 National Ranking for Labor Law – Management (2011). In 2011, Jones Day also received a Tier 1 national ranking in Litigation – Labor & Employment.

- Fifteen Labor & Employment lawyers were recognized by The Best Lawyers in America® 2011.

## THE AMERICAN LAWYER

- Jones Day was named the nation's best Labor & Employment practice by *The American Lawyer* as part of the magazine's prestigious Litigation Department of the Year competition (2008).

## PLC WHICH LAWYER?

- For the third year in a row, *PLC Which Lawyer?* recognized Jones Day's Labor & Employment Practice as one of the top three "Leading" practices in the United States in its 2011-12 edition of their PLC Cross-border Handbook for Labour and Employee Benefits.

## HUMAN RESOURCE EXECUTIVE MAGAZINE

- Six Jones Day lawyers were named among the top 100 in "The Nation's Most Powerful Employment Attorneys" While two were named among the 20 most powerful employment lawyers for labor law and one selected as one of the top 40 Up-and-Comers. (2012).

## WHO'S WHO LEGAL

- *Who's Who Legal* has identified eight Jones Day lawyers as the foremost management labour & employment legal practitioners.

## CHAMBERS & PARTNERS

- *Chambers USA* recognized 14 Labor & Employment attorneys (2012). The Labor & Employment practice area and individual Labor & Employment attorneys have both been recognized by *Chambers USA* every year since 2004.

- For the sixth year in a row, the Labor & Employment practice receives a Band 1 ranking nationwide by *Chambers USA 2012*. Jones Day is acknowledged as a "global powerhouse" and an "impressive practice."

- *Chambers Global (2012), Chambers Asia (2012), Chambers Europe (2012),* and *Chambers UK (2011)* have each recommended Jones Day's Labor & Employment practice and/or lawyers in its listings.

## LAW360

- Jones Day's Labor and Employment Practice has been named a 2012 "Employment Group of the Year" by publisher Law 360. As part of their Practice Groups of the Year series, Jones Day was among five leading employment practices awarded the prestigious honor and then profiled by the publication in their January 17, 2013 Employment Law issue. Jones Day also received this honor in 2010.

## SUPER LAWYERS

- Thomson Reuters' *Super Lawyers* magazine named numerous labor and employment partners to their 2012 Supers List including attorneys from California, Georgia, Illinois, New York, Washington, D.C. and Ohio.

## COLLEGE OF LABOR AND EMPLOYMENT LAWYERS

- College of Labor & Employment Fellows include: Lawrence C. DiNardo, Willis J. Goldsmith, George S. Howard Jr., G. Roger King, F. Curt Kirschner, the late Andrew M. Kramer, Matthew W. Lampe, Alison B. Marshall, and Deborah Saxe.

# Selected Labor & Employment Experience

Jones Day's Labor & Employment Practice is widely recognized for the breadth of its knowledge and experience, representing clients across all aspects of employment-related legal matters.

**Alameda County Medical Center**

Jones Day represented ACMC in connection with its collective bargaining negotiations with Service Employees International Union Local 1021's nursing and service and technical units. In two rounds of collective bargaining negotiations, separated by three years, our lawyers were able to obtain concessions in base salary, health care contributions and work rules. We have additionally assisted ACMC in defending unfair labor practice charges brought by SEIU 1021 before the California Public Employment Relations Board.

**Bridgestone Americas Holding, Inc.**

Jones Day represented Bridgestone in a major two-year-long strike involving the permanent replacement of unionized workforces at multiple plants and related unfair labor practice proceedings. The Firm then negotiated a contract with the USW for seven master and two non-master plants and represented Bridgestone in negotiations for the closing of one plant and a proposed capital investment in another. Jones Day also negotiated the most recent collective bargaining agreement for both the master and non-master plants, involving some 9,000 employees.

*United Rubber Workers of America v. Bridgestone* (M.D. Tenn.), *United Automobile Workers of America v. Bridgestone* (E.D. Mich.)

Represented Bridgestone/Firestone in negotiations with United Rubber Workers of America and the United Steelworkers of America for master plant locations covering several Bridgestone/Firestone operations in Illinois, Oklahoma, Iowa, Indiana, Ohio, as well as for operations in Tennessee and Arkansas. These negotiations which lasted from 1994 through 1996, were accompanied by a systemwide strike, the hiring of permanent replacements, a corporate campaign against the employer, and scores of unfair labor practice charges filed with the National Labor Relations Board. Jones Day provided advice and representation on all of these fronts.

*Chamber of Commerce v. Reich*, 74 F.3d 1322 (D.C. Cir.), reh'g en banc denied, 83 F.3d 442 (D.C. Cir. 1996)

One of the outgrowths of the nationwide Bridgestone/Firestone strike was the promulgation of an executive order by President Clinton barring utilization of strike replacements by government contractors. Representing Bridgestone, along with the U.S. Chamber of Commerce, we successfully obtained a judgment from the U.S. Court of Appeals for the District of Columbia that the executive order was preempted under the National Labor Relations Act, as amended.

**Chicago Unified School District**

Jones Day represented the Chicago Board of Education in litigation related to the September 2012 strike by the Chicago Teachers Union, which represents almost 30,000 public-school teachers in Chicago. The strike settled the day after Jones Day filed a motion for a temporary restraining order against the union, seeking to enjoin the strike as illegal under the Illinois Educational Labor Relations Act and a clear and present danger to the health and safety of the 400,000 students of the Chicago Public Schools.

**Chrysler LLC**

Our lawyers advised the debtors concerning a strategy for the potential rejection of collective bargaining agreements under sections 1113 and 1114 of the Bankruptcy Code in the event that such relief would have become necessary. In addition, Jones Day worked with the federal government and the unions on a global settlement modifying the collective bargaining agreements and retiree benefits, including the institution of a VEBA.

**Continental Automotive Systems, U.S., Inc.**

Jones Day represented CAS in connection with successful negotiations with the International Association of Machinists and Aerospace Workers AFL-CIO for concessionary agreements governing the company's Diesel Fuel Injection Operations and Gasoline Systems Operations in Newport News, Virginia. After the union agreed to concessions at the Newport News facility, Jones Day advised CAS in connection with the closure of the Company's Blythewood, South Carolina facility and the transfer of its work to the Newport News facility.

**Continental Tire North America, Inc.**

*Pringle, et al. v. Continental Tire North America* (N.D. Ohio)
Jones Day represented Continental Tire North America in a significant class action under ERISA and Sec. 301 of the Labor-Management Relations Act filed by retirees and the United Steelworkers of America challenging Continental Tire's modification of its retiree medical plan for retirees at its unionized plants. Effective January 1, 2007, Continental Tire's implemented a significant reduction in retiree medical benefits for its union retirees - reducing the annual cap on its contributions to $3,000 per household from $18,000 per pre-Medicare eligible and $4,200 for those eligible for Medicare. The putative class encompasses approximately 2,500 households. Jones Day opposed a preliminary injunction motion and class certification motion. Following court-sponsored settlement negotiations, a settlement was reached that transfers the complete responsibility for providing retiree health care benefits from Continental Tire to an independent VEBA trust sponsored by the USW.

*Continental Tire North America and United Steelworkers of America, AFL-CIO*, Case Nos. 14-RC-12514 & 14-CA-27965 (NLRB, Region 14, St. Louis, Missouri)
Jones Day assisted Continental Tire in successfully opposing organizing efforts by the United Steelworkers of America at the company's Mt. Vernon, Illinois manufacturing facility.

*Continental Tire North America, Inc. and the United Steelworkers of America*, Case No. 11-CA-21110, 11-CA-21183, 11-CA-21251 & 11-CA-21374 (NLRB)
Jones Day successfully defended the employer against unfair labor practice charges alleging that the company acted unlawfully by implementing layoffs, failing to provide information during negotiations, removing equipment, and declaring impasse and implementing terms of its last, best and final offer.

*USW v. Continental*, Case No. 5:06CV17-R (W.D. Kentucky)
301 action alleging unilateral change of benefits by Company without bargaining with union.

*USW v. Continental*, Case No. 3:05cv7048 (N.D. Ohio)
301 action alleging unilateral change of benefits by Company without bargaining with union.

**Crown Cork & Seal Company**

*Crown Cork & Seal Company, Inc. v. International Association of Machinists and Aerospace Workers*, Case No. 06-3639 (W.D. Pa.)
When Crown Cork and Seal Company changed the health plans provided to certain of its retirees, it also sued for a declaratory judgment that the changes were lawful under the Employee Retirement Income Security Act (ERISA) and the Labor Management Relations Act (LMRA). On behalf of the retirees, the International Association of Machinists and Aerospace Workers counterclaimed for arbitration of the dispute pursuant to the arbitration clauses in the expired collective bargaining agreements that created the retiree health benefits. The district court ordered arbitration and dismissed Crown's declaratory judgment claims, but the Eighth Circuit reversed.

On September 18, 2007, the Eighth Circuit Court of Appeals ruled that, because the union's grievance arose after the expiration of the relevant collective bargaining agreements, it was arbitrable only if the benefits at issue were actually vested under the past agreements. The Eighth Circuit agreed with Crown that the inquiry into arbitrability required the court to determine whether the benefits were vested even though doing so reached the merits of the dispute, which an arbitrator might otherwise decide. Reviewing the myriad provisions of the collective bargaining agreements in question, the court concluded that the benefits were not vested, and that the dispute was therefore not arbitrable.

**Dana Corporation**

*In re Dana Corporation, et al.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y.)
Jones Day represented Dana Corporation and 40 of its U.S. subsidiaries in their March 3, 2006, filing of voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York. As part of the restructuring initiatives necessary to emerge from bankruptcy as a successful enterprise, Dana determined that it must eliminate $1.447 billion of accumulated liability for health and life insurance benefits for retirees from its unionized and non-union workforces, in addition to modifying or rejecting its collective bargaining agreements for active employees in order to emerge with restructured labor costs that will enable it to compete successfully in the troubled auto industry. In conjunction with these goals, after a period of unsuccessful negotiations, Jones Day initiated proceedings on behalf of Dana under Sections 1113 and 1114 of the Bankruptcy Code while simultaneously attempting to negotiate a settlement of outstanding issue.

After successfully negotiating a resolution of the claims of the non-union retirees, addressing over $400 million in accumulated retiree benefit obligation, as well as resolving outstanding issues relating to the IAM involving both active employees and retirees, we then negotiated with both the UAW and USW. These negotiations resulted in groundbreaking labor settlements. These agreements provided, among other things, for elimination of the Company's retiree benefit obligation (together with the settlement with the Retiree Committee noted above, almost $1.5 billion of accumulated post-retirement benefit obligation was eliminated) and the creation and funding of Voluntary Employee Benefit Association (VEBA) trusts.

**Delphi Automotive Systems Corp.**
*International Union of Operating Engineers, Local 18-S and Roger Struckman v. Delphi Automotive Systems Corporation, Delphi Safety and Interior Systems, Columbus Operations,* AAA No. 53 300 00071 01 (Arbitration March 2002)
The union and a Delphi employee sought arbitration of a grievance in which they claimed the employer improperly calculated overtime pay for a certain group of employees. This case was significant for the employer since it could have resulted in a large liability for Delphi had the arbitrator agreed with the union and the employee. Jones Day successfully represented the employer and received a ruling that Delphi's calculation methods were in compliance with the employer's collective bargaining agreements.

*Johnson, et al. v. Delphi Automotive Systems Corporation*, Case No. C-3-02-313 (S.D. Ohio, March 25, 2003)
Jones Day obtained a dismissal of 15-plaintiff lawsuit seeking substantial damages against Delphi based on alleged pre-employment representations concerning the availability of overtime hours. The complaint asserted claims for breach of implied contract, promissory estoppel, fraud, negligent misrepresentation, and emotional distress.

*In re Delphi Corp.,* Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. 2005)
Represented the debtors as special labor counsel in connection with their efforts to modify legacy collective bargaining agreements, including retiree benefits, with the United Auto Workers and various smaller unions through sections 1113 and 1114 of the Bankruptcy Code. The labor representation involved working with the Company to formulate proposals to modify their collective bargaining agreements, and advising Company representatives with respect to issues arising in collective bargaining, and litigating these issues before the court.

**General Motors Corporation**
General Motors retained Jones Day to negotiate a landmark class action settlement agreement with the United Auto Workers over retiree health care costs. The parties had been deadlocked over whether GM could unilaterally modify retiree health benefits. As a result of the settlement agreement negotiated by Jones Day, along with GM lawyers, GM will be able to reduce its $70 billion long-term retiree health care (OPEB) liability by $15 billion. On an annual basis, GM will save $3 billion in health care expense and $1 billion in cash. Negotiations with the UAW and Class Counsel covered a myriad of issues, including the financing and operations of a Voluntary Employee Beneficiary Association (VEBA) to mitigate the effects of the new monthly contributions and deductible payments on retirees; defining the class and protecting low income retirees; establishing dispute resolution procedures; and setting the legal standards for any future litigation between the parties. This settlement agreement has played a key part in GM's turnaround plan for the company.

**General Motors Corporation**
*Dana Corporation, Employer; International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO, Union; and Gary Smeltzer, Joseph Montage and Kenneth Gray, Charging Parties,* 7-CA-46965,7-CB-14803,7-CA-47078,7-CB-14119.
Jones Day represented companies as amicus curiae before the National Labor Relations Board concerning the right of employers to negotiate guidelines with the union that will apply in the event the union successfully organizes a non-represented facility.

**General Motors Corporation**
*General Motors v. UAW,* Proceeding before Umpire Roberts.
Jones Day represented General Motors in the umpire proceeding to determine whether a strike at two GM Flint, Michigan facilities, which led to a nationwide shutdown of GM, violated the no-strike clause in the labor agreement and, if so, whether the UAW was liable for GM's losses as a result of the strike. After the hearing and briefing, but prior to the issuance of a decision, Jones Day resolved the case as part of a strike settlement.

## General Motors Corporation

*Garrish v. Int'l Union and General Motors Corp.,* 417 F.3d 590 (6th Cir. 2005)
Jones Day represented General Motors Corporation in litigation alleging wrongful conduct by GM and the UAW with respect to negotiations arising out of GM Pontiac Truck bargaining and subsequent strike. The district court granted summary judgment on statute of limitations grounds.

## General Motors Company

*International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW v. General Motors LLC,* Case No. 2:10-cv-11366-AC-MJH (E.D. Mich.)
Representation of client in connection with a lawsuit filed by the UAW claiming $450 million due to alleged breach of contract.

## General Motors Corporation

*General Motors v. UAW,* C.A. No. 98-40246 (E.D. Mich. 1998)
Represented employer in relation to strike activity.

## General Motors Corporation

*General Motors v. UAW,* Proceeding before Umpire Roberts
Arbitration proceeding against the UAW for violation of no-strike clause.

## Goodyear Tire and Rubber Company, The

*Redington v. The Goodyear Tire & Rubber Company*, No. 5:07-CV-1999 (N.D. Ohio)
The Goodyear Tire & Rubber Company retained Jones Day to negotiate a resolution regarding the elimination of Goodyear's retiree health care liability for retirees from bargaining units represented by the United Steelworkers (USW). In 2006, this liability was estimated at approximately $1.2 billion, or over half of Goodyear's total Other Post-Employment Benefits (OPEB) liability, and was a significant reason that Goodyear's North American Tire division was financially underperforming. In late December 2006, Jones Day assisted in negotiating a watershed memorandum of understanding (MOU) between the parties that would completely eliminate Goodyear's OPEB liability for USW retirees. The parties agreed to establish an independent Voluntary Employees Beneficiary Association (VEBA) to which Goodyear would contribute $1 billion to help finance retiree health care benefits for current and future USW retirees. Following this contribution, and an orderly transition period, the VEBA will have sole responsibility for financing and administering USW retirees' health care benefits. Investors and stock analysts have applauded Goodyear's planned withdrawal from the costly and uncertain future of retiree health care financing. The Jones Day team represented Goodyear in its negotiations with both the USW and Counsel for individual USW retirees regarding the structure and drafting of a comprehensive settlement agreement that implemented the MOU. The parties agreed to a settlement agreement in early July 2007. The USW and individual USW retirees filed a class action in the United States District Court of the Northern District of Ohio, and the District Court has now affirmed the settlement.

*Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162 (2007)
Petitioner Lilly Ledbetter worked for Goodyear for 19 years. During that time, several different managers made discrete annual decisions regarding Ledbetter's merit increases. Ledbetter filed an EEOC charge and subsequently a complaint, challenging the cumulative effect of these 19 years of salary determinations, asserting, among other things, a Title VII disparate-treatment claim. A jury found for Ledbetter on that claim, and the Eleventh Circuit reversed. As the case reached the Supreme Court, the question presented was whether Ledbetter could bring an intentional pay discrimination claim under Title VII where the disparate pay was received during Title VII's statutory charge-filing period, but was the result of allegedly discriminatory pay decisions occurring outside that period. The Eleventh Circuit had found legally insufficient that the one raise decision made within the limitations period was intentionally discriminatory. In a 5-4 decision authored by Justice Alito, the Supreme Court adopted Goodyear's argument that Ledbetter's claim was time-barred because Title VII bars a private plaintiff from bringing an intentional discrimination claim challenging discriminatory conduct occurring outside of the statutory charge-filing period, even if that past conduct continues to have adverse effects into the limitations period.

## Hostess Brands

Jones Day served as both bankruptcy and labor counsel. Our labor engagement has involved, among other things: working with the company to draft proposals under sections 1113 and 1114 of the Bankruptcy Code for modifications to more than 300 collective bargaining agreements, including retiree benefits; negotiating with the unions in an attempt to reach a consensual resolution on concessions; litigating for an order allowing the debtors to implement their labor and benefit proposals in the event no consensual resolution could be achieved; advising

the debtors with respect to labor issues relating to liquidation and the sale of its assets; engaging in effects bargaining with the unions with respect to the impact of the liquidation and the sales process; handling WARN notices and related litigation; and advising on daily labor issues and employee communications arising in the context of the bankruptcy.

**Minneapolis Star Tribune**
Jones Day represented the Star Tribune in concessionary collective bargaining negations.  In response to the downturn in the newspaper industry, the Star Tribune sought to renegotiate its labor contracts to achieve savings in health care, pension, compensation and other personnel costs.  We worked with the employer to negotiate and secure new collective bargaining agreements and defended the employer against unfair labor practice charges associated with the renegotiation process.

**Northstar Aerospace**
Jones Day represented Northstar Aerospace with respect to labor negotiations and a work stoppage involving the International Union of Electrical Workers ("IUEW") at the company's Bedford Park, Illinois facility. Northstar retrained Jones Day to represent Northstar at the bargaining table, and we successfully negotiated a resolution to the strike by reaching a comprehensive settlement agreement including a new collective bargaining agreement and return-to-work agreement that significantly reduced the company's hourly work force and manufacturing cost structure. In connection with the strike, Jones Day also successfully defended Northstar against unfair labor practice charges (13-CA-39000) filed by the IUEW-CWA alleging bad faith bargaining and unlawful refusal to provide information.

**Philadelphia Inquirer**
Jones Day represents the Inquirer in concessionary collective bargaining negations.  In response to the downturn in the newspaper industry, the Star Tribune sought to renegotiate its labor contracts to achieve savings in health care, pension, compensation and other personnel costs.  Our lawyers worked with the employer to negotiate and secure new collective bargaining agreements.

**Port of Oakland**
Jones Day represents the Port of Oakland on all traditional labor matters.  Our lawyers have served as the lead negotiators on successor collective bargaining agreements, defended the Port against unfair labor practice charges filed with the California Public Employment Relations Board, litigated contract interpretation and discipline grievances and provided strategic analysis and advice.  Recently we were successful in concessionary contract negotiations that resulted in higher employee contributions to their pensions and a reduced retiree health care vesting and benefit schedule.

**Potash Corp. of Saskatchewan**
Jones Day advised Potash Corp. of Saskatchewan in connection with negotiations with the UFCW at the Company's Fernal, Ohio and Lima, Ohio facilities.

**ProMedica Health System, Inc.**
*NLRB v. ProMedica, et al. Case Nos. NLRB 05-1660, 05-1735, District Court Nos. 8-CA-31818 and 8-CA-32345 (6th Cir. 2006)*
Jones Day represented and advised ProMedica Health Systems regarding whether the NLRB reasonably concluded that ProMedica discriminatorily enforced its rule against solicitation in patient care area and in an NLRB election where ONA sought representation of the systems home health employer.

*St. Francis Healthcare Centre*, 336 No. 47 (NLRB 2001)
Obtained a third election for the employer in Green Spring, Ohio, as a result of material misrepresentations to the voting unit by SEIU on the eve of the second election.

*The Toledo Hospital and Toledo Children's Hospital, a subsidiary of ProMedica Health System, Inc.*, Case Nos. 8-CA-31818, 8-CA-32345, 8-RC-16175, 8-RC-16176 (NLRB)
Advise and counsel employer in petitions filed by the UAW to represent four different units; represented employer in objections and unfair labor practice charges arising from four-unit election in which employer prevailed in all units.

**Thomson Multimedia**
Jones Day negotiated a plant closing agreement for THOMSON Multimedia's Scranton, Pennsylvania plant that resolved all matters regarding the closing of a plant employing approximately 1,100 workers represented by the IUE. The agreement also terminated the collective bargaining agreement on the factory closing date, permitting

the employer to employ nonbargaining unit personnel to disassemble plant equipment, perform appropriate maintenance, and otherwise carry on the limited nature of the company's business at such site after the termination of the collective bargaining agreement.

*THOMSON Multimedia and International Union of Electrical Workers (IUE)* (2000)
Represented client in collective bargaining negotiations.

*THOMSON Multimedia Inc. and International Brotherhood of Teamsters* (2001)
Negotiated termination of collective bargaining agreement and trucking operation.

*THOMSON Multimedia and IBEW* (Marion, IN, Circleville, OH & Lancaster, PA 2002-03)
Represented client in decision and effects bargaining stemming from plant closure.

**Timken Company, The**
Jones Day represented The Timken Company in collective bargaining negotiations with the USW in a unit of several thousand employees at the company's bearing and steel operations in Canton, Ohio. Jones Day also represented The Timken Company in bargaining with the UAW over the effects of the company's sale of part of its Torrington, Connecticut, operations.

# Employee Benefits & Public Pensions

Jones Day has been devising innovative ways to solve employee benefit problems for more than 50 years. Our primary goal has remained the same – preserve client flexibility while minimizing risks.

Pension, retiree medical, fiduciary liability, and other employee benefits issues will remain central concerns as global economic opportunities continue to unfold. Handling difficult employee benefits issues in complex divestitures, mergers, acquisitions, or bankruptcy reorganizations requires a multi-disciplinary approach for which our employee benefits team is ideally suited.

In particular, our employee benefits lawyers have significant experience in solving difficult retiree health and pension legacy problems for employers with a union-represented workforce. Our lawyers, including lead team members Evan Miller and Sarah Griffin, have negotiated the resolution of pension and OPEB issues with many unions, including the UAW, the United Steelworkers, and the International Brotherhood of Teamsters. In 2010 and 2011, on behalf of the League of New York Hospitals and Nursing Homes, they led the successful negotiation and litigation that restructured both the health and pension benefits for nurses in the State of New York.

With more than 50 attorneys in our Employee Benefits & Executive Compensation Practice, we are able to provide timely assistance to our clients when they need it. A diverse client base adds another dimension to our ability to anticipate emerging employee benefit problems and help our clients respond to them quickly and effectively.

To serve our clients' needs, we provide high-value services to employers, fiduciaries, and others in these areas:

- Compensation & Benefits Counseling for Employers
- Restructurings and Bankruptcies
- ERISA & Other Employee Benefits Litigation
- ERISA Plan Asset Investments
- Executive Compensation
- Governmental Employers & Public Pension Plans
- Institutional Fiduciary Services
- Mergers & Acquisitions/Employee Benefits & Executive Compensation
- Private Equity/Employee Benefits & Executive Compensation
- Tax-Exempt Entities & Church Plans

## Recent Practice Recognition

- **Law Firm of the Year (2013) - Employee Benefits**
  *U.S. News/Best Lawyers*
  For the second year, Jones Day's Employee Benefits practice received the prestigious "Law Firm of the Year" recognition from *U.S. News* and *Best Lawyers*. This award is given to an employee benefits practice at a single law firm, based upon client and peer reviews of, among other things, the firm's expertise, responsiveness, understanding of the client, and its needs and cost-effectiveness.

- **Employment Group of the Year (2012)**
  *Law360*
  Jones Day's Employee Benefits Practice together with its Labor and Employment practice was named a 2013 "Employment Group of the Year" by publisher *Law 360*.

# Awards and Recognition

**U.S. NEWS & WORLD REPORT AND BEST LAWYERS®**

- *U.S. News/Best Lawyers* Jones Day received the prestigious 2013 "Law Firm of the Year" recognition for its Employee Benefits practice. (October 2012)

- Nationwide, Atlanta, Cleveland, and Dallas Tier 1 rankings in Employee Benefits Law in 2011-2012 "Best Law Firms" report. (Nov. 2011)

- Jones Day's Employee Benefits practice was recognized in Atlanta, Cleveland, Dallas, and Washington, D.C. (Sept. 2010)

**LEGAL 500**

- Evan Miller received Band 2 ranking for 2012.

**American College of Employee Benefits Lawyers**

- Evan Miller is a Fellow of the ACEBC. Selection as a Fellow reflects the Board's judgment that a nominee has made significant contributions to the advancement of the employee benefits field.

**Super Lawyers 2012 and 2011**

- Five of the "Top 100" Washington Super Lawyers are Partners of Jones Day., including Evan Miller who was chosen in 2012 DC Super Lawyers in the area of Employee Benefits/ERISA.

- Manan Shah (a partner in our NY Office) was also nominated as a Rising Star.

**PLC Which Lawyer**

- Evan Miller recognized.

**CHAMBERS & PARTNERS**

- *Chambers USA* ranked the Employee Benefits Practice nationally, in Washington, D.C., and in Ohio. The practice received a "Band 1" ranking in Ohio  The guide stated:  "They put their necks on the line and make decisions as part of the team, not as outside advisers." (June 2011).

- In 2012 the Employee Benefits practice was ranked in Washington and in Ohio.  The practice received a "Band 1" ranking in Ohio and a national ranking in ERISA Litigation in Washington.  The guide stated: "Peers praise this outstanding team of attorneys." (June 2012)

**LAW 360**

- Jones Day's Employee Benefits Practice was named a 2012 "Employment Group of the Year" by publisher *Law 360*.

**Best Lawyers in America**

- Eight Employee Benefits lawyers were recognized in the 2012 edition of *The Best Lawyers in America* in the specialty of Employee Benefits law.  (Sept. 2011)

**The National Law Journal**

- Evan Miller was recognized as one of the nation's 40 best ERISA attorneys.

# Public Pension-Related Representations

Jones Day has extensive experience in the representation of public pension plans and other benefit plans and their government sponsors. The unique environment occupied by public plans derives from their status as tax-exempt entities that: (i) are sponsored and administered by a political body, typically operated under open meeting, public records, and contract bidding standards; and (ii) are subject to a special set of tax and fiduciary laws and standards.

Understanding this background, we advise governments and their plans by providing: fiduciary and governance counseling; assistance in compliance with federal and state tax requirements; counseling regarding state pension laws, including "vested rights" concepts and the impact of proposed legislation; advice regarding the design, operation, administration, and funding of employee benefit plans; advice regarding health-care regulations; and litigation and pre-litigation advice, including statutory interpretation, impairment of contractual vested rights, and funding of defined benefit plans. Examples of relevant representations are listed below.

**Alameda County Employees' Retirement Association**
Jones Day advised Alameda County with respect to the adoption and operation of a 401(h) account for retiree medical benefits. In addition, we assisted in counseling Alameda County and the Alameda County Employees' Retirement Association on the plan qualification and federal tax issues presented by using ACERA reserves and accumulated vacation time to fund retiree medical benefits.

**California Public Employees' Retirement System**
Jones Day served as primary outside health care counsel for CalPERS. As outside fiduciary counsel to the Board of Administration, Jones Day advised the Board on a variety of matters, including divestment issues and Constitutional vested rights issues in the context of retiree health benefits.

**City of San Jose**
Advised on the City on its ability to revise its retiree health program under state law.

**Contra Costa County**
Advised Contra Costa County on its ability to reduce or modify retirement benefits under the vested rights doctrine and tax consequences of plan design.

**County of Los Angeles**
For more than 25 years, Jones Day has served as counsel to Los Angeles County with respect to the employee benefits that it provides to its approximately 80,000 employees. We have advised the County regarding its qualified defined benefit plan, administered by the Los Angeles County Employees Retirement Association and its ability to reduce or modify pension and retiree health benefits under the "vested rights" doctrine. We assisted the County in establishing an account under Section 401(h) of the Internal Revenue Code for pre-funding the County's OPEB liability. In addition, we assisted the County in creating a trust that is intended to be tax-exempt as performing an essential governmental function under Code section 115 to fund its retiree health obligations consistent with applicable accounting standards and the County Employees' Retirement Law. We represented the County in negotiating the terms of the trust with union representatives. We routinely advise the members of the Plan Administrative Committee for each of the County's two eligible deferred compensation plans under Code sections 457 and 401(k), about their fiduciary duties and obligations and applicable federal tax law. The Plan Administrative Committees consist of County officers and union representatives, and one of the plans includes a member appointed by the County Board of Supervisors.

**Los Angeles Unified School District**

Advised Los Angeles Unified School Board regarding its tax sheltered annuity program and vested rights issues and funding considerations with regard to the District's retiree health program.

**Merced County Employees Retirement Association**

Jones Day advised Merced County Employees Retirement Association's administrative board regarding establishment and funding of 401(h) account for retiree health benefits.

**Multiple public pension plans**

Jones Day has advised multiple public pension plans on the ERISA and state law pension plan issues presented by investments in private equity investments, pooled real estate investment vehicles, or hedge fund investments.

# OPEB Litigation Experience Within the Sixth Circuit

When addressing collectively bargained OPEB liabilities, it is often the case that agreements with unions and retirees are obtained only after litigation, with such agreements then subject to a formal court approval process. Jones Day is probably the most experienced firm in the United States in developing strategies to mitigate OPEB liabilities, and to obtain agreements with unions and retirees to modify such liabilities in the context of litigation. Further, much of the litigation that the Firm has conducted in this area has been in federal district courts within the Sixth Circuit, and in the Sixth Circuit Court of Appeals itself. Set forth below is a representative list of such litigation during the last seven years within the Sixth Circuit. (Cases marked by asterisks are those in which Evan Miller was lead or co-lead counsel.)

**UAW v. General Motors, Case No. 2:10-cv-11366**
In a case currently pending in the Eastern District of Michigan, Jones Day is defending General Motors against the UAW's claim that GM owes an additional $450 million to a retiree health VEBA.

**Garbinski v. General Motors, Case No. 12-1549**
In this case using a comparable legal framework currently pending in the Sixth Circuit, General Motors won at the district court on a motion to dismiss class claims asserting a right to vested disability benefits calculated in a certain manner.

**Cates v. Cooper Tire & Rubber Company, Case No. 3:06-cv-00940;**
**Johnson v. Cooper Tire & Rubber Company, Case No. 3:09-cv-00245**
After the court granted the plaintiffs' motion for judgment on the pleadings, Jones Day took over as lead counsel and negotiated a comprehensive settlement that included provisions that Medicare-eligible retirees would not be eligible for medical benefits from Cooper Tire. Settlement approved by court.

**Strain v. STERIS Corporation, Case No. 1:08-cv-01364**
Jones Day took over as lead counsel to negotiate a comprehensive settlement agreement, which we presented to the Court and secured final approval.

**Redington. v. Good year Tire & Rubber Company, Case No. 5:07-cv-1999**
Jones Day negotiated a comprehensive settlement of Goodyear's retiree healthcare obligations for USW retirees, which included a transfer of total liability for these obligations from the Company to an independent VEBA.

**Beaty, et. al. v. Continental Automotive Systems U.S., Inc., 10-cv-14217**
In this lawsuit brought by the UAW and a class of retirees in the Northern District of Alabama, Jones Day won a motion to transfer the case to the United States District Court for the Eastern District of Michigan, where it then negotiated and obtained court approval of a comprehensive settlement agreement, which included a transfer of the total liability for retiree medical obligations from CAS to the UAW-Chrysler VEBA.

**\* Pringle, et. al. v. Continental Tire North America, Inc., 3:06-CV-2985**
Jones Day successfully negotiated and obtained court approval of the settlement of this lawsuit brought by the USW and a class of retirees, which included a transfer of the total liability for retiree medical obligations to an independent VEBA.

**\* UAW v. General Motors and Ford Motor Company, 497 F.3d 615 (6th Cir. 2007)**
Evan Miller represented Ford Motor Company in connection with appeal by retirees attacking negotiated settlement with UAW of OPEB liabilities and creation of a landmark VEBA trust to finance same.

**JONES DAY**

# Selected ERISA-Related Experience

Ranked as one of the top ERISA litigation practices by *Chambers USA*, Jones Day's practice has a proven track record of success in handling complex ERISA cases at the district court, appeals court, and Supreme Court levels.

Jones Day's ERISA lawyers combine litigation experience with substantive ERISA knowledge, and have significant experience handling all forms of ERISA fiduciary breach litigation (Including stock drop cases), accrued benefit cutback and other challenges to the structure and operation of defined benefit plans (including cash balance plans), as well as retiree health, ERISA preemption, and disputes involving multiemployer plans.

**Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan**
The Eighth Circuit Court of Appeals held that the Administrative Committee did not act unreasonably or abuse its discretion in seeking reimbursement for health care benefits from a plan participant's personal injury settlement pursuant to the reimbursement provision contained in the Associate Benefits Book, which the Administrative Committee treated as a plan document. The Eighth Circuit reversed the district court's conclusion that the reimbursement provision was not binding on the plan participant because it was not part of the formal plan documents.

**Blue Cross Blue Shield of Michigan**
*DeLuca v. Blue Cross Blue Shield of Michigan, 2010 WL 4961726 (6th Cir. Dec. 8, 2010)*
Affirming judgment in favor of Blue Cross in class action alleging breach of ERISA fiduciary duty in administering self-insured health plans.

**Bon Secours Health System, Inc.**
Jones Day regularly advised client regarding all facets of qualified and nonqualified retirement benefits including IRS qualification issues, church plan issues, 403(b) plans, 457 plans and sophisticated nondiscrimination testing issues and controlled group issues.

**Bridgestone Americas Holding Inc.**
Jones Day advised the client regarding (1) all facets of the design and administration of qualified and nonqualified retirement plans, deferred compensation plans and executive compensation arrangements, including issues involving taxation, IRS qualification, ERISA compliance, reporting and disclosure, and (2) the design and implementation of numerous employee benefit programs, including medical, retiree medical, disability, severance, flexible spending arrangements and wellness programs. Jones Day also advised the client on acquisitions and dispositions and on the benefits provisions of collective bargaining agreements.

**Caterpillar Inc. Retirement Plan Committee**
Jones Day advised Caterpillar Inc., one of the world's largest manufacturers of construction and mining equipment, in connection with a contribution of common stock valued at $650 million to its defined benefit pension plans. The transaction included the hiring of an independent fiduciary to manage the stock post-contribution.

**CBS Corporation**
*Muto v. CBS Corp., 668 F.3d 53 (2d Cir. 2012)*
Jones Day obtained favorable ruling on behalf of client in the U.S. Court of Appeals for the Second Circuit in important ERISA benefits case, dismissing a putative class action as time-barred.

**CBS Corporation**
*Mueller, et al. v. CBS Corporation, No. 99-1310 (W.D. Pa. 2003)*
We defeated an attempt by three plaintiffs to contemporaneously assert an ERISA class action and an ADEA collective action that potentially would have reached thousands of former employees. The named plaintiffs contended that the employer violated ERISA when it amended a pension plan to eliminate the option of receiving plan benefits accruing in the future in a lump sum and alleged that the pension plan amendment discriminated against them on the basis of age. They also claimed that they had been terminated on the basis of age. The

district court initially declined to certify an ERISA class pursuant to Rule 23, and we obtained a favorable settlement of the individual ERISA claims. The district court conditionally certified, then decertified, a class of 3,100 age discrimination plaintiffs. We subsequently settled the individual age discrimination claims on a favorable basis.

