-------------------------------------------------------------------x

In re                                             :
                                                  :
                                                  :   Chapter 9
                                                  :
CITY OF DETROIT, MICHIGAN,                         :
                                                  :   Case No. 13-53846
                          Debtor.                 :
                                                  :   Hon. Stephen W. Rhodes
                                                  :

-------------------------------------------------------------------x

**OBJECTION OF THE OFFICIAL COMMITTEE OF RETIREES
TO ELIGIBILITY OF THE CITY OF DETROIT, MICHIGAN TO
<u>BE A DEBTOR UNDER CHAPTER 9 OF THE BANKRUPTCY CODE</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 2

I.    PA 436 AND THE GOVERNOR'S APPOINTMENT OF THE EMERGENCY
    MANAGER ........................................................................................................................ 2

II.   THE EMERGENCY MANAGER MARCHES DETROIT TOWARDS CHAPTER 9
    INTENDING TO IMPAIR PENSIONS ............................................................................ 4

III.  SEVERAL CURRENT AND FORMER EMPLOYEES OF THE CITY SEEK
    PROTECTION FOR THEIR RETIREMENT COMPENSATION BENEFITS IN
    MICHIGAN COURTS ....................................................................................................... 7

IV.  THE EMERGENCY MANAGER'S COMMENCEMENT OF CHAPTER 9
    PROCEEDINGS. ................................................................................................................ 9

V.   THE CITY'S ELIGIBILITY MOTION ........................................................................... 9

LEGAL ARGUMENT ............................................................................................................. 13

I.    ACCEPTANCE OF THE CITY'S AUTHORIZATION TO FILE ITS PETITION
    WOULD RENDER CHAPTER 9 UNCONSTITUTIONAL .......................................... 13

       A.     If Chapter 9 Permits the City to Ignore the Pension Clause, Chapter 9 Grants
             Authorization not Available Under the Michigan Constitution .......................... 13

       B.     If Chapter 9 Permits Michigan's Executive Branch to Consent to a Limitation on
             its Sovereignty not Authorized by its People, the Federal Statute is
             Unconstitutional ................................................................................................... 18

II.   IT IS NOT NECESSARY FOR THE COURT TO REVIEW THE
    CONSTIUTIONALITY OF CHAPTER 9 BECAUSE THE EMERGENCY
    MANAGER'S PETITION FOR THE CITY OF DETROIT DOES NOT MEET THE
    BANKRUPTCY CODE REQUIREMENTS FOR ELIGIBILITY .................................. 23

       A.     The Burden is on the Debtors to Show Compliance With Sections 109(c) and
             921(c) ................................................................................................................... 24

       B.     The Authorizations Relied Upon by the Emergency Manager Were Flawed Under
             the Michigan Constitution ................................................................................... 27

1.      PA 436 is Squarely at Odds With the Pension Clause of Michigan's Constitution and Therefore Unconstitutional............................................ 27

2.      The Conflict Between PA 436 and the Pension Clause of the Michigan Constitution Cannot be Reconciled ......................................................... 28

       a.      The Attorney General's Position Should not be Adopted ............ 28

       b.      The City of Detroit Cannot Rescue the Unconditional Authorizations.............................................................................. 29

C.      The Governor's Authorization Pursuant to PA 436 is not Valid and Void *Ab Initio* Under Michigan's Constitution, and so is That of the Emergency Manager........ 31

D.      The City Cannot Satisfy Bankruptcy Code 109(c)(5) and is Subject to Dismissal Under Bankruptcy Code 921(c) .......................................................... 35

CONCLUSION.................................................................................................... 38

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*Ass'n. of Professional and Technical Employees v. City of Detroit,*
   398 N.W.2d 436 (Mich. 1986) ................................................................15

*Attorney Gen ex rel Eaves v. State Bridge Com.,*
   269 N.W. 388 (Mich. 1936) .....................................................................34

*Baltimore Teachers Union v. Mayor of Baltimore,*
   6 F.3d 1012 (4th Cir. 1993) ....................................................................16

*Bd. Of Trustees of Policemen's and Firemen's Retirement Fund of City of Gadsen v. Cary,*
   373 So.2d 841 (Ala. 1979) .....................................................................16

*Bond v. United States,*
   131 S.Ct. 2355 (2011) .......................................................................20, 21

*City of Pontiac Retired Employees Ass'n v. Schimmel, et al.,*
   No. 12-2087, 2013 WL 4038582 (6th Cir. Aug. 9, 2013) ............................. passim

*Dullam v. Willson,*
   19 N.W. 112 (Mich. 1984) ......................................................................33

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.,*
   459 U.S. 400 (1983) .........................................................................15,16

*Fisher Sand and Gravel Co. v. Neal A. Sweebe, Inc.,*
   No. 143374, 2013 WL 3924324 (Mich. July 30, 2013) .................................29

*Flowers, et al. v. Snyder, et al.,*
   Case No. 13-729-CZ (Ingham Cty. Cir.Ct. 2013) ........................................7

*Flowers et al. v. State of Michigan et al.,*
   Case No. 13-374-C2 (Ingham Cty. Cir.Ct. 2013) .............................8, 9, 11, 23

*Webster, et al. v. Michigan, et al.,*
   Case No. 13-734-CZ (Ingham Cty. Cir.Ct. 2013) ...................................8, 11

*In re City of Bridgeport,*
   129 B.R. 332 (Bankr. D. Conn. 1991) ................................................23, 24

*In re City of Cent. Falls, R.I.,*
   468 B.R. 36 (Bankr. D.R.I. 2012) ............................................................26

*In re City of Colorado Springs Spring Creek General Imp. Dist.*,
177 B.R. 684 (Bankr.D.Colo. 1995) ...................................................25

*In re City of Harrisburg*,
465 B.R. 744 (Bankr. M.D. Pa. 2011) ...........................................23, 26

*In re City of Stockton, Cal.*,
475 B.R. 720 (Bankr. E.D. Cal. 2012) .............................................25

*In re City of Stockton, Cal.*,
493 B.R. 772 (Bankr. E.D. Cal. 2013) .............................................36

*In re City of Vallejo*,
403 B.R. 72 (Bankr. E.D. Cal. 2009) ...............................................25

*In re County of Orange*,
183 B.R. 594 (Bankr. C.D. Cal. 1995) .............................................35

*In re Enrolled Senate Bill 1269 (Advisory Opinion re Constitutionality of 1972 PA 258)*,
209 N.W.2d 200 (Mich. 1973) .....................................................4, 28

*In re McCurtain Mun. Auth.*,
2007 WL 4287604 (Bankr. E.D. Okla. Dec. 4, 2007) ...........................34

*In re New York City Off-Track Betting Corp.*,
427 B.R. 256 (Bankr. S.D.N.Y. 2010) ...............................................25

*In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*,
806 N.W.2d 683 (Mich. 2011) .......................................................28

*In re Suffolk Regional Off-Track Betting Corp.*,
462 B.R. 397 (Bankr. E.D.N.Y. 2011) .........................................25, 34

*In re Sullivan County Regional Refuse Disposal District*,
25 B.R. 60 (Bankr. D. N.H. 1994) ...................................................35

*In re Valley Health System*,
383 B.R. 156 (Bankr. C.D. Cal. 2008) .............................................25

*In re Villages at Castle Rock Metro Dist. No.*
4, 145 B.R. 76 (Bankr. D. Colo. 1990) .............................................35

*Int'l Ass'n of Firefighters, Local 1186 v. City of Vallejo (In re City of Vallejo)*
408 B.R. 280 (9th Cir. B.A.P. 2009) ...........................................25, 35

*Kim v. JPMorgan Chase Bank, N.A.*,
825 N.W.2d 329 (Mich. 2012) .......................................................33

ii

*Koontz v. Ameritech Services, Inc.,*
  645 N.W.2d 34 (Mich. 2002)...............................................................15

*Maracich v. Spears,*
  133 S.Ct. 2191 (2013)........................................................................15

*Marbury v. Madison,*
  2 L.Ed. 60 (1803)..............................................................................15

*McDougall v. Schanz,*
  597 N.W.2d 148 (Mich. 1999)............................................................28

*McKane v. City of Lansing*,
  1998 U.S. App. LEXIS 649 (6th Cir. Jan. 14, 1998) ..........................34

*Musselman v. Governor of Mich.*,
  533 N.W.2d 237 (Mich. 1995)..........................................32, 33, 34, 35

*New York v. United States,*
  505 U.S. 144 (1992)......................................................................19, 20

*Olson v. Cory,*
  636 P.2d 532 (Cal. 1980)...................................................................16

*Patterson v. Shumate*,
  504 U.S. 753 (1992)...........................................................................25

*People ex rel Metevier v. Therrien,*
  45 N.W. 78 (Mich. 1890).....................................................................31

*People v. Perkins,*
  703 N.W.2d 448 (Mich. 2005).............................................................15

*Printz v. United States,*
  521 U.S. 898 (1997).....................................................................20, 21

*Rodriguez de Quijas v. Shearson/American Express, Inc.,*
  490 US 477 (1989)..............................................................................19

*Romein v. General Motors Corp.,*
  462 N.W.2d 555 (Mich. 1990).............................................................15

*Seitz v. Probate Judges Retirement System,*
  474 N.W. 2d 125 (Mich. 1991)...........................................................28

*Sittler v. Bd. of Control*,
  53 N.W.2d 681 (Mich. 1952)...............................................................31

iii

*Smith v. Michigan,*
    410 N.W.2d 749 (Mich. 1987)........................................................................30

*Subway-Surface Supervisors Ass'n. v. New York Transit Authority,*
    375 N.E.2d 384 (N.Y. 1978).........................................................................16

*Sun Valley Foods Co. v. Ward,*
    460 Mich. 230 (Mich. 1999).........................................................................28

*The General Retirement Sys. of the City of Detroit, et al v. Orr et al.,*
    Case No 13-768-CZ (Ingham Cty. Cir.Ct. 2013)............................................7

*Twp. of Dearborn v. Dearborn Twp. Clerk,*
    55 N.W.2d 201 (Mich. 1952).......................................................................31

*United States v. Bekins,*
    304 U.S. 27 (1938)............................................................................. passim

*United States v. Felts,*
    674 F.3d 599 (6th Cir. 2012) .......................................................................21

## STATUTES

11 U.S.C. § 101...............................................................................................1

11 U.S.C. § 109..................................................................................... passim

11 U.S.C. § 901.............................................................................................13

11 U.S.C. § 921..................................................................................... passim

11 U.S.C. § 922.............................................................................................10

11 U.S.C. § 1102...........................................................................................10

18 U.S.C. § 157...............................................................................................9

29 U.S.C. § 1302.............................................................................................7

29 U.S.C. § 1321.............................................................................................7

M.C.L. § 15.151............................................................................................32

M.C.L. § 141.1201..........................................................................................2

M.C.L. §§ 141.1501........................................................................................3

M.C.L. §§ 141.1501-1531...........................................................................3, 27

M.C.L. §141.1541 ................................................................................................ passim

M.C.L. § 141.1549 ...............................................................................................3

M.C.L. § 141.1551 .............................................................................................6, 28

M.C.L. § 141.1552 ...............................................................................................28

M.C.L. § 141.1553 ...............................................................................................28

M.C.L. § 141.1558 .............................................................................................4, 28

M.C.L. § 141.1566 ...............................................................................................4

M.C.L. § 168.64 ...................................................................................................31

ALA. CONST. art. I, § 22 ........................................................................................17

CAL. CONST. art. I, § 9 ..........................................................................................16

MICH. CONST. art. I, § 10 ......................................................................................13

MICH. CONST. art. V, § 8 .......................................................................................31

MICH. CONST. art. V, § 20 ...................................................................................31, 32

MICH. CONST. art. IX, § 24 .............................................................................. passim

MICH. CONST. art. XI, § 1 ..........................................................................2, 3, 30, 32

U.S. CONST.  art. I, § 10 ........................................................................................14

U.S. CONST.  amend. X ..........................................................................................13

Brady Handgun Violence Prevention Act, Pub. L. 103-159, 107 Stat. 1536 ................................19

**OTHER AUTHORITIES**

Mayer, *State Sovereignty, State Bankruptcy, and a Reconsideration of Chapter 9* Amer.
Bank. Law Journal 363 (Fall 2011) .....................................................................19

2 COLLIER ON BANKRUPTCY ¶ 921.04[2] ...................................................................25

The Official Committee of Retirees ("Committee") objects to and contests the eligibility of the City of Detroit, Michigan (the "City") to be a debtor under Chapter 9 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

## PRELIMINARY STATEMENT

1. The Retiree Committee of the City of Detroit was appointed by the United States Trustee on August 23, 2013. Included among the persons represented by the Committee are individuals who are more than 100 years old who completed their service with the City (or their spouses did) more than 35 years ago. Such individuals and many others between the ages of 65 and 100 are not eligible for social security benefits, rendering their entire economic existence dependent upon retirement compensation promised by the City.

2. Following a declaration of financial emergency on March 28, 2013 by the Governor of the State of Michigan, the State appointed Kevyn Orr as the receiver for the City. Shortly thereafter, the Governor denominated Mr. Orr the Emergency Manger pursuant to PA 436, M.C.L. §141.1541, *et seq*. From the record available to the Committee, the appointment of the Emergency Manager was part of a plan developed well before his appointment to unilaterally alter, reduce or eliminate retirement compensation benefits promised by the City. Acting under the assertion of improving the City's much deteriorated health and safety, on July 18, 2013 the Emergency Manager took a further step in the plan to alter, reduce or eliminate promised retirement compensation benefits and authorized the filing of a petition initiating a case under Chapter 9 of the United States Bankruptcy Code for the City of Detroit.

3. This Objection to Eligibility challenges the existence of the required authorization under 11 U.S.C. §109(c)(2) for the Chapter 9 petition as well as the existence of relevant factual findings necessary for a determination of eligibility under 11 U.S.C. §109(c)(5) and 11 U.S.C. § 921. To that extent, the Committee joins in the following objections: (i) The Michigan Counsel

25 of the American Federation of State and County and Municipal Employees, AFL-CIO and Subchapter 98, City of Detroit Retirees' Objection to the City of Detroit's Eligibility to Obtain Relief Under Chapter 9 of the Bankruptcy Code (Dkt. 505); (ii)  Objection of International Union, UAW to the City of Detroit, Michigan's Eligibility for an Order for Relief Under Chapter 9 of the Bankruptcy Code (Dkt. 506); (iii) Consolidated Objection of the Retiree Association Parties to Eligibility (Dkt. 497); (iv) Objection of the Retired Detroit Police Members Association to city of Detroit Chapter 9 Petition (Dkt. 520); and (v) the Objection of the Detroit Retirement Systems to the Eligibility of the City of Detroit, Michigan to be a Debtor Under Chapter 9 of the Bankruptcy Code  (Dkt. 519).  In addition, should the Court determine that such authorization can be found as a matter of state law, notwithstanding the proscriptions of the MICH. CONST. art IX, § 24 ( the "Pension Clause"), then Chapter 9 must be found to be unconstitutional as permitting acts in derogation of Michigan's sovereignty and the right of the people of Michigan to define and control the acts of their elected and appointed officials.

## **FACTUAL BACKGROUND**

## I.    **PA 436 AND THE GOVERNOR'S APPOINTMENT OF THE EMERGENCY MANAGER**

4.     On March 14, 2013, Governor Richard D. Synder appointed Kevyn D. Orr as the City's Emergency Financial Manager pursuant to Public Act 72 of 1990, the Local Government Fiscal Responsibility Act, M.C.L. § 141.1201, *et seq*.  At the time of the Emergency Manager's appointment, Mr. Orr sweared to the following oath, which was later filed with the Michigan Secretary of State:  "I do solemnly swear that I will support the Constitution of the United States *and the Constitution of this State*, and that I will faithfully discharge the duties of the office of Emergency Financial Manager – City of Detroit according to the best of my ability."  MICH.

