### Page 269

1 Did you ever consider at the time of these meetings
2 whether you would accept in some scenario that
3 resulted from negotiations that there would be an
4 outcome to the restructuring where there would not be
5 cuts to accrued vested pension amounts?
6 A. That depends upon the proposal and the circumstances
7 of that proposed outcome.
8 Q. I think we're maybe misunderstanding each other. I'm
9 not asking you what you would have done --
10 A. Uh-huh.
11 Q. -- had you gotten a certain proposal or what you would
12 have done under some circumstances that did not occur.
13 What I'm asking you is as to what your actual state of
14 mind was at the time of these meetings. In your
15 actual state of mind --
16 A. Uh-huh.
17 Q. -- did you have -- did you consider and did you think
18 about that had there been certain negotiations that
19 led down a certain path, did you in your mind consider
20 that you might accept an outcome of the restructuring
21 where there would not be cuts to accrued vested
22 pension amounts?
23 A. I was receptive as we said to anything, but that would
24 depend upon the proposal.
25 Q. Did you say at any of these meetings that you would be

### Page 270

1 receptive to anything?
2 A. No, I think we did say that, yes.
3 Q. So you would have been receptive to an outcome where
4 there would be no cuts in accrued vested pension
5 amounts?
6 A. That depends upon what the proposal was. We were
7 receptive to hearing anything which we haven't heard,
8 so yes.
9 Q. And is that true today? Are you willing to consider
10 an outcome to this restructuring effort where there
11 would be no cuts to accrued vested pension amounts?
12 A. That depends upon the terms of the proposal. That's
13 -- that's -- we'll listen to -- we have said before
14 and we'll say again, we'll listen to anything, but it
15 depends upon the terms.
16 Q. Okay.
17 A. Your question's a hypothetical so I -- I don't -- it
18 depends upon what the terms are.
19 Q. Okay, well, we have a disagreement with whether my
20 question is a hypothetical, but it is what it is.
21 A. Okay.
22 Q. I can only ask you to answer it to the best of your
23 ability.
24 A. That's the best of my ability.
25 Q. Let me now ask you about what you actually said at the

### Page 271

1 June 14th meeting.
2 A. Okay.
3 Q. Do you have a recollection of any words you used to
4 communicate to those in attendance that you were open
5 to consider anything, if that's a fair
6 characterization of your prior testimony? Did you use
7 words to that effect and if so what were those words?
8 A. I don't remember the exact words, but I think we
9 expressed the sentiment that this is a proposal and
10 we're open to discussions.
11 Q. Well, that's a little different. I mean, to be open
12 to discussion. I'm not asking you -- I think you
13 testified a few minutes ago that you were open to
14 anything and if I'm mischaracterizing that, correct
15 me.
16 A. Well, no, anything -- and I meant anything meaning
17 anything in terms of discussions, that's why we styled
18 this, we never called this a plan, we never called
19 this a deal, we always called it a proposal because we
20 were open for discussions, any response, meaning
21 anything, so I think they're the same thing. I'm not
22 trying to be cute in any fashion, I'm just saying we
23 were open to responses, yes.
24 Q. Did you ever say to the attendees at the meetings or
25 communicate to the attendees in writing that the City

### Page 272

1 would consider an outcome to the restructuring effort
2 whereby there would be no cuts to accrued vested
3 pension amounts?
4 A. Did we ever communicate? I'm not sure that anyone on
5 my team did. To the best of my knowledge, I don't
6 recall doing that.
7 Q. Okay. Did you ever -- you or your team ever
8 communicate at the meetings or in writing to the
9 creditors that you would be open to a result of the
10 restructuring effort that would result in something
11 less than significant cuts in accrued vested pension
12 amounts?
13 A. Let me -- this line of questioning, let me respond
14 this way. I think it's fair to say that we
15 communicated that we were open to discussions and
16 suggestions and counterproposals. Depending upon what
17 the term of those discussions, suggestions and
18 counterproposals or anything were, we were willing to
19 discuss them.
20 Q. Let me turn your attention back to page 109 of the --
21 of Exhibit 9, which is the June 14th proposal for
22 creditors.
23 A. Yes.
24 Q. And I believe you were questioned about this earlier
25 so I'll keep this short, but the fifth bullet point

ESQUIRE  
800.211.DEPO (3376)  
EsquireSolutions.com



13-53846-tjt  Doc 2300-11  Filed 12/23/13  Entered 12/24/13 00:01:29  Page 1 of 4  
13-53846-swr  Doc 2107-5  Filed 12/16/13  Entered 12/16/13 00:43:09  Page 1 of 4

