# EXHIBIT C

(Deposition Transcript of Lamont Satchel)

Page 1

```
 1        IN THE UNITED STATES BANKRUPTCY COURT
 2              EASTERN DISTRICT OF MICHIGAN
 3                    SOUTHERN DIVISION
 4
 5   In re                          Chapter 9
 6   CITY OF DETROIT, MICHIGAN,     Case No. 13-53846
 7              Debtor.             Hon. Steven W. Rhodes
 8   _____/
 9
10   DEPONENT:  LAMONT SATCHEL
11   DATE:      Thursday, September 19, 2013
12   TIME:      11:00 a.m.
13   LOCATION:  MILLER CANFIELD PADDOCK & STONE PLC
14              150 West Jefferson, Suite 2500
15              Detroit, Michigan
16   REPORTER:  Jeanette M. Fallon, CRR/RMR/CSR-3267
```

Page 2

```
 1   APPEARANCES:
 2
 3   JONES DAY
 4   By:  Evan Miller
 5   51 Louisiana Avenue, NW
 6   Washington, D.C. 20001.2113
 7   202.879.3939
 8   -and-
 9   MILLER CANFIELD PADDOCK AND STONE PLC
10   By:  Jonathan S. Green
11   150 West Jefferson, Suite 2500
12   Detroit, MI 48226.4415
13   313.496.7997
14        Appearing on behalf of the Debtor
15
16   DENTONS US LLP
17   By:  Anthony B. Ullman
18   620 Fifth Avenue
19   New York, NY 10020.2457
20   212.632.8342
21        Appearing on behalf of Retirees Committee
```

Page 3

```
 1   APPEARANCES (continued):
 2
 3   COHEN WEISS AND SIMON LLP
 4   By:  Joshua J. Ellison
 5   330 West 42nd Street
 6   New York, NY 10036.6979
 7   212.356.0216
 8        Appearing on behalf of UAW
 9
10   LOWENSTEIN SANDLER LLP
11   By:  Sharon L. Levine
12   65 Livingston Avenue
13   Roseland, NJ 07068
14   973.597.2374
15   -and-
16   Matt Blumin (appearing telephonically)
17        Appearing on behalf of AFSCME
18
19   CLARK HILL PLC
20   By:  Sean Gallagher (appearing via LiveNote Streaming)
21   500 Woodward Avenue, Suite 3500
22   Detroit, MI 48226
23   313.965.8384
24        Appearing on behalf of Retirement Systems
```

Page 4

```
 1   APPEARANCES (continued):
 2
 3   WINSTON & STRAWN LLP
 4   By:  Bianca M. Forde (appearing via LiveNote Streaming)
 5   200 Park Avenue
 6   New York, NY 10166.4193
 7   212.294.4733
 8        Appearing on behalf of Assured Guaranty Municipal
 9        Corp.
10
11   LIPPITT O'KEEFE, PLLC
12   By:  Anne Cubera Lipp (appearing telephonically)
13   370 E. Maple Road
14   Third Floor
15   Birmingham, MI 48009
16   248.646.8292
17        Appearing on behalf of the Retiree Association Parties
```



ESQUIRE

800.211.DEPO (3376)
EsquireSolutions.com

Page 85

1 here?
2 A. Not without reading it.
3 Q. Okay, well, let me just see if I can quickly refresh
4    you. If you look on page 4 under what I have
5    suggested to you was the projections as to what would
6    happen without restructuring according to the City,
7    you'll see there are some line items that are entitled
8    pension contributions and there are three subpoints,
9    public safety, nonpublic safety and DDOT; do you see
10    that?
11 A. On page 4?
12 Q. On page 4.
13 A. Uh-huh.
14 Q. Okay, and if you look just for exemplary purposes to
15    the column for year 2014, you see there are entries of
16    139 million, 36.9 million and 23.6 million?
17 A. Uh-huh.
18 Q. And I believe, you can check if you wish, that if you
19    add those up, you get 199.5 million that the City,
20    under the nonrestructuring proposal, would be
21    contributing for pension contributions. Do you see
22    that?
23 A. Uh-huh.
24       MR. MILLER: Object to form.
25 Q. Okay. Then if you go to page 5, which I'm suggesting

