# EXHIBIT E

## (Deposition Transcript of Glenn Bowen)

Page 1

```
 1            UNITED STATES BANKRUPTCY COURT
 2             EASTERN DISTRICT OF MICHIGAN
 3                   SOUTHERN DIVISION
 4   ------------------------------X
 5   IN RE                         ) Chapter 9
 6   CITY OF DETROIT, MICHIGAN,    ) Case No. 13-53846
 7              Debtor.            ) Hon. Steven W. Rhodes
 8   ------------------------------X
 9
10
11
12           DEPOSITION of GLENN DAVID BOWEN
13                     Washington, D.C.
14                Tuesday, September 24, 2013
15
16
17
18   Pages: 1 - 213
19   Reported by: Cindy L. Sebo, RMR, CRR, RPR, CSR,
20                CCR, CLR, RSA
21   Assignment Number: 472421
22   File Number: 105824
```

Page 2

```
 1                 September 24, 2013
 2                     9:47 a.m.
 3
 4
 5          Deposition of GLENN DAVID BOWEN held
 6   at the law offices of:
 7
 8
 9                      Jones Day
10             51 Louisiana Avenue, Northwest
11                 Washington, D.C. 20001
12
13
14
15
16            Pursuant to notice, before Cindy L.
17   Sebo, Registered Merit Reporter, Certified Real-Time
18   Reporter, Registered Professional Reporter,
19   Certified Shorthand Reporter, Certified Court
20   Reporter, Certified LiveNote Reporter, Real-Time
21   Systems Administrator and a Notary Public in and for
22   the District of Columbia.
```

Page 3

```
 1   APPEARANCES:
 2   JONES DAY
 3      For the Debtor:
 4          51 Louisiana Avenue, Northwest
 5          Washington, D.C. 20001-2113
 6          202.879.3939
 7   BY:    EVAN MILLER, ESQUIRE
 8          emiller@jonesday.com
 9   BY:    MIGUEL F. EATON, ESQUIRE
10          meaton@jonesday.com
11
12   DENTONS US LLP
13      For the Official Committee of Retirees:
14          233 South Wacker Drive
15          Suite 7800
16          Chicago, Illinois 60606-6306
17          312.876.7994
18   BY:    ROBERT B. MILLNER, ESQUIRE
19          robert.millner@dentons.com
20   BY:    ARTHUR H. RUEGGER, ESQUIRE
21          arthur.ruegger@dentons.com
22
```

Page 4

```
 1   APPEARANCES (Continued):
 2   COHEN, WEISS AND SIMON LLP
 3      For the United Auto Workers Union:
 4          330 West 42nd Street
 5          New York, New York 10036-6979
 6          212.356.0216
 7   BY:    THOMAS N. CIANTRA, ESQUIRE
 8          tciantra@cwsny.com
 9
10   LOWENSTEIN SANDLER LLP
11      For AFSCME:
12          65 Livingston Avenue
13          Roseland, New Jersey 07068
14          973.597.2538
15   BY:    JOHN K. SHERWOOD, ESQUIRE
16          jsherwood@lowenstein.com
17
18
19
20
21
22
```



Page 145

1 this development, that there would be no further
2 transfers from the DB plan assets into -- into
3 individual accounts; thus no calculation was
4 needed.
5    Q.  On the Page 3 we see Rule-of-Thumb
6 Adjustments.
7       Do you see that?
8    A.  I do.
9    Q.  And on the -- the last adjustment, the
10 pages that -- Total actuarial accrued liability
11 decreases by 10 percent due to the plan freeze and
12 the cancellation of all future COLAs.
13       Do you see that?
14    A.  I do.
15    Q.  And what is the source of
16 the 10 percent number that you used there?
17    A.  It is due to the plan freeze and the
18 cancellation of COLAs, so we would have done two
19 separate calculations or two separate estimates to
20 determine the 10 percent overall estimate for those
21 plan changes and the plan freeze.
22       I believe we discussed this before, but

