UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DETROIT BRANCH NAACP, MICHIGAN
STATE CONFERENCE NAACP,
DONNELL R. WHITE, THOMAS
STALLWORTH III, RASHIDA TLAIB,       No. 2:13-cv-12098
MAUREEN TAYLOR,

                                          HON. GEORGE CARAM
       Plaintiffs,                STEEH

v

RICK SNYDER, in his official capacity as
Governor of the State of Michigan, ANDREW
DILLON, in his official capacity as Treasurer
of the State of Michigan, and RUTH
JOHNSON, in her official capacity as
Michigan Secretary of State,

       Defendants.

_____

| | |
|---|---|
| Melvin Butch Hollowell (P37834) | Nabih H. Ayad (P59518) |
| Attorney for Plaintiffs | Attorney for Plaintiffs |
| 8220 Second Avenue | 2200 N Canton Ctr Rd, Ste 220 |
| Detroit, Michigan  48221 | Canton, Michigan  48187 |
| 313.207.3890 | 734.983.0500 |

_____

Denise C. Barton (P41535)
Michael F. Murphy (P29213)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434

_____/

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendants Richard D. Snyder, Governor of the State of Michigan, Andrew Dillon, Treasurer of the State of Michigan, and Ruth Johnson, Secretary of State, pursuant to Fed. R. Civ. P. 12(b)(1), (6) and (7), move to dismiss Plaintiffs' Amended Complaint for the following reasons:

1. Plaintiffs lack standing to bring any of their claims.

2. This Court should abstain under the *Burford* abstention doctrine.

3. Plaintiffs have failed to meet the factors for declaratory relief.

4. 2012 Mich. Pub. Acts 436, Mich. Comp. Laws § 141.1541 *et seq.*, (P.A. 436) does not violate the Equal Protection Clause (Counts 1 and 2).

5. P.A. 436 does not violate the Due Process Clause (Counts 3 and 4).

6. P.A. 436 does not violate Section 3 of the Voting Rights Act (Count 5).

7. Plaintiffs fail to state a claim upon which relief can be granted.

8. Under Fed. R. Civ. P. 12(b)(1), (6) and (7), a complaint may be dismissed if no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Ludwig v. Bd of Trustees*, 123 F.3d 404, 408 (6th Cir. 1997). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not facially plausible. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

9. Fed. R. Civ. P. 12(b)(1) allows dismissal for lack of subject-matter jurisdiction. It is Plaintiffs' burden to prove jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth*, 895 F.2d 266, 269 (6th Cir. 1990).

10. Fed. R. Civ. P. 12(b)(7) provides that the issue of failure to join indispensable parties may properly be raised by a motion to dismiss.

2

Applying the standards of review set out in paragraphs 8 and 9 to each argument in the brief, and for the reasons stated in this motion, Plaintiffs' Amended Complaint fails as a matter of law.  Defendants respectfully request this Court dismiss Plaintiffs' Amended Complaint in its entirety and with prejudice.

Respectfully submitted,

BILL SCHUETTE
Attorney General

*s/Denise C. Barton*
Denise C. Barton (P41535)
Michael F. Murphy (P29213)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434
Email:  bartond@michigan.gov
P41535

Dated:  July 11, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such.

*s/Denise C. Barton*
Denise C. Barton (P41535)
Assistant Attorney General
Attorney for Defendants
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434
E-mail:  bartond@michigan.gov

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DETROIT BRANCH NAACP, MICHIGAN
STATE CONFERENCE NAACP,
DONNELL R. WHITE, THOMAS
STALLWORTH III, RASHIDA TLAIB,          No. 2:13-cv-12098
MAUREEN TAYLOR,

                                        HON. GEORGE CARAM
        Plaintiffs,                     STEEH

v

RICK SNYDER, in his official capacity as
Governor of the State of Michigan, ANDREW
DILLON, in his official capacity as Treasurer
of the State of Michigan, and RUTH
JOHNSON, in her official capacity as
Michigan Secretary of State,

        Defendants.
_____
Melvin Butch Hollowell (P37834)         Nabih H. Ayad (P59518)
Attorney for Plaintiffs                 Attorney for Plaintiffs
8220 Second Avenue                      2200 N Canton Ctr Rd, Ste 220
Detroit, Michigan  48221                Canton, Michigan  48187
313.207.3890                            734.983.0500
_____
Denise C. Barton (P41535)
Michael F. Murphy (P29213)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434
_____/

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

<u>Page</u>

Table of Contents ........................................................................................... i

Index of Authorities ...................................................................................... iii

Concise Statement of Issues Presented ...................................................... vi

Controlling or Most Appropriate Authorities .......................................... vii

Introduction ....................................................................................................1

Statement of Facts ..........................................................................................2

Argument.........................................................................................................7

I.      Plaintiffs lack standing ........................................................................7

        A.     Individual Plaintiffs lack standing because they have not suffered a concrete and particularized injury. .......................9

        B.     Organizational Plaintiffs lack standing, and White lacks standing to sue on their behalf, because their members do not have standing to sue in their own right. ............................10

II.     This Court should abstain under the *Burford* abstention doctrine. ...............10

III.    Plaintiffs have failed to meet the factors for declaratory relief.....................13

IV.    P.A. 436 does not violate the Equal Protection Clause. ................................15

        A.     Plaintiffs' fundamental right to vote has not been diluted. .................15

        B.     P.A. 436 does not discriminate based on race as applied. .................18

V.     P.A. 436 does not violate substantive or procedural due process. ...............25

        A.     Substantive Due Process Claim...........................................25

        B.     Procedural due process claim...........................................28

VI.    Plaintiffs seek to impose preclearance as a remedy but do not set forth a separate claim in Count V for which relief may be granted.......................31

i

A.    Count V does not set forth a distinctive substantive claim. ...............31

B.    Plaintiffs have failed to name the necessary parties because
      Defendants are not required to seek preclearance under § 3...............32

Conclusion and Relief Requested ...........................................................................33

# INDEX OF AUTHORITIES

Page

**Cases**

*ACLU of Ohio Found., Inc. v. Ashbrook*, 375 F.3d 484 (6th Cir. 2004) ...................8

*Adrian Energy Ass'n v. Public Service Comm'n*, 481 F.3d 414 (6th Cir. 2007).........................................................................................................11

*Allen v. Wright,* 468 U.S. 737 (1984) .............................................. 8, 12

*American Civil Liberties Union v. Nat'l Sec. Agency,* 493 F.3d. 644 (6th Cir. 2007).........................................................................................................8

*Anthony v. State of Michigan*, 35 F. Supp. 2d 989 (E.D. Mich. 1999)...................10

*Attorney General v. Flint,* 713 N.W.2d 782 (Mich. App. 2005) ................. 3, 29, 34

*Bivens v. Grand Rapids*, 505 N.W.2d 239 (Mich. 1993)................................ 12, 29

*Burford v. Sun Oil Co*., 319 U.S. 315 (1943) ................................................. *passim*

*Bush v. Gore,* 531 U.S. 98 (2000)...........................................................................26

*Carlson v. Wiggins*, 675 F.3d 1134 (8th Cir. 2012) ................................................16

