# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**DETROIT BRANCH NAACP**, **MICHIGAN STATE CONFERENCE NAACP**,
**DONNELL R. WHITE**, individually and on behalf of Detroit Branch NAACP and Michigan State Conference NAACP,
**THOMAS STALLWORTH III**, individually,
**RASHIDA TLAIB**, individually,
**MAUREEN TAYLOR**, individually

        Plaintiffs,

v.

               **Civil Action** No. 13-12098
               **Hon. George Carem Steeh**
               **Mag R. Steven Whalen**

**RICK SNYDER**, in his Official Capacity as Governor of the State of Michigan, **ANDREW DILLON**, in his Official Capacity as Treasurer of the State of Michigan, and **RUTH JOHNSON**, and in her Official Capacity as Michigan Secretary of State,
        Defendants.

_____

Melvin Butch Hollowell (P37834)
Attorney for Plaintiffs
8220 Second Avenue
Detroit, Michigan 48221
313.207.3890

Denise C. Barton (P41535)
Michael F. Murphy (P29213)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.373.6434

Nabih H. Ayad (P59518)
Attorney for Plaintiffs
2200 N Canton Ctr Rd, Ste 220
Canton, Michigan 48187
734.983.0500

_____/

# PLANTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS

1

**NOW COME**, Plaintiffs, by and through their attorneys, hereby submit the following as their Response in Opposition to Defendants' Second Motion to Dismiss. Defendants argued that (1) Plaintiffs do not have standing; (2) this Court should abstain under the *Burford* abstention doctrine; (3) Plaintiffs have failed to meet the factors for declaratory relief; (4) 2012 Mich. Pub. Acts 436, Mich. Comp. Laws § 141.1541 *et seq*., (P.A. 436) does not violate the Equal Protection Clause; (5) P.A. 436 does not violate the Due Process Clause; and (6) Plaintiffs are not entitled to relief of Section 3(c) of the Voting Rights Act. As argued below and in Plaintiffs' Brief, Defendants' motion must be denied.

Plaintiffs submit to the Court that Defendants' arguments must fail.

1. Individual Plaintiffs have standing because they have suffered a concrete and particularized injury and "have a personal stake in the outcome." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Baker v. Carr*, 369 U.S. 186, 204 (1962).

2. Organizational Plaintiffs have standing because their members have standing to sue in their own right, the interests to be protected are germane to the organizations' purpose and individual members are not required to participate in the lawsuit. *ACLU of Ohio Found., Inc. v. Ashbrook*, 375 F.3d 484, 489 (6th Cir. 2004).

3. This Court should not apply the narrow *Burford* abstention doctrine, because Plaintiffs have only asserted Federal Constitutional claims. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 362 (1989).

4. Plaintiffs have met *Grand Trunk's* five factors for declaratory relief. *Grand Trunk Western R.R. Co. v. Consolidated Rail Corp*., 746 F2d 323, 326 (6th Cir. 1984).

5.  P.A. 436 violates the Equal Protection Clause of the Fourteenth Amendment because it infringes on a fundamental right, discriminates based on race as applied, and it is not narrowly tailored to serve a compelling governmental interest. *Bush v. Gore*, 531 U.S. 98 (2000); *Village of Arlington Heights v. Metro. Hous. Dev. Corp*., 429 U.S. 252, 265 (1977); *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).

6.  P.A. 436 violates the substantive Due Process Clause of the Fourteenth Amendment because it infringes and dilutes Plaintiffs' fundamental right to vote and it is not narrowly tailored to serve a compelling governmental interest. *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008).

7.  P.A. 436 violates the procedural Due Process Clause of the Fourteenth Amendment because it impedes a protected liberty interest and provides no notice or opportunity for hearing. *Warf v. Bd. of Elections*, 619 F.3d 553, 559 (6th Cir. 2010); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S.532, 542 (1985); *Armstrong v. Manzo,* 380 U.S. 545 (1965).

8.  Plaintiffs request Section 3(c) preclearance relief for their ongoing Fourteenth Amendment violations and is not required to join parties to this lawsuit. 42 U.S.C. § 1973a(c) (2006); *Jeffers v. Clinton*, 740 F. Supp. 585, 592 (E.D. Ark. 1990); Fed. R. Civ. P. 12(b)(7).

9.  As outlined above, Plaintiffs have stated a claim upon which relief can be granted, namely that 2012 Mich. Pub. Acts 436, Mich. Comp. Laws § 141.1541 *et seq*., (P.A. 436) violates the Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause of the Fourteenth Amendment.  Defendants have not fulfilled their burden of proving that Plaintiffs' Amended Complaint "fails to state a claim as a matter of law." *Bennett v. MIS Corp*., 607 F.3d 1076, 1091 (6th Cir. 2010).

10. Plaintiffs' Amended Complaint sets forth sufficient allegations to establish a claim for relief. The federal rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). While a plaintiff must plead "more than labels and conclusions," the "complaint need not contain 'detailed' factual allegations." *Id.*  The court must accept all allegations in the complaint at "face value" and

3

construe them in the light most favorable to Plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983); *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1034-35 (6th Cir. 1979). Plaintiffs have set forth enough information to "outline the elements of a claim or to permit inferences to be drawn that these elements exist." *Jenkins v. McKeithen*, 395 U.S. 411, (1969); *German v. Killeen*, 495 F. Supp. 822, 827 (E.D. Mich. 1980). Plaintiffs have sufficiently pled facts to support their claims.

Because Plaintiffs seek relief from an ongoing constitutional violation and because Plaintiffs' claims are properly pled and have also filed an Amended Complaint, this Court has jurisdiction over this action, and Defendants' motion must be denied.

**WHEREFORE**, Plaintiffs request that this Honorable Court enter an order denying Defendants' Motion To Dismiss Under Fed. R. Civ. P. 12(b)(1), (6) and (7).

Respectfully submitted,


/s/ Melvin Butch Hollowell

_____

MELVIN BUTCH HOLLOWELL(P-37834)
General Counsel
Detroit Branch NAACP
8220 Second Avenue
Detroit, Michigan 48221
313-871-2087
butchhollowell@gmail.com

4

NABIH H. AYAD & ASSOCIATES, P.C.

/s/ Nabih H. Ayad

_____

NABIH H. AYAD (P-59518)
General Counsel
Arab-American Civil Rights League
Nabih H. Ayad & Associates
2200 North Canton Center Road, Suite 220
Canton, Michigan 48187
734-983-0500
nayad@ayadlaw.com

Dated: August 11, 2013

ATTORNEYS FOR PLAINTIFFS

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**DETROIT BRANCH NAACP, MICHIGAN
STATE CONFERENCE NAACP,
DONNELL R. WHITE**, individually and
on behalf of Detroit Branch NAACP and Michigan
State Conference NAACP, **THOMAS STALLWORTH III**,
individually, **RASHIDA TLAIB**, individually,
**MAUREEN TAYLOR**, individually

        Plaintiffs,

v.

        **Civil Action** No. 13-12098
        **Hon. George Carem Steeh**
        **Mag R. Steven Whalen**

**RICK SNYDER**, in his Official Capacity as Governor
of the State of Michigan, **ANDREW DILLON**, in his Official
Capacity as Treasurer of the State of Michigan, and **RUTH
JOHNSON**, and in her Official Capacity as Michigan Secretary
of State,

        Defendants._____/

| | |
|---|---|
| Melvin Butch Hollowell (P37834) | Nabih H. Ayad (P59518) |
| Attorney for Plaintiffs | Attorney for Plaintiffs |
| 8220 Second Avenue | 2200 N Canton Ctr Rd, Ste 220 |
| Detroit, Michigan 48221 | Canton, Michigan 48187 |
| 313.207.3890 | 734.983.0500 |

Denise C. Barton (P41535)
Michael F. Murphy (P29213)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.373.6434

_____/

## BRIEF IN SUPPORT OF PLANTIFFS' RESPONSE
## TO DEFENDANTS' SECOND MOTION TO DISMISS

i

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ......................................................... ii

INDEX OF AUTHORITIES .................................................... iv

CONCISE STATEMENT OF THE ISSUES PRESENTED ...................................x

CONTROLLING AUTHORITY ...............................................xiii

INTRODUCTION................................................................ 1

STATEMENT OF FACTS.................................................... 3

ARGUMENT................................................................6

    I.    Individual Plaintiffs Have Standing Because They Have Suffered a Concrete and Particularized Injury and Have a Personal Stake in the Outcome………….……………………………………………6

    II.    Organizational Plaintiffs Have Standing Because Their Members Have Standing to Sue in Their Own Right, the Interests to be Protected are Germane to the Organizations' Purpose and Individual Members are not Required to Participate in the Lawsuit………………….………...…...8

    III.    This Court Should Not Apply the Tightly Qualified *Burford* Abstention Doctrine, Because Plaintiffs Have Only Asserted Federal Constitutional Claims………………………………………………...…10

    IV.    Plaintiffs Have Met *Grand Trunk's* Five Factors for Declaratory Relief …………………….………………………………………..12

    V.    Plaintiffs Have Stated a Fourteenth Amendment Equal Protection Claim ….….……………………………………………….…15

A.  P.A. 436 Infringes and Dilutes Plaintiffs' Fundamental Right to Vote ………................................................................................16

B.  P.A. 436 Discriminates Based on Race as Applied. ........................22

C.  P.A. 436 is Not Narrowly Tailored to Serve a Compelling State Interest ……………………………………………………………….28

VI.  Plaintiffs Have Stated a Fourteenth Amendment Substantive Due Process Claim……………………………………………...………….29

A.  P.A. 436 Infringes Plaintiffs Substantively Protected Fundamental Right to Vote……………………………………….………….30

B.  P.A. 436 is Not Narrowly Tailored to Serve a Compelling State Interest ……………………………………………………...35

VII.  Plaintiffs Have Stated a Fourteenth Amendment Procedural Due Process Claim……………………………………………………...36

VIII.  Plaintiffs Request this Court's Implementation of Section 3(c) of the Voting Rights Act……………………………………………………40

IX.  Conclusion and Relief Requested ……………………..…………......46

X.  Certificate of Service (e-file) ……………………………………...50

# INDEX OF AUTHORITIES

Page

**Cases**

*ACLU of Ohio Found., Inc. v. Ashbrook*, 375 F.3d 484 (6th Cir. 2004)…....…....9, 47

*ACLU v. Nat'l Sec. Agency,* 493 F.3d. 644 (6th Cir. 2007) ……………….…….….6

*Allen v. Wright,* 468 U.S. 737 (1984)…………….…………… …………..…..….6

*Amersbach v. City of Cleveland*, 598 F.2d 1033, 1034-35 (6th Cir. 1979)… ….…..48

*Amsouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004)…………… ………......….13

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) …………..……………..…..…..17

*Alabama Pub. Serv. Comm'n*  v. *Southern R. Co.*, 341 U.S. 341 (1951).… …..…….11

*Anthony v. State of Michigan*, 35 F. Supp. 2d 989 (E.D. Mich. 1999) …………..8

*Armstrong v. Manzo*, 380 U.S. 545 (1965)……………………….…36, 38, 48

*Attorney General v. Flint,* 713 N.W.2d 782 (Mich. App. 2005) …………………..39

*Baker v. Carr,* 369 U.S. 186 (1962) …………………………..………….6, 15, 46

*Baldwin v. Hale*, 68 U.S. (1 Wall.) 223  (1863)…………………………….....36

*Batson v. Kentucky*, 476 U.S. 79 (1986) ………………….……………...…….23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 244 (2007)……………....21, 26, 27, 48

*Bennett v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010)…………………………..48

*Bivens v. City of Grand Rapids*, 505 N.W.2d 239 (1993)……………………39

*Blackmoon v. Charles Mix County*, No. 05-4017 (D.S.D. Dec. 4, 2007)…………..43

*Blake v. McClung*, 172 U.S. 239 (1897)……………………………………...37

*Breedlove v. Suttles*, 302 U.S. 277 (1937)……………………………………....37

*Brillhart v. Excess Ins. Co.,* 316 U.S. 491 (1942) …………………………………14

*Brown* v. *Mississippi,* 297 US 278 (1936) …………………………..………..………30

*Bush v. Gore*, 531 U.S. 98 (2000) ………………………………..…..…17, 18, 20

*Butchers' Union Co.* v. *Crescent City Co.,* 111 U.S. 746 (1884)………………..37

*Carlson v. Wiggins*, 675 F.3d 1134 (8th Cir. 2012). ……………….…...………18

*Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011) .…18

*City of Los Angeles v. Lyons*, 461 U.S. 95  (1983) ……...…………………...……6, 8

*City of Mobile v. Bolden*, 446 U.S. 55 (1980)………………………………....43

*Clark v. Jeter*, 486 U.S. 456 (1988) ……………..…..…..……………………16

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)…………………..38, 48

*Collins v. City of Harker Heights*, 503 U.S. 115 (1992)……………………….....36

*Colorado River Water Conservation Dist.* v. *United States*, 424 U.S. 800 (1976) ………………………………………………………………...10, 11

*Conley v. Gibson*, 355 U.S. 41 (1957) ………………………….………..21, 26, 48

County of Allegheny v. Frank Mashuda Corp., 360 U.S. 185 (1959)……………11

*Deakins* v. *Monaghan*, 484 U.S. 193 (1988) ………………………….……..…11

*Dent v. West Virginia*, 129 U.S. 114 (1889) ………………………………….....36

*Duncan v. Doythress*, 657 F.2d 691 (5th Cir. 1981)……………………………33

*Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523 (6th Cir. 2002) ……………………………………………………………...24, 26

*Fuentes v. Shevin*, 407 U.S. 67 (1972)……………………………………………36

*Jeffers v. Clinton*, 740 F. Supp. 585 (E.D. Ark. 1990)……………………….*passim*

*Jenkins v. McKeithen*, 395 U.S. 411 (1969) ………………………...…..…21, 27, 48

*Koenig v. Flynn*, 285 U.S. 375 (1932) ……………………………………...…6

*German v. Killeen*, 495 F. Supp. 822 (E.D. Mich. 1980). ……………..…21, 27, 48

*Grand Trunk Western R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984)………………………………………………………………………*passim*

*Hawaii Housing Authority v. Midkiff*, 469 U.S. 229 (1984)………………………10

*Hebert* v. *Louisiana*, 272 U.S. 312 (1926) ……………….……………….…...…..……30

*League of Women Voters v. Brunner*, 548 F.3d 463 (6th Cir. 2008) ……....17, 31, 48

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ………………….......…46-47

*Mack v. City of Detroit,* 649 N.W.2d 47 (Mich. 2002) …………………………...39

*Mason v. State of Missouri*, 179 U.S. 328 (1990)…………………………………37

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ……………………………………36

*McNeese* v. *Board of Ed. for Community Unit School Dist. 187*, 373 U.S. 668 (1963) ……………………………………………………………………….....11

*Miyazawa v. City of Cincinnati*, 45 F.3d 126 (6th Cir. 1995) …………..….…6, 8

*Moore v. Detroit Sch. Reform Bd.*, 293 F.3d 352 (2002). ……....…………16, 23, 28

*NAACP v. Alabama*, 357 U.S. 449 (1958)……………… ………………………...10

*NAACP v. Button*, 371 U.S. 415 (1963)……… ……… ………………………..10

*NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982) ……………………..…..10

*NAACP v. Federal Power Commission*, 425 U.S. 662 (1976) ……….……….…10

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350 (1989)………………………………..……………………………………….. 11, 47

*Palko v. Connecticut,* 302 U.S. 319 (1937).  …………..……………………..…….29

*Parratt v. Taylor*, 451 U.S. 527 (1981)……………………………………………….8

*Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000). …………….……..………18

*Philips v. Synder*, No. 2:13-cv-11370……………………………………….13-14

*Pirtle v. Brown,* 118 F.2d 218 (6th Cir. 1941)…………………………….…..…37

*Public Service Comm of Utah v. Wycoff*, 344 U.S. 237 (1952) …..……………..……12

*Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706 (1996) …………….....………..…11

*Reno v. Flores*, 507 U.S. 292 (1993) ……………….…………………….…35

*Reynolds v. Sims,* 377 U.S. 533 (1964) …………….…...………….…………..……18

*Rodriguez v. Popular Democratic Party*, 457 U.S. 1 (1982) ……………….……33

*Sailors* v. *Board of Education*, 387 U.S. 105 (1967) ……………….…....……34, 39

*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973) ………..…………31

*Sanchez v. Anaya*, No.  82-0067M (D.N.M. Dec. 17, 1984)………………….43, 46

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ………….……………………..……48

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (2008) ………………..…………13

*Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441 (1923) ……………………22

*Smiley v. Holm*, 285 U.S. 355 (1932) ………………………………..….……6

*Snyder* v. *Massachusetts,* 291 U.S. 97 (1934) …………………………..……30

*Socialist Workers Party v. Secretary of State*, 317 N.W.2d 1 (Mich. 1982)………37

*Stand Up for Democracy v. Board of State Canvassers*, Mich. Ct. App, No. 310047 (6/6/12)……………………………………………………………………..4

*Stand Up for Democracy v. Secretary of State*, Mich. S. Ct. No. 145387 (Aug. 3, 2012) ………………………………………………………………….…4

*Sunday Lake Iron Co.* v. *Township of Wakefield,* 247 U.S. 350 (1918) …..…...…22

*The Hecht Co. v. Bowles,* 321 U.S. 321 (1944)…………………………………42

*TriHealth, Inc. v. Board of Com'rs, Hamilton County, Ohio*, 430 F.3d 783 (6th Cir. 2005)…………………………………………………………………...14

*United States v. Carolene Products Co*., 304 U.S. 144 (1938) ……….………...30

*Village of Arlington Heights v. Metro. Hous. Dev. Corp*., 429 U.S. 252 (1977)……………………………………………………………...23, 24, 47

*Warf v. Bd. Of Elections*, 619 F.3d 553 (6th Cir. 2010)………………...31, 32, 37

*Washington v. Glucksberg*, 521 U.S. 702 (1997). ………………..…..28, 30, 47

*Wesberry v. Sanders*, 376 U.S. 1 (1964) ………………………..…………………17

*Williams v. Rhodes*, 393 U.S. 23 (1968). …………………………….………17

*Wilton v. Seven Falls Co*., 515 U.S. 277 (1995) …………………….………14

*Windsor v. The Tennessean*, 719 F.3d 155, 158 (6th Cir. 1983) ……………….48

*Yick Wo* v. *Hopkins*, 118 U.S. 356 (1886). ………………..…..……..……17, 37

viii

**Constitutions**

U.S. Con. Amend. XIV……………………………………..……………….*passim*

Mich. Con. Art. II § 1……………………………………………………….37

Mich. Con. Art III § 8………………………………………………….…37

**Statutes**

1990 P,A. 72……………………………….………………..…..………*passim*

2011 P.A. 4……………………………………………….…………… *passim*

2012 P.A. 436……………………………………………….………… *passim*

28 U.S.C. § 2201……………………………………..…..…..…..12

28 C.F.R. § 51.8……………………………………………………...44

28 C.F.R. § 51.10………………………………………………………45

28 C.F.R. § 51.23……………………………………………………46

42 U.S.C. § 1973a(c)…………………………… ……………*passim*

42 U.S.C. § 1983………………………………..…………………*passim*

H.R. Rep. No. 89-439 (1965)…………………………………...…41

Mich. Comp. L. § 141.1541…………………………………………2, 26

Mich. Comp. L. § 141.1544……………………………………22, 25

Mich. Comp. L. § 141.1549………………………...…………..…5, 19, 22, 34

Mich. Comp. L. § 141.1552…………………………………..…….5

## CONCISE STATEMENT OF THE ISSUES PRESENTED

1.  Do Individual Plaintiffs have standing to bring this action where they have suffered a concrete and particularized injury and have a personal stake in the outcome?

    Plaintiffs: Yes

    Defendants: No

2.  Do Organizational Plaintiffs' have standing where their members otherwise have standing to sue in their own right,  the interests to be protected are germane to the organizations' purpose; and neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit?

    Plaintiffs: Yes

    Defendants: No

3.  Should the Court abstain the exercise of its jurisdiction under the narrowly applied *Burford* doctrine when Plaintiffs allege federal constitutional claims and not state law claims?

    Plaintiffs: No

    Defendants: Yes

x

4.    Does Plaintiffs' Amended Complaint meet the five factors required under *Grand Turk* for this Court to grant declaratory relief?

        Plaintiffs: Yes

        Defendants: No

5.    Does P.A. 436 violate the Equal Protection Clause of the Fourteenth Amendment due to its infringement and dilution of Plaintiffs' fundamental right to vote, equal participation in the voting process and discrimination based on race as applied? Additionally, does P.A. 436 fail under strict scrutiny as it is not narrowly as tailored to serve a compelling state interest?

        Plaintiffs: Yes

        Defendants: No

6.    Does P.A. 436 violate the substantive Due Process Clause of the Fourteenth Amendment due to its infringement on Plaintiffs' substantively protected fundamental right to vote? Additionally, does P.A. 436 fail under strict scrutiny as it is not narrowly tailored to serve a compelling state interest?

