## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
-----------------------------------------------------x
                                      :
In re                                 : Chapter 9
                                      :
CITY OF DETROIT, MICHIGAN,            : Case No. 13-53846
                                      :
                  Debtor.             : Hon. Steven W. Rhodes
                                      :
                                      :
                                      :
-----------------------------------------------------x
```

## MOTION OF DEBTOR, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE ENTITIES, (B) NON-OFFICER EMPLOYEES AND (C) AGENTS AND REPRESENTATIVES OF THE DEBTOR

      The City of Detroit, Michigan ("Detroit" or the "City"), as the debtor

in the above-captioned case, hereby moves the Court, pursuant to section 105(a) of

title 11 of the United States Code (the "Bankruptcy Code"), for the entry of an

order[1] extending the automatic stay provisions of sections 362 and 922 of the

Bankruptcy Code (together, the "Chapter 9 Stay") to (a) the State Entities, (b) the

Non-Officer Employees (as such terms are defined below) and (c) certain agents

---

[1] This Motion includes certain attachments that are labeled in accordance with Rule 9014-1(b)(1) of the Local Rules of the Bankruptcy Court for the Eastern District of Michigan (the "Local Rules"). Consistent with Local Rule 9014-1(b), a copy of the proposed form of order granting this Motion is attached hereto as Exhibit 1. A summary identifying each included attachment by exhibit number is appended to this Motion.

and representatives of the City.  In support of this Motion, the City respectfully
represents as follows:

## General Background

1.      Incorporated in 1806, Detroit is the largest city in Michigan.
As of December 2012, the City had a population of less than 685,000 (down from a
peak population of nearly 2 million in 1950).

2.      Over the past several decades, the City has experienced
significant economic challenges that have negatively impacted employment,
business conditions and quality of life. These challenges include, among other
things, (a) a contraction of its historic manufacturing base, (b) a declining
population, (c) high unemployment, (d) an erosion of the City's income and
property tax bases, (e) a reduction in state revenue sharing and (f) a lack of
adequate reinvestment in the City and its infrastructure.

3.      As of June 30, 2013 — the end of the City's 2013 fiscal year —
the City's liabilities exceeded $18 billion (including, among other things, general
obligation and special revenue bonds, unfunded actuarially accrued pension and
other postemployment benefit liabilities, pension obligation certificate liabilities
and related derivative liabilities). Excluding the proceeds of debt issuances, the
City has incurred large and unsustainable operating deficits for each of the past six
years. As of June 30, 2013, the City's accumulated unrestricted general fund deficit

was approximately $237.0 million. Excluding the impact of a recent debt issuance, this represents an increase of approximately $47.4 million over fiscal year 2012.

4.    On February 19, 2013, a review team appointed by Rick Snyder, Governor of the State of Michigan (the "Governor"), pursuant to Public Act 72 of 1990, the Local Government Fiscal Responsibility Act, MCL § 141.1201, et seq. ("PA 72"), issued its report with respect to the City and its finances (the "Review Team Report"). The Review Team Report concluded that a local government financial emergency exists within the City.

5.    On March 14, 2013, in response to the Review Team Report and the declining financial condition of the City and at the request of the Governor, the Local Emergency Financial Assistance Loan Board of the State of Michigan (the "Loan Board") appointed Kevyn D. Orr as emergency financial manager with respect to the City under PA 72, effective as of March 25, 2013.

6.    On March 28, 2013, upon the effectiveness of Public Act 436 of 2012, the Local Financial Stability and Choice Act, MCL § 141.1541, et seq. ("PA 436"), Mr. Orr became, and continues to act as, emergency manager with respect to the City under PA 436 (in such capacity, the "Emergency Manager").

7.    Pursuant to PA 436, the Emergency Manager acts "for and in the place and stead of the governing body and the office of chief administrative officer" of the City.  MCL § 141.1549.  In addition, the Emergency Manager acts

exclusively on behalf of the City with respect to the filing of a case under chapter 9 of the Bankruptcy Code upon receiving authorization from the Governor. MCL § 141.1558.

8.     On July 18, 2013, the Governor issued his written decision (the "Authorization") approving the Emergency Manager's recommendation that the City be authorized to proceed under chapter 9 of the Bankruptcy Code. Thereafter, also on July 18, 2013, the Emergency Manager issued an order approving the filing of the City's chapter 9 case consistent with the Authorization (the "Approval Order").  True and correct copies of the Approval Order and the Authorization are attached as Exhibit A to the Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code (Docket No. 10), filed on July 18, 2013 (the "Petition Date").

9.     In accordance with the Authorization and the Approval Order, on the Petition Date, the City commenced a case under chapter 9 of the Bankruptcy Code.  Additional details regarding the City and the events leading to the commencement of this chapter 9 case are set forth in the Declaration of Kevyn D. Orr in Support of City of Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code (Docket No. 11) (the "Orr Declaration"), filed on the Petition Date.

## The Prepetition Lawsuits

10.     During the period immediately prior to the Petition Date,

several lawsuits (collectively, the "Prepetition Lawsuits") were filed against

various entities (including, among others, the Governor, the Emergency Manager

and the Treasurer of the State of Michigan (the "State Treasurer")) effectively

seeking to frustrate the commencement of this chapter 9 case due to the protections

and powers that the City would enjoy if a case were commenced.  Specifically:

- On July 3, 2013, a complaint was filed by certain current and former employees of the City against the State of Michigan, the Governor and the State Treasurer seeking: (a) a declaratory judgment that PA 436 violated the Constitution of the State of Michigan to the extent that it purported to authorize chapter 9 cases within which vested pension benefits might be compromised; and (b) an injunction preventing the defendants from authorizing any chapter 9 case for the City within which vested pension benefits might be adjusted.  See Webster v. State of Mich., No. 13-734-CZ (Ingham Cnty. Cir. Ct. July 3, 2013) (the "Webster Lawsuit").

- Also on July 3, 2013, a separate complaint was filed by certain current and former employees of the City against the State of Michigan, the Governor and the State Treasurer seeking relief similar to that sought in the Webster Lawsuit.  See Flowers v. Snyder, No. 13 729-CZ  (Ingham Cnty. Cir. Ct. July 3, 2013) (the "Flowers Lawsuit").

- As recently as the eve of the Petition Date, the City's two pension systems – the General Retirement System of the City of Detroit (the "GRS") and the Police and Fire Retirement System of the City of Detroit (together with the GRS, the "Pension Systems") commenced a lawsuit against the Emergency Manager and the Governor seeking declaratory judgments that PA 436 (a) does not authorize them to take any action that may result in the compromise of the City's pension obligations; and

(b) when read in conjunction with applicable provisions of the Michigan Constitution, requires the defendants to refrain from attempting to compromise pension obligations in a chapter 9 case (or, alternatively, that PA 436 violates the Michigan Constitution). See Gen. Ret. Sys. of the City of Detroit v. Orr, No. 13-768-CZ (Ingham Cnty. Cir. Ct. Jul. 17, 2013) (the "Pension Systems Lawsuit"). Copies of the complaints filed in the Prepetition Lawsuits are attached hereto collectively as Exhibit 6.1.

11.    Prior to the City's commencement of this chapter 9 case, the

plaintiffs in each of the Prepetition Lawsuits sought *ex parte* orders (collectively,

the "Injunction Orders") from the Ingham County Circuit Court for the State of

Michigan (the "State Court") temporarily or preliminarily enjoining the Governor,

the State Treasurer and the other defendants in the Prepetition Lawsuits from

(a) taking certain actions, which orders would have had the direct and/or practical

effect of frustrating the defendants' ability to authorize a chapter 9 filing by the

City and (b) with respect to the City, availing itself of the protections and powers

of chapter 9 in any case actually commenced. See Injunction Order entered in

Webster Lawsuit at 2 (enjoining the defendants from authorizing a chapter 9 filing

and "taking any further action with respect to any filing which [sic] has already

occurred"); Injunction Order entered in Flowers Lawsuit at 2 (enjoining the

defendants from authorizing a chapter 9 filing and taking "any action in aid and

assistance as to the same"); Injunction Order entered in Pension Systems Lawsuit

at 2 (enjoining the defendants from taking any further action that may lead to the

impairment of pension claims).  On the Petition Date – but *after* the filing of the City's petition – the State Court entered the Injunction Orders sought by the plaintiffs in each of the Prepetition Lawsuits.  Copies of the Injunction Orders are attached hereto collectively as Exhibit 6.2.

12.     On July 19, 2013 (i.e., a full day after the Petition Date), the State Court entered amended versions of the Injunction Orders in both the Pension Systems Lawsuit and the Flowers Lawsuit (the "Amended Injunction Orders"), purporting to (a) extend the State Court's injunction in the Pension Systems Lawsuit to the "agents and representatives" of the Governor and the Emergency Manager (such agents and representatives of the Emergency Manager and/or the City, the "City Agents and Representatives") (see Amended Injunction Order entered in the Pension Systems Lawsuit at 2), (b) enjoin the defendants in the Pension Systems Lawsuit (and their agents and representatives) from filing "a plan of adjustment or any other filing" that might "impair or diminish" pension benefits in this chapter 9 case (see id.) and (c) enjoin the defendants in the Flowers Lawsuit from taking any action "as to the authorization of a Chapter 9 bankruptcy proceeding for the City of Detroit and/or the filing of a Chapter 9 bankruptcy petition, or any action in aid and assistance as to the same" (see Amended Injunction Order entered in the Flowers Lawsuit at 2).  Copies of the  Amended Injunction Orders are attached hereto collectively as Exhibit 6.3.

-7-

13-53846-tit-swr    Doc 2308-37    Filed 12/24/13    Entered 12/24/13 18:09:50    Page 7 of 82
13-53846-swr    Doc 967    Filed 07/19/13    Entered 07/19/13 18:09:50    Page 7 of 82

13.     Moreover, also on July 19, 2013, the State Court entered an

Order of Declaratory Judgment in the Webster Lawsuit (the "Declaratory

Judgment"), (a) finding PA 436 unconstitutional and of no force and effect to the

extent it permits the Governor to authorize an emergency manager to proceed

under chapter 9 in any manner that threatens to diminish or impair pension benefits

and (b) ordering the Governor to direct the Emergency Manager "to immediately

withdraw the Chapter 9 petition … and … not authorize any further Chapter 9

filing which threatens to diminish or impair accrued pension benefits."

See Declaratory Judgment at 3.  A copy of the Declaratory Judgment is attached

hereto as Exhibit 6.4.

## Jurisdiction

14.     The Court has jurisdiction over this matter pursuant to

28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2).  Venue for this matter is proper in this district pursuant to 28 U.S.C.

§§ 1408 and 1409.

## Relief Requested

15.     The City hereby seeks an order, pursuant to section 105(a) of

the Bankruptcy Code, extending the Chapter 9 Stay to certain parties that are, or

are likely to become, the targets of claims, lawsuits and other enforcement actions

prosecuted by parties in interest that have the direct or practical effect of denying

the City the protections of the automatic stay imposed by sections 362 and 922 of the Bankruptcy Code.  The City seeks this relief to (a) aid in the administration of its bankruptcy case, (b) protect and preserve its property for the benefit of citizens and stakeholders and (c) ensure that the City is afforded the breathing spell it needs to focus on developing and negotiating a plan for adjusting its debts.[2]

**Basis for Relief**

***The Chapter 9 Stay***

16.    Upon the commencement of a bankruptcy case, section 362 of the Bankruptcy Code provides for a stay of certain actions by non-debtor third parties.  Subject to certain enumerated exceptions, section 362 provides as follows:

> [A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

---

[2]    Contemporaneously with the filing of this Motion, the City also has filed a motion seeking an order confirming generally the existence and effect of the Chapter 9 Stay on the City and its officers, including with respect to the Emergency Manager and officers of the City serving in other capacities by virtue of their office.

(2) the enforcement, against the debtor or against property of the estate,[3] of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a  taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

11 U.S.C. § 362(a).  This so-called "automatic stay" is made applicable in a case

under chapter 9 by section 901 of the Bankruptcy Code.  See 11 U.S.C. § 901(a)

---

3       In chapter 9, "property of the estate" refers to property of the debtor. See 11 U.S.C. § 902(1) ("'property of the estate,' when used in a section that is made applicable in a case under [chapter 9] by section 103(e) or 901 of this title, means property of the debtor").

(providing that section 362 of the Bankruptcy Code, among other provisions, applies in a case under chapter 9).

