UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                         Chapter 9

CITY OF DETROIT, MICHIGAN          No. 13-53846
        Debtor.

                                    HON. STEVEN W. RHODES

_____/

## BRIEF IN SUPPORT OF PETITION FOR ORDER LIFTING STAY

In Detroit Branch NAACP, Michigan State Conference NAACP, Donnell White, individually and on behalf of Detroit Branch NAACP and Michigan State Conference NAACP, Thomas Stallworth III, individually, Rashida Tlaib, individually, and Maureen Taylor, individually, v. Rick Snyder, Andrew Dillon, and Ruth Johnson, in their Official Capacities, Now Stayed in the United States District Court Eastern District of Michigan, No. 13-12098.

In support of their petition, Petitioners as Plaintiffs in the Federal District Court Eastern District of Michigan No. 13-12098, state as follows:

It is clear that the Automatic Stay by itself pertaining to the City of Detroit does not apply to the above case. However, when this Court entered the Extension Order extending the Automatic Stay to Defendants Snyder and Dillon, the question arose of whether such an Extension Order, taken together with the automatic stay, applies to the case at hand when: **the case does not relate to the bankruptcy proceeding; Defendants and the City of Detroit do not have such identity where the Defendants can be considered the real debtor; the litigation cannot impact the City's ability to reorganize, the City's assets, nor would the City be required to devote its resources to the litigation where the City is not a named party; the stay does not effectuate the bankruptcy Court's main purpose to protect debtors and creditors, where the Petitioners**

1

**are not creditors, and Defendants are not debtors; and finally, the lawsuit was not contemplated either in the City's Motion nor this Court's Order, nor can the Order be read so broadly**. Petitioners unequivocally maintain that the Stay does not apply for the following reasons.

I. *This Court Should Lift the Stay in the Above Case As It is Not Related to the Bankruptcy Proceeding Nor is the Stay Necessary or Appropriate to Carry out the Provisions of the Bankruptcy Code*

Under its powers pursuant to 11 USC § 105(a), the Bankruptcy Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 USC § 105(a). The Sixth Circuit has held that a court may utilize its equitable power under section 105(a) of the Bankruptcy Code to extend the automatic stay to non-debtor entities in "unusual circumstances[,]" such as where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Am. Imaging Servs., Inc. v. Eagle-Picher Indus., Inc.* (*In re Eagle-Picher Indus., Inc.*), 963 F.2d 855, 861 (6th Cir. 1992). A Bankruptcy Court may also extend automatic stay under 11 USC § 362 to stay proceedings or actions by or against nondebtors where such actions would adversely affect the property of the debtor. *GAF Corp. v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 26 B.R. 405, 409 (Bankr. S.D.N.Y. 1983). Additionally**,** Bankruptcy courts have authority to stay litigation when it could impact debtors' ability to reorganize, litigation could take assets of the estate, and debtors would be required to devote resources to monitoring litigation. *Lane v. Phila. Newspapers, LLC* (*In re Phila. Newspapers, LLC*), 423 B.R. 98 (Bankr. E.D. Pa 2010). However, it is not within bankruptcy court's jurisdiction under 11 USC § 105 to prevent action that would not be "related to" the bankruptcy case. *Fisher v Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) (finding district

court case closely "related to" bankruptcy filing where investor claims involved same limited pool of money, in possession of same defendants, as result of same acts, performed by same individuals, as part of the same conspiracy).

The Extension Order cannot apply to the above case. The District Court agreed, stating "it is not apparent that any interests of the City of Detroit bankruptcy proceedings are implicated in the case." (**Exhibit A:** Order Regarding Notice of Pendency of Bankruptcy Case and Application of the Automatic Stay, August 22, 2013, attached to Brief, 2). Snyder and Dillon, as third-party non-debtors, should be required to make a showing of "extraordinary circumstances" that would justify their inclusion in the bankruptcy court's section 105 order. In order to do so, Snyder and Dillon would have to show an exceptionally tight connection or identity with the City of Detroit such that a suit against them is essentially a suit against the City. *See Am. Imaging Servs., Inc,* 963 F.2d at 861. There is no such "identity" between the City of Detroit and Defendants, whereby a judgment against Defendants would "in effect be a judgment or finding against the debtor," the City of Detroit. *Am. Imaging Servs., Inc.,* 963 F.2d at 861. Nor would any property of the City of Detroit be affected should the stay be lifted, **particularly here when the requested relief does not involve any of the City's assets**. There would be no effect whatsoever on the City's ability to reorganize, on the assets of the estate, and the debtors would be not be required to devote resources to monitoring litigation, as they are not even named in this lawsuit. Further, this case is not "related to" the bankruptcy filing. For these reasons, this Court should lift the stay.

3

## II. Even When the Extension Order is Considered As Part of the Automatic Stay, this Court Should Grant Petitioners Their Requested Relief Because the Five Factors Weigh in Their Favor

Petitioners also request that this Court grant them relief from the Automatic Stay, insofar as it encompasses the Extension Order and the extent to which they are read together. Section 362(d) of the Bankruptcy Code authorizes a bankruptcy court to grant relief from the Automatic Stay in limited circumstances. See 11 U.S.C. § 362(d). In particular, section 362(d)(1) of the Bankruptcy Code provides that a party in interest may obtain relief from the Automatic Stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d)(1).

"The Bankruptcy Code does not define 'cause' as used in [section] 362(d)(1). Therefore, under [section] 362(d), 'courts must determine whether discretionary relief is appropriate on a case by case basis.'" *Chrysler LLC v. Plastech Engineered Prods., Inc.* (*In re Plastech Engineered Prods., Inc.*), 382 B.R. 90, 106 (Bankr. E.D. Mich. 2008) (quoting *Laguna Assocs. L.P. v. Aetna Casualty & Surety Co*. (*In re Laguna Assocs. L.P.*), 30 F.3d 734, 737 (6th Cir. 1994)). The determination of whether to grant relief "resides within the sound discretion of the Bankruptcy Court." *Sandweiss Law Center, P.C. v. Kozlowski (In re Bunting*), No. 12-10472, 2013 WL 153309, at *17 (E.D. Mich. Jan. 15, 2013) (quoting *In re Garzoni*, 35 F. App'x 179, 181 (6th Cir. 2002)).

> To guide the bankruptcy court's exercise of its discretion . . . the Sixth Circuit identifies five factors for the court to consider: (1) judicial economy; (2) trial readiness; (3) the resolution of the preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; and (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors.

*Bunting*, 2013 WL 153309, at *17 (quoting *Garzoni*, 35 F. App'x at 181) (internal quotation marks omitted). In determining whether cause exists, however, "the bankruptcy court should base

4

its decision on **the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code**." *Plastech*, 382 B.R. at 106 (quoting *In re C & S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995)).

It is clear that all the factors, to the extent they are applicable to a third party non-creditor, addressed by the Sixth Circuit weigh in favor of this Court's removal of the stay and its extension as it pertains to Petitioners. Petitioners' claims cannot be resolved through the Bankruptcy court and, as discussed above, are not related to the Bankruptcy proceeding because Petitioners seek no money damages implicating the City's assets. Secondly, although trial has not yet commenced in the lawsuit, it is by far from the preliminary stages and given the important constitutional questions at stake, the case should be permitted to move forward. As to the third factor, the resolution of the preliminary bankruptcy issues have absolutely no effect on the lawsuit in question. Again they are completely unrelated and do not touch on the same issues involving the debtor's estate, contractual obligations, or other similar matters. The fourth factor, although, again Petitioners are not creditors, their chances of success on the merits are substantial. Lastly, for the final factor, the City of Detroit is not named in the above lawsuit and the costs of defense and impact of the litigation on other creditors is minimal. Because all five factors weigh in Petitioners' favor, this Court should lift, taken together, the automatic stay and extension order as it pertains to their case.

Finally, the Court "should base its decision on **the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code**." *Plastech*, 382 B.R. at 106 (quoting *In re C & S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995)). The Supreme Court stated:

> **No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.** Other rights, even the most basic, are illusory if the right to vote is undermined. Our Constitution

5

leaves no room for classification of people in a way that unnecessarily abridges this right.

*Wesberry v. Sanders*, 376 U.S. 1, 17-18 (1964).

Voters' rights under the First and Fourteenth Amendments were defined as "'the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters . . . to cast their votes effectively. Both of these rights, of course, **rank among our most precious freedoms.**'" *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983) (quoting *Williams v. Rhodes*, 393 U.S. 23, 30-31, (1968). The hardships of not having this case heard are immeasurable, as half of the total African-American population in Michigan has had their right to vote diluted.

Further, the stay in this case does not advance the goals of the Bankruptcy Code. The purpose of the stay in Bankruptcy proceedings is to "protect the debtor's interest." *Beacon Navigation GmbH v. Suzuki Motor Corp*., No. 13-11516, 2013 U.S. Dist. LEXIS 7088 at *5 (E.D. Mich. May, 20 2013) (citing *In re Johns-Manville Corp*., 26 B.R. 405, 409 (Bankr. S.D.N.Y. 1983) (explaining that "[a]lthough Section 105 may be used to extend [a] stay, Section 105 does not have a life of its own and this extension may only be accomplished within the proper boundaries of Section 362. That is, unless this extension is designed to protect the debtor's interests, it cannot be granted."). The legislative history of Section 362 notes that the automatic stay is designed to protect the debtor:

> *The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.*

> *See* S.Rep. No. 95-989, 95th Cong., 2d Sess. 54-55 (1978), U.S Code Cong. & Admin. News 1978, pp. 5787, 5840-41.

There is no debt or debtor to protect in this case. The automatic stay in Section 362 also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the *debtor's* assets prevents that. *See* H.R. Rep. No. 95-595, 95th Cong., 2nd Sess. 340 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5840-41. The proper scope of the Bankruptcy Court is to issue a stay that anticipates the protection of *creditors* from the injustice of a race for the *debtor's* assets. Here, not only is the City of Detroit, the debtor, not a party to this lawsuit, the Petitioners here are not "creditors" within the meaning of the Bankruptcy Code. They are not seeking damages from the City of Detroit, enforcing contracts, or requesting any relief, at all, from the City of Detroit. Because this case does not fall within the scope of the Bankruptcy Court's interest in the protection of creditors and debtors, this Court should lift the stay as it pertains to Petitioners.

### III. This Court Should Lift the Stay Because This Case Was Not Named in the City's Motion, Nor Contemplated By the Court's Order

Given the limitations for an extension order to proceedings relating to bankruptcy cases discussed above in "special circumstances" and the protections in mind for which they are to apply, the Extension Order here was granted to address particular concerns raised in the City of Detroit's motion. In its Motion, Debtor named several lawsuits (collectively, the "Prepetition Lawsuits"), that were filed "during the period immediately prior to the Petition Date." (Docket No. 56, 5). The Motion states that these suits were filed "*effectively seeking to frustrate the commencement of this chapter 9 case due to the protections and powers that the City would enjoy if a case were commenced.*" (Docket No. 56, 5). The City of Detroit requested the Order to "(a) aid in the administration of its bankruptcy case, (b) protect and preserve its property for the

7

benefit of citizens and stakeholders and (c) ensure that the City is afforded the breathing spell it needs to focus on developing and negotiating a plan for adjusting its debts." (Docket No. 56, 9). Upon hearing the Motion, the Court ordered that, **"[f]or the avoidance of doubt**, **each of the Prepetition Lawsuits hereby is stayed.**" (Docket No. 166, 2).

None of the above named concerns listed in the Motion for the requested Order are at play here. Not only was this lawsuit not listed as one of the "Prepetition Lawsuits" clearly and explicitly covered by the Order, as this Court specifically named the lawsuits "[**f]or the avoidance of doubt**." (Docket No. 166, 2), this lawsuit was filed months before the City of Detroit filed for Bankruptcy. It was not brought to "frustrate the commencement" of the Chapter 9 proceeding. (*Id.)* Rather, the lawsuit was filed to address the violation of Petitioners' constitutional voting rights, a completely unrelated, but very important matter. The purposes for which the Motion was requested that are listed in the order are also not implicated here. This case does not affect the administration of the City's estate, affect the City's finances in any respect, nor does it interfere with the City taking its "breathing spell" to focus on a plan for its debts. As these motivations and considerations were not even contemplated by the Bankruptcy Court, the Order must be read in a way that so that it does not apply to this lawsuit. Indeed, the district court also labeled the Order as "broadly worded." (**Exhibit A**, attached to Brief, 2). For the above stated reasons, this Court should lift the stay as it pertains to Petitioners.

### IV.     *Lastly, The Extension Order Cannot be Read So Broadly as to Include Every Lawsuit Naming the Governor or State Treasurer*

Lastly, the Extension Order cannot be read to have such a broad application, to each and every lawsuit in the country that implicates the named Defendants. Taking into account the innumerable causes of action available to the citizens of Michigan, there is surely thousands of lawsuits that would then fall under the scope of the Order. There must be some limitation.

8

13-53846-tjt   Doc 2322-5   Filed 12/27/13   Entered 12/27/13 14:41:20   Page 8 of 16
13-53846-swr   Doc 2405   Filed 09/06/13   Entered 09/06/13 10:02:32   Page 8 of 117   107

Otherwise, the stay would halt suits involving tax recovery matters, cases involving constitutional rights, and violations of state law. The power of the Bankruptcy court is broad, but this Court must find that the Order only extends to litigation that relates to the Bankruptcy filing and the City of Detroit's finances, as proscribed by the Bankruptcy Code. Surely, the Order does not provide Defendants, who are not even debtors in the proceeding, complete immunity from all litigation. Indeed, the district court also found the Order to be "broadly worded." (**Exhibit A**, attached to Brief, 2). This cause of action does not impact the City of Detroit's finances, its ability to reorganize, the litigation is not grounded in damages that would take assets from the estate, and the City of Detroit would not be required to devote resources to monitoring the litigation, as it is not a party.

## CONCLUSION

**WHEREFORE**, Petitioners request that this Honorable Court lift the stay as it pertains to them and their case before the district court and enter the attached order. Petitioners also requests all other relief this Court deems appropriate in their favor.

Respectfully submitted,

NABIH H. AYAD & ASSOCIATES, P.C.

/s/ Nabih H. Ayad

_____

NABIH H. AYAD (P-59518)
General Counsel
Arab-American Civil Rights League
Ayad Law, P.L.L.C.
2200 North Canton Center Road, Suite 220
Canton, Michigan 48187
734-983-0500
nayad@ayadlaw.com

9

/s/ Melvin Butch Hollowell

_____

MELVIN BUTCH HOLLOWELL(P-37834)
General Counsel
Detroit Branch NAACP
8220 Second Avenue
Detroit, Michigan 48221
313-871-2087
butchhollowell@gmail.com

Dated: September 6, 2013                ATTORNEYS FOR PETITIONERS

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Chapter 9

CITY OF DETROIT, MICHIGAN                        No. 13-53846
          Debtor.

                                                HON. STEVEN W. RHODES

_____/

## **EXHIBIT LIST**

| **Exhibit** | **Description** |
| --- | --- |
| **Exhibit A:** | Order Regarding Notice of Pendency of Bankruptcy Case and Application of the Automatic Stay, August 22, 2013 |

# EXHIBIT A

13-58846-tji   Doc 2302-5   Filed 12/27/13   Entered 12/27/13 10:02:00   Page 12 of
13-53846-swr   Doc 740-5   Filed 09/06/13   Entered 09/06/13 14:41:26   Page 12 of 16   111
117

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DETROIT BRANCH NAACP, et al.,

        Plaintiffs,

                            Case No. 13-CV-12098

v.

                            HON. GEORGE CARAM STEEH

RICHARD D. SNYDER et al.,

        Defendants.
_____/

## ORDER REGARDING NOTICE OF PENDENCY OF BANKRUPTCY
## CASE AND APPLICATION OF THE AUTOMATIC STAY [DOC. 23]

On August 7, 2013, defendants filed a Notice of Pendency of Bankruptcy Case

and Application of the Automatic Stay.  The Notice references the automatic stay

imposed by operation of sections 362 and 922 of the Bankruptcy Code, 11 U.S.C. §§

362 and 922, as well as the order entered by the bankruptcy court on July 25, 2013,

which extended the automatic stay to include certain "State Entities" defined as "the

Governor, the State Treasurer and the members of the Loan Board . . . ."  *In re City of*

*Detroit, Michigan*, Case No. 13-53846 (Bankr. E.D. Mich.); Order Pursuant to Section

105(a) of the Bankruptcy Code Extending the Chapter 9 Stay to Certain (A) State

Entities, (B) Non Officer Employees and (C) Agents and Representatives of the Debtor

("Extension Order").  Governor Snyder and Treasurer Dillon are named defendants in

the captioned matter which was filed prior to the petition date and which defendants

contend is subject to the bankruptcy court order extending the automatic stay.

Although it is not apparent that any interests of the City of Detroit bankruptcy

-1-

13-53846-swr   Doc 2382-5   Filed 09/06/13   Entered 09/06/13 14:02:30   Page 13 of 16
13-53846-swr   Doc 740-5   Filed 09/06/13   Entered 09/06/13 14:42:20   Page 13 of 16   112
117

proceedings are implicated in the case, the plain language of the stay order would apply to this lawsuit.

In accordance with the broadly worded Extension Order issued by the bankruptcy court, this court will abide by the stay unless and until such time as an order issues lifting or modifying the stay to permit the captioned matter to proceed. Accordingly,

IT IS HEREBY ORDERED that proceedings in this case are STAYED until further order of the court.

IT IS HEREBY FURTHER ORDERED that this case is CLOSED for administrative and statistical purposes without prejudice because the defendants are covered by the bankruptcy court Extension Order. This closing does not constitute a decision on the merits.

IT IS FURTHER ORDERED that if the bankruptcy stay is removed, or a party obtains relief from the stay, then the case may be reopened upon the motion of any party.

