**Exhibit 2**
*Ex Parte* Restraining Order

CITY OF DETROIT, a Municipal
Corporation Organized and Existing
Under the Laws of the State of Michigan,

Case No.: 13-008858-CZ
Honorable: Jeanne Stempien

       Plaintiffs,

v.

SYNCORA GUARANTEE INC., a New
York Corporation; U.S. BANK, N.A.;
MGM GRAND DETROIT, LLC; DETROIT
ENTERTAINMENT, LLC d/b/a
MOTORCITY CASINO HOTEL; and
GREEKTOWN CASINO, LLC,

13-008858-CZ

FILED IN MY OFFICE
WAYNE COUNTY CLERK
7/5/2013 2:46:52 PM
CATHY M. GARRETT
/s/ Unique Thomas

       Defendants.

_____/

ROBERT S. HERTZBERG (P30261)
DEBORAH KOVSKY-APAP (P68258)
4000 Town Center, Suite 1800
Southfield, MI 48075
(248) 359-7300 - Telephone
(248) 359-7700 - Fax
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

THOMAS F. CULLEN, JR. (*pro hac vice* pending)
GREGORY M. SHUMAKER (*pro hac vice* pending)
GEOFFREY S. STEWART (*pro hac vice* pending)
Jones Day
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-3939
tfcullen@jonesday.com
gshumaker@jonesday.com
gstewart@jonesday.com

*Attorneys for Plaintiff*

_____/

## EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

At a session of said Court, held in the
County of Wayne, State of Michigan on
7/5/2013

PRESENT:  Annette J. Berry a/f Jeanne Stempien

Wayne County Circuit Court Judge

This matter came before the Court on Plaintiff's Verified Complaint and Motion for an Ex Parte Temporary Restraining Order and Order to Show Cause Why A Preliminary Injunction Should Not Issue (the "Motion").

Upon review of the Motion, the allegations set forth in the Verified Complaint, and the Affidavit of Kevyn D. Orr (the "Affidavit") the Court has determined the following:

1.      Pursuant to MCR 3.310(A) and (B), it clearly appears from the specific facts shown by Plaintiff's Verified Complaint that immediate and irreparable injury, loss or damage will result to Plaintiff from the delay required to effect notice.  Defendant Syncora has demanded that Defendant U.S. Bank, as custodian under a collateral agreement, trap certain casino revenues owing to Plaintiff under the collateral agreement.  Plaintiff alleges that if it cannot gain immediate access to these revenues, it will be unable to successfully negotiate with its stakeholders during a critical timeframe in its efforts to effect a financial restructuring, that an existing cash crisis will be exacerbated, and that this cash crisis will lead to the further deterioration of police, fire, emergency medical, and other important city services, endangering the health and welfare of its citizens.  The Verified Complaint and the Affidavit establish these specific facts.

2.      Plaintiff has shown a likelihood of success on the merits of the claims asserted in the Verified Complaint.

-2-

13-53846-tjt   Doc 2392   Filed 12/27/13   Entered 12/27/13 16:00:46   Page 8 of 24
13-53846-swr   Doc 2122   Filed 12/23/13   Entered 12/23/13 16:08:46   Page 58 of 202     60

3. Plaintiff will suffer greater injury from the denial of temporary injunctive relief than Defendants will suffer from the granting of such relief.

4. The granting of this Order will further the public interest.

5. Immediate relief is required to preserve Plaintiff's ability to access needed funds at a critical time in its financial restructuring, and to avoid substantial irreparable harm that would result in the absence of injunctive relief.

6. Plaintiff's attorney has certified to the Court in writing that the delay required to give notice of the request for a temporary restraining order would cause plaintiff immediate and irreparable harm.

Upon review of the Verified Complaint, the Affidavit, and the Motion, the Court being otherwise fully advised in the premises:

**IT IS ORDERED** that Defendants, and anyone acting in concert or cooperation with Defendants who receives actual notice of this Order, are enjoined from and shall immediately cease and desist from taking any action to limit the City's access to casino revenues or the funds in the General Receipts Subaccount.

**IT IS FURTHER ORDERED** that Defendant U.S. Bank is enjoined from refusing to make payments to the City from the General Receipts Subaccount, unless instructed to do otherwise by the Counterparties to the Collateral Agreement, attached as Exhibit B to the Affidavit of Kevyn D. Orr, pursuant to its terms, without regard to any assertion of rights by Defendant Syncora. This Order shall remain in full force and effect until this Court specifically orders otherwise.

**IT IS FURTHER ORDERED** that Defendants shall appear before this Court for a hearing on July 26, 2013 at 9:00 o'clock a .m. to show cause why a preliminary injunction should not be issued upon the terms set forth above.

**IT IS FURTHER ORDERED** that no security is required of Plaintiff at this time, pursuant to MCR 3.301(D)(2), as Plaintiff is a municipal corporation organized and existing under the laws of the State of Michigan.

/s/ Annette J. Berry

Wayne County Circuit Court Judge

Date and time of issuance:
July 5, 2013 at 1:30 p.m o'clock

-4-

13-53846-tjt Doc 2929 Filed 12/27/13 Entered 12/27/13 16:00:40 Page 5 of 81
13-53846-swr Doc 422 Filed 02/13/13 Entered 02/13/13 16:00:40 Page 35 of 202     62

In re:

CITY OF DETROIT, MICHIGAN,                    Chapter 9

                    Debtor.        Case No. 13-53846
                              Honorable Steven W. Rhodes

OBJECTION OF ROBBIE FLOWERS, MICHAEL WELLS, JANET WHITSON, MARY WASHINGTON, BRUCE GOLDMAN AND INTERNATIONAL UNION, UAW TO MOTION OF DEBTOR, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE ENTITIES, (B) NON-OFFICER EMPLOYEES AND (C) AGENTS AND REPRESENTATIVES OF THE DEBTOR (Docket No. 56)

Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington and Bruce Goldman (the "*Flowers* plaintiffs") plaintiffs in a Michigan civil action ("*Flowers v. Snyder")* against Michigan Governor Snyder, Michigan Treasurer Dillon and the State of Michigan under Article 9, Section 24 of the Michigan Constitution, join with International Union, UAW, the collective bargaining representative of Robbie Flowers and Bruce Goldman, in objection to the Motion Of Debtor, Pursuant To Section 105(A) Of The Bankruptcy Code, For Entry Of An Order Extending The Chapter 9 Stay To Certain (A) State Entities, (B) Non-Officer Employees And (C) Agents And Representatives Of The Debtor (Docket No. 56) (the "Motion"), and state:

1.      The *Flowers* plaintiffs are an employee of a Michigan municipal corporation named the Detroit Library Commission (Robbie Flowers), two retirees from the Detroit Library Commission (Michael Wells and Janet Whitson), a City of Detroit employee (Bruce Goldman), and a City of Detroit retiree (Mary Washington). Each has earned vested pension benefits from

the City of Detroit General Retirement System ("GRS"), and the three retiree plaintiffs are currently receiving pension benefits from GRS. International Union, UAW is the collective bargaining representative of Robbie Flowers and Bruce Goldman, and was the collective bargaining representative of the remaining *Flowers* plaintiffs when they were employed by the Detroit Library Commission or the City of Detroit.

2. The *Flowers* plaintiffs' vested pension benefits are protected by Article 9, Section 24 of the Michigan Constitution, which provides that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation whereof which shall not be diminished or impaired thereby."

3. The *Flowers* plaintiffs filed suit in state court against the State of Michigan and two of its constitutional officers because those officers had been abrogating and were threatening to abrogate plaintiffs' state constitutional rights, as more fully set forth in their amended verified complaint (Exhibit 6.1 to the Motion) and in their reply brief in support their motion for preliminary injunction in *Flowers v. Snyder* (attached as Exhibit 1 to the Declaration of William Wertheimer filed herewith).

4. At no point have the *Flowers* plaintiffs sued the debtor or the Detroit Emergency Manager, the City of Detroit or any City of Detroit official or employee. Nor have they sought any relief against any of these persons or entities.

5. The debtor at paragraph 11 of its Motion asserts that the *Flowers* plaintiffs sought *ex parte* injunctive orders. That is untrue. See the attached declaration of William Wertheimer filed herewith. At no point did the *Flowers* plaintiffs ever seek *ex parte* relief. To the contrary,

2

the *Flowers* defendants sought to delay as long as possible (for a now obvious reason) a fully briefed hearing on the merits of a motion for preliminary injunction seeking to preclude Governor Snyder from authorizing the filing of a Chapter 9 bankruptcy petition in violation of the Michigan Constitution. See Declaration of William Wertheimer, filed herewith.

6. The *Flowers* plaintiffs' Michigan state law claim against Michigan Governor Snyder, Michigan Treasurer and the State of Michigan is well-grounded in the Michigan Constitution, as indicated by the debates concerning the adoption of what is now Article 9, Section 24 of the Michigan Constitution:

> MR. VAN DUSEN: An employee who continued in the service of the public employer in reliance upon the benefits which the plan says he would receive would have the contractual right to receive those benefits, and **would have the entire assets of the employer at his disposal from which to realize those benefits**.

1 Official Record, Constitutional Convention 1961, p. 774 (emphasis added).

7. *Flowers v. Snyder* was filed once it became abundantly clear that Governor Snyder intended to unconstitutionally authorize the Emergency Manager to use federal bankruptcy law to override the protections of the Michigan State Constitution prohibiting the impairment of accrued pension benefits.[1] The City blindly and dismissively treats these suits as

---

[1] The Emergency Manager's radical proposal to cut funding to the retirement system using a new pension valuation prepared for the City that (apparently through the use of a new mix of assumptions) purports to significantly increase the level of underfunding, to offer pennies on the dollar for retirement system funding and then declare that accrued benefits must be cut, raised legitimate and serious concerns that state law, as well as federal bankruptcy law, was being used, or about to be used to eviscerate pension benefits that are fundamental in human terms and importance to pensioners and protected under the Michigan Constitution. See Declaration of Charles M. Moore in Support of City of Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code, par. 11-16 (describing new valuation report and assumptions).

3

mere collection actions designed to find end-runs around its Chapter 9 bankruptcy case, as if the lawsuits were the work of enterprising creditors looking every which way to avoid the bankruptcy case. See e.g., Motion at ¶23. But as the Court is well aware, Chapter 9 reflects our system of dual sovereignty and its reach is limited accordingly. A municipality is eligible to be a debtor "*if and only if*" it "is specifically authorized, in its capacity as a municipality or by name to be a debtor under [chapter 9] by State law, or by a governmental officer. . . ." 11 U.S.C. § 109(c) (2) (emphasis added). *Flowers* and the other lawsuits were commenced precisely to contest the authority of the Governor to issue such an authorization under state law where a purpose of the chapter 9 would be to impair constitutionally protected pension benefits.

8.      Rather than enjoin *Flowers v. Snyder*, and the other lawsuits, they must proceed in the state courts. Otherwise, whether and to what extent this bankruptcy case is lawful under the Michigan Constitution is a cloud that will overhang even the most routine orders issued by this Court should the bankruptcy case continue without a resolution of these suits through the state court system and notwithstanding the orders already by the state court. The City's Motion is utterly blind to the fundamental role of these suits in defining the extent to which the bankruptcy can proceed to issue any orders at all. Or else the City hopes that the Court will not notice at all.

9.      For the foregoing reasons, as well the grounds set forth in the Objection of The Michigan Counsel 25 of the American Federation State, County and Municipal Workers (Docket 84), specifically, that the City is not entitled to a stay under the automatic stay or Section 105 of the Bankruptcy Code, as well as under long-standing principles of federal court abstention and federalism principles embodied in the Tenth Amendment to the U.S. Constitution which the

4

*Flowers plaintiffs* and International Union, UAW join in, the *Flowers* Plaintiffs and the UAW

respectfully submit that the Motion should be denied.

<div style="margin-left:40%">

Respectfully submitted,

s/William A. Wertheimer
William A. Wertheimer (P26275)
30515 Timberbrook Lane
Bingham Farms, MI 48025
248-644-9200
billwertheimer@gmail.com

*Attorney for Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington and Bruce Goldman*

s/Niraj Ganatra
Niraj Ganatra (P63150)
Michael Nicholson (P33421)
International Union, UAW
8000 East Jefferson Avenue
Detroit, Michigan 48214
313-926-5216
mnicholson@uaw.net

and

s/Babette Ceccotti
Babette Ceccotti
Cohen, Weiss and Simon LLP
330 West 42d Street
New York, NY 10036-6979
212-356-0227
bceccotti@cwsny.com

*Attorneys for International Union, UAW*

</div>

Dated: 23 July 2013

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - DETROIT**

In re:

CITY OF DETROIT, MICHIGAN,    Chapter 9

      Debtor,    Case No. 13-53846

  v.

            Honorable Steven W. Rhodes

# DECLARATION OF WILLIAM WERTHEIMER

1.  I am the lead attorney for plaintiffs in *Flowers, et al. v. Snyder, et al.,* No. 13-734-CZ (Ingham County Circuit Court July 3, 2013), one of the three "Prepetition Lawsuits" that the City is seeking to stay in its motion at Docket No. 56.

2.  In that motion the City states at paragraph 11 that plaintiffs in *Flowers* (and the other two "Prepetition Lawsuits") sought "*ex parte* orders" for temporary or preliminary injunctive relief. That is untrue. At no point did the *Flowers* plaintiffs (or the *Webster* plaintiffs) ever seek *ex parte* relief.

3.  I filed our suit on July 3, 2013 and drew Judge Rosemarie Aquilina. I had notified the Attorney General's office before filing that I would be going to chambers seeking an order to show cause for a hearing on a preliminary injunction precluding the Governor from authorizing a Detroit bankruptcy. I met up with Tom Quasarano and Michael Murphy of the Attorney General's office at court. The three of us went into Judge Aquilina's chambers where we met with Morgan Cole, the court officer/law clerk. Ms. Cole stated that Judge Aquilina could hear the

matter on July 15. I urged that the matter be set for July 15. The Attorney General's office objected and asked for a delay until July 22 because the earlier date would interfere with chemotherapy treatment that Mike Murphy (who would according to them be writing the response brief) had previously scheduled. I then agreed to the July 22 hearing date, with the defendants' responsive pleading to be filed July 15. Judge Aquilina subsequently issued the order to show cause for July 22 at 9 a.m.

4.      Later the day of July 3, John Canzano filed suit on behalf of the *Webster* plaintiffs. He subsequently obtained an order to show cause for his hearing for declaratory relief before Judge Aquilina on July 22 at 9 a.m.

5.      The Attorney General's office filed response briefs in the *Flowers* and the *Webster* cases on July 15.

6.      Michael Murphy's name was not on either brief defendants filed on July 15 and he has had no involvement in the case to my knowledge beyond his role in obtaining the July 22 hearing date described above

7.      On July 17 the Clark Hill law firm filed suit on behalf of the two Pension Systems and moved for an expedited briefing schedule and hearing pursuant to MCR 2.605(D).

