# EXHIBIT 2

```
 1                        STATE OF MICHIGAN
           30TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF INGHAM
 2                         CIVIL DIVISION


 3   THE GENERAL RETIREMENT SYSTEM
     OF THE CITY OF DETROIT, and THE
 4   POLICE AND FIRE RETIREMENT SYSTEM
     OF THE CITY OF DETROIT,

 5
                        Plaintiffs,
 6   v                                    Case No. 13-768-CZ
                                          Hon. Rosemarie Aquilina
 7   KEVYN D. ORR, in his official capacity
     as the EMERGENCY MANAGER OF THE CITY OF
 8   DETROIT, and RICHARD SNYDER, in his
     official capacity as the GOVERNOR OF THE
 9   STATE OF MICHIGAN,


10                        Defendants.
     _____/
11   GRACIE WEBSTER and
     VERONICA THOMAS,

12
                        Plaintiffs,
13   v                                    Case No. 13-734-CZ
                                          Hon. Rosemarie Aquilina
14   THE STATE OF MICHIGAN; RICHARD
     SNYDER, as Governor of the State
15   of Michigan; and ANDY DILLON,
     as Treasurer of the State of
16   Michigan,
                        Defendants.
17   _____/
     ROBBIE FLOWERS, MICHAEL WELLS,
18   JANET WHITSON, MARY WASHINGTON,
     and BRUCE GOLDMAN,

19
                        Plaintiffs,
20   v                                    Case No. 13-734-CZ
                                          Hon. Rosemarie Aquilina
21   RICK SNYDER, as the Governor of the
     State of Michigan; ANDY DILLON, as
22   the Treasurer of the State of Michigan;
     and the STATE OF MICHIGAN,

23
                        Defendants.
24   _____/

25                  MOTION FOR PRELIMINARY INJUNCTION
```

1        *BEFORE THE HON. ROSEMARIE AQUILINA, CIRCUIT JUDGE*

2        *Ingham County, Michigan - Thursday, July 18, 2013*

3

4        APPEARANCES:

5        For Plaintiffs Retirement Systems:
                              RONALD A. KING (P45088)
6                             MICHAEL J. PATTWELL (P72419)
                              CLARK HILL PLC
7                             212 East Grand River Ave.
                              Lansing, MI 48906
8        For Plaintiffs Webster, et al.:
                              JOHN R. CANZANO (P30417)
9                             Smith & Radtke, PC
                              400 Galleria Officentre, Ste. 117
10                            Southfield, MI  48034

11       For Plaintiffs Flowers, et al.:
                              WILLIAM A. WERTHEIMER (P26275)
12                            Attorney at Law
                              30515 Timberbrook Lane
13                            Bingham Farms, MI  48025

14       For the Defendants:   THOMAS QUASARANO (P27982)
                              Assistant Attorney General
15                            State Operations Division
                              P.O. Box 30754
16                            Lansing, MI 48909

17

18

19       REPORTED BY:         Melinda I. Dexter, RMR, RPR, CSR-4629
                              Official Court Reporter
20                            313 W. Kalamazoo
                              Post Office Box 40771
21                            Lansing, MI  48901-7971

22

23

24

25

```
 1               T A B L E   O F   C O N T E N T S

 2

 3

 4

 5       WITNESSES:

 6            None

 7

 8

 9

10

11       EXHIBITS:

12            None

13

14

15

16

17

18

19

20

21

22

23

24

25
```

19-50846-swr Doc 2332-1 Filed 07/23/13 Entered 07/23/13 13:02:30 Page 4 of 98 186

13-53846-swr Doc 13461 Filed 07/29/13 Entered 07/29/13 03:05:30 Page 133 of 187

**Page 4**

1  Ingham County, Michigan
2  Thursday, July 18, 2013 - At 4:15 p.m.
3  MR. KING:  Good afternoon.
4  THE COURT:  Good afternoon.  We have everybody
5  here?
6  MR. KING:  They are.
7  THE COURT:  All right.  This is Docket
8  13-768-CZ, the General Retirement System of the City of
9  Detroit and the Police and Fire Retirement System of the
10  City of Detroit versus Kevin D. Orr, in his official
11  capacity as the Emergency Manager of the City of Detroit,
12  and Richard Snyder, in his official capacity as the
13  Governor of the State of Michigan.
14  Counsel, your appearances for the record.
15  MR. KING:  Good afternoon, your Honor.  Ron
16  King with Clark Hill on behalf of the Plaintiffs, the
17  General Retirement System of the City of Detroit and the
18  Police and Fire Retirement System of the City of Detroit.
19  THE COURT:  Welcome.
20  MR. KING:  Thank you.
21  MR. QUASARANO:  Your Honor, if I may, Thomas
22  Quasarano, Assistant Attorney General, that will be
23  appearing in this case on behalf of the Defendant.  I
24  believe the Defendant was served yesterday.  We have not
25  received a request for representation, but I'm very

**Page 5**

1  likely going to be asked to represent the Governor.
2  THE COURT:  Sir?
3  MR. WERTHEIMER:  Excuse me, your Honor,
4  William Wertheimer.  I apologize for my dress.
5  THE COURT:  No problem.  I know it's last
6  minute.  I don't care how people are dressed.  It's more
7  important that you are here.
8  MR. WERTHEIMER:  Thank you, your Honor.  I was
9  here to file my reply brief today for the Monday hearing.
10  I am now here knowing that this motion has been filed,
11  and I wanted to enter my appearance.
12  THE COURT:  All right.  You may have a seat.
13  There is plenty of room for all.
14  MR. WERTHEIMER:  Thank you.
15  MR. CANZANO:  Your Honor, excuse me, John
16  Canzano, Plaintiffs' attorney in the Webster case.  Same
17  as Mr. Wertheimer, we just found out about this.  I'm
18  here.  My reply brief is being filed.  I have a judge's
19  copy here somewhere.
20  THE COURT:  All right.  Have a seat.
21  MR. KING:  Your Honor --
22  THE COURT:  Anybody else?
23  MR. PATTWELL:  Your Honor, Michael Pattwell
24  from Clark Hill on behalf of Plaintiffs.
25  THE COURT:  Thank you.

**Page 6**

1  Counsel?
2  MR. KING:  Your Honor, Ron King again on behalf
3  of the Plaintiffs, the Detroit Retirement Systems.  We
4  might need to beg the Court's indulgence.  While we
5  appreciate that you have seen us on very short notice,
6  we've been advised that the City has filed, and we're
7  pulling it up on the electronic filing system, so we
8  might need a few minutes here to figure out our very next
9  step.
10  THE COURT:  Okay.
11  MR. KING:  Because the effect of a bankruptcy
12  filing, if, in fact, that's -- we're trying to conform
13  that.  We think, in fact, it has been filed here within
14  the last half hour.  So we probably need about a
15  ten-minute recess here, if the Court would indulge us.  I
16  know you have another matter.
17  THE COURT:  Do we want to make a phone call?
18  MR. KING:  Yeah.  We can, but we're pretty --
19  THE COURT:  Well, here's the thing:  If they
20  haven't filed, we need to hurry up and proceed.  If they
21  have filed --
22  MR. KING:  We're pretty confident that they
23  filed.
24  Right?
25  I mean, we're pulling it up.  Yeah.  It's been

**Page 7**

1  confirmed.  So I'm not sure where that leaves us with
2  this proceeding because it's going to be pretty hard to
3  undue.  It's been done.
4  MR. WERTHEIMER:  There is no automatic stay in
5  this.
6  MR. KING:  Yeah.  What we're here for -- the
7  really --
8  What counsel is saying is there is no automatic
9  stay with respect to this proceeding.  So in our
10  judgment, this matter will proceed.  What you have before
11  you, however, is a motion for temporary restraining order
12  to enjoin certain conduct that's already occurred.  So
13  I'm not sure that we really have a lot of business in
14  front of the Court at this moment, but I would like to
15  just confer for about ten minutes on that issue because
16  we will proceed in the case.  And if we're here and you
17  want to take the time to set some sort of expedited
18  briefing schedule, we could do that also.
19  It's quite likely that you, your Honor, will be
20  able to make a ruling on the merits of this case in
21  advance of whatever occurs in the context of a Chapter 9
22  filing.
23  THE COURT:  I plan on making a ruling on
24  Monday.  I could make a ruling tomorrow, if push came to
25  shove, but Monday would probably be soon enough.

13-53341-swr Doc 2246-1 Filed 07/29/13 Entered 07/29/13 15:08:02 Page 6 of 52 188

**Page 8**

1   confident that the bankruptcy court won't act as quickly
2   as I will.
3       MR. KING:  Yeah.  I'm not sure, but we'll see.
4   I mean, there might -- but, nevertheless, so we should --
5       If you're prepared to rule on the merits on
6   Monday, again I'm not sure what -- if there is much
7   business for us left to do before the Court today.
8       THE COURT:  Unless some kind of -- I don't
9   really have any authority over them, so.
10      MR. KING:  Right.
11      THE COURT:  I don't think anything --
12  Counsel?
13      MR. WERTHEIMER:  Your Honor, the motion that's
14  up for Monday, our motion at least that's up for Monday,
15  is a request for a preliminary injunction to enjoin the
16  Governor.  We have no evidence the Governor has
17  authorized any bankruptcy, and we would not only want to
18  go forward on Monday but ask that the motion for
19  preliminary injunction be moved up to now, hopefully, to
20  tomorrow morning if the Court will not hear it now.  But
21  I don't think there is any reason why the Court cannot
22  hear our motion for preliminary injunction.
23      I'm talking about in terms of the Court's
24  preparedness but not in terms of the apparent filing.  They
25  may have filed.  But nobody -- I asked the Governor's

**Page 9**

1   Office before we came in here -- er, the Attorney General
2   whether they could make any representations to me that
3   would obviate the need for me going forward, and they
4   could not.
5       So we've got a written, fully briefed request/
6   motion for preliminary injunction.  The Attorney
7   General's Office has briefed it.  Time is obviously of
8   the essence.  I would suggest that the Court hear our
9   motion to preliminarily enjoin the Governor authorizing a
10  bankruptcy now.
11      MR. CANZANO:  Your Honor, I would make
12  essentially the same request except that our motion,
13  although it seeks preliminary injunctive relief in the
14  alternative, it primarily seeks a final declaratory
15  judgment that what has just happened, apparently, is
16  unconstitutional, and that is ready for a final decision
17  we were saying on Monday.  We have a reply brief that has
18  just been filed, and we would -- we could -- this Court
19  could issue that order immediately, and I don't know what
20  the consequences for the bankruptcy court would be,
21  necessarily, but I think it would -- it might make a
22  difference.
23      MR. WERTHEIMER:  I'm sorry, and I think that at
24  a minimum, your Honor, I think we should -- I think the
25  Court should decide the preliminary injunction now, but

**Page 10**

1   we should find out from the Office of the Attorney
2   General whether the Governor has authorized a bankruptcy
3   that has done the act that we were attempting to enjoin
4   and that they knew we were attempting to enjoin and that
5   they've known for the last two weeks and that they're
6   filing briefs on saying that it's not ripe.  The
7   attorneys for the Government have represented to this
8   Court that our motion is not ripe.
9       THE COURT:  I just received a note from my law
10  clerk that says the bankruptcy was filed at 4:06.
11      MR. KING:  Right.  Your Honor, so what we'd
12  like to do here is amend our emergency motion for
13  temporary restraining order and get it and request from
14  this Court an order enjoining the Governor and the
15  Emergency Manager from taking any further action in the
16  bankruptcy proceeding, and we'll modify our order to that
17  effect.
18      MR. WERTHEIMER:  I would join that as to the
19  Governor.  We have not sued the Detroit Emergency
20  Manager, but I would orally join in that motion as to the
21  Governor and the Secretary of the Treasury.
22      MR. CANZANO:  I would say the same in our case.
23  We're not joining their motion but we're making a motion
24  in our case that would be the same as theirs only against
25  the Governor.

**Page 11**

1       THE COURT:  Granted, as to all of your
2   requests.
3       How soon are you going to present me with an
4   order?
5       MR. KING:  Right now.
6       THE COURT:  All right.
7       MR. KING:  We just need to mark up the order
8   that we have for the Court.
9       THE COURT:  Absolutely.
10      MR. QUASARANO:  Your Honor, if I may, we would
11  ask that the Court stays enforcement of the order, and
12  your ruling on that would be appreciated at this time.
13      THE COURT:  Denied.
14      MR. QUASARANO:  Thank you.  We'll present an
15  order as soon as possible.
16      THE COURT:  Thank you.
17      MR. QUASARANO:  Thank you, Judge.
18      MR. WERTHEIMER:  Your Honor, we will need a few
19  minutes to prepare a written order, but if we can --
20      THE COURT:  Well, sir, would you like to copy
21  that and modify what they're doing?  My law clerk will be
22  happy to help you.
23      MR. WERTHEIMER:  Thank you, your Honor.
24      THE COURT:  As to your stay, you'll be getting
25  that to me in --

**Page 12**

1     MR. QUASARANO: Maybe I can just make a call

2 and get an order over to you right yet today.

3     THE COURT: Sure. You can even handwrite it.

4 I don't care how we do it. You can run it over here, fax

5 it over here; whatever gets you the job done. Time is of

6 the essence.

7     MR. QUASARANO: I appreciate that.

8     MR. KING: (Approaching the bench.)

9     Your Honor, Ron King again on behalf of the

10 Plaintiffs. If we could go back on the record.

11     THE COURT: Excuse me.

12     MR. KING: We'd like to set the sequence of

13 events in terms of how things have transpired in the last

14 hour, if you will. Just for the record, our motion for

15 emergency temporary restraining order was filed at

16 3:37 p.m.; that is, today, July 18th. We promptly, well

17 in advance of 4 o'clock and probably within -- well,

18 actually, we had delivered prior to the filing time at

19 3:37 judge's copies to chambers for your review.

20     Then we waited for the Attorney General, who

21 doesn't feel compelled to make an appearance here in this

22 case because he hasn't actually been officially retained

23 yet, but, nevertheless, as a courtesy we waited for him

24 to appear, which he came upstairs sometime around 4:10.

25 We understand the bankruptcy filing was at 4:05?

12

**Page 13**

1     THE COURT: 4:06.

2     MR. KING: 4:06. The Court took the bench at

3 approximately 4:20. And to the extent your Honor has had

4 an opportunity to read the papers and was inclined to

5 make a ruling, if you'd be willing to put that on the

6 record, then in the -- when we do seek dismissal of the

7 bankruptcy proceeding, we'll have some clear record of

8 the sequence of events here.

9     MR. WERTHEIMER: Just to add, in terms of the

10 sequence of events, I did advise by telephone

11 Mr. Quasarano of the fact that I would be in court and

12 that it was my understanding that Clark Hill was going to

13 be in court seeking a temporary restraining order. I

14 talked to him by phone before 4 this afternoon, sometime

15 between 3:30 and 4.

16     MR. QUASARANO: And I could confirm that

17 Mr. Wertheimer gave me the professional curtesy of

18 letting me know that there was a hearing being planned.

19 I had no -- we have no personal knowledge in our division

20 of a bankruptcy being filed any certain time or date, so

21 there is nothing we could provide in terms of a response

22 that there is going to be a bankruptcy filed. So we

23 learned it as everyone else learned.

24     THE COURT: All right. And obviously I heard

25 this was happening. I had another hearing that was

13

**Page 14**

1 supposed to take place at 4 o'clock, and I understood

2 this was a very important issue, and we obviously have a

3 hearing scheduled, another hearing scheduled, at

4 9 o'clock on Monday.

5     So I advised my law clerk that we had a

6 4 o'clock hearing that wasn't going to take very long,

7 and whenever you all got here and that we would wait for

8 all of the attorneys, we would then have a hearing and to

9 let me know when everybody was in place and then I would

10 come out.

11     So that's exactly what happened. She let me

12 know everybody was here, gave me the paperwork to look

13 over, and, of course, I did just that. And we got out of

14 here as quickly as we could, obviously not in time

15 because 4:06 occurred and they did what they were going

16 to do, which I know you all raised here.

