## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                                    Chapter 9
                                          Case No. 13-53846
City of Detroit, Michigan,                Hon. Steven W. Rhodes

            Debtor.
_____/

### Opinion and Order Denying Motion to Stay Proceedings
### Pending Determination of Motion to Withdraw the Reference

On September 11, 2013, the Official Committee of Retirees filed a motion to withdraw the reference on its objection to eligibility. (Dkt. #806) On September 13, 2013, the Committee filed a motion to stay this Court's deadlines and hearings concerning the determination of eligibility, pending the district court's decision on the motion to withdraw the reference. (Dkt. #837) Several parties, including Detroit Retired City Employees and Retired Detroit Police and Fire Fighters Association, filed a joint concurrence. (Dkt. #922)

On September 18, 2013, the City filed an objection to the motion for stay. (Dkt. #925)

The Court heard argument on the motion on September 19, 2013, and took the matter under advisement.

### I. Summary of Decision

The Court finds that none of the four factors to be considered on the Committee's motion for stay weigh in favor of granting the motion. Specifically, the Court finds that:

1.  The Committee is not likely to succeed on the merits of its motion to withdraw the reference.

2.  The Committee will not suffer any harm, let alone irreparable harm, if the stay is denied.

3. The City will suffer substantial harm if the stay is granted.

4. The public interest would not be served by granting the stay.

For these reasons, the motion for stay is denied.

## II. The Law Applicable to the Committee's Motion for Stay

Bankruptcy Rule 5011(c) governs a motion for a stay of proceedings pending the determination of a motion to withdraw the reference.

> The filing of a motion for withdrawal of a case or proceeding or for abstention pursuant to 28 U.S.C. § 1334(c) shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion.

Fed. R. Bankr. P. 5011(c).

"Although BR 5011(c) provides little guidance as to the circumstances under which a bankruptcy court should stay a proceeding, it is clear from the plain language of the Rule that the granting of a stay should be the exception—not the general rule." *In re The Antioch Co.*, 435 B.R. 493, 496 (Bankr. S.D. Ohio 2010). The *Antioch* court further observed:

> While the term "may" in the Rule appears to grant the bankruptcy court broad discretion in determining such a motion, the case law applying the Rule has limited the circumstances under which a stay may be granted to essentially the circumstances under which a preliminary injunction would be appropriate under Federal Rule of Civil Procedure 65.

*Id.* at 497.

Accordingly, when considering the Committee's motion for a stay, the Court considers whether "(1) [the Committee] is likely to prevail on the merits of the withdrawal motion; (2) [the Committee] is likely to suffer irreparable harm if the motion is denied; (3) the debtor [or other parties] will not be harmed by a stay; and (4) the public interest will be served by granting a

stay." *F.D.I.C. v. Imperial Capital Bancorp, Inc.*, 2011 WL 5600542, at *1 (S.D. Cal. Nov. 17, 2011).[1] The parties agree that these are the factors to be considered.

This statement of the factors to consider on the Committee's motion for stay is consistent with the factors that the Sixth Circuit has approved when considering a motion for a preliminary injunction. *See, e.g.*, *Moltan Co. v. Eagle–Picher Indus., Inc.,* 55 F.3d 1171, 1175 (6th Cir. 1995). "These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).

The Committee bears the burden of establishing that a stay is appropriate. *See, e.g.*, *In re New Energy Corp.*, 2013 WL 1192774, at *10 (Bankr. N.D. Ind. Mar. 14, 2013).[2]

Ultimately, the issue of whether to grant a stay is left to the court's discretion. *See, e.g.*, *In re Chrysler LLC*, 2009 WL 7386569, at *1 (Bankr. S.D.N.Y. May 20, 2009).[3]

---

[1] *See also Beach First Nat'l Bancshares, Inc. v. Anderson* (*In re Beach First Nat'l Bancshares, Inc.*), 2011 WL 2441501, at *1 (Bankr. D.S.C. Jan. 21, 2011); *Hecny Transp. Ltd. v. Summit Global Logistics, Inc.* (*In re Summit Global Logistics, Inc.*), 2008 WL 5953690, at *2 (Bankr. D.N.J. Dec. 1, 2008); *Env't Litig. Grp., P.C. v. Crawford* (*In re Price*), 2007 WL 1125639, at *7 (Bankr. N.D. Ala. Apr. 16, 2007); *Miller v. Vigilant Ins. Co.* (*In re Eagle Enters. Inc.*), 259 B.R. 83, 86 (Bankr. E.D. Pa. 2001); *Northwestern Inst. of Psychiatry, Inc. v. Travelers Indem. Co.* (*In re Northwestern Inst. of Psychiatry, Inc.*), 268 B.R. 79, 83 (Bankr. E.D. Pa. 2001).

[2] *See also In re Dana Corp.*, 2007 WL 2908221, at *1 (Bankr. S.D.N.Y. Oct. 3, 2007); *In re Eagle Enters. Inc.*, 259 B.R. at 86; *In re Matterhorn Grp., Inc.*, 2010 WL 4628119, at *2 (E.D. Cal. Nov. 5, 2010); *TJN, Inc. v. Superior Container Corp.* (*In re TJN, Inc.*), 207 B.R. 499, 500 (Bankr. D.S.C. 1996).

[3] *In re Ionosphere Clubs, Inc.*, 1996 WL 361531, at *1 (S.D.N.Y. June 28, 1996); *Antioch*, 435 B.R. at 497, 502; *Finger v. County of Sullivan Indus. Dev. Agency* (*In re Paramount Hotel Corp.*), 319 B.R. 350, 357 (Bankr. S.D.N.Y. 2005).

3

### III. Whether the Committee Is Likely to Succeed
### on Its Motion to Withdraw the Reference

The parties agree, and the Court concurs, that the issue here is the Committee's likelihood of success on the motion to withdraw the reference, not the likelihood of success on the Committee's eligibility objections.

The Committee's motion to withdraw the reference asserts three grounds:[4]

> A. *Stern v. Marshall* requires withdrawal of the reference of the eligibility objection independently of 28 U.S.C. § 157(d).

