------------------------------------------------------x
:
In re                                                         : Chapter 9
:
CITY OF DETROIT, MICHIGAN,       : Case No. 13-53846
:
                Debtor.             : Hon. _____
:
:
------------------------------------------------------x

## STATEMENT OF QUALIFICATIONS PURSUANT TO SECTION 109(c) OF THE BANKRUPTCY CODE

The City of Detroit, Michigan (the "City") hereby certifies its qualifications to be a debtor under section 109(c) of title 11 of the United States Code (the "Bankruptcy Code"). This Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code (the "Statement of Qualifications") is supported by the Memorandum in Support of Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code (the "Memorandum") filed contemporaneously herewith and the accompanying declarations of Kevyn D. Orr, Gaurav Malhotra and Charles M. Moore in support of this Statement of Qualifications and the exhibits to each of the foregoing, all of which are incorporated herein by reference. The City hereby certifies as follows:

1. The City is a municipality as such term is defined in section 101(40) of the Bankruptcy Code. See Memorandum at § II.A.

2. The City is specifically authorized in its capacity as a municipality and by name to be a debtor under chapter 9 under the laws of the State of Michigan and by the relevant governmental officers empowered by thereby. See Memorandum at § II.B. In particular, on July 16, 2013, Kevyn D. Orr, the duly appointed Emergency Manager for the City (the "Emergency Manager") under the Local Financial Stability and Choice Act, Public Act 436 of 2012, MCL § 141.1541, et seq. ("PA 436"), made a written recommendation to Richard D. Snyder, Governor of the State of Michigan, and Andrew Dillon, Treasurer of the State of Michigan, that the City be authorized to proceed under chapter 9 based on the Emergency Manager's judgment that "no reasonable alternative to rectifying the financial emergency of the [City] exists" because "no feasible financial plan can be adopted that can satisfactorily rectify the financial emergency of the [City] in a timely manner." PA 436 §§ 18(1), 18(2); see also Memorandum at § II.B. On July 18, 2013, the Governor issued his written decision (the "Authorization") approving the Emergency Manager's recommendation that the City be authorized to proceed under chapter 9 of the Bankruptcy Code, thereby satisfying the requirements of section 18 of PA 436. See Memorandum at § II.B. Thereafter, also on July 18, 2013, the Emergency

Manager issued an order approving the filing of the City's chapter 9 case consistent with the Authorization (the "Approval Order"). See id. True and correct copies of the Approval Order and the Authorization are attached hereto as Exhibit A.

3. The City is insolvent within the meaning of section 101(32)(C) of the Bankruptcy Code. See Memorandum at § II.C.

4. The City desires to effect a plan to adjust its debts. See Memorandum at § II.D.

5. The City (a) is unable to negotiate (or further negotiate) with creditors because such negotiation is impracticable; and (b) nevertheless, has negotiated in good faith with creditors who are represented and organized and has failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that the City intends to impair under a plan of adjustment in this chapter 9 case. See Memorandum at § II.E.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

Dated: July 18, 2013               Respectfully submitted,

/s/ David G. Heiman
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF THE CITY OF DETROIT, MICHIGAN

      I, Kevyn D. Orr, the Emergency Manager of the City of Detroit, Michigan, am an authorized officer or agent of the municipality named as the debtor in this case. I declare under penalty of perjury that I have read the foregoing Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code, and that it is true and correct to the best of my information and belief.

