# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                    Chapter 9

CITY OF DETROIT, MICHIGAN.        No. 13-53846
    Debtor.

HON. STEVEN W. RHODES

_____/

## ATTORNEY GENERAL BILL SCHUETTE'S
## STATEMENT REGARDING THE MICHIGAN CONSTITUTION
## AND THE BANKRUPTCY OF THE CITY OF DETROIT

Bill Schuette
Attorney General

John J. Bursch
Solicitor General

B. Eric Restuccia
Deputy Solicitor General

Larry Brya
Special Assistant Attorney General

Michael Bell
Patrick Fitzgerald
Linus Banghart-Linn
Heather Meingast
Will Bloomfield
Assistant Attorneys General

Attorneys for
Attorney General Bill Schuette
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-3203
BellM1@michigan.gov
P47890

Dated:  August 19, 2013

# TABLE OF CONTENTS

Page

Table of Contents ...................................................................i

Index of Authorities.................................................................ii

Concise Statement of Issue Presented......................................v

Statement of Interest of Attorney General.............................1

Introduction...............................................................................2

Argument....................................................................................5

I.   The City of Detroit is eligible to proceed under Chapter 9,
     but the City remains subject to Michigan's Constitution. ..............5

II.  Michigan's Constitution bars the diminution or impairment
     of pensions by any means.................................................................9

     A.   The Michigan Constitution established that pensioners
          have a contractual right to their pensions. ...........................9

     B.   Michigan's constitutional protection of pensions is
          broader than that afforded to ordinary contracts. ...............13

     C.   The Bankruptcy Code recognizes the State's
          constitutional limits on municipalities in Chapter 9
          bankruptcy. ...........................................................................17

Conclusion and Relief Requested...........................................19

i

# INDEX OF AUTHORITIES

Page

## Cases

*Ass'n of Prof'l & Technical Employees v. City of Detroit,*
398 N.W.2d 436 (Mich. Ct. App. 1986) ................................................ 11

*Attorney General v. Connolly,*
160 N.W. 581 (Mich. 1916) .................................................................... 9

*Brown v. Highland Park,*
30 N.W.2d 798 (Mich. 1948) .................................................................. 9

*Cranford v. Wayne County,*
402 N.W.2d 64 (Mich. 1986) ................................................................ 15

*Energy Reserves Group, Inc. v. Kan. Power & Light Co.,*
459 U.S. 400 (1983) ........................................................................ 3, 13

*Garcia v. San Antonio Metro. Transit Auth.,*
469 U.S. 528 (1985) ............................................................................ 17

*In re Advisory Opinion re Constitutionality of 1972 PA 258,*
209 N.W.2d 200 (Mich. 1973) ......................................................... 12, 16

*In re City of Stockton,*
475 B.R. 720 (Bankr. E.D. Cal. 2012) ......................................... 6, 13, 14

*In re City of Vallejo,*
403 B.R. 72 (Bankr. E.D. Cal. 2009) ................................................... 18

*In re City of Vallejo,*
432 B.R. 262 (E.D. Cal. 2010) ............................................................. 18

*In re Request for Advisory Opinion Regarding Constitutionality of
2011 PA 38,*
806 N.W. 2d 683 (Mich. 2011) ............................................................. 14

*New York v. United States,*
505 U.S. 144 (1992) .............................................................................. 8

13-53846-swr   Doc 481   Filed 08/19/13   Entered 08/19/13 15:49:02   Page 3 of 27   477
13-53846-tjt   Doc 2334-12   Filed 12/27/13   Entered 12/27/13 13:37:04   Page 3 of 27

*Romein v. General Motors Corp.*,
  462 N.W.2d 555 (Mich. 1990).......................................................3, 13, 14

*Seitz v. Probate Judges Ret. Sys.*,
  474 N.W.2d 125 (Mich. Ct. App. 1991) .........................................11, 16

*Stone v. State*,
  651 N.W.2d 64 (Mich. 2002)...............................................................15

