# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN

Chapter 9
Case No. 13-53846-swr
Hon. Steven W. Rhodes

---

## CREDITOR, RETIRED DETROIT POLICE MEMBERS ASSOCIATION'S FIRST SET OF INTERROGATORIES TO DEBTOR, FIRST REQUEST FOR PRODUCTION OF DOCUMENTS, AND FIRST REQUEST TO ADMIT

RETIRED DETROIT POLICE MEMBERS ASSOCIATION ("RDPMA"), by and through its attorneys, Strobl & Sharp, P.C., submits the following Interrogatories, Request for Production of Documents, and Request to Admit to the City of Detroit ("City of Detroit" or "Debtor"). The answers must be served upon the undersigned attorney on or before thirty (30) days after service of the herein Interrogatories. The answer should be signed and sworn to by the person making the answers to these Interrogatories. However, the answers should include information obtained by and available to said party and all agents, servants and employees, representatives, private investigators or others who are in possession or may have information for or on behalf of said party. These interrogatories shall be deemed continuing and supplemental answers shall be required immediately upon receipt thereof, if said party directly or indirectly obtains further or different information from the time the Answers are served to the time of Trial.

## DEFINITIONS

For the purpose of these interrogatories and answers thereto, the following definitions shall apply:

1.    "Document" means any paper or other writing and any item of graphic material, however recorded or reproduced, including all drafts, copies or other preliminary material which are different   - 1 -in any way from the executed or final document, regardless of whether designated "confidential", "privileged", or otherwise restricted, wherever located, whether an

1

original or a copy, including but not limited to agreements, contracts, financial statements, invoices, minutes, work sheets, work papers, summaries, and other written records or recordings of any conferences, meetings, visits, interviews, or telephone conversations, financial and statistical data, analyses, surveys, transcripts of testimonies, statements, interviews, affidavits, press releases, memoranda, drafts, memo pads, notes, indices, tabulations, graphs, reports, papers, records, inter-office communications, files, electronic data processing cards, tapes, print-outs, papers or other recordings, CD-ROMs, tables, compilations, catalogues, telegrams, letters, photographs, diaries, calendars, drawings, data-reports, printed matter, correspondence, communications received or sent, books, brochures, advertising, circulars, mailings and publications; and any copy containing thereon or having attached thereto any alterations, notes, comments or other material shall be deemed a separate document from the original or any other copy not containing such material within the foregoing definition.

2.     "Person" shall mean the plural as well as the singular and shall include any natural person, and any firm, association, partnership, joint venture, business trust, corporation, governmental or public entity, department, agency, office, or any other form or legal entity.

3.     "You" or "Your" shall mean and include Debtor and any other related or affiliated entity, as well as all officers, employees, members, agents and representatives acting on behalf of such entities.

4.     To "identify" a document (as hereinabove defined) or any other thing means to state its type (e.g., letter, memorandum, periodical) or otherwise describe it, and in addition supply the following information with respect thereto, where applicable:

> (a)     The identity of the person who prepared it;
>
> (b)     The identity of the person who signed it or in whose name it was issued;
>
> (c)     The identity of the person to whom it was addressed or distributed;
>
> (d)     The nature and substance of the writing with sufficient particularly to enable it to be identified;
>
> (e)     The date, and if it bears no date, its approximate date;
>
> (f)     Its physical location, the name and address of its custodian or custodians, and when it came into your possession or control, if such is the case;
>
> (g)     If any such document was, but is no longer in your possession or subject to your control, "identify" includes a description of what disposition was made of it and the identity of the person who presently has custody of it; and

2

(h)    The specific portions of such document, if less than all of such document, which relates to, supports or is relied upon with reference to the subject of the specific inquiry.

5.    To "identify" or provide the "identity" of a person or entity, please provide the following:

As to an individual, state his or her

(a)    full and customarily used name;

(b)    present or last known residence and business address; and

(c)    present or last known employer and position(s) held with that employer.

As to an entity or any person other than an individual, state

(a)    its legal name and any other names used by it;

(b)    the form or manner of its organization (e.g. partnership, corporation, etc.); and

(c)    its address and principal place of business.

6.    To "identify" a verbal communication shall mean to state with respect thereto:

(a)    The identity of each person who participated in the communication and the name of each person who was present at the time it was made;

(b)    By whom each such person was employed and whom each such person represented or purported to represent making such communication;

(c)    The date when such communication took place;

(d)    The place where such communication took place.

(e)    What each person said, or if not known, the substance thereof; and

(f)    The identification of each document pertaining to such verbal communication.

