# McKnight, McClow, Canzano, Smith & Radtke, P.C.

*Attorneys at Law*
400 GALLERIA OFFICENTRE • SUITE 117
SOUTHFIELD, MI 48034-8460

TELEPHONE (248) 354-9650
FAX (248) 354-9656

SAMUEL C. MCKNIGHT
JOHN R. CANZANO
LISA M. SMITH
DAVID R. RADTKE
DARCIE R. BRAULT
PATRICK J. RORAI

ELLEN F. MOSS 1956-2011

OF COUNSEL

JUDITH A. SALE
ROGER J. MCCLOW

July 18, 2013

Thomas Quasarano
Assistant Attorney General
P.O. Box 30754
Lansing, MI 48909

Re:     **Gracie Webster, et al v. The State of Michigan, et al**
        **Case No. 13-734-CZ**

Dear Mr. Quasarano:

Enclosed please find the Plaintiffs' Reply Brief in Support of Motion for Declaratory Judgment and Expedited Hearing regarding the above matter.

Sincerely,

McKNIGHT, McCLOW, CANZANO
SMITH & RADTKE, P.C.

*John R. Canzano/sjc*

John R. Canzano

JRC/sjc
Enclosure

Dept of Attorney General

JUL 2 3 2013

State Operations Division

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

        Plaintiffs,

vs                                   Case No. 13-000734-CZ-C30
                                         Hon. Rosemarie E. Aquilina

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

        Defendants.
_____/

JOHN R. CANZANO (P30417)
McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com
_____/

## REPLY BRIEF IN SUPPORT OF MOTION FOR DECLARATORY JUDGMENT AND EXPEDITED HEARING PURSUANT TO MCR 2.605(D), OR IN THE ALTERNATIVE FOR PRELIMINARY INJUNCTION

**INTRODUCTION**

The pertinent facts have already been stated in Plaintiffs' Verified Complaint, Motion, and Brief in Support filed July 3, 2013, which are incorporated herein by reference. Notably, Defendants do not contest (or even mention) the most important facts here, which bear repeating: On June 14, 2013, Emergency Manager Kevyn Orr issused a formal "Proposal for Creditors" which expressly states that "*there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons.*" The same day, the Emergency Manager -- who is himself a lawyer and bankruptcy expert -- publicly threatened that state laws -- including the Michigan Constitution -- protecting vested pension benefits will "not . . . protect" those pension rights in bankruptcy court.

Moreover, Defendants do not contest the substantive merits of Plaintiffs' claim that PA 436 is unconstitutional to the extent it allows accrued pension benefits to be "diminished or impaired" in violation of Article IX Section 24 of the Michigan Constitution. Rather, Defendants claim this case is not justiciable because the Emergency Manager has not yet actually requested and the Governor has not yet actually authorized a Chapter 9 filing pursuant to PA 436. Howver, as explained below and in Plaintiffs' original Brief, the instant controversy presents a classic case for declaratory relief under MCR 2.605. The need for a declaratory judgment to establish the rights and duties and to guide the conduct of all the parties here is urgent. Plaintiffs are entitled to a declaratory judgment that PA 436 is unconstitutional to the extent it allows the Governor to authorize Chapter 9 bankruptcy filing which, as the Emergency Manager has himself acknowledged, is intended to diminish or impair the accrued vested pension rights of Plaintiffs as well as thousands of their coworkers and fellow retirees. In the alternative, Plaintiffs are entitled to a preliminary injunction enjoining the Governor from authorizing such a unconstitutional bankruptcy filing.

**A.** **Plaintiffs have established an actual controversy entitling them to declaratory relief under MCR 2.605.**

Although Defendants couch their arguments in terms of standing and ripeness, the only real issue is whether there is an "actual controversy" under MCR 2.605, which subsumes those justiciability issues. This matter clearly presents "a case of actual controversy" empowering the Court to "declare the rights and other legal relations of an interested party seeking a declaratory judgment" under MCR 2.605(A)(1). Defendants' argument that Plaintiffs' request for declaratory relief presents speculative or hypothetical claims must be rejected. Under longstanding and well-established Michigan law, Plaintiffs are entitled to a declaratory judgment.

Defendants correctly cite *Lansing Schools Ed Ass'n v Lansing Bd of Ed,* 487 Mich 349; 792 NW2d 686 (2010), as the controlling law. But that case supports Plaintiffs, not Defendants. In *Lansing Schools Ed Ass'n,* the Supreme Court held that in the declaratory judgment context:

> [W]henever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment.

487 Mich at 372. The Court further held that the standard for whether a litigant meets the requirements of MCR 2.605 was that stated in *Associated Builders and Contractors v Wilbur,* 472 Mich 117, 126; 693 NW2d 374 (2005): "[t]he essential requirement of the term 'actual controversy' under the rule is that plaintiffs plead and prove facts which indicate an adverse interest necessitating a sharpening of the issues raised." *Lansing Schools Ed Ass'n,* 487 Mich at 372, n 20.[1]

---

[1] Notably, although *Lansing Schools Ed Ass'n* held that "Michigan standing jurisprudence should be restored to a limited, prudential doctrine that is consistent with Michigan's longstanding historical approach to standing" and overruled the standing doctrine adopting federal Article III standing jurisprudence established in *Lee v Macomb Co Bd of Comm'rs,* 464 Mich 726; 692 NW2d 900 (2001) and *Nat'l Wildlife Federation v Cleveland Cliffs*

2

Defendants also cite *UAW v Central Mich Univ Trustees,* 295 Mich App 486; 815 NW2d 132 (2012). Again that case supports Plaintiffs, not Defendants. In *Central Michigan,* the plaintiff union sought a declaratory judgment that a university policy governing employees who become candidates for public office was invalid and in violation of the Political Activities by Public Employees Act, MCL 15.401 *et seq.* The defendant university claimed the plaintiff lacked standing and that there was no actual controversy because none of its members had attempted to become candidates for political office. The Court held that "by granting declaratory relief in order to guide or direct future conduct, courts are not precluded from reaching issues before actual injuries or losses have occurred." The Court held that there was an actual controversy concerning the legitimacy of the candidacy policy, because "to hold otherwise would be inconsistent with the purpose of a declaratory judgment" which is "to enable the parties to obtain adjudication of rights *before an actual injury occurs,* to settle a matter *before it ripens into a violation of the law* or a breach of contract, or to avoid a multiplicity of actions by *affording a remedy for declaring in expedient action the rights and obligations of all litigants.* 295 Mich App at 496 (emphasis in original), quoting *Rose v State Farm Mutual Ins Co,* 274 Mich App 291, 294; 732 NW2d 160 (2006).

*City of Lake Angelus v Mich Aeronautics Comm,* 260 Mich App 371; 676 NW2d 642 (2004), cited in *Central Mich University,* is particularly instructive, and clearly shows that Plaintiffs are entitled to a declaratory judgment here. In *Lake Angelus,* the plaintiff city sought a declaratory judgment that the enabling legislation establishing the Michigan Aeronautics Commission, MCL 259.1 *et seq.,* did not authorize the Commission to override the city's

---

*Iron Co,* 471 Mich 608; 684 NW2d 800 (2004), *Lansing Schools* did not overrule *Associated Builders and Contractors* on this point, noting that *Associated Builders* had incorporated the pre-*Lee/Cleveland Cliffs* standard for establishing standing for a declaratory judgment under MCR 2.605. *Lansing Schools Ed Ass'n,* 487 Mich at 372, n 20. Thus Plaintiffs have established an

3

ordinance banning the use or docking of seaplanes on Lake Angelus. A lakefront property owner (Gustafson) had previously challenged the city ordinance in the federal courts and lost. Subsequently, the Seaplane Pilots Association requested that the Aeronautics Commission act to clarify that lakes such as Lake Angelus should be open to seaplane operations irrespective of any local ordinances. In response, the Commission promulgated a rule establishing a multistage administrative process by which local ordinances, such as the plaintiff city's ordinance, could be overridden.

