HONORABLE ROSEMARIE E. AQUILINA
INGHAM COUNTY CIRCUIT JUDGE
GENERAL TRIAL DIVISION

313 W. KALAMAZOO STREET
LANSING, MICHIGAN 48933
PHONE: (517) 483-6526
FAX: (517) 483-6534
E-MAIL: RAQUILINA@INGHAM.ORG

# State of Michigan

## Ingham County Circuit Court

### PROOF OF SERVICE

I hereby certify I served a copy of the Order of Declaratory Judgment in case number 13-734-CZ upon Plaintiffs, Defendants, and the President of the United States, Barack Obama, by placing the Order of Declaratory Judgment in case number 13-734-CZ in sealed envelopes addressed to John R. Canzano, attorney for Plaintiffs, Thomas Quasarano and Brian Devlin, attorneys for Defendants, and President Barack Obama, and deposited for mailing with the United States Mail at Lansing, Michigan on July 23, 2013.

JOHN R. CANZANO
McKNIGHT, McCLOW, CANZANO, SMITH & RADTKE, P.C.
400 GALLERIA OFFICENTRE, SUITE 117
SOUTHFIELD, MICHIGAN 48034

Dept of Attorney General
AUG 06 2013
State ... Division
...

THOMAS QUASARANO
BRIAN DEVLIN
ASSISTANT ATTORNEY GENERAL
STATE OPERATIONS DIVISION
2ND FLOOR G. WILLIAMS BUILDING
525 WEST OTTAWA STREET
P.O. BOX 30754
LANSING, MICHIGAN 48909

PRESIDENT BARACK OBAMA
PRESIDENT OF THE UNITED STATES OF AMERICA
THE WHITE HOUSE
1600 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20500

Morgan E. Cole (P75166)

**Morgan E. Cole (P75166)**
Law Clerk to the Honorable Rosemarie E. Aquilina

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

Plaintiffs,

vs

Case No. 13-734-CZ
Hon. Rosemarie Aquilina

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

Defendants.

/

ORDER OF DECLARATORY JUDGMENT

At a session of said Court held in Ingham County Circuit Court,
State of Michigan, this 19th day of July, 2013.

PRESENT: Rosemarie E Aquilina
Circuit Court Judge

Plaintiffs request declaratory relief pursuant to MCR 2.605 concerning (1) the constitutionality under Article IX Section 24 of the Michigan Constitution of the Local Financial Stability and Choice Act, 2012 PA 436, MCL 141.1541, *et seq*. ("PA 436"), insofar as PA 436 permits the Governor to authorize an emergency manager to proceed under chapter 9 of the bankruptcy code, chapter 9 of title 11 of the United States Code, 29 USC 901 to 946 ("Chapter 9") in a manner which threatens to diminish or impair accrued pension benefits; and (2) the

authority of the Governor and/or State Treasurer to authorize an emergency manager to proceed under Chapter 9 in a manner which threatens to diminish or impair accrued pension benefits.

Plaintiffs have requested, and Defendants have agreed in their Response, that the hearing in this matter may be advanced pursuant to MCR 2.605(D) and the court finds that expedited treatment is appropriate and that final declaratory relief is proper at this time.

The Court having reviewed the parties filings and submissions, and having heard oral argument by counsel for the parties, and being otherwise fully advised in the premises, and for the reasons stated on the record,

IT IS HEREBY ORDERED:

PA 436 is unconstitutional and in violation of Article IX Section 24 of the Michigan Constitution to the extent that it permits the Governor to authorize an emergency manager to proceed under Chapter 9 in any manner which threatens to diminish or impair accrued pension benefits; and PA 436 is to that extent of no force or effect;

The Governor is prohibited by Article IX Section 24 of the Michigan Constitution from authorizing an emergency manager under PA 436 to proceed under Chapter 9 in a manner which threatens to diminish or impair accrued pension benefits, and any such action by the Governor is without authority and in violation of Article IX Section 24 of the Michigan Constitution.

On July 16, 2013, City of Detroit Emergency Manager Kevyn Orr submitted a recommendation to Defendant Governor Snyder and Defendant Treasurer Dillon pursuant to Section 18(1) of PA 436 to proceed under Chapter 9, which together with the facts presented in Plaintiffs' filings, reflect that Emergency Manager Orr intended to diminish or impair accrued pension benefits if he were authorized to proceed under Chapter 9. On July 18, 2013, Defendant

Governor Snyder approved the Emergency Manager's recommendation without placing any contingencies on a Chapter 9 filing by the Emergency Manager; and the Emergency Manager filed a Chapter 9 petition shortly thereafter. By authorizing the Emergency Manager to proceed under Chapter 9 to diminish or impair accrued pension benefits, Defendant Snyder acted without authority under Michigan law and in violation of Article IX Section 24 of the Michigan Constitution.

In order to rectify his unauthorized and unconstitutional actions described above, the Governor must (1) direct the Emergency Manager to immediately withdraw the Chapter 9 petition filed on July 18, and (2) not authorize any further Chapter 9 filing which threatens to diminish or impair accrued pension benefits.

A copy of this Order shall be transmitted to President Obama.

It is so Ordered.

Rosemarie E. Aquilina P37670

Circuit Court Judge

*STATE OF MICHIGAN*
*30TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF INGHAM*
*CIVIL DIVISION*

THE GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT, and THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT,

Plaintiffs,

v

Case No. 13-768-CZ
Hon. Rosemarie Aquilina

KEVYN D. ORR, in his official capacity as the EMERGENCY MANAGER OF THE CITY OF DETROIT, and RICHARD SNYDER, in his official capacity as the GOVERNOR OF THE STATE OF MICHIGAN,

Defendants.
_____________________________/

GRACIE WEBSTER and VERONICA THOMAS,

Plaintiffs,

v

Case No. 13-734-CZ
Hon. Rosemarie Aquilina

THE STATE OF MICHIGAN; RICHARD SNYDER, as Governor of the State of Michigan; and ANDY DILLON, as Treasurer of the State of Michigan,

Defendants.
_____________________________/

ROBBIE FLOWERS, MICHAEL WELLS, JANET WHITSON, MARY WASHINGTON, and BRUCE GOLDMAN,

Plaintiffs,

v

Case No. 13-729-CZ
Hon. Rosemarie Aquilina

RICK SNYDER, as the Governor of the State of Michigan; ANDY DILLON, as the Treasurer of the State of Michigan; and the STATE OF MICHIGAN,

Defendants.
_____________________________/

*MOTION FOR PRELIMINARY INJUNCTION*

*BEFORE THE HON. ROSEMARIE AQUILINA, CIRCUIT JUDGE*

*Ingham County, Michigan - Thursday, July 18, 2013*

APPEARANCES:

For Plaintiffs Retirement Systems:
RONALD A. KING (P45088)
MICHAEL J. PATTWELL (P72419)
CLARK HILL PLC
212 East Grand River Ave.
Lansing, MI 48906

For Plaintiffs Webster, et al.:
JOHN R. CANZANO (P30417)
Smith & Radtke, PC
400 Galleria Officentre, Ste. 117
Southfield, MI 48034

For Plaintiffs Flowers, et al.:
WILLIAM A. WERTHEIMER (P26275)
Attorney at Law
30515 Timberbrook Lane
Bingham Farms, MI 48025

For the Defendants: THOMAS QUASARANO (P27982)
Assistant Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909

REPORTED BY: Melinda I. Dexter, RMR, RPR, CSR-4629
Official Court Reporter
313 W. Kalamazoo
Post Office Box 40771
Lansing, MI 48901-7971

*T A B L E   O F   C O N T E N T S*

WITNESSES:

None

EXHIBITS:

None

Ingham County, Mi an

Thursday, July 18, 2013 - At 4:15 p.m.

