# **EXHIBIT 6**

## *[SIXTH AMENDMENT TO FORBEARANCE AGREEMENT]*

# SIXTH AMENDMENT
# TO
# FORBEARANCE AND OPTIONAL TERMINATION AGREEMENT

**SIXTH AMENDMENT**, dated as of December **[__]**, 2013 (the "**Amendment**"), to the Forbearance and Optional Termination Agreement dated as July 15, 2013 (as amended, the "**Agreement**") by and among Detroit General Retirement System Service Corporation, a Michigan nonprofit corporation ("**DGRS**"), Detroit Police and Fire Retirement System Service Corporation, a Michigan nonprofit corporation ("**PFRS**" and, together with DGRS, each a "**Service Corporation**" and collectively the "**Service Corporations**"), the City of Detroit (the "**City**"), the Emergency Manager of the City (the "**Emergency Manager**"), and UBS AG ("**UBS**") and Merrill Lynch Capital Services, Inc. ("**MLCS**" and, together with UBS, the "**Swap Counterparties**").

**WHEREAS**, the Service Corporations, the City, the Emergency Manager and the Swap Counterparties (collectively, the "**Parties**") have previously entered into the Agreement;

**WHEREAS,** the Parties have previously agreed to amend the Agreement as of July 31, 2013, as of August 12, 2013, as of August 23, 2013, as of August 29, 2013, and as of September 4, 2013;

**WHEREAS**, the Parties now wish to further amend the Agreement according to the terms of this Amendment;

**NOW THEREFORE**, in consideration of the mutual agreements contained herein, and intending to be legally bound hereby, the Parties agree as follows:

1. <u>Amendments to the Agreement</u>. The Parties hereby agree to amend the Agreement as follows:

    a. The definitions of "Applicable Percentage", "First Payment Adjustment Date", "Mid-Market Amount", and "Second Payment Adjustment Date" in Section 3.5 of the Agreement are hereby deleted.

    b. The definition of "Optional Termination Amount" in Section 3.5 of the Agreement is hereby deleted and replaced with the following:

    > ""Optional Termination Amount" shall mean with respect to each Swap Counterparty 50% of the sum of (a) $165 million, and (b) three (3) basis points of breakage costs based upon the present value of amounts due under the Swap Agreements (using a discount curve calculated from swap rates published on Reuters Screen Page "ISDAFIX3" at 11:30 a.m. New York Time on the Optional Termination Date), which costs shall not exceed the lesser of (i) one-third of the aggregate of the Fixed Amounts (as defined in the Collateral Agreement) payable by the Service Corporations under the Swap Agreements during the Quarterly Period (as defined in the Collateral Agreement) for the Month

during which the Optional Termination Date occurs without giving effect to (A) any netting for the Floating Amounts (as defined in the Collateral Agreement) due from the Swap Counterparties under the Swap Agreements or (B) any termination of the Swap Agreements pursuant to Section 3 of this Agreement and (ii) $4.2 million."

  c. The reference to "Sections 3.3(c), 3.3(d), 5, 8, 10 and 11" in Section 3.4(c) of the Agreement is hereby deleted and replaced with "Sections 3.3(c), 3.3(d), 3.4, 5, 8, 10 and 11."

  d. Immediately following Section 3.4(d) of the Agreement, the following subsection is hereby added to Section 3.4 of the Agreement:

> "(e) for the avoidance of doubt, in accordance with Section 14.4(c) of the Collateral Agreement, all amounts standing to the credit of each Account shall be paid to the City, and, at the request of the City, the Swap Counterparties agree to instruct the Collateral Agreement Custodian to promptly pay such amounts to the City."

  e. The parenthetical "(provided that in lieu of such notice, notice of the occurrence of the Forbearance Period Termination Events in Sections 1.3(a), 1.3(l) or 1.3(m) below shall be given as set forth therein)" in Section 1.3 of the Agreement is hereby deleted and replaced with "(provided that in lieu of such notice, notice of the occurrence of the Forbearance Period Termination Events in Sections 1.3(a), 1.3(l), 1.3(m), or 1.3(n) below shall be given as set forth therein)".

  f. Immediately following Section 1.3(m) of the Agreement, the following subsection is hereby added to Section 1.3 of the Agreement:

> "(n) Delivery on or after January 31, 2014 either (i) to the Swap Counterparties of a written notice from the City (given in its sole discretion and with a copy to the other parties hereto) terminating the Forbearance Period, or (ii) to the City of a written notice from the Swap Counterparties (given in their sole discretion and with a copy to the other parties hereto) terminating the Forbearance Period; provided that, in each of (i) and (ii) above, on such date payment in full by the City of the Optional Termination Amount to each of the Swap Counterparties has not occurred."

  g. Immediately following Section 1.4 of the Agreement, the following new Section 1.5 is hereby added to the Agreement:

> "No party hereto shall deliver a written notice of a Forbearance Period Termination Event on or prior to January 31, 2014, other than pursuant to Section 1.3(a), 1.3(b), 1.3(f), 1.3(j)(ii), 1.3(j)(iv) or 1.3(n)."

h. The text "and" appearing immediately at the end of Section 3.4(c) of the Agreement is hereby deleted in its entirety.

i. The text "." appearing immediately at the end of Section 3.4(d) of the Agreement is hereby deleted and replaced with "; and".

j. The text "*Payment of Optional Termination Amount*" appearing in the heading of Section 3.3 of the Agreement is hereby deleted and replaced with "*Payment of Optional Termination Amounts*".

k. The text "Optional Termination Amount" appearing in Section 3.3(c) of the Agreement is hereby deleted and replaced with "Optional Termination Amounts".

l. The text "*Effect of Payment of Optional Termination Amount*" appearing in the heading of Section 3.4 of the Agreement is hereby deleted and replaced with "*Effect of Payment of Optional Termination Amounts*".

2. Miscellaneous.

a. **Definitions.** Capitalized terms used in this Amendment and not otherwise defined herein shall have the meanings specified for such terms in the Agreement.

b. **Entire Agreement.** This Amendment, together with the Agreement, constitutes the entire agreement and understanding of the Parties with respect to its subject matter and supersedes all oral communication and prior writings with respect thereto. Except as amended hereby, the Agreement shall remain in full force and effect. No failure or delay of any party in exercising any right, power or privilege under the Agreement, as amended hereby, shall operate as a waiver thereof.

c. **Counterparts.** This Amendment may be executed and delivered in counterparts (including by facsimile or other electronic transmission) each of which will be deemed an original.

d. **Governing Law.** This Amendment will be governed by and construed in accordance with the "Governing Law and Jurisdiction" provisions of the Agreement.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the parties hereto have caused this Amendment to be duly executed and delivered as of the date first above written.

DETROIT GENERAL RETIREMENT
SYSTEM SERVICE CORPORATION


By:_____
   Name:
   Title:


DETROIT POLICE AND FIRE RETIREMENT
   SYSTEM SERVICE CORPORATION


By:_____
   Name:
   Title:


THE CITY OF DETROIT


By:_____
   Name:
   Title:


EMERGENCY MANAGER OF THE CITY OF
   DETROIT


By:_____
   Name:


[Signature page to Sixth Amendment]

MERRILL LYNCH CAPITAL SERVICES, INC.

By:_____
   Name:
   Title:

UBS AG

By:_____
   Name:
   Title:

By:_____
   Name:
   Title:

[Signature page to Sixth Amendment]