proceeding in Chapter 9 bankruptcy, allegedly in violation of Const 1963, art 9, § 24.[1] They

seek a declaratory judgment that the Act "is unconstitutional and in violation of [art 9, § 24] of

the Michigan Constitution because [the Act] permits accrued pension benefits to be diminished

or impaired by bankruptcy proceedings in direct contravention of the Constitution." (Complaint,

¶ 1). Plaintiffs have moved for an expedited hearing on their request for declaratory relief, or

request in the alternative a preliminary injunction enjoining the Governor from authorizing a

bankruptcy proceeding under the Act.

Section 18(1), MCL 141.1558(1), of the Act provides, in part:

> If, in the judgment of the emergency manager, no reasonable alternative to
> rectifying the financial emergency of the local government which is in
> receivership exists, then the emergency manager may recommend to the governor
> and the state treasurer that the local government be authorized to proceed under
> chapter 9. If the governor approves of the recommendation, the governor shall
> inform the state treasurer and the emergency manager in writing of the decision,
> with a copy to the superintendent of public instruction if the local government is a
> school district. The governor may place contingencies on a local government in
> order to proceed under chapter 9. Upon receipt of the written approval, the
> emergency manager is authorized to proceed under chapter 9.

Plaintiffs allege they are entitled to declaratory relief and a final judgment that the Act is

unconstitutional because the Act does not prohibit the Governor from authorizing a Chapter 9

bankruptcy, which threatens to diminish or impair Plaintiffs' accrued pension benefits contrary

to art 9, § 24. (Complaint, ¶26). Plaintiffs request relief and ask this Court to intrude upon the

Governor's authority and discretion based on their speculation that the Governor might exercise

his authority and approve a recommendation that the City proceed in bankruptcy; and that the

City's pension funds might be detrimentally affected during a Chapter 9 proceeding in federal

bankruptcy court. (Complaint, ¶27 and 28). But this Court should deny Plaintiffs' expedited

---

[1] Const 1963, art 9, § 24 provides, in part: "The accrued financial benefits of each pension plan
and retirement system of the state and its political subdivisions shall be a contractual obligation
thereof which shall not be diminished or impaired thereby."

motion for declaratory relief or, alternatively, preliminary injunction and dismiss the Complaint because Plaintiffs lack standing to sue, their claim is unripe, their facial constitutional challenge fails as a matter of law, and they cannot satisfy any of the factors necessary for granting injunctive relief.

## Argument

I. **Plaintiffs' motion for expedited declaratory relief should be denied and their Complaint dismissed pursuant to MCR 2.116(C)(4), (C)(5), and (C)(8) because Plaintiffs' lack standing, their claim is unripe, and their facial constitutional challenge fails as a matter of law.**

### A. Standard of Review.

A party is entitled to summary disposition under MCR 2.116(C)(4) if the lower court "lacks jurisdiction of the subject matter." This Court must determine whether the affidavits, together with the pleadings, depositions, admissions, and documentary evidence demonstrate a lack of subject-matter jurisdiction. *Toaz v Dep't of Treasury*, 280 Mich App 457, 459, 459; 760 NW2d 325 (2008) (quotation omitted). "[S]ummary disposition [under MCR 2.116(C)(5)] is merited when the plaintiffs lack the capacity to sue. In reviewing these motions, [the] Court must consider the parties' pleadings, depositions, admissions, affidavits, and other documentary evidence to determine whether the defendant is entitled to judgment as a matter of law." *In re Estate of Quintero*, 224 Mich App 682, 692; 569 NW2d 889 (1997). A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of a claim based upon the pleadings alone. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). The motion should be granted when a plaintiff's claims are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id.* (quotation omitted).

**B.     Analysis.**

Plaintiffs have requested and moved for expedited treatment of their Complaint for declaratory and injunctive relief under MCR 2.605(D).  Defendants do not object and agree that the matter should be accorded expedited review with the exception that judgment for Defendants should be entered.  To that end, Defendants' have also moved for summary disposition under MCR 2.116(C)(4) (subject matter jurisdiction – ripeness), (C)(5) (capacity to sue – standing), and (C)(8) (failure to state a claim).  This Court should waive or adjust the customary response time for such motions, and decide Defendants' motion concurrent with Plaintiffs' motion for accelerated judgment.  As demonstrated below, this Court lacks jurisdiction to entertain Plaintiffs' Complaint because their claim is unripe, they do not have standing to bring this action, and their facial challenge fails as a matter of law.  Further, a speedy resolution of this action is required to avoid adversely impacting the City of Detroit Emergency Manager's current efforts to reach a consensus that could achieve some financial stability for the City without recourse to bankruptcy.  Delaying a resolution of this case would certainly have a negative impact on those efforts and send the wrong message to the citizens of Detroit and Michigan.

**1.     Plaintiffs' lack standing to bring this action.**

In *Lansing School Education Ass'n v Lansing Board of Education*, 487 Mich 349, 355, 372; 792 NW2d 686 (2010), the Michigan Supreme Court reinstated Michigan's previous "prudential" standing test, which automatically conferred standing upon any party who has a "legal cause of action," regardless of whether the underlying issue is justiciable.  "Under this approach, a litigant has standing whenever there is a legal cause of action" or the requirements of MCR 2.605 to seek a declaratory judgment are satisfied. *Id.* at

4

372. If a specific cause of action at law does not exist for the plaintiff, then the following

applies:

> A litigant may have standing in this context if the litigant has a special injury or
> right, or substantial interest, that will be detrimentally affected in a manner
> different from the citizenry at large or if the statutory scheme implies that the
> Legislature intended to confer standing on the litigant. [Id.]

In this case, Plaintiffs cannot meet even this liberalized standard.

### a. Plaintiffs have not pled facts sufficient to establish a legal cause of action.

Plaintiffs have not pled facts sufficient to establish that a violation of their rights under

Const 1963, art 9, § 24 has occurred or to establish that a cause of action exists under the Act;

they do not even attempt to do so. Indeed, the Act expressly states that it provides no cause of

action:

> A cause of action against this state or any department, agency, or entity of this
> state, or any officer or employee of this state acting in his or her official capacity,
> or any membership of a receivership transition advisory board acting in his or her
> official capacity, *may not be maintained for any activity authorized by this act, or*
> *for the act of a local government filing under chapter 9, including any proceeding*
> *following a local government's filing.* [MCL 141.1572 (emphasis added).]

Plaintiffs further acknowledge that the Governor has not authorized a bankruptcy filing as

required under the Act. MCL 141.1558(1). Moreover, there are other contingencies that would

need to occur before any "threat" to Plaintiffs' pension benefits could arise because:

- Even with the filing of a bankruptcy action, the City of Detroit must meet additional
  requirements before the case may proceed including completing a Plan of Reorganization
  to adjust its debts. The City must either obtain an agreement from creditors holding a
  majority of the amount of claims of each class the debtor intends to impair under a plan,
  negotiate in good faith with creditors and fail to obtain an agreement of creditors holding
  a majority of the amount of claims of each class the debtor intends to impair under a plan,
  be unable to negotiate with creditors because it is impractical, or reasonably believe a
  creditor may attempt to obtain a preference. 11 USC 109(c). The plan would have to
  include the pension beneficiaries as a "class of creditors" and propose a reduction of
  benefits; and

- The plan must be confirmed by the bankruptcy court. The plan must meet seven specific criteria for confirmation, including that "the debtor is not prohibited by law from taking any action necessary to carry out the plan." 11 USC 943(4).

