RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

| Street Address | Property Type |
|---|---|
| 6360 Horatio | Residential |
| 15518 Idaho [1] | Commercial |
| 15518 Idaho [2] | Commercial |
| 12748 Ilene | Residential |
| 20136 Ilene | Residential |
| 15778 Iliad | Residential |
| 5290 Ivanhoe | Residential |
| 6435 Julian | Commercial |
| 8545 Kenney | Residential |
| 13989 Kentucky | Residential |
| 13301 Kercheval | Commercial |
| 5925 Kopernick | Residential |
| 17137 Lamont | Residential |
| 17208 Lamont | Residential |
| 3839 Lanman | Residential |
| 5206 Lawndale | Residential |
| 2194 Lemay | Residential |
| 3958 Lemay | Residential |
| 1601 Liddesdale | Residential |
| 1029 Liebold | Residential |
| 5065 Lillibridge | Residential |
| 15744 Livernois | Commercial |
| 12558 Longview | Residential |
| 12767 Loretto | Residential |
| 8881 Louis | Residential |
| 13441 Lumpkin | Residential |
| 14242 Mack (a/k/a 3181 Lakewood) | Commercial |
| 12368 MacKay | Residential |
| 12393 MacKay | Residential |
| 12398 MacKay | Residential |
| 13569 MacKay | Residential |
| 13909 MacKay | Residential |
| 13927 MacKay | Residential |
| 13952 MacKay | Residential |
| 13977 MacKay | Residential |
| 13983 MacKay | Residential |
| 459 Manistique | Residential |
| 12000 Mansfield | Residential |
| 8129 Marcus | Residential |
| 4588 Marseilles | Residential |
| 9343 N. Martindale | Residential |
| 8320 Maxwell | Residential |
| 8326 Maxwell | Residential |
| 4766 McDougall | Commercial |
| 2122 Meade | Residential |
| 2420 Meade | Residential |
| 3697 Medbury | Residential |
| 11654 Meyers | Residential |
| 8911 Milner | Residential |
| 2652 Norman | Residential |
| 10002 Nottingham | Residential |

| Street Address | Property Type |
|---|---|
| 5115 Nottingham | Residential |
| 8811 Olivet | Residential |
| 8917 Otsego | Residential |
| 15799 Parkside | Residential |
| 18401 Pembroke | Residential |
| 11172 Promenade | Residential |
| 2101 Puritan | Commercial |
| 5807 Renville | Residential |
| 1957 Richton | Residential |
| 534 W. Robinwood | Residential |
| 6119 Rohns | Residential |
| 14381 Rosa Parks Blvd. | Unknown |
| 11735 Rutherford | Residential |
| 6835 Seminole | Residential |
| 5737 E. Seven Mile | Commercial |
| 2008 Sharon | Residential |
| 13422 Shields | Residential |
| 10201 Shoemaker | Commercial |
| 10956 Shoemaker | Commercial |
| 6750 Sparta | Residential |
| 14291 Spring Garden | Commercial |
| 4467 St. Clair | Residential |
| 6915 St. John | Residential |
| 7180 St. John | Residential |
| 18805 St. Louis | Commercial |
| 1928 Stanley | Residential |
| 12746 Strasburg | Residential |
| 8104 Thaddeus | Residential |
| 4832 Toledo | Residential |
| 6195 Townsend | Residential |
| 9778 Traverse | Residential |
| 17231 Trinity | Residential |
| 2634 Tuxedo | Residential |
| 2522-4 Tyler | Residential |
| 2660 Tyler | Residential |
| 9526 Van Dyke | Commercial |
| 2030 Vinewood | Residential |
| 5757 Vinewood | Commercial |
| 15451 Virgil | Residential |
| 15300 E. Warren (Bldgs. 101 & 102) | Commercial |
| 64 Watson | Commercial |
| 6414 Willette | Unknown |
| 4364 Woodhall | Residential |
| 11640 Woodmont | Residential |
| 12075 Woodmont | Residential |
| 12136 Woodmont | Residential |
| 12153 Woodmont | Residential |
| 11365 Yosemite | Residential |
| 11402 Yosemite | Residential |

## SCHEDULE 2

## City of Detroit, Michigan Brownfields Properties

| Name of Site | Description |
|---|---|
| Former Detroit Coke Site | 7819 West Jefferson Avenue |
| Belleview Development (Uniroyal) Site | 600 East Jefferson. 43-acre former Uniroyal site located in the East Riverfront District, bounded by Jefferson Avenue (to the north), MacArthur Bridge (to the east), Detroit River (to the south) and Meldrum Street (to the west). |
| Riverside Park Site | 3085 West Jefferson Avenue. West Grand Boulevard and 24th Street along the Detroit River. |

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM



## EMERGENCY MANAGER
## CITY OF DETROIT

### ORDER No. 13

### FILING OF A PETITION UNDER CHAPTER 9
### OF TITLE 11 OF THE UNITED STATES CODE

By the Authority Vested in the Emergency Manager
For the City of Detroit
Pursuant to Michigan's Public Act 436 of 2012,
Kevyn D. Orr, the Emergency Manager,
Issues the Following Order:

*Whereas*, on March 28, 2013, Michigan Public Act 436 of 2012 ("PA 436") became effective and Kevyn D. Orr became the Emergency Manager (the "EM") for the City of Detroit (the "City") with all the powers and duties provided under PA 436; and

Pursuant to section 9(2) of PA 436, the EM "shall act for and in the place and stead of" the Detroit Mayor and City Council; and

Section 9(2) of PA 436 also grants the EM "broad powers in receivership to rectify the financial emergency and to assure the fiscal accountability of the [City] and the [City's] capacity to provide or cause to be provided necessary governmental services essential to the public health, safety, and welfare;" and

Pursuant to section 10(1) of PA 436, the EM may "issue to the appropriate local elected and appointed officials and employees, agents, and contractors of the local government the orders the [EM] considers necessary to accomplish the purposes of this act;" and

Section 18(1) of PA 436 provides that "[i]f, in the judgment of the [EM], no reasonable alternative to rectifying the financial emergency of the local government which is in receivership exists, then the [EM] may recommend to the governor and the

state treasurer that the local government be authorized to proceed under chapter 9" of title 11 of the United States Code (the "Bankruptcy Code"); and

Section 18(1) of PA 436 further provides that "[i]f the governor approves of the [EM's] recommendation, the governor shall inform the state treasurer and the emergency manager in writing of the decision.... Upon receipt of the written approval, the emergency manager is authorized to proceed under chapter 9 [of the Bankruptcy Code]. This section empowers the local government for which an emergency manager has been appointed to become a debtor under [the Bankruptcy Code], as required by section 109 of [the Bankruptcy Code], and empowers the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9" of the Bankruptcy Code; and

In accordance with section 18 of PA 436, the EM has recommended to the Governor of Michigan (the "Governor") and the Michigan State Treasurer (the "State Treasurer") that the City be authorized to proceed under chapter 9 of the Bankruptcy Code (the "Recommendation"); and

The Governor has provided the State Treasurer and the EM with his written approval of the Recommendation, a true and correct copy of which is attached hereto as Exhibit A, thereby authorizing the City to proceed under chapter 9.

**It is hereby ordered that:**

1. The City shall file a petition for relief under chapter 9 of the Bankruptcy Code (the "Petition") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court").

2. The City's Corporation Counsel, financial advisors, outside legal advisors and other officers and employees of the City, as applicable, are hereby authorized and directed, on behalf of and in the name of the City, to execute and verify the Petition and related Bankruptcy Court filings and perform any and all such acts as are reasonable, appropriate, advisable, expedient, convenient, proper or necessary to carry out this Order, as and to the extent directed by the EM or his designee.

3. If any component of this Order is declared illegal, unenforceable or ineffective in a legal or other forum or proceeding such component shall be deemed severable so that all other components contained in this Order shall remain valid and effective.

4. This Order is effective immediately upon the date of execution below.

5. This Order shall be distributed to the Mayor, City Council members and all department heads.

2

6. The EM may modify, rescind, or replace this Order at any time.

Dated: July 18, 2013

By: _____
Kevyn D. Orr
Emergency Manager
City of Detroit

cc:    State of Michigan Department of Treasury
Mayor David Bing
Members of Detroit City Council

3

13-53846-swr Doc 1221-16 Filed 10/17/13 Entered 10/17/13 14:22:31 Page 5 of 70

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

# EXHIBIT A

## Governor's Written Approval of Recommendation

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM



RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

STATE OF MICHIGAN
## EXECUTIVE OFFICE
LANSING

RICK SNYDER
GOVERNOR

BRIAN CALLEY
LT. GOVERNOR

VIA HAND AND ELECTRONIC DELIVERY

July 18, 2013

Kevyn D. Orr
Emergency Manager
City of Detroit
Coleman A. Young Municipal Center
2 Woodward Ave., Suite 1126
Detroit, MI 48226

Andrew Dillon
State Treasurer
Michigan Department of Treasury
4th Floor Treasury Building
430 W. Allegan Street
Lansing, MI 48992

Re: Authorization to Commence Chapter 9 Bankruptcy Proceeding

Dear Mr. Orr and Mr. Dillon,

I have reviewed Mr. Orr's letter of July 16, 2013, requesting my approval of his recommendation to commence a bankruptcy proceeding for the City of Detroit under Chapter 9 of title 11 of the United States Code. As you know, state law requires that any such recommendation must first be approved by the Governor before the emergency manager may take that step. MCL 141.1558. For the reasons discussed below, I hereby approve that recommendation and authorize Mr. Orr to make such a filing.

### Current Financial Emergency

In reviewing Mr. Orr's letter, his Financial and Operating Plan, and his report to creditors, it is clear that the financial emergency in Detroit cannot be successfully addressed outside of such a filing, and it is the only reasonable alternative that is available. In other words, the City's financial emergency cannot be satisfactorily rectified in a reasonable period of time absent this filing.

I have reached the conclusion that this step is necessary after a thorough review of all the available alternatives, and I authorize this necessary step as a last resort to return this great City to financial and civic health for its residents and taxpayers. This decision comes in the wake of 60 years of decline for the City, a period in which reality was often

ignored. I know many will see this as a low point in the City's history. If so, I think it will also be the foundation of the City's future – a statement I cannot make in confidence absent giving the City a chance for a fresh start, without burdens of debt it cannot hope to fully pay. Without this decision, the City's condition would only worsen. With this decision, we begin to provide a foundation to rebuild and grow Detroit.

Both before and after the appointment of an emergency manager, many talented individuals have put enormous energy into attempting to avoid this outcome. I knew from the outset that it would be difficult to reverse 60 years of decline in which promises were made that did not reflect the reality of the ability to deliver on those promises. I very much hoped those efforts would succeed without resorting to bankruptcy. Unfortunately, they have not. We must face the fact that the City cannot and is not paying its debts as they become due, and is insolvent.

After reading Mr. Orr's letter, the Financial and Operating Plan, and the report to creditors, I have come to four conclusions.

1. Right now, the City cannot meet its basic obligations to its citizens.

2. Right now, the City cannot meet its basic obligations to its creditors.

3. The failure of the City to meet its obligations to its citizens is the primary cause of its inability to meet its obligations to its creditors.

4. The only feasible path to ensuring the City will be able to meet obligations in the future is to have a successful restructuring via the bankruptcy process that recognizes the fundamental importance of ensuring the City can meet its basic obligations to its citizens.

I will explain how I came to each conclusion.

**Inability to Meet Obligations to its Citizens.** As Mr. Orr's Financial and Operating Plan and the June 14 Creditor Proposal have noted, the scale and depth of Detroit's problems are unique. The City's unemployment rate has nearly tripled since 2000 and is more than double the national average. Detroit's homicide rate is at the highest level in nearly 40 years, and it has been named as one of the most dangerous cities in America for more than 20 years. Its citizens wait an average of 58 minutes for the police to respond to their calls, compared to a national average of 11 minutes. Only 8.7% of cases are solved, compared to a statewide average of 30.5%. The City's police cars, fire trucks, and ambulances are so old that breakdowns make it impossible to keep up the fleet or properly carry out their roles. For instance, only a third of the City's ambulances were in service in the first quarter of 2013. Similarly, approximately 40% of the City's street lights were not functioning in that quarter and the backlog of complaints is more than 3,300 long. Having large swaths of largely abandoned structures -- approximately 78,000 – creates additional public safety problems and reduces the quality of life in the City. Mr. Orr is correct that meeting the obligations the City has to

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

its citizens to provide basic services requires more revenue devoted to services, not less.

**Inability to Meet Obligations to Its Creditors.** The City has more than $18 billion in accrued obligations. A vital point in Mr. Orr's letter is that Detroit tax rates are at their current legal limits, and that even if the City was legally able to raise taxes, its residents cannot afford to pay additional taxes. Detroiters already have a higher tax rate than anywhere in Michigan, and even with that revenue the City has not been able to keep up with its basic obligations, both to its citizens and creditors. Detroit simply cannot raise enough revenue to meet its current obligations, and that is a situation that is only projected to get worse absent a bankruptcy filing.

**Failure to Meet Obligations to Citizens Creates Failure to Meet Obligations to Creditors.** Mr. Orr's letter and prior report put in stark reality the dramatic impact of the City's plummeting population. While many who love Detroit still live there, many other Detroiters at heart could not justify the sacrifice of adequate services. The City's population has declined 63% from its peak, including a 28% decline since 2000. That exodus has brought Detroit to the point that it cannot satisfy promises it made in the past. A decreasing tax base has made meeting obligations to creditors impossible. Mr. Orr is correct when he says the City cannot raise the necessary revenue through tax increases, and it cannot save the necessary revenue through reducing spending on basic services. Attempts to do so would only decrease the population and tax base further, making a new round of promises unfulfillable.

**Only One Feasible Path Offers a Way Out.** The citizens of Detroit need and deserve a clear road out of the cycle of ever-decreasing services. The City's creditors, as well as its many dedicated public servants, deserve to know what promises the City can and will keep. The only way to do those things is to radically restructure the City and allow it to reinvent itself without the burden of impossible obligations. Despite Mr. Orr's best efforts, he has been unable to reach a restructuring plan with the City's creditors. I therefore agree that the only feasible path to a stable and solid Detroit is to file for bankruptcy protection.

The past weeks have reaffirmed my confidence that Mr. Orr has the right priorities when it comes to the City of Detroit. I am reassured to see his prioritization of the needs of citizens to have improved services. I know we share a concern for the public employees who gave years of service to the City and now fear for their financial future in retirement, and I am confident that all of the City's creditors will be treated fairly in this process. We all believe that the City's future must allow it to make the investment it needs in talent and in infrastructure, all while making only the promises it can keep. Let us remain in close communication regarding measures Mr. Orr might take so we can discuss the possible impacts that might occur both within and outside of the City.

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

### Contingencies

2012 PA 436 provides that my approval of the recommendation to commence a Chapter 9 proceeding may place contingencies on such a filing. MCL 141.1558(1). I am choosing not to impose any such contingencies today. Federal law already contains the most important contingency -- a requirement that the plan be legally executable. 11 USC 943(b)(4).

### Conclusion

In conclusion, I find Mr. Orr's Recommendation Letter to be persuasive, especially in conjunction with his prior reports laying out the level of services the City can provide and its financial ability to meet its obligations to creditors. I am also convinced that Mr. Orr has exercised his best efforts to arrive at a restructuring plan with the City's creditors outside of bankruptcy, to no avail. Given these facts, the only feasible path to sustainability for the City of Detroit is a filing under chapter 9 of the bankruptcy code. Therefore, I hereby approve Mr. Orr's recommendation and authorize the emergency manager to make such a filing on behalf of the City of Detroit and to take all actions that are necessary and appropriate toward that end.

Sincerely,

Richard D. Snyder
Governor
State of Michigan

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

# EXHIBIT 5

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

      Plaintiffs,

vs

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

      Defendants.

Case No. 13-734-CZ
Hon. CANADY

JOHN R. CANZANO (P30417)
McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com

_____

## MOTION FOR DECLARATORY JUDGMENT
## AND EXPEDITED HEARING PURSUANT TO MCR 2.605(D),
## OR IN THE ALTERNATIVE FOR PRELIMINARY INJUNCTION.

