UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| In re | No. 13-53846 |
|---|---|
| CITY OF DETROIT, MICHIGAN, | Chapter 9 |
| Debtor. | HON. STEVEN W. RHODES |

ATTACHMENT

APPELLEE STATE OF MICHIGAN'S DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

| Design-ation | Docket # | Filing Date | Description |
|---|---|---|---|
| 57. | 1474 | 10/30/2013 | Supplemental Brief Regarding Ripeness filed by Official Committee of Retirees |

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

---------------------------------------------------------------------x
: 
In re : Chapter 9
:
CITY OF DETROIT, MICHIGAN, : Case No. 13-53846
:
  Debtor. : Hon. Steven W. Rhodes
:
:
---------------------------------------------------------------------x

## SUPPLEMENTAL BRIEF OF THE OFFICIAL
## COMMITTEE OF RETIREES REGARDING RIPENESS

81304675\V-3



## TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | iii |
| A. THE COMMITTEE'S OBJECTION IS RIPE | 1 |
| B. THE COMMITTEE HAS STANDING TO BRING ITS OBJECTION | 6 |
| C. CITY OF PONTIAC RETIRED EMPLOYEES ASSOCIATION V. SCHIMMEL | 8 |

- ii -

81304675\V-3

13-53846-tjt Doc 2362-96 Filed 01/02/14 Entered 01/02/14 19:10:37 Page 3 of 16
13-53846-swr Doc 1474 Filed 10/30/13 Entered 10/30/13 23:54:56 Page 2 of 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbott Labs v. Gardner*,
 387 U.S. 136 (1967) ...................................................................................................1

*Bassett v. Snyder*,
 2013 WL 3285111 (E.D. Mich. June 28, 2013) ..........................................................2

*Blum v. Yaretsky*,
 457 U.S. 991 (1982) ....................................................................................................6

*Brown v. Ferro Corp.*,
 763 F.2d 798 (6th Cir. 1985) .......................................................................................2

*Bryant v. Yellin,*
 447 U.S. 352 (1980) ....................................................................................................6

*Califano v. Sanders*,
 430 U.S. 99 (1977) ......................................................................................................1

*Cent. Delta Water Agency v. U.S.*,
 306 F.3d 938 (9th Cir. 2002) ...................................................................................4, 7

*City of Cleveland v. Ohio*,
 508 F.3d 827 (6th Cir. 2007) ...................................................................................6, 7

*City of Pontiac Retired Employees Ass'n v. Schimmel*,
 726 F.3d 767 (6th Cir. Aug. 9, 2013) ............................................................... 8, 9, 10

*Clapper v. Amnesty Int'l U.S.A*,
 133 S.Ct. 1138 (2013) .................................................................................................7

*Clinton v. City of New York*,
 524 U.S. 417 (1998) ....................................................................................................4

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
 204 F.3d 149 (4th Cir. 2000) .......................................................................................7

*Hunt v. Washington State Apple Adver. Comm'n*,
 432 U.S. 333 (1977) ....................................................................................................6

*In re Barnwell Cty. Hosp.*,
 459 B.R. 903, 905 (D.S.C. 2011) ................................................................................7

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ....................................................................................................6

*Miles Christi Religious Order v. Township of Northville*,
   629 F.3d 533 (6th Cir. 2010) ................................................................................................2

*Monsanto Co. v. Geerston Seed Farms*,
   130 S.Ct. 2743 (2010) ............................................................................................................6

*Nat'l Federation of Independent Business v. Sebelius*,
   132 S.Ct. 2566 (2012) ............................................................................................................4

*Newell Co. v. Lee*,
   950 F. Supp. 864 (N.D.Ill. 1997) ...........................................................................................1

*Peick v. Pension Benefit Guar. Corp.*,
   724 F.2d 1247 (7th Cir. 1983) ................................................................................................5

*Pennell v. City of San Jose*,
   485 U.S. 1 (1988) ...................................................................................................................6

