UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

**OBJECTION TO MEDIATORS' RECOMMENDATION**

The undersigned objectors, Financial Guaranty Insurance Company, Syncora Guarantee Inc. and Syncora Capital Assurance Inc., Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit, Retiree Association Parties, Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A., and Erste Europäische Pfandbrief- und Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A. (collectively "EEPK") and FMS Wertmanagement AöR (collectively, the "Objectors"), respectfully submit this Objection to the December 30, 2013 Mediators' Recommendation for Approval of Settlement Between the Debtor and Swap Counterparties (the "Recommendation") [Doc. No. 2343]. In support of their Objection, the Objectors state as follows:

**Background**

1. On December 17, 2013, the Court began a hearing on the City's Motion (the "Motion") to Assume/Approve the Forbearance and Optional Early

Termination Agreement (the "Forbearance Agreement") [Doc. No. 17/157] and the City's motion for Post-Petition Financing [Doc. No. 1520]. At the hearing, the City's investment banker, Ken Buckfire testified that he had negotiated the Forbearance Agreement during a hurried seven-day period in early June 2013. (12/17/13 Hearing Tr. at 176 13-18.) After some of the "hardest fought" negotiations of Mr. Buckfire's career, the City agreed to pay the Swap Counterparties between 75% and 82% of the termination value of the Amended Swap Agreements. (*Id.* at 175:22-176:18.)

2. Mr. Buckfire, however, also testified that he had conducted no analysis of whether the City had claims against the Swap Counterparties prior to engaging in the negotiations -- and that he was aware of no claims analysis conducted by anyone else on the City's behalf. (*Id.* at 165:9-15.) He further testified that he had neither argued the City's case with respect to any such claims to the Swap Counterparties in the course of negotiations, nor witnessed anyone else do so on behalf of the City. (*Id.* at 168:1-7.)

3. In addition, Mr. Buckfire admitted that he did not understand core aspects of the structure of the COPS/Swaps transaction with respect to which he was negotiating. For example, Mr. Buckfire testified that he did not understand the "dual pledge" nature of the COPs/Swap structure. (*Id.* at 162:23-163:12) He did

2
13-53846-tjt    Doc 2365    Filed 01/02/14    Entered 01/02/14 20:46:45    Page 2 of 11

not understand that the Collateral Agreement ultimately secured the termination payment that might be owed under the Amended Swap Agreements. (*Id.* at 164:4-18.) He performed no analysis of future interest rates. (*Id.* at 169:4-12.) Nor did he ever engage in, or witness, negotiations with the Service Corporations that stand at the center of the structure he was endeavoring to compromise. (*Id.* at 171:6-15.)

4. After Mr. Buckfire's testimony demonstrated that the City had attempted to blindly negotiate its way out of a structure that its lead negotiator simply did not understand, the City briefly attempted to rehabilitate its case via the testimony of Kevyn Orr, the Emergency Manager. Mr. Orr's testimony created the impression that he had been actively involved in the negotiations along with Mr. Buckfire. (12/18/13 Hearing Tr. at 80:8-16.) This testimony would have made for interesting cross-examination, because at his deposition, Mr. Orr testified very differently with respect to his role in the negotiations:

> Q: Mr. Orr, I want to clear something up. Maybe I've been saying it the wrong way. I've been using the term "marching orders" with respect to the way you and Mr. Buckfire operated.
>
> A: Right.
>
> Q: And is a better way to say it that you authorized Mr. Buckfire to negotiate the best possible deal he could with the Swap counterparties and that's what he did?
>
> A: That's a fair characterization, sure.

Q: And at some point did he come out of a meeting and say, Mr. Orr, this is the best possible deal that I'm able to get out of these Swap counterparties and it's my advice that we take it?

A: Yes.

(8/30/13 Orr Dep. Tr. at 36-37.)

