UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| In re | No. 13-53846 |
|---|---|
| CITY OF DETROIT, MICHIGAN, | Chapter 9 |
| Debtor. | HON. STEVEN W. RHODES |

ATTACHMENT

APPELLEE STATE OF MICHIGAN'S DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

| Design-ation | Docket # | Filing Date | Description |
|---|---|---|---|
| 12. | 502 | 8/19/2013 | Objection to Eligibility to Chapter 9 Petition filed by interested parties Detroit Retired City Employees Associations, Shirley V. Lightsey, Retired Detroit Police and Fire Fighters Association, Donald Taylor, Creditors Shirley V. Lightsey, Donald Taylor (Attachments: Index of Exhibits; Exhibit A – Declaration of Shirley V. Lightsey; Exhibit B – Declaration of Donald Taylor) |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------------x
                                                  :

In re                                        :         Chapter 9

CITY OF DETROIT, MICHIGAN,     :         Case No. 13-53846

            Debtor.               :         Hon. Steven W. Rhodes

--------------------------------------------------- x

## DEBTOR'S MEMORANDUM REGARDING GOOD FAITH UNDER 11 U.S.C. § 109(c)(5)(B), LABOR LAW, AND 11 U.S.C. §§ 1113, 1114

Under one of 11 U.S.C. § 109(c)'s options, the City of Detroit (the "City") is eligible for chapter 9 if it "negotiated in good faith with creditors" but "failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that [the City] intends to impair under a [chapter 9] plan." 11 U.S.C. § 109(c)(5)(B).[1] The objectors claim that prepetition negotiations should mirror those that precede the modification of labor agreements or retiree benefits under 11 U.S.C. §§ 1113 and 1114. See, e.g., 10/23 Tr. 141:22–25. This claim fails. As explained below, there is no indication that Congress ever meant for courts to consider labor law or sections 1113 and 1114 when evaluating good faith under chapter 9, nor would it have made sense for Congress to do so given the

---

[1] As the City's other briefs explain, it is also eligible because negotiations were "impracticable." 11 U.S.C. § 109(c)(5)(C).

significant differences between these bargaining contexts. See In re City of Stockton, 493 B.R. 772, 784 (Bankr. E.D. Cal. 2013) ("As these various versions of good faith . . . arise in different contexts, they may have different meanings."). Moreover, even if chapter 11 cases applied, the City's efforts suffice.

## I. Collective Bargaining Differs Dramatically from, and Provides No Guidance for, Prepetition Negotiations Under Chapter 9.

"Collective bargaining . . . lies at the core of our national labor policy." Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 79 (1977). As a result, courts scrutinize employers' negotiating efforts in labor bargaining carefully. See, e.g., Pleasantview Nursing Home, Inc. v. NLRB, 351 F.3d 747, 757–59 (6th Cir. 2003) (finding good faith after evaluating the negotiation process).

Cases interpreting good faith in labor law do not apply here. Prepetition negotiations are a far cry from the heavily-stylized two-party negotiations that occur in a labor bargaining context. Collective bargaining generally involves a small number of known, represented parties and a considerable amount of time. See Pleasantview, 351 F.3d at 750–51, 755–56. Section 109(c)(5)(B) negotiations, on the other hand, encompass negotiations with *all* of a municipality's creditors, many of whom have no experience with or capacity for labor-style bargaining (such as bondholders) or no group-wide representative outside of the bankruptcy context (such as retirees), see, e.g., 11/5 Tr. 11:12–20. In addition, given the municipality's financial situation, the negotiations often must take place quickly,

2

13-53846-tjt  Doc 2368-2  Filed 01/03/14  Entered 01/03/14 09:44:25  Page 3 of 9
13-53846-swr  Doc 2707  Filed 01/03/14  Entered 01/03/14 17:05:24  Page 3 of 9

as was the case here. See, e.g., 10/28 Tr. 32:18–34:6. These differences require a flexibility foreign to formal labor bargaining. Indeed, even in the limited, two-party, chapter 11 labor bargaining context, Congress "did not intend bankruptcy courts to interpret" the "'good faith' element of § 1113(b)(2)" (discussed further below) under "labor law precedent" given the exigencies of bankruptcy. In re Kentucky Truck Sales, 52 B.R. 797, 801 (Bankr. W.D. Ky. 1985).

