# U.S. Bankruptcy Court
## Eastern District of Michigan (Detroit)
## Bankruptcy Petition #: 13–53846–swr

*Date filed:* 07/18/2013

*Assigned to:* Judge Steven W. Rhodes
Chapter 9
Voluntary
No asset

| | | |
|---|---|---|
| ***Debtor In Possession*** | represented by | **Bruce Bennett** |
| **City of Detroit, Michigan** | | 555 S. Flower Street |
| 2 Woodward Avenue | | 50th Floor |
| Suite 1126 | | Los Angeles, CA 90071 |
| Detroit, MI 48226 | | (213) 489–3939 |
| WAYNE–MI | | Email: bbennett@jonesday.com |
| Tax ID / EIN: 38–6004606 | | |

**Judy B. Calton**
Honigman Miller Schwartz &Cohn LLP
2290 First National Building
Detroit, MI 48226
(313) 465–7344
Fax : (313) 465–7345
Email: jcalton@honigman.com

**Eric D. Carlson**
150 West Jefferson
Suite 2500
Detroit, MI 48226
313–496–7567
Email: carlson@millercanfield.com

**Timothy A. Fusco**
150 West Jefferson
Suite 2500
Detroit, MI 48226–4415
(313) 496–8435
Email: fusco@millercanfield.com

**Jonathan S. Green**
150 W. Jefferson
Ste. 2500
Detroit, MI 48226
(313) 963–6420
Email: green@millercanfield.com

**David Gilbert Heiman**
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586–7175
Email: dgheiman@jonesday.com

**Robert S. Hertzberg**
4000 Town Center
Suite 1800

Southfield, MI 48075–1505
248–359–7300
Fax : 248–359–7700
Email: hertzbergr@pepperlaw.com

**Deborah Kovsky–Apap**
Pepper Hamilton LLP
4000 Town Center
Suite 1800
Southfield, MI 48075
(248) 359–7300
Fax : (248) 359–7700
Email: kovskyd@pepperlaw.com

**Kay Standridge Kress**
4000 Town Center
Southfield, MI 48075–1505
(248) 359–7300
Fax : (248) 359–7700
Email: kressk@pepperlaw.com

**Stephen S. LaPlante**
150 W. Jefferson Ave.
Suite 2500
Detroit, MI 48226
(313) 496–8478
Email: laplante@millercanfield.com

**Heather Lennox**
222 East 41st Street
New York, NY 10017
212–326–3939
Email: hlennox@jonesday.com

**Marc N. Swanson**
Miller Canfield Paddock and Stone, P.L.C
150 W. Jefferson
Suite 2500
Detroit, MI 48226
(313) 496–7591
Email: swansonm@millercanfield.com

| | | |
|---|---|---|
| *U.S. Trustee*<br>**Daniel M. McDermott** | represented by | **Sean M. Cowley (UST)**<br>United States Trustee<br>211 West Fort Street<br>Suite 700<br>Detroit, MI 48226<br>(313) 226–3432<br>Email: Sean.cowley@usdoj.gov |
| | | **Richard A. Roble (UST)**<br>United States Trustee<br>211 West Fort Street<br>Suite 700<br>Detroit, MI 48226<br>(313) 226–6769<br>Email: Richard.A.Roble@usdoj.gov |
| *Retiree Committee*<br>**Official Committee of Retirees** | represented by | **Sam J. Alberts**<br>1301 K Street, NW<br>Suite 600, East Tower<br>Washington, DC 20005–3364 |

(202) 408–7004
Email: sam.alberts@dentons.com

**Paula A. Hall**
401 S. Old Woodward Ave.
Suite 400
Birmingham, MI 48009
(248) 971–1800
Email: hall@bwst–law.com

**Claude D. Montgomery**
620 Fifth Avenue
New York, NY 10020
(212) 632–8390
Email: claude.montgomery@dentons.com,docketny@dentons.com

**Carole Neville**
1221 Avenue of the Americas
25th Floor
New York, NY 10020
(212) 768–6889
Email: carole.neville@dentons.com

**Matthew Wilkins**
401 S. Old Woodward Ave.
Suite 400
Birmingham, MI 48009
(248) 971–1800
Email: wilkins@bwst–law.com

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 10/23/2013 | | 1341 | Motion */ Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to Enter into and Perform under Certain Transaction Documents with the Public Lighting Authority and (II) Granting Other Related Relief* Filed by Debtor In Possession City of Detroit, Michigan (Attachments: # 1 Summary of Attachments # 2 Exhibit 1 – Proposed Order # 3 Exhibit 2 – Form of Notice # 4 Exhibit 4 – Certificate of Service # 5 Exhibit 6.1 (CFAgreement).Part 1 # 6 Exhibit 6.1 – (CFAgreement).Part 2 # 7 Exhibit 6.1 – (CFAgreement).Part 3 # 8 Exhibit 6.1 – (CFAgreement).Part 4 # 9 Exhibit 6.2 – (OMAgreement) # 10 Exhibit 6.3 – (Trust Agreement) # 11 Exhibit 6.4 – (Emergency Manager Order)) (Heiman, David) (Entered: 10/23/2013) |
| 11/06/2013 | | 1557 | Objection to (related document(s): 1341 Motion */ Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to Enter into and Perform under Certain Transaction Documents with the Public Lighting Authority and (II) Granting Other Related Relief)* Limited Objection of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. to Debtor's Motion for Entry of an Order Authorizing the Public Lighting Authority Transaction* Filed by Interested Parties Syncora Capital Assurance Inc., Syncora Guarantee Inc. (Attachments: # 1 Exhibit 1 – Presentation to the City of Detroit) (Bennett, Ryan) (Entered: 11/06/2013) |
| 11/07/2013 | | 1574 | Response to (related document(s): 1341 Motion */ Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to Enter into and Perform under Certain Transaction Documents with the Public Lighting Authority and (II) Granting Other Related Relief)* (Joinder in the Limited Objection of Syncora Guarantee Inc. and Syncora |

| | | | |
|---|---|---|---|
| | | | *Capital Assurance Inc. to Debtors Motion for Entry of an Order Authorizing the Public Lighting Authority Transaction)* Filed by Interested Party Ambac Assurance Corporation (Cohen, Carol) (Entered: 11/07/2013) |
| 11/08/2013 | | <u>1603</u> | Concurrence / *Joinder of the Michigan Council 25 of the American Federation of State, County &Municipal Employees, AFL−CIO and Sub−Chapter 98, City of Detroit Retirees to the Limited Objection of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. to the Debtors Motion for Entry of an Order Authorizing the Public Lighting Authority Transaction* Filed by Creditor Michigan Council 25 Of The American Federation of State, County &Municipal Employees, AFL−CIO and Sub−Chapter 98, City of Detroit Retirees (RE: related document(s)<u>1341</u> Motion / *Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to Enter into and Perform under Certain Transaction Documents with the Public Lighting Authority and (II) Granting Other Related Relief,* <u>1557</u> Objection). (Levine, Sharon) (Entered: 11/08/2013) |
| 11/08/2013 | | <u>1615</u> | Concurrence / *Joinder of FMS Wertmanagement to the Limited Objection of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. to Debtor's Motion for Entry of an Order Authorizing the Public Lighting Authority Transaction* Filed by Creditor FMS Wertmanagement. (Newbury, Karen) (Entered: 11/08/2013) |
| 11/11/2013 | | <u>1636</u> | Concurrence *Joinder in Limited Objection of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. to Debtor's Motion for Entry of an Order Authorizing the Public Lighting Authority Transaction* Filed by Creditors Erste Europaische Pfandbrief− und Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A., Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A. (RE: related document(s)<u>1557</u> Objection). (Summers, Matthew) (Entered: 11/11/2013) |
| 11/11/2013 | | <u>1638</u> | Motion *Motion of the Objectors for (I) Clarification Regarding the Purpose of the Hearing for Debtor's Motion for Entry of an Order Authorizing the Debtor to Enter into and Perform Under Certain Transaction Documents with the Public Lighting Authority and Granting Other Related Relief and (II) Leave to Conduct Limited Discovery* Filed by Interested Parties Syncora Capital Assurance Inc., Syncora Guarantee Inc. (Attachments: #<u>1</u> Index − Summary of Attachments #<u>2</u> Exhibit 1 − Proposed Form of Order #<u>3</u> Exhibit 2 − Notice of Motion and Opportunity to Object #<u>4</u> Exhibit 3 − None [Brief Not Required] #<u>5</u> Exhibit 4 − None [Separate Certificate of Service to be Filed] #<u>6</u> Exhibit 5 − Affidavits [Not Applicable] #<u>7</u> Exhibit 6 − Documentary Exhibits [Not Applicable]) (Hackney, Stephen) (Entered: 11/11/2013) |
| 11/11/2013 | | <u>1639</u> | Motion to Expedite Hearing (related documents <u>1638</u> Generic Motion) *Ex Parte Motion for Shortened Notice and Expedited Hearing on the Motion of the Objectors for (I) Clarification Regarding the Purpose of the Hearing for Debtor's Motion for Entry of an Order Authorizing the Debtor to Enter into and Perform Under Certain Transaction Documents with the Public Lighting Authority and Granting Other Related Relief and (II) Leave to Conduct Limited Discovery* Filed by Interested Parties Syncora Capital Assurance Inc., Syncora Guarantee Inc. (Attachments: #<u>1</u> Exhibit 1 − Proposed Order) (Hackney, Stephen) |

