UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re

CITY OF DETROIT, MICHIGAN,

Debtor.

No. 13-53846

Chapter 9

HON. STEVEN W. RHODES

## ATTACHMENT

## APPELLEE STATE OF MICHIGAN'S DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

| Design-ation | Docket # | Filing Date | Description |
|---|---|---|---|
| 6. | 514 | 8/19/2013 | Objection by Interested Party Center for Community Justice and Advocacy to the City of Detroit's Eligibility to Obtain Relief Under Chapter 9 of the Bankruptcy Code and to the City of Detroit's Memorandum in Support of Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code (Attachments: Index of Exhibits; Exhibit Ingham County Circuit Court Order dated July 19, 2013; Exhibit States Authorizing Chapter 9 Bankruptcy Filing) |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                                                    Chapter 9
                                                          Case No. 13-53846
City of Detroit, Michigan,

        Debtor.
_____/

**OBJECTION BY INTERESTED PARTY CENTER FOR COMMUNITY JUSTICE AND ADVOCACY ("CCJA") TO THE CITY OF DETROIT'S ELIGIBILITY TO OBTAIN RELIEF UNDER CHAPTER 9 OF THE BANKRUPTCY CODE [DOCKET 10] AND TO THE CITY OF DETROIT'S MEMORANDUM IN SUPPORT OF STATEMENT OF QUALIFICATIONS PURSUANT TO SECTION 109(C) OF THE BANKRUPTCY CODE [DOCKET 14]**

        1.      The cited authority for the Emergency Manager to file this Chapter 9 bankruptcy on "behalf" of the City of Detroit derives from MCL 141.1541, et. seq, the Michigan Local Financial Stability and Choice Act of 2012.

        2.      This Act outlines specific powers delegated to the Emergency Manager by Michigan State law.

        3.      For example, MCLS §141.1551 provides the Emergency Manager with the following powers:

        (c)     to carry out the modification, rejection, termination, and renegotiation of contracts pursuant to section 12;

        (d)     The timely deposit of required payments to the pension fund for the local government or in which the local government participates; . . .

        (f)     Any other actions considered necessary by the emergency manager in the emergency manager's discretion to achieve the objectives of the financial and operating plan, alleviate the financial emergency, and remove the local government from receivership.

        4.      MCL 141.1552 provides for other statutory powers handed to an Emergency Manager.  It states:

Sec. 12. **(1)** An emergency manager may take 1 or more of the following additional actions with respect to a local government that is in receivership, notwithstanding any charter provision to the contrary:

   **(j)** Reject, modify, or terminate 1 or more terms and conditions of an existing contract.

   **(k)** Subject to section 19, after meeting and conferring with the appropriate bargaining representative and, if in the emergency manager's sole discretion and judgment, a prompt and satisfactory resolution is unlikely to be obtained, reject, modify, or terminate 1 or more terms and conditions of an existing collective bargaining agreement. The rejection, modification, or termination of 1 or more terms and conditions of an existing collective bargaining agreement under this subdivision is a legitimate exercise of the state's sovereign powers if the emergency manager and state treasurer determine that all of the following conditions are satisfied.

5.    MCL 141.1553 outlines the powers and limitations of an Emergency Manager relative to municipal pension funds.  It states:

   **(m)** If a municipal government's pension fund is not actuarially funded at a level of 80% or more, according to the most recent governmental accounting standards board's applicable standards, at the time the most recent comprehensive annual financial report for the municipal government or its pension fund was due, the emergency manager may remove 1 or more of the serving trustees of the local pension board or, if the state treasurer appoints the emergency manager as the sole trustee of the local pension board, replace all the serving trustees of the local pension board. For the purpose of determining the pension fund level under this subdivision, the valuation shall exclude the net value of pension bonds or evidence of indebtedness. The annual actuarial valuation for the municipal government's pension fund shall use the actuarial accrued liabilities and the actuarial value of assets. If a pension fund uses the aggregate actuarial cost method or a method involving a frozen accrued liability, the retirement system actuary shall use the entry age normal actuarial cost method. If the emergency manager serves as sole trustee of the local pension board, all of the following apply:

   **(i)** The emergency manager shall assume and exercise the authority and fiduciary responsibilities of the local pension

board including, to the extent applicable, setting and approval of all actuarial assumptions for pension obligations of a municipal government to the local pension fund.

