| | |
|---|---|
| In re<br>CITY OF DETROIT, MICHIGAN,<br>                    Debtor. | Chapter 9<br>Case No. 13-53846<br>Hon. Steven W. Rhodes |
| THE OFFICIAL COMMITTEE OF RETIREES OF THE CITY OF DETROIT, MICHIGAN, DETROIT RETIRED CITY EMPLOYEES ASSOCIATION, RETIRED DETROIT POLICE AND FIRE FIGHTERS ASSOCIATION, and AFSCME SUB-CHAPTER 98, CITY OF DETROIT RETIREES<br>                    Plaintiffs.<br>      v.<br>THE CITY OF DETROIT, MICHIGAN and KEVYN ORR, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS EMERGENCY MANAGER OF THE CITY OF DETROIT, MICHIGAN,<br>                  Defendants. | Chapter 9<br>Adv. Pro. No. _____<br>Hon. Steven W. Rhodes |

## COMPLAINT

Plaintiffs, who collectively represent a number of Retirees of the City of Detroit, on behalf of their individual members ("Retirees") and all persons similarly situated, hereby complain against Defendants as follows:

## INTRODUCTION

1. The retired former employees of the City of Detroit worked for the City for many years -- some for their entire career. For their years of service to the City and its citizens, the Retirees agreed to a compensation package which included the City's commitment to provide

them (and often their spouses and dependents) with healthcare benefits at a significantly reduced or no cost when they retired.

2. Nevertheless, the City recently distributed its March 1, 2014-December 31, 2014 City of Detroit Retiree Healthcare Plan, by which the City attempts to walk away from its contractual obligation to provide vested healthcare benefits to the Retirees and their spouses. The City has unilaterally decided to reduce its funding of the vested healthcare benefits by approximately 83%.

3. The impact of the City's decision on the Retirees will be devastating. To obtain comparable healthcare benefits, many of them will be forced to go out of pocket an additional several hundred dollars per month and several thousand dollars per year.

4. Many of the Retirees need the City to fulfill its end of the bargain. Many of them are economically vulnerable, living near the poverty line, of advanced age and incapable of returning to the workforce. Some are first-responders who were injured in the line of duty and are unable to pursue other gainful employment. Many of them simply cannot afford to go out of pocket an additional several thousand dollars per year and will be unable to procure comparable healthcare benefits on their own.

5. The City's decision to walk away from its Retirees, all of whom devoted large portions of their gainful years working on its behalf, is unconscionable. The decision will force many of the Retirees to choose between spending the little money they have on food, housing or other necessities, or on critical healthcare coverage, prescription drugs or medical services. Given that many Retirees rely on these benefits for life-sustaining medical care, the potential for loss of life and significant injury is great.

6. Plaintiffs therefore bring this action for equitable and injunctive relief to prevent the City from significantly impairing its contractual obligation to provide healthcare benefits and coverage to the Retirees, and thereby violating the Michigan and United States Constitutions.

## JURISDICTION AND VENUE

7. The Court has the power to hear this action as an adversary proceeding pursuant to 28 U.S.C. §1334 because it is a non-core proceeding otherwise related to a pending case filed under Title 11 of the United States Code. *In re City of Detroit, Michigan*, Case No. 13-53846, was filed pursuant to Chapter 9 in the United States Bankruptcy Court for the Eastern District of Michigan. In addition, the Court has subject matter jurisdiction over the federal constitutional claims and over the pendent state law claims because they arise from the same operative facts and circumstances as the federal claims.

8. The Court has personal jurisdiction over the City and Mr. Orr because they are either located in or conducting business in this judicial district and this action arises from their conduct occurring here.

9. The federal claims are asserted under 42 U.S.C. § 1983 and this Court has jurisdiction to hear them under 28 U.S.C. § 1331.

10. This action is brought by the Plaintiffs on behalf of their members, all Retirees and surviving spouses and dependents.

11. In Counts I and II, brought under 42 USC § 1983 and the Michigan Constitution, Plaintiffs seek declaratory and injunctive relief for the substantial impairment of the Retirees' contracts with the City of Detroit, where said impairment was neither reasonable nor necessary under the circumstances as required by the federal and state constitutions.

3

12. In Count III, also brought under 42 USC § 1983, Plaintiffs seek declaratory and injunctive relief where Defendants have deprived the Retirees of a property interest without procedural due process, in violation of 42 U.S.C § 1983 and U.S. Const. Amend. 14. Additionally, Defendant City of Detroit acted pursuant to an official policy or custom.

