B1 (Official Form 1) (04/13)

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**

**VOLUNTARY PETITION**

| Name of Debtor (if individual, enter Last, First, Middle): City of Detroit, Michigan | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all): 38-6004606 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State): 2 Woodward Avenue Suite 1126 Detroit, Michigan     48226 | Street Address of Joint Debtor (No. and Street, City, and State):      ZIP CODE |
| County of Residence or of the Principal Place of Business: Wayne | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):      ZIP CODE | Mailing Address of Joint Debtor (if different from street address):      ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):      ZIP CODE | |

| Type of Debtor (Form of Organization) (Check one box.) | Nature of Business (Check one box.) | Chapter of Bankruptcy Code Under Which the Petition Is Filed (Check one box.) |
|---|---|---|
| ☐ Individual (includes Joint Debtors) *See Exhibit D on page 2 of this form.* ☐ Corporation (includes LLC and LLP) ☐ Partnership ☒ Other (If debtor is not one of the above entities, check this box and state type of entity below.) **Municipality** | ☐ Health Care Business ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B) ☐ Railroad ☐ Stockbroker ☐ Commodity Broker ☐ Clearing Bank ☒ Other | ☐ Chapter 7 ☒ Chapter 9 ☐ Chapter 11 ☐ Chapter 12 ☐ Chapter 13     ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding |

| Chapter 15 Debtors | Tax-Exempt Entity (Check box, if applicable.) | Nature of Debts (Check one box.) |
|---|---|---|
| Country of debtor's center of main interests: Each country in which a foreign proceeding by, regarding, or against debtor is pending: | ☐ Debtor is a tax-exempt organization under title 26 of the United States Code (the Internal Revenue Code). | ☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose." ☒ Debts are primarily business debts. |

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☒ Full Filing Fee attached. ☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A. ☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box: ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). ☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D). Check if: ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 *(amount subject to adjustment on 4/01/16 and every three years thereafter)*. Check all applicable boxes: ☐ A plan is being filed with this petition. ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

**Statistical/Administrative Information**

☒ Debtor estimates that funds will be available for distribution to unsecured creditors.
☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| ☐ 1-49 | ☐ 50-99 | ☐ 100-199 | ☐ 200-999 | ☐ 1,000-5,000 | ☐ 5,001-10,000 | ☐ 10,001-25,000 | ☐ 25,001-50,000 | ☐ 50,001-100,000 | ☒ Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ☐ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☒ $500,000,001 to $1 billion | ☒ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ☐ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☒ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

B1 (Official Form 1) (04/13)

| Voluntary Petition | Name of Debtor(s): |
| (This page must be completed and filed in every case.) | City of Detroit, Michigan |

**All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.)

| Location Where Filed: | Case Number: | Date Filed: |
| Location Where Filed: | Case Number: | Date Filed: |

**Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.)

| Name of Debtor: | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

---

**Exhibit A**

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)

☐ Exhibit A is attached and made a part of this petition.

**Exhibit B**

(To be completed if debtor is an individual whose debts are primarily consumer debts.)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).

X _____
   Signature of Attorney for Debtor(s)     (Date)

---

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☒ Yes, and Exhibit C is attached and made a part of this petition.

☐ No.

---

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D, completed and signed by the debtor, is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D, also completed and signed by the joint debtor, is attached and made a part of this petition.

---

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

---

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

B1 (Official Form 1) (04/13)

| Voluntary Petition | Name of Debtor(s): |
| *(This page must be completed and filed in every case.)* | City of Detroit, Michigan |

**Signatures**

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

Telephone Number (if not represented by attorney)

Date

**Signature of Attorney***

X _____
Signature of Attorney for Debtor(s)

David G. Heiman
Heather Lennox
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Tel: (216) 586-3939
Fax: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Tel: (213) 243-2382
Fax: (213) 243-2539
bbennett@jonesday.com

Jonathan S. Green
Stephen S. LaPlante
MILLER, CANFIELD
PADDOCK AND STONE,
P.L.C.
150 West Jefferson
Suite 2500
Detroit, MI 48226
Tel: (313) 963-6420
Fax: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

July 18, 2013
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

Kevyn D. Orr
Printed Name of Authorized Individual

Emergency Manager, City of Detroit
Title of Authorized Individual

July 18, 2013
Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
(Signature of Foreign Representative)

(Printed Name of Foreign Representative)

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

Printed Name and title, if any, of Bankruptcy Petition Preparer

Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

Address

X _____
Signature

Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

B 1C (Official Form 1, Exhibit C) (9/01)

*[If, to the best of the debtor's knowledge, the debtor owns or has possession of property that poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety, attach this Exhibit "C" to the petition.]*

# UNITED STATES BANKRUPTCY COURT

### Eastern District of Michigan

| | | |
|---|---|---|
| In re   City of Detroit, Michigan, | ) | Case No. 13-_____ |
| Debtor. | ) | |
| | ) | |
| | ) | Chapter   9 |

## EXHIBIT "C" TO VOLUNTARY PETITION

1. Identify and briefly describe all real or personal property owned by or in possession of the debtor that, to the best of the debtor's knowledge, poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety (attach additional sheets if necessary):

Certain properties owned by City of Detroit, Michigan (the "City") have been (a) identified by the City as being structurally unsound and in danger of collapse and (b) scheduled for demolition (collectively, the "Demolition Properties"). The Demolition Properties may pose a threat of imminent harm to public health and/or safety. A list of the Demolition Properties is attached hereto as Schedule 1.

To its knowledge, the City currently does not own any property that is a Superfund Site as designated by the United States Environmental Protection Agency. The City currently owns (in whole or in part) various so-called "Brownfields properties" (collectively, the "Brownfields Properties") regulated by the Michigan Department of Environmental Quality. Currently, one or more private parties (rather than the City) are addressing any identified environmental conditions that might be present at the Brownfields Properties. To the City's knowledge, none of the Brownfields Properties are alleged to pose a threat of imminent and identifiable harm to the public health or safety. A representative list of certain Brownfields Properties is attached hereto as Schedule 2.

In addition to the foregoing, the City owns or is possession of approximately 60,000 parcels of land within the City's geographic boundaries and more than 7,000 vacant structures that are not designated as Demolition Properties or Brownfields Properties (collectively, the "Blighted Properties"). It is possible that some of the Blighted Properties could pose a threat to public health or safety. Although the City is not aware of any Blighted Properties currently posing a threat of "imminent and identifiable harm," the City notes the existence of these properties on this Exhibit C out of an abundance of caution.

2. With respect to each parcel of real property or item of personal property identified in question 1, describe the nature and location of the dangerous condition, whether environmental or otherwise, that poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety (attach additional sheets if necessary):

See attached Schedule 1 with respect to the Demolition Properties and the attached Schedule 2 with respect to the Brownfields Properties.

## SCHEDULE 1

### City of Detroit, Michigan Demolition Properties

| Street Address | Property Type |
|---|---|
| 3922 14th | Residential |
| 3654 30th | Residential |
| 12032 Abington | Residential |
| 2668 Anderdon | Residential |
| 821 Anderson | Commercial |
| 13501 Appoline | Residential |
| 7593 Arcola | Residential |
| 14125 Ardmore | Residential |
| 13476 Arlington | Residential |
| 13544 Arlington | Residential |
| 10384 Aurora | Residential |
| 2457 Beaubien | Commercial |
| 2486 Beaubien | Residential |
| 14371 Bentler | Residential |
| 5317 Bewick | Residential |
| 19411 Blake | Residential |
| 19700 Bloom | Residential |
| 6072 Braden | Residential |
| 9665 Broadstreet | Residential |
| 9616 Bryden | Residential |
| 6810 Bulwer | Commercial |
| 1454 Burlingame | Residential |
| 13469 Caldwell | Residential |
| 2009 Campbell | Residential |
| 14203 E. Canfield | Residential |
| 19221 Cardoni | Residential |
| 19324 Carrie | Residential |
| 7626 Central | Residential |
| 2535 Chalmers | Residential |
| 8115 Chamberlain | Residential |
| 13199 Charest | Residential |
| 20190 Charleston | Residential |
| 3164 Charlevoix | Commercial |
| 5083 Chatsworth | Residential |
| 5717 Chene | Commercial |
| 3636 Cicotte | Residential |
| 3032 Clements | Residential |
| 1117 Concord | Residential |
| 6628 Crane | Residential |
| 1243 Crawford | Residential |
| 2012 Dalzelle | Residential |
| 20258 Danbury | Residential |
| 7787 Dayton | Residential |
| 8475 Dearborn | Residential |
| 1950 Dearing | Residential |
| 1956 Dearing | Residential |
| 1960 Dearing | Residential |
| 2027 Dearing | Residential |
| 8839 Dennison | Residential |

| Street Address | Property Type |
|---|---|
| 20245 Derby | Residential |
| 125 Dey | Residential |
| 14190 Dolphin | Residential |
| 229 Edmund Pl. | Commercial |
| 3333 Edsel | Residential |
| 203 Erskine | Residential |
| 209 Erskine | Residential |
| 4417 Ewers | Residential |
| 19332 Exeter | Residential |
| 19339 Exeter | Residential |
| 20467 Exeter | Residential |
| 1731 Fischer | Residential |
| 13556 Fleming | Residential |
| 7666 W. Fort | Commercial |
| 5334 French Rd. | Residential |
| 6007 Frontenac | Commercial |
| 18627 Gable | Residential |
| 3727 Garland | Residential |
| 3917 Garland | Residential |
| 4466 Garland | Residential |
| 4470 Garland | Residential |
| 4003 Gilbert | Residential |
| 12511 Glenfield | Residential |
| 14232 Goddard | Residential |
| 14239 Goddard | Residential |
| 11648 Grandmont | Residential |
| 5801 Grandy [1] | Commercial |
| 5801 Grandy [2] | Commercial |
| 2937 Grant | Residential |
| 5589 Guilford | Residential |
| 222 S. Harbaugh | Residential |
| 2900 Harding | Residential |
| 8815 Harper | Commercial |
| 17226 Hasse | Residential |
| 7975 Hathon | Residential |
| 19227 Havana | Residential |
| 19309 Havana | Residential |
| 19321 Havana | Residential |
| 19397 Havana | Residential |
| 7886 Helen | Residential |
| 6200 Hereford | Residential |
| 9905 Herkimer | Residential |
| 1955 Highland | Residential |
| 1778 Holcomb | Residential |
| 4407 Holcomb | Residential |
| 4412 Holcomb | Residential |
| 7202 Holmes | Residential |
| 9278 Holmur | Residential |
| 19925 Hoover | Commercial |

| Street Address | Property Type |
| --- | --- |
| 6360 Horatio | Residential |
| 15518 Idaho [1] | Commercial |
| 15518 Idaho [2] | Commercial |
| 12748 Ilene | Residential |
| 20136 Ilene | Residential |
| 15778 Iliad | Residential |
| 5290 Ivanhoe | Residential |
| 6435 Julian | Commercial |
| 8545 Kenney | Residential |
| 13989 Kentucky | Residential |
| 13301 Kercheval | Commercial |
| 5925 Kopernick | Residential |
| 17137 Lamont | Residential |
| 17208 Lamont | Residential |
| 3839 Lanman | Residential |
| 5206 Lawndale | Residential |
| 2194 Lemay | Residential |
| 3958 Lemay | Residential |
| 1601 Liddesdale | Residential |
| 1029 Liebold | Residential |
| 5065 Lillibridge | Commercial |
| 15744 Livernois | Residential |
| 12558 Longview | Residential |
| 12767 Loretto | Residential |
| 8881 Louis | Residential |
| 13441 Lumpkin | Commercial |
| 14242 Mack (a/k/a 3181 Lakewood) | Residential |
| 12368 MacKay | Residential |
| 12393 MacKay | Residential |
| 12398 MacKay | Residential |
| 13569 MacKay | Residential |
| 13909 MacKay | Residential |
| 13927 MacKay | Residential |
| 13952 MacKay | Residential |
| 13977 MacKay | Residential |
| 13983 MacKay | Residential |
| 459 Manistique | Residential |
| 12000 Mansfield | Residential |
| 8129 Marcus | Residential |
| 4588 Marseilles | Residential |
| 9343 N. Martindale | Residential |
| 8320 Maxwell | Residential |
| 8326 Maxwell | Commercial |
| 4766 McDougall | Residential |
| 2122 Meade | Residential |
| 2420 Meade | Residential |
| 3697 Medbury | Residential |
| 11654 Meyers | Residential |
| 8911 Milner | Residential |
| 2652 Norman | Residential |
| 10002 Nottingham | Residential |

