UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| In re | No. 13-53846 |
|---|---|
| CITY OF DETROIT, MICHIGAN, | Chapter 9 |
| Debtor. | HON. STEVEN W. RHODES |

# ATTACHMENT

# APPELLEE STATE OF MICHIGAN'S DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

| Design-ation | Docket # | Filing Date | Description |
|---|---|---|---|
| 2. | 1793 | 11/22/2013 | State of Michigan's Reply in Support of Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to Enter Into and Perform Under Certain Transaction Documents With the Public Lighting Authority and (II) Granting Other Related Relief |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN

Debtor.

Case No. 13-53846-SWR
Chapter 9
Hon. Steven W. Rhodes

_____

**STATE OF MICHIGAN'S REPLY IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO ENTER INTO AND PERFORM UNDER CERTAIN TRANSACTION DOCUMENTS WITH THE PUBLIC LIGHTING AUTHORITY AND (II) GRANTING OTHER RELATED RELIEF**

The State of Michigan, through its undersigned counsel, submits this Reply in support of the Debtor's Motion For Entry Of An Order (I) Authorizing The Debtor To Enter Into And Perform Under Certain Transaction Documents With The Public Lighting Authority And (II) Granting Other Related Relief (the "Motion") [Dkt. #1341].

## INTRODUCTION

The most fundamental function of a city is to provide for the safety and welfare of its residents. A sufficient public lighting system is essential to the fulfillment of this function.[1] For this reason, the Michigan Legislature enacted 2012 PA 392 ("PA 392"), the *Municipal Lighting Authority Act* (Mich.Comp.Laws § 123.1261 *et seq.*), to provide certain Michigan cities with

---

[1] *See*, e.g., Jennifer L. Doleac and Nicholas J. Sanders, *Stanford Institute for Economic Policy Research*, Under Cover of Darkness: Using Daylight Saving Time to Measure How Ambient Light Influences Criminal Behavior, November 5, 2012, http://siepr.stanford.edu/publicationsprofile/2495/ (suggesting that street lighting investment likely positively impacts public safety); Katy Welter, Bright Lights, Safe Cities: How Daylight Saving Fights Crime, *Frank Batten School of Leadership and Public Policy*, BATTON CONNECTION, http://www.batten.virginia.edu/content/news-events/bright-lights-safe-cities-how-daylight-saving-fights-crime/; Roger Wright, Martin Heilweil, Paula Pelletier and Karen Dickinson, The Impact of Street Lighting on Street Crime, May 1974, (unpublished, on file at http://www.popcenter.org/library/scp/pdf/197-Wright_et_al.pdf/) (finding that reductions in violent crime are linked to improved street lighting).

access to "an equitable and reasonable method and means of financing, operating and maintaining a lighting system to supply lighting in sufficient quantities…" Mich.Comp.Laws § 123.1265(1). PA 392 allows for the creation by certain cities of public lighting authorities that will have access to favorable credit markets, enabling these cities to obtain the financing necessary to construct, operate, and maintain public lighting systems.

Pursuant to 1990 PA 100, as amended ("PA 100"), the *City Utility Users Tax Act* (Mich.Comp.Laws § 141.1151 *et seq.*), Michigan cities that form lighting authorities in accordance with PA 392 are authorized to levy and collect a utility users tax from their utilities customers. The revenues collected in accordance with PA 100 may be used only to service bonds issued by a public lighting authority pursuant to PA 392, or, if not otherwise pledged to pay such bonds, the revenues must be used to retain or hire police officers. Mich.Comp.Laws § 141.1152(4). Thus, revenues collected pursuant to PA 100 may not be used for purposes other than the public safety of the city's residents and cannot be used to make other general fund payments or to pay the city's creditors.

