# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| In re | No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, | Chapter 9 |
| Debtor. | HON. STEVEN W. RHODES |

## ATTACHMENT

## APPELLANT STATE OF MICHIGAN'S DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

| Item | Date Filed | Docket # | Description |
|---|---|---|---|
| 5. | 10/7/2013 | 1109 | Debtor's Brief in Opposition to Catherine Phillips, et al.'s Motion for Relief from Order Pursuant to Section 105(a) of the Bankruptcy Code Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non Officer Employees and (C) Agents and Representatives of the Debtor (Attachments: Exhibit A; Exhibit B; Exhibit C) |

# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
-------------------------------------------- x
                                             :
In re                                        :        Chapter 9
                                             :
CITY OF DETROIT, MICHIGAN,                   :        Case No. 13-53846
                                             :
                Debtor.                      :        Hon. Steven W. Rhodes
-------------------------------------------- x
```

**DEBTOR'S BRIEF IN OPPOSITION TO CATHERINE PHILLIPS, et al.'s MOTION FOR RELIEF FROM ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE ENTITIES, (B) NON OFFICER EMPLOYEES AND (C) AGENTS AND REPRESENTATIVES OF THE DEBTOR[1]**

Two days after Mr. Orr formally took office, the Plaintiffs filed the Lawsuit seeking a judgment enjoining Mr. Orr from taking any actions under PA 436 and declaring PA 436 to be unconstitutional. Yet, the Plaintiffs somehow assert that granting them relief from stay to prosecute this Lawsuit to judgment will "not interfere with the progression of the Debtor's bankruptcy case" because the City will not be "in any way affected." Stay Relief Motion at 12; Stay Relief Brief at 14. This is not accurate nor is the timing of the Lawsuit's filing a coincidence. Although some of the Plaintiffs are citizens of municipalities other than the City --

---

[1] Capitalized terms not otherwise defined in this Brief in Opposition have the meanings given to them in the Debtor's Objection, filed contemporaneously herewith.

Flint, Pontiac and Benton Harbor -- as the Complaint acknowledges, these municipalities have all had emergency managers for at least two years. The fact that the Plaintiffs did not file the Lawsuit until several years after the appointment of those emergency managers while doing so just two days after Mr. Orr formally took office, cannot be dismissed as mere happenstance. Instead, it is apparent that the Lawsuit is a direct challenge to Mr. Orr's appointment as Emergency Manager and inescapably, an attack on any actions he may take, including his decision to file and prosecute this chapter 9 case.

This Lawsuit, much like the suit and stay relief motion filed by the NAACP [Dkt. No. 740], is an effort to litigate the City's eligibility before a different court in circumvention of the Court's Stay Extension Order and the process this Court adopted to resolve eligibility objections. Granting stay relief to the Plaintiffs will open the flood gates allowing other parties to file suits in different courts which, at the end of the day, would be little more than eligibility challenges to the City's chapter 9 case.[2] As this Court emphasized, litigating eligibility issues in two different courts, simultaneously "does not promote judicial or party efficiency; it is the antithesis. The most efficient way to litigate eligibility in this case is in one court – the bankruptcy court – and then on appeal in the next." Opinion and Order

_____

[2] It would appear to be axiomatic that granting stay relief to the Plaintiffs, would also compel the Court to grant stay relief to the NAACP.

21573415.3\022765-00202

Denying Motion to Stay Proceedings Pending Determination of Motion to Withdraw the Reference at 19. [Dkt. No. 1039]. As such, the Plaintiffs have not identified any cause, much less sufficient cause, to allow them to proceed with the Lawsuit. Accordingly, the Stay Relief Motion must be denied.

## I. BACKGROUND

### A. Appointment of the Emergency Manager

On February 19, 2013, a review team appointed by Rick Snyder, Governor of the State of Michigan (the "Governor"), pursuant to Public Act 72 of 1990, the Local Government Fiscal Responsibility Act, MCL § 141.1201, et seq. ("PA 72"), issued its report with respect to the City and its finances (the "Review Team Report"). The Review Team Report concluded that a local government financial emergency exists within the City.

On March 14, 2013, in response to the Review Team Report and the declining financial condition of the City and at the request of the Governor, the Local Emergency Financial Assistance Loan Board of the State of Michigan appointed Kevyn D. Orr as emergency financial manager with respect to the City under PA 72, effective as of March 25, 2013.

On March 28, 2013, upon the effectiveness of Public Act 436, the Local Financial Stability and Choice Act, MCL § 141.1541, et seq. ("PA 436"), Mr. Orr

21573415.3\022765-00202

became, and continues to act as, emergency manager with respect to the City under PA 436 (in such capacity, the "Emergency Manager").

On July 18, 2013, the Governor issued his written decision (the "Authorization") approving the Emergency Manager's recommendation that the City be authorized to proceed under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code"). Thereafter, also on July 18, 2013, the Emergency Manager issued an order approving the filing of the City's chapter 9 case consistent with the Authorization (the "Approval Order").

In accordance with the Authorization and Approval Order, on July 18, 2013 (the "Petition Date"), the City commenced this case under chapter 9 of the Bankruptcy Code.

## B.    The Plaintiffs' Lawsuit in the District Court

On March 27, 2013, the Plaintiffs filed the Complaint against the Governor and State Treasurer Andrew Dillon (collectively, the "Defendants"), commencing Case No. 13-11370 (the "Lawsuit"), in the United States District Court for the Eastern District of Michigan, Southern Division (the "District Court"). The Complaint seeks a judgment (a) declaring PA 436 unconstitutional (Prayer A); (b) enjoining and restraining the Defendants and any present and future emergency managers from implement or exercising authority and powers purportedly conveyed by PA 436 (Prayer B); and (c) invalidating and restraining the terms of

- 4 -

present and future consent agreements entered into under PA 436 that abridge or diminish powers granted to local elected officials under local charters and ordinances (Prayer C). Complaint at 49-50.

Approximately six weeks later, the Defendants filed their Motion to Dismiss (the "Motion to Dismiss").  The Motion to Dismiss is attached as Exhibit A. As set forth in the Motion to Dismiss, the Complaint should be dismissed because the Plaintiffs fail to assert any cognizable legal claims.

On May 30, 2013, the District Court entered an order setting June 27, 2013, as the deadline for the Plaintiffs to file a response to the Motion to Dismiss and July 22, 2013, as the Defendants' reply deadline. The order also set a hearing on the Motion to Dismiss for August 22, 2013.

On August 7, 2013, the Defendants filed a Notice of Pendency of Bankruptcy Case and Application of the Automatic Stay and on August 22, 2013, the District Court entered an order staying the Lawsuit. The order provides that the "plain language" of the Stay Extension Order applies to the Lawsuit.

## C.    The Stay Extension Order and Eligibility

On July 19, 2013, the City filed the Motion of Debtor for Entry of an Order (A) Directing and Approving Form of Notice of Commencement of Case and Manner of Service and Publication of Notice and (B) Establishing a Deadline for Objections to Eligibility and a Schedule for Their Consideration [Dkt. No. 18] (the

"Eligibility Objection Motion"). The Eligibility Objection Motion requested that the Court set August 19, 2013 ("Objection Deadline"), as the deadline for all parties to file objections to the City's eligibility to obtain relief under chapter 9 of the Bankruptcy Code ("Eligibility Objections"). The Eligibility Objection Motion also asked the Court to set a schedule for hearing and resolving Eligibility Objections. Eligibility Objection Motion ¶ 28. The Court granted the Eligibility Objection Motion on August 2, 2013, and entered an order setting the Objection Deadline ("Objection Order," Dkt. No. 296). The Objection Order also set a schedule for hearing and resolving Eligibility Objections.

Plaintiffs Charles E. Williams II [Dkt. No. 391], Russ Bellant [Dkt. Nos. 402 & 405], AFSCME [Dkt. No. 505], and numerous creditors and other parties in interest objected to the City's eligibility to be a debtor under chapter 9 of the Bankruptcy Code on the basis that, for one reason or another, PA 436 is unconstitutional on its face or as applied ("PA 436 Eligibility Objections"). See list of objecting parties in the First Amended Order Regarding Eligibility Objections Notices and Hearings and Certifications Pursuant to 28 U.S.C. §2403(a) & (b) [Dkt. No. 821]. The Court conducted a hearing on some of the PA 436 Eligibility Objections and the remainder are scheduled to be heard next week.

On July 19, 2013, the City filed the Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order Extending the Chapter 9

- 6 -

Stay to Certain (A) State Entities, (B) Non-Officer Employees and (C) Agents and Representatives of the Debtor [Dkt. No. 56] (the "Stay Extension Motion"). The Stay Extension Motion requested that the Court extend the automatic stay provisions of sections 362 and 922 of the Bankruptcy Code (the "Automatic Stay") to, among others, the Governor and the Treasurer. The City requested such relief to "(a) aid in the administration of [the City's] bankruptcy case, (b) protect and preserve property for the benefit of citizens and stakeholders and (c) ensure that the City is afforded the breathing spell it needs to focus on developing and negotiating a plan for adjusting its debts." Stay Extension Motion at ¶ 15. The City specifically expressed the concern that litigation against the Governor and Treasurer could be used as a means to pursue claims against the City or interfere with the chapter 9 process. Id. at ¶ 22.

Plaintiff AFSCME objected to the Stay Extension Motion on several grounds, including those set forth in the Stay Relief Motion. See AFSCME Objection ¶¶ 45-46 [Dkt. No. 84]. The Plaintiffs and AFSCME also made these same arguments at the hearing during which this Court considered the Stay Extension Motion. See July 24, 2013, Hearing Tr. 1-2, 19-24, 52-54. Relevant portions of the July 24, 2013, Hearing Transcript are attached as Exhibit B.

On July 25, 2013, this Court overruled the objections and entered the Order Pursuant to Section 105(a) of the Bankruptcy Code Extending the Chapter 9 Stay

- 7 -

to Certain (A) State Entities, (B) Non Officer Employees and (C) Agents and Representatives of the Debtor [Dkt. No. 166] (the "Stay Extension Order").  The Stay Extension Order is not subject to appeal and is a final order of the Court.

## II.  ARGUMENT

In support of the Stay Relief Motion, the Plaintiffs advance three arguments: (1) the Stay Extension Order does not apply to the Lawsuit; (2) the Stay Extension Order applies to the Lawsuit but this Court did not have authority to enter it either because it is impermissibly broad or it does not further the purposes of the Bankruptcy Code; and (3) cause exists to grant relief from the Stay Extension Order either because the Complaint alleged constitutional violations or a balance of the equities favors the Plaintiffs.  Again, these are essentially the same arguments asserted by the NAACP in its motion for relief from stay and none have any merit.

### A.  The Stay Extension Order Applies to the Lawsuit

The Plaintiffs misunderstand or misconstrue the relief granted in the Stay Extension Order.  The Lawsuit is precisely the type of case that the Stay Extension Order was intended to cover and, contrary to the Plaintiffs' assertions, it does not stay "all actions" against the Defendants. Stay Relief Brief at 6.  The City addressed these assertions at pages two through five in its brief in response to the NAACP's motion for relief from stay and will not repeat the same arguments here. [Dkt. No. 1044].  The City's Brief in Opposition to the NAACP's motion for relief

- 8 -

from stay is attached as <u>Exhibit C</u>.  Moreover, it appears that the Plaintiffs have conceded that the Stay Extension Order applies to the Lawsuit since they state that "No matter what the facts, no matter what the claims against the State, under the broad language of this Court's *Order*, no lawsuit of any kind can proceed against the Governor or the State Treasurer until one community—the City of Detroit—emerges from Bankruptcy." Stay Relief Brief at 15.

## B.    The Court Had Authority to Enter the Stay Extension Order

The Plaintiffs next argue, after conceding that the plain language of the Stay Extension Order applies to the Lawsuit, that this Court did not have the authority to enter the Stay Extension Order.  Significantly, the Plaintiffs and AFSCME previously objected to the Stay Extension Motion on these same grounds.  The Court overruled the objections and entered the Stay Extension Order.  For the same reasons the Court articulated in overruling these objections, it should reject the Plaintiffs arguments here and find that the Stay Extension Order was properly entered.  Furthermore, the Plaintiffs are precluded from relitigating these same issues in the context of the Stay Relief Motion. <u>See</u> <u>e.g.</u>, <u>Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc.</u>, 701 F.3d 1093, 1098 (6th Cir. 2012) (holding that issue preclusion precludes relitigation where (1) the precise issue was raised and litigated in the prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceedings; (3) the prior proceedings

21573415.3\022765-00202
13-53846-tjt wr Doc 2547 5 Filed 01/23/13 Entered 01/23/13 14:33:34 Page 10 of 86
13-53846-swr Doc 4169 Filed 01/23/13 Entered 01/23/13 16:34:50 Page 10 of 86

resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought had a full and fair opportunity to litigate the issue in the prior proceeding).

Moreover, as the Plaintiffs recognize, a bankruptcy court may extend the automatic stay where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." In re Eagle-Picher Indus., Inc., 963 F.2d 855, 861 (6th Cir. 1992) (quoting A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986)).  The Lawsuit seeks a judgment enjoining Mr. Orr from taking any actions under PA 436 and declaring PA 436 to be unconstitutional.  Thus, any judgment against the Defendants would in effect be a judgment or finding against the City. As a result, under well-established Sixth Circuit precedent, this Court had the authority to enter the Stay Extension Motion.  The Plaintiff's arguments to the contrary must be rejected.

## C.  No Cause Exists to Grant Plaintiffs Relief from the Automatic Stay

Finally, the Plaintiffs allege that relief from the Automatic Stay should be granted for "cause." Rather than addressing the concept of cause, as interpreted by courts in this circuit, the Plaintiffs primarily assert that the alleged Constitutional violations take precedence over applying the Automatic Stay to non-debtor

- 10 -

21573415.3\022765-00202

13-53846-swr  Doc 254-5  Filed 00/03/13  Entered 00/03/13 14:83:84  Page 10 of 86
13-53846-swr  Doc 254-5  Filed 00/03/13  Entered 00/03/13 14:83:84  Page 10 of 86

defendants. The Plaintiffs also seem to assert that the Constitutional violations they allege may only be determined by an Article III court and not this Court. However, as this Court recently decided, it has authority to determine constitutional questions and that referral of such questions to an Article III court is not necessary. Opinion and Order Denying Motion to Stay Proceedings Pending Determination of Motion to Withdraw the Reference at 4-12. [Dkt. No. 1039]. Further, mere allegations of Constitutional violations do not constitute a separate or independent basis to grant relief from the Automatic Stay. Accordingly, no cause (much less sufficient cause) exists to grant the Plaintiffs relief from the Automatic Stay.

1. **Under Sixth Circuit Law, No Cause Exists to Grant the Plaintiffs Relief from the Automatic Stay**

Although not directly discussed by the Plaintiffs, under the factors generally applied to stay motions in this circuit, there is no cause for relief from stay. Section 362(a) of the Bankruptcy Code provides in relevant part that:

> a petition filed under . . . this title . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case . . . .

- 11 -

11 U.S.C. § 362(a).  The Automatic Stay "is one of the fundamental debtor

protections provided by the bankruptcy laws. It gives the debtor a breathing spell

from his creditors.  It stops all collection efforts, all harassment, and all foreclosure

actions." Javens v. City of Hazel Park (In re Javens), 107 F.3d 359, 363 (6th Cir.

1997) (quoting H.R. REP. NO. 95-595, at 340 (1978), reprinted in 1978

U.S.C.C.A.N. 5787, 6296).

Section 362(d) of the Bankruptcy Code authorizes a bankruptcy court to

grant relief from the Automatic Stay in limited circumstances.  See 11 U.S.C. §

362(d).  In particular, section 362(d)(1) of the Bankruptcy Code provides that a

party in interest may obtain relief from the Automatic Stay "for cause, including

the lack of adequate protection of an interest in property of such party in interest."

11 U.S.C. §362(d)(1).

"The Bankruptcy Code does not define 'cause' as used in [section]

362(d)(1).  Therefore, under [section] 362(d), 'courts must determine whether

discretionary relief is appropriate on a case by case basis.'"  Chrysler LLC  v.

Plastech Engineered Prods., Inc. (In re Plastech Engineered Prods., Inc.), 382 B.R.

90, 106 (Bankr. E.D. Mich. 2008) (quoting Laguna Assocs. L.P. v. Aetna  Casualty

& Surety Co. (In re Laguna Assocs. L.P.), 30 F.3d 734, 737 (6th Cir. 1994)).  The

determination of whether to grant relief from the Automatic Stay "resides within

the sound discretion of the Bankruptcy Court."  Sandweiss Law  Center, P.C. v.

21573415.3\022765-00202
13-53846-tjt   Doc 25475   Filed 00/03/13   Entered 00/03/13 14:33:34   Page 13 of 86
13-53846-swr   Doc 2105   Filed 00/03/13   Entered 00/03/13 14:04:94   Page 12 of 25

Kozlowski (In re Bunting), No. 12-10472, 2013 WL 153309, at *17 (E.D. Mich.

Jan. 15, 2013) (quoting In re Garzoni, 35 F. App'x 179, 181 (6th Cir. 2002)).

> To guide the bankruptcy court's exercise of its discretion
