UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,         .       Docket No. 13-53846
          MICHIGAN,              .
                                 .       Detroit, Michigan
                                 .       January 22, 2014
                    Debtor.      .       3:00 p.m.
. . . . . . . . . . . . . . . .  .
                                 .
OFFICIAL COMMITTEE OF            .       Adv. No. 14-04015
RETIREES OF THE CITY OF          .
DETROIT, MICHIGAN, et al.,       .
                                 .
                    Plaintiffs,  .
        v.                       .
                                 .
CITY OF DETROIT, MICHIGAN,       .
et al.,                          .
                    Defendants.  .
. . . . . . . . . . . . . . . .  .


                    BENCH OPINION
          BEFORE THE HONORABLE STEVEN W. RHODES
            UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:      Jones Day
                     By:  ROBERT H. HAMILTON
                     325 John H. McConnell Blvd., Suite 600
                     Columbus, OH  43215-2673
                     (614) 281-3848

                     Jones Day
                     By:  HEATHER LENNOX
                     222 East 41st Street
                     New York, NY  10017
                     (212) 326-3837

                     Jones Day
                     By:  BRUCE BENNETT
                     555 South Flower Street, Fiftieth Floor
                     Los Angeles, CA  90071-2452
                     (213) 243-2382

For Financial        Weil, Gotshal & Manges, LLP
Guaranty Insurance   By:  ALFREDO R. PEREZ
Company:             700 Louisiana Street, Suite 1600
                     Houston, TX  77002
                     (713) 546-5040

APPEARANCES (continued):

| For Erste Europaische Pfandbrief-und Kommunalkreditbank Aktiengesellschaft in Luxemburg, S.A.: | Ballard Spahr, LLP By: VINCENT J. MARRIOTT, III 1735 Market Street, 51st Floor Philadelphia, PA 19103-7599 (215) 864-8236 |
|---|---|
| For Syncora Holdings, Ltd., Syncora Guarantee, Inc., and Syncora Capital Assurance, Inc.: | Kirkland & Ellis, LLP By: RYAN BLAINE BENNETT WILLIAM E. ARNAULT 300 North LaSalle Chicago, IL 60654 (312) 862-3062 |
| For the Official Committee of Retirees: | Dentons By: SAM J. ALBERTS 1301 K. Street, NW Suite 600, East Tower Washington, DC 20005-3364 (202) 408-7004 |
| For AFSCME Sub-Chapter 98, City of Detroit Retirees: | Miller Cohen, PLC By: BRUCE A. MILLER 600 W. Lafayette Blvd., 4th Floor Detroit, MI 48226 (313) 964-4454 |
| For Retired Detroit Police and Fire Fighters Association and the Detroit Retired City Employees Association: | Silverman & Morris, PLLC By: THOMAS R. MORRIS 30500 Northwestern Highway, Suite 200 Farmington Hills, MI 48334 (248) 539-1330 |
| Also Present: | Members of the Official Committee of Retirees:<br><br>Terri Renshaw<br>Shirley Lightsey<br>Michael Karowski<br>Donald Taylor<br>Gail Wilson<br>Gail Turner<br>Robert Shinski<br>Edward McNeil |

