# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| | ) | Hon. Steven W. Rhodes |
| Debtor. | ) | |
| | ) | |

## MOTION OF THE DETROIT RETIREMENT SYSTEMS TO CERTIFY THIS COURT'S ELIGIBILITY RULING FOR DIRECT APPEAL TO THE SIXTH CIRCUIT COURT OF APPEALS

Pursuant to 28 U.S.C. § 158(d)(2) and Rule 8001(f)(3) of the Federal Rules of Bankruptcy Procedure, the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit (together, the "Retirement Systems") respectfully move to certify this Court's decision regarding the City's eligibility for relief under Chapter 9 of the United States Bankruptcy Code for a direct appeal to the U.S. Court of Appeals for the Sixth Circuit. The Court held that the City of Detroit is eligible to be a Chapter 9 debtor and can seek to discharge accrued pension benefits in a plan of adjustment. The Court's eligibility ruling is exceptionally important and warrants certification for a direct appeal to the Sixth Circuit.

10671307.4 14893/165083

## I. PRELIMINARY STATEMENT

This case is the largest municipal bankruptcy in American history. By its own account, the City has approximately $18 billion in debt and more than 100,000 creditors that include over 32,000 active and retired City employees who participate in the Retirement Systems. Swift resolution of whether the City may proceed in Chapter 9 bankruptcy is of paramount importance to the City, the State, the public, and those municipal employees and retirees whose livelihoods depend on the accrued pension benefits that they earned and that the City seeks to discharge in bankruptcy. The Retirement Systems thus seek to certify this Court's eligibility ruling for a direct appeal to the Sixth Circuit under 28 U.S.C. § 158(d)(2).

This Court has stressed that expeditiously resolving the question of the City's eligibility is nothing short of a "necessity" and is manifestly in "the public's interest." Op. and Order Denying Mot. to Stay Proceedings Pending Determination of Mot. to Withdraw the Reference at 23, 24 (Doc. 1039). The Court explained that "the consequences of extending the eligibility process . . . are truly beyond irreparable and bordering on the incomprehensible," because "the creditors' many eligibility objections create substantial uncertainty regarding the City's ability to achieve its goal of adjusting its debt through Chapter 9." *Id.* at 24. "Until that uncertainty is removed," the Court explained, "the City's progress

2

## I. PRELIMINARY STATEMENT

This case is the largest municipal bankruptcy in American history. By its own account, the City has approximately $18 billion in debt and more than 100,000 creditors that include over 32,000 active and retired City employees who participate in the Retirement Systems. Swift resolution of whether the City may proceed in Chapter 9 bankruptcy is of paramount importance to the City, the State, the public, and those municipal employees and retirees whose livelihoods depend on the accrued pension benefits that they earned and that the City seeks to discharge in bankruptcy. The Retirement Systems thus seek to certify this Court's eligibility ruling for a direct appeal to the Sixth Circuit under 28 U.S.C. § 158(d)(2).

This Court has stressed that expeditiously resolving the question of the City's eligibility is nothing short of a "necessity" and is manifestly in "the public's interest." Op. and Order Denying Mot. to Stay Proceedings Pending Determination of Mot. to Withdraw the Reference at 23, 24 (Doc. 1039). The Court explained that "the consequences of extending the eligibility process . . . are truly beyond irreparable and bordering on the incomprehensible," because "the creditors' many eligibility objections create substantial uncertainty regarding the City's ability to achieve its goal of adjusting its debt through Chapter 9." *Id.* at 24. "Until that uncertainty is removed," the Court explained, "the City's progress

in recovering its financial, civic, commercial, and cultural life and in revitalizing itself will likely be slowed, if not stalled entirely." *Id.* Moreover, as this Court stated in its oral ruling at the December 3 hearing, the Tenth Amendment challenges to the City's eligibility are ripe for decision, and immediate resolution of those challenges is likely to expedite resolution of the entire case.

The City likewise has recognized the urgent need to swiftly resolve whether it is eligible to file for bankruptcy. The City has stated that "a determination of its eligibility to be a chapter 9 debtor is a threshold condition to achieving [its] goals" of proposing, confirming, and implementing a plan of adjustment. City's Objection to Mot. of Official Retiree Comm. to Stay Deadlines and Hearings Related to Eligibility Proceedings at 1 (Doc. 925). The City thus "intends to complete the chapter 9 process as promptly as possible for the benefit of all parties in interest." *Id.*

This Court's eligibility ruling is a paradigmatic case for immediate appeal to the Sixth Circuit. The City's eligibility to file for Chapter 9 bankruptcy is undeniably of great "public importance." 28 U.S.C. § 158(d)(2). An immediate appeal of the City's eligibility would "materially advance" the progress of this case. *Id.* The Court's ruling directly conflicts with an earlier judgment of a Michigan state court concerning the effect of the Pensions Clause on the City's ability to discharge accrued pension benefits in bankruptcy. *See id.* The Court's

3

ruling concerning the Michigan Pensions Clause conflicts with the position of the Michigan Attorney General, the state's chief legal officer, who explained that "Michigan's constitutional protection of pensions is broader than that afforded to ordinary contracts," and that the Pensions Clause is thus "an impermeable imperative" "not subject to discharge by exigency including a Chapter 9 proceeding under the federal Bankruptcy Code." Doc. 481 at 13, 15. And the eligibility issue presents significant questions of federal and state law as to which there is "no controlling decision" of the Sixth Circuit or U.S. Supreme Court. 28 U.S.C. § 158(d)(2).

