>Coleman A. Young Municipal Center
>2 Woodward Ave.
>11th Floor
>Detroit, MI 48226

**with a mandatory copy to** (which copy shall not constitute notice):

>City of Detroit
>Corporation Counsel
>660 Woodward Ave, Ste 1650
>Detroit, MI 48226

**If to Trustee**:

>Wilmington Trust, N.A.
>Corporate Trust Services
>25 South Charles Street, 11th Floor
>Baltimore, MD 21201

**with a mandatory copy to** (which copy shall not constitute notice):

>Drinker Biddle & Reath
>Kristin Going
>1500 K. St., N.W., Suite 1100
>Washington, DC 20005

(c) <u>Interpretation</u>. Unless the context otherwise requires, references in this Agreement to Sections and Exhibits refer to the Sections and Exhibits to this Agreement. The words "include," "includes" and "including" when used herein shall be deemed in each case to be followed by the words "without limitation." The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. All references to dollar amounts contained in this Agreement shall mean United States dollars. References in this Agreement to any gender include references to all genders, and references to the singular include references to the plural and vice versa. Unless the context otherwise requires, the words "hereof," "hereby" and "herein" and words of similar meaning when used in this Agreement refer to this Agreement in its entirety and not to any particular Article, Section or provision of this Agreement.

(d) <u>Entire Agreement</u>. This Agreement and the other agreements referred to herein constitute the entire agreement of the Parties to this Agreement and supersede all prior agreements and understandings, both written and oral, among or between any of the Parties with respect to the subject matter hereof.

(e) <u>Parties in Interest</u>. Except as expressly provided herein, none of the provisions of this Agreement is intended to provide any rights or remedies to any Person other than the Parties hereto and their respective successors and assigns (if any).

(f) <u>Severability</u>. If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

(g) <u>Governing Law; Jurisdiction and Venue</u>.

    (i) This Agreement shall be construed in accordance with, and governed in all respects by, the internal laws of the State of Michigan (without giving effect to principles of conflicts of laws).

    (ii) Each Party to this Agreement:

        (1) irrevocably submits to the exclusive jurisdiction of the Circuit Court for the County of Wayne in the State of Michigan and any state appellate court therefrom within the State of Michigan for the purpose of any legal proceeding directly or indirectly based upon, relating to arising out of this Agreement or any transaction contemplated hereby or the negotiation, execution or performance hereof or thereof and irrevocably agrees that all claims in respect of such action or proceeding shall be brought in, and may be heard and determined, exclusively in such state or federal courts;

        (2) irrevocably consents to the service of the summons and complaint and any other process in any other action or proceeding relating to the transactions contemplated by this Agreement, on behalf of itself or its property, by personal delivery of copies of such process to such Party at the addresses set forth in Section 8(b), provided that nothing in this Section 8(g) shall affect the right of any Party to serve legal process in any other manner permitted by law;

        (3) acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues, and therefore each such Party hereby irrevocably and unconditionally waives any right such Party may have to a trial by jury in any legal proceeding directly or indirectly based upon, relating to or arising out of this Agreement or any transaction contemplated hereby or the negotiation, execution or performance hereof or thereof;

        (4) certifies and acknowledges that (a) no representative, agent or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of any legal proceeding, seek to enforce the foregoing waiver in Section 8(g)(3), (b) each Party understands and has considered the implication of such waiver, (c) each Party makes such waiver voluntarily, and (d) each Party has been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this Section 8(g).

(h) Rules of Construction. The Parties hereto agree that they have been represented by counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any law, regulation, holding or rule of construction providing that ambiguities in an agreement or other document will be construed against the party drafting such agreement or document.

(i) Assignment and Successors. No Party may assign any of its rights or delegate any of its obligations under this Agreement without the prior written consent of the other Parties, except with respect to the Trustee as set otherwise forth under Section 7(b) of this Agreement. This Agreement will apply to, be binding in all respects upon and inure to the benefit of the successors and permitted assigns of the Parties.

(j) Further Assurances. Each Party hereto shall execute and cause to be delivered to each other Party hereto such instruments and other documents, and shall take such other actions, as such other Party may reasonably request for the purpose of carrying out or evidencing any of the transactions contemplated by this Agreement.

(k) Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument. The exchange of copies of this Agreement and of signature pages by facsimile or PDF transmission shall constitute effective execution and delivery of this Agreement as to the parties hereto and may be used in lieu of the original Agreement for all purposes. Signatures of the Parties hereto transmitted by facsimile or PDF shall be deemed to be their original signatures for all purposes.

