UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------x
                                                   :
In re                                              : Chapter 9
                                                   :
CITY OF DETROIT, MICHIGAN,                         : Case No. 13-53846
                                                   :
              Debtor.                              : Hon. Steven W. Rhodes
                                                   :
---------------------------------------------------x

# BRIEF IN OPPOSITION TO MOTION OF PREPETITION 42 U.S.C. § 1983 CLAIMANTS, PURSUANT TO SECTION 1102(a)(2) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER DIRECTING THE APPOINTMENT OF A COMMITTEE OF PREPETITION 42 U.S.C. § 1983 CLAIMANTS

By the Motion,[1] the Movants seek the judicial appointment of an Official 1983 Claimant Committee. The gravamen of the Movants' argument is that the appointment of such a committee is "vital" to the adequate representation of creditors holding Pending 1983 Claims (collectively, "Pending 1983 Claimants") because the Court recognized that Pending 1983 Claims are "unique" when it referred them for mediation before Chief Judge Gerald E. Rosen of the United States District Court for the Eastern District of Michigan (the "District

---

[1] Capitalized terms used but not defined herein have the meaning given to them in the Debtor's Objection to Motion of Prepetition 42 U.S.C. § 1983 Claimants, Pursuant to Section 1102(a)(2) of the Bankruptcy Code, for Entry of an Order Directing the Appointment of a Committee of Prepetition 42 U.S.C. § 1983 Claimants, filed contemporaneously herewith.

Court") instead of ordering that they be subject to the alternative dispute resolution procedures established by the Court for other claims (the "General ADR Procedures"). The Movants suggest specifically that an Official 1983 Claimant Committee will play a critical role in conferring with the City and Chief Judge Rosen on the terms of the proposed mediation process. The Movants propose to populate the Official 1983 Claimant Committee principally with "key law firms" and entities referred to as "1983 Claimant Representatives," rather than the actual holders of Pending 1983 Claims.

The City understands that certain characteristics of the Pending 1983 Claims led the Court to determine that separately designating Pending 1983 Claims for mediation before Chief Judge Rosen may be more effective to address these claims than the use of case evaluation under the General ADR Procedures adopted for certain other claims.[2] In particular, this decision was based on the Court's determination, after consultation with Chief Judge Rosen, of the best means to promote the consensual resolution of these claims. See Tr. of December 16 Hr'g, at 62:23-63:1 ("I'm going to consult with Chief Judge Rosen on the issue of the

---

[2] Other claims subject to the General ADR Procedures will be sent to case evaluation before the Wayne County Mediation Tribunal Association under the procedures set forth in Rules 2.403 and 2.404 of the Michigan Court Rules of 1985, as provided for by Rule 16.3 of the Local Rules of the United States District Court for the Eastern District of Michigan ("Case Evaluation").

1983 actions, and if I decide that needs to be carved out of [the General ADR Procedures], I will effectuate that."). Nevertheless, there is no basis to suggest that an official committee representing Pending 1983 Claimants is required to help establish the court-ordered mediation process or for any purpose in this case.

Notably, nothing in the Court's order establishing the General ADR Procedures (Docket No. 2302) (the "<u>ADR Order</u>") suggests that the Pending 1983 Claimants – or the City – must reach consensus on the mediation process for the Pending 1983 Claims. The ADR Order simply states that all Pending 1983 Claims "are referred to Chief United States District Judge Gerald Rosen for mediation under ***such procedures as he determines***." ADR Order at ¶ 20 (emphasis added). There is no suggestion that Chief Judge Rosen is required, or desires, to consult with the parties about the mediation process to be used. Even if Chief Judge Rosen determines that the input of the Pending 1983 Claimants and the City is useful, there is no basis to conclude that an Official 1983 Claimant Committee is necessary. Counsel for the Pending 1983 Claimants can be identified and consulted for that purpose, if desired by Chief Judge Rosen, without the need to organize them into an official committee. Similarly, there is no basis to conclude that the Pending 1983 Claimants – as one discrete group of general unsecured creditors – requires the representation of an official committee for any other purpose in this case.

