UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| | Case No. 13-53846 |
| City of Detroit, Michigan, | Hon. Steven W. Rhodes |
| Debtor. | |
| _____/ | |

**Opinion and Order**

**Denying NAACP's Motion for**
**Relief from Stay (Dkt. #740)**

**and**

**Granting Phillips' Motion for**
**Relief from Stay (Dkt. #1004)**

This opinion addresses two motions for relief from the stay. The first motion (Dkt. #740) relates to *Detroit Branch NAACP v. Snyder*, No. 13-12098 (E.D. Mich. filed May 13, 2013). The other motion (Dkt. #1004) relates to *Phillips v. Snyder*, No. 13-11370 (E.D. Mich. filed March 27, 2013). Both suits challenge the constitutionality of the Local Financial Stability and Choice Act, Michigan Public Act No. 436 (2012), MCL §§ 141.1541–141.1575 ("P.A. 436").

For the reasons stated in this opinion, the Court concludes that the motion for relief from the stay as to the *NAACP* suit should be denied while the motion for relief from the stay as to the *Phillips* suit should be granted.

**I. The Procedural History**

On March 27, 2013, Catherine Phillips and several other plaintiffs filed a lawsuit in the United States District Court for the Eastern District of Michigan against Governor Richard Snyder and State Treasurer Andrew Dillon, asserting that P.A. 436 is unconstitutional and

seeking declaratory and injunctive relief. Specifically, they assert that P.A. 436 violates their rights under the United States Constitution, art. IV, § 4; amend. I; amend. XIII; amend. XIV; and the Voting Rights Act of 1965, 42 U.S.C. §§ 1973–1973(q). Most of the individual plaintiffs are residents or elected officials of several municipalities in which emergency managers have been appointed under P.A. 436 – the City of Detroit, the City of Flint, the City of Benton Harbor, and the City of Pontiac. Three of the plaintiffs are also members of the Detroit Public Schools Board; an emergency manager has also been appointed for the Detroit Public Schools. The suit seeks damages, declaratory relief, and injunctive relief, including relief "restraining the Defendants and any present and future EMs from implementing or exercising authority and powers purportedly conveyed by Public Act 436." Complaint at 49–50, *Phillips*, No. 13-11370.

The second suit was filed on May 13, 2013, by the Detroit Branch NAACP, the Michigan State Conference NAACP, Donnell White, individually and on behalf of Detroit Branch NAACP and Michigan State Conference NAACP, Thomas Stallworth III, individually, Rashida Tlaib, individually, and Maureen Taylor, individually. It was filed in the United States District Court for the Eastern District of Michigan against Governor Richard Snyder, State Treasurer Andrew Dillon, and Secretary of State Ruth Johnson, in their official capacities. The suit alleges that P.A. 436 violates constitutional voting rights under the Equal Protection Clause and the Due Process Clause of the 14th Amendment. In their first amended complaint, filed June 27, 2013, the plaintiffs sought: (1) to enjoin the defendants and others from implementing or enforcing P.A. 436; (2) an order prohibiting any emergency manager appointed under P.A. 436 from exercising any authority; (3) an order that actions exercised by any emergency manager are unenforceable; and (4) preclearance of the cities and school districts currently with emergency

2

managers under § 3(c) of the Voting Rights Act. Amended Complaint at ¶¶ 32–33, *Detroit Branch NAACP*, No. 13-12098.

On July 18, 2013, the City of Detroit filed this chapter 9 bankruptcy case.

On July 25, 2013, upon a motion filed by the City (Dkt. #56), the Court entered an order pursuant to 11 U.S.C. § 105(a) extending the stay to certain state entities, including the governor and the treasurer. (Dkt. #166)

On August 22, 2013, the district court entered separate orders staying and administratively closing both the *Phillips* case and the *NAACP* case due to the City's bankruptcy filing and this Court's July 25, 2013 order.

The plaintiffs in both of those lawsuits have filed separate motions for relief from the stay. Each group of plaintiffs contends that its lawsuit is not stayed by the Court's July 25, 2013 order because its suit was not included in the City's motion to extend the stay. In the alternative, each group seeks relief from the stay to permit it to continue its district court lawsuit.

The City and the State of Michigan filed objections to both motions.

The Court conducted a hearing on the NAACP motion October 2, 2013, and took the matter under advisement. The Court concluded that a hearing is not necessary on the Phillips motion.

**II. Whether the July 25, 2013 Order
Applies to the Two Lawsuits**

The July 25, 2013 order extending the automatic stay provides in part:

> 2) Pursuant to section 105(a) of the Bankruptcy Code, the Chapter 9 stay hereby is extended to apply in all respects (to the extent not otherwise applicable) to the State Entities (defined as the Governor, the State Treasurer and members of the Loan Board, collectively with the State Treasurer and the Governor, and together with each entity's staff, agents and representatives), the Non-Officer Employees and the City Agents and Representatives.

3

13-53846-swr    Doc 2536-1    Filed 01/06/14    Entered 01/06/14 11:12:44    Page 3 of 14
13-53846-tjt    Doc 2671-2    Filed 02/10/14    Entered 02/10/14 14:16:09    Page 3 of 14

> 3) For the avoidance of doubt, each of the Prepetition Lawsuits hereby is stayed, pursuant to section 105(a) of the Bankruptcy Code, pending further order of this Court.

The plaintiffs in each suit argue that the order does not apply to their lawsuit because they are not creditors of the City and their lawsuit does not assert any claim against the City.

The City and the State of Michigan assert that the order does apply to the plaintiffs' lawsuits because the lawsuits will directly interfere with the City's chapter 9 case and may deny the City the protections of chapter 9.

The Court will first address the circumstances of the *NAACP* case and explain why the order does apply to that suit. The Court will then address why the July 25, 2013 order does not apply to the *Phillips* case.

### A. Whether the July 25, 2013 Order Applies to the *NAACP* Case

The Court concludes that this order does apply to the *NAACP* case. This suit explicitly seeks to remove all power and authority from the Detroit emergency manager. Also, if the plaintiffs had included the City as a defendant in the lawsuit, it would have been stayed as to the City under 11 U.S.C. § 362(a) because the lawsuit had the potential to directly impact the City's bankruptcy case. The July 25, 2013 order extended that stay to any suits against the governor and the treasurer that might have the same impact on the City's bankruptcy case.

The Court recognizes that the *NAACP* lawsuit purports to seek relief not only as to the emergency manager for the City of Detroit, but also as to the emergency managers in several other municipalities who are not before the Court – the City of Allen Park, the City of Benton Harbor, the Detroit Public School System, the City of Ecorse, the City of Flint, the Highland Park School System, the Muskegon Heights School System, and the City of Pontiac. Obviously,

whatever interests the plaintiffs in the *NAACP* case may have in vindicating their rights, if any, in those municipalities can only be addressed elsewhere.

Without addressing the substantive merits of the NAACP plaintiffs' claims in their suit, there is nonetheless one aspect of the suit that substantially undermines their interest in pursuing their claims as to these other municipalities. Although the suit purports to challenge all of the emergency manager appointments under P.A. 436, there is a serious question as to whether this suit is really about any emergency manager other than the Detroit emergency manager. This concern arises because it does not appear that any of the plaintiffs in the *NAACP* suit have standing to challenge any of the emergency manager appointments other than the Detroit emergency manager appointment. Accordingly, unlike the *Phillips* case, discussed below, the *NAACP* case appears to be directed much more to the Detroit emergency manager than any other emergency manager.

Before developing this point any further, however, the Court must pause to recognize that the precise issue of whether these plaintiffs have standing to pursue their claims in their district court lawsuit is not before this Court in this bankruptcy case and it would be inappropriate for this Court to address the standing issue directly.

The basis of this concern about the NAACP plaintiffs' standing lies in their first amended complaint. It alleges that each individual plaintiff is a resident and voter in the City of Detroit. First Amended Complaint at ¶¶ 24–27, *Detroit Branch NAACP*, No. 13-12098. Accordingly, their standing to challenge the emergency manager appointments in any other municipality would be highly suspect.

The Supreme Court has established this test to determine a plaintiff's standing:

> The Art. III judicial power exists only to redress or otherwise
> protect against injury to the complaining party, even though the

court's judgment may benefit other's collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threatened or actual injury resulting from the putatively illegal action[.]"

*Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205 (1975) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S. Ct. 1146, 1148 (1973)); s*ee also Hollingsworth v. Perry*, 133 S. Ct. 2652, 2663 (2013) ("It is, however, a 'fundamental restriction on our authority' that '[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'") (quoting *Powers v. Ohio*, 499 U.S. 400, 410, 111 S. Ct. 1364, 1371 (1991)); *Kowalski v. Tesmer*, 543 U.S. 125, 125 S. Ct. 564 (2004); *Conn v. Gabbert*, 526 U.S. 286, 119 S. Ct. 1292 (1999).

In this suit, the two other plaintiffs are the Detroit Branch NAACP and the Michigan State Conference NAACP. Describing these organizations, the first amended complaint states:

> 22. Plaintiff Detroit Branch NAACP, chartered in 1912, is the NAACP's largest Branch in America. Plaintiff Detroit Branch NAACP has, throughout its 99 year history, fought, through the democratic process, for the cause of civil rights and equal treatment for all. Plaintiff Detroit Branch NAACP has fought in the courts to preserve and protect voting rights in the State of Michigan. . . .
>
> 23. Plaintiff Michigan State Conference NAACP is the umbrella organization for all NAACP units or branches within the State of Michigan. It is the central authority, responsible for coordinating all local NAACP branches around the State.

First Amended Complaint at ¶¶ 22–23, *Detroit Branch NAACP*, No. 13-12098.

The Sixth Circuit has addressed the standing of a membership organization like the Detroit Branch NAACP:

> A voluntary membership organization has standing to sue on behalf of its members "when (a) its members otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires participation of

6

> individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm.*, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)[.]

*Am. Civil Liberties Union of Ohio Found., Inc. v. Ashbrook*, 375 F.3d 484, 495–96 (6th Cir. 2004).

It does appear likely that under *Ashbrook*, the Detroit Branch NAACP has standing to challenge the Detroit emergency manager appointment. However, the first amended complaint alleges no facts that would establish its standing to challenge any of the other emergency manager appointments.

Similarly, the first amended complaint alleges no facts establishing that the Michigan State Conference NAACP would have any standing under *Ashbrook*. Indeed, as quoted above, paragraph 23 only states that it is an "umbrella organization" for the NAACP branches within Michigan, and that it is the "central authority, responsible for coordinating all local NAACP branches around the State."

These standing considerations strongly suggest that despite the much more broadly stated goals of the lawsuit, its primary, if not sole, objective is the removal of the Detroit emergency manager. In any event, it appears likely that this relief is the only relief that the plaintiffs could be granted, if any.

The impact in this bankruptcy case of the potential removal of the Detroit emergency manager by the plaintiffs' lawsuit cannot be overstated. Section 18(1) of P.A. 436 provides, "This section . . . empowers the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9." M.C.L. § 141.1558(1). The NAACP plaintiffs' lawsuit seeks an order prohibiting any emergency manager appointed under P.A. 436 from exercising any authority under the act. This lawsuit, therefore, directly threatens the City's

7

ability to continue in this bankruptcy case. If P.A. 436 were found to be unconstitutional, as the plaintiffs' lawsuit claims, then the City's emergency manager would be removed from office. Under applicable state law, no one else would be authorized to prosecute this chapter 9 case on behalf of the City.

Accordingly, due to its potential impact on this bankruptcy case, the Court concludes that the July 25, 2013 order does apply to the *NAACP* case.

### B. Whether the July 25, 2013 Order Applies to the *Phillips* Case

In contrast to the *NAACP* case, the *Phillips* case includes residents and officials of not only the City of Detroit but also some of the other municipalities in which emergency managers have been appointed. Significantly, in the motion for relief from the stay that the plaintiffs in the *Phillips* case filed, they have attempted to overcome the concerns that compelled the conclusion that the *NAACP* case is subject to the July 25, 2013 order. The Phillips motion states:

> 15. Petitioners also seek to amend their Complaint, (Exh. 6.1, the *Phillips* case Dkt. #1), to withdraw the plaintiffs Phillips, Valenti and AFSCME Council 25 as plaintiffs from the underlying action and to voluntarily dismiss, without prejudice, Count I of the Complaint, which was asserted by the withdrawing plaintiffs.

(Dkt. #1004) Count I of the complaint, which the plaintiffs propose to withdraw, asserted the plaintiffs' claims in relation to the effect of P.A. 436 in Detroit.

Moreover, the conclusion of the motion reiterates that the plaintiffs intend to "amend their Complaint to provide for the voluntary withdrawal of individual plaintiffs Phillips, Valenti, and AFSCME Council 25 and the voluntary dismissal of Count I of their Complaint, without bearing on the Debtor's rights in this bankruptcy proceeding." (Dkt. #1004, at 15)

By these representations, which the Court accepts, it appears that the plaintiffs in the *Phillips* case intend to withdraw from their suit any request for relief as to the Detroit emergency

8

manager. The Court concludes that this proposed amendment would eliminate the potential that the *Phillips* case might result in the removal of the Detroit emergency manager. Therefore, the potential amendment also removes the *Phillips* case from the effect of the July 25, 2013 order. Accordingly, subject to that condition, the Court concludes that the *Phillips* case is not subject to the July 25, 2103 order.

### III. Whether to Grant the NAACP Plaintiffs' Motion for Relief from the Stay for Cause

Because the July 25, 2013 order does stay the *NAACP* case, those plaintiffs seek relief from the extended stay in order to proceed with their lawsuit.

The July 25, 2013 order states, "This order is entered without prejudice to the right of any creditor to file a motion for relief from the stay imposed by this order using the procedures of and under the standards of 11 U.S.C. § 362(d)–(g)."

11 U.S.C. § 362(d)(1) states, "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . for cause[.]"

Under 11 U.S.C. § 362(g), the debtor bears the burden of proving that there is not cause for relief from the stay.

"Cause" is not a defined term, "so courts must determine whether discretionary relief is appropriate on a case-by-case basis." *Trident Assoc. Ltd. P'ship v. Metro. Life Ins. Co.* (*In re Trident Assoc. Ltd. P'ship*), 52 F.3d 127, 131 (6th Cir. 1995) (quotation marks omitted) (quoting *In re Laguna Assoc. Ltd. P'ship*, 30 F.3d 734, 737 (6th Cir. 1994)). Whether to grant such relief "resides within the sound discretion of the bankruptcy court." *Garzoni v. K-Mart Corp.* (*In re Garzoni*), 35 F. App'x 179, 181 (6th Cir. 2002).

9

13-53846-swr Doc 2367-1 Filed 02/06/14 Entered 02/06/14 11:16:09 Page 9 of 14
13-53846-swr Doc 2336 Filed 12/06/13 Entered 12/06/13 11:12:44 Page 9 of 14

"Determining cause is not a litmus test or a checklist of factors. It requires consideration of many factors and a balancing of competing interests." *Chrysler LLC v. Plastech Engineered Prods., Inc.* (*In re Plastech Engineered Prods., Inc.*), 382 B.R. 90, 109 (Bankr. E.D. Mich. 2008); *see also In re Cardinal Indus., Inc.*, 116 B.R. 964, 983 (Bankr. S.D. Ohio 1990) ("In determining whether or not cause exists, the bankruptcy court must balance the inherent hardships on all parties and base its decision on the degree of hardship and the overall goals of the Bankruptcy Code.").

Accordingly, in balancing the competing interests to determine whether there is cause for relief from the stay, the Court will consider both the harm to the City if the motion is granted and the harm to the NAACP plaintiffs if the motion is denied. In addition, the Court concludes that it is appropriate to consider the public interest in this context, just as it was appropriate to consider the public interest when determining whether to extend the stay when the City requested it. *See, e.g., In re Trans-Serv. Logistics, Inc.,* 304 B.R. 805, 807 (Bankr. S.D. Ohio 2004).

The NAACP plaintiffs contend that there is cause for relief from the stay due to the extraordinary importance of the voting rights that their lawsuit seeks to vindicate and because their lawsuit will have little or no impact on the City's bankruptcy, to which they do not object. At the hearing on this motion, the plaintiffs' counsel clarified that in their lawsuit, the plaintiffs seek only prospective relief and do not seek to invalidate any actions taken by the emergency manager in Detroit or in any other city. They do acknowledge, however, that success in their lawsuit may lead to the removal of the emergency manager in Detroit. They contend nevertheless that the mayor of Detroit can then decide whether to proceed in chapter 9. They assert that their lawsuit is not a collateral attack on this bankruptcy, but a much broader challenge to the emergency manager law.

The City and the State of Michigan contend that the plaintiffs have failed to demonstrate cause for relief from the stay. They argue that numerous parties in this case have challenged the constitutionality of P.A. 436 in the context of eligibility objections and that it does not promote judicial economy to have that issue litigated in other courts.

### A. The Harm to the City
### If Relief from the Stay Is Granted

The harm to the City that might result if relief from the stay is granted is largely the same harm that §§ 362(a) and 922(a)(1), as well as the Court's July 25, 2013 order, seek to prevent. Those bankruptcy code provisions and the Court's order are designed to consolidate into the bankruptcy case all proceedings that relate to and impact the case, so that the debtor, and, for that matter, all of the other parties, are not required to endure the expense and complexity of litigating multiple issues in multiple courts. Such duplicative litigation also creates the risk of inconsistent results.

If relief from the stay were granted, the City would be required to request leave from the district court to intervene in the plaintiffs' lawsuit in order to protect its interest in adjusting its debts through this bankruptcy. That would require the City to incur the expense of litigating the constitutionality of P.A. 436 in two courts. Indeed if other similar motions for relief from the stay are granted, the issue would then have to be litigated in that many more courts.

The plaintiffs have attempted to minimize the impact of their lawsuit on the City by arguing that if the mayor of Detroit so chooses, this bankruptcy case can continue even without an emergency manager. However, as developed above, that is not so. M.C.L. § 141.1558(1) states that only the emergency manager may represent the City in this chapter 9 case. There is no provision in law for the mayor or any other city official to act on the City's behalf in this case.

## B. The Harm to the NAACP Plaintiffs
## If Relief from the Stay Is Denied

The harm that results to the NAACP plaintiffs if relief from the stay is denied is substantial. They will be required to defer litigating the important voting rights claims in their lawsuit until this bankruptcy case is resolved. However, this harm is as much a consequence of their own choices as it is of either the bankruptcy stay or this Court's July 25, 2013 order. The plaintiffs had the same full opportunity to file a timely eligibility objection challenging P.A. 436 as every other creditor, voter and resident of the City of Detroit had.

On that point, it should be noted that the plaintiffs do not assert that they were not aware of the filing of this bankruptcy case by the City of Detroit in time to file a timely eligibility objection. Moreover, the plaintiffs have submitted no evidence that they were not aware of the Court's August 19, 2013 deadline to file eligibility objections. Moreover, at the hearing on this motion, the Court offered the plaintiffs an opportunity to file an objection to eligibility, but plaintiffs' attorney declined that opportunity.

The record reflects that the NAACP plaintiffs made the conscious choice not to file an objection to eligibility in this case and instead chose to take the risk that their lawsuit would be allowed to proceed despite this bankruptcy case. Indeed, the NAACP plaintiffs rather vehemently assert that they do not object to the City's eligibility to be in a chapter 9 bankruptcy case. But the terminating impact that the success of their lawsuit would have on this bankruptcy makes that assertion ring hollow. Much of their lawsuit is precisely an eligibility objection, simply not labeled and filed as such. Although they were certainly not required to file an eligibility objection, their choice has the legal consequence that their suit is stayed by this case.

12

## C. The Public Interest

Certainly, the public has a substantial interest in the speedy and efficient resolution of litigation like the *NAACP* suit that seeks to vindicate a right as central to our democracy as the right to vote.

At the same time, however, the public has a substantial interest in the speedy and efficient resolution of a municipal bankruptcy case that affects as many people and institutions, and as much of the local, regional and national economy, as this case does.

The public also has an interest in the opportunity that this bankruptcy case may provide for the City of Detroit not only to adjust its debt and to restore the basic services that its residents need for their health and safety but also to regenerate its economic livelihood.

The NAACP plaintiffs' motion for relief from the stay does not require this Court to choose which of these important interests should prevail. It only requires the Court to determine whether it is necessary and appropriate to continue to defer the resolution of the plaintiffs' lawsuit pending the outcome of this bankruptcy.

## D. Conclusion

In its discretion, the Court concludes that although the considerations on each side are substantial, on balance, the factors suggesting that the motion for relief from the stay should be denied outweigh the considerations suggesting otherwise. The NAACP plaintiffs' claims in their lawsuit are important claims. However, those claims primarily and directly challenge the appointment of the Detroit emergency manager and the claims could have been presented in this case in a timely eligibility objection.

The NAACP plaintiffs' decision to forego that opportunity creates the potential, if the motion is granted, for the City to incur unnecessary litigation expense and delay in this

13

proceeding. It also creates the potential to prematurely terminate this bankruptcy case. In these circumstances, the Court concludes that it is appropriate to require the plaintiffs to await resolution of their claims until this bankruptcy case is resolved.

Accordingly, the Court concludes that the City of Detroit and the State of Michigan have met their burden of establishing that there is not cause for relief from the stay.

## IV. Order

For these reasons, it is hereby ordered that it is not necessary for the Court to grant relief from the stay to allow the *Phillips* case to proceed because that case is not subject to the Court's July 25, 2013 order. This order is conditioned on the Phillips plaintiffs' amendment of their complaint to eliminate their request for the removal of the Detroit emergency manager and for any other relief that diminishes the Detroit emergency manager's authority under P.A. 436.

It is further ordered that the *NAACP* case is subject to the Court's July 25, 2013 order and that the NAACP plaintiffs' motion for relief from the stay is denied.


For publication


Signed on November 06, 2013

                                                    /s/ Steven Rhodes
                                                  Steven Rhodes
                                                  United States Bankruptcy Judge

14

13-53846-swr  Doc 1536  Filed 11/06/13  Entered 11/06/13 14:16:09  Page 14 of 14
13-53846-tjt  Doc 2671-2  Filed 02/10/14  Entered 02/10/14 11:02:44  Page 14 of 14