# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| In re | No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, | Chapter 9 |
| Debtor. | HON. STEVEN W. RHODES |

## ATTACHMENT

## APPELLANT STATE OF MICHIGAN'S DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

| Item | Date Filed | Docket # | Description |
|---|---|---|---|
| 9. | 12/2/2013 | 1888 | Petitioner's Response to Respondents Snyder and Dillon's Motion for Reconsideration (Dkt. #1745) of Opinion and Order (Dkt. #1536-1) Denying NAACP's Motion for Relief from Stay and Granting Phillips' Motion for Relief from Stay (Attachments: Exhibit 1; Exhibit 2; Exhibit 3; Exhibit 4; Exhibit 5; Exhibit 6) |

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                                    Chapter 9

City of Detroit, Michigan,                               Case No. 13-53846

    Debtor.                                          Hon. Steven W. Rhodes

_____/

**PETITIONERS' RESPONSE TO RESPONDENTS SNYDER AND DILLON'S MOTION FOR RECONSIDERATION (DKT. #1745) OF OPINION AND ORDER (DKT. # 1536-1) DENYING NAACP'S MOTION FOR RELIEF FROM STAY AND GRANTING PHILLIPS MOTION FOR RELIEF FROM STAY**

NOW COME Petitioners, as Plaintiffs in the United States District Court Eastern District of Michigan Case No. 13-CV-11370, by and through their attorneys, and in response to Respondents Snyder and Dillon's Motion for Reconsideration, respectfully pray that this Honorable Court DENY Respondents' motion for the reasons set forth in the brief attached hereto as Exh. 3.

Dated: December 2, 2013                    Respectfully submitted,

                                          */s/Hugh M. Davis*
                                          Hugh M. Davis (P12555)
                                          Cynthia Heenan (P53664)
                                          Constitutional Litigation Associates, PC
                                          450 W. Fort St., Ste. 200
                                          Detroit, MI 48226
                                          (313) 961-2255/Fax: (313) 961-5999
                                          Davis@ConLitPC.com and
                                          Heenan@ConLitPC.com
                                          Attorneys for Petitioners

                                          Julie H. Hurwitz (P34720)
                                          William H. Goodman (P14173)
                                          Attorneys for Petitioners

Goodman & Hurwitz PC on behalf of Detroit &
Michigan National Lawyers Guild
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170/Fax: (313) 567-4827
jhurwitz@goodmanhurwitz.com
bgoodman@goodmanhurwitz.com
Attorneys for Petitioners

John C. Philo (P52721)
Anthony D. Paris (P71525)
SUGAR LAW CENTER
FOR ECONOMIC & SOCIAL JUSTICE
4605 Cass Ave., 2nd Floor
Detroit, Michigan 48201
(313) 993-4505/Fax: (313) 887-8470
jphilo@sugarlaw.org
tparis@sugarlaw.org
Attorneys for Petitioners

Herbert A. Sanders (P43031)
THE SANDERS LAW FIRM PC
615 Griswold St. Ste. 913
Detroit, Michigan 48226
(313) 962-0099/Fax: (313) 962-0044
haslawpc@gmail.com
Attorneys for Petitioners

Richard G. Mack, Jr. (P58657)
Keith D. Flynn (P74192)
MILLER COHEN, P.L.C.
600 W. Lafayette Blvd., 4th Floor
Detroit, Michigan 48226
(313) 964-4454/Fax: (313) 964-4490
richardmack@millercohen.com
Attorneys for Petitioners

Darius Charney
Ghita Schwarz
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th floor
New York, New York 10012
(212) 614-6464/Fax: (212) 614-6499
dcharney@ccrjustice.org
Attorneys for Petitioners

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**

In Re:

City of Detroit, Michigan

Debtor.

Chapter 9
Case No. 13-53846
Hon. Steven W. Rhodes

_____/

## <u>EXHIBIT LIST</u>

Ex. 1   None

Ex. 2   None

Ex. 3   Brief in Support of Petitioners' Response to Respondent's Snyder and Dillon's Motion for Reconsideration of Opinion and Order Denying NAACP's Motion for Relief From Stay and Granting Phillips Motion for Relief From Stay.

Ex. 4   Certificate of Service

Ex. 5   None

Ex. 6.1 Proposed First Amended Complaint

F:\Cases\DPS (P v. S)\In Re Detroit Bankruptcy\Pldgs\Index of Exhibits to Response.doc

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                                                    Chapter 9

City of Detroit, Michigan,                               Case No. 13-53846

       Debtor.                                    Hon. Steven W. Rhodes

_____/

EXHIBIT 1 - NONE

TO:
**PETITIONERS' RESPONSE TO RESPONDENTS SNYDER AND DILLON'S MOTION
FOR RECONSIDERATION (DKT. #1745) OF OPINION AND ORDER (DKT. # 1536-1)
DENYING NAACP'S MOTION FOR RELIEF FROM STAY AND
GRANTING PHILLIPS MOTION FOR RELIEF FROM STAY**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

        Debtor.

_____/

Chapter 9

Case No. 13-53846

Hon. Steven W. Rhodes

EXHIBIT 2 - NONE

TO:

**PETITIONERS' RESPONSE TO RESPONDENTS SNYDER AND DILLON'S MOTION FOR RECONSIDERATION (DKT. #1745) OF OPINION AND ORDER (DKT. # 1536-1) DENYING NAACP'S MOTION FOR RELIEF FROM STAY AND <u>GRANTING PHILLIPS MOTION FOR RELIEF FROM STAY</u>**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                          Chapter 9

City of Detroit, Michigan,                      Case No. 13-53846

      Debtor.                            Hon. Steven W. Rhodes

_____/


### EXHIBIT 3 - BRIEF IN SUPPORT OF:


**PETITIONERS' RESPONSE TO RESPONDENTS SNYDER AND DILLON'S MOTION
FOR RECONSIDERATION (DKT. #1745) OF OPINION AND ORDER (DKT. # 1536-1)
DENYING NAACP'S MOTION FOR RELIEF FROM STAY AND
<u>GRANTING PHILLIPS MOTION FOR RELIEF FROM STAY</u>**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

     Debtor.

_____/

Chapter 9

Case No. 13-53846

Hon. Steven W. Rhodes

## BRIEF IN OPPOSITION TO RESPONDENTS SNYDER AND DILLON'S MOTION FOR RECONSIDERATION (DKT. #1745) OF OPINION AND ORDER (DKT. # 1536) DENYING NAACP'S MOTION FOR RELIEF FROM STAY AND GRANTING PHILLIPS MOTION FOR RELIEF FROM STAY

### INTRODUCTION

Petitioners (Plaintiffs in *Catherine Phillips, et al. v. Snyder and Dillon*, Case No. 13-CV-11370, filed on March 27, 2013 in the United States District Court for the Eastern District of Michigan (hereinafter, "the *Phillips* case")) filed a Motion for Relief from Stay (Dkt. # 1004), seeking clarification or modification of this Court's Extended Stay Order (Dkt. # 166), offering to voluntarily withdraw several plaintiffs and amend the remaining plaintiffs' complaint by removing Count I. On November 6, 2013, this Court issued an Opinion and Order (Dkt. #1536) ruling that, in light of Petitioners' offer to withdraw those plaintiffs and amend the complaint, the Extended Stay Order did not apply to Petitioners' suit against Governor Snyder and former Treasurer Dillon.

Specifically, this Court stated:

In contrast to the NAACP case, the *Phillips* case includes residents and officials of not only the City of Detroit but also some of the other municipalities in which

1

emergency managers have been appointed. Significantly, in the motion for relief from the stay that the plaintiffs in the *Phillips* case filed, they have attempted to overcome the concerns that compelled the conclusion that the NAACP case is subject to the July 25, 2013 order. The Phillips motion states:

> 15. Petitioners also seek to amend their Complaint, (Exh. 6.1, the Phillips case Dkt. #1), to withdraw the plaintiffs Phillips, Valenti and AFSCME Council 25 as plaintiffs from the underlying action and to voluntarily dismiss, without prejudice, Count I of the Complaint, which was asserted by the withdrawing plaintiffs.

(Dkt. #1004) Count I of the complaint, which the plaintiffs propose to withdraw, asserted the plaintiffs' claims in relation to the effect of P.A. 436 in Detroit.

Moreover, the conclusion of the motion reiterates that the plaintiffs intend to "amend their Complaint to provide for the voluntary withdrawal of individual plaintiffs Phillips, Valenti, and AFSCME Council 25 and the voluntary dismissal of Count I of their Complaint, without bearing on the Debtor's rights in this bankruptcy proceeding." (Dkt. #1004, at 15)

By these representations, which the Court accepts, it appears that the plaintiffs in the *Phillips* case intend to withdraw from their suit any request for relief as to the Detroit emergency manager. The Court concludes that this proposed amendment would eliminate the potential that the *Phillips* case might result in the removal of the Detroit emergency manager. Therefore, the potential amendment also removes the *Phillips* case from the effect of the July 25, 2013 order. Accordingly, subject to that condition, the Court concludes that the *Phillips* case is not subject to the July 25, 2103 order.

(Dkt. # 1536 at 8-9)

This Court's determination that the *Phillips* case is not subject to the Extended Stay Order was "conditioned on the Phillips plaintiffs' amendment of their complaint to eliminate their request for the removal of the Detroit emergency manager and for any other relief that diminishes the Detroit emergency manager's authority under P.A. 436." *Id.* at 14.

Based upon the above quoted language of the Court's order, and prior to the Respondents Snyder and Dillon filing their *Motion for Reconsideration* (Dkt. #1745), Petitioners concluded that in addition to the voluntary withdrawal of plaintiffs Phillips, Valenti, and AFSCME Council 25, and the voluntary dismissal of Count I of the Complaint, (Exh.6, *Proposed Amended*

*Complaint*, attached hereto) they would also voluntarily dismiss Count IX. After re-drafting their proposed Amended Complaint, but prior to the filing of their motion to re-open the case before Hon. Judge Steeh, Respondents Snyder and Dillon filed the instant *Motion for Reconsideration*, (Dkt. #1745). They seek to have this Court reconsider its *Opinion and Order*, (Dkt. #1536), based not upon the actual language of the *Order*, but rather upon Respondents' apparent belief that Petitioners would not make any other revisions to their Complaint in order to comply with this Court's Order. Indeed, rather than communicate with Petitioners' counsel to seek a cooperative approach to fulfilling this Court's *Order* while allowing Federal Judge Steeh to proceed, Respondents filed this *Motion* in an attempt to prevent the fundamental Constitutional issue from being adjudicated at all.

Respondents assert that *any* adjudication of PA 436's constitutionality by a Federal District Court would, by definition, "pose serious questions regarding the validity of Detroit's bankruptcy filing." (Dkt. #1745, Page 10). The Respondents suggest, incredibly, that so long as the City of Detroit is in the midst of this bankruptcy proceeding, the citizens of the State of Michigan have no right to seek judicial relief to ensure that the Michigan legislation – enacted by our State legislature – complies with the United States Constitution. Notably, Debtor City of Detroit does not seek reconsideration of this Court's Order. Regardless, because the Court's Order adequately protects the Debtor while also acknowledging the important constitutional rights that Petitioners must be allowed to vindicate, Respondents' Motion for Reconsideration should be DENIED in its entirety.

## STANDARD OF REVIEW

As Respondents correctly conceded, a motion for reconsideration should only be granted in the rare case where the movant can meet its burden of demonstrating: (1) a palpable defect; (2)

that the palpable defect has misled the court and the parties; and (3) that the palpable defect was outcome-determinative. LR 9024-1(a)(3), *Papas v. Buchwald Capital Advisors, LLC (In re Greektown Holdings, LLC)*, 728 F.3d 567, 574 (6th Cir. Mich. 2013). "A 'palpable defect' is 'a defect that is obvious, clear, unmistakable, manifest, or plain.'" *United States v. Lockett*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004) (quoting *United States v. Cican*, 156 F. Supp. 2d 661, 668 (E.D. Mich. 2001)). Because Respondents cannot demonstrate an outcome-determinative palpable error that misled the Court and the parties, their motion for reconsideration should be denied.

## ARGUMENT

I. **THE PLAIN LANGUAGE OF THIS COURT'S NOVEMBER 6, 2013 OPINION AND ORDER ADDRESSES THE ARGUMENTS RAISED BY RESPONDENTS.**

The thrust of the Respondents' argument for reconsideration is that this Court erred by permitting Petitioners' suit to go forward in the District Court since the suit could potentially result in the removal of Kevin Orr because the Court's only required Petitioners to withdraw Plaintiffs Phillips, Valenti, and AFSCME Council 25 and dismiss Count I.

This Court's *Order and Opinion* however directly addressed Respondents' arguments while preserving the Constitutional rights of the Petitioners. This Court's *Order* does not state that Petitioners' suit is not subject to the Extended Stay Order if Plaintiffs Phillips, Valenti, and AFSCME Council 25 withdraw and the remaining Plaintiffs simply dismiss Count I. Rather, the *Order* states that Petitioners must amend their complaint "to eliminate their request for the removal of the Detroit Emergency Manager and for any other relief that diminishes the Detroit Emergency Manager's authority under P.A. 436." *Id.* at 14. In light of that language, Respondents are attacking a straw man. And as set forth in Section II, *infra*, Petitioners

4

understood the conditions set forth by this Court to encompass more than the simple dismissal of Count I and have revised their Proposed Amended Complaint (Exh. 6) to comply with this Court's directive. Because this Court's Order—as written—suffers from no palpable error, Respondents' *Motion* should be denied.

## II. PETITIONERS' REVISED PROPOSED AMENDED COMPLAINT COMPLIES WITH THIS COURT'S ORDER THAT PETITIONERS NOT SEEK TO REMOVE DEBTOR'S EMERGENCY MANAGER OR DIMINISH HIS AUTHORITY.

In order to satisfy the conditions set forth by this Court in its Order provisionally finding that the Extended Stay Order does not apply to the *Phillips* case, Petitioners had already decided to make further amendments to their complaint. Specifically, and with respect to this Court's directive that Petitioners' amended complaint must not "request . . . the removal of the Detroit emergency manager," Petitioners' revised Proposed Amended Complaint thus also voluntarily dismisses Count IX. (Exh. 6). Petitioners' revised Amended Complaint also eliminates any claims for injunctive relief, which satisfies this Court's condition that Petitioners not seek relief that would "diminish the Detroit emergency manager's authority." (Dkt. #1536).

With regard to Respondents' claim that "Count XI . . . argues that all emergency managers, including Detroit's Emergency Manager, must be removed," (Dkt. #1745, Page 9), Respondents grossly misrepresent the relief sought by Petitioners in that count. Count XI (renumbered as Count IX in Petitioners' revised Proposed Amended Complaint (Exh. 6)) is, like the other remaining counts, a claim challenging the constitutionality of a provision of PA 436 (in this count challenging, on equal-protection grounds, PA 436's own provisions for the removal of an emergency manager). Like the other remaining counts in Petitioners' revised Proposed

5

Amended Complaint, (Exh. 6), Petitioners seek neither the removal of Debtor's emergency manager nor the diminution of his authority.

What Petitioners' revised Proposed Amended Complaint (Exh. 6) does seek is declaratory relief; specifically, Petitioners seek a declaration, from an Article III court, regarding the constitutionality of PA 436. Respondents argue that "any finding that the statute is unconstitutional would pose serious questions regarding the validity of Detroit's bankruptcy filing and its ability to move forward in the restructuring of its debts," and therefore, "Petitioners' lawsuit would unquestionably impact, directly or indirectly, bankruptcy proceedings before this Court." (Dkt. #1745 at 8). Setting aside for a moment the troubling question of whether the State has any legitimate interest in perpetuating an unconstitutional law for Debtor's benefit, Respondents' *in terrorem* argument is necessarily based on forecasting what relief might be granted by the District Court.

If Petitioners are successful, the impact of the declaratory relief on the bankruptcy is unknown because the scope of the relief granted cannot be known until such time as the District Court actually issues its findings. PA 436 could be held unconstitutional in its entirety, in part, or not at all. But until or unless an Article III court rules on the declaratory relief Petitioners seek, any argument regarding the impact on Debtor's bankruptcy is pure speculation, particularly because nothing in Petitioners' revised proposed amended complaint seeks to remove Debtor's emergency manager or put a stop to Debtor's bankruptcy proceedings.

Assuming that Petitioners succeed in obtaining a declaration that PA 436 is facially unconstitutional in its entirety, a new, separate action would be required to seek the removal of Debtor's emergency manager and/or challenge the validity of actions undertaken by him. To the extent that such an action sought to challenge the validity of Debtor's bankruptcy proceedings, it

would necessarily be heard by this Court. At that time, this Court would be able to order the necessary in-depth briefing to properly determine the impact of any declaratory judgment on the bankruptcy proceedings, <u>based upon the actual text of the ruling</u>. But until and unless that happens, the State is essentially arguing that the question of the constitutionality of a law with statewide effect should not be heard by any court because it might call into question the lawfulness of a chain of events that found their genesis in an unconstitutional law.

There is no question that the State recognizes this possibility—it argues that "any finding that the statute is unconstitutional would pose serious questions regarding the validity of Detroit's bankruptcy filing and its ability to move forward in the restructuring of its debts," (Dkt. #1745, Page 10), as if the importance of fidelity to our State and Federal Constitutions is somehow subordinate to Respondents' desire, now laid bare, to ensure that Debtor enjoys an untrammeled fast-track ride through bankruptcy proceedings. This kind of result-driven, ends-justify-the-means argument is repugnant to our tripartite system; indeed, it is repugnant to the integrity of our Constitutional democracy. It is true that a finding that PA 436 is unconstitutional might raise some "serious questions" regarding the validity of actions taken by emergency managers appointed pursuant to PA 436 throughout the State of Michigan. But the far more serious question is why Respondents argue that a law (and executive actions taken pursuant to that law) should be immune from judicial review for the very reason that such actions might be found to be in violation of the United States Constitution.

Put another way, it seems that Respondents would prefer that "progress" not be impeded by the inconvenience of upholding the Constitution. And to be sure, a great many things could be accomplished much faster if laws could simply be suspended or ignored whenever it was deemed "necessary." But thankfully, we are part of a system that prizes the rule of law over

speed. And if or when the time comes that PA 436 is declared unconstitutional, it will be up to this Court to deliberate and decide what impact such a finding has on Debtor's bankruptcy proceedings. In the meantime, however, the discrete question of the constitutionality of a statute that affects citizens statewide cannot be held hostage to the bankruptcy proceedings of a single municipality.

## CONCLUSION AND RELIEF REQUESTD

Because this Court's November 6, 2013 *Order* (Dkt. #1536) was correctly decided and for all of the reasons stated above (as well as in Petitioner's *Motion for Relief From Stay and Brief in Support* (Dkt. #1004 and #1004-4). Petitioners respectfully request that this Honorable Court DENY *Respondents' Motion for Reconsideration*, (Dkt.#1745), thereby allowing Petitioners to file their revised Proposed Amended Complaint and a determination can be made on the merits regarding the question of PA 436's constitutionality.

Dated: December 2, 2013                Respectfully submitted,

                                       /s/Hugh M. Davis
                                       Hugh M. Davis (P12555)
                                       Cynthia Heenan (P53664)
                                       Constitutional Litigation Associates, PC
                                       450 W. Fort St., Ste. 200
                                       Detroit, MI 48226
                                       (313) 961-2255/Fax: (313) 961-5999
                                       Davis@ConLitPC.com and
                                       Heenan@ConLitPC.com
                                       Attorneys for Petitioners

                                       Julie H. Hurwitz (P34720)
                                       William H. Goodman (P14173)
                                       Attorneys for Petitioners
                                       Goodman & Hurwitz PC on behalf of Detroit &
                                       Michigan National Lawyers Guild
                                       1394 E. Jefferson Ave.
                                       Detroit, MI 48207
                                       (313) 567-6170/Fax: (313) 567-4827

jhurwitz@goodmanhurwitz.com
bgoodman@goodmanhurwitz.com
Attorneys for Petitioners

John C. Philo (P52721)
Anthony D. Paris (P71525)
SUGAR LAW CENTER
FOR ECONOMIC & SOCIAL JUSTICE
4605 Cass Ave., 2nd Floor
Detroit, Michigan 48201
(313) 993-4505/Fax: (313) 887-8470
jphilo@sugarlaw.org
tparis@sugarlaw.org
Attorneys for Petitioners

Herbert A. Sanders (P43031)
THE SANDERS LAW FIRM PC
615 Griswold St. Ste. 913
Detroit, Michigan 48226
(313) 962-0099/Fax: (313) 962-0044
haslawpc@gmail.com
Attorneys for Petitioners

Richard G. Mack, Jr. (P58657)
Keith D. Flynn (P74192)
MILLER COHEN, P.L.C.
600 W. Lafayette Blvd., 4th Floor
Detroit, Michigan 48226
(313) 964-4454/Fax: (313) 964-4490
richardmack@millercohen.com
Attorneys for Petitioners

Darius Charney
Ghita Schwarz
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th floor
New York, New York 10012
(212) 614-6464/Fax: (212) 614-6499
dcharney@ccrjustice.org
Attorneys for Petitioners

F:\Cases\DPS (P v. S)\In Re Detroit Bankruptcy\Pldgs\Response to motion for recon - final after track changes accepted.docx

In re:                                          Chapter 9

City of Detroit, Michigan,                      Case No. 13-53846

       Debtor.                               Hon. Steven W. Rhodes

_____/


EXHIBIT 4 - CERTIFICATE OF SERVICE


**PETITIONERS' RESPONSE TO RESPONDENTS SNYDER AND DILLON'S MOTION
FOR RECONSIDERATION (DKT. #1745) OF OPINION AND ORDER (DKT. # 1536-1)
DENYING NAACP'S MOTION FOR RELIEF FROM STAY AND
<u>GRANTING PHILLIPS MOTION FOR RELIEF FROM STAY</u>**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

In Re:

City of Detroit, Michigan

Debtor.

Chapter 9
Case No. 13-53846
Hon. Steven W. Rhodes

_____/

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 2, 2013, he filed the following documents with the court, using the court's CM/ECF system, which will send notice of the filings to all registered participants in this matter.

**Petitioners' Response to Respondent's Snyder and Dillon's Motion for Reconsideration of Opinion and Order Denying NAACP's Motion for Relief from Stay and Granting Phillips Motion for Relief from Stay.**

And

**Petitioners' Brief in Support of Response to Respondent's Snyder and Dillon's Motion for Reconsideration of Opinion and Order Denying NAACP's Motion for Relief from Stay and Granting Phillips Motion for Relief from Stay.**

Respectfully submitted,

_/s/Hugh M. Davis_
Hugh M. Davis (P12555)
Cynthia Heenan (P53664)
Constitutional Litigation Associates, PC
450 W. Fort St., Ste. 200
Detroit, MI 48226
(313) 961-2255/Fax: (313) 961-5999
Davis@ConLitPC.com and
Heenan@ConLitPC.com
Attorneys for Petitioners

Julie H. Hurwitz (P34720)
William H. Goodman (P14173)
Attorneys for Petitioners
Goodman & Hurwitz PC on behalf of Detroit & Michigan National Lawyers Guild

1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170/Fax: (313) 567-4827
jhurwitz@goodmanhurwitz.com
bgoodman@goodmanhurwitz.com
Attorneys for Petitioners

John C. Philo (P52721)
Anthony D. Paris (P71525)
SUGAR LAW CENTER
FOR ECONOMIC & SOCIAL JUSTICE
4605 Cass Ave., 2nd Floor
Detroit, Michigan 48201
(313) 993-4505/Fax: (313) 887-8470
jphilo@sugarlaw.org
tparis@sugarlaw.org
Attorneys for Petitioners

Herbert A. Sanders (P43031)
THE SANDERS LAW FIRM PC
615 Griswold St. Ste. 913
Detroit, Michigan 48226
(313) 962-0099/Fax: (313) 962-0044
haslawpc@gmail.com
Attorneys for Petitioners

Richard G. Mack, Jr. (P58657)
Keith D. Flynn (P74192)
MILLER COHEN, P.L.C.
600 W. Lafayette Blvd., 4th Floor
Detroit, Michigan 48226
(313) 964-4454/Fax: (313) 964-4490
richardmack@millercohen.com
Attorneys for Petitioners

Darius Charney
Ghita Schwarz
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th floor
New York, New York 10012

(212) 614-6464/Fax: (212) 614-6499
dcharney@ccrjustice.org
Attorneys for Petitioners

F:\Cases\DPS (P v. S)\In Re Detroit Bankruptcy\Pldgs\COS for Response to Mtn for Recon.doc

In re:

City of Detroit, Michigan,

      Debtor.

_____/

Chapter 9

Case No. 13-53846

Hon. Steven W. Rhodes

EXHIBIT 5 - NONE

**PETITIONERS' RESPONSE TO RESPONDENTS SNYDER AND DILLON'S MOTION
FOR RECONSIDERATION (DKT. #1745) OF OPINION AND ORDER (DKT. # 1536-1)
DENYING NAACP'S MOTION FOR RELIEF FROM STAY AND
<u>GRANTING PHILLIPS MOTION FOR RELIEF FROM STAY</u>**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                                              Chapter 9

City of Detroit, Michigan,                          Case No. 13-53846

      Debtor.                                       Hon. Steven W. Rhodes

_____/


EXHIBIT 6 - PROPOSED FIRST AMENDED COMPLAINT

TO:


**PETITIONERS' RESPONSE TO RESPONDENTS SNYDER AND DILLON'S MOTION FOR RECONSIDERATION (DKT. #1745) OF OPINION AND ORDER (DKT. # 1536-1) DENYING NAACP'S MOTION FOR RELIEF FROM STAY AND <u>GRANTING PHILLIPS MOTION FOR RELIEF FROM STAY</u>**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Russ Bellant, President of the Detroit Library Commission;
Tawanna Simpson, Lamar Lemmons, Elena Herrada,
Detroit Public Schools Board Members; Donald Watkins,
and Kermit Williams, Pontiac City Council Members;
Duane Seats, Dennis Knowles, Juanita Henry, and
Mary Alice Adams, Benton Harbor Commissioners;
William "Scott" Kincaid, Flint City Council President;
Bishop Bernadel Jefferson; Paul Jordan; Rev. Jim Holley,
National Board Member, Rainbow Push Coalition;
Rev. Charles E. Williams II, Michigan Chairman,
National Action Network; Rev. Dr. Michael A. Owens,
Rev. Lawrence Glass, Rev. Dr. Deedee Coleman,
Bishop Allyson Abrams, Executive Board, Council
of Baptist Pastors of Detroit and Vicinity;

Case No.
Judge:

                        Plaintiffs,

vs.

RICHARD D. SNYDER, as Governor of the
State of Michigan, and ANDREW DILLON,
as the Treasurer of the State of Michigan, acting in
their individual and/or official capacities,

*First Amended Complaint for*
*Declaratory Relief*

                        Defendants.

_____/

Herbert A. Sanders (P43031)
**THE SANDERS LAW FIRM PC**
615 Griswold St. Ste. 913
Detroit, Michigan 48226
(313) 962-0099/Fax: (313) 962-0044
haslawpc@gmail.com
*Attorneys for Plaintiffs*
John C. Philo (P52721)
Anthony D. Paris (P71525)
**SUGAR LAW CENTER**

1

**FOR ECONOMIC & SOCIAL JUSTICE**
4605 Cass Ave., 2nd Floor
Detroit, Michigan 48201
(313) 993-4505/Fax: (313) 887-8470
jphilo@sugarlaw.org
tparis@sugarlaw.org
*Attorneys for Plaintiffs*

Julie H. Hurwitz (P34720)
William H. Goodman (P14173)
**GOODMAN & HURWITZ PC on behalf of
the DETROIT & MICHIGAN NATIONAL
LAWYERS GUILD**
1394 E. Jefferson Ave.
Detroit, Michigan 48207
(313) 567-6170/Fax: (313) 567-4827
jhurwitz@goodmanhurwitz.com
bgoodman@goodmanhurwitz.com
*Attorneys for Plaintiffs*

Richard G. Mack, Jr. (P58657)
Keith D. Flynn (P74192)
**MILLER COHEN, P.L.C.**
600 W. Lafayette Blvd., 4th Floor
Detroit, Michigan 48226
(313) 964-4454/Fax: (313) 964-4490
richardmack@millercohen.com
*Attorneys for Plaintiffs*

Darius Charney
Ghita Schwarz
**CENTER FOR CONSTITUTIONAL
RIGHTS**
666 Broadway, 7th floor
New York, New York 10012
(212) 614-6464/Fax: (212) 614-6499
dcharney@ccrjustice.org
*Attorneys for Plaintiffs*

Cynthia Heenan (P53664)
 Hugh M. Davis, Jr. (P12555)
**CONSTITUTIONAL LITIGATION
ASSOCIATES PC**
450 W Fort St Ste 200
Detroit, MI 48226
(313) 961-2255/Fax: (313) 961-5999

_____ /

## FIRST AMENDED COMPLAINT
## FOR DECLARATORY RELIEF

NOW COME Plaintiffs, and by and through their attorneys and for their First Amended Complaint, do hereby allege as follows.

## I. NATURE OF PLAINTIFFS' CLAIMS

1.  This is a federal civil rights and voting rights cause of action brought pursuant to 42 USC §1983 for violations of the Plaintiffs' federal and constitutional rights under the United States Constitution, Art. 4, §4; Amend. I; Amend. XIII; Amend. XIV; and pursuant to the *Voting Rights Act of 1965*, 42 U.S.C. §§ 1973 *et. seq.*

2.  The *Local Financial Stability and Choice Act*, Act No. 436, Public Acts of 2012, MCL §§ 141.1541 *et. seq.* (Public Act 436) effectively establishes a new form of government within the State of Michigan. The new form of government allows Michigan cities and other forms of municipal corporations to be ruled by one unelected official, who is vested with broad legislative power and whose orders, appointments, expenditures, and other decisions are not reviewable by local voters.

3.  Plaintiffs' rights under the United States Constitution, include:

    a.  A due process right to engage in collective bargaining.

    b.  A due process right to an elected, republican form of government;

    c.  A right to freedom of speech.

    d.  A right to petition local government.

3

e. A right to equal protection of laws granting Michigan citizens the right to vote in local elections and to remove emergency managers.

Each of these rights is violated by provisions of Public Act 436.

4. The Voting Rights Act of 1965 protects Plaintiffs from discriminatory laws that disenfranchise voters. Plaintiffs' voting rights are also violated by provisions of Public Act 436.

## II. JURISDICTION AND VENUE

5. Federal question jurisdiction is conferred by 28 USC §§ 1331, 1343(a)(3), 1343(a)(4), 1344, 2201 and 2202 over Plaintiffs' Constitutional and Voting Rights Act claims.

6. Venue is proper pursuant to 28 USC §1391, since all Defendants reside or are located in the Eastern District of Michigan and the events giving rise to this action occurred, in part, within this District.

## III. PARTIES

7. Plaintiff Russ Bellant is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan. Plaintiff Bellant is also President of the Detroit Library Commission.

8. Plaintiff Tawanna Simpson is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan. Plaintiff Simpson is also a Detroit Public Schools Board Member.

9. Plaintiff Lamar Lemmons is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan. Plaintiff Lemmons is also a Detroit Public Schools Board Member.

4

10.     Plaintiff Elena Herrada is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan. Plaintiff Herrada is also a Detroit Public Schools Board Member.

11.     Plaintiff Donald Watkins is a citizen of the United States, a resident of the City of Pontiac, County of Oakland, and the State of Michigan. Plaintiff Watkins is also a member of the Pontiac City Council.

12.     Plaintiff Kermit Williams is a citizen of the United States, a resident of the City of Pontiac, County of Oakland, and the State of Michigan. Plaintiff Williams is also a member of the Pontiac City Council.

13.     Plaintiff Duane Seats is a citizen of the United States, a resident of the City of Benton Harbor Michigan, County of Berrien, and the State of Michigan. Plaintiff Seats is also a Benton Harbor Commissioner.

14.     Plaintiff Dennis Knowles is a citizen of the United States, a resident of the City of Benton Harbor Michigan, County of Berrien, and the State of Michigan. Plaintiff Knowles is also a Benton Harbor Commissioner.

15.     Plaintiff Juanita Henry is a citizen of the United States, a resident of the City of Benton Harbor Michigan, County of Berrien, and the State of Michigan. Plaintiff Henry is also a Benton Harbor Commissioner.

16.     Plaintiff Mary Alice Adams is a citizen of the United States, a resident of the City of Benton Harbor Michigan, County of Berrien, and the State of Michigan. Plaintiff Adams is also a Benton Harbor City Commissioner.

5

17. Plaintiff William "Scott" Kincaid is a citizen of the United States, a resident of the City of Flint Michigan, County of Genesee, and the State of Michigan. Plaintiff Kincaid is also President of the Flint City Council.

18. Bishop Bernadel Jefferson is a citizen of the United States, a resident of the City of Flint Michigan, County of Genesee, and the State of Michigan.

19. Plaintiff Paul Jordan is a citizen of the United States and a resident of the City of Flint, County of Genesee, and State of Michigan.

20. Plaintiff Rev. Jim Holley is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan. Plaintiff Rev. Holley is also a National Board Member of the Rainbow Push Coalition.

21. Rev. Charles E. Williams II is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan. Plaintiff Rev. Williams is also the Michigan Chairman of the National Action Network.

22. Plaintiff Rev. Dr. Michael A. Owens is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan. Plaintiff Rev. Dr. Michael A. Owens is also President of the Council of Baptist Pastors of Detroit and Vicinity.

23. Plaintiff Rev. Lawrence Glass is a citizen of the United States, a resident of the City of Redford, County of Wayne, and the State of Michigan. Plaintiff Rev. Lawrence Glass is also First Vice-President of the Council of Baptist Pastors of Detroit and Vicinity.

24. Plaintiff Rev. Dr. Deedee Coleman is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan. Plaintiff Rev. Dr. Deedee Coleman is also Second Vice-President of the Council of Baptist Pastors of Detroit and Vicinity.

6

25.    Plaintiff Bishop Allyson Abrams is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan. Plaintiff Bishop Allyson Abrams is also Secretary of the Council of Baptist Pastors of Detroit and Vicinity.

26.    Defendant Richard D. Snyder is the Governor of the State of Michigan. Governor Snyder maintains his principal residence in the City of Ann Arbor in Washtenaw County, Michigan, and at all times relevant hereto was acting individually and in his official capacity as State Governor and top policymaker for the State of Michigan.

27.    Defendant Andrew Dillon is the Treasurer of the State of Michigan. Treasurer Dillon maintains his principal residence in Redford Township in Wayne County, Michigan, and at all times relevant hereto was acting individually and in his official capacity as State Treasurer and as a policymaker.

## IV. COMMON FACTS

28.    Through its provisions, Public Act 436 establishes a new form of local government, previously unknown within the United States or the State of Michigan, where the people within local municipalities may be governed by an unelected official who establishes local law by decree.

### *Legislative Background Of*
### *Municipal Financial Distress In Michigan*

29.    During the Great Depression in the 1930s, 4,770 cities defaulted on their debt. Among all states, Michigan had the fourth highest number of defaulting municipalities throughout the depression years. At that time, creditors of defaulting cities were commonly required to file a mandamus action in state courts seeking to compel the municipality to raise taxes to pay debt obligations. Courts then appointed receivers to oversee the finances of municipal debtors.

7

30.    To improve procedures for creditors and municipal debtors, the federal government adopted Chapter 9 of the federal bankruptcy code in 1937.   Chapter 9 permits the use of federal bankruptcy procedures for debt-ridden municipalities.  Under Chapter 9, elected officials remain in office and retain significant autonomy while bankruptcy procedures oversee the development of a plan to adjust debts and pay creditors. Before a Chapter 9 petition may be filed however, the state must authorize the municipality to file for bankruptcy.

31.    Prior to 1988, unless proceeding through Chapter 9, municipalities were placed into receivership by the courts, not the state legislature or executive branch. Compensation for court-appointed receivers was derived from property that the courts placed within the care of the receiver.

32.    Since 1937, two Michigan cities have defaulted on bond payments or been placed under a court imposed receivership due to insolvency.  Muskegon Township defaulted on revenue bond payments in the early 1960s and the City of Ecorse was placed in receivership by a Wayne County Circuit Court in 1986.

33.    Neither municipality sought the protections of Chapter 9 bankruptcy.  Muskegon Township entered into a settlement agreement with its creditors that resolved their defaults. Ecorse remained under court receivership through 1990 and was subject to further state oversight until the late 1990s.

34.    In response to the troubled insolvency of the City of Ecorse, the state enacted Public Act 101 of 1988 (PA 101).  Public Act 101 allowed the state to intervene when local municipalities were found to be in financial distress.  The statute allowed the state to appoint emergency financial managers over cities experiencing a financial emergency.

8

35.    In 1990, the legislature replaced PA 101 with the *Local Government Fiscal Responsibility Act*, Act No. 72, Public Acts of 1990 (PA 72).  Public Act 72 authorizes state officials to intervene when local governments face a financial emergency.  Pursuant to PA 72, Michigan's local financial emergency review board can appoint an emergency financial manager (EFM) only after the Governor declares a financial emergency within the local government.

36.    Under PA 72, local elected officials are not removed from office and the EFM's powers only extended to matters of municipal finances. Their powers did not extend to purely administrative or policy matters.  Furthermore, EFMs had the power to renegotiate, but not unilaterally break contracts.

37.    In the late 1990s, legislation was passed to revise municipal revenue sharing laws, severely reducing the amount of funds shared by the state with local government. Local governments saw further revenue reductions when income and property tax revenues sharply declined during the recession of 2000-2003.  As a result, municipalities experienced significant financial stress during the late 1990s and early 2000s.

38.    During this time period, the state local financial emergency review board appointed PA 72 EFMs in the cities of Hamtramck, Highland Park, and Flint.

39.    These original Public Act 72 EFMs remained in place as follows:

   a.   Hamtramck from 2000 until 2007 (7 years)[1];

   b.   Highland Park from 2001 until 2010 (9 years);[2] and

   c.   Flint from 2002 until 2004 (2 years)[3].

---

[1] In 2010, the City of Hamtramck requested permission from the state to file for Chapter 9 bankruptcy.  The state refused.
[2] One year later, DTE Energy repossessed the City of Highland Park's street lights due to the city's inability to pay its bills
[3] The City of Flint was again declared in a financial emergency in 2011.

9

40.     With the onset of the historic global recession that began in 2007 and resulted in record foreclosures and steep unemployment, cities and municipal corporations in Michigan saw further sharp reductions to income and property tax revenue. State revenue sharing laws were further amended in recent years to reduce revenue sharing with local governments and thereby balance state budgets. As a result, Michigan municipalities again faced widespread financial stress.

41.     Again, the state local financial emergency review board appointed PA 72 EFMs in various cities, including Pontiac, Ecorse, and Benton Harbor. Public Act 72 EFMs were also appointed over the Village of Three Oaks (2008) and the Detroit Public Schools and the review board entered into a PA 72 consent agreement with the city of River Rogue.

42.     The second wave of Public Act 72 EFMs were appointed as follows:

    a.  Pontiac from 2009 until the present (4+ years)

    b.  Ecorse from 2009 until the present (4+ years)

    c.  Benton Harbor from 2010 through the present (3+ years);

    d.  Village of Three Oaks from 2008 until 2009 (1 year); and

    e.   Detroit Public Schools from 2009 until the present (4+ years).

The state's consent agreement with the city of River Rouge has also remained in place from 2009 to the present. Notably, since the onset of the global recession in 2007, the Village of Three Oaks is the only municipality that has emerged from a financial emergency following the appointment of an emergency financial manager, appointment of an emergency manager, or the entering of a consent agreement.

43.     Following elections in November of 2010 and the turnover of state offices in January 2011, the Michigan legislature introduced House Bill 4214 (2011) on February 9, 2011.

The bill was widely seen as a response to a court ruling finding that the Detroit Public Schools' School Board, and not the EFM, possessed the power under state law to determine what curriculum would be taught and which texts would be used in the city's public schools. The decision provoked elements of the state legislature who then sought greater control over the content of the curriculum taught in Detroit's schools.

44.     House Bill 4214 was rushed through the legislature and quickly presented to the Governor for signature. Defendant Governor Richard D. Snyder signed the *Local Government and School District Fiscal Accountability Act*, Act No. 4, Public Acts of 2011 (PA 4) into law on March 16, 2011. Public Act 4 repealed Public Act 72 and was given immediate effect. Public Act 4 automatically converted all EFMs to Public Act 4 Emergency Managers (EM) and greatly expanded the scope of their powers. The Act also brought all existing consent agreements under the new law.

### *Public Act 4's Radical Revision of State Law*

45.     Public Act 4 radically revised state law governing the appointment of EMs over cities and school districts during times of financial stress.

46.     Public Act 4 provided that once the Governor had declared a financial emergency, the Governor could then appoint an individual to be the municipality's emergency manager. The Governor was granted broad discretion to declare a financial emergency and, in fact, a municipality was not actually required to be in a fiscal crisis before an EM could be appointed.

47.     Tellingly, the Act changed the title of municipal "emergency financial managers" to "emergency managers" and expanded the scope of their powers to cover all the conduct of local government.

48. The PA 4 EM's powers extended not only to financial practices and fiscal policy, but rather permitted such managers to fully act "for and in the place of" the municipality's elected governing body. The grant of powers also included a general grant of legislative power (the power to unilaterally adopt local laws and resolutions) to PA 4 EMs.

49. Public Act 4's grant of legislative power to EMs extended to the full scope of legislative power possessed by local elected officials. In the state of Michigan, local legislative power is of the same scope and nature as the police power possessed by the state - limited only by the jurisdictional limits of the municipality and where preempted by the general laws of the state. Public Act 4's grant of general legislative power to EMs thus extended to a grant of the full of scope of the local government's police power, previously reserved to local government's elected legislative body and elected mayor.

50. Emergency managers were further granted powers to act in disregard of the local government's local laws – including city charters, ordinances, administrative regulations, school district bylaws, etc.

51. The Act further granted a state financial review team the power to enter into a consent agreement with local government, again without a finding that a financial emergency existed.

52. At the time PA 4 became law, reports from the State indicated that, based on their financial conditions, over eighty (80) municipalities and/or school systems were eligible to have emergency managers.

53. After passage of PA 4, existing EFMs in the cities of Benton Harbor, Ecorse and Pontiac and over the Detroit Public Schools were converted to EMs and vested with PA 4

13-53846-swr   Doc 2833-13   Filed 02/20/14   Entered 02/20/14 18:09:39   Page 34 of 66

powers. The state's consent agreement with the city of River Rouge was also converted to a PA 4 agreement.

54. With the continuing global economic recession and steep declines in state revenue sharing and municipal property tax and income tax revenue collection, PA 4 EMs were newly appointed as follows:

    a. Flint from 2011 until the present (2+ years);

    b. Highland Park Public Schools from 2012 until the present (1+ year); and

    c. Muskegon Heights Public Schools until the present (1+ year).

Additionally, the state entered PA 4 consent agreements with the cities of Detroit[4] and Inkster.

55. After becoming vested with Public Act 4 powers, EMs in Benton Harbor, Ecorse, Flint, and Pontiac have all exercised general legislative power to enact, repeal and suspend local laws and resolutions and have voided various contracts.

### Michigan Citizen's Rejection of Public Act 4
### And the State's Resurrection of Public Act 72

56. In opposition to Public Act 4, citizens began circulating petitions in May 2011. The petitions were to place a referendum on the ballot that would reject the law. Over 200,000 signatures were gathered and the petitions were submitted to the Secretary of State in February 2012. However to prevent Michigan citizens from having the opportunity to vote on the matter, the petitions were challenged by a lobbying group.

57. The petitions were challenged on the basis that the title of the petitions were not printed in 14 point font but rather were printed in slightly smaller font of approximately 13.75 or larger.[5]

---

[4] The state has struggled to identify the state law(s) providing legal authority for the transfer of powers and oversight that was created by the agreement with the city of Detroit. Over time, the state seems to have settled into a belief that PA 4 provided such authority.

13

58.     Along party-line votes, the members of the state Board of Canvassers deadlocked and as a result, the petitions were not certified for the ballot.

59.     The matter was then appealed to the Michigan Court of Appeals. A panel of the Court of Appeals recognized and found that existing law required the referendum to be placed on the ballot. However, the panel sought to overturn existing law, and thereby keep the referendum off the ballot. The panel requested that the full Court of Appeals be polled to convene a special panel to reconsider existing law. The full Court of Appeals however declined to convene the special panel.

60.     An appeal was taken to the state Supreme Court. The Michigan Attorney General in his individual capacity and Governor in his individual and/or official capacity joined the challengers as amici at the state Supreme Court.

61.     On August 3, 2012, the Michigan Supreme Court issued an opinion ordering the state Board of Canvassers certify the petitions and place the referendum on the ballot.

62.     However on August 6, 2012, the state Attorney General issued a formal opinion stating that once the petitions were certified[6], PA 72 would spring back into effect and would remain in effect if voters rejected PA 4 at the November 2012 election.

63.     The state Board of Canvassers certified the petitions on August 8, 2012 and by operation of Michigan law, PA 4 was then suspended until the November.

64.     In response, state officials reappointed all existing PA 4EMs as PA 72 EFMs and proclaimed that all existing consent agreements would continue in place as PA 72 consent agreements.

---

[5] No evidence was submitted and it was not argued that signatories of the petitions had been confused or misunderstood what they had signed. In fact, the difference in point size as argued by the challenger was invisible to the naked eye of many.

[6] Pursuant to Michigan law, once the petitions were certified PA 4 was then suspended until the voters could decide the matter at the next general election.

65. After certification of the referendum, existing PA 4 EMs were converted to EFMs in the cities of:

    a. Benton Harbor;

    b. Ecorse;

    c. Flint; and

    d. Pontiac.

66. Additionally EMs over the following school districts were converted to Public Act 72 EFMs:

    a. Detroit Public Schools;

    b. Highland Park Public Schools; and

    c. Muskegon Heights Public Schools.

67. Finally, the state's consent agreements with the cities of Detroit, Inkster and River Rogue were proclaimed converted to PA 72 agreements.

68. At the general election on November 6, 2012, Michigan voters overwhelmingly elected to reject PA 4.

### *Michigan Legislature's Attempt to Overturn Citizen's Vote to Reject Public Act 4 by Enacting Public Act 436*

69. In response to the decision of Michigan voters to reject PA 4, incensed state officials and segments within the state legislature quickly moved to reenact a new law with emergency manager provisions that are substantially identical to the rejected law.

70. During the lame-duck session, the state legislature moved quickly to reenact the emergency manager provisions of Public Act 4. The new bill passed the state House and Senate on December 13, 2012 and was signed into law as the *Local Financial Stability and Choice Act*, Act No. 436, Public Acts of 2012, on December 26, 2012.

15

71. Public Act 436 again changes the title of existing PA 72 "emergency financial managers" to "emergency managers" and again expands the scope of their powers to cover all the conduct of local government.

72. The PA 436 EM's powers are substantially identical to the powers that had been granted under PA 4. Public Act 436 EMs are empowered to fully act "for and in the place of" the municipality's governing body. The grant of powers again includes a general grant of legislative power to emergency managers.

73. Along with the general grant of legislative power to emergency managers, Public Act 436 exempts the EM from following existing city charters and local ordinances.

74. The new law does not provide any process that EMs must follow in the adoption or repeal of local laws, but rather permits the EM to do so by private orders, not subject to open meetings requirements.

75. Public Act 436 states that EMs appointed under PA 4 and EFMs appointed under PA 72 shall be considered EMs under PA 436 when the new law takes effect.

76. Additionally, PA 436 permits the Governor to appoint persons appointed as EMs under PA 4 and as EFMs under PA 72 to serve as PA 436 EMs under the new law.

77. Under PA 436, all EMs serve at the pleasure of the Governor and continue to serve until removed by the Governor or until the Governor finds that the financial emergency has been rectified.

78. Public Act 436 permits the Governor to delegate his powers and duties to the state treasurer and the state treasurer oversees the activities of emergency managers.

79. When PA 436 took effect on March 28, 2013, EMs were in place over the cities of Allen Park, Benton Harbor, Ecorse, Flint, Pontiac and Detroit and over the Detroit Public

Schools, Highland Park Public Schools, and Muskegon Heights Public Schools. Finally, the state's consent agreements with Inkster and River Rouge were again converted – now to PA 436 agreements.

80.     Since March 28, 2013, the City of Hamtramck has had an emergency manager placed in control of the city's governance and the emergency managers in the Cities of Ecorse and Pontiac have had their emergency managers replaced by "transition advisory boards", which, under PA 436 have final say over governance matters in these communities.

81.     Under PA 436, elected officials in each of these communities are displaced and/or be divested of governing and law-making authority and citizens have effectively lost their right to vote and/or saw an abridgment or dilution of their right to vote for their local legislative bodies, chief executive officers, and school boards.

82.     Local elected officials are thereby effectively removed from office under PA 436 and this removal occurs without any showing of malfeasance or misfeasance causing or contributing to the financial circumstances faced by their municipality or school district. In so doing, the Act implicitly assumes that these local officials were guilty of corruption or gross incompetence that caused or contributed to the financial circumstances of their municipality or school district. Public Act 436 makes this assumption of guilt and removes elected officials without any finding of fault on the part of local elected officials and without any form of due process.

83.     In each of these communities, citizens will have effectively lost their right to vote for local elected officials or had that right diluted so as to render it an exercise in form without substance.

84. There is no question that Michigan's emergency manager laws have disproportionately impacted the state's population of citizens from African-American descent.

85. The Black/African-American population of each of the cities where an emergency manager or consent decree will be in place when PA 436 takes effect, is as follows:

    a. Benton Harbor: 8,952 persons comprising 89.2% of the city's population;

    b. Ecorse: 4,315 persons comprising 46.4% of the city's population;

    c. Pontiac: 30,988 persons comprising 52.1% of the city's population;

    d. Flint: 57,939 persons comprising 56.6% of the city's population;

    e. Inkster: 18,569 persons comprising 73.2% of the city's population;

    f. River Rouge: 3,994 persons comprising 50.5% of the city's population;

    g. Detroit: 590,226 persons comprising 82.7% of the city's population,

    h. Highland Park: 10,906 persons comprising 93.5% of the city's population;

    i. Muskegon Heights: 8,501 persons comprising 78.3% of the city's population;

    j. Allen Park: 587 persons comprising 2.1% of the city's population; and

    k. Hamtramck: 4,266 comprising 19.3% of the city's population.

The Black/African-American population of these cities totals 734,947 persons.

86. As a result of the Defendants' actions under Public Act 436, fifty two (52%) of the state's Black/African-American population are under the governance of an emergency manager, consent agreement and/or a transition advisory board. In each of these communities, citizens will have either lost or experienced severe restrictions imposed on their right to vote and to participate in public affairs.

87. There is also no question that each of the aforementioned cities are economically poor communities where significant household wealth has been lost since the onset of the current recession. In these communities, the percentage of persons living below the poverty level is:

18

a.  Benton Harbor – 48.7%;

b.  Ecorse – 32.7%;

c.  Pontiac- 32%;

d.  Flint – 36.6%;

e.  Inkster – 33.2%;

f.  River Rouge – 40.1%;

g.  Detroit – 34.5%;

h.  Highland Park – 43.7%;

i.  Muskegon Heights – 45.6%; and

j.  Hamtramck – 46.3%.

The Michigan average is 15.7%.   The City of Allen Park is thus the only city with an EM where the poverty level is not at least double the state average.

88.     Like PA 4, Public Act 436 reestablishes a new form of local government that is repugnant to the constitutional liberties of all Americans.

89.     Despite a long national history of municipal financial crises following national and global economic depressions and recessions, no other state in the nation has engaged in similar experiments in undemocratic governance as a solution to economic downturns.

90.     Under Public Act 436, the people become subject to government that is composed of one unelected official who wields absolute power over all aspects of local government and whose decisions are without review by either local elected officials or local voters.

## V. CAUSES OF ACTION

### COUNT I – 42 U.S.C. §1983 -- Constitutional Violation
### US Const, Amend. XIV – Substantive Due Process –
### Right to a To Elect Officials Who Possess General Legislative Power

91.     Plaintiffs incorporate by reference paragraphs 1 through 90 above as though fully stated herein.

92.     Plaintiffs bring this claim pursuant to 42 U.S.C. §1983.

93.     Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective individual and/or official capacities, Defendants have engaged in conduct and adopted laws and policies that violate Plaintiffs' rights under Amend. XIV of the U.S. Constitution.

94.     Amendment XIV of the U. S. Constitution holds, in pertinent part: "nor shall any state deprive any person of life, liberty, or property without due process of Law."

95.     Under the Due Process Clause, each person has a liberty interest in their right to a democratically elected from of local government.

96.     Under the Due Process Clause, each person has a liberty interest in their right to elect officials of any level of government that exercise general legislative powers.

97.     Under state law, Michigan cities possess local legislative power to enact make charters, adopt and repeal local laws, and pass resolutions.

98.     Under state law, Michigan cities' legislative power over matters within their jurisdiction is of the same scope and nature as the police power of the state.

99.     When a state establishes a local government with legislative power, it must be democratic in form and substance.

100.    The right to a democratic form of government is a fundamental right afforded to all citizens in the state of Michigan through the United States Constitution.

101.    The right to a vote for the officials of local government who exercise general legislative powers is a fundamental right afforded to all citizens in the state of Michigan through

20

the United States Constitution. When a state grants general legislative power to a governmental official, the official must be democratically elected.

102. On its face, as applied, and in practice, Public Act 436 violates the Due Process Clause of US Const., Amend. XIV and disenfranchises citizens from their right to a democratically elected form of local government and their right to elect local officials who possess general legislative power, through provisions that delegate to EMs the power to:

   a. Be selected and appointed solely at the discretion of the Governor; See provisions including but not limited to MCL §141.1549;

   b. Become vested with Public Act 436 EM powers for persons previously appointed or acting as EFMs under prior laws; See provisions including but not limited to MCL §141.1549;

   c. Act for and in the place and stead of the local governing body of cities and villages and to assume all the powers and authority of the local governing body and local elected officials. See provisions including but not limited to MCL §141.1549, §141.1550, and §141.1552;

   d. Rule by decree over cities and villages through powers that permit the EM to contravene and thereby implicitly repeal local laws such as city and village charters and ordinances; See provisions including but not limited to MCL §141.1552; and

   e. Explicitly repeal, amend, and enact local laws such as city and village ordinances. See provisions including but not limited to MCL §141.1549 and §141.1552.

103. On its face, as applied, and in practice, Public Act 436 violates the Due Process Clause of US Const., Amend. XIV and disenfranchises citizens from their right to a democratically elected form of local government and their right to elect local officials who possess general legislative power, through provisions of the statute that ratify appointments made and legislative acts taken by EMs acting under Public Act 4. See provisions including but not limited to MCL §141.1570.

104. The provisions of PA 436 and the powers granted thereby, are not necessary,

21

narrowly tailored, rationally, or otherwise lawfully related to achieving the purported government interests of achieving local government financial stability.

105.    As a direct and proximate result of the enactment of Public Act 436 and Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their constitutionally-protected rights.

**COUNT II – 42 U.S.C. §1983 -- Constitutional Violation**
**US Const, Art 4, §4 – Republican Form of Government**

106.    Plaintiff incorporates by reference paragraphs 1 through 105 above as though fully stated herein.

107.    Plaintiffs bring this claim pursuant to 42 U.S.C. §1983.

108.    Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective official capacities, Defendants have engaged in conduct and adopted laws and policies that violate Plaintiffs' rights under Art. 4, §4 of the U.S. Constitution.

109.    Article 4, section 4 of the U.S. Constitution states that the "United States shall guarantee to every state in this union a republican form of government."

110.    Since our nation's founding, federal, state, and local governments throughout the country have been republican forms of government – governments of representatives chosen by the people governed.

111.    In the United States and in Michigan, local governments are traditionally democratically elected and republican in form.

112.    Public Act 436 unconstitutionally strips local voters of their right to a republican form of government by transferring governance, including but not limited to legislative powers, from local elected officials to one unelected emergency manager.

22

113.   On its face, as applied, and in practice, Public Act 436 violates the US Const.,

Art. 4, §4 through provisions of the statute that permit EMs to:

  a.  Be selected and appointed solely at the discretion of the Governor; See provisions including but not limited to MCL §141.1549;

  b.  Become vested with Public Act 436 EM powers for persons previously appointed or acting as EFMs under prior laws; See provisions including but not limited to MCL §141.1549;

  c.  Act for and in the place and stead of the local governing body of cities and villages and to assume all the powers and authority of the local governing body and local elected officials. See provisions including but not limited to MCL §141.1549, §141.1550, and §141.1552;

  d.  Rule by decree over cities and villages through powers that permit the EM to contravene and thereby implicitly repeal local laws such as city and village charters and ordinances; See provisions including but not limited to MCL §141.1552; and

  e.  Explicitly repeal, amend, and enact local laws such as city and village ordinances. See provisions including but not limited to MCL §141.1549 and §141.1552.

114.   On its face, as applied, and in practice, Public Act 436 violates the US Const.,

Art. 4, §4 through provisions of the statute that ratify the legislative acts taken by EMs acting

under Public Act 4. See provisions including but not limited to MCL §141.1570.

115.   Defendants have caused injury to the Plaintiffs by exercising the authority granted

under Public Act 436 by terminating and/or removing the governing authority and legislative

powers of duly elected public officials in affected municipalities throughout the state of

Michigan.

116.   As a direct and proximate result of the enactment of Public Act 436 and

Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their

constitutionally-protected rights.

**COUNT III – 42 U.S.C. §1983 -- Constitutional Violation**

23

117.    Plaintiffs incorporate by reference paragraphs 1 through 116 above as though fully stated herein.

118.    Plaintiffs bring this claim pursuant to 42 U.S.C. §1983.

119.    Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective individual and/or official capacities, have engaged in conduct and adopted laws and policies that violated Plaintiffs' rights under Amend. XIV, §1 of the U.S. Constitution

120.    Amendment XIV, § 1 states in pertinent part, "No state shall make or enforce any law which shall … deny to any person within its jurisdiction the equal protection of the laws."

121.    The Equal Protection Clause protects laws and the application of laws that invidiously discriminate between similarly situated individuals or between groups of persons in the exercise of fundamental rights.

122.    The right to vote in local elections is a fundamental right afforded to all citizens in the state of Michigan by the United States Constitution, the Michigan Constitution, and the Michigan Home Rule Cities Act.

123.    Public Act 436's EM provisions effectively revoke the right to vote by stripping governing authority from local elected officials and transferring such authority to one unelected EM with no accountability to local citizens.

124.    Public Act 436 impermissibly denies, abridges and/or dilutes citizen's right to vote in local elections where EMs have been appointed.  In these municipalities and school districts, the local government – in the person of the EM - is appointed by state officials and the EM is vested with all governing authority over the municipality and school district.  While the

some EMs may nominally retain elected officials in office as advisory personnel, elected officials' governing authority is substantially removed, circumscribed, and conditional – to be exercised at the sole discretion of the EM.

125. Public Act 436 impermissibly abridges and/or dilutes citizen's right to vote in local elections where EMs have been appointed. In these municipalities and school districts, the local government – in the person of the EM - is appointed by state officials who are elected by citizens across the entire state of Michigan. Through the statewide vote of state officials and their derivative appointments, the state has publicly argued that democratic election of local government is preserved in the affected municipalities and school districts. Thus, the entire state electorate participates in the selection of the local government in the affected municipalities and school districts, while in all other localities across the state, local residents alone directly vote for their local elected officials. The vote of citizens for their local government in affected localities is grossly abridged and/or diluted by the statewide participation of the electorate, while the votes of citizens in localities without an EM are preserved for local residents alone and thereby attains greater weight.

126. On its face, as applied, and in practice, Public Act 436 violates the Equal Protection Clause of US Const., Amend. XIV, § 1 through provisions of the statute that unduly deny, abridge and/or impermissibly dilute the community's right to vote for local officials. Such provisions include those that provide for EMs to:

    a. Be selected and appointed solely at the discretion of the Governor; See provisions including but not limited to MCL §141.1549;

    b. Become vested with Public Act 436 EM powers for persons previously appointed or acting as EFMs under prior laws; See provisions including but not limited to MCL §141.1549;

c. Act for and in the place and stead of the local governing body of cities and villages and to assume all the powers and authority of the local governing body and local elected officials. See provisions including but not limited to MCL §141.1549, §141.1550, and §141.1552;

d. Rule by decree over cities and villages through powers that permit the EM to contravene and thereby implicitly repeal local laws such as city and village charters and ordinances; See provisions including but not limited to MCL §141.1552; and

e. Explicitly repeal, amend, and enact local laws such as city and village ordinances. See provisions including but not limited to MCL §141.1549 and §141.1552.

127. On its face, as applied, and in practice, Public Act 436 violates the Equal Protection Clause of US Const., Amend. XIV, § 1 through provisions of the statute that unduly revoke the community's right to vote for local officials, through provisions of the statute that ratify appointments made and legislative acts taken by EMs acting under Public Act 4. See provisions including but not limited to MCL §141.1570.

128. Under Public Act 436, Defendants have authority to deprive Plaintiffs of their rights to equal protection by divesting communities of their right to vote for local officials and by removing the authority of duly elected public officials in favor of an unelected EM in such communities.

129. Defendants have caused injury to the Plaintiffs by exercising the authority granted under Public Act 436 by terminating and/or removing the authority of duly elected public officials in various municipalities with disproportionately high poverty rates.

130. The provisions of PA 436 and the powers granted thereby, are not necessary, narrowly tailored, rationally, or otherwise lawfully related to achieving the asserted government interests of achieving local government financial stability.

131. As a direct and proximate result of the enactment of Public Act 436 and

Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their constitutionally-protected rights.

## COUNT IV – 42 U.S.C. §1983 -- Constitutional Violation
## US Const, Amend. XIV, § 1 –Equal Protection based on Race – Voting Rights

132.    Plaintiffs incorporate by reference paragraphs 1 through 131 above as though fully stated herein.

133.    Plaintiffs bring this claim pursuant to 42 U.S.C. §1983.

134.    Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective individual and/or official capacities, have engaged in conduct and adopted laws and policies that violate Plaintiffs' rights under Amend. XIV, §1 of the U.S. Constitution

135.    Amendment XIV, § 1 states in pertinent part, "No state shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws."

136.    The Equal Protection Clause protects laws and the application of laws that invidiously discriminate between similarly situated individuals or between groups of persons in the exercise of fundamental rights.

137.    The right to vote in local elections is a fundamental right afforded to all citizens in the state of Michigan by the United States Constitution, the Michigan Constitution, and the Michigan Home Rule Cities Act.

138.    Public Act 436's EM provisions effectively revoke the right to vote by stripping governing authority from local elected officials and transferring such authority to one unelected EM with no accountability to local citizens.

139.    Public Act 436 impermissibly denies, abridges and/or dilutes citizen's right to vote in local elections where EMs have been appointed.  In these municipalities and school

27

districts, the local government – in the person of the EM - is appointed by state officials and the EM is vested with all governing authority over the municipality and school district. While the some EMs may nominally retain elected officials in office as advisory personnel, elected officials' governing authority is substantially removed, circumscribed, and conditional – to be exercised at the sole discretion of the EM.

140.    Public Act 436 impermissibly abridges and/or dilutes citizen's right to vote in local elections where EMs have been appointed. In these municipalities and school districts, the local government – in the person of the EM - is appointed by state officials who are elected by citizens across the entire state of Michigan. Through the statewide vote of state officials and their derivative appointments, the state has publicly argued that democratic election of local government is preserved in the affected municipalities and school districts. Thus, the entire state electorate participates in the selection of the local government in the affected municipalities and school districts, while in all other localities across the state, local residents alone directly vote for their local elected officials. The vote of citizens for their local government in affected localities is grossly abridged and/or diluted by the statewide participation of the electorate, while the votes of citizens in localities without an EM are preserved for local residents alone and thereby attains greater weight.

141.    Under Public Act 436, all stated criteria for appointing an EM are based on a community's wealth and by extension, the wealth of the persons who reside within a community.

142.    On its face, as applied, and in practice, Public Act 436 violates the Equal Protection Clause of US Const., Amend. XIV, § 1 through provisions of the statute that discriminate in the appointment of an EM and revocation of the community's right to vote for

13-53846-swr    Doc 2633-3    Filed 02/20/14    Entered 02/20/14 18:09:39    Page 50 of 66

local officials based on the racial composition of that community. Such provisions include those that provide for EMs to:

   a. Be selected and appointed solely at the discretion of the Governor; See provisions including but not limited to MCL §141.1549;

   b. Become vested with Public Act 436 EM powers for persons previously appointed or acting as EFMs under prior laws; See provisions including but not limited to MCL §141.1549;

   c. Act for and in the place and stead of the local governing body of cities and villages and to assume all the powers and authority of the local governing body and local elected officials. See provisions including but not limited to MCL §141.1549, §141.1550, and §141.1552;

   d. Rule by decree over cities and villages through powers that permit the EM to contravene and thereby implicitly repeal local laws such as city and village charters and ordinances; See provisions including but not limited to MCL §141.1552; and

   e. Explicitly repeal, amend, and enact local laws such as city and village ordinances. See provisions including but not limited to MCL §141.1549 and §141.1552.

143.    On its face, as applied, and in practice, Public Act 436 violates the Equal Protection Clause of US Const., Amend. XIV, § 1 through provisions of the statute that discriminate in the appointment of an EM and revocation of the community's right to vote for local officials based on the racial composition of that community and that ratify appointments made and legislative acts taken by EMs acting under Public Act 4. See provisions including but not limited to MCL §141.1570.

144.    Defendants have caused injury to the Plaintiffs by exercising the authority granted under Public Act 436 by terminating and/or removing the authority of duly elected public officials in various municipalities comprising more than 53% of the state's population of citizens who are of African American descent.

145.    The provisions of PA 436 and the powers granted thereby, are not necessary,

narrowly tailored, rationally, or otherwise lawfully related to achieving the asserted government interests of achieving local government financial stability.

146. As a direct and proximate result of the enactment of Public Act 436 and Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their constitutionally protected rights.

## COUNT V – 42 U.S.C. §1983 -- Constitutional Violation
## US Const, Amend. XIV, § 1 –Equal Protection based on Wealth – Voting Rights

147. Plaintiffs incorporate by reference paragraphs 1 through 146 above as though fully stated herein.

148. Plaintiffs bring this claim pursuant to 42 U.S.C. §1983.

149. Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective individual and/or official capacities, have engaged in conduct and adopted laws and policies that violate Plaintiffs' rights under Amend. XIV, §1 of the U.S. Constitution

150. Amendment XIV, § 1 states in pertinent part, "No state shall make or enforce any law which shall … deny to any person within its jurisdiction the equal protection of the laws."

151. The Equal Protection Clause protects laws and the application of laws that invidiously discriminate between similarly situated individuals or between groups of persons in the exercise of fundamental rights.

152. The right to vote in local elections is a fundamental right afforded to all citizens in the state of Michigan by the United States Constitution, the Michigan Constitution, and the Michigan Home Rule Cities Act.

153.     Public Act 436's EM provisions effectively revoke the right to vote by stripping governing authority from local elected officials and transferring such authority to one unelected EM with no accountability to local citizens.

154.     Public Act 436 impermissibly denies, abridges and/or dilutes citizen's right to vote in local elections where EMs have been appointed.  In these municipalities and school districts, the local government – in the person of the EM - is appointed by state officials and the EM is vested with all governing authority over the municipality and school district.  While the some EMs may nominally retain elected officials in office as advisory personnel, elected officials' governing authority is substantially removed, circumscribed, and conditional – to be exercised at the sole discretion of the EM.

155.     Public Act 436 impermissibly abridges and/or dilutes citizen's right to vote in local elections where EMs have been appointed.  In these municipalities and school districts, the local government – in the person of the EM - is appointed by state officials who are elected by citizens across the entire state of Michigan.  Through the statewide vote of state officials and their derivative appointments, the state has publicly argued that democratic election of local government is preserved in the affected municipalities and school districts.  Thus, the entire state electorate participates in the selection of the local government in the affected municipalities and school districts, while in all other localities across the state, local residents alone directly vote for their local elected officials.  The vote of citizens for their local government in affected localities is grossly abridged and/or diluted by the statewide participation of the electorate, while the votes of citizens in localities without an EM are preserved for local residents alone and thereby attains greater weight.

156.    Under Public Act 436, all stated criteria for appointing an EM are based on a community's wealth and by extension, the wealth of the persons who reside within a community.

157.    On its face, as applied, and in practice, Public Act 436 violates the Equal Protection Clause of US Const., Amend. XIV, § 1 through provisions of the statute that condition the revocation of the community's right to vote for local officials based on the wealth of that community and the individuals who reside there.  Such provisions include those that provide for EMs to:

  a. Be selected and appointed solely at the discretion of the Governor; See provisions including but not limited to MCL §141.1549;

  b. Become vested with Public Act 436 EM powers for persons previously appointed or acting as EFMs under prior laws; See provisions including but not limited to MCL §141.1549;

  c. Act for and in the place and stead of the local governing body of cities and villages and to assume all the powers and authority of the local governing body and local elected officials. See provisions including but not limited to MCL §141.1549, §141.1550, and §141.1552;

  d. Rule by decree over cities and villages through powers that permit the EM to contravene and thereby implicitly repeal local laws such as city and village charters and ordinances; See provisions including but not limited to MCL §141.1552; and

  e. Explicitly repeal, amend, and enact local laws such as city and village ordinances. See provisions including but not limited to MCL §141.1549 and §141.1552.

158.    On its face, as applied, and in practice, Public Act 436 violates the Equal Protection Clause of US Const., Amend. XIV, § 1 through provisions of the statute that unduly revoke citizen's right to vote for local officials based on the wealth of their community and themselves, through provisions of the statute that ratify appointments made and legislative acts taken by EMs acting under Public Act 4. See provisions including but not limited to MCL §141.1570.

32

159. Defendants have caused injury to the Plaintiffs by exercising the authority granted under Public Act 436 by terminating and/or removing the authority of duly elected public officials in various municipalities with disproportionately high poverty rates.

160. The provisions of PA 436 and the powers granted thereby, are not necessary, narrowly tailored, rationally, or otherwise lawfully related to achieving the asserted government interests of achieving local government financial stability.

161. As a direct and proximate result of the enactment of Public Act 436 and Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their constitutionally-protected rights.

### COUNT VI– Voting Rights Act of 1965, 42 U.S.C. § 1973 *et. seq.*

162. Plaintiffs incorporate by reference paragraphs 1 through 161 above as though fully stated herein.

163. Section 2 of the Voting Rights Act of 1965, as amended, reads:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 4(f)(2), as provided in subsection (b).

> (b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

164. Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 prohibits the denial, abridgement or dilution of Black/African-American citizens' right to vote in state and local

elections.

165. Michigan's population is estimated at 9,876,187 persons. The Black/African-American's comprise approximately 14.2% of the state's population (1,400,362 persons).

166. As a result of the passage of PA 436, once the law comes into effect more than fifty percent of the state's Black/African-American population will have had their voting rights in local elections effectively revoked.

167. Public Act 436 impermissibly denies, abridges and/or dilutes citizen's right to vote in local elections where EMs have been appointed. In these municipalities and school districts, the local government – in the person of the EM - is appointed by state officials and the EM is vested with all governing authority over the municipality and school district. While the some EMs may nominally retain elected officials in office as advisory personnel, elected officials' governing authority is substantially removed, circumscribed, and conditional – to be exercised at the sole discretion of the EM.

168. Public Act 436 impermissibly abridges and/or dilutes citizen's right to vote in local elections where EMs have been appointed. In these municipalities and school districts, the local government – in the person of the EM - is appointed by state officials who are elected by citizens across the entire state of Michigan. Through the statewide vote of state officials and their derivative appointments, the state has publicly argued that democratic election of local government is preserved in the affected municipalities and school districts. Thus, the entire state electorate participates in the selection of the local government in the affected municipalities and school districts, while in all other localities across the state, local residents alone directly vote for their local elected officials. The vote of citizens for their local government in affected localities is grossly abridged and/or diluted by the statewide participation of the electorate, while the votes

34

of citizens in localities without an EM are preserved for local residents alone and thereby attains greater weight.

169.     On its face, as applied, and in practice, Public Act 436 violates the Voting Rights Act through provisions that provide for the appointment of Ems, entering of consent agreements and appointment of transition advisory boards that deny, abridge and dilute the voting rights of citizens within these localities. Such provisions include those that provide for EMs to:

   a.   Be selected and appointed solely at the discretion of the Governor; See provisions including but not limited to MCL §141.1549;

   b.   Become vested with Public Act 436 EM powers for persons previously appointed or acting as EFMs under prior laws; See provisions including but not limited to MCL §141.1549;

   c.   Act for and in the place and stead of the local governing body of cities and villages and to assume all the powers and authority of the local governing body and local elected officials. See provisions including but not limited to MCL §141.1549, §141.1550, and §141.1552;

   d.   Rule by decree over cities and villages through powers that permit the EM to contravene and thereby implicitly repeal local laws such as city and village charters and ordinances; See provisions including but not limited to MCL §141.1552; and

   e.   Explicitly repeal, amend, and enact local laws such as city and village ordinances. See provisions including but not limited to MCL §141.1549 and §141.1552.

170.     On its face, as applied, and in practice, Public Act 436 violates the Voting Rights Act through provisions of the statute that discriminate in the appointment of an EM and revocation of the community's right to vote for local officials based on the racial composition of that community and that ratify appointments made and legislative acts taken by EMs acting under Public Act 4. See provisions including but not limited to MCL §141.1570.

171.     Under the totality of the circumstances, the application of Public Act 436 and enforcement has resulted in Black/African American citizens having dramatically less

35

opportunity for self-governance than other members of Michigan's electorate.

172.    As a direct and proximate result of the enactment of Public Act 436 and Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their constitutionally-protected rights.

173.    In addition to declaratory and other relief as permitted pursuant to Section 2 of the Voting Rights Act, Plaintiffs request that this court retain jurisdiction and impose Section 3(c) preclearance since Defendants have impermissibly denied, abridged and/or diluted voting rights in violation of Section 2 of the Voting Rights Act and the Fourteenth Amendment of the U.S. Constitution.

### COUNT VII – 42 U.S.C. §1983 -- Constitutional Violation
### US Const, Amend. I –Freedom of Speech & Right to Petition Government

174.    Plaintiffs incorporate by reference paragraphs 1 through 173 above as though fully stated herein.

175.    Plaintiffs bring this claim pursuant to 42 U.S.C. §1983.

176.    Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective individual and/or official capacities, have engaged in conduct and adopted laws and policies that violate Plaintiffs' rights under Amend. I of the U.S. Constitution.

177.    Amendment I of the US Constitution states in pertinent part, "Congress shall make no law ... abridging the freedom of speech ... and to petition the Government for a redress of grievances."

178.    Plaintiffs, as citizens of the State of Michigan, have engaged in constitutionally-protected speech on matters of public concern by voting and electing local government officials to serve as their elected representatives.

36

179. Plaintiffs, as citizens of the State of Michigan, have engaged in a Constitutionally protected right to petition their local governments on matters of public concern by interacting with duly elected local officials, expressing their concerns, and having them serve as their elected representatives.

180. The elected officials chosen by the Plaintiffs to serve as their representatives have been inclusive of, but not limited to, mayors, city councils, and local school board members of various municipalities.

181. Plaintiffs, as citizens of the State of Michigan, have engaged in their Constitutionally protected right to free speech and to petition their government, by repealing Public Act 4.

182. On its face, as applied, and in practice, Public Act 436 is the mirror image of Public Act 4 and its enactment contrary to the expressed will of the people through the referendum process violates the US Const., Amend. I.

183. On its face, as applied, and in practice, Public Act 436 violates the US Const., Amend. I through provisions that empower EMs to:

    a. Be selected and appointed solely at the discretion of the Governor; See provisions including but not limited to MCL §141.1549;

    b. Become vested with Public Act 436 EM powers for persons previously appointed or acting as EFMs under prior laws; See provisions including but not limited to MCL §141.1549;

    c. Act for and in the place and stead of the local governing body of cities and villages and to assume all the powers and authority of the local governing body and local elected officials. See provisions including but not limited to MCL §141.1549, §141.1550, and §141.1552;

    d. Rule by decree over cities and villages through powers that permit the EM to contravene and thereby implicitly repeal local laws such as city and village charters and ordinances; See provisions including but not limited to MCL §141.1552; and

37

e. Explicitly repeal, amend, and enact local laws such as city and village ordinances. See provisions including but not limited to MCL §141.1549 and §141.1552.

184.   On its face, as applied, and in practice, Public Act 436 violates the US Const., Amend. I through provisions that provide for the appointment of EMs with powers that strip all authority of local elected officials, through provisions of the statute that ratify appointments made and legislative acts taken by EMs acting under Public Act 4. See provisions including but not limited to MCL §141.1570.

185.   The provisions of PA 436 and the powers granted thereby, are not necessary, narrowly tailored, rationally, or otherwise lawfully related to achieving the asserted government interests of achieving local government financial stability.

186.   As a direct and proximate result of the enactment of Public Act 436 and Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their constitutionally-protected rights.

### COUNT VIII – 42 U.S.C. §1983 -- Constitutional Violation
### US Const, Amend. XIII, § 1 – Vestiges of Slavery – Voting Rights

187.   Plaintiffs incorporate by reference paragraphs 1 through 185 above as though fully stated herein.

188.   Plaintiffs bring this claim pursuant to 42 U.S.C. §1983.

189.   Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective individual and/or official capacities, have engaged in conduct and adopted laws and policies that violate Plaintiffs' rights under Amend. XIII of the U.S. Constitution

38

190. Amendment XIII, § 1 bans and form of "slavery or involuntary servitude" within the jurisdiction of the United States of America. The Thirteenth Amendment further bans acts which perpetuate the badges and incidents of servitude.

191. Systematic denial of voting rights in local elections to Michigan's Black/African-American citizens is a perpetuation of the vestiges of slavery and involuntary servitude.

192. Public Act 436 effectively revokes the right to vote by intentionally stripping governing authority from local elected officials and transferring such authority to one unelected EM who serves as the overseer of municipalities or school districts, which are overwhelming Black/African American majority communities, with no accountability to local citizens.

193. On its face, as applied, and in practice, Public Act 436 violates the US Const., Amend. XIII, § 1 through provisions of the statute that perpetuate the vestiges of slavery by discriminatorily and intentionally revoking the community's right to vote for local officials based on the racial composition of that community. Such provisions include those that provide for EMs to:

    a. Be selected and appointed solely at the discretion of the Governor; See provisions including but not limited to MCL §141.1549;

    b. Become vested with Public Act 436 EM powers for persons previously appointed or acting as EFMs under prior laws; See provisions including but not limited to MCL §141.1549;

    c. Act for and in the place and stead of the local governing body of cities and villages and to assume all the powers and authority of the local governing body and local elected officials. See provisions including but not limited to MCL §141.1549, §141.1550, and §141.1552;

    d. Rule by decree over cities and villages through powers that permit the EM to contravene and thereby implicitly repeal local laws such as city and village charters and ordinances; See provisions including but not limited to MCL §141.1552; and

e. Explicitly repeal, amend, and enact local laws such as city and village ordinances. See provisions including but not limited to MCL §141.1549 and §141.1552.

194. On its face, as applied, and in practice, Public Act 436 violates the US Const., Amend. XIII, § 1 through provisions of the statute that perpetuate the vestiges of slavery by discriminatorily revoking the community's right to vote for local officials based on the racial composition of the community that ratify appointments made and legislative acts taken by EMs acting under Public Act 4. See provisions including but not limited to MCL §141.1570.

195. Defendants have caused injury to the Plaintiffs by exercising the authority granted under Public Act 436 by intentionally terminating and/or removing the authority of duly elected public officials in various municipalities comprising more than fifty-two percent (52%) of the state's population of citizens who are of African American descent.

196. The provisions of PA 436 and the powers granted thereby, are not necessary, narrowly tailored, rationally, or otherwise lawfully related to achieving the asserted government interests of achieving local government financial stability.

197. As a direct and proximate result of the enactment of Public Act 436 and Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their constitutionally-protected rights.

### COUNT IX – 42 U.S.C. §1983 -- Constitutional Violation
### US Const, Amend. XIV, §1 –Equal Protection – Removal of Emergency Managers

198. Plaintiffs incorporate by reference paragraphs 1 through 196 above as though fully stated herein.

199. Plaintiffs bring this claim pursuant to 42 U.S.C. §1983.

200. Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective individual and/or official capacities,

40

have engaged in conduct and adopted laws and policies that violate Plaintiffs' rights under Amend. XIV, §1 of the U.S. Constitution.

201.    Amendment XIV, §1 states in pertinent part, "No state shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws."

202.    The Equal Protection Clause protects against laws and the application of laws that invidiously discriminate between similarly situated individuals or between groups of persons in the exercise of fundamental rights.

203.    The Equal Protection Clause also protects against laws and the application of laws that discriminate among similarly situated individuals or between groups of persons when no rational basis exists for such discrimination.

204.    Public Act 436 permits cities and school boards to pass a resolution by a 2/3 vote and with the approval of strong mayors thereby remove their EMs after 18 months in office.

205.    At the same time, Public Act 436 converts all existing EFMs to EMs.   Many of the existing managers have been in place for months and even years longer than the 18 month time period after which elected officials to pass a resolution by a 2/3 vote and the approval of strong mayors for the removal such managers.

206.    Thus, the law discriminates against cities and school districts where EFMs and EM have been and are currently in place.  The law discriminates against these municipalities requiring them to suffer an additional 18 months with an EM despite their having had such officials in place much longer than this time period.  At the same time, municipalities that newly receive such managers will be permitted to after which elected officials to pass a resolution by a 2/3 vote and the approval of strong mayors for the removal of such officials after they have been in office for 18 months.

207.     On its face, as applied, and in practice, Public Act 436 violates the Equal
Protection Clause of US Const., Amend. XIV, § 1 through provisions of the statute discriminate
between cities and school boards that presently have had EMs for significantly longer than 18
months and those that will receive EMs after March 28, 2013.  Such provisions include but are
not limited to MCL §141.1549(11).

208.     The provisions of PA 436 and the powers granted thereby, are not necessary,
narrowly tailored, rationally, or otherwise lawfully related to achieving the asserted government
interests of achieving local government financial stability.

209.     As a direct and proximate result of the enactment of Public Act 436 and
Defendants' actions, Plaintiffs have suffered and will continue to suffer a loss of their
constitutionally-protected rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray this Honorable court enter Judgment against Defendants
providing:

  a.  For declaratory relief holding that Public Act 436 violates the United States
      Constitution, Art. 4, §4; Amend I; Amend XIII; and Amend. XIV; and the Voting
      Rights Act of 1965, 42 U.S.C. §§ 1973 *et. seq.*;

  b.  For liquidated, compensatory, and punitive damages in an amount fair and just under
      the circumstances;

  c.  For preclearance remedies as permitted by 42 USC § 1973a(c);

  d.  For attorneys' fees and costs; and

  e.  For such further relief as is just and equitable.

December 2, 2013          Respectfully Submitted,

By: /S/ John C. Philo
John C. Philo (P52721)
Anthony D. Paris (P71525)
SUGAR LAW CENTER
FOR ECONOMIC & SOCIAL JUSTICE
4605 Cass Ave., 2nd Floor
Detroit, Michigan 48201
(313) 993-4505/Fax: (313) 887-8470
jphilo@sugarlaw.org
tparis@sugarlaw.org
Attorneys for Plaintiffs

Herbert A. Sanders (P43031)
THE SANDERS LAW FIRM PC
615 Griswold St. Ste. 913
Detroit, Michigan 48226
(313) 962-0099/Fax: (313) 962-0044
haslawpc@gmail.com
Attorneys for Plaintiffs

Julie H. Hurwitz (P34720)
William H. Goodman (P14173)
GOODMAN & HURWITZ PC on behalf of the
DETROIT & MICHIGAN NATIONAL
LAWYERS GUILD
1394 E. Jefferson Ave.
Detroit, Michigan 48207
(313) 567-6170/Fax: (313) 567-4827
jhurwitz@goodmanhurwitz.com
bgoodman@goodmanhurwitz.com
Attorneys for Plaintiffs

Richard G. Mack, Jr. (P58657)
Keith D. Flynn (P74192)
MILLER COHEN, P.L.C.
600 W. Lafayette Blvd., 4th Floor
Detroit, Michigan 48226
(313) 964-4454/Fax: (313) 964-4490
richardmack@millercohen.com
Attorneys for Plaintiffs

Darius Charney
Ghita Schwarz

43

CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th floor
New York, New York 10012
(212) 614-6464/Fax: (212) 614-6499
dcharney@ccrjustice.org
Attorneys for Plaintiffs

Cynthia Heenan (P53664)
Hugh M. Davis, Jr. (P12555)
CONSTITUTIONAL LITIGATION ASSOCIATES
PC
450 W Fort St Ste 200
Detroit, MI  48226
(313) 961-2255/Fax: (313) 961-5999
conlitpc@sbcglobal.net
Attorney for Plaintiffs

F:\Cases\DPS (P v. S)\In Re Detroit
Bankruptcy\Pldgs\response to m-recon Ex. 6
Complaint-Federal-1st Amended (2).doc