**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

## COMMITTEE'S OBJECTION TO THE MOTION OF DEBTOR FOR ENTRY OF AN ORDER VACATING THE APPOINTMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS

The Official Committee of Unsecured Creditors (the "**Committee**") of the City of Detroit, Michigan (the "**City**"), through its co-counsel, Morrison & Foerster LLP and Steinberg Shapiro & Clark, hereby submits this objection (the "**Objection**") to the *Motion of Debtor for Entry of an Order Vacating the Appointment of Official Committee of Unsecured Creditors* [Docket No. 2626] (the "**Motion**"). In support of the Objection, the Committee respectfully states as follows:

### PRELIMINARY STATEMENT

1.      The Office of the United States Trustee properly appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code. Comprised of holders of "different kinds" of unsecured claims, the composition of the Committee is exactly what the drafters of the Bankruptcy Code intended in section 1102(b)(1). Since being formed, the Committee members have moved forward judiciously to select counsel and discuss the anticipated role the Committee should have during this Chapter 9 case. It is unfortunate that the City decided to seek to disband

the Committee rather than embrace the positive aspects of having a fiduciary for unsecured creditors to deal with in this case.

2.     The City requests that this Court use its equitable powers to disband the Committee primarily based upon one flawed decision from a bankruptcy court in North Carolina. Neither the law nor the facts in this case support the City's request and, as set forth herein, the Motion should be denied.

**ADDITIONAL BACKGROUND**

3.     On January 22, 2014, the Committee held a meeting at which Wilmington Trust Company was elected Chairperson of the Committee. Financial Guaranty Insurance Company was elected Alternate Chairperson.

4.     During the meeting on January 22, 2014, the Committee selected Morrison & Foerster LLP and Steinberg Shapiro & Clerk as counsel to the Committee.

**ARGUMENT**[1]

**I.     THE CITY'S RELIANCE ON SECTION 105(D) OF THE BANKRUPTCY CODE TO DISBAND THE COMMITTEE IS INAPPROPRIATE BECAUSE IT WOULD BE INCONSISTENT WITH ANOTHER PROVISION OF THE BANKRUPTCY CODE**

5.     The City's reliance on section 105(d)(2)[2] of the Bankruptcy Code and *In re Pacific Ave. LLC*, 467 B.R. 868 (Bankr. W.D.N.C. 2012) ("*Pacific Ave.*") to disband the Committee is misplaced and improper. The equitable relief afforded in section 105(d)(2) is

---

[1] The Committee takes the position that the appointment of an unsecured creditors committee is mandatory in chapter 9 pursuant to section 1102(a)(1) of the Bankruptcy Code. The Committee does not address this argument, however, because, regardless of whether it is mandatory, the United States trustee appointed a Committee and the argument is therefore moot. The issue of whether the appointment of a committee is mandatory does not change the analysis herein that the Bankruptcy Code does not provide for the equitable disbandment of a committee.

[2] Section 105(d)(2) of the Bankruptcy Code provides that "the court, on its own motion or on the request of a party in interest—*unless inconsistent with another provision of this title* . . . may issue an order . . . to ensure that the case is handled expeditiously and economically…." 11 U.S.C. § 105(d)(2) (emphasis added).

2

unavailable where, as here, the relief sought is inconsistent with another provision of the Bankruptcy Code. Disbandment of the Committee is inconsistent with the congressionally-designated powers given to bankruptcy courts in sections 1102(a)(3)-(4) of the Bankruptcy Code, which limit a court's role in the management of official committees.

6. Section 1102(a)(3) of the Bankruptcy Code explicitly permits a court to disallow the appointment of a committee of creditors on the request of a party of interest and for cause only in the case of a "small business debtor," as that term is defined in section 101(51)(D) of the Bankruptcy Code. As the City correctly points out, section 101(51)(D) of the Bankruptcy Code does not apply in this case.

7. Section 1102(a)(4) of the Bankruptcy Code defines a court's ability to order the United States trustee to alter or amend the membership of the committee. Notably, section 1102(a)(4) of the Bankruptcy Code does not provide for the elimination, disbandment or diminishment of a committee. Instead, it only allows a court to effectuate two (2) outcomes: (1) a change in the membership of the committee, if the court determines that the change is necessary to ensure adequate representation of creditors, and (2) an increase in the number of members to include a creditor that is a small business concern (in certain circumstances where such creditor holds disproportionately large claims). 11 U.S.C. § 1102(a)(4). Neither section 1102(a)(3) nor section 1102(a)(4) of the Bankruptcy Code allows the court to disband a committee in a chapter 9 case.

8. If Congress wanted to give a bankruptcy court the power to disband or disallow a committee appointed in a chapter 9 case, it would have done so, as it did in sections 1102(a)(3) and 1161 of the Bankruptcy Code.[3] Instead, Congress intentionally excluded such power from

---

[3] Pursuant to section 1161 of the Bankruptcy Code, section 1102 does not apply in a case concerning a railroad.

ny-1129916

sections 1102(a)(3)-(4) and, in fact, only gave court's the power to order the change or *increase* in the size of a committee in certain circumstances. As the Supreme Court has stated on many occasions "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Bates v. United States*, 522 U.S. 23, 29-30 (1997); *Russello v. United States*, 464 U.S. 16, 23, (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).

9.      Congress deliberately excluded the power to disband or disallow a creditors' committee in a chapter 9 case and the City cannot look to the Court's equitable powers to enlarge section 1102(a)(4) beyond its unambiguous terms and its plain meaning.

## II.     *PACIFIC* AVE. WAS WRONGLY DECIDED AND EVEN IF THE COURT FINDS THE *PACIFIC AVE.* STANDARD APPLICABLE THE CITY FAILS TO MEET ITS BURDEN OF PROOF UNDER THAT STANDARD

10.      Despite the fact that, as stated above, disbanding a committee pursuant to section 105(d)(2) would be inconsistent with other sections of the Bankruptcy Code, the City relies heavily on *Pacific Ave.* as justification for just such a result. *Pacific Ave.* was incorrectly decided and provided no analysis to address the conflict created between sections 1102(a)(3)-(4) and section 105(d)(2) identified above. Nevertheless, even if the Court were to consider *Pacific Ave.* applicable—which, for the reasons set forth herein, the Court should not—the City has failed to assert sufficient facts to support the disbandment of the Committee under the *Pacific Ave* standard.

11.      The *Pacific Ave.* decision is written in the conjunctive, and, therefore, the City must establish all three (3) elements of the standard to satisfy its burden of proof. Those elements are: (1) the Committee is no longer necessary to protect the interests of its constituency; (2) the administrative expense of the Committee is not justified; and (3) the Committee has

4

appeared to be counter-productive to the process of this case.  The City falls woefully short of meeting that burden.

a.       **The Committee is Necessary to Protect the Interests of its Constituency**

12.     Despite the City's assertion otherwise, members of the Committee do not act in their own interests when acting as members of the Committee, but instead act as a fiduciaries for all unsecured creditors.  Therefore, individual member's participation in the case on their own behalf has no bearing on whether an unsecured creditors' committee is necessary.  If the City's theory about committees was correct then there would be no need for a creditors' committee in nearly all large bankruptcy cases.  Yet, unsecured creditors' committees are routinely appointed, even where each member is already actively participating in the case through counsel.  For example, an unsecured creditors' committee was appointed in *In re Residential Capital*, an analogous situation where each committee member had its own counsel, filed pleadings on its own behalf, and participated in mediation with the debtors with respect to its own claims.  *See generally In re Residential Capital LLC, et al.,* Case No 12-12020 (MG) (Bankr. S.D.N.Y. 2012); *see also In re AMR Corp.*, *et al.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. 2011) (Where the committee included multiple labor unions, each of which had its own counsel, and participated in significant litigation against the debtors in their own respective capacities.);  *In re MF Global Holdings Ltd., et al.*, Case No. 11-15059 (MG) (Bankr. S.D.N.Y. 2011); *In re Lehman Brothers Holdings Inc. et al*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. 2008).

13.     More importantly, pursuant to section 1103(c) of the Bankruptcy Code, the Committee is tasked with specific duties to protect the unsecured creditors as a whole.  Those tasks include:

> (1)  consult  with  the  trustee  or  [debtor]  concerning  the administration of the case;

5

(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(3) participate in the formulation of a plan, advise those represented by such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;

(4) request the appointment of a trustee or examiner under section 1104 of this title; and

(5) perform such other services as are in the interest of those represented.

11 U.S.C. 1103(c).[4]

14.     Many of the tasks listed above are necessary to the efficient and economical resolution of the case but would be expensive and arduous for a single creditor to bear—and potentially of little value to any one creditor's individual needs.  Given the unique situation presented by a chapter 9 case of this size, there are many unsecured creditors who do not have, or cannot afford, a voice in this case.  In addition to several billion dollars of bond debt, pension underfunding and trade claims, there are as many as 1,500 tort creditors with various claims against the City and other smaller factions with particularized claims that fall within the unsecured creditor umbrella.  The Committee is best-suited to identify the tasks necessary to maximize the return to unsecured creditors of all sizes, and address them in the appropriate manner, rather than each individual creditor evaluating such tasks on their own.

15.     A prime example is the City's proposed plan of adjustment.  Although the Committee has yet to receive the proposed plan of adjustment, section 1103(c)(3) was included for the very purpose of having the Committee participate in the formulation of the plan on behalf of all unsecured creditors.  The Committee's role here is essential to ensuring that unsecured

---

[4] The Committee recognizes that section 1103(c)(4) does not apply in the City's chapter 9 case because section 901 does not incorporate section 1104 into chapter 9.

creditors as a whole receive adequate treatment. As a fiduciary representing unsecured creditors as a group, the Committee is in a unique position to safeguard the treatment of unsecured creditors. Further, the Committee's involvement in the development of a plan that treats all unsecured creditors fairly will help ensure that the plan complies with the requirement in section 943(b)(7) of the Bankruptcy Code that "the plan is in the best interests of creditors and is feasible." 11 U.S.C. § 943(b)(7).

16.     Lastly, section 1102(b)(3) requires a committee to serve as a repository of information and sounding board for all unsecured creditors. These roles are critical to the dissemination of important information, which will facilitate the efficient and effective resolution of this chapter 9 case, and as the Court stated at a previous hearing, the avoidance of a "chapter 18." The United States trustee selected creditors suited to handle these requirements; and, thus, the Committee is able to fulfill this objective of the Bankruptcy Code.

**b.      The Administrative Expense of the Committee is Justified and should be Borne by the City**

17.     Not only is the administrative expense of the Committee justified based on the Committee's fiduciary duties described above, but the statutory scheme employed by chapter 9 and canons of statutory construction also prescribe that the official committee of unsecured creditors is entitled to the payment of its professional fees by the debtor in a chapter 9 case.

(i)      *The Statutory Scheme Employed in Chapter 9 Dictates that the City must Pay the Professional Fees of the Committee.*

18.     As the court in *In re Pauls Valley Hosp. Auth.* stated when considering the issue of payment of a committee's professional's fees, "It makes little sense to provide for a committee's existence but not also provide for its operation which will necessarily involve the employment and payment of professionals." *Order (i) Holding Debtor Responsible for Payment of the Reasonable and Necessary Legal Fees and Expenses of the Committee and (ii) Requiring*

7

*Formal Discovery Requests and Objections Before Court Will Determine Scope of Permissible*

*Discovery* at 11, *In re Pauls Valley Hosp. Auth.*, at 11, Case No. 13-10791 (SAH) (Bankr. W.D.

Okla. July, 18, 2013) [Docket No. 142] (attached hereto as <u>Exhibit A</u>).  Indeed, Congress

provided a path to the payment of fees for committee professionals through section 943(b)(5) of

the Bankruptcy Code.

19.     Section 943(b)(5) of the Bankruptcy Code states that the court shall confirm a

plan of adjustment only if, on the effective date, each holder of a claim under section 507(a)(2) is

paid the full amount of its allowed claim (unless such creditor has agreed to different treatment).

11 U.S.C. § 943(b)(5).  Claims under section 507(a)(2) expressly include "administrative

expenses allowed under section 503(b)…."  11 U.S.C. § 507(a)(2).  Section 503(b) states that

"there shall be allowed administrative expenses . . . including . . . compensation and

reimbursement awarded under section 330(a)."  11 U.S.C. § 503(b)(2).  Finally, section 330(a)

states that reasonable compensation may be awarded to, among other persons, "a professional

person employed under section . . . 1103."  11 U.S.C. § 330(a)(1)(A).  The analysis then comes

full circle by virtue of the inclusion of section 1103 in section 901, which specifically authorizes

the committee in a chapter 9 case to hire counsel.

20.     This logical chain of statutory interpretation has been specifically adopted by

multiple courts.  *In re Castle Pines N. Metro Dist.*, 129 B.R. 233, 234 (Bankr. D. Colo. 1991); *In*

*re Pauls Valley Hosp. Auth.*, Case No. 13-10791 (SAH) (Bankr. W.D. Okla. July, 18, 2013)

[Docket No. 142]; *cf In re Cnty. of Orange*, 179 B.R. 195, 199 (Bankr. C.D. Cal. 1995) (stating

that section 943 governs the payment of professional fees in chapter 9 and plan cannot be

confirmed without payment of committee's professionals fees).[5]  The court in *In re Castle Pines North Metro Dist.*, stated

> Congress, by specifically referring to § 507(a)(1) in § 943(a)(5), has necessarily included § 503(b), which, in turn, includes § 330(a).  The symmetry is complete by the specific inclusion of §§ 1102, 1103, and 503 in § 901(a).  Thus, by reason of § 901(b) the District's argument fails.[6]

*In re Castle Pines North Metro Dist.*, 129 B.R.at 234;  *see also In re Pauls Valley Hosp. Auth.*, Case No. 13-10791 (SAH) (Bankr. W.D. Okla. July, 18, 2013) [Docket No. 142].  Thus, based on section 901(b) of the Bankruptcy Code's mandate that the terms used in sections incorporated into chapter 9 via section 901(a) or 103(e) of the Bankruptcy Code have their usual meaning, the *Castle Pines* court stated that "by using a specific reference in § 943(a)(5) to § 507(a)(1), the court must apply all usual meanings attributable to § 507(a)(1)," especially to effectuate section 1103.  *Castle Pines* at 234.

21.     With respect to section 904 of the Bankruptcy Code, and its general pronouncement that the bankruptcy court may not interfere with property or revenue of the debtor without the debtor's consent, the *Castle Pines* court stated that its analysis does not *force* the debtor to pay the committee's attorneys' fees.  Rather, the *Castle Pines* court stated that if the debtor wants to confirm a plan under section 943, so that it may impair contracts—something that it cannot do outside of chapter 9—the debtor must "pay the price of admission" and adhere to section 943(b)(5), which requires that it pay all administrative claims, including fees for the creditors' committee counsel.  *Id.* at 235.  The *Castle Pines* court stated that, if the debtor does

---

[5] *But cf In re E. Shoshone Hosp. Dist.* 226 B.R. 430, 431 n.1 (Bankr. D. Id. 1998) (rejecting in *dicta* the inclusion of section 330 in chapter 9) *and In re Sanitary & Improvement Dist. No. 7*, 96 B.R. 966, 967 (Bankr. D. Neb. 1989) (rejecting without analysis) and *Cnty. of Orange v. Merrill Lynch & Co.* (*In re Cnty. of Orange*), 241 B.R. 212, 216 (C.D. Cal. 1999) (rejecting without analysis).

[6] *In re Castle Pines* was decided prior to BAPCPA, and thus refers to the old statutory sections.  Section 507(a)(1) is now 507(a)(2) and section 943(a)(5) is now 943(b)(5).

not want to pay these administrative expenses it is free to dismiss its case. *Id.* The *Castle Pines* court also stated that, because section 943(b)(3) requires as a condition for plan confirmation that all expenses to be paid by the debtor must be reasonable, the debtor is free to challenge the committee's attorneys' fees to the extent it feels they are unreasonable. *Id.*

22.     In short, the appropriate statutory interpretation requires a chapter 9 debtor to pay for the reasonable fees and expenses of professionals retained by a committee appointed under section 1102.

(ii)     *To Give Section 1103(a) of the Bankruptcy Code its Full Meaning in Chapter 9, Canons of Statutory Construction Require the Court to Give Effect to Section 330 as it Applies to Section 1103.*

23.      It is axiomatic that a committee cannot represent itself *pro se*. This is most clearly seen in Bankruptcy Rules 9010 and 9011, and Eastern District of Michigan Bankruptcy Court Local Rule 9010-1, which prevent a committee from taking any action that constitutes the practice of law without representation by counsel. Therefore, regardless of the language of section 1103(a), a committee must have counsel to file papers, motions, pleadings or other papers. Otherwise, a committee could not fully perform its section 1103 duties and meaningfully participate in a case. Indeed, the Committee could not respond to this Motion without counsel. A committee without counsel serves no purpose and cannot fulfill its fiduciary duties.

24.     Moreover, statutory construction requires an interpretation that gives full meaning to the words chosen by Congress.[7] Therefore, the *inclusion* of sections 1102 and 1103 is far more meaningful than the *omission* of section 330 in section 901 in section 901. First, Congress

---

[7] *See Harbison v. Bell*, 556 U.S. 180, 198 (2009) (Thomas, J. concurring)

(This Court's interpretive function requires it to identify and give effect to the best reading of the words in the provision at issue. Even if the proper interpretation of a statute upholds a very bad policy, it is not within our province to second-guess the wisdom of Congress by picking and choosing our preferred interpretation from among a range of potentially plausible, but likely inaccurate, interpretations of a statute.)

knew how to limit the inclusion of specific statutory sections when it drafted section 901. Thirty-five of the statutory references in section 901 are to specific subsections of the Bankruptcy Code rather than to the entire section. If Congress did not want a Committee to retain counsel it could have easily limited section 1103 to subsection (c).

25.     Although Congress did choose to include certain subsections of specified sections of the Bankruptcy Code in section 901, it did not search through other individual subsections to parse out words or phrases in order to include such subsections in section 901. Therefore, Congress could not have included all of section 330(a) into chapter 9, because, as described below, it would have created a more significant statutory construction problem.

26.     Congress, instead, excluded section 330 from section 901, not as an exclusion of payment for a committee's professionals, but rather as a recognition that Congress did not intend to include other fiduciaries in chapter 9. Section 330(a) specifically authorizes the court to award the payment of fees to the following fiduciaries: (1) a trustee, (2) a consumer privacy ombudsman appointed under section 332, (3) an examiner, (4) an ombudsman appointed under section 333, or (5) a professional person employed under section 327 or 1103. As section 901 plainly shows, Congress never intended for a court to appoint an ombudsmen, trustee or examiner in a chapter 9 case, as section 901 does not include sections 332 (a consumer privacy ombudsmen), section 333 (patient care ombudsmen); or section 1104 (trustee or examiner).

27.     By including only section 1103 in section 901, section 330 is only applicable to professionals retained under section 1103, as opposed to the other fiduciaries and their professionals enumerated in section 330. Moreover, if section 330 is not incorporated, section 105 can fill the gap to allow section 1103 of the Bankruptcy Code to achieve its full and intended effect. For example, when examiners needed counsel to do their job, but lacked express

authority to engage them, courts used section 105 to fashion orders that were necessary or appropriate to further those substantive provisions of the Bankruptcy Code.  *See, e.g.*, *In re Southmark Corp.*, 113 B.R. 280 (Bankr. N.D. Tex. 1990); *In re Tighe Mercantile, Inc.*, 62 B.R. 995 (Bankr. S.D. Cal. 1986).

28.     For these reasons, the administrative expense of the Committee is justified to protect the unsecured creditors, and the City should bear the cost of the Committee's professionals' fees and expenses.

### c.     The Committee has not Taken any Actions that Appear to be Counter-Productive to the Process of the Case

29.     As a threshold matter, and the primary reason why the City fails the final element of the *Pacific Ave.* standard is that the City must establish that the Committee *has been* counter-productive to the process of the case, not that the Committee *will be* counter-productive.  At this time, there is no record of the Committee acting in a manner counter-productive to the case, nor could there be because the Committee has not yet taken a position in the case.

30.     Moreover, the City's assertion that the Committee will disrupt the progress of the Court-ordered mediation and therefore will be counter-productive is baseless.  The Committee has not attempted, and likely will not attempt, to join in the mediation.  Instead, the Committee believes that it will be most productive and efficient in a targeted manner, identifying specific needs and areas where the Committee can address issues in a cooperative manner that maximizes returns to unsecured creditors as a whole.

31.     The City fails to establish that the Committee has been, or even will be, counter-productive in the case. Without more, the Court should deny the Motion.

# III. NOT ONLY WAS *PACIFIC AVE.* WRONGLY DECIDED, IT IS FACTUALLY DISTINCT

32. *Pacific Ave.* does not offer an analogous factual scenario from which the Court can find guidance.[8] *Pacific Ave.* began as a standard debtor-in-possession chapter 11 case, with the United States trustee appointing a committee near the beginning of the case. After the case was over a year old, the court appointed a chapter 11 trustee as fiduciary for the debtors' estates and creditors.

33. The most glaring difference between this case and *Pacific Ave.* is the appointment of a chapter 11 trustee. The court in *Pacific Ave.* believed that the committee served as the voice for relatively small group of stakeholders and, upon the appointment of the Trustee, the unsecured creditors no longer needed that voice. The *Pacific Ave.* court went on to say that the case before it was more akin to a liquidation under chapter 7 than a reorganization under chapter 11, stating,

> [i]t is worth noting that an unsecured committee is not provided for in Chapter 7 liquidation cases—because of the presence of the Trustee in such cases. These cases, although filed pursuant to Chapter 11, are essentially liquidation cases—now administered by a Trustee. Consequently, as in Chapter 7 cases, the Committee is not necessary to the fair administration of these cases.

*Pacific Ave.*, 467 B.R. at 870.

34. In the case before the Court here, the City essentially remains the "debtor-in-possession" and the Court cannot appoint a fiduciary to protect the interests of unsecured creditors because chapter 9 does not provide for the appointment of a trustee or examiner.[9] Additionally, the City's case is not, and cannot be, a liquidation but instead is an adjustment of

---

[8] Additionally, *Pacific Ave.* is a Western District of North Carolina bankruptcy court case, and as such is not binding on this Court.

[9] Section 1104 is not among the enumerated statutes included in section 901 for incorporation into chapter 9.

ny-1129916

13-53846-tjt    Doc 2687    Filed 02/14/14    Entered 02/14/14 16:03:37    Page 13 of 29

the debts of a going concern that will continue after the City emerges from bankruptcy.

Accordingly, the Committee is necessary to the fair administration of the case.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court (1) deny the Motion;

(2) determine that the Committee's professionals are entitled to the payment of their reasonable

fees and expenses from the City; and (3) grant such other and further relief as the Court deems

just.

Dated: February 14, 2014
New York, New York


/s/ Brett H. Miller
**MORRISON & FOERSTER LLP**
Brett H. Miller
Lorenzo Marinuzzi
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 468-8000
Fax: (212) 468-7900

And

**STEINBERG SHAPIRO & CLARK**
Mark H. Shapiro
Geoffrey T. Pavlic
25925 Telegraph Road, Suite 203
Southfield, MI
Tel: (248)352-4700
Fax: (248)352-4488

*Proposed Counsel for the Official Committee*
*of Unsecured Creditors of City of Detroit,*
*Michigan*

14

**EXHIBIT A**

1

**Dated: July 18, 2013,  11:22 AM**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

_____

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PAULS VALLEY HOSPITAL AUTHORITY, | ) | Case No. 13-10791-SAH |
| | ) | Chapter 9 |
| Debtor. | ) | |

**ORDER (i) HOLDING DEBTOR RESPONSIBLE FOR PAYMENT
OF THE REASONABLE AND NECESSARY LEGAL FEES AND
EXPENSES OF THE COMMITTEE AND (ii) REQUIRING FORMAL
DISCOVERY REQUESTS AND OBJECTIONS BEFORE COURT WILL
DETERMINE SCOPE OF PERMISSIBLE DISCOVERY**

On June 6, 2013, the Court entered a Corrected Order Directing Filing of Memoranda

("Order") [Doc. 105] directing the Official Unsecured Creditors' Committee (the "Committee")

and Pauls Valley Hospital Authority, the chapter 9 Debtor ("Debtor"), to file legal memoranda

concerning two questions:[1]

_____

[1] The Order was prompted by a letter dated May 23, 2013 [Doc. 101] to this Court from
D. Christopher Whybrew, a member of the Committee, requesting assistance in obtaining
assistance of counsel and requesting certain financial information of Debtor.

1.      Whether Debtor's estate is responsible under the Bankruptcy Code to pay the
reasonable fees and expenses of the Committee in fulfilling its statutory
obligations during the pendency of this case; and

2.      Whether Debtor is required to disclose financial information to the Committee.

Pursuant thereto, on June 20, 2013, Debtor filed the Memorandum of Law Addressing Court's
Authority to Compel Action of Debtor Regarding Payment of Committee Fees and Disclosure of
Financial Information ("Debtor's Memorandum") [Doc. 124].  The Committee filed the Brief of
the Official Committee of Unsecured Creditors' [sic] Regarding the Court's Authority to Compel
the Debtor to (1) Pay the Reasonable Fees and Expenses of the Committee, and (2) Disclose
Financial Information to the Committee ("Committee's Brief") [Doc. 132] on June 28, 2013.

Upon review of the legal memoranda submitted by the parties and applicable case law,
the Court[2] concludes:  (i) Debtor is obligated to pay the reasonable and necessary legal fees and
expenses of the Committee allowed under 11 U.S.C. § 503(b) as part of any confirmed plan; and
(ii) the Court is unable to determine at this time the extent to which Debtor is required to make
disclosures of financial information to the Committee.

## I.      THE BANKRUPTCY CODE REQUIRES DEBTOR TO PAY THE COMMITTEE'S LEGAL FEES AND EXPENSES.

This matter concerns the unfortunate situation of a small town hospital trying to manage
its ongoing operations with limited funds.  Debtor filed for chapter 9 bankruptcy protection as a
method to manage and reorganize its financial affairs.  As part of that process, the Committee

---

[2]The Court determines that this matter is ripe for decision so as to eliminate the
uncertainty surrounding the employment of counsel by the Committee and the source of payment
of such counsel's reasonable and necessary fees and expenses and to allow Debtor to plan and
proceed expeditiously towards confirmation of a chapter 9 plan.

2

was appointed and is charged with fulfilling specific statutory obligations[3] as well as overseeing the interests of its members.[4]  The Committee, much like Debtor, finds itself in the unenviable position of finding a way to pay its bills – here, its legal fees and expenses.

### A.  Debtor's Contentions

Debtor starts with the general proposition that, as a political subdivision of the State of Oklahoma, Debtor is not subject to control or interference by the federal government.  Debtor argues that these restrictions are true even though it voluntarily sought chapter 9 bankruptcy protection.  Per Debtor, its sovereignty is protected by not only the Tenth Amendment of the Constitution but also the Bankruptcy Code, specifically 11 U.S.C. §§ 903 and 904.  Debtor suggests that the fact that Congress did not include a specific provision for payment of professionals in chapter 9 of the Bankruptcy Code is a clear and obvious indicator that Congress did not intend to burden chapter 9 debtors with payment of professional fees and expenses of appointed committees.  By imposing an obligation on Debtor to compensate the Committee's

---

[3]11 U.S.C. § 1103 (applicable to this case pursuant to 11 U.S.C. § 901(a)), sets forth the powers and duties of the Committee and includes, without limitation, the duty to "investigate the acts, conduct, assets, liabilities and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business."  11 U.S.C. § 1103(c)(2).

[4]The Committee filed on July 3, 2013, its Amended Application of the Official Committee of Unsecured Creditors for Authority to Retain the Firm Andrews Davis, P.C. as Counsel to the Committee and Notice of Opportunity for Hearing ("Amended Application") [Doc. 138].  Debtor objected by filing on July 11, 2013, the Debtor's Limited Objection to the Amended Application of the Official Committee of the Unsecured Creditors for Authority to Retain the Firm of Andrews Davis PC, as Counsel to the Committee and Notice of Opportunity for Hearing ("Limited Objection") [Doc. 141].  The Court has yet to rule on the Amended Application and Limited Objection.  Thus, the Committee is still not yet officially represented by counsel, although the firm of Andrews Davis, P.C. filed the Committee's Brief on its behalf.

3

counsel, the Court would effectively trounce on state sovereignty which Congress has gone to painstaking ends to protect in the bankruptcy context.

Finally, Debtor contends that, because there is no provision providing that 11 U.S.C. § 330, the sole section of the Bankruptcy Code providing for awarding professional compensation, applies in chapter 9 cases, it cannot be required to pay the legal fees and expenses of the Committee.  Consequently, without Debtor's consent to payment, which it has not given[5], the Committee must look elsewhere for payment of its legal fees and expenses.

> **B.**    **Committee's Contentions**

The Committee contends that there is, in fact, statutory authority for its position that Debtor must pay its legal fees and expenses.  The Committee's position, which is supported not only by the language of the statute but also by persuasive case law, is that the plain language of the Bankruptcy Code requires Debtor to pay the Committee's legal fees and expenses as an allowed administrative expense on the effective date of a confirmed chapter 9 plan.

> **C.**    **The Court's Authority to Require Debtor to Pay the Committee's Legal Fees and Expenses is Constrained by Both Constitutional and Statutory Limitations.**

Debtor is a subdivision of the State of Oklahoma (Debtor's Memo. at 1), whose only avenue for relief from its debts was filing a voluntary chapter 9 petition.  In an effort to avoid constitutional problems involving state versus federal interests, the current version of chapter 9 of the Bankruptcy Code necessarily omits many of the protections afforded to creditors in the other chapters of the Bankruptcy Code.  <u>Silver Sage Partners, Ltd. v. City of Desert Hot Springs</u>

---

[5]Debtor contends its lack of consent is based wholly on its own poor financial condition rather than bad faith.

(In re City of Desert Hot Springs), 339 F.3d 782, 789 (9th Cir. 2003). On the other hand, Debtor, as a chapter 9 debtor, has "'an array of bankruptcy powers to enable it to achieve financial rehabilitation with very few, if any, corresponding limitations and duties of the type to which a Chapter 11 debtor is subject.'" City of Desert Hot Springs, 339 F.3d at 789 (citing In re Richmond Unified Sch. Dist., 133 B.R. 221, 225 (Bankr. N.D. Cal. 1991)). This Court is tasked with carefully balancing the relative state and federal interests implicated by Debtor's chapter 9 case as well as the competing rights of Debtor to operate free from interference and of the Committee to investigate and analyze Debtor's financial condition.

A brief history of the constitutionality of chapter 9 highlights the importance placed on protection of sovereign powers in chapter 9 bankruptcy cases and proceedings and the related limitations on the powers of the federal courts to interfere with the rights and duties of the states and their subordinate political subdivisions. In re Barnwell Cnty. Hosp., 459 B.R. 903, 910 (Bankr. D. S.C. 2011). Article 1, Section 10 of the Constitution prohibits "states, but not Congress, from passing any law that impairs obligations of contract." In re Richmond Unified Sch. Dist., 133 B.R. 221, 224 (Bankr. N.D. Cal. 1991). As a result, any legislation that grants municipalities relief from their debts without their creditors' consent must be enacted by Congress, such as the Bankruptcy Code. Richmond Unified Sch. Dist., 133 B.R. at 224. However, the Tenth Amendment of the Constitution provides, "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. As a result, "any federal debt relief legislation affecting municipalities must be sufficiently narrow in scope to avoid intrusion by the

5

federal courts on the sovereign power of the states." Richmond Unified Sch. Dist., 133 B.R. at 224.

An early version of chapter 9 contained in the Bankruptcy Act (which allowed not only voluntary petitions but also involuntary petitions against municipalities) was declared unconstitutional because it "materially restricted states in control of their governmental and fiscal affairs." In re Mount Carbon Metro. Dist., 242 B.R. 18, 32 (Bankr. D. Colo. 1999) (citing Ashton v. Cameron Cnty. Water Improvement Dist. No. 1, 298 U.S. 513 (1936)). See also, Ashton v. Cameron Cnty. Water Improvement Dist. No. 1, 298 U.S. 513 (1936) (finding previous version of chapter 9 unconstitutional because it allowed the federal government to impose its will on the state); In re Pierce Cnty. Hous. Auth., 414 B.R. 702, 715 (Bankr. W.D. Wash. 2009) (the Tenth Amendment requires that a municipality be left in control of its government and fiscal affairs during a chapter 9 case). In response to Ashton, Congress subsequently amended the Bankruptcy Act to include provisions for municipal bankruptcy cases but without the involuntary provisions, which amendment survived constitutional review. United States v. Bekins, 304 U.S. 27, 51-52 (1938) (upholding prior version of chapter 9 on grounds that state consent to the bankruptcy filing was required and careful drafting prevented the federal government from impinging on the sovereignty of the states).[6]

Current chapter 9 attempts to reconcile the competing state and federal interests by providing the debtor with many bankruptcy powers to enable it to achieve financial rehabilitation

---

[6]"Hence, a state, by authorizing a municipality to file a case legitimately 'invites the intervention of the bankruptcy power to save its agency which the State itself is powerless to rescue.'" In re City of Stockton, Cal., 478 B.R. 8, 15 (Bankr. E.D. Cal. 2012) (citing United States v. Bekins, 304 U.S. 27, 54 (1938)).

6

with very few, if any, corresponding limitations and burdens.  Richmond Unified Sch. Dist., 133

B.R. at 224.  For example, Section 903 of the Bankruptcy Code provides:

> This chapter does not limit or impair the power of a State to
> control, by legislation or otherwise, a municipality of or in such
> State in the exercise of the political or governmental powers of
> such municipality, including expenditures for such exercise, but–
>
> (1) a State law prescribing a method of composition of
> indebtedness of such municipality may not bind any creditor that
> does not consent to such composition; and
>
> (2) a judgment entered under such a law may not bind a creditor
> that does not consent to such composition.

11 U.S.C. § 903.  Section 903 is buttressed by Section 904, which provides:

> Notwithstanding any power of the court, unless the debtor consents
> or the plan so provides, the court may not, by any stay, order, or
> decree, in the case or otherwise, interfere with–
>
> (1) any of the political or governmental powers of the debtor;
>
> (2) any of the property or revenues of the debtor; or
>
> (3) the debtor's use or enjoyment of any income-producing
> property.

11 U.S.C. § 904.

Taken together, these sections prevent the federal government from interfering with a

state's sovereignty in the context of a chapter 9 case.  City of Stockton, 478 B.R. at 18-20.

> Chapter 9 passed constitutional muster on the basis that the federal
> bankruptcy power be exercised at the request of, but not at the
> expense of, the sovereign state in an exercise of cooperation among
> sovereigns.
>
> As a state-federal cooperative enterprise conducted in delicate
> circumstances in which state sovereignty must be respected,
> Congress has been sedulous to assure that the bankruptcy power

7

not be used in municipal insolvencies in a manner that oversteps
delicate state-federal boundaries.

* * *

In the overall construct, § 904 performs the role of the clean-up
hitter in baseball. Its preambular language "[n]otwithstanding any
power of the court, . . . the court may not, by any stay, order, or
decree, in the case or otherwise . . . " is so comprehensive that it
can only mean that a federal court can use no tool in its toolkit—no
inherent authority power, no implied equitable power, no
Bankruptcy Code § 105 power, no writ, no stay, no order—to
interfere with a municipality regarding political or governmental
powers, property or revenues, or use or enjoyment of
income-producing property.  As a practical matter, the § 904
restriction functions as an anti-injunction statute—and more.

In short, the § 904 limitation on the court's authority is absolute,
with only the two exceptions stated in § 904: consent; and
provision in a plan of adjustment.

City of Stockton, 478 B.R. at 20 (court refused request of an association of retired city employees

to enjoin chapter 9 debtor from temporarily stopping payment of retiree health benefits).

See also, In re Castle Pines North Metro. Dist., 129 B.R. 233, 234 (Bankr. D. Colo. 1991) ("It is

fairly obvious that if the Court ordered the District to make interim payments to counsel for the

Creditors' Committee it would be interfering with the revenues of the District, at least insofar as

it could or would affect its cash flow.").

Thus, the Constitution, specifically the Tenth Amendment, and Sections 903 and 904 of

the Bankruptcy Code limit this Court's role in this case.  Against this backdrop, the Court must

now determine whether authority exists for it to direct Debtor to pay the reasonable and

necessary legal fees and expenses of the Committee in this chapter 9 case.

8

**D.    The Court Has Statutory Authority to Order Debtor to Pay the Committee's Legal Fees and Expenses as Administrative Expenses Under a Confirmed Plan.**

The Committee correctly points out that there is strong statutory support that Congress intended creditors committees to have their professional fees and expenses paid as an administrative expense as part of a confirmed chapter 9 plan.  The case law also supports this conclusion although contrary authority admittedly exists.

One of the first courts to address the issue made the following statutory analysis:

- 11 U.S.C. § 943(b)[7] requires a court to confirm a chapter 9 plan if, among other things, the plan provides for payment of Section 507(a)(1) (currently Section 507(a)(2)) claims on the effective date of such plan.

- While 11 U.S.C. § 507(a)(1) (currently Section 507(a)(2)) does not dictate what is or is not an administrative claim, it establishes that administrative claims under Section 503(b) be afforded priority.

- Administrative expenses under 11 U.S.C. § 503(b) include compensation and reimbursement awarded under Section 330(a) of the Bankruptcy Code.  11 U.S.C. § 503(b)(2).

---

[7]11 U.S.C. § 943(b)(5) (which was Section 943(a)(5) at the time of the Castle Pines opinion) states:

(b) The court shall confirm the plan if–

(5) except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that on the effective date of the plan each holder of a claim of a kind specified in section 507(a)(2) of this title will receive on account of such claim cash equal to the allowed amount of such claim.

9

- 11 U.S.C. § 330(a)[8] provides for allowance and award of fees and expenses incurred by a professional person employed pursuant to Section 1103.

- 11 U.S.C. §§ 1102 and 1103, which pertain directly to committees, are made applicable in chapter 9 bankruptcy cases pursuant to 11 U.S.C. § 901(a).

Castle Pines, 129 B.R. at 234.  As summarized by the court:

> Congress, by specifically referring to § 507(a)(1) in § 943(a)(5), has necessarily included § 503(b), which, in turn, includes § 330(a). The symmetry is complete by the specific inclusion of §§ 1102, 1103 and 503 in § 901(a). Thus, by reason of § 901(b) the District's argument fails.

Castle Pines, 129 B.R. at 234.  See also, In re County of Orange, 179 B.R. 195, 199 (Bankr. C.D. Cal. 1995) ("Chapter 9 contemplates, therefore, that committee professionals will be paid at the end of the case rather than during its pendency.").[9]

---

[8]11 U.S.C. § 330(a)(1) provides:

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103–

> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

> (B) reimbursement for actual, necessary expenses.

[9]There are cases that have found to the contrary, but their analysis stops at Section 901(a), simply assuming that Section 330(a) is not applicable in chapter 9 cases because it is not listed in Section 901(a).  County of Orange v. Merrill Lynch & Co., Inc. (In re County of Orange), 241 B.R. 212, 216 (C.D. Cal. 1999) ("Section 901 lists a number of sections which apply to chapter 9 (continued...)

10

This Court's adoption of the Castle Pines holding is in accord with Congress' expressed intent that there be creditors' committees in chapter 9 cases. It makes little sense to provide for a committee's existence but not also provide for its operation which will necessarily involve the employment and payment of professionals. Moreover, given Congress' concerns for protecting state sovereignty, Congress logically tied confirmation of a chapter 9 plan to payment of professional fees and expenses since doing otherwise would likely run afoul of Sections 903 and 904. Castle Pines, 129 B.R. at 235.

Debtor voluntarily sought bankruptcy protection under chapter 9 but such filing is not without costs, which include the payment of professional fees and expenses on the effective date of any confirmed chapter 9 plan. Castle Pines, 129 B.R. at 235 ("The District can obtain here something that it cannot obtain elsewhere, i.e. the ability to impair contracts. But, if the District wants to invoke that power, it must pay the price of admission, and that price, at least in part, is to pay the reasonable fees for the Official Creditor's Committee counsel. If it does not wish to pay these administrative costs it can dismiss the case at any time."). Payment of the Committee's reasonable and necessary legal fees and expenses is a burden which the Bankruptcy Code specifically requires Debtor to bear.

---

[9](...continued)
cases, including several sections in chapter 3, but § 330 from chapter 3 is not among them. Because the statute excludes § 330 from the list of statutes applicable to chapter 9 cases, it does not apply here."); In re East Shoshone Hosp. Dist., 226 B.R. 430, 431 (Bankr. D. Idaho 1998) ("While the issue of approval of compensation is not yet before the Court, it is noted that §§ 328, 330 and 331—like § 327—not incorporated in chapter 9 under § 901.") (noting also its disagreement with Castle Pines); In re City of Prichard, Ala., 2010 WL 2383984 (S.D. Ala.) (noting split in cases). These cases, however, offer little analysis and do not address why Congress created a statutory path that leads straight to Section 330(a) from Section 943(b)(5) if Congress did not intend for a committee's professionals to be paid by the debtor.

11

     **D.**     **Debtor is Required to Pay the Reasonable and Necessary Legal Fees and Expenses of the Committee on the Effective Date of a Confirmed Plan.**

For the reasons explained above, the Court holds that any confirmed chapter 9 plan must provide for payment of the Committee's reasonable and necessary legal fees and expenses as an administrative expense in compliance with Section 943(b)(5) on the effective date of such plan.

**II.**     **THE COURT'S CAN COMPEL DEBTOR TO DISCLOSE FINANCIAL INFORMATION TO THE COMMITTEE.**

The final matter to be decided by the Court is whether Debtor must disclose financial information to the Committee.  Certainly, 11 U.S.C. § 1103 empowers the Committee to investigate Debtor's financial condition and business affairs.  Nevertheless, the Court must be cognizant of the scope of any request for information and documentation and the relative burden placed on Debtor by any such requests so as not to interfere with Debtor's operations in a way that would run afoul of 11 U.S.C. § 904.

The Court has no doubt that the Committee is entitled to financial information and documentation from Debtor pursuant to its duties and obligations under Section 1103.  However, at this time, no formal request has been made, under Rule 2004 of the Federal Rules of Bankruptcy Procedure or otherwise, by the Committee for specific financial information or documentation from Debtor and no formal objection has been lodged by Debtor.  As a result, the Court cannot decipher how narrow or how broad the Committee's requests are or assess the relative burden to Debtor.

Accordingly, the Court declines at this juncture to rule on what financial information and/or documentation Debtor must provide to the Committee.  The Committee is free to make a formal request for specific information and documentation from Debtor, keeping in mind that

this Court will not enter any orders which will interfere with Debtor's political or governmental

powers, Debtor's property or revenues and Debtor's use or enjoyment of any income-producing

property. 11 U.S.C. § 904. If necessary, Debtor can then object to the formal request, keeping in

mind that the Committee has, pursuant to 11 U.S.C. §§ 901(a) and 1104(c), the right to

investigate the "acts, conduct, assets, liabilities, and financial condition" of Debtor and of

Debtor's business operations. If and when Debtor makes formal objections to the Committee's

requests, the Court will be in a position to determine the permissible scope of discovery.

The Court, however, cautions the parties with words from another chapter 9 case:

> As this court has previously explained, the lessons of recent
> chapter 9 cases teach that successful plans of adjustment are most
> likely to be achieved by the parties in interest all coming to the
> table and participating in bona fide negotiations. Every issue that
> is resolved by agreement will enhance the prospects for a
> successful plan of adjustment.

City of Stockton, 478 B.R. at 24. These lessons apply with equal force to any potential discovery

dispute as such dispute will only serve to increase the administrative expenses that Debtor will be

required to pay under any confirmed chapter 9 plan.

## **Conclusion**

Accordingly, IT IS HEREBY ORDERED AND ADJUDGED that:

1.    Debtor must pay the Committee's reasonable and necessary legal fees and

expenses as an administrative expense in compliance with 11 U.S.C. § 943(b)(5)

on the effective date of any confirmed plan in this case; and

2.    While the Committee is entitled to request financial information and

documentation from Debtor, at this time, the Court is unable to determine the

13

permissible scope of such discovery as no formal discovery requests and objections thereto have been made.

IT IS SO ORDERED.

#    #    #

14