## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
-------------------------------------------------x
                                    :
In re                               :          Chapter 9
                                    :
CITY OF DETROIT, MICHIGAN,          :          Case No. 13-53846
                                    :
                    Debtor.         :          Hon. Steven W. Rhodes
                                    :
                                    :
-------------------------------------------------x
```

## REPLY IN SUPPORT OF MOTION OF DEBTOR FOR
## ENTRY OF AN ORDER VACATING THE APPOINTMENT
## OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS

The City of Detroit, Michigan (the "City") hereby files this reply in

support of the Motion of Debtor for Entry of an Order Vacating the Appointment

of Official Committee of Unsecured Creditors (Docket No. 2626) (the "Motion")[1]

and respectfully represents as follows:

### Preliminary Statement

1.      Objections to the Motion were filed by two parties:

(a) the Creditors' Committee (Docket No. 2687) (the "Committee Objection") and

(b) the U.S. Trustee (Docket No. 2688) (the "U.S. Trustee Objection" and, together

with the Committee Objection, the "Objections").  In their Objections, both

---

[1]     Capitalized terms not otherwise defined herein have the meanings given to
        them in the Motion.

the Creditors' Committee and the U.S. Trustee (together, the "Objecting Parties")
attempt to apply statutory construction principles to different provisions of
the Bankruptcy Code to reach the results they desire.  In doing so, each Objecting
Party takes internally inconsistent or even conflicting views of how to read the
statute to achieve the desired outcome and defeat the Motion.  This results-driven
approach does not withstand scrutiny.

2.      As described in detail below, (a) section 1102(a)(1) of the
Bankruptcy Code does not mandate the appointment of a committee of unsecured
creditors in a chapter 9 case because that requirement expressly applies only in
chapter 11 cases; (b) the Court has the authority to vacate the appointment of a
creditors' committee where the circumstances warrant pursuant to section 105(d) of
the Bankruptcy Code, and the use of section 105(d) for that purpose does not
violate any other provision of the Bankruptcy Code because the statute is silent as
to the power to disband committees; and (c) the circumstances here warrant the
disbandment of the Creditors' Committee.

3.      All of the major unsecured creditor constituencies in the City's
chapter 9 case already are represented by competent counsel — in many cases with
their own investment bankers and/or financial advisors — and are actively
involved in the day-to-day activities of the case.  These parties represent the vast
majority of the City's secured and unsecured debt and (a) have been present at and

participated in virtually all hearings before the Court; (b) have been involved in all of the major litigation in the case, including the eligibility litigation and the litigation regarding the settlement of the City's interest rate swap obligations and related postpetition financing, among others; and (c) have participated in restructuring discussions in many cases since before the bankruptcy was even filed. Each member of the Creditors' Committee already has its own counsel to advocate its individual interests — and has done so in this case — and four of the five Creditors' Committee members already are regular and active participants in court-ordered mediation sessions.

4.     The first major hurdle of this case (eligibility) has been cleared, and the City's plan of adjustment (the remaining major hurdle) will be filed in the coming days.  Under the circumstances, there simply is no need for a new committee at this point in the City's chapter 9 case.  There likewise is no justification for the costs that the City will be required to incur addressing or responding to the activities of such a committee.

5.     Accordingly, for the reasons set forth herein and in the Motion, the City respectfully requests that the Court overrule the Objections and grant the Motion.

## Reply

### *Section 1102(a)(1) Does Not Mandate the Appointment of a Committee in a Chapter 9 Case*

6.      The U.S. Trustee argues that because section 1102 of the Bankruptcy Code is incorporated in its entirety into chapter 9 pursuant to section 901(a), the U.S. Trustee was *required* to appoint the Creditors' Committee pursuant to section 1102(a)(1) just as it would in chapter 11 cases.  In particular, section 1102(a)(1) provides:

> Except as provided in paragraph (3), as soon as practicable ***after the order for relief under chapter 11 of this title***, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States Trustee deemed appropriate.

11 U.S.C. § 1102(a)(1) (emphasis added).  To achieve its desired result, the U.S. Trustee reads the highlighted reference to "chapter 11" out of this provision entirely.

7.      Although it is true that ***all*** of section 1102 is incorporated into chapter 9 through section 901(a) of the Bankruptcy Code, it is also true that the Congress incorporated section 1102 unchanged — subject to all of its terms, conditions and limitations.  The City sees no basis to change the words of subsection (a)(1) to better accommodate how one party thinks chapter 9 should work.  If Congress wished to modify the terms of this provision, it could have done

so, or drafted a new provision for inclusion in chapter 9, but it did neither of those things.  The chapter 11 limitation included in section 1102(a)(1) must be respected.  See Chapman v. Higbee Co., 319 F.3d 825, 829 (6th Cir. 2003) ("In all cases of statutory construction, the starting point is the language employed by Congress.  Moreover, where 'the statute's language is plain, the sole function of the courts is to enforce it according to its terms.'") (internal citations and quotation marks omitted).

8.      By its terms, section 1102(a)(1) has both mandatory and discretionary aspects:  the U.S. Trustee *shall* appoint a committee of creditors holding unsecured claims (mandatory) and the U.S. Trustee *may* appoint additional committees of creditors or equity security holders (discretionary).  The application of the phrase "as soon as practicable after the order for relief under chapter 11 of this title" could be read to modify just the mandatory appointment language that immediately follows it, or to apply to the rest of the section as well.  In the latter case, the limiting language "after the order for relief under chapter 11 of this title" would apply to *both* the mandatory and the discretionary aspects of section 1102(a)(1).

9.      This reading of the statute would treat both mandatory and discretionary authorization as a subset of what may be done after the entry of an order for relief under chapter 11, as such:

Except as provided in paragraph (3), as soon as practicable ***after the order for relief under chapter 11 of this title***, the United States trustee ***[(i)]*** shall appoint a committee of creditors holding unsecured claims and ***[(ii)]*** may appoint additional committees of creditors or of equity security holders as the United States Trustee deemed appropriate.

10.     Reading the statute this way, the U.S. Trustee would have no authority (mandatory or discretionary) to appoint an unsecured creditors' committee in a chapter 9 case because the authorizing language on its face applies only to chapter 11 cases.  If that analysis prevails, the appointment of the Creditors' Committee should be vacated as beyond the power of the U.S. Trustee, and the inquiry stops there.[2]  Although the City had not advocated this position in the Motion, the Court should give this interpretation serious consideration.

11.     Another way to read the statute is that the phrase "as soon as practicable after the order for relief under chapter 11 of this title" applies only to the mandatory aspect of section 1102(a)(1) that immediately follows those words in the statute.  Under this reading, the U.S. Trustee is required to appoint an unsecured creditors' committee in a chapter 11 case as soon as practicable after the order for relief, but (absent some other prohibition) the U.S. Trustee is permitted to

---

[2]     Under that approach, the U.S. Trustee still would be involved in appointing committees ordered by the Court under section 1102(a)(2) of the Bankruptcy Code, but could not appoint committees otherwise.

appoint other committees in chapter 11 or chapter 9 cases as and when the U.S.

Trustee deems appropriate.

12.     In this less restrictive interpretation of section 1102(a)(1),

the statutory provision can be read as having two separate parts granting separate

authority.  The insertion of the highlighted language below helps demonstrate how

the two halves of this section can be demarcated:

> Except as provided in paragraph (3), as soon as
> practicable after the order for relief under chapter 11 of
> this title, the United States trustee shall appoint a
> committee of creditors holding unsecured claims and *[in
> addition the United States trustee]* may appoint
> additional committees of creditors or of equity security
> holders as the United States Trustee deemed appropriate.

Note that these additional words do not actually have to be inserted into the statute

to make this reading of the provision work.

13.     Using this approach to the statute, the mandatory appointment

of a creditors' committee would not apply in chapter 9 because it is tied to the entry

of an order for relief under chapter 11, but the discretionary ability of the U.S.

Trustee to appoint a committee would apply.[3]  In that case, the U.S. Trustee would

---

[3]     There is some logic to this result.  It makes sense in a chapter 11 case to
appoint a creditor representative promptly after the entry of the order for
relief, which occurs at the outset of a case.  In chapter 9, there is no statutory
timing for the entry of an order for relief.  As a result, the order for relief
may not be entered until the middle or closer to the end of the case, perhaps
even at or in conjunction with the confirmation of a plan of adjustment.  See,
e.g., In re City of San Bernardino, Ca., No. 12-28006 (Bankr. C.D. Cal.)

have discretionary authority to appoint a committee of designated unsecured creditors in chapter 9, but such an appointment would not be required.[4]  The second half of section 1102(a)(1) would still give it meaning and application in a chapter 9 case.  The City believes that this reading of section 1102(a)(1) — which was adopted in the Motion — is the most favorable interpretation of this provision to the U.S. Trustee.

14.     Under either of the approaches described above, there is no basis to argue that the U.S. Trustee is **_required_** to appoint a creditors' committee in chapter 9 cases.  Nevertheless, as noted, the U.S. Trustee advocates for an even broader reading of section 1102(a)(1).  But the only way to reach the result

---
(continued…)

      (chapter 9 petition filed on August 1, 2012; order for relief entered on September 17, 2013).  To require the U.S. Trustee to appoint a creditor representative in every chapter 9 case, at whatever point the order for relief is entered, makes little sense.

[4]    The discretionary aspect of section 1102(a)(1) provides that the U.S. Trustee may "appoint **_additional committees_** of creditors or of equity security holders."  11 U.S.C. § 1102(a)(1) (emphasis added).  The U.S. Trustee describes this portion of the statute to allow it to "appoint other committees." U.S. Trustee Objection at p. 8.  To the extent that the U.S. Trustee argues that its discretionary authority extends only to the appointment of committees of certain specified creditors and not to a so-called "general unsecured creditors' committee," that would further support disbandment of the Creditors' Committee.  Because the statute does not mandate the appointment of an unsecured creditors' committee in chapter 9 (as discussed above) and _if_ the U.S. Trustee's discretionary authority is limited to the appointment of "other committees," then the appointment of the Creditors' Committee was beyond the power of the U.S. Trustee.

advocated by the U.S. Trustee is to read the words "under chapter 11 of this title" out of section 1102(a)(1) of the Bankruptcy Code.  The U.S. Trustee provides no legitimate basis to rewrite the statutory language to suit its purpose.  In fact, the U.S. Trustee acknowledges the statutory construction principles that require the statute to be read to give meaning to the words as written.

15.     For example, the U.S. Trustee states that section 1102(a)(3) of the Bankruptcy Code does not apply in chapter 9 because that section expressly applies only to small business debtor cases.  See U.S. Trustee Objection at p. 5, n.5 ("Congress incorporated [sections 1102(a)(3) and 1102(b)(2) into chapter 9] anyway, rather than incorporating piecemeal those portions of section 1102 it thought applicable and excluding those it did not.").  Even though all of section 1102 is incorporated into chapter 9, the U.S. Trustee argues that based on its express terms, subsection 1102(a)(3) cannot apply.  Using that same reasoning when reading subsection 1102(a)(1), then the part of that provision that is modified by the phrase "after the order for relief under chapter 11 of this title" also cannot apply in chapter 9.

16.     Thus, the statutory *requirement* for the U.S. Trustee to appoint an official committee of unsecured creditors exists only in chapter 11 cases, and the U.S. Trustee's appointment of such a committee in chapter 9 —  if permitted at all under section 1102(a)(1) — is wholly discretionary.

***The Court Has the Authority to Disband the Creditors' Committee***

17.     Regardless of whether the appointment of the Creditors'
Committee was mandatory or discretionary, this Court has the authority to disband
the Creditors' Committee.  This power is particularly relevant with respect to a
discretionary appointment.  Where the U.S. Trustee's appointment is discretionary,
there should be a mechanism to seek judicial review and oversight where that
discretion was not exercised in the best interests of the debtor or the bankruptcy
case.  Even if the U.S. Trustee's discretion is broad and should be respected, it
should not be sacrosanct.  See Bowen v. Mich. Academy of Family Physicians,
476 U.S. 667, 670 (1986) (noting "the strong presumption that Congress intends
judicial review of administrative action"); In re Plabell Rubber Prods., 140 B.R.
179, 180-81 (Bankr. N.D. Ohio 1992) (finding that section 105 of the Bankruptcy
Code "may be invoked to assure that the United States trustee does not act
arbitrarily and capriciously in performing his administrative tasks" and that,
otherwise, "there would be no forum to which a party could resort if it disagreed
with the United States trustee's appointment").  Review of the U.S. Trustee's
discretion is particularly appropriate here because the U.S. Trustee appears to have
appointed a committee simply because it believed that it was required to do so
under its flawed reading of section 1102(a)(1).  The U.S. Trustee simply applied

CLI-2186319v6

the chapter 11 process of appointing the committee to chapter 9 because the Court entered an order for relief.

18.     Despite the lack of any articulated justification for appointing a creditors' committee at this point in the chapter 9 case,[5] the U.S. Trustee appears to argue that the bankruptcy courts' *only* powers with respect to committees appointed pursuant to section 1102 are those expressly set forth in the Bankruptcy Code.  On this point, the U.S. Trustee cites two canons of statutory construction:  (a) through the words of a statute, the legislature says what it means and means what it says; and (b) *expressio unius est exclusio alterius* (the express mention of one thing excludes all others).  See U.S. Trustee Objection at pp. 6-7.

19.     Courts have not applied these concepts in the strict manner suggested by the U.S. Trustee.  In fact, one of the cases cited by the U.S. Trustee makes clear that the maxim *expressio unius est exclusio alterius* does *not* automatically bar certain actions simply because such actions are not specifically

---

[5]     If the U.S. Trustee thought that appointment of a committee of unsecured creditors in the City's chapter 9 case was important, it could have sought to exercise its discretionary authority to appoint such a committee at the outset of the case.  The U.S. Trustee did not do that, even though this is a case where the City and the Court have expressed an intention to move expeditiously.  Instead, the U.S. Trustee appointed a Creditors' Committee six months into the case after significant restructuring activities were well underway, and populated the Creditors' Committee with parties already actively involved in the case.  The U.S. Trustee has not justified the need for such a committee now, and merely seeks to fulfill what it sees as a statutory requirement under its flawed reading of section 1102(a)(1).

enumerated in the statute.  See In re Brookover, 352 F.3d 1083, 1088

(6th Cir. 2003) (finding flawed the bankruptcy court's reasoning "that, because

acceptance of trustee resignations is not one of the [U.S. Trustee]'s enumerated

duties under 28 U.S.C. § 586, the [U.S. Trustee] is barred from such a function

under the maxim *expressio unius est exclusio alterius*").  Moreover, the bankruptcy

court is specifically granted broad equitable power pursuant to section 105 of the

Bankruptcy Code to take actions that are not specifically enumerated in the

Bankruptcy Code, subject to certain limitations.

20.     The reality is that the Bankruptcy Code is silent with respect to

the bankruptcy court's authority to enter an order vacating the appointment of a

committee of unsecured creditors.  The Bankruptcy Code does not specifically

prohibit the bankruptcy court from disbanding the Creditors' Committee, and

neither the Creditors' Committee nor the U.S. Trustee has cited to a single case that

holds that the bankruptcy court lacks such power.

21.     Absent guidance from the Bankruptcy Code — and particularly

given that the appointment of the Creditors' Committee was discretionary in the

first instance — it is entirely appropriate for this Court to rely on section 105 of the

Bankruptcy Code as the basis for granting the relief requested in the Motion.  See

In re Pacific Avenue, 467 B.R. 868 (Bankr. W.D.N.C. 2012); see also In re JNL

Funding Corp., 438 B.R. 356, 361 (Bankr. E.D.N.Y. 2010) (lender moved to

disband creditors' committee on grounds that no member of the committee held an allowable claim against the debtor; in finding that the United States Trustee did not err in appointing the committee members and, therefore, denying the motion to disband, the court stated that its "role in the committee formation process is expressly limited," but that, "[n]otably, … Section 1102 is silent as to this Court having power to order a committee to be disbanded, rather than reconstituted to ensure adequate representation").

22.     Contrary to the assertions of the Creditors' Committee and the U.S. Trustee, reliance on section 105(d) of the Bankruptcy Code to vacate the appointment of the Creditors' Committee is not inconsistent with any other provision of the Bankruptcy Code.  There can be no inconsistency with section 1102(a)(3), which authorizes the court to enter an order disallowing the appointment of a committee in a small business debtor case, because that provision applies only to small business debtors and not to the City.  Entry of an order disbanding the Creditors' Committee also would not violate section 1102(a)(4), which authorizes the Court to order the U.S. Trustee to change the membership of a committee.  As noted by the JNL Funding court, section 1102's specific grants of authority do not speak to the issue of the Court's authority to disband a committee. See 438 B.R. at 361.

23.     The U.S. Trustee argues further that the authority to disband a committee rests with the U.S. Trustee, as the party with the authority to appoint a committee.  See U.S. Trustee Objection at pp. 7-8.  The City does not argue that the U.S. Trustee lacks the power to disband the Creditors' Committee.  It has that power.  Rather, the City argues — and has shown — that the bankruptcy court also has the power to disband the Creditors' Committee.  The U.S. Trustee has cited no authority that provides that the U.S. Trustee possesses the *exclusive* authority to disband the Creditors' Committee.  Moreover, the cases cited by the U.S. Trustee for this proposition are distinguishable.  The Brookover case dealt specifically with the authority of the U.S. Trustee to accept the resignation of a standing chapter 12 trustee that was appointed pursuant to 28 U.S.C. § 586(b), which addresses appointments to office subject to oversight of the United States Attorney General and not to the implementation of the Bankruptcy Code.  The issue in Carlucci v. Doe, 448 U.S. 93 (1988), was whether certain statutory provisions were the exclusive means by which the National Security Agency (the "NSA") could terminate employees, or whether the National Security Agency Act of 1959, which expressly conferred only the power appoint, also provided the NSA with the authority to terminate (the court found that it did).  These cases have little relevance to the situation at hand.  As such, the U.S. Trustee has failed to

demonstrate that this Court lacks the equitable power to review the U.S. Trustee's appointment of the Creditors' Committee.

***Disbandment of the Creditors' Committee is Appropriate Under <u>Pacific Avenue</u>***

24.     In support of the Motion, the City cited the <u>Pacific Avenue</u> case as a precedent for the relief requested.  As a threshold matter, both the U.S. Trustee and the Creditors' Committee argue that <u>Pacific Avenue</u> was wrongly decided.  However, as noted above, neither Objecting Party cites a single case finding that the bankruptcy court lacks the authority to disband a creditors' committee.

25.     The U.S. Trustee also attempts to distinguish <u>Pacific Avenue</u> on the grounds that it was decided in a jurisdiction where the United States Trustee program does not operate.  The U.S. Trustee argues that, in North Carolina, the bankruptcy court appoints committees so the bankruptcy court has the authority to disband committees, whereas in this jurisdiction, the U.S. Trustee appoints committees and, therefore, the U.S. Trustee has the sole authority to disband committees.  As noted, the U.S. Trustee cites no authority for its conclusion that it has the sole authority to disband a committee.  Moreover, the court in <u>Pacific Avenue</u> did not rely on its authority to appoint a committee as the basis for it authority to disband a committee.  Instead, the court relied on section 105(d) of the Bankruptcy Code, as the Court should do so here.  For the reasons set forth below

and in the Motion, disbandment of the Creditors' Committee is appropriate under the circumstances.

26. <u>Necessity</u>. Contrary to the arguments of the Creditors' Committee, the Creditors' Committee is not necessary to protect the interests of unsecured creditors in this case. The Creditors' Committee focuses a significant portion of its Objection on a footnote in the City's Motion that merely suggests that the members of the Creditors' Committee are perhaps not the best positioned to act as a fiduciary for all unsecured creditors if the Creditors' Committee is not disbanded. <u>See</u> Committee Objection at ¶ 12. Arguing that an "individual [committee] member's participation in the case on their own behalf has no bearing on whether an unsecured creditors' committee is necessary," the Creditors' Committee misses the point. The issue is not simply whether the composition of the Creditors' Committee is appropriate, but whether a committee is necessary to protect the interests of unsecured creditors in the first instance.

27. Aside from listing the statutory powers and duties of committees, the Creditors' Committee does little to demonstrate why a committee is necessary in this particular case. As set forth in the Motion, unsecured creditors of the City — as a whole — already are well-represented in the City's chapter 9 case. The members of the Creditors' Committee are actively involved in the City's case on a day-to day basis; employees of the City are represented by numerous

unions that have been active in the case; retired City employees (the largest group of potentially unrepresented unsecured creditors) are represented by the Retiree Committee, and also benefit from the active participation of unions and retiree associations; and representatives of unsecured bonds and the pension Certificates of Participation have been active participants in this case. All of these parties are represented by competent counsel. Trade creditors either have been or will be paid or are business enterprises that can represent themselves in the chapter 9 case, including through counsel, and plaintiffs in pending litigation are represented by counsel and are able to participate and actually have participated in this case.

28. The fact that sections 1102 and 1103 the Bankruptcy Code establish powers and duties of creditors' committees, as discussed in the Committee Objection, is irrelevant to the question of whether a committee is *necessary* to protect the interests of creditors in the first instance. There is no question that a creditors' committee, when necessary, operates "to safeguard the treatment of unsecured creditors." Committee Objection at ¶ 15. In the City's chapter 9 case, no creditors' committee is needed because the treatment of unsecured creditors already is safeguarded by the involvement of numerous and varied unsecured creditor constituencies actively involved in this case. Similarly, the plan of adjustment — which will be filed in the coming days — will be subject to all of the noticing, voting and creditor review that is part of the confirmation

process incorporated into the Bankruptcy Code.  The City is confident that the

Court will adopt a confirmation process that provides all creditors with appropriate

due process and a voice in connection with the approval of a plan of adjustment.

29.     <u>Administrative Burden</u>.  The Creditors' Committee makes

almost no attempt to justify the administrative expense of the Creditors' Committee

— noting only that the expense is justified based on its "fiduciary duties described

above."  Committee Objection at ¶ 17.  Instead, the Creditors' Committee makes a

tortured statutory argument that the City is required to pay its professional fees.

The argument that the City must pay the professional fees of the Creditors'

Committee is incorrect and wholly unsupported.  But if it were true that the City

could be compelled to pay the City's professional fees, that fact would demonstrate

an additional burden placed on the City and would further support disbanding the

Creditors' Committee.

30.     The Creditors' Committee first argues that the City is required

to pay its professional fees and costs based on the following convoluted statutory

interpretation:  (a) section 943(b)(5) of the Bankruptcy Code requires that a plan of

adjustment provide "that on the effective date of the plan each holder of a claim of

a kind specified in section 507(a)(2) of this title receive on account of such claim

cash equal to the allowed amount of such claim;" (b) section 507(a)(2), in turn,

gives second priority to "administrative expenses allowed under section 503(b) of

this title...;" (c) section 503(b)(2) then provides that compensation awarded under

section 330(a) is an administrative expense; (d) section 330(a) — which the

Creditors' Committee acknowledges is not incorporated into chapter 9 — states

that reasonable compensation may be awarded to a "professional person employed

under section … 1103;" (e) section 1103 is incorporated into chapter 9 via

section 901(a); and (f) somehow because section 1103 is incorporated into

chapter 9 and is mentioned in section 330, then section 330 should be treated as if

it were incorporated into chapter 9 even though it is not listed in section 901(a).

As set forth below, this tortured parsing of the Bankruptcy Code is untenable and

unsupported.  In fact, it is even contrary to the principles of statutory construction

advocated by the Creditors' Committee itself.[6]

---

[6]    For example, the Creditors' Committee takes an opposing approach with
respect to sections 1103 and 1104 of the Bankruptcy Code.  The Committee
Objection quotes section 1103(c) of the Bankruptcy Code, which includes in
subsection (c)(4) a provision that a committee appointed under section 1102
may "request the appointment of a trustee or examiner under section 1104 of
this title."  See Committee Objection at ¶ 13.  Then, in a footnote, the
Creditors' Committee "recognizes that section 1103(c)(4) does not apply in
the City's chapter 9 case because section 901 does not incorporate
section 1104 into chapter 9."  At the same time, the Creditors' Committee
somehow argues with respect to section 330 that it can be implicitly
incorporated into chapter 9, even though clearly not included by Congress in
section 901(a), simply because section 1103 is referenced in section 330.
Under this same logic, because section 1103 of the Bankruptcy Code applies
in chapter 9, so would section 1104 because it is referenced therein.
Although the Creditors' Committee is correct that section 1104 does not
apply in chapter 9, it cannot be permitted to apply different statutory
construction principles to different provisions of the statute (such as

31.     Section 330 simply does not apply in chapter 9.  Under basic principles of statutory construction espoused by both the Creditors' Committee and the U.S. Trustee, it is clear that had Congress wanted to incorporate section 330 of the Bankruptcy Code into chapter 9, it would have done so via section 901(a) of the Bankruptcy Code.  <u>See</u> Committee Objection at ¶ 24 ("Congress knew how to limit the inclusion of specific statutory sections when it drafted section 901."); U.S. Trustee Objection at p. 4 ("[I]n section 901(a), Congress precisely selected the sections and sub-sections that would be incorporated in chapter 9 and those that would not…. If Congress intended to exclude [a certain subsection,] surely it would have done so in section 901 itself, as it did with every other section of the Code where it did not incorporate particular sub-sections.").

32.     There is no doubt that section 330 is not listed in section 901(a) of the Bankruptcy Code.  Congress did not incorporate section 330 into chapter 9, and the Creditors' Committee has no rational basis to rewrite the Bankruptcy Code to serve its purposes.  Only Congress can do that.  <u>See Palmer v. United States (In re Palmer)</u>, 219 F.3d 580, 586 (6th Cir. 2000) ("[O]ur own cases have expressed an extreme reluctance to amend the Bankruptcy Code from the bench. Rather, our

_____

(continued…)

    section 330) simply to reach the result it desires.  The Creditors' Committee's interpretation of the Bankruptcy Code is illogical and unsupportable and appears to be guided only by what it would like the result to be.

cases demonstrate that we will read the Bankruptcy Code 'in a 'straightforward' manner,' … and apply the plain meaning of the Code wherever possible"; stating further that "[i]t is not the Court's role to address perceived inadequacies in [a statute]. What the petitioner asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function.").

33. In support of its argument that section 330 applies in chapter 9 notwithstanding its exclusion from section 901(a), the Creditors' Committee relies on what appear to be the only two cases to have so held — In re Castle Pines North Metropolitan District[7] and an unreported order from the In re Pauls Valley Hospital Authority[8] case. The majority of cases and the leading bankruptcy treatise, however, have reached the opposite conclusion. See In re City of Prichard, Alabama, No. 09-15000 (Bankr. S.D. Ala.) (Docket No. 98) (denying request of unsecured creditors' committee that court require chapter 9 debtor to pay committee counsel's fees and expenses), appeal denied Official Comm. of Unsecured Creditors v. City of Prichard, Ala. (In re City of Prichard, Ala.), No. 10-00012, 2010 WL 2383984 (S.D. Ala. June 9, 2010); In re Cnty. of Orange,

---

[7]   129 B.R. 233 (Bankr. D. Colo. 1991).

[8]   No. 13-10791 (Bankr. W.D. Okla. July 18, 2013).

241 B.R. 212, 216 (Bankr. C.D. Cal. 1999) ("Section 901 lists a number of sections which apply to chapter 9 cases, including several sections in chapter 3, but § 330 from chapter 3 is not among them. Because the statute excludes § 330 from the list of statutes applicable to chapter 9 cases, it does not apply here."); In re East Shoshone Hosp. Dist., 226 B.R. 430, 431 (Bankr. D. Idaho 1998) (expressly disagreeing with In re Castle Pines as "parsing § 901(b) too finely in order to bring § 330 within § 901(a)"); In re Sanitary & Improvement Dist. No. 7 of Lancaster County, Neb., 96 B.R. 966 (Bankr. D. Neb. 1989) (finding that the court had "no power to rule upon the appropriateness of the use of bond funds for payment of administrative expenses on an interim basis. Section 901 of the Code does not incorporate Sections 327-331, which are the professional compensation statutes. Section 903 precludes this Court from exercising any control over the expenditures of a municipality. Section 904 precludes this Court from interfering with the property of debtor or the exercise of its governmental powers."); 6 Collier on Bankruptcy ¶ 901.04[13] (16th ed.) (disagreeing with the reasoning in In re Castle Pines and stating that "[a]bsent the debtor's consent, there is nothing in chapter 9 that automatically requires a debtor to pay the fees and costs of an official committee, professionals employed by the committee or professionals employed by members of an official committee. Sections 328 through 331 are not incorporated in chapter 9."). The Bankruptcy Code, thus, provides no basis on

which to require the City to pay the professional fees and costs incurred by the Creditors' Committee.[9]

34.    The Creditors' Committee next argues that the Court must give effect to section 330 of the Bankruptcy Code to give effect to section 1103.  The Creditors' Committee's argument appears to be that because a committee "must have counsel," section 330 must apply to professionals retained under section 1103.  The Creditors' Committee argues that if "Congress did not want a Committee to retain counsel it could have easily limited [the incorporation of] section 1103 [via section 901(a)] to subsection (c)."  Committee Objection at ¶ 24.  Then, in the next breath, the Creditors' Committee argues — without citation to any authority — that Congress "excluded section 330 from section 901, not as an exclusion of payment for a committee's professionals, but rather as a recognition that Congress did not intend to include other fiduciaries in chapter 9."  Id. at ¶ 26.  According to the Creditors' Committee, "[b]y including only section 1103 in section 901, section 330 is only applicable to professionals retained under section 1103, as opposed to the other fiduciaries and their professionals enumerated in section 330."  Id. at ¶ 27.  The Creditors' Committee has cited no

---

[9]    See also 11 U.S.C. § 904 ("Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with—(1) any of the political or governmental powers of the debtor; (2) any of the property or revenues of the debtor; or (3) the debtor's use or enjoyment of any income-producing property.").

authority whatsoever for this convoluted interpretation of the statute, and once again advocates principles of statutory construction that are directly contrary to those advocated by the Creditors' Committee elsewhere.

35.     The City does not dispute that a committee appropriately formed pursuant to section 1102 of the Bankruptcy Code may retain counsel pursuant to section 1103(a).  However, the City cannot discern — and the Creditors' Committee has not presented — any logical connection between the fact that a committee *may* retain counsel and the conclusion that a chapter 9 debtor is *required* to pay for such counsel.  Section 1103(a) has two important components: it provides for a committee appointed under section 1102 to retain counsel and other advisors and it provides for the retention of those advisors to be approved by the Court.[10]  The incorporation of section 1103(a) of the Bankruptcy Code into chapter 9 for these purposes makes sense.  It is appropriate for committees to retain counsel and other advisors (as noted in the Committee Objection), and it is appropriate for the bankruptcy court to review and approve a committee's retention of these advisors to ensure that such advisors are unconflicted and are in a position to act on behalf of their client, which serves as a fiduciary for its creditor

---

[10]     "At a scheduled meeting of a committee appointed under section 1102 of this title, at which a majority of the members of such committee are present, and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee." 11 U.S.C. § 1103(a).

stakeholders. However, there is nothing to suggest that a chapter 9 debtor must, therefore, pay for such advisors. The debtor could agree to pay for these advisors (as the City did, subject to certain limitations, with respect to the Retiree Committee), the committee members could agree to pay for advisors[11] or the advisors could work on a *pro bono* basis or with the prospect of negotiating the payment of compensation in the course of the chapter 9 case. This is not the answer the Creditors' Committee would like, and it is not the chapter 11 model, but it is the approach adopted in the Bankruptcy Code for chapter 9.

36.     For all of these reasons, the City is not required to fund any professional fees or costs that might be incurred by the Creditors' Committee. Even without funding the costs of the Creditors' Committee's counsel, the appointment of the Creditors' Committee will unnecessarily increase the administrative burden on the City. The City will be required to address the actions of the Creditors' Committee, which will take additional time and resources, even though all the interests of unsecured creditors already are well represented in the chapter 9 case. And, of course, if the Creditors' Committee could achieve its stated

---

[11]     This option may be particularly appropriate in this case where the majority of the committee members are large institutions with the financial wherewithal to fund these costs. If these entities wish to have a Creditors' Committee — which they apparently do — and if the Creditors' Committee is not disbanded as requested in the Motion, these entities are free to fund the retention of counsel or other advisors, subject only to the approval of such retention by this Court.

goal of imposing its professional costs on the City, that would directly impose a significant cost and administrative burden on the City. The Creditors' Committee already has identified Morrison & Foerster LLP and Steinberg Shapiro & Clark as co-counsel (see Docket Nos. 2685, 2686), and is likely to retain financial and other advisors as well (as the Retiree Committee has), the costs of which, if imposed on the City, would be even more significant. If required to fund the Creditors' Committee's professional fees, the City would be forced to divert millions of dollars away from the provision of critical service to its residents.

       37.   <u>Counter-productivity</u>. Finally, the Creditors' Committee argues that the City *must* establish "all three (3) elements of the [Pacific Avenue] standard to satisfy its burden of proof." Committee Objection at ¶ 11. However, the court in <u>Pacific Avenue</u> expressly stated that the third element — counter-productivity — was "not essential to [the court's] determination." Thus, contrary to the arguments of the Creditors' Committee, the City is not required to demonstrate that the Creditors' Committee has been counter-productive to the process of the chapter 9 case in order for the <u>Pacific Avenue</u> standard to be satisfied and the Motion to be granted. In any event, the City continues to believe that appointment of the Creditors' Committee comprised largely of parties already participating in the court-ordered mediation process will not advance, and may well disrupt, the mediations, which further supports the relief requested in the Motion.

## Conclusion

38.     For the reasons set forth herein and in the Motion, the City requests that the Court overrule the Objections and grant the Motion.

CLI-2186319v6

Dated: February 18, 2014          Respectfully submitted,


          /s/Heather Lennox
          David G. Heiman (OH 0038271)
          Heather Lennox (OH 0059649)
          JONES DAY
          North Point
          901 Lakeside Avenue
          Cleveland, Ohio  44114
          Telephone:  (216) 586-3939
          Facsimile:  (216) 579-0212
          dgheiman@jonesday.com
          hlennox@jonesday.com

          Bruce Bennett (CA 105430)
          JONES DAY
          555 South Flower Street
          Fiftieth Floor
          Los Angeles, California 90071
          Telephone:  (213) 243-2382
          Facsimile:  (213) 243-2539
          bbennett@jonesday.com

          Robert S. Hertzberg (P30261)
          Deborah Kovsky-Apap (P68258)
          PEPPER HAMILTON LLP
          4000 Town Center, Suite 1800
          Southfield, MI 48075
          Telephone:  (248) 359-7300
          Facsimile:  (248) 359-7700
          hertzbergr@pepperlaw.com
          kovskyd@pepperlaw.com

          ATTORNEYS FOR THE CITY

## <u>CERTIFICATE OF SERVICE</u>

I, Heather Lennox, hereby certify that the foregoing Reply in Support of Motion of Debtor for Entry of an Order Vacating the Appointment of Official Committee of Unsecured Creditors was filed and served via the Court's electronic case filing and noticing system on this 18th day of February, 2014.

/s/Heather Lennox