------------------------------------------------------x
                                                :

In re                                     : Chapter 9

CITY OF DETROIT, MICHIGAN,      : Case No. 13-53846

                Debtor.        : Hon. Steven W. Rhodes

------------------------------------------------------x

**BRIEF IN OPPOSITION TO CORRECTED MOTION
OF OFFICIAL COMMITTEE OF RETIREES FOR ENTRY OF
AN ORDER ALLOWING AN ADMINISTRATIVE EXPENSE CLAIM**

By the Motion,[1] the Committee asks the Court, seven months after its appointment, to force the City to pay a total of $602,250 (the "Policy Premium") for the Committee to purchase an insurance policy (the "Policy") that would provide coverage to Committee members for errors and omissions relating to their participation on the Committee.[2] The quotation for the Policy was obtained by

---

[1]     Capitalized terms used but not defined herein have the meaning given to them in the Debtor's Objection to Corrected Motion of Official Committee of Retirees for Entry of an Order Allowing an Administrative Expense Claim, filed contemporaneously herewith.

[2]     Statements herein regarding the terms of the Policy are based upon (a) representations made by the Committee in the Motion and (b) a short quotation and advice memorandum regarding the Policy received from the Committee. Although the City has requested a copy of the Policy, to date it has not been provided. The City reserves all of its further arguments

Segal Select Insurance ("Segal Select"), an affiliate of the Committee's actuarial consultant. Segal Select stands to make a 20% commission on the Policy if the Committee's Motion is approved.

The Committee's own research demonstrates that its request is unprecedented in a case under any chapter of the Bankruptcy Code. Indeed, the only authority the Committee cites is a 1999 chapter 11 case from the District of Maryland where the court allowed an administrative expense request for errors and omissions coverage for the members of an official equity security holders committee *with the stipulated support of both the debtors and the official committee of unsecured creditors*. Even with the support of the key stakeholders, however, the bankruptcy court cautioned that its holding should be limited to the specific facts presented in that case.

The circumstances here are profoundly different from those at issue in the Maryland case. Most significantly, this is not a chapter 11 case. The constitutional protections embedded in chapter 9 preclude imposing upon the City an obligation to pay the Committee's Policy Premium — as an administrative expense or otherwise — unless the City agrees to do so. The City has not given

---

regarding the terms of the Policy until such time as the City has had an opportunity to review it.

that consent. In fact, the Committee admits that the City has expressly and repeatedly denied its requests.

The City's decision not to agree to pay the Policy Premium should be of no surprise. By the Committee's own admission, its members, who are all "representatives of, or leading figures in, the City's public-safety and municipal employee and retiree communities," have effectively represented the interests of retirees during the seven months since their appointment, and for "years of ardent advocacy" beforehand, all without City-provided insurance coverage. Moreover, this coverage is unnecessary because the members of the Committee are already sufficiently protected against claims arising from their participation on the Committee under applicable law. That likely explains why the Committee failed to locate a single example of a debtor being compelled, over its objection, to pay for the insurance coverage requested by the Committee in a case under any chapter of the Bankruptcy Code, in any jurisdiction. And, with a cost of more than $600,000 (according to the only quotation obtained by Segal Select), this proposed policy is an extraordinary and expensive proposition.

The Committee nevertheless attempts to characterize the circumstances of its members as somehow different from those of other official committees. But the membership of many official committees consists of similarly-situated individuals — including retiree committees appointed in other

chapter 9 and chapter 11 cases. In none of those cases was the payment of errors and omissions insurance coverage obtained for committee members.

In sum, the City affirmatively requested the appointment of the Committee at the outset of this case and agreed to pay its reasonable professional expenses, which cost to the City is millions of dollars per month.[3] The City has not agreed to pay the Policy Premium, however, which would be extraordinary, unnecessary and wasteful. For these reasons, as further described below, the Court should deny the Motion.

## ARGUMENT

*The Committee Cannot Force the City to Pay*
*the Policy Premium Unless the City Consents*

1. Section 503 of the Bankruptcy Code provides for the allowance of certain administrative expenses, including, among others, the "actual, necessary expenses . . . incurred by . . . a member of a committee . . . if such expenses are incurred in the performance of the duties of such committee." 11 U.S.C. § 503(b)(3)(F). Although, as the Committee observes, section 503 of the Bankruptcy Code generally applies in a chapter 9 case, its scope is severely

---

[3] According to the Fee Examiner's Quarterly Report for Months of July, August and September 2013 (Docket No. 2642), for example, the total requested fees and expenses of the Committee's various professional advisors during the month of September 2013 alone was $1,878,665.34, and preliminary amounts for October and November 2013 are similarly well in excess of $1,000,000 per month.

constrained by section 904 of the Bankruptcy Code and the Tenth Amendment of the United States Constitution.

2. Section 904 of the Bankruptcy Code provides that:

> Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with —
>
> (1) any of the political or governmental powers of the debtor;
>
> (2) any of the property or revenues of the debtor; or
>
> (3) the debtor's use or enjoyment of any income-producing property.

11 U.S.C. § 904. This provision "provid[es] a constitutional shield for chapter 9 by limiting federal intrusion upon States' rights." 6 COLLIER ON BANKRUPTCY ¶ 904.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011) ("Collier").

3. "To the extent that the court has power to issue certain orders under a specific provision of the Code incorporated into chapter 9, that authority is equally limited by [section] 904." Prime Healthcare Mgmt. v. Valley Health Sys. (In re Valley Health Sys.), 429 B.R. 692, 714 (Bankr. C.D. Cal. 2010). The limitation of section 904 of the Bankruptcy Code is absolute, except where the municipal debtor consents — either independently or in connection with a plan of adjustment, which only the municipality may propose. In re City of Stockton, Cal., 478 B.R. 8, 21 (Bankr. E.D. Cal. 2012).

4.      The impact of state sovereignty considerations and section 904 of the Bankruptcy Code on section 503(b) is significant.  It is well accepted, for example, that, since no bankruptcy estate is created of the municipality's assets, there can be no actual and necessary costs of preserving the estate under section 503(b)(1) of the Bankruptcy Code.  <u>In re New York City Off-Track Betting Corp.</u>, 434 B.R. 131, 142 (Bankr. S.D.N.Y. 2010); <u>accord</u> <u>Valley Health</u>, 426 B.R. at 714.  In addition, any effort to force the payment of compensation or expenses to the fiduciaries and other parties set forth in sections 503(b)(3) and 503(b)(4) of the Bankruptcy Court would run afoul of section 904, absent the consent of the municipality.  <u>See</u> Collier, ¶ 901.04 ("Absent the debtor's consent, there is nothing in chapter 9 that automatically requires a debtor to pay the fees and costs of an official committee, professionals employed by the committee or professionals employed by members of an official committee."); <u>see also</u> <u>In re East Shoshone Hosp. Dist.</u>, 226 B.R. 430, 433 (Bankr. D. Idaho 1998) (stating that "[c]ourt review and approval of compensation to the debtor's professionals would implicate [section] 904").  As such, the City cannot be held liable for payment of the Policy Premium unless and until it consents to pay it.

***The City Has Not Consented***
***To Pay the Policy Premium***

5.      The City has not agreed to pay the Policy Premium.  As the Committee acknowledges, at the outset of this case, the City sought the

appointment of the Committee to represent the interests of retirees in this City's chapter 9 case. Motion, at 2 ("At the City's request, the Court directed the appointment of the Committee."). The Court's order directing the appointment of the Committee (Docket No. 279) (the "<u>Appointment Order</u>") reflected the City's voluntary agreement to pay the "reasonable professional expenses" of the Committee. Appointment Order, at ¶ 5. The Committee offers no other basis for the City's consent.

6. The Policy Premium is not a reasonable professional expense. It is an extraordinary non-professional expense, and the Committee's attempt to compel the City to pay it is unprecedented. The members of the Committee already receive several layers of protection under applicable law. First, they are afforded qualified immunity for any actions taken in connection with their function. As the United States District Court for the Eastern District of Michigan has explained:

> [Section] 1103(c) gives rise to an implicit grant of limited immunity. The qualified immunity corresponds to, and is intended to further, the Committee's statutory duties and powers. Such immunity applies to conduct within the scope of the authority conferred to the committee either by statute or the bankruptcy court. To overcome this immunity, the party alleging breach of fiduciary duty must prove that the committee engaged in willful misconduct or *ultra vires* activity.

<u>In re Dow Corning Corp.</u>, 255 B.R. 445, 485 (E.D. Mich. 2000); <u>accord</u> <u>Bank of New York Trust Company v. Official Unsecured Creditors Committee (In re</u>

Pacific Lumber Co.), 584 F.3d 229, 253 (5th Cir. 2009); In re PWS Holding Corp., 228 F.3d 224, 246 (3d Cir. 2000); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992); In re Tucker Freight Lines, Inc., 62 B.R. 213, 216 (Bankr. W.D. Mich. 1986). In the Motion, the Committee makes no reference to the qualified immunity its members receive, yet its proposed order seeks to preserve it. See Motion, Ex. 1, at ¶ 3 ("Nothing herein shall diminish the qualified immunity under applicable law of the Committee or any Committee Member, or any of their respective agents, advisors or counsel.").

7. Supplementing the qualified immunity granted to members of the Committee under the Bankruptcy Code, in chapter 9 — just as in chapter 11 — it is commonplace for municipal debtors to include certain exculpation provisions and injunctions in any plan of adjustment that would further protect the interests of Committee members.[4] The Committee seeks errors and omissions insurance coverage *whether or not* a plan is confirmed in this case (Motion, at ¶ 26).

---

[4] In the following recent chapter 9 cases, for example, the debtor's proposed and/or confirmed plans of adjustment have contained releases, exculpation provisions and/or injunctions protecting various parties — including official retiree and other committees — against claims arising in connection with the case: Chapter 9 Case Chapter 9 Plan of Adjustment for Jefferson County, Alabama (dated November 6, 2013), at §§ 5.1, 6.2 and 6.3, In re Jefferson Cnty., Alabama, No. 11-05736 (Bankr. N.D. Ala. Nov. 6, 2013) (provisions exculpating, releasing and enjoining claims against various parties related to the debtor); Plan for the Adjustment of Debts of City of Stockton, California (October 10, 2013), at § XIV.A., In re City of Stockton, Cal., No. 12-32118

8. The inappropriateness of the Committee's request is further demonstrated by the fact that it is unprecedented. According to the Committee's own research, no debtor under any chapter of the Bankruptcy Code ever has been compelled to pay for errors and omissions insurance coverage for the members of an official committee over its objection. The Committee is able to cite to only one case, McDow v. Official Comm. of Equity Sec. Holders of Criimi Mae Inc. (In re Criimi Mae Inc.), 247 B.R. 146 (D. Md. 1999), where a court allowed the costs of insurance coverage for the members of an official committee as an administrative expense. Motion, at ¶¶ 15-21. McDow, however, is entirely inapposite.

9. In McDow — a 1999 chapter 11 case from the District of Maryland — the court affirmed the allowance of a $90,000 administrative expense to pay the premium on a two-year errors and omissions insurance policy for the members of the official committee of equity security holders appointed in the case. McDow, 247 B.R. at 153. Shortly after the appointment of the committee in that case, three of its seven members — including the chairperson — resigned out of concern that they would be sued in connection with their activities in the case. Id.

---

(Bankr. E.D. Cal. Oct. 10, 2013) (provision releasing and discharging official retiree committee of and from, among other things, all obligations relating to and arising from and in connection with the debtor's chapter 9 case); Second Amended Plan for the Adjustment of Debts of the City of Vallejo, California, as Modified August 2, 2011, at § XII.A., In re City of Vallejo, Cal., No. 08-26813 (Bankr. E.D. Cal. Aug. 2, 2011) (same).

at 148.  In declarations to the bankruptcy court, two of the remaining four members threatened to resign if insurance coverage was not forthcoming.  Id. at 149.

10. The equity committee, therefore, requested allowance of the policy premium as an administrative expense.  Id. at 148.  *The debtors and the official committee of unsecured creditors appointed in the case both supported the equity committee's motion, and the parties entered into a stipulation to that effect.*  Id. at 149.  The Office of the United States Trustee was the only party to object to the committee's motion, but it failed to present any evidence controverting the evidence presented by the movant.  Id. at 152.  Consequently, the bankruptcy court granted the motion — with the pointed caveat that it was not announcing any "broad principle of law regarding the reimbursement of insurance premiums under section 503(b)(3)(F) [of the Bankruptcy Code]" — and the district court affirmed.  Id. at 152-3.

11. In contrast, this is a chapter 9 case and the City has not consented to, and does not support, the Committee's request.  The Committee seeks coverage extending potentially for up to eight years at a total cost to the City of more than $600,000.[5]  When the United States Trustee appointed the Committee on August 22, 2013, each member had agreed to serve without condition.

---

[5] The total requested Policy Premium of $602,250 consists of the insurance premium and related fees of $352,250 plus a retention of $250,000.

No Committee members have resigned since their appointment almost seven months ago, and neither of the members submitting declarations have threatened to resign if the Motion is not granted.[6] Moreover, the Committee has not shown that the United States Trustee could not replace the members, even if they did resign.

12. The Committee admits that it has been operating effectively since its appointment without the requested insurance coverage. In the Motion, the Committee describes what it considers to be its various achievements during the seven months since its appointment. Motion, at ¶ 24. These achievements have included helping to "streamline negotiations, crystallize important practical and legal issues, and earn key concessions." Id. The Committee cites as examples (a) agreements it has negotiated with the City regarding healthcare benefits and (b) its zealous participation in the mediation process. Id. Clearly, the absence of errors and omissions coverage has not impaired the Committee's ability to act.

13. Moreover, the Committee emphasizes that its members, who are characterized as "representatives of, or leading figures in, the City's public-safety and municipal employee and retiree communities," evidently have performed "years of . . . ardent advocacy on behalf of the City's employees and retiree communities." Motion, at ¶ 28. Having performed these functions for

---

[6] In fact, neither of the declarants states that she personally requested that errors and omissions coverage be obtained. See Motion, Exs. B, C.

many years without receiving insurance coverage from the City — and especially in light of the bankruptcy protections already provided to the members of the Committee — the City cannot agree that the expensive additional protection now being requested by the Committee is reasonable.

14. The fact that the Policy Premium is an unreasonable expense of the Committee is confirmed by (a) the lack of market for this type of coverage, (b) the difficulty experienced by the Committee in obtaining a quotation for such coverage and (c) the extraordinary cost of the coverage when a quotation ultimately was obtained through an affiliate of a Committee advisor. The refusal of many insurers even to provide a quotation for the contemplated coverage is not, as the Committee suggests, proof that members of the Committee face a risk that should be insured against as part of their reasonable expenses. See Motion, at ¶ 14. To the contrary, it demonstrates that this specialty insurance product is unprecedented and far from the type of reasonable expense that the City agreed to pay.

15. For all of the foregoing reasons, payment of the Policy Premium is not a reasonable expense of the Committee. As a result, the City has not consented to — and, by the Committee's own admission, has affirmatively denied — payment of the Policy Premium. Under section 904 of the Bankruptcy

Code and the constitutional considerations it reflects, therefore, the Motion cannot be granted.

### *The Policy Premium Is Not an Actual, Necessary Expense of the Committee Members*

16. The Committee is not entitled to allowance of the Policy Premium as an administrative expense under section 503(b)(3)(F) of the Bankruptcy Code because it is not an actual expense of any Committee member, even if the City could somehow be deemed to have consented to the liability. Section 503(b)(3)(F) of the Bankruptcy Code provides for the allowance as an administrative expense of the "actual, necessary expenses . . . incurred by . . . a member of a committee . . . if such expenses are incurred in the performance of the duties of such committee." 11 U.S.C. § 503(b)(3)(F).[7]

17. "[Section] 503(b)(3)(F) was enacted to permit committee members to receive court-approved reimbursement of their actual and necessary out-of-pocket expenses." In re County of Orange, 179 B.R. 195, 201 (Bankr. C.D. Cal. 1995). As a result, "[t]he expenses falling within the scope of section 503(b)(3)(F) will most often consist of travel expenses for committee

---

[7] The Committee carefully omits the word "member" entirely from its headline quotation of section 503(b)(3)(F) of the Bankruptcy Code. Motion, at § A ("Section 503(b)(3)(F) of the Bankruptcy Code Grants Administrative Expense Priority to 'Actual, Necessary Expenses' 'Incurred' by Committees Appointed Under Section 1102 of the Bankruptcy Code 'in the Performance of the Duties of Such Committee.'").

ATI-2594343v6
-13-
13-53846-tjt   Doc 2706   Filed 02/20/14   Entered 02/20/14 17:37:39   Page 13 of 19

members to attend meetings. Reimbursement for telephone charges, postage, messenger services and the like could also be sought." Collier, ¶ 503.10; see also Motion, at ¶ 18 (citing In re Summit Metals, Inc., 379 B.R. 40 (Bankr. D. Del. 2007), a case involving the reimbursement of a committee member's travel expenses under section 503(b)(3)(F)).

18. The Policy Premium is not an out-of-pocket expense of a member of the Committee. Rather, as discussed above, it is an extraordinary and unprecedented expense of the Committee as a whole. The mere fact that the members of the Committee would receive coverage under the Policy does not transform the Policy Premium from an expense of the Committee, as a distinct entity, into an expense of any or all of its members. Consequently, section 503(b)(3)(F) provides no basis for the Committee's request because the Policy Premium is not an actual expense of any Committee member.

19. The Policy Premium also is not a necessary expense, a conclusion that must follow from the fact that, for all of the reasons set forth above, it is not reasonable.[8]

---

[8] In this regard, as the City previously has explained to the Committee (see Motion, at ¶ 34), it is, at best, unclear that the City even has the authority under Michigan law to furnish the members of the Committee with errors and omissions insurance coverage. Under the Michigan Supreme Court's ruling in Wheeler v. City of Sault Ste. Marie, 129 N.W. 685 (Mich. 1911), the City may not provide indemnification to private parties absent a specific

20. The Committee's attempts to characterize the circumstances of its members as unique because they are individuals and retirees is inaccurate. Individual retirees have participated in official retiree committees in several chapter 9 cases where the rights of retirees have been at issue and have served without insurance coverage. E.g., In re City of San Bernardino, Cal., No. 12-28006 (Bankr. C.D. Cal. Oct. 11, 2013) (notice of appointment of nine individuals to serve on official committee of retired employees in chapter 9 case); In re City of Stockton, No. 12-32118 (E.D. Cal. Apr. 1, 2013) (notice of

---

grant of power to do so from the State of Michigan. Id. at 686; see also Michigan Mun. Liab. & Prop. Pool v. Muskegon County Bd. of County Rd. Commissioners, 597 N.W.2d 187, 194 (Mich. Ct. App. 1999) (holding that county road commission's agreement to indemnify private contractor was an unenforceable ultra vires act); Huntington Leasing Co. v. Manistee Intermediate School District, No. 250942, 2005 WL 991309, at *2 (Mich. Ct. App. Apr. 28, 2005) (holding that school district had no power to indemnify plaintiff).

Although the Michigan Supreme Court's ruling in Wheeler has never been overruled, in two unpublished opinions, the Michigan Court of Appeals has indicated a contrary view with respect to cities, like Detroit, with broad home rule powers under the Michigan Constitution and the Home Rule City Act, M.C.L. § 117.1-117.38. See G.E. Property & Cas. Ins. v. Detroit Edison Co., No. 267989, 2006 WL 2613543, at *3 (Mich. Ct. App. Sept. 12, 2006) (holding that city had power to enter into contract with a utility that included an indemnification clause); Detroit Edison Co. v. City of Detroit, 2006 WL 397872, at *5 (Mich. Ct. App. Feb. 21, 2006) (holding that a plaintiff-electrical utility should have been permitted to amend its complaint to include a claim for contractual indemnity). Thus, the question of whether the City has the power to provide members of the Committee with indemnification or insurance coverage is at best unsettled.

ATI-2594343v6
13-53846-tjt Doc 2706 Filed 02/20/14 Entered 02/20/14 17:37:39 Page 15 of 19

appointment of 13 retired employees of the chapter 9 debtor to official committee of retirees); In re City of Vallejo, No. 08-26813 (E.D. Cal. Oct. 7, 2008) (notice of appointment of official unsecured creditors committee of retirees consisting of three individuals).

21. Moreover, participation by retirees in official committees is not limited to chapter 9 cases. Retired individuals are commonly appointed to official retiree committees in large and contentious chapter 11 cases pursuant to sections 1114(c)(2) and/or 1114(d) of the Bankruptcy Code. E.g., In re Patriot Coal, No. 12-51502 (Bankr. E.D. Mo. Mar. 7, 2013) (notice of appointment of seven individuals to committee of non-represented retirees); In re Mail Systems Liquidation, Inc. and Mail Liquidation, Inc., Docket No. 1:11-bk-11187 (Bankr. D. Del. Sept. 14, 2011) (notice of appointment of seven individuals to committee of retirees); In re PTC Alliance Corp., No. 09-13395 (Bankr. D. Del. June 21, 2010) (notice of appointment of three individuals to retiree committee); In re Dana Corp., 06-10354 (Bankr. S.D.N.Y. Aug. 31, 2006) (notice of appointment of seven individual retirees to official committee of non-union retirees); In re Solutia Inc., No. 03-17949 (Bankr. S.D.N.Y. Feb. 23, 2004) (order appointing seven individuals

to official retiree committee).[9] In none of these cases was errors and omissions insurance coverage for the members of the applicable retiree committees obtained.

## Conclusion

22. The Committee's request for the City to pay hundreds of thousands of dollars for errors and omissions insurance coverage for its members runs afoul of section 904 and is extraordinary and unnecessary in any event. Accordingly, and for all the other reasons set forth herein, the Motion should be denied.

---

[9] Bankruptcy courts in the Sixth Circuit have appointed retiree committees in various cases. See, e.g., Argeras v. GF Corp. (In re GF Corp.), Nos. 92-3583, 92-3585, 1993 WL 239062, at *1 (6th Cir. June 30, 1993) (referencing the bankruptcy court's appointment of an official retiree committee); In re Federated Dep't Stores, Inc., 132 B.R.572, 574 (Bankr. S.D. Ohio) (referencing its appointment of an official retiree committee).

Dated: February 20, 2014         Respectfully submitted,

/s/ Heather Lennox
Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California  90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
   STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 963-6420
Facsimile:  (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY

# CERTIFICATE OF SERVICE

I, Heather Lennox, hereby certify that the foregoing Brief in Opposition to Correction Motion of Official Committee of Retirees for Entry of an Order Allowing an Administrative Expense Claim was filed and served via the Court's electronic case filing and noticing system on this 20th day of February, 2014.

/s/ Heather Lennox