<pre>
 1                UNITED STATES BANKRUPTCY COURT
                 EASTERN DISTRICT OF MICHIGAN
 2                     SOUTHERN DIVISION

 3  IN THE MATTER OF,          Case No. 13-53846
                               Detroit, Michigan
 4  CITY OF DETROIT, MICHIGAN  February 19, 2014
    _____/  10:03 a.m.
 5
      IN RE: MOTION OF DEBTOR FOR ENTRY OF AN ORDER VACATING THE
 6    APPOINTMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
                         (DOCKET #2626)
 7           BEFORE THE HONORABLE STEVEN W. RHODES
              TRANSCRIPT ORDERED BY: ROBIN WYSOCKI
 8
    APPEARANCES:
 9
    For the City of Detroit, MI:  JEFFREY ELLMAN, ESQ.
10                                Jones, Day
                                  1420 Peachtree Street, N.E.
11                                Suite 800
                                  Atlanta, GA 30309-3053
12                                404-521-3939

13  For the U.S. Trustee,         SEAN COWLEY, ESQ. (P72511)
    Daniel M. McDermott:          MARIA GIANNIRAKIS (OH0038220)
14                                Office of the U.S. Trustee
                                  211 W. Fort Street
15                                Suite 700
                                  Detroit, MI 48226
16                                313-226-3432

17  For the Official Committee    BRETT HOWARD MILLER, ESQ.
    Of Unsecured Creditors:       Morrison & Foerster
18                                1290 Avenue of the Americas
                                  40th Floor
19                                New York, NY 10104
                                  212-468-8000
20
                                  MARK SHAPIRO, ESQ. (P43134)
21                                Steinberg, Shapiro & Clark
                                  25925 Telegraph Road
22                                Suite 203
                                  Southfield, MI 48033-2518
23                                248-352-4700

24

25
</pre>

```
 1  For Wilmington Trust Company:   HEATH ROSENBLAT, ESQ.
                                    Drinker, Biddle & Reath
 2                                  1177 Avenue of the Americas
                                    41st Floor
 3                                  New York, NY 10036-2714
                                    212-248-3140
 4
    Court Recorder:                 Letrice Calloway
 5
    Transcriber:                    Deborah L. Kremlick
 6

 7
    Proceedings recorded by electronic sound recording, transcript
 8  produced by transcription service.

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1       (Court in Session)

2           THE CLERK:  Case number 13-53846, City of Detroit,

3   Michigan.

4           THE COURT:  Okay.  So at this point I want to hear

5   the motion regarding the creditors' committee.

6           MR. ELLMAN:  Good morning, Your Honor.  Jeffrey

7   Ellman from Jones, Day on behalf of the city.

8           THE COURT:  Other appearances, please.

9           MS. GIANNIRAKIS:  Good morning, Your Honor.  Maria

10  Giannirakis on behalf of Dan McDermott, the United States

11  Trustee.

12          MR. COWLEY:  Good morning, Your Honor.  Sean Cowley

13  on behalf of the United States Trustee.

14          MR. MILLER:  Good morning, Your Honor.  Brett Miller

15  proposed counsel to the Official Committee of Unsecured

16  Creditors.

17          MR. SHAPIRO:  Good morning, proposed co-counsel for

18  the Unsecured Creditors' Committee.

19          MR. ROSENBLAT:  Good morning, Your Honor.  Heath

20  Rosenblat of Drinker, Biddle, and Reath on behalf of

21  Wilmington Trust National Association.

22          MR. ELLMAN:  Thank you, Your Honor.  We -- we did

23  file our motion to vacate the appointment of the Official

24  Committee of Unsecured Creditors.  We filed that motion back

25  in January and we have the two objections I'm sure Your

1  Honor's aware of from the U.S. Trustee and by the committee

2  itself.

3      And just yesterday hopefully the Court had a chance to

4  see that we filed a reply that I think somewhat

5  comprehensively addressed the issues as we saw them.

6          THE COURT: I read it.

7          MR. ELLMAN: Yeah. So what I thought I would do is

8  provide an overview then I can provide some more details of

9  some on the major points if the Court would like that, or I

10 would defer to what the Court would prefer to make this

11 efficient.

12     We are now in the eighth month of this case. We have

13 completed our long eligibility trial and a number of the

14 litigation matters of importance. And there are obviously as

15 you see a courtroom full of people, there's a lot of other

16 stuff still going on.

17     But we have been involved in I would say seemingly

18 non-stop restructuring discussions with representatives of all

19 the major stake holders in this case. A lot of that through

20 the Court ordered mediation process in an effort to resolve or

21 narrow the issues. And I think that we've been making

22 progress.

23     The goal is to complete this restructuring in the warmer

24 months of this year so while it's still cold outside now, it's

25 not that far away that it will be warm and we will be

1  hopefully completing this case.

2          THE COURT:  Can I hold you to that?

3          MR. ELLMAN:  Excuse me, Your Honor?

4          THE COURT:  Can I hold you to that?

5          MR. ELLMAN:  Well, we certainly hope that's the

6  case.  And you have a large role in that, Your Honor, so

7  hopefully we'll -- we'll make that.

8      And we are on the cusp now as the Court is well aware,

9  given the Court's deadline and our efforts that we purported

10  to file our plan which we hope will be filed this week.  So

11  all of this is the product of a great deal of effort by the

12  city and it's advisors that you might appreciate, of course

13  working with all the representatives of the parties and all

14  the mediators.  And taking into account the things that the

15  Court has told us or -- or ordered us, or helped us achieve.

16      And in that context we have a committee appointment at

17  this juncture.  And they're just getting up and running to

18  start participating in the case.  And this appointment by the

19  U.S. Trustee at the end of 2013 was accomplished as we

20  understand it, not because of some identified need or -- or

21  lacking in the representation of creditors, but because in the

22  U.S. Trustee's view the statute requires them to do this at

23  this point in the case.

24      And that's Section 1102(a)(1) which they felt bound by

25  that statute.  We had several, I think, cordial conversations

1 with the U.S. Trustee's office in advance of and after the

2 appointment, that they felt fairly bound by that provision.

3     The city of course does not believe that the appointment

4 is required by that section.  It's a Chapter 11 concept in our

5 view and the statute if you look at 1102(a)(1), a lot of what

6 we're arguing about is really going into the -- the Code and

7 reading it carefully.

8     It does say that after an order for relief in a Chapter

9 11 case.  And it's not a Chapter 11 case, so our view is that

10 requirement is specifically tied to the Chapter 11 process and

11 at best the U.S. Trustee has discretionary authority to put in

12 place a committee and they haven't framed this as a need or a

13 requirement that they see to -- to assist in representation of

14 creditors, simply a statutory obligation.  And we don't think

15 there is a basis, on a discretionary basis to appoint a

16 committee.

17     The other big issue -- and we can talk about all that

18 more if Your Honor would like about the interpretation of

19 1102(a)(2) after this introduction.

20     As far as the power to vacate this appointment, it's --

21 sort of both objecting parties say that there's no power of

22 the Court in this regard whatsoever.  In our view there's

23 nothing in the Bankruptcy Code that says the Court can vacate

24 or cannot vacate.  It's not addressed in any manner.

25     There are some things that relate to committees that are

1 sort of -- kind of touch on the issues related to it, but they

2 don't touch on this issue. And we believe, and we've cited

3 cases, that it's necessary and appropriate for the Court to

4 have oversight over these kinds of decisions of the U.S.

5 Trustee's office and especially what we consider in our view

6 the discretionary determination. And -- and we can again talk

7 about that.

8      There's -- there's at least one case that has followed

9 this. You're -- you're running on a fairly blank slate

10 because there isn't much else except for this one case,

11 Pacific Avenue out of North Carolina. Obviously very

12 different facts, but we think the fundamental premise that

13 105, 105(d) which we've cited in our papers, allows the Court

14 to take action to make sure the cases run efficiently and

15 expeditiously and to enter orders that are not inconsistent

16 with anything else in the Code. And so the Code is silent on

17 this point.

18      It's a strong congressional -- a strong presumption is a

19 congressional -- strong congressional presumption is that

20 administrative actions should have oversight. We think the

21 Court can use 105 to vacate this appointment.

22      So that gets us I guess if the Court agrees with all

23 that, to the question of should you vacate the appointment and

24 we think the equities and the facts before the Court strongly

25 suggest that yes, the Court should. Committees can serve a

1 useful purpose and I think a lot of what the committee's paper

2 actually cites to is, you know, a litany of things that

3 committees can do in a case which obviously can be important.

4     But the committee is not needed here and really the issue

5 is do we have adequate representation of the creditor body.

6 And this is not a case where creditors are unrepresented. We

7 -- by my math 98% or maybe more of unsecured creditors by

8 dollar are represented in this case and we've been in

9 discussions with them.

10     And some of those parties are represented by multiple

11 entities. We have unions and the retiree committee that Your

12 Honor agreed to put in place at our request, retiree

13 associations, the pension systems. You have bond holder

14 trustees and paying agents, the COP holders and the swap

15 participants, and the insurers and numerous other parties have

16 come before this Court.

17     They're all represented by multiple law firms, some the

18 city is paying for already. In particular the retiree

19 committee professionals which there's millions of dollars of

20 the -- the estate or excuse me, the city is paying for.

21     THE COURT: How much?

22     MR. ELLMAN: How much is the retiree? I -- I wish I

23 had that number, but I can tell you the bills are substantial

24 and many of those bills in a given month for -- for lawyers'

25 fees in particular are in the seven figures. But I don't have

1 a total as of today, Your Honor.  I certainly could get that

2 for you.

3     The fee examiner filed his first report which probably

4 has the numbers for the first bid of their work.  But that

5 will all be reported ultimately to the Court through that

6 process.

7     But at this point a new committee is not needed to

8 represent parties because they're all represented.  And it's

9 certainly not needed in our view to -- for the people on the

10 committee -- committee members to be represented because

11 they're all parties participating in a case, the -- the two

12 retirement systems in -- are at every hearing through counsel,

13 Wilmington Trust, the COPS trustee, Fgic which is one of the

14 insurers for the COP obligations, and then the remaining

15 member Jessie Payne, who I believe is a tort claimant

16 represented by counsel, just filed a motion last week or so

17 for lifting the stay to pursue an escrow fund.

18     So these are all parties that are participating.  The

19 four in particular are engaged day to day in mediation

20 activities and have been involved in all the major aspects of

21 the case, eligibility, and -- and various other litigation

22 matters.  You see you have a courtroom full of people today

23 that comprise many of those folks.

24     So we don't need representation for creditors because we

25 have substantial representation for creditors.  And the burden

1  on the city to deal with yet another entity I think is not

2  justified, especially being made up of parties who are

3  already --

4          THE COURT:  Well, let me just -- let me ask you.  Do

5  -- do you see any value whatsoever that a creditors' committee

6  could -- could bring to this process?

7          MR. ELLMAN:  Well, that's pretty open ended.  I mean

8  there's -- always could be some value that another party could

9  add.

10         THE COURT:  Can you articulate any?

11         MR. ELLMAN:  It would be pure speculation what could

12 happen if they could bridge the gap in some discussion.  But I

13 can't really see it here frankly, Your Honor, because it's all

14 the same people we're talking to for the most part.

15 `   So could a -- could a committee?  Maybe.  But I don't

16 think in this case at this time a committee has a real role.

17 For one thing as I mentioned the plan is about to be filed and

18 we're very far along in the process.  And talking to this

19 group of people in a mediation setting and then negotiations

20 that are sensitive and then also adding --

21         THE COURT:  Even gap bridging is a little bit tough

22 to foresee given the committee's disavow of any intent to

23 participate in mediation.

24         MR. ELLMAN:  I'm sorry, Your Honor?

25         THE COURT:  The committee's paper says it's not

1  going to join the mediation.  So how --

2          MR. ELLMAN:  Well, since the committee --

3          THE COURT:  -- does it serve any gap -- gap bridging

4  role if it doesn't join in mediation?

5          MR. ELLMAN:  I -- I don't know what role they would

6  play at that point.  I guess that that's a very fair

7  statement, Your Honor.

8      The -- the problem we see too in the context of the

9  progress we've made to date which I think is substantial and

10  however you measure the distance, you know, there is still

11  plenty to do and we have a long way to go, but we've come very

12  far down that road.

13          THE COURT:  Uh-huh.

14          MR. ELLMAN:  There's a lot behind us.

15          THE COURT:  How many days till March 1st?

16          MR. ELLMAN:  Well, we'll beat March 1st, that's --

17  that won't be difficult because we're well prepared to file

18  our plan.  But, you know, then there's the -- the process of

19  getting the plan approved.

20      But that process is well under way.  And adding another

21  party to that mix, especially it's a little confusing to talk

22  to a group of people we're already talking to and wearing two

23  different hats.  And there's nothing to say that a party can't

24  be involved in the case and sit on a committee.  It happens

25  and it can be appropriate.

1    But here it just doesn't seem to serve the purpose at

2  this juncture with these parties.  So our view -- and whatever

3  the committee does is going to cause us to spend time and

4  effort which is going to burden the estate.  I mean I don't

5  know what they're going to do.

6    But the other aspect of what's in the papers, of course,

7  is that the committee has made no secret of the fact that they

8  are going to try to burden the estate with their professional

9  fees.  Which we've seen the retiree committee fees and they're

10  very substantial.  And we agreed to pay them within reason.

11    And this could be another, you know, millions of dollars

12  of -- of funds that the city doesn't really have and it can't

13  really afford that are diverted from other purposes.  So the

14  burden -- we would by the way say that there's no basis for --

15    THE COURT:  If this committee's fees are millions of

16  dollars, where would it come from?

17    MR. ELLMAN:  We don't really have the money, it

18  would have to come from something else, some kind of -- come

19  from use in the city to -- you know, taxpayers are funding

20  this, so taxpayer money that would otherwise go to city

21  services or to some other purpose would have to be reallocated

22  and diverted to this.  There's no other easy way to deal with

23  that.

24    THE COURT:  I wondered why your brief, I think

25  disavows is maybe the right word, the -- the argument that

1 | 1102(a)(1) only applies in Chapter 11 cases.

2 |         MR. ELLMAN:  Why we believe that that's true?

3 |         THE COURT:  No.  Why you disavow that.

4 |         MR. ELLMAN:  Well, we didn't disavow that.

5 |         THE COURT:  Your brief says you're not asserting

6 | that, but I should consider it.

7 |         MR. ELLMAN:  Well, Your Honor, what happened, I -- I

8 | can be very frank with -- with the Court.  What happened was

9 | we -- we did not believe --

10 |         THE COURT:  I asked the author of the brief.

11 |         MR. ELLMAN:  Well, I can -- I'm standing right here,

12 | so I can -- I can -- I'm one of the authors of the brief.

13 |         THE COURT:  Oh, all right.

14 |         MR. ELLMAN:  We did not believe that in reading

15 | 1102(a)(1) that -- and given our experience, that it denied

16 | the U.S. Trustee discretion to appoint a committee.  That was

17 | our initial belief.

18 |     And we explained in our reply brief how you can read that

19 | section two different ways.  We re-read it in light of the

20 | trustee's brief because they made some points that made us go

21 | back and read it again.  And we realized you could read it --

22 |         THE COURT:  The plain meaning argument.

23 |         MR. ELLMAN:  The plain meaning.  And the plain

24 | meaning, it might even be a more natural reading and say they

25 | have no authority whatsoever.  It's kind of a -- hard to parse

1 sentence. It's not well written. No offense to the Congress,

2 it's just not -- it's hard to -- it's a little vague.

3      So we -- we believe that's an appropriate thing for the

4 Court to consider. We did not -- we determined not to change

5 our argument because we hadn't argued that initially, but I do

6 think it's a very valid point.

7      The statute, clearly it applies at least in part only in

8 Chapter 11 in our view. And the part that immediately follows

9 the phrase promptly after an order for relief is entered in

10 Chapter 11, the mandatory part, it follows that immediately,

11 it's a temporal limitation. That clearly relates to Chapter

12 11.

13      And it makes sense because in Chapter 9 in particular,

14 order for relief could be -- and this was pretty fast, we got

15 an order for relief from the Court. Could have been months

16 from now. And to say that the U.S. Trustee has to appoint

17 committee at the end of the case doesn't make a lot of sense.

18 So we think that clearly doesn't apply.

19      The second half is more of a toss up, a little more

20 difficult. But I would have no problem -- I'm not disavowing

21 that argument. It was something we hadn't argued initially.

22 So we wanted to be cautious about -- about how we argued it.

23 But I think that's within the Court's discretion to find that

24 -- that plain meaning of that provision allows you to say that

25 the U.S. Trustee has no authority whatsoever.

1    So if you'd give me one moment.  I think that covers --

2  I'd be happy to go into more detail on any of those points,

3  but I think that covers our basic arguments.

4    I started to talk about our view that if the committee is

5  not disbanded, or the appointment vacated, and they do hire

6  counsel, our view is that the city is not bound to pay for

7  that.  And we've talked about that in our brief.  I'm not sure

8  it's exactly a topic that was raised by our motion, but it

9  does go to burden and I -- I can try to parse through the

10  committee's argument on it.  It's hard for me to follow how it

11  makes any sense.

12    It's really a matter and a function of trying to find a

13  way to say that 330, Section 330 of the Code, although it's

14  not a 901(a), so it's not in Chapter 9, is somehow in Chapter

15  9.  Which I -- there is case law that says that's incorrect.

16  That's -- there is more case law on that side, but there are

17  some cases and I agree with the committee, I think it's more

18  wishful thinking because it's sort of -- they would like that

19  to be true and maybe there's a logic to it, but Congress

20  didn't adopt that logic, so I don't see how you can go through

21  the -- if you go through five or seven provisions, to kind of

22  say it might have kind of been intended to -- or it might make

23  sense for it to be included, but it's not included, so it's

24  pretty straightforward.  And we don't believe that the city

25  can be burdened with that.

1    So it's sort of a side issue, but I think it's an

2  important one for the Court to understand.  And -- and with

3  that, I'll be happy to go through more detail into any of

4  this, or respond after argument.

5        THE COURT:  Thank you.  Thank you, sir.

6        MS. GIANNIRAKIS:  Good morning, Your Honor.  Maria

7  Giannirakis on behalf of Daniel McDermott, United States

8  Trustee.

9    Your Honor, I will try to be brief and not restate what

10 is in our motion.  I believe we covered all the points we

11 needed to cover, but I would like to cover some points that

12 were in debtor's reply brief in -- in brief detail today.

13   We don't believe the debtor has met its burden.  It's

14 their burden to meet and we don't believe they have done so.

15 11 -- 1102(a)(1) requires the United States Trustee in

16 performance of his statutory duty to appoint a committee to

17 represent the interest of creditors.

18   Section 901 incorporates 1102 in its entirety.  Therefore

19 in the performance of the U.S. Trustee's statutory duty, they

20 are to appoint a committee in Chapter 11 standing, Chapter 9's

21 and he did so.

22   The committee -- or I'm sorry, the city in its reply

23 brief is arguing that reading 1102(a)(1) in different ways

24 limits the meaning of that section and takes away the

25 mandatory requirement of the United States to appoint

1  committees in Chapter 9 cases.  And frankly, Your Honor, this

2  is just wrong.  1102(a)(1) in no way provides limiting

3  language.  If Congress intended the language --

4        THE COURT:  Well, there is limiting language.  The

5  question is whether it applies.

6        MS. GIANNIRAKIS:  It does not apply in -- and it --

7        THE COURT:  All right.  If the limiting language in

8  (a)(1) doesn't apply, why is it that the limiting language in

9  (a)(3) doesn't apply?

10       MS. GIANNIRAKIS:  Your Honor, 901 incorporates 1102

11 in its entirety.  And therefore under 1101(a)(1), a committee

12 could be appointed.  Congress specifically excluded, or in

13 (a)(3) when we're talking about small business just dose not

14 apply to --

15       THE COURT:  Well, that's the question.  If (a)(3)

16 doesn't apply because it's -- it's limited by the small

17 business language, why doesn't (a)(1) also not apply because

18 it's limited to Chapter 11?

19       MS. GIANNIRAKIS:  Your Honor, Congress specifically

20 excluded other Code sections it did not want included and

21 specifically excluded 1102(a)(1).  For example in 1161 in

22 railroad cases.

23     So it could have done so when it drafted -- when it --

24 when it excluded sections from 901.  I don't believe it needed

25 to exclude the small business section because small businesses

1  just don't --

2         THE COURT:  Well, but isn't the answer to that that

3  by including 1102 in 901, Congress meant to include 1102(a)(2)

4  and (4)?

5         MS. GIANNIRAKIS:  No, that's not the way the U.S.

6  Trustee reads it.  The U.S. Trustee reads it --

7         THE COURT:  Well --

8         MS. GIANNIRAKIS:  -- the excluded part is the

9  1102(a)(3) just -- because small business by definition does

10 not apply here.

11        THE COURT:  But Chapter 11 does?

12        MS. GIANNIRAKIS:  And Chapter 9 by -- by

13 incorporation in -- in 901.  And, Your Honor, it has been the

14 consistent practice of the United States Trustee to solicit

15 and appoint committees in Chapter 9 and in Chapter 11.

16        THE COURT:  Yeah, but that doesn't make it right,

17 Ma'am, does it?

18        MS. GIANNIRAKIS:  We believe that the way Congress

19 wrote it, is it intends that these committees are in Chapter 9

20 cases, Your Honor.  And then therefore it's mandatory --

21        THE COURT:  Is there -- is there a single case that

22 rejects the view that 1102(a)(1) does not apply in Chapter 9

23 cases because it's limited to Chapter 11?

24        MS. GIANNIRAKIS:  I don't believe there's any case

25 law out there, Your Honor.

1          THE COURT:  Either way?

2          MS. GIANNIRAKIS:  Either way, correct.

3       The second argument that the -- the Court makes -- I mean

4    I'm sorry, the city makes, is that it argues that the Court

5    has the authority to disband this committee.  But there is no

6    authority for the Court to disband.

7       Again, 11 -- 1102 gave the United States Trustee and the

8    Court important but divergent authorities regarding

9    committees.  The Court can order the United States Trustee to

10   appoint additional committees under 1102(a)(2), order the

11   Court not -- or I'm sorry, order the United States Trustee not

12   to appoint a committee in a small business case, or order the

13   United States Trustee to change the membership of the

14   committee.

15      The -- 1102 is silent next to the power of the Court to

16   disband the committees.  When Congress made these changes to

17   1102 to incorporate what the Court could do if it wanted to,

18   it could have given the Court the authority to disband, it did

19   not do so.

20      The debtor's --

21          THE COURT:  It did give the Court in Section 105,

22   the authority to assure the efficient administration of the

23   estate, didn't it?

24          MS. GIANNIRAKIS:  It did, Your Honor, but we don't

25   believe that applies in this case because the -- the -- 1102

1  gives the Court specific authority with respect to committees.

2  And we don't believe 105 can do something that's inconsistent

3  with other sections.

4          THE COURT:  So your view is that Congress intended

5  to impose millions of dollars of obligation on the City of

6  Detroit with no value.

7          MS. GIANNIRAKIS:  Well, we don't know that there is

8  no value.  But our --

9          THE COURT:  But it doesn't matter whether there's

10  value.

11          MS. GIANNIRAKIS:  Is that the --

12          THE COURT:  Is that right, Ma'am?

13          MS. GIANNIRAKIS:  No.  The United States Trustee has

14  -- has a statutory duty to -- to attempt to form a committee

15  in a case and if --

16          THE COURT:  I need an answer to my question.

17          MS. GIANNIRAKIS:  Could you repeat your question

18  then, Your Honor?

19          THE COURT:  It's your view that Congress intended to

20  impose potentially millions of dollars of expense on the

21  insolvent City of Detroit, depriving it of the opportunity to

22  hire new police officers, or buy fire trucks, or EMS vehicles,

23  or whatever is needed to pay for a creditors' committee that

24  has potentially no value to the bankruptcy process.  Is that

25  your view?

1          MS. GIANNIRAKIS:  Our view is that the United States

2    Trustee is statutorily obligated to attempt to form a

3    committee --

4          THE COURT:  Could I take your answer as --

5          MS. GIANNIRAKIS:  I'm sorry.

6          THE COURT:  -- as an answer yes to my question,

7    Ma'am?

8          MS. GIANNIRAKIS:  I was going to finish, Your Honor.

9    And to protect the interest of thousands of creditors who are

10   unrepresented in this case.  And although the city argues that

11   90 -- 90 to 98, I didn't catch the number, percent of the

12   dollar amount represented on the committee, there are

13   thousands of creditors who aren't represented on it.

14         THE COURT:  Who?

15         MS. GIANNIRAKIS:  There -- there are -- I think

16   today it says that there are 100,000 creditors that aren't

17   represented.  So the committee is there to represent them.

18         THE COURT:  Who is not -- who is not represented?

19         MS. GIANNIRAKIS:  Well, we believe the committee as

20   it's composed adequately represents the interests of now the

21   creditors that are out there.

22         THE COURT:  All right.  For the third time, Ma'am,

23   who is not represented?

24         MS. GIANNIRAKIS:  The tort claimants.  We have trade

25   claimants.  There are other lawsuit -- litigation claimants

1 | that aren't represented.

2 | THE COURT: So why didn't you move to appoint a

3 | committee for those specific constituencies?

4 | MS. GIANNIRAKIS: Well, Your Honor, we believe the

5 | Unsecured Creditors' Committee does include those creditors

6 | and they are covered under -- they are represented by the

7 | creditors' committee. We didn't feel a need to appoint

8 | additional committees other than that.

9 | THE COURT: So your view was that a -- a committee,

10 | all of whom are already represented in the case, will

11 | represent the interests of trade creditors?

12 | MS. GIANNIRAKIS: They are fiduciaries to the

13 | general unsecured creditors.

14 | THE COURT: I'm sorry, Ma'am?

15 | MS. GIANNIRAKIS: They are fiduciaries to the

16 | general unsecured creditors in the case including trade

17 | creditors.

18 | THE COURT: There is a question regarding your

19 | position here that your brief did not address. And that is

20 | your standing. If you argue for the plain meaning of 1102, I

21 | have to ask you what in the Bankruptcy Code gives your office

22 | the authority to be here today and to file a brief?

23 | MS. GIANNIRAKIS: Well, Your Honor, 901 incorporates

24 | 1102, and 1102 states the U.S. Trustee shall appoint.

25 | THE COURT: And -- and you did that. I ask again,

1  what language in the Code gives your office the authority to

2  be here today?

3          MS. GIANNIRAKIS:  307, that the U.S. Trustee can

4  appear at any hearing.

5          THE COURT:  Is that incorporated into Section 901?

6          MS. GIANNIRAKIS:  I --

7          THE COURT:  I'm sorry?

8          MS. GIANNIRAKIS:  I'm not sure without looking.

9          THE COURT:  It's not.

10         MS. GIANNIRAKIS:  No, Your Honor.  Well, but it does

11 say that the U.S. Trustee may appear and be heard on any issue

12 in any case under this title, but may not file a plan.

13         THE COURT:  Right.  But it's not incorporated into

14 Chapter 9.

15         MS. GIANNIRAKIS:  I don't believe it needs to be

16 because it's --

17         THE COURT:  So I ask my question again.  What

18 specific language in the Bankruptcy Code authorizes your

19 office to be here today?

20         MS. GIANNIRAKIS:  Going to 307, Your Honor.

21         THE COURT:  Even though 307 is not incorporated into

22 901, and it's 901 on which you rely to assert 1102.

23         MS. GIANNIRAKIS:  Well, Your Honor, I believe

24 because it says under any case in this title, and any

25 proceeding that does apply to Chapter 9 cases.  And since we

1  appointed the committee, we are here -- we felt it necessary

2  to be before your Court --

3           THE COURT:  Uh-huh.

4           MS. GIANNIRAKIS:  Be before the Court to offer our

5  position.

6           THE COURT:  All right.  Thank you.

7           MS. GIANNIRAKIS:  Getting back to disbanding the

8  committee.  The Court cites one case for the authority to

9  disband committee --

10           THE COURT:  You mean the city.

11           MS. GIANNIRAKIS:  Pardon?

12           THE COURT:  You mean the city.

13           MS. GIANNIRAKIS:  Or the city, I'm sorry.  And

14  that's Pacific Avenue.  But we believe Pacific Avenue, number

15  one, is not controlling, but also can be distinguished on many

16  grounds.

17      First of all, it's a North Carolina case and therefore

18  not under the UST jurisdiction.  The committee was appointed

19  by a bankruptcy administrator part of the judicial branch.

20  The Judge appointed the trustee -- a Chapter 11 trustee in the

21  case.

22      The bankruptcy administrator's handbook as cited in the

23  case says that if a trustee is appointed, the committee should

24  cease to act.  And because the committee was appointed, the

25  Court had the power to disband the committee.  So although the

1  reasoning was under 105, and we don't believe that was

2  appropriate reasoning, we do believe that the Court had the

3  authority in that case to disband the committee.

4      For these reasons, Your Honor, and for the other reasons

5  cited in our brief, we ask the Court to deny the city's

6  motion.  We don't believe they've met their burden.

7          THE COURT:  Thank you.

8          MR. MILLER:  Good morning, Your Honor.  Brett Miller

9  proposed counsel, co-counsel with Mr. Shapiro for the Official

10 Committee of Unsecured Creditors.

11     I will not restate the law that the U.S. Trustee and the

12 city went through.  And I will attempt to answer some of your

13 questions regarding what value the creditors' committee can

14 bring to this proceeding.

15     First off, the members of the committee sought seats on

16 the creditors' committee.  Even though four of the five of

17 them are actively involved as Mr. Ellman said in the -- the

18 mediation and in the -- in -- moving forward their parochial

19 interest.  They thought there was value to sit on a creditors'

20 committee.  This is often the case.

21         THE COURT:  What's the committee going to do?

22         MR. MILLER:  I -- I think --

23         THE COURT:  Given your statement that you're not

24 going to participate in mediation, that leaves litigation.

25         MR. MILLER:  The statement was the UCC has not --

1 the creditors' committee has not attempted and likely will not

2 attempt to join the mediation. Since the --

3          THE COURT: Right. So what are you going to do?

4          MR. MILLER: Well, I -- I think that we may now have

5 to rethink the comment regarding mediation because in talking

6 to parties, anyone involved in the mediation is sworn to

7 secrecy and there has been no communication with counsel as to

8 what is specifically going on in -- in mediation.

9     What we know is that a plan has not been filed. We know

10 that these parties want and think that the creditors --

11          THE COURT: But why did you tell the Court you

12 wouldn't participate in mediation? Why even say that?

13          MR. MILLER: Your Honor, at -- at -- at some point

14 we believed that a plan was going to be filed prior to this

15 hearing taking place and therefore mediation may be over and

16 it may turn to something different in terms of plan

17 negotiations.

18          THE COURT: Mediation won't be over until every last

19 single issue has been settled.

20          MR. MILLER: Okay. Well, Your Honor, the committee

21 members --

22          THE COURT: Or decided by me.

23          MR. MILLER: True. The -- the -- the committee

24 members --

25          THE COURT: And maybe it will even continue when the

1 case is on appeal.

2           MR. MILLER:  It could.

3           THE COURT:  So I wonder why you would say that.  I

4 mean it seems to me to -- to reflect an -- an extraordinary

5 lack of understanding about the importance of mediation in any

6 reorganization case, especially a Chapter 9 case.

7           MR. MILLER:  We -- we don't disagree --

8           THE COURT:  Among the first orders I entered was an

9 order appointing mediation because I wanted to impress on

10 everyone the importance of mediation.  I don't get it.

11          MR. MILLER:  Well --

12          THE COURT:  Well, I'm glad to hear you're rethinking

13 it, okay.

14          MR. MILLER:  We -- we -- we think that they are --

15          THE COURT:  Let's talk about your role in -- in

16 litigation.  Is there -- is there a single issue you foresee

17 bringing in any context that a party to the litigation other

18 than the committee won't already bring?

19          MR. MILLER:  I think that when you synthesize the

20 voices of five members and come up with a unified position of

21 a creditors' committee which oftentimes goes against one

22 member of the committee's parochial interest, you have the

23 committee sometimes siding with the debtor, sometimes siding

24 with the creditor in terms of the numerous disputes that are

25 out there.  And that should provide Your Honor with a -- a --

 1  at least --

 2         THE COURT:  Can you identify a single issue in the

 3  case as we head into plan confirmation on which you expect to

 4  agree with the debtor?

 5         MR. MILLER:  I -- we would have to discuss the

 6  issues with the committee.  We have committee members that are

 7  torn --

 8         THE COURT:  The answer to my question is no.

 9         MR. MILLER:  Right now the committee has not taken a

10  position on any --

11         THE COURT:  Look, you're going to cost the city

12  millions of dollars.  I don't mean you, I mean the committee.

13         MR. MILLER:  I -- I don't know where the -- the --

14  the debtor comes up with millions of dollars.  Taking the

15  retiree committee's fees through a month or two where they

16  were actively involved in litigation, litigation regarding the

17  OPEB and the eligibility issue, that's not this committee's

18  role.

19      I've represented committees for well over 20 years and I

20  don't foresee any chance that millions of dollars of the

21  city's money is going to be spent.  But I can --

22         THE COURT:  Is this your commitment to cap your fees

23  at $1,000,000?

24         MR. MILLER:  I'd be happy to discuss with Jones,

25  Day --

1    THE COURT:  Yeah, so the answer to my question is

2   no.  Assume it costs millions of dollars.  Where is the value?

3         MR. MILLER:  I think the answer --

4         THE COURT:  As I said before, every dollar they

5   spend on you is a dollar less for a police officer.

6         MR. MILLER:  Or is it a dollar less for the

7   unsecured creditors who have volunteered to sit on the

8   committee.

9         THE COURT:  Okay.  Let's talk about that.  Let's

10  talk about that.  Where are you going to find in the city's

11  operations, additional money for unsecured creditors that

12  justifies your fee?

13        MR. MILLER:  I think that's unfortunately where 330

14  generally comes into play in a case.  And I'm not going to

15  touch the issue of whether 330 is included because it's not

16  under 901.

17      But the issue of reasonableness does come into play in

18  every Chapter 11, Chapter 9 case where there's a creditors'

19  committee and you have to at the end of the case, or whether

20  it's through the fee examiner process, prove that your fees

21  were reasonable.  If they were not reasonable and did not add

22  value they will not be approved.  This is why creditors'

23  committees as well as debtors and other committees' fees often

24  are not approved.

25        THE COURT:  So -- so once again you can't answer my

1  question.  Look, when you submit your fee application for a

2  $1,000,000 and I ask you, did you enhance creditors'

3  recoveries by more than a $1,000,000.  If the answer is no,

4  you're going to say, but we tried.

5           MR. MILLER:  What if the answer is that we've worked

6  with the five members of the committee, as well as the city,

7  as well as the other creditors to come up with a way to short

8  circuit and get a plan that's a consensus building plan on

9  file earlier, several months earlier than it would have

10 otherwise taken.  Then the committee will have added value and

11 the --

12          THE COURT:  But we know that's not going to happen

13 because I set a deadline of nine days from now.

14          MR. MILLER:  Well, they'll file a plan, doesn't mean

15 it's confirmable.  I mean you've had many Chapter 9 cases

16 starting with Orange County where original plans were not

17 confirmed.

18          THE COURT:  And that's why I wondered why you

19 disavowed mediation.

20          MR. MILLER:  Your Honor, I -- I'd be happy to -- to

21 strike that from our papers.

22          THE COURT:  We're going in circles here.  And -- and

23 I -- you know, I need an articulation of where your value is.

24          MR. MILLER:  I -- I think now you're clearly

25 pointing us to mediation.  But in order to be in mediation, we

1 need Your Honor to add us to mediation, we need

2 confidentiality agreements to be agreed to.  The committee is

3 happy to go through that -- go down that path.

4     We do believe there's a need for fiduciary who can be a

5 consensus builder.  Because as things stand now --

6          THE COURT:  I already have a mediator that's a

7 consensus builder.  Give me something else that I can say to

8 the city will add value to this case.

9          MR. MILLER:  I -- I -- I think that the mediator is

10 bridging the gap between the debtor and the individual

11 creditors whereas the creditors' committee generally bridges

12 the gap between the individual creditors to get them to

13 believe that each of their views, each of their parochial

14 views is not always correct.  And they need to move off of

15 that view in terms of getting the creditors all on the same

16 page in working with the city to get a plan together.

17          THE COURT:  This will be done by a committee whose

18 members each of whom think are special and deserve better

19 treatment than everybody else.

20          MR. MILLER:  And in every creditors' committee of

21 non-homogenous creditors, that's exactly what happens.  This

22 is not a -- a -- a new issue.  This is when there's bond

23 holders, verse is bank debt, verse is trade creditors, verse

24 tort litigants fighting over different parts of the capital

25 structure.  You have a -- a situation here with the pension

1  issues as well as --

2         THE COURT:  And -- and it certainly hasn't escaped

3  your notice that -- that because of the expense of Chapter 11,

4  part of which is the expense of creditors' committee --

5  committees, Chapter 11 is now a much less favored mechanism

6  for resolving business insolvency, isn't it?

7         MR. MILLER:  In terms of filings being down?

8         THE COURT:  Yeah.

9         MR. MILLER:  Yes.

10        THE COURT:  You've noticed.

11        MR. MILLER:  But -- but what happens is you -- you

12  have pre-packaged bankruptcies now --

13        THE COURT:  We don't even get those anymore.

14        MR. MILLER:  I -- I -- I -- filings are down, but

15  that's part of the economy.

16        THE COURT:  I'm putting this to you hard, sir.

17        MR. MILLER:  You can't --

18        THE COURT:  You've got to control costs.  Everyone's

19  got to add value to the case.  Where is your value?

20        MR. MILLER:  Our value is to work with the creditors

21  and work with the city first to come up with a budget whether

22  it's capping it at a $1,000,000, or -- or some number lower or

23  higher, that would be a discussion.

24     You know, the new U.S. Trustee regulations require,

25  although this case was filed after, that budgets be approved.

1  That's something that we could work with the creditors'

2  committee to come up with a budget.  If the number is less

3  than a $1,000,000, would that make it more likely that we'll

4  be adding value than if it's $5,000,000, it -- it really

5  depends that once confidentiality agreements are agreed --

6  agreed to and the information is provided and the creditors

7  and the counsel and the city have discussions.

8        THE COURT:  Let's get back to Section 1102.

9        MR. MILLER:  Uh-huh.

10       THE COURT:  What's your answer to the question about

11 why the limitation in 1102(a)(3) would apply but not the

12 limitation in 1102(a)(1)?

13       MR. MILLER:  I think that because you have orders

14 for relief in Chapter 11 and not in Chapter 9.  And you had a

15 situation here that --

16       THE COURT:  We don't have orders for relief in

17 Chapter 9?  Of course we do.  I entered one.  Was that

18 improper?

19       MR. MILLER:  No, I -- I meant that -- I was going to

20 say that you have the gap between the eligibility hearing and

21 the order for relief.  If the issue is how many months went by

22 in terms of the -- the appointment of the creditors'

23 committee.

24     I -- I cannot answer the how or why Congress included

25 some things and didn't -- you have raised an excellent point

1 regarding the U.S. Trustee's ability for standing.  Why wasn't

2 that included?  Do you take the language that in -- in this

3 title to mean that it should be a 901 even though it's not

4 specifically a 901?

5      I think that what the city's counsel said was absolutely

6 correct.  This is a blank slate.  There is no case law on

7 point.  There is no -- the statutes are absolutely confusing.

8      What you do have is you have a Pacific Avenue case which

9 again you think is -- is improperly decided.  But I'll

10 actually turn Pacific Avenue around.  I think that if you went

11 to the Pacific Avenue Judge and provided him with these facts,

12 he would say there is no Chapter 11 trustee.  I didn't appoint

13 a committee, this is the U.S. Trustee's doing.  This is the

14 U.S. Trustee's appointment and there needs to be a fiduciary

15 for all unsecured creditors.

16      And maybe he in that case appoints a committee -- keeps

17 the committee in place because there's a need for a voice for

18 all creditors.  Mr. Ellman said that 98% in dollars is

19 represented.  Well, he didn't say how many in terms of

20 numbers.

21      The creditor of a $1.00 or creditor of $1,000,000,000

22 should be equal.  They should all have an equal voice in the

23 bankruptcy process.

24           THE COURT:  Even if it costs the city millions of

25 dollars?

1          MR. MILLER:  Again, I don't think millions of

2   dollars is the proper --

3          THE COURT:  What other professionals is the

4   committee going to hire?

5          MR. MILLER:  The committee has nothing on the agenda

6   to hire other professionals right now.

7          THE COURT:  But that's not your commitment that

8   there won't be any others?

9          MR. MILLER:  If you'd like me to take the five --

10  the chairperson of the committee is here and four other

11  members.  We can have a discussion.  We have not discussed

12  hiring a financial advisor if that's the question.

13         THE COURT:  Well, I -- it -- it doesn't do to force

14  that on you right now --

15         MR. MILLER:  We -- we --

16         THE COURT:  -- and I'm not going to.

17         MR. MILLER:  We can make a commitment not to hire

18  subject to --

19         THE COURT:  I don't want you to make that

20  commitment.  Because if this goes through, it may be something

21  you want to rethink.

22         MR. MILLER:  True.

23         THE COURT:  Do you agree that because 1103 applies

24  in Chapter 9, if this motion is denied your fees are subject

25  to Court approval?

1          MR. MILLER:  I think that our fees are absolutely

2   subject to Court approval whether --

3          THE COURT:  Unlike the committee -- the retirement

4   committee fees and the city's attorney's fees.

5          MR. MILLER:  Well, Your Honor, that raises a -- a

6   completely different issue on a completely different order

7   that's before you whether the fee examiner order would be

8   amended, or could be amended, or should be amended to include

9   the creditors' committee.

10          THE COURT:  Right.  But that's a separate issue from

11   whether your fees are subject to Court approval.

12          MR. MILLER:  Absolutely.

13          THE COURT:  Anything further, sir?

14          MR. MILLER:  No, Your Honor, that's all.

15          MR. ELLMAN:  Jeffrey Ellman from Jones, Day on

16   behalf of the city.  Just briefly a couple things.

17      I think starting out one of the problems here is the

18   premise that this was a committee appointed really for no

19   reason other than the statute in the U.S. Trustee's mind said

20   they had to do it.  So I think a lot of the questions why are

21   we doing it this way.  There's no reason.  There wasn't any

22   real thought process unfortunately on how the committee was

23   composed.  It was composed of people who stood up and said

24   I'll do it.  Maybe because they thought their fees would get

25   paid or what have you.

1      But there is no reasoning behind the appointment as far

2    as I can tell.  And I don't think there's a committee that's

3    needed.  So I think the questions obviously before the Court

4    is did the U.S. Trustee have any authority to appoint a

5    committee at all.  Did it have to?  If it didn't have to, was

6    it permitted to.  If it was permitted to, obviously the

7    question becomes whether you should permit it to go forward.

8      On the point of fees, I just wanted to stand up also to

9    make a couple of points I think I made partially before.  But

10    there have been a lot of discussions about the millions of

11    dollars that might be imposed on the city, et cetera, and

12    Court approval of fee applications.

13      The city's view is that although the committee clearly

14    wants to try to impose those on the city, that if you look at

15    the Code and what's actually in Chapter 9, and what's in 904,

16    and what -- what the Court's power is, we don't think that the

17    city can be burdened with those fees.  We could agree to -- to

18    those.  But we have --

19          THE COURT:  Well, even that's a separate question

20    from whether the fees are subject to Court approval regardless

21    of who pays them.

22          MR. ELLMAN:  Right, exactly.  And I also wanted to

23    point out that even if the committee capped its fees at

24    whatever, even if the city agreed to pay those, much of the

25    cost of having another party in the case is not just the

1 committee's fees because when the committee does something if

2 it --

3          THE COURT:  Uh-huh.

4          MR. ELLMAN:  -- engages in litigation as you've

5 mentioned, that, you know, then my firm and other, you know,

6 professionals get involved, maybe other -- maybe the retiree

7 committee gets involved, we've agreed to pay their fees.  It

8 becomes a morass and very expensive even if the committee is

9 not charging the estate or it can't.

10      So I wanted to make that -- a record of that and also

11 that I think we had this in our papers, that we haven't agreed

12 to pay the committee's fees.  We made that clear to the U.S.

13 Trustee at the time of appointment as well.

14      And the only other thing I would mention, there has been

15 -- there was the notion it's a blank slate.  I think that came

16 from me, that there's a blank slate out there.  And I think

17 that's sort of true with the case law.  There is a case

18 obviously about disbanding a committee which I think is on

19 point.  It's not completely a blank slate, but there is not a

20 lot of case law out there.

21      But I think if you look at the Code, the Code is not a

22 blank slate, it's pretty clear.  And you have to read what it

23 says in it.  We -- there's a lot of effort to read beyond it

24 and well, this kind of fits in here.

25      I think a lot of this actually isn't that confusing in

1 | the Code.  It may not be perfect the way it's written, it may

2 | not be what everyone wants it to say or what think -- people

3 | think is logical or should say, but when Congress adopts 1102

4 | into -- in Chapter 9, it adopts what it says.

5 |     And I just don't see how we can -- that's not a blank

6 | slate, that's the -- the words on the page.  So we'd encourage

7 | the Court to do that and to grant our motion.  Thank you.

8 |         THE COURT:  All right.  Thank you.  The Court will

9 | take this under advisement and issue a written opinion.

10 |     (Court Adjourned at 10:49 a.m.)

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25

1

2

3

4

5

6

7   We certify that the foregoing is a correct transcript from the

8   electronic sound recording of the proceedings in the

9   above-entitled matter.

10

11   /s/Deborah L. Kremlick, CER-4872          Dated: 2-22-14
     Letrice Calloway
12

13

14

15

16

17

18

19

20

21

22

23

24

25