# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) **Re: Docket No. 2714** |

## OBJECTION TO MOTION OF THE DEBTOR FOR APPROVAL OF DISCLOSURE STATEMENT PROCEDURES

The Objectors[1] file this objection to the *Motion of the City of Detroit for Approval of Disclosure Statement Procedures* dated February 21, 2014 [Docket No. 2714] (the "Scheduling Motion"). In support of their objection, the Objectors respectfully state as follows:

**Preliminary Statement**

1. The Scheduling Motion asks this Court to establish deadlines for objecting to, and conducting a hearing on, the adequacy of the City's disclosure statement (the "Disclosure Statement"). But the City's skeletal filing is a disclosure statement in name only. The City's disclosure statement, including the plan of adjustment attached as an exhibit thereto, is incomplete by its own terms,

---

[1] Syncora Guarantee Inc. and Syncora Capital Assurance Inc., Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A., and Erste Europäische Pfandbrief- und Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A., a Luxembourg stock corporation (collectively, "EEPK"), FMS Wertmanagement Aör, and Michigan Counsel 25 of the American Federation of State, County and Municipal Employees, Sub-Chapter 98, City of Detroit Retirees join this objection.

failing to attach many, and necessary, non-public materials and documents referenced, incorporated and cited as exhibits therein.[2]

2. As the Federal Rules of Bankruptcy Procedure mandate, this Court can set deadlines for objecting to, and holding a hearing on, a disclosure statement only 28 days *after* the City provides its completed disclosure statement, at which point, the creditors and the Court can utilize such 28-day period to ascertain whether the completed filing complies with Bankruptcy Code section 1125.

3. Additionally, the City's proposed schedule precludes the possibility of any meaningful creditor discovery regarding the Disclosure Statement, and this Court has repeatedly and appropriately affirmed discovery comporting with basic due process will be available as part of the all important confirmation process. As a result, it is presently impossible for creditors and this Court to assess the adequacy of the Disclosure Statement for purposes of Bankruptcy Code section 1125, and, therefore, premature to schedule a hearing on the City's filing.

4. The City expresses urgency here because the end of the *current* emergency manager's term is approaching in September 2014. The goal of expeditiously resolving bankruptcy cases does not trump the absolute obligation to

---

[2] To be clear, should the City continue to pursue its litigation strategy while only paying lip-service to settlement discussions and the mediation process, the Objectors are ready to begin preparation for their day in court through discovery, objections, and trial on a reasonable time period consistent with the very substantial amounts at issue in this case and the requirements of due process. However, the Objectors continue to invite the voluntary provision of meaningful information by the City now, in advance of formal discovery, which could provide a platform for informed negotiations that may lead to consensus, a subject the City nods to, but has not seriously pursued to date.

provide more than a schematic of a plan. September 2014 is seven months away, providing ample time to fill in the many holes in the Disclosure Statement. No consensus has been reached among the City and <u>any</u> key creditor group, and — despite the City's rhetoric about "progress" being made in negotiations — the mediation process has yet to bear fruit — another by-product of the City's view that stakeholders are on a "need to know" basis only. The City is rushing to certain all-out disclosure statement and confirmation litigation, which will not best serve its citizens or creditors. While the Objectors share the City's desire to reach a consensual plan expeditiously, the proposed schedule will not expedite that result, and only will frustrate attempts to achieve that goal further by denying creditors the facts they need to evaluate the plan and plan disclosure and unduly increasing the cost of proceedings.

5. The Scheduling Motion should therefore be denied, and a schedule on the disclosure statement should only be set once the City files a completed disclosure statement and should provide adequate time for creditors to engage in discovery to evaluate the disclosure and frame meaningful objections as appropriate.

## **Background**

6. On February 21, 2014, the City of Detroit (the "<u>City</u>") filed its Plan for the Adjustment of Debts of the City of Detroit (the "<u>Plan</u>") [Doc. No. 2708],

Disclosure Statement [Doc No. 2709], Motion for Approval of Disclosure Statement [Doc. No. 2713], and the Scheduling Motion [Doc. No. 2714].

7. According to the City, its "Disclosure Statement contains, among other things, descriptions and summaries of provisions of the Plan" and "[t]he summaries of the Plan and other documents contained in this Disclosure Statement are qualified by reference to the Plan itself." (Disclosure Statement p 2.) The Disclosure Statement contains numerous references to the Plan and Plan exhibits. Notably, though, the Plan is missing at least 32 identified exhibits — many of which are also referenced in the Disclosure Statement.

8. Prior to these filings, many of the City's creditors requested information and discovery relating to the City's settlements and assets. (*See, e.g., Motion of Creditors to Assess the Art Collection* [Doc. No. 1833]; *Motion of Objectors for Leave to Conduct Limited Discovery* [Doc. No. 1640]; *Motion of Syncora for Authority to Issue Document and Deposition Subpoenas under Rule 2004* [Doc. No. 1342].) However, the Court largely denied or limited the requests. To this day, the Court has not granted creditors leave to conduct significant discovery of the City.

9. In its Scheduling Motion, the City asks this Court to approve a Disclosure Statement objection deadline of March 26, 2014 at 4:00 p.m. Eastern Time and a hearing date for the Disclosure Statement of April 11, 2014.

(Scheduling Mot. ¶ 11.) The City claims that this timeline is necessary "to emerge from bankruptcy in a timely manner," which the City defines as prior to the expiration of the Emergency Manager's term in September of 2014. (*Id.* at ¶ 7-8.)

## Legal Standard

10. Rule 2002(b)[3] provides that parties shall have 28-days' notice of the time set for filing objections and holding a hearing on a motion to consider approval of a disclosure statement. *See* Bankr. R. Fed. P. 2002(b). Similarly, Rule 3017(a) provides that, "[a]fter a disclosure statement is filed in accordance with Rule 3016(b), the court shall hold a hearing on at least 28 days' notice to the debtor, creditors . . . and other parties in interest as provided in Rule 2002 to consider the disclosure statement and any objections or modifications thereto." Bankr. R. Fed. P. 3017(a). Rule 3016(b) describes a disclosure statement as one that is filed under section 1125 of the Bankruptcy Code.

11. As both these rules make clear, the disclosure statement that a debtor files pursuant to these rules must bear some semblance to the document required by section 1125 — *i.e.*, one that provides "adequate information," as that term is defined by the Bankruptcy Code. *See* 11 U.S.C § 1125(a)[4]. Adequate information is "information of a kind, and in sufficient detail, as far as is reasonably practicable

---

[3] Made applicable in chapter 9 cases by Rule 3017.

[4] Made applicable in chapter 9 cases by § 901(a).

in light of the nature and history of the debtor . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . ." *Id.* Moreover, where, as here, a debtor purports to include and disclose such information, but, in fact, does not, the parties and this Court are incapable of assessing the Disclosure Statement's adequacy for purposes of section 1125(a) and, until they are, the 28-day notice period should not begin to run.

## Argument

**I. The Bankruptcy Court Should Not Schedule a Hearing on the Disclosure Statement Until the City Files a Complete Statement and the Creditors are Permitted to Conduct Discovery.**

12. The Scheduling Motion seeks to set a deadline for objecting to, and holding a hearing on, the Disclosure Statement. The motion, however, is premature. The City has not yet filed its complete statement and creditors have not obtained any discovery regarding the statement or the accompanying plan. Until this occurs, the 28-day period for objecting to, and holding a hearing on, the Disclosure Statement should not begin to run. And much work remains for the City to develop any consensus around its Disclosure Statement and Plan.

**A. The City's Filing is Facially Incomplete, Effectively Prohibiting Any Parties and this Court from Assessing its Adequacy**

13. Even a cursory review of the Disclosure Statement reveals that the filing is grossly incomplete - by its own terms. Much of the content it does contain

6

is insufficient and the Plan attached thereto is missing at least 32 exhibits—all of which are critical to the Plan and many of which are referenced directly in the Disclosure Statement. While the Objectors recognize that disclosure statements are often filed with missing information that is later supplemented, the scope and relevance of the omissions in the City's filings are so vast and material as to prevent creditors and this Court from making any reasonable assessment as to the adequacy of the disclosure.

14. Exhibit A hereto contains a complete list of the exhibits and documents that the City references in, and purports to attach to, its Plan and Disclosure Statement that are absent from its filings. Among these missing documents are those the City claims are exhibits but which it fails to attach:

| MISSING EXHIBITS | |
|---|---|
| **Exhibit** | **Document** |
| I.A.62 | Form of Detroit VEBA Trust Agreement |
| I.A.64 | Schedule of DIA Assets |
| I.A.71 | Form of DIA Settlement Documents |
| I.A.119 | Principal Terms of Exit Facility |
| I.A.140 | Material Terms Related to GRS Hybrid Pension Formula |
| I.A.161 | Form of New B Notes Documents |
| I.A.162 | New B Notes Valuation |
| I.A.163 | Principal Terms of New C Notes |
| I.A.164 | Form of New C Notes Documents |
| I.A.165 | Form of New DWSD Bond Documents |
| I.A.167 | Form of New DWSD Revolving Bond Documents |
| I.A.169 | Form of New Existing Rate DWSD Bond Documents |
| I.A.171 | Form of New Existing Rate GLWA Bond Documents |
| I.A.173 | Form of New GLWA Bond Documents |

| I.A.174 | Principal Terms of New GLWA Bonds |
| --- | --- |
| I.A.175 | Form of New GLWA Revolving Bond Documents |
| I.A.182.b. | Form of OPEB Claims Note |
| I.A.195 | Material Terms Related to PFRS Hybrid Pension Formula |
| I.A.201 | Form of Plan COP Settlement Documents |
| I.A.203 | Form of Plan GRS Settlement Documents |
| I.A.205 | Form of Plan PFRS Settlement Documents |
| I.A.206 | Principal Terms of Plan UTGO Notes |
| I.A.207 | Form of Plan UTGO Note |
| I.A.220 | Principal Terms of Retiree Health Care Settlement Agreement |
| II.B.3.t.i | Schedule of Reductions to Allowed PFRS Claims and Related Allowed OPEB Claims |
| II.B.3.t.ii.A | Schedule of Payments and Sources of Payments for Modified PFRS Pension Benefits |
| II.B.3.u.i | Schedule of Reductions to Allowed GRS Claims and Related Allowed OPEB Claims |
| II.B.3.u.ii.A | Schedule of Payments and Sources of Payments for Modified GRS Pension Benefits |
| II.B.3.u.ii.D | Reduction Formula for Participants in Annuity Savings Fund Accounts |
| Exhibit II.D.5 | Schedule of Postpetition Collective Bargaining Agreements |
| Exhibit II.D.6 | Executory Contracts and Unexpired Leases to be Rejected |
| Exhibit III.D.2 | Retained Causes of Action |

15. The following are descriptions of just some of the examples of the critical missing documents. In each instance, the missing disclosure is an important part of the Plan, is or may be the subject of much controversy, and directly and materially impacts the recoveries of certain classes of creditors and considerations of all creditors who must consider whether to accept the skewed allocation of the limited assets offered by the Plan or to reject the Plan and oppose

confirmation on the grounds, among others, that the Plan unfairly discriminates between creditors and is not fair and equitable to them.

16. **COP Swap Claims**. Section V of the Disclosure Statement provides that the COPS Swap Claims "is the subject of continuing discussions between the City and the COP Swap Counterparties, is yet to be determined and will be supplied shortly." (Disclosure Statement Sec. V at p. 82). Thus, the Disclosure Statement is incomplete as to the treatment of COP Swap Claims and the effect of such treatment on other creditors.

17. **DIA Settlement.** The Plan and the Disclosure Statement discuss the "DIA Settlement." Article VI of the Disclosure Statement, which describes the "Means for Implementation of the Plan," explains that the DIA is one of the means for implementing the Plan:

> On the Effective Date, the City and the DIA Funding Parties will enter into the DIA Settlement, pursuant to which (1) the DIA Funding Parties have committed to assist in the funding of the City's restructured legacy pension obligations and (2) the City has agreed to enter into certain transactions that will cause the DIA Assets to remain in the City in perpetuity and to otherwise make the DIA Assets available for the benefit of the residents of the City and the Counties and the citizens of the State.

(Disclosure Statement Sec. VI.G.) The Disclosure Statement states that "[t]he definitive documentation governing the DIA Settlement is attached hereto as

Exhibit I.A.71" but no exhibit exists. (*Id.*) The definitive documentation is not attached to the Plan either.

18. **Retiree Health Care Settlement.** In accordance with a February 14, 2014 settlement agreement, the City and certain retirees agreed to modify retiree health benefits set forth in the 2014 Retiree Health Care Plan. (Plan p 17.) Under this agreement, the City has apparently agreed to, among other things, provide additional stipend amounts during a portion of 2014 to Non-Medicare eligible Retirees and Medicare-eligible retirees. The Plan and Disclosure Statement claim that the complete terms and conditions of the settlement agreement are set forth in Exhibit I.A.220 to the Plan. (Disclosure Statement VI.M.) This exhibit, however, is not attached to the Plan or the Disclosure Statement.

19. **Form of Detroit VEBA Trust Agreement.** The Plan states that the Detroit VEBA (voluntary employees beneficiary association) was established to provide benefits such health care, life insurance, and welfare to Detroit VEBA Beneficiaries. (Art. II.B.3.t.2.H.; Disclosure Statement V.B, p 16.) The Plan provides some additional high-level detail regarding the VEBA, but ultimately notes that the specific terms and benefits of the VEBA structure are contained in Exhibit I.A.62 to the Plan. Again though, this exhibit is not attached to any of the City's filings.

20. **Form of Plan PFRS and GRS Settlement Documents.** The Plan and Disclosure Statement state that the "Plan GRS Settlement" is the comprehensive settlement regarding GRS Pension Claims on terms and conditions described in Section II.B.3.u.ii.I and "definitively set forth" in the Plan GRS Settlement Documents. (Plan Art.I.A.202; Disclosure Statement VI.D-E.) However, these documents are not attached. The same is true for the "Plan PFRS Settlement" documents.

21. **Schedule of Payments and Sources of Payments for Modified GRS and PFRS Pension Benefits.** The Plan also describes the annual contributions that will be made to PFRS and GRS. According to the Plan, the exclusive source for these contributions, which are purportedly identified in Exhibit II.B.3.t.ii.A and Exhibit II.B.3.u.ii.A, will be the DIA Proceeds. Yet, like Plan PFRS and GRS Settlement Documents, the Schedules of Payments are not actually attached to the City's filings.

22. **Form of Plan COP Settlement Documents.** The Plan provides that the "'Plan COP Settlement' means the comprehensive settlement regarding COP Claims on terms and conditions described in Section II.B.3.s.iii.A and definitively set forth in the Plan COP Settlement Documents." (Art. I.A.200.) Though the Plan states that settling claimants can receive 40% of the aggregate unpaid principal amount of their COPs, it provides no further terms, including regarding

11

which claims the settlement may release. (Plan Art. IV.C.3.s.) The "terms" of this settlement are "definitively set forth" in an exhibit that is nowhere attached to the City's filings. This provides no meaningful way for COPs holders and other creditors to understand the meaning or value of this settlement.

23. In short, the City's filed Disclosure Statement is a placeholder, shell document—not the "disclosure statement" the bankruptcy rules contemplate triggering a disclosure statement approval process.

**B. The Proposed Schedule Does Not Permit Adequate Discovery**

24. The omissions in the City's Disclosure Statement are further compounded by the fact that the City's proposed schedule precludes any opportunity for creditors to conduct meaningful discovery regarding the adequacy of its Disclosure Statement. The 120 page Plan and 440 page Disclosure Statement emphasize the complexity of the City's financial structure, assets, liabilities and issues. Thus far, creditors have been granted no discovery regarding the City's assets and proposed treatment of creditors. Because the assessment of the adequacy of the Disclosure Statement is the first step in the Plan confirmation process, creditors should be afforded adequate discovery before any hearing on the Disclosure Statement is scheduled. Though much of the information missing from the Disclosure Statement is apparent based on the face of the document, without discovery, the creditors cannot determine for certain all of the information that is

missing. Yet, as it stands, twenty-eight days is not sufficient time to conduct meaningful discovery of the extremely complex and opaque Plan proposed by the City.

25. At the hearing on the Art Motion, this Court stated that, "[w]hen a plan is filed, we'll have a conference, and we'll figure out an objection schedule and a briefing schedule, and we'll figure out whether the objections should be divided into the factual ones and the legal ones much like we did for eligibility." (Jan. 22, 2014 Hr'g Tr. at 23:22-23:2.) Here, the City's proposed schedule would make it practically impossible to assess, much less investigate through discovery, the factual issues attendant to creditors' objections to the City's Disclosure Statement and, ultimately, the Plan.

26. Additionally, this Court's comments have plainly and rightly manifested an intention to engage in the Plan confirmation process deliberately and with care. In denying the City's motion to approve the Forbearance Agreement, this Court stated that it planned to "carefully scrutinize the feasibility of any plan of adjustment." (Jan. 16, 2014 Hr'g Tr. at 21:2-3.) Scheduling a premature hearing on the City's incomplete Disclosure Statement now would be inconsistent with this Court's stated desire, and with the best interests of creditors and the City's residents, because it would result in a hasty, poorly-informed start to the Plan confirmation process. And a lack of clarity now will undoubtedly both hinder

the prospects of true consensus emerging, and, in the absence of consensus, make confirmation litigation messier, more expensive and more time consuming than it needs to be.[5]

### C. The City's Insistence on a Hurried Process Is Not Warranted and Is Counterproductive

27. The City opens its Scheduling Motion by saying that it is urgent to start the Plan confirmation process and describing purported progress in negotiations and communications with creditors. The City states that,

> "It is the City's view that all of the material issues affecting the City's restructuring have been discussed with its key creditors and key potential funders of the Plan, that progress has been made in its efforts to resolve these material issues by consensus or by Bankruptcy Court review and that it is now necessary to begin the Plan confirmation process in order to enable the City to emerge from bankruptcy in a timely manner."

(Scheduling Mot. ¶ 7.) The City additionally states that its objective is to emerge from bankruptcy "at or near" the end of the emergency manager's term in September 2014. (*Id.*)

---

[5] In this regard, it is particularly disingenuous for the City, which has resisted attempts at full discovery throughout this proceeding, and which characteristically provides no mechanism for conducting discovery in the Scheduling Motion, to insert a proposed requirement that objectors attach to any objection the evidence, both testimonial and documentary, that supports the objection. (*See* Scheduling Motion Proposed Order ¶ 10.a.) The Objectors read this language in the Proposed Order as possibly imposing a requirement on objecting parties to file evidentiary support in any Disclosure Statement objections. This artificial requirement appears to be overreaching by the City, given that objections to approval of the Disclosure Statement may be purely legal in nature (i.e. failure to provide adequate information, failure to comply with 943(b) requirements, patently unconfirmable) or based on the four-corners of the Disclosure Statement and/or Plan language. It is particularly inequitable to require Objectors to interpose evidentiary support for Disclosure Statement responses or objections given that the proposed Scheduling Order does not provide for discovery prior to the response deadline regarding the Disclosure Statement.

14

28. The City has set an artificial—and ill-advised—deadline. The City's characterization of consensus in these cases to date is false. The City is using its deadline to pressure stakeholders and the Court into a hasty process which, in the end, may not even produce a confirmable Plan.

29. P.A. 436, the statute governing the appointment of the Emergency Manager, does not require that the City Council terminate Mr. Orr's appointment after 18 months. The statute <u>permits</u> the removal of the Emergency Manager with a two-thirds vote of the City Council, but does not require his removal. MCL 141.1549(6)(c). Even if removed in September 2014, however, P.A. 436 gives the governor the authority to appoint a new Emergency Manager. MCL 141.1564 ("The governor may, upon his or her own initiative . . . determine that the financial conditions of a local government have not been corrected in a sustainable fashion as required under section 9(7) and appoint a new emergency manager."). Accordingly, the end of Mr. Orr's term is not a limit to this chapter 9 process.

30. The reality is that the City has made virtually no progress in resolving any key issues with its key creditors. Indeed, after nearly 7 months in chapter 9, no consensus exists. The City continues to avoid transparency. The City's attempts to date to "make progress" via "Bankruptcy Court review" have met with significant creditor objections, and continued like attempts will further delay the City's emergence from bankruptcy and actual progress. To be sure, the City's

15

proposed short runway to a disclosure statement hearing will jeopardize its own Plan confirmation prospects and negatively impact its citizens.

## **Conclusion**

31. For the foregoing reasons, the Objectors respectfully request that the Court deny the City's Scheduling Motion.

[*Remainder of this page intentionally left blank*]

Dated: February 24, 2014  /s/ *Ryan Blaine Bennett*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

David A. Agay
Joshua Gadharf
MCDONALD HOPKINS LLC
39533 Woodward Avenue
Bloomfield Hills, Michigan 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*

By: */s/ Vincent J. Marriott, III*
Howard S. Sher
**JACOB & WEINGARTEN, P.C.**
Somerset Place
2301 W. Big Beaver Road, Suite 777
Troy, Michigan 48084
Telephone: (248) 649-1200
Facsimile: (248) 649-2920
E-mail: howard@jacobweingarten.com

-and-

Vincent J. Marriott, III
**BALLARD SPAHR LLP**
1735 Market Street, 51st Flr.
Philadelphia, PA 19103
Phone: 215.864.8236
Fax: 215.864.9762

17

13-53846-tjt    Doc 2730    Filed 02/24/14    Entered 02/24/14 16:41:53    Page 17 of 19

Email: marriott@ballardspahr.com

-and-

Matthew G. Summers
**BALLARD SPAHR LLP**
919 North Market Street, 11th Floor
Wilmington, Delaware 19801
Telephone: (302) 252-4428
Facsimile: (410) 361-8930
E-mail: summersm@ballardspahr.com

*Attorneys for Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A., and Erste Europäische Pfandbrief- und Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A.*

By: */s/ Rick L. Frimmer*
Rick L. Frimmer
Karen V. Newbury
Michael W. Ott
SCHIFF HARDIN, LLP
233 S. Wacker Drive, Suite 6600
Chicago, IL 60606
Telephone: (312) 258-5600
Facsimile: (312) 258-5600
E-mail: rfrimmer@schiffhardin.com
E-mail: knewbury@schiffhardin.com
E-mail: mott@schiffhardin.com

*Attorneys for FMS Wertmanagement AöR*

**LOWENSTEIN SANDLER LLP**
By: */s/ Sharon L. Levine*
Sharon L. Levine, Esq.
John K. Sherwood, Esq.
Philip J. Gross, Esq.
Keara M. Waldron, Esq.
65 Livingston Avenue

Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-6247 (Facsimile)
slevine@lowenstein.com
jsherwood@lowenstein.com
pgross@lowenstein.com
kwaldron@lowenstein.com

-and-

Herbert A. Sanders, Esq.
THE SANDERS LAW FIRM PC
615 Griswold St., Suite 913
Detroit, MI 48226
(313) 962-0099 (Telephone)
(313) 962-0044 (Facsimile)
hsanders@miafscme.org

-and-

Richard G. Mack, Jr., Esq.
MILLER COHEN PLC
600 West Lafayette Boulevard
4th Floor
Detroit, MI 48226-3191

*Counsel to Michigan Council 25 of the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO and Sub-Chapter 98, City of Detroit Retirees*