# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| | ) | Hon. Steven W. Rhodes |
| Debtor. | ) | |

## OBJECTION OF THE DETROIT RETIREMENT SYSTEMS TO THE MOTION OF THE CITY OF DETROIT FOR APPROVAL OF DISCLOSURE STATEMENT PROCEDURES

The Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit (collectively, the "Retirement Systems") hereby object to the Motion filed by the City of Detroit (the "City") entitled *Motion of the City of Detroit for Approval of Disclosure Statement Procedures* [Dkt. No. 2714] (the "Motion"), and in support hereof, state as follows:

### Preliminary Statement

1. The Motion proposes (among other things) a deadline of March 26, 2014 for parties to file any objections to the *Disclosure Statement with Respect to Plan for the Adjustment of Debts of the City of Detroit* [Dkt. No. 2709] (the "Disclosure Statement"). However, in light of the current state of this matter, the setting of any deadlines and hearings with respect to the Disclosure Statement is

entirely premature. The Retirement Systems note in this regard the following, without limitation:

- A vast population of critical documents are referenced in the Disclosure Statement as being exhibits to the *Plan for the Adjustment of Debts of the City of Detroit* [Dkt. No. 2708] (the "<u>Plan</u>") or are otherwise referred to and defined as the "<u>Plan Supplement Documents</u>". However, only a small fraction of those documents is actually attached to and filed with the current Plan. Indeed, there appear to be approximately ***32 omitted exhibits***. Among the most critical omissions, the Plan does not include the proposed settlements with the two Retirement Systems, the proposed DIA Settlement, and a term sheet for the State Contribution. Also missing are any loan documents for the Exit Facility. Not even the names of the Exit Facility Agent or lenders are included, much less a term sheet. Moreover, the City appears to propose to produce most of the missing documents simply "prior to the Confirmation Hearing" or possibly "seven calendar days prior to the Voting Deadline." *See* Disclosure Statement preamble. The Disclosure Statement also describes numerous potential settlements and transactions that have not occurred and may or may not occur, such as the DWSD Transaction to create a regional water and sewer district, and the possible monetization of the parking income. In short, the Disclosure Statement is so patently incomplete that it would serve no purpose to begin scheduling an objection deadline or a hearing with respect to this document-in-progress.

- The Plan has numerous "holes" in it, items yet to be determined, and does not reflect any material agreements with significant creditor constituencies. For example, the treatment of the COP Swap Claims is simply listed as "TBD." In that regard, at paragraph 7 of the Motion, the City indicates its expectation "that negotiations with important creditor groups will continue to be productive and that [the City] will be able to secure significant and important creditor support for the Plan ***in the next stage of this case***." (Emphasis added). As such, it is clear that the Plan, and thus the Disclosure Statement, are "moving targets" still being developed and likely to be amended.

- 2 -
200287521.4 14893/165083
13-53846-tjt    Doc 2735    Filed 02/24/14    Entered 02/24/14 19:03:58    Page 2 of 14

2. This Plan is not yet ready for prime-time consideration. Although it was filed before this Court's March 1 deadline, it is not ripe for the setting of objection deadlines and hearing dates.

3. The Retirement Systems submit that it is simply not feasible to set an objection deadline and hearing date with respect to the Disclosure Statement (as may be amended) until, at a minimum: (a) all of the material omitted Plan exhibits and any other essential Plan Supplement Documents have been produced and parties have had a reasonable opportunity to examine them; (b) amended versions of the Plan and Disclosure Statement have been filed that reflect sufficient development of various proposals and information such that the "moving target" problem is minimized; and (c) the Retirement Systems and other parties in interest have had a fair opportunity to conduct appropriate discovery with respect to the Plan Supplement Documents and the Disclosure Statement as amended.

4. As discussed below, the Retirement Systems also assert several other important objections to the Motion.

200287521.4 14893/165083
13-53846-tjt    Doc 2735    Filed 02/24/14    Entered 02/24/14 19:03:58    Page 3 of 14

## Objection

**I. Under The Circumstances, Setting An Objection Deadline And Hearing Date With Respect To The Disclosure Statement Is Premature.**

**A. Until documents are produced and discovery conducted, an appropriate objection deadline and hearing date cannot be determined.**

5. A primary issue in considering whether a disclosure statement should be approved is whether it contains "adequate information" under section 1125(a) of the Bankruptcy Code - - *i.e.*, "information of a kind, and in sufficient detail . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a).

6. With respect to the instant Disclosure Statement, however, the lack of detailed information is so blatant and self-evident that the pretense of having a hearing to consider the issue of adequate information is itself unwarranted.

7. The Disclosure Statement makes reference to a vast population of critical ancillary Plan Supplement Documents that are supposed to be exhibits to the Plan or are otherwise referred to in the Disclosure Statement. Approximately *32 exhibits are missing*. Indeed, the most critical of those documents -- including the proposed settlements with the Retirement Systems, the DIA Settlement, and the Exit Facility documents – have not been attached or filed with the current Plan. Moreover, the City appears to propose to produce most of those documents simply

"prior to the Confirmation Hearing" or possibly "seven calendar days prior to the Voting Deadline." *See* Disclosure Statement preamble. Thus, it does not appear that the City has any intention of providing those documents any time soon, in time for creditors to review them in the context of the Disclosure Statement.

8. Obtaining and reviewing those omitted documents will presumably be important to the Retirement Systems and other parties in interest in making a determination as to whether the Disclosure Statement contains adequate information in accordance with section 1125(a) of the Bankruptcy Code.

9. The Disclosure Statement also references, without detail, numerous potential settlements and transactions that have not occurred and may or may not occur. For example, no settlement agreements have, in fact, been reached with the Retirement Systems, but the Plan and Disclosure Statement imply that agreement on the terms of the GRS Settlement and PFRS Settlement have in fact been negotiated. A possible DWSD Transaction is identified, but no agreement has been reached on any such deal.

10. Upon receipt of the Plan Supplement Documents, it is anticipated that deposition discovery will be necessary to further determine the adequacy of the information contained in the Disclosure Statement (as may be amended), including the limited disclosures regarding the formulas to be applied to the Pension Claims and their actual impact on payments to current and future retirees. Such discovery

will undoubtedly require coordination among a large group of creditor constituencies seeking similar discovery. Under the circumstances, at present, it is impossible to know when this process may be completed and when parties will be in a position to interpose relevant objections to the Disclosure Statement.

11. Based on the foregoing, the Retirement Systems submit that the appropriate course of action would be for the Court to (i) set a date for the production of documents by the City to the Retirement Systems and other parties in interest, and (ii) schedule a status conference thereafter to assess the status of such information production, the status of amendments and further development of the Disclosure Statement and Plan, and the appropriate time line for discovery and a hearing date.

### B. The apparent expectation that the Plan and Disclosure Statement will be significantly amended also militates against setting an objection deadline and hearing date with respect to this version of the Disclosure Statement.

12. While the City indicates that it has made progress in its negotiations with creditors, the Plan does not reflect any material agreements with significant creditor constituencies.

13. However, in paragraph 7 of the Motion, the City states that it expects "that negotiations with important creditor groups will continue to be productive and that it will be able to secure significant and important creditor support for the Plan *in the next stage of this case*." (Emphasis added). Thus, the City essentially

200287521.4 14893/165083
13-53846-tjt    Doc 2735    Filed 02/24/14    Entered 02/24/14 19:03:58    Page 6 of 14

concedes that it expects or hopes to achieve agreements with significant creditor constituencies in the future, which presumably would require amendment of the Plan and Disclosure Statement.[1]

14. If the Plan and Disclosure Statement are still being developed and are subject to significant amendment, and thus are "moving targets," the Retirement Systems submit that setting an objection deadline and hearing date for the current Disclosure Statement serves no useful purpose. The fact that a Plan and Disclosure Statement were filed by the March 1 deadline does not mean they are ready for consideration.

## II. The Proposed Requirement That Objecting Parties Submit Supporting Evidence For Their Objections Is Unnecessary And Inappropriate.

15. In its proposed Disclosure Statement Objection Procedures at paragraph 20 of the Motion, the City proposes, among other things, that any objections to the Disclosure Statement "be accompanied by the objecting parties' evidentiary support for its objection."

16. Assuming that an objection is made that there is inadequate information, the Retirement Systems respectfully do not understand how they

---

[1] Indeed, the Emergency Manager's spokesman, Bill Nowling, was quoted in an article just one hour after the release of the Plan to the public, saying "the exact impact to a retiree's monthly pension check may not be immediately known because changes to the retirement benefits are still the subject of mediation negotiations between the city and its two pension funds, labor unions and retiree groups." *Where Does Detroit's Chapter 9 Go From Here?,* The Detroit News, February 21, 2014. See –
http://www.detroitnews.com/article/20140221/METRO01/302210093#ixzz2u0haOSfD .

- 7 -
200287521.4 14893/165083
13-53846-tjt    Doc 2735    Filed 02/24/14    Entered 02/24/14 19:03:58    Page 7 of 14

could be required to produce evidence of an omission. This requirement seems highly illogical. Moreover, this requirement turns the burden of proof in this matter on its head: it is *the City's* burden to provide adequate information in the first instance.

### III. The Urgency Of Quality Of Life Improvements In The City Cannot Be Used As Justification For Illogical Deadlines.

17. Notwithstanding that the Motion contemplates requiring creditors to go through the motions of filing objections and appearing at a hearing with respect to a Disclosure Statement that is bound to substantially change, the City appears to justify this convoluted process by claiming that quality of life improvements for the citizens of the City will be delayed if the Plan and Disclosure Statement process does not proceed. *See* Motion at ¶ 8.

18. This statement is not without significant irony. Back in November 2013, the City filed: (a) a motion to establish a public lighting authority and to fund that Authority; and (b) a motion to obtain postpetition secured financing, including $125,000,000 of secured financing called a "Quality of Life Loan" to begin implementing quality of life improvements in the City. At that time, in response to certain creditor objections asserting that such initiatives should be considered only in the context of an overall restructuring plan, the City stated that such initiatives could not wait and did not need to be linked to the Plan and Disclosure Statement process.

- 8 -

19. As the Court will recall, the City's motion for postpetition financing was denied - - not because of the Quality of Life Loan component, but only because of the loan component that was proposed to be dedicated to funding a settlement with the Swap counterparties that the Court did not approve.[2]

20. Oddly, notwithstanding the City's insistence on the urgency of commencing the quality of life improvements in the City, in the past month, the City has not submitted to the Court a revised financing package to fund the Quality of Life Loan. Instead, the City now appears to be trying to link the Quality of Life Loan to the Plan and Disclosure Statement process to artificially create urgency around the confirmation of the City's grossly incomplete Plan. Even so, neither the Plan nor the Disclosure Statement even identifies the proposed Exit Facility Agent, much less the term sheet or loan documentation for the Exit Facility. Any Quality of Life Loan now appears to be far from ready for consideration -- or else the City is simply choosing to keep everyone in the dark while planning to spring the terms of the Exit Facility or other loan on its creditors in some last-minute procedure.

---

[2] Indeed, to the best of the Retirement Systems' knowledge, the annual income tax revenues of the City which were to serve as collateral for the Swap settlement loan, remain available to serve as collateral for the Quality of Life Loan.

200287521.4 14893/165083

## IV. Mr. Orr's Potential Term Expiration Should Also Not Be Used As Justification For An Illogical Time Line.

21. The City also suggests that the urgency of Plan confirmation, as well as the interests and due process rights of (among others) the approximately 32,000 holders of retirement benefits, should be subject to Mr. Orr's time line for exiting as the Emergency Manager in September 2014. *See* Motion at ¶ 7.

22. Without further explanation by the City, it seems rather absurd and objectionable to suggest that the rights and interests of the City's retirees, active employees, and other residents should be held hostage to Mr. Orr's personal tenure in office.

23. Implicit in this argument by the City is the apparent contention that the City may not be able to continue with its Chapter 9 bankruptcy case if and when Mr. Orr's 18-month term has ended, assuming the Mayor and City Council resolve to terminate his role at that time pursuant to section 9(c) of Michigan's Local Financial Stability and Choice Act ("PA 436"). The Retirement Systems submit that it is unclear what may occur in September 2014 under PA 436 in this regard. If the City and the State are willing to state and adhere to the position that, if the Mayor and City Council resolve to terminate the Emergency Manager's role in September at the end of his 18th month in office, control of the City will unequivocally return to the Mayor and City Council, then the City's concern about this deadline may have some grounds (regardless of one's views on the desirability

of the Chapter 9 case or the existence of an Emergency Manager). If, however, the City and the State believe that the Governor could seamlessly appoint another emergency manager under certain provisions of PA 436 and the new emergency manager could simply authorize the Emergency Manager's current restructuring team to continue to prosecute this Chapter 9 bankruptcy case, then Mr. Orr's potential term expiration as a justification for urgency in this case is an entirely artificial deadline.[3]

## Conclusion

24. Based on the foregoing, the Retirement Systems submit that: (i) the Motion should be denied; and (ii) in lieu of the procedures proposed in the Motion, the Court should set a date and time (a) for the production of the Plan Supplement Documents by the City to the Retirement Systems and other parties-in-interest, and (b) for a status conference to discuss the status of said document production and the status of the Plan and Disclosure Statement and any amendments thereto, and

---

[3] Of course, this is not to say that this case should not proceed with a sense of urgency (and it certainly has). It is only to say that the stated basis for any aggressive deadlines should be grounded in relevant considerations and tempered by the due process rights of parties in interest, including the beneficiaries of the Retirement Systems.

to assess the proper time line for further discovery and for an objection deadline and hearing date with respect to the Disclosure Statement and Plan as amended.

CLARK HILL PLC


/s/ Robert D. Gordon
Robert D. Gordon (P48627)
Shannon L. Deeby (P60242)
151 South Old Woodward Avenue
Suite 200
Birmingham, Michigan 48009
Telephone: (248) 988-5882
Facsimile: (248) 988-2502
rgordon@clarkhill.com
sdeeby@clarkhill.com

Dated: February 24, 2014

*Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*

# EXHIBIT 1

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| | ) | Hon. Steven W. Rhodes |
| Debtor. | ) | |

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 24, 2014, the ***Objection of the Detroit Retirement Systems to the Motion of the City of Detroit for Approval of Disclosure Statement Procedures*** was filed using the Court's CM/ECF system, which CM/ECF system will send notification of such filing to all parties of record.

        CLARK HILL PLC

        /s/ Robert D. Gordon
        Robert D. Gordon (P48627)
        151 South Old Woodward Avenue, Suite 200
        Birmingham, Michigan 48009
        Telephone: (248) 988-5882
        Facsimile: (248) 988-2502
        rgordon@clarkhill.com

Dated: February 24, 2014       *Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*