## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|                              |     |                        |
|------------------------------|-----|------------------------|
|                              | )   |                        |
| In re                        | )   | Chapter 9              |
|                              | )   |                        |
| CITY OF DETROIT, MICHIGAN,   | )   | Case No. 13-53846      |
|                              | )   |                        |
| Debtor.                      | )   | Hon. Steven W. Rhodes  |
|                              | )   |                        |
|                              | )   |                        |

### OBJECTION OF THE OFFICIAL COMMITTEE OF RETIREES TO MOTION OF THE CITY OF DETROIT FOR APPROVAL OF DISCLOSURE STATEMENT PROCEDURES AND RESPONSE TO THE COURT'S ORDER ESTABLISHING PROCEDURES, DEADLINES AND HEARING DATES RELATING TO THE DEBTOR'S PLAN OF ADJUSTMENT

The Official Committee of Retirees (the "Committee") hereby by objects to the procedures proposed by the City of Detroit, Michigan (the "City") for approval of the Disclosure Statement With Respect to Plan for Adjustment of Debts of the City of Detroit (Docket No. 2709)(the "Disclosure Statement") and responds to the Court's Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment ("Court Procedures Order") (Docket No. 2727), which supersedes the City's motion. In support of its objection and response, the Committee respectfully states:

### PRELIMINARY STATEMENT

1. On Friday, February 21, 2014, the City filed its Plan of Adjustment for the Debts of the City of Detroit (Docket No. 2708) (the "Plan"), the Disclosure Statement, and the Motion for Approval of Disclosure Statement Procedures (the "Procedures Motion"). The City sought both expedited determination of the Procedures Motion in an *ex parte* motion and expedited determination of the adequacy of the Disclosure Statement in the Procedures Motion. The deadlines sought by the City are unreasonably short because the Disclosure Statement and Plan,

despite their length, are essentially still works in progress. Both documents are missing essential terms and key exhibits rendering it problematic for the Committee to properly formulate its disclosure statement or plan objections.

2.      The missing terms and exhibits specifically affecting the treatment of retirees include a mechanism for retiree voting, a mechanism for allowance of individual retiree claims for both voting and recovery purposes, the schedule of pension plan contributions for both pension plans, the settlement documents that provide funding for the pensions, and the formulae for reduction of both pension and other post employment claims ("OPEB") for restitution and mitigation purposes, respectively. In addition, there are no financial projections showing the plan contributions beyond ten years or a *pro forma* for the Detroit Water and Sewerage Department (a source of pension plan funding) with or without a transaction. Accordingly, the Committee joins with the other creditors in requesting that the deadline for objecting to the Disclosure Statement not begin to run until the terms of the Plan and Disclosure Statement are substantially more complete.

3.      The Committee's request for an extended timeline is also applicable to the Court Procedures Order. The Court Procedures Order extends the deadlines sought by City by only a few days and adds additional deadlines with respect to discovery and Plan objections. The Committee's experience with the Eligibility dispute leads to it agree that such deadlines should be set early in the process. However, the Committee suggests that the timeline for the overall confirmation process is far too short. Importantly from the Committee's perspective, the Court's tentative schedule does not take into account the claims allowance process and the retiree voting issues. The outcome of those issues will affect both the terms of the Plan as well as the substance of the Committee's Plan objections. For example, the Court's deadline for Plan objections

before the balloting has been completed and discovery will demand a more comprehensive protective objections that will necessarily include opposition to a cramdown and certain other retiree treatment related issues that might be obviated by acceptance of the Plan. The Committee requests that the Court reconsider its schedule.

4. The Committee is committed to continuing its good faith participation in the mediation process to resolve its issues with respect to the fair treatment of the retiree benefit promises and claims in the City's restructuring process. Although the parties in interest have been involved in the process for several months, the recently filed Plan does not have the support of the Committee or apparently any other creditor class. Obviously, the City cannot cram down a plan on all of its impaired creditors. Accordingly, the Committee believes that the deadlines in the Court Procedures Order should be extended to allow the negotiation process to continue in order to resolve the fundamental differences between the City and its key creditor constituencies before the parties are driven again into a total litigation mode.

### BASIS FOR THE RELIEF REQUESTED

5. The City filed its Plan and Disclosure Statement on February 21, 2104. The Disclosure Statement was not previewed to the Committee before it was filed.

6. A brief summary of the classification and treatment of the retiree classes will illustrate how critical the missing terms and documents are to the determination the adequacy of the Disclosure Statement under the standard of section 1125 of the Bankruptcy Code.

7. The Plan classifies the retirees into two classes--one for the retirees who are participants in the Police and Fire Fighters Retirement System ("PFRS") (Class 10), and one for the participants in the General Retirement Fund ("GRS") (Class 11). Each of these classes includes the retirees' claims for pension benefits and for OPEB. The OPEB claims are reduced in the Plan in accordance with an exhibit that is among the missing documents.

8.      The City proposes that the recovery for Class 10 pension claims is to be funded exclusively by the proceeds from what the City terms the DIA Settlement.   Although certain of the terms of the DIA settlement are briefly described in the Plan and Disclosure Statement, the settlement agreement is also one of the missing documents and the Committee has never seen an draft or an outline.   Similarly, the schedule of contributions to the PFRS pension referenced in the Plan treatment of Class 10 retirees is not yet included.   The OPEB claims are satisfied by the creation of VEBA to provide OPEB benefits to the existing and future retirees.   The funding for the VEBA is briefly described, but the important details of the future covered benefits and administration are not.

9.      If the holders of Class 10 claims accept the Plan and each holder elects to enter into a settlement with the State, the State will deposit up to $175,000,000 into the PFRS Plan, less an unspecified amount for those retirees who may fall below the federal poverty level, in exchange for a release of the State and other parties.   Neither the Plan nor Disclosure Statement explain what happens to State consideration if some holders of Class 10 elect to settle and others do not.   If the retirees in Class 10 reject the Plan due to dissatisfaction with either treatment of OPEB claims or Pension claims, both the State consideration and the DIA Settlement, which is conditioned upon the State contribution, apparently will not be available to fund the pension plans.   The City clearly has proposed that if the DIA Settlement is effectuated but one or more of the foundations default on their funding commitments, retiree benefits will be reduced. However, neither the Plan nor Disclosure Statement provide for alternative treatment or remedies for Class 10 in the event of a failure of the foundations to fund entirely or in part.

10.      The City proposes that the claims of GRS retirees in Class 11 are to be satisfied by funding through payments received by the City from Detroit Water and Sewerage Department

in accordance with a schedule that is not included in the Plan documents, and $50,000,000 in DIA Settlement proceeds through June 30, 2030. After June 30, 2023, the GRS pension will be funded by DIA proceeds of approximately $195,000,000, plus unspecified City contributions. The Plan provides for the same settlement and release election process for both Classes 10 and 11. However, the same settlement and funding failure issues exist for Class 11 and remain unresolved. The Plan treatment for GRS retirees also includes restitution of the alleged excess allocations to the GRS Annuity Savings Fund and redistribution to other GRS beneficiaries pursuant to a formula, which is not included in the Plan or described in the Disclosure Statement.

11. As demonstrated by the description above, the votes of retirees in Classes 10 and 11 are critical for determining the treatment of their claims. However, as indicted earlier there is no mechanism in the Disclosure Statement or Plan for determining each retiree's claim or for voting that claim. A discussion about the mechanism for retiree voting did not even begin until a few hours before the Plan and Disclosure Statement were filed.

12. In summary, the missing terms and exhibits relating exclusively to the treatment of retiree claims include:

- The terms and conditions of the DIA Settlement,
- The exhibit evidencing the reduction to OPEB claims,
- The schedule of annual contributions to the GRS and PFRS plans from the effective date of the Plan through June 30, 2023,
- Projections of post June 20, 2023 contributions to both GRS and PFRS,
- The proposed modifications to retiree benefits if the foundations default,
- Treatment of retiree benefits and the DIA assets if retirees vote against the Plan or the DIA settlement is not consummated,
- The formulae for collecting alleged excess allocations from Annuity Saving Fund Accounts and increasing other GRS retiree benefits thereby,
- The method of calculating State consideration for those retirees who will fall below some percentage of the federal poverty level as a result of the City's cuts in benefits,

- The treatment of State settlement proceeds if not all retirees elect the settlement,
- A pro forma for DWSD after a transaction or without one, and
- The method for determining retiree claims and a mechanism for voting on the Plan.

The terms and exhibits listed here not supplemental to the Plan and Disclosure Statement; they are integral to treatment of the largest creditor constituency, confirmability and feasibility.

13.     Section 1125 of the Bankruptcy Code governing the standard for approval of a disclosure statement is applicable to Chapter 9 cases by virtue of Section 901 of the Code. Section 1125 provides that acceptances or rejection of a plan may not be solicited unless at or before the solicitation "there is transmitted to such hold the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. §1125(b).   "Adequate information" means "information of a kind, and in sufficient detail …that would enable such an investor of the relevant class to make an informed judgment about the plan…. 11 U.S.C. §1125(a)(1).   In this case, the Disclosure Statement lacks adequate information for the solicitation of the retiree votes because it is based on a Plan that has not been negotiated with the parties or is otherwise even close to being finalized.   It is, therefore, premature to being the confirmation process.

## CONCLUSION

Based on the above,   the Committee submits that: (i) the Procedures Motion should be denied; and (ii) in lieu of the procedures proposed in the Procedures Motion and the Court Procedures Order, the Court should set a date and time (a) for the production of the missing Plan documents and terms by the City to the Committee and other parties in interest before scheduling a hearing on the adequacy of the Disclosure Statement, and (b) the Court should allow for meaningful discussions between the City and its creditors to occur before beginning the plan confirmation process.

Dated:   February 25, 2014        DENTONS US LLP

By:    */s/ Carole Neville*
Carole Neville
Claude D. Montgomery
1221 Avenue of the Americas
New York New York 10020
Tel:   (212) 768-6700
carole.neville@dentons.com
claude.montgomery@dentons.com

and

Sam J. Alberts
DENTONS US LLP
1301 K Street, NW  Suite 600, East Tower
Washington, DC 20005-3364
Tel: (202) 408-6400
sam.alberts@dentons.com

and

Matthew E. Wilkins
Paula A. Hall
BROOKS WILKINS SHARKEY & TURCO
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
Tel: (248) 971-1800
wilkins@bwst-law.com
hall@bwst-law.com

*Attorneys for the Retirees Committee*