UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,       .      Docket No. 13-53846
        MICHIGAN,              .
                              .      Detroit, Michigan
                              .      February 25, 2014
                 Debtor.       .      2:01 p.m.
. . . . . . . . . . . . . . .


HEARING RE. MOTION OF THE CITY OF DETROIT FOR APPROVAL OF
      DISCLOSURE STATEMENT PROCEDURES (DKT#2714)
       BEFORE THE HONORABLE STEVEN W. RHODES
        UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:        Jones Day
                       By:  DAVID G. HEIMAN
                            HEATHER LENNOX
                       North Point
                       901 Lakeside Avenue
                       Cleveland, OH  44114-1190
                       (216) 586-3939

                       Jones Day
                       By:  BRUCE BENNETT
                       555 South Flower Street, Fiftieth Floor
                       Los Angeles, CA  90071-2452
                       (213) 243-2382

For Erste              Ballard Spahr, LLP
Europaische            By:  VINCENT J. MARRIOTT, III
Pfandbrief-und         1735 Market Street, 51st Floor
Kommunalkreditbank     Philadelphia, PA  19103-7599
Aktiengesellschaft     (215) 864-8236
in Luxemburg, S.A.:

For Detroit            Clark Hill, PLC
Retirement Systems-    By:  ROBERT GORDON
General Retirement     151 South Old Woodward, Suite 200
System of Detroit,     Birmingham, MI  48009
Police and Fire        (248) 988-5882
Retirement System
of the City of
Detroit:

APPEARANCES (continued):

```
For Syncora          Kirkland & Ellis, LLP
Holdings, Ltd.,      By:  RYAN BLAINE BENNETT
Syncora Guarantee,   300 North LaSalle
Inc., and Syncora    Chicago, IL  60654
Capital Assurance,   (312) 862-3062
Inc.:

For the Official     Dentons
Committee of         By:  CAROLE NEVILLE
Retirees:                 CLAUDE MONTGOMERY
                     1221 Avenue of the Americas, 25th Floor
                     New York, NY  10020-1089
                     (312) 632-8390

For Financial        Weil, Gotshal & Manges, LLP
Guaranty Insurance   By:  KELLY DIBLASI
Company:             767 Fifth Avenue
                     New York, NY  10153
                     (212) 310-8032

For Ambac            Arent Fox, LLP
Assurance            By:  CAROL CONNOR COHEN
Corporation:         1717 K Street, NW
                     Washington, DC  20036-5342
                     (202) 857-6054

For FMS              Schiff Hardin, LLP
Wertmanagement:      By:  J. MARK FISHER
                     6600 Sears Tower
                     Chicago, IL  60606
                     (312) 258-5710

For National         Jaffe, Raitt, Heuer & Weiss, PC
Public Finance       By:  PAUL R. HAGE
Guarantee            27777 Franklin Road, Suite 2500
Corporation:         Southfield, MI  48034
                     (248) 351-3000

For Detroit Retired  Lippitt O'Keefe, PLLC
City Employees       By:  RYAN C. PLECHA
Association,         370 East Maple Road, 3rd Floor
Retired Detroit      Birmingham, MI  48009
Police and Fire      (248) 723-6263
Fighters Associa-
tion, Shirley V.
Lightsey, and
Donald Taylor:
```

APPEARANCES (continued):

```
For the Detroit        Erman, Teicher, Zucker &
Fire Fighters            Freedman, P.C.
Association, the        By:  BARBARA A. PATEK
Detroit Police         400 Galleria Officentre, Suite 444
Officers Associa-      Southfield, MI 48034
tion and the           (248) 827-4100
Detroit Police
Lieutenants &
Sergeants
Association:

For Dexia              Allard & Fish, PC
Holdings, Inc., &      By:  DEBORAH L. FISH
Dexia Credit Local:    2600 Buhl Building
                       535 Griswold
                       Detroit, MI  48226
                       (313) 961-6141

For Assured            Chadbourne & Parke, LLP
Guaranty Municipal     By:  LAWRENCE A. LAROSE
Corp.:                 30 Rockefeller Plaza
                       New York, NY  10012
                       (212) 408-1140

For AFSCME:            Lowenstein Sandler, LLP
                       By:  PHILLIP J. GROSS
                       65 Livingston Avenue
                       Roseland, NJ  07068
                       (973) 597-6246

For International      Cohen, Weiss & Simon, LLP
Union, UAW, and        By:  JOSHUA J. ELLISON
the Flowers            330 West 42nd Street, 25th Floor
Plaintiffs:            New York, NY  10036-6976
                       (212) 356-0229

For Wilmington         Drinker, Biddle & Reath, LLP
Trust Company,         By:  HEATH ROSENBLAT
N.A.:                  1177 Avenue of the Americas, 41st Floor
                       New York, NY  10036-2714
                       (212) 248-3248

For Committee of       Morrison & Foerster, LLP
Unsecured              By:  BRETT HOWARD MILLER
Creditors:             1290 Avenue of the Americas, 40th Floor
                       New York, NY  10104
                       (212) 468-8051
```

```
Court Recorder:      Letrice Calloway
                     United States Bankruptcy Court
                     211 West Fort Street
                     21st Floor
                     Detroit, MI  48226-3211
                     (313) 234-0068

Transcribed By:      Lois Garrett
                     1290 West Barnes Road
                     Leslie, MI  49251
                     (517) 676-5092
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1          THE CLERK:  All rise.  Court is in session.  Please
2    be seated.  Case Number 13-53846, City of Detroit, Michigan.
3          THE COURT:  Good afternoon.  Let's have appearances
4    from counsel who will be representing their clients here on
5    the record today.
6          MR. HEIMAN:  Good afternoon, your Honor.  David
7    Heiman, Jones Day, on behalf of the city.  With me are Bruce
8    Bennett and Heather Lennox.  Thank you.
9          MR. RYAN BENNETT:  Good afternoon, your Honor.  Ryan
10   Bennett of Kirkland & Ellis on behalf of Syncora.
11         MR. MARRIOTT:  Good afternoon, your Honor.  Vince
12   Marriott, Ballard Spahr, on behalf of EEPK and affiliates.
13         MR. GORDON:  Good afternoon, your Honor.  Robert
14   Gordon of Clark Hill on behalf of the Detroit Retirement
15   Systems.
16         MS. NEVILLE:  Good afternoon, your Honor.  Carole
17   Neville from Dentons on behalf of the Retiree Committee, and
18   with me is Claude Montgomery.
19         MS. DIBLASI:  Good afternoon, your Honor.  Kelly
20   DiBlasi from Weil, Gotshal & Manges on behalf of Financial
21   Guaranty Insurance Company.
22         MS. COHEN:  Good afternoon, your Honor.  Carol Cohen
23   from Arent Fox on behalf of Ambac Assurance Corporation.
24         MR. FISHER:  Good afternoon, your Honor.  Mark
25   Fisher from Schiff Hardin on behalf of FMS Wertmanagement.

1    MR. HAGE:  Good afternoon, your Honor.  Paul Hage,

2  Jaffe, Raitt, Heuer & Weiss, on behalf of National Public

3  Finance Guarantee Corporation.

4    MR. PLECHA:  Good afternoon, your Honor.  Ryan

5  Plecha from Lippitt O'Keefe Gornbein on behalf of the Retiree

6  Association parties.

7    MS. PATEK:  Good afternoon, your Honor.  Barbara

8  Patek of Erman Teicher on behalf of the Detroit public safety

9  unions.

10    MS. FISH:  Good afternoon, your Honor.  Deborah Fish

11  from Allard & Fish on behalf of Dexia Holdings and Dexia

12  Local -- Credit Local.  Thank you.

13    THE COURT:  Are there attorneys on the telephone

14  who'd like to place their appearances on the record?

15    MR. LAROSE:  Good afternoon, your Honor.  It's

16  Lawrence Larose from Chadbourne & Parke on behalf of Assured

17  Guaranty Municipal Corporation.

18    THE COURT:  Thank you.

19    MR. GROSS:  Good afternoon, your Honor.  It's

20  Phillip Gross from Lowenstein Sandler on behalf of AFSCME.

21    MR. ELLISON:  Good afternoon, your Honor.  Josh

22  Ellison from Cohen, Weiss & Simon on behalf of the UAW and

23  the Flowers plaintiffs.

24    MR. ROSENBLAT:  Good afternoon, your Honor.  Heath

25  Rosenblat of Drinker, Biddle & Reath on behalf of Wilmington

1  Trust National Association.

2  MR. MILLER:  Good afternoon, your Honor.  Brett

3  Miller on behalf of the Official Committee of Unsecured

4  Creditors.

5  THE COURT:  Could you repeat that last one, please?

6  MR. MILLER:  It's Brett Miller on behalf of the

7  Official Committee of Unsecured Creditors.

8  THE COURT:  All right.  We're here today on the

9  motion of the city for approval of disclosure statement

10  procedures.  I want to make two preliminary observations for

11  your benefit.  The first is the Court needs to be persuaded

12  that the inadequacy of the disclosure statement as it has

13  been filed is grounds to adjourn or delay the hearing on the

14  adequacy of the disclosure statement.  That logic is not at

15  all clear to the Court.  The second is the purpose of this

16  hearing is, as I stated, to determine the city's motion for

17  approval of disclosure statement procedures.  We will not be

18  discussing today the order that the Court entered yesterday

19  establishing procedures, deadlines, and hearing dates

20  relating to the debtor's plan of adjustment.  I've invited

21  your objections and comments to that order, and when those

22  are received, I will, of course, review those and determine

23  whether and if so when to have a hearing on those objections

24  or comments.  Who'd like to go first?

25  MR. HEIMAN:  Thank you, your Honor.  David Heiman

1   for the city.  Actually, we were prepared to respond to all

2   questions today, so I will eliminate most of what I was going

3   to say except to say that we're pleased to be here in this

4   new phase of the case, and we do believe that time is of the

5   essence, so I expect Mr. Bennett to be responsive to issues

6   on the disclosure statement itself, and I guess with that,

7   are we taking the objections that were filed that relate to

8   the disclosure statement because if -- rather than waiting

9   till the 28th?  If so, it would seem that we might let the

10  objecting --

11          THE COURT:  No.  Today is not the day to hear --

12          MR. HEIMAN:  Okay.

13          THE COURT:  -- objections to the adequacy of the

14  disclosure statement.

15          MR. HEIMAN:  All right.

16          THE COURT:  There were, however, objections to the

17  timing of the disclosure statement hearing because of the

18  inadequacy of the disclosure statement, and I expressed my

19  concern that the inadequacy of the disclosure statement is

20  not a reason to adjourn the hearing on the adequacy of the

21  disclosure statement, but I do have some questions for you

22  about your proposed order.  Should I address those to you or

23  Mr. Bennett or Ms. Lennox?

24          MR. HEIMAN:  You could start with me, and then I'll

25  pass it off as need be since I'm standing here.

1      THE COURT:  All right.  So the attorneys -- the

2  other attorneys for the city are on notice.  Okay.  I'm

3  concerned about paragraph 10 of the proposed order.  Do you

4  have that there with you?

5      MR. HEIMAN:  I do not.  Since Ms. Lennox has the

6  order, I'll let her speak to it.

7      MS. LENNOX:  Good afternoon, your Honor.

8      THE COURT:  Okay.

9      MS. LENNOX:  Heather Lennox for the record.

10  Paragraph 10, your Honor.

11      THE COURT:  Yes.  I wonder what the need is for

12  really any of it.  For example, in paragraph A it would be

13  required that the objection be in writing and in English.

14  Does that need to be in an order?

15      MS. LENNOX:  It probably doesn't, your Honor, but

16  we're trying to be very clear about instructions when it

17  comes to a complicated process like this.  We can probably --

18      THE COURT:  With particularity the legal and factual

19  grounds for the objection, well, wouldn't that go to its

20  credibility if it doesn't do that?

21      MS. LENNOX:  It would, your Honor.  It would, your

22  Honor.

23      THE COURT:  Be accompanied by evidentiary support.

24  If a party is pointing out an inadequacy it believes is in

25  the disclosure statement, what evidentiary support would

1  there be?  It just seems --

2          MS. LENNOX:  That, your Honor --

3          THE COURT:  -- burdensome.

4          MS. LENNOX:  Correct.

5          THE COURT:  Help me out here.

6          MS. LENNOX:  I agree with your Honor that -- it is

7  not our position that there should be any evidence needed

8  with respect to the consideration of a disclosure statement.

9  The document will speak for itself, and it contains adequate

10  information or it doesn't.

11          THE COURT:  Right.

12          MS. LENNOX:  We have seen, however, some folks and

13  some folks have suggested that they might want to introduce

14  evidence.  We don't think that's necessary or appropriate,

15  and I'd be happy to strike this.

16          THE COURT:  All right.  Electronic filing is already

17  required by the Court.  In Part C I wonder why you need

18  separate service as outlined in Romanettes i, ii, and iii.

19  Why isn't electronic service by ECF sufficient?

20          MS. LENNOX:  This, your Honor, was just going to

21  make sure -- and if persons file electronically by ECF, that

22  is the case.  We have seen in this case a few folks that have

23  not done so, and so we wanted to be clear in case there was

24  filing that was not going to be done by ECF the parties that

25  were required for service by Bankruptcy Rule 3017.  It's

1    solely for that purpose.

2           THE COURT:  Well, let's walk through this in baby

3    steps.  I thought that if the Court authorized a party to

4    file a paper, whatever the paper is --

5           MS. LENNOX:  Um-hmm.

6           THE COURT:  -- by traditional means, we call it --

7           MS. LENNOX:  Um-hmm.

8           THE COURT:  -- which means not ECF --

9           MS. LENNOX:  Right.

10          THE COURT:  -- or it's a pro se objection and they

11   can't file it by ECF --

12          MS. LENNOX:  Um-hmm.

13          THE COURT:  -- we scan that in and put that scan on

14   the docket, and then that goes out to all parties.  Isn't

15   that the case?

16          MS. LENNOX:  If that's that case and that's the

17   procedure that --

18          THE COURT:  Okay.  All right.

19          MS. LENNOX:  -- your Honor wants to use, then that's

20   not necessary.

21          THE COURT:  I'll double-check that, but I'm pretty

22   sure that's it.

23          MS. LENNOX:  I agree, your Honor.

24          THE COURT:  All right.  Well, really those were my

25   questions then, so if the Court grants your motion, I will

1  strike paragraph 10.

2        MS. LENNOX:  Thank you, your Honor.  There's one

3  issue that I would like to raise with your Honor that's a

4  technical matter with respect to the rules and the proposed

5  dates, and I know we're not talking about the order you

6  entered yesterday, but it does relate directly to what's in

7  front of the Court today and the proposed deadlines.  And we

8  are required, of course, under Bankruptcy Rule 2002(b) to

9  give 28 days' service --

10        THE COURT:  Right.

11        MS. LENNOX:  -- plus under 9006 three days for

12  mailing, so that's 31 days' service.  We have consulted with

13  KCC, who is our noticing agent here, and there's going to be

14  probably close to -- well, certainly several tens of

15  thousands of notices that go out.  They would like 48 hours'

16  notice to prepare those and get them all out the door, so in

17  total from the time we -- your Honor would enter an order and

18  we can start the process until the objection deadline, we may

19  need 33 days.  If your Honor approved an order today, we

20  mailed on Thursday, that would take us to an objection

21  deadline of March 31st, so I just wanted to point that out to

22  your Honor.

23        THE COURT:  All right.  Well, we'll certainly have

24  to take that into account.

25        MS. LENNOX:  Thank you.

1    THE COURT:  All right.  So then I would propose that
2  we hear from parties objecting to the motion, and then we can
3  hear the city's response.  Who'd like to go first?
4    MR. RYAN BENNETT:  Good afternoon, your Honor.
5  Again, Ryan Bennett on behalf of Syncora.  First, your Honor,
6  to be clear, Syncora and the other objectors joining our
7  paper recognize the need for an orderly schedule with respect
8  to confirmation and the benefits that can inure to the city,
9  its creditors, and its citizens from expediting that
10  schedule.  The expedition of that schedule, though, should
11  not come at the cost of process, which is why we filed our
12  objection.  We filed our objection primarily because what the
13  debtor filed last Friday is incomplete by its own terms, and
14  until that filing is complete, it's premature and prejudicial
15  to let the debtor's disclosure statement be scheduled for a
16  hearing.  To be clear, we are not at this time taking an
17  issue with the disclosure statement with respect to its
18  adequacy for purposes of 1125, but, rather, as a matter of
19  notice and due process, the debtor's filing, which is
20  incomplete on its face by its own terms, should not serve to
21  trigger the requisite 28-day notice period.  The filed
22  disclosure statement and incorporated plan include numerous
23  references to material documents implicating claim treatment
24  and creditor recovery, and while the disclosure statement
25  purports to attach such documents --

1      THE COURT:  I just don't understand why it doesn't

2  fully protect whatever your substantive or due process rights

3  to simply give you an opportunity to identify all of those

4  areas where the disclosure statement is inadequate and ask

5  the Court to sustain your objection to the disclosure

6  statement on that ground.

7      MR. RYAN BENNETT:  No.  I understand the question,

8  your Honor.  I think the issue comes down to incomplete

9  versus inadequate, and incomplete, which is where we are

10  right now, where the debtor may very well and probably will,

11  right, supplement its filing at some point by providing us

12  all with these exhibits that it, on its own, you know, being

13  the author of its own disclosure statement, chose to

14  reference and say were attached and included in this document

15  and pay particular deference to those documents highlighting

16  how important and material they were, but they have not filed

17  those.

18      THE COURT:  So you want me to walk into the swamp

19  that separates incomplete from inadequate?

20      MR. RYAN BENNETT:  I think, your Honor, it's not as

21  much of a swamp because for completeness sake it's just a

22  notice issue; right?  It's 2002.

23      THE COURT:  So it's a two-stage process?

24      MR. RYAN BENNETT:  It's 3017.

25      THE COURT:  First I decide it's complete, and then I

1  decide if it's adequate.

2      MR. RYAN BENNETT:  Your Honor, I think that's

3  correct.

4      THE COURT:  Case law on that?

5      MR. RYAN BENNETT:  Other than just the rules

6  themselves and the debtor being the master of its document

7  here; right?  The debtor did not have to include cites to

8  documents and reference them as exhibits if it didn't want

9  to; right?  It's the master of its own disclosure statement.

10  And if it wanted to, it could just have ignored those

11  documents or included just blatant basic references.

12      THE COURT:  All right.  Assume it had done that.

13  Then you would have objected on the grounds that the document

14  is inadequate, so what's --

15      MR. RYAN BENNETT:  That's correct, sir.

16      THE COURT:  -- so what's the difference?

17      MR. RYAN BENNETT:  That's a different objection,

18  though.  The debtor would -- if the debtor chose, for

19  whatever reason --

20      THE COURT:  Same exact objection.

21      MR. RYAN BENNETT:  No.  One objection is if the

22  debtor did not include -- referenced the documents as

23  exhibits but did not include.  That's an incomplete

24  objection.  And the second objection is that the debtor did

25  not reference the documents or --

1        THE COURT:  But ultimately if a creditor doesn't

2   need that exhibit to cast and inform the vote, what

3   difference does it make?

4        MR. RYAN BENNETT:  The creditors don't know, your

5   Honor.  The debtor is making a decision to reference these

6   documents as important and material to the disclosure

7   statement.  The debtor presumably has seen them, knows what

8   they say, but to date none of the creditors have, and now the

9   debtor is proposing to set a schedule where the 28-day notice

10   period, which the debtor -- which the creditors are entitled

11   to review the document in its entirety and process whether or

12   not it's adequate, is going to start shrinking while the

13   debtor sits on these documents or maybe even produces them

14   from scratch that it references as so material to the

15   disclosure.  That is the distinction, your Honor, between

16   incomplete and inadequate, and for that reason we believe

17   that -- and I think you'll hear from the various other

18   creditors as to their particular documents that are

19   referenced and missing so you can get a sense of how that --

20   their review and access to those documents --

21        THE COURT:  I do not want this to be a hearing on

22   the adequacy of the disclosure statement.  It was just filed

23   Friday.

24        MR. RYAN BENNETT:  That's correct, your Honor, and

25   it was filed in an incomplete fashion.  Your Honor, on top of

1  that, you know, to date we've not --

2        THE COURT: Every creditor who asserts that a

3  disclosure statement is inadequate can contend that it's

4  incomplete, and, therefore, the 28th days shouldn't start to

5  run. We'll never get to confirmation until -- if that's the

6  case, until everyone agrees we have a complete and adequate

7  disclosure statement.

8        MR. RYAN BENNETT: The debtor filed a document with

9  references to exhibits saying that these exhibits were

10  attached --

11        THE COURT: Okay. Object.

12        MR. RYAN BENNETT: -- and they are not attached,

13  Judge.

14        THE COURT: File your objection tomorrow.

15        MR. RYAN BENNETT: Well, eventually the debtor will

16  provide these exhibits and maybe provide them two days before

17  the hearing.

18        THE COURT: Maybe; maybe not.

19        MR. RYAN BENNETT: Well, in that case, you're right.

20  Then that would be a clear inadequacy objection at that

21  point.

22        THE COURT: Or it will -- or it will amend the

23  disclosure statement to take out the reference.

24        MR. RYAN BENNETT: It could do that as well also at

25  its own peril, but to date it seems --

1          THE COURT:  Always at its own peril.

2          MR. RYAN BENNETT:  -- it seems to be as if the

3   debtor intends to provide these documents at some later date

4   jamming them on the creditor body, all of whom are standing

5   here objecting on the same grounds, and at that point the 28-

6   day period that we were entitled to has just been absorbed.

7          THE COURT:  Um-hmm.

8          MR. RYAN BENNETT:  And, your Honor, I mean also the

9   city's proposal with respect to its motion does, you know,

10  also call into question whether we will be -- have access to

11  reasonable discovery for purposes of, you know --

12         THE COURT:  There will be no discovery on the

13  adequacy of the disclosure statement.

14         MR. RYAN BENNETT:  But the --

15         THE COURT:  I've never heard of that, never seen it.

16  The issue is one of law.  We look at the disclosure

17  statement.  We decide if it's adequate.

18         MR. RYAN BENNETT:  Understood, your Honor, but the

19  disclosure statement is the first step in the plan

20  confirmation process.

21         THE COURT:  That's true.

22         MR. RYAN BENNETT:  And to date the creditors have

23  made a number of requests for discovery, and your Honor

24  judiciously has decided to put those off to plan

25  confirmation, most of them, and now we're here, and it's plan

1  confirmation time.  There are going to be a number of issues,

2  and it's very hard to separate legal from factual issues when

3  it comes to confirmation talking about value distribution,

4  claim amounts, things like that, and so we do want --

5          THE COURT:  What's the point in the context of this

6  motion?

7          MR. RYAN BENNETT:  The point in the context of this

8  motion is that before that hearing is set on the adequacy of

9  the disclosure statement, we should get the ball rolling on

10  discovery.

11          THE COURT:  Okay.  I look forward to your comment on

12  that in regard to my order of yesterday because my order of

13  yesterday does suggest when discovery will start.

14          MR. RYAN BENNETT:  Yeah.  We do plan to confer and

15  provide our suggestions, your Honor.  I'm going to yield to

16  my other colleagues here.

17          THE COURT:  Okay.

18          MR. RYAN BENNETT:  Thank you, sir.

19          MR. MARRIOTT:  Good afternoon, your Honor.  Vince

20  Marriott, EEPK.  I'll be short because others need to speak,

21  and I was co-objector with Syncora.  Two things.  One, you

22  were concerned about whether you need to weigh in on both

23  completeness and adequacy to the extent they're different.

24  Understand that our objection as to completeness is only that

25  the disclosure statement be complete by its own terms, not

1  that you decide whether or not it's complete, but that
2  something be filed that attaches all the exhibits and all the
3  documents that it itself refers to.  That's just a
4  ministerial act, doesn't require any judgment by this Court
5  about whether or not it now is complete.  We're just asking
6  that it be complete by its own terms before the clocks start
7  running on objecting.

8          The other point I would make -- and it relates a
9  little bit to your order, but I'll make it because I think
10 it's relevant to this discussion.  As and till the disclosure
11 statement and the plan are complete, it is nearly impossible
12 to figure out material terms of the treatment provided by the
13 plan to the various creditor constituencies.  The way your
14 order presently contemplates the process working, objection
15 to this --

16         THE COURT:  That sounds like a really good ground to
17 object to confirmation of the plan.

18         MR. MARRIOTT:  But, your Honor, it seems to me that
19 a process that allows us to review and craft objections to
20 complete documents is more efficient than one that has us
21 objecting to incomplete documents, having an objection upheld
22 because they're incomplete, having them completed, and then
23 running through the process again.  That's our only point.

24         MR. GORDON:  Good afternoon.  For the record again,
25 Robert Gordon of Clark Hill, your Honor.  Your Honor, I'm

1   going to try to address exactly what you've raised as issues

2   here.  To ask for a hearing and procedures surrounding a

3   disclosure statement, you have to have a disclosure

4   statement, and just because you call a document a disclosure

5   statement doesn't make it a disclosure statement.  If you're

6   looking for a rule --

7            THE COURT:  Why not?

8            MR. GORDON:  Because we don't elevate form over

9   substance, and this would be elevating form over substance.

10  This document is so blatantly on its face deficient that no

11  reasonable person could say that this document could even

12  begin to meet the standard for adequate information --

13           THE COURT:  Right.

14           MR. GORDON:  -- under 1125, so why would we --

15           THE COURT:  Assuming you're right --

16           MR. GORDON:  Yes.

17           THE COURT:  Assuming you're right, why doesn't it

18  protect whatever interests you have in this process simply to

19  object on that ground?

20           MR. GORDON:  Because when it's this inadequate, you

21  don't even know what you don't know.  So, for example, under

22  the procedures that you've laid out --

23           THE COURT:  You never know what you don't know.

24           MR. GORDON:  Well, wait a second.  You gave us till

25  March 14th to identify the documents that we'd like to see in

1 the disclosure statement and the information, but we don't

2 even have --

3          THE COURT:  Additional information.

4          MR. GORDON:  But we don't have even -- but there's

5 not even rudimentary information here, so we will list all

6 the documents that haven't been attached, and then on March

7 27th, the day before objections are due, they could produce

8 all those documents, and guess what?  Those documents could

9 reference other documents that are also not attached but that

10 we didn't list.  It becomes a --

11          THE COURT:  And if all of that is so --

12          MR. GORDON:  And it's more inefficient.

13          THE COURT:  -- then the disclosure statement will

14 not be approved.

15          MR. GORDON:  It's just a very inefficient process,

16 your Honor, and it shifts the burden to the creditors to

17 guess at what should be in here.  If the Court wants to go

18 down this path, obviously it can, but it seems to us that in

19 the first instance a disclosure statement ought to be a real

20 disclosure statement in order to start the clock running on

21 everybody doing this process.  This disclosure statement is

22 not a disclosure statement.

23          In addition, as we pointed out in our objection, the

24 disclosure statement itself says that the debtor looks

25 forward to the next phase in which it hopes to have

1  agreements with various parties in interest, so by its own

2  concession, the document is going to change, so it raises

3  again the question of both judicial and professional

4  efficiency and use of resources.  If the document is going to

5  change, then why would we be scheduling anything on this?

6  Those are our concerns, your Honor, but beyond that, the

7  other things we've pointed out in our papers I think speak

8  for themselves and I think raises --

9         THE COURT:  In Chapter 11, the first disclosure

10  statement is often not the last one and changes as

11  settlements come in.  Yes?

12         MR. GORDON:  With all due respect, your Honor, I've

13  never seen a disclosure statement this devoid of --

14         THE COURT:  Answer my question.

15         MR. GORDON:  Yes, it can change.  Of course it can.

16         THE COURT:  Often does.

17         MR. GORDON:  It does, but this is different.  This

18  is completely different in degree.  That's true in the

19  abstract, your Honor, but this is of a different degree, and

20  that's the reason why we're interposing the objection today.

21         THE COURT:  All right.

22         MR. GORDON:  Thank you, your Honor.

23         MS. NEVILLE:  Carole Neville.

24         THE COURT:  Do you have a different point to make?

25         MS. NEVILLE:  Yes, I do.  I have two different

1   points.

2           THE COURT:  Oh, great.

3           MS. NEVILLE:  The first different point is that it

4   is really the incompleteness of the plan that is underlying

5   this objection, and I look at it from the retirees' point of

6   view.  I don't think that there is a retiree who can figure

7   out what the treatment is under this plan, and the disclosure

8   statement has supplemental documents which are not

9   supplemental but integral to the treatment of the retirees,

10  so the filing of them -- without the filing of them at the

11  beginning, you really can't go forward with a disclosure

12  statement hearing.  That's point number one.

13          Point number two, there isn't a single creditor

14  constituent that supports this plan right now, and sending

15  this proposal out now with an objection deadline that is

16  actually March 14th because that's when we have to notify the

17  debtor of our objections sets the parties into a more

18  confrontational mode than is really helpful at this point.

19  We're looking at a total cramdown plan.  I don't know how

20  that happens, although I'm sure some creditor will be created

21  to support the plan.  And what we should be working on now is

22  the negotiations towards a consensual plan, not litigation

23  about adequacy of disclosure or the confirmability of the

24  plan, so --

25          THE COURT:  So you would request a period of how

1   many months to stay all procedures while you negotiate?

2          MS. NEVILLE:  Not a matter of months, your Honor,

3   not a matter of months, and certainly --

4          THE COURT:  The case was filed in July.  You've been

5   presumably negotiating or many of you have since then.

6          MS. NEVILLE:  We have, your Honor.

7          THE COURT:  Sooner or later we have to get to it.

8          MS. NEVILLE:  Yes, we do, but right now with the

9   terms of the plan as stated, there is not a single creditor

10   that supports this plan, so we are --

11          THE COURT:  Well, that's a problem for the city,

12   isn't it --

13          MS. NEVILLE:  It is.

14          THE COURT:  -- but is that a reason --

15          MS. NEVILLE:  It's a problem for the process.

16          THE COURT:  Is that a reason to put the brakes on?

17          MS. NEVILLE:  Yes.  It's a problem for the process

18   because it sets us all into that litigation mode even if we

19   were close to a --

20          THE COURT:  I don't think Judge Rosen would tolerate

21   that.

22          MS. NEVILLE:  I don't know how to answer that.

23          THE COURT:  Well, there is no answer.  He's going to

24   put you in mediation mode concurrently with Judge Rhodes'

25   litigation mode.

1          MS. NEVILLE:  And we are committed to that

2   mediation, but --

3          THE COURT:  Then what's the problem?

4          MS. NEVILLE:  -- but we can't do both at the same

5   time --

6          THE COURT:  Of course you can.

7          MS. NEVILLE:  -- and the eligibility trial showed

8   that.

9          THE COURT:  Of course you can.  You're all very

10  capable people, and you know how to do that.  You've done it

11  in other cases before.

12         MS. NEVILLE:  Your Honor, it raises the hostility

13  level.

14         THE COURT:  Here's the problem with delay.  Here's

15  the problem with delay.  The city will have no more money to

16  pay you if I put this off two months, four months, six

17  months.  This is not a retail operation with a Christmas

18  season coming.

19         MS. NEVILLE:  I understand that, your Honor, but the

20  debtor had $4-1/2 million to pay Barclays for a DIP financing

21  that hasn't occurred.  The poverty of the debtor is relative.

22         THE COURT:  Administrative expenses are all the more

23  reason to get to it here.  They're not a reason to put it

24  off.

25         MS. NEVILLE:  And this will --

1          THE COURT:  The longer we put it off --

2          MS. NEVILLE:  I'm sorry.

3          THE COURT:  -- the more Jones Day will charge, the

4    more you will charge, the more the city will be obligated to

5    pay.

6          MS. NEVILLE:  But, your Honor, this schedule will

7    generate more administrative expenses because it's a -- it's

8    generating a hostile environment.  I'm not asking for an

9    indefinite extension.  What we had discussed earlier today

10   was getting together and giving the debtor our list of really

11   critical documents and then setting a schedule with the

12   debtor that really made some sense.  The disclosure statement

13   wasn't previewed on anybody.  The scheduling motion wasn't

14   previewed on anybody.  The most critical thing here --

15         THE COURT:  I look forward to your comments on the

16   order that I entered yesterday.

17         MS. NEVILLE:  I would just like to point out one

18   thing.  The most critical thing missing here from my

19   perspective is that there's no mechanism in this plan for

20   retirees to vote, to assess their claim or to vote.  There's

21   no mechanism in the disclosure statement.

22         THE COURT:  It's in the Bankruptcy Code and the

23   rules.  Why does it have to be in here?

24         MS. NEVILLE:  Your Honor, the retirees did not

25   file -- were excluded from the bar date.  They haven't filed

1  claims.  They have no way of assessing what their claims are,

2  and there's no mechanism --

3       THE COURT:  But that has nothing to do with

4  disclosure statement procedures, and so I look forward to

5  your input on how to accommodate that.

6       MS. NEVILLE:  You'll have them, your Honor.

7       THE COURT:  All right.  Thank you.

8       MS. PATEK:  Your Honor, good afternoon.  Barbara

9  Patek on behalf of the Detroit public safety unions.  Many of

10  our concerns dealt with the paragraph 10 in the order which

11  have been addressed, but the one comment that I do want to

12  make with respect to the completeness issue is not that -- I

13  mean the Detroit public safety unions, they wish we could be

14  done yesterday, that we had our collective bargaining

15  agreement and that we were moving forward, so we are not

16  interested in hindering this process at all, but this is not

17  a Chapter 11, and at some level I understand disclosure

18  statements change throughout the process, but given who we

19  are and who our members are -- and there are some other

20  creditor constituencies similarly situated -- this process in

21  a way is a substitute in Chapter 9 for these people's self-

22  governance so that if it is a rolling process, we would only

23  ask that the Court take that into consideration in setting

24  deadlines to make sure that -- particularly for some of these

25  individual claimants that their rights are protected.

1       THE COURT:  Is there anyone on the phone who'd like

2  to be heard with something new and different?  All right.

3  Mr. Bennett, you may proceed.

4       MR. BRUCE BENNETT:  Your Honor, I'll be very, very

5  brief.  First of all, just so that we understand what we're

6  really talking about here, there is actually a table of

7  exhibits to the disclosure statement, and it shows up at page

8  11 of 440 in the filed version.  And if people would look

9  through that list of exhibits and compare the exhibits that

10  were filed, you're actually going to find that each and every

11  exhibit to the disclosure statement was, in fact, filed, so

12  the completeness objection to the disclosure statement I

13  think isn't quite right.

14       With respect to plan exhibits, I guess there are

15  different ways to do this, but some of the plan exhibits are

16  plan supplement documents.  That's a relatively traditional

17  concept for definitive documentation of agreements otherwise

18  described, and so if it will help people to -- and it will

19  reduce the graphic number of missing things quite a bit --

20  instead of having just plan exhibits, we can have plan

21  exhibits that are plan supplement exhibits and plan exhibits

22  that will ultimately accompany the plan.  When you look at it

23  that way, there are, indeed, a couple of blanks, maybe --

24  there are a few blanks.  There are more than a couple of

25  blanks, but they will be filled in, and they will be filled

1   in fairly rapidly.  That having been said, by the way, it
2   should -- it might be interesting to note that the COPs
3   treatment that I suspect Syncora and EEPK are most interested
4   in is completely described down to a term sheet to the
5   relevant notes that are going to be distributed.  Blanks I
6   don't think affect the COPs at all.

7           So how are we going to do this?  First of all,
8   although the Court has set a deadline of March 14th for
9   communications to the debtor concerning parts of the
10  disclosure statement that people want supplemented or added
11  to, no one should feel that they have to wait till March 14th
12  or that they can only send me one e-mail, that if there are
13  comments to the disclosure statement, I, frankly, would like
14  to hear them as early as possible, and we'll get on them.  We
15  think this should be a cooperative process.  I'll tell people
16  something else, too, and I suspect I was going to hear this
17  from your Honor at some point in time, which is think about
18  parts we can cross out because it's a really big document,
19  and at some point just making it longer and longer doesn't
20  actually make it more informative.  And we'd, frankly, like
21  to find ways to streamline it in any way we possibly can.

22          As to the solicitation aspect of this, there is a
23  separate solicitation procedures motion coming which will
24  deal with the issue of how to take plan aggregates, which --
25  class aggregates, which is how plans are usually structured,

1 and bring them down to individual numbers. It's an important

2 difficult question in part because there's more than 20,000

3 different calculations that have to be made, and I don't know

4 about anyone else in this room, but I've done customized

5 claim forms and voting forms before, but I've never done 20-

6 plus thousand of them, and I'm a little afraid of the

7 prospect, and we're looking at alterative ways to get that

8 done, but there's a separate motion. That separate motion,

9 by the way, will also deal with, just so everybody knows

10 where it's coming, the whole issue of who votes because we

11 understand that there are some disputes out there between

12 beneficial holder and insurers. We have a specific procedure

13 in mind just for that coming very, very soon.

14       We are -- there clearly will be amendments, and

15 we'll bunch them, so we're not going to do them every day,

16 but we're also not going to do them two days before the

17 disclosure statement hearing. And in one respect I'd invite

18 your Honor to amend one aspect of the order, which is in

19 paragraph 11, where it talks about the on-line destinations

20 where all the -- the disclosure statement is available. Your

21 Honor might amplify that to say that also any amendments and

22 modifications will also be on the website. There's already a

23 provision that doesn't require us to serve them all, but it

24 would be, I think, helpful to let people know that that's

25 where they'll be, and we'll, of course, you know, file a

1  notice with a blackline whenever we go through one of these

2  changes.

3       In any event, I think that it'll get better. I

4  think comments from everyone here, if well-intentioned with a

5  view to getting a disclosure statement document out that's at

6  least accurate with respect to a plan that people may not

7  like, we will generate a better disclosure statement, and I

8  think one of the things we all have to concentrate on is a

9  better disclosure statement not just for the lawyers and

10  other professionals in the case that focus on this for a

11  living but a better disclosure statement for people who

12  don't, and that's the part, I suspect, that's going to be the

13  most difficult. We look forward to all the help and

14  cooperation we can get from everybody else, and thank you for

15  your Honor's attention.

16       THE COURT: Okay. My only advice regarding your

17  disclosure statement is, in my experience, there are two

18  facts that creditors are most interested in in determining

19  how to vote, and so I invite you to figure out a way to

20  highlight these two facts for each type of creditor you've

21  got and simplify it. The two facts are how much am I going

22  to be paid and when.

23       MR. BRUCE BENNETT: I understand that, your Honor.

24  We'll try hard to do that. I should also suggest that we --

25  that with respect to retirees, we're thinking about a

1  separate supplement that would -- so if you can imagine the

2  package that will ultimately go out, there will be a disk

3  with the big disclosure statement.  Retirees will get a

4  printed supplement that will, in fact, highlight that

5  information or how they can get to it in a relatively

6  straightforward way.

7          THE COURT:  Good.  That's very important.

8          MR. BRUCE BENNETT:  Okay.  Thank you very much, your

9  Honor.

10         THE COURT:  All right.  I'm going to take this under

11  advisement.  Can you all submit through our order processing

12  program a Word version of an order granting this motion that

13  deletes paragraph 10 and adds what Mr. Bennett suggested, and

14  then I'll have a look at that?  All right.  We'll be in

15  recess.

16         THE CLERK:  All rise.  Court is in recess.

17      (Proceedings concluded at 2:37 p.m.)

INDEX


<u>WITNESSES:</u>

None

<u>EXHIBITS:</u>

None


        I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.


/s/ Lois Garrett                    February 27, 2014
_____      _____
Lois Garrett