# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) **Re: Docket No. 2755** |

## OBJECTION TO THE COURT'S FIRST AMENDED ORDER ESTABLISHING PROCEDURES, DEADLINES, AND HEARING DATES RELATING TO THE DEBTOR'S PLAN OF ADJUSTMENT

Syncora Capital Assurance Inc. and Syncora Guarantee Inc. (collectively, "Syncora") file this objection to the *First Amended Order Establishing Procedures, Deadlines, and Hearing Dates Relating to the Debtor's Plan of Adjustment* dated February 25, 2014 [Docket No. 2755] (the "Scheduling Order"). In support of its objection, Syncora respectfully states as follows:

### Preliminary Statement

1. Under the Scheduling Order, the City and its creditors have just four months to (a) prepare and submit objections to the Disclosure Statement; (b) prepare and submit objections to the Plan; (c) serve written discovery requests; (d) resolve discovery disputes; (e) produce all relevant documents; (f) respond to all interrogatories; (g) continue to "negotiate with full intensity and vigor"; (h) prepare for and complete all fact depositions; (i) prepare and submit expert reports; (j) counter-designate experts and prepare and submit additional expert reports; (k)

prepare for and complete all expert depositions; (l) prepare and submit a joint pretrial order; (m) prepare and submit pretrial briefs; (n) vote on the Plan; (o) participate in an argument regarding purely legal Plan objections; and (p) conduct a trial on feasibility and all of the factual issues raised in the parties' Plan objections.  While Syncora appreciates the Court's attempt to move this case along in an expedited fashion, it has a few observations regarding the Court's accelerated schedule and the attendant impact on the City, its creditors, and the overall confirmation process.

2.    *First*, the current schedule does not appear to allocate sufficient time to complete all necessary discovery.  Notably, when the creditors previously requested discovery on several different occasions, the Court deferred much of that discovery to the plan confirmation stage.  As a result, Syncora, like other creditors, believed that it would have sufficient time to conduct all of the discovery that it had previously requested during the plan confirmation process.  Under the current schedule though, the parties have approximately two months to complete written discovery, fact depositions, and expert depositions on a broad range of issues.  Syncora fears that this abbreviated time frame will not allow the creditors to conduct the same amount of discovery contemplated by their previous discovery requests — particularly because this schedule does not account for any discovery disputes or other such delays.

3. *Second*, the City and its creditors stand to benefit from a more deliberate pace. At this time, there are still a number of outstanding issues that are certain to be time-consuming and/or complex — *e.g.,* determining the ownership and valuation of the art in the Detroit Institute of Arts (the "DIA"); calculating the OPEB and pension liability amounts; and assessing the City's reinvestment and operation plan. Because each of these issues directly impacts creditor recoveries and the plan confirmation process, it is important that they be fully resolved — something that is practically impossible on the current accelerated schedule.

4. In light of the above, Syncora respectfully submits that the parties and the process stand to benefit if certain of the deadlines in the Court's proposed schedule are extended.[1]

## Argument

**I. The Current Schedule Does Not Provide Sufficient Time to Complete Discovery.**

5. On several previous occasions, creditors have requested discovery on several different issues that will be central to the Plan confirmation process. In response to these requests, the Court deferred some discovery to the plan confirmation stage. With the filing of the City's Disclosure Statement, the Plan confirmation process has officially commenced. And, as part of this process,

---

[1] Attached as Exhibit A is the schedule Syncora proposes. Exhibit B is a blackline comparing the Court's Scheduling Order with Syncora's proposed schedule.

Syncora intends to conduct the discovery that it had contemplated in its previous requests to the Court (as well as all other relevant discovery).

6. Under the current schedule though, the parties have approximately two months to complete fact and expert discovery. Syncora is concerned that this accelerated schedule does not allow for sufficient time to complete all of the necessary discovery — both the deferred discovery and all other plan confirmation discovery — and presents several other timing issues.

7. First, the Court's proposed schedule does not provide a realistic amount of time for the parties to comply with written discovery. While the schedule provides the City with 17 days to respond to written discovery requests, it appears to assume that there will not be any discovery disputes. Given, however, that most of the proceedings in this case have been disputed — including most, if not all, of Syncora's requests for discovery — there are likely to be at least a few discovery disputes. And, when such a dispute arises, it will be incredibly difficult to maintain the current schedule.

8. Second, the Court's proposed schedule does not provide sufficient time for depositions. Although the parties may begin fact depositions on April 1, the City does not need to comply with written discovery requests until April 18. Because the parties will likely not begin depositions until they have all of the City's documents, this leaves the parties with three weeks to process all of the

4

documents that the City produces, review those documents, and then complete the depositions.

9. Third, the Court's proposed schedule sets May 9 as the deadline to complete fact depositions <u>and</u> submit expert reports. Yet, as part of their expert reports, the experts will necessarily need to take into account the facts that are ascertained during the fact depositions. Thus, the schedule should be modified to allow the experts to issue their reports after fact discovery closes.

10. Accordingly, Syncora submits that, given the specific circumstances of this case, the discovery schedule is too compressed. By way of reference, in the *Collins & Aikman* bankruptcy, this Court set the confirmation hearing almost four months after the debtor filed its disclosure statement. This case, however, proposes a more compressed schedule — even though this case is far more complex and lacks any consensus between the City and the creditors.

**II. The City, its Creditors, and the Court Stand to Benefit from Several Modifications to the Dates in the Current Schedule.**

11. As the largest Chapter 9 filing in history, this case involves a number of complex and unprecedented issues — many of which are central to creditor recoveries and the plan confirmation process. Despite the significance of these issues, the current accelerated schedule requires that they all be resolved in a few months. Syncora therefore proposes that the Court adopt a more deliberate schedule that permits a thorough and meaningful consideration of the following

5

issues. Indeed, as explained below, a more deliberate schedule will actually benefit both the City and its creditors.

**The Detroit Institute of Arts**

12. As the City's largest non-core asset, the DIA's art collection is certain to be a central issue during the plan confirmation process. Despite the importance of the art, the City has not yet attempted to value the entire collection. And while the creditors have repeatedly requested information regarding ownership of the art collection, the City still has not provided that information — though it has repeatedly promised to do so.

13. Given the City's odd decision to value just 5% of the entire collection and its repeated failure to provide ownership information, there will be litigation surrounding the art and it will be time-consuming. As a point of reference, Christie's required four months to value just 5% of the collection. (*See* Letter from Doug Woodham, President, Christie's Americas to Kevyn D. Orr, Emergency Manager of the City of Detroit (Dec. 3, 2013.)) And though the City has purportedly been working with the DIA for the past several months on ownership issues, that process is still not complete. (Jan. 22, 2014 Hr'g Tr. at 13:8-25 ("The DIA has been helping out the city to try to isolate the most important gifts and supply us the documents on the most important parts of the gifted collection. That

process is taking a long time. There's been -- that process started. It's not complete.").)

14. Given the potential impact of the art on the plan confirmation process, it makes sense to adopt a more deliberate schedule that allows the parties to resolve all of the questions surrounding the ownership and valuation of the art.

**The Detroit Water and Sewer Transaction**

15. As the City explains in its proposed plan, it is currently in negotiations regarding the formation of a regional water and sewer authority. If formed, that authority would have a material effect on creditor recoveries. To date, however, the City and the surrounding counties have not been able to agree on the terms of this transaction. Indeed, as recently as the week of this Court's Order, public reports demonstrated that negotiations between the City and the counties were in a precarious state. Among the reasons for these difficulties is the counties' claim that the City has not provided sufficient data, including information regarding legacy costs, upgrade, costs, and past-due water bills. Public reports also demonstrate that the counties continue to demand more financial information and will not consummate a transaction unless the City first provides the requested data.

16. Given that the breakdown between the City and the counties is due, in large part, to the City's failure to provide the relevant information, the Court's accelerated schedule is unlikely to provide the parties with sufficient time to broker

7

a deal. In fact, it leaves the City with two options: (1) refuse to consummate the transaction or (2) enter into the transaction on unfavorable terms. Both of these options, however, have a detrimental effect on the City and its creditors.

17. Notably though, if the Court decided to adopt a more deliberate schedule, the City would be able to provide the counties with the requested information. Or, alternatively, the City could explore a transaction involving private financing. While such a transaction has the potential to result in a better deal for the City and its creditors, at the very least, providing the City with time to explore this deal would improve the City's negotiating leverage with the suburbs.

**Pension and OPEB Liability Amounts**

18. As part of the confirmation process, the parties will also need to litigate the correct OPEB and pension liability amounts. This litigation, however, is likely to be complex and controversial — as evidenced by the competing amounts asserted by the City and the other creditor constituencies. Moreover, disputes surrounding pension and OPEB claims are likely to be the subject of extensive fact and expert discovery.

19. For example, collecting and reviewing the financial information and assumptions regarding the proposals in the Plan will require extensive fact discovery surrounding the City's pension and OPEB obligations. Given the

8

amount of information that pertains to this issue, even collection and review promises to be a time-consuming and complex task.

20. Once this information has been collected and culled, establishing the appropriate amount of those claims will require review by financial experts. After developing their opinions, the expert will then need to submit their reports and sit for depositions.

21. Given the universe of information and the importance of this issue, these disputes alone would take a significant amount of time to litigate adequately. Because, however, they would have a significant impact on almost all of the legal and factual arguments surrounding the City's plan, it is important that the schedule be extended to afford adequate time to litigate them properly.

**The City's Reinvestment Initiatives and Operating Plan**

22. In connection with its Plan and Disclosure Statement, the City provides some high-level information regarding its reinvestment initiatives and its financial projections, all of which is relevant to many of the factors that the Court must consider during the Plan confirmation process — *i.e.*, feasibility, best interests of creditors, fair and equitable. To determine, however, whether the City's Plan satisfies these factors, the creditors are going to need significantly more information.

23. For example, though the City notes that it proposes to spend $520.3 million on blight removal over the next six years, the creditors are going to request documents relating to the City's blight removal strategy. Similarly, while the City notes that it intends to spend $114.2 million to improve the performance and infrastructure of the City's police department, the creditors will request documents relating to the use of this money. Exploring and synthesizing all of these issues for purposes of fact and expert discovery is certain to require more time than the Court has allocated in the proposed schedule.

## Conclusion

24. For the foregoing reasons, Syncora respectfully requests that the Court enter a Second Amended Order Establishing Procedures, Deadlines, and Hearing Dates Relating to the Debtor's Plan of Adjustment substantially in the form attached hereto at Exhibit A.

[*Remainder of this page intentionally left blank*]

Dated: February 28, 2014        /s/ *Ryan Blaine Bennett*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200

- and -

David A. Agay
Joshua Gadharf
MCDONALD HOPKINS LLC
39533 Woodward Avenue
Bloomfield Hills, Michigan 48304
Telephone:   (248) 646-5070
Facsimile:    (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*