UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | ) | |
|---|---|---|
| In re | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| | ) | |
| | ) | |

**SUPPLEMENTAL COMMENTS OF THE OFFICIAL COMMITTEE OF RETIREES TO THE FIRST AMENDED ORDER ESTABLISHING PROCEDURES, DEADLINES AND HEARING DATES RELATING TO THE DEBTOR'S PLAN OF ADJUSTMENT**

The Official Committee of Retirees (the "Committee") hereby supplements the comments of creditors on the Court's First Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment ("Court Procedures Order") (Docket No. 2755). The Committee respectfully states:

**PRELIMINARY STATEMENT**

1. The Committee joined in the previous filed joint Commenting Parties proposed adjustments to the Court's Procedures Order. The claims of retirees for both pension and other post employment benefits ("OPEB") are classified together in Classes 10 (PFRS Claims) and 11 (GRS Claims) of the City's Plan of Adjustment (the "Plan"), which gives rise to several unique reasons for suggesting the proposed amendments to the Court Procedures Order. First, the deadlines for responses/objections to both the Disclosure Statement and Plan in the Courts Procedure Order are unreasonably short as to retiree interests, because both documents, despite their length, are missing essential terms and key exhibits that are integral to the treatment of retiree claims. Those missing terms render it problematic for the Committee and/or individual retirees to properly formulate disclosure statement or plan objections.

2.      The missing terms and exhibits specifically affecting the treatment of retirees, include, but are not limited to, the schedule of pension plan contributions for both pension plans after year 2023 or in the absence of any "settlement", the DIA settlement documents that provide funding for the pensions, the formulae for reducing or adjusting the recovery of both pension and/or OPEB as a result of the City's claims for annuity savings fund restitution and asserted mitigation purposes, respectively, the description of post 2014 OPEB benefits and their administration, and the terms of the State consideration which is a condition of the suggested DIA settlement and requires a release from each retiree on his or her ballot.  Moreover, as the City's counsel acknowledged, the City has not yet even prepared the special disclosure section for retirees that will be a part of the Disclosure Statement.  As a result, two weeks before the first objections would be due under the current Court Procedures Order, neither the Plan nor the Disclosure Statement properly define or describe what retirees may recover on either their claims or what their future pension and OPEB benefits will be.

3.      Second, the schedule to confirmation did not leave adequate time for (a) the determination of retiree claims and solicitation of retiree votes, both of which, as discussed more fully below, require complicated and time consuming processes, and (b) the filing of objections to the Plan based upon the outcome of the vote.  The Committee notes that in larger chapter 11 cases in this district, it is common practice to require objections to confirmation to be filed concurrently with the deadline for voting.  *E.g., In re Collins & Aikman Corp.,* No. 05-55927 (DKT. 4069) setting objections to confirmation and voting deadlines 60 days after approval of the disclosure statement and 50 days after the debtor's ballot mailing deadline. This case is every bit as complex as Collins & Aikman with the City's $18 billion in debt and multiple tranches of fully secured debt.

81924555\V-2

4. Finally, as shown below, the Court has the clear authority to refuse to approve a disclosure statement on the grounds that the plan itself is patently unconfirmable. *In re American Capital Equipment*, LLC, 688 F.3rd 145 (3rd Cir 2012). Rather than require plan objections to be fully and separately stated at the same time as objections to the disclosure statement, the Committee suggests that it simply should not be precluded by the Court Procedures Order from asserting the Disclosure Statement should not be approved due to the Plan's facial un confirmability. Among other infirmities, the Plan violates section 1122 of the Bankruptcy Code by classifying separate and distinct claims for pension and OPEB in the same class.

5. For these reasons and the reasons set forth in the Commenting Parties proposed adjustments, the Committee respectfully requests that the Court enter the proposed Second Amended Procedures Order.

## BASIS FOR THE RELIEF REQUESTED

6. The Committee's supplemental comments are based upon the Plan and Disclosure Statement as they were filed February 21, 2014.

7. The Plan classifies the retirees into two classes--one for the retirees who are participants in the Police and Fire Fighters Retirement System ("PFRS") (Class 10), and one for the participants in the General Retirement Fund ("GRS") (Class 11). Each of these classes includes the retirees' claims for pension benefits and for OPEB although they are defined and treated as separate claims. The amounts of pension and OPEB claims, respectively are "allowed" in the Plan and then reduced by some unstated amount in accordance with exhibits and formulae that are among the missing documents. Furthermore, the Plan consideration for each retiree is not a single distribution. Rather, the retirees will continue to receive substantially reduced pensions, but reduced in particulars in some amount that is not yet finally delineated.

81924555\V-2

The ambiguity arises, on account of the retiree's pension claim that may be funded several sources, including the pension plans' existing assets on account of the retirees' pension claims. The retirees' OPEB claims will be satisfied by healthcare benefits, reduced in some substantial but undisclosed amount, and satisfied with unspecified benefits through a voluntary employee benefits associations ("VEBA") on account of the retirees' OPEB claims.

8. The City proposes that the recovery for Class 10 pension claims is to be funded "exclusively" by the proceeds from what the City terms the DIA Settlement. Although certain of the terms of the DIA settlement are briefly described in the Plan and Disclosure Statement, the settlement agreement is also one of the missing documents and the Committee has never seen an draft or an outline. Similarly, the schedule of contributions to the PFRS pension referenced in the Plan treatment of Class 10 retirees is not yet included. The OPEB claims are satisfied by the creation of VEBA to provide OPEB benefits to the existing and future retirees. The funding for the VEBA is briefly described, but the important details of the future covered benefits and administration are not.

9. If the holders of Class 10 claims accept the Plan and each holder elects to enter into a settlement with the State, the State will deposit up to $175,000,000 into the PFRS Plan, less an unspecified amount for those retirees who may fall below the federal poverty level, in exchange for a release of the State and other parties. Neither the Plan nor Disclosure Statement explain what happens to State consideration if some holders of Class 10 elect to settle and others do not. If the retirees in Class 10 reject the Plan due to dissatisfaction with either treatment of OPEB claims or Pension claims, both the State consideration and the DIA Settlement, which is conditioned upon the State contribution, apparently will not be available to fund the pension plans. The City clearly has proposed that if the DIA Settlement is effectuated but one or more

of the foundations default on their funding commitments, retiree benefits will be reduced. However, neither the Plan nor Disclosure Statement provide for alternative treatment or remedies for Class 10 in the event of a failure of the foundations to fund entirely or in part.

10. The City proposes that the claims of GRS retirees in Class 11 are to be satisfied by funding through payments received by the City from Detroit Water and Sewerage Department in accordance with a schedule that is not included in the Plan documents, and $50,000,000 in DIA Settlement proceeds through June 30, 2030. After June 30, 2023, the GRS pension will be funded by DIA proceeds of approximately $195,000,000, plus unspecified City contributions. The Plan provides for the same settlement and release election process for both Classes 10 and 11. However, the same settlement and funding failure issues exist for Class 11 and remain unresolved. The Plan treatment for GRS retirees also includes restitution of the alleged excess allocations to the GRS Annuity Savings Fund and redistribution to other GRS beneficiaries pursuant to a formula, which is not included in the Plan or described in the Disclosure Statement. Acceptance of the Plan by both Classes 10 and 11 is a condition of the State consideration, which in turn, is a condition of the DIA settlement.

<u>The Court Should Permit Supplemental Objections To Disclosure Statement and Plan</u>

11. In summary, a non exhaustive list of the missing terms and exhibits relating exclusively to the treatment of retiree claims include:

- The special disclosure section for retirees,
- The terms and conditions of the DIA Settlement,
- The exhibit evidencing the reduction to OPEB claims,
- The schedule of annual contributions to the GRS and PFRS plans from the effective date of the Plan through June 30, 2023,
- Projections of post June 20, 2023 contributions to both GRS and PFRS,
- The proposed modifications to retiree benefits if the foundations default,
- Treatment of retiree benefits and the DIA assets if retirees vote against the Plan or

- the DIA settlement is not consummated,
- The formulae for collecting alleged excess allocations from Annuity Saving Fund Accounts and increasing other GRS retiree benefits thereby,
- The method of calculating State consideration for those retirees who will fall below some percentage of the federal poverty level as a result of the City's cuts in benefits,
- The treatment of State settlement proceeds if not all retirees elect the settlement,
- A pro forma for DWSD after a transaction or without one, and
- The method for determining retiree claims and a mechanism for voting on the Plan.

The terms and exhibits listed here not supplemental to the Plan and Disclosure Statement like one might consider a schedule of executory contracts; they are integral to treatment of the largest creditor constituency, confirmability and feasibility. Accordingly, the Court's deadline for what would amount to final disclosure statement objections in two weeks or less with Plan objections to follow shortly thereafter was set too soon in the process. Thus, the Committee joins in the request for the opportunity to supplement its initial Disclosure Statement objections when the missing terms and documents are available and to identify those Plan objections that are not readily apparent on the face of the current proposed Plan at a date later in the schedule.

### The Schedule Should Be Extended To Allow for Claims Allowance and Voting

12. Moreover, as shown above, the treatment of the retirees is directly dependent upon the vote of both classes. As a result, the Committee's final Plan objections depend, in part, upon the voting results. Accordingly, the Committee supports the joint request for the opportunity to supplement Plan objections based upon the vote.

13. The Committee also supports the extension of the Court's schedule to allow adequate time for the retiree votes on its separate claims. The Court may not yet appreciate the fact that both the determination of the retirees' claims for allowance and/or voting purposes and the solicitation of retirees' votes are far more complicated and time consuming than they are for

other creditors. The retiree is unlike a note holder or trade creditor whose claim is determined by the terms of a note or an account. A retiree's claim is determined by definition under the Plan by, among other factors, the retiree's current benefits as promised over the retiree's life, predicted by mortality tables, increased by supplemental adjustments and adjusted by the existing assets calculated in accordance with certain projected investment rates of return depending on the status of the pension plan, *i.e.* whether the plan is terminated, frozen or ongoing and funded. A similar process bases upon different criteria must occur to determine the retiree's separate OPEB claims and solicit votes on the claims.

14. The solicitation process is more complicated because of the age and/or circumstances of the retirees, the necessity of protecting confidential personal information, and the resolution of questions about the accuracy and the completeness of the data. The City's creditor list does not include most of the Committee members on the list of the retirees. In addition, the latest audited pension plan data is 2012 data. The 2013 data is expected in the Spring. Accordingly, the Committee supports the extended schedule to permit adequate time for the determination of retiree claims and the solicitation of votes.

<u>Plan Objection Should be Permitted in Disclosure Statement Objections</u>

15. While certain Plan objections depend upon the vote, the Committee is aware of certain infirmities in the Plan that should prevent approval of the Disclosure Statement and the wasteful solicitation of votes for a Plan that cannot be confirmed. It is widely understood, that during the disclosure statement approval process, the court may consider not only "pure" disclosure issues, but may also address defects in the Plan that make it unconfirmable. *See In re American Capital Equipment, LLC*, 688 F.3d 145 (3d Cir. 2012); *In re U.S. Brass Corp.*, 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996) (citing *In re Cardinal Congregate I,* 121B.R. 760, 764

(Bankr. S.D. Ohio 1990)); *In re Felicity Associates, Inc.,* 197 B.R. 12, 14 (Bankr.D.R.I. 1996); *In re Main Road Properties,* 144 B.R. 217, 219 (Bankr. D.R.I. 1992) (citing *In re Bjolmes Realty Trust,* 134 B.R. 1000, 1002 (Bankr. D.Mass. 1991)); *In re Century Inv. Fund VIII Ltd. Partnership*, 114 B.R. 1003, (Bankr. E.D. Wis. 1990). *In re Eastern Maine Elec.Co-op., Inc.*, 125 B.R. 329, 333 (Bankr. D. Me. 1991). The City's Plan is unconfirmable on its face because, among other infirmities, it violates 11 U.S.C. §1122 (applicable to Chapter 9) by impermissibly classifies claims that are not substantially similar (pension and OPEB claims) in the same classes (Classes 10 and 11) and affords separate treatment for each kind of claim within the same class. Accordingly, rather than require all plan objections to be filed concurrently with disclosure objections, the Committee requests that the prohibition against asserting Plan objections in the Disclosure Statement objection be removed.

[Remainder of This Page Intentionally Left Blank]

## CONCLUSION

Based on the above, the Committee respectfully requests that the Court amend the Court Procedures Order as requested by the Committee and other creditors.

Dated: February 28, 2014         DENTONS US LLP

By:  */s/ Carole Neville*
Carole Neville
Claude D. Montgomery
1221 Avenue of the Americas
New York New York 10020
Tel:  (212) 768-6700
carole.neville@dentons.com
claude.montgomery@dentons.com

and

Sam J. Alberts
DENTONS US LLP
1301 K Street, NW  Suite 600, East Tower
Washington, DC 20005-3364
Tel: (202) 408-6400
sam.alberts@dentons.com

and

Matthew E. Wilkins
Paula A. Hall
BROOKS WILKINS SHARKEY & TURCO
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
Tel: (248) 971-1800
wilkins@bwst-law.com
hall@bwst-law.com

*Attorneys for the Retirees Committee*