UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| | ) | |

**REPLY IN SUPPORT OF MOTION OF THE OFFICIAL COMMITTEE OF RETIREES FOR AN ORDER ALLOWING AN ADMINISTRATIVE EXPENSE CLAIM AND IN RESPONSE TO CITY'S OPPOSITION THERETO**

The Committee[1] files this reply in support of the Motion for Entry of an Order Allowing an Administrative Expense Claim (the "Motion") (ECF #2660) and in response to the City's Opposition to the Motion ("Opposition") (ECF #2706), and states:

1. *First*, contrary to its assertions, the City expressly consented to the payment of Committee Members' expenses and, therefore, Bankruptcy Code section 904 is not implicated and cannot preclude the requested relief. The Fee Review Order, para. 11, provides that "the City agrees to pay promptly eighty five percent (85%) of the requested fees and one hundred percent (100%) of the requested expenses to the applicable Professionals and Retiree Committee Member." (ECF #810, attached hereto as Exhibit 1).[2] Even if such consent had not been given, Chapter 9 does not give a municipal debtor authority to dictate its allowed administrative expenses.[3]

---

[1] Capitalized terms not defined herein have the meaning ascribed in the Motion.

[2] Payment of Committee fees and expenses was a major concern, if not an implied condition of the Court and others for appointment of the Committee. *See* Transcript of Status Conference held August 2, 2013 (ECF #316) at Tr.120:24-121:2 (Court); (Tr.116:8-24) (Debtor); Tr.84:14-23 (Detroit Retirement Systems); 87:14-88:2 (Retired Detroit Police Members Ass'n); 91:18-92:1 (public safety unions); 98:1-13 (UAW).

[3] Bankruptcy Code section 904 does not implicate this Court's obligation to determine a municipal debtor's administrative expense claims pursuant to § 503(b). Nothing in chapter 9 or section 904 preempts the bankruptcy

1

2. ***Second***, although the City notes the amount of the brokerage commission to be paid, the City does not provide any evidence, let alone a legitimate basis, that rebuts the reasonableness of the scope, price and terms of the Insurance Policy or the commission. To the contrary, the evidence shows that these amounts are well within market norms. Declaration of Brian L. Smith ("Smith Decl."), attached hereto as Exhibit 2, para. 4. The Insurance Policy costs $352,250, not $602,250 as asserted by the City. An additional $250,000 is to be paid in to escrow to cover the potential deductible, an amount that will be completely refunded to the City if no claims are made. *See* Smith Decl. para. 4. With respect to the 20% broker's commission, the City fails to inform the Court that the commission is paid by the insurer, not the City, and the 20% fee is standard in the insurance industry. Smith Decl. paras. 5, 6, 8. Regardless, the amount sought is relatively small compared to the fees and other expenses sought to date in this case. Therefore, the terms and amount of the Policy and commission are proper.[4]

3. ***Third***, while this may be an unprecedented chapter 9 case, the relief sought is not. Such policies have been discussed with approval and otherwise employed for many years.[5] One

---

court's authority to determine what is an allowed administrative expense under the Bankruptcy Code. *See In re County of Orange*, 191 B.R. 1005, 1021 (Bankr. C.D. Cal. 1996) ("Chapter 9 does not permit individual states to override the priority scheme that is inherent in the [Bankruptcy] Code."). The determination of allowed administrative expenses is not a "federal intrusion upon States' rights," Opposition at 5 (quotation omitted). The City's interpretation of § 904 as bestowing upon a municipal debtor the sole right to determine what constitutes an administrative expense under the Bankruptcy Code under the auspices of States' rights is untenable. Therefore, the City's attempt to deprive this Court jurisdiction over this matter and the Committee Court resolution of its Motion under section 904 is without merit.

[4] Prior to Segal Select the Committee had worked with two other insurance brokers to price policies. One broker could not procure an appropriate policy and another was unable to procure a policy on terms anywhere near as beneficial or cost effective as those obtained by Segal Select for the proposed Insurance Policy. Additional details will be provided if necessary.

[5] *See* Bankruptcy Court Decisions Weekly News & Comments, *Professional Liability Insurance For Creditors' Committees Now Available*, 31 No. 2 Bankr. Ct. Dec. News 5 (August 12, 1997) ("If it encourages people to sit on committees, and to do the best they can for their constituency without fear of reprisals, as long as they are acting in good faith, then they feel like that benefits the process as a whole.") .Many plans contain provisions authorizing official committees to obtain E&O insurance. *See In re Warner Springs Ranchowners Assn.*, Case No. 12-03031-LA11, (Bankr. S.D. Cal.) Amended Chapter 11 Plan filed 10/3/2013, § 6.1.5 (permitting oversight committee to procure E&O insurance); *In re Cornerstone Ministries Investments, Inc.*, Case No. 08-20355-jrs (Bankr. N.D. Ga.),

court squarely addressed an official committee's request to allow an E&O insurance policy as an administrative expense claim and approved the expense claim over objection. *McDow v. Official Committee of Equity Security Holders of Criimi Mae Inc.,* 247 B.R. 146 (D. Md. 1999). Despite the City's efforts to distinguish *McDow*, it stands for the proposition that an official committee may procure an E&O policy as an allowed administrative expense under § 503(b)(3)(F), over objection. It makes no difference that the trustee, rather than the debtor, was the objecting party in *McDow*. Moreover, contrary to the Debtor's characterization, the equity committee members in *McDow* did not "threaten to resign" -- one member "stated that he would 'strongly consider' resigning" while the other "[s]imilarly . . . indicated that he would consider resigning." *Id*. at 149.

4.  With the City's plan of adjustment now on file and a confirmation schedule set, negotiations and compromises among creditor constituencies, and resultant opportunities for litigation against Committee Members for their actions, will only increase, warranting protection "from nuisance suits and the substantial legal fees that would be required to defend against such actions." *Id.* The risk to Committee Members is particularly heightened in this case because the City is proposing extensive cuts to Retiree benefits -- and it is the Committee who is charged with vetting such cuts. Therefore while no Committee Member has yet resigned, the threat of litigation and financial hardship on them remains real and the prospect of resignations exists.[6]

---

Chapter 11 Plan filed 4/1/2009 § VI.E.4 (providing for Plan Committee insurance, including tail coverage*); In re Gabriel Technologies Corp., et al.*, Case No. 13-30340-DM (Bankr. N.D. Cal.) Chapter 11 Plan filed 4/24/2013 § 7.24 ("To the extent reasonably available, the Reorganized Debtor may purchase errors and omissions insurance coverage for the Reorganized Debtor, the Plan Committee, the Litigation Trust and their members, officers, directors and professionals, including the Litigation Trustee."); *In re Friedman Bag Company, Inc*., 2004 WL 5327034 (Bankr. C.D. Cal.) Chapter 11 Plan filed 12/22/2004 § VIII.E.2 (providing for errors and omissions insurance for the estate manager and the creditors' committee).

[6] Because retirees in other cases did not seek E&O coverage, Opposition at 15-16, is no reason to compel Committee Members to accept the risk that frivolous lawsuits could result in substantial financial hardship to the Committee Members, all of whom are volunteers serving without compensation.

3

81927700\V-2
13-53846-tjt    Doc 2782    Filed 02/28/14    Entered 02/28/14 16:01:13    Page 3 of 7

5. ***Fourth***, the City cannot legitimately challenge the importance of the Committee to the bankruptcy process or the importance of the Insurance Policy to the Committee Members. The City requested formation of the Committee to act as a counterparty with respect to the City's efforts to significantly reduce retiree pension and OPEB benefits. Each Committee Member has taken its role seriously, and each has volunteered hundreds of hours to this case.

6. Although the Court is aware of the public nature of the case, it may not be aware of the significant attention and scrutiny Committee Members receive for their roles in this case. This Court should be aware of the very real possibility that litigation may be brought against Committee Members for merely serving on the Committee. To resolve this very legitimate issue, the Court should grant the Motion.

7. ***Fifth***, the City's contention that insurance is inappropriate because certain Committee Members worked for the City without coverage is misleading and irrelevant. The Committee Members' role here is significantly different from any work they did as a City employee. Moreover, while employed, Committee Members were protected by the City through indemnification requirements that are found under City ordinance and contracts.[7] In fact, prior to seeking insurance coverage, the Committee expressly requested that the City provide indemnification for Committee members. The City responded that they could not provide such indemnity here.

8. Also irrelevant is the fact that Committee Members are afforded qualified immunity implied under § 1103(c) because this implicit immunity does not cover defense costs.

---

[7] See City Municipal Code Section 13-11-1, et seq. (Defense and Indemnification of Employees Against Damage Suits, Claims, Etc. (attached hereto as Exhibit 3); 1979-80 Agreement Between Detroit Police Lieutenants' and Sergeants' Association and the City of Detroit, Page 28, section 13 ( "Legal Counsel: The City will provide legal counsel and pay any costs and judgements [sic] that arise out of lawsuit filed against members of the Detroit Police Lieutenants' and Sergeants' Association alleging any act committed while said officer was in the good faith performance of his duties.") (attached hereto as Exhibit 4).

The City also states that "it is commonplace for municipal debtors to include certain exculpation provisions and injunctions in any plan of adjustment that would further protect the interests of Committee members." Opposition at 8. However, no such protections for the Committee appear in the releases and exculpations in the Debtor's filed plan. Plan for the Adjustment of Debts of the City of Detroit ("Plan") (ECF #2708) §§ III.D.6, 7. In fact, under the Debtor's current plan, the Committee may continue to exist following the effective date to object to certain disputed claims. Plan § III.D.1. While this omission may simply be a negotiating tactic on the part of the Debtor, the omission of Committee protections demonstrates the necessity of the Insurance Policy.[8]

9. At bottom, the Policy Premium is an actual, necessary and reasonable expense of the Committee.

**WHEREFORE**, the Committee respectfully requests that this Court enter an order, substantially in the form attached to the Motion, (i) allowing the Policy Premium as a reasonable administrative expense and authorizing payment thereof and (ii) granting such other and further relief as this Court deems just and proper.

---

[8] Moreover, as the Debtor recognizes, the Committee seeks coverage "*whether or not* a plan is confirmed in this case." Opposition at 8 (emphasis in original). That is exactly the point -- if a plan is not confirmed there can be no plan protections for the Committee.

Dated: February 28, 2014

**BROOKS WILKINS SHARKEY & TURCO PLLC**

/s/ Matthew E. Wilkins
Matthew E. Wilkins (P56697)
Paula A. Hall (P61101)
401 South Old Woodward, Suite 400
Birmingham, MI 48009
Tel: (248) 971-1800
wilkins@bwst-law.com
hall@bwst-law.com

*Attorneys for the Retirees' Committee*

**DENTONS US LLP**

Sam J. Alberts
1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005-3364
Tel: (202) 408-6400
sam.alberts@dentons.com

Carole Neville
Claude D. Montgomery
1221 Avenue of the Americas
New York New York 10020
Tel: (212) 768-6700
carole.neville@dentons.com
claude.montgomery@dentons.com

Christopher D. Soper
233 S. Wacker Drive Ste. 7800
Chicago, IL 60606
Tel: (312) 876-8000
christopher.soper@dentons.com

**CERTIFICATE OF SERVICE**

       I hereby certify that on February 28, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

       /s/ Matthew E. Wilkins
       Matthew E. Wilkins (P56697)
       401 South Old Woodward, Suite 400
       Birmingham, MI 48009
       Tel: (248) 971-1800
       wilkins@bwst-law.com