EXHIBIT 1

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |

### Fee Review Order

Upon consideration of the proposed fee review order filed by Robert M. Fishman, the Court appointed fee examiner (the "Fee Examiner"), pursuant to paragraph 4 of the Court's Order Appointing Fee Examiner dated August 19, 2013 (Docket No. 383) (the "Fee Examiner Order") (a copy of which is attached hereto and made part hereof as Exhibit A), the Court having considered the statements of the Fee Examiner and other interested parties made in writing or in open Court,

THE COURT HEREBY FINDS AND DETERMINES that –

A.      The Court has jurisdiction over the subject matter of this Fee Review Order pursuant to 28 U.S.C. §§ 157 and 1334.

B.      The Court has authority to enter this Fee Review Order pursuant to 28 U.S.C. § 157(b)(2) and 11 U.S.C. §§ 105(a).

C.      In accordance with paragraph 4 of the Fee Examiner Order, the Fee Examiner and counsel for the debtor (the "City") met in person and communicated by phone and email to consult about the terms of the proposed fee review order prior to its submission to the Court.  Separately, the legal professionals for the Official Committee of Retired Employees (the "Committee") have spoken with the Fee Examiner and with the City to discuss the proposed terms of the fee review order.

D.      This Fee Review Order is consistent with the parameters set forth in paragraphs 4 and 6 of the Fee Examiner Order.

E.      Due and proper notice of, and an opportunity to object to the entry of, this Fee Review Order has been provided to all interested persons and entities, including, without limitation, (1) counsel to the City, and (2) the parties receiving notice of filings in this Case through the Court's CM/ECF system ("CM/ECF"), and no other or further notice and opportunity to object need be provided.

F.      The Fee Examiner and his counsel and advisors (together, the "Fee Examiner Parties") shall perform their work hereunder and under the Fee Examiner Order

as officers of the Court. The Fee Examiner Parties are not parties to this chapter 9 case (this "Case") or any contested matter or adversary proceeding in this Case, and shall not be deemed or treated as such.

G.      The relief provided in this Fee Review Order is in the best interests of the City and its creditors, and just cause exists for its entry.

H.      The City has expressly consented to the relief provided in Paragraphs 11, 24, and 27 of this Fee Review Order.

THE COURT HEREBY ORDERS that the following procedures and requirements shall be applicable to and govern the submission, disclosure and review of all Professional Fee Expenses (as that term is defined in the Fee Examiner Order):

1.      On or before September 30, 2013, the City shall submit to the Fee Examiner a list of all professionals who have been retained to render services in connection with this Case and who will seek payment of compensation and reimbursement of expenses from the City for postpetition services (collectively, the "City Professionals") and a list of all known OC Professionals (as defined below), which lists may be amended or supplemented from time to time, provided that which professional is placed on which list must be reasonably acceptable to the Fee Examiner. For the avoidance of doubt, the list of professionals shall include the claims and noticing agent retained in this Case. Separately, on or before September 30, 2013, the Committee will submit to the Fee Examiner a list of all professionals who have been retained by the Committee as of that time to render services in connection with the case and who will be compensated for fees and expenses by the City (collectively, the "Committee Professionals"). The City Professionals and Committee Professionals are referred to collectively as the "Professionals."

2.      On or before October 4, 2013, each Professional identified by the City and the Committee shall submit to the Fee Examiner (a) an executed copy of its engagement letter, (b) a verified statement respecting its regular hourly rates and its Discounted Rates (as defined below), and (c) a list of the billing and expense categories that it will use in its Monthly Invoices (as defined below), which list must be acceptable to the Fee Examiner in his reasonable discretion. The Fee Examiner and the Professionals may modify the applicable billing and expense categories thereafter by agreement.

3.      The Fee Examiner's review hereunder shall be conducted solely with respect to the fees and expenses of the Professionals for the period from and after the commencement of this Case on July 18, 2013. Therefore, each Professional's July 2013 Monthly Invoice submitted to the Fee Examiner shall be for the postpetition period of July 18, 2013 to July 31, 2013 (the "July Postpetition Invoices").

4.      Each Professional must provide the Fee Examiner and its respective client with a complete copy of its respective monthly invoice, including detailed descriptions of the services rendered and costs advanced and a summary description, by category, of the

2

13-53846-tjt   Doc 2712   Filed 02/19/14   Entered 02/19/14 06:01:13   Page 3 of 9
13-53846-swr   Doc 810   Filed 09/13/13   Entered 09/13/13 09:34:34   Page 3 of 9

work performed (the "Monthly Invoices"), within 49 days after the end of each calendar month (the "Invoice Deadline"); provided, however, the July Postpetition Invoices and the August 2013 Monthly Invoices should be provided on or before October 21, 2013 and may be consolidated. In addition, within 14 days of the submission of its Monthly Invoice to the Fee Examiner and its client, each Professional for the Committee shall provide a copy of such invoice to the City, which may be in the form of a Redacted Invoice (as defined below). The Committee also may submit invoices for reimbursement of out-of-pocket expenses of its members at the same time it submits its fee statements to the Fee Examiner and the City. Each month, the Fee Examiner shall transmit to the City a list of all Professionals who have timely provided a Monthly Invoice to the Fee Examiner.

5.     The Fee Examiner will create a preliminary report respecting each timely submitted Monthly Invoice (the "Preliminary Report") and shall transmit that Preliminary Report to the specific Professional within 35 days of the Invoice Deadline, with a copy to lead counsel for the City (for City Professionals) or lead counsel for the Committee (for Committee Professionals). The Fee Examiner, in his discretion, may consult with the Professionals in connection with the preparation of the Preliminary Reports. The Fee Examiner will provide any comments on the expenses of Committee members to the Committee's lead counsel.

6.     During the 14-day period after the Fee Examiner transmits the Preliminary Report (the "Resolution Period"), the Fee Examiner and the specific Professional shall meet and confer respecting any issues raised in the Preliminary Report in an effort to resolve such issues by agreement (the "Resolution Discussion").

7.     Within 14 days after the expiration of the Resolution Period, the Fee Examiner shall prepare a final monthly report respecting all of the Monthly Invoices (the "Final Monthly Report"). In the Final Monthly Report, the Fee Examiner shall delineate all write-offs and other adjustments made to each Monthly Invoice, both before the submission of the Monthly Invoice and as a result of the Resolution Discussion.

8.     The Fee Examiner shall prepare a quarterly written report (the "Quarterly Reports"), which shall include the following:

   a.   Copies of each of the Final Monthly Reports for the applicable months and a copy of each Monthly Invoice (subject to redacting as provided below).

   b.   A summary of the Professional Fee Expenses for each Professional for the applicable time period, as well as for all prior time periods.

   c.   A statement by the Fee Examiner as to whether all of the Professional Fee Expenses covered by the Quarterly Report have been fully disclosed and are reasonable.

3

9.     The Quarterly Reports shall be filed with the Court and posted on the Emergency Manager's page of the City's website and on the restructuring website maintained by City's claims and noticing agent.  The first Quarterly Report, for the postpetition portion of July 2013 and the months of August and September 2013, shall be filed on or before January 15, 2014, and subsequent Quarterly Reports shall be filed approximately every 91 days thereafter.

10.     The Fee Examiner's review, and his conclusion under paragraph 8.c. above, shall be solely based on section 943(b)(3) of the Bankruptcy Code and not based on any other standard (such as under sections 330 and 331 of the Bankruptcy Code, which do not apply in chapter 9).  Any finding by the Fee Examiner that any Professional Fee Expenses have not been fully disclosed or are not reasonable may be challenged by a motion of the affected Professional seeking a determination of the Court, or by the City in connection with the confirmation of its plan of adjustment.

11.     Upon submission of a Monthly Invoice to the Fee Examiner, the City agrees to pay promptly eighty-five percent (85%) of the requested fees and one hundred percent (100%) of the requested expenses to the applicable Professionals and Retiree Committee Member.  For the purpose of this Order, it is presumed that payment within 42 days is prompt.  Upon the filing by the Fee Examiner of a Quarterly Report, the City may pay any remaining unpaid amounts respecting the Monthly Invoices covered by such Quarterly Report.

12.     All Professionals may charge rates discounted to the extent that such Professional and their respective client have agreed (the "Discounted Rates").  The use of Discounted Rates, as well as any voluntary reduction and write-offs, will be taken into consideration by the Fee Examiner in considering the reasonableness of fees identified in Monthly Invoices.  This provision is not intended to prevent such professionals from receiving annual rate increases starting on January 1, 2014.

13.     Each Monthly Invoice shall be broken down into specific categories of services, and contain a detailed statement of the services rendered by each timekeeper, by each category and by each day.  Time from different categories of services shall not be bundled in the same time entry.  To the extent that multiple tasks are billed by the same person in the same category on the same date, each such separate task shall reflect a separate and identifiable time component.  For Professionals not billing on an hourly basis, each Monthly Invoice shall include a summary description of the work performed and such other information as may be agreed upon by the Professional and the Fee Examiner.

14.     Time shall be recorded in tenths of an hour increments for all Professionals billing on an hourly basis, unless the Fee Examiner agrees in advance to a different arrangement with a particular Professional.

15. Travel time may be billed by a timekeeper at up to one half of the otherwise applicable rate. Work performed by the timekeeper during travel may be billed at the applicable rate without further discount.

16. Professionals may bill for reimbursement of actual and necessary expenses incurred on behalf of their client (the "Expenses"). The following Expenses generally will be found by the Fee Examiner to be unreasonable: (a) local transportation and meals ("local" meaning at the home location of the particular timekeeper); (b) working meals other than while traveling on business; (c) alcoholic beverages; (d) in-house faxing and in-house messenger/delivery services; (e) charges for in-house printing/photocopy expenses in excess of $0.10 per page; (f) charges for Westlaw, Lexis, Pacer and similar research tools and programs; (g) charges for in-room entertainment, such as movies; (h) first class or business class air fare (i.e., air fare other than for coach class travel); and (i) hotel expenses other than standard room rates.

17. Each Monthly Invoice shall identify specific categories of Expenses, and contain a detailed breakdown of the Expenses for which reimbursement is sought by these categories.

18. Professionals' reasonable fees and expenses may include reasonable amounts incurred to fulfill the requirements of this Fee Review Order.

19. The Fee Examiner reserves the right to make reasonable modifications to the requirements of this Fee Review Order respecting the content and/or format of the Monthly Invoices (either on an ongoing basis or for a particular circumstance) by agreement with a Professional or by further order of this Court on notice to the applicable Professional(s).

20. Each Professional must submit to the Fee Examiner all of its Monthly Invoices in an open and searchable electronic data format mutually acceptable to the Fee Examiner and the Professional.

21. Each Professional, in consultation with its respective client, and as dictated by its professional judgment respecting privilege and strategic confidentiality concerns, may prepare, if necessary, a redacted version of the Monthly Invoice (the "Redacted Invoice"), expressly marked "Redacted," for inclusion by the Fee Examiner with the Quarterly Reports, and shall submit the same to the Fee Examiner no later than 14 days after the deadline for submission of the applicable unredacted Monthly Invoice. In that instance, the unredacted Monthly Invoice must be marked as "Confidential" by the Professional (the "Confidential Invoice"). The Fee Examiner may challenge the necessity of the redaction of any particular time entry and raise that issue with the Professional during the Resolution Period; however, the ultimate decision on the extent of redaction contained in any Redacted Invoice shall be solely within the discretion of the Professional.

5

22. To protect privileged and/or confidential material contained in Monthly Invoices to the maximum extent possible under applicable law, the following shall apply:

a. Each Confidential Invoice and any other information provided by a Professional to the Fee Examiner Parties in connection with the review of fees and expenses hereunder and designated as confidential ("Confidential Information") shall be held by the Fee Examiner Parties in confidence as officers of the Court and not as parties to this Case or any other case or proceeding. Such Confidential Information shall be used by the Fee Examiner to carry out his duties under this Fee Review Order and not for any other purpose. In addition, the Confidential Information shall not be disclosed by the Fee Examiner Parties to any third parties (except with the written consent of the applicable Professional) and shall not be available to third parties by discovery of the Fee Examiner Parties. For the avoidance of doubt, any Redacted Invoice shall not be considered confidential and may be publicly filed as contemplated herein.

b. Because the Fee Examiner Parties receive and hold the Confidential Information on a confidential basis as officers of the Court, the attorney-client privilege and any other privileges attaching to this material are fully preserved to the extent otherwise valid and shall not be deemed waived or limited in any manner or for any purpose by virtue of a Professional's compliance with this Fee Review Order. In addition, all applicable privileges belong solely to the Professionals' clients, and the Fee Examiner Parties may not raise or waive any of the clients' applicable privileges (except with the written consent of the applicable Professional or client).

23. On or before the date that the Fee Examiner completes each Final Monthly Report, each Professional must submit to the Fee Examiner a written verification from its client that its respective client has reviewed the Monthly Invoice, has no objection to the fees and expenses contained therein and believes that the fees and expenses are reasonable under the applicable circumstances.

24. The City has agreed to pay the reasonable fees and expenses of the Committee's Professionals, which at this time are lead counsel (Dentons), local counsel (Brooks Wilkins Sharkey & Turco), a financial advisor (Lazard Freres & Co. LLC) and an actuary (Segal Consulting), and the reasonable expenses of the members of the Committee. The City further agrees that it will pay the fees and expenses of these Committee Professionals, and the expenses of the Committee members, to the extent that they are found to be reasonable by the Fee Examiner, subject to the City's right to seek a judicial determination of reasonableness in this Court. Upon the submission of a timely Monthly Invoice to the City by a Committee Professional, the City agrees to promptly pay 85% of the requested fees and 100% of the requested expenses pursuant to paragraph 11 above, consistent with its treatment of the City's Professionals. Within

6

14 days after receiving a Monthly Invoice from a Committee Professional, or an invoice for Committee member expenses, the City may provide the Fee Examiner and the respective Committee Professional a written statement identifying any portion of such invoice that it believes is or may be unreasonable. The Fee Examiner will review the unredacted Monthly Invoice (and any invoice for Committee members expenses) and will consider the City's comments in preparing its Preliminary Report and Final Monthly Report. The City agrees to pay to the Committee Professional (or to the Committee members for their expenses, where applicable) any amounts identified as reasonable in the Fee Examiner's Quarterly Report that have not already been paid, without limitation to the City's rights to seek a subsequent judicial determination of reasonableness. Nothing in this paragraph is intended to deprive the Committee from seeking the retention and payment to additional professionals or the City or Fee Examiner to oppose such retention fees on the basis of reasonableness.

25. Ordinary course professionals, hired by the City not in conjunction with the Case, but rather in the same contexts and capacities as the same were typically hired by the City prior to the commencement of the Case (collectively, "OC Professionals"), shall not be Professionals within the meaning of this Fee Review Order and their invoices shall not be subject to review hereunder.

26. The Fee Examiner may consider and be informed by the Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases promulgated by the Executive Office for the United States Trustees in his review of the Professional Fee Expenses; provided, however, that the review of fees and expenses shall solely be pursuant to the standard in section 943(b)(3) of the Bankruptcy Code.

27. The fees and expenses of the Fee Examiner Parties (collectively, the "Examiner's Fees") shall be submitted and paid pursuant to the following procedures:

  a. The Fee Examiner shall file a monthly invoice (the "FE Monthly Invoice") with the Court and serve a Notice of Filing of the same on parties entitled to receive notice through CM/ECF. The FE Monthly Invoice shall set forth a detailed statement of the fees and expenses requested by the Fee Examiner Parties, on or before 49 days after the conclusion of each calendar month.

  b. The Fee Examiner shall serve a copy of the FE Monthly Invoice on the City and counsel to the Committee.

  c. The City shall post the FE Monthly Invoice on the Emergency Manager's page of the City's website and on the restructuring website maintained by the City's noticing agent.

  d. The City has the right to object to any portion of the FE Monthly Invoice (the "Objection"). If the City has an Objection, it will send a

written statement detailing the Objection to the Fee Examiner. Within 35 days of receipt of the FE Monthly Invoice, the City agrees to pay eighty-five percent (85%) of the requested fees and one hundred percent (100%) of the requested expenses that are not the subject of an Objection.

e.  The Fee Examiner shall file an application with the Court seeking approval of the Examiner's Fees (the "<u>Application</u>") no more frequently than quarterly and serve a Notice of Filing of the same on parties entitled to receive notice through CM/ECF. The Applications will be filed on the same day that the Fee Examiner files his Quarterly Reports.

f.  Any unresolved Objections pending at the time of the filing of an Application shall be filed as objections to such Application and will resolved by the Court at the hearing on the Application.

28.  The Fee Examiner has been appointed as an officer of the Court with respect to the performance of his duties. The Fee Examiner Parties are hereby provided with the maximum immunity permitted by law from civil actions for all acts taken or omitted in the performance of their duties and powers. No person or entity shall commence an action against the Fee Examiner Parties in connection with their duties and powers except in this Court, and with the prior approval of this Court, which retains exclusive jurisdiction therefor. Any and all claims or causes of action not instituted against the Fee Examiner Parties prior to the 28th calendar day after entry of an order determining the last Application in the Case shall be barred forever and discharged and all persons and entities shall be enjoined from prosecuting such claims in any manner thereafter.

29.  The Fee Examiner and the City reserve the right to move the Court for an order modifying this Fee Review Order.

.

**Signed on September 11, 2013**

**/s/ Steven Rhodes**
**Steven Rhodes**
**United States Bankruptcy Judge**
