UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  
City of Detroit, Michigan,  
    Debtor.  
_____/

Chapter 9  
Case No. 13-53846  
Hon. Steven W. Rhodes

**Order Granting the City's Motion to
Vacate the Appointment of the Official
<u>Committee of Unsecured Creditors</u>**

    This matter is before the Court on the City of Detroit's Motion for Entry of an Order Vacating the Appointment of the Official Committee of Unsecured Creditors. (Dkt. #2626) The United States Trustee filed an objection to the motion (Dkt. #2688), as did the Committee itself. (Dkt. #2687) The Court heard oral argument on the motion on February 19, 2014, and took the matter under advisement.

    For the reasons stated below, the Court concludes that 11 U.S.C. § 1102(a)(1), on which the U.S. Trustee relied in appointing the Committee, does not apply in a chapter 9 case. In the alternative, the Court concludes that it has the discretion under 11 U.S.C. § 105(a) to disband the Committee. Finally, the Court concludes that because of the lack of value of the Committee in this case and the likely substantial costs for the fees of the professionals of the Committee, that discretion should be exercised in this case. Accordingly, the motion to vacate the appointment of the Committee is granted.

**I. Background**

    The U.S. Trustee appointed the Official Committee of Unsecured Creditors ("the Committee") on December 23, 2013, and filed notice of the appointment with this Court the same day. (Dkt. #2290) The notice states that in appointing the Committee, the U.S. Trustee

acted "pursuant to §§ 901 and 1102(a)(1) and (b) of the Bankruptcy Code." The notice identifies the following members of the Committee: 1) Financial Guaranty Insurance Company, which insures some of the certificates of participation the City issued in 2005 and 2006, 2) the Police and Fire Retirement System of the City of Detroit, 3) the General Retirement System of the City of Detroit, 4) Wilmington Trust Company, which serves as the trustee for holders of the certificates of participation, and 5) Jessie Payne, an individual tort claimant.

The issues raised in the motion and the objections concern the U.S. Trustee's obligations under 11 U.S.C. § 1102(a) in this chapter 9 case, and the Court's authority to disband an official committee appointed by the U.S. Trustee.

Section 1102(a) provides:

> (a)(1) Except as provided in paragraph (3), as soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.
>
> (2) On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.
>
> (3) On request of a party in interest in a case in which the debtor is a small business debtor and for cause, the court may order that a committee of creditors not be appointed.
>
> (4) On request of a party in interest and after notice and a hearing, the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders. The court may order the United States trustee to increase the number of members of a committee to include a creditor that is a small business concern . . . if the court determines that the creditor holds claims (of the kind represented by the committee) the aggregate of which, in comparison to the annual gross revenue of that creditor, is disproportionately large.

2

11 U.S.C. § 1102(a).

Section 1102 is incorporated into chapter 9 by 11 U.S.C. § 901(a). *See also* 11 U.S.C. § 103(f) ("Except as otherwise provided in section 901 of this title, only chapters 1 and 9 of this title apply in a case under such chapter 9."). Section 901 does not exclude any particular subsections of § 1102. *See* 11 U.S.C. § 901(a).

The U.S. Trustee and the Committee assert that because § 901 incorporates § 1102 into chapter 9 without excluding any particular subsections of § 1102, and the language of § 1102(a)(1) is mandatory ("the United States trustee *shall* appoint . . ."), the U.S. Trustee was statutorily required to appoint the Committee after this Court entered the Order for Relief Under Chapter 9 of the Bankruptcy Code. (Dkt. #1946)

The City disputes this position, arguing that the U.S. Trustee's authority to appoint a committee under § 1102(a)(1) is discretionary in chapter 9. Moreover, the City argues, the U.S. Trustee abused its discretion by appointing the Committee because the Committee would add little value to the case, particularly given the advanced stage of the proceedings.

As a corollary issue, the parties also dispute whether this Court has authority under 11 U.S.C. § 105 to order the disbandment of the Committee.

## II. The U.S. Trustee's Standing to Object to the City's Motion

A preliminary matter is the U.S. Trustee's standing to object to the City's motion. At the hearing on the motion, the Court raised this issue with counsel for the U.S. Trustee, who responded that 11 U.S.C. § 307 gives the U.S. Trustee standing to object. That section provides, "The United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title but may not file a plan pursuant to section 1121(c) of this title."

The Court concludes that § 307 is not incorporated into chapter 9. It is not on the list of sections in the bankruptcy code that § 901(a) incorporates into chapter 9. Moreover, 11 U.S.C. § 103(f) specifically states, "Except as provided in section 901 of this title, only chapters 1 and 9 of this title apply in a case under such chapter 9." 11 U.S.C. § 103(f). Thus, despite the sweeping language of § 307, the Court concludes that §§ 103(f) and 901(a) establish that the U.S. Trustee has no statutory standing in chapter 9 cases.

Nevertheless, the Court recognizes that as an administrative agency, the U.S. Trustee has a substantial interest in defending its own actions in this case when parties to the case challenge those actions. The Court concludes, therefore, that the U.S. Trustee does have standing to object to the City's motion. The U.S. Trustee does not, however, have general standing under 11 U.S.C. § 307 to "raise and appear and be heard on any issue" in this case.

### III. Whether 11 U.S.C. § 1102(a)(1) Is Applicable in a Chapter 9 Case

Turning to the substantive issues, the Court concludes that 11 U.S.C. § 1102(a)(1) is not applicable in a chapter 9 case. In so determining, the Court relies on the inclusion of the phrase in subsection (a)(1), "as soon as practicable after the order for relief under chapter 11 of this title." This language compels the conclusion that § 1102(a)(1) applies only in chapter 11 cases. Because no "order for relief under chapter 11 of this title" has been (or will be) entered in a chapter 9 case, subsection (a)(1) simply does not apply.

To interpret the limiting phrase any other way would be to read it out of the statute. This is an unacceptable result. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'"); *see also id.* (quoting *Market Co. v. Hoffman*, 101 U.S. 112, 115 (1879)) ("As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought,

4

upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'").

The Court concludes that this is true for both the "mandatory" part of subsection (a)(1) ("the United States trustee *shall* appoint a committee of creditors holding unsecured claims") as well as the "discretionary" part of subsection (a)(1) ("and *may* appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate") (emphasis added). In other words, the limiting phrase applies to the entirety of subsection (a)(1) that follows the limiting phrase.

The fact that § 901(a) incorporates the entirety of § 1102 does not compel a different result. Other subsections of § 1102, though ostensibly incorporated by § 901, also clearly do not apply in a chapter 9 case. For example, § 1102(a)(3), which allows the court to order that a committee not be appointed when the debtor is a "small business debtor," does not apply in a chapter 9 case. A chapter 9 debtor is not a "small business debtor" as that term is defined by 11 U.S.C. § 101(51D) because the statutory definition is limited to "a person engaged in commercial or business activities."

Similarly, § 1102(b)(2) does not apply in a chapter 9 case. That section provides, "A committee of equity security holders appointed under subsection (a)(2) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest amounts of equity securities of the debtor of the kinds represented on such committee." Because a municipality does not have equity security holders, the provisions of § 1102 that refer to equity security holders also do not apply in chapter 9. *See also* Fed. R. Bankr. P. 3018 advisory committee's note ("This rule applies in chapter 9, 11 and 13 cases under the Code. The references in the rule to equity security holders will not, however, be relevant in chapter 9 or 13 cases.").

5

Also supporting this conclusion is the basic rule of statutory interpretation that "a more specific provision takes precedence over a more general one." *United States v. Perry*, 360 F.3d 519, 535 (6th Cir. 2004). While § 901 lists § 1102 as generally applicable in chapter 9, the specific terms of subsection (a)(1) of § 1102 exclude it from application in chapter 9.

The Court recognizes that committees of unsecured creditors have been appointed in chapter 9 cases, and in some cases, with explicit reference to subsection 1102(a)(1). *See, e.g.*, *In re Cnty. of Orange*, 219 B.R. 543, 558 (Bankr. C.D. Cal. 1997) ("The Committee, appointed in [the] County's chapter 9 case under Code § 1102(a)(1), is comprised of schools, municipalities, special districts, and other government entities who deposited money into the Orange County Investment Pools[.]"); *In re Colo. Centre Metro. Dist.*, 113 B.R. 25, 26 (Bankr. D. Colo. 1990) ("The argument is that under § 1102(a)(1), made applicable to Chapter 9 by § 901(a), any committee representing creditors may only be appointed after entry of the 'Order for Relief.'").

However, neither the parties nor the Court were able to identify a decision in which the court considered the effect of the limiting phrase in § 1102(a)(1). Because the issue here is one of first impression, the Court considers the express limiting language of § 1102(a)(1) to be of much greater significance than the customary practice of the U.S. Trustee in appointing committees of unsecured creditors in chapter 9 cases.

For these reasons, the Court concludes that subsection (a)(1) of 11 U.S.C. § 1102 does not apply in a chapter 9 case. As a result, the U.S. Trustee lacked the statutory authority to appoint the Committee under that section and therefore the appointment is null and void. *See, e.g.*, *In re McKenzie*, 716 F.3d 404, 413-14 (6th Cir. 2013) (Actions taken outside the scope of the U.S. Trustee's authority are *ultra vires*).

The U.S. Trustee's authority to appoint committees in chapter 9 is therefore limited to the authority granted in subsection (a)(2) of § 1102. That subsection provides, "On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee." 11 U.S.C. § 1102(a)(2).

In this case, the U.S. Trustee appointed the Official Retiree Committee pursuant to 11 U.S.C. § 1102(a)(2). (Dkt. #566) It did so after the City filed a motion seeking such a committee (Dkt. #20), after a hearing was held, and after the Court found the committee was necessary to ensure adequate representation of retired city employees. (Dkt. #279) The Court's holding today therefore has no impact on the standing of the Retiree Committee to continue to participate in this case. Moreover, the successful and proper application of § 1102(a)(2) in this case also demonstrates that the incorporation of § 1102 into chapter 9 by § 901 is not at all nugatory.

Accordingly, the Court concludes that 11 U.S.C. § 1102(a)(1) does not apply in a chapter 9 case and on this ground alone, the City's motion to disband the Committee is granted.

### IV. Whether the Court Can and Should Disband the Committee Under § 105(a)

In the alternative, the Court concludes that even if § 1102(a)(1) does apply in a chapter 9 case, the Court is authorized to vacate the appointment of the Committee pursuant to 11 U.S.C. § 105, and that this authority should, in the Court's discretion, be exercised in this case. The

7

parties dispute both issues.[1] The Court will first address whether it has the authority to vacate the appointment.

## A. Whether the Court Has the Authority to Disband the Committee Under 11 U.S.C. § 105(a)

Section 105 of the bankruptcy code provides:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

Under section 105, bankruptcy courts have broad equitable power. *See Mitan v. Duval (In re Mitan)*, 573 F.3d 237, 244-245 (6th Cir. 2009) (citing *Childress v. Middleton Arms, L.P. (In re Middleton Arms, Ltd. P'ship)*, 934 F.2d 723, 724 (6th Cir. 1991)); *see also In re Dow Corning Corp.*, 280 F.3d 648, 656 (6th Cir. 2002) ("Consistent with section 105(a)'s broad grant of authority, the Code allows bankruptcy courts considerable discretion to approve plans of reorganization."); *Cheesman v. Tenn. Student Assist. Corp. (In re Cheesman)*, 25 F.3d 356, 360 (6th Cir. 1994) ("Several courts have suggested that the bankruptcy courts have broad equitable powers to protect debtors pursuant to § 105(a)."); *In re Mehlhose*, 469 B.R. 694, 711 (Bankr. E.D. Mich. 2012) ("Section 105(a) provides bankruptcy courts with authority to award attorney fees as a sanction for misconduct.").

---

[1] In support of the City's argument that the Court has the authority to order the disbandment of the Committee, it relies on subsection (d) of 11 U.S.C. § 105 and *In re Pacific Ave., LLC*, 467 B.R. 868 (Bankr. W.D.N.C. 2012) (granting chapter 11 trustee's motion to disband creditors committee, in reliance on 11 U.S.C. § 105(d)). The Court concludes that the analysis on the issue in this case is more appropriate under subsection (a) of 11 U.S.C. § 105.

This authority "exceeds the equitable authority available under 'traditional equity jurisprudence.'" *In re Mehlhose*, 469 B.R. at 710 (quoting *In re Dow Corning Corp.*, 280 F.3d at 658).

Nevertheless, "The bankruptcy court's broad equitable powers are . . . constrained to actions or determinations that are 'not inconsistent' with the Bankruptcy Code." *ADT Corp. v. Advantage Pkg. Inc.* (*In re ADT Corp.*), 352 F.3d 1062, 1066 (6th Cir. 2003) (citing *United States v. Energy Res. Co.*, 495 U.S. 545, 549-50 (1990); *In re Dow Corning*, 280 F.3d at 658; *In re Foremost Mfg. Co.*, 137 F.3d 919, 924 (6th Cir. 1998)).

The Court finds that vacating the appointment of the Committee is not inconsistent with the bankruptcy code. On this point, the Committee and the U.S. Trustee focus on the fact that the bankruptcy code explicitly grants to the court the authority to order that a committee of creditors not be appointed in cases involving a small business debtor, 11 U.S.C. § 1102(a)(3), and to review the composition of the committee. 11 U.S.C. § 1102(a)(4). They argue that these provisions evidence the outer bounds of a bankruptcy court's authority to review the U.S. Trustee's decision to appoint the Committee.

The difficulty with this roundabout argument is that nowhere does the bankruptcy code explicitly prohibit the bankruptcy court from disbanding an unsecured creditors' committee. Therefore, interpreting § 105 to authorize a bankruptcy court to do so is simply not inconsistent with any bankruptcy code provision. Accordingly, the Court concludes that it has the authority to disband the Committee if the Court, exercising its discretion, determines that doing so "is necessary or appropriate" to carry out the provisions of title 11. *See* 11 U.S.C. § 105(a). The only remaining issue is whether this condition is met under the facts of this case. As explained below, the Court concludes that it is.

### B. Whether Disbanding the Committee Is Necessary or Appropriate to Carry Out the Provisions of Title 11

The Committee filed an objection to the City's motion to vacate its appointment and participated in the hearing on the City's motion. At the hearing, the Court pressed counsel for the Committee regarding the value that the Committee would bring to this chapter 9 case. Two issues motivated the Court's concern about this question – first, the Committee's stated disavowal of the mediation process in the case and second, the potentially extraordinary expense that might well result from the work of the Committee's professionals.

### 1. The Committee's Value in This Case

In its objection to the City's motion, the Committee stated:

> *The Committee has not attempted, and likely will not attempt, to join in the mediation.* Instead, the Committee believes that it will be most productive and efficient in a targeted manner, identifying specific needs and areas where the Committee can address issues in a cooperative manner that maximizes returns to unsecured creditors as a whole.

Committee's Obj. at 12 (emphasis added) (Dkt. #2687).

The Committee's stated disavowal of the mediation process is extraordinary in its manifest disrespect for the importance of mediation in this chapter 9 case, as well as for the orders of this Court and the mediator requiring all parties to participate in mediation. Four Committee members have already participated in mediation and presumably have heard and appreciated this Court's repeated admonitions regarding the value of mediation. Yet, inexplicably, the Committee chose to announce, in its first substantive pleading in the case, its intent to disobey the Court's mediation order.

Although the Committee's statement goes on to refer, vaguely, to "identifying specific needs and areas where the Committee can address issues in a cooperative manner," all that

remains beyond mediation is litigation, and of course there is little that is "cooperative" about litigation. Moreover, four of the five members of the Committee are already deeply involved in the litigation of this case. It is virtually certain that every issue that the Committee would raise in this case will be duplicative of issues raised by at least one other party, and more likely by many other parties.

The Committee fails to recognize that mediation is the process by which the parties—both creditors vis-à-vis the City and creditors vis-à-vis one another—are able to "identify[] specific needs" and "address issues in a cooperative manner." As this Court has emphasized, litigation is costly and time-consuming, and most often its results are that the winner takes all and the loser gets nothing.

The Committee's disavowal of mediation also cannot be reconciled with the purpose of § 1102. The legislative history of § 1102 states that such committees "will be the primary negotiating bodies for the formulation of the plan of reorganization." H.R. Rep. No. 95-595, (1977), 1978 U.S.C.C.A.N. 5963, 6357; *see also* 11 U.S.C. § 1103(c).

During the hearing on the City's motion, after the Court expressed deep concerns about the Committee's rejection of any role in mediation, counsel for the Committee stated that the Committee would rethink its position. This is simply too little, too late. In the two months since its formation, the Committee has had ample time to establish its goals in this case and the means by which it would seek to achieve those goals.

The legislative history of § 1102 further states that the Committee "will represent the various classes of creditors and equity security holders from which they are selected." H.R. Rep. No. 95-595, (1977), 1978 U.S.C.C.A.N. 5963, 6357. On this point the Court emphasizes that the

11

participation and representation of various groups of unsecured creditors in this case has been extraordinary.

In these circumstances, the Court finds the Committee would add little value to the case, if any. For these reasons, the Court remains wholly unconvinced that the Committee would play the useful or valuable role contemplated by § 1102.

**2. The Cost of the Committee**

The Court's second concern is for the cost of the Committee's professionals, which will be enormous if the Committee is allowed to continue. This is not mere speculation. Using the costs of the professionals retained by the City and by the Retiree Committee as a rough guide, it is safe to predict that the costs for the professional fees of the Committee would be in the millions of dollars.

That cost simply cannot be justified for the little value that the Committee would bring to the case. The parties dispute whether the bankruptcy code imposes this cost on the City over the City's stated objection, and whether the Committee's professional fees are subject to Court approval. Although this is not the proper context to resolve those disputes, it is doubtful that the City should even be required to litigate those issues in light of the Committee's apparent lack of value.

Finally, it is no answer to the Court's concern about costs that the Committee's professional fees are, or may be, subject to review by the fee examiner or, perhaps, by the Court. Even that litigation would undoubtedly be expensive and time-consuming. It would also be unjustified.

12

13-53846-tjt    Doc 2784    Filed 02/28/14    Entered 02/28/14 16:13:23    Page 12 of 13

For these reasons, the Court concludes that even if 11 U.S.C. § 1102(a)(1) does apply in a chapter 9 case, the Court has the authority to disband a creditors committee under 11 U.S.C. § 105(a) and that the circumstances of this case justify disbanding the Committee.

## V. Conclusion

Accordingly, it is hereby ordered that the City's motion is granted. The U.S. Trustee's Appointment of Committee of Unsecured Creditors (Dkt. #2290) is hereby vacated, and the Committee is disbanded.

The Court further concludes that this order renders moot the Committee's Application for Approval of the Employment of Steinberg Shapiro & Clark, as Co-Counsel for the Committee of Unsecured Creditors of the City of Detroit, Michigan *Nunc Pro Tunc* to January 22, 2014 (Dkt. #2685) and the Committee's Application to Employ Morrison & Foerster LLP as Attorneys to the Official Committee of Unsecured Creditors *Nunc Pro Tunc* to January 22, 2014 (Dkt. #2686). Appropriate orders denying those motions will be entered.

For Publication

.

**Signed on February 28, 2014**

                                                              **/s/ Steven Rhodes**
                                                              **Steven Rhodes**
                                                              **United States Bankruptcy Judge**