# EXHIBIT 2

# (SUPPLEMENTAL BRIEF)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| | ) | |

**COMMITTEE'S SUPPLEMENTAL BRIEF TO THE ISSUES RAISED AT THE FEBRUARY 19, 2014 HEARING ON THE MOTION OF DEBTOR FOR ENTRY OF AN ORDER VACATING THE APPOINTMENT OF OFFICIAL COMMITTEE OF <u>UNSECURED CREDITORS</u>**

The Official Committee of Unsecured Creditors (the "**Committee**") of the City of Detroit, Michigan (the "**City**"), through its proposed co-counsel, Morrison & Foerster LLP and Steinberg Shapiro & Clark, hereby submits this supplemental brief (the "**Supplemental Brief**") in response to the issues raised at the hearing held on February 19, 2014 (the "**Hearing**")[1] and to the arguments advanced for the first time in the 29-page *Reply in Support of Motion of Debtor For Entry of an Order Vacating the Appointment of Official Committee of Unsecured Creditors* (the "**Reply**"). In support of the Supplemental Brief, the Committee respectfully states as follows:

**I. THE PLAIN MEANING OF SECTION 1102(a)(1) PROVIDES FOR THE MANDATORY APPOINTMENT OF AN UNSECURED CREDITORS COMMITTEE IN CHAPTER 9 CASES**

1. It is abundantly clear that section 1102(a)(1) of the Bankruptcy Code is drafted poorly when applied in the chapter 9 context. This, however, does not mean that the language cannot be read plainly. In the City's Reply, filed less than 24 hours prior to the Hearing, the City

---

[1] Pending the Court's decision, the members of the Committee are in the precarious position of being fiduciaries without direction as to their role/existence.

raises for the first time a reading of section 1102(a)(1) that, despite its express and full inclusion in section 901, seeks to eliminate section 1102(a)(1) from chapter 9 completely or, in the alternative, suggests that only part of the statute is applicable.

2. A more plausible and plain reading, and one that gives full effect to the statute in chapter 9, is to read the clause set off by commas "as soon as practicable after the order for relief under chapter 11 of this title" as a parenthetical clause that only applies in chapter 11 cases. Such a reading of the statute gives full effect to section 1102 in chapter 9 cases, and recognizes the first clause of section 1102(a)(1)that states "[e]xcept as provided in paragraph (3), . . . ", which the City apparently deletes from the statute without addressing it. This plain reading is in concert with long-standing principles of statutory construction. *See Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1018 (1984) ("where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.); *Morton v. Mancari*, 417 U.S. 535, 551 (1974).

3. Alternatively, the City offers a tortured construction of the statute that proposes to redline the language of section 1102, eliminating part of section 1102(a)(1) and outright striking section 1102(a)(3), despite the full and complete inclusion of section 1102 in chapter 9. *See* 11 U.S.C. § 901(a). The City's interpretation of sections 1102(a)(1) and (3) of the Bankruptcy Code does not give effect to both sections 901 and 1102, and is, therefore, wrong. *See id.*

4. Although the City does not qualify as a small business debtor, and therefore section 1102(a)(3) does not apply in *this case*, the definitions in section 101 of the Bankruptcy Code make clear that a chapter 9 debtor could conceivably qualify as a small business debtor.[2]

---

[2] The Committee believes that the City is confusing qualification as a small business debtor under section 101(51D) of the Bankruptcy Code with a small business case, as defined in section 101(51C). The Committee concedes that a chapter 9 case could never be a "small business case" because the definition of small business case requires a filing under chapter 11 of the Bankruptcy Code.

Understanding that a chapter 9 debtor could qualify as a small business debtor alters the interpretation of section 1102(a)(1) by giving effect to the first clause of section 1102(a)(1)— "[e]xcept as provided in paragraph (3), . . . "—and recognizing the second clause— "as soon as practicable after the order for relief under chapter 11 of this title"—as a parenthetical clause that can be limited to only chapter 11 cases and read out of chapter 9 cases.

5. Section 101(51D) of the Bankruptcy Code defines a small business debtor as a "person" engaged in commercial or business activities that has debts less than $2,343,300. 11 U.S.C. § 101(51D). The Bankruptcy Code defines the term "person" to include governmental units in certain enumerated circumstances. 11 U.S.C. § 101(41). The term "governmental unit" includes a municipality, which is the only entity entitled to file under chapter 9 of the Bankruptcy Code.

6. Therefore, in the circumstances enumerated in section 101(41), a municipality could file for chapter 9 relief and qualify as a small business debtor.[3]

7. Because a chapter 9 debtor can be a small business debtor, there is another alternative reading to section 1102(a)(1), that changes the clause "as soon as practicable after the order for relief under chapter 11 of this title" to a parenthetical clause as opposed to an introductory clause. As a parenthetical clause "as soon as practicable after the order for relief under chapter 11 of this title" can be read out of the statute in the chapter 9 context and the grammatical integrity of the section maintained. Section 1102(a)(1) would then read,

> Except as provided in paragraph (3), [ . . . ] the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States Trustee deemed appropriate.

---

[3] Section 101(41) even includes a reference to governmental units qualifying as a person for purposes of section 1102 of the Bankruptcy Code.

11 U.S.C. § 1102(a)(1).

8. This interpretation gives full effect to the statute and renders all of the paragraphs of section 1102 of the Bankruptcy Code applicable in a chapter 9 case, something the City's interpretation does not do. *See Caminetti v. United States*, 242 U.S. 470, 490 (1917) ("the language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent.").

## II. THE COMMITTEE WILL PROVIDE VALUE THROUGH CONSENSUS BUILDING IN THE MEDIATION AND THE PLAN OF ADJUSTMENT PROCESS

9. Previously, the Committee stated that it has "not attempted, and likely will not attempt, to join the mediation." This statement was in response to the City's assertion that the Committee will serve as a disruptive force in the chapter 9 case, and more specifically, in the mediation. The City, without any basis to do so, lobbed unsubstantiated and conclusory allegations that the Committee would be wasteful and antagonistic prior to the Committee filing any papers in the case, let alone taking any action that could be seen as disruptive. The Committee's statement above was not a final decision on whether it would seek to participate in the mediation, rather a conservative approach to its role in the case and a prudent exercise of discretion to avoid unnecessary and duplicative costs and expenses. Having heard from the Court, the Committee will, in consultation with the mediators, seek to join the mediation as an active and constructive part of the resolution of this chapter 9 case.

10. During the Hearing, the Court expressed great concern with the value the Committee will provide. The Committee respectfully submits that it can provide value in at least two important ways, both of which would result in meaningful reductions in the amount of fees

4

and expenses incurred by the City.[4]  First, the Committee will serve as a consensus builder between the creditors during the mediation process.  Second, the Committee will serve as a conduit to the expedient resolution of the plan of adjustment process by developing consensus among the creditors.  These roles are likely to decrease the amount of money and time necessary to resolve the City's issues with its various creditor bodies.

11.  The reduction in time it takes to resolve the mediation and the plan of adjustment process reduces the costs and fees incurred by the City.  During the initial fee period of July through September, the City's professionals requested roughly $11.3 million in fees alone and Retiree Committee's professionals requested almost $2 million in fees.  This does not take into account the expenses, which were nearly another $500,000.  Reducing the time of the mediation and to get to a consensual plan helps to decrease the fees.  If the Committee reduces the time of the case by only one month that could result in substantial savings for the City.

12.  Given their experience and qualifications, this Committee and its chosen counsel are uniquely positioned to address both the mediation process and the plan of adjustment. Committee counsel has significant recent experience in the successful mediations that led to consensual confirmed plans in *In re Residential Capital LLC, et al.,* Case No 12-12020 (Bankr. S.D.N.Y. 2012); *In re AMR Corp., et al.*, Case No. 11-15463 (Bankr. S.D.N.Y. 2011); and *In re MF Global Holdings Ltd., et al.*, Case No. 11-15059 (Bankr. S.D.N.Y. 2011).[5]  In addition to their mediation experience, the Committee and its counsel are adept at claims review and analysis, including the claims subject to the ADR process.  In point of fact, one of the Committee

---

[4] These two examples are in response to the inquiries made at the Hearing and are provided based on where the chapter 9 case presently stands and do not account for the involvement of an organized representative body as new hurdles and/or challenges may arise. Further, there could be benefits realized by involvement of the Committee now such as the institutional knowledge that could be employed in addressing post-confirmation issues and litigation matters; a role typically filled by unsecured creditors' committees.

[5] As stated at the Hearing, the Committee has no current plans to hire additional professionals.

members has already determined there will be problems with the mechanics of the ADR process, and is prepared to work through the Committee and its counsel to address those issues. The Committee and its counsel can work with the City to resolve many issues that may arise with the ADR claims and the ADR process prior to the confirmation of the City's plan of adjustment and after.

    a.    **The Committee will Provide Direct Value to the City by Reducing the Amount of Time Necessary for Mediation, Thereby Reducing the Costs Associated with the Mediation.**

13. Although mediation is a necessary, important and vital part of the process in this case, it is also costly and time intensive. The Committee's ability to act as a bridge builder between the various creditor groups—as opposed to between the City and the creditors—can lead to a reduction in the amount of time necessary for the mediation. This would translate to a direct value to the City by reducing the fees and expenses associated with mediation. In addition, the Committee will provide a new perspective on the issues that have entrenched the mediation parties for the past eight months. Often, a new perspective by a different party—particularly one owing fiduciary duties to unsecured creditors—is helpful to cause parties to reconsider their current position and adopt a more workable situation.

14. Rather than focus on any one discrete issue in the mediation or otherwise, the Committee is focused on maximizing recoveries for all creditors.

15. By agreeing to serve on the Committee, the members have already demonstrated a desire to work together to come to a consensual resolution of the chapter 9 case because such service requires the members to take on fiduciary duties to work in the best interest of all unsecured creditors. By acting as a bridge builder between the creditor groups in the mediation, the Committee may give the mediation parties a kickstart that can expedite the time necessary to resolve the issues in the mediation. This would likely result in the reduction of millions of

6

ny-1132787
13-53846-tjt    Doc 2785-2    Filed 02/28/14    Entered 02/28/14 16:14:07    Page 7 of 9

dollars in fees and expenses for the City, and alone would provide tangible value to justify the Committee's role in the chapter 9 case.

    **b.    The Committee will Provide Direct Value to the City by Serving as a Consensus Builder in the Plan of Adjustment Process**

16. Although the City has filed its plan of adjustment, it has given no indication of whether that plan is consensual, feasible or, most importantly, confirmable. If other municipal bankruptcies are to serve as a guidepost for this case, the City's plan of adjustment, as currently filed, will not be confirmed. *See In re City of Prichard, Alabama* Case No. 09-15000 (Bankr. S. D. Ala. 2009) (Prichard filed its first plan of adjustment on May 19, 2010 [Docket No. 131] and nearly 4 years later, on January 24, 2014, Prichard filed its sixth iteration of its plan [Docket No. 397], which has not yet been confirmed.); *see also In re County of Orange* Case No. 94-22272 (Bankr. C.D. Cal. 1994) (County of Orange filed its first plan of adjustment on December 21, 1995 [Docket No. 2632] and its second amended plan on May 14, 1996 [Docket No. 3398].)

17. The Committee's involvement in a process that treats all unsecured creditors fairly will help to expedite and ensure that the plan complies with the requirement of section 943(b)(7) of the Bankruptcy Code that "the plan is in the best interests of creditors and feasible." 11 U.S.C. § 943(b)(7).

18. The creditors face a zero-sum game, and the question for the creditors is not what additional value can be extracted from the City but how quickly can a feasible, fair plan of adjustment be achieved. The Committee respectfully states that its efforts will enable a plan of adjustment process that is quicker and will result in a feasible, consensual plan; thus avoiding a chapter 18.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court deny the Motion and grant such other and further relief as the Court deems just and proper.

Dated: February 28, 2014
       New York, New York


/s/ Brett H. Miller
**MORRISON & FOERSTER LLP**
Brett H. Miller
Lorenzo Marinuzzi
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 468-8000
Fax: (212) 468-7900

And

**STEINBERG SHAPIRO & CLARK**
Mark H. Shapiro
Geoffrey T. Pavlic
25925 Telegraph Road, Suite 203
Southfield, MI
Tel: (248)352-4700
Fax: (248)352-4488

*Proposed Counsel for the Official Committee
of Unsecured Creditors of City of Detroit,
Michigan*