# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# (DETROIT)

| | |
|---|---|
| In re: ) | |
| ) | |
| CITY OF DETROIT, MICHIGAN, ) | CASE NO.: 13-53846 |
| ) | |
| ) | CHAPTER 9 |
| Debtor. ) | |
| ) | Hon. Steven W. Rhodes |
| ) | |

___

**THE WATER/SEWER BOND TRUSTEE'S LIMITED OBJECTION TO THE FIRST AMENDED ORDER ESTABLISHING PROCEDURES, DEADLINES AND HEARING DATES RELATING TO THE DEBTOR'S PLAN OF ADJUSTMENT**
___

U.S. Bank National Association, in its capacity as trustee (the "*Trustee*") for those certain bonds issued by the City of Detroit (the "*City*") for the Detroit Water and Sewer Department (the "*DWSD*") to (a) finance and refinance improvements to the City's Water Supply System and (b) finance and refinance improvements to the City's Sewage Disposal System, hereby files its Limited Objection to the *First Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment*, which this Court entered on February 25, 2014 (Docket No. 2755) (the "*Plan Procedures Order*"). In support of the Trustee's Limited Objection, the Trustee states as follows:

## SUMMARY

The Trustee's objection to the Plan Procedures Order is limited to the deadlines and dates relating to the Debtor's proposed *Plan for the Adjustment of the Debts of the City of Detroit*, dated February 21, 2014 (Docket No. 2708) (as the same may be amended, the "*Plan*"), including the confirmation hearing date. For the reasons set forth in more detail below, the

Trustee does not believe the Court's current confirmation schedule will allow adequate notice and opportunity for the Water/Sewer Bondholders (as defined below) to: (a) receive and review the *Disclosure Statement with respect to the Plan for the Adjustment of the Debtors of the City of Detroit*, dated February 21, 2014 (Docket No. 2709) (as the same may be amended, the "**Disclosure Statement**"), the Plan, the ballots, and any other items contained in the solicitation packet (the "**Solicitation Packet**"); (b) seek advice from their legal and/or financial advisors with respect to the Plan; (c) decide whether to accept or reject the Plan; (d) decide whether to object to confirmation of the Plan; and (e) timely complete and return their ballots and/or file any objections. Accordingly, in the interest of providing due process to the Water/Sewer Bondholders, the Trustee requests that the Court extend certain of the deadlines relating to the Plan and reset the commencement date for the confirmation hearing. The Ad Hoc Bondholder Committee (as defined below) supports this limited objection.

## BACKGROUND

1. As of July 18, 2013 (the "**Petition Date**"), the aggregate outstanding principal balance of the Water/Sewer Bonds was approximately $5.7 billion.

2. There are sixty-six separate series of Water/Sewer Bonds outstanding, which are broken down as follows: (a) eleven series of senior lien sewer bonds (the "**Senior Sewer Bonds**"),[1] eight series of second lien sewer bonds (the "**Second Sewer Bonds**"),[2] and twenty-three series of junior lien state revolving fund sewer bonds (the "**SRF Sewer Bonds**," together

---

[1] The Senior Lien Sewer Bonds were issued in the following original principal amounts: $69,000,000 Series 1998-A, $68,955,000 Series 1998-B, $302,995,177.80 Series 1999-A, $159,970,000 Series 2001-C-1, $127,165,000 Series 2001-C-2, $599,380,000 Series 2003-A, $150,000,000 Series 2003-B, $101,435,000 Series 2004-A, $26,560,000 Series 2006-C, $370,000,000 Series 2006-D, and $659,780,000 Series 2012-A.

[2] The Second Lien Sewer Bonds were issued in the following original principal amounts: $110,550,000 Series 2001-B, $92,450,000 Series 2001-D, $139,080,000 Series 2001-E, $273,355,000 Series 2005-A, $40,215,000 Series 2005-B, $63,160,000 Series 2005-C, $125,000,000 Series 2006-A, and $250,000,000 Series 2006-B.

with the Senior Sewer Bonds and Second Sewer Bonds the "**Sewer Bonds**"),[3] having an outstanding aggregate principal balance of $3,173,209,544.00 as of the Petition Date; and (b) fifteen series of senior lien water bonds (the "**Senior Water Bonds**"),[4] five series of junior lien water bonds (the "**Junior Water Bonds**"),[5] and four series of junior lien state revolving fund water bonds (the "**SRF Water Bonds**," together with the Senior Water Bonds and Junior Water Bonds the "**Water Bonds**,")[6] having an outstanding aggregate principal balance of $2,506,378,761.00 as of the Petition Date. (The Water Bonds and Sewer Bonds are referred to collectively as the "**Water/Sewer Bonds**," and the beneficial holders of the Water/Sewer Bonds as the "**Water/Sewer Bondholders**").

3. Consistent with the rights, powers and duties under the operative bond documents and applicable law relating to the Water/Sewer Bonds, the Trustee has acted and will continue to act in this chapter 9 case for the benefit of all Water/Sewer Bondholders. The Trustee filed proofs of claim for the obligations arising out of the Water/Sewer Bonds and related bond documents pursuant to the Court's *Order, Pursuant to Sections 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), Establishing Bar Dates for Filing*

---

[3] The SRF Junior Lien Sewer Bonds were issued in the following original principal amounts: $1,915,000 Series 1992-B SRF, $6,603,996 Series 1993-B SRF, $5,430,174 Series 1997-B SRF, $21,475,000 Series 1999-SRF1, $46,000,000 Series 1999-SRF2, $31,030,000 Series 1999-SRF3, $40,655,000 Series 1999-SRF4, $44,197,995 Series 2000-SRF1, $64,441,066 Series 2000-SRF2, $82,200,000 Series 2001-SRF1, $59,850,000 Series 2001-SRF2, $18,985,000 Series 2002-SRF1, $1,545,369 Series 2002-SRF2, $31,549,466 Series 2002-SRF3, $48,520,000 Series 2003-SRF1, $25,055,370 Series 2003-SRF2, $2,910,000 Series 2004-SRF1, $18,363,459 Series 2004-SRF2, $12,722,575 Series 2004-SRF3, $167,565,000 Series 2007-SRF1, $16,785,000 Series 2009-SRF1, $4,899,000 Series 2010-SRF1, and $14,950,000 Series 2012-SRF1.

[4] The Senior Lien Water Bonds were issued in the following original principal amounts: $193,805,000 Series 1993, $215,300,000 Series 1997-A, $302,485,000 Series 2001-A, $234,805,000 Series 2003-A, $46,355,000 Series 2003-C, $142,755,000 Series 2003-D, $163,590,000 Series 2004-B, $105,000,000 Series 2005-A, $194,900,000 Series 2005-B, $126,605,000 Series 2005-C, $280,000,000 Series 2006-A, $146,590,000 Series 2006-D, $379,590,000 Series 2011-A, $17,195,000 Series 2011-B, and $103,890,000 Series 2011-C.

[5] The Junior Lien Water Bonds were issued in the following original principal amounts: $190,405,000 Series 2001-C, $172,945,000 Series 2003-B, $77,010,000 Series 2004-A, $120,000,000 Series 2006-B, and $220,645,000 Series 2006-C.

[6] The SRF Junior Lien Water Bonds were issued in the following original principal amounts: $15,265,000 Series 2005-SRF1, $10,710,000 Series 2005-SRF2, $6,035,000 Series 2006 SRF-1, and $6,500,000 Series 2008-SRF1.

*Proofs of Claim and Approving Form and Manner of Notice Thereof* (Doc. 1782). The Trustee has also filed pleadings, attended hearings, and actively participated in the Court-ordered mediation for the benefit of the Water/Sewer Bondholders. The Trustee intends to continue its participation in this chapter 9 case, which may include objecting to the Disclosure Statement and Plan and otherwise participating in the confirmation process.

4. The Water/Sewer Bondholders also have the right to protect their own interests in this case. Perhaps most significantly, the Trustee does not have the right to vote on the Plan for the Water/Sewer Bondholders. *See* 11 U.S.C. § 1126(a); FED. R. BANKR. 3017. The Water/Sewer Bondholders retain an independent right to object to the Disclosure Statement and the Plan and to otherwise participate in the confirmation process if they so choose. The Water/Sewer Bondholders need sufficient time to exercise these rights.

5. With the exception of the SRF Water Bonds and SRF Sewer Bonds,[7] the Water/Sewer Bonds are registered and held in "street name" by the Depository Trust Company ("**DTC**"). DTC is the primary central securities depository in the United States that holds and provides asset servicing for securities deposited with it by its direct participants. DTC's direct participants are broker-dealers, banks, investment managers, and other financial firms. The direct participants make purchases and sales of securities under the DTC system, process payments made with respect to the securities, and forward notices to the beneficial holders of the securities.[8] The direct participants perform these functions for their respective customers, who may be other broker-dealers, banks, investment managers, and financial firms acting as

---

[7] The SRF Sewer Bonds and SRF Water Bonds are not held by DTC and do not have CUSIP numbers. They are held by the State of Michigan.

[8] *See e.g.*, *Williams v. Gusky (In re President Casinos, Inc.)*, 502 B.R. 841, 844 (Bankr. E.D. Mo. 2013) (noting that the DTC is a securities depository and clearing agency that engages in settling trades in corporate and municipal securities on behalf of DTC participants, which are typically banks and brokers); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 685 (M.D. Ala. 1988) (noting that DTC holds securities in "street name," and, for those holders who are not DTC participants, the "street name" holders must forward the documentation to the actual beneficial holders).

4

custodians for other banks, institutional investors, corporations and individuals, each of which may or may not be the actual owner (i.e., beneficial holder) of the securities.

6. With regards to the Water/Sewer Bonds, DTC's records reflect only the identity of the direct participants to whose accounts the Water/Sewer Bonds are credited. In turn, the direct participants' records generally reflect only the names of custodians that hold the Water/Sewer Bonds for other parties who may or may not be the beneficial holders of the Water/Sewer Bonds. Approximately 337 distinct CUSIP numbers ("***CUSIPs***") have been assigned to the Water/Sewer Bonds. DTC uses the CUSIPs for clearing and settling trades, distributing principal and interest payments, and disseminating bondholder notices through its direct participants. Neither the Trustee nor the City knows the identity of the Water/Sewer Bondholders except to the extent a Water/Sewer Bondholder has expressly identified itself to the Trustee or the City. For example, there is an ad hoc committee of five Water/Sewer Bondholders (the "***Ad Hoc Bondholder Committee***") who are participating in this case, including in the confidential mediation. The Ad Hoc Bondholder Committee holds approximately 23% of the outstanding Water/Sewer Bonds. In addition, certain of the Water/Sewer Bondholders have identified themselves to the Trustee, though the information they provided is now dated and their holdings may have changed. In short, there is a large number of unknown Water/Sewer Bondholders who are not readily capable of being identified.

7. The Trustee's notices to the Water/Sewer Bondholders are provided to DTC for dissemination to its direct participants. The Solicitation Packet, which includes the proposed Plan, will also be distributed using the DTC process.[9] The DTC process is depicted as follows:

---

[9] The Disclosure Statement recognizes the implications of the Water/Sewer Bonds being held in "street name" with DTC. The Disclosure Statement provides that: "If you hold your Old Securities in street name, you should return your Ballot no later than [_____], 2014, to provide sufficient time for your brokerage firm, commercial bank, trust company or other nominee, or agent thereof, to process and tally your Ballot and deliver to the Balloting



As a result of this process, substantial time is necessary to allow the Water/Sewer Bondholders to receive the Solicitation Packet, analyze the Plan, consult with their legal and financial advisors as needed,[10] to file any objections to the Plan, and to vote on the Plan.

## LIMITED OBJECTION

8. Rule 3017(e) of the FEDERAL RULES OF BANKRUPTCY PROCEDURE (the "***Bankruptcy Rules***") provides that at the hearing on approval of a disclosure statement, "the court shall consider the procedures for transmitting the documents required by [Bankruptcy Rule 3017(d)] to beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of the procedures, and enter any orders the court deems appropriate." The advisory committee notes to Bankruptcy Rule 3017(e) further explain that:

> Subdivision (e) is designed to ensure that appropriate measures are taken for the plan, disclosure statement, ballot and other materials which are required to be transmitted to creditors and equity security holders under this rule ***to reach the beneficial holders of securities held in nominee name***.
> . . . .
> In most cases, the plan proponent will not know the identities of the beneficial holders and therefore it will be necessary to rely on the nominal

---

Agent by the Voting Deadline." (*See* Disclosure Statement, Docket No. 2709 at 107). The Water/Sewer Bondholders will cast their ballots, the ballots will be sent back up the chain to DTC direct participants, which will deliver master ballots that aggregate the ballots of the Water/Sewer Bondholders for the City's ballot tabulator.
[10] The Trustee does not provide the Water/Sewer Bondholders with legal, tax or investment advice.

holders of the securities to distribute the plan materials to the beneficial holders.

FED. R. BANKR. 3017 advisory committee's note (emphasis added). The Bankruptcy Rules recognize the multistage communications in the DTC process and promote a schedule that takes into account the time necessary to provide the beneficial holders with full information needed to evaluate the economic and legal effect of a proposed plan.

9. If the timeline holds as presently set forth, the Disclosure Statement hearing will occur on April 14, 2014. Assuming the Disclosure Statement is approved on April 14, the Solicitation Packet will be delivered to DTC direct participants sometime after the order is entered. At that point, the DTC process outlined above will commence for the Solicitation Packets to be transmitted to the Water/Sewer Bondholders. Likewise, the Trustee will provide the Water/Sewer Bondholder with notice of the approval of the Disclosure Statement, the various deadlines established by the Court with respect to the Plan, and such other matters as the Trustee deems appropriate through the DTC process described above.

10. Based on the number of CUSIPs for the Water/Sewer Bonds and past experience of the Trustee and its counsel in other cases involving bondholders, the Trustee believes it will take no less than <u>sixty days</u> to complete the solicitation and voting process for the Water/Sewer Bondholders, i.e., from the date the Solicitation Packet is delivered to DTC direct participants to the date ballots are returned to the City (or its solicitation agent).[11]

11. Under the schedule as currently provided in the Plan Procedures Order, the deadline to file Plan objections (April 1) will run before the Solicitation Packet is delivered to DTC direct participants. The objection deadline will also run before any notice from the Trustee

---

[11] The Trustee acknowledges that the City's likely solicitation agent, Kurtzman Carson Consultants LLC ("**KCC**"), has experience in facilitating and navigating the solicitation process. However, even with KCC's assistance, the Trustee believes solicitation on the Water/Sewer Bonds will take no less than sixty days.

could reach the Water/Sewer Bondholders regarding the objection deadline. Thus, the Water/Sewer Bondholders would not be provided an adequate opportunity to object to the Plan.

12. Moreover, under the current schedule, the Solicitation Packets would not reach the Water/Sewer Bondholders in sufficient time to allow for voting and returning the ballots through the DTC process. Even if the Solicitation Packet was delivered to DTC direct participants on April 14, which is not likely, the ballots could not be returned before the commencement of the confirmation hearing on June 16.

13. The Bankruptcy Code requires that a creditor receive adequate notice before its claim is impacted. *See M & I Thunderbird Bank v. Birmingham (In re Consol. Water Utils.)*, 217 B.R. 588, 590 (B.A.P. 9th Cir. 1998) ("As long as due process is complied with, a confirmed plan binds all entities that hold a claim or interest. . . ."); *Joe Hand Prods., Inc. v. Cain*, No. 06-CV-12213, 2006 WL 2466266, at *1 (E.D. Mich. Aug. 24, 2006) (noting that creditors are entitled to "'proper notice of the confirmation process'") (quoting *In re Newstar Energy of Tex., LLC*, 290 B.R. 623, 626 (W.D. Mich. 2002)). As stated in a chapter 9 case:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action, and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

*In re City of Colorado Springs Spring Creek Gen. Improvement Dist.*, 177 B.R. 684, 690 (Bankr. D. Col. 1995) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The Water/Sewer Bondholders will be denied due process under the current schedule which does not allow sufficient time for the Water/Sewer Bondholders to receive, analyze, and react to the Plan.

14. Each Water/Sewer Bondholder has a separate and independent right to review the Disclosure Statement in the form finally approved by the Court to determine whether to accept or reject the Plan, to file their own objection to confirmation of the Plan, and to participate in the confirmation process. The current schedule will not provide them sufficient notice and opportunity to analyze the information they are entitled to under Bankruptcy Rule 3017(d), to object to confirmation of the Plan, if they so desire, or to otherwise participate in the confirmation process.

15. Further, while the Trustee recognizes that the Plan Procedures Order does not set solicitation procedures, the current schedule does not build in sufficient time to allow for the dissemination and return of the ballots for the Water/Sewer Bonds as a practical matter. In the chapter 9 case *City of Colorado Springs Spring Creek Improvement District*, the Bankruptcy Court evaluated whether the solicitation process in a prepackaged bankruptcy case was sufficient to reach the unknown beneficial holders whose bonds were held in street name only. *Id*. at 691–92. The Bankruptcy Court determined there was "substantial uncertainty as to whether all beneficial bondholders received the plan, Disclosure Statement and ballot," and concluded "that the solicitation process was inadequate and that the acceptances obtained were invalid." *Id.* at 692. As a result, the debtor was forced to start the solicitation process all over. *Id*.

16. If the schedule does not provide sufficient time for the solicitation mechanics, then the Water/Sewer Bondholders will not be afforded due process and the entire vote could be invalidated; this would prejudice all the parties to this case, including the City. *See generally In re The Southland Corp.*, 124 B.R. 211, 227 (Bankr. N.D. Tex. 1991) (determining that eight business days "for the transmission of materials by brokers to their customers (beneficial holders), and for the original receipt, analysis and vote by the actual owners . . . [was] an

unreasonably short time. . . ," meriting invalidation of the votes on the plan and necessitating a "new vote based on an appropriate time period for notice and voting").

17. The Trustee recognizes the Court's desire to move expediently with this case, but due process must be provided to the Water/Sewer Bondholders with respect to the Plan and confirmation process. The Trustee requests that the schedule be revised to provide no less than sixty days between the commencement of transmittal process of the Solicitation Packet to the Water/Sewer Bondholders, and the voting deadline and the deadline to object to the Plan. The Trustee believes this is the bare minimum amount of time needed to give each Water/Sewer Bondholders due process. If the Disclosure Statement is approved on April 14, then the Trustee requests that the voting and plan objection deadlines be set for June 30, 2014, and that the City be ordered to transmit the Solicitation Packet to the Water/Sewer Bondholders no later than April 21, 2014.

18. In addition, the Trustee requests that the hearing on confirmation of the Plan commence no earlier than July 14, 2014. Setting June 30, 2014, as the deadline for objecting and voting on the Plan, and commencing the confirmation hearing no earlier than July 14, will hopefully allow solicitation of the Water/Sewer Bondholders in accord with section 1125(b) of the Bankruptcy Code and the Water/Sewer Bondholders' rights to due process.

19. With respect to the other deadlines set out in the Plan Procedures Order between the final hearing on the Disclosure Statement and the confirmation hearing, the Trustee requests that those dates be set so as to be consistent with the voting and objection deadlines and the confirmation hearing requested by the Trustee. The Trustee understands other creditors will be filing responses to the Court's Plan Procedures Order. The Trustee defers to the Court and the collective input of the other parties with respect to the specific dates for those other deadlines.

20. The Trustee reserves its and the Water/Sewer Bondholders' rights to seek further relief from the Plan Procedures Order if circumstances hereafter warrant.

WHEREFORE, for the reasons stated herein, and for such other reasons as may be stated at any hearing, the Trustee respectfully requests that this Court: (i) set the deadline to object to confirmation of the Plan and to vote on the Plan at least sixty days after the Solicitation Packet is delivered to DTC; (ii) set a deadline for the City to transmit the Solicitation Packets to DTC no later than seven days after the Disclosure Statement is approved; (iii) set the hearing on confirmation of the Plan to commence no earlier than July 14, 2014; and (iv) provide such other and further relief as is just and equitable.

Respectfully submitted this the 28th day of February, 2014.

    /s/ Ryan K. Cochran
David E. Lemke (TN13586)
Michael R. Paslay (TN11092)
Ryan K. Cochran (TN25851)
Courtney M. Rogers (TN25664)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Phone: (615) 244-6380
Fax: (615) 244-6804
david.lemke@wallerlaw.com
mike.paslay@wallerlaw.com
ryan.cochran@wallerlaw.com
courtney.rogers@wallerlaw.com
– and –
Robert J. Diehl, Jr. (MI31264)
Jaimee L. Witten (P70068)
BODMAN PLC
1901 St. Antoine Street, 6th Floor
Detroit, Michigan 48226
Phone: (313) 393-7597
Fax: (313) 393-7579
rdiehl@bodmanlaw.com
jwitten@bodmanlaw.com
*Attorneys for U.S. Bank National Association, as Indenture Trustee for the Water and Sewer Bonds*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Limited Objection to the First Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment was filed and served via the Court's electronic case filing and noticing system to all parties registered to receive electronic notices in this matter, this 28th day of February, 2014.

    /s/ Ryan K. Cochran
David E. Lemke (TN13586)
Michael R. Paslay (TN11092)
Ryan K. Cochran (TN25851)
Courtney M. Rogers (TN25664)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Phone: (615) 244-6380
Fax: (615) 244-6804
david.lemke@wallerlaw.com
mike.paslay@wallerlaw.com
ryan.cochran@wallerlaw.com
courtney.rogers@wallerlaw.com

*Attorneys for U.S. Bank National Association, as Indenture Trustee for the Water and Sewer Bonds*