# EXHIBIT 6

# Settlement and Plan Support Agreement Term Sheet

For Settlement Purposes
Subject to FRE 408

CITY OF DETROIT

Term Sheet
For Agreement with UBS and MLCS

This is a term sheet for discussion purposes. It is not intended to be a commitment by any Party unless reduced to a definitive written agreement signed by all Parties. No right, claim, remedy or defense is being waived.

| | |
|---|---|
| Parties: | The City, UBS AG ("UBS") and Merrill Lynch Capital Services, Inc. ("MLCS") (together, the "Parties"). |
| Plan: | Upon approval by the Bankruptcy Court by final order in form and substance satisfactory to the Parties under Bankruptcy Rule 9019 of a definitive agreement (the "Agreement") implementing the terms set forth in this term sheet, UBS and MLCS will agree to vote the Secured Claims (as defined below), subject to being properly solicited, in support of, and not (in their capacity as holders of the Secured Claims) object to, a plan of adjustment (the "Plan") proposed by the City so long as the rights and claims of UBS and MLCS are treated in accordance with the Agreement as contemplated by this term sheet. The City will not propose or support a Plan that (a) treats the Secured Claims (as defined below) any less favorably than contemplated by this term sheet or (b) otherwise has a material adverse effect on UBS or MLCS or any of UBS's or MLCS's affiliates or affiliated persons with respect to the Secured Claims, the Swaps or the Certificates of Participation as compared to this term sheet. |
| Payments to UBS and MLCS: | During the term of the Agreement and until the Net Amount (as defined below), together with any interest thereon as provided below, is paid in full in cash, the City will timely make the monthly Holdback Requirement (as defined in the Collateral Agreement) payments in the |

manner provided by and on the terms set forth under Section 5.2(a)(1) and (b) of the Collateral Agreement (the "Monthly Payments") and UBS and MLCS will timely receive the quarterly payments in an amount equal to all Hedge Periodic Payables (as defined in the Collateral Agreement) required to be paid to them in the manner provided by and on the terms set forth under Section 5.7(a)(i) of the Collateral Agreement. In addition to being payments required under the Collateral Agreement, the payments to UBS and MLCS will be considered to be adequate protection payments pursuant to section 361 of the Bankruptcy Code to protect against diminution of UBS's and MLCS's interest in the Pledged Property (as defined below).

The quarterly payment to be made to each of UBS and MLCS on March 14, 2014, will be held by each in segregated accounts at UBS and MLCS, respectively, until the earlier of (i) approval of the Agreement by the Bankruptcy Court and (ii) further order of the Bankruptcy Court with respect to such payment (including as such order may be modified by reconsideration, appeal or certiorari).

| | |
|---|---|
| Forbearance by UBS and MLCS: | During the term of the Agreement and so long as the City is not in breach of the Agreement, UBS and MLCS will (a) not seek to prevent the City from obtaining payments from the General Receipts Subaccount and (b) subject to such exceptions as will be set forth in the Agreement, use best efforts to take any action reasonably requested by the City to reverse any action by the Collateral Agreement Custodian to withhold or delay the payments to the City. |
| City's Undertaking re Litigation: | Unless and until the Agreement is terminated as set forth below, the City will (a) not commence or prosecute any litigation (or directly or indirectly cause either Service Corporation or any other person to or support either Service Corporation or any other person |

|  | in commencing or prosecuting any litigation) against UBS, MLCS or any of UBS's or MLCS's affiliates or affiliated persons relating to the Swaps, the Secured Claims, the collateral securing the Secured Claims or the Certificates of Participation and (b) if either Service Corporation or any other person commences any such litigation, cooperate with and support the defense of the litigation by the UBS or MLCS defendant; *provided however*, that the City will remain able to defend itself against, oppose and dispute any allegations, counter-claims, cross-claims, defenses or claims for relief propounded by or on behalf of UBS, MLCS or any of UBS's or MLCS's affiliates or affiliated persons arising in or relating to its litigation to invalidate the Certificates of Participation[1] so long as the City is not seeking any affirmative recovery from, or otherwise advocating for any affirmative liability of, UBS, MLCS or any of UBS's or MLCS's affiliates or affiliated persons. |
|---|---|
| Preservation of Swaps: | Except as contemplated by this term sheet, (a) the Swaps will not be terminated and (b) the rights of UBS and MLCS under the Swaps will remain unaltered. |
| Options to Terminate Swaps: | Each of UBS and MLCS will retain the option at any time to terminate one or more of its Swaps, either by declaring a Termination Event or Event of Default or, in consideration for the Secured Claims relating to the Swap, by exercising the Optional Termination Provision of the Swap. |
|  | The termination or invalidation of any Swap (or occurrence of any Hedge Event (as defined in the Collateral Agreement)) will not modify (a) the obligations of UBS and MLCS set forth above under "Forbearance by UBS and MLCS", even though a termination amount is then owed under the Swap or (b) the amounts |

---

[1] *City of Detroit, Michigan v. Detroit General Retirement System Service Corporation et al.* **[Ad. Proc. No. 14-04112].**

| | or timing of the City's payment obligations in respect of the Swap set forth above under "Payments to UBS and MLCS", which would continue to be made as if such termination, invalidation or Hedge Event had not occurred. |
|---|---|
| Secured Claims: | Upon the approval of the Agreement by the Bankruptcy Court, each of UBS and MLCS will receive an allowed claim (collectively, the "Secured Claims") against the City secured by valid and enforceable liens ("Liens") on the collateral (the "Pledged Property") pledged by the City under the Collateral Agreement and/or Ordinance No. 05-09 of the City, which, solely for purposes of distributions from the City, shall be in the aggregate principal amount equal to $42.5 million for each of UBS and MLCS, payable in cash, plus any interest as provided below. The receipt by UBS or MLCS of a Secured Claim relating to any Swap will not affect any claim that it might have against any other person (including the Service Corporation that is party to the Swap). |
| | No termination, invalidation or avoidance of any Swap, Service Contract obligation, lien securing any Service Contract obligation or lien granted by either Service Corporation, disregard or veil piercing of either Service Corporation, substantive consolidation of either Service Corporation with the City, invalidation or avoidance of any of the Certificates of Participation or any similar or other event or circumstance will affect the allowance and continued validity of the Secured Claims, the Liens or the Parties' obligations under the Agreement. Except as reduced by payments as set forth in the Agreement, the Secured Claims and Liens will (i) be valid, binding perfected and enforceable and (ii) not be subject to avoidance, reduction, subordination, reconsideration, merger, recharacterization, consolidation, recoupment, recovery, deduction, attack, offset, objection, defense, claim (as defined in the Bankruptcy Code) or counterclaim under applicable |

provisions of the Bankruptcy Code or state law or in equity; and shall not be subject to disallowance under any provision of the Bankruptcy Code, including section 502(d) thereof.

The City will (a) not commence or prosecute any litigation (or directly or indirectly cause or support any other person in commencing or prosecuting any litigation) to challenge any liens on the Pledged Property, (b) defend the validity, perfection and priority of such liens against any challenge by any other person and (c) not cause or permit any other liens to be senior to or *pari passu* with such liens until the Net Amount, together with any interest thereon, has been paid in full in cash.

| | |
|---|---|
| Satisfaction of Secured Claims: | Unless a Liquidity Event (as defined below) occurs, on or promptly following the effective date of the Plan, the City will pay to UBS and MLCS in cash, in satisfaction and discharge of the Secured Claims, the aggregate principal amount of $85 million less the sum of all amounts paid to UBS and MLCS under the Collateral Agreement since January 1, 2014 (the "Net Amount"), plus any interest on the Net Amount as provided below. |

The Secured Claims will also be satisfied and discharged if, prior to the effective date of the Plan or following dismissal of the Bankruptcy Case, UBS and MLCS have received under the Collateral Agreement the aggregate principal amount of $85 million since January 1, 2014, plus any interest on the Net Amount as provided below.

Once the Secured Claims have been satisfied and discharged, any Monthly Payments then held by the Custodian will be returned to the City.

Except as provided under "Liquidity Event" below, if the Secured Claims are not fully paid as provided above by October 15, 2014, then,

|   |   |
|---|---|
| | on and after October 15, 2014, the unpaid Net Amount will bear interest at the rate contemplated to be paid to the provider of the quality-of-life post-petition financing to the City (such rate, the "Post-Petition Rate"), which the City expects to seek approval for prior to entry of the order approving the Agreement. |
| | The order approving the Agreement will provide that, upon full payment of the Secured Claims in cash, plus interest, if any, thereon, the liens granted by the City under the Collateral Agreement will be released without further action by UBS, MLCS, the Collateral Agreement Custodian or any other person. |
| Liquidity Event: | If the Net Amount plus interest accrued thereon is not paid in connection with the effective date of the Plan, other than with respect to net proceeds used to repay up to $120 million principal amount (plus all interest and fees) of the City's quality-of-life post-petition financing facility,[2] to the extent permitted by law but without taking into consideration any limitations imposed by the City, including in any ordinance or resolution of the City, the first dollars of any net cash proceeds of any financing or refinancing consummated in connection with, or subsequent to, the consummation of the City's plan of adjustment and either (i) supported by the full faith and credit of the City or (ii) payable from the general fund of the City shall be used to pay the Net Amount plus any interest accrued thereon. The City will use best efforts to secure sufficient exit financing to pay the Net Amount plus any interest accrued thereon on or promptly following the effective date of the Plan, and failing that, as soon thereafter as possible. If, notwithstanding its best efforts, the City is unable to secure sufficient exit financing to pay the Net Amount plus any interest accrued thereon on or |

---

[2] The order approving the Agreement will refer to the docket number of the motion or order regarding quality-of-life post-petition financing facility.

promptly following the effective date of the Plan (such occurrence, a "Liquidity Event"), the City will so notify UBS and MLCS in writing at least 15 business days prior to the effective date of the Plan.

Upon the occurrence a Liquidity Event, UBS and MLCS will defer full payment of the Net Amount plus interest accrued thereon for 180 days following the effective date of the Plan; provided that (i) the City will continue to comply with its obligations, and UBS and MLCS will continue to receive the payments, set forth in "Payments to UBS and MLCS" above during the deferral period; (ii) the Secured Claims will remain secured by the Pledged Property and all other collateral securing the Secured Claims; (iii) from and after the effective date of the Plan, the Net Amount will accrue interest at 1.5% plus the Post-Petition Rate; and (iv) UBS and MLCS will receive on the effective date of the Plan a deferral fee equal to 1% of the Net Amount.

| | |
|---|---|
| <u>Termination of Agreement</u>: | Any Party may terminate the Agreement upon three business days' notice to the other Parties if the Bankruptcy Court denies the Approval Motion, or if a Bankruptcy Court order granting the Approval Motion is modified, vacated or reversed on appeal. |

The City may terminate the Agreement upon three business days' notice to UBS and MLCS if:

   (a) the City is prevented from obtaining payments from the General Receipts Subaccount because of the actions of any person, other than UBS or MLCS, claiming an interest in the Pledged Property on account of the liens granted by the City thereon under the Collateral Agreement and the City's access to the payments is not subsequently restored within a period of 20 days after access was prevented; or

-7-
13-53846-tjt    Doc 2802-6    Filed 03/03/14    Entered 03/03/14 18:48:54    Page 8 of 13

(b) UBS or MLCS fails to comply with its obligations set forth above under "Forbearance by UBS and MLCS" and the failure has not been cured by the end of the three business day period.

Upon termination of the Agreement as provided above, the allowance of the Secured Claims and the releases contemplated below will be nullified, and the Parties will be restored to their prior positions with all rights, claims, remedies and defenses restored as if the Agreement were never effective, subject to the provisions set forth below under "Tolling of Certain Periods".

Tolling of Certain Periods: From January 31, 2014, until termination of the Agreement, all statutes of limitation on Released Claims (as defined below) and any limitation on the time in which UBS or MLCS may exercise contractual rights under the Bankruptcy Code "safe harbors" for swap agreements will be tolled.

Releases: As used herein, the term "City Releasors" means the City and, if and at any time, any entity, including either Service Corporation, is collapsed into, disregarded, veil-pierced, substantively consolidated with or similarly treated with respect to the City, that entity; and the term "Counterparty Releasors" means UBS and MLCS.

The following releases will be approved upon the approval of the Agreement by the Bankruptcy Court and will not be subject to further modification without the consent of the Parties.

Upon the earlier of (i) the satisfaction in cash of the Secured Claims and the release of the Liens and (ii) the effective date of the Plan, and without further action, (a) the City Releasors will have released unconditionally, and be deemed to release unconditionally the Counterparty Releasors and their affiliates and

each of their respective present and former Related Persons (as defined below) (collectively, the "Counterparty Released Parties") and (b) the Counterparty Releasors will have released unconditionally, and be deemed to release unconditionally the City Releasors and their affiliates and each of their respective present and former Related Persons (other than, to the extent not a City Releasor, the Service Corporations) from any and all claims, obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever (including, without limitation, all claims relating to the Swaps, the Certificates of Participation or the Service Corporations) whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, that are or may be based in whole or in part upon any act, omission, transaction, event or other occurrence taking place or existing on or prior to the effective date of the Plan related to the Swaps, the Certificates of Participation, the Service Corporations, any and all transactions related to the Swaps, the Certificates of Participation, the Service Corporations and/or the Funding Trusts, or the Chapter 9 Proceedings (the "Released Claims"), provided, however, that the Released Claims shall not include any claims with respect to enforcement of the Agreement. To the extent any creditor of the City is exculpated under the Plan, the Plan shall also exculpate the Counterparty Released Parties in connection with the Agreement or the Chapter 9 Proceedings. Until approval of the Agreement by the Bankruptcy Court, all rights, claims, remedies and defenses of the Released Parties are preserved. "Related Persons" means officers, directors, employees, members, managers, partners and attorneys and other advisors.

The order approving the Agreement shall contain a bar order that will permanently bar,

enjoin and restrain all persons (the "Barred Persons") from commencing, prosecuting, or asserting in the Bankruptcy Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere any claim for non-contractual indemnity or contribution against any Counterparty Released Party arising out of or relating to or reasonably flowing from the claims or allegations in any of the Released Claims, whether or not denominated as for contribution or indemnity, where the injury to the person is the liability of the person to the City or the Service Corporations (or any person acting on behalf of, or asserting derivative claims of, the City or either Service Corporation, including any successor to the City or either Service Corporation, including any trustee, any committee appointed in the Chapter 9 case, any trustee of a litigation trust or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code), whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims (collectively, the "Barred Claims"), and with respect to the Barred Claims, the Barred Persons are also entitled to judgment reduction in an amount proportionate to the Counterparty Released Parties' fault.

| | |
|---|---|
| Concerning the Service Corporations: | The Agreement will not preclude the City from continuing to assert in its litigation to invalidate the Certificates of Participation that the City has no obligation to the Service Corporations under the Service Contracts or that the Service Corporation should be disregarded entities.

However, to the extent that the City at any time on or after the execution of the Agreement has the ability to control the actions of either Service Corporation, the City will not cause or permit the Service Corporation to commence any litigation or take any other action that the |

Service Corporation would not have been able to commence or take if the Service Corporation were a party to the Agreement and obligated to the same extent as the City under the Agreement including making or pursuing any Released Claim. In addition, in any event, the order approving the Agreement will bar either Service Corporation from at any time commencing such litigation or taking any such other action.

Reservation of Certain Rights:   Neither the order approving the Agreement nor the Agreement will impair any rights that UBS, MLCS or any of UBS's or MLCS's affiliates may have to intervene in the City's litigation to invalidate the Certificates of Participation.

UBS and MLCS will reserve and retain all rights, claims and remedies related to the Swaps or the Swap Policies against any person that is not a party to the Agreement, including without limitation, either Service Corporation or either Swap Insurer, but neither UBS nor MLCS will exercise any right, claim or remedy against a Swap Insurer in connection with the Swap Policies that results in the Swap Insurer acquiring an allowed secured claim for reimbursement, or an allowed secured claim by way of subrogation, against the City. The provisions of this paragraph shall not apply with respect to a Service Corporation if that Service Corporation is collapsed into, disregarded, veil-pierced, substantively consolidated with or similarly treated with respect to the City.

The Agreement will not affect any intercreditor arrangements between UBS and MLCS *inter se*.

Public Statements:   The City agrees that neither it nor its professionals nor its emergency manager will make any disparaging or negative statements or comments to the press regarding UBS or MLCS, including with respect to the claims

that are being settled against UBS or MLCS pursuant to the Agreement.