UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
(DETROIT)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | CASE NO.: 13-53846 |
| | ) | |
| | ) | CHAPTER 9 |
| Debtor. | ) | |
| | ) | Hon. Steven W. Rhodes |
| | ) | |

_____

**THE WATER/SEWER BOND TRUSTEE'S OBJECTION TO THE MOTION OF THE CITY OF DETROIT FOR ENTRY OF AN ORDER (I) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT PLAN OF ADJUSTMENT AND (II) APPROVING NOTICE PROCEDURES RELATED TO CONFIRMATION OF THE PLAN OF ADJUSTMENT**
_____

U.S. Bank National Association, in its capacity as trustee (the "***Trustee***") for those certain bonds issued by the City of Detroit (the "***City***") for the Detroit Water and Sewer Department (the "***DWSD***") to (a) finance and refinance improvements to the City's Water Supply System and (b) finance and refinance improvements to the City's Sewage Disposal System, hereby files its Objection to the *Motion of the City of Detroit for Entry of an Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment* (Doc. 2789) (as the same may be amended, the "***Solicitation Motion***"). In support of the Trustee's Objection, the Trustee states as follows:

## SUMMARY

The Solicitation Motion generally sets forth acceptable solicitation procedures. However, a number of the specifics need to be changed in order to make the mechanics feasible for the

Water/Sewer Bondholders (as defined below).[1] First, the schedule set forth in the Solicitation Motion, including the Voting Deadline,[2] does not allow adequate notice and opportunity for the Water/Sewer Bondholders to: (a) receive and review the Solicitation Package; (b) seek advice from their legal and/or financial advisors with respect to the *Plan for the Adjustment of Debts of the City of Detroit*, dated as of February 21, 2014 (Doc. 2708) (the "**Plan**"); (c) decide whether to accept or reject the Plan; and (d) timely complete and return their ballots. The City does not oppose a longer solicitation period for the Water/Sewer Bondholders. *See* Solicitation Motion at 12 n.6 ("The City has no objection to a longer solicitation process to accommodate the complexities of Beneficial Holders of bonds voting their claims; however, the City also seeks to adhere as closely as possible to the Court's proposed schedule. . . ."); *Response of the City of Detroit to the Court's First Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment*, Doc. No. 2787 (the "**City's Plan Procedures Response**") at 8 n.5 ("The City is not opposed to a 60-day solicitation period if the Court believes that 60 days is more appropriate and in the best interests of creditors."). Second, the Solicitation Motion arguably limits how holders of Water/Sewer Bonds vote different holdings in the same Class. Third, the Voting Disputes Resolution Procedure does not provide a workable framework for determining who may vote Class 1A–1D claims. Fourth, approving the forms of ballots at this juncture is premature; the ballots should be approved contemporaneously with approval of the Disclosure Statement. Fifth, the Solicitation Procedures set forth for the SRF Bonds (as defined below) are more complicated than is required.

      The Ad Hoc Bondholder Committee (as defined below) supports this Objection.

---

[1] Normally, the Trustee would attempt to reconcile its objections by reaching agreement with the City without the need for an objection. Due to the accelerated schedule, the Trustee was forced to analyze and prepare its Objection in a short timeframe. The Trustee welcomes discussions with the City and intends to reach out to the City prior to the hearing on the Solicitation Motion.

[2] Terms capitalized but not otherwise defined herein bear the meanings ascribed to them in the Solicitation Motion.

## BACKGROUND[3]

1. As of July 18, 2013 (the "***Petition Date***"), the aggregate outstanding principal balance of the Water/Sewer Bonds was approximately $5.7 billion.

2. There are sixty-six separate series of Water/Sewer Bonds outstanding, which are broken down as follows: (a) eleven series of senior lien sewer bonds (the "***Senior Sewer Bonds***"),[4] eight series of second lien sewer bonds (the "***Second Sewer Bonds***"),[5] and twenty-three series of junior lien state revolving fund sewer bonds (the "***SRF Sewer Bonds***," together with the Senior Sewer Bonds and Second Sewer Bonds the "***Sewer Bonds***"),[6] having an outstanding aggregate principal balance of $3,173,209,544.00 as of the Petition Date; and (b) fifteen series of senior lien water bonds (the "***Senior Water Bonds***"),[7] five series of junior lien water bonds (the "***Junior Water Bonds***"),[8] and four series of junior lien state revolving fund water bonds (the "***SRF Water Bonds***," together with the Senior Water Bonds and Junior Water

---

[3] Paragraphs 1 through 5 herein are largely identical to paragraphs 1 through 7 in *The Water/Sewer Bond Trustee's Limited Objection to the First Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment* (Docket No. 2794) (the "***Trustee's Plan Procedures Objection***") at 2−6. For ease of reference, these paragraphs are repeated herein.

[4] The Senior Lien Sewer Bonds were issued in the following original principal amounts: $69,000,000 Series 1998-A, $68,955,000 Series 1998-B, $302,995,177.80 Series 1999-A, $159,970,000 Series 2001-C-1, $127,165,000 Series 2001-C-2, $599,380,000 Series 2003-A, $150,000,000 Series 2003-B, $101,435,000 Series 2004-A, $26,560,000 Series 2006-C, $370,000,000 Series 2006-D, and $659,780,000 Series 2012-A.

[5] The Second Lien Sewer Bonds were issued in the following original principal amounts: $110,550,000 Series 2001-B, $92,450,000 Series 2001-D, $139,080,000 Series 2001-E, $273,355,000 Series 2005-A, $40,215,000 Series 2005-B, $63,160,000 Series 2005-C, $125,000,000 Series 2006-A, and $250,000,000 Series 2006-B.

[6] The SRF Junior Lien Sewer Bonds were issued in the following original principal amounts: $1,915,000 Series 1992-B SRF, $6,603,996 Series 1993-B SRF, $5,430,174 Series 1997-B SRF, $21,475,000 Series 1999-SRF1, $46,000,000 Series 1999-SRF2, $31,030,000 Series 1999-SRF3, $40,655,000 Series 1999-SRF4, $44,197,995 Series 2000-SRF1, $64,441,066 Series 2000-SRF2, $82,200,000 Series 2001-SRF1, $59,850,000 Series 2001-SRF2, $18,985,000 Series 2002-SRF1, $1,545,369 Series 2002-SRF2, $31,549,466 Series 2002-SRF3, $48,520,000 Series 2003-SRF1, $25,055,370 Series 2003-SRF2, $2,910,000 Series 2004-SRF1, $18,363,459 Series 2004-SRF2, $12,722,575 Series 2004-SRF3, $167,565,000 Series 2007-SRF1, $16,785,000 Series 2009-SRF1, $4,899,000 Series 2010-SRF1, and $14,950,000 Series 2012-SRF1.

[7] The Senior Lien Water Bonds were issued in the following original principal amounts: $193,805,000 Series 1993, $215,300,000 Series 1997-A, $302,485,000 Series 2001-A, $234,805,000 Series 2003-A, $46,355,000 Series 2003-C, $142,755,000 Series 2003-D, $163,590,000 Series 2004-B, $105,000,000 Series 2005-A, $194,900,000 Series 2005-B, $126,605,000 Series 2005-C, $280,000,000 Series 2006-A, $146,590,000 Series 2006-D, $379,590,000 Series 2011-A, $17,195,000 Series 2011-B, and $103,890,000 Series 2011-C.

[8] The Junior Lien Water Bonds were issued in the following original principal amounts: $190,405,000 Series 2001-C, $172,945,000 Series 2003-B, $77,010,000 Series 2004-A, $120,000,000 Series 2006-B, and $220,645,000 Series 2006-C.

Bonds the "*Water Bonds*,")[9] having an outstanding aggregate principal balance of $2,506,378,761.00 as of the Petition Date. (The Water Bonds and Sewer Bonds are referred to collectively as the "*Water/Sewer Bonds*," and the beneficial holders of the Water/Sewer Bonds as the "*Water/Sewer Bondholders*").

3. With the exception of the SRF Water Bonds and SRF Sewer Bonds (the "*SRF Bonds*"),[10] the Water/Sewer Bonds are registered and held in "street name" by the Depository Trust Company ("*DTC*"). DTC is the primary central securities depository in the United States that holds and provides asset servicing for securities deposited with it by its direct participants. DTC's direct participants are broker-dealers, banks, investment managers, and other financial firms. The direct participants make purchases and sales of securities under the DTC system, process payments made with respect to the securities, and forward notices to the beneficial holders of the securities.[11] The direct participants perform these functions for their respective customers, who may be other broker-dealers, banks, investment managers, and financial firms acting as custodians for other banks, institutional investors, corporations and individuals, each of which may or may not be the actual owner (i.e., beneficial holder) of the securities.

4. With regard to the Water/Sewer Bonds, DTC's records reflect only the identity of the direct participants to whose accounts the Water/Sewer Bonds are credited. In turn, the direct participants' records generally reflect only the names of custodians that hold the Water/Sewer Bonds for other parties who may or may not be the beneficial holders of the Water/Sewer

---

[9] The SRF Junior Lien Water Bonds were issued in the following original principal amounts: $15,265,000 Series 2005-SRF1, $10,710,000 Series 2005-SRF2, $6,035,000 Series 2006 SRF-1, and $6,500,000 Series 2008-SRF1.
[10] The SRF Bonds are not held by DTC and do not have CUSIP numbers. They are held by the State of Michigan.
[11] *See e.g.*, *Williams v. Gusky (In re President Casinos, Inc.)*, 502 B.R. 841, 844 (Bankr. E.D. Mo. 2013) (noting that the DTC is a securities depository and clearing agency that engages in settling trades in corporate and municipal securities on behalf of DTC participants, which are typically banks and brokers); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 685 (M.D. Ala. 1988) (noting that DTC holds securities in "street name," and, for those holders who are not DTC participants, the "street name" holders must forward the documentation to the actual beneficial holders).

4

13-53846-tjt    Doc 2813    Filed 03/04/14    Entered 03/04/14 18:42:48    Page 4 of 19

Bonds. Approximately 337 distinct CUSIP numbers ("***CUSIPs***")[12] have been assigned to the Water/Sewer Bonds. DTC uses the CUSIPs for clearing and settling trades, distributing principal and interest payments, and disseminating bondholder notices through its direct participants. Neither the Trustee nor the City knows the identity of the Water/Sewer Bondholders except to the extent a Water/Sewer Bondholder has expressly identified itself to the Trustee or the City. *See* Solicitation Motion at 14 (noting that "the vast majority of the creditors possessing an economic stake in claims in Classes 1A, 1B, 1C, 1D, 1E, 1F. . . are not known by the City," and that many of the Water/Sewer Bonds are held in "street name" only). For example, there is an ad hoc committee of five Water/Sewer Bondholders (the "***Ad Hoc Bondholder Committee***") who are participating in this case, including in the confidential mediation. The Ad Hoc Bondholder Committee holds approximately 23% of the outstanding Water/Sewer Bonds. In addition, certain of the Water/Sewer Bondholders have identified themselves to the Trustee, though the information they provided is now dated and their holdings may have changed. In short, there is a large number of unknown Water/Sewer Bondholders who are not readily capable of being identified.

5. The Trustee's notices to the Water/Sewer Bondholders are provided to DTC for dissemination to its direct participants. The Solicitation Package, which includes the proposed Plan, will also be distributed using the DTC process.[13] The DTC process is depicted as follows:

---

[12] *In re U.S. Corp*, No. 4:11-bk-06731-EWH, 2011 WL 1900416, at *1, n.2 (Bankr. D. Ariz. May 18, 2011) ("CUSIP general refers to the Committee on Uniform Securities Identification Procedures, which supples [sic] a nine character identification number for securities traded in the United States.")

[13] The *Disclosure Statement with respect to Plan for the Adjustment of Debts of the City of Detroit* (Doc. 2709) (the "***Disclosure Statement***") recognizes the implications of the Water/Sewer Bonds being held in "street name" with DTC. The Disclosure Statement provides that: "If you hold your Old Securities in street name, you should return your Ballot no later than [_____], 2014, to provide sufficient time for your brokerage firm, commercial bank, trust company or other nominee, or agent thereof, to process and tally your Ballot and deliver to the Balloting Agent by the Voting Deadline." (*See* Disclosure Statement at 107). The Water/Sewer Bondholders will cast their ballots, the ballots will be sent back up the chain to DTC direct participants, which will deliver master ballots that aggregate the ballots of the Water/Sewer Bondholders for the City's ballot tabulator.



As a result of this process, substantial time is necessary to allow the Water/Sewer Bondholders to receive the Solicitation Package, analyze the Plan, consult with their legal and financial advisors as needed,[14] file any objections to the Plan, and vote on the Plan.

6. On February 25, 2014, this Court entered the *First Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment* (Doc. 2755) (the "**Plan Procedures Order**").

7. On February 28, 2014, the Trustee's Plan Procedures Objection was filed, which objected to certain of the Plan-related deadlines set by this Court in the Plan Procedures Order.[15] In the Water/Sewer Bond Trustee's Plan Procedures Objection, the Trustee highlighted the need to provide due process to the Water/Sewer Bondholders and sought no less than sixty days between commencement of the solicitation process and the deadline to vote. *See* Trustee's Plan Procedures Objection at 7, 10, 11.

---

[14] The Trustee does not provide the Water/Sewer Bondholders with legal, tax or investment advice.
[15] Many of the arguments set forth in this Objection were first set forth in the Trustee's Plan Procedures Objection. To the extent not otherwise articulated herein, the arguments set forth in the Trustee's Plan Procedures Objection are adopted as if set forth fully herein.

**OBJECTION**

**I.   The Voting Deadline Should Be Extended.**

8.      Pursuant to the Solicitation Motion, the City will begin the solicitation process by April 24, 2014 (assuming the Disclosure Statement is approved April 14).[16]  The City proposes that the voting deadline be established as June 9, 2014.  The City's proposal allows only 45 days for the DTC process outlined above.  As was stated in the Trustee's Plan Procedures Objection, given the number of CUSIPs for the Water/Sewer Bonds and past experience of the Trustee and its counsel in other cases involving bondholders, the Trustee believes it will take no less than <u>sixty days</u> to complete the solicitation and voting process for the Water/Sewer Bondholders, i.e., from the date the Solicitation Package is delivered to DTC direct participants to the date ballots are returned to the City (or the Balloting Agent (as defined in the Solicitation Motion)).[17]

9.      The Trustee does not have the right to vote on the Plan for the Water/Sewer Bondholders.  *See* 11 U.S.C. § 1126(a); FED. R. BANKR. 3017; Collier Bankruptcy Practice Guide ¶ 90.07[5] (2013) ("In chapter 11 cases involving public debt issues, . . . without an explicit grant of authority to vote, the voting power would remain in each holder of the underlying debt."). Rule 3017(e) of the FEDERAL RULES OF BANKRUPTCY PROCEDURE (the "***Bankruptcy Rules***") provides that solicitation packets should be provide to the "beneficial holders" of bonds.  *Id*.  The advisory committee notes to Bankruptcy Rule 3017(e) further explain that:

> Subdivision (e) is designed to ensure that appropriate measures are taken for the plan, disclosure statement, ballot and other materials which are required to be transmitted to creditors and equity security holders under

---

[16] It is unclear whether the City seeks a deadline to transmit the Solicitation Packages of April 24 or ten days after approval of the Disclosure Statement.  The Trustee does not object to either deadline.
[17] The Trustee acknowledges that the Balloting Agent has experience in facilitating and navigating the solicitation process.  However, even with the Balloting Agent's assistance, the Trustee believes solicitation on the Water/Sewer Bonds will take no less than sixty days.  It is not just important that the Solicitation Package reach the Water/Sewer Bondholders, it is also important that the Water/Sewer Bondholders have time to analyze the materials in the Solicitation Package and seek financial and legal advice related thereto.

7

> this rule *to reach the beneficial holders of securities held in nominee name*.
>
> . . . .
>
> In most cases, the plan proponent will not know the identities of the beneficial holders and therefore it will be necessary to rely on the nominal holders of the securities to distribute the plan materials to the beneficial holders.

FED. R. BANKR. 3017 advisory committee's note (emphasis added). The Bankruptcy Rules recognize the multistage communications in the DTC process and promote a schedule that takes into account the time necessary to provide the beneficial holders with full information needed to evaluate the economic and legal effect of a proposed plan and to vote on that plan.

10. In the chapter 9 case *City of Colorado Springs Spring Creek Improvement District*, the Bankruptcy Court evaluated whether the solicitation process in a prepackaged bankruptcy case was sufficient to reach the unknown beneficial holders whose bonds were held in street name only. *In re City of Colorado Springs Spring Creek Gen. Improvement Dist.*, 177 B.R. 684, 690–92 (Bankr. D. Colo. 1995). The Bankruptcy Court determined there was "substantial uncertainty as to whether all beneficial bondholders received the plan, Disclosure Statement and ballot," and concluded "that the solicitation process was inadequate and that the acceptances obtained [were] invalid." *Id.* at 692. As a result, the debtor was forced to start the solicitation process all over. *Id*.

11. If the schedule does not provide sufficient time for the solicitation mechanics, then the Water/Sewer Bondholders will not be afforded due process and the entire vote could be invalidated; this would prejudice all the parties to this case, including the City. *See generally In re The Southland Corp.*, 124 B.R. 211, 227 (Bankr. N.D. Tex. 1991) (determining that eight business days "for the transmission of materials by brokers to their customers (beneficial holders), and for the original receipt, analysis and vote by the actual owners . . . [was] an

8

unreasonably short time . . . ," meriting invalidation of the votes on the pre-packaged plan and necessitating a "new vote based on an appropriate time period for notice and voting.").

12. The Trustee recognizes the Court's desire to move expediently with this case, but the Water/Sewer Bondholders must be afforded due process in the solicitation process. The Trustee requests that the schedule be revised to provide no less than sixty days between the commencement of solicitation to the Water/Sewer Bondholders and the voting deadline.

13. Finally, the City does not oppose a longer solicitation period for the Water/Sewer Bondholders. *See* Solicitation Motion at 12 n.6; City's Plan Procedures Response at 8 n.5.

## II. The Solicitation Motion Is Not Clear with Respect to Certain Solicitation Procedures.

### A. The Solicitation Motion Is Unclear as to What Constitutes a Class for the Water/Sewer Bond Claims.

14. The Plan provides that Classes 1A through 1F refer to DWSD-related claims and that "'DWSD Series' means an individual issue of DWSD Bonds or DWSD Revolving Bonds having the same lien priority, issue date and series designation." *See* Plan at 7–8, 22–23. Thus, the Plan provides that each Class of Water/Sewer Bonds will consist of multiple sub-Classes of Water/Sewer Bonds grouped by issue date, lien priority, and series designation. *See id.* at 24–26; *see e.g., id.* at 24 ("DWSD Class A Water Claims relating to each DWSD Series of DWSD Class A Water Bonds shall be separately classified. . . with each Class receiving the treatment set forth below."). The Solicitation Motion provides that the Solicitation Package will be mailed to "all known Nominees of Beneficial Holders (both as defined below) of claims in Classes 1A, 1B, 1C, 1D, 1E, 1F, 7, 8 and 9 under the Plan." *See* Solicitation Motion at 11. The Solicitation Motion appears to assert that there are only six Classes for all of the Water/Sewer Bonds, contrary to the

9

13-53846-tjt    Doc 2813    Filed 03/04/14    Entered 03/04/14 18:42:48    Page 9 of 19

Plan. The City should be required to remedy this disconnect between the Solicitation Procedures and the Plan, making the Solicitation Procedures conform to the terms of the Plan.[18]

> B. The Solicitation Procedures Are Unclear for Water/Sewer Bondholders Holding Multiple Claims.

15. The Class 1 Beneficial Ballots provide, in relevant part:

> **[For Beneficial Ballots:]** If you hold multiple Claims within [Class Number] under the Plan, you will receive a separate Beneficial Ballot for each such Claim. Each Beneficial Ballot you receive is for voting only your Claim described on the Beneficial Ballot. Please complete and return each Beneficial Ballot you receive. The attached Beneficial Ballot is designated only for voting the [Bond Series] Claims in [Class Number] under the Plan.
>
> **[For Independent Ballots:]** If you hold more than one [Bond Series] Claim in [Class Number], you must vote each Claim to accept or reject the plan in the same manner. If you vote multiple Claims in [Class Number], and each vote is not the same for each Claim in [Class Number], your Ballots will not be counted as having been cast.
>
> **[For Beneficial and Independent Ballots:]** If you hold more than one [Bond Series] Claim in [Class No.], you must vote each Claim to accept or reject the Plan in the same manner. If you vote multiple Claims in [Class No.], and each vote is not the same for each Claim in [Class No.], your Beneficial Ballots will not be counted as having been cast.

*See* Solicitation Motion, Exs. 6D.2, 6D.3, 6D.5, 6D.6. It is entirely unclear from the Solicitation Procedures whether a Water/Sewer Bondholder who holds Water/Sewer Bonds under multiple CUSIPs[19] may vote its claims in diverse ways if the CUSIPs are all grouped into one Class. Each CUSIP, of course, has different features and is subject to differing treatment under the Plan.

---

[18] The Trustee reserves all rights and objections with respect to the City's classification of claims in the Plan and/or Disclosure Statement.

[19] The Water/Sewer Bonds are listed under approximately 337 separate, unique CUSIPs. Each CUSIP represents bonds with their own maturity dates, dates of issuance, lien priority, and insurance coverage (or lack thereof). *See e.g.*, *Putnam Bank v. Countrywide Fin. Corp. (In re Countrywide Fin. Corp. Mortgage-Backed Securities Litig.)*, 860 F. Supp. 2d 1062, 1068–69 (C.D. Cal. 2012), *appeal dismissed* (Apr. 17, 2012), *appeal dismissed* (April 23, 2012) (noting that, in reference to residential mortgage-backed securities, "each separate tranche of an Offering is a separate security with its own CUSIP, credit rating, interest rates, rights of distribution, credit-enhancement rights, and backing loans.") (citing *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-cv-00302-MRP (MANx), 2011 WL 4389689, at *5 (C.D. Cal. May 5, 2011)).

For example, the Water Bonds issued in 2011 have three series—Series 2011-A, 2011-B, and 2011-C. Of the currently outstanding Series-2011 Water Bonds, their interest rates range from 3.607% to 6.00% and maturities range from July 1, 2014 to July 1, 2041. The Series 2011 Water Bonds are represented by 29 separate CUSIPs. The Plan provides treatment specific to each CUSIP. *See* Plan, Ex. I.A.150 (providing "reset" interest rates on a per CUSIP basis). Therefore, the City should be required to explicitly provide that the Water/Sewer Bondholders may vote their claims under each CUSIP differently—even if the CUSIPs are within the same Class.

    C.    <u>The Tabulation Rules are Unclear</u>.

    16.    The Tabulation Rules provide:

> If over-votes are submitted by a Nominee that are not reconciled prior to the preparation of Ballot Tabulation Summary (as defined below), then the votes to accept and to reject the Plan shall be approved in the same proportion as the votes to accept and to reject the Plan submitted by the Nominee, but only to the extent of the Nominee's Voting Record Date position in the debt securities.

*See* Solicitation Motion, Ex. 6C at XX(c). Since many of the Water/Sewer Bondholders may not be familiar with the "over-vote" terminology, the Trustee requests that the City clarify this provision and provide an example of how the over-voting provision would work.

**III.    The Procedures for Resolving Disputed Voting Rights Need Clarification.**

    17.    The Solicitation Motion "anticipates that disputes over which entity has the right to vote a particular claim may arise in this case." *See* Solicitation Motion at 13. In response, the City sets forth Voting Dispute Resolution Procedures. *Id.* The Voting Dispute Resolution Procedures provide:

> If a party is not identified in the Plan or this Motion as having the right to vote a claim or if it is not clear whether a party possesses the right to vote a claim or if more than one party wishes to vote a claim, then, by March

24, 2014 the party asserting the right to vote a claim (the "Claiming Party") shall file and serve on the ECF noticing list and the other affected claimholder (the "Affected Claimholder") a "Notice of Asserted Right to Vote a Claim" in which the Claiming Party shall identify (a) the claim (and Class thereof) with respect to which the party asserts voting rights and (b) the legal and factual support for asserting such voting rights.

*Id*. at 13; *see also* Solicitation Motion, Proposed Order, Ex. 1 ("***Proposed Solicitations Order***") at 7–8. The Trustee does not generally object to the concept of the Voting Dispute Resolution Procedures, subject to clarification and a reformed timeline.

    A.    <u>The Water/Sewer Bondholders Should Be Treated as the Presumptive Parties for Voting</u>.

18.    Rule 3017(e) of the Bankruptcy Rules provides that "beneficial holders" of the bonds are the proper parties to be solicited. FED. R. BANKR. 3017(e). The "beneficial holders" of the bonds are the record holders of the bonds. *See* 11 U.S.C. § 1126(a) (the "holder of a claim or interest" may accept or reject a plan of reorganization); FED. R. BANKR. 3018(a) (the "holder of record of the security on the date the order approving the disclosure statement is entered or on another date fixed by the court, for cause, after notice and a hearing," is the party entitled to vote); *In re Shilo Inn*, 285 B.R. 726, 729, 730 (Bankr. D. Ore. 2002) ("Where the issuer of corporate bonds becomes a debtor in bankruptcy. . . [t]he bondholders are entitled to vote their own claim or interest.") (citations and quotations omitted); *Southland Corp.*, 124 B.R. at 227 ("[O]nly a holder of a claim, or a creditor, or the holder of an interest, may accept or reject a plan.").

19.    The City anticipates that one or more of the bond insurers who have issued bond insurance policies covering Water/Sewer Bonds may assert they have the right to vote on the Plan with respect to the Water/Sewer Bonds they insure. The Voting Dispute Resolution Procedures attempt to address this issue. It appears the City intends for the actual beneficial

owners of the Water/Sewer Bonds (as opposed to the insurers) to be the presumptive voting party and the insurers to be the Claiming Parties. If so, the Trustee agrees with the City's proposal. It would be impracticable to require all of the beneficial bondholders of the Water/Sewer Bonds to assert their respective right to vote on the Plan as a Claiming Party, with the insurers (or no party whatsoever) deemed the presumptive voting parties in the first instance, until determined otherwise.

20. Nevertheless, there is some ambiguity in the wording of the Voting Dispute Resolution Procedures in this regard. Accordingly, the Trustee requests that the City clarify its intentions that the beneficial holders will be the presumptive parties to vote on the Plan until determined otherwise and that the insures will be the presumed Claiming Parties.

B. The Voting Dispute Resolution Procedures Do Not Give Affected Claimholders Adequate Time to Respond.

21. Assuming the presumed "Claiming Parties" will be the insurers, the deadline for bondholders to respond to any Notice of Asserted Right to Vote a Claim filed by a Claiming Party is too short. As set forth above, there are a large number of unidentified Water/Sewer Bondholders, and the process for disseminating notice to individual Water/Sewer Bondholders is a time-consuming process. In light of the importance of these issues and the need to reach actual beneficial holders whose right to vote on the Plan may be at issue, the Trustee requests that the deadline to contest a Notice of Asserted Right to Vote a Claim be no less than 25 days. The Trustee also proposes that it be deemed to have standing as a party-in-interest to be heard on any voting dispute, even though the Trustee is not the main party-in-interest in any dispute under the Voting Dispute Resolution Procedures.

22. Based upon the arguments set forth in Sections III(A) and III(B) herein, the Trustee requests that the Proposed Solicitation Order be modified as follows:

13

a.  If a party is not identified in the Plan or in the Motion as having the right to vote on the Plan or if it is not clear whether a party possesses the right to vote a claim **(for the avoidance of doubt, the beneficial holders of bonds comprising Class 1 are the parties presumed to vote in Class 1)**, and if that party believes it has a right to vote on the Plan, then, by March 24, 2014, the party (the "<u>Claiming Party</u>") shall file and serve on the ECF noticing list~~, and~~ the other affected claimholder (the "<u>Affected Claimholder</u>")**, and the Trustee, who shall be deemed to have standing to be heard,** a "Notice of Asserted Right to Vote a Claim" in which the Claiming Party shall identify (i) the claim (and Class thereof) with respect to which the party asserts voting rights and (ii) the legal and factual support for asserting such voting rights.[20]

b.  The Affected Claimholder shall have until ~~April 4, 2014~~ **April 18, 2014** to respond to any Notice of Asserted Right to Vote a Claim filed by a Claiming Party.

C.  <u>Any Determination Pursuant to the Voting Dispute Resolution Procedures Should Apply to All Affected Claimholders in That Class</u>.

23.  Each Class of Water/Sewer Bond-related claims could easily be comprised of thousands of individuals with thousands of votes. A decision with respect to any Affected Claimholder in a Class should apply to all Affected Claimholders in the Class.

24.  An example best illustrates this point. Assume that an insurer alleges it has the right to vote on $100 million of outstanding Water/Sewer Bonds that are in one Class. The claim representing this particular Class of Water/Sewer Bonds may be held by 1,000 different Affected Claimholders but only 5 Affected Claimholders, representing $25 million of the Affected Claimholders' claim, respond to the insurer's allegation. This Court rules in favor of the Affected Claimholders representing $25 million of the claim. In such event, the ruling in favor of the Affected Claimholders should run through the entire Class, and all Affected Claimholders in the Class should be permitted to vote. The procedures need to be clear on this point and set forth that any determination by this Court of a Notice of Asserted Right to Vote a Claim is

---

[20] Additions have been bolded and deletions have been crossed through.

applicable to all Affected Claimholders of the Class and not just the Affected Claimholder(s) responding to the Notice of Asserted Right to Vote a Claim.

IV. **Ballots**

   A. Approving the Form of Ballot is Premature at this Juncture.

   25. Pursuant to the Plan Procedures Order, the hearing on the Disclosure Statement is set for April 14, over a month after the hearing scheduled on the Solicitation Motion. *See* Plan Procedures Order at 2. The City recently asserted that it intends to amend the Plan and to file a supplemental Disclosure Statement. *See* City's Plan Procedures Response at 3.[21] Further, the City asserts that it is attempting to reach settlements with various parties. *Id*. In light of the likelihood of substantive changes in the City's Plan and Disclosure Statement, approval of the Ballots should be postponed until a final Plan and Disclosure Statement is presented. *See* 11 U.S.C. § 1125(b) (plan solicitation may not be commenced unless "at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information"); *Micro-Waste Corp. v. Sanitec Indus. (In re Sanitec Indus., Inc.)*, B.A.P. No. CC-09-1183-DHPA, 2009 WL 7809007, at *15 (B.A.P. 9th Cir. Dec. 21, 2009) (misleading information in a disclosure statement may be "'so serious as to invalidate the voting by creditors as to a plan, requiring a new round of voting after necessary corrections to the disclosure

---

[21] As the City stated on February 28:
> Notwithstanding the filing of the Plan and Disclosure Statement, the City expects that its continuing discussions and negotiations with creditors and other parties in interest — including through the Court-ordered mediation process before Chief Judge Rosen — will continue uninterrupted. The City, moreover, fully expects that, as these negotiations and mediations continue, the City and at least some of its stakeholders will ultimately reach consensual resolutions of their disputes, and that the Plan will be amended to account for such resolutions. Accordingly, as is customary with large bankruptcy cases, the City has always contemplated that the version of the Plan with respect to which the City ultimately and formally solicits acceptances and rejections (the "Solicitation Version"), which could change up until the hearing on the Disclosure Statement, would differ in material respects from the Plan filed on February 21, 2014 (the "Current Plan Version").

*See* City's Plan Procedures Response at 3.

15

statement are made'") (quoting *Computer Task Grp., Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 194 (B.A.P. 9th Cir. 2003)); *In re Cramer, Inc.*, 100 B.R. 63, 67 (Bankr. D. Kan. 1989) (invalidating ballots already submitted because the disclosure statement was amended materially after solicitation). In short, the Ballots presented now may not be applicable to the Plan if the City alters the Plan prior to the April 14 hearing. *See* Solicitation Motion at 19 (requesting that the Ballots provided to the Water/Sewer Bondholders be consistent "with the terms of the Plan as the City intends to amend it").

26. Furthermore, the issues set forth above regarding the Voting Dispute Resolution Procedures are material. The Ballots should not be approved pending resolution of certain of the issues with the Voting Dispute Resolution Procedures.

27. Accordingly, the Trustee urges this Court to postpone approval of the Ballots pending approval of the Disclosure Statement and a determination of any disputes raised pursuant to the Voting Dispute Resolution Procedures.

B. The Solicitation Procedures and Balloting for the SRF Bonds should be Streamlined.

28. The SRF Bonds are not held by DTC and do not have CUSIP numbers. The SRF Bonds were issued by the City and are held directly and solely by the Michigan Finance Authority, which is a department of the government of the State of Michigan. Thus, the Solicitation Procedures should provide that the Ballots related to the SRF Bonds be sent directly to the Michigan Finance Authority and not through the process set forth for Classes 1A, 1B, 1C, and 1D.

29. Furthermore, due to the sole ownership of the SRF Bonds by the Michigan Finance Authority, the Ballots set forth on Exhibits 6D.4 and 6D.5 to the Solicitation Motion are not needed.

## V. Supplemental Requests

30. Many of the Water/Sewer Bondholders have raised questions about the Solicitation Procedures, the Disclosure Statement, and the Plan. The Trustee requests that it be permitted to discuss the Solicitation Procedures, the Disclosure Statement, and the Plan with individual Water/Sewer Bondholders.

31. To assist the Trustee in its role, the Trustee requests that the Ballot Tabulation Summary be provided to the Trustee as soon as such summary is prepared.

32. Finally, the Trustee reserves its and the Water/Sewer Bondholders' rights to seek further relief from the Solicitation Motion if circumstances hereafter warrant.

## CONCLUSION

WHEREFORE, for the reasons stated herein, and for such other reasons as may be stated at any hearing, the Trustee respectfully requests that this Court: (i) set a deadline for the Water/Sewer Bondholders to vote on the Plan no earlier than sixty days after transmission of the Solicitation Packages to the Nominees; (ii) require the City to resolve any ambiguities as to what constitutes a "Class"; (iii) clarify that Water/Sewer Bondholders can vote individual CUSIPS in diverse ways, whether or not separated by Class; (iv) require the City to provide an example of how an "over-vote" will be treated; (v) revise the Voting Dispute Resolution Procedures to presume that the holders of the Water/Sewer Bonds are the parties with the right to vote; (vi) revise the Voting Dispute Resolution Procedures to allow the Trustee to be deemed to have standing on behalf of any Affected Claimholder; (vii) clarify the Voting Dispute Resolution

Procedures with respect to the ramifications of only certain Affecting Claimholders responding to the Notice of Asserted Right to Vote a Claim; (viii) postpone approval of the Ballots pending approval of the Disclosure Statement and determination of any voting disputes; (ix) require the Debtor to provide the Ballots for the SRF Bonds directly to the Michigan Finance Authority instead of through the procedure outlined for Classes 1A, 1B, 1C, and 1D; and (x) grants such other relief as the Court deems appropriate.

Respectfully submitted this the 4th day of March, 2014.

*/s/ Courtney M. Rogers*
David E. Lemke (TN13586)
Michael R. Paslay (TN11092)
Ryan K. Cochran (TN25851)
Courtney M. Rogers (TN25664)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Phone: (615) 244-6380
Fax: (615) 244-6804
david.lemke@wallerlaw.com
mike.paslay@wallerlaw.com
ryan.cochran@wallerlaw.com
courtney.rogers@wallerlaw.com
– and –
Robert J. Diehl, Jr. (MI31264)
Jaimee L. Witten (P70068)
BODMAN PLC
1901 St. Antoine Street, 6th Floor
Detroit, Michigan 48226
Phone: (313) 393-7597
Fax: (313) 393-7579
rdiehl@bodmanlaw.com
jwitten@bodmanlaw.com
*Attorneys for U.S. Bank National Association, as Indenture Trustee for the Water and Sewer Bonds*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Objection to the *Motion of the City of Detroit for Entry of an Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment* was filed and served via the Court's electronic case filing and noticing system to all parties registered to receive electronic notices in this matter, this 4th day of March, 2014.

/s/ *Courtney M. Rogers*
David E. Lemke (TN13586)
Michael R. Paslay (TN11092)
Ryan K. Cochran (TN25851)
Courtney M. Rogers (TN25664)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Phone: (615) 244-6380
Fax: (615) 244-6804
david.lemke@wallerlaw.com
mike.paslay@wallerlaw.com
ryan.cochran@wallerlaw.com
courtney.rogers@wallerlaw.com

*Attorneys for U.S. Bank National Association, as Indenture Trustee for the Water and Sewer Bonds*