UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____ )
                               )
In re                          ) Case No. 13-53846
                               )
CITY OF DETROIT, MICHIGAN,     ) In Proceedings Under
                               ) Chapter 9
         Debtor.               )
                               )
_____ ) Hon. Steven W. Rhodes

# LIMITED OBJECTION OF AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY MUNICIPAL CORP., FINANCIAL GUARANTY INSURANCE COMPANY, AND NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION TO MOTION OF THE CITY OF DETROIT FOR ENTRY OF AN ORDER (I) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT PLAN OF ADJUSTMENT AND (II) APPROVING NOTICE PROCEDURES RELATED TO CONFIRMATION OF THE PLAN OF ADJUSTMENT

Ambac Assurance Corporation ("Ambac"), Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance Inc. ("Assured"), Financial Guaranty Insurance Company ("FGIC"), and National Public Finance Guarantee Corporation ("National" and, collectively with Ambac, Assured and FGIC, the "Insurers"), creditors and parties in interest in the above-captioned case, hereby file this joint limited objection (the "Limited Objection") to the Motion of the City of Detroit (the "City" or the "Debtor") for Entry of an Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of

1

Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment [ECF No. 2789] (the "Solicitation Motion").  In support of the Limited Objection, the Insurers respectfully submit as follows:

## Background[1]

1. On July 18, 2013, the City filed its petition commencing this case under chapter 9 of the Bankruptcy Code.

2. Prior to the commencement of this case, each of the Insurers issued certain insurance policies related to the payment of claims owed to holders of DWSD bonds, General Obligation Bonds, or COPs.  In connection therewith, the Insurers filed certain proofs of claim.

3. On or about February 20, 2014, Ambac filed fourteen (14) proofs of claim [Claim Nos. 1050, 1060, 1076, 1083, 1089, 1106, 1110, 1118, 1119, 1121, 1122, 1134, 1147 and 1149] (the "Ambac Claims") asserting claims against the City for (a) principal and interest due under the applicable bond documents; (b) amounts due to Ambac for payment owed under its respective insurance policies; and (c) contractual reimbursement for charges, fees, costs, losses, liabilities and

---

[1] Capitalized terms in this Limited Objection that are not defined have the definitions ascribed to them in the Solicitation Motion or the proposed Plan, as applicable.

expenses incurred by Ambac in connection with its respective insurance policies. The Ambac Claims are secured claims.[2]  Moreover, pursuant to the terms of the underlying bond documents and/or applicable law, Ambac is deemed the sole holder of voting rights and is entitled to exercise the voting rights with respect to the bonds underlying the Ambac Claims.

4.  On or about February 20, 2014, Assured filed six (6) proofs of claim [Claim Nos. 1166, 1167, 1168, 1169, 1170, 1171] (collectively, the "Assured Claims").  Four of the Assured Claims assert claims against the City for, among other things, (a) principal and interest due under the applicable bond documents; (b) amounts due to Assured for payment owed under its respective insurance policies; (c) contractual reimbursement for charges, fees, costs, losses, liabilities and expenses incurred by Assured in connection with its respective insurance policies; and (d) unlawful injury caused by the City's failure to make scheduled payments as required by applicable bond documents.  The remaining two Assured Claims were filed on behalf of the holders of unlimited tax general obligation bonds that Assured and its affiliates insure.  The Assured Claims are secured

---

[2] In the event that the Court determines that the Ambac Claims are not secured claims, the claims are entitled to administrative expense priority or are senior unsecured claims that are entitled to be paid before the claims of other general unsecured creditors.

claims.[3] Moreover, pursuant to the terms of the underlying bond documents and/or applicable law, Assured is deemed the sole holder of, and is entitled to exercise voting rights with respect to, bonds underlying the Assured Claims.

5.  On or about February 18, 2014, FGIC filed five (5) proofs of claim [Claim Nos. 1185, 1189, 1190, 1191, and 1195] (collectively, the "FGIC Claims"). Two (2) of the FGIC Claims assert claims against the City for, among other things, (a) principal and interest due to FGIC under the applicable bond documents as potential assignee and subrogee of bonds, (b) outstanding amounts due with respect to the bonds, and (c) certain fees and expenses. Two (2) of the FGIC Claims assert claims against the City for (a) amounts due to FGIC as current and potential assignee and subrogee under the applicable transaction documents related to certain COPs, (b) amounts due to FGIC as a third party beneficiary of certain transaction documents related to certain COPs, and (c) certain damages. One (1) of the FGIC Claims asserts claims against the City for (a) payments due to FGIC as

---

[3] The City has not disputed that the Assured Claims related to Assured insured DWSD Water Bonds and DWSD Sewer Bonds are secured. *See*, *e.g.*, Plan, at 7-8 (defining DWSD Water Bonds and DWSD Sewer Bonds as "secured notes"). In the event that the Court determines that any of the remaining Assured Claims are not secured claims, the claims are entitled to administrative expense priority or are senior unsecured claims that are entitled to be paid before the claims of other general unsecured creditors.

4

potential assignee and subrogee under the applicable swap documents, (b) amounts due to FGIC as a third party beneficiary of certain transaction documents related to the swaps, and (c) certain damages. Certain of the FGIC Claims are secured claims.[4] Moreover, pursuant to the terms of the underlying transaction documents and/or applicable law, FGIC is entitled to exercise voting rights with respect to the bonds, certificates, and swaps underlying the FGIC Claims.

6. On or about February 20, 2014, National, and its ultimate corporate parent MBIA Insurance Corporation ("MBIA"), filed thirteen (13) proofs of claim [Claim Nos. 1029, 1031, 1040, 1046, 1070, 1077, 1084, 1091, 1034, 1042, 1067, 1095, 1099] (the "National Claims"). Twelve of the National Claims assert claims against the City for, among other things, (a) principal and interest due under the applicable bond documents; (b) amounts due to National for payment owed under its respective insurance policies and the applicable bond documents; (c) direct claims for contractual reimbursement for charges, fees, costs, losses, liabilities and expenses incurred by National in connection with its respective insurance policies and applicable bond documents; and (d) amounts potentially due to MBIA to the extent it is required to make payments on policies that have been transferred to

---

[4] The City has not disputed that the FGIC Claims related to insured DWSD Water Bonds and DWSD Sewer Bonds are secured. *See*, *e.g.*, Plan at 7-8 (defining DWSD Water Bond and DWSD Sewer Bonds as "secured notes").

National. The remaining National Claim was filed on behalf of the holders of unlimited tax general obligation bonds that National insures. The National Claims are secured claims.[5] Moreover, pursuant to the terms of the underlying bond documents and/or applicable law, National is entitled to exercise voting rights with respect to the bonds underlying the National Claims.

7. On February 21, 2014, the City filed the Plan for Adjustment of Debts of the City of Detroit [ECF No. 2708] (the "Plan") and the related Disclosure Statement with Respect to Plan for Adjustment of Debts of City of Detroit [ECF No. 2709] (the "Disclosure Statement"). The Plan classifies the amounts owed with respect to the claims insured by the Insurers (the "Insured Claims") in Classes 1A, 1B, 1C, 1D, 1E, 7, 8 and 9, which are impaired classes entitled to vote.[6]

8. In addition, on February 28, 2014, the City filed the Solicitation Motion seeking, *inter alia,* entry of an order establishing procedures for the

---

[5] The City has not disputed that the National Claims related to insured DWSD Water Bonds and DWSD Sewer Bonds are secured. *See, e.g.,* Plan, at 7-8 (defining DWSD Water Bonds and DWSD Sewer Bonds as "secured notes"). In the event that the Court determines that any of the remaining National Claims are not secured claims, the claims are entitled to administrative expense priority or are senior unsecured claims that are entitled to be paid before the claims of other general unsecured creditors.

[6] The Plan classifies the COP Swap Claims in Class 5, but lists the impairment and voting status of this Class as "TBD." The Insurers reserve all rights in connection therewith.

6

solicitation and tabulation of votes to accept or reject the Plan, approving the form of ballots and establishing notice procedures with respect to confirmation of the Plan.

## **Objection**

9. The Insurers object to the Solicitation Motion on four narrow and limited grounds, the first two of which relate to insurer voting rights; the third to tabulation of ballots; and the fourth to tracking of plan elections.

### **I. Mechanisms Necessary to Account for the Resolution of Insurer Voting Rights**

10. First, although the Insurers are entitled to vote the Insured Claims, the City has not provided a ballot for bond insurers to vote. The City's stated "default" position that the Beneficial Holders are entitled to vote the Insured Claims is incorrect under the terms of the applicable bond and transaction documents and/or applicable law.[7] Despite the fact that certain of the Insurers filed proofs of claim that support the position that the Insurers have the right under the applicable bond documents to vote to accept or reject any plan of adjustment, the City erroneously asserts that the Beneficial Holders (*i.e.*, the holders themselves)

---

[7] The Insurers are not addressing the merits of the City's position with respect to the proper parties to vote on the Plan, which issue is not before the Court at this time, but rather reserve all of their rights with respect to that issue.

7

possess the right to vote. *See* Solicitation Motion, ¶ 16. Indeed, the City attached form ballots for the Beneficial Holders to vote. *See* Solicitation Motion, Ex. 6D.8-13. The City, however, fails to provide a form ballot for the Insurers to vote. In fact, in other similar chapter 9 cases, the bond insurers have voted on a plan of adjustment. *See, e.g. In re City of Stockton, California*, Case No. 2012-32118 (Bankr. E.D. Cal.); *In re City of Vallejo, California*, Case No. 08-26813 (Bankr. E.D. Cal.). Accordingly, unless and until the City corrects this defect and provides a form of ballot for insurer claims to be reviewed and approved in the Solicitation Motion, the Solicitation Motion should not be granted.

11.     Second, the City's proposed procedures for resolving disputes regarding the proper party to vote to accept or reject the Plan are unworkable. Specifically, the requirement that the Insurers serve the "Notice of Asserted Right to Vote a Claim" on the "other affected claimholder," *i.e.*, the Beneficial Holders, is not feasible, because the insurers have no way of identifying the Beneficial Holders to effectuate this service. In addition, there is no obligation or procedure under the applicable bond and transaction documents for the Insurers to serve notice on Beneficial Holders under any circumstances and any necessary communications with the Beneficial Holders are carried out by other transaction parties. In fact, the City also admits to being unaware of the identities of the Beneficial Holders. As the City explained in the Solicitation Motion:

8

> [t]he vast majority of [Beneficial Holders] are not known by the City. As is typical with publicly-traded securities, many of the City's bond and other debt instruments (collectively, the "Debt Instruments") are held in the name of institutional banks, brokers and other customers (the "Nominees"). The Nominees, in turn, hold the Debt Instruments in "street name" on behalf of the Beneficial Holders.

Solicitation Motion at ¶ 18.

12.  In order to overcome the difficulty of identifying and contacting the Beneficial Holders for its own solicitation purposes, the City has proposed an elaborate process for providing ballots to the Beneficial Holders. That process would, as recognized by the City itself in the Solicitation Motion, involve, among other things, the City obtaining a list of Nominees from DTC, forwarding Beneficial Ballots to the Nominees, and instructing the Nominees to forward the ballots on to the Beneficial Holders. *See* Solicitation Motion at ¶ 19.

13.  To effectuate this process, the City, at great expense, has engaged the services of Kurtzman Carson Consultants LLC ("KCC"), a professional solicitation firm, to serve as the Balloting Agent. Solicitation Motion at ¶¶ 11, 19. The Insurers do not have access to any such service and should not be unduly burdened with having to hire a comparable firm.

14.  Moreover, the City recognizes the enormity of this task. The City proposes to give itself until April 24, 2014 to complete the process of identifying and serving documents on individual Beneficial Holders in the context of

9

solicitation, yet it seeks to require the Insurers to perform essentially the same task by March 24.

15. The City's proposed deadline for Beneficial Holders to respond to any pleading filed by the Insurers is similarly unrealistic and violates such holder's due process rights. Even if a Notice of Asserted Right to Vote a Claim could be provided to the Beneficial Holders by March 24, 2014, it is unlikely that they could meaningfully respond by the proposed April 4, 2014 deadline.[8] In the Solicitation Motion, the City acknowledged that at least 45 days from service is the required period to allow Beneficial Holders to respond to plan solicitation given "the complexities of Beneficial Holders of bonds voting their claims . . . ." Solicitation Motion at ¶ 15, n.6. Indeed, the Water and Sewer Bond Trustee, who has acted for the benefit of all the DWSD Water and Sewer Bondholders in this case, has indicated that, even with the assistance of the Debtor's Balloting Agent, "it will take no less than *sixty days* to complete the solicitation and voting process for the Water/Sewer Bondholders, *i.e.* from the date the solicitation materials are delivered to DTC direct participants to the date ballots are returned to the City (or its

---

[8] In addition, the City has proposed a Voting Record Date of April 14, 2014, which means that the Notice of Asserted Right to Vote a Claim would be served on Beneficial Holders as of a date *prior to* the Voting Record Date, and who may be not be the "affected" claim holders.

10

solicitation agent)."[9]  *See also* Joinder of Wilmington Trust, National Association, as Successor Contract Administrator, to (A) Comment to First Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment and (B) The Water/Sewer Bond Trustee's Limited Objection to the First Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [Docket No. 2796] (explaining that at least sixty days is required to complete the solicitation and voting process for the COPs holders).  It is unclear why the City believes that individual holders could receive and meaningfully respond to the Insurers' arguments in a small fraction of the time that it will take them to evaluate the Plan and return a ballot.

16.     Even if the City's proposals on voting issues were workable (which they are not) the City's proposed dispute resolution process would impose an unnecessary and massive administrative burden on the Insurers and this Court at precisely the moment such a burden is least desirable.  In the event that Beneficial Holders do respond by the April 4 deadline contemplated by the Solicitation Motion, the Insurers would be required to attempt to negotiate stipulations

---

[9] *See* The Water/Sewer Bond Trustee's Limited Objection to the First Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [Docket No. 2794].

11

resolving their dispute – *with each individual Beneficial Holder* – in a matter of days. Given the enormous number of potential responding Beneficial Holders, such negotiations would be next to impossible and economically infeasible. Thus, the result of the proposed dispute resolution procedures would be free-for-all litigation before this Court during the Disclosure Statement Hearing scheduled for April 14, 2014 involving a substantial number of parties. Such a result is undesirable for every party involved in this case.

17. In short, the process contemplated by the Solicitation Motion is unworkable under these circumstances, duplicative of efforts that the City may ultimately be required to undertake in connection with solicitation, and likely to cause significant confusion and further litigation. There is no basis to impose the City's service burden on the very parties whose rights the City is seeking to limit.

18. The solution to the City's unnecessary and unworkable proposed procedure is straightforward. The City should simply provide ballots to the Insurers in addition to the ballots provided to the Beneficial Holders. Should the need arise, the City, or any other party in interest, may object to any claim that such party believes must be disallowed for voting purposes and serve whichever parties are necessary to resolve the objection.

## II. Revisions to the Proposed Rules of Tabulation of Ballots

19. Section 1126 of the Bankruptcy Code provides that any holder of a

claim allowed under section 502 of the Bankruptcy Code may vote to accept or reject the Plan. The Proposed Rules of Tabulation of Ballots attached as Exhibit 6C to the Solicitation Motion appear to contravene section 1126 because the first rule provides that a claim will be temporarily allowed for voting purposes only "in an amount equal to the full stated amount claimed by the holder of such claim to be an *unsecured nonpriority claim* in any proof of claim . . . ." Solicitation Motion, Ex. 6C (emphasis added). Based on this proposed rule, votes cast by Insurers may not be counted because certain of the Insurer's claims have been filed as secured claims. Therefore, despite the fact that these claims are valid claims allowed under section 502, and are impaired under the Plan, the tabulation rules proposed by the City would void the votes submitted on account of those claims. This proposal is in clear contravention of section 1126 of the Bankruptcy Code and should not be approved as drafted.

20. In addition, the Proposed Rules of Tabulation of Ballots should be clarified to provide that the Insurers will be entitled to vote the full principal amount of the Insured Claims. At present, the proposed rules provide that:

> If a claim for which a proof of claim has been timely filed is marked or identified as contingent or unliquidated on its face or if the proof of claim does not otherwise specify a fixed or liquidated amount, such contingent or unliquidated [claim] will be temporarily allowed for voting purposes in the amount of $1.00.

Solicitation Motion at p. 25. Certain of the claims asserted by the Insurers are

listed as contingent and/or unliquidated because it is not yet certain whether, and to what extent, the respective Insurers will be required to pay all amounts that may become due and owing under the insured instruments. Nevertheless, because the total principal amounts of the Insured Claims are known, it would be inappropriate to limit the allowed amount of the Insurers' votes with respect to the Insured Claims to $1.00 per claim. Instead, the Insurers' votes should be temporarily allowed for voting purposes in the full outstanding principal amount of the Insured Claims.[10]

### III. Implementation of Procedures for Tracking Plan Elections

21. The Plan provides certain Classes with treatment and settlement elections, which the City intends to solicit pursuant to the Ballots. *See* Solicitation Motion ¶ 21. While it is not uncommon for a debtor to rely on the ballots for the submission of elections offered pursuant to a plan, in circumstances where (as is the case here) certain of the electing parties (1) hold public securities in "street name" through Nominees (and therefore are not identifiable) and (2) such

---

[10] For example, if FGIC is entitled to cast votes in Class 9, the claims FGIC votes should be deemed temporarily allowed for voting purposes in an amount equal to the principal amount of COPs insured by FGIC. It appears this clarification is consistent with the City's proposed rules for tabulating Ballots should the Beneficial Holders in Class 9 possess the right to vote.

14

securities trade, it is necessary to implement procedures to track such elections. Without this, there is a risk that an electing holder trades all or a portion of its securities after submitting its ballot, the transferor and transferee likely do not know one another's identities, and there is no way of identifying the securities held by the transferee as securities that were subject to the transferor's election in order to bind such transferee to such election. This necessary tracking is typically accomplished by establishing election accounts at DTC into which Nominees "tender" electing holders' securities, and from which such securities cannot be withdrawn or traded. Similar processes were implemented, for example, in *In re Jefferson County, Alabama*, Case No. 11-05736 (Bankr. N.D. Ala.) and *In re Washington Mutual, Inc.*, Case No. 08-12229 (Bankr. D. Del.), and in both cases the processes were implemented by KCC.

22. Accordingly, in the event that Beneficial Holders do vote and make elections with respect to the proposed Plan, similar mechanisms must be put in place in order to ensure that the City makes the appropriate distributions under the Plan to the appropriate Beneficial Holders, and so that, where applicable, the Insurers are able to reconcile parties' claims under the relevant insurance policies. Such mechanisms should be described and disclosed in the Solicitation Procedures, Ballots, and any other relevant documents so that all parties, including Beneficial Holders and Nominees, have notice of and can comply with the procedures.

15

## Conclusion

23. The Solicitation Motion should be denied unless the City is required (i) to provide Ballots to the Insurers in addition to the Beneficial Holders through the Nominees; (ii) to remove the proposed procedures for resolving disputes regarding the proper party to vote to accept or reject the Plan, or at the very least, to defer those procedures to a much later date; (iii) to revise the tabulation procedures to allow for voting purposes the claims of the Insurers in the full outstanding principal amount of the Insured Claims regardless of whether such claims are filed as secured, unsecured, unliquidated or contingent; and (iv) to provide procedures for tracking elections under the Proposed Plan. Unless the proposed solicitation procedures are modified to address the issues raised in this Limited Objection, the Solicitation Motion should not be approved.

Dated: March 4, 2014

Respectfully Submitted,

**ARENT FOX LLP**

By: /s/ Carol Connor Cohen
Carol Connor Cohen
Caroline Turner English
1717 K Street, NW
Washington, DC 20036-5342
(202) 857-6054
Email: Carol.Cohen@arentfox.com

David L. Dubrow

Mark A. Angelov
1675 Broadway
New York, NY 10019
(212) 484-3900

– and –

**SCHAFER AND WEINER, PLLC**
Daniel J. Weiner (P32010)
Brendan G. Best (P66370)
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
(248) 540-3340
Email: bbest@schaferandweiner.com

Attorneys for Ambac Assurance Corporation

**CHADBOURNE & PARKE LLP**

By:   /s/  Lawrence A. Larose
Lawrence A. Larose
Samuel S. Kohn
30 Rockefeller Plaza
New York, NY 10012
Telephone:  (212) 408-5100
Email: llarose@chadbourne.com
Email: skohn@chadbourne.com

Attorneys for Assured Guaranty Municipal Corp.

**WILLIAMS, WILLIAMS, RATTNER & PLUNKETT, P.C.**

By:   /s/  Ernest J. Essad Jr.
Ernest J. Essad Jr.
Mark R. James
280 North Old Woodward Avenue, Suite 300

17

Birmingham, MI 48009
Telephone:  (248) 642-0333
Facsimile:  (248) 642-0856
Email:  EJEssad@wwrplaw.com
Email:  mrjames@wwrplaw.com

 – and –

**WEIL, GOTSHAL & MANGES LLP**
Alfredo R. Pérez
700 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  alfredo.perez@weil.com

Attorneys for Financial Guaranty Insurance Company

**SIDLEY AUSTIN LLP**

By:      /s/ Guy S. Neal
Guy S. Neal
1501 K Street, N.W.
Washington, DC 20005
Tel: (202) 736-8000
Fax: (202) 736-8711
Email: gneal@sidley.com

Jeffrey E. Bjork
555 West Fifth Street, Ste. 4000
Los Angeles, CA 90013
Tel: (213) 896-6000
Fax: (213) 896-6600
Email: jbjork@sidley.com

 – and –

**JAFFE, RAITT, HEUER & WEISS, P.C.**

18

Louis P. Rochkind (P24121)
2777 Franklin Road, Suite 2500
Southfield, MI 48034
Tel: (248) 351-3000
Fax: (248) 351-3082
Email: enovetsky@jaffelaw.com

Attorneys for National Public Finance Guarantee Corporation