**CBS Corporation**
*Gritzer, et al. v. CBS, Inc. and Westinghouse Pension Plan*, No. 98-2080 (W.D. Pa. 2001), affirmed, 275 F.3d 291 (3d Cir. 2002)
Jones Day obtained summary judgment for the employer in a class action suit alleging ERISA violations for failure to pay permanent job separation benefits to employees terminated by a successor employer with whom the employer had a reciprocal services agreement. The trial court granted our motion for summary judgment, and the Third Circuit affirmed.

**Chevron Corporation**
*McDaniel v. Chevron Corporation*, 203 F.3d 1099 (9th Cir. 2000)
Chevron retirees brought a class action alleging that Chevron had miscalculated their lump sum retirement benefits by improperly adjusting the applicable actuarial table to reflect the demographics of Chevron's plan population. Chevron won summary judgment in the district court and prevailed again on appeal to the Ninth Circuit, which held that the plan language was sufficiently broad to permit the adjustment.

**Continental Airlines**
$8.5 billion all-stock merger of equals with United ($3.2 billion in equity and $5.3 billion in assumed long-term debt at Continental).

**Continental Tire North America, Inc.**
We prevailed on behalf of Continental Tire North America, Inc. ("CTNA") in two significant arbitrations involving plant closure benefits.  After CTNA indefinitely suspended tire production at its Charlotte, North Carolina facility, the USW filed grievances seeking plant closure pension and insurance benefits valued at nearly $40 million dollars.  After three days of hearings and substantial briefing, we succeeded in persuading the arbitrator to issue awards denying both grievances in their entirety.

**Continental Tire North America, Inc.**
Representation in a class action under ERISA and Sec. 301 of the Labor-Management Relations Act filed by retirees and the USW challenging CTNA's modification of its retiree medical plan for retirees at its unionized plants.

**Crown Cork & Seal Company, Inc.**
Jones Day provided ERISA and fiduciary guidance to litigation section lawyers in connection with declaratory judgment action initiated as a defendant class action by Crown Cork & Seal with respect to its right to implement changes and reductions in retiree medical benefits.

**Crown Cork & Seal Company, Inc.**
*Crown Cork & Seal Company, Inc. v. United Steelworkers of America,* Case No. 1:03-CV-3882 (N.D. Ill.), *Crown v. International Association of Machinists*, Case No. 8:03-CV-222 (D. Neb.) and *Lawhorn v. Crown*, Case No. 1:03CV-461 (S.D. Ohio.)
Representation of Crown in a class action where Crown changed the level of retiree medical benefits for approximately 10,000 retirees formerly represented by the USW and approximately 2,000 retirees formerly represented by the IAM.  In both cases, Crown filed declaratory judgment actions against the unions; Lawhorn is the USWA countersuit.  The case settled favorably in arbitration for Crown.

**Diebold, Incorporated**
*In re Diebold, Inc. ERISA Litigation*, No. 06-CV-0170 (N.D. Ohio 2006)
Representing company directors and plan fiduciaries in ERISA actions alleging that company stock was an imprudent investment option for 401(k) plan.

**Diversey, Inc.**
*Decubellis v. Retirement Plan for Employees of JohnsonDiversey, Inc.*, No. 08-cv-0245 (E.D. Wis. 2010) (consolidated with *Thompson v. Retirement Plan for Employees of S.C. Johnson & Sons, Inc.*, No. 07-cv-1047 (E.D. Wis. 2010)
Jones Day represents JohnsonDiversey, Inc.'s cash balance plan with respect to claims that the plan incorrectly calculated lump sum distributions of pension benefits. Jones Day obtained dismissal of a number of the claims and obtained a favorable ruling regarding the applicable statute of limitations.

**JONES DAY®**

**General Motors LLC**

Jones Day advised General Motors LLC in connection with a transaction announced on June 1, 2012 to eliminate approximately $26 billion in General Motors' balance sheet liability, and result at closing in the largest single-employer plan termination and pension risk transfer in U.S. history. This continues the firm's tradition of advising General Motors on ground-breaking employee benefits matters, including General Motors' creation of a retiree health VEBA trust.

**General Motors Company**

Jones Day advised General Motors Company in connection with a contribution of 60.6 million newly-issued shares of common stock valued at approximately $2 billion to its defined benefit pension plans. The transaction included an analysis of the requirements for the contribution under ERISA.

**General Motors Company**

Represented client in obtaining a prohibited transaction exemption from the U.S. Department of Labor to allow GM to transfer company securities and certain other assets to the UAW GM Retirees Medical Benefits Plan and its associated UAW Retiree Medical Benefits Trust, a VEBA that assumed responsibility for the provision of post-retirement health benefits for certain UAW-represented GM retirees, and also provided advice on the design, creation, and implementation of the agreements that led to the creation of the new VEBA.

**J.C. Penney Company, Inc.**

Jones Day advised J.C. Penney Company, Inc., one of America's leading retailers operating throughout the United States and Puerto Rico, in connection with a contribution of $340 million of its Common Stock to its defined benefit pension plan pursuant to a private placement and the subsequent registration of those shares for resale by the plan. The transaction included an analysis of the fiduciary requirements of the contribution under ERISA.

**Kaiser Aluminum Corp.**

Jones Day obtained a unanimous decision from the United States Court of Appeals for the Third Circuit in *In re Kaiser Aluminum Corp.* in which the Third Circuit held that, where a company in bankruptcy seeks a distress termination of multiple pension plans under the reorganization test set forth in ERISA, bankruptcy courts should apply the test to all plans in the aggregate.

**League of New York Hospitals & Nursing Homes Arbitration With New York State Nurses Union**.

In June 2011 Jones Day lawyers achieved an important victory for 41 New York City area hospitals and nursing homes, as Arbitrator George Nicolau issued a binding arbitration award ordering the Trustees of the New York State Nurses Association Benefit Fund (NYSNA Fund) to make wide-ranging changes in the Fund's health benefits program, including imposing employee contribution obligation obligations toward the cost of health care coverage. The NYSNA Fund is a multiemployer, Taft-Hartley trust fund that provides health and welfare benefits to over 14,500 nurse members of the New York State Nurses Association union and their families, and benefits are paid by participating hospitals and nursing homes.

**League of New York Hospitals & Nursing Homes Arbitration with New York State Nurses Union**

In October 2012, Jones Day lawyers achieved an achieved an important victory for 41 New York City area hospitals and nursing homes, as an Arbitrator Alan Viani  issued a binding arbitration award ordering the Trustees of the New York State Nurses Association Pension Fund (NYSNA Fund) to make wide-ranging cuts in benefits, including cuts in pension accrual rates and subsidized early retirement features, which the union and the Fund trustees had resisted.

**The Lincoln Electric Company**

Routine advice regarding (1) all facets of the design and administration of qualified and nonqualified retirement plans, deferred compensation plans and executive compensation arrangements, including issues involving taxation, IRS qualification, ERISA compliance, reporting and employee communications, and (2) the design and implementation of numerous employee benefit programs, including health care benefits, severance programs and flexible spending arrangements.

**Macy's**

Jones Day represented Macy's, Inc., its directors, and the Macy's Pension and Profit-Sharing Administrative Committee to obtain, in June 2010, the dismissal of a lawsuit alleging ERISA violations based on Macy's alleged failure to locate former employees and notify them at the time they became eligible to receive normal retirement pensions. The complaint alleged that the defendants breached their fiduciary duty to disclose, and that Macy's engaged in prohibited transactions by retaining assets in the plan that should have been paid to participants.

**Memorial Sloan-Kettering Cancer Center**
*Pizzo v. Memorial Sloan-Kettering Cancer Center Pension Plan,* 1:11-cv-02297-PGG, (S.D.N.Y. 2011)
Jones Day represented a hospital pension plan against a current employee's claims of wrongful denial of eligibility to participate in the pension plan. Jones Day obtained voluntary dismissal of the claims.

**Verizon Communications Inc**.
In 2012, Jones Day advised Verizon Communications Inc. in its transfer of approximately $7.5 billion in Verizon balance sheet liabilities attributable to outstanding pension obligations to Prudential Life Insurance Company of America. The transaction involves the Verizon Management Pension Plan which covers approximately 41,000 management retirees.

**Washington Post, The**
Representation in connection with negotiating rights to withdraw and implementing withdrawals from multi-employer pension plans, including CWA-ITU Negotiated Pension Plan, IUOE Central Pension Fund, and IAM National Pension Fund.

# Tab 8 — Significant Experience and Expertise in Other Relevant Areas



- Tax Collection and Assessment; Collection of Other Types of Revenues
- Life and Disability Plan Management
- Grant Application and Administration
- Procurement
- Environmental Issues
- Certain Federal and Michigan State Legislation

# Tax Collection & Assessment;
# Collection of Other Types of Revenues

Jones Day's state and local tax practice, which is an integrated part of an extensive world-wide business tax team, has extensive experience dealing with the wide range of issues that may arise in connection with the assessment and collection of municipal taxes, as well as the collection of other types of revenues. The following are representative examples of Jones Day's experience providing tax advice to governmental entities:

- Jones Day successfully represented the City of East Point, Georgia in a claim of first impression against Fulton County and its tax administrators seeking to obtain an accounting and recovery of diverted taxes billed and collected by the County of behalf of the City. Jones Day's quick intervention prevented the City from defaulting on its public obligations.

- Jones Day's state and local tax lawyers obtained a ruling that it was proper to sustain a franchise tax assessment where (a) the taxpayer's interest income was derived from an in-state source and (b) its commission income from an English subsidiary did not involve technical or other services rendered.

- Jones Day negotiated favorable settlements of income tax assessments in Massachusetts and Maryland against an intangible trademark-holding company affiliated with a food-products company owned by a foreign parent.

Jones Day's state and local tax lawyers keep themselves and their clients up to date with the latest developments in state and local tax laws, including by publishing a quarterly newsletter titled "Jones Day State Tax Return." This newsletter regularly includes updates about Michigan tax law. For example, the December 2011 edition of the Jones Day State Tax Return discussed, among other things, Michigan's then newly-enacted Michigan Corporate Income Tax. See Charolette Noel & Karen H. Currie, *Nexus: Update on Recent Developments for the Third Quarter 2011*, Jones Day State Tax Return Newsletter, Vol. 18, No. 4 (December 2011). Jones Day is well versed in the latest developments in Michigan tax law and its experience with Michigan tax law is particularly extensive, having advised many clients – most notably Chrysler (see Tab 11) – regarding state and local tax matters. Jones Day also provided, among other things, tax advice to Michigan-based International Automotive Components Group North America, LLC (IAC NA), in connection with its $134 million acquisition of Soft Trim and $150 million acquisition of the North American Interior Systems Division of Lear Corporation.

JONES DAY

# Life and Disability Plan Management

In addition to Jones Day's comprehensive employee benefits experience (described in detail in Tab 7), Jones Day has particular experience in designing, funding, implementing, and administering life insurance and disability plans.

For example, Jones Day has advised:

- The County of Los Angeles regarding, among other things, the design and taxation of the life insurance program and disability health program offered to active employees;

- The San Diego County Employees Retirement System and the retirement plans maintained by the City of Los Angeles regarding the interpretation of disability retirement provisions in the governing statutes and taxation of disability retirements;

- Sempra Energy regarding the design, drafting, implementation, and claims administration of self-insured long-term disability plans covering more than 10,000 employees;

- Premier Farnell regarding, among other things, the design, funding, implementation, and taxation of various welfare benefits, including disability, life insurance, medical, retiree medical, VEBA, and flexible spending accounts;

- Bridgestone Americas Holding Inc. regarding, among other things, the design and implementation of numerous employee benefit programs, including disability, medical, retiree medical, severance, flexible spending arrangements, and wellness programs; and

- Chem-Trend, Inc. regarding, among other things, the design, funding, implementation, and taxation of various welfare benefits, including life insurance, disability, retiree medical, VEBAs, educational assistance plans, and severance.

Moreover, Jones Day regularly provides many of its public pension system clients with advice on the tax issues raised by the provision of death and disability benefits.

# Grant Application and Administration

Jones Day also has significant experience in the area of grant application and administration.

For example, Jones Day represented FirstEnergy Corp. in connection with its receipt of a $57.47 million Smart Grid Investment Grant and related contracts. FirstEnergy's grant was part of $3.4 billion appropriation for smart grid investments from the U.S. Department of Energy authorized by the American Recovery and Reinvestment Act (ARRA) of 2009.

Similarly, Jones Day represented OGE Energy Corp. on its Smart Grid Investment Grant for $130 million from the U.S. Department of Energy (DOE). OGE's grant also was part of the $3.4 billion for smart grid investments authorized by the ARRA of 2009. The Jones Day team counseled OGE Energy on DOE and Recovery Act standards and regulations, negotiated the terms and conditions of OGE Energy's smart grid grant agreement with DOE, and prepared a standard form addendum for purchase orders issued by the client for procurements involved in OGE's smart grid project.

In addition, Jones Day attorneys have represented the City of Anchorage, Alaska in connection with resolving various federal grant issues in the context of a federal audit.

While in the private sector prior to joining the Firm, Jones Day partner Yvette McGee Brown (*see* Professional Biography, at Tab 3, page 23) served as President of the Nationwide Children's Hospital (Center for Child and Family Advocacy), regularly supervising the preparation of grant requests to various governmental entities and foundations. Moreover, a number of other Jones Day attorneys have acquired significant experience with the grant application/administration process while employed in the public sector prior to joining the Firm.

These representations and activities, among others, provide Jones Day with the knowledge and skills to effectively assist the City of Detroit with any issues that may arise relating to grant applications and administration.

JONES DAY

# Procurement

Funding and resources have increased in all areas of government procurement — including in less traditional areas such as infrastructure and financial services. To address this growing area, Jones Day's government contracts lawyers offer broad-based agency experience, specific industry knowledge, and outstanding counseling and litigation proficiency to help clients navigate the maze of statutes, regulations, and contractual provisions involved in government contracting.

Jones Day's government contracts practice spans the full range of government contracts related to counseling and litigation. Jones Day's representation of a variety of U.S. and non-U.S. corporations engaged in a wide spectrum of commercial and defense-related industries — including aerospace, engineering and construction, computer technology, nuclear facilities, environmental remediation, health care, munitions, energy, and telecommunications — makes Jones Day uniquely qualified to assist the City of Detroit with respect to its various procurement needs.

Jones Day lawyers have extensive experience negotiating and drafting contract terms in connection with government procurements, including prime contracts with governmental entities, teaming agreements, subcontracts, and joint venture agreements. For example, Jones Day lawyers assisted a client in negotiating terms in connection with the U.S. Government's principal internet management contract and have been involved with further discussions with the client and Government regarding the proper scope of those terms. In another instance, our attorneys drafted and negotiated a key subcontract for a Fortune 200 technology client in connection with the sale of one of the client's divisions to another government contractor.

Multiple Jones Day attorneys have acquired significant experience with government contract procurement while employed in the public sector prior to joining the Firm. For example, Jones Day attorneys have supervised and approved government request for proposal processes (including the identification of relevant criteria and selection of winning bidders) while serving within state executive and judicial branches as assistant attorneys general and judges, respectively.

The following are some representative recent engagements involving procurement matters:

### Los Angeles County Metropolitan Transportation Authority (MTA)
Jones Day represented the MTA in a writ of mandate proceeding in which an unsuccessful bidder on a contract challenged the award of the contract. The petitioner alleged that the procurement and award process had been tainted by outside political influence and motivated by bias against the unsuccessful bidder and certain of its members and/or subcontractors. Although events subsequent to the briefing of the appeal rendered the disposition of the decision on the merits moot, Jones Day succeeded on appeal in having the trial court's decision in favor of the challenger vacated.

### Edison Mission Energy Ltd.
Jones Day assisted Edison Mission Energy Ltd. with the drafting and negotiation of an approximately $570 million turnkey engineering, procurement, and construction agreement for a pollution control equipment retrofit project involving the addition of flue-gas desulfurization retrofit scrubber systems to the Homer City Generating Station in Homer City, Pennsylvania.

### Entergy Operating Companies
Jones Day advised the Entergy Operating Companies, which provide retail electric service to 2.6 million customers in Arkansas, Louisiana, Mississippi, and Texas, in connection with the design and implementation of a new energy resource procurement strategy that involves semiannual requests for proposals or RFPs. The RFPs sought bids for the supply of energy products, as well as proposals to sell generating units, to meet anticipated needs to acquire approximately 2,000 MW for 2003 and 3,600 MW to 6,800 MW over the next decade. Jones Day helped draft Entergy's first RFP in Fall 2002, as well as a supplemental RFP and Spring 2003 RFP. Jones Day has also advised Entergy on all transactions pursued as a result of bids received, including power purchase agreements and asset acquisitions.

**The Dayton Power and Light Company**

Jones Day assisted The Dayton Power and Light Company in the design and implementation of contractual arrangements in connection with its coal portfolio management and procurement strategy, as well as a related credit sleeve with Merrill Lynch Commodities Inc.

**Oklahoma Gas and Electric Company (OG&E)**

Jones Day advised OG&E in connection with (a) its purchase from Renewable Energy Systems Americas Inc. of the project development assets for the 227.5 megawatt Crossroads wind farm project; (b) the supply by Siemens to OG&E for the construction for the project of 95 2.3-MW rated wind turbine generators and three 3-MW direct drive wind turbine generators, the first of their kind to be installed in the United States; and (c) the supply by RES America Construction to OG&E of the balance of plant engineering, procurement, and construction services for the project.

# Environmental Issues

Jones Day's lawyers have been involved in some of the most high-profile and precedent-setting environmental matters in the history of environmental law. Many of our lawyers have practiced environmental, health, and safety law since its inception in the early 1970s, and several have served in prominent positions in federal agencies, including the U.S. Environmental Protection Agency and the U.S. Department of Justice. Forty environmental lawyers in offices throughout the world work as an integrated team with 50 other Jones Day lawyers who focus on related areas, such as real estate and property, toxic tort, insurance coverage litigation, OSHA counseling, and trial practice.

Among other things, our lawyers help clients evaluate the regulatory, liability, and workplace safety and health issues that could affect business transactions; handle complex and costly environmental litigation; pursue alternative methods of dispute resolution; and structure creative settlements.

The following is a sampling of recent engagements that reflect Jones Day's ability to provide effective and efficient advice to the City of Detroit on myriad environmental issues, including multiple representations on behalf of public sector clients.

**Illinois Department of Transportation**
Jones Day acted as special assistant attorney general for the Illinois Department of Transportation in connection with the preparation of a supplemental environmental impact statement (EIS) related to the proposed I-355 tollway extension in the southwest Chicago metro area.

**City Manager of Lawndale, California**
Jones Day defended the city manager of Lawndale, California against state environmental prosecution.

**Cities of Kent, Cuyahoga Falls and Munroe Falls; Village of Silver Lake; Portage County Board of Commissioners**
After the City of Akron, Ohio constructed a reservoir by damming the Cuyahoga River, the reduced river flow resulted in stringent permit limitations for the wastewater treatment plants operated by Jones Day clients Portage County Board of Commissioners and the Cities of Kent, Cuyahoga Falls, Munroe Falls, and the Village of Silver Lake. Akron also laid claim to all surface water and aquifers in a three-county area in an attempt to create a regional monopoly for its water department. Jones Day filed suit to enforce its clients' right to use the streams and aquifers for their water supplies and to require Akron to release a constant flow from its dam. The Ohio Supreme Court ultimately ruled that the current flow of the Cuyahoga River in Portage and Summit counties below the Lake Rockwell dam must be maintained, a decision that avoided the need for operators of sewage treatment plants along the Cuyahoga, including Portage and Summit counties and the cities of Kent and Ravenna, to make costly state-mandated improvements to the plants.

**Blairsville Municipal Authority**
Jones Day represented Blairsville Municipal Authority in its successful appeal of a non-coal mining permit that might have affected its ability to provide water to community.

**Chevron**
Jones Day serves as lead U.S. counsel for Chevron with respect to various legal and administrative proceedings arising out of oil seeps that occurred off the coast of Brazil in November 2011 and March 2012. Along with private class-action lawsuits, there are federal and state civil actions seeking billions of dollars for alleged environmental damages, and related criminal charges against Chevron Brazil and several of its employees. In addition to providing strategic advice, Jones Day is coordinating closely with local Brazilian counsel regarding Chevron's defense across the various proceedings.

**Chrysler LLC**

Jones Day served as environmental counsel in the sale of Chrysler's assets to Fiat-led "New Chrysler" in Chrysler's historic chapter 11 proceedings, as well as the defense of related claims litigation by the federal government and several states involving legacy environmental liabilities alleged to exceed $350 million.

**EME Homer City Generation L.P.**

Jones Day defended EME Homer City Generation and the current and former owners of the coal-fired, electricity-generating plant that EME Homer City Generation operates in Homer City, Pennsylvania, against claims alleging violations of the provisions of the federal Clean Air Act and related regulations.

**Eramet Marietta Inc.**

Jones Day defended Eramet Marietta against claims filed by U.S. EPA and the States of Ohio and West Virginia alleging natural resource damages and violations of the Clean Water Act.

**Midwest Generation LLC**

Jones Day successfully defended Midwest Generation LLC, an independent electrical power producer, in an action brought by the State of Illinois and the Department of Justice alleging violations of the Clean Air Act and related regulations.

**Transocean Offshore Deepwater Drilling, Inc.**

Jones Day represented Transocean Offshore Deepwater Drilling, Inc. and certain of its affiliates in connection with the April 20, 2010 explosion of the Deepwater Horizon at the Macondo well in the Gulf of Mexico that resulted in the deaths of eleven crew members and the largest oil spill in U.S. history. Jones Day assembled a multi-office and multi-practice team of attorneys in Dallas, Houston, Chicago, New York, Pittsburgh and Washington D.C. to represent Transocean in litigation, regulatory proceedings, Congressional investigation, and environmental and insurance matters arising from the incident.

**Ethyl Corporation**

Jones Day defended Ethyl Corporation against a large environmental property damage case filed under, among other things, the Resource Conservation and Recovery Act, CERCLA, and common law, seeking recovery in excess of $38 million for alleged PCB contamination at a property formerly owned by Ethyl.

**Westinghouse Electric Corp.**

Jones Day represented Westinghouse Electric Corporation in a citizen suit claiming damages related to the Bettis Atomic Laboratory's alleged release of radioactive and hazardous waste materials.

**Xcel Energy, Inc.**

Jones Day defended Xcel Energy in connection with a class action suit claiming that the client's operations caused both global warming and Hurricane Katrina.

**Cargill, Inc.**

Jones Day represented Cargill, Inc. with respect to the Petroleum Recovery Site in Beaver County, Pennsylvania. Cargill, through its subsidiary North Star Steel, was alleged to be the party with the greatest share of liability at this site. After discussions with the Commonwealth of Pennsylvania Department of Environmental Protection (DEP), the DEP agreed to look to other parties for their allocable share of costs at that site. As a result, Cargill, the DEP, and other responsible parties reached an agreement resulting in Cargill's alleged liability at the site being settled for a fraction of the DEP's original demand.

**Gould Electronics**

Jones Day assisted Gould in coordinating environmental actions to obtain a No Further Action letter for a TCE ground water site in Urbana, Ohio. The environmental investigation and remediation of the site, a circuit breaker manufacturing facility formerly operated by Gould, yielded the most complex No Further Action letter ever submitted under Ohio EPA's Voluntary Action Program. Jones Day's representation has included completion of Ohio EPA's first-ever "sufficient evidence" agreement to permit a voluntary cleanup in lieu of enforcement, direct negotiation with the director of Ohio EPA regarding the scope of the voluntary action, and coordination of expert environmental services in support of the cleanup with expert services in support of a related "toxic tort" class action.

**Old Carco Liquidation Trust**

On behalf of Old Carco Liquidation Trust, successor in interest to Chrysler LLC, Jones Day successfully resolved litigation by and against Old Carco as a result of the City of Kenosha, Wisconsin's efforts to block the Trust's

disposition of a former Chrysler Engine Plant.  Jones Day continues to represent the Trust in the implementation of the parties' settlement agreement and in the disposition of the property.

**DPH Holdings Corporation**
Jones Day currently represents DPH Holdings Corporation (formerly Delphi Automotive) in negotiations with the Department of Justice, the State of Michigan and the State of Ohio to resolve remaining environmental bankruptcy claims and to establish an environmental trust for former Delphi sites in Michigan and Ohio.

# Certain Federal and State Legislation

Given the size and scope of the Firm's practice and client base (*see* Tab 2), Jones Day attorneys are well-versed in a wide range of areas of federal and state law.  Moreover, approximately 400 Jones Day attorneys have significant prior experience working within virtually all areas of federal, state, and local government.  For example:

- Approximately 75 Jones Day lawyers are former employees of the U.S. Department of Justice, including approximately 40 former U.S. Attorneys, one of which was an Assistant U.S. Attorney for the Eastern District of Michigan.

- Approximately 12 Jones Day lawyers are former employees of the Federal Trade Commission, 4 are former employees of the U.S. Securities and Exchange Commission and 3 are former employees of the U.S. Internal Revenue Service.

- Numerous other Jones Day attorneys have worked for the federal government, including for the following departments, entities, and commissions, among others:  U.S. Senate; U.S. House of Representatives; Federal Communications Commission; U.S. Environmental Protection Agency; Department of Commerce; Department of State; National Labor Relations Board; Office of Federal Public Defender; Patent and Trademark Office; Department of Labor; Department of Treasury; Federal Election Commission; Federal Bureau of Investigation; Department of Health and Human Services; Department of Agriculture; and Department of Transportation.

Jones Day attorneys also have significant experience in state and local governments.  In particular, Jones Day attorneys have been employed in a variety of different positions by the governments of the following states and/or jurisdictions within those states, among others:  Alaska, Arkansas, California, Colorado, Florida, Georgia, Illinois, Massachusetts, New York, Ohio, Pennsylvania, Wisconsin, Virginia, and the District of Columbia.

Five Jones Day partners have previously served as either Federal or State court judges, and two Jones Day lawyers have served as judges internationally in Taiwan and Japan.

In particular, Jones Day attorneys have substantial experience representing clients in connection with federal and state Freedom of Information Act (FOIA) and Open Meetings Act issues.  For example, representations  and experience in the FOIA context include:

**Ameren Corporation**
*Bluestar v. Ameren Corporation, No. 05 CH 13448 (Cook Co.)*
Jones Day attorneys successfully obtained summary judgment on behalf of Ameren in an action brought pursuant to the Freedom of Information Act.

**City of Westerville, Ohio**
Prior to joining the Firm, a Jones Day attorney served as Assistant Law Director for the City of Westerville, Ohio, representing the city in connection with, among other things, numerous public record request and open meetings issues.

**Privasoft Inc.**
Jones Day successfully represented Privasoft as an intervenor to a General Accountability Office bid protest related to the provision of Freedom of Information Act software to the Department of Justice Office of Information Policy.

**Sportsman's Market Inc.**
*Sportsman's Market Inc. v. Federal Aviation Admin. (D.D.C.)*
Jones Day attorneys represented Sportsman's Market in connection with litigation arising under the Freedom of Information Act.

Further, before joining Jones Day, Columbus Partner Mike Gladman served as an Assistant Attorney General in the Ohio Attorney General's Office for approximately five years, and he gained significant experience advising numerous Ohio state agencies regarding Ohio's public records and open meeting laws. Since joining Jones Day, Mike has focused his practice on representing clients in litigation with the government and who are the targets of government investigations, and he has experience with public records and open meeting laws in that capacity as well.

In addition to the foregoing, Jones Day possesses a broad working knowledge of state and local laws applicable to the restructuring efforts of the City of Detroit, including, but not limited to: (a) Public Act 4 of 2011; (b) Public Act 72 of 1990; (c) Public Act 436 of 2012 (Local Financial Stability and Choice Act); (d) the Urban Cooperation Act (Public Act 7 of 1967); (e) the Budgeting and Accounting Act (Public Act 2 of 1968); and (f) the Emergency Municipal Loan Act (Act 243 of 1980). Over the past 18 months, Jones Day has devoted over 1,000 hours to studying these statutes, evaluating related regulations and court rulings in Michigan, and developing an understanding of the City's financial and operational circumstances to be prepared if Jones Day is fortunate enough to assist the City in its restructuring. Jones Day also understands that the City has skilled local lawyers and other professionals who are highly experienced in such matters. Jones Day is fully prepared to collaborate with the City and its professionals to achieve prompt, efficient, and practical solutions to the City's problems.

# Tab 9 — Conflicts Review and Waivers

As is typical for a firm our size, Jones Day represents many other clients. The initiation of an engagement for the City of Detroit would entail a formal conflict review to permit our Firm to satisfy its ethical obligations. Nevertheless, we have evaluated our connections to certain known parties in interest, including the City's unions, bond insurers, and swap participants.

At this juncture, we are not aware of any conflicts of interest that would prevent Jones Day from taking on this engagement and vigorously pursuing a restructuring for the City. Given the multiparty nature of a large restructuring, we note that a number of creditors and other parties in interest in any restructuring of the City likely are clients of Jones Day. Based on our review of our records, we do not represent any of these parties in matters related to, or adverse to, the City of Detroit, and we would not do so if retained by the City absent the City's consent.

We know that certain of the bond insurers for the City's general obligation debt are or have been clients of Jones Day, including AMBAC Assurance Corp., MBIA, and FGIC. Jones Day also has client relationships with swap counterparties UBS and Bank of America Merrill Lynch (BAML). All of our engagements by these parties are wholly unrelated to the City of Detroit. In addition, as a standard practice, Jones Day seeks advance conflict waivers from its clients. As a general rule, these waivers will permit Jones Day to represent the City adverse to another client, as long as the City also consents. In fact, we have in the past been adverse to each of these parties in other matters. With respect to swap matters, Jones Day may need to seek additional consent to pursue litigation against BAML, but could pursue litigation of swap issues adverse to UBS without further consents and can be adverse to BAML short of litigation without any further consent. Although we have not seen a complete list of the City's unions, we routinely are adverse to a wide range of public and private sector unions. For example, there are no concerns about being adverse to AFSCME. We also note that Blue Cross Blue Shield of Michigan (BCBSMI), which could be involved in benefits issues related to the City, is a former client, but not a current client, of Jones Day. As such, there is no restriction on our ability to be adverse to BCBSMI, if needed.

As a matter of professional responsibility, there may be circumstances where we are unable to represent the City in commencing litigation or taking other adverse actions against a then-current client. For example, as noted above, additional consent may be required to pursue litigation against BAML. At this time, we are not aware of any other circumstance that would require us to limit our engagement, but as a matter of professional responsibility it is important that you are informed about this issue. If a conflict were to arise, Jones Day regularly collaborates with other firms with complementary skill sets and is prepared to collaborate with the City's other legal advisors and/or other local firms in Michigan with the requisite skills, expertise, background and knowledge to address these matters seamlessly.

# Tab 10 — Proposed Fee Structure

Jones Day has developed a fee proposal pursuant to which Jones Day would provide high quality legal services to the City under a structure that takes into consideration the City's budget concerns. In particular, Jones Day proposes a three-phase fee structure for its engagement by the City of Detroit. The first phase involves the initial three-month period of review and analysis (the "Initial Analysis Phase"). The second phase of the engagement, for the following four-month period, is expected to focus on the development of a restructuring strategy and outreach to stakeholders (the "Planning Phase"). The third phase is expected to involve the remaining steps to implement an agreed upon restructuring strategy (the "Implementation Phase").

1. The Initial Analysis Phase Fee Structure

We estimate that our fees for the Analysis Phase under a typical hourly rate fee structure could be as much as $2.0 million or more. Jones Day nevertheless is willing to perform all necessary professional services required to complete the Analysis Phase for a fixed fee totaling $1,125,000 (the "Phase I Fixed Fee"). The Phase I Fixed Fee would be payable in three equal installments as follows:

- $375,000 on the last business day of the first month of the engagement;

- $375,000 on last business day of the second month of the engagement; and

- $375,000 on last business day of the third month of the engagement.


2. The Planning Phase Fee Structure

We estimate that our fees for the Planning Phase under a typical hourly rate fee structure could be as much as $3.0 million or more. Jones Day nevertheless is willing to perform all necessary professional services required to complete the Planning Phase for a fixed fee totaling $1,900,000 (the "Phase II Fixed Fee"). The Phase II Fixed Fee would be payable in four equal installments as follows:

- $475,000 on the last business day of the fourth month of the engagement;

- $475,000 on last business day of the fifth month of the engagement;

- $475,000 on last business day of the sixth month of the engagement; and

- $475,000 on the last business day of the seventh month of the engagement.

\* This page is exempt from disclosure under the MI FOIA and any use or disclosure of the data contained on this page is subject to the restriction on the title page of this proposal.

3. <u>The Implementation Phase Fee Structure</u>

In most engagements, our fees generally are determined by the time devoted by each lawyer or other service provider involved in the engagement and the hourly billing rates assigned to each such person. During the Implementation Phase, Jones Day would provide services based on typical hourly rates, less a 15% discount for all lawyers outside of the Business Restructuring and Reorganization Practice. As a general matter, normal hourly rates in the United States currently range from $425 to $1,050 for Partners and of Counsel, $250 to $775 for Counsel and Associates and $100 to $350 for project assistants and paralegals. During the Implementation Phase, invoices will be sent monthly and are due upon receipt.

If the City of Detroit commences a case under chapter 9 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") before the end of the Initial Analysis Phase or the Planning Phase (such date, the "<u>Commencement Date</u>"), the Implementation Phase will begin, and the hourly fee structure will be effective, as of the Commencement Date.

During the Implementation Phase, and prior to the Commencement Date (if any), Jones Day's monthly fees would be subject to a cap of $575,000 (the "<u>Monthly Cap</u>"). Any unused portion of the Monthly Cap may be rolled forward to a future month. If Jones Day's hourly fees for any month during the Implementation Phase (and before the Commencement Date) exceed the Monthly Cap, any fees above the cap may be deferred and paid from any excess Monthly Cap in a future month. Upon the Commencement Date, any unpaid fees will be trued up, and the Monthly Cap shall no longer apply.

Please note that the Phase I Fixed Fee, the Phase II Fixed Fee and the Monthly Cap apply only to the restructuring work anticipated to be performed by Jones Day (including, without limitation, labor, pension, OPEB, municipal finance and restructuring/bankruptcy work). Any litigation (*e.g.*, prosecuting or defending a lawsuit or appeal), material transaction (*e.g.*, a substantial asset divestiture or privatization or significant capital raising transaction), or significant internal investigation is not covered by the Phase I Fixed Fee, the Phase II Fixed Fee or the Monthly Cap. Time on such additional projects would be charged on an hourly rate basis, subject to the 15% discount for all lawyers outside of the Business Restructuring and Reorganization Practice, or based on such other fee structure as may be agreed upon by the City and Jones Day at the time.

In addition to the fees described above, Jones Day would be entitled to reimbursement of its actual costs and expenses (including, without limitation, travel costs, copying and courier costs, statutory filings and other out-of-pocket expenses typical for this type of engagement) ("<u>Expenses</u>"). In some circumstances, however, such as in the case of particularly large items, we may ask the City of Detroit to pay these items directly or in advance. Expenses incurred by Jones Day during the Initial Analysis Phase and the Planning Phase will be submitted to, and subject to reimbursement from, City of Detroit in connection with the monthly installment payments. During the Implementation Phase, Expenses will be invoiced, and payable, along with Jones Day's hourly fees.

This proposed fee structure also would be subject to the other terms and conditions of Jones Day's engagement agreement.

\*    This page is exempt from disclosure under the MI FOIA and any use or disclosure of the data contained on this page is subject to the restriction on the title page of this proposal.

JONES DAY®

# Tab 11 — Chrysler Sold to Fiat-led "New Chrysler" After Historic Court Proceedings

After a historic battle all the way to the United States Supreme Court, Chrysler LLC sold substantially all of its assets to Fiat-led "New Chrysler" (Chrysler Group LLC) on June 10, 2009, providing the opportunity for its iconic brands and U.S. operations to survive.

The transaction resulted from intensive negotiations involving Fiat, the U.S. Department of the Treasury, the Presidential Auto Task Force, the United Auto Workers union (UAW), the Pension Benefit Guaranty Corporation (PBGC), Chrysler Financial, GMAC Financial Services, and the holders of almost $7 billion of secured Chrysler bank debt. These negotiations led to an accelerated court process which commenced on April 30, 2009, when Chrysler LLC filed for protection under chapter 11 of the Federal Bankruptcy Code and sought approval for an expedited bid process and sale.

The assets were sold in exchange for $2 billion in cash and the assumption of numerous Chrysler debts by New Chrysler. The transaction was consummated pursuant to a sales order by the U.S. Bankruptcy Court in Manhattan. Although it involved substantial filings and hearings in the Bankruptcy Court and a massive effort by Jones Day bankruptcy and litigation specialists, the evolution, design, and execution of the sale was very much an M&A deal, requiring the skill and experience of a large transactional team from Jones Day, as Chrysler's restructuring counsel.

## Background

For an extended period prior to 2009, Chrysler executives had been exploring strategic options around the world. The need for action increased dramatically as global auto sales plunged, starting in the summer of 2008. As Chrysler continued to pursue various alternatives, Jones Day was retained by the company in early November 2008.

Chrysler's cash liquidity needs became critical as the end of the year approached. With no further bank financing available, the U.S. auto industry asked the U.S. Government for as much as $38 billion in federal loans as a bridge to survival and then profitability. In pursuit of this aid, the chief executives of Chrysler, General Motors, and Ford, as well as the president of the UAW, testified before a House of Representatives committee on November 17, 2008, and a Senate committee on December 4, 2008.

To avoid an imminent bankruptcy filing, the Bush Administration agreed to loan Chrysler approximately $4 billion, which was funded on January 2, 2009. After the Obama Administration took office and formed the Presidential Auto Task Force, it asked Chrysler to submit a viability plan on February 17, 2009, in order to obtain further federal financing.

Chrysler's negotiations with Fiat intensified and its February 17, 2009, submission to the Auto Task Force included a standalone option and a Fiat alliance option. The latter envisioned Fiat obtaining a significant minority interest in Chrysler in exchange for fuel-efficient technology, access to Fiat's global distribution network, and shared purchasing synergies, but no cash infusion. At this point, the Fiat negotiation and documentation had been proceeding down parallel alternative paths – one outside of bankruptcy, the other utilizing a chapter 11 bankruptcy proceeding, but the focus was clearly on an investment in Chrysler outside of bankruptcy.

On March 31, 2009, President Obama announced that the Auto Task Force had concluded that Chrysler was not viable as a standalone company and delivered an ultimatum: if Chrysler finalized a strategic alliance with Fiat or another suitable partner (with the approval of the UAW, bank debt lenders, and other constituents) by April 30, 2009, the U.S. Treasury would loan the company $6 billion. Otherwise, no further government loans would be made, thereby making liquidation in bankruptcy virtually inevitable.

After the Obama ultimatum, Chrysler management began to focus on a sale to Fiat as purchaser under Section 363 of the Bankruptcy Code, referred to as a 363 sale – dividing Chrysler's assets and liabilities to create a new operating company allied with Fiat, leaving behind unwanted assets and liabilities to be liquidated. This would change the key dynamic from Fiat being a minority investor in existing Chrysler to Fiat becoming a minority shareholder and management leader in a newly formed New Chrysler.

## New Chrysler Negotiations

After March 31, 2009, the Auto Task Force took an increasingly vigorous role in shaping the structure and creation of New Chrysler. On April 20, 2009, the Auto Task Force asked counsel for all key parties to come to Washington and to be prepared to stay until the final documentation was signed by President Obama's month-end deadline.

The prospect of splitting existing Chrysler into an operating company and liquidation company, including the possible use of a bankruptcy proceeding, caused substantial changes in the document negotiation and preparation. The Jones Day deal team was organized to attack multiple M&A tasks:

- negotiating the Master Transaction Agreement with Fiat (on behalf of New Chrysler);

- designing the separation of Chrysler's assets and liabilities (including which contracts should be accepted or rejected in a bankruptcy); and

- arranging for the sharing and supply of services and facilities between the existing company and New Chrysler.

In addition, other components of the Jones Day deal team tackled key related issues, including:

- redesigning complex executive compensation and employee benefit plans;

- arranging for debt financing, including debtor in possession financing and exit financing from the U.S. Treasury and the Canadian government;

- restructuring the dealer networks, including new dealer and consumer financing for Chrysler vehicles from GMAC;

- restructuring arrangements with the UAW, including the implementation of a new $10 billion voluntary employee benefit association (VEBA);

- disposition of owned and leased real estate pursuant to the Bankruptcy Code; and

- dealing with the tax implications of all of the foregoing restructuring.

As the lender of last resort, the U.S. Treasury, through the Auto Task Force, took the lead in structuring the ownership of New Chrysler. Fiat, the UAW and the U.S. Auto Task Force agreed to a complex deal in which New Chrysler would initially be owned 20 percent by Fiat, 67 percent by the UAW's VEBA, and the remainder by the U.S. and Canadian governments (the new lenders to New Chrysler). If New Chrysler met a series of milestones, its ownership would rise to 35 percent (without any new investment of cash)

and the VEBA and U.S. and Canadian governments' ownerships would be diluted to 55 percent, 8 percent, and 2 percent, respectively.

The principal remaining obstacle was the treatment of the $6.9 billion of outstanding secured bank debt owed by Chrysler. After negotiations, on April 29, 2009, a number of the holders of such debt refused to accept the final offer of the U.S. Treasury to fund a $2 billion cash payout. Despite the acceptance of this deal by the vast majority in amount of bank debt holders, this standoff made a filing by Chrysler under chapter 11 of the Bankruptcy Code inevitable.

## Bankruptcy Court

In announcing Chrysler's bankruptcy filing on April 30, 2009, President Obama promised that the sale in bankruptcy to Fiat-led New Chrysler would be "quick and efficient," but many doubted that.

On the first day in United States Bankruptcy Court in Manhattan, Jones Day's Business Restructuring & Reorganization team leader Corinne Ball told Judge Arthur J. Gonzalez, in a courtroom overflowing with spectators, "I don't think that any American can doubt that these are extraordinary times…[We] are mindful of all the experts' views that no car company can survive in chapter 11. To them we say: yes, we can."

As part of its first day pleadings, Jones Day filed declarations supporting the immediate sale of Chrysler to the Fiat-led New Chrysler. The sale motion was filed on May 3, 2009, and the court approved the procedures for the auction, sale, and objections after three days of hearings involving six witnesses, setting the sale approval hearing for May 27, 2009, and requiring objections by May 19, 2009, and competing bids by May 20, 2009. An ad hoc group of so-called non-TARP lenders, claiming to hold almost $1 billion in secured bank loans under Chrysler's First Lien Credit Agreement, opposed the sale at the procedures hearing. That group would later disband rather than disclose the nature of their investments in Chrysler's debt or pursue discovery on the sale.

Thereafter, many objections were filed, including an objection by Indiana pension funds (who retained the same counsel as the non-TARP lenders) holding fewer than one percent of the loans under Chrysler's First Lien Credit Agreement. The fund objectors also filed motions to withdraw the reference over the sale to the United States District Court, stay the chapter 11 case, and appoint a trustee. These motions were argued as to the stay the same afternoon and were fully briefed, argued, and denied by the District Court on May 26, 2009, the day before the sale hearing was scheduled to commence.

The sale hearing encompassed approximately 40 hours of testimony, spanning three very long days of hearings from May 27-29, and addressed in excess of 375 objections to the sale. No bid competing with the Fiat transaction had been received. The Jones Day team presented 16 witnesses and introduced 48 exhibits, culminating with a closing argument made late on Friday evening. Chrysler's legal team submitted to the Bankruptcy Court Chrysler's proposed findings of fact and conclusions of law the following morning.

Judge Gonzalez issued his opinion approving the sale on Sunday, May 31, 2009, and the very next day issued the order, setting forth his findings and conclusions of law, approving the sale. Even before the sale order was issued, the Indiana pension fund objectors filed a notice of appeal to the District Court and obtained an emergency hearing, but to no avail given Chrysler's certification strategy. Anticipating that appeal, Jones Day had immediately sought certification from Judge Gonzalez to permit a direct appeal to the United States Court of Appeals for the Second Circuit.

During this period, the Jones Day deal team worked with other counsel to prepare to close the Fiat transaction as soon as legally permissible. The closing documents and procedures were all in place when Judge Gonzalez's sale order was issued. Further litigation, however, delayed the consummation of the sale.

## Federal Court of Appeals

Within an hour of the Bankruptcy Court certification, Chrysler petitioned the Court of Appeals for expedition, by-passing an interim appeal to the District Court. The Court of Appeals, acting through a panel consisting of Chief Judge Dennis Jacobs and Judges Amalya Lyle Kearse and Robert D. Sack, accepted Chrysler's petition for a direct appeal and set emergency scheduling to address the appellant's objections on various grounds of constitutional, TARP, and bankruptcy law. Both appellants and appellees were directed to submit briefs no later than noon on Thursday, June 4, 2009, and present oral argument Friday afternoon, June 5, 2009, at 2:00 p.m.

At oral argument on June 5, 2009, Jones Day, responding for Chrysler, defended the opinion and order entered by Judge Gonzalez. After some two hours of argument, the panel adjourned to confer, asking the parties to remain to hear its determination. Upon returning to the bench after approximately 20 minutes, Chief Judge Jacobs announced that the Second Circuit panel had determined to affirm the Bankruptcy Court opinion and order approving the sale, for substantially the reasons set forth by Judge Gonzalez. However, returning to Judge Sack's earlier observation that perhaps the Supreme Court "should have a swing" at this case, Chief Judge Jacobs also continued the stay of the sale order until the earlier of 4:00 p.m. on the following Monday, June 8, 2009, or the denial of a stay by a Justice of the United States Supreme Court, thereby preventing the closing until such time.

## United States Supreme Court

At approximately midnight the following day, June 6, the Indiana pension fund objectors filed an application for a stay pending certiorari with Justice Ruth Bader Ginsburg, the Supreme Court justice assigned to the Second Circuit. Within hours Jones Day had not only responded, but also organized the response of other supporters of the sale, including the U. S. Government, the UAW, and Fiat, so that by Sunday night, June 7, 2009, the matter was fully submitted to Justice Ginsburg.

On Monday, June 8, 2009, at 3:59 p.m. (one minute before the Second Circuit stay against closing would have expired), Justice Ginsburg granted another stay against closing pending further order of the Supreme Court, without giving any reasons for the delay. This led to much speculation as to the future of the case and Chrysler's business.

The next day, however, at approximately 7:20 p.m., an order was issued by the Supreme Court denying the applications for stay, and thereby permitting the sale to be completed. Interestingly, the Court's order was *per curiam*, indicating that the stay applications had been reviewed by the entire Court, not just Justice Ginsburg. This denial and the impending closing led *The New York Times* to report: "In spite of the delay by the Supreme Court, Chrysler's trip through bankruptcy has been astonishingly quick…"

The sale by Chrysler to Fiat-led New Chrysler was completed the following morning at approximately 9:00 a.m.

## Final Appellate Decision

On August 5, 2009, the three-judge panel for the Court of Appeals for the Second Circuit issued its written opinion explaining its affirmance of Bankruptcy Judge Gonzalez' sale order. The opinion confirmed the linchpin of Jones Day's strategy: establishing a factual record and findings that undercut each legal

challenge to a 363 sale. Demonstrating exigency, the absence of alternatives and benefits greater than liquidation, all with specific evidence, led to a decisive conclusion to the historic (and, to some, controversial) effort of Chrysler and the U.S. Government to preserve Chrysler's business as an ongoing concern.

# Tab 12 — The Orange County Chapter 9 Case: A Success Story

Orange County, California commenced a chapter 9 case following the discovery of a loss of approximately $1.7 billion in an investment pool containing funds of Orange County, as well as the funds of numerous municipalities located within Orange County and some municipalities located in other parts of California. Orange County's general fund budget also was significantly out of balance because it anticipated $200 million in interest earnings from the investment pool, none of which was realized. The Orange County chapter 9 case is the largest municipal bankruptcy filing in history, involving more than $10 billion in debt.

Lawyers now at Jones Day were hired by Orange County to prepare the chapter 9 filing and to develop and implement a successful restructuring strategy. There have been relatively few chapter 9 bankruptcy cases filed. Of the chapter 9 cases that have been commenced, a substantial number have languished without a successful rehabilitation strategy. In Orange County, by contrast, our lawyers developed an approach that promoted a prompt and efficient restructuring, using the chapter 9 process to quickly return Orange County to sound financial footing.

## Early Development of a Strategy

Given the nature of the chapter 9 filing – based on an unexpected investment pool loss – Orange County had no time to formulate a comprehensive approach to its restructuring before the bankruptcy. Nevertheless, an overall strategy for addressing Orange County's financial problems was formulated and publicized in the early weeks of the case. The county told all constituents that it would resolve its problems in sequence as follows: (1) restructure the investment pool portfolio; (2) achieve a settlement of claims by pool participants for the losses sustained; (3) develop a plan for repayment of the county's debts, including pool participant claims; and (4) recover losses from responsible parties.

## The Sales Tax Election

A comprehensive settlement of all claims between the investment pool participants and Orange County was negotiated during the first four months of the chapter 9 case. Concurrently, Orange County began extensive efforts to identify budget savings and potential sources of additional revenues, an effort that took roughly six months. An unsuccessful election to raise sales taxes followed. Virtually everyone expected the election to fail; however, as a practical matter, no major constituency would consider any other serious restructuring steps unless and until the county tried to raise taxes. Orange County's tax base was, after all, fairly prosperous, notwithstanding the financial condition of its county government. The county recognized that pursuing the tax election was a necessary step in the process to demonstrate that all reasonable alternatives to raise revenues had been pursued.

## The Revenue Diversion Plan

After the sales tax election failed, Orange County proposed what became known as the "revenue diversion plan." This involved state statutes reallocating future tax revenues away from certain governmental units operating within the county that had generated significant surpluses during prior years, with these funds instead going to the county government. These statutes, together with statutes creating

JONES DAY

a state intercept method of securing county indebtedness and certificates of participation were passed roughly ten months after the commencement of the chapter 9 case. Orange County worked cooperatively with the state government to achieve passage of these statutes.

The revenue diversion plan generated enough revenue to assure repayment of bond debt. All debt then was resolved through a plan of adjustment that was confirmed within 18 months after the commencement of the chapter 9 case. Approximately 18 months later, debt issued by the Orange County (without credit enhancement) was rated AA by Moody's and equivalent ratings by other ratings agencies.

The chapter 9 process moved swiftly and efficiently following the strategic blueprint laid out at the beginning of the case.

## Lessons Learned from the Orange County Experience

Each municipality is unique and faces its own challenges. Nevertheless, some aspects of the Orange County chapter 9 case provide insight on matters that may well arise in other chapter 9 cases of national significance. The Jones Day lawyers who worked on this matter have unique insights and lessons learned from this engagement. For example:

- Bondholders and bond insurers will assert that non-impairment of bond debt is a prerequisite to future access to the capital markets. This assertion is questionable. The market ultimately evaluated Orange County's restructuring and its future prospects and very promptly began lending to the county again.

- Creditors and some other constituencies will identify every conceivable alternative to compromising their claims. Many will be unworkable, impracticable, or not in the best interests of the troubled municipality. Their suggestions will not be aired privately in conferences, but in presentations to the media and/or sympathetic public officials. Orange County found it necessary to respond to many of these proposals by making public reports evaluating them.

- Creditors, and particularly bondholders and bond insurers, will urge the state to assume responsibility for a troubled municipality's bond debt. They will argue that the absence of state support will raise borrowing costs for all municipalities in the relevant state and the state itself. There is no evidence supporting this argument. In the case of Orange County, the State of California assisted by enacting legislation necessary to implement the county's plan of adjustment, but did not provide new money to the county.

- Close cooperation between representatives of the county and state government greatly facilitated a rapid and successful outcome in the Orange County case. Much of this coordination and cooperation was not public.

- Steps a troubled municipality might take to address its financial problems (including, for example, the decision to seek or implement tax increases) will have political dimensions and political consequences. Every member of the restructuring team has to be sensitive to this reality. It is critically important to fully evaluate in advance the political implications of every step taken and plan for them. Effective communications to all constituents and the media also is essential.

# Tab 13 — Selected Lawyer Profiles



On the following pages, we present the curricula vitae for key members of the proposed team for this engagement.

~ ~ ~ ~ ~ ~ ~ ~ ~ ~

- Aaron L. Agenbroad, Partner (San Francisco)
- Corinne Ball, Partner (New York)
- Bruce Bennett, Partner (Los Angeles)
- Peter D. Clarke, Partner (Chicago)
- Richard Deane, Partner (Atlanta)
- Lawrence C. DiNardo, Partner (Washington, DC)
- Jeffrey B. Ellman, Partner (Atlanta)
- Robert Louis Ford, Partner (San Francisco)
- Sarah Heck Griffin, Partner (Los Angeles)
- Beth Heifetz, Partner (Washington, DC)
- Wesley R. Johnson, Jr., Partner (New York / Paris)
- David J. Kates, Partner (Chicago)
- Heather Lennox, Partner (Cleveland / New York)
- Catherine E. Livingston, Partner (Washington, DC)
- Yvette McGee Brown, Partner (Columbus)
- Evan Miller, Partner (Washington, DC)
- Naveen C. Rao, Associate (Washington, DC)
- Chad Readler, Partner (Columbus)
- Brian L. Sedlak, Partner (Chicago)
- Jayant W. Tambe, Partner (New York)

JONES DAY®



# Aaron L. Agenbroad
## Partner

alagenbroad@jonesday.com

**San Francisco**
1.415.875.5808
1.415.875.5700 (F)

Aaron Agenbroad's practice includes all aspects of labor and employment law, with a focus on representing corporate clients in complex labor and employment disputes. In the employment arena, his practice includes litigation of California wage and hour class actions and FLSA collective actions, California discrimination cases under FEHA and CFRA, and federal discrimination cases, including ADEA, FMLA, ADA, and Title VII claims. Aaron has experience with all phases of litigation, including serving as lead counsel in a successful jury trial. He represents clients in ADR proceedings such as arbitrations and mediations. Aaron also regularly counsels employers in employment matters, including reductions in force, employee terminations, disability accommodation matters, FMLA and CFRA issues, and EEOC and FEHA charges.

In his traditional labor work, Aaron's experience includes representation of management in labor arbitrations in the telecommunications, health care, publishing, refining, and manufacturing industries. He also has represented clients in NLRB and PERB unfair labor practice proceedings, led collective bargaining negotiations, and worked in defending union organizing campaigns. His NLRB election experience includes successful results in decertification efforts for retail facilities, newspapers, and health care institutions.

Recent successes include a full defense verdict in a jury trial for the Port of Oakland, the resolution of three statewide wage and hour class actions on behalf of Chevron Stations, and securing substantial financial concessions in collective bargaining for Alameda County Medical Center. Other representative clients include AstraZeneca, Bridgestone/Firestone, Lennar, Macy's, McDonald's, Sutter Health, Verizon Communications, and Verizon Wireless.

Aaron is Partner-in-Charge of the Firm's San Francisco Office.

### Areas of Focus
Labor & Employment

Single & Multiple Plaintiff Employment Litigation

Class Action Employment Litigation

NLRB Proceedings & Appeals

Collective Bargaining, Contract Enforcement & Union Organizing

### Honors & Distinctions
*Legal 500 US* (2012) — recommended attorney: labor & employment litigation and labor-management relations

### Education
Georgetown University (J.D. 1997); University of Washington (B.A. 1992)



## Aaron L. Agenbroad

**Bar Admissions**
California and U.S. District Courts for the Central, Eastern, Northern, and Southern Districts of California

### EXPERIENCE

**National retail store defends against class action alleging misclassification, meal period and rest break violations**
Jones Day defended a national retail store in a California class action alleging that merchandise assistants had been misclassified and improperly denied meal periods and rest breaks.

**Verizon Wireless obtains complete dismissal of claims by former employee alleging discrimination and wrongful termination**
On behalf of Verizon Wireless, Inc., Jones Day obtained summary judgment and a complete dismissal of a former employee's claims of disability discrimination, violation of the California Family Rights Act, wrongful termination in violation of public policy and retaliation.

**SAP AG acquires Clear Standards**
Jones Day advised SAP AG in its acquisition of Clear Standards, a privately held innovator of enterprise carbon management solutions.

**Lennar defends against putative class action involving allegations under misclassification theory**
Jones Day represented Lennar Corporation in a putative class action by assistant construction managers alleging unpaid overtime, waiting time penalties, and unfair competition under a misclassification theory.

**Verizon Wireless defends against age discrimination action**
Jones Day defended Verizon Wireless in an action alleging age discrimination in employment.

**Sutter Health retains Jones Day in connection with UHWW representation proceedings and election**
Jones Day successfully represented Sutter Health in connection with representation proceedings and election.

**IBM defends against putative nationwide age discrimination class action arising out of reductions-in-force**
Jones Day represented International Business Machines Corporation ("IBM") in a putative collective action brought by 12 former IBM employees alleging discrimination under the Age Discrimination in Employment Act on behalf of upwards of 15,000 former employees over the age of 40 who were terminated in conjunction with reductions in force between 2001-2005.

**Chevron defends against wrongful termination action based on alleged retaliation for filing worker compensation claim**
Jones Day defended Chevron Corporation against a wrongful termination claim premised on alleged retaliation for filing a workers compensation claim.

**AstraZeneca defends against allegations of wrongful discharge, breach of contract and failure to pay wages**
Jones Day defended AstraZeneca LP as the employer in a wrongful discharge, breach of contract and failure to pay wages claim.

**Port of Oakland obtains full defense verdict in discrimination and wrongful termination case**
Jones Day defended Port of Oakland against discrimination and wrongful termination claims.

**Alameda County Medical Center negotiates collective bargaining for nurse unit and service, technical and non-RN professionals unit**
Jones Day represented Alameda County Medical Center in connection with collective bargaining negotiations for nurse unit and service, technical and non-RN professionals unit.



### Port of Oakland defends against unfair labor practice charges stemming from a reduction in force
Jones Day is defending Port of Oakland in numerous arbitrations and unfair labor practice charges stemming from a reduction in force.

### Chevron defends against purported FLSA collective action alleging unpaid overtime and class action alleging meal and rest break violations
On behalf of Chevron Corporation, Jones Day provided defense in a purported nationwide FLSA collective action and a California state class action alleging unpaid overtime claims and meal and rest break violations.

### McDonald's California defends against claims of discrimination, wrongful discharge and breach of contract
Jones Day defended McDonald's California, Inc. in action alleging discrimination, wrongful discharge and breach of contract claims.

### Lennar retains Jones Day for defense against claims of age and gender discrimination
Jones Day defended Lennar Sales Corp. against claims of age and gender discrimination.

### Chevron defends against age discrimination action brought by a former employee
Jones Day defended Chevron Corporation against age discrimination claims brought by a former employee.

### Chevron defends against purported state-wide class action alleging meal period and unpaid overtime violations of California law
Jones Day defended Chevron Corporation in purported state-wide class action alleging meal period and unpaid overtime claims in violation of California state law.

### Chevron defends against purported state-wide class action alleging off-the-clock violations of California law
Jones Day defended Chevron Corporation in purported state-wide class action alleging meal period and off-the-clock claims in violation of California state law.

### Chevron defends against single plaintiff race discrimination claim arising out of reduction in force
Jones Day defended Chevron Corporation in a single plaintiff race discrimination case arising out of reduction in force.

### Chevron involved in labor arbitrations with Steelworkers and PACE
Jones Day represented Chevron Corporation in labor arbitrations involving contract interpretation as well as discipline and discharge cases.

### **PUBLICATIONS**

CFRA Practice & Pitfalls, *National Employment Law Institute's 2012 California Employment Law Update Manual*
June 19, 2012

California Wage Theft Prevention Act: Revised Template and New FAQs Still Leave Some Open Questions
May 2012

Continued Surge in Retaliation & Whistleblowing Claims, *National Employment Law Institute's 2011 Employment Law Conference Manual*
November 17, 2011

2011 California Labor and Employment Legislative Update
November 2011



NLRB Issues Controversial Decision on Standard for Unit Appropriateness Determinations
October 2011

FMLA Practice & Pitfalls, *National Employment Law Institute's 2011 Public Sector & Employment Law Manual,* Chapter 7
August 2011

Legislative Activity & Agency Initiatives Update, *National Employment Law Institute's 2011 Employment Law Workbook,* Chapter 2
May 2011

Federal and State Legislative and Regulatory Agenda: What's Cooking and What's on the Horizon? Practicing Law Institute, California Employment Law Update 2010
November 2010

ALERT: California Supreme Court Rules that Attorneys' Fees May Be Denied in Low-Recovery FEHA Cases
March 2010

New Spate of Class Actions Seeks to Penalize California Employers Who Do Not Provide Adequate Seating for Employees
November 2009

2009 Legislative Developments in Labor & Employment Law
July 10, 2009

*Brinker*, *Brinkley*, and Beyond: Surveying California's Wage-Hour Field of Battle
January 2009

Benefits and Pitfalls of the Contingent Workforce, Practising Law Institute, 37th Annual Institute on Employment Law
September 2008

ALERT: California Appellate Court Holds that Meal Periods Must be Made Available to Employees; California Labor Commissioner Follows Suit
July 2008

Recent Developments in Traditional Labor Law, coauthor, 2005 Employment Law Conference, *National Employment Law*
October 2005

## SPEAKING ENGAGEMENTS

CFRA Practice & Pitfalls, National Employment Law Institute, 2012 California Employment Law Update
June 19 & 27, 2012
San Francisco, California
Los Angeles, California

Jones Day Silicon Valley Office Labor & Employment Program
May 23, 2012
Silicon Valley, California

2012 Hospitality Labor & Employment Discussion Group
May 10, 2012
Chicago, Illinois



Continued Surge in Retaliation & Whistleblowing Claims, National Employment Law Institute, 2011 Employment Law Conference
November 17, 2011
San Francisco, California

Litigating Employment Discrimination Claims - A View From All Sides, Practising Law Institute, California Employment Law Update
November 9, 2011
San Francisco, California

Post-Employment Conduct by Employers and Employees: Not a time to Let Your Guard Down, ABA Section of Labor & Employment Law, 5th Annual Labor & Employment Law Conference
November 4, 2011
Seattle, Washington

FMLA Practice & Pitfalls, National Employment Law Institute, 2011 Public Sector EEO & Employment Law Conference
August 26, 2011
San Francisco, California

Legislative Activity & Agency Initiatives Update, National Employment Law Institute, Sixteenth Annual Employment Law Workshop
May 5, 2011
San Francisco, California

Federal and State Legislative and Regulatory Agenda, What's Cooking and What's on the Horizon, Practicing Law Institute, California Employment Law Update
November 5, 2010
San Francisco, California

EFCA by Other Means, Jones Day 2010 California Labor & Employment Law Briefing
October 14, 2010
San Francisco, California

Seriatim Suits, Seats and Single-Plaintiff PAGA Claims: California's Updated Wage and Hour Landscape, Jones Day University
Janaury 13, 2010
San Francisco, California

Wage and Hour Litigation and Developments: Recent Trends, New Types of Cases, and What to Expect in 2009, Jones Day 2009 California Labor & Employment Law Briefing
October 8, 2009
Irvine, California

Federal and State Legislative and Regulatory Agenda, Practising Law Institute, 38th Annual Institute on Employment Law
October 1-2, 2009
San Francisco, California

Benefits and Pitfalls of the Contingent Workforce, Practising Law Institute, 37th Annual Institute on Employment Law
September 25-26, 2008
San Francisco, California

Jones Day 2008 California Labor & Employment Law Briefing
September 18, 2008
Los Angeles, California



## Aaron L. Agenbroad

Personnel, Investigative and Health Records, Practising Law Institute, 36th Annual Institute on Employment Law
October 26, 2007
San Francisco, California

Significant Recent EEO Decisions and Trends
April 27, 2007
New York, New York

Walking the Tightrope: Multi-Employer Worksite Considerations, Organization Resources Counselors, Inc.
December 1, 2003
Washington, D.C.





# Corinne Ball
## Partner

cball@jonesday.com
**New York**
1.212.326.7844
1.212.755.7306 (F)

Corinne Ball has 30 years of experience in business finance and restructuring, with a focus on complex corporate reorganizations and distressed acquisitions, both court-supervised and extra judicial, including matters involving multijurisdictional and cross-border enterprises. She is co-head of the New York Office's Business Restructuring & Reorganization Practice.

Corinne led a team of attorneys representing Chrysler LLC in connection with its successful chapter 11 reorganization, which won the *Investment Dealers' Digest* Deal of the Year award for 2009. She also led a team of attorneys in the successful restructuring of Dana Corp., which emerged from bankruptcy in 2008, and has orchestrated many other complex reorganizations involving companies such as Axcelis Technologies, Kaiser Aluminum, Oceans Casino Cruise Lines, Tarragon, and The Williams Communications Companies. In addition, she has counseled lenders and bondholders in the ABFS, Comdisco, Excite@Home, Exide SA, GST Communications, Iridium, Loews, NorthPoint Communications, Telergy, VARIG Airlines, and Worldcom restructurings, among others. Corinne also has advised on loans, acquisitions, and workouts involving professional sports franchises, including the Charlotte Bobcats, the Detroit Redwings, the Minnesota Wild, the New Jersey Devils, and the Phoenix Coyotes.

Corinne leads the Firm's distressed M&A efforts and is the featured "Distress M&A" columnist for the *New York Law Journal*.

Corinne won the Turnaround Management Association's "International Turnaround Company of the Year" Award and was named "Dealmaker of the Year" by *The American Lawyer* and one of "The Decade's Most Influential Lawyers" by *The National Law Journal*. She is a director of the American College of Bankruptcy and the American Bankruptcy Institute.

### Areas of Focus
Business Restructuring & Reorganization

Credit Crisis

Borrower / Workouts / Chapter 11 Debtor Representations

Metals & Mining

### Honors & Distinctions
International Women's Insolvency & Restructuring Confederation (IWIRC) "Woman of the Year in Restructuring" award winner (2012)

Anti-Defamation League New York Lawyers Division 2011 Human Relations Award for "her tireless commitment to fighting anti-Semitism, racism, and all forms of bigotry"

*Chambers Global*



## Corinne Ball

*Chambers USA*

*K&A Restructuring Register*

*Legal 500 US*

*PLC Which lawyer?*

*Best Lawyers in America*

*Super Lawyers* "Top 50 Women Attorneys in New York" since 2007

*Lawdragon 500 Leading Lawyers in America*

### Education
The George Washington University (J.D. with honors 1978); Williams College (B.A. magna cum laude 1975; Phi Beta Kappa)

### Bar Admissions
New York



## EXPERIENCE

### Chrysler sold to Fiat-led "New Chrysler" after historic court proceedings

After a historic battle all the way to the United States Supreme Court, Chrysler LLC sold substantially all of its assets to Fiat-led "New Chrysler" (Chrysler Group LLC) on June 10, 2009, providing the opportunity for its iconic brands and U.S. operations to survive.

### Metaldyne files for bankruptcy protection

Jones Day represented Metaldyne Corporation -- one of the top 50 North American auto parts suppliers with over $1 billion in sales -- and its subsidiaries in an out-of-court tender offer transaction pursuant to which over $350 million in long term debt was extinguished.

### Textile manufacturer restructures $155 million debt

Jones Day is representing an international manufacturer of textile products in the restructuring of its $155 million debt.

### Axcelis Technologies sells interest in joint venture SEN Corporation to Sumitomo Heavy Industries

Jones Day advised Axcelis Technologies, Inc. in the $133 million sale of its 50% interest in SEN Corporation to joint venture partner Sumitomo Heavy Industries, Ltd.

### Metaldyne completes $65 million tender offer to purchase outstanding 10% Senior Notes and 11% Senior Subordinated Notes

Jones Day advised Metaldyne Corporation, a leading designer and producer of engine, driveline, and chassis products, in connection with its $65 million offer to purchase for cash any and all outstanding 10% Senior Notes due 2013 and 11% Senior Subordinated Notes due 2012.

### Dana Corporation obtains Global Settlement and creates VEBA trusts for retiree health care benefits

Jones Day successfully represented Dana Corporation in obtaining a series of settlements to eliminate an enormous accumulated liability for health and life insurance benefits for retirees from its unionized and nonunion workforces, and to modify its collective bargaining agreements with active employees, allowing Dana to compete in the troubled auto industry upon emergence from bankruptcy.

### Financial Guaranty Insurance Company completes reinsurance transaction with MBIA Insurance

Jones Day advised Financial Guaranty Insurance Company (FGIC), a leading national mono-line financial guaranty assurance company, in a transaction in which MBIA Insurance Corporation (MBIA), a subsidiary of MBIA Inc. and another leading national mono-line financial guaranty assurance company, reinsured FGIC's risk under financial guaranty policies covering $166 billion in par of public finance obligations.

### Tower Automotive retired employees reach settlement with company

Jones Day represented the official committee of retired employees of Tower Automotive and its constituents in the Tower Automotive (Tower) chapter 11 cases in connection with the efforts of Tower to modify the health and welfare benefits of its nonunion retirees pursuant to section 1114 of the Bankruptcy Code.

### Dana Corp sells interest in GETRAG for $205 million

Jones Day advised Dana Corporation in its $205 million sale of 30% interest in GETRAG GmbH & Cie. KG to the Hagenmeyer family.

### GM dissolves alliance with Fiat

Jones Day advised General Motors Corporation as U.S. counsel in connection with dissolving the strategic alliance with Fiat SpA.



### Kaiser Aluminum and twenty of its subsidiaries emerge successfully from chapter 11 protection
Jones Day represented Kaiser Aluminum throughout its chapter 11 reorganization, which was commenced on February 12, 2002.

### WL Ross acquires Safety Components International
Jones Day assisted WL Ross & Co. LLC in connection with its acquisition of a controlling interest in Safety Components International, Inc., a global technology provider and solutions leader in the development and manufacture of automotive air bag fabrics, air bag cushions, innovative technical fabrics for fire fighting and specialty applications, and a range of diversified cut and sewn products, from Zapata Corporation.

### Continental Airlines listed as creditor in Delta bankruptcy
Jones Day represented Continental Airlines as a creditor in the chapter 11 cases of Delta Airlines.

### IBM Credit restructures loan to Applied Digital
The restructuring of a $93 million loan to Applied Digital Solutions, Inc. by IBM Credit Corporation was handled by Jones Day.

### France Télécom S.A. acquires Equant for $715 million
Jones Day advised France Télécom (FT) in its €564 million ($738 million) acquisition of the 45.8% equity interest in Equant N.V. it did not already own.

### MBIA Insurance is creditor in subprime mortgage case
Jones Day represented MBIA Insurance Corporation as a contingent creditor in the American Business Financial Services (ABFS) chapter 11 cases.

### Oceans Casino Cruises restructures $36 million loan
Jones Day represented Oceans Casino, the largest offshore gaming operation in the U.S., in an out-of-court restructuring of a $36 million loan with its lenders.

### Hagemeyer refinances existing debt
Jones Day advised Hagemeyer N.V., a distributor of electrical parts and supplies in Europe, North America, and Asia-Pacific, in connection with its $1.1 billion refinancing of existing group indebtedness, including a multicurrency term, revolving and letter of credit facilities with existing lenders.

**PUBLICATIONS**

EuroResource--Deals and Debt
January 2013

EuroResource--Deals and Debt
December 2012

EuroResource--Deals and Debt
November 2012

EuroResource--Deals and Debt
September 2012

EuroResource—Deals and Debt
August 2012

EuroResource—Deals and Debt
July 2012



EuroResource--Deals and Debt
June 2012

EuroResource--Deals and Debt
May 2012

EuroResource--Deals and Debt
March 2012

EuroResource--Deals and Debt
January 2012

EuroResource--Deals and Debt
December 2011

EuroResource--Deals and Debt
November 2011

EuroResource--Deals and Debt
October 2011

EuroResource--Deals and Debt
September 2011

EuroResource--Deals and Debt
August 2011

Decision Should Promote Robust Bankruptcy Negotiation, *New York Law Journal*
February 24, 2011

Denial of Creditor Standing May Have Limited Impact, *New York Law Journal*
December 23, 2010

Auction Enhances Value in Baseball Bankruptcy, *New York Law Journal*
August 26, 2010

More Than Just Financial Reform: Analysis and Observations on the Dodd-Frank Wall Street Reform and Consumer
Protection Act
August 2010

Bill's Resolution Authority Would Be Regulator-Centered, *New York Law Journal*
June 24, 2010

Circuit Ruling Broadens Scope of Statutory Mootness, *New York Law Journal*
April 22, 2010

Distressed Mergers and Acquisitions, *New York Law Journal*
February 25, 2010

Extraordinary Year for BRR, *New York Law Journal*
December 2009

Bankruptcy Judge Adopts Enterprise Approach to REITs, *New York Law Journal, Corporate Update*
October 22, 2009



Distressed Mergers and Acquisitions, *New York Law Journal*
October 22, 2009

At The Wheel, *The American Lawyer*
September 2009

United Airlines Recharacterization 'Victory' Revisited, *New York Law Journal, Corporate Update*
June 25, 2009

Clear Channel: A Sea Change In 363 Sales? *New York Law Journal*
April 23, 2009

Advice for Corporate Directors, Mergers and Acquisitions 2010: Trends and Developments, Practising L. Institute
2009

Buyer's Dream Turns Into Nightmare for Everyone, *New York Law Journal, Corporate Update*
October 23, 2008

Bank Failures Create Attractive Opportunities, *New York Law Journal Corporate Update*
August 28, 2008

Credit Crisis Enables Bold Strikes by Investors, Distressed Mergers & Acquisitions, *New York Law Journal, Corporate Update*
June 26, 2008

Unaddressed Issues Scuttle Delphi Bankruptcy Plan, Distressed Mergers & Acquisitions, *New York Law Journal, Corporate Update*
April 24, 2008

Jones Day Charts Dana Corporation's Path to Successful Emergence From Chapter 11
March/April 2008

Another One Falls: Shades of Drexel Burnham? Distressed Mergers & Acquisitions, *New York Law Journal, Corporate Update*
December 27, 2007

Second Ruling Cites Markets In Determining Solvency, Distressed Mergers and Acquisitions, *New York Law Journal, Corporate Update*
October 25, 2007

Q&A With Jones Day's Paul Leake and Corinne Ball, *Bankruptcy Law360*
October 23, 2007

Teleglobe's' Implications For Attorney-Client Privilege, Distressed Mergers & Acquisitions, *New York Law Journal, Corporate Update*
August 23, 2007

Northwest Bankruptcy: Market Test of Plan Not Required, Distress Mergers & Acquisitions, *New York Law Journal, Corporate Update*
June 28, 2007

Court Relies on Markets For Proof of Spin-off's Value, Distress Mergers & Acquisitions, *New York Law Journal, Corporate Update*
April 26, 2007



Delphi and Pre-emptive Takeovers in Chapter 11, Distress Mergers & Acquisitions, *New York Law Journal, Corporate Update*
February 22, 2007

'Free and Clear' Protections Extend to Set-off Provisions, Distressed Mergers and Acquisitions, *New York Law Journal, Corporate Update*
December 28, 2006

Duties of Subsidiary Directors Run to Subsidiary, Not Parent, Distressed Mergers and Acquisitions, *New York Law Journal, Corporate Update*
October 26, 2006

Ruling in 'Kaiser' Clarifies Pension Plan Termination, Distressed Mergers and Acquisitions, *New York Law Journal, Corporate Update*
August 24, 2006

Navigating Cross-Border Insolvency Proceedings, Distressed Mergers & Acquisitions, *New York Law Journal, Corporate Update*
June 22, 2006

'Delphi' May Encourage Formation of Equity Panels, Distressed Mergers & Acquisitions, *New York Law Journal, Corporate Update*
April 27, 2006

Ruling Suggests 'Inattention' May Lead to Personal Liability, Distressed Mergers, *The New York Law Journal, Corporate Update*
August 25, 2005

New British Pension Rules Require Early Consideration, Distressed Mergers & Acquisitions, *New York Law Journal, Corporate Update*
June 23, 2005

Secured Mezzanine/High Yield Debt: Loan to Own? Distressed Mergers & Acquisitions, *New York Law Journal, Corporate Update*
April 28, 2005

Creditors' Claims Against Directors, Distressed Mergers & Acquisitions, *New York Law Journal, Corporate Update*
February 24, 2005

Section 1145: Theory Versus Practice, Distressed Mergers & Acquisitions, *New York Law Journal, Corporate Update*
December 30, 2004

Credit Bidding As an Effective Tool, Distressed Mergers & Acquisitions, *New York Law Journal, Corporate Update*
September 30, 2004

Section 363 Sales: Is It Ever Too Late to Bid? Distressed Mergers & Acquisitions, *New York Law Journal, Corporate Update*
August 26, 2004

Pension Considerations In a Sale of Assets, Distressed Mergers & Acquisitions, *New York Law Journal, Corporate Update*
July 29, 2004

Turnaround Management: An Inherent Conflict? Distressed Mergers & Acquisitions, *New York Law Journal, Corporate Update*
June 24, 2004



Fallen Angels, Spin-Offs And Tax Attributes, Distressed Mergers & Acquisitions, *New York Law Journal, Corporate Update*
February 26, 2004

Rethinking Auctions Under 'Revlon' And Bankruptcy Code §363, Distressed Mergers & Acquisitions, *New York Law Journal, Corporate Update*
January 29, 2004

Bidding Procedures and Sale Orders: The Keys to Distress M&A, *American Law Institute-American Bar Association Publication* (SJ025 ALI-ABA 411)
2003

Comparison of Chapter 11 of the U.S. Bankruptcy Code and the System of Administration in the UK
November 2003

How to Handle Corporate Distress Sale Transactions, *ALI-ABA Business Law Course Materials Journal*
April 2003

A Practical Guide to Distress M&A, *The M&A Lawyer*
January/February 2003

### SPEAKING ENGAGEMENTS

PLI's Mergers & Acquisitions 2013: Trends and Development
January 17-18, 2013
New York, New York

Jones Day: Global Viewpoints
July 25, 2012
Boston, Massachusetts

PLI's Bankruptcy & Reorganization 2012: Current Developments
April 12-13, 2012
New York, New York

PLI's Mergers and Acquisitions 2012: Trends and Development
January 5-6, 2012
New York, New York

PLI's Bankruptcy and Reorganizations: Current Developments 2011
April 14-15, 2011
New York, New York

PLI's Mergers & Acquisitions 2011: Trends and Developments
January 10-11, 2011
New York, New York

Bankruptcy & Reorganizations: Current Developments 2010
April 19-20, 2010
New York, New York

Doing Distressed Deals: Outlook for 2010 and Welcome Reception for New West Coast Restructuring Members
February 2, 2010
Los Angeles, California



Mergers & Acquisitions 2010: Trends and Developments
January 11-12, 2010
New York, New York

Chrysler Restructuring Roadshow
October 6-8, 2009
London, Milan, Paris

31st Annual Current Developments in Bankruptcy & Reorganization
April 20-21, 2009
New York, New York

Institutional Investor Summit 2009
January 28, 2009
New York, New York

Mergers & Acquisitions 2009: Trends and Developments
January 22-23, 2009
New York, New York

The Subprime Crisis: Restructuring in the Financial Sector and Securities Litigation in the United States and Europe
November 18, 2008
Frankfurt

30th Annual Current Developments in Bankruptcy & Reorganization
April 7-8, 2008
New York, New York

2008 TMA Distressed Investing Conference
January 24, 2008
Las Vegas, Nevada

Mergers & Acquisitions 2008: Trends and Developments
January 22-23, 2008
New York, New York

Automotive Industry Restructuring Finance Summit
September 18-20, 2007
Dearborn, Michigan

A Guide to Mergers & Acquisitions, Practising Law institute
January 22-23, 2007
New York City, New York

Debtor-in-Possession Financing in the Auto Industry: Global Sourcing, 'Just in Time' Inventory and OEM Customers, moderator, 80th Annual Meeting of the National Conference of Bankruptcy Judges
November 3, 2006
San Francisco, California

Buying a Distressed or Bankrupt Company, 22nd Annual Corporate Mergers and Acquisitions, American Law Institute and American Bar Association
September 15, 2006
Boston, Massachusetts



Negotiating Cash Collateral Orders in the Era of Ad Hoc Committees, American Bar Assn.
April 6, 2006
Tampa, Florida

Advising the Board of Directors in the Context of Mergers & Acquisitions, Practising Law Institute seminar
January 23, 2006
New York, New York

Corporate Mergers and Acquisitions, 21st Annual Advanced ALI-ABA Course of Study
September 15-16, 2005
New York, New York

Can They Really Do That??? The Enforceability and Protection of NOL Injunctions and Third Party Releases in Reorganization Plans
May 9, 2005
New York, New York

Buying a Distressed or Bankrupt Company
March 4, 2005
San Francisco, California

Advising the Board of Directors
January 11, 2005
New York, New York

Distress Investing and Developments in Corporate Restructuring in the United States and Europe
April 21, 2004
New York, New York

The Relationship between Turnaround Management and Corporate Governance of a Chapter 11 Debtor and Asset Sales under Section 363 versus Sales under a Chapter 11 Plan
April 16, 2004
Portland, Oregon

Buying a Distressed or Bankrupt Company
March 4, 2004
San Francisco, California

A Guide to Mergers and Acquisitions 2004
January 12, 2004
New York, New York

Critical Vendor Motions in the Aftermath of the Kmart Decision
December 4-5, 2003
Oklahoma

Distressed M&A Restructuring
November 7, 2003
New York, New York

The Legal Landscape: Hot Topics and Current Trends in Restructuring and Bankruptcy
October 11, 2003
San Francisco, California



## Corinne Ball

The New Enterprise Act: Has the UK finally embraced Chapter 11?
September 19, 2003
New York, New York

INSOL Annual Conference - Asia Pacific Rim
October 2002
Beijing, People's Republic of China





# Bruce Bennett
## Partner

bbennett@jonesday.com

**Los Angeles**
1.213.243.2382
1.213.243.2539 (F)

Bruce Bennett has represented debtors, creditors, and business acquirers in many of the largest corporate reorganization cases in the United States in the fields of retail, telecommunications, heavy industry, aviation, manufacturing, real estate, insurance, energy, banking, and computer technology.

Prior to joining Jones Day in May 2012, Bruce was the lead lawyer for the Los Angeles Dodgers on their recent $2 billion acquisition by Magic Johnson and other partners. He also was lead debtor's counsel in the country's largest municipal bankruptcy (County of Orange, California), which commenced following a $1.7 billion loss in county investment pools. As counsel to the debtor, Bruce was the architect of the plan of adjustment that comprehensively resolved the county's financial problems. That plan was confirmed and successfully implemented in approximately 18 months, and the related litigation resulted in the recovery of more than $870 million for the county. Other large debtor side representations include Ameriquest Mortgage Company, First Capital Holdings Corp., Hawaiian Airlines, L.A. Gear, LTV Corporation, SmartTalk TeleServices, Tucson Electric Power, and Weststar Cinemas. Bruce also successfully resolved many other large bankruptcy cases for lenders, note holders, and equity interest owners, including Adelphia Communications, Enron, Fountainebleau Las Vegas, Green Valley Ranch, Hawaii Medical Centers, Lehman Brothers Treasury Co., Olympia & York, and Tribune Company.

Bruce is a member of the American College of Bankruptcy, the Financial Lawyers Conference, and the board of trustees and executive committee of Good Samaritan Hospital, Los Angeles. He also is a former commissioner of personal and small business bankruptcy advisory commission of the California Board of Legal Specialization and a board member of Public Counsel.

### Areas of Focus
Business Restructuring & Reorganization

### Honors & Distinctions
"Top 100," *Southern California Super Lawyers* (2006-2011)

"Top 100 Lawyers in Los Angeles," *Los Angeles Business Journal* (several years)

*The Best Lawyers in America* (2000-2011)

*Chambers USA* (2008-2011)

Lawyer of the Year: Runner-Up, *National Law Journal* (1995)

### Education
Harvard University (J.D. cum laude 1982); Brown University (B.S. in Applied Mathematics and Economics magna cum laude 1979)

### Bar Admissions
California



13-53846-tjt    Doc 2298    Filed 12/23/13    Entered 12/23/13 19:15:41    Page 142 of 235

**Bruce Bennett**

---

## <u>SPEAKING ENGAGEMENTS</u>

Bloomberg Sports Business Summit--Bidding for the Dodgers and the Road Ahead
September 6, 2012
New York, New York

How to Sell a Baseball Team
June 28, 2012
Los Angeles, California





# Peter D. Clarke
## Partner

pdclarke@jonesday.com

**Chicago**
1.312.269.1519
1.312.782.8585 (F)

Peter Clarke has more than 30 years of experience representing the public utility industry, with a particular focus on corporate finance, disclosure obligations under the federal securities laws, corporate governance, and mergers and acquisitions. He chairs the Firm's Energy Practice.

Peter has represented utility clients in hundreds of corporate finance transactions, ranging from public and private offerings of debt and equity securities, exchange offers, tender offers, leverage leases, bank credit facilities, reorganizations, adoption of poison pills, acquisitions, dispositions, and mergers. Recently, he represented clients in the construction and ownership of high-voltage transmission lines, in the purchase of traditional fossil-fueled generating facilities, and in the development and ownership of wind farms. Representative clients include Xcel Energy, E.ON US LLC, OGE Energy Corp., and their respective utility and non-utility clients.

Peter also has served since 1997 as general counsel of OGE Energy. In this capacity he provides advice to the senior management and board of directors of OGE Energy and oversees all significant legal and regulatory matters affecting OGE Energy or its subsidiaries, including Oklahoma Gas and Electric Company, the wholly owned subsidiary of OGE Energy and the largest electric utility in Oklahoma.

Peter is a member of the ABA.

## Areas of Focus
Energy

Capital Markets

Banking & Finance

Energy Finance

Energy Transactions

## Honors & Distinctions
2011 BTI Consulting Group's "Client Service All-Star List," which recognizes an elite group of lawyers across the nation based on interviews with executives and general counsel at *Fortune* 1000 companies for delivering the absolute best client service

Recognized by *The Best Lawyers in America* for corporate law — 2006, 2007, and 2008

## Education
Indiana University (J.D. magna cum laude 1975); University of Michigan (B.B.A. with highest distinction 1972)

## Bar Admissions
Illinois and District of Columbia



## EXPERIENCE

**Oklahoma Gas and Electric obtains stay from Tenth Circuit of EPA's final rule on Oklahoma's regional haze state implementation plan**

On June 22, 2012, the Tenth Circuit Court of Appeals granted a request by Jones Day client Oklahoma Gas and Electric Company to stay an EPA rule that would have required OG&E to spend over $1.2 billion over the next five years to install emissions control technology.

**OG&E purchases project development assets for Crossroads wind farm project from Renewable Energy Systems Americas Inc.**

Jones Day advised Oklahoma Gas and Electric Company (OG&E) in connection with the purchase by OG&E from Renewable Energy Systems Americas Inc. ("RES Americas") of the project development assets for the 227.5 megawatt Crossroads wind farm project, the supply by Siemens to OG&E for the construction of the project of 95 2.3-MW rated wind turbine generators, and three 3-MW direct drive wind turbine generators, the first of their kind to be installed in the United States, and the supply by RES America Construction to OG&E of balance of plant engineering, procurement and construction services for the project.

**Oklahoma Gas and Electric completes $250 million public offering of 5.25% Senior Notes**

Jones Day represented Oklahoma Gas and Electric Company in a public offering of $250 million of 5.25% Senior Notes due 2041, underwritten by J.P. Morgan Securities LLC; Wells Fargo Securities, LLC; BNY Mellon Capital Markets, LLC; KeyBanc Capital Markets Inc.; Mitsubishi UFJ Securities (USA), Inc.; BOSC, Inc.; UMB Financial Services, Inc.; and U.S. Bancorp Investments, Inc.

**Xcel Energy acquires two power plants from Calpine for $739 million**

Jones Day advised Public Service Company of Colorado, a unit of Xcel Energy, in the acquisition of two Colorado power plants for $739 million.

**Xcel Energy sells Lubbock, Texas, area electricity distribution assets to Lubbock Power and Light**

Jones Day represented Xcel Energy Inc. and its wholly-owned subsidiary Southwestern Public Service Company (SPS) in SPS's sale of its Lubbock, Texas, area electricity distribution assets to Lubbock Power and Light, a subdivision of the City of Lubbock, for $88 million.

**OG&E develops identity theft program**

Jones Day assisted Oklahoma Gas and Electric Company with the development of an identity theft prevention program.

**Xcel Energy reviews its data protection plans**

Jones Day advised Xcel Energy on objectives and principles in relation to its customer and employee data protection, privacy and security concerning Smart Meter programs.

**Oklahoma Gas and Electric completes public offering of $250 million of 5.85% Senior Notes**

Jones Day represented Oklahoma Gas and Electric Company in a public offering of $250 million of 5.85% Senior Notes due 2040, underwritten by Mizuho Securities USA Inc., RBS Securities Inc., UBS Securities LLC, BOSC, Inc., KeyBanc Capital Markets Inc., Mitsubishi UFJ Securities (USA), Inc., Scotia Capital (USA) Inc., and U.S. Bancorp Investments, Inc.

**Northern States Power Company acquires wind power projects in Minnesota and North Dakota**

Jones Day advised Xcel Energy, Inc. on the regulatory, environmental, M&A, real estate, and tax aspects of the $900 million build-transfer acquisition by subsidiary Northern States Power Company-Minnesota of the 201 megawatt Nobles Wind Project, located in Minnesota, and the 150 megawatt Merricourt Wind Project, located in North Dakota, from enXco Development Corporation, a subsidiary of EDF Energies Nouvelles, S.A.

## OG&E secures its customer data

Jones Day assisted Oklahoma Gas and Electric Company in assessing its privacy and security policies with respect to its employee and customer data.

## OGE Energy subsidiary, Enogex, issues $250 million of Senior Notes in Rule 144A offering

Jones Day represented Enogex LLC, a natural gas pipeline company and subsidiary of OGE Energy Corp., in connection with its issuance of $250 million of 6.25% Senior Notes due 2020 in a Rule 144A offering, initial purchasers J.P. Morgan Securities Inc., Mitsubishi UFJ Securities (USA), Inc., and Wells Fargo Securities, LLC.

## OGE Energy subsidiary, Enogex, issues $200 million of Senior Notes in Rule 144A offering

Jones Day advised Enogex LLC, a natural gas pipeline company and subsidiary of OGE Energy Corp., in connection with its $200 million Rule 144A offering of 6.875% Senior Notes due 2014, initial purchasers J.P. Morgan Securities Inc., UBS Securities, and Wells Fargo Securities, LLC.

## OGE Energy subsidiary, Enogex, tenders for up to $150 million of Senior Notes

Jones Day represented Enogex LLC, a natural gas pipeline company and subsidiary of OGE Energy Corp., in connection with its tender offer for up to $150 million of 8.125% Senior Notes due 2010, dealer managers J.P. Morgan Securities, UBS Securities LLC, and Wells Fargo Securities, LLC.

## OGE purchases Redbud power plant from Kelson

Jones Day assisted OGE Energy Corp. with the $852 million acquisition of the Redbud power plant in Oklahoma from Kelson Holdings.

## OGE and Energy Transfer Partners propose $6 billion joint venture

Jones Day advised OGE Energy Corp. in the attempted formation of ETP Enogex Partners LLC, a $6 billion joint venture with Energy Transfer Partners, L.P. (ETP) intended to combine the Enogex midstream business of OGE with the interstate operations and midstream operations in the Rocky Mountains of ETP.

## OGE works with Invenergy Wind to build Centennial Wind Farm

Jones Day represented OGE Energy Corp. in the negotiation and implementation of agreements providing for Invenergy Wind LLC to engineer, procure, and construct the 120-megawatt Centennial Wind Farm located in Harper County, Oklahoma, and transfer it to OG&E, for an estimated cost of approximately $200 million.

## E.ON AG's U.S. subsidiaries obtain SEC approvals under PUHCA 1935

Jones Day represented LG&E Energy and its subsidiaries (which include Louisville Gas and Electric Company and Kentucky Utilities), which, in turn, are subsidiaries of E.ON AG, a registered holding company, on numerous matters before the SEC under PUHCA 1935, including assisting the client in periodic filings and obtaining approvals for financings, reorganizations, and affiliate transactions.

## OGRE obtains $150 million credit facility

Jones Day represented Oklahoma Gas and Electric Company in connection with its $150 million five-year revolving credit facility with the option to extend for up to two additional years.

## Northern States Power obtains $375 million five-year revolving credit facility

Jones Day represented Northern States Power Company, a subsidiary of Xcel Energy Inc., in connection with a $375 million five-year revolving credit facility, with option to extend for one year and option to increase the commitment by an additional $75 million.

## Southwestern Public Service Company receives a $250 million five-year revolving credit facility

Jones Day represented Southwestern Public Service Company, a subsidiary of Xcel Energy Inc., in connection with a $250 million five-year revolving credit facility, with option to extend for one year and option to increase the commitment by an additional $50 million.

**JONES DAY®**



# Richard H. Deane Jr.
## Partner

rhdeane@jonesday.com

**Atlanta**
1.404.581.8502
1.404.581.8330 (F)

Rick Deane represents clients who are facing all types of criminal or civil investigations by the United States Department of Justice and other investigative agencies. He has extensive experience in dealing with federal grand jury investigations. In addition to his criminal trial work, Rick handles general litigation matters.

Rick has broad experience trying cases in state and federal courts and has gained extensive experience appearing before the Fifth and Eleventh Circuit Courts of Appeal. He recently served as lead counsel in defending criminal charges against a major design-build company. All charges against the company were dismissed and the company paid a civil assessment. He also recently served as lead counsel in a month-long personal injury case tried in state court to a complete defense verdict.

Representative clients include the Atlanta School Board, The Facilities Group, the Fulton County District Attorney's Office, The Public Warehousing Company K.S.C., The Sherwin-Williams Company, and numerous others.

Rick is head of the litigation group for the Atlanta office and co-chair of the Firm's Corporate Criminal Investigations Practice. He is a member of the American College of Trial Lawyers. Rick is also the immediate past president of the National Association of Former United States Attorneys (NAFUSA).

## Areas of Focus

Corporate Criminal Investigations

Business and Tort Litigation (USA)

Global Disputes

Securities Litigation & SEC Enforcement

Health Care

## Honors & Distinctions

Named by *Time* Magazine in 2001 to the "Time 100 List of Innovators" featured in the Georgia edition of *Super Lawyers* magazine

Named in *Chambers USA* "America's Leading Lawyers for Business"

Listed in *The Best Lawyers in America* and in *Georgia Trend* magazine's "Legal Elite"

## Education

University of Michigan (LL.M. 1979); The University of Georgia (J.D. 1977; Earl Warren Scholar; B.A. cum laude 1974)



## Richard H. Deane Jr.

### Bar Admissions
Georgia

### Government Service
U.S. Attorney, Northern District of Georgia (1998-2001); Magistrate Judge, U.S. District Court, Northern District of Georgia (1994-1998); and Chief of the Criminal Division (1990-1994), Chief of the General Crimes Section (1986-1990), and Assistant U.S. Attorney (1980-1986), Northern District of Georgia, United States Department of Justice



## EXPERIENCE

### Jones Day advises the government of the Seychelles how to amend its penal code to support prosecution of pirate financiers

A team of Jones Day lawyers researched and drafted a legal memorandum to provide recommendations to the Seychellois government as to how to amend the Seychelles Penal Code to support the prosecution of financiers of piracy who reside outside the Seychelles.

### Former Atlanta School Superintendent Beverly Hall defends allegations of cheating on standardized tests

Jones Day represents former Atlanta School Superintendent Beverly Hall in connection with allegations of cheating on standardized tests by school system personnel.

### Jones Day obtains reversal and remand for civil detainee in Fourth Amendment case

A team from Jones Day Atlanta including Rick Deane, Rob Schmoll, Garrett Bradford and Hillary Keith prevailed in the Eleventh Circuit on behalf of a civil detainee held by the State of Florida pursuant to that state's Jimmy Ryce Act.

### Jones Day develops a pro bono practice in the Eleventh Circuit Court of Appeals

Atlanta partners David Monde, Rick Deane and Ken Smith, along with Pittsburgh partner Tom Jones and Columbus partner Chad Readler supervise teams of Jones Day associates in appellate case work.

### County government conducts investigation

Jones Day was retained by the Fulton County Attorney's office to conduct an investigation of allegations of theft and misuse of county funds.

### Defense contractor charged in multi-million dollar fraud

Jones Day is representing a global firm accused of fraud and submitting false claims in connection with its performance on government defense contracts.

### State of Georgia appeals adverse ruling involving constitutional right to speedy trial

Jones Day partner Rick Deane was appointed as a Special Assistant District Attorney to represent the State and argue on its behalf in two separate appeals to the Georgia Supreme Court.

### CFO of major corporation defends federal investigation alleging accounting fraud

Jones Day represented the CFO of a major corporation during the course of a federal investigation into allegations of accounting fraud. Criminal and administrative proceedings were initiated against other officers but not against the Firm client.

### College student defends against federal criminal charges

In 2008, at the request of a federal judge, Rick Deane, Jean-Paul Boulee, and Garrett Bradford agreed to represent a local college student indicted by a federal grand jury for a Hobbs Act robbery, burglary of a number of federal firearms licensees, and possession of a firearm during commission of a crime.

### Principal target represented in antitrust grand jury investigation

Jones Day is representing the principal target of a New York based antitrust grand jury investigation into a sector of the financial services industry.

### Sherwin-Williams persuades the Mississippi Supreme Court that plaintiff failed to prove injury from lead paint

Jones Day successfully defended The Sherwin-Williams Company against a teenager's claim that he ingested Sherwin-Williams' lead paint as a toddler and was permanently injured.



### Fortune 500 company defends commercial dispute regarding terms of contract obligations
Jones Day represented a Fortune 500 company in a major commercial dispute with one of its customers regarding the terms of their contractual obligations.

### Manufacturing company conducts internal investigation
On behalf of a manufacturing company, Jones Day conducted an internal investigation into a whistleblower complaint alleging Sarbanes-Oxley violations.

### Attorney defends allegations of mortgage fraud
Jones Day represented a lawyer in an investigation involving allegations of mortgage fraud.

### Physician defends federal investigation alleging Medicare fraud
Jones Day represented a physician in a federal investigation involving allegations of Medicare fraud.

### UAG defends against Tennessee and Mississippi class action involving "dealer reserve" revenues relating to automobile financing
Jones Day represented United Auto Group, Inc. in a multijurisdictional (Tennessee and Mississippi) class action settlement involving "dealer reserve" revenues relating to dealer-assisted automobile financing.

### CEO of Fortune 500 company defends Department of Justice investigation
Jones Day represented the CEO of a major healthcare provider in connection with a Justice Department investigation of alleged accounting fraud.

### Atlanta School Board conducts investigation of Board member
Jones Day was retained by the Atlanta School Board to conduct an investigation involving the conduct of a Board member.

### Fulton District Attorney's Office conducts investigation of Atlanta Police Department
Jones Day partner Rick Deane was appointed as a Special Assistant District Attorney in order to conduct an investigation of allegations that the Atlanta Police Department underreported rape allegations in order to misrepresent their crime statistics.

### Matsushita Communication defends employment discrimination case
Jones Day partner Rick Deane served as a mediator in a protracted employment discrimination case involving multiple plaintiffs.

### **PUBLICATIONS**

Corporate Internal Investigations: Best Practices, Pitfalls to Avoid
January 2013

DOJ/SEC's Resource Guide to the U.S. Foreign Corrupt Practices Act: Jones Day Summary and Analysis
December 2012

Georgia's New False Claims Act Part II: How This New Act May Apply To You
July 2012

The Other Half of False Claims Liability: State False Claims Acts
May 2012

FCPA and International Anticorruption Enforcement
May 2012



Georgia's New False Claims Act: It's Not Just For Health Care Anymore
May 2012

CMS Publishes Long-Awaited 60-Day Repayment Proposed Rule for Identified Overpayments
February 2012

Health Care Compliance and Enforcement Update
April 2011

Criminal Actions Against Failed Bank Executives
April 2011


## SPEAKING ENGAGEMENTS

Corporate Compliance: Recent Developments and Trends
March 2, 2011
Atlanta, Georgia

White Collar Crime, Grand Jury Practice: Avoiding Missteps That Could Endanger The Client
January 28, 2011
Atlanta, Georgia

Southeastern Health Care Fraud Institute: Affirmative Responses to Government Action
December 16, 2010
Atlanta, Georgia

Sentencing in the Eleventh Circuit-In Search of a Reasonable Sentence
October 15, 2010
Atlanta, Georgia

Corporate Internal Investigations: Delivering the News
October 6, 2010
Atlanta, Georgia

18th Annual Diversity CLE and Luncheon
September 29, 2010
Atlanta, Georgia

Foreign Corrupt Practices Act (FCPA): International Business and Crime - An Overview, Institute of Continuing Legal Education of Georgia
September 2, 2010
Atlanta, Georgia

Corporate Compliance and Ethics Institute 2009
March 26-27, 2009
Atlanta, Georgia

Designing The Investigation: Personnel, Scope and Audiences
March 19, 2008
Atlanta, Georgia

The Role of the Board, panelist, Corporate Compliance and Ethics Institute, Practicing Law Institute
March 30, 2007
Atlanta, Georgia



Director Liability/Responsibility
March 29-30, 2007
Atlanta, Georgia

Corporate Compliance Institute 2006
April 2006

Challenges to Ethics and Professionalism in White Collar Criminal Cases, White Collar Crime Seminar
September 22, 2005

Corporate Cooperation & the Changing Relationship Between Companies & Their Employees, panelist, ABA Criminal Justice Section
May 25, 2005
Atlanta, Georgia

Prosecutional Ethics, State-wide U.S. Attorney's Conference, meeting of all districts in the state
February 25, 2005
Atlanta, Georgia

Current Issues in RICO Prosecutions, panelist, Federal Criminal Practice
September 2004
Atlanta, Georgia

Professionalism, University of Georgia Law School Orientation
August 13, 2004
Athens, Georgia

Recent Supreme Court Decisions, panelist,  American Bar Association Annual Convention
August 2004
Atlanta, Georgia

Recent Trends in Federal White Collar Prosecution, panelist, White Collar Crime Seminar
December 4, 2003
Atlanta, Georgia

How To Examine Your Witnesses And Get The Most From Them,  Gate City Bar Association's Trial Technique Seminar
November 20, 2003
Atlanta, Georgia

Why Conduct an Internal Investigation, panelist, Corporate Criminal Investigations Seminar
September 5, 2003
Atlanta, Georgia

Prosecutorial Ethics,  National Black Prosecutor's Convention
August 11, 2003
Atlanta, Georgia

Health Care Prosecutions, panelist, Health Care Seminar
April 10 & 11, 2003
Pine Mountain, Georgia

5th Annual Health Care Fraud Institute
March 28-29, 2002
Pine Mountain, Georgia





# Lawrence C. DiNardo
## Partner

lcdinardo@jonesday.com

**Chicago**
1.312.269.4306
1.312.782.8585 (F)

Larry DiNardo practices in all areas of employment and labor law, with particular emphasis on employment discrimination litigation, FLSA/wage-hour cases, and other employment litigation, including employee benefits and executive employment contract disputes. He has extensive experience defending employers in class actions and individual cases brought under Title VII, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Equal Pay Act, the Fair Labor Standards Act, and the Family and Medical Leave Act. His labor practice includes the representation of employers before the National Labor Relations Board, labor arbitrations, and labor negotiations. Larry also has served as labor counsel in business restructurings, sales, and mergers.

Larry's trial and appellate experience is extensive. He has tried more than 35 cases to verdict before juries around the United States and handled an equal number of cases before federal and state appellate courts.

Larry oversees the Firm's Labor & Employment Practice. Larry is a member of The College of Labor and Employment Lawyers. He has served as a visiting professor of law at Notre Dame Law School and as a guest lecturer at DePaul University College of Law. He has been published in the *Journal of College and University Law* and has made numerous presentations on employment law topics.

## Areas of Focus
Labor & Employment

Class Action Employment Litigation

Collective Bargaining, Contract Enforcement & Union Organizing

Employee Benefits Counseling & Litigation

## Honors & Distinctions
Repeatedly named to "America's Leading Lawyers" by *Chambers USA*, *The Best Lawyers in America*, and the "Top 50 Most Powerful Employment Lawyers in the U.S." by *Human Resource Executive* Magazine

Recognized as a leader in their field by *PLC Which lawyer?* and *The Legal 500*

*Illinois Super Lawyers* since 2005

## Education
University of Notre Dame (J.D. with honors 1974; B.A. in Government 1971)

## Bar Admissions
Illinois; Indiana; U.S. Supreme Court; U.S. Courts of Appeals for the Third, Fifth, Sixth, Seventh, and Ninth Circuits; and U.S. District Courts for the Northern and Central Districts of Illinois, the Northern and Southern Districts of Indiana, the Eastern District of Michigan, and the District of Colorado



## EXPERIENCE

### Flying J prevails in collective action lawsuit alleging misclassification under the FLSA

Jones Day represented employer in a collective-action lawsuit filed on behalf of plaintiff and all other similarly-situated employees alleging that Flying J, Inc. misclassified its accounting manager job position as exempt under the Fair Labor Standards Act (FLSA) and retaliated against her in violation of the FLSA.

### U.S. Steel prevails in "donning & doffing" FLSA case filed by United Steelworkers local union

Jones Day provided defense to U.S. Steel Corporation in a collective action in which plaintiffs seek to represent all non-exempt production and maintenance employees at Clairton Works and claim that U. S. Steel has failed to pay them overtime compensation for time spent donning and doffing protective clothing and traveling to and from their worksites.

### U.S. Steel wins summary judgment in putative nationwide FLSA collective action of "donning & doffing"

Jones Day defended United States Steel Corporation in a putative nationwide collective action in which plaintiffs seek to represent all non-exempt production and maintenance employees at U.S. Steel's facilities.

### Levy Company wins summary judgment in collective bargaining agreement dispute with union

Jones Day represented The Levy Company, d/b/a The Levy Company, Levy Indiana Slag Co. and Edw. C. Levy Company, Inc. (and Staff Source, LLC), in an unfair labor practice dispute.

### Verizon Business prevails in former employee's non-compete dispute involving restrictive covenants

Jones Day successfully represented Verizon Business in non-compete dispute with former employee involving enforcement of restrictive covenants.

### Verizon negotiates collective bargaining agreement with Communications Workers of America

Jones Day advised Verizon Communications, Inc. (New York, NY) in 2003, 2008, and 2011 in connection with its collective bargaining negotiations with the Communications Workers of America representing Verizon employees up and down the East Coast and in related state court injunction proceedings.

### General Mills prevails in arbitration involving union grievance seeking severance pay for former employees

Jones Day advised General Mills in this grievance filed by the Bakery, Confectionery, Tobacco Workers & Grain Millers Union ("Union") on behalf of 119 former General Mills employees whose employment was transferred to the purchaser of General Mills' Toledo, Ohio facility.

### IBM prevails in sex and race discrimination jury trial

Jones Day represented International Business Machines Corporation in a discrimination jury trial over the course of approximately five weeks.

### Roadway Express obtains dismissal on summary judgment in race discrimination and retaliation lawsuit

Jones Day defended Roadway Express, Inc. in a suit by a former employee alleging race discrimination and retaliation.

### IBM summary judgment affirmed by 7th Circuit in case involving ADA's association discrimination provision

Jones Day defended IBM in lawsuit involving former employee who alleged that he had been terminated (i) in violation of the ADAct based on his association with individuals alleged to be disabled and (ii) in violation of the ERISA in retaliation for filing claims for health benefits for these individuals.

### Sun-Sentinel, an affiliate of Tribune, defends against discrimination claims brought by former employee

Jones Day defended Sun-Sentinel Co., an affiliate of Tribune Co., against a former employee's claims of



discriminatory denial of training and benefits, demotion, discharge, harassment, and hostile environment in violation of Title VII, 42 U.S.C. § 1981, and the Florida Civil Rights Act.

## PUBLICATIONS

NLRB Proceedings in the Wake of *Noel Canning*
February 2013

D.C. Circuit holds that President Obama's recess appointments to the National Labor Relations Board are constitutionally invalid
January 2013

National Labor Relations Board Issues Two Decisions Enjoining Employer Rules Limiting Social Media Activities
October 2012

NLRB Acting General Counsel Issues Enforcement Guidance on Social Media Policies
June 2012

EEOC Issues New Guidance on the Use of Criminal Background Checks by Employers
May 2012

OFCCP Rescinds Directive on Jurisdiction Over Health Care Providers
April 2012

Circuit Court Temporarily Enjoins NLRB's Mandatory Posting Rule
April 2012

Summary of the Most Important Aspects of Spain's Royal Decree Law 3/2012 Proposing Urgent Measures for the Reform of the Spanish Labor Market
March 2012

NLRB Extends Date For Mandatory Postings to April 30, 2012
January 2012

NLRB Issues Controversial Decision on Standard for Unit Appropriateness Determinations
October 2011

NLRB Issues Rule Mandating Notices Informing Employees About Rights to Organize
September 2011

Supreme Court Rules That FLSA's Anti-Retaliation Provision Covers Oral Complaints
March 2011

Labor & Employment Alert: NLRB Orders Daily Compound Interest on Backpay Awards
October 2010

Labor & Employment Alert: *New Process Steel, L.P. v. NLRB*: Supreme Court Invalidates Hundreds of Decisions Issued by Two-Member Board
June 2010

Labor & Employment Alert: Supreme Court Issues Ruling in *Lewis v. City of Chicago*
May 2010

EEOC's proposed rule seeks to clarify the 'reasonable factor other than age' defense to disparate impact claims under the ADEA
March 2010



*Kentucky River* Trilogy: Recent NLRB Decisions Clarify the Definition of the Term "Supervisor" Under the NLRA
October 2006

## SPEAKING ENGAGEMENTS

German Labor & Employment Seminar
October 4, 2012
Munich, Germany

European Labor & Employment related compliance issues: The latest developments in Labor law impacting local or multi-national employers
June 21, 2012
Webinar

2012 Hospitality Labor & Employment Discussion Group
May 10, 2012
Chicago, Illinois

2011 Annual Hospitality Labor & Employment Discussion Group
April 14, 2011
Chicago, Illinois

Latest Developments in Anticipated Labor and Employment Legislation, Jones Day 2009 Labor & Employment Legislative Briefing
February 25-26, 2009
Chicago, Illinois

Jones Day 2008 California Labor & Employment Law Briefing
September 18, 2008
Los Angeles, California

Employment Law Developments: ADA, Religious Freedom, and New Potential Protected Classes, Jones Day 2008 Labor & Employment Legislative Briefing
April 24, 2008
Washington, D.C.

Survey of Recent Developments in ERISA Litigation
April 2007
New York, New York

Labor & Employment Briefings: Electronic Communications and Data: The Impact on Employment Litigation
December 5, 2006
Chicago, Illinois





# Jeffrey B. Ellman
## Partner

jbellman@jonesday.com

**Atlanta**
1.404.581.8309
1.404.581.8330 (F)

Jeff Ellman represents parties of all types in large corporate restructurings, including debtors, secured lenders, asset purchasers, significant creditors, creditors' committees, contract counterparties, equity sponsors, and other parties in interest. Jeff's practice focuses on chapter 11 reorganizations and liquidations, out-of-court restructurings, distressed acquisitions, and related transactions in a wide range of industries. Jeff also counsels clients on fraudulent conveyance, illegal dividend, preferential transfer, fiduciary duty, and corporate formalities issues.

Jeff represented the debtors in the chapter 11 cases of Chrysler, Dana Corp., LTV Steel, Purina Mills, and World Kitchen, among others. His representations of distressed asset purchasers include Diebold as the buyer in the Mosler chapter 11 case, International Steel Group in the acquisition of Weirton Steel and Georgetown Steel in their chapter 11 cases, and MPS Group as the purchaser of assets from the Axium chapter 7 estate. Jeff's representations of secured lenders include Fifth Third Bank and National City Bank as senior prepetition and postpetition lenders and Wachovia Bank as agent for the lender group in the Horizon PCS chapter 11 cases. Jeff also represents Morgan Stanley Real Estate Advisors as national counsel with respect to its clients' troubled commercial lease portfolio.

Jeff is a member of the American Bankruptcy Institute, the Turnaround Management Association, and the Bankruptcy Section of the Atlanta Bar Association. Jeff also serves on the boards of Park Pride, a nonprofit green space organization in Atlanta, and Young Audiences, Woodruff Arts Center, a nonprofit organization that provides educational arts programming to Georgia students.

## Areas of Focus
Business Restructuring & Reorganization

Borrower / Workouts / Chapter 11 Debtor Representations

Distressed M&A Representations

Creditors Committee / Ad Hoc Committee Representations

Metals & Mining

## Honors & Distinctions
*Chambers USA* (2005-2009); *Turnaround & Workouts* — "Outstanding Young Bankruptcy Lawyers" in the United States (2001); *Georgia Trend* magazine — "Legal Elite" distinction (2007-2008); *Georgia Super Lawye rs* (2010-2011)

## Education
Harvard University (J.D. magna cum laude 1991); University of Michigan (A.B. summa cum laude 1987; Phi Beta Kappa)



## Jeffrey B. Ellman

**Bar Admissions**
Georgia, Ohio, U.S. District Courts for the Northern District of Georgia and Southern District of Ohio and the U.S.
Court of Appeals for the Second Circuit



## EXPERIENCE

### Old Carco Liquidation Trust successfully resolves environmental challenge
On behalf of Old Carco Liquidation Trust, successor in interest to Chrysler LLC, Jones Day successfully resolved litigation by and against Old Carco as a result of the City of Kenosha, Wisconsin's efforts to block the Trust's disposition of a former Chrysler Engine Plant.

### AFA Foods sells King of Prussia beef processing plant
Jones Day assisted AFA Foods, one of the largest ground beef processing enterprises in the United States, with the sale of its King of Prussia, Pennsylvania ground beef processing facility to CTI Foods Holding Co.

### AFA Foods sells its Forth Worth facility to Cargill
Jones Day represented AFA Foods in a section 363 sale of its Forth Worth, Texas beef facility.

### AFA Foods sells its Georgia plant to FPL Food
Jones Day advised AFA Foods in the sale of its Thomasville, Georgia ground beef processing plant to FPL Food LLC for $7.3 million and assumed liabilities.

### AFA Foods sells beef processing plant to Tri West Investments
Jones Day advised AFA Foods in the $4.4 million sale of its Los Angeles, California ground beef processing plant to Tri West Investments LLC in a section 363 sale.

### AFA Foods retains Jones Day in chapter 11 cases
Jones Day was retained by AFA Foods and its affiliates to advise it in connection with the restructuring and sale of its businesses.

### Chrysler sold to Fiat-led "New Chrysler" after historic court proceedings
After a historic battle all the way to the United States Supreme Court, Chrysler LLC sold substantially all of its assets to Fiat-led "New Chrysler" (Chrysler Group LLC) on June 10, 2009, providing the opportunity for its iconic brands and U.S. operations to survive.

### Georgia Gulf completes successful debt-for-equity exchange
Jones Day represented Georgia Gulf Corporation in its successful exchange of 92% of the aggregate outstanding principal amount of $736 million owing in respect of three series Senior Notes.

### Black Diamond Mining files bankruptcy
Jones Day represented Black Diamond Mining Company and its affiliated debtors, producers of up to 2 million tons per year of steam coal in Eastern Kentucky, in their chapter 11 restructuring.

### Dana Corporation successfully reorganizes in U.S. and U.K. in "Deal of the Year"
Jones Day advised Dana Corporation and 40 of its U.S. subsidiaries in their reorganization under chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York.

### MPS Group acquires Ensemble Chimes business
Jones Day represented MPS Group, Inc. and certain of its affiliates as the purchaser of the Ensemble Chimes Global business from the Axium International debtors in their Chapter 7 bankruptcy cases in the Central District of California.

### Nobel Automotive fights for success fee
Jones Day represented Nobel Automotive, the successor to Dana Corporation, in a settlement agreement dispute for the payment of certain success fees.



# Jeffrey B. Ellman

### International Paper Company is largest creditor in Androscoggin restructuring
Jones Day represented International Paper as both a creditor and as a major contract party in the Androscroggin Energy chapter 11 case.

### Turbine Engine buys aerospace assets
Jones Day represented Turbine Engine Components Technologies Corp. in its $18 million acquisition of aerospace manufacturing assets held by a chapter 11 debtor.

### NexPak Corporation restructures $200 million in debt
Jones Day represented NexPak, a leading manufacturer and distributor of plastic packaging for DVDs and other media formats, in its prenegotiated chapter 11 cases involving approximately $200 million in debt.

### Berman Mortgage assists with Atlanta hotel loan
Jones Day assisted Berman Mortgage Corporation, as agent for a group of prepetition lenders, with a $10 million loan secured by a hotel property in Atlanta, Georgia.

### Applied Biosystem is advised on licenses with troubled companies
Jones Day represented Applied Biosystems, a marketer of instrument-based systems, as licensor to and licensee from certain troubled companies.

### International Steel Group acquires Weirton Steel
Jones Day advised International Steel Group Inc. (n/k/a Mittal Steel) in its $255 million acquisition of the assets of Weirton Steel Corporation, a producer of flat rolled carbon steel products at a facility near Wheeling, West Virginia, out of bankruptcy.

### National City and Fifth Third banks are senior lenders in PAC bankruptcy
Jones Day represented National City Bank and Fifth Third Bank as the senior prepetition lenders and debtor-in-possession lenders in the PAC Holding Co. chapter 11 cases.

### Wachovia Bank led bank group in Horizon PCS bankruptcy
Jones Day represented Wachovia Bank, the agent bank of a secured lending group, in the chapter 11 cases of Horizon PCS Inc., a regional Sprint PCS "affiliate," with approximately $500 million in total debt.

## PUBLICATIONS

Putting the Stockton Bankruptcy in Perspective, *Bankruptcy Law360, California Law360*
January 18, 2013

Stockton, California, Ruling: Bankruptcy Court Powerless to Prevent Retiree Benefit Reductions by Municipal Debtor
November/December 2012

Bankruptcy Code Preemption of State Law, 21 *Norton Journal of Bankruptcy Law & Practice* 3, Art. 2
May 2012

Pensions and Chapter 9: Can Municipalities Use Bankruptcy to Solve Their Pension Woes?, *Emory Bankruptcy Developments Journal,* 27 Emory Bankr. Dev. J. 365 (2011)
August 2011

Tactical Options for Addressing Personal Injury Tort and Wrongful Death Claims in Bankruptcy Court, *Pratt's Journal of Bankruptcy Law*
September/October 2009



Supreme Court Bright-Line Ruling on Scope of Chapter 11 Transfer Tax Exemption Is Bad News for Pre-Confirmation Asset Sales In Bankruptcy, reprinted in *4 Pratt's J. Bankr. L.* 508
September 2008

Supreme Court Bright-Line Ruling on Scope of Chapter 11 Transfer Tax Exemption Bad News for Pre-Confirmation Asset Sales in Bankruptcy
July/August 2008

Court's Piccadilly Decision Draws Bright Line, *Bankruptcy Law360*
July 2008

As Directors Approach the 'Zone of Insolvency,' *Directors & Boards*
Fall 2000

Unique Issues Arising in the Bankruptcy Process of Healthcare Debtors, Houlihan Lokey/Jones Day Healthcare Bankruptcy Seminar
October 22, 1999

Understanding Reclamation Claims in Bankruptcy: Hidden Complexity in a Simple Statute, *Journal of Bankruptcy Law and Practice*
September/October 1999

Issues Confronting Lenders to Healthcare Debtors, Robert Morris Associates' Third Annual Health Care Conference, Nashville, Tennessee
April 27, 1999

Looking in From the Outside — A Bankruptcy Lawyer's Perspective on Securities Laws Issues in the Prepackaged Plan of Reorganization Process, 1994 Ohio Securities Conference
November 7, 1994

Prepackaged Plan of Reorganization — An Overview and Comparison to Other Restructuring Alternatives, Midwest Regional Bankruptcy Seminar
September 28-30, 1994

Section 366 of the Bankruptcy Code — The Debtor's Perspective, Third Annual Gas and Electric Utility Bankruptcy Program, Richmond, Virginia
August 16, 1994

## SPEAKING ENGAGEMENTS

The Business Provisions of the 2005 Bankruptcy Code Amendments, Jones Day CLE Program
September 28, 2005
Atlanta, Georgia

Bankruptcy and Restructuring and Their Impact on the American Labor Force: Pensions, Retiree Benefits and Collective Bargaining Agreements Under the Glare of Insolvency, DSI 2005 Mid-Winter Aloha Weekend
February 5, 2005
Honolulu, Hawaii

Licensing Intellectual Property To and From Financially-Troubled Companies, presented with Michelle M. Harner, Chicago
September 1, 2004
Foster City, California



## Jeffrey B. Ellman

Collateral Valuation and Other Current Issues in Chapter 11 Bankruptcies, Jones Day CLE Program
November 12, 1997
Columbus, Ohio





# Robert Louis Ford
## Partner

rlford@jonesday.com

**San Francisco**
1.415.875.5740
1.415.875.5700 (F)

Bob Ford represents employers in all aspects of labor and employment law. His practice is particularly focused on labor management relations. He has extensive experience representing employers in collective bargaining, labor arbitration proceedings, labor litigation, union organizing and decertification proceedings, unfair labor practice proceedings, strikes and picketing disputes, corporate campaigns, and neutrality and card check agreements. His traditional labor practice extends nationwide and includes employers in the media, retail, real estate, manufacturing, education, construction, and hospitality industries. Representative clients include McClatchy Newspapers, Bridgestone/Firestone, Albertsons, University of San Francisco, Knight Ridder, Gannett, and the Building Owners and Managers of San Francisco.

Bob's practice also includes counseling employers regarding labor and employment issues, including hiring and termination issues, compensation and benefit practice, reduction in force, mergers and acquisitions, wage and hour compliance, occupational safety, and other labor and employment issues.

### Areas of Focus
Labor & Employment

NLRB Proceedings & Appeals

Collective Bargaining, Contract Enforcement & Union Organizing

### Education
Columbia University (J.D. with honors 1975); University of Notre Dame (B.A. in Economics summa cum laude 1971)

### Bar Admissions
California



## EXPERIENCE

### Non-profit news organization, focusing on high-quality journalism in the Bay Area civic and community news, is launched
In response to the decline of local news coverage, Jones Day has acted as outside counsel on a pro bono basis for the Bay Area News Project ("BANP"), a news entity that has not yet been incorporated, but intends to be formed as a California public benefit corporation and seek tax exempt status under Section 501(c)(3) of the Internal Revenue Code.

### Bridgestone/Firestone defends against sexual harassment and sexual discrimination lawsuit
Jones Day represented Bridgestone/Firestone, Inc. in a sexual harassment and sexual discrimination lawsuit.

### Bridgestone/Firestone successfully defends against sexual harassment and sexual discrimination lawsuit
Jones Day, on behalf of Bridgestone/Firestone, Inc., obtained summary judgment on all counts in a case involving claims of same-sex sexual harassment, wrongful termination, violation of the Unruh Civil Rights Act and tortuous interference with prospective economic advantage.

### Albertson's negotiates industrywide multi-employer collective bargaining agreement
Jones Day advised Albertson's with respect to multi-employer negotiations with the unions affecting approximately 70,000 employees at retail stores and distribution centers in Southern California operated by Albertson's, The Vons Companies, Inc. ("Vons") and Ralph's Grocery Company ("Ralph's").

### Albertson's prevails in the defense of 4,500 unemployment insurance claims cases
Jones Day's special labor counsel successfully represented Albertson's, Inc. in the defense of unemployment insurance claims cases.

### Building Owners and Managers Association of San Francisco successfully negotiates with SEIU
Jones Day represented multiple employers in negotiations involving the janitorial work force in commercial office buildings.

### Fresno Bee Newspaper defends against arbitration of grievance filed by union
Jones Day represented Fresno Bee Newspaper, a publication of McClatchy Newspapers, in the arbitration of a grievance filed by the union involving assignment of work on the newspaper's online publication.

### Bridgestone/Firestone wins dismissal of unfair labor practice charges before the NLRB
Jones Day represented Bridgestone/Firestone in litigation of unfair labor practice charges.

### Albertson's successfully defends against complaint seeking payment of health care and COBRA benefits
Jones Day represented Albertson's Inc. in a strike and lockout involving the Food & Commercial Workers Union.

## PUBLICATIONS

NLRB Proceedings in the Wake of *Noel Canning*
February 2013

D.C. Circuit holds that President Obama's recess appointments to the National Labor Relations Board are constitutionally invalid
January 2013

NLRB Issues Significant Decisions at Year's End
January 2013



## Robert Louis Ford

2012 California Labor and Employment Legislative Update
October 2012

National Labor Relations Board Issues Two Decisions Enjoining Employer Rules Limiting Social Media Activities
October 2012

Balancing Patient and Employee Interests: Health Care Employer Responses to the H1N1 Pandemic
November 2009

Union Access to Private Property: California Supreme Court Rules Shopping Malls Cannot Prohibit Union Protesters from Urging Boycott of Stores
August 2008

2005 California Employment Law Legislative Update
March 2005

2004 California Employment Law Legislative Update
June 2004

### SPEAKING ENGAGEMENTS

Employee Free Choice Act Briefing - Los Angeles
January 8, 2009
Los Angeles, California

Jones Day 2008 California Labor & Employment Law Briefing
September 18, 2008
Los Angeles, California

Employee Benefits in a Changing Global Economy, The National Employment Law Institute's Twelfth Annual Advanced-Level Human Resources Conferences
May 3, 2007
San Francisco, California

Labor & Employment Briefings: Electronic Communications and Data: The Impact on Employment Litigation
December 5, 2006
Chicago, Illinois





# Sarah Heck Griffin
## Partner

sgriffin@jonesday.com

**Los Angeles**
1.213.243.2560
1.213.243.2539 (F)

Sarah Griffin advises employers on the full range of tax and ERISA issues concerning the employee benefit plans and compensation arrangements they sponsor. She counsels in-house legal departments, plan committees, compensation and benefits specialists, investment advisors, and human resources professionals with respect to the design, governance, and administration of corporate benefit programs and the investment of employee benefit plan assets. She has extensive experience in health and welfare plans and funding vehicles (including VEBAs, 401(h) accounts, and HRAs), fringe benefits, nonqualified deferred compensation plans (including ineligible deferred compensation plans for tax-exempt organizations and government employers), and qualified retirement plans. In the context of M&A transactions, joint ventures, and financings, Sarah works with clients to achieve their overall transaction strategy, including with respect to compensation packages and transitioning of employee plans. She also advises California governmental entities and retirement systems regarding the state's pension laws and the common law of trusts.

Sarah's representative clients include ICANN, LAUSD, Los Angeles County, and Sempra Energy. She has advised a *Fortune* 500 company in the course of a significant Department of Labor investigation and settlement related to the reimbursement of expenses from plan assets.

Sarah is a member of the University of Colorado at Boulder Law School Alumni Board and is past president of the board of directors for the Los Angeles County Bar Association Foundation.

### Areas of Focus
Employee Benefits & Executive Compensation

Health Care

ERISA Plan Assets, Employer Securities, and Use of Institutional Fiduciaries

### Honors & Distinctions
*Chambers USA* (2009) — recognized for labor & employment: benefits & compensation

### Education
University of Colorado (J.D. 1984; Order of the Coif; Law Review); University of Southern California (B.A. 1976; Phi Beta Kappa)

### Bar Admissions
Colorado and California

### Clerkships
Law Clerk to: Judge John C. Porfilio, United States Court of Appeals, Tenth Circuit (1985 term) and former Justice William D. Neighbors, Colorado Supreme Court (1984 term)



## EXPERIENCE

### Dignity Health acquires U.S. HealthWorks
Jones Day advised Dignity Health, the fifth largest health system in the nation, in its acquisition of U.S. HealthWorks, the largest independent operator of occupational medicine and urgent care centers in the United States.

### Dignity Health acquires Health Diagnostics of California
Jones Day represented Dignity Health in connection with its acquisition of Health Diagnostics of California, a chain of diagnostic imaging centers located in Northern and Southern California.

### City of Hope forms City of Hope Medical Foundation
Jones Day advised the City of Hope in connection with the development and formation of City of Hope Medical Foundation (COHMF) and the purchase by COHMF of California Cancer Specialists Medical Group (CCSMG) and Oncology Specialists of COH (OSCOH).

### Celgene acquires Abraxis BioScience for $2.9 billion
Jones Day advised Celgene Corporation in its $2.9 billion merger with Abraxis BioScience Inc.

### BioMarin acquires LEAD Therapeutics
Jones Day advised BioMarin Pharmaceutical, Inc. in connection with the acquisition of LEAD Therapeutics, Inc., a small private drug discovery and early stage development company with key compound LT-673, an orally available poly (ADP-ribose) polymerase (PARP) inhibitor for the treatment of patients with rare, genetically defined cancers.

### Celgene buys Gloucester Pharmaceuticals for $640 million to bolster its anticancer drug pipeline
Jones Day advised Celgene Corporation in its acquisition of Gloucester Pharmaceuticals.

### Sycamore Hill Capital completes MBO of The Ascent Services Group
Jones Day advised Sycamore Hill Capital Group in the management buyout of The Ascent Services Group, a national leader in staffing and workforce management services.

### Neoware acquired by Hewlett-Packard
Jones Day advised Neoware, Inc. in its $332 million acquisition by Hewlett-Packard Company.

### Ellison Technologies acquired by Mitsui and Mori Seiki
Jones Day advised Ellison Technologies, Inc., a U.S. producer of machine tools, in the acquisition of a controlling interest by Mitsui & Co. and Mori Seiki Co., Ltd.

### Contra Costa County seeks advice on tax consequences of plan design
Jones Day advised Contra Costa County on tax consequences of plan design.

### The Deutsch Group completes sale to WENDEL Investissement
Jones Day advised The Deutsch Group in its $1.04 billion acquisition by WENDEL Investissement ("Wendel").

### International accounting and legal professional service partnerships seek advice on retirement and welfare benefits
Jones Day advised international accounting and legal professional service partnerships on taxation and qualification issues applicable to funded and unfunded partnership retirement benefits, on tax and treaty issues for nonresident alien partners and on all facets of the design, administration and compliance of self-funded welfare benefit plans (including medical, retiree medical).



## Sarah Heck Griffin

### Harman International Industries acquires PhatNoise
Jones Day advised Harman International Industries, Incorporated in its acquisition of substantially all of the assets and customer business of PhatNoise, Inc.

### Community Memorial Health System acquires Grossman Imaging Centers
Jones Day represented Community Memorial Health System (Ventura, California) in its acquisition of Grossman Imaging Centers.

### Deutsch Company sells Deutsche Metal Components and Permaswage
Jones Day advised The Deutsche Company in connection with its sale of the assets of Deutsch Metal Components, a designer and manufacturer of equipment for aerospace and military, and the entire share capital of Permaswage S.A.S, a designer and manufacturer of gaskets for the aviation industry, to Stirling Square Capital Partners.

### Multiple public pension plans seek advice on ERISA investments
Jones Day advised multiple public pension plans on the ERISA and state law pension plan issues presented by investments in private equity investments, pooled real estate investment vehicles, or hedge fund investments.

### Alameda County Employees' Retirement Association engages Firm for tax and pension advice
Jones Day advised administrative board of Alameda County Employees' Retirement Association regarding administration of defined benefit plan.

### County of Los Angeles seeks advice on tax and state pension law matters
Jones Day was retained by County of LA for advice on a wide range of benefits-related matters.

### Deutsch Company seeks representation of plan sponsor in the design and administration of plans
Jones Day represented of plan sponsor of Deutsch Company in the design and administration of qualified retirement plans, welfare plans, and fringe benefit arrangements.

### Fortune 500 company seeks advice on the use of plan assets to pay administrative expenses
Jones Day advised a Fortune 500 company regarding the use of plan assets to pay administrative expenses of qualified retirement plans and welfare plans funded through a VEBA.

### PUBLICATIONS

The Affordable Care Act at 2½—What Employers Should Expect Now
August 2012

Health Care Reform: What If They Throw the Whole Thing Out?
May 2012

Fully Insured Group Health Plans May No Longer Provide Discriminatory Benefits
November 2010

Claims and Appeals Procedures: New Internal and External Review Requirements
August 2010

An Ounce of Prevention—Not Just a Good Idea, Now It's the Law: Health Care Reform Requires Employer-Sponsored Group Health Plans to Provide Preventive Services With No Cost-Sharing
July 2010

Thou Shalt Not Exclude, Rescind, or Limit: Agencies Release Regulations Implementing Patient's Bill of Rights
July 2010



The Retiree-Only Plan Exception: Is It Still Effective After Health Care Reform?
July 2010

The More Things Change, the More They Stay the Same: Is It Worth Maintaining Grandfathered Status Under the New Health Care Law?
June 2010

Surprise for Employers: No Collective Bargaining Exception Under Health Care Reform
June 2010

The Early Retiree Reinsurance Program—U.S. Employers To Line Up for $5 Billion Pool of Federal Funds
May 2010

No Good Deed Goes Unpunished: GINA Puts Your Group Health Plan's Health Risk Assessment at Risk, *Employee Benefit Plan Review*
May 2010

Impact of Health Care Reform Legislation on Employer-Sponsored Group Health Plans
April 2010

COBRA Strike 3: Another Extension of COBRA Subsidy
March 2010

Extension of COBRA Subsidy for Assistance Eligible Individuals
January 2010

2010 Open Enrollment Alert – Under GINA No Good Deed Goes Unpunished, *The Metropolitan Corporate Counsel*
November 2009

Warning to Employers: If Your Health Risk Assessment Violates GINA, You May Have to Tell the IRS (and Pay Excise Taxes)
October 2009

Health Plan Open Enrollment Alert—No Reward Goes Unpunished
October 2009

Group Health Plan Continuation Coverage: Fast Action Required To Comply with New COBRA Premium Assistance Requirements
February 2009

Everything You Always Wanted to Know About a Public Employer's Ability to Modify Retiree Benefits but Were Too Afraid to Ask
August 2008

Changes to California Rules Relating to Equity Compensation Plans
September 2007

An Impending Collision at the Intersection of Code Section 457 and Code Section 409A
July 2007

2005 California Employment Law Legislative Update
March 2005

2004 California Employment Law Legislative Update
June 2004



California Senate Bill 2 (2003)
March 2004

IRS Sheds some Light on Recent COBRA Amendments, *CCH Employee Benefits Management Directions*, Issue No. 176, Report No. 175
April 7, 1998

*CCH COBRA Guide Connections*, Issue No. 61, Report No. 61
March 26, 1998

## SPEAKING ENGAGEMENTS

Jones Day Hosts California Client Development Event for Women
October 4, 2012
California

An Overview of Code Section 409A
May 28, 2009
El Segundo, California

Can you afford your promises? Five Things Public Employers can do to Protect Their Right to Make Changes to Retiree Benefit Programs
April 2008
Los AngelesIrvineSan DiegoSilicon ValleySan Francisco, California

409A Documentary Compliance -- Time is Running Out!, Jones Day University
January 24, 2008

10 Things Plaintiffs' Lawyers Won't Tell You About 401(K) Plan "Excess" Service Fee Lawsuits
May 15, 2007
Webinar

The Changing Role of Institutional Trustee, The Western Pension and Benefits Conference - Los Angeles Chapter
May 2, 2007
Los Angeles, California

The Western Pension and Benefits Conference - Los Angeles Chapter
May 2007
Los Angeles, California

Funding Retiree Health Obligations for Public Employers and Plans: Available Tax-Preferred Vehicles, JD MCLE University
January 25, 2007
Los Angeles, California

Pension Protection Act Provisions Relevant to Public Employers, JD MCLE University
January 25, 2007
Los Angeles, California

Health Care Executive Compensation Under Fire:  How to Survive the Onslaught
September 20, 2005
Los Angeles, California





# Beth Heifetz
## Partner

bheifetz@jonesday.com

**Washington**
1.202.879.3878
1.202.626.1700 (F)

Beth Heifetz has more than 25 years of experience in appellate litigation, representing clients in constitutional, tax, antitrust, securities, insurance, and bankruptcy matters. She also has led successful international arbitration teams in commercial disputes, as well as trial teams in cases concerning remedies for constitutional violations.

Beth's recent experience includes representing online travel companies in appeals across the country challenging state and local efforts to impose certain taxes. Other recent experience includes representing creditors committees in professional negligence litigation in the U.S. Courts of Appeals and in state courts and representing clients in bankruptcy appeals involving government contracts and executive compensation. Beth has authored briefs and petitions for certiorari in the United States Supreme Court on a variety of issues including the First Amendment, federal constitutional challenges to state taxes, predatory behavior in the antitrust context, and state regulation of federally chartered banks.

Beth is a former co-chair of the Appellate Practice Committee of the American Bar Association Litigation Section and former co-chair of the Litigation Section's Pro Bono Committee. She is coauthor of "The Supreme Court and State Taxation: 1996-97, and a Glimpse of the Future to Come," published in The State and Local Tax Lawyer.

Beth oversees judicial clerk recruiting at Jones Day and is active in mentoring programs.

## Areas of Focus
Issues & Appeals

Government Regulation

Appellate Advocacy in the U.S. Supreme Court

Appellate Litigation in Other Federal & State Courts

Trial Litigation in Federal & State Courts

## Education
New York University (J.D. cum laude 1983; Order of the Coif; Pomeroy Prize for academic excellence; Note and Comment Editor, Law Review); University of Wisconsin (B.A. 1978; Mortar Board Honor Society, 1976; Sigma Alpha Epsilon, 1975)

## Bar Admissions
District of Columbia

## Clerkships
Law Clerk to Justice Harry A. Blackmun, United States Supreme Court (1985 Term) and Law Clerk to Judge Abner Mikva, U.S. Court of Appeals, District of Columbia Circuit (1984 term)



## EXPERIENCE

### American and Georgia Hospital Associations file U.S. Supreme Court *amicus* brief in important antitrust case addressing hospital mergers

On behalf of the American Hospital Association and the Georgia Hospital Association, Jones Day filed an *amicus* brief in the Supreme Court of the United States asking the Court to affirm an Eleventh Circuit decision that found a hospital merger involving a local hospital authority was not subject to the federal antitrust laws under the "state-action doctrine."

### Lee Memorial Health System files *amicus* brief in U.S. Supreme Court addressing local hospital merger being subject to federal antitrust laws

On behalf of the Lee Memorial Health System, Jones Day filed an *amicus* brief in the Supreme Court of the United States asking the Court to affirm an Eleventh Circuit decision that found a hospital merger involving a local hospital authority was not subject to the federal antitrust laws under the "state-action doctrine."

### American Hospital Association files brief *amicus curiae* urging Sixth Circuit to consider the changing landscape of health care when evaluating the competitive effects of hospital mergers

Jones Day filed a brief *amicus curiae* for the American Hospital Association arguing that hospital mergers often foster, rather than diminish, competition, and in many cases are necessary for hospitals to deliver care effectively in a rapidly changing market.

### Text and Academic Authors Association files U.S. Supreme Court *amicus* brief in case concerning gray-market sales of copyrighted works

Jones Day prepared an *amicus* brief on behalf of the Text and Academic Authors Association, urging the Supreme Court to hold that the Copyright Act prohibits copyrighted works from being purchased abroad and then imported into the United States and resold without the copyright owner's consent.

### Old Carco LLC (formerly, Chrysler LLC) prevails in Second Circuit appeal by former dealers that attempted to deploy franchise laws to undo bankruptcy judge's orders

Jones Day represented Old Carco (formerly, Chrysler LLC) in an historic bankruptcy proceeding that, through asset sale to Chrysler Group LLC, aimed to prevent the destruction of one of the "Big Three" U.S. automakers and an iconic American brand.

### POMA filed brief *amici curiae* arguing federal statute involving depiction of animal cruelty was overbroad and unconstitutional under First Amendment

Jones Day filed a brief *amici curiae* for Professional Outdoor Media Association (POMA), American Society of Media Photographers, North American Nature Photography Association, Pennsylvania Outdoor Writers Association, Southeastern Outdoor Press Association, and Texas Outdoor Writers Association advocating that 18 U.S.C. § 48 was overbroad and thus unconstitutional.

### AHERF Creditors' Committee successfully appeals award of summary judgment in favor of auditor and limits availability of in pari delicto defense in audit-failure cases

Jones Day represents the Official Committee of Unsecured Creditors of Allegheny Health, Education and Research Foundation ("AHERF"), formerly the largest integrated healthcare delivery system in Pennsylvania, in a suit against AHERF's auditor.

### Council on State Taxation files brief *amicus curiae* challenging whether the doctrine of comity precludes certain state tax disputes from proceeding in federal court

Jones Day filed a brief *amicus curiae* for the Council on State Taxation in a challenge to the decision of whether the doctrine of comity precludes certain state tax disputes from proceeding in federal court.

### Experian wins appeal of California antitrust action filed by consumer credit report resellers

Jones Day led the defense of Experian Information Solutions, Inc. against antitrust cases filed in March 2004 in



federal court and state court in California by resellers of consumer credit reports on behalf of a class of resellers (the federal case) and by a trade association of resellers (the state case).

### Economists file brief *amici curiae* arguing proper standard for determining when price increases for supplies constitutes predatory buying

Jones Day filed a brief *amici curiae* on behalf of economists who teach at leading American universities in a case that decided the proper standard for determining when an increase in the price paid for supplies or an increase in the amount of supplies purchased by a single firm, acting independently, constitutes predatory buying in violation of antitrust laws.

### Onyx prevails in ICC arbitrations claiming breach of representations and warranties for waste facility purchased in Mexico

Jones Day represented Onyx S.A., a French subsidiary of Veolia Environnement involved in international waste management, with regard to a dispute that arose after it acquired a hazardous waste landfill in Mexico in 2000.

### National City filed brief *amicus curiae* on exclusive permission to regulate certain federally-chartered mortgage companies

Jones Day filed a brief *amicus curiae* on behalf of National City Bank in a case that held that the Office of the Comptroller of the Currency is permitted exclusively to regulate mortgage companies that operate as subsidiaries of federally-chartered banks.

### Albertson's wins dismissal of malicious prosecution action filed by the UFCW International

Jones Day represented Albertson's, Inc. and successfully moved to dismiss a malicious prosecution action filed by the UFCW International against Albertson's pursuant to Section 301 of the Labor Management Relations Act.

### Prisoner successfully appeals to reinstate Section 1983 retaliation claim

Jones Day obtained reinstatement of a *pro se* prisoner's Section 1983 retaliation claim in an appeal before the Third Circuit.

### Class of out-of-state fishermen mount constitutional challenge to Alaska's discriminatory fee structure for fishing licenses

Jones Day represented, as appellate counsel, a class of out-of-state fishermen who successfully challenged Alaska's fishing license pricing scheme, which charges out-of-state fishermen many times more for the privilege of pursuing their trade in Alaska's waters, as a violation of the Privileges and Immunities Clause of the U.S.

### Westinghouse Savannah River successfully defends 4th Circuit ruling of disparate-impact and disparate-treatment on appeal

Westinghouse Savannah River Company, which managed the U.S. Department of Energy's Savannah River storage and hazardous waste processing site, was represented by Jones Day when African-American employees sought to represent a class consisting of all African-American employees at the site in an action alleging disparate treatment and disparate impact in employment practices.

### Simon Property Group prevails in appeal from award for alleged breach of an employment agreement

After a federal judge in Illinois ruled that Simon Property Group had breached its employment contract with a former employee, and awarded the plaintiff $537,634.41 in damages, representing the judge's estimated value of a promised "equity interest" in an ultimately failed corporate spin-off, Jones Day represented Simon Property Group in an appeal to the U.S. Court of Appeals for the Seventh Circuit.

### Washington Group International individual officers and directors prevail in district court and on appeal in securities fraud case

On behalf of international construction company Washington Group International, Inc. (previously known as Morrison Knudsen Corporation), Jones Day obtained dismissal of a $50 million suit alleging federal and state securities law violations, common law fraud, and negligence against company officers and directors arising out of notes issued in conjunction with the acquisition of another company.



Disabled student prevails in suit against state university for disability discrimination
On August 20, 2003, the United States Court of Appeals for the Fourth Circuit issued its decision in *Shepard v. Irving*, No. 02-1712.

Tenet Healthcare Corporation prevails in FTC and Missouri challenge of hospital merger
Jones Day represented Tenet Healthcare Corporation in connection with the proposed merger of Lucy Lee Hospital, owned by Tenet, and Doctors Regional Medical Center, in Poplar Bluff, Missouri.

## PUBLICATIONS

Antitrust Alert: U.S. Supreme Court Reverses State Action Decision, Confirming Narrow Scope of Immunity
February 2013

The Benefits of Mergers: Hospital Mergers Can Increase Competition Through Access to Capital and Economies of Scale, *Trustee Magazine*
November/December 2012

Sidebar Brief: Copyrighted Goods Need a Middle Ground for Enforcement, *Jurist*
October 29, 2012

The Pro-Competitive Benefits of Hospital Mergers, *H&HN Daily*
September 25, 2012

*RadLAX*: Credit Bidding Is Cleared for Takeoff by U.S. Supreme Court
June 2012

Credit Bidding and the Supreme Court: What Happens Next?
March 2012

The Supreme Court and State Taxation: 1996-97, and a Glimpse of the Future to Come, 3 *State & Local Tax Lawyer* 119 (1998)
1998

## SPEAKING ENGAGEMENTS

Issues & Appeals — Supreme Court Review
October 24, 2012
Chicago, Illinois

Panel on In Pari Delicto, ABA Business Bankruptcy Fall Meeting
October 2010
New Orleans, Louisiana

COST, BNA and Jones Day Host Commerce Energy Post-Oral Argument Roundtable Discussion
March 22, 2010
Washington, D.C.





# Wesley R. Johnson Jr.
Partner

wrjohnsonjr@jonesday.com

| **New York** | **Paris** |
|---|---|
| 1.212.326.3907 | 33.1.56.59.39.42 |
| 1.212.755.7306 (F) | 33.1.56.59.39.38 (F) |

Wesley Johnson's practice focuses primarily on European cross-border mergers and acquisitions, in a wide variety of business sectors.

Major client representations have included chemical group Rhodia in dispositions and restructurings involving French and overseas assets; La Poste Française, including acquisition of the DPD parcel network in Germany; Rossi family interests in connection with the sale of Martini & Rossi to Bacardi; France Telecom/Orange with its acquisitions of Spanish mobile operator Amena and network services provider Equant; Thales in dispositions of the Magellan GPS business and of its stake in Embraer; Canadian paper group Cascades in a business combination with Reno de Medici; and OM Group in connection with the "revisitation" of mining concessions initiated by the Democratic Republic of Congo. Other clients include China Guangdong Nuclear Power Corporation, Compass Group, Crown Packaging, Eutelsat, Parker Hannifin, Scotts Miracle-Gro, Sinochem, Total, and WL Ross.

Wesley is cited yearly as among the best corporate/M&A lawyers in France in the guides *Chambers Global*, *Chambers Europe*, *PLC Which lawyer?*, and *The Legal 500 EMEA*. He is a co-founding member of "Continuing Legal Education Europe," a London-based nonprofit CLE organization. He has lectured extensively on M&A and corporate governance topics, including for the Conference Board Directors' Institute. He is president of the Société Sportive du Jeu de Paume et de Racquets, the Paris real tennis club.

Wesley is Partner-in-Charge of the New York Office.

## Areas of Focus
Mergers & Acquisitions

Energy

Joint Ventures & Strategic Alliances

Energy Transactions

Korea Practice

## Honors & Distinctions
*Chambers Global*

*Chambers Europe*

*The Legal 500 EMEA*

*PLC Which lawyer?*

## Languages
English, French



## Wesley R. Johnson Jr.

**Education**

Harvard University (J.D. cum laude 1982; M.A. 1978); Cambridge University (M.A. 1982; B.A. with first class honours 1977); University of Michigan (B.A. magna cum laude 1975)

**Bar Admissions**

California and Paris Bars



**Wesley R. Johnson Jr.**

## EXPERIENCE

### Alcatel-Lucent sells Genesys business to Permira for US$1.5 billion
Jones Day advised Alcatel-Lucent in its sale of its Genesys business to Permira for US$1.5 billion.

### Cascades merges with Reno De Medici
Jones Day advised Cascades Inc., in its $101 million stock merger transaction whereby after reorganizing its European recycled cartonboard operations by contributing them to its indirect Italian subsidiary Cascades Italia S.r.l., merged Cascades Italia S.r.l. with Italian listed company Reno De Medici S.p.A., becoming the single largest stockholder in Reno De Medici S.p.A.

### Rhodia sells worldwide silicones business to China National Bluestar
Jones Day advised Rhodia SA in the sale of its worldwide silicones business to China National Bluestar Corporation, a large-scale state-owned enterprise and a specialized subsidiary of ChemChina Group Corporation.

### Thales sells consumer navigation business to Shah Capital-led investor group
Jones Day advised Thales S.A., a major electronic systems company acting in areas such as defense, aerospace, airlines security and safety, information technology, and transportation, in the €134 million (US$170 million) sale of its consumer navigation business to an investor group led by Shah Capital Partners, LP.

### The Deutsch Group completes sale to WENDEL Investissement
Jones Day advised The Deutsch Group in its $1.04 billion acquisition by WENDEL Investissement ("Wendel").

### France Télécom acquires Amena for $7.7 billion
Jones Day advised France Télécom S.A. (FT) in its $7.7 billion acquisition, via subsidiary Orange S.A., of 80% of the shares of Auna Operadores de Telecomunicaciones S.A. (Auna).

### France Télécom S.A. acquires Equant for $715 million
Jones Day advised France Télécom (FT) in its €564 million ($738 million) acquisition of the 45.8% equity interest in Equant N.V. it did not already own.

### Aventis S.A. creates spin-off of Aventis' bone disease unit
Jones Day advised Aventis S.A. in the spin-off of bone disease unit into ProSkelia SAS, a Warburg Pincus funded joint venture company, followed by the merger of ProSkelia with Strakan Group.

### Parker Hannifin sells Wynn's Industrie
Jones Day advised Parker Hannifin Corporation in its sale of Wynn's Industrie, an industrial lubricants unit of the Wynn's Specialty Chemicals business, to Fuchs W. Industrie SAS, a subsidiary of Fuchs Petrolub AG.

### WL Ross forms joint venture with Philippe Nguyen
Jones Day advised WL Ross & Co. LLC on its formation of IPE Ross, a joint venture with Philippe Nguyen, to sponsor IPE Expansion Fund, a French private equity fund investing in leveraged equity buyouts and buildups in both the private and public sectors.

### France Télécom restructures interest in MobilCom
Jones Day advised France Télécom S.A. (FT) in the restructuring of its interest in MobilCom AG, the distressed German wireless telecom provider.

### La Poste Française develops strategic alliance with Sweden's Posten AB
Jones Day advised La Poste Française in the strategic alliance developed with Sweden's Posten AB for the joint development of parcel operations in the Nordic, East European, and Baltic markets, including the acquisition of a 50% interest in Posten's Polish subsidiary, Masterlink Sp. z. o. o., by La Poste's German subsidiary, GeoPost GmbH.



## France Télécom S.A. acquires Equant for $6.4 billion

Jones Day advised France Télécom S.A. (FT) in its $6.4 billion acquisition of a majority stake in Amsterdam-based Equant NV, operator of the world's biggest data communications network, from the SITA Foundation and the merger of Equant with the corporate data services business of Global One, FT's Brussels-based subsidiary.

## Aventis S.A. sells household insecticides business to Sumitomo Chemical

Jones Day advised Aventis S.A. in the sale of household insecticides business of Aventis CropScience to Sumitomo Chemical Company Ltd.

## Rhodia sells Albright & Wilson to Hunstman Corp.

Jones Day advised Rhodia SA, the French-listed chemicals company, in the approximately $200 million sale of its European surfactants business to U.S. acquirer, Huntsman Corporation.

## La Poste Française acquires Frankfurter Kreis' stake in Deutscher Paket Dienst

Jones Day advised La Poste Francaise, the state-owned postal service of France, in its acquisition of Frankfurter Kreis' 35% stake in Deutsche Paket Dienst.

## La Poste Française acquires Parceline and Interlink Express

Jones Day advised La Poste Française in its $279 million acquisition of Parceline and Interlink Express, the U.K. and Irish parcel services businesses of Australia's Mayne Nickless Limited.

## La Poste Française develops strategic alliance with Federal Express

Jones Day advised La Poste Française in its development of a strategic alliance with Federal Express to cooperate on international express document and parcel delivery.

## Rhodia forms joint venture, Latexia, with Raisio Chemicals

Jones Day advised Rhodia SA in the formation of Latexia S.A., a worldwide joint venture with Finland's Raisio Chemicals, for the production and marketing of latex for use in the paper industry.

## PUBLICATIONS

资讯速递－非洲资源
2012年7月

Africa Resources Update
July 2012

Comment la crise financière affecte-t-elle les contrats de fusions-acquisitions ?, *Capital Finance*
14 avril 2009

## SPEAKING ENGAGEMENTS

Jones Day: Global Viewpoints
July 25, 2012
Boston, Massachusetts

Jones Day partenaire de la 1ère édition du Championnat de France de Squash des Avocats - 24/25 et 26 juin 2011 à Paris
24/25 et 26 juin 2011
Paris, France



Cross-Border Business Briefing (Dallas)
May 6, 2011
Dallas, Texas

International Business Roundtable: Pittsburgh in the Global Economy - Doing Business in Europe, Asia, Mexico, and the Middle East
July 23, 2009
Pittsburgh, Pennsylvania

Comment se protéger contractuellement face aux nouveaux risques juridiques ?, *Commission M&A de l'AFJE "Comment sécuriser vos transactions en temps de crise ?"*
29 avril 2009
Paris, France

Impacts juridiques de la crise financière sur les opérations de fusions-acquisitions, *Atelier AFJE*
February 5, 2009
Paris, France

Legal aspects of sovereign wealth fund investment, *Séminaire "European Council on Corporate Governance" co-organisé par The Conference Board et Axa Investment Managers*
14-15 mai 2008
Paris, France

Legal aspects of sovereign wealth fund investment, *"European Council on Corporate Governance" Seminar, co-sponsored by The Conference Board and Axa Investment Managers*
May 14-15, 2008
Paris, France

Comment se protéger contractuellement face aux nouveaux risques juridiques ?, *Commission M&A de l'AFJE "Comment sécuriser vos transactions en temps de crise ?"*
29 avril 2009
Paris, France

M&A: The new environment trends and perspectives in 2008, *Thalès M&A Seminar 2008*
March 20, 2008
Paris, France

M&A: The new environment trends and perspectives in 2008, *Séminaire Thalès M&A 2008*
20 mars 2008
Paris, France

What do directors need to know about the structure of their JV?, *Séminaire "The Joint Venture Directors' Institute" organisé par The Conference Board en partenariat avec Saudi Aramco*
12-16 novembre 2007
Londres, UK

What do directors need to know about the structure of their JV?, *"The Joint Venture Directors' Institute" Seminar, sponsored by The Conference Board in cooperation with Saudi Aramco*
November 12-16, 2007
London, UK





# David J. Kates
## Partner

djkates@jonesday.com

**Chicago**
1.312.269.1589
1.312.782.8585 (F)

David Kates practices primarily in the area of public finance, with a particular emphasis on tax-exempt and taxable financings for nonprofit health care entities. He has worked as bond counsel, underwriter's counsel, issuer's counsel, borrower's counsel, restructuring counsel, and purchaser's counsel in both tax-exempt and taxable health care transactions. These transactions have entailed a wide variety of document structures, including multimodal transactions, imbedded derivatives, forward commitments, and swaps. David also has represented providers of derivative products, including guaranteed investment contracts, interest rate swaps, repurchase agreements, and forward delivery agreements.

Representative transactions include: $88,460,000 Economic Development Authority of the City of Roanoke, Virginia Hospital Revenue Bonds (Carilion Clinic Obligated Group) Series 2012; $127,150,000 Illinois Finance Authority Variable Rate Demand Revenue Bonds, Series 2011A and Series 2011B (CDH-Delnor Health System); $58,415,000 Illinois Finance Authority Variable Rate Demand Revenue Bonds, Series 2011C (CDH-Delnor Health System); $60,000,000 Louisiana Public Facilities Authority Hospital Revenue Bonds (Lafayette General Medical Center Project) Series 2012A and Series 2012B; and $94,695,000 South Carolina Jobs-Economic Development Authority Hospital Refunding Revenue Bonds (Palmetto Health), Series 2011A.

David is a frequent lecturer at national conferences on issues related to tax-exempt bond financings and bond compliance. He is a member of the National Association of Bond Lawyers.

**Areas of Focus**
Health Care

Health Care Finance & Financial Products

Banking & Finance

Structured & Derivative Products

**Education**
Washington University (J.D. with honors 1995; Order of the Coif; Notes and Developments Editor, Law Review); Brandeis University (B.A. cum laude with high honors 1992)

**Bar Admissions**
Illinois



13-53846-tjt    Doc 2298    Filed 12/23/13    Entered 12/23/13 19:15:41    Page 180 of 235

## EXPERIENCE

### Lehman Brothers bankruptcy estate obtains advice in connection with potential litigation concerning derivative transactions

Jones Day represents Lehman Brothers Holdings Inc. and its affiliated debtors and debtors-in-possession in the chapter 11 bankruptcy proceedings before the United States Bankruptcy Court.

### Jefferson County, Alabama files largest municipal bankruptcy

Jones Day represents National Public Finance Guarantee Corporation ("National") with respect to the enforcement and protection of National's rights and remedies in connection with the November 2011 chapter 9 municipal bankruptcy filing by Jefferson County, Alabama.

### MBIA Insurance negotiates global settlement with Asian Art Museum

Jones Day represented MBIA Insurance Corporation, National Public Finance Guarantee Corporation and Optinuity Alliance Resources Corporation (together, "MBIA") in the out-of-court restructuring of the Variable Rate Revenue Bonds, Series 2005 of the Asian Art Museum Foundation of San Francisco (the "AAMF").

### Goldman, Barclays, and Citigroup underwrite $95,740,000 refunding bonds for Carilion Clinic

Jones Day served as underwriters' counsel to Goldman Sachs, Barclays Capital, and Citigroup Global Markets in connection with the issuance of $95,740,000 Economic Development Authority of the City of Roanoke, Virginia Hospital Revenue Refunding Bonds (Carilion Clinic Obligated Group) Series 2010.

### Provena Health issues revenue bonds, Series 2009A-D and Series 2010A-B

Jones Day acted as bond counsel to Provena Health, Series 2009A-D and Series 2010A-B in connection with the Illinois Finance Authority variable rate demand revenue bonds.

### Palmetto Health issues $126,895,000 Refunding and Improvement Revenue Bonds, Series 2009

Jones Day acted as bond counsel to Palmetto Health in connection with the issuance of $126,895,000 South Carolina Jobs-Economic Development Authority Hospital Refunding and Improvement Revenue Bonds, Series 2009.

### MBIA Insurance is secured creditor in Forum Health chapter 11 case

Jones Day represented MBIA Insurance Corporation ("MBIA") as a secured creditor in the chapter 11 cases of Forum Health and its affiliated debtors (together, "Forum" or the "Debtors").

### Baptist Health South Florida receives variable and fixed rate bonds

Jones Day acted as bond counsel to Baptist Health South Florida in connection with the issuance by the City of Coral Gables, Florida Health Facilities Authority of $149,920,000 City of Coral Gables Health Facilities Authority Hospital Revenue Bonds, Series 2004 (Baptist Health South Florida Obligated Group).

### Merrill Lynch underwrites bonds for Yuma Regional Medical Center

Jones Day acted as underwriter's counsel to Merrill Lynch & Co. in connection with the offering of $111,205,000 Hospital Revenue Bonds, Series 2004A (Yuma Regional Medical Center) (Auction Rate Securities).

### Methodist Healthcare and Methodist Healthcare-Memphis Hospitals issues $250,400,000 Revenue Bonds, Series 2004

Jones Day acted as bond counsel to Methodist Healthcare and Methodist Healthcare - Memphis Hospitals in connection with the issuance of $250,400,000 The Health, Educational, and Housing Facility Board of the County of Shelby, Tennessee Variable Rate Revenue Bonds, Series 2004 (Methodist Healthcare) Auction Rate Securities.

### RBC Dain Rauscher and J.P. Morgan Securities underwrite tax-exempt bonds for University of Maryland Medical System

Jones Day acted as underwriter's counsel to RBC Dain Rauscher and J.P. Morgan Securities, Inc. in connection with



the offering of $253.86 million Revenue Bonds, University of Maryland Medical System Issue, Series 2004A, 2004B, 2004C and 2004D.

### Baptist Health Systems of South Florida receives $150,000,000 bond offering in connection with the construction of new hospital and renovations of an existing hospital

Jones Day acted as bond counsel in connection with the offering of the $150,000,000 City of South Miami Health Facilities Authority Hospital Revenue Bonds, Series 2003 (Baptist Health South Florida Obligated Group).

### Merrill Lynch underwrites $450,000,000 hospital revenue bonds

Jones Day acted as underwriter's counsel to Merrill Lynch & Co. in connection with the offering of $450,000,000 South Carolina Jobs-Economic Development Authority Hospital Revenue Bonds, Series 2003 (Palmetto Health Alliance).

### Merrill Lynch underwrites $90,000,000 for Asante Health System

Jones Day acted as underwriter's counsel to Merrill Lynch in connection with the issuance of $90,000,000 of The Hospital Facilities Authority of the City of New Medford, Oregon Hospital Revenue Bonds, Series 2002A and Series 2002B (Asante Health System).

### Merrill Lynch underwrites bonds for Charleston Area Medical Center

Jones Day acted as underwriter's counsel to Merrill Lynch & Co. in connection with the offering of $167,550,000 West Virginia Public Finance Authority Variable Rate Revenue Bonds (Charleston Area Medical Center, Inc.) Series 2002A and B.

### Providence Services receives tax-exempt bonds

The Health Care Finance and Tax Practice of Jones Day acted as borrower's counsel to Providence Services, a nonprofit health care system headquartered in Spokane, Washington, in connection with the issuance of $136,000,000 Washington Health Care Facilities Authority Variable Rate Revenue Bonds, Series 2002A and Series 2002B and $75,380,000 Montana Facility Finance Authority Revenue Bonds, Series 2002.


## **PUBLICATIONS**

IRS Provides Guidance Regarding Written Post-Issuance Compliance Procedures for Tax-Exempt Bonds
August 2011

IRS TEB Publishes Final Report on Post-Issuance Compliance Survey
August 2011

Tax-Exempt Bond Compliance: What You Should be Doing
March 2010

Proposed Regulations Modify Arbitrage Regulations
November 2007

New Tax-Exempt Bond Refunding Regulations Require Substantially Modified Recordkeeping
June 2006





# Heather Lennox
## Partner

hlennox@jonesday.com

**New York**          **Cleveland**
1.212.326.3837        1.216.586.7111
1.212.755.7306 (F)    1.216.579.0212 (F)

Heather Lennox has played a leading role in Jones Day's representations of debtors and potential debtors, creditors' committees, prepetition secured lenders, bank groups, DIP lenders, credit card processors, and other significant creditors in many of the nation's largest in-court and out-of-court corporate restructurings. She has substantial experience counseling clients in fraudulent conveyance, illegal dividend, fiduciary duty, piercing the corporate veil, and mass tort issues in bankruptcy. She has represented a number of entities in the structuring and consummation of spin-offs, secured financings, distressed sales and acquisitions, ring-fencing transactions, and other out-of-court restructuring transactions.

Heather has represented, among others: Copperweld Corporation, CSC Industries, Dana Corporation, Fruehauf Trailer Corporation, Great American Communications Company (a prepackaged case), Hostess Brands, Inc., LTV Steel Company, Metaldyne Corporation, and Oglebay Norton Company as debtors' counsel and significant creditors in the Delta Airlines, Forum Health, HomePlace Stores, Northwest Airlines, Pittsburgh Penguins, R.H. Macy, Southern Air Transport, United Airlines, US Airways, and Wornick Company bankruptcies.

Heather has coauthored bankruptcy-related articles published in *The Business Lawyer* and the *Journal of Bankruptcy Law and Practice*. She is listed in the *Guide to the World's Leading Insolvency and Restructuring Lawyers*, is a conferee of the National Bankruptcy Conference (2012) and a Fellow in the American College of Bankruptcy, and a member of the American Bankruptcy Institute and the Cleveland Metropolitan Bar Association and serves on the Bankruptcy Committee of the New York City Bar Association. *Super Lawyers* 2010-2012 lists her among the "Top 50 Women Ohio Super Lawyers" in bankruptcy & creditor/debtor rights.

## Areas of Focus
Business Restructuring & Reorganization

Borrower / Workouts / Chapter 11 Debtor Representations

Metals & Mining

## Honors & Distinctions
*The Legal 500 US* (corporate restructuring) (2011)

*IFLR 1000* (2006-2008)

*Chambers USA: America's Leading Lawyers for Business* (2005-2011)

*Chambers Global: World's Leading Lawyers for Business* "leader in their field" (2012)

Member, American College of Bankruptcy (2009-)

*The Best Lawyers in America* (2006-2013)



*Ohio Super Lawyers* (2005-2012)

Named one of 14 "Outstanding Young Turnaround Lawyers" by the Turnaround Management Association (2006)

## Education
Georgetown University (J.D. cum laude 1992; Law Journal); John Carroll University (B.A. summa cum laude 1989)

## Bar Admissions
New York, Ohio, U.S. District Courts for the Northern and Southern Districts of Ohio, U.S. Court of Appeals for the Sixth Circuit, and pro hac vice in several other venues



## EXPERIENCE

### Hostess to sell Hostess and Dolly Madison snack cake business to Apollo Global Management and Metropoulos & Co. for $410 million

Jones Day is advising Hostess Brands, Inc. regarding the stalking horse bid by affiliates of Apollo Global Management, LLC and Metropoulos & Co. to purchase the majority of the assets of the snack cake business, including both Hostess® and Dolly Madison® branded products, including the iconic Twinkies® brand for $410 million.

### Certain Hostess bread brands and bakeries to be acquired by Flowers Foods for $360 million

Jones Day is advising Hostess Brands, Inc. regarding the sale of its Wonder, Merita, Nature's Pride, Home Pride, and Butternut bread brands and associated bakeries to Flowers Foods, Inc. for $360 million.

### Hostess Brands commences bankruptcy proceedings

Jones Day represents client Hostess Brands, Inc. and its direct and indirect subsidiaries (collectively, "Hostess") as lead restructuring counsel, in Hostess' January 11, 2012 (the "Petition Date") filing under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") with more than $800 million in secured debt and a $75 million debtor-in-possession financing facility with Silver Point.

### General Motors allowed exclusive jurisdiction to resolve dispute

Jones Day represents General Motors LLC ("New GM") in connection with a lawsuit filed by the UAW in Michigan federal district court.

### Yale-New Haven Hospital obtains antitrust approval for proposed Saint Raphael's acquisition

Jones Day represented Yale-New Haven Hospital ("YNHH") in connection with all antitrust matters related to its acquisition of a competing hospital, the Hospital of Saint Raphael's in New Haven, Connecticut.

### St. Mary of the Woods files for chapter 11

Jones Day represents Franciscan Communities St. Mary of the Woods in its chapter 11 case and related debtor-in-possession financing.

### ZAIS Investment goes into involuntary bankruptcy

Jones Day served as prepetition counsel and postpetition special counsel to ZAIS Investment Grade Limited VII, a Cayman Islands special purpose vehicle in a first of its kind involuntary prepackaged bankruptcy filed in the District of New Jersey.

### Wireless communications provider restructures bond debt

Jones Day represented a $200 million local wireless communications provider in an out-of-court workout of $150 million in bond debt.

### Metaldyne sells powertrain, balance shaft module, tubular products, and chassis assets to affiliate of The Carlyle Group and Solus Alternative Asset Management

Jones Day advised Metaldyne Corporation, a leading designer and producer of engine, driveline, and chassis products, in the $400 million sale of its powertrain, balance shaft module, tubular products, and chassis assets to an affiliate of The Carlyle Group and Solus Alternative Asset Management LP via a sale under section 363 of the Bankruptcy Code.

### Metaldyne files for bankruptcy protection

Jones Day represented Metaldyne Corporation -- one of the top 50 North American auto parts suppliers with over $1 billion in sales -- and its subsidiaries in an out-of-court tender offer transaction pursuant to which over $350 million in long term debt was extinguished.



## Axcelis Technologies sells interest in joint venture SEN Corporation to Sumitomo Heavy Industries

Jones Day advised Axcelis Technologies, Inc. in the $133 million sale of its 50% interest in SEN Corporation to joint venture partner Sumitomo Heavy Industries, Ltd.

## MBIA Insurance is secured creditor in Forum Health chapter 11 case

Jones Day represented MBIA Insurance Corporation ("MBIA") as a secured creditor in the chapter 11 cases of Forum Health and its affiliated debtors (together, "Forum" or the "Debtors").

## Metaldyne completes $65 million tender offer to purchase outstanding 10% Senior Notes and 11% Senior Subordinated Notes

Jones Day advised Metaldyne Corporation, a leading designer and producer of engine, driveline, and chassis products, in connection with its $65 million offer to purchase for cash any and all outstanding 10% Senior Notes due 2013 and 11% Senior Subordinated Notes due 2012.

## Dana Corporation obtains Global Settlement and creates VEBA trusts for retiree health care benefits

Jones Day successfully represented Dana Corporation in obtaining a series of settlements to eliminate an enormous accumulated liability for health and life insurance benefits for retirees from its unionized and nonunion workforces, and to modify its collective bargaining agreements with active employees, allowing Dana to compete in the troubled auto industry upon emergence from bankruptcy.

## Dana Corporation successfully reorganizes in U.S. and U.K. in "Deal of the Year"

Jones Day advised Dana Corporation and 40 of its U.S. subsidiaries in their reorganization under chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York.

## Dana Corporation favorably resolves dispute with major supplier

Jones Day represented Dana Corporation and certain of its subsidiaries in their chapter 11 cases.

## Dana Corporation reaches groundbreaking labor settlement

Jones Day represented Dana Corporation in litigation and arbitrations related to various supply contracts as part of its Chapter 11 reorganization.

## National City Bank holds leases in Northwest Airlines chapter 11 case

Jones Day represented National City Bank in the chapter 11 cases of Northwest Airlines Corporation involving three leveraged lease transactions.

## National City Bank in lease transaction with Comair

Jones Day assisted National City Bank as the owner/participant in three leveraged lease transactions and also in cash management services involving the Comair chapter 11 cases.

## Timken Company holds claim in Jernberg bankruptcy

Jones Day represented the Timken Company as a creditor with a $13 million claim in the chapter 11 cases of Jernberg Industries.

## PUBLICATIONS

KERP or KEIP: Fireworks Continue on Keeping Key Employees at the Helm in Chapter 11
September/October 2012

American College of Bankruptcy Best Practices Report, Formation, Function & Obligations of Equity Committees in Chapter 11
2011

Practice Spotlight: Heather Lennox, *Business Law Currents*
June 14, 2011



An Overview of Chapter 9 of the Bankruptcy Code and Municipal Debt Adjustments, *Westlaw*
February 2011

An Overview of Chapter 9 of the Bankruptcy Code: Municipal Debt Adjustments
August 2010

A Tectonic Shift For Administrative Rent Claims? Bankruptcy Court Rejects Actual Use Limitation On Debtor-Lessee's Obligation To Pay Postpetition Rent Under Commercial Equipment Lease, *Journal of Bankruptcy Law and Practice,* Vol. 19, No. 3
June 2010

2009: A Changing Bankruptcy Landscape And How It Affected Labor and Benefit Issues, 2010 *Annual Survey of Bankruptcy Law*
2010

Reinstatement v. Cramdown: Do Secured Creditors Win or Lose? *Journal of Bankruptcy Law and Practice*, Vol. 16, No. 4
August 2007

Reinstatement v. Cramdown: Do Secured Creditors Win or Lose? coauthor, *Westlaw*
June 2007

Breaking Up Is Hard to Do: Avoiding the Solvency-Related Pitfalls in Spinoff Transactions, *The Business Lawyer*
1999

'Safe Harbor in Uncharted Waters' — Securities Law Exemptions Under Section 1125(e) of the Bankruptcy Code, *The Business Lawyer*
1996

The Fiduciary Duties of Directors of Financially Troubled Companies, *Journal of Bankruptcy Law and Practice*
1994

Applying an Ax When a Scalpel Will Do: The Role of Exclusivity in Chapter 11 Reform, *Journal of Bankruptcy Law and Practice*
1993


## SPEAKING ENGAGEMENTS

2013 TMA Distressed Investing Conference
February 7, 2013
Las Vegas, Nevada

Shareholders Count Too: The Role of the Equity Committee in a Volatile Economy, Business Bankruptcy Fall Meeting CLE Program
October 14, 2011
Tampa, Florida

Credit Bidding, panelist, American Bankruptcy Institute's 12th Annual New York City Bankruptcy Conference
May 24, 2010
New York, New York

Pressure on the Supply Chain – Beginning of the End or End of the Beginning, TMA 2009 Webinar Series
October 29, 2009
Webinar



Labor & Employment Law Changes: What the New Administration Has Brought and What the Future Holds
September 30, 2009
Pittsburgh, Pennsylvania

Creating a Restructuring Process that Ensures a Successful Turnaround, panelist, ACI Distressed Debt Investing Summit
March 31, 2009
New York, New York

Protecting Your Human Capital: Indemnities and D&O Insurance in Troubled Times, Jones Day CLE Academy
December 11, 2008
Cleveland, Ohio

The Tenth Annual Conference on Corporate Reorganizations: Update on Autos and Auto Suppliers
June 22, 2007
Chicago, Illinois

The Administratively Insolvent Debtor, panelist, William J. O'Neill Bankruptcy Seminar
April 27, 2007
Cleveland, Ohio

The Automotive Industry - Where It Was, Where It Is and Where It's Going, panelist, Fall 2006 Conference, International Women's Insolvency & Restructuring Confederation
November 1, 2006
San Francisco, California

Developing Opportunities for a Multicultural Workplace - How to Create Opportunities for All Women, panelist, Capgemini "Reach for the Stars"
October 6, 2006
Cleveland, Ohio

The Significant Business Provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005
September 20, 2005
Cleveland, Ohio

What Labor and Employment Lawyers Should Know About the Federal Bankruptcy Process for Corporate Debtors
May 13, 2005
Cleveland, Ohio

Issues in Debtor in Possession Financing, Jones Day CLE Program
October 5, 1999
Cleveland, Ohio

The Section 2-207 Battle of the Forms: Disclaimer of Damages and Other Issues
November 30, 1995
Cleveland, New York

Issues of Successor Liability in Section 363 Sales
September 28, 1994
Cincinnati, Ohio





# Catherine E. Livingston
## Partner

clivingston@jonesday.com
**Washington**
1.202.879.3756
1.202.626.1700 (F)

Cathy Livingston is a leading authority on the Affordable Care Act. She has in-depth knowledge of the multitude of tax provisions contained in the act, including the employer coverage requirement, the individual coverage requirement, the premium tax credit, insurance reforms, insurer fees, the medical device excise tax, and new requirements for tax-exempt hospitals.

Prior to joining Jones Day in 2013, Cathy was Health Care Counsel in the IRS Office of Chief Counsel where she served as principal legal advisor to IRS senior leadership on all aspects of the Affordable Care Act and its implementation. She was instrumental in advising the IRS team building the systems and operational protocols needed to integrate tax subsidies and tax information with the new system of health insurance exchanges and to incorporate the individual coverage requirement in the tax filing system. She worked closely with the White House and the Department of Health and Human Services in all aspects of Affordable Care Act implementation. She also worked closely with the Department of Justice on the cases challenging the constitutionality of the Affordable Care Act from the district courts through the Supreme Court. Prior to working on the Affordable Care Act, Cathy supervised all IRS legal work with respect to tax-exempt organizations, employment taxes, and government entities.

Cathy also served at the Office of Tax Policy at the Treasury Department where she handled matters affecting tax-exempt organizations and charitable giving.

Cathy has served on several committees of the D.C. Bar Tax Section and ABA Tax Section as well as the board of the National Center on Philanthropy and the Law.

## Areas of Focus
Health Care

## Honors & Distinctions
IRS Commissioner's Award (2013)

IRS Chief Counsel's Distinguished Service Award (2013)

U.S. Department of the Treasury Meritorious Service Award (2013)

Winner, Secretary's Award, U.S. Department of Treasury (1997)

## Education
Yale University (J.D. 1991; Thurman Arnold Prize for Best Moot Court Argument; Potter Stewart Prize for Best Moot Court Brief; C. LaRue Munson Prize for Work in Clinical Program; B.A. in History summa cum laude 1987; Phi Beta Kappa; McClintock Prize for Best Senior Essay in Western Americana)

## Bar Admissions
District of Columbia, Massachusetts, U.S. Tax Court, and U.S. Supreme Court



## Catherine E. Livingston

### Clerkships

Law Clerk to Judge Stanley Sporkin, U.S. District Court, District of Columbia (1991-1992)

### Government Service

Served with the Office of Chief Counsel, Internal Revenue Service in the following positions: Health Care Counsel (2010-2013) and Deputy Division Counsel/Deputy Associate Chief Counsel, Tax Exempt and Government Entities Division (2002-2010); served with the Office of Tax Policy, U.S. Department of Treasury (1994-1998) in the following positions: Deputy Tax Legislative Counsel (Legislative Matters), Associate Tax Legislative Counsel, and Attorney Advisor





# Yvette McGee Brown
## Partner

ymcgeebrown@jonesday.com
**Columbus**
1.614.281.3867
1.614.461.4198 (F)

Yvette McGee Brown joined Jones Day in 2013 after a long and distinguished judicial and public service career. Fresh off the Ohio Supreme Court her focus is on business and tort litigation and appellate practice. She has experience deciding complex business, constitutional, regulatory, tort, health care, and insurance cases. In addition, she brings extensive experience with nonprofit and corporate boards. Justice McGee Brown served on the public company board of M/I Homes, one of the nation's largest home builders, and on the board of directors of Fifth Third Bank of Central Ohio.

Justice McGee Brown was first elected to the Franklin County Common Pleas Court, Domestic Relations and Juvenile division in 1992. She served on the Common Pleas Court until 2002, when she retired from the bench to create the Center for Child and Family Advocacy at Nationwide Children's Hospital. As one of four presidents at NCH, she had responsibility for a $30 million budget and 400 employees overseeing the hospital's Behavioral Health, Child Abuse, and Developmental Pediatrics departments. Her experience as a health care president gives her unique insight into the challenges facing health care institutions.

Justice McGee Brown has been an active community leader in Columbus and throughout Ohio. She has served on the boards of Ohio University, the Dave Thomas Foundation for Adoption, the Ohio State University Wexner Medical Center, and the National Council of the Ohio State University Moritz College of Law. She is a former chair of the United Way of Central Ohio, The Ohio State University Alumni Association, and the YWCA Columbus Board of Directors.

## Areas of Focus
Business and Tort Litigation (USA)

## Honors & Distinctions
"2013 Central Ohio Power 100" list, *Smart Business Columbus*

Ohio University Medal of Merit

Phillip's Medal for Community Service

Ohio State University Distinguished Service Award

William Oxley Thompson award for distinctive achievement before the age of 35

YWCA Woman of Achievement Award

Women of Color Foundation Woman of the Year

Girl Scout Great Award

"Odds Changer," National Children's Defense Fund

Inducted into the Ohio Women's Hall of Fame (2008)



## Yvette McGee Brown

### Education

The Ohio State University (J.D. 1985); Ohio University (B.S. in Journalism 1982); Honorary doctorate degrees from Ohio Dominican University, Wilberforce University, and Central State University

### Bar Admissions

Ohio

### Government Service

Justice, Ohio Supreme Court (2011-2012) and Judge, Franklin County Court of Common Pleas, Domestic and Juvenile Division (1992-2002)

### PUBLICATIONS

Bringing Balance To A Law Practice, *Metropolitan Corporate Counsel*
February 19, 2013





# Evan Miller
## Partner

emiller@jonesday.com
**Washington**
1.202.879.3840
1.202.626.1700 (F)

Evan Miller provides employee benefits counsel and represents companies in complex ERISA litigation cases. He co-chairs the Firm's Employee Benefits & Executive Compensation Practice.

As a litigator, Evan has defended companies and individuals in stock drop cases, fiduciary duty class actions against plan service providers, and cash balance and accrued benefit cutback litigation. He also has been involved in a variety of retiree health cutback cases and has helped pioneer the use of retiree health VEBAs to shift legacy costs. He is experienced in defending contributors to Taft-Hartley plans in withdrawal liability disputes, as well as in defending companies in investigations and litigation conducted at the regional and national levels by the U.S. Department of Labor. Representative clients for which he has recently handled ERISA litigation include Blue Cross Blue Shield of Michigan, CBS, Continental Tire Co., General Motors, Harman Industries, Home Box Office, JohnsonDiversey, the League of Voluntary Hospitals and Homes of New York, Macy's, and Xerox Corporation.

As a counselor, Evan advises plan sponsors and administrators on ERISA's reporting and disclosure requirements; health plan service providers on COBRA, HIPAA, ERISA fiduciary duty, and prohibited transaction rules; and multiemployer plan and plan termination issues.

Evan lectures and publishes frequently on ERISA matters. He previously served as co-chair of the board of editors of Employee Benefits Law (Bureau of National Affairs), a publication of the Labor & Employment Law Section of the ABA, and between 2004 and 2006 he served as co-chair of the Employee Benefits Committee of the Labor & Employment Section.

## Areas of Focus
Employee Benefits & Executive Compensation

ERISA & Other Employee Benefits Litigation

Employee Benefits Counseling & Litigation

## Honors & Distinctions
*Chambers USA* 2009: ranked as a "leading individual" in employee benefits, executive compensation, and ERISA litigation both in D.C. and nationally; recognized by *The National Law Journal* as one of the nation's 40 best ERISA attorneys; *Legal 500 US* (2008–2009); *PLC Which lawyer?* (2009); *D.C. Super Lawyers* (2008-2009)

## Education
Georgetown University (J.D. 1981); Columbia University (B.A. 1978)

## Bar Admissions
District of Columbia and New York



## EXPERIENCE

### Hostess Brands commences bankruptcy proceedings

Jones Day represents client Hostess Brands, Inc. and its direct and indirect subsidiaries (collectively, "Hostess") as lead restructuring counsel, in Hostess' January 11, 2012 (the "Petition Date") filing under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") with more than $800 million in secured debt and a $75 million debtor-in-possession financing facility with Silver Point.

### Verizon to transfer $7.5 billion of management pension plan liabilities to Prudential

Jones Day is advising Verizon Communications Inc. in its transfer of approximately $7.5 billion in Verizon balance sheet liabilities attributable to outstanding pension obligations to Prudential Life Insurance Company of America.

### GM pension plan to transfer $29 billion of assets to Prudential in ground-breaking de-risking transaction

Jones Day has advised General Motors LLC in connection with a transaction announced on June 1, 2012 that will eliminate approximately $26 billion in GM balance sheet liability, and result at closing in the largest single-employer plan termination and pension risk transfer in U.S. history.

### New York City area hospitals and nursing homes win arbitration respecting nurses' health benefits coverage

On June 20, 2011, Jones Day lawyers achieved an important victory for 41 New York City area hospitals and nursing homes, as Arbitrator George Nicolau issued a binding arbitration award ordering the Trustees of the New York State Nurses Association Benefit Fund (NYSNA Fund) to make wide-ranging changes in the Fund's health benefits program.

### Century Aluminum negotiates new four year agreement with United Steelworkers Union

Jones Day served as chief negotiator for Century Aluminum in bargaining with the United Steelworkers Union that resulted in ratification of a new four year agreement at Century Aluminum of Kentucky's Hawesville, KY aluminum smelter.

### JohnsonDiversey Retirement Plan successfully defends against various ERISA claims concerning benefits under cash balance plan

Jones Day represented JohnsonDiversey, Inc.'s cash balance plan with respect to claims that the plan incorrectly calculated lump sum distributions of pension benefits.

### Blue Cross Blue Shield of Michigan wins 6th Circuit appeal in important ERISA fiduciary breach case

On December 8, 2010, the U.S. Court of Appeals For the Sixth Circuit ruled in favor of Jones Day's client Blue Cross Blue Shield of Michigan in an important case involving the scope of ERISA's fiduciary conduct rules -- *DeLuca v. Blue Cross Blue Shield of Michigan*.

### ABM acquires The Linc Group for $300 million

Jones Day advised ABM Industries Incorporated in its acquisition of The Linc Group, LLC for $300 million.

### Macy's obtains dismissal of ERISA action

Jones Day represented Macy's, Inc. its directors, and the Macy's Pension and Profit-Sharing Administrative Committee in a lawsuit alleging ERISA violations based on Macy's alleged failure to locate former employees and notify them at the time they became eligible to receive normal retirement pensions.

### Trustees of multiemployer pension fund defend against claims that they breached their fiduciary duties in deciding to effectuate the fund's termination

Jones Day defended the trustees of a multiemployer pension fund against claims that they breached their fiduciary duties in deciding to effectuate the fund's termination.



**Caterpillar contributes common stock valued at $650 million to its defined benefit pension plans**
Jones Day advised Caterpillar Inc., one of the world's largest manufacturers of construction and mining equipment, in connection with a contribution of common stock valued at $650 million to its defined benefit pension plans.

**NovaStar Financial defends "stock drop" class action litigation**
Jones Day defended NovaStar Financial and its affiliates in a "stock drop" class action litigation case.

**Continental Tire obtains preliminary approval in settlement in ERISA class action**
Jones Day represented Continental Tire North America in a class action under ERISA and Sec. 301 of the Labor-Management Relations Act filed by retirees and the United Steelworkers of America challenging Continental's modification of its retiree medical plan for retirees at its unionized plants.

**Harsco seeks counsel regarding withdrawal liability issues**
Jones Day is retained by Harsco Corporation for counsel regarding withdrawal liability issues.

**IMO Industries defends class action regarding retiree health benefits**
Jones Day defended IMO Industries, a multinational engineering and manufacturing firm, in a class action regarding retiree health benefits.

**Xerox Corporation defends ERISA class action**
Jones Day represented Xerox and certain of its current and former officers, directors, and employees in an ERISA class action alleging that 401(k) plan fiduciaries breached their fiduciary duties in connection with the Xerox Stock Fund, one of the plan's investment alternatives.

**PUBLICATIONS**

The Affordable Care Act at 2½—What Employers Should Expect Now
August 2012

Health Care Reform: What If They Throw the Whole Thing Out?
May 2012

Final Fee Disclosure Regulation: Additional Hurdles for Service Providers and Plan Fiduciaries
February 2012

*In Re: Citigroup* ERISA Litigation: Has the Death Knell Sounded for Stock Drop Cases?
December 2011

Fully Insured Group Health Plans May No Longer Provide Discriminatory Benefits
November 2010

Fee Disclosure Regulation: Department of Labor Provides Leverage for Plan Sponsors
August 2010

Claims and Appeals Procedures: New Internal and External Review Requirements
August 2010

An Ounce of Prevention—Not Just a Good Idea, Now It's the Law: Health Care Reform Requires Employer-Sponsored Group Health Plans to Provide Preventive Services With No Cost-Sharing
July 2010

Thou Shalt Not Exclude, Rescind, or Limit: Agencies Release Regulations Implementing Patient's Bill of Rights
July 2010



The Retiree-Only Plan Exception: Is It Still Effective After Health Care Reform?
July 2010

The More Things Change, the More They Stay the Same: Is It Worth Maintaining Grandfathered Status Under the New Health Care Law?
June 2010

Surprise for Employers: No Collective Bargaining Exception Under Health Care Reform
June 2010

Coming of Age: Extended Health Coverage for Children to Age 26
May 2010

The Early Retiree Reinsurance Program—U.S. Employers To Line Up for $5 Billion Pool of Federal Funds
May 2010

Impact of Health Care Reform Legislation on Employer-Sponsored Group Health Plans
April 2010

Health Care Reform—Upcoming Effective Dates for Employer-Sponsored Group Health Plans
March 2010

Extension of COBRA Subsidy for Assistance Eligible Individuals
January 2010

Health Care Reform: House Bill Would Make It Nearly Impossible to Reduce Retiree Medical Benefits
November 2009

Retiree Medical Litigation's Dirty Little Secret: Location, Location, Location!
August 2009

Retiree Medical Litigation's Dirty Little Secret—Location, Location, Location!, *Benefits Law Journal,* Vol. 22, No. 1, Spring 2009

Retiree Health Benefits: Legal Developments In A Changing Global Economy, 2008 American Bar Association Annual Meeting, Section of Litigation
August 2008

Metlife v. Glenn: How Much did The Supreme Court Change the Standard of Review in ERISA
June 2008

DOL Issues Final Rules for Qualified Default Investment Alternatives
November 2007

Is Coordinating Medicare-Based Benefits with Retiree Medical-Plan Benefits a Form of Age Discrimination?
June 2007

## SPEAKING ENGAGEMENTS

2012 Speaker Series
Health Care Reform and the Affordable Care Act: What's Next for Employers?
July 26, 2012
Pittsburgh, Pennsylvania



## Evan Miller

The Supreme Court on the Affordable Care Act: What's Next, Cornell University School of Industrial and Labor Relations
July 19, 2012
New York, New York

Mastering Mergers and Acquisitions, NBI Webcast
September 15, 2010
Webcast





# Naveen C. Rao
## Associate

ncrao@jonesday.com

**Washington**
1.202.879.3708
1.202.626.1700 (F)

Naveen Rao advises air carriers, aerospace firms, and other companies on regulatory matters involving the Federal Aviation Administration and the United States Secretary of Transportation.

Prior to joining Jones Day, Naveen was vice president and general counsel of Naverus, a developer of advanced, satellite-based aircraft navigation procedures. Naveen spent more than seven years at the U.S. Department of Transportation working in a number of capacities beginning with the Department's Honors Attorney program. He was a counselor to the assistant secretary for Aviation and International Affairs, advising on the licensing of all carriers serving the United States, formulation of aviation policy, and negotiations with foreign civil aviation authorities. Naveen also worked in the Regulations Division of the Office of the Chief Counsel at the FAA. At the FAA, he was involved in rulemaking activities, letters of interpretation, and provided legal support to the agency's Office of Aviation Safety. In addition, he spent two summers during law and graduate school working for United Air Lines in legal and business capacities at its headquarters.

In 2003, Naveen was selected to be a Mansfield Fellow. During this two-year program, he spent one year in Washington, D.C. studying the Japanese language and also Japan area studies at the U.S. Department of State. He spent his second year in Tokyo focusing on Japanese aviation policy at the Ministry of Land, Infrastructure, and Transport; the Japan Fair Trade Commission; and All Nippon Airways where he worked on legal, economic, business, and technical matters. Naveen is also a private pilot.

### Areas of Focus
Government Regulation

Airlines & Aviation

### Honors & Distinctions
*Chambers*: 2012 — clients describe him as an "'excellent lawyer with a great future'" and as a "'very smart guy who is very responsive — he also understands aviation backwards and forwards both here and abroad'" and 2011 — among "associates to watch" and described as "a bright young associate...steeped in aviation, with a very deep resume"

Mike Mansfield Fellow (2003-2005)

### Languages
Japanese, Telugu

### Education
University of Arizona (J.D. and M.B.A. 2000; Recipient of the Munger Prize for Scholars in International and Business Law); University of Louisville (B.A. in Economics summa cum laude 1995)

### Bar Admissions
District of Columbia and Maryland



## Naveen C. Rao

### Government Service

Served with the U.S. Department of Transportation in the following positions: Counselor to the Assistant Secretary for Aviation and International Affairs (2006-2008) and Regulations Attorney, Federal Aviation Administration, Office of the Chief Counsel (2001-2003 and 2005-2006)

As a Mike Mansfield Fellow, assigned to the Japan Civil Aviation Bureau at the Ministry of Land, Infrastructure, Transport, & Tourism and the Japan Fair Trade Commission (2004-2005)



## EXPERIENCE

### Woodward acquires hydraulic thrust reverse actuation systems business of GE Aviation Systems for $200 million

Jones Day advised Woodward, Inc. in the acquisition of the hydraulic thrust reverser actuation systems business of GE Aviation Systems, a subsidiary of General Electric Company, for $200 million.

### Goodrich merges with United Technologies for $18.4 billion

Jones Day advised Goodrich Corporation in its $18.4 billion merger with United Technologies Corporation.

### J.F. Lehman acquires ACR Electronics

Jones Day represented long-standing client J.F. Lehman & Company, a leading mid-market private equity firm focused on the defense, aerospace, and maritime sectors, in connection with the acquisition and related financing of ACR Electronics, Inc., a designer and manufacturer of life-saving devices, from Chelton Avionics, Inc., a Cobham plc group company.

### Air cargo carriers participate in FAA rulemaking governing pilot rest and duty

Jones Day separately represented air cargo operators United Parcel Service (UPS) and Southern Air in rulemaking proceedings before the FAA in which it overhauled the rules governing commercial airline pilot scheduling.

### J.F. Lehman acquires Doss Aviation

Jones Day advised long-standing client J.F. Lehman & Company, a leading mid-market private equity firm focused on the defense, aerospace, and maritime sectors, in connection with the acquisition and related financing of Doss Aviation, Inc., a leading provider of aviation support services primarily to the U.S. military and other government customers.

### American Airlines secures alliance with Japan Airlines

Jones Day represented American Airlines, Inc. before antitrust and regulatory agencies in Asia and the U.S. in a successful global effort to retain its multi-year joint business agreement with Japan Airlines, under which JAL will remain within the oneworld alliance.

### Challenged U.S. Army Physical Evaluation Board's factual findings and diagnoses understating the extent of our client's injuries sustained in Iraq, results in medical care for the rest of his life

David Torborg and Naveen Rao of Jones Day Washington, and Thomas Moore of the National Veterans Legal Services Program, successfully challenged a decision by the U.S. Army Physical Evaluation Board (PEB) on behalf of Client H of the Texas National Guard.

## PUBLICATIONS

The Journal of Air Traffic Control
Q1 2013

Looking Beyond Lead: Developments in Federal Regulation of Avgas Lead Emissions
December 2012

Airlines and Aviation Alert
Summer 2012

Airlines and Aviation Alert
Spring 2011

China Promulgates New Regulations on the Construction, Operation, and Safety of Civil Airports
May 2009



The Antitrust Review of the Qantas Airways-Air New Zealand, *The Transportation Antitrust Update*, Issue No. 11
Summer 2003

The Antitrust Review of the Japan Airlines and Japan Air System Merger, *The Transportation Antitrust Update*, Issue 9
Summer 2002

## SPEAKING ENGAGEMENTS

Jones Day sponsors and attends Georgetown Black Law Students Association Speed Networking event
November 13, 2012
Washington, D.C.

ABA Air and Space Law Forum
January 27, 2010
Washington, D.C.





# Chad A. Readler
## Partner

careadler@jonesday.com

**Columbus**
1.614.281.3891
1.614.461.4198 (F)

Chad Readler handles complex civil and criminal matters, with an emphasis on appellate litigation. Before the United States Supreme Court, Chad assisted in successful representations involving preemption, the First Amendment, and the death penalty. In the Ohio Supreme Court, he recently prevailed on behalf of the Cleveland Clinic and, separately, successfully defended the constitutionality of Ohio's public charter schools.

Chad's lower court victories include vacating a $250 million punitive damages award against Prudential Securities and vacating a $44 million damages award against First American Title Insurance Company in an unfair competition case. In product liability matters, Chad represents clients including R.J. Reynolds, Sherwin-Williams, and Yamaha and has represented R.J. Reynolds in commercial speech litigation. On behalf of Chrysler, he recently resolved a series of arbitrations filed by former automobile dealers. Chad also recently litigated cases involving novel antitrust issues as well as whistleblowers and the False Claims Act.

Chad is a past recipient of the American Marshall Memorial Fellowship awarded by the German Marshall Fund of the United States, and he traveled for three weeks in Europe, meeting with prominent members of the business, political, and NGO communities. Recently, Chad traveled to Nairobi, Kenya to participate in a Lawyers Without Borders program focused on improving the trial skills of Kenyan lawyers.

Chad speaks annually on business-related legal developments as well as appellate advocacy, including at the biannual Sixth Circuit conference. He handles numerous pro bono matters, recently securing habeas corpus relief for a client serving a life sentence for murder.

### Areas of Focus
Issues & Appeals

Business and Tort Litigation (USA)

Government Regulation

### Honors & Distinctions
2008 Community Service Award (40 and Under), Ohio State Bar Foundation

*Best Lawyers in America* (appellate law)

Life Member, United States Court of Appeals for the Sixth Circuit

Elected to membership in the International Association of Defense Counsel

Robert S. Crane Jr. Young Philanthropist Award, United Way of Central Ohio (2011)



## Chad A. Readler

**Education**
University of Michigan (J.D. cum laude 1997; Note Editor, Journal of Law Reform; B.A. in Political Science and Economics 1994)

**Bar Admissions**
Ohio

**Clerkships**
Law Clerk to Judge Alan E. Norris, United States Court of Appeals, Sixth Circuit (1997-1998)



## EXPERIENCE

### RBS Citizens and Citizens Bank of Pennsylvania defend against putative class action with respect to check processing practices

Jones Day represents RBS Citizens, N.A. and Citizens Bank of Pennsylvania ("Citizens"), which are the U.S. banking operations of RBS Group plc, in a putative class action alleging, among other things, that Citizens' check processing practices are in breach of Citizens' customer account agreements and amount to unfair and deceptive trade practices under the laws of certain of the 12 states in which Citizens operates.

### FirstEnergy defeats class action brought by "all electric" customers seeking discounted rates forever

Jones Day obtained a dismissal of a potential class action brought by so called "all electric" customers against FirstEnergy Corp. and two of its Ohio utility subsidiaries

### Jones Day appointed appellate counsel in challenge to Ohio parole regulations

The Firm was appointed to represent an inmate in the Ohio state correctional system who had appealed a decision by the Northern District of Ohio dismissing a class action challenging changes in Ohio's parole regulations.

### Ohio State Bar Association succeeds in returning clarity to Ohio's Corporate Director Advancement Statute

The Ohio State Bar Association, represented by Jones Day as an *amicus curiae*, successfully petitioned the Supreme Court of Ohio to review, and then reverse, a decision from the Eleventh District that threatened directors' right to advancement.

### Cleveland Clinic obtains significant Sixth Circuit victory in lawsuit brought by City of Cleveland challenging hospital closure

The Cleveland Clinic Foundation, represented by Jones Day, prevailed in a challenge by the City of Cleveland and Mayor Frank Jackson to the Cleveland Clinic's decision to close Huron Hospital, a hospital located in the City of East Cleveland, for safety and patient concerns.

### Jones Day prevails before Ohio Supreme Court on behalf of Ohio's Charter Schools

On behalf of five Ohio and national charter school-related organizations, including the Ohio Alliance for Public Charter Schools and the National Alliance for Public Charter Schools, Jones Day Columbus Partner Chad Readler participated as amicus curiae counsel, both in briefing and at argument, in prevailing before the Supreme Court of Ohio in Cincinnati City School District Board of Education v. Conners.

### Ohio Alliance for Public Charter Schools prevail before the Supreme Court of Ohio in challenge to Cincinnati City School District's attempt to prevent charter school from obtaining school facilities

On behalf of five Ohio and national charter school-related organizations, including the Ohio Alliance for Public Charter Schools and the National Alliance for Public Charter Schools, Jones Day partner Chad Readler participated as amicus curiae counsel, both in briefing and at argument, in prevailing before the Supreme Court of Ohio.

### RBS Citizens and Citizens Bank of Pennsylvania defend against three putative class actions concerning overdraft fees

Jones Day is representing RBS Citizens, N.A. and Citizens Bank of Pennsylvania ("Citizens"), which are the U.S. operations of RBS Group plc, in three putative class actions alleging, among other things, that Citizens' practice of posting debit transactions from highest dollar amount to lowest, and other debit transaction posting practices, are in breach of Citizens' customer account agreements and amount to unfair and deceptive trade practices under the laws of certain of the 12 states in which Citizens operates.

### Sixth Circuit reverses and remands case for a determination whether the prisoner has a credible claim of actual innocence

On March 1, 2012, Jones Day Columbus won an appeal brought on behalf of a Michigan prisoner in the United States Court of Appeals for the Sixth Circuit.



### Ohio Edison wins right to implement vegetation management plan

Jones Day successfully represented Ohio Edison, a subsidiary of FirstEnergy Corp., in an action brought by a property owner before the Public Utilities Commission of Ohio ("PUCO").

### Ohio Edison wins dismissal of suit

Jones Day successfully represented Ohio Edison, a subsidiary of FirstEnergy Corp., in a suit brought by a property owner before the Public Utilities Commission of Ohio.

### Jones Day partners work in Kenya for Lawyers Without Borders Rule-of-Law project

Jones Day's Pittsburgh partner Mike Ginsberg and Columbus partner Chad Readler traveled to Nairobi in August to participate in an eight day Lawyers Without Borders (LWOB) program focused on improving the trial skills of Kenyan prosecutors and private practitioners who litigate cases involving victims of gender violence.

### PILPG solicits a report for the Government of Kosovo regarding judicial accountability standards and best practices in Europe

The Public International Law and Policy Group ("PILPG") solicited a report for the government of Kosovo regarding judicial accountability standards and best practices in Europe.

### Jones Day develops a pro bono practice in the Eleventh Circuit Court of Appeals

Atlanta partners David Monde, Rick Deane and Ken Smith, along with Pittsburgh partner Tom Jones and Columbus partner Chad Readler supervise teams of Jones Day associates in appellate case work.

### Client's habeas claim of ineffective assistance of state appellate counsel prevails in the Sixth Circuit

Jones Day continued its string of appellate pro bono victories with the U.S. Court of Appeals for the Sixth Circuit's decision in Hardaway v. Robinson.

### Chad Readler named Chair of the Ohio Alliance for Public Charter Schools

At its annual meeting in November 2010, the board of directors of the Ohio Alliance for Public Charter Schools named Jones Day Columbus partner Chad Readler as the board's new Chair.

### Ohio Supreme Court strikes down portions of sex offender law as violation of separation of powers

Jones Day Columbus successfully represented a group of victims' rights organizations and law enforcement personnel as *amicus curiae* in opposition to Ohio's new sex offender law (Senate Bill 10).

### Chrysler Group defends dealer arbitrations

Jones Day assisted client Chrysler Group LLC ("Chrysler") with the defense of twenty-two arbitrations brought by former dealers of Chrysler LLC ("Old Chrysler"), in which those former dealers sought to be added to Chrysler's dealer network.

### Parker Hannifin wins Ninth Circuit dismissal of wrongful death claims involving single-engine plane crash

Wrongful death claims were filed against Jones Day client, Parker Hannifin Corporation, and others resulting from the crash of a single-engine Beech Bonanza that claimed the lives of the pilot, his wife, and two minor children.

### First American Title Insurance successfully appeals majority of adverse jury verdict in largest damages award given in economic injury case in Ohio history

Jones Day is counsel for First American Title Insurance Company and its executive, James Magnuson, as appellate and retrial counsel after an adverse jury verdict in the amount of $43.2 million.

### PUBLICATIONS

Receding Advancements: Legal Fees And Ohio's Corporate Directors, *Ohio Lawyer*
Jan/Feb 2013



## SPEAKING ENGAGEMENTS

2012 Speaker Series
Supreme Court Update: A Look at Significant Cases in the New Term
October 18, 2012
Pittsburgh, Pennsylvania

CLE at the Ohio State Bar Association
April 7, 2011
Columbus, Ohio

Supreme Court Roundup
July 14, 2009
Pittsburgh, Pennsylvania

Advice from the Experts: Successful Partnering Between Inside and Outside Counsel, Central Ohio ACC CLE Program
January 15, 2009
Columbus, Ohio

68th Conference of the Sixth Circuit Judicial Circuit
May 7-10, 2008
Chattanooga, Tennessee

Appellate Advocacy, Moderator for Panel Featuring Solicitor General Paul Clement
May 2008

Preparing for and Countering Aggressive Attacks from Regulators, National Alliance for Public Charter Schools
April 2008

Supreme Court Review for In-House Counsel
March 2008
December 2007
Columbus, Ohio
Cleveland, Ohio

Appellate Techniques, Columbus Bar Association
May 2007
Columbus, Ohio

Building Statewide Capacity to Support the Charter School Movement, National Alliance for Public Charter Schools
April 2007
Albuquerque, New Mexico

The Ohio Supreme Court, National Association of Legal Secretaries, Columbus Chapter
December 2006
Columbus, Ohio

Eminent Domain and Economic Development: Kelo and Norwood Considered, Ohio State University College of Law, Federalist Society
September 2006
Columbus, Ohio

Community Schools Considered, Ohio School Boards Association's Annual OCSBA Spring Seminar
June 2006



Stark County Bar Association Law Day
May 2, 2006
Canton, Ohio

The Constitutionality of Ohio's Charter School Law, Politics and Government Seminar, Kent State University
November 2005
Kent, Ohio

What is Federalism? Moritz (OSU) College of Law Federalist Society Chapter
September 2005, 2003 and 2002

Ohio Supreme Court Review, Ohio State Bar Association
December 2004, 2003, 2002, 2001

The Future of Sovereign Immunity, Ohio Attorney General's Federalism Seminar
November 2002

*DeRolph v. State*: Past, Present and Future, Moritz (OSU) College of Law
February 2002

Analysis of *DeRolph v. Ohio*, Federalist Society, Columbus Lawyers Chapter
October 2001

Charter School Litigation, Ohio Charter School Association
September 2001





# Brian L. Sedlak
## Partner

brianlsedlak@jonesday.com

**Chicago**
1.312.269.4334
1.312.782.8585 (F)

Brian Sedlak advises clients with respect to large-scale infrastructure projects and represents *Fortune* 500 companies, large U.S. developers, and real estate funds with their real estate portfolios and investments. He represents the owners and financing parties of major infrastructure assets in the United States, including power generation facilities and toll roads. He also has significant experience in general secured financing, joint ventures, permanent lender representation, and annexation and development of real property. Brian oversees the Firm's Corporate Real Estate Services Practice and is co-chair of the Firm's Global Infrastructure & Project Finance Practice.

He has represented Befesa, Cintra, FCC Construccion, S.A., and Itinere Infrastructure in various infrastructure projects, including the negotiation of certain public-private-partnership and development agreements. In addition, Brian has represented MidWest Generation and Oklahoma Gas & Electric in development and construction projects regarding coal-fired plants, wind farm developments, and air quality control systems. Brian's other representative clients include Anglo Irish Bank, Bank of America, CalEast Industrial Investors, Experian Information Solutions, Huron Consulting Group, Navistar International, and R.R. Donnelley & Sons Company.

Brian frequently is asked to speak on corporate real estate topics throughout North America and is a top-rated faculty member of CoreNet. He is a member of The Economic Club of Chicago and a board member of the Dean's Advisory Counsel for the Department of Business and Management of Northeastern Illinois University. He also serves on the board of METROSquash, an organization providing at-risk Chicago Public School students with after-school athletic and educational opportunities.

## Areas of Focus
Real Estate

Energy

Corporate Real Estate Services

Banking & Finance

Projects & Infrastructure

## Honors & Distinctions
*Illinois Super Lawyers*

*The Legal 500* — real estate: "a key player in the region"

Illinois Certified Public Accountant

## Education
Chicago-Kent College of Law, Illinois Institute of Technology (J.D. with high honors 1993; Order of the Coif; Law Review); Northeastern Illinois University (B.S. in Accounting 1990)



13-53846-tjt    Doc 2298    Filed 12/23/13    Entered 12/23/13 19:15:41    Page 208 of 235

**Bar Admissions**

Illinois



## EXPERIENCE

### Bank of America Merrill Lynch and JP Morgan underwrite $313 million bond component of $1.4 billion U.S. Route 460 Virginia project
Jones Day advised Bank of America Merrill Lynch and JP Morgan as underwriters' counsel in connection with the approximately $313 million bond component of the $1.4 billion project to construct a four-lane toll road between the cities of Petersburg and Suffolk, Virginia.

### Hyatt Hotels and Morumby Hoteis negotiate $75 million term loan facility with Sovereign Bank
Jones Day advised Hyatt Hotels Corporation and Morumby Hoteis Ltda., a joint venture of Hyatt Hotels Corporation located in Sao Paulo, Brazil, in connection with the negotiation and documentation of a US$75 million term loan facility with, and related corporate guaranty in favor of, Sovereign Bank, N.A.

### Riverside portfolio company acquires Overton Chicago Gear Corporation
Jones Day advised The Riverside Company in connection with its acquisition and related financing by portfolio company H-D Advanced Manufacturing Company of Overton Chicago Gear Corporation, a manufacturer and distributor of large, custom, mission-critical gearing products.

### Veolia Environnement sells U.S. solid waste business to Star Atlantic Waste for $1.9 billion
Jones Day advised Veolia Environnement in the $1.9 billion sale of its U.S. solid waste business to Star Atlantic Waste Holdings LP, a portfolio company of Highstar Capital.

### The Ohio State University completes 50-year lease and concession agreement of parking facilities and operations in exchange for $483 million up-front payment
Jones Day advised The Ohio State University in connection with the University's 50 year concession of its parking assets for $483 million to a consortium comprised of QIC Private Capital (Queensland Investment Corporation - an Australian pension fund manager) and LAZ Parking.

### Jones Day Chicago develops relationship with the Civic Consulting Alliance
In 2011, the Chicago Office began a relationship with the Civic Consulting Alliance ("CCA"), a 501(c)(3) nonprofit that reshapes how Chicago works by building pro bono teams comprised of business and legal experts, government leaders, and its own staff to work on discrete projects designed to make the city, county, and other parts of the state more livable, affordable, and globally competitive.

### Edison Mission Energy drafts and negotiates $570 million turnkey EPC agreement for pollution control equipment retrofit project involving Homer City Generating Station in Pennsylvania
Jones Day assisted Edison Mission Energy Ltd. with the drafting and negotiation of an approximately $570 million turnkey engineering, procurement and construction agreement for a pollution control equipment retrofit project involving the addition of flue-gas desulfurization retrofit scrubber systems to the Homer City Generating Station in Homer City, Pennsylvania.

### OG&E purchases project development assets for Crossroads wind farm project from Renewable Energy Systems Americas Inc.
Jones Day advised Oklahoma Gas and Electric Company (OG&E) in connection with the purchase by OG&E from Renewable Energy Systems Americas Inc. ("RES Americas") of the project development assets for the 227.5 megawatt Crossroads wind farm project, the supply by Siemens to OG&E for the construction of the project of 95 2.3-MW rated wind turbine generators, and three 3-MW direct drive wind turbine generators, the first of their kind to be installed in the United States, and the supply by RES America Construction to OG&E of balance of plant engineering, procurement and construction services for the project.

### KeyBank successfully completes wind and solar project located in Kingman, Arizona
Jones Day advised KeyBank National Association, as the administrative agent and lead lender to Kingman Energy



Corp., a subsidiary of Western Wind Energy Corp., in connection with the construction and commencement of commercial operation of a combined wind and solar project located in Kingman, Arizona.

### KeyBank finances wind power facility in Idaho
Jones Day advised KeyBank National Association in connection with the $29.2 million project financing provided to Idaho Winds LLC, a subsidiary of PowerWorks LLC, for the operation of a wind power facility with a total generating capacity of 22 MW located in Elmore County, Idaho.

### Richland-Stryker, a unit of Quintana Minerals Corporation, acquires two gas-fired peaking facilities from First Energy
Jones Day advised Quintana, an investment partnership based in Texas, through its subsidiary, Richland-Stryker Generation LLC, in the acquisition of two gas-fired peaking facilities, the Richland Generation Station and the Stryker Generation Station, from FirstEnergy Corp.

### NRG Energy acquires equity interest in ProLogis' Project Amp
Jones Day represented NRG Energy, Inc. in its acquisition of an equity interest and financing of the proposed 752 MW distributed generation rooftop solar project on approximately 750 rooftops in 28 states and the District of Columbia.

### NRG Energy obtains project financing for development of 550 MW combined cycle power plant in California
Jones Day provided advice to NRG Energy, Inc., an owner and operator of one of the largest and most diverse power generation portfolios in the U.S., in connection with the $688 million project financing for the development, construction, operation, and management of a 550 MW combined cycle power plant to be located on a site in El Segundo, California.

### XEMC New Energy acquires majority interest and financing of 25 MW offshore wind project
Jones Day is advising XEMC NE, a Chinese state-owned company, in the pending acquisition of a majority interest and financing of a 25 MW offshore wind project developed by Fishermen's Energy LLC in New Jersey state waters.

### A.M. Castle negotiates lease and construction contract for corporate headquarters in Oak Brook, Illinois
Jones Day represented A.M. Castle & Co. in the negotiation of a lease, and construction contract for lease and build-out, of over 38,000 square feet of office space for client's corporate headquarters in Oak Brook, Illinois.

### KeyBank finances wind and solar project located in Kingman, Arizona
Jones Day advised KeyBank National Association in connection with the $30 million project financing provided to Kingman Energy Corp., a subsidiary of Western Wind Energy Corp., for the construction, development, and operation of a combined wind and solar project with a total generating capacity of 10.5 MW located in Kingman, Arizona.

### Lennox acquires Kysor/Warren division of The Manitowoc Company for $138 million
Jones Day advised Lennox International Inc. in the acquisition of the Kysor/Warren division of The Manitowoc Company, Inc. for $138 million.

### Navistar purchases 1.2 million-square-foot facility to develop as new headquarters
Jones Day assisted Navistar, Inc., with the acquisition of the former Alcatel-Lucent East Campus, comprising 1.2 million square feet on approx. 88 acres of land in Lisle, Illinois, and the negotiation of a construction contract to develop the site into the client's new headquarters.

### Navistar negotiates lease agreement for 860,100-square-foot parts-distribution center
Jones Day represented Navistar International Corporation in the negotiation of a lease agreement for a 860,100-square-foot industrial building located at Cherry Hill Business Park in Joliet, Illinois, to be used as a parts-distribution center.



## Brian L. Sedlak

**Henderson Global Investors purchases The Pointe at Chapel Hill, multi-family residential apartment community in Chapel Hill, North Carolina**
Jones Day represented Henderson Global Investors (North America) Inc. in the $38.525 million purchase of a residential apartment project known as "The Pointe at Chapel Hill," located in Chapel Hill, North Carolina.

### PUBLICATIONS

The Potential Upside of the Economic Stimulus Plans for the Infrastructure Market
February 2009

### SPEAKING ENGAGEMENTS

Jones Day Regional Energy Conference, Harnessing Regional Opportunity in the new Energy Economy
February 14, 2013
Pittsburgh, Pennsylvania

Jones Day MCLE University - Chicago
May 19, 2011
Chicago, Illinois

Real Estate Outlook: Navigating & Prospering in 2010
May 5, 2010
Chicago, Illinois

Wind Energy Development: Real-Estate Related Legal Issues with Wind Energy, ABA Webcast
November 18, 2009
Webcast

Anywhere the Wind Blows: Real Estate Related Issues for Wind Farm Developments, ABA Annual Convention
August 4, 2009
Chicago, Illinois

CORENET: Managing Projects in Global Markets, COnstruction and Real Estate NETwork
July 27-29, 2009
Denver, Colorado

Leasing: Legal Perspectives, NAIOP Advanced Development Practices Course
June 4, 2009
Hilton Chicago O'Hare Airport, Illinois

Infrastructure In the U.S. - Salient Issues, Association of German Public Sector Banks
March 7, 2008
New York, New York

CORENET: Managing Projects in Global Markets, COnstruction and Real Estate NETwork
April 28-29, 2007
Denver, Colorado

Developing Infrastructure for the Public Sector from a Bidders Perspective, U.S. Infrastructure Summit
April 25-27, 2007
New York City, New York

What the Experts Think: The State of Chicago Real Estate,  Chicago Real Estate Organization (CREO)
June 4, 2006
Chicago, Illinois



Complex Portfolio and International Investments, Non-Core Real Estate Funds Forum, Institute for International Research
July 25-26, 2005
Chicago, Illinois

CORENET: Advanced Office Leasing, COnstruction and Real Estate NETwork
July 25-26, 2005

CORENET: Construction Law, COnstruction and Real Estate NETwork
July 25-26, 2005

Impact of Expanded 401K-type DC Pension Plans on Labor Mobility and FDI, METI
2005
Tokyo, Japan





# Jayant W. Tambe
## Partner

jtambe@jonesday.com

**New York**
1.212.326.3604
1.212.755.7306 (F)

Jay Tambe advises clients on litigation concerning securities, derivatives, and other financial products including credit default swaps and collateralized debt obligations. Jay also is experienced in securities class action litigation and often represents non-U.S. issuers. He frequently deals with cross-border issues and is well-versed in navigating international discovery and judgment enforcement. He has broad litigation experience under federal and state consumer protection and disclosure statutes.

Jay has successfully obtained dismissal of claims involving CDOs in the New York state and federal courts. *See SNS Bank N.A. v. Citibank, et al.*, No. 601989/02, slip op. (Sup. Ct. N.Y. Cty. July 31, 2003), *aff'd* 7 A.D.3d 352 (1st Dept. 2004); *see also Banco Espirito Santo de Investimento v. Citibank*, 2003 WL 23018888 (S.D.N.Y. Dec. 23, 2003), *aff'd* 110 F. Appx. 191 (2d Cir. Oct. 6, 2004). He is currently representing Lehman Bros. Holdings, Inc. and its affiliated debtors in various derivatives litigation and prelitigation matters as well as in the litigation against Barclays Capital, Inc. In 2009, Jay led the team that prevailed in the very first appeal before ISDA's external review panel: *In re Cemex, S.A.B. de C.V.*

Jay is co-leader of the Firm's Financial Institutions Litigation & Regulation Practice. He routinely provides prelitigation advice on documentation and risk mitigation concerning CDOs, swaps, and other derivatives. Well before the current credit crisis, Jay advised clients about the risks of CDO litigation and worked with them to review documentation and mitigate litigation risks. He is a frequent speaker on CDO and derivatives litigation topics.

**Areas of Focus**
Financial Institutions Litigation & Regulation

Securities Litigation & SEC Enforcement

Business and Tort Litigation (USA)

Global Disputes

Financial Products Litigation

**Languages**
Hindi

**Education**
University of Notre Dame (J.D. cum laude 1992); University of Toronto (B.A. in Economics with honors 1989)

**Bar Admissions**
Illinois and New York



## EXPERIENCE

**HSBC Bank USA successfully defends alleged breach of contract and various related tort claims arising from swap transaction**

Jones Day successfully defended HSBC Bank USA, National Association in an action filed by Toledo Fund, LLC in Supreme Court, New York County, and then removed to the United States District Court for the Southern District of New York.

**Greenwich Capital Markets and CDO issuers obtain dismissal of CDO litigation brought by M&T Bank**

Jones Day successfully defended broker-dealer Greenwich Capital Markets, Inc. ("Greenwich") and issuers Cairn Mezz ABS CDO III, Ltd. and Cairn Mezz ABS CDO III Inc. (together, "Cairn") in a CDO litigation brought by M&T Bank.

**Lehman Brothers bankruptcy estate obtains advice in connection with potential litigation concerning derivative transactions**

Jones Day represents Lehman Brothers Holdings Inc. and its affiliated debtors and debtors-in-possession in the chapter 11 bankruptcy proceedings before the United States Bankruptcy Court.

**PNC obtains advice regarding RMBS transaction**

Jones day advised PNC Financial Services Group in connection with transactional and pre-litigation counseling in capacity as originator and servicer under an RMBS transaction.

**HBK Investments defends against CDO litigation filed by one of nation's 20 largest banks**

Jones Day represented HBK Investments, LLC, a Dallas-based hedge fund, and its general partners in a CDO litigation filed by one of the nation's 20 largest banks, which alleged fraud, breach of fiduciary duties, and violation of New York's consumer protection statute in connection with the bank's investment in Notes issued by Gemstone CDO VII, a hybrid CDO.

**Deutsche Bank defends breach of contract suit filed by hedge funds in connection with credit default swap agreements**

Jones Day is representing Deutsche Bank AG ("DB") in a breach of contract suit filed by hedge funds Good Hill Master LP and Good Hill Master Fund II LP (collectively "Good Hill") in connection with a series of credit default swap agreements.

**Lehman Brothers Holdings seeks recovery of undisclosed asset value transferred in bankruptcy sale of broker dealer**

Jones Day represents Lehman Brothers Holdings Inc. in an action to recover assets transferred to Barclays Capital Inc. when Barclays purchased the Lehman broker dealer business shortly after Lehman's bankruptcy filing in September 2008.

**Satyam Computer Services defends securities fraud class action**

Jones Day is representing Satyam Computer Services Ltd. (n/k/a Mahindra Satyam) in a securities class action filed in the Southern District of New York.

**Morgan Keegan defends against Trust Preferred CDO claims**

Jones Day defended Morgan Keegan & Company, Inc., a premier regional investment firm, in litigation against claims on bank trust preferred collateralized debt obligation ("CDO") investments.

**Derivatives dealers prevail before first ever ISDA® external review panel**

On behalf of various derivatives dealers, Jones Day lawyers recently obtained a victory in the first ever external review panel convened by the International Swaps and Derivatives Association, Inc. (ISDA®).



### Tech Mahindra acquires Satyam for $600 million
Jones Day represented Tech Mahindra Limited, a leading provider of solutions and services to the telecommunications industry, in its acquisition of Satyam Computer Services, Ltd.

### Citigroup defends against non-disclosure allegations concerning the investment of subprime mortgage-backed securities in Falcon Fund
Jones Day represented Citigroup Inc.; Citibank N.A.; Citigroup Alternative Investments LLC; and Falcon Strategies Two LLC in seven causes of action based, among other things, on the allegations that the Falcon Fund was more heavily invested in subprime mortgage-backed securities than disclosed.

### Financial Guaranty Insurance Company brings fraud claims against IKB in connection with US$1.875 billion liquidity support transaction
Jones Day represented Financial Guaranty Insurance Company ("FGIC") in an action in New York State Supreme Court against IKB and its affiliates (the "Havenrock Action").

### Rediff.com India defends securities fraud class action lawsuit
Jones Day represented Rediff.com and certain of its officers and directors in a securities fraud class action lawsuit alleging violations of the 1933 and 1934 Acts in connection with brokerage commissions allegedly earned by the underwriters on Rediff's ADS offering in the U.S. (the "IPO Laddering" litigation).

### Dana Corporation obtains Global Settlement and creates VEBA trusts for retiree health care benefits
Jones Day successfully represented Dana Corporation in obtaining a series of settlements to eliminate an enormous accumulated liability for health and life insurance benefits for retirees from its unionized and nonunion workforces, and to modify its collective bargaining agreements with active employees, allowing Dana to compete in the troubled auto industry upon emergence from bankruptcy.

### Financial Guaranty Insurance Company completes reinsurance transaction with MBIA Insurance
Jones Day advised Financial Guaranty Insurance Company (FGIC), a leading national mono-line financial guaranty assurance company, in a transaction in which MBIA Insurance Corporation (MBIA), a subsidiary of MBIA Inc. and another leading national mono-line financial guaranty assurance company, reinsured FGIC's risk under financial guaranty policies covering $166 billion in par of public finance obligations.

### Royal Bank of Scotland defends Interpleader action filed by LaSalle Bank relating to hybrid CDO
Jones Day is defending The Royal Bank of Scotland plc ("RBS") in an Interpleader action filed by LaSalle bank, as trustee for a hybrid CDO of ABS, Stack 2002-2 Ltd.

### Deutsche Bank defends securities fraud action
Jones Day represented Deutsche Bank AG in a securities fraud class action brought by holders of equity and debt securities issued by Parmalat and its subsidiaries.

### Dennis Publishing completes sale to Quadrangle Capital
Jones Day advised Dennis Publishing, Inc., one of the world's leading independent publishers, in connection with its sale to Quadrangle Capital Partners II LP, a private equity fund that specializes in the media and communications industries.

### Reader's Digest completes $2.0 billion sale to Ripplewood investor group
Jones Day advised The Reader's Digest Association, Inc. in its $2.4 billion acquisition by an investor group led by Ripplewood Holdings LLC.

### **PUBLICATIONS**

D.C. Circuit's Invalidation of NLRB Appointments May Affect the CFPB
January 2013



## Jayant W. Tambe

English Courts Dismiss Interest Rate Swap Misselling Claim
January 2013

Jones Day Participates in CFPB's Project Catalyst Launch
December 2012

SEC Lifts Ban on Use of Derivatives by Actively Managed Exchange Traded Funds
December 2012

FINRA Issues Investor Alert Regarding Risks of Exchange-Traded Notes
July 2012

They Can't Do That, Can They? Constitutional Limitations on the Seizure of Underwater Mortgages
June 2012

Shelter from a Storm: Will Greek Elections Halt a Euro Breakup?
June 2012

The CFPB's Study on Arbitration Clauses: The First Step to Unraveling *Concepcion* in Consumer Transactions?
April 2012

The Fat Tail Reporter
Spring 2012

FDIC Failed Bank Director and Officer Claims – Recent Court Decisions Better Define The Landscape
March 2012

CFPB Initiates Inquiry, Requests Information Regarding Overdraft Practices
March 2012

CFPB Defines Larger Participant Standard for Debt Collectors and Consumer Credit Reporting Agencies
February 2012

CFPB and FTC Agree to Coordinate Enforcement and Regulatory Efforts
January 2012

New York's Highest Court Decides Important Martin Act Preemption Question
January 2012

Supreme Court's Arbitration Opinion in *CompuCredit Corp.* Underscores Importance of CFPB's Upcoming Review of Arbitration Clauses
January 2012

Impact of President Obama's Appointment of Richard Cordray as Director of Consumer Financial Protection Bureau
January 2012

Effectively Managing Increased Litigation and Enforcement
2012

The Department of Financial Services: New York's Newest Financial Regulator
December 2011

*CompuCredit Corp. v. Greenwood*: The Supreme Court Revisits Binding Arbitration Clauses in the Consumer Finance Context
October 2011



CFPB Releases Investigation and Adjudication Rules—September 26, 2011 Comment Deadline
August 2011

CFPB Announces Examination Process for Large Banks Begins July 21
July 2011

CFPB's Non-Bank Supervision Authority: Is Your Company a Larger Participant?
July 2011

CFPB Identifies Preliminary List of Transferred Rules
June 2011

Federal Reserve Board Proposal for Ability to Repay Regulation Opens Comment Period Through July 22, 2011
May 2011

Does Dodd-Frank Provide the Seeds to Unravel *Concepcion* in Consumer Financing Transactions?
April 2011

OCC Reaches Settlement with Bank Mortgage Servicers
April 2011

Cost-Benefit Consideration in Regulating Debt Protection Products
April 2011

Consumer Financial Protection Bureau's Newly Established Supervisory and Enforcement Authorities Require Senate-Confirmed Director
February 2011

Federal Reserve Board Yields to the Consumer Financial Protection Bureau on Proposed Mortgage Disclosure Rules
February 2011

Supreme Court Defers to Federal Reserve in Declining to Read 2009 Credit CARD Act Policies into Pre-Act Notices
February 2011

U.S. Treasury's New Consumer Inquiry and Complaint Database: How Will It Affect Civil Litigation?
January 2011

Consumer Financial Protection Bureau's Memorandum of Understanding Is a First Step Toward Efficiency
January 2011

Federal Reserve Board Revises Mortgage Disclosure Requirements Under the Mortgage Disclosure Improvement Act of 2008
January 2011

Consumer Financial Protection Bureau Identifies Initial Priorities and Appoints Head of Enforcement
December 2010

An Overview of Chapter 9 of the Bankruptcy Code: Municipal Debt Adjustments
August 2010

Commercial Real Estate CDO Litigation: The Credit Crisis' Next Wave?
April 2009

Possible Challenges to Retroactive Restrictions on Executive Compensation
March 2009



Evaluating Counterparty Risk: Whom Can You Trust?
October 2008

U.S. Bankruptcy Court Denies Failed Hedge Funds' Request for Chapter 15 Recognition
October 2007

U.S. Bankruptcy Court Denies Failed Hedge Funds' Request for Chapter 15 Recognition
September/October 2007

U.S. Won't Rubber Stamp Hedge Funds Under Ch. 15, *Bankruptcy Law* 360
September 6, 2007

Collateral Damage: Litigation Involving Collateralized Debt Obligations, *Practice Perspectives: Securities and Shareholder Litigation & SEC Enforcement*
Spring 2007

Electronic Discovery Emerges as Key Corporate Compliance Issue, *Washington Legal Foundation*
August 9, 2002

## SPEAKING ENGAGEMENTS

Decisions Impacting Financial Institutions
October 19, 2011

Credit Default Swaps - Recent Developments (View webcast here)
October 2, 2009
Webcast

CDO Litigation Reaching a Crucial Stage (View the webcast here)
June 10, 2009
Webcast

The Obama Presidency: The Impact of Changing U.S. Policies on Asian Business and The Global Economy
February 27, 2009
Tokyo

The Subprime Crisis: Restructuring in the Financial Sector and Securities Litigation in the United States and Europe
November 18, 2008
Frankfurt

Recent Trends in CDO and Derivative Litigation, NYSBA Derivatives and Structured Products Law Committee
Presentation notes - PDF
March 18, 2008
New York, New York

American and English Perspectives on CDO Litigation, In-House Legal and Banking Professionals, Multiple Global Investment Banks
Presentation notes - PDF
March 11-14, 2008
London, England

The Future of the CDO, panelist, IQPC Subprime Conference
February 26-27, 2008
New York, New York



Examining Litigation Attacks on the Typical CDO Structure, 3d Annual IQPC Securities Litigation Conference
November 6, 2007
New York, New York

Evaluating the Risks of CDO Litigation, Global Investment Bank
September 11, 2007
New York, New York

Recent Developments in CDO and Derivatives Litigation, Chief Legal Officers Global Investment Bank
June 20, 2007
New York, New York

CDO Litigation at the SIFMA CDO Legal Roundtable
May 22, 2007
New York City, New York

Developments in the Law on Attorney-Client Privilege and Work Product Protection
May 21, 2007
Newport, Rhode Island

Current Issues Concerning the In-House Privilege, In-House Legal and Compliance Staff, Fortune 500 Company
May 21, 2007
Newport, Rhode Island

Derivatives and CDO Litigation, ACI Conference on Counterparty Relationship Documents for Derivatives and Synthetic CDOs
April 30, 2007
New York City, New York

CDO and Derivatives Litigation, In-House Legal and Banking Professionals, Global Investment Bank
December 12, 2006
New York City, New York

Scheme Liability under Federal Securities Law
November 16, 2006
Webinar

Effectiveness of Disclaimers of Reliance in Derivatives and CDO Documentation, In-House Legal and Banking Professionals, Global Investment Bank
November 13, 2006
New York City, New York

CDO and Derivatives Litigation at the Fifth Annual Credit Conference of IXIS Capital Markets
October 10, 2006
Montreal, Canada

United States Securities Litigation
October 2005
Beijing, China

Recent Developments in Derivatives Litigation
June 2005
New York, New York



Recent Developments in CDO and Derivatives Litigation
July 2005
Hong Kong

Document Retention and E-Discovery
September 22-23, 2004
New York, New York

Practical Issues in Electronic Document Retention and Discovery
New York, New York



JONES DAY®

**EXHIBIT B**

*uo 28.77753   Acct/57846*
*1000 - 350001 ~ 000000 ~ 628500 ~ 1322V ~ 000000 ~ 000*

# JONES DAY

51 LOUISIANA AVENUE, N.W.
WASHINGTON, D.C. 20001.2113

STEPHEN J. BROGAN
MANAGING PARTNER

TELEPHONE: +1.202.879.3939
FACSIMILE: +1.202.626.1700
WRITER'S DIRECT NUMBER:
202.879.3926

CONFIDENTIAL AND PRIVILEGED
Not subject to disclosure under the Freedom of Information Act

June 14, 2013

VIA OVERNIGHT DELIVERY
AND ELECTRONIC MAIL

Kevyn D. Orr
Emergency Manager
Coleman A. Young Municipal Center
2 Woodward Avenue, Suite 1126
Detroit, Michigan 48226

Re: Revised Terms of Employment of Jones Day

Dear Mr. Orr:

This letter confirms our discussions concerning the revised scope, terms, and conditions of our engagement by the City of Detroit (the "City" or "you") in connection with your debt restructuring efforts, as well as certain other related and unrelated matters, including its preparation for the possible commencement, administration, and completion of a case under chapter 9 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (a "Bankruptcy Case"). This letter amends, restates, and supersedes: (a) our engagement letter with the City, dated March 20, 2013 (the "Original Engagement Letter"); and (b) our Contract for Professional Legal Services with the City (Contract No. 2877753) entered into in conjunction with the Engagement Letter in April 2013 (the "Professional Services Contract"). Except as otherwise expressly provided herein, the Original Engagement Letter and the Professional Services Contract shall remain in effect for the period March 15, 2013 through June 30, 2013, and this Engagement Letter shall govern thereafter.

Our engagement takes account of, and will be conducted in accord with, the actions of the State of Michigan under Michigan Public Act 436 of 2012 ("PA 436"), and the attendant allocation of responsibilities and powers to Kevyn D. Orr in his role as the duly appointed and acting emergency manager for the City under PA 436 (the "Emergency Manager").

Thank you for retaining Jones Day (the "Firm" or "we") in this engagement and for your consideration and cooperation concerning the matters covered in this letter.

ALKHOBAR • ATLANTA • BEIJING • BOSTON • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DUBAI
FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID • MEXICO CITY
MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH • RIYADH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

1.    Scope of Engagement and Client Relationship

We understand that it is the preference of the City to restructure its existing debt and other financial obligations in such a way as to avoid the filing of a Bankruptcy Case, if possible. We also understand that the City is prepared to file a Bankruptcy Case if (a) the Emergency Manager determines that no reasonable alternative to rectifying the financial emergency of the City exists; and (b) upon recommendation of the Emergency Manager to the Governor of the State of Michigan, the Governor approves and authorizes a bankruptcy filing, consistent with PA 436.

Jones Day will serve as lead counsel in all aspects of the City's restructuring efforts (whether in-court or out-of-court) and the implementation of the Emergency Manager's rights, powers and duties under PA 436. For the avoidance of doubt, this work includes, as applicable, both the Core Restructuring Work and the non-Core Restructuring Work identified in the Original Engagement Letter, and any other related activities requested by the City.

Any new or expanded engagement beyond that described above will require our agreement. In addition, our client hereunder is, and we have entered into an attorney-client relationship in this engagement only with, the City. Any representation of any person or entity other than the City, such as any affiliate, officer, official, or employee of the City or any other public body, will require our agreement. We understand that you have advised such other parties that our representation is only of the City.

In performing our services hereunder, we will report to and take direction from the Emergency Manager (or his designee) during his tenure. If at any point an Emergency Manager is not in office, we will report to and take direction from the Mayor of the City (or his designee).

2.    Staffing

I will have overall responsibility for this engagement, and David Heiman will lead our team of lawyers under my direction. Other partners in the core restructuring team will include Bruce Bennett, Heather Lennox, Jeffrey Ellman, and Corinne Ball. This restructuring group will be assisted by such other lawyers and service personnel as appropriate from time to time to provide high quality services in a cost-efficient manner. As further described in Section 4 below, we will work closely with the Emergency Manager (or his designee) during his tenure to coordinate on these matters.

3.    Potentially Adverse Representations or Conflicts of Interest; Advance Waiver

The City is a large and complex enterprise with many commercial and other relationships. Similarly, Jones Day is a large firm that represents and in the future will represent many other clients, including large financial institutions. Some of Jones Day's other clients may have, or develop, interests adverse to the City. It is even possible that, during the time we are working for you, an existing or future client may seek to engage us in connection with an actual or potential transaction or pending or potential litigation or other dispute resolution proceeding in

which such client's interests are or potentially may become adverse to the City's interests (although not on matters directly related to our engagement hereunder). If any such circumstance should arise, Jones Day will consult with the City on the best means to address that matter. For the avoidance of doubt, Jones Day will not represent any person or entity in any matter adverse to the City with respect to the matters subject to the scope of this engagement.

By executing this letter, we also request that the City confirm that (a) no engagement that we have undertaken or may undertake on behalf of the City will be asserted by the City either as a conflict of interest with respect to, or as a basis to preclude, challenge, or otherwise disqualify Jones Day from, any current or future representation of any client in any matter, including, without limitation, any representations in negotiations, transactions, counseling, or litigation adverse to the City, as long as that other matter is not substantially related to any of our then existing engagements on behalf of the City; (b) the City hereby waives any conflict of interest that exists or might be asserted to exist and any other basis that might be asserted to preclude, challenge, or otherwise disqualify Jones Day in any representation of any other client with respect to any such matter; (c) the City has been advised by Jones Day, and has had the opportunity to consult with other counsel, with respect to the terms and conditions of these provisions and its prospective waiver; (d) the City's consent to these provisions is both voluntary and fully informed; and (e) the City intends for this consent to be effective and fully enforceable, and to be relied upon by Jones Day. In addition, Jones Day's representation of the City does not constitute an undertaking by Jones Day to commence litigation against any financial institution.

Please also note that the City's restructuring (including any potential Bankruptcy Case) involves numerous interested parties. We will promptly inform the City of any client relationships that may raise conflict concerns as such matters are identified over the course of our engagement. If a future conflict arises, we will discuss the matter with the City to determine how best to proceed, including the possibility of obtaining appropriate waivers. If necessary or appropriate, after consultation, the City will use separate conflicts counsel in specific matters, and the Firm will not participate in those matters.

Without limiting the generality of the foregoing, this letter also confirms that we have informed you that Jones Day represents certain entities related to UBS AG in matters unrelated to the City or this engagement; Jones Day also represents Bank of America Merrill Lynch ("BAML"), as well as entities related to BAML, in matters unrelated to the City or this engagement. UBS AG and BAML are parties to certain derivatives transactions with the City. You hereby consent to our representation of the City adverse to BAML notwithstanding our client relationship with BAML, and you understand that the Firm represents certain entities related to UBS AG. In this regard, we have obtained BAML's waiver to represent the City in negotiations adverse to BAML relating to the derivative transactions with the City. You further acknowledge that, absent further waiver of BAML and the City, Jones Day will not be in a position to represent the City in any litigation between the City and BAML. If any such litigation is initiated, and in the absence of a further waiver, the City will use other counsel, and Jones Day will not be involved in such litigation on behalf of any party.

### 4. Compensation and Disbursements

Our fees are determined by the time devoted by each lawyer or other service provider involved in the engagement and the hourly billing rates assigned to each such person, subject to the special provisions described below. Our hourly rates are revised periodically, typically effective January 1 of each year, and we reserve the right to revise them from time to time during the course of our representation of the City. We submit periodic billing statements (generally monthly or, depending on the circumstances, more frequently), which are due and payable upon presentation subject to the terms below. For the avoidance of doubt, as of July 1, 2013, the Initial Monthly Fee Cap (as defined in the Original Engagement Letter) shall no longer apply.

We acknowledge the special circumstances of this important engagement, including the unique complexities of the issues; the unprecedented nature of the City's restructuring; the fundamental impact of the outcome on the City, its residents and other interested parties; and the need for effective and efficient legal services. In light of the foregoing, we have agreed to the following additional terms of our engagement to assist in containing costs:

- We will maintain a list of approved timekeepers who are permitted to bill time for work on behalf of the City. The approved timekeeper list is intended to reflect lean staffing to provide the required services, while minimizing the cost to the City to the extent practicable. The approved timekeeper list, and other staffing decisions, will be updated over time in coordination with (and with the approval of) the Emergency Manager or his designee.

- We will endeavor to utilize appropriate lawyers and paraprofessionals at the lowest rates for the work needed. These staffing decisions will be made based on our professional judgment, in consultation with the Emergency Manager.

- As we have to date, we will carefully review each bill and implement discretionary reductions for any services that we determine were nonproductive, duplicative or inefficient, or otherwise should not be charged. To that end, consistent with our practice to date, we also agree not to charge the City for nonworking travel time.

- In addition to other write-offs, billable time will be subject to an across-the-board 10% reduction, which will be reflected in each invoice.

- The final billable amount of fees in each invoice (after write-offs and reductions) will be payable upon presentation, less a 10% holdback (the "Fee Holdback"). Within 45 days after the conclusion of each calendar quarter, the Emergency Manager will review the Firm's time charges for the prior quarter and in his discretion will direct the City to pay the Fee Holdback for that period (in whole or in part) to the extent that he determines that the total fees for the quarter were reasonable. For the avoidance of doubt, the first quarterly holdback period will be July 2013 through September 2013.

Unless we specifically agree, any fee estimate that we may provide is not a commitment to perform the services within a fixed time or for a fixed fee.

In addition to our fees, we expect our clients to defray certain costs and expenses incurred during our representation of them. A description of our Billing Policies for Disbursements and Charges is attached hereto. Please note that although our charges for non-cash costs incurred by the Firm reflect our good faith estimate of our actual, fully absorbed, out-of-pocket costs, those estimates may differ from our actual costs. Normally, disbursements and charges will be subject to reimbursement from the City in the regular billing cycle. In some circumstances, however, such as in the case of particularly large items, we may ask the City to pay these items directly or in advance.

The City acknowledges and agrees that the Firm is not acting as a federal contractor or subcontractor or as a federal grant recipient or subrecipient and that no federal funds will be used to make any payments to the Firm in connection with this engagement.

5.     Audit Letter Issues

We further want to advise you that, in responses to any of your requests to provide information to your auditors, our policy is to comply with the American Bar Association Statement of Policy Regarding Lawyers' Responses to Auditors' Requests for Information regarding the scope and content of such responses, except when such Policy is clearly inapplicable.

6.     Procedures upon Termination; Return of Documents; Intellectual Property

Unless previously terminated, our representation of the City will terminate upon our sending you our final statement for services rendered in this matter. In that case, or otherwise at your request, any papers and property sent by you to us will be returned to you. Our own files pertaining to the matter, including lawyer work product and administrative records, as well as document copies, will be retained by the Firm in accordance with our document retention policy. All documents retained by the Firm will be transmitted in the ordinary course to the person responsible for administering our records retention program. Subject to our obligations under applicable bar requirements, we reserve the right to destroy or otherwise dispose of any documents or other materials, including electronic versions, retained by us after the termination of the engagement.

All intellectual property and other know-how developed by us in connection with this engagement, including subject matter expertise, whether or not preserved in written or electronic form, may be retained by us and used in connection with engagements on behalf of other clients, so long as no confidential information relating to the City is thereby disclosed. Further, you hereby consent to the use of the City by the Firm in future Firm promotional materials.

7.   Governing Law

The laws of the State of Michigan, without regard to conflict of law rules, shall govern the interpretation of this agreement. Please sign and return to us the enclosed copy of this letter to confirm that it accurately reflects the revised scope, terms, and conditions with respect to this engagement. Once countersigned, the revised terms of our engagement will be effective as of July 1, 2013, as set forth herein. If you would like to discuss any of these matters, please do not hesitate to call me.

Sincerely,

Stephen J. Brogan

On behalf of the City of Detroit, the undersigned confirms that this letter accurately reflects the revised scope, terms, and conditions with respect to this engagement and that the undersigned's execution and delivery of this confirmation on behalf of the City of Detroit has been duly authorized by or on behalf the City of Detroit.

Dated: _____, 2013

Signature: _____
Kevyn D. Orr
Emergency Manager

Attachment

cc: Gov. Richard D. Snyder (w/ attachment)
    Edward Keelean, Esq. (w/ attachment)

# JONES DAY

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO 44114.1190
TELEPHONE: +1.216.586.3939 • FACSIMILE: +1.216.579.0212

JP533664:cas/2126342
258183-600003

July 17, 2013

Direct Number: (216) 586-7175
dgheiman@JonesDay.com

VIA E-MAIL

Kevyn D. Orr
Emergency Manager
Coleman A. Young Municipal Center
2 Woodward Avenue, Suite 1126
Detroit, MI 48226

Re:    Amendment to June 14, 2013 Letter of Revised Terms of Employment

Dear Mr. Orr:

This is to confirm our amendment to Paragraph 4 of Steve Brogan's June 14, 2013 letter to you setting forth the terms of our engagement by the City of Detroit (the "City") in connection with your debt restructuring efforts. The terms of the engagement are effective as of July 1, 2013. The fifth bullet point of Paragraph 4 is hereby amended to read as follows:

- The final billable amount of fees in each invoice (after write-offs and reductions) will be payable upon presentation, less a 10% holdback (the "Fee Holdback"). The Emergency Manager will review the Firm's charges for each month billed and in his discretion will direct the City to pay the Fee Holdback to the extent that he determines that the total fees for the relevant period were reasonable, as follows: for the period July 1, 2013 through March 31, 2014, payment is to be received by Jones Day no later than April 30, 2014; and for the period May 1, 2014 through August 31, 2014 (as your Emergency Manager term concludes several weeks thereafter), payment is to be received by Jones Day on or before September 15, 2014.

We understand that the terms of our engagement are now acceptable to you and that the June 14, 2013 letter from Mr. Brogan, as hereby amended, will be executed immediately by you.

Thank you.

Sincerely,

David G. Heiman

cc:    Stephen J. Brogan
Andy Dillon, State Treasurer

ALKHOBAR • AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES
MADRID • MEXICO CITY • MILAN • MOSCOW • MUNICH • NEW YORK • PARIS • PITTSBURGH • RIYADH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

13-53846-tjt    Doc 2298    Filed 12/23/13    Entered 12/23/13 19:15:41    Page 230 of 235

TocID: 403105
Page 7 of 7

**EXHIBIT C**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
-------------------------------------------------------x
                                            :
In re                                       :          Chapter 9
                                            :
CITY OF DETROIT, MICHIGAN,                  :          Case No. 13-53846
                                            :
                          Debtor.           :          Hon. Steven W. Rhodes
                                            :
                                            :
-------------------------------------------------------x
```

## <u>DECLARATION OF ROBERT S. HERTZBERG</u>

I declare the following to be true under penalty of perjury:

       1.    This declaration is being submitted in support of the City of Detroit's Objection To Interested Party David Sole's Expedited Motion, Due To Conflict Of Interest Pursuant To MRPC 1.7, To Dismiss Debtor City Of Detroit's Motion To Approve Forbearance Agreement And To Dismiss At Least In Part Debtor's Motion For A Final Order Approving Post-Petition Financing, Granting Liens And Providing Superpriority Claim Status And Modifying Automatic Stay [Docket No. 1931].

       2.    I am a partner in the law firm of Pepper Hamilton LLP ("Pepper Hamilton") and co-chair of Pepper Hamilton's Corporate Restructuring and Bankruptcy Practice Group.

3.     The facts set forth in this Declaration are based upon my personal knowledge or information supplied to me by other attorneys at Pepper Hamilton in the course of my duties leading Pepper Hamilton's engagement with the City of Detroit. If I were called upon to testify, I could and would testify competently as to the facts set forth herein.

4.     On or about June 10, 2013, I was contacted by Jones Day regarding the City of Detroit's need for conflicts counsel to evaluate the City's potential claims against the counterparties to certain swap transactions entered into by the City's Service Corporations in 2005 and 2006. Jones Day indicated that the parties adverse to the City could include UBS AG, SBS Financial Products Company, LLC and Merrill Lynch Capital Services, Inc., a part of Bank of America, NA (collectively, the "Swaps Counterparties").

5.     I caused the names of the Swaps Counterparties to be submitted for review under the conflict check system maintained by Pepper Hamilton, and determined that Pepper Hamilton would be able to represent the City in litigation against the Swaps Counterparties.

6.     On or about June 18, 2013, Pepper Hamilton entered into an engagement letter with the City to represent the City of Detroit as conflicts counsel. Pepper Hamilton continues to advise the City in this regard.

7. Jones Day provided Pepper Hamilton with the documentation for the 2005 and 2006 Swap Agreements and the 2009 Collateral Agreement, as well as certain memoranda relating to the Pension Obligation Certificates of Participation and the swaps transactions.

8. Pepper Hamilton conducted its own research into the facts surrounding both the Swap Agreements and the Collateral Agreement, as well as facts and allegations concerning the conduct of the Swaps Counterparties with respect to LIBOR manipulation. We reviewed and considered the closing binders for the transactions; Detroit City Council minutes, to the extent available, regarding interest rate swaps; articles and other documents regarding the investigation of and claims against numerous banks, relating to LIBOR manipulation, by regulatory and legal authorities; and allegations in the complaints filed by (among others) the City of Baltimore, San Mateo County and other municipalities, now consolidated in a multi-district litigation in the Southern District of New York.

9. Pepper Hamilton then independently evaluated the City's potential claims against the Swaps Counterparties. Pepper Hamilton considered Jones Day's work product and additionally developed and researched its own theories regarding claims that the City might pursue. Pepper Hamilton considered, among other things, claims for voidness of the agreements based on lack of

authority, illegality or unconscionability; fraudulent conveyance; fraud; and mis-selling.

10. Pepper Hamilton expressly considered the strengths and weaknesses of the City's potential claims and weighed those against the costs and risks involved in litigation, particularly the risk of losing access to the casino revenues.

11. I conveyed the results of our research and analysis to Jones Day.

12. In June 2013, Pepper Hamilton drafted a complaint against the Swaps Counterparties. It was my expectation that the complaint would be filed if the City was unable to reach a settlement agreement with the Swaps Counterparties.

I DECLARE UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. § 1746 THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: December 23, 2013

_____
Robert S. Hertzberg, Esq.