CONST. art. XI, § 1 (emphasis added).[1]  On March 28, 2013, Mr. Orr automatically became emergency manager ("Emergency Manager") upon the effectiveness of Michigan's most recent [2] emergency manager law, Public Act 436, the Local Financial Stability and Choice Act, M.C.L. §141.1541, *et seq.* ("PA 436").

5.     PA 436  authorizes the governor of Michigan to appoint an emergency manager "to address a financial emergency within [a] local government." M.C.L. § 141.1549(1).  In such capacity, the emergency manager allegedly may "act for and in the place and stead" of the democratically elected Detroit Mayor and City Council.  M.C.L. § 141.1549(2).  An emergency manager is, therefore vested with "broad powers in receivership to rectify the financial emergency and to assure the fiscal accountability of the local government and the local government's capacity to provide or cause to be provided necessary governmental services essential to the public health, safety, and welfare."  M.C.L. § 141.1549(2).

6.     PA 436 authorizes a municipality to file a chapter 9 petition upon the recommendation of the emergency manager if, in his judgment, "no reasonable alternative to

---

[1]Governor Snyder was required to swear the same oath upon his appointment as Governor of the State of Michigan.  *See* MICH. CONST. art. XI § 1 (requiring oath of "[a]ll officers, legislative executive and judicial").

[2]In March 2011, Public Act 72, the "Local Government Fiscal Responsibility Act," was repealed and replaced with Public Act 4, the "Local Government and School District Fiscal Accountability Act."  M.C.L. §§ 141.1501 et seq.  "Public Act 4 is not Michigan's first law governing emergency managers, but it is the first legislation that allowed emergency managers to break collective bargaining agreements and to ignore retirement commitments." *See City of Pontiac Retired Employees Ass'n v. Schimmel, et al*., No. 12-2087, 2013 WL 4038582, *1-2 (6th Cir. Aug. 9, 2013) (citing M.C.L. §§ 141.1501-1531).  PA was rejected by voters in a referendum shortly after passage in March 2011.  *Id*. at *3-4.  "Apparently unaffected that the voters had just rejected Public Act 4, the Michigan Legislature enacted, and the Michigan Governor signed, Public Act 436. Public Act 436 largely reenacted the provisions of Public Act 4, the law that Michigan citizens had just revoked.  In enacting Public Act 436, the Michigan Legislature included a minor appropriation provision, apparently to stop Michigan voters from putting Public Act 436 to a referendum." *Id*. (citations omitted).  The Sixth Circuit's statement

rectifying the financial emergency of the local government which is in receivership exists" and the governor provides written approval. M.C.L. § 141.1566(1).[3] However, PA 436 permits the governor to "place contingencies on a local government in order to proceed under chapter 9." M.C.L. § 141.1558(1).

## II. THE EMERGENCY MANAGER MARCHES DETROIT TOWARDS CHAPTER 9 INTENDING TO IMPAIR PENSIONS

7.  Prior to his appointment, the Emergency Manager knew that "the new [emergency manager] law is a clear run around the prior initiative that was rejected by the voters in November" in an effort to terminate employee retirement benefits. *See* January 31, 2013 e-mail addressed from Kevyn Orr, Ex. 3 to Declaration of Steven Kreisberg (Dkt. 509).

8.  Shortly after his appointment, the Emergency Manager informed both Detroit's creditors and the media of his intent to modify pension benefits in a Chapter 9 proceeding. On May 12, 2013, during an interview with WWJ News radio, in discussing his anticipated course of action, the Emergency Manager stated:

---

raises a serious question as to the validity of PA 436, which is in fact so critical that the Committee is in the process of filing a separate motion to withdraw the reference.

[3]In its entirety, PA 436(18) provides:

> If, in the judgment of the emergency manager, no reasonable alternative to rectifying the financial emergency of the local government which is in receivership exists, then the emergency manager may recommend to the governor and state treasurer that the local government be authorized to proceed under chapter 9. If the governor approves of the recommendation, the governor shall inform the state treasurer and emergency manager in writing of the decision. Upon receipt of this written approval, the emergency manager is authorized to proceed under chapter 9. This section empowers the local government for which an emergency manager has been appointed to become a debtor under title 11 of the United States Code, 11 USC 101-1532, as required by section 109 of title 11 of the United States Code, 11 USC 109, and empowers the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9.

4

13-53846-swr Doc 2300-4 Filed 12/23/13 Entered 12/24/13 20:01:29 Page 12 of 78
13-53846-swr Doc 690-5 Filed 09/10/13 Entered 09/10/13 23:11:17 Page 12 of 47   399

> The public can comment, but it is under the statute, it is my [restructuring] plan and it's within my discretion and obligation to do it. This isn't a plebiscite, we are not, like, negotiating the terms of the plan. It's what I'm obligated to do.

Detroit EM Releases Financial Plan; City Exceeding Budget By $100M Annually, May 12, 2013, available at http://detroit.cbslocal.com/2013/05/12/kevin-orr-releases-financial-plan-for-city-of-detroit/.

9.      On June, 13, 2013, during an interview the Detroit Free Press, the Emergency Manager asserted his belief that accrued pension benefits could be impaired in a Chapter 9 proceeding:

> Q: You said in this report that you don't believe there is an obligation under our state constitution to pay pensions if the city can't afford it?
>
> A: The reason we said it that way is to quantify the bankruptcy question. We think federal supremacy trumps state law.

See Q & A with Kevyn Orr: Detroit's Emergency Manager Talks About City's Future, Detroit Free Press (June 14, 2013), available at

http://www.freep.com/article/20130616/OPINION05/306160052/kevyn-orrdetroit- emergency-manager-creditors-fiscal-crisis.[4]

10.      The following day, on June 14, 2013 the Emergency Manager presented his "Proposal for Creditors" (the "City Proposal"). See Proposal for Creditors, Ex. A to Declaration of Kevyn Orr (Dkt. 11). The City Proposal estimates the City's unfunded pension liabilities at $3.5 billion and provides that "claims for the underfunding will be exchanged for a pro-rata (relative to all unsecured claims) principal amount of new [Limited Recourse Participation]

---

[4] In its omnibus response to eligibility objections, the City asserts the remarkable position that separately protected pension benefits constitute a mere contract that can be abrogated under Chapter 9. This premise is both novel and a direct threat to various constitutional and legal concerns including federalism. These issues are so important that they warrant withdrawal.

Notes." *Id.* The City Proposal also notes that "[b]ecause the amounts realized on the underfunding claims will be substantially less than the underfunding amount, there *must be significant cuts in accrued, vested pension amounts for both active and currently retired persons*." *Id.* at 116 (emphasis added).[5] The Emergency Manager also proposes to modify the medical benefits of current retirees and to satisfy those claims as well with a pro-rata distribution of Notes. *Id.* Furthermore, the Emergency Manager did not provide for in his proposal the "timely deposit of required payments to the pension fund for the local government or in which the local government participates," M.C.L. § 141.1551, § 11 (1)(d). Indeed, the City Proposal provides that such payments "will not be made under the plan." Ex. A to Declaration of Kevyn Orr (Dkt. 11).

11. Thereafter, the Emergency Manager held "discussions" with certain large associations. These discussions appear to have been largely without any meaningful exchange of information. *See* July 2, 2013 from Steven Kreisberg to Brian Easterly, Ex. 8 to Declaration of Steven Kreisberg (Dkt. 509) (stating access to data room does not provide requested information necessary for "meaningful opportunity to engage in good faith negotiation on these issues. Missing is a "description of the proposed retiree health care plan that will rely upon Medicare Advantage and Exchange Marketplace under the Affordable Care Act and the basis of the estimated City cost of between $27.5 million and $40 million"); July 3, 2013 from Brian Easterly to Steven Kreisberg, Ex. 9 to Declaration of Steven Kreisberg (Dkt. 509) (describing July 10 meeting as a "discussion between the Emergency Managers advisers and a relatively small group

[5] This amount does not include more than $5 billion in health care and other obligations that the City claims constitute separate "OPEB." The Committee is just beginning its investigation but, based on information and belief, understands that the alleged "OPEB" may be intertwined with cash benefits, as to constitute, in this case, constitutionally protected pension.

of key stakeholders who may include, the GRS and its advisor only team, high level representatives of up to four (4) non uniform unions, and representatives from the Detroit Retired City Employees Association.").

12.      If the City Proposal is implemented it will have dire consequences for the City's retirees.  The protections of the Federal Retirement Income Security Act ("ERISA") apply only to private, not public workers.  *See* 29 U.S.C. § 1321(b)(2) ("This section does not apply to any plan . . . established and maintained for its employees . . . by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing . . . .").  The Pension Benefit Guaranty Corporation, which was established under ERISA, *see* 29 U.S.C. § 1302, to guarantee the pension obligations of failed private pension plans, will not protect the City's employees.  Furthermore, many of the City's retired police officers and firefighters do not receive social security.  *See* Objection of the Detroit Retirement Systems at p. 5 (Dkt. 519).

13.      On July 16, 2013 the Emergency Manager submitted a recommendation to the Governor, which recommend a Chapter 9 proceeding to implement his City Proposal. *See* Ex. J to Declaration of Kevyn Orr (Dkt. 11).

III.      **SEVERAL CURRENT AND FORMER EMPLOYEES OF THE CITY SEEK PROTECTION FOR THEIR RETIREMENT COMPENSATION BENEFITS IN MICHIGAN COURTS**

14.      In July 2013, in response to the City Proposal, and anticipating that the Emergency Manager would seek to effectuate his plan to impair pension benefits in Chapter 9, several current and former employees of the City commenced actions in the Michigan Circuit Court.  The plaintiffs sought both declaratory and injunctive relief.  *See Flowers, et al. v. Snyder, et al*., Case No. 13-729-CZ (Ingham Cty. Cir.Ct. July 8, 2013) (seeking to enjoin the Governor

---

In addition, whether or not protected by the Pension Clause, such benefits are also protected by the Contract Clause which would prohibit such impairment.

from authorizing the Emergency Manager to file a Chapter 9 petition and other declaratory relief); *Gracie Webster, et al. v. The State of Michigan, et al*., Case No. 13-734-CZ (Ingham Cty. Cir.Ct. July 3, 2013) (seeking to enjoin same and a declaration that PA 436 is unconstitutional in violation of Article IX, Section 24 of the Michigan Constitution); *The General Retirement Sys. of the City of Detroit, et al v. Orr et al*., Case No 13-768-CZ (Ingham Cty. Cir.Ct. July 17, 2013) (seeking (i) declarations that PA 436 does not permit the Governor to authorize and the Emergency Manager to take any actions to impair the City's pension obligations under Chapter 9, or in the alternative declarations PA 436 unconstitutional, and (ii) enjoining the Emergency Manager from acting pursuing to future unconstitutional authorization by the Governor) (together, the "State Court Lawsuits").

15.     The Ingham County Circuit Court found that the Chapter 9 for Detroit would impair plaintiffs "accrued financial benefits" in violation of Art. IX §24 of the Michigan Constitution and entered  a preliminary injunction against the State and Treasurer enjoining them from taking further action on behalf of the City of Detroit through Chapter 9 where plaintiff's pension benefits may be impaired. *See Gracie Webster, et al. v. The State of Michigan, et al.*, Case No. 13-768-CZ (Preliminary Injunction dated July 18, 2013),  Ex. 13 to Declaration of Steven Kreisberg (Dkt 509).

16.     One day later, on July 19, 2013, Judge Rosmarie Aquilina issued an Order of Declaratory Judgment that:

> a.     PA 436 is unconstitutional and in violation of Article IX Section 24 of the Michigan Constitution to the extent that it permits the Governor to authorize and Emergency Manager to proceed under Chapter 9 in any manner which threatens to diminish or impair accrued pension benefits; and PA 436 is to that extent of no force and effect;

> b.     The Governor is prohibited by Article IX Section 24 of the Michigan Constitution from authorizing an emergency manager under PA 436 to proceed under Chapter 9 in a manner which threatens to diminish or

impair accrued pension benefits, and any such action by the Governor is without authority and in violation of Article IX Section 24 of the Michigan Constitution; and

    c.    By authorizing the Emergency Manager to proceed under Chapter 9 to diminish or impair accrued pension benefits, [Governor] Snyder acted without authority under Michigan law and in violation of Article IX Section 24 of the Michigan Constitution.

*Flowers et al. v. State of Michigan et al.*, Case No. 13-374-C2 (Order of Declaratory Judgment dated July 19, 2013), Ex. 14 to Declaration of Steven Kreisberg (Dkt. 509).

    17.    Judge Aquilina further issued an injunction (1) directing the Emergency Manager "to immediately withdraw the Chapter 9 petition filed on July 18," and (2) to "not authorize any further Chapter 9 filing which threatens to diminish or impair accrued pension benefits."

## IV.    THE EMERGENCY MANAGER'S COMMENCEMENT OF CHAPTER 9 PROCEEDINGS.

    18.    The Governor's July 18 authorization letter in response to the Emergency Manager's request did not place any contingencies on the filing, such as requiring the Emergency Manager to comply with the Michigan Constitution. *See* Chapter 9 Voluntary Petition (Dkt. 1 at 16). On July 18, 2013 the Emergency Manager issued an Order authorizing the City to file a petition for relief under Chapter 9 in the United States Bankruptcy Court in the Eastern District of Michigan, effective immediately. *Id.* at 10-11. The Emergency Manager filed a Chapter 9 petition on behalf of the City later that same day. *Id.*

## V.    THE CITY'S ELIGIBILITY MOTION

    19.    On July 19, 2013, the City filed a motion (the "Eligibility Motion") for entry of an order establishing a deadline for objections to the City's eligibility to be a Chapter 9 debtor. (Dkt. 18). On August 6, 2013, the Bankruptcy Court determined that the Eligibility Motion was a core proceeding pursuant to 18 U.S.C. § 157(b), approved a notice to creditors, and established a deadline of August 19, 2013 for filing objections to the City's Chapter 9 Petition (the

"Eligibility Objections"). *See* Order (A) Directing and Approving Form of Notice of Commencement of Case and Manner of Service and Publication of Notice and (B) Establishing Deadline for Objections To Eligibility and a Schedule for Their Consideration (Dkt. 296 at 1,3). The Bankruptcy Court has not stayed proceedings in the Chapter 9 case pending the Court's adjudication of the Eligibility Objections and the entry of an order for relief. *Id.* at 10. On July 25, 2013, the Bankruptcy Court entered two orders staying the State Court Actions and confirming that the automatic stay under 11 U.S.C. § 922 applies to the City and the Emergency Manager and extending the stay to the Governor of the State of Michigan and the Local Emergency Financial Assistance Loan Board. *See* Order Pursuant to Section 105(a) of the Bankruptcy Code Extending The Chapter 9 Stay to Certain (A) State Entities, (B) Non Officer Employees and (C) Agents and Representatives of the Debtors (Dkt. 166); Order Pursuant to Section 105(a) of the Bankruptcy Code Confirming the Protections of Sections 362, 365 and 922 of the Bankruptcy Code (Dkt. 167).

20.     On August 2, 2013, the Bankruptcy Court issued an order directing the appointment of an Official Committee of Retirees pursuant to Section 1102(a)(2) of the Bankruptcy Code. *See* Order Pursuant to Section 1102(A)(2) of the Bankruptcy Code Directing the Appointment of a Committee of Retired Employees (Dkt. 279.) On August 22, 2013, the United States Trustee for Region 9 filed a notice of appointment the Official Committee of Retirees.[6] The Committee represents Detroit's approximately 23,500 retirees in the City's Chapter 9 proceedings. According to the Debtor, there are more than 20,000 current, retired and

---

[6] The Committee is composed of the following persons: (1) Edward L. McNeil (Detroit, Michigan, Retiree Sub-Chapter 98 of the American Federation of State, County and Municipal Employees, AFL-CIO – Edward L. McNeil), (2) Michael J. Karwoski, (3) Shirley V. Lightsey, (4) Terri Renshaw, (5) Robert A. Shinske, (6) Donald Taylor, (7) Gail Wilson Turner, (8) Gail M. Wilson and (9) Wendy Fields-Jacobs (International Union, UAW). (Dkt. 575).

10

13-53846-swr   Doc 23005   Filed 12/23/13   Entered 12/24/13 20:01:29   Page 18 of 78
13-53846-swr   Doc 3005   Filed 09/16/13   Entered 09/16/13 23:11:17   Page 18 of 78
405

surviving beneficiaries. There are also approximately 2,400 deferred vested retirement eligible former employees of the City in the retiree community. *See* Declaration of Charles M. Moore In Support of City of Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code at ¶ 9 (Dkt. 13).[7]

21.     On August 26, 2013 the Bankruptcy Court issued an Order classifying the various Eligibility Objections and Notices of Hearings. *See* Order Regarding Eligibility Objections Notices of Hearing and Certifications Pursuant to 28 U.S.C. Section 3403(a)&(b) (Dkt. 642). One hundred-and-nine parties timely objected to the City's eligibility, including the City's various unions, employee and retiree associations and individuals. (Dkt. 642 at 1).[8] The objections are both legal and factual in nature. As categorized by the Bankruptcy Court, the legal objections (the "Legal Eligibility Objections") are:

    i.      Chapter 9 of the Bankruptcy Code violates the United States Constitution.

    ii.     The Bankruptcy Court does not have the authority to determine the constitutionality of Chapter 9 of the Bankruptcy Code.

    iii.    PA 436 violates the Michigan constitution and therefore the City was not validly authorized to file the Chapter 9 bankruptcy case as required by 11 U.S.C. 109(c)(2).

---

[7] There may be approximately 7,000 active vested current employees of the City.

[8] Among the objecting parties are:

Local 324, International Union of Operating Engineers, (Objection at Dkt. 484); Local 517M, Service Employees International Union, (Objection at Dkt. 486); Retired Detroit Police and Firefighter's Association, Donald Taylor, the Detroit Retired City Employees Association and Shirley V. Lightsey (Objection at Dkt. 502); Michigan Council 25 of the American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees, (Objection at Dkt. 505); International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, (Objection at Dkt. 506); the Detroit Fire Fighters Association, the Detroit Police Officer's Association, the Detroit Police Lieutenants & Sergeants Association, the Detroit Police Command Officer's Association (Objection at Dkt. 512); General Retirement System of the City of Detroit, Police and Fire Retirement System of the City of Detroit (Objection at Dkt. 519); Retired Detroit Police Members Association Objection at Dkt. 520).

iv.     The Bankruptcy Court does not have the authority and jurisdiction to determine the constitutionality of PA 436.

v.      The Emergency Manager is not an elected official and therefore did not have valid authority to file the bankruptcy case as required for eligibility by 11 U.S.C. § 109(c)(2).

vi.     The Governor's authorization to file this bankruptcy case was not valid under the Michigan constitution because it did not prohibit the City from impairing the pension rights of its employees and retirees, as required for eligibility by 11 U.S.C. § 109(c)(2).

vii.    Because of the proceedings and judgment in *Gracie Webster, et al. v. The State of Michigan, et al*., Case No. 13-734-CZ (Ingham County Circuit Court), the City is precluded by law from claiming that the Governor's authorization to file this bankruptcy case was valid, as required for eligibility by 11 U.S.C. § 109(c)(2). (Dkt. 642 at 1-3.)

22.     The Bankruptcy Court also categorized the various factual objections (the "Factual Eligibility Objections") made to the petition.  These include objections that (i) the City was not insolvent, as required by 11 U.S.C. § 109(c)(3), (ii) that the City does not "desire to adjust its debts," as required by 11 U.S.C. § 109(c)(4), (iii) that the City did not negotiate in good faith with creditors, as required by 11 U.S.C. § 109(c)(5)(B), (iv) that the City was not "unable to negotiate with creditors because such negotiation is impracticable, as required by 11 U.S.C. § 109(c)(5)(C), and (v) that the City's bankruptcy petition should be dismissed pursuant 11 U.S.C. § 921(c) because it was filed in bad faith.  (Dkt. 642 at 4-5.)

23.     The Legal Eligibility Objections are scheduled to be heard by the Bankruptcy Court on September 18, 2013.  (Dkt. 642 at 3.)  A trial on the Factual Eligibility Objections is scheduled for October 23, 2013.  (Dkt. 642 at 4.)

# LEGAL ARGUMENT

## I. ACCEPTANCE OF THE CITY'S AUTHORIZATION TO FILE ITS PETITION WOULD RENDER CHAPTER 9 UNCONSTITUTIONAL

### A. If Chapter 9 Permits the City to Ignore the Pension Clause, Chapter 9 Grants Authorization not Available Under the Michigan Constitution

24.     MICH. CONST. art. IX, § 24 provides that vested pension rights "shall not be diminished or impaired." The Emergency Manager contends that he may use Chapter 9 of the Bankruptcy Code, 11 U.S.C. § 901 *et seq.* to "trump" the Pension Clause, and intends to ask the Bankruptcy Court to approve a plan that would diminish those vested rights. (Ex. A to Dkt. 11 at 116). But that application of Chapter 9 would violate the Tenth Amendment to the U.S. Constitution.[9]

25.     In *United States v. Bekins,* 304 U.S. 27 (1938), the Supreme Court held that a federal statute permitting municipalities to file in bankruptcy (a predecessor to Chapter 9) did not violate the Tenth Amendment, because no municipality could seek federal bankruptcy relief unless its doing so was "authorized by state law." 304 U.S. at 51. The Supreme Court held that in granting such authorization "The State acts in aid, and not in derogation, of its sovereign powers." 304 U.S. at 54. *Bekins* thus established a simple principle: a State may consent to a municipality entering federal bankruptcy proceedings if its doing so is in aid of the State's sovereign powers, but not if its doing so is in derogation of the State's sovereign powers. But if, as the Emergency Manager contends, Chapter 9 can be used to " trump" provisions of the Michigan Constitution, specifically the Pension Clause, then Michigan's consent to the

_____

[9]The Tenth Amendment provides, "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X.

13

13-53846-swr   Doc 2300-4   Filed 12/13/13   Entered 12/24/13 20:01:29   Page 21 of 78
13-53846-swr   Doc 8005   Filed 09/10/13   Entered 09/14/13 23:11:27   Page 21 of 78      408

Emergency Manager's filing in Chapter 9 is an act "in derogation" of Michigan's sovereign powers.[10]

26.     The Pension Clause provides in part:

> The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.
>
> Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities.

MICH. CONST. art. IX, § 24. The Michigan Constitution also contains a Contracts Clause (similar in language to that in the U.S. Constitution[11]), which provides that, "No bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted." MICH. CONST. art. I, § 10.

27.     The Pension Clause thus provides a separate protection than the state's Contracts Clause and does not render pensions, as the City asserts mere contracts.[12] Therefore, if the Pension Clause had been intended merely to establish that accrued pension rights were contractual obligations and thus protected by the Contract Clause, the Pension Clause would have ended with the phrase "… shall be a contractual obligation." That would have been sufficient to lay to rest the concept that "pensions granted by public authorities were not contractual obligations but gratuitous allowances." *In re Enrolled Senate Bill 1269(Advisory*

---

[10] The Committee does not believe this Court has the statutory, or under Article III the constitutional, subject matter jurisdiction to hear the state or federal constitutional challenges to the City's Chapter 9 Petition. Concurrently with the filing of this Objection, the Committee is filing a motion to withdraw the jurisdictional reference over the eligibility dispute.

[11] The parallel language of Article I, Section 10 of the U.S. Constitution provides, "No State shall … pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, …." U.S. CONST. art. I, § 10.

[12] (Dkt. 765 at 22-27).

14

*Opinion re Constitutionality of 1972 PA 258),* 389 Mich. 659, 662, 209 N.W.2d 200, 202 (Mich. 1973).

28.     The additional language of the Pension Clause - "which shall not be diminished or impaired thereby" - has the evident purpose of giving pension rights special and greater protection than mere contractual rights.  To argue - as the Emergency Manager does - that the Pension Clause did nothing more than establish that pension rights are contractual obligations is to argue that the phase in the Pension Clause "which shall not be diminished or impaired thereby" is mere surplusage.  But since *Marbury v. Madison,* 1 Cranch 137, 2 L.Ed. 60 (1803), it has been a basic principle of constitutional (and statutory) construction that "[i]t cannot be presumed that any clause in the constitution is intended to be without effect." *Marbury v. Madison,* 1 Cranch at 174; *Maracich v. Spears,* 133 S.Ct. 2191, 2205 (2013) (rejecting proffered statutory construction which would render some statutory language "mere surplusage."). That same principle of construction applies under Michigan law. *Koontz v. Ameritech Services, Inc.,* 466 Mich. 304, 312, 645 N.W.2d 34, 38 (Mich. 2002) ("Courts must give effect to every word, phrase, and clause in a statute, and must avoid an interpretation that would render any part of the statute surplusage or nugatory."); *People v. Perkins,* 473 Mich. 626, 638, 703 N.W.2d 448, 455 (Mich. 2005).

29.     The additional language in the Pension Clause - "which shall not be diminished or impaired thereby" - is critical.  The prohibition in the Contract Clause, under both the Michigan and U.S. Constitutions, is not absolute and must be "accommodated to the inherent police power of the State to 'safeguard the vital interest of its people.'" *Romein v. General Motors Corp.,* 436 Mich. 515, 462 N.W.2d 555, 565 (Mich. 1990), *quoting Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 410 (1983).  In contrast, the Pension Clause is absolute.

15

13-53846-swr   Doc 2300-4   Filed 12/23/13   Entered 12/24/13 20:01:29   Page 23 of 78
13-53846-swr   Doc 900-5   Filed 09/10/13   Entered 09/10/13 23:11:17   Page 23 of 47   410

*Ass'n. of Professional and Technical Employees v. City of Detroit,* 154 Mich. App. 440, 445-46, 398 N.W.2d 436, 439-40 (Mich. 1986). An adjustment of contract rights which caused ***any*** diminution in vested pension rights would violate the Pension Clause even if the adjustment might not violate the Contracts Clause.[13]

30. In an attempt to denigrate the importance of the Pension Clause, the Emergency Manager, citing *Olson v. Cory,* 27 Cal.3d 532, 636 P.2d 532 (Cal. 1980), seeks to compare Michigan's Pension Clause with provisions of the California constitution that, the Emergency Manager argues, "prohibit[] the diminishment or impairment of pension benefits unless some 'new comparable or offsetting benefit'" is provided, which have been held not to preclude the filing of municipal bankruptcies in California. (Dkt. 765 at 26-27). The Emergency Manager, however, fails to note that the California constitutional provision at issue in *Olson v. Cory* was California's Contracts Clause - virtually identical in language to Michigan's Contracts Clause[14] - and not a Pension Clause. The conclusion that California's Contract Clause did not preclude a California municipal bankruptcy sheds no light on the effect of Michigan's Pension Clause. The Emergency Manager goes even further in his argument with respect to Alabama, citing *Bd. of Trustees of Policemen's and Firemen's Retirement Fund of City of Gadsden v. Cary,* 373 So.2d 841 (Ala. 1979), to argue that "[s]imilar constitutional protection for pensions applies in Alabama," where, nevertheless, Chapter 9 has "been used to reduce pensions." (Dkt. 765 at 27).

---

[13] In this case, however, the City's proposed 80% reduction in retiree benefits constitutes a substantial impairment in violation of the Contracts Clause. *See Energy Reserves Group, Inc. v. Kansas City & Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697 (1983). The present situation contrasts sharply with temporary cuts that have been held lawful and modest reductions in compensation. *e.g., Subway-Surface Supervisors Ass'n. v. New York Transit Authority*, 375 N.E.2d 384 (N.Y. 1978); *Baltimore Teachers Union v. Mayor of Baltimore*, 6 F.3d 1012 (4th Cir. 1993) (compensation reduction of less than 1%).

[14] California's Contracts Clause provides, "A bill of attainder, ex post facto law, or law impairing the obligation of contracts may not be passed." CAL. CONST. art. I, § 9.

But, as in California, the provision of the Alabama Constitution at issue was merely a Contracts Clause - again similar in language to Michigan's Contracts Clause[15] - and not a Pension Clause. The most that the Emergency Manager's argument might establish is that if the Michigan Constitution had only a Contracts Clause, and not a Pension Clause, then pensions might have no greater protection than other contracts. However the fact is that the Michigan Constitution contains a Pension Clause and protects pensions absolutely.

31. Because the Pension Clause is part of the Constitution of the State of Michigan, no statute of the State may violate the Pension Clause, and no statute of the State may authorize anyone acting on behalf of the State or its municipalities to violate the Pension Clause. Put another way, when acting in aid of its sovereign powers, a State cannot violate its own Constitution. Any action by a State in violation of its own Constitution is, in the words of *Bekins,* an action "in derogation of its sovereign powers." If, as the Emergency Manager contends, Chapter 9 authorizes the Emergency Manager to submit and the bankruptcy court to approve a plan which violates the Pension Clause, then the State of Michigan's consent to the bankruptcy petition is in derogation of its sovereign powers, and the constitutional basis for Chapter 9 - that a State's consent is given in aid of its sovereign powers - collapses.

32. This conclusion is also compelled by the underlying analysis in *Bekins,* in which the Supreme Court grounded a State's ability to consent to federal bankruptcy proceedings on a State's right, as a sovereign, to enter into contracts. The Supreme Court held:

> It is of the essence of sovereignty to be able to make contracts and give consents bearing upon the exertion of governmental power. This is

---

[15]Alabama's Contracts Clause provides, "That no ex post facto law, nor any law, impairing the obligations of contracts, or making any irrevocable or exclusive grants of special privileges or immunities, shall be passed by the legislature; and every grant or franchise, privilege, or immunity shall forever remain subject to revocation, alteration, or amendment." ALA. CONST. art. I, § 22.

constantly illustrated in treaties and conventions in the international field by which governments yield their freedom of action in particular matters in order to gain the benefits which accrue from international accord.

\* \* \*

The reservation to the States by the Tenth Amendment protected, and did not destroy, their right to make contracts and give consents where that action would not contravene the provisions of the Federal Constitution. The States with the consent of Congress may enter into compacts with each other and the provisions of such compacts may limit the agreeing States in the exercise of their respective powers. Nor did the formation of an indestructible Union of indestructible States make impossible cooperation between the Nation and the States through the exercise of the power of each to the advantage of the people who are citizens of both.

*Bekins,* 304 U.S. at 51-53.

33.    The right of a Sovereign State (or country) to enter into contracts is necessarily limited by its own constitution.  To illustrate: the United States, as a sovereign country, has the sovereign right to enter into "treaties and conventions in the international field by which [it would] yield [its] freedom of action in particular matters," but the United States could not enter into a treaty under which it agreed, for example, to suspend freedom of speech as guaranteed by the First Amendment, "in order to gain the benefits which accrue from international accord."  By like reasoning, Michigan, as a sovereign State, may be able to grant consent to its municipalities to file federal bankruptcy proceedings, but it cannot do so if, as a result of its so doing, Chapter 9 would suspend the Pension Clause.

34.    In other words, if Chapter 9 is as broad as the Emergency Manager contends, then Chapter 9 is unconstitutional and the City cannot be a debtor in Chapter 9.

**B.    If Chapter 9 Permits Michigan's Executive Branch to Consent to a Limitation on its Sovereignty not Authorized by its People, the Federal Statute is Unconstitutional**

35.    There  is a serious fundamental question whether, in light of recent Supreme Court precedent, Chapter 9 violates the Tenth Amendment to the U.S. Constitution in a broader

18

13-53846-swr   Doc 2300-4   Filed 12/23/13   Entered 12/24/13 20:01:29   Page 26 of 78
13-53846-swr   Doc 3005   Filed 09/16/13   Entered 09/16/13 23:11:27   Page 26 of 78      413

manner.  It may not be necessary to reach this question because the case can be resolved on any or all of the narrower grounds set forth below.[16]  If it is necessary to reach this question, however, its resolution will have profound implications for municipalities, and creditors of municipalities, across the nation.

36.     The foundation of *Bekins* was that a State's authorization of a bankruptcy petition filed by one of its municipalities eliminated any violation of the Tenth Amendment:

> The bankruptcy power is competent to give relief to debtors in such a plight and, if there is any obstacle to its exercise in the case of districts organized under state law it lies in the right of the State to oppose federal interference. The State steps in to remove that obstacle.

304 U.S. at 54.  There has been a recognized and significant shift in the position of the Court on issues of federalism.

37.     Critically, the Supreme Court has weakened if not rejected  the entire  foundation of *Bekins*—that a State's consent can remedy any violation of the Tenth Amendment and principles of federalism as they affect individual citizens.[17]

38.     In *New York v. United States,* 505 U.S. 144 (1992), in holding unconstitutional a federal statute which compelled States to take certain steps to dispose of radioactive waste generated within their borders, the Supreme Court held:

> The Constitution does not protect the sovereignty of States for the benefit of the States or state governments as abstract political entities, or even for the benefit of the public officials governing the States. To the contrary, ***the Constitution divides authority between federal and state governments for***

---

[16]  The Emergency Manager has also argued, in reliance on *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 US 477, 484 (1989), that even if this Court reaches the conclusion that *Bekins* is no longer good law—and that Chapter 9 is therefore unconstitutional—it should nevertheless follow Bekins, "leaving to [the Supreme] Court the prerogative of overruling its own decisions."  (Dkt. 765 at 12.) That argument is a compelling reason to resolve this case on one of the narrower grounds set forth above.

[17]Mayer, *State Sovereignty, State Bankruptcy, and a Reconsideration of Chapter 9*, 85 Amer. Bank. Law Journal 363 (Fall 2011).

19

13-53846-swr  Doc 2300-4  Filed 12/23/13  Entered 12/24/13 20:01:29  Page 27 of 78
13-53846-swr  Doc 3005  Filed 09/16/13  Entered 09/14/13 23:11:17  Page 27 of 78    414

> ***the protection of individuals.*** State sovereignty is not just an end in itself: "Rather, federalism secures to citizens the liberties that derive from the diffusion of sovereign power." *Coleman v. Thompson,* 501 U. S. 722, 759 (1991) (Blackmun, J., dissenting). "Just as the separation and independence of the coordinate branches of the Federal Government serve to prevent the accumulation of excessive power in any one branch, a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front." *Gregory v. Ashcroft,* 501 U. S. [452,] 458 [(1991)]. See The Federalist No. 51, p. 323 (C. Rossiter ed. 1961). ***Where Congress exceeds its authority relative to the States, therefore, the departure from the constitutional plan cannot be ratified by the "consent" of state officials.***

505 U.S. at 149. (emphasis added).

39.     In *Printz v. United States,* 521 U.S. 898 (1997), the Supreme Court held unconstitutional a portion of the Brady Handgun Violence Prevention Act, Pub. L. 103-159, 107 Stat. 1536, commanding state and local law enforcement officers to conduct background checks on prospective handgun purchasers and to perform certain related tasks.

40.     In so doing, the Supreme Court reiterated the federalism principles set forth in *New York v. United States,* holding:

> It suffices to repeat the conclusion: "the Framers explicitly chose a Constitution that confers upon Congress the power to regulate individuals, not States."[*New York v. United States*, 505 U.S.] at 166. The great innovation of this design was that "our citizens would have two political capacities, one state and one federal, each protected from incursion by the other"—"a legal system unprecedented in form and design, establishing two orders of government, each with its own direct relationship, its own privity, ***its own set of mutual rights and obligations to the people who sustain it and are governed by it***." *U. S. Term Limits, Inc. v. Thornton,* 514 U. S. 779, 838 (1995) (Kennedy, J., concurring).

521 U.S. at 920.  And in *Bond v. United States,* which raised the question whether Congress could enact a federal criminal statute to govern activity traditionally subject to only State law, the Supreme Court stated yet again:

> The limitations that federalism entails are not therefore a matter of rights belonging only to the States. States are not the sole intended beneficiaries of federalism. See *New York [v. United States,* 505 U.S. 144, 181 [(1992)].

> *An individual has a direct interest in objecting to laws that upset the constitutional balance between the National Government and the States when the enforcement of those laws causes injury that is concrete, particular, and redressable.* Fidelity to principles of federalism is not for the States alone to vindicate.

131 S.Ct. 2355, 2364 (2011) (emphasis added); *See also United States v. Felts,* 674 F.3d 599, 607 (6th Cir. 2012) (applying *Bond*).

41.    When these principles are applied in the municipal bankruptcy context, it is apparent that the concepts under which the Supreme Court upheld the constitutionality of municipal bankruptcy in *Bekins* have been soundly rejected by the Court. This can be demonstrated by three points of analysis.

42.    **First,** in *Bekins,* the Supreme Court found a predecessor statute to Chapter 9 constitutional specifically because no municipality could seek federal bankruptcy relief unless its doing so was "authorized by state law." 304 U.S. at 51.  In *New York,* the Supreme Court held that "Where Congress exceeds its authority relative to the States, therefore, the departure from the constitutional plan cannot be ratified by the 'consent' of state officials." 505 U.S. at 149.

43.    **Second,** in *Bekins,* the Supreme Court analogized a State's granting to consent to the exercise of the federal bankruptcy power over its municipalities to a country's exercise of its treaty power, under which "governments yield their freedom of action in particular matters in order to gain the benefits which accrue from international accord." 304 U.S. at 52.  In *Printz,* the Supreme Court held that there could be no reallocation of power between the state and federal governments because each has "its own set of mutual rights and obligations to the people who sustain it and are governed by it." 521 U.S. at 920.

44.    **Third,** in *Bekins,* the Supreme Court evaluated the Tenth Amendment and federalism issues as though the only rights at stake were those of the States—even though the appellees were bondholders affected by the bankruptcy of an irrigation district. 304 U.S. at 46.

In *Bond,* the Supreme Court held that "[a]n individual has a direct interest in objecting to laws that upset the constitutional balance between the National Government and the States when the enforcement of those laws causes injury that is concrete, particular, and redressable." 131 S.Ct. at 2364.

45.     Therefore, Chapter 9 "upset[s] the constitutional balance between the National Government and the States." *Id.* Retired employees of the City of Detroit, with vested pension rights protected by the Pension Clause of the Michigan Constitution, will suffer "concrete, particular, and redressable" injury if those rights are made subject to federal bankruptcy law. *Id.* Therefore, subjecting individual members of the retiree community with vested rights to the vagaries of federal bankruptcy law despite the express protections of their state constitution as reflected in the Pension Clause violates their Tenth Amendment and federalism rights. In this context, Chapter 9 appears to recognize and authorize a state official's actions derogation of the sovereignty limits adopted by the people of Michigan. Such derogation cannot be consented to by state officials. Under federalism, the retirees cannot be asked to endure a federal bankruptcy proceeding in the hope that a plan to be proposed by the very officials who have openly championed the demise of retirement compensation will, nonetheless, respect the Pension Clause. The state promised and state protected rights afforded retired employees of the City of Detroit, a municipality of the State of Michigan, under the Constitution of the State of Michigan, simply cannot be subject to any review, let alone elimination or alteration in a federal bankruptcy court.

22

13-53846-swr  Doc 2300-4  Filed 12/23/13  Entered 12/24/13 20:01:29  Page 30 of 78
13-53846-swr  Doc 805  Filed 09/10/13  Entered 09/10/13 23:11:29  Page 30 of 78        417

## II. IT IS NOT NECESSARY FOR THE COURT TO REVIEW THE CONSTITUTIONALITY OF CHAPTER 9 BECAUSE THE EMERGENCY MANAGER'S PETITION FOR THE CITY OF DETROIT DOES NOT MEET THE BANKRUPTCY CODE REQUIREMENTS FOR ELIGIBILITY

46.     The Committee does not believe that it is necessary for this Court to reach the question of whether Chapter 9, as applied to the City of Detroit's petition, is unconstitutional under the Tenth Amendment or as a matter of Michigan's sovereignty preserved to its Citizens. As shown below, the authorization itself is flawed as a matter of Michigan law and thus inadequate under 11 U.S.C. 109(c)(2) and lacks good faith under 11 U.S.C.§921(c).

47.     At the root of the distress evidenced by the 109 objections filed by various organizations and citizens of Michigan and creditors of the City, is that the authorizations that proceeded the filing were intended and do in fact violate the Michigan Constitution with respect to its single largest economic constituency – the retiree community.

48.     Indeed, the only court thus far to have addressed this issue has held that the City's actions are constitutionally violative. *See Flowers, et al. v. State of Michigan, et al.*, Case No. 13-000734-C2-C30 (Temporary Order dated July 18, 2013) and *Flowers, et al. v. State of Michigan, et al.*, Case No. 13-734-C2 (Order of Declaratory Judgment dated July 19, 2013).

49.     It is because the authorizations that preceded the action by the Emergency Manager have been ruled unlawful, so is the Emergency Manager's actual authorization of the Chapter 9 petition. *e.g. In re City of Bridgeport*, 129 B.R. 332, 339 (Bankr. D. Conn. 1991) (sustaining objection that Chapter 9 was unauthorized where debtor was not insolvent); *In re City of Harrisburg*, 465 B.R. 744, 752 (Bankr. M.D. Pa. 2011) (holding city council failed to show state authorization statute overrode Pennsylvania's charter law and only mayor had the right to initiate legal action, including a chapter 9 petition).

23

13-53846-swr   Doc 2300-4   Filed 12/23/13   Entered 12/24/13 00:01:29   Page 31 of 78
13-53846-swr   Doc 895   Filed 09/19/13   Entered 09/19/13 23:11:17   Page 31 of 47      418

50.    The Emergency Manager possesses and has shown to the Court an authorization from the Governor dated July 18, 2013, an appointment letter addressed to Kevyn Orr as Emergency Manager, the existence of a Financial Review Board determination of a financial crisis for the City of Detroit and the existence of a statute (PA 436) requiring such steps in advance of a Chapter 9 petition for a municipality with the State of Michigan (the "Authorization Papers").  However, the Authorization Papers are neither dispositive or even persuasive on the issue of authorization under 11 U.S.C.§109(c)(2) and related provisions.

A.    **The Burden is on the Debtors to Show Compliance With Sections 109(c) and 921(c)**

51.    It is the City's burden to show *all* of the elements of eligibility *and* good faith.  *In re City of Bridgeport*, 129 B.R. at 334 (holding that the City failed to meet its burden of proving insolvency).  Those elements are set forth in 11 U.S.C. §109(c) and 11 U.S.C. §921(c). The City may be a debtor under Chapter 9 of the Bankruptcy Code if and only if it:

(1) is a municipality;

(2) is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State Law to authorize such entity to be a debtor under such chapter;

(3) is insolvent;

(4) desires to effect a plan to adjust such debts; *and*

(5) (A) has obtained the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;

(B) has negotiated in good faith with creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;
(C) is unable to negotiate with creditors because such negotiation is impracticable; or

> (D) reasonably believes that a creditor may attempt to obtain a transfer that is avoidable under section 547 of this title.

11 U.S.C. § 109(c)(1-5) (emphasis added).

52.     Section 921(c) of the Bankruptcy Code provides that "[a]fter any objection to the petition, the court, after notice and a hearing, may dismiss the petition if the debtor did not file the petition in good faith or if the petition does not meet the requirements of [the Bankruptcy Code]." 11 U.S.C. § 921(c).   Courts have ruled that after an objection to the petition, the bankruptcy court *must* dismiss the case if the petition does not meet the requirements of the Bankruptcy Code, notwithstanding the seemingly permissive language of section 921(c). *See, e.g., In re New York City Off-Track Betting Corp.*, 427 B.R. 256, 264 (Bankr. S.D.N.Y. 2010) (citing *Int'l Ass'n of Firefighters, Local 1186 v. City of Vallejo (In re City of Vallejo)*, 408 B.R. 280, 289 (9th Cir. B.A.P. 2009) for proposition that "Courts must dismiss the petitions of debtors filing under chapter 9 who fail to satisfy [the] requirements [of section 109(c)]"); *In re Suffolk Regional Off-Track Betting Corp.*, 462 B.R. 397, 421 (Bankr. E.D.N.Y. 2011) (citation omitted) ("Despite the permissive statutory language, courts have construed § 921(c) to require the mandatory dismissal of a petition filed by a debtor who fails to meet the eligibility requirements under §109(c).").

53.     With the exception of the section 109(c)(2) requirement the eligibility requirements are "federal questions based on, and created by, the federal Bankruptcy Code and subject to a federal rule of decision." *In re City of Stockton, Cal*., 475 B.R. 720, 729 (Bankr. E.D.Cal. 2012).   Section 109(c)(2) is unequivocal, however, that the question of a municipality's authorization to commence a Chapter 9 case "presents a question of pure state law." *Id.*; *See Patterson v. Shumate*, 504 U.S. 753, 758 (1992) (citing to 109(c)(2) as an example of how "Congress, when it desired to do so, knew how to restrict the scope of applicable law to 'state

law' and did so with some frequency"); *In re City of Cent. Falls, R.I.*, 468 B.R. 36, 74 (Bankr. D.R.I. 2012) ("A municipality, if it is eligible at all, is eligible as it exists in state law."); *In re Suffolk Regional Off-Track Betting Corp.*, 462 B.R. at 415 (chapter 9 petition dismissed because entity was "not specifically authorized by state law to file its bankruptcy petition"); *In re City of Colorado Springs Spring Creek General Imp. Dist.*, 177 B.R. 684, 694 (Bankr.D.Colo. 1995) ("It is state law rather than the federal law which determines the eligibility of municipalities to seek relief under Chapter 9.").

54.     As one bankruptcy court has observed, a "state serves as a municipality's gatekeeper into Chapter 9." *Harrisburg*, 465 B.R. 744, 752 (Bankr. M.D. Pa. 2011); *In re City of Vallejo*, 403 B.R. 72, 76 (Bankr. E.D. Cal. 2009), *aff'd IBEW, Local 2376 v. City of Vallejo (In re City of Vallejo)*, 432 B.R. 262 (E.D. Cal. 2010). Bankruptcy courts exercise jurisdiction carefully[18] when the authority to file bankruptcy under state law is questioned "in light of the interplay between Congress' bankruptcy power and the limitations on federal power under the Tenth Amendment." *Harrisburg*, 465 B.R. at 754 (internal citation omitted); *see also Suffolk Regional Off-Track Betting Corp.*, 462 B.R. at 420 (internal citations omitted) (emphasis added) ("Although §109(c) should be construed broadly to give effect to Congress'[s] intent 'to expand the applicability of chapter IX as much as possible' . . . the Court may not accomplish this by turning a blind eye to New York law governing the scope of a county's authority."). "If the petitioner is unable to demonstrate that all of the elements have been satisfied, the petition must be dismissed." *Harrisburg*, 465 B.R. at 752.

---

[18] The Committee does not accept the jurisdiction of this court to rule on matters of state constitutional law or US constitutional law. *See* note 7, *supra*.

**B.    The Authorizations Relied Upon by the Emergency Manager Were Flawed Under the Michigan Constitution**

55.    The Bankruptcy Code is explicit as to who may be a debtor under Chapter 9. Pursuant to Bankruptcy Code section 109(c)(2), the only entity that may be a Chapter 9 debtor is one that is *specifically authorized* by State law or by a governmental officer or organization *empowered by State law* to authorize such entity to be a debtor under Chapter 9.   11 U.S.C. § 109(c)(2) (emphasis added).

56.    The City argues that it satisfied section 109(c)(2) because the Emergency Manager has received and submitted the Authorization Papers.  (Dkt. 765 at 19-21).  The City's argument, however, seeks to elevate form over substance and does not meet its heavy burden.

**1.    PA 436 is Squarely at Odds With the Pension Clause of Michigan's Constitution and Therefore Unconstitutional**

57.    The Emergency Manager contends that it may use the powers granted to him under PA 436 and Chapter 9 to modify constitutionally protected rights. In fact, all of the mentioned limitations contained within PA 436, are found only in those sections of the statute that apply to receiverships and consent agreements with municipalities.  In contrast, there are no express statutory limitations on the manner or purpose of a chapter 9 filing once the requisite financial emergency has been found.  As noted by the Sixth Circuit in *City of Pontiac Retired Employees Ass'n.*, 2013 WL 4038582 at *1-2, the Michigan legislature evidenced an unconstitutional, and undemocratic purpose in crafting PA 436.[19]   Moreover, legislative contemplation to modify pension benefits through PA 436 is a direct and unconstitutional assault on  the Pension Clause of the Michigan Constitution, which categorically prohibits all state

_____

[19]"Public Act 4 is not Michigan's first law governing emergency managers, but it is the first legislation that allowed emergency managers to break collective bargaining agreements and to ignore retirement commitments. M.C.L. §§ 141.1501-1531 (rejected by referendum 2012)." *City of Pontiac Retired Employees Ass'n.*, 2013 WL 4038582 at *3.

governmental authorities and its municipal subdivisions from modifying accrued retirement benefits. *See* Part I.A., *supra; see also Seitz v. Probate Judges Retirement System*, 189 Mich. App. 445, 474 N.W. 2d 125, 128 (1991) ("[U]nder Art. 9, § 24, a retirement benefit cannot be reduced."); *In re Enrolled Senate Bill 1269*, 209 N.W.2d 200, 202 (Mich. 1973) ("[U]nder [art. IX, § 24] constitutional limitation the legislature cannot diminish or impair accrued financial benefits."); *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 806 N.W.2d 683, 694 (Mich. 2011) ("The obvious intent of § 24 . . . was to ensure that public pensions be treated as contractual obligations that, once earned, could not be diminished."). In short, to the extent that PA 436 does not protect pension benefits from impairment in bankruptcy, it violates the Michigan Constitution.

58.     The unconstitutionality of PA 436 therefore renders the purported authorization under Section 109(c) of the Bankruptcy Code a nullity. Therefore, neither the City of Detroit, nor the Emergency Manager, has been "specifically authorized … by State law" to file a bankruptcy petition.

> 2.     **The Conflict Between PA 436 and the Pension Clause of the Michigan Constitution Cannot be Reconciled**

> > a.     The Attorney General's Position Should not be Adopted

59.     In a statement filed in the Bankruptcy Court, Michigan Attorney General Schuette has taken the position that because "[t]he Michigan Legislature cannot enact laws that authorize local governments to violate the Michigan Constitution," PA 436 should be construed to require that any bankruptcy plan submitted by the Emergency Manager comply with the Pension Clause. (Dkt. 481 at 6). If PA 436 were ambiguous in this respect, then the Attorney General's proposed construction would be supported by the principle that any ambiguity in a statute should be construed in a manner that renders the statute constitutional. *McDougall v. Schanz,* 461 Mich.

15, 24, 597 N.W.2d 148, 153 (Mich. 1999). However, PA 436 is not ambiguous on this point and cannot be saved by the principle that any ambiguity in a statute should be construed in a manner that renders the statute constitutional.

60. PA 436 provides that actions taken by the Emergency Manager outside of bankruptcy be in full compliance with the Pension Clause, PA 436, §§ 11, 12(m), 13, M.C.L. §§ 141.1551, 1552(m), 1553, but it contains no such restriction on actions by the Emergency Manager taken in a bankruptcy proceeding. PA 436 § 18, M.C.L. § 141.1558.

61. The Michigan Legislature, the Governor, and the Emergency Manager have each made clear that abrogation of municipal retirement compensation rights was the legislative intent of the Act and is a central purpose of this bankruptcy. That intent also has recently been recognized by the 6th Circuit in *City of Pontiac Retired Employees Ass'n.*, 2013 WL 4038582 at *3. PA 436 is as clear (and as unconstitutional, under the Michigan Constitution) as if it explicitly stated, "Outside of a bankruptcy proceeding, the Emergency Manager must abide by the Pension Clause, but in any bankruptcy proceeding, the Emergency Manager is hereby authorized to violate the Pension Clause." Because PA 436 is unambiguous, it must be construed as written. *Fisher Sand and Gravel Co. v. Neal A. Sweebe, Inc.,* No. 143374, 2013 WL 3924324, at *5 (Mich. July 30, 2013) (citing *Sun Valley Foods Co. v. Ward,* 460 Mich. 230, 236, 596 N.W.2d 119 (Mich. 1999)).

62. While it is true, as the Attorney General states, that "[t]he Michigan Legislature cannot enact laws that authorize local governments to violate the Michigan Constitution," the conclusion is inescapable that, by enacting PA 436, the Michigan Legislature has attempted to do just that. Indeed, the Legislature did worse - it enacted a law that authorized an appointed Emergency Manager, acting in place of a local government, to violate the Michigan Constitution.

          b.      The City of Detroit Cannot Rescue the Unconditional Authorizations

63.    The City of Detroit attempts to reconcile PA 436 with the Pension Clause by suggesting the mere act of authorization does not "diminish or impair" pension benefits in that the City's pension obligations remain unimpaired after the petition. *See* (Dkt. 765 at 21-22). That logic must be seen to fail for several reasons.

64.    First, the City conveniently ignores that the authorization of bankruptcy is an essential step in an orchestrated attack to unilaterally modify retiree rights. The Michigan Legislature,[20] the Governor, and the Emergency Manager each have made clear that the intent in authorizing bankruptcy is to modify pension and retiree healthcare rights. The Legislature omitted any obligation to abide by the Pension Clause in the bankruptcy provisions of PA 436. Although authorized by PA 436 to "place contingencies" on a local government's proceeding under Chapter 9—and thus could have made explicit that any bankruptcy plan must respect the Pension Clause—the Governor explicitly chose "not to impose any such contingencies." (Dkt. 1 at 16). The Emergency Manager has expressly stated that "there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons," which he states are permissible because "federal supremacy trumps state law." (Dkt. 505 at ¶12). The fact remains that unilateral impairment of pension rights is not possible without authorization of a bankruptcy petition, therefore the mere act of authorization is properly considered an impairment.

---

[20]"But Public Act 72 did not give emergency managers the power to modify collective bargaining agreements or pension rights. Critics of Public Act 72 complained that it did not give emergency managers the powers sometimes necessary to address municipalities' structural budget problems, especially financial problems flowing from pension commitments. Critics called for a new law, and Public Act 4 was born." *City of Pontiac Retired Employees Ass'n.*, 2013 WL 4038582 at *3(emphasis added).

65.     Second, the City argues that the Pension Clause does not conflict with PA 436 because it does not prohibit modification of pension rights in a Chapter 9 bankruptcy.  As more fully set forth in Part II.A below, the City's interpretation of the Pension Clause fails to afford meaning to its plain meaning and must be rejected as a matter of law.[21]

## C.     The Governor's Authorization Pursuant to PA 436 is not Valid and Void *Ab Initio* Under Michigan's Constitution, and so is That of the Emergency Manager

66.     The Governor is duty bound to uphold not stray from the Michigan Constitution. The Michigan Constitution demands that "the governor shall take care that the laws be faithfully executed." MICH. CONST. art. V, § 8.[22]  The single most important law for the Governor to uphold is the Michigan Constitution.  "[T]he plain provisions of the Constitution are paramount." *Twp. of Dearborn v. Dearborn Twp. Clerk*, 55 N.W.2d 201, 207 (Mich. 1952).  The proposition that the "Michigan Constitution is a limitation on the plenary power of government" is one "so basic as to require no citation." *Smith v. Michigan*, 410 N.W.2d 749 (Mich. 1987) (J. Boyle, concurring in part and dissenting in part).  It "is the fundamental law to which all other laws must conform." *Id.* "Public officers have and can exercise only such powers as are conferred on them by law." *Sittler v. Bd. of Control*, 53 N.W.2d 681, 684 (Mich. 1952) (citations omitted).  It is thus clear that the Michigan Constitution provides clear limitations on actions that may be taken by each branch of government, and no branch has the authority to eradicate constitutional

---

[21] *See Infra*  Part II.A.

[22] The Michigan Constitution requires that all officers—legislative, executive and judicial—in the state of Michigan must take an oath to support the Constitution of the United States and the Constitution of the state of Michigan. MICH. CONST. 1963 art. XI, § 1. Michigan law also requires that "[e]very person elected to the office of governor . . . before entering upon the duties of his office, shall take and subscribe to the oath as provided in section 1 of article 11 of the state constitution and deposit same with the secretary of state." M.C.L. § 168.64. In addition: "All persons now employed, or who may be employed by the state of Michigan . . .

31

guarantees. *See Musselman v. Governor of Mich.*, 533 N.W.2d 237, 244-45 (Mich. 1995); *People ex rel Metevier v. Therrien*, 45 N.W. 78, 80 (Mich. 1890) ("The Governor cannot, by any act of his own, enlarge the power granted him by the Legislature . . . [and] cannot foreclose the right of the courts to preserve . . . constitutional rights."). Accordingly, the Governor can only exercise the power granted to him by law, and he is unable to act in violation of the State Constitution.

67. As established above, the Governor is required to uphold the Michigan Constitution and, therefore, is duty-bound to prevent the City from diminishing or impairing the "accrued financial benefits" of its pension plan and retirement systems. Moreover, financial distress is not grounds for the Legislature or the Executive branch to abrogate the Michigan Constitution. Indeed, the Michigan Supreme Court has specifically ruled that the Governor cannot violate Article IX, section 24 - even if only done so "temporarily" or in response to a financial crisis. In *Musselman, supra,* a former Michigan governor attempted to reduce expenditures by decreasing appropriations to the schools' retirement system by $54 million. The plaintiffs, a group of current and retired public school employees, argued that the governor's actions violated the second sentence of Article IX, section 24, which requires "financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities." The governor argued that his power under Michigan Constitution article 5, section 20 (which permits the governor to "reduce expenditures") authorized him to do so. *Musselman*, 533 N.W.2d at 239-40.

68. The court disagreed with the governor and started by acknowledging the unique status of pension benefits: "pension obligations differ from nearly every other type of government spending insofar as they simply cannot be reduced or cut . . . Michigan

shall . . . take and subscribe to the oath or affirmation required of members of the legislature and

governmental units do not have the option . . . of not paying retirement benefits." *Musselman*, 533 N.W.2d at 243. The Court ruled that although the Michigan Constitution expressly allowed the Governor to reduce expenditures and that "education has not been immunized from emergency reductions," the governor still could not reduce expenditures if it ran afoul of another constitutional provision (namely, Article IX, section 24). *Id.* at 244. Further, "[Article 5, section 20] certainly would not authorize the government to refuse to satisfy its contractual obligations, such as pension payments to retirees," even "in an emergency." Id. The court also rejected the governor's argument that the violation was merely "temporary," holding that Governor lacks "authority to violate other constitutional provisions even temporarily." *Id.* at 245. Lastly, the court ruled that the Legislature was likewise barred from adopting the governor's unconstitutional strategy: "Insofar as it authorizes the Governor to select and implement spending cuts in an emergency, it simply affords him legislative power. But the Legislature does not have authority to fail to prefund a pension fund, even temporarily." *Id.*

69.     Michigan Courts have long held that a Governor's actions outside the confines of the Michigan Constitution are "null and void." *Dullam v. Willson*, 19 N.W. 112 (Mich. 1984) . Moreover, such acts are deemed void ab initio. *See, e.g., McKane v. City of Lansing*, No. 96-2228, 1998 U.S. App. LEXIS 649, at *12-15 (6th Cir. Jan. 14, 1998) (affirming district court determination that city council's adoption of an early retirement plan was void *ab initio* when adopted via resolution, not ordinance). If an act is void *ab initio*, it is as though the act never occurred in the first place. *See Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329, 330 (Mich. 2012) (citing Black's Law Dictionary (9th ed.) and defining void *ab initio* as "[n]ull from the beginning, as from the first moment. . .").

---

other public officers by [MICH. CONST. art. XI, § 1]." M.C.L. § 15.151.

70.     In the municipal bankruptcy context, if the government official or entity authorizing the bankruptcy is acting *ultra vires*, then the bankruptcy filing is *not* "specifically authorized" and the petition must be dismissed. *See Suffolk Off-Track Betting Corp.*, 462 B.R. at 420-21 ("The County Resolution exceeded Suffolk County's authority and is therefore unconstitutional and void . . . Accordingly, Suffolk OTB has not complied with § 109(c)(2), and is therefore ineligible to be a debtor under chapter 9.") (internal citations omitted).

71.     Despite the Governor's obligation to the Michigan Constitution and in full knowledge of the Emergency Manger's recommendation to impair pensions and other retirement compensation benefits, on July 18, 2013 the Governor unconditionally authorized  the City's Chapter 9 filing.   In this case, the Governor exceeded his authority under the Michigan Constitution by authorizing the Emergency Manager to file a Chapter 9 petition without conditioning that authorization upon the preservation of the State constitutional protection of accrued pension benefits, and his action was therefore *ultra vires* and void *ab initio*. *McKane v. City of Lansing*, No. 96-2228, 1998 U.S. App. LEXIS 649, at *12-15. Because the Governor's action was void *ab initio*, the Emergency Manager had no authority to file a Chapter 9 petition under PA 436, and his actions in doing so were similarly void *ab initio*.*Id.*

72.     The Governor is not capable of delegating authority that he does not have to a third party (*i.e.*, the Emergency Manager) to take actions that would result in an abrogation of constitutional provisions.   In essence, the Governor cannot do indirectly what he cannot do directly. *See Attorney Gen ex rel Eaves v. State Bridge Com.,* 269 N.W. 388, 392 (Mich. 1936) ("It is a fundamental and familiar proposition of law that the State may not do indirectly that which it is forbidden to do directly.").

73.     It therefore follows that neither the Legislature nor the Governor may delegate to the Emergency Manager the authority to impair or diminish the accrued financial benefits of the Retirement Systems and their participants because Article IX, section 24 of the Michigan Constitution expressly denies the Governor that power. *See Musselman*, 533 N.W.2d at 245.

### D.     The City Cannot Satisfy Bankruptcy Code 109(c)(5) and is Subject To Dismissal Under Bankruptcy Code 921(c)

74.     The City's bankruptcy petition is subject to dismissal pursuant to section 921(c) of the Bankruptcy Code because the filing was in bad faith, and not in compliance with section 109(c)(5). Section 921(c) of the Bankruptcy Code provides that "[a]fter any objection to the petition, the court, after notice and a hearing, may dismiss the petition if the debtor did not file the petition in good faith or if the petition does not meet the requirements of this title." 11 U.S.C. § 921(c). While this section is written in the permissive "may," courts have held that this section *requires* dismissal if the chapter 9 petition was not filed in good faith or the debtor does not meet the requirements of chapter 9. *In re Valley Health System,* 383 B.R. 156, 160 (Bankr. C.D. Cal. 2008); *In re County of* Orange, 183 B.R. 594, 599 (Bankr. C.D. Cal. 1995); *Int'l Ass'n of Firefighters, Local 1186*, 408 B.R. at 289.

75.     "Good faith is not defined in the Bankruptcy Code." *In re McCurtain Mun. Auth.*, No. 07-80363, 2007 WL 4287604, at *4 (Bankr. E.D. Okla. Dec. 4, 2007). However, the essence of the good faith requirement is to "prevent abuse of the bankruptcy process." *In re Villages at Castle Rock Metro Dist. No.* 4, 145 B.R. 76, 81 (Bankr. D. Colo. 1990). Courts have looked to the good faith requirements for Chapter 11 cases to determine whether a Chapter 9 Petition has been filed in good faith. *McCurtain Mun. Auth.*, 2007 WL 4287604 at *4 (referencing chapter 11 good faith standards to determine whether chapter 9 petition was filed in good faith) (quoting *Villages at Castle Rock*, 145 B.R. at 81); *County of Orange*, 183 B.R. at 608

(observing that "courts have ... applied to chapter 9 cases the judicial reasoning that developed in chapter 11 cases" regarding good faith).  Relevant considerations regarding good faith under chapter 9 include "whether the City's financial problems are of a nature contemplated by chapter 9, whether the reasons for filing are consistent with chapter 9, the extent of the City's pre-petition efforts to address the issues, the extent that alternatives to chapter 9 were considered, and whether the City's residents would be prejudiced by denying chapter 9 relief." *Stockton*, 493 B.R. 772, 794 (Bankr. E.D. Cal. 2013) (citing 2 COLLIER ON BANKRUPTCY ¶ 921.04[2]).  There is no good faith negotiation if a party "choose to ignore clear, unambiguous contractual rights of the other party." *In re Sullivan County Regional Refuse Disposal District*, 25 B.R. 60, 78 (Bankr. D.N.H. 1994).  *A fortiori*,  there can be no finding of good faith if an appointed state official consciously ignores the Michigan constitutional proscriptions under the Pension Clause.

76.     That the Emergency Manager and the Governor) consciously ignored "clear, unambiguous" contractual rights protected by the Pension clause was manifested on many occasions.  The prepetition actions of the Emergency Manger tend to indicate that at all times since his appointment the City was on a path careening towards a Chapter 9 filing. Both the Governor and Emergency manager evidenced a desire to achieve a result that they knew was unconstitutional as a matter of Michigan law.  Even before the appointment of Kevyn Orr as Emergency Manager, Mr. Orr put in writing his views that the planning for a chapter 9 was a "run around" the Michigan constitution and the repeal of PA 4.  PA 4 was crafted with the intent of impairing retirement compensation due to retired municipal employees.  *City of Pontiac Retired Employees Ass'n*., 2013 WL 4038582 at *3.  The Emergency Manager waited until  five weeks before obtaining authorization to file to submit his first "creditor proposal" to creditors, more  than fifteen months after a financial review team issued its initial report advising that the

36

13-53846-tjt   Doc 2300-4   Filed 12/23/13   Entered 12/24/13 20:01:29   Page 44 of 78
13-53846-swr   Doc 3005   Filed 09/16/13   Entered 09/16/13 23:11:27   Page 44 of 78    431

city was "in a condition of severe financial distress." The Emergency Manager's June 14, 2013 City Proposal specifically stated "there *must be significant cuts in accrued, vested pension amounts for both active and currently retired persons*." (Ex A. to Dkt. 11 at 116) (emphasis added).

77.     Further, while retiree associations, the Retirement System and various unions all evidenced a desire to "negotiate" to avoid a chapter 9 filing,   rendering negotiations practicable,[23] there were no negotiations with creditors – merely a take it or leave it proposal. See (Dkts. 497, 506 and 512).[24]   There is no evidence that the City investigated  other alternatives to chapter 9.  It was preparing for a chapter 9 filing months before any creditor meetings to discuss restructuring options even started, and refused to negotiate with major creditor constituencies as required. Simply put, the predetermined filing was not done in good faith as required by Section 109(c)(5) and should be dismissed under Section 921(c).

---

[23]Despite the existence of the Weiler Class Settlement, and the presence of several retiree associations, the possibility of a defendants class action to bind all retirees to an agreed proposal seems never to have occurred to the City.

[24]The sole exception may have been the Swap Counterparties, whose negotiations led to the Forbearance Agreement and the assumption motion.  *See* Motion to Assume Lease or Executory Contract, *In re City of Detroit, Michigan*, Debtor, No. 13-53846 (Bankr. E.D. Mich. Aug. 19, 2013) (Dkt. 505 at ¶ 12).

## CONCLUSION

Wherefore, for the above reasons, the City of Detroit, Michigan's Chapter 9 petition should be dismissed and the Committee afforded all further relief that is just and equitable.

Dated: New York, New York
September 10, 2013

Carole Neville
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800
carole.neville@dentons.com

Sam J. Alberts
DENTONS US LLP
1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005-3364
Tel: (202) 408-6400
Fax: (202) 408-6399
sam.alberts@dentons.com

By: /s/ Claude D. Montgomery
Claude D. Montgomery (P29212)
SALANS FMC SNR DENTON
EUROPE LLP
Rockefeller Center
620 Fifth Avenue
New York, New York  10020
Direct: (212) 632-8390
claude.montgomery@dentons.com

By: /s/ Matthew E. Wilkins
Matthew E. Wilkins  (P56697)
Paula A. Hall (P61101)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
Direct: (248) 971-1711
Cell: (248) 882-8496
Fax: (248) 971-1801
wilkins@bwst-law.com
hall@bwst-law.com

*Counsel for the Official Committee of Retiree*

## CERTIFICATE OF SERVICE

I, Matthew E. Wilkins, hereby certify that service of the Objection of the Official Committee of Retirees to Eligibility of the City of Detroit, Michigan to be a Debtor Under Chapter 9 of the Bankruptcy Code was filed and served via the Court's electronic case filing and noticing system on September 10, 2013.

*/s/* Matthew E. Wilkins

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
------------------------------------------------------x
                                     :
In re                                :    Chapter 9
                                     :
CITY OF DETROIT, MICHIGAN,           :    Case No. 13-53846
                                     :
                       Debtor.       :    Hon. Steven W. Rhodes
                                     :
                                     :
                                     :
------------------------------------------------------x
```

## CITY OF DETROIT'S REPLY TO THE
## OBJECTION OF THE OFFICIAL COMMITTEE OF
## RETIREES TO THE ENTRY OF AN ORDER FOR RELIEF

# TABLE OF CONTENTS

I.    Preliminary Statement ........................................................................1

II.   The Pensions Clause Does Not Invalidate the City's
      Clear Authorization to Be a Debtor Under Chapter 9 ....................................3

      A.    No Pensions Have Been Diminished or Impaired ...............................3

      B.    The Pensions Clause Does Not Preclude a Michigan
            Municipality from Commencing a Chapter 9 Case ...........................5

            1.    By Its Plain Terms, the Pensions Clause
                  Does Not Affect Actions in Chapter 9 .......................................5

            2.    Pensions Are Entitled to No More
                  Protection Than Contractual Obligations .................................7

            3.    On the City's Reading, No Part
                  of the Pensions Clause Is Superfluous .....................................9

III.  Chapter 9 Is Not Unconstitutional ...................................................13

IV.   The City Has Satisfied Sections 109(c)(5)
      and 921(c) of the Bankruptcy Code ..........................................16

      A.    The City's Petition Was Filed in Good Faith ...................................17

      B.    The City Negotiated with Its Creditors in Good Faith ......................18

      C.    Negotiations with the City's Creditors Were Impracticable .............20

V.    Conclusion .................................................................................22

# TABLE OF AUTHORITIES

CASES

Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,
 548 U.S. 291 (2006)............................................................11

Ass'n of Prof'l & Technical Emps. v. City of Detroit,
 398 N.W.2d 436 (Mich. Ct. App. 1986)................................8

Ass'n of Retired Emps. v. City of Stockton
 (In re City of Stockton),
 478 B.R. 8 (Bankr. E.D. Cal. 2012)....................................15

Bond v. United States,
 131 S. Ct. 2355 (2011).......................................................15

Bruesewitz v. Wyeth LLC,
 131 S. Ct. 1068 (2011).......................................................13

Coca-Cola Bottling Co. of N.Y., Inc. v.
 Soft Drink & Brewery Workers Union Local 812,
 242 F.3d 52 (2d Cir. 2001) ......................................... 10-11

Conn. Nat'l Bank v. Germain,
 503 U.S. 249 (1992)............................................................11

In re Constitutionality of 2011 PA 38,
 806 N.W.2d 683 (Mich. 2011)..............................................7

In re Enrolled Senate Bill
 (Advisory Opinion re Constitutionality of 1972 PA 258),
 209 N.W.2d 200 (Mich. 1973) ..............................................7

In re Sullivan Cnty. Reg'l Refuse Disposal Dist.,
 165 B.R. 60 (Bankr. D.N.H. 1994)......................................19

Kosa v. State Treasurer,
 292 N.W.2d 452 (Mich. 1980)...............................................7

Krause v. Titleserv, Inc.,
 402 F.3d 119 (2d Cir. 2005) ...............................................11

Lamie v. U.S. Tr.,
    540 U.S. 526 (2004)................................................................11

Microsoft Corp. v. i4i Ltd. P'ship,
    131 S. Ct. 2238 (2011)..........................................................12

Musselman v. Governor of Mich.,
    533 N.W.2d 237 (Mich. 1995).................................................8

New York v. United States,
    505 U.S. 144 (1992)..............................................................14

Printz v. United States,
    521 U.S. 898 (1997)..............................................................14

Rodriguez de Quijas v. Shearson/Am. Express, Inc.,
    490 U.S. 477 (1989)..............................................................13

Shook v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.,
    132 F.3d 775 (D.C. Cir. 1998).................................................10

United States v. Bekins,
    304 U.S. 27 (1938)........................................................4-5, 13-14

United States v. Hansen,
    772 F.2d 940 (D.C. Cir. 1985).................................................11

## CONSTITUTIONS

Mich. Const. art. IX, § 24 ................................................................*passim*

## STATUTES

11 U.S.C. § 109........................................................................... 16-21

11 U.S.C. § 903..............................................................................15

11 U.S.C. § 921........................................................................... 16-21

11 U.S.C. § 943................................................................................6

11 U.S.C. § 944................................................................................6

**OTHER AUTHORITIES**

STATE OF MICH., CONSTITUTIONAL CONVENTION OF 1961: OFFICIAL RECORD
(Austin C. Knapp ed., 1964) .................................................................................7

-iv-

13-53846-tsw Doc 2300-4 Filed 08/23/13 Entered 08/24/13 00:00:09 Page 52 of 78
13-53846-tsw Doc 918 Filed 08/27/13 Entered 08/27/13 17:30:04 Page 52 of 78 439

The City of Detroit (the "City" or the "Debtor") respectfully submits this reply to the objection (Docket No. 805) (the "Retiree Committee Objection") of the official committee of retirees appointed in this chapter 9 case (the "Retiree Committee") to the entry of an order for relief in this chapter 9 case (any such order, an "Order for Relief").

## I.     PRELIMINARY STATEMENT

As set forth in the City's (A) Memorandum in Support of Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code (Docket No. 14) (the "Eligibility Memorandum"), (B) first-day declarations and (C) Consolidated Reply to Objections to the Entry of an Order for Relief (Docket No. 765) (the "Consolidated Reply"),[1] the City has exhaustively documented – through argument and supporting evidence – its overwhelming need for debt relief and its eligibility to be a debtor under chapter 9 of the Bankruptcy Code.

The Retiree Committee Objection offers little to no argument that the City has not already addressed at length in its previous submissions to the Court. Rather, the Retiree Committee Objection limits itself to rehearsing and re-casting arguments made by other objectors (and already addressed by the City in its Consolidated Reply), while positioning the Retiree Committee for procedural

---

[1]     Capitalized terms not otherwise defined herein shall have the meaning given to them in the Consolidated Reply, which is incorporated herein in its entirety.

maneuvering and delaying tactics in other fora.[2]  This Reply addresses each of the

Retiree Committee's arguments in turn (with citation to the City's prior

submissions where appropriate) and again demonstrates (A) the consonance of the

City's chapter 9 filing with both the Federal and Michigan Constitutions, (B) the

City's satisfaction of the eligibility requirements set forth at section 109(c) of the

Bankruptcy Code and (C) the City's good faith in filing its chapter 9 petition.

　　　Accordingly, for the reasons set forth herein and in the City's prior filings,

the City is eligible to be a debtor under chapter 9, and the Court should promptly

enter an Order for Relief.

---

[2]　　See Retiree Committee Objection, at p.14, n.10 (stating the Retiree
Committee's intention to file a motion to withdraw the reference of "the
eligibility dispute"); The Official Committee of Retirees' Motion to
Withdraw the Reference (Docket No. 806), filed on September 11, 2013
(subsequently referred to the United States District Court for the Eastern
District of Michigan, Case No. 2:13-cv-13873-BAF-PJK); Motion by
Official Committee of Retirees to Stay Deadlines and the Hearings
Concerning a Determination of Eligibility Pending Decision on Motion to
Withdraw the Reference (Docket No. 837), filed on September 13, 2013.

## II. THE PENSIONS CLAUSE DOES NOT INVALIDATE THE CITY'S CLEAR AUTHORIZATION TO BE A DEBTOR UNDER CHAPTER 9

The Retiree Committee joins various other Objectors in arguing that the State's authorization of the City to become a debtor under chapter 9 violated the Pensions Clause.[3]  It is mistaken.

### A.   No Pensions Have Been Diminished or Impaired

As the City has explained, the mere authorization and filing of the City's chapter 9 petition did not violate the Pensions Clause because it did not "diminish or impair" any pension.[4]  The City's pension obligations remain unimpaired, and they cannot be impaired in chapter 9 unless and until this Court enters an order, likely in connection with a plan of adjustment, to that effect.

Nonetheless, according to the Retiree Committee, "the mere act of authorization is properly considered an impairment [of pensions]" because "unilateral impairment of pension rights is not possible without authorization of a bankruptcy petition."[5]  This argument fails for several reasons.  *First*, chapter 9 does not allow for any "unilateral" impairment by the City.  The only ways

---

[3]   Mich. Const. art. IX, § 24 ("The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.").

[4]   Consolidated Reply, at pp. 21-22.

[5]   Retiree Committee Objection, at ¶ 64.

impairment can occur in chapter 9 are (a) if the relevant parties agree to modify benefits or (b) by order of the bankruptcy court after a full and fair hearing where creditors can raise objections. *Second*, the fact that impairment of pensions may not be possible absent the authorization of a chapter 9 case does *not* mean that authorization equals impairment. Obtaining a passport may be necessary to travel abroad, but the two are hardly the same, nor does the former mandate the latter. So, too, here.

*Finally*, in equating "the mere act of authorization" with the impairment of pensions, the Retiree Committee's argument is squarely at odds with United States v. Bekins, 304 U.S. 27 (1938). In Bekins, the Supreme Court indicated that a state's authorization of municipal bankruptcy does not impair the state's obligations but merely "invites the intervention of the bankruptcy power to save its agency which the State itself is powerless to rescue." Id. at 54. In other words, even where states are themselves "powerless" to impair their own obligations, they are not powerless to authorize bankruptcy, where obligations may be impaired under federal law. Indeed, as the City has already noted, if the mere act of authorizing municipal bankruptcy were equivalent to impairment, then every authorization of municipal bankruptcy would trigger the protection of the Contracts Clause and every authorization of municipal bankruptcy in Michigan would similarly

implicate the State Contracts Clause.[6]  That cannot be correct, as no court since

Bekins has found it necessary to conduct a Contracts Clause analysis to determine

the validity of a chapter 9 authorization and we are not aware that any court has

found it necessary to consider the constitutional protection of contracts by

Michigan or other states in considering a chapter 9 authorization by statute or

executive action.  The Retiree Committee makes no attempt to respond to this

point.

B.      The Pensions Clause Does Not Preclude
        A Michigan Municipality From Commencing a Chapter 9 Case

The Retiree Committee spends multiple pages arguing that the Pensions

Clause provides such "special" and "absolute" protection that it not only prohibits

the impairment of pensions in chapter 9, it also prohibits the State from authorizing

any chapter 9 case where pensions might be impaired.[7]  The Retiree Committee is

incorrect.

1.      *By Its Plain Terms, the Pensions Clause*
        *Does Not Affect Actions in Chapter 9*

The Retiree Committee simply fails to engage the City's argument

demonstrating that the Pensions Clause has no bearing on actions that might occur

---

[6]     Consolidated Reply, at pp. 24-25.

[7]     Retiree Committee Objection, at ¶¶ 26-30.

in chapter 9.[8]  By its plain terms, the Pensions Clause applies only to impairments "[ ]by" the State or its political subdivisions.  The text expressly states that pensions are contractual obligations "of the state and its political subdivisions … which may not be diminished or impaired *thereby*."  Mich. Const. art. IX, § 24 (emphasis added).  This language could not be any clearer:  the Pensions Clause prohibits impairments "[ ]by" the State and its political subdivisions.  It does not speak to, much less prohibit, impairments "[ ]by" any other lawful authority.  This limitation is crucial, because non-consensual impairment of pensions in chapter 9 can occur only by order of a federal bankruptcy court pursuant to federal law.[9]  Consequently, the Pensions Clause is consistent with any impairment that might take place in chapter 9.  For that reason alone, there is no need to accept the Retiree Committee's claims that the bankruptcy process somehow "suspend[s] the Pensions Clause," or is otherwise inconsistent with the Michigan Constitution.[10]

By ignoring the relevant text of the Pensions Clause, the Retiree Committee overlooks the key similarity between the Pensions Clause and the

---

[8]     Consolidated Reply, at pp. 24-25.

[9]     See 11 U.S.C. § 943(b) ("*The court* shall confirm the plan …") (emphasis added); 11 U.S.C. § 944(b)(1) ("[T]he debtor is discharged from all debts" only "as of the time when … the plan is confirmed.").

[10]    Retiree Committee Objection, at ¶ 33.

Contracts Clause.  Both clauses apply only *against impairments by the State*.

Neither clause purports to restrict any impairment *by federal law*.  For that reason,

it is beside the point (and also incorrect) to assert that the protection for pensions is

in some sense more "absolute" than the protection of contracts.  What matters is

that the provision has no bearing on actions taken in a chapter 9 case.

>    2.    *Pensions Are Entitled to No More*
>          *Protection than Contractual Obligations*

In any event, the Retiree Committee is mistaken in asserting that the

protection of pensions under the Pensions Clause is in any way different from the

protection of contracts under the Contracts Clause.  As the Michigan courts have

recognized, the Pensions Clause was enacted for the clear purpose of overturning

previous state-court decisions holding that pensions were not contractual in nature

and were, thus, revocable at will by public employers.[11]  Given that historical

purpose, there is no reason to think that the Pensions Clause was intended to grant

some "special and greater protection" for pensions.[12]

---

[11]   See In re Constitutionality of 2011 PA 38, 806 N.W.2d 683, 694
       (Mich. 2011); Kosa v. State Treasurer, 292 N.W.2d 452, 454-55
       (Mich. 1980); In re Enrolled Senate Bill (Advisory Opinion re
       Constitutionality of 1972 PA 258), 209 N.W.2d 200, 202 (Mich. 1973);
       STATE OF MICH., CONSTITUTIONAL CONVENTION OF 1961: OFFICIAL RECORD
       770-74, 2659, 3402 (Austin C. Knapp ed., 1964).

[12]   Retiree Committee Objection, at ¶ 28.

-7-

13-53846-tjtswr  Doc 2300-4  Filed 12/23/13  Entered 12/24/13 00:30:09  Page 159 of 78
13-53846-swr  Doc 918  Filed 09/12/13  Entered 09/12/13 17:30:04  Page 59 of 78    446

The cases that the Retiree Committee cites as evidence of the "absolute" protection of the Pensions Clause are completely inapposite.[13]  Nowhere do these cases say that protection for pensions is "absolute," or even different from the protection for contracts generally.  Indeed, the two main cases cited by the Retiree Committee strongly undermine the Retiree Committee's argument.[14]  One case finds that the purpose of the Pensions Clause "was to obviate the harsh rule that pensions granted by public authorities were not contractual obligations, but gratuitous allowances …."[15]  The other case cited by the Retiree Committee states repeatedly that pension benefits must be treated as "contractual right[s]" and "contractual obligations," because "[m]any delegates to the 1961 Constitutional Convention perceived as unfair the rule that pensions granted by public authorities were not contractual obligations, but rather gratuitous allowances that could be revoked at will."[16]

Moreover, because none of the cases cited by the Retiree Committee has anything to do with bankruptcy, these cases do not even begin to support the Retiree Committee's remarkable claim that that the Pensions Clause implicitly

---

[13]    See Musselman v. Governor of Mich., 533 N.W.2d 237, 244-45 (Mich. 1995); Ass'n of Prof'l & Technical Emps. v. City of Detroit, 398 N.W.2d 436, 439 (Mich. Ct. App. 1986).

[14]    Retiree Committee Objection, at ¶¶ 29, 67-68.

[15]    Ass'n of Prof'l and Technical Emps., 398 N.W.2d at 438.

[16]    Musselman, 533 N.W.2d at 241 n.8, 243 n.12.

-8-

13-53846-tjt  Doc 2300-4  Filed 12/23/13  Entered 12/24/13 00:30:29  Page 60 of 78
13-53846-swr  Doc 3901  Filed 09/17/13  Entered 09/17/13 17:30:04  Page 60 of 78     447

prohibits the State from authorizing a chapter 9 case. Indeed, as the City has noted, the Pensions Clause was ratified at a time when Michigan law expressly authorized municipal bankruptcy, without eliciting any concern of a conflict.[17] The Retiree Committee does not respond to this reality.

Finally, contrary to the Retiree Committee's argument, there is no significance to the fact that Michigan has deemed pensions to be contractual obligations via an express constitutional provision, while other states such as California and Alabama have reached the same result through judicial decisions interpreting the Contracts Clause.[18] The salient point is that, in all of these states, pensions are protected as contractual obligations, and in none of these states does that protection pose any obstacle to the authorization of the filing of a case under chapter 9.

       3.    *On the City's Reading,*
               *No Part of the Pensions Clause Is Superfluous*

The Retiree Committee argues that granting pensions the same level of protection as contracts would render some of the text of the Pensions Clause superfluous.[19] According to the Retiree Committee, if the drafters had intended to treat pensions and contracts equally, they would have simply stated that pensions

---

[17]    Consolidated Reply, at p. 26.

[18]    Retiree Committee Objection, at ¶ 30.

[19]    Retiree Committee Objection, at ¶¶ 26-29.

-9-

13-53846-tjt Doc 2300-4 Filed 12/23/13 Entered 12/24/13 00:30:00 Page 61 of 78
13-53846-swr Doc 3018 Filed 09/27/13 Entered 09/27/13 17:30:04 Page 61 of 78   448

are "contractual obligations" of the State, without going on to say that such obligations "shall not be diminished or impaired thereby." Mich. Const. art. IX, § 24.

The Retiree Committee is incorrect.  In fact, the drafters of the Pensions Clause had good reason to emphasize the point that treating pensions as contractual obligations would mean that they could not "be diminished or impaired."  By expressly stating this prohibition, the drafters made explicit both the purpose and the real-world effect of granting contractual status to pensions – namely, to prevent them from being revoked at will by public employers.  With this explanatory language, the drafters sent a very clear signal, both to potential ratifiers and to the public at large, as to what the consequence of adopting the Pensions Clause would be.  If the drafters had omitted this language, the legal effect of the provision would have been far less clear.  In light of this clarifying purpose, the canon against superfluity relied upon by the Retiree Committee does not apply.

It is not uncommon for a legislature to "draft[ ] provisions that appear duplicative of others – simply, in Macbeth's words, 'to make assurance double sure.'"  Shook v. D.C. Fin. Responsibility & Mgmt. Assistance Auth., 132 F.3d 775, 782 (D.C. Cir. 1998).  "While the impermissibility of [a] procedure may have been implicit absent the new limiting phrase … it would not have been explicit, and the phrase is therefore not superfluous."  Coca-Cola Bottling Co. of N.Y., Inc. v. Soft

<u>Drink & Brewery Workers Union Local 812</u>, 242 F.3d 52, 57 (2d Cir. 2001).

Aside from benefitting the public, redundant language can serve "as a means of clarifying for its own Members who voted upon [a law] the consequences of their action." <u>United States v. Hansen</u>, 772 F.2d 940, 946 (D.C. Cir. 1985). Accordingly, there is "no reason to ascribe specialized meaning to [a] phrase simply for the sake of avoiding slight repetition in the statutory text. Some repetition can help clarify the meaning of a statute, and [courts] are reluctant to endorse an awkward reading of its words for no better reason than to satisfy the canon [against superfluity]." <u>Krause v. Titleserv, Inc.</u>, 402 F.3d 119, 127-28 (2d Cir. 2005). As the U.S. Supreme Court has recognized, "[r]edundancies across statutes are not unusual events in drafting," <u>Connecticut National Bank v. Germain</u>, 503 U.S. 249, 253 (1992), and the "preference for avoiding surplusage constructions is not absolute," <u>Lamie v. United States Trustee</u>, 540 U.S. 526, 536 (2004). <u>See</u> <u>also</u> <u>Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy</u>, 548 U.S. 291, 299 n.1 (2006) (rejecting the notion that "costs" and "expenses" must be given independent meaning, and noting that "[w]hile it is generally presumed that statutes do not contain surplusage, instances of surplusage are not unknown").

In addition, by stating that pensions are contractual obligations of "the State and its political subdivisions" that "shall not be diminished or impaired *thereby*," the drafters of the Pensions Clause accomplished another important purpose. They

-11-

13-53846-tjt Doc 2300-4 Filed 09/23/13 Entered 09/24/13 00:31:09 Page 16 of 78
13-53846-swr Doc 3901-4 Filed 09/12/13 Entered 09/12/13 17:30:04 Page 63 of 78    450

made clear that the prohibition applies only to the State and its political subdivisions, and does not restrict the impairment of pensions "[ ]by" operation of federal law and by order of a federal bankruptcy court.

Ironically, the canon against superfluity cuts strongly *against* the Retiree Committee's reading of the Pensions Clause. If the drafters had really intended to treat pensions and contracts differently, they would have had no reason to refer to pensions as "contractual obligation[s]." Instead, they could have simply drafted the provision to say, "Pensions shall not be diminished or impaired." Because the Retiree Committee's own reading renders the "contractual obligation" language superfluous, the Retiree Committee cannot invoke the superfluity canon in its favor. See Microsoft Corp. v. i4i Ltd. P'ship, 131 S. Ct. 2238, 2248 (2011) ("[T]he canon against superfluity assists only where a competing interpretation gives effect to every clause and word of a statute.") (internal quotation marks omitted).

Indeed, on the Retiree Committee's reading, the language of the Pensions Clause would be worse than superfluous – it would be affirmatively confusing. According to the Retiree Committee, the drafters went out of their way to deem pensions to be "contractual obligation[s]," and then in the very next breath decreed that pensions are entitled to a completely unique protection that is entirely different from the protection that applies to contractual obligations. Such an interpretation places the Pensions Clause at odds with itself and is entirely unwarranted.

"[T]he rule against giving a portion of text an interpretation which renders it superfluous does not prescribe that a passage which could have been more terse does not mean what it says.  The rule applies only if verbosity and prolixity can be eliminated by giving the offending passage, or the remainder of the text, a competing interpretation."  Bruesewitz v. Wyeth LLC, 131 S. Ct. 1068, 1078 (2011).

## III.    CHAPTER 9 IS NOT UNCONSTITUTIONAL

Like other Objectors, the Retiree Committee also contends that, "in light of recent Supreme Court precedent," the Supreme Court has surreptitiously invalidated chapter 9 by "weaken[ing] if not reject[ing] the entire foundation of Bekins."[20]  Remarkably, however, the Retiree Committee concedes that there is a "compelling reason" not to hold chapter 9 unconstitutional:  the Supreme Court upheld a substantially identical municipal bankruptcy statute over 70 years ago in Bekins.[21]  Because Bekins has "direct application" in this case and has never been overruled by the Supreme Court, this Court must follow it, even if it "appears to rest on reasons rejected in some other line of decisions."  Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989).

---

[20]     Retiree Committee Objection, at ¶¶ 35, 37

[21]     Retiree Committee Objection, at ¶ 35 n.16.

It also clear that, contrary to the Retiree Committee's claim, none of the Supreme Court's federalism cases since Bekins casts even the slightest doubt on the ongoing constitutional validity of chapter 9. Perhaps recognizing the weakness of its case, the Retiree Committee makes no effort to respond to any of the City's arguments in the Consolidated Reply.[22] Instead, the Retiree Committee merely restates the same argument advanced by the other Objectors: chapter 9's infringement of state sovereignty cannot be cured by State consent. Retiree Committee Objection, at ¶¶ 42-45.

Conspicuously absent from the Retiree Committee Objection, however, is any explanation of how chapter 9 actually effects such an infringement. The Retiree Committee, like the other Objectors, relies on New York v. United States, 505 U.S. 144 (1992), and Printz v. United States, 521 U.S. 898 (1997), in support of its argument. Those cases, however, stand only for the proposition that "[t]he Federal Government may not compel the States to enact or administer a federal regulatory program." Printz, 521 U.S. at 933 (quoting New York, 505 U.S. at 188). Chapter 9, by contrast, does not compel States to enact, administer or otherwise

---

[22]    Consolidated Reply, at pp. 9-19.

participate in any federal bankruptcy scheme.  To the contrary, State participation is wholly voluntary.[23]

Not only is chapter 9 non-coercive, it is carefully crafted "to preserve the niceties of the state-federal relationship" for those States that voluntarily authorize their municipalities to seek bankruptcy relief.  <u>Ass'n of Retired Emps. v. City of Stockton (In re City of Stockton)</u>, 478 B.R. 8, 20 (Bankr. E.D. Cal. 2012).  Under 11 U.S.C. § 903, a bankruptcy court is prohibited from "limit[ing] or impair[ing] the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality."  Therefore, even if there is some core of sovereign State functions that cannot be ceded to the Federal Government by State consent, chapter 9 expressly prohibits the bankruptcy court from intruding on those core functions. The impairment of municipal obligations by a bankruptcy court does not prevent the State from controlling the municipality's political or governmental powers or in any other way intrude on the State's sovereignty.  If it did, the Supreme Court would not have upheld the municipal bankruptcy structure embodied in chapter 9.

---

[23]    The other case relied upon by the Retiree Committee, and by the other Objectors as well, is <u>Bond v. United States</u>, 131 S. Ct. 2355 (2011).  Retiree Committee Objection, at ¶ 40.  <u>Bond</u>, however, does not delineate the line between federal and state power; it merely holds that an individual who is a party to an otherwise justiciable case or controversy has standing to challenge a federal statute on grounds that it intrudes on powers reserved to the States.  <u>Bond</u>, 131 S. Ct. at 2366-67.

-15-

Accordingly, for all of the foregoing reasons, the Retiree Committee's objection that the City was not specifically authorized to commence this chapter 9 case – and, thus, that section 109(c)(2) of the Bankruptcy Code was not satisfied – should be overruled.

## IV. THE CITY HAS SATISFIED SECTIONS 109(C)(5) AND 921(C) OF THE BANKRUPTCY CODE

Having devoted nearly its entirety to the various constitutional-based arguments addressed above, the Retiree Committee Objection devotes less than three pages to the following issues: (A) whether the City negotiated in good faith with its creditors as required by section 109(c)(5)(B) of the Bankruptcy Code; (B) whether such negotiations were "impracticable" as a threshold matter within the meaning of section 109(c)(5)(C) of the Bankruptcy Code; and (C) whether the City filed its petition for relief (the "Petition") in "good faith" within the meaning of section 921(c) of the Bankruptcy Code.[24] The Retiree Committee Objection with respect to the foregoing issues is rife with legal and factual errors and should be overruled.

---

[24] The Retiree Committee Objection does not specifically address either of the requirements for eligibility set forth at section 109(c)(3) of the Bankruptcy Code (insolvency) and section 109(c)(4) of the Bankruptcy Code (the City's desire to effect a plan to adjust its debts).

-16-

13-53846-tjt Doc 2300-4 Filed 12/23/13 Entered 12/24/13 00:31:29 Page 68 of 78
13-53846-swr Doc 908-4 Filed 09/17/13 Entered 09/17/13 17:30:04 Page 28 of 28    455

A.    The City's Petition Was Filed in Good Faith

The Retiree Committee contests the good faith filing of the City's Petition

under section 921(c) of the Bankruptcy Code.  Retiree Committee Objection,

at ¶ 74.  The Retiree Committee Objection, however, improperly conflates the

separate tests of sections 109(c)(5)(B) (good faith negotiations) and 921(c) (filing

of case in good faith) of the Bankruptcy Code by suggesting that an alleged failure

by the City to negotiate in good faith with its creditors also leads to the conclusion

that the Petition was not filed in good faith.  The Retiree Committee cites no

authority in support of this proposition.

Indeed, the Retiree Committee cites to the proper standard for

determinations of "good faith" under section 921(c) of the Bankruptcy Code but

then fails to even attempt to apply that standard.  This is understandable.  As the

City demonstrated in the Consolidated Reply, application of the standards

governing section 921(c) of the Bankruptcy Code to the relevant facts clearly

demonstrates the City's good faith in filing the Petition.  Consolidated Reply,

at pp. 62-69.  Even if the City had not negotiated in good faith with its creditors

(which it did), that would not lead to a conclusion that its Petition had been filed in

bad faith.

Accordingly, because the Retiree Committee (A) misconstrues the standard

applicable to the section 921(c) inquiry into good faith and (B) offers no argument

-17-

13-53846-tjt  Doc 2300-4  Filed 12/23/13  Entered 12/24/13 00:30:09  Page 69 of 78
13-53846-swr  Doc 901  Filed 09/12/13  Entered 09/12/13 17:30:02  Page 29 of 28    456

or evidence with respect to the proper standard, the Retiree Committee's objection that the Petition was filed in bad faith must be overruled.[25]

B.    The City Negotiated With Its Creditors in Good Faith

The Retiree Committee argues that, because the Emergency Manager and the Governor allegedly (and in some unspecified context) "ignored 'clear, unambiguous' contractual rights protected by the Pension clause," the City cannot be found to have negotiated in good faith with its creditors.  Retiree Committee Objection, at ¶¶ 75-76.  There is, of course, no evidence that any representative of the City or State "ignored" the existence of any contractual right to pension benefits at any time.  Rather, the Retiree Committee's complaint is with the potential *treatment* of those rights.  Indeed, the Retiree Committee appears to argue that, because the City has contemplated the impairment of pension benefits or proposed that the City and its retirees agree to a proposed treatment of claims arising from the underfunding of pension benefits, the City is incapable of satisfying section 109(c)(5)(B) of the Bankruptcy Code.  Yet, the proposed impairment of a class of creditors' claims cannot be fatal to a debtor's satisfaction of section 109(c)(5)(B) of the Bankruptcy Code, *which expressly contemplates*

---

[25]    The Retiree Committee's argument that "[t]here is no evidence that the City investigated other alternatives to chapter 9" is simply false.  As set forth in the Consolidated Reply, the Orr Declaration contains a wealth of evidence demonstrating this very fact.  <u>See</u> Consolidated Reply, at pp. 67-68; Orr Declaration, at ¶¶ 58-73.

-18-

13-53846-tjt  Doc 2300-4  Filed 12/23/13  Entered 12/24/13 10:30:29  Page 20 of 28
13-53846-swr  Doc 901  Filed 09/17/13  Entered 09/17/13 17:30:04  Page 20 of 28    457

*such impairment*.  See 11 U.S.C. § 109(c)(5)(B) (requiring that the debtor must have "negotiated in good faith with creditors and … failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class *that such entity intends to impair under a plan in a case under such chapter*") (emphasis added).  The Retiree Committee Objection must be overruled on this point.[26]

Moreover, the factual allegations contained in the Retiree Committee Objection that allegedly demonstrate a failure to engage in good faith negotiations – to the extent such allegations are not already addressed in the Eligibility Memorandum and Consolidated Reply[27] – are easily dismissed as unsupported, misleading or false.

- The Retiree Committee alleges that "[b]oth the Governor and Emergency [M]anager evidenced a desire to achieve a result that they knew was unconstitutional as a matter of Michigan law."  Retiree

---

[26]    In re Sullivan County Regional Refuse Disposal District, 165 B.R. 60 (Bankr. D.N.H. 1994), cited by the Retiree Committee in support of its argument, is easily distinguishable.  In Sullivan County, the debtor invented its own contractual right to set off valid debts in clear derogation of express contractual language to the contrary, and negotiated from that standpoint.  The bankruptcy court found that this tactic constituted bad faith.  Id. at 78.  No such invention of contractual rights was at work here.

[27]    For example, the charges that the City (a) presented its creditors with a "take it or leave it" proposal and (b) refused to negotiate with its creditors (see Retiree Committee Objection, at ¶ 77) are addressed in depth at pages 54-59 of the Consolidated Reply and pages 55-59 of the Eligibility Memorandum.

-19-

13-53846-tjt  Doc 2300-4  Filed 12/29/13  Entered 12/24/13 00:30:29  Page 21 of 78
13-53846-swr  Doc 3912  Filed 09/27/13  Entered 09/27/13 17:30:04  Page 24 of 78   458

Committee Objection, at ¶ 76. The Retiree Committee offers no evidence to support this false statement.

- The Retiree Committee alleges that the Emergency Manager believed that "the planning for a chapter 9 was a 'run around' the Michigan Constitution and the repeal of PA 4." Id. The Emergency Manager has never said anything of the sort, and the Retiree Committee, again, offers no evidence in support of its claim.

- The Retiree Committee criticizes the Emergency Manager for allegedly waiting "more than fifteen months after a financial review team issued its initial report advising that the City was 'in a condition of severe financial distress'" before submitting the June 14 Creditor Proposal to the public. Id. Of course, the Emergency Manager did not assume his office until March of 2013 and submitted his comprehensive, 128-page June 14 Creditor Proposal to the public a scant three months later.

Accordingly, the Retiree Committee Objection does nothing to undermine the City's showing that it has satisfied section 109(c)(5)(B) of the Bankruptcy Code, and its objections related thereto should be overruled.

## C. Negotiations with the City's Creditors Were Impracticable

The Retiree Committee's argument that negotiations with all of the City's creditors were practicable runs the length of one clause and one footnote. Specifically, the Retiree Committee contends that, because (1) certain entities indicated a willingness to engage the City in negotiations and (2) the City might have bound its retiree constituency to a restructuring through class action litigation, negotiations with all of the City's creditor constituencies were not "impracticable" within the meaning of section 109(c)(5)(C) of the Bankruptcy Code. Retiree Committee Objection, at ¶ 77, n.23.

-20-

13-53846-tjt  Doc 2300-4  Filed 12/29/13  Entered 12/29/13 10:30:29  Page 72 of 78
13-53846-swr  Doc 3091-4  Filed 03/12/13  Entered 03/12/13 10:30:04  Page 25 of 28      459

These "toss-in" arguments cannot be regarded as serious.  First, the plain language of section 109(c)(5)(C) of the Bankruptcy Code requires an inquiry into the impracticability of "negotiation."  11 U.S.C. § 109(c)(5)(C).  Even assuming that the City might have been able to bind its entire retiree constituency to the June 14 Creditor Proposal through (presumably mandatory non-opt out) class action litigation, such an attempt would have borne little resemblance to "negotiation."  The asserted availability of such an alternative is, thus, completely irrelevant to an inquiry under section 109(c)(5)(C) of the Bankruptcy Code.  Second, as set forth in detail in the Eligibility Memorandum and the Consolidated Reply, the alleged willingness of "retiree associations, the Retirement System[s] and various unions" (Retiree Committee Objection, at ¶ 77) to engage the City in negotiations does not render the City's negotiations with its creditors practicable where, among other things, (1) the City was unable to practicably negotiate with the holders of billions of dollars in bond debt, (2) no natural bargaining representative for all of the City's retirees exists and (3) contrary to the Retiree Committee's suggestion, many unions expressly indicated either unwillingness or legal inability to represent their retirees in negotiations with the City.

Accordingly, the Retiree Committee's suggestion that negotiations with the City's creditors were practicable should be rejected, and its objections related to section 109(c)(5)(C) of the Bankruptcy Code overruled.

## V.    CONCLUSION

For the foregoing reasons, the Court should promptly enter an Order for

Relief in this case.

Dated: September 17, 2013          Respectfully submitted,


   /s/  Bruce Bennett

Bruce Bennett (CA 105430)
JONES DAY
555 South Flowers Street
Fiftieth Floor
Los Angeles, California  90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
   STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 963-6420
Facsimile:  (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY

-23-

13-53846-tjt-swr  Doc 2300-4  Filed 09/29/13  Entered 09/24/13 10:30:04  Page 25 of 28
13-53846-tjt  Doc 9018  Filed 12/29/13  Entered 12/24/13 10:30:04  Page 25 of 28    462

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) |

## STATEMENT OF CONCURRENCE BY THE RETIREE ASSOCIATION PARTIES IN (1) THE OFFICIAL COMMITTEE OF RETIREES' MOTION TO WITHDRAW THE REFERENCE & (2) MOTION BY OFFICIAL COMMITTEE OF RETIREES TO STAY DEADLINES AND THE HEARINGS CONCERNING A DETERMINATION OF ELIGIBILITY PENDING DECISION ON MOTION TO WITHDRAW THE REFERENCE

The Retired Detroit Police & Fire Fighters Association ("RDPFFA"), Donald Taylor, individually and as President of the RDPFFA, the Detroit Retired City Employees Association ("DRCEA"), and Shirley V. Lightsey, individually and as President of the DRCEA (collectively "Retiree Association Parties") through their counsel, Lippitt O'Keefe, PLLC and Silverman & Morris, P.L.L.C., submit the following Statement Of Concurrence By The Retiree Association Parties In (1) The Official Committee Of Retirees' Motion To Withdraw The Reference (Dkt. 806) & (2) Motion By Official Committee Of Retirees To Stay Deadlines And The Hearings Concerning A Determination Of Eligibility Pending

Decision On Motion To Withdraw The Reference (Dkt. 837) (hereinafter referred to as the "Statement of Concurrence").

On August 19, 2013, the Retiree Association Parties filed one of the 109 objections to the City's eligibility to be a Chapter 9 debtor (Dkt. 497) ("Objection"). The Retiree Association Parties' Objection asserted multiple grounds to dispute the City's eligibility to be a Chapter 9 debtor, including both legal and factual deficiencies. Most pertinent to this Statement of Concurrence are the legal arguments relating to (1) the unconstitutional nature of the Governor's *unconditional authorization* to permit the City to file for bankruptcy and (2) that the City's take-it-or-leave it proposal cannot be in good faith because it specifically violates the Michigan Constitution, Article IX, §24.[1]

The Retiree Association Parties concur with the Official Retiree Committee that the bankruptcy court does not have jurisdiction to resolve the constitutional issues referenced above and that withdrawal of the reference is mandatory and/or that there is good cause for withdrawal of the reference.[2] Because the notions of fair play and substantial justice require that the retirees have their disputes decided

---

[1] The summarization of legal issues contained herein, does not limit or impair any arguments made by the Retiree Association Parties in their filed Objection.

[2] The Retiree Association Parties hereby adopt and include by reference the authority cited, along with the legal and factual arguments asserted by the Official Committee of Retirees in its motions, as if fully restated herein.

{00199984}                                    2

by an Article III court, it is also essential that the bankruptcy court not take any action prior to the resolution of the Motion to Withdraw the Reference.[3]

   *WHEREFORE,* the Retiree Association Parties request that reference to the bankruptcy court be withdrawn and that all hearings and trial(s) relating to the eligibility of the City to be a Chapter 9 debtor be stayed.

Dated: September 18, 2013                    Lippitt O'Keefe, PLLC

                                             /s/ Ryan C. Plecha
                                             Brian D. O'Keefe (P39603)
                                             Ryan C. Plecha (P71957)
                                             Counsel for Retiree Association Parties
                                             370 East Maple Road, 3rd Floor
                                             Birmingham, Michigan  48009
                                             (248) 646-8292
                                             rplecha@lippittokeefe.com

                                             SILVERMAN & MORRIS, P.L.L.C.
                                             Thomas R. Morris (P39141)
                                             Co-Counsel Retiree Association Parties
                                             30500 Northwestern Hwy, Suite 200
                                             Farmington Hills, Michigan 48334
                                             (248) 539-1330
                                             morris@silvermanmorris.com

---

[3] *See footnote 2.*

{00199984}                        3

13-53846-tjt  Doc 22004  Filed 12/23/13  Entered 12/24/13 00:01:32  Page 78 of 78
13-53846-swr  Doc 922  Filed 09/18/13  Entered 09/18/13 18:58:32  Page 78 of 78      465