Page 277

1 based upon historical calculations and my obligations
2 under the statute.
3     MR. DeCHIARA: I would like to go off the
4 record just for a minute. I may be done, I just want
5 to consult with co-counsel.
6     MR. SHUMAKER: Sure.
7     THE VIDEOGRAPHER: Going off the record at
8 5:26 p.m.
9     (A brief recess was taken.)
10     THE VIDEOGRAPHER: We're back on the record
11 at 5:39 p.m.
12     REEXAMINATION
13 BY MR. ULLMAN:
14 Q. Mr. Orr?
15 A. Yes.
16 Q. Just a few more questions for you.
17 A. Sure, Mr. Ullman.
18 Q. You are the -- let me withdraw that.
19     The June 14th proposal that we've looked at
20 was put forward by you in your capacity as Emergency
21 Manager?
22 A. Yes.
23 Q. Does anyone besides you have authority to change or
24 modify the terms of the proposal?
25 A. Well, it's my proposal and under statute I have

Page 278

1 substantial discretion, but ultimately I report to the
2 governor, but as far as this, no one else in the City
3 does, no.
4 Q. No one other than you?
5 A. No one other than me.
6 Q. Now, in connection with a Chapter 9 proceeding that's
7 ongoing, in the event that you are unable to reach a
8 consensual resolution, do you intend to withdraw the
9 bankruptcy filing?
10     MR. SHUMAKER: Objection, calls for
11 speculation.
12 A. Yeah, I don't know what we'll do at that point.
13 Suffice it to say, if we can't reach a consensual
14 resolution, there are serious questions about the City
15 for a number of reasons.
16 Q. And if the creditors and objectors do not agree to the
17 terms that are set out in the June 14th proposal, do
18 you intend to put forward a plan in the Chapter 9
19 proceeding that treats pension contributions for
20 retirees differently than the way those contributions
21 are treated in the June 14th proposal?
22     MR. SHUMAKER: Same objection.
23 A. Yeah, I don't know what we intend to do. Suffice it
24 to say, I think the proposal speaks for itself and
25 we'll stand by that. We're hoping to get some

Page 279

1 movement on it.
2 Q. So as things now stand, there's no plan to put forward
3 anything else if the creditors and in particular the
4 retirees do not agree to what's set out in the June
5 14th proposal?
6 A. As it stands right now, we don't have a plan.
7     MR. ULLMAN: I have nothing further. Thank
8 you, Mr. Orr.
9     MR. SHUMAKER: Thank you, counsel.
10     THE WITNESS: Thank you.
11     THE VIDEOGRAPHER: Going off the record at
12 5:41 p.m.
13     (Discussion held off the record.)
14     THE VIDEOGRAPHER: We're back on the record
15 at 5:43 p.m.
16     EXAMINATION
17 BY MS. GREEN:
18 Q. Hi, Mr. Orr. We've met before.
19 A. Yes.
20 Q. My name is Jennifer Green, I represent the two
21 Retirement Systems for the City of Detroit.
22 A. Yes, Jennifer -- Ms. Green. Good to see you again.
23 Q. Thank you. Nice to you see you again too.
24     I have a question about Exhibit 11. I
25 don't know if you have it in front of you or not.

Page 280

1 A. Okay.
2     MR. SHUMAKER: Which one is that?
3     MS. GREEN: It's the July 18th letter from
4 the governor.
5     MR. SHUMAKER: Thank you.
6 A. Okay. It's in here. Here it is, got it. Okay.
7 Q. Do you happen to know who within the governor's office
8 drafted this letter?
9 A. No, I do not.
10 Q. Do you know if Jones Day had any input in drafting the
11 July 18th letter?
12 A. To the best of my knowledge I don't think they did.
13 Q. Do you know if they had any input or saw a preview of
14 the letter before it was delivered on the 18th?
15 A. To the best of my knowledge they did not. I know I
16 did not.
17 Q. Did you have any specific conversations with the
18 governor about this letter between July 16th and July
19 18th?
20     MR. SHUMAKER: Without counsel present?
21     MS. GREEN: With the caveat without counsel
22 present.
23 A. Without counsel present? No.
24 Q. Did you have any with counsel present?
25 A. Yes, I believe on the morning of the 18th.



800.211.DEPO (3376)  
EsquireSolutions.com

13-53846-tjt Doc 2300-5 Filed 12/23/13 Entered 12/24/13 00:01:29 Page 2 of 4  
13-53846-swr Doc 2107-5 Filed 12/13/13 Entered 12/13/13 00:45:09 Page 2 of 4

```
 1  State of Michigan)
 2  County of Genesee)
 3              Certificate of Notary Public
 4      I certify that this transcript is a complete, true and
 5  correct record of the testimony of the witness held in this
 6  case.
 7      I also certify that prior to taking this deposition,
 8  the witness was duly sworn or affirmed to tell the truth.
 9      I further certify that I am not a relative or an
10  employee of or an attorney for a party; and that I am not
11  financially interested, directly or indirectly, in the
12  matter.
13              WITNESS my hand this 19th day of September,
14  2013.
15
16
17              [signature]
18              Jeanette M. Fallon, CRR/RMR/CLR/CSR-3267
19              Certified Realtime Reporter
20              Registered Merit Reporter
21              Certified LiveNote Reporter
22              Certified Shorthand Reporter
23              Notary Public, Genesee, Michigan
24              Acting in Oakland County, Michigan
25              My Commission Expires:  9-19-18
```

ESQUIRE  
800.211.DEPO (3376)  
EsquireSolutions.com

13-53846-tjt  Doc 2300-5  Filed 12/23/13  Entered 12/24/13 00:01:29  Page 3 of 4
13-53846-swr  Doc 1975-5  Filed 12/12/13  Entered 12/12/13 00:45:09  Page 3 of 4

Page 308

```
 1              UNITED STATES BANKRUPTCY COURT
 2               EASTERN DISTRICT OF MICHIGAN
 3                    SOUTHERN DIVISION
 4    -------------------------------X
 5    IN RE                           ) Chapter 9
 6    CITY OF DETROIT, MICHIGAN,      ) Case No. 13-53846
 7              Debtor.               ) Hon. Steven W. Rhodes
 8    -------------------------------X
 9
10
11          CONTINUED VIDEOTAPED DEPOSITION of
12                      KEYVN D. ORR
13                       Volume II
14                   Washington, D.C.
15                 Friday, October 4, 2013
16
17
18    Pages:  308 - 496
19    Reported by:  Cindy L. Sebo, RMR, CSR, RPR, CRR,
20                  CCR, CLR, RSA
21    Assignment Number:  14008
22    File Number:  105824
```

Page 309

```
 1                        October 4, 2013
 2                          11:11 a.m.
 3
 4
 5          Continued Videotaped Deposition of KEYVN D.
 6    ORR held at the law offices of:
 7
 8
 9                         Jones Day
10                 51 Louisiana Avenue, Northwest
11                     Washington, D.C. 20001
12
13
14
15
16          Pursuant to notice, before Cindy L. Sebo,
17    Registered Merit Reporter, Certified Shorthand
18    Reporter, Registered Professional Reporter,
19    Certified Real-Time Reporter, Certified Court
20    Reporter, Certified LiveNote Reporter, Real-Time
21    Systems Administrator, a Notary Public in and for
22    the District of Columbia.
```

Page 310

```
 1    APPEARANCES:
 2
 3    JONES DAY
 4      For the Debtor:
 5           51 Louisiana Avenue, Northwest
 6           Washington, D.C. 20001-2113
 7           202.879.3939
 8      BY:  GREGORY M. SHUMAKER, ESQUIRE
 9           gshumaker@jonesday.com
10      BY:  DAN T. MOSS, ESQUIRE
11           dtmoss@jonesday.com
12
13    DENTONS US LLP
14      For the Retirees Committee:
15           1221 Avenue of the Americas
16           New York, New York 10020-1089
17           212.632.8342
18      BY:  ANTHONY B. ULLMAN, ESQUIRE
19           anthony.ullman@dentons.com
20
21
22
```

Page 311

```
 1    APPEARANCES (Continued):
 2
 3    LOWENSTEIN SANDLER LLP
 4      For the AFSCME:
 5           65 Livingston Avenue
 6           Roseland, New Jersey 07068
 7           973.597.2374
 8      BY:  SHARON L. LEVINE, ESQUIRE
 9           slevine@lowenstein.com
10
11    COHEN, WEISS AND SIMON LLP
12      For the United Auto Workers Union:
13           330 West 42nd Street
14           New York, New York 10036-6979
15           212.356.0216
16      BY:  PETER D. DECHIARA, ESQUIRE
17           pdechiara@cwsny.com
18
```