Page 86

1 to you is what the City is projecting under its
2 restructuring scenario, what you will see, and you can
3 tell me if I'm wrong, is that the only entry for
4 pension now is sort of a little bit above the middle
5 of the page where it says DC, defined contribution,
6 benefit contribution for the year 2014, we now see the
7 number 25.4 million as opposed to without the
8 restructuring 199.5 million. Do you see that?
9       MR. MILLER: Object to form. The document
10    speaks for itself.
11 A. I see the number, yeah.
12 Q. Okay. And my understanding, you can tell me if this
13    is consistent with yours, is that under the City's
14    proposed restructuring as set forth in document S18
15    that we've just been looking at, effectively the City
16    is saying that for retirees they will stop making any
17    pension contributions on a going forward basis and the
18    only pension contributions they're making at all are
19    for current employees on a -- on the plan set forth
20    that we've just looked at on page 4, a defined
21    contribution plan. Is that consistent with your
22    understanding?
23       MR. MILLER: Object to form.
24 A. You know, I can't venture any answer with respect to
25    these documents because this is not my forte.

Page 87

1 Q. So you don't know?
2 A. I don't know.
3 Q. Okay. Do you know -- is it correct that this is the
4    plan that the City was in fact presenting to the
5    people it met with at the meetings you went to on June
6    20?
7 A. Yes, this was the document.
8 Q. And do you know whether it changed in any way from the
9    terms of the proposals that were set forth in the
10    document we referred to earlier as Exhibit C from
11    Mr. Orr's declaration --
12 A. As I stated earlier, I have not read the entirety of
13    that document so I couldn't answer that.
14 Q. So you can't say whether the City's position has
15    changed in any way from June 14th to June 20; can you?
16 A. I cannot at this time, no.
17 Q. And are you aware that another presentation was made
18    on or around September 11th, 2013 as to what the City
19    expected to happen under the plan, under its proposal?
20 A. I am not aware.
21       MR. MILLER: Object to form.
22 A. I was not --
23 Q. Do you know as of September 11th --
24 A. Can I answer it?
25 Q. I'm sorry, did I cut you off?

Page 88

1 A. Yes.
2 Q. I didn't mean to.
3 A. I was not aware of that.
4 Q. And as regards pension benefits, which is what we've
5    been looking at, do you know whether the plan, the
6    proposal that was presented by the City on September
7    11 changed in any way from what it presented first on
8    June 14th and then again on June 20th?
9 A. I haven't -- I'm not aware of nor have I seen a
10    proposal that the City made on September 11.
11 Q. So you don't know one way or the another?
12 A. I don't.
13 Q. Okay, fair enough.
14      Now, is it -- to your knowledge can someone
15    or a retiree, for example, look at the information
16    that's contained in S18 and be able to figure out
17    monetarily what the total impact of this proposal is
18    on that particular individual?
19 A. I don't know.
20 Q. Okay. And you think that's something that someone
21    would want to be able to understand in order to
22    analyze a proposal that's being made and respond
23    intelligently to it?
24       MR. MILLER: Object to form. Calls for
25    speculation.



800.211.DEPO (3376)
EsquireSolutions.com

13-53846-tjt Doc 2300-14 Filed 12/23/13 Entered 12/24/13 00:01:29 Page 3 of 5
13-53846-swr Doc 1175-8 Filed 10/13/13 Entered 10/13/13 00:43:09 Page 3 of 5

Page 89
1 A. Could you rephrase that?
2     MR. ULLMAN: Can you repeat it?
3     (Record read back as requested.)
4 A. What's the that?
5 Q. Being able to understand the monetary impact to the
6    affected individual of what is being proposed. If I
7    were presenting you with a proposal, you would want to
8    understand how -- a proposal that purports to affect
9    how much money you're going to get, how many benefits
10   you're going to receive, you would want to know what
11   the monetary impact on you is overall in order to
12   think about it, understand it and respond to; true?
13 A. If it had a monetary impact and --
14     MR. MILLER: Let me interpose an objection.
15   Object to form.
16 Q. You can answer the question.
17 A. If it had a monetary impact and I had an interest in
18   that regard, I would. If I didn't, I wouldn't.
19 Q. Okay. Now, we talked about the June 20 meeting. What
20   I'm going to do is show you two documents. I'm going
21   to have them marked serially, but I'm going to show
22   them to you at the same time and then ask you about
23   them because they're related; okay?
24 A. All right.
25     MR. ULLMAN: So we're going to mark these

Page 90
1   as 19 and 20.
2     (Marked Exhibit No. 19.)
3     (Marked Exhibit No. 20.)
4 Q. Now, the first document that I've shown you, which
5   we've marked as Exhibit 19, is a June 14 letter to Ed
6   McNeil from Jones Day.
7 A. Yes.
8 Q. Do you see that? And in fact, you're a copyee on the
9   Exhibit Satchel 19; do you see that?
10 A. I am.
11 Q. Do you recognize this letter?
12 A. I do.
13 Q. Okay. And you actually got a copy at the time it was
14   written?
15 A. Did --
16 Q. Okay.
17 A. I did receive a copy of it.
18 Q. Okay, and it was written by whom at Jones Day?
19   Brian Easley?
20 A. It was.
21 Q. Do you have any reason to believe anything he said in
22   here is untrue, he meaning Mr. Easley?
23 A. I would have to read it.
24     MR. MILLER: Object to form.
25 Q. You can take a look and tell me if you think there's

Page 91
1   anything that's untrue that's stated in here.
2 A. I have no reason to believe anything in here is
3   untrue.
4 Q. Okay. And then the follow-up letter that I'm -- and
5   then just before I move to the follow-up letter, this
6   letter is basically saying, is it not, that there's
7   been a meeting scheduled for June 20 and Mr. Easley is
8   inviting the recipient to attend; yes?
9 A. It does.
10 Q. And that's what led to the June meeting that you
11   talked about before. Now let's go to Exhibit Satchel
12   20, which is a June 17 letter.
13 A. Uh-huh, yes.
14 Q. And just to put the right context on this, if you turn
15   to page 2 of this document, S20, you will see in the
16   last paragraph this is from Steven -- is it Kreisberg?
17     MS. LEVINE: Kreisberg.
18 Q. -- Kreisberg writes to someone at Miller Buckfire --
19   you know Miller Buckfire was working with the City;
20   right?
21 A. Yes.
22 Q. So in the last paragraph Mr. Kreisberg says, I'm
23   assisting AFSCME Locals and AFSCME Council 25 with
24   issues relating to the proposal. We've been asked to
25   meet with the EFM's representatives on Thursday.

Page 92
1   Now, Thursday is the 20th; correct? I have
2   a calendar if you want to check.
3 A. If you say so.
4 Q. Okay. So that would be the same June 20 meeting and
5   Thursday was the same June 20 meeting that we were --
6   you talked about earlier and that's referred to in the
7   letter we just marked as Satchel 19; correct?
8     MR. MILLER: Wait.
9 A. I'm sorry, I was reading the document. Could you say
10   that again?
11 Q. I don't remember what I said.
12     MR. ULLMAN: Can you read it back?
13     (Record read back as requested.)
14 A. All right, correct.
15 Q. Okay. Now, if you look at the June 17 letter, Satchel
16   20, what Mr. Kreisberg is saying we'd like some
17   information; right? And he asks for four categories
18   of information or actually five. There's more on the
19   back on the second page; do you see that?
20     MR. MILLER: Object to form.
21 A. Yes, I see it.
22 Q. And is it correct that all of this is information that
23   pertains to issues that may be impacted under the
24   proposal that's been put forth by the City?
25     MR. MILLER: Object to form.



800.211.DEPO (3376)  
EsquireSolutions.com

13-53846-tit Doc 2300-14  Filed 12/23/13  Entered 12/24/13 00:01:29  Page 4 of 5  
13-53846-swr Doc 2175-8  Filed 12/23/13  Entered 12/22/13 00:43:09  Page 4 of 5

1  State of Michigan)
2  County of Genesee)
3           Certificate of Notary Public
4       I certify that this transcript is a complete, true and
5  correct record of the testimony of the witness held in this
6  case.
7       I also certify that prior to taking this deposition,
8  the witness was duly sworn or affirmed to tell the truth.
9       I further certify that I am not a relative or an
10 employee of or an attorney for a party; and that I am not
11 financially interested, directly or indirectly, in the
12 matter.
13      WITNESS my hand this 20th day of September,
14 2013.
15
16
17          *[signature]*
18      Jeanette M. Fallon, CRR/RMR/CLR/CSR-3267
19      Certified Realtime Reporter
20      Registered Merit Reporter
21      Certified LiveNote Reporter
22      Certified Shorthand Reporter
23      Notary Public, Genesee, Michigan
24      Acting in Oakland County, Michigan
25      My Commission Expires: 9-19-18

ESQUIRE
800.211.DEPO (3376)
EsquireSolutions.com



13-53846-tjt   Doc 2300-14   Filed 12/23/13   Entered 12/24/13 00:01:29   Page 5 of 5
13-53846-swr   Doc 1175-8   Filed 10/12/13   Entered 10/12/13 00:43:09   Page 5 of 5