Page 146

1 it was based upon a lower expectation of future
2 benefits, which generates a lower liability. And
3 then the cancellation of future COLAs generates
4 lower future benefit payments as well.
5       So in using information we were able to
6 draw from the valuation reports, we prepared
7 estimates of those two topics.
8    Q.  Are these the estimates that you, in an
9 earlier document, called "guesses"?
10    A.  I'm not sure which -- I mean, you can
11 put that particular document back in front of me.
12 I've used the phrase "rough guess"; I've used the
13 phrase "estimate" --
14    Q.  Rough guess.
15    A.  Rules of thumb, I would say, by
16 definition, are rough guesses. They're defined to
17 give us a proxy of what we -- the result we would
18 arrive at had we done more detailed modeling.
19    Q.  And you have a workpaper showing this
20 calculation?
21    A.  Yes. We would have developed two
22 calculations, one for the impact of the plan freeze

Page 147

1 and then one for the COLA cancellation.
2    Q.  The rule-of-thumb adjustment not above
3 that, but two above that says that Total benefit
4 payments increased by 4.25 percent annually in the
5 baseline scenario and by 2.17 percent in
6 Scenario 2.
7       And how did you derive those estimates?
8    A.  The total benefit payment increased.
9 And to put this in chronology, we had discussed
10 earlier today that Milliman had calculated benefit
11 payments from Gabriel, Roeder projections when they
12 were available. At this time, they weren't.
13       The 4.25 percent was an estimate based
14 upon historical growth and benefit payments as new
15 members retired. The 2.17 lower estimate for
16 Scenario 2 was adjusted downward to reflect a plan
17 freeze which generates future lower benefit
18 payments and the cancellation of cost-of-living
19 increases as well.
20    Q.  When you say "adjusted downward," in
21 this instance, is it a -- is it a -- an estimate
22 that is based on a -- simply the judgment of the

Page 148

1 actuaries? Is that -- is that what this is? Or do
2 you have specific data that you point to to take
3 that number down from the baseline scenario?
4    A.  We -- we do not have a specific full
5 valuation run where we've modeled the overall
6 group, each on an individual basis, to develop
7 these numbers.
8       The 4.25, as I stated, was based upon
9 trailing growth and benefit payments. The 2.17
10 would have been adjusted based upon what
11 information was available in the valuation report,
12 and it reflects an adjustment for the plan freeze
13 and for the cancellation of future COLAs, so,
14 actually, two adjustments to get the 4.25 to the
15 2.17.
16    Q.  Let me see. Just a few more of these
17 letters, Mr. Bowen.
18       - - -
19       (Whereupon, a letter with attachment
20       was marked, for identification
21       purposes, as Bowen Deposition
22       Exhibit Number 11.)



1   C E R T I F I C A T E

2   DISTRICT OF COLUMBIA:

3   I, Cindy L. Sebo, a Notary Public within

4   and for the Jurisdiction aforesaid, do hereby

5   certify that the foregoing deposition was taken

6   before me, pursuant to notice, at the time and place

7   indicated; that said deponent was by me duly sworn

8   to tell the truth, the whole truth, and nothing but

9   the truth; that the testimony of said deponent was

10  correctly recorded in machine shorthand by me and

11  thereafter transcribed under my supervision with

12  computer-aided transcription; that the deposition is

13  a true record of the testimony given by the witness;

14  and that I am neither of counsel nor kin to any

15  party in said action, nor interested in the outcome

16  thereof.

*[signature: Cindy L. Sebo]*



Cindy L. Sebo  
District of Columbia, Notary Public  
My Commission Expires  
April 14, 2015

Cindy L. Sebo, RMR, CRR, RPR, CSR, CCR, CLR, RSA, Notary Public

ESQUIRE SOLUTIONS  
800.211.DEPO (3376)  
EsquireSolutions.com