*City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985)................24

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ................................................8, 9

*Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985) ..................................29

*Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011).........................................................................................................16

*Graham v. Connor,* 490 U.S. 386 (1989) ...............................................................26

*Grand Trunk Western R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984) ................................................................................................13

*Harper v. Va. State Bd. of Elections*, 383 U.S. 663 (1966) ....................................16

*Hunter v. City of Pittsburgh,* 207 U.S. 161 (1907)................................................27

*Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454 (1989) .......................30

*League of Women Voters v. Brunner*, 548 F.3d 463 (6th Cir. 2008).......... 16, 26, 29

*Local 670 v. International Union, United Rubber, Cork, Linoleum and Plastic Workers of America,* 822 F.2d 613 (6th Cir. 1987) ................................33

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................8

*Mack v. City of Detroit,* 649 N.W.2d 47 (Mich. 2002)............................................29

*Matthew v. Eldridge,* 424 U.S. 319 (1976)..............................................................29

*Miyazawa v. City of Cincinnati*, 45 F.3d 126 (6th Cir. 1995) ...................................9

*Moore v. Detroit School Reform Board*, 293 F.3d 352 (6th Cir. 2002) .......... 21, 24

*New Orleans Pub. Serv. Inc. v. Council of the City of New Orleans*, 491 U.S. 350 (1989)............................................................................................................11

*Palko v. Connecticut,* 302 U.S. 319 (1937) ............................................................25

*Perry v. McGinnis*, 209 F.3d 597 (6th Cir. 2000)....................................................16

*Public Service Comm of Utah v. Wycoff*, 344 U.S. 237 (1952)...............................13

*Quackenbush v. Allstate Insurance*, 517 U.S. 706 (1996)........................................10

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291 (6th Cir. 2005)........................16

*Rental Property Owners Ass'n of Kent Co. v. City of Grand Rapids*, 566 N.W.2d 514 (Mich. 1997) ...................................................................................12

*Reynolds v. Sims,* 377 U.S. 533 (1964)............................................................ 16, 21

*Rodriguez v. Popular Democratic Party,* 457 U.S. 1 (1982) ..................................26

*Sailors v. Bd. of Ed. of Kent County,* 387 U.S. 105 (1967) ............................. 27, 29

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008) ................................14

*Shelby County, Alabama*, 570 U.S. at ____, No. 12-96, Slip Opinion at 1 (issued on June 25, 2013) ...................................................................................31

*Taunt v. General Retirement Sys.*, 233 F.3d 899 (6th Cir. 2000) ............................12

*TriHealth, Inc. v. Bd of Com'rs, Hamilton County, Ohio*, 430 F.3d 783 (6th Cir. 2005) ................................................................................................16

*Warf v. Board of Elections of Green County, Kentucky,* 619 F.3d 553 (6th Cir. 2010) ........................................................................................ 26, 29

*Washington v. Glucksberg,* 521 U.S. 702 (1997) ......................................25

## Statutes

1990 Mich. Pub. Acts 72 (P.A. 72) ................................................ *passim*

2011 Mich. Pub. Act 4 (P.A. 4) ..................................................... *passim*

2012 Mich. Pub. Act 436 (P.A. 436) ............................................. *passim*

42 U.S.C. § 1973 ............................................................. 2, 31, 32

42 U.S.C. § 1983 .....................................................................2

Mich. Comp. Laws § 117.36 ................................................................30

Mich. Comp. Laws § 141.1212 .............................................................6

Mich. Comp. Laws § 141.1412 .............................................................6

Mich. Comp. Laws § 141.1512 .............................................................6

Mich. Comp. Laws § 141.1544 ........................................................ 6, 20

Mich. Comp. Laws § 141.1549 ................................................... 17, 20, 25

Mich. Comp. Laws § 141.1547 .............................................................5

Mich. Comp. Laws § 141.1552 .............................................................5

## Constitutional Provisions

Mich. Const. 1963 ................................................................... 4, 29

# CONCISE STATEMENT OF ISSUES PRESENTED

1.    Plaintiffs lack standing because Individual Plaintiffs have not suffered concrete and particularized injuries and, in turn, Organizational Plaintiffs lack standing to sue on behalf of their members.

2.    The Court should abstain from exercising jurisdiction over this action under the *Burford* abstention doctrine.

3.    Plaintiffs' Complaint fails to meet the factors for declaratory relief.

4.    P.A. 436 does not infringe Plaintiffs' fundamental right to vote or their equal participation in the voting process and does not otherwise discriminate based on race as applied.  Plaintiffs' equal protection claims premised on racial discrimination and disparate impact fail as matter of law and should be dismissed.

5.    P.A. 436 does not infringe any substantively or procedurally protected right or interest and otherwise serves a legitimate state interest.  And it is the Equal Protection Clause, not due process, that protects a citizen's right to participate in elections on an equal footing with other citizens.  Plaintiffs' due process claim fails in all respects and should be dismissed.

6.    Plaintiffs' Voting Rights Act claim fails as a matter law because it does not set forth a distinct substantive claim, but instead, a request for a remedy that is premature, discretionary, and inappropriate without the joining of necessary parties.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

<u>Authority</u>:

*ACLU of Ohio Found., Inc. v. Ashbrook*, 375 F.3d 484 (6th Cir. 2004)

*Anthony v. State of Michigan*, 35 F. Supp. 2d 989 (E.D. Mich. 1999)

*Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011)

*Hunter v. City of Pittsburgh,* 207 U.S. 161 (1907)

*Moore v. Detroit School Reform Board*, 293 F.3d 352 (6th Cir. 2002)

*New Orleans Pub. Serv. Inc. v. Council of the City of New Orleans*, 491 U.S. 350 (1989)

*Rodriguez v. Popular Democratic Party,* 457 U.S. 1 (1982)

*Sailors v. Bd. of Ed. of Kent County,* 387 U.S. 105 (1967)

*TriHealth, Inc. v. Board of Com'rs, Hamilton County, Ohio*, 430 F.3d 783 (6 Cir., 2005)

*Village of Arlington Heights v. Metro. Housing Dev. Corp*., 429 U.S. 252 (1977)

*Washington v. Glucksberg,* 521 U.S. 702 (1997)

vii

# INTRODUCTION

The concept of an emergency manager and local government receivership is not new to Michigan.  Indeed, both major political parties have used some form of emergency manager and receivership for over 20 years, providing wide-ranging and varied authority to address local-government fiscal emergencies.  And, in the current economic environment where a high number of municipal governments and school districts are teetering on the brink of financial catastrophe, it is more than apparent that additional flexibility and new tools are required.  As a result, the Michigan Legislature responded with 2012 Mich. Pub. Act 436 (P.A. 436).

Having lost the political battle to stop P.A. 436 on the steps of the State Capitol, Plaintiffs filed this lawsuit, an action that contains no cognizable legal claims or alternative solutions to the looming financial problems that local elected officials have been unable to solve.  First, Plaintiffs challenge P.A. 436 with claims of discrimination and disparate impact premised on irrelevant comparisons of "fiscal health scores" that have no application to the emergency-manager review process, have not been compiled or published by the State since 2009, and do not reflect the depth of any fiscal emergency or the local government's ability to resolve the emergency on its own.  Second, Plaintiffs challenge P.A. 436 as infringing on their voting rights and having a disparate impact on majority minority voting jurisdictions in violation of equal protection, substantive and

procedural due process, and § 3 of the 1965 Voting Rights Act.  These

overreaching claims have no support in fact or law and demonstrate only that

Plaintiffs' proper remedy is the political process, not the federal courts.  The

Amended Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

**Nature of the Case**

Plaintiffs originally brought this action under 42 U.S.C. § 1983, alleging that

P.A. 436 violates the U.S. Const. amend XIV (due process and equal protection),

and the preclearance requirements of the Voting Rights Act, 42 U.S.C. § 1973c.

(RE 1, Compl., ID# 26-31.)  On June 27, 2013, Plaintiffs filed their Amended

Complaint, adding a procedural due process claim and dropping their claim under

§ 5 of the Voting Rights Act and adding a claim under § 3c of the Voting Rights

Act, 42 U.S.C. § 1973a(c),  presumably in response to the Supreme Court's

decision in *Shelby County, Alabama v. Holder,* 570 U.S. __, Sup. Ct. Dkt. No. 12-

96 (2013).  (RE 16, Am. Compl., ID#202-3.)  In addition, they are now pleading

Plaintiffs White, Stallworth III, Tlaib and Taylor as individuals.  (RE 16, Am.

Compl., ID # 173, 180, 181.)

Where specific factual allegations are necessary for deciding this motion,

those facts have been taken from the Amended Complaint and related documents.

The Amended Complaint presents both facial and as applied challenges to P.A.

2

436.  The facial challenges are premised on allegations that P.A. 436 violates equal

protection by denying "equal dignity owed to each vote;" violates substantive and

procedural due process by arbitrarily and discriminatorily "selecting jurisdictions

for the imposition of an Emergency Manager;" and purportedly violates 42 U.S.C.

§ 1973a(c) of the Voting Rights Act by failing to comply with preclearance

requirements.  (RE 16, Am. Compl. ID# 204.)  The as-applied challenges are

premised on allegations that P.A. 436 disparately impacts the State's African-

American voters, resulting in voter dilution.  (RE 16, Am. Compl., ID# 190-194,

198-201.)

**Michigan's Local Government Fiscal Responsibility Acts**

Public Act 436 was signed into law in December of 2012.  It became

effective on March 28, 2013.  P.A. 436 followed the period of time from August 8,

2012 to March 28, 2013, when the State and its political subdivisions operated

under 1990 Mich. Pub. Acts 72 (P.A. 72).  Mich. Comp. Laws § 141.1201, *et seq*.

P.A. 72 established the process for appointing emergency financial managers to

assist municipal governments or school districts resolve financial emergencies.  An

emergency financial manager's (EFM) authority was limited to only financial

issues.  Public Act 72 was replaced by 2011 Mich. Pub. Act 4 (P.A. 4).  Under P.A.

4, emergency financial managers became emergency managers (EM) and were

provided expanded authority and tools to resolve financial emergencies in fiscally

stressed municipal governments and school districts.  P.A. 4 was suspended on

August 8, 2012 and ultimately rejected by voters in November of 2012 under the

State's referendum process.  See Mich. Const. 1963, art. II, § 9 and its anti-revival

statute, Mich. Comp. Laws § 8.4.  The suspension and ultimate rejection of P.A. 4

revived P.A. 72 and emergency managers reverted to emergency financial

managers again with reduced authority limited to only financial issues.  See OAG,

2011-2012, No 7267, p 6 (August 6, 2012) (available at

http://www.ag.state.mi.us/opinion/datafiles/2010s/op10346.htm.)

In December of 2012, the Legislature passed P.A. 436 to replace P.A. 72.

The Legislature reasonably determined that local fiscal stability is necessary for the

State's health, welfare, and safety; that P.A. 72 did not provide the necessary

authority and tools to restore that fiscal stability to financially stressed local

governments; and that P.A. 436 provides the tools and authority necessary to

protect those interests including the credit ratings of the State and its political

subdivisions.  Mich. Comp. Laws § 141.1543.

**Key Features of P.A. 436**

Public Act 436 includes three key features that expand local government

options to address the financial emergency—the ability of local government to

choose the option to resolve its financial emergency (emergency manager, consent

agreement, neutral mediation or Chapter 9 bankruptcy); a time limit for a financial

4

manager's appointment; and authority to petition for removal of a financial manager.  Mich. Comp. Laws §§ 141.1547 (1), 1549(2), 1549(11).  P.A. 436 also applies the same criteria for initiating a preliminary review and finding of probable financial stress for both municipal governments and school districts.  The statute also builds in checks on an emergency manager's authority.  See, e.g., Mich. Comp. Laws §§ 141.1552 (1)(k) & (u) (collective bargaining agreements and borrowing money), 1552(4) (selling or transferring public utilities), 1555(1) (selling of assets), 1559(1) (proposed contracts, sales, and leases).

### State's Fiscal Health Scoring

Plaintiffs allege that a fiscal health scoring matrix, developed by the Department of Treasury and published between 2006 and 2010, demonstrates an arbitrary and discriminatory pattern resulting in the disproportionate appointment of EMs for majority minority communities.  (RE 16, Am. Compl., ID # 195-197.)  Yet, these "fiscal health scores" are not related to the financial emergency process under the predecessor statute, P.A. 72.  They never had application under P.A. 4.  And they do not have application under P.A. 436.  The purpose of this fiscal health score was to assist municipal governments in identifying and resolving possible financial issues.  (Ex. A, Fiscal Scoring Purposes.)  The "fiscal health scores" were neither intended nor used to identify communities for preliminary review or a full financial review under P.A. 72.  Nor were they used or referenced under P.A. 4, or

5

P.A. 436, which has not been fully applied and does not rely on them.  Mich.

Comp. Laws § 141.1212, 1214; Mich. Comp. Laws § 141.1512; Mich. Comp.

Laws § 141.1544 (1), (2).  In fact, the "fiscal health score" for municipal

governments has not been published since 2009 or compiled since 2010.  (Ex. B.)

        Indeed, only the preliminary review process under P.A. 72, P.A. 4, and now

P.A. 436 is used to determine the existence of probable financial stress within a

local government, identifying it for further review and possible emergency

management of some form.  Mich. Comp. Laws §141.1212; Mich. Comp. Laws §

141.1412; Mich. Comp. Laws §141.1544 (1).  For example, under P.A. 436 a

preliminary review to determine the existence of probable financial stress may be

conducted when one or more of 19 different triggering events occurs.  Mich.

Comp. Laws § 141.1544 (1)(a)-(s).  These include requests from the local

government, a creditor, local electors by petition, or by resolution of the senate or

house, notification that a pension fund payment required by law has been missed,

notice of a default on a bond or note payment, violation of orders related to

revenue bonds, and numerous other events.  *Id.*  The preliminary review trigger

events are substantially similar under P.A. 72 and P.A. 4.  Mich. Comp. Laws §

141.1212 (1)(a)-(n); Mich. Comp. Laws §141.1412.  The "fiscal health score"

assigned to a municipal government between 2006 and 2009 is *not* identified by

either P.A. 436 or it predecessors, P.A. 72 and P.A. 4, as a triggering event.  *Id.*

6

Additionally, 5 EFMs were appointed for municipal governments before the State began compiling and publishing "fiscal health scores."  (Ex. B.)  Five EMs have been appointed since the "fiscal health scores" were discontinued.  "Fiscal health scores" were never compiled for or applied to Michigan's school districts.  (Ex. B.)

The preliminary review and review-team process for Michigan's school districts under P.A. 436 is identical to that of a municipal government with the exception that the "state financial authority" conducting the preliminary review remains the superintendent of education.  Mich. Comp. Laws § 141.1542(u)(ii).  This preliminary review and review team process for school districts is also substantially similar under P.A. 72 and P.A. 4.  Mich. Comp. Laws §§ 141.1212, 1214, 1233(1), 1234(1), (2), (3), 1235.

 Finally, the "fiscal health score" did not consider the municipal governments' ability to resolve the existing financial emergency.  This is a critical factor in determining probable financial stress and the existence of a financial emergency under P.A. 72 and now P.A. 436.  Mich. Comp. Laws §§ 141.1212, 1214, 1235; Mich. Comp. Laws §§ 141.1544 (2),1545(3)(f)-(l).

## ARGUMENT

### I.    Plaintiffs lack standing

Plaintiffs' First Amended Complaint should be dismissed for lack of standing.  Plaintiffs Stallworth, Tlaib, and Taylor bring suit strictly in their

individual capacities; Detroit Branch NAACP and Michigan State Conference NAACP are Organizational Plaintiffs; and White is suing individually and behalf of Organizational Plaintiffs.  (RE 16, Am. Compl. ¶¶24-27, ID#180-181.)

To invoke this Court's subject-matter jurisdiction, Individual Plaintiffs White, Stallworth, Tlaib and Taylor must *each* establish for *each* claim, among other things, an injury-in-fact that is concrete and particularized, not conjectural or hypothetical.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also American Civil Liberties Union v. Nat'l Sec. Agency,* 493 F.3d. 644, 652 (6th Cir. 2007), citing *Allen v. Wright,* 468 U.S. 737, 752 (1984) ("[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.")  Because they seek injunctive and declaratory relief, they also have the heightened burden of showing a substantial likelihood they will be injured in the future.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

Organizational Plaintiffs Detroit Branch NAACP and Michigan State Conference NAACP have standing only if (a) their members otherwise have standing to sue in their own right; (b) the interests to be protected are germane to the organizations' purpose; and (c) neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit.  *ACLU of*

8

*Ohio Found., Inc. v. Ashbrook*, 375 F.3d 484, 489 (6th Cir. 2004).  Neither

standard is satisfied here.

> **A.      Individual Plaintiffs lack standing because they have not
> suffered a concrete and particularized injury.**

Individual Plaintiffs claim they are registered voters in the City of Detroit

who casted ballots for Mayor and City Council in the 2009 general election.  (RE

16, Am. Compl., ¶¶ 24-27, ID# 180-819.)  They are each suing because they are

"strongly opposed to Public Act 436, and believe[] that [their] vote for Mayor and

City Council should count equally to the vote of electors in non-Emergency

Manager jurisdictions, who cast ballots for their local legislative and executive

officials."  (*Id.*)

Plaintiffs do not allege the enactment of P.A. 436 has injured them in a

manner distinguishable from the harm purportedly incurred by residents of other

localities with emergency managers.  Rather, they raise only general grievances

regarding Defendants' policy choices related to fiscally stressed local

governments.  (*Id.*)  Their claims are strikingly similar to those considered and

rejected in other cases by the Supreme Court, the Sixth Circuit, and this Court for

lack of standing.  *See*, *e.g.*, *City of Los Angeles*, 461 U.S. at 111 (resident

challenging police department's chokehold policy was "no more entitled to an

injunction than any other citizen"); *Miyazawa v. City of Cincinnati*, 45 F.3d 126,

126-128 (6th Cir. 1995) (resident challenging city charter amendment suffers "no

9

harm, nor will she suffer any greater harm than that of any other voter in the City of Cincinnati"); *Anthony v. State of Michigan*, 35 F. Supp. 2d 989, 1003 (E.D. Mich. 1999) (Detroit citizens challenging consolidation of Detroit Recorder's Court did not "articulate how they [were] particularly harmed as a result of the merger"). These Plaintiffs lack standing to bring their claims for the same reasons.

> **B.**   **Organizational Plaintiffs lack standing, and White lacks standing to sue on their behalf, because their members do not have standing to sue in their own right.**

Organizational Plaintiffs also lack standing. To invoke this Court's subject-matter jurisdiction, these Plaintiffs must show, among other things, that their members otherwise have standing to sue in their own right. *Ashbrook*, 375 F.3d at 489. For Plaintiff White to sue on behalf of Organizational Plaintiffs, Organizational Plaintiffs must have standing. Yet Organizational Plaintiffs lack this derivative standing because Individual Plaintiffs cannot establish that they have suffered a concrete and particularized injury. Organizational Plaintiffs' claims, and any claims White brings on their behalf, should likewise be dismissed.

## II.   This Court should abstain under the *Burford* abstention doctrine.

This Court should exercise its discretion to abstain from addressing Plaintiffs' claims for injunctive and declaratory relief. Abstention involves "careful consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for the 'independence of state action.'"

10

*Quackenbush v. Allstate Insurance*, 517 U.S. 706, 728 (1996) (citing *Burford v. Sun Oil Co*., 319 U.S. 315, 334 (1943)).  *Burford* abstention is appropriate where timely and adequate state-court review is available and a case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  *New Orleans Pub. Serv. Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989) (quotation omitted); *Adrian Energy Ass'n v. Public Service Comm'n*, 481 F.3d 414, 423 (6th Cir. 2007).  These circumstances are met here.

First, timely and adequate state-law review is available.  Second, in this difficult economic environment when an alarming number of Michigan's local governments and school districts are on the brink of financial catastrophe, the State's current solution to that problem—P.A. 436—is undoubtedly a difficult question of state law that bears on policy problems of significant public concern.  Not only will local residents suffer if their basic services are jeopardized but all state residents stand to suffer if the State's credit rating is negatively impacted.  This lawsuit strikes at the heart of this uniquely state problem and solution.

11

The State, as sovereign, addresses such matters of public concern and importance, in part, through legislation defining the power and authority of its local governments, which derive their power and authority only from the State. *Bivens v. Grand Rapids*, 505 N.W.2d 239, 241 (Mich. 1993). Indeed, state law generally controls over local enactments and policy. *Taunt v. General Retirement Sys.*, 233 F.3d 899, 906 (6th Cir. 2000) (citing *Rental Property Owners Ass'n of Kent Co. v. City of Grand Rapids*, 566 N.W.2d 514, 519 (Mich. 1997)). Thus, the policy challenges associated with restoring fiscal order to local entities and school districts under financial stress, counsel for state independence, not federal intervention.

Third, federal review here would disrupt the State's efforts to "establish a coherent policy" with respect to resolving the financial stress of local units of government and school districts and protecting all state residents by protecting the State's credit rating. Absent state direction, many units of local government and school districts have literally spent themselves into deficit. Fiscal crises have led to the appointment of 11 EFMs[1] and negotiation of 3 consent agreements under P.A. 72 between 1990 and 2011,[2] and one EM and one consent agreement under

---

[1] Nine of these EFMs (Hamtramck, City of Detroit, Pontiac, Flint, Benton Harbor, Allen Park, Muskegon Heights Schools, Detroit Public Schools, and Highland Park Public Schools) are now acting EMs under P.A. 436.

[2] Detroit, Inkster and River Rouge.

12

P.A. 4.[3]  P.A. 436 establishes a comprehensive policy to deal with these local fiscal emergencies, addressing a broad public concern that local governments maintain fiscal integrity.  Significantly, too, over the past few years a number of other Legislative Acts have been adopted to address these severe financial situations.[4]  Thus, P.A. 436 is but one piece of a larger state effort to restore fiscal responsibility, reduce public spending, and redefine the obligations of contracting parties in light of current financial, economic, and business realities.

In sum, these matters are uniquely suited to state regulation and control and would be disrupted by a federal court's review and remedy.  This Court should exercise its discretion to abstain under the *Burford* abstention doctrine.

**III.    Plaintiffs have failed to meet the factors for declaratory relief.**

Plaintiffs seek an order declaring that P.A. 436 violates the Equal Protection and the Procedural and Substantive Due Process clauses of the United States Constitution.  (RE 16, Am. Compl., Prayer for Relief, ¶ A.)  The Declaratory Judgment Act provides that in a case of actual controversy, a competent court may "declare the rights and other legal relations" of a party "whether or not further

---

[3] City of Detroit.

[4] Other laws enacted include:  2011 P.A. 297, Mich. Comp. Laws 15.581, *et seq.*; 2011 P.A. 264, Mich. Comp. Laws 38.1, *et seq.*; 2010 P.A. 185, Mich. Comp. Laws 38.35; 2010 P.A. 135, Mich. Comp. Laws 38.1343e; 2011 P.A. 152, Mich. Comp. Laws 15.561; 2011 P.A. 63; 2011 P.A. 95, Mich. Comp. Laws 380.1255a; 2011 P.A. 54, Mich. Comp. Laws 423.215b; 2011 P.A. 62, Mich. Comp. Laws 388.1601, *et. seq.*

13

relief is or could be sought." 28 USC § 2201; *Public Service Comm. of Utah v. Wycoff*, 344 U.S. 237, 241 (1952). The granting of a declaratory judgment rests in the sound discretion of the court. *Grand Trunk Western R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citation omitted).

The Sixth Circuit considers the following factors in determining whether a district court should issue a declaratory ruling: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*"; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and, (5) whether there is a better or more effective alternative remedy. *Grand Trunk*, 746 F.2d at 326 (internal citation omitted).

Here, factor 4 counsels strongly, and factors 3 and 5 counsel against exercising jurisdiction over the request for declaratory relief. As to factor 4, in determining whether the exercise of jurisdiction would increase friction between federal and state courts, the Sixth Circuit considers three sub-factors, one of which is whether there is a close nexus between underlying factual and legal issues and state law and/or public policy. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 559-560 (6th Cir. 2008). Here, the legal issues raised by Plaintiffs are closely

14

connected to the State's policy decision to handle its local financial emergencies through the options and procedures outlined in P.A. 436. That sub-factor alone is strong enough to counsel against exercising jurisdiction.

As to factor 3, an action presently pending before this Court—*Phillips, et. al. v. Snyder, et. al.*, No. 2:13-cv-11370—essentially raises these same substantive issues of equal protection based on wealth and vote dilution, and substantive and procedural due process.

Finally, as to factor 5, the alternative remedy here is for Plaintiffs to participate in the political process, because their real gripe is that they are dissatisfied with the current outcome of that process. This Court should decline to issue the requested declaratory relief.

## IV.   P.A. 436 does not violate the Equal Protection Clause.

As their first and second causes of action, Plaintiffs allege that P.A. 436 violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. These claims lack merit.

### A.   Plaintiffs' fundamental right to vote has not been diluted.

Plaintiffs first allege that P.A. 436 violates the right to vote by valuing the votes of citizens in communities without appointed emergency managers over the votes of citizens in communities with appointed emergency managers. (RE 16, Am. Compl. ¶ 76, ID# 198.)

The Equal Protection Clause states that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  The clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

The right to vote is a "fundamental" political right.  *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966), and the Equal Protection Clause applies when a state either classifies voters in disparate ways or places restrictions on the right to vote.  *League of Women Voters v. Brunner*, 548 F.3d 463, 477–78 (6th Cir. 2008) (citing *Bush v. Gore*, 531 U.S. 98, 104 (2000)).  "[T]he right of suffrage can [also] be denied by a debasement or dilution of the weight of a citizen's vote . . . ." *Reynolds v. Sims,* 377 U.S. 533, 555 (1964).  A vote-dilution claim invokes the principle of "one person, one vote," a requirement under the Fourteenth Amendment.  See *Carlson v. Wiggins*, 675 F.3d 1134, 1139 (8th Cir. 2012).

As a threshold matter, Plaintiffs must demonstrate they are similarly situated "in all *material* respects" to the persons allegedly receiving more favorable treatment.  *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quotation marks omitted) (emphasis added); *TriHealth, Inc. v. Bd of*

16

*Com'rs, Hamilton County, Ohio*, 430 F.3d 783, 790-791 (6th Cir. 2005).  Exact

correlation is not necessary.  *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).

Here, the individual Plaintiffs, who are residents of the City of Detroit,

which is under the administration of an emergency manager, allege that their votes

are being diluted as compared to residents of local units of government where there

is no emergency manager.  But that is not true.  Each local unit of government with

an emergency manager, including the City of Detroit, underwent a rigorous review

of its financial condition, as assessed against set criteria, and was determined to be

in a financial emergency by the Governor or other executive official.  The serious

financial problems facing these local units of government cannot be overstated.

Plaintiffs are thus not similarly situated to residents of local units of government

that have not been declared to be in a financial emergency.  As a result, their equal-

protection claims necessarily fail at the onset.

Turning to the substance of Plaintiffs' claim, residents in communities with

EMs retain all their rights to exercise the franchise and vote for the candidates of

their choice, including candidates for local government, and to have those votes

counted the same as any other citizen in any other municipality.  While P.A. 436

may temporarily prohibit the chief executive officers and governing bodies from

exercising the powers of those offices during receivership, Mich. Comp. Laws §

141.1549 (2), it does not preclude residents from voting candidates into these

17

offices and having their votes counted.[5]  Nor does it preclude candidates from

holding those offices during the receivership and performing whatever duties and

functions an EM does not assume.[6]

Plaintiffs equate their right to have their votes counted equally to a "right" to

have their elected candidates perform the duties of their offices.  But the right to

vote does not guarantee that a candidate will perform or function in office as

expected.  See, e.g., *Smith v. Winter*, 717 F.2d 191, 198 (5th Cir. 1983) ("[T]he

right to an 'effective' vote refers to the citizen's right to make his voice heard in

the electoral process, and not to the ability to command results in the public

office.")  If that were true, voters and candidates would have a voting rights claim

against the State every time a law is passed that impacts an elected official's duties

in office.  That cannot be the case, and indeed Plaintiffs fail to cite any decision

that has extended the right to vote in this manner.

### B.    P.A. 436 does not discriminate based on race as applied.

Plaintiffs next allege that, as applied, P.A. 436 has had a "disparate and

discriminatory impact on voters of color" because a majority of the State's African

---

[5] Local elections will be held this year in communities with EMs in accordance
with Michigan's election laws.  Mich. Comp. Laws § 168.642.  School district
elections are held in even-numbered years.  Mich. Comp. Laws § 168.642c.
[6] Plaintiffs suggest their votes are now meaningless.  But voting for qualified
candidates while a local government is in temporary receivership under P.A. 436 is
imperative to an effective transition out of receivership and to the resumption of
local control.

18

American residents are now "ruled" by unelected EMs, compared to a small minority of the State's white residents now "ruled" by EMs.  (RE 16, Am. Compl. ¶ 82, ID# 200.)  They claim that this purported disparate impact "has resulted in a dilution of the individual's right to vote for locally-elected officials of their choosing." *Id.*, ¶ 83.

Plaintiffs' argument appears to be that the communities identified in the Amended Complaint[7] were discriminated against when they underwent a preliminary review– the first stage of the financial review process under the emergency manager laws.  They allege a racially discriminatory disparate impact because more majority minority communities than majority white communities have undergone the financial review process and subsequent EM appointment.

Before addressing the substance of Plaintiffs' claim, it must be placed in context.  None of the identified communities were reviewed under P.A. 436; all were reviewed under P.A. 72 or P.A. 4.  P.A. 436 is implicated only because it ratifies "[a]ll proceedings and actions taken under" P.A. 4, P.A. 101, and P.A. 72, Mich. Comp. Laws § 141.1544(6), and continues the appointments of EMs.  Mich. Comp. Laws § 141.1549(10).  Indeed, as of the filing of this brief, only one

---

[7] Benton Harbor (P.A. 72), Ecorse (P.A. 72), Flint (P.A. 72 and P.A. 4), Pontiac (P.A. 72), Highland Park School District (P.A. 4), Detroit Public Schools (P.A. 72), and City of Detroit (P.A. 4, and P.A. 72).  (RE 16, Am. Compl. ¶ 49, ID# 188), and Defendants' Exhibit B.  Plaintiffs also identify Muskegon Heights School District (P.A. 4), but the local government there requested a preliminary financial review, so that district's review does not support Plaintiffs' claim. *Id.*

19

community, the City of Hamtramck, has completed the financial review process under P.A. 436 and had an EM appointed. According to 2010 census data, this community has a white majority population.[8] So, at this point, there can be no claim of disparate treatment directed at P.A. 436.

If there is any merit to Plaintiffs' claim of disparate treatment under the prior laws, P.A. 436 could only be declared unconstitutional on an as-applied basis to the extent it ratified the prior preliminary reviews in the identified communities. Plaintiffs' generic request for a declaration that P.A. 436 violates the Equal Protection Clause is thus overbroad.[9]

Even so, their claim fails for the following reasons. P.A. 436 does not embody a racial classification and it neither says nor implies that voters should be treated differently on account of race. The purpose of the Act—resolving local financial emergencies—includes any local unit in financial distress, regardless of its racial makeup. So P.A. 436 is facially neutral.

"Where facially neutral legislation is challenged on the grounds that it discriminates on the basis of race, the enactment will be [analyzed under] strict scrutiny *only if the plaintiff can prove that it 'was motivated by a racial purpose or object,' or 'is unexplainable on grounds other than race*.'" *Moore v. Detroit*

---

[8] See http://quickfacts.census.gov/qfd/states/26/2636280.html.
[9] P.A. 436 has a severability clause, Mich. Comp. Laws § 141.1573, meaning that any offending provision may be struck leaving the remainder of the Act intact.

20

*School Reform Board*, 293 F.3d 352, 369 (6th Cir. 2002) (internal quotation marks and citations omitted) (emphasis added).  Therefore, "[p]roving that a law has a racially disparate impact, without more, is [] insufficient to establish a violation" of the Fourteenth Amendment.  *Moore*, 293 F.3d at 369 (citing *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264–65 (1977)).

The U.S. Supreme Court has identified five factors for determining whether facially neutral state action was motivated by a racially discriminatory purpose: (1) the impact on particular racial groups, (2) the historical background of the challenged decision, (3) the sequence of events preceding the action, (4) departures from the government's normal procedural process, and (5) the legislative history. *Village of Arlington Heights*, 429 U.S. at 266–68; see also *Moore,* 293 F.3d at 369-370 (addressing these factors in a challenge against Michigan School Reform Act and finding no equal protection violation).

While Plaintiffs recount the historical background of P.A. 436, the events leading to its passage, and its legislative history, none of that shows that the Legislature acted with a discriminatory purpose.  Indeed, the fact that P.A. 436 was enacted after the referendum on P.A. 4 and during lame duck is not particularly unusual, and certainly was not unlawful.  See *Reynolds v. Bureau of State Lottery*, 610 N.W.2d 597, 601-607 (Mich. Ct. App. 2000) (discussing Michigan's referendum process and ability of Legislature to reenact legislation).  Even if the

21

emergency manager laws have had a disparate impact as alleged, without proof of these other factors, Plaintiffs cannot show a racially discriminatory purpose.

Regardless, Plaintiffs focus on the "impact" on majority minority communities. They support this allegation by reference to the Department of Treasury's fiscal health indicator scores and by asserting that majority white communities with fiscal scores similar to majority minority communities were not subject to a preliminary review under P.A. 72 or P.A. 4. But this is unpersuasive because the fiscal indicator scores were compiled for a different purpose and were never used in the preliminary review process. (Defs.' Ex. A.)

Rather, the trigger for subjecting the identified communities to preliminary review was the existence of one or more of the factors identified in P.A. 72 or P.A. 4.[10] Under these Acts, the State Treasurer or State Superintendent could conduct a preliminary review "to determine the existence of a local government financial problem" where "1 or more" of the 14 or 18 factors listed in P.A. 72 (Mich. Comp. Law. § 141.1212(a) - (n)), and P.A. 4 (Mich. Comp. Laws § 141.15.12(a) – (s)), respectively, were present. Thus, to the extent Plaintiffs draw comparisons between the majority minority communities with EMs and white communities without EMs, they must make comparisons based on the existence of the statutory

---

[10] While some of the factors used to compile fiscal scores overlapped with the statutory factors outlined in P.A. 72 and P.A. 4, e.g. fund deficits, the fiscal scores themselves were not used as part of the preliminary review.

22

preliminary review factors, not the fiscal scores.  Again, it is the statutory factors that trigger the preliminary review.  Moreover, fiscal scores were never compiled for school districts, so Plaintiffs have made no showing—just bare allegations— with respect to the purported disparate treatment of school districts.

Even so, the fiscal score data is unpersuasive because there is too little of it, and what exists is inconclusive.  Data was only compiled and the scores reported for four years—2006, 2007, 2008, and 2009.  (Defs.' Ex. B.)  As shown in Defendants' Table, Exhibit B, only three communities—Three Oaks, River Rouge, and Pontiac—underwent a preliminary review during that time period.  (*Id.*)  In 2008, Three Oaks, which has a white majority population, had a fiscal score of 1 (a good score) but still underwent a review under P.A. 72.  Pontiac and River Rouge, majority minority communities, both scored a 6 (an average to poor score, but not the worst) in 2009, and underwent review.  Just comparing these three communities, the inclusion of Three Oaks undermines Plaintiffs' contention that the fiscal scores are somehow probative of whether a community was properly subject to a preliminary review.  Similarly, the small number of comparables renders the fiscal scores meaningless for any year other than 2009.  And to the extent there were majority white communities that scored a 6 or higher in 2009 and were not subject to a preliminary review as were Pontiac and River Rouge, again, the fiscal scores were not a trigger or considered during a preliminary review.

Plaintiffs thus fail to sufficiently plead facts supporting a determination that the preliminary reviews of the identified communities under P.A. 72 or P.A. 4 were motivated by a racially discriminatory purpose. *Moore*, 293 F.3d at 369-370. Defendants therefore need only show that P.A. 436, specifically the sections ratifying the past actions and continuing the appointments, are rationally related to a legitimate governmental interest. *Id.*

"When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985) (internal citation omitted). Michigan has a legitimate government interest in preventing or rectifying the insolvency of its political subdivisions, which threatens the health, safety, and welfare of its residents. Mich. Comp. Laws § 141.1543. It also threatens the interests of the citizens of this State as a whole because it is detrimental to the State's overall economic condition and credit rating. *Id.* To that end, it is rational that communities that already underwent the financial review process and had EMs appointed are not required to undergo the disruption of a review under P.A. 436. This is also supported by the fact that P.A. 436 subjects an EM to potential removal after 18-months in office. See Mich. Comp. Laws §

24

141.1549(6)(c).  P.A. 436 thus survives rational basis review, and Plaintiffs fail to state a claim under the Equal Protection Clause.

**V.      P.A. 436 does not violate substantive or procedural due process.**

### A.      Substantive Due Process Claim

The substantive component of the Due Process Clause protects fundamental rights and liberty interests that are "[so] implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." *Palko v. Connecticut,* 302 U.S. 319, 325-326 (1937), *overruled on other grounds*, by *Benton v. Maryland*, 395 U.S. 784 (1969).  Only when a state law infringes on these fundamental rights and interests is it subject to strict scrutiny.  *Washington v. Glucksberg,* 521 U.S. 702, 721 (1997).  Thus, to properly analyze a substantive due process claim, the Court must first carefully identify the fundamental right or liberty interest allegedly implicated.

Here, Plaintiffs' substantive due process claim is premised on an alleged denial of the right to participate equally in the voting process in jurisdictions under emergency management resulting from the arbitrary and discriminatory application of P.S. 436 and its predecessor laws.  (RE 16, Am. Compl. ¶¶ 90, 91, ID# 202.) This is essentially an equal protection claim and is not within the scope of substantively protected rights or interests.

25

The Equal Protection Clause, not substantive due process, protects a citizen's right to participate in elections on an equal footing with other citizens. *Rodriguez v. Popular Democratic Party,* 457 U.S. 1, 9-10 (1982); *Bush v. Gore,* 531 U.S. 98, 104 (2000).  This encompasses the right to have one's vote counted on equal terms with others so that one's vote is accorded equal weight and equal dignity with other citizens in the jurisdiction.  *Id.*  Thus, Plaintiffs' claim is properly analyzed only under the Equal Protection Clause.  *Graham v. Connor,* 490 U.S. 386, 394, 395 (1989).   As argued above, under that analysis Plaintiffs' claim fails.

In the context of a voting rights claim, the Due Process Clause is implicated and relief is appropriate only "in the exceptional case where a state's *voting system* is fundamentally unfair."  *League of Women Voters,* 548 F.3d at 478 (emphasis added); *Warf v. Board of Elections of Green County, Kentucky,* 619 F.3d 553, 559 (6th Cir. 2010) (internal citations omitted).  Thus, a due process claim looks at the "fairness of the official terms and procedures under which the election was conducted."  *League of Women Voters*, 548 F.3d at 478, citing *Griffin v. Burns,* 570 F.2d 1065, 1078 (1st Cir. 1978).  In this context, courts have examined such practices as the allocation of voting; the adequacy of training for poll workers; and provisional and absentee balloting safeguards—all of which could, under certain circumstances, lead to disenfranchisement by frustrating

voters or the discounting of ballots. *League of Women Voters*, 548 F.3d at 477-478; *Warf*, 619 F.3d at 559-561.

But Plaintiffs' substantive due process claim is not premised on a purported fundamental unfairness in the State's voting system. Rather, it is premised on the same allegations underlying their equal protection claim—the alleged discriminatory dilution of their right in jurisdictions under emergency management resulting from the suspension of the elected officials' duties once in office. But again, no protected right to have one's elected officials perform the duties of the office once elected is encompassed within the "right to vote." See, e.g., *Smith*, 717 F.2d at 198. Nor should substantive due process expanded to incorporate such a right, particularly in the context of this case. *Glucksberg*, 521 U.S. at 720.

Political subdivisions of the State have never "been considered as sovereign entities." *Sailors v. Bd. of Ed. of Kent County*, 387 U.S. 105, 107 (1967). To the contrary, they are "traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental function." *Id.* at 107-108; see also *Hunter v. City of Pittsburgh*, 207 U.S. 161, 178 (1907). Significantly, the Supreme Court recognizes that local governments may need innovations to remain viable and that nothing in the Constitution prevents such experimentation. *Sailors*, 387 U.S. at 110-111.

27

The application of P.A. 436 and its predecessor laws comport with the State's sovereign powers to reshape local government to address changing urban conditions and related fiscal distress. It is rationally related to a legitimate government purpose—the health, safety, and welfare of citizens through the preservation of the fiscal integrity of local governments. The Act is narrowly tailored to achieve this purpose with as little disruption to the government unit and the provision of services as possible. It prescribes specific guidelines, requirements, and procedures governing official decision making in every application. It is a valid exercise of the State's police power.

Nothing in P.A. 436 alters the State's or local government's voting system or renders the respective voting system in the jurisdiction under emergency management fundamentally unfair. Indeed, regular local government elections in several jurisdictions under emergency management are proceeding this election year. And every registered voter in these jurisdictions has the equal opportunity to vote and have their vote counted.

## B.   Procedural due process claim

Plaintiffs' procedural due process claim is based on a denial of a protected "right to vote" in jurisdictions under emergency management. (RE 16, Am. Compl. ¶¶ 95, 96, ID# 203.) Analysis of this procedural due-process claim involves a dual inquiry: (1) whether a liberty or property interest exists that the

28

State has interfered with; and (2) whether the procedures attendant upon the deprivation were constitutionally sufficient—that is, provided at a meaningful time and in meaningful manner.  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 (1985); *Matthew v. Eldridge,* 424 U.S. 319, 333, 349 (1976).

No protected right or interest invoking procedural due process is at issue here.  As previously argued, the generalized "right to vote" on which this procedural claim is based is not encompassed within the Due Process Clause. Rather the "liberty interest" or right accorded due process protection is the fundamental fairness of the state's voting system.  *League of Women Voters,* at 478; *Warf v.* 619 F.3d at 559.  Plaintiffs' attempt to bootstrap a voting rights claim into the application and enforcement of P.A. 436 is without merit given the limited, and "exceptional nature" of the due process protection afforded in the voting context.

Also significant to this analysis is the fact the Michigan Legislature has the authority to define and modify the powers, duties and obligations of its local governments, which are derived from the State in the first instance.  Mich. Const. 1963, art. VII, §§ 1-34; *Sailors,* 387 U.S. at 107-108; *Mack v. City of Detroit,* 649 N.W.2d 47, 52 (Mich. 2002); *Attorney General v. Flint,* 713 N.W.2d 782, 787 (Mich. App. 2005); *Bivens*; 505 N.W.2d at 241.  Michigan's Home Rule City Act

29

reiterates this constitutional principle.  Mich. Comp. Laws § 117.36.  In other words, the authority the State gives a local government it may also take away.

The Court may also look to state law to determine whether a procedurally protected interest is created.  But, state law confers a procedurally protected interest or benefit only when it mandates specific action in a manner that constrains bureaucratic discretion.  *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 463 (1989).  No such constraints are imposed under P.A. 436 or these other laws governing the relationship between the State and its local governments.  And, appropriate guidelines for the exercise of discretion are imposed.  Plaintiffs fail to establish the existence of a protected right or interest with which the State has interfered, and this inquiry need go no further.

The second inquiry relevant to this analysis also weighs in the State's favor, as there exist constitutionally sufficient procedures attendant to the application of P.A. 436.  Because P.A. 436 accords no benefit or right to the Plaintiffs individually, no specific process need be accorded them with respect to its application.  Plaintiffs are no different than any other citizen with respect to enforcement of a law of general application.  Additionally, Plaintiffs have the power of the referendum to challenge the law.  Plaintiffs also have the power of the vote to elect like-minded officials who might repeal or amend the law.

30

Accordingly, Plaintiffs' substantive and procedural due process claims fail as a matter of law and should be dismissed.

**VI.    Plaintiffs seek to impose preclearance as a remedy but do not set forth a separate claim in Count V for which relief may be granted.**

Plaintiffs have abandoned their claim under Section 5, the preclearance provisions of the Voting Rights Act, 42 U.S.C. § 1973c ("Section 5") (RE 16, Am. Compl., ID# 180-189), presumably in light of the United States Supreme Court's recent decision in *Shelby County, Alabama*, 570 U.S. at ____, No. 12-96, Slip Opinion at 1 (issued on June 25, 2013).  In that case, the United States Supreme Court held that the coverage formula under Section 4 of the Voting Rights Act for determining whether a particular jurisdiction was required to preclear any voting changes, violated the federal constitution.

### A.    Count V does not set forth a distinctive substantive claim.

Although Plaintiffs are now seeking to impose preclearance as a remedy under Section 3(c) of the Voting Rights Act, 42 U.S.C. Section 1973a(c), their claim incorrectly presupposes that preclearance is appropriate merely because they have pled a Fourteenth Amendment violation.  (RE 16, Am. Compl., ID #204 "Plaintiffs, having pled a violation of the Fourteenth Amendment, are eligible for the Court's implementation of Section 3c of the Voting Rights Act.")  Plaintiffs are putting the cart before the horse.  This Court has made no finding that any violation, let alone a Fourteenth Amendment violation, has occurred.  (42 U.S.C. §

31

1973a, "if the court finds that violations of the fourteenth or fifteenth amendment justifying equitable relief have occurred…..)  Also, even if such a finding were to be made, preclearance is not an automatic remedy to be imposed.  (42 U.S.C. § 1973a(c), "the court, in addition to such relief as it may grant, shall retain jurisdiction for such period as it may deem appropriate…").

In this case, Count V does not set forth any distinct substantive claim at all. It is redundant of Plaintiffs' prayer for relief, seeking to impose preclearance as a prospective remedy over the voting changes in the cities of Benton Harbor, Detroit, Ecorse, Flint, Hamtramck, Highland Park, Pontiac, and the Detroit and Muskegon Heights Public School Districts.  (RE 16, Am. Compl., ID #205.)  Furthermore, because Plaintiffs have already pled substantive Fourteenth Amendment violations in Counts I and II of their Amended Complaint, Count V should be dismissed.

### B.    Plaintiffs have failed to name the necessary parties because Defendants are not required to seek preclearance under § 3.

Plaintiffs' request for equitable relief seeks to impose preclearance over future voting changes of the political subdivisions of this State identified above that are not parties to this case.  Because they have failed to name necessary parties, dismissal is appropriate.  The Sixth Circuit has explained that resolution of the question of joinder under Rule 19 and, thus, of dismissal for failure to join an indispensable party under Rule 12(b)(7), involves a three-step process.  *Local 670 v. International Union, United Rubber, Cork, Linoleum and Plastic Workers of*

32

*America,* 822 F.2d 613, 618 (6th Cir. 1987), *cert. den'd,* 484 U.S. 1019 (1988).
The court:  (1) first determines whether a person is necessary to the action and should be joined if possible; 2) joins the party if personal jurisdiction is present; and 3) analyzes the factors set forth in Rule 19(b) to determine whether it must dismiss the case due to the indispensability of that party.  *Id.*  (internal citations omitted).

Even if this Court were to entertain issuing the requested injunctive relief, Plaintiffs' request for a preliminary and permanent order granting preclearance identifies specific cities and school districts.  (RE 16, Am. Compl., Prayer for Relief, ¶ E.)  Thus, these cities and school districts or their appropriate officials would be necessary to this action and would have to be joined.  42 U.S.C. 1973(a)(c) designates preclearance relief against the chief legal officer or other appropriate official of such state or subdivision.

For these reasons, Count V should be dismissed under Rule 12 (b)(7).

## CONCLUSION AND RELIEF REQUESTED

For the reasons discussed above, Plaintiffs' challenge to P.A. 436 fails because they lack standing.  This Court should abstain from asserting jurisdiction and Plaintiffs have not met the factors necessary for declaratory relief.  On the merits, P.A. 436 does not violate equal protection, substantive or procedural due process, or Section 3 of the Voting Rights Act.  Not only is the Act constitutional

33

on its face but to the extent its procedures for preliminary review have been

applied, they do not violate any recognized constitutional rights.  Plaintiffs'

requested relief must be denied and the Amended Complaint dismissed in its

entirety, with prejudice.

Respectfully submitted,

BILL SCHUETTE
Attorney General

*s/Denise C. Barton*
Denise C. Barton (P41535)
Michael F. Murphy (P29213)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434
Email:  bartond@michigan.gov
P41535

Dated:  July 11, 2013

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2013, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system which will send notification of
such.

*s/Denise C. Barton*
Denise C. Barton (P41535)
Assistant Attorney General
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434
E-mail:  bartond@michigan.gov

34