        Plaintiffs: Yes

        Defendants: No

7.    Does P.A. 436 violate the procedural Due Process Clause of the

Fourteenth Amendment due to its infringement on Plaintiffs' liberty

interest of voting? Additionally, does P.A. 436 fail to afford Plaintiffs'

of notice and opportunity for hearing?

      Plaintiffs: Yes

      Defendants: No

8.    Can Plaintiffs request relief under Section 3(c) of the Voting Rights

Act due to Defendants' infringement on their Fourteenth Amendment

constitutional rights?

      Plaintiffs: Yes

      Defendants: No

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:

*American Civil Liberties Union v. Nat'l Sec. Agency,* 493 F.3d. 644 (6th Cir. 2007)

*Baker v. Carr,* 369 U.S. 186 (1962)

*Bush v. Gore*, 531 U.S. 98 (2000)

*Grand Trunk Western R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984)

*Jeffers v. Clinton*, 740 F. Supp. 585 (E.D. Ark. 1990)

*League of Women Voters v. Brunner*, 548 F.3d 463 (6th Cir. 2008)

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

*Moore v. Detroit Sch. Reform Bd*., 293 F.3d 352 (2002)

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350 (1989)

*Reynolds v. Sims,* 377 U.S. 533 (1964)

*Rodriguez v. Popular Democratic Party*, 457 U.S. 1 (1982)

*United States v. Carolene Products Co*., 304 U.S. 144 (1938)

*Village of Arlington Heights v. Metro. Hous. Dev. Corp*., 429 U.S. 252 (1977)

*Warf v. Bd. Of Elections*, 619 F.3d 553 (6th Cir. 2010)

*Washington v. Glucksberg*, 521 U.S. 702 (1997)

# INTRODUCTION

The right to vote embodies the spirit of American democracy.  Even during the time of the Civil War, one of the most fraught times in our nation's history, Abraham Lincoln did not suspend the right to vote. Voting is usually a formal expression of opinion or will in response to a proposed decision, one given as an indication of approval or disapproval of a proposal, motion or candidate for office. Merriam-Webster, Definition of Vote, http://www.merriam-webster.com/dictionary/vote. Casting a vote is the most widely understood and discretely effective way to have one's voice heard in American politics.  When citizens exercise their right to vote for public officials, their interests extend far beyond one election. Citizens are able to elect individuals who they believe will make concrete and important decisions on their behalf, particularly on how their local government will run and how local resources are distributed.  Most importantly, the election of candidates from minority communities serves to create a selected leadership that local citizens have chosen to advocate for their particularized needs.

As we have progressed as a society, traditionally disenfranchised groups, including women and racial minorities, have received voting rights through Constitutional Amendments.  The struggle continues today as legislatures invent new, less obvious ways to restrict the rights of certain groups of people.

1

Historically, democracies have recoiled at those dictatorial actions which substitute one person's unilateral, unelected judgment for the judgment of the people. This is precisely what emergency manager laws, like Michigan's Local Financial Stability and Choice Act, do. Public Acts of 2012; MCL Sections 141.1541, *et.* seq. ("Public Act 436") [**Exhibit 1**]. P.A. 436 substitutes the judgment and the powers of an unelected appointee of the state for the judgment and powers of the people. Citizens in jurisdictions with Emergency Managers have lost the ability to put people they want in charge of local resources and local decision making.

Brought under 42 U.S.C. § 1983, Plaintiffs challenge the constitutionality of P.A. 436. Defendants, in their motion to dismiss, claim that this Court lacks jurisdiction over this claim and the Complaint fails to state causes of action upon which relief can be granted under the Fourteenth Amendment. (Defs.' Second Mot. to Dismiss First Am. Compl., June 6, 2013, ECF No. 19, 1-2). As set forth in further detail below, each argument is without merit.

2

# STATEMENT OF FACTS

**Nature of the Case**

Plaintiffs filed their Amended Complaint seeking declaratory and injunctive relief against P.A. 436. Plaintiffs assert causes of action brought under the Equal Protection and Substantive Due Process Clauses of the Fourteenth Amendment to safeguard their right to vote. 42 U.S.C. § 1983; U.S. Const. Amend. XIV. Plaintiffs' Amended Complaint challenges P.A. 436 which gives discretion to appoint an un-elected Emergency Manager when the state government determines that a state municipality or school district is in a financial emergency. The Emergency Manager can "rule by decree" over said jurisdiction, assuming the powers and duties of locally-elected legislative and executive officers. Currently, Emergency Managers have been installed in the City of Allen Park, the City of Benton Harbor, the City of Detroit, the Detroit Public School System, the City of Ecorse, the City of Flint, the Highland Park School System, the Muskegon Heights School System, and the City of Pontiac.

**Michigan's Local Government Fiscal Responsibility Acts**

Predecessors to Public Act 436, Public Act 72 and Public Act 4 also allowed for Emergency Managers. However, Public Act 72 gave authority to Emergency Managers that was limited to financial issues. When P.A. 4 replaced P.A. 72, Emergency Managers were given widely expanded authority under the new law.

3

Public acceptance was unfavorable, press coverage of the issue was intensive, and P.A. 4 was to be put to a public referendum to determine its future in state law jurisprudence. The state Board of Canvassers, the body charged with reviewing the petitions to place issues on a ballot, concluded on a technicality that the type size of the petition heading was not 14-point bold type as required by statute. On appeal of their decision, the court forced the Board to certify the petition for the ballot. *Stand Up for Democracy v. Board of State Canvassers*, MI Crt. App, No. 310047 (6/6/12, Opinion, at 18). In further attempts to block the issue from a popular vote, another appeal was filed by the Board to the Michigan Supreme Court. After having heard oral argument, the Michigan Supreme Court rejected the challengers' position, and held that the petitions were in *actual* compliance with state law and the issue was ordered on the ballot. *Stand Up for Democracy v. Secretary of State*, Mich. S. Ct. No. 145387, at 28 (Aug. 3, 2012).

Once given the chance to vote on the issue, Public Act 4 was decisively defeated at the polls by the Michigan electorate with a total of 2,370,601 ballots cast in opposition. Michiganians made in plain, having been well informed and during a Presidential election year, when voter attentiveness and voter turnout were at their highest, that they did not want an emergency manager law. Barely five weeks after the election, during a "lame duck" session of the State Legislature, the Michigan House and Senate passed Public Act 436. Under the new law, Emergency Managers

4

are selected and appointed solely at the discretion of the Governor. MCL 141.1549. They act for and in the place of the governing body of the local government, where the elected governing body is barred from exercising any of the powers given them by virtue of their offices. MCL 141.1549(9)(2). They can repeal, amend and enact local laws (MCL 141.1549; 141.1552), rule by decree (MCL 141.1552), and sell, lease, convey or assign local government assets, liabilities, functions and responsibilities (MCL 141.1552(12)(1)(r)). Emergency Managers have exercised powers and duties exclusively reserved for locally-elected branches of Michigan government and P.A. 436 has limited the role and importance of elected officials to advisory authority, compared to non-Emergency Manager jurisdictions, where their officials exercise full powers and duties given to them by the electorate.

5

# ARGUMENT

## I. Individual Plaintiffs Have Standing Because They Have Suffered a Concrete and Particularized Injury and Have a Personal Stake in the Outcome.

To invoke this Court's subject-matter jurisdiction, Individual Plaintiffs must establish an injury-in-fact that is concrete and particularized. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also American Civil Liberties Union v. Nat'l Sec. Agency,* 493 F.3d. 644, 652 (6th Cir. 2007) (citing *Allen v. Wright,* 468 U.S. 737, 752 (1984)).  Additionally, Plaintiffs must demonstrate a "personal stake in the outcome." *Baker v. Carr,* 369 U.S. 186, 204 (1962). Plaintiffs must show that they have "sustained or [are] immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983).  Because Plaintiffs seek injunctive and declaratory relief, they also must show a substantial likelihood they will be injured in the future. *Lyons*, at 105.

Voters who allege facts showing disadvantage to themselves as individuals have standing to sue. *Baker v. Carr*, 369 U.S. 186, 206 (1962). In the cases in which courts have found a particularized injury to sustain a Plaintiff's standing, a voter had a personal stake in the outcome of the election, meaning the voter was a potential candidate, a supporter of a potential candidate, or was unable to vote for

his specific candidate of choice due to the subject law. *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 128 (6th Cir. 1995). *See also*, *Smiley v. Holm*, 285 U.S. 355, 361 (1932); *Koenig v. Flynn*, 285 U.S. 375, 379 (1932).

Here, Individual Plaintiffs are registered voters in the City of Detroit who cast ballots for Mayor and City Council in the 2009 general election. (Am. Compl. June 27, 2013, ECF No. 16, ¶ ¶ 24-27; V.S. 34-37). As alleged in their Amended Complaint, Plaintiffs' votes do not count equally to the votes of electors in non-Emergency Manager jurisdictions. (Am. Compl. ¶ ¶ 24-27). Plaintiffs' constitutional protections, including the right to cast their vote effectively, are directly at stake. They took a direct part in the 2009 election, resulting in officials elected to office. These elected officials have been stripped of their powers when Detroit was proclaimed to be in a fiscal emergency by virtue of the Emergency Manager laws.  Plaintiffs' votes are rendered meaningless by P.A. 436. Their injuries are both real and immediate. Further, any of their votes cast in the future will be diluted by P.A. 436. Plaintiffs' injuries are not "only general grievances regarding Defendants' policy choices." (Defs.' Br. in Supp. of Second Mot. to Dismiss First Am. Compl. June 6, 2013, ECF No. 19, 9). Plaintiffs have a personal stake in the outcome and their harm satisfies the concrete and particularized injury requirement to give Individual Plaintiffs standing.

The cases cited by Defendants show the weakness of their position, as the cases either do not address the standing of voters, or have facts rather distinguishable from those at issue here.  (Br. Def.'s, 9-10).[1] Because Individual Plaintiffs have standing and this Court has subject matter jurisdiction, Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) must be dismissed. Fed. R. Civ. P. 12(b)(1).

**II. Organizational Plaintiffs Have Standing Because Their Members Have Standing to Sue in Their Own Right, the Interests to be Protected are Germane to the Organizations' Purpose and Individual Members Are Not Required to Participate in the Lawsuit.**

Organizational Plaintiffs Detroit Branch NAACP and Michigan State Conference NAACP have standing if (a) their members otherwise have standing to sue in their own right; (b) the interests to be protected are germane to the organizations' purpose; and (c) neither the claim asserted nor the relief requested

---

[1] *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (no real and immediate threat that respondent would again be stopped for a traffic violation by an officer who would illegally choke him without any provocation); *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 126-128 (6th Cir. 1995) (Plaintiff only alleged that sometime in the future she may want to vote for an unidentified candidate who may not meet the particular requirements); *Anthony v. State of Michigan*, 35 F. Supp. 2d 989, 1003 (E.D. Mich. 1999) ("no evidence that any of the plaintiffs ran unsuccessfully for the Wayne County Circuit Court in any past election, plan to run for the Wayne County Circuit Court in any future election, have a criminal jury trial pending in Wayne County Circuit Court, or that they have supported an unsuccessful candidate for the Wayne County Circuit Court in the past").

requires participation of individual members in the lawsuit. *ACLU of Ohio Found.,*

*Inc. v. Ashbrook*, 375 F.3d 484, 489 (6th Cir. 2004).

Organizational Plaintiffs Detroit Branch NAACP and Michigan State

Conference NAACP, voluntary membership organizations, have derivative

standing because Individual Plaintiffs and the organization's members have

suffered a concrete and particularized injury. *See supra* Part I. Detroit Branch

NAACP and Michigan State Conference NAACP have identified a member,

Plaintiff Donnell R. White, who is a resident of the City of Detroit and a registered

voter in the City of Detroit. (Am. Compl. ¶ 24; V.S. 34). He cast a ballot for the

offices of Mayor and City Council in the 2009 general election. *Id*. Because

Plaintiff White and other unidentified members of the organizations have standing

in an individual capacity, Organizational Plaintiffs have satisfied the first

requirement.

Defendants do not address the other factors for organizational standing (Br.

Def.'s 10). Plaintiffs will not argue those points here as both Detroit Branch

NAACP and Michigan State Conference NAACP quite clearly have purposes that

go to the heart of the interests to be protected, the right to vote (Am. Compl. ¶¶ 20-

23) and the declaratory and injunctive relief and attorney's fees sought in this

matter does not require the direct participation of any NAACP member. *Ashbrook,*

at 490. Further, the courts "have historically and universally recognized the

9

NAACP as having standing to challenge state action in the defense of civil rights." *NAACP v. Button*, 371 U.S. 415 (1963)(affirming association's standing to bring litigation); *NAACP v. Alabama*, 357 U.S. 449 (1958)(protection of organizational membership lists); *NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982)(right to conduct peaceful advocacy); *NAACP v. Federal Power Commission*, 425 U.S. 662 (1976)(enforcement of non-discrimination in employment practices). In over a century of litigating for equality, Plaintiffs are unaware of any federal court ever having concluded the NAACP lacks standing to file litigation in the area of civil or voting rights.  Because Organizational Plaintiffs have standing and this Court has subject matter jurisdiction, Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) must be denied.

## III. This Court Should Not Apply the Narrow *Burford* Abstention Doctrine, Because Plaintiffs Have Only Asserted Federal Constitutional Claims

In Defendants' Brief, Defendants argument that this Court should abstain under the *Burford* doctrine is misplaced. (Br. Defs.' 10-13). *Burford* is a tightly qualified exception that does not apply to the issues presented in this case. The Supreme Court has outlined areas in which "abstention" is permissible, and it remains "'the exception, not the rule.'" *Hawaii Housing Authority* v. *Midkiff*, 467 U.S. 229, 236 (1984) (quoting *Colorado River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 813 (1976)). The federal courts' obligation to adjudicate claims within their jurisdiction is "'virtually unflagging'" and there are a narrow

10

range of circumstances in which *Burford* can justify the dismissal of the federal action. *Deakins* v. *Monaghan*, 484 U.S. 193, 203 (1988); *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 726 (1996). The *Burford* doctrine attempts to "balance[] the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining "uniformity in the treatment of an 'essentially local problem,'" *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 362 (1989) (quoting *Alabama Pub. Serv. Comm'n* v. *Southern R. Co.*, 341 U.S. 341, 347 (1951)[NOPSI]). This balance only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an "'extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.'" *Colorado River,* at 813 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959)).

In *NOPSI,* the Court held that *Burford* did not provide proper grounds for an abstention-based dismissal because the "case [did] not involve a state-law claim, nor even an assertion that the federal claims [were] 'in any way entangled in a skein of state law that must be untangled before the federal case can proceed,'" 491 U.S. 350, 361 (quoting *McNeese* v. *Board of Ed. for Community Unit School Dist. 187*, 373 U.S. 668, 674, (1963)); *Quackenbush*, at 727.

This case is akin to NOPSI and does not fit into any of the narrow exceptions outlined by the Supreme Court. There are no state law claims alleged in

11

the Plaintiffs' Amended Complaint, but federal constitutional issues involving the equal protection and due process clauses of the Fourteenth Amendment. There are also no issues of state law to be resolved here under a state court's review. When federal constitutional rights have been violated, it is the duty for federal courts to step in. These important claims are normally and have been historically brought in the federal system. Therefore, this Court should not abstain under *Burford*, this Court has subject matter jurisdiction and Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) must be denied.

### IV. Plaintiffs Meet the Factors for Declaratory Relief.

Plaintiffs seek a declaratory order that P.A. 436 violates the Equal Protection and the Substantive Due Process clauses of the United States Constitution. The Declaratory Judgment Act provides that in a case of actual controversy, a competent court may "declare the rights and other legal relations" of a party "whether or not further relief is or could be sought." 28 U.S.C. § 2201; *Public Service Comm of Utah v. Wycoff*, 344 U.S. 237, 241 (1952). The granting of a declaratory judgment rests in the sound discretion of the court. *Grand Trunk Western R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citation omitted).

The Sixth Circuit considers the following factors in determining whether a district court should issue a declaratory ruling: (1) whether the declaratory action

would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and, (5) whether there is a better or more effective alternative remedy. *Grand Trunk*, 746 F.2d at 326 (internal citation omitted).

Defendants' do not argue that factors 1 and 2 favor their position, as they both support a declaratory ruling in Plaintiff's favor. (Br. Def.'s 14). The declaratory action would certainly settle the controversy and the declaratory action would serve a useful purpose in clarifying the legal relations at issue. Factor 3 also strongly favors a declaratory judgment for the Plaintiffs. The third factor is meant to preclude jurisdiction for "declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 558 (2008) (quoting *Amsouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004). This concern is not at issue here. The fact that there is another action presently before this Court (*Phillips, et. al. v. Snyder, et. al.*, No. 2:13-cv-

13

11370)[2] challenging P.A. 436 does not demonstrate that this claim is for the purpose of "procedural fencing" or a "race for res judicata." Rather, factor 3 is triggered when a request for declaratory relief is an attempt to have "the federal courts do what the state court has already refused to do." *Grand Trunk,* at 326. Both actions were filed in federal district court. This factor is in favor of this Court issuing the requested declaratory relief.

The fourth factor for the Court to consider is whether accepting jurisdiction would increase friction between federal and state courts. The Supreme Court has cautioned that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed." *Wilton v. Seven Falls Co*., 515 U.S. 277, 283 (1995) (quoting *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495 (1942)). Again, in Defendants' error, this factor is not at issue here. The Plaintiffs allege no state law claims and Defendant's Brief cites no examples of any pending or finalized state court decisions on this matter that would cause friction between federal and state courts to the extent that this factor would counsel against exercising

---

[2] On May 30, 2013, this action was reassigned to be a companion case of *Phillips*. (Order Regarding Reassignment of Companion Case, May 31, 2013, ECF No. 12).

14

jurisdiction. (*See* Am. Compl. ¶¶ 26-33; Br. Defs.' 14-15). This factor supports a declaratory judgment in Plaintiffs' favor.

Finally, as to factor 5, a district court should "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk*, 746 F.2d at 326. Defendants vaguely suggest that Plaintiffs have the alternative remedy of "participat[ing] in the political process, because their real gripe is that they are dissatisfied with the current outcome of that process." (Br. Defs.' 15). Defendants offer no explanation as to why their general, brusque solution of political participation would be a more effective remedy than declaratory relief. In fact, given the history of the emergency manager laws in the state of Michigan, political participation is not an adequate alternative remedy. The referendum on the emergency manager law, after finally being included on the ballot was defeated at the polls by the Michigan electorate, with a staggering total of 2,370,601 ballots cast in opposition.  (Am. Compl. ¶45).  Michiganians made it plain that they did not want an emergency manager law. Barely five weeks later during a "lame duck" session of the State Legislature, the Michigan House and Senate passed Public Act 436. Clearly, participating in the political process is not a better or a more effective remedy that offers Plaintiffs relief on their violated constitutional rights. Further, allegations that state action deprived voters of equal protection of the laws in violation of the Fourteenth Amendment are justiciable and therefore within the

15

sphere of judicial engagement. *Baker v. Carr*, 369 U.S. 186 (1962). Accordingly, because the five factors of declaratory relief are in Plaintiffs' favor, this Court must dismiss the Defendants' pending motion.

## V. P.A. 436 Violates the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause declares that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. Courts apply strict scrutiny to statutes that involve suspect classifications or infringe upon fundamental rights. *Clark v. Jeter*, 486 U.S. 456, 461 (1988); *Moore v. Detroit Sch. Reform Bd*., 293 F.3d 352, 368 (2002). P.A. 436 infringes and dilutes Plaintiffs' fundamental rights and is therefore subject to strict scrutiny. Defendants do not argue, nor can they take the position that the test is not strict scrutiny under a voter dilution claim. (Br. Def.'s 15-18). P.A. 436 is also subject to strict scrutiny because although the law is facially neutral, it was "motivated by a racial purpose or object." *Moore,* at 369; *infra*, Part V A, B.

## A. P.A. 436 Infringes and Impermissibly Dilutes Plaintiffs' Fundamental Right to Vote

P.A. 436 violates Plaintiffs' right to vote by valuing the votes of citizens in communities without appointed Emergency Managers over their votes, and other similarly placed citizens in communities with Emergency Managers. (Am. Compl.

16

¶ 76). As stated in Defendants Brief, the right to vote is a **fundamental political right**. (Br. Defs.' 16). The Supreme Court referred to "the political franchise of voting" as "a fundamental political right, because preservative of all rights." *Yick Wo* v. *Hopkins*, 118 U.S. 356, 370 (1886). In another decision, the Supreme Court stated:

> **No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.** Other rights, even the most basic, are illusory if the right to vote is undermined. Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right.
>
> *Wesberry v. Sanders*, 376 U.S. 1, 17-18 (1964).

Voters' rights under the First and Fourteenth Amendments were defined as "'the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters . . . to cast their votes effectively. Both of these rights, of course, **rank among our most precious freedoms.**'" *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983) (quoting *Williams v. Rhodes*, 393 U.S. 23, 30-31, (1968).

The Equal Protection Clause applies when a state either classifies voters in disparate ways or places restrictions on the right to vote. *League of Women Voters v. Brunner*, 548 F.3d 463, 477–78 (6th Cir. 2008) (citing *Bush v. Gore*, 531 U.S. 98, 104 (2000)). **Once a state has granted the right to vote on equal terms, the State may not "by later arbitrary and disparate treatment, value one person's vote**

over that of another." *Bush v. Gore*, 531 at 105 (emphasis added). "[T]he right of

suffrage can [also] be denied by a debasement or dilution of the weight of a citizen's

vote just as effectively as by wholly prohibiting the free exercise of the franchise."

*Reynolds v. Sims,* 377 U.S. 533, 555 (1964). A vote-dilution claim invokes the

principle of "one person, one vote," a requirement under the Fourteenth Amendment.

See 16B CJS, Constitutional Law, § 1264 (explaining that each person's vote must

count the same as any other person's); *see also Carlson v. Wiggins*, 675 F.3d 1134,

1139 (8th Cir. 2012).

As a threshold matter, Plaintiffs demonstrate that they are similarly situated

"in all material respects" to the persons allegedly receiving more favorable

treatment. *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th

Cir. 2011) (quotation marks omitted); *TriHealth, Inc. v. Board of Com'rs,*

*Hamilton County, Ohio*, 430 F.3d 783,790-791 (6th Cir. 2005). Exact correlation is

not necessary. *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).

Plaintiffs are similarly situated to others in communities who are also

experiencing financial hardship, but in those jurisdictions, Emergency Managers

have not been appointed. The fiscal health scores developed by the Michigan

government, although not enumerated in the P.A. 436's list of factors, show other

similarly situated jurisdictions with the same fiscal scores were not even flagged

for preliminary review under any of the emergency manager laws. Defendants

argue that using these scores is "unpersuasive because the fiscal indicator scores were compiled for a different purpose." (Br. Defs.' 22). However, the actual purpose of these scores is to "provide **State officials, local officials, and the general public with objective, measurable, and straightforward information** concerning the degree of, or absence of, fiscal health in units of local government." Michigan Department of the Treasury, *Fiscal Health Indicators*, http://www.michigan.gov/treasury/0,1607,7-121-1751_47023-171423--,00.html. Defendants in their Brief, again and again take issue with Plaintiffs' use of these fiscal health scores.  Why these scores are no longer published is not explained by Defendants, nor can Plaintiffs give any such reason, but they are a useful tool, **provided by the State of Michigan** to measure fiscal health units in local government. Further, as the Defendants point out in their Brief, information used to compute the fiscal scores are also listed in the factors triggering preliminary review under P.A. 436, by virtue of P.A. 72 and P.A. 4. (Br. Defs.'22, n.10). Any doubt or vagueness should be read in Plaintiffs' favor as Defendants have failed to demonstrate exactly what factors are being used for the jurisdictions that have been under P.A. 436 or its predecessors' rule. *See supra* Part V B, 18-19.

Defendants' Brief assures the Court that P.A. 436 "does not preclude city residents from voting candidates into these offices and having their votes counted[, or]…from continuing to hold those offices during the receivership." (Br. Defs.'17-

18). But one must question what essentially this vote means when P.A. 436 prohibits "the City of Detroit's chief executive officer and governing body from exercising the powers of those offices during the receivership." (Br. Defs.'17-18 (citing MCL 14.1549(2))). What are Plaintiffs and others in the cities of Detroit, Ecorse, Flint, Pontiac, or other jurisdictions with Emergency Managers actually voted for or going to be voting for in their local elections? Their vote is not only meaningless because they are voting for public officials who will have no actual authority, but P.A. 436 has resulted in a de facto dilution of Plaintiff's right to vote for locally elected officials because their votes are not as effective and not counted the same, as similarly situated individuals in other jurisdictions.[3] Because the state of Michigan has granted the right to vote for their local officials on equal terms, the state cannot value one person's vote over that of another using arbitrary and disparate treatment. *Bush v. Gore*, 531 at 105. As such, residents of cities that do

---

[3] Defendants cite a case in support of their claim that "the right to vote does not guarantee that a candidate will perform or function in office as expected." (Br. Defs.' 19); *Smith v. Winter*, 717 F.2d 191, 198 (5th Cir. 1983). However, that case in the 5th Circuit deals with the Voting Rights Act. The court did not analyze the issue under the 14th Amendment and fundamental rights. *Smith*, at 198 (considering the scope of the "right to vote" protected by the Voting Rights Act). Further, the court stated that if the process "whether properly or improperly conducted, has the purpose or effect of discriminating against the plaintiffs, their appropriate remedy lies in making an equal protection claim, not a Voting Rights Act claim." *Id*. at 199.

not have an Emergency Manager possess a greater vote than those who live in cities with one.

As laid out later in Part V, section C of this Brief, because P.A. 436 infringes and impermissibly dilutes Plaintiffs' fundamental right to vote, strict scrutiny applies. (*infra* Part V, C).

The federal rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). While a plaintiff must plead "more than labels and conclusions," the "complaint need not contain 'detailed' factual allegations." *Id.*  Plaintiffs, to survive a motion to dismiss, must set forth enough information to outline the elements of a claim. *Jenkins v. McKeithen*, 395 U.S. 411 (1969); *German v. Killeen*, 495 F. Supp. 822, 827 (E.D. Mich. 1980). Plaintiffs have met their burden, although further discovery is required to know how many similarly situated jurisdictions experiencing financial emergencies were not flagged for preliminary review, but did experience the factors enumerated in the P.A. 436. Plaintiffs are mindful that the burden is on the moving party to establish that discovery could not lead to the evidence that would substantiate Plaintiff's claims. Defendants' motion must be dismissed pursuant to Rule 12(b)(6).

21

## B. P.A. 436 Discriminates Based on Race as Applied.

The purpose of the Equal Protection clause of the Fourteenth Amendment is to "secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 445 (1923) (quoting *Sunday Lake Iron Co.* v. *Township of Wakefield,* 247 U.S. 350 (1918)). P.A. 436 has been improperly executed and has had a disparate and discriminatory impact on voters of color. A majority, 50.4% of the state's 1,413,320 African American residents are now ruled by unelected Emergency Managers, compared to 1.3% of the state's 7,926,454 White residents now ruled by Emergency Managers. (Am. Compl. ¶ 82).

In their Brief, Defendants go to lengths to distinguish the actions taken under P.A. 72 and P.A. 4 from P.A. 436. (Br. Defs.' 19-20). As Defendants concede, P.A. 436 ratifies "[a]ll proceedings and actions taken by the governor, the state treasurer, the superintendent of public instruction, the local emergency financial assistance loan board, or a review team under former 2011 PA 4, former 1988 PA 101, or former 1990 PA 72 . . . as if the proceedings and actions were taken under this act[.]" Mich. Comp. Laws § 141.1544(6). Additionally, P.A. 436 continues the appointments of Emergency Managers imposed under the prior laws. MCL § 141.1549(10).  Because all actions and proceedings, including the preliminary

22

review determinations, are ratified under P.A.436, it is the only law for Plaintiffs to challenge in this cause of action.

P.A. 436 is facially neutral, although discriminatorily applied. "Where facially neutral legislation is challenged on the grounds that it discriminates on the basis of race, the enactment will be [analyzed under] strict scrutiny only if the plaintiff can prove that it was motivated by a racial purpose or object, or is unexplainable on grounds other than race." *Moore v. Detroit School Reform Board*, 293 F.3d 352, 369 (6th Cir. 2002) (internal quotation marks and citations omitted). Plaintiffs are not required to prove that the challenged action rested solely on racially discriminatory purposes. "Rarely can it be said that a legislature or administrative body operating under a broad mandate made a decision motivated solely by a single concern, or even that a particular purpose was the 'dominant' or 'primary' one." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Because racial discrimination is not just another competing consideration, when there is a proof that a discriminatory purpose has been a motivating factor in the decision, judicial deference is no longer justified. *Id*. Indeed, "**under some circumstances proof of discriminatory impact may for all practical purposes demonstrate unconstitutionality because in various circumstances the discrimination is very difficult to explain on nonracial grounds.**" *Batson v. Kentucky*, 476 U.S. 79, 93 (1986) (internal citations omitted).

Plaintiffs alleging race-based discrimination can demonstrate discriminatory effect "**through the use of statistical**" evidence showing that one class is being treated differently from another class that is otherwise similarly situated. *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 534 (6th Cir. 2002) (internal citations omitted).

The U.S. Supreme Court has identified five factors relevant to determining whether facially neutral state action was motivated by a racially discriminatory purpose: (1) the impact on particular racial groups, (2) the historical background of the challenged decision, especially if it reveals numerous actions being taken for discriminatory purposes, (3) the sequence of events that preceded the action, (4) procedural or substantive departures from the government's normal procedural process, and (5) the legislative or administrative history. *Village of Arlington Heights*, 429 U.S. at 266–68.

Defendants in their Brief take issue with the fact that Plaintiffs have shown discriminatory impact. (Br. Defs.' 22). This is first factor in establishing intent under *Village of Arlington Heights*. 429 U.S. at 266–68. A majority, 50.4% of the state's 1,413,320 African American residents are now ruled by unelected Emergency Managers, compared to 1.3% of the state's 7,926,454 White residents now ruled by Emergency Managers. (Am.  Compl. ¶ 82). This stark statistic alone is sufficient to create an inference of discriminatory intent to plead a plausible

24

claim for relief such that Defendants' motion must fail. Again, Defendants point to a list of factors that are used in the preliminary review process and voice their disapproval of Plaintiffs' use of the fiscal health scores compiled by the State of Michigan. (Br. Defs.' 16-17). While Plaintiffs agree that it would be more useful to compare the communities based on the existence or nonexistence of the P.A. 72, P.A. 4 and P.A. 436 preliminary review factors, it remains unclear how many jurisdictions in the state of Michigan have one or more of those factors and have not undergone a preliminary review. Defendants provide no examples or affidavits, nor offered any proof other than bare assurances that a given process or formula is followed. Most of these factors are not public knowledge[4] and would be addressed in the discovery stage of this action. Plaintiffs, in this preliminary stage of the

---

[4] For example, MCL 141.1544 lists the following factors: (b)The state financial authority receives a written request from a creditor; (c) a petition containing specific allegations of local government financial distress signed by a number of registered electors; (d) written notification that a local government has not timely deposited its minimum obligation payment to the local government pension fund; (e) written notification that the local government has failed to pay wages and salaries or other compensation owed to employees or benefits owed to retirees; (f) written notification from a trustee, paying agent, bondholder, or auditor engaged by the local government of a default in a bond; (k)The local government fails to timely file an annual financial report or audit; (m) delinquent in the distribution of tax revenues; (r) The local government has been assigned a long-term debt rating within or below the BBB category: (p) The municipal government has ended a fiscal year in a deficit condition.

action, have sought to draw comparisons using data compiled by a government

entity to show the disparity in treatment between minority communities with

Emergency Managers and white communities without Emergency Managers, as

allowed by *Farm Labor Organization Commission*.  308 F.3d at 534.  Again, the

purpose of these scores is to "provide State officials, local officials, and *the*

*general public* with **objective, measurable, and straightforward information**

concerning the degree of, or absence of, fiscal health in units of local government."

Michigan Department of the Treasury, Fiscal Health Indicators,

http://www.michigan.gov/treasury/0,1607,7-121-1751_47023-171423--,00.html

(emphasis added).

Furthermore, one of the enumerated factors in P.A. 436 includes,  **"The**

existence of other facts or circumstances that**, in the state treasurer's sole**

**discretion** for a municipal government, are indicative of probable financial stress

or that, in the state treasurer's or superintendent of public instruction's sole

discretion for a school district, are indicative of probable financial stress." MCL §

141.1544(1)(s). This blanket authority allows too much discretion where one must

question whether such a process exists without an inference of discriminatory

intent. Additional discovery is required to ascertain the discretionary internal

determinations used in the preliminary review process and how exactly it is

26

triggered to show even more evidence of how these jurisdictions are similarly situated.

The federal rules require only that the Plaintiffs set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). While a plaintiff must plead "more than labels and conclusions," the "complaint need not contain 'detailed' factual allegations." *Id.* Plaintiffs, to survive a motion to dismiss, must set forth enough information to outline the elements of a claim. *Jenkins v. McKeithen*, 395 U.S. 411 (1969); *German v. Killeen*, 495 F. Supp. 822, 827 (E.D. Mich. 1980). Plaintiffs have satisfied their burden, and as this is Defendants' motion, the burden is on the moving party to establish that discovery could not lead to evidence that would substantiate Plaintiffs' claims. Defendants' motion must fail.

As to the remaining factors to show discriminatory intent stated above, Plaintiffs in their Amended Complaint and within this Brief's Statement of Facts section recounted the historical background of P.A. 436, P.A. 72 and P.A. 4, the sequence of events leading to its passage, including the attempt to keep the issue off the ballot for voting referendum by taking issue with technicalities, like the font size, the rushed passage of the Act during a lame duck session even after the public voted its predecessor down, procedural departure from the normal process, and its

27

legislative history to demonstrate discriminatory intent. (Am. Compl. ¶ 32-49; *supra* Statement of Facts, 3-4). General and conclusory statements given by the Defendants give little assurance to Plaintiffs' stated allegations. All five factors weigh in Plaintiffs' favor in determining that P.A. 436 was motivated by a racially discriminatory purpose.

Additionally, Defendants' reliance upon *Moore v. Detroit Sch. Reform Bd.* is misplaced. (Br. Defs.' 20-21, 24). In *Moore*, the law defined a school district by students, the only one of which qualified under the law was Detroit Public School District.  This distinguished it from all other school districts in the state. Here, Defendants have implemented P.A. 436 in multiple districts and municipalities of varying size and jurisdiction, almost all of which are predominantly African Americans. Again, Plaintiffs have met their burden by properly pleading a claim for relief in that P.A. 436 discriminates based on race as applied, such that Defendants' motion pursuant to Rule 12(b)(6) must be dismissed.

### C. P.A. 436 is Not Narrowly Tailored to Serve a Compelling State Interest

Because P.A. 436 infringes and dilutes Plaintiffs' fundamental rights (*supra* Part V A) and was motivated by a racially discriminatory purpose (*supra* Part V B), the Act is subject to strict scrutiny. This level of review demands that the law be "narrowly tailored to serve a compelling state interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). It is a question of whether the state has a

28

sufficiently important interest to override self-governance, the right to vote and participate equally in the electoral process and be free from racial classifications. There are several less restrictive alternatives a state could use to address fiscal emergencies, including but not limited to, bankruptcy protections currently in place where there exists a seasoned and well versed judge overseeing the process with clear and historical guidelines as to procedure and protections, a state using the power of the purse to achieve fiscal responsibility in local government, and the power of electoral process, i.e. the public voting fiscally responsible people into elected positions with the state taking a more active role. Indeed, not only is P.A. 436 unconstitutional, it has been proved useless with the recent Detroit Bankruptcy filing. *Detroit files for bankruptcy protection*, USA TODAY, Jul. 18, 2013, http://www.usatoday.com/story/news/nation/2013/07/18/detroit-prepares-bankruptcy-filing-friday/2552819/ (last visited August 2, 2013). With less intrusive alternatives, P.A. 436 cannot be found narrowly tailored to serve a compelling interest of the state. Again, Defendants' motion must fail.

### VI. Public Act 436 Violates Substantive Due Process Guarantees.

Substantive due process protects certain fundamental rights from government interference under the authority of the Due Process clause of the Fourteenth Amendment. The clause prohibits state governments from depriving any person of "life, liberty, or property, without due process of law." U.S. Const.,

29

amend. XIV. The Due Process clause protects fundamental rights and liberty

interests that are so "implicit in the concept of ordered liberty" that "neither liberty

nor justice would exist if they were sacrificed." *Palko v. Connecticut,* 302 U.S.

319, 325-326 (1937).  These fundamental rights and interests are at issue here.

## A. The Appointment of an Emergency Manager Under P.A. 436 Infringes Plaintiffs' Substantively Protected Fundamental Rights

To properly analyze a substantive due process claim, this Court must first

carefully identify the fundamental right or liberty interest allegedly implicated and

"determine whether this asserted right has any place in our Nation's traditions."

*Glucksberg,* at 723. The Supreme Court has stated that numerous other freedoms

that do not appear in the plain text of the Constitution are nevertheless protected by

the Constitution, particularly principles of "justice so rooted in the traditions and

conscience of our people as to be ranked as fundamental." *Snyder* v.

*Massachusetts,* 291 U.S. 97, 105 (1934); *Brown* v. *Mississippi,* 297 US 278, 285

(1936); *Hebert* v. *Louisiana*, 272 U.S. 312, 316 (1926). In *United States v.*

*Carolene Products Co*., 304 U.S. 144 (1938), the Court stated that the liberty

interest under the Fourteenth Amendment incorporates three rights under the

requirement that no state shall "[d]eprive any person of life, liberty or property

without due process of law:"

- the rights enumerated in and derived from the first eight amendments in the Bill of Rights
- *the right to participate in the political process* (*e.g.*, the rights of *voting*, association, and free speech); and
- *the rights of "discrete and insular minorities*."

*Id.* at n.4 (emphasis added).

This right was upheld by the Sixth Circuit in *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008), where the right to vote was burdened through the state of Ohio's arbitrary voting standards which differed from "county to county, city to city, and precinct to precinct." *Id.* at 476. The Supreme Court has long afforded zealous protection against unjustifiable governmental interference with the individual's rights to speak and to vote. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 36 (1973).

> The Due Process clause is implicated and 42 U.S.C.S. § 1983 relief is appropriate …where a state's voting system is fundamentally unfair…Such an exceptional case may arise, for example, if a state employs non-uniform rules, standards and procedures, that result in **significant disenfranchisement and vote dilution**, or significantly departs from previous state election practice.
>
> *Warf v. Bd. of Elections*, 619 F.3d 553, 559 (6th Cir. 2010) (internal citations omitted)

It is hard to imagine a right at stake more fundamental, more rooted in our nation's history and traditions than the right to vote and participate in the voting process. The State's process of selecting jurisdictions for the imposition of

Emergency Managers under P.A. 436 is arbitrary and capricious and has resulted in the dilution of the votes of African Americans and denying their right to participate equally in the voting process. Public Act 436 has the effect of creating a voting system where citizens in communities with an Emergency Managers vote for officials who have no governing authority while citizens of other communities vote for those who actually have the power to govern. P.A. 436 has significantly departed from previous state election practice. Further, the state has applied non-uniform rules, standards and procedures in their preliminary review process, shown by the disparate effect of their choices.

In their Brief, Defendants argue that this claim is best discussed in Equal Protection analysis rather than under the Due Process Clause. (Br. Defs.' 26). However, as shown in *Warf v. Board of Elections* above, the due process clause is implicated when a state employs non-uniform rules, standards and procedures that result in significant disenfranchisement and voter dilution. Defendants then claim that these cases limit substantive claims only to changes in a state's voting system. (Br. Defs.' 26-27). Although the cases cited by Defendant discuss changes in a state's voting system in the due process context, neither case explicitly states what Defendants assert, that substantive claims are limited to such changes. Again, P.A. 436 sets forth non-uniform rules, standards and procedures that result in changes in the election process and results in voter dilution.

32

Further, rights that are fundamental for the equal protection clause are also fundamental for due process clause, including the right to vote and participate in the political process.[5]  Defendants cited a number of cases that are distinguishable from the facts here and show the weakness of their position. In *Rodriguez*, the statute at issue conferred on a political party the initial opportunity to appoint an interim replacement for one of its members that vacated a position as a district senator or representative. *Rodriguez v. Popular Democratic Party*, 457 U.S. 1 (1982). The Court held that, "Although the Commonwealth of Puerto Rico's choice to fill legislative vacancies by appointment rather than by a full-scale special election may have had some effect on the right of its citizens to elect the members of the Puerto Rico Legislature**; the effect was minimal**, **and it did not fall disproportionately on any discrete group of voters, candidates, or political parties**." *Rodriguez,* at 12 (emphasis added). This is not the case here. Here, Plaintiffs have lost their ability to elect individuals who will make concrete decisions on their behalf about how the government will be run and how local resources are distributed. Further, P.A. 436 has been implemented to fall disproportionately on a discrete group of voters, namely African American

_____

[5] "Just as the equal protection clause of the fourteenth amendment prohibits state officials from improperly diluting the right to vote, the due process clause of the fourteenth amendment forbids state officials from unlawfully eliminating that fundamental right." *Duncan v. Poythress*, 657 F.2d 691, 704 (5th Cir. 1981).

communities, where 1,413,320 African American residents are now ruled by unelected Emergency Managers. In *Rodriguez*, the law established criteria on how to replace an already elected official after they have left office. Here, P.A. 436 effectively disposes elected officials of their offices, if not in name, then in practice. Plaintiffs' votes are rendered meaningless if the office to which these individuals are replaced by an emergency manager who "shall act for and in the place and stead of the governing body and the office of chief administrative officer of the local government" and the "governing body …of the local government shall not exercise any of the powers of those offices." MCL 141.1549(9)(2).

Similarly, in *Sailors* v. *Board of Education*, 387 U.S. 105 (1967), the facts are distinguishable from those here. The Court upheld a statute authorizing appointment rather than election of the members of a county school board, but stated that "unless the state, county, or municipal government **runs afoul of a federally protected right,** it has vast leeway in the management of its internal affairs." *Sailors*, at 109. Here, there is a federally protected right at issue. Further, the membership of the county board at issue in *Sailors* was "not determined, directly or indirectly, through an election in which the residents of the county participate." *Id.* n.3. The Court continued, "While there was an election here for the local school board, no constitutional complaint is raised respecting that election." *Id.* at 111. The facts in *Sailor*s are clearly distinguishable from the facts

in this case. Plaintiffs participate in these elections and the constitutional complaint hampering a federally protected right is raised respecting that election and elections in the future.

Plaintiffs have sufficiently pled facts to establish that the implementation of P.A. 436 violates fundamental rights and interests protected by the Due Process Clause of the Fourteenth Amendment; therefore Defendants' motion must fail.

## B. P.A. 436 is Not Narrowly Tailored to Serve a Compelling State Interest

The Fourteenth Amendment "forbids the government to infringe . . . 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993). It is a question of whether the state has a sufficiently important interest to override self-governance. While P.A. 436 purpose is to address fiscal emergencies, it does so at the expense of Plaintiffs' constitutionally protected Fourteenth amendment rights. As outlined above in the Equal Protection analysis (*supra* Part V, C), there are several less restrictive alternatives exist to address fiscal emergencies, including, bankruptcy protections currently in place where there exists a seasoned and well versed judge overseeing the process with clear and historical guidelines as to procedure and protections, a state using the power of the purse and the power of election, i.e. the public voting

35

fiscally responsible people into elected positions with the state taking a more active role. Indeed, not only is P.A. 436 unconstitutional, it has been proved useless with the recent Detroit Bankruptcy filing. *Detroit files for bankruptcy protection*, USA TODAY, Jul. 18, 2013,

http://www.usatoday.com/story/news/nation/2013/07/18/detroit-prepares-bankruptcy-filing-friday/2552819/ (last visited August 2, 2013). With less intrusive alternatives, PA 436 cannot be found narrowly tailored to serve legitimate interests of the state. As a result, Defendants' motion must fail.

### VII. Public Act 436 Violates Procedural Due Process Guarantees.

The Due Process Clause is essentially a guarantee of basic fairness to "secure the citizen against any arbitrary deprivation of his rights." *Dent v. West Virginia*, 129 U.S. 114, 124 (1889). The Supreme Court has explained that the central meaning of procedural due process is that "'parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified' . . . 'at a meaningful time and in a meaningful manner.'" *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (quoting *Baldwin v. Hale*, 68 U.S. (1 Wall.) 223, 233 (1863), and *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). This right embodies a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

The general right to vote in the states is an interest primarily derived from the states. *Blake v. McClung*, 172 U.S. 239 (1897); *Mason v. State of Missouri*, 179 U.S. 328, 335 (1990); *Breedlove v. Suttles*, 302 U.S. 277, 283 (1937); *Pirtle v. Brown,* 118 F.2d 218 (6th Cir. 1941). Like the right to work for a living in the common occupations of the community, the right to vote is of the very essence of the personal freedom and opportunity that it was the purpose of the Amendment to secure. *Butchers' Union Co.* v. *Crescent City Co.,* 111 U.S. 746, 762 (1884); *Yick Wo* v. *Hopkins,* 118 U.S. 356 (1886). It is also a fundamental right. *Warf v. Bd. of Elections*, 619 F.3d 553, 559 (6th Cir. 2010); *Yick Wo,* at 370; *See* Part IV, *supra*.

The Michigan Constitution confers the right to vote to "every citizen who has attained the age of 21 years, who has resided in this state six months, and who meets the requirements of local residence provided by law." Mich. Const. Art. II, § 1.  All political power is inherent in the people and the government is instituted for their equal benefit, security and protection. Mich. Const. Art. I, § 1. The Michigan Constitution also authorizes the legislature to enact laws to preserve the purity of elections and guard against abuses of the franchise. Mich. Const. Art. III, § 8. The legislature has the constitutional authority to enact laws to preserve the purity of elections and any statute which adversely affects that purity is constitutionally infirm. *Socialist Workers Party v. Secretary of State*, 317 N.W.2d 1 (Mich. 1982).

The challenge brought in this case implicates the very integrity of the electoral process and threatens the democratic system.

When a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication and federal courts have the duty to review the application of those constitutionally required procedures.[6] Plaintiffs must establish that the state procedure for challenging the deprivation of their liberty interest does not satisfy the requirements of procedural due process. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981).  Due process requires that a deprivation "be preceded by notice and opportunity for hearing appropriate to the nature of the case," *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985), and the opportunity to be heard must be at a meaningful time and in a meaningful manner. *Armstrong v. Manzo,* 380 U.S. 545 (1965).  The state has afforded no notice or opportunity for a hearing.  Nor is there any procedure that is currently in place to afford Plaintiffs adequate due process.

Defendants argue that the liberty interest at stake is limited to the fundamental fairness of the state's voting system. (Br. Defs.' 29). Although the fundamental fairness of the voting system is implicated here with Plaintiffs' vote

---

[6] Defendants cite *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 463 (1989) in support of their argument (Br. Defs.' 30). However, in the context of prisoners, the analysis is stricter as compared to other individuals. *See Swarthout v. Cooke,* 131 S. Ct. 859, 862 (2011).

38

effectuated in name only, the procedural due process clause considers other liberty interests granted by the state. Thus, the analysis is broader here than under the substantive due process clause which is limited to any infringement on a fundamental right.

Defendants' emphasis on state preemption over local law is also flawed. The Michigan Legislature has the authority to define and modify the powers, duties and obligations of its local governments. (Br. Defs.' 29). However, the power of local government relative to state power is not at issue here.[7] Plaintiffs are not disputing that "the authority the State gives a local government it may also take away." (Br. Defs.' 30). P.A. 436 is not a local enactment or a local action, but state law that impermissibly infringes on Plaintiffs voting rights. This is a case where the state, having conferred the right to vote for local government officials onto the Plaintiffs, has now been taken it away and impermissibly burdened through the **state's** enactment, discretionary decision making, and implementation of P.A. 436.

---

[7] Defendants' citation to the following cases in reliance of their argument is thus displaced, as they deal with local government law conflicting with state law. *Mack v. City of Detroit,* 649 N.W.2d 47 (Mich. 2002); *Attorney General v. Flint,* 713 N.W.2d 782 (Mich. App. 2005); *Bivens v. City of Grand Rapids*, 505 N.W.2d 239 (1993). (Br. Defs.' 29-30). Defendants' reliance on *Sailors* is also flawed, as discussed *supra* Part IV, A, 25-26. *Sailors v. Bd. of Ed. of Kent County,* 387 U.S. 105 (1967).

39

Defendants argue that P.A. 436 is a law of general application so therefore "Plaintiffs are no different than any other citizen with respect to enforcement of a law." (Br. Defs.' 30). However, P.A. 436 does not apply across the board to all jurisdictions in Michigan upon its enactment. In order for the provisions within the law to take effect, there is a preliminary review process. These particular processes are not applied generally, but have been applied discriminatorily as evidenced by its application.  The law allows for too much discretion. Defendants claim there are "appropriate guidelines for the exercise of discretion," but cites no law, examples, or affidavits displaying such guidelines for the implementation of P.A. 436. *Id*. Defendants' proposed solutions, such as the power of referendum and the power of the vote for officials who will amend or repeal the law, are again insufficient for the same reason they are insufficient for equal protection reasons. (*See supra* Part IV, 11-12; Br. Defs.' 30). P.A. 436's predecessor was already voted down by referendum, followed by P.A. 436's speedy passing by the legislature. Defendants bear the burden of proving that a complaint fails to state a claim as a matter of law and they have failed to meet that burden. Their pending motion must be dismissed.

## VIII. Plaintiffs Request this Court's Implementation
## of Section 3(c) of the Voting Rights Act

Defendants nitpick at the formatting of Plaintiffs' Amended Complaint, but the Count presents a new issue for this Court to consider – implementation of Section 3(c) of the Voting Rights Act as a form of relief to Fourteenth Amendment

violations re-pled, re-alleged and incorporated by reference. (Am. Compl. ¶ 99). The Voting Rights Act provides equitable relief different from a typical Fourteenth Amendment violation. Section 3(a)(c), called the bail-in mechanism or the pocket trigger, authorizes federal courts to place jurisdictions that have experienced violations of the Fourteenth or Fifteenth Amendments under preclearance, meaning that voting changes must first be preapproved. This section was intended to cover "pockets of discrimination" through litigation, rather than by congressional action under Section 5. H.R. Rep. No. 89-439, at 13 (1965).

Section 3 provides:

> Retention of jurisdiction to prevent commencement of new devices to deny or abridge the right to vote. If in any proceeding instituted by the Attorney General or *an aggrieved person* under any statute *to enforce the voting guarantees of the fourteenth or fifteenth amendment* in any State or political subdivision the court finds that violations of the fourteenth or fifteenth amendment justifying equitable relief have occurred within the territory of such State or political subdivision, the court, in addition to such relief as it may grant, shall *retain jurisdiction* for such period as it may deem appropriate and during such period no voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect at the time the proceeding was commenced shall be enforced unless and until the court finds that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, or in contravention of the voting guarantees set forth in section 4(f)(2) [42 USCS § 1973b(f)(2)].

42 U.S.C. § 1973a(c) (2006) (emphasis added) [hereinafter "Section 3(c)"].

41

Section 3(c) has been used by courts to bail-in jurisdictions,[8] but the pocket trigger remains an issue of first impression for the Supreme Court. *Jeffers* is the only reported decision addressing the standards for imposing preclearance. *Jeffers v. Clinton*, 740 F. Supp. 585, 592 (E.D. Ark. 1990). Section 3(c) relief is "not as a matter of statute, but as a matter of inherent equitable power" granted by the Court. *Jeffers*, at 602. The court resolved the "ambiguities of Section [3(c)] in favor of that interpretation which affords a full opportunity for equity courts to treat enforcement proceedings under this . . . legislation in accordance with their traditional practices, as conditioned by the necessities of the public interest which Congress has sought to protect." *Jeffers,* at 601 (quoting *The Hecht Co. v. Bowles,* 321 U.S. 321, 330 (1944)). Although that court declined to establish a test for bailing-in a jurisdiction, *Jeffers* mentions important factors for a court to consider, such as the frequency and proximity of the constitutional violations, whether the violations are likely to recur, and whether judicial preclearance will deter discrimination. *Id.* at 601.

---

[8] The states of Arkansas and New Mexico, the counties of Los Angeles (California), Escambia (Florida), Thurston (Nebraska), Bernalillio (New Mexico), Buffalo (South Dakota), and Charles Mix (South Dakota), and the city of Chattanooga (Tennessee). Travis Crum, *The Voting Rights Act's secret weapon: pocket trigger litigation and dynamic preclearance*, 119 Yale L. J. 1992 (2010) *available at* http://www.yalelawjournal.org/images/pdfs/895.pdf.

42

As relief to a Fourteenth or Fifteenth Amendment violation, a court must first find whether the challenged law or practice was motivated by a racially discriminatory purpose. *City of Mobile v. Bolden*, 446 U.S. 55 (1980) (plurality opinion); *Jeffers v. Clinton*, 740 F. Supp. 585, 592 (E.D. Ark. 1990); *Sanchez v. Anaya*, No. 82-0067M (D.N.M. Dec. 17, 1984); *Blackmoon v. Charles Mix County*, No. 05-4017 (D.S.D. Dec. 4, 2007) (concluding section 3(c) was limited to remedies for racial discrimination in voting). The *Jeffers* court allowed, "That a given action has a disparate impact, and that State officials knew that it would, can in a proper case, depending on the other proof in the record, be an important part of such circumstantial evidence — especially if there is no reasonable nondiscriminatory justification for what has been done." *Id*. at 589. The court held that Arkansas had intentionally discriminated against African-American voters by enacting the majority-vote requirements in a "systematic and deliberate attempt to reduce black political opportunity." *Id*. at 595.

As argued above in Parts V, VI, and VII, P.A. 436 violates and impermissibly dilutes Plaintiffs' fundamental right to vote and discriminates based on race as applied, violating the Equal Protection Clause of the Fourteenth Amendment, and P.A. 436 violates Plaintiffs' fundamental right to vote under the substantive and procedural Due Process Clause of the Fourteenth Amendment. As a relief to this violation, Plaintiffs request that this Court at the **remedial stage** exercise its

43

**discretion** to retain jurisdiction and impose preclearance. *Jeffers,* 740 F. Supp. at 600.  It is up to the court to determine whether preclearance, not unlike other equitable remedies, is appropriate. Defendants argue that Plaintiffs believe preclearance is an "automatic remedy to be imposed." (Br. Defs.' 32). Plaintiffs never make such an assertion and only request that this Court implement Section 3(c) to protect Plaintiffs from continuous Fourteenth Amendment violations. In fact, Plaintiffs only state in their Amended Complaint that they are "eligible" for this relief. (Am. Compl. ¶ 102).

Defendants next argue that they are "not required to seek preclearance under Section 3" so it is necessary to join other parties. (Br. Defs.' 32). At this point, no one is required to seek preclearance under Section 3(c). It is relief "not as a matter of statute, but as a matter of inherent equitable power" granted by the court. *Jeffers*, at 602. The relief requested is to make the entity responsible for the voting change and its implementation submit the change either to the court or to the Attorney General. 28 C.F.R. § 51.8.[9] In this instance, Defendants are responsible

---

[9] The Justice Department's regulations state that section 3(c) bailed-in jurisdictions must follow the same procedures as section 5 covered jurisdictions. *See* 28 C.F.R. § 51.8.

44

for the voting change and its implementation, not the local governments.

Defendants insist that dismissal is required because Plaintiffs have not joined

"cities and school districts or their appropriate officials." (Br. Defs.' 33). Joining

other parties in this instance would be futile. The alleged claim is a Fourteenth

Amendment violation on the part of Defendants Snyder, Dillon and Johnson, in

their official capacities. Defendants' suggested co-Defendants have not enacted

P.A. 436 and this suit is most appropriately brought against Defendants. In *Jeffers*,

the preclearance remedy of Section 3(c) was imposed, where municipal offices

such as mayor, council member, and municipal judge were traditionally filled by

nonpartisan election, because the state has systematically and deliberately enacted

new voting requirements for municipal offices in effort to frustrate black political

success. *Jeffers v Clinton*, 740 F Supp 585 (E.D. Ark 1990). It was not necessary to

join additional defendants in *Jeffers*, and it is not necessary to join new defendants

now.

Additionally, a state "has authority to submit any voting change on behalf of

its covered jurisdictions and political subunits." 28 CFR § 51.23(a). The Code of

Federal Regulations favors state submission, as opposed to local submission:

> Submissions from the State, rather than from the individual covered
> jurisdictions, would serve the State's interest in at least two important
> respects: first, the State is better able to explain to the Attorney General the
> purpose and effect of voting changes it enacts than are the individual
> covered jurisdictions; second, a single submission of the voting change on
> behalf of all of the covered jurisdictions would reduce the possibility that

some State acts will be legally enforceable in some parts of the State but not in others.
28 CFR § 51.23(a).

Further, under Section 5 of the Act, prior to enforcement of any change affecting voting, the jurisdiction that has **enacted or seeks to administer the change** must seek preclearance. 28 CFR § 51.10. Regardless, as it is fully within the discretion of this Court at the remedial stage, the Court can achieve the most appropriate and equitable result.[10]

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), Fed. R. Civ.

---

[10] District courts have construed section 3(c) to permit targeted preclearance, requiring the submission of only certain types of voting changes and can determine how long the jurisdiction will remain bailed in. *See*, e.g. *Jeffers*, 740 F. Supp. at 601 (requiring pocket trigger preclearance for voting changes "imposing or relating to a majority-vote requirement in general elections"); *Sanchez v. Anaya*, No. 82-0067M, slip op. ¶ 8 (D.N.M. Dec. 17, 1984) (mandating preclearance of legislative redistricting plans for a decade).

46

P. 12(b)(6) and Fed. R. Civ. P. 12(b)(7). Plaintiffs submit to the Court that

Defendants' arguments must fail.

1. Individual Plaintiffs have standing because they have suffered a concrete and particularized injury and "have a personal stake in the outcome." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Baker v. Carr*, 369 U.S. 186, 204 (1962).

2. Organizational Plaintiffs have standing because their members have standing to sue in their own right, the interests to be protected are germane to the organizations' purpose and individual members are not required to participate in the lawsuit. *ACLU of Ohio Found., Inc. v. Ashbrook*, 375 F.3d 484, 489 (6th Cir. 2004).

3. This Court should not apply the narrow *Burford* abstention doctrine, because Plaintiffs have only asserted Federal Constitutional claims. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 362 (1989).

4. Plaintiffs have met *Grand Trunk's* five factors for declaratory relief. *Grand Trunk Western R.R. Co. v. Consolidated Rail Corp*., 746 F2d 323, 326 (6th Cir. 1984).

5. P.A. 436 violates the Equal Protection Clause of the Fourteenth Amendment because it infringes on a fundamental right, discriminates based on race as applied, and it is not narrowly tailored to serve a compelling governmental interest. *Bush v. Gore*, 531 U.S. 98 (2000); *Village of Arlington Heights v. Metro. Hous. Dev. Corp*., 429 U.S. 252, 265 (1977); *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).

6. P.A. 436 violates the substantive Due Process Clause of the Fourteenth Amendment because it infringes and dilutes Plaintiffs' fundamental right to vote and it is not narrowly tailored to serve a compelling governmental interest. *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008).

7. P.A. 436 violates the procedural Due Process Clause of the Fourteenth Amendment because it impedes a protected liberty interest and provides no

notice or opportunity for hearing. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S.532, 542 (1985); *Armstrong v. Manzo,* 380 U.S. 545 (1965).

8. Plaintiffs request Section 3(c) preclearance relief for their ongoing Fourteenth Amendment violations and is not required to join parties to this lawsuit. 42 U.S.C. § 1973a(c) (2006); *Jeffers v. Clinton*, 740 F. Supp. 585, 592 (E.D. Ark. 1990); Fed. R. Civ. P. 12(b)(7).

9. As outlined above, Plaintiffs have stated a claim upon which relief can be granted, namely that 2012 Mich. Pub. Acts 436, Mich. Comp. Laws § 141.1541 *et seq*., (P.A. 436) violates the Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause of the Fourteenth Amendment.  Defendants have not fulfilled their burden of proving that Plaintiffs' Amended Complaint "fails to state a claim as a matter of law." *Bennett v. MIS Corp*., 607 F.3d 1076, 1091 (6th Cir. 2010).

10. Plaintiffs' Amended Complaint sets forth sufficient allegations to establish a claim for relief. The federal rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). While a plaintiff must plead "more than labels and conclusions," the "complaint need not contain 'detailed' factual allegations." *Id.*  The court must accept all allegations in the complaint at "face value" and construe them in the light most favorable to Plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983); *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1034-35 (6th Cir. 1979). Plaintiffs have set forth enough information to "outline the elements of a claim or to permit inferences to be drawn that these elements exist." *Jenkins v. McKeithen*, 395 U.S. 411, (1969); *German v. Killeen*, 495 F. Supp. 822, 827 (E.D. Mich. 1980). Plaintiffs have sufficiently pled facts to support their claims.

Because Plaintiffs seek relief from an ongoing constitutional violation and because Plaintiffs' claims are properly pled and have also filed an Amended

Complaint, this Court has jurisdiction over this action, and Defendants' motion must be denied.

   **WHEREFORE**, Plaintiffs request that this Honorable Court enter an order denying Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(1), (6) and (7).

                         Respectfully submitted,


                         /s/ Melvin Butch Hollowell

                         _____

                         MELVIN BUTCH HOLLOWELL(P-37834)

                         General Counsel
                         Detroit Branch NAACP
                         8220 Second Avenue
                         Detroit, Michigan 48221
                         313-871-2087
                         butchhollowell@gmail.com


                         NABIH H. AYAD & ASSOCIATES, P.C.

                         /s/ Nabih H. Ayad

                         _____

                         NABIH H. AYAD (P-59518)
                         General Counsel
                         Arab-American Civil Rights League
                         Nabih Ayad & Associates
                         2200 North Canton Center Road, Suite 220
                         Canton, Michigan 48187
                         734-983-0500
                         nayad@ayadlaw.com

DATED: August 11, 2013         ATTORNEYS FOR PLAINTIFFS

49

**CERTIFICATE OF SERVICE (E-FILE)**

I hereby certify that on August 11, 2013, I electronically filed the above

document(s) with the Clerk of the Court using the ECF System, which will provide

electronic copies to counsel of record.

NABIH H. AYAD & ASSOCIATES, P.C.

/s/ Nabih H. Ayad

_____

NABIH H. AYAD (P-59518)
General Counsel
Arab-American Civil Rights League
Nabih Ayad & Associates
2200 North Canton Center Road, Suite 220
Canton, Michigan 48187
734-983-0500
nayad@ayadlaw.com

50