17.     As the term "automatic stay" implies, the injunction contained in section 362 of the Bankruptcy Code is self-executing.  This automatic statutory injunction constitutes a fundamental debtor protection that — in combination with other provisions of the Bankruptcy Code — provides a "breathing spell" essential to (a) the preservation of the debtor's property and (b) the debtor's ability to administer its bankruptcy case and restructuring efforts without undue distraction or interference.  See, e.g., Lewis v. Negri Bossi USA, Inc. (In re Mathson Indus., Inc.), 423 B.R. 643, 647 (E.D. Mich. 2010) (stating that the purpose of the automatic stay is that "[i]t gives the debtor a breathing spell from his creditors [and] . . . permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy") (quoting S. Rep. No. 95-989, at 49, 54-55 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5835, 5840-41).

18.     The automatic stay is supplemented in chapter 9 by section 922(a) of the Bankruptcy Code, which provides as follows:

> A petition filed under this chapter operates as a stay, in addition to the stay provided by section 362 of this title, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial,

administrative, or other action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor; and

(2) the enforcement of a lien on or arising out of taxes or assessments owed to the debtor.

11 U.S.C. § 922(a). In a chapter 9 case, therefore, section 922 of the Bankruptcy Code extends the self-executing protections of section 362 of the Bankruptcy Code to, among other things, actions against officers and inhabitants of the debtor to enforce claims against the debtor.

***The Court's Equitable Power to Extend
the Stay in Appropriate Circumstances***

19.     Section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Sixth Circuit has held that a court may utilize its equitable power under section 105(a) of the Bankruptcy Code to extend the automatic stay to non-debtor entities in "unusual circumstances." Am. Imaging Servs., Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.), 963 F.2d 855, 861 (6th Cir. 1992). Unusual circumstances exist, for example, where there is an identity between the third party and the debtor such that a judgment against the third party would, in effect, be a judgment against the debtor. Id.

### *Request to Extend the Chapter 9 Stay to the State Entities*

20.     The City requests that the Court exercise its equitable power under section 105(a) of the Bankruptcy Code to extend the Chapter 9 Stay to actions or proceedings against the Governor, the State Treasurer and the members of the Loan Board (collectively with the State Treasurer and the Governor, and together with each entity's staff, agents and representatives, the "State Entities") that, directly or indirectly, seek to enforce claims against the City, interfere with the City's activities in this chapter 9 case or otherwise deny the City the protections of the Chapter 9 Stay.

21.     The State Entities are closely connected to the City and the Emergency Manager.  As previously stated, the Emergency Manager originally was an appointee of the Loan Board and serves at the pleasure of the Governor. Moreover, the Governor, the State Treasurer and the Loan Board all have ongoing roles with respect to the Emergency Manager's management of the City under PA 436.  See, e.g., PA 436 at § 19(2) (granting the Loan Board authority to review certain proposed actions of the Emergency Manager in certain circumstances); § 12(1)(x) (providing for State Treasurer approval of certain restructuring agreements); § 12(1)(r) (providing the Governor with the power to authorize certain actions of the Emergency Manager).

22.    Given the City's dire financial condition, the magnitude of this chapter 9 case and the important interests at stake, the City has been – and continues to be – concerned that parties in interest may attempt to influence or exercise control over the City through indirect means (where direct action might otherwise be prohibited by the Chapter 9 Stay).  Indeed, the City has already experienced such attempts through the Prepetition Lawsuits and the respective plaintiffs' pursuit of the Injunction Orders, which constituted attempts to (a) frustrate the City's access to bankruptcy court through the prosecution of claims against the State Entities and (b) interfere with the City's restructuring and the activities of the Emergency Manager both outside of and within chapter 9.

23.    Accordingly, the City has no reason to doubt that — absent this Court's intervention — parties in interest will continue attempting to exert direct or indirect pressure on the City by commencing or continuing actions or proceedings against one or more State Entities in forums other than bankruptcy court for the sole and inappropriate purpose of attempting to improve their bargaining positions with respect to their claims and otherwise denying the City the protections of the Chapter 9 Stay.  The City, therefore, requests that the Court enter an order (a) extending the Chapter 9 Stay to the State Entities and (b) providing expressly, for the avoidance of doubt, that each of the Prepetition Lawsuits is stayed pending

further order of the Court.[4]  In effect, the City asks that the Court extend the

Chapter 9 Stay to actions or proceedings against any  employee of the City that

seek to enforce claims against the City.

### Request to Extend the Chapter 9 Stay to the Non-Officer Employees

24.    Consistent with the policies underlying section 922(a)(1) of the

Bankruptcy Code, the City further requests that the Court exercise its equitable

power under section 105(a) of the Bankruptcy Code to extend the Chapter 9 Stay

to actions or proceedings against employees of the City that are neither City

Officers nor inhabitants of the City (collectively, the "Non-Officer Employees")

that seek to enforce claims against the City.

25.    By its terms, section 922(a)(1) of the Bankruptcy Code stays

actions only against "officers and inhabitants" of a municipal debtor.  11 U.S.C.

§ 922(a)(1).  Many non-officer employees of the City are "inhabitants" of the City

protected by this language.  Nevertheless, the City also acts through other

employees who are not inhabitants of the City.  The City anticipates that creditors

---

[4]     Although, the City seeks an order pursuant to section 105(a) of the
Bankruptcy Code extending the Chapter 9 Stay to the State Entities, among
other parties, the City notes that the Prepetition Lawsuits and any other
similar lawsuit directly violate the Chapter 9 Stay to the extent that any of
the relief sought therein seeks, directly or indirectly, to enforce the plaintiffs'
claims against the City or to exercise control over the City's property rights,
including its powers and rights under chapter 9.  See 11 U.S.C. § 362(a)(3),
(6).

may attempt to circumvent the protections of the Chapter 9 Stay and thereby exert undue leverage over the City by asserting claims against the Non-Officer Employees.  The City submits that any attempt by a creditor to enforce its claim against the City by commencing or continuing a lawsuit against one or more Non-Officer Employees of the City should not be exempt from the Chapter 9 Stay solely because such Non-Officer Employees may not, as a technical matter, hold an officer position or be an inhabitant of the City.  Any attempt to assert a claim against the City through such litigation would be:  (a) disruptive to the City's efforts to restructure; (b) inconsistent with the primary policy underlying section 922 of the Bankruptcy Code, which is to protect a municipality from creditors' attempts to enforce claims against the municipality via third parties; and (c) if successful, identical in practical effect to a judgment entered against the City. Accordingly, the City requests that the Court enter an order extending the protections of the Chapter 9 Stay to the Non-Officer Employees.

### *Request to Extend the Chapter 9 Stay to the City Agents and Representatives*

26.    The City requests that the Court further exercise its equitable power under section 105(a) of the Bankruptcy Code to extend the Chapter 9 Stay to actions or proceedings against the City's Agents and Representatives that, directly or indirectly, seek to enforce claims against the City, interfere with the

-16-

13-53846-tjt  Doc 2396-37  Filed 12/24/13  Entered 12/24/13 03:59:50  Page 16 of 82
13-53846-swr  Doc 398-3  Filed 07/19/13  Entered 07/19/13 18:09:59  Page 16 of 82

City's activities in this chapter 9 case or otherwise deny the City the protections of the Chapter 9 Stay.

27.     The City Agents and Representatives plainly are intimately connected to the City and the Emergency Manager, who act through and rely upon such entities on a daily basis including, in many instances (e.g., the City's restructuring counsel and advisors), with respect to the present chapter 9 case.  The City's concerns regarding the unwarranted exercise of control over the City through indirect means outlined above with respect to the State Entities applies with equal force with respect to the City Agents and Representatives.  Indeed, the State Court, through the Declaratory Judgment (which purports to bind the Emergency Manager's "agents and representatives"), has enabled the plaintiffs in the Webster Lawsuit to impede the City's efforts to adjust their debts in chapter 9 by limiting the actions of the City Agents and Representatives in this Court and elsewhere.  Given the plaintiffs' success with the State Court and the high profile nature of this chapter 9 case, the City anticipates that similar suits seeking similar relief (e.g., injunctions against advisor testifying on behalf of the City) will be forthcoming.  The extension of the Chapter 9 Stay to the City Agents and Representatives is warranted under the circumstances.

## Notice

28.     Notice of this Motion has been given to the following (or their counsel if known):  (a) the trustees, transfer agents and/or paying agents, as applicable, for the City's secured and unsecured bonds; (b) the City's largest unsecured creditors as identified on the list filed under Bankruptcy Rule 1007(d); (c) the unions representing certain of the City's employees and retirees; (d) the four associations of which the City is aware representing certain retirees of the City; (e) the City's pension trusts; (f) the insurers of the City's bonds; (g) the insurers of the certificates of participation issued with respect to the City's pension funds (the "COPs"); (h) certain significant holders of the COPs; (i) the counterparties under the swap contracts entered into in connection with the COPs (collectively, the "Swaps"); and (j) the insurers of the Swaps.  In addition, a copy of the Motion was served on the Office of the United States Trustee.  The City submits that no other or further notice need be provided.

## Reservation of Rights

29.     The City files this Motion without prejudice to or waiver of its rights pursuant to section 904 of the Bankruptcy Code, and nothing herein is intended to, shall constitute or shall be deemed to constitute the City's consent, pursuant to section 904 of the Bankruptcy Code, to this Court's interference with (a) any of the political or governmental powers of the City, (b) any of the property

or revenues of the City or (c) the City's use or enjoyment of any income-producing property.

## No Prior Request

30.     No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the City respectfully requests that this Court: (a) enter an order substantially in the form attached hereto as Exhibit 1 granting the relief sought herein; and (b) grant such other and further relief to the City as the Court may deem proper.

Dated: July 19, 2013                 Respectfully submitted,


                                     /s/ David G. Heiman
                                     David G. Heiman (OH 0038271)
                                     Heather Lennox (OH 0059649)
                                     JONES DAY
                                     North Point
                                     901 Lakeside Avenue
                                     Cleveland, Ohio  44114
                                     Telephone:  (216) 586-3939
                                     Facsimile:  (216) 579-0212
                                     dgheiman@jonesday.com
                                     hlennox@jonesday.com

                                     Bruce Bennett (CA 105430)
                                     JONES DAY
                                     555 South Flower Street
                                     Fiftieth Floor
                                     Los Angeles, California  90071
                                     Telephone:  (213) 243-2382
                                     Facsimile:  (213) 243-2539
                                     bbennett@jonesday.com

                                     Jonathan S. Green (MI P33140)
                                     Stephen S. LaPlante (MI P48063)
                                     MILLER, CANFIELD, PADDOCK AND
                                        STONE, P.L.C.
                                     150 West Jefferson
                                     Suite 2500
                                     Detroit, Michigan  48226
                                     Telephone:  (313) 963-6420
                                     Facsimile:  (313) 496-7500
                                     green@millercanfield.com
                                     laplante@millercanfield.com

                                     ATTORNEYS FOR THE CITY

-20-

13-53846-tjt   Doc 2366-37   Filed 12/24/13   Entered 12/24/13 13:59:50   Page 20 of 82
13-53846-swr   Doc 396-3   Filed 07/19/13   Entered 07/19/13 18:03:50   Page 20 of 82

## <u>SUMMARY OF ATTACHMENTS</u>

The following documents are attached to this Motion, labeled in accordance with Local Rule 9014-1(b).

| | |
|---|---|
| Exhibit 1 | Proposed Form of Order |
| Exhibit 2 | None  [Separate Notice of First Day Relief Proposed] |
| Exhibit 3 | None  [Brief Not Required] |
| Exhibit 4 | None  [Separate Certificate of Service To Be Filed] |
| Exhibit 5 | None  [No Affidavits Filed Specific to This Motion] |
| Exhibit 6.1 | Prepetition Lawsuit Complaints |
| Exhibit 6.2 | Injunction Orders |
| Exhibit 6.3 | Amended Injunction Orders |
| Exhibit 6.4 | Declaratory Judgment |

**EXHIBIT 1**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

```
-----------------------------------------------------x
                                          :
In re                                     : Chapter 9
                                          :
CITY OF DETROIT, MICHIGAN,                : Case No. 13-53846
                                          :
                              Debtor.     : Hon. Steven W. Rhodes
                                          :
                                          :
-----------------------------------------------------x
```

## ORDER, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE ENTITIES, (B) NON OFFICER EMPLOYEES AND (C) AGENTS AND REPRESENTATIVES OF THE DEBTOR

This matter coming before the Court on the Motion of Debtor,

Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order,

Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non-Officer

Employees and (C) Agents and Representatives of the Debtor (the "Motion"),[1]

filed by the City of Detroit, Michigan (the "City"); the Court having reviewed the

Motion and the Orr Declaration and having considered the statements of counsel

and the evidence adduced with respect to the Motion at a hearing before the Court

(the "Hearing"); and the Court finding that:  (a) the Court has jurisdiction over this

---

[1]    Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and the Hearing was sufficient under the circumstances, (d) the unusual circumstances present in this chapter 9 case warrant extending the Chapter 9 Stay to the State Entities, the Non-Officer Employees and the City Agents and Representatives; and the Court having determined that the legal and factual bases set forth in the Motion and the Orr Declaration and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      Pursuant to section 105(a) of the Bankruptcy Code, the Chapter 9 Stay hereby is extended to apply in all respects (to the extent not otherwise applicable) to the State Entities, the Non-Officer Employees and the City Agents and Representatives.

3.      For the avoidance of doubt, each of the Prepetition Lawsuits hereby is stayed, pursuant to section 105(a) of the Bankruptcy Code, pending further order of this Court.

4.      Nothing herein is intended to, shall constitute or shall be deemed to constitute the City's consent pursuant to section 904 of the Bankruptcy Code to this Court's interference with (a) any of the political or governmental powers of the City, (b) any of the property or revenues of the City or (c) the City's

use or enjoyment of any income-producing property.  In addition, for the avoidance of doubt, nothing herein shall, or shall be construed to, limit, modify or restrict any rights and protections afforded to the City under the Bankruptcy Code, including sections 362 and 922 thereof.

5.     The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, enforcement or interpretation of this Order.

**EXHIBIT 6.1**

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

ROBBIE FLOWERS, MICHAEL WELLS,
JANET WHITSON, MARY WASHINGTON
and BRUCE GOLDMAN

Plaintiffs,

vs.

RICK SNYDER, as the Governor of the State
of Michigan; ANDY DILLON, as the Treasurer of
the State of Michigan; and the STATE OF MICHIGAN;

Defendants.

_____/

There is no other pending or
resolved civil action arising
out of the same transaction
or occurrence as alleged in
the complaint.

Case No. 13-729-CZ
Hon. Rosemarie E. Aquilina

William A. Wertheimer (P26275)
Attorney for plaintiffs
30515 Timberbrook Lane
Bingham Farms, MI 48025
248-644-9200
billwertheimer@gmail.com

Andrew Nickeloff (P37990)
Marshall J. Widick (P53942)
James A. Britton (P71157)
Attorneys for plaintiffs
Sachs Waldman
1000 Farmer
Detroit, MI 48226
313-496-9429
anickelhoff@sachswaldman.com
mwidick@sachswaldman.com
jabritton@sachswaldman.com

RECEIVED
JUL 08 2013
Clerk of the Court
30th Judicial Circuit

Dept of Attorney General

JUL 08 2013

State Operations Division
RECEIVED

## AMENDED VERIFIED COMPLAINT

Plaintiffs, by their attorneys, state:

## I. NATURE OF PLANTIFFS' CLAIMS

1.    Plaintiffs are three City of Detroit retirees currently receiving pension benefits and two City of Detroit employees with vested pension benefits whose rights are being violated in the emergency financial management proceedings that the State has implemented in response to Detroit's fiscal crisis and whose rights will be threatened with abrogation if Governor Snyder authorizes the Detroit Emergency Manager to proceed under Chapter 9 in bankruptcy.

2.    This action is brought for violations of plaintiffs' constitutional rights under Article 9, Section 24 of the Michigan Constitution which provides: "The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation whereof which shall not be diminished or impaired thereby."

3.    The *Local Financial Stability and Choice Act*, Public Act 436 of 2012, MCL 141.1541, *et seq.* (Public Act 436) permits Governor Snyder to authorize a Chapter 9 bankruptcy. MCL 141.1558. A copy of Public Act 436 is available at www.legislature.mi.gov.

4.    The Detroit Emergency Manager has, as part of his restructuring planning, publicly announced that he intends to significantly cut vested pension amounts of the city's retirees and employees in violation of Article 9, Section 24 and threatened to seek to extinguish their Article 9, Section 24 rights in bankruptcy if they fail to agree which they have not.

5.    Plaintiffs seek an order precluding Governor Snyder or the State Treasurer from authorizing Detroit's Emergency Manager to proceed under Chapter 9 of the federal Bankruptcy Code because to do so would threaten to abrogate their rights under Article 9, Section 24 of the Michigan Constitution.

## II. JURISDICTION AND VENUE

6.    This Court has jurisdiction under MCL 600.6419(4) (proceedings for declaratory or equitable relief against state) and 600.605 (original jurisdiction of circuit courts).

7.    Venue is proper in Ingham County pursuant to MCL 600.1615 (actions against

governmental units) and MCL 600.1621 (county in which a defendant conducts business).

### III. PARTIES

8.      Plaintiff Robbie Flowers resides at 6533 East Jefferson, Apt. 602T, Detroit, Michigan. She is a citizen of the State of Michigan, and an employee of the Detroit Library Commission, an enterprise agency and component unit of the City of Detroit, with a right to vested pension benefits from Detroit's General Retirement System (GRS).

9.      Plaintiff Michael Wells resides at 100 Atkinson, Detroit, Michigan. He is a citizen of the State of Michigan, and a retiree from the Detroit Library Commission receiving a pension from Detroit's GRS.

10.     Plaintiff Janet Whitson resides at 25260 East Deborah, Redford, Michigan. She is a citizen of the State of Michigan, and a retiree from the Detroit Library Commission receiving a pension from Detroit's GRS.

11.     Plaintiff Mary Washington resides at 7120 Pebble Park Drive, West Bloomfield, Michigan. She is a citizen of the State of Michigan, and a retiree from the City of Detroit receiving a pension from Detroit's GRS.

12.     Plaintiff Bruce Goldman resides at 25840 Forestview Drive, Southfield, Michigan. He is a citizen of the State of Michigan, and is an employee of the City of Detroit's Law Department with a right to vested pension benefits from Detroit's GRS.

13.     Defendant Rick Snyder is the Governor of the State of Michigan and is sued in that capacity.

14.     The Detroit Emergency Manager serves at the pleasure of the Governor. MCL 141.1549(3)(d).

15.     Defendant Andy Dillon is the Treasurer of the State of Michigan and is sued in that capacity.

16.     The Governor may delegate to the State Treasurer his duties under MCL 141.1549.

17.     The Emergency Manager submits quarterly reports to the State Treasurer. MCL 141.1549(8) and 141.1549(5).

18.     Defendant State of Michigan is the governmental entity on behalf of which the Governor and State Treasurer are acting.

## IV. IT WOULD BE UNCONSTITUTIONAL FOR THE GOVERNOR TO AUTHORIZE THE DETROIT EMERGENCY MANAGER TO PROCEED UNDER CHAPTER 9

19.     The Detroit Emergency Manager is acting pursuant to Public Act 436.

20.     Public Act 436 provides that the Governor can authorize the Emergency Manager to proceed under chapter 9 of the Federal Bankruptcy Code. MCR 141.1558.

21.     On 14 June 2013 the Detroit Emergency Manager issued an "Executive Summary" of a "Proposal for Creditors," which stated under "Claims for Unfunded Pension Liabilities": "Because the amounts realized on the underfunding claims will be substantially less than the underfunding amount, there must be **significant** cuts, in accrued, vested pension amounts for **both active and currently retired persons**." (Emphasis in original.) A copy of this document is available at www.detroitmi.gov under the "Emergency Manager" tab.

22.     The same day the Detroit Emergency Manager released this "Executive Summary" he spoke to the Detroit Free Press Editorial Board. The relevant questions and answers read as follows:

Q.     You said in this report that you don't believe there is an obligation under our state constitution to pay pensions if the city can't afford it?
A.     The reason we said it that way is to quantify the bankruptcy question. We think federal supremacy trumps state law.
Q.     Which the Ninth Circuit agrees for now.
A.     It is what it is – so we said that in a soft way of saying, "Don't make us go into bankruptcy." **If you think your state-vested pension rights, either as an employee or a retiree – that's not going to protect you. If we don't reach an agreement one way or the other, we feel fairly**

4

> **confident that the state federal law, federalism, will trump state law or negotiate**. The irony of the situation is we might reach a deal with creditors quicker because employees and retirees think there is some benefit and that might force our hand. That might force a bankruptcy.

(Emphasis added.) The interview is available at www.freep.com/article/20130616OPINION.

23.    At no place in this "Executive Summary" or anyplace else has the Detroit Emergency Manager (or Defendants Snyder or Dillon) stated that he is bound by or in any way intends to recognize the applicability of Article 9, Section 24 of the Michigan Constitution.

24.    It is clear from the above recitation of facts that unless plaintiffs and other City of Detroit retirees and employees with vested pension benefits accede to the threats of the Detroit Emergency Manager he will recommend to the Governor and the State Treasurer that the City of Detroit be authorized to proceed under Chapter 9. MCL 141.1558.

25.    It is also clear from the above recitation of facts that if the Governor and/or the State Treasurer authorize a Chapter 9 filing the Detroit Emergency Manager will not uphold but rather seek to abrogate the rights of plaintiffs and others to their accrued pension benefits in violation of Article 9, Section 24 of the Michigan Constitution.

26.    If the Governor and the State Treasurer are not enjoined from authorizing a Chapter 9 filing, plaintiffs will be irreparably harmed.

27.    The harm to plaintiffs absent injunctive relief outweighs the harm an injunction would cause defendants.

28.    Plaintiffs are likely to succeed on the merits.

29.    There will be harm to the public interest if an injunction is not issued, as thousands of City of Detroit retirees and employees will be threatened with the loss of their constitutional rights to their vested pensions.

## VI. RELIEF

WHEREFORE, plaintiffs respectfully request that this Honorable Court issue:

A. an injunction precluding the Governor or the State Treasurer from authorizing the Detroit Emergency Manager to commence proceedings under Chapter 9 of the federal Bankruptcy Code;

B. appropriate declaratory relief;

C. such other relief in the form of injunctions, writs or orders, as this Court deems just and equitable; and

D. award plaintiffs their costs and expenses including, but not limited to, attorney fees incurred in pursuing this action.

Respectfully submitted,

William A. Wertheimer (P 26275)
Attorney for plaintiffs
30515 Timberbrook Lane
Bingham Farms, MI 48025
248-644-9200
billwertheimer@gmail.com

Andrew Nickeloff (P37990)
Marshall J. Widick (P53942)
James A. Britton (P71157)
Attorneys for plaintiffs
Sachs Waldman
1000 Farmer
Detroit, MI 48226
313-496-9429
anickelhoff@sachswaldman.com
mwidick@sachswaldman.com
jabritton@sachswaldman.com

Dated: 8 July 2013

## VERIFICATION

STATE OF MICHIGAN    )
                              ) ss
COUNTY OF OAKLAND   )

William A. Wertheimer, being first duly sworn, deposes and states he is the attorney representing plaintiffs herein; that he has read the foregoing verified complaint by him subscribed for and on behalf of plaintiffs; that he knows the contents thereof to be true except as to those matters stated upon information and believe, and as to those matters, he believes them to be true, and he is authorized to sign said verified complaint on behalf of plaintiffs.

William A. Wertheimer

Subscribed and sworn to before me this 8th day of July 2013.

Karen Purslow, Notary Public
County of Oakland, State of Michigan
My Commission Expires: 4·19·2014

---

### PROOF OF SERVICE

THE UNDERSIGNED CERTIFIES THAT ON 8 JULY 2013 THE FOREGOING INSTRUMENT WAS SERVED UPON THE FOLLOWING:

1. Governor Rick Snyder
2. State of Michigan (through AG
3. State Treasurer Andy Dillion

BY:

| | | |
|---|---|---|
| ____ U.S. MAIL | | ____ FAX |
| _X_ HAND DELIVERY | | ____ U.S. EXPRESS MAIL |
| ____ UPS | | ____ OTHER: email addresses |

BY:
SIGNATURE:

---

7

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

        Plaintiffs,

vs

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

        Defendants.

Case No. 13-734-CZ
Hon. CLINTON CANADY III

_____/

JOHN R. CANZANO (P30417)
McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com

_____/

A civil action between these parties or
other parties arising out of the transaction
or occurrence alleged in the Complaint has
been previously filed in this Court,
where it was given docket number 13-729-CZ
and was assigned to Judge Aquilina.
The action remains pending.

## VERIFIED COMPLAINT FOR
## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

### NATURE OF ACTION

1.    This action seeks a declaratory judgment that the "Local Financial Stability and

Choice Act," 2012 PA 436, MCL 141.1541 *et seq* ("PA 436") is unconstitutional and in violation of

Article IX Section 24 of the Michigan Constitution because PA 436 permits accrued pension benefits to be diminished or impaired by bankruptcy proceedings in direct contravention of the Constitution. This action also seeks a preliminary and/or final injunction enjoining the Governor and/or the State Treasurer from authorizing a bankruptcy proceeding permitting an unconstitutional diminishment or impairment of accrued pension benefits under PA 436.

### PARTIES, JURISDICTION AND VENUE

2.      Plaintiff Gracie Webster is a retiree from the City of Detroit. She retired in 2000 and is receiving a pension benefit under the City of Detroit's General Retirement System Pension Plan. She resides in Detroit and is a citizen of the State of Michigan.

3.      Plaintiff Veronica Thomas is an employee of the City of Detroit. She has worked for the City for 17 years. She is a participant in the City of Detroit's General Retirement System Pension Plan. Although she has not yet retired, based on her years of service Plaintiff Thomas has earned the right to an accrued vested pension benefit under the terms of the pension plan.

4.      Defendant State of Michigan is a governmental entity and sovereign state of the United States, retaining all powers reserved to it under the 10th Amendment to the United States Constitution.

5.      Defendant Richard Snyder is the Governor of the State of Michigan acting in his official capacity.

6.      Defendant Andy Dillon is Treasurer of the State of Michigan acting in his official capacity.

7.      The Governor may delegate his duties under Section 9 of PA 436, MCL 141.1549 to the State Treasurer.

8.      This court has jurisdiction under MCL 600.6419(4), which provides for the jurisdiction of circuit courts in proceedings for declaratory or equitable relief against the State, and

2

MCL 600.605, which provides original jurisdiction in the circuit courts.

9.    Venue is proper in this court under MCL 600.1621(a), because Defendants conduct

business in Ingham County.

## COUNT I:  DECLARATORY JUDGMENT

**PA 436 Is Unconstitutional Because It Permits Accrued Pension Benefits To Be Diminished Or Impaired In Direct Violation Of Article IX, Section 24 Of The Michigan Constitution**

10.    Article IX Section 24 of the Michigan Constitution provides in pertinent part:

> The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof **which shall not be diminished or impaired** thereby.

11.    PA 436 was enacted by the Michigan Legislature on December 28, 2012 and became

effective March 28, 2013.

12.    Among the purposes of PA 436, as stated in its preamble, are to "prescribe remedial

measures to address a financial emergency within a local unit of government;" "to prescribe the

powers and duties of an emergency manager for a local unit of government;" and "to provide a

process by which a local unit of government . . . may file for bankruptcy."

13.    On March 14, 2013, Defendant Snyder appointed Kevyn Orr as Emergency Financial

Manager for the City of Detroit, pursuant to 1990 PA 72, MCL 141.1201 *et seq* ("PA 72"). PA 436

is a successor statute to, and expressly repeals, PA 72.

14.    Pursuant to Sec 9(10) of PA 436, MCL 141.1549(10), Kevyn Orr, as an emergency

financial manager appointed under former 1990 PA 72 "and serving immediately prior to the

effective date of this act, shall be considered an emergency manager under this act [PA 436] and

shall continue under this act to fulfill his or her powers and duties."

15.    Chapter 9 of the U.S. Bankruptcy Code, 11 USC §§901 *et seq*, provides a process by

3

which a municipality may file for bankruptcy and become a debtor under Chapter 9 in federal bankruptcy court.

16.     However, in order to protect state sovereignty and in recognition of federalism principles under the 10th Amendment to the U.S. Constitution, Chapter 9 of the Bankruptcy Code prohibits municipalities from filing for bankruptcy unless the municipality "is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter." Absent such authorization, federal bankruptcy courts have no jurisdiction under Chapter 9 over a municipality as a debtor. 11 USC §109(c)(2). See *Ashton v Cameron County Water Improvement Dist No 1*, 298 US 513; 56 S Ct 892; 80 L Ed 1309 (1936); and *United States v Bekins*, 304 US 27, 58 S Ct 811; 82 L Ed 1137 (1938).

17.     Section 18 of PA 436, MCL 141.1558, specifically authorizes a local unit of government to become a debtor in a Chapter 9 bankruptcy proceeding if the emergency manager for the local government recommends to the Governor and the State Treasurer that the local government be authorized to proceed under Chapter 9, and if the Governor approves the recommendation by informing the emergency manager and State Treasurer in writing of his decision.

18.     PA 436 nowhere requires that in considering whether to approve an emergency manager's recommendation to proceed under Chapter 9, the Governor shall not approve such recommendation if accrued pension benefits may be diminished or impaired in violation of Article IX Section 24 of the Michigan Constitution.

19.     Accordingly, because PA 436 does not prohibit a municipality from proceeding under Chapter 9 of the U.S. Bankruptcy Code if accrued pension benefits may be unconstitutionally diminished or impaired , PA 436 is unconstitutional on its face in violation of Article IX Section 24 of the Michigan Constitution.

20.     Section 11 of PA 436, MCL 141.1551, provides that "an emergency manager shall develop and may amend a written financial operating plan for the local government [and that] [t]he financial and operating plan shall provide for . . . [t]he timely deposit of required payments to the pension fund for the local government or in which the local government participates."

21.     On May 12, 2013, Emergency Manager Orr issued a financial and operating plan pursuant to Section 11 of PA 436. (Available at www.freep.com/assets/freep/pdf/C4205233512.pdf.) The plan does not schedule the "timely deposit of required payments" to the pension funds as required by Section 11 of PA 436, but instead notes that payments have been deferred to manage a liquidity crisis.

22.     On June 14, 2013, Emergency Manager Orr issued a "Proposal for Creditors" in which he presents various restructuring options. (Available at http://www.freep.com/assets/freep/pdf/C4206913614.pdf.) Nowhere in this document does Emergency Manager Orr indicate any intent to comply with Article IX Sec 24 of the Michigan Constitution. Instead, in direct contravention of the Michigan Constitution, the proposal expressly states that *"there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons."*

23.     Emergency Manager Orr has publicly threatened, in a June 14 interview with the Detroit Free Press Editorial Board, that vested pension benefits will be abrogated in a Chapter 9 proceeding authorized by the Governor pursuant to PA 436, and that any state law protecting vested pension benefits is "not going to protect" retirees or employees with vested pension benefits in bankruptcy court. (See www.freep.com/article/20130616/OPINION05/306160052/kevyn-orr-detroit-emergency-manager-creditors-fiscal-crisis.)

24.     Article IX Section 24 of the Michigan Constitution is such a state law, which Emergency Manager Orr has asserted will "not . . . protect" vested pension benefits.

5

25.     Under PA 436, the only way Emergency Manager Orr could impose his desired "significant cuts in accrued, vested pension amounts for both active and currently retired persons" is through a Chapter 9 bankruptcy filing.

26.     Plaintiffs are entitled to a declaratory judgment that PA 436 is unconstitutional under Article IX Section 24 of the Michigan Constitution because PA 436 does not prohibit the Governor from authorizing a Chapter 9 bankruptcy filing which threatens to unconstitutionally diminish or impair the Plaintiffs' accrued pension benefits, and a final judgment ordering that Defendant Snyder and/or Defendant Dillon not authorize a Chapter 9 filing which threatens to diminish or impair accrued pension benefits in violation of the Michigan Constitution.

27.     This case presents an actual controversy entitling Plaintiffs to a declaratory judgment because the facts stated above indicate " an adverse interest necessitating the sharpening of the issues raised." *Lansing School Education Ass'n v Lansing Bd of Educ*, 487 Mich 349, 372 n20; 792 NW2d 686 (2010), quoting *Associated Builders and Contractors v Dep't of Consumer and Indus Servs Dir*, 472 Mich 117, 126; 693 NW2d 374 (2005). Plaintiffs are entitled to a declaratory judgment here "to obtain adjudication of rights before an actual injury occurs [and] to settle a matter before it ripens into a violation of the law . . ." *Rose v State Farm Mut Auto Ins Co*, 274 Mich App 291, 294; 732 NW2d 160 (2006).

28.     Plaintiff's need for a Declaratory Judgment is urgent.   Based on the above facts, a request by the Emergency Manager to proceed under Chapter 9 is imminent, because he has credibly threatened – indeed, has given every indication – that he intends to impair or diminish accrued pension benefits in contravention of Article IX Section 24 of the Michigan Constitution, and that Chapter 9 bankruptcy proceedings are the mechanism by which he can do so. Thus Plaintiffs' rights under the Michigan Constitution not to have their pension benefits "diminished or impaired" can

6

only be guaranteed if this Court acts *before* the Governor approves a request to proceed under Chapter 9. Moreover, Emergency Manager Orr's threats that he will unconstitutionally diminish or impair Plaintiffs' vested pension rights have themselves harmed Plaintiffs by instilling in Plaintiffs a reasonable fear that their constitutional rights will be trampled upon and, in the process, their future source of income drastically eroded.

29.     Accordingly, Plaintiffs are entitled to a speedy hearing under MCR 2.605(D) on their request for declaratory relief.

## COUNT II:  PRELIMINARY INJUNCTION

30.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 29 above.

31.     Plaintiffs will suffer irreparable harm if Defendants Snyder and Dillon are not enjoined from authorizing the Emergency Manager to proceed under Chapter 9 of the U.S. Bankruptcy Code and thereby seeking to abrogate Plaintiffs' rights under the Michigan Constitution and the source of livelihood it guarantees them in a forum which the Emergency Manager contends does not protect those rights.

32.     The harm to Plaintiffs absent injunctive relief outweighs the harm to Defendants if an injunction is granted because the Governor and Treasurer will not be harmed if they are enjoined from authorizing the Emergency Manager to file under Chapter 9.

33.     Plaintiffs are likely to succeed on the merits.

34.     There will be harm to the public interest absent an injunction, as the accrued vested pension rights of thousands of City of Detroit retirees and employees will be threatened with abrogation in violation of the Michigan Constitution.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant the following

relief:

A.    A declaratory judgment that PA 436 is unconstitutional in violation of Article IX

Section 24 of the Michigan Constitution.

B.    A preliminary and/or permanent injunction enjoining Defendant Snyder and

Defendant Dillon from authorizing the Detroit Emergency Manager to commence

proceedings under Chapter 9 of the U.S. Bankruptcy Code.

C.    An award to Plaintiffs of their costs and expenses, including attorneys' fees, incurred

in this action.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By: _____
John R. Canzano  (P30417)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI  48034
248-354-9650
jcanzano@michworklaw.com

Date:  July 3, 2013

**VERIFICATION**

STATE OF MICHIGAN     )
                       )ss
COUNTY OF OAKLAND    )

John R. Canzano, being first duly sworn, deposes and states he is the attorney representing

Plaintiffs herein; that he has read the foregoing verified complaint by him subscribed for and on

8

behalf of Plaintiffs; that he knows the contents thereof to be true except as to those matters stated

upon information and belief, and as to those matters, he believes them to be true, and he is

authorized to sign said Verified Complaint on behalf of Plaintiffs.

_____
John R. Canzano

Subscribed and sworn to before me this 3rd day of July 2013.

Karen Ann Purslow, Notary Public
County of Oakland, State of Michigan
My Commission Expires:   April 19, 2014

9

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM**

THE GENERAL RETIREMENT SYSTEM
OF THE CITY OF DETROIT, and THE
POLICE AND FIRE RETIREMENT
SYSTEM OF THE CITY OF DETROIT,

        Plaintiffs,

vs.

                                 Case No. 13- _768_ -CZ

KEVYN D. ORR, in his official capacity as the    Hon. ~~CLINTON CANADY III~~
EMERGENCY MANAGER OF THE CITY OF
DETROIT, and RICHARD SNYDER, in his
official capacity as the GOVERNOR OF THE
STATE OF MICHIGAN,

        Defendants.

---

Ronald A. King (P45088)
Aaron O. Matthews (P64744)
Michael J. Pattwell (P72419)
CLARK HILL PLC
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys for Plaintiffs

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The following civil actions between the
above-named parties and/or other parties
arising out of the same transactions and
occurrences alleged in this Complaint have
previously been filed in this Court: (i) Case
No. 13-729-CZ assigned to Judge Aquilina;
and (ii) Case No. 13-734-CZ assigned to
Judge Canady and then reassigned to Judge
Aquilina. Those actions remain pending.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

---

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiffs, the General Retirement System of the City of Detroit ("GRS"), and the Police

and Fire Retirement System of the City of Detroit ("PFRS") (together, the "Retirement Systems"

or "Plaintiffs"), through their attorneys, Clark Hill PLC, allege as follows for their Complaint for

Declaratory Relief against Defendants Kevyn D. Orr, in his official capacity as the Emergency

9192834.3 14893/144127

Manager of the City of Detroit (the "Emergency Manager"), and Richard Snyder, in his official capacity as the Governor of the State of Michigan (the "Governor"):

## I.   INTRODUCTION

1.      The Retirement Systems bring this action on their own behalf and on behalf of the more than 32,000 active and retired employees of the City of Detroit (the "City"), who are participants in the Retirement Systems and whose "accrued financial benefits" the Retirement Systems were created to protect.

2.      Under Count I, Plaintiffs request that this Court declare that:

    a)   the Local Financial Stability and Choice Act, 2012 PA 436, MCL 141.1541 *et seq.* ("PA 436") does <u>not</u> expressly grant to the *Governor* the authority to authorize the Emergency Manager to take any actions that will result in the impairment of the City of Detroit's pension debts, but rather, when read in conjunction with Article IX, section 24 and Article I, section 10 of the Michigan Constitution, requires that the *Governor* refrain from authorizing the Emergency Manager to take any action that causes the City's pension debts to be subject to impairment under Chapter 9 of the United States Bankruptcy Code, 11 USC §§ 901 *et seq.*, ("Chapter 9"); or, alternatively,

    b)   <u>if</u> PA 436 implicitly grants to the *Governor* the authority to authorize the Emergency Manager to take actions that will result in the impairment of the City of Detroit's pension debts, <u>then</u> PA 436 contravenes Article IX, section 24 and Article I, section 10 of the Michigan Constitution and is of no force or effect.

3.      Under Count II, Plaintiffs request that this Court declare that:

    a)   PA 436 does <u>not</u> expressly grant to the *Emergency Manager* the authority to take actions that will result in the impairment of the City of Detroit's pension debts, but rather, when read together with Article IX, section 24 and Article I, section 10 of the Michigan Constitution, precludes the *Emergency Manager* from taking any action that causes the City's pension debts to be subject to impairment under Chapter 9; or, alternatively,

    b)   <u>if</u> PA 436 implicitly grants to the *Emergency Manager* the authority to take actions that will result in the impairment of the City of Detroit's pension debts, <u>then</u> PA 436 contravenes Article IX, section 24 and Article I, section 10 of the Michigan Constitution and is of no force or effect.

2

4.     If, before the Court is able to grant the declaratory relief requested above, the Governor attempts to grant to the Emergency Manager an unconditional authorization to proceed under Chapter 9, Plaintiffs request that this Court immediately issue an injunction prohibiting the Emergency Manager from acting pursuant to the Governor's purported and unconstitutional Chapter 9 authorization until such time as Plaintiffs' request for declaratory relief has been fully adjudicated.

## II.     THE PARTIES

5.     Plaintiff GRS is a municipal employee retirement system and pension plan and trust created by the City's Charter to provide retirement, disability, and survivor benefits to eligible non-uniformed City employees and their beneficiaries, as authorized by the Michigan Constitution and the Home Rule City Act of 1909, MCL 117.1 *et seq*. Among many other duties, GRS has the power and obligation to ensure that the City tenders its annual contribution to GRS and to protect the "accrued financial benefits" of its participants.

6.     Plaintiff PFRS is a municipal employee retirement system and pension plan and trust created by the City's Charter to provide retirement, disability, and survivor benefits to eligible City Police and Fire Department employees and their beneficiaries, as authorized by the Michigan Constitution and the Home Rule City Act of 1909, MCL 117.1 *et seq*. Among many other duties, PFRS has the power and obligation to ensure that the City tenders its annual contribution to PFRS and to protect the "accrued financial benefits" of its participants.

7.     Defendant Kevyn D. Orr is the Emergency Manager of the City.

8.     Defendant Richard Snyder is the Governor of the State of Michigan.

## III.     JURISDICTION AND VENUE

9.     This Court possesses jurisdiction over this matter pursuant to Mich Const 1963, art VI, § 13, MCL 600.601, MCL 600.605, and MCL 600.6419(4). Furthermore, this Court has

3

jurisdiction to render the declaratory judgments requested herein pursuant to MCR 2.605 because there exists an actual controversy between the parties.

10.     Venue in this circuit is proper pursuant to MCL 600.1615 and MCL 600.1621(a).

## IV.     GENERAL ALLEGATIONS

**A.     The Governor's Duty And Oath To Uphold The Constitution**

11.     Article XI, section 1 of the Michigan Constitution requires that all officers, legislative, executive and judicial in the state of Michigan must take and subscribe to the following oath:

> I do solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution of this state, and that I will faithfully discharge the duties of the office of . . . . . . . . . according to the best of my ability. [Mich Const 1963, art XI, § 1.]

12.     Similarly, Article V, section 8 of the Michigan Constitution demands that "the governor shall take care that the laws be faithfully executed." Mich Const 1963, art V, § 8.

13.     And, section 64 of the Michigan Election Law ("PA 116") makes clear that "[e]very person elected to the office of governor . . . before entering upon the duties of his office, shall take and subscribe to the oath as provided in section 1 of article 11 of the state constitution and deposit same with the secretary of state." MCL 168.64.

14.     On December 30, 2010, the Governor did in fact swear the following oath, which was later filed with the Michigan Secretary of State: "I do solemnly swear that I will support the Constitution of the United States and the Constitution of this State, and that I will faithfully discharge the duties of the office of Governor according to the best of my ability." This oath of office is attached as **Exhibit A**.

4

**B.      The Emergency Manager's Duty And Oath To Uphold The Constitution**

15.      Pursuant to section 9 of PA 436, the Emergency Manager is a public officer and servant appointed by the Governor and serves at the Governor's pleasure. MCL 141.1549.

16.      Accordingly, just like the Governor, Article XI, section 1 of the Michigan Constitution requires the Emergency Manager to take and subscribe to the following oath:

> I do solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution of this state, and that I will faithfully discharge the duties of the office of . . . . . . . . . according to the best of my ability. [Mich Const 1963, art XI, § 1.]

17.      Furthermore, section 1 of the Constitutional Oath of Office Act ("PA 22") requires that: "[a]ll persons now employed, or who may be employed by the state of Michigan . . . shall, as a condition of their employment, take and subscribe to the oath or affirmation required of members of the legislature and other public officers by section 2 of article 16 of the constitution of 1908 of the state of Michigan [(*i.e.*, the predecessor of Mich Const 1963, art 11, § 1)]." MCL 15.151.

18.      On March 14, 2013, the Emergency Manager did in fact swear the following oath, which was later filed with the Michigan Secretary of State: "I do solemnly swear that I will support the Constitution of the United States and the Constitution of this State, and that I will faithfully discharge the duties of the office of Emergency Financial Manager – City of Detroit according to the best of my ability." This oath of office is attached as **Exhibit B**.

**C.      The Michigan Constitution Commands That Accrued Financial Benefits Of A Pension Plan May Not Be Diminished Or Impaired**

19.      The first paragraph of Article IX, section 24 of the Michigan Constitution demands that "the accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Mich Const 1963, art IX, § 24.

5

20.    This constitutional provision (adopted by the people of this State) is a solemn guarantee that -- absent a constitutional amendment duly adopted by the people of this State -- accrued pension benefits of each pension plan and retirement system of the state and its political subdivisions (including those of the City) shall not be impaired.

21.    The second paragraph of Article IX, section 24 of the Michigan Constitution demands that "financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities." Mich Const 1963, art IX, § 24.

22.    This constitutional provision (adopted by the people of this State) mandates that municipalities timely deposit with their respective public employee pension systems moneys sufficient to cover actuarial liabilities.

23.    Article I, section 10 of the Michigan Constitution demands that "[n]o . . . law impairing the obligation of contract shall be enacted."

24.    In accordance with the above-cited constitutional guarantees, section 12(1)(m)(ii) of PA 436 states that if appointed sole trustee of either of the Retirement Systems, "[t]he emergency manager shall fully comply with . . . section 24 of article IX of the state constitution of 1963." MCL 141.1552(1)(m)(ii).

25.    Likewise, section 11(1)(d) of PA 436 requires that any financial and operating plan developed by the Emergency Manager shall provide for "[t]he timely deposit of required payments to the pension fund for the local government or in which the local government participates." MCL 141.1551(1)(d).

6

**D.**    **The City Owes And Will Owe The Retirement Systems Substantial Sums For Accrued Financial Benefits The City Promised To Pay Its Employees**

26.    Over the last several decades, the City and its employees have entered into collective bargaining agreements wherein the City promised to provide its employees with pension benefits and accordingly make annual pension contributions to the Retirement Systems.

27.    In reliance on those contractual promises, tens of thousands of City employees served the City and, thus, pursuant to their applicable collective bargaining agreements, became entitled to receive their pensions (*i.e.*, accrued financial benefits).

28.    At present, the City owes the Retirement Systems tens of millions of dollars for past annual pension contributions; the present non-payment of which is in violation of, among other laws, Article IX, section 24 of the Michigan Constitution, section 20m of the Public Employee Retirement System Investment Act, 1965 PA 314 (as amended), MCL 38.1132 *et seq.* ("PA 314"), section 11(1)(d) of PA 436, and Article 11, section 101 of the City's Charter.

29.    Despite these legal requirements, the Emergency Manager has made clear through his public statements and various public reports that he has no intention of causing the City to make its past annual pension contributions to the Retirement Systems.

30.    If the City further and permanently evades its obligation to make its past annual pension contributions to the Retirement Systems by way of impairment of that obligation in a Chapter 9 bankruptcy proceeding or otherwise, the accrued financial benefits of the Retirement Systems and their participants will be diminished and impaired.

31.    Moving forward the City also has an obligation to pay into the Retirement Systems substantial sums for accrued financial benefits.

32.    If the City further and permanently evades its obligation to make its future annual pension contributions to the Retirement Systems by way of impairment in a Chapter 9

7

bankruptcy proceeding or otherwise, the accrued financial benefits of the Retirement Systems and their participants will be diminished and impaired.

**E.  Defendants' Unlawful Plan To Impair And Diminish Plaintiffs' Accrued Financial Benefits By Way Of A Chapter 9 Bankruptcy Proceeding**

33.     On March 26, 2013, after having found that the City was in severe financial distress, the Governor (and the State Treasurer) caused Kevyn Orr to be appointed as the Emergency Manager of the City.

34.     Michigan's contract with the Emergency Manager for emergency manager services provides that "[t]he Emergency Manager's role is to remedy the financial distress of the City by requiring, within available resources, prudent fiscal management and an efficient provision of municipal services by exercising the necessary authority conferred herein to take appropriate action on behalf of the City and its residents."

35.     The contract does not expressly authorize the Emergency Manager to take any action that would impair the accrued financial benefits of Plaintiffs.

36.     Chapter 9 sets forth the process by which a municipality may file for bankruptcy and seek to have its debts adjusted. 11 USC §§ 901 *et seq.*

37.     A limitation on this immense federal power is that a municipality may <u>only</u> become a debtor under Chapter 9 if such entity "is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter." 11 USC §§ 109(c)(2).

38.     In Michigan, section 18 of PA 436 grants to the Governor the authority to authorize the Emergency Manager to initiate a Chapter 9 bankruptcy proceeding on behalf of the City:

8

> If, in the judgment of the emergency manager, no reasonable
> alternative to rectifying the financial emergency of the local
> government which is in receivership exists, then the emergency
> manager may recommend to the governor and the state treasurer
> that the local government be authorized to proceed under chapter
> 9. If the governor approves of the recommendation, the governor
> shall inform the state treasurer and the emergency manager in
> writing of the decision . . .Upon receipt of the written approval, the
> emergency manager is authorized to proceed under chapter 9. This
> section empowers the local government for which an emergency
> manager has been appointed to become a debtor under title 11 of
> the United States Code, 11 USC 101 to 1532, as required by
> section 109 of title 11 of the United States Code, 11 USC 109, and
> empowers the emergency manager to act exclusively on the local
> government's behalf in any such case under chapter 9. [MCL
> 141.1558.]

39.     Along those same lines, section 26(1) of PA 436 states, *inter alia*, that "with the

written approval of the governor, a local government may file a petition under Chapter 9 and

exercise powers pursuant to federal bankruptcy law if the local government adopts a resolution . .

. that declares a financial emergency . . . ." MCL 141.1566(1).

40.     And, section 26(2) of PA 436 goes on to state, among other things, that "[t]he

governor may place contingencies on a local government in order to proceed under chapter 9"

and "upon receipt of the written approval and subject to this subsection, the local government

may proceed under Chapter 9 and exercise powers under federal bankruptcy law." MCL

141.1566(2).

41.     Nothing in PA 436, however, expressly authorizes the Governor or Emergency

Manager to seek to have municipal pension debts or the accrued financial benefits of municipal

pension plans impaired under Chapter 9.

42.     Nevertheless, since his appointment, the Emergency Manager has made public

that he intends to do an end-run around Article IX, section 24 of the Michigan Constitution by

asking the Governor to authorize an unconditional Chapter 9 proceeding wherein the Emergency

9

Manager will seek to have the City's pension debts and the accrued financial benefits of the Retirement Systems impaired.

43.     More specifically, the Emergency Manager has made it abundantly clear that he intends to diminish or eliminate the accrued financial benefits of the Retirement Systems and their participants by way of impairment under Chapter 9 unless such benefits are "voluntarily" diminished or impaired.

44.     For example, in the May 12, 2013 Financial Operating Plan for the City of Detroit, the Emergency Manager states that:

> [T]he City faces substantial unfunded OPEB obligations for retiree medical expenses, most recently estimated at $5.7 billion, and hundreds of millions of dollars (perhaps billions based on more recent actuarial calculations with more conservative assumptions) in pension funding requirements. Recently, tens of millions of dollars of pension funding and other payments have been deferred to manage a severe liquidity crisis at the City. Even with these deferrals, the City has operated at a significant and increasing deficit. It is expected that the City will end this fiscal year with approximately $125 million in accumulate deferred obligations and a precariously low cash position.

45.     On June 14, 2013, the Emergency Manager issued his Proposal for Creditors (the "Restructuring Proposal"). In his Restructuring Proposal, the Emergency Manager states that:

> • As set forth above, preliminary analysis indicates that the underfunding in the GRS and PFRS is approximately $3.5 billion. At this level of underfunding, the City would have to contribute approximately $200 million to $350 million annually to fully fund currently accrued, vested benefits. Such contributions will not be made under the plan.
>
> • Claims for the underfunding will be exchanged for a pro rata (relative to all unsecured claims) principal amount of new Notes.
>
> • Because the amounts realized on the underfunding claims will be substantially less than the underfunding amount, there must be significant cuts in accrued, vested pension amounts for both active and currently retired person.

10

46.    To summarize and add clarity to the above excerpted provisions, the Emergency Manager's Restructuring Proposal takes the position that pension debts are "unsecured claims" that may be, and must be, impaired in any prospective Chapter 9 bankruptcy of the City.

47.    The Emergency Manager's Restructuring Proposal further proposes to place the City's alleged approximate $3.5 billion underfunding liability in a pool of claims comprising a total of approximately $11.5 billion in unsecured claims, and then have those claims exchanged for a *pro rata* share of an unsecured note in the face amount of $2.0 billion.

48.    As such, the Emergency Manager's Restructuring Proposal would diminish and impair the accrued pension benefits of the participants in the Retirement Systems.

49.    Notably, there has been no indication by the Emergency Manager that his Restructuring Proposal will not also serve as a template for the plan of adjustment that the Emergency Manager would propose and seek to confirm in a Chapter 9 bankruptcy proceeding. Indeed, in a June 13, 2013 interview with The Detroit Free Press, the Emergency Manager made the following statements:

> Q:    You said in this report that you don't believe there is an obligation under our state constitution to pay pensions if the city can't afford it?
>
> A:    The reason we said it that way is to quantify the bankruptcy question. We think federal supremacy trumps state law.
>
> Q:    Which the 9th Circuit agrees for now.
>
> A:    It is what it is – so we said that in a soft way of saying, "Don't make us go into bankruptcy." If you think your state-vested pension rights, either as an employee or retiree – that's not going to protect you. If we don't reach an agreement one way or the other, we feel fairly confident that the state federal law, federalism, will trump state law or negotiate. The irony of the situation is we might reach a deal with creditors quicker because employees and retirees think there is some benefit and that might force our hand. That might force a bankruptcy. [*Detroit's Emergency*

11

*Manager Talks About City's Future*, June 16, 2013 (The Detroit Free Press), attached as **Exhibit C.**]

50.     The Governor has publically proclaimed his support for the Emergency Manager and stated that the filing of a Chapter 9 bankruptcy remains a viable option. *What Snyder, Bing said about Detroit emergency manager 45-day report, Detroit Free Press,* May 12, 2013, http://www.freep.com/article/20130512/NEWS01/305120162/kevyn-orr-quotes-report-45-day-city-financial-crisis-emergency-manager.

51.     At no time has the Governor stated that he will make any Chapter 9 authorization "contingent" on the requirement that the City's pension debts not be impaired.

52.     Even in a recent filing in *Flowers v Snyder*, Case No. 13-729-CZ, pending before the Ingham County Circuit Court, the Governor did not deny that he is poised to authorize the Emergency Manager to proceed under Chapter 9 without any conditions whatsoever.

53.     The Emergency Manager and/or his spokesperson have stated on several occasions that a decision as to whether to file a Chapter 9 bankruptcy petition would likely be made as soon as by the end of the current week.

54.     At no time has the Emergency Manager stated that he will not seek to have the City's pension debts impaired under Chapter 9, or even that his proposed Plan of Reorganization will not request that the City's pension debts be impaired.

55.     Accordingly, it appears imminent that the Governor will grant to the Emergency Manager the unconditional power to proceed under Chapter 9 and the Emergency Manager will seek to have the City's pension debts impaired pursuant to Chapter 9 unless the Retirement Systems and their participants accept the Emergency Manager's unilateral imposition of significant impairments to their accrued financial benefits.

12

COUNT I
DECLARATORY JUDGMENT
The Governor May Not Take Any Action Which Would Cause The City's Pension Debts
To Be Subject To Impairment In A Chapter 9 Bankruptcy

56.    Plaintiffs incorporate paragraphs 1-55 and 81-102 of this Complaint with the same force and effect as if fully set forth herein.

57.    The Governor must uphold and abide by the Michigan Constitution and may not take any action that violates same.

58.    The Governor may not do indirectly what he is forbidden from doing directly.

59.    Article I, section 10 of the Michigan Constitution demands that "[n]o . . . law impairing the obligation of contract shall be enacted."

60.    The Retirement Systems and their participants' right to receive accrued financial benefits is contractually provided for by numerous collective bargaining agreements entered into with the City.

61.    Article IX, section 24 of the Michigan Constitution demands that "the accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby."

62.    If the Governor issues an unconditional Chapter 9 authorization to the Emergency Manager, the Emergency Manager has made clear that he will seek to have City's pension debts impaired in Chapter 9.

63.    Any such impairment of the City's pension debts in Chapter 9 will diminish and impair the accrued financial benefits of the Retirement Systems and their participants in violation of Article IX, section 24 of the Michigan Constitution.

13

64.     Any such impairment of the City's pension debts in Chapter 9 will also impair the City's obligation under the collective bargaining agreements in violation of Article I, section 10 of the Michigan Constitution.

65.     While section 18 and 26 of PA 436 grant to the Governor the authority to authorize the Emergency Manager to proceed under Chapter 9, nothing in PA 436 (or any Michigan law for that matter) expressly authorizes the Governor or Emergency Manager to seek to have the City's pension debts impaired under Chapter 9.

66.     To the contrary, section 12(1)(m)(ii) of PA 436 states that if appointed sole trustee of the Retirement Systems "[t]he emergency manager shall fully comply with . . . section 24 of article IX of the state constitution of 1963," MCL 141.1552(1)(m)(ii), and section 11(1)(d) of PA 436 requires that any financial and operating plan developed by the Emergency Manager shall provide for "[t]he timely deposit of required payments to the pension fund for the local government or in which the local government participates," MCL 141.1551(1)(d).

67.     When enacting PA 436 it must be presumed that the Legislature did not intend to violate Article IX, section 24 or Article I, section 10 of the Michigan Constitution.

68.     PA 436 must be construed in such a way as to save it from being unconstitutional.

69.     The only way to save PA 436 from being unconstitutional is to read section 26(2) of PA 436 as requiring that the Governor condition any Chapter 9 authorization on the contingency that the Emergency Manager (and any designee with power to take action on behalf of the City) not seek or accede to any impairment of the City's pension debts in such Chapter 9 bankruptcy proceeding.

70.     Similarly, the only way for the Governor to avoid violating Article IX, section 24 and Article I, section 10 of the Michigan Constitution is to condition any Chapter 9 authorization

14

on the contingency that the Emergency Manager (and any designee with power to take action on behalf of the City) not seek or accede to any impairment of the City's pension debts in such Chapter 9 bankruptcy proceeding.

71.     Section 26(2) of PA 436, itself, provides that the Governor may condition his Chapter 9 authorization on "contingencies" the Emergency Manager must follow in order to proceed under Chapter 9.

72.     As such, the Governor may authorize the Emergency Manager to proceed under Chapter 9, but only on the condition that the City's pension debts not be impaired in Chapter 9.

73.     Because the Governor has consistently proclaimed his support for the Emergency Manager who, in turn, has made clear his intention to have the City's pension debts discharged under Chapter 9, there exists a real and imminent threat that the Governor may issue to the Emergency Manager an unconditional authorization to proceed under Chapter 9.

74.     There is an actual controversy between the parties as to the constitutionality and validity of PA 436 and the ability of the Governor to issue to the Emergency Manager the unconditioned authority to proceed under Chapter 9 and seek to impair the City's pension debts.

75.     The Retirement Systems have a substantial interest in safeguarding the accrued financial benefits owed by the City; in fact, the Retirement Systems were created precisely for that purpose.

76.     The interest of the Retirement Systems, both directly and through their participants, in the accrued financial benefits owed by the City is different from the citizenry at large because the City does not owe accrued financial benefits to the citizenry at large and because the City did not enter into collective bargaining agreements with the citizenry at large.

15

77.     A present adjudication of this controversy is necessary to guide the future conduct of the parties and preserve their legal rights.

78.     The declaratory relief here requested will avoid a multiplicity of actions at law.

79.     This Court must therefore advise the Governor of his legal obligations under Michigan law on an expedited basis and by way of a declaratory judgment.

80.     If, before the Court is able to grant the declaratory relief requested above, the Governor attempts to grant to the Emergency Manager an unconditional authorization to proceed under Chapter 9, Plaintiffs request that this Court immediately issue an injunction prohibiting the Emergency Manager from acting pursuant to the Governor's purported and unconstitutional Chapter 9 authorization until such time as Plaintiffs' request for declaratory relief has been fully adjudicated.

## COUNT II
## DECLARATORY JUDGMENT
### The Emergency Manager May Not Take Any Action Which Would Cause The City's Pension Debts To Be Subject To Impairment In A Chapter 9 Bankruptcy

81.     Plaintiffs incorporate paragraphs 1-80 of this Complaint with the same force and effect as if fully set forth herein.

82.     The Emergency Manager must uphold and abide by the Michigan Constitution and may not take any action that violates same.

83.     The Emergency Manager may not do indirectly what he is forbidden from doing directly.

84.     Article I, section 10 of the Michigan Constitution demands that "[n]o . . . law impairing the obligation of contract shall be enacted."

16

85.   The Retirement Systems and their participants' right to receive accrued financial benefits is contractually provided for by numerous collective bargaining agreements entered into with the City.

86.   Article IX, section 24 of the Michigan Constitution demands that "the accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby."

87.   If the Emergency Manager proceeds under Chapter 9 and has the City's pension debts impaired in Chapter 9, such impairment of the City's pension debts in Chapter 9 will diminish and impair the accrued financial benefits of the Retirement Systems and their participants in violation of Article IX, section 24 of the Michigan Constitution.

88.   Any such impairment of the City's pension debts in Chapter 9 will also impair the City's obligation under the collective bargaining agreements in violation of Article I, section 10 of the Michigan Constitution.

89.   While section 18 and 26 of PA 436 grant to the Governor the authority to authorize the Emergency Manager to proceed under Chapter 9, nothing in PA 436 (or any Michigan law for that matter) expressly authorizes the Emergency Manager to seek to have the City's pension debts impaired under Chapter 9.

90.   To the contrary, section 12(1)(m)(ii) of PA 436 states that if appointed sole trustee of the Retirement Systems "[t]he emergency manager shall fully comply with . . . section 24 of article IX of the state constitution of 1963," MCL 141.1552(1)(m)(ii), and section 11(1)(d) of PA 436 requires that any financial and operating plan developed by the Emergency Manager shall

17

provide for "[t]he timely deposit of required payments to the pension fund for the local government or in which the local government participates," MCL 141.1551(1)(d).

91.    When enacting PA 436 it must be presumed that the Legislature did not intend to violate Article IX, section 24 or Article I, section 10 of the Michigan Constitution.

92.    PA 436 must be construed in such a way as to save it from being unconstitutional.

93.    The only way to save PA 436 from being unconstitutional is to read section PA 436 as not authorizing an impairment of pension debts under Chapter 9 and conditioning any Chapter 9 authorization on the protection of accrued pension benefits.

94.    Similarly, the only way for the Emergency Manager (and any designee with power to take action on behalf of the City) to avoid violating Article IX, section 24 and Article I, section 10 of the Michigan Constitution is to refrain from seeking or acceding to any impairment of the City's pension debts in a Chapter 9 bankruptcy proceeding.

95.    Because the Emergency Manager has made clear his intention to have the City's pension debts impaired under Chapter 9, and because the Governor has stated that he would be willing to grant such authority to the Emergency Manager, there exists a real and imminent threat that the Emergency Manager may proceed under Chapter 9 in order to have the City's pension debts impaired.

96.    There is thus an actual controversy between the parties as to the constitutionality and validity of PA 436 and the ability of the Emergency Manager to proceed under Chapter 9 and have discharged the City's pension debts.

97.    The Retirement Systems have a substantial interest in safeguarding the accrued financial benefits owed by the City; in fact, the Retirement systems were created precisely for that purpose.

18

98.     The interest of the Retirement Systems, both directly and through their participants, in the accrued financial benefits owed by the City is different from the citizenry at large because the City does not owe accrued financial benefits to the citizenry at large and because the City did not enter into collective bargaining agreements with the citizenry at large.

99.     A present adjudication of this controversy is necessary to guide the future conduct of the parties and preserve their legal rights.

100.    The declaratory relief here requested will avoid a multiplicity of actions at law.

101.    This Court must therefore advise the Emergency Manager of his legal obligations under Michigan law on an expedited basis and by way of a declaratory judgment.

102.    If, before the Court is able to grant the declaratory relief requested above, the Governor attempts to grant to the Emergency Manager an unconditional authorization to proceed under Chapter 9, Plaintiffs request that this Court immediately issue an injunction prohibiting the Emergency Manager from acting pursuant to the Governor's purported and unconstitutional Chapter 9 authorization until such time as Plaintiffs' request for declaratory relief has been fully adjudicated.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that, on an expedited basis, this Court issue an Order:

(a) declaring that PA 436 does <u>not</u> expressly grant to the Governor the authority to authorize the Emergency Manager to take actions that will result in the impairment of the City of Detroit's pension debts, but rather, when read in conjunction with Article IX, section 24 and Article I, section 10 of the Michigan Constitution, requires that the Governor refrain from authorizing the Emergency Manager to take any action that causes the City's pension debts to be subject to impairment under Chapter 9 or, alternatively, that, <u>if</u> PA 436 implicitly grants to the Governor the authority to authorize the Emergency Manager to take actions that impair the City of Detroit's pension debts, <u>then</u> PA 436 contravenes Article IX, section 24 and Article I, section 10 of the Michigan Constitution and is of no force or effect;

19

(b) declaring that PA 436 does <u>not</u> expressly grant to the Emergency Manager the authority to take actions that will result in the impairment of the City of Detroit's pension debts, but rather, when read together with Article IX, section 24 and Article I, section 10 of the Michigan Constitution, precludes the Emergency Manager from taking any action that causes the City's pension debts to be subject to impairment under Chapter 9 or, alternatively, that, <u>if</u> PA 436 implicitly grants to the Emergency Manager the authority to take actions that impair the City of Detroit's pension debts, <u>then</u> PA 436 contravenes Article IX, section 24 and Article I, section 10 of the Michigan Constitution and is of no force or effect;

(c) enjoining the Emergency Manager, if necessary, from acting pursuant to any future unconstitutional Chapter 9 authorization of the Governor; and

(d) granting to Plaintiffs any further such relief this Court deems equitable and just.


Respectfully submitted,

CLARK HILL PLC


By: _____
Ronald A. King (P45088)
Aaron O. Matthews (P64744)
Michael J. Pattwell (P72419)
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys for Plaintiffs

Date:   July 17, 2013

20

**EXHIBIT 6.2**

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM**

THE GENERAL RETIREMENT SYSTEM
OF THE CITY OF DETROIT, and THE
POLICE AND FIRE RETIREMENT
SYSTEM OF THE CITY OF DETROIT,

*Gracie Webster and Veronica Thomas*

Plaintiffs,

vs.

*State of Michigan*

~~KEVYN D. ORR, in his official capacity as the~~
EMERGENCY MANAGER OF THE CITY OF
~~DETROIT,~~ and RICHARD SNYDER, in his
official capacity as the GOVERNOR OF THE
STATE OF MICHIGAN, *and Andy Dillon, Treasurer in his official Capacity*

Defendants.

Case No. ~~13-768-CZ~~ *13.000734-CZ C30*

Hon. *Rosemarie Aquilina*

Ronald A. King (P45088)
Aaron O. Matthews (P64744)
Michael J. Pattwell (P72419)
CLARK HILL PLC
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys for Plaintiffs

*John R Canzano P30417*
*McKnight, McCloo, Canzano Smith & Radtke PC*
*400 Galleria Officenter*

**TEMPORARY RESTRAINING ORDER**

At a session of said Court, held in the City of
Lansing, County of Ingham, State of Michigan
on _____ *18 July 13* _____

PRESENT: HON. _____ *Rosemarie E Aquilina* _____
CIRCUIT COURT JUDGE

*and having appeal during the hearing for a TRO in 13.000734*

This matter having come before the Court on Plaintiffs' Complaint with verification and *Declaratory Judgment and Preliminary Injunction,* ~~Ex Parte~~ Motion for a Temporary Restraining Order; the Court being fully advised in the premises; Plaintiffs having shown a likelihood of success on the merits of the claims in

9214431.1 14893/144127

Plaintiffs' Complaint; Plaintiff having adequately shown that a failure to immediately issue a Temporary Restraining Order will cause irreparable injury to Plaintiffs by permitting the Governor and the Emergency Manager ("Defendants") to authorize and file a Chapter 9 bankruptcy petition wherein Plaintiffs' accrued financial benefits will be impaired prior this Court's scheduled preliminary injunction hearing on Monday, July 22, 2013; and the Court being otherwise fully informed in the premises and finding good cause: *which has already occurred*

IT IS HEREBY ORDERED that Plaintiffs' Motion is granted;

IT IS FURTHER ORDERED that Defendants are immediately and temporarily enjoined and restrained from taking any action (including the authorization of an unconditional Chapter 9 bankruptcy proceeding for the City of Detroit and/or the filing of a Chapter 9 bankruptcy *or taking any further action with respect to any filing* petition) that may: (i) cause the accrued financial benefits of the Retirement Systems or their participants from in any way being diminished or impaired as mandated by Article IX, section 24, of the Michigan Constitution, or (ii) otherwise abrogate Article IX, section 24, of the Michigan Constitution;

IT IS FURTHER ORDERED that the Court shall hold a hearing on ___*July 22*___, 2013 at ___*9:00* AM___ whereby Defendants shall show cause why a *Declaratory Judgment and/or* Preliminary Injunction shall not issue; and

IT IS FURTHER ORDERED that this temporary restraining order shall remain in full *further order of the Court* force and effect until ~~___, 2013 at 5:00 p.m.~~

IT IS SO ORDERED.

*Rosemarie E Aquilina*
CIRCUIT COURT JUDGE   P37670

DATE: *18 July 13*

TIME: *4:25 p.m.*

2

*30th*

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

THE GENERAL RETIREMENT SYSTEM
OF THE CITY OF DETROIT, and THE
POLICE AND FIRE RETIREMENT
SYSTEM OF THE CITY OF DETROIT,

    Plaintiffs,

vs.

KEVYN D. ORR, in his official capacity as the
EMERGENCY MANAGER OF THE CITY OF
DETROIT, and RICHARD SNYDER, in his
official capacity as the GOVERNOR OF THE
STATE OF MICHIGAN,

    Defendants.

*Flowers caption*

*729-CZ*

Case No. 13-768-CZ

Hon. *Rosemarie E. Aquilina*

Ronald A. King (P45088)
Aaron O. Matthews (P64744)
Michael J. Pattwell (P72419)
CLARK HILL PLC
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys for Plaintiffs

*Flowers attorneys*

---

### TEMPORARY RESTRAINING ORDER

At a session of said Court, held in the City of
Lansing, County of Ingham, State of Michigan
on _____ 18 _____ July _____ 13 _____

PRESENT: HON. *Rosemarie E. Aquilina*
    CIRCUIT COURT JUDGE   *Amended Verified*

This matter having come before the Court on Plaintiffs' Complaint ~~with verification~~ and
~~Ex Parte~~ Motion for a ~~Temporary Restraining Order~~ *Preliminary Injunction*; the Court being fully advised in the
premises; Plaintiffs having shown a likelihood of success on the merits of the claims in

9214431.1 14893/144127

Plaintiffs' Complaint; Plaintiff having adequately shown that a failure to immediately issue a ~~Temporary Restraining Order~~ *Real Preliminary Injunction* will cause irreparable injury to Plaintiffs by permitting the

Governor ~~and the Emergency Manager~~ *and the State Treasurer* ("Defendants") to authorize ~~and file a~~ Chapter 9 *(or otherwise proceed with* *on behalf of the City of Detroit, or to aid in such a filing proceeding*

bankruptcy petition) wherein Plaintiffs' accrued financial benefits will be impaired ~~prior this~~

~~Court's scheduled preliminary injunction hearing on Monday, July 22, 2013~~; and the Court being

otherwise fully informed in the premises and finding good cause:

IT IS HEREBY ORDERED that Plaintiffs' Motion is granted;

IT IS FURTHER ORDERED that Defendants are immediately and ~~temporarily~~ *(preliminary) preliminarily* enjoined

and restrained from taking any action (including the authorization of an ~~unconditional~~ Chapter 9

bankruptcy proceeding for the City of Detroit and/or the filing of a Chapter 9 bankruptcy

*or any action in or aid and assistance as to the same,* petition) ~~that may: (i) cause the accrued financial benefits of the Retirement Systems or their~~

~~participants from in any way being diminished or impaired as mandated by Article IX, section~~

~~24, of the Michigan Constitution, or (ii) otherwise abrogate Article IX, section 24, of the~~

~~Michigan Constitution;~~

IT IS FURTHER ORDERED that the Court shall hold a hearing on _____, 2013 at

_____ whereby Defendants shall show cause why a Preliminary Injunction shall not issue; and

IT IS FURTHER ORDERED that this ~~temporary restraining order~~ *preliminary injunction until* shall remain in full

*further order of the court* ~~force and effect until _____, 2013 at 5:00 p.m.~~

IT IS SO ORDERED.

*Rosemarie E Aquilina*
CIRCUIT COURT JUDGE
*P. 37670*

DATE: _18 July 13_

TIME: _4:25 p.m._

2

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

THE GENERAL RETIREMENT SYSTEM
OF THE CITY OF DETROIT, and THE
POLICE AND FIRE RETIREMENT
SYSTEM OF THE CITY OF DETROIT,

        Plaintiffs,

    vs.

KEVYN D. ORR, in his official capacity as the
EMERGENCY MANAGER OF THE CITY OF
DETROIT, and RICHARD SNYDER, in his
official capacity as the GOVERNOR OF THE
STATE OF MICHIGAN,

        Defendants.

Case No. 13-768-CZ

Hon. *Rosemarie E. Aquilina*

_____/

Ronald A. King (P45088)
Aaron O. Matthews (P64744)
Michael J. Pattwell (P72419)
CLARK HILL PLC
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys for Plaintiffs

_____/

## TEMPORARY RESTRAINING ORDER

At a session of said Court, held in the City of
Lansing, County of Ingham, State of Michigan
on _____ 18 July 13 _____

PRESENT: HON. *Rosemarie E. Aquilina*
        CIRCUIT COURT JUDGE

    This matter having come before the Court on Plaintiffs' Complaint with verification and

*Ex-Parte* Motion for a Temporary Restraining Order; the Court being fully advised in the

premises; Plaintiffs having shown a likelihood of success on the merits of the claims in

9214431.1 14893/144127

Plaintiffs' Complaint; Plaintiff having adequately shown that a failure to immediately issue a Temporary Restraining Order will cause irreparable injury to Plaintiffs by permitting the Governor and the Emergency Manager ("Defendants") to authorize and file a Chapter 9 bankruptcy petition wherein Plaintiffs' accrued financial benefits will be impaired prior this Court's scheduled preliminary injunction hearing on Monday, July 22, 2013; and the Court being otherwise fully informed in the premises and finding good cause:

IT IS HEREBY ORDERED that Plaintiffs' Motion is granted;

IT IS FURTHER ORDERED that Defendants are immediately and temporarily enjoined and restrained from taking any further action ~~(including the authorization of an unconditional Chapter 9 bankruptcy proceeding for the City of Detroit and/or the filing of a Chapter 9 bankruptcy petition)~~ that may: (i) cause the accrued financial benefits of the Retirement Systems or their participants from in any way being diminished or impaired as mandated by Article IX, section 24, of the Michigan Constitution, or (ii) otherwise abrogate Article IX, section 24, of the Michigan Constitution;

IT IS FURTHER ORDERED that the Court shall hold a hearing on *22 July*, 2013 at *9:00 AM* whereby Defendants shall show cause why a Preliminary Injunction shall not issue; and

IT IS FURTHER ORDERED that this temporary restraining order shall remain in full force and effect until *1 AUG*, 2013 at 5:00 p.m.

IT IS SO ORDERED.

*Rosemarie E Aquilina*
CIRCUIT COURT JUDGE   *P37670*

DATE: *18 July 13*
TIME: *4:25*

2

# **EXHIBIT 6.3**

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

THE GENERAL RETIREMENT SYSTEM
OF THE CITY OF DETROIT, and THE
POLICE AND FIRE RETIREMENT
SYSTEM OF THE CITY OF DETROIT,

          Plaintiffs,                          Case No. 13-768-CZ

     vs.
                                               Hon. Rosemarie E. Aquilina

KEVYN D. ORR, in his official capacity as the
EMERGENCY MANAGER OF THE CITY OF
DETROIT, and RICHARD SNYDER, in his
official capacity as the GOVERNOR OF THE
STATE OF MICHIGAN,

          Defendants.

_____/

Ronald A. King (P45088)
Aaron O. Matthews (P64744)
Michael J. Pattwell (P72419)
CLARK HILL PLC
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys for Plaintiffs

_____/

## ORDER SETTING EXPEDITED BRIEFING SCHEDULE

At a session of said Court, held in the City of
Lansing, County of Ingham, State of Michigan
on_____19     July     13_____

PRESENT: HON. _Rosemarie E Aquilina_
                    CIRCUIT COURT JUDGE

This matter having come before the Court on Plaintiffs' Complaint with verification and

Motion for Expedited Briefing Schedule and Hearing Pursuant to MCR 2.605(D); the Court

being fully advised in the premises and finding good cause:

IT IS HEREBY ORDERED that:

1.   Plaintiffs shall file their Motion for Declaratory Judgment by July 23 , 2013;

2.   Defendants shall file their response brief(s) by July 26 , 2013; and

3.   The Court shall hold a hearing on Plaintiffs' Motion for Declaratory Judgment July 24 , 2013 at 9:00 a.m.

IT IS SO ORDERED.

Rosemarie E Aquilina
CIRCUIT COURT JUDGE    P37670

DATE: 19 July 13

TIME: 12³⁰ pM

2

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

THE GENERAL RETIREMENT SYSTEM
OF THE CITY OF DETROIT, and THE
POLICE AND FIRE RETIREMENT
SYSTEM OF THE CITY OF DETROIT,

            Plaintiffs,

    vs.

KEVYN D. ORR, in his official capacity as the
EMERGENCY MANAGER OF THE CITY OF
DETROIT, and RICHARD SNYDER, in his
official capacity as the GOVERNOR OF THE
STATE OF MICHIGAN,

            Defendants.

Case No. 13-768-CZ

Hon. Rosemarie E. Aquilina

_____/

Ronald A. King (P45088)
Aaron O. Matthews (P64744)
Michael J. Pattwell (P72419)
CLARK HILL PLC
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys for Plaintiffs

_____/

## AMENDED TEMPORARY RESTRAINING ORDER

At a session of said Court, held in the City of
Lansing, County of Ingham, State of Michigan
on _____ 19 July 13 _____

PRESENT: HON. _Rosemarie E Aquilina_
CIRCUIT COURT JUDGE

This matter having come before the Court on Plaintiffs' Complaint with verification and

*Ex-Parte* Motion for a Temporary Restraining Order and oral *ex-parte* motion for amendment to

the Temporary Restraining Order entered by the Court on July 18, 2013; the Court being fully

9216278.1 14893/161046

advised in the premises; Plaintiffs having shown a likelihood of success on the merits of the claims in Plaintiffs' Complaint; Plaintiffs having adequately shown that a failure to immediately issue a Temporary Restraining Order will cause irreparable injury to Plaintiffs by permitting the Governor and the Emergency Manager ("Defendants") to authorize and file a Chapter 9 bankruptcy petition, plan of adjustment, and/or other bankruptcy filings whereby Plaintiffs' accrued financial benefits may be impaired; and the Court being otherwise fully informed in the premises and finding good cause:

IT IS HEREBY ORDERED that Plaintiffs' Motion is granted;

IT IS FURTHER ORDERED that Defendants _and their agents and representatives_ are immediately and temporarily enjoined and restrained from taking any further action that may: (i) cause or further the accrued financial benefits of the Retirement Systems or their participants from in any way being diminished or impaired as mandated by Article IX, section 24, of the Michigan Constitution; or (ii) otherwise abrogates Article IX, section 24, of the Michigan Constitution;

IT IS FURTHER ORDERED that Defendants _and their agents and representatives_ are immediately and temporarily enjoined and restrained from filing with the United States Bankruptcy Court a plan of adjustment or any other filing pursuant to Chapter 9 of the United States bankruptcy code which seeks to impair or diminish the accrued financial benefits of the Retirement Systems or their participants;

IT IS FURTHER ORDERED that the Court shall hold a hearing on July 22, 2013 at 9:00 a.m. whereby Defendants shall show cause why a Preliminary Injunction shall not issue; and

IT IS FURTHER ORDERED that this temporary restraining order shall remain in full force and effect until _22 Aug_, 2013 at 5:00 p.m.

IT IS SO ORDERED.

2

*Rosemarie E. Aquilina*

CIRCUIT COURT JUDGE    P37670

DATE: 19 July 13

TIME: 12³⁰ PM

3

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

ROBBIE FLOWERS, MICHAEL WELLS,
JANET WHITSON, MARY WASHINGTON and
BRUCE GOLDMAN

                       Plaintiffs,

vs.

                                              Case No. 13-729-CZ
                                              Hon. Rosemarie Aquilina

RICK SNYDER, as the Governor of the State
of Michigan; ANDY DILLON, as the Treasurer of
the State of Michigan; and the STATE OF MICHIGAN,

                       Defendants.

---

| | |
|---|---|
| William A. Wertheimer (P26275) | Thomas Quasarano (P27982) |
| Attorney for plaintiffs | Brian Devlin (P34685) |
| 30515 Timberbrook Lane | Assistant Attorneys General |
| Bingham Farms, MI 48025 | PO Box 30754 |
| 248-644-9200 | Lansing, MI 48909 |
| billwertheimer@gmail.com | quasaranot@michigan.gov |

Andrew Nickeloff (P37990)
Marshall J. Widick (P53942)
James A. Britton (P71157)
Attorneys for plaintiffs
Sachs Waldman
1000 Farmer
Detroit, MI 48226
313-496-9429
anickelhoff@sachswaldman.com
mwidick@sachswaldman.com
jabritton@sachswaldman.com

---

*Amended*
**PRELIMINARY INJUNCTION**
At a session of the Court, held in the City of Lansing,
County of Ingham, State of Michigan
on ___19 July 13___

PRESENT: Hon. Rosemarie E. Aquilina
CIRCUIT COURT JUDGE

This matter having come before the Court on Plaintiffs' Amended Verified Complaint and Motion for a Preliminary Injunction; the Court being fully advised in the premises; Plaintiffs having shown a likelihood of success on the merits of the claims in Plaintiffs' Complaint; Plaintiffs having adequately shown that a failure to immediately issue a Preliminary Injunction will cause irreparable injury to Plaintiffs by permitting the Governor and the State Treasurer ("Defendants") to authorize or otherwise proceed with Chapter 9 bankruptcy petition on behalf of the City of Detroit, or to aid in such a proceeding, wherein Plaintiffs' accrued financial benefits will be impaired; and the Court being otherwise fully informed in the premises and finding good cause:

IT IS HEREBY ORDERED that Plaintiffs' Motion is granted;

IT IS FURTHER ORDERED that Defendants are immediately and preliminarily enjoined and restrained from taking any action as to the authorization of a Chapter 9 bankruptcy proceeding for the City of Detroit and/or the filing of a Chapter 9 bankruptcy petition, or any action in aid and assistance as to the same;

IT IS FURTHER ORDERED that this preliminary injunction shall remain in full force and effect until further order of the Court.

IT IS SO ORDERED.

_Rosemarie E. Aquilina_
CIRCUIT COURT JUDGE
P37670

DATE: 19 July 13
TIME: 11:30 a.m.

**EXHIBIT 6.4**

*Ingham County Circuit Court*
### *30th Judicial Circuit*
P.O. BOX 40771
LANSING, MI 48901-7971
TELEPHONE: (517) 483-6500

JANELLE A. LAWLESS
Chief Circuit Judge

SHAUNA DUNNINGS
Circuit Court Administrator



SHAUNA DUNNINGS
Acting Deputy Court
Administrator / Friend of the Court

RHONDA K. SWAYZE
Deputy Court Administrator /
General Trial Division

MAUREEN WINSLOW
Deputy Court Administrator /
Juvenile Division

---

## FACSIMILE TELECOMMUNICATION COVER SHEET

To: _____ *Crey  Ch  4* _____

Receiving Fax No: _____ 313  222  0592 _____

# of Pages (Including Cover Sheet): _____ 4 _____

Sent By: _____ *Rebecca Dewitt*    57 483 6508 _____

Date: _____ 7/19/2013 _____

Message:

_____ *Order    13 - 734 - CZ* _____

_____ *I am sending this order as I just* _____

_____ *became aware that it was entered today* _____

_____ *and you asked for any orders in this case* _____

_____ *as well as the other 2 cases.* _____

This fax was received by GFI FaxMaker fax server. For more information, visit: http://www.gfi.com

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

          Plaintiffs,

vs                                          Case No. 13-734-CZ
                                            Hon.   Rosemarie Aquilina

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

          Defendants.

_____/

ORDER OF DECLARATORY JUDGMENT

At a session of said Court held in Ingham County Circuit Court,
State of Michigan, this 19th day of July, 2013.

PRESENT: _Rosemarie E Aquilina_
          Circuit Court Judge

Plaintiffs request declaratory relief pursuant to MCR 2.605 concerning (1) the

constitutionality under Article IX Section 24 of the Michigan Constitution of the Local Financial

Stability and Choice Act, 2012 PA 436, MCL 141.1541, *et seq.* ("PA 436"), insofar as PA 436

permits the Governor to authorize an emergency manager to proceed under chapter 9 of the

bankruptcy code, chapter 9 of title 11 of the United States Code, 29 USC 901 to 946 ("Chapter

9") in a manner which threatens to diminish or impair accrued pension benefits; and (2) the

This fax was received by GFI FaxMaker fax server. For more information, visit: http://www.gfi.com/

authority of the Governor and/or State Treasurer to authorize an emergency manager to proceed under Chapter 9 in a manner which threatens to diminish or impair accrued pension benefits.

Plaintiffs have requested, and Defendants have agreed in their Response, that the hearing in this matter may be advanced pursuant to MCR 2.605(D) and the court finds that expedited treatment is appropriate and that final declaratory relief is proper at this time.

The Court having reviewed the parties filings and submissions, and having heard oral argument by counsel for the parties, and being otherwise fully advised in the premises, and for the reasons stated on the record,

IT IS HEREBY ORDERED:

PA 436 is unconstitutional and in violation of Article IX Section 24 of the Michigan Constitution to the extent that it permits the Governor to authorize an emergency manager to proceed under Chapter 9 in any manner which threatens to diminish or impair accrued pension benefits; and PA 436 is to that extent of no force or effect;

The Governor is prohibited by Article IX Section 24 of the Michigan Constitution from authorizing an emergency manager under PA 436 to proceed under Chapter 9 in a manner which threatens to diminish or impair accrued pension benefits, and any such action by the Governor is without authority and in violation of Article IX Section 24 of the Michigan Constitution.

On July 16, 2013, City of Detroit Emergency Manager Kevyn Orr submitted a recommendation to Defendant Governor Snyder and Defendant Treasurer Dillon pursuant to Section 18(1) of PA 436 to proceed under Chapter 9, which together with the facts presented in Plaintiffs' filings, reflect that Emergency Manager Orr intended to diminish or impair accrued pension benefits if he were authorized to proceed under Chapter 9.  On July 18, 2013, Defendant

This fax was received by GFI FaxMaker fax server. For more information, visit: http://www.gfi.com

Governor Snyder approved the Emergency Manager's recommendation without placing any contingencies on a Chapter 9 filing by the Emergency Manager; and the Emergency Manager filed a Chapter 9 petition shortly thereafter. By authorizing the Emergency Manager to proceed under Chapter 9 to diminish or impair accrued pension benefits, Defendant Snyder acted without authority under Michigan law and in violation of Article IX Section 24 of the Michigan Constitution.

In order to rectify his unauthorized and unconstitutional actions described above, the Governor must (1) direct the Emergency Manager to immediately withdraw the Chapter 9 petition filed on July 18, and (2) not authorize any further Chapter 9 filing which threatens to diminish or impair accrued pension benefits.

*A copy of this Order shall be transmitted to President Obama.*

*It is so Ordered.*

Circuit Court Judge

This fax was received by GFI FaxMaker fax server. For more information, visit: http://www.gfi.com