IT IS FURTHER ORDERED that any party may apply to the bankruptcy court for relief from the automatic stay under 11 U.S.C. § 362 or for relief from the Extension Order.

So ordered.

Dated:  August 22, 2013

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

-2-

```
┌─────────────────────────────────────────────────────┐
│              CERTIFICATE OF SERVICE                 │
│                                                     │
│  Copies of this Order were served upon attorneys of │
│    record on August 22, 2013, by electronic and/or  │
│                  ordinary mail.                     │
│                                                     │
│                s/Marcia Beauchemin                  │
│                    Deputy Clerk                     │
└─────────────────────────────────────────────────────┘
```

-3-

**PROOF OF SERVICE**

I, Nabih H. Ayad, counsel for Petitioners, states as an officer of the Court that on September 6, 2013 he served a copy of Plaintiffs' Petition to lift Stay, Brief in Support, and Notice of Petition for Order Lifting Stay (Form B20A) on Denise C. Barton, counsel of record, at her address at P.O. Box 30736, Lansing, MI 48909 by first class mail.

AYAD LAW, PLLC

/s/ Nabih H. Ayad

_____

NABIH H. AYAD (P-59518)
General Counsel
Arab-American Civil Rights League
AYAD LAW, PLLC
2200 North Canton Center Road, Suite 220
Canton, Michigan 48187
734-983-0500
nayad@ayadlaw.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                    Chapter 9

CITY OF DETROIT, MICHIGAN            No. 13-53846
        Debtor.

                                    HON. STEVEN W. RHODES

_____/

### PROOF OF SERVICE

I, Nabih H. Ayad, counsel for Petitioners, states as an officer of the Court that on

September 6, 2013 he served a copy of Petitioners' Petition to lift Stay, Proposed Order, Notice

of Petition to Lift Stay (Form B20A), and Petitioner's Brief in Support, on Debtor in Possession,

the City of Detroit, Michigan, at its address at 2 Woodward Avenue Suite 1126 Detroit, MI

48226, counsel of record for Debtor in Possession, Jonathan S. Green at his address at 150 W.

Jefferson Ste. 2500, Detroit, MI 48226  and on Denise C. Barton, counsel of record in Case No:

13-12098, at her address at P.O. Box 30736, Lansing, MI 48909 by first class mail. I also hereby

certify that the foregoing document was electronically filed with the Clerk of the Court using the

ECF system, and will send notification of such filing to all ECF participants registered in this

matter.

                    Respectfully Submitted,


                    AYAD LAW, P.L.L.C.

                    /s/ Nabih H. Ayad__

                    Nabih H. Ayad (P-59518)
                    Attorney for Petitioners
                    2200 North Canton Center Road, Suite 220
                    Canton, Michigan 48187
                    734-983-0500
                    nayad@ayadlaw.com

13-53846-swr  Doc 2330-5  Filed 09/06/13  Entered 09/06/13 10:02:20  Page 17 of 1
117
13-53846-swr  Doc 740-5  Filed 08/07/13  Entered 08/07/13 10:02:20  Page 17 of  116

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN,

               Debtor.

Chapter 9

Case no. 13-53846

Hon. Steven W. Rhodes

---

## BRIEF IN OPPOSITION TO PETITION FOR ORDER LIFTING STAY

## INTRODUCTION

Petitioners are plaintiffs who filed a lawsuit in the United States District Court for the Eastern District of Michigan (the "District Court"), against Governor Rick Snyder, State Treasurer Andy Dillon, and Secretary of State Ruth Johnson, commencing Case No. 2:13-cv-12098 (the "Lawsuit") seeking: (1) a declaration that Public Act 436 ("PA 436"), Michigan Emergency Manager Law, is unconstitutional; (2) a preliminary and permanent order prohibiting Governor Snyder, Treasurer Dillon, and Secretary of State Johnson from enforcing Public Act 436 and prohibiting any emergency managers appointed under the Act (including Detroit's emergency manager) from exercising any authority over local units of government and their officials; and (3) the

invalidation of any actions taken by emergency managers, including

Detroit's emergency manager, pursuant to the Act. *See* Amended

Complaint, *NAACP, et al. v. Synder, et al.*, No. 2:13-cv-12098, Dkt. No.

16, at Prayer for Relief A-D (E.D. Mich., June 27, 2013).

On August 7, 2013, Respondents, Defendants in the Lawsuit, filed

a motion advising the District Court of the City of Detroit's petition for

bankruptcy and requesting a stay in light of the Order Pursuant to

Section 105(a) of the Bankruptcy Code Extending the Chapter 9 Stay to

Certain (a) State Entities, (b) Non Officer Employees, and (c) Agents

and Representatives of the Debtor that was entered on July 25, 2013

(the "Stay Order") which extended the Chapter 9 stay to certain State

Entities[1] including Governor Snyder and Treasurer Andrew Dillon. *See*

Defendants' Notice of Pendency of Bankruptcy Case and Application of

the Automatic Stay, *NAACP, et al. v. Snyder, et al.*, No. 2:13-cv-12098,

Dkt. No. 23 (E.D. Mich., Aug. 7, 2013); *see also* Stay Order, Dkt.

No. 166, July 25, 2013. The District Court granted the motion over

Petitioners' objection, staying proceedings in the Lawsuit. *See* Order

Regarding Notice of Pendency of Bankruptcy Case and Application of

---

[1] Capitalized terms not defined herein have the meaning given to them
in the Stay Order.

13-53846-tjt  Doc 2372-5  Filed 09/20/13  Entered 09/20/13 13:00:30  Page 19 of 22
13-53846-swr  Doc 979  Filed 09/20/13  Entered 09/20/13 13:00:29  Page 2 of 12
117                                                                    118

the Automatic Stay, *NAACP, et al. v. Synder, et al.*, No. 2:13-cv-12098, Dkt. No. 27 (E.D. Mich., Aug. 22, 2013).

On September 6, 2013, Petitioners moved this Court for an order lifting the stay.  *See* Petition for Order Lifting Stay, Dkt. No. 0740, Sept. 6, 2013.  In support, Petitioners raise three arguments:  (1) this Court's order extending the Chapter 9 stay does not apply to the Lawsuit, either because it applies only to certain enumerated prepetition lawsuits or because it should not be construed to apply to all lawsuits against Governor Snyder and Treasurer Dillon; (2) to the extent this Court's stay applies to the Lawsuit, this Court abused its discretion in ordering the same; and (3) if the stay applies, Petitioners have demonstrated cause for this Court to grant them relief from the stay.  Because none of these arguments has merit, Respondents respectfully request that this Court deny Petitioners' request for an order lifting the stay.

## ARGUMENT

## I.   This Court's Order extending the Chapter 9 Stay applies to this case.

Petitioners' argument that the Stay Order does not apply to the Lawsuit should be rejected.  As a threshold matter, the Stay Order does

not apply only to the specified Prepetition Lawsuits. The Stay Order

states, in relevant part:

> 2. Pursuant to section 105(a) of the Bankruptcy Code, the
> Chapter 9 Stay hereby is extended to apply in all respects (to
> the extent not otherwise applicable) to the State Entities
> (defined as the Governor, the State Treasurer and the
> members of the Loan Board, collectively with the State
> Treasurer and the Governor, and together with each entity's
> staff, agents and representatives) …
>
> 3. For the avoidance of doubt, each of the Prepetition
> Lawsuits hereby is stayed ….

Stay Order, Dkt. No. 166, July 25, 2013.

Had the Court intended that the Stay Order apply only to the

Prepetition Lawsuits, there would have been no need for the broader

language in paragraph 2 of the Stay Order, extending the stay to the

State Entities. Likewise, if actions against State Entities were stayed

only to the extent they applied to the Prepetition Lawsuits, the

language in paragraph 2 extending the stay to the State Entities "to the

extent not otherwise applicable" would be superfluous and without

effect in light of the language in paragraph 3 expressly staying the

Prepetition Lawsuits. Rather, as the District Court recognized, "the

plain language of the stay order would apply to this lawsuit." *See* Order

Regarding Notice of Pendency of Bankruptcy Case and Application of

the Automatic Stay, *NAACP, et al. v. Synder, et al.*, No. 2:13-cv-12098, Dkt. No. 27 (E.D. Mich., Aug. 22, 2013).

Nor did the City of Detroit's Motion for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code Extending the Chapter 9 Stay to Certain (a) State Entities, (b) Non Officer Employees, and (c) Agents and Representatives of the Debtor (the "Stay Motion") extend the Chapter 9 Stay to every case in which State Entities are parties. *See* Stay Motion, Dkt. No. 56, July 19, 2013. Instead, the Stay Motion sought to extend the Chapter 9 Stay "to actions or proceedings against the Governor, the State Treasurer and the members of the Loan Board,…that, directly or indirectly, seek to enforce claims against the City, interfere with the City's activities in this chapter 9 case or otherwise deny the city the protections of the Chapter 9 stay." *Id*. at 13. There is simply no support for Petitioners' argument that this Court's order extends the Chapter 9 bankruptcy stay to all lawsuits involving the specified state entities, regardless of the relationship between those lawsuits and Detroit's bankruptcy proceedings.

The Stay Order applies to the Lawsuit because the Lawsuit seeks to interfere with the City's activities in its Chapter 9 case or otherwise

deny the City the protections of the Chapter 9 Stay. Petitioners seek a declaration that PA 436 is unconstitutional, which would result in complete invalidation of all actions taken by emergency managers, thereby invalidating City of Detroit's Emergency Manager's filing of Chapter 9 on behalf of the City of Detroit.

## II.   This Court was well within its discretion to extend the automatic stay to this case.

Petitioners ask that this Court conclude that the Stay Order was an abuse of this Court's discretion. Clearly established law, and commonsense, show the opposite is true.

As Petitioners recognize, the Sixth Circuit has held that this Court has authority to extend automatic bankruptcy stays to non-debtor entities when, among other circumstances, "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Am. Imaging Servs., Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.)*, 963 F.2d 855, 861 (6th Cir. 1992).

Governor Snyder and Treasurer Dillon are parties to the Lawsuit which seeks to invalidate all actions of emergency managers under PA 436. If Petitioners prevail, Detroit's Chapter 9 filing will be invalidated. It is difficult to imagine a better example of a situation in which a "judgment against the third-party defendant will in effect be a judgment or finding against the debtor." As the Lawsuit could directly impact whether the City is eligible to be a Chapter 9 debtor, and thus, whether the City will be able to adjust its debts in a Chapter 9 proceeding, it is axiomatic that the Lawsuit is related to this Chapter 9 case and this Court acted within its sound discretion in entering the Stay Order.

## III. Petitioners have not demonstrated cause for this Court to grant relief from the automatic stay.

Finally, this Court should similarly reject Petitioners' argument that cause exists to grant Petitioners relief from the stay because each of the five factors enumerated in *In re Garzoni*, 35 F. App'x 179, 181 (6th Cir. 2002) weighs heavily in favor of upholding the Chapter 9 Stay. In that case, the Sixth Circuit explained that bankruptcy court considers the following factors in deciding whether to lift a stay: "1)

7

13-53846-tjt Doc 2332-5 Filed 09/20/13 Entered 09/20/13 13:00:20 Page 24 of 12
13-53846-swr Doc 979 Filed 09/20/13 Entered 09/20/13 13:00:25 Page 7 of 11
117

123

judicial economy; 2) trial readiness; 3) the resolution of preliminary bankruptcy issues; 4) the creditor's chance of success on the merits; and 5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors." *Id*. (internal citation omitted).

*First*, in the Lawsuit, Petitioners' primary claim is that PA 436 violates "Home Rule" principles and is thus unconstitutional. As the Court is well aware, various parties who have filed pleadings in opposition to the City's eligibility to be a Chapter 9 debtor have made arguments virtually identical to those raised by Petitioners. Because the Lawsuit and this Court's pending determination concerning eligibility address the same issues, judicial economy dictates staying the Lawsuit. If the Lawsuit is heard in a separate forum it could potentially yield inconsistent adjudications on the same issues.

*Second*, the Lawsuit is not "trial ready." To the contrary, no discovery has been conducted and while the Defendants have filed a motion to dismiss, it has not yet been decided by the District Court. The District Court has not yet decided whether there will be a trial, let

8

13-53846-tjt Doc 2372-5 Filed 09/27/13 Entered 09/27/13 13:00:30 Page 25 of 92
13-53846-swr Doc 979 Filed 09/20/13 Entered 09/20/13 13:00:25 Page 8 of 11
117
124

alone have the parties readied themselves for one to the point that imposition of a stay would be inequitable.

*Third*, as stated above, currently before the Court is the threshold issue of whether the City is eligible to be a Chapter 9 debtor, and various parties have raised challenges to PA 436 in their oppositions to eligibility which are the same challenges raised in the Lawsuit. The fact that the threshold eligibility issue—a preliminary bankruptcy issue—has yet to be decided by the Court weighs heavily against finding cause to grant relief from the Chapter 9 Stay.

*Fourth*, Petitioners have not demonstrated a strong chance of success on the merits of the Lawsuit, which contains no cognizable legal claims and, in many cases, relies on irrelevant comparisons of cities' "fiscal health scores" that have no application to the application of Public Act 436. *See* Defendants' Motion to Dismiss First Amended Complaint, *NAACP, et al. v. Synder, et al.*, No. 2:13-cv-12098, Dkt. No. 19 at 1-2 (E.D. Mich., July 11, 2013).

*Fifth,* the Petitioners assert that because the City is not a defendant in the Lawsuit, the Lawsuit imposes no impact on the city or its property. This assertion ignores the tremendous impact

9

continuation of the Lawsuit will have on the process of this Chapter 9 case. As explained above, adjudication in another forum of issues relating to PA 436 threaten to invalidate the city's Chapter 9 filing before this Court has had the opportunity to determine the City's eligibility.

## CONCLUSION AND RELIEF REQUESTED

Petitioners have not demonstrated that this Court's order does not extend the automatic bankruptcy stay to this case, nor have they shown that this Court abused its discretion in issuing its order or that cause exists to grant them relief from the stay. To the contrary, it is clear that this Court properly applied the bankruptcy stay to this case because the two matters are so intrinsically related that if Petitioners are successful in their lawsuit against Governor Snyder and Treasurer Dillon, Detroit's bankruptcy filing will itself be invalidated.

Accordingly, Respondents respectfully request that this Court deny Petitioners' Petition for Order Lifting Stay.

Respectfully submitted,

Matthew Schneider (P62190)
Chief Legal Counsel

*s/Matthew Schneider*
Matthew Schneider (P62190)
Assistant Attorney General
Attorney for Respondents
P.O. Box 30736
Lansing, Michigan  48909
517.373.3042

Nicole A. Grimm (P74407)
Assistant Attorney General
Attorney for Respondents
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434

Steve Howell (P28982)
Special Assistant Attorney General
Attorney for Respondents
500 Woodward Avenue
Suite 4000
Detroit MI 48226
313.223.3500

Dated:  September 20, 2013

**CERTIFICATE OF SERVICE (E-FILE)**

I hereby certify that on September 20, 2013, I electronically filed

the above document(s) with the Clerk of the Court using the ECF

System, which will provide electronic copies to counsel of record.

*s/Matthew Schneider*
Matthew Schneider (P62190)
Assistant Attorney General
Attorney for Respondents
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434

Form ntchrg

211 West Fort Street
Detroit, MI 48226

## UNITED STATES BANKRUPTCY COURT
Eastern District of Michigan

Case No.: **13−53846−swr**
Chapter: 9
Judge: Steven W. Rhodes

In Re: (NAME OF DEBTOR(S))
    City of Detroit, Michigan
    2 Woodward Avenue
    Suite 1126
    Detroit, MI 48226

Social Security No.:

Employer's Tax I.D. No.:
    38−6004606

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that a hearing will be held at **U.S. Courthouse, Courtroom 716, 231 W. Lafayette, Detroit, MI 48226** on **10/2/13** at **10:00 AM** to consider and act upon the following:

*740* − Motion for Relief from Stay . Fee Amount $176, Filed by Interested Parties Detroit Branch NAACP, Michigan State Conference NAACP, Thomas Stallworth III, Maureen Taylor, Rashida Tlaib, Donnell White (Attachments: # 1 Exhibit 1: Proposed Order # 2 Exhibit 2: Notice # 3 Exhibit 3: Brief in Support # 4 Exhibit 4: Proof of Service) (Ayad, Nabih)

*742* − Motion for Relief from Stay Re: Creditor, Devery Jones' Motion for Relief from Stay . Fee Amount $176, Filed by Creditor Devery Jones (Attachments: # 1 Exhibit 1 − Proposed Orders # 2 Exhibit Notice of Motion and Opportunity to Object # 3 Exhibit Brief in Support of Motion # 4 Exhibit Certificate of Service) (Kato, Mami)

Dated: 9/23/13

BY THE COURT

Katherine B. Gullo
Clerk, U.S. Bankruptcy Court

BY: christine sikula
Deputy Clerk

Form ntchrg

211 West Fort Street
Detroit, MI 48226

# UNITED STATES BANKRUPTCY COURT
Eastern District of Michigan

Case No.: **13−53846−swr**
Chapter: 9
Judge: Steven W. Rhodes

In Re: (NAME OF DEBTOR(S))
    City of Detroit, Michigan
    2 Woodward Avenue
    Suite 1126
    Detroit, MI 48226

Social Security No.:

Employer's Tax I.D. No.:
    38−6004606

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that a hearing will be held at **U.S. Courthouse, Courtroom 716, 231 W. Lafayette, Detroit, MI 48226** on **10/2/13** at **10:00 AM** to consider and act upon the following:

*740* − Motion for Relief from Stay . Fee Amount $176, Filed by Interested Parties Detroit Branch NAACP, Michigan State Conference NAACP, Thomas Stallworth III, Maureen Taylor, Rashida Tlaib, Donnell White (Attachments: # 1 Exhibit 1: Proposed Order # 2 Exhibit 2: Notice # 3 Exhibit 3: Brief in Support # 4 Exhibit 4: Proof of Service) (Ayad, Nabih)

*742* − Motion for Relief from Stay Re: Creditor, Devery Jones' Motion for Relief from Stay . Fee Amount $176, Filed by Creditor Devery Jones (Attachments: # 1 Exhibit 1 − Proposed Orders # 2 Exhibit Notice of Motion and Opportunity to Object # 3 Exhibit Brief in Support of Motion # 4 Exhibit Certificate of Service) (Kato, Mami)

Dated: 9/27/13

BY THE COURT

Katherine B. Gullo
Clerk, U.S. Bankruptcy Court

BY: christine sikula
Deputy Clerk

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN,         Chapter 9

                                   Case no. 13-53846

                    Debtor.         Hon. Steven W. Rhodes

_____

**CORRECTED
BRIEF IN OPPOSITION TO PETITION FOR
ORDER LIFTING STAY**

**INTRODUCTION**

Petitioners are plaintiffs who filed a lawsuit in the United States

District Court for the Eastern District of Michigan (the "District

Court"), against Governor Rick Snyder, State Treasurer Andy Dillon,

and Secretary of State Ruth Johnson, commencing Case No. 2:13-cv-

12098 (the "Lawsuit") seeking: (1) a declaration that Public Act 436

("PA 436"), Michigan Emergency Manager Law, is unconstitutional; (2)

a preliminary and permanent order prohibiting Governor Snyder,

Treasurer Dillon, and Secretary of State Johnson from enforcing Public

Act 436 and prohibiting any emergency managers appointed under the

Act (including Detroit's emergency manager) from exercising any

authority over local units of government and their officials; and (3) the

invalidation of any actions taken by emergency managers, including

Detroit's emergency manager, pursuant to the Act. *See* Amended

Complaint, *NAACP, et al. v. Synder, et al.*, No. 2:13-cv-12098, Dkt. No.

16, at Prayer for Relief A-D (E.D. Mich., June 27, 2013).

On August 7, 2013, Respondents, Defendants in the Lawsuit, filed

a motion advising the District Court of the City of Detroit's petition for

bankruptcy and requesting a stay in light of the Order Pursuant to

Section 105(a) of the Bankruptcy Code Extending the Chapter 9 Stay to

Certain (a) State Entities, (b) Non Officer Employees, and (c) Agents

and Representatives of the Debtor that was entered on July 25, 2013

(the "Stay Order") which extended the Chapter 9 stay to certain State

Entities[1] including Governor Snyder and Treasurer Andrew Dillon. *See*

Defendants' Notice of Pendency of Bankruptcy Case and Application of

the Automatic Stay, *NAACP, et al. v. Snyder, et al.*, No. 2:13-cv-12098,

Dkt. No. 23 (E.D. Mich., Aug. 7, 2013); *see also* Stay Order, Dkt.

No. 166, July 25, 2013. The District Court granted the motion over

Petitioners' objection, staying proceedings in the Lawsuit. *See* Order

Regarding Notice of Pendency of Bankruptcy Case and Application of

---

[1] Capitalized terms not defined herein have the meaning given to them
in the Stay Order.

the Automatic Stay, *NAACP, et al. v. Synder, et al.*, No. 2:13-cv-12098, Dkt. No. 27 (E.D. Mich., Aug. 22, 2013).

On September 6, 2013, Petitioners moved this Court for an order lifting the stay. *See* Petition for Order Lifting Stay, Dkt. No. 0740, Sept. 6, 2013. In support, Petitioners raise three arguments: (1) this Court's order extending the Chapter 9 stay does not apply to the Lawsuit, either because it applies only to certain enumerated prepetition lawsuits or because it should not be construed to apply to all lawsuits against Governor Snyder and Treasurer Dillon; (2) to the extent this Court's stay applies to the Lawsuit, this Court abused its discretion in ordering the same; and (3) if the stay applies, Petitioners have demonstrated cause for this Court to grant them relief from the stay. Because none of these arguments has merit, Respondents respectfully request that this Court deny Petitioners' request for an order lifting the stay.

## ARGUMENT

## I. This Court's Order extending the Chapter 9 Stay applies to this case.

Petitioners' argument that the Stay Order does not apply to the Lawsuit should be rejected. As a threshold matter, the Stay Order does

not apply only to the specified Prepetition Lawsuits.  The Stay Order

states, in relevant part:

> 2.     Pursuant to section 105(a) of the Bankruptcy Code, the
> Chapter 9 Stay hereby is extended to apply in all respects (to
> the extent not otherwise applicable) to the State Entities
> (defined as the Governor, the State Treasurer and the
> members of the Loan Board, collectively with the State
> Treasurer and the Governor, and together with each entity's
> staff, agents and representatives) …
>
> 3.     For the avoidance of doubt, each of the Prepetition
> Lawsuits hereby is stayed ….

Stay Order, Dkt. No. 166, July 25, 2013.

Had the Court intended that the Stay Order apply only to the

Prepetition Lawsuits, there would have been no need for the broader

language in paragraph 2 of the Stay Order, extending the stay to the

State Entities.  Likewise, if actions against State Entities were stayed

only to the extent they applied to the Prepetition Lawsuits, the

language in paragraph 2 extending the stay to the State Entities "to the

extent not otherwise applicable" would be superfluous and without

effect in light of the language in paragraph 3 expressly staying the

Prepetition Lawsuits.  Rather, as the District Court recognized, "the

plain language of the stay order would apply to this lawsuit."  *See* Order

Regarding Notice of Pendency of Bankruptcy Case and Application of

the Automatic Stay, *NAACP, et al. v. Synder, et al.*, No. 2:13-cv-12098, Dkt. No. 27 (E.D. Mich., Aug. 22, 2013).

Nor did the City of Detroit's Motion for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code Extending the Chapter 9 Stay to Certain (a) State Entities, (b) Non Officer Employees, and (c) Agents and Representatives of the Debtor (the "Stay Motion") extend the Chapter 9 Stay to every case in which State Entities are parties. *See* Stay Motion, Dkt. No. 56, July 19, 2013. Instead, the Stay Motion sought to extend the Chapter 9 Stay "to actions or proceedings against the Governor, the State Treasurer and the members of the Loan Board,…that, directly or indirectly, seek to enforce claims against the City, interfere with the City's activities in this chapter 9 case or otherwise deny the city the protections of the Chapter 9 stay." *Id*. at 13. There is simply no support for Petitioners' argument that this Court's order extends the Chapter 9 bankruptcy stay to all lawsuits involving the specified state entities, regardless of the relationship between those lawsuits and Detroit's bankruptcy proceedings.

The Stay Order applies to the Lawsuit because the Lawsuit seeks to interfere with the City's activities in its Chapter 9 case or otherwise

deny the City the protections of the Chapter 9 Stay. Petitioners seek a declaration that PA 436 is unconstitutional, which would result in complete invalidation of all actions taken by emergency managers, thereby invalidating City of Detroit's Emergency Manager's filing of Chapter 9 on behalf of the City of Detroit.

## II. This Court was well within its discretion to extend the automatic stay to this case.

Petitioners ask that this Court conclude that the Stay Order was an abuse of this Court's discretion. Clearly established law, and commonsense, show the opposite is true.

As Petitioners recognize, the Sixth Circuit has held that this Court has authority to extend automatic bankruptcy stays to non-debtor entities when, among other circumstances, "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Am. Imaging Servs., Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.)*, 963 F.2d 855, 861 (6th Cir. 1992).

Governor Snyder and Treasurer Dillon are parties to the Lawsuit which seeks to invalidate all actions of emergency managers under PA 436. If Petitioners prevail, Detroit's Chapter 9 filing will be invalidated. It is difficult to imagine a better example of a situation in which a "judgment against the third-party defendant will in effect be a judgment or finding against the debtor." As the Lawsuit could directly impact whether the City is eligible to be a Chapter 9 debtor, and thus, whether the City will be able to adjust its debts in a Chapter 9 proceeding, it is axiomatic that the Lawsuit is related to this Chapter 9 case and this Court acted within its sound discretion in entering the Stay Order.

## III.  Petitioners have not demonstrated cause for this Court to grant relief from the automatic stay.

Finally, this Court should similarly reject Petitioners' argument that cause exists to grant Petitioners relief from the stay because each of the five factors enumerated in *In re Garzoni*, 35 F. App'x 179, 181 (6th Cir. 2002) weighs heavily in favor of upholding the Chapter 9 Stay. In that case, the Sixth Circuit explained that bankruptcy court considers the following factors in deciding whether to lift a stay: "1)

7

judicial economy; 2) trial readiness; 3) the resolution of preliminary bankruptcy issues; 4) the creditor's chance of success on the merits; and 5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors." *Id.* (internal citation omitted).

*First*, in the Lawsuit, Petitioners' primary claim is that PA 436 violates "Home Rule" principles and is thus unconstitutional. As the Court is well aware, various parties who have filed pleadings in opposition to the City's eligibility to be a Chapter 9 debtor have made arguments virtually identical to those raised by Petitioners. Because the Lawsuit and this Court's pending determination concerning eligibility address the same issues, judicial economy dictates staying the Lawsuit. If the Lawsuit is heard in a separate forum it could potentially yield inconsistent adjudications on the same issues.

*Second*, the Lawsuit is not "trial ready." To the contrary, no discovery has been conducted and while the Defendants have filed a motion to dismiss, it has not yet been decided by the District Court. The District Court has not yet decided whether there will be a trial, let

alone have the parties readied themselves for one to the point that imposition of a stay would be inequitable.

*Third*, as stated above, currently before the Court is the threshold issue of whether the City is eligible to be a Chapter 9 debtor, and various parties have raised challenges to PA 436 in their oppositions to eligibility which are the same challenges raised in the Lawsuit. The fact that the threshold eligibility issue—a preliminary bankruptcy issue—has yet to be decided by the Court weighs heavily against finding cause to grant relief from the Chapter 9 Stay.

*Fourth*, Petitioners have not demonstrated a strong chance of success on the merits of the Lawsuit, which contains no cognizable legal claims and, in many cases, relies on irrelevant comparisons of cities' "fiscal health scores" that have no application to the application of Public Act 436. *See* Defendants' Motion to Dismiss First Amended Complaint, *NAACP, et al. v. Synder, et al.*, No. 2:13-cv-12098, Dkt. No. 19 at 1-2 (E.D. Mich., July 11, 2013).

*Fifth,* the Petitioners assert that because the City is not a defendant in the Lawsuit, the Lawsuit imposes no impact on the city or its property. This assertion ignores the tremendous impact

continuation of the Lawsuit will have on the process of this Chapter 9 case. As explained above, adjudication in another forum of issues relating to PA 436 threaten to invalidate the city's Chapter 9 filing before this Court has had the opportunity to determine the City's eligibility.

## CONCLUSION AND RELIEF REQUESTED

Petitioners have not demonstrated that this Court's order does not extend the automatic bankruptcy stay to this case, nor have they shown that this Court abused its discretion in issuing its order or that cause exists to grant them relief from the stay. To the contrary, it is clear that this Court properly applied the bankruptcy stay to this case because the two matters are so intrinsically related that if Petitioners are successful in their lawsuit against Governor Snyder and Treasurer Dillon, Detroit's bankruptcy filing will itself be invalidated.

Accordingly, Respondents respectfully request that this Court deny Petitioners' Petition for Order Lifting Stay.

Respectfully submitted,

*/s/Matthew Schneider*
Matthew Schneider
Chief Legal Counsel
Attorney for Respondents
P.O. Box 30736
Lansing, Michigan 48909
(517) 373.3042
SchneiderM7@michigan.gov
[P62190]

Nicole A. Grimm (P74407)
Assistant Attorney General
Attorney for Respondents
P.O. Box 30736
Lansing, Michigan 48909
517.373.6434

Steve Howell (P28982)
Special Assistant Attorney General
Attorney for Respondents
500 Woodward Avenue
Suite 4000
Detroit MI 48226
313.223.3500

Dated: September 20, 2013

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on September 20, 2013, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*/s/ Matthew Schneider*
Matthew Schneider
Chief Legal Counsel
Attorney for Respondents
P.O. Box 30736
Lansing, Michigan  48909
(517) 373.3042
SchneiderM7@michigan.gov
[P62190]

12

# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
-------------------------------------------- x
                                             :
In re                                        :          Chapter 9
                                             :
CITY OF DETROIT, MICHIGAN,                   :          Case No. 13-53846
                                             :
                Debtor.                      :          Hon. Steven W. Rhodes
                                             x
```

## DEBTOR'S OBJECTION TO PETITION FOR ORDER LIFTING STAY

The City of Detroit, Michigan (the "City"), as the debtor in the above-captioned case, hereby objects to the Petition for Order Lifting Stay [Dkt. No. 740] (the "Stay Relief Motion") and supporting Brief (the "Stay Relief Brief") filed by Detroit Branch NAACP, Michigan State Conference NAACP, Donnell White, Thomas Stallworth III, individually, Rashida Tlaib, individually, and Maureen Taylor, individually (collectively, the "Plaintiffs"). In support of this Objection, the City incorporates the Brief in Opposition to Petition for Order Lifting Stay filed contemporaneously with this Objection (the "Brief in Opposition") and respectfully represents as follows:

## Background

1.      On March 28, 2013, upon the effectiveness of Public Act 436, the Local Financial Stability and Choice Act, MCL § 141.1541, <u>et seq.</u> ("<u>PA 436</u>"), Mr. Kevyn D. Orr became, and continues to act as, emergency manager with respect to the City under PA 436 (in such capacity, the "<u>Emergency Manager</u>").

2.      Approximately six weeks later, on May 13, 2013, the Plaintiffs filed a complaint against Governor Rick Snyder, State Treasurer Andrew Dillon and Secretary of State Ruth Johnson (collectively, the "<u>Defendants</u>"), commencing Case No. 13-12098 (the "<u>Lawsuit</u>"), in the United States District Court for the Eastern District of Michigan, Southern Division (the "<u>District Court</u>").

3.      On June 27, 2013, the Plaintiffs filed a First Amended Verified Complaint (the "<u>Amended Complaint</u>").  The Amended Complaint seeks: (i) an order declaring that PA 436 is unconstitutional (Prayer A); (ii) a preliminary and permanent order prohibiting the Defendants from implementing or enforcing PA 436 (Prayer B); (iii) a preliminary and permanent order prohibiting any emergency managers appointed under PA 436 from exercising any authority over local units of government and their officials (Prayer C); and (iv) a preliminary and permanent order that actions exercised by any emergency managers appointed under PA 436 are unenforceable (Prayer D).   The Prayer for Relief is attached as <u>Exhibit A</u>.

4.     On July 18, 2013, the Governor issued his written decision (the "Authorization") approving the Emergency Manager's recommendation that the City be authorized to proceed under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code").  Thereafter, also on July 18, 2013, the Emergency Manager issued an order approving the filing of the City's chapter 9 case consistent with the Authorization (the "Approval Order").

5.     In accordance with the Authorization and Approval Order, on July 18, 2013 (the "Petition Date"), the City commenced this case under chapter 9 of the Bankruptcy Code.

6.     On July 19, 2013, the City filed the Motion of Debtor for Entry of an Order (A) Directing and Approving Form of Notice of Commencement of Case and Manner of Service and Publication of Notice and (B) Establishing a Deadline for Objections to Eligibility and a Schedule for Their Consideration [Dkt. No. 18] (the "Eligibility Objection Motion").  The Eligibility Objection Motion requested that the Court set August 19, 2013 ("Objection Deadline"), as the deadline for all parties to file objections to the City's eligibility to obtain relief under chapter 9 of the Bankruptcy Code ("Eligibility Objections").  The Eligibility Objection Motion also asked the Court to set a schedule for hearing and resolving Eligibility Objections.  Eligibility Objection Motion, ¶ 28.  The Court granted the Eligibility Objection Motion on August 2, 2013, and entered an order setting the Objection

Deadline ("Objection Order," Dkt. No. 296). The Objection Order also set a schedule for hearing and resolving Eligibility Objections.

7. In accordance with the Objection Order, numerous creditors and other parties in interest have objected to the City's eligibility to be a debtor under chapter 9 of the Bankruptcy Code on the basis that, for one reason or another, PA 436 is unconstitutional on its face or as applied ("PA 436 Eligibility Objections"). See list of objecting parties in the First Amended Order Regarding Eligibility Objections Notices and Hearings and Certifications Pursuant to 28 U.S.C. §2403(a) & (b) [Dkt. No. 821]. These PA 436 Eligibility Objections are scheduled to be heard in less than one month.

8. On July 19, 2013, the City filed the Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non-Officer Employees and (C) Agents and Representatives of the Debtor [Dkt. No. 56] (the "Stay Extension Motion"). The Stay Extension Motion requested that the Court extend the automatic stay provisions of sections 362 and 922 of the Bankruptcy Code (the "Automatic Stay") to, among others, the Governor and the Treasurer. The City requested such relief to "(a) aid in the administration of [the City's] bankruptcy case, (b) protect and preserve property for the benefit of citizens and stakeholders and (c) ensure that the City is afforded the breathing spell it needs to focus on

- 4 -

13-53846-swr  Doc 2435  Filed 09/26/13  Entered 09/26/13 19:32:30  Page 47 of 90
13-53846-tjt  Doc 2325  Filed 12/27/13  Entered 12/27/13 19:02:30  Page 47 of 90
117

146

developing and negotiating a plan for adjusting its debts." Stay Extension Motion at ¶ 15. The City specifically expressed the concern that litigation against the Governor and Treasurer could be used as a means to pursue claims against the City or interfere with the chapter 9 process. Id. at ¶ 22.

9. On July 25, 2013, this Court entered the Order Pursuant to Section 105(a) of the Bankruptcy Code Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non Officer Employees and (C) Agents and Representatives of the Debtor [Dkt. No. 166] (the "Stay Extension Order"), granting the Stay Extension Motion. The Stay Extension Order is not subject to appeal and is a final order of the Court.

10. On September 6, 2013, following the Petition Date, the Plaintiffs filed the Stay Relief Motion. In the Stay Relief Motion, the Plaintiffs request that this Court lift the Automatic Stay, as extended by the Stay Extension Order, to allow them to proceed with the Lawsuit in the District Court.

11. On September 20, 2013, the Defendants filed a Brief in Opposition to the Stay Relief Motion [Dkt. No. 979] (the "Defendants' Opposition"). The City agrees with the Defendants' Opposition and further responds to the Stay Relief Motion.

## Objection

12.     Despite the Plaintiffs' contention of "unrelatedness" and their efforts to characterize the gravamen of the relief they seek as not affecting the City, its assets or its creditors, the Lawsuit aims at the heart of the City's chapter 9 eligibility and the essence of the City's entire restructuring efforts under chapter 9, with the Emergency Manager at the helm. For all of the reasons set forth in the attached Brief in Opposition, which is incorporated herein by reference, and in the Defendants' Opposition, cause does not exist warranting relief from the Automatic Stay with respect to the Lawsuit, and the Stay Relief Motion should be denied.

WHEREFORE, for the reasons set forth in this Objection and in the Brief in Opposition, the City respectfully requests that this Court: (a) deny the Stay Relief Motion; and (b) grant such other and further relief to the City as the Court may deem proper.

Dated: September 26, 2013          Respectfully submitted,

By: /s/Stephen S. LaPlante
Jonathan S. Green (P33140)
Stephen S. LaPlante (P48063)
Timothy A. Fusco (P13768)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 West Jefferson
Suite 2500

Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com
fusco@millercanfield.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com


ATTORNEYS FOR THE CITY OF DETROIT

- 7 -

13-53846-swr   Doc 2034-5   Filed 12/27/13   Entered 12/27/13 19:02:30   Page 75 of 90
13-53846-swr   Doc 1043   Filed 09/26/13   Entered 09/26/13 17:37:53   Page 50 of
117
149

EXHIBIT A

13-53846-swr   Doc 2043-5   Filed 12/27/13   Entered 12/27/13 10:02:30   Page 51 of 91
13-53846-swr   Doc 1043   Filed 09/26/13   Entered 09/26/13 17:57:59   Page 85 of 90
117

100.    The purpose of the 1965 Voting Rights Act is to ensure that the right of all citizens to vote, including the right to register to vote and cast meaningful votes, is preserved and protected as guaranteed by the Constitution.

101.    Section 3(c) of the Voting Rights Act authorizes federal courts to place states and political subdivisions that have violated the Fourteenth or Fifteenth Amendments under preclearance, similar to Section 5 of the Act, which requires certain covered jurisdictions to preclear all voting changes with federal authorities.  42 U.S.C.§ 1973a(c) (2006).

102.     Plaintiffs, having pled a violation of the Fourteenth Amendment, are eligible for the Court's implementation of Section 3(c) of the Voting Rights Act. This Court should use its discretion to retain jurisdiction and impose preclearance on the cities and school districts now having Emergency Managers in the state of Michigan.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request of this Court the following relief:

A.    An order declaring that Public Act 436 violates the Equal Protection and/or the Procedural and/or Substantive Due Process Clauses of the United States Constitution;

B.    A preliminary and permanent order prohibiting Defendants, their respective agents, servants, employees, attorneys, successors, and all persons acting in concert with each or any of them, from implementing or enforcing Public Act 436;

C.    A preliminary and permanent order prohibiting any Emergency Managers appointed under Public Act 436 from exercising any authority over any jurisdiction and/or unit of local government, and/or over any locally elected public officials in Michigan;

D.    A preliminary and permanent order that actions exercised by Emergency Managers under Public Act 436 are unenforceable;

32

E.      A preliminary and permanent order granting preclearance of the cities and school districts currently with Emergency Managers, including the City of Benton Harbor, the City of Detroit, the Detroit Public School System, the City of Ecorse, the City of Flint, the City of Hamtramck, the City of Highland Park, the Muskegon Heights School System, and the City of Pontiac under section 3(c) of the 1965 Voting Rights Act;

F.      Attorney fees and costs;

G.      Such other and further relief as this Court may deem necessary or proper.

Respectfully submitted,

/s/ Melvin Butch Hollowell

_____
MELVIN BUTCH HOLLOWELL (P-37834)
General Counsel
Detroit Branch NAACP
8220 Second Avenue
Detroit, Michigan 48221
313-871-2087
butchhollowell@gmail.com

/s/ Nabih H. Ayad

_____
NABIH H. AYAD (P-59518)
General Counsel
Arab-American Civil Rights League
Nabih Ayad & Associates
2200 North Canton Center Road, Suite 220
Canton, Michigan 48187
734-983-0500
nayad@ayadlaw.com

ATTORNEYS FOR PLAINTIFFS

DATED: June 27, 2013

33

13-53846-swr   Doc 2332-5   Filed 12/27/13   Entered 12/27/13 10:02:30   Page 53 of 152
13-53846-swr   Doc 1042   Filed 09/26/13   Entered 09/26/13 13:07:55   Page 53 of 10
117

## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
-------------------------------------------- x
                                             :
In re                                        :        Chapter 9
                                             :
CITY OF DETROIT, MICHIGAN,                   :        Case No. 13-53846
                                             :
                Debtor.                      :        Hon. Steven W. Rhodes
                                             x
```

---

## DEBTOR'S BRIEF IN OPPOSITION TO PETITION FOR ORDER LIFTING STAY[1]

Six weeks after the Emergency Manager's appointment became effective, the Plaintiffs filed the Lawsuit seeking a judgment declaring not only the Emergency Manager's appointment to be invalid, but all actions he has taken, including the filing of this chapter 9 case, to be unenforceable. Yet, the Plaintiffs somehow assert that granting them relief from stay to prosecute this Lawsuit to judgment will have "no effect whatsoever on the City's ability to reorganize" because it is "completely unrelated" to the chapter 9 case. Stay Relief Brief at 3, 8. This is not accurate nor is the timing of the Lawsuit's filing a coincidence. The Stay Relief Motion is nothing more than a thinly veiled attempt to litigate the

---

[1] Capitalized terms not defined in this Brief in Opposition, have the meanings given to them in the City's Objection to Petition for Order Lifting Stay, filed contemporaneously with this brief.

13-53846-swr   Doc 20245   Filed 09/26/13   Entered 09/26/13 17:40:23   Page 1 of 12
13-53846-swr   Doc 2024   Filed 12/27/13   Entered 12/27/13 19:02:30   Page 54 of
117
153

City's eligibility before a different court in circumvention of the Court's Stay Extension Order and the process this Court adopted to resolve eligibility objections. The Plaintiffs have not identified any cause, much less sufficient cause, to allow them to proceed with the Lawsuit. Accordingly, the Stay Relief Motion must be denied.

## ARGUMENT

In support of the Stay Relief Motion, the Plaintiffs advance three arguments: (1) the Stay Extension Order does not apply to the Lawsuit, either because it did not specifically identify the Lawsuit or because it cannot be read so broadly as to include the Lawsuit; (2) the Court did not have the authority to enter the Stay Extension Order; (3) the Plaintiffs have demonstrated cause for relief from the Automatic Stay. None of these arguments have any merit.

## I. The Stay Extension Order Applies to the Lawsuit

The Plaintiffs misunderstand or misconstrue the relief granted in the Stay Extension Order. The Lawsuit is precisely the type of case that the Stay Extension Order was intended to cover and, contrary to the Plaintiffs' assertions, it does not provide the Defendants "complete immunity from all litigation." Stay Relief Brief at 9.

The Plaintiffs devote much of the Stay Relief Motion in a misguided attempt to argue that only a limited set of actions within the definition of "Prepetition

Lawsuits" are covered by the Stay Extension Order. The Plaintiffs reason that, because the Lawsuit is not covered by the definition of "Prepetition Lawsuits," that case is not subject to the Stay Extension Order. Stay Relief Brief at 8.

The Plaintiffs quote only paragraph 3 of the Stay Extension Order which states: "For the avoidance of doubt, each of the Prepetition Lawsuits hereby is stayed, pursuant to section 105(a) of the Bankruptcy Code, pending further order of this Court." This statement clarifies that a small group of three "Prepetition Lawsuits" are included in the relief granted and therefore are stayed. But nowhere does this statement limit the scope of the relief sought or obtained so that it would apply only to these three Prepetition Lawsuits.

The primary relief is granted in the prior paragraphs of the Stay Extension Order. Paragraph 1 states, without reservation or limitation of any kind, that the Stay Extension Motion is "granted." Paragraph 2 of the Stay Extension Order then states broadly that:

> Pursuant to section 105(a) of the Bankruptcy Code, the Chapter 9 stay hereby is extended in all respects (to the extent not otherwise applicable) to the State Entities (defined as the Governor, the State Treasurer and the members of the Loan Board, collectively with the State Treasurer and the Governor, and together with each entity's staff, agents and representatives), the Non-Office Employees and the City Agents and Representatives.

As such, the Stay Extension Order makes clear that the Automatic Stay was extended to the Governor and Treasurer to stay any and all cases that "have the

direct or practical effect of denying the City the protections of the" Automatic Stay so as to aid the City in the administration of its bankruptcy case and ensure the City is afforded the breathing spell it needs to focus on developing and negotiating a plan for adjusting its debts. See Stay Extension Motion at ¶ 15. This District Court judge in the Lawsuit agreed, finding, after review of an objection by the Plaintiffs, that "the plain language of the stay order would apply to this lawsuit."[2] Stay Relief Motion, Exhibit A.

If the Lawsuit were to continue, and if the District Court were to grant judgment in favor of the Plaintiffs, it is almost certain that the Plaintiffs (and others) would argue before this Court that the decisions and actions of the Emergency Manager – including the filing and prosecution of this chapter 9 case – are void and of no effect. Reading the prayer for relief in the Amended Complaint is all that is necessary to reach that conclusion. Reduced to its basics, the Lawsuit is yet another vehicle to challenge the City's eligibility for chapter 9 relief or otherwise attempt to interfere with the City's restructuring efforts. Such a result

---

[2] The Plaintiffs may not re-litigate this issue in this Court. See e.g., Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc., 701 F.3d 1093, 1098 (6th Cir. 2012) (holding that issue preclusion precludes relitigation where (1) the precise issue was raised and litigated in the prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceedings; (3) the prior proceedings resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought had a full and fair opportunity to litigate the issue in the prior proceeding).

would have the direct and practical effect of denying the City the protections of the Automatic Stay and "interfere with the City's activities in this chapter 9 case" (Stay Extension Motion at ¶ 20) – the precise result that the Stay Extension Order was seeking to avoid. Furthermore, this Court has assiduously and correctly endeavored to consolidate all possible objections to the eligibility of the City to seek chapter 9 relief before it and to avoid the exact result that would be occasioned if stay relief were to be granted to the Plaintiffs to permit an attack on PA 436 and all that implicates. Thus, the Plaintiffs' arguments that either the Stay Extension Order does not apply to the Lawsuit or that it is too broad to be enforced, fail. Stay Relief Brief at 9. Accordingly, as the District Court has already found, the Stay Extension Order applies to the Lawsuit.

## II. The Court Had Authority to Enter the Stay Extension Order

The Plaintiffs also argue that the Court did not have the authority to enter the Stay Extension Order. This is nothing more than a collateral attack upon the Stay Extension Order. Similar arguments were timely raised by other parties and rejected by this Court.[3] As the Plaintiffs recognize, a bankruptcy court may

---

[3] Other parties have raised similar objections to the Stay Extension Motion. <u>See</u> Dkt. No. 84 (the "<u>AFSCME Objection</u>"), ¶ 45-46 (arguing no identity of interests between the City and State Entities); Dkt. No. 141 (the "<u>Retirement Systems Objection</u>"), pp. 16-17 (same, and adding the argument that "[a] judgment obtained in any one of [certain pre-petition lawsuits against the Governor, the Emergency Manager, and others] will not be a judgment against the City. . . ."); <u>see also</u> Dkt. No. 146 (the "<u>Flowers Objection</u>"), ¶ 4 (arguing that "[a]t no point have the
*Continued on next page.*

- 5 -

13-53846-swr   Doc 20445   Filed 09/26/13   Entered 09/26/13 17:40:23   Page 58 of 117

157

extend the automatic stay where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." In re Eagle-Picher Indus., Inc., 963 F.2d 855, 861 (6th Cir. 1992) (quoting A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986)). The Lawsuit seeks a judgment against the Defendants declaring not only the Emergency Manager's appointment to be invalid, but all actions he has taken, including the filing of this chapter 9 case, to be unenforceable. Thus, any judgment against the Defendants would in effect be a judgment or finding against the City. As a result, under well-established Sixth Circuit precedent, this Court had the authority to enter the Stay Extension Motion. The Plaintiff's arguments to the contrary must be rejected.

## III. No Cause Exists to Grant Plaintiffs Relief from the Automatic Stay

Section 362(a) of the Bankruptcy Code provides in relevant part that:

> a petition filed under . . . this title . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the

---

*Continued from previous page.*

*Flowers* plaintiffs sued . . . or sought any relief against" the City, its officials, or employees). The Debtor addressed these arguments in its reply (Dkt. No. 128, ¶¶ 6-8). The Plaintiffs add nothing to this issue by raising these same arguments again.

debtor that arose before the commencement of the case . .
. .

11 U.S.C. § 362(a).  The Automatic Stay "is one of the fundamental debtor

protections provided by the bankruptcy laws. It gives the debtor a breathing spell

from his creditors.  It stops all collection efforts, all harassment, and all foreclosure

actions." <u>Javens v. City of Hazel Park (In re Javens)</u>, 107 F.3d 359, 363 (6th Cir.

1997) (quoting H.R. REP. NO. 95-595, at 340 (1978), reprinted in 1978

U.S.C.C.A.N. 5787, 6296).

Section 362(d) of the Bankruptcy Code authorizes a bankruptcy court to

grant relief from the Automatic Stay in limited circumstances.  <u>See</u> 11 U.S.C. §

362(d).  In particular, section 362(d)(1) of the Bankruptcy Code provides that a

party in interest may obtain relief from the Automatic Stay "for cause, including

the lack of adequate protection of an interest in property of such party in interest."

11 U.S.C. §362(d)(1).

"The Bankruptcy Code does not define 'cause' as used in [section]

362(d)(1).  Therefore, under [section] 362(d), 'courts must determine whether

discretionary relief is appropriate on a case by case basis.'"  <u>Chrysler LLC  v.</u>

<u>Plastech Engineered Prods., Inc. (In re Plastech Engineered Prods., Inc.)</u>, 382 B.R.

90, 106 (Bankr. E.D. Mich. 2008) (<u>quoting</u> <u>Laguna Assocs. L.P. v. Aetna  Casualty</u>

<u>& Surety Co. (In re Laguna Assocs. L.P.)</u>, 30 F.3d 734, 737 (6th Cir. 1994)).  The

determination of whether to grant relief from the Automatic Stay "resides within

- 7 -
13-53846-swr  Doc 20245  Filed 09/26/13  Entered 09/26/13 17:40:23  Page 60 of
117
13-53846-swr  Doc 20245  Filed 09/26/13  Entered 09/26/13 17:40:23  Page 60 of 159

the sound discretion of the Bankruptcy Court."  Sandweiss Law  Center, P.C. v.

Kozlowski (In re Bunting), No. 12-10472, 2013 WL 153309, at *17 (E.D. Mich.

Jan. 15, 2013) (quoting In re Garzoni, 35 F. App'x 179, 181 (6th Cir. 2002)).

> To guide the bankruptcy court's exercise of its discretion
> . . . the Sixth Circuit identifies five factors for the court to
> consider: (1) judicial economy; (2) trial readiness; (3) the
> resolution of the preliminary bankruptcy issues; (4) the
> creditor's chance of success on the merits; and (5) the
> cost of defense or other potential burden to the
> bankruptcy estate and the impact of the litigation on other
> creditors.

Bunting, 2013 WL 153309, at *17 (quoting Garzoni, 35 F. App'x at 181) (internal

quotation marks omitted).  In determining whether cause exists, however, "the

bankruptcy court should base its decision on the hardships imposed on the parties

with an eye towards the overall goals of the Bankruptcy Code."  Plastech, 382 B.R.

at 106 (quoting In re C & S Grain Co., 47 F.3d 233, 238 (7th Cir. 1995)).

Here, consideration of the these factors confirms that no cause (much less

sufficient cause) exists to justify relief from the Automatic Stay to allow the

Lawsuit to proceed.  With respect to the first factor, the interests of judicial

economy weigh heavily in favor of denying the Stay Relief Motion.  Numerous

parties have raised similar eligibility issues in this chapter 9 case[4] (the Plaintiffs

not being one of them) that the Plaintiffs seek to litigate in the Lawsuit in front of

---

[4] See e.g., The City's Consolidated Reply to Objection to the Entry of an Order for
Relief at 38-44, 89, 95-96, 98. [Dkt. No. 765].

- 8 -
13-53846-swr   Doc 2324-5   Filed 09/26/13   Entered 09/26/13 17:40:23   Page 63 of 92
13-53846-swr   Doc 2344   Filed 09/27/13   Entered 09/27/13 11:40:23   Page 61 of
117                                                                          160

the District Court.   As this Court emphasized, litigating eligibility issues in two different courts, simultaneously "does not promote judicial or party efficiency; it is the antithesis. The most efficient way to litigate eligibility in this case is in one court – the bankruptcy court – and then on appeal in the next." Opinion and Order Denying Motion to Stay Proceedings Pending Determination of Motion to Withdraw the Reference at 19. [Dkt. No. 1039].  Accordingly, judicial economy dictates staying the Lawsuit so as to permit this Court to address the PA 436 Eligibility Objections in the single, unified context of the eligibility trial.

With respect to the second factor, the Lawsuit is in its preliminary stages. The Defendants' motion to dismiss remains pending.  No discovery has been taken.  Thus, the Lawsuit has not even advanced beyond the pleading stage and is not trial ready.  The third factor also weighs in favor of denying the Stay Relief Motion as the Court has not even resolved the City's eligibility for relief in this chapter 9 case.  Nothing could be more basic or preliminary to the ultimate outcome.

Further, concerning the fourth factor, as set forth in the Defendants' motion to dismiss and in the Defendants' Opposition to the Stay Relief Motion, the Plaintiffs have not demonstrated a likelihood of success on the merits.

Finally, the fifth factor weighs in favor of denying the Stay Relief Motion. Although the City is not currently a party in the Lawsuit, the impact that the

Lawsuit may have on the City and its restructuring efforts may require the City to intervene or otherwise become further involved and take other actions if the Stay Relief Motion is granted. Requiring the City to defend the Lawsuit in the District Court would distract the City from its efforts to restructure, diverting its limited resources at a time when it is both working to negotiate and deliver a plan of adjustment quickly and engaged in a substantial amount of discovery and litigation (all on its own expedited timeframe) arising in the bankruptcy case itself. The City does not need further impediments to its restructuring efforts. This Court has consistently endeavored to bring all matters which may affect the eligibility of the City before it and have the issues resolved in one forum. Allowing the Lawsuit to proceed in the District Court would cast uncertainty[5] over the eligibility and restructuring process and may chill negotiations among the parties or adversely affect the confirmation of the plan of adjustment.

In short, allowing the Lawsuit to proceed would undermine the protections of the Automatic Stay and interfere with the City's efforts to restructure. The City sought relief under chapter 9 in part to obtain the "breathing spell" afforded by the

---

[5] This Court acknowledged that the uncertainty occasioned just by the eligibility objections already before it will likely slow, if not stall entirely, the "City's progress in recovering its financial, civic, commercial, and cultural life and in revitalizing itself." Opinion and Order Denying Motion to Stay Proceedings Pending Determination of Motion to Withdraw the Reference at 23. [Dkt. No. 1039]. Having the City's eligibility adjudicated simultaneously in two courts obviously compounds that uncertainty.

Automatic Stay and the consequent protection from its creditors while it restructures its affairs and prepares a plan of adjustment. The City's finances would be further depleted and its personnel distracted from their mission to operate the City for the benefit of its citizens and restructure its affairs if it were denied this basic protection of chapter 9 and forced to defend itself against the Plaintiffs so early in the case. Accordingly, the overall goals of chapter 9 weigh largely in favor of denying stay relief to the Plaintiffs.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the City respectfully requests that this Court (a) deny the Stay Relief Motion; and (b) grant such other relief to the City as the Court may deem proper.

Dated: September 26, 2013  Respectfully submitted,

By: /s/Stephen S. LaPlante
Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
Timothy A. Fusco (P13768)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com
fusco@millercanfield.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com


Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

ATTORNEYS FOR THE CITY OF DETROIT

- 12 -
13-53846-swr   Doc 2322-5   Filed 09/26/13   Entered 09/26/13 17:10:23   Page 25 of 2
13-53846-swr   Doc 1044   Filed 09/26/13   Entered 09/26/13 14:02:30   Page 12 of 164
117

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Chapter 9

CITY OF DETROIT, MICHIGAN                        No. 13-53846
     Debtor.

                                       HON. STEVEN W. RHODES

_____/

### PETITIONERS' REPLY TO THE DEBTOR'S RESPONSE (DOCKET NOS 1043 and 1044) AND PETITIONERS' REPLY TO THE STATE OF MICHIGAN'S RESPONSE (DOCKET NO 979)

In Detroit Branch NAACP, Michigan State Conference NAACP, Donnell White, individually and on behalf of Detroit Branch NAACP and Michigan State Conference NAACP, Thomas Stallworth III, individually, Rashida Tlaib, individually, and Maureen Taylor, individually, v. Rick Snyder, Andrew Dillon, and Ruth Johnson, in their Official Capacities, Now Administratively Stayed in the United States District Court Eastern District of Michigan, No. 13-12098.

**NOW COME**, Petitioners as Plaintiffs in the United States District Court Eastern

District of Michigan No. 13-12098 ("Lawsuit"), by and through their attorneys, state as follows

as their Reply to the Debtor's Response and Reply to the State of Michigan's Response:

The Lawsuit was brought to address the alarming fact that almost half of Michigan's total

African American population are currently under Emergency Manager rule, **state-wide**. The

Debtor seems to ignore the fact that this lawsuit challenges the Act as it applies to **all** Michigan

municipalities and their respective residents. The Lawsuit does not pertain exclusively or

specifically to the City of Detroit or its Emergency Manager.

Petitioners would again like to bring this Court's attention to the issues and rights at stake

in the stayed lawsuit. The lawsuit is broader than the bankruptcy case, no matter Debtor's

assertions to the contrary. This Court would be deciding important constitutional issues that would

affect not only the City of Detroit, but the impact of the Emergency Manager law in the entire state

1

of Michigan. Petitioners in the instant case are suffering irreparable harm for which there is no adequate remedy at law so long as the violations of their constitutional rights continue. *Chicago Teachers Union v. Hudson,* 475 U.S. 292 (1986). The Debtor has termed this Petition as a collateral attack on eligibility determinations, when really, Petitioners only wish to have their day in the appropriate court to have their constitutional law claims heard. As a reminder to this Court, Petitioners have set forth no argument questioning the validity or invalidity of these proceedings[1] and only wish to proceed with their case as normal course in the district court. Indeed, given that the Extension Order has no time limitation, as soon as this Court determines the eligibility issue according to the arguments set forth by both the State of Michigan and Debtor, this case should be allowed to proceed.

Essentially, the State of Michigan and the Debtor raise the same arguments in their opposition to the Petitioners' Petition for Relief. First, they incorrectly restate Petitioners' second argument. Petitioners have not asserted any claim that this Court has abused its discretion. (Docket No. 979, 6; Docket No. 1044, 5). Instead, Petitioners have asked this Court to correct the over breadth of the Order by concluding that it was never intended to apply to this action. Indeed, this Court has not yet made the determination that the extension Order even applies to this lawsuit.

Debtor and the State of Michigan further argue that the factors to be taken into account in determining whether an automatic stay should be lifted enumerated by the Sixth Circuit weigh in

---

[1] Despite the State of Michigan's assertion to the contrary, Petitioners' primary claim involves the violation of Petitioners' constitutional rights under the Equal Protection and Due Process clauses of the Fourteenth Amendment of the Constitution, and not the "Home Rule" principle. The Lawsuit does not address this Court's eligibility issues, therefore the Lawsuit proceeding in a separate forum could not potentially "yield inconsistent adjudications on the same issues." (Docket No. 979, 8).

2

favor of denying the relief requested. However, there are two stark differences from this case to a typical determination under those factors. First, those factors, once again, address the situation as to creditors and the debtor. Petitioners are not creditors and the Defendants in the Lawsuit are not debtors. These set of facts fail to illustrate such limited circumstances where there exists "such identity between debtor and third party defendant and that the debtor may be said to be the real party defendant." *Am. Imaging Servs., Inc. v. Eagle-Picher Indus., Inc.* (In re Eagle-Picher., Inc.), 963 F.2d 855, 861 (6th Cir. 1992).

Second, the automatic stay, by itself, does not apply to Petitioner's proceeding in the district court. Because this situation deals with an extension order, this Court must also take into account additional factors, including whether the case is related to the bankruptcy proceeding in unusual circumstances and whether the stay is necessary or appropriate to carry out the broad principles, policies and goals of the Bankruptcy code. *Am. Imaging Servs. Inc. v. Eagle –Picher Indus., Inc.* (In re Eagle-Picher Indus., Inc.), 963 F.2d 855, 861 (6th Cir. 1992); 11 USC § 105(a). As argued in Petitioners' Brief, the extension order should not apply to the Lawsuit for those reasons. (*See* Docket No. 740, Exhibit 3, 2-3).

Then, after all of the above is considered, the factors of the Sixth Circuit are applied, as they relate to the automatic stay: (1) judicial economy; (2) trial readiness; (3) the resolution of the preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; and (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors. *Bunting*, 2013 WL 153309, at *17 (quoting 35 F. App'x 179, 181 (6th Cir. 2002) (internal quotation marks omitted). To the extent those factors apply here, which already rests on shaky ground given the limited situations to which such a stay applies to a third party non-creditor, the factors do weigh in favor of the progression of the proceeding in the district court as argued in

3

13-53846-tjt   Doc 2325   Filed 12/27/13   Entered 12/27/13 10:02:30   Page 68 of
13-53846-swr   Doc 2305   Filed 09/27/13   Entered 09/27/13 10:11:57   Page 68 of
117

167

Petitioners' Brief. (Docket No. 740, 4-7). Indeed, factor 4, which specifically pertains to creditors, and factor 5, which pertains to litigation burdens on the debtor, do not even apply to the case at hand. Debtor's argument that it would be forced to conduct litigation in this matter, is without merit. Again, Debtor is not named in the lawsuit nor could it reasonably expect to take any part in the defense of the lawsuit.

Lastly, Debtor claims that the timing of the Lawsuit's filing is somehow suspect in the same vein as the Prepetition Lawsuits because it occurred six weeks after Detroit's Emergency Manager was appointed. However, had this lawsuit even been a slight concern to the Debtor regarding the timing of the filing of suit in the same way the Prepetition Lawsuits were, this Lawsuit surely would have been included in its Motion to Extend the Stay. The fact that the three lawsuits were expressly raised by Debtors and subsequently stayed by this Court in "the avoidance of doubt," with no mention of the current lawsuit, goes in the face of Debtor's claim that the timing of the filing of this lawsuit was problematic or was the subject of the same concern of those lawsuits. Indeed, at the time of filing of this suit, there was no clear indication that the City would be filing for Bankruptcy. These facts are strikingly different from the Prepetition Lawsuits filed immediately prior to the petition date raised in the Debtor's Motion and in the subsequently addressed in this Court's order.

**WHEREFORE**, for the reasons listed above and outlined in their Brief submitted along with their Petition at Exhibit 3, Petitioners respectfully requests this Honorable Court to enter their order lifting the stay in Case No. 13-CV-12098 in the Eastern District of Michigan.

Respectfully submitted,


NABIH H. AYAD & ASSOCIATES, P.C.

/s/ Nabih H. Ayad

_____

NABIH H. AYAD (P-59518)
General Counsel
Arab-American Civil Rights League
Ayad Law, P.L.L.C.
2200 North Canton Center Road, Suite 220
Canton, Michigan 48187
734-983-0500
nayad@ayadlaw.com

/s/ Melvin Butch Hollowell

_____

MELVIN BUTCH HOLLOWELL(P-37834)
General Counsel
Detroit Branch NAACP
8220 Second Avenue
Detroit, Michigan 48221
313-871-2087
butchhollowell@gmail.com

Dated: September 27, 2013

ATTORNEYS FOR PETITIONERS

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Chapter 9

CITY OF DETROIT, MICHIGAN                           No. 13-53846
          Debtor.

                                                    HON. STEVEN W. RHODES
_____/

**CERTIFICATE OF SERVICE (E-FILE)**

I hereby certify that on September 27, 2013, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

                    AYAD LAW, P.L.L.C.

                    /s/ Nabih H. Ayad

                    _____
                    NABIH H. AYAD (P-59518)

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                        Chapter 9
                                              Case No. 13-53846
City of Detroit, Michigan,                    Hon. Steven W. Rhodes

        Debtor.
_____/

### Opinion and Order

### Denying NAACP's Motion for
### Relief from Stay (Dkt. #740)

### and

### Granting Phillips' Motion for
### <u>Relief from Stay (Dkt. #1004)</u>

        This opinion addresses two motions for relief from the stay. The first motion (Dkt. #740)

relates to *Detroit Branch NAACP v. Snyder*, No. 13-12098 (E.D. Mich. filed May 13, 2013). The

other motion (Dkt. #1004) relates to *Phillips v. Snyder*, No. 13-11370 (E.D. Mich. filed March

27, 2013). Both suits challenge the constitutionality of the Local Financial Stability and Choice

Act, Michigan Public Act No. 436 (2012), MCL §§ 141.1541–141.1575 ("P.A. 436").

        For the reasons stated in this opinion, the Court concludes that the motion for relief from

the stay as to the *NAACP* suit should be denied while the motion for relief from the stay as to the

*Phillips* suit should be granted.

### I. The Procedural History

        On March 27, 2013, Catherine Phillips and several other plaintiffs filed a lawsuit in the

United States District Court for the Eastern District of Michigan against Governor Richard

Snyder and State Treasurer Andrew Dillon, asserting that P.A. 436 is unconstitutional and

seeking declaratory and injunctive relief. Specifically, they assert that P.A. 436 violates their rights under the United States Constitution, art. IV, § 4; amend. I; amend. XIII; amend. XIV; and the Voting Rights Act of 1965, 42 U.S.C. §§ 1973–1973(q). Most of the individual plaintiffs are residents or elected officials of several municipalities in which emergency managers have been appointed under P.A. 436 – the City of Detroit, the City of Flint, the City of Benton Harbor, and the City of Pontiac. Three of the plaintiffs are also members of the Detroit Public Schools Board; an emergency manager has also been appointed for the Detroit Public Schools. The suit seeks damages, declaratory relief, and injunctive relief, including relief "restraining the Defendants and any present and future EMs from implementing or exercising authority and powers purportedly conveyed by Public Act 436." Complaint at 49–50, *Phillips*, No. 13-11370.

The second suit was filed on May 13, 2013, by the Detroit Branch NAACP, the Michigan State Conference NAACP, Donnell White, individually and on behalf of Detroit Branch NAACP and Michigan State Conference NAACP, Thomas Stallworth III, individually, Rashida Tlaib, individually, and Maureen Taylor, individually. It was filed in the United States District Court for the Eastern District of Michigan against Governor Richard Snyder, State Treasurer Andrew Dillon, and Secretary of State Ruth Johnson, in their official capacities. The suit alleges that P.A. 436 violates constitutional voting rights under the Equal Protection Clause and the Due Process Clause of the 14th Amendment. In their first amended complaint, filed June 27, 2013, the plaintiffs sought: (1) to enjoin the defendants and others from implementing or enforcing P.A. 436; (2) an order prohibiting any emergency manager appointed under P.A. 436 from exercising any authority; (3) an order that actions exercised by any emergency manager are unenforceable; and (4) preclearance of the cities and school districts currently with emergency

managers under § 3(c) of the Voting Rights Act.  Amended Complaint at ¶¶ 32–33, *Detroit Branch NAACP*, No. 13-12098.

On July 18, 2013, the City of Detroit filed this chapter 9 bankruptcy case.

On July 25, 2013, upon a motion filed by the City (Dkt. #56), the Court entered an order pursuant to 11 U.S.C. § 105(a) extending the stay to certain state entities, including the governor and the treasurer.  (Dkt. #166)

On August 22, 2013, the district court entered separate orders staying and administratively closing both the *Phillips* case and the *NAACP* case due to the City's bankruptcy filing and this Court's July 25, 2013 order.

The plaintiffs in both of those lawsuits have filed separate motions for relief from the stay.  Each group of plaintiffs contends that its lawsuit is not stayed by the Court's July 25, 2013 order because its suit was not included in the City's motion to extend the stay.  In the alternative, each group seeks relief from the stay to permit it to continue its district court lawsuit.

The City and the State of Michigan filed objections to both motions.

The Court conducted a hearing on the NAACP motion October 2, 2013, and took the matter under advisement.  The Court concluded that a hearing is not necessary on the Phillips motion.

## II. Whether the July 25, 2013 Order
## Applies to the Two Lawsuits

The July 25, 2013 order extending the automatic stay provides in part:

> 2) Pursuant to section 105(a) of the Bankruptcy Code, the Chapter 9 stay hereby is extended to apply in all respects (to the extent not otherwise applicable) to the State Entities (defined as the Governor, the State Treasurer and members of the Loan Board, collectively with the State Treasurer and the Governor, and together with each entity's staff, agents and representatives), the Non-Officer Employees and the City Agents and Representatives.

3

13-53846-swr   Doc 1936-5   Filed 12/06/13   Entered 12/06/13 10:02:40   Page 74 of 14
13-53846-swr   Doc 2036-1   Filed 12/06/13   Entered 12/06/13 10:02:40   Page 34 of 117   173
117

3) For the avoidance of doubt, each of the Prepetition Lawsuits hereby is stayed, pursuant to section 105(a) of the Bankruptcy Code, pending further order of this Court.

The plaintiffs in each suit argue that the order does not apply to their lawsuit because they are not creditors of the City and their lawsuit does not assert any claim against the City.

The City and the State of Michigan assert that the order does apply to the plaintiffs' lawsuits because the lawsuits will directly interfere with the City's chapter 9 case and may deny the City the protections of chapter 9.

The Court will first address the circumstances of the *NAACP* case and explain why the order does apply to that suit. The Court will then address why the July 25, 2013 order does not apply to the *Phillips* case.

## A. Whether the July 25, 2013 Order
## Applies to the *NAACP* Case

The Court concludes that this order does apply to the *NAACP* case. This suit explicitly seeks to remove all power and authority from the Detroit emergency manager. Also, if the plaintiffs had included the City as a defendant in the lawsuit, it would have been stayed as to the City under 11 U.S.C. § 362(a) because the lawsuit had the potential to directly impact the City's bankruptcy case. The July 25, 2013 order extended that stay to any suits against the governor and the treasurer that might have the same impact on the City's bankruptcy case.

The Court recognizes that the *NAACP* lawsuit purports to seek relief not only as to the emergency manager for the City of Detroit, but also as to the emergency managers in several other municipalities who are not before the Court – the City of Allen Park, the City of Benton Harbor, the Detroit Public School System, the City of Ecorse, the City of Flint, the Highland Park School System, the Muskegon Heights School System, and the City of Pontiac. Obviously,

whatever interests the plaintiffs in the *NAACP* case may have in vindicating their rights, if any, in those municipalities can only be addressed elsewhere.

Without addressing the substantive merits of the NAACP plaintiffs' claims in their suit, there is nonetheless one aspect of the suit that substantially undermines their interest in pursuing their claims as to these other municipalities. Although the suit purports to challenge all of the emergency manager appointments under P.A. 436, there is a serious question as to whether this suit is really about any emergency manager other than the Detroit emergency manager. This concern arises because it does not appear that any of the plaintiffs in the *NAACP* suit have standing to challenge any of the emergency manager appointments other than the Detroit emergency manager appointment. Accordingly, unlike the *Phillips* case, discussed below, the *NAACP* case appears to be directed much more to the Detroit emergency manager than any other emergency manager.

Before developing this point any further, however, the Court must pause to recognize that the precise issue of whether these plaintiffs have standing to pursue their claims in their district court lawsuit is not before this Court in this bankruptcy case and it would be inappropriate for this Court to address the standing issue directly.

The basis of this concern about the NAACP plaintiffs' standing lies in their first amended complaint. It alleges that each individual plaintiff is a resident and voter in the City of Detroit. First Amended Complaint at ¶¶ 24–27, *Detroit Branch NAACP*, No. 13-12098. Accordingly, their standing to challenge the emergency manager appointments in any other municipality would be highly suspect.

The Supreme Court has established this test to determine a plaintiff's standing:

> The Art. III judicial power exists only to redress or otherwise
> protect against injury to the complaining party, even though the

court's judgment may benefit other's collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threatened or actual injury resulting from the putatively illegal action[.]"

*Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205 (1975) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S. Ct. 1146, 1148 (1973)); s*ee also Hollingsworth v. Perry*, 133 S. Ct. 2652, 2663 (2013) ("It is, however, a 'fundamental restriction on our authority' that '[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'") (quoting *Powers v. Ohio*, 499 U.S. 400, 410, 111 S. Ct. 1364, 1371 (1991)); *Kowalski v. Tesmer*, 543 U.S. 125, 125 S. Ct. 564 (2004); *Conn v. Gabbert*, 526 U.S. 286, 119 S. Ct. 1292 (1999).

In this suit, the two other plaintiffs are the Detroit Branch NAACP and the Michigan State Conference NAACP. Describing these organizations, the first amended complaint states:

> 22. Plaintiff Detroit Branch NAACP, chartered in 1912, is the NAACP's largest Branch in America. Plaintiff Detroit Branch NAACP has, throughout its 99 year history, fought, through the democratic process, for the cause of civil rights and equal treatment for all. Plaintiff Detroit Branch NAACP has fought in the courts to preserve and protect voting rights in the State of Michigan. . . .

> 23. Plaintiff Michigan State Conference NAACP is the umbrella organization for all NAACP units or branches within the State of Michigan. It is the central authority, responsible for coordinating all local NAACP branches around the State.

First Amended Complaint at ¶¶ 22–23, *Detroit Branch NAACP*, No. 13-12098.

The Sixth Circuit has addressed the standing of a membership organization like the Detroit Branch NAACP:

> A voluntary membership organization has standing to sue on behalf of its members "when (a) its members otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires participation of

6

> individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm.*, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)[.]

*Am. Civil Liberties Union of Ohio Found., Inc. v. Ashbrook*, 375 F.3d 484, 495–96 (6th Cir. 2004).

It does appear likely that under *Ashbrook*, the Detroit Branch NAACP has standing to challenge the Detroit emergency manager appointment. However, the first amended complaint alleges no facts that would establish its standing to challenge any of the other emergency manager appointments.

Similarly, the first amended complaint alleges no facts establishing that the Michigan State Conference NAACP would have any standing under *Ashbrook*. Indeed, as quoted above, paragraph 23 only states that it is an "umbrella organization" for the NAACP branches within Michigan, and that it is the "central authority, responsible for coordinating all local NAACP branches around the State."

These standing considerations strongly suggest that despite the much more broadly stated goals of the lawsuit, its primary, if not sole, objective is the removal of the Detroit emergency manager. In any event, it appears likely that this relief is the only relief that the plaintiffs could be granted, if any.

The impact in this bankruptcy case of the potential removal of the Detroit emergency manager by the plaintiffs' lawsuit cannot be overstated. Section 18(1) of P.A. 436 provides, "This section . . . empowers the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9." M.C.L. § 141.1558(1). The NAACP plaintiffs' lawsuit seeks an order prohibiting any emergency manager appointed under P.A. 436 from exercising any authority under the act. This lawsuit, therefore, directly threatens the City's

13-53846-twr   Doc 2036-5   Filed 12/06/13   Entered 12/06/13 10:02:30   Page 78 of 14
13-53846-swr   Doc 1933-1   Filed 12/06/13   Entered 12/06/13 10:02:30   Page 78 of 177
117

ability to continue in this bankruptcy case. If P.A. 436 were found to be unconstitutional, as the plaintiffs' lawsuit claims, then the City's emergency manager would be removed from office. Under applicable state law, no one else would be authorized to prosecute this chapter 9 case on behalf of the City.

Accordingly, due to its potential impact on this bankruptcy case, the Court concludes that the July 25, 2013 order does apply to the *NAACP* case.

### B. Whether the July 25, 2013 Order Applies to the *Phillips* Case

In contrast to the *NAACP* case, the *Phillips* case includes residents and officials of not only the City of Detroit but also some of the other municipalities in which emergency managers have been appointed. Significantly, in the motion for relief from the stay that the plaintiffs in the *Phillips* case filed, they have attempted to overcome the concerns that compelled the conclusion that the *NAACP* case is subject to the July 25, 2013 order. The Phillips motion states:

> 15. Petitioners also seek to amend their Complaint, (Exh. 6.1, the *Phillips* case Dkt. #1), to withdraw the plaintiffs Phillips, Valenti and AFSCME Council 25 as plaintiffs from the underlying action and to voluntarily dismiss, without prejudice, Count I of the Complaint, which was asserted by the withdrawing plaintiffs.

(Dkt. #1004) Count I of the complaint, which the plaintiffs propose to withdraw, asserted the plaintiffs' claims in relation to the effect of P.A. 436 in Detroit.

Moreover, the conclusion of the motion reiterates that the plaintiffs intend to "amend their Complaint to provide for the voluntary withdrawal of individual plaintiffs Phillips, Valenti, and AFSCME Council 25 and the voluntary dismissal of Count I of their Complaint, without bearing on the Debtor's rights in this bankruptcy proceeding." (Dkt. #1004, at 15)

By these representations, which the Court accepts, it appears that the plaintiffs in the *Phillips* case intend to withdraw from their suit any request for relief as to the Detroit emergency

8

manager. The Court concludes that this proposed amendment would eliminate the potential that the *Phillips* case might result in the removal of the Detroit emergency manager. Therefore, the potential amendment also removes the *Phillips* case from the effect of the July 25, 2013 order. Accordingly, subject to that condition, the Court concludes that the *Phillips* case is not subject to the July 25, 2103 order.

### III. Whether to Grant the NAACP Plaintiffs'
### Motion for Relief from the Stay for Cause

Because the July 25, 2013 order does stay the *NAACP* case, those plaintiffs seek relief from the extended stay in order to proceed with their lawsuit.

The July 25, 2013 order states, "This order is entered without prejudice to the right of any creditor to file a motion for relief from the stay imposed by this order using the procedures of and under the standards of 11 U.S.C. § 362(d)–(g)."

11 U.S.C. § 362(d)(1) states, "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . for cause[.]"

Under 11 U.S.C. § 362(g), the debtor bears the burden of proving that there is not cause for relief from the stay.

"Cause" is not a defined term, "so courts must determine whether discretionary relief is appropriate on a case-by-case basis." *Trident Assoc. Ltd. P'ship v. Metro. Life Ins. Co.* (*In re Trident Assoc. Ltd. P'ship*), 52 F.3d 127, 131 (6th Cir. 1995) (quotation marks omitted) (quoting *In re Laguna Assoc. Ltd. P'ship*, 30 F.3d 734, 737 (6th Cir. 1994)). Whether to grant such relief "resides within the sound discretion of the bankruptcy court." *Garzoni v. K-Mart Corp.* (*In re Garzoni*), 35 F. App'x 179, 181 (6th Cir. 2002).

9

"Determining cause is not a litmus test or a checklist of factors. It requires consideration of many factors and a balancing of competing interests." *Chrysler LLC v. Plastech Engineered Prods., Inc.* (*In re Plastech Engineered Prods., Inc.*), 382 B.R. 90, 109 (Bankr. E.D. Mich. 2008); *see also In re Cardinal Indus., Inc.*, 116 B.R. 964, 983 (Bankr. S.D. Ohio 1990) ("In determining whether or not cause exists, the bankruptcy court must balance the inherent hardships on all parties and base its decision on the degree of hardship and the overall goals of the Bankruptcy Code.").

Accordingly, in balancing the competing interests to determine whether there is cause for relief from the stay, the Court will consider both the harm to the City if the motion is granted and the harm to the NAACP plaintiffs if the motion is denied. In addition, the Court concludes that it is appropriate to consider the public interest in this context, just as it was appropriate to consider the public interest when determining whether to extend the stay when the City requested it. *See, e.g., In re Trans-Serv. Logistics, Inc.,* 304 B.R. 805, 807 (Bankr. S.D. Ohio 2004).

The NAACP plaintiffs contend that there is cause for relief from the stay due to the extraordinary importance of the voting rights that their lawsuit seeks to vindicate and because their lawsuit will have little or no impact on the City's bankruptcy, to which they do not object. At the hearing on this motion, the plaintiffs' counsel clarified that in their lawsuit, the plaintiffs seek only prospective relief and do not seek to invalidate any actions taken by the emergency manager in Detroit or in any other city. They do acknowledge, however, that success in their lawsuit may lead to the removal of the emergency manager in Detroit. They contend nevertheless that the mayor of Detroit can then decide whether to proceed in chapter 9. They assert that their lawsuit is not a collateral attack on this bankruptcy, but a much broader challenge to the emergency manager law.

10

13-53846-swr   Doc 2382-5   Filed 12/27/13   Entered 12/27/13 10:02:30   Page 81 of 14
117
13-53846-swr   Doc 1538-1   Filed 11/06/13   Entered 11/06/13 14:12:41   Page 80 of   180

The City and the State of Michigan contend that the plaintiffs have failed to demonstrate cause for relief from the stay. They argue that numerous parties in this case have challenged the constitutionality of P.A. 436 in the context of eligibility objections and that it does not promote judicial economy to have that issue litigated in other courts.

## A. The Harm to the City
## If Relief from the Stay Is Granted

The harm to the City that might result if relief from the stay is granted is largely the same harm that §§ 362(a) and 922(a)(1), as well as the Court's July 25, 2013 order, seek to prevent. Those bankruptcy code provisions and the Court's order are designed to consolidate into the bankruptcy case all proceedings that relate to and impact the case, so that the debtor, and, for that matter, all of the other parties, are not required to endure the expense and complexity of litigating multiple issues in multiple courts. Such duplicative litigation also creates the risk of inconsistent results.

If relief from the stay were granted, the City would be required to request leave from the district court to intervene in the plaintiffs' lawsuit in order to protect its interest in adjusting its debts through this bankruptcy. That would require the City to incur the expense of litigating the constitutionality of P.A. 436 in two courts. Indeed if other similar motions for relief from the stay are granted, the issue would then have to be litigated in that many more courts.

The plaintiffs have attempted to minimize the impact of their lawsuit on the City by arguing that if the mayor of Detroit so chooses, this bankruptcy case can continue even without an emergency manager. However, as developed above, that is not so. M.C.L. § 141.1558(1) states that only the emergency manager may represent the City in this chapter 9 case. There is no provision in law for the mayor or any other city official to act on the City's behalf in this case.

11

13-53846-swit Doc 2382-5 Filed 12/27/13 Entered 12/27/13 10:02:30 Page 82 of 14
117
13-53846-swr Doc 1588-5 Filed 11/06/13 Entered 11/06/13 14:12:44 Page 82 of 181

## B. The Harm to the NAACP Plaintiffs
## If Relief from the Stay Is Denied

The harm that results to the NAACP plaintiffs if relief from the stay is denied is substantial. They will be required to defer litigating the important voting rights claims in their lawsuit until this bankruptcy case is resolved. However, this harm is as much a consequence of their own choices as it is of either the bankruptcy stay or this Court's July 25, 2013 order. The plaintiffs had the same full opportunity to file a timely eligibility objection challenging P.A. 436 as every other creditor, voter and resident of the City of Detroit had.

On that point, it should be noted that the plaintiffs do not assert that they were not aware of the filing of this bankruptcy case by the City of Detroit in time to file a timely eligibility objection. Moreover, the plaintiffs have submitted no evidence that they were not aware of the Court's August 19, 2013 deadline to file eligibility objections. Moreover, at the hearing on this motion, the Court offered the plaintiffs an opportunity to file an objection to eligibility, but plaintiffs' attorney declined that opportunity.

The record reflects that the NAACP plaintiffs made the conscious choice not to file an objection to eligibility in this case and instead chose to take the risk that their lawsuit would be allowed to proceed despite this bankruptcy case. Indeed, the NAACP plaintiffs rather vehemently assert that they do not object to the City's eligibility to be in a chapter 9 bankruptcy case. But the terminating impact that the success of their lawsuit would have on this bankruptcy makes that assertion ring hollow. Much of their lawsuit is precisely an eligibility objection, simply not labeled and filed as such. Although they were certainly not required to file an eligibility objection, their choice has the legal consequence that their suit is stayed by this case.

## C. The Public Interest

Certainly, the public has a substantial interest in the speedy and efficient resolution of litigation like the *NAACP* suit that seeks to vindicate a right as central to our democracy as the right to vote.

At the same time, however, the public has a substantial interest in the speedy and efficient resolution of a municipal bankruptcy case that affects as many people and institutions, and as much of the local, regional and national economy, as this case does.

The public also has an interest in the opportunity that this bankruptcy case may provide for the City of Detroit not only to adjust its debt and to restore the basic services that its residents need for their health and safety but also to regenerate its economic livelihood.

The NAACP plaintiffs' motion for relief from the stay does not require this Court to choose which of these important interests should prevail. It only requires the Court to determine whether it is necessary and appropriate to continue to defer the resolution of the plaintiffs' lawsuit pending the outcome of this bankruptcy.

## D. Conclusion

In its discretion, the Court concludes that although the considerations on each side are substantial, on balance, the factors suggesting that the motion for relief from the stay should be denied outweigh the considerations suggesting otherwise. The NAACP plaintiffs' claims in their lawsuit are important claims. However, those claims primarily and directly challenge the appointment of the Detroit emergency manager and the claims could have been presented in this case in a timely eligibility objection.

The NAACP plaintiffs' decision to forego that opportunity creates the potential, if the motion is granted, for the City to incur unnecessary litigation expense and delay in this

proceeding.  It also creates the potential to prematurely terminate this bankruptcy case.  In these circumstances, the Court concludes that it is appropriate to require the plaintiffs to await resolution of their claims until this bankruptcy case is resolved.

Accordingly, the Court concludes that the City of Detroit and the State of Michigan have met their burden of establishing that there is not cause for relief from the stay.

## IV. Order

For these reasons, it is hereby ordered that it is not necessary for the Court to grant relief from the stay to allow the *Phillips* case to proceed because that case is not subject to the Court's July 25, 2013 order.  This order is conditioned on the Phillips plaintiffs' amendment of their complaint to eliminate their request for the removal of the Detroit emergency manager and for any other relief that diminishes the Detroit emergency manager's authority under P.A. 436.

It is further ordered that the *NAACP* case is subject to the Court's July 25, 2013 order and that the NAACP plaintiffs' motion for relief from the stay is denied.

For publication

Signed on November 06, 2013

_____/s/ Steven Rhodes_____
Steven Rhodes
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
# TRANSCRIPT ORDER FORM

111 First Street                    211 W. Fort Street              226 W. Second Street
Bay City, MI 48708                  17th Floor                      Flint, MI 48502
                                    Detroit, MI 48226

**Order Party: Name, Address and Telephone Number**

Name _____ **Nabih H. Ayad** _____

Firm _____ **AYAD LAW, PLLC** _____

Address _____ **2200 Canton Center Road, Suite 220** _____

City, State, Zip _____ **Canton, MI 48187** _____

Phone _____ **734-983-0500** _____

Email _____ **nayad@ayadlaw.com** _____

**Case/Debtor Name:** In re City of Detroit

**Case Number:**      13-53846

**Chapter:**          9

**Hearing Judge** Hon. Steven Rhodes

( ● ) **Bankruptcy**    ( ○ ) **Adversary**

( ○ ) **Appeal**    **Appeal No:** _____

---

**Hearing Information** (A separate form must be completed for **each** hearing date requested.)

**Date of Hearing:** 10/02/2013    **Time of Hearing:** 10:00AM    **Title of Hearing:** Petition for Relief from Stay

Please specify portion of hearing requested: ( ● )**Original/Unredacted** ( ○ ) **Redacted** ( ○ )**Copy** (2nd Party)

( ● ) Entire Hearing    ( ○ ) Ruling/Opinion of Judge    ( ○ ) Testimony of Witness    ( ○ ) Other

Special Instructions: _____

---

**Type of Request:**

( ○ ) Ordinary Transcript - $3.65 per page (30 calendar days)

( ○ ) 14-Day Transcript - $4.25 per page (14 calendar days)

( ● ) Expedited Transcript - $4.85 per page (7 working days)

( ○ ) CD - $30; FTR Gold format - You must download the free
FTR Record Player™ onto your computer from
www.ftrgold.com

**Signature of Ordering Party:**

/s/ Nabih H. Ayad                    Date: **11/8/13**

By signing, I certify that I will pay all charges upon completion
of the transcript request.

**FOR COURT USE ONLY**

Transcript To Be Prepared By

_____
                    Date        By

Order Received:

Transcript Ordered

Transcript Received

# Instructions

**Use.**  Use this form to order transcript of proceedings.  Complete a separate order form for each hearing date for which transcript is ordered.

**Completion.**  Complete the entire order form.  Do *not* complete the shaded area which is reserved for the court's use.

**Order Copy.**  Keep a copy for your records.

**Filing with the Court.**  All requests must be electronically filed by attorneys.  Debtors without counsel or parties without PACER access may mail or deliver the request to the court.

**Withdrawal of Request.**  Decision to withdraw transcript request requires ordering party to (1) contact chambers; (2) notify transcriber; and (3) electronically file a notice of withdrawal. Debtors without counsel or parties without PACER access may mail or deliver the withdrawal to the court.  Failure to do so will result in payment obligation to the Transcriber.

**Deposit Fee.**  The Transcriber will notify you if a deposit fee is required and of the amount of the deposit fee.  Upon receipt of the deposit, the Transcriber will process the order.

**Delivery Time.**  Delivery time is computed from the date of receipt of the deposit fee.

**Completion of Order.**  The Transcriber will notify you when the transcript is completed.

**Balance Due.**  If the deposit fee was insufficient to cover all charges, the Transcriber will notify you of the balance due which must be paid to the Transcriber prior to receiving the completed order.

**Type of Request:**

> Ordinary. A transcript to be delivered within thirty (30) calendar days after receipt of the order by the Transcriber.  The charge is $3.65 per page effective November 19, 2007.

> 14-Day. A transcript to be delivered within fourteen (14) calendar days after receipt of the order by the Transcriber.  The charge is $4.25 per page effective November 19, 2007.

> Expedited. A transcript to be delivered within seven (7) calendar days after receipt of the order by the Transcriber.  The charge is $4.85 per page effective November 19, 2007.

> CD. Audio requests of a hearing are ordinarily completed within two (2) business days after receipt of an order.  The ordering party will be notified by telephone when the CD is ready.  Payment to the court (checks made payable to "Clerk of U.S. Bankruptcy Court") is required prior to picking up the CD.  The charge is $30.00 per CD.

**Note:** Full price may be charged only if the transcript is delivered within the required time frame.  For example, if an order for expedited transcript is not completed and delivered within seven (7) calendar days, payment would be at the next *delivery* rate.

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re

CITY OF DETROIT, MICHIGAN,

Debtor.

No. 13-53846

Chapter 9

HON. STEVEN W. RHODES

# MOTION FOR RECONSIDERATION OF
# OPINION AND ORDER DENYING NAACP'S MOTION FOR
# RELIEF FROM STAY (DKT. #740) AND GRANTING PHILLIPS'
# MOTION FOR RELIEF FROM STAY (DKT. #1004)

Movants Governor Rick Snyder and former Treasurer Andy Dillon, Respondents in Petitioners Catherine Phillips, et al's Motion for Relief from Stay (Dkt. #740), by and through their attorneys Matthew Schneider and Nicole Grimm, Assistant Attorneys General, hereby submit this motion for reconsideration of this Court's opinion and order (Dkt. #1536-1) denying NAACP's motion for relief from stay (Dkt. #740) and granting Phillips' motion for relief from stay (Dkt. #1004) and in support rely on the facts and legal analysis set forth in their attached brief filed in support of the same.

Respectfully submitted,

*/s/Matthew Schneider*
Matthew Schneider
Chief Legal Counsel
Attorney for State of Michigan
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-3203
SchneiderM7@michigan.gov
[P62190]

Nicole A. Grimm (P74407)
Assistant Solicitor General

Margaret A. Nelson
Assistant Attorney General

Steven G. Howell
Special Assistant Attorney
General
Dickinson Wright PLLC
500 Woodward Ave., Ste. 4000
Detroit, Michigan 48226-3425

Attorneys for the State of
Michigan

Dated: November 15, 2013

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re

CITY OF DETROIT, MICHIGAN,

Debtor.

No. 13-53846

Chapter 9

HON. STEVEN W. RHODES

## BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF OPINION AND ORDER DENYING NAACP'S MOTION FOR RELIEF FROM STAY (DKT. #740) AND GRANTING PHILLIPS' MOTION FOR RELIEF FROM STAY (DKT. #1004)

## INTRODUCTION

On November 6, 2013, after both lawsuits had been stayed in district court and plaintiffs in both cases moved for relief before this Court, this Court issued an Opinion and Order Denying NAACP's Motion for Relief from Stay and Granting Phillips' Motion for Relief from Stay. (Opinion and Order Denying NAACP's Motion for Relief from Stay and Granting Phillips' Motion for Relief from Stay, Dkt. #1536-1.) For the reasons that follow, Governor Rick Snyder and former Treasurer Andy Dillon, Defendants in the *Phillips* lawsuit (hereinafter, Respondents), respectfully submit that granting the

*Phillips* motion was clear error, and request that this Court grant their motion for reconsideration.

## ARGUMENT

## I.   Standard of Review

A motion for reconsideration should be granted if the movant demonstrates that the Court and the parties have been misled by a palpable defect and that a different disposition of the case must result from a correction of such palpable defect.  Local Rule 9024-1(a).  To establish a "palpable defect," the movant generally must identify a: "(1) clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Henderson v. Walled Lake Consolidated Schools*, 469 F.3d 479, 496 (6th Cir. 2006) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)).

Respondents respectfully submit that this Court's conclusion that Petitioners' proposed amendment to withdraw Count I and Plaintiffs Phillips, Valenti, and AFSCME Council 25 from their lawsuit would "eliminate the potential that the *Phillips* case might result in the removal of the Detroit emergency manager" constituted clear error

sufficient to satisfy this standard. Accordingly, for the reasons that follow, Respondents request that this Court reconsider its decision and hold that its July 25, 2013 stay extension order applies to this lawsuit.

## II.  Legal Analysis

### A.  According to this Court's order, its July 25, 2013 stay order applies unless Petitioners withdraw all requested relief that would diminish the authority of the Detroit Emergency Manager under PA 436.

At the outset of its opinion, this Court correctly recognized the sweeping scope of the *Phillips* lawsuit, recognizing that it "assert[s] that P.A. 436 violates [Petitioners'] rights under the United States Constitution, art. IV, § 4; amend. I; amend. XIII; amend. XIV; and the Voting Rights Act of 1965, 42 U.S.C. §§ 1973-1973(q)." (Dkt. #1536-1, at 1-2.)  Similarly, it recognized the broad relief Petitioners request, noting that they "seek[] damages, declaratory relief, and injunctive relief, including relief 'restraining the Defendants and any present and future EMs from implementing or exercising authority and powers purportedly conveyed by Public Act 436.'" (Dkt. #1536-1, at 1-2.)

On page 8 of its opinion, this Court distinguished the *NAACP* and *Phillips* lawsuits on the basis that *Phillips* "includes residents and

officials of not only the City of Detroit but also some of the other municipalities in which emergency managers have been appointed." (Dkt. #1536-1, at 8.)  Based on the fact that the *Phillips* lawsuit challenged the application of PA 436 in several places, not just in Detroit, this Court held that its July 25, 2013 stay order did not apply to the *Phillips* lawsuit so long as it was amended to "withdraw . . . any request for relief as to the Detroit emergency manager."  (Dkt. #1536-1, at 8-9.)  It further held that Petitioners' proposal to withdraw Count I of their complaint and Plaintiffs Phillips, Valenti, and AFSCME Council 25 served this purpose, since it "would eliminate the potential that the *Phillips* case might result in the removal of the Detroit emergency manager."  (Dkt. #1536-1, at 8-9.)

By the plain language of its order, this Court has made clear that lawsuits challenging PA 436 must be stayed during Detroit's bankruptcy proceedings to the extent they threaten to diminish the power of the Detroit Emergency Manager.  While Respondents agree with this conclusion, they respectfully submit it was clear error to conclude that Petitioners' proposed withdrawal of Count I and various plaintiffs from the *Phillips* lawsuit would insulate the Detroit

4

117

13-53846-swr   Doc 2325   Filed 12/27/13   Entered 12/27/13 15:20:30   Page 93 of
13-53846-swr   Doc 2745   Filed 11/18/13   Entered 11/18/13 15:02:30   Page 93 of   192

Emergency Manager from attack. To the contrary, Respondents submit that the *Phillips* case, like the *NAACP* case to which this Court held that the stay applies, is a broad challenge to PA 436 which, if successful, would pose a serious question as to the validity of Detroit's bankruptcy filing.

## III. Every count in Petitioners' complaint alleges that PA 436 is facially unconstitutional.

To validate the conclusion that Petitioners must only withdraw Count I of their complaint to proceed, it must be the case that Petitioners' remaining allegations, if proven, would not "result in the removal of the Detroit emergency manager." (Dkt. #1536-1, at 8-9.) Yet the argument that PA 436 is facially unconstitutional is found throughout Petitioners' complaint:

- Count II argues that PA 436 violates *substantive due process*. Paragraph 127 alleges that "*[o]n its face, as applied, and in practice*, Public Act 436 . . . disenfranchises citizens from their right to a democratically elected form of local government and their right to elect local officials who possess general legislative power, . . . ." Complaint, *Phillips, et al. v. Snyder, et al.*, No. 213-cv-11370, Dkt. No. 1 (E.D. Mich. Mar. 27, 2013) (*Phillips* Compl.) at Pg ID 24-27. (emphasis added).

- Count III argues that PA 436 violates *the guarantee to a republican form of government*. Paragraph 138 alleges that "*[o]n its face, as applied, and in practice*, Public Act 436 violates

the US Const., Art. 4, §4 through provisions of the statute that permit EMs [*inter alia*] to . . . [b]e selected and appointed solely at the discretion of the Governor . . . ." *Id.* at Pg ID 27-28. (emphasis added).

- Counts IV, V, and VI argue that PA 436 violates *equal protection.* Paragraphs 151, 167, and 182 alleges that "*[o]n its face, as applied, and in practice*, Public Act 436 violates the Equal Protection Clause of US Const., Amend. XIV, § 1 through provisions of the statute that:

  o unduly revoke and/or impermissibly dilute the community's right to vote for local officials . . .
  o discriminate in the appointment of an EM and revocation of the community's right to vote for local officials based on the racial composition of that community . . .
  o condition the revocation of the community's right to vote for local officials based on the wealth of that community and the individuals who reside there." *Id.* at Pg ID 28-38. (emphasis added).

- Count VII argues that PA 436 violates *the Voting Rights Act.* Paragraph 194 alleges that "*[o]n its face, as applied, and in practice*, Public Act 436 violates the Voting Rights Act through provisions that provide for the appointment of EMs and entering of consent agreements that abridge and dilute the voting rights of citizens within these localities . . . ." *Id.* at Pg ID 38-40. (emphasis added).

- Count VIII argues that PA 436 violates *freedom of speech and the right to petition government.* Paragraph 208 alleges that "*[o]n its face, as applied, and in practice*, Public Act 436 violates the U.S. Const., Amend. I through provisions that provide for the appointment of EMs with powers that strip all authority of local elected officials, through provisions of the statute that ratify appointments made and legislative acts taken by EMs acting under Public Act 4." *Id.* at Pg ID 40-43. (emphasis added).

- Count X argues that PA 436 *perpetuates the vestiges of slavery*. Paragraph 229 alleges that "*[o]n its face, as applied, and in practice*, Public Act 436 violates the U.S. Const., Amend. XIII, § 1 through provisions of the statute that . . . discriminatorily and intentionally revoke[e] the community's right to vote for local officials based on the racial composition of that community." *Id*. at Pg ID 45-47. (emphasis added).

Petitioners' complaint challenges PA 436 in all municipalities, including Detroit. Indeed, while Counts II through VIII and Count X apply to all municipalities equally, Count IX is a direct attack on the application of PA 436 in Detroit, specifically. *See Phillips* Compl., at Pg ID 43-45. Paragraph 220 alleges that "[o]n its face, as applied, and in practice, Public Act 436 and appointment of the City of Detroit's EFM and . . . EM violates the US Const., Amend I through provisions that . . . [p]ermit Kevyn Orr to act for and in the place and stead of the local governing body of cities . . . [and] [v]est the full powers of the local government of the City of Detroit . . . [in a] single entity represented by Kevyn Orr and the Jones Day law firm . . . ." *Id*. Likewise, Count XI is titled "Removal of Emergency Managers" and argues that all emergency managers, including Detroit's Emergency Manager, must be removed because "[o]n its face, as applied, and in practice, Public Act 436 violates the Equal Protection Clause of US Const. Amend. XIV, § 1

through provisions of the statute [that] discriminate between cities and school boards that presently have had EMs for longer than 18 months and those that will receive EMs after March 28, 2013." *Id.* at 47-49.

Even if Count I is removed from Petitioners' complaint, the allegations above still remain. And without exception, every count of the *Phillips* lawsuit, like the *NAACP* lawsuit, contains a facial attack on the constitutionality of PA 436.[1] Because any finding that the statute is unconstitutional would pose serious questions regarding the validity of Detroit's bankruptcy filing and its ability to move forward in the restructuring of its debts, Petitioners' lawsuit would unquestionably impact, directly or indirectly, bankruptcy proceedings before this Court.

## IV. The relief Petitioners request would diminish the Detroit Emergency Manager's authority under PA 436.

This Court has already recognized that adjudication of Petitioners' lawsuit depends upon the removal of any requested relief that would "diminish[] the Detroit emergency manager's authority under P.A. 436." (Dkt. #1536-1, at 14.) It bears noting that this would include, at a

---

[1] For this reason, the question of what impact a challenge to PA 436 as applied in a different municipality might have on the Act's application in Detroit is inapposite.

minimum, removal of the relief sought in subparts (a), (b), and (e) of Petitioners' prayer for relief. Respectively, these subparts seek: declaratory relief holding that PA 436 is unconstitutional; injunctive relief restraining present and future EMs from "implementing or exercising authority and powers purportedly conveyed by Public Act 436"; and "injunctive relief invalidating and restraining the terms of present and future consent agreements entered into under Public Act 436." *Phillips* Compl., at Pg ID 49-50. To the extent Petitioners pray for relief that does not bear directly on the application of PA 436 in Detroit, these prayers alone, bereft of any supporting counts, are insufficient to allow Petitioners' lawsuit to proceed. Rather, as this Court's own criteria for application of its July 25, 2013 stay order would require withdrawal of every count of Petitioners' lawsuit, Respondents respectfully request that this Court grant their motion for reconsideration and issue a new order denying Petitioners' motion for relief from stay.

9

13-53846-swr    Doc 2332-5    Filed 12/27/13    Entered 12/27/13 15:20:33    Page 98 of 12
13-53846-swr    Doc 1746    Filed 11/15/13    Entered 11/15/13 15:20:59    Page 12 of 12

117        197

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated, Respondents respectfully request that this Court reconsider its order granting Petitioners' motion for relief from stay and issue a new order denying the same.

Respectfully submitted,

*/s/ Matthew Schneider*
Matthew Schneider
Chief Legal Counsel
Attorney for State of Michigan
P.O. Box 30754
Lansing, Michigan  48909
(517) 373-3203
SchneiderM7@michigan.gov
[P62190]

Nicole A. Grimm (P74407)
Assistant Solicitor General

Margaret A. Nelson
Assistant Attorney General

Steven G. Howell
Special Assistant Attorney General
Dickinson Wright PLLC
500 Woodward Ave., Ste. 4000
Detroit, Michigan  48226-3425

Attorneys for the State of Michigan

Dated: November 15, 2013

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Chapter 9
                                                Case No. 13-53846
City of Detroit, Michigan,                      Hon. Steven W. Rhodes

        Debtor.
_____/

Order Requiring Response and Setting Hearing
Regarding Motion for Reconsideration

        The State of Michigan has filed a motion for reconsideration of this Court's

opinion and order denying NAACP's motion for relief from stay and granting Phillips'

motion for relief from stay that was entered on November 6, 2013. The Court has

determined that the opposing party shall file a response and that a hearing shall be held.

        Accordingly, it is hereby ordered that the Phillips' parties shall file a response to

the motion for reconsideration by December 2, 2013. A hearing shall be held on the

motion for reconsideration (Dkt. #1745) on December 16, 2013 at 10:00 a.m., in

Courtroom 100, Theodore Levin United States Courthouse, 231 W. Lafayette Blvd.,

Detroit, Michigan.

                                        .

Signed on November 18, 2013

                                        _____/s/ Steven Rhodes_____
                                        Steven Rhodes
                                        United States Bankruptcy Judge

13-53846-swr  Doc 2382-5   Filed 12/27/13   Entered 12/27/13 10:02:30   Page 100 of
13-53846-swr  Doc 1755   Filed 11/18/13   Entered 11/18/13 14:02:30   Page 1 of 1
117                                                                                  199

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Chapter 9

CITY OF DETROIT, MICHIGAN                        No. 13-53846
     Debtor.
                                  HON. STEVEN W. RHODES

_____/

## <u>NOTICE OF APPEAL FROM OPINION AND ORDER<br>DENYING NAACP'S MOTION FOR RELIEF FROM STAY</u>

**PLEASE TAKE NOTICE THAT** Detroit Branch NAACP, Michigan State Conference

NAACP, Donnell White, individually and on behalf of Detroit Branch NAACP and Michigan

State Conference NAACP, Thomas Stallworth III, individually, Rashida Tlaib, individually, and

Maureen Taylor, individually, pursuant to 28 U.S.C. 158(a) and Rules 8001(a) and 8002(a) of

the Federal Rules of Bankruptcy Procedure, file this notice of appeal to the United State District

Court for the Eastern District of Michigan, Southern Division from the order of the United States

Bankruptcy Court for the Eastern District of Michigan (the Honorable Steven W. Rhodes,

presiding) [Docket No. 1536-1, November 6, 2013] (the "Order").

     This notice of appeal is timely filed pursuant to Federal Rule of Bankruptcy Procedure

8002(a). The names to the parties to the appeal, as well as other affected parties, and the names

and addresses of their respective counsel are as follows:

**APPELLANTS**

Detroit Branch NAACP, Michigan State Conference NAACP, Donnell White, individually and on behalf of Detroit Branch NAACP and Michigan State Conference NAACP, Thomas Stallworth III, individually, Rashida Tlaib, individually, and Maureen Taylor, individually,

represented by:

> Nabih H. Ayad
> AYAD LAW, PLLC
> 2200 Canton Center Road, Suite 220
> Telephone: (734) 983-0500
> Facsimile: (734) 983-0520
>
> -and-
>
> Melvin Butch Hollowell
> General Counsel, Detroit Branch NAACP
> 8220 Second Avenue
> Detroit, Michigan 48221
> Telephone: 313-871-2087
> Facsimile: (313) 871-7745

**APPELLEES**

City of Detroit, represented by:

> Bruce Bennett
> JONES DAY
> 555 S. Flower Street
> 50th Floor
> Los Angeles, CA 90071
> Telephone: (213) 489-3939
> Facsimile: (213) 243-2539
>
> David Gilbert Heiman
> JONES DAY
> 901 Lakeside Avenue
> Cleveland, OH 44114
> Telephone: (216) 586-7175
> Facsimile: (216) 579-0212
>
> Heather Lennox
> JONES DAY
> 222 East 41st Street
> New York, NY 10017
> Telephone: (212) 326-3939
> Facsimile: (212) 755-7306

Stephen S. LaPlante
Eric D. Carlson
Timothy A. Fusco
Jonathan S. Green
Marc N. Swanson
MILLER CANFIELD, PLC
150 West Jefferson
Suite 2500
Detroit, MI 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500

Robert S. Hertzberg
Deborah Kovsky-Apap
Kay Standridge Kress
PEPPER HAMILTON LLP
4000 Town Center
Suite 1800
Southfield, MI 48075-1505
Telephone: (248) 359-7300
Facsimile: (248) 359-7700

**Other Interested Parties:**

State of Michigan, represented by**:**

Matthew Schneider
Nicole A. Grimm
Assistant Attorney General
P.O. Box 30736
Lansing, Michigan 48909
Telephone: (517) 373-3042
Facsimile: (517) 373-3042

Steve Howell
Special Assistant Attorney General
500 Woodward Avenue
Suite 4000
Detroit MI 48226
Telephone: (313) 223-3500

3

13-53846-tjt Doc 2382-5 Filed 12/27/13 Entered 12/27/13 16:02:30 Page 103 of
13-53846-swr Doc 2175 Filed 11/18/13 Entered 11/18/13 16:02:30 Page 3 of
117     202

Respectfully Submitted,


AYAD LAW, P.L.L.C.

/s/ Nabih H. Ayad\_\_

Nabih H. Ayad (P-59518)
Attorney for Petitioners
2200 North Canton Center Road, Suite 220
Canton, Michigan 48187
734-983-0500
nayad@ayadlaw.com


/s/ Melvin Butch Hollowell
_____
MELVIN BUTCH HOLLOWELL(P-37834)
General Counsel
Detroit Branch NAACP
8220 Second Avenue
Detroit, Michigan 48221
313-871-2087
Date: November 18, 2013          butchhollowell@gmail.com

4

13-53846-tjt  Doc 2325  Filed 12/27/13  Entered 12/27/13 16:02:36  Page 104 of
117
13-53846-swr  Doc 1759  Filed 11/18/13  Entered 11/18/13 10:02:30  Page 4 of 9    203

## <u>CERTIFICATE OF SERVICE</u>

  I, Nabih H. Ayad, counsel for Petitioners, states as an officer of the Court that on

November 18, 2013 the foregoing document, Notice of Appeal and Bankruptcy Matter Cover

Sheet attached thereto, was electronically filed with the Clerk of the Court using the ECF system,

and will send notification of such filing to all ECF participants registered in this matter.

        Respectfully Submitted,


        AYAD LAW, P.L.L.C.

        <u>/s/ Nabih H. Ayad</u>

        Nabih H. Ayad (P-59518)
        Attorney for Petitioners
        2200 North Canton Center Road, Suite 220
        Canton, Michigan 48187
        734-983-0500
        nayad@ayadlaw.com

**In re:**   City of Detroit

**Case No.:** 13-53846

**Debtor.**

_____/

**Adv. No.:**

**Appellant,**

v.

**Appellee.**

**CAUSE OF ACTION/NATURE OF SUIT:** (This matter is referred to the district court for the following reasons)

| | | |
|---|---|---|
| __X__ | [422] 28 U.S.C. 158 | Bankruptcy Appeal |
| _____ | [422] 28 U.S.C. 158 | Motion for Leave to Appeal |
| _____ | [423] 28 U.S.C. 157(d) | Motion for Withdrawal of Reference |
| _____ | [423] 28 U.S.C. 157(c) (1) | Proposed Findings of Fact and Conclusions of Law |
| _____ | [423] 28 U.S.C. 158 (c) (a) | Order of Contempt |

** Matter relates to the administratively stayed action in the United States District Court Eastern District of Michigan before the Honorable George C. Steeh, Case No. 13-12098.

**Date:**   __11/18/2013_____          **Name:**   ___/s/ Nabih H. Ayad_____

Name and Address of Interested Parties (See Below)

**APPELLANTS**

Detroit Branch NAACP, Michigan State Conference NAACP, Donnell White, individually and on behalf of Detroit Branch NAACP and Michigan State Conference NAACP, Thomas Stallworth III, individually, Rashida Tlaib, individually, and Maureen Taylor, individually, represented by:

Nabih H. Ayad
AYAD LAW, PLLC
2200 Canton Center Road, Suite 220
Telephone: (734) 983-0500
Facsimile: (734) 983-0520

-and-

Melvin Butch Hollowell
General Counsel, Detroit Branch NAACP
8220 Second Avenue
Detroit, Michigan 48221
Telephone: 313-871-2087
Facsimile: (313) 871-7745

**APPELLEES**

City of Detroit, represented by:

Bruce Bennett
JONES DAY
555 S. Flower Street
50th Floor
Los Angeles, CA 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

David Gilbert Heiman
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114
Telephone: (216) 586-7175
Facsimile: (216) 579-0212

Heather Lennox
JONES DAY
222 East 41st Street

2

13-53846-swr Doc 2338-1 Filed 12/27/13 Entered 12/27/13 10:08:30 Page 107 of
13-53846-swr Doc 1789-1 Filed 11/18/13 Entered 11/18/13 05:58:03 Page 2 of 8
117
206

New York, NY 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

Stephen S. LaPlante
Eric D. Carlson
Timothy A. Fusco
Jonathan S. Green
Marc N. Swanson
MILLER CANFIELD, PLC
150 West Jefferson
Suite 2500
Detroit, MI 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500

Robert S. Hertzberg
Deborah Kovsky-Apap
Kay Standridge Kress
PEPPER HAMILTON LLP
4000 Town Center
Suite 1800
Southfield, MI 48075-1505
Telephone: (248) 359-7300
Facsimile: (248) 359-7700

**Other Interested Parties:**
State of Michigan, represented by**:**

Matthew Schneider
Nicole A. Grimm
Assistant Attorney General
P.O. Box 30736
Lansing, Michigan 48909
Telephone: (517) 373-3042
Facsimile: (517) 373-3042

Steve Howell
Special Assistant Attorney General
500 Woodward Avenue
Suite 4000
Detroit MI 48226
Telephone: (313) 223-3500

Form designat

211 West Fort Street
Detroit, MI 48226

## UNITED STATES BANKRUPTCY COURT
Eastern District of Michigan

Case No.: **13−53846−swr**

In Re: (NAME OF DEBTOR(S))

    City of Detroit, Michigan

_____/

## NOTICE OF REQUIREMENT TO FILE DESIGNATION

**NOTICE IS HEREBY GIVEN** that an appeal was filed on **11/18/2013** from an order entered by Judge **Steven W. Rhodes** on **11/06/2013** .

Pursuant to Bankruptcy Rule 8006, within 14 days after the filing of the notice of appeal, entry of an order granting leave to appeal, or entry of an order disposing of the last timely motion outstanding of a type specified in Rule 8002(b), whichever is later, the appellant shall file **with the Clerk of the Bankruptcy Court** and serve on the appellee a designation of the items to be included in the record on appeal and a statement of issues to be presented.

Within 14 days after the service of the appellant's statement, the appellee may file and serve on the appellant a designation of additional items to be included in the record on appeal.

If the record designated by any party includes a transcript of any proceeding or a part thereof, the party shall immediately file with the Clerk of the Bankruptcy Court a transcript request on the order form available on the Clerk's Office web site.

Failure to comply with the filing of the designation of record and the statement of issues in the time prescribed by the rules and failure to comply with the transcript requirements may result in the dismissal of this appeal by the District Court pursuant to Bankruptcy Rule 8001(a).

Dated: 11/18/13

                              BY THE COURT

                              Katherine B. Gullo , Clerk of Court
                              UNITED STATES BANKRUPTCY COURT

# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
------------------------------------------------ x
                                           :
In re                                      :         Chapter 9
                                           :
CITY OF DETROIT, MICHIGAN,                 :         Case No. 13-53846
                                           :
            Debtor.                        :         Hon. Steven W. Rhodes
------------------------------------------------ x
```

## DEBTOR'S CONCURRENCE WITH AND JOINDER IN
## THE STATE'S MOTION FOR RECONSIDERATION

The City of Detroit (the "City") concurs with the State in moving this Court
for reconsideration of its Opinion and Order Denying NAACP's Motion for Relief
from Stay (Dkt. #740) and Granting Phillips' Motion for Relief from Stay (Dkt. #
1004) ("Opinion"), and thus concurs in the Motion of the State of Michigan for
Reconsideration (Dkt. # 1745).

1.     Reconsideration should be granted if the movant "demonstrate[s] a
palpable defect by which the court and the parties have been misled [and] also
show[s] that a different disposition of the case must result from a correction
thereof."  E.D. Mich. Local Bankr. R. 9024-1(a)(3).  "To establish a 'palpable
defect,' the moving party generally must point to '(1) a clear error of law; (2)
newly discovered evidence; (3) an intervening change in controlling law; or (4) a
need to prevent manifest injustice.'" *In re Collins & Aikman Corp.*, 417 B.R. 449,

454 (E.D. Mich. 2009) (*quoting Henderson v. Walled Lake Consolidated Schools*, 469 F.3d 479, 496 (6th Cir. 2006)).

2.      In holding that the July 25, 2013, order applied to the NAACP suit, this Court stated that "if the plaintiffs had included the City as a defendant in the lawsuit, it would have been stayed as to the City under 11 U.S.C. § 362(a) because the lawsuit <u>had the potential to directly impact the City's bankruptcy case</u>.  The July 25, 2013 order extended that stay to any suits against the governor and the treasurer that <u>might have the same impact</u> on the City's bankruptcy case."  Opinion at 4 (emphasis added).  Thus, as this Court acknowledged, under the July 25, 2013 order, any lawsuit against the governor or treasurer that has the potential to directly impact the City's bankruptcy case is stayed.

3.      In its Opinion, however, this Court declined to apply the July 25, 2013, order to the Phillips lawsuit due to a proposed amendment to the complaint because "it appears that the plaintiffs in the *Phillips* case intend to withdraw from their suit any request for relief as to the Detroit emergency manager.  The Court concludes that this proposed amendment would eliminate the potential that the *Phillips* case might result in the removal of the Detroit emergency manager.  Therefore, the potential amendment also removes the *Phillips* case from the effect of the July 25, 2013 order.  Accordingly, subject to that condition, the Court concludes that the *Phillips* case is not subject to the July 25, 2013 order."  Opinion

at 8-9.  For the reasons discussed below it is clear, however, that the intention to not seek relief as to the Detroit emergency manager has not been satisfied.

4.    In the State's Motion for Reconsideration, the State explained that it respectfully believed that the Court committed a clear error of law when it stated that the proposed amendment would "eliminate the potential" of the "removal of the Detroit emergency manager."  The State reasoned that Count IX directly attacks the application of P.A. 436 in Detroit.  Specifically, Count XI, titled in part "Removal of Emergency Managers," argues that all emergency managers, including Detroit's Emergency Managers, must be removed.  Further, every single count in the Phillips complaint alleges that P.A. 436 was facially unconstitutional.

5.    When analyzing the same issue with respect to the NAACP lawsuit, this Court reasoned, "If P.A. 436 were found to be unconstitutional, as the plaintiffs' lawsuit claims, then the City's emergency manager would be removed from office.  Under applicable state law, no one else would be authorized to prosecute this chapter 9 case on behalf of the City.  Accordingly, due to its potential impact on this bankruptcy case, the Court concludes that the July 25, 2013 order does apply to the NAACP case."  Opinion at 8.

6.    The City concurs with the State and respectfully submits that by this very same reasoning, the proposed amendment to the Phillips complaint does not remove the lawsuit from the July 25, 2013, order, if, as the Court apparently

concludes, the order stays any action that has the potential to remove the emergency manager and impact the City's bankruptcy case. *See* Opinion at 4. As the State explained, the Phillips complaint challenges the facial constitutionality of P.A. 436 in all municipalities. Even if the words Kevyn Orr, Detroit Emergency Manager, or City of Detroit[1] do not appear in the amended complaint, a ruling that P.A. 436 is facially unconstitutional could remove the City's emergency manager leaving no other authorized person to prosecute this chapter 9 case on behalf of the City. *See* Opinion at 8. There is no question that such a ruling would, at the very least, directly affect the City's chapter 9 case. Further, even though this Court is not bound by a district court decision, an adverse ruling by the District Court would invariably affect the efforts initiated by the Court to reach a negotiated plan of adjustment. As such, this Court should reconsider its opinion and hold that the Phillips lawsuit is subject to the July 25, 2013, order.

7.      It appears that by merely offering to remove Count I and a few of the plaintiffs from the complaint, the plaintiffs have misled the Court. The City believes that the only way to conform the complaint to comply with this Court's order is to remove all facial challenges to the constitutionality of P.A. 436 and leave in only "as applied" challenges that are fact-specific to municipalities other

---

[1] Even if Plaintiffs Phillips, Valenti and AFSCME Council 25 are removed from the complaint, there are still six Plaintiffs who are citizens of Detroit. *See* Phillips complaint ¶¶ 10, 23, 24, 25, 27, 28.

21718417.3\022765-00202

13-53846-tjt  Doc 2327  Filed 12/27/13  Entered 12/27/13 10:02:30  Page 113 of
117
13-53846-swr  Doc 2275  Filed 11/20/13  Entered 11/20/13 17:07:81  Page 113 of  212

than the City.  Only in this fashion would the Complaint not "impact the City's bankruptcy case" or potentially lead to the removal of the Detroit emergency manner.  To avoid unnecessary further proceedings, the Phillips plaintiffs' proposed amended complaint should be revised in this manner and submitted for Court approval to confirm that it will have "no bearing on the Debtor's rights in this bankruptcy proceeding."  In the alternative, to resolve any doubt as to the potential interference with this bankruptcy case, the Phillips action should be stayed until confirmation of the plan of adjustment.  If the Plaintiffs desire to bring their facial challenges to P.A. 436 outside of this Court's eligibility proceedings, a delay of a few months is not too much to ask to avoid the potential for interferences with the City's bankruptcy case—a position averred by all parties to this action.

## Conclusion

WHEREFORE, the City respectfully requests that this Court reconsider its opinion and issue and issue an order stating that the July 25, 2013, order stays the Phillips lawsuit.

Dated: November 20, 2013       Respectfully submitted,

By: /s/ Timothy A. Fusco
Jonathan S. Green (P33140)
Stephen S. LaPlante (P48063)
Timothy A. Fusco (P13768)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com
fusco@millercanfield.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

ATTORNEYS FOR THE CITY OF DETROIT

- 6 -

# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
-------------------------------------------- x
                                             :
In re                                        :          Chapter 9
                                             :
CITY OF DETROIT, MICHIGAN,                   :          Case No. 13-53846
                                             :
                 Debtor.                     :          Hon. Steven W. Rhodes
                                             x
```

---

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 20, 2013, he caused a true and correct copy of ***DEBTOR'S CONCURRENCE WITH AND JOINDER IN THE STATE'S MOTION FOR RECONSIDERATION*** to be served upon counsel as listed below via First Class United States Mail:

William H. Goodman
GOODMAN & HURWITZ PC
1394 E. Jefferson Ave.
Detroit, Michigan 48207

John C. Philo
Matthew Schneider
Chief Legal Counsel
Attorney for State of Michigan
P.O. Box 30754
Lansing, Michigan 48909

In addition, the above-described document was filed with the court the ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically.

DATED: November 20, 2013

By: /s/ Timothy A. Fusco
Timothy A. Fusco (P13768)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
fusco@millercanfield.com