8.      On July 18 Mike Pattwell, a Clark Hill attorney, advised me by phone that the *Pension System* plaintiffs would be seeking injunctive relief from Judge Aquilina that afternoon as they had received word that the City was planning on filing for bankruptcy on July 19. (The reply brief with the affidavit of Michael Nicholson was filed on July 18 and is attached as Exhibit 1.) I was planning on filing our reply brief for the July 22 hearing that afternoon, so I

2

decided to also appear before Judge Aquilina to seek immediate injunctive relief. I advised John Canzano of what I had heard and he decided similarly.

9. At approximately 3:35 p.m. on July 18, I telephonically advised Tom Quasarano that I would be appearing in Judge Aquilina's courtroom shortly after 4 p.m. to seek an injunction. He said that he would meet me there and did.

10. The City filed for bankruptcy at 4:06 p.m. We began our hearing at 4:15 p.m. A transcript of the hearing is attached.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

<div align="right">

s/William Wertheimer
William Wertheimer

Dated: July 23, 2013

</div>

3

# EXHIBIT 1

4

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

ROBBIE FLOWERS, MICHAEL WELLS,
JANET WHITSON, MARY WASHINGTON and
BRUCE GOLDMAN

                        Plaintiffs,

vs.

                                       Case No. 13-729-CZ
                                       Hon. Rosemarie Aquilina

RICK SNYDER, as the Governor of the State
of Michigan; ANDY DILLON, as the Treasurer of
the State of Michigan; and the STATE OF MICHIGAN,

                        Defendants.

                                                   /

William A. Wertheimer (P26275)
Attorney for plaintiffs
30515 Timberbrook Lane
Bingham Farms, MI 48025
248-644-9200
billwertheimer@gmail.com

Andrew Nickeloff (P37990)
Marshall J. Widick (P53942)
James A. Britton (P71157)
Attorneys for plaintiffs
Sachs Waldman
1000 Farmer
Detroit, MI 48226
313-496-9429
anickelhoff@sachswaldman.com
mwidick@sachswaldman.com
jabritton@sachswaldman.com

Thomas Quasarano (P27982)
Brian Devlin (P34685)
Assistant Attorneys General
PO Box 30754
Lansing, MI 48909
quasaranot@michigan.gov

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION[1]

---

[1]     This brief is in reply to defendants' response to plaintiffs' motion. It is not in response to defendants' motion for summary disposition. Plaintiffs will respond to that motion as provided for under MCR 2.116(G)(1)(a)(i) once defendants properly notice same. Plaintiffs do not agree to defendants' request that this Court (apparently at the hearing and after the fact) waive or adjust the response time provided in the court rules. State's brief, page 16.

Defendants' brief ignores (but does not dispute) the basic facts that plaintiffs allege and grossly mischaracterizes the nature of plaintiffs' claim. In Parts A and B below, we address these two defects in defendants' response. Then, in Parts C through G, we respond to the remainder of defendants' arguments in response to our request for a preliminary injunction.

**A. Undisputed Facts**. Plaintiffs' complaint is based on the undisputed fact that the Detroit Emergency Manager has publicly stated that Detroit retirees, employees and their unions must agree to significant cuts to their vested pension benefits outside of a Chapter 9 federal bankruptcy proceeding, and that if they fail to agree he will cut those benefits through operation of the federal bankruptcy code, based on the supremacy of the federal bankruptcy code over Article 9, Section 24 of the Michigan Constitution, which provides that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Since under Public Act 436 such a federal bankruptcy proceeding cannot be initiated by the Emergency Manager without authorization by Governor Snyder, plaintiffs have sued the Governor to stop such an authorization and the diminishment and impairment of vested Detroit pension benefits which will necessarily follow from it. In short, this litigation seeks to stop action by Governor Snyder that the plaintiffs allege to be unconstitutional under Article 9, Section 24, and does not seek a declaration that Public Act 436 is itself unconstitutional.

Since this litigation was commenced on 3 July 2013, the City of Detroit has again refused to accept or address the strictures of Article 9, Section 24. Thus, on 9 July 2013,

2

the General Counsel of the UAW – which is the collective bargaining representative of plaintiffs Robbie Flowers and Bruce Goldman – wrote the City's lawyers, asking them:

> please cite the basis for any claim that the UAW has the authority to compromise the vested benefits of active and/or retired UAW or former UAW members employed or formerly employed by the City of Detroit and its affiliates. As I presume you know, Article 9, Section 24 of the Michigan Constitution provides in pertinent part that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Please tell me what authority your firm and/or Mr. Orr believe gives the UAW the right to compromise vested pension benefits, despite the contrary provisions of Article 9, Section 24. Please also tell us whether Mr. Orr and/or your firm take the position that Article 9, Section 24 of the Michigan Constitution is not or may not be binding on the City of Detroit, the State of Michigan, Governor Snyder, Mr. Orr or the UAW and state, if that is the case, under what circumstances you believe that Article 9, Section 24 would not bind some or all of these persons or entities.

Affidavit of Michael Nicholson, Exhibit B. Mr. Nicholson wrote this email in part to accept an invitation sent to UAW and other unions and retiree groups to attend a meeting on 10 July 2013 with representatives of both the City of Detroit and the Detroit General Retirement System. Id., Ex. A.

Since this litigation was filed on July 3, the Detroit Emergency Manager has also continued to publicly take the position that vested pensions must be cut without regard to Article 9, Section 24 of the Michigan Constitution. See the video of his 5 July 2013 interview with Detroit Public Television's MiWeek program beginning at 14 minutes, www.youtube.com/watch?v=TspCsrXmkZA.

In addition, it is clear that the Detroit Emergency Manager is moving closer to a bankruptcy filing and that the Governor is directly involved. In an article this past Monday headlined "Detroit Bankruptcy Clock Ticking" Daniel Howes reported in the Detroit News: "The governor and Emergency Manager Kevyn Orr met Monday to

3

discuss the situation. Additional meetings with creditors, legal teams and the Snyder administration are scheduled this week to determine whether Orr and his team are making enough meaningful progress in their talks with creditors, unions and pension funds to delay a bankruptcy filing." See Exhibit A attached and available online at www.detroitnews.com/article/20130716/BIZ/307160025.

As these new facts show, the Emergency Manager continues to demand that unless unions and retiree groups agree to significant cuts in retiree benefits outside of bankruptcy, he will impose such cuts in bankruptcy, following the Governor's authorization to commence a Chapter 9 proceeding, in derogation of the constitutional rights guaranteed by Article 9, Section 24. See Amended Verified Complaint, ¶ 21-25. The factual basis for plaintiffs' complaint in this litigation is thus undisputed, and stands against defendants' claim that – contrary to the unchallenged facts – their concerns about their pensions and their rights are merely hypothetical and unripe because nothing is being done to harm them. To the contrary, real harm continues to take place now: the plaintiffs continue to be told that unless they agree to cuts in their vested pension benefits now, they will be imminently be imposed through a Chapter 9 bankruptcy proceeding authorized by the Governor.

**B.** **Mischaracterization of Plaintiffs' Complaint.** Defendants' claim that plaintiffs "bring a facial constitutional challenge" to Public Act 436. State's brief, page 1. Not so. Plaintiffs begin their complaint by stating that their constitutional right to vested pension benefits "are being violated [present tense] in the emergency financial management proceedings that the State has implemented in response to Detroit's fiscal crisis and whose rights will be threatened [future tense] with abrogation if Governor

4

Snyder authorizes the Detroit Emergency Manager to proceed under Chapter 9 in bankruptcy." Amended verified complaint, ¶ 1. Nowhere in their complaint do plaintiffs allege that Public Act 436 is unconstitutional on its face or otherwise. (Nor do they seek relief consistent with a facial challenge.) Mischaracterizing plaintiffs' allegations has three tactical advantages for defendants. First, it allows defendants to ignore the facts on the ground, facts upon which this civil action is based. Second, it allows defendants to make their arguments without acknowledging that plaintiffs' constitutional rights under Article 9, Section 24 are being threatened now. Third, it allows defendants to argue that they can protect these constitutional rights in bankruptcy, even though Detroit's Emergency Manager has flatly and uncategorically opined to the contrary. We address these points in what follows below.

     **C.    Plaintiff's Request for Injunctive Relief is Neither Premature, Overbroad nor Constitutionally Infirm.** Defendants here make four arguments against injunctive relief. None has merit.

     1.    First, defendants argue that no prohibitory injunction can be issued because declaratory relief has not as yet failed, citing dictum from *Strauss v Governor,* 459 Mich 526, 532; 592 NW2d 53 (1999). State brief, pages 4-5. The Court's dictum from *Strauss* is inapplicable here for at least three reasons. First, *Strauss* involved a fight between the Governor and the State Board of Education over which constitutional provision took precedence, Article 5, Section 2 or Article 8, Section 3. This case involves the State in the person of the Governor abrogating the constitutional rights of its citizens. That is a distinction that should make a difference. Second, this case involves a very public fight in which the Governor knows very well that his Emergency Manager is

<div align="center">5</div>

refusing to recognize the Article 9, Section 24 rights of plaintiffs and thousands of other

retirees. To require this Court to first issue declaratory relief in these circumstances

elevates form over substance. Third, the bankruptcy filing may be imminent, such that

there may be no time for the courtesy contemplated by *Strauss.* See, e.g.,

www.freep.com/article/20130718/news01/307180107/detroit-prepares-file-bankruptcy-

soon-friday ("Detroit prepares to file for bankruptcy as soon as Friday") and

www.youtube.com/watch?v=TspCsrXmkZA, beginning at 10 minute mark. With all that

said, plaintiffs would have no objection if this Court fashioned the requested preliminary

relief in the form of a declaration, but only if the Governor agrees not to act contrary to

the declaration before the plaintiffs have the opportunity to return to this Court and seek a

prohibitory injunction.

     2.    Defendants next argue that injunctive relief is premature given the

opportunity for relief in bankruptcy court. State brief, page 5. They cite two Bankruptcy

Code provisions: 11 USC §109(c) and 11 USC § 943(4). Neither protects against an

impairment of pension benefits in violation of Article 9, Section 24. First, none of the

disjunctive criteria in 109(c) for eligibility to proceed under Chapter 9 contain a basis for

a challenge based on Article 9, Section 24. Second, the requirement in 11 USC § 943(4)

that "the debtor is not prohibited by law from taking any action necessary to carry out the

plan" may not protect Article 9, Section 24 rights because of the principle that "federal

law trumps state law," which the Detroit Emergency Manager has indicated will be

applied. To support this concern, we cited in our opening brief the bankruptcy court

decisions in *In re City of Stockton, California,* 478 BR 8 (Bankr ED Cal 2012); and *In re

City of Vallejo,* 403 BR 72 (Bankr ED Cal 2009), which we expect will be cited in a

Chapter 9 proceeding in support of the proposition that federal bankruptcy law supersedes Article 9, Section 24 of the Michigan Constitution.

3. Defendants also argue that the injunction request is overbroad because "[t]his Court cannot determine, based on the record Plaintiffs present, how any bankruptcy proceeding for the City of Detroit, if filed, may impact their pension benefits or if it will at all, until the bankruptcy plan is filed with the bankruptcy court and ultimately confirmed." State brief, page 6. But this claim that plaintiffs' concerns are only hypothetical ignores the Detroit Emergency Manager's stated intent and the terms of his proposal to creditors. And it also ignores the fact that if no relief is granted now, it will likely be too late after a bankruptcy filing to protect plaintiffs' rights under Article 9, Section 24. In other words, the result, if defendants' argument is accepted, is that by the time the harm comes the citizens of the State of Michigan who are Detroit pensioners will be unable to sustain their State constitutional rights. That is precisely the plan to violate Article 9, Section 24 of the Michigan Constitution that we believe the Governor will facilitate at the request of the Emergency Manager, absent the relief we request.[2]

4. Defendants further argue that the plaintiffs' injunction request is mandatory. State brief, page 6. It is not. As defendants recognize in making other of their arguments, the relief sought by plaintiffs' pending motion is, by its terms, clearly prohibitory.

---

[2] The motion before the Court is a motion for preliminary injunction, not a request for final relief. While we recognize the sensitivity of this issue and this litigation, the Court should consider the appropriateness of limited discovery on the issue of communications between the Governor, the defendant State Treasurer and the Emergency Manager (and their staff and other agents) with respect to City of Detroit vested pension benefits. Thus, even it plaintiffs are found to lack standing to seek injunction, this civil action may still proceed on the claim in Complaint for declaratory relief.

**D.** **Plaintiffs Have Standing to Bring This Action.** Defendants recognize that the Michigan Supreme Court restored Michigan's limited, prudential approach to standing in *Lansing School Education Ass'n v Lansing Board of Education,* 487 Mich 349, 372; 792 NW2d 686 (2010). State's brief, page 7.[3] This means that citizens have standing if they have some individual interest in the subject matter of the complaint that is not common to all the citizens of the state. 487 Mich at 356. Plaintiff retirees and vested employees meet such a test. Their pension benefits are in danger of being reduced or eliminated if the Governor is allowed to authorize a Chapter 9 bankruptcy filing. The Detroit Emergency Manager is threatening precisely that now, in an effort to coerce the plaintiffs' agreement to "significant cuts" in their vested retirement benefits. Other citizens of the state do not have such an interest. Plaintiffs have standing to seek injunctive relief.[4]

Defendants also argue that Public Act 436 expressly states (at MCL 141.1572) that it provides no cause of action. State's brief, pages 7-8. But plaintiffs are not suing for a violation of Public Act 436; they are suing over an abridgement of their constitutional

---

[3]     Despite the dissent in *Lansing School Education Ass'n* and the changing composition of the Court, the Court has given no indication that it intends to retreat from this position. To the contrary. See, *Ader v Delta College Bd of Trustees,* 493 Mich 887; 822 NW2d 221 (2012) (vacating order that had granted leave to appeal from a decision of the Court of Appeals applying *Lansing School Education Ass'n* and denying application for leave) (J. Markman dissenting).

[4]     Additionally, although not at issue with respect to plaintiffs' pending motion for preliminary injunction, this Court clearly has jurisdiction to issue a declaratory judgment under MCR 2.605. An "actual controversy" under that court rule exists when a judgment is necessary to guide a parties' future conduct in order to preserve legal rights. *UAW v Central Michigan University,* 295 Mich App 486, 495; 815 NW2d 132 (2012). In granting such relief "courts are not precluded from reaching issues before actual injuries or losses have occurred." *Id.* Accord, *Huntington Woods v Detroit,* 279 Mich App 603, 616; 761 NW2d 127 (2008); *Lake Angelus v Aeronautics Comm,* 260 Mich App 371, 376-77; 676 W2d 642 (2004).

8

rights.[5] A Michigan court of general jurisdiction is the proper forum for a citizen of Michigan to bring a claim of a state constitutional violation. And the relief plaintiffs seek is available through this Court. MCR 3.310 and 2.605.

E. **Plaintiffs' Constitutional Claims Are Ripe for Review.** Defendants argue that plaintiffs' constitutional claims are not ripe because the bankruptcy filing has not yet occurred. State's brief, pages 11-12. Incredibly, they argue this knowing that the Emergency Manager has announced that he will seek to extinguish plaintiffs' Article 9, Section 24 rights should he file a Chapter 9 in response to their failure to agree now to "significant cuts" in their pensions.

One short, practical answer is that a bankruptcy filing may well ring a bell that cannot be unrung: the trumping of plaintiffs' constitutional rights by federal law, after the sovereign has waived – through the Governor's authorization for a Chapter 9 – whatever rights the State has under the Tenth Amendment to the federal Constitution to insist on the supremacy of the State Constitution. See, *In re City of Vallejo, supra,* 403 BR 72 (Bankr ED Cal 2009)(copy attached). That is the legal opinion of the Detroit Emergency Manager (an opinion that plaintiffs have little reason to doubt for purposes of this motion[6] and that defendants do not dispute in their brief): that federal law will trump

---

[5]      The plaintiffs' pension plan gives them a right to bring such a suit. See Section 47-3-11(i)(1) of the General Retirement System Pension Plan which is also Ord. No. 29-01, § 1, 11-30-01 and is available on-line at www.rscd.org.

[6]      Plaintiffs, of course, reserve the right in bankruptcy court to argue to the contrary. But we note, for example, the holding of federal bankruptcy court in *Vallejo*: "Therefore, "by authorizing the use of chapter 9 by its municipalities, California must accept chapter 9 in its totality; it cannot cherry pick what it likes while disregarding the rest." *In re County of Orange*, 191 B.R. 1005, 1021 (Bankr. CD Cal 1996) … Since the state must consent to a bankruptcy filing under Section 109(c)(2) [of the Bankruptcy Code], the state consents to the displacement of its own law in order to obtain the benefits uniquely available under the Bankruptcy Code." 403 BR at 76.

Article 9, Section 24 of the Michigan Constitution. See the Detroit Emergency Manager's 14 June 2013 statement to the Detroit Free Press Editorial Board quoted at ¶ 22 of the amended verified complaint. ("If we don't reach an agreement one way or the other, we feel fairly confident that the state federal law, federalism, will trump state law or negotiate.") Or put in plain terms, the constitutional rights plaintiffs are relying on here will then be a nullity.

A second short, practical answer is that the threats to ignore Article 9, Section 24 are ongoing and are being used to browbeat plaintiffs (and others) into a deal that would avoid bankruptcy but ignore their constitutional rights. Defendants admit as much at the conclusion of their brief when they urge this Court to grant their motion to dismiss now "to avoid adversely impacting the City of Detroit Emergency Manager's current efforts to reach a consensus that could achieve some financial stability for the City without recourse to bankruptcy. " State brief, page 16. We know from the verified and unrebutted complaint that the "consensus" will be reached, if at all, in violation of plaintiffs' rights. Defendants would then undoubtedly argue that any attack on that "consensus" agreement would be moot or in some other way immune to attack. The time for this issue to be decided is now.

And the law supports such a common sense finding that this case is ripe for decision now. All that is required is that "a genuine controversy exist between the parties." *Michigan Chiropractic Council v Comm'r of Ins,* 475 Mich 363, 381; 716 NW2d 561 (2006). A claim lacks ripeness only where "the harm asserted has [not] matured sufficiently to warrant judicial intervention …" *Id.,* quoting from *Warth v Seldin,* 422 US 490, 499 n 10. A genuine controversy exists here and now. Plaintiffs are fighting

for their future financial well-being. And that fight will be over before it begins absent judicial intervention now.

      **F.**    **Plaintiffs Have Stated a Claim**. Defendants' argument that plaintiffs have failed to state a claim is entirely based on the mistaken premise that plaintiffs are bringing a facial challenge to Public Act 436. State brief, page 12. Plaintiffs' claim is that the receivership under which the City of Detroit is currently operating is currently ignoring the Article 9, Section 24 rights of the City's' retirees (this is supported with multiple and direct statements from the Detroit Emergency Manager) and that in these circumstances (and this part of the complaint is in caps, bolded and underlined at the top of page 4) "it would be unconstitutional for the governor to authorize the Detroit Emergency Manager to proceed under Chapter 9." This states a claim.

      **G.**    **Plaintiffs Have Met the Prerequisites for Injunctive Relief**. Defendants argue first that plaintiffs will not suffer irreparable harm if an injunction is not issued. State's brief, page 13. Defendants do not even attempt to argue that the loss or in the words of the Detroit Emergency Manager the "significant cuts" in plaintiffs' vested pension benefits would not constitute irreparable harm. Rather they argue that plaintiffs will have a remedy in bankruptcy. Not according to the Detroit Emergency Manager. And he would be speaking for the debtor in bankruptcy.

      Second, defendants argue that the balance of harms favors them by using a claim of urgency, all as part of an argument that completely fails to account for the derogation of Michigan Constitutional rights that they intend to cause. State's brief, pages 13-14. Put another way, the defendants claim that our State Constitution can be ignored if the Governor and his agents decide that following it would complicate matters in a municipal

receivership. This would surprise the framers of our State Constitution, one of whom stated that the then new Article 9, Section 24 meant that a public employee with vested pension benefits, "would have the entire assets of the employer at his disposal from which to realize those benefits." 1 Official Record, Constitutional Convention 1961, p 774.

Third, defendants argue the public interest. State's brief, pages 14-15. Certainly, the public interest would be served if the Governor were to be precluded from authorizing a bankruptcy that would threaten the abrogation of constitutional rights. The people, in adopting their Constitution, including Article 9, Section 24, have spoken in that regard. And just as certainly, the public interest would not be served if the Detroit Emergency Manager were to be allowed to continue down his path all the while ignoring those constitutional rights.

## CONCLUSION

Plaintiffs are entitled to know whether their Article 9, Section 24 constitutional rights have any meaning in the current Detroit financial emergency. And they are entitled to know that now, and to have those rights protected. The plaintiffs' motion for preliminary injunction should be granted.

Respectfully submitted,

s/William A. Wertheimer
William A. Wertheimer (P26275)
Attorney for plaintiffs
30515 Timberbrook Lane
Bingham Farms, MI 48025
248-644-9200

Andrew Nickeloff (P37990)
Marshall J. Widick (P53942)
James A. Britton (P71157)

12

Attorneys for plaintiffs
Sachs Waldman
1000 Farmer
Detroit, MI 48226
313-496-9429
anickelhoff@sachswaldman.com


mwidick@sachswaldman.com
jabritton@sachswaldman.com

Dated: 18 July 2013

PROOF OF SERVICE

THE UNDERSIGNED CERTIFIES THAT ON 18 JULY 2013 THE FOREGOING
INSTRUMENT WAS SERVED UPON THE FOLLOWING:

1.  Thomas Quasarano
2.  Brian Devlin
3.

BY:

X    U.S. MAIL                    _____   FAX

_____   HAND DELIVERY           _____   U.S.EXPRESS MAIL
_____   UPS                        X      OTHER:  email
BY:
SIGNATURE: _____

13

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

ROBBIE FLOWERS, MICHAEL WELLS,
JANET WHITSON, MARY WASHINGTON and
BRUCE GOLDMAN

                    Plaintiffs,

vs.
                                        Case No. 13-729-CZ
                                        Hon. Rosemarie Aquilina

RICK SNYDER, as the Governor of the State
of Michigan; ANDY DILLON, as the Treasurer of
the State of Michigan; and the STATE OF MICHIGAN,

                    Defendants.

                                                    /

William A. Wertheimer (P26275)
Attorney for plaintiffs
30515 Timberbrook Lane
Bingham Farms, MI 48025
248-644-9200
billwertheimer@gmail.com

Andrew Nickeloff (P37990)
Marshall J. Widick (P53942)
James A. Britton (P71157)
Attorneys for plaintiffs
Sachs Waldman
1000 Farmer
Detroit, MI 48226
313-496-9429
anickelhoff@sachswaldman.com
mwidick@sachswaldman.com
jabritton@sachswaldman.com

Thomas Quasarano (P27982)
Brian Devlin(P34685)
Assistant Attorneys General
PO Box 30754
Lansing, MI 48909
quasaranot@michigan.gov

AFFIDAVIT OF MICHAEL NICHOLSON

State of Michigan

County of Wayne

    Michael Nicholson, being first duly sworn, states as follows:

1

1.  My name is Michael Nicholson. I am a citizen of the State of Michigan. I am employed as General Counsel by International Union, UAW. I make this affidavit based on personal knowledge.

2.  On June 28, 2013, I received the email message attached hereto as Exhibit A from David Birnbaum, a lawyer with the Jones Day law firm, which is lead counsel to the Emergency Manager for the City of Detroit.

3.  On July 9, 2013, I sent the email message attached hereto as Exhibit B to Mr. Birnbaum and his colleague at Jones Day, Dan Merrett.

4.  Since July 9, 2013 until the time that I signed this affidavit today, I have received no response from anyone at Jones Day to the questions that I raised in Exhibit B with respect to pension benefits and Article 9, Section 24 of the Michigan Constitution.

Further Affiant sayeth not.

_____
Michael Nicholson

Subscribed and sworn to before me this 18th day of July 2013.

_Nancy S. Dennis_
Nancy S. Dennis, Notary Public
County of Macomb
State of Michigan
Acting in Wayne County
My commission expires February 10, 2017

NANCY S DENNIS
Notary Public - Michigan
Macomb County
My Commission Expires Feb 10, 2017
Acting in the County of _Wayne_

2

**From:** David Birnbaum <dbirnbaum@jonesday.com> 📎
**Subject:** City of Detroit -- Pension Restructuring Discussions (GRS)
**Date:** June 28, 2013 4:42:56 PM EDT
**To:** MNicholson@uaw.net
**Cc:** Evan Miller <emiller@JonesDay.com>, Brian Easley <beasley@JonesDay.com>, "David G. Heiman" <dgheiman@JonesDay.com>, Heather Lennox <hlennox@JonesDay.com>

2 Attachments, 4 KB

Dear Mr. Nicholson:

Following the presentations made on June 20th, outside counsel for GRS reached out to the City of Detroit for more information on, and to discuss, a pension restructuring proposal. GRS and the City of Detroit have tentatively scheduled a meeting on pension restructuring for Wednesday, July 10th, at 1 pm (location to be determined). The City will be prepared to provide more information on its developing pension restructuring proposal. Because the City expects that the proposal will impact the pension benefits of active participants of GRS, who include your members, the City would like to invite you to this meeting on July 10th, at 1 pm to participate in the discussion. We expect the meeting will last approximately 2 hours. GRS will be sending an advisor-only team (attorneys and financial advisors), and the City believes this is a good way to proceed. Please let us know at your earliest convenience if you will attend and the names of the attendees. We will contact you as soon as practicable to provide details about the meeting location.

Regards,

David



**David S. Birnbaum**

77 West Wacker Drive, Suite 3500 • Chicago, IL 60601
**DIRECT** 312.269.4005 • **FAX** 312.782.8585 • **EMAIL** dbirnbaum@jonesday.com

=========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
=========

**Exhibit A**

**From:** Michael Nicholson <mnicholson@uaw.net>
**Subject:** Re: Detroit - Data room access/ July 10 and 11 meetings
**Date:** July 9, 2013 1:57:49 PM EDT
**To:** Dan Merrett <dmerrett@JonesDay.com>, "David S. Birnbaum" <dbirnbaum@jonesday.com>
**Cc:** Marshall Widick <mwidick@sachswaldman.com>, Andrew Nickelhoff <anickelhoff@sachswaldman.com>



---

Dear Messrs. Merrett and Birnbaum:

UAW has requested access to the City of Detroit data room maintained by your firm. You have responded by proffering a proposed nondisclosure agreement and release, and have made UAW's execution of such documents a condition of our access to the data room.

Please explain the legal basis for conditioning UAW's access to whatever information is obtainable through the City of Detroit data room upon our execution of the confidentiality agreement and release that you have proferred. As you know, UAW has often signed confidentiality agreement with private corporations going through financial restructurings. However, in this instance, we are dealing with a public entity, the City of Detroit. I would like to understand the basis for withholding data room information with respect to the City of Detroit based on claims of confidentiality.

As to the meetings concerning pensions and OPEB that your firm, on behalf of Mr. Orr, is conducting on July 10 and 11, 2012, we wish to attend the meetings, but reserve all rights with respect to the meetings and to such position(s) that Mr. Orr and/or your firm may seek to take with respect to such meetings.

Further to that reservation of rights, UAW continues to seek an answer from Mr. Orr and your firm to the following: please cite the basis for any claim that the UAW has the authority to compromise the vested benefits of active and/or retired UAW or former UAW members employed or formerly employed by the City of Detroit and its affiliates. As I presume you know, Article IX, Section 24 of the Michigan Constitution provides in pertinent part that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Please tell me what authority your firm and/or Mr. Orr believe gives the UAW the right to compromise vested pension benefits, despite the contrary provisions of Article IX, Section 24. Please also tell us whether Mr. Orr and/or your firm take the position that Article IX, Section 24 of the Michigan Constitution is not or may not be binding on the City of Detroit, the State of Michigan, Governor Snyder, Mr. Orr or the UAW and state, if that is the case, under what circumstances you believe that Article IX, Section 24 would not bind some or all of these persons or entities. We also seek an answer to the same questions with regard to vested post-retirement insurance benefits, but as to such the question is posed with the additional need to consider, inter alia, the holding of the United States Supreme Court in *Chemical Workers v. Pittsburgh Plate Glass*, 404 U.S. 157 (1971), which states at its footnote 20 that "[u]nder established contract principles, vested retirement rights may not be altered without the pensioner's consent."

We do not understand the July 10 and 11 multiple stakeholder meetings to which we have been invited to be a forum for negotiation of your proposed pension and retiree health care changes, but are willing to attend to obtain for our union whatever information may be provided at those meetings. Your full answers to the questions posed in the foregoing paragraphs of this message will help the UAW determine the scope of any such negotiations and the UAW's decisions regarding its representative capacity in them, about which your firm has inquired.

Please provide me with the exact location of the July 10 and 11 meetings.

Thank you.

Michael Nicholson
General Counsel - International Union, UAW
Solidarity House - 8000 East Jefferson Avenue
Detroit, Michigan 48214
UAW Office Phone: 313.926.5216
Cell Phone: 734.719.0850
Email: mnicholson@uaw.net

**Exhibit B**

********************************************
*This e-mail message from Michael Nicholson is for the sole use of
the intended recipient(s) and may contain confidential and privileged
information. Any unauthorized review, use, disclosure or distribution is*

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

-------------------------------------------------------------- x
        :
In re:             :   Chapter 9
        :
CITY OF DETROIT, MICHIGAN,  :   Case No.: 13-53846
        :
        Debtor.  :   Hon. Steven W. Rhodes
        :
-------------------------------------------------------------- x

**PROOF OF SERVICE**

The undersigned certifies that on July 23, 2013, a copy of Objection Of Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington, Bruce Goldman and International Union, UAW To Motion of Debtor, Pursuant to Section 105(a) Of The Bankruptcy Code, For Entry Of An Order Extending The Chapter 9 Stay To Certain (A) State Entiries, (B) Non-Officer Employees and (C) Agents and Representatives Of The Debtor (Docket No. 56) was served upon parties via the Court's electronic court filing service.

I declare that the foregoing statement is true to the best of my information, knowledge and belief.

> /s/ Niraj R. Ganatra
> Niraj R. Ganatra (P63150)
> International Union, UAW
> 8000 E. Jefferson Avenue
> Detroit, Michigan 48214
> (313) 926-5216
> nganatra@uaw.net

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-----------------------------------------------------x
:
In re                        :      Chapter 9
:
CITY OF DETROIT, MICHIGAN,    :      Case No. 13-53846
:
             Debtor.     :      Hon. Steven W. Rhodes
:
:
-----------------------------------------------------x

## DEBTOR'S REPLY IN SUPPORT OF: (I) MOTION OF DEBTOR, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE ENTITIES, (B) NON-OFFICER EMPLOYEES AND (C) AGENTS AND REPRESENTATIVES OF THE DEBTOR; AND (II) MOTION OF DEBTOR, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER  CONFIRMING THE PROTECTIONS OF SECTIONS 362, 365 AND 922 OF THE BANKRUPTCY CODE

The City of Detroit, Michigan (the "Debtor" or the "City") hereby files this

reply in support of the (i) Motion of Debtor, Pursuant to Section 105(a) of the

Bankruptcy Code, for Entry of an Order Extending the Chapter 9 Stay to Certain

(A) State Entities, (B) Non-Officer Employees and (C) Agents and Representatives

of the Debtor (Docket No. 56) (the "Stay Extension Motion") and (ii) Motion of

Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order

Confirming the Protections of Sections 362, 365 and 922 of the Bankruptcy Code

(Docket No. 53) (the "Stay Confirmation Motion" and, together with the Stay

Extension Motion, the "Stay Motions").[1]  The Stay Extension Motion seeks the

entry of an order extending the Chapter 9 Stay to (i) the State Entities,

(ii) the Non-Officer Employees and (iii) the City Agents and Representatives.  The

Stay Confirmation Motion seeks the entry of a "comfort order" confirming the

application of the Chapter 9 Stay and the Contract Protections.  The Michigan

Council 25 of the American Federation of State, County and Municipal

Employees, AFL-CIO ("AFSCME") has filed an objection (Docket No. 84)

(the "AFSCME Objection") to, among other motions filed by the Debtor,[2] the Stay

Motions.  For the reasons set forth below, the AFSCME Objection should be

overruled, and the Stay Motions should be granted.

---

[1]    Capitalized terms used but not defined herein shall have the meaning given
       to them in the Stay Motions.

[2]    In addition to objecting to the Stay Motions, AFSCME also objects to
       certain relief sought by the City in its:  (a) Motion of Debtor for Entry of an
       Order (A) Directing and Approving Form of Notice of Commencement of
       Case and Manner of Service and Publication of Notice and (B) Establishing
       a Deadline for Objections to Eligibility and a Schedule for Their
       Consideration (Docket No. 18) (the "Case Commencement Motion") and
       (b) Motion of Debtor, Pursuant to Sections 102(1)(A) and 105(a) of the
       Bankruptcy Code and Rules 2002(m) and 9007 of the Federal Rules of
       Bankruptcy Procedure, for Entry of an Order Establishing Case Management
       and Scheduling Procedures (Docket No. 39) (the "Case Management
       Motion").  As neither the Case Commencement Motion nor the Case
       Management Motion are scheduled to be heard by the Court at the hearing
       scheduled for July 24, 2013 (at which hearing the Stay Motions will be
       heard), the City intends – and hereby reserves its right – to respond to
       AFSCME's objections to such motions at a later date.

## Preliminary Statement

1.      The AFSCME Objection spends the majority of its 30 pages addressing matters essentially unrelated to the Stay Motions; thus, it is worth noting what is <u>not</u> now before the Court.  The question of the City's eligibility to be a debtor under chapter 9 of the Bankruptcy Code and any related Tenth Amendment arguments are not currently before the Court.  Whether the City can modify its pension liabilities by means of the rejection of contracts pursuant to section 365 of the Bankruptcy Code is not before the Court.  Whether the City can confirm a plan of adjustment that contemplates the compromise of pension benefits is not before the Court.  AFSCME and other parties in interest will have the opportunity to contest those issues before this Court in due course; indeed, the City already has proposed a schedule for the Court's expeditious determination of any eligibility challenges.  The AFSCME Objection's extended discussions of each of these questions serve only to distract from the relatively narrow, and common, relief sought by the Stay Motions.

2.      That actual relief sought by the Stay Motions is straightforward.  The City seeks an extension of the Chapter 9 Stay, not to protect non-debtor parties from inconvenience or to grant them unwarranted protections, but to protect <u>itself</u> from the adverse impact of litigation that, directly or indirectly, denies the City the protections of the Chapter 9 Stay.  The Prepetition Lawsuits – which AFSCME

concedes purport not only to deny the City the protections under the Chapter 9 Stay but *of chapter 9 altogether* – embody precisely this sort of litigation. What cannot be contested now is that proceedings such as the Prepetition Lawsuits – despite two of them being commenced against solely non-debtors – threaten to impede the efficient administration of this chapter 9 case, deny the City its breathing spell to focus on a plan of adjustment of its debts and undermine the exclusive jurisdiction of this Court that arose upon the filing of the City's petition. Accordingly, the AFSCME Objection should be overruled and the Stay Motions granted.[3]

### *Postpetition State Court Rulings Do Not Divest This Court of Its Exclusive Jurisdiction Over This Case*

3.      The AFSCME Objection repeatedly returns to the same refrain in support of its various arguments:  because the State Court entered the Declaratory Judgment in the Webster Lawsuit – *after the filing of the City's chapter 9 petition* – finding PA 436 unconstitutional and taking the extraordinary

---

[3]      By the Stay Confirmation Motion, the City seeks what is essentially a "comfort order" confirming the application of the Chapter 9 Stay and the Contract Protections in non-controversial contexts.  Although it objects to the Stay Confirmation Motion, AFSCME does not contest the substance thereof and offers no specific argument why the relief requested therein should not be granted.  Accordingly, the Stay Confirmation Motion should be granted for the uncontroverted reasons set forth therein.

step of requiring the Governor to direct the Emergency Manager to "withdraw the chapter 9 petition," this Court must essentially ignore its exclusive jurisdiction over this chapter 9 case and refrain from adjudicating the Stay Motions (or, indeed, any other matters). However, a state court's postpetition entry of an order purporting to settle matters within the exclusive jurisdiction of a bankruptcy court (such as the State Court's Declaratory Judgment purporting to dispose of questions directly related to the City's eligibility to be a debtor under section 109(c) of the Bankruptcy Code and the *de facto* dismissal of this case) cannot and does not divest this Court of such jurisdiction and does not limit its ability to decide matters squarely within that jurisdiction.

4. When the City filed its chapter 9 petition, this Court became vested with exclusive jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) and with jurisdiction over all proceedings within this case pursuant to 28 U.S.C. § 1334(b). This grant of jurisdiction works in tandem with sections 362 and 922 of the Bankruptcy Code, which: (a) halt, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" (section 362(a)(3)) and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title" (section 362(a)(6)); and (b) are effective ***immediately upon the filing of a chapter 9 petition*** (see 11 U.S.C. § 362(a) ("a petition filed

under section 301 … of this title … operates as a stay, applicable to all entities…."); 11 U.S.C. § 922(a) ("A petition filed under this chapter operates as a stay….")). These provisions confirm that the filing of a petition divests all other courts (other than the district court for the Eastern District of Michigan) of jurisdiction over a debtor's property and affairs. Once a debtor files for chapter 9, creditors cannot make an end-run around the bankruptcy court by bringing actions against the debtor or third parties in other tribunals seeking to enforce claims against the debtor or otherwise to influence the administration of the case. That principle has direct application here.

5.    The Court's jurisdiction plainly encompasses the application of the provisions of the Bankruptcy Code and the determination of fundamental questions in this chapter 9 case (e.g., whether the City is eligible to proceed as a debtor under chapter 9 in accordance with 11 U.S.C. § 109(c)). See, e.g., 11 U.S.C. § 921(c) (reserving the decision on a chapter 9 debtor's eligibility to the bankruptcy court). Indeed, the application of section 109(c) of the Bankruptcy Court to the facts of this case is a paradigmatic exercise of that jurisdiction. The Chapter 9 Stay leaves no room for parallel state court proceedings, especially where such questions are federal issues concerning application of a federal statute the determination of which is assigned to a federal court. Indeed, the questions of eligibility and authorization to file a chapter 9 case are not state law questions at

all, and no state law refers or depends on them.  By attacking the City's authority to file under chapter 9, the continuation of the Prepetition Lawsuits is a blatant invasion of this Court's jurisdiction wherein the plaintiffs and AFSCME seek to make the State Court, rather than this Court, the arbiter of core bankruptcy issues. The Court should reject this attempt to undermine fundamental bankruptcy policy and jurisdiction – and any other similar attempts to come – by extending the Chapter 9 Stay, as requested in the Stay Extension Motion.

### *Extension of the Stay is Appropriate Under the Present Circumstances*

6.    The AFSCME Objection's argument that the Court may not extend the Chapter 9 Stay to non-debtors pursuant to section 105 of the Bankruptcy Code is incorrect and contradicted by relevant case law.  Courts – including the Sixth Circuit in a case cited by AFSCME – commonly recognize that section 105 of the Bankruptcy Code empowers a court to extend the automatic stay to, or otherwise enjoin proceedings against, non-debtor parties.  See, e.g., Patton v. Bearden, 8 F.3d 343, 349 (6th Cir. 1993) (noting that, if the court were to apply the "unusual circumstances" test to a debtor's request to extend the automatic stay (a question it ultimately did not need to reach), "the bankruptcy court would first need to extend the automatic stay under its equity jurisdiction pursuant to 11 U.S.C. § 105"); Badalament, Inc. v. Mel-O-Ripe Banana Brands, Ltd., 265 B.R. 732, 738 (E.D. Mich. 2001) (noting that "[c]ourts have stayed proceedings against

non-debtor co-defendants in unusual circumstances and pursuant to 11 U.S.C.

§ 105(a)…."); Archambault v. Hershman (In re Archambault), 174 B.R. 923, 929

(Bankr. W.D. Mich. 1994) (observing that a number of cases have "employed

Section 105 to issue injunctions on behalf of nondebtors under a variety of

circumstances….").[4]

7.      Accordingly, the only question before the Court is not whether

it possesses the power to extend the Chapter 9 Stay (it plainly does), but whether

that power should be exercised under the present unusual circumstances.  The

answer to that question is yes.  Courts have found an extension of the automatic

stay to closely related non-debtor parties (or similar injunctive relief) warranted

where such relief is necessary to prevent interference with the debtor's bankruptcy

case, preserve basic bankruptcy protections for the debtor or otherwise promote the

---

[4]      AFSCME's recitation of the principle that courts may employ section 105 of
the Bankruptcy Code only within the confines of the Bankruptcy Code
(e.g., AFSCME Objection, at 13-14) carries little weight in a context where
the requested relief encompasses the protections of sections 362 and 922 of
the Bankruptcy Code and neither conflicts with nor disregards the provisions
of the Bankruptcy Code.  See, e.g., Archambault, 174 B.R. at 928
(recognizing limitations on a court's power pursuant to section 105 of
the Bankruptcy Code, but finding that a debtor seeking to enjoin lawsuits
against non-debtor parties "does not seek relief which either conflicts with or
is in disregard of unambiguous statutory language…. [but] [r]ather seeks
preliminary injunctive relief which will give him the ability to benefit …
from the 'fresh start' afforded by filing for bankruptcy.").

purposes of the Bankruptcy Code.  See, e.g., Patton, 8 F.3d at 349 (noting that "unusual circumstances" warranting extension of the automatic stay to non-debtors "usually include when the debtor and the non-bankrupt party are closely related or the stay contributes to the debtor's reorganization"); Archambault, 174 B.R. at 929, 935 (enjoining lawsuit against a non-debtor party where "the failure to grant such relief would effectively deny the Debtor the 'fresh start' afforded by [its bankruptcy case] by allowing the movant an end-run around the automatic stay"; observing that the issuance of an injunction may be appropriate "where the relationship between the nondebtor and the debtor is such that a finding of liability against the nondebtor would effectively be imputed to the debtor, to the detriment of the estate"; treating requests for section 105 injunctions and requests to extend the automatic stay interchangeably); Sudbury, Inc. v. Escott (In re Sudbury, Inc.), 140 B.R. 461, 464 (Bankr. N.D. Ohio 1992) (enjoining suits against non-debtors, where "[t]he need for … a breathing spell is particularly pronounced" and the debtor was "inextricably involved" in the actions sought to be enjoined).

8.     Here, there can be no question – and the AFSCME Objection concedes – that (a) the Prepetition Lawsuits will adversely affect the City's ability to adjust its debts in chapter 9, (b) failure to extend the Chapter 9 Stay would effectively deny the City the "fresh start" promised by bankruptcy and (c) extension of the Chapter 9 Stay would preserve the protections of the

Bankruptcy Code for the City and avoid interference with this Court's administration of this case. AFSCME's allegation that "the City seeks a section 105(a) injunction not to carry out any provisions of the Bankruptcy Code and not to shield it from interference with the existing protections of the Bankruptcy Code, but rather as a sword" (AFSCME Objection, at 14) is curious. Shielding the City from interference with the existing protections of the Bankruptcy Code and effecting the purpose of the Chapter 9 Stay is *precisely* the intent of the Stay Extension Motion, which intent is repeatedly expressed therein.[5]

---

[5]     Moreover, the City hereby reserves its right to argue that the Prepetition Lawsuits in which the Emergency Manager is not named, which are designed to preserve the claims of the plaintiffs (and those similarly situated) for pension benefits and interfere with the administration of this chapter 9 case, are <u>direct</u> violations of the Chapter 9 Stay subject to enforcement by the City. <u>See</u>, <u>e.g.</u>, <u>Amedisys, Inc. v. Nat'l Century Fin. Enters., Inc. (In re Nat'l Century Financial Enters., Inc.)</u>, 423 F.3d 567, 5677-78 (6th Cir. 2005) (finding that "[t]he fact that [a state court] action did not name [the debtor] as a defendant does not render enforcement of the automatic stay improper…. [A]n action taken against a nondebtor which inevitably would have an adverse impact upon the property of the estate must be barred by the [section 362(a)(3)] automatic stay provision."); <u>Lewis v. Negri Bossi USA, Inc. (In re Mathson Indus., Inc.)</u>, 423 B.R. 643, 648 (E.D. Mich. 2010) ("the statutory language of [section] 362(a)(6) actually prohibits 'any act to collect, assess, or recover' a pre-petition debt, not just acts directed *against the bankruptcy debtor*.") (emphasis in original).

## _The Stay Extension Motion is Procedurally Proper_

9.      Finally, the AFSCME Objection's complaint that the Stay
Extension Motion is procedurally improper not only is incorrect, as demonstrated
above, but ultimately fails because AFSCME has not demonstrated – nor has
attempted to demonstrate – that it has been prejudiced by the form of the City's
request for relief.  Courts routinely hold that objections to the form of a request for
relief do not triumph over its substance in the absence of any showing of prejudice
to the complaining party.  See, e.g., Hines v. Hines (In re Hines), 193 Fed. App'x
391, 397 (6th Cir. 2006) (rejecting argument that the lower court erred in
determining dischargeability in the context of plan confirmation rather than by
adversary proceeding; holding that "[i]n the absence of any demonstrable
prejudice, there is no error resulting from the lack of a formal adversary
proceeding."); Tully Constr. Co. v. Cannonsburg Envtl. Assocs., Ltd. (In re
Cannonsburg Envtl. Assocs., Ltd.), 72 F.3d 1260, 1264-65 (6th Cir. 1996)
(affirming bankruptcy court order even though request for relief technically
"should have been filed" as an adversary proceeding rather than as a contested
matter where the appellant "has not and cannot demonstrate that it has been
prejudiced by the Trustee's failure to file an adversary proceeding"; characterizing
procedural posture as harmless error); Lernout & Hauspie Speech Prods., N.V. v.
Baker (In re Lernout & Hauspie Speech Prods., N.V.), 264 B.R. 336, 340 (Bankr.

D. Del. 2001) ("As many other courts in similar circumstances have said, I will decline to elevate the form of the proceeding … if the substance of the hearing on that issue is such that the objecting party has been afforded due process.  Courts have routinely allowed matters to proceed that have been filed as contested matters when they should have been filed as adversary complaints, where no prejudice has been found.") (quotation marks and internal citation omitted); <u>In re Serv. Merch. Co.</u>, 256 B.R. 755, 765-66 (Bankr. M.D. Tenn. 2000) (stating that "[d]espite the fact that an adversary proceeding is required for the injunctive relief sought by the debtors, courts in many instances have found that judicial economy permits the courts to look beyond [Bankruptcy] Rule 7001 to the merits of the dispute provided no prejudice will result….  [U]nless the party is able to demonstrate prejudice by the failure to file an adversary proceeding, a court will find the error constitutes harmless error"; finding that dismissal would "place[ ]form over substance and would serve only to delay [the] proceedings.") (internal citations omitted); <u>cf.</u> <u>In re Hostess Brands, Inc.</u>, Case No. 12-22052 (Bankr. S.D.N.Y. Feb. 23, 2012) (Docket No. 390) (order granting motion seeking to extend the automatic stay to certain employees pursuant to sections 105 and 362 of the Bankruptcy Code).

10.  Here, AFSCME makes no showing that it will be prejudiced by the extension of the Chapter 9 Stay sought by the City beyond the unsupported allegation that employees represented by AFSCME will be "steamrolled."

AFSCME Objection, at 13.  Precisely how such employees will be steamrolled or prejudiced by the Stay Extension Motion is left unexplained.  Certainly, AFSCME's employees will not be prejudiced by the Court's exercise of its exclusive jurisdiction over this case and its hearing and determining questions fundamental to the administration of the City's chapter 9 case (e.g., the City's eligibility to be a debtor).  Nor was AFSCME – which was provided proper notice of the Stay Motions and filed a 30-page objection thereto – left without the ability to protect its interests and have its voice heard by the form of the City's request for relief.

11.    Indeed, where the failure to extend the Chapter 9 Stay will allow harassing lawsuits – lawsuits designed either to materially interfere with the administration of this case or to collect claims against the City – to proceed against the State Entities (among others), *the party at risk of prejudice is the City*. Accordingly, because (a) the form of the Stay Extension Motion has neither prejudiced AFSCME nor deprived it of due process and (b) the failure to extend the Chapter 9 Stay as requested will impede the administration of this case, the Court should grant the Stay Motions and overrule the AFSCME Objection.

## **Conclusion**

For all of the foregoing reasons, the City respectfully submits that the Stay Motions should be granted and the AFSCME Objection should be overruled.

Dated: July 23, 2013         Respectfully submitted,

   /s/ David G. Heiman
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY

CLI-2127590v8

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

IN RE:                                             Chapter 9

City of Detroit, Michigan,                  Case No. 13-53846

                Debtor.

_____/

## JOINT CONCURRENCE IN
## MOTION OF DEBTOR, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER CONFIRMING THE PROTECTIONS OF SECTIONS 362, 365 AND 922 OF THE BANKRUPTCY CODE AND CONCURRENCE IN AND LIMITED OBJECTION TO MOTION OF DEBTOR, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE ENTITIES, (B) NON-OFFICER EMPLOYEES AND (C) AGENTS AND REPRESENTATIVES OF THE DEBTOR

The Detroit Fire Fighters Association (the "DFFA"), the Detroit Police Officers Association (the "DPOA"), the Detroit Police Lieutenants & Sergeants Association (the "DPLSA") and the Detroit Police Command Officers Association (the "DPCOA") (collectively, the "Detroit Public Safety Unions"), through their counsel, Erman, Teicher, Miller, Zucker & Freedman, P.C., submit the following Joint Concurrence in the Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order Confirming the Protections of Sections 362, 365, and 922 of the Bankruptcy Code (the "Stay Order Motion") [Docket No. 53] and Concurrence in and Limited Objection to Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non-Officer Employees and (C) Agents and Representatives of the Debtor (the "Stay Extension Motion")[1] [Docket No. 56]:

---

[1] Together, the Stay Order Motion and Stay Extension Motion are referred to herein as the "Motions."

# BACKGROUND

1.    The Public Safety Unions, whose collective members provide police and fire protection to the City[2] on a daily basis under extremely difficult conditions, acknowledge that the City faces serious and severe financial challenges that must be addressed, and the Public Safety Unions have been and are prepared to work with the City to tackle those challenges.

2.    As a result of the severe economic challenges facing the city, the members of the Public Safety Unions must do more with fewer active members and less resources under increasingly difficult conditions.

3.    At the same time, the active members of each of the Public Safety Unions have seen their wages and benefits, including their future pension benefits, reduced.

4.    Contrary to statements made by the City in the papers filed with this Court and other statements made to the public by the Emergency Manager and the Governor, the Emergency Manager has made no serious effort to negotiate with the Public Safety Unions.  In the weeks leading up to the City's Chapter 9 filing, there were no negotiations.  Rather, the City of Detroit and the Emergency Manager held two publicly trumpeted "informational meetings" with the Public Safety Unions.  Both occurred within a week of the filing of the Chapter 9 petition.

5.    Furthermore, under both the former Emergency Manager Law, PA 4, MCL 141.1501, *et seq*, (which was overwhelming repealed by Michigan voters in 2012) and since the Emergency Manager's appointment under Public Act 436, MCL 141.1541, *et seq*,  the City and the Emergency Manager have consistently refused to negotiate with the Public Safety Unions over terms and conditions of employment.

---

[2] Unless otherwise defined, all capitalized terms are as defined in the Motions.

6.      Contrary to its claimed efforts to negotiate in good faith, at least with regard to the Public Safety Unions, the City has consistently sought to block the Public Safety Unions' efforts to negotiate terms and conditions of employment and has yet to provide them with a concrete restructuring proposal.

7.      At the direction of the Emergency Manager, the City instead successfully convinced the Michigan Employment Relations Commission to dismiss petitions filed by some of the Public Safety Unions seeking arbitration under Public Act 312, MCL 423.231, *et seq* ("Act 312")[3], on the basis that the City has no duty to bargain with the Public Safety Unions. Subsequent to the successful dismissals, the City unilaterally imposed less favorable terms and conditions of employment that include reduced pay, increased health care premiums, deductibles and co-pays and reduced future pension benefits.

8.      While the Public Safety Unions and the City have fundamental, substantial and serious disagreements about their respective legal rights, the protections afforded the parties to these proceedings and the relevant facts applicable to these proceedings, the Public Safety Unions, subject to the modifications and limitations set forth herein, concur in the relief sought by the City's Motions.

## RESPONSE TO THE RELIEF REQUESTED BY THE MOTIONS

9.      The City's Chapter 9 filing faces significant legal obstacles that implicate the intersection of and interrelationship among Article IX, Sec. 24 of the Michigan constitution; the 10th Amendment of the United States Constitution, U.S. Const., Am. X; Chapter 9 of the

---

[3] Act 312 is based on ". . . the public policy of this state . . .," which recognizes, ". . . that in public police and fire departments, where the right of employees to strike is by law prohibited, it is requisite to the high morale of such employees and the efficient operation of such departments to afford an alternative, expeditious, effective and binding procedure for the resolution of disputes."

3

Bankruptcy Code, 11 USC §901, *et seq* (and Bankruptcy Code sections incorporated thereby) and Public Act 436, MCL 141.1541 *et seq.*

10.     The Public Safety Unions strongly believe that the Chapter 9 bankruptcy petition filed by the City is premature, that the City will be unable to meet its burden of establishing that it is eligible to be a debtor as required by 11 U.S.C. §109(c), and that the Emergency Manager's stated intention to use Chapter 9 to significantly impair the vested pension rights and benefits of City employees and retirees is limited by state and federal constitutional principles, fundamental issues of federalism, and how those principles and issues apply to protect the rights of debtors and creditors when Chapter 9 bankruptcy protection is sought.

11.     While sympathetic (and in many aspects in agreement with) the arguments raised in the Pre-Petition Lawsuits, the Public Safety Unions agree that the automatic stay set forth in 11 U.S.C. §362(a), made applicable by Section 901 of the Bankruptcy Code and supplemented by Section 922(a), is self-executing and applies to stay actions against the City, including the Pre-Petition Lawsuits. As such, the Public Safety Unions concur in the relief sought by the Stay Motion and ask that this Court issue an order staying all actions in the Pre-Petition Lawsuits, including the pending application for leave to appeal.[4]

12.     Furthermore, precisely because this Court is accustomed, on a daily basis, to addressing the interplay between the Bankruptcy Code and other provisions of state and federal law and because of the complexity and novelty of the issues raised by these proceedings, the

---

[4] The Michigan Court of Appeals today issued an order setting briefing schedules on the Attorney General's applications for leave to appeal.  Copies of those orders will be available at the hearing.  In order to avoid any further confusion or unnecessary expense to any party, this Court's Order should clarify that those applications are stayed as well, since the automatic stay set forth in 11 U.S.C. § 362(a) stays <u>all</u> proceedings, including the prosecution of debtor's pending appeals, where the underlying actions are, effectively, actions against the debtor, as they are here. *Cathey v. Johns-Manville Sales Corporation, et al,* 711 F.2d 60 (6th Cir. 1983).

Public Safety Unions urge that, as requested by the Stay Extension Motion and modified as set for the below, that the stay be extended to allow those issues to be addressed by this Court without distraction.

13. The Public Safety Unions concur in the Stay Extension Motion's request that the automatic stay be extended to the Governor and certain other agents or employees of the City as defined by the Stay Extension Motion (the "Included Additional Employees") for their pre-petition conduct in authorizing or facilitating the filing of the Chapter 9 petition and in the City's request that the stay be extended to non-officer employees who are not inhabitants of the City. The Public Safety Unions further respectfully request that the Order extending the stay include not just current non-officer and non-inhabitant City employees, as requested by the City, but that the Order extend the stay to any action or claim for damages brought against any current or former Public Safety Union member, including any retiree, which arises out of his or her City employment (including collection on any judgment resulting therefrom). Some of those current and former employees and retirees, may, in addition to the City's threats to reduce their vested pension benefits, be subject to legal actions for damages arising out of their City employment for which their only source of indemnification is the City.

14. The Public Safety Unions further urge that the Order granting the Stay Extension Motion provide that (a) the Stay Extension Motion does not and shall not reduce, impair or otherwise affect any substantive rights that any party may have against the Included Additional Parties and (b) the extension set forth in section 108(c) of the Bankruptcy Code applies to any matter stayed by the Order.

**RELIEF REQUESTED**

WHEREFORE, the Public Safety Unions respectfully request that this honorable Court:

(a) Issue an Order (i) granting the Stay Order Motion and (ii) stating therein that the automatic stay set for the in Sections 362(a) and 922(a) operates to stay all further proceedings in the Pre-Petition Lawsuit, including the pending state court appeals;

(b) Issue an Order (i) granting the Stay Extension Motion; (ii) extending the protections of the automatic stay set forth in Sections 362(a) and 922(a) to any action or claim for damages brought against any current or former Public Safety Union member, including any retiree, which arises out of his or her City employment (including collection on any judgment resulting therefrom); (iii) specifying that the Order does not and shall not reduce, impair or otherwise affect any substantive rights that any party may have against any of the Included Additional Parties, and (iv) specifying that the extension set forth in Section 108(c) of the Bankruptcy Code applies to any matter stayed by the Order.

<div align="right">

ERMAN, TEICHER, MILLER,
ZUCKER & FREEDMAN, P.C.

By:    /s/ Barbara A. Patek
       Earle I. Erman  (P24296)
       Craig E. Zucker  (P39907)
       Barbara A. Patek (P34666)
       Counsel for the Detroit Public Safety Unions
       400 Galleria Officentre, Suite 444
       Southfield, MI  48034
       Telephone: (248) 827-4100
       Facsimile:  (248) 827-4106
       E-mail:  bpatek@ermanteicher.com

</div>

DATED:   July 23, 2013

F:\OTHERINS\Detroit, CIty of\joint concurrence.FINAL.docx

6

13-53846-swr   Doc 2832-8   Filed 12/27/13   Entered 12/27/13 20:08:48   Page 53 of 81
13-53846-tjt   Doc 2832-8   Filed 12/27/13   Entered 12/27/13 20:06:48   Page 53 of 74   110

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                                              Chapter 9

City of Detroit, Michigan,                          Case No. 13-53846

        Debtor.

_____/

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on July 23, 2013, the Joint Concurrence and Limited Objection to the Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order Confirming the Protections of Sections 362, 365, and 922 of the Bankruptcy Code (the "Stay Order Motion") [Docket No. ] and Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non-Officer Employees and (C) Agents and Representatives of the Debtor (the "Stay Extension Motion") and Certificate of Service were electronically filed with the Clerk of the Court for the United States Bankruptcy Court, Eastern District of Michigan, Southern Division using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically.

ERMAN, TEICHER, MILLER,
ZUCKER & FREEDMAN, P.C.

By:    /s/ Barbara A. Patek
        Earle I. Erman  (P24296)
        Craig E. Zucker  (P39907)
        Barbara A. Patek (P34666)
        Counsel for the Detroit Public Safety Unions
        400 Galleria Officentre, Suite 444
        Southfield, MI  48034
        Telephone: (248) 827-4100
        Facsimile:  (248) 827-4106
        E-mail:  bpatek@ermanteicher.com

DATED:  July 23, 2013

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| | ) | |

---

## OBJECTION OF THE RETIREMENT SYSTEMS TO MOTIONS OF DEBTOR FOR ENTRY OF ORDERS (I) CONFIRMING THE PROTECTIONS OF SECTIONS 362, 365 AND 922 OF THE BANKRUPTCY CODE, AND (II) EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE ENTITIES, (B) NON-OFFICER EMPLOYEES AND (C) AGENTS AND REPRESENTATIVES OF THE DEBTOR

The Police and Fire Retirement System of the City of Detroit ("PFRS") and the General Retirement System of the City of Detroit ("GRS," and together with PFRS, the "Retirement Systems") hereby submit this objection (the "Objection") to the (i) *Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order Confirming the Protections of Sections 362, 365 and 922 of the Bankruptcy Code* [Docket No. 53] (the "Stay Confirmation Motion"), and (ii) *Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non-Officer Employees and (C) Agents and Representatives of the Debtor* [Docket No. 56] (the "Stay Extension Motion," and together with the Stay Confirmation Motion, the "Stay Motions"). [1]

---

[1]  This Objection is filed subject to the reservations of rights in the Appearances filed by the undersigned counsel in this case, including the Retirement Systems' right to argue that the matters involved in the *Webster* case referenced herein and the pending related cases should be determined in the state courts, and not in this Court, and that this Court lacks subject-matter jurisdiction.

## Preliminary Statement

The Stay Motions are based upon a false premise - - that there is a validly-existing bankruptcy case before this Court from which an automatic stay may arise. However, the Governor's authorization of the commencement of this case was an act that was void *ab initio*. As such, it is to be treated as if the Governor's authorization and the acts that flowed from it never occurred. Unlike the other requirements of the Bankruptcy Code for establishing the eligibility of a municipality to be a debtor under chapter 9, the determination of whether valid state authorization exists for a chapter 9 filing under Bankruptcy Code section 109(c)(2) is purely a creature of state law. Accordingly, a proper application of the principles of federalism and the 10th Amendment of the U.S. Constitution mandates that deference be given to the state courts of the sovereign state to determine this issue. Here, the Declaratory Judgment (defined below) entered by the state court in the *Webster* case referenced herein properly determined precisely this - - that the Governor's authorization of the commencement of this case violated the State Constitution and was therefore null and void. Even if this Court were to find that it has jurisdiction over certain matters, the Declaratory Judgment constitutes a final order against an act of the Governor - - a non-debtor entity to whom no stay applied at the time the Declaratory Judgment was entered. Respectfully, this Court has no authority to essentially sit as an appellate court and vacate the Declaratory Judgment by trying to stay its effect. Accordingly, pending any further disposition of the Declaratory Judgment on appeal in the state courts, this bankruptcy case is null and void, and the Court lacks jurisdiction in these matters. Without waiver of the foregoing, if this Court nonetheless determines that it has jurisdiction to consider substantive matters, the Retirement Systems submit that the Court should allow an opportunity for parties to

fully brief and argue the issue of whether section 109(c)(2) has been satisfied, before any consideration of the premature Stay Motions.

## Factual and Procedural Background

### A.    The Retirement Systems

1.    As authorized by Article VII, section 22 of the Michigan Constitution and sections 4i, 4j, and 21 of the Home Rule City Act, 1909 PA 267 (as amended), M.C.L. §117.1 *et seq.* (the "Home Rule City Act"), the residents of the City established the Retirement Systems through amendments to the City's Charter of 1918, effective July 1, 1938, and effective July 1, 1941, respectively. Among other reasons, the residents of the City created the Retirement Systems to: (i) administer retirement, disability, and survivor benefits to eligible uniformed and non-uniformed City employees and their beneficiaries (*i.e.,* the participants); (ii) ensure that the City actually honors its collective bargaining agreements by tendering to the Retirement Systems the City's annual and obligatory pension contributions; and (iii) protect the vested pension benefits (*i.e.,* "accrued financial benefits") of the Retirement Systems and their participants.

2.    There are more than 32,000 active and retired employees of the City, who are participants in the Retirement Systems and whose "accrued financial benefits" the Retirement Systems must protect.

### B.    The Governor

3.    On November 2, 2010, the people of the State of Michigan elected Richard D. Snyder to serve as their Governor (the "Governor"). On December 30, 2010, and as mandated by Article XI, section 1 of the Michigan Constitution and section 64 of the Michigan Election Law, 1954 P.A. 116, M.C.L. §168.1 *et seq.*, ("PA 116"), the Governor swore the following oath, which was later filed with the Michigan Secretary of State: "*I do solemnly swear that I will*

3

*support the Constitution of the United States and the Constitution of this State, and that I will faithfully discharge the duties of the office of Governor according to the best of my ability.*"

### C. The Michigan Constitution

4.      Article IX, section 24 of the Michigan Constitution states: "The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Mich. Const. art. IX, §24.

### D. The Emergency Manager

5.      On March 26, 2013, the Governor and the State Treasurer caused Kevyn Orr to be appointed as the emergency financial manager of the City pursuant to Public Act 72 of 1990, the Local Government Fiscal Responsibility Act, M.C.L. §141.1201, *et seq.* ("PA 72"). On March 28, 2013, upon the effectiveness of Public Act 436, the Local Financial Stability and Choice Act, M.C.L. §141.1541, *et seq.* ("PA 436"), Mr. Orr became, and continues to act as, the emergency manager with respect to the City under PA 436 (the "Emergency Manager").

6.      On June 14, 2013, the Emergency Manager issued his Proposal for Creditors (the "Restructuring Proposal") wherein he took the position that: (i) pension debts are "unsecured claims" that may be, and must be, impaired in any prospective Chapter 9 bankruptcy proceeding; and (ii) the City's alleged approximate $3.5 billion underfunding liability would be placed in a pool of unsecured claims comprising approximately $11.5 billion in claims, and exchanged for a *pro rata* share of an unsecured note in the face amount of $2.0 billion. The Restructuring Proposal is attached as Exhibit A to the Declaration of Kevyn D. Orr in Support of City of Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code. [Docket No. 11] (the "Orr Declaration").

4

9221704.7 14893/161046
13-53846-swr  Doc 2332-9   Filed 12/27/13   Entered 12/27/13 19:09:30   Page 58 of 81
13-53846-swr  Doc 2332-1   Filed 12/27/13   Entered 12/27/13 12:09:02   Page 56 of 62    115

7.     In a June 13, 2013 interview with The Detroit Free Press[2], the Emergency Manager acknowledged that Article IX, section 24 of the Michigan Constitution prohibits the impairment Plaintiffs' vested pension benefits, but nevertheless expressed his intention to evade the Michigan Constitution through a federal Chapter 9 bankruptcy proceeding:

> Q:     You said in this report that you don't believe there is an obligation under our state constitution to pay pensions if the city can't afford it?
>
> A:     The reason we said it that way is to quantify the bankruptcy question. We think federal supremacy trumps state law.
>
> Q:     Which the 9th Circuit agrees for now.
>
> A:     It is what it is – so we said that in a soft way of saying, "Don't make us go into bankruptcy." **If you think your state-vested pension rights, either as an employee or retiree – that's not going to protect you. If we don't reach an agreement one way or the other, we feel fairly confident that the state federal law, federalism, will trump state law** or negotiate. The irony of the situation is we might reach a deal with creditors quicker because employees and retirees think there is some benefit and that might force our hand. That might force a bankruptcy.

## E.     The Pre-Petition Lawsuits

8.     On July 3, 2013, four participants of GRS filed two separate suits against the Governor and the State Treasurer in the Ingham County Circuit Court, both seeking: (i) a declaration that PA 436 violates Article IX, section 24 of the Michigan Constitution by purporting to permit the impairment of accrued financial benefits in a Chapter 9 bankruptcy proceeding; and (ii) a temporary restraining order or preliminary injunction precluding the Governor and Treasurer from authorizing a Chapter 9 bankruptcy proceeding. See *Flowers v.*

---

[2]  *See Q & A with Kevyn Orr:  Detroit's Emergency Manager Talks About City's Future*, Detroit Free Press (June 16, 2013), *available at* http://www.freep.com/article/20130616/OPINION05/306160052/kevyn-orr-detroit-emergency-manager-creditors-fiscal-crisis.

5

13-53846-swr  Doc 2882-9  Filed 02/27/13  Entered 02/27/13 19:08:39  Page 59 of 84
13-53846-swr  Doc 2324-1  Filed 12/27/13  Entered 12/27/13 20:09:02  Page 57 of 116

*Snyder*, Case No. 13-729-CZ; *Webster v. Snyder*, Case No. 13-734-CZ (the "<u>Companion Cases</u>").

9.     On July 17, 2013, the Retirement Systems filed a Complaint for Declaratory Relief against the Governor and the Emergency Manager in the Ingham County Circuit Court, Case No. 13-768-CZ (the "<u>State Court Lawsuit</u>" and, together with the Companion Cases, the "<u>Pre-petition Lawsuits</u>") whereby the Retirement Systems requested that this Court issue an Order:

(a)     declaring that PA 436 does <u>not</u> expressly grant to the Governor the authority to authorize the Emergency Manager to take actions that will result in the impairment of the City of Detroit's pension debts, but rather, when read in conjunction with Article IX, section 24 and Article I, section 10 of the Michigan Constitution, requires that the Governor refrain from authorizing the Emergency Manager to take any action that causes the City's pension debts to be subject to impairment under Chapter 9 or, alternatively, that, <u>if</u> PA 436 implicitly grants to the Governor the authority to authorize the Emergency Manager to take actions that impair the City of Detroit's pension debts, <u>then</u> PA 436 contravenes Article IX, section 24 and Article I, section 10 of the Michigan Constitution and is of no force or effect;

(b)     declaring that PA 436 does <u>not</u> expressly grant to the Emergency Manager the authority to take actions that will result in the impairment of the City of Detroit's pension debts, but rather, when read together with Article IX, section 24 and Article I, section 10 of the Michigan Constitution, precludes the Emergency Manager from taking any action that causes the City's pension debts to be subject to impairment under Chapter 9 or, alternatively, that, <u>if</u> PA 436 implicitly grants to the Emergency Manager the authority to take actions that impair the City of Detroit's pension debts, <u>then</u> PA 436 contravenes Article IX, section 24 and Article I, section 10 of the Michigan Constitution and is of no force or effect;

(c)     enjoining the Emergency Manager, if necessary, from acting pursuant to any future unconstitutional Chapter 9 authorization of the Governor; and

(d)     granting to Plaintiffs any further such relief this Court deems equitable and just.

9221704.7 14893/161046

The Complaint for Declaratory Relief is attached as Exhibit 6.1 to the Stay Extension Motion [Docket No. 56].

10.    The Retirement Systems also filed a motion for expedited briefing schedule. At 4:55 p.m. on July 17, 2013, the Retirement Systems served the Governor's Office with their complaint for declaratory relief and motion for expedited briefing. At 10:25 a.m. on July 18, 2013, the Retirement Systems served the Emergency Manager's Office with their complaint for declaratory relief and motion for expedited briefing.

11.    On July 19, 2013 hearing, the Court granted the Retirement Systems' motion for expedited briefing schedule and ordered that the Retirement Systems file their motion for declaratory judgment by July 23, 2013; Defendants file their response brief(s) by July 26, 2013; and a hearing be held on July 29, 2013 at 9:00 a.m.  The Order Setting Expedited Briefing Schedule in the State Court Lawsuit is attached as Exhibit 6.3 to the Stay Extension Motion [Docket No. 56].

12.    On July 19, 2013, the Circuit Court for Ingham County, Michigan, in the case entitled *Gracie Webster, et al. v. The State of Michigan, et al.*, Case No. 13-734-CZ (Hon. Rosemarie Aquilina) also entered its Order of Declaratory Judgment (the "Declaratory Judgment"), a copy of which is attached as Exhibit 6.4 to the Stay Extension Motion [Docket No. 56].  In the Declaratory Judgment, it is determined, among other things, that the State of Michigan's authorization of the commencement of this chapter 9 case was violative of the State Constitution and was therefore given without power or authority.  As such, the authorization of the commencement of this case was void.

13.    It is anticipated that the Defendants will appeal from the Declaratory Judgment. Pending such appeal process, however, per the Declaratory Judgment, the Retirement Systems

9221704.7 14893/161046
13-53846-swr  Doc 2382-9  Filed 12/27/13  Entered 12/27/13 10:00:00  Page 61 of 81
13-53846-swr  Doc 824-1  Filed 07/25/13  Entered 07/25/13 20:09:02  Page 96 of 162    118

respectfully submit that this Court does not have subject-matter jurisdiction to proceed with this case.

**F.     The City's Bankruptcy Case**

14.     On July 18, 2013 (the "<u>Petition Date</u>"), the City filed its Voluntary Petition under chapter 9 of title 11 of the United States Code, 11 U.S.C. §101 *et seq.* (the "<u>Bankruptcy Code</u>").

15.     On July 19, 2013, in response to the Pre-Petition Lawsuits, the City filed the Stay Motions.  The Stay Confirmation Motion requests entry of an order "confirming" the protections of sections 362 and 922(a)(1) of the Bankruptcy Code, applying the protections of section 922(a)(1) to the Emergency Manager and City Officers (as defined in the motion) and "confirming" the protections afforded by section 365 of the Bankruptcy Code with respect to executory contracts and unexpired leases.

16.     The Stay Extension Motion requests that the Court use its powers under section 105(a) of the Bankruptcy Code to extend the automatic stay provisions in sections 362 and 922 of the Bankruptcy Code to the Governor, the State Treasurer, the Local Emergency Financial Assistance Loan Board of the State of Michigan, City employees that are not officers or inhabitants of the City, and agents and representatives of the Governor and the Emergency Manager.

<u>**Argument**</u>

**I.      The City's Requests for Confirmation and Extension of the Automatic Stay Must Be Denied Because No Valid Bankruptcy Case Is Pending Before this Court.**

In order to consider the application of the automatic stay under section 362 and/or section 922(a) of the Bankruptcy Code, there must first be a valid underlying bankruptcy case from which the stay may arise.  As discussed below, however, there is not a valid bankruptcy case in existence here.  Pursuant to 28 U.S.C. § 1334 (a) and (b), there is neither a "case under title 11"

<div align="center">8</div>

9221704.7 14893/161046
13-53846-swr  Doc 2382-9  Filed 12/27/13  Entered 12/27/13 19:08:39  Page 62 of 81
13-53846-swr  Doc 2241  Filed 12/23/13  Entered 12/23/13 22:09:42  Page 88 of 162  119

nor any proceeding arising under title 11 or arising in or related to a case under title 11. Neither the United States District Court for the Eastern District of Michigan nor this Court has jurisdiction over the City's putative case under 28 U.S.C. § 1334(a) and (b) and, therefore, lack authority to hear and determine the City's Stay Motions pursuant to 28 U.S.C. § 157(a) and (b).

The Bankruptcy Code is explicit as to who may be a debtor under chapter 9. Pursuant to Bankruptcy Code section 109(c)(2), "[a]n entity may be a debtor under chapter 9 of [the Bankruptcy Code] *if and only if* such entity . . . is *specifically authorized*, in its capacity as a municipality or by name, to be a debtor under such chapter *by State law*, or by a governmental officer or organization *empowered by State law* to authorize such entity to be a debtor under such chapter." 11 U.S.C. § 109(c)(2) (emphasis added).

Here, no valid authorization exists under State law for the City to be a chapter 9 debtor. The Governor is bound to uphold the State Constitution, including the provisions of Article IX, section 24. He does not have the authority to unilaterally abrogate provisions of the State Constitution. Similarly, he cannot delegate authority that he does not have and cannot delegate to a third party (i.e., the Emergency Manager) authority to take actions that would result in an abrogation of constitutional provisions. In essence, the Governor cannot do indirectly what he cannot do directly.

Under PA 436, authorization to commence a petition for relief under chapter 9 of the Bankruptcy Code rests with the Governor. *See* M.C.L. § 141.1556(1)-(2) and M.C.L. §141.1558. However, PA 436 does not authorize the Governor to authorize a chapter 9 filing if such filing would be in breach of the Michigan Constitution - - indeed, the statute could not do so inasmuch as the state legislature does not have the authority to simply legislate amendments to the Michigan Constitution.

9

Under the Michigan Constitution, "all political power is inherent in the people," and it "remains there, except as delegated by Constitution or statute." *Public Schools of Battle Creek v. Kennedy*, 245 Mich. 585, 587 (1929) (quoting Mich. Const. art. I, § 1). "Public officers have and can exercise only such powers as are conferred on them by law[.]" *Roxborough v. Michigan Unemployment Compensation Comm.*, 309 Mich. 505, 510 (1944). Accordingly, the Governor can only exercise the power granted to him by law, and he is unable to act in violation of the Constitution. *See also Straus v. Governor*, 459 Mich. 526, 534 (1999) ("The Governor's power is limited only by constitutional provisions that would inhibit the Legislature itself."). It is thus clear that the Michigan Constitution provides clear limitations on actions that may be taken by each branch of government, and no branch has the authority to eradicate constitutional guarantees. *See Oshtemo Charter Twp. v. Kalamazoo County Rd. Comm'n*, 2013 Mich. App. LEXIS 1163, 19 (Mich. Ct. App. June 25, 2013) ("The Legislature's authority does not extend to eradicating constitutional guarantees.").

Michigan courts have long held that a Governor's actions outside the confines of the Michigan Constitution are "null and void." In the early Michigan Supreme Court case of *Dullam v. Willson*, the court found unconstitutional the Governor's action in attempting to remove a state school trustee from his post without a hearing. *Dullam v. Willson*, 53 Mich. 392 (1884). In *Dullam*, Justice Cooley noted:

> Courts, in determining whether rights exist, or whether vested rights have ceased to exist, do not act necessarily or usually as appellate tribunals, whose judgments operate on the tribunals or persons whose invasions of right are complained of. They may or may not do so. *But in a constitutional government the action of all persons, official or private, which is in violation of constitutional rights, is simply null and void, and usually needs no reversal. And the action of any department of government, whether legislative, executive or judicial, beyond its jurisdiction, or against the constitutional limitations of its authority, is in law the same as if*

10

> *there had been no action, and cannot be recognized as having legal effect.*

*Id.* at 409-10 (Cooley, J., concurring) (emphasis added).

Given this legal framework, it is clear that Governor Snyder lacks the power to act if his actions violate the Michigan Constitution. Actions taken by Governor Snyder that are outside of his constitutional power are *ultra vires*. "The term 'ultra vires' means outside the scope of authority." *McCartney v Attorney General*, 231 Mich. App. 722, 726 (1998) (internal citation omitted). "Thus, if the Governor acts outside the scope of his authority, his actions are considered ultra vires." *McCartney* at 726.

*Ultra vires* acts are void *ab initio*. *See, e.g.,McKane v. City of Lansing*, 1998 U.S. App. LEXIS 649 (6th Cir. Jan. 14, 1998) (city council's *ultra vires* adoption of an early retirement plan was void *ab initio* when it was improperly adopted via a resolution instead of an ordinance); *Utica State Sav. Bank v. Oak Park*, 279 Mich. 568, 577 (1937) ("Surely no one, in view of the constitutional, statutory and charter provisions noted herein, could successfully assert that the legislature had the power to make a contract of this character in behalf of the defendant village. It follows that notwithstanding the remedial act of the legislature, the contract under which plaintiffs assert their rights was void in its inception and still remains so.").

If an act is void *ab initio*, it is as though the act never occurred in the first place. *See Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 102 (2012) (relying upon Black's Law Dictionary (9th ed.) and defining void *ab initio* as "[n]ull from the beginning, as from the first moment. . ."). "In short, it has become recognized as a truism that what a municipality has no power to do, it has not done merely because it tried to do it." *Sommers v. Flint*, 355 Mich. 655, 668 (1959) (citation omitted). The *Sommers* court found an *ultra vires* act by a municipal corporation void

11

and noted that "the Constitution itself is made to define, limit and apportion the powers of the government it creates or controls." *Id.* at 673.

Governor Snyder exceeded the confines of his authority under the Michigan Constitution by unlawfully authorizing the Emergency Manager to file a chapter 9 petition that will impair constitutional rights guaranteed to the State's citizens, and his action is therefore void *ab initio*. Because Governor Snyder's action was void *ab initio*, the Emergency Manager had no authority to file a chapter 9 petition under PA 436, and his actions in doing so were similarly void *ab initio*. As a result, the filing of the petition for relief under chapter 9 was void, of no force and effect, a legal nullity that must be treated as though it never occurred. This is precisely what was determined and held by the State court in the Declaratory Judgment.

Therefore, since no valid chapter 9 case is pending, this Court has no jurisdiction to hear or determine the Stay Motions, and no relief requested by the City may be granted.

## II. The Determination of Whether the City Is Authorized to Be a Chapter 9 Debtor is Purely a Matter of State Law and that Determination Has Been Properly Made by a State Court.

Michigan state courts are the most appropriate forum to determine the state-law issue of whether the City received valid authorization from the Governor to file a petition for relief under chapter 9. As stated above, the eligibility determination under section 109(c)(2) presents a *question purely of state law*. *In re City of Stockton*, 475 B.R. 720, 721 (Bankr. E.D. Cal. 2012) (all chapter 9 eligibility issues *except* § 109(c)(2) are creatures of federal law, and federal law provides the rule of decision) (emphasis added); *In re City of Stockton*, 2013 Bankr. LEXIS 2416, 21 (Bankr. E.D. Cal. June 12, 2013) ("California law governs the question whether the [City of Stockton] is authorized to be a chapter 9 debtor."). As one bankruptcy court has observed, states "act as gatekeepers to their municipalities' access to relief under the Bankruptcy

12

Code." *In re City of Vallejo*, 403 B.R. 72, 76 (Bankr. E.D. Cal. 2009), *aff'd IBEW, Local 2376 v. City of Vallejo (In re City of Vallejo)*, 432 B.R. 262 (E.D. Cal. 2010).

If states serve as the gatekeepers of access to chapter 9, and if the satisfaction of the eligibility requirement under Bankruptcy Code section 109(c)(2) is a matter purely of state law, then it stands to reason that the state courts (which are a co-equal branch with the executive branch of the sovereign entity) are the appropriate forum for the determination of whether valid authorization of a chapter 9 filing has been granted under state law. Put another way, it is simply not the province of a bankruptcy court to determine if it has jurisdiction under section 109(c)(2). This is also logically sound because if the bankruptcy court does not have jurisdiction, its determinations are null and void in any event.

Bankruptcy Code sections 109, 903, and 904, and indeed the entire structure of chapter 9 evince an abiding sensitivity to the contours of federalism and the protections of the 10th Amendment to the U.S. Constitution. To that end, the sovereignty of the state - - including its judiciary - - should be given proper deference and respect. Accordingly, the Declaratory Judgment should be respected, and any appeal process that ensues should proceed in the state courts.

## III.   The City's Requests For Relief Inappropriately Ask this Court to Review the State Court's Declaratory Judgment In Violation of the *Rooker-Feldman* Doctrine.

The City's continuation of its unauthorized chapter 9 case and the relief it requests in the Stay Motions amount to a collateral attack that seeks to vacate the Declaratory Judgment. This Court is an Article I court. Congress has neither conferred any authority on this Court to review state court judgments, nor is such appellate review permissible under the United States Constitution. Under the Rooker-Feldman doctrine, the City's case and the Stay Motions must be dismissed.

13

The Rooker-Feldman doctrine is confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *See Kapla v. Fannie Mae (In re Kapla)*, 485 B.R. 136, 143 (Bankr. E.D. Mich. 2012) (internal citations omitted). For Rooker-Feldman to apply, the party asserting claims in federal court must have first lost in state court. *Id.* Appellate jurisdiction to reverse or modify a state-court judgment is lodged exclusively in the United States Supreme Court, and federal district courts are empowered to exercise original, not appellate, jurisdiction. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283-84 (2005).

As stated, the Declaratory Judgment is dispositive on the issue of whether the Governor had authority to authorize the chapter 9 petition. The continuation of the case by the City and the relief requested in the Stay Motions seeks to undermine and undo the Declaratory Judgment. The Stay Extension Motion seeks to stay actions against the Governor (the losing party in the *Webster* action) and stop all litigation in the Pre-Petition Lawsuits. Extending the automatic stay to the Governor will enable the Governor to use this Court as a forum for review and re-litigation of issues already determined by the *Webster* court in violation of the Rooker-Feldman doctrine. The Stay Extension Motion must be denied for this reason.

## IV. Even if this Court Determines that It Has Subject Matter Jurisdiction, No Basis Exists to Extend the Automatic Stay to Non-Debtor Parties.

If the Court determines that it has subject matter jurisdiction over this case, the Stay Motions must still be denied because the City has failed to satisfy the requirements for extending the automatic stay to non-debtor parties. The filing of a voluntary petition "operates as a stay, applicable to all entities, of – (1) the commencement or continuation, …, of a judicial … proceeding *against the debtor* that was or could have commenced before the commencement of

14

9221704.7 14893/161046
13-53846-swr Doc 2332-9 Filed 12/27/13 Entered 12/27/13 10:02:60 Page 68 of 81
13-53846-swr Doc 2847 Filed 01/13/13 Entered 01/13/13 12:00:43 Page 125 of 125

the case … ." 11 U.S.C. §362(a)(1) (emphasis added). The City, not the Emergency Manager or the Governor, is the putative debtor in this case and only the City would receive the protections of the automatic stay imposed by section 362(a)(1). Section 922(a)(1) of the Bankruptcy Code expands the scope of the section 362 automatic stay and stays "the commencement or continuation … of a judicial, administrative, or other action or proceeding against an officer or inhabitant of the debtor that *seeks to enforce a claim* against the debtor." 11 U.S.C. §922(a)(1) (emphasis added). The Pre-petition Lawsuits do not seek to enforce *claims* against the City; they seek to preserve constitutional rights. Thus, section 922(a)(1) of the Bankruptcy Code cannot be used as a basis for extending the automatic stay to non-debtor parties, such as the Emergency Manager[3] or the Governor.

Extending the automatic stay to non-debtor parties is justified only in "unusual circumstances." *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 861 (6th Cir. 1992). Before the Court may use its equitable powers under section 105(a) of the Bankruptcy Code to issue an injunction extending the automatic stay to protect non-debtor parties such as the Governor, the City must demonstrate that unusual circumstances exist which justify granting such extraordinary relief and must prove by clear and convincing evidence that an injunction is warranted based on the following four factors: (i) whether the movant has shown a reasonable probability of success on the merits; (ii) whether the movant will be irreparably injured by denial of the relief; (iii) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (iv) whether granting the preliminary relief will be in the public interest. *See Amedisys, Inc. v. Nat'l Century Fin. Enters. (In re Nat'l Century Fin. Enters.)*, 423 F.3d 567,

---

[3] Although the Emergency Manager arguably acts as an officer or agent of the City, section 922(a)(1) does not stay the Pre-petition Lawsuits against the Debtor because they do not seek to enforce *claims* against the City or the Emergency Manager.

15

9221704.7 14893/161046
13-53846-swr Doc 2832-9 Filed 12/27/13 Entered 12/27/13 10:02:60 Page 69 of 81
13-53846-swr Doc 2347 Filed 12/23/13 Entered 12/23/13 12:00:42 Page 127 of 146 126

577-579 (6th Cir. 2005); *Mcternan v. City of New York*, 577 F.3d 521, 527 (3d Cir. 2009) (internal quotations omitted).  The Stay Extension Motion is procedurally defective, the City has not demonstrated that unusual circumstances exist for extending the automatic stay, the City failed to meet its burden of proof for obtaining an injunction, and the Stay Extension Motion must be denied.

Procedurally, the City was required to initiate an adversary proceeding to obtain an injunction extending the automatic stay.  *See Amer. Imaging Servs. v. Eagle-Pitcher Indus., Inc. (In re Eagle-Picher Indus., Inc.).*, 963 F.2d 855, 857-59 (6th Cir. 1992) (normally a debtor initiates an adversary proceeding in order to request a § 105(a) preliminary injunction); *cf. In re LTV Steel Co., Inc.*, 264 B.R. 455, 462-63 (Bankr. N.D. Ohio 2001) (a debtor is not required to initiate an adversary proceeding in order to move the bankruptcy court to <u>enforce the automatic stay based on 362(a)(3)</u> since the stay is self-executing with respect to actions against property of the estate and no injunction is needed.)  The City has not done so, and the Stay Extension Motion must be denied because it is procedurally defective.

The City also has not demonstrated "unusual circumstances" sufficient to warrant extending the automatic stay to non-debtor parties.  *Eagle-Picher* is clearly inapposite.  "Unusual circumstances" exist where there is an "identity between the third party and the debtor such that a judgment against the third party would, in effect, be a judgment against the debtor."  *Id.*  There is no identity of interests between the City and the non-debtor parties (*e.g.,* the Governor or the State Treasurer) that it seeks to protect.  A judgment obtained in any one of the Pre-petition Lawsuits will not be a judgment against the City, and the City has failed to proffer any cognizable reason to justify another conclusion.  The City has failed to demonstrate unusual

circumstances sufficient to warrant extending the automatic stay, and the relief requested must be denied.

Moreover, the City has not proffered any evidence, let alone clear and convincing evidence, that an injunction is warranted in this case. The Court, therefore, cannot find that the City has satisfied its burden of proof and its request for an injunction under section 105(a) of the Bankruptcy Code must be denied.

## V.    Reservation of Rights to Raise Additional Arguments and Joinder in Arguments Asserted by Other Parties.

In addition to the arguments made in this Objection, the Retirement Systems submit that the relief requested in the Stay Motions must be denied because such relief is prohibited by: (i) *res judicata,* (ii) collateral estoppel, and (iii) the Anti-Injunction Act, 28 U.S.C. §2283; and (iv) principles of abstention. The Retirement Systems reserve their rights to supplement this Objection and request the opportunity to submit additional briefing on these arguments and any others, as needed.

The Retirement Systems join in and concur with the Objections filed by:

- • The Michigan Council of the American Federation of State, County & Municipal Employees, AFL-CIO [Docket No. 84]; and,

- • Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington, Bruce Goldman and the International Union, UAW [Docket No. 125];

### <u>Conclusion</u>

For the reasons set forth herein, the Retirement Systems respectfully request that this Court deny the Stay Motions. If this Court nonetheless determines that it has jurisdiction to consider substantive matters, the Retirement Systems submit that the Court should allow an

17

opportunity for parties to fully brief and argue the issue of whether section 109(c)(2) has been satisfied, before any consideration of the premature Stay Motions.

Respectfully submitted,

CLARK HILL PLC

/s/ Robert D. Gordon
Robert D. Gordon (P48627)
Shannon L. Deeby (P60242)
Evan J. Feldman (P73437)
151 South Old Woodward Avenue
Suite 200
Birmingham, Michigan 48009
Telephone: (248) 988-5882
Facsimile: (248) 988-2502
rgordon@clarkhill.com

Dated: July 23, 2013

*Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*

9221704.7 14893/161046

13-53846-swr Doc 2382-9 Filed 12/27/13 Entered 12/27/13 10:02:60 Page 72 of 81
13-53846-swr Doc 2294-9 Filed 12/23/13 Entered 12/23/13 12:00:48 Page 130 of 142    129

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| | ) | |

---

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on July 23, 2013, the Objection of the Retirement Systems to Motions of Debtor for Entry of Orders (I) Confirming the Protections of Sections 362, 365 and 922 of the Bankruptcy Code, and (II) Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non-Officer Employees and (C) Agents and Representatives of the Debtor was filed using the Court's CM/ECF system, which CM/ECF system will send notification of such filing to all parties of record.

CLARK HILL PLC

/s/ Robert D. Gordon
Robert D. Gordon (P48627)
Shannon L. Deeby (P60242)
Evan J. Feldman (P73437)
151 South Old Woodward Avenue
Suite 200
Birmingham, Michigan 48009
Telephone: (248) 988-5882
Facsimile: (248) 988-2502
rgordon@clarkhill.com

Dated: July 23, 2013

*Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

---

In re:

CITY OF DETROIT, MICHIGAN,                     Chapter 9

               Debtor.          Case No. 13-53846
                                    Honorable Steven W. Rhodes

---

OBJECTION OF ROBBIE FLOWERS, MICHAEL WELLS, JANET WHITSON, MARY WASHINGTON, BRUCE GOLDMAN AND INTERNATIONAL UNION, UAW TO MOTION OF DEBTOR, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE ENTITIES, (B) NON-OFFICER EMPLOYEES AND (C) AGENTS AND REPRESENTATIVES OF THE DEBTOR (Docket No. 56)

---

Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington and Bruce Goldman (the "*Flowers* plaintiffs") plaintiffs in a Michigan civil action ("*Flowers v. Snyder"*) against Michigan Governor Snyder, Michigan Treasurer Dillon and the State of Michigan under Article 9, Section 24 of the Michigan Constitution, join with International Union, UAW, the collective bargaining representative of Robbie Flowers and Bruce Goldman, in objection to the Motion Of Debtor, Pursuant To Section 105(A) Of The Bankruptcy Code, For Entry Of An Order Extending The Chapter 9 Stay To Certain (A) State Entities, (B) Non-Officer Employees And (C) Agents And Representatives Of The Debtor (Docket No. 56) (the "Motion"), and state:

1.      The *Flowers* plaintiffs are an employee of a Michigan municipal corporation named the Detroit Library Commission (Robbie Flowers), two retirees from the Detroit Library Commission (Michael Wells and Janet Whitson), a City of Detroit employee (Bruce Goldman), and a City of Detroit retiree (Mary Washington). Each has earned vested pension benefits from

the City of Detroit General Retirement System ("GRS"), and the three retiree plaintiffs are currently receiving pension benefits from GRS. International Union, UAW is the collective bargaining representative of Robbie Flowers and Bruce Goldman, and was the collective bargaining representative of the remaining *Flowers* plaintiffs when they were employed by the Detroit Library Commission or the City of Detroit.

2.      The *Flowers* plaintiffs' vested pension benefits are protected by Article 9, Section 24 of the Michigan Constitution, which provides that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation whereof which shall not be diminished or impaired thereby."

3.      The *Flowers* plaintiffs filed suit in state court against the State of Michigan and two of its constitutional officers because those officers had been abrogating and were threatening to abrogate plaintiffs' state constitutional rights, as more fully set forth in their amended verified complaint (Exhibit 6.1 to the Motion) and in their reply brief in support their motion for preliminary injunction in *Flowers v. Snyder* (attached as Exhibit 1 to the Declaration of William Wertheimer filed herewith).

4.      At no point have the *Flowers* plaintiffs sued the debtor or the Detroit Emergency Manager, the City of Detroit or any City of Detroit official or employee. Nor have they sought any relief against any of these persons or entities.

5.      The debtor at paragraph 11 of its Motion asserts that the *Flowers* plaintiffs sought *ex parte* injunctive orders. That is untrue. See the attached declaration of William Wertheimer filed herewith. At no point did the *Flowers* plaintiffs ever seek *ex parte* relief. To the contrary,

2

the *Flowers* defendants sought to delay as long as possible (for a now obvious reason) a fully briefed hearing on the merits of a motion for preliminary injunction seeking to preclude Governor Snyder from authorizing the filing of a Chapter 9 bankruptcy petition in violation of the Michigan Constitution.  See Declaration of William Wertheimer, filed herewith.

6.  The *Flowers* plaintiffs' Michigan state law claim against Michigan Governor Snyder, Michigan Treasurer and the State of Michigan is well-grounded in the Michigan Constitution, as indicated by the debates concerning the adoption of what is now Article 9, Section 24 of the Michigan Constitution:

> MR. VAN DUSEN: An employee who continued in the service of the public employer in reliance upon the benefits which the plan says he would receive would have the contractual right to receive those benefits, and **would have the entire assets of the employer at his disposal from which to realize those benefits**.

1 Official Record, Constitutional Convention 1961, p. 774 (emphasis added).

7.  *Flowers v. Snyder* was filed once it became abundantly clear that Governor Snyder intended to unconstitutionally authorize the Emergency Manager to use federal bankruptcy law to override the protections of the Michigan State Constitution prohibiting the impairment of accrued pension benefits.[1]  The City blindly and dismissively treats these suits as

---

[1] The Emergency Manager's radical proposal to cut funding to the retirement system using a new pension valuation prepared for the City that (apparently through the use of a new mix of assumptions) purports to significantly increase the level of underfunding, to offer pennies on the dollar for retirement system funding and then declare that accrued benefits must be cut, raised legitimate and serious concerns that state law, as well as federal bankruptcy law, was being used, or about to be used to eviscerate pension benefits that are fundamental in human terms and importance to pensioners and protected under the Michigan Constitution.  See Declaration of Charles M. Moore in Support of City of Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code, par. 11-16 (describing new valuation report and assumptions).

3

mere collection actions designed to find end-runs around its Chapter 9 bankruptcy case, as if the lawsuits were the work of enterprising creditors looking every which way to avoid the bankruptcy case. See e.g., Motion at ¶23. But as the Court is well aware, Chapter 9 reflects our system of dual sovereignty and its reach is limited accordingly. A municipality is eligible to be a debtor "*if and only if*" it "is specifically authorized, in its capacity as a municipality or by name to be a debtor under [chapter 9] by State law, or by a governmental officer. . . ." 11 U.S.C. § 109(c) (2) (emphasis added). *Flowers* and the other lawsuits were commenced precisely to contest the authority of the Governor to issue such an authorization under state law where a purpose of the chapter 9 would be to impair constitutionally protected pension benefits.

8.      Rather than enjoin *Flowers v. Snyder*, and the other lawsuits, they must proceed in the state courts. Otherwise, whether and to what extent this bankruptcy case is lawful under the Michigan Constitution is a cloud that will overhang even the most routine orders issued by this Court should the bankruptcy case continue without a resolution of these suits through the state court system and notwithstanding the orders already by the state court. The City's Motion is utterly blind to the fundamental role of these suits in defining the extent to which the bankruptcy can proceed to issue any orders at all. Or else the City hopes that the Court will not notice at all.

9.      For the foregoing reasons, as well the grounds set forth in the Objection of The Michigan Counsel 25 of the American Federation State, County and Municipal Workers (Docket 84), specifically, that the City is not entitled to a stay under the automatic stay or Section 105 of the Bankruptcy Code, as well as under long-standing principles of federal court abstention and federalism principles embodied in the Tenth Amendment to the U.S. Constitution which the

4

*Flowers plaintiffs* and International Union, UAW join in, the *Flowers* Plaintiffs and the UAW

respectfully submit that the Motion should be denied.

Respectfully submitted,

/s/William A. Wertheimer
William A. Wertheimer (P26275)
30515 Timberbrook Lane
Bingham Farms, MI 48025
248-644-9200
billwertheimer@gmail.com

*Attorney for Robbie Flowers, Michael Wells, Janet*
*Whitson, Mary Washington and Bruce Goldman*

/s/Niraj Ganatra
Niraj Ganatra (P63150)
Michael Nicholson (P33421)
General Counsel
International Union, UAW
8000 East Jefferson Avenue
Detroit, Michigan 48214
313-926-5216
mnicholson@uaw.net

and

/s/Babette Ceccotti
Babette Ceccotti
Cohen, Weiss and Simon LLP
330 West 42d Street
New York, NY 10036-6979
212-356-0227
bceccotti@cwsny.com

*Attorneys for International Union, UAW*

Dated: 24 July 2013

In re:

CITY OF DETROIT, MICHIGAN,                    Chapter 9

                      Debtor,                    Case No. 13-53846

      v.

                                            Honorable Steven W. Rhodes

## AMENDED DECLARATION OF WILLIAM WERTHEIMER

1.      I am the lead attorney for plaintiffs in *Flowers, et al. v. Snyder, et al.,* No. 13-734-CZ (Ingham County Circuit Court July 3, 2013), one of the three "Prepetition Lawsuits" that the City is seeking to stay in its motion at Docket No. 56.   This Amended Declaration supplements my Declaration filed in this matter on July 23, 2013.

2.      In that motion the City states at paragraph 11 that plaintiffs in *Flowers* (and the other two "Prepetition Lawsuits") sought "*ex parte* orders" for temporary or preliminary injunctive relief. That is untrue. At no point did the *Flowers* plaintiffs (or the *Webster* plaintiffs) ever seek *ex parte* relief.

3.      I filed our suit on July 3, 2013 and drew Judge Rosemarie Aquilina. I had notified the Attorney General's office before filing that I would be going to chambers seeking an order to show cause for a hearing on a preliminary injunction precluding the Governor from authorizing a Detroit bankruptcy. I met up with Tom Quasarano and Michael Murphy of the Attorney General's office at court. The three of us went into Judge Aquilina's chambers where we met

with Morgan Cole, the court officer/law clerk. Ms. Cole stated that Judge Aquilina could hear the matter on July 15. I urged that the matter be set for July 15. The Attorney General's office objected and asked for a delay until July 22 because the earlier date would interfere with chemotherapy treatment that Mike Murphy (who would according to them be writing the response brief) had previously scheduled. I then agreed to the July 22 hearing date, with the defendants' responsive pleading to be filed July 15. Judge Aquilina subsequently issued the order to show cause for July 22 at 9 a.m.

4.      Later the day of July 3, John Canzano filed suit on behalf of the *Webster* plaintiffs. He subsequently obtained an order to show cause for his hearing for declaratory relief before Judge Aquilina on July 22 at 9 a.m.

5.      The Attorney General's office filed response briefs in the *Flowers* and the *Webster* cases on July 15.

6.      Michael Murphy's name was not on either brief defendants filed on July 15 and he has had no involvement in the case to my knowledge beyond his role in obtaining the July 22 hearing date described above

7.      On July 17 the Clark Hill law firm filed suit on behalf of the two Pension Systems and moved for an expedited briefing schedule and hearing pursuant to MCR 2.605(D).

8.      On July 18 Mike Pattwell, a Clark Hill attorney, advised me by phone that the *Pension System* plaintiffs would be seeking injunctive relief from Judge Aquilina that afternoon as they had received word that the City was planning on filing for bankruptcy on July 19. (The reply brief with the affidavit of Michael Nicholson was filed on July 18 and is attached as Exhibit 1.) I was planning on filing our reply brief for the July 22 hearing that afternoon, so I

2

decided to also appear before Judge Aquilina to seek immediate injunctive relief. I advised John Canzano of what I had heard and he decided similarly.

9. At approximately 3:35 p.m. on July 18, I telephonically advised Tom Quasarano that I would be appearing in Judge Aquilina's courtroom shortly after 4 p.m. to seek an injunction. He said that he would meet me there and did.

10. The City filed for bankruptcy at 4:06 p.m. We began our hearing at 4:15 p.m. A transcript of the hearing is attached hereto as Exhibit 2.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 24, 2013.

/s/William Wertheimer

3