17     I did have an opportunity to -- with review of

18 what was filed, and you're asking me what I would have

19 done, and it was my intention, after reviewing what you

20 had filed, in addition to other research that my capable

21 externs from Cooley and from Michigan State, as well as

22 my very capable law clerk pulled for me, I reviewed

23 constitutional provisions, I reviewed legislative intent,

24 I reviewed what you all provided me, I reviewed a lot of

25 information in the last few hours, and it was my

14

**Page 15**

1 intention to grant you your request completely.

2     MR. KING: Thank you, your Honor. Appreciate

3 your clarifying the record.

4     MR. WERTHEIMER: Thank you, your Honor.

5 Your Honor, we have a proposed order.

6     THE COURT: You may approach. Thank you.

7     MR. WERTHEIMER: Thank you. It is handwritten.

8 (Approaching the bench.)

9     THE COURT: No problem.

10     MR. WERTHEIMER: And for caption, it just says,

11 at this point, Flowers Caption.

12     THE COURT: Okay.

13     MR. WERTHEIMER: I had some help in drafting

14 too if you can't read the --

15     THE COURT: We'll make it work.

16     MR. WERTHEIMER: Okay. Thank you, Judge.

17     MR. KING: We may be back tomorrow, your Honor.

18     MR. WERTHEIMER: We may be back too,

19 your Honor. And if we are, I will be in a suit.

20     THE COURT: It's okay. As long as your body is

21 covered, I don't care what's it's covered with.

22     MR. KING: I think with respect to the present

23 motion before you, we have an order in place and

24 appreciate you making the accomodation and time for us

25 today. Thank you.

15

13-53846-tjt Doc 3826-11 Filed 04/22/14 Entered 04/22/14 16:08:45 Page 190 of 645 189

```
 1          THE COURT:  No problem.
 2          Now, if you're back tomorrow, what is it going
 3  to be for?
 4          MR. KING:  We might file a mandamus action
 5  requiring the EM to withdraw the Chapter 9 filing.
 6          THE COURT:  Will this require time on the
 7  record?
 8          MR. KING:  Yes.
 9          THE COURT:  Okay.  My time restriction is that
10  I have my morning free until about 1:30.  Can you get it
11  here before 1:30?
12          MR. PATTWELL:  Yes.
13          MR. KING:  Absolutely.
14          THE COURT:  I'll make myself available all
15  morning until 1:30.
16          MR. KING:  Thank you, your Honor.
17          THE COURT:  Okay.
18          MR. CANZANO:  May I approach, your Honor?  I
19  have an order drafted also.
20          THE COURT:  You may.
21          MR. CANZANO:  (Approaching the bench.)
22          THE COURT:  Okay.  We'll make you copies, and
23  this is our copy.
24          Anything else for the record?
25          MR. KING:  No, your Honor.  Thank you.
                                                    16
```

```
 1          MR. WERTHEIMER:  No, your Honor.  Thank you.
 2          THE COURT:  That's all for the record.  Thank
 3  you.
 4          (At 4:38 p.m., the matter is
 5          concluded.)
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                                    17
```

```
 1    STATE OF MICHIGAN)
                       ) SS.
 2     COUNTY OF INGHAM)

 3

 4                    CERTIFICATE OF REPORTER

 5

 6            I, Melinda I. Dexter, Certified Shorthand

 7     Reporter, do hereby certify that the foregoing

 8     17 pages comprise an accurate, true, and complete

 9     transcript of the proceedings and testimony taken in the

10     case of The General Retirement System of the City of

11     Detroit, et al., versus Kevyn D. Orr, et al., Case

12     No. 13-768-CZ, and Gracie Webster, et al., versus the

13     State of Michigan, et al., Case No. 13-734-CZ, and

14     Robbie Flowers, et al., versus Rick Snyder, et al., Case

15     No. 13-729-CZ, on Thursday, July 18, 2013.

16            I further certify that this transcript of the

17     record of the proceedings and testimony truly and

18     correctly reflects the exhibits, if any, offered by the

19     respective parties.  WITNESS my hand this the eighteenth

20     day of July, 2013.

21

22     _____
       Melinda I. Dexter, RMR, RPR, CSR-4629
23     Official Court Reporter
       313 West Kalamazoo
24     Post Office Box 40771
       Lansing, Michigan 48901-7971
25
```

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION – DETROIT

---------------------------------------------------------------- x

In re:

CITY OF DETROIT, MICHIGAN,                      Chapter 9

Debtor.                                   Case No. 13-53846

                                           Hon. Steven W.

Rhodes

---------------------------------------------------------------- x

### PROOF OF SERVICE

The undersigned certifies that on July 24, 2013, a copy of Objection Of Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington, Bruce Goldman and International Union, UAW To Motion of Debtor, Pursuant to Section 105(a) Of The Bankruptcy Code, For Entry Of An Order Extending The Chapter 9 Stay To Certain (A) State Entiries, (B) Non-Officer Employees and (C) Agents and Representatives Of The Debtor (Docket No. 56), and the accompanying Amended Declaration of William Wertheimer, were served upon parties via the Court's electronic court filing service.

I declare that the foregoing statement is true to the best of my information, knowledge and belief.

/s/ Niraj R. Ganatra
Niraj R. Ganatra (P63150)
International Union, UAW
8000 E. Jefferson Avenue
Detroit, Michigan 48214
(313) 926-5216
nganatra@uaw.net

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,        .        Docket No. 13-53846
        MICHIGAN,               .
                                .        Detroit, Michigan
                                .        July 24, 2013
                    Debtor.     .        10:02 a.m.
. . . . . . . . . . . . . . . .

    HEARING RE. MOTION OF DEBTOR, PURSUANT TO SECTION 105(a)
  OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER CONFIRMING
     THE PROTECTIONS OF SECTIONS 362, 365 AND 922 OF THE
 BANKRUPTCY CODE (DOCKET #53) AND MOTION OF DEBTOR, PURSUANT
 TO SECTION 105(a) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN
  ORDER EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE
    ENTITIES, (B) NON-OFFICER EMPLOYEES AND (C) AGENTS AND
        REPRESENTATIVES OF THE DEBTOR (DOCKET #56)
        BEFORE THE HONORABLE STEVEN W. RHODES
        UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:      Jones Day
                     By:  HEATHER LENNOX
                     North Point
                     901 Lakeside Avenue
                     Cleveland, OH  44114-1190
                     (216) 586-3939

For AFSCME:          Lowenstein Sandler, LLP
                     By:  SHARON L. LEVINE
                     65 Livingston Avenue
                     Roseland, NJ  07068
                     (973) 597-2374

For Syncora         Kirkland & Ellis, LLP
Guarantee and       By:  RYAN BENNETT
Syncora Capital     300 North LaSalle
Assurance:          Chicago, IL  60654
                    (312) 862-2074

For Public Safety   Erman, Teicher, Miller, Zucker &
Unions:                 Freedman, PC
                    By:  BARBARA PATEK
                    400 Galleria Officentre, Suite 444
                    Southfield, MI  48034
                    (248) 827-4100

APPEARANCES (continued):

| | |
|---|---|
| For Police and Fire Retirement System and General Retirement System of the City of Detroit: | Clark Hill, PLC<br>By:  ROBERT GORDON<br>151 South Old Woodward, Suite 200<br>Birmingham, MI  48009<br>(248) 988-5882 |
| For the UAW: | Cohen, Weiss & Simon, LLP<br>By:  BABETTE CECCOTTI<br>330 West 42nd Street, 25th Floor<br>New York, NY  10036<br>(212) 356-0227 |
| For the Flowers Plaintiffs: | Law Offices of William A. Wertheimer<br>By:  WILLIAM WERTHEIMER<br>30515 Timberbrook Lane<br>Bingham Farms, MI  48025<br>(248) 644-9200 |
| For Nathaniel Brent: | In pro per<br>NATHANIEL BRENT<br>538 South Livernois<br>Detroit, MI  48209 |
| For the Phillips Plaintiffs: | The Sanders Law Firm, PC<br>By:  HERBERT A. SANDERS<br>615 Griswold, Suite 913<br>Detroit, MI  48226<br>(313) 962-0099 |
| For the State of Michigan: | Michigan Department of Attorney General<br>By:  MATTHEW SCHNEIDER<br>525 West Ottawa Street, Fl. 7<br>P.O. Box 30212<br>Lansing, MI  48909<br>(517) 241-8403 |
| For the Webster Plaintiffs: | McKnight, McClow, Canzano, Smith &<br>  Radtke, PC<br>By:  JOHN R. CANZANO<br>400 Galleria Officentre, Suite 117<br>Southfield, MI  48034<br>(248) 354-9650 |

Court Recorder:        Letrice Calloway
                       United States Bankruptcy Court
                       211 West Fort Street
                       21st Floor
                       Detroit, MI  48226-3211
                       (313) 234-0068

Transcribed By:        Lois Garrett
                       1290 West Barnes Road
                       Leslie, MI  49251
                       (517) 676-5092

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1    THE CLERK:  Case Number 13-53846, City of Detroit,

2  Michigan.

3    THE COURT:  Good morning.  Stand by one moment for

4  me, please, sir.  I'd like to begin by reviewing with

5  everyone the order of proceedings here, and then we'll get

6  right to the arguments.  The first thing I'd like to do is

7  administer the oath to attorneys who seek to become members

8  of the Bar of this Court, and then I will give a brief

9  opening statement, and then we will proceed with the

10  arguments.  It is my intent to allow the city, who is the

11  movant here, 15 minutes for its initial argument and then to

12  allow each of those creditors who have filed objections to

13  the motion 15 minutes each as well and then a 15-minute

14  rebuttal for the city.  Oh, actually, before that rebuttal I

15  want to give any attorneys who would like to be heard on the

16  record but who did not file objections to be heard as well

17  and then a rebuttal by the city.  And then we'll take a break

18  so that I can deliberate on the motions and then after a

19  period of time come back out and give you my decision.

20    So let's begin with the administration of the oath

21  to those attorneys who need admission.  Would those of you

22  who do seek admission to the Bar of the Court step forward,

23  please?  You can actually just stand right there in front of

24  the bench and tell me who you are.

25    MR. LEMKE:  I'm David Lemke, your Honor, from

 1 │ Nashville, Tennessee.

 2 │     MR. SMITH:  Bill Smith, your Honor, from Chicago.

 3 │     MR. BENNETT:  Ryan Bennett, your Honor, from

 4 │ Chicago.

 5 │     THE COURT:  Okay.  One second, please.  Here we go.

 6 │ And raise your right hands.  Do you affirm that you will

 7 │ conduct yourselves as attorneys and counselors of this Court

 8 │ with integrity and respect for the law, that you have read

 9 │ and will abide by the civility principles approved by the

10 │ Court, and that you will support and defend the Constitution

11 │ and laws of the United States?

12 │     ATTORNEYS:  I do (collectively).

13 │     THE COURT:  All right.  Welcome to the Bar of our

14 │ Court.  Counsel, we will take care of filing your papers for

15 │ you.

16 │     ATTORNEYS:  Thank you, your Honor (collectively).

17 │     THE COURT:  One more moment, please.  Okay.  I'd

18 │ like to begin by describing for those who may be watching or

19 │ listening in what the matters are before the Court today.

20 │ There are two motions before the Court today.  The parties

21 │ refer to one of the motions as the stay confirmation motion,

22 │ and they refer to the second motion as the stay extension

23 │ motion.

24 │     When anyone files bankruptcy, all of the legal

25 │ proceedings against that person are stopped.  We call that a

1    stay, a stay of proceedings.  When a municipality like the

2    City of Detroit files bankruptcy, all of the legal

3    proceedings against the city and its officers to collect on a

4    claim against the city are also stopped.  The stay

5    confirmation motion simply requests an order confirming these

6    stays under the United States Bankruptcy Code are in effect.

7    The stay extension motion requests that the Court extend or

8    expand those statutory stays by entering an injunction to

9    stop proceedings against other employees of the city and

10   against the governor and the treasurer of the state.  Those

11   are the only two motions before the Court here today.  Not

12   before the Court is whether the city is eligible to file

13   bankruptcy or whether any plan that the debtor might propose

14   in the case is confirmable under the Bankruptcy Code.  Those

15   issues will be, I expect, fully litigated in due course in

16   this case.

17         So now we are ready for arguments on these two

18   motions first by the city, and, counsel, I need to remind you

19   because of our equipment in this room, when you address the

20   Court, you do need to stand at the lectern and speak into the

21   microphone there.

22         MS. LENNOX:  Good morning, your Honor.  Heather

23   Lennox of Jones Day on behalf of the city.

24         THE COURT:  You may proceed.

25         MS. LENNOX:  Thank you, your Honor.  With respect to

1  the stay confirmation motion, your Honor, I think your Honor

2  summarized exactly what we're looking for quite cogently and

3  concisely.  The reason we filed the motion, your Honor, as

4  has been evident by some activity we've seen in the last week

5  or so, is that not all people understand the concept of the

6  stay or, frankly, how it works in Chapter 9.  We have had

7  state court orders issued against the city after the petition

8  date.  We've had some other Circuit Court judges express --

9  in other city litigation express some uncertainty about

10 whether the stay applies.  We've had vendors with contracts

11 seek to stop shipping, and we have a new officer.  We have an

12 emergency manager, and we want to make it clear that the

13 protections of the stay do apply to the emergency manager

14 because, as your Honor indicated, under Section 922(a), the

15 stay does apply to officers of the city for collections of

16 claims against the city.

17          So I would like to address in particular, your

18 Honor, the emergency manager.  Under Section 922(a), the

19 stay -- we believe the stay applies to the emergency manager.

20 Under Section 9.2 of PA 436, on appointment, the emergency

21 manager assumed all of the powers and acts for and in the

22 place of and in the stead of the mayor and the city council,

23 meaning the governing bodies of the city.  And during the

24 pendency of the emergency manager's appointment, the other

25 governing bodies shall not exercise any of the powers of

their officers except as may be specifically authorized in
writing by the emergency manager.

Furthermore, your Honor, Section 18(1) of PA 436
empowers the emergency manager to act exclusively on the
city's behalf in this case, so we do believe that he is an
officer entitled to the protections of the Chapter 9 stays.

We have also requested a clarification, your Honor,
because the Code does just simply reference officers of the
city, that it would be officers of the city serving in any
capacity.  Some city officers do serve in other roles on
behalf of or at the request of or pursuant to ordinance in
other manners in the performance of their duties as officers
of the city.  For example, Mr. Brown, who is the chief
compliance officer, sits on the root cause committee.  We do
have a finance --

THE COURT:  Sorry.  Sits on what committee?

MS. LENNOX:  The root cause committee, your Honor.
We do have the finance director, the budget director, and
corporation counsel of the city that are directors of the
service corporations that are formed in connection with the
pension certificates.  They sit as directors of that
corporation through Ordinance Number 03-05 of the City Code,
so they are performing their official duties.

Finally, with respect to this motion, your Honor,
the State of Michigan has asked me to confirm on the record,

1    which I now do, that by this motion the city does not seek to

2    abrogate the exceptions to the stay identified in Section

3    362(b) of the Bankruptcy Code nor do we seek to vitiate the

4    state's powers under Section 903 of the Bankruptcy Code.

5            I think this motion, your Honor, is not uncommon, is

6    fairly straightforward, and merely seeks to confirm the

7    protections that are already granted by the Bankruptcy Code.

8    So with your Court's permission, unless you have questions, I

9    would move to the motion to extend.

10           THE COURT:  Please.

11           MS. LENNOX:  In this motion, your Honor -- and this

12   is a little more complicated -- the city seeks to extend the

13   stay provisions of Section 362 and 922 of the Bankruptcy Code

14   to certain parties that are or are likely to become targets

15   of claims or lawsuits or other enforcement actions that would

16   have the direct or practical effect of denying the city the

17   protections of the automatic stay imposed by the Code or

18   seeking to collect or enforce a claim against the city.  Your

19   Honor, as you may be aware, we have had several pre-petition

20   lawsuits that have attempted these actions.  We do describe

21   them in the papers.  Some of the objectors describe further

22   developments in their papers.  If it would aid the Court, I

23   do have a short summary as a demonstrative exhibit that I

24   could hand the Court that would show the Court the state of

25   play in each of these actions.  Would that be helpful to the

1   Court?

2           THE COURT:  That's fine.  You should assume and all

3   of you should assume in your presentations that I have

4   thoroughly read and reviewed all of your papers, even those

5   that were filed last night.

6           MS. LENNOX:  Certainly, your Honor.  If your Honor

7   does -- perhaps if your Honor would like to see it --

8           THE COURT:  Okay.

9           MS. LENNOX:  -- I'll hand it up.  Thank you.  May I

10  approach, your Honor?

11          THE COURT:  Please.

12          MS. LENNOX:  Thank you, your Honor.  We do have

13  three lawsuits that attempt to prevent either the filing of

14  this case or the conduct of the city's actions within this

15  case.  One of the suits has been filed against the governor

16  and the emergency manager.  That case -- we don't need a stay

17  extension for the emergency manager.  That case is stayed as

18  to the emergency manager.  Two other cases have been filed

19  solely against the governor and the state treasurer that seek

20  to prevent the authorization of the filing and to

21  circumscribe the emergency manager's powers within this case.

22  Those are the kinds of things, your Honor -- there's been a

23  flurry of activity.  Most of the orders entered in those

24  three cases were entered after -- the TRO's were initially

25  entered after this petition was filed.  There were further

1  orders entered by the state court on the 19th of July that
2  amended the two temporary restraining orders, and in the
3  Webster case, which is the one case that involves only the
4  state treasurer and the governor, there was a declaratory
5  judgment action or a declaratory judgment that was filed
6  declaring PA 436 unconstitutional because it could affect the
7  city's rights within this case.  Those actions have all been
8  appealed by the state attorney general.  The state court has
9  ordered a briefing to go forward in one of the cases and had
10 ordered that the morning of the 22nd, and yesterday the
11 appellate court issued stays in all three of the cases.
12         THE COURT:  If the Court grants your relief, what
13 would be the impact on that appeal?
14         MS. LENNOX:  We believe, your Honor, that the -- we
15 believe that those cases should be permanently stayed, and
16 the issues that are addressed in those cases regarding the
17 constitutionality of PA 436, because they seek to -- the
18 arguments about constitutionality on PA 436 aren't straight
19 constitutionality issues.  They say it's unconstitutional
20 because of what can happen and because of the powers that may
21 be granted under the Bankruptcy Code, and under this Court's
22 jurisdiction and under the emergency manager's rights under
23 Chapter 9, because that is the basis for the challenge to
24 unconstitutionality, we believe those decisions must be made
25 and can only be made by this Court in an action brought

1  before this Court under the supremacy clause and the

2  bankruptcy clause of the United States, so we would expect

3  those actions to be stayed, and any issues that the litigants

4  would have, they would have to bring before this Court for a

5  determination by a court of competent jurisdiction.

6  Unless your Honor has any other questions with

7  respect to the procedural posture of some of these cases, I

8  will move on.  It's as a result of these cases -- and these

9  are all certainly public pleadings for which your Honor may

10  take judicial notice under Federal Rule of Evidence 201(c).

11  It's because of these proceedings that we sought to file this

12  motion, and I'd like to explain the -- first of all, I'd like

13  to articulate the standard under which we're proceeding, and

14  then I would like to explain in more detail about why and the

15  three categories of extensions we are seeking.

16  First of all, the standard for a case for extending

17  the stay is that unusual circumstances may exist, and they

18  can exist when there is an identity between the third party

19  and the debtor such that a judgment against the third party

20  would, in effect, be a judgment against the debtor or that

21  the actions taken by the third party would pose a substantial

22  risk to the reorganization of the case.  Some courts also say

23  that such actions would significantly impair the

24  administration of this case.  So based on the backdrop of

25  that standard, we have asked for the stay to be extended

1   under certain circumstances to three different categories of
2   persons.  The first, as your Honor indicated, are the state
3   entities.  We are asking the Chapter 9 stay to be extended to
4   the governor, the state treasurer, and the members of the
5   local Emergency Financial Assistance Loan Board for
6   actions -- excuse me -- that seek to enforce claims against
7   the city to interfere with the city's activities in this
8   Chapter 9 case or otherwise deny the city the protections of
9   the Chapter 9 stay and interfere with this Court's
10  jurisdiction over these matters.  To be clear, your Honor,
11  because I think there was some confusion about this on the
12  part of some parties, we are seeking to extend the stay
13  protections that the city currently enjoys to the state
14  officials that I identified in the context of lawsuits like
15  the three already filed against state officials that, in
16  substance, seek to interfere with the city's rights as a
17  Chapter 9 debtor and that seriously jeopardize the city's
18  rehabilitation or seek to, in a back-door way, preserve
19  collect, and enforce claims against the city.  This motion
20  does not seek to stay state officials' actions.  Rather, it
21  seeks to stay third-party actions against state officials.
22  The reasons and the evidence for this, your Honor, I think
23  are well-documented in all of the flurry of activity that has
24  taken place in the last week, and there -- that kind of
25  activity needs to stop.  This Court has jurisdiction over

 1   this case, this Court has jurisdiction of all federal matters

 2   arising in this case, and only this Court has jurisdiction to

 3   determine them.  Having widespread litigation in various

 4   state tribunals that can come to different decisions when

 5   it's doubtful that they have jurisdiction to do that can only

 6   confuse the parties, confuse the case, and create serious

 7   barriers to an efficient administration of this case.

 8          The second request that we make for an extension,

 9   your Honor, is to extend this Chapter 9 stay to actions or

10   proceedings against employees of the city's that are neither

11   city officers nor inhabitants of the city because Section

12   922(a) refers to inhabitants.  Many of our nonofficer

13   employees are inhabitants of the city and could be covered,

14   but many are not, and so we are seeking this extension.

15          Your Honor should know that by virtue of city

16   ordinance 13-11-1, the city does indemnify its employees for

17   lawsuits that arise from the good faith performance of their

18   duties.  The city is also self-insured for all of these

19   actions, so the --

20          THE COURT:  So this extension seeks -- or would only

21   apply to claims against employees for which the city might be

22   obligated to indemnify?

23          MS. LENNOX:  Correct, your Honor.  Because the city

24   would be responsible for indemnification because the city is

25   self-insured, we believe that these actions are an action to

```
 1   collect from the city, and we would ask the stay to be
 2   extended in this instance.
 3         The third request, your Honor, is tied to some of
 4   the language in Judge Aquilina's orders, and it's a little
 5   unusual, but under the circumstances, we believe it's
 6   warranted.
 7         THE COURT:  Excuse me one second.  Before you move
 8   on to that, this ordinance that you mentioned --
 9         MS. LENNOX:  Yes, sir.
10         THE COURT:  -- was that in your brief or in your
11   motion?
12         MS. LENNOX:  That was not in the brief and the
13   motion, your Honor.
14         THE COURT:  Would you give us the number again?
15         MS. LENNOX:  Yes, sir.  It is Section 13-11-1 et
16   seq.
17         THE COURT:  Does anyone have a copy of that?
18         MS. LENNOX:  I do not have a copy with me, your
19   Honor, but we can endeavor to get the Court one
20   expeditiously.  Actually, your Honor, may I check my
21   materials?  I might have a copy of it, if you'd like.
22         THE COURT:  Why don't you do that while the
23   creditors are arguing, and you can present it to the Court
24   later, or actually do you know if the City of Detroit
25   ordinances are on Westlaw?
```

1    MS. LENNOX:  I do not know that, your Honor.

2    THE COURT:  Anybody know?  Somebody says no.  All

3    right.  I'll need a copy then.

4    MS. LENNOX:  Moving on to the third category, your

5    Honor -- and, again, this is a little unusual, and it arises

6    directly out of some of the orders that have been entered in

7    the state court litigation.  We request to extend the Chapter

8    9 stay to, quote, "city's" -- "the city's agents and

9    representatives," which are the terms used in the state court

10   orders.  That would directly or indirectly seek to enforce

11   claims against the city or, again, to interfere with the

12   city's activities and this Court's jurisdiction in this

13   Chapter 9 case or otherwise deny the city the protections of

14   the Chapter 9 stay.  Again, your Honor, it's unusual, but

15   under the circumstances and what's been going on in the past

16   week, we believe it's warranted under the circumstances and

17   does meet the standard that I articulated earlier.

18   That's the extent of the relief that we seek, your

19   Honor.  If your Honor has no further questions, then I would

20   reserve remarks for rebuttal.

21   THE COURT:  I do have a couple of questions for you.

22   MS. LENNOX:  Yes.

23   THE COURT:  Can you summarize how you deal with the

24   adversary proceeding issue, the argument that the request to

25   extend the stay under Section 105 of the Bankruptcy Code

 1   should have been in the form of an adversary proceeding?

 2           MS. LENNOX: Um-hmm. Yes, your Honor. I actually

 3   don't -- first of all, in many cases, including cases before

 4   this Court in the Collins & Aikman case, the requests for

 5   extension of a stay are made by motion. The Sixth Circuit

 6   case law that we cite in our brief also suggests that

 7   extensions can be made under 105 by motion. In practice,

 8   they are often made by motion. I think it is important to

 9   make it by motion here, and it is completely impractical to

10   try to file an adversary proceeding with respect to this

11   because of the nature of what we are asking for. For

12   example, with respect to the state entities, we know of three

13   lawsuits that have been filed. We have plaintiffs that we

14   could name in an adversary proceeding, but what we're asking

15   for goes beyond that. We want the stay to apply to these

16   actions or any actions somebody might think to bring in the

17   future. I don't know how to name, you know, unknown

18   plaintiffs in the future. The scope of what we're asking for

19   is broader than that, which is why it makes sense when you're

20   proceeding under Section 362 to move by motion. There's

21   motions to lift stay even though ostensibly that would be an

22   injunctive action, but the motions to lift and motions to

23   extend and motions to enforce are done by motion. Certainly

24   people have done it by the method of preliminary injunction.

25   I don't dispute that, but usually when that happens there is

1   one specific lawsuit that they seek to stay, and that is the

2   sole extension that they're asking for.  We are asking for

3   something much broader here, and I think an adversary

4   proceeding procedurally would be improper.

5            We have also cited -- and we believe it to be

6   true -- in our papers that courts often will say -- will not

7   elevate form over substance, and there are cases that we cite

8   in our reply, including the In re. Cannonsburg Environmental

9   Associates case from the Sixth Circuit that says -- where

10  very clearly the action in that case should have been filed

11  as an adversary proceeding, and the judge said, "Look, you've

12  had due process.  You've had notice.  You have an opportunity

13  to respond.  We have had a full hearing of all the views.

14  You have not been prejudiced."  That exists in this case as

15  well, your Honor, as evidenced by the long and lengthy

16  objections that have been filed to the motion that we ask as

17  it stands.

18            THE COURT:  My second question related to the

19  requirement that the defendants -- that the creditors say

20  apply that to issue the kind of order that you seek, the

21  traditional four factors of a preliminary injunction need to

22  be considered, but in light of the fact that you're over

23  time, I will ask you to address that when you come back

24  after.

25            MS. LENNOX:  Thank you, your Honor.

1    THE COURT:  All right.  So I will allow 15 minutes

2 for each of the creditors that have filed objections.  These

3 are the Michigan Council 25 of AFSCME, Syncora, the UAW

4 together with Creditors Robbie Flowers, Michael Wells, Janet

5 Whitson, Mary Washington, and Bruce Goldman, the Detroit

6 public safety unions, if I can refer them -- refer to them by

7 that, and the General Retirement System of the City of

8 Detroit and the Police and Fire Retirement System of the

9 city.  It doesn't matter to me, counsel, the order in which

10 you proceed, so I will leave that to you to work out.

11    MS. LEVINE:  I'm going to go with alphabetical.

12    THE COURT:  Okay.

13    MS. LEVINE:  Good morning, your Honor.  Sharon

14 Levine, Lowenstein Sandler, for Michigan Council 25 of the

15 American Federation of State, County, and Municipal Employees

16 or AFSCME, as it's been referred to here today.

17    Your Honor, very briefly, it's clear that your Honor

18 has read all the papers, and we very much appreciate that

19 given the short time frame that we've been before this Court.

20 Bankruptcy Code Section 105 is extraordinary relief,

21 extraordinary in that it's only used to enforce rights that

22 already exist under the Bankruptcy Code, so it's not there to

23 create new rights that don't currently exist under the Code.

24 What we have here in a Chapter 9 case, which is more

25 restrictive than, for example, a Chapter 11 case, is the

1   situation where if, in fact, the state has not properly

2   authorized the Chapter 9 filing, there are rights that don't

3   exist under the Bankruptcy Code.  If Chapter 9, as has

4   historically been seen through the unconstitutional finding

5   of predecessors to Chapter 9, is really being used here to

6   avoid state constitutional rights, then Chapter 9 in and of

7   itself is potentially unconstitutional.  If not, it has to be

8   construed narrowly in order to read it constitutionally.  We

9   would respectfully submit that using 105 to find rights that

10  don't otherwise exist, particularly of a constitutional

11  nature, is an extremely broad use of 105.  This isn't a

12  situation where we're saying to the controller or the

13  governor or Mr. Orr, you know, don't respond to discovery

14  requests in a state court action in a foreign jurisdiction

15  because we need your attention here.  We're taking away very

16  fundamental constitutional rights.

17          Secondly, your Honor, if, in fact --

18          THE COURT:  So your argument about the narrow

19  application of Section 105 in this case is really a result of

20  the fact that it's a Chapter 9.

21          MS. LEVINE:  Yes, your Honor.

22          THE COURT:  It's not an argument that's based on

23  Section 105, per se.

24          MS. LEVINE:  Yes, your Honor.  In a Chapter 11

25  you'll have circumstances, for example, where even in the

1    broader case of a Chapter 11, you won't use Article -- you

2    won't use Section 105 to grant a casino license or a liquor

3    license or tell a utility board they can't change rates, but

4    we have an even narrower situation here because we're in

5    Chapter 9.

6            Two, Chapter 9 can't be used if, in fact, the state

7    has not authorized under its constitution and its laws the

8    Chapter 9 filing.  The Chapter 9 filing here is arguably

9    flawed because it intends to go after the pensions.  If it

10   goes after the pensions, it arguably violates the state

11   constitution and can't be before this Court, so, again, the

12   issue with regard to whether or not we have an appropriate

13   state constitutional flaw -- sorry.  The issue with regard to

14   whether or not we have an appropriate filing is necessarily

15   limited by whether or not we have an appropriate state -- we

16   have an inappropriate state constitutional authorization.  If

17   we have an inappropriate state constitutional authorization,

18   that is not simply an implementation tool under 105.  That

19   is, in essence, a substantive right that's being creative --

20   created under 105 that does not exist in the state court.

21           In addition to that, your Honor, and also

22   importantly, three, individual citizens of the City of

23   Detroit have the absolute right to protect their own

24   constitutional rights.  If we say to them they can't go to

25   the state courts that are there for the protection of their

1   constitutional rights in part, then we are -- then we're

2   using 105 again way more broadly than it gets used in the

3   ordinary course as simply an implementation tool.  We're

4   creating more substantive rights.  And while this Court

5   has --

6   THE COURT:  Well, but why isn't the extended stay

7   that the city seeks here simply a procedural mechanism to

8   funnel such challenges to the Bankruptcy Court and,

9   therefore, does not have the effect of denying citizens or

10   other creditors of their rights to have their constitutional

11   claims heard?

12   MS. LEVINE:  Your Honor, if this Court is a court of

13   secondary jurisdiction, no disrespect, with -- but if you

14   look at federalism, comity, abstention, and the state courts

15   are the courts of primary jurisdiction, we would respectfully

16   submit that unlike, for example, determining in a Chapter 11

17   case that there's a validly perfected security interest

18   because you've looked at state law and the UCC is properly

19   filed, we have a very fundamental right here that this Court

20   is being asked to address, so what we're saying is instead of

21   going to the court that's primarily responsible, we're going

22   to come into this Court instead, and it's not as if there's

23   delay or uncertainty with regard to the fact that those

24   matters are going to get heard and considered quickly.  We

25   already have state court litigation pending, and the state

1    appellate courts are poised and ready to rule, so there's no

2    reason to divest them of that appropriate jurisdiction under

3    concepts of federalism, comity, and abstention and move that

4    here to a court of secondary jurisdiction on those issues.

5         Your Honor, fourth, with regard to the form over

6    substance, the procedural arguments with regard to 105, in

7    certain circumstances where 105 is being used for things like

8    stopping discovery or minimal things like that, that's one

9    set, but the Federal Rules of Civil Procedure are put in

10   place in order to protect parties and provide due process.

11   There can't be a more fundamental situation where you need to

12   enforce those types of rights than when you're dealing with

13   basic fundamental constitutional rights, and we respectfully

14   submit that even though there are circumstances where

15   expediency mandates the use of 105 quickly, this is not one

16   of those circumstances.

17        Your Honor, the breathing spell under 105 -- the

18   breathing spell under the Bankruptcy Code and the use of 105

19   to extend the breathing spell is only appropriate if, in

20   fact, the underlying bankruptcy is an appropriate bankruptcy.

21   The idea that there's a breathing spell to continue what is

22   potentially an unconstitutional or illegal -- not

23   intentionally, no motive or anything, your Honor, but --

24   proceeding is clearly not anything that 105 was designed to

25   implement.

1    Your Honor, we would respectfully submit that these

2  are very, very fundamental rights, and unlike a Chapter 11

3  case where you have a defined benefit plan where if, in fact,

4  it is terminated, there's federal insurance under the PBGC up

5  to $57,000, or if you have a multi-employer plan, even if an

6  employer withdraws, the beneficiaries themselves are

7  protected, here our members who participate at most are at or

8  below $19,000 a year.  Clearly there's no safety net.  These

9  issues are hard issues.  The collateral advantage to sending

10  this back to the state court for an appropriate decision is

11  that the conversations which we believe should have been

12  happening more robustly before the filing could happen now.

13  We respectfully -- we thank your Honor for the time, and we

14  appreciate your Honor's consideration.

15    THE COURT:  Thank you.  Sir.

16    MR. BENNETT:  Good morning, your Honor.  Ryan

17  Bennett of Kirkland & Ellis on behalf of Syncora Guarantee

18  and Syncora Capital Assurance.  Your Honor, as we attempted

19  to describe in our papers, my client insures, in some cases

20  owns certain securities called the certificates of

21  participation, which were taken out in 2006 to fund some of

22  the city's pension liabilities.  We also insure a swap --

23  four swaps related to those securities that are tied to the

24  interest rate, the floating interest rate associated with

25  them.

1    We object to the debtor's stay motions to the extent

2  they contain broad and unqualified language that we feel will

3  impair our client's rights against a number of nondebtor

4  third parties under our various transactional documents, as

5  your Honor could probably tell from --

6         THE COURT:  Can you identify some of those parties

7  for us?

8         MR. BENNETT:  Yes, your Honor.  So under the

9  transactional documents, which we attempted to describe in

10  the papers, there are parties called service corporations,

11  which are separate stand-alone entities with their own

12  directors to whom we believe they owe us fiduciary duties in

13  our role as stakeholders.  At very least they owe a duty to

14  the corporations themselves, and our rights are derivative

15  from them.  We also have swap counterparties who are parties

16  to a swap agreement and a swap insurance agreement where

17  we've got third-party beneficiary rights to those

18  arrangements, and the city is not even a party.

19         THE COURT:  Well, let me ask you this question --

20         MR. BENNETT:  Yes, sir.

21         THE COURT:  -- about those parties.

22         MR. BENNETT:  Um-hmm.

23         THE COURT:  To the extent the Court agrees with you

24  and then your client pursues those parties, to what extent,

25  if any, would your client's success on those claims impact

1   claims against the city?

2            MR. BENNETT:  Your Honor, that's unclear to us from

3   this vantage.  I mean we're still developing our litigation

4   strategy and our claim strategy, and --

5            THE COURT:  This is not a question of your strategy.

6   This assumes your strategy is successful.

7            MR. BENNETT:  Right.

8            THE COURT:  The question then remains, though, if

9   you are successful in your claims after being allowed to

10  pursue them --

11           MR. BENNETT:  Um-hmm.

12           THE COURT:  -- to what extent would that impact

13  claims against the city perhaps by those parties?

14           MR. BENNETT:  Um-hmm.  Yeah.  That's unclear to us.

15  I mean perhaps in the case of service corporation directors,

16  to the extent that there's an indemnity, as Ms. Lennox

17  pointed out -- I think that's where your Honor is going --

18  there may be an impact there, but, again, I haven't looked at

19  the ordinance.  I don't know if it applies to these

20  individuals, so I'm not sure, but that could be the case.

21           With respect to other parties, swap counterparties,

22  for example, I mean they're not party -- the debtor is not a

23  party to the swap agreement.  While there may be some ripple

24  effect down the road that I'm sure counsel may try to

25  explain -- debtor counsel may try to explain, I mean that's

1    unclear to us how we'd ultimately get there, sir.

2            THE COURT:  Okay.

3            MR. BENNETT:  Yeah.  As I said, you know, really

4    putting aside the procedural issue, which I do believe the

5    debtor failed to comply with, you know, your Honor did --

6    there was discourse from the bench to the podium in Collins &

7    Aikman where I believe my firm actually brought forward that

8    motion, and we agreed to drop it because we did not bring it

9    forward in the proper procedural way.  We think the city

10   should also be obligated to do that, particularly where in

11   circumstances like this with respect to our client, you

12   know -- and we just found this out, your Honor, when we got

13   handed this little handout at the start of the hearing that

14   it looks like they're trying to enjoin with -- you know, to

15   the same standards of a preliminary injunction the suit that

16   they brought against us prior to the petition date with

17   probably the same amount of notice that we got here today.

18   This suit, which is listed on here -- and, again, oddly

19   enough it's a suit brought by Detroit against us, not like

20   everybody else where they brought the suit against Detroit or

21   one of the extended defendants, you know, we're just not sure

22   what that means, and I'm sure they'll come and tell us, but,

23   in any event, we feel like we've not received notice of this,

24   and we're entitled to some process there to the extent

25   they're trying to impair our rights, which I'm sure they are.

 1          And, your Honor, that really sums it up from our

 2     point.  I mean largely our filing was a reservation of

 3     rights.  We wanted to make clear that to the extent this is

 4     trying to be used at some later point to prejudice my client

 5     in whatever strategies that we -- strategies we employ to

 6     exercise our property and contractual rights, we do not want

 7     to be impaired.

 8          One final point, your Honor, is that the city has

 9     filed that motion for the investment -- or the forbearance

10     agreement that your Honor posted up for a hearing on August

11     2nd.  We just wanted to get a little clarity from your Honor

12     because that does impact some rights of ours.

13          THE COURT:  I saw your motion, and I will enter an

14     order clarifying that for you later today or tomorrow.

15          MR. BENNETT:  Great.  Thank you, sir.  Nothing

16     further.

17          MS. PATEK:  Good morning, your Honor.  Barbara Patek

18     appearing on behalf of the public safety unions that are

19     comprised of the Detroit Fire Fighters Association, the

20     Detroit Police Command Officers Association, the Detroit

21     Police Lieutenants and Sergeants Association, and the Detroit

22     Police Officers Association.  We have filed a concurrence and

23     a limited objection in the two motions before the Court, and

24     I will address them serially.  With respect to the stay

25     motion, we agree that the stay applies, and we agree in

1  concept with the issuance of the stay order as requested by

2  the city.  We want to clarify -- and I believe the Court

3  asked the question of the city's counsel -- that that stays

4  all further proceedings in the state court action, including

5  the pending application for leave to appeal that has been

6  filed by the attorney general.  And I believe the city,

7  having submitted itself or consented to the application of

8  362 and 922, that the Sixth Circuit law on that issue should

9  control.

10         With respect to the extension of the stay, we concur

11  in that as well, and we have, in fact, asked for some

12  affirmative relief, and I want to at the outset of my

13  argument address the question raised by the Court with

14  respect to the preliminary injunction standard.  I think in

15  this case -- I mean there obviously is some flexibility in

16  Section 105 that the Court has, but if you look at those four

17  factors that govern preliminary injunctions, this is a case

18  where the public interest trumps all of them, and we, on

19  behalf of public safety unions, strongly believe that that --

20  that the public interest is at stake and that the stay

21  provided by this Court will give the parties the breathing

22  space to perhaps have that robust discussion that was

23  mentioned by -- in one of the earlier arguments.

24         We do want to make it clear that in concurring in

25  the relief requested, the public safety unions are not

1    conceding that the city is eligible to be a debtor in this

2    case.  We believe there are very, very serious constitutional

3    arguments on that issue as set forth in our papers.  We

4    simply believe that this Court is the proper forum because of

5    the intersection of state and federal constitutional law and

6    Bankruptcy Code issues, some of which are novel and

7    uncharted.

8              The other issue that we want to address with regard

9    to the stay extension deals -- there are three points.  One,

10   we're asking for the affirmative relief of broadening the

11   stay to include particularly the employees and retirees of

12   the public safety unions and some former employees who may be

13   the subject now or in the future of lawsuits and whose only

14   source of indemnification would be the city.

15             Second, we want it clarified because we do not

16   believe that anybody is giving up any claim by coming before

17   this Court that all claims against any nondebtor parties are

18   preserved and, third, that to the extent that those actions

19   are stayed, that the protections of 108(c) apply.  Those are

20   essentially the relief that we're requesting.

21             THE COURT:  Let me ask you to go back to number one

22   for a second.  You mentioned former employees, so there are

23   lawsuits against former employees for which the city might be

24   liable for indemnification?

25             MS. PATEK:  And to clarify, your Honor, I don't know

1 about -- I don't have a list of lawsuits, but I'm concerned

2 with the situation, and we're really tailoring this narrowly

3 to -- that the lawsuit relates to their employment by the

4 city and acting, you know, within the scope of their

5 employment with the city and --

6       THE COURT:  Well, is it your position that under the

7 ordinance that Ms. Lennox identified, former employees are

8 also entitled to indemnification?

9       MS. PATEK:  Your Honor, I'm going to be candid with

10 you.  As I have not seen that ordinance, I don't know the

11 answer to that question, and I'd be happy --

12       THE COURT:  All right.  Well, perhaps Ms. Lennox can

13 address that.  Thank you.

14       MS. PATEK:  Thank you, your Honor.

15       MR. GORDON:  Good morning, your Honor.  Robert

16 Gordon of Clark Hill on behalf of the Police and Fire

17 Retirement System and the General Retirement System of the

18 City of Detroit.

19       THE COURT:  Yes, sir.

20       MR. GORDON:  Thank you, your Honor.

21       THE COURT:  Your Honor, while many of the arguments

22 that have been made, particularly by counsel for AFSCME, are

23 positions that we have concurred in, the thrust of our papers

24 I think focuses on a slightly different issue to some extent,

25 and for purposes of this argument I'd like to focus on those

1   for your Honor.

2          It's our position that the stay motions presume

3   facts that are not in evidence.  There is a threshold issue

4   here under Section 109(c)(2) of the Bankruptcy Code that

5   needs to be dealt with first, 109(c)(2) requiring that in

6   order for a municipality to avail itself of the protections

7   of Chapter 9, it must have received valid state authorization

8   to do so.  The situation here I believe is unique.  I'm not

9   aware of any other case really on point.  We have a situation

10  where there is Michigan state constitutional protection for

11  accrued pension benefits.  We have in this state a statutory

12  framework in which the governor is required to provide the

13  authorization for the filing of a Chapter 9.  The governor is

14  also sworn to uphold the state constitution.  So our position

15  is, as we've indicated in our papers, that if the governor

16  cannot directly abrogate -- unilaterally abrogate

17  constitutional rights under Michigan's constitution, he also

18  respectfully cannot do indirectly what he cannot do directly,

19  so, in other words, he cannot authorize a Chapter 9

20  bankruptcy filing that has as an explicit stated goal, among

21  others, to impair and diminish accrued pension benefits which

22  are protected by the state constitution.  Since he doesn't

23  have that authority, the issue isn't one of whether there's

24  an action that's voidable here.  It is void, void ab initio,

25  and it is as if it never occurred.  So our argument is that

1   there isn't -- to talk about the stay and talk about the
2   Court's jurisdiction presumes that there has been a valid
3   state authorization, and there hasn't been any valid state
4   authorization.

5          Now, as to that issue, a state court has ruled on
6   that issue.  Judge Aquilina in the Ingham County Circuit
7   Court in the case of Webster v. Snyder ruled and issued a
8   declaratory judgment, not an injunction, a declaratory
9   judgment against the governor, who is a nondebtor party, and
10  at the time and as of today there is no stay and was no stay
11  against declaratory judgment against the governor, and the
12  Court entered a declaratory judgment ruling along the lines
13  of what I just argued and declaring that the governor did not
14  have authority to authorize this Chapter 9 bankruptcy filing.
15  To be clear, that matter has not been stayed by the Court of
16  Appeals.  The Court of Appeals stayed certain TRO orders that
17  have been entered by Judge Aquilina, but the declaratory
18  judgment is a final order that has not been stayed.  So the
19  question becomes where should the 109(c)(2) issue be
20  addressed, and we have submitted that it ought to be
21  addressed by the state courts because unlike the other
22  eligibility requirements under Section 109(c) for determining
23  whether a debtor is eligible to proceed under Chapter 9,
24  Section 109(c)(2) is specifically a creature of state law,
25  and the Bankruptcy Code and Chapter 9 evinces a deep and

```
 1   abiding respect for federalism and Tenth Amendment concerns,

 2   and in that light we think it is appropriate to allow the

 3   state judiciary, which is a co-equal partner of the executive

 4   branch and of the legislative branch in this state --

 5        THE COURT:  Okay.  So how do you deal with the

 6   city's argument that 28 U.S.C., Section 1334, gives this

 7   Court exclusive jurisdiction over the bankruptcy petition

 8   and, therefore, over the eligibility issues under Chapter 9?

 9        MR. GORDON:  Again, your Honor, our position would

10   be that it presumes something that is not in evidence here.

11   It presumes that there has been a valid petition filed, and

12   there simply has not been a valid petition.  That's our

13   argument.  Our argument as to supremacy clause --

14        THE COURT:  But Chapter 9 makes -- Chapter 9 makes

15   that issue an eligibility question, doesn't it?

16        MR. GORDON:  I guess it depends on how you look at

17   it, but from our point of view, if an action has been void ab

18   initio, it's a circular issue to some extent.  I understand

19   your point, your Honor.  It's a bit of a circular issue, but

20   from our position, we think that to assume in the first

21   instance that there's been valid action by the governor and

22   that this Court should determine it presumes something that

23   hasn't yet been established.  If, however, of course, this

24   Court feels that it has jurisdiction to address that issue,

25   we would submit that -- again, without waiving the argument
```

1    that this really should be addressed in the state court, we

2    would submit that the 109(c)(2) issue of whether there's been

3    valid state authorization is the first issue this Court

4    should address and not the stay motions and that that issue

5    ought to be addressed upon full briefing in the context of a

6    Section 921(c) motion to dismiss. I think that that comports

7    with the process.

8         THE COURT: Let's talk about that. What's the

9    prejudice to your client or the interest that your client

10   seeks to vindicate by having this issue resolved before any

11   other issue?

12        MR. GORDON: Having which issue resolved, your

13   Honor?

14        THE COURT: This issue of whether the governor

15   constitutionally authorized the filing. Why does your client

16   need that to be resolved before anything else?

17        MR. GORDON: Well, I think as a matter of just

18   jurisprudence to be proceeding with issues regarding a stay

19   when there's a fundamental issue of subject matter

20   jurisdiction, to me it would make sense to address the issue

21   of whether there is subject matter jurisdiction before we

22   proceed with all sorts of matters that may be of no effect.

23   They may be completely void, so I think that we --

24        THE COURT: Okay. So you're not representing to the

25   Court, for example -- and I don't mean to suggest this --

1  that your clients were intending to file a lawsuit against

2  the city to enforce this constitutional right imminently, are

3  you, or are you?

4      MR. GORDON:  I'm sorry.  Can you repeat the

5  question, your Honor?

6      THE COURT:  I asked you how your clients would be

7  prejudiced by dealing with this issue of the

8  constitutionality of this filing later in the context of

9  eligibility, and you talked about issues of jurisprudence,

10  just prudence, so I asked you are you, therefore, not

11  suggesting to the Court that your client had a lawsuit

12  against the city in mind to file imminently to enforce this

13  constitutional right, which would be stayed if the Court

14  granted the motion?

15      MR. GORDON:  Understood, your Honor.  No, we do not.

16      THE COURT:  Okay.

17      MR. GORDON:  No, we do not.  So, your Honor, again,

18  we think that this is a threshold issue that ought to be

19  dealt with not on the fourth business day of the case but

20  through a little bit more of a robust process if this Court

21  is inclined to --

22      THE COURT:  Well, let's talk about that even.  If

23  the Court grants this motion, it would be, wouldn't it,

24  without prejudice to your right to seek relief from the stay

25  and/or abstention?

1          MR. GORDON:  Yes, but, again, the question is

2   whether there's a stay at all because there's a question of

3   the validity of the ongoing bankruptcy, so --

4          THE COURT:  Well, but if those rights are preserved,

5   the prejudice of which you speak is reduced, not eliminated,

6   but reduced.

7          MR. GORDON:  Possibly, although abstention is not

8   as -- certainly is not the same argument, of course.

9          THE COURT:  But I'm just asking.

10          MR. GORDON:  Yes.

11          THE COURT:  Yes.

12          MR. GORDON:  I understand.  Your Honor, so that is

13   our position on that.  As far as the actual request for stay

14   relief, our papers speak for themselves to a great extent.  I

15   won't repeat what's been said here.  I would say this,

16   though.  As to the stay confirmation order, I think it ought

17   be explicit that if all they're asking -- all the city is

18   asking for is confirmation, then it should be clear that it's

19   not expanding anything.  If it's just the confirmation, then

20   we don't object to it because they're not doing -- by

21   claiming that they're confirming the stay, they're stating

22   that they are not expanding and exceeding the --

23          THE COURT:  Right.

24          MR. GORDON:  -- scope of the Bankruptcy Code --

25          THE COURT:  Okay.

1     MR. GORDON: -- so that would be our comment on
2  that. As far as the request to extend the stay, you know,
3  again, on day four it's very unclear to know how far they're
4  intending to stay this. There has been no discussion between
5  the parties. I've now heard from another counsel, who just
6  preceded me, that she would like to see the stay extended to
7  other people as well. Again, I would submit that there ought
8  to be an opportunity to discuss that. The argument has been
9  made that an adversary proceeding is necessary to enforce a
10  105 stay. The arguments that say that a 105 -- that you
11  don't need to have an adversary proceeding, that form should
12  not rule over substance, we understand those arguments, but
13  nothing should overrule due process, and I think it's really
14  an issue of due process. We don't know the contours of
15  really at the end of the day -- the papers are not clear as
16  to what the contours are, what they're seeking to extend to,
17  and, quite frankly, they haven't -- the papers do not
18  establish unusual circumstances here. The Eagle-Picher case
19  is inapposite to what is at issue here. All that's been
20  alleged is a sort of murky mere closeness of relationship
21  between the governor and the city, which we submit is
22  insufficient. The declaratory judgment that was entered by
23  Judge Aquilina has not been stayed, but this motion for stay
24  extension is seeking to do just that, and to stay a
25  declaratory judgment is really to essentially eviscerate the

1    declaratory judgment.  There's no action to be taken, so to
2    stay it is to basically vacate it.  We submit that that's not
3    appropriate under the circumstances here.  And we've raised
4    issues about Rooker-Feldman and so forth, and, again, we
5    would submit that if the Court were going to discuss the
6    extension of the stay, it should not extend to affect the
7    rights of parties relative to the declaratory judgment and
8    its winding its way through the state court system.

9          THE COURT:  Thank you, sir.

10         MR. GORDON:  Thank you, your Honor.

11         MS. CECCOTTI:  Good morning, Judge Rhodes.  Babette
12   Ceccotti, Cohen, Weiss & Simon, LLP, for the UAW, and with me
13   is Mr. Wertheimer, counsel to the Flowers plaintiffs.  As
14   your Honor is hopefully aware, the Flowers plaintiffs and the
15   UAW filed a joint objection, and Mr. Wertheimer is here in
16   case the Court has any questions regarding the Flowers
17   lawsuit, and I will state the objection of the UAW from the
18   U -- representing the UAW.  Excuse me, your Honor.

19         As is evident from our objection, we have largely
20   joined -- in the interest of brevity and not overwhelming the
21   Court with duplicative papers, we have largely joined in the
22   arguments already briefed and addressed by Ms. Levine on
23   behalf of AFSCME.  I do have a couple of other points that I
24   would like to make but, in particular, perhaps revisit some
25   of the ground already covered in part by other counsel in

1  response to Ms. Lennox's presentation on a couple of matters

2  that I found quite extraordinary and think that it is worth

3  focusing on again.

4  First, the notion that this Court could permanently,

5  permanently stay the state court lawsuits is I would submit

6  well beyond any power of this Court under 105 or 362 or any

7  other ground being suggested to you by the city.  These are

8  not -- as Ms. Levine stated, we're not here about an

9  implementation tool to keep others from diverting the city's

10 attention and running around and trying to collect on claims.

11 As you've heard this morning already, the issues raised by

12 the state -- by the state court lawsuits go to -- they not

13 only go to the eligibility of the city to file, they -- it

14 is -- it's actually -- it's more fundamental than that.

15 These are issues that arise under state law.

16 Chapter 9, of course, reflects dual sovereignty and

17 in part reflects that most significantly in the eligibility

18 criteria, which requires that the municipality be authorized

19 under state law or by a governmental officer.  The key here

20 is under state law.  The pre-petition lawsuits address the

21 state law issues as to whether the state law bases under

22 which the governor issued his authorization for the filing

23 violate the Michigan state constitution to the extent that

24 the authorization does not except out the pension benefits.

25 These are totally state court issues.  So if we look at 1334,

1  just to take that point, while this Court may have original

2  and exclusive jurisdiction of all cases under Title 11, the

3  use of the word "cases" must be read specific to the case

4  that we have, and the case that we have here is a Chapter 9

5  case with all of the dual sovereignty attributes of that,

6  including the eligibility criteria, which fundamentally are

7  grounded on an authorization under state law, so I do not

8  believe that 1334(a) can be read to simply write out of the

9  statute the unique character, if you will, of Chapter 9 vis-

10 a-vis the other chapters of the Bankruptcy Code, which is so

11 dependent on the state court authorization to --

12      THE COURT:  So is it your argument that this Court

13 doesn't have the jurisdiction to decide this constitutional

14 issue or that it is concurrent?

15      MS. CECCOTTI:  Your Honor, I was getting to that

16 when I was going to move on to 1334(b).

17      THE COURT:  Okay.

18      MS. CECCOTTI:  To the extent that anybody would

19 argue or perhaps decide or say that the eligibility features

20 and the ability to file a motion to dismiss based on those

21 features would be a proceeding under a case, then 1334(b)

22 makes clear that the District Courts have original but not

23 exclusive jurisdiction on those questions so that while this

24 Court arguably would have jurisdiction in the context of a

25 motion under 109(c), it is not exclusive, and the state -- to

1   the extent the issue of the state's authorization and whether

2   that authorization should have excepted the pensions

3   consistent with or under -- directly covered under -- the

4   prohibition under the Michigan state constitution, at a

5   minimum, if we're talking about a proceeding, the state

6   courts -- the state courts and this Court would both consider

7   that issue, and now here we do get into important and serious

8   questions of federalism and abstention.  The state courts

9   already have the authorization issue teed up in the three

10  lawsuits in slightly different fashions, but the gravamen of

11  all of them, if you boil it down, is the scope of the

12  authorization issued by the governor and whether the failure

13  to except the pensions -- the accrued pensions from the

14  authorization to use Chapter 9 violated the state

15  constitution.  Therefore, the Court's prudential or juris --

16  the Court's prudential or discretion perhaps to take that

17  issue up would be guided, as it is in other matters where a

18  party comes in to lift the stay to have a state court proceed

19  with a lawsuit perhaps of the type that Ms. Levine mentioned,

20  perhaps a pre-petition state lawsuit having to do with a

21  particular piece of property or a lien, those issues all come

22  into play and, in fact, weighing the factors that apply in

23  those cases, it is not always the case that the Bankruptcy

24  Court keeps those matters.  It depends on the issues.  It

25  depends on five or six or seven factors, depending on which

1    court you're in.

2          THE COURT:  Okay.  Well, let's focus on this issue

3    and ask whether there are any cases that have addressed the

4    argument that you make that this specific element of

5    eligibility should be resolved in the state court rather than

6    in the Bankruptcy Court.

7          MS. CECCOTTI:  Your Honor, I cannot standing here

8    today cite to a case, but I'm very confident that there are

9    such cases, perhaps not in the -- necessarily in the Chapter

10   9 context given the relative paucity of jurisprudence under

11   Chapter 9, but there are myriad cases that have arisen, for

12   example, under Chapter 11 where by balancing the various

13   factors, including the importance of respecting federalism

14   and noninterference with the state court's ability to

15   determine matters under their own laws --

16         THE COURT:  Well, but isn't it the case that every

17   Chapter 9 case which has been dismissed for lack of proper

18   authorization -- and there have been a few -- have been

19   dismissed by the Bankruptcy Court based on the Bankruptcy

20   Court's determination of authorization.

21         MS. CECCOTTI:  That's correct, but how many of those

22   cases -- and we'd have to look, but I'm going to place a

23   small bet here and say none, involved --

24         THE COURT:  We don't permit that here.

25         MS. CECCOTTI:  -- three lawsuits, three lawsuits

1   filed on -- against slightly different but all -- but

2   theories that -- the gravamen of which are the same?  So in

3   those cases, I'm not sure they're instructive because they

4   wouldn't say -- they wouldn't tell us that the Bankruptcy

5   Court versus those prefiling lawsuits was the only -- the

6   appropriate --

7           THE COURT:  Well, but to what extent is --

8           MS. CECCOTTI:  -- or certainly not the only place.

9           THE COURT:  To what extent is your argument -- would

10   your argument be diminished if there weren't such lawsuits,

11   if the --

12           MS. CECCOTTI:  I think -- I think --

13           THE COURT:  -- individuals here simply requested

14   this Court to permit the state court --

15           MS. CECCOTTI:  Your Honor, the essence of the

16   objection is, in fact, that these lawsuits exist and what

17   they are based in.  If the lawsuits did not exist, we would

18   have a different argument before you today.

19           THE COURT:  Okay.

20           MS. CECCOTTI:  But they do exist, and the fact that

21   they exist we think is simply -- must be the primary

22   consideration by this Court in determining the relief and we

23   respectfully submit denying the relief requested by the city.

24           I would like to make two other points, one of which

25   I regret we didn't raise in our papers, but it struck me

1 reading -- when I listened to Ms. Lennox this morning

2 articulate for the Court the relief that they are seeking

3 with respect to matters that haven't been lodged as lawsuits.

4 I believe she read that the -- paragraph 20 of her papers in

5 looking for prospective relief or -- against entity -- people

6 or entities that might become targets. I did notice that the

7 proposed form of order merely states that the motion is

8 granted, and I would submit to the Court that if any type of

9 injunction is issued -- and we strongly urge the Court not to

10 grant the motion, but to any extent any -- the Court deems

11 any type of stay possible, any such relief should provide

12 fair notice to parties who have not yet done anything as to

13 the conduct that is potentially going to be covered by the

14 order, and we submit that, at least based on the filings

15 here, your Honor does not have sufficiently specific language

16 to issue such an order.

17        Finally, the proposed relief is overly broad even

18 with respect to the pre-petition lawsuits to the extent that

19 they ask this Court to simply rule that those lawsuits are

20 stayed. I wish to -- we do want to point out to the Court

21 that the lawsuits -- the _Flowers_ lawsuit certainly and

22 perhaps some of the others have named the State of Michigan

23 as defendants. We don't understand the city's request for

24 relief in terms of a stay extension to extend to the State of

25 Michigan; therefore, the stay -- a stay is not -- has not

1   been -- such a stay has not appropriately been sought and if

2   the Court again were to grant a stay, that, again, the relief

3   is --

4           THE COURT:  Let's assume there --

5           MS. CECCOTTI:  -- would be overly broad.

6           THE COURT:  Let's assume there's no order staying a

7   lawsuit against the state.  What does that do for your

8   clients?

9           MS. CECCOTTI:  The State of Michigan is a defendant,

10   and --

11           THE COURT:  What relief can the Court order against

12   the state that would help your clients?

13           MS. CECCOTTI:  To permit -- the lawsuits would be

14   able to proceed against the state.

15           THE COURT:  Right, but what ultimate relief could

16   the state court grant against the state that would help your

17   clients?

18           MS. CECCOTTI:  There I would need to ask the counsel

19   for the Flowers plaintiffs --

20           THE COURT:  Okay.  Okay.

21           MS. CECCOTTI:  -- if you don't mind, just because my

22   familiarity is not primarily with those cases.

23           THE COURT:  No, not at all.

24           MS. CECCOTTI:  Those were my points, your Honor.

25           THE COURT:  Thank you.  Would you like to try to

1   address that for me, sir?

2         MR. WERTHEIMER:  Yes, your Honor.  William

3   Wertheimer, your Honor, appearing on behalf of the Flowers

4   plaintiffs.  In answer to that last question, first of all,

5   it is correct that the Flowers case, the state is a defendant

6   as an entity, and the same is true of the Webster and the

7   pension systems case.  All three cases seek declaratory

8   judgments, and a declaratory judgment can issue against the

9   state because --

10        THE COURT:  Right.  But what does that do --

11        MR. WERTHEIMER:  -- it's a declaratory judgment --

12        THE COURT:  What does that do for your clients?

13        MR. WERTHEIMER:  It depends upon what effect that

14   judgment would have with this Court as a practical matter.

15        THE COURT:  Oh, so you're thinking it may have some

16   res judicata or Rooker-Feldman effect?

17        MR. WERTHEIMER:  Well, you know, your Honor, your

18   Honor, our basic point is that this is a state law issue that

19   we brought to the state courts before this proceeding was

20   brought in good faith attempting to get an order and a ruling

21   from the state courts, and we would want to continue to do

22   that, and we think we can do that even under the motion they

23   filed, if it's granted, given the fact that the state as an

24   entity remains as a defendant in the three cases.

25        THE COURT:  All right.  Thank you.

1        MR. WERTHEIMER:  I would also reiterate that -- a

2  point previously made, that the stays that were issued

3  yesterday by the Court of Appeals did not cover at all the

4  declaratory judgment, which was a final judgment, which

5  entered in the <u>Webster</u> case as --

6        THE COURT:  Someone mentioned that.

7        MR. WERTHEIMER:  The state has not yet taken an

8  appeal, but the activities at the Court of Appeals all have

9  to do with the applications for leave of the nonfinal orders.

10       THE COURT:  Thank you for clarifying that, sir.

11       MR. WERTHEIMER:  Yes, your Honor.  I have one point.

12  We filed yesterday a brief along with a declaration from me,

13  and that declaration dealt principally with one issue, and

14  that is the debtor in its initial pleadings and in its motion

15  specifically indicated that the orders issued in state court

16  were -- all three orders were ex parte, and that is

17  consistent with the debtor's statements today talking about

18  target, et cetera.  In other words, we're the bad guys out

19  there as they would characterize the bad guys in a typical

20  Chapter 11 case.  We are not the bad guys.  We did not do

21  anything ex parte.

22       THE COURT:  I have to -- I have to stop you.  I

23  didn't read anything in the city's papers that suggested your

24  clients were the bad guys.

25       MR. WERTHEIMER:  Well, they -- your Honor, the

1   city's papers stated that in all three cases we obtained ex

2   parte injunctive relief.  In none of those three cases did we

3   obtain ex parte injunctive relief.  In fact, we gave the

4   state and its officers notice of everything we did, and the

5   matter was fully briefed.  Nothing happened ex parte.  Let me

6   leave it at that.

7           THE COURT:  Okay.

8           MR. WERTHEIMER:  And, finally, consistent with that,

9   in my declaration I indicated that I was attaching the

10  transcript from the proceedings of July 18.  I neglected to

11  do that electronically.  We provided copies to everybody last

12  night by e-mail.  We will make sure that that's also done

13  electronically, and I'd like to, if I may, approach the bench

14  and provide a copy to the Court.

15          THE COURT:  Yes, sir.  That's fine.  Thank you.

16          THE CLERK:  Thank you.

17          MR. WERTHEIMER:  That's all I have, your Honor.

18  Thank you.

19          THE COURT:  Thank you.  And before we proceed with

20  the city's rebuttal, I'd like to ask if there's anyone in the

21  courtroom who would also like to address the Court.  And

22  briefly, please, sir.

23          MR. BRENT:  Good morning, your Honor.  My name is

24  Nathaniel Brent.  I represent myself pro se in a current

25  lawsuit against the City of Detroit in this Eastern District

1   of Michigan in front of Julian Cook.  One thing that I'm

2   surprised at with all of these learned attorneys here is

3   nobody has mentioned the issue of this declaratory judgment

4   actually collaterally estops the City of Detroit from

5   relitigating the issue of whether they had authority to even

6   file this petition.

7          THE COURT:  Actually, that is mentioned in the

8   briefs.  It's more than mentioned.  It's argued forcefully in

9   the briefs.

10        MR. BRENT:  That's not my primary argument here,

11   your Honor.  My primary argument is regarding the stay that's

12   been in place and the extensions they're seeking to grant a

13   blanket stay for any Detroit employee, present or --

14        THE COURT:  Let me ask you what is your claim and

15   who is it against?

16        MR. BRENT:  My claim is against the City of Detroit

17   police officers and two police officers in both their

18   individual and official capacity for violations of my Fourth

19   Amendment rights.  The issue here, your Honor, is this case

20   has been pending for the last two and a half years.

21        THE COURT:  Um-hmm.

22        MR. BRENT:  And now that the stay is in effect and

23   they're trying to extend this even further, the issue

24   cannot -- of liability cannot even be litigated in order to

25   bring it in front of this Court.

1       THE COURT:  Um-hmm.

2       MR. BRENT:  Granted, as for the execution of any

3   orders to enforce any judgment entered would clearly be

4   within the jurisdiction of this Court.  I don't contest that

5   at all.  The issue of whether or not they are liable and

6   committed the violations of the Fourth Amendment, those are

7   issues that should be allowed to be continued to be

8   litigated.

9       THE COURT:  Um-hmm.

10      MR. BRENT:  On that issue, even if an award is

11  granted, it would not be part of the reorganization of the

12  City of Detroit in the first place.  The City of Detroit's

13  charter -- in Chapter 9 of the City of Detroit's charter they

14  have what is called a risk management fund, which is a

15  dedicated fund which is required to have a minimum of $20

16  million in it to pay for civil lawsuits and workmen

17  compensation claims.  This isn't part of the reorganization.

18  This is going to exist regardless.

19      As for their claim regarding the indemnifying

20  employees under Chapter 13-11-1, that gives the City of

21  Detroit the option to indemnify.  It does not require that

22  they indemnify these employees.

23      THE COURT:  Um-hmm.

24      MR. BRENT:  And, now, in my present case, City

25  Council did vote to elect to indemnify the employees.

1          THE COURT:  Um-hmm.

2          MR. BRENT:  However, this is the city's option.

3    This isn't a requirement of law that they indemnify these --

4          THE COURT:  Um-hmm.

5          MR. BRENT:  -- just as -- my lawsuit is also against

6    various state actors within the State of Michigan, which --

7    but, again, their wanting to extend this to them would

8    prevent me from litigating my claims against the state

9    officials that have already been denied immunity, and it is

10   currently pending.  Those portions they've appealed to the

11   Circuit Court.  So now that they're trying to extend this

12   stay, now the Sixth Circuit Court of Appeals case of Brent

13   versus Wayne County, et al. will be stayed as well where the

14   different state defendants -- state employees have uphill

15   decision to deny their qualified and absolute immunity.

16         THE COURT:  The defendants in your particular suit

17   are both city employees and other defendants are state

18   employees?

19         MR. BRENT:  Yes, and there's also state contractors

20   involved in the lawsuit.

21         THE COURT:  Contractors also.  Thank you, sir.

22   Would anyone else like to be heard?

23         MR. SANDERS:  Good morning, your Honor.  My name is

24   Herb Sanders, and I represent the plaintiffs in the case of

25   Phillips versus Snyder pending before this Court, Case Number

1   2:13-CV-11370, before Judge Steeh.  That is a case that

2   challenges the constitutionality of PA 436.  Motions for

3   summary -- for at least one summary disposition or summary

4   judgment argument have been scheduled.  As I initially read

5   the request for stay extension motion filed by the city, it

6   appeared that the city was seeking an extension of stay

7   concerning financial matters that were being litigated, but

8   pursuant to the oral presentation of the city's attorney, it

9   concerns me when she has indicated -- and I paraphrase --

10  that she seeks relief concerning any litigation that might

11  interfere with the city's rights as a Chapter 9 debtor.  And

12  I would suggest to the Court to the extent that it might be

13  proposed or suggested that the litigation which I have

14  referenced in which the constitutionality of PA 436 is to be

15  determined by another judge in this court interferes with the

16  rights of the city as a Chapter 9 debtor, that that case not

17  be included as part of the stay order that this Court would

18  issue.  I believe it's imperative to this community, to this

19  state that those issues be determined and, in fact, should

20  probably be determined before the bankruptcy proceeds, but I

21  would encourage the Court to not give a broad order if any

22  order were to issue that would be inclusive of matters that

23  are not financial matters such as there are other matters

24  that I know that the union, AFSCME, and others are a part of

25  seeking FOIA requests from the city, injunctive relief as it

1  relates to these types of matters, and I would ask the Court

2  to consider not giving such a broad order --

3          THE COURT:  Um-hmm.

4          MR. SANDERS:  -- that that type of information could

5  not be obtained and we could not have a determination as to

6  the constitutionality of PA 436 by this Court.

7          THE COURT:  Um-hmm.

8          MR. SANDERS:  Thank you, your Honor.

9          THE COURT:  Thank you.  Sir, can you just give me

10  your name again, please?

11          MR. SANDERS:  Herb Sanders.

12          THE COURT:  Mr. Sanders.  Thank you, sir.

13          MR. SCHNEIDER:  May it please the Court, Matthew

14  Schneider, chief legal counsel to the Attorney General.  I'm

15  here on behalf of the State of Michigan.  Your Honor, I'm

16  here for a very, very limited purpose.  As counsel to the

17  debtor has indicated, they are not seeking to abrogate the

18  exceptions in Section 362(b), and I know that this is a

19  motion regarding Section 362, so our position is is that if

20  the Court is, indeed, inclined to grant the motion regarding

21  the stay, that the Court's order reflect that nothing in the

22  Court -- nothing what the Court is doing will actually

23  abrogate the exceptions afforded under 362(b).

24          THE COURT:  Is there a specific exception you're

25  concerned about?

1      MR. SCHNEIDER:  Well, your Honor, the state has a

2  great interest in ensuring that our departments and agencies

3  can continue their administrative functions, which is really

4  not unusual, and we just want to be sure that that's the

5  case, and that's all I have, your Honor.

6      THE COURT:  Well, but which provision in Section

7  362(b) --

8      MR. SCHNEIDER:  It's subsection (4).

9      THE COURT:  -- is implicated?  Oh, (4).  Okay.

10     MR. SCHNEIDER:  Subsection (4) --

11     THE COURT:  Of course.

12     MR. SCHNEIDER:  -- which indicates that, you know,

13  commencement or continuation of an action or proceeding by a

14  governmental unit isn't going to -- isn't going to impair a

15  governmental unit to have its regulatory power in --

16     THE COURT:  It's the police powers exception.

17     MR. SCHNEIDER:  Correct.

18     THE COURT:  Thank you, sir.

19     MR. SCHNEIDER:  Thank you.

20     THE COURT:  Would anyone else like to be heard?  All

21  right.  Ms. Lennox.

22     MS. LENNOX:  Thank you, your Honor.

23     THE COURT:  And by the way, my very efficient staff

24  provided me by computer here a copy of the ordinance.

25     MS. LENNOX:  Oh, thank you, your Honor.  I have one,

1  too, so that --

2          THE COURT:  I'm all set.

3          MS. LENNOX:  Great.

4          THE COURT:  And it does raise a question.  The

5  language appears to be discretionary as concerns indemnity.

6  Yes?

7          MS. LENNOX:  It is discretionary, but it's the

8  city's policy that if the employee is performing its duties

9  in good faith in the scope of its employment that indemnity

10  will issue, and that discretion now is the discretion of the

11  emergency managers, your Honor, which I would point out I was

12  very --

13          THE COURT:  Well, what impact does the fact that

14  it's discretionary rather than mandatory have on your

15  argument that the stay should be extended to employees who

16  might not otherwise be covered?

17          MS. LENNOX:  I think, your Honor, it doesn't have

18  much of an impact at all because, as I said, it's a matter of

19  city policy that if the employee was performing his or her

20  duties in good faith and the conduct that gave rise to the

21  action occurred in the performance of those duties, then the

22  indemnity will issue.

23          THE COURT:  Is that a policy in writing that we can

24  refer to, or is it just a matter of --

25          MS. LENNOX:  I would have --

1          THE COURT:  -- this is what the city always does?

2          MS. LENNOX:  I would have -- I would have to check

3    with corporation counsel on that, your Honor, but regardless,

4    the extension should certainly apply to the employees for

5    whom the city has agreed to indemnify for the reasons that I

6    stated earlier.

7          I would like, your Honor, just at the outset -- I

8    was very remiss because we didn't make opening statements to

9    neglect to introduce to you the emergency manager, who is

10   here in the courtroom today.  Mr. Orr is here.  Obviously he

11   has a great interest in these proceedings.  Okay.  Thank you,

12   your Honor.

13         Perhaps a couple of housekeeping matters before I

14   get into argument.  First, your Honor, I do have a copy of

15   the order that was issued by the Court of Appeals in the

16   State of Michigan in the Webster case in which the

17   declaratory judgment was entered, and perhaps that order --

18   the declaratory judgment has been appealed, and perhaps we

19   were misreading the order, but the order does say that the

20   motion for stay pending appeal is granted, and the Circuit

21   Court's July 18th, 2013, temporary restraining order and all

22   further proceedings are stayed, so that's where we got that

23   understanding, your Honor.  I have a copy if your Honor would

24   like to see it.

25         THE COURT:  Please.

1    MS. LENNOX:  May I approach?

2    THE COURT:  Yes.

3    MR. CANZANO:  Judge, I know it's a little bit

4  unorthodox here, but I --

5    THE COURT:  I have to ask you to stand by the

6  microphone because of the limitations of our equipment here,

7  sir.  Sir, actually this microphone, and my apologies to you

8  for that inconvenience.

9    MR. CANZANO:  I'm the attorney that got the

10  declaratory judgment, John Canzano, representing the --

11    THE COURT:  Canzano?

12    MR. CANZANO:  -- Webster plaintiffs.  I can speak

13  very briefly to why the declaratory judgment is not stayed.

14    THE COURT:  Okay.  Let me ask you --

15    MR. CANZANO:  There's four appeals.

16    THE COURT:  Let me ask you -- let me ask you to do

17  that after Ms. Lennox speaks.

18    MS. LENNOX:  As another housekeeping matter, your

19  Honor, I believe when Mr. Bennett was speaking, he indicated

20  that his firm in the Collins & Aikman case had filed a motion

21  to extend the stay but then they withdrew it because it was

22  procedurally improper.  Respectfully, I would beg to differ.

23  I have the transcript of that motion.  That motion was heard.

24  It was argued before your Honor, and it was denied.  If your

25  Honor would care to see the transcript, I do have it with me.

1          THE COURT:  No, thanks.

2          MS. LENNOX:  Thank you.  In our colloquy, your

3     Honor, as an initial matter, you had asked what if the

4     preliminary injunction standards applied, and, as I

5     indicated, if you're going to apply preliminary injunctions,

6     you sort of have to have a matter to --

7          THE COURT:  That wasn't exactly my question.  My

8     question was how do you deal with the argument that they

9     should apply?

10          MS. LENNOX:  I think, your Honor, under the Section

11     105 extension case law that exists out there where you extend

12     by motion, the courts have created a standard that is

13     different than the preliminary injunction four-part standard,

14     and, in fact, in cases in which this is presented by motion,

15     the preliminary injunction standards aren't even discussed,

16     and that standard is the standard that I --

17          THE COURT:  Well, but didn't Eagle-Picher address

18     them?

19          MS. LENNOX:  Eagle-Picher was brought by a

20     preliminary injunction.  That was a preliminary injunction

21     case.  It noted in dicta that many courts permit extensions

22     of the stay by motion, but that particular case they had

23     brought by preliminary injunction, so, therefore, they went

24     through the standards.  If we had to go through the standards

25     here, I think we meet them, and if your Honor is interested,

1   I can articulate that for you.

2           THE COURT:  Go ahead.

3           MS. LENNOX:  But in any event, I don't think we need

4   to go through them under the circumstances, but if we had to

5   meet the preliminary injunction standards, I believe that

6   there would be -- at least with respect to the three lawsuits

7   that we have out there, I think there would be a great chance

8   of success on the merits because by the plaintiffs attempting

9   to condition the authorization to file a municipal bankruptcy

10  on that municipal -- that municipality's foregoing rights

11  under Chapter 9 once in Chapter 9 is a violation of the

12  bankruptcy clause and the supremacy clause.  I think we'd win

13  on that, your Honor.

14          Secondly, with respect to irreparable harm, if these

15  actions are not stopped, the city would be irreparably

16  harmed.  We would be preventing -- we would be prevented from

17  accessing necessary protections that we are otherwise wholly

18  entitled to access under Chapter 9 and under applicable law,

19  and it would be harmed by our inability to have the

20  appropriate forum, this forum, to decide the matter because

21  the matter presents federal issues for federal jurisdiction.

22  The issues that are presented have to do with can the

23  authorization be conditioned upon limiting a municipality's

24  rights in Chapter 9.  That clearly and squarely presents

25  federal issues of this Court's jurisdiction that can only be

1  decided by this Court under the supremacy and the bankruptcy

2  clauses, so without -- an inability for us to pursue that

3  would be irreparable harm to the city.  A state court simply

4  does not have jurisdiction to decide those.

5        Third, your Honor, the injunction, if one would call

6  this an injunction, is not going to harm others because, as

7  your Honor pointed out, they do have a forum, indeed the only

8  appropriate forum, in which to decide the issues that can

9  arise only in a bankruptcy case, issues like eligibility,

10  contract rejections, what should go in a plan of adjustment,

11  all of which are addressed by the three lawsuits that are

12  filed.  As your Honor pointed out, these litigants will have

13  due process.  They will have their day in court.  They will

14  have these issues decided, but they will have them decided in

15  the tribunal with proper jurisdiction.

16        And then fourth, your Honor, public policy clearly

17  favors the resolution of issues that exist only under the

18  Bankruptcy Code in the Bankruptcy Courts.  Any attempts to

19  have courts that are not of competent jurisdiction determine

20  these issues actually, your Honor, would offend public

21  policy, so while I don't think that we need to go through the

22  preliminary injunction standards in this case and by virtue

23  of the relief that we asked for, if we had to, we would meet

24  them.

25        Now, your Honor, I think I would like to, if it

1    please the Court, address sort of collectively the arguments

2    that were made about should the state courts determine this

3    or should the federal courts determine this, and

4    ultimately -- certainly at least what Ms. Levine was arguing

5    down to, they're arguing the merits of eligibility, and, as

6    your Honor pointed out, that's not before the Court today.

7    Nothing prevents -- as your Honor also pointed out, nothing

8    prevents anybody from seeking to lift the stay in any

9    particular case in any particular matter, and that's a

10   question that can be addressed to this Court.

11          More particularly -- and I'd like to go into this in

12   some detail -- the Court has jurisdiction to hear and

13   consider state court matters in this court.  Since the days

14   of Erie versus Tompkins back in 1938, federal courts have

15   applied state law when required to to determine the matters

16   before them.  It's very clear that now that this case is

17   filed, this Court -- under Section 921 of the Bankruptcy Code

18   and under its jurisdiction granted by 28 U.S.C. 1334(a) and

19   (b), this Court is the only court that is authorized to

20   determine eligibility issues.  As part of the eligibility

21   issues, Section 109(c)(2) necessitates the interpretation of

22   state law, and Bankruptcy Courts have done that in virtually

23   every Chapter 9 case that has been filed.  In Jefferson

24   County they went through the Alabama statutes for authorizing

25   the case.  In the New York City Off-Track Betting Corp. in

1  New York in 2010, the Bankruptcy Court found that the

2  governor had adequate power under the state constitution to

3  issue the order authorizing the filing.  In the Suffolk

4  County Regional Off-Track Betting Corporation case, an

5  Eastern District of New York in 2011, the Court, interpreting

6  state law, found that the debtor did not comply because the

7  county resolution violated the -- Suffolk's County's

8  authority and was unconstitutional and dismissed the

9  petition.  In the Barnwell County Hospital case in the

10  District of South Carolina in 2012, they examined state law

11  to determine whether the County Hospital Board had

12  authorization to file Chapter 9, and they determined -- they

13  did the inquiry as to whether the authorization was void in

14  light of the state constitutional prohibition against dual

15  office holding, and they concluded it was not.  That case,

16  along with other cases, absolutely involved an interpretation

17  of state constitutional issues.

18          So given that the Bankruptcy Court's authority

19  includes the authority to decide state law issues when

20  required in exercising its jurisdiction under the Bankruptcy

21  Code and it is competent to do so, there is absolutely no

22  reason to disrupt the efficient resolution of this bankruptcy

23  case by having the state court cases go forward.

24          Your Honor, if you look at PA 436, Section 18.1,

25  nothing in that authorization statute mentions pensions.  It

1    simply mentions a process by which the city had to go through

2    to -- for the governor to make a determination whether we

3    were authorized to file nor, if your Honor would read it, is

4    anything in the governor's authorization letter conditioning

5    the filing on taking any action, not taking any action, or it

6    does not even mention what might happen to pensions in this

7    case, so this Court clearly has jurisdiction to determine the

8    state constitutionality issues.

9         On the other hand and respectfully, the state courts

10   have no jurisdiction to determine the issues of authorization

11   or eligibility under Section 109(c)(2) of the Bankruptcy

12   Code.  They have no jurisdiction to determine whether this

13   city had the right to file this case or, more importantly,

14   the rights that this city can exercise now that it is in

15   bankruptcy, and that, your Honor, is exactly what the

16   plaintiffs seek to do in their constitutionality challenges

17   in the three actions that are pending in state court.  This

18   is not a secondary jurisdiction matter.  This is a matter of

19   primary jurisdiction under Section 1334(a), (b), and Section

20   921 of the Bankruptcy Code for this Court.  This is the only

21   Court competent to make those determinations.

22        Mr. Gordon suggested that we don't need to decide

23   the stay issues today because the -- because we should wait

24   to determine eligibility first.  First of all, I would say

25   that there's no prejudice to pensioners in this case because

1  pensions are continuing to be paid.  There's no change to

2  that, so the delay shouldn't be a factor.  Secondly,

3  eligibility has nothing to do with the fact that the

4  automatic stay is in effect.  It arose by operation of law on

5  the day that we filed the petition on July 18th, and it is in

6  effect.  The only motions before this Court today have to do

7  with that stay that's already in effect, so there's nothing

8  improper about determining those matters today.

9       It has been suggested that Judge Aquilina's

10  declaratory judgment in the Webster case -- remember, your

11  Honor, the Webster case is the case in which the city is not

12  named.  The city is not a defendant.  It is a case only

13  against the governor and the state treasurer, so the city is

14  not a party.  The city didn't litigate any of the issues.

15  Collateral estoppel, therefore, cannot apply to the city in

16  the declaratory judgment in the Webster case.  We're not

17  bound by that.  Moreover, I would suggest to your Honor that

18  that is one trial court's view -- trial court's view -- that

19  was issued without briefing, without argument, without

20  reasoning, and in haste.  That decision is not even binding

21  on any other trial court in the State of Michigan let alone

22  any courts of higher jurisdiction, and it is certainly not

23  binding on this Court.

24       One other procedural issue that I would like to

25  point out that Mr. Gordon and none of the other objectors did

1    point out, but it is noted on the summary sheet that I
2    gave -- the demonstrative that I gave to your Honor earlier
3    today.  The pension funding case, the GRS and PFRS case that
4    Mr. Gordon's firm -- in which Mr. Gordon's firm represents
5    the plaintiffs, has been removed to federal court.  The city
6    removed it because that is the one case in which the city is
7    the defendant.  That case was removed to federal court on
8    July 21st, and so it was removed to the Western District of
9    Michigan, the United States District Court for the Western
10   District of Michigan.  State courts don't even have
11   jurisdiction over this case anymore.  And in that case the
12   city moved to transfer venue to the District Court in this
13   district so that it will eventually be moved down to your
14   Honor.

15          With respect to a concern that Ms. Ceccotti raised,
16   we are not seeking to stay the courts.  We are seeking to
17   stay the litigation by extending the stay protections to the
18   defendants without -- the effect of that -- that that would
19   have, your Honor, is to prevent the parties from acting.  We
20   are not seeking to do anything extraordinary under court's
21   jurisprudence.

22          Finally, your Honor, with respect to the arguments
23   that Mr. Bennett made on behalf of Syncora, I think there may
24   be some confusion on Syncora's part.  Neither of the motions
25   seek to assert or to extend the stay in favor of the swap

1   counterparties, which are banks that have nothing -- no

2   relationship with the city, or the service corporations

3   themselves or any other party related to those entities other

4   than a couple of city officers that serve as directors of the

5   service corporations, and they do that because they're

6   required to do that in the performance of their duties as

7   city officers pursuant to a city ordinance, which is

8   Ordinance Number 0305.  We are not seeking to protect the

9   corporations themselves.  We are not seeking to protect any

10  swap counterparties, so I want to make that clear.  Syncora

11  offers no evidence about how it will be prejudiced,

12  particularly because, again, nothing in the motions prevents

13  Syncora from coming in and seeking to lift the stay if one is

14  imposed.

15          We also don't seek in the stay confirmation motion

16  to seek relief behind actions to enforce a claim against the

17  debtor.  Paragraph 4 of the proposed order makes that very

18  clear.  It simply parrots the statute, and that's in the stay

19  confirmation motion.  Because the city is a party to the

20  Syncora suit, the only stay issue that would apply to that

21  would be the stay confirmation issue.  We're not seeking any

22  extension with respect to that lawsuit, and, frankly,

23  counterclaims may be asserted in that case, which would be

24  stayed, and the case started, your Honor, because Syncora was

25  illegally attempting to trap some of the city's revenues, so,

1    you know, if that kind of behavior would continue, that

2    absolutely is a stay violation.

3            Let me just check my notes quickly, your Honor.  All

4    right.  I believe, your Honor, that that's all I wanted to

5    address.

6            THE COURT:  I have to ask you one additional

7    question.  How do you deal with the argument made that if

8    your motions are granted as you have requested, lawsuits

9    against the State of Michigan or to the extent the lawsuits

10   are against the State of Michigan, they would not be stayed?

11           MS. LENNOX:  The State of Michigan, your Honor, acts

12   through its officials.  The State of Michigan -- well, with

13   respect to the three lawsuits that we are talking about right

14   now -- and I can't talk in the -- you know, I'd have to know

15   the facts for the other ones, but we -- again, when we

16   tailored this relief, we tailored it narrowly to what we knew

17   was out there and what we could anticipate coming out there.

18   We believe and we reserve the rights in our reply to argue

19   that the lawsuits themselves, including the ones in which the

20   city is not a named defendant, are direct violations of the

21   automatic stay, direct violations under 362(a)(3) and (6),

22   and if that's the case, then those cases and any actions

23   taken within those cases are void ab initio.  So to the

24   extent that the named parties in there are the governor and

25   the treasurer, the state acts through those officials.  Those

 1   are the officials that were sued.  That is what we're

 2   addressing.  Again, we are only seeking to extend the stay to

 3   lawsuits that affect this case, not to any other actions

 4   against state entities.  The State of Michigan can only act

 5   though its officials, and we believe that the relevant

 6   officials are identified in our pleading.

 7        THE COURT:  Another sort of scope question was

 8   raised by Mr. Sanders.  If your motions are granted here,

 9   what impact would you argue that would have or should have on

10   the lawsuit in which he represents parties who assert the

11   unconstitutionality of PA 436?

12        MS. LENNOX:  Your Honor, I don't have, as we stand

13   here, enough facts about what Mr. Sanders' lawsuit says, the

14   arguments that it makes, or the defendants in that case,

15   whether the city or any city officials are defendants in that

16   case, so I would have to reserve judgment until I knew the

17   facts about his lawsuit.

18        THE COURT:  He's also concerned, perhaps a bit more

19   hypothetically, that lawsuits, for example, to seek

20   disclosure under the Freedom of Information Act and other

21   sorts of administrative matters should not be stayed.  What's

22   your position on that?

23        MS. LENNOX:  Well, if I understood what Mr. Sanders

24   said, he said those were lawsuits against the city.  If

25   they're lawsuits against the city, they're already stayed.  I

1  don't have to extend the stay to do that.  It exists.  If

2  they want to seek relief from the stay with respect to their

3  lawsuits, they can certainly come before the Court and do it.

4          THE COURT:  All right.  Thank you.

5          MS. LENNOX:  Thank you, your Honor.

6          THE COURT:  All right.  At this time -- oh, I want

7  to hear from you, sir.  Yes.  Thank you.

8          MR. CANZANO:  Thank you.  Just a very brief point of

9  clarification.  In the -- the three orders that were entered

10 by the Court of Appeals yesterday are in three different

11 cases, 317286, which is Webster; 317285, which is Flowers;

12 and 317284, which is the General Retirement System case.

13 Each of those were emergency appeals of TRO's that were

14 issued on last Thursday, the 18th.  There was another case

15 where there was a straight claim of appeal of the final

16 declaratory judgment, which is 317292.  There is no order in

17 that case at all.  That claim of appeal is going forward as a

18 normal claim of appeal.

19         THE COURT:  Um-hmm.

20         MR. CANZANO:  So -- and if you look at the three

21 orders, you can see that the Webster refers only to July

22 18th.  The other two refer to July 18th and 19th actions, and

23 the declaratory judgment was issued in Webster on the 19th.

24 The transcript of the 19th reflects that the TRO in Webster

25 was vacated when the declaratory judgment was entered.

 1            THE COURT:  All right.  The Court -- was there
 2    something you wanted to add, sir?
 3            UNIDENTIFIED SPEAKER:  Your Honor, I would just add
 4    that counsel in her reply indicated that the state judge
 5    issued her orders with no briefing.  They were fully briefed.
 6            THE COURT:  All right.  The Court would propose to
 7    take a recess at this time to consider these motions and
 8    reconvene at two o'clock for a decision, so that is what
 9    we'll do, and we'll be in recess for now.
10            THE CLERK:  All rise.  Court is in recess.
11        (Recess at 11:47 a.m., until 2:11 p.m.)
12            THE CLERK:  All rise.  Court is in session.  Please
13    be seated.  Recalling Case Number 13-53846, City of Detroit,
14    Michigan.
15            THE COURT:  Counsel appear to be present.  As the
16    Court explained earlier, there are two motions before it
17    today, the stay confirmation motion and the stay extension
18    motion.  As to both motions, several creditors object and
19    contend that the motions should be denied on the grounds that
20    this bankruptcy case is not properly before the Court because
21    the governor did not authorize the bankruptcy consistent with
22    state law and the state constitution.  The Court concludes
23    that this objection to both of these motions must be
24    overruled.
25            The Court concludes that the issue of eligibility

1   and each of the elements relating to eligibility are within

2   this Court's exclusive jurisdiction under 28 U.S.C., Section

3   1334(a).  Under that statute, United States District Courts

4   have original and exclusive jurisdiction of all cases under

5   Title 11, that original and exclusive jurisdiction referred

6   to the Bankruptcy Courts of each jurisdiction under 28

7   U.S.C., Section 157.  Our District Court has referred all

8   matters relating to bankruptcy jurisdiction to the Bankruptcy

9   Court under Local Rule 83.30.  This is not a proceeding

10  within 28 U.S.C., Section 1334, over which Bankruptcy Courts

11  would have concurrent jurisdiction with the state courts.

12          I was just advised that my microphone wasn't

13  working, but now it is; right?

14          THE CLERK:  Yes.

15          THE COURT:  Did we have a record of the first part

16  of that, Letrice?  I can't hear you.

17          THE CLERK:  No.

18          THE COURT:  We don't?

19          THE CLERK:  No.

20          THE COURT:  Okay.  So we'll start over.

21  Fortunately, we didn't get too far in it, and hopefully I can

22  say the same thing twice.  Okay.

23          So there are two motions before the Court, the stay

24  confirmation motion and the stay extension motion.  Certain

25  creditors object to both motions on the grounds that this

1   bankruptcy case is not properly before the Court because the

2   governor's authorization to file this bankruptcy case was not

3   consistent with state law and the state constitution.  The

4   Court concludes that this objection to both motions must be

5   overruled.

6          The issue of eligibility and the elements that the

7   debtor needs to establish in order for the Court to find its

8   eligibility are within this Court's exclusive jurisdiction

9   under 28 U.S.C., Section 1334(a).  Under that section, the

10  District Courts have, quote, "original and exclusive

11  jurisdiction of all cases under Title 11," close quote.  The

12  District Court's jurisdiction in bankruptcy cases can, in the

13  District Court's discretion, be referred to the Bankruptcy

14  Court within its jurisdiction under 28 U.S.C., Section 157,

15  and our District Court has referred cases in its bankruptcy

16  jurisdiction to the Bankruptcy Court under Local Rule 83.30.

17         The Court further concludes that this issue of

18  eligibility would be determined in the case and not in a

19  proceeding within Section 1134(b) of Title 28 and over which

20  the state courts and the Bankruptcy Courts would have

21  concurrent jurisdiction.  The reference in Section 1334(b) to

22  a proceeding is a technical reference and refers to adversary

23  proceedings such as preference actions, fraudulent transfer

24  actions, lien avoidance actions, et cetera.  The effect of

25  Section 1334(a) of Title 28, therefore, is that all of the

 1  elements of eligibility in a Chapter 9 case must be decided

 2  by the Bankruptcy Court exclusively.  In this regard, the

 3  Court would note that there is no case law that holds

 4  otherwise.

 5       It has been argued here today that perhaps this

 6  exclusive grant of jurisdiction to the Bankruptcy Court to

 7  determine eligibility in the context of a Chapter 9 case is

 8  unconstitutional.  However, the Court finds nothing in the

 9  Tenth Amendment or in the more ambiguous concept of

10  federalism to support that argument, and there is no case law

11  that holds that.  Accordingly, the Court rejects that

12  argument as well.  In this regard, the Court would note, for

13  what it's worth, that in all of the other recent Chapter 9

14  cases with which we are all familiar, it was the Bankruptcy

15  Court that determined all of the eligibility issues raised by

16  the parties there.

17       The Court concludes that the Congressional grant of

18  jurisdiction to the Bankruptcy Court to determine the issue

19  of eligibility of a municipal debtor is entirely consistent

20  with the bankruptcy clause of the Constitution and the

21  supremacy clause as well.  In this regard, the Court would

22  further note that there is nothing in the jurisdictional

23  provisions of Title 28 or elsewhere that suggests that

24  Congress intended for the state courts to have concurrent

25  jurisdiction on the issue of eligibility to file a Chapter 9

 1 | case, so these arguments by the creditors to both motions are
 2 | overruled.

 3 |      Turning then to the stay confirmation order, it
 4 | appears to the Court that the only potential issue -- the
 5 | only other potential issue here is whether the emergency
 6 | manager, Kevyn Orr, is an officer within the meaning of 11
 7 | U.S.C., Section 922, because if he is, then the stay already
 8 | applies to him, and it is appropriate for the stay
 9 | confirmation order to say that.  If he's not an officer, then
10 | stays of action against him would be appropriate, if at all,
11 | only in the context of the stay extension motion.

12 |      The record fully establishes that Kevyn Orr is the
13 | emergency financial manager of the City of Detroit pursuant
14 | to Public Act 436 of 2012, Michigan Compiled Laws, Section
15 | 141.1541 and following.  Pursuant to Section 141.159(2),
16 | quote, "Upon appointment, an emergency manager shall act for
17 | and in the place and stead of the governing body and the
18 | office of chief administrative officer of the local
19 | government.  The emergency manager shall have broad powers in
20 | the receivership to rectify the financial emergency and to
21 | assure the fiscal accountability of the local government and
22 | the local government's capacity to provide or cause to be
23 | provided necessary governmental services essential to the
24 | public health, safety, and welfare," close quote.  It goes on
25 | to say, quote, "Following the appointment of an emergency

1   manager and during the pendency of the receivership, the

2   governing body and the chief administrative officer of the

3   local government shall not exercise any of the powers of

4   those offices except as may be specifically authorized in

5   writing by the emergency manager or as otherwise provided by

6   this act and are subject to any conditions required by the

7   emergency manager," close quote.

8           Therefore, according to Michigan law, the emergency

9   manager steps into the shoes of the governing body and its

10  chief administrative officer.  Accordingly, the Court readily

11  finds that the emergency manager is an officer within the

12  definition and scope of Section 922.

13          It does not appear that there are any other

14  substantive objections -- I should say any substantive

15  objections to this finding, and, accordingly, the Court

16  concludes that it is appropriate to grant the stay

17  confirmation motion and to have it state explicitly that the

18  emergency manager, Mr. Orr, is an officer covered by the

19  Section 922 stay.

20          The other motion is the stay extension motion.  This

21  motion is filed pursuant to Section 105 of the Bankruptcy

22  Code, and it seeks an extension of the stay otherwise

23  effective as to acts against the city under Section 362 and

24  as to acts against the city, its officers and inhabitants,

25  under Section 922, and it seeks the extension to the

1 governor, the treasurer, the loan board, and their agents and

2 representatives. As to this motion, it is initially argued

3 that principles of federalism, as embodied in the Tenth

4 Amendment, require a more stringent analysis of a request for

5 a Section 105 injunction in a Chapter 9 case compared to a

6 Chapter 11 case. Again, the Court overrules this argument

7 and finds nothing in either the Tenth Amendment or principles

8 of federalism that suggests that any different or more

9 stringent analysis should be invoked. The Court concludes,

10 rather, that in either event, whether Chapter 9 or Chapter

11 11, the Court has the authority to extend the scope of the

12 stay when necessary and appropriate. Section 105(a) of the

13 Bankruptcy Code provides that the Bankruptcy Court may,

14 quote, "issue any order, process, or judgment that is

15 necessary or appropriate to carry out the provisions of this

16 title," close quote, and the Sixth Circuit has held that a

17 court may utilize its equitable power under Section 105(a) to

18 extend the automatic stay to nondebtor entities in unusual

19 circumstances, Parry versus Mohawk Motors of Michigan, 236

20 F.3d 299, Sixth Circuit, 2000, and American Imaging Services,

21 Inc. versus Eagle-Picher Industries, Inc., In re. Eagle-

22 Picher Industries, Inc., 963 F.2d 855, Sixth Circuit, 1992.

23 The Court also so held in Patton versus Bearden, 8 F.3d 343,

24 Sixth Circuit, 1993.

25          The case law is ambiguous on the standard that the

1    Court should apply in evaluating a request to extend the stay

2    under Section 105.  Is it this unusual circumstances test, or

3    is it the more traditional preliminary injunction four-factor

4    test?  The Court concludes that it is unnecessary to resolve

5    that ambiguity in this case.  Rather, the Court concludes

6    that under either of those standards, it is appropriate to

7    find that the stay extension motion requested by the debtor

8    should be granted.

9            The case law applying the unusual circumstances test

10   has noted that it should be and has been rare for a court to

11   find unusual circumstances.  Some courts say that the

12   automatic stay may be extended if the unusual circumstances

13   make the interests of the debtor and the nondebtor defendant

14   inextricably interwoven.  In this case, the Court readily

15   finds that the debtor -- the interests of the debtor and the

16   interests of those potential defendants to whom the debtor

17   seeks to extend the automatic stay are so intertwined that

18   the unusual circumstances test is met.  Any attempt by really

19   anyone to litigate the issues that the creditors have raised

20   or might raise regarding this bankruptcy case or the debtor's

21   eligibility to file this bankruptcy case against other

22   nondebtor parties such as the governor or the treasurer or

23   others may well have an ability on the debtor's -- may well

24   have an impact -- excuse me -- on the debtor's ability to

25   reorganize, so the Court finds that the unusual circumstances

1   test is met.

2         The Court further concludes that, to the extent it's

3   applicable, the traditional four-factor preliminary

4   injunction test is met as well.  Traditionally those four

5   factors are the likelihood of success on the merits of the

6   plaintiff's claim, the extent to which the moving party will

7   be prejudiced if the motion is denied, the extent to which

8   the party opposing the motion will be prejudiced if the

9   motion is granted, and any public interest considerations.

10  The case law firmly establishes that these are not each

11  elements that must be met.  They are, rather, factors and

12  considerations that the Court should take into account in

13  weighing its discretion on whether to grant the requested

14  relief.

15        Addressing first, therefore, the issue of the

16  debtor's likelihood of success on the merits, in the

17  circumstances of this case, the Court finds that it would be

18  entirely inappropriate to comment on the likelihood of the

19  debtor's success on the merits of any of the substantive

20  issues relating to eligibility or plan confirmation except to

21  say that the issues raised are very serious questions and

22  that these questions should be addressed, to the extent that

23  they are raised, in the context of eligibility to file this

24  case or perhaps in the plan confirmation context.  In any

25  event, the state court proceedings that the city of court --

1  specifically seeks to stay and enjoin are proceedings which
2  could conceivably have and may well have an impact on the
3  bankruptcy case here and the administration of this case or
4  on the debtor's assets.  As the Sixth Circuit noted in Eagle-
5  Picher, it is enough for this Court to find that there are
6  serious questions going to the merits, and the Court
7  certainly so finds here.

8          The Court further noted in that case, interestingly,
9  the following, quote, "The bankruptcy court's primary
10 emphasis on the last three factors," parenthetically not
11 including the likelihood of success on the merits, "for
12 granting a preliminary injunction was not error, especially
13 when considering the source of its authority to grant such an
14 injunction emanates from section 105 whose purpose is to
15 assist the court in carrying out the provisions of the
16 Bankruptcy Code, one of which is to oversee the
17 reorganization of a debtor's business.  In addition, as we
18 stated in Friendship Materials, a court may, in its
19 discretion, grant a preliminary injunction even when the
20 plaintiff fails to show a strong or substantial probability
21 of ultimate success on the merits of his claim, but where he
22 at least shows serious questions going to the merits and
23 irreparable harm which decidedly outweighs any potential harm
24 to the defendant if an injunction is issued."  As noted, the
25 second question -- oh, first, before concluding the first

1   element, the Court is -- the Court would find readily that

2   this factor, therefore, weighs in favor of granting the

3   requested stay and injunction.

4         The second factor, as noted, is the extent to which

5   the city will suffer prejudice if the requested injunction is

6   denied.  The Court readily finds that the city will suffer

7   substantial prejudice if this stay is denied.  The record

8   reflects that the creditors have already obtained temporary

9   restraining orders and a declaratory judgment and that the

10   city has felt compelled to appeal those.  Clearly, addressing

11   these issues both in the state court and in this Bankruptcy

12   Court is costly, expensive, and inefficient, and really

13   causes prejudice not only to the debtor but to the other

14   parties as well.  There is also, of course, a danger of

15   potentially inconsistent results.  So, accordingly, again,

16   the Court concludes that this favor -- does weigh in favor of

17   granting the requested injunction.

18         The third factor is the harm to others, which will

19   or may occur if the requested injunction is granted.  Again,

20   the Court readily finds that the creditors who have opposed

21   this extension will not really be harmed at all if this

22   motion is granted.  There is no prejudice to the substantive

23   rights of any party if this stay is extended, as the city has

24   requested.  All of the arguments, issues, and claims that

25   they could and might seek to make they can raise in this

1   court.  None of their procedural and substantive rights to

2   make their claims and arguments in this course -- in this

3   court in the course of this case are foreclosed by granting

4   this motion.  Further, the Court will fully retain the

5   opportunity and right of any creditor to seek relief from

6   this stay on an individual case-by-case basis, which, of

7   course, if granted, will permit that creditor to litigate

8   whatever their issues are in the appropriate court.  So,

9   again, the Court concludes that this factor weighs in favor

10  of granting the requested injunction.

11          The fourth consideration is whether granting the

12  requested injunction would serve the public interest.  In

13  normal two-party litigation or even in many bankruptcy cases,

14  this is not a significant consideration, but in the context

15  of a Chapter 9 case and especially this Chapter 9 case, the

16  Court concludes that it is probably the most important factor

17  of all.  Granting this motion will, the Court readily

18  concludes, enhance the debtor's likelihood of reorganization.

19  It will also create efficiency.  It will also assist in

20  expediting this reorganization, and it will reduce the city's

21  costs as well as those of other parties.  Accordingly, the

22  Court finds that this injunction is in the public interest,

23  and for all of these reasons, the Court readily concludes in

24  its discretion that the requested extension of the stay under

25  Section 105 should be granted.

1      Now, several creditors have objected on the grounds

2   that the debtor should have filed an adversary proceeding to

3   obtain this relief.  The Court concludes that this objection,

4   too, should be overruled.  The Court is satisfied that there

5   was sufficient notice and opportunity to be heard, and the

6   Court further observes that the imposition of this stay will

7   only have the effect of requiring those parties who seek

8   relief from it to file a motion for relief from it.  And in

9   rejecting this objection, the Court notes that there is

10  substantial merit in the city's concern that it would be

11  impossible for it to file an adversary proceeding naming as

12  defendants all of the parties that might be impacted by this

13  injunction.  Indeed, it would be a procedural and

14  administrative nightmare.

15      Finally, the Court rejects the argument that Section

16  105 cannot serve as the basis for an extended stay because it

17  creates new rights.  The Court finds that this injunction

18  does not create any new rights.  It simply assists the Court

19  in making the bankruptcy process more efficient and gives the

20  Court control over all of the issues that will have to be

21  resolved through the course of the bankruptcy.  In this

22  regard, the Court would further note that no cases have

23  rejected a Section 105 stay extension on this ground.

24      Before concluding, the Court would like to review

25  and state on the record what is not being decided here today.

1  Perhaps this is just as important for the record to reflect

2  as what is being decided here today.

3  The Court is making no ruling whatsoever on whether

4  the City of Detroit is eligible to be a debtor in Chapter 9.

5  The Court is making no ruling on whether the state

6  constitution prohibited the emergency manager's appointment

7  or prohibited the emergency -- excuse me -- prohibited the

8  governor from authorizing this Chapter 9 filing without

9  excepting from it the constitutionally protected pension

10  rights of its citizens.  The Court is not ruling on whether

11  the state court orders that were entered either pre- or post-

12  bankruptcy should be given preclusive effect under principles

13  of res judicata, collateral estoppel, Rooker-Feldman, or any

14  other preclusive doctrine.  The Court is not ruling on

15  whether any orders entered by the state court after this

16  bankruptcy case was filed violated the automatic stay.  The

17  Court is not ruling on whether the City of Detroit can

18  propose a feasible or confirmable plan in light of the state

19  constitution or any other consideration, for that matter.

20  All of these issues on which the Court is not ruling

21  today are fully preserved.  Of course, when and if these

22  issues are raised in an appropriate way, the Court will rule

23  on them in due course with adequate notice and opportunity to

24  be heard, and, of course, we will address the procedure for

25  dealing with some of these issues in our status conference on

1    August 2nd.

2         The Court will, therefore, grant both of these

3    motions.  The Court wants the opportunity to review the

4    proposed orders that were attached to the debtor's motions.

5    In the event the Court wants to tweak or edit any of them, I

6    would ask debtor's counsel to submit those orders in Word or

7    WordPerfect form through the Court's order processing

8    program.  I know for sure that one of the things I want the

9    stay extension order to do is to be sure it explicitly

10   preserves the opportunity for parties to file motions for

11   relief from it under Section 362(d), but we'll take care of

12   that, so just submit the orders in the order processing

13   program as they were attached to the motion.

14        That's all I have.  Is there anything that anyone

15   else would like to raise at this time?

16        MS. PATEK:  Your Honor, on behalf of the public

17   safety unions, we did ask to broaden --

18        THE COURT:  You should identify yourself for the

19   record.

20        MS. PATEK:  I'm sorry.  Barbara Patek on behalf of

21   the public safety unions.  We did make a request for

22   affirmative relief, which was not listed among the items that

23   your Honor did not rule on with respect --

24        THE COURT:  Yes.  Thank you for reminding me of

25   that.  In the interest of due process, the Court must

1   conclude that it is necessary for you to file a specific

2   motion requesting that relief.  If you think that expedited

3   consideration is appropriate, you can request that.

4           MS. PATEK:  Thank you, your Honor.

5           THE COURT:  Would anyone else like to raise

6   anything?  Yes, ma'am.

7           MS. LENNOX:  Thank you, your Honor.  For the record,

8   Heather Lennox of Jones Day on behalf of the City of Detroit.

9   A procedural question, your Honor, about the matters that

10  you've set for hearing on August 2nd.  There was no objection

11  deadline set for the four motions.  Would your Honor wish to

12  set one?

13          THE COURT:  I didn't set one in light of the

14  expedited consideration of them, so I'm really not inclined

15  to.  If a party wants me to consider a written objection,

16  they should get it to me in time for me to consider it.

17  There was more specifically a question about a response time

18  on the 365 assumption motion, and we got a request -- a

19  motion for clarification as to that.  I think that was

20  mentioned earlier today.

21          MS. LENNOX:  Yes.

22          THE COURT:  And I will deal with that separately in

23  a separate order that I will enter later today or tomorrow.

24          MS. LENNOX:  Thank you, your Honor.

25          THE COURT:  All right.  Anything further?  Mr.

1 | Gordon.

2 |     MR. GORDON: Thank you, your Honor. For the record,

3 | Robert Gordon on behalf of the Detroit pension systems. I

4 | just want one more item of clarification, if I could.

5 |     THE COURT: Sir.

6 |     MR. GORDON: You've referenced for the August 2

7 | hearings that there's going to be a status conference, and I

8 | know that there's some procedural motions that are to be

9 | considered. I believe there's also a motion seeking to

10 | assume a forbearance agreement.

11 |     THE COURT: That's the Syncora motion that we were

12 | just talking about.

13 |     MR. GORDON: I'm sorry. I missed that. I couldn't

14 | hear her well. Is that going to be a status conference then

15 | or an actual --

16 |     THE COURT: No. I'm going to clarify that in my

17 | order that I'm going to enter this afternoon.

18 |     MR. GORDON: Very good. Thank you, your Honor.

19 | Sorry.

20 |     THE COURT: Yeah. Okay. We'll be in recess.

21 |     THE CLERK: All rise. Court is adjourned.

22 |    (Proceedings concluded at 2:48 p.m.)

INDEX


<u>WITNESSES:</u>

    None

<u>EXHIBITS:</u>

    None


        I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.


/s/ Lois Garrett                          July 29, 2013
_____                   _____
Lois Garrett