> B. Withdrawal of the reference is mandatory under 28 U.S.C. § 157(d).

> C. Withdrawal for "cause" is warranted under 28 U.S.C. § 157(d).

The Court will review the likelihood of success of each of these three grounds.[5]

### A. *Stern v. Marshall*

The Committee's eligibility objection challenges the constitutionality of both chapter 9 of the bankruptcy code under the Federal Constitution and Michigan PA 436 (2012) under the Michigan Constitution.  It asserts that therefore the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), requires the district court to withdraw the reference.[6]

---

[4] For convenience, this statement of the Committee's grounds for withdrawal of the reference is quoted and adapted from the table of contents in its memorandum in support of its motion to withdraw the reference filed September 11, 2013.  (Dkt. #806)

[5] In its opposition to the motion for stay and at the oral argument on the motion for stay, the City made clear its opposition to the motion to withdraw the reference and the grounds for it.

[6] Specifically, the Committee's objection to eligibility under 11 U.S.C. § 109(c) asserts:
 I. Acceptance of the city's authorization to file its petition would render chapter 9 unconstitutional.
   A. If chapter 9 permits the city to ignore the pension clause, chapter 9 grants authorization not available under the Michigan Constitution.

In *Stern v. Marshall*, the Supreme Court held that the "judicial power of the United States" can only be exercised by an Article III court and "that in general, Congress may not withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty." 131 S. Ct. at 2608-12. The Court held that a bankruptcy court therefore lacks the constitutional authority to enter a final judgment on a debtor's counterclaim that is based on a private right when resolution of the counterclaim is not

---

B. If chapter 9 permits Michigan's executive branch to consent to a limitation on its sovereignty not authorized by its people, the federal statute is unconstitutional.

II. It is not necessary for the court to review the constitutionality of chapter 9 because the emergency manager's petition for the City of Detroit does not meet the bankruptcy code requirements for eligibility.

A. The burden is on the debtors to show compliance with sections 109(c) and 921(c).

B. The authorizations relied upon by the emergency manager were flawed under the Michigan Constitution.

1. PA 436 is squarely at odds with the pension clause of Michigan's constitution and therefore unconstitutional.

2. The conflict between PA 436 and the pension clause of the Michigan Constitution cannot be reconciled.

a. The Attorney General's position should not be adopted.

b. The City of Detroit cannot rescue the unconditional authorizations.

c. The governor's authorization pursuant to PA 436 is not valid and void *ab initio* under Michigan's Constitution, and so is that of the emergency manager.

d. The City cannot satisfy bankruptcy code 109(c)(5) and is subject to dismissal under bankruptcy code 921(c).

For convenience, this expanded statement of the Committee's arguments in support of its objection to eligibility is quoted and adapted from its table of contents in its objection to eligibility filed September 10, 2013. (Dkt. #805)

5

necessary to fix the creditor's claim. 131 S. Ct. at 2611-19. The Court described the issue before it as "narrow."[7] 131 S. Ct. at 2620.

The Sixth Circuit has adhered to a narrow reading of *Stern* in the two cases that have addressed the issue: *Onkyo Europe Elect. GMBH v. Global Technovations Inc.* (*In re Global Technovations Inc.*), 694 F.3d 705 (6th Cir. 2012), and *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

In *Global Technovations*, the Sixth Circuit summarized *Stern* as follows:

> *Stern's* limited holding stated the following: When a claim is "a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy," the bankruptcy court cannot enter final judgment. *Id.* at 2611. In those cases, the bankruptcy court may only enter proposed findings of fact and conclusions of law. *Ibid.*

694 F.3d at 722. Based on this view of *Stern*, the *Global Technovations* court held that the bankruptcy court did have the authority to rule on the debtor's fraudulent transfer counterclaim against a creditor that had filed a proof of claim. *Id.*

In *Waldman*, the Sixth Circuit summarized the holding of *Stern* as follows:

> When a debtor pleads an action under federal bankruptcy law and seeks disallowance of a creditor's proof of claim against the estate—as in *Katchen* [*v. Landy*, 382 U.S. 323, 86 S. Ct. 467 (1966)]—the bankruptcy court's authority is at its constitutional maximum. 131 S. Ct. at 2617–18. But when a debtor pleads an action arising only under state-law, as in *Northern Pipeline* [*v.*

---

[7] Outside of the Sixth Circuit, the scope of *Stern* has been somewhat controversial. *See generally* Joshua D. Talicska, *Jurisdictional Game Changer or Narrow Holding? Discussing the Potential Effects of Stern v. Marshall and Offering a Roadmap Through the Milieu*, 9 SETON HALL CIRCUIT REV. 31 (Spring 2013); Michael Fillingame, *Through a Glass, Darkly: Predicting Bankruptcy Jurisdiction Post-Stern*, 50 HOUS. L. REV. 1189 (Symposium 2013); Tyson A. Crist, *Stern v. Marshall: Application of the Supreme Court's Landmark Decision in the Lower Courts*, 86 AM. BANKR. L.J. 627 (Fall 2012); Hon. Joan N. Feeney, *Statement to the House of Representatives Judiciary Committee on the Impact of Stern v. Marshall*, 86 AM. BANKR. L.J. 357 (Summer 2012).

> *Marathon Pipe Line Co.* 458 U.S. 50, 102 S. Ct. 2858 (1982)]; or
> when the debtor pleads an action that would augment the bankrupt
> estate, but not "necessarily be resolved in the claims allowance
> process[,]" 131 S. Ct. at 2618; then the bankruptcy court is
> constitutionally prohibited from entering final judgment. *Id.* at
> 2614.

698 F.3d at 919. Based on this view of *Stern*, the *Waldman* court held that the bankruptcy court lacked authority to enter a final judgment on the debtor's prepetition fraud claim against a creditor that was not necessary to resolve in adjudicating the creditor's claim.

These cases recognize the crucial difference to which *Stern* adhered. A bankruptcy court may determine matters that arise directly under the bankruptcy code, such as fixing a creditor's claim in the claims allowance process. However, a bankruptcy court may not determine more tangential matters, such as a state law claim for relief asserted by a debtor or the estate that arises outside of the bankruptcy process, unless it is necessary to resolve that claim as part of the claims allowance process. *See City of Cent. Falls, R.I. v. Central Falls Teachers' Union* (*In re City of Cent. Falls*)*, R.I.*, 468 B.R. 36, 52 (Bankr. D.R.I. 2012) ("[A]lthough the counterclaim at issue in *Stern* arose under state law, the determinative feature of that counterclaim was that it did not arise under the Bankruptcy Code.").

The matter on which the Committee has moved for withdrawal of the reference is the debtor's eligibility to file this chapter 9 case. A debtor's eligibility to file bankruptcy stems directly from rights established by the bankruptcy code. As quoted above, *Waldman* expressly held, "When a debtor pleads an action under federal bankruptcy law," the bankruptcy court's authority is constitutional. 698 F.3d at 919. In this case, the debtor has done precisely that. In seeking relief under chapter 9, it has pled "an action under federal bankruptcy law."

The Committee's federal and state constitutional challenges are simply legal arguments in support of its objection to the debtor's request for bankruptcy relief. Nothing in *Stern*,

*Waldman*, or *Global Technovations* suggests any limitation on the authority of a bankruptcy court to consider and decide any and all of the legal arguments that the parties present concerning an issue that is otherwise properly before it. More specifically, those cases explicitly state that a bankruptcy court can constitutionally determine all of the issues that are raised in the context of resolving an objection to a proof of claim, even those involving state law.[8] For the

---

[8] The Supreme Court has never squarely held that claims allowance, which is at the heart of the bankruptcy process, falls within the permissible scope of authority for a non-Article III court as a "public right" or any other long-standing historical exception to the requirement of Article III adjudication. *Stern*, 131 S. Ct. at 2614 n.7; *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56, n.11, 109 S. Ct. 2782 (1989). However, in *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71, 102 S. Ct. 2858, 2871 (1982) (plurality opinion), the Court came tantalizingly close when it stated, "the restructuring of debtor-creditor relations . . . is at the core of the federal bankruptcy power . . . [and] may well be a 'public right'[.]"

No court has ever held otherwise. On the contrary, the cases have uniformly concluded that the public rights doctrine is the basis of a bankruptcy court's authority to adjudicate issues that arise under the bankruptcy code. For example, in *Carpenters Pension Trust Fund for Northern California v. Moxley*, 2013 WL 4417594, at *4 (9th Cir. Aug. 20, 2013), the Ninth Circuit held:

> [T]he dischargeability determination is central to federal bankruptcy proceedings. *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363–64, 126 S. Ct. 990, 163 L.Ed.2d 945 (2006). The dischargeability determination is necessarily resolved during the process of allowing or disallowing claims against the estate, and therefore constitutes a public rights dispute that the bankruptcy court may decide.

Similarly, in *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 196 n.11 (3d Cir. 1999), the Third Circuit held, "The protections afforded a debtor under the Bankruptcy Code are congressionally created public rights."

In *Kirschner v. Agoglia*, 476 B.R. 75, 79 (S.D.N.Y. 2012), the court stated, "[After *Stern*,] bankruptcy courts still have the ability to finally decide so-called 'public rights' claims that assert rights derived from a federal regulatory scheme and are therefore not the 'stuff of traditional actions,' as well as claims that are necessarily resolved in ruling on a creditor's proof of claim (e.g., a voidable preference claim)[.]"

Other cases also conclude that various matters arising within a bankruptcy case are within the public rights doctrine. *See., e.g.*, *In re Bataa/Kierland LLC*, 2013 WL 3805143, at *3 (D. Ariz. July 22, 2013) (scope of Chapter 11 debtor's rights under easement); *Hamilton v. Try Us, LLC*, 491 B.R. 561 (W.D. Mo. 2013) (validity and amount of common law claim against Chapter 7 debtor); *In re Prosser*, 2013 WL 996367 (D.V.I. 2013) (trustee's claim for turnover of property); *White v. Kubotek Corp.*, 2012 WL 4753310 (D. Mass. Oct. 2, 2012) (creditor's successor liability claim against purchaser of assets from bankruptcy estate); *United States v.*

same reasons, a bankruptcy court can also constitutionally determine all issues that are raised in the context of resolving an objection to eligibility.

No cases address *Stern* in the context of eligibility for bankruptcy. Nevertheless, several cases do address *Stern* in the context of similar matters - conversion and dismissal of a case. Each readily concludes that *Stern's* limitation on the authority of a bankruptcy court is inapplicable. For example, in *In re USA Baby, Inc.*, 674 F.3d 882, 884 (7th Cir. 2012), the Seventh Circuit held that nothing in *Stern* precludes a bankruptcy court from converting a chapter 11 case to chapter 7, stating, "we cannot fathom what bearing that principle might have on the present case."[9] In *Mahanna v. Bynum*, 465 B.R. 436 (W.D. Tex. 2011), the court held that *Stern* does not prohibit the bankruptcy court from dismissing the debtors' chapter 11 case. The court concluded, "[T]his appeal is entirely frivolous, and constitutes an unjustifiable waste of judicial resources[.]" *Id.* at 442. In *In re Thalmann*, 469 B.R. 677, 680 (Bankr. S.D. Tex. 2012), the court held that *Stern* does not prohibit a bankruptcy court from determining a motion to

---

*Bond*, 2012 WL 4089648 (E.D.N.Y. Sept. 17, 2012) (trustee's claims for tax refund); *Turner v. First Cmty. Credit Union* (*In re Turner*), 462 B.R. 214 (Bankr. S.D. Tex. 2011) (violation of the automatic stay); *In re Whitley*, 2011 WL 5855242 (Bankr. S.D. Tex. Nov. 21, 2011) (reasonableness of fees of debtor's attorney); *In re Carlew*, 469 B.R. 666 (Bankr. S.D. Tex. 2012) (homestead exemption objection); *West v. Freedom Med., Inc.* (*In re Apex Long Term Acute Care-Katy, L.P.*), 465 B.R. 452, 458 (Bankr. S.D. Tex. 2011) (addressing preference actions, stating, "This Court concludes that the resolution of certain fundamental bankruptcy issues falls within the public rights doctrine."); *Sigillito v. Hollander* (*In re Hollander*), 2011 WL 6819022 (Bankr. E.D. La. Dec. 28, 2011) (nondischargeability for fraud).

In light of the unanimous holdings of these cases, the Court must conclude that its determination regarding the City's eligibility will likely be found to be within the public rights doctrine and therefore that the Court does have the authority to decide the issue, including all of the arguments that the Committee makes in its objection.

[9] *See also In re Gow Ming Chao*, 2011 WL 5855276 (Bankr. S.D. Tex. Nov. 21, 2011).

dismiss a case on the grounds of bad faith.[10]  This line of cases strongly suggests that *Stern* likewise does not preclude a bankruptcy court from determining eligibility.

Implicitly recognizing how far its motion to withdraw the reference stretches *Stern*, the Committee argues that two aspects of its objection alter the analysis of *Stern* and its application here.  The first is that its objection raises important issues under both the Federal and Michigan Constitutions.  The second is that strong federalism considerations warrant resolution of its objection by an Article III court.  Neither consideration, however, is sufficient to justify the expansion of *Stern* that the Committee argues.

First, since *Stern* was decided, non-Article III courts have considered constitutional issues, always without objection.

Both bankruptcy courts and bankruptcy appellate panels have done so.[11]  More specifically, and perhaps more on point, in two recent chapter 9 cases, bankruptcy courts

---

[10] *See also In re McMahan*, 2012 WL 5267017 (Bankr. S.D. Tex. Oct. 25, 2012); *In re Watts*, 2012 WL 3400820 (Bankr. S.D. Tex. Aug. 9, 2012).

[11] *See, e.g.*, *Williams v. Westby* (*In re Westby*), 486 B.R. 509 (10th Cir. BAP 2013) (upholding the constitutionality of the Kansas bankruptcy-only state law exemptions); *Res. Funding, Inc. v. Pacific Continental Bank* (*In re Washington Coast I, L.L.C.*), 485 B.R. 393 (9th Cir. BAP 2012) (upholding the constitutionality of the final order entered by the bankruptcy court); *Richardson v. Schafer* (*In re Schafer*), 455 B.R. 590 (6th Cir. BAP 2011), *rev'd on other grounds*, 689 F.3d 601 (6th Cir. 2012) (addressing the constitutionality of the Michigan bankruptcy-only state law exemptions); *Old Cutters, Inc. v. City of Hailey* (*In re Old Cutters, Inc.*), 488 B.R. 130 (Bankr. D. Idaho 2012) (invalidating a city's annexation fee and community housing requirements); *In re Washington Mut., Inc.*, 485 B.R. 510 (Bankr. D. Del. 2012) (holding Oregon's corporate excise tax unconstitutional under the Commerce Clause); *In re McFarland*, 481 B.R. 242 (Bankr. S.D. Ga. 2012) (upholding Georgia's bankruptcy-specific exemption scheme); *In re Fowler*, 493 B.R. 148 (Bankr. E.D. Cal. 2012) (upholding the constitutionality of California's statute fixing the interest rate on tax claims); *In re Meyer*, 467 B.R. 451 (Bankr. E.D. Wis. 2012) (upholding the constitutionality of 11 U.S.C. § 707(b)); *Zazzali v. Swenson* (*In re DBSI, Inc.*), 463 B.R. 709, 717 (Bankr. D. Del. 2012) (upholding the constitutionality of 11 U.S.C. § 106(a)); *Proudfoot Consulting Co. v. Gordon* (*In re Gordon*), 465 B.R. 683 (Bankr. N.D. Ga. 2012) (upholding the constitutionality of 11 U.S.C. § 706(a)); *South Bay Expressway, L.P. v. County of San Diego* (*In re South Bay Expressway, L.P.*), 455

addressed constitutional issues without objection.  *Association of Retired Employees v. City of Stockton, Cal.* (*In re City of Stockton, Cal.*), 478 B.R. 8 (Bankr. E.D. Cal. 2012) (holding that retirees' contracts could be impaired in the chapter 9 case without offending the constitution); *In re City of Harrisburg, PA*, 465 B.R. 744 (Bankr. M.D. Pa. 2011) (upholding the constitutionality of a Pennsylvania statute barring financially distressed third class cities from filing bankruptcy).

In addition, the Tax Court, a non-Article III court, has also examined constitutional issues, without objection.[12]  Likewise, the Court of Federal Claims, also a non-Article III court, has considered constitutional claims, without objection.  This was done perhaps most famously in *Beer v. United States*, 111 Fed. Cl. 592 (Fed. Cl. 2013), which is a suit by Article III judges under the Compensation Clause of the Constitution.

*Stern* does not change this status quo, and nothing about the constitutional dimension of the Committee's eligibility objection warrants the expansion of *Stern* that the Committee asserts. As *Stern* itself reaffirmed, "We do not think the removal of counterclaims such as [the debtor's] from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute[.]" 131 S. Ct. at 2620.  Expanding *Stern* to the point where it would prohibit bankruptcy

---

B.R. 732 (Bankr. S.D. Cal. 2011) (holding unconstitutional California's public property tax exemption for privately-owned leases of public transportation demonstration facilities).

[12] *See, e.g.*, *Field v. C.I.R.*, 2013 WL 1688028 (Tax Ct. 2013) (holding that the tax classification on the basis of marital status that was imposed by requirement that taxpayer file joint income-tax return in order to be eligible for tax credit for adoption expenses did not violate Equal Protection clause); *Begay v. C.I.R.*, 2013 WL 173362 (Tax Ct. 2013) (holding that the relationship classification for child tax credit did not violate Free Exercise Clause); *Byers v. C.I.R.*, 2012 WL 265883 (Tax Ct. 2012) (rejecting the taxpayer's challenge to the authority of an IRS office under the Appointments Clause).

courts from considering issues of state or federal constitutional law would certainly significantly change the division of labor between the bankruptcy courts and the district courts.[13]

The Committee's federalism argument is even more perplexing and troubling. Certainly the Committee is correct that a ruling on whether the City was properly authorized to file this bankruptcy case, as required for eligibility under 11 U.S.C. § 109(c)(2), will require the interpretation of state law, including the Michigan Constitution.

However, ruling on state law issues is required in addressing many issues in bankruptcy cases. As the Supreme Court has observed, "[B]ankruptcy courts [] consult state law in determining the validity of most claims." *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 444, 127 S. Ct. 1199, 1201 (2007). Concisely summarizing the reality

---

[13] Only one case, cited extensively by the Committee, suggests otherwise. *Picard v. Flinn Invs., LLC*, 463 B.R. 280 (S.D.N.Y. 2011). (Committee's Motion to Stay, ¶12, p. 6) That case did state in dicta in a footnote, "If mandatory withdrawal protects litigants' constitutional interest in having Article III courts interpret federal statutes that implicate the regulation of interstate commerce, then it should also protect, *a fortiori*, litigants' interest in having the Article III courts interpret the Constitution." *Id.* at 288 n.3.

This single sentence cannot be given much weight. First, it is only dicta. Second, it is against the manifest weight of the case authorities. Third, the quote assumes, without analysis, that the litigants do have an interest in having Article III courts interpret the Constitution, and thus bootstraps its own conclusion. Fourth, nothing in the *Flinn Investments* case states or even suggests that *Stern* itself prohibits a bankruptcy court from ruling on a constitutional issue where it otherwise has the authority to rule on the claim before it. Finally, the district court that issued *Flinn Investments* has now entered an amended standing order of reference in bankruptcy cases to provide that its bankruptcy court should first consider objections to its authority that parties raise under *Stern v. Marshall*. Apparently, that district court's position now is that *Stern* does not preclude the bankruptcy court from determining constitutional issues, including the constitutional issue of its own authority. The order is available at http://www.nysd.uscourts.gov/rules/StandingOrder_OrderReference_12mc32.pdf.

The Committee cited two other cases in support of its position that only an Article III court can determine a constitutional issue: *TTOD Liquidation, Inc. v. Lim* (*In re Dott Acquisition, LLC*), 2012 WL 3257882 (E.D. Mich. July 25, 2012), and *Picard v. Schneiderman* (*In re Madoff Secs.*), 492 B.R. 133 (S.D.N.Y. 2013). Both are irrelevant to the issue. *Dott Acquisition* did discuss *Stern* but only in the unremarkable context of withdrawing the reference on a fraudulent transfer action. *Schneiderman* did not address a *Stern* issue at all, or even cite the case.

of the bankruptcy process and the impact of *Stern* on it, the court in *In re Olde Prairie Block Owner, LLC*, 457 B.R. 692, 698 (Bankr. N.D. Ill. 2011), concluded:

> [*Stern*] certainly did not hold that a Bankruptcy Judge cannot ever decide a state law issue. Indeed, a large portion of the work of a Bankruptcy Judge involves actions in which non-bankruptcy issues must be decided and that 'stem from the bankruptcy itself or would necessarily be resolved in the claims allowance process,' [131 S. Ct.] at 2618, for example, claims disputes, actions to bar dischargeability, motions for stay relief, and others. Those issues are likely within the 'public rights' exception as defined in *Stern*.

Other cases also illustrate the point.[14]

The distinction is clear. While in some narrow circumstances *Stern* prohibits a non-Article III court from adjudicating a state law claim for relief, a non-Article III court may consider and apply state law as necessary to resolve claims over which it does have authority under *Stern*. The mere fact that state law must be applied does not by itself mean that *Stern* prohibits a non-Article III court from determining the matter.

Moreover, nothing about a chapter 9 case suggests a different result. In *City of Cent. Falls, R.I.*, 468 B.R. at 52, the court stated, "Nor did [*Stern*] address concerns of federalism; although the counterclaim at issue in *Stern* arose under state law, the determinative feature of that counterclaim was that it did not arise under the Bankruptcy Code. The operative dichotomy was not federal versus state, but bankruptcy versus nonbankruptcy."

---

[14] *See, e.g.*, *Picard v. Estate of Madoff*, 464 B.R. 578, 586 (S.D.N.Y. 2011) (quoting *In re Salander O'Reilly Galleries*, 453 B.R. 106, 118 (Bankr. S.D.N.Y. 2011)) ("It is clear" from *Stern v. Marshall* and other Supreme Court precedent that "the Bankruptcy Court is empowered to apply state law when doing so would finally resolve a claim."); *Anderson v. Bleckner* (*In re Batt*), 2012 WL 4324930, at *2 (W.D. Ky. Sept. 20, 2012) ("*Stern* does not bar the exercise of the Bankruptcy Court's jurisdiction in any and all circumstances where a party to an adversary proceeding has not filed a proof of claim, or where the issue in an adversary proceeding is a matter of state law.").

13-53846-swr Doc 2262-1 Filed 12/27/13 Entered 12/27/13 16:08:30 Page 13 of 25 293

The troubling aspect of the Committee's federalism argument is that it does not attempt to define, even vaguely, what interest of federalism is at stake here or how that interest requires withdrawal of the reference to the district court. Its motion does little more than just drop the word in here and there, and argue that federalism requires this or that.

In *Arizona v. United States*, 132 S. Ct. 2492, 2500 (2012), the Supreme Court stated, "Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." Accordingly, federalism is about the federal and state governments respecting each other's sovereignty. It has nothing to do with the requirements of Article III or, to use the phraseology of *Stern*¸ with the "division of labor" between the district courts and the bankruptcy courts.[15] 131 S. Ct. at 2620. *See also City of Cent. Falls, R.I.*, 468 B.R. at 52, quoted above.

Beyond that, the Committee's motion does not address why principles of federalism suggest that the district court rather than the bankruptcy court should first review the constitutional issues, especially since any decision by this Court is subject to *de novo* review by the district court on appeal.

For these reasons, the Court concludes that the Committee is not likely to prevail on the merits of its withdrawal motion as it pertains to its *Stern* argument.

**B. Mandatory Withdrawal Under 28 U.S.C. § 157(d)**

The Committee also asserts that it is likely to succeed on the merits of its withdrawal motion because withdrawal of the reference is mandatory under 28 U.S.C. § 157(d). Under this statute, withdrawal of the reference is mandatory if the "resolution of the proceeding requires

---

[15] Genuine federalism concerns are fully respected in bankruptcy through the process of permissive abstention under 28 U.S.C. § 1334(c)(1).

consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  28 U.S.C. § 157(d).

Most courts agree that "[mandatory] withdrawal should be granted only if the current proceeding could not be resolved without 'substantial and material consideration'" of the federal law regulating interstate commerce.[16]  *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 952 (7th Cir. 1996) (citations omitted).

Mandatory withdrawal of the reference is granted only when "resolution of the proceeding must require consideration of non-bankruptcy federal statutes regulating interstate

---

[16] "This 'substantial and material' gloss has been accepted as an appropriate reading of the statute and effectuation of Congress' intent by most courts[.]"  *Vicars Ins. Agency, Inc.*, 96 F.3d at 952 (citations omitted).  *See also Security Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997) (holding that 28 U.S.C. § 157(d) "mandates withdrawal in cases requiring material consideration of non-bankruptcy federal law."); *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) ("This mandatory withdrawal provision has been interpreted to require withdrawal to the district court of cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes."); *Sweet v. Chambers* (*In re Chambers*), 2012 WL 933199, at *1 (E.D. Mich. Mar. 20, 2012) (Hood, J.) ("Two prongs must be met for requiring mandatory withdrawal of the reference: 1) consideration of the Bankruptcy Code; and 2) substantial and material consideration of a nonbankruptcy federal law affecting interstate commerce."); *Stevenson v. Polymerica, Ltd, d/b/a Global Enters. Inc. & Fabribond, LLC.,* (*In re Snooks*), 2009 WL 230598, at *2-3 (E.D. Mich. Jan. 29, 2009) (Fiekens, J.) ("The 'substantial and material consideration' standard is the one adopted by the latest court in this district to consider the question.  This standard is also the one gaining most acceptance by courts of late.  Therefore, this Court will follow this standard.").

A small minority of courts reject the "substantial and material consideration" test in favor of applying the literal language of 28 U.S.C. § 157(d).  *See, e.g., Laborers' Pension Trust Fund – Det. & Vicinity v. Kiefer* (*In re Kiefer*), 276 B.R. 196, 200 (E.D. Mich. 2002) (Gadola, J.) ("Instead, literal interpretation of § 157(d) would preclude bankruptcy court jurisdiction only when (1) consideration of a federal law that regulates commerce and is outside of the Bankruptcy Code were required to resolve the case and (2) a party moved for withdrawal of the proceeding.").

It does not matter which approach is applied here.  As noted in the text, the Committee's objections to eligibility do not require consideration of any federal statute other than the bankruptcy code, let alone "substantial and material" consideration.

commerce."[17]  *In re Texaco Inc.*, 84 B.R. 911, 919 (S.D.N.Y. 1988).  These laws are "rooted in the commerce clause."[18]  *In re Ziviello-Howell*, 2011 WL 2144417, at *2 (E.D. Cal. May 31, 2011) (collecting cases).

"[Section 157(d)] has been construed narrowly."  *Shugrue v. Air Line Pilots Ass'n Int'l* (*In re Ionosphere Clubs, Inc.*), 922 F.2d 984, 995 (2d Cir. 1990).  "By misinterpreting the mandatory withdrawal provision, courts risk encouraging delay tactics, forum shopping, and ultimately, dissipation of the bankrupt's estate through costly litigation by the parties."  Erich D. Andersen, *Closing the Escape Hatch in the Mandatory Withdrawal Provision of 28 U.S.C. § 157(d)*, 36 UCLA L. REV. 417, 418 (December 1988) (footnotes omitted).

This basis for withdrawal of the reference that the Committee asserts is likely to fail for one simple reason.  Resolution of the Committee's eligibility objection does not require consideration of any "laws of the United States regulating organizations or activities affecting interstate commerce."  The Committee has not cited any such laws to be considered in connection with its eligibility objection and the Court sees none.

Instead, the Committee argues that restructuring the fiscal activities among a state and its employees affects interstate commerce.  It cites *United States v. Darby*, 312 U.S. 100, 61 S. Ct 451 (1941), for the proposition that the regulation of employees affects interstate commerce.

---

[17]  It must be noted that some cases loosely state that this section applies when consideration of a "non-bankruptcy federal law" is required.  *See., e.g.*, *Vicars Ins. Agency, Inc.*, 96 F.3d at 952.  Given the specificity of the statute, this shorthand language should be understood to refer to "other laws of the United States regulating organizations or activities affecting interstate commerce."  28 U.S.C. § 157(d).

[18]  The reference in *Texaco* to "federal statutes regulating interstate commerce" includes, for example, the federal antitrust laws, securities laws, environmental laws, labor laws, RICO, truth in lending laws, the Federal Aviation Act, and the Occupational Safety and Health Act.  *See generally*, *Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.*, 107 B.R. 34, 38 (D. Del. 1989).

13-53846-swr  Doc 2262-12  Filed 12/27/13  Entered 12/27/13 16:03:30  Page 16 of 26 296

This is weak. The question here is not whether the bankruptcy filing of the City of Detroit will affect interstate commerce. It probably will, but the Committee cites no cases holding that 28 U.S.C. § 157(d) requires withdrawal of the reference whenever a debtor's bankruptcy affects interstate commerce. It would stretch § 157(d) beyond recognition to reach that result.

It would also stretch 28 U.S.C. § 157(d) beyond recognition to conclude that it covers all federal laws, including the Constitution, as the Committee apparently contends. Although the Commerce Clause of the Constitution, Art. 1, § 8, cl. 3, gives Congress the power to enact laws "to regulate Commerce . . . among the several States," the Constitution itself is simply not a law "regulating organizations or activities affecting interstate commerce," as required for mandatory withdrawal of the reference under 28 U.S.C. § 157(d). Beyond that, if Congress had intended for mandatory withdrawal of the reference to apply to matters that involve constitutional issues, it could easily have so provided. It did not.

Simply stated, the Committee's objections to eligibility do not require any consideration of a federal law "regulating organizations or activities affecting interstate commerce," let alone any "substantial and material" consideration of such a law. For that reason, the Court concludes that the Committee has not established that it is likely to prevail on the merits of the withdrawal motion as it pertains to its mandatory withdrawal argument.

### C. Permissive Withdrawal Under 28 U.S.C. § 157(d)

In its motion to withdraw the reference, the Committee also argues for permissive withdrawal under § 157(d). This ground allows the district court to withdraw the reference whenever it concludes that there is "cause shown." 28 U.S.C. § 157(d).

Curiously however, the Committee did not assert in its motion for stay that it is likely to succeed on its claim for permissive withdrawal of the reference. As noted in Part II above, the

Committee has the burden to establish that it is likely to succeed on its motion.  In these circumstances, it is hard to find that the Committee has met its burden.

Nevertheless, in the interest of justice, the Court will review the specific grounds for permissive withdrawal that the Committee argued in its motion to withdraw the reference.  In summary, the Committee asserts cause for withdrawal of the reference based on the following factors:

1. "Post-*Stern*, the most relevant factor is whether a bankruptcy court can enter final judgment on the matter."  Committee's Motion to Withdraw the Reference at ¶45, p. 26.  (Dkt. #806)

2. "Withdrawal will promote judicial and party efficiency."  Committee's Motion to Withdraw the Reference at ¶46, p. 27.  (Dkt. #806)

3. "The federalism concerns implicated by the Committee's constitutional challenges to Chapter 9 also counsel in favor of resolution in an Article III court."  Committee's Motion to Withdraw the Reference at ¶47, p. 27-8.  (Dkt. #806)

4. "Finally, the Bankruptcy Court has no special legal expertise to determine the Eligibility Objection based on novel issues of state and federal constitutional law and related to a newly-enacted state statute."  Committee's Motion to Withdraw the Reference at ¶48, p. 28.  (Dkt. #806)

"[I]n determining whether cause exist[s] a district court should consider such goals as advancing uniformity in bankruptcy administration, decreasing forum shopping and confusion, promoting the economical use of the parties' resources, and facilitating the bankruptcy process." *Dionne v. Simmons* (*In re Simmons*), 200 F.3d 738, 742 (11th Cir. 2000) (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985)).[19]

---

[19] *See also Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997) ("In determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors."); *Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1101 (2d Cir. 1993).

13-53846-swr   Doc 2262-1  Filed 12/27/13   Entered 12/27/13 16:08:30   Page 19 of 26
13-53846-swr   Doc 2229-1  Filed 12/26/13   Entered 12/26/13 16:06:33   Page 19 of 26    298

The factors argued in the Committee's motion to withdraw the reference that are summarized in paragraphs 1, 3 and 4 above are not among the factors suggested in *Simmons* or in other cases on point. Still, the district court has wide discretion and may consider them.

The Committee argues that the most relevant factor is its *Stern* argument. The Court has already explained why that argument is not likely to succeed.

The Committee also asserts that withdrawal of the reference on its eligibility objection will promote efficiency. This too is unlikely to succeed. If the motion to withdraw the reference is granted, then one of the eligibility objections that have been filed in the case will be in the district court (the Committee's objections) and all of the others will be in the bankruptcy court, including the other parties' constitutional objections. This leaves the City litigating eligibility, and to some extent the same issues on eligibility, in two different courts, simultaneously. This does not promote judicial or party efficiency; it is its antithesis. The most efficient way to litigate eligibility in this case is in one court - the bankruptcy court - and then on appeal in the next.

The Committee also argues that considerations of federalism suggest that constitutional issues should be resolved in the district court. However, as demonstrated above in connection with the Committee's *Stern* argument, there is nothing about principles of federalism that suggest that the Committee's constitutional challenge to chapter 9 of the bankruptcy code or to PA 436 should be determined in the district court.

Finally, the Committee argues that this Court has no special legal expertise to determine novel issues of state and federal constitutional law. The self-contradiction of this argument makes it the most puzzling of all. Almost by definition, no court will have "special legal expertise" to review an issue of law that is "novel." Still, both this Court and the district court do

have the *necessary* legal expertise to deal with all of the legal arguments raised in the eligibility objections, even if that expertise is not "special."

The Court concludes that each of the factors in the appellate decisions cited above - advancing uniformity in bankruptcy administration, decreasing forum shopping and confusion, promoting the economical use of the parties' resources, and facilitating the bankruptcy process - weigh against withdrawing the reference. Accordingly, the Court finds that the Committee is not likely to succeed on its motion to withdraw the reference.

### IV. Whether the Committee Will Suffer Irreparable Injury If the Stay Is Not Granted

The second consideration in the determination of whether to grant the request for a stay is whether the moving party will suffer irreparable injury if the stay is not granted. The Committee argues that even a threat to a constitutional right mandates a finding of irreparable injury. The Committee cites *Hillside Prods., Inc. v. Duchane*, 249 F. Supp. 2d 880, 900 (E.D. Mich. 2003), for the proposition, "[W]hen reviewing a motion for a preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." *Id.* (quoting *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001) (citing *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673 (1976))).

The difficulty with the Committee's argument here is that in *Hillside Productions*, the court had already found a substantial likelihood of success on the merits of the plaintiffs' constitutional claims. Specifically, the court found, "Based on the evidence presented, this Court finds that Plaintiffs are likely to succeed on the merits of the selective enforcement and First Amendment retaliation claims. Rarely does one hear such compelling and unrebutted evidence of the vindictive retaliatory action such as that taken[.]" 249 F. Supp. 2d at 898.

However, the mere argument that a constitutional right might be impaired is not sufficient for a finding of irreparable injury in the absence of a substantial showing of likelihood of success on the merits of the underlying claim.  As determined in Part III above, the Committee has not established a likelihood of success on the merits of its argument that *Stern* requires withdrawal of the reference.

As the court stated in *In re The Antioch Co.*, 435 B.R. 493, 502 (Bankr. S.D. Ohio 2010):

> Finally, a decision to stay this litigation cannot be premised on the mere possibility this court might interpret its jurisdiction in too broad a fashion.  If Congress intended for the bankruptcy courts to stay proceedings upon the filing of a motion to withdraw the reference or to abstain, it would have so provided.  Movants' argument regarding the risk of the Bankruptcy Court overstepping its jurisdictional and constitutional authority would not only remove the discretion accorded the bankruptcy courts under BR 5011(c), but also would flip the apparent presumption in favor of not staying such proceedings that arises out of the plain language of the Rule.

The Committee also asserts that its constituency will suffer a loss of constitutional rights if the stay is not granted because their pensions will be diminished.  Its brief states, "Ultimately, the risk is the loss of life-preserving or even life-enhancing retirement compensation[.]"  Committee's Motion to Stay at ¶23, p. 12.  (Dkt.#837)

At this point, however, the retirees have not suffered a loss of any retirement benefits, and more importantly, nothing suggests that denying the motion for stay would create *any* risk to their retirement benefits pending the district court's determination of whether to withdraw the reference.

The City argues, with merit, that even in the Committee's worst-case scenario, its right to have the district court determine its constitutional challenges will still not be lost.  Even if the stay is denied, *and* the motion to withdraw the reference is denied, *and* this Court determines that *Stern* does not preclude this Court from entering a final judgment on the Committee's

constitutional objections to eligibility, the Committee can still have both its *Stern* objection and its constitutional challenges to eligibility heard by the district court, *de novo*, on appeal.

Accordingly, the Court concludes that the Committee has not established any harm, let alone irreparable harm, if the stay is denied.

### V. Whether the City Will Be Harmed If a Stay Is Granted

In this motion, the Committee requests a stay of this Court's consideration of all of the one hundred ten objections to eligibility, pending the district court's determination of its motion to withdraw the reference on its one eligibility objection.

The Committee argues that the City will only suffer "minimal inconvenience" if the stay is granted. Committee's Motion to Stay at p. 13. (Dkt. #837) It argues that the only injury to the City would be the loss of its choice of forum to decide issues. Committee's Motion to Stay at ¶27, p. 13. (Dkt. #837)

In response, the City states, "The sooner the City can demonstrate its eligibility for chapter 9, the sooner it can complete other restructuring steps and ultimately confirm and implement a plan of adjustment. A prompt exit from chapter 9 will facilitate the long process of rebuilding the City." City's Brief in Opposition to Motion to Stay at ¶1, p. 1. (Dkt. #925)

It further states, "[E]very day of delay in the administration of this case inflicts injury on the City and its residents through continuation of intolerably low levels of municipal services and public health and safety and the deferral of any opportunity that the City may have to revitalize itself." City's Brief in Opposition to Motion to Stay at ¶35, p. 20. (Dkt. #925)

Finally, the City relies on the Declaration of Kevyn D. Orr in Support of City of Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code, filed on July 18, 2013, which states that the City is (a) currently unable to make investments critical to

the health and safety of its residents, (b) plagued by shockingly high crime rates and low police response times, (c) struggling to keep the lights on (with 40% of the City's street lights inoperative as of April 2013), (d) ravaged by extensive and intractable urban blight and (e) saddled with obsolete and decaying infrastructure and equipment. Orr Declaration at ¶¶ 31-44, pp. 21-5. (Dkt. #11)

The Court agrees with the City that the real injury to it if a stay is granted will be the consequences resulting from the inevitable delay in resolving the case. The record in this case firmly establishes the necessity that this case move promptly through the process of determining the City's eligibility for chapter 9 relief. If the City is found to be eligible, it will then need to move promptly through the process of plan negotiation and confirmation. If the City is found not to be eligible, it will then need to promptly evaluate its post-bankruptcy options. In the meantime, however, the creditors' many eligibility objections create substantial uncertainty regarding the City's ability to achieve its goal of adjusting its debt through chapter 9. Until that uncertainty is removed, the City's progress in recovering its financial, civic, commercial, and cultural life and in revitalizing itself will likely be slowed, if not stalled entirely.

Orr's declaration further establishes that also at stake in this motion is the City's ability to provide basic services to its residents and to remediate a host of unsafe living conditions. At the hearing on the individual objecting parties' objections to eligibility on September 19, 2013, the Court heard truly disturbing accounts of the consequences of the City's inability to provide basic services. These accounts were undoubtedly just a microscopic sample of the full truth regarding the inadequacy of basic services in the City of Detroit.

13-53846-swr   Doc 2262   Filed 12/27/13   Entered 12/27/13 16:06:33   Page 23 of 25   303

In these circumstances, the consequences of extending the eligibility process by granting the requested stay are not a "minimal inconvenience." They are much more than that. They are truly beyond irreparable and bordering on the incomprehensible.

## VI. Whether the Public Interest
## Will be Served by Granting the Stay

The Committee asserts that "the public interest is best served by preventing [a] prohibited act." Committee's Motion to Stay at ¶27, p. 13. (Dkt. #837) It further asserts that the prohibited act is the impairment of pensions. However, whatever the merits of that claim, granting a stay pending the determination of the motion to withdraw the reference does not preserve pension rights any more than denying the stay impairs them.

The Committee also asserts that the public interest is served by granting the stay because it would avoid the constitutional violation that would occur under *Stern* if this Court were to rule on the Committee's constitutional challenges to the City's eligibility. However, as the Court concluded in Part III above, the Committee is unlikely to succeed on its argument that *Stern* prohibits this Court from ruling on the City's eligibility.

The Committee has not stated any other public interest in support of granting the stay.

There is, however, a strong public interest in denying it, because to a great extent, the public's interest and the City's interest in the prompt resolution of this case coalesce. Accordingly, for the same reasons and to the same extent that granting the stay would harm the City, it would also harm the public interest.

## VII. Conclusion

The Court concludes that the Committee has failed to establish any of the factors to be considered in connection with its request for a stay. Accordingly, it is hereby ordered that the

Committee's motion for a stay pending the district court's determination of the motion to withdraw the reference is denied.

For Publication

.

**Signed on September 26, 2013**

        **/s/ Steven Rhodes**

        **Steven Rhodes**

        **United States Bankruptcy Judge**