Dated: July 18, 2013                      /s/ Kevyn D. Orr
                                                       Kevyn D. Orr
                                                       Emergency Manager, City of Detroit

# EXHIBIT A

## APPROVAL ORDER AND AUTHORIZATION



# EMERGENCY MANAGER
# CITY OF DETROIT

## ORDER No. 13

## FILING OF A PETITION UNDER CHAPTER 9 OF TITLE 11 OF THE UNITED STATES CODE

BY THE AUTHORITY VESTED IN THE EMERGENCY MANAGER
FOR THE CITY OF DETROIT
PURSUANT TO MICHIGAN'S PUBLIC ACT 436 OF 2012,
KEVYN D. ORR, THE EMERGENCY MANAGER,
ISSUES THE FOLLOWING ORDER:

*Whereas*, on March 28, 2013, Michigan Public Act 436 of 2012 ("PA 436") became effective and Kevyn D. Orr became the Emergency Manager (the "EM") for the City of Detroit (the "City") with all the powers and duties provided under PA 436; and

Pursuant to section 9(2) of PA 436, the EM "shall act for and in the place and stead of" the Detroit Mayor and City Council; and

Section 9(2) of PA 436 also grants the EM "broad powers in receivership to rectify the financial emergency and to assure the fiscal accountability of the [City] and the [City's] capacity to provide or cause to be provided necessary governmental services essential to the public health, safety, and welfare;" and

Pursuant to section 10(1) of PA 436, the EM may "issue to the appropriate local elected and appointed officials and employees, agents, and contractors of the local government the orders the [EM] considers necessary to accomplish the purposes of this act;" and

Section 18(1) of PA 436 provides that "[i]f, in the judgment of the [EM], no reasonable alternative to rectifying the financial emergency of the local government which is in receivership exists, then the [EM] may recommend to the governor and the

state treasurer that the local government be authorized to proceed under chapter 9" of title 11 of the United States Code (the "Bankruptcy Code"); and

Section 18(1) of PA 436 further provides that "[i]f the governor approves of the [EM's] recommendation, the governor shall inform the state treasurer and the emergency manager in writing of the decision.... Upon receipt of the written approval, the emergency manager is authorized to proceed under chapter 9 [of the Bankruptcy Code]. This section empowers the local government for which an emergency manager has been appointed to become a debtor under [the Bankruptcy Code], as required by section 109 of [the Bankruptcy Code], and empowers the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9" of the Bankruptcy Code; and

In accordance with section 18 of PA 436, the EM has recommended to the Governor of Michigan (the "Governor") and the Michigan State Treasurer (the "State Treasurer") that the City be authorized to proceed under chapter 9 of the Bankruptcy Code (the "Recommendation"); and

The Governor has provided the State Treasurer and the EM with his written approval of the Recommendation, a true and correct copy of which is attached hereto as Exhibit A, thereby authorizing the City to proceed under chapter 9.

**It is hereby ordered that:**

1. The City shall file a petition for relief under chapter 9 of the Bankruptcy Code (the "Petition") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court").

2. The City's Corporation Counsel, financial advisors, outside legal advisors and other officers and employees of the City, as applicable, are hereby authorized and directed, on behalf of and in the name of the City, to execute and verify the Petition and related Bankruptcy Court filings and perform any and all such acts as are reasonable, appropriate, advisable, expedient, convenient, proper or necessary to carry out this Order, as and to the extent directed by the EM or his designee.

3. If any component of this Order is declared illegal, unenforceable or ineffective in a legal or other forum or proceeding such component shall be deemed severable so that all other components contained in this Order shall remain valid and effective.

4. This Order is effective immediately upon the date of execution below.

5. This Order shall be distributed to the Mayor, City Council members and all department heads.

2

13-53846-swr    Doc 10    Filed 07/18/13    Entered 07/18/13 21:26:17    Page 8 of 14    32
13-53846-tjt    Doc 2334-2    Filed 12/27/13    Entered 12/27/13 13:37:04    Page 8 of 14

6. The EM may modify, rescind, or replace this Order at any time.

Dated: July 18, 2013    By: _____
                              Kevyn D. Orr
                              Emergency Manager
                              City of Detroit

cc:   State of Michigan Department of Treasury
      Mayor David Bing
      Members of Detroit City Council

3

# EXHIBIT A

**Governor's Written Approval of Recommendation**



STATE OF MICHIGAN
EXECUTIVE OFFICE
LANSING

RICK SNYDER
GOVERNOR

BRIAN CALLEY
LT. GOVERNOR

VIA HAND AND ELECTRONIC DELIVERY

July 18, 2013

Kevyn D. Orr
Emergency Manager
City of Detroit
Coleman A. Young Municipal Center
2 Woodward Ave., Suite 1126
Detroit, MI 48226

Andrew Dillon
State Treasurer
Michigan Department of Treasury
4th Floor Treasury Building
430 W. Allegan Street
Lansing, MI 48992

Re: Authorization to Commence Chapter 9 Bankruptcy Proceeding

Dear Mr. Orr and Mr. Dillon,

I have reviewed Mr. Orr's letter of July 16, 2013, requesting my approval of his recommendation to commence a bankruptcy proceeding for the City of Detroit under Chapter 9 of title 11 of the United States Code. As you know, state law requires that any such recommendation must first be approved by the Governor before the emergency manager may take that step. MCL 141.1558. For the reasons discussed below, I hereby approve that recommendation and authorize Mr. Orr to make such a filing.

## Current Financial Emergency

In reviewing Mr. Orr's letter, his Financial and Operating Plan, and his report to creditors, it is clear that the financial emergency in Detroit cannot be successfully addressed outside of such a filing, and it is the only reasonable alternative that is available. In other words, the City's financial emergency cannot be satisfactorily rectified in a reasonable period of time absent this filing.

I have reached the conclusion that this step is necessary after a thorough review of all the available alternatives, and I authorize this necessary step as a last resort to return this great City to financial and civic health for its residents and taxpayers. This decision comes in the wake of 60 years of decline for the City, a period in which reality was often

GEORGE W. ROMNEY BUILDING • 111 SOUTH CAPITOL AVENUE • LANSING, MICHIGAN 48909
www.michigan.gov

13-53846-swr    Doc 10    Filed 07/18/13    Entered 07/18/13 21:26:17    Page 11 of 14    35
13-53846-tjt    Doc 2334-2    Filed 12/27/13    Entered 12/27/13 13:37:04    Page 11 of 14

ignored. I know many will see this as a low point in the City's history. If so, I think it will also be the foundation of the City's future – a statement I cannot make in confidence absent giving the City a chance for a fresh start, without burdens of debt it cannot hope to fully pay. Without this decision, the City's condition would only worsen. With this decision, we begin to provide a foundation to rebuild and grow Detroit.

Both before and after the appointment of an emergency manager, many talented individuals have put enormous energy into attempting to avoid this outcome. I knew from the outset that it would be difficult to reverse 60 years of decline in which promises were made that did not reflect the reality of the ability to deliver on those promises. I very much hoped those efforts would succeed without resorting to bankruptcy. Unfortunately, they have not. We must face the fact that the City cannot and is not paying its debts as they become due, and is insolvent.

After reading Mr. Orr's letter, the Financial and Operating Plan, and the report to creditors, I have come to four conclusions.

1. Right now, the City cannot meet its basic obligations to its citizens.

2. Right now, the City cannot meet its basic obligations to its creditors.

3. The failure of the City to meet its obligations to its citizens is the primary cause of its inability to meet its obligations to its creditors.

4. The only feasible path to ensuring the City will be able to meet obligations in the future is to have a successful restructuring via the bankruptcy process that recognizes the fundamental importance of ensuring the City can meet its basic obligations to its citizens.

I will explain how I came to each conclusion.

**Inability to Meet Obligations to Its Citizens.** As Mr. Orr's Financial and Operating Plan and the June 14 Creditor Proposal have noted, the scale and depth of Detroit's problems are unique. The City's unemployment rate has nearly tripled since 2000 and is more than double the national average. Detroit's homicide rate is at the highest level in nearly 40 years, and it has been named as one of the most dangerous cities in America for more than 20 years. Its citizens wait an average of 58 minutes for the police to respond to their calls, compared to a national average of 11 minutes. Only 8.7% of cases are solved, compared to a statewide average of 30.5%. The City's police cars, fire trucks, and ambulances are so old that breakdowns make it impossible to keep up the fleet or properly carry out their roles. For instance, only a third of the City's ambulances were in service in the first quarter of 2013. Similarly, approximately 40% of the City's street lights were not functioning in that quarter and the backlog of complaints is more than 3,300 long. Having large swaths of largely abandoned structures -- approximately 78,000 – creates additional public safety problems and reduces the quality of life in the City. Mr. Orr is correct that meeting the obligations the City has to

its citizens to provide basic services requires more revenue devoted to services, not less.

**Inability to Meet Obligations to Its Creditors.** The City has more than $18 billion in accrued obligations. A vital point in Mr. Orr's letter is that Detroit tax rates are at their current legal limits, and that even if the City was legally able to raise taxes, its residents cannot afford to pay additional taxes. Detroiters already have a higher tax rate than anywhere in Michigan, and even with that revenue the City has not been able to keep up with its basic obligations, both to its citizens and creditors. Detroit simply cannot raise enough revenue to meet its current obligations, and that is a situation that is only projected to get worse absent a bankruptcy filing.

**Failure to Meet Obligations to Citizens Creates Failure to Meet Obligations to Creditors.** Mr. Orr's letter and prior report put in stark reality the dramatic impact of the City's plummeting population. While many who love Detroit still live there, many other Detroiters at heart could not justify the sacrifice of adequate services. The City's population has declined 63% from its peak, including a 28% decline since 2000. That exodus has brought Detroit to the point that it cannot satisfy promises it made in the past. A decreasing tax base has made meeting obligations to creditors impossible. Mr. Orr is correct when he says the City cannot raise the necessary revenue through tax increases, and it cannot save the necessary revenue through reducing spending on basic services. Attempts to do so would only decrease the population and tax base further, making a new round of promises unfulfillable.

**Only One Feasible Path Offers a Way Out.** The citizens of Detroit need and deserve a clear road out of the cycle of ever-decreasing services. The City's creditors, as well as its many dedicated public servants, deserve to know what promises the City can and will keep. The only way to do those things is to radically restructure the City and allow it to reinvent itself without the burden of impossible obligations. Despite Mr. Orr's best efforts, he has been unable to reach a restructuring plan with the City's creditors. I therefore agree that the only feasible path to a stable and solid Detroit is to file for bankruptcy protection.

The past weeks have reaffirmed my confidence that Mr. Orr has the right priorities when it comes to the City of Detroit. I am reassured to see his prioritization of the needs of citizens to have improved services. I know we share a concern for the public employees who gave years of service to the City and now fear for their financial future in retirement, and I am confident that all of the City's creditors will be treated fairly in this process. We all believe that the City's future must allow it to make the investment it needs in talent and in infrastructure, all while making only the promises it can keep. Let us remain in close communication regarding measures Mr. Orr might take so we can discuss the possible impacts that might occur both within and outside of the City.

### Contingencies

2012 PA 436 provides that my approval of the recommendation to commence a Chapter 9 proceeding may place contingencies on such a filing. MCL 141.1558(1). I am choosing not to impose any such contingencies today. Federal law already contains the most important contingency – a requirement that the plan be legally executable. 11 USC 943(b)(4).

### Conclusion

In conclusion, I find Mr. Orr's Recommendation Letter to be persuasive, especially in conjunction with his prior reports laying out the level of services the City can provide and its financial ability to meet its obligations to creditors. I am also convinced that Mr. Orr has exercised his best efforts to arrive at a restructuring plan with the City's creditors outside of bankruptcy, to no avail. Given these facts, the only feasible path to sustainability for the City of Detroit is a filing under chapter 9 of the bankruptcy code. Therefore, I hereby approve Mr. Orr's recommendation and authorize the emergency manager to make such a filing on behalf of the City of Detroit and to take all actions that are necessary and appropriate toward that end.

Sincerely,

Richard D. Snyder
Governor
State of Michigan