*Studier v. Michigan Pub. Sch. Employees' Retirement Bd.*,
  698 N.W.2d 350 (Mich. 2005)........................................................14, 16

*United States Trust Co. v. New Jersey*,
  431 U.S. 1 (1977) ..................................................................................14

## Statutes

11 U.S.C. § 109(c)(2) ...................................................................................2

11 U.S.C. § 1121(a)......................................................................................2

11 U.S.C. § 1121(c) .....................................................................................2

11 U.S.C. § 365 ..........................................................................................18

11 U.S.C. § 903 ..............................................................................8, 17, 18

11 U.S.C. § 904 ..........................................................................................18

11 U.S.C. § 941 ......................................................................................2, 6

11 U.S.C. § 943(b)(4)....................................................................................2

Mich Comp. Laws § 141.1549(9)(a)...........................................................5

Mich Comp. Laws § 141.1549(9)(b)...........................................................5

Mich Comp. Laws § 141.1549(9)(c) ...........................................................5

Mich. Comp. Laws § 14.28 ........................................................................1

Mich. Comp. Laws § 141.1549(2) ..............................................................5

iii

13-53846-swr   Doc 481   Filed 08/19/13   Entered 08/19/13 15:49:02   Page 4 of 27   478
13-53846-tjt   Doc 2334-12   Filed 12/27/13   Entered 12/27/13 13:37:04   Page 4 of 27

Mich. Comp. Laws § 141.1549(3)(d) .............................................................. 5

Mich. Comp. Laws § 141.1552(1)(m)(ii) ...................................................... 7

Mich. Comp. Laws § 141.1558(1) ..................................................... 5, 6, 7

Mich. Comp. Laws § 15.151 ...................................................................... 5

## Other Authorities

1 Official Record of the State of Michigan Constitutional
  Convention of 1961, 770–71 ........................................................ 10, 12

2012 PA 436 ....................................................................................... 5, 6, 7

5 William J. Norton, Jr. & William L. Norton III, Norton
  Bankruptcy Law and Practice § 90:4 (3d ed. 2009) ............................ 8

6 Collier on Bankruptcy ¶ 903.02 (Alan N. Resnick and Henry J.
  Sommer eds. 16th ed.) ......................................................................... 6

AG Op. No. 7272, June 13, 2013 ............................................................ 15

Article 11, §11-101, ¶ 3 of the City of Detroit's Home Rule City
  Charter ............................................................................................... 11

## Constitutional Provisions

Cal. Const. art. I, § 9 .............................................................................. 14

Mich. Const. art. I, § 3 .............................................................................. 3

Mich. Const. art. I, § 4 .............................................................................. 3

Mich. Const. art. I, § 10 ........................................................................ 3, 13

Mich. Const. art. V, § 21 ........................................................................... 1

Mich. Const. art. IX, § 24 .............................................................. passim

Mich. Const. art. X, § 2 ..................................................................... 11, 15

Mich. Const. art. XI, § 1 ....................................................................... 1, 5

## CONCISE STATEMENT OF ISSUE PRESENTED

1.    Whether the City of Detroit was eligible to file Chapter 9 bankruptcy under 11 U.S.C. § 109(c).

## STATEMENT OF INTEREST OF ATTORNEY GENERAL

The Attorney General is the chief legal officer for the State of Michigan and is empowered by State law to intervene and appear in any legal action in which the People of Michigan "in his own judgment" have an interest. Mich. Comp. Laws § 14.28. His office is created by the Michigan Constitution, and he is elected by the people. Mich. Const. art. V, § 21. He is sworn to uphold the Michigan Constitution. Mich. Const. art. XI, § 1.

Consistent with this responsibility and authority, Attorney General Bill Schuette participates in this case to ensure that all necessary actions are taken to fully protect (a) the City's pensioners (as required by the Michigan Constitution and other applicable law), (b) the art collection of the Detroit Institute of Arts, and (c) all other interests of the People of Michigan.

The City of Detroit is Michigan's largest city and municipal employer. It is imperative that this bankruptcy yield a new, revitalized City, but this process must occur in such a way as to ensure the City abides by its constitutional limitations. The State's most fundamental law—its Constitution—cannot be sacrificed during the process.

1

13-53846-swr   Doc 481   Filed 08/19/13   Entered 08/19/13 15:49:02   Page 7 of 27   481
13-53846-tjt   Doc 2334-12   Filed 12/27/13   Entered 12/27/13 13:37:04   Page 7 of 27

## INTRODUCTION

Michigan Attorney General Bill Schuette does not take issue with the City of Detroit's eligibility to file a Chapter 9 bankruptcy under 11 U.S.C. § 109(c)(2). Michigan Governor Rick Snyder had the authority to and did properly authorize the City's filing, and there is no serious question that the City is insolvent. Accordingly, this Court is the proper venue to decide the issues related to the City's financial crisis.

But a bankruptcy filing does not relieve the City and its emergency manager of their obligation to follow Michigan's Constitution. And that restriction includes the constitutional provision that prohibits a political subdivision like Detroit from diminishing or impairing an accrued financial benefit of a pension plan or retirement system. Mich. Const. art. IX, § 24.

Unlike other chapters of the Bankruptcy Code, Chapter 9 authorizes only one party to propose a plan in a municipal bankruptcy—the debtor. *Compare* 11 U.S.C. § 941 (Chapter 9 debtor "shall file a plan") *with* 11 U.S.C. § 1121(a), (c) ("any party in interest" "may" file a plan). And when the City proposes its plan, it must act within all of the state-law limits that guide the City's conduct. 11 U.S.C. § 943(b)(4).

2

For example, under Michigan law, the City and its emergency manager have no authority to propose a plan that supports a particular religion or violates an individual's right to religious liberty. Mich. Const. art. I, § 4. Nor could they propose a plan that limits citizens from petitioning the City for redress. Mich. Const. art. I, § 3. Similarly, the City cannot propose a plan that diminishes or impairs accrued pension rights of public employees. Mich. Const. art. IX, § 24.

It has been suggested that the constitutional protection of public pensioners is akin to Michigan's Contracts Clause, which prohibits any law "impairing the obligation of contract." Mich. Const. art. I, § 10. Not so. State and United States Supreme Court decisions have oft recognized that the Contracts Clause prohibition is not absolute and must be "accommodated to the inherent police power of the State 'to safeguard the vital interest of its people.'" *Romein v. General Motors Corp.*, 462 N.W.2d 555, 565 (Mich. 1990) (quoting *Energy Reserves Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 410 (1983)). Insolvency is undoubtedly an exigency that authorizes such an accommodation; thus, there is no conflict between the bankruptcy laws and the Contracts Clause of the U.S. or any state constitution.

3

But under Michigan law, there is no such accommodation when it comes to the accrued financial benefits of a public pension plan or retirement system. The constitutional protection is absolute. So the City can no more authorize a plan that reduces accrued obligations to public pensions than a plan that discriminates on the basis of religion. Accordingly, while the City has the ability to address health benefits or *unaccrued* pension benefits (neither of which Michigan's Constitution specifically protects), *vested* pension benefits are inviolate.

This result is as it should be. According to the Detroit General Retirement System, general City workers like librarians or sanitation workers receive an average payment of roughly $18,000 per year. For retired City police and firefighters, the figure is roughly $30,000 per year, and without the benefit of Social Security payments. These retirees are among Michigan's most vulnerable citizens. The People of Michigan recognized as much and sought to protect them when enacting article IX, § 24. Accordingly, the City of Detroit is constitutionally obligated to keep the People's promise as it proposes a plan that will allow the City to flourish while honoring the lifelong commitment of Detroit's retired public servants.

4

13-53846-swr   Doc 481   Filed 08/19/13   Entered 08/19/13 15:49:02   Page 10 of 27   484
13-53846-tjt   Doc 2334-12   Filed 12/27/13   Entered 12/27/13 13:37:04   Page 10 of 27

# ARGUMENT

## I. The City of Detroit is eligible to proceed under Chapter 9, but the City remains subject to Michigan's Constitution.

Under Public Act 436 of 2012, the City's emergency manager acts as its receiver, and stands in the place of its governing body and chief executive officer.   Mich. Comp. Laws § 141.1549(2).  The manager also represents the City in bankruptcy.   Mich. Comp. Laws § 141.1558(1). He is a public officer subject to the laws applicable to public servants and officers.   Mich. Comp. Laws § 141.1549(3)(d) and (9)(a), (b), and (c). And the emergency manager has taken an oath to uphold the Michigan Constitution.   Mich. Comp. Laws § 15.151; Mich. Const. art. XI, § 1.

As a public officer, and like any citizen of the State, the emergency manager must follow the Michigan Constitution and statutes enacted by the Legislature pursuant to its constitutional authority.  This inter-play of Michigan's Constitution and Public Act 436 requires that the emergency manager abide by all applicable laws in governing the City.

The same obligation to comply with the Michigan Constitution applies to the emergency manager during this Chapter 9 proceeding. "Indeed, absent a specific provision to the contrary, a municipality is required to continue to comply with state law during a Chapter 9 case."

5

13-53846-swr   Doc 481   Filed 08/19/13   Entered 08/19/13 15:49:02   Page 11 of 27   485
13-53846-tjt   Doc 2334-12   Filed 12/27/13   Entered 12/27/13 13:37:04   Page 11 of 27

6 Collier on Bankruptcy ¶ 903.02 (Alan N. Resnick and Henry J. Sommer eds. 16th ed.) This is significant, because under Chapter 9, the City, through the emergency manager, is the only party with authority to propose a plan of adjustment, 11 U.S.C. § 941, and therefore controls the plan process in a way that is unique to bankruptcy law.

The scope of a state's authorization of a municipal-bankruptcy filing is a "question of pure state law" and thus "state law provides the rule of decision." *In re City of Stockton*, 475 B.R. 720, 728–29 (Bankr. E.D. Cal. 2012). The Michigan Legislature cannot enact laws that authorize local governments to violate the Michigan Constitution, and the Legislature's enactment of Public Act 436—specifically the bankruptcy authorization in § 18(1), Mich. Comp. Laws § 141.1558(1)— must thus be construed according to this basic legal principle. This means that when the Legislature enacted Public Act 436 and empowered the City and its emergency manager to pursue bankruptcy, the City and the manager's actions in proposing a reorganization plan remain subject to applicable Michigan law, including article IX, § 24 of Michigan's Constitution.

6

13-53846-swr Doc 481 Filed 08/19/13 Entered 08/19/13 15:49:02 Page 12 of 27 486
13-53846-tjt Doc 2334-12 Filed 12/27/13 Entered 12/27/13 13:37:04 Page 12 of 27

Article IX, § 24 unambiguously prevents public officials from diminishing vested public-employee pension rights:

> The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which *shall not be diminished or impaired* thereby.

Mich. Const. art. IX, § 24 (emphasis added). This provision prohibits the State, its officers, and any of its political units, including the City and its officers, from diminishing or impairing the pension benefits currently being received by retired City pensioners.

The fact that § 18(1), Mich. Comp. Laws § 141.1558(1), does not incorporate article IX, § 24 is of no moment, because the proscription arises by operation of constitutional law. Moreover, it is plain that the Michigan Legislature was aware of this constitutional provision when it enacted Public Act 436 because the Act requires emergency managers appointed under the act to "fully comply with . . . section 24 of article IX of the state constitution of 1963," in the event an emergency manager becomes the trustee for a local unit's pension fund. Mich. Comp. Laws § 141.1552(1)(m)(ii).

7

13-53846-swr Doc 481-2 Filed 08/19/13 Entered 08/19/13 15:49:02 Page 13 of 27
13-53846-tjt Doc 2334-12 Filed 12/27/13 Entered 12/27/13 13:37:04 Page 13 of 487

27

The continued application of state constitutional law during the Chapter 9 case is also consistent with state sovereignty principles, which are incorporated under 11 U.S.C. § 903 (Chapter 9 "does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality . . . ."). See also *New York v. United States*, 505 U.S. 144, 155–66 (1992) (recognizing dual sovereignty and observing that "the Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions"); 5 William J. Norton, Jr. & William L. Norton III, Norton Bankruptcy Law and Practice § 90:4 (3d ed. 2009) ("Without the consent of the municipality, the court may not interfere with any of the political or governmental powers of the debtor, any property or revenues of the debtor, or the debtor's use or enjoyment of any income-producing property.").

Based on these principles, as the City and its emergency manager progress under Chapter 9 and ultimately propose a plan for the City's reorganization, they remain subject to applicable state laws, including the Michigan Constitution and article IX, § 24.

8

13-53846-swr Doc 481 Filed 08/19/13 Entered 08/19/13 15:49:02 Page 14 of 27 488
13-53846-tjt Doc 2334-12 Filed 12/27/13 Entered 12/27/13 13:37:04 Page 14 of 27

## II. Michigan's Constitution bars the diminution or impairment of pensions by any means.

### A. The Michigan Constitution established that pensioners have a contractual right to their pensions.

At common law, public pensions in Michigan were viewed as gratuitous allowances that could be revoked at will because a retiree lacked any vested right in their continuation. *See, e.g., Brown v. Highland Park*, 30 N.W.2d 798 (Mich. 1948); *Attorney General v. Connolly*, 160 N.W. 581 (Mich. 1916). That view is captured succinctly in the Michigan Supreme Court's holding in *Brown*:

> [A] public pension granted by public authorities is *not* a contractual obligation, that the pensioner has *no* vested right, and that a pension is *terminable at the will* of a municipality, at least while acting within reasonable limits.

*Brown*, 30 N.W.2d at 800 (emphasis added).

The People of Michigan reversed this public policy when they adopted art. IX, § 24 in the 1963 Michigan Constitution. The purpose for adopting this provision was made clear by delegates to the 1963 Constitutional Convention. In particular, delegate Richard VanDusen, one of the chief drafters of § 24, explained that accrued financial benefits were a kind of "deferred compensation":

9

Now, it is the belief of the committee that the benefits of the pension plans are in the same deferred compensation for work performed. And with respect to work performed, it is the opinion of the committee that the public employee should have a contractual right to benefits of the pension plan, which should not be diminished by the employing unit after the service has been performed.

1 Official Record of the State of Michigan Constitutional Convention of 1961, 770–71 [hereinafter *Constitutional Convention Record*].

Michigan courts have supported this conclusion and have recognized, repeatedly, that article IX, § 24 is an express and unambiguous statement of the will of the People of the State of Michigan that the accrued financial benefits of each pension plan and retirement system of the State and its political subdivisions "shall not be diminished or impaired." This constitutional promise thus ensures that there is never a time, a place, or a method for diminishing or impairing the State's *or a political subdivision's* obligation with respect to the accrued financial benefits of a pension plan or retirement system.

For example, based on § 24, the Michigan Court of Appeals has held that the City of Detroit's attempt to increase the age at which an employee could receive his vested pension (and thereby *decrease* the amount of pension payments) violated art. IV, § 24. *Ass'n of Prof'l &*

10

*Technical Employees v. City of Detroit*, 398 N.W.2d 436 (Mich. Ct. App. 1986). The Court of Appeals has also held that § 24 prohibits the State or a local pension plan from reducing a retiree's pension. *Seitz v. Probate Judges Ret. Sys.*, 474 N.W.2d 125 (Mich. Ct. App. 1991).

Similarly, § 24 prohibits the City of Detroit and its emergency manager from unilaterally reducing the pensions of existing retirees, because any reduction would diminish or impair the accrued financial benefits previously earned by such retirees. Just as the City and its manager have no authority to propose a plan that supports a particular religion or violates an individual's right to religious liberty (or, for that matter, a plan that seizes the assets of retired employees in violation of the Michigan Constitution's Takings Clause, *see* Mich. Const. art. X, § 2), the City and the emergency manager cannot propose a plan that has the effect of diminishing or impairing the accrued rights of public-employee pensions.[1]

---

[1] Article 11, §11-101, ¶ 3 of the City of Detroit's Home Rule City Charter equally treats and protects the accrued financial benefits of active and retired city employees as contractual obligations that "shall in no event be diminished or impaired."

11

The entire thrust of article IX, § 24 is to safeguard a level of benefits for governmental employees who make a decision to retire. The public employees performed the work relying on a "particular level of benefits." 1 *Constitutional Convention Record* at 770–71 ("the service in reliance upon the then prescribed level of benefits"). The *post hoc* reduction of these vested rights would create an untenable position for the retirants by reducing their compensation after the benefits have already vested. *See In re Advisory Opinion re Constitutionality of 1972 PA 258,* 209 N.W.2d 200, 202–03 (Mich. 1973) (rejecting any new conditions on accrued financial benefits that were "unreasonable and hence subversive of the constitutional protection"). It is analogous to forcing the pensioners to return deferred compensation. It is this very kind of reduction of pension payments that the constitutional provision is designed to prevent.

In sum, it cannot be reasonably disputed that the City has been authorized for and is eligible to file Chapter 9 bankruptcy. But in moving forward and proposing a plan, the City and its manager are bound by the strictures of Michigan law, including article IX, § 24 of Michigan's Constitution.

## B. Michigan's constitutional protection of pensions is broader than that afforded to ordinary contracts.

At the core of a bankruptcy process is the adjustment of the relationship between a debtor and its creditors, and attendant in that process is the impairment of contracts. *In re Stockton*, 478 B.R. at 15. The State of Michigan's Contracts Clause, Mich. Const. art. I, § 10, mirrors that of the United States Constitution and the contracts clauses of other states, and it is well understood that such a provision must stand aside in the bankruptcy process. But the subversion of a state constitution's contracts clause does not come about as a result of bankruptcy law or the Supremacy Clause of the United States Constitution; a contracts clause steps aside as a matter of state law.

Both the Michigan Supreme Court and the United States Supreme Court have recognized that a constitutional contracts clause is not absolute. The prohibition against impairing contracts must be "accommodated to the inherent police power of the State 'to safeguard the vital interests of the people.'" *Romein*, 462 N.W.2d at 565 (quoting *Energy Reserves Group*, 459 U.S. at 410). Thus, state action can impair a contract provided that there is a legitimate public purpose for the impairment (i.e., the state is validly exercising its police power and not

13

merely providing a benefit to special interests), and the means of adjustment are necessary and reasonable. *Romein*, 462 N.W.2d at 565–66 (citing *United States Trust Co. v. New Jersey*, 431 U.S. 1, 22-23 (1977)). Accordingly, a Michigan political subdivision is cloaked with the authority of Michigan law when it proposes a plan that impairs ordinary contracts. Here, for example, it cannot be disputed that the police power of the State and the City of Detroit is being exercised for a necessary and reasonable public purpose—to restore basic governmental services (police and fire protection, street lights, ambulance services, etc.) to the citizens of Detroit.

But article IX, § 24 is not similarly subject to such exigencies.[2] The 1963 Constitution and the language of § 24 is understood according to its plain meaning. *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 806 N.W. 2d 683, 693 (Mich. 2011); *Studier v. Michigan Pub. Sch. Employees' Retirement Bd.*, 698 N.W.2d 350, 356–57 (Mich. 2005).

---

[2] Article IX, § 24 makes the City of Detroit's bankruptcy quite different than the one at issue in *In re Stockton*, because the California Constitution contains no specific protection for pensions, only a generic Contracts Clause. Cal. Const. art. I, § 9.

14

13-53846-swr   Doc 481   Filed 08/19/13   Entered 08/19/13 15:49:02   Page 20 of 27   494
13-53846-tjt   Doc 2334-12   Filed 12/27/13   Entered 12/27/13 13:37:04   Page 20 of
27

In other words, article IX, § 24 is an impermeable imperative, and its place in the pantheon of Michigan constitutional rights is akin to the prohibition on taking property without just compensation, Mich. Const. art. X, § 2, or any other constitutional prohibition on the power of a government to affect the life, liberty, and property of its citizenry. Constitutional provisions of this nature are innate to the People of Michigan—not subject to discharge by exigency including a Chapter 9 proceeding under the federal Bankruptcy Code. The City and its emergency manager therefore cannot jettison article IX, § 24 when they propose a reorganization plan.[3]

Importantly, article IX, § 24 is not an absolute bar on the City's ability to adjust its debts in a Chapter 9 proceeding. The City may negotiate to adjust contractual terms under pension plans and retirement systems. *Cranford v. Wayne County*, 402 N.W.2d 64, 66 (Mich. 1986); *see also Stone v. State*, 651 N.W.2d 64 (Mich. 2002). Similarly, the City is not prevented from taking even unilateral action

_____

[3] The same is true for similar reasons with respect to the City's role as trustee of the art collection of the Detroit Institute of Arts. Because the collection is held in charitable trust, the beneficial interest in the collection ultimately rests with the People of Michigan and is likewise inviolate. See AG Op. No. 7272, June 13, 2013.

with respect to *unaccrued* financial benefits. *Advisory Opinion re Constitutionality of 1972 PA 258*, 209 N.W.2d at 202–03 (1973) ("the legislature cannot diminish or impair accrued financial benefits, but we think it may properly attach new conditions for earning financial benefits which have not accrued."); *see also Seitz*, 474 N.W.2d at 127. And § 24 does not implicate the City's obligation with respect to promised health benefits. *Studier*, 698 N.W.2d at 358 ("the ratifiers of our Constitution would have commonly understood 'financial' to include only those benefits that consist of monetary payments, and not benefits of a nonmonetary nature such as health care benefits").

These are all constitutionally acceptable ways for the City of Detroit to reduce its liabilities for its pension plans without violating the constitutional rights of existing retirees. But to the extent the City or its manager desire to diminish or impair *vested* pension benefits, Michigan law prohibits them from even proposing such a plan.

## C. The Bankruptcy Code recognizes the State's constitutional limits on municipalities in Chapter 9 bankruptcy.

Independent of the City's obligation to act within state-law limits when proposing a plan, article IX, § 24 applies to a Chapter 9 bankruptcy by virtue of 11 U.S.C. § 903. Section 903 guarantees that state law continues to bind a political subdivision's actions once in bankruptcy:

> This chapter [9] does not limit or impair the power of a State to control, *by legislation or otherwise*, a municipality of or in such State in the exercise of the political or governmental powers of such municipality . . . .

11 U.S.C. § 903. In § 903, Congress protected the "States as States" as dual sovereigns under the federal Constitution. State participation in the national political process is the "fundamental limitation that the [United States] constitutional scheme imposes on" the powers granted to the federal government. *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 554 (1985). Section 903 is a result of the states' place in the constitutional framework and participation in federal government and enacted legislation. *Id.* at 552. By including § 903 in the Bankruptcy Code, Congress preserved state constitutional protection provisions, like § 24, within the Code's structure and purpose.

17

Indeed, nowhere in the Bankruptcy Code provisions applicable to Chapter 9 did Congress expressly provide for the treatment of municipalities' pension plans or retirement systems. Chapter 9's applicable provisions, structure, and purpose do not disclose any Congressional intent to preempt state constitutional protection provisions like § 24.[4]

Moreover, through Chapter 9 Congress has recognized that the bankruptcy of a State's political subdivision is a particular concern of a state and its relations with its political subdivisions. This conclusion is embedded in the preservation of the states of complete control over their political subdivision in the exercise of the political or governmental powers of such subdivisions, 11 U.S.C. § 903.

Consistent with § 903, the Bankruptcy Code imposes strict limitations on the power of this Court to direct municipal action regarding its political process, property, or revenue "unless the debtor consents." 11 U.S.C. § 904. Just as the City lacks the authority under

---

[4] The pension obligations in question are not executory contracts subject to rejection under 11 U.S.C. § 365. This further distinguishes them from the collective bargaining agreement treatment set forth in *Vallejo*. *In re City of Vallejo*, 432 B.R. 262 (E.D. Cal. 2010*); In re City of Vallejo*, 403 B.R. 72 (Bankr. E.D. Cal. 2009).

18

13-53846-swr   Doc 481   Filed 08/19/13   Entered 08/19/13 15:49:02   Page 24 of 27   498
13-53846-tjt   Doc 2334-12   Filed 12/27/13   Entered 12/27/13 13:37:04   Page 24 of 27

Michigan law to propose a plan that diminishes accrued pension rights, it similarly lacks power to consent to any proposed action that would violate the Michigan Constitution.

## CONCLUSION AND RELIEF REQUESTED

This matter is only at the eligibility stage, and, as noted above, the Attorney General does not take issue with the City's eligibility to file bankruptcy. Michigan Governor Rick Snyder had the authority to and did properly authorize the City's filing, and there is no serious question that the City is insolvent.

But through this submission, the Attorney General seeks to illuminate the legal rights and obligations of the City and its emergency manager as they move forward and exercise their exclusive Chapter 9 authority to propose a plan of reorganization. Those obligations include the requirement to act in accord with State law, including article IX, § 24's prohibition on a Michigan political subdivision's authority to diminish or impair accrued pension rights. In this initial filing, the Attorney General also seeks to apprise the Court of his legal positions, and he will offer additional arguments and support for his positions at the appropriate stages of this important proceeding.

19

13-53846-swr  Doc 481  Filed 08/19/13  Entered 08/19/13 15:49:02  Page 25 of 27  499
13-53846-tjt  Doc 2334-12  Filed 12/27/13  Entered 12/27/13 13:37:04  Page 25 of 27

Respectfully submitted,

Bill Schuette
Attorney General

John J. Bursch
Solicitor General

B. Eric Restuccia
Deputy Solicitor General

Larry Brya
Special Assistant Attorney General

/s/ Michael Bell

Michael Bell
Patrick Fitzgerald
Linus Banghart-Linn
Heather Meingast
Will Bloomfield
Assistant Attorneys General

Attorneys for
Attorney General Bill Schuette
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-3203
BellM1@michigan.gov
Dated:  August 19, 2013          P47890

20

13-53846-swr  Doc 481   Filed 08/19/13   Entered 08/19/13 15:49:02   Page 26 of 27
13-53846-tjt  Doc 2334-12   Filed 12/27/13   Entered 12/27/13 13:37:04   Page 26 of 500
27

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on August 19, 2013, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/s/ Michael Bell
Assistant Attorney General
Attorney for
Attorney General Bill Schuette
Revenue and Collections
Division
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-3203
BellM1@michigan.gov
Dated: August 19, 2013                    P47890

13-53846-swr Doc 481-2 Filed 08/19/13 Entered 08/19/13 15:49:02 Page 27 of 27
13-53846-tjt Doc 2334-12 Filed 12/27/13 Entered 12/27/13 13:37:04 Page 27 of 501

27