7.    To "identify" a place, geographical area or location shall mean to state the number, street, municipality, state or province and country if without the United States wherein such place or geographical area is located.

3

8. "Communication," unless otherwise modified, shall mean both verbal communication and communication by document (as hereinabove defined).

9. "To "describe," "describe in detail," "state," or "state in detail" shall mean to relate as completely as possible each and every act, omission, incident, event, condition, circumstance or thing relating directly or indirectly to the subject matter of the description, including all pertinent dates, and without limiting the foregoing, to:

    (a)    Identify all documents directly or indirectly related thereto;

    (b)    Identify all communications directly or indirectly related thereto;

    (c)    Identify all persons directly or indirectly related thereto; and

    (d)    Identify all locations applicable to any events, incidents, conditions, circumstances or things directly or indirectly related thereto.

10. "Date" means the exact day, month and year if ascertainable or, if not, the closest approximation that can be made thereto by means of, if necessary, location in relationship to other events.

## INSTRUCTIONS

1. Each answer given in response to an Interrogatory shall identify the number of the Interrogatory and, if relevant, any sub-part being responded to.

2. Each of the Interrogatories is intended to be a continuing request and it is demanded that in the event at a later date you obtain any additional facts or form any conclusions, opinions, or intentions different from those set forth in your answers, you shall amend your answers to these Interrogatories promptly and sufficiently in advance of any trial to set forth such facts, conclusions, opinions, or intentions.

3. If you know of the existence, past or present, of any document described in any request for production but are unable to produce such document because it is not presently in your possession, custody or control, you shall so state and shall identify such document in response to the request for production in question. Further, you shall:

    (a)    Specify the nature of the document (such as, for example, a letter, telegram, memorandum, etc.).

    (b)    State the date, if any, appearing on the document or, if none, the date that such document was prepared.

    (c)    Identify each person, if any, who was an addressee thereof, whether or not the name of such person appears on the document.

4

(d)     State whether the document is still in existence.

(e)     Identify each person who presently has possession, custody or control of the document.

(f)     Identify each person who has read or examined all or any portion of the document.

(g)     State the reason or reasons for the preparation of the document.

(h)     State the location or locations where the document was prepared.

(i)     If the document was at any time transmitted by one person to another, state their names and the location of the person transmitting the document at the time of transmittal and the location of the person receiving same at the time of receipt.

(j)     Describe in general the subject matter of the document.

4.     If relevant, state in detail each fact upon which you base your contention that a document is protected by the attorney-client privilege and/or the work product doctrine.

5.     The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; and in similar fashion, the use of the masculine form of a pronoun shall be construed to also include within its meaning the feminine form of the pronoun, and vice versa; and in a similar fashion, the use of any tense of a verb shall be construed to also include within its meaning all other tenses of the verb so used.

## INTERROGATORIES

INTERROGATORY NO. 1: Please provide the name, title, address and telephone number of each person answering or participating in preparing the responses to these Interrogatories.

**ANSWER**:

INTERROGATORY NO. 2:  Please identify all persons who have knowledge of any of the allegations set forth in Debtor's Statement of Qualification.  For each person identified, please provide a summary of said person's knowledge and his or her anticipated testimony, if any.

5

**ANSWER**:


INTERROGATORY NO. 3:  Please identify any expert witnesses that Debtor intends to use at the trial of this matter.  For each expert witness please identify the area of their expertise, their anticipated testimony, and please provide curriculum vitae or resume summarizing said expert's credentials.

      **ANSWER**:


INTERROGATORY NO. 4:  Please identify any and all documents Debtor has in its possession, custody or control which Debtor knows of, and/or which Debtor intends to offer, utilize or introduce at trial which establish, relate or refer to any fact, allegation and/or contention in or defense to Debtor's claims.

      **ANSWER**:


INTERROGATORY NO. 5:  Please identify the name and title of all individuals who were invited to attend the June 14, 2013 presentation.

      **ANSWER:**


INTERROGATORY NO. 6:  Please identify any and all individuals who attended the June 14,

6

2013 presentation.

**ANSWER:**

INTERROGATORY NO. 7:   Please identify any and all individuals with settlement authority who attended the June 14, 2013 presentation.

**ANSWER:**

INTERROGATORY NO. 8:   Please identify any and all materials that were distributed at the June 14, 2013 presentation.

**ANSWER:**

INTERROGATORY NO. 9:   Please identify the substance of any negotiations that took place at the June 14, 2013 presentation including any offers and counter offers that were exchanged.

**ANSWER:**

INTERROGATORY NO. 10:   Please identify the name and title of all individuals who were invited to attend the June 20, 2013 meeting.

**ANSWER:**

7

13-53846-swr   Doc 594   Filed 08/23/13   Entered 08/23/13 17:07:27   Page 7 of 23   560
13-53846-tjt   Doc 2334-14   Filed 12/27/13   Entered 12/27/13 13:37:04   Page 7 of 23

INTERROGATORY NO. 11: Please identify the representatives of the City's unions and four retiree associations that attended the June 20, 2013 meeting.

**ANSWER:**

INTERROGATORY NO. 12: Please identify the matters that were on the agenda at the June 20, 2013 meeting.

**ANSWER:**

INTERROGATORY NO. 13: Please identify the substance of any negotiations that took place at the June 20, 2013 meeting including any offers and counter offers that were exchanged.

**ANSWER:**

INTERROGATORY NO. 14: Please identify any subsequent follow up meetings that occurred as a direct result of the June 20, 2013 meeting.

**ANSWER:**

INTERROGATORY NO. 15: Please identify the name and title of all individuals who were invited to attend the June 25, 2013 meeting in New York.

**ANSWER:**

8

**INTERROGATORY NO. 16:** Please identify the representatives and advisors that attended the June 25, 2013 meeting in New York.

     **ANSWER:**

**INTERROGATORY NO. 17:** Please identify the matters that were on the agenda at the June 25, 2013 meeting in New York.

     **ANSWER:**

**INTERROGATORY NO. 18:** Please identify the substance of any negotiations that took place at the June 25, 2013 meeting in New York including any offers and counter offers that were exchanged.

     **ANSWER:**

**INTERROGATORY NO. 19:** Please identify any subsequent follow up meetings that occurred as a direct result of the June 25, 2013 meeting in New York.

     **ANSWER:**

**INTERROGATORY NO. 20:** Please identify all Bond Insurers that requested a separate follow up

meeting to the June 25, 2013 meeting in New York.

**ANSWER:**

INTERROGATORY NO. 21: Please identify the representatives of the General Retirement System and the Police and Fire Retirement System that were invited to attend the July 10, 2013 meeting.

**ANSWER:**

INTERROGATORY NO. 22: Please identify the representatives of the General Retirement System and the Police and Fire Retirement System that attended the July 10, 2013 meeting.

**ANSWER:**

INTERROGATORY NO. 23: Please identify the matters that were on the agenda at the July 10, 2013 meeting.

**ANSWER:**

INTERROGATORY NO. 24: Please identify the substance of any negotiations that took place at the July 10, 2013 meeting including any offers and counter offers that were exchanged.

**ANSWER:**

**INTERROGATORY NO. 25:** Please identify any subsequent follow up meetings that occurred as a direct result of the July 10, 2013 meeting.

**ANSWER:**

**INTERROGATORY NO. 26:** Please identify the name and title of all individuals who were invited to attend the July 11, 2013 meeting.

**ANSWER:**

**INTERROGATORY NO. 27:** Please identify who attended the follow up meeting on July 11, 2013.

**ANSWER:**

**INTERROGATORY NO. 28:** Please identify the substance of any negotiations that took place at the July 11, 2013 meeting including any offers and counter offers that were exchanged.

**ANSWER:**

**INTERROGATORY NO. 29:** Please identify the results of the July 11, 2013 follow up meeting.

**ANSWER:**

11

**INTERROGATORY NO. 30:** Please identify the name and title of all individuals who were invited to attend the July 17, 2013 meeting.

   **ANSWER:**


**INTERROGATORY NO. 31:** Please identify the representatives of the National Public Finance Guarantee Corporation and Assured Guaranty that attended the July 17, 2013 meeting.

   **ANSWER:**


**INTERROGATORY NO. 32:** Please identify matters that were on the agenda at the July 17, 2013 meeting.

   **ANSWER:**


**INTERROGATORY NO. 33:** Please identify the substance of any negotiations that took place at the July 17, 2013 meeting including any offers and counter offers that were exchanged.

   **ANSWER:**


**INTERROGATORY NO. 34:** Please identify any subsequent follow up meetings that occurred as a direct result of the July 17, 2013 meeting.

   **ANSWER:**

12

INTERROGATORY NO. 35: Please identify any and all additional individuals and/or creditors that were invited to negotiate with the City of Detroit prior to the filing of the Bankruptcy on July 18, 2013.

**ANSWER:**


INTERROGATORY NO. 36: Please identify any and all additional individuals and/or creditors that negotiated with the City of Detroit prior to the filing of the Bankruptcy on July 18, 2013.

**ANSWER:**


INTERROGATORY NO. 37: Please identify any and all additional individuals and/or creditors that negotiated with the City of Detroit following the filing of the Bankruptcy on July 18, 2013.

**ANSWER:**


INTERROGATORY NO. 38: Please identify the provisions in the Creditor Proposal that are subject to negotiations.

**ANSWER:**


13

**INTERROGATORY NO. 39:** Please identify the dates and times of any additional negotiations with current and potential creditors that have not otherwise been disclosed in an answer herein.

    **ANSWER:**

**INTERROGATORY NO. 40:** Please identify any and all results of negotiations with current and potential creditors prior to the filing of the Bankruptcy on July 18, 2013.

    **ANSWER:**

**INTERROGATORY NO. 41:** Please identify any and all results of negotiations with current and potential creditors following the filing of the Bankruptcy on July 18, 2013.

    **ANSWER:**

**INTERROGATORY NO. 42:** Please identify any and all ongoing negotiations with current and potential creditors.

    **ANSWER:**

**INTERROGATORY NO. 43:** Please identify any and all counteroffers that the City of Detroit received during the negotiations.

    **ANSWER:**

14

<u>INTERROGATORY NO. 44:</u> Please provide all facts supporting the statement in the Declaration of Kevyn D. Orr in Support of City of Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code (the "Orr Declaration") that 38 cents of every tax dollar the City collects goes to service legacy debt and other obligations. (¶ 9).

**ANSWER:**

<u>INTERROGATORY NO. 45:</u> Please provide all facts supporting the statement the contention in the Orr Declaration that 65 cents of every dollar will go to service legacy debt and other obligations in less than five years. (¶ 9).

**ANSWER:**

<u>INTERROGATORY NO. 46:</u> Prior to petitioning the Court for bankruptcy, what steps did the City take to collect unpaid property taxes?

**ANSWER:**

<u>INTERROGATORY NO. 47:</u> Prior to petitioning for bankruptcy, what steps did the City take to seek additional revenue sharing funds from the State of Michigan?

**ANSWER:**

15

INTERROGATORY NO. 48: Please provide the facts supporting the basis for the conclusion in paragraph 74 of Orr's Declaration that Public Act 72 was automatically revived when Michigan voters rejected Public Act 4 by referendum on November 5, 2012.

**ANSWER:**

## REQUEST TO PRODUCE

REQUEST TO PRODUCE NO. 1: Please provide a copy of any and all counteroffers that the City of Detroit received during the negotiations.

**ANSWER:**

REQUEST TO PRODUCE NO. 2: Please produce any and all drafts of the June 14, 2013 Proposal for Creditors.

**ANSWER:**

REQUEST TO PRODUCE NO. 3: Please produce any and all communications, correspondence, memoranda, and any other document related to the Proposal for Creditors and any draft of the Proposal for Creditors.

**ANSWER:**

16

REQUEST TO PRODUCE NO. 4:   Please produce any and all offers the City made to any of its creditors seeking a compromise of the creditor's debt owed to it by the City.

**ANSWER:**


REQUEST TO PRODUCE NO. 5:   Please produce any and all correspondence exchanged with creditors of the City regarding the compromise of debt owed by the City.

**ANSWER:**


REQUEST TO PRODUCE NO. 6:   Please produce any and all documents related to Kevyn Orr's resignation from Jones Day.

**ANSWER:**


REQUEST TO PRODUCE NO. 7:   Please produce any and all correspondence between City officials and Governor Snyder or representatives of Governor Snyder's office related to the appointment of Kevyn Orr as Emergency Manager of the City of Detroit.

**ANSWER:**


REQUEST TO PRODUCE NO. 8:   Please produce any and all documents relating to the City's decision to defer approximately $108 million of current and prior year pension contributions.

17

**ANSWER:**


REQUEST TO PRODUCE NO. 9: Please produce any and all documents regarding the City's decision to refrain from making a scheduled $39.7 million payment under certain pension-related service contracts that were due on June 14, 2013.

    **ANSWER:**


REQUEST TO PRODUCE NO. 10: Please produce documents that the City used to reach the decision to reduce the number of City employees by more than 22% since fiscal year 2010.

    **ANSWER:**


REQUEST TO PRODUCE NO. 11: Please produce documents the City used to determine that the City should implement revised City employment terms for non-union employees and union employees under expired collective bargaining agreements.

    **ANSWER:**


REQUEST TO PRODUCE NO. 12: Please produce all documents related to the July 17, 2013 meeting between the City and advisors for NPFGC and Assured Guaranty as referenced in paragraph 103 of the Orr Declaration.

**ANSWER:**


REQUEST TO PRODUCE NO. 13:    Please produce all documents that support the City's conclusion that there is no reasonable alternative for the restructuring of the City's operations and obligations other than through a Chapter 9 case.

     **ANSWER:**


REQUEST TO PRODUCE NO. 14:    Please produce all documents that the City contends support its conclusion that required pension contributions are projected to increase due to an increasingly mature population is already in pension pay status.

     **ANSWER:**


REQUEST TO PRODUCE NO. 15:    Please produce all documents that the City contends support its conclusion that required pension contributions are projected to increase due to the anticipated revision of aggressive and unrealistic actuarial assumptions used in the past.

     **ANSWER:**


REQUEST TO PRODUCE NO. 16:    Please produce all documents that the City contends support its conclusion that required pension contributions are projected to increase in light of updated actuarial calculations.

19

**ANSWER:**

**REQUEST TO PRODUCE NO. 17:**    Please produce all documents that the City contends support its conclusion that required pension contributions are projected to increase because of past deferrals of contributions.

       **ANSWER:**

**REQUEST TO PRODUCE NO. 18:**    Please produce all documents referenced in paragraph 91 of the Orr Declaration that were presented to representatives of all of the City's unions and four retiree associations on June 20, 2013 including, but not limited to, suggested proposals for the modification of retiree health and pension obligations and the City's funding of those obligations.

       **ANSWER:**

**REQUEST TO PRODUCE NO. 19:**    Please produce all documents related to the July 10, 2013 meetings as referenced in paragraph 95 of the Orr Declaration including, but not limited to, any additional information on the City's pension restructuring proposal.

       **ANSWER:**

REQUEST TO PRODUCE NO. 20: Please produce all documents related to the July 11, 2013 meeting the City and its advisors held with select non-uniform unions and retiree associations and the GRS and certain uniformed unions and retiree associations and the PFRS to discuss retiree health issues as referenced in paragraph 96 of the Orr Declaration.

**ANSWER:**

REQUEST TO PRODUCE NO. 21: Please produce all documents related to June 25, 2013 meetings between the City and Funded Debt and Pension Representatives as referenced in paragraph 97 of the Orr Declaration.

**ANSWER:**

REQUEST TO PRODUCE NO. 22: Please produce all documents related to the June 25, 2013 meeting between the City and representatives of US Bank and its advisors as referenced in paragraph 98 of the Orr Declaration.

**ANSWER:**

REQUEST TO PRODUCE NO. 23: Please produce all documents related to June 26, 2013 and June 27, 2013 meetings between the City and each bond insurer as referenced in paragraph 99 of the Orr Declaration.

**ANSWER:**

21

REQUEST TO PRODUCE NO. 24:    Please produce all documents related to the July 9-10, 2013 meeting between the City and representatives and/or advisors of NPFGC, AMBAC, FGIC, Assured Guaranty, Syncora, and the pension systems as referenced in paragraph 101 of the Orr Declaration.

**ANSWER:**


REQUEST TO PRODUCE NO. 25:    Please produce all documents related to the July 12, 2013 meeting between the City and advisors to the Pension Systems as referenced in paragraph 102 of the Orr Declaration.

**ANSWER:**


## **REQUEST TO ADMIT**

REQUEST TO ADMIT NO. 1:    Admit the City intended to impair accrued financial benefits of the City's pension and retirement plans as of March 14, 2013.

**ANSWER:**


REQUEST TO ADMIT NO. 2:    Admit the City intended to impair accrued financial benefits of the City's pension and retirement plans as of March 25, 2013.

**ANSWER:**


22

REQUEST TO ADMIT NO. 3:   Admit that Kevyn Orr discussed with Governor Snyder or representatives of Governor Snyder's office the City's intent to impair accrued financial benefits of the City's pension and retirement plans prior to March 14, 2013.

**ANSWER:**


REQUEST TO ADMIT NO. 4:   Admit that the City is due approximately $200 million in revenue sharing funds from the State of Michigan.

**ANSWER:**


Respectfully Submitted,

**STROBL & SHARP, P.C.**

_/s/    Lynn M. Brimer_
LYNN M. BRIMER (P43291)
MEREDITH E. TAUNT (P69698)
MALLORY A. FIELD (P75289)
Attorneys for the Retired Detroit
Police Members Association
300 East Long Lake Road, Suite 200
Bloomfield Hills, MI 48304-2376
Telephone:  (248) 540-2300
Facsimile: (248) 645-2690
E-mail: lbrimer@stroblpc.com

Dated:  August 23, 2013

*S&B\85244\001\DISC\SB425397.DOCX