The Attorney General, in defense of the Aeronautics Commission and the validity of its enabling legislation, argued that because Gustafson had not so requested, and the Aeronautics Commission had not begun an administrative process to override the city's ordinance, there was no actual controversy which would support declaratory relief under MCR 2.605. The Court of Appeals unequivocally disagreed:

> Hanging over the city is the prospect of being required to respond in administrative proceedings designed to override the ordinance, pursuant to an administrative rule adopted specifically to provide a means of overriding the ordinance respecting Lake Angelus. To be sure, the commission may not drop the sword. But the commission adopted the administrative rule, the Attorney General claims that it is valid, and, perforce, at any time, the city may be called upon to respond in an administrative context at considerable cost and expense, *and in circumstances that are not predictable.*

260 Mich App at 376. (emphasis supplied) The Court concluded there was an "actual controversy" and that it was "in the public interest to declare the rights of the parties on the question of whether the Commission has the authority to override the ordinance." The Court further noted that the modern declaratory judgment rule [MCR 2.605] "was intended to 'provide for the broadest type of declaratory judgment procedure." *Id.,* 377, citing *Shavers v. Kelley,* 402 Mich 554; 267 NW2d 72 (1978), and Longhofer, *Courtroom Handbook on Michigan Civil*

---

"actual controversy" under both *Associated Builders* as well as *Lansing Schools.*

4

13-53846-swr    Doc 1219-5    Filed 10/17/13    Entered 10/17/13 13:56:17    Page 6 of 14   949
13-53846-tjt    Doc 2334-27    Filed 12/27/13    Entered 12/27/13 13:37:04    Page 6 of 39

*Procedure* (2003), §2605.6, p. 1020. *See also, City of Huntington Woods v City of Detroit,* 279 Mich App 603, 616-617; 761 NW2d 127 (2008) (finding actual controversy for a declaratory judgment concerning defendant city's authority to sell golf course property, and pursuant to what terms, even though there had been no violation of restrictive covenants and property had not yet been sold, *because city was seriously considering sale of the property* and had begun to solicit bidders; declaratory relief was "necessary in order to guide or direct future conduct" of defendant and because "courts are not precluded from reaching issues before actual injuries or losses have occurred.") (citation omitted)

The *Lake Angelus* case is on all fours with this case. There, as here, an adjudicative forum had been established which, once invoked, threatened to invalidate the plaintiff's rights. In *Lake Angelus* the forum was the Aeronautics Commission administrative procedure and the right threatened was the City's right under its local ordinance to ban seaplanes. Here, the forum is federal bankruptcy court under Chapter 9 and the rights threatened are Plaintiffs' rights under the Michigan Constitution protecting their accrued pension benefits. There, as here, an "actual controversy" existed under MCR 2.605 even though there had been no request to invoke the forum and the process which could abrogate the plaintiff's rights had not been initiated, because the process could commence at any time "in circumstances that are not predictable" and because declaratory relief was necessary in order to declare the rights of the parties as to the defendant's authority to begin proceedings which could override the plaintiff's rights.

As noted in Plaintiff's Verified Complaint and in their Brief in Support of Motion for Declaratory Judgment and Preliminary Injunction, the need for declaratory relief is urgent. Emergency Manager Orr -- himself an attorney and bankruptcy expert -- has stated in writing that "there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons." He has publicly threatened that vested pension benefits will be

5

abrogated in a Chapter 9 proceeding authorized by the Governor pursuant to PA 436, and that

any state law protecting pension benefits -- including the Michigan Constitution -- is "not going

to protect" retirees or employees with vested pension benefits in bankruptcy court.[2] And, he is

admittedly using the threat of bankruptcy in an attempt to force vested pensioners and employees

to give in to his demands to diminish and impair their constitutionally protected pension rights

*before* any bankruptcy filing, understandably causing Plaintiffs, and thousands of city retirees

like them, great fear and anguish for their future well-being.[3]

---

[2] Despite the Emergency Manager's threats, Defendants argue that Plaintiffs' pension rights under Michigan law could be protected in Chapter 9. Although Plaintiffs obviously reserve the right to argue that a federal bankruptcy court must honor Michigan's Constitutional protections for vested pension benefits, what would happen to those rights in bankruptcy is unpredictable, at best. See, e.g., Comment, *Solving Insolvent Public Pensions: The Limitations of the Current Bankruptcy Option,* 28 Emory Bankr Dev Journal 89, * 121-122 (noting that "while some commentators and local officials have argued that state law restrictions on pension reductions or modifications may limit the bankruptcy court's ability to reduce or terminate these retirement obligations, [a decision of at least one bankruptcy court] affirmed the general proposition that, where states authorize a municipality to file bankruptcy, federal bankruptcy law is not subordinate to state law.") (citations and footnotes omitted)

[3] Defendants also cite to Section 32 of PA 436, MCL 141.1572, which purports to preclude causes of action under PA 436 for violation of the Act. But as Defendants correctly note, Plaintiffs are not aserting a cause of action under the Act. They are asserting a claim that PA 436 is unconstitutional to the extent it allows the Governor to authorize a bankruptcy filing which threatens to diminish or impair Plaintiffs' accrued pension rights in violation of Article IX Section 24 of the Michigan Constitution; and in the alternative for an injunction prohibiting the Governor from unconstitutionally authorizing such an unconstitutional bankruptcy filing under PA 436. It is black letter law that this court has jurisdiction over such claims, and Defendants do not contend otherwise. As the Supreme Court declared in *Diggs v State Bd of Embalmers & Funeral Directors,* 321 Mich 508, 514 (1948), "[t]his Court has repeatedly held that in cases where an irreparable injury will result from the acts of public officials in attempting to proceed under an invalid law, the jurisdiction of equity may be invoked for the purpose of obtaining injunctive relief and a determination as to the constitutionality of the statute that is involved."

Moreover, as Defendants also correctly note, a litigant also has standing in this context "if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large . . ." *Lansing Schools Ed Ass'n,* 487 Mich at 372. Plaintiffs obviously satisfy this standard. Plaintiffs are imminently threatened with the diminishment or impairment in federal bankruptcy court of their hard-earned vested pension benefits. And the threat of bankruptcy is being used *now* in an attempt to force Plaintiffs to give in to the Emergency Manager's demands to diminish or impair constitutionally protected pension

6

The Emergency Manager could request, and the Governor could authorize, a Chapter 9 bankruptcy filing at any moment. Plaintiffs need and are entitled to declaratory relief *now*.

### B.    Plaintiffs have stated a valid claim for relief

Defendants argue at page 10-11 of their Response Brief that Plaintiffs' Complaint fails to state a claim upon which this court may grant relief. Defendants assert that because Plaintiffs have described their claim as a "facial" challenge, it is subject to the rule stated in *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 171*, 479 Mich 1; 740 NW2d 444 (2007) that "[a] facial challenge is a claim that the law is invalid *in toto* -- and therefore incapable of any valid application," *id* at 11, n 20, i.e., that "no set of circumstances exists under which the [a]ct would be valid." *Id* at 11. This argument must be rejected for several separate and independent reasons.

*First*, as explained above and in Plaintiffs' original Brief in Support, Plaintiffs *have* stated a valid claim for declaratory relief. The rule stated in *Request for Advisory Opinion* is inapplicable to requests for declaratory relief such as this. For example, in the *Lake Angelus* case discussed above, the Court of Appeals found that the enabling legislation at issue was invalid in the sense that it did not allow the Aeronautics Commission to approve the landing and takeoff of seaplanes in violation of local ordinances. The court never considered, and did not need to consider, whether there was "no set of circumstances" under which the enabling legislation would be valid. In fact, the court considered the possibility that the legislation could be validly applied in that the Aeronautics Commission might not "drop the sword" -- i.e. might not override the local ordinance -- yet still granted the requested declaratory relief.

---

rights *before* a bankruptcy filing. The citizenry at large, unlike Plaintiffs, suffers no such special injury.

7

*Second*, Plaintiffs are not seeking to invalidate PA 436 "*in toto*" as required for application of the rule stated in *In Re Advisory Opinion*. Plaintiffs are only seeking a declaration that the provisions of PA 436 which allow a Chapter 9 bankruptcy filing are unconstitutional where, as here, such a filing threatens to impair or diminish vested pension benefits in violation of Article IX Section 24 of the Michigan Constitution. For example, in a case where a municipality had no pension plan, or a pension plan whose participants had no accrued benefits, a Chapter 9 filing would not violate Article IX Section 24.

Here, because the imminent Chapter 9 filing *does* threaten to impair or diminish vested pension benefits -- as Emergency Manager (and bankruptcy lawyer) Orr has explicitly stated -- Plaintiffs are entitled to a declaration that PA 436 is unconstitutional to the extent it allows the Governor to authorize a Chapter 9 bankruptcy filing by the Emergency Manager. This case is a challenge to the provisions of PA 436 which authorize a Chapter 9 filing in violation of Article IX Section 24 of the Michigan Constitution. Moreover, even if the Court were to find Plaintiffs' limited facial challenge somehow deficient, the Court can and should still find that the law is unconstitutional as applied, based on the particular facts here: the Emergency Manager's threat that "there must be significant cuts in accrued vested pension amounts" and that the Michigan Constitution is "not going to protect" retirees or employees with vested pension rights in bankruptcy court.

*Third*, the *In re Advisory Opinion* case was just that -- an advisory opinion. There were no facts and there were no parties. The Attorney General argued both sides of the case -- that the voter identification law in question was, and was not, constitutional. That case obviously presented a pure facial challenge to a law *in toto*. That case was nothing like this case, and the rule stated there has no application here.

8

## C.    In the alternative, Plaintiffs are entitled to a preliminary injunction

In support of their alternative request for a preliminary injunction, Plaintiffs incorporate the arguments previously stated in support thereof in their original July 3, 2013 Brief in Support. Plaintiffs also incorporate by reference the arguments in support of a preliminary injunction in the July 3, 2013 Brief in Support and the July 18, 2013 Reply Brief filed in this Court by the Plaintiffs in *Flowers v State of Michigan,* No. 13-729-CZ.

Plaintiffs seek in the alternative a preliminary injunction prohibiting the Governor from authorizing a Chapter 9 filing by the Emergency Manager which threatens to impair and diminish Plaintiffs' accrued vested pension benefits in violation of Article IX Section 24 of the Michigan Constitution.    The Emergency Manager has given every indication that he intends to use Chapter 9 to achieve "significant cuts in accrued vested pension amounts for both active and currently retired persons," and has threatened that in his expert opinion as a bankruptcy lawyer, the Michigan Constitution is "not going to protect you" from having pension benefits diminished or impaired in bankruptcy.

Defendants argue that Plaintiffs' request for injunctive relief is overbroad because it would prohibit the Governor from authorizing a bankruptcy filing which did not threaten to impair or diminish vested pension rights.    However, in his recent filings in both this case and the *Flowers* case, although he had every opportunity to do so, the Governor gave no indication whatsoever that he would authorize a Chapter 9 filing only if the filing did not threaten to diminish or impair vested pension rights and by requiring that all accrued benefits be fully funded well before any bankruptcy filing.    The Governor's silence in this regard is telling. Moreover, even if the Governor were to attach such a contingency, there is no guarantee that a bankruptcy judge would honor it, although Plaintiffs of course would argue that he or she should.

9

(See fn 2, *supra*.) Accordingly, there is no basis for the Defendants' claim that the injunctive relief which Plaintiffs seek is overbroad.

Defendants also argue that an injunction against the Governor prohibiting him from authorizing a bankruptcy filing which threatens to unconstitutionally diminish or impair vested pension rights is precluded under separation of powers principles, citing *Strauss v Governor*, 459 Mich 526, 532; 592 NW2d 53 (1999). But *Strauss* dealt with *mandatory* injunctive relief (mandamus) and not, as here, *prohibitory* injunctive relief. As Defendants concede, the Court in *Strauss* expressly *did not* decide that prohibitory injunctive relief against the Governor is precluded. Of course, as *Strauss* notes, it is expected that the Governor -- who has taken an oath to obey the Constitution -- will obey a declaratory judgment that he not violate the Constitution by authorizing a Chapter 9 bankruptcy which threatens to impair or diminish vested pension benefits. The problem is that if he attempts to authorize bankruptcy before declaratory relief is granted, or if he fails to obey a declaratory judgment, it will be too late for Plaintiffs, absent an injunction. Once the City has entered bankruptcy, there may be no turning back, and as noted in fn. 2, *supra*, the consequences for Plaintiffs' vested pension rights will be unpredictable, at best.[4]

Finally, as explained in Plaintiffs' Verified Complaint and July 3 Brief, as well as the Complaint, Brief and Reply Brief in the *Flowers* case, Plaintiffs satisfy all the factors for a preliminary injunction. In particular, the public interest will be served by stopping the unconstitutional destruction of the vested pension benefits of thousands of retirees and workers

---

[4] For the same reason, Defendants' claim that Plaintiffs will have an "adequate remedy at law" in bankruptcy court is ludicrous. As the Emergency Manager has threatened, the express purpose of a bankruptcy filing would be to abrogate pension rights, and in his professional opinion, the Michigan Constitution will "not . . . protect" retirees in bankruptcy court. While Plaintiffs would of course contest such a result, bankruptcy court proceedings are obviously not an "adequate remedy" for vindicating their rights under the Michigan Constitution.

10

who have planned their futures trusting that their pension benefits were constitutionally protected and that Article IX Section 24 of the Michigan Constitution means what it says.

## CONCLUSION

Wherefore, Plaintiffs respectfully request that their Motion for Declaratory Judgment and/or Preliminary Injunction be granted.

<div style="margin-left: 40%;">

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By: _____
John R. Canzano (P30417)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com

</div>

Date: July 18, 2013

P:\AFSCME\Emergency Mgr Litigation\Pleadings\Reply Brief-REV.doc

11

13-53846-swr   Doc 1219-5   Filed 10/17/13   Entered 10/17/13 13:56:17   Page 13 of 14 956
13-53846-tjt   Doc 2334-27   Filed 12/27/13   Entered 12/27/13 13:37:04   Page 13 of
39

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

Plaintiffs,

vs

Case No. 13-000734-CZ-C30
Hon. Rosemarie E. Aquilina

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

Defendants.

_____/

JOHN R. CANZANO (P30417)
McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com

THOMAS QUASARANO (P27982)
BRIAN DEVLIN (P34685)
Assistant Attorneys General
Attorney for Defendants
P.O. Box 30754
Lansing, MI 48909
517-373-1162
quasaranot@michigan.gov
devlinb@michigan gov

_____/

## PROOF OF SERVICE

The undersigned certifies that on July 18, 2013, he served a copy of Reply Brief in

Support of Motion for Declaratory Judgment and Expedited Hearing Pursuant to MCR 2.605(D),

or in the Alternative for Preliminary Injunction by email and first class mail upon:

THOMAS QUASARANO
BRIAN DEVLIN
Assistant Attorneys General
Attorney for Defendants
P.O. Box 30754
Lansing, MI 48909

/s/ John R. Canzano
John R. Canzano

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

THE GENERAL RETIREMENT SYSTEM
OF THE CITY OF DETROIT, and THE
POLICE AND FIRE RETIREMENT
SYSTEM OF THE CITY OF DETROIT,

*Gracie Webster and Veronica Thomas*

Plaintiffs,

Case No. ~~13-768-CZ~~ *13-000734-CZ C30*

vs. *State of Michigan*

Hon. *Rosemarie Aquilina*

~~KEVYN D. ORR, in his official capacity as the~~
EMERGENCY MANAGER OF THE CITY OF
~~DETROIT,~~ and RICHARD SNYDER, in his
official capacity as the GOVERNOR OF THE
STATE OF MICHIGAN, *and Andy Dillon, Treasurer in his Official Capacity*

Defendants.

Ronald A. King (P45088)
Aaron O. Matthews (P64744)
Michael J. Pattwell (P72419)
CLARK HILL PLC
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys for Plaintiffs

*John R Canzano P3.. 417
McKnight, McClow, Canzano Smith
& Radtke PC
400 Galleria Officenter*

## TEMPORARY RESTRAINING ORDER

At a session of said Court, held in the City of
Lansing, County of Ingham, State of Michigan
on ___*18 July 13*___

PRESENT: HON. ___*Rosemarie E Aquilina*___ *and having appeared during the hearing for a TRO in 13-000734*
CIRCUIT COURT JUDGE

This matter having come before the Court on Plaintiffs' Complaint with verification and *Declaratory Judgment and Preliminary Injunction,* ~~Ex Parte~~ Motion for a Temporary Restraining Order; the Court being fully advised in the

premises; Plaintiffs having shown a likelihood of success on the merits of the claims in

9214431.1 14893/144127

Plaintiffs' Complaint; Plaintiff having adequately shown that a failure to immediately issue a Temporary Restraining Order will cause irreparable injury to Plaintiffs by permitting the Governor and the Emergency Manager ("Defendants") to authorize and file a Chapter 9 bankruptcy petition wherein Plaintiffs' accrued financial benefits will be impaired prior this Court's scheduled preliminary injunction hearing on Monday, July 22, 2013; and the Court being otherwise fully informed in the premises and finding good cause: *which has already occurred*

    IT IS HEREBY ORDERED that Plaintiffs' Motion is granted;

    IT IS FURTHER ORDERED that Defendants are immediately and temporarily enjoined and restrained from taking any action (including the authorization of an unconditional Chapter 9 bankruptcy proceeding for the City of Detroit and/or the filing of a Chapter 9 bankruptcy *or taking any further action with respect to any filing* petition) that may: (i) cause the accrued financial benefits of the Retirement System or their participants from in any way being diminished or impaired as mandated by Article IX, section 24, of the Michigan Constitution, or (ii) otherwise abrogate Article IX, section 24, of the Michigan Constitution;

    IT IS FURTHER ORDERED that the Court shall hold a hearing on _July 22_, 2013 at _9:00 AM_ whereby Defendants shall show cause why a ~~Preliminary~~ *Declaratory Judgment and/or* Injunction shall not issue; and

    IT IS FURTHER ORDERED that this temporary restraining order shall remain in full force and effect until _~~,2013 at 5:00 p.m.~~_ *further order of the Court*

    IT IS SO ORDERED.

*Rosemarie E Aquilina*
CIRCUIT COURT JUDGE    *P37670*

DATE: _18 July 13_
TIME: _4:25 p.m._

2

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

        Plaintiffs,

          vs

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

        Defendants.

Case No. 13-734-CZ

HON. ROSEMARIE AQUILINA

RECEIVED

JUL 19 2013

Clerk of the Court
30th Judicial Circuit

---

John R. Canzano (P30417)
McKnight, McClow, Canzano,
   Smith & Radke, P.C.
400 Galleria Officentre, Suite 117
Southfield, Michigan 48034
(248) 345-9650
jcanzano@michworklaw.com
Counsel for Plaintiffs

Thomas Quasarano (P27982)
Brian Devlin (P34685)
Assistant Attorneys General
Department of Attorney General
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-1162
quasaranot@michigan.gov
devlinb@michigan.gov
Attorneys for Defendants

---

## NOTICE OF SUGGESTION OF PENDENCY OF
## BANKRUPTCY CASE AND APPLICATION OF THE AUTOMATIC STAY

**PLEASE TAKE NOTICE THAT,** on July 18, 2013 (the "Petition Date"), the City of

Detroit, Michigan (the "City") filed a petition for relief under chapter 9 of title 11 of the United

States Code (the "Bankruptcy Code"). The City's bankruptcy case is captioned *In re City of*

*Detroit, Michigan*, Case No. 13-53846, (Bankr. E.D. Mich.) (the "Chapter 9 Case"), and is

pending in the United States Bankruptcy Court for the Eastern District of Michigan

(the "Bankruptcy Court"). A copy of the voluntary petition filed with the Bankruptcy Court commencing the Chapter 9 Case is attached hereto as Exhibit A.

PLEASE TAKE FURTHER NOTICE THAT, in accordance with the automatic stay imposed by operation of sections 362 and 922 of the Bankruptcy Code (the "Stay"), from and after the Petition Date, no act to (i) exercise control over property of the City or (ii) collect, assess or recover a claim against the City that arose before the commencement of the Chapter 9 Case may be commenced or continued against the City without the Bankruptcy Court first issuing an order lifting or modifying the Stay for such specific purpose.

PLEASE TAKE FURTHER NOTICE THAT, in accordance with the Stay, from and after the Petition Date, no cause of action arising prior to, or relating to the period prior to, the Petition Date may be commenced or continued against (i) the City, in any judicial, administrative or other action or proceeding, or (ii) an officer or inhabitant of the City, in any judicial, administrative or other action or proceeding that seeks to enforce a claim against the City, and no related judgment or order may be entered or enforced against the City outside of the Bankruptcy Court without the Bankruptcy Court first issuing an order lifting or modifying the Stay for such specific purpose.

PLEASE TAKE FURTHER NOTICE THAT actions taken in violation of the Stay, and judgments or orders entered or enforced against the City, or its officers or inhabitants to enforce a claim against the City, while the Stay is in effect, are void and without effect.

-2-

PLEASE TAKE FURTHER NOTICE THAT the City hereby expressly reserves all rights with respect to the above-captioned proceeding, including, but not limited to, the right to move to vacate any judgment entered in the above-captioned proceeding as void.

Dated:  July 19, 2013

Respectfully submitted,

*Jaclyn Shoshana Levine*

Jonathan S. Green (P33140)
Stephen S. LaPlante (P48063)
Jaclyn Shoshana Levine (P58938)
MILLER, CANFIELD, PADDOCK
    AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone:  (313) 963-6420
Facsimile:  (313) 496-7500
green@millercanfield.com

COUNSEL FOR THE CITY

-3-

# EXHIBIT A

Revised 05/08

## UNITED STATES BANKRUPTCY COURT
### Eastern District of Michigan

In re:

City of Detroit, Michigan,

                Debtor.    /

Case No. 13-_____

### BANKRUPTCY PETITION COVER SHEET

(The debtor must complete and file this form with the petition in every bankruptcy case. Instead of filling in the boxes on the petition requiring information on prior and pending cases, the debtor may refer to this form.)

#### Part 1

"Companion cases," as defined in L.B.R. 1073-1(b), are cases involving any of the following: (1) The same debtor; (2) A corporation and any majority shareholder thereof; (3) Affiliated corporations; (4) A partnership and any of its general partners; (5) An individual and his or her general partner; (6) An individual and his or her spouse; or (7) Individuals or entities with any substantial identity of financial interest or assets.

Has a "companion case" to this case ever been filed at any time in this district or any other district? Yes ___ No _X_
(If yes, complete Part 2.)

#### Part 2

For each companion case, state in chronological order of cases:

*Not applicable*

If the present case is a Chapter 13 case, state for each companion case:

*Not applicable*

#### Part 3 - In a Chapter 13 Case Only

The Debtor(s) certify, re: 11 U.S.C. § 1328(f):            *Not Applicable*
    [indicate which]

☐ Debtor(s) received a discharge issued in a case filed under Chapter 7, 11, or 12 during the 4-years before filing this case.

☐ Debtor(s) did not receive a discharge issued in a case filed under Chapter 7, 11, or 12 during the 4-years before filing this case.

☐ Debtor(s) received a discharge in a Chapter 13 case filed during the 2-years before filing this case.

☐ Debtor(s) did not receive a discharge in a Chapter 13 case filed during the 2-years before filing this case.

I declare under penalty of perjury that I have read this form and that it is true and correct to the best of my information and belief.

Kevyn D. Orr
Emergency Manager
City of Detroit

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK
  AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, MI 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY OF DETROIT, MICHIGAN

Date: July 18, 2013

| UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF MICHIGAN | VOLUNTARY PETITION |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle): **City of Detroit, Michigan** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all): 38-6004606 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State): 2 Woodward Avenue Suite 1126 Detroit, Michigan    ZIP CODE 48226 | Street Address of Joint Debtor (No. and Street, City, and State):    ZIP CODE |
| County of Residence or of the Principal Place of Business: Wayne | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):    ZIP CODE | Mailing Address of Joint Debtor (if different from street address):    ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above): |    ZIP CODE |

| Type of Debtor (Form of Organization) (Check one box.) | Nature of Business (Check one box.) | Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box.) |
|---|---|---|
| ☐ Individual (includes Joint Debtors) *See Exhibit D on page 2 of this form.* ☐ Corporation (includes LLC and LLP) ☐ Partnership ☒ Other (If debtor is not one of the above entities, check this box and state type of entity below.) Municipality | ☐ Health Care Business ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B) ☐ Railroad ☐ Stockbroker ☐ Commodity Broker ☐ Clearing Bank ☒ Other | ☐ Chapter 7    ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding ☒ Chapter 9 ☐ Chapter 11 ☐ Chapter 12    ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding ☐ Chapter 13 |

| Chapter 15 Debtors | Tax-Exempt Entity (Check box, if applicable.) | Nature of Debts (Check one box.) |
|---|---|---|
| Country of debtor's center of main interests: Each country in which a foreign proceeding by, regarding, or against debtor is pending: | ☐ Debtor is a tax-exempt organization under title 26 of the United States Code (the Internal Revenue Code). | ☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."    ☒ Debts are primarily business debts. |

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☒ Full Filing Fee attached. ☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A. ☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box: ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). ☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D). Check if: ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 (*amount subject to adjustment on 4/01/16 and every three years thereafter*). ---------------------- Check all applicable boxes: ☐ A plan is being filed with this petition. ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

**Statistical/Administrative Information**      THIS SPACE IS FOR COURT USE ONLY

☒ Debtor estimates that funds will be available for distribution to unsecured creditors.
☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

Estimated Number of Creditors

| ☐ 1-49 | ☐ 50-99 | ☐ 100-199 | ☐ 200-999 | ☐ 1,000-5,000 | ☐ 5,001-10,000 | ☐ 10,001-25,000 | ☐ 25,001-50,000 | ☐ 50,001-100,000 | ☒ Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ☐ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☒ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ☐ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☒ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

B1 (Official Form 1) (04/13)

| Voluntary Petition | Name of Debtor(s): |
| *(This page must be completed and filed in every case.)* | City of Detroit, Michigan |

**All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.)

| Location | Case Number: | Date Filed: |
| Where Filed: | | |
| Location | Case Number: | Date Filed: |
| Where Filed: | | |

**Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.)

| Name of Debtor: | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | (To be completed if debtor is an individual whose debts are primarily consumer debts.) I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b). |
| ☐ Exhibit A is attached and made a part of this petition. | X _____<br>    Signature of Attorney for Debtor(s)   (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☒ Yes, and Exhibit C is attached and made a part of this petition.

☐ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D, completed and signed by the debtor, is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D, also completed and signed by the joint debtor, is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

   _____
   (Name of landlord that obtained judgment)

   _____
   (Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

| Voluntary Petition | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case.)* | City of Detroit, Michigan |

**Signatures**

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br><br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br><br>[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).<br><br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>Signature of Debtor<br><br>X _____<br>Signature of Joint Debtor<br><br>Telephone Number (if not represented by attorney)<br><br>Date | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br><br>(Check only one box.)<br><br>☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.<br><br>☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.<br><br>X _____<br>(Signature of Foreign Representative)<br><br>_____<br>(Printed Name of Foreign Representative) |

| Signature of Attorney* | Signature of Non-Attorney Bankruptcy Petition Preparer |
|---|---|
| X *[signature]*<br>Signature of Attorney for Debtor(s)<br><br>David G. Heiman   Bruce Bennett   Jonathan S. Green<br>Heather Lennox   JONES DAY   Stephen S. LaPlante<br>JONES DAY   555 South Flower Street   MILLER, CANFIELD<br>North Point   Fiftieth Floor   PADDOCK AND STONE,<br>901 Lakeside Avenue   Los Angeles, CA 90071   P.L.C.<br>Cleveland, OH 44114   Tel: (213) 243-2382   150 West Jefferson<br>Tel: (216) 586-3939   Fax: (213) 243-2539   Suite 2500<br>Fax: (216) 579-0212   bbennett@jonesday.com   Detroit, MI 48226<br>dgheiman@jonesday.com     Tel: (313) 963-6420<br>hlennox@jonesday.com     Fax: (313) 496-7500<br>    green@millercanfield.com<br>    laplante@millercanfield.com<br><br>July 18, 2013<br>Date<br><br>*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.<br><br>_____<br>Printed Name and title, if any, of Bankruptcy Petition Preparer<br><br>_____<br>Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)<br><br>Address<br><br>X _____<br>Signature<br><br>Date |

| Signature of Debtor (Corporation/Partnership) | |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X *[signature]*<br>Signature of Authorized Individual<br><br>Kevyn D. Orr<br>Printed Name of Authorized Individual<br><br>Emergency Manager, City of Detroit<br>Title of Authorized Individual<br><br>July 18, 2013<br>Date | Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.<br><br>Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.<br><br>If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

B 1C (Official Form 1, Exhibit C) (9/01)

*[If, to the best of the debtor's knowledge, the debtor owns or has possession of property that poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety, attach this Exhibit "C" to the petition.]*

# UNITED STATES BANKRUPTCY COURT

### Eastern District of Michigan

| | | |
|---|---|---|
| In re   City of Detroit, Michigan, | ) | Case No. 13-_____ |
| Debtor. | ) | |
| | ) | |
| | ) | Chapter 9 |

## EXHIBIT "C" TO VOLUNTARY PETITION

1. Identify and briefly describe all real or personal property owned by or in possession of the debtor that, to the best of the debtor's knowledge, poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety (attach additional sheets if necessary):

Certain properties owned by City of Detroit, Michigan (the "City") have been (a) identified by the City as being structurally unsound and in danger of collapse and (b) scheduled for demolition (collectively, the "Demolition Properties"). The Demolition Properties may pose a threat of imminent harm to public health and/or safety. A list of the Demolition Properties is attached hereto as Schedule 1.

To its knowledge, the City currently does not own any property that is a Superfund Site as designated by the United States Environmental Protection Agency. The City currently owns (in whole or in part) various so-called "Brownfields properties" (collectively, the "Brownfields Properties") regulated by the Michigan Department of Environmental Quality. Currently, one or more private parties (rather than the City) are addressing any identified environmental conditions that might be present at the Brownfields Properties. To the City's knowledge, none of the Brownfields Properties are alleged to pose a threat of imminent and identifiable harm to the public health or safety. A representative list of certain Brownfields Properties is attached hereto as Schedule 2.

In addition to the foregoing, the City owns or is possession of approximately 60,000 parcels of land within the City's geographic boundaries and more than 7,000 vacant structures that are not designated as Demolition Properties or Brownfields Properties (collectively, the "Blighted Properties"). It is possible that some of the Blighted Properties could pose a threat to public health or safety. Although the City is not aware of any Blighted Properties currently posing a threat of "imminent and identifiable harm," the City notes the existence of these properties on this Exhibit C out of an abundance of caution.

2. With respect to each parcel of real property or item of personal property identified in question 1, describe the nature and location of the dangerous condition, whether environmental or otherwise, that poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety (attach additional sheets if necessary):

See attached Schedule 1 with respect to the Demolition Properties and the attached Schedule 2 with respect to the Brownfields Properties.

13-53846   Doc 1   Filed 07/18/13   Entered 07/18/13 16:06:22   Page 5 of 16

13-53846-swr   Doc 1219-7   Filed 10/17/13   Entered 10/17/13 13:56:17   Page 10 of 23 969
13-53846-tjt   Doc 2334-27   Filed 12/27/13   Entered 12/27/13 13:37:04   Page 26 of 39

## SCHEDULE 1

## City of Detroit, Michigan Demolition Properties

| Street Address | Property Type | Street Address | Property Type |
|---|---|---|---|
| 3922 14th | Residential | 20245 Derby | Residential |
| 3654 30th | Residential | 125 Dey | Residential |
| 12032 Abington | Residential | 14190 Dolphin | Residential |
| 2668 Anderdon | Residential | 229 Edmund Pl. | Commercial |
| 821 Anderson | Commercial | 3333 Edsel | Residential |
| 13501 Appoline | Residential | 203 Erskine | Residential |
| 7593 Arcola | Residential | 209 Erskine | Residential |
| 14125 Ardmore | Residential | 4417 Ewers | Residential |
| 13476 Arlington | Residential | 19332 Exeter | Residential |
| 13544 Arlington | Residential | 19339 Exeter | Residential |
| 10384 Aurora | Residential | 20467 Exeter | Residential |
| 2457 Beaubien | Commercial | 1731 Fischer | Residential |
| 2486 Beaubien | Residential | 13556 Fleming | Residential |
| 14371 Bentler | Residential | 7666 W. Fort | Commercial |
| 5317 Bewick | Residential | 5334 French Rd. | Residential |
| 19411 Blake | Residential | 6007 Frontenac | Commercial |
| 19700 Bloom | Residential | 18627 Gable | Residential |
| 6072 Braden | Residential | 3727 Garland | Residential |
| 9665 Broadstreet | Residential | 3917 Garland | Residential |
| 9616 Bryden | Residential | 4466 Garland | Residential |
| 6810 Bulwer | Commercial | 4470 Garland | Residential |
| 1454 Burlingame | Residential | 4003 Gilbert | Residential |
| 13469 Caldwell | Residential | 12511 Glenfield | Residential |
| 2009 Campbell | Residential | 14232 Goddard | Residential |
| 14203 E. Canfield | Residential | 14239 Goddard | Residential |
| 19221 Cardoni | Residential | 11648 Grandmont | Residential |
| 19324 Carrie | Residential | 5801 Grandy [1] | Commercial |
| 7626 Central | Residential | 5801 Grandy [2] | Commercial |
| 2535 Chalmers | Residential | 2937 Grant | Residential |
| 8115 Chamberlain | Residential | 5589 Guilford | Residential |
| 13199 Charest | Residential | 222 S. Harbaugh | Residential |
| 20190 Charleston | Residential | 2900 Harding | Residential |
| 3164 Charlevoix | Commercial | 8815 Harper | Commercial |
| 5083 Chatsworth | Residential | 17226 Hasse | Residential |
| 5717 Chene | Commercial | 7975 Hathon | Residential |
| 3636 Cicotte | Residential | 19227 Havana | Residential |
| 3032 Clements | Residential | 19309 Havana | Residential |
| 1117 Concord | Residential | 19321 Havana | Residential |
| 6628 Crane | Residential | 19397 Havana | Residential |
| 1243 Crawford | Residential | 7886 Helen | Residential |
| 2012 Dalzelle | Residential | 6200 Hereford | Residential |
| 20258 Danbury | Residential | 9905 Herkimer | Residential |
| 7787 Dayton | Residential | 1955 Highland | Residential |
| 8475 Dearborn | Residential | 1778 Holcomb | Residential |
| 1950 Dearing | Residential | 4407 Holcomb | Residential |
| 1956 Dearing | Residential | 4412 Holcomb | Residential |
| 1960 Dearing | Residential | 7202 Holmes | Residential |
| 2027 Dearing | Residential | 9278 Holmur | Residential |
| 8839 Dennison | Residential | 19925 Hoover | Commercial |

13-53846   Doc 1   Filed 07/18/13   Entered 07/18/13 16:06:22   Page 6 of 16
13-53846-swr   Doc 1219-7   Filed 10/17/13   Entered 10/17/13 13:56:17   Page 11 of 23 970
13-53846-tjt   Doc 2334-27   Filed 12/27/13   Entered 12/27/13 13:37:04   Page 27 of 39

| Street Address | Property Type |
|---|---|
| 6360 Horatio | Residential |
| 15518 Idaho [1] | Commercial |
| 15518 Idaho [2] | Commercial |
| 12748 Ilene | Residential |
| 20136 Ilene | Residential |
| 15778 Iliad | Residential |
| 5290 Ivanhoe | Residential |
| 6435 Julian | Commercial |
| 8545 Kenney | Residential |
| 13989 Kentucky | Residential |
| 13301 Kercheval | Commercial |
| 5925 Kopernick | Residential |
| 17137 Lamont | Residential |
| 17208 Lamont | Residential |
| 3839 Lanman | Residential |
| 5206 Lawndale | Residential |
| 2194 Lemay | Residential |
| 3958 Lemay | Residential |
| 1601 Liddesdale | Residential |
| 1029 Liebold | Residential |
| 5065 Lillibridge | Residential |
| 15744 Livernois | Commercial |
| 12558 Longview | Residential |
| 12767 Loretto | Residential |
| 8881 Louis | Residential |
| 13441 Lumpkin | Residential |
| 14242 Mack (a/k/a 3181 Lakewood) | Commercial |
| 12368 MacKay | Residential |
| 12393 MacKay | Residential |
| 12398 MacKay | Residential |
| 13569 MacKay | Residential |
| 13909 MacKay | Residential |
| 13927 MacKay | Residential |
| 13952 MacKay | Residential |
| 13977 MacKay | Residential |
| 13983 MacKay | Residential |
| 459 Manistique | Residential |
| 12000 Mansfield | Residential |
| 8129 Marcus | Residential |
| 4588 Marseilles | Residential |
| 9343 N. Martindale | Residential |
| 8320 Maxwell | Residential |
| 8326 Maxwell | Residential |
| 4766 McDougall | Commercial |
| 2122 Meade | Residential |
| 2420 Meade | Residential |
| 3697 Medbury | Residential |
| 11654 Meyers | Residential |
| 8911 Milner | Residential |
| 2652 Norman | Residential |
| 10002 Nottingham | Residential |

| Street Address | Property Type |
|---|---|
| 5115 Nottingham | Residential |
| 8811 Olivet | Residential |
| 8917 Otsego | Residential |
| 15799 Parkside | Residential |
| 18401 Pembroke | Residential |
| 11172 Promenade | Residential |
| 2101 Puritan | Commercial |
| 5807 Renville | Residential |
| 1957 Richton | Residential |
| 534 W. Robinwood | Residential |
| 6119 Rohns | Residential |
| 14381 Rosa Parks Blvd. | Unknown |
| 11735 Rutherford | Residential |
| 6835 Seminole | Residential |
| 5737 E. Seven Mile | Commercial |
| 2008 Sharon | Residential |
| 13422 Shields | Residential |
| 10201 Shoemaker | Commercial |
| 10956 Shoemaker | Commercial |
| 6750 Sparta | Residential |
| 14291 Spring Garden | Commercial |
| 4467 St. Clair | Residential |
| 6915 St. John | Residential |
| 7180 St. John | Residential |
| 18805 St. Louis | Commercial |
| 1928 Stanley | Residential |
| 12746 Strasburg | Residential |
| 8104 Thaddeus | Residential |
| 4832 Toledo | Residential |
| 6195 Townsend | Residential |
| 9778 Traverse | Residential |
| 17231 Trinity | Residential |
| 2634 Tuxedo | Residential |
| 2522-4 Tyler | Residential |
| 2660 Tyler | Residential |
| 9526 Van Dyke | Commercial |
| 2030 Vinewood | Residential |
| 5757 Vinewood | Commercial |
| 15451 Virgil | Residential |
| 15300 E. Warren (Bldgs. 101 & 102) | Commercial |
| 64 Watson | Commercial |
| 6414 Willette | Unknown |
| 4364 Woodhall | Residential |
| 11640 Woodmont | Residential |
| 12075 Woodmont | Residential |
| 12136 Woodmont | Residential |
| 12153 Woodmont | Residential |
| 11365 Yosemite | Residential |
| 11402 Yosemite | Residential |

-3-

Doc 1   Filed 07/18/13   Entered 07/18/13 16:06:22   Page 7 of 16

13-53846

13-53846-swr   Doc 1219-7   Filed 10/17/13   Entered 10/17/13 13:56:17   Page 12 of 23 971
13-53846-tjt   Doc 2334-27   Filed 12/27/13   Entered 12/27/13 13:37:04   Page 28 of 39

## SCHEDULE 2

### City of Detroit, Michigan Brownfields Properties

| Name of Site | Description |
|---|---|
| Former Detroit Coke Site | 7819 West Jefferson Avenue |
| Belleview Development (Uniroyal) Site | 600 East Jefferson. 43-acre former Uniroyal site located in the East Riverfront District, bounded by Jefferson Avenue (to the north), MacArthur Bridge (to the east), Detroit River (to the south) and Meldrum Street (to the west). |
| Riverside Park Site | 3085 West Jefferson Avenue. West Grand Boulevard and 24th Street along the Detroit River. |

13-53846   Doc 1   Filed 07/18/13   Entered 07/18/13 16:06:22   Page 8 of 16

13-53846-swr   Doc 1219-7   Filed 10/17/13   Entered 10/17/13 13:56:17   Page 13 of 23 972
13-53846-tjt   Doc 2334-27   Filed 12/27/13   Entered 12/27/13 13:37:04   Page 29 of 39



EMERGENCY MANAGER
CITY OF DETROIT

ORDER No. 13

FILING OF A PETITION UNDER CHAPTER 9
OF TITLE 11 OF THE UNITED STATES CODE

BY THE AUTHORITY VESTED IN THE EMERGENCY MANAGER
FOR THE CITY OF DETROIT
PURSUANT TO MICHIGAN'S PUBLIC ACT 436 OF 2012,
KEVYN D. ORR, THE EMERGENCY MANAGER,
ISSUES THE FOLLOWING ORDER:

*Whereas*, on March 28, 2013, Michigan Public Act 436 of 2012 ("PA 436") became effective and Kevyn D. Orr became the Emergency Manager (the "EM") for the City of Detroit (the "City") with all the powers and duties provided under PA 436; and

Pursuant to section 9(2) of PA 436, the EM "shall act for and in the place and stead of" the Detroit Mayor and City Council; and

Section 9(2) of PA 436 also grants the EM "broad powers in receivership to rectify the financial emergency and to assure the fiscal accountability of the [City] and the [City's] capacity to provide or cause to be provided necessary governmental services essential to the public health, safety, and welfare;" and

Pursuant to section 10(1) of PA 436, the EM may "issue to the appropriate local elected and appointed officials and employees, agents, and contractors of the local government the orders the [EM] considers necessary to accomplish the purposes of this act;" and

Section 18(1) of PA 436 provides that "[i]f, in the judgment of the [EM], no reasonable alternative to rectifying the financial emergency of the local government which is in receivership exists, then the [EM] may recommend to the governor and the

13-53846   Doc 1   Filed 07/18/13   Entered 07/18/13 16:06:22   Page 9 of 16

13-53846-swr   Doc 1219-7   Filed 10/17/13   Entered 10/17/13 13:56:17   Page 14 of 23 973
13-53846-tjt   Doc 2334-27   Filed 12/27/13   Entered 12/27/13 13:37:04   Page 30 of
39

state treasurer that the local government be authorized to proceed under chapter 9" of title 11 of the United States Code (the "Bankruptcy Code"); and

Section 18(1) of PA 436 further provides that "[i]f the governor approves of the [EM's] recommendation, the governor shall inform the state treasurer and the emergency manager in writing of the decision…. Upon receipt of the written approval, the emergency manager is authorized to proceed under chapter 9 [of the Bankruptcy Code]. This section empowers the local government for which an emergency manager has been appointed to become a debtor under [the Bankruptcy Code], as required by section 109 of [the Bankruptcy Code], and empowers the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9" of the Bankruptcy Code; and

In accordance with section 18 of PA 436, the EM has recommended to the Governor of Michigan (the "Governor") and the Michigan State Treasurer (the "State Treasurer") that the City be authorized to proceed under chapter 9 of the Bankruptcy Code (the "Recommendation"); and

The Governor has provided the State Treasurer and the EM with his written approval of the Recommendation, a true and correct copy of which is attached hereto as Exhibit A, thereby authorizing the City to proceed under chapter 9.

It is hereby ordered that:

1. The City shall file a petition for relief under chapter 9 of the Bankruptcy Code (the "Petition") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court").

2. The City's Corporation Counsel, financial advisors, outside legal advisors and other officers and employees of the City, as applicable, are hereby authorized and directed, on behalf of and in the name of the City, to execute and verify the Petition and related Bankruptcy Court filings and perform any and all such acts as are reasonable, appropriate, advisable, expedient, convenient, proper or necessary to carry out this Order, as and to the extent directed by the EM or his designee.

3. If any component of this Order is declared illegal, unenforceable or ineffective in a legal or other forum or proceeding such component shall be deemed severable so that all other components contained in this Order shall remain valid and effective.

4. This Order is effective immediately upon the date of execution below.

5. This Order shall be distributed to the Mayor, City Council members and all department heads.

2        Entered 07/18/13 16:06:22      Page 10 of 16

13-53846    Doc 1    Filed 07/18/13

13-53846-swr    Doc 1219-7    Filed 10/17/13    Entered 10/17/13 13:56:17    Page 15 of 23 974
13-53846-tjt    Doc 2334-27    Filed 12/27/13    Entered 12/27/13 13:37:04    Page 31 of 39

6. The EM may modify, rescind, or replace this Order at any time.

By: _____
Kevyn D. Orr
Emergency Manager
City of Detroit

Dated: July 18, 2013

cc:    State of Michigan Department of Treasury
       Mayor David Bing
       Members of Detroit City Council

3

13-53846   Doc 1   Filed 07/18/13   Entered 07/18/13 16:06:22

13-53846-swr   Doc 1219-7   Filed 10/17/13   Entered 10/17/13 13:56:17   Page 16 of 23 975
13-53846-tjt   Doc 2334-27   Filed 12/27/13   Entered 12/27/13 13:37:04   Page 32 of 39

# EXHIBIT A

## Governor's Written Approval of Recommendation

13-53846    Doc 1    Filed 07/18/13    Entered 07/18/13 16:06:22    Page 12 of 16

13-53846-swr    Doc 1219-7    Filed 10/17/13    Entered 10/17/13 13:56:17    Page 17 of 23 976
13-53846-tjt    Doc 2334-27    Filed 12/27/13    Entered 12/27/13 13:37:04    Page 33 of
39



STATE OF MICHIGAN
EXECUTIVE OFFICE
LANSING

RICK SNYDER
GOVERNOR

BRIAN CALLEY
LT. GOVERNOR

July 18, 2013

VIA HAND AND ELECTRONIC DELIVERY

Kevyn D. Orr
Emergency Manager
City of Detroit
Coleman A. Young Municipal Center
2 Woodward Ave., Suite 1126
Detroit, MI 48226

Andrew Dillon
State Treasurer
Michigan Department of Treasury
4th Floor Treasury Building
430 W. Allegan Street
Lansing, MI 48992

Re: Authorization to Commence Chapter 9 Bankruptcy Proceeding

Dear Mr. Orr and Mr. Dillon,

I have reviewed Mr. Orr's letter of July 16, 2013, requesting my approval of his recommendation to commence a bankruptcy proceeding for the City of Detroit under Chapter 9 of title 11 of the United States Code. As you know, state law requires that any such recommendation must first be approved by the Governor before the emergency manager may take that step. MCL 141.1558. For the reasons discussed below, I hereby approve that recommendation and authorize Mr. Orr to make such a filing.

## Current Financial Emergency

In reviewing Mr. Orr's letter, his Financial and Operating Plan, and his report to creditors, it is clear that the financial emergency in Detroit cannot be successfully addressed outside of such a filing, and it is the only reasonable alternative that is available. In other words, the City's financial emergency cannot be satisfactorily rectified in a reasonable period of time absent this filing.

I have reached the conclusion that this step is necessary after a thorough review of all the available alternatives, and I authorize this necessary step as a last resort to return this great City to financial and civic health for its residents and taxpayers. This decision comes in the wake of 60 years of decline for the City, a period in which reality was often

GEORGE W. ROMNEY BUILDING • 111 SOUTH CAPITOL AVENUE • LANSING, MICHIGAN 48909
www.michigan.gov

13-53846   Doc 1   Filed 07/18/13   Entered 07/18/13 16:06:22   Page 13 of 16

ignored. I know many will see this as a low point in the City's history. If so, I think it will also be the foundation of the City's future – a statement I cannot make in confidence absent giving the City a chance for a fresh start, without burdens of debt it cannot hope to fully pay. Without this decision, the City's condition would only worsen. With this decision, we begin to provide a foundation to rebuild and grow Detroit.

Both before and after the appointment of an emergency manager, many talented individuals have put enormous energy into attempting to avoid this outcome. I knew from the outset that it would be difficult to reverse 60 years of decline in which promises were made that did not reflect the reality of the ability to deliver on those promises. I very much hoped those efforts would succeed without resorting to bankruptcy. Unfortunately, they have not. We must face the fact that the City cannot and is not paying its debts as they become due, and is insolvent.

After reading Mr. Orr's letter, the Financial and Operating Plan, and the report to creditors, I have come to four conclusions.

1. Right now, the City cannot meet its basic obligations to its citizens.

2. Right now, the City cannot meet its basic obligations to its creditors.

3. The failure of the City to meet its obligations to its citizens is the primary cause of its inability to meet its obligations to its creditors.

4. The only feasible path to ensuring the City will be able to meet obligations in the future is to have a successful restructuring via the bankruptcy process that recognizes the fundamental importance of ensuring the City can meet its basic obligations to its citizens.

I will explain how I came to each conclusion.

**Inability to Meet Obligations to Its Citizens.** As Mr. Orr's Financial and Operating Plan and the June 14 Creditor Proposal have noted, the scale and depth of Detroit's problems are unique. The City's unemployment rate has nearly tripled since 2000 and is more than double the national average. Detroit's homicide rate is at the highest level in nearly 40 years, and it has been named as one of the most dangerous cities in America for more than 20 years. Its citizens wait an average of 58 minutes for the police to respond to their calls, compared to a national average of 11 minutes. Only 8.7% of cases are solved, compared to a statewide average of 30.5%. The City's police cars, fire trucks, and ambulances are so old that breakdowns make it impossible to keep up the fleet or properly carry out their roles. For instance, only a third of the City's ambulances were in service in the first quarter of 2013. Similarly, approximately 40% of the City's street lights were not functioning in that quarter and the backlog of complaints is more than 3,300 long. Having large swaths of largely abandoned structures -- approximately 78,000 – creates additional public safety problems and reduces the quality of life in the City. Mr. Orr is correct that meeting the obligations the City has to

13-53846   Doc 1   Filed 07/18/13   Entered 07/18/13 16:06:22   Page 14 of 16

13-53846-swr   Doc 1219-7   Filed 10/17/13   Entered 10/17/13 13:56:17   Page 19 of 23 978
13-53846-tjt   Doc 2334-27   Filed 12/27/13   Entered 12/27/13 13:37:04   Page 35 of 39

its citizens to provide basic services requires more revenue devoted to services, not less.

**Inability to Meet Obligations to Its Creditors.** The City has more than $18 billion in accrued obligations. A vital point in Mr. Orr's letter is that Detroit tax rates are at their current legal limits, and that even if the City was legally able to raise taxes, its residents cannot afford to pay additional taxes. Detroiters already have a higher tax rate than anywhere in Michigan, and even with that revenue the City has not been able to keep up with its basic obligations, both to its citizens and creditors. Detroit simply cannot raise enough revenue to meet its current obligations, and that is a situation that is only projected to get worse absent a bankruptcy filing.

**Failure to Meet Obligations to Citizens Creates Failure to Meet Obligations to Creditors.** Mr. Orr's letter and prior report put in stark reality the dramatic impact of the City's plummeting population. While many who love Detroit still live there, many other Detroiters at heart could not justify the sacrifice of adequate services. The City's population has declined 63% from its peak, including a 28% decline since 2000. That exodus has brought Detroit to the point that it cannot satisfy promises it made in the past. A decreasing tax base has made meeting obligations to creditors impossible. Mr. Orr is correct when he says the City cannot raise the necessary revenue through tax increases, and it cannot save the necessary revenue through reducing spending on basic services. Attempts to do so would only decrease the population and tax base further, making a new round of promises unfulfillable.

**Only One Feasible Path Offers a Way Out.** The citizens of Detroit need and deserve a clear road out of the cycle of ever-decreasing services. The City's creditors, as well as its many dedicated public servants, deserve to know what promises the City can and will keep. The only way to do those things is to radically restructure the City and allow it to reinvent itself without the burden of impossible obligations. Despite Mr. Orr's best efforts, he has been unable to reach a restructuring plan with the City's creditors. I therefore agree that the only feasible path to a stable and solid Detroit is to file for bankruptcy protection.

The past weeks have reaffirmed my confidence that Mr. Orr has the right priorities when it comes to the City of Detroit. I am reassured to see his prioritization of the needs of citizens to have improved services. I know we share a concern for the public employees who gave years of service to the City and now fear for their financial future in retirement, and I am confident that all of the City's creditors will be treated fairly in this process. We all believe that the City's future must allow it to make the investment it needs in talent and in infrastructure, all while making only the promises it can keep. Let us remain in close communication regarding measures Mr. Orr might take so we can discuss the possible impacts that might occur both within and outside of the City.

13-53846    Doc 1    Filed 07/18/13    Entered 07/18/13 16:06:22    Page 15 of 16

13-53846-swr    Doc 1219-7    Filed 10/17/13    Entered 10/17/13 13:56:17    Page 20 of 23 979
13-53846-tjt    Doc 2334-27    Filed 12/27/13    Entered 12/27/13 13:37:04    Page 36 of 39

### Contingencies

2012 PA 436 provides that my approval of the recommendation to commence a Chapter 9 proceeding may place contingencies on such a filing. MCL 141.1558(1). I am choosing not to impose any such contingencies today. Federal law already contains the most important contingency – a requirement that the plan be legally executable. 11 USC 943(b)(4).

### Conclusion

In conclusion, I find Mr. Orr's Recommendation Letter to be persuasive, especially in conjunction with his prior reports laying out the level of services the City can provide and its financial ability to meet its obligations to creditors. I am also convinced that Mr. Orr has exercised his best efforts to arrive at a restructuring plan with the City's creditors outside of bankruptcy, to no avail. Given these facts, the only feasible path to sustainability for the City of Detroit is a filing under chapter 9 of the bankruptcy code. Therefore, I hereby approve Mr. Orr's recommendation and authorize the emergency manager to make such a filing on behalf of the City of Detroit and to take all actions that are necessary and appropriate toward that end.

Sincerely,

Richard D. Snyder
Governor
State of Michigan

13-53846    Doc 1    Filed 07/18/13    Entered 07/18/13 16:06:22    Page 16 of 16

13-53846-swr    Doc 1219-7    Filed 10/17/13    Entered 10/17/13 13:56:17    Page 21 of 23 980
13-53846-tjt    Doc 2334-27    Filed 12/27/13    Entered 12/27/13 13:37:04    Page 37 of 39

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

        Plaintiffs,

        vs

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

        Defendants.

Case No. 13-734-CZ

HON. ROSEMARIE AQUILINA

---

John R. Canzano (P30417)
McKnight, McClow, Canzano,
   Smith & Radke, P.C.
400 Galleria Officentre, Suite 117
Southfield, Michigan 48034
(248) 345-9650
jcanzano@michworklaw.com
Counsel for Plaintiffs

Thomas Quasarano (P27982)
Brian Devlin (P34685)
Assistant Attorneys General
Department of Attorney General
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-1162
quasaranot@michigan.gov
devlinb@michigan.gov
Attorneys for Defendants

---

## PROOF OF SERVICE

    I certify that a copy of the Notice of Suggestion of Pendency of Bankruptcy Case and Application of the Automatic Stay and this Proof of Service were served via electronically and ordinary first class, U.S. mail, this 19th day of July 19, 2013, in a properly addressed, sealed envelope, with postage fully prepaid, upon the following:

John R. Canzano (P30417)
McKnight, McClow, Canzano,
    Smith & Radke, P.C.
400 Galleria Officentre, Suite 117
Southfield, Michigan 48034
*jcanzano@michworklaw.com*

Thomas Quasarano
Brian Devlin
Assistant Attorneys General
Department of Attorney General
P.O. Box 30754
Lansing, Michigan 48909
*quasaranot@michigan.gov*
*devlinb@michigan.gov*

I declare under the penalties of perjury that the foregoing statement is true and correct to the best of my information and belief.

Kimberly L. Scott (P69706)
Miller, Canfield, Paddock and Stone, PLC
101 N. Main Street
Ann Arbor, MI 48104
Phone: (734) 668-7696

2

13-53846-swr    Doc 1219-7    Filed 10/17/13    Entered 10/17/13 13:56:17    Page 23 of 23  982
13-53846-tjt    Doc 2334-27    Filed 12/27/13    Entered 12/27/13 13:37:04    Page 39 of 39