MR. KING: Good afternoon.

THE COURT: Good afternoon. We have everybody here?

MR. KING: They are.

THE COURT: All right. This is Docket 13-768-CZ, the General Retirement System of the City of Detroit and the Police and Fire Retirement System of the City of Detroit versus Kevin D. Orr, in his official capacity as the Emergency Manager of the City of Detroit, and Richard Snyder, in his official capacity as the Governor of the State of Michigan.

Counsel, your appearances for the record.

MR. KING: Good afternoon, your Honor. Ron King with Clark Hill on behalf of the Plaintiffs, the General Retirement System of the City of Detroit and the Police and Fire Retirement System of the City of Detroit.

THE COURT: Welcome.

MR. KING: Thank you.

MR. QUASARANO: Your Honor, if I may, Thomas Quasarano, Assistant Attorney General, that will be appearing in this case on behalf of the Defendant. I believe the Defendant was served yesterday. We have not received a request for representation, but I'm very

likely going to be asked to represent the Governor.

THE COURT: Sir?

MR. WERTHEIMER: Excuse me, your Honor, William Wertheimer. I apologize for my dress.

THE COURT: No problem. I know it's last minute. I don't care how people are dressed. It's more important that you are here.

MR. WERTHEIMER: Thank you, your Honor. I was here to file my reply brief today for the Monday hearing. I am now here knowing that this motion has been filed, and I wanted to enter my appearance.

THE COURT: All right. You may have a seat. There is plenty of room for all.

MR. WERTHEIMER: Thank you.

MR. CANZANO: Your Honor, excuse me, John Canzano, Plaintiffs' attorney in the Webster case. Same as Mr. Wertheimer, we just found out about this. I'm here. My reply brief is being filed. I have a judge's copy here somewhere.

THE COURT: All right. Have a seat.

MR. KING: Your Honor --

THE COURT: Anybody else?

MR. PATTWELL: Your Honor, Michael Pattwell from Clark Hill on behalf of Plaintiffs.

THE COURT: Thank you.

C ...l?

MR. KING: Your Honor, Ron King again on behalf of the Plaintiffs, the Detroit Retirement Systems. We might need to beg the Court's indulgence. While we appreciate that you have seen us on very short notice, we've been advised that the City has filed, and we're pulling it up on the electronic filing system, so we might need a few minutes here to figure out our very next step.

THE COURT: Okay.

MR. KING: Because the effect of a bankruptcy filing, if, in fact, that's -- we're trying to conform that. We think, in fact, it has been filed here within the last half hour. So we probably need about a ten-minute recess here, if the Court would indulge us. I know you have another matter.

THE COURT: Do we want to make a phone call?

MR. KING: Yeah. We can, but we're pretty --

THE COURT: Well, here's the thing: If they haven't filed, we need to hurry up and proceed. If they have filed --

MR. KING: We're pretty confident that they filed.

Right?

I mean, we're pulling it up. Yeah. It's been

confirmed. So I'm not sure where that leaves us with this proceeding because it's going to be pretty hard to undue. It's been done.

MR. WERTHEIMER: There is no automatic stay in this.

MR. KING: Yeah. What we're here for -- the really --

What counsel is saying is there is no automatic stay with respect to this proceeding. So in our judgment, this matter will proceed. What you have before you, however, is a motion for temporary restraining order to enjoin certain conduct that's already occurred. So I'm not sure that we really have a lot of business in front of the Court at this moment, but I would like to just confer for about ten minutes on that issue because we will proceed in the case. And if we're here and you want to take the time to set some sort of expedited briefing schedule, we could do that also.

It's quite likely that you, your Honor, will be able to make a ruling on the merits of this case in advance of whatever occurs in the context of a Chapter 9 filing.

THE COURT: I plan on making a ruling on Monday. I could make a ruling tomorrow, if push came to shove, but Monday would probably be soon enough. I am

confident that the bankrupt ourt won't act as quickly as I will.

MR. KING: Yeah. I'm not sure, but we'll see. I mean, there might -- but, nevertheless, so we should --

If you're prepared to rule on the merits on Monday, again I'm not sure what -- if there is much business for us left to do before the Court today.

THE COURT: Unless some kind of -- I don't really have any authority over them, so.

MR. KING: Right.

THE COURT: I don't think anything --

Counsel?

MR. WERTHEIMER: Your Honor, the motion that's up for Monday, our motion at least that's up for Monday, is a request for a preliminary injunction to enjoin the Governor. We have no evidence the Governor has authorized any bankruptcy, and we would not only want to go forward on Monday but ask that the motion for preliminary injunction be moved up to now, hopefully, to tomorrow morning if the Court will not hear it now. But I don't think there is any reason why the Court cannot hear our motion for preliminary injunction.

I'm not talking about in terms of the Court's preparedness but in terms of the apparent filing. They may have filed. But nobody -- I asked the Governor's

Office before we came in here -- er, the Attorney General whether they could make any representations to me that would obviate the need for me going forward, and they could not.

So we've got a written, fully briefed request/ motion for preliminary injunction. The Attorney General's Office has briefed it. Time is obviously of the essence. I would suggest that the Court hear our motion to preliminarily enjoin the Governor authorizing a bankruptcy now.

MR. CANZANO: Your Honor, I would make essentially the same request except that our motion, although it seeks preliminary injunctive relief in the alternative, it primarily seeks a final declaratory judgment that what has just happened, apparently, is unconstitutional, and that is ready for a final decision we were saying on Monday. We have a reply brief that has just been filed, and we would -- we could -- this Court could issue that order immediately, and I don't know what the consequences for the bankruptcy court would be, necessarily, but I think it would -- it might make a difference.

MR. WERTHEIMER: I'm sorry, and I think that at a minimum, your Honor, I think we should -- I think the Court should decide the preliminary injunction now, but

we should ut from the Office of the Attorney General whether the Governor has authorized a bankruptcy that has done the act that we were attempting to enjoin and that they knew we were attempting to enjoin and that they've known for the last two weeks and that they're filing briefs on saying that it's not ripe. The attorneys for the Government have represented to this Court that our motion is not ripe.

THE COURT: I just received a note from my law clerk that says the bankruptcy was filed at 4:06.

MR. KING: Right. Your Honor, so what we'd like to do here is amend our emergency motion for temporary restraining order and get it and request from this Court an order enjoining the Governor and the Emergency Manager from taking any further action in the bankruptcy proceeding, and we'll modify our order to that effect.

MR. WERTHEIMER: I would join that as to the Governor. We have not sued the Detroit Emergency Manager, but I would orally join in that motion as to the Governor and the Secretary of the Treasury.

MR. CANZANO: I would say the same in our case. We're not joining their motion but we're making a motion in our case that would be the same as theirs only against the Governor.

THE COURT: Granted, as to all of your requests.

How soon are you going to present me with an order?

MR. KING: Right now.

THE COURT: All right.

MR. KING: We just need to mark up the order that we have for the Court.

THE COURT: Absolutely.

MR. QUASARANO: Your Honor, if I may, we would ask that the Court stays enforcement of the order, and your ruling on that would be appreciated at this time.

THE COURT: Denied.

MR. QUASARANO: Thank you. We'll present an order as soon as possible.

THE COURT: Thank you.

MR. QUASARANO: Thank you, Judge.

MR. WERTHEIMER: Your Honor, we will need a few minutes to prepare a written order, but if we can --

THE COURT: Well, sir, would you like to copy that and modify what they're doing? My law clerk will be happy to help you.

MR. WERTHEIMER: Thank you, your Honor.

THE COURT: As to your stay, you'll be getting that to me in --

MR. QUASARANO: be I can just make a call and get an order over to you right yet today.

THE COURT: Sure. You can even handwrite it. I don't care how we do it. You can run it over here, fax it over here; whatever gets you the job done. Time is of the essence.

MR. QUASARANO: I appreciate that.

MR. KING: (Approaching the bench.)

Your Honor, Ron King again on behalf of the Plaintiffs. If we could go back on the record.

THE COURT: Excuse me.

MR. KING: We'd like to set the sequence of events in terms of how things have transpired in the last hour, if you will. Just for the record, our motion for emergency temporary restraining order was filed at 3:37 p.m.; that is, today, July 18th. We promptly, well in advance of 4 o'clock and probably within -- well, actually, we had delivered prior to the filing time at 3:37 judge's copies to chambers for your review.

Then we waited for the Attorney General, who doesn't feel compelled to make an appearance here in this case because he hasn't actually been officially retained yet, but, nevertheless, as a courtesy we waited for him to appear, which he came upstairs sometime around 4:10. We understand the bankruptcy filing was at 4:05?

THE COURT: 4:06.

MR. KING: 4:06. The Court took the bench at approximately 4:20. And to the extent your Honor has had an opportunity to read the papers and was inclined to make a ruling, if you'd be willing to put that on the record, then in the -- when we do seek dismissal of the bankruptcy proceeding, we'll have some clear record of the sequence of events here.

MR. WERTHEIMER: Just to add, in terms of the sequence of events, I did advise by telephone Mr. Quasarano of the fact that I would be in court and that it was my understanding that Clark Hill was going to be in court seeking a temporary restraining order. I talked to him by phone before 4 this afternoon, sometime between 3:30 and 4.

MR. QUASARANO: And I could confirm that Mr. Wertheimer gave me the professional curtesy of letting me know that there was a hearing being planned. I had no -- we have no personal knowledge in our division of a bankruptcy being filed any certain time or date, so there is nothing we could provide in terms of a response that there is going to be a bankruptcy filed. So we learned it as everyone else learned.

THE COURT: All right. And obviously I heard this was happening. I had another hearing that was

supposed place at 4 o'clock, and I understood this was a very important issue, and we obviously have a hearing scheduled, another hearing scheduled, at 9 o'clock on Monday.

So I advised my law clerk that we had a 4 o'clock hearing that wasn't going to take very long, and whenever you all got here and that we would wait for all of the attorneys, we would then have a hearing and to let me know when everybody was in place and then I would come out.

So that's exactly what happened. She let me know everybody was here, gave me the paperwork to look over, and, of course, I did just that. And we got out of here as quickly as we could, obviously not in time because 4:06 occurred and they did what they were going to do, which I know you all raised here.

I did have an opportunity to -- with review of what was filed, and you're asking me what I would have done, and it was my intention, after reviewing what you had filed, in addition to other research that my capable externs from Cooley and from Michigan State, as well as my very capable law clerk pulled for me, I reviewed constitutional provisions, I reviewed legislative intent, I reviewed what you all provided me, I reviewed a lot of information in the last few hours, and it was my

intention to grant you your request completely.

MR. KING: Thank you, your Honor. Appreciate your clarifying the record.

MR. WERTHEIMER: Thank you, your Honor. Your Honor, we have a proposed order.

THE COURT: You may approach. Thank you.

MR. WERTHEIMER: Thank you. It is handwritten. (Approaching the bench.)

THE COURT: No problem.

MR. WERTHEIMER: And for caption, it just says, at this point, Flowers Caption.

THE COURT: Okay.

MR. WERTHEIMER: I had some help in drafting too if you can't read the --

THE COURT: We'll make it work.

MR. WERTHEIMER: Okay. Thank you, Judge.

MR. KING: We may be back tomorrow, your Honor.

MR. WERTHEIMER: We may be back too, your Honor. And if we are, I will be in a suit.

THE COURT: It's okay. As long as your body is covered, I don't care what's it's covered with.

MR. KING: I think with respect to the present motion before you, we have an order in place and appreciate you making the accomodation and time for us today. Thank you.

THE COURT: No pr... em.

Now, if you're back tomorrow, what is it going to be for?

MR. KING: We might file a mandamus action requiring the EM to withdraw the Chapter 9 filing.

THE COURT: Will this require time on the record?

MR. KING: Yes.

THE COURT: Okay. My time restriction is that I have my morning free until about 1:30. Can you get it here before 1:30?

MR. PATTWELL: Yes.

MR. KING: Absolutely.

THE COURT: I'll make myself available all morning until 1:30.

MR. KING: Thank you, your Honor.

THE COURT: Okay.

MR. CANZANO: May I approach, your Honor? I have an order drafted also.

THE COURT: You may.

MR. CANZANO: (Approaching the bench.)

THE COURT: Okay. We'll make you copies, and this is our copy.

Anything else for the record?

MR. KING: No, your Honor. Thank you.

MR. WERTHEIMER: No, your Honor. Thank you.

THE COURT: That's all for the record. Thank you.

(At 4:38 p.m., the matter is concluded.)

STATE OF MICHIGAN)
) SS.
COUNTY OF INGHAM)

CERTIFICATE OF REPORTER

I, Melinda I. Dexter, Certified Shorthand Reporter, do hereby certify that the foregoing **17 pages** comprise an accurate, true, and complete transcript of the proceedings and testimony taken in the case of **The General Retirement System of the City of Detroit, et al., versus Kevyn D. Orr, et al., Case No. 13-768-CZ, and Gracie Webster, et al., versus the State of Michigan, et al., Case No. 13-734-CZ, and Robbie Flowers, et al., versus Rick Snyder, et al., Case No. 13-729-CZ, on Thursday, July 18, 2013.**

I further certify that this transcript of the record of the proceedings and testimony truly and correctly reflects the exhibits, if any, offered by the respective parties. WITNESS my hand this the eighteenth day of July, 2013.

Melinda I. Dexter, RMR, RPR, CSR-4629
Official Court Reporter
313 West Kalamazoo
Post Office Box 40771
Lansing, Michigan 48901-7971

*STATE OF MICHIGAN*
*30TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF INGHAM*
*CIVIL DIVISION*

GRACIE WEBSTER and
VERONICA THOMAS,

Plaintiffs,

v

Case No. 13-734-CZ
Hon. Rosemarie Aquilina

THE STATE OF MICHIGAN; RICHARD SNYDER, as Governor of the State of Michigan; and ANDY DILLON, as Treasurer of the State of Michigan,

Defendants.
______________________________/

ROBBIE FLOWERS, MICHAEL WELLS, JANET WHITSON, MARY WASHINGTON, and BRUCE GOLDMAN,

Plaintiffs,

v

Case No. 13-729-CZ
Hon. Rosemarie Aquilina

RICK SNYDER, as the Governor of the State of Michigan; ANDY DILLON, as the Treasurer of the State of Michigan; and the STATE OF MICHIGAN,

Defendants.
______________________________/

*MOTION TO AMEND PRELIMINARY INJUNCTION*

*MOTION FOR DEFAULT JUDGMENT*

*MOTION FOR SUMMARY DISPOSITION*

*BEFORE THE HON. ROSEMARIE AQUILINA, CIRCUIT JUDGE*

*Ingham County, Michigan - Friday, July 19, 2013*

APPEARANCES:

For Plaintiffs Webster, et al.:

JOHN R. CANZANO (P30417)
Smith & Radtke, PC
400 Galleria Officentre, Ste. 117
Southfield, MI 48034

For Plaintiffs Flowers, et al.:

WILLIAM A. WERTHEIMER (P26275)
Attorney at Law
30515 Timberbrook Lane
Bingham Farms, MI 48025

For State Defendants:

THOMAS QUASARANO (P27982)
BRIAN DEVLIN (P34685)
Assistant Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909

REPORTED BY:

Melinda I. Dexter, RMR, RPR, CSR-4629
Official Court Reporter
313 W. Kalamazoo
Post Office Box 40771
Lansing, MI 48901-7971

*T A B L E   O F   C O N T E N T S*

WITNESSES:

None

EXHIBITS:

None

Ingham County, Michigan

Friday, July 19, 2013 - At 11:25 a.m.

THE COURT: Okay. All right. Robert Flowers, Michael Wells, Janet Whitson, Mary Washington, and Bruce Goldman versus Rick Snyder, as the Governor of the State of Michigan; Andy Dillon, as the Treasurer of the State of Michigan; and the State of Michigan, Docket 13-729-CZ.

Counsel, your appearance for the record.

MR. WERTHEIMER: William Wertheimer, your Honor, on behalf of Plaintiffs.

MR. CANZANO: Your Honor, John Canzano. I'm not counsel in that case. I'm here on the Webster case.

THE COURT: Okay. Thank you.

MR. QUASARANO: Thomas Quasarano, Assistant Attorney General on behalf of the State Defendants.

MR. DEVLIN: And Brian Devlin, Assistant Attorney General.

THE COURT: Thank you.

Counsel?

MR. WERTHEIMER: Your Honor, Plaintiffs are here today in order to request that the Court enter either a corrected or amended preliminary injunction order. The Court, I'm sure, recalls the circumstances yesterday. We have had a chance to have your order typed. We reviewed it. There were some mistakes in it.

For example, the heading still said temporary restraining order from the other case where it was clear from the record and from the body, even, of the order that it was a preliminary injunction. So we made that change. We typed everything. We put in the attorneys' names and the case name.

We made a couple of other changes, which I have indicated to the Court off the record on another copy of the injunctive order. And I would -- we would -- I'm happy to go over each of those, if the Court needs. Otherwise, I would request that the Court issue this preliminary injunction. I did not know whether the Court would want to refer to it as corrected, amended, or not refer to it at all. So I left that blank. But we would ask that the Court enter the order that we presented today to conform to the Court's ruling yesterday.

THE COURT: Counsel?

MR. QUASARANO: Yes, your Honor. As your Honor knows, we moved for a stay, and so I would ask either that the stay that was denied yesterday be identified in the modified order, or we can present another stay. I would assume that the Court would not grant a stay of this order consistent with yesterday. So either to identify it in this modified order as a stay was requested and denied, or we can just do another order, whatever the Court's preference would be.

THE COURT: Well, I'm going to sign this, and I haven't compared the two. I think we probably should call it an amended order.

MR. WERTHEIMER: Okay.

THE COURT: But let me just say that your stay is denied.

MR. QUASARANO: Thank you, your Honor. Maybe --

THE COURT: Counsel?

MR. QUASARANO: Maybe doing another separate order makes the most sense, and we can do that using the forms provided by the Court.

THE COURT: Okay. Thank you.

MR. QUASARANO: Thank you.

MR. WERTHEIMER: Your Honor, one other thing that may be related to that, and that is, the order the Court is entering, consistent with the order the Court entered yesterday, provides us with the relief that we were seeking by our motion which was scheduled for hearing Monday at 9 o'clock.

The Attorney General had also noticed a motion to dismiss for Monday at 9 o'clock. It was not timely in the sense that he did not give the appropriate time period for us to respond. In the reply brief I filed

yesterday, we objected to that and said that we did not agree to expedited. There was no order expediting and suggested that the Court deny the -- their motion for that reason, but I raise it now just to indicate that that also is out there and that maybe we want -- we want another order dealing with that issue.

Our position is that it's not timely and that it shouldn't be heard Monday in any event. I don't know whether the Attorney General intends to proceed on Monday on it.

MR. QUASARANO: Your Honor, we do understand that under MCR 2.119, the motion for summary disposition is a 21-day period. We sought stipulation of counsel. They were kind enough to look at the briefs first to decide whether they would stipulate. They chose not to.

We also sought the endorsement on our notice of hearing from the Court to allow the hearing on Monday. Yesterday at bench we discussed if we needed to -- we needed to set a hearing date on the dispositive motions. The Court is at liberty to have those heard today or on Monday or at such other time. Our notice of hearing did say "or at such other time as the Court may order" on the notice of hearing itself. Thanks.

MR. CANZANO: Your Honor, if I could make a point that is related to that issue?

THE COURT: Yes, sir.

MR. CANZANO: We've -- we've presented a motion this morning, an emergency motion, to advance the hearing on our motion for declaratory judgment that's set for Monday to today. It would be my intention to deal only with the declaratory judgment part of it today, not the injunction part of it. And they've already -- they've agreed that that can be expedited. I don't know that they've agreed that it can be expedited to today, but they agree that it could be expedited to Monday.

So if -- that part of it, either today or Monday, that would be a final declaratory judgment. My preference is to do it today.

THE COURT: Is that correct?

MR. QUASARANO: Well, I believe under 2.605(D), they can seek an expedited hearing, and certainly the Court has the authority to issue that. I think by not entertaining a dispositive motion, we're not going to have a complete argument. Mr. Devlin will be arguing for the State. But we do acknowledge what the court rule says, that's correct.

THE COURT: Well, are you objecting to having it heard today?

MR. QUASARANO: We will not object in the interest of judicial economy.

THE COURT: And your motion deals with that issue?

MR. QUASARANO: It's a (C)(8) motion that would address whether there are grounds for a declaratory judgment, yes.

THE COURT: Well, then --

I'm sorry?

MR. WERTHEIMER: I'm sorry. I may be confused now. Their motion that they filed in the Flowers case to dismiss deals with issues like ripeness. It's a (C)(4) and (C)(8) motion. Many of the facts have changed. I would think they would want to refile that, in any event. I mean, you know, to make an argument based on -- based on ripeness given what happened yesterday afternoon seems to me to be just, to use a lawyer's word, moot at this point. But I'm concerned only with their motion to dismiss in the Flowers case, not with anything related to Webster and whether we're to appear here Monday at 9 to -- per their notice or whether they've withdrawn that motion or not.

THE COURT: Okay. Well, let's deal with the Flowers case.

What is your intention in regard to Monday? Are you still asking the Court to hear your motion? It was not timely filed. Are you still asking me to hear that, or will you be amending that?

MR. QUASARANO: No. I'll speak for Mr. Devlin here for a moment only. In the notice of hearing, we indicated to advance it to that date because of all the other activities in this case or such other time as the Court may order.

I do point out that in the Flowers case in the prayer for relief is a reference to declaratory judgment. Both cases are asking for both reliefs; preliminary and declaratory judgment. Preliminary injunction motions were granted. Our brief talks about the alternative, assuming arguendo there were a filing, a Chapter 9 filing, and then we go into the basis for why there are grounds not to declare judgment, why there is some jurisdictional grounds.

So I think that the brief is sufficiently adequate to address all of the issues that are still at issue in this case. Certainly there has been a factual change and those factual changes don't need to be addressed.

MR. WERTHEIMER: I guess I just would reiterate if -- I need to know whether counsel is going forward on Monday with its motion to dismiss. I still haven't heard a yes or no.

THE COURT: His answer is yes, Counsel.

MR. WERTHEIMER: Well, okay. If the answer is yes, I would just point out that it's clear under the rules that it is not timely; that no order has entered from this Court.

THE COURT: You're right.

MR. WERTHEIMER: Okay.

THE COURT: You know what we're doing? We are under siege here. Well, we aren't; I'm not. Technically I am through paper, but all of you are. Detroit is. The State is. So I'm not going to go through the usual court rules and the time and all of that. You are all going to spend your weekend doing what lawyers do, and that's a lot of homework because we're going to have that hearing Monday unless you're asking me to do it now.

I'm going to hear everything because we're not going to piecemeal this. You all know the case. I know the case. I've done the homework. I don't think myself or my staff got any sleep last night. We've been doing research. I bet if I called all of your wives and asked if you got any sleep, they'd be saying, "No. When is my husband going to get some sleep," right? So we're going to have a hearing, and I don't care if it's today or Monday. I'll come here Saturday, if you would like. I don't care. Let's get some answers, let's get a bottom line, and let's get this moving to the Court of Appeals.

because that's where you all are headed. I don't care what side you're on. Someone is going up, right? So I have answers for you. Tell me your story. I've got the solution. You might not like it.

Can we move on?

MR. QUASARANO: We're prepared to go today, or we'll defer to brother counsel for Monday if more time is needed.

MR. WERTHEIMER: I'll go today. We can go right now, I mean.

THE COURT: Okay. I can go right now too.

How about you, sir?

MR. CANZANO: I think we already agreed that Webster could go today.

MR. DEVLIN: Very well.

THE COURT: We have an agreement. I think that might be the only thing you all agree on. Hallelujah.

MR. QUASARANO: Other than it's very-hot outside.

THE COURT: Yeah. We can agree on that too. Okay.

Counsel? Well, let's let these gentlemen enter so we don't make noise for the court reporter before we proceed.

Anybody else need to make an appearance?

THE COURTROOM: (No verbal response.)

THE COURT: No? Okay.

MR. CANZANO: Which case would you like to go first; Webster or Flowers?

THE COURT: Mr. --

MR. WERTHEIMER: Well, he goes first on Flowers because it's his motion, so it's not my --

THE COURT: Okay. Whatever you'd like.

MR. DEVLIN: Thank you, your Honor. My name is Brian Devlin, Assistant Attorney General.

THE COURT REPORTER: Could you approach the podium, please?

THE COURT: Yeah. If everybody would speak from the podium. The mikes work better. The court reporter has better access to hear you. We'll make a better record, and obviously the Court of Appeals and the Supreme Court will need your record, please.

MR. DEVLIN: Thank you, your Honor. Brian Devlin appearing on behalf of the Defendants.

As Mr. Quasarano has mentioned, that obviously there's been a very dramatic change in circumstances since the brief was filed. The petition in bankruptcy has been filed as of yesterday. It changes some aspects of this case from the State's perspective, but not all.

The arguments that I make for the most part in

Flowers will apply to Webster as well. The fact that this case is now before the bankruptcy court means that there is a court of competent jurisdiction that can hear many of the concerns of the Plaintiffs. And that fact alone changes a lot of the ripeness arguments and things that you will see.

Nonetheless, it is the position of the State that there has not been harm at this point to the Plaintiffs.

THE COURT: Sir, there hasn't been harm because they haven't acted. What we have here, and I would like you to get to the point, because -- and you can make your record. I'm a very patient judge. I think most people will agree with that. But I have two very serious concerns because there was this rush to bankruptcy court that didn't have to occur and should not have occurred. And certainly Plaintiffs should not have been blind-sided, and this Court and this process should not have been ignored.

We have the Michigan Constitution Article IX, § 24 that forbids the Emergency Manager to file bankruptcy if pension plans or retirement system of this State or its political subdivisions are diminished or impaired. And the Constitution states:

> The accrued financial benefits of each pension plan and requirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired.

And the bankruptcy court will be doing exactly that in its reorganization because the pensions are an unsecured asset. And under the bankruptcy reorganization, under a reorganization Chapter 9, there is no reaffirmation of debt. If I were doing a Chapter 7 and wanted to go in and reaffirm payments on my car, I could do so. But there is no way that you can go into bankruptcy court and say, "I am going to reaffirm the pension so that we don't disrupt that."

So what we're doing here is violating the Constitution. And then we have Michigan Complied Law 141.1552, which precludes the Emergency Manager from taking such actions. It states specifically in m -- (m) and (ii):

> The emergency manager shall fully comply with the public employee retirement system investment act --

Which is --

-- 1965 PA 314, and § 24 of Article IX of the State Constitution of 1963, and any actions taken shall be consistent with the pension fund's qualified plan status under the federal internal revenue code.

So tell me, sir, how do you get into bankruptcy court and not violate the Constitution of Michigan and not violate how the Emergency Manager is supposed to operate? Haven't we jumped the gun? What are you doing here, sir?

MR. DEVLIN: I can understand your Honor's concerns. The position of the State is that none of these impairments have occurred yet.

THE COURT: Only because the bankruptcy trustee hasn't got his teeth into it. It will occur. It's imminent, isn't it? Tell me how it's not imminent, sir?

MR. DEVLIN: I can't predict the future.

THE COURT: Yes, you can.

MR. DEVLIN: I cannot.

THE COURT: The bankruptcy court -- the bankruptcy court has a certain function. You're a lawyer. You understand the function of the bankruptcy court. That's why you ran there yesterday not slowly but

in your running shoes, right?

MR. DEVLIN: I can't speak to that. I had nothing to do with it. But I can tell you about § 943 of the Bankruptcy Code, which affords all of the protections that we discussed in the brief that I've alluded to today.

None of those injuries have occurred at this point. For that reason, we believe the claim is still speculative. Of course those are legitimate concerns, but the court, the bankruptcy court can address them.

I referred to -- I'd also refer to *Straus*, the case cited in our brief too. If that injury has not occurred, as we contend, then it's an inappropriate remedy that the Plaintiffs are asking for today.

Now, obviously you and I don't see this injury in quite the same terms, but that is the position of the State. The injury has not occurred at this point.

THE COURT: That would be because the bankruptcy judge has not sat at his bench like I have and heard the case and started the reorganization, and that's the only reason. For me to believe what you're saying would be -- would make me Helen Keller who's not yet learned the alphabet.

MR. DEVLIN: I think anything that you and I speculate about that the bankruptcy court might order,

that they have the power to address under 943, is just that; it's just speculation.

THE COURT: It's a certainty, sir. You filed in bankruptcy court, which is federal because you know that certainty. I don't know how you get around it because it's an unsecured asset that cannot be reaffirmed, and there is no case law, and you know that as well because all of us stayed up all night looking for case law, and there is no case law. You can't tell me that it can be segregated out and reaffirmed.

So these people that have this pension where it is supposed to be protected under the Constitution and under the legislative intent under the emergency manager legislation, it cannot survive. It cannot survive federal bankruptcy, and I have no jurisdiction there, and you know that. And that's why everybody made us wait as -- slowly we were waiting for your office to come here out of courtesy. We waited so we would have both sides present, which is what we do. We honor civility, and it was filed in order to bind everybody so this could occur, and it's cheating, sir, and it's cheating good people who worked.

And so what's going to happen is we're not honoring the Constitution, we're not honoring the emergency manager legislation, and we're not honoring

good citizens, and we're also not honoring the President who took Detroit out of bankruptcy. What are we doing, sir?

MR. DEVLIN: Your Honor, I understand what you're saying, but I would take exception to the motion that somehow the Attorney General's Office delayed or dragged its feet or in any way tampered with the proceedings yesterday. Now, I wasn't here. I wasn't part of them, but I don't believe that's the case.

THE COURT: It looks that way, sir. If somehow that's not the case, I apologize, but it's the old saying if it looks like a duck, you know the rest.

MR. DEVLIN: Well, I don't want to speculate on who did what yesterday. As I said, I wasn't here.

THE COURT: Thank you.

MR. DEVLIN: But it is our position that until that injury occurs and in light of *Straus*, in light of the jurisdiction of the bankruptcy court, that this motion should be -- er, the motion is inappropriate. The State's motion should be granted --

THE COURT: Sir --

MR. DEVLIN: -- thank you.

THE COURT: Let me ask you this: If the injury occurs, isn't it then too late, much too late, way too late for anybody to fix it? There is no way to fix the

injury. The leg has been amputated, and we cannot fix it.

MR. DEVLIN: We don't know, is my position on that. We don't know, and there is opportunity for this very issue to be heard in the bankruptcy court.

THE COURT: But there is no opportunity in the bankruptcy court for them to fix the harm. Do you have any law that says the bankruptcy court can fix the pension fund because I haven't found that either, and I've looked?

MR. DEVLIN: Again, I understand the pension fund to be tremendously under funded. There are many problems here, far beyond what's gone on in the last 24 hours. But the court, the bankruptcy court does have jurisdiction to hear these arguments, to note the Michigan Constitutional provisions, and to order what it feels it must order.

THE COURT: Okay.

MR. DEVLIN: Thank you.

THE COURT: Thank you.

MR. WERTHEIMER: Your Honor, I'll be brief. First, I would just point out to the Court that this is a motion under C -- MCR 2.116(C)(4), (5), and (8): That is, it's a claim that there is no jurisdiction over the subject matter; it's a claim that my clients have no

capacity to sue because apparently they're not being injured; and it's a claim that we have failed to state a claim.

As to the law relating to those three points, I would rely upon the briefs that I have filed, including the reply brief that I filed yesterday in which I did take the position that we should not hear -- that the Court should not hear the motion to dismiss but in which I dealt with all of those issues, and I won't repeat those arguments.

I would just point out a couple of things: First of all, counsel says that he cannot predict the future. The Detroit Emergency Manager, who is a competent lawyer familiar with bankruptcy, has predicted the future, and we quoted him in our complaint as saying, essentially, that once he gets into bankruptcy, the constitutional rights of our clients will disappear, will be "trumped" in his words or in the words of the reporter quoting him. And I think that was -- there was an interview and there was also his statements made to the Detroit Free Press Editorial Board.

But the point being that the Detroit Emergency Manager has had no reluctance to predict the future, and his prediction is consistent with our claim and with the suggestions being made in the Court's questions, and it

just simply is not credible for an attorney for the Governor and the State Treasurer to come here today and say he can't predict the future when we indicated in our complaint that the future could be predicted.

I would also point out that since we were in court yesterday, we now have not just the bankruptcy but filings related to that bankruptcy. I'm not going to introduce these documents, but I understand that counsel in the Webster case that will be argued when we're done here will be introducing them. I would simply point out that we've got correspondence back and forth between the Detroit Emergency Manager and the Governor requesting the authorization and the Governor approving the authorization, in which there is not a word mentioned about Article IX, § 24 of the Michigan State Constitution.

Our Governor does not feel that that's relevant. He goes on for pages in his authorization, obviously for public relation's purposes, talking about how deeply he cares about the city of Detroit, etcetera, etcetera, but not one word about Article IX, § 24 of the Constitution. And, of course, no such word from Mr. Orr in his request to the Governor.

So counsel's essentially saying "No harm yet. Don't worry. Maybe bankruptcy court will take care of

it." But the people who are taking it into bankruptcy, have taken it into bankruptcy have made very clear they're not going to take care of it in bankruptcy.

And finally just the obvious point, but I think needs to be reiterated with all the flurry going on that the whole point of injunctive relief is to prevent a harm that has not yet occurred, and that's all we're seeking with our overall lawsuit and all we were seeking with our motion for preliminary injunction, which this Court has already granted. Thank you.

MR. QUASARANO: Your Honor, I think that the State's briefing and argument sufficiently presents the State's position, but I know the Court is patient, and I would ask the Court's indulgence on the one matter of my appearance here yesterday, and I would like to make this clear for the record, if I may, but for Mr. Wertheimer, who is counsel for the Flowers and others case, I would not have known that the General Retirement System of the City of Detroit, et al., even had a TRO motion scheduled.

The only communication I had with counsel for that, those Plaintiffs, was the night before asking if we could accept service on the Governor, which, as the Court knows, we're barred from accepting service on behalf of a State Defendant. Until the State Defendant is served, we are not counsel or can become counsel of record.

13-53846-swr Doc 1219-10 Filed 10/17/13 Entered 10/17/13 13:56:17 Page 8 of 131002
13-53846-tjt Doc 2334-28 Filed 12/27/13 Entered 12/27/13 13:37:04 Page 20 of 26

I was told there would not be any preliminary injunction or TRO sought in that case. I do understand that situation had changed in the hours after that. But, but for Mr. Wertheimer calling me, counsel in another case, I would not have known. When he called me, and the transcript yesterday says it was around 3:30 or so, and then I arrived as quickly as I could walk over here. So there was no delay on behalf of the Attorney General's Office to be here, to represent the State's interest, to be here to answer this Court's questions. And any delay at all was because we were notified by counsel for the Plaintiffs yesterday that they intended to bring the motion. Thank you for letting me clarify that.

THE COURT: Thank you.

Anything further, sir?

MR. DEVLIN: Nothing further. Thank you.

THE COURT: Defendants have filed a motion for summary disposition pursuant to (4), which is:

> The Court lacks jurisdiction of the subject matter.

This Court absolutely has jurisdiction of the subject matter. It's a state question. I know they've removed it to federal bankruptcy court, but we still have very serious state questions. We have the State Constitution, Article IX, § 24. We have an emergency

manager statute, and we have a Constitution at issue. State issues are within the purview of this Court. I don't care that it was removed to bankruptcy court. There is nothing here that tells me it was properly removed to federal bankruptcy court because there is a procedure in place of how it gets removed. And this Court does not believe it was properly placed in the hands of the bankruptcy court because it is going to affect pensions. Once it affects pensions, which is clearly what it's going to do, it's in violation, and the Governor can't give permission for it to go to bankruptcy court. It's very clear. I think a first-year law student understands the concept. And I know the Governor is not a lawyer, but he has very well paid lawyers who do understand the concept.

> The party asserting the claim lacks the legal capacity to sue.

That is MCR 2.116(5). A party asserting the claim lacks the legal capacity to sue? How is that possible? They're interested parties. Absolutely they have capacity to sue. The pension's involved, the pension related to the parties. I don't see any problems there.

And then we have (8), which is always a catch-all:

> The opposing party has failed to state a claim on which relief can be granted.

I see problems all over the place. I stated them. I don't think I need to be redundant. Clearly there are numerous claims and issues. I won't be redundant. The relief requested is denied. Motion for summary disposition is denied.

MR. WERTHEIMER: Thank you, your Honor.

THE COURT: Who's preparing the order?

MR. QUASARANO: I'll be preparing it for you, Judge.

THE COURT: Thank you, very much, sir.

MR. QUASARANO: Thank you.

THE COURT: Next matter?

MR. WERTHEIMER: We are -- I am done relative to the Flowers case.

THE COURT: Thank you, very much, sir.

MR. WERTHEIMER: I'll vacate. I think there are others lawyers in the room with another related case. So I'll wait in the courtroom but vacate counsel table.

THE COURT: Thank you.

MR. WERTHEIMER: Thank you.

MR. CANZANO: Your Honor, John Canzano on behalf of the Plaintiffs in the Webster case. I would

like to clarify the relief that we are seeking here today. We -- our complaint sought declaratory judgment and preliminary injunction. Today we are seeking only a declaratory judgment.

I have taken the liberty of preparing an order for declaratory judgment which I can present when I'm done, and the Court may or may not want to say everything that I've said in there, but I think we are entitled to that relief. The briefs -- this has all been briefed already. I don't need to go over that.

The State's defense to our motion did not contest the facts and did not contest the substance of the merits of the law, which is that the Constitution prohibits diminishment of pension -- accrued pension benefits. They simply -- they simply said the case is not ripe, and there is not an actual controversy for a declaratory judgment.

Now, after yesterday, it's obviously ripe. We cited a case in our reply brief, *City of Lake Angelus*, which amazingly is almost on all fours with this case. I won't describe that case again except to say that that was a case where the Attorney General made the argument that there was no injury and there was no need for declaratory judgment because a request to a tribunal had not been made and the tribunal

court correctly ruled that the -- there is an actual controversy because the parties need the court to tell them what their rights and obligations are so they know what to do in the future; whether this tribunal could overrule a local ordinance which prohibited sea planes on Lake Angelus, even though they hadn't been asked and they hadn't ruled. So that part is exactly what we have. Now we have the bankruptcy has been filed.

I would like to offer a couple exhibits, which are the July 16th letter from Emergency Manager Orr requesting authorization to file for Chapter 9, which amazingly this happened on Tuesday, and none of our -- none of our crack reporters knew about this. Nobody knew about this until yesterday. This was a secret letter.

And the July 18th letter from yesterday of the Governor authorizing Emergency Manager Orr to file for Chapter 9. And I think if you look at these two letters, it is crystal clear what the judge has already concluded in the prior case; that not only does the bankruptcy threaten to impair but that that is the goal and the intent of the emergency manager is to impair accrued pension benefits in bankruptcy.

I'll give these to opposing counsel. These are -- they're a matter of public record now. I just wrote Exhibit A and Exhibit B on them.

(Approaching the bench.)

THE COURT: All right. Thank you.

MR. CANZANO: As to the merits, I think again it is very clear this isn't a case where you need case law. You just read the Constitution. It says accrued pension benefits shall not be diminished or impaired. The Constitution says that. The Emergency Manager law says the Governor can authorize the Emergency Manager to file for Chapter 9. And it doesn't prohibit that -- it doesn't require that pension benefits be protected when he files for Chapter 9. And it is, therefore, unconstitutional to that extent.

THE COURT: Is there any objection to the Court receiving Exhibit A and B?

MR. DEVLIN: No objection, your Honor.

THE COURT: A and B are received. Thank you.

(At 12:04 p.m., Exhibit A and Exhibit B is received.)

MR. CANZANO: So the emergency manager law is unconstitutional to the extent that it allows the Governor to authorize a Chapter 9 filing which threatens to diminish or impair pension benefits. And the Governor is prohibited by Article IX, § 24 from authorizing an emergency manager to proceed under Chapter 9 in a manner which threatened to impair accrued pension benefits. Any

such action by the Governor is without authority and in violation of Article IX, § 24. And what happened yesterday was a violation of the Constitution.

Now, my declaratory judgment order declares these statements. It also has a paragraph at the end that says:

> In order to rectify his unauthorized and unconstitutional actions described above, the Governor must: One, direct the Emergency Manager to immediately withdraw the Chapter 9 petition filed on July 18th. And, two, not authorize any further Chapter 9 filing which threatens to diminish or impair accrued pension benefits.

Now, this is just a declaratory judgment. So it is my hope that if the Court is willing to enter this, that the Governor will obey his oath of office and follow what the Constitution requires. And so -- and if he does not, then we may be back here on -- with another iteration of this that requires some type of injunctive relief.

At this time we're not seeking injunctive

relief, so I would -- I would withdraw our request for preliminary injunction without prejudice. And I'd also ask, if this order is entered, that the temporary restraining order entered yesterday be vacated or expired, and all we want is a declaratory judgment right now.

THE COURT: And the reason to vacate or expire the temporary restraining order?

MR. CANZANO: Because now we have the default judgment and the TRO. I don't remember what the court rule says, but it cannot only exist for a short period of time on its own, and this is the tact that we would like to take because we would like to tell the Governor, "This is what you're supposed to do." And then if he doesn't do that, then we'll then -- we'll reassess our options.

THE COURT: Okay. Thank you.

MR. CANZANO: May I present my draft order?

THE COURT: Yes. Have you presented it to the other side?

MR. CANZANO: I have not.

THE COURT: Thank you.

MR. QUASARANO: We've looked at this, your Honor.

MR. CANZANO: Just as to the matter of the jurisdiction in the bankruptcy court, I don't think

13-53846-swr Doc 1219-10 Filed 10/17/13 Entered 10/17/13 13:56:17 Page 10 of 1004
13-53846-tjt Doc 2334-28 Filed 12/27/13 Entered 12/27/13 13:37:04 Page 22 of 26

anyone is arguing -- I don't think the Attorney General is arguing that our case is stayed by the bankruptcy court because we're not suing the Emergency Manager. We're only suing the Governor and the Treasurer and the State of Michigan, and they're not -- they're not in the bankruptcy court. They're not the debtor, so that's an argument that has been raised. But, just for clarity, I wanted to point that out. That's all I have.

THE COURT: Thank you.

Response?

MR. DEVLIN: Thank you, your Honor. Brian Devlin again on behalf of the Defendants. I won't repeat the discussion we had on the Flowers case. Much of that applies. The relief sought in each of these cases is the same position of the State, is that the bankruptcy court jurisdiction has a great effect on this, and that the reliefs that might be desired by the Plaintiffs are available through that court. Furthermore, we'd cite the *Straus* case as well in this reply.

I would like to call the Court's attention to just one other thing: There was reference made to the Governor's obligation to uphold the terms of the United States -- of the State Constitution but that also applies to the United States Constitution, and bankruptcy court is certainly someone he may have to answer to as well.

So that should not be lost sight of.

Finally, I wanted to point out that we do have a motion for summary disposition pending in this case as well. And I would rely on the arguments in the brief. And the ones I've just restated as well to ask that that relief be granted. Thank you.

THE COURT: Are you asking that that be heard now, or would you like me to make a ruling on that now?

MR. DEVLIN: I think you could probably make a ruling on it without further argument.

THE COURT: I think so too.

MR. DEVLIN: All right.

THE COURT: Okay.

MR. DEVLIN: Thank you.

THE COURT: Anything further?

MR. CANZANO: Nothing further, your Honor.

THE COURT: All right.

As to the motion for summary disposition in regard to Defendants' motion is denied. I'm going to incorporate the transcript, the arguments of the Flowers matter into this file. I think that in order to have a complete argument, we're going to consolidate the arguments and the files for the purpose of today because they are really united. They are part and parcel of the same arguments. We really don't have a complete

transcript without looking at both.

So I'm going to direct the court reporter to treat today as one transcript despite there being two docket numbers, and I didn't even call both of them, but we just sort of started, but we're really dealing with Dockets 13-734-CZ and 13-729-CZ.

So the motion for summary disposition in regard to 13-734-CZ, and that's Defendants' motion for summary disposition is denied based on the same rationale the Court had and reasoning in the prior case.

In regard to the request for declaratory judgment, I think it is imperative that the Court sign this. It's absolutely needed. And the Governor, I have to believe, took his oath in all sincerity to uphold the United States Constitution and the State of Michigan Constitution. I hope he rereads certain sections and reconsiders his actions.

I am finding the actions that have been taken in regard to filing this action in the bankruptcy court as overreaching and unconstitutional as it applies to what the Detroit Emergency Manager Kevyn Orr has done in conjunction with the Governor.

So I find it absolutely necessary to sign this order of declaratory judgment. I am also going to order, in addition to what you have crafted here, that a copy of

this order be forwarded to President Obama. I know that he's watching this, and he's bailed out Detroit. If this is going to ultimately proceed to bankruptcy without anyone paying attention to Michigan's Constitution and to what the legislature drafted and to what the Governor himself signed into law, then there will ultimately be a request that Obama will have to look at the pension, so he might as well follow this. He said in the news that he's following this. He might as well see what we've all done here. It's that important to the State of Michigan and to the thousands of people who will be affected, and ultimately all of the taxpayers of the state of Michigan are going to be affected because we will all have to pick up the tab if this is not honored as it should be.

Additionally, I am asked that the temporary restraining order be quashed and nullified, so that is now withdrawn, and it expires today at 12:15. And the order of declaratory judgment is being signed as that expires.

Is there anything else for the record?

MR. WERTHEIMER: Not for the Plaintiffs in Flowers, your Honor.

MR. QUASARANO: I'm obliged, your Honor, to move for a stay of enforcement of the order of declaratory judgment.

13-53846-swr Doc 1219-10 Filed 10/17/13 Entered 10/17/13 13:56:17 Page 11 of 13
13-53846-tjt Doc 2334-28 Filed 12/27/13 Entered 12/27/13 13:37:04 Page 23 of 26

THE COURT: You are obliged. I am obliged as well to deny.

MR. QUASARANO: I'll have an order ready. Thank you, Judge.

THE COURT: I look forward to signing all of those orders today. I will be in until 5 or so. And I haven't looked at Monday's docket. Have we taken care of all of Monday or not?

MR. WERTHEIMER: I think, as to the Plaintiffs in Flowers, you have because our motion was for preliminary injunction, which you have granted and will be providing us with that order, and their motion was for summary disposition, which you've denied. I believe that was all that was up in Flowers. So that the Flowers case continues, but there is nothing up for Monday in Flowers.

MR. QUASARANO: Defendants concur in Flowers.

THE COURT: Okay. My law clerk is making copies, multiple copies, of the order I've just signed.

I am here on a moment's notice as you all have become accustomed to if you need me.

MR. WERTHEIMER: Thank you, your Honor.

THE COURT: That's all for the record.

MR. CANZANO: Thank you, your Honor. Appreciate the Court's ability and willingness to help us out on this urgent time.

36

THE COURT: Thank you.

(At 12:16 p.m., the matter is concluded.)

STATE OF MICHIGAN)
) SS.
COUNTY OF INGHAM)

CERTIFICATE OF REPORTER

I, Melinda I. Dexter, Certified Shorthand Reporter, do hereby certify that the foregoing **37 pages** comprise an accurate, true, and complete transcript of the proceedings and testimony taken in the case of **Gracie Webster, et al.** versus **Richard Snyder, et al., Case Nos. 13-734-CZ and 13-729-CZ, on Friday, July 19, 2013.**

I further certify that this transcript of the record of the proceedings and testimony truly and correctly reflects the exhibits, if any, offered by the respective parties. WITNESS my hand this the nineteenth day of July, 2013.

Melinda I. Dexter, RMR, RPR, CSR-4629
Official Court Reporter
313 West Kalamazoo
Post Office Box 40771
Lansing, Michigan 48901-7971

**STATE OF MICHIGAN**

**IN THE 30TH CIRCUIT COURT FOR THE COUNTY OF INGHAM**

WEBSTER, ET AL,

Plaintiff,

v

RICK SNYDER, ET AL,

Defendant.

**ORDER**

HON. ROSEMARIE E. AQUILINA

Docket No: 13-734-CZ

**At a session of said Court in the City of Lansing, County of Ingham, State of Michigan, this 19 day of July, 201_**

**PRESENT: The Honorable Rosemarie E. Aquilina 30th Judicial Circuit Court Judge**

Upon review of motion, and a hearing being held in open court, and argument having been heard, and being fully apprised of the issues, states the following:

**IT IS ORDERED** that DEFENDANTS' MOTION FOR SUMMARY DISPOSITION IS DENIED FOR THE REASONS STATED FROM THE BENCH.

**IT IS SO ORDERED.**

Rosemarie E. Aquilina

Hon. Rosemarie E. Aquilina (P37670)
Circuit Court Judge

Approved as to form: ______________________ ______________________

Plaintiff / Plaintiff's Attorney Defendant / Defendant's Attorney