No violation of art 9, § 24 could or would occur if the Governor authorizes the City of Detroit to proceed under Chapter 9 because the bankruptcy court would still have to find the City eligible for bankruptcy, and the court would have to approve a plan in bankruptcy that impairs vested pension benefits, or at least have such a plan presented to it.

Ignoring these contingencies, Plaintiffs' fact assertions center upon their alleged apprehension as to what *might* happen. Plaintiffs contend they are entitled to a declaratory judgment that the Act is facially unconstitutional because it "nowhere requires that in considering whether to approve an emergency manager's recommendation to proceed under Chapter 9, the Governor shall not approve such recommendation if accrued pension benefits may be diminished or impaired in violation of [art 9, § 24]." (Complaint, ¶¶ 18 and 19). Accordingly, Plaintiffs assert, "because [the Act] does not prohibit a municipality from proceeding under Chapter 9 of the US Bankruptcy Code if accrued pension benefits may be unconstitutionally diminished or impaired, [the Act] is unconstitutional on its face in violation of" art 9, § 24. *Id.* This allegation mistakes the scope of the "authorization"—it is not approval of the actual bankruptcy filing or plan— and presumes the Governor would act unconstitutionally.

Plaintiffs further allege that their:

[R]ights under the Michigan Constitution not to have their pension benefits "diminished or impaired" can only be guaranteed if this Court acts *before* the Governor approves a request to proceed under Chapter 9. Moreover, Emergency Manager Orr's threats that he will unconstitutionally diminish or impair Plaintiffs' vested pension rights have themselves harmed Plaintiffs by instilling in Plaintiffs a reasonable fear that their constitutional rights will be trampled upon and, in the process, their future source of income drastically eroded. [Complaint, ¶ 28.]

This Court cannot assume that there will be a Chapter 9 bankruptcy proceeding involving the City of Detroit. The Governor has not yet authorized such a proceeding at this time nor has the Governor had the opportunity to disapprove, approve, or approve and "place contingencies on a local government in order to proceed under chapter 9," as provided for in MCL 141.1558(1). And even if the Court assumes that there will be a Chapter 9 proceeding, this Court cannot assume what the contents of the City's plan might be, or that the federal bankruptcy court will approve a plan that will diminish or impair Plaintiffs' pension benefits. Because Plaintiffs' claim is based on a speculative threat of future-injury, they have failed to allege a legal cause of action for which they have standing to seek relief from this Court. *Lansing School Education Ass'n*, 487 Mich at 372.

### b. Plaintiffs do not meet the requirements of MCR 2.605.

With respect to declaratory judgment actions, MCR 2.605(A)(1) provides:

> In a case of *actual controversy* within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted. [Emphasis added.]

MCR 2.605 "does not limit or expand the subject-matter jurisdiction of the courts, but instead incorporates the doctrines of standing, ripeness, and mootness." *UAW v Central Mich Univ Trustees*, 295 Mich App 486, 495; 815 NW2d 132 (2012). "The existence of an 'actual controversy' is a condition precedent to invocation of declaratory relief." *Shavers v Attorney General*, 402 Mich 554, 588; 267 NW2d 72 (1978); see also *Genesis Ctr, PLC v Comm'r of Financial & Ins Servs*, 246 Mich App 531, 544; 633 NW2d 834 (2001). "An 'actual controversy' . . . exists when a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve legal rights. The requirement prevents a court from deciding hypothetical issues." *UAW*, 295 Mich App at 495 (citations omitted) (footnotes omitted). "The

essential requirement of an 'actual controversy' under the rule is that the plaintiff pleads and proves facts that demonstrate an ' " 'adverse interest necessitating the sharpening of the issues raised.' " ' " *Id.* (citations omitted) (footnotes omitted).

As discussed above, the parties are many steps away from a point at which an actual controversy will exist between them. Presently, the possibility of Chapter 9 bankruptcy represents only a possibility, and thus whether Plaintiffs' pension benefits might be impacted somewhere in the future in a bankruptcy proceeding is purely speculative. Thus, the Plaintiffs' interests and the Governor's, Treasurer's, and State's interests are not yet adverse, and therefore no sharpening of the issues through issuance of a declaratory judgment is required. Plaintiffs have failed to satisfy the requirements of MCR 2.605, and do not have standing to seek relief from this Court. *Lansing School Education Ass'n*, 487 Mich at 372.

        **c.**     **Plaintiffs have not established a special injury, right, or substantial interest that will be detrimentally affected in a manner different from that of the citizenry at large.**

Even where there is no cause of action provided at law, a court may, in its discretion, determine whether a litigant has standing. *Lansing Schools*, 487 Mich at 372. This requires a showing that the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant.

Here, as noted above, the Legislature did not intend to confer standing on any person to challenge the Act. Rather, it expressly provided that there is no cause of action under the Act. MCL 141.1572. And even if Plaintiffs have a special injury, right or interest based on their participation in the City's pension plan, which Defendants do not concede, it is not at all certain that this interest will be detrimentally affected. Again, no authorization to proceed in a Chapter 9

bankruptcy with respect to the City has been made, it remains hypothetical. It is also speculative to assume that Plaintiffs' pensions will be part of any bankruptcy proceeding. Moreover, a Chapter 9 bankruptcy proceeding affords various interested parties protections under the federal Bankruptcy Code.

Bankruptcy Code provisions applicable to a Chapter 9 bankruptcy are set forth under 11 USC 901(a). For instance, § 943, 11 USC 943, of the Bankruptcy Code regulates confirmation of a debtor's plan of adjustment. Section 943(b) sets forth seven criteria that must be met before a federal Bankruptcy Court can confirm the plan. The fourth and seventh requirements are noteworthy here. The fourth criteria requires the bankruptcy court determine "the debtor is not prohibited by law from taking any action necessary to carry out the plan." 11 USC 943(b)(4). The seventh criteria requires a determination that the plan be in the best interest of creditors, and that it be feasible. 11 USC 943(b)(7).

At this time, it is purely speculative as to whether Plaintiffs' interests will be detrimentally affected should the Governor authorize the City to proceed in Chapter 9. Plaintiffs therefore do not have standing to seek relief from this Court. *Lansing School Education Ass'n*, 487 Mich at 372.

### 3. Plaintiffs' alleged constitutional claim is not ripe for review.

While both standing and ripeness are justiciability doctrines that assess pending claims to discern whether an actual or imminent injury in fact is present, they address different underlying concerns. *Michigan Chiropractic Council v Comm'r of Ins,* 475 Mich 363, 378-379; 716 NW2d 561 (2006). The standing doctrine "is designed to determine whether a particular party may properly litigate the asserted claim for relief." *Id.,* at 379. The ripeness doctrine, on the other hand, "does not focus on the suitability of the party; rather, ripeness focuses on the *timing* of the

9

action." *Id.* (emphasis in original). The ripeness doctrine precludes the adjudication of hypothetical or contingent claims before an actual injury has been sustained. An action is not ripe if it rests on contingent future events that may not occur as anticipated or may not occur at all. *Id.,* at 371 n. 14.

For the reasons already discussed above, Plaintiffs' contention that a future Chapter 9 bankruptcy could represent what they characterize as a "threat" to their interests in their pensions is not ripe because it rests on contingent future events that may or may not occur, to wit; that the Governor will approve proceeding in Chapter 9, that the approval will be without any contingencies, and that their pensions will be impaired as a result of the federal bankruptcy proceeding. Under these circumstances, this Court should dismiss Plaintiffs' Complaint as unripe for review. See *Strauss v Governor*, 459 Mich 526, 544, 545 n. 14; 592 NW2d 53 (1999), quoting *Straus v Governor*, 230 Mich App 222; 583 NW2d 520 (1998) (citation omitted) ("unless and until such [a constitutional] encroachment actually occurs, the issue is not ripe for adjudication," and "[w]here a constitutional question is presented anticipatorily, the Court is required by the limits on its authority to decline to rule.").

### 4. Plaintiffs' complaint fails to state a claim upon which this Court may grant relief.

Plaintiffs bring a facial constitutional challenge to the Local Financial Stability and Choice Act. They broadly assert that the Act is unconstitutional under Const 1963, art 9, § 24 because it empowers the Governor to authorize a proceeding in Chapter 9. (Complaint, ¶ 19).

"A facial challenge is a claim that the law is 'invalid *in toto* - and therefore incapable of any valid application. . . .' " *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 11 n 20; 740 NW2d 444 (2007) (citation omitted) (emphasis in original). "A party challenging the facial constitutionality of a statute faces an extremely

rigorous standard, and must show that no set of circumstances exists under which the [a]ct would be valid." *Id.* at 11 (internal quotation marks and citation omitted). Plaintiffs cannot satisfy this standard.

As discussed above, § 18(1) of the Act, MCL 141.1558(1), simply authorizes an emergency manager to recommend, and the Governor to authorize, proceeding under Chapter 9. It is silent with respect to what course of action an emergency manager should pursue in bankruptcy, including how a local government unit's assets and liabilities should be treated in bankruptcy. And relevant here, it does not require any particular treatment of pension funds. Indeed, section 18 does not even mention or allude to pension funds. Compare this to section 12(1)(m), MCL 141.1552(1)(m), of the Act, which describes an emergency manager's authority and duties with respect to a "municipal government's pension fund." Thus, nothing in the Act compels or requires any impairment of Plaintiffs' pension benefits contrary to art 9, § 24. The Act is therefore not facially unconstitutional. Moreover, Plaintiffs clearly cannot establish "that no set of circumstances exists under which the [a]ct would be valid," because the Governor could place a contingency eliminating the pension fund, payments and liabilities from a Chapter 9 proceeding. Additionally, the City may not include the pension funds, payments and liabilities in its plan; or the federal court may determine that federal bankruptcy law controls the analysis. Plaintiffs' facial constitutional challenge to the Act thus fails as a matter of law, and should be dismissed.

## II. Plaintiffs' alternative request for preliminary injunctive relief is premature, overbroad, and constitutionally infirm, and fails to satisfy the four requirements for issuance of a preliminary injunction.

Injunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury.

MCR 3.310(A); *Davis v City of Detroit Financial Review Team*, 296 Mich App 568, 613-614; 821 NW2d 896 (2012); *Michigan Coalition of State Employee Unions, et al v Civil Service Commission,* 465 Mich 212, 226, n 11; 634 NW2d 692 (2001). In order to obtain a preliminary injunction, a plaintiff must prove that (1) he is likely to prevail on the merits; (2) he will be irreparably harmed if an injunction is not issued; (3) the harm to him absent an injunction outweighs the harm that an injunction would cause the defendants; and (4) there will be no harm to the public interest if an injunction is issued. *Detroit Fire Fighters Ass'n v Detroit*, 482 Mich 18, 34; 753 NW2d 579 (2008). A court's exercise of its discretion to consider injunctive relief may not be arbitrary, but rather must be in accordance with the fixed principles of equity jurisdiction and the evidence in the case. *Jeffrey v Clinton Twp*, 195 Mich App 260, 263; 489 NW2d 211 (1992). When seeking injunctive relief, the plaintiff has the burden of proof on each of these factors. MCR 3.310(A)(4). Plaintiffs have not met their burden here, and their motion should be denied.

### A. Plaintiffs' alternative request for preliminary injunctive relief is premature, overbroad, and constitutionally infirm.

Plaintiffs alternatively seek a preliminary injunction. But Plaintiffs' request should be denied because it is premature, overbroad, and unsupported by precedent.

This Court "at all times is required to question sua sponte its own jurisdiction (whether over a person, the subject matter of an action, *or the limits on the relief it may afford*)." *Strauss*, 459 Mich at 532, quoting *Straus*, 230 Mich App 222 (citation omitted) (emphasis added). In *Strauss*, the Michigan Supreme Court, in adopting the Court of Appeals' opinion, expressed "doubt with respect to the propriety of injunctive relief against the Governor," and observed that "separation of powers principles, preclude *mandatory* injunctive relief, mandamus, against the Governor." *Id.* (citations omitted) (emphasis added). The Court further observed that whether the same

12

reasoning also precludes "*prohibitory* injunctive relief" was an open question "that need not be resolved in [that] case." *Id.* (emphasis added). However, the Court also recognized, if not emphasized that

> declaratory relief normally will suffice to induce the legislative and *executive* branches, the principal members of which have taken oaths of fealty to the constitution identical to that taken by the judiciary, to conform their actions to constitutional requirements or confine them within constitutional limits. *Only when declaratory relief has failed should the courts even begin to consider additional forms of relief in these situations.* [*Id.* (emphasis added). See also *Davis v City of Detroit Financial Review Team*, 296 Mich App 568, 614, 632-635; 821 NW2d 896 (2012) (O'Connell, J., concurring).]

There is then almost a presumption that injunctive relief, of any kind, may not be entered against the Governor unless declaratory relief has failed. That has not happened here. Their request for an injunction should thus be denied as a premature.

Plaintiffs' request for injunctive relief should also be denied because it is overbroad. Plaintiffs ask this Court to enjoin the Governor from authorizing *any* bankruptcy for the City of Detroit. (Complaint, ¶ 31-34). This would include a bankruptcy proceeding in which pension funds were *not* at issue or at risk. Additionally, the authorization Plaintiffs seek to enjoin is to proceed in Chapter 9 only, not the actual bankruptcy Petition or plan. This court cannot determine, based on the record Plaintiffs' present, how any bankruptcy proceeding for the City of Detroit, if filed, may impact their pension benefits or if at all, until the bankruptcy plan is filed with the bankruptcy court and ultimately confirmed. 11 USC 943. Plaintiffs alleged constitutional violation and claimed injury is currently nothing more than pure speculation. Thus, Plaintiffs' request should be denied to the extent it is overbroad and not narrowly tailored to the facts and legal arguments.

Finally, Plaintiffs' request for injunctive relief should be denied to the extent it is a request for mandatory injunctive relief. Although Plaintiffs' have couched their request for

injunctive relief in prohibitory language, in reality they seek to compel the Governor to exercise his discretion in a particular manner.

Under § 18(1), MCL 141.1558(1), the Governor may (1) disapprove the recommendation; (2) approve the recommendation; or (3) approve the recommendation and place contingencies on the local government in proceeding under Chapter 9. Plaintiffs' seek to have this Court compel the Governor to exercise the first option, disapproval. But it is clear that this Court cannot constitutionally issue a mandatory injunction compelling the Governor to exercise his discretion and act in a particular manner. *Strauss*, 459 Mich at 532. See also *Flint City Council v State of Michigan*, 253 Mich App 378, 387; 655 NW2d 604 (2002) (Observing that Court had previously reversed circuit court "[b]ecause the court's order . . . required the Governor to take specific, court-ordered action, . . . in the nature of mandamus and in violation of the Michigan constitution"); *Musselman v Governor*, 200 Mich App 656, 662; 505 NW2d 288 (1993) ("mandamus will not lie to compel the Governor to act, regardless of whether the actions sought to be compelled are discretionary or ministerial"). Accordingly, Plaintiffs' request for preliminary or permanent injunctive relief must be denied.

**B.    Plaintiffs have failed to satisfy any of the four requirements for issuance of a preliminary injunction.**

### 1.    Plaintiffs are not likely to succeed on the merits.

Plaintiffs cannot demonstrate a substantial likelihood of success on the merits of their claim that the Act is unconstitutional under art 9, § 24 because, as set forth above in Argument I, they lack standing to sue; their claim is unripe; and their facial constitutional challenge fails as a matter of a law.

14

### 2. Plaintiffs will not suffer irreparable harm if an injunction is not issued.

Again, if justiciable, the underlying issue in this case is properly raised in the federal Bankruptcy Court in the context of the actual bankruptcy plan during the confirmation process and not in the state trial court. 11 USC 943. Plaintiffs' legal claims would ripen only if and when a bankruptcy proceeding includes a possible reduction or adverse impact on their pension benefits. It is in that forum, in the context of the specific bankruptcy plan, that these legal issues should be addressed and resolved. Because Plaintiffs have a legal remedy – litigation in the context of the bankruptcy action – they will not suffer irreparable harm if an injunction is not issued now. They have identified no immediate threat to their pension benefits.

### 3. Defendants would be harmed more by the granting of the relief than would Plaintiffs in the absence of an injunction.

While Plaintiffs retain their access to the remedies set forth in the federal Bankruptcy Code without need of court-granted injunctive relief, the grant of Plaintiffs' alternative motion for preliminary injunction would harm Defendants, the operation of state government, the City of Detroit and its fiscal recovery. As discussed above, the grant of such relief would require that this Court disregard the separation of powers doctrine. Const 1963, art 3, § 2. The granting of such relief also would unlawfully intrude on the Governor's executive powers to authorize a Chapter 9 bankruptcy under section 18 of the Act, MCL 141.1558, by barring him from implementing the Act. The breadth of the injunction sought would preclude the authorization of *any* bankruptcy proceeding thereby prohibiting the State, the Emergency Manager and the City of Detroit from accessing an important tool for resolution of the existing fiscal crisis. The impact on the State's and City's economy would be devastating and the consequent impact on Plaintiffs pension benefits potentially worse than any bankruptcy action would produce.

### 4. The harm to the public interest if the injunction is issued is readily apparent.

In that Defendants would be harmed more by the granting of the injunctive relief than would Plaintiffs in the absence of an injunction, likewise the public at large will be harmed for the same reasons. An affront to the separation of powers doctrine and an unlawful intrusion into the Governor's executive powers can never be in the public interest.

The administration of any statute is essentially a matter of public and not of individual concern. Accordingly, in this case, the public is not benefited by a court order that would bar the Governor from authorizing a Chapter 9 bankruptcy under section 18 of the Act, MCL 141.1558.

Furthermore, improper interference with these gubernatorial powers directly contravenes the Act's measures to "assure the fiscal accountability of the local government and the local government's capacity to provide or cause to be provided necessary governmental services essential to the public health, safety, and welfare." MCL 141.1549(2). An injunction would place the citizens of the City of Detroit at greater risk because it would eliminate access to an important tool to resolve the existing fiscal crisis, causing further detrimental impact to public safety, services, and welfare.

For all of these reasons, the Court's issuance of injunctive relief or other such relief would be unwarranted and inappropriate.

16

**Conclusion and Relief Requested**

For the reasons stated above, Defendants respectfully request that this Honorable Court deny Plaintiffs' motion for expedited declaratory relief and/or for a preliminary injunction, and grant Defendants' motion for summary disposition dismissing Plaintiffs' Complaint under MCR 2.116(C)(4), (5), and (8) with prejudice.

Respectfully submitted,

Bill Schuette
Attorney General

Thomas Quasarano (P27982)
Brian Devlin (P34685)
Assistant Attorneys General
Attorneys for Defendants
State Operations Division
(517) 373-1162

Dated: July 15, 2013
AG# 2013-0048624-A – Webster-SOM – Response to Mtn Declaratory Judgment

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

     Plaintiffs,                    No. 13-734-CZ

v                              HON. ROSEMARIE AQUILINA

THE STATE OF MICHIGAN, RICHARD
SNYDER, as Governor of the State of
Michigan, and ANDY DILLON, as Treasurer
of the State of Michigan,

     Defendants.

_____

John R. Canzano (P30417)

John R. Canzano (P30417)              Thomas Quasarano (P27982)
McKnight, McClow, Canzano, Smith &     Brian Devlin (P34685)
Radtke, P.C.                            Assistant Attorneys General
Attorney for Plaintiffs           Attorney for Defendants
400 Galleria Officentre, Suite 117    P.O. Box 30754
Southfield, MI 48034           Lansing, MI 48909
(248) 354-9650                 (517) 373-1162
jcanzano@michworklaw.com     quasaranot@michigan.gov
                                devlinb@michigan.gov

_____/

STATE OF MICHIGAN   )
                  ) ss
COUNTY OF INGHAM   )

**PROOF OF SERVICE**

The undersigned certifies that on July 15, 2013 she served a copy of the Defendants'

Response to Plaintiffs' Motion for Declaratory Judgment or Preliminary Injunction and Brief in

Support of Defendants' Motion for Summary Disposition by e-mail and first class mail upon:

John R. Canzano
McKnight, McClow, Canzano, Smith & Radtke, P.C.
400 Galleria Officentre, Suite 117
Southfield, MI 48034
jcanzano@michworklaw.com

*Lynne L. Walton*

Lynne L. Walton

AG# 2013-0048624-C – Webster v SOM - POS

# McKNIGHT, McCLOW, CANZANO, SMITH & RADTKE, P.C.

*Attorneys at Law*
400 GALLERIA OFFICENTRE • SUITE 117
SOUTHFIELD, MI 48034-8460

TELEPHONE (248) 354-9650
FAX (248) 354-9656

SAMUEL C. McKNIGHT
JOHN R. CANZANO
LISA M. SMITH
DAVID R. RADTKE
DARCIE R. BRAULT
PATRICK J. RORAI

ELLEN F. MOSS 1956-2011

OF COUNSEL

JUDITH A. SALE
ROGER J. McCLOW

July 18, 2013

Thomas Quasarano
Assistant Attorney General
P.O. Box 30754
Lansing, MI 48909

Re: **Gracie Webster, et al v. The State of Michigan, et al**
**Case No. 13-734-CZ**

Dear Mr. Quasarano:

Enclosed please find the Plaintiffs' Reply Brief in Support of Motion for Declaratory Judgment and Expedited Hearing regarding the above matter.

Sincerely,

McKNIGHT, McCLOW, CANZANO
SMITH & RADTKE, P.C.

*John R. Canzano/sjc*

John R. Canzano

JRC/sjc
Enclosure

Dept of Attorney General

JUL 2 3 2013

State Operations Division
RECEIVED

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

        Plaintiffs,

vs

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

        Defendants.

Case No. 13-000734-CZ-C30
Hon. Rosemarie E. Aquilina

/

JOHN R. CANZANO (P30417)
McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com

/

**REPLY BRIEF IN SUPPORT OF MOTION FOR
DECLARATORY JUDGMENT AND EXPEDITED
HEARING PURSUANT TO MCR 2.605(D), OR
IN THE ALTERNATIVE FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

The pertinent facts have already been stated in Plaintiffs' Verified Complaint, Motion, and Brief in Support filed July 3, 2013, which are incorporated herein by reference. Notably, Defendants do not contest (or even mention) the most important facts here, which bear repeating: On June 14, 2013, Emergency Manager Kevyn Orr issussed a formal "Proposal for Creditors" which expressly states that "*there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons.*" The same day, the Emergency Manager -- who is himself a lawyer and bankruptcy expert -- publicly threatened that state laws -- including the Michigan Constitution -- protecting vested pension benefits will "not . . . protect" those pension rights in bankruptcy court.

Moreover, Defendants do not contest the substantive merits of Plaintiffs' claim that PA 436 is unconstitutional to the extent it allows accrued pension benefits to be "diminished or impaired" in violation of Article IX Section 24 of the Michigan Constitution. Rather, Defendants claim this case is not justiciable because the Emergency Manager has not yet actually requested and the Governor has not yet actually authorized a Chapter 9 filing pursuant to PA 436. Howver, as explained below and in Plaintiffs' original Brief, the instant controversy presents a classic case for declaratory relief under MCR 2.605. The need for a declaratory judgment to establish the rights and duties and to guide the conduct of all the parties here is urgent. Plaintiffs are entitled to a declaratory judgment that PA 436 is unconstitutional to the extent it allows the Governor to authorize Chapter 9 bankruptcy filing which, as the Emergency Manager has himself acknowledged, is intended to diminish or impair the accrued vested pension rights of Plaintiffs as well as thousands of their coworkers and fellow retirees. In the alternative, Plaintiffs are entitled to a preliminary injunction enjoining the Governor from authorizing such a unconstitutional bankruptcy filing.

**A.** **Plaintiffs have established an actual controversy entitling them to declaratory relief under MCR 2.605.**

Although Defendants couch their arguments in terms of standing and ripeness, the only real issue is whether there is an "actual controversy" under MCR 2.605, which subsumes those justiciability issues. This matter clearly presents "a case of actual controversy" empowering the Court to "declare the rights and other legal relations of an interested party seeking a declaratory judgment" under MCR 2.605(A)(1). Defendants' argument that Plaintiffs' request for declaratory relief presents speculative or hypothetical claims must be rejected. Under longstanding and well-established Michigan law, Plaintiffs are entitled to a declaratory judgment.

Defendants correctly cite *Lansing Schools Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349; 792 NW2d 686 (2010), as the controlling law. But that case supports Plaintiffs, not Defendants. In *Lansing Schools Ed Ass'n*, the Supreme Court held that in the declaratory judgment context:

> [W]henever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment.

487 Mich at 372. The Court further held that the standard for whether a litigant meets the requirements of MCR 2.605 was that stated in *Associated Builders and Contractors v Wilbur*, 472 Mich 117, 126; 693 NW2d 374 (2005): "[t]he essential requirement of the term 'actual controversy' under the rule is that plaintiffs plead and prove facts which indicate an adverse interest necessitating a sharpening of the issues raised." *Lansing Schools Ed Ass'n*, 487 Mich at 372, n 20.[1]

---

[1]    Notably, although *Lansing Schools Ed Ass'n* held that "Michigan standing jurisprudence should be restored to a limited, prudential doctrine that is consistent with Michigan's longstanding historical approach to standing" and overruled the standing doctrine adopting federal Article III standing jurisprudence established in *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726; 692 NW2d 900 (2001) and *Nat'l Wildlife Federation v Cleveland Cliffs*

Defendants also cite *UAW v Central Mich Univ Trustees*, 295 Mich App 486; 815 NW2d 132 (2012). Again that case supports Plaintiffs, not Defendants. In *Central Michigan*, the plaintiff union sought a declaratory judgment that a university policy governing employees who become candidates for public office was invalid and in violation of the Political Activities by Public Employees Act, MCL 15.401 *et seq.* The defendant university claimed the plaintiff lacked standing and that there was no actual controversy because none of its members had attempted to become candidates for political office. The Court held that "by granting declaratory relief in order to guide or direct future conduct, courts are not precluded from reaching issues before actual injuries or losses have occurred." The Court held that there was an actual controversy concerning the legitimacy of the candidacy policy, because "to hold otherwise would be inconsistent with the purpose of a declaratory judgment" which is "to enable the parties to obtain adjudication of rights *before an actual injury occurs,* to settle a matter *before it ripens into a violation of the law* or a breach of contract, or to avoid a multiplicity of actions by *affording a remedy for declaring in expedient action the rights and obligations of all litigants.* 295 Mich App at 496 (emphasis in original), quoting *Rose v State Farm Mutual Ins Co,* 274 Mich App 291, 294; 732 NW2d 160 (2006).

*City of Lake Angelus v Mich Aeronautics Comm,* 260 Mich App 371; 676 NW2d 642 (2004), cited in *Central Mich University*, is particularly instructive, and clearly shows that Plaintiffs are entitled to a declaratory judgment here. In *Lake Angelus*, the plaintiff city sought a declaratory judgment that the enabling legislation establishing the Michigan Aeronautics Commission, MCL 259.1 *et seq.,* did not authorize the Commission to override the city's

---

*Iron Co,* 471 Mich 608; 684 NW2d 800 (2004), *Lansing Schools* did not overrule *Associated Builders and Contractors* on this point, noting that *Associated Builders* had incorporated the pre-*Lee/Cleveland Cliffs* standard for establishing standing for a declaratory judgment under MCR 2.605. *Lansing Schools Ed Ass'n,* 487 Mich at 372, n 20. Thus Plaintiffs have established an

3

ordinance banning the use or docking of seaplanes on Lake Angelus. A lakefront property owner (Gustafson) had previously challenged the city ordinance in the federal courts and lost. Subsequently, the Seaplane Pilots Association requested that the Aeronautics Commission act to clarify that lakes such as Lake Angelus should be open to seaplane operations irrespective of any local ordinances. In response, the Commission promulgated a rule establishing a multistage administrative process by which local ordinances, such as the plaintiff city's ordinance, could be overridden.

The Attorney General, in defense of the Aeronautics Commission and the validity of its enabling legislation, argued that because Gustafson had not so requested, and the Aeronautics Commission had not begun an administrative process to override the city's ordinance, there was no actual controversy which would support declaratory relief under MCR 2.605. The Court of Appeals unequivocally disagreed:

> Hanging over the city is the prospect of being required to respond in administrative proceedings designed to override the ordinance, pursuant to an administrative rule adopted specifically to provide a means of overriding the ordinance respecting Lake Angelus. To be sure, the commission may not drop the sword. But the commission adopted the administrative rule, the Attorney General claims that it is valid, and, perforce, at any time, the city may be called upon to respond in an administrative context at considerable cost and expense, *and in circumstances that are not predictable.*

260 Mich App at 376. (emphasis supplied) The Court concluded there was an "actual controversy" and that it was "in the public interest to declare the rights of the parties on the question of whether the Commission has the authority to override the ordinance." The Court further noted that the modern declaratory judgment rule [MCR 2.605] "was intended to 'provide for the broadest type of declaratory judgment procedure." *Id.,* 377, citing *Shavers v. Kelley,* 402 Mich 554; 267 NW2d 72 (1978), and Longhofer, *Courtroom Handbook on Michigan Civil*

---

"actual controversy" under both *Associated Builders* as well as *Lansing Schools.*

*Procedure* (2003), §2605.6, p. 1020. *See also, City of Huntington Woods v City of Detroit,* 279 Mich App 603, 616-617; 761 NW2d 127 (2008) (finding actual controversy for a declaratory judgment concerning defendant city's authority to sell golf course property, and pursuant to what terms, even though there had been no violation of restrictive covenants and property had not yet been sold, *because city was seriously considering sale of the property* and had begun to solicit bidders; declaratory relief was "necessary in order to guide or direct future conduct" of defendant and because "courts are not precluded from reaching issues before actual injuries or losses have occurred.") (citation omitted)

The *Lake Angelus* case is on all fours with this case. There, as here, an adjudicative forum had been established which, once invoked, threatened to invalidate the plaintiff's rights. In *Lake Angelus* the forum was the Aeronautics Commission administrative procedure and the right threatened was the City's right under its local ordinance to ban seaplanes. Here, the forum is federal bankruptcy court under Chapter 9 and the rights threatened are Plaintiffs' rights under the Michigan Constitution protecting their accrued pension benefits. There, as here, an "actual controversy" existed under MCR 2.605 even though there had been no request to invoke the forum and the process which could abrogate the plaintiff's rights had not been initiated, because the process could commence at any time "in circumstances that are not predictable" and because declaratory relief was necessary in order to declare the rights of the parties as to the defendant's authority to begin proceedings which could override the plaintiff's rights.

As noted in Plaintiff's Verified Complaint and in their Brief in Support of Motion for Declaratory Judgment and Preliminary Injunction, the need for declaratory relief is urgent. Emergency Manager Orr -- himself an attorney and bankruptcy expert -- has stated in writing that "there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons." He has publicly threatened that vested pension benefits will be

5

abrogated in a Chapter 9 proceeding authorized by the Governor pursuant to PA 436, and that any state law protecting pension benefits -- including the Michigan Constitution -- is "not going to protect" retirees or employees with vested pension benefits in bankruptcy court.[2] And, he is admittedly using the threat of bankruptcy in an attempt to force vested pensioners and employees to give in to his demands to diminish and impair their constitutionally protected pension rights *before* any bankruptcy filing, understandably causing Plaintiffs, and thousands of city retirees like them, great fear and anguish for their future well-being.[3]

---

[2] Despite the Emergency Manager's threats, Defendants argue that Plaintiffs' pension rights under Michigan law could be protected in Chapter 9. Although Plaintiffs obviously reserve the right to argue that a federal bankruptcy court must honor Michigan's Constitutional protections for vested pension benefits, what would happen to those rights in bankruptcy is unpredictable, at best. See, e.g., Comment, *Solving Insolvent Public Pensions: The Limitations of the Current Bankruptcy Option,* 28 Emory Bankr Dev Journal 89, * 121-122 (noting that "while some commentators and local officials have argued that state law restrictions on pension reductions or modifications may limit the bankruptcy court's ability to reduce or terminate these retirement obligations, [a decision of at least one bankruptcy court] affirmed the general proposition that, where states authorize a municipality to file bankruptcy, federal bankruptcy law is not subordinate to state law.") (citations and footnotes omitted)

[3] Defendants also cite to Section 32 of PA 436, MCL 141.1572, which purports to preclude causes of action under PA 436 for violation of the Act. But as Defendants correctly note, Plaintiffs are not aserting a cause of action under the Act. They are asserting a claim that PA 436 is unconstitutional to the extent it allows the Governor to authorize a bankruptcy filing which threatens to diminish or impair Plaintiffs' accrued pension rights in violation of Article IX Section 24 of the Michigan Constitution; and in the alternative for an injunction prohibiting the Governor from unconstitutionally authorizing such an unconstitutional bankruptcy filing under PA 436. It is black letter law that this court has jurisdiction over such claims, and Defendants do not contend otherwise. As the Supreme Court declared in *Diggs v State Bd of Embalmers & Funeral Directors,* 321 Mich 508, 514 (1948), "[t]his Court has repeatedly held that in cases where an irreparable injury will result from the acts of public officials in attempting to proceed under an invalid law, the jurisdiction of equity may be invoked for the purpose of obtaining injunctive relief and a determination as to the constitutionality of the statute that is involved."

Moreover, as Defendants also correctly note, a litigant also has standing in this context "if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large . . ." *Lansing Schools Ed Ass'n,* 487 Mich at 372. Plaintiffs obviously satisfy this standard. Plaintiffs are imminently threatened with the diminishment or impairment in federal bankruptcy court of their hard-earned vested pension benefits. And the threat of bankruptcy is being used *now* in an attempt to force Plaintiffs to give in to the Emergency Manager's demands to diminish or impair constitutionally protected pension

6

The Emergency Manager could request, and the Governor could authorize, a Chapter 9 bankruptcy filing at any moment. Plaintiffs need and are entitled to declaratory relief *now*.

### B.    Plaintiffs have stated a valid claim for relief

Defendants argue at page 10-11 of their Response Brief that Plaintiffs' Complaint fails to state a claim upon which this court may grant relief. Defendants assert that because Plaintiffs have described their claim as a "facial" challenge, it is subject to the rule stated in *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 171*, 479 Mich 1; 740 NW2d 444 (2007) that "[a] facial challenge is a claim that the law is invalid *in toto* -- and therefore incapable of any valid application," *id* at 11, n 20, i.e., that "no set of circumstances exists under which the [a]ct would be valid." *Id* at 11. This argument must be rejected for several separate and independent reasons.

*First*, as explained above and in Plaintiffs original Brief in Support, Plaintiffs *have* stated a valid claim for declaratory relief. The rule stated in *Request for Advisory Opinion* is inapplicable to requests for declaratory relief such as this. For example, in the *Lake Angelus* case discussed above, the Court of Appeals found that the enabling legislation at issue was invalid in the sense that it did not allow the Aeronautics Commission to approve the landing and takeoff of seaplanes in violation of local ordinances. The court never considered, and did not need to consider, whether there was "no set of circumstances" under which the enabling legislation would be valid. In fact, the court considered the possibility that the legislation could be validly applied in that the Aeronautics Commission might not "drop the sword" -- i.e. might not override the local ordinance -- yet still granted the requested declaratory relief.

---

rights *before* a bankruptcy filing. The citizenry at large, unlike Plaintiffs, suffers no such special injury.

*Second*, Plaintiffs are not seeking to invalidate PA 436 "*in toto*" as required for application of the rule stated in *In Re Advisory Opinion*. Plaintiffs are only seeking a declaration that the provisions of PA 436 which allow a Chapter 9 bankruptcy filing are unconstitutional where, as here, such a filing threatens to impair or diminish vested pension benefits in violation of Article IX Section 24 of the Michigan Constitution. For example, in a case where a municipality had no pension plan, or a pension plan whose participants had no accrued benefits, a Chapter 9 filing would not violate Article IX Section 24.

Here, because the imminent Chapter 9 filing *does* threaten to impair or diminish vested pension benefits -- as Emergency Manager (and bankruptcy lawyer) Orr has explicitly stated -- Plaintiffs are entitled to a declaration that PA 436 is unconstitutional to the extent it allows the Governor to authorize a Chapter 9 bankruptcy filing by the Emergency Manager. This case is a challenge to the provisions of PA 436 which authorize a Chapter 9 filing in violation of Article IX Section 24 of the Michigan Constitution. Moreover, even if the Court were to find Plaintiffs' limited facial challenge somehow deficient, the Court can and should still find that the law is unconstitutional as applied, based on the particular facts here: the Emergency Manager's threat that "there must be significant cuts in accrued vested pension amounts" and that the Michigan Constitution is "not going to protect" retirees or employees with vested pension rights in bankruptcy court.

*Third*, the *In re Advisory Opinion* case was just that -- an advisory opinion. There were no facts and there were no parties. The Attorney General argued both sides of the case -- that the voter identification law in question was, and was not, constitutional. That case obviously presented a pure facial challenge to a law *in toto*. That case was nothing like this case, and the rule stated there has no application here.

8

C.      **In the alternative, Plaintiffs are entitled to a preliminary injunction**

In support of their alternative request for a preliminary injunction, Plaintiffs incorporate the arguments previouisly stated in support thereof in their original July 3, 2013 Brief in Support. Plaintiffs also incorporate by reference the arguments in support of a preliminary injunction in the July 3, 2013 Brief in Support and the July 18, 2013 Reply Brief filed in this Court by the Plaintiffs in *Flowers v State of Michigan,* No. 13-729-CZ.

Plaintiffs seek in the alternative a preliminary injunction prohibiting the Governor from authorizing a Chapter 9 filing by the Emergency Manager which threatens to impair and diminish Plaintiffs' accrued vested pension benefits in violation of Article IX Section 24 of the Michigan Constitution. The Emergency Manager has given every indication that he intends to use Chapter 9 to achieve "significant cuts in accrued vested pension amounts for both active and currently retired persons," and has threatened that in his expert opinion as a bankruptcy lawyer, the Michigan Constitution is "not going to protect you" from having pension benefits diminished or impaired in bankruptcy.

Defendants argue that Plaintiffs' request for injunctive relief is overbroad because it would prohibit the Governor from authorizing a bankruptcy filing which did not threaten to impair or diminish vested pension rights. However, in his recent filings in both this case and the *Flowers* case, although he had every opportunity to do so, the Governor gave no indication whatsoever that he would authorize a Chapter 9 filing only if the filing did not threaten to diminish or impair vested pension rights and by requiring that all accrued benefits be fully funded well before any bankruptcy filing. The Governor's silence in this regard is telling. Moreover, even if the Governor were to attach such a contingency, there is no guarantee that a bankruptcy judge would honor it, although Plaintiffs of course would argue that he or she should.

9

(See fn 2, *supra*.) Accordingly, there is no basis for the Defendants' claim that the injunctive relief which Plaintiffs seek is overbroad.

Defendants also argue that an injunction against the Governor prohibiting him from authorizing a bankruptcy filing which threatens to unconstitutionally diminish or impair vested pension rights is precluded under separation of powers principles, citing *Strauss v Governor*, 459 Mich 526, 532; 592 NW2d 53 (1999). But *Strauss* dealt with *mandatory* injunctive relief (mandamus) and not, as here, *prohibitory* injunctive relief. As Defendents concede, the Court in *Strauss* expressly *did not* decide that prohibitory injunctive relief against the Governor is precluded. Of course, as *Strauss* notes, it is expected that the Governor -- who has taken an oath to obey the Constitution -- will obey a declaratory judgment that he not violate the Constitution by authorizing a Chapter 9 bankruptcy which threatens to impair or diminish vested pension benefits. The problem is that if he attempts to authorize bankruptcy before declaratory relief is granted, or if he fails to obey a declaratory judgment, it will be too late for Plaintiffs, absent an injunction. Once the City has entered bankruptcy, there may be no turning back, and as noted in fn. 2, *supra,* the consequences for Plaintiffs' vested pension rights will be unpredictable, at best.[4]

Finally, as explained in Plaintiffs' Verified Complaint and July 3 Brief, as well as the Complaint, Brief and Reply Brief in the *Flowers* case, Plaintiffs satisfy all the factors for a preliminary injunction. In particular, the public interest will be served by stopping the unconstitutional destruction of the vested pension benefits of thousands of retirees and workers

---

[4] For the same reason, Defendants' claim that Plaintiffs will have an "adequate remedy at law" in bankruptcy court is ludicrous. As the Emergency Manager has threatened, the express purpose of a bankruptcy filing would be to abrogate pension rights, and in his professional opinion, the Michigan Constitution will "not . . . protect" retirees in bankruptcy court. While Plaintiffs would of course contest such a result, bankruptcy court proceedings are obviously not an "adequate remedy" for vindicating their rights under the Michigan Constitution.

10

who have planned their futures trusting that their pension benefits were constitutionally protected and that Article IX Section 24 of the Michigan Constitution means what it says.

## CONCLUSION

Wherefore, Plaintiffs respectfully request that their Motion for Declaratory Judgment and/or Preliminary Injunction be granted.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By: _____
John R. Canzano   (P30417)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI  48034
248-354-9650
jcanzano@michworklaw.com

Date:  July 18, 2013

P:\AFSCME\Emergency Mgr Litigation\Pleadings\Reply Brief-REV.doc

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

       Plaintiffs,

vs

                                Case No. 13-000734-CZ-C30
                                Hon. Rosemarie E. Aquilina

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

       Defendants.

| | |
|---|---|
| JOHN R. CANZANO (P30417)<br>McKNIGHT, McCLOW, CANZANO,<br>SMITH & RADTKE, P.C.<br>Attorneys for Plaintiffs<br>400 Galleria Officentre, Suite 117<br>Southfield, MI 48034<br>248-354-9650<br>jcanzano@michworklaw.com | THOMAS QUASARANO (P27982)<br>BRIAN DEVLIN (P34685)<br>Assistant Attorneys General<br>Attorney for Defendants<br>P.O. Box 30754<br>Lansing, MI 48909<br>517-373-1162<br>quasaranot@michigan.gov<br>devlinb@michigan gov |

## **PROOF OF SERVICE**

    The undersigned certifies that on July 18, 2013, he served a copy of Reply Brief in

Support of Motion for Declaratory Judgment and Expedited Hearing Pursuant to MCR 2.605(D),

or in the Alternative for Preliminary Injunction by email and first class mail upon:

              THOMAS QUASARANO
              BRIAN DEVLIN
         Assistant Attorneys General
          Attorney for Defendants
              P.O. Box 30754
              Lansing, MI 48909

                    /s/ John R. Canzano
                   John R. Canzano

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

THE GENERAL RETIREMENT SYSTEM
OF THE CITY OF DETROIT, and THE
POLICE AND FIRE RETIREMENT
SYSTEM OF THE CITY OF DETROIT,

*Gracie Webster*
*and Veronica Thomas*

    Plaintiffs,

Case No. ~~13-768-CZ~~ *13-000734-CZ*
*C30*

vs.   *State of Michigan*

~~KEVYN D. ORR, in his official capacity as the~~
EMERGENCY MANAGER OF THE CITY OF
~~DETROIT,~~ and RICHARD SNYDER, in his
official capacity as the GOVERNOR OF THE
STATE OF MICHIGAN, *and Andy Dillon,*

Hon. *Rosemarie Aquilina*

*Treasurer in his official Capacity*

    Defendants.

---

Ronald A. King (P45088)
Aaron O. Matthews (P64744)
Michael J. Pattwell (P72419)
CLARK HILL PLC
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys for Plaintiffs

*John R Canzano P30417*
*McKnight, McClow, Canzano Smith*
*+ Radtke PC*
*400 Galleria Oficenter*

---

## TEMPORARY RESTRAINING ORDER

At a session of said Court, held in the City of
Lansing, County of Ingham, State of Michigan
on _____ *18 July 13* _____

PRESENT: HON. *Rosemarie E Aquilina*
          CIRCUIT COURT JUDGE

*and having appeared during the hearing for a TRO in 13.000734*

This matter having come before the Court on Plaintiffs' Complaint with verification and *Declaratory Judgment and Preliminary Injunction* ~~Ex Parte~~ Motion for a Temporary Restraining Order; the Court being fully advised in the premises; Plaintiffs having shown a likelihood of success on the merits of the claims in

9214431.1 14893/144127

Plaintiffs' Complaint; Plaintiff having adequately shown that a failure to immediately issue a Temporary Restraining Order will cause irreparable injury to Plaintiffs by permitting the Governor and the Emergency Manager ("Defendants") to authorize and file a Chapter 9 bankruptcy petition wherein Plaintiffs' accrued financial benefits will be impaired prior this Court's scheduled preliminary injunction hearing on Monday, July 22, 2013; and the Court being otherwise fully informed in the premises and finding good cause:

IT IS HEREBY ORDERED that Plaintiffs' Motion is granted; *which has already occurred*

IT IS FURTHER ORDERED that Defendants are immediately and temporarily enjoined and restrained from taking any action (including the authorization of an unconditional Chapter 9 bankruptcy proceeding for the City of Detroit and/or the filing of a Chapter 9 bankruptcy petition) *or taking any further action with respect to any filing* that may: (i) cause the accrued financial benefits of the Retirement System or their participants from in any way being diminished or impaired as mandated by Article IX, section 24, of the Michigan Constitution, or (ii) otherwise abrogate Article IX, section 24, of the Michigan Constitution;

IT IS FURTHER ORDERED that the Court shall hold a hearing on _____ *July 22*, 2013 at *9:00AM* whereby Defendants shall show cause why a *Declaratory Judgment and/or* Preliminary Injunction shall not issue; and

IT IS FURTHER ORDERED that this temporary restraining order shall remain in full force and effect until _____ *further order of the Court* , 2013 at 5:00 p.m.)

IT IS SO ORDERED.

*Rosemarie E Aquilina*
CIRCUIT COURT JUDGE
*P37670*

DATE: *18 July 13*

TIME: *4:25 p.M.*

2

GRACIE WEBSTER and
VERONICA THOMAS,

        Plaintiffs,

Case No. 13-734-CZ

    vs

HON. ROSEMARIE AQUILINA

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

        Defendants.

RECEIVED

JUL 19 2013

Clerk of the Court
30th Judicial Circuit

---

John R. Canzano (P30417)
McKnight, McClow, Canzano,
   Smith & Radke, P.C.
400 Galleria Officentre, Suite 117
Southfield, Michigan 48034
(248) 345-9650
jcanzano@michworklaw.com
Counsel for Plaintiffs

Thomas Quasarano (P27982)
Brian Devlin (P34685)
Assistant Attorneys General
Department of Attorney General
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-1162
quasaranot@michigan.gov
devlinb@michigan.gov
Attorneys for Defendants

---

## NOTICE OF SUGGESTION OF PENDENCY OF
## BANKRUPTCY CASE AND APPLICATION OF THE AUTOMATIC STAY

**PLEASE TAKE NOTICE THAT**, on July 18, 2013 (the "Petition Date"), the City of

Detroit, Michigan (the "City") filed a petition for relief under chapter 9 of title 11 of the United

States Code (the "Bankruptcy Code"). The City's bankruptcy case is captioned *In re City of*

*Detroit, Michigan*, Case No. 13-53846, (Bankr. E.D. Mich.) (the "Chapter 9 Case"), and is

pending in the United States Bankruptcy Court for the Eastern District of Michigan

(the "Bankruptcy Court"). A copy of the voluntary petition filed with the Bankruptcy Court commencing the Chapter 9 Case is attached hereto as Exhibit A.

PLEASE TAKE FURTHER NOTICE THAT, in accordance with the automatic stay imposed by operation of sections 362 and 922 of the Bankruptcy Code (the "Stay"), from and after the Petition Date, no act to (i) exercise control over property of the City or (ii) collect, assess or recover a claim against the City that arose before the commencement of the Chapter 9 Case may be commenced or continued against the City without the Bankruptcy Court first issuing an order lifting or modifying the Stay for such specific purpose.

PLEASE TAKE FURTHER NOTICE THAT, in accordance with the Stay, from and after the Petition Date, no cause of action arising prior to, or relating to the period prior to, the Petition Date may be commenced or continued against (i) the City, in any judicial, administrative or other action or proceeding, or (ii) an officer or inhabitant of the City, in any judicial, administrative or other action or proceeding that seeks to enforce a claim against the City, and no related judgment or order may be entered or enforced against the City outside of the Bankruptcy Court without the Bankruptcy Court first issuing an order lifting or modifying the Stay for such specific purpose.

PLEASE TAKE FURTHER NOTICE THAT actions taken in violation of the Stay, and judgments or orders entered or enforced against the City, or its officers or inhabitants to enforce a claim against the City, while the Stay is in effect, are void and without effect.

-2-

**PLEASE TAKE FURTHER NOTICE THAT** the City hereby expressly reserves all rights with respect to the above-captioned proceeding, including, but not limited to, the right to move to vacate any judgment entered in the above-captioned proceeding as void.

Dated:  July 19, 2013

Respectfully submitted,

*Jaclyn Shoshana Levine*

Jonathan S. Green (P33140)
Stephen S. LaPlante (P48063)
Jaclyn Shoshana Levine (P58938)
MILLER, CANFIELD, PADDOCK
    AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 963-6420
Facsimile:  (313) 496-7500
green@millercanfield.com

COUNSEL FOR THE CITY

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## Eastern District of Michigan

In re:

City of Detroit, Michigan,

Case No. 13-_____

_____ Debtor. _____/

## BANKRUPTCY PETITION COVER SHEET

(The debtor must complete and file this form with the petition in every bankruptcy case. Instead of filling in the boxes on the petition requiring information on prior and pending cases, the debtor may refer to this form.)

### Part 1

"Companion cases," as defined in L.B.R. 1073-1(b), are cases involving any of the following: (1) The same debtor; (2) A corporation and any majority shareholder thereof; (3) Affiliated corporations; (4) A partnership and any of its general partners; (5) An individual and his or her general partner; (6) An individual and his or her spouse; or (7) Individuals or entities with any substantial identity of financial interest or assets.

Has a "companion case" to this case ever been filed at any time in this district or any other district? Yes ___  No _X_
(If yes, complete Part 2.)

### Part 2

For each companion case, state in chronological order of cases:

*Not applicable*

If the present case is a Chapter 13 case, state for each companion case:

*Not applicable*

### Part 3 - In a Chapter 13 Case Only

The Debtor(s) certify, re: 11 U.S.C. § 1328(f):          *Not Applicable*
[indicate which]

☐ Debtor(s) received a discharge issued in a case filed under Chapter 7, 11, or 12 during the 4-years before filing this case.

☐ Debtor(s) did not receive a discharge issued in a case filed under Chapter 7, 11, or 12 during the 4-years before filing this case.

☐ Debtor(s) received a discharge in a Chapter 13 case filed during the 2-years before filing this case.

☐ Debtor(s) did not receive a discharge in a Chapter 13 case filed during the 2-years before filing this case.

I declare under penalty of perjury that I have read this form and that it is true and correct to the best of my information and belief.

Kevyn D. Orr
Emergency Manager
City of Detroit

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, MI 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

Date: July 18, 2013

ATTORNEYS FOR THE CITY OF DETROIT, MICHIGAN