For the reasons stated in the attached brief, Plaintiffs request that this Court order an

expedited hearing and grant a declaratory judgment and permanent injunction, or, in the

alternative, a preliminary injunction in their favor.

      Respectfully submitted,

      McKNIGHT, McCLOW, CANZANO,
      SMITH & RADTKE, P.C.

      By: _____
        John R. Canzano (P30417)
        Attorneys for Plaintiffs
        400 Galleria Officentre, Suite 117
        Southfield, MI 48034
        248-354-9650
        jcanzano@michworklaw.com

Date: July 3, 2013

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

     Plaintiffs,

vs

                                    Case No. 13-734-CZ
                                    Hon.    CANADY

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

     Defendants.

_____/

JOHN R. CANZANO (P30417)
McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com

_____/

**<u>BRIEF IN SUPPORT OF MOTION FOR
DECLARATORY JUDGMENT AND EXPEDITED
HEARING PURSUANT TO MCR 2.605(D), OR
IN THE ALTERNATIVE FOR PRELIMINARY INJUNCTION</u>**.

     This action seeks a declaratory judgment that the "Local Financial Stability and Choice

Act," 2012 PA 436, MCL 141.1541 *et seq.* ("PA 436") is unconstitutional in violation of Article

IX Section 24 of the Michigan Constitution, which expressly protects vested pension rights by

requiring that "[t]he accrued financial benefits of each pension plan and retirement system of the

state and its political subdivisions . . . *shall not be diminished or impaired . . .*"

Pursuant to MCR 2.605(D), "[t]he court may order a speedy hearing of an action for declaratory relief and may advance it on the calendar" in appropriate cases. This is such a case. Plaintiffs, a City of Detroit pensioner who retired 13 years ago, and a City of Detroit employee with 17 years of accrued vested service, are facing an imminent threat that their vested pension rights will be irreparably and permanently diminished and impaired in a Chapter 9 bankruptcy proceeding authorized by PA 436, in direct violation of Article IX Section 24 of the Michigan Constitution. In the alternative, Plaintiffs are seeking a preliminary injunction enjoining Defendant Governor Snyder and Defendant State Treasurer Dillon from authorizing a Chapter 9 bankruptcy under PA 436.

## FACTS

Plaintiffs incorporate herein the facts stated in the Verified Complaint. This case presents essentially a pure question of law. The pertinent facts are not in dispute.

Kevyn Orr currently serves as the Emergency Manager of the City of Detroit under PA 436. Under Section 18 of PA 436, Defendant Governor Snyder is empowered to authorize Orr to file for Chapter 9 bankruptcy on behalf of the City if the Governor approves the Emergency Manager's recommendation to do so.

On June 14, 2013, Emergency Manager Orr issued a "Proposal for Creditors" which expressly states that *"there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons."* The same day, Emergency Manager Orr publicly threatened, in an interview with the Detroit Free Press Editorial Board, that vested pension benefits will not be protected in a Chapter 9 proceeding authorized by the Governor pursuant to PA 436, and that any state laws protecting vested pension benefits will "not . . . protect" retirees in bankruptcy court. As the Emergency Manager stated in the interview:

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

2

Q. You said in this report that you don't believe there is an obligation under our state constitution to pay pensions if the city can't afford it?

A. The reason we said it that way is to quantify the bankruptcy question. We think federal supremacy trumps state law.

Q. Which the Ninth Circuit agrees with for now.

A. It is what it is - so we said that in a soft way of saying, "Don't make us go into bankruptcy." **If you think your state-vested pension rights, either as an employee or a retiree -** *that's not going to protect you.* **If we don't reach an agreement one way or the other, we feel fairly confident that the state federal law, federalism, will trump state law or negotiate.** The irony of the situation is we might reach a deal with creditors quicker because employees and retirees think there is some benefit and that might force our hand. That might force a bankruptcy. (Emphasis added.)

## LAW

Plaintiffs are entitled to a declaratory judgment that PA 436 is unconstitutional in violation of Article IX Section 24 of the Michigan Constitution, because PA 436 permits accrued pension benefits to be diminished or impaired in direct contravention of the Constitution. Article IX Section 24 provides that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof *which shall not be diminished or impaired* thereby." There could not be a more clear and plain constitutional mandate. Article IX Section 24 means what it says: *accrued pension benefits "shall not be diminished or impaired."* See, *AFT Michigan v State of Michigan*, 297 Mich App 597, 610; 825 NW2d 595 (2012); *Mt Clemens Firefighters Union, Local 838, IAFF v City of Mt Clemens,* 58 Mich App 635, 644; 228 NW2d 500 (1975). The Official Record of the 1963 Constitutional Convention further supports that no governmental entity or its officials can do anything to diminish or impair vested pension benefits:

This is a new section that requires that accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions be a

3

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

contractual obligation which **cannot diminished or impaired by the action of its officials or governing body.**

2 Official Record, Constitutional Convention 1961, p. 3402 (emphasis added).

Chapter 9 of the U.S. Bankruptcy Code, 11 USC §§901 *et seq.*, provides a process by which a municipality may file for bankruptcy. However, because of federalism concerns and to protect the states' sovereignty, Chapter 9 prohibits a municipality from filing for bankruptcy unless "specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter." 11 USC §109(c)(2). Indeed, many states simply do not authorize their municipalities to file for bankruptcy at all. Absent such authorization, federal bankruptcy courts have no jurisdiction under Chapter 9 over a municipality as a debtor. See *Ashton v Cameron County Water District No 1*, 298 US 513; 56 S Ct 892; 80 L Ed 1309 (1936); and *United States v Bekins*, 304 US 27; 58 S Ct 811; 82 L Ed 1137 (1938).

Section 18 of PA 436 authorizes a municipality to commence Chapter 9 bankruptcy proceedings if the emergency manager appointed under PA 436 recommends, and the Governor authorizes, that the municipality file for bankruptcy under Chapter 9.

Notably, PA 436 explicitly recognizes that accrued pension benefits shall not be diminished or impaired outside the bankruptcy context. But PA 436 nowhere requires that the Governor shall not authorize a Chapter 9 bankruptcy filing if accrued pension benefits may be diminished or impaired thereby in violation of Article IX Section 24. *For example*, Section 11 of PA 436 requires that an emergency manager develop a written financial and operating plan for the local government and that such plan "shall provide" for "the timely deposit of required payments to the pension fund for the local government." *For example*, Section 13 of PA 436 authorizes the emergency manager to eliminate the salary, wages or other compensation and

4

benefits of the chief administrative officer and members of the governing body of the local government, but expressly provides that "[t]his section does not authorize the impairment of vested pension benefits." *For example,* Section 12(m) of PA 436 authorizes an emergency manager under certain circumstances to be appointed as the sole trustee of a local pension board and to replace the existing trustees, and requires that "the emergency manager shall fully comply with . . . Section 24 of Article IX of the state constitution . . ." when acting as the sole trustee.

By contrast, Section 18 of PA 436, which empowers the Governor to authorize a municipality to file for bankruptcy under Chapter 9, *nowhere* requires that the Governor shall not authorize such filing if accrued pension benefits may be unconstitutionally diminished or impaired. Clearly, the Legislature understood and honored the constitutional mandate not to diminish or impair accrued pension benefits outside of bankruptcy. Just as clearly, the Legislature *omitted* any constitutional protection against the impairment or diminishment of accrued pension benefits when the Governor authorizes a Chapter 9 bankruptcy filing under Section 18 of PA 436. In other words, by expressly *including* the protection of Article IX Section 24 in various sections of the law, but not Section 18, PA 436 plainly *excludes* those protections from Section 18.[1] Accordingly, PA 436 is unconstitutional on its face because it does not prohibit a municipality from proceeding under Chapter 9 if accrued pension benefits may be unconstitutionally diminished or impaired, in violation of Article IX Section 24 of the Michigan Constitution.

Plaintiffs are entitled to a declaratory judgment that PA 436 is unconstitutional under Article IX Section 24 of the Michigan Constitution because PA 436 does not prohibit the

---

[1] This conclusion is supported by the traditional maxim *"expressio unius est exclusio alterius"* (to express one thing is to exclude another). *See, e.g., Smitter v Thornapple Twp,* ____ Mich ____, 2013 Mich Lexis 912, *19, n 34 (June 19, 2013); *Johnson v Recca,* 492 Mich 169, 176, n 4; 821 NW2d 520 (2012).

13-53846-swr   Doc 2361-62   Filed 01/02/14   Entered 01/02/14 18:28:52   Page 17 of 41
70

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

Governor from authorizing a Chapter 9 bankruptcy filing which threatens to unconstitutionally diminish or impair the Plaintiffs' accrued pension benefits.

Plaintiffs' need for a Declaratory Judgment is urgent. The facts show that a request by the Emergency Manager to proceed under Chapter 9 is imminent, because he has given every indication that he intends to impair or diminish accrued pension benefits in contravention of Article IX Section 24 of the Michigan Constitution. Plaintiff's' rights under the Michigan Constitution not to have their pension benefits "diminished or impaired" can only be guaranteed if this Court acts *before* the Governor approves a request to proceed under Chapter 9.

This case presents an actual controversy entitling Plaintiffs to a declaratory judgment because the facts indicate "an adverse interest necessitating the sharpening of the issues raised." *Lansing School Education Ass'n v Lansing Bd of Educ*, 487 Mich 349, 372 n20; 792 NW2d 686 (2010), quoting *Associated Builders and Contractors v Wilbur*, 472 Mich 117, 126; 693 NW2d 374 (2005). Plaintiffs are entitled to a declaratory judgment here "to obtain adjudication of rights *before* an actual injury occurs [and] to settle a matter *before* it ripens into a violation of the law . . ." *Rose v State Farm Mutual Auto Insurance Co*, 274 Mich App 291, 294; 732 NW2d 160 (2006). (emphasis supplied)

This case presents the classic case for declaratory relief. Plaintiffs cannot wait to protect their constitutional rights until after the Governor authorizes a Chapter 9 filing. "Declaratory relief is designed to give litigants access to courts to preliminarily determine their rights. . . . the court is not precluded from reaching issues before actual injuries or loses have occurred." *City of Detroit v State of Michigan*, 262 Mich App 542, 550-551; 686 NW2d 514 (2004), citing *Shavers v Attorney General*, 402 Mich 554, 588-589; 267 NW2d 72 (1978) (explaining that plaintiff's request for declaratory relief "does not rely on the state having already violated the zoning ordinance [but] rather properly requests a determination whether the state had the

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

authority to proceed as planned"). Moreover, the Emergency Manager is admittedly using the threat of bankruptcy to force vested pensioners and employees to accede to his attempts to diminish and impair their accrued benefits **now**. Thus the harm to Plaintiffs is both imminent and actual.

Under MCR 2.605(D), this Court can and should order a speedy hearing and advance this case on the calendar. The need is urgent. *See*, Longhofer, 3 *Michigan Court Rules Practice* §2605.7 at 390. (Speedy hearing under 2.605(D) "will be done most frequently in actions involving clear-cut legal issues of public importance, with no factual issues to be tried"). *See also, Kuhn v Department of Treasury*, 384 Mich 378, 386-387; 183 NW2d 796 (1971) ("moving party is entitled to an expeditious disposition by the courts so that the right . . . guaranteed by the constitution is not jeopardized."); *State Farm v Savickas*, 1998 Mich App Lexis 984 (1998) (trial court accelerated trial and entered judgment, as authorized by MCR 2.605(D)).

In the alternative, Plaintiffs are entitled to a preliminary injunction. In deciding whether to issue a preliminary injunction, the court must weigh the following factors:

> Whether (1) the moving party made [a] required demonstration of irreparable harm, (2) the harm to the applicant absent such an injunction outweighs the harm it would cause to the adverse party, (3) the moving party showed that it is likely to prevail on the merits, and (4) there will be harm to the public interest if an injunction is not issued.

First, Plaintiffs will be irreparably harmed if the Governor authorizes a Chapter 9 filing in which the Emergency Manager has stated he intends to diminish or impair vested pension benefits in violation of Article IX Section 24. Because bankruptcy may foreclose further options or financial relief, this is not a case where money damages could remedy the constitutional impairment of Plaintiff's pension rights. Second, the Governor and Treasurer will not suffer any harm if they are enjoined from authorizing a Chapter 9 bankruptcy that would violate the Constitution's protection for Detroit's vested pensioners and employees. "[I]f the plaintiff shows

7

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere its enjoinment." *Déjà vu of Nashville v Metro Gov't of Nashville and Davidson City*, 274 F3d 377, 400 (CA6, 2001). Third, for all the reasons stated above in support of a declaratory judgment, Plaintiffs are likely to succeed on the merits. Fourth, the public interest will be saved by upholding the Constitution's protection for thousands of long term City of Detroit retirees.

## CONCLUSION

Plaintiffs respectfully request that this Court grant a declaratory judgment and permanent injunction and/or preliminary injunction in their favor, as specified in the Verified Complaint.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By: _____
John R. Canzano (P30417)
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com

Date: July 3, 2013

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

# EXHIBIT 6

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

      Plaintiffs,

             No. 13-734-CZ

v

             HON. ROSEMARIE AQUILINA

THE STATE OF MICHIGAN, RICHARD
SNYDER, as Governor of the State of
Michigan, and ANDY DILLON, as Treasurer
of the State of Michigan,

      Defendants.

_____/

John R. Canzano (P30417)
McKnight, McClow, Canzano, Smith & Radtke,
P.C.
Attorney for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
(248) 354-9650
jcanzano@michworklaw.com

Thomas Quasarano (P27982)
Brian Devlin (P34685)
Assistant Attorneys General
Attorney for Defendants
P.O. Box 30754
Lansing, MI 48909
(517) 373-1162
quasaranot@michigan.gov
devlinb@michigan.gov

_____/

## ORDER DENYING DEFENDANTS' REQUEST FOR STAY

At a session of the Circuit Court
On __18 July 13__ before
HON. ROSEMARIE E. AQUILINA

Defendants having requested a Stay of Plaintiffs' request for Preliminary

Injunction and at the Show Cause Hearing having been held on July __18__, 2013;

1

IT IS HEREBY ORDERED, for the reasons stated on the record, that

*ORDER TO  ENFORCEMENT OF ORDER GRANTING PLANTIFFS*

Defendants' Request for a Stay of this pending appeal is denied,

*MOTION FOR PRELIMINARY INJUNCTION AND OTHER RELIEF DESCRIBED*

*IN THE ORDER IS DENIED,*

*Rosemarie Esquilina*

*P37670*

**IT IS SO ORDERED**

HON. ROSEMARIE E. AQUILINA
COURT OF CLAIMS JUDGE

2

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

```
 1            BEFORE THE HON. ROSEMARIE AQUILINA, CIRCUIT JUDGE

 2            Ingham County, Michigan - Thursday, July 18, 2013

 3

 4     APPEARANCES:

 5     For Plaintiffs Retirement Systems:
                              RONALD A. KING (P45088)
 6                            MICHAEL J. PATTWELL (P72419)
                              CLARK HILL PLC
 7                            212 East Grand River Ave.
                              Lansing, MI 48906
 8     For Plaintiffs Webster, et al.:
                              JOHN R. CANZANO (P30417)
 9                            Smith & Radtke, PC
                              400 Galleria Officentre, Ste. 117
10                            Southfield, MI  48034

11     For Plaintiffs Flowers, et al.:
                              WILLIAM A. WERTHEIMER (P26275)
12                            Attorney at Law
                              30515 Timberbrook Lane
13                            Bingham Farms, MI  48025

14     For the Defendants:    THOMAS QUASARANO (P27982)
                              Assistant Attorney General
15                            State Operations Division
                              P.O. Box 30754
16                            Lansing, MI 48909

17

18

19     REPORTED BY:          Melinda I. Dexter, RMR, RPR, CSR-4629
                              Official Court Reporter
20                            313 W. Kalamazoo
                              Post Office Box 40771
21                            Lansing, MI 48901-7971

22

23

24

25
```

2

```
 1              T A B L E   O F   C O N T E N T S
 2
 3
 4
 5      WITNESSES:
 6           None
 7
 8
 9
10
11      EXHIBITS:
12           None
13
14
15
16
17
18
19
20
21
22
23
24
25
```

3

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

1       Ingham County, Michigan
2       Thursday, July 18, 2013 - At 4:15 p.m.
3       MR. KING: Good afternoon.
4       THE COURT: Good afternoon. We have everybody
5 here?
6       MR. KING: They are.
7       THE COURT: All right. This is Docket
8 13-768-CZ, the General Retirement System of the City of
9 Detroit and the Police and Fire Retirement System of the
10 City of Detroit versus Kevin D. Orr, in his official
11 capacity as the Emergency Manager of the City of Detroit,
12 and Richard Snyder, in his official capacity as the
13 Governor of the State of Michigan.
14       Counsel, your appearances for the record.
15       MR. KING: Good afternoon, your Honor. Ron
16 King with Clark Hill on behalf of the Plaintiffs, the
17 General Retirement System of the City of Detroit and the
18 Police and Fire Retirement System of the City of Detroit.
19       THE COURT: Welcome.
20       MR. KING: Thank you.
21       MR. QUASARANO: Your Honor, if I may, Thomas
22 Quasarano, Assistant Attorney General, that will be
23 appearing in this case on behalf of the Defendant. I
24 believe the Defendant was served yesterday. We have not
25 received a request for representation, but I'm very

4

1       Counsel?
2       MR. KING: Your Honor, Ron King again on behalf
3 of the Plaintiffs, the Detroit Retirement Systems. We
4 might need to beg the Court's indulgence. While we
5 appreciate that you have seen us on very short notice,
6 we've been advised that the City has filed, and we're
7 pulling it up on the electronic filing system, so we
8 might need a few minutes here to figure out our very next
9 step.
10       THE COURT: Okay.
11       MR. KING: Because the effect of a bankruptcy
12 filing, if, in fact, that's -- we're trying to conform
13 that. We think, in fact, it has been filed here within
14 the last half hour. So we probably need about a
15 ten-minute recess here, if the Court would indulge us. I
16 know you have another matter.
17       THE COURT: Do we want to make a phone call?
18       MR. KING: Yeah. We can, but we're pretty --
19       THE COURT: Well, here's the thing: If they
20 haven't filed, we need to hurry up and proceed. If they
21 have filed --
22       MR. KING: We're pretty confident that they
23 filed.
24       Right?
25       I mean, we're pulling it up. Yeah. It's been

6

1 likely going to be asked to represent the Governor.
2       THE COURT: Sir?
3       MR. WERTHEIMER: Excuse me, your Honor,
4 William Wertheimer. I apologize for my dress.
5       THE COURT: No problem. I know it's last
6 minute. I don't care how people are dressed. It's more
7 important that you are here.
8       MR. WERTHEIMER: Thank you, your Honor. I was
9 here to file my reply brief today for the Monday hearing.
10 I am now here knowing that this motion has been filed,
11 and I wanted to enter my appearance.
12       THE COURT: All right. You may have a seat.
13 There is plenty of room for all.
14       MR. WERTHEIMER: Thank you.
15       MR. CANZANO: Your Honor, excuse me, John
16 Canzano, Plaintiffs' attorney in the Webster case. Same
17 as Mr. Wertheimer, we just found out about this. I'm
18 here. My reply brief is being filed. I have a judge's
19 copy here somewhere.
20       THE COURT: All right. Have a seat.
21       MR. KING: Your Honor --
22       THE COURT: Anybody else?
23       MR. PATTWELL: Your Honor, Michael Pattwell
24 from Clark Hill on behalf of Plaintiffs.
25       THE COURT: Thank you.

1 confirmed. So I'm not sure where that leaves us with
2 this proceeding because it's going to be pretty hard to
3 undue. It's been done.
4       MR. WERTHEIMER: There is no automatic stay in
5 this.
6       MR. KING: Yeah. What we're here for -- the
7 really --
8       What counsel is saying is there is no automatic
9 stay with respect to this proceeding. So in our
10 judgment, this matter will proceed. What you have before
11 you, however, is a motion for temporary restraining order
12 to enjoin certain conduct that's already occurred. So
13 I'm not sure that we really have a lot of business in
14 front of the Court at this moment, but I would like to
15 just confer for about ten minutes on that issue because
16 we will proceed in the case. And if we're here and you
17 want to take the time to set some sort of expedited
18 briefing schedule, we could do that also.
19       It's quite likely that you, your Honor, will be
20 able to make a ruling on the merits of this case in
21 advance of whatever occurs in the context of a Chapter 9
22 filing.
23       THE COURT: I plan on making a ruling on
24 Monday. I could make a ruling tomorrow, if push came to
25 shove, but Monday would probably be soon enough. I am

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

1 confident that the bankruptcy court won't act as quickly
2 as I will.
3     MR. KING: Yeah. I'm not sure, but we'll see.
4 I mean, there might -- but, nevertheless, so we should --
5     If you're prepared to rule on the merits on
6 Monday, again I'm not sure what -- if there is much
7 business for us left to do before the Court today.
8     THE COURT: Unless some kind of -- I don't
9 really have any authority over them, so.
10     MR. KING: Right.
11     THE COURT: I don't think anything --
12     Counsel?
13     MR. WERTHEIMER: Your Honor, the motion that's
14 up for Monday, our motion at least that's up for Monday,
15 is a request for a preliminary injunction to enjoin the
16 Governor. We have no evidence the Governor has
17 authorized any bankruptcy, and we would not only want to
18 go forward on Monday but ask that the motion for
19 preliminary injunction be moved up to now, hopefully, to
20 tomorrow morning if the Court will not hear it now. But
21 I don't think there is any reason why the Court cannot
22 hear our motion for preliminary injunction.
23     I'm not talking about in terms of the Court's
24 preparedness but in terms of the apparent filing. They
25 may have filed. But nobody -- I asked the Governor's

8

1 we should find out from the Office of the Attorney
2 General whether the Governor has authorized a bankruptcy
3 that has done the act that we were attempting to enjoin
4 and that they knew we were attempting to enjoin and that
5 they've known for the last two weeks and that they're
6 filing briefs on saying that it's not ripe. The
7 attorneys for the Government have represented to this
8 Court that our motion is not ripe.
9     THE COURT: I just received a note from my law
10 clerk that says the bankruptcy was filed at 4:06.
11     MR. KING: Right. Your Honor, so what we'd
12 like to do here is amend our emergency motion for
13 temporary restraining order and get it and request from
14 this Court an order enjoining the Governor and the
15 Emergency Manager from taking any further action in the
16 bankruptcy proceeding, and we'll modify our order to that
17 effect.
18     MR. WERTHEIMER: I would join that as to the
19 Governor. We have not sued the Detroit Emergency
20 Manager, but I would orally join in that motion as to the
21 Governor and the Secretary of the Treasury.
22     MR. CANZANO: I would say the same in our case.
23 We're not joining their motion but we're making a motion
24 in our case that would be the same as theirs only against
25 the Governor.

10

1 Office before we came in here -- er, the Attorney General
2 whether they could make any representations to me that
3 would obviate the need for me going forward, and they
4 could not.
5     So we've got a written, fully briefed request/
6 motion for preliminary injunction. The Attorney
7 General's Office has briefed it. Time is obviously of
8 the essence. I would suggest that the Court hear our
9 motion to preliminarily enjoin the Governor authorizing a
10 bankruptcy now.
11     MR. CANZANO: Your Honor, I would make
12 essentially the same request except that our motion,
13 although it seeks preliminary injunctive relief in the
14 alternative, it primarily seeks a final declaratory
15 judgment that what has just happened, apparently, is
16 unconstitutional, and that is ready for a final decision
17 we were saying on Monday. We have a reply brief that has
18 just been filed, and we would -- we could -- this Court
19 could issue that order immediately, and I don't know what
20 the consequences for the bankruptcy court would be,
21 necessarily, but I think it would -- it might make a
22 difference.
23     MR. WERTHEIMER: I'm sorry, and I think that at
24 a minimum, your Honor, I think we should -- I think the
25 Court should decide the preliminary injunction now, but

1     THE COURT: Granted, as to all of your
2 requests.
3     How soon are you going to present me with an
4 order?
5     MR. KING: Right now.
6     THE COURT: All right.
7     MR. KING: We just need to mark up the order
8 that we have for the Court.
9     THE COURT: Absolutely.
10     MR. QUASARANO: Your Honor, if I may, we would
11 ask that the Court stays enforcement of the order, and
12 your ruling on that would be appreciated at this time.
13     THE COURT: Denied.
14     MR. QUASARANO: Thank you. We'll present an
15 order as soon as possible.
16     THE COURT: Thank you.
17     MR. QUASARANO: Thank you, Judge.
18     MR. WERTHEIMER: Your Honor, we will need a few
19 minutes to prepare a written order, but if we can --
20     THE COURT: Well, sir, would you like to copy
21 that and modify what they're doing? My law clerk will be
22 happy to help you.
23     MR. WERTHEIMER: Thank you, your Honor.
24     THE COURT: As to your stay, you'll be getting
25 that to me in --

11

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

1    MR. QUASARANO: Maybe I can just make a call
2  and get an order over to you right yet today.
3    THE COURT: Sure. You can even handwrite it.
4  I don't care how we do it. You can run it over here, fax
5  it over here; whatever gets you the job done. Time is of
6  the essence.
7    MR. QUASARANO: I appreciate that.
8    MR. KING: (Approaching the bench.)
9    Your Honor, Ron King again on behalf of the
10 Plaintiffs. If we could go back on the record.
11   THE COURT: Excuse me.
12   MR. KING: We'd like to set the sequence of
13 events in terms of how things have transpired in the last
14 hour, if you will. Just for the record, our motion for
15 emergency temporary restraining order was filed at
16 3:37 p.m.; that is, today, July 18th. We promptly, well
17 in advance of 4 o'clock and probably within -- well,
18 actually, we had delivered prior to the filing time at
19 3:37 judge's copies to chambers for your review.
20   Then we waited for the Attorney General, who
21 doesn't feel compelled to make an appearance here in this
22 case because he hasn't actually been officially retained
23 yet, but, nevertheless, as a courtesy we waited for him
24 to appear, which he came upstairs sometime around 4:10.
25 We understand the bankruptcy filing was at 4:05?

12

1    THE COURT: 4:06.
2    MR. KING: 4:06. The Court took the bench at
3  approximately 4:20. And to the extent your Honor has had
4  an opportunity to read the papers and was inclined to
5  make a ruling, if you'd be willing to put that on the
6  record, then in the -- when we do seek dismissal of the
7  bankruptcy proceeding, we'll have some clear record of
8  the sequence of events here.
9    MR. WERTHEIMER: Just to add, in terms of the
10 sequence of events, I did advise by telephone
11 Mr. Quasarano of the fact that I would be in court and
12 that it was my understanding that Clark Hill was going to
13 be in court seeking a temporary restraining order. I
14 talked to him by phone before 4 this afternoon, sometime
15 between 3:30 and 4.
16   MR. QUASARANO: And I could confirm that
17 Mr. Wertheimer gave me the professional curtesy of
18 letting me know that there was a hearing being planned.
19 I had no -- we have no personal knowledge in our division
20 of a bankruptcy being filed any certain time or date, so
21 there is nothing we could provide in terms of a response
22 that there is going to be a bankruptcy filed. So we
23 learned it as everyone else learned.
24   THE COURT: All right. And obviously I heard
25 this was happening. I had another hearing that was

13

1  supposed to take place at 4 o'clock, and I understood
2  this was a very important issue, and we obviously have a
3  hearing scheduled, another hearing scheduled, at
4  9 o'clock on Monday.
5    So I advised my law clerk that we had a
6  4 o'clock hearing that wasn't going to take very long,
7  and whenever you all got here and that we would wait for
8  all of the attorneys, we would then have a hearing and to
9  let me know when everybody was in place and then I would
10 come out.
11   So that's exactly what happened. She let me
12 know everybody was here, gave me the paperwork to look
13 over, and, of course, I did just that. And we got out of
14 here as quickly as we could, obviously not in time
15 because 4:06 occurred and they did what they were going
16 to do, which I know you all raised here.
17   I did have an opportunity to -- with review of
18 what was filed, and you're asking me what I would have
19 done, and it was my intention, after reviewing what you
20 had filed, in addition to other research that my capable
21 externs from Cooley and from Michigan State, as well as
22 my very capable law clerk pulled for me, I reviewed
23 constitutional provisions, I reviewed legislative intent,
24 I reviewed what you all provided me, I reviewed a lot of
25 information in the last few hours, and it was my

14

1  intention to grant you your request completely.
2    MR. KING: Thank you, your Honor. Appreciate
3  your clarifying the record.
4    MR. WERTHEIMER: Thank you, your Honor.
5  Your Honor, we have a proposed order.
6    THE COURT: You may approach. Thank you.
7    MR. WERTHEIMER: Thank you. It is handwritten.
8  (Approaching the bench.)
9    THE COURT: No problem.
10   MR. WERTHEIMER: And for caption, it just says,
11 at this point, Flowers Caption.
12   THE COURT: Okay.
13   MR. WERTHEIMER: I had some help in drafting
14 too if you can't read the --
15   THE COURT: We'll make it work.
16   MR. WERTHEIMER: Okay. Thank you, Judge.
17   MR. KING: We may be back tomorrow, your Honor.
18   MR. WERTHEIMER: We may be back too,
19 your Honor. And if we are, I will be in a suit.
20   THE COURT: It's okay. As long as your body is
21 covered, I don't care what's it's covered with.
22   MR. KING: I think with respect to the present
23 motion before you, we have an order in place and
24 appreciate you making the accomodation and time for us
25 today. Thank you.

15

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

1      THE COURT: No problem.

2      Now, if you're back tomorrow, what is it going

3 to be for?

4      MR. KING: We might file a mandamus action

5 requiring the EM to withdraw the Chapter 9 filing.

6      THE COURT: Will this require time on the

7 record?

8      MR. KING: Yes.

9      THE COURT: Okay. My time restriction is that

10 I have my morning free until about 1:30. Can you get it

11 here before 1:30?

12      MR. PATTWELL: Yes.

13      MR. KING: Absolutely.

14      THE COURT: I'll make myself available all

15 morning until 1:30.

16      MR. KING: Thank you, your Honor.

17      THE COURT: Okay.

18      MR. CANZANO: May I approach, your Honor? I

19 have an order drafted also.

20      THE COURT: You may.

21      MR. CANZANO: (Approaching the bench.)

22      THE COURT: Okay. We'll make you copies, and

23 this is our copy.

24      Anything else for the record?

25      MR. KING: No, your Honor. Thank you.

16

1      MR. WERTHEIMER: No, your Honor. Thank you.

2      THE COURT: That's all for the record. Thank

3 you.

4      (At 4:38 p.m., the matter is

5      concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1       STATE OF MICHIGAN)
                          ) SS.
 2       COUNTY OF INGHAM)

 3

 4                    CERTIFICATE OF REPORTER

 5

 6            I, Melinda I. Dexter, Certified Shorthand

 7       Reporter, do hereby certify that the foregoing

 8       17 pages comprise an accurate, true, and complete

 9       transcript of the proceedings and testimony taken in the

10       case of The General Retirement System of the City of

11       Detroit, et al., versus Kevyn D. Orr, et al., Case

12       No. 13-768-CZ, and Gracie Webster, et al., versus the

13       State of Michigan, et al., Case No. 13-734-CZ, and

14       Robbie Flowers, et al., versus Rick Snyder, et al., Case

15       No. 13-729-CZ, on Thursday, July 18, 2013.

16            I further certify that this transcript of the

17       record of the proceedings and testimony truly and

18       correctly reflects the exhibits, if any, offered by the

19       respective parties.  WITNESS my hand this the eighteenth

20       day of July, 2013.

21

22                         _____
                           Melinda I. Dexter, RMR, RPR, CSR-4629
23                         Official Court Reporter
                           313 West Kalamazoo
24                         Post Office Box 40771
                           Lansing, Michigan 48901-7971
25
```

18

RECEIVED by Michigan Court of Appeals 7/19/2013 12:30:05 PM

<pre>
 1                        STATE OF MICHIGAN
          30TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF INGHAM
 2                          CIVIL DIVISION

 3

 4    GRACIE WEBSTER and
      VERONICA THOMAS,
 5
                     Plaintiffs,
 6    v                                    Case No. 13-734-CZ
                                        Hon. Rosemarie Aquilina
 7    THE STATE OF MICHIGAN; RICHARD
      SNYDER, as Governor of the State
 8    of Michigan; and ANDY DILLON,
      as Treasurer of the State of
 9    Michigan,
                     Defendants.
10    _____/
      ROBBIE FLOWERS, MICHAEL WELLS,
11    JANET WHITSON, MARY WASHINGTON,
      and BRUCE GOLDMAN,
12
                     Plaintiffs,
13    v                                    Case No. 13-729-CZ
                                        Hon. Rosemarie Aquilina
14    RICK SNYDER, as the Governor of the
      State of Michigan; ANDY DILLON, as
15    the Treasurer of the State of Michigan;
      and the STATE OF MICHIGAN,
16
                     Defendants.
17    _____/

18           MOTION TO AMEND PRELIMINARY INJUNCTION

19                MOTION FOR DEFAULT JUDGMENT

20               MOTION FOR SUMMARY DISPOSITION

21      BEFORE THE HON. ROSEMARIE AQUILINA, CIRCUIT JUDGE

22       Ingham County, Michigan - Friday, July 19, 2013

23

24

25
</pre>

1

```
 1                      STATE OF MICHIGAN
           30TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF INGHAM
 2                          CIVIL DIVISION

 3

 4    GRACIE WEBSTER and
      VERONICA THOMAS,
 5
                           Plaintiffs,
 6    v                                   Case No. 13-734-CZ
                                     Hon. Rosemarie Aquilina
 7    THE STATE OF MICHIGAN; RICHARD
      SNYDER, as Governor of the State
 8    of Michigan; and ANDY DILLON,
      as Treasurer of the State of
 9    Michigan,
                           Defendants.
10    _____/
      ROBBIE FLOWERS, MICHAEL WELLS,
11    JANET WHITSON, MARY WASHINGTON,
      and BRUCE GOLDMAN,
12
                           Plaintiffs,
13    v                                   Case No. 13-729-CZ
                                     Hon. Rosemarie Aquilina
14    RICK SNYDER, as the Governor of the
      State of Michigan; ANDY DILLON, as
15    the Treasurer of the State of Michigan;
      and the STATE OF MICHIGAN,
16
                           Defendants.
17    _____/

18          MOTION TO AMEND PRELIMINARY INJUNCTION

19             MOTION FOR DEFAULT JUDGMENT

20            MOTION FOR SUMMARY DISPOSITION

21      BEFORE THE HON. ROSEMARIE AQUILINA, CIRCUIT JUDGE

22       Ingham County, Michigan - Friday, July 19, 2013

23

24

25

                                                          1
```

```
 1                    STATE OF MICHIGAN
        30TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF INGHAM
 2                        CIVIL DIVISION

 3

 4      GRACIE WEBSTER and
        VERONICA THOMAS,
 5
                        Plaintiffs,
 6      v                                   Case No. 13-734-CZ
                                        Hon. Rosemarie Aquilina
 7      THE STATE OF MICHIGAN; RICHARD
        SNYDER, as Governor of the State
 8      of Michigan; and ANDY DILLON,
        as Treasurer of the State of
 9      Michigan,
                        Defendants.
10      _____/
        ROBBIE FLOWERS, MICHAEL WELLS,
11      JANET WHITSON, MARY WASHINGTON,
        and BRUCE GOLDMAN,
12
                        Plaintiffs,
13      v                                   Case No. 13-729-CZ
                                        Hon. Rosemarie Aquilina
14      RICK SNYDER, as the Governor of the
        State of Michigan; ANDY DILLON, as
15      the Treasurer of the State of Michigan;
        and the STATE OF MICHIGAN,
16
                        Defendants.
17      _____/

18          MOTION TO AMEND PRELIMINARY INJUNCTION

19             MOTION FOR DEFAULT JUDGMENT

20            MOTION FOR SUMMARY DISPOSITION

21      BEFORE THE HON. ROSEMARIE AQUILINA, CIRCUIT JUDGE

22       Ingham County, Michigan - Friday, July 19, 2013

23

24

25

                                                            1
```

```
 1                    T A B L E   O F   C O N T E N T S

 2

 3

 4

 5        WITNESSES:

 6             None

 7

 8

 9

10

11        EXHIBITS:

12             None

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                  T A B L E   O F   C O N T E N T S

 2

 3

 4

 5        WITNESSES:

 6             None

 7

 8

 9

10

11        EXHIBITS:

12             None

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
1                    T A B L E   O F   C O N T E N T S

2

3

4

5        WITNESSES:

6               None

7

8

9

10

11       EXHIBITS:

12              None

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

**Page 12**

1  because that's where you all are headed. I don't care
2  what side you're on. Someone is going up, right? So I
3  have answers for you. Tell me your story. I've got the
4  solution. You might not like it.
5      Can we move on?
6      MR. QUASARANO: We're prepared to go today, or
7  we'll defer to brother counsel for Monday if more time is
8  needed.
9      MR. WERTHEIMER: I'll go today. We can go
10 right now, I mean.
11     THE COURT: Okay. I can go right now too.
12     How about you, sir?
13     MR. CANZANO: I think we already agreed that
14 Webster could go today.
15     MR. DEVLIN: Very well.
16     THE COURT: We have an agreement. I think that
17 might be the only thing you all agree on. Hallelujah.
18     MR. QUASARANO: Other than it's very hot
19 outside.
20     THE COURT: Yeah. We can agree on that too.
21 Okay.
22     Counsel? Well, let's let these gentlemen enter
23 so we don't make noise for the court reporter before we
24 proceed.
25     Anybody else need to make an appearance?

12

**Page 13**

1      THE COURTROOM: (No verbal response.)
2      THE COURT: No? Okay.
3      MR. CANZANO: Which case would you like to go
4  first; Webster or Flowers?
5      THE COURT: Mr. --
6      MR. WERTHEIMER: Well, he goes first on Flowers
7  because it's his motion, so it's not my --
8      THE COURT: Okay. Whatever you'd like.
9      MR. DEVLIN: Thank you, your Honor. My name
10 is Brian Devlin, Assistant Attorney General.
11     THE COURT REPORTER: Could you approach the
12 podium, please?
13     THE COURT: Yeah. If everybody would speak
14 from the podium. The mikes work better. The court
15 reporter has better access to hear you. We'll make a
16 better record, and obviously the Court of Appeals and the
17 Supreme Court will need your record, please.
18     MR. DEVLIN: Thank you, your Honor. Brian
19 Devlin appearing on behalf of the Defendants.
20     As Mr. Quasarano has mentioned, that obviously
21 there's been a very dramatic change in circumstances
22 since the brief was filed. The petition in bankruptcy
23 has been filed as of yesterday. It changes some aspects
24 of this case from the State's perspective, but not all.

13

**Page 14**

1  Flowers will apply to Webster as well. The fact that
2  this case is now before the bankruptcy court means that
3  there is a court of competent jurisdiction that can hear
4  many of the concerns of the Plaintiffs. And that fact
5  alone changes a lot of the ripeness arguments and things
6  that you will see.
7      Nonetheless, it is the position of the State
8  that there has not been harm at this point to the
9  Plaintiffs.
10     THE COURT: Sir, there hasn't been harm because
11 they haven't acted. What we have here, and I would like
12 you to get to the point, because -- and you can make your
13 record. I'm a very patient judge. I think most people
14 will agree with that. But I have two very serious
15 concerns because there was this rush to bankruptcy court
16 that didn't have to occur and should not have occurred.
17 And certainly Plaintiffs should not have been blind-
18 sided, and this Court and this process should not have
19 been ignored.
20     We have the Michigan Constitution Article IX, §
21 24 that forbids the Emergency Manager to file bankruptcy
22 if pension plans or retirement system of this State or
23 its political subdivisions are diminished or impaired.
24 And the Constitution states:
25          The accrued financial benefits of

14

**Page 15**

1          each pension plan and requirement
2          system of the state and its
3          political subdivisions shall be a
4          contractual obligation thereof
5          which shall not be diminished or
6          impaired.
7      And the bankruptcy court will be doing exactly
8  that in its reorganization because the pensions are an
9  unsecured asset. And under the bankruptcy
10 reorganization, under a reorganization Chapter 9, there
11 is no reaffirmation of debt. If I were doing a Chapter 7
12 and wanted to go in and reaffirm payments on my car, I
13 could do so. But there is no way that you can go into
14 bankruptcy court and say, "I am going to reaffirm the
15 pension so that we don't disrupt that."
16     So what we're doing here is violating the
17 Constitution. And then we have Michigan Complied Law
18 141.1552, which precludes the Emergency Manager from
19 taking such actions. It states specifically in m -- (m)
20 and (ii):
21          The emergency manager shall fully
22          comply with the public employee
23          retirement system investment
24          act --

15

13-53846-tjt   Doc 2361-12   Filed 01/02/14   Entered 01/02/14 18:28:52   Page 37 of 71
13-53846-swr   Doc 1331-12 in original Filed 01/02/14 in Entered 01/02/14 14:28:52   Page 37 of 71
13 70

THE COURT: Yes, sir.

MR. CANZANO: We've -- we've presented a motion this morning, an emergency motion, to advance the hearing on our motion for declaratory judgment that's set for Monday to today. It would be my intention to deal only with the declaratory judgment part of it today, not the injunction part of it. And they've already -- they've agreed that that can be expedited. I don't know that they've agreed that it can be expedited to today, but they agree that it could be expedited to Monday.

So if -- that part of it, either today or Monday, that would be a final declaratory judgment. My preference is to do it today.

THE COURT: Is that correct?

MR. QUASARANO: Well, I believe under 2.605(D), they can seek an expedited hearing, and certainly the Court has the authority to issue that. I think by not entertaining a dispositive motion, we're not going to have a complete argument. Mr. Devlin will be arguing for the State. But we do acknowledge what the court rule says, that's correct.

THE COURT: Well, are you objecting to having it heard today?

MR. QUASARANO: We will not object in the interest of judicial economy.

8

THE COURT: And your motion deals with that issue?

MR. QUASARANO: It's a (C)(8) motion that would address whether there are grounds for a declaratory judgment, yes.

THE COURT: Well, then --

I'm sorry?

MR. WERTHEIMER: I'm sorry. I may be confused now. Their motion that they filed in the Flowers case to dismiss deals with issues like ripeness. It's a (C)(4) and (C)(8) motion. Many of the facts have changed. I would think they would want to refile that, in any event. I mean, you know, to make an argument based on -- based on ripeness about what happened yesterday afternoon seems to me to be just, to use a lawyer's word, moot at this point. But I'm concerned only with their motion to dismiss in the Flowers case, not with anything related to Webster and whether we're to appear here Monday at 9 to -- per their notice or whether they've withdrawn that motion or not.

THE COURT: Okay. Well, let's deal with the Flowers case.

What is your intention in regard to Monday? Are you still asking the Court to hear your motion? I was not timely filed. Are you still asking me to hear

9

that, or will you be amending that?

MR. QUASARANO: No. I'll speak for Mr. Devlin here for a moment only. In the notice of hearing, we indicated to advance it to that date because of all the other activities in this case or such other time as the Court may order.

I do point out that in the Flowers case in the prayer for relief is a reference to declaratory judgment. Both cases are asking for both reliefs; preliminary and declaratory judgment. Preliminary injunction motions were granted. Our brief talks about the alternative, assuming arguendo there were a filing, a Chapter 9 filing, and then we go into the basis for why there are grounds not to declare judgment, why there is some jurisdictional grounds.

So I think that the brief is sufficiently adequate to address all of the issues that are still at issue in this case. Certainly there has been a factual change and those factual changes don't need to be addressed.

MR. WERTHEIMER: I guess I just would reiterate if -- I need to know whether counsel is going forward on Monday with its motion to dismiss. I still haven't heard a yes or no.

THE COURT: His answer is yes, Counsel.

10

MR. WERTHEIMER: Well, okay. If the answer is yes, I would just point out that it's clear under the rules that it is not timely; that no order has entered from this Court.

THE COURT: You're right.

MR. WERTHEIMER: Okay.

THE COURT: You know what we're doing? We are under siege here. Well, we aren't; I'm not. Technically I am through paper, but all of you are. Detroit is. The State is. So I'm not going to go through the usual court rules and the time and all of that. You are all going to spend your weekend doing what lawyers do, and that's a lot of homework because we're going to have that hearing Monday unless you're asking me to do it now.

I'm going to hear everything because we're not going to piecemeal this. You all know the case. I know the case. I've done the homework. I don't think myself or my staff got any sleep last night. We've been doing research. I bet if I called all of your wives and asked if you got any sleep, they'd be saying, "No. When is my husband going to get some sleep," right? So we're going to have a hearing, and I don't care if it's today or Monday. I'll come here Saturday, if you would like. I don't care. Let's get some answers, let's get a bottom line, and let's get this moving to the Court of Appeals

11

THE COURT: Yes, sir.

MR. CANZANO: We've -- we've presented a motion this morning, an emergency motion, to advance the hearing on our motion for declaratory judgment that's set for Monday to today. It would be my intention to deal only with the declaratory judgment part of it today, not the injunction part of it. And they've already -- they've agreed that that can be expedited. I don't know that they've agreed that it can be expedited to today, but they agree that it could be expedited to Monday.

So if -- that part of it, either today or Monday, that would be a final declaratory judgment. My preference is to do it today.

THE COURT: Is that correct?

MR. QUASARANO: Well, I believe under 2.605(D), they can seek an expedited hearing, and certainly the Court has the authority to issue that. I think by not entertaining a dispositive motion, we're not going to have a complete argument. Mr. Devlin will be arguing for the State. But we do acknowledge what the court rule says, that's correct.

THE COURT: Well, are you objecting to having it heard today?

MR. QUASARANO: We will not object in the interest of judicial economy.

8

THE COURT: And your motion deals with that issue?

MR. QUASARANO: It's a (C)(8) motion that would address whether there are grounds for a declaratory judgment, yes.

THE COURT: Well, then --

I'm sorry?

MR. WERTHEIMER: I'm sorry. I may be confused now. Their motion that they filed in the Flowers case to dismiss deals with issues like ripeness. It's a (C)(4) and (C)(8) motion. Many of the facts have changed. I would think they would want to re-file that, in any event. I mean, you know, to make an argument based on -- based on ripeness given what happened yesterday afternoon seems to me to be just, to use a lawyer's word, moot at this point. But I'm concerned only with their motion to dismiss in the Flowers case, not with anything related to Webster and whether we're to appear here Monday at 9 to -- per their notice or whether they've withdrawn that motion or not.

THE COURT: Okay. Well, let's deal with the Flowers case.

What is your intention in regard to Monday? Are you still asking the Court to hear your motion? I've been told that the Court of Appeals ruling was not timely filed. Are you still asking me to hear

9

that, or will you be amending that?

MR. QUASARANO: No. I'll speak for Mr. Devlin here for a moment only. In the notice of hearing, we indicated to advance it to that date because of all the other activities in this case or such other time as the Court may order.

I do point out that in the Flowers case in the prayer for relief is a reference to declaratory judgment. Both cases are asking for both reliefs; preliminary and declaratory judgment. Preliminary injunction motions were granted. Our brief talks about the alternative, assuming arguendo there were a filing, a Chapter 9 filing, and then we go into the basis for why there are grounds not to declare judgment, why there is some jurisdictional grounds.

So I think that the brief is sufficiently adequate to address all of the issues that are still at issue in this case. Certainly there has been a factual change and those factual changes don't need to be addressed.

MR. WERTHEIMER: I guess I just would reiterate if -- I need to know whether counsel is going forward on Monday with its motion to dismiss. I still haven't heard a yes or no.

THE COURT: His answer is yes, Counsel.

10

MR. WERTHEIMER: Well, okay. If the answer is yes, I would just point out that it's clear under the rules that it is not timely; that no order has entered from this Court.

THE COURT: You're right.

MR. WERTHEIMER: Okay.

THE COURT: You know what we're doing? We are under siege here. Well, we aren't; I'm not. Technically I am through paper, but all of you are. Detroit is. The State is. So I'm not going to go through the usual court rules and the time and all of that. You are all going to spend your weekend doing what lawyers do, and that's a lot of homework because we're going to have that hearing Monday unless you're asking me to do it now.

I'm going to hear everything because we're not going to piecemeal this. You all know the case. I know the case. I've done the homework. I don't think myself or my staff got any sleep last night. We've been doing research. I bet if I called all of your wives and asked if you got any sleep, they'd be saying, "No. When is my husband going to get some sleep," right? So we're going to have a hearing, and I don't care if it's today or Monday. I'll come here Saturday, if you would like. I don't care. Let's get some answers, let's get a bottom line, and let's get this moving to the Court of Appeals

11

injury. The leg has been amputated, and we cannot fix
it.

MR. DEVLIN: We don't know, is my position on
that. We don't know, and there is opportunity for this
very issue to be heard in the bankruptcy court.

THE COURT: But there is no opportunity in the
bankruptcy court for them to fix the harm. Do you have
any law that says the bankruptcy court can fix the
pension fund because I haven't found that either, and
I've looked?

MR. DEVLIN: Again, I understand the pension
fund to be tremendously under funded. There are many
problems here, far beyond what's gone on in the last
24 hours. But the court, the bankruptcy court does have
jurisdiction to hear these arguments, to note the
Michigan Constitutional provisions, and to order what it
feels it must order.

THE COURT: Okay.

MR. DEVLIN: Thank you.

THE COURT: Thank you.

MR. WERTHEIMER: Your Honor, I'll be brief.
First, I would just point out to the Court that this is a
motion under C -- MCR 2.116(C)(4), (5), and (8): That
is, it's a claim that there is no jurisdiction over the
subject matter; it's a claim that my clients have no

just simply is not credible for an attorney for the
Governor and the State Treasurer to come here today and
say he can't predict the future when we indicated in our
complaint that the future could be predicted.

I would also point out that since we were in
court yesterday, we now have not just the bankruptcy but
filings related to that bankruptcy. I'm not going to
introduce these documents, but I understand that counsel
in the Webster case that will be argued when we're done
here will be introducing them. I would simply point out
that we've got correspondence back and forth between the
Detroit Emergency Manager and the Governor requesting the
authorization and the Governor approving the
authorization, in which there is not a word mentioned
about Article IX, § 24 of the Michigan State
Constitution.

Our Governor does not feel that that's
relevant. He goes on for pages in his authorization,
obviously for public relation's purposes, talking about
how deeply he cares about the city of Detroit, etcetera,
etcetera, but not one word about Article IX, § 24 of the
Constitution. And, of course, no such word from Mr. Orr
in his request to the Governor.

So counsel's essentially saying "No harm yet.
Don't worry. Maybe bankruptcy court will take care of

capacity to sue because apparently they're not being
injured; and it's a claim that we have failed to state a
claim.

As to the law relating to those three points, I
would rely upon the briefs that I have filed, including
the reply brief that I filed yesterday in which I did
take the position that we should not hear -- that the
Court should not hear the motion to dismiss but in which
I dealt with all of those issues, and I won't repeat
those arguments.

I would just point out a couple of things:
First of all, counsel says that he cannot predict the
future. The Detroit Emergency Manager, who is a
competent lawyer familiar with bankruptcy, has predicted
the future, and we quoted him in our complaint as saying,
essentially, that once he gets into bankruptcy, the
constitutional rights of our clients will disappear, will
be "trumped" in his words or in the words of the reporter
quoting him. And I think that was -- there was an
interview and there was also his statements made to the
Detroit Free Press Editorial Board.

But the point being that the Detroit Emergency
Manager has had no reluctance to predict the future, and
his prediction is consistent with our claim and with the

it." But the people who are taking it into bankruptcy,
have taken it into bankruptcy have made very clear
they're not going to take care of it in bankruptcy.

And finally just the obvious point, but I think
needs to be reiterated with all the flurry going on that
the whole point of injunctive relief is to prevent a harm
that has not yet occurred, and that's all we're seeking
with our overall lawsuit and all we were seeking with our
motion for preliminary injunction, which this Court has
already granted. Thank you.

MR. QUASARANO: Your Honor, I think that the
State's briefing and argument sufficiently presents the
State's position, but I know the Court is patient, and I
would ask the Court's indulgence on the one matter of my
appearance here yesterday, and I would like to make this
clear for the record, if I may, but for Mr. Wertheimer,
who is counsel for the Flowers and others case, I would
not have known that the General Retirement System of the
City of Detroit, et al., even had a TRO motion scheduled.

The only communication I had with counsel for
that, those Plaintiffs, was the night before asking if we
could accept service on the Governor, which, as the Court
knows, we're barred from accepting service on behalf of a
State Defendant. Until the State Defendant is served, we

13-53846-swr  Doc 2221-2  Filed 01/02/14  Entered 01/02/14 18:00:52  Page 41 of 1

**Page 16**

```
 1        -- 1965 PA 314, and § 24 of
 2        Article IX of the State
 3        Constitution of 1963, and any
 4        actions taken shall be consistent
 5        with the pension fund's qualified
 6        plan status under the federal
 7        internal revenue code.
 8        So tell me, sir, how do you get into bankruptcy
 9   court and not violate the Constitution of Michigan and
10   not violate how the Emergency Manager is supposed to
11   operate? Haven't we jumped the gun? What are you doing
12   here, sir?
13        MR. DEVLIN: I can understand your Honor's
14   concerns. The position of the State is that none of
15   these impairments have occurred yet.
16        THE COURT: Only because the bankruptcy trustee
17   hasn't got his teeth into it. It will occur. It's
18   imminent, isn't it? Tell me how it's not imminent, sir?
19        MR. DEVLIN: I can't predict the future.
20        THE COURT: Yes, you can.
21        MR. DEVLIN: I cannot.
22        THE COURT: The bankruptcy court -- the
23   bankruptcy court has a certain function. You're a
24   lawyer. You understand the function of the bankruptcy
25   court. That's why you ran there yesterday not slowly but
                              16
```

**Page 17**

```
 1   in your running shoes, right?
 2        MR. DEVLIN: I can't speak to that. I had
 3   nothing to do with it. But I can tell you about § 943 of
 4   the Bankruptcy Code, which affords all of the protections
 5   that we discussed in the brief that I've alluded to
 6   today.
 7        None of those injuries have occurred at this
 8   point. For that reason, we believe the claim is still
 9   speculative. Of course those are legitimate concerns,
10   but the court, the bankruptcy court can address them.
11        I referred to -- I'd also refer to Straus, the
12   case cited in our brief too. If that injury has not
13   occurred, as we contend, then it's an inappropriate
14   remedy that the Plaintiffs are asking for today.
15        Now, obviously you and I don't see this injury
16   in quite the same terms, but that is the position of the
17   State. The injury has not occurred at this point.
18        THE COURT: That would be because the
19   bankruptcy judge has not sat at his bench like I have and
20   heard the case and started the reorganization, and that's
21   the only reason. For me to believe what you're saying
22   would be -- would make me Helen Keller who's not yet
23   learned the alphabet.
24        MR. DEVLIN: I think anything that you and I
25   speculate about that the bankruptcy court might order
                              17
```

**Page 18**

```
 1   that they have the power to address under 943, is just
 2   that; it's just speculation.
 3        THE COURT: It's a certainty, sir. You filed
 4   in bankruptcy court, which is federal because you know
 5   that certainty. I don't know how you get around it
 6   because it's an unsecured asset that cannot be
 7   reaffirmed, and there is no case law, and you know that
 8   as well because all of us stayed up all night looking for
 9   case law, and there is no case law. You can't tell me
10   that it can be segregated out and reaffirmed.
11        So these people that have this pension where it
12   is supposed to be protected under the Constitution and
13   under the legislative intent under the emergency manager
14   legislation, it cannot survive. It cannot survive
15   federal bankruptcy, and I have no jurisdiction there, and
16   you know that. And that's why everybody made us wait as
17   -- slowly we were waiting for your office to come here
18   out of courtesy. We waited so we would have both sides
19   present, which is what we do. We honor civility, and it
20   was filed in order to bind everybody so this could occur,
21   and it's cheating, sir, and it's cheating good people who
22   worked.
23        And so what's going to happen is we're not
24   honoring the Constitution, we're not honoring the
25   emergency manager legislation, and we're not honoring
                              18
```

**Page 19**

```
 1   good citizens, and we're also not honoring the President
 2   who took Detroit out of bankruptcy. What are we doing,
 3   sir?
 4        MR. DEVLIN: Your Honor, I understand what
 5   you're saying, but I would take exception to the motion
 6   that somehow the Attorney General's Office delayed or
 7   dragged its feet or in any way tampered with the
 8   proceedings yesterday. Now, I wasn't here. I wasn't
 9   part of them, but I don't believe that's the case.
10        THE COURT: It looks that way, sir. If somehow
11   that's not the case, I apologize, but it's the old saying
12   if it looks like a duck, you know the rest.
13        MR. DEVLIN: Well, I don't want to speculate on
14   who did what yesterday. As I said, I wasn't here.
15        THE COURT: Thank you.
16        MR. DEVLIN: But it is our position that until
17   that injury occurs and in light of Straus, in light of
18   the jurisdiction of the bankruptcy court, that this
19   motion should be -- er, the motion is inappropriate. The
20   State's motion should be granted --
21        THE COURT: Sir --
22        MR. DEVLIN: -- thank you.
23        THE COURT: Let me ask you this: If the injury
24   occurs, isn't it then too late, much too late, way too
25   late for anybody to fix it? There is no way to fix the
                              19
```

**Page 16**

```
 1          -- 1965 PA 314, and § 24 of
 2          Article IX of the State
 3          Constitution of 1963, and any
 4          actions taken shall be consistent
 5          with the pension fund's qualified
 6          plan status under the federal
 7          internal revenue code.
 8       So tell me, sir, how do you get into bankruptcy
 9  court and not violate the Constitution of Michigan and
10  not violate how the Emergency Manager is supposed to
11  operate? Haven't we jumped the gun? What are you doing
12  here, sir?
13       MR. DEVLIN: I can understand your Honor's
14  concerns. The position of the State is that none of
15  these impairments have occurred yet.
16       THE COURT: Only because the bankruptcy trustee
17  hasn't got his teeth into it. It will occur. It's
18  imminent, isn't it? Tell me how it's not imminent, sir?
19       MR. DEVLIN: I can't predict the future.
20       THE COURT: Yes, you can.
21       MR. DEVLIN: I cannot.
22       THE COURT: The bankruptcy court -- the
23  bankruptcy court has a certain function. You're a
24  lawyer. You understand the function of the bankruptcy
25  court. That's why you ran there yesterday not slowly but
```

**Page 17**

```
 1  in your running shoes, right?
 2       MR. DEVLIN: I can't speak to that. I had
 3  nothing to do with it. But I can tell you about § 943 of
 4  the Bankruptcy Code, which affords all of the protections
 5  that we discussed in the brief that I've alluded to
 6  today.
 7       None of those injuries have occurred at this
 8  point. For that reason, we believe the claim is still
 9  speculative. Of course those are legitimate concerns,
10  but the court, the bankruptcy court can address them.
11       I referred to -- I'd also refer to Straus, the
12  case cited in our brief too. If that injury has not
13  occurred, as we contend, then it's an inappropriate
14  remedy that the Plaintiffs are asking for today.
15       Now, obviously you and I don't see this injury
16  in quite the same terms, but that is the position of the
17  State. The injury has not occurred at this point.
18       THE COURT: That would be because the
19  bankruptcy judge has not sat at his bench like I have and
20  heard the case and started the reorganization, and that's
21  the only reason. For me to believe what you're saying
22  would be -- would make me Helen Keller who's not yet
23  learned the alphabet.
24       MR. DEVLIN: I think anything that you and I
25  speculate about that the bankruptcy court might drag
```

**Page 18**

```
 1  that they have the power to address under 943, is just
 2  that; it's just speculation.
 3       THE COURT: It's a certainty, sir. You filed
 4  in bankruptcy court, which is federal because you know
 5  that certainty. I don't know how you get around it
 6  because it's an unsecured asset that cannot be
 7  reaffirmed, and there is no case law, and you know that
 8  as well because all of us stayed up all night looking for
 9  case law, and there is no case law. You can't tell me
10  that it can be segregated out and reaffirmed.
11       So these people that have this pension where it
12  is supposed to be protected under the Constitution and
13  under the legislative intent under the emergency manager
14  legislation, it cannot survive. It cannot survive
15  federal bankruptcy, and I have no jurisdiction there, and
16  you know that. And that's why everybody made us wait as
17  -- slowly we were waiting for your office to come here
18  out of courtesy. We waited so we would have both sides
19  present, which is what we do. We honor civility, and it
20  was filed in order to bind everybody so this could occur,
21  and it's cheating, sir, and it's cheating good people who
22  worked.
23       And so what's going to happen is we're not
24  honoring the Constitution, we're not honoring the
25  emergency manager legislation, and we're not honoring
```

**Page 19**

```
 1  good citizens, and we're also not honoring the President
 2  who took Detroit out of bankruptcy. What are we doing,
 3  sir?
 4       MR. DEVLIN: Your Honor, I understand what
 5  you're saying, but I would take exception to the motion
 6  that somehow the Attorney General's Office delayed or
 7  dragged its feet or in any way tampered with the
 8  proceedings yesterday. Now, I wasn't here. I wasn't
 9  part of them, but I don't believe that's the case.
10       THE COURT: It looks that way, sir. If somehow
11  that's not the case, I apologize, but it's the old saying
12  if it looks like a duck, you know the rest.
13       MR. DEVLIN: Well, I don't want to speculate on
14  who did what yesterday. As I said, I wasn't here.
15       THE COURT: Thank you.
16       MR. DEVLIN: But it is our position that until
17  that injury occurs and in light of Straus, in light of
18  the jurisdiction of the bankruptcy court, that this
19  motion should be -- er, the motion is inappropriate. The
20  State's motion should be granted --
21       THE COURT: Sir --
22       MR. DEVLIN: -- thank you.
23       THE COURT: Let me ask you this: If the injury
24  occurs, isn't it then too late, much too late, way too
25  late for anybody to fix it? There is no way to fix the
```

1 court correctly ruled that the -- there is an actual
2 controversy because the parties need the court to tell
3 them what their rights and obligations are so they know
4 what to do in the future; whether this tribunal could
5 overrule a local ordinance which prohibited sea planes on
6 Lake Angelus, even though they hadn't been asked and they
7 hadn't ruled. So that part is exactly what we have. Now
8 we have the bankruptcy has been filed.
9 I would like to offer a couple exhibits, which
10 are the July 16th letter from Emergency Manager Orr
11 requesting authorization to file for Chapter 9, none of our --
12 amazingly this happened on Tuesday, and none of our --
13 none of our crack reporters knew about this. Nobody knew
14 about this until yesterday. This was a secret letter.
15 And the July 18th letter from yesterday of the
16 Governor authorizing Emergency Manager Orr to file for
17 Chapter 9. And I think if you look at these two letters,
18 it is crystal clear what the judge has already concluded
19 in the prior case; that not only does the bankruptcy
20 threaten to impair but that that is the goal and the
21 intent of the emergency manager is to impair accrued
22 pension benefits in bankruptcy.
23 I'll give these to opposing counsel. These are
24 -- they're a matter of public record now. I just wrote
25 Exhibit A and Exhibit B on them.

28

1 (Approaching the bench.)
2 THE COURT: All right. Thank you.
3 MR. CANZANO: As to the merits, I think again
4 it is very clear this isn't a case where you need case
5 law. You just read the Constitution. It says accrued
6 pension benefits shall not be diminished or impaired.
7 The Constitution says that. The Emergency Manager law
8 says the Governor can authorize the Emergency Manager to
9 file for Chapter 9. And it doesn't prohibit that -- it
10 doesn't require that pension benefits be protected when
11 he files for Chapter 9. And it is, therefore,
12 unconstitutional to that extent.
13 THE COURT: Is there any objection to the Court
14 receiving Exhibit A and B?
15 MR. DEVLIN: No objection, your Honor.
16 THE COURT: A and B are received. Thank you.
17 (At 12:04 p.m., Exhibit A and
18 Exhibit B is received.)
19 MR. CANZANO: So the emergency manager law is
20 unconstitutional to the extent that it allows the
21 Governor to authorize a Chapter 9 filing which threatens
22 to diminish or impair pension benefits. And the Governor
23 is prohibited by Article IX, § 24 from authorizing an
24 emergency manager to proceed under Chapter 9 in a manner
25 which threatened to impair accrued pension benefits. Any

29

1 such action by the Governor is without authority and in
2 violation of Article IX, § 24. And what happened
3 yesterday was a violation of the Constitution.
4 Now, my declaratory judgment order declares
5 these statements. It also has a paragraph at the end
6 that says:
7 In order to rectify his
8 unauthorized and unconstitutional
9 actions described above, the
10 Governor must: One, direct the
11 Emergency Manager to immediately
12 withdraw the Chapter 9 petition
13 filed on July 18th. And, two,
14 not authorize any further Chapter
15 9 filing which threatens to
16 diminish or impair accrued
17 pension benefits.
18 Now, this is just a declaratory judgment. So
19 it is my hope that if the Court is willing to enter this,
20 that the Governor will obey his oath of office and follow
21 what the Constitution requires. And so -- and if he does
22 not, then we may be back here on -- with another
23 iteration of this that requires some type of injunctive
24 relief.
25 At this time we're not seeking injunctive

30

1 relief, so I would -- I would withdraw our request for
2 preliminary injunction without prejudice. And I'd also
3 ask, if this order is entered, that the temporary
4 restraining order entered yesterday be vacated or
5 expired, and all we want is a declaratory judgment right
6 now.
7 THE COURT: And the reason to vacate or expire
8 the temporary restraining order?
9 MR. CANZANO: Because now we have the default
10 judgment and the TRO. I don't remember what the court
11 rule says, but it cannot only exist for a short period of
12 time on its own, and this is the tact that we would like
13 to take because we would like to tell the Governor, "This
14 is what you're supposed to do." And then if he doesn't
15 do that, then we'll then -- we'll reassess our options.
16 THE COURT: Okay. Thank you.
17 MR. CANZANO: May I present my draft order?
18 THE COURT: Yes. Have you presented it to the
19 other side?
20 MR. CANZANO: I have not.
21 THE COURT: Thank you.
22 MR. QUASARANO: We've looked at this,
23 your Honor.
24 MR. CANZANO: Just as to the matter of the

31

1      I was told there would not be any preliminary
2  injunction or TRO sought in that case. I do understand
3  that situation had changed in the hours after that. But,
4  but for Mr. Wertheimer calling me, counsel in another
5  case, I would not have known. When he called me, and the
6  transcript yesterday says it was around 3:30 or so, and
7  then I arrived as quickly as I could walk over here. So
8  there was no delay on behalf of the Attorney General's
9  Office to be here, to represent the State's interest, to
10  be here to answer this Court's questions. And any delay
11  at all was because we were notified by counsel for the
12  Plaintiffs yesterday that they intended to bring the
13  motion. Thank you for letting me clarify that.
14      THE COURT: Thank you.
15      Anything further, sir?
16      MR. DEVLIN: Nothing further. Thank you.
17      THE COURT: Defendants have filed a motion for
18  summary disposition pursuant to (4), which is:
19      The Court lacks jurisdiction of
20      the subject matter.
21      This Court absolutely has jurisdiction of the
22  subject matter. It's a state question. I know they've
23  removed it to federal bankruptcy court, but we still have
24  very serious state questions. We have the State
25  Constitution, Article IX, § 24. We have an emergency

1  manager statute, and we have a Constitution at issue.
2  State issues are within the purview of this Court. I
3  don't care that it was removed to bankruptcy court.
4  There is nothing here that tells me it was properly
5  removed to federal bankruptcy court because there is a
6  procedure in place of how it gets removed. And this
7  Court does not believe it was properly placed in the
8  hands of the bankruptcy court because it is going to
9  affect pensions. Once it affects pensions, which is
10  clearly what it's going to do, it's in violation, and the
11  Governor can't give permission for it to go to bankruptcy
12  court. It's very clear. I think a first-year law
13  student understands the concept. And I know the Governor
14  is not a lawyer, but he has very well paid lawyers who do
15  understand the concept.
16      The party asserting the claim
17      lacks the legal capacity to sue.
18      That is MCR 2.116(5). A party asserting the
19  claim lacks the legal capacity to sue? How is that
20  possible? They're interested parties. Absolutely they
21  have capacity to sue. The pension's involved, the
22  pension related to the parties. I don't see any problems
23  there.
24      And then we have (8), which is always a
25  catch-all:

1      The opposing party has failed to
2      state a claim on which relief can
3      be granted.
4      I see problems all over the place. I stated
5  them. I don't think I need to be redundant. Clearly
6  there are numerous claims and issues. I won't be
7  redundant. The relief requested is denied. Motion for
8  summary disposition is denied.
9      MR. WERTHEIMER: Thank you, your Honor.
10     THE COURT: Who's preparing the order?
11     MR. QUASARANO: I'll be preparing it for you,
12  Judge.
13     THE COURT: Thank you, very much, sir.
14     MR. QUASARANO: Thank you.
15     THE COURT: Next matter?
16     MR. WERTHEIMER: We are -- I am done relative
17  to the Flowers case.
18     THE COURT: Thank you, very much, sir.
19     MR. WERTHEIMER: I'll vacate. I think there
20  are others lawyers in the room with another related case.
21  So I'll wait in the courtroom but vacate counsel table.
22     THE COURT: Thank you.
23     MR. WERTHEIMER: Thank you.
24     MR. CANZANO: Your Honor, John Canzano on
25  behalf of the Plaintiffs in the Webster case. I would

1  like to clarify the relief that we are seeking here
2  today. We -- our complaint sought declaratory judgment
3  and preliminary injunction. Today we are seeking only a
4  declaratory judgment.
5      I have taken the liberty of preparing an order
6  for declaratory judgment which I can present when I'm
7  done, and the Court may or may not want to say everything
8  that I've said in there, but I think we are entitled to
9  that relief. The briefs -- this has all been briefed
10  already. I don't need to go over that.
11     The State's defense to our motion did not
12  contest the facts and did not contest the substance of
13  the merits of the law, which is that the Constitution
14  prohibits diminishment of pension -- accrued pension
15  benefits. They simply -- they simply said the case is
16  not ripe, and there is not an actual controversy for a
17  declaratory judgment.
18     Now, after yesterday, it's obviously ripe. We
19  cited a case in our reply brief, City of Lake Angelus,
20  which amazingly is almost on all fours with this case. I
21  won't describe that case again except to say that that
22  was a case where the Attorney General made the argument
23  that there was no injury and there was no need for
24  declaratory judgment because a request to a tribunal had
25  not been made and the tribunal had not ruled. But the

13-53846-tjt   Doc 2361-32   Filed 01/02/14   Entered 01/02/14 18:09:52   Page 45 of 70

**Page 24**

```
 1        I was told there would not be any preliminary
 2   injunction or TRO sought in that case.  I do understand
 3   that situation had changed in the hours after that.  But,
 4   but for Mr. Wertheimer calling me, counsel in another
 5   case, I would not have known.  When he called me, and the
 6   transcript yesterday says it was around 3:30 or so, and
 7   then I arrived as quickly as I could walk over here.  So
 8   there was no delay on behalf of the Attorney General's
 9   Office to be here, to represent the State's interest, to
10   be here to answer this Court's questions.  And any delay
11   at all was because we were notified by counsel for the
12   Plaintiffs yesterday that they intended to bring the
13   motion.  Thank you for letting me clarify that.
14        THE COURT:  Thank you.
15        Anything further, sir?
16        MR. DEVLIN:  Nothing further.  Thank you.
17        THE COURT:  Defendants have filed a motion for
18   summary disposition pursuant to (4), which is:
19             The Court lacks jurisdiction of
20             the subject matter.
21        This Court absolutely has jurisdiction of the
22   subject matter.  It's a state question.  I know they've
23   removed it to federal bankruptcy court, but we still have
24   very serious state questions.  We have the State
25   Constitution, Article IX, § 24.  We have an emergency
```

**Page 25**

```
 1   manager statute, and we have a Constitution at issue.
 2   State issues are within the purview of this Court.  I
 3   don't care that it was removed to bankruptcy court.
 4   There is nothing here that tells me it was properly
 5   removed to federal bankruptcy court because there is a
 6   procedure in place of how it gets removed.  And this
 7   Court does not believe it was properly placed in the
 8   hands of the bankruptcy court because it is going to
 9   affect pensions.  Once it affects pensions, which is
10   clearly what it's going to do, it's in violation, and the
11   Governor can't give permission for it to go to bankruptcy
12   court.  It's very clear.  I think a first-year law
13   student understands the concept.  And I know the Governor
14   is not a lawyer, but he has very well paid lawyers who do
15   understand the concept.
16             The party asserting the claim
17             lacks the legal capacity to sue.
18        That is MCR 2.116(5).  A party asserting the
19   claim lacks the legal capacity to sue?  How is that
20   possible?  They're interested parties.  Absolutely they
21   have capacity to sue.  The pension's involved, the
22   pension related to the parties.  I don't see any problems
23   there.
24             And then we have (8), which is always a
25   catch-all.
```

**Page 26**

```
 1        The opposing party has failed to
 2        state a claim on which relief can
 3        be granted.
 4        I see problems all over the place.  I stated
 5   them.  I don't think I need to be redundant.  Clearly
 6   there are numerous claims and issues.  I won't be
 7   redundant.  The relief requested is denied.  Motion for
 8   summary disposition is denied.
 9        MR. WERTHEIMER:  Thank you, your Honor.
10        THE COURT:  Who's preparing the order?
11        MR. QUASARANO:  I'll be preparing it for you,
12   Judge.
13        THE COURT:  Thank you, very much, sir.
14        MR. QUASARANO:  Thank you.
15        THE COURT:  Next matter?
16        MR. WERTHEIMER:  We are -- I am done relative
17   to the Flowers case.
18        THE COURT:  Thank you, very much, sir.
19        MR. WERTHEIMER:  I'll vacate.  I think there
20   are others lawyers in the room with another related case.
21   So I'll wait in the courtroom but vacate counsel table.
22        THE COURT:  Thank you.
23        MR. WERTHEIMER:  Thank you.
24        MR. CANZANO:  Your Honor, John Canzano on
25   behalf of the Plaintiffs in the Webster case.  I would
```

**Page 27**

```
 1   like to clarify the relief that we are seeking here
 2   today.  We -- our complaint sought declaratory judgment
 3   and preliminary injunction.  Today we are seeking only a
 4   declaratory judgment.
 5        I have taken the liberty of preparing an order
 6   for declaratory judgment which I can present when I'm
 7   done, and the Court may or may not want to say everything
 8   that I've said in there, but I think we are entitled to
 9   that relief.  The briefs -- this has all been briefed
10   already.  I don't need to go over that.
11        The State's defense to our motion did not
12   contest the facts and did not contest the substance of
13   the merits of the law, which is that the Constitution
14   prohibits diminishment of pension -- accrued pension
15   benefits.  They simply -- they simply said the case is
16   not ripe, and there is not an actual controversy for a
17   declaratory judgment.
18        Now, after yesterday, it's obviously ripe.  We
19   cited a case in our reply brief, City of Lake Angelus,
20   which amazingly is almost on all fours with this case.  I
21   won't describe that case again except to say that that
22   was a case where the Attorney General made the argument
23   that there was no injury and there was no need for
24   declaratory judgment because a request to a tribunal had
25   not been made.  That case involved a request, but the
```

```
 1          THE COURT:  You are obliged.  I am obliged as
 2   well to deny.
 3          MR. QUASARANO:  I'll have an order ready.
 4   Thank you, Judge.
 5          THE COURT:  I look forward to signing all of
 6   those orders today.  I will be in until 5 or so.  And I
 7   haven't looked at Monday's docket.  Have we taken care of
 8   all of Monday or not?
 9          MR. WERTHEIMER:  I think, as to the Plaintiffs
10   in Flowers, you have because our motion was for
11   preliminary injunction, which you have granted and will
12   be providing us with that order, and their motion was for
13   summary disposition, which you've denied.  I believe that
14   was all that was up in Flowers.  So that the Flowers case
15   continues, but there is nothing up for Monday in Flowers.
16          MR. QUASARANO:  Defendants concur in Flowers.
17          THE COURT:  Okay.  My law clerk is making
18   copies, multiple copies, of the order I've just signed.
19          I am here on a moment's notice as you all have
20   become accustomed to if you need me.
21          MR. WERTHEIMER:  Thank you, your Honor.
22          THE COURT:  That's all for the record.
23          MR. CANZANO:  Thank you, your Honor.
24   Appreciate the Court's ability and willingness to help us
25   out on this urgent time.
                                          36
```

```
 1          THE COURT:  Thank you.
 2              (At 12:16 p.m., the matter is
 3              concluded.)
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

1 anyone is arguing -- I don't think the Attorney General
2 is arguing that our case is stayed by the bankruptcy
3 court because we're not suing the Emergency Manager.
4 We're only suing the Governor and the Treasurer and the
5 State of Michigan, and they're not -- they're not in the
6 bankruptcy court. They're not the debtor, so that's an
7 argument that has been raised. But, just for clarity, I
8 wanted to point that out. That's all I have.
9 THE COURT: Thank you.
10 Response?
11 MR. DEVLIN: Thank you, your Honor. Brian
12 Devlin again on behalf of the Defendants. I won't repeat
13 the discussion we had on the Flowers case. Much of that
14 applies. The relief sought in each of these cases is the
15 same position of the State, is that the bankruptcy court
16 jurisdiction has a great effect on this, and that the
17 reliefs that might be desired by the Plaintiffs are
18 available through that court. Furthermore, we'd cite the
19 *Straus* case as well in this reply.
20 I would like to call the Court's attention to
21 just one other thing: There was reference made to the
22 Governor's obligation to uphold the terms of the United
23 States -- of the State Constitution but that also applies
24 to the United States Constitution, and bankruptcy court
25 is certainly someone he may have to answer to as well.

32

1 transcript without looking at both.
2 So I'm going to direct the court reporter to
3 treat today as one transcript despite there being two
4 docket numbers, and I didn't even call both of them, but
5 we just sort of started, but we're really dealing with
6 Dockets 13-734-CZ and 13-729-CZ.
7 So the motion for summary disposition in regard
8 to 13-734-CZ, and that's Defendants' motion for summary
9 disposition is denied based on the same rationale the
10 Court had and reasoning in the prior case.
11 In regard to the request for declaratory
12 judgment, I think it is imperative that the Court sign
13 this. It's absolutely needed. And the Governor, I have
14 to believe, took his oath in all sincerity to uphold the
15 United States Constitution and the State of Michigan
16 Constitution. I hope he rereads certain sections and
17 reconsiders his actions.
18 I am finding the actions that have been taken
19 in regard to filing this action in the bankruptcy court
20 as overreaching and unconstitutional as it applies to
21 what the Detroit Emergency Manager Kevyn Orr has done in
22 conjunction with the Governor.
23 So I find it absolutely necessary to sign this
24 order of declaratory judgment. I am also going to order,
25 in addition to what you have crafted here, that a copy of

34

1 So that should not be lost sight of.
2 Finally, I wanted to point out that we do have
3 a motion for summary disposition pending in this case as
4 well. And I would rely on the arguments in the brief.
5 And the ones I've just restated as well to ask that that
6 relief be granted. Thank you.
7 THE COURT: Are you asking that that be heard
8 now, or would you like me to make a ruling on that now?
9 MR. DEVLIN: I think you could probably make a
10 ruling on it without further argument.
11 THE COURT: I think so too.
12 MR. DEVLIN: All right.
13 THE COURT: Okay.
14 MR. DEVLIN: Thank you.
15 THE COURT: Anything further?
16 MR. CANZANO: Nothing further, your Honor.
17 THE COURT: All right.
18 As to the motion for summary disposition in
19 regard to Defendants' motion is denied. I'm going to
20 incorporate the transcript, the arguments of the Flowers
21 matter into this file. I think that in order to have a
22 complete argument, we're going to consolidate the
23 arguments and the files for the purpose of today because
24 they are really united. They are part and parcel of the

33

1 this order be forwarded to President Obama. I know that
2 he's watching this, and he's bailed out Detroit. If this
3 is going to ultimately proceed to bankruptcy without
4 anyone paying attention to Michigan's Constitution and to
5 what the legislature drafted and to what the Governor
6 himself signed into law, then there will ultimately be a
7 request that Obama will have to look at the pension, so
8 he might as well follow this. He said in the news that
9 he's following this. He might as well see what we've all
10 done here. It's that important to the State of Michigan
11 and to the thousands of people who will be affected, and
12 ultimately all of the taxpayers of the state of Michigan
13 are going to be affected because we will all have to pick
14 up the tab if this is not honored as it should be.
15 Additionally, I am asked that the temporary
16 restraining order be quashed and nullified, so that is
17 now withdrawn, and it expires today at 12:15. And the
18 order of declaratory judgment is being signed as that
19 expires.
20 Is there anything else for the record?
21 MR. WERTHEIMER: Not for the Plaintiffs in
22 Flowers, your Honor.
23 MR. QUASARANO: I'm obliged, your Honor, to
24 move for a stay of enforcement of the order of

35

## Page 32

1 anyone is arguing -- I don't think the Attorney General
2 is arguing that our case is stayed by the bankruptcy
3 court because we're not suing the Emergency Manager.
4 We're only suing the Governor and the Treasurer and the
5 State of Michigan, and they're not -- they're not in the
6 bankruptcy court. They're not the debtor, so that's an
7 argument that has been raised. But, just for clarity, I
8 wanted to point that out. That's all I have.
9      THE COURT: Thank you.
10      Response?
11      MR. DEVLIN: Thank you, your Honor. Brian
12 Devlin again on behalf of the Defendants. I won't repeat
13 the discussion we had on the Flowers case. Much of that
14 applies. The relief sought in each of these cases is the
15 same position of the State, is that the bankruptcy court
16 jurisdiction has a great effect on this, and that the
17 reliefs that might be desired by the Plaintiffs are
18 available through that court. Furthermore, we'd cite the
19 *Straus* case as well in this reply.
20      I would like to call the Court's attention to
21 just one other thing: There was reference made to the
22 Governor's obligation to uphold the terms of the United
23 States -- of the State Constitution but that also applies
24 to the United States Constitution, and bankruptcy court
25 is certainly someone he may have to answer to as well.

## Page 33

1 So that should not be lost sight of.
2      Finally, I wanted to point out that we do have
3 a motion for summary disposition pending in this case as
4 well. And I would rely on the arguments in the brief.
5 And the ones I've just restated as well to ask that that
6 relief be granted. Thank you.
7      THE COURT: Are you asking that that be heard
8 now, or would you like me to make a ruling on that now?
9      MR. DEVLIN: I think you could probably make a
10 ruling on it without further argument.
11      THE COURT: I think so too.
12      MR. DEVLIN: All right.
13      THE COURT: Okay.
14      MR. DEVLIN: Thank you.
15      THE COURT: Anything further?
16      MR. CANZANO: Nothing further, your Honor.
17      THE COURT: All right.
18      As to the motion for summary disposition in
19 regard to Defendants' motion is denied. I'm going to
20 incorporate the transcript, the arguments of the Flowers
21 matter into this file. I think that in order to have a
22 complete argument, we're going to consolidate the
23 arguments and the files for the purpose of today because
24 they are really united. They are part and parcel of the

## Page 34

1 transcript without looking at both.
2      So I'm going to direct the court reporter to
3 treat today as one transcript despite there being two
4 docket numbers, and I didn't even call both of them, but
5 we just sort of started, but we're really dealing with
6 Dockets 13-734-CZ and 13-729-CZ.
7      So the motion for summary disposition in regard
8 to 13-734-CZ, and that's Defendants' motion for summary
9 disposition is denied based on the same rationale the
10 Court had and reasoning in the prior case.
11      In regard to the request for declaratory
12 judgment, I think it is imperative that the Court sign
13 this. It's absolutely needed. And the Governor, I have
14 to believe, took his oath in all sincerity to uphold the
15 United States Constitution and the State of Michigan
16 Constitution. I hope he rereads certain sections and
17 reconsiders his actions.
18      I am finding the actions that have been taken
19 in regard to filing this action in the bankruptcy court
20 as overreaching and unconstitutional as it applies to
21 what the Detroit Emergency Manager Kevyn Orr has done in
22 conjunction with the Governor.
23      So I find it absolutely necessary to sign this
24 order of declaratory judgment. I am also going to order,
25 in addition to what you have crafted here, that a copy of

## Page 35

1 this order be forwarded to President Obama. I know that
2 he's watching this, and he's bailed out Detroit. If this
3 is going to ultimately proceed to bankruptcy without
4 anyone paying attention to Michigan's Constitution and to
5 what the legislature drafted and to what the Governor
6 himself signed into law, then there will ultimately be a
7 request that Obama will have to look at the pension, so
8 he might as well follow this. He said in the news that
9 he's following this. He might as well see what we've all
10 done here. It's that important to the State of Michigan
11 and to the thousands of people who will be affected, and
12 ultimately all of the taxpayers of the state of Michigan
13 are going to be affected because we will all have to pick
14 up the tab if this is not honored as it should be.
15      Additionally, I am asked that the temporary
16 restraining order be quashed and nullified, so that is
17 now withdrawn, and it expires today at 12:15. And the
18 order of declaratory judgment is being signed as that
19 expires.
20      Is there anything else for the record?
21      MR. WERTHEIMER: Not for the Plaintiffs in
22 Flowers, your Honor.
23      MR. QUASARANO: I'm obliged, your Honor, to
24 move for a stay of enforcement of the order of

STATE OF MICHIGAN)
                 ) SS.
COUNTY OF INGHAM)

CERTIFICATE OF REPORTER

I, Melinda I. Dexter, Certified Shorthand Reporter, do hereby certify that the foregoing **37 pages** comprise an accurate, true, and complete transcript of the proceedings and testimony taken in the case of **Gracie Webster, et al.** versus **Richard Snyder, et al., Case Nos. 13-734-CZ and 13-729-CZ, on Friday, July 19, 2013.**

I further certify that this transcript of the record of the proceedings and testimony truly and correctly reflects the exhibits, if any, offered by the respective parties.  WITNESS my hand this the <u>nineteenth</u> day of <u>July</u>, 2013.

Melinda I. Dexter, RMR, RPR, CSR-4629
Official Court Reporter
313 West Kalamazoo
Post Office Box 40771
Lansing, Michigan 48901-7971

38

```
1    STATE OF MICHIGAN)
                      ) SS.
2     COUNTY OF INGHAM)

3

4              CERTIFICATE OF REPORTER

5

6          I, Melinda I. Dexter, Certified Shorthand

7    Reporter, do hereby certify that the foregoing

8    **37 pages** comprise an accurate, true, and complete

9    transcript of the proceedings and testimony taken in the

10   case of **Gracie Webster, et al.** versus **Richard Snyder, et**

11   **al., Case Nos. 13-734-CZ and 13-729-CZ, on Friday,**

12   **July 19, 2013.**

13          I further certify that this transcript of the

14   record of the proceedings and testimony truly and

15   correctly reflects the exhibits, if any, offered by the

16   respective parties.  WITNESS my hand this the nineteenth

17   day of July, 2013.

18

19

20

21

22          _Melinda I. Dexter_
            Melinda I. Dexter, RMR, RPR, CSR-4629
23          Official Court Reporter
            313 West Kalamazoo
24          Post Office Box 40771
            Lansing, Michigan 48901-7971
25
```

38

```
 1   STATE OF MICHIGAN)
                      ) SS.
 2    COUNTY OF INGHAM)

 3

 4                  CERTIFICATE OF REPORTER

 5

 6          I, Melinda I. Dexter, Certified Shorthand

 7    Reporter, do hereby certify that the foregoing

 8    37 pages comprise an accurate, true, and complete

 9    transcript of the proceedings and testimony taken in the

10    case of Gracie Webster, et al. versus Richard Snyder, et

11    al., Case Nos. 13-734-CZ and 13-729-CZ, on Friday,

12    July 19, 2013.

13          I further certify that this transcript of the

14    record of the proceedings and testimony truly and

15    correctly reflects the exhibits, if any, offered by the

16    respective parties.  WITNESS my hand this the nineteenth

17    day of July, 2013.

18

19

20

21

22        _____
          Melinda I. Dexter, RMR, RPR, CSR-4629
23        Official Court Reporter
          313 West Kalamazoo
24        Post Office Box 40771
          Lansing, Michigan 48901-7971
25
```

# Court of Appeals, State of Michigan

## ORDER

Gracie Webster v State of Michigan

Michael J. Kelly
Presiding Judge

Docket No. 317286

Patrick M. Meter

LC No. 13-000734-CZ

Stephen L. Borrello
Judges

---

The Court orders that the motion for immediate consideration is GRANTED.

The motion for stay pending appeal is GRANTED. The circuit court's July 18, 2013 temporary restraining order and all further proceedings are STAYED pending resolution of this appeal or further order of this Court.

The Court orders that any answers to the pending application for leave to appeal are due by 5:00 p.m. on Friday, July 26, 2013.

Meter, J. would additionally grant leave to appeal.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

JUL 2 3 2013
_____
Date

_____
Chief Clerk

RECEIVED by Michigan Court of Appeals 7/26/2013 3:29:51 PM

| | STATE OF MICHIGAN<br>IN THE COURT OF APPEALS<br>**Cover Sheet** | **CASE NO.** | | |
|---|---|---|---|---|
| Lower Court or Tribunal<br>Ingham Circuit Court | | CIRCUIT: | Year **13** Number **734** Case Type **CZ** | |
| | | COURT OF APPEALS: | **317286** | |

| Filing Party Last Name or Business/Entity/Agency Name | Attorney Last Name |
|---|---|
| WEBSTER | Canzano |

| Filing Party First Name | M.I. | Attorney First Name | M.I. | P Number |
|---|---|---|---|---|
| GRACIE | | John | R | 30417 |

Address (Street 1, Street 2, City, State, and ZIP Code)

Address(Street 1, Street 2, City, State, and ZIP Code)
400 Galleria Officentre
Suite 117
Southfield  MI  48034

Attorney Telephone Number
(248)354-9650

| Type | Filename/Description | Filing Fee | Doc Fee | Total This Filing |
|---|---|---|---|---|
| Other | Plaintiffs-Appellees Statement Regarding Appeal | $5.00 | $0.00 | $5.00 |

| | | |
|---|---|---|
| | **3% Service Fee:** | **$0.15** |
| Fee Substitute/Alternate Payment | **Total All Filings:** | **$5.15** |

Reason:

- [ ] **Appointed Counsel**
- [ ] **Motion To Waive Fee**
- [ ] **Fees Waived in this Case**
- [ ] **MI InterAgency Transfer**
- [ ] **No Fee per MCR 7.203(F)(2)**

Filer Office Use Only:  AFSCME Webster

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

RECEIVED by Michigan Court of Appeals 7/26/2013 3:29:51 PM

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br>**Proof of Service** | *CASE NO.* | | |
|---|---|---|---|---|
| Ingham Circuit Court | | CIRCUIT: | Year 13 | Number 734 | Case Type CZ |
| | | COURT OF APPEALS: | 317286 | |

Case Name:  GRACIE WEBSTER V STATE OF MICHIGAN

On   7/26/2013    , one copy of the following documents:

Other                              Plaintiffs-Appellees Statement Regarding Appeal

was delivered to the persons listed below:

| Date | Signature |
|---|---|
| 7/26/2013 | /s/John R. Canzano |

| Bar Number | Name | Delivery Method | Service Address |
|---|---|---|---|
| P- | Appellate, AG | E-Serve | paasdivision@michigan.gov |
| P- 30417 | Canzano, John R | E-Serve | jcanzano@michworklaw.com |
| P- 72916 | Lindstrom, Aaron D | E-Serve | lindstroma@michigan.gov |
| P- | Meingast, Heather | E-Serve | meingasth@michigan.gov |

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin. As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the e-filing system so that you can...

RECEIVED by Michigan Court of Appeals 7/26/2013 3:29:51 PM

COURT OF APPEALS
STATE OF MICHIGAN

Gracie Webster, et al v. State of Michigan

Docket No. 317286

LC No. 13-000734-CZ

_____/

## PLAINTIFFS-APPELLEES STATEMENT REGARDING APPEAL

On July 23, 2013, this Court entered an Order in the this matter "that any answers to the pending application for leave to appeal are due by 5:00 p.m. on Friday, July 26, 2013." Yesterday, July 25, 2013, the United States Bankruptcy Court for the Eastern District of Michigan entered an Order (Docket #166) in *City of Detroit, Michigan*, Case No. 13-53846, that this matter "is stayed, pursuant to section 105(a) of the Bankruptcy Code, pending further Order of this Court." (Order, ¶3 at p 2). Given this Order, it is Plaintiffs-Appellees' understanding that they are precluded at this time from filing a response in opposition to Defendant's Emergency Application for Leave to Appeal. Moreover, and in any event, the July 18, 2013 Temporary Restraining Order which is the subject of this Appeal was quashed by the Circuit Court and expired at 12:15 p.m. on July 19, 2013, and has not been in effect since that time. See July 19 transcript at 35 (Copy attached).

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By: /s/John R. Canzano
John R. Canzano  (P30417)
Attorneys for Plaintiffs-Appellees
400 Galleria Officentre, Suite 117
Southfield, MI  48034
248-354-9650
jcanzano@michworklaw.com

Date: July 26, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2013, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification to counsel of record.

_/s/ John R. Canzano_____
JOHN R. CANZANO (P30417)
Attorney for Plaintiffs-Appellees
400 Galleria Officentre, Suite 117
Southfield, MI  48034-8460
(248) 354-9650
jcanzano@kmsmc.com

P:\AFSCME\Emergency Mgr Litigation\Court of Appeals\Plaintiff appellee statement.wpd

RECEIVED by Michigan Court of Appeals 7/26/2013 3:29:51 PM

RECEIVED by Michigan Court of Appeals 7/26/2013 3:29:51 PM

```
 1                      STATE OF MICHIGAN
            30TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF INGHAM
 2                        CIVIL DIVISION


 3


 4      GRACIE WEBSTER and
        VERONICA THOMAS,
 5
                        Plaintiffs,
 6      v                                   Case No. 13-734-CZ
                                        Hon. Rosemarie Aquilina
 7      THE STATE OF MICHIGAN; RICHARD
        SNYDER, as Governor of the State
 8      of Michigan; and ANDY DILLON,
        as Treasurer of the State of
 9      Michigan,
                        Defendants.
10      _____/
        ROBBIE FLOWERS, MICHAEL WELLS,
11      JANET WHITSON, MARY WASHINGTON,
        and BRUCE GOLDMAN,
12
                        Plaintiffs,
13      v                                   Case No. 13-729-CZ
                                        Hon. Rosemarie Aquilina
14      RICK SNYDER, as the Governor of the
        State of Michigan; ANDY DILLON, as
15      the Treasurer of the State of Michigan;
        and the STATE OF MICHIGAN,
16
                        Defendants.
17      _____/

18          MOTION TO AMEND PRELIMINARY INJUNCTION

19             MOTION FOR DEFAULT JUDGMENT

20            MOTION FOR SUMMARY DISPOSITION

21      BEFORE THE HON. ROSEMARIE AQUILINA, CIRCUIT JUDGE

22       Ingham County, Michigan - Friday, July 19, 2013

23


24


25
```

RECEIVED by Michigan Court of Appeals 7/26/2013 3:29:51 PM

1 anyone is arguing -- I don't think the Attorney General
2 is arguing that our case is stayed by the bankruptcy
3 court because we're not suing the Emergency Manager.
4 We're only suing the Governor and the Treasurer and the
5 State of Michigan, and they're not -- they're not in the
6 bankruptcy court. They're not the debtor, so that's an
7 argument that has been raised. But, just for clarity, I
8 wanted to point that out. That's all I have.
9 THE COURT: Thank you.
10 Response?
11 MR. DEVLIN: Thank you, your Honor. Brian
12 Devlin again on behalf of the Defendants. I won't repeat
13 the discussion we had on the Flowers case. Much of that
14 applies. The relief sought in each of these cases is the
15 same position of the State, is that the bankruptcy court
16 jurisdiction has a great effect on this, and that the
17 reliefs that might be desired by the Plaintiffs are
18 available through that court. Furthermore, we'd cite the
19 *Straus* case as well in this reply.
20 I would like to call the Court's attention to
21 just one other thing: There was reference made to the
22 Governor's obligation to uphold the terms of the United
23 States -- of the State Constitution but that also applies
24 to the United States Constitution, and bankruptcy court
25 is certainly someone he may have to answer to as well.

32

1 transcript without looking at both.
2 So I'm going to direct the court reporter to
3 treat today as one transcript despite there being two
4 docket numbers, and I didn't even call both of them, but
5 we just sort of started, but we're really dealing with
6 Dockets 13-734-CZ and 13-729-CZ.
7 So the motion for summary disposition in regard
8 to 13-734-CZ, and that's Defendants' motion for summary
9 disposition is denied based on the same rationale the
10 Court had and reasoning in the prior case.
11 In regard to the request for declaratory
12 judgment, I think it is imperative that the Court sign
13 this. It's absolutely needed. And the Governor, I have
14 to believe, took his oath in all sincerity to uphold the
15 United States Constitution and the State of Michigan
16 Constitution. I hope he rereads certain sections and
17 reconsiders his actions.
18 I am finding the actions that have been taken
19 in regard to filing this action in the bankruptcy court
20 as overreaching and unconstitutional as it applies to
21 what the Detroit Emergency Manager Kevyn Orr has done in
22 conjunction with the Governor.
23 So I find it absolutely necessary to sign this
24 order of declaratory judgment. I am also going to order,
25 in addition to what you crafted here, that a copy of

34

1 So that should not be lost sight of.
2 Finally, I wanted to point out that we do have
3 a motion for summary disposition pending in this case as
4 well. And I would rely on the arguments in the brief.
5 And the ones I've just restated as well to ask that that
6 relief be granted. Thank you.
7 THE COURT: Are you asking that that be heard
8 now, or would you like me to make a ruling on that now?
9 MR. DEVLIN: I think you could probably make a
10 ruling on it without further argument.
11 THE COURT: I think so too.
12 MR. DEVLIN: All right.
13 THE COURT: Okay.
14 MR. DEVLIN: Thank you.
15 THE COURT: Anything further?
16 MR. CANZANO: Nothing further, your Honor.
17 THE COURT: All right.
18 As to the motion for summary disposition in
19 regard to Defendants' motion is denied. I'm going to
20 incorporate the transcript, the arguments of the Flowers
21 matter into this file. I think that in order to have a
22 complete argument, we're going to consolidate the
23 arguments and the files for the purpose of today because
24 they are really united. They are part and parcel of the
25 same arguments. We really can't have a complete

1 this order be forwarded to President Obama. I know that
2 he's watching this, and he's bailed out Detroit. If this
3 is going to ultimately proceed to bankruptcy without
4 anyone paying attention to Michigan's Constitution and to
5 what the legislature drafted and to what the Governor
6 himself signed into law, then there will ultimately be a
7 request that Obama will have to look at the pension, so
8 he might as well follow this. He said in the news that
9 he's following this. He might as well see what we've all
10 done here. It's that important to the State of Michigan
11 and to the thousands of people who will be affected, and
12 ultimately all of the taxpayers of the state of Michigan
13 are going to be affected because we will all have to pick
14 up the tab if this is not honored as it should be.
15 Additionally, I am asked that the temporary
16 restraining order be quashed and nullified, so that is
17 now withdrawn, and it expires today at 12:15. And the
18 order of declaratory judgment is being signed as that
19 expires.
20 Is there anything else for the record?
21 MR. WERTHEIMER: Not for the Plaintiffs in
22 Flowers, your Honor.
23 MR. QUASARANO: I'm obliged, your Honor, to
24 move for a stay of enforcement of the order of
25 declaratory judgment.

| Lower Court or Tribunal | STATE OF MICHIGAN | CASE NO. | | | |
|---|---|---|---|---|---|
| | IN THE COURT OF APPEALS | CIRCUIT: | Year 13 | Number 734 | Case Type CZ |
| Ingham Circuit Court | **Cover Sheet** | COURT OF APPEALS: | 317286 | | |

| Filing Party Last Name or Business/Entity/Agency Name | Attorney Last Name |
|---|---|
| GOVERNOR OF MICHIGAN | Lindstrom |

| Filing Party First Name | M.I. | Attorney First Name | M.I. | P Number |
|---|---|---|---|---|
| | | Aaron | D. | 72916 |

Address (Street 1, Street 2, City, State, and ZIP Code)

Address(Street 1, Street 2, City, State, and ZIP Code)

| Solicitor General Division |
|---|
| P.O. Box 30212 |
| Lansing | MI | 48909 |

Attorney Telephone Number

(517)373-1124

| Type | Filename/Description | Filing Fee | Doc Fee | Total This Filing |
|---|---|---|---|---|
| Correspondence | Letter Regarding Bankruptcy Stay | $5.00 | ---- | $5.00 |
| | | **3% Service Fee:** | | **$0.15** |
| Fee Substitute/Alternate Payment | | **Total All Filings:** | | **$5.15** |

**Reason:**

- [ ] **Appointed Counsel**
- [ ] **Motion To Waive Fee**
- [ ] **Fees Waived in this Case**
- [x] **MI InterAgency Transfer**
- [ ] **No Fee per MCR 7.203(F)(2)**

| Filer Office Use Only: | 2013 |
|---|---|

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin. As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

RECEIVED by Michigan Court of Appeals 7/26/2013 1:07:44 PM

<table>
<tr><td rowspan="2">Lower Court or Tribunal<br><br>Ingham Circuit Court</td><td rowspan="2" align="center">**STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br><br>**Proof of Service**</td><td colspan="3">*CASE NO.*</td></tr>
<tr><td>CIRCUIT:</td><td colspan="2">Year 13   Number 734   Case Type CZ</td></tr>
</table>

COURT OF APPEALS: 317286

Case Name: GRACIE WEBSTER V STATE OF MICHIGAN

On __7/26/2013__ , one copy of the following documents:

Correspondence             Letter Regarding Bankruptcy Stay

was delivered to the persons listed below:

Date __7/26/2013__

Signature __/s/Aimee L. Nelson__

| Bar Number | Name | Delivery Method | Service Address |
|---|---|---|---|
| P- | Appellate, AG | E-Serve | paasdivision@michigan.gov |
| P- 30417 | Canzano, John R | Mail | 400 Galleria Officentre; Ste. 117; Southfield, MI 48034 |
| P- 72916 | Lindstrom, Aaron D | E-Serve | lindstroma@michigan.gov |
| P- | Meingast, Heather | E-Serve | meingasth@michigan.gov |

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin. As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register a review of documents in this filing history.

RECEIVED by Michigan Court of Appeals 7/26/2013 1:07:44 PM

STATE OF MICHIGAN
DEPARTMENT OF ATTORNEY GENERAL



P.O. Box 30212
Lansing, Michigan 48909

**BILL SCHUETTE**
ATTORNEY GENERAL

July 26, 2013

Ms. Kimberly S. Hauser
Michigan Court of Appeals
Hall of Justice
925 W. Ottawa St.
P.O. Box 30022
Lansing, MI 48909-7522

> Re:   *Webster v Snyder*, Ingham County Circuit Court No. 13-734-CZ, COA
> Docket Nos. 317286, 317292; *Flowers v Snyder*, Ingham County Circuit
> Court No. 13-729-CZ, COA Docket No. 317285; *The General Retirement
> System of the City of Detroit v Orr*, Ingham County Circuit Court No.
> 13-768-CZ, COA Docket No. 317284;

Dear Clerk Hauser:

Yesterday the U.S. Bankruptcy Court for the Eastern District of Michigan
issued two stay orders arising from the City of Detroit's Chapter 9 bankruptcy.
Taken together, the orders enjoin any person from continuing judicial proceedings
against the City, the Governor, the Treasurer, the State, and Emergency Manager
Orr. The orders accordingly apply to the above-listed cases. Concurrently with the
filing of this letter, we are also filing in each of the above-listed cases a copy of the
bankruptcy court's orders.

Sincerely,

/s/Aaron D. Lindstrom

Assistant Solicitor General
Solicitor General Bureau

RECEIVED by Michigan Court of Appeals 7/26/2013 1:07:44 PM

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

----------------------------------------------------x
                                                    :
In re                                               :       Chapter 9
                                                    :
CITY OF DETROIT, MICHIGAN,                          :       Case No. 13-53846
                                                    :
                        Debtor.                     :       Hon. Steven W. Rhodes
                                                    :
                                                    :
----------------------------------------------------x

### ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE ENTITIES, (B) NON OFFICER EMPLOYEES AND (C) AGENTS AND REPRESENTATIVES OF THE DEBTOR

This matter coming before the Court on the Motion of Debtor,

Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order,

Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non-Officer

Employees and (C) Agents and Representatives of the Debtor (the "Motion"),[1]

filed by the City of Detroit, Michigan (the "City"); the Court having reviewed the

Motion and the Orr Declaration and having considered the statements of counsel

and the evidence adduced with respect to the Motion at a hearing before the Court

(the "Hearing"); and the Court finding that: (a) the Court has jurisdiction over this

---

[1]     Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.



RECEIVED by Michigan Court of Appeals 7/26/2013 1:07:44 PM

matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding

pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and the Hearing was

sufficient under the circumstances, (d) the unusual circumstances present in this

chapter 9 case warrant extending the Chapter 9 Stay to the State Entities, the

Non-Officer Employees and the City Agents and Representatives; and the Court

having determined that the legal and factual bases set forth in the Motion and the

Orr Declaration and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      Pursuant to section 105(a) of the Bankruptcy Code, the

Chapter 9 Stay hereby is extended to apply in all respects (to the extent not

otherwise applicable) to the State Entities (defined as the Governor, the State

Treasurer and the members of the Loan Board, collectively with the State

Treasurer and the Governor, and together with each entity's staff, agents and

representatives), the Non-Officer Employees and the City Agents and

Representatives.

3.      For the avoidance of doubt, each of the Prepetition Lawsuits

hereby is stayed, pursuant to section 105(a) of the Bankruptcy Code, pending

further order of this Court.

-2-

13-53846-swr    Doc 166    Filed 07/25/13    Entered 07/25/13 13:37:18    Page 2 of 3
13-53846-swr    Doc 1361-12    Filed 10/07/13    Entered 10/07/13 14:02:52    Page 63 of 11
70

4.     This order is entered without prejudice to the right of any

creditor to file a motion for relief from the stay imposed by this order using the

procedures of and under the standards of 11 U.S.C. § 362(d)-(g).


**Signed on July 25, 2013**

_/s/ Steven Rhodes_
**Steven Rhodes**
**United States Bankruptcy Judge**

RECEIVED by Michigan Court of Appeals 7/26/2013 1:07:44 PM

-3-

13-53846-swr    Doc 166    Filed 07/25/13    Entered 07/25/13 13:37:18    Page 3 of 3
13-53846-swr    Doc 2361-12    Filed 00/07/14    Entered 00/07/13 14:28:52    Page 64 of 11
70

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-----------------------------------------------------x
                    :

In re                    :      Chapter 9

CITY OF DETROIT, MICHIGAN,   :      Case No. 13-53846

            Debtor.     :      Hon. Steven W. Rhodes

                    :

-----------------------------------------------------x

## ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE CONFIRMING THE PROTECTIONS OF SECTIONS 362, 365 AND 922 OF THE BANKRUPTCY CODE

This matter coming before the Court on the Motion of Debtor,

Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order

Confirming the Protections of Sections 362, 365 and 922 of the Bankruptcy Code

(the "Motion"),[1] filed by the City of Detroit, Michigan (the "City"); the Court

having reviewed the Motion and the Orr Declaration and having considered the

statements of counsel and the evidence adduced with respect to the Motion at a

hearing before the Court (the "Hearing"); and the Court finding that: (a) the Court

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is

a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and the

---

[1]      Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.



Hearing was sufficient under the circumstances, (d) among other things, the requested relief confirms the protections of sections 362, 365 and 922 of the Bankruptcy Code and (e) the Emergency Manager is an officer of the City as that term is used in section 922(a)(1) of the Bankruptcy Code; and the Court having determined that the legal and factual bases set forth in the Motion and the Orr Declaration and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED.

2.     Pursuant to section 362 of the Bankruptcy Code, all persons (including individuals, partnerships, corporations, limited liability companies and all those acting for or on their behalf), all foreign or domestic governmental units and all other entities (and all those acting for or on their behalf) are hereby stayed, restrained and enjoined from:

(a)     commencing or continuing any judicial, administrative or other proceeding against the City, including the issuance or employment of process, that was or could have been commenced before the City's chapter 9 case was commenced;

(b)     recovering a claim against the City that arose before the commencement of its chapter 9 case;

(c)     taking any action to obtain possession of property of or from the City;

(d)     taking any action to create, perfect or enforce any lien against property of the City, to the extent that such lien secures a claim that arose before the commencement of the City's chapter 9 case;

RECEIVED by Michigan Court of Appeals 7/26/2013 1:07:44 PM

(e) taking any action to collect, assess or recover a claim against the City that arose before the commencement of its chapter 9 case; and

(f) offsetting any debt owing to the City that arose before the commencement of its chapter 9 case against any claim against the City.

3. All entities, including all persons and foreign and domestic governmental units, and all those acting on their behalf, including sheriffs, marshals, constables and other or similar law enforcement officers and officials are stayed, restrained and enjoined from in any way seizing, attaching, foreclosing upon, levying against or in any other way interfering with any and all property of the City, wherever located.

4. Pursuant to section 922(a) of the Bankruptcy Code, all persons (including individuals, partnerships, corporations, limited liability companies and all those acting for or on their behalf), all foreign or domestic governmental units and all other entities (and all those acting for or on their behalf) are hereby stayed, restrained and enjoined from:

(a) commencing or continuing a judicial, administrative, or other action or proceeding against an officer or inhabitant of the City, including the issuance or employment of process, that seeks to enforce a claim against the City; and

(b) enforcing a lien on or arising out of taxes or assessments owed to the City.

5. For the avoidance of doubt, the protections of section 922(a)(1) of the Bankruptcy Code with respect to officers and inhabitants of the City, as set

RECEIVED by Michigan Court of Appeals 7/26/2013 1:07:44 PM

forth in paragraph 4(a) above, apply in all respects to: (a) the Emergency

Manager; and (b) the City Officers, in whatever capacity each of them may serve.

6. Pursuant to section 365 of the Bankruptcy Code, all persons

(including individuals, partnerships, corporations, limited liability companies and

all those acting for or on their behalf), all foreign or domestic governmental units

and all other entities (and all those acting for or on their behalf) are hereby

prohibited from modifying or terminating any executory contract or unexpired

lease, or any right or obligation under such contract or lease, at any time after the

commencement of the City's chapter 9 case solely because of a provision in such

contract or lease that is conditioned on:

(a) the insolvency or financial condition of the City at any time before the closing of the City's chapter 9 case; or

(b) the commencement of the City's chapter 9 case.

7. Pursuant to sections 362 and 365 of the Bankruptcy Code, all

parties to an executory contract or unexpired lease with the City shall continue to

perform their obligations under such contract or lease until such contract or lease is

assumed or rejected by the City or otherwise expires by its own terms.

Signed on July 25, 2013

                                                 _/s/ Steven Rhodes_
                                                 Steven Rhodes
                                                 United States Bankruptcy Judge

-4-

13-53846-swr Doc 167 Filed 07/25/13 Entered 07/25/13 13:52:58 Page 4 of 5
13-53846-swr Doc 1221-1 Filed 10/27/13 Entered 10/27/13 14:22:31 Page 68 of 70

RECEIVED by Michigan Court of Appeals 7/26/2013 1:07:44 PM

-5-

# Court of Appeals, State of Michigan

## ORDER

Michael J. Kelly
Presiding Judge

Gracie Webster v State of Michigan

Docket No. 317286

Patrick M. Meter

LC No. 13-000734-CZ

Stephen L. Borrello
Judges

Upon notification of a pending bankruptcy proceeding that deprives this Court of the authority to continue its review of this case, 11 USC 105(a), the Court orders that the case is CLOSED without prejudice. The closure does not constitute a dismissal or a decision on the merits. When the bankruptcy stay has been removed, the case may be reopened on motion.

Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

**JUL 2 9 2013**
Date

Chief Clerk