*People v. Hardy*,
   494 Mich. 430 (Mich. 2013) ..................................................................................................9

*Rose v. Volvo Constr. Equip. N. Am., Inc.*,
   412 F.Supp.2d 740 (N.D. Ohio 2005) ................................................................................1, 2

*Thomas More Law Ctr. v. Obama*,
   651 F.3d 529 (6th Cir. 2011) .............................................................................................4, 6

*United Steelworkers of Am., Local 2116 v. Cyclops Corp.*,
   860 F.2d 189 (6th Cir. 1988) ..........................................................................................1, 2, 5

*United Transp. Union v. CSX Transp.*,
   2008 WL 521761 (N.D. Ohio July 10, 2008) ....................................................................1, 6

*Yesler Terrace Cmty. Council v. Cisneros*,
   37 F.3d 442 (9th Cir. 1994) ....................................................................................................4

**STATUTES**

11 U.S.C. § 901(a) ...........................................................................................................................6

11 U.S.C. § 1109(b) .........................................................................................................................6

M.C.L. §§ 141.1501-1531................................................................................................................9

MICH. CONST. art. IX § 24...............................................................................................................7

81304675\V-3

13-53846-swr Doc 2362-96 Filed 01/02/14 Entered 01/02/14 19:10:37 Page 5 of 16
13-53846-swr Doc 1474 Filed 10/30/13 Entered 10/30/13 23:54:56 Page 4 of 15

Pursuant to the Court's authorization on October 15, 2013 for the Official Committee of Retirees ("Committee") to address issues of ripeness raised in the United States' Memorandum in Support of Constitutionality of Chapter 9 of Title 11 of the United States Code, dated October 11, 2013 ("Memorandum") (Dkt. 1149), and in accordance with the Court's order of October 17, 2013 governing supplemental briefs (Dkt. 1217), the Committee states as follows:

A.  **THE COMMITTEE'S OBJECTION IS RIPE**

1.  The Supreme Court has established a two-part test for ripeness: (1) courts must "evaluate both the fitness of the issues for judicial resolution, and (2) the hardship to the parties of withholding court consideration." *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). In addition to these two factors, the Sixth Circuit considers "the likelihood that the harm alleged by plaintiffs will ever come to pass . . . ." *Rose v. Volvo Constr. Equip. N. Am., Inc.*, 412 F. Supp. 2d 740, 743 (N.D. Ohio 2005) (citing *United Steelworkers of Am., Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194-95 (6th Cir. 1988)). Plaintiff "does not have to await the consummation of threatened injury to obtain preventative relief." *Id*. There is a "sufficient threat of harm even if 'the threat was not current, but in the immediate future.'" *United Transp. Union v. CSX Transp.*, No. 107 cv 1549, 2008 WL 5210761, at *5 (N.D. Ohio July 10, 2008) (citing *Rose v. Volvo*, 412 F. Supp. 2d at 744) (railroad's actions in entering into collective bargaining agreement ("CBA") that authorized engineers to operate remote control technology in violation of separate CBA with trainmen, and experimentation with such technology, "raised substantial likelihood of harm"); *Newell Co. v. Lee*, 950 F. Supp. 864, 868 (N.D.Ill. 1997) (declaratory judgment action ripe where defendant had stated intention to "test" covenant not to compete by participating in allegedly violative activities).

2.      As shown below, the Emergency Manager ("EM") has repeatedly asserted an intent to impair pension benefits as part of the City's restructuring, and has filed a Chapter 9 petition with the intent to do so.[1] These statements and acts establish a "sufficiently high threat of a future injury to establish a ripe case or controversy." *Rose v. Volvo*, 412 F. Supp. 2d at 744 (dispute over pension benefits is ripe where there is "specific and probable future threat to benefits");[2] *see also Bassett v. Snyder*, No. 12-10038, 2013 WL 3285111, at *6-9 (E.D. Mich. June 28, 2013) (challenge to constitutionality of PA 297, which prohibits public employers from providing medical assistance and other fringe benefits was ripe; same sex couples would eventually lose benefits at some undetermined date on which their partners' employment contracts had demonstrated imminent harm).[3] The Committee's members need not wait until their pension benefits are impaired in violation of the Pension Clause, and its challenge is therefore ripe for adjudication. The statements of the EM and City demonstrate an intent to injure the pension rights of the Committee's constituents through the use of Chapter 9. The City

---

[1] In *Cyclops*, by contrast, the employer had not threatened to cut pension benefits and thus the court found that it was "far from clear that the employer will ever fail to meet its pension obligations." 860 F.2d at 195. Additionally, there was a "strong possibility" that in such event the pension benefits would be covered by the PBGC. *Id*.

[2] In *Rose*, the plaintiff retirees and their union asserted claims against their former employer for violation of their retirement plan, the funds of which were held in a trust. The court held that the dispute was ripe for two independent reasons. First, the plaintiffs adequately alleged that one of their benefits had been cut. *Id*. at 743 n. 1. Second, plaintiffs' claim of future injury due to the employer's denial of liability to fund benefits was ripe because there was a "high likelihood that harm would come to pass in the near future" because the available trust funds would be insufficient to cover their health benefits within five or six years. *Id*. at 743. There was thus a "sufficiently high threat of a future injury to establish a ripe case or controversy." *Id*. at 744.

[3] In contrast, in *Miles Christi Religious Order v. Township of Northville*, 629 F.3d 533, 535 (6th Cir. 2010), the Sixth Circuit held that a zoning ordinance challenge was unripe because a zoning board had not determined how the ordinances applied to plaintiff's property or whether a variance would be granted. In *Brown v. Ferro Corp.*, 763 F.2d 798, 802 (6th Cir. 1985), the only damages shown were "nominal at best," and future course of events was a matter of pure "speculation."

has admitted in its discovery responses, without any hedging or qualification, that "*the City intends to seek to diminish or impair the Accrued Financial Benefits of* the participants in the Retirement Systems through this Chapter 9 case."[4] (Dkt. 849, at 12). (emphasis added). This admission preceded the EM's Creditor Proposal, dated June 14, 2013, which states "there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons." (Dkt. 11, Ex. 1, at 109).

3. The EM's trial testimony on October 28, 2013 conceded that as of May 12 it would be a "fair characterization" to say he had concluded vested pension benefits "had to be cut back," despite his awareness of the Pension Clause. The EM's trial testimony also confirms the June 14 Proposal to Creditors unequivocally reflects his belief that there has to be significant cuts to vested pensions, and that the City would no longer make any contributions to the defined benefit pension plans for active or retired employees. That trial testimony is entirely consistent with the pre trial admissions of the City. The EM's statements and actions, i.e. proffering a Creditor Proposal that would impair constitutionally protected benefits, filing a Chapter 9 petition and seeking an eligibility determination, render the prospect of pension impairment "imminent."[5]

---

[4] The City's intent is further shown by (1) its denial that the Pension Clause (i) prohibits either the Governor from taking direct or indirect actions or the City from taking actions to "diminish or impair accrued financial benefits," (ii) its denial that the Governor has no authority to authorize a Chapter 9 proceeding in which accrued financial benefits will be diminished or impaired, and (2) its admissions that (i) "the Restructuring Proposal" and "Bankruptcy Recommendation" contemplate a reduction in accrued pension benefits, and (ii) the Governor's authorization for the Chapter 9 filing enables the City to seek to "diminish or impair" accrued financial benefits. *Id*.

[5] Given the foregoing, any argument that the City "might" propose a plan that doesn't impair pension rights, *see* Memorandum, at 16, is speculative. That the EM may claim to seek a consensual reduction of benefits does not change the analysis. A party's assertion that it may use "some other operational plan in the future" or "change their course of conduct" to prevent the

4.  Further, the very filing of the Chapter 9 petition has caused the Committee and its constituents to suffer actual harm. Not only must members of the retiree community make adjustments to their future plans and current habits as a result of the threat to pensions, such a threat will alter the choices they make in light of the City's publically announced cut backs to the retiree medical insurance program. *See*, *e.g.*, *Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 535 (6th Cir. 2011), *abrogated on other principles by Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S.Ct. 2566 (2012) (requirement to buy medical insurance changed "present spending and savings habits" and therefore caused injury). The filing of petition has also harmed the Committee's constituents by giving the EM a "bargaining chip"—the threat of impairment of accrued pension benefits rights in Chapter 9—that would be otherwise unavailable. *See, e.g., Clinton v. City of New York*, 524 U.S. 417, 432 (1998) (farmers' cooperative suffered injury upon cancellation of congressional tax benefit that facilitated the acquisition of food processing plants; the deprivation of a "statutory bargaining chip . . . inflicted a sufficient likelihood of economic injury to establish standing"). This increased negotiation leverage, which stems from the City's proposed unconstitutional use of Chapter 9, has harmed the Committee's constituents, and the Committee has standing as a result.

5.  Second, the "factual context" of the Committee's challenge is sufficiently developed for adjudication. The United States acknowledges that the Committee has raised a

---

anticipated harm does not undermine ripeness. *Cf. Central Delta Water Agency v. United States*, 306 F.3d 938, 950-51 (9th Cir. 2002) (finding it "inequitable in the extreme" to permit a party "to create a significantly increased risk of harm" and then prevent the aggrieved party from seeking relief by promising to "ensure" that the harm is avoided, but "offer[ing] no specific or concrete plan of action for doing so"); *see also Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 446-47 (9th Cir. 1994) (conducting standing analysis and concluding that rescission of eviction notices did not invalidate tenants' standing to bring declaratory judgment action).

- 4 -

13-53846-tjt  Doc 2362-96  Filed 01/02/14  Entered 01/02/14 19:10:37  Page 9 of 15
13-53846-swr  Doc 1474  Filed 10/30/13  Entered 10/30/13 23:54:56  Page 8 of 15

"constitutional challenge" to Chapter 9. Memorandum, at 17. The threat of imminent impairment of pension rights in Chapter 9 has been established. Other than to speculate, without foundation, that the EM "may" propose a plan that will not impair benefits, *id.*, the United States offers no explanation as to how the actual filing of a plan will alter the "factual context" in a way that is necessary to decide the Committee's challenge. The Committee's challenge can, and should be, decided now. *See*, *e.g. Peick v. Pension Benefit Guar. Corp.*, 724 F.2d 1247, 1261 (7th Cir. 1983) (constitutional challenge was "legal issue . . . the resolution of which would be essentially unaffected by further factual development").[6]

      6.    Prudential considerations warrant immediate adjudication of the Committee's claim. The Committee and their constituents have suffered actual harm and face imminent future harm. The constitutional challenges raised by the Committee can be decided now and need not await the filing of a plan.[7] As such, the Committee, its constituents and the City are all harmed by delay in the determination of a threshold constitutional challenge that is potentially dispositive of the City's Chapter 9 eligibility and its ability to impair pension benefits. *See United Transp. Union v. CSX Transp.*, 2008 WL 5210761, at *5 (in discussing hardship to plaintiff noting that "courts have found that claims are ripe for adjudication when one party states that it will violate a contract in the future").

---

[6] In contrast, in *United Steel Workers v. Cyclops*, the court found that further development of the factual record was warranted where "it [was] quite possible that [the employer] may have no residual liability." 860 F.2d at 195. Here, the state and federal constitutional challenges are straightforward - the Michigan Constitution prohibits the impairment of accrued pension benefits, and the City's proposed use of Chapter 9 to circumvent this restriction is unconstitutional as well. No further factual development is necessary to decide these questions.

[7] Given the EM's and City's continued statements of intent to impair pension benefits and the Committee's and retirees' insistence that those benefits are constitutionally protected, deferring decision in the hope that mediation will result in agreement is highly speculative at best.

- 5 -

**B.     THE COMMITTEE HAS STANDING TO BRING ITS OBJECTION**

7.     A "creditor's committee . . . may raise and may appear and be heard on any issue in a case" under Chapter 9. 11 U.S.C. § 1109(b); 11 U.S.C. § 901(a).[8] The constitutional standing requirements are: (1) an "injury in fact" that is (i) "concrete and particularized" and (ii) "actual or imminent," (2) the injury is fairly traceable to the challenged action of the defendant, and (3) the injury is redressable by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also City of Cleveland v. Ohio*, 508 F.3d 827, 835-36 (6th Cir. 2007). As with ripeness, standing does not require that the threatened injury be consummated, but only "sufficiently real and immediate to show an existing controversy." *Blum v. Yaretsky*, 457 U.S. 991, 999-1000 (1982) (internal citation omitted); *see also Pennell v. City of San Jose*, 485 U.S. 1, 7-8 (1988) (landlord/landlord association had standing to challenge city ordinance authorizing procedure for "hardship tenants" to challenge rent increase even though no such challenges were pending; landlords had hardship tenants that rendered eventual enforcement a "sufficient threat of actual injury"); *Thomas More Law Ctr. v. Obama*, 651 F.3d at 535 (two theories of injury are "actual present injury" and "'imminent' future injury."). Injury is imminent if there is either a "reasonable probability" of harm. *See*, *e.g.*, *Monsanto Co. v. Geerston Seed Farms*, 130 S.Ct. 2743, 2754-55 (2010) (farmers could challenge federal deregulation of genetically modified alfalfa plant even in the absence of contamination; future contamination was a "reasonable probability," and plaintiffs would have to conduct testing in order to market crops as organic); *Bryant v. Yellen*, 447 U.S. 352, 365-66 (1980) (farmworkers wishing to purchase farmland had standing to challenge order exempting application of federal

---

[8] The Committee has standing to act for its constituents: the constituents may sue in their own right (as evidenced by the individual eligibility objections); the Committee's goal, to protect pensions, is its formational purpose; and individual members need not participate to resolve this dispute. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

irrigation acreage limitation because it was "likely" that application would reduce market value for irrigated land).[9] "Threats or increased risk" constitutes "cognizable harm." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir. 2000) (defendant's release of pollutants in stream increased the risk to association member's downstream uses and that "[t]his threatened injury is sufficient to provide injury in fact").[10] Government action that creates a risk of harm may be challenged before the harm occurs. *Cf. Cent. Delta Water Agency v. U.S.*, 306 F.3d 938, 948-49 (9th Cir. 2002).

8. The foregoing authority makes clear that the Committee has standing to bring its constitutional challenges. As shown above, the EM has repeatedly stated his intent to impair pensions in these Chapter 9 proceedings, which he commenced on behalf of the City.[11] The EM's statements constitute "threats" to impair pensions. The Governor's and EM's actions in approving and filing the Chapter 9 petition constitutes government action that increases the risk of and creates a reasonable probability of impairment. As further noted, *supra*, the Committee's

---

[9] The plight of the retirees is certainly distinguishable, for example, from the plaintiffs in *Clapper v. Amnesty Int'l, USA*, who challenged as unconstitutional FISA provisions allowing surveillance, where their argument rested on the "highly speculative fear" that the government would target their communications and on a "highly attenuated chain of possibilities," and whose injury was thus not, as here, "certainly impending." *See* , 133 S.Ct. 1138, 1147-48 (2013).

[10] *In re Barnwell Cty. Hosp.*, cited by the U.S., *see* Memorandum, at 17, the ad hoc committee objected to the possible relocation of a hospital outside of the county, but no relocation had been proposed and the opinion contains no facts indicating the likelihood of relocation. 459 B.R. 903, 905 (D.S.C. 2011). The committee members did not allege a "particularized injury" or "pecuniary interest," and it was unclear whether they represented all of the county residents, for some of whom it was conceivable that they would favor relocation. *Id.* at 909.

[11] The other constitutional standing requirements are satisfied here. Impairment of pension benefits in Chapter 9 would directly result from Chapter 9 relief, and dismissal would prevent impairment in Chapter 9. Prudential standing requirements are also met. *City of Cleveland*, 508 F.3d at 835-36. The Committee can bring claims on behalf of its members, the dispute is not generalized because each pensioner is directly threatened with the loss of benefits, and those benefits are clearly protected by art. IX § 24 of the Michigan Constitution (the "Pension Clause") which states that accrued pension benefits "shall not be diminished or impaired."

constituents have already suffered actual form because they have had to make adjustments to their current habits and future plans, and have suffered the loss of negotiation leverage. They have standing for these reasons as well.

**C.    CITY OF PONTIAC RETIRED EMPLOYEES ASSOCIATION V. SCHIMMEL**

9.      At the October 15th hearing the Court requested that the Committee's counsel further explicate comments in the Committee's objection to eligibility ("Eligibility Objection") (Dkt. 805) regarding how the Sixth Circuit addressed the constitutionality of PA 436 in *City of Pontiac Retired Employees Ass'n v. Schimmel*, 726 F.3d 767 (6th Cir. Aug. 9, 2013).[12] The Eligibility Objection set forth that the Sixth Circuit: (i) "noted" that "the Michigan legislature ***evidenced*** an unconstitutional, and undemocratic purpose in crafting PA 436[,]" and (ii) "recognized" "that abrogation of municipal retirement compensation rights was the legislative intent of [PA 436] . . . ." Eligibility Objection, at 27, (emphasis added), 29. Committee counsel's description of *Pontiac* is premised upon two key statements concerning both the purpose of PA 436's predecessor statute, PA 4, and the relationship between them. First, the Sixth Circuit made clear that PA 4 permitted an emergency manager to "ignore retirement commitments":

> Public Act 4 is not Michigan's first law governing emergency managers, but it is the first legislation that allowed emergency

---

[12] *Pontiac* was a class action by a retirees' association seeking equitable relief and damages against Pontiac and Louis Schimmel, Pontiac's emergency manager under PA 4. *See* Amended Complaint, Case No. 12-12830 (E.D. Mich. 2012) ("Pontiac Action"), Dkt. No. 18. Pontiac's general employee retiree plan and trust provided lifetime healthcare and life insurance benefits. *Id*. ¶ 17. Pontiac promised employees health care benefits and by ordinance promised to treat them as accrued financial benefits protected by the Michigan constitution. *Id*. ¶¶ 27-29. Under PA 4, Schimmel modified CBAs by deducting from pension checks funds to pay for health insurance premiums, by modifying retirees' health care coverage and by increasing dental and prescription drug payments. *Id*. ¶ 30.

- 8 -

managers to break collective bargaining agreements and ***to ignore retirement commitments***.

*Pontiac*, 726 F.3d at 769 (citing M.C.L. §§ 141.1501-1531 and noting same was rejected by voter referendum in 2012) (emphasis added).

10. The Sixth Circuit's statement that PA 4 allows the emergency manager to "ignore retirement commitments" is reasonably interpreted as referring to the pension payments impaired by Pontiac's emergency manager in violation of the Michigan state constitution. While the Sixth Circuit observed that the retired employees in Pontiac didn't "specifically argue" that the emergency manager violated Michigan's constitution when he changed their pension rights, *id*. at 769, the Pontiac plaintiffs had alleged that the City of Pontiac "intended" that trust benefits "be considered a benefit guaranteed by the Michigan state constitution for [retirees]."[13] Pontiac Action, Dkt. 18, ¶ 18. To the extent that the Sixth Circuit concluded that PA 4 permitted such impairments, then the legislative intent of PA 4 was presumably to permit such abrogation, which if in violation of the Pension Clause, was unconstitutional. *See*, *e.g*., *People v. Hardy*, 494 Mich. 430, 439 (Mich. 2013) ("The touchstone of legislative intent is the statute's language.").

11. Second, the Sixth Circuit observed that through PA 436 the Michigan legislature had largely reenacted PA 4:

> ***Apparently unaffected that voters had just rejected*** [PA 4], the Michigan Legislature enacted, and the Michigan governor signed, [PA 436]. [PA 436] ***largely reenacted*** the provisions of [PA 4], ***the law that Michigan citizens had just revoked***.

*Id*. at 770 (emphasis added). The court further noted that the legislature included "a minor appropriations provision, apparently to stop Michigan voters from putting PA 436 to a

---

[13] Plaintiffs originally asserted a claim under the Pension Clause. *See* Pontiac Action, Dkt. 1, ¶¶ 66-69. However, in its order denying plaintiffs' request for a preliminary injunction, the federal district court declined to exercise supplemental jurisdiction over the state law claims because they "raised novel and complex issues of state law." *Id*., Dkt. 15, at 7.

- 9 -

referendum." *Id.* The Sixth Circuit's statement that PA 436 "largely reenacted the provisions of PA 4"[14] permits application of the legislative intent of PA 4 to impair pension rights to PA 436. Moreover, the Sixth Circuit's sardonic reference to the legislature as having been "apparently unaffected" by the voter's rejection of PA 4, as evidenced by (i) passing a statute that "largely reenacted" its predecessor and by (ii) adding an appropriations provision which prevented a second voter referendum on the largely similar PA 436, can be viewed as a criticism of the legislature for ignoring voters who had previously issued their negative verdict on that statute, *i.e.*, an undemocratic purpose.

Dated: October 30, 2013
      New York, New York

| | | |
|---|---|---|
| By: /s/ Claude D. Montgomery<br>Claude D. Montgomery (P29212)<br>Carole Neville<br>DENTONS US LLP<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Tel:   (212) 768-6700<br>Fax:   (212) 768-6800<br>claude.montgomery@dentons.com<br>carole.neville@dentons.com | Sam J. Alberts<br>DENTONS US LLP<br>1301 K. Street, NW<br>Suite 600, East Tower<br>Washington, DC 2005-3364<br>Tel:   (202) 408-6400<br>Fax:   (202) 408-6399<br>sam.alberts@dentons.com | Matthew E. Wilkins (P56697)<br>Paula A. Hall (P61101)<br>BROOKS WILKINS<br>SHARKEY & TURCO PLLC<br>401 South Old Woodward,<br>Suite 400<br>Birmingham, Michigan 48009<br>Direct: (248) 971-1711<br>Cell: (248) 882-8496<br>Fax: (248) 971-1801<br>wilkins@bwst-law.com<br>hal@bwst-law.com |

*Counsel for the Official Committee of Retirees*

---

[14] The EM apparently came to a similar conclusion. When the EM's law firm pitched for the City's restructuring assignment, the EM wrote to one of his partners that "although the new law provides the thin veneer of a revision, it is essentially a redo of the prior rejected law and appears to merely adopt the conditions necessary for a chapter 9 filing." *See* Retiree Committee Exhibit 403, email from Kevin Orr to Corinne Ball, dated January 31, 2013.

- 10 -

# CERTIFICATE OF SERVICE

I, Claude D. Montgomery, hereby certify that service of the Supplemental Brief of the Official Committee of Retirees Regarding Ripeness was filed and served via the Court's electronic case filing and noticing system on October 30, 2013.

/*s*/ Claude D. Montgomery