5. Mr. Orr's deposition testimony that he was only tangentially involved in the negotiation of the Forbearance Agreement is consistent with the contemporaneous documentary evidence, which reveals that Mr. Buckfire did not even invite Mr. Orr into the negotiation until the very end. (See June 12 email from Ken Buckfire to Kevyn Orr at Ex. 230) ("It is appropriate for the EFM [sic] to noe [sic] enter the negotiations to close this very narrow gap . . . .") (emphasis added).

6. That cross examination never occurred. Instead, after the Court expressed skepticism that the City had adequately established an evidentiary record demonstrating that the Forbearance Agreement was "fair and equitable" under Rule 9019, the City requested a continuance so that it could waive the attorney-client privilege and introduce testimony from Corinne Ball establishing that the City had, in fact, engaged in a thorough investigation of the claims compromised by the Forbearance Agreement. (12/18/13 Hearing Tr. at 102:24-104:3.)

7. That production and testimony also never took place. Instead, on December 21, 2013, the Court ordered certain of the Objectors, the City, and the

Swap Counterparties to engage in mediation on December 23 and 24, 2013. That mediation was conducted by mediators Judge Gerald Rosen and Judge Liz Perris (the "Mediators"). At the conclusion of that mediation, on December 24, 2013, the Mediators ordered that the City and the Swap Counterparties memorialize the new mediated agreement that had been struck. That new agreement reflects the following salient points:

- The termination payment would be $165 million, plus "breakage costs" of $4.2 million.

- Residual amounts in the General Receipts Subaccount totaling $4.2 million would be released to the City upon closing on the termination.

- The post-petition swap termination financing would be reduced to $165 million.

- Closing would occur on or before January 31, 2014.

- The Mediators would recommend that all objections to the Motions be overruled.

- The Mediators would recommend that a motion to dismiss in the adversary proceeding between Syncora and the Swap Counterparties would be determined at the same time as the Motion.

(12/24/13 Hearing Tr. at 5-7.)

8. No Objectors agreed to the amendment to the Forbearance Agreement and none of them agreed to withdraw their objections. A press release announcing the new agreement was released the same day.

5
13-53846-tjt    Doc 2365    Filed 01/02/14    Entered 01/02/14 20:46:45    Page 5 of 11

9. On December 30, 2013, the Mediators filed the Recommendation with the Bankruptcy Court expressing their recommendation to approve the amended Forbearance Agreement and overrule all of the objections thereto. The Recommendation further advised the Bankruptcy Court to consider the motion to dismiss in the Syncora/Swap Counterparty adversary proceeding at the same time as it resolved the Motion. (Recommendation at 2-3 [Doc. No. 2343]) The Recommendation also makes a number of observations regarding the Mediators' perception of the benefits of the amended Forbearance Agreement.

10. The public announcement, as well as the Recommendation, surprised the Objectors. This is so, because the Court's August 13, 2013 order establishing the mediation framework (the "Mediation Order") made clear that any mediations would be facilitative. (*See* Mediation Order at ¶¶ 2, 3, [Doc. No. 322] (appointing Judge Rosen to serve as judicial mediator "for purposes of facilitative mediation" and authorizing Judge Rosen to "direct the parties to engage in facilitative mediation")). More importantly, the Mediation Order specified that "All proceedings, discussions, negotiations, and writings incident to mediation shall be privileged and confidential, and shall not be disclosed, filed or placed in evidence." (*Id*. at ¶ 4.)

## Argument

11. Confidentiality is key to any mediation so that all parties can speak freely in the spirit of negotiation. This concept is clearly embodied in the Mediation Order, which requires absolute confidentiality and makes clear that the mediators will be acting as facilitators, not arbitrators.

12. Here, the Recommendation appears to impinge on the confidentiality of the mediation process. Further, the Recommendation makes observations regarding the benefits of the Forbearance Agreement and urges the Bankruptcy Court to overrule all objections to the Forbearance Agreement, a matter that is presently before the Court and must be decided based on the evidence properly admitted. This aspect of the Recommendation is particularly concerning given that certain of the Objectors were not present at the December 23-24, 2013 mediation sessions.

13. The Objectors respectfully disagree with both the Recommendation as well as the implications carried with it. The Court should review the new deal based solely on the evidence presented to the Court during the hearing scheduled to recommence on January 3, 2014. Nevertheless, the Objectors submit this Objection in order to note for the record their respectful disagreement with the Recommendation.

Dated:  January 2, 2014                    Respectfully submitted,

By: */s/ Mark R. James*_____
Ernest J. Essad Jr.
Mark R. James
**WILLIAMS, WILLIAMS, RATTNER & PLUNKETT, P.C.**
280 North Old Woodward Avenue, Suite 300
Birmingham, MI  48009
Telephone:  (248) 642-0333
Facsimile:  (248) 642-0856
E-mail:  EJEssad@wwrplaw.com
E-mail:  mrjames@wwrplaw.com

-and-

Alfredo R. Pérez
**WEIL, GOTSHAL & MANGES LLP**
700 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
E-mail:  Alfredo.perez@weil.com

*Attorneys for Financial Guaranty Insurance Company*


By: */s/ Stephen C. Hackney*_____
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle

8
13-53846-tjt    Doc 2365    Filed 01/02/14    Entered 01/02/14 20:46:45    Page 8 of 11

Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*

By: */s/Robert D. Gordon*
Robert D. Gordon
Jennifer K. Green
Shannon L. Deeby
**CLARK HILL PLC**
151 South Old Woodward Avenue, Suite 200
Birmingham, MI 48009
Telephone: (248) 988-5882
Facsimile: (248) 988-2502
E-mail: rgordon@clarkhill.com

*Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*

By: */s/ Thomas R. Morris*
Thomas R. Morris
Karin F. Avery
**SILVERMAN & MORRIS, P.L.L.C.**
30500 Northwestern Highway, Suite 200
Farmington Hills, Michigan 48334

Telephone:  (248) 539-1330
Facsimile:  (248) 539-1355
E-mail:  morris@silvermanmorris.com
E-mail:  avery@silvermanmorris.com

-and-

**LIPPITT O'KEEFE, PLLC**
Brian D. O'Keefe
Ryan C. Plecha
370 East Maple Road, 3rd Floor
Birmingham, Michigan  48009
Telephone:  (248); 646-8292
Facsimile:  (248) 646-8375
E-mail:  bokeefe@lippittokeefe.com
E-mail:  rplecha@lippittokeefe.com

*Attorneys for Retiree Association Parties*


By: */s/ Howard S. Sher*
Howard S. Sher
**JACOB & WEINGARTEN, P.C.**
Somerset Place
2301 W. Big Beaver Road, Suite 777
Troy, Michigan  48084
Telephone:  (248) 649-1200
Facsimile:  (248) 649-2920
E-mail:  howard@jacobweingarten.com

-and-

Vincent J. Marriott, III
**BALLARD SPAHR LLP**
1735 Market Street, 51st Flr.
Philadelphia, PA  19103
Phone: 215.864.8236
Fax: 215.864.9762
Email: marriott@ballardspahr.com

10

-and-

Matthew G. Summers
**BALLARD SPAHR LLP**
919 North Market Street, 11th Floor
Wilmington, Delaware  19801
Telephone:  (302) 252-4428
Facsimile:  (410) 361-8930
E-mail:  summersm@ballardspahr.com

*Attorneys for Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A., and Erste Europäische Pfandbrief- und Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A. (collectively "EEPK")*

By: */s/ Rick L. Frimmer*
Rick L. Frimmer
Karen V. Newbury
Michael W. Ott
SCHIFF HARDIN, LLP
233 S. Wacker Drive, Suite 6600
Chicago, IL  60606
Telephone:  (312) 258-5600
Facsimile:  (312) 258-5600
E-mail:  rfrimmer@schiffhardin.com
E-mail:  knewbury@schiffhardin.com
E-mail:  mott@schiffhardin.com

*Attorneys for FMS Wertmanagement AöR*