Section 109(c)(5)(B) also serves a different purpose than collective bargaining. Finding eligibility does not *resolve* disputes—it merely opens the door to further proceedings. Chapter 9 also does not necessarily favor prepetition dispute resolution; potential municipal debtors need not even engage in negotiations if negotiating would be "impracticable." 11 U.S.C. § 109(c)(5)(C). Indeed, chapter 9 exists to grant municipalities relief from problems they cannot fix themselves and often cannot fix with others. Thus, eligibility conditions must be "construed broadly to provide access to relief," In re Hamilton Creek Metro. Dist., 143 F.3d 1381, 1384 (10th Cir. 1998), and good faith may be found even if labor bargaining rigors have not been scrupulously followed.[2]

---

[2] Indeed, it would be particularly inappropriate to impose labor bargaining concepts on non-union creditors in this case given that state law has relieved the City of any duty to bargain collectively even with its unions. See Mich. Comp. Laws § 141.1567(3).

3

13-53846-tjt   Doc 2368-2   Filed 01/03/14   Entered 01/03/14 09:44:25   Page 4 of 9
13-53846-swr   Doc 1707   Filed 11/18/13   Entered 11/18/13 17:05:24   Page 3 of 8

## II. Sections 1113 and 1114 Do Not Apply in Chapter 9.

The objectors analogize to the good faith negotiations required under 11 U.S.C. §§ 1113 and 1114, see, e.g., 10/23 Tr. 141:22–25, which establish requirements for the modification of collective-bargaining agreements or retiree benefits. See 11 U.S.C. § 1113(b)(2) (the debtor must "meet . . . to confer in good faith in attempting to reach mutually satisfactory modifications of such agreement"); 11 U.S.C. § 1114(e)–(f) (retiree benefits).

These sections and cases interpreting them do not apply here. Congress enacted section 1113 in response to NLRB v. Bildisco & Bildisco, 465 U.S. 513, 526 (1984), which held that a chapter 11 debtor could reject a collective bargaining agreement by showing only that "reasonable efforts to negotiate a voluntary modification have been made" and that "the equities . . . favor . . . rejecting the labor contract." Yet, in amending the Code to include more stringent requirements for debtors seeking to reject collective bargaining agreements, Congress refused to apply those requirements to chapter 9. See 11 U.S.C. § 901(a). Thus, "the judicial consensus is that Bildisco controls rejection of collective bargaining agreements [or modification of retiree benefits] in chapter 9 cases[;]" sections 1113 and 1114 have no application. In re City of Stockton, 478 B.R. 8, 23 (Bankr. E.D. Cal. 2012). Since sections 1113 and 1114 have no application in chapter 9, cases evaluating good faith under those provisions also have no application here.

4

13-53846-tjt  Doc 2368-12  Filed 01/03/14  Entered 01/03/14 09:44:25  Page 5 of 9
13-53846-swr  Doc 1707  Filed 11/18/13  Entered 11/18/13 17:03:24  Page 4 of 8

Moreover, the good faith analysis in these cases is bound up with section 1113's and 1114's other mechanisms for fostering voluntary, *postpetition* resolution of labor disputes.³ Congress did not extend these provisions, including their good faith standard, to prepetition chapter 9 negotiations for good reason. While chapter 9 shares chapter 11's goal of encouraging voluntary agreements, the kind of "expedited . . . collective bargaining" envisioned by sections 1113 and 1114, In re Fulton Bellows & Components, Inc., 307 B.R. 896, 900 (Bankr. E.D. Tenn. 2004) (internal quotation marks and citation omitted), often cannot take place before filing. Sections 1113 and 1114 establish frameworks for addressing labor and retiree disputes *during* bankruptcy—when all issues are before one court, and retirees have clear and statutorily authorized bargaining representatives. See, e.g., 11 U.S.C. § 1113(d)–(e) (setting out quick timeframe and process for emergency relief); 11 U.S.C. § 1114(c) (mechanism for determining retirees' representative). Pre-filing, however, a chapter 9 debtor must seek to deal with *all*

---

³ The "rigid requirement[s]" of sections 1113 and 1114, In re Pinnacle Airlines Corp., 483 B.R. 381, 387 (Bankr. S.D.N.Y. 2012), are designed "to ensure that well-informed and good faith negotiations occur in the market place, not as part of the judicial process," In re Maxwell Newspapers, Inc., 981 F.2d 85, 90 (2d Cir. 1992). Courts evaluating good faith under these sections emphasize their negotiation-forcing provisions when assessing good faith. See id. at 89 (a debtor may avoid an agreement only when the union rejects a proposal "without good cause"); Wheeling-Pittsburgh Steel Corp. v. United Steelworkers, 791 F.2d 1074, 1094 (3d Cir. 1986) (negotiations not long enough where debtor could have applied for temporary emergency relief).

5

of its creditors—including individuals that cannot be bound as a group, such as retirees and bondholders. It must also negotiate without the protections of the automatic stay or the availability of emergency relief. Given these significant differences, municipalities negotiating before filing simply cannot be held to the same good faith standard as those negotiating within the structured, bilateral confines of sections 1113 and 1114.

> **III. Even If the Chapter 11 Cases Were To Apply, the City Negotiated in Good Faith.**

Even if the chapter 11 cases did apply here, the City has met the standard for good faith. At the June 14, 2013 meeting, it provided creditors with a detailed proposal for modifying its obligations based on the most complete and reliable information the City had at the time. Through the thousands of documents in its Data Room, see Ex. 100, the City also provided creditors with the information needed to evaluate the proposal. Cf. 11 U.S.C. §§ 1113(b)(1)(B), 1114(f)(1)(B) (requiring disclosure of reasonable information, not every stitch of information a creditor may demand).

The June 14 proposal was not presented on a "take it or leave it" basis. 10/24 Tr. 196:14–16. Rather, the City solicited counterproposals and was willing to consider any "that came over the transom." 10/28 Tr. 70:2–8; see In re Allied Delivery Sys. Co., 49 B.R. 700, 703 (Bankr. N.D. Ohio 1985) (good faith under § 1113 where debtor modified proposal during negotiations). Moreover, given that

6

the City "was operating on a razor's edge," 10/24/13 Tr. 185:10–186:23, the month it gave creditors to offer counterproposals was also reasonable: courts recognize the tight deadlines necessary in section 1113 and 1114 cases. See, e.g., In re Maxwell Newspapers, Inc., 981 F.2d 85, 91 (2d Cir. 1992) ("[T]en hours is ample time to consider . . . a [final] proposal" in the § 1113 context); Allied Sys., 49 B.R. at 703 (good faith under section 1113 where the parties negotiated over a month). The City also conducted a host of meetings with various creditor groups, including the objectors. See, e.g., In the Matter of Walway Co., 69 B.R. 967, 973 (Bankr. E.D. Mich 1987) (good faith where debtor met "numerous times with the Union to engage in discussions"); Allied Sys., 49 B.R. at 703 (a few meetings sufficed).

To be sure, the parties did not reach an agreement. Failure to agree, however, does not prove bad faith, especially where it resulted largely from the objectors' intransigence. UAW and AFSCME were not "willing to negotiate with the emergency manager over reduction in accrued pension benefits." 11/5 Tr. 49:15–18; see also 11/5 Tr. 19:8–25. UAW also sponsored litigation against the City immediately after the June 14 meeting, 11/5 Tr. 70:3–16, and AFSCME refused to share a counterproposal it had already prepared, 11/5 Tr. 17:9–18:23. Similarly, the Retirement Systems did not submit a proposal, 11/7 Tr. 156:2–23, and the Retiree Associations would only advocate for "enhancements" to benefits, not reductions, 11/4 Tr. 120:4–15. "It is not possible to negotiate with a stone

7

wall," City of Stockton, 493 B.R. at 793, and parties that refuse to make concessions or counterproposals cannot challenge the debtor's good faith, see, e.g., In re Hoffman Bros. Packing Co., 173 B.R. 177, 188 (B.A.P. 9th Cir. 1994) (§ 1113); In re Ormet Corp., 324 B.R. 655, 660 (Bankr. S.D. Ohio 2005) (same). Nor can creditors who insist on running to court rather than negotiating. See In re Pleasant View Util. Dist., 24 B.R. 632, 639 (Bankr. M.D. Tenn. 1982). The City did its best to seek an agreement in the limited time that its dwindling resources permitted. It therefore negotiated in good faith even if one were to import the standard of sections 1113 and 1114 into section 109(c)(5)(B).

| | |
|---|---|
| Dated: November 13, 2013 | Respectfully submitted, |
| David G. Heiman (OH 0038271)<br>Heather Lennox (OH 0059649)<br>JONES DAY<br>North Point, 901 Lakeside Avenue<br>Cleveland, Ohio 44114<br>Telephone: (216) 586-3939<br>Facsimile: (216) 579-0212<br>dgheiman@jonesday.com<br>hlennox@jonesday.com | /s/ Bruce Bennett<br>Bruce Bennett (CA 105430)<br>JONES DAY<br>555 South Flower Street, Fiftieth Floor<br>Los Angeles, California 90071<br>Telephone: (213) 243-2382<br>Facsimile: (213) 243-2539<br>bbennett@jonesday.com |
| | Jonathan S. Green (MI P33140)<br>Stephen S. LaPlante (MI P48063)<br>MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.<br>150 West Jefferson, Suite 2500<br>Detroit, Michigan 48226<br>Telephone: (313) 963-6420<br>Facsimile: (313) 496-7500<br>green@millercanfield.com<br>laplante@millercanfield.com |

ATTORNEYS FOR THE CITY OF DETROIT

8

13-53846-tjt Doc 2368-2 Filed 01/03/14 Entered 01/03/14 09:44:25 Page 9 of 9
13-53846-swr Doc 1707 Filed 11/13/13 Entered 11/13/13 17:05:24 Page 8 of 8