| | | | |
|---|---|---|---|
| | | | (Entered: 11/11/2013) |
| 11/12/2013 | | 1661 | Order Denying Motion for Clarification and Motion to Expedite Hearing (Related Doc # 1638). (jjm) (Entered: 11/12/2013) |
| 11/30/2013 | | 1877 | Transcript regarding Hearing Held 11/27/13 RE: Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to Enter Into and Perform Under Certain Transaction Documents with the Public Lighting Authority and (II) Granting Other Related Relief (Docket #1341). THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 91 DAYS AFTER THE DATE OF FILING, TRANSCRIPT RELEASE DATE IS 03/3/2014. Until that time, the transcript may be viewed at the Clerk's Office by parties who do not receive electronic notice and participated in the proceeding. A copy of the transcript may be purchased from the official court transcriber Lois Garrett at 517.676.5092. (RE: related document(s) 1837 Transcript Request, 1841 Transcript Request, 1843 Transcript Request, 1848 Transcript Request). Redaction Request Due By 12/23/2013. Redacted Transcript Submission Due By 12/30/2013. Transcript access will be restricted through 03/3/2014. (Garrett, Lois) (Entered: 11/30/2013) |
| 12/02/2013 | | 1884 | Transcript Order Form of Hearing November 27, 2013, Filed by Interested Parties Syncora Capital Assurance Inc., Syncora Guarantee Inc.. (Bennett, Ryan) (Entered: 12/02/2013) |
| 12/04/2013 | | 1939 | Supplemental Objection *To Joinder of The Official Committee of Retirees To The Limited Objection Of Syncora Guarantee Inc. and Syncora Capital Assurance In. To Debtor's Motion For Entry Of An Order Authorizing The Public Lighting Authority Transaction* Filed by Retiree Committee Official Committee of Retirees (RE: related document(s)1341 Motion *Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to Enter into and Perform under Certain Transaction Documents with the Public Lighting Authority and (II) Granting Other Related Relief,* 1557 Objection, 1713 Concurrence). (Montgomery, Claude) (Entered: 12/04/2013) |

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
-------------------------------------------------------x
                                                       :
In re                                                  : Chapter 9
                                                       :
CITY OF DETROIT, MICHIGAN,                              : Case No. 13- 53846
                                                       :
                            Debtor.                    : Hon. Steven W. Rhodes
                                                       :
                                                       :
-------------------------------------------------------x
```

### DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO ENTER INTO AND PERFORM UNDER CERTAIN TRANSACTION DOCUMENTS WITH THE PUBLIC LIGHTING AUTHORITY AND (II) GRANTING OTHER RELATED RELIEF

The City of Detroit, Michigan (the "Debtor" or the "City"), as the

debtor in the above-captioned case, submits this motion (the "Motion") for entry of

an order: (i) authorizing, pursuant to sections 105(a), 362, 364, 904(2) and 922 of

title 11 of the United States Code (the "Bankruptcy Code"), the City to enter into

and perform under (a) the Interlocal Agreement for the Construction and Financing

of a Public Lighting System (the "C&F Agreement") by and between the City and

the Public Lighting Authority (the "PLA"), (b) the Interlocal Agreement for the

Operation, Maintenance and Management of a Public Lighting System by and

between the City and the PLA (the "O&M Agreement" and, together with the C&F

Agreement, the "Interlocal Agreements") and (c) the Amended and Restated Trust

Agreement (the "Trust Agreement" and, together with the Interlocal Agreements, the "PLA Transaction Documents") by and among the City, the PLA, the Michigan Finance Authority (the "MFA") and Wilmington Trust, National Association (the "Trustee"), each in substantially the form attached hereto as Exhibits 6.1, 6.2 and 6.3, respectively; (ii) authorizing and approving a financing transaction for the benefit of the Debtor and the granting of a pledge and lien in, and the irrevocable transfer of, specified revenues of the Debtor under section 364(c)(2) of the Bankruptcy Code; and (iii) granting other related relief.[1]

The relief requested above is necessary for the City to facilitate the adequate financing of the PLA. The PLA is an integral component to the City's restructuring and future, as, upon consummation of the transactions contemplated under the PLA Transaction Documents (collectively, the "PLA Transaction"), the PLA will commence the improvement of the City's public lighting system and will assume operational control of the portions of the public lighting system the PLA improves. The City's public lighting system currently is in a state of disarray, and the PLA Transaction is the City's best viable option to fix its public lighting system

---

[1] This Motion includes certain attachments that are labeled in accordance with Rule 9014-1(b)(1) of the Local Rules of the Bankruptcy Court for the Eastern District of Michigan (the "Local Rules"). Consistent with Local Rule 9014-1(b), a copy of the proposed form of order granting this Motion is attached hereto as Exhibit 1. A summary identifying each included attachment by exhibit number is appended to this Motion.

and provide the level of lighting services that the City's residents expect.  As such, the City's ability to consummate the PLA Transaction is of utmost importance. **The City respectfully requests that the Court schedule a hearing on this Motion for the omnibus hearing scheduled on November 13, 2013 at 10:00 a.m., Eastern Time**.  In further support of this Motion, the City further respectfully represents as follows:

## General Background

1.      On July 18, 2013 (the "Petition Date"), the City filed a petition for relief in this Court, thereby commencing the largest chapter 9 case in history.

2.      Incorporated in 1806, Detroit is the largest city in Michigan. As of December 2012, the City had a population of less than 685,000 (down from a peak population of nearly 2 million in 1950).  Over the past several decades, the City has experienced significant economic challenges that have negatively impacted employment, business conditions and quality of life.

3.      As of June 30, 2013 — the end of the City's 2013 fiscal year — the City's liabilities exceeded $18 billion (including, among other things, general obligation and special revenue bonds, unfunded actuarially accrued pension and other postemployment benefit liabilities, pension obligation certificate liabilities and related derivative liabilities).  As of June 30, 2013, the City's accumulated unrestricted general fund deficit was approximately $237 million.

4. In February 2013, a state review team determined that a local government financial emergency exists in the City. Thereafter, in March 2013, Kevyn D. Orr was appointed, and now serves as, emergency manager with respect to the City (in such capacity, the "Emergency Manager") under Public Act 436 of 2012, the Local Financial Stability and Choice Act, MCL § 141.1541, *et seq*. ("PA 436"). Under Section 18(1) of PA 436, the Emergency Manager acts exclusively on behalf of the City in this chapter 9 case. MCL § 141.1558.

## The Public Lighting Authority Transaction

5. In 2012, the State legislature enacted Public Act 392 of 2012, the Municipal Lighting Authority Act, as amended, MCL § 123.1261, *et seq*. ("Act 392"). Act 392's primary purpose was to provide an equitable and reasonable method and means of financing, operating and maintaining public lighting systems for cities of a certain size, including the City. To accomplish its intended purpose, Act 392 specifically allows for the creation of separate public lighting authorities to provide the City and other cities with more favorable and efficient access to the credit markets, thus enabling such cities to obtain the financing necessary to operate and maintain effective public lighting systems.

6. In accordance with Act 392, on February 5, 2013, the City created the PLA, a separate municipal corporation, to manage and maintain the City's public lighting system. Section 21 of Act 392 provides the PLA with

authority to issue bonds (the "Act 392 Bonds") and to sell those bonds to the MFA.[2]  The PLA will use the proceeds of the Act 392 Bonds to construct and improve the public street lighting system of the City under the C&F Agreement. The PLA also will bear responsibility for the operation and maintenance of the portion of the City's public lighting system that the PLA has constructed and improved in accordance with the terms of the O&M Agreement.

7.     The City will continue levying a utility tax (the "Utility Tax") as permitted under Public Act of 1990, the Utility Users Tax Act, MCL §§ 141.1151 to 141.1177 ("Act 100").  The Utility Tax generates revenue collected by public utilities and resale customers and.  Upon issuance of the Act 392 Bonds, the City will irrevocably pledge and cause the existing and future revenue generated from the Utility Tax (the "Pledged Revenues") to be directed to the Trustee under the Trust Agreement as security for, and the primary source for the repayment of, the Act 392 Bonds.  Under Act 100 and Act 392, the total amount of the Pledged Revenues to which the PLA is entitled, in any calendar year, is the lesser of (i) $12.5 million and (ii) the total revenues generated by the Utility Tax.

---

[2]     The MFA intends to issue its own bonds (the "MFA Bonds") to one or more third-party lenders, including Citibank N.A., and use the proceeds of the MFA Bonds to purchase the Act 392 Bonds.  The MFA Bonds will be secured by the MFA's right to payment under the Act 392 Bonds.

8.      As required under Act 392, the City will enter into the Trust Agreement.  Pursuant to the Trust Agreement and the irrevocable directive of the Emergency Manager, the public utilities and resale customers that collect the Utility Tax for the City will transfer the Pledged Revenues to the Trustee directly.  Under Act 392 and the Trust Agreement, the Trustee will hold the Pledged Revenues in trust (the "Trust Fund").  The Trustee will use the Pledged Revenues as set forth in the Trust Agreement, including for the repayment of the Act 392 Bonds and the payment to the City of all Pledged Revenues in excess of $12.5 million that the Trustee collects in any calendar year.

9.      Under the PLA Transaction Documents and Act 392, the City has no liability for, and undertakes no full faith and credit obligation in connection with, the Act 392 Bonds or the C&F Agreement.  However, as described above, under the Trust Agreement and Act 392, the City is required to direct the transfer of all of the City's right, title and interest in the Pledged Revenues to the Trustee for the payment of the Act 392 Bonds.[3]  It is this transaction for which the City seeks authorization under sections 105(a) and 364(c) and (e) of the Bankruptcy Code.

---

[3]     Despite this pledge of the entirety of the revenues generated by the Utility Tax, Act 392 limits the amount of the Pledged Revenues that the PLA may utilize in any calendar year to $12.5 million, and the Trustee must disburse to the City all amounts in excess of $12.5 million.

## City Council and Emergency Loan Board Approval

10.     Pursuant to Section 12(1)(r) of PA 436, the Emergency

Manager may, subject to Section 19 of P.A. 436, " transfer . . . the responsibilities

of the local government."  Section 19(1) of PA 436 provides that an emergency

manager shall, prior to transferring the responsibilities of the local government,

submit his or her proposed action to the governing body of the local government

for approval.  Section 19(1) of PA 436 further provides the local governing body

with 10 days from the date of submission to approve or disapprove the action

proposed by the emergency manager.

11.     If the governing body of the local government disapproves the

proposed action within 10 days, Section 19(2) of PA 436 requires the governing

body of the local government, within 7 days of its disapproval, to submit to the

local emergency financial assistance loan board (the "Emergency Loan Board") an

alternative proposal that "would yield substantially the same financial result as the

action proposed by the emergency manager."  The Emergency Loan Board then

has 30 days to review both the alternative proposal submitted by the governing

body of the local government, as well as the proposal submitted by the emergency

manager and approve the proposal that "best serves the interest of the public."

12.     On October 23, 2013, the Emergency Manager issued Order

No. 18 (the "EM Order"), generally approving the PLA Transaction Documents

and authorizing the necessary actions contemplated thereunder. A copy of the EM Order is attached hereto as <u>Exhibit 6.4</u>. The EM Order serves as the submission to City Council of the Interlocal Agreements and directs City Council to either approve or disapprove the Interlocal Agreements within 10 days of such submission, based on the terms attached to the EM Order.[4] The PLA Transaction Documents, along with the Emergency Order, were hand-delivered to City Council on October 23, 2013.

13.     To the extent approved by City Council or the Emergency Loan Board, the City respectfully submits that no other or further consents are required under applicable Michigan law, and prior to closing, the Interlocal Agreements will be fully authorized in that regard.

## <u>Jurisdiction</u>

14.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## <u>Relief Requested</u>

15.     By this Motion, the City respectfully requests the entry of an order (i) authorizing, pursuant to sections 105(a), 362, 364, 904(2) and 922 of the

---

[4]     Except for the approval contained in the EM Order, the Trust Agreement requires no further approval under PA 436 or other applicable law.

Bankruptcy Code, the City to enter into and perform under the PLA Transaction Documents;[5] (ii) authorizing and approving a financing transaction for the benefit of the Debtor and the granting of a pledge and lien in, and the irrevocable transfer of, the Pledged Revenues under section 364(c)(2); and (iii) granting other related relief.

### **Basis for Relief Requested**

16.    The City seeks authorization to enter into and perform under the PLA Transaction Documents under sections 105(a), 362, 364, 904(2) and 922 of the Bankruptcy Code.  While the City does not believe it is required to seek approval of, or authority to enter into and perform under, the PLA Transaction Documents, the initial purchasers of the MFA Bonds, which among other things are secured by the Act 392 Bonds and the Pledged Revenues, require such approval and, thus, the City elected to seek such approval solely with respect to the relief requested in this Motion.

17.    The City also seeks approval of the transfer of all of its right, title and interest in the Pledged Revenues to the Trustee under the Trust Agreement in support of, as security for, and as the primary source for the repayment of, the

---

[5]    The City respectfully requests limited relief under sections 362 and 922 of the Bankruptcy Code, modifying the stay solely to the extent necessary to allow the parties to the PLA Transaction Documents to fully perform their obligations and exercise any rights and remedies they may have under the PLA Transaction Documents.

Act 392 Bonds under section 364(c)(2) of the Bankruptcy Code.  Finally, the City

seeks a determination that section 364(e) of the Bankruptcy Code applies to the

transactions contemplated under the PLA Transaction Documents, including the

City's pledge and grant of the lien in the Pledged Revenues.

A.    **The City's Entry Into the PLA Transaction Documents is Appropriate Under Sections 364(c) and 105(a) of the Bankruptcy Code**

18.    Section 364 of the Bankruptcy Code allows a debtor to pledge

assets as security for postpetition credit obligations regardless of whether such

obligations allow for recourse against a debtor.[6]  In this case, the City seeks the

authority and approval of the Court to the transfer of the Pledged Revenues, and

grant of a lien in any residual interest in the Pledged Revenues the City may

possess, to secure the non-recourse debt of the PLA under the Act 392 Bonds.  The

transfer of, and the grant of a lien in any residual interest in, the Pledged Revenues

is both collateral support for, and the source for the repayment of, the Act 392

Bonds – support that Act 392 creates and requires, and support that is to be

implemented under the PLA Transaction Documents for the benefit of the City, its

citizens and others.

---

[6]    A "debt" means liability on a claim, §101(12), and a "claim" includes a non-recourse claim.  Cf. Johnson v. Home State Bank, 501 U.S. 78 (1991) (mortgage that survived a chapter 7 discharge of the debtor's personal liability was a "claim" subject to inclusion in approved chapter 13 reorganization plan).

19.     Under sections 3.1 and 3.2 of the C&F Agreement, with the borrowings afforded by the Act 392 Bonds, the PLA has agreed to finance the cost to construct, improve, enlarge, reduce or extend the City's Public Lighting System for the benefit of the City.  The City has no liability to reimburse the PLA for these costs, nor does the City pledge its full faith and credit in connection with the Act 392 Bonds.  However, as means of implementing the financing necessary for the PLA to improve the public lighting system, under Act 392, section 4.2 of the C&F Agreement and the EM Order, the City must (i) direct the transfer of the Pledged Revenues to the Trust under the Trust Agreement and (ii) pledge in trust, and grant a lien in any residual interest of, the City's right, title and interest in the Pledged Revenues.  This directive to transfer, pledge in trust, and grant a lien in, the Pledged Revenues allows the Pledged Revenues to secure, and serve as the primary source for the repayment of, the Act 392 Bonds.

20.     Despite the City's directive to transfer all of the Pledged Revenues to the Trustee, Act 392 limits the amount of the Pledged Revenues that the PLA may utilize in any calendar year to $12.5 million.  As such, in any calendar year, the Trustee must disburse to the City all amounts of the Pledged Revenues in excess of $12.5 million under the terms of the Trust Agreement.

21.     The ability of the City to consummate the transactions contemplated under the PLA Transaction Documents (collectively, the "PLA

Transaction") is one of many essential components to the City's restructuring. In fact, it is well known that the City and its residents suffer from the City's inability to maintain the street light system. <u>See</u> Declaration of Kevyn D. Orr in Support of City of Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code at ¶ 33 (Docket No. 11). The PLA Transaction represents the City's best (and perhaps only) opportunity to remedy this public safety concern.

22. The Court's approval of the PLA Transaction is necessary for the Debtor, the PLA, the MFA and the Trustee to consummate the PLA Transaction successfully. Obtaining the Court's approval of the PLA Transaction is necessary to allow the MFA to successfully issue and sell the MFA Bonds.

23. Specifically, it is essential for the purchasers of the MFA Bonds that the Debtor receive an order from the Court determining, upon the City's execution of the PLA Transaction Documents and except as otherwise set forth in Act 100, Act 392 and the PLA Transaction Documents (including, without limitation, that the Trustee disburse to the Debtor all Pledged Revenues in excess of $12.5 million in any calendar year) that: (i) the Pledged Revenues will no longer constitute property of the City pursuant to the operation of Act 100 and Act 392; and (ii) the City will have no further claim to, interest in, or right to control the Pledged Revenues, to which the PLA is statutorily entitled pursuant to Act 100 and Act 392.

24.     Given the importance of the PLA Transaction to the City and its residents, the Debtor respectfully submits that it is appropriate for the Court to approve the PLA Transaction under sections 105(a) and 364(c) of the Bankruptcy Code and consents to seek such approval.

**B.     Section 364(e) Applies to the PLA Transaction**

25.     Given the nature of the PLA Transaction, it is equally important that the Court expressly find that the PLA Transaction Documents are the result of good faith, arms-length negotiations among the City, the PLA, the MFA and the initial purchasers of the MFA Bonds to ensure all parties that the PLA Transaction Documents and the pledge and transfer of, and lien on, the Pledged Revenues to secure, and provide the primary source for the repayment of, the Act 392 Bonds, is in "good faith" within the meaning of section 364(e), thus allowing the purchasers of the MFA Bonds to rely upon the protections afforded under section 364(e) of the Bankruptcy Code.

26.     Section 364(e) of the Bankruptcy Code states:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

27.     As the transaction described in the PLA Transaction Documents and the City's pledge and transfer of the Pledged Revenues in support of that transaction constitutes, subject to the limitations set forth in Act 100 and Act 392, the granting of a lien on all of the City's right, title and interest in the Pledged Revenues, for the reasons set forth above, section 364(e) of the Bankruptcy Code applies to the City's pledge and transfer of the Pledged Revenues.

28.     Further, the PLA Transaction Documents are the result of good faith, arms-length negotiations among the City, the PLA, the MFA and the initial purchasers of the MFA Bonds; and the MFA Bonds are payable from, and which bonds are secured by the right to payment under, payments on the Act 392 Bonds from the Pledged Revenues.  Each of those entities is acting in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

29.     Finally, as a practical matter, it appears that no potential purchaser of the MFA Bonds will make such purchase, and thus provide the financing necessary to consummate the lighting transaction under the PLA Transaction Documents and Act 392, in the face of an appeal, without the comfort of an order from this Court that section 364(e) applies.  As such, without a specific determination that section 364(e) applies in the instant situation, the initial

CHI-1908445v1
13-53846-tjt  Doc 2379-1    Filed 01/03/14    Entered 01/03/14 17:44:59    Page 19 of 50    19
13-53846-swr  Doc 1791    Filed 01/23/13    Entered 01/23/13 17:45:59    Page 19 of 50

purchasers of the MFA Bonds in this case, will only provide financing pursuant to a final and nonappealable order.

30.     As such, the mere filing of a notice of appeal of an order approving the PLA Transaction, regardless of how potentially meritorious or baseless such appeal may be, likely will delay unnecessarily the PLA Transaction for an extended period of time.  This result is precisely what section 364(e) is intended to avoid.  This transaction is too important to the public safety of the residents of Detroit and the City's overall restructuring to allow such a delay.

## Conclusion

31.     As set forth above, the authorization sought in this Motion will provide an immense and vital benefit to the City and its residents.  Further,  the City's request for the relief set forth herein represents a sound exercise of the City's business judgment and is in the best interest of the City, its creditors and other parties in interest.  Thus, the City respectfully submits that the granting of the Motion is appropriate under the instant circumstances.

## Reservation of Rights

32.     The City files this Motion without prejudice to or waiver of its rights pursuant to section 904 of the Bankruptcy Code, and nothing herein is intended to, shall constitute or shall be deemed to constitute the City's consent, pursuant to section 904 of the Bankruptcy Code, to this Court's interference with

(a) any of the political or governmental powers of the City, (b) any of the property or revenues of the City or (c) the City's use or enjoyment of any income-producing property.

## Notice

33.     Notice of this Motion has been given to all entities that have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (or their counsel if known) and all parties to the PLA Transaction Documents (or their counsel if known).  In addition, a copy of the Motion was served on the Office of the United States Trustee.  The City submits that no other or further notice need be provided.

## Statement of Concurrence

34.     Local Rule 9014-1(g) provides that "in a bankruptcy case unless it is unduly burdensome, the motion shall affirmatively state that concurrence of opposing counsel in the relief sought has been requested on a specified date and that the concurrence was denied."  Local Rule 9014-1(g).  Given the number of parties and potential parties involved in this case and the lack of known opposing parties who would be adversely impacted by the relief requested herein, it would be impracticable (and, with regard to unknown parties, impossible) for the City to affirmatively seek the concurrence of each opposing counsel interested in the relief sought herein.  Accordingly, the City submits that imposing the requirements of

Local Rule 9014-1(g) in this matter would be "unduly burdensome" and requests that its requirements be waived.

## **No Prior Request**

35.     No prior request for the relief sought in this Motion has been made to this or any other Court.

*[The Remainder of this Page is Intentionally Blank]*

WHEREFORE, the City respectfully requests that this Court: (a) enter an order substantially in the form attached hereto as <u>Exhibit 1</u> granting the relief sought herein; and (b) grant such other and further relief to the City as the Court may deem proper.

Dated:  October 23, 2013          Respectfully submitted,


 /s/ David G. Heiman
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

# SUMMARY OF ATTACHMENTS

The following documents are attached to this Motion, labeled in accordance with Local Rule 9014-1(b).

| | |
|---|---|
| Exhibit 1 | Proposed Form of Order |
| Exhibit 2 | Notice |
| Exhibit 3 | None [Brief Not Required] |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | None [No Affidavits Filed Specific to This Motion] |
| Exhibit 6.1 | C&F Agreement |
| Exhibit 6.2 | O&M Agreement |
| Exhibit 6.3 | Trust Agreement |
| Exhibit 6.4 | Emergency Manager Order |

# **EXHIBIT 1**

## **(Form of Proposed Order)**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                    :    Chapter 9
                                          :
CITY OF DETROIT,                          :    Case No.  13-53846
MICHIGAN,                                 :
                                          :    Hon. Steven W. Rhodes
    Debtor,                               :
                                          :

## ORDER (I) AUTHORIZING THE DEBTOR TO ENTER INTO AND PERFORM UNDER CERTAIN TRANSACTION DOCUMENTS WITH THE PUBLIC LIGHTING AUTHORITY AND (II) GRANTING OTHER RELATED RELIEF

This matter coming before the Court on the Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to Enter Into and Perform Under Certain Transaction Documents with the Public Lighting Authority and (II) Granting Other Related Relief (the "Motion"); whereas, in the Motion, the Debtor specifically requested an order (the "Order"):  (i) authorizing, pursuant to sections 105(a), 362, 364, 904(2) and 922 of title 11 of the United States Code (the "Bankruptcy Code"), the City of Detroit (the "Debtor") to enter into and perform under (a) the Interlocal Agreement for the Construction and Financing of a Public Lighting System by and between the Debtor and the Public Lighting Authority (the "PLA"), (b) the Interlocal Agreement for the Operation, Maintenance and Management of a Public Lighting System, by and between the Debtor and the PLA (subsections (a) and (b) collectively, the "Interlocal Agreements"), and (c) the Amended and Restated Trust

13-53846-swr  Doc 2379-1  Filed 01/03/14  Entered 01/03/14 17:41:55  Page 26 of 50
13-53846-swr  Doc 1341-2  Filed 10/23/13  Entered 10/23/13 17:19:55  Page 2 of 50     26

CHI-1908453v1

Agreement (the "Trust Agreement") by and between the Debtor, the PLA, the Michigan Finance Authority (the "MFA") and Wilmington Trust, National Association, each substantially in the form attached as Exhibits 6.1, 6.2 and 6.3 to the Motion , (the "PLA Transaction Documents"); (ii) authorizing and approving a financing transaction for the benefit of the Debtor and the granting of a pledge and lien in, and the irrevocable transfer of, specified Pledged Revenues (as defined in the Motion) of the Debtor under section 364(c)(2) of the Bankruptcy Code; and (iii) granting other related relief; the Court having reviewed the Motion and exhibits attached thereto and having held a hearing to consider the Motion; and the Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

A. <u>Jurisdiction and Venue</u>. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B. <u>Notice</u>. Notice of the Motion and the Hearing was sufficient and proper under the circumstances and no further notice is necessary.

C. <u>Authorization Appropriate</u>. The authorization sought in the Motion will benefit the Debtor and its citizens and is a sound exercise of the

13-53846-tjt Doc 23791-1 Filed 01/03/14 Entered 01/03/14 17:14:50 Page 27 of 50
13-53846-swr Doc 1341-2 Filed 10/23/13 Entered 10/23/13 17:19:55 Page 27 of 50   27
CHI-1908453v1

Debtor's business judgment, is in the best interest of the Debtor, its creditors and other parties in interest and is based on good, sufficient and sound business purposes and justifications.

D.     Bankruptcy Court Authorization.  The Bankruptcy Code permits, but does not require, the Debtor to seek this Court's authorization to enter into and perform under the PLA Transaction Documents.  Solely to the extent necessary to grant the relief requested in this Order, the Debtor has consented to the jurisdiction of the Court.  Under the circumstances of this case, the terms and conditions of this Order are fair and reasonable and will facilitate the Debtor's improvement of its public lighting system.

E.     Good Faith.  The PLA Transaction Documents are the result of good faith, arms-length negotiations among the Debtor, the PLA, the MFA and the initial purchasers of the MFA bonds (the "Initial Holders") issued by the MFA pursuant to Executive Order 2010-2 and the Shared Credit Rating Act, Act 227, Public Acts of Michigan 1985, as amended MCL 141.1051 et seq (the "MFA Bonds").  The PLA's issuance of the bonds (the "Act 392 Bonds") in connection with the PLA Transaction Documents and in accordance with the Municipal Lighting Authority Act, Act No. 392, Public Acts of Michigan 2012, as amended MCL § 123.1261, et seq, ("Act 392"), the MFA's issuance of the MFA Bonds and the extension of credit and purchase of the MFA Bonds by the Initial Holders of

13-53846-tjt  Doc 2379-1  Filed 01/03/14  Entered 01/03/14 17:41:50  Page 28 of 50
13-53846-swr  Doc 1341-2  Filed 10/23/13  Entered 10/23/13 17:11:55  Page 4 of 50     28
CHI-1908453v1

the MFA Bonds each represents an extension of credit in "good faith" within the meaning of section 364(e) of the Bankruptcy Code. In addition, the grant by the Debtor of a pledge and lien in, and the Debtor's irrevocable transfer of, its right, title and interest in the utility taxes that it levies pursuant to the Utility Users Tax Act, MCL 141.1151 to 141.1177 ("Act 100") to secure, and to provide a source for the repayment of, the Act 392 Bonds in connection with the PLA Transaction Documents and in accordance with Act 392 is in "good faith" within the meaning of section 364(e) of the Bankruptcy Code. As such, the PLA, the MFA and the Initial Holders of the MFA Bonds are entitled to the protections afforded under section 364(e) of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. Any objections to the entry of this Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

3. Pursuant to sections 105(a) and 364(c) of the Bankruptcy Code, the Debtor is authorized to enter into, and perform under, the PLA Transaction Documents and to otherwise satisfy the requirements of Act 100 and Act 392. The PLA Transaction Documents, substantially in the forms attached to the Motion,

13-53846-tjt Doc 2379-1 Filed 01/03/14 Entered 01/03/14 17:14:55 Page 29 of 50
13-53846-swr Doc 1341-2 Filed 10/23/13 Entered 10/23/13 17:19:55 Page 5 of 6
CHI-1908453v1
1
29

will constitute valid, binding and non-avoidable obligations of the Debtor enforceable against the Debtor in accordance with the terms of this Order, the PLA Transaction Documents, Act 100 and Act 392. The Debtor is authorized to perform and fulfill its respective obligations under the PLA Transaction Documents, Act 100 and Act 392.

4. The Debtor has taken, and is authorized to continue to take, all steps required of it under Act 392 to irrevocably instruct each public utility and resale customer collecting Pledged Revenues to irrevocably transfer the Debtor's interest in the Pledged Revenues to the trustee (the "Trustee") appointed under the Trust Agreement and remit and transfer the Pledged Revenues to the Trustee for the payment of the Act 392 Bonds, so that an amount of the Pledged Revenues not to exceed $12.5 million in any calendar year can be used only for the purposes set forth in the Trust Agreement and in accordance with Act 392. Except as set forth in Act 100, Act 392 and the PLA Transaction Documents, Pledged Revenues do not constitute property of the Debtor, and the Debtor has no right, claim or interest in or right to interfere with, control, or deal with in any manner the Pledged Revenues irrevocably transferred, or that will be transferred, to the Trustee.

5. Pursuant to section 364(c) of the Bankruptcy Code, upon execution of PLA Transaction Documents, the Pledged Revenues are, and will have been, validly pledged and irrevocably transferred to the Trustee and held in

13-53846-tjt  Doc 237  Filed 10/23/13  Entered 10/23/13 17:41:55  Page 30 of 50
13-53846-swr  Doc 1341-2  Filed 10/23/13  Entered 10/23/13 17:19:55  Page 6 of 50

CHI-1908453v1

5

30

trust for the benefit of the MFA and the Initial Holders of the MFA Bonds. As such, the provisions of section 921(e) of the Bankruptcy Code apply to the PLA Transaction Documents and to the PLA, the MFA and the holders of the MFA Bonds.

6. In connection therewith, the PLA, MFA and the Initial Holders of the MFA Bonds have extended credit to the Debtor and otherwise engaged in the financing transaction described herein in "good faith" within the meaning of section 364(e) of the Bankruptcy Code, and are entitled to all the rights, remedies, privileges and benefits provided for under section 364(e) of the Bankruptcy Code. If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay will not affect the validity or enforceability of the Act 392 Bonds, the MFA Bonds or any trust, pledge, lien or other security interest or priority authorized or created pursuant to the PLA Transaction Documents, Act 100, Act 392 or the documents governing the issuance of the MFA Bonds (the "MFA Bond Documents").

7. To the extent applicable, the automatic stay provisions of sections 362 and 922 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the PLA, the MFA or the holders of the MFA Bonds to effect the PLA Transaction Documents and comply with Act 100 and Act 392 and to enforce all of their respective rights, remedies, liens and security interests under

13-53846-tjt Doc 237-1 Filed 10/23/13 Entered 10/23/13 17:14:55 Page 37 of 50
13-53846-swr Doc 1341-2 Filed 10/23/13 Entered 10/23/13 17:19:55 Page 37 of 50
CHI-1908453v1
6
31

the PLA Transaction Documents, the MFA Bond Documents or under Act 100 or Act 392 and to exercise all rights and remedies under the PLA Transaction Documents, the MFA Bond Documents or under Act 100 or Act 392.

8.      This Order and all rights and remedies of the PLA, the MFA and the holders of the MFA Bonds under this Order shall remain effective and may not be modified, impaired or discharged, notwithstanding the authority of the Emergency Manager of the Debtor to act on behalf of and bind the Debtor, the dismissal of this case, or the confirmation of, or failure to confirm, any plan of adjustment in this case.

9.      No party will be required to file any claim or proof of claim in this case respecting its rights or interests in the matters approved by this Order.

10.     This Order will be effective immediately upon its entry.

# **EXHIBIT 2**

## **(Notice)**

CHI-1908445v1

13-53846-tjt   Doc 2379-1   Filed 01/03/14   Entered 01/03/14 17:41:50   Page 33 of 50
13-53846-swr   Doc 1341-3   Filed 10/23/13   Entered 10/23/13 17:19:55   Page 3 of 4      33

Form B20A (Official Form 20A)
12/1/10

**UNITED STATES BANKRUPTCY COURT**
**Eastern District of Michigan**

In re:

**CITY OF DETROIT, MICHIGAN,**

                                    **Chapter: 9**

                                    **Case No.: 13-53846**

                    **Debtor.**

                                    **Judge:  Hon. Steven W. Rhodes**

Address:  2 Woodward Avenue, Suite 1126
          Detroit, Michigan  48226

Last four digits of Social Security or
Employer's Tax Identification (EIN) No(s).(if any):  38-6004606

**NOTICE OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE
DEBTOR TO ENTER INTO AND PERFORM UNDER CERTAIN TRANSACTION DOCUMENTS
WITH THE PUBLIC LIGHTING AUTHORITY AND (II) GRANTING OTHER RELATED RELIEF**

        The City of Detroit, Michigan (the "City") has filed papers with the Court seeking entry of an order
(i) authorizing the City to Enter Into and Perform Under Certain Transaction Documents with the Public Lighting
Authority and (ii) Granting Other Related Relief.

        **Your rights may be affected.  You should read these papers carefully and discuss them with your
attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult
one.)**

        If you do not want the court to grant the relief sought in the motion, or if you want the court to consider
your views on the motion, **on or by November 6, 2013**, you or your attorney must:

1.              File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 W. Fort Street, Suite 2100
Detroit, Michigan  48226

        If you mail your response to the court for filing, you must mail it early enough
        so the court will **receive** it on or before the date stated above.  All attorneys are
        required to file pleadings electronically.

---

[1]        Any response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

CHI-1908445v1

13-53846-swr  Doc 2373-1  Filed 01/03/14  Entered 01/03/14 17:41:50  Page 34 of 50
13-53846-swr  Doc 1341-3  Filed 10/23/13  Entered 10/23/13 17:19:55  Page 2 of 4        34

You must also mail a copy to:

David G. Heiman
Heather Lennox
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114

and

Bruce Bennett
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071

2.      If a response or answer is timely filed and served, the Court will schedule a hearing on the motion
and you will be served with a notice of the date, time and location of the hearing.  The City has
requested that the Court schedule a hearing date with respect to the motion of **November 13, 2013**
at 10:00 a.m., Eastern Time, or sooner, if the Court's schedule permits.

**If you or your attorney do not take these steps, the Court may decide that you do not oppose the
relief sought in the motion or objection and may enter an order granting that relief.**

CHI-1908445v1

13-53846-swr   Doc 2379-1   Filed 01/03/14   Entered 01/03/14 17:14:50   Page 35 of 50
13-53846-tjt   Doc 1341-3   Filed 10/23/13   Entered 10/23/13 17:19:55   Page 3 of 4      35

Dated:   October 23, 2013                    Respectfully submitted,


/s/  David G. Heiman_____
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com


ATTORNEYS FOR THE CITY

CHI-1908445v1

13-53846-tjt   Doc 2379-1   Filed 01/03/14   Entered 01/03/14 17:14:50   Page 36 of 50
13-53846-swr   Doc 1341-3   Filed 10/23/13   Entered 10/23/13 17:19:55   Page 40 of 44      36

# **EXHIBIT 4**

## **(Certificate of Service)**

## <u>CERTIFICATE OF SERVICE</u>

I, David G. Heiman, hereby certify that the foregoing Debtor's Motion for Entry of an Order (i) Authorizing the Debtor to Enter Into and Perform Under Certain Transaction Documents with the Public Lighting Authority and (ii) Granting Other Related Relief was filed and served via the Court's electronic case filing and noticing system on this 23rd day of October, 2013.

/s/  David G. Heiman

# **EXHIBIT 6.1**

# **(C&F Agreement)**

CHI-1908445v1

13-53846-swr  Doc 1541-5  Filed 10/23/13  Entered 10/23/13 17:15:05  Page 1 of 50    39
13-53846-tjt  Doc 2379-1  Filed 01/03/14  Entered 01/03/14 17:41:50  Page 39 of 50

**INTERLOCAL AGREEMENT**

BETWEEN

**THE CITY OF DETROIT**

AND THE

**PUBLIC LIGHTING AUTHORITY**

FOR THE

**CONSTRUCTION AND FINANCING
OF A
PUBLIC LIGHTING SYSTEM**

The following recitals are made regarding this interlocal agreement between the City of Detroit, a Michigan municipal corporation (the "City"), and the Public Lighting Authority, a Michigan municipal corporation (the "Authority", together with the City, the "Parties" and each a "Party"):

WHEREAS, the City has properly incorporated the Authority pursuant to the Michigan Municipal Lighting Authority Act, 2012 PA 392, MCL 123.1261 *et seq.* ("Act 392") for the purpose of providing an equitable and reasonable method and means of financing, operating, and maintaining a lighting system in sufficient quantities within the City; and

WHEREAS, Act 392 and the Urban Cooperation Act, 1967 PA 7, MCL 124.501 *et seq.*, each authorize interlocal public agency agreements between a city and a public lighting authority; and

WHEREAS, the governor of the state of Michigan has appointed an emergency manager ("Emergency Manager") for the City pursuant to the Local Financial Stability and Choice Act, 2012 PA 436, MCL 141.1541 – 1575. ("EM Act"); and

WHEREAS, the EM Act provides that the Emergency Manager shall have broad powers in receivership to rectify the financial emergency of the applicable local government and to assure the fiscal accountability of the local government and the local government's capacity to provide or cause to be provided necessary governmental services essential to the public health, safety, and welfare; and

WHEREAS, the City and the Authority desire to enter into this Agreement for the purposes, among other things, of defining the roles and responsibilities of each of the Parties with respect to the construction and financing of a public lighting system within the City for the benefit of residents of and visitors to the City; and

WHEREAS, the City, the Authority and Trustee have entered into the Trust Agreement whereby the Utility Taxes collected pursuant to Act 100 are deposited with the Trustee to be disbursed pursuant to the Authority's instructions, subject to the terms and conditions of the Trust Agreement; and

WHEREAS, the City, the Authority, the Michigan Finance Authority, and the Trustee will; contemporaneously herewith, enter into the Amended and Restated Trust Agreement, which will terminate and supersede the Trust Agreement; and

WHEREAS, the Emergency Manager issued Order No. 6 and Order No. 14, affirming the creation of the Authority and the execution of the Trust Agreement; and

WHEREAS, the Emergency Manager will, contemporaneously herewith, issue Order No. [___], affirming the execution of the Amended and Restated Trust Agreement.

NOW THEREFORE, in consideration of the mutual covenants and promises contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

# ARTICLE I
## DEFINITIONS

**Section 1.1     Definitions**.  As used in this interlocal agreement:

"Act 100" means the City Utility Users Tax Act, 1990 PA 100, MCL 141.1151 to MCL 141.1177.

"Act 392" has the meaning set forth in the Recitals to this Agreement.

"Agreement" means this Interlocal Agreement for the Construction and Financing of a Public Lighting System by and between the City and the Authority.

"Amended and Restated Trust Agreement" means that certain agreement that will be entered into contemporaneously herewith by and among the City, the Authority, the Michigan Finance Authority, and the Trustee pursuant to Act 392 and Act 100.

"Ancillary Facility" shall mean "Ancillary facility" as defined in Act 392.

"Bond Indenture" means any bond or trust indenture entered into by the Authority and a bank, financial institution, or other entity pursuant to which the Authority bonds (including the Utility Bonds) as authorized by Act 392 will be issued, refunded, or reissued.

"City Council" means the legislative body of the City of Detroit, established by §4-101 of the 2011 City Charter.

"Contractors" means any third party contractors who have entered into agreements to provide services to the Authority, notwithstanding whether those agreements are directly with the Authority or as a subcontractor to a prime contractor of the Authority.

"Effective Date" means the date described in Section 7.1.

"Excess Revenue" has the meaning set forth in Section 3.2.

"Financing Costs" means the costs, including, without limitation, principal, interest, accreted value, if any, premium, if any, the costs of replenishing reserves, if any, and costs of issuance, payable in respect of any Utility Bonds issued by the Authority or any Ancillary Facility entered into by the Authority pursuant to Act 392 and Act 100, which Financing Costs are subject to the first sentence of Section 5.2 hereof.

"Improvements" or "Work", means all of the work, investments, and activities made or conducted, in whole or in part, on the construction, improvement, enlargement, reduction or extension of the System as contemplated by this Agreement or Act 392 and undertaken in compliance with the Lighting Plan approved by the City Council pursuant to Act 392, as amended.

"Initial Work" means the implementation of the Lighting Plan in the pilot projects the Authority will complete by December 31, 2013, which are further described on Exhibit 2, attached hereto and made a part hereof.

"Lighting Plan" means the plan required under MCL §123.1277.

"MFA" means the Michigan Finance Authority created by Executive Reorganization Order No. 2010-2.

"Revenue Bonds" means the bonds authorized pursuant to Act 392 and this Agreement and not secured by the Utility Taxes.

"System" means all of the luminaires, lamps, photocells, brackets, conductors, lights, poles and foundations, ballasts, circuits, transformers, conduits, underground equipment that are not part of the distribution system, and other equipment and appurtenances, including any easements or other interests in real property, commencing at the point of connection to the electric distribution system and continuing to the luminaire, necessary for the operation of the street lights within the City. For the avoidance of doubt, the System includes any Improvements to it. This definition specifically excludes the Mistersky Power Plant, any distribution assets of the City or DTE Energy, and any transmission assets of the City or DTE Energy, including any and all wires, distribution poles, transmission poles, substations, and transformers used for the distribution or transmission of electricity.

"Trust Agreement" means that certain Trust Agreement, as amended, entered into between the Authority, the City, and the Trustee, executed and effective as of August 1, 2013, which will terminate upon the execution of, and be superseded by, the Amended and Restated Trust Agreement.

"Trustee" means Wilmington Trust, N.A., as trustee pursuant to the Trust Agreement and the Amended and Restated Trust Agreement.

"Utility Bondholder" means any holder of a Utility Bond.

"Utility Bonds" means any bonds issued by the Authority pursuant to Act 392, Act 100 and the Amended and Restated Trust Agreement and secured by a pledge of Utility Taxes.

"Utility Revenues" means the revenues collected pursuant to Act 100, the Amended and Restated Trust Agreement and the Bond Indenture in the annual amount up to Twelve Million, Five Hundred Thousand Dollars and zero/100 ($12,500,000.00).

"Utility Taxes" means the taxes authorized to be levied by the City of Detroit pursuant to Act 100.

**Section 1.2    Captions and Headings**.   The captions, headings, and titles in this Agreement are intended as a convenience and not intended to have any substantive meaning or be interpreted as part of this Agreement.

**Section 1.3    Plural Terms**.   A term or phrase in this Agreement importing the singular number only may extend to and embrace the plural number and every term or phrase importing the plural number may be applied and limited to the singular number.

## ARTICLE II
## ASSURANCES

**Section 2.1    Assurances by the City**.   The City hereby makes the following assurances, representations, and warranties:

(a) That the Utility Taxes, authorized to be collected pursuant to Act 100, have been properly levied by the City in full compliance with the requirements of Act 100.

(b) Except as contemplated herein, that all necessary permissions, approvals, reviews, or any other forms of acquiescence necessary to authorize the City to enter into this Agreement have been obtained and conducted.

(c) To the extent permitted by law and any agreement to which the City is a party, the City shall use commercially reasonable efforts to provide all information within its control requested by the Authority to the Authority necessary to effectuate the purposes of this Agreement, including taking actions and providing certifications to effectuate the issuance of debt by the Authority as further described in Section 5.6 of this Agreement.

**Section 2.2    Assurances by the Authority**.   The Authority hereby makes the following assurances, representations, and warranties:

(a) That the organizational structure necessary to implement the Lighting Plan is established.

(b) That all funds shall be expended and accounted for according to generally accepted accounting standards for governmental entities.

(c) That the construction, improvements, enlargements, reductions or extensions of the System shall be completed within reasonable conformance to the Lighting Plan, accommodating any unforeseen conditions according to the objectives of the Lighting Plan.

(d) That the Authority shall take reasonable actions to reduce and limit the costs associated with this Agreement, including future System operating costs.

(e) The Authority shall use reasonable efforts, subject to the availability of funding and operational considerations, to ensure that the Pilot Work is substantially completed by December 31, 2013 and that the Lighting Plan in effect as of the date hereof or as properly amended, is completed in substantial conformity therewith as prescribed by statute.

(f) To the extent permitted by law and any agreement to which the Authority is a party, the Authority shall use commercially reasonable efforts to provide all information within its control requested by the City to the City necessary to effectuate the purposes of this Agreement.

## ARTICLE III
## CONSTRUCTION OF THE PUBLIC LIGHTING SYSTEM

**Section 3.1    The System**.  The Authority shall undertake the Work pursuant to the terms of this Agreement and the Lighting Plan.  The Authority shall coordinate and receive input from the City, the Emergency Manager and third parties with an interest in the retail distribution and transmission systems within the city to ensure technological compatibility between the portion of the System being upgraded and the distribution and transmission systems necessary to provide electricity to such upgraded portions of the System.  The Authority will conduct a field survey and research of the existing System to determine the actual condition of the System and to identify the components that need repair, improvement, enlargement, reduction, or extension.  The results of this survey and research will be integrated into the Lighting Plan.  All work will be kept within allowable limits of funding. Acceptance of the project shall be based upon the work being completed within reasonably close conformance to the plans and specifications.  For any contract with a value that equals or exceeds $100,000, other than contracts for services that are exempt from a competitive requirement under Michigan law, the Authority shall award such contracts pursuant to a competitive process.  For purposes of determining such $100,000 threshold, the value of any contracts entered into during any twelve month period that relate generally to the same subject matter shall be aggregated for determining if such contracts exceed the $100,000 threshold and are thus subject to award pursuant to a competitive process.

**Section 3.2    Costs and Financing**.  The costs of construction of the Improvements shall be paid for with the Utility Bonds.  The City does not pledge its full faith and credit to any Utility Bonds authorized under this Agreement.  The Parties agree that the Authority may finance the Initial Work with Utility Revenues it receives pursuant to the Trust Agreement, prior to the issuance of Utility Bonds.  In the event the Authority (i) does not issue Utility Bonds or (ii) issues Utility Bonds and the Utility Revenues are in excess of the amounts required to pay Financing Costs ("Excess Revenue"), the Parties agree the Authority may expend such Excess Revenue on any of the Improvements to the System contemplated by Act 392 or for any other lawful purpose under Act 392 consistent with the Lighting Plan.

**Section 3.3    Third-Party Attachments, Fixtures, and Other Property**.    The Authority shall conduct its activities under this Article in a manner so as not to impair any leases or other contractual rights of third parties to attach any fixtures or other property to System assets.

P a g e | **6 of 15**

13-53846-tjt  Doc 2379-1  Filed 01/03/13  Entered 01/03/14 17:14:50  Page 45 of 50      45
13-53846-swr  Doc 1541-5  Filed 11/03/13  Entered 11/03/13 17:15:05  Page 47 of 50

The Authority shall relocate any third party fixtures or other property to the extent required by, and subject to the terms of, the applicable agreement with the third party. The Authority shall be entitled to all access and relocation rights of the City under such agreements, including reimbursement for fixture relocation costs. Notwithstanding the foregoing, in connection with the Work, the Authority, at its expense, shall relocate all fixtures or other property of the City attached to or on System assets to improved System assets in a manner that is reasonably acceptable to the City. To the extent permitted by law, and subject to Section 11.11, the Authority agrees to defend, indemnify and hold the City harmless, from and against any and all losses, damages, claims, suits, proceedings, liabilities, and out-of-pocket costs and expenses (including settlement costs, interest, penalties, reasonable attorneys' fees and any reasonable legal or other expenses for investigation or defense of any actions or threatened actions) that are actually sustained or incurred by the City and that arise out of any actions or omissions taken by the Authority pursuant to this Section 3.3

**Section 3.4    Operation of Lighting System**.  Nothing in this Agreement is intended to convey any operational duties or responsibilities from the City to the Authority. The Parties acknowledge and agree that the Authority has no obligation to pay any costs of operating or maintaining the System or any portion thereof. The City shall remain responsible for the operation, maintenance, and upkeep of the entire System, and for all costs associated therewith, including those portions of the System that are constructed, improved, enlarged, reduced or extended pursuant to this Agreement. The City shall also be responsible for providing, or contracting for the provision of, and paying the costs for, the quantity and quality of electricity necessary for the proper operation of the System. Notwithstanding the foregoing, the Parties may contemporaneously herewith or subsequently agree to transfer certain operational responsibilities to the Authority by the execution of a separate operations and maintenance agreement; provided however, that to the extent the Parties so contract, to the extent that the Authority undertakes any operational, maintenance or management obligations, the Authority and the City must identify a source of revenues for such undertakings other than the Utility Revenues needed to pay Financing Costs, which requirement may be satisfied by the City's payment from such other revenue source in advance.

**Section 3.5    Public Property and Ownership**.  All property of the Authority is public property devoted to an essential public and governmental purpose. All income of the Authority is for a public and governmental purpose. Nothing in this Agreement shall be construed as transferring the ownership of any lighting system assets owned by the City to the Authority.

**ARTICLE IV**
**FINANCE**

**Section 4.1    Ratification of Direction of Funds**.  The City hereby ratifies the direction established under that certain Trust Agreement to each public utility and resale customer that collects or receives revenues pursuant to Act 100 to remit payment of all such revenues to the Trustee. For the avoidance of doubt, the Parties agree that regardless of the stated effective date of the Trust Agreement that the Trust Agreement was fully executed and effective on August 1, 2013, shortly after the Emergency Manager issued Order No. 14 authorizing the Trust Agreement.

**Section 4.2     Pledge of Utility Taxes**.  The City hereby pledges the Utility Taxes to the Utility Bonds, provided that funds from the Utility Taxes transferred to the City Disbursement Fund pursuant to the Trust Agreement or the Amended and Restated Trust Agreement shall be free and clear of all liens as more particularly described in the Amended and Restated Trust Agreement.

**Section 4.3     No Exemptions**.  The City shall not permit or authorize any exemption not authorized and in effect on the date of issuance of the first series of Utility Bonds to the tax assessed under Act 100 for any end user required to pay such assessment under Act 100.

**Section 4.4     Disbursement and Expenditure of Funds**.  Revenues from Utility Taxes shall be applied by the Trustee pursuant to the Trust Agreement or the Amended and Restated Trust Agreement, as applicable.  The Authority may expend the Excess Revenue on any of the Improvements to the System contemplated by Act 392 or for any other lawful purpose under Act 392 consistent with the Lighting Plan.

**Section 4.5     Orderly Collection of Utility Taxes.**  The City shall take all steps reasonably necessary to ensure the orderly collection of Utility Taxes so that they are deposited pursuant to the Trust Agreement or the Amended and Restated Trust Agreement, as applicable.

**Section 4.6     Tax Covenant.**  The Authority may temporarily invest any bond proceeds or other funds held by it as permitted by law, and investment income shall accrue to and follow the fund producing such income.  Neither the Authority nor the City shall invest, reinvest, or accumulate any moneys deemed to be proceeds of the bonds pursuant to applicable federal law and regulations, in such a manner as to cause the bonds to be "arbitrage bonds" within the meaning of said law and regulations, nor shall either take or fail to take any actions which would cause the interest on the bonds to be included in gross income for federal income taxation purposes.  The City agrees that, to the extent Utility Bonds are issued on a "tax-exempt" basis, it will use reasonable efforts to cooperate with the Authority to maintain that status, including but not limited to, executing a non-arbitrage and tax compliance certificate(s) and any other documents determined necessary or advisable to the Authority's counsel.

**Section 4.7     Authority Revenue**.  For the avoidance of doubt, and notwithstanding anything to the contrary set forth in this Agreement, regardless of the pledge by the City of the Utility Taxes pursuant to Section 4.2, the amount payable to the Authority for repayment of the Utility Bonds in any one year shall be limited to the Utility Revenues for that year.

## ARTICLE V
## BONDS, DEBTS, AND SECURITIES

**Section 5.1     Issuance of Bonds, Debts, or Other Securities.**  Subject to the requirements of Act 392, the Amended and Restated Trust Agreement, any Bond Indenture, and this Agreement, the Authority is authorized to issue or refund bonds, debts, securities, and other forms of indebtedness, or may otherwise enter into other agreements obligating itself to repayment of debt.

**Section 5.2    Limitation on Bond Issuance**.  The Authority shall not issue, or cause to be issued Utility Bonds: (i) in an amount that shall require payments from the Utility Revenues of the Financing Costs in excess of Twelve Million, Five Hundred Thousand Dollars, and Zero Cents ($12,500,000.00) in any single year; or (ii) in an aggregate principal amount that exceeds five percent (5%) of the total state equalized valuation of the property assessed in the City.  This limitation on the issuance of Utility Bonds in no way limits the ability of the Authority to finance the costs of operating, maintaining, or managing the System by issuing Revenue Bonds to the extent that the City and the Authority have entered into such a contract for such purpose in accordance with Section 3.4.

**Section 5.3    Nonimpairment of Bondholder Security**.  The City shall not take any action that may impair the security of bondholders in repayment of the Utility Bonds, any Ancillary Facilities or other debt obligations authorized hereunder. Such impairment includes, but is not limited to, a reduction of the tax authorized and in effect on the date of issuance of the first series of Utility Bonds pursuant to Act 100, or a reduction in category of taxpayers required to pay the Utility Taxes.  Nothing in this section shall be construed as a limitation on the City's power to increase the tax authorized under Act 100 or to broaden the category of taxpayers required to pay the Utility Taxes.

**Section 5.4    Revised Municipal Finance Act**.  This Agreement, and any bonds, debts, or other securities issued under or pursuant to this Agreement, are not subject to the Revised Municipal Finance Act, 2001 PA 34, MCL 141.2401 to 141.2821.

**Section 5.5    Revenue Bond Act**.  This Agreement, and any bonds, debts, or other securities issued under or pursuant to this Agreement, are not, subject to the Revenue Bond Act of 1933, 1933 PA 94, MCL 141.101 to 141.140.

**Section 5.6    Enforceability Opinions/Certificates**.  The City agrees that in connection with the issuance of any Utility Bonds by the Authority it will cause its corporation counsel or outside counsel to deliver an enforceability opinion as to this Agreement and the Amended and Restated Trust Agreement.  The City also agrees to deliver customary forms of certificates as to the due authorization, execution and enforceability of this Agreement and the Amended and Restated Trust Agreement and other certificates as are necessary or advisable in connection with the issuance of any Utility Bonds.

## ARTICLE VI
## DATA SHARING, ACCESS, COOPERATION, PERMITS, AND SYSTEM PROTECTION

**Section 6.1    Data and Information**.   To the extent permitted by law and any agreements to which the City is a party, the City shall provide the Authority full access to all data and information in its possession or control, which is reasonably accessible, including all data and information contained in the documents commonly known as the "series streetlight maps," necessary to provide the Work.  To the extent permitted by law and any agreements to which the Authority is a party, the Authority shall provide the City full access to all data in the Authority's possession or control, which is reasonably accessible, reasonably related to the System.  The

P a g e | **9 of 15**

13-53846-swr   Doc 2379-1   Filed 01/02/14   Entered 01/02/14 17:41:55   Page 48 of 50
13-53846-swr   Doc 2334-15   Filed 10/23/13   Entered 10/23/13 17:15:55   Page 48 of 50    48

Authority shall provide notice to the City of recent Improvements made and shall, on a continuing basis, provide notice to the City on future Improvements.

**Section 6.2     Access to Assets**.  The City shall provide the Authority or any of its Contractors full access to all facilities, assets, easements, appurtenances, and related rights and property, owned, operated, or maintained by the City necessary to design, establish, construct, operate, and maintain the System on behalf of the City. The Authority shall permit the City full access to all facilities, assets, easements or appurtenances owned, operated, or maintained by the Authority related to the System, if any, and shall not impair access to any public rights of way.

**Section 6.3     Cooperation**.  The Parties hereby agree to use commercially reasonable efforts to cooperate with each other to the fullest extent possible to effectuate the purposes of this Agreement.

**Section 6.4     Permits**.  The City shall process and issue any permit(s) required under the City Charter, the City Code of Ordinances, or any other local regulatory requirements to the Authority, its employees, agents, or Contractors within fifteen (15) business days of receiving a request for such permit(s) provided that such request includes the detail and documentation otherwise required to issue such permit; *provided, however*, that if there are any permit(s) required to conduct any work specified herein that are not within the direct control of the City, the City shall use commercially reasonable efforts to ensure that such permits are issued within a commercially reasonable timeframe.  The City shall not charge a fee to the Authority for any permits, approvals, reviews, or other actions required by the City.

**Section 6.5     System Damage**.  The Authority shall not be responsible for any damage to the System, or any component thereof, resulting from the criminal, intentional, or negligent acts of any third parties.  In the event any portion of the System or Improvements are damaged by the negligent acts of a third party and the City refuses or is unable to seek recovery of funds for such damage, the Authority may, but is not required, to seek such recovery in the City's name.

## ARTICLE VII
## EFFECTIVE DATE, TERM, and EXPIRATION

**Section 7.1     Effective Date**.  This Agreement shall become effective on the date that each of the following events have occurred: (i) the approval and execution by the City; (ii) the approval of the Agreement pursuant to the procedures set forth in the EM Act; (iii) the approval by resolution of the Authority; (iv) the execution by the Executive Director of the Authority; (v) approval and execution of the Amended and Restated Trust Agreement and the Bond Indenture; and (vi) the City has caused a notice to be sent to each public utility and resale customer that collects or receives revenues pursuant to Act 100.

**Section 7.2     Term and Expiration**.  This Agreement shall commence on the Effective Date and shall expire upon final payment of all financial obligations of the Authority under Act 392 or this Agreement.

Page | **10 of 15**

13-53846-swr   Doc 2372-15   Filed 01/02/14   Entered 01/02/14 17:41:55   Page 49 of 50
13-53846-swr   Doc 1341-5   Filed 10/28/13   Entered 10/28/13 17:15:55   Page 49 of 50     49

## ARTICLE VIII
## BOOKS, RECORDS, AND FINANCES

**Section 8.1    Financial Statements and Reports by City**.  The City shall prepare, or cause to be prepared, at its own expense, audited financial statements of the City, which shall include the Utility Revenues and the other revenues collected pursuant to Act 100 each fiscal year and provide such statements to the Authority, the Trustee, the Emergency Manager and any other parties reasonably necessary to ensure compliance with the disclosure requirements of all relevant state and federal laws, including, but not limited to the Securities and Exchange Act, Pub.L. 73-291, 48 Stat. 881, 15 U.S.C.§78a *et seq*.

**Section 8.2    Books and Records**.  The Authority shall provide for a system of accounts for the Authority to conform to a uniform system required by law and for the auditing of the accounts of the Authority. The Authority shall obtain an annual audit of the Authority's books and records by an independent certified public accountant and report on the audit and auditing procedures in the manner provided by sections 6 to 13 of the uniform budgeting and accounting act, 1968 PA 2, MCL 141.426 to 141.433. The audit also shall be in accordance with generally accepted auditing standards for public bodies and shall satisfy any applicable federal regulations relating to federal grant compliance audit requirements.    The audit shall be provided to the City within thirty (30) days of acceptance by the Board of Directors of the Authority but in no event more than one hundred and twenty (120) days following the end of the Authority's fiscal year.  The City may examine the books and records of the Authority related to the Authority's finances, the System or the Work, and make copies and extracts therefrom at its own expense, all during regular business hours as may be reasonably requested and reasonably agreed to by the Authority in advance.

## ARTICLE IX
## INDEMNIFICATION, LIABILITY, DAMAGES, AND INSURANCE

**Section 9.1    Indemnification**.  To the extent permitted by law and subject to Section 11.11, each Party shall indemnify and hold harmless the other Party and the other Party's employees, agents, directors and officers against all liability arising out of, or resulting from any third party claim, suit, action or proceeding arising out of or resulting  from (i) the failure of a Party or any of its agents, employees or contractors, to comply with the terms of this Agreement or any applicable law; or (ii) any injury, loss, claim or damages arising from the actions or omissions of a Party or an agent, employee, director, officer or contractor of the Party.

**Section 9.2    Limitation of Liability; No Special Damages**.  Notwithstanding any other provision of this Agreement, neither Party shall be liable to the other for any damages for loss of profits, loss of revenues, loss of goodwill, loss of anticipated savings, loss of data or cost of purchasing replacement services, or any indirect, incidental, special, consequential, exemplary or punitive damages arising out of the performance or failure to perform under this Agreement. Nothing in this Agreement shall be construed as a waiver of governmental immunity, where applicable, or as a limitation on any rights of Utility Bondholders under applicable law.