**(ii) The emergency manager shall fully comply with the public employee retirement system investment act, 1965 PA 314, <u>MCL 38.1132</u> to <u>38.1140m,</u> and section 24 of article IX of the state constitution of 1963**, and any actions taken shall be consistent with the pension fund's qualified plan status under the federal internal revenue code. (emphasis added)

6.     Thus, an Emergency Manager's powers with regard to municipal pensions are specifically limited by Article IX Section 24 of the Michigan Constitution, which guarantees the payment of accrued pension benefits. Article IX Section 24 states:

**§24.     Public pension plans and retirement systems, obligation.**
Sec. 24.     The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.

7.     MCL 141.1558.is the section of the Local Financial Stability and Choice Act of 2012 that provides the authority for the Emergency Manager and the Governor to file a Chapter 9 Bankruptcy. It states:

Sec. 18.          **(1)** If, in the judgment of the emergency manager, no reasonable alternative to rectifying the financial emergency of the local government which is in receivership exists, then the emergency manager may recommend to the governor and the state treasurer that the local government be authorized to proceed under chapter 9. If the governor approves of the recommendation, the governor shall inform the state treasurer and the emergency manager in writing of the decision, with a copy to the superintendent of public instruction if the local government is a school district. The governor may place contingencies on a local government in order to proceed under chapter 9. Upon receipt of the written approval, the emergency manager is authorized to proceed under chapter 9. This section empowers the local government for which an emergency manager has been appointed to become a debtor under title 11 of the United States Code, <u>11 USC 101</u> to <u>1532</u>, as required by <u>section 109 of title 11 of the United States Code</u>, <u>11 USC 109</u>, and empowers the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9.

3

8.     11 USCS 109(2) states that a local municipality must be specifically authorized by state law to file a Chapter 9 bankruptcy.  It states:

> (c)     An entity may be a debtor under chapter 9 of this title [11 USCS §§ 901 et seq.] if and only if such entity—
> (1)     is a municipality;
> (2)     is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter [11 USCS §§ 901 et seq.] by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter [11 USCS §§ 901 et seq.].

9.     In *United States v Bekins*, 304 U.S. 27, 49 (1938), the United States Supreme Court held that the phrase "authorized by law" with regard to a municipal bankruptcy "manifestly refers to the law of the state."

10.     In *In RE: City of Harrisburg, PA*, 465 B.R. 744, 754 (Middle Dist of PA 2011), the court noted that pursuant to the most recent Chapter 9 enactments, "states act as gatekeepers to their municipalities access to relief under the Bankruptcy Code.  Therefore, when the authority to file under state law is questioned, bankruptcy courts exercise jurisdiction carefully in light of the interplay between Congress's bankruptcy power and the limitations on federal power under the Tenth Amendment. (internal citations omitted)."

11.     Michigan law applies the principles of strict statutory construction to interpreting the law.  For example, in *Pohutski v City of Allen Park*, 465 Mich 675, 683-684 (2002), the Michigan Supreme Court held:

> When faced with questions of statutory interpretation, our obligation is to discern and give effect to the Legislature's intent as expressed in the words of the statute. DiBenedetto v West Shore Hosp, 461 Mich. 394, 402; 605 N.W.2d 300 (2000); Massey v Mandell, 462 Mich. 375, 379-380; 614 N.W.2d 70 (2000). We give the words of a statute their plain and ordinary meaning, looking outside the statute to ascertain the Legislature's intent only if the statutory language is ambiguous. Turner v Auto Club Ins Ass'n, 448 Mich. 22, 27, 528 N.W.2d 681 (1995). Where the language is unambiguous, "we presume that the Legislature intended the meaning

clearly expressed---no further judicial construction is required or permitted, and the statute must be enforced as written." DiBenedetto, 461 Mich. at 402. Similarly, courts may not speculate about an unstated purpose where the unambiguous text plainly reflects the intent of the Legislature. See Lansing v Lansing Twp, 356 Mich. 641, 649-650; 97 N.W.2d 804 (1959).

**When parsing a statute, we presume every word is used for a purpose. As far as possible, we give effect to every clause and sentence. "The Court may not assume that the Legislature inadvertently made use of one word or phrase instead of another." Robinson v Detroit, 462 Mich. 439, 459; 613 N.W.2d 307 (2000). Similarly, we should take care to avoid a construction that renders any part of the statute surplusage or nugatory**. In re MCI, 460 Mich. at 414. (emphasis added)

12.    In *Smitter v. Thornapple Twp*., 494 Mich. 121 (Mich. 2013), the Michigan

Supreme Court restated the application of the doctrine of *expressio unius est exclusio alterius*

(the expression of one thing is the exclusion of another) to Michigan law on statutory

construction.

13.    The Emergency Manager, in numerous pronouncements, as well as in his Chapter

9 bankruptcy filing, noted his intention to reduce accrued pensions in violation of the law.  In

fact, the top "unsecured creditors" were the Detroit General Retirement Services Board and the

Detroit Police and Firefighters Retirement Services Board.

14.    Interested Party Center for Community Justice and Advocacy contends that in so

far as the Emergency Manager's Chapter 9 Bankruptcy filing intends to diminish or impair

accrued pensions, it violates MCL 141.1541 et. seq, the Michigan Local Financial Stability and

Choice Act of 2012, as well as the Michigan State Constitution.

15.    The only state court to be heard on this issue, the Circuit Court for the County of

Ingham, specifically held that "PA 436 is unconstitutional and in violation of Article IX Section

24 of the Michigan Constitution to the extent that it permits the Governor to authorize an

emergency manager to proceed under Chapter 9 in any manner which threatens to diminish or

5

13-53846-tjt  Doc 2380-6  Filed 08/03/13  Entered 08/03/13 21:52:13  Page 6 of 25
13-53846-swr  Doc 3804  Filed 04/09/13  Entered 04/09/13 17:53:36  Page 5 of 25

impair accrued pension benefits." (**Exhibit 1,** Ingham County Circuit Court Order dated July 19, 2013)

16. Ingham County Circuit Court Judge Rosemarie Aquilina further ordered: "In order to rectify his unauthorized and unconstitutional actions described above, the Governor must (1) direct the Emergency Manager to immediately withdraw the Chapter 9 petition filed on July 18, and (2) not authorize any further Chapter filing which threatens to diminish or impair accrued pension benefits." *Id.*

17. MCL 141.1556 specifically provides,

> Sec. 16.      n emergency manager shall, on his or her own or upon the advice of the local inspector if a local inspector has been retained, make a determination as to whether possible criminal conduct contributed to the financial situation resulting in the local government's receivership status. If the emergency manager determines that there is reason to believe that criminal conduct has occurred, the manager shall refer the matter to the attorney general and the local prosecuting attorney for investigation. MCLS § 141.1556

18. The Emergency Manager has not conducted any meaningful investigation or inspection of financial records to determine whether impropriety and criminal conduct occurred in the origination and later servicing of any or all of the subject financial instruments including municipal bonds and credit default swaps that may have involved criminal conduct by bondholders including but not limited to UBS and Bank of America.

19. The Emergency Manager has not conducted any investigation into financial creditors who may have contributed through criminal conduct to the foreclosure crisis in Detroit through illegal subprime mortgages and subsequent illegal foreclosures and evictions, diminishing the financial stability of Detroit and destabilizing its communities.

WHEREFORE, Interested Party Center for Community for Justice and Advocacy respectfully requests that this Honorable Court deny the City of Detroit's (through the

6

13-53846-tjt wr Doc 23806 Filed 08/09/13 Entered 08/09/13 14:17:52:36 Page 7 of 25
13-53846-swr Doc 3904 Filed 08/09/13 Entered 08/09/13 14:15:36 Page 6 of 25

Emergency Manager) eligibility for filing this Chapter 9 bankruptcy because the petition violates the state authorization statute, which mandates that any Chapter 9 filing under MCL 141.1541 must be subject to the Michigan constitutional limitation on not diminishing or impairing accrued pensions, or in the alternative, that this Honorable Court specifically exclude any diminishing or impairing of accrued pension benefits as part of the debtor's restructuring of debt, pursuant to its Chapter 9 bankruptcy.

## LAW AND ANALYSIS

     I.    **THE MICHIGAN STATUTE AUTHORIZING THIS CHAPTER 9 BANKRUPTCY FILING INCORPORATES THE MICHIGAN CONSTITUTIONAL PROHIBITION AGAINST DIMINISHING OR IMPAIRNG PENSIONS AS A CONTINGENCY ON THE FILING.**

As outlined above, 11 USC 109 states that a local municipality must be "specifically authorized by state law to file a Chapter 9 bankruptcy." The phrase "authorized by law" refers to the law of the state. *U.S. v Bekins*, 304 U.S. at 27. "States act as gatekeepers to their municipalities to access to relief under the Bankruptcy Code." *In Re: City of Harrisburg*, 465 BR at 744.

The Michigan state law that is the basis for the City of Detroit's (through the Emergency Manager) Chapter 9 bankruptcy filing is MCL 141.1541 et. seq., the Local Financial and Stability and Choice Act of 2012. For the purposes of this Objection, Interested Party Center for Community Justice and Advocacy calls this Honorable Court's attention to several relevant sections of the statute.

**Section 1551(c)** provides the Emergency Manager with the power to "carry out the modification, rejection, termination and renegotiation of contracts pursuant to Section 12."

7

13-53846-tjt  Doc 23806  Filed 08/09/13  Entered 08/09/13 17:52:13  Page 8 of 25
13-53846-swr  Doc 504  Filed 08/09/13  Entered 08/09/13 21:53:36  Page 7 of 25

**Section 1552 (Section 12)** (j) provides the Emergency Manager with the power to reject, modify or terminate 1 or more terms of an existing contract. Section (k) gives the Emergency Manager the power to reject, modify or terminate an existing collective bargaining contract (subject to meeting several conditions).

**Section 1553** outlines the power and limitations of the Emergency Manager relative to municipal pensions. Significantly, this section specifically mandates that an Emergency Manager must **fully comply** with Article IX Section 24 of the Michigan constitution, which is the constitutional prohibition on diminishing or impairing accrued pensions.

**Section 1558** of the Local Financial Stability and Choice Act provides the authority for the Emergency Manager and the Governor to file a Chapter 9 bankruptcy. Significantly, Section 1558 states: "The governor may place contingencies on a local government in order to proceed under Chapter 9."

Under Chapter 9 of the Bankruptcy code and cases interpreting Chapter 9, Michigan law is determinative on how the state-authorizing statute for this Chapter 9 bankruptcy is to be interpreted. Michigan law applies principles of strict statutory construction. In *Pohutski*, 465 Mich at 683, 684, the Michigan Supreme enunciated the following:

> When parsing a statute, we presume every word is used for a purpose. As far as possible, we give effect to every clause and sentence. "The Court may not assume that the Legislature inadvertently made use of one word or phrase instead of another." Robinson v Detroit, 462 Mich. 439, 459; 613 N.W.2d 307 (2000). Similarly, we should take care to avoid a construction that renders any part of the statute surplusage or nugatory. *In re MCI*, 460 Mich. at 414. (emphasis added)

In addition, Michigan courts follow the doctrine of *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another). *Smitter* 494 Mich at 121.

8

In construing the sections of the Local Financial Stability and Choice Act of 2012 as a whole, and so as not to render any part of the statute surplusage or nugatory, the statute must be construed in the following manner: "The Emergency Manager is authorized to proceed under Chapter 9 subject to the following contingency – The Chapter 9 bankruptcy shall not in any way undertake to diminish or impair the payment of accrued pension benefits."

## II.    UNDER U.S. SIXTH CIRCUIT PRECEDENT, EXCLUDING PENSION BENEFITS FROM THE CHAPTER 9 BANKRUPTCY IS NOT PREEMPTED BY FEDERAL LAW.

The City of Detroit may argue that once the Chapter 9 filing is authorized, any state limitations on the scope of the relief available by the filing are preempted by federal law. That seems to be the basis for the holding in *In re City of Vallejo*, 403 BR 72 (2009).

However, Interested Party Center for Community Justice and Advocacy contends that pursuant to the 2012 U.S. Sixth Circuit decision in *Richardson v Schafer*, 689 F3d 601 (2012), a narrow state limitation on the scope of the relief available in a Chapter 9 bankruptcy is ***not*** preempted by federal law.

*Schafer*, *supra*, dealt with the legitimacy of a homestead exemption the debtor asserted pursuant to MCL 600.5451, which was broader than the exemption allowed under 11 USC 522(b) or Michigan's general homestead exemption. The *Schafer* court noted that the interpretation to the phrase "uniform laws" by both the Supreme Court and this Honorable Court permits states to act in the arena of bankruptcy exemptions even if they do so by making certain exemptions available only to debtors in bankruptcy, and that such exemption schemes are not invalidated by the Supremacy clause." *Id*. at 603.

The U.S. Sixth Circuit cited to its own holding in *Rhodes v Stewart*, 705 F2d 159 (6th Cir 1983) for the proposition that states have concurrent authority to promulgate laws governing

exemptions applicable in bankruptcy cases. The court further noted that "this understanding that the federal power was exclusive eventually gave way to an acceptance that states could, in the absence of federal legislation, pass laws on bankruptcy." *Id*. at 606. The court stated: "In other words, the general rule of law laid down by the Supreme Court in *Moyses* was that the uniformity requirement is geographical and that variations resulting from differences in state law are not unconstitutional." *Id*. at 610. "Congress does not exceed its constitutional powers in enacting a bankruptcy law that permits variations based on state law or to solve geographically isolated problems." *Id*. at 611. The Sixth Circuit held the proper determination of whether a state law conflicted with federal law in the bankruptcy exemption context was conflict preemption, whether "the laws in question conflict such that it is impossible for a party to comply with both laws simultaneously, or where the enforcement of the state law would hinder or frustrate the full purposes and objectives of the federal law."

Based on Sixth Circuit precedent, Interested Party Community Center for Justice and Advocacy contends that the only allowable interpretation of the Michigan authorizing statute, the Local Financial Stability and Choice Act of 2012, under Michigan rules of statutory construction, is that a Chapter 9 Filing cannot have the intent or effect of diminishing or impairing accrued pensions, and such a provision does not conflict with and is not preempted by federal law. Such a limitation on a Chapter 9 bankruptcy filing would not hinder or frustrate the full purposes and objectives of the federal bankruptcy code. It would still allow for restructuring most of the debts of the municipality. It would exclude the one class of benefits, public pensions, which the state chose to **constitutionally protect** and whose protection was incorporated into the authorizing statute.

10

13-53846-tjt   Doc 23806   Filed 08/09/13   Entered 08/09/13 17:52:13   Page 11 of 25
13-53846-swr   Doc 801-6   Filed 08/09/13   Entered 08/09/13 21:13:36   Page 11 of 25

In addition, there is a strong policy purpose for protecting pension benefits and excluding them from being diminished or impaired bankruptcy. Pensions are in fact deferred wages. They were earned and secured by the workers by their labor before the bankruptcy petition was filed. In essence, they are simply unpaid wages which the retirees elected to defer so they can have an income for their last years of life.

### III. CHAPTER 9 BANKRUPTCY IS ALREADY SUBJECT TO STATE LIMITATIONS.

In *In RE: City of Harrisburg, PA*, 465 B.R at 753, the Court discussed how Chapter 9 bankruptcy particularly implicates federalism concerns. The Court stated:

> Although Congress has the sole power to establish "uniform Laws on the subject of Bankruptcies throughout the United States (US Const art I, Section 8), where federal bankruptcy law intersects with the rights of states to regulate the activities of political subdivisions created by the state, principles of dual sovereignty as defined by the Tenth Amendment must be considered.

Municipalities cannot automatically file for Chapter 9 bankruptcy. They must be specifically authorized to file by state law. 11 USC 109. According to a study by a Sacramento television station (near Stockton, California), twenty two (22) states do not even provide access to Chapter 9 bankruptcy, and 16 states set conditions for municipal bankruptcy. http://www.news10.net/news/pdf/State-Policies-on-Chapter-9-bankruptcy.pdf (**Exhibit 2,** States Authorizing Chapter 9 Bankruptcy Filing)

11 USC 904 provides limitations on the jurisdiction and powers of the court during Chapter 9 bankruptcy. The court may not interfere with any of the political or governmental powers of the debtor, any of the property or revenues of the debtor, or the debtor's use or enjoyment of any income-producing property.

The special interplay of state and federal law in the context of Chapter 9 bankruptcy, lends special applicability in the Chapter 9 context to the holding in *Schafer*, *supra*, that the proper determination of whether a state law conflicts with federal law in the bankruptcy exemption context is conflict preemption.

The limitation on pensions not being diminished or impaired in the bankruptcy process, which is included in Michigan's Chapter 9 authorizing statute, **is not in conflict with federal law and must be enforced**.

IV. **TO THE EXTENT THAT THE COURT HOLDS THAT REDUCING PENSIONS CAN NOT BE EXCLUDED FROM CONSIDERATION IN A CHAPTER 9 BANKRUPTCY, THEN MICHIGAN LAW DOES NOT AUTHORIZE THE FILING AND THIS CASE MUST BE DISMISSED.**

In the alternative, if this Honorable Court was to rule that excluding pensions from the Chapter 9 case would violate federal law, then there is no way to read the Michigan law as authorizing the Chapter 9 filing at all, and it must be dismissed. As noted earlier, the Local Financial Stability and Choice Act of 2012 must be construed so as to incorporate the Michigan constitutional guarantee against diminishing or impairing pensions. The section of the law authorizing the Chapter 9 bankruptcy filing implicitly incorporates this clause in that it provides that the governor could place contingencies on a local government that chooses to file for Chapter 9. The ban on impairing pensions would by necessity be one of those contingencies.

If a Chapter 9 filing under the statute was to allow for attacking pension benefits, it would negate the specific ban on doing so written into the statute and implicitly included as a contingency in the governor's specific authorization of a Chapter 9 bankruptcy. Without this contingency for excluding diminishment or impairment of pension benefits from the Chapter 9 consideration, there could be no authorization for a Chapter 9 bankruptcy under Michigan law.

Therefore, lacking the specific authorization to file the Chapter 9 bankruptcy, the City of Detroit's petition for bankruptcy would have to be dismissed.

WHEREFORE, Interested Party Center for Community Justice and Advocacy respectfully requests that this Honorable Court deny the City of Detroit's (through the Emergency Manager) eligibility for filing this Chapter 9 bankruptcy because the petition violates the state authorization statute which mandates that any Chapter 9 filing under MCL 141.1541 must be subject to the Michigan constitutional limitation on not diminishing or impairing accrued pensions, or in the alternative, that this Honorable Court specifically exclude any diminishing or impairing of accrued pension benefits as part of the City of Detroit's restructuring of debt, pursuant to this Chapter 9 bankruptcy.

Respectfully submitted,

VANESSA G. FLUKER, ESQ., PLLC

By:  /s/*Vanessa G. Fluker*
     Vanessa G. Fluker, Esq., PLLC
     2921 East Jefferson, Suite 200
     Detroit, MI 48207
     Phone: (313) 393-6005
     Fax: (313) 393-6007
     Email: vgflawyer@sbcglobal.net

DATED: August 19, 2013

13

13-53846-tjt  Doc 23806  Filed 08/09/14  Entered 08/09/14 17:52:36  Page 14 of 25
13-53846-swr  Doc 804  Filed 08/19/13  Entered 08/19/13 21:13:36  Page 14 of 25

# INDEX OF EXHIBITS

**Exhibit 1,**    Ingham County Circuit Court Order dated July 19, 2013

**Exhibit 2,**    States Authorizing Chapter 9 Bankruptcy Filing

# EXHIBIT 1

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

     Plaintiffs,

vs

                                   Case No. 13-734-CZ
                                   Hon.  Rosemarie Aquilina

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

     Defendants.

_____

ORDER OF DECLARATORY JUDGMENT

At a session of said Court held in Ingham County Circuit Court,
State of Michigan, this 19th day of July, 2013.

PRESENT: _Rosemarie E Aquilina_
               Circuit Court Judge

Plaintiffs request declaratory relief pursuant to MCR 2.605 concerning (1) the

constitutionality under Article IX Section 24 of the Michigan Constitution of the Local Financial

Stability and Choice Act, 2012 PA 436, MCL 141.1541, *et seq.* ("PA 436"), insofar as PA 436

permits the Governor to authorize an emergency manager to proceed under chapter 9 of the

bankruptcy code, chapter 9 of title 11 of the United States Code, 29 USC 901 to 946 ("Chapter

9") in a manner which threatens to diminish or impair accrued pension benefits; and (2) the

authority of the Governor and/or State Treasurer to authorize an emergency manager to proceed under Chapter 9 in a manner which threatens to diminish or impair accrued pension benefits.

Plaintiffs have requested, and Defendants have agreed in their Response, that the hearing in this matter may be advanced pursuant to MCR 2.605(D) and the court finds that expedited treatment is appropriate and that final declaratory relief is proper at this time.

The Court having reviewed the parties filings and submissions, and having heard oral argument by counsel for the parties, and being otherwise fully advised in the premises, and for the reasons stated on the record,

IT IS HEREBY ORDERED:

PA 436 is unconstitutional and in violation of Article IX Section 24 of the Michigan Constitution to the extent that it permits the Governor to authorize an emergency manager to proceed under Chapter 9 in any manner which threatens to diminish or impair accrued pension benefits; and PA 436 is to that extent of no force or effect;

The Governor is prohibited by Article IX Section 24 of the Michigan Constitution from authorizing an emergency manager under PA 436 to proceed under Chapter 9 in a manner which threatens to diminish or impair accrued pension benefits, and any such action by the Governor is without authority and in violation of Article IX Section 24 of the Michigan Constitution.

On July 16, 2013, City of Detroit Emergency Manager Kevyn Orr submitted a recommendation to Defendant Governor Snyder and Defendant Treasurer Dillon pursuant to Section 18(1) of PA 436 to proceed under Chapter 9, which together with the facts presented in Plaintiffs' filings, reflect that Emergency Manager Orr intended to diminish or impair accrued pension benefits if he were authorized to proceed under Chapter 9. On July 18, 2013, Defendant

Governor Snyder approved the Emergency Manager's recommendation without placing any contingencies on a Chapter 9 filing by the Emergency Manager; and the Emergency Manager filed a Chapter 9 petition shortly thereafter. By authorizing the Emergency Manager to proceed under Chapter 9 to diminish or impair accrued pension benefits, Defendant Snyder acted without authority under Michigan law and in violation of Article IX Section 24 of the Michigan Constitution.

In order to rectify his unauthorized and unconstitutional actions described above, the Governor must (1) direct the Emergency Manager to immediately withdraw the Chapter 9 petition filed on July 18, and (2) not authorize any further Chapter 9 filing which threatens to diminish or impair accrued pension benefits.

*A copy of this Order shall be transmitted to President Obama.*

*It is so Ordered.* Rosemarie E. Aquilina

P37670

Circuit Court Judge

# EXHIBIT 2

| 22 States do not provide access to Chapter 9 Bankruptcy | 16 States set conditions for Municipal Bankruptcy | 12 States provide Blanket Authorization |
| --- | --- | --- |
| -Georgia explicitly denies access to municipal bankruptcy. (GA Code 36—80-5)<br><br>**States with No Statutes:**<br>Alaska<br>Delaware<br>Hawaii<br>Indiana<br>Kansas<br>Maine<br>Maryland<br>Massachusetts<br>Mississippi<br>New Hampshire<br>New Mexico<br>North Dakota<br>Rhode Island<br>South Dakota<br>Tennessee<br>Utah<br>Vermont<br>Virginia<br>West Virginia<br>Wisconsin<br>Wyoming | Connecticut<br>Idaho<br>Illinois<br>Iowa<br>Kentucky<br>Louisiana<br>Michigan<br>Montana<br>Nevada<br>New Jersey<br>New York<br>North Carolina<br>Ohio<br>Oregon<br>Pennsylvania<br>Washington | Alabama<br>Arizona<br>Arkansas<br>California<br>Colorado<br>Florida<br>Minnesota<br>Missouri<br>Nebraska<br>Oklahoma<br>South Carolina<br>Texas |

# States with Blanket Authorization

1. Alabama (AL Code §11-81-3)
2. Arizona (AZ Code §35-603)
3. Arkansas (AK Code §14-74-103)
4. California (CA Code §53760)
5. Colorado (32-1-1403)
6. Florida (FL Stat §218.01)
7. Minnesota (§471.831)
8. Missouri (MO §427.100)
9. Nebraska (NE §13-402)
10. Oklahoma (OK Code §62-283)
11. South Carolina (SC Code §6-1-10)
12. Texas (TX Code §140.001)

# States with conditions for Municipal Bankruptcy

1. <u>Connecticut:</u> A municipality must receive express written consent from the Governor to file for chapter 9 bankruptcy. If the Governor approves a bankruptcy he/she must submit a report to the Treasurer and the joint standing committee of the General Assembly explaining the reasons for consent. (CT Gen Stat. §7-566)

2. <u>Idaho:</u> A taxing district in the state is authorized to file petition for chapter 9 bankruptcy provided that the taxing district adopts a resolution to authorize the filing.

3. <u>Illinois:</u> Illinois law provides for the establishment of a financial planning and supervision commission to oversee the finances of an entity that has been declared to be in a fiscal emergency by the Governor. The Governor may establish a commission when the city is 180 days in default of debt: it has not made payment on 20% of its payroll, or the insolvency of the unit of local government. The unit of local government that has been declared to have a fiscal emergency is required to file a financial plan with the commission and the commission's financial advisor. The commission is authorized to make a written recommendation that the unit of local government file for chapter 9 bankruptcy code (§50 ILCA 320/1-14)

4. <u>Iowa:</u> A city, county, or other political subdivisions is authorized to file for chapter 9 bankruptcy if they are insolvent and the debt is involuntarily incurred. The statute specifically states that a valid and binding collective bargaining agreement or previously authorized bond issues are not eligible debts. (IA §76.16, IA §76.16A)

5. <u>Kentucky:</u> Taxing agencies in Kentucky are authorized to utilize the Federal Bankruptcy Act. However, Counties must have their plan approved by the state local debt officer and the state local finance officer in order to file for bankruptcy. (KY §66.400)

6. <u>Louisiana:</u> The Governor and the Attorney General must provide consent, approval, and authority in order for a taxing entity to file a plan of readjustment of its debts in a United States court. (LA §13:4741)

7. <u>Michigan:</u> The governor may appoint a "review team" to make an assessment and, if needed, negotiate a consent agreement with local government concerning long-range plans for financial recovery. (§141.1213)

8. <u>Montana:</u> The local entity must adopt an ordinance or resolution declaring that it meets the requirements for chapter 9 bankruptcy. The state or any department or agency holding securities for the local entity must consent to the plan of adjustment. (MT §7-7-132, §7-7-133, §7-7-134)

9. <u>Nevada:</u> Nevada has no specific provisions authorizing municipal bankruptcy. They do however have provisions that allow for the Nevada Tax Commission to provide Technical Financial Assistance. The authorities of the Nevada Tax Commission include taking control over the local government or possible dissolution of local government in certain circumstances. (354.675, 354.685, 354.686, 354.695, 354.701, 354.705, 354.715, 354.721, 354.723, 354.7235, 354.725)

10. <u>New Jersey:</u> The Municipal Finance Commission must approve both the filing of the bankruptcy petition as well as any plan of adjustment. Once the Municipality has been in financial default to bondholders or noteholders for more than 60 days, the commission may intervene to manage the financial affairs of the municipality.

NJ Gen Stat (§52:27-40)

11. <u>New York:</u> New York authorizes a municipality, emergency financial control board to file for adjustment of municipal indebtedness (NY CLS Loc. Fin §85.80 & 85.80). New York City must get authorization from the New York State Financial Control Board to file for bankruptcy.

12. <u>North Carolina:</u> Requires pre-approval by the Local Government Commission (State Treasurer, State Auditor, Secretary of State, Secretary of Revenue, and five appointees).

(NC Gen Stat §23-48)

13. <u>Ohio:</u> A taxing authority must file a petition with the tax commissioner stating that they are insolvent and unable to meet their debts and that they would like to file a plan for readjustment of debts. The tax commissioner must approve the request to file for bankruptcy. (OH Code §133.36) Ohio Code also has statutes requiring fiscal integrity of municipal corporations and establishes a system of fiscal watch for financially distressed municipalities. (OH Code §118.02, §118.021, §118.022, §118.023)

14. <u>Oregon:</u> Oregon law allows irrigation or drainage districts to file for bankruptcy. There is no specific authorization for other public entities to file for chapter 9 bankruptcy.

15. <u>Pennsylvania:</u> An authority that has outstanding *bond debt* is not eligible to file for relief under Federal Bankruptcy law. Additionally, cities of the first class are required to get written authorization from the Governor in order to file for chapter 9 bankruptcy. (53 PA Stat.

§12720.211) Pennsylvania has also established the Pennsylvania Intergovernmental Cooperation Authority to provide financial oversight to the city of Philadelphia. (53 PA Stat 12720.101)

16. <u>Washington</u>: A taxing district in the state is authorized to file petition for chapter 9 bankruptcy provided that the taxing district adopts a resolution to authorize the filing. (39.64.040 & 39.64.050).

## 22 States do not allow access to Chapter 9 bankruptcy

-Georgia explicitly denies access to municipal bankruptcy. (GA Code 36—80-5)

**States with No Statutes:**
Alaska
Delaware
Hawaii
Indiana
Maine
Maryland
Mississippi
Nevada
New Hampshire
New Mexico
North Dakota
Rhode Island
South Dakota
Tennessee
Utah
Vermont
Virginia
West Virginia
Wisconsin
Wyoming