13. In Count IV, Plaintiffs seek enforcement in this court of a valid state court judgment.

**PARTIES**

14. There are approximately 24,000 retired former employees of the City of Detroit.

15. Plaintiff the Official Committee of Retirees of the City of Detroit was appointed on or around August 2, 2013, by the Bankruptcy Court to act as the authorized representative of those former employees of the City of Detroit (and their beneficiaries). The Bankruptcy Court created the Committee to protect the interest of retirees described herein in the bankruptcy proceeding filed by the City of Detroit.

16. Pursuant to 11 U.S.C. §§ 901, 1102, 1103(c)(5) and 1109, the Committee has the authority to bring this complaint on behalf of the City retirees.

17. The Committee is comprised of nine members, including retired City employees, as well as representatives of Detroit, Michigan, Retiree Sub-Chapter 98 of the American Federation of State, County and Municipal Employees, AFL-CIO and International Union, UAW.

18. Plaintiff Detroit Retired City Employees Association ("DRCEA") was founded more than 50 years ago, and represents the interests of non-uniformed retirees of the City, with nearly 7,900 of the 12,100 non-uniformed retirees of the City as dues paying members.

19. A primary purpose of the DRCEA is to advocate for non-uniformed retirees' interests and to monitor any action that could affect pension or retirement benefits.

20. DRCEA will fairly and adequately protect the interests of its members in prosecuting this action.

21. DRCEA members have standing to sue in their own right. The interests that this complaint seeks to protect are germane to DRCEA's purpose. Neither the claims asserted herein nor the relief requested requires individual member participation in the lawsuit.

22. Plaintiff Retired Detroit Police and Fire Fighters Association ("RDPFFA") represents the City's police and fire retirees, as well as their widows and widowers. Approximately 6,500 of the City's 7,800 total police and fire retirees are members.

23. A primary purpose of the RDPFFA is to advocate for police and fire retirees' interests and to monitor any action that could affect pension or retirement benefits.

24. RDPFFA will fairly and adequately protect the interests of its members in prosecuting this action.

25. RDPFFA members have standing to sue in their own right. The interests that this complaint seeks to protect are germane to RDPFFA's purpose. Neither the claims asserted herein nor the relief requested requires individual member participation in the lawsuit.

26. Plaintiff AFSCME Sub-Chapter 98, City of Detroit Retirees ("Subchapter 98"), was founded approximately 30 years ago. Sub-Chapter 98 represents the interests of approximately 1,100 non-uniformed retirees of the City, inclusive of AFSCME and non-AFSCME retirees, as well as individuals who retired from the City without union representation.

27. A primary purpose of Sub-Chapter 98 is to advocate for non-uniformed retirees' interests and to monitor any action that could affect pension or retirement benefits.

28. Sub-Chapter 98 will fairly and adequately protect the interests of its members in prosecuting this action.

5

29. Sub-Chapter 98 members have standing to sue in their own right. The interests that this complaint seeks to protect are germane to Sub-Chapter 98's purpose. Neither the claims asserted herein nor the relief requested requires individual member participation in the lawsuit.

30. Plaintiffs collectively and individually will fairly and adequately protect the interests of the Retirees in prosecuting this action.

31. Plaintiffs' individual members have standing to sue in their own right. The interests that this complaint seeks to protect are germane to the Plaintiffs' purposes. Neither the claims asserted herein nor the relief requested requires individual member participation in the lawsuit.

32. Some of the Retirees are more than 100 years old and completed their service with the City many years ago. Some are incapable of returning to the workforce for a number of reasons. Others are not eligible for social security benefits, rendering their entire economic existence dependent upon retirement compensation and healthcare benefits promised by the City.

33. Defendant City of Detroit is a municipal corporation organized under the laws of the State of Michigan.

34. Defendant Kevyn Orr is the appointed Emergency Manager for the City of Detroit, serving at the pleasure of the Governor of the State of Michigan. Mr. Orr is exercising control over the City and its actions.

## SUMMARY OF FACTS

35. For many years, the City of Detroit has agreed both by ordinance and by written contract to provide healthcare benefits to its employees and retired employees (and often their spouses and dependents) at no cost or significantly reduced costs to those employees and retirees.

36. The City of Detroit Code of Ordinances requires the City to provide healthcare coverage to its employees and retirees.

37. In addition, the City has agreed in a number of collective bargaining agreements freely negotiated with its employees to provide healthcare benefits at no or significantly reduced cost to those employees both during their employment and after their retirement.

38. The Retirees agreed to a compensation package which included the City's commitment to provide them (and their spouses and dependents) low-cost or no-cost healthcare benefits.

39. The City administers these healthcare benefit programs pursuant to the various agreements.

40. The City intended for these healthcare benefits to be considered a benefit guaranteed by the Michigan and federal constitutions for all Retirees.

41. Representative examples of the contractual language to which the City and its employees agreed include, but are not limited to:

   a. Agreement with the Michigan District Council 77 of the American Federation of State, County and Municipal Employees ("AFSCME"), AFL-CIO, for 1974-1977, by which the City agreed "to pay the premium for regular retirees" who retire on or after July 1, 1974, and one-half of the premium for spouses, for hospitalization and medical coverage;

   b. Master Agreement with Michigan Council 25 of the AFSCME, AFL-CIO, for 1977-80, by which the City agreed to "pay the premium [for hospitalization, medical insurance and optical care] for regular retirees and their spouses" for employees who retire on or after July 1, 1977; and

      c.      Consent Judgment between the City and all police officers who retired before April 9, 2007, all police lieutenants, sergeants and investigators who retired before August 1, 2008, and all police command officers who retired before August 1, 2008. The City agreed to pay all premiums for certain retirees and their spouses and cap the retiree/spouse premium at 20% of the total premium for all other retirees and spouses.

42.      Numerous other collective bargaining agreements guarantee the right of City Retirees to receive healthcare benefits for themselves and often their spouses at no cost or significantly reduced cost for their lives, consistent with the language contained in the CBA in existence at the time of their retirement.

43.      By operation of law and consistent with the parties' intent, all Retirees are entitled to receive for their lifetime the health insurance benefits in effect at the time of their retirement.

44.      In August of 2009, the City and the RDPFFA, along with the Detroit Police Officers Association (the "DPOA") settled a class action lawsuit which resulted in the entry of a consent judgment by the Wayne County Circuit Court. *Weiler v. City of Detroit*, No. 06-619737-CK (Wayne County Cir. Ct. Aug. 26, 2009) (hereafter referred to as the "*Weiler* judgment")

45.      The consent judgment was entered as a judgment by a state court. It guarantees certain healthcare benefits for retirees and their spouses and surviving spouses.

46.      The RDPFFA agreed to several harsh concessions, including increases in co-premiums, annual deductibles and co-pays, prescription co-pays, and other cost-sharing mechanisms in exchange for certainty in their healthcare costs and benefit levels.

47.      In the settlement and consent judgment, the City agreed that the healthcare promises contained within the consent judgment are "contractual" and "unchangeable."

48.      The terms of the judgment provide that it may only be modified by a "signed, written agreement of the parties."

## *The City's Recent Decision To Impair*
## *Its Retirees' Contractual Healthcare Benefits*

49. The City recently has faced well-publicized budgetary problems.

50. The City and State of Michigan recently decided to address these budget shortfalls. The Governor of Michigan declared a financial emergency for the City on March 28, 2013 and then appointed Defendant Mr. Orr to serve as the receiver for the City.

51. Shortly thereafter, the Governor designated Mr. Orr the Emergency Manager of the City pursuant to PA 436, M.C.L §141.1541, *et seq.*

52. The appointment of Mr. Orr was part of a plan developed in advance of the appointment to unilaterally reduce or eliminate the City's funding of the contractually-guaranteed healthcare benefits.

53. On July 18, 2013, Mr. Orr authorized the filing of a petition initiating a case under Chapter 9 of the United States Bankruptcy Code for the City of Detroit.

54. Shortly after Mr. Orr's appointment, he announced that the City unilaterally had decided not to honor its obligation to provide healthcare benefits at no cost or significantly reduced cost to the Retirees and their spouses, as required by ordinance and the CBAs.

55. Instead, according to Mr. Orr, the City will be reducing the annual amount spent by the City to procure healthcare benefits for its Retirees and their spouses and dependents by approximately 83% -- from approximately $180 million per year to approximately $30 million.

56. Under the City's plan, the rest of the premiums will have to come from the Retirees themselves or from federal subsidies available to non-Medicare eligible retirees under the Affordable Care Act.

57. For Medicare eligible and single Retirees, the City has been paying per-Retiree premiums amounting to approximately $340 to $560 per month under a variety of different plans.

The individual Retirees have been contributing up to $100 per month, depending on the type of coverage provided and the CBA requirements in existence at the time of the retiree's retirement.

58. For Medicare eligible and married Retirees, the City has been paying premiums amounting to approximately $680 to $1100 per month for the Retiree and spouse under a variety of different plans. The married Retirees have been contributing up to $440 per month, depending on the type of coverage provided and the CBA requirements in existence at the time of the retiree's retirement.

59. The 2014 Calendar Year Plan recently distributed by the City states that the City will be providing four Medicare Advantage Plans that provide far less coverage than was previously provided and will require the Retirees and their spouses to incur substantial additional expenses.

60. By way of example, 75% of Medicare eligible Retirees will see: (a) their deductibles quadruple from $175 to $750, (b) their medical co-pays and co-insurance out-of-pocket maximums double, and (c) their drug co-pays sky-rocket. On average, a Medicare-eligible Retiree and spouse will have to absorb increased costs of $5,900-$9,400 per year. Over the next 15 years, they will have to absorb increased costs of somewhere between $90,000-$140,000, respectively.

61. With respect to Retirees who are not eligible for Medicare, the City's Plan will significantly increase their premiums as well as their share of actual costs incurred. The City has been contributing premiums of between $604-$1,834 per month to provide coverage to these Retirees and their spouses (or $288-$829 for single Retirees), but now will be providing just $125 <u>total</u> per month (except for duty disabled Retirees who will receive either $300 or $400 per month, depending on whether they were uniformed employees). Except for a small number of

Retirees, this amount is insufficient and will require them to incur significant out-of-pocket premium charges just to procure a "Silver Level" policy (one that provides coverage for about 70% of the costs incurred)—far less than the 95% of costs previously covered by their policies.

62. By imposing additional premium charges on the front end and reduced cost coverage on the back end, the City is reducing its share of the total healthcare costs for the Retirees not eligible for Medicare from 72% of the total costs to 15%, while increasing the Retirees' share from 28% to 85%.

63. On the healthcare exchanges, a Retiree who makes $29,000 annually would have to pay an additional $812 in annual premiums (above the City's contribution and any federal subsidy) just to procure a policy that will cover only about 70% of his costs. Retirees who make $46,000 would have to pay $4210 annually.

64. These additional expenditures are beyond the means of most Retirees, many of whom survive on a modest income.

65. The City's contractual breaches result in a substantial impairment of the Retirees' contract rights.

66. Unable to afford comparable coverage, the non-Medicare eligible Retirees will have no choice but to procure inferior coverage which will materially increase their deductibles and/or co-pays. These Retirees will be able to procure, at best, only "silver" or "bronze" level healthcare coverage for themselves for the amount of money provided by the City (and nothing for their spouses). That means these Retirees will see the amount of healthcare costs covered by their insurance drop from $.95 out of every $1.00 spent to approximately $.70 out of every $1.00.

67. Because of the additional costs associated with medical treatment, significant and important medical procedures and/or treatment will now be beyond the financial means of many Retirees.

68. The City has breached its contracts with the Retirees.

69. The City has unilaterally and significantly impaired its contracts with its Retirees.

70. The City's actions result in a substantial impairment of the Retirees' contracts and rights with the City.

71. The Retirees will suffer significant harm and substantial damages because of the City's breaches.

72. The harm that will be suffered by the Retirees is irreparable. Because significant health concerns, and possibly life and death issues, are created by the City's actions, monetary damages are insufficient to compensate the Retirees for the City's breaches.

73. There is no significant or legitimate public purpose for the City's actions or for Mr. Orr's actions.

74. Neither the actions of the City nor of Mr. Orr are of the appropriate character given the public interest at issue to justify the contractual modifications.

75. The City's significant and substantial impairment of its contracts with the Retirees is not necessary to achieving any important public purpose. Less drastic options, that would not result in a substantial impairment of the Retirees' contracts, were and are available to the City and Mr. Orr.

76. Mr. Orr has explained that he plans to divert the money saved from the breach of these contracts to other uses. He is prioritizing these other uses over the contractual rights of the City's Retirees. Among the beneficiaries of Mr. Orr's prioritization are wealthy banks that had

their unsecured interests in the City converted into allegedly "secured" interests through improper transactions.

77. The actions of the City and Mr. Orr are *ultra vires*. Neither the City nor Mr. Orr have authority to alter the retirement benefits of the Retirees.

78. The Local Financial Stability and Choice Act, MCLA § 141.1541, *et seq.*, does not authorize the City or Mr. Orr to alter the retirement benefits of the Retirees.

79. The actions of the City and Mr. Orr deprive the Retirees of their property interest without due process of law.

80. The actions of the City and Mr. Orr violate the Michigan Constitution and the United States Constitution.

81. Plaintiffs bring this action on behalf of all City of Detroit Retirees (and their spouses and dependents) with whom the City contractually or by ordinance agreed to provide healthcare coverage at no cost or significantly reduced cost to the Retiree.

82. There are questions of law and fact common to all of the Retirees, including legal and factual questions pertaining to the retirement health benefits provided under applicable collective bargaining agreements and ordinances and past practices, and to the propriety under federal and state law of Defendants' discontinuation or modification, and threatened discontinuation or modification, of various healthcare benefits.

83. Defendants' wrongful acts were undertaken on grounds that are generally applicable to all of the Retirees, making final injunctive relief or corresponding declaratory relief appropriate with respect to all of them.

## COUNT I
### *(42 U.S.C. §1983 -- UNCONSTITUTIONAL IMPAIRMENT OF CONTRACT RIGHTS)*

84. Paragraphs 1-83 are incorporated and restated in this count.

13

85. The Contract Clause of the United States Constitution provides that "[n]o State shall . . . pass any . . . law impairing the obligation of contracts . . . ." U.S. Const. Article I, §10, Clause 1. Analogous protections are secured under Article I, Section 10 of the Michigan Constitution of 1963.

86. The contracts and promises between the Retirees and the City of Detroit are contracts within the meaning of the Contracts Clause. The City's ordinances, past practices, handbooks and promises also create enforceable contract rights for non-union Retirees.

87. The City's actions will impose a significant and substantial impairment of the Retirees' contractual rights.

88. The City's significant and substantial impairment is not necessary, reasonable or appropriate to achieve its stated goal and purpose.

89. 42 U.S.C. §1983 provides a cause of action against any persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" who cause "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

90. The Retirees have suffered or will suffer significant, substantial and irreparable harm due to the actions of the Defendants.

91. The harms caused by Defendants' actions cannot be remedied merely through monetary damages.

92. Defendant Mr. Orr, acting under color of state law, caused the deprivation of rights, privileges and immunities secured under the Contracts Clause. He has caused the deprivation of rights, privileges and immunities secured under the Contracts Clause.

93. Defendant City of Detroit has caused the deprivation of rights, privileges, or immunities secured by the Contracts Clause acting under color of state statute, ordinance, custom and regulation, including an official policy or custom adopted by the City.

## COUNT II
### (VIOLATION OF MICHIGAN CONSTITUTION)

94. Paragraphs 1-83 are incorporated and restated in this count.

95. Section 10 of the Michigan Constitution provides that no "law impairing the obligation of contract shall be enacted."

96. The contracts and promises between the Retirees and the City of Detroit are contracts within the meaning of the Michigan Contracts Clause. The City's ordinances, past practices, handbooks and promises also create enforceable contract rights for non-union Retirees.

97. The City's actions will impose a significant and substantial impairment of the Retirees' contractual rights.

98. The City's significant and substantial impairment is not necessary, reasonable or appropriate to achieve its stated goal and purpose.

99. The Retirees have suffered or will suffer significant, substantial and irreparable harm due to the actions of the Defendants.

100. The harms caused by Defendants' actions cannot be remedied merely through monetary damages.

101. Defendant Mr. Orr, acting under color of state law, caused the deprivation of rights, privileges and immunities secured under the Michigan Contracts Clause.

102. Defendant City of Detroit has caused the deprivation of rights, privileges, or immunities secured by the Michigan Contracts Clause acting under color of state statute, ordinance, custom and regulation, including an official policy or custom adopted by the City.

15

# COUNT III
## *(42 U.S.C. §1983 -- UNCONSTITUTIONAL DEPRIVATION OF PROPERTY INTEREST WITHOUT DUE PROCESS)*

103. Paragraphs 1-83 are incorporated and restated in this count.

104. The Fourteenth Amendment to the United States Constitution provides that no person shall be deprived of property without due process of law.

105. In unilaterally deciding not to comply with the terms of their contracts with the Retirees, the City deprived the Retirees of their vested property rights to healthcare benefits without due process, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

106. The Retirees have a property interest in their contractually-guaranteed healthcare benefits. The contracts and promises between the Retirees and the City are contracts establishing property rights under state and federal law. Additionally, City of Detroit ordinances, past practices, handbooks and promises also establish property interests for union and non-union retirees.

107. Prior to the deprivation of a property interest, the Retirees were not given an adequate or meaningful hearing or opportunity to be heard upon notice of the deprivation of their property interests. The Retirees also have not been given an adequate post-deprivation opportunity to be heard.

108. 42 U.S.C. §1983 provides a cause of action against any persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" who cause "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

109. The Retirees have suffered or will suffer significant, substantial and irreparable harm due to the actions of the Defendants.

110. The harms caused by Defendants' actions cannot be remedied merely through the award of monetary damages.

## COUNT IV
### *(FULL FAITH AND CREDIT)*

111. Paragraphs 1-83 are incorporated and restated in this Count.

112. The *Weiler* settlement and consent judgment is valid and enforceable.

113. Under the Full Faith and Credit principles in the United State Constitution and statutes, this court must recognize and enforce the *Weiler* judgment to its letter.

114. The Full Faith and Credit statute provides that state and territorial "Acts, records and judicial proceedings or copies thereof . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. 1738.

115. This statute requires the enforcement of the judgment unless it is shown that the judgment was entered without jurisdiction. The *Weiler* judgment was not entered without jurisdiction.

116. A federal court, including a bankruptcy court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered.

117. In the bankruptcy context, the principles of full faith and credit require a federal court to give a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered.

118. Full faith and credit requires enforcement of the Wayne County Circuit Court's judgment . The *Weiler* judgment is a state-court judgment deserving of recognition and

enforcement by this Court in accordance with 28 U.S.C. 1738 and the guarantees afforded to retirees therein must be upheld

119.  The City of Detroit is violating the terms of the *Weiler* judgment and is attempting to walk away from its obligations under the *Weiler* judgment.

120.  The *Weiler* plaintiffs have been severely harmed by the City of Detroit's failure to comply with the *Weiler* judgment. The *Weiler* plaintiffs would be severely harmed by a failure to enforce the judgment in that case.

## **PRAYER FOR RELIEF**

WHEREFORE, the Committee prays that this Court:

A.  Enter an order compelling the Defendant to cease and desist from engaging in the wrongful acts complained of herein.

B.  Enter an order enjoining Defendants from implementing the changes to retiree health insurance coverage described in the 2014 Calendar Year City of Detroit Retiree Healthcare Plan.

Respectfully submitted,

By: /s/ Matthew E. Wilkins

| | |
|---|---|
| Claude Montgomery | Sam Alberts |
| Carole Neville | Dan Barnowski |
| DENTONS US LLP | DENTONS US LLP |
| 1221 Avenue of the Americas | 1301 K Street, NW, Suite 600 East Tower |
| New York, New York 10020 | Washington, DC 20005 |
| Tel:    (212) 768-6700 | Tel: (202) 408-6400 |
| Fax:   (212) 768-6800 | Fax: (202) 408-6399 |
| claude.montgomery@dentons.com | sam.alberts@dentons.com |
| carole.neville@dentons.com | dan.barnowski@dentons.com |

BROOKS WILKINS SHARKEY & TURCO PLLC
Matthew E. Wilkins  (P56697)
Paula A. Hall  (P61101)
401 South Old Woodward, Suite 400

Birmingham, Michigan  48009
Direct:  (248) 971-1711
Cell:  (248) 882-8496
Fax:  (248) 971-1801
wilkins@bwst-law.com
hall@bwst-law.com

*Attorneys for the Official Committee of Retirees of the City of Detroit, Michigan*

LIPPITT O'KEEFE, PLLC
Ryan C. Plecha
370 E. Maple, 3rd Floor
Birmingham, MI  48009
Direct:  (248) 646-8292
Fax:  (248) 646-8375
www.lippittokeefe.com
rplecha@lippittokeefe.com

*Attorneys for Retired Detroit Police and Fire Fighters Association and the Detroit Retired City Employees Association*

MILLER COHEN, PLC
Bruce Miller
Richard G. Mack, Jr.
600 West Lafayette, 4th floor
Detroit, Michigan 48226
Tel:     (313)-964-4454
Fax:    (313)-964-4490
RichardMack@millercohen.com

*Attorneys for AFSCME Sub-Chapter 98, City of Detroit Retirees*