| Street Address | Property Type |
| --- | --- |
| 5115 Nottingham | Residential |
| 8811 Olivet | Residential |
| 8917 Otsego | Residential |
| 15799 Parkside | Residential |
| 18401 Pembroke | Residential |
| 11172 Promenade | Residential |
| 2101 Puritan | Commercial |
| 5807 Renville | Residential |
| 1957 Richton | Residential |
| 534 W. Robinwood | Residential |
| 6119 Rohns | Residential |
| 14381 Rosa Parks Blvd. | Unknown |
| 11735 Rutherford | Residential |
| 6835 Seminole | Residential |
| 5737 E. Seven Mile | Commercial |
| 2008 Sharon | Residential |
| 13422 Shields | Residential |
| 10201 Shoemaker | Commercial |
| 10956 Shoemaker | Commercial |
| 6750 Sparta | Residential |
| 14291 Spring Garden | Commercial |
| 4467 St. Clair | Residential |
| 6915 St. John | Residential |
| 7180 St. John | Residential |
| 18805 St. Louis | Commercial |
| 1928 Stanley | Residential |
| 12746 Strasburg | Residential |
| 8104 Thaddeus | Residential |
| 4832 Toledo | Residential |
| 6195 Townsend | Residential |
| 9778 Traverse | Residential |
| 17231 Trinity | Residential |
| 2634 Tuxedo | Residential |
| 2522-4 Tyler | Residential |
| 2660 Tyler | Commercial |
| 9526 Van Dyke | Residential |
| 2030 Vinewood | Commercial |
| 5757 Vinewood | Residential |
| 15451 Virgil | Commercial |
| 15300 E. Warren (Bldgs. 101 & 102) | Commercial |
| 64 Watson | Unknown |
| 6414 Willette | Residential |
| 4364 Woodhall | Residential |
| 11640 Woodmont | Residential |
| 12075 Woodmont | Residential |
| 12136 Woodmont | Residential |
| 12153 Woodmont | Residential |
| 11365 Yosemite | Residential |
| 11402 Yosemite | Residential |

## SCHEDULE 2

## City of Detroit, Michigan Brownfields Properties

| Name of Site | Description |
|---|---|
| | 7819 West Jefferson Avenue |
| Former Detroit Coke Site | |
| Belleview Development (Uniroyal) Site | 600 East Jefferson. 43-acre former Uniroyal site located in the East Riverfront District, bounded by Jefferson Avenue (to the north), MacArthur Bridge (to the east), Detroit River (to the south) and Meldrum Street (to the west). |
| Riverside Park Site | 3085 West Jefferson Avenue. West Grand Boulevard and 24th Street along the Detroit River. |



## EMERGENCY MANAGER
## CITY OF DETROIT

### ORDER No. 13

### FILING OF A PETITION UNDER CHAPTER 9
### OF TITLE 11 OF THE UNITED STATES CODE

By the Authority Vested in the Emergency Manager
For the City of Detroit
Pursuant to Michigan's Public Act 436 of 2012,
Kevyn D. Orr, the Emergency Manager,
Issues the Following Order:

*Whereas,* on March 28, 2013, Michigan Public Act 436 of 2012 ("PA 436") became effective and Kevyn D. Orr became the Emergency Manager (the "EM") for the City of Detroit (the "City") with all the powers and duties provided under PA 436; and

Pursuant to section 9(2) of PA 436, the EM "shall act for and in the place and stead of" the Detroit Mayor and City Council; and

Section 9(2) of PA 436 also grants the EM "broad powers in receivership to rectify the financial emergency and to assure the fiscal accountability of the [City] and the [City's] capacity to provide or cause to be provided necessary governmental services essential to the public health, safety, and welfare;" and

Pursuant to section 10(1) of PA 436, the EM may "issue to the appropriate local elected and appointed officials and employees, agents, and contractors of the local government the orders the [EM] considers necessary to accomplish the purposes of this act;" and

Section 18(1) of PA 436 provides that "[i]f, in the judgment of the [EM], no reasonable alternative to rectifying the financial emergency of the local government which is in receivership exists, then the [EM] may recommend to the governor and the

state treasurer that the local government be authorized to proceed under chapter 9" of title 11 of the United States Code (the "Bankruptcy Code"); and

Section 18(1) of PA 436 further provides that "[i]f the governor approves of the [EM's] recommendation, the governor shall inform the state treasurer and the emergency manager in writing of the decision.... Upon receipt of the written approval, the emergency manager is authorized to proceed under chapter 9 [of the Bankruptcy Code]. This section empowers the local government for which an emergency manager has been appointed to become a debtor under [the Bankruptcy Code], as required by section 109 of [the Bankruptcy Code], and empowers the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9" of the Bankruptcy Code; and

In accordance with section 18 of PA 436, the EM has recommended to the Governor of Michigan (the "Governor") and the Michigan State Treasurer (the "State Treasurer") that the City be authorized to proceed under chapter 9 of the Bankruptcy Code (the "Recommendation"); and

The Governor has provided the State Treasurer and the EM with his written approval of the Recommendation, a true and correct copy of which is attached hereto as Exhibit A, thereby authorizing the City to proceed under chapter 9.

It is hereby ordered that:

1. The City shall file a petition for relief under chapter 9 of the Bankruptcy Code (the "Petition") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court").

2. The City's Corporation Counsel, financial advisors, outside legal advisors and other officers and employees of the City, as applicable, are hereby authorized and directed, on behalf of and in the name of the City, to execute and verify the Petition and related Bankruptcy Court filings and perform any and all such acts as are reasonable, appropriate, advisable, expedient, convenient, proper or necessary to carry out this Order, as and to the extent directed by the EM or his designee.

3. If any component of this Order is declared illegal, unenforceable or ineffective in a legal or other forum or proceeding such component shall be deemed severable so that all other components contained in this Order shall remain valid and effective.

4. This Order is effective immediately upon the date of execution below.

5. This Order shall be distributed to the Mayor, City Council members and all department heads.

6.  The EM may modify, rescind, or replace this Order at any time.

By: _____
Kevyn D. Orr
Emergency Manager
City of Detroit

Dated: July 18, 2013

cc:  State of Michigan Department of Treasury
Mayor David Bing
Members of Detroit City Council

# EXHIBIT A

## Governor's Written Approval of Recommendation



STATE OF MICHIGAN
EXECUTIVE OFFICE
LANSING

RICK SNYDER
GOVERNOR

BRIAN CALLEY
LT. GOVERNOR

July 18, 2013

VIA HAND AND ELECTRONIC DELIVERY

Kevyn D. Orr
Emergency Manager
City of Detroit
Coleman A. Young Municipal Center
2 Woodward Ave., Suite 1126
Detroit, MI 48226

Andrew Dillon
State Treasurer
Michigan Department of Treasury
4th Floor Treasury Building
430 W. Allegan Street
Lansing, MI 48992

Re: Authorization to Commence Chapter 9 Bankruptcy Proceeding

Dear Mr. Orr and Mr. Dillon,

I have reviewed Mr. Orr's letter of July 16, 2013, requesting my approval of his recommendation to commence a bankruptcy proceeding for the City of Detroit under Chapter 9 of title 11 of the United States Code. As you know, state law requires that any such recommendation must first be approved by the Governor before the emergency manager may take that step. MCL 141.1558. For the reasons discussed below, I hereby approve that recommendation and authorize Mr. Orr to make such a filing.

## Current Financial Emergency

In reviewing Mr. Orr's letter, his Financial and Operating Plan, and his report to creditors, it is clear that the financial emergency in Detroit cannot be successfully addressed outside of such a filing, and it is the only reasonable alternative that is available. In other words, the City's financial emergency cannot be satisfactorily rectified in a reasonable period of time absent this filing.

I have reached the conclusion that this step is necessary after a thorough review of all the available alternatives, and I authorize this necessary step as a last resort to return this great City to financial and civic health for its residents and taxpayers. This decision comes in the wake of 60 years of decline for the City, a period in which reality was often

GEORGE W. ROMNEY BUILDING • 111 SOUTH CAPITOL AVENUE • LANSING, MICHIGAN 48909
www.michigan.gov

ignored. I know many will see this as a low point in the City's history. If so, I think it will also be the foundation of the City's future -- a statement I cannot make in confidence absent giving the City a chance for a fresh start, without burdens of debt it cannot hope to fully pay. Without this decision, the City's condition would only worsen. With this decision, we begin to provide a foundation to rebuild and grow Detroit.

Both before and after the appointment of an emergency manager, many talented individuals have put enormous energy into attempting to avoid this outcome. I knew from the outset that it would be difficult to reverse 60 years of decline in which promises were made that did not reflect the reality of the ability to deliver on those promises. I very much hoped those efforts would succeed without resorting to bankruptcy. Unfortunately, they have not. We must face the fact that the City cannot and is not paying its debts as they become due, and is insolvent.

After reading Mr. Orr's letter, the Financial and Operating Plan, and the report to creditors, I have come to four conclusions.

1. Right now, the City cannot meet its basic obligations to its citizens.

2. Right now, the City cannot meet its basic obligations to its creditors.

3. The failure of the City to meet its obligations to its citizens is the primary cause of its inability to meet its obligations to its creditors.

4. The only feasible path to ensuring the City will be able to meet obligations in the future is to have a successful restructuring via the bankruptcy process that recognizes the fundamental importance of ensuring the City can meet its basic obligations to its citizens.

I will explain how I came to each conclusion.

**Inability to Meet Obligations to Its Citizens.** As Mr. Orr's Financial and Operating Plan and the June 14 Creditor Proposal have noted, the scale and depth of Detroit's problems are unique. The City's unemployment rate has nearly tripled since 2000 and is more than double the national average. Detroit's homicide rate is at the highest level in nearly 40 years, and it has been named as one of the most dangerous cities in America for more than 20 years. Its citizens wait an average of 58 minutes for the police to respond to their calls, compared to a national average of 11 minutes. Only 8.7% of cases are solved, compared to a statewide average of 30.5%. The City's police cars, fire trucks, and ambulances are so old that breakdowns make it impossible to keep up the fleet or properly carry out their roles. For instance, only a third of the City's ambulances were in service in the first quarter of 2013. Similarly, approximately 40% of the City's street lights were not functioning in that quarter and the backlog of complaints is more than 3,300 long. Having large swaths of largely abandoned structures -- approximately 78,000 -- creates additional public safety problems and reduces the quality of life in the City. Mr. Orr is correct that meeting the obligations the City has to

its citizens to provide basic services requires more revenue devoted to services, not less.

**Inability to Meet Obligations to Its Creditors.** The City has more than $18 billion in accrued obligations. A vital point in Mr. Orr's letter is that Detroit tax rates are at their current legal limits, and that even if the City was legally able to raise taxes, its residents cannot afford to pay additional taxes. Detroiters already have a higher tax rate than anywhere in Michigan, and even with that revenue the City has not been able to keep up with its basic obligations, both to its citizens and creditors. Detroit simply cannot raise enough revenue to meet its current obligations, and that is a situation that is only projected to get worse absent a bankruptcy filing.

**Failure to Meet Obligations to Citizens Creates Failure to Meet Obligations to Creditors.** Mr. Orr's letter and prior report put in stark reality the dramatic impact of the City's plummeting population. While many who love Detroit still live there, many other Detroiters at heart could not justify the sacrifice of adequate services. The City's population has declined 63% from its peak, including a 28% decline since 2000. That exodus has brought Detroit to the point that it cannot satisfy promises it made in the past. A decreasing tax base has made meeting obligations to creditors impossible. Mr. Orr is correct when he says the City cannot raise the necessary revenue through tax increases, and it cannot save the necessary revenue through reducing spending on basic services. Attempts to do so would only decrease the population and tax base further, making a new round of promises unfulfillable.

**Only One Feasible Path Offers a Way Out.** The citizens of Detroit need and deserve a clear road out of the cycle of ever-decreasing services. The City's creditors, as well as its many dedicated public servants, deserve to know what promises the City can and will keep. The only way to do those things is to radically restructure the City and allow it to reinvent itself without the burden of impossible obligations. Despite Mr. Orr's best efforts, he has been unable to reach a restructuring plan with the City's creditors. I therefore agree that the only feasible path to a stable and solid Detroit is to file for bankruptcy protection.

The past weeks have reaffirmed my confidence that Mr. Orr has the right priorities when it comes to the City of Detroit. I am reassured to see his prioritization of the needs of citizens to have improved services. I know we share a concern for the public employees who gave years of service to the City and now fear for their financial future in retirement, and I am confident that all of the City's creditors will be treated fairly in this process. We all believe that the City's future must allow it to make the investment it needs in talent and in infrastructure, all while making only the promises it can keep. Let us remain in close communication regarding measures Mr. Orr might take so we can discuss the possible impacts that might occur both within and outside of the City.

### Contingencies

2012 PA 436 provides that my approval of the recommendation to commence a Chapter 9 proceeding may place contingencies on such a filing. MCL 141.1558(1). I am choosing not to impose any such contingencies today. Federal law already contains the most important contingency – a requirement that the plan be legally executable. 11 USC 943(b)(4).

### Conclusion

In conclusion, I find Mr. Orr's Recommendation Letter to be persuasive, especially in conjunction with his prior reports laying out the level of services the City can provide and its financial ability to meet its obligations to creditors. I am also convinced that Mr. Orr has exercised his best efforts to arrive at a restructuring plan with the City's creditors outside of bankruptcy, to no avail. Given these facts, the only feasible path to sustainability for the City of Detroit is a filing under chapter 9 of the bankruptcy code. Therefore, I hereby approve Mr. Orr's recommendation and authorize the emergency manager to make such a filing on behalf of the City of Detroit and to take all actions that are necessary and appropriate toward that end.

Sincerely,

Richard D. Snyder
Governor
State of Michigan

Dept of Attorney General

JUL 3 1 2013

State Operations Division
RECEIVED

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

        Plaintiffs,

        vs

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

        Defendants.

Case No. 13-734-CZ

HON. ROSEMARIE AQUILINA

---

John R. Canzano (P30417)
McKnight, McClow, Canzano,
   Smith & Radke, P.C.
400 Galleria Officentre, Suite 117
Southfield, Michigan 48034
(248) 345-9650
jcanzano@michworklaw.com
Counsel for Plaintiffs

Thomas Quasarano (P27982)
Brian Devlin (P34685)
Assistant Attorneys General
Department of Attorney General
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-1162
quasaranot@michigan.gov
devlinb@michigan.gov
Attorneys for Defendants

---

## **PROOF OF SERVICE**

I certify that a copy of the Notice of Suggestion of Pendency of Bankruptcy Case and

Application of the Automatic Stay and this Proof of Service were served via electronically and

ordinary first class, U.S. mail, this 19th day of July 19, 2013, in a properly addressed, sealed

envelope, with postage fully prepaid, upon the following:

John R. Canzano (P30417)
McKnight, McClow, Canzano,
   Smith & Radke, P.C.
400 Galleria Officentre, Suite 117
Southfield, Michigan 48034
*jcanzano@michworklaw.com*

Thomas Quasarano
Brian Devlin
Assistant Attorneys General
Department of Attorney General
P.O. Box 30754
Lansing, Michigan 48909
*quasaranot@michigan.gov*
*devlinb@michigan.gov*

I declare under the penalties of perjury that the foregoing statement is true and correct to the best of my information and belief.

Kimberly L. Scott (P69706)
Miller, Canfield, Paddock and Stone, PLC
101 N. Main Street
Ann Arbor, MI 48104
Phone: (734) 668-7696

HONORABLE ROSEMARIE E. AQUILINA
INGHAM COUNTY CIRCUIT JUDGE
GENERAL TRIAL DIVISION

313 W. KALAMAZOO STREET
LANSING, MICHIGAN 48933
PHONE: (517) 483-6526
FAX: (517) 483-6534
E-MAIL: RAQUILINA@INGHAM.ORG



# State of Michigan
## Ingham County Circuit Court

### PROOF OF SERVICE

    I hereby certify I served a copy of the Order of Declaratory Judgment in case number 13-734-CZ upon Plaintiffs, Defendants, and the President of the United States, Barack Obama, by placing the Order of Declaratory Judgment in case number 13-734-CZ in sealed envelopes addressed to John R. Canzano, attorney for Plaintiffs, Thomas Quasarano and Brian Devlin, attorneys for Defendants, and President Barack Obama, and deposited for mailing with the United States Mail at Lansing, Michigan on July 23, 2013.

JOHN R. CANZANO
McKNIGHT, McCLOW, CANZANO, SMITH & RADTKE, P.C.
400 GALLERIA OFFICENTRE, SUITE 117
SOUTHFIELD, MICHIGAN 48034

THOMAS QUASARANO
BRIAN DEVLIN
ASSISTANT ATTORNEY GENERAL
STATE OPERATIONS DIVISION
2ND FLOOR G. WILLIAMS BUILDING
525 WEST OTTAWA STREET
P.O. BOX 30754
LANSING, MICHIGAN 48909

PRESIDENT BARACK OBAMA
PRESIDENT OF THE UNITED STATES OF AMERICA
THE WHITE HOUSE
1600 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20500

*Dept of Attorney General*

*AUG 0 6 2013*

*State ... Division*

Morgan E. Cole (P75166)
Law Clerk to the Honorable Rosemarie E. Aquilina

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

        Plaintiffs,

vs                            Case No. 13-734-CZ
                                  Hon.  Rosemarie Aquilina

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

        Defendants.

_____ /

## ORDER OF DECLARATORY JUDGMENT

At a session of said Court held in Ingham County Circuit Court,
State of Michigan, this 19th day of July, 2013.

PRESENT: *Rosemarie E Aquilina*
             Circuit Court Judge

Plaintiffs request declaratory relief pursuant to MCR 2.605 concerning (1) the

constitutionality under Article IX Section 24 of the Michigan Constitution of the Local Financial

Stability and Choice Act, 2012 PA 436, MCL 141.1541, *et seq*. ("PA 436"), insofar as PA 436

permits the Governor to authorize an emergency manager to proceed under chapter 9 of the

bankruptcy code, chapter 9 of title 11 of the United States Code, 29 USC 901 to 946 ("Chapter

9") in a manner which threatens to diminish or impair accrued pension benefits; and (2) the

authority of the Governor and/or State Treasurer to authorize an emergency manager to proceed under Chapter 9 in a manner which threatens to diminish or impair accrued pension benefits.

Plaintiffs have requested, and Defendants have agreed in their Response, that the hearing in this matter may be advanced pursuant to MCR 2.605(D) and the court finds that expedited treatment is appropriate and that final declaratory relief is proper at this time.

The Court having reviewed the parties filings and submissions, and having heard oral argument by counsel for the parties, and being otherwise fully advised in the premises, and for the reasons stated on the record,

IT IS HEREBY ORDERED:

PA 436 is unconstitutional and in violation of Article IX Section 24 of the Michigan Constitution to the extent that it permits the Governor to authorize an emergency manager to proceed under Chapter 9 in any manner which threatens to diminish or impair accrued pension benefits; and PA 436 is to that extent of no force or effect;

The Governor is prohibited by Article IX Section 24 of the Michigan Constitution from authorizing an emergency manager under PA 436 to proceed under Chapter 9 in a manner which threatens to diminish or impair accrued pension benefits, and any such action by the Governor is without authority and in violation of Article IX Section 24 of the Michigan Constitution.

On July 16, 2013, City of Detroit Emergency Manager Kevyn Orr submitted a recommendation to Defendant Governor Snyder and Defendant Treasurer Dillon pursuant to Section 18(1) of PA 436 to proceed under Chapter 9, which together with the facts presented in Plaintiffs' filings, reflect that Emergency Manager Orr intended to diminish or impair accrued pension benefits if he were authorized to proceed under Chapter 9. On July 18, 2013, Defendant

Governor Snyder approved the Emergency Manager's recommendation without placing any contingencies on a Chapter 9 filing by the Emergency Manager; and the Emergency Manager filed a Chapter 9 petition shortly thereafter. By authorizing the Emergency Manager to proceed under Chapter 9 to diminish or impair accrued pension benefits, Defendant Snyder acted without authority under Michigan law and in violation of Article IX Section 24 of the Michigan Constitution.

In order to rectify his unauthorized and unconstitutional actions described above, the Governor must (1) direct the Emergency Manager to immediately withdraw the Chapter 9 petition filed on July 18, and (2) not authorize any further Chapter 9 filing which threatens to diminish or impair accrued pension benefits.

*A copy of this Order shall be transmitted to President Obama.*

*It is so Ordered.* Rosemarie E. Aquilina

Circuit Court Judge P37670

```
 1                    STATE OF MICHIGAN
          30TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF INGHAM
 2                       CIVIL DIVISION

 3     THE GENERAL RETIREMENT SYSTEM
       OF THE CITY OF DETROIT, and THE
 4     POLICE AND FIRE RETIREMENT SYSTEM
       OF THE CITY OF DETROIT,
 5
                      Plaintiffs,
 6     v                               Case No. 13-768-CZ
                                       Hon. Rosemarie Aquilina
 7     KEVYN D. ORR, in his official capacity
       as the EMERGENCY MANAGER OF THE CITY OF
 8     DETROIT, and RICHARD SNYDER, in his
       official capacity as the GOVERNOR OF THE
 9     STATE OF MICHIGAN,

10                    Defendants.
       _____/
11     GRACIE WEBSTER and
       VERONICA THOMAS,
12
                      Plaintiffs,
13     v                               Case No. 13-734-CZ
                                       Hon. Rosemarie Aquilina
14     THE STATE OF MICHIGAN; RICHARD
       SNYDER, as Governor of the State
15     of Michigan; and ANDY DILLON,
       as Treasurer of the State of
16     Michigan,
                      Defendants.
17     _____/
       ROBBIE FLOWERS, MICHAEL WELLS,
18     JANET WHITSON, MARY WASHINGTON,
       and BRUCE GOLDMAN,
19
                      Plaintiffs,
20     v                               Case No. 13-729-CZ
                                       Hon. Rosemarie Aquilina
21     RICK SNYDER, as the Governor of the
       State of Michigan; ANDY DILLON, as
22     the Treasurer of the State of Michigan;
       and the STATE OF MICHIGAN,
23
                      Defendants.
24     _____/

25              MOTION FOR PRELIMINARY INJUNCTION
```

                                                          1

```
 1          BEFORE THE HON. ROSEMARIE AQUILINA, CIRCUIT JUDGE

 2          Ingham County, Michigan - Thursday, July 18, 2013

 3

 4     APPEARANCES:

 5     For Plaintiffs Retirement Systems:
                            RONALD A. KING (P45088)
 6                          MICHAEL J. PATTWELL (P72419)
                            CLARK HILL PLC
 7                          212 East Grand River Ave.
                            Lansing, MI 48906
 8     For Plaintiffs Webster, et al.:
                            JOHN R. CANZANO (P30417)
 9                          Smith & Radtke, PC
                            400 Galleria Officentre, Ste. 117
10                          Southfield, MI  48034

11     For Plaintiffs Flowers, et al.:
                            WILLIAM A. WERTHEIMER (P26275)
12                          Attorney at Law
                            30515 Timberbrook Lane
13                          Bingham Farms, MI  48025

14     For the Defendants:  THOMAS QUASARANO (P27982)
                            Assistant Attorney General
15                          State Operations Division
                            P.O. Box 30754
16                          Lansing, MI 48909

17

18

19     REPORTED BY:         Melinda I. Dexter, RMR, RPR, CSR-4629
                            Official Court Reporter
20                          313 W. Kalamazoo
                            Post Office Box 40771
21                          Lansing, MI  48901-7971

22

23

24

25
```

                                                          2

```
 1                    T A B L E   O F   C O N T E N T S

 2

 3

 4

 5        WITNESSES:

 6             None

 7

 8

 9

10

11        EXHIBITS:

12             None

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
1              Ingham County, Michigan
2              Thursday, July 18, 2013 - At 4:15 p.m.
3              MR. KING: Good afternoon.
4              THE COURT: Good afternoon. We have everybody
5      here?
6              MR. KING: They are.
7              THE COURT: All right. This is Docket
8      13-768-CZ, the General Retirement System of the City of
9      Detroit and the Police and Fire Retirement System of the
10     City of Detroit versus Kevin D. Orr, in his official
11     capacity as the Emergency Manager of the City of Detroit,
12     and Richard Snyder, in his official capacity as the
13     Governor of the State of Michigan.
14             Counsel, your appearances for the record.
15             MR. KING: Good afternoon, your Honor. Ron
16     King with Clark Hill on behalf of the Plaintiffs, the
17     General Retirement System of the City of Detroit and the
18     Police and Fire Retirement System of the City of Detroit.
19             THE COURT: Welcome.
20             MR. KING: Thank you.
21             MR. QUASARANO: Your Honor, if I may, Thomas
22     Quasarano, Assistant Attorney General, that will be
23     appearing in this case on behalf of the Defendant. I
24     believe the Defendant was served yesterday. We have not
25     received a request for representation, but I'm very
```

```
1      likely going to be asked to represent the Governor.
2              THE COURT: Sir?
3              MR. WERTHEIMER: Excuse me, your Honor,
4      William Wertheimer. I apologize for my dress.
5              THE COURT: No problem. I know it's last
6      minute. I don't care how people are dressed. It's more
7      important that you are here.
8              MR. WERTHEIMER: Thank you, your Honor. I was
9      here to file my reply brief today for the Monday hearing.
10     I am now here knowing that this motion has been filed,
11     and I wanted to enter my appearance.
12             THE COURT: All right. You may have a seat.
13     There is plenty of room for all.
14             MR. WERTHEIMER: Thank you.
15             MR. CANZANO: Your Honor, excuse me, John
16     Canzano, Plaintiffs' attorney in the Webster case. Same
17     as Mr. Wertheimer, we just found out about this. I'm
18     here. My reply brief is being filed. I have a judge's
19     copy here somewhere.
20             THE COURT: All right. Have a seat.
21             MR. KING: Your Honor --
22             THE COURT: Anybody else?
23             MR. PATTWELL: Your Honor, Michael Pattwell
24     from Clark Hill on behalf of Plaintiffs.
25             THE COURT: Thank you.
```

```
1              Counsel?
2              MR. KING: Your Honor, Ron King again on behalf
3      of the Plaintiffs, the Detroit Retirement Systems. We
4      might need to beg the Court's indulgence. While we
5      appreciate that you have seen us on very short notice,
6      we've been advised that the City has filed, and we're
7      pulling it up on the electronic filing system, so we
8      might need a few minutes here to figure out our very next
9      step.
10             THE COURT: Okay.
11             MR. KING: Because the effect of a bankruptcy
12     filing, if, in fact, that's -- we're trying to conform
13     that. We think, in fact, it has been filed here within
14     the last half hour. So we probably need about a
15     ten-minute recess here, if the Court would indulge us. I
16     know you have another matter.
17             THE COURT: Do we want to make a phone call?
18             MR. KING: Yeah. We can, but we're pretty --
19             THE COURT: Well, here's the thing: If they
20     haven't filed, we need to hurry up and proceed. If they
21     have filed --
22             MR. KING: We're pretty confident that they
23     filed.
24             Right?
25             I mean, we're pulling it up. Yeah. It's been
```

```
1      confirmed. So I'm not sure where that leaves us with
2      this proceeding because it's going to be pretty hard to
3      undue. It's been done.
4              MR. WERTHEIMER: There is no automatic stay in
5      this.
6              MR. KING: Yeah. What we're here for -- really --
7      really --
8              What counsel is saying is there is no automatic
9      stay with respect to this proceeding. So in our
10     judgment, this matter will proceed. What you have before
11     you, however, is a motion for temporary restraining order
12     to enjoin certain conduct that's already occurred. So
13     I'm not sure that we really have a lot of business in
14     front of the Court at this moment, but I would like to
15     just confer for about ten minutes on that issue because
16     we will proceed in the case. And if we're here and you
17     want to take the time to set some sort of expedited
18     briefing schedule, we could do that also.
19             It's quite likely that you, your Honor, will be
20     able to make a ruling on the merits of this case in
21     advance of whatever occurs in the context of a Chapter 9
22     filing.
23             THE COURT: I plan on making a ruling on
24     Monday. I could make a ruling tomorrow, if push came to
25     shove, but Monday would probably be soon enough. I am
```

1 confident that the bankrupt — ourt won't act as quickly
2 as I will.
3      MR. KING: Yeah. I'm not sure, but we'll see.
4 I mean, there might -- but, nevertheless, so we should --
5      If you're prepared to rule on the merits on
6 Monday, again I'm not sure what -- if there is much
7 business for us left to do before the Court today.
8      THE COURT: Unless some kind of -- I don't
9 really have any authority over them, so.
10      MR. KING: Right.
11      THE COURT: I don't think anything --
12      Counsel?
13      MR. WERTHEIMER: Your Honor, the motion that's
14 up for Monday, our motion at least that's up for Monday,
15 is a request for a preliminary injunction to enjoin the
16 Governor. We have no evidence the Governor has
17 authorized any bankruptcy, and we would not only want to
18 go forward on Monday but ask that the motion for
19 preliminary injunction be moved up to now, hopefully, to
20 tomorrow morning if the Court will not hear it now. But
21 I don't think there is any reason why the Court cannot
22 hear our motion for preliminary injunction.
23      I'm not talking about in terms of the Court's
24 preparedness but in terms of the apparent filing. They
25 may have filed. But nobody -- I asked the Governor's

1 we shoul — out from the Office of the Attorney
2 General whether the Governor has authorized a bankruptcy
3 that has done the act that we were attempting to enjoin
4 and that they knew we were attempting to enjoin and that
5 they've known for the last two weeks and that they're
6 filing briefs on saying that it's not ripe. The
7 attorneys for the Government have represented to this
8 Court that our motion is not ripe.
9      THE COURT: I just received a note from my law
10 clerk that says the bankruptcy was filed at 4:06.
11      MR. KING: Right. Your Honor, so what we'd
12 like to do here is amend our emergency motion for
13 temporary restraining order and get it and request from
14 this Court an order enjoining the Governor and the
15 Emergency Manager from taking any further action in the
16 bankruptcy proceeding, and we'll modify our order to that
17 effect.
18      MR. WERTHEIMER: I would join that as to the
19 Governor. We have not sued the Detroit Emergency
20 Manager, but I would orally join in that motion as to the
21 Governor and the Secretary of the Treasury.
22      MR. CANZANO: I would say the same in our case.
23 We're not joining their motion but we're making a motion
24 in our case that would be the same as theirs only against
25 the Governor.

1 Office before we came in here -- er, the Attorney General
2 whether they could make any representations to me that
3 would obviate the need for me going forward, and they
4 could not.
5      So we've got a written, fully briefed request/
6 motion for preliminary injunction. The Attorney
7 General's Office has briefed it. Time is obviously of
8 the essence. I would suggest that the Court hear our
9 motion to preliminarily enjoin the Governor authorizing a
10 bankruptcy now.
11      MR. CANZANO: Your Honor, I would make
12 essentially the same request except that our motion,
13 although it seeks preliminary injunctive relief in the
14 alternative, it primarily seeks a final declaratory
15 judgment that what has just happened, apparently, is
16 unconstitutional, and that is ready for a final decision
17 we were saying on Monday. We have a reply brief that has
18 just been filed, and we would -- we could -- this Court
19 could issue that order immediately, and I don't know what
20 the consequences for the bankruptcy court would be,
21 necessarily, but I think it would -- it might make a
22 difference.
23      MR. WERTHEIMER: I'm sorry, and I think that at
24 a minimum, your Honor, I think we should -- I think the
25 Court should decide the preliminary injunction now, but

1      THE COURT: Granted, as to all of your
2 requests.
3      How soon are you going to present me with an
4 order?
5      MR. KING: Right now.
6      THE COURT: All right.
7      MR. KING: We just need to mark up the order
8 that we have for the Court.
9      THE COURT: Absolutely.
10      MR. QUASARANO: Your Honor, if I may, we would
11 ask that the Court stays enforcement of the order, and
12 your ruling on that would be appreciated at this time.
13      THE COURT: Denied.
14      MR. QUASARANO: Thank you. We'll present an
15 order as soon as possible.
16      THE COURT: Thank you.
17      MR. QUASARANO: Thank you, Judge.
18      MR. WERTHEIMER: Your Honor, we will need a few
19 minutes to prepare a written order, but if we can --
20      THE COURT: Well, sir, would you like to copy
21 that and modify what they're doing? My law clerk will be
22 happy to help you.
23      MR. WERTHEIMER: Thank you, your Honor.
24      THE COURT: As to your stay, you'll be getting
25 that to me in --

## Page 12

```
 1    MR. QUASARANO:      be I can just make a call
 2  and get an order over to you right yet today.
 3        THE COURT:  Sure.  You can even handwrite it.
 4  I don't care how we do it.  You can run it over here, fax
 5  it over here; whatever gets you the job done.  Time is of
 6  the essence.
 7        MR. QUASARANO:  I appreciate that.
 8        MR. KING:  (Approaching the bench.)
 9        Your Honor, Ron King again on behalf of the
10  Plaintiffs.  If we could go back on the record.
11        THE COURT:  Excuse me.
12        MR. KING:  We'd like to set the sequence of
13  events in terms of how things have transpired in the last
14  hour, if you will.  Just for the record, our motion for
15  emergency temporary restraining order was filed at
16  3:37 p.m.; that is, today, July 18th.  We promptly, well
17  in advance of 4 o'clock and probably within -- well,
18  actually, we had delivered prior to the filing time at
19  3:37 judge's copies to chambers for your review.
20        Then we waited for the Attorney General, who
21  doesn't feel compelled to make an appearance here in this
22  case because he hasn't actually been officially retained
23  yet, but, nevertheless, as a courtesy we waited for him
24  to appear, which he came upstairs sometime around 4:10.
25  We understand the bankruptcy filing was at 4:05?
```

## Page 14

```
 1  supposed  ...  place at 4 o'clock, and I understood
 2  this was a very important issue, and we obviously have a
 3  hearing scheduled, another hearing scheduled, at
 4  9 o'clock on Monday.
 5        So I advised my law clerk that we had a
 6  4 o'clock hearing that wasn't going to take very long,
 7  and whenever you all got here and that we would wait for
 8  all of the attorneys, we would then have a hearing and to
 9  let me know when everybody was in place and then I would
10  come out.
11        So that's exactly what happened.  She let me
12  know everybody was here, gave me the paperwork to look
13  over, and, of course, I did just that.  And we got out of
14  here as quickly as we could, obviously not in time
15  because 4:06 occurred and they did what they were going
16  to do, which I know you all raised here.
17        I did have an opportunity to -- with review of
18  what was filed, and you're asking me what I would have
19  done, and it was my intention, after reviewing what you
20  had filed, in addition to other research that my capable
21  externs from Cooley and from Michigan State, as well as
22  my very capable law clerk pulled for me, I reviewed
23  constitutional provisions, I reviewed legislative intent,
24  I reviewed what you all provided me, I reviewed a lot of
25  information in the last few hours, and it was my
```

## Page 13

```
 1        THE COURT:  4:06.
 2        MR. KING:  4:06.  The Court took the bench at
 3  approximately 4:20.  And to the extent your Honor has had
 4  an opportunity to read the papers and was inclined to
 5  make a ruling, if you'd be willing to put that on the
 6  record, then in the -- when we do seek dismissal of the
 7  bankruptcy proceeding, we'll have some clear record of
 8  the sequence of events here.
 9        MR. WERTHEIMER:  Just to add, in terms of the
10  sequence of events, I did advise by telephone
11  Mr. Quasarano of the fact that I would be in court and
12  that it was my understanding that Clark Hill was going to
13  be in court seeking a temporary restraining order.  I
14  talked to him by phone before 4 this afternoon, sometime
15  between 3:30 and 4.
16        MR. QUASARANO:  And I could confirm that
17  Mr. Wertheimer gave me the professional curtesy of
18  letting me know that there was a hearing being planned.
19  I had no -- we have no personal knowledge in our division
20  of a bankruptcy being filed any certain time or date, so
21  there is nothing we could provide in terms of a response
22  that there is going to be a bankruptcy filed.  So we
23  learned it as everyone else learned.
24        THE COURT:  All right.  And obviously I heard
25  this was happening.  I had another hearing that was
```

## Page 15

```
 1  intention to grant you your request completely.
 2        MR. KING:  Thank you, your Honor.  Appreciate
 3  your clarifying the record.
 4        MR. WERTHEIMER:  Thank you, your Honor.
 5  Your Honor, we have a proposed order.
 6        THE COURT:  You may approach.  Thank you.
 7        MR. WERTHEIMER:  Thank you.  It is handwritten.
 8  (Approaching the bench.)
 9        THE COURT:  No problem.
10        MR. WERTHEIMER:  And for caption, it just says,
11  at this point, Flowers Caption.
12        THE COURT:  Okay.
13        MR. WERTHEIMER:  I had some help in drafting
14  too if you can't read the --
15        THE COURT:  We'll make it work.
16        MR. WERTHEIMER:  Okay.  Thank you, Judge.
17        MR. KING:  We may be back tomorrow, your Honor.
18        MR. WERTHEIMER:  We may be back too,
19  your Honor.  And if we are, I will be in a suit.
20        THE COURT:  It's okay.  As long as your body is
21  covered, I don't care what's it's covered with.
22        MR. KING:  I think with respect to the present
23  motion before you, we have an order in place and
24  appreciate you making the accomodation and time for us
25  today.  Thank you.
```

13-53846-swr   Doc 1219-9   Filed 10/17/13   Entered 10/17/13 13:56:17   Page 27 of 47

| | |
|---|---|
| 1 | THE COURT: No problem. |
| 2 | Now, if you're back tomorrow, what is it going |
| 3 | to be for? |
| 4 | MR. KING: We might file a mandamus action |
| 5 | requiring the EM to withdraw the Chapter 9 filing. |
| 6 | THE COURT: Will this require time on the |
| 7 | record? |
| 8 | MR. KING: Yes. |
| 9 | THE COURT: Okay. My time restriction is that |
| 10 | I have my morning free until about 1:30. Can you get it |
| 11 | here before 1:30? |
| 12 | MR. PATTWELL: Yes. |
| 13 | MR. KING: Absolutely. |
| 14 | THE COURT: I'll make myself available all |
| 15 | morning until 1:30. |
| 16 | MR. KING: Thank you, your Honor. |
| 17 | THE COURT: Okay. |
| 18 | MR. CANZANO: May I approach, your Honor? I |
| 19 | have an order drafted also. |
| 20 | THE COURT: You may. |
| 21 | MR. CANZANO: (Approaching the bench.) |
| 22 | THE COURT: Okay. We'll make you copies, and |
| 23 | this is our copy. |
| 24 | Anything else for the record? |
| 25 | MR. KING: No, your Honor. Thank you. |

16

| | |
|---|---|
| 1 | MR. WERTHEIMER: No, your Honor. Thank you. |
| 2 | THE COURT: That's all for the record. Thank |
| 3 | you. |
| 4 | (At 4:38 p.m., the matter is |
| 5 | concluded.) |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

```
1        STATE OF MICHIGAN)
                          ) SS.
2        COUNTY OF INGHAM)

3

4                    CERTIFICATE OF REPORTER

5

6             I, Melinda I. Dexter, Certified Shorthand

7        Reporter, do hereby certify that the foregoing

8        17 pages comprise an accurate, true, and complete

9        transcript of the proceedings and testimony taken in the

10       case of The General Retirement System of the City of

11       Detroit, et al., versus Kevyn D. Orr, et al., Case

12       No. 13-768-CZ, and Gracie Webster, et al., versus the

13       State of Michigan, et al., Case No. 13-734-CZ, and

14       Robbie Flowers, et al., versus Rick Snyder, et al., Case

15       No. 13-729-CZ, on Thursday, July 18, 2013.

16            I further certify that this transcript of the

17       record of the proceedings and testimony truly and

18       correctly reflects the exhibits, if any, offered by the

19       respective parties.  WITNESS my hand this the eighteenth

20       day of July, 2013.

21

22
                         Melinda I. Dexter, RMR, RPR, CSR-4629
23                       Official Court Reporter
                         313 West Kalamazoo
24                       Post Office Box 40771
                         Lansing, Michigan 48901-7971
25
```

                                                                18

```
 1                    STATE OF MICHIGAN
        30TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF INGHAM
 2                      CIVIL DIVISION

 3

 4      GRACIE WEBSTER and
        VERONICA THOMAS,
 5
                     Plaintiffs,
 6      v                                  Case No. 13-734-CZ
                                        Hon. Rosemarie Aquilina
 7      THE STATE OF MICHIGAN; RICHARD
        SNYDER, as Governor of the State
 8      of Michigan; and ANDY DILLON,
        as Treasurer of the State of
 9      Michigan,
                     Defendants.
10      _____/
        ROBBIE FLOWERS, MICHAEL WELLS,
11      JANET WHITSON, MARY WASHINGTON,
        and BRUCE GOLDMAN,
12
                     Plaintiffs,
13      v                                  Case No. 13-729-CZ
                                        Hon. Rosemarie Aquilina
14      RICK SNYDER, as the Governor of the
        State of Michigan; ANDY DILLON, as
15      the Treasurer of the State of Michigan;
        and the STATE OF MICHIGAN,
16
                     Defendants.
17      _____/

18           MOTION TO AMEND PRELIMINARY INJUNCTION

19               MOTION FOR DEFAULT JUDGMENT

20               MOTION FOR SUMMARY DISPOSITION

21      BEFORE THE HON. ROSEMARIE AQUILINA, CIRCUIT JUDGE

22       Ingham County, Michigan - Friday, July 19, 2013

23

24

25


                                                            1
```

```
1        APPEARANCES:

2

3        For Plaintiffs Webster, et al.:
                              JOHN R. CANZANO (P30417)
                              Smith & Radtke, PC
4                             400 Galleria Officentre, Ste. 117
                              Southfield, MI  48034
5
         For Plaintiffs Flowers, et al.:
6                             WILLIAM A. WERTHEIMER (P26275)
                              Attorney at Law
7                             30515 Timberbrook Lane
                              Bingham Farms, MI  48025
8
         For State Defendants:
9                             THOMAS QUASARANO (P27982)
                              BRIAN DEVLIN (P34685)
10                            Assistant Attorney General
                              State Operations Division
11                            P.O. Box 30754
                              Lansing, MI 48909
12

13

14
         REPORTED BY:         Melinda I. Dexter, RMR, RPR, CSR-4629
15                            Official Court Reporter
                              313 W. Kalamazoo
16                            Post Office Box 40771
                              Lansing, MI  48901-7971
17

18

19

20

21

22

23

24

25

                                                              2
```

```
 1                    T A B L E   O F   C O N T E N T S

 2

 3

 4

 5        WITNESSES:

 6             None

 7

 8

 9

10

11        EXHIBITS:

12             None

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1    Ingham County, Michigan
2    Friday, July 19, 2013 - At 11:25 a.m.
3        THE COURT: Okay. All right. Robert Flowers,
4    Michael Wells, Janet Whitson, Mary Washington, and Bruce
5    Goldman versus Rick Snyder, as the Governor of the State
6    of Michigan; Andy Dillon, as the Treasurer of the State
7    of Michigan; and the State of Michigan, Docket 13-729-CZ.
8        Counsel, your appearance for the record.
9        MR. WERTHEIMER: William Wertheimer,
10   your Honor, on behalf of Plaintiffs.
11       MR. CANZANO: Your Honor, John Canzano. I'm
12   not counsel in that case. I'm here on the Webster case.
13       THE COURT: Okay. Thank you.
14       MR. QUASARANO: Thomas Quasarano, Assistant
15   Attorney General on behalf of the State Defendants.
16       MR. DEVLIN: And Brian Devlin, Assistant
17   Attorney General.
18       THE COURT: Thank you.
19       Counsel?
20       MR. WERTHEIMER: Your Honor, Plaintiffs are
21   here today in order to request that the Court enter
22   either a corrected or amended preliminary injunction
23   order. The Court, I'm sure, recalls the circumstances
24   yesterday. We have had a chance to have your order
25   typed. We reviewed it. There were some mistakes in it.

                                                        4

1    For example, the heading still said temporary restraining
2    order from the other case where it was clear from the
3    record and from the body, even, of the order that it was
4    a preliminary injunction. So we made that change. We
5    typed everything. We put in the attorneys' names and the
6    case name.
7        We made a couple of other changes, which I have
8    indicated to the Court off the record on another copy of
9    the injunctive order. And I would -- we would -- I'm
10   happy to go over each of those, if the Court needs.
11   Otherwise, I would request that the Court issue this
12   preliminary injunction. I did not know whether the Court
13   would want to refer to it as corrected, amended, or not
14   refer to it at all. So I left that blank. But we would
15   ask that the Court enter the order that we presented
16   today to conform to the Court's ruling yesterday.
17       THE COURT: Counsel?
18       MR. QUASARANO: Yes, your Honor. As your Honor
19   knows, we moved for a stay, and so I would ask either
20   that the stay that was denied yesterday be identified in
21   the modified order, or we can present another stay. I
22   would assume that the Court would not grant a stay of
23   this order consistent with yesterday. So either to
24   identify it in this modified order as a stay was
25   requested and denied, or we can just do another order,

1    whatever the Court's preference would be.
2        THE COURT: Well, I'm going to sign this, and I
3    haven't compared the two. I think we probably should
4    call it an amended order.
5        MR. WERTHEIMER: Okay.
6        THE COURT: But let me just say that your stay
7    is denied.
8        MR. QUASARANO: Thank you, your Honor.
9    Maybe --
10       THE COURT: Counsel?
11       MR. QUASARANO: Maybe doing another separate
12   order makes the most sense, and we can do that using the
13   forms provided by the Court.
14       THE COURT: Okay. Thank you.
15       MR. QUASARANO: Thank you.
16       MR. WERTHEIMER: Your Honor, one other thing
17   that may be related to that, and that is, the order the
18   Court is entering, consistent with the order the Court
19   entered yesterday, provides us with the relief that we
20   were seeking by our motion which was scheduled for
21   hearing Monday at 9 o'clock.
22       The Attorney General had also noticed a motion
23   to dismiss for Monday at 9 o'clock. It was not timely in
24   the sense that he did not give the appropriate time
25   period for us to respond. In the reply brief I filed

                                                        6

1    yesterday, we objected to that and said that we did not
2    agree to expedited. There was no order expediting and
3    suggested that the Court deny the -- their motion for
4    that reason, but I raise it now just to indicate that
5    that also is out there and that maybe we want -- we want
6    another order dealing with that issue.
7        Our position is that it's not timely and that
8    it shouldn't be heard Monday in any event. I don't know
9    whether the Attorney General intends to proceed on Monday
10   on it.
11       MR. QUASARANO: Your Honor, we do understand
12   that under MCR 2.119, the motion for summary disposition
13   is a 21-day period. We sought stipulation of counsel.
14   They were kind enough to look at the briefs filed to
15   decide whether they would stipulate. They chose not to.
16       We also sought the endorsement on our notice of
17   hearing from the Court to allow the hearing on Monday.
18   Yesterday at bench we discussed if we needed to -- we
19   needed to set a hearing date on the dispositive motions.
20   The Court is at liberty to have those heard today or on
21   Monday at or at such other time. Our notice of hearing did
22   say "or at such other time as the Court may order" on the
23   notice of hearing. Thanks.
24       MR. CANZANO: Your Honor, if I could make a
25   point that is related to that issue?

THE COURT: Yes, sir.

MR. CANZANO: We've -- we've presented a motion this morning, an emergency motion, to advance the hearing on our motion for declaratory judgment that's set for Monday to today. It would be my intention to deal only with the declaratory judgment part of it today, not the injunction part of it. And they've already -- they've agreed that can be expedited. I don't know that they've agreed that it can be expedited to today, but they agree that it could be expedited to Monday.

So if -- that part of it, either today or Monday, that would be a final declaratory judgment. My preference is to do it today.

THE COURT: Is that correct?

MR. QUASARANO: Well, I believe under 2.605(D), they can seek an expedited hearing, and certainly the Court has the authority to issue that. I think by not entertaining a dispositive motion, we're not going to have a complete argument. Mr. Devlin will be arguing for the State. But we do acknowledge what the court rule says, that's correct.

THE COURT: Well, are you objecting to having it heard today?

MR. QUASARANO: We will not object in the interest of judicial economy.

8

THE COURT: And your motion deals with that issue?

MR. QUASARANO: It's a (C)(8) motion that would address whether there are grounds for a declaratory judgment, yes.

THE COURT: Well, then --

I'm sorry?

MR. WERTHEIMER: I'm sorry. I may be confused now. Their motion that they filed in the Flowers case to dismiss deals with issues like ripeness. It's a (C)(4) and (C)(8) motion. Many of the facts have changed. I would think they would want to refile that, in any event. I mean, you know, to make an argument based on -- based on ripeness given what happened yesterday afternoon seems to me to be just, to use a lawyer's word, moot at this point. But I'm concerned only with their motion to dismiss in the Flowers case, not with anything related to Webster and whether we're to appear here Monday at 9 to -- per their notice or whether they've withdrawn that motion or not.

THE COURT: Okay. Well, let's deal with the Flowers case.

What is your intention in regard to Monday? Are you still asking the Court to hear your motion? It

9

.that, or will you be amending that?

MR. QUASARANO: No. I'll speak for Mr. Devlin here for a moment only. In the notice of hearing, we indicated to advance to that date because of all the other activities in this case or such other time as the Court may order.

I do point out that in the Flowers case in the prayer for relief is a reference to declaratory judgment. Both cases are asking for both reliefs; preliminary and declaratory judgment. Preliminary injunction motions were granted. Our brief talks about the alternative, assuming arguendo there were a filing, a Chapter 9 filing, and then we go into the basis for why there are grounds not to declare judgment, why there is some jurisdictional grounds.

So I think that the brief is sufficiently adequate to address all of the issues that are still at issue in this case. Certainly there has been a factual change and those factual changes don't need to be addressed.

MR. WERTHEIMER: I guess I just would reiterate if -- I need to know whether counsel is going forward on Monday with its motion to dismiss. I still haven't heard a yes or no.

THE COURT: His answer is yes, Counsel.

10

MR. WERTHEIMER: Well, okay. If the answer is yes, I would just point out that it's clear under the rules that it is not timely; that no order has entered from this Court.

THE COURT: You're right.

MR. WERTHEIMER: Okay.

THE COURT: You know what we're doing? We are under siege here. Well, we aren't; I'm not. Technically I am through paper, but all of you are. Detroit is. The State is. So I'm not going to go through the usual court rules and the time and all of that. You are all going to spend your weekend doing what lawyers do, and that's a lot of homework because we're going to have that hearing Monday unless you're asking me to do it now.

I'm going to hear everything because we're not going to piecemeal this. You all know the case. I know the case. I've done the homework. I don't think myself or my staff got any sleep last night. We've been doing research. I bet if I called all of your wives and asked if you got any sleep, they'd be saying, "No. When is my husband going to get some sleep," right? So we're going to have a hearing, and I don't care if it's today or Monday. I'll come here Saturday, if you would like. I don't care. Let's get some answers, let's get a bottom

11

13-53846-swr Doc 2470-1 Filed 01/04/17 Entered 01/04/17 13:03:32 Page 345 of 473

**Page 12**

```
 1   because that's where you all are headed.  I don't care
 2   what side you're on.  Someone is going up, right?  So I
 3   have answers for you.  Tell me your story.  I've got the
 4   solution.  You might not like it.
 5         Can we move on?
 6         MR. QUASARANO:  We're prepared to go today, or
 7   we'll defer to brother counsel for Monday if more time is
 8   needed.
 9         MR. WERTHEIMER:  I'll go today.  We can go
10   right now, I mean.
11         THE COURT:  Okay.  I can go right now too.
12   How about you, sir?
13         MR. CANZANO:  I think we already agreed that
14   Webster could go today.
15         MR. DEVLIN:  Very well.
16         THE COURT:  We have an agreement.  I think that
17   might be the only thing you all agree on.  Hallelujah.
18         MR. QUASARANO:  Other than it's very hot
19   outside.
20         THE COURT:  Yeah.  We can agree on that too.
21   Okay.
22         Counsel?  Well, let's let these gentlemen enter
23   so we don't make noise for the court reporter before we
24   proceed.
25         Anybody else need to make an appearance?
                                                    12
```

**Page 13**

```
 1         THE COURTROOM:  (No verbal response.)
 2         THE COURT:  No?  Okay.
 3         MR. CANZANO:  Which case would you like to go
 4   first; Webster or Flowers?
 5         THE COURT:  Mr. --
 6         MR. WERTHEIMER:  Well, he goes first on Flowers
 7   because it's his motion, so it's not my --
 8         THE COURT:  Okay.  Whatever you'd like.
 9         MR. DEVLIN:  Thank you, your Honor.  My name
10   is Brian Devlin, Assistant Attorney General.
11         THE COURT REPORTER:  Could you approach the
12   podium, please?
13         THE COURT:  Yeah.  If everybody would speak
14   from the podium.  The mikes work better.  The court
15   reporter has better access to hear you.  We'll make a
16   better record, and obviously the Court of Appeals and the
17   Supreme Court will need your record, please.
18         MR. DEVLIN:  Thank you, your Honor.  Brian
19   Devlin appearing on behalf of the Defendants.
20         As Mr. Quasarano has mentioned, that obviously
21   there's been a very dramatic change in circumstances
22   since the brief was filed.  The petition in bankruptcy
23   has been filed as of yesterday.  It changes some aspects
24   of this case from the State's perspective, but not all.
25   The arguments that we have made for dismissal in Ernst and
                                                    13
```

**Page 14**

```
 1   Flowers will apply to Webster as well.  The fact that
 2   this case is now before the bankruptcy court means that
 3   there is a court of competent jurisdiction that can hear
 4   many of the concerns of the Plaintiffs.  And that fact
 5   alone changes a lot of the ripeness arguments and things
 6   that you will see.
 7         Nonetheless, it is the position of the State
 8   that there has not been harm at this point to the
 9   Plaintiffs.
10         THE COURT:  Sir, there hasn't been harm because
11   they haven't acted.  What we have here, and I would like
12   you to get to the point, because -- and you can make your
13   record.  I'm a very patient judge.  I think most people
14   will agree with that.  But I have two very serious
15   concerns because there was this rush to bankruptcy court
16   that didn't have to occur and should not have occurred.
17   And certainly Plaintiffs should not have been blind-
18   sided, and this Court and this process should not have
19   been ignored.
20         We have the Michigan Constitution Article IX, §
21   24 that forbids the Emergency Manager to file bankruptcy
22   if pension plans or retirement system of this State or
23   its political subdivisions are diminished or impaired.
24   And the Constitution states:
25              The accrued financial benefits of
                                                    14
```

**Page 15**

```
 1              each pension plan and requirement
 2              system of the state and its
 3              political subdivisions shall be a
 4              contractual obligation thereof
 5              which shall not be diminished or
 6              impaired.
 7         And the bankruptcy court will be doing exactly
 8   that in its reorganization because the pensions are an
 9   unsecured asset.  And under the bankruptcy
10   reorganization, under a reorganization Chapter 9, there
11   is no reaffirmation of debt.  If I were doing a Chapter 7
12   and wanted to go in and reaffirm payments on my car, I
13   could do so.  But there is no way that you can go into
14   bankruptcy court and say, "I am going to reaffirm the
15   pension so that we don't disrupt that."
16         So what we're doing here is violating the
17   Constitution.  And then we have Michigan Complied Law
18   141.1552, which precludes the Emergency Manager from
19   taking such actions.  It states specifically in m -- (m)
20   and (ii):
21              The emergency manager shall fully
22              comply with the public employee
23              retirement system investment
24              act --
25              Which is
                                                    15
```

-- 1965 PA 314, and § 24 of
Article IX of the State
Constitution of 1963, and any
actions taken shall be consistent
with the pension fund's qualified
plan status under the federal
internal revenue code.

So tell me, sir, how do you get into bankruptcy
court and not violate the Constitution of Michigan and
not violate how the Emergency Manager is supposed to
operate? Haven't we jumped the gun? What are you doing
here, sir?

MR. DEVLIN: I can understand your Honor's
concerns. The position of the State is that none of
these impairments have occurred yet.

THE COURT: Only because the bankruptcy trustee
hasn't got his teeth into it. It will occur. It's
imminent, isn't it? Tell me how it's not imminent, sir?

MR. DEVLIN: I can't predict the future.

THE COURT: Yes, you can.

MR. DEVLIN: I cannot.

THE COURT: The bankruptcy court -- the
bankruptcy court has a certain function. You're a
lawyer. You understand the function of the bankruptcy
court. That's why you ran there yesterday not slowly but

16

in your running shoes, right?

MR. DEVLIN: I can't speak to that. I had
nothing to do with it. But I can tell you about § 943 of
the Bankruptcy Code, which affords all of the protections
that we discussed in the brief that I've alluded to
today.

None of those injuries have occurred at this
point. For that reason, we believe the claim is still
speculative. Of course those are legitimate concerns,
but the court, the bankruptcy court can address them.

I referred to -- I'd also refer to *Straus*, the
case cited in our brief too. If that injury has not
occurred, as we contend, then it's an inappropriate
remedy that the Plaintiffs are asking for today.

Now, obviously you and I don't see this injury
in quite the same terms, but that is the position of the
State. The injury has not occurred at this point.

THE COURT: That would be because the
bankruptcy judge has not sat at his bench like I have and
heard the case and started the reorganization, and that's
the only reason. For me to believe what you're saying
would be -- would make me Helen Keller who's not yet
learned the alphabet.

MR. DEVLIN: I think anything that you and I
speculate about that the bankruptcy court might offer,

17

that they have the power to address under 943, is just
that; it's just speculation.

THE COURT: It's a certainty, sir. You filed
in bankruptcy court, which is federal because you know
that certainty. I don't know how you get around it
because it's an unsecured asset that cannot be
reaffirmed, and there is no case law, and you know that
as well because all of us stayed up all night looking for
case law, and there is no case law. You can't tell me
that it can be segregated out and reaffirmed.

So these people that have this pension where it
is supposed to be protected under the Constitution and
under the legislative intent under the emergency manager
legislation, it cannot survive. It cannot survive
federal bankruptcy, and I have no jurisdiction there, and
you know that. And that's why everybody made us wait as
-- slowly we were waiting for your office to come here
out of courtesy. We waited so we would have both sides
present, which is what we do. We honor civility, and it
was filed in order to bind everybody so this could occur,
and it's cheating, sir, and it's cheating good people who
worked.

And so what's going to happen is we're not
honoring the Constitution, we're not honoring the
emergency manager legislation, and we're not honoring

18

good citizens, and we're also not honoring the President
who took Detroit out of bankruptcy. What are we doing,
sir?

MR. DEVLIN: Your Honor, I understand what
you're saying, but I would take exception to the motion
that somehow the Attorney General's Office delayed or
dragged its feet or in any way tampered with the
proceedings yesterday. Now, I wasn't here. I wasn't
part of them, but I don't believe that's the case.

THE COURT: It looks that way, sir. If somehow
that's not the case, I apologize, but it's the old saying
if it looks like a duck, you know the rest.

MR. DEVLIN: Well, I don't want to speculate on
who did what yesterday. As I said, I wasn't here.

THE COURT: Thank you.

MR. DEVLIN: But it is our position that until
that injury occurs and in light of *Straus*, in light of
the jurisdiction of the bankruptcy court, that this
motion should be -- er, the motion is inappropriate. The
State's motion should be granted --

THE COURT: Sir --

MR. DEVLIN: -- thank you.

THE COURT: Let me ask you this: If the injury
occurs, isn't it then too late, much too late, way too

19

13-53846-swr   Doc 2420-10   Filed 01/04/14   Entered 01/04/14 17:09:32   Page 37 of 47

**Page 20**

1  injury. The leg has been amputated, and we cannot fix

2  it.

3  　　　　MR. DEVLIN: We don't know, is my position on

4  that. We don't know, and there is opportunity for this

5  very issue to be heard in the bankruptcy court.

6  　　　　THE COURT: But there is no opportunity in the

7  bankruptcy court for them to fix the harm. Do you have

8  any law that says the bankruptcy court can fix the

9  pension fund because I haven't found that either, and

10  I've looked?

11  　　　　MR. DEVLIN: Again, I understand the pension

12  fund to be tremendously under funded. There are many

13  problems here, far beyond what's gone on in the last

14  24 hours. But the court, the bankruptcy court does have

15  jurisdiction to hear these arguments, to note the

16  Michigan Constitutional provisions, and to order what it

17  feels it must order.

18  　　　　THE COURT: Okay.

19  　　　　MR. DEVLIN: Thank you.

20  　　　　THE COURT: Thank you.

21  　　　　MR. WERTHEIMER: Your Honor, I'll be brief.

22  First, I would just point out to the Court that this is a

23  motion under C -- MCR 2.116(C)(4), (5), and (8): That

24  is, it's a claim that there is no jurisdiction over the

25  subject matter; it's a claim that my clients have no

**Page 21**

1  capacity to sue because apparently they're not being

2  injured; and it's a claim that we have failed to state a

3  claim.

4  　　　　As to the law relating to those three points, I

5  would rely upon the briefs that I have filed, including

6  the reply brief that I filed yesterday in which I did

7  take the position that we should not hear -- that the

8  Court should not hear the motion to dismiss but in which

9  I dealt with all of those issues, and I won't repeat

10  those arguments.

11  　　　　I would just point out a couple of things:

12  First of all, counsel says that he cannot predict the

13  future. The Detroit Emergency Manager, who is a

14  competent lawyer familiar with bankruptcy, has predicted

15  the future, and we quoted him in our complaint as saying,

16  essentially, that once he gets into bankruptcy, the

17  constitutional rights of our clients will disappear, will

18  be "trumped" in his words or in the words of the reporter

19  quoting him. And I think that was -- there was an

20  interview and there was also his statements made to the

21  Detroit Free Press Editorial Board.

22  　　　　But the point being that the Detroit Emergency

23  Manager has had no reluctance to predict the future, and

24  his prediction is consistent with our claim and with the

**Page 22**

1  just simply is not credible for an attorney for the

2  Governor and the State Treasurer to come here today and

3  say he can't predict the future when we indicated in our

4  complaint that the future could be predicted.

5  　　　　I would also point out that since we were in

6  court yesterday, we now have not just the bankruptcy but

7  filings related to that bankruptcy. I'm not going to

8  introduce these documents, but I understand that counsel

9  in the Webster case that will be argued when we're done

10  here will be introducing them. I would simply point out

11  that we've sent correspondence back and forth between the

12  Detroit Emergency Manager and the Governor requesting the

13  authorization and the Governor approving the

14  authorization, in which there is not a word mentioned

15  about Article IX, § 24 of the Michigan State

16  Constitution.

17  　　　　Our Governor does not feel that that's

18  relevant. He goes on for pages in his authorization,

19  obviously for public relation's purposes, talking about

20  how deeply he cares about the city of Detroit, etcetera,

21  etcetera, but not one word about Article IX, § 24 of the

22  Constitution. And, of course, no such word from Mr. Orr

23  in his request to the Governor.

24  　　　　So counsel's essentially saying "No harm yet.

25  Don't worry. Maybe bankruptcy court will take care of

**Page 23**

1  it." But the people who are taking it into bankruptcy,

2  have taken it into bankruptcy have made very clear

3  they're not going to take care of it in bankruptcy.

4  　　　　And finally just the obvious point, but I think

5  needs to be reiterated with all the flurry going on that

6  the whole point of injunctive relief is to prevent a harm

7  that has not yet occurred, and that's all we're seeking

8  with our overall lawsuit and all we were seeking with our

9  motion for preliminary injunction, which this Court has

10  already granted. Thank you.

11  　　　　MR. QUASARANO: Your Honor, I think that the

12  State's briefing and argument sufficiently presents the

13  State's position, but I know the Court is patient, and I

14  would ask the Court's indulgence on the one matter of my

15  appearance here yesterday, and I would like to make this

16  clear for the record, if I may, but for Mr. Wertheimer,

17  who is counsel for the Flowers and others case, I would

18  not have known that the General Retirement System of the

19  City of Detroit, et al., even had a TRO motion scheduled.

20  　　　　The only communication I had with counsel for

21  that, those Plaintiffs, was the night before asking if we

22  could accept service on the Governor, which, as the Court

23  knows, we're barred from accepting service on behalf of a

24  State Defendant. Until the State Defendant is served, we

I was told there would not be any preliminary
injunction or TRO sought in that case. I do understand
that situation had changed in the hours after that. But,
but for Mr. Wertheimer calling me, counsel in another
case, I would not have known. When he called me, and the
transcript yesterday says it was around 3:30 or so, and
then I arrived as quickly as I could walk over here. So
there was no delay on behalf of the Attorney General's
Office to be here, to represent the State's interest, to
be here to answer this Court's questions. And any delay
at all was because we were notified by counsel for the
Plaintiffs yesterday that they intended to bring the
motion. Thank you for letting me clarify that.

THE COURT: Thank you.

Anything further, sir?

MR. DEVLIN: Nothing further. Thank you.

THE COURT: Defendants have filed a motion for
summary disposition pursuant to (4), which is:

The Court lacks jurisdiction of
the subject matter.

This Court absolutely has jurisdiction of the
subject matter. It's a state question. I know they've
removed it to federal bankruptcy court, but we still have
very serious state questions. We have the State
Constitution, Article IX, § 24. We have an emergency

---

The opposing party has failed to
state a claim on which relief can
be granted.

I see problems all over the place. I stated
them. I don't think I need to be redundant. Clearly
there are numerous claims and issues. I won't be
redundant. The relief requested is denied. Motion for
summary disposition is denied.

MR. WERTHEIMER: Thank you, your Honor.

THE COURT: Who's preparing the order?

MR. QUASARANO: I'll be preparing it for you,
Judge.

THE COURT: Thank you, very much, sir.

MR. QUASARANO: Thank you.

THE COURT: Next matter?

MR. WERTHEIMER: We are -- I am done relative
to the Flowers case.

THE COURT: Thank you, very much, sir.

MR. WERTHEIMER: I'll vacate. I think there
are others lawyers in the room with another related case.
So I'll wait in the courtroom but vacate counsel table.

THE COURT: Thank you.

MR. WERTHEIMER: Thank you.

MR. CANZANO: Your Honor, John Canzano on
behalf of the Plaintiffs in the Webster case. I would

---

manager statute, and we have a Constitution at issue.
State issues are within the purview of this Court. I
don't care that it was removed to bankruptcy court.
There is nothing here that tells me it was properly
removed to federal bankruptcy court because there is a
procedure in place of how it gets removed. And this
Court does not believe it was properly placed in the
hands of the bankruptcy court because it is going to
affect pensions. Once it affects pensions, which is
clearly what it's going to do, it's in violation, and the
Governor can't give permission for it to go to bankruptcy
court. It's very clear. I think a first-year law
student understands the concept. And I know the Governor
is not a lawyer, but he has very well paid lawyers who do
understand the concept.

The party asserting the claim
lacks the legal capacity to sue.

That is MCR 2.116(5). A party asserting the
claim lacks the legal capacity to sue? How is that
possible? They're interested parties. Absolutely they
have capacity to sue. The pension's involved, the
pension related to the parties. I don't see any problems
there.

And then we have (8), which is always a
catch-all.

---

like to clarify the relief that we are seeking here
today. We -- our complaint sought declaratory judgment
and preliminary injunction. Today we are seeking only a
declaratory judgment.

I have taken the liberty of preparing an order
for declaratory judgment which I can present when I'm
done, and the Court may or may not want to say everything
that I've said in there, but I think we are entitled to
that relief. The briefs -- this has all been briefed
already. I don't need to go over that.

The State's defense to our motion did not
contest the facts and did not contest the substance of
the merits of the law, which is that the Constitution
prohibits diminishment of pension -- accrued pension
benefits. They simply -- they simply said the case is
not ripe, and there is not an actual controversy for a
declaratory judgment.

Now, after yesterday, it's obviously ripe. We
cited a case in our reply brief, *City of Lake Angelus*,
which amazingly is almost on all fours with this case. I
won't describe that case except to say that that
was a case where the Attorney General made the argument
that there was no injury and there was no need for
declaratory judgment because a request to a tribunal had

**Page 28**

1  court correctly ruled that the -- there is an actual
2  controversy because the parties need the court to tell
3  them what their rights and obligations are so they know
4  what to do in the future; whether this tribunal could
5  overrule a local ordinance which prohibited sea planes on
6  Lake Angelus, even though they hadn't been asked and they
7  hadn't ruled. So that part is exactly what we have. Now
8  we have the bankruptcy has been filed.
9        I would like to offer a couple exhibits, which
10 are the July 16th letter from Emergency Manager Orr
11 requesting authorization to file for Chapter 9, which
12 amazingly this happened on Tuesday, and none of our --
13 none of our crack reporters knew about this. Nobody knew
14 about this until yesterday. This was a secret letter.
15       And the July 18th letter from yesterday of the
16 Governor authorizing Emergency Manager Orr to file for
17 Chapter 9. And I think if you look at these two letters,
18 it is crystal clear what the judge has already concluded
19 in the prior order; that not only does the bankruptcy
20 threaten to impair but that that is the goal and the
21 intent of the emergency manager is to impair accrued
22 pension benefits in bankruptcy.
23       I'll give these to opposing counsel. These are
24 -- they're a matter of public record now. I just wrote
25 Exhibit A and Exhibit B on them.

**Page 29**

1        (Approaching the bench.)
2        THE COURT: All right. Thank you.
3        MR. CANZANO: As to the merits, I think again
4  it is very clear this isn't a case where you need case
5  law. You just read the Constitution. It says accrued
6  pension benefits shall not be diminished or impaired.
7  The Constitution says that. The Emergency Manager law
8  says the Governor can authorize the Emergency Manager to
9  file for Chapter 9. And it doesn't prohibit that -- it
10 doesn't require that pension benefits be protected when
11 he files for Chapter 9. And it is, therefore,
12 unconstitutional to that extent.
13       THE COURT: Is there any objection to the Court
14 receiving Exhibit A and B?
15       MR. DEVLIN: No objection, your Honor.
16       THE COURT: A and B are received. Thank you.
17       (At 12:04 p.m., Exhibit A and
18       Exhibit B is received.)
19       MR. CANZANO: So the emergency manager law is
20 unconstitutional to the extent that it allows the
21 Governor to authorize a Chapter 9 filing which threatens
22 to diminish or impair pension benefits. And the Governor
23 is prohibited by Article IX, § 24 from authorizing an
24 emergency manager to proceed under Chapter 9 in a manner
25 that threatens to impair accrued pension benefits. Any

**Page 30**

1  such action by the Governor is without authority and in
2  violation of Article IX, § 24. And what happened
3  yesterday was a violation of the Constitution.
4        Now, my declaratory judgment order declares
5  these statements. It also has a paragraph at the end
6  that says:
7             In order to rectify his
8             unauthorized and unconstitutional
9             actions described above, the
10            Governor must: One, direct the
11            Emergency Manager to immediately
12            withdraw the Chapter 9 petition
13            filed on July 18th. And, two,
14            not authorize any further Chapter
15            9 filing which threatens to
16            diminish or impair accrued
17            pension benefits.
18       Now, this is just a declaratory judgment. So
19 it is my hope that if the Court is willing to enter this,
20 that the Governor will obey his oath of office and follow
21 what the Constitution requires. And so -- and if he does
22 not, then we may be back here on -- with another
23 iteration of this that requires some type of injunctive
24 relief.
25       At this time we're not seeking injunctive

**Page 31**

1  relief, so I would -- I would withdraw our request for
2  preliminary injunction without prejudice. And I'd also
3  ask, if this order is entered, that the temporary
4  restraining order entered yesterday be vacated or
5  expired, and all we want is a declaratory judgment right
6  now.
7        THE COURT: And the reason to vacate or expire
8  the temporary restraining order?
9        MR. CANZANO: Because now we have the default
10 judgment and the TRO. I don't remember what the court
11 rule says, but it cannot only exist for a short period of
12 time on its own, and this is the tact that we would like
13 to take because we would like to tell the Governor, "This
14 is what you're supposed to do." And then if he doesn't
15 do that, then we'll then -- we'll reassess our options.
16       THE COURT: Okay. Thank you.
17       MR. CANZANO: May I present my draft order?
18       THE COURT: Yes. Have you presented it to the
19 other side?
20       MR. CANZANO: I have not.
21       THE COURT: Thank you.
22       MR. QUASARANO: We've looked at this,
23 your Honor.
24       MR. CANZANO: Just as to the matter of the
25 jurisdiction in the bankruptcy court, I don't think

1  anyone is arguing -- I don't think the Attorney General
2  is arguing that our case is stayed by the bankruptcy
3  court because we're not suing the Emergency Manager.
4  We're only suing the Governor and the Treasurer and the
5  State of Michigan, and they're not -- they're not in the
6  bankruptcy court. They're not the debtor, so that's an
7  argument that has been raised. But, just for clarity, I
8  wanted to point that out. That's all I have.
9        THE COURT: Thank you.
10       Response?
11       MR. DEVLIN: Thank you, your Honor. Brian
12  Devlin again on behalf of the Defendants. I won't repeat
13  the discussion we had on the Flowers case. Much of that
14  applies. The relief sought in each of these cases is the
15  same position of the State, is that the bankruptcy court
16  jurisdiction has a great effect on this, and that the
17  reliefs that might be desired by the Plaintiffs are
18  available through that court. Furthermore, we'd cite the
19  *Straus* case as well in this reply.
20       I would like to call the Court's attention to
21  just one other thing: There was reference made to the
22  Governor's obligation to uphold the terms of the United
23  States -- of the State Constitution but that also applies
24  to the United States Constitution, and bankruptcy court
25  is certainly someone he may have to answer to as well.

                          32

1  So that should not be lost sight of.
2        Finally, I wanted to point out that we do have
3  a motion for summary disposition pending in this case as
4  well. And I would rely on the arguments in the brief.
5  And the ones I've just restated as well to ask that that
6  relief be granted. Thank you.
7        THE COURT: Are you asking that that be heard
8  now, or would you like me to make a ruling on that now?
9        MR. DEVLIN: I think you could probably make a
10  ruling on it without further argument.
11       THE COURT: I think so too.
12       MR. DEVLIN: All right.
13       THE COURT: Okay.
14       MR. DEVLIN: Thank you.
15       THE COURT: Anything further?
16       MR. CANZANO: Nothing further, your Honor.
17       THE COURT: All right.
18       As to the motion for summary disposition in
19  regard to Defendants' motion is denied. I'm going to
20  incorporate the transcript, the arguments of the Flowers
21  matter into this file. I think that in order to have a
22  complete argument, we're going to consolidate the
23  arguments and the files for the purpose of today because
24  they are really united. They are part and parcel of the

                          33

1  transcript without looking at both.
2        So I'm going to direct the court reporter to
3  treat today as one transcript despite there being two
4  docket numbers, and I didn't even call both of them, but
5  we just sort of started, but we're really dealing with
6  Dockets 13-734-CZ and 13-729-CZ.
7        So the motion for summary disposition in regard
8  to 13-734-CZ, and that's Defendants' motion for summary
9  disposition is denied based on the same rationale the
10  Court had and reasoning in the prior case.
11       In regard to the request for declaratory
12  judgment, I think it is imperative that the Court sign
13  this. It's absolutely needed. And the Governor, I have
14  to believe, took his oath in all sincerity to uphold the
15  United States Constitution and the State of Michigan
16  Constitution. I hope he rereads certain sections and
17  reconsiders his actions.
18       I am finding the actions that have been taken
19  in regard to filing this action in the bankruptcy court
20  as overreaching and unconstitutional as it applies to
21  what the Detroit Emergency Manager Kevyn Orr has done in
22  conjunction with the Governor.
23       So I find it absolutely necessary to sign this
24  order of declaratory judgment. I am also going to order,
25  in addition to what you have crafted here, that a copy of

                          34

1  this order be forwarded to President Obama. I know that
2  he's watching this, and he's bailed out Detroit. If this
3  is going to ultimately proceed to bankruptcy without
4  anyone paying attention to Michigan's Constitution and to
5  what the legislature drafted and to what the Governor
6  himself signed into law, then there will ultimately be a
7  request that Obama will have to look at the pension, so
8  he might as well follow this. He said in the news-that
9  he's following this. He might as well see what we've all
10  done here. It's that important to the State of Michigan
11  and to the thousands of people who will be affected, and
12  ultimately all of the taxpayers of the state of Michigan
13  are going to be affected because we will all have to pick
14  up the tab if this is not honored as it should be.
15       Additionally, I am asked that the temporary
16  restraining order be quashed and nullified, so that is
17  now withdrawn, and it expires today at 12:15. And the
18  order of declaratory judgment is being signed as that
19  expires.
20       Is there anything else for the record?
21       MR. WERTHEIMER: Not for the Plaintiffs in
22  Flowers, your Honor.
23       MR. QUASARANO: I'm obliged, your Honor, to
24  move for a stay of enforcement of the order of

                          35

1    THE COURT: You are obliged. I am obliged as
2    well to deny.
3        MR. QUASARANO: I'll have an order ready.
4    Thank you, Judge.
5        THE COURT: I look forward to signing all of
6    those orders today. I will be in until 5 or so. And I
7    haven't looked at Monday's docket. Have we taken care of
8    all of Monday or not?
9        MR. WERTHEIMER: I think, as to the Plaintiffs
10   in Flowers, you have because our motion was for
11   preliminary injunction, which you have granted and will
12   be providing us with that order, and their motion was for
13   summary disposition, which you've denied. I believe that
14   was all that was up in Flowers. So that the Flowers case
15   continues, but there is nothing up for Monday in Flowers.
16       MR. QUASARANO: Defendants concur in Flowers.
17       THE COURT: Okay. My law clerk is making
18   copies, multiple copies, of the order I've just signed.
19       I am here on a moment's notice as you all have
20   become accustomed to if you need me.
21       MR. WERTHEIMER: Thank you, your Honor.
22       THE COURT: That's all for the record.
23       MR. CANZANO: Thank you, your Honor.
24   Appreciate the Court's ability and willingness to help us
25   out on this urgent time.

                                                    36

1        THE COURT: Thank you.
2            (At 12:16 p.m., the matter is
3            concluded.)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
1    STATE OF MICHIGAN)
                     ) SS.
2     COUNTY OF INGHAM)

3

4               CERTIFICATE OF REPORTER

5

6          I, Melinda I. Dexter, Certified Shorthand

7     Reporter, do hereby certify that the foregoing

8     **37 pages** comprise an accurate, true, and complete

9     transcript of the proceedings and testimony taken in the

10    case of **Gracie Webster, et al.** versus **Richard Snyder, et**

11    **al., Case Nos. 13-734-CZ and 13-729-CZ, on Friday,**

12    **July 19, 2013.**

13          I further certify that this transcript of the

14    record of the proceedings and testimony truly and

15    correctly reflects the exhibits, if any, offered by the

16    respective parties.  WITNESS my hand this the nineteenth

17    day of July, 2013.

18

19

20

21

22
      Melinda I. Dexter, RMR, RPR, CSR-4629
23    Official Court Reporter
      313 West Kalamazoo
24    Post Office Box 40771
      Lansing, Michigan 48901-7971
25
```

38

**STATE OF MICHIGAN**

**IN THE 30TH CIRCUIT COURT FOR THE COUNTY OF INGHAM**

WEBSTER, ET AL ,

Plaintiff,

v

RICK SNYDER, ET AL ,

Defendant.

**ORDER**

HON. ROSEMARIE E. AQUILINA

Docket No: 13-734-CZ

At a session of said Court in the City
of Lansing, County of Ingham, State of Michigan,
this 19 day of July, 201_

**PRESENT:** The Honorable Rosemarie E. Aquilina
30th Judicial Circuit Court Judge

Upon review of motion, and a hearing being held in open court, and argument having

been heard, and being fully apprised of the issues, states the following:

**IT IS ORDERED that** DEFENDANTS' MOTION FOR SUMMARY

DISPOSITION IS DENIED FOR THE REASONS STATED

FROM THE BENCH.

**IT IS SO ORDERED**.

Hon. Rosemarie E. Aquilina (P37670)
Circuit Court Judge

Approved as to form: _____

_____
Plaintiff / Plaintiff's Attorney

_____
Defendant / Defendant's Attorney

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

        Plaintiffs,

vs

                                        Case No. 13-734-CZ
                                        Hon.   Rosemarie Aquilina

THE STATE OF MICHIGAN;
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

        Defendants.

_____/

ORDER OF DECLARATORY JUDGMENT

    At a session of said Court held in Ingham County Circuit Court,
    State of Michigan, this 19th day of July, 2013.

      PRESENT: *Rosemarie E Aquilina*
                  Circuit Court Judge

    Plaintiffs request declaratory relief pursuant to MCR 2.605 concerning (1) the

constitutionality under Article IX Section 24 of the Michigan Constitution of the Local Financial

Stability and Choice Act, 2012 PA 436, MCL 141.1541, *et seq*. ("PA 436"), insofar as PA 436

permits the Governor to authorize an emergency manager to proceed under chapter 9 of the

bankruptcy code, chapter 9 of title 11 of the United States Code, 29 USC 901 to 946 ("Chapter

9") in a manner which threatens to diminish or impair accrued pension benefits; and (2) the

authority of the Governor and/or State Treasurer to authorize an emergency manager to proceed under Chapter 9 in a manner which threatens to diminish or impair accrued pension benefits.

Plaintiffs have requested, and Defendants have agreed in their Response, that the hearing in this matter may be advanced pursuant to MCR 2.605(D) and the court finds that expedited treatment is appropriate and that final declaratory relief is proper at this time.

The Court having reviewed the parties filings and submissions, and having heard oral argument by counsel for the parties, and being otherwise fully advised in the premises, and for the reasons stated on the record,

IT IS HEREBY ORDERED:

PA 436 is unconstitutional and in violation of Article IX Section 24 of the Michigan Constitution to the extent that it permits the Governor to authorize an emergency manager to proceed under Chapter 9 in any manner which threatens to diminish or impair accrued pension benefits; and PA 436 is to that extent of no force or effect;

The Governor is prohibited by Article IX Section 24 of the Michigan Constitution from authorizing an emergency manager under PA 436 to proceed under Chapter 9 in a manner which threatens to diminish or impair accrued pension benefits, and any such action by the Governor is without authority and in violation of Article IX Section 24 of the Michigan Constitution.

On July 16, 2013, City of Detroit Emergency Manager Kevyn Orr submitted a recommendation to Defendant Governor Snyder and Defendant Treasurer Dillon pursuant to Section 18(1) of PA 436 to proceed under Chapter 9, which together with the facts presented in Plaintiffs' filings, reflect that Emergency Manager Orr intended to diminish or impair accrued pension benefits if he were authorized to proceed under Chapter 9. On July 18, 2013, Defendant

Governor Snyder approved the Emergency Manager's recommendation without placing any contingencies on a Chapter 9 filing by the Emergency Manager; and the Emergency Manager filed a Chapter 9 petition shortly thereafter. By authorizing the Emergency Manager to proceed under Chapter 9 to diminish or impair accrued pension benefits, Defendant Snyder acted without authority under Michigan law and in violation of Article IX Section 24 of the Michigan Constitution.

In order to rectify his unauthorized and unconstitutional actions described above, the Governor must (1) direct the Emergency Manager to immediately withdraw the Chapter 9 petition filed on July 18, and (2) not authorize any further Chapter 9 filing which threatens to diminish or impair accrued pension benefits.

A copy of this Order shall be transmitted to President Obama.

It is so Ordered.

Rosemarie E. Aquilina
P37670
Circuit Court Judge

8

**STATE OF MICHIGAN**

**IN THE 30TH CIRCUIT COURT FOR THE COUNTY OF INGHAM**

_WEBSTER, ET AL_ ,

Plaintiff,

v

_RICK SNYDER, ET AL_ ,

Defendant.

**ORDER**

HON. ROSEMARIE E. AQUILINA

Docket No: _13-734-CZ_

At a session of said Court in the City
of Lansing, County of Ingham, State of Michigan,
this _19_ day of _July_ , 201_

PRESENT:   The Honorable Rosemarie E. Aquilina
30th Judicial Circuit Court Judge

Upon review of motion, and a hearing being held in open court, and argument having

been heard, and being fully apprised of the issues, states the following:

IT IS ORDERED that _DEFENDANTS' MOTION TO STAY, PENDING_
_APPEAL, THE ENFORCEMENT OF THE COURT'S ORDER_
_GRANTING PLAINTIFFS' MOTION FOR DECLARATORY_
_JUDGMENT AND THE ORDER OF DECLARATORY JUDGMENT_
_IS DENIED FOR THE REASONS STATED FROM THE_
_BENCH._

IT IS SO ORDERED.

_Rosemarie E Aquilina_

Hon. Rosemarie E. Aquilina (P57670)
Circuit Court Judge

Approved as to form: _____     _____
                        Plaintiff / Plaintiff's Attorney          Defendant / Defendant's Attorney