In the Limited Objection, the Objectors[2] raise three objections: (1) the Motion lacks the detail necessary to evaluate the merits of the PLA Transaction[3]; (2) the City fails to explain why

---

[2] Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (collectively, "Syncora") filed a Limited Objection (the "Limited Objection" [Dkt. #1557]) to the Motion. Ambac Assurance Corporation ("Ambac") [Dkt. #1574], the Michigan Council 25 of the American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees (collectively, "AFSCME") [Dkt. #1603], FMS Wertmanagement AÖR ("FMS") [Dkt. #1615], Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A., and Erste Europaische Pfandbriefund Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A. (collectively, "Erste") [Dkt. #1636], and the Official Committee of Retirees (the "Committee") [Dkt. #1713], each filed Joinders in Syncora's Limited Objection. Syncora, Ambac, AFSCME, FMS, Erste, and the Committee are collectively referred to in this Reply as the "Objectors." The arguments raised in Syncora's Limited Objection are attributed to the Objectors, collectively.

[3] Capitalized terms not defined herein have the meaning ascribed in the Motion.

2

13-53846-tjt Doc 2483-2 Filed 01/15/14 Entered 01/15/14 15:30:44 Page 3 of 9
13-53846-swr Doc 1793 Filed 01/22/14 Entered 01/22/14 16:02:58 Page 3 of 9

it must pledge all of the Utility Tax Revenues to the Trust instead of using these revenues to fund recoveries to creditors; and (3) the PLA Transaction can be properly proposed, and properly evaluated by the City's creditors, only as part of a plan of adjustment. Because the Utility Tax Revenues may not be used to pay the City's creditors, all of the Objectors' objections should be overruled and the Motion should be granted.

## ARGUMENT

**A.    The Utility Tax Revenues may only be used for the safety and welfare of the City's residents and cannot be used to pay the City's creditors.**

PA 100, § 2(1) provides that "a city having a population of 600,000 or more … may levy, assess, and collect from those users in that city a utility users tax …." Mich.Comp.Laws § 141.1152(1). Prior to 2012, PA 100 required that the Utility Tax Revenues be used exclusively to retain or hire police officers.[4] However, in 2012, PA 100 was amended[5] to provide that "*[u]nless revenues have been otherwise pledged to pay bonds issued by a lighting authority,* the revenue generated from this tax shall be placed directly in the budget of the police department of a city described in this act and shall be used exclusively to retain or hire police officers." Mich.Comp.Laws § 141.1152(4) (emphasis added).

Prior to the 2012 amendments to PA 100, the revenue generated from the Utility Users Tax was to be used exclusively to retain and hire police officers. The 2012 amendments to PA 100 effectively carved out some of the Utility Tax Revenues that were designated to be used exclusively to retain and hire police officers to allow these revenues to be used to fund

---

[4] Among other additions, PA 392 added the phrase "Unless revenues have been otherwise pledged to pay bonds issued by a lighting authority" to PA 100, §2(4), thus authorizing the Utility Tax Revenues to be pledged to pay bonds issued by the PLA in addition to being used to pay for the retention and hiring of police officers. Mich.Comp.Laws § 141.1152(4).
[5] 2012 PA 393.
3

repayment of bonds issued by the PLA.[6]  Subsequent to the 2012 amendments, the first $12,500,000 of the Utility Tax Revenues must be paid to the PLA for repayment of bonds issued by the PLA, and all remaining Utility Tax Revenues must be used for the exclusive purpose of funding the retention or hiring of police officers.  Mich.Comp.Laws § 141.1152(5); Mich.Comp.Laws § 123.1285(4) and (5).  Thus, PA 100 allows the Utility Tax Revenues to be used only for these two public safety purposes and thus, the Utility Tax Revenues cannot now, nor could they ever have been, used to pay the City's creditors.

**B.  PA 392 authorizes the City to pledge the Utility Tax Revenues to the Trust to be used to pay bonds issued by the PLA.**

As set out in the Motion, the City is undertaking the PLA Transaction in accordance with PA 392, § 25.  The City and the PLA will enter into the C&F Agreement "to construct, improve, enlarge, reduce or extend" the City's lighting system pursuant to § 25(1).  *Motion*, ¶ 19; Mich.Comp.Laws § 123.1285(1).  As authorized under § 25(3), the C&F Agreement contemplates that the PLA will issue the PA 392 Bonds and the City will pledge the Utility Tax Revenues to secure repayment of the bonds.  *Motion*, ¶ 19; Mich.Comp.Laws § 123.1285(3).  Further, as required by § 25(3), the City will enter into the Trust Agreement with the PLA, the MFA, and the Trustee (*Motion*, p. 2; Mich.Comp.Laws § 123.1285(3)(a)(i)) which directs payment of the pledged Utility Tax Revenues to the Trustee.  *Motion*, ¶ 8; Mich.Comp.Laws § 123.1285(3)(a)(i)(B).  Finally, in accordance with § 25(4), the Trust Agreement requires the

---

[6] In order to offset the reduction in revenue to the police department, at the same time the 2012 amendments to PA 100 were enacted, the Legislature enacted 2012 PA 394 ("PA 394") to amend 1964 PA 284 ("PA 284"), the *City Income Tax Act* (Mich.Comp.Laws § 141.501 *et seq.*), to, among other things, allow the City to increase the annual income tax rates that the City is allowed to levy.  Under PA 284 (as amended by PA 394), upon the City forming the PLA, a portion of the income tax revenues generated under PA 284 must be deposited directly into the budget of the city's police department to be used exclusively to retain or hire police officers. Mich.Comp.Laws § 141.503(3).

4

Trustee to release up to the first $12,500,000 to the PLA to make debt service payment and release the pledged Utility Tax Revenues in excess of $12,500,000 (the "Excess Utility Tax Revenues") to the City free and clear of liens granted by the PLA Transaction. *Motion*, ¶ 8; Mich.Comp.Laws § 123.1285(4).

PA 392, §25(3) expressly prohibits the use of the pledged Utility Tax Revenues to pay creditors, stating that "[t]he pledged revenues are exempt from being levied upon, taken, sequestered, or applied toward paying the debts or liabilities of the local government other than for the payment of debt service on the authority bonds and related administrative costs to which the contract and trust agreement apply …." Mich.Comp.Laws § 123.1285(3)(d). Further, PA 100, § 25(4) requires that all Utility Tax Revenues not pledged to repay bonds issued by the PLA be "used exclusively to retain or hire police officers." Mich.Comp.Laws § 141.1152(4). Finally, pursuant to PA 392, § 2(5), the annual debt service for the bonds issued by the PLA for which the Utility Tax Revenues are pledged cannot exceed $12,500,000 in any one year. Mich.Comp.Laws § 123.1285(5).

C.  **The Objectors' objections are without merit.**

The Objectors' first objection is that the Motion lacks the detail necessary to evaluate the PLA Transaction. The Objectors generally contend that the City failed to provide certain details the Objectors claim they need to know relating to the process by which the PLA will issue the PA 392 Bonds, the scope of the public lighting system project, and a cost/benefit analysis of the improvements to the City's public lighting system. *Limited Objection*, ¶ 17.

Contrary to the Objectors' contention, PA 392 provides sufficient detail relating to the issuance of bonds by the PLA. Mich.Comp.Laws § 123.1281. Further, PA 392 requires the PLA to prepare and submit 3-year plans that define the scope of the public lighting system project.

5

Mich.Comp.Laws § 123.1177. Finally, the State has been advised by the City that all of the documents relevant to its Motion, including the transaction documents and the PLA's plan to address the serious public lighting deficiencies, have been provided. Thus, all of the details that the Objectors seek have been provided or are specified in PA 392.

Further, because, pursuant to PA 100, the Utility Tax Revenues could *never* have been used to pay the City's creditors, the PLA Transaction does not affect the City's creditors and, with all due respect, the Objectors have no basis on which to demand a cost/benefit analysis.

The Objectors' second objection is that the City "fails to explain why it is pledging $40 million of utility tax revenues when only $12.5 million is necessary for the transaction." *Limited Objection*, ¶ 22. Since none of the Utility Tax Revenues can be used to pay the City's creditors pursuant to state law, it is irrelevant whether all, some, or none of the Utility Tax Revenues are pledged. Moreover, although all of the Utility Tax Revenues are being directed to the Trust, pursuant to PA 100 and PA 392, only the first $12,500,000 of the Utility Tax Revenues annually is permitted to be used for repayment of bonds issued by the PLA, and the Excess Utility Tax Revenues must be used exclusively by the City's police department. Mich.Comp.Laws § 141.1152(5); Mich.Comp.Laws § 123.1285(4) and (5). Thus, although all of the Utility Tax Revenues are directed to the Trust, only $12,500,000 of these revenues may actually be paid to the PLA on an annual basis.

In their third objection, the Objectors contend that "the City is attempting to restrict a revenue stream for 30 years in a way that diminishes creditor recoveries," and that "the City should have included [the PLA Transaction] as part of its plan of adjustment." *Limited Objection*, ¶ 24.

6

13-53846-tjt  Doc 2483-2   Filed 01/15/14   Entered 01/15/14 15:30:44   Page 7 of 9
13-53846-swr  Doc 1793    Filed 11/22/13   Entered 11/22/13 16:02:58   Page 6 of 8

As thoroughly analyzed above, the Utility Tax Revenues could never be used to pay the City's creditors and therefore, the City is not "restricting" a revenue stream that could have been used to pay creditors. Moreover, because the PLA Transaction is funded by the Utility Tax Revenues which cannot be used to pay the City's creditors, the PLA Transaction is completely independent from any subsequent plan of adjustment proposed by the City.

**D. Providing the means through which the City can obtain financing to fund improvements to its public lighting system is a proper exercise of the State's power to control the City.**

Section 903 of the Bankruptcy Code provides, in relevant part, that "[chapter 9] does not limit or impair the power of the State to control, by legislation or otherwise, a municipality of or in such State in exercise of the political or governmental powers of such municipality…." 11 U.S.C. § 903. Thus, Section 903 provides that the State retains its power to control the City, notwithstanding the City's filing for Chapter 9 relief.

Nothing can be more fundamental to the State's governmental power than to ensure the public safety of its cities' residents. Through PA 100 and 392, the State provides the means by which the City gains access to favorable credit markets, enabling the City to obtain the financing necessary to construct, operate, and maintain a sufficient public lighting system that is essential to the safety and welfare of the City's residents.

Moreover, the State did not simply provide access to favorable credit markets to enable the City to obtain financing for its public lighting system improvements. The State also provided a means by which the City could generate the revenues necessary to fund repayment of the financing without diminishing funds available to pay the City's creditors. In doing so, the State has required that the proceeds generated by the Utility Users Tax in fact be used for the two

7

public safety purposes described in this Reply.  The filing for Chapter 9 does not limit or impair the power of the State to exercise its political and governmental powers in this manner.

**CONCLUSION**

For the reasons shown above, the Objectors' objections to the Motion should be overruled and the Motion should be granted.

Respectfully submitted,

 /s/ Steven G. Howell
Steven G. Howell
Special Assistant Attorney General

Dawn R. Copley
Dickinson Wright PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226-3425

Matthew Schneider
Chief Legal Counsel

Margaret A. Nelson
Assistant Attorney General
P.O. Box 30758
Lansing, MI 48909
517.373.6434

Attorneys for the State of Michigan

Date:  November 22, 2013

8

13-53846-tjt   Doc 2483-2   Filed 01/15/14   Entered 01/15/14 15:30:44   Page 9 of 9
13-53846-swr   Doc 1793   Filed 11/22/13   Entered 11/22/13 16:02:58   Page 9 of 9