> . . . the Sixth Circuit identifies five factors for the court to
> consider: (1) judicial economy; (2) trial readiness; (3) the
> resolution of the preliminary bankruptcy issues; (4) the
> creditor's chance of success on the merits; and (5) the
> cost of defense or other potential burden to the
> bankruptcy estate and the impact of the litigation on other
> creditors.

Bunting, 2013 WL 153309, at *17 (quoting Garzoni, 35 F. App'x at 181) (internal

quotation marks omitted). In determining whether cause exists, however, "the

bankruptcy court should base its decision on the hardships imposed on the parties

with an eye towards the overall goals of the Bankruptcy Code." Plastech, 382 B.R.

at 106 (quoting In re C & S Grain Co., 47 F.3d 233, 238 (7th Cir. 1995)).

Here, consideration of the these factors confirms that no cause (much less

sufficient cause) exists to justify relief from the Automatic Stay to allow the

Lawsuit to proceed. With respect to the first factor, the interests of judicial

economy weigh heavily in favor of denying the Stay Relief Motion. Numerous

parties, including three of the Plaintiffs, have raised similar eligibility issues in this

chapter 9 case that the Plaintiffs seek to litigate in the Lawsuit in front of the

District Court. As set forth above, litigating eligibility issues in two different

courts, simultaneously "does not promote judicial or party efficiency; it is the

antithesis." Opinion and Order Denying Motion to Stay Proceedings Pending

- 13 -

Determination of Motion to Withdraw the Reference at 19. [Dkt. No. 1039].

Accordingly, judicial economy dictates staying the Lawsuit so as to permit this

Court to address the PA 436 Eligibility Objections in the single, unified context of

the eligibility trial.

With respect to the second factor, the Lawsuit is in its preliminary stages.

The Defendants' motion to dismiss remains pending. No discovery has been

taken. Thus, the Lawsuit has not even advanced beyond the pleading stage and is

not trial ready. The third factor also weighs in favor of denying the Stay Relief

Motion as the Court has not even resolved the City's eligibility for relief in this

chapter 9 case. Nothing could be more basic or preliminary to the ultimate

outcome. Further, concerning the fourth factor, as set forth in the Defendants'

motion to dismiss, the Plaintiffs have not demonstrated a likelihood of success on

the merits.

Finally, the fifth factor weighs in favor of denying the Stay Relief Motion.

Although the City is not currently a party in the Lawsuit, the impact that the

Lawsuit may have on the City and its restructuring efforts may require the City to

intervene or otherwise become further involved and take other actions if the Stay

Relief Motion is granted. Requiring the City to defend the Lawsuit in the District

Court would distract the City from its efforts to restructure, diverting its limited

resources at a time when it is both working to negotiate and deliver a plan of

adjustment quickly and engaged in a substantial amount of discovery and litigation (all on its own expedited timeframe) arising in the bankruptcy case itself. The City does not need further impediments to its restructuring efforts. This Court has consistently endeavored to bring all matters which may affect the eligibility of the City before it and have the issues resolved in one forum. Allowing the Lawsuit to proceed in the District Court would cast uncertainty[3] over the eligibility and restructuring process and may chill negotiations among the parties or adversely affect the confirmation of the plan of adjustment. Further, if relief is granted here, it will likely engender further constitutional challenges by other parties in different courts.

In short, allowing the Lawsuit to proceed would undermine the protections of the Automatic Stay and interfere with the City's efforts to restructure. The City sought relief under chapter 9 in part to obtain the "breathing spell" afforded by the Automatic Stay and the consequent protection from its creditors while it restructures its affairs and prepares a plan of adjustment. The City's finances would be further depleted and its personnel distracted from their mission to operate

---

[3] This Court acknowledged that the uncertainty occasioned just by the eligibility objections already before it will likely slow, if not stall entirely, the "City's progress in recovering its financial, civic, commercial, and cultural life and in revitalizing itself." Opinion and Order Denying Motion to Stay Proceedings Pending Determination of Motion to Withdraw the Reference at 23. [Dkt. No. 1039]. Having the City's eligibility adjudicated simultaneously in two courts obviously compounds that uncertainty.

21573415.3\022765-00202

the City for the benefit of its citizens and restructure its affairs if it were denied this

basic protection of chapter 9 and forced to defend itself against the Plaintiffs so

early in the case. Accordingly, the overall goals of chapter 9 weigh largely in

favor of denying stay relief to the Plaintiffs.

### 2. The Automatic Stay Does Not Deprive the Plaintiffs of their Constitutional Rights

The Plaintiffs also argue that the Automatic Stay, as applied to the Lawsuit,

violates their Fourteenth and Fifth Amendment right to due process. This

argument misses the point. The Plaintiffs day in court is not denied but only

delayed. See Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Chicago, Rock

Island & Pac. Ry. Co., 294 U.S. 648, 680-81 (1935) (holding that delaying a

creditor from implementing a contract remedy via a stay issued under the

Bankruptcy Act did not violate the Fifth Amendment's due process requirement).

Indeed, coordinating the Plaintiffs' alleged rights with those of many others is

patently different from depriving the Plaintiffs of those same rights. In re Singer,

205 B.R. 355, 357 (Bankr. S.D.N.Y. 1997) (noting that the Second Circuit has held

that the automatic stay does not violate due process) (citation and internal

quotation marks omitted); Kagan v. St. Vincents Catholic Med. Ctrs. of N.Y. (In re

St. Vincents Catholic Med. Ctrs. of N.Y.), 449 B.R. 209, 213-14 (Bankr. S.D.N.Y.

2011) (holding that 11 U.S.C. § 362 does not offend the First, Fifth, Tenth, or

Fourteenth Amendments in stay of state FOIA claim) ("[I]f this claim had any

merit, every stay of a judicial proceeding imposed by a Bankruptcy Court would violate the substantive due process rights of the litigants in that proceeding. Clearly this is not the law.").  Indeed, the Second Circuit determined that the automatic stay helps balance parties' rights.

> The policy considerations underlying [the automatic stay] are considerable.  The automatic stay . . . is designed to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.  The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another.

Fid. Mortg. Invs. v. Camelia Builders, Inc. (In re Fid. Mortg. Invs.), 550 F.2d 47, 55 (2d Cir. 1977) (interpreting Bankruptcy Act).  Further, the Bankruptcy Code and Rules implementing the automatic stay provide a means to ensure that the stay does not deprive parties of their due process rights, including the opportunity to obtain relief from the stay in this Court if there is sufficient cause to grant relief. Id.

The Plaintiffs argument fails to account for the City's rights, and, when these are added into the equation, the balance of harms to the City against the potential harm to the Plaintiff strongly favors leaving the stay in place at this juncture.  The idea that providing the City with "breathing room" to reorganize somehow denies the Plaintiffs their Constitutional rights is simply not true.  The

- 17 -

21573415.3\022765-00202
13-53846-tjt  Doc 254-5  Filed 01/03/13  Entered 01/03/13 14:53:54  Page 18 of 86
13-53846-swr  Doc 1105  Filed 10/03/13  Entered 10/03/13 14:54:54  Page 18 of 86

Automatic Stay ensures that the Plaintiff's rights are not enforced to the detriment of both the City and its creditors.

## III.    CONCLUSION

For the reasons set forth in this Brief in Opposition, the City respectfully requests that this Court: (a) deny the Stay Relief Motion; and (b) grant such other and further relief to the City as the Court may deem proper.

Dated: October 7, 2013                Respectfully submitted,

By: /s/Stephen S. LaPlante
Jonathan S. Green (P33140)
Stephen S. LaPlante (P48063)
Timothy A. Fusco (P13768)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com
fusco@millercanfield.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939

- 18 -

Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com


ATTORNEYS FOR THE CITY OF DETROIT

21573415.3\022765-00202

EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHERINE PHILLIPS, Staff Representative
Michigan AFSCME Council 25, and Chief Negotiator
with the City of Detroit; JOSEPH VALENTI, Co-
Chief Negotiator with the Coalition of Unions of the
City of Detroit; MICHIGAN AFSCME COUNCIL
25; RUSS BELLANT, President of the Detroit
Library Commission; TAWANNA SIMPSON,
LAMAR LEMMONS, ELENA HERRADA, Detroit
Public School Board Members; DONALD
WATKINS AND KERMIT WILLIAMS, Pontiac City
Council Members; DUANE SEATS, DENNIS
KNOWLES, JUANITA HENRY AND MARY
ALICE ADAMS, Benton Harbor Commissioners;
WILLIAM "SCOTT" KINCAID, Flint City Council
President; BISHOP BERNADEL JEFFERSON;
PAUL JORDAN; REV. JIM HOLLEY, National
Board Member, Rainbow Push Coalition; REV.
CHARLES E. WILLIAMS II, Michigan Chairman,
National Action Network; REV. DR. MICHAEL A.
OWENS, REV. LAWRENCE GLASS, REV. DR.
DEEDEE COLEMAN, BISHOP ALLYSON
ABRAMS, Executive Board, Council of Baptist
Pastors of Detroit and Vicinity,

      Plaintiffs,

v

RICHARD D. SNYDER, as Governor of the State of
Michigan, and ANDREW DILLON, as the Treasurer
of the State of Michigan, acting in their individual
and/or official capacities,

      Defendants.

No. 2:13-cv-11370

HON. GEORGE CARAM STEEH

MAG. R. STEVEN WHALEN

**DEFENDANTS' MOTION TO
DISMISS UNDER FED. R. CIV. P.
12(B)(1) & (6) AND BRIEF IN
SUPPORT**

_____

Herbert A. Sanders (P43031)
The Sanders Law Firm PC
Attorney for Plaintiffs
615 Griswold Street, Suite 913
Detroit, Michigan  48226
313.962.0099
haslaw@earthlink.net

John C. Philo (P52721)
Anthony D. Paris (P71525)
Sugar Law Center
Attorneys for Plaintiffs
4605 Cass Ave., 2nd Floor
Detroit, Michigan  48201
313.993.4505
jphilo@sugarlaw.org

Julie H. Hurwitz (P34720)
William H. Goodman (P14173)
Goodman & Hurwitz PC
Attorneys for Plaintiffs
1394 East Jefferson Avenue
Detroit, Michigan  48207
313.567.6170
jhurwitz@goodmanhurwitz.com
bgoodman@goodmanhurwitz.com

Darius Charney
Ghita Schwarz
Center for Constitutional Rights
Attorneys for Plaintiffs
666 Broadway, 7th Floor
New York, New York  10012
212.614.6464
dcharney@ccrjustice.org

Betram L. Marks (P47829)
Litigation Associates PLLC
Attorney for Plaintiffs
30300 Northwestern Hwy, Ste 240
Farmington Hills, Michigan  48334
248.737.4444
bertrammarks@aol.com

Denise C. Barton (P41535)
Ann M. Sherman (P67762)
Michael F. Murphy (P29213)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434

Richard G. Mack, Jr. (P58657)
Keith D. Flynn (P74192)
Miller Cohen PLC
Attorneys for Plaintiffs
600 West Lafayette Blvd., 4th Floor
Detroit, Michigan  48226
313.964.4454
richardmack@millercohen.com

Cynthia Heenan (P53664)
Hugh M. Davis, Jr. (P12555)
Constitutional Litigation Associates PC
Attorneys for Plaintiffs
450 West Fort St, Ste 200
Detroit, Michigan  48226
313.961.2255
conlitpc@sbcglobal.net

_____/

## DEFENDANTS' MOTION TO DISMISS

Defendants Richard D. Snyder, Governor of the State of Michigan, and Andrew Dillon,

Treasurer of the State of Michigan, move to dismiss Plaintiffs' Complaint for Declaratory and

Injunctive Relief for the following reasons:

1. Plaintiffs lack standing to bring any of their claims.

2. 2012 Mich. Pub. Acts 436, Mich. Comp. Laws § 141.1541 *et seq*. (P.A. 436), does not
   violate the Due Process Clause or U.S. Const. art. IV, § 4 (Counts 1, 2, 3).

3.  P.A. 436 does not violate the Equal Protection Clause (Counts 4, 5, 6, 11).

4.  P.A. 436 does not violate Section 2 of the Voting Rights Act (Count 7).

5.  P.A. 436 does not violate First Amendment free speech and petition rights (Count 8).

6.  The City of Detroit emergency manager appointment of Kevin Orr does not violate the First Amendment right to petition (Count 9).

7.  And P.A. 436 does not violate the Thirteenth Amendment (Count 10).

8.  Defendants sought concurrence from Plaintiffs' counsel but concurrence was not given.

9.  Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed if no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Ludwig v. Bd of Trustees*, 123 F.3d 404, 408 (6th Cir. 1997).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not facially plausible. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

10. Fed. R. Civ. P. 12(b)(1) allows dismissal for lack of subject-matter jurisdiction. It is a plaintiffs' burden to prove jurisdiction.  *Moir v. Greater Cleveland Reg'l Transit Auth*, 895 F.2d 266, 269 (6th Cir. 1990).

Applying the standard of review set out in paragraphs 9 and 10 to each argument in the brief, and for the reasons stated in this motion, Plaintiffs' Complaint fails as a matter of law. Defendants respectfully request that this Court dismiss Plaintiffs' Complaint in its entirety and with prejudice.

Respectfully submitted,

BILL SCHUETTE
Attorney General

*s/Denise C. Barton*
Denise C. Barton (P41535)
Assistant Attorney General
Attorney for Defendants
Email:  bartond@michigan.gov

Dated:  May 15, 2013

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHERINE PHILLIPS, Staff Representative
Michigan AFSCME Council 25, and Chief Negotiator
with the City of Detroit; JOSEPH VALENTI, Co-
Chief Negotiator with the Coalition of Unions of the
City of Detroit; MICHIGAN AFSCME COUNCIL
25; RUSS BELLANT, President of the Detroit
Library Commission; TAWANNA SIMPSON,
LAMAR LEMMONS, ELENA HERRADA, Detroit
Public School Board Members; DONALD
WATKINS AND KERMIT WILLIAMS, Pontiac City
Council Members; DUANE SEATS, DENNIS
KNOWLES, JUANITA HENRY AND MARY
ALICE ADAMS, Benton Harbor Commissioners;
WILLIAM "SCOTT" KINCAID, Flint City Council
President; BISHOP BERNADEL JEFFERSON;
PAUL JORDAN; REV. JIM HOLLEY, National
Board Member, Rainbow Push Coalition; REV.
CHARLES E. WILLIAMS II, Michigan Chairman,
National Action Network; REV. DR. MICHAEL A.
OWENS, REV. LAWRENCE GLASS, REV. DR.
DEEDEE COLEMAN, BISHOP ALLYSON
ABRAMS, Executive Board, Council of Baptist
Pastors of Detroit and Vicinity,

No. 2:13-cv-11370

HON. GEORGE CARAM STEEH

MAG. R. STEVEN WHALEN

     Plaintiffs,

v

RICHARD D. SNYDER, as Governor of the State of
Michigan, and ANDREW DILLON, as the Treasurer
of the State of Michigan, acting in their individual
and/or official capacities,

     Defendants.

_____

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

Table of Contents ...................................................................................................ii

Index of Authorities .............................................................................................iv

Concise Statement of Issues Presented ..........................................................viii

Controlling or Most Appropriate Authority...................................................viii

Introduction ........................................................................................................... 1

Statement of Facts................................................................................................. 1

Argument................................................................................................................ 3

I.      Plaintiffs lack standing to bring any of their counts...................................... 3

        A.      Individual, Non-Elected Plaintiffs Bellant, Jefferson, Jordan, Holley, Williams, Owens, Glass, Coleman, and Abrams lack standing to bring Counts 2-8 and 10–11. ................................................................ 3

        B.      Individual, Elected Plaintiffs Simpson, Lemmons, Herrada, Watkins, Williams, Seats, Knowles, Henry, Adams, and Kincaid lack standing to bring Counts 2–8 and 10–11. .......................... 4

        C.      Individual Union Negotiator-Plaintiffs Phillips and Valenti lack standing........... 4

        D.      Council 25 lacks organizational standing to bring any claims. ........................... 5

II.     P.A. 436 does not violate the Due Process Clause or U.S. Const. art. IV, § 4 (Counts 1, 2, 3). ................................................................................... 6

        A.      No substantively protected right to collective bargaining is violated.................. 6

        B.      No procedurally protected right to collective bargaining is violated. .................. 7

        C.      No substantive due-process right to elect officials who possess general legislative power is violated............................................................. 8

        D.      U.S. Const., art. IV, § 4 is not violated........................................................... 9

III.    P.A. 436 does not violate the Equal Protection Clause (Counts 4, 5, 6, 11). ................ 10

        A.      P.A. 436 does not unconstitutionally burden Plaintiffs' fundamental right to vote...................................................................................... 10

        1.      Plaintiffs are not similarly situated to people residing in communities that do not have an emergency manager. ......................... 11

        2.      Plaintiffs have not been denied their fundamental right to vote. ............ 12

        3.      Plaintiffs' fundamental right to vote has not been diluted. .................... 13

   B.      P.A. 436 does not discriminate based on race. ................................................ 14

   C.      P.A. 436 does not discriminate based on wealth. ............................................. 16

   D.      P.A. 436 does not discriminate against local units of government with emergency managers appointed under P.A. 72 or P.A. 4. ............................... 17

IV.    P.A. 436 does not violate the Voting Rights Act (Count 7). ........................................ 19

V.     P.A. 436 does not violate the First Amendment rights of free speech and petition (Count 8). ........................................................................................................................ 20

   A.      P.A. 436 does not abridge speech or prohibit Plaintiffs from petitioning the Government. ........................................................................................................ 21

        1.      P.A. 436 gives local officials both voice and choice. ............................ 21

        2.      Plaintiffs have no constitutional right to local self-government and an emergency manager is accountable to the State's elected officials. ..................................................................................................... 22

        3.      The Petition Clause does not guarantee a particular result. ................... 24

        4.      Rejection of P.A. 4 is not an abridgement of speech or petition and P.A. 436 is not the mirror image of P.A. 4. ......................................... 25

   B.      P.A. 436 is also justified by local financial emergencies. ............................... 25

VI.    The appointment of Detroit's emergency manager does not violate the right to petition (Count 9). ............................................................................................................. 27

VII.   P.A. 436 does not violate the Thirteenth Amendment (Count 10). ............................. 28

Conclusion ........................................................................................................................... 29

# INDEX OF AUTHORITIES

Page

**Cases**

*ACLU of Ohio Found., Inc. v. Ashbrook*, 375 F.3d 484 (6th Cir. 2004) ........................................ 5

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ............................................................................... 20

*Anthony v. State of Michigan*, 35 F. Supp. 2d 989 (E.D. Mich. 1999) ....................................... 1, 6

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ........................................................................................... 4

*Avery v. Midland County,* 390 U.S. 474 (1968)............................................................................. 32

*Baker v. Carr,* 369 U.S. 186 (1962).............................................................................................. 16

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) .................................................................... 4

*Biener v. Calio*, 361 F.3d 206 (3d Cir. 2004) ............................................................................... 19

*Bivens v. Grand Rapids,* 443 Mich. 391; 505 N.W.2d 239 (1993)................................................ 13

*Buckley v. Valeo*, 424 U.S. 1 (1976) ............................................................................................. 36

*Burdick v. Takushi*, 504 U.S. 428 (1992)....................................................................................... 20

*Burson v. Freeman*, 504 U.S. 191 (1992) ...................................................................................... 36

*Bush v. Gore*, 531 U.S. 98 (2000).................................................................................................. 19

*Canfora v. Old*, 562 F.2d 363 (6th Cir. 1977) .............................................................................. 34

*Carlson v. Wiggins*, 675 F.3d 1134 (8th Cir. 2012)....................................................................... 21

*City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985)……………......…28

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................................................................... 6

*City of Memphis v. N.T. Green*, 451 U.S. 100 (1981).................................................................... 40

*Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985) ........................................................ 11

*Cornelius v. NAACP Legal Defense & Educ. Fund,* 473 U.S. 788 (1985)................................... 36

*Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011).................... 18, 27

*Doe v. Mich. Dep't of State Police*, 490 F.3d 491 (6th Cir. 2007) ............................................... 25

iv

13-53846-tjt   Doc 25475-1   Filed 10/30/13   Entered 10/30/14 18:33:49   Page 28 of 96
13-53846-swr   Doc 1105-1   Filed 10/07/13   Entered 10/07/13 18:54:59   Page 8 of 46

*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993) ............................................................. 17, 25

*Frisby v. Schultz,* 487 U.S. 474 (1988) ................................................................. 36

*Gomillion v. Lightfoot,* 364 U.S. 339 (1960) ................................................................. 32

*Graham v. Connor,* 490 U.S. 386 (1989) ................................................................. 15

*Hadley v. Jr. College Dist. Of Metro. Kansas City, Mo.,* 397 U.S. 50 (1970) ............................. 15

*Harper v. Va. State Bd. of Elections*, 383 U.S. 663 (1966) ......................................... 19

*Holt v. City of Tuscaloosa*, 439 U.S. 60 (1978) ......................................................... 31, 32, 33

*Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934) ................................. 37

*Hunter v. City of Pittsburgh,* 207 U.S. 161 (1907) ............................................. 15, 20, 31, 32

*Johnson v. Harron*, 1995 WL 319943 at 6 (N.D.NY., May 23, 1995) ......................... 39

*Jonson v. Bredesen*, 624 F.3d 742 (6th Cir. 2010) ......................................................... 25

*Kallstrom v. City of Columbus,* 136 F.3d 1055 (6th Cir.1998) ........................................... 10

*Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454 (1989) ................................. 13

*Konigsberg v State Bar of California*, 366 U.S. 36 (1961) ............................................. 30

*Kramer v. Union Free School Dist. No. 15,* 395 U.S. 621 (1969) ................................. 32

*League of Women Voters v. Brunner*, 548 F.3d 463 (6th Cir. 2008) ............................. 19

*Ludwig v. Bd of Trustees*, 123 F.3d 404 (6th Cir. 1997) ................................................. 4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................. 5, 7

*Mack v. City of Detroit,* 467 Mich. 186; 649 N.W.2d 47(2002) ................................. 1, 13

*Mallory v. Ohio,* 173 F.3d 377 (6th Cir. 1999) ......................................................... 1, 13

*McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802 (1969) ................................. 19

*Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271 (1984) ............. 35

*Miyazawa v. City of Cincinnati*, 45 F.3d 126 (6th Cir. 1995) ................................. 6

*Moir v. Greater Cleveland Reg'l Transit Auth*, 895 F.2d 266 (6th Cir. 1990) ............. 4

*Moore v. Detroit School Reform Board*, 293 F.3d 352 (6th Cir. 2002) ......................... 23

*Morgan v. Rhodes,* 456 F.2d 608, 618-620 (6th Cir. 1972).......................................................... 23

*Palko v. Connecticut,* 302 U.S. 319 (1937) ................................................................................... 10

*Papasan v. Allain*, 478 U.S. 265 (1986) ........................................................................................ 25

*Parate v. Isibor,* 868 F.2d 821 (6th Cir. 1989) ............................................................................. 11

*Perry v. McGinnis*, 209 F.3d 597 (6th Cir. 2000)......................................................................... 18

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291 (6th Cir. 2005)............................................. 17

*Reynolds v. Sims,* 377 U.S. 533 (1964).......................................................................... 14, 21, 32, 35

*Rodriguez v. Popular Democratic Party,* 457 U.S. 1 (1982)........................................................ 14

*Roth v. Bd. of Regents,* 408 U.S. 564, 572 (1978) ....................................................................... 12

*Sailors v. Bd. of Ed. of Kent County,* 387 U.S. 105 (1967) .................................................... 15, 31

*San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1 (1973)...................................... 14

*Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463 (1979) ....................... 34

*Swekel v. City of River Rouge*, 119 F.3d 1259 (6th Cir. 1997)..................................................... 36

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) ................................................................... 30

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997) .................................................... 36

*TriHealth, Inc. v. Board of Com'rs, Hamilton County, Ohio*, 430 F.3d 783 (6th Cir. 2005)16, 18, 22, 24

*United States v. Harriss,* 347 U.S. 612 (1954) ............................................................................. 36

*Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977)................ 17, 18

*Ward v. Rock Against Racism,* 491 U.S. 781 (1989) .................................................................... 37

*Washington v. Glucksberg,* 521 U.S. 702 (1997) .................................................................. *passim*

**Statutes**

42 U.S.C. § 1973.................................................................................................................... 1, 28

42 U.S.C. § 1983 ........................................................................................................................ 1

Mich. Comp Laws § 141.1557.................................................................................................. 33

Mich. Comp. Laws § 141.1562................................................................................................. 33

Mich. Comp. Laws § 117.1 ........................................................................................... 12

Mich. Comp. Laws § 141.1201 ...................................................................................... 2

Mich. Comp. Laws § 141.1547 .............................................................................. 3, 31

Mich. Comp. Laws § 141.1549 .................................................................. 3, 4, 20, 31

Mich. Comp. Laws § 141.1552 .......................................................................... 3, 12, 39

Mich. Comp. Laws § 423.215 ......................................................................... 12, 13

Mich. Comp. Laws §141.1549 ........................................................................... 26, 28

Public Act 4 ................................................................................................. 2, 30, 39

Public Act 72 ...................................................................................................... 2

Public Act 436 .......................................................................................... *passim*

**CONCISE STATEMENT OF ISSUES PRESENTED**

1.    Should all counts be dismissed under 12(b)(1) because Plaintiffs lack standing?

2.    Should the entire Complaint be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiffs have failed to state a claim for which relief may be granted under any asserted cause of action?

**CONTROLLING OR MOST APPROPRIATE AUTHORITY**

<u>Authority</u>:

*ACLU of Ohio Found., Inc., v. Ashbrook*
*Canfora v. Old*
*City of Cleburne v. Cleburne Living Center, Inc.*
*Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*
*FCC v. Beach Commc'ns, Inc.*
*Holt v. City of Tuscaloosa*
*Home Building & Loan Ass'n v. Blaisdell*
*Hunter v. City of Pittsburgh*
*Johnson v. Harron*
*Jonson v. Bredesen*
*Kallstrom v. City of Columbus*
*Lujan v. Defenders of Wildlife*
*McDonald v. Bd of Election Comm'rs*
*Minnesota State Bd. For Community Colleges v. Knight*
*Moore v. Detroit School Reform Board*
*Morgan v. Rhodes*
*Roth v. Bd. of Regents*
*Rodriguez v. Popular Democratic Party*
*Smith v. Arkansas State Highway Employees, Local 1315*
*TriHealth, Inc. v. Board of Comm'rs, Hamilton County, Ohio*
*Village of Arlington Heights v. Metro. Housing Dev. Corp.*
*Washington v. Glucksberg*

**INTRODUCTION**

The concept of an emergency manager is not new to Michigan.  Indeed, both major political parties have used such managers to solve local economic difficulties for over 20 years.  But in an economic environment where a disturbingly high number of local governments and school districts are teetering on the brink of financial catastrophe, more flexibility and new tools were required.  The Michigan Legislature responded with 2012 Public Act 436 (P.A. 436), which replaces Michigan's previous emergency-manager law, P.A. 72.

Having lost the political battle to stop P.A. 436 on the steps of the Lansing Capitol, Plaintiffs filed this lawsuit, an action that contains no cognizable legal claims or alternative solutions to the financial problems that have plagued many communities.  Because Plaintiffs' proper remedy is the political process, not the courts, the Complaint should be dismissed in its entirety.

**STATEMENT OF FACTS**

**Nature of the Case**

Plaintiffs bring this action under 42 U.S.C. § 1983, alleging that P.A. 436 violates the U.S. Const. art. IV, § 4 (Republican Form of Government); the First Amendment (freedom of speech and the right to petition government); the Thirteenth Amendment (vestiges of slavery); the Fourteenth Amendment (due process and equal protection); and the Voting Rights Act, 42 U.S.C. § 1973, *et seq*.  (R. 1, Compl., ID# 2.)  Where specific factual allegations are necessary for deciding this motion, those facts have been taken from the Complaint.  Although Plaintiffs allege both facial and as-applied challenges, they make no specific applications of P.A. 436 to any factual occurrence in any paragraph of the Complaint. (Id. at, ¶¶ 122, 128, 138, 139, 151, 152, 167, 168, 182, 183, 194, 195, 206, 207, 208, 220, 229, 230 and 243, ID## 25-28, 30-31, 33-

34, 36-37, 39-40, 42, 44, 46-47, 49.)  Thus, this is only a facial challenge to the constitutionality of the Act.  And their allegations focus exclusively on the Act's emergency-manager component.

**Michigan's Emergency Financial Manager Acts**

The Legislature enacted P.A. 436 in December 2012, effective March 28, 2013.  P.A. 436 followed the period of time from August 6, 2012 to March 28, 2013, when the State and its political subdivisions operated under 1990 Mich. Pub. Acts 72 (P.A. 72), Mich. Comp. Laws § 141.1201, *et seq*. which, for purposes of this brief, will be referred to as the original act allowing the appointment of emergency managers.  P.A. 72 was the operative statute because of the referendum and rejection of the earlier fiscal responsibility legislation, 2011 Mich. Pub. Acts 4 (P.A. 4).[1]  Under P.A. 72, emergency managers had fewer powers than they previously possessed under P.A. 4, which contained more tools and authority to rectify financial emergencies in distressed local communities and school districts.

In December 2012, the Legislature passed P.A. 436—*not* to reenact P.A. 4, previously rejected by voters but to replace P.A. 72, which was in effect at the time.  The Legislature reasonably determined that local fiscal stability is necessary for the State's health, welfare, and safety, and thus, P.A. 436 was necessary to protect those interests as well as the credit ratings of the State and its political subdivisions.  Mich. Comp. Laws § 141.1543.

**Key Features of P.A. 436**

Unlike earlier laws, P.A. 436 includes two key features:  expanded local government options—chosen by the local government—to address the financial emergency; a time limit for a financial manager's appointment; and, authority to petition for removal of a financial manager.  Mich. Comp. Laws §§ 141.1547, 1549(2), 1549(11).  The statute also builds in checks on an

---

[1] See OAG, 2011-2012, No 7267, p 6 (August 6, 2012), available at
http://www.ag.state.mi.us/opinion/datafiles/2010s/op10346.htm.

emergency manager's authority.  See, e.g., Mich. Comp. Laws §§ 141.1552(1)(k) & (u)
(collective bargaining agreements and borrowing money), 1552(4) (selling or transferring public
utilities), 1555(1) (selling of assets), 1559(1) (proposed contracts, sales, and leases).

## ARGUMENT

## I.      Plaintiffs lack standing to bring any of their counts.

This Court should dismiss all counts of Plaintiffs' Complaint for lack of standing.  To
invoke the subject matter jurisdiction of an Article III federal court, individual plaintiffs must
establish, among other things, an injury-in-fact that is concrete and particularized, not conjectural
or hypothetical.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Because
injunctive and declaratory relief is sought, these Plaintiffs also have the heightened burden of
showing a substantial likelihood they will be injured in the future.  *City of Los Angeles,v. Lyons*,
461 U.S. 95, 105 (1983).  The Organizational Plaintiffs have standing only if (a) their members
otherwise have standing to sue in their own right; (b) the interests to be protected are germane to
the organization's purpose; and (c) neither the claim asserted nor the relief requested requires
participation of individual members in the lawsuit.  *ACLU of Ohio Found., Inc. v. Ashbrook*, 375
F.3d 484, 489 (6th Cir. 2004).  None of these requirements are met here.

### A.      Individual, Non-Elected Plaintiffs Bellant, Jefferson, Jordan, Holley, Williams, Owens, Glass, Coleman, and Abrams lack standing to bring Counts 2-8 and 10–11.

This group of Plaintiffs are residents of localities with emergency managers.  (R. 1,
Compl., at ¶10, ¶¶ 21-28, ID## 5, 6-7.)  Yet, they do not allege that Defendants' actions have
injured them in a manner distinguishable from the harm incurred by any resident of any locality
with an emergency manager.

Rather, these Plaintiffs raise only general grievances regarding Defendants' policy
choices related to fiscally distressed local governments.  Their claims are strikingly similar to

3

those considered and rejected by the Supreme Court, the Sixth Circuit, and this Court for lack of standing. *See, e.g.*, *City of Los Angeles*, 461 U.S. at 111 (resident challenging police department's chokehold policy was "no more entitled to an injunction than any other citizen"); *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 126-28 (6th Cir. 1995) (resident challenging city charter amendment suffers "no harm, nor will she suffer any greater harm than that of any other voter in the City of Cincinnati"); *Anthony v. State of Michigan*, 35 F. Supp. 2d 989, 1003 (E.D. Mich. 1999) (Detroit citizens challenging consolidation of Detroit Recorder's Court did not "articulate how they [were] *particularly* harmed as a result of the merger").

### B.   Individual, Elected Plaintiffs Simpson, Lemmons, Herrada, Watkins, Williams, Seats, Knowles, Henry, Adams, and Kincaid lack standing to bring Counts 2–8 and 10–11.

This group of Plaintiffs lack standing in the same manner as the Plaintiffs discussed in Section A. They have met neither the irreducible constitutional requirement of a concrete and particularized injury nor the applicable, heightened standard requiring a substantial likelihood that they will be the unique target of future harm. See *Lujan*, 504 U.S. at 560-61; *City of Los Angeles,* 461 U.S. at 105. Their identification as public officials for units of local government who are subject to P.A. 436 gives them no special status and certainly no greater claim to standing than any of the other named Plaintiffs in Section A. (R. 1, ¶ 11-20, I.D. ## 5, 6.) To the extent they may purport to bring this action in their official capacities as members of various local boards, commissions or councils, there is no indication in the Complaint that these local governmental bodies have authorized any of them to act for or on their behalf.

### C.   Individual Union Negotiator-Plaintiffs Phillips and Valenti lack standing.

For the same reasons, Plaintiffs Phillips and Valenti lack standing to assert Counts 1–11. While they purportedly belong to the Plaintiffs' labor organization, Plaintiff Michigan AFSCME Council 25 (Council 25), neither mere union affiliation nor the factual allegations in Plaintiffs'

4

Complaint suggests that Phillips and Valenti have sustained any particularized injury vis-à-vis other residents of localities with emergency managers or union members whose collective bargaining agreements or bargaining "rights" have been impacted.

Indeed, the facts related to the Count I allegations were the basis for an earlier action by Valenti and Council 25 against the City of Detroit, Governor Snyder and Treasurer Dillon. See, *Valenti, et. al. v. Snyder, et. al.*, USDC-ED No. 12-11461, R. 6, Amended Complaint. The coalition of unions, for which Valenti was a negotiator and which included Council 25, had negotiated tentative employee concessions with the City of Detroit. But these terms were never ratified by the City Council and never became effective. Detroit Charter, §6.408. The City's duty to collectively bargain was suspended effective April 4, 2012 with the approval of a consent agreement—the Financial Security Agreement—negotiated with the State under P.A. 4. Thus, the allegations here do not establish any particularized injury to Phillips or Valenti.

Further, with respect to Count 9, the right to petition government, is personal and does not extend to petitioning activity on behalf of others. C.J.S CONST. LAW § 975 (citing Const. Amend. 1 and *In re Foster*, 253 P.3d 1244 (Colo. 2011); *see also* C.J.S CONST. LAW § 973, citing *Hague v. Committee for Indus. Organization*, 307 U.S. 496 (1939). Phillip's and Valenti's positions as union negotiators do not provide standing on this claim either.

**D.     Council 25 lacks organizational standing to bring any claims.**

Council 25 also lacks standing to bring Counts 1 – 11. None of its members have standing to sue for the alleged violations in their own right, as discussed above. *Ashbrook*, 375 F.3d at 489. And like Phillips and Valenti, Council 25 lacks standing to bring Count 9 in a representative capacity.

In sum, Plaintiffs collectively lack standing to bring Counts 1 - 11. Accordingly, this Court should dismiss these Counts with prejudice under Fed. R. Civ. P. 12(b)(1).

5

## II.   P.A. 436 does not violate the Due Process Clause or U.S. Const. art. IV, § 4 (Counts 1, 2, 3).

### A.   No substantively protected right to collective bargaining is violated.

To properly analyze Plaintiffs' substantive due-process claim based on collective bargaining, this Court is required to carefully identify the fundamental right or liberty interest allegedly implicated. The substantive component of the Due Process Clause protects fundamental rights and liberty interests that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." *Palko v. Connecticut,* 302 U.S. 319, 326 (1937). Only when a state law infringes these fundamental rights and interests is it subject to strict scrutiny. *Washington v. Glucksberg,* 521 U.S. 702, 721 (1997).

Those fundamental rights and interests accorded substantive protection under the Due Process Clause include matters related to marriage, family, procreation, bodily integrity, and directly related privacy interests. *Id.* at 720; *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1062 (6th Cir. 1998). The Supreme Court is reluctant to expand the concept of substantive due-process further "because guideposts for responsible decision making in this unchartered area are scarce and open-ended." *Glucksberg,* 521 U.S. at 720 (quotation marks and citation omitted).

Here, Plaintiffs' claim is not based on a right found within the Bill of Rights or identified by the Supreme Court as "implicit in the concept of ordered liberty" or among those narrowly drawn "liberty" and privacy interests accorded substantive protection. *Id.* at 721. It is premised on an alleged "property interest in their employment, in the terms of employment negotiated pursuant to contract, and in rights granted under state law. . . ." (R. 1, Compl., ¶ 109, ID# 23.) And while state law property interests may give rise to a procedurally protected interest, they do not create a *substantively* protected fundamental right or interest. *Glucksberg,* 521 U.S. at 720.

6

Their substantive claim fails because their alleged substantively protected liberty interest in employment relates only to a generalized right to choose one's field of private employment—"the right of the individual . . . to engage in any of the common occupations of life"—not an expansive right of public employment or to collectively bargain for employment terms.  *Roth v. Bd. of Regents,* 408 U.S. 564, 572 (1978); *Parate v. Isibor,* 868 F.2d 821, 831 (6th Cir. 1989).

Plaintiffs fail to allege any plausible substantive due-process right, any facts indicating Defendants interfered with a substantively protected interest, or that P.A. 436 facially violates substantive due process.  This claim fails as a matter of law and fact and should be dismissed.

### B.      No procedurally protected right to collective bargaining is violated.

Analysis of Plaintiffs' procedural due-process claim involves a dual inquiry:  (1) whether a liberty or property interest exists that the State has interfered with; and (2) whether the procedures attendant upon the deprivation were constitutionally sufficient—that is, provided at a meaningful time and in a meaningful manner.  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 (1985); *Matthew v. Eldridge,* 424 U.S. 319, 333, 349 (1976).

But no protected right or interest invoking procedural due process protection is at issue. Plaintiffs' procedural due-process claim is premised on an alleged "property interest in the terms of employment negotiated pursuant to contract, and in rights granted under state law."  Plaintiffs rely on Michigan's Public Employment Relations Act (PERA) as creating this right.  Mich. Comp Laws § 423.215(1).  (R.1, Compl., ¶ 111, ID# 23).  PERA provides, "A public employer shall bargain collectively with the representatives of its employees" and "may make and enter into collective bargaining agreements . . . ."  *Id.*  Yet, the Legislature has also imposed limitations on this duty to collectively bargain.  Mich. Comp. Laws § 141.1567(3).  See also P.A. 436 Enacting Clause 2; Mich. Comp. Laws §§  423.215(8), 215(9).

7

The Michigan Legislature has the authority to define and modify the powers, duties and obligations of its local governments, which are derived from the State in the first instance. Mich. Const. 1963, art. VII, §§ 1-34; *Mack v. City of Detroit,* 467 Mich. 186, 194; 649 N.W.2d 47(2002); Michigan's Home Rule City Act reiterates this principle—all local charters, resolutions and ordinances are subject to and shall not conflict with or contravene the State's Constitution or laws. Mich. Comp. Laws. § 117.36.

State law confers a procedurally protected benefit, such as the claimed property interest here, only when it mandates specific action in a manner that constrains bureaucratic discretion. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 463 (1989). Here, no such limitations exist. First, while a public employer "shall bargain collectively," it retains discretion: "*may* make and enter into collective bargaining agreements." Mich. Comp. Laws § 423.215(1) (emphasis added). Second, PERA does not confer a "right to bargain" that infringes the exercise of power under P.A. 436. Finally, both PERA and P.A. 436 suspend the duty to collectively bargain when the local government is in receivership. Thus, there is no protected property interest to bargain the terms of public employment and no procedural due process violation.

### C.   No substantive due-process right to elect officials who possess general legislative power is violated.

The "right to vote" is not expressly enumerated in the federal constitution. *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 35, n. 78 (1973). Rather, the right to vote is an implicit "fundamental political right" that is "preservative of all rights." *Reynolds v. Sims,* 377 U.S. 533, 562 (1964). *Yet,* the Supreme Court has repeatedly recognized that the Fourteenth Amendment does not protect this generalized "right to vote" but instead protects a citizen's right to participate in elections on equal footing with other citizens in the jurisdiction. *Rodriguez v.*

8

*Popular Democratic Party,* 457 U.S. 1, 9-10 (1982); *San Antonio,* 411 U.S. at 35.  This right to equal participation is protected by the Equal Protection Clause.  *Rodriguez,* 457 U.S. at 9-10.

In this context, it is perhaps easiest to understand Plaintiffs' substantive due-process claim by first determining what it is *not* about.  (R. 1, Compl., ¶¶ 127, 128, ID## 25, 26.) Plaintiffs do not claim a denial or impairment of their right to vote.  Nor do they claim their vote is not being counted.  Rather, their claim is premised on an undefined, unrecognized right to have the elected official continue to carry out the duties of office—here, legislative powers.  No federal court has ever recognized such a right.  *Rodriquez,* 457 U.S. at 9-10.

Dismissal of this claim is consistent with Supreme Court precedent expressing a reluctance to expand the concept of substantive due process, *Glucksberg,* 521 U.S at 720, and determining that where a more explicit textual context than the generalized Due Process Clause exists within the federal constitution, it must guide the constitutional analysis.  *Graham v. Connor,* 490 U.S. 386, 394-395 (1989).  That Court has determined that the appropriate context is the Equal Protection Clause as applied to the right of equal participation in the voting process.

### D.     U.S. Const., art. IV, § 4 is not violated.

The United States Constitution guarantees that "every State in this Union a Republican form of government."  U.S. Const., art. IV, § 4.  Generally, this guarantee does not extend to local units of government.  Political subdivisions of a State have never "been considered as sovereign entities."  Rather, they are "traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions."  *Sailors v. Bd. of Ed. of Kent County,* 387 U.S. 105, 107-108 (1967) (quoting *Hunter v. City of Pittsburgh,* 207 U.S. 161, 178 (1907)).  Any recognition of a specific form of local government ignores the nature of this traditional relationship.  While the Supreme Court has clarified that a state cannot manipulate its political subdivisions to defeat a federally

9

protected right, the consistent theme of these court decisions is not the form of local government but protection of the "right to vote" against "dilution or debasement." *Sailors*, 387 U.S. at 108; *Hadley v. Jr. College Dist. of Metro. Kansas City, Mo.,* 397 U.S. 50, 54-55 (1970). Significantly, federal courts do not meddle in how States structure their local political subunits. Such political questions and a State's authority to define and regulate its relationship with subordinate political units are generally not justiciable. *Baker v. Carr,* 369 U.S. 186, 208-226 (1962); *Morgan v. Rhodes,* 456 F.2d 608, 618-620 (6th Cir. 1972).

In the absence of any infringement on the Plaintiffs' equal participation in the voting process, Michigan's choice to address the significant issues arising from a local government's financial distress and their temporary impact on the structure of that government do not violate any protected federal right within this Court's purview. This claim fails as a matter of law.

## III.   P.A. 436 does not violate the Equal Protection Clause (Counts 4, 5, 6, 11).

Counts 4, 5, 6, and 11 assert that P.A. 436 violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. These claims lack merit.

### A.   P.A. 436 does not unconstitutionally burden Plaintiffs' fundamental right to vote.

The Equal Protection Clause states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

Plaintiffs assert that P.A. 436 violates their fundamental right to vote protected by the Equal Protection Clause in two ways. First, they argue the Act "effectively revoke[s] the right to vote by stripping governing authority from local elected officials and transferring such authority

10

to one unelected emergency manager with no accountability to local citizens." (R. 1, Compl.,¶ 148, ID# 29.) Second, they argue the Act "impermissibly dilutes citizen's right to vote in local elections where emergency managers have been appointed" because the emergency managers become vested with all governing authority, leaving local elected officials with only conditional powers and "the entire state electorate participates in the selection of the local government in the affected municipalities and school districts, while in all other localities across the state, local residents alone directly vote for their elected officials." (*Id.* at *¶¶* 149-150, ID# 29.)

### 1. Plaintiffs are not similarly situated to people residing in communities that do not have an emergency manager.

As a threshold matter, Plaintiffs must demonstrate they are similarly situated to the persons allegedly receiving more favorable treatment "in all material respects." *Ctr. for Bio– Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quotation marks omitted); *TriHealth, Inc. v. Board of Com'rs, Hamilton County, Ohio*, 430 F.3d 783, 790-791 (6th Cir. 2005). "Disparate treatment of persons is reasonably justified if they are dissimilar in some material respect." *Id*. In determining whether individuals are "similarly situated," a court should "not demand exact correlation, but should instead seek relevant similarity." *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (citation omitted).

Here, Plaintiffs, who are residents of local units of government under the administration of an emergency manager (Detroit, Detroit Public School District, Benton Harbor, Pontiac, and Flint), allege they are being disparately treated as compared to residents of local units of government with no emergency manager. That is not true. Each of these named local units, whether under P.A. 72 or P.A. 4, underwent a rigorous review of their financial condition, as assessed against set criteria, and were determined to be in a financial emergency by the Governor

or other executive official. The serious financial problems facing these local units of government cannot be overstated and are laid bare within each letter confirming the financial emergencies.

Plaintiffs are not similarly situated to residents of local units of government that have not been declared to be in a financial emergency. The significant financial condition of their local unit of government is the whole reason an emergency manager was appointed. Thus, comparisons to residents of local units of government in better financial condition do not advance Plaintiffs' claims. Nor do Plaintiffs identify any specific local units of government whose financial conditions are the same as or are sufficiently similar to Plaintiffs' communities that were not placed under the administration of an emergency manager after financial review. As a result, Plaintiffs have failed to make the threshold "similarly situated" showing and their equal-protection claims necessarily fail. *TriHealth, Inc*, 430 F.3d at 790.

### 2. Plaintiffs have not been denied their fundamental right to vote.

The right to vote is a "fundamental" political right. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966), and the Equal Protection Clause applies when a state either classifies voters in disparate ways, or places restrictions on the right to vote. *League of Women Voters v. Brunner*, 548 F.3d 463, 477–78 (6th Cir. 2008) (citing *Bush v. Gore*, 531 U.S. 98, 104 (2000)). The specific character of the state's action and the nature of the burden on voters will determine the applicable equal-protection standard. See *Biener v. Calio*, 361 F.3d 206, 214 (3d Cir. 2004) ("The scrutiny test depends on the [regulation's] effect on [the plaintiff's] rights.").

If a plaintiff asserts only that a state treated the plaintiff differently than similarly situated voters, without a reciprocal burden on the fundamental right to vote, the rational basis standard of review should apply. *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807-09 (1969) (applying rational basis to a state statute prohibiting plaintiffs' access to absentee ballots where no right-to-vote burden was shown); *Biener*, 361 F.3d at 214-15 (applying rational basis absent a

12

showing of an "infringement on the fundamental right to vote"). But when a State's classification "severely" burdens the right to vote, strict scrutiny is appropriate. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Where the burden is somewhere in the middle, courts apply the "flexible standard" outlined in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick*. See *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 238 (6th Cir. 2011) (applying the balancing test in an equal-protection challenge to the counting of provisional ballots).

Here, there is no suspect class and P.A. 436 does not burden Plaintiffs' right to vote. Residents in local units of government under an emergency manager's administration retain all their rights to exercise the franchise and vote for the candidates of their choice, including candidates for local government, and to have those votes counted. While P.A. 436 may temporarily prohibit a local unit's chief executive officer and governing body from exercising the powers of those offices during the receivership, Mich. Comp. Laws § 141.1549(2), it does not preclude residents from voting candidates into these offices, or the candidates from continuing to hold those offices during the receivership.

Plaintiffs' complaint really is that the officials they have already elected into office are prohibited (at least temporarily) from exercising some or all of the powers and duties they were elected to do—in other words, that their candidates can no longer be effective. But this is not a recognized violation of the right to vote.

### 3. Plaintiffs' fundamental right to vote has not been diluted.

Plaintiffs' claim of vote dilution is that the appointment of an emergency manager in and of itself dilutes Plaintiffs' right to vote, and/or that the appointment of an emergency manager for a particular local unit of government by the Governor, who is elected by voters statewide, dilutes the right to vote of the local residents: "The vote of citizens for their local government in

13

affected localities is grossly diluted by the statewide participation of the electorate." (R. 1, Compl., ¶ 150, ID# 30.) These arguments are likewise without merit.

"[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds*, 377 U.S. at 555. A vote-dilution claim invokes the principle of "one person, one vote," a requirement under the Fourteenth Amendment. See 16B CJS, Constitutional Law, § 1264 (explaining that each person's vote must count the same as any other person's); *see also Carlson v. Wiggins*, 675 F.3d 1134, 1139 (8th Cir. 2012).

P.A. 436 does not violate this requirement. As explained above, residents in local units of government under the administration of an emergency manager retain the same rights to vote for and elect candidates of their choosing, and their votes count the same as residents in other local units of government voting for their local officials. Again, Plaintiffs' real complaint is that their elected candidates will, on a temporary basis, no longer be effective or as effective in their offices. But this "injury," if it exists, does not stem from any recognized violation of the fundamental right to vote or the "one person, one vote" principle.

## B.   P.A. 436 does not discriminate based on race.

In Count 5, Plaintiffs vaguely assert that P.A. 436 discriminates based on race. They observe that the Equal Protection Clause "protects [sic] laws and the application of laws that invidiously discriminate between similarly situated individuals or between groups of persons in the exercise of fundamental rights." (R. 1, Compl., ¶ 161. ID# 32.) They then assert that voting in local elections is a fundamental right and that P.A. 436's provisions "effectively revoke the right to vote." *Id.,* ¶ 162, ID# 32. In paragraphs 168 and 169, Plaintiffs allege that P.A. 436 "discriminate[s] in the appointment of an EM and revocation of the community's right to vote for local officials based on the racial composition of that community" and that Defendants have

14

caused injury by exercising authority under the Act in "various municipalities comprising more than 53% of the State's [African American] population."

Initially, as noted above, Plaintiffs have failed to allege or show that they have been disparately treated compared to citizens of a different race in communities that are similarly situated financially to Plaintiffs' communities. *TriHealth, Inc.*, 430 F.3d at 790. Thus, this race-based equal-protection claim fails.

In addition, P.A. 436 does not embody a racial classification. Neither does it say or imply that voters are to be treated differently on account of their race. The purpose of the Act— resolving financial emergencies within local units of government—encompasses any local unit of government in financial distress, regardless of the racial makeup of its population. As a result, P.A. 436 is facially neutral.

"Where facially neutral legislation is challenged on the grounds that it discriminates on the basis of race, the enactment will be [analyzed under] strict scrutiny only if the plaintiff can prove that it 'was motivated by a racial purpose or object,' or 'is unexplainable on grounds other than race.'" *Moore v. Detroit School Reform Bd*, 293 F.3d 352, 369 (6th Cir. 2002) (internal quotation marks and citations omitted). So "[p]roving that a law has a racially disparate impact, without more, is [] insufficient to establish a violation of either the Fourteenth or the Fifteenth Amendment." *Id*. at 369, citing *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264–65 (1977) (rejecting disproportionate impact as constitutionally infirm).

The Supreme Court has identified five factors relevant to determining whether facially neutral state action was motivated by a racially discriminatory purpose: (1) the impact on particular racial groups, (2) the historical background of the challenged decision, especially if it reveals numerous actions being taken for discriminatory purposes, (3) the sequence of events that

preceded the action, (4) procedural or substantive departures from the government's normal procedural process, and (5) the legislative or administrative history. *Village of Arlington Heights*, 429 U.S. at 266–68; see also *Moore,* 293 F.3d at 369-370 (addressing these factors in a challenge against Michigan School Reform Act and finding no equal protection violation). To the extent Plaintiffs' allegations even plead these factors, none of the allegations reveal a racially discriminatory purpose on the part of the Michigan Legislature or the Governor in enacting and signing P.A. 436. As a result, Plaintiffs fail to state a claim under a racial discrimination theory.

**C.     P.A. 436 does not discriminate based on wealth.**

In Count 6, Plaintiffs allege that P.A. 436 violates equal-protection principles by discriminating based on wealth. They assert that "[u]nder Public Act 436, all stated criteria for appointing an EM are based on a community's wealth and by extension, the wealth of the persons who reside within a community." (R. 1, Compl., ¶ 181, ID#36.) They further allege that P.A. 436 has been implemented "in various municipalities with disproportionately high poverty rates." (*Id*., ¶ 184, ID# 37.) Plaintiffs thus conclude that P.A. 436 violates equal protection "through provisions of the statute that unduly revoke citizen's right to vote for local officials based on the wealth of their community and themselves . . . ." (*Id*., ¶ 183, ID# 37.)

Once again, these claims fail because Plaintiffs have failed to allege or show they have been disparately treated compared to communities or residents that are similarly situated with respect to wealth (or poverty). *TriHealth, Inc.*, 430 F.3d at 790. And P.A. 436 does not discriminate against local units of government, let alone their residents, based on wealth (or poverty). It is the overall financial condition and prognosis of a local unit of government that will subject it to review and the possible appointment of an emergency manager under P.A. 436, not its wealth or lack thereof. For example, a "wealthy" community whose financial books are in order would not be subject to review under P.A. 436, but neither would a "poor" community

16

whose books are also in good order.  P.A. 436 is directed at rectifying financial mismanagement, which can occur in local units of government of any size and any degree of wealth.

In any event, P.A. 436 does not unconstitutionally burden the right to vote.  Thus, no fundamental right is at issue.  Moreover, wealth-based classifications do not discriminate against a suspect class.  *Jonson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) (citing *Papasan v. Allain*, 478 U.S. 265, 283-84 (1986)).  So P.A. 436 is subject to rational basis review, if any review applies at all.  *Bredesen*, 624 F.3d at 746.  To survive rational basis scrutiny, P.A. 436 need only be "rationally related to legitimate government interests[,]" *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007) (internal quotation marks and citation omitted), and "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).  "When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes."  *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985) (internal citation omitted).

Michigan has a legitimate government interest in preventing or rectifying the insolvency of its political subdivisions.  The insolvency of a local unit of government threatens the health, safety, and welfare of its residents.  Mich. Comp. Laws §141.1543.  It also threatens the interests of the citizens of this State as a whole because it is detrimental to the State's overall economic condition and credit rating.  *Id.*   P.A. 436 thus survives rational basis review.

### D.    P.A. 436 does not discriminate against local units of government with emergency managers appointed under P.A. 72 or P.A. 4.

In Count 11, Plaintiffs assert that P.A. 436 "discriminates against cities and school districts where EFMs and EM[s] have been and are currently in place," because those

17

communities will not benefit from a provision in P.A. 436 that permits local units of government to vote to remove emergency managers after 18 months. (R. 1, Compl., ¶¶ 240-242, ID## 48.) "The law discriminates against these municipalities requiring them to suffer an additional 18 months with an EM despite their having had such officials in place much longer than this time period." (*Id.*, ¶ 242, ID# 48.)

The provision Plaintiffs refer to is Mich. Comp. Laws §141.1549(6)(c), which allows the emergency manager, by resolution, to be removed by a 2/3 vote of the governing body of the local government, and if the local unit has a strong mayor, with strong mayoral approval. Neither P.A. 72 nor P.A. 4 had such a provision. But P.A. 436, Mich. Comp. Laws §141.1549(10), provides that appointed emergency managers "shall be considered an emergency manager under this act [P.A. 436] and shall continue under this act to fulfill his or her powers and duties." Thus, beginning March 28, 2013, P.A. 436's effective date, all local units of government currently under the administration of an emergency manager are eligible to use this provision at the expiration of 18 months.

Plaintiffs argue that because their affected local units of government have already been under the administration of an emergency manager longer than 18 months, it is discriminatory to make these communities wait the additional 18 months to take advantage of this section. But again, as stated above, to prove an equal-protection claim Plaintiffs must demonstrate that they are being treated disparately as compared to similarly situated persons. *Ctr. for Bio–Ethical Reform, Inc.*, 648 F.3d at 379. Plaintiffs have not alleged or shown that they are similarly situated to persons in local units of government with emergency managers newly appointed under the P.A. 436 process. Moreover, there is no fundamental right involved, and Plaintiffs do

not allege discrimination against a suspect class.  Again, the rational-basis standard applies to any review of this particular provision of P.A. 436.  *Bredesen*, 624 F.3d at 746.

The rational-basis standard is met.  The Legislature had a legitimate government interest in both setting a potential 18-month endpoint to a local unit of government's administration by an emergency manager and in not making this option immediately available to communities who have had emergency managers longer than 18 months.  This is because neither P.A. 72 nor P.A. 4 had a similar time limit, and the financial plans put in place by these pre-existing emergency managers were not likely designed to resolve a financial crisis within 18 months.  Thus, subjecting existing local units of government to the additional 18 months allows their emergency managers to modify or amend their plans in light of the new time limitation.  Moreover, P.A. 436 expressly provides these local units of government with the interim alternative of petitioning the Governor to remove an emergency manager who has served *less* than 18 months under P.A. 72. Mich. Comp. Laws §141.1549(11).  P.A. 436 survives rational basis review, and Plaintiffs have failed to state a claim for relief.

## IV.    P.A. 436 does not violate the Voting Rights Act (Count 7).

Count 7, an alleged violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, also fails to state a claim upon which relief may be granted.  To state a claim for violation of Section 2, a minority group must demonstrate what are commonly referred to as the "*Gingles* factors":  (1) "that it is sufficiently large and geographically compact to constitute a majority in a single-member district;" (compactness); (2) "that it is politically cohesive" (cohesiveness); and (3) that "the white majority votes sufficiently as a bloc to enable it – in the absence of special circumstances, such as the minority candidate running unopposed – usually to defeat the minority's preferred candidate" (white-bloc voting).  *Mallory v. Ohio*, 173 F.3d 377, 381-382 (6th Cir. 1999) (internal citations omitted).

19

First, Plaintiffs' claims should be dismissed because they have not alleged that they constitute a "minority group" capable of bringing a Section 2 claim.  *Id.*  Second, Plaintiffs' vote-dilution claim—predicated on the purported "statewide participation of the electorate" in their local governance—does not implicate any of the *Gingles* factors. (R. 1, Compl., ¶ 193, ID# 39.)  Indeed, their Complaint is devoid of *any* allegations related to compactness, cohesiveness, or white-bloc voting.  Instead, it focuses exclusively on their disagreement with Defendants' policy choice in enacting P.A. 436.  Yet, the Sixth Circuit has specifically recognized that regardless of the mechanism alleged to cause vote dilution, the *Gingles* factors *must* be satisfied *Mallory*, 173 F.3d at 386.  Accordingly, this Court should dismiss Count 7.

## V.    P.A. 436 does not violate the First Amendment rights of free speech and petition (Count 8).

Count 8 is brought only by individual Plaintiffs, not by Council 25.  (R. 1, Compl., ¶¶ 202-203, ID# 41.)  The bases for this claim is that P.A. 436 strips the local officials of all authority, mirrors P.A. 4, which was rejected by voter referendum, and improperly vests P.A. 436 powers in previously appointed emergency financial managers.  (*Id.* at  ¶ 206-207, ID# 42.)[2]

These claims fail for two reasons.  First, P.A. 436 neither abridges Plaintiffs' speech nor prohibits them from petitioning their government for the redress of grievances.  They can still vote and continue to voice their concerns to their elected officials.  Second, even if this Court were to determine that an emergency manager abridges these First Amendment rights, the Act is still constitutional because the abridgement is content-neutral and justified by the financial exigencies of the local governments to which it is applicable.

---

[2] Plaintiffs frame their First Amendment claim in part based on "speech on matters of public concern."  But the "public concern" balancing test set out by the United States Supreme Court in *Pickering v. Board of Education,* 391 U.S. 563 (1968), is applicable where an public employee is being disciplined, or subjected to an adverse employment decision, for his or her speech or associations.  See *Piscottano v. Town of Somers*, 396 F. Supp. 2d 187, 200 (D. Conn., 2005) (citation omitted).

20

## A.   P.A. 436 does not abridge speech or prohibit Plaintiffs from petitioning the Government.

The First Amendment provides in part that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances."  U.S. Const., amend. I.  Freedom of speech, though a fundamental right, is not absolute.  *Konigsberg v State Bar of California*, 366 U.S. 36, 49 (1961).  The right to petition and the right to free speech are separate guarantees, yet they are related and generally subject to the same constitutional analysis.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 390 (6th Cir. 1999)

A threshold issue in any First Amendment analysis is whether there has been an abridgement of First Amendment rights.  Here, for four reasons, Plaintiffs' claims fail at the onset because there is no abridgement of free speech or petition rights.

### 1.   P.A. 436 gives local officials both voice and choice.

An emergency manager is not simply thrust on local elected officials.  Even before a preliminary review is conducted, the local governmental unit is notified and has an opportunity to provide comments to the state financial authority. Mich. Comp. Laws § 141.1544(2).  Once the local unit is under review, it then has an opportunity to provide information concerning its financial condition.  *Id*. at § 1545(2).  If after review it is determined that a financial emergency exists, the local unit may appeal this determination.  *Id.* at § 1546(3).  Once the financial emergency is confirmed, the local government has options, including a consent agreement, an emergency manager, a neutral evaluation process option, or bankruptcy.  *Id*. at § 1547(1)(a)-(d).  Thus, an emergency manager is but one of the choices available to a local unit.  Additionally, the process is only an interim one:  an emergency manager may, by resolution, be removed after 18 months, or earlier if financial conditions are corrected.  *Id.* at § 1549(6)(c), (7), (11).

21

### 2. Plaintiffs have no constitutional right to local self-government and an emergency manager is accountable to the State's elected officials.

"'Viable local governments may need many innovations, numerous combinations of old and new devices, great flexibility in municipal arrangements to *meet changing urban conditions*.'" *Holt Civil Club v. City of Tuscaloosa*, 439 U.S. 60, 74-75 (1978) (quoting *Sailors*, 387 U.S. at 110-111 (emphasis added)). Moreover, "[m]unicipal corporations are political subdivisions of the [s]tate, created as convenient agencies for exercising such of the governmental powers of the [s]tate as may be entrusted to them. . . . The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the [s]tate." *Hunter*, 207 U.S. at, 178-179 (1907).

Accordingly, a state may take action including destroying the municipal corporation entirely, "conditionally or unconditionally, with or without the consent of the citizens, or even against their protest," and may do so "unrestrained by any provision of the Constitution of the United States." *Id.* Thus, the U.S. Supreme Court in *Hunter v. City of Pittsburgh,* 207 U.S. 161, 178 (1907), upheld an act authorizing city consolidation and providing for temporary government and payment of the consolidated city's debts.

Although the Supreme Court has placed limitations on this expansive power—none of which apply here[3]—*Hunter* remains good law. *Hess v. Port Auth. Trans-Hudson Corp.,* 513 U.S. 30, 47 (1994) (citing *Hunter* and affirming that "ultimate control of every state-created

---

[3] Neither states nor their political subdivisions may draw boundaries that discriminate on an invidious basis, such as race or sex. *See Gomillion v. Lightfoot,* 364 U.S. 339, 341 (1960) Also, equal protection prohibits states from restricting or diluting votes in violation of the "one person, one vote" principle announced in *Reynolds v. Sims,* 377 U.S. 533 (1964), and extended to local governments in *Avery v. Midland County,* 390 U.S. 474 (1968). Too, unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government. *Kramer v. Union Free School Dist. No. 15,* 395 U.S. 621, 626 (1969). But, as argued above, Plaintiffs have no valid equal protection or Voting Rights Act claims.

22

entity resides with the State ... [and p]olitical subdivisions exist solely at the whim and behest of their State") (internal quotation marks omitted); *Kelley v. Metropolitan County Bd. of Educ. of Nashville & Davidson County, Tenn.*, 836 F.2d 986, 994 (6th Cir. 1987).

Moreover, a State's broad authority does not leave citizens without a voice or petition rights in local government affairs. In *Holt Civil Club v. City of Tuscaloosa*, 439 U.S. at 73-74, a case upholding Alabama's decision to allow cities to exercise extraterritorial jurisdiction over nearby settlements, the Court recognized that it did not "sit to determine whether Alabama has chosen the soundest or most practical form of internal government possible." Instead, the "[a]uthority to make those judgments resides in the state legislature, and Alabama citizens are *free to urge their proposals to that body*." *Id.* (emphasis added, citation omitted).

The same is true here. As was true in *Holt Civil Club*, it is not for this Court to second-guess whether P.A. 436 is the most practical solution. And as in *Holt Civic Club*, Michigan must continue to respond to evolving economic challenges and in doing so has broad authority over local units of government. Plaintiffs are free to urge their proposals to their state elected officials—even where an emergency manager has temporarily limited the powers of their local officials. And they *still* get to vote, *still* get to voice their views about how local government is run, and *still* can seek to replace officials with whom they are dissatisfied.

Significantly too, while the local unit of government is in receivership, emergency managers are accountable to the State's *elected* officials—who, in turn, are accountable to Plaintiffs and other voters. At the six-month mark and each three months thereafter, the emergency manager must submit an accounting of expenditures, contracts, loans, new or eliminated positions, and his or her financial and operating plan to the Governor, the state treasurer, various legislative representatives of the local government, and the clerk of the local

government.  Mich. Comp Laws § 141.1557 (a)-(h).  The Governor ultimately determines whether the financial emergency has been rectified, *id*. at § 1562(2), and has the power to appoint a new emergency manager, *id.*. at § 141.1564.

In sum, how local government is organized is up to the State.  And the way to change state law is through the political process, not the courts.

### 3.    The Petition Clause does not guarantee a particular result.

The Petition Clause guarantees only that an individual may "speak freely and petition openly" and that he will be free from retaliation by the government for doing so.  *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 464–65 (1979) (per curiam).  But it does not guarantee that the government will listen or respond, or that a particular petition will be effective.  *Id*. (holding that the state's highway commission did not violate unions' First Amendment petition rights merely because it ignored the union, which it was free to do); *Canfora v. Old*, 562 F.2d 363, 363 (6th Cir. 1977) ("[N]either in the First Amendment [or] elsewhere in the Constitution is there a provision guaranteeing that all petitions for the redress of grievances will meet with success).

Here, Plaintiffs may exercise their petition rights by informing their state elected officials—and even their local officials during the receivership under P.A. 436—of their desires with respect to the passage or enforcement of laws such as P.A. 436.  But they cannot control the outcome, and that is really the essence of their claim.  If they are unhappy with the outcome of their previous attempts to petition the government, their remedy for a law they dislike is at the polls.  *Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271, 285 (1984) (explaining that disagreement with public policy and disapproval of officials' responsiveness is to be registered principally at the polls).

### 4.    Rejection of P.A. 4 is not an abridgement of speech or petition and P.A. 436 is not the mirror image of P.A. 4.

Voters exercised their speech and petition rights when they rejected P.A. 4.  They also exercised their speech and petition rights when their elected officials enacted P.A. 436.  P.A. 436 is not a reenactment of P.A. 4.[4]  It replaces P.A. 72, which was in effect at the time.  And the Legislature determined that P.A. 436 was necessary to ensure local fiscal stability.

This is the political process at work.  Plaintiffs may exercise their speech and petition rights to express their discontent with current elected officials and/or elect new state officials. The Legislature's decision to vest formerly appointed emergency financial managers with P.A. 436 powers represents this same political process.  If Plaintiffs are unhappy with the result of the political process, they can attempt to have their current elected state officials hear and respond to them, or they can seek to elect new officials—again, all part of the political process.

### B.    P.A. 436 is also justified by local financial emergencies.

As courts have recognized, there are free speech compromises that are not unconstitutional.  E.g., *Burson v. Freeman*, 504 U.S. 191 (1992) (upholding a law prohibiting display or distribution of campaign materials within 100 feet of a polling place); *Hill v. Colorado*, 530 U.S. 703, 725 (2000) (upholding a statute making it a misdemeanor to pass out material or counsel within 8 feet of a person entering or leaving a health care facility in order to pass out material or counsel).  That is why courts routinely uphold all manner of restrictions on petitioning, including registration and disclosure requirements for lobbyists, *United States v. Harriss,* 347 U.S. 612, 625 (1954); limiting access to the courts, *Swekel v. City of River Rouge*,

---

[4] However, even if P.A. 436 was a mirror image of P.A. 4, there is no legal prohibition to the Michigan Legislature re-enacting a law identical or similar to one disapproved by referendum. See, e.g. *Reynolds v. Bureau of State Lottery*, 240 Mich. App. 84; 610 N.W.2d 597 (2000).

25

119 F.3d 1259, 1263 (6th Cir. 1997); and subjecting petitioning to neutral time, place and manner restrictions consistent with public safety and order, *Buckley v. Valeo*, 424 U.S. 1 (1976).

A free speech violation occurs only when the restricted speech is constitutionally protected and when the government's justification for the restriction is insufficient. *Frisby v. Schultz,* 487 U.S. 474, 479 (1988). The test for whether a state actor violated a plaintiff's First Amendment right to free speech is: (1) whether plaintiff's speech is protected by the First Amendment; (2) the nature of the forum: public, designated or limited public, or nonpublic; and (3) whether the defendant's justifications for limiting the plaintiff's speech satisfy the requisite standard. *Cornelius v. NAACP Legal Defense & Educ. Fund,* 473 U.S. 788, 797 (1985).

Here, the requisite standard is intermediate scrutiny because P.A. 436 (if it abridges speech at all) is content-neutral. See *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989) (quotation omitted) ("[T]he government may impose reasonable [content-neutral] restrictions on the time, place, or manner of protected speech, provided the restrictions: (1) 'serve a significant governmental interest;' (2) 'are narrowly tailored;' and (3) 'leave open ample alternative channels for communication of the information.'"). There is no indication that P.A. 436 was intended to suppress any ideas or that it has had that effect.

P.A. 436 satisfies intermediate scrutiny. The State has a significant and compelling interest in addressing the financial distress of local units of government. And the Act does not abridge more speech or petition rights than necessary to address that distress. It gives local elected officials options in solving its difficulties, and if locals choose an emergency manager, provides narrowly tailored procedures for the manager's removal. Again, Plaintiffs have ample channels to voice their concerns to their state elected officials. Moreover, the financial exigencies of the local units of government that are subject to the Act justify any temporary

26

abridgment of speech or petition rights.   Indeed, governments exercise emergency powers that allow them to temporarily suspend constitutional rights.

These emergencies are often economic.  As early as 1934, the Supreme Court addressed an economic emergency in *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 435 (1934), and upheld Minnesota's mortgage moratorium law in response to the Great Depression.  The Court noted, "[The] principle of harmonizing the constitutional prohibition with the necessary residuum of state power has had progressive recognition in the decisions of this Court."  *Id.* "When major emergencies strike, the 'law of necessity' is the one rule that trumps all the others." William H. Rehnquist, "All the Laws But One:  Civil Liberties in Wartime" (1998).

In sum, P.A. 436 does not abridge First Amendment free-speech or petition rights, and any alleged abridgement cannot be unconstitutional.  This claim fails as a matter of law.

## VI. The appointment of Detroit's emergency manager does not violate the right to petition (Count 9).

Count 9 is brought by Council 25, its representative and its negotiator, and alleges abridgment of the First Amendment petition right.  (R. 1, Compl., ¶ 212, 214, ID# 43.)  The basis for this claim is the appointment of the City of Detroit's Emergency Manger, Kevyn Orr, formerly the City's Emergency Financial Manager under P.A. 72.  (*Id.*, ¶ 220, ID# 44-45.) Plaintiffs allege that P.A. 436 allows the Governor and Treasurer to use their powers over local government for their own political and economic benefit.  (*Id.*, ¶ 220(f), ID# 44-45.)

For the same reasons Count 8 fails, Count 9 fails as well.  Plaintiffs have not lost the right to petition their elected state officials or even their Detroit elected officials.  They simply do not have the constitutional right to a particular result.

As to the allegations that P.A. 436 provides the opportunity for Defendants to benefit privately, politically, and economically, they are wholly conclusory.  The Act provides numerous

27

safeguards against any overreaching of power.  See, e.g., Mich. Comp. Laws §§ 141.1552(1)(k)

& (u) (safeguards as to collective bargaining agreements and borrowing money), 1552(4)

(safeguards for selling or transferring public utilities), 1555(1) (safeguards for selling of assets),

and 1559(1) (safeguards for proposed contracts, sales, and leases).  Count 9 should be dismissed

for failure to state a claim.

## VII.   P.A. 436 does not violate the Thirteenth Amendment (Count 10).

In Count 10, Plaintiffs claim that their Thirteenth Amendment rights have been violated

because the communities impacted by the appointment of an emergency manager consist mostly

of African-American residents.  This claim should be rejected.

The Thirteenth Amendment bars slavery and involuntary servitude and gives Congress

the power to impose legislation that prohibits such actions.  U.S. Const. amend. XIII.  As an

initial matter, this claim offers no greater protection than Plaintiffs' equal-protection claim and

should therefore be dismissed as redundant.  See *Johnson v. Harron*, 1995 WL 319943 at 6

(N.D.NY., May 23, 1995) ("[I]n the realm of equal protection, the Thirteenth Amendment offers

no protection not already provided under the Fourteenth Amendment.")

In any event, there is no violation of the Thirteenth Amendment and no legislation

enacted by Congress pursuant to the Thirteenth Amendment.  The official actions challenged in

this case all emanate from the impact of legislation to fix financially troubled local units of

government.  P.A. 436 does not benefit white citizens within these communities in a way that it

does not benefit black citizens.  Nor does P.A. 436 "place[] a burden on black citizens as an

unconstitutional 'badge of slavery.'"  *City of Memphis v. N.T. Green*, 451 U.S. 100, 124 (1981).

Quite the opposite, P.A. 436's purpose is to benefit all Michigan citizens, of every race and

ethnicity.  Count 10 should be dismissed for failure to state a claim.

28

## CONCLUSION

For the reasons set forth above, Plaintiffs have failed to state claims upon which relief

may be granted, and the Complaint should be dismissed in its entirety, with prejudice.

Respectfully submitted,

BILL SCHUETTE
Attorney General

*s/Denise C. Barton*
Denise C. Barton (P41535)
Ann M. Sherman (P67762)
Michael F. Murphy (P29213)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434

Dated:  May 15, 2013                    Email:  bartond@michigan.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2013, I electronically filed the foregoing paper with the Clerk of
the Court using the ECF system which will send notification of such.

*s/Denise C. Barton*
Denise C. Barton (P41535)
Attorney for Defendants
E-mail:  bartond@michigan.gov

EXHIBIT B

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,     .       Docket No. 13-53846
        MICHIGAN,            .
                             .       Detroit, Michigan
                             .       July 24, 2013
                 Debtor.     .       10:02 a.m.
. . . . . . . . . . . . . . .

HEARING RE. MOTION OF DEBTOR, PURSUANT TO SECTION 105(a)
OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER CONFIRMING
THE PROTECTIONS OF SECTIONS 362, 365 AND 922 OF THE
BANKRUPTCY CODE (DOCKET #53) AND MOTION OF DEBTOR, PURSUANT
TO SECTION 105(a) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN
ORDER EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE
ENTITIES, (B) NON-OFFICER EMPLOYEES AND (C) AGENTS AND
REPRESENTATIVES OF THE DEBTOR (DOCKET #56)
BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:      Jones Day
                     By:  HEATHER LENNOX
                     North Point
                     901 Lakeside Avenue
                     Cleveland, OH  44114-1190
                     (216) 586-3939

For AFSCME:          Lowenstein Sandler, LLP
                     By:  SHARON L. LEVINE
                     65 Livingston Avenue
                     Roseland, NJ  07068
                     (973) 597-2374

For Syncora          Kirkland & Ellis, LLP
Guarantee and        By:  RYAN BENNETT
Syncora Capital      300 North LaSalle
Assurance:           Chicago, IL  60654
                     (312) 862-2074

For Public Safety    Erman, Teicher, Miller, Zucker &
Unions:                  Freedman, PC
                     By:  BARBARA PATEK
                     400 Galleria Officentre, Suite 444
                     Southfield, MI  48034
                     (248) 827-4100

APPEARANCES (continued):


For Police and          Clark Hill, PLC
Fire Retirement         By:  ROBERT GORDON
System and              151 South Old Woodward, Suite 200
General Retirement      Birmingham, MI  48009
System of the City      (248) 988-5882
of Detroit:

For the UAW:            Cohen, Weiss & Simon, LLP
                        By:  BABETTE CECCOTTI
                        330 West 42nd Street, 25th Floor
                        New York, NY  10036
                        (212) 356-0227

For the Flowers         Law Offices of William A. Wertheimer
Plaintiffs:             By:  WILLIAM WERTHEIMER
                        30515 Timberbrook Lane
                        Bingham Farms, MI  48025
                        (248) 644-9200

For Nathaniel           In pro per
Brent:                  NATHANIEL BRENT
                        538 South Livernois
                        Detroit, MI  48209

For the Phillips        The Sanders Law Firm, PC
Plaintiffs:             By:  HERBERT A. SANDERS
                        615 Griswold, Suite 913
                        Detroit, MI  48226
                        (313) 962-0099

For the State of        Michigan Department of Attorney General
Michigan:               By:  MATTHEW SCHNEIDER
                        525 West Ottawa Street, Fl. 7
                        P.O. Box 30212
                        Lansing, MI  48909
                        (517) 241-8403

For the Webster         McKnight, McClow, Canzano, Smith &
Plaintiffs:                Radtke, PC
                        By:  JOHN R. CANZANO
                        400 Galleria Officentre, Suite 117
                        Southfield, MI  48034
                        (248) 354-9650

1      THE COURT:  All right.  So I will allow 15 minutes

2  for each of the creditors that have filed objections.  These

3  are the Michigan Council 25 of AFSCME, Syncora, the UAW

4  together with Creditors Robbie Flowers, Michael Wells, Janet

5  Whitson, Mary Washington, and Bruce Goldman, the Detroit

6  public safety unions, if I can refer them -- refer to them by

7  that, and the General Retirement System of the City of

8  Detroit and the Police and Fire Retirement System of the

9  city.  It doesn't matter to me, counsel, the order in which

10  you proceed, so I will leave that to you to work out.

11      MS. LEVINE:  I'm going to go with alphabetical.

12      THE COURT:  Okay.

13      MS. LEVINE:  Good morning, your Honor.  Sharon

14  Levine, Lowenstein Sandler, for Michigan Council 25 of the

15  American Federation of State, County, and Municipal Employees

16  or AFSCME, as it's been referred to here today.

17      Your Honor, very briefly, it's clear that your Honor

18  has read all the papers, and we very much appreciate that

19  given the short time frame that we've been before this Court.

20  Bankruptcy Code Section 105 is extraordinary relief,

21  extraordinary in that it's only used to enforce rights that

22  already exist under the Bankruptcy Code, so it's not there to

23  create new rights that don't currently exist under the Code.

24  What we have here in a Chapter 9 case, which is more

25  restrictive than, for example, a Chapter 11 case, is the

```
 1   situation where if, in fact, the state has not properly
 2   authorized the Chapter 9 filing, there are rights that don't
 3   exist under the Bankruptcy Code.  If Chapter 9, as has
 4   historically been seen through the unconstitutional finding
 5   of predecessors to Chapter 9, is really being used here to
 6   avoid state constitutional rights, then Chapter 9 in and of
 7   itself is potentially unconstitutional.  If not, it has to be
 8   construed narrowly in order to read it constitutionally.  We
 9   would respectfully submit that using 105 to find rights that
10   don't otherwise exist, particularly of a constitutional
11   nature, is an extremely broad use of 105.  This isn't a
12   situation where we're saying to the controller or the
13   governor or Mr. Orr, you know, don't respond to discovery
14   requests in a state court action in a foreign jurisdiction
15   because we need your attention here.  We're taking away very
16   fundamental constitutional rights.
17           Secondly, your Honor, if, in fact --
18           THE COURT:  So your argument about the narrow
19   application of Section 105 in this case is really a result of
20   the fact that it's a Chapter 9.
21           MS. LEVINE:  Yes, your Honor.
22           THE COURT:  It's not an argument that's based on
23   Section 105, per se.
24           MS. LEVINE:  Yes, your Honor.  In a Chapter 11
25   you'll have circumstances, for example, where even in the
```

1    broader case of a Chapter 11, you won't use Article -- you

2    won't use Section 105 to grant a casino license or a liquor

3    license or tell a utility board they can't change rates, but

4    we have an even narrower situation here because we're in

5    Chapter 9.

6            Two, Chapter 9 can't be used if, in fact, the state

7    has not authorized under its constitution and its laws the

8    Chapter 9 filing.  The Chapter 9 filing here is arguably

9    flawed because it intends to go after the pensions.  If it

10   goes after the pensions, it arguably violates the state

11   constitution and can't be before this Court, so, again, the

12   issue with regard to whether or not we have an appropriate

13   state constitutional flaw -- sorry.  The issue with regard to

14   whether or not we have an appropriate filing is necessarily

15   limited by whether or not we have an appropriate state -- we

16   have an inappropriate state constitutional authorization.  If

17   we have an inappropriate state constitutional authorization,

18   that is not simply an implementation tool under 105.  That

19   is, in essence, a substantive right that's being creative --

20   created under 105 that does not exist in the state court.

21           In addition to that, your Honor, and also

22   importantly, three, individual citizens of the City of

23   Detroit have the absolute right to protect their own

24   constitutional rights.  If we say to them they can't go to

25   the state courts that are there for the protection of their

1  constitutional rights in part, then we are -- then we're

2  using 105 again way more broadly than it gets used in the

3  ordinary course as simply an implementation tool.  We're

4  creating more substantive rights.  And while this Court

5  has --

6          THE COURT:  Well, but why isn't the extended stay

7  that the city seeks here simply a procedural mechanism to

8  funnel such challenges to the Bankruptcy Court and,

9  therefore, does not have the effect of denying citizens or

10  other creditors of their rights to have their constitutional

11  claims heard?

12          MS. LEVINE:  Your Honor, if this Court is a court of

13  secondary jurisdiction, no disrespect, with -- but if you

14  look at federalism, comity, abstention, and the state courts

15  are the courts of primary jurisdiction, we would respectfully

16  submit that unlike, for example, determining in a Chapter 11

17  case that there's a validly perfected security interest

18  because you've looked at state law and the UCC is properly

19  filed, we have a very fundamental right here that this Court

20  is being asked to address, so what we're saying is instead of

21  going to the court that's primarily responsible, we're going

22  to come into this Court instead, and it's not as if there's

23  delay or uncertainty with regard to the fact that those

24  matters are going to get heard and considered quickly.  We

25  already have state court litigation pending, and the state

1   appellate courts are poised and ready to rule, so there's no

2   reason to divest them of that appropriate jurisdiction under

3   concepts of federalism, comity, and abstention and move that

4   here to a court of secondary jurisdiction on those issues.

5        Your Honor, fourth, with regard to the form over

6   substance, the procedural arguments with regard to 105, in

7   certain circumstances where 105 is being used for things like

8   stopping discovery or minimal things like that, that's one

9   set, but the Federal Rules of Civil Procedure are put in

10   place in order to protect parties and provide due process.

11   There can't be a more fundamental situation where you need to

12   enforce those types of rights than when you're dealing with

13   basic fundamental constitutional rights, and we respectfully

14   submit that even though there are circumstances where

15   expediency mandates the use of 105 quickly, this is not one

16   of those circumstances.

17        Your Honor, the breathing spell under 105 -- the

18   breathing spell under the Bankruptcy Code and the use of 105

19   to extend the breathing spell is only appropriate if, in

20   fact, the underlying bankruptcy is an appropriate bankruptcy.

21   The idea that there's a breathing spell to continue what is

22   potentially an unconstitutional or illegal -- not

23   intentionally, no motive or anything, your Honor, but --

24   proceeding is clearly not anything that 105 was designed to

25   implement.

1          Your Honor, we would respectfully submit that these

2     are very, very fundamental rights, and unlike a Chapter 11

3     case where you have a defined benefit plan where if, in fact,

4     it is terminated, there's federal insurance under the PBGC up

5     to $57,000, or if you have a multi-employer plan, even if an

6     employer withdraws, the beneficiaries themselves are

7     protected, here our members who participate at most are at or

8     below $19,000 a year.  Clearly there's no safety net.  These

9     issues are hard issues.  The collateral advantage to sending

10    this back to the state court for an appropriate decision is

11    that the conversations which we believe should have been

12    happening more robustly before the filing could happen now.

13    We respectfully -- we thank your Honor for the time, and we

14    appreciate your Honor's consideration.

15          THE COURT:  Thank you.  Sir.

16          MR. BENNETT:  Good morning, your Honor.  Ryan

17    Bennett of Kirkland & Ellis on behalf of Syncora Guarantee

18    and Syncora Capital Assurance.  Your Honor, as we attempted

19    to describe in our papers, my client insures, in some cases

20    owns certain securities called the certificates of

21    participation, which were taken out in 2006 to fund some of

22    the city's pension liabilities.  We also insure a swap --

23    four swaps related to those securities that are tied to the

24    interest rate, the floating interest rate associated with

25    them.

1       THE COURT:  Um-hmm.

2       MR. BRENT:  However, this is the city's option.

3  This isn't a requirement of law that they indemnify these --

4       THE COURT:  Um-hmm.

5       MR. BRENT:  -- just as -- my lawsuit is also against

6  various state actors within the State of Michigan, which --

7  but, again, their wanting to extend this to them would

8  prevent me from litigating my claims against the state

9  officials that have already been denied immunity, and it is

10  currently pending.  Those portions they've appealed to the

11  Circuit Court.  So now that they're trying to extend this

12  stay, now the Sixth Circuit Court of Appeals case of <u>Brent</u>

13  versus <u>Wayne County, et al.</u> will be stayed as well where the

14  different state defendants -- state employees have uphill

15  decision to deny their qualified and absolute immunity.

16       THE COURT:  The defendants in your particular suit

17  are both city employees and other defendants are state

18  employees?

19       MR. BRENT:  Yes, and there's also state contractors

20  involved in the lawsuit.

21       THE COURT:  Contractors also.  Thank you, sir.

22  Would anyone else like to be heard?

23       MR. SANDERS:  Good morning, your Honor.  My name is

24  Herb Sanders, and I represent the plaintiffs in the case of

25  <u>Phillips</u> versus <u>Snyder</u> pending before this Court, Case Number

1   2:13-CV-11370, before Judge Steeh.  That is a case that

2   challenges the constitutionality of PA 436.  Motions for

3   summary -- for at least one summary disposition or summary

4   judgment argument have been scheduled.  As I initially read

5   the request for stay extension motion filed by the city, it

6   appeared that the city was seeking an extension of stay

7   concerning financial matters that were being litigated, but

8   pursuant to the oral presentation of the city's attorney, it

9   concerns me when she has indicated -- and I paraphrase --

10  that she seeks relief concerning any litigation that might

11  interfere with the city's rights as a Chapter 9 debtor.  And

12  I would suggest to the Court to the extent that it might be

13  proposed or suggested that the litigation which I have

14  referenced in which the constitutionality of PA 436 is to be

15  determined by another judge in this court interferes with the

16  rights of the city as a Chapter 9 debtor, that that case not

17  be included as part of the stay order that this Court would

18  issue.  I believe it's imperative to this community, to this

19  state that those issues be determined and, in fact, should

20  probably be determined before the bankruptcy proceeds, but I

21  would encourage the Court to not give a broad order if any

22  order were to issue that would be inclusive of matters that

23  are not financial matters such as there are other matters

24  that I know that the union, AFSCME, and others are a part of

25  seeking FOIA requests from the city, injunctive relief as it

1  relates to these types of matters, and I would ask the Court

2  to consider not giving such a broad order --

3          THE COURT:  Um-hmm.

4          MR. SANDERS:  -- that that type of information could

5  not be obtained and we could not have a determination as to

6  the constitutionality of PA 436 by this Court.

7          THE COURT:  Um-hmm.

8          MR. SANDERS:  Thank you, your Honor.

9          THE COURT:  Thank you.  Sir, can you just give me

10 your name again, please?

11         MR. SANDERS:  Herb Sanders.

12         THE COURT:  Mr. Sanders.  Thank you, sir.

13         MR. SCHNEIDER:  May it please the Court, Matthew

14 Schneider, chief legal counsel to the Attorney General.  I'm

15 here on behalf of the State of Michigan.  Your Honor, I'm

16 here for a very, very limited purpose.  As counsel to the

17 debtor has indicated, they are not seeking to abrogate the

18 exceptions in Section 362(b), and I know that this is a

19 motion regarding Section 362, so our position is is that if

20 the Court is, indeed, inclined to grant the motion regarding

21 the stay, that the Court's order reflect that nothing in the

22 Court -- nothing what the Court is doing will actually

23 abrogate the exceptions afforded under 362(b).

24         THE COURT:  Is there a specific exception you're

25 concerned about?

# EXHIBIT C

# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
-------------------------------------------- x
                                             :
In re                                        :        Chapter 9
                                             :
CITY OF DETROIT, MICHIGAN,                   :        Case No. 13-53846
                                             :
                Debtor.                      :        Hon. Steven W. Rhodes
                                             x
```

## DEBTOR'S BRIEF IN OPPOSITION TO PETITION FOR ORDER LIFTING STAY[1]

Six weeks after the Emergency Manager's appointment became effective, the Plaintiffs filed the Lawsuit seeking a judgment declaring not only the Emergency Manager's appointment to be invalid, but all actions he has taken, including the filing of this chapter 9 case, to be unenforceable. Yet, the Plaintiffs somehow assert that granting them relief from stay to prosecute this Lawsuit to judgment will have "no effect whatsoever on the City's ability to reorganize" because it is "completely unrelated" to the chapter 9 case. Stay Relief Brief at 3, 8. This is not accurate nor is the timing of the Lawsuit's filing a coincidence. The Stay Relief Motion is nothing more than a thinly veiled attempt to litigate the

---

[1] Capitalized terms not defined in this Brief in Opposition, have the meanings given to them in the City's Objection to Petition for Order Lifting Stay, filed contemporaneously with this brief.

City's eligibility before a different court in circumvention of the Court's Stay Extension Order and the process this Court adopted to resolve eligibility objections. The Plaintiffs have not identified any cause, much less sufficient cause, to allow them to proceed with the Lawsuit. Accordingly, the Stay Relief Motion must be denied.

## ARGUMENT

In support of the Stay Relief Motion, the Plaintiffs advance three arguments: (1) the Stay Extension Order does not apply to the Lawsuit, either because it did not specifically identify the Lawsuit or because it cannot be read so broadly as to include the Lawsuit; (2) the Court did not have the authority to enter the Stay Extension Order; (3) the Plaintiffs have demonstrated cause for relief from the Automatic Stay. None of these arguments have any merit.

## I.     The Stay Extension Order Applies to the Lawsuit

The Plaintiffs misunderstand or misconstrue the relief granted in the Stay Extension Order. The Lawsuit is precisely the type of case that the Stay Extension Order was intended to cover and, contrary to the Plaintiffs' assertions, it does not provide the Defendants "complete immunity from all litigation." Stay Relief Brief at 9.

The Plaintiffs devote much of the Stay Relief Motion in a misguided attempt to argue that only a limited set of actions within the definition of "Prepetition

Lawsuits" are covered by the Stay Extension Order. The Plaintiffs reason that, because the Lawsuit is not covered by the definition of "Prepetition Lawsuits," that case is not subject to the Stay Extension Order. Stay Relief Brief at 8.

The Plaintiffs quote only paragraph 3 of the Stay Extension Order which states: "For the avoidance of doubt, each of the Prepetition Lawsuits hereby is stayed, pursuant to section 105(a) of the Bankruptcy Code, pending further order of this Court." This statement clarifies that a small group of three "Prepetition Lawsuits" are included in the relief granted and therefore are stayed. But nowhere does this statement limit the scope of the relief sought or obtained so that it would apply only to these three Prepetition Lawsuits.

The primary relief is granted in the prior paragraphs of the Stay Extension Order. Paragraph 1 states, without reservation or limitation of any kind, that the Stay Extension Motion is "granted." Paragraph 2 of the Stay Extension Order then states broadly that:

> Pursuant to section 105(a) of the Bankruptcy Code, the Chapter 9 stay hereby is extended in all respects (to the extent not otherwise applicable) to the State Entities (defined as the Governor, the State Treasurer and the members of the Loan Board, collectively with the State Treasurer and the Governor, and together with each entity's staff, agents and representatives), the Non-Office Employees and the City Agents and Representatives.

As such, the Stay Extension Order makes clear that the Automatic Stay was extended to the Governor and Treasurer to stay any and all cases that "have the

direct or practical effect of denying the City the protections of the" Automatic Stay so as to aid the City in the administration of its bankruptcy case and ensure the City is afforded the breathing spell it needs to focus on developing and negotiating a plan for adjusting its debts. See Stay Extension Motion at ¶ 15. This District Court judge in the Lawsuit agreed, finding, after review of an objection by the Plaintiffs, that "the plain language of the stay order would apply to this lawsuit."[2] Stay Relief Motion, Exhibit A.

If the Lawsuit were to continue, and if the District Court were to grant judgment in favor of the Plaintiffs, it is almost certain that the Plaintiffs (and others) would argue before this Court that the decisions and actions of the Emergency Manager – including the filing and prosecution of this chapter 9 case – are void and of no effect. Reading the prayer for relief in the Amended Complaint is all that is necessary to reach that conclusion. Reduced to its basics, the Lawsuit is yet another vehicle to challenge the City's eligibility for chapter 9 relief or otherwise attempt to interfere with the City's restructuring efforts. Such a result

---

[2] The Plaintiffs may not re-litigate this issue in this Court. See e.g., Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc., 701 F.3d 1093, 1098 (6th Cir. 2012) (holding that issue preclusion precludes relitigation where (1) the precise issue was raised and litigated in the prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceedings; (3) the prior proceedings resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought had a full and fair opportunity to litigate the issue in the prior proceeding).

- 4 -

13-53846-swr Doc 254-1 Filed 01/20/13 Entered 01/20/13 14:30:49 Page 78 of 86
13-53846-swr Doc 640-3 Filed 01/20/13 Entered 01/20/13 17:41:19 Page 78 of 86

would have the direct and practical effect of denying the City the protections of the Automatic Stay and "interfere with the City's activities in this chapter 9 case" (Stay Extension Motion at ¶ 20) – the precise result that the Stay Extension Order was seeking to avoid. Furthermore, this Court has assiduously and correctly endeavored to consolidate all possible objections to the eligibility of the City to seek chapter 9 relief before it and to avoid the exact result that would be occasioned if stay relief were to be granted to the Plaintiffs to permit an attack on PA 436 and all that implicates. Thus, the Plaintiffs' arguments that either the Stay Extension Order does not apply to the Lawsuit or that it is too broad to be enforced, fail. Stay Relief Brief at 9. Accordingly, as the District Court has already found, the Stay Extension Order applies to the Lawsuit.

## II. The Court Had Authority to Enter the Stay Extension Order

The Plaintiffs also argue that the Court did not have the authority to enter the Stay Extension Order. This is nothing more than a collateral attack upon the Stay Extension Order. Similar arguments were timely raised by other parties and rejected by this Court.[3] As the Plaintiffs recognize, a bankruptcy court may

---

[3] Other parties have raised similar objections to the Stay Extension Motion. See Dkt. No. 84 (the "AFSCME Objection"), ¶ 45-46 (arguing no identity of interests between the City and State Entities); Dkt. No. 141 (the "Retirement Systems Objection"), pp. 16-17 (same, and adding the argument that "[a] judgment obtained in any one of [certain pre-petition lawsuits against the Governor, the Emergency Manager, and others] will not be a judgment against the City. . . ."); see also Dkt. No. 146 (the "Flowers Objection"), ¶ 4 (arguing that "[a]t no point have the
*Continued on next page.*

extend the automatic stay where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." In re Eagle-Picher Indus., Inc., 963 F.2d 855, 861 (6th Cir. 1992) (quoting A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986)). The Lawsuit seeks a judgment against the Defendants declaring not only the Emergency Manager's appointment to be invalid, but all actions he has taken, including the filing of this chapter 9 case, to be unenforceable. Thus, any judgment against the Defendants would in effect be a judgment or finding against the City. As a result, under well-established Sixth Circuit precedent, this Court had the authority to enter the Stay Extension Motion. The Plaintiff's arguments to the contrary must be rejected.

## III. No Cause Exists to Grant Plaintiffs Relief from the Automatic Stay

Section 362(a) of the Bankruptcy Code provides in relevant part that:

> a petition filed under . . . this title . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the

---

*Continued from previous page.*

*Flowers* plaintiffs sued . . . or sought any relief against" the City, its officials, or employees). The Debtor addressed these arguments in its reply (Dkt. No. 128, ¶¶ 6-8). The Plaintiffs add nothing to this issue by raising these same arguments again.

- 6 -

13-53846-tjt Doc 254-13 Filed 01/20/14 Entered 01/20/14 14:30:34 Page 80 of 86
13-53846-swr Doc 514-13 Filed 01/20/14 Entered 01/20/14 17:04:49 Page 80 of 86

> debtor that arose before the commencement of the case . . . .

11 U.S.C. § 362(a).  The Automatic Stay "is one of the fundamental debtor

protections provided by the bankruptcy laws. It gives the debtor a breathing spell

from his creditors.  It stops all collection efforts, all harassment, and all foreclosure

actions." Javens v. City of Hazel Park (In re Javens), 107 F.3d 359, 363 (6th Cir.

1997) (quoting H.R. REP. NO. 95-595, at 340 (1978), reprinted in 1978

U.S.C.C.A.N. 5787, 6296).

Section 362(d) of the Bankruptcy Code authorizes a bankruptcy court to

grant relief from the Automatic Stay in limited circumstances.  See 11 U.S.C. §

362(d).  In particular, section 362(d)(1) of the Bankruptcy Code provides that a

party in interest may obtain relief from the Automatic Stay "for cause, including

the lack of adequate protection of an interest in property of such party in interest."

11 U.S.C. §362(d)(1).

"The Bankruptcy Code does not define 'cause' as used in [section]

362(d)(1).  Therefore, under [section] 362(d), 'courts must determine whether

discretionary relief is appropriate on a case by case basis.'" Chrysler LLC  v.

Plastech Engineered Prods., Inc. (In re Plastech Engineered Prods., Inc.), 382 B.R.

90, 106 (Bankr. E.D. Mich. 2008) (quoting Laguna Assocs. L.P. v. Aetna  Casualty

& Surety Co. (In re Laguna Assocs. L.P.), 30 F.3d 734, 737 (6th Cir. 1994)).  The

determination of whether to grant relief from the Automatic Stay "resides within

the sound discretion of the Bankruptcy Court." Sandweiss Law Center, P.C. v.

Kozlowski (In re Bunting), No. 12-10472, 2013 WL 153309, at *17 (E.D. Mich.

Jan. 15, 2013) (quoting In re Garzoni, 35 F. App'x 179, 181 (6th Cir. 2002)).

> To guide the bankruptcy court's exercise of its discretion
> . . . the Sixth Circuit identifies five factors for the court to
> consider: (1) judicial economy; (2) trial readiness; (3) the
> resolution of the preliminary bankruptcy issues; (4) the
> creditor's chance of success on the merits; and (5) the
> cost of defense or other potential burden to the
> bankruptcy estate and the impact of the litigation on other
> creditors.

Bunting, 2013 WL 153309, at *17 (quoting Garzoni, 35 F. App'x at 181) (internal

quotation marks omitted).  In determining whether cause exists, however, "the

bankruptcy court should base its decision on the hardships imposed on the parties

with an eye towards the overall goals of the Bankruptcy Code." Plastech, 382 B.R.

at 106 (quoting In re C & S Grain Co., 47 F.3d 233, 238 (7th Cir. 1995)).

Here, consideration of the these factors confirms that no cause (much less

sufficient cause) exists to justify relief from the Automatic Stay to allow the

Lawsuit to proceed.  With respect to the first factor, the interests of judicial

economy weigh heavily in favor of denying the Stay Relief Motion.  Numerous

parties have raised similar eligibility issues in this chapter 9 case[4] (the Plaintiffs

not being one of them) that the Plaintiffs seek to litigate in the Lawsuit in front of

---

[4] See e.g., The City's Consolidated Reply to Objection to the Entry of an Order for
Relief at 38-44, 89, 95-96, 98. [Dkt. No. 765].

- 8 -

13-53846-tjt  Doc 2547-13  Filed 01/20/14  Entered 01/20/14 14:30:34  Page 82 of 86
13-53846-swr  Doc 2410-3  Filed 01/20/14  Entered 01/20/14 11:34:24  Page 82 of 83

the District Court.   As this Court emphasized, litigating eligibility issues in two different courts, simultaneously "does not promote judicial or party efficiency; it is the antithesis. The most efficient way to litigate eligibility in this case is in one court – the bankruptcy court – and then on appeal in the next." Opinion and Order Denying Motion to Stay Proceedings Pending Determination of Motion to Withdraw the Reference at 19. [Dkt. No. 1039].  Accordingly, judicial economy dictates staying the Lawsuit so as to permit this Court to address the PA 436 Eligibility Objections in the single, unified context of the eligibility trial.

With respect to the second factor, the Lawsuit is in its preliminary stages. The Defendants' motion to dismiss remains pending.  No discovery has been taken.  Thus, the Lawsuit has not even advanced beyond the pleading stage and is not trial ready.  The third factor also weighs in favor of denying the Stay Relief Motion as the Court has not even resolved the City's eligibility for relief in this chapter 9 case.  Nothing could be more basic or preliminary to the ultimate outcome.

Further, concerning the fourth factor, as set forth in the Defendants' motion to dismiss and in the Defendants' Opposition to the Stay Relief Motion, the Plaintiffs have not demonstrated a likelihood of success on the merits.

Finally, the fifth factor weighs in favor of denying the Stay Relief Motion. Although the City is not currently a party in the Lawsuit, the impact that the

Lawsuit may have on the City and its restructuring efforts may require the City to intervene or otherwise become further involved and take other actions if the Stay Relief Motion is granted. Requiring the City to defend the Lawsuit in the District Court would distract the City from its efforts to restructure, diverting its limited resources at a time when it is both working to negotiate and deliver a plan of adjustment quickly and engaged in a substantial amount of discovery and litigation (all on its own expedited timeframe) arising in the bankruptcy case itself. The City does not need further impediments to its restructuring efforts. This Court has consistently endeavored to bring all matters which may affect the eligibility of the City before it and have the issues resolved in one forum. Allowing the Lawsuit to proceed in the District Court would cast uncertainty[5] over the eligibility and restructuring process and may chill negotiations among the parties or adversely affect the confirmation of the plan of adjustment.

In short, allowing the Lawsuit to proceed would undermine the protections of the Automatic Stay and interfere with the City's efforts to restructure. The City sought relief under chapter 9 in part to obtain the "breathing spell" afforded by the

---

[5] This Court acknowledged that the uncertainty occasioned just by the eligibility objections already before it will likely slow, if not stall entirely, the "City's progress in recovering its financial, civic, commercial, and cultural life and in revitalizing itself." Opinion and Order Denying Motion to Stay Proceedings Pending Determination of Motion to Withdraw the Reference at 23. [Dkt. No. 1039]. Having the City's eligibility adjudicated simultaneously in two courts obviously compounds that uncertainty.

Automatic Stay and the consequent protection from its creditors while it restructures its affairs and prepares a plan of adjustment.  The City's finances would be further depleted and its personnel distracted from their mission to operate the City for the benefit of its citizens and restructure its affairs if it were denied this basic protection of chapter 9 and forced to defend itself against the Plaintiffs so early in the case.  Accordingly, the overall goals of chapter 9 weigh largely in favor of denying stay relief to the Plaintiffs.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the City respectfully requests that this Court (a) deny the Stay Relief Motion; and (b) grant such other relief to the City as the Court may deem proper.


Dated: September 26, 2013     Respectfully submitted,

     By: /s/Stephen S. LaPlante
     Jonathan S. Green (MI P33140)
     Stephen S. LaPlante (MI P48063)
     Timothy A. Fusco (P13768)
     MILLER, CANFIELD, PADDOCK AND
     STONE, P.L.C.
     150 West Jefferson
     Suite 2500
     Detroit, Michigan 48226
     Telephone: (313) 963-6420
     Facsimile: (313) 496-7500
     green@millercanfield.com
     laplante@millercanfield.com
     fusco@millercanfield.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com


Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

ATTORNEYS FOR THE CITY OF DETROIT