```
Court Recorder:      Letrice Calloway
                     United States Bankruptcy Court
                     211 West Fort Street
                     21st Floor
                     Detroit, MI  48226-3211
                     (313) 234-0068

Transcribed By:      Lois Garrett
                     1290 West Barnes Road
                     Leslie, MI  49251
                     (517) 676-5092
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1    THE CLERK:  All rise.  Court is in session.  Please

2  be seated.  Case Number 13-53846, City of Detroit, Michigan,

3  and Case Number 14-04015, Official Committee of Retirees of

4  the City of Detroit, Michigan, versus City of Detroit,

5  Michigan.

6    THE COURT:  It appears that everyone is here.  Are

7  the members of the Official Committee of Retirees here?

8    MR. ALBERTS:  They are, your Honor.

9    THE COURT:  May I ask each of you to step forward in

10  turn and introduce yourselves?  Step forward all the way to

11  the lectern where we have a microphone.  It doesn't matter

12  the order.  Just go ahead.

13    MS. RENSHAW:  Good afternoon, your Honor.  Terri

14  Renshaw.  I'm chair of the Official Committee.

15    THE COURT:  Okay.  Whoa, whoa, whoa.  I've got a

16  couple questions for you.  And tell me what department you

17  retired from.

18    MS. RENSHAW:  The Law Department.

19    THE COURT:  The Law Department.

20    MS. RENSHAW:  Yes.

21    THE COURT:  What was your position there?

22    MS. RENSHAW:  At the time I retired, I was the

23  deputy corporation counsel.

24    THE COURT:  Okay.  Thank you.

25    MS. LIGHTSEY:  Good afternoon, your Honor.  Shirley

1    Lightsey.

2           THE COURT:  I remember you.  You testified; right?

3           MS. LIGHTSEY:  Last year, yes.

4           THE COURT:  Yes.  And remind me what your position

5    was with the city.

6           MS. LIGHTSEY:  I was a human resources manager for

7    Detroit Water and Sewerage Department.

8           THE COURT:  Thank you, ma'am.

9           MR. KAROWSKI:  Good afternoon, your Honor.  Michael

10   Karowski.  I retired from the city Law Department.  I was

11   there 15 years.  I was in the municipal affairs section most

12   of that time, and the last couple years I was in tax and

13   revenue collection.

14          THE COURT:  Um-hmm.  As a lawyer?

15          MR. KAROWSKI:  Yes.

16          THE COURT:  Yes.  Thank you, sir.

17          MR. TAYLOR:  Donald Taylor.

18          THE COURT:  Mr. Taylor, I remember you.  You also

19   testified, didn't you?

20          MR. TAYLOR:  Yes, sir.  I'm also the president of

21   the Retired Detroit and Police Fire Fighters.

22          THE COURT:  Thank you.

23          MS. WILSON:  Gail Wilson.  I receive retiree

24   benefits as a survivor.  My husband worked with the Detroit

25   Department of Transportation for 31 years.

```
1              THE COURT:  Okay.  Thank you, ma'am.

2              MS. TURNER:  Your Honor, Gail Turner, 33 years as a

3     Detroit police officer.  My last assignment was in charge of

4     risk management for the Detroit Police Department.

5              THE COURT:  Thank you.

6              MR. SHINSKI:  Good afternoon.  I'm Rob Shinski.  I'm

7     the treasurer with the Detroit Fire Fighters Association.  I

8     am the only active employee that's on the retiree committee.

9              THE COURT:  Do you have any insight into why you

10    were appointed even though you're not a retiree?

11             MR. SHINSKI:  Well, I am DROP'd your Honor, so I --

12             THE COURT:  You are what?

13             MR. SHINSKI:  I am DROP'd.

14             THE COURT:  What does that mean?  Help me out.

15             MR. SHINSKI:  That means that I receive a pension

16    check every month into a separate account, and I continue to

17    work.

18             THE COURT:  You get a pension and you work?

19             MR. SHINSKI:  It's called the DROP program, yes.  My

20    pension is frozen when I DROP'd.

21             THE COURT:  Okay.  We needn't delve into the

22    details.

23             MR. SHINSKI:  Okay.

24             THE COURT:  It's beyond our scope today.  Sir.

25             MR. MCNEIL:  Good afternoon, your Honor.  Edward
```

1    McNeil representing Sub-Chapter 98 AFSCME.  I retired from

2    the Parks and Recreation Department of the City of Detroit,

3    was a tree officer.

4            THE COURT:  Thank you.  Yes.

5            MS. RENSHAW:  We are missing one of our members

6    today.  The UAW representative is not -- did not attend our

7    meeting today.  That's why they're not here.

8            THE COURT:  Wendy Fields-Jacobs?

9            MS. RENSHAW:  That would be correct.

10           THE COURT:  Does she regularly participate?

11           MS. RENSHAW:  Someone from the UAW does regularly

12   participate.

13           THE COURT:  Oh, who is that?

14           MS. RENSHAW:  We, under our bylaws, are allowed to

15   have alternates and proxies, and it's either Niraj Ganatra or

16   Mike Nicholson.

17           THE COURT:  All right.  Thank you.  Thank you all.

18   You may be seated.  This matter is before the Court on two

19   motions here today.  The Court will first deal with the

20   motion we have referred to as the art motion.  This is a

21   motion filed by several of the city's creditors asking this

22   Court to appoint and direct the city to cooperate with a

23   committee of creditors to appraise the value of the art

24   collection of the Detroit Institute of Arts.  The proposed

25   goal of this art committee would be to establish an agreed

1    upon benchmark valuation of the art in advance of the plan

2    confirmation process.  It is argued that reaching a consensus

3    on the value of the art now will avoid contentious litigation

4    on this issue later at the plan confirmation stage.

5         The motion specifically requests that this Court

6    direct the city to meet with the art committee as soon as

7    possible to begin developing a strategy that considers

8    potential viable options to monetize the art, to respond to

9    any of the art committee's reasonable requests for

10   information regarding the art, and, three, ultimately file a

11   valuation report with the Court which hopefully would reflect

12   the agreed-upon value of the art.

13        The creditors rely primarily on Section 105(a) of

14   the Bankruptcy Code.  This section of the Bankruptcy Code

15   provides that the Court may issue any order, process or

16   judgment that is necessary or appropriate to carry out the

17   provisions of this title.  The creditors submit that the

18   creation of the art committee is necessary and appropriate in

19   this case due to the best interest of creditors requirement

20   for plan confirmation under Section 943(b)(7) of the

21   Bankruptcy Code.  Specifically -- or more specifically, they

22   argue that in order for the city to meet its burden under

23   Section 943(b)(7), it will need to establish by a

24   preponderance of the evidence that its plan of adjustment

25   maximizes the value of the art to enhance creditor

1   recoveries.

2          The city objects to the motion on several grounds.

3   It argues that the creditors misstate the standard for

4   judging whether the best interest of creditors requirement in

5   Section 943(b)(7) has been met; that the motion amounts to a

6   premature objection to a hypothetical plan of adjustment;

7   that the relief requested violates Section 941 and 904(1) and

8   (2) of the Bankruptcy Code; that Section 105 is not a proper

9   basis for the requested relief; that the requested relief is

10  unnecessary in light of the city's valuation efforts and with

11  the valuation efforts it undertook with Christie's; and,

12  finally, that granting the relief would not eliminate the

13  potential for litigation regarding the art or its value.

14         The Court concludes that the motion must be denied

15  because it lacks the authority to grant the requested relief.

16  As the city properly points out, Section 1102(a)(2) is the

17  only provision of the Bankruptcy Code which authorizes the

18  Court to appoint creditors' committees and then only, quote,

19  "when necessary to assure adequate representation of

20  creditors," close quote.  Here the creditors make only

21  passing reference or arguments that the art committee is

22  essential to ensure adequate representation of creditors.

23  They certainly have not made a sufficient showing of that

24  fact here.  While the Court does have broad authority --

25  excuse me -- under Section 105 of the Bankruptcy Code, it is

1  inappropriate to rely on Section 105 to circumvent the

2  express requirements of other provisions in the Bankruptcy

3  Code.  In other words, the creditors may not rely on Section

4  105 to evade the adequate representation of creditors

5  requirement of Section 1102(a)(2).

6        This is particularly true given the constitutional

7  restraints on the Court's authority imposed by Section 904 of

8  the Bankruptcy Code.  That section provides, quote,

9  "Notwithstanding any power of the court, unless the debtor

10 consents or the plan so provides, the court may not interfere

11 with (1) any of the political or governmental powers of the

12 debtor; (2) any of the property or revenues of the debtor; or

13 (3) the debtor's use or enjoyment of any income-producing

14 property."  In light of these sections and the limitations

15 they impose, a request like the present one must be closely

16 scrutinized.

17        The creditors assert that the relief requested would

18 not violate these provisions because the art committee would

19 merely facilitate the calculation of an agreed-upon value of

20 the art, which the Court, the city, and the creditors could

21 then rely upon when evaluating the city's proposed treatment

22 of all of its assets during the plan confirmation phase.

23 They assert that this will save time and resources during

24 that time period and, more importantly, that reaching a

25 consensus ahead of time will enable creditors to make

1 informed and reasoned objections to a proposed plan.

2          The Court must reject these arguments if only
3 because they do not address the concern that the Court lacks
4 authority under Section 105 to do what is requested here.
5 The Court further concludes, however, that even if it did
6 have the authority and discretion to grant this motion, that
7 discretion should not be exercised here.  Any such request
8 would be determined mostly by looking at what process should
9 be crafted to best advance the case.  The Court finds that
10 the ordinary and usual process is what should be followed
11 here.  In that process, after the city files a plan and the
12 parties file their objections, we can then determine an
13 appropriate sequencing of the issues.  One of the issues that
14 is quite likely to be raised is the legal issue of what is
15 the city's interest in the art, if any, and then whether the
16 city's plan meets the best interest of creditors or that test
17 in light of that interest.  Now, however, is not the time to
18 determine those issues or any plan confirmation issues.

19          It is noteworthy that the Michigan Attorney General
20 has asserted that the art collection of the Detroit Institute
21 of Arts is held by the city in a charitable trust and, thus,
22 no piece in the collection may be sold, conveyed, or
23 transferred to satisfy the city's debts or obligations.  This
24 is a serious argument.  If that position is accepted by the
25 Court, there would, of course, be no need to appraise the

1   art.

2       But, of course, the issue of what to do with the art

3   is also tied up with feasibility.  Even if the city does have

4   control over the art and its disposition, the issue there

5   would be whether the city's long-term revitalization and the

6   feasibility of its plan would be impaired by any provision in

7   the plan that proposes a disposition of the art even for

8   substantial value.  Again, now is not the time to determine

9   any of these issues or to engage in any piecemeal litigation

10  of a potential plan objection to potential plan provisions.

11  These issues can only be determined in the broad context of a

12  comprehensive process that systematically addresses and

13  resolves all plan objections.  For this reason, the Court

14  finds that even if it did have the discretion to appoint an

15  art committee, it would still deny the motion.

16      Now, the Court is not totally unsympathetic to the

17  creditors' concerns.  The Court encourages the city to be

18  forthcoming with information regarding the art and its value

19  and the interest it has in them, and, indeed, it has offered

20  to be forthcoming here in court today.  The Court agrees,

21  however, with the city that the publication of Christie's

22  report in part went a long way towards addressing these

23  concerns.

24      At this point, the Court must also emphasize a point

25  to the creditors which it stressed in its eligibility

1  decision.  Selling assets without more will not solve the

2  city's financial problems.  Creditors would be much better

3  served by working with the city to solve its long-term

4  structural financial problems rather than on focusing on the

5  treatment or disposition of one particular asset, especially

6  an asset that is at least arguably essential for the city's

7  long-term revitalization prospects.  Accordingly, the motion

8  is denied.

9      Turning now to the motion to dismiss the adversary

10  proceeding, the Court must report that it is unable to

11  resolve this motion at this time.  It is going to take a much

12  deeper analysis of the Stockton decision and the Orange

13  County decision to determine whether this suit is barred by

14  Section 904.  The Court feels the strong need to exercise

15  extreme care with the legal issue in this case that the city

16  raises because it does appear to the Court that the potential

17  for irreparable harm, as asserted by the plaintiffs here, is

18  significant.  Of course, there is also merit to the city's

19  argument that in the absence of a recognizable claim -- that

20  is, a claim with potential merit -- no amount of irreparable

21  harm justifies a preliminary injunction under law.

22  Accordingly, the Court will adjourn this hearing to give a

23  decision next Wednesday -- that's January 28th -- at 10 a.m.

24  The parties should be prepared -- Tuesday.  Tuesday, the

25  28th?  Tuesday, the 28th -- sorry -- at 10 a.m.  The parties

1   should be prepared, however, at that time to proceed with an
2   evidentiary hearing on a motion for preliminary injunction
3   should the Court deny the motion.

4           In the meantime, the Court strongly implores the
5   parties to negotiate the OPEB issues in good faith and with
6   the sense of urgency that it deserves.  At the same time,
7   however, the Court must give one further word of caution.
8   There are, as I stated earlier, 37 days until the deadline
9   for the city to file a plan of adjustment, so this is a good
10  opportunity for the Court to express to all of you what it
11  expects in a plan.  Of course -- well, Section 943 and 1129
12  contain several requirements for the confirmation of a plan,
13  and, of course, all of these requirements are important, and
14  it will be up to the creditors to determine which, if any, of
15  these requirements to assert in objecting to the confirmation
16  of the city's plan.

17          There is, however, one requirement that is so
18  crucial that the Court will insist on proof of it even if no
19  one objects on this ground.  That requirement is the
20  requirement that the plan must be feasible.  A plan that is
21  not feasible will not meet the city's needs nor would it be
22  in the best interest or any interest of the creditors or the
23  residents of the city.  The city should, therefore, be fully
24  prepared for this issue at confirmation, and equally
25  importantly all parties must fully accept this premise in

1    their plan negotiations.  The Court must be very plain about

2    this.  Last week when the Court denied the city's motion to

3    assume the forbearance agreement, it said, and I quote, "The

4    Court stated earlier and states again that it will not

5    participate in or permit the city to perpetuate the very

6    kinds of hasty and imprudent financial decision-making that

7    led to the disastrous swaps and COPs transactions.  Those

8    practices have already caused great harm to the city's

9    creditors and to its citizens.  In the Court's view, one goal

10    of this Chapter 9 case is to end these practices so that the

11    city can truly recover from its past mistakes and move

12    forward, and the Court intends to conduct itself accordingly.

13    In this case parenthetically -- if this case needs any

14    further clarification, let me state that the Court intends to

15    carefully scrutinize the feasibility of any plan of

16    adjustment," close quote.

17         The Court later stated, quote, "In its eligibility

18    opinion, the Court found that the city had entered into a

19    series of bad deals to solve its financial problems.  The law

20    says that when the city filed this bankruptcy, that must

21    stop.  It also says that this Court must be the one to stop

22    it, if necessary.  It is necessary here.  Accordingly, that

23    motion is denied," close quote.

24         Everyone here must understand that these comments

25    were not directed only to the financial creditors.  They were

16

1   directed to all creditors and, indeed, to the city, all

2   creditors, including the Retiree Committee.  That's why the

3   Court ordered the members of the Retiree Committee and its

4   advisors here this afternoon.  The Court will not permit the

5   confirmation of the city's plan to be another bad deal like

6   all the previous ones the city entered into with which we are

7   now all too familiar.  The plan of adjustment must be

8   feasible, and at the confirmation hearing, the Court expects

9   the city to prove feasibility through competent and credible

10  testimony.  Feasibility is straightforward to define.  It

11  simply means that the city can pay not only its ongoing

12  operating obligations but also its revitalization expenses

13  and its plan obligations.  Although feasibility is easy to

14  define, it will undoubtedly be very challenging for the city

15  to actually implement.  Just last month, the Court found as a

16  fact that the city is service-delivery insolvent, meaning it

17  does not have enough revenue to pay for basic services.  To

18  meet the test of feasibility, the city will have to prove

19  that it has or will overcome that structural cash flow

20  insolvency and much more.

21        Plan feasibility may well require a fundamental and

22  profound change in the city's pension plan or in the city's

23  healthcare obligations or in the city's collective bargaining

24  agreements or in its obligations to its employees.  These are

25  issues that must be negotiated in good faith now with all of

1    the creativity that counsel and the other advisors in the

2    case can muster and all with a view toward paying creditors

3    what the city can pay within a feasible plan.  Now is not the

4    time for defiant swagger or for dismissive pound-the-table,

5    take-it-or-leave-it proposals that are nothing but a one-way

6    ticket to Chapter 18, and this is bankruptcy jargon for a

7    second Chapter 9.  To repeat, the Court will only confirm a

8    plan that the city shows is feasible.  The Court will not

9    confirm a plan just to get a plan confirmed and to get the

10   case done.  The city's successful implementation of a plan

11   and, indeed, its successful long-term revitalization depends

12   on many variables and conditions and events.  Many of them

13   are out of its control and out of our control, but the one

14   variable that we do have control over is the plan.  If the

15   plan is feasible because it promises more to creditors than

16   the city can reasonably be expected to pay, it will fail, and

17   history will judge each and every one of us accordingly.

18   This is an enormous responsibility.  Please use the next 37

19   days wisely and with that admonition in mind.  Anything

20   further?

21          MR. BRUCE BENNETT:  Nothing, your Honor.

22          MR. ALBERTS:  Your Honor, in light of the Court's

23   ruling, I just wanted to see if there was a suggested path

24   forward for the hearing and whether the Court would -- wishes

25   to perhaps abridge some of the testimony next Tuesday.  Last

1  night we received the plaintiff's -- I'm sorry -- the city's

2  opposition to the preliminary injunction.  There were four

3  declarations attached to it.  We have some issues with things

4  that have been said there in light of our request for prior

5  information.  We are going to seek to depose those four

6  individuals, but I am wondering, given also the city's

7  possible desire -- and I don't know if this is --

8            THE COURT:  Let me stop you there.

9            MR. ALBERTS:  Yeah.

10            THE COURT:  I don't want any depositions between now

11  and the preliminary injunction hearing.  I want you to spend

12  your time negotiating.

13            MR. ALBERTS:  Okay.  Well, we are at a disadvantage

14  in the hearing.  My concern is that if we do not --

15            THE COURT:  Do the best you can to prove your case,

16  and the city will do the best it can to prove its case, but

17  much more important than spending your time preparing for

18  this preliminary hearing, which, by the way, you've had

19  months to do, is negotiating.

20            MR. ALBERTS:  Well, actually, your Honor --

21            THE COURT:  I can't implore that to you strongly

22  enough.

23            MR. ALBERTS:  Your Honor, our door has been open.

24  Our attempts have been constant.

25            THE COURT:  Good.  Keep them up until next Tuesday.

1    MR. ALBERTS:  We will attempt that, but, your Honor,

2    there have been things alleged in the declarations that we

3    have asked for for months repeatedly.  Maybe what we will do

4    is file a motion to strike, and that will be the better way

5    to deal with it.  I just don't -- I just don't --

6    THE COURT:  It's not for me to tell you what to file

7    or not file, but I am strongly suggesting to you that a much

8    more effective route to get where you and your clients need

9    to go in the long term is to start with your negotiations

10   tomorrow morning at nine o'clock.  Anybody else have

11   anything?  All right.  We'll be in recess.

12   THE CLERK:  All rise.  Court is adjourned.

13   (Proceedings concluded at 3:25 p.m.)

INDEX


WITNESSES:

        None

EXHIBITS:

        None


        I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.


/s/ Lois Garrett                    January 25, 2014
_____        _____
Lois Garrett