The Sixth Circuit eventually will decide whether the City is eligible to be a Chapter 9 debtor. The only question is timing. Because time is manifestly of the essence, this Court should certify its eligibility ruling for an immediate appeal to the Sixth Circuit.

## II.    FACTUAL BACKGROUND

The Pensions Clause of the Michigan Constitution provides that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Mich. Const. art. IX, § 24. More than 32,000 active and retired City employees participate in the Retirement Systems and are entitled to receive accrued pension benefits. *See* Doc. 519 at 4. These

10671307.4 14893/165083

employees and retirees rely upon their accrued pension benefits for their livelihoods. *See id.* Many retirees rely *entirely* upon their accrued pension benefits, as they do not qualify for Social Security benefits or any benefits through the Employee Retirement Income Security Act (ERISA) or the Pension Benefit Guaranty Corporation, which apply only to private pensions. *See id.* at 4-5 & n.2.

In December 2012, the Michigan Legislature enacted PA 436, the Local Financial Stability and Choice Act, M.C.L. §§ 141.1541-.1575. PA 436 authorizes the Governor to appoint an Emergency Manager for the City, and purports to authorize the Emergency Manager—after requesting and receiving the Governor's permission—to file for bankruptcy on behalf of the City under Chapter 9 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* *See* M.C.L. §§ 141.1549, 141.1558. The people of Michigan overturned PA 436's nearly identical predecessor statute by referendum in November 2012. *See City of Pontiac Retired Employees Ass'n v. Schimmel*, 726 F.3d 767, 770 (6th Cir. 2013), *reh'g granted and op. vacated* (Nov. 8, 2013). But unlike its predecessor, PA 436 contains an appropriation provision and therefore is not subject to challenge by the people in a referendum. *See id.*

Kevyn Orr has served as the City's Emergency Manager pursuant to PA 436 since March 28, 2013, the statute's effective date. *See* M.C.L. § 141.1549(10). On June 14, 2013, the Emergency Manager issued a Proposal for

5

Creditors proposing, among other things, to dramatically cut accrued pension benefits. Doc. 11, Ex. A. On July 16, 2013, the Emergency Manager recommended to the Governor that the City file for Chapter 9 bankruptcy. Doc. 11, Ex. J. On July 18, 2013, the Governor purported to authorize the Emergency Manager to file for Chapter 9 bankruptcy on behalf of the City. Doc. 11, Ex. K.

In the meantime, four individual participants in the Retirement Systems sued the State of Michigan, the Governor, and the State Treasurer in the Circuit Court for Ingham County, Michigan, challenging the constitutionality of PA 436 as applied to permit the City to diminish or impair accrued pension benefits through Chapter 9 bankruptcy in violation of the Pensions Clause. *See Gracie Webster et al. v. State of Michigan et al.*, Case No. 13-734-CZ (Mich. Cir. Ct. filed July 3, 2013). On July 15, 2013, the *Webster* plaintiffs sought a declaration and injunction on an expedited basis barring the City from proceeding in Chapter 9 bankruptcy in a manner that diminishes or impairs accrued pension benefits. Doc. 519, Ex. 2.

On July 18, 2013, the City filed its Voluntary Petition under Chapter 9. Doc. 1. The City identified pension obligations as the City's second largest debt, supposedly totaling $3.5 billion. Doc. 205. And the City unequivocally admitted that it "intends to seek to diminish or impair the Accrued Financial Benefits of the participants in the Retirement Systems through this Chapter 9 Case." City's

Objections and Resps. to Retirement Sys.' First Reqs. for Admis. at 12 (Doc. 849).

On July 19, 2013, one day after the City filed its Voluntary Petition, the State Court in *Webster* issued its final judgment holding that "PA 436 is unconstitutional and in violation of [the Pensions Clause] to the extent that it permits the Governor to authorize the emergency manager to proceed under chapter 9 in any manner which threatens to diminish or impair accrued pension benefits." Doc. 519, Ex. 2. The *Webster* court accordingly held that "[t]he Governor is prohibited by [the Pensions Clause] from authorizing the emergency manager under PA 436 to proceed under Chapter 9 in a manner which threatens to diminish or impair accrued pension benefits, and any such action by the Governor is without authority and in violation of [the Pensions Clause]." *Id.*

In this case, numerous creditors of the City objected to the City's eligibility. The Retirement Systems argued, among other things, that Michigan law does not authorize the City to seek the discharge of accrued pension benefits under Chapter 9. *See* Docs. 519, 1166, 1472. The City's two major public employee unions—AFSCME and the UAW—and the Official Committee of Retirees appointed in this case objected on the same and other grounds. *See* Docs. 438, 506, 805.

On December 3, 2013, this Court ruled from the bench that the City is eligible to be a Chapter 9 debtor. The Court upheld the constitutionality of

7

Chapter 9 and PA 436, and further held that the Pensions Clause provides no greater protection for pension benefits than that afforded to ordinary contracts. The Court also held that the *Webster* judgment is null and void, as it was entered in violation of the automatic stay. The court further found that the City did not negotiate in good faith with its creditors before the filing, but that negotiations would have been impracticable.

On December 4, 2013, the Retirement Systems timely filed a Notice of Appeal. (Doc. 1930). The appeal has not been docketed with the district court.

### III. QUESTIONS PRESENTED

The Retirement Systems seek to certify the following issues on appeal:

1.  Under 11 U.S.C. § 109(c)(2), is the City "specifically authorized . . . by State law" to be a Chapter 9 debtor, even though the Pensions Clause of the Michigan Constitution bars the City from discharging accrued pensions benefits in bankruptcy?

2.  Does the State Court's final judgment in *Webster* preclude the City from re-litigating whether PA 436 violates the Pensions Clause by purportedly authorizing the City to proceed in Chapter 9 in a manner that diminishes or impairs accrued pension benefits?

3.  Do the Tenth Amendment, the Fifth Amendment Takings Clause, and Fourteenth Amendment substantive due process preclude the application of 11 U.S.C. § 109(c)(2) to a municipal debtor whose discharge of accrued pension obligations would violate the State's constitution?

4.  Under 11 U.S.C. §109(c)(5), is the City excused as a matter of law from the requirement of "good faith" negotiation on the

10671307.4 14893/165083

theory that the large number of creditors purportedly makes such negotiations impracticable?

## IV. RELIEF SOUGHT

The Retirement Systems request certification for a direct appeal to the Sixth Circuit to seek reversal of this Court's holding that the City is eligible to be a Chapter 9 debtor so as to permit the discharge of accrued pension obligations.

## V. REASONS FOR A DIRECT APPEAL TO THE SIXTH CIRCUIT

This Court "shall" certify its "judgment, order, or decree" for a direct appeal to the Sixth Circuit if the judgment, order, or decree [1] "involves a question of law as to which there is no controlling decision of the [Sixth Circuit] or of the Supreme Court of the United States, *or* [2] involves a matter of public importance," *or* [3] "involves a question of law requiring resolution of conflicting decisions," "*or* [4] an immediate appeal from the [order] may materially advance the progress of the case or proceeding in which the appeal is taken." 28 U.S.C. §§ 158(d)(2)(A)(i)-(iii), (d)(2)(B)(ii) (emphases added). Congress enacted these provisions with the "twin purposes . . . to expedite appeals in significant cases and to generate binding legal precedent in bankruptcy, whose caselaw has been plagued by indeterminacy." *In re Pacific Lumber Co.*, 584 F.3d 229, 242-43 (5th Cir. 2009) (citing H. Rep. No. 19-31, pt. 1, 109th Cong. 1st Sess. 148-49 (2005)).

This exceptionally significant case calls out for a direct appeal to the Sixth Circuit. The Court's eligibility ruling is final for purposes of appeal, and the

9

Court's holding that the City is eligible to be a Chapter 9 debtor and can seek to reduce constitutionally guaranteed accrued pension benefits in a plan of adjustment readily meets each of the statutory criteria for certification under section 158(d)(2).

### A. The Court's Eligibility Ruling Is Final for Purposes of Certification for a Direct Appeal to the Sixth Circuit

Section 158(d)(2) authorizes a bankruptcy court or a district court to certify to the court of appeals any appeal of a bankruptcy court's "judgment, order, or decree" over which the district court has jurisdiction under section 158(a). 28 U.S.C. § 158(d)(2)(A). Section 158(a) in turn grants a district court jurisdiction to hear appeals from bankruptcy courts' "final judgments, orders and decrees," and, "with leave of the court, from . . . interlocutory orders and decrees." *Id.* § 158(a).

Here, the Court's eligibility ruling is final and therefore subject to certification for a direct appeal to the Sixth Circuit under section 158(d)(2). The "concept of finality applied to appeals in bankruptcy is broader and more flexible than the concept applied in ordinary civil litigation." *Millers Cove Energy Co. v. Moore (In re Millers Cove Energy Co.)*, 128 F.3d 449, 451 (6th Cir. 1997). "In bankruptcy proceedings, we consider the finality requirement in a more pragmatic and less technical way . . . than in other situations." *In re Veltri Metal Prods., Inc.*, 189 F. App'x 385, 387 (6th Cir. 2006) (quotation omitted). For a "bankruptcy court order to be final within the meaning of § 158(d), the order need

10

not resolve all the issues raised by the bankruptcy; but *it must completely resolve all of the issues pertaining to a discrete claim, including issues as to proper relief.*" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 3 F.3d 49, 53 (2d Cir. 1993) (emphasis in original).

The Court's eligibility ruling is plainly final. The Court resolved all of the issues pertaining to whether the City is eligible to be a Chapter 9 debtor under section 109(c)(2) of the Bankruptcy Code. Following motion practice, briefing, discovery, a one-day hearing on individual objections, three days of counsel argument, and a nine-day evidentiary hearing, the court rejected more than 100 objections to the City's eligibility and ruled that the City may proceed as a Chapter 9 debtor without violating either the Michigan or United States Constitutions. Because the Court's ruling ended the litigation of the City's eligibility, the ruling is final for purposes of appeal.

In 2005, Congress amended section 921 of the Bankruptcy Code to clarify that the voluntary petition filed in a Chapter 9 case does not constitute the "order for relief," unlike voluntary petitions filed under other chapters. 6-921 Collier on Bankruptcy ¶ 921.04[5]. Instead, the bankruptcy court must first hear and decide any objections to the Chapter 9 petition and only then, if it overrules the objections to eligibility, it "shall order relief under this chapter." 11 U.S.C.

10671307.4 14893/165083

§ 921(d). In rejecting objections to the City's eligibility, the Court indicated it will enter the "order for relief."

A bankruptcy court's "order for relief" is "a conclusive determination of the debtor's status in bankruptcy." *Healthtrio, Inc. v. Centennial River Corp. (In re Healthtrio, Inc.)*, 653 F.3d 1154, 1157 (10th Cir. 2011) (citation and internal quotation marks omitted); *see also* 2-301 Collier on Bankruptcy ¶ 301.07 (similarly describing the effect of an "order for relief").

Like petitions under Chapter 9, involuntary petitions under Chapters 7 or 11 may also be contested *before* entry of an order for relief. If the bankruptcy court overrules an objection to the involuntary petition, the court "shall order relief," 11 U.S.C. § 303(h) (emphasis added), just as the court "shall order relief" under section 921(d). It is well-established that an order for relief entered with respect to an involuntary petition is a final order for purposes of appeal, because it is a "final adjudication of the debtor's bankruptcy status." *In re Healthtrio*, 653 F.3d at 1160 (10th Cir. 2011) (citation and internal quotation marks omitted). The Eighth and Ninth Circuits concur that the entry of an order for relief after a contested involuntary petition is a final, appealable order, as does the Sixth Circuit Bankruptcy Appellate Panel. *McGinnis v. Jenkins & Assocs., Inc. (In re McGinnis)*, 296 F.3d 730, 731 (8th Cir. 2002); *Mason v. Integrity Ins. Co. (In re*

12

*Mason)*, 709 F.2d 1313, 1315 (9th Cir. 1983); *National City Bank v. Troutman Enters. (In re Troutman Enters.)*, 253 B.R. 8, 10 (6th Cir. B.A.P. 2000).

Before the 2005 amendment to section 921(d) of the Code, some courts concluded that an order resolving Chapter 9 eligibility issues was not a "final" order. These cases are no longer good law. In *Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs)*, 339 F.3d 782 (9th Cir. 2003), the Ninth Circuit dismissed an appeal from an order denying a creditor's objection to a Chapter 9 petition on the ground of "bad faith," stating that it was not a final order. The court of appeals attempted to distinguish the involuntary petition cases discussed above on the grounds that the involuntary "petition is treated like a complaint that must be answered by the debtor, discovery is available, a hearing may be held in which evidence is taken, the court must make findings of fact and conclusions of law" before entry of the order for relief. *Id.* at 790; *see also In re Greene Cnty. Hosp.*, 835 F.2d 589, 595-96 (5th Cir. 1988) (holding that bankruptcy court's eligibility ruling in Chapter 9 case was not final for purposes of appeal to court of appeals). The 2005 amendment to section 921(d) clarified that this, indeed, is precisely the procedure to be used for Chapter 9 cases as well. Here, this Court will have entered a final, appealable "order for relief" under the amended, post-2005 version of section 921(d) after conducting a

full-blown trial process before denying the more than 100 objections to the City's eligibility.

Moreover, unlike the *Desert Hot Springs* case, the Court's order for relief here is the final, dispositive order on the issues of whether the City was "specifically authorized . . . by State law" to file for bankruptcy. No further proceedings will be held on this subject during the bankruptcy case.

Even if the Court's order for relief could somehow be viewed as interlocutory, the Court nonetheless can and should grant certification for a direct appeal to the Sixth Circuit. Under Bankruptcy Rule 8003(d), if a bankruptcy court certifies an interlocutory order for a direct appeal to the court of appeals under Section 158(d)(2) without leave first being granted to appeal to the district court under Section 158(a), "the authorization of a direct appeal by a court of appeals under 28 U.S.C. §158(d)(2) shall be deemed to satisfy the requirement for leave to appeal." Fed. R. Bankr. P. 8003(d). In short, while the Court's eligibility ruling is final for purposes of appeal, even if the ruling were interlocutory, certification for a direct appeal to the Sixth Circuit still would be warranted.

## B. The Court's Eligibility Ruling Meets the Criteria for Certification of a Direct Appeal to the Sixth Circuit

The Court's eligibility ruling satisfies each of the criteria for certifying a direct appeal to the Sixth Circuit: (1) the City's eligibility to be a Chapter 9 debtor is of immense public importance; (2) a direct appeal to the Sixth Circuit

14

will materially advance the progress of this case; (3) the Court's decision conflicts with the State Court's decision in *Webster*; and (4) the eligibility issue presents legal questions as to which there is no controlling decision of the Sixth Circuit or the U.S. Supreme Court.

### 1. The Eligibility Issue Is Overwhelmingly Important to the Public

Certification is appropriate under the "public importance" prong of section 158(d)(2) if a decision involves either "important legal issues or important practical ramifications." *In re Qimonda*, 470 B.R. 374, 386 (E.D. Va. 2012); *see also Pacific Lumber*, 584 F.3d at 242 (allowing direct appeal based on "prominence of this case to the citizens of California, of Humboldt County, and of the town of Scotia and by the plan's effect on 'one of the nation's most ecologically diverse forests'"). Likewise, "a court may find a matter to be of public importance if it could impact a large number of jobs or other vital interests in the community." 5 Collier on Bankruptcy ¶ 5.06[4][b] (16th ed. 2013).

The question of the City's eligibility to be a Chapter 9 debtor is manifestly a matter of public interest. This case is the largest and most prominent Chapter 9 bankruptcy ever filed. The local and national press have extensively covered both the case itself and the City's and State's attempt to eviscerate the constitutionally guaranteed accrued pension benefits of the more than 32,000 participants in the Retirement Systems. The question of the City's eligibility is easily among the

15

10671307.4 14893/165083
13-53846-tjt Doc 2599-3 Filed 02/04/14 Entered 02/04/14 19:50:29 Page 15 of 32
13-53846-swr Doc 1983 Filed 12/09/13 Entered 12/09/13 19:56:31 Page 15 of 32

most important issues—if not the single most important issue—in any federal or state court proceeding in the State of Michigan today. As stated, this Court thus observed that the question of the City's eligibility is so critical that "the consequences of extending the eligibility process . . . are truly beyond irreparable and bordering on the incomprehensible." Doc. 1039 at 24.

Resolution of the eligibility issue will have life-changing consequences for current and former police officers, firefighters, teachers, librarians, government clerks, public works employees, and transportation workers, among others. More than 32,000 active and retired employees of the City participate in the Retirement Systems and critically depend on their accrued pension benefits as an essential pillar of their livelihoods. Unlike private employees, public employees are not covered by ERISA or the Pension Benefit Guaranty Corporation. And the Detroit police and fire department retirees who have often dedicated their entire working lives to the City are not covered by Social Security. For these retirees, there is no federal insurance program. When the City announced its intention to file for bankruptcy, the unthinkable happened to more than 32,000 City employees and retirees whose lives depend on accrued pension benefits. Whether the City can eliminate accrued pension benefits through the expediency of bankruptcy is a matter of great public importance to thousands of pensioners and to the general public.

10671307.4 14893/165083

The question of the City's eligibility also has important ramifications for future Chapter 9 cases. Like Detroit, other cities in Michigan also have unfunded pension obligations. If the City is eligible to be a Chapter 9 debtor and seek to discharge its pension debts, other Michigan cities may follow suit. The pension benefits of all municipal employees and retirees in the State of Michigan are at risk. In addition, at least seven other states have state constitutional provisions comparable to the Pensions Clause for protecting public pension benefits, including New York, Illinois, Texas, Louisiana, Arizona, Alaska and Hawaii. A precedential decision from the Sixth Circuit on the issues concerning the City's eligibility would be controlling within the four-state Sixth Circuit and persuasive in other jurisdictions.

### 2. A Direct Appeal of the Eligibility Issue to the Sixth Circuit Will Materially Advance the Progress of this Case

A direct appeal to the Sixth Circuit would materially advance the progress of this case. Courts have permitted an immediate appeal where, as here, a determination of the issue necessarily would influence the debtor's ability to confirm a plan. For example, in *In re Ransom*, 380 B.R. 809 (9th Cir. B.A.P. 2007), the bankruptcy appellate panel granted certification because confirmation of the individual debtor's plan turned on whether he could deduct a vehicle ownership cost in calculating "projected disposable income." *Id.* at 813; *see also In re Amaravathi Ltd. P'ship*, Bankr. No. 09-32754, Civ. No. 09-1908, 2009 WL

10671307.4 14893/165083

2342749, at *1 (S.D. Tex. July 29, 2009) (granting certification because a decision on a debtor's right to use rents would form the basis for the debtor's reorganization and be relevant to plan confirmation); *In re Pliler*, 487 B.R. 682, 704 (Bankr. E.D.N.C. 2013) (granting certification in order to "reduce any longer delay of confirmation of the plan and distributions to creditors").

The threshold question of whether the City is eligible to be a Chapter 9 debtor is pivotal. If the Retirement Systems succeed in their appeal, the City may not seek to discharge pension benefits in this case and any plan presumably would impose greater cuts upon other creditors.

Time is of the essence in this case. In pressing forward with the eligibility briefing and evidentiary hearing on an aggressive schedule, both the City and this Court have committed to, and have emphasized the importance of, a prompt determination of whether the City is eligible to be a Chapter 9 debtor. And because section 921(e) of the Bankruptcy Code prohibits a stay of this case pending appeal of the eligibility determination, this appeal must proceed expeditiously to avoid any potential prejudice to parties harmed by the Court's eligibility decision.

In these circumstances, it is beyond reasonable dispute that a direct appeal to the Sixth Circuit would materially advance the progress of this case. Given the

public importance of the issue, this appeal should proceed directly to the Sixth Circuit, as Congress envisioned in section 158(d)(2).

### 3. The Court's Eligibility Ruling Conflicts With the Michigan Circuit Court's Decision in *Webster*

The question of the City's eligibility to be a Chapter 9 debtor also involves conflicting decisions of this Court and the State Court in *Webster*. That conflict is an independent ground to certify the question for a direct appeal to the Sixth Circuit under section 158(d)(2)(A)(ii).

In *Webster*, the State Court held that "PA 436 is unconstitutional and in violation of [the Pensions Clause] to the extent that it permits the Governor to authorize the emergency manager to proceed under Chapter 9 in any manner which threatens to diminish or impair accrued pension benefits." Doc. 519, Ex. 2. The court in *Webster* further held that "[t]he Governor is prohibited by [the Pensions Clause] from authorizing the emergency manager under PA 436 to proceed under Chapter 9 in a manner which threatens to diminish or impair accrued pension benefits, and any such action by the Governor is without authority and in violation of [the Pensions Clause]." *Id.* The State Court concluded that "[b]y authorizing the Emergency Manager to proceed under Chapter 9 to diminish or impair accrued pension benefits, Defendant Snyder acted without authority under Michigan law and in violation of [the Pensions Clause]." *Id.*

10671307.4 14893/165083

In direct conflict with *Webster*, this Court held that the automatic stay rendered the post-petition judgment void. This Court further held that it had exclusive jurisdiction over the question of eligibility and did not have to defer to the *Webster* judgment. That holding warrants certification because the collateral effect of the decision is another dispositive issue on the question of the City's eligibility to discharge accrued pension debt in bankruptcy.

### 4. The Court's Exemption Ruling under § 109(c)(5) Also Warrants Immediate Review

Section 109(c)(5)(A) and (B) require that the City negotiate in "good faith" with its creditors in an effort to achieve a prepetition agreement on a plan of adjustment. In its oral ruling on December 3, this Court held that the City did not in fact negotiate in good faith, which should have doomed its petition. However, the Court excused the City's bad faith on the ground that the City has too many creditors to enable it to negotiate effectively as a matter of law. This ruling, if upheld, completely eviscerates subsections (A) and (B) in any case involving thousands of creditors, which has ramifications for any other city contemplating a filing. A prompt determination of this issue on appeal is imperative.

### 5. The Eligibility Issue Involves Legal Questions as to Which There Are No Controlling Decisions

In addition to each of the factors under section 158(d)(2) discussed above, the absence of controlling precedent on significant issues of statutory

construction, as well as federal and state constitutional law, independently warrants certification.

### a) The Bankruptcy Code Does Not Permit the City To Be a Chapter 9 Debtor Because Michigan Law Does Not Authorize the City To Discharge Pension Debt

The Bankruptcy Code bars a municipality from filing under Chapter 9 unless the municipality "is specifically authorized to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor . . . ." 11 U.S.C. § 109(c)(2). This Court held that Michigan law authorizes the City to be a Chapter 9 debtor and seek to reduce accrued pension benefits in a plan of adjustment, notwithstanding the Michigan Pensions Clause. That holding involves pure legal questions as to which there is no controlling precedent from either the Sixth Circuit or U.S. Supreme Court.

The Bankruptcy Code's requirement of specific authorization is compelled by the Tenth Amendment, which reserves to States the power to direct and control the financial affairs of their instrumentalities and subdivisions. In *Ashton v. Cameron County Dist.*, 298 U.S. 513, 531-32 (1936), the Supreme Court held that Congress may not override State sovereignty on the matter of authority of an instrumentality of the state to file bankruptcy. Similarly, in *United States v. Bekins*, 304 U.S. 27 (1938), the Court held that in permitting municipalities to file

21

bankruptcy in limited circumstances, "Congress was especially solicitous" that authorizations to file bankruptcy be in accordance with State law.  *Id.* at 50-51.

The Michigan Constitution's Pensions Clause is unqualified and absolute: "The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby."  Mich. Const. art. IX, § 24.  Under that provision, "[v]ested rights acquired under contract may not be destroyed by subsequent state legislation or even by an amendment to the State Constitution." *Campbell v. Judges' Retirement Bd.*, 143 N.W.2d 755, 757 (Mich. 1966).  The Michigan Supreme Court has held that "pension obligations differ from nearly every other type of government spending insofar as they simply cannot be reduced or cut . . . . Michigan governmental units do not have the option . . . of not paying retirement benefits."  *Musselman v. Governor of Mich.*, 533 N.W.2d 237, 243 (Mich. 1995), *aff'd on reh'g*, 545 N.W.2d 346 (Mich. 1996).  Likewise, the Michigan Supreme Court has noted that with the Pensions Clause as a protection, "those already covered by a pension plan are assured that their benefits will not be diminished by future collective bargaining agreements."  *Detroit Police Officers Ass'n v. Detroit*, 214 N.W.2d 803, 816 (Mich. 1974).

In complete derogation of the Pensions Clause, the City filed this bankruptcy case with the express purpose to discharge accrued pension benefits.

10671307.4 14893/165083

In doing so, the City's actions are directly contrary to the Michigan Constitution's Pensions Clause. To the extent PA 436 purports to authorize such actions by the City, the statute violates the Michigan Constitution and is invalid. There is no controlling precedent concerning whether Chapter 9 permits a municipality to circumvent a state constitutional guarantee of public pension benefits by seeking to reduce those benefits through bankruptcy. Certification of a direct appeal is warranted so the Sixth Circuit can immediately consider this significant legal issue.

> **b)** **The Tenth Amendment, Fifth Amendment Takings Clause, and Substantive Due Process Each Preclude Federal Interference with State or Municipal Pension Benefits**

The City's attempt to diminish and impair accrued retirement benefits raises issues under the Tenth Amendment, the Fifth Amendment's Takings Clause, and the substantive due process component of the Fourteenth Amendment, each of which warrants a direct appeal to the Sixth Circuit because there is no controlling precedent within this Circuit.

The Supreme Court's federalism decisions underscore that when the Tenth Amendment reserves a sphere of authority to the States, Congress cannot interfere. "Impermissible interference with state sovereignty is not within the enumerated powers of the National Government, and action that exceeds the National Government's enumerated powers undermines the sovereign interests of

23

States." *Bond v. United States*, 131 S. Ct. 2355 (2011) (citing *New York v. United States*, 505 U.S. 144, 155-59 (1992)). Because the Tenth Amendment reserves to the States both the areas of public pension plans and authorization to file for municipal bankruptcy, there is a compelling need for immediate appellate review of the Bankruptcy Court's holding that federal bankruptcy law can override a State constitution on issues of public pension benefits. *See Feinstein v. Lewis*, 477 F. Supp. 1256, 1261 (S.D.N.Y. 1979), *aff'd* 622 F.2d 573 (2d Cir. 1980) ("Plans established by state and local governments are generally excluded from coverage under ERISA because of concerns of federalism. State and local governments must be allowed to make their own determinations of the best method to protect the pension rights of municipal and state employees") (quoting 1 Legislative History of the Employee Retirement Income Security Act of 1974, at 220 (1976)); *Bekins*, 304 U.S. at 51-52 (finding the prior municipal bankruptcy statute was "carefully drawn so as not to impinge on the sovereignty of the State").

The Fifth Amendment Takings Clause also bars the City from diminishing or impairing accrued pension benefits because they are contract rights that rise to the level of "property" that the U.S. Constitution protects from deprivation by the government. *See McCarthy v. City of Cleveland*, 626 F.3d 280, 284 (6th Cir. 2010) (indicating that the Takings Clause is implicated by laws that appropriate or encumber specific, identified property interests). *Cf. Board of Regents v. Roth*,

408 U.S. 564, 577 (1972) (holding that public university employment benefits constitute "property" protected by the Fourteenth Amendment's due process clause). In interpreting state constitutional provisions protecting pension benefits similar to Michigan's Pensions Clause, courts have held that such benefits constitute protected property interests. *See Russell v. Dunston*, 896 F.2d 664, 668-669 (2d Cir. 1990) (applying *Roth* to pension obligations protected by New York Constitution); *Marconi v. Chicago Heights Police Pension Bd.*, 361 Ill. App. 3d. 1, 24 (Ill. App. 2005), *rev'd on other grounds*, 225 Ill.2d 497 (2006) (same under Illinois Constitution). This Court orally ruled to the contrary, refusing to recognize that the Michigan Constitution should be interpreted as treating accrued pension benefits as protected property interests. The City's effort to impair such benefits would effect a taking of property under the Fifth Amendment.

Finally, with respect to substantive due process, a district court within this Circuit has held that stripping retired city employees of vested retirement benefits violates retirees' substantive due process rights under the Fourteenth Amendment. *Mayborg v. v. City of St. Bernard*, No. 1:04-CV-00249, 2006 WL 3803393, at *11-12 (S.D. Ohio Nov. 22, 2006). The district court explained that "the property interests in a person's means of livelihood is one of the most significant that an individual can possess." *Id.* (quoting *Ramsey v. Bd. of Educ., Whitley Co., Ky.*, 844 F.2d 1268, 1273 (6th Cir. 1988) (citing *Cleveland Bd. of*

10671307.4 14893/165083

*Educ. v. Loudermill*, 470 U .S. 532, 543 (1985))). That principle applies with at least equal force here.

Retired City employees' property interest in their accrued pension benefits implicates the U.S. Constitution's most fundamental protections of private property and individual rights. The Court erred in holding that the City's proposed impairment of accrued pension benefits raises no constitutional concerns. At a minimum, the grave constitutional questions raised by the Court's eligibility ruling counsel for interpreting section 109(c)(2) to preclude the City from discharging pension debts in bankruptcy. In light of the absence of controlling Sixth Circuit or U.S. Supreme Court precedent, each of these issues warrants certification for a direct appeal to the Sixth Circuit.

## VI. STATEMENT OF CONCURRENCE

Pursuant to Rule 9014-1(g) of the Local Rules for the Bankruptcy Court for the Eastern District of Michigan, on December 4, 2013, counsel for the Retirement Systems contacted counsel for the City to ask whether the City concurs in the relief sought herein. Counsel for the City has not responded to the Retirement Systems' request.

## VII. NO PRIOR REQUEST

The Retirement Systems have not made any prior request for the relief sought herein to this Court or any other court.

10671307.4 14893/165083

## VIII. CONCLUSION

For the foregoing reasons, the Retirement Systems respectfully request that the Court certify the order for relief entered by this Court on December 3, 2013 for a direct appeal to the Sixth Circuit pursuant to 28 U.S.C. § 158(d)(2)(B)(i) and Bankruptcy Rule 8001(f)(3).  A proposed order is attached.

Dated:  December 4, 2013

Respectfully submitted,

CLARK HILL PLC

  /s/   Robert D. Gordon
Robert D. Gordon (P48627)
Shannon L. Deeby (P60242)
Jennifer K. Green (P69019)
151 South Old Woodward Avenue
Suite 200
Birmingham, Michigan  48009
Telephone: (248) 988-5882
Facsimile: (248) 988-2502
rgordon@clarkhill.com

-and-

ARNOLD & PORTER LLP
Lisa Hill Fenning
777 South Figueroa Street
44th Floor
Los Angeles, California 90017
Telephone: (213) 243-4000
Facsimile: (213) 243-4199
lisa.fenning@aporter.com

*Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*

10671307.4 14893/165083

# EXHIBIT 1

# Proposed Order

10671307.4 14893/165083

13-53846-tjt   Doc 2599-7   Filed 01/30/14   Entered 01/30/14 19:50:29   Page 28 of 32
13-53846-swr   Doc 1983   Filed 12/04/13   Entered 12/04/13 19:10:31   Page 28 of 32

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                              )      Chapter 9
                                    )
CITY OF DETROIT, MICHIGAN,          )      Case No. 13-53846
                                    )
          Debtor.                   )      Hon. Steven W. Rhodes
                                    )

---

## ORDER CERTIFYING APPEAL TO THE COURT OF APPEALS

Upon the motion (Doc. No. [____]) (the "Motion") of the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit for entry of an order certifying their appeal of the Court's order determining that the City of Detroit is eligible to be a debtor under Chapter 9 of the Bankruptcy Code (Doc. No. [__]) (the "Order") directly to the United States Court of Appeals for the Sixth Circuit pursuant to 28 U.S.C. § 158(d)(2)(B)(i) and Rule 8001(f)(3) of the Federal Rules of Bankruptcy Procedure; and the Court having determined that notice of the Motion was good and sufficient under the particular circumstances and that no other or further notice need be given; and the Court having been fully advised in the premises; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore; it is hereby

**ORDERED** that:

1.    The Motion is **GRANTED**.

2.    The Court certifies that the requirements set forth in 28 U.S.C. § 158(d)(2)(B)(i) are met and at least one of the circumstances specified in 28 U.S.C. § 158(d)(2)(A)(i)-(iii) exists.

3.    Pursuant to 28 U.S.C. § 158(d)(2)(A)(i), the Court finds that the Order being appealed from involves a question of law as to which there is no controlling decision of the Sixth Circuit Court of Appeals or of the Supreme Court of the United States.

4.    Pursuant to 28 U.S.C. § 158(d)(2)(A)(i), the Court finds that the Order being appealed from involves a matter of public importance.

5.    Pursuant to 28 U.S.C. § 158(d)(2)(A)(ii), the Court finds that the Order being appealed from involves a question of law requiring resolution of conflicting decisions.

6.    Pursuant to 28 U.S.C. § 158(d)(2)(A)(iii), the Court finds that an immediate appeal from the Order would materially advance the progress of the City's Chapter 9 bankruptcy proceeding.

7.    The appeal styled _____ shall be transmitted directly to the United States Court of Appeals for the Sixth Circuit for determination pursuant to 28 U.S.C. § 158(d)(2)(A).

# EXHIBIT 2

# Certificate of Service

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on December 4, 2013, the foregoing document was filed using the Court's CM/ECF system, which CM/ECF system will send notification of such filing to all parties of record.

CLARK HILL PLC

  /s/   Robert D. Gordon
Robert D. Gordon
151 South Old Woodward Avenue
Suite 200
Birmingham, Michigan  48009
Telephone: (248) 988-5882
rgordon@clarkhill.com

Dated: December 4, 2013