[SIGNATURE PAGE FOLLOWS]

13-53846-swr    Doc 1341-7    Filed 10/23/13    Entered 10/23/13 17:15:55    Page 8 of 18    88

13-53846-swr    Doc 2616-9    Filed 01/31/14    Entered 01/31/14 15:09:40    Page 3 of 15
13-53846-swr    Doc 2379-2    Filed 01/03/14    Entered 01/03/14 17:41:50    Page 38 of 50

IN WITNESS WHEREOF, the Parties have duly caused this Agreement to be executed as of the day and year first above written.

**PUBLIC LIGHTING AUTHORITY**

_____
By: Odis Jones
Its: Executive Director

Date: 7/31/13

Witness for Public Lighting Authority:

_____

**CITY OF DETROIT**

_____
By: Kevyn D. Orr
Its: Emergency Manager

Date: _____

Witness for City:

_____

**Wilmington Trust, N.A., AS TRUSTEE**

_____
By:
Its:

Date: _____

Witness for Trustee:

_____

IN WITNESS WHEREOF, the Parties have duly caused this Agreement to be executed as of the day and year first above written.

**PUBLIC LIGHTING AUTHORITY**

---

By: Odis Jones
Its: Executive Director

Date: _____

Witness for Public Lighting Authority:

---

**CITY OF DETROIT**

*[signature]*

---

By: Kevyn D. Orr
Its: Emergency Manager

Date: August 1, 2013

Witness for City:

---

**Wilmington Trust, N.A., AS TRUSTEE**

---

By:
Its:

Date: _____

Witness for Trustee:

---

IN WITNESS WHEREOF, the Parties have duly caused this Agreement to be executed as of the day and year first above written.

**PUBLIC LIGHTING AUTHORITY**

By: Odis Jones
Its: Executive Director

Date: _____

Witness for Public Lighting Authority:

_____

**CITY OF DETROIT**

By: Kevyn D. Orr
Its: Emergency Manager

Date: _____

Witness for City:

_____

Wilmington Trust, N.A., AS TRUSTEE

By: JAY SMITH
Its: VIce PRpsIdent

Date: 7-31-13

Witness for Trustee:

# Public Lighting Authority Trust

## Exhibit A
## Fee Schedule

| | |
|---|---|
| Administration Fee | $2,500.00 per annum, payable at closing |

- Assumes proceeds are placed in Wilmington Trust's non-collateralized escrow depository account.

- Assumes one account.

*The fees as quoted and the acceptance of our duties as Escrow Agent are subject to the satisfactory review and acceptance of all related financing documents by the Escrow Agent, our counsel and the New Business Acceptance Committee. In the event the escrow changes prior to or after closing, Wilmington Bank reserves the right to review and renegotiate the fees accordingly.*

## Public Lighting Authority Trust

### Exhibit B
### Certificate as to Authorized Signatures

The specimen signatures shown below are the specimen signatures of the individuals who have been designated as authorized representatives of the Public Lighting Authority and are authorized to initiate and approve transactions of all types for the escrow account or accounts established under the Escrow Agreement to which this Exhibit B is attached, on behalf of the Public Lighting Authority.

Name / Title / Phone Number | Specimen Signature

Name: ODIS JONES
Title: EXECUTIVE DIRECTOR
Phone Number: (313) 324-8290

Name:
Title:
Phone Number:

Name:
Title:
Phone Number:

13-53846-swr    Doc 1341-7    Filed 10/23/13    Entered 10/23/13 17:15:55    Page 13 of 18    93
13-53846-tit    Doc 2616-9    Filed 01/31/14    Entered 01/31/14 15:09:40    Page 9 of 15
13-53846-swr    Doc 2379-2    Filed 01/03/14    Entered 01/03/14 17:41:50    Page 43 of 50

# Public Lighting Authority Trust

## Exhibit C
### Payment Instructions

**By Wire:**

Bank: M & T Bank
ABA: 022000046
Account: Corporate Trust Clearing
Account No.: 3088001950200
ffc Public Lighting Authority Trust
Attn: Jay Smith

**By Check:**

Payable to: Wilmington Trust, National Association

**Mailed to:**

Wilmington Trust, National Association
Global Capital Markets
25 S. Charles Street, 11th Floor
Baltimore, MD 21201
Attn: Jay Smith

CHI-1898778v2

13-53846-swr    Doc 1341-7    Filed 10/23/13    Entered 10/23/13 17:15:55    Page 14 of 18    94

13-53846-swr    Doc 2616-9    Filed 01/31/14    Entered 01/31/14 15:09:40    Page 9 of 15
13-53846-swr    Doc 2379-2    Filed 01/03/14    Entered 01/03/14 17:41:50    Page 44 of 50

# Appendix C

## West PLA Pilot Area — Appendix C



13-53846-tjt Doc 2615-9 Filed 01/21/14 Entered 01/21/14 15:09:40 Page 10 of 15
13-53846-swr Doc 1547 Filed 10/23/13 Entered 10/23/13 17:13:53 Page 15 of 18   95



Appendix D

East PLA Pilot Area

Appendix E



Appendix E — City of Detroit by Zip Codes; East Pilot Area; West Pilot Area



Appendix F

# APPENDIX G

**Public Lighting Authority of Detroit**
**Budget**

| | 30-Jun-14 | 30-Jun-15 | 30-Jun-16 | 30-Jun-17 | 30-Jun-18 | 30-Jun-19 | 30-Jun-20 | 30-Jun-21 | 30-Jun-22 | 30-Jun-23 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue Sources** | | | | | | | | | | |
| Utility User Tax | $ 12,500,000 | $ 12,500,000 | $ 12,500,000 | $ 12,500,000 | $ 12,500,000 | $ 12,500,000 | $ 12,500,000 | $ 12,500,000 | $ 12,500,000 | $ 12,500,000 |
| City of Detroit Admin Fees | $ 329,348 | $ 658,696 | $ 1,317,392 | $ 1,515,000 | $ 1,515,000 | $ 1,515,000 | $ 1,515,000 | $ 1,515,000 | $ 1,515,000 | $ 1,515,000 |
| Bridge Loan Proceeds | $ 60,000,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Bond Proceeds (Net of D.S. Reserve Fund) | $ 135,504,992 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Revenue** | $ 208,334,340 | $ 13,158,696 | $ 13,817,392 | $ 14,015,000 | $ 14,015,000 | $ 14,015,000 | $ 14,015,000 | $ 14,015,000 | $ 14,015,000 | $ 14,015,000 |
| **Administrative Budget** | | | | | | | | | | |
| Salaries & Benefits | $ 534,114 | $ 566,160 | $ 594,468 | $ 610,000 | $ 620,000 | $ 620,000 | $ 620,000 | $ 620,000 | $ 620,000 | $ 620,000 |
| Insurance | $ 78,600 | $ 83,316 | $ 87,482 | $ 89,000 | $ 90,000 | $ 90,000 | $ 90,000 | $ 90,000 | $ 90,000 | $ 90,000 |
| Auto Expenses | $ 15,600 | $ 16,032 | $ 16,414 | $ 16,500 | $ 17,000 | $ 17,000 | $ 17,000 | $ 17,000 | $ 17,000 | $ 17,000 |
| Professional Fees | $ 626,100 | $ 429,346 | $ 419,843 | $ 327,385 | $ 250,000 | $ 250,000 | $ 250,000 | $ 250,000 | $ 250,000 | $ 250,000 |
| Occupancy | $ 58,093 | $ 51,677 | $ 45,976 | $ 48,275 | $ 50,000 | $ 55,000 | $ 60,000 | $ 65,000 | $ 70,000 | $ 75,000 |
| Office | $ 152,000 | $ 161,120 | $ 165,000 | $ 170,000 | $ 175,000 | $ 180,000 | $ 185,000 | $ 190,000 | $ 195,000 | $ 200,000 |
| Conferences & Meetings | $ 25,000 | $ 26,500 | $ 27,825 | $ 28,000 | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 |
| Others | $ 315,000 | $ 333,900 | $ 350,595 | $ 280,000 | $ 283,000 | $ 273,000 | $ 263,000 | $ 253,000 | $ 243,000 | $ 233,000 |
| **Total Operating Budget** | $ 1,804,506 | $ 1,668,052 | $ 1,707,603 | $ 1,569,159 | $ 1,515,000 | $ 1,515,000 | $ 1,515,000 | $ 1,515,000 | $ 1,515,000 | $ 1,515,000 |
| **Capital Project Expenditures** | | | | | | | | | | |
| DTE - Project Management | $ 1,200,000 | $ 1,200,000 | $ 900,000 | $ 300,000 | $ - | $ - | $ - | $ - | $ - | $ - |
| Surveys | $ 1,950,000 | $ 2,200,000 | $ 94,731 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Engineering & Design | $ 3,876,555 | $ 6,307,326 | $ 3,153,663 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Over Head Removal | $ 3,230,485 | $ 4,826,266 | $ 4,826,266 | $ 2,413,133 | $ - | $ - | $ - | $ - | $ - | $ - |
| Under Ground Removal | $ 727,993 | $ 1,087,604 | $ 1,087,604 | $ 543,802 | $ - | $ - | $ - | $ - | $ - | $ - |
| Over Head Installation | $ 4,221,358 | $ 7,316,305 | $ 7,316,305 | $ 3,658,153 | $ - | $ - | $ - | $ - | $ - | $ - |
| Under Ground Installation | $ 18,228,858 | $ 26,780,858 | $ 28,019,278 | $ 17,497,608 | $ - | $ - | $ - | $ - | $ - | $ - |
| Communications | $ 26,400 | $ 5,400 | $ 4,050 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Capital Projects** | $ 33,461,648 | $ 49,723,759 | $ 45,401,897 | $ 24,412,696 | $ - | $ - | $ - | $ - | $ - | $ - |
| **Debt Service Expenditures** | | | | | | | | | | |
| Principal payment - Bridge Loan | $ 60,000,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Principal payment - Bond | $ - | $ - | $ 1,525,000 | $ 1,595,000 | $ 1,675,000 | $ 1,760,000 | $ 1,855,000 | $ 1,950,000 | $ 2,060,000 | $ 2,185,000 |
| Interest Expenses - bond | $ - | $ 5,990,788 | $ 10,973,113 | $ 10,902,613 | $ 10,820,863 | $ 10,734,988 | $ 10,644,613 | $ 10,549,488 | $ 10,438,938 | $ 10,311,588 |
| Interest Expenses - Bridge Loan | $ 1,350,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Issuance Expenses - Bond | $ 2,233,275 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Issuance Expenses - Bridge Loan | $ 660,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Trustee Fees | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 |
| **Total Debt Service** | $ 64,246,275 | $ 5,993,788 | $ 12,501,113 | $ 12,500,613 | $ 12,498,863 | $ 12,497,988 | $ 12,502,613 | $ 12,502,488 | $ 12,501,938 | $ 12,499,588 |
| **Total** | $ 99,512,429 | $ 57,385,599 | $ 59,610,612 | $ 38,482,468 | $ 14,013,863 | $ 14,012,988 | $ 14,017,613 | $ 14,017,488 | $ 14,016,938 | $ 14,014,588 |
| Change | $ 108,821,910 | $ (44,226,903) | $ (45,793,220) | $ (24,467,468) | $ 1,137 | $ 2,012 | $ (2,613) | $ (2,488) | $ (1,938) | $ 412 |
| Beginning Fund Balance | $ 6,117,415 | $ 114,939,325 | $ 70,712,422 | $ 24,919,202 | $ 451,733 | $ 452,870 | $ 454,882 | $ 452,269 | $ 449,781 | $ 447,843 |
| Ending Fund Balance | $ 114,939,325 | $ 70,712,422 | $ 24,919,202 | $ 451,733 | $ 452,870 | $ 454,882 | $ 452,269 | $ 449,781 | $ 447,843 | $ 448,255 |

**Assumptions:**

**Revenue:**

- **Utility User Tax:** This is the revenue from City's utility tax that will be used to repay the bond.
- **City of Detroit Admin Fees:** City has agreed to pay 15% of the electricty operating cost as an admin fee. PLA estimated the number of lights available during the pilot program are 10,000 and 20,000 for the first two years
- **Bridge Loan Proceeds:** PLA will initially borrow $60 million to start the project. The loan will be paid as soon as the $149 Million bond is issued. The loan will have interest rate equal to 1 month LIBOR index plus 16% margin. ( estimated 3%)
- **Bond Proceeds:** This assumption is based on PLA will sell $149 million in bonds by June 15, 2014. This will be repaid through Utility user tax of $12.5M per year for 30 years. The bond is a 30 year bond issue and carries an interest rate ranging from 4 to 8 percent. The bond analysis was prepared by Robert W. Baird & Co. Note: City will be paying all operating and electricity cost

**Administrative Budget**

- **Salaries & Benefits:** These expenditures are based on the number of employees that PLA will utilize.
- **Insurance:** Consist of Officers and Directors, Liability and umbrella insurance.
- **Auto Expenses:** Consist of the employee parking and auto allowance
- **Professional Fees:** Consist of accounting, auditing, legal and public relation professionals
- **Occupancy:** Consist of rent and repairs & maintenance of the PLA office
- **Office :** Consist of office expenses
- **Conferences & Meetings:** Board and staff meeting.
- **Others:** All other unexpected expenses

**Capital Project Expenditures:** Estimated total cost of the project will be $153 Million

**Debt Service Expenditures:** Bridge loan in the amount of $60 million which will paid within a year with an estimated interest of $1.35M.
Bond will be issued 1st quarter of fiscal year 2015. the first principal payment is scheduled on July 2016 and the first interest payment is January 2016.
Estimated trustee and others fees of $3,000 per annum.