For these reasons and the additional reasons described below, the Court should deny the Motion.

## ARGUMENT

1. Section 1102(a)(2) of the Bankruptcy Code, which is made applicable in this chapter 9 case by section 901(a) of the Bankruptcy Code, provides that:

> On request of a party of interest, the court may order the appointment of additional committees of creditors . . . if necessary to assure adequate representation of creditors . . . . The United States trustee shall appoint any such committee.

11 U.S.C. § 1102(a)(2).

2. The determination of whether any additional official committee should be appointed involves a two-stage inquiry: (a) first, whether the appointment of a committee is necessary to assure adequate representation of creditors; and (b) second, if the appointment will assure adequate representation, whether the bankruptcy court should exercise its discretion to appoint the committee. In re Dow Corning Corp., 194 B.R. 121, 141 (Bankr. E.D. Mich. 1996).

3. These considerations are separate and distinct. As such, even if a bankruptcy court determines that a committee would assure adequate representation of a particular class of creditors, the Court need not exercise its

discretion to appoint such an official committee.  Id. at 143 ("[B]ankruptcy courts have generally been reluctant to appoint additional committees and their decisions have placed considerable weight on these discretionary factors.") (citing Albero v. Johns-Manville Corp. (In re Johns-Manville Corp.), 68 B.R. 155, 163 (S.D.N.Y. 1986)).

        4.      The burden is on the movant to demonstrate that these factors are satisfied.  Dow Corning, 194 B.R. at 144 (citing Johns-Manville, 68 B.R. at 158 and In re Beker Ind. Corp., 55 B.R. 945, 949 (Bankr. S.D.N.Y. 1985)).

***The Appointment of an Official 1983 Claimant Committee Is Not Necessary to Assure the Adequate Representation of the Pending 1983 Claimants***

        5.      Bankruptcy courts have identified various factors as relevant to the determination of whether the appointment of an official committee is necessary under section 1102(a)(2) of the Bankruptcy Code to assure the adequate representation of a class of creditors.  These factors are:  "(a) the nature of the case; (b) identification of the various groups of creditors and their interests; (c) the composition of the committee; and (d) the ability of the committee to properly function." Dow Corning, 194 B.R. at 142.

*Nature of the Case*

        6.      With respect to the nature of the case, the Movants argue that the City's case is the largest chapter 9 case in history, presenting many unique issues.  Motion, at ¶ 19.  The Movants further argue that, in the aggregate,

the Pending 1983 Claims potentially constitute a "massive unsecured obligation" of the City that is of "crucial importance" and "requires unique consideration" because the Pending 1983 Claims arise under federal law. Id. at ¶¶ 19-21.

7. In a similar vein, the Respondants argue that the appointment of an Official 1983 Claimant Committee is necessary because the Respondants believe that the automatic stay of sections 362(a) and 922 of the Bankruptcy Code (the "Automatic Stay") is unconstitutional, as applied to Pending 1983 Claimants. See Supporting Response, at ¶¶ 8-9; see also Brief in Support of Amended Motion of Creditor Deborah Ryan, an Interested Party, for Relief from this Court's Order Staying Proceedings (Docket No. 819, Ex. 3), at pp. 10-15 (describing the argument of counsel to the Respondants that the Automatic Stay is unconstitutional).

8. The Movants correctly observe that the City's case is large and presents many complex issues. For this reason, in part, the City did not shrink from seeking the appointment of an official committee, where necessary and appropriate. At the outset of this chapter 9 case, the City filed a motion (Docket No. 20) (the "Retiree Committee Motion") requesting that the Court appoint an official committee to represent the interests of retirees (the "Retiree Committee") in connection with the City's efforts to address the estimated almost $10 billion in pension and post-employment healthcare liabilities facing the City. Retiree

Committee Motion, at ¶¶ 11-15 (describing the City's various liabilities relating to retirees). The City noted that the appointment of a Retiree Committee was particularly appropriate because, without a Retiree Committee, the interests of the majority of City retirees otherwise would have been unrepresented in this chapter 9 case. Id. at ¶¶ 16 19. The City therefore requested the appointment of, and agreed to fund, a Retiree Committee.

9. In stark contrast to the City's overwhelming obligations to its retirees, the Pending 1983 Claims represent only one discrete subset of claims that the City must address in its restructuring. Aside from Pending 1983 Claims, for example, the City must address, among myriad other issues, the liquidation, allowance and treatment of claims relating to: (a) the City's general obligation bond debt; (b) the City's special revenue bond debt; (c) obligations relating to certificates of participation issued with respect to the City's underfunded pension obligations (the "COPs"); (d) interest rate swap agreements entered into in connection with the COPs (the "Swaps"); (e) claims relating to the City's underfunded pensions; (f) claims relating to healthcare benefits of active and retired employees; (g) other labor-related claims, including indemnity claims of employees and former employees; (h) claims of vendors providing goods and services to the City; (i) claims by nondebtor entities funded by the City; (j) numerous tort and litigation claims (in addition to the Pending 1983 Claims)

including, as two significant examples, claims based on alleged highway or sidewalk defects and motor vehicle-related claims; and (k) various other disputed alleged obligations of the City.  In addition, the City must balance the foregoing, and all other matters relating to the allowance and treatment of claims, against the City's duty to provide for the health, safety and welfare of those who work and live within City limits.

10.     Given the broad array of creditors, residents and other stakeholders whose interests present complex issues that must be addressed in this chapter 9 case, the appointment of an official committee to represent the interests of each and every segment of the creditor body would not promote the efficient resolution of this case.  This is especially true in instances where, as here, the legal interests of most, if not all, such creditors already are represented (i.e., the Pending 1983 Claimants generally are represented by counsel who have been hired to prosecute the Pending 1983 Claims).

11.     The remaining arguments raised by the Movants go to the nature of their claims, not the nature of the City's chapter 9 case.  In any event, the Movants' arguments provide no basis for the appointment of an Official 1983 Claimant Committee.  The Movants offer no support for their allegation that Pending 1983 Claims represent "one of the largest obligations to be addressed by the restructuring."  See Motion, at ¶ 21.  Nor do they explain how the mere fact

ATI-2592987v6                                              -8-
13-53846-tjt    Doc 2641    Filed 02/04/14    Entered 02/04/14 14:42:20    Page 8 of 19

that the Pending 1983 Claims arise under federal law necessitates the appointment of an Official 1983 Claimant Committee. See id. at ¶ 19.  Similarly, the Respondants fail to explain how the appointment of an Official 1983 Claimant Committee is necessary to preserve counsel's potential constitutional challenge to the Automatic Stay.  Supporting Response, at ¶ 9.[3]

12. It would be inefficient for the Court to appoint an official committee to represent the interests of every discrete group of creditors.  Such an approach would not promote the successful or prompt resolution of this case. In the context of the City's far-reaching and complex chapter 9 case, the Pending 1983 Claims present narrow issues involving parties that already have legal representation.  The nature of the City's chapter 9 case, therefore, weighs heavily in favor of a finding that the appointment of an Official 1983 Claimant Committee is not necessary to represent the interests of the Pending 1983 Claimants.

*Identification of the Various Groups of Creditors and Their Interests*

13. With respect to the second consideration, the Movants merely note that the rights and interests of the Pending 1983 Claimants were "identified"

---

[3] This argument rings particularly hollow in light of the entry of the ADR Order, which by its terms provides for the modification of the Automatic Stay to permit the litigation and liquidation of the Pending 1983 Claims in the event that such claims are not resolved through mediation.  See ADR Order, at ¶ 12 (establishing procedures for the liquidation of unresolved claims by litigation).

by the Court as unique when it referred them to Chief Judge Rosen for mediation as part of the relief granted in the ADR Order. Motion, at ¶ 20. Of course, the identification of specific categories of dispute for referral to Chief Judge Rosen for mediation does not, in and of itself, necessitate the appointment of an official committee to represent the interests of the applicable claimants.[4]

14. In the ADR Order, the Court merely determined that mediation of the Pending 1983 Claims would maximize the effectiveness of the alternative dispute resolution process and promote the potential for the consensual liquidation of Pending 1983 Claims (i.e., the Court determined that mediation of the Pending 1983 Claims would be more effective than the use of Case Evaluation). In this sense alone, the Court distinguished between Pending 1983 Claims and certain other unsecured litigation claims that remain subject to Case Evaluation under the General ADR Procedures. Nothing in the ADR Order indicates any broader determination by the Court that the Pending 1983 Claimants should be afforded special treatment for other purposes in this chapter 9 case, over and above that

---

[4] For example, pursuant to various orders, this Court already has referred to Chief Judge Rosen (a) disputes regarding the treatment of claims under a Plan, (b) the negotiation of collective bargaining agreements and other labor issues, (c) disputes regarding the Forbearance and Optional Termination Agreement entered into between the City and the counterparties to the Swaps, (d) pension issues, (e) issues regarding other post-employment benefits and (f) other matters. See, e.g., Docket Nos. 333, 562 and 1101 (orders referring certain of the foregoing matters to facilitative mediation before Chief Judge Rosen).

provided to other creditors, including through the appointment of an Official 1983 Claimant Committee.

15.     The interests of the Pending 1983 Claimants are the same or similar to those of many other groups of unsecured claimants in this chapter 9 case, i.e., obtaining an efficient and favorable liquidation and allowance of their claims and maximizing recoveries on those claims.  Moreover, for the Pending 1983 Claimants, these interests have been substantially addressed by the establishment of the resolution procedures in the ADR Order – including the unique mediation process for Pending 1983 Claims.  The ADR Order establishes an efficient means to liquidate the Pending 1983 Claims.  Thus, the interests of the Pending 1983 Claimants do not justify the appointment of an Official 1983 Claimant Committee.

*Composition of the Committee*

16.     The third factor for consideration by the Court is the anticipated composition of the proposed Official 1983 Claimant Committee.  Most, if not all, of the Pending 1983 Claimants already are represented by counsel who have filed and are prosecuting the underlying lawsuits pending in the District Court.  In fact, counsel to certain Pending 1983 Claimants have participated in the City's chapter 9 case by filing pleadings on behalf of Pending 1983 Claimants.  See Docket Nos. 800, 1866, 2140 and 2211 (filings by counsel representing various holders of Pending 1983 Claims in addition to the Motion and the Supporting Response).

17. The Motion acknowledges that these parties are represented by proposing that the membership of the an Official 1983 Claimant Committee would be composed of "key law firms" and "1983 Claimant Representatives." Motion, at ¶ 24. The Movants fail to explain how the appointment of an official committee comprised (at least in substantial part) of lawyers and law firms already representing the Pending 1983 Claimants is necessary to assure the adequate representation of these claimants.

*The Ability of a Committee to Properly Function*

18. Under the fourth factor, courts inquire into the ability of the proposed committee to function. According to the Motion, the primary function for the proposed Official 1983 Claimant Committee is to assist Chief Judge Rosen with the establishment of mediation procedures. There is no indication that Chief Judge Rosen requires (or desires) the Pending 1983 Claimants or their representatives to perform this function. More importantly, the limited purpose of the Official 1983 Claimant Committee envisioned by the Movants – i.e., to assist Chief Judge Rosen in establishing mediation procedures – does not necessitate the appointment of an official committee. To the extent desired by Chief Judge Rosen, counsel for the Pending 1983 Claimants can be identified and consulted without the cost, expense and delay of forming an official committee under the Bankruptcy Code.

19. The Respondents add that the appointment of an Official 1983 Claimant Committee is necessary to "preserve" their constitutional concerns over the interaction between the Automatic Stay and the Pending 1983 Claims. It is not clear, however, how the appointment of an additional official committee will assist the Respondents' in bringing their challenge to the constitutionality of the Automatic Stay. Like the Movants, the Respondents are represented by counsel that already has made several filings in the City's chapter 9 case raising this constitutional argument. See Docket Nos. 819, 1866, 2140. The appointment of an official committee does not become necessary merely because counsel to certain claimants indicates an intention to raise a constitutional challenge to the Bankruptcy Code.[5]

***The Court Should Not Exercise Its Discretion***
***to Appoint an Official 1983 Claimant Committee***

20. Even if the Movants' arguments somehow could establish that the appointment of an Official 1983 Claimant Committee is necessary to assure the adequate representation of the Pending 1983 Claimants, the Movants offer no argument in support of the required second prong of the Court's inquiry – i.e., that the Court should exercise its discretion to appoint such a committee.

---

[5] Moreover, as noted above, the ADR Order already provides for the modification of the Automatic Stay to permit the Pending 1983 Claimants to litigate and liquidate their claims.

21. Where a proposed official committee is necessary to provide a class of creditors with adequate representation — which is not the case here — bankruptcy courts commonly consider four factors as relevant to the determination of whether or not to exercise their discretion to order the appointment of the committee. These factors are: "(a) the cost associated with appointment; (b) the time of the application; (c) the potential for added complexity; and (d) the presence of other avenues for creditor participation." In re Dow Corning Corp., 194 B.R. at 143.

*Costs Associated with Appointment*

22. Under the first factor, the costs associated with the appointment and operation of an Official 1983 Claimant Committee are unnecessary because the limited function of the proposed Official 1983 Claimant Committee can just as easily be performed by the Pending 1983 Claimants and their representatives by negotiating individually and/or organizing informally. As noted above, there are other ways for the Pending 1983 Claimants to be consulted about the mediation process without the formation of an official committee. And there is no reason that an official committee of this subset of unsecured creditors is needed for any other purpose in this case.

23. In light of the foregoing, the City has determined that it would not fund any professional fees or costs that might be incurred by the proposed

ATI-2592987v6
13-53846-tjt    Doc 2641    Filed 02/04/14    Entered 02/04/14 14:42:20    Page 14 of 19

Official 1983 Claimant Committee, and the Bankruptcy Code does not provide a basis for such a committee to charge its costs to the debtor.[6] Nevertheless, although the direct costs of any Official 1983 Claimant Committee will not be borne by the City, the City expects that addressing or responding to the activities of the proposed Official 1983 Claimant Committee will increase costs to the City and unnecessarily divert its limited resources.

*Time of the Application*

24. Under the second factor, the timing of the Motion also weighs in favor of the Court declining to appoint an Official 1983 Claimant Committee. Under this factor, "[c]ourts are especially skeptical of motions filed after the debtor has filed a plan . . . ." In re Dow Corning Corp., 194 B.R. at 143. Here, the Movants have been aware since no later than the Petition Date that the purportedly massive obligations represented by the Pending 1983 Claims would have to be addressed in these cases. And it has been well publicized that a plan of adjustment

---

[6] See In re City of Prichard, Alabama, Case No. 09-15000 (Bankr. S.D. Ala.) (Docket No. 98) (denying request of unsecured creditors' committee that court require chapter 9 debtor to pay committee counsel's fees and expenses), appeal denied Official Comm. of Unsecured Creditors v. City of Prichard, Ala. (In re City of Prichard, Ala.), No. 10-00012, 2010 WL 2383984 (S.D. Ala. June 9, 2010); 11 U.S.C. § 904 ("Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with – (1) any of the political or governmental powers of the debtor; (2) any of the property or revenues of the debtor; or (3) the debtor's use or enjoyment of any income-producing property.").

has been under discussion with key stakeholders for months and will be filed in the near term in advance of the March 1, 2014 deadline established by the Court. Yet the Movants waited until shortly prior to the deadline for the City to file its plan of adjustment before filing the 1983 Claimant Committee Motion. By the time such a committee could be formed, it is expected that the plan of adjustment already will be filed. Thus, if the Movants intended that an Official 1983 Claimant Committee would play a broad role in negotiating the terms of a plan of adjustment, they should have filed their Motion at the outset of this chapter 9 case.

25. Moreover, nothing about the Court's statements in the ADR Order impacted the Movants' overall role in these cases or otherwise suggested that an official committee of this subset of creditors is needed to address issues in the City's restructuring. If anything, the establishment of a mediation process pursuant to the ADR Order diminishes the need for any official committee to represent the interests of the Pending 1983 Claimants.

*The Potential for Added Complexity*

26. With respect to the third factor, the appointment of an Official 1983 Claimant Committee would needlessly complicate the City's already complex chapter 9 case. As noted, the appointment of an Official 1983 Claimant Committee solely for the purpose of commenting on appropriate mediation procedures would unnecessarily complicate the process of Chief Judge Rosen

ATI-2592987v6
-16-
13-53846-tjt    Doc 2641    Filed 02/04/14    Entered 02/04/14 14:42:20    Page 16 of 19

establishing these mediation procedures (even if he wishes to consult with representatives of the parties). If Chief Judge Rosen would like the input of the parties, this can be accomplished without an official committee.

27. More broadly, the City already is negotiating with numerous parties representing the key interests in this chapter 9 case on a wide array of issues. Requiring the City to engage and negotiate with yet another party at this point in the case will unnecessarily increase the City's costs and potentially interfere with the City's complicated and challenging negotiations of key restructuring issues that began before the Petition Date.

*The Presence of Other Avenues for Creditor Participation*

28. Under the final factor, the Pending 1983 Claimants have ample other avenues for participation in this chapter 9 case. In many, if not all, cases, the holders of Pending 1983 Claims already have legal representation because their claims, by definition, already are pending in litigation brought by attorneys in the District Court. As previously discussed, counsel to and representatives of the Pending 1983 Claimants are free to organize informally or participate individually to address issues in this case – including to provide comments about the mediation process if and to the extent requested by Chief Judge Rosen. Similarly, all creditors will have an opportunity to participate in the plan process consistent with the disclosure and confirmation requirements established by the applicable

provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. Counsel for the Pending 1983 Claimants already have demonstrated their ability to file pleadings and participate actively in this chapter 9 case. See Docket Nos. 800, 1866, 2140 and 2211 (filings by counsel representing various holders of Pending 1983 Claims).

29. Additionally, the terms of the ADR Order and the mediation process to be designed by Chief Judge Rosen, in and of themselves, will provide the Pending 1983 Claimants with an avenue to participate in this chapter 9 case. The Pending 1983 Claimants and their counsel will have the opportunity to present their arguments in mediation before Chief Judge Rosen and, if necessary, any subsequent litigation necessary to liquidate the Pending 1983 Claims.

## Conclusion

30. The appointment of an Official 1983 Claimant Committee is not necessary to assure the adequate representation of the Pending 1983 Claimants, and the Court should not exercise its discretion to appoint such a committee. As such, (a) the 1983 Claimant Committee Motion should be denied, (b) the Supporting Response should be overruled and (c) the Court should grant such other and further relief to the City as the Court may deem proper.

Dated: February 4, 2014				Respectfully submitted,


/s/ Heather Lennox
Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California  90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
   STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 963-6420
Facsimile:  (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY