**Exhibit A**

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16.07.2013 12:44

**Composite Sale Order of the Finance Director of the City of Detroit**
**with respect to**
**Series 2003 Securities**

**Whereas**, on May 7, 2003, the City Council (the *"City Council"*) of the City of Detroit (the *"City"*) adopted the resolution entitled in relevant part "Resolution Authorizing the Issuance and Sale of Sewage Disposal System Revenue and Revenue Refunding Bonds of the City of Detroit of Equal Standing with the City's Sewage Disposal System Revenue Bonds and Sewage Disposal System Revenue Refunding Bonds Now Outstanding and Which May Remain Outstanding, and Authorizing the Issuance and Sale of Sewage Disposal System Revenue Bonds of the City of Detroit of Junior Standing to the City's Sewage Disposal System Revenue Bonds and Sewage Disposal System Revenue Refunding Bonds Now Outstanding and Which Remain Outstanding, for the Collective Purposes of Defraying Part of the Cost of Acquiring and Constructing Replacements, Repairs, Extensions and Improvements to the City's Sewage Disposal System and Refunding Certain Sewage Disposal System Revenue Bonds" (the *"Bond Resolution"*);

**Whereas**, the Resolution was enacted pursuant to Ordinance No. 27-86, as amended (the *"Bond Ordinance"*) and Act 94, Public Acts of Michigan, 1933, as amended (*"Act 94"*); and

**Whereas**, the Resolution authorizes the Finance Director, acting on behalf of the City, to sell and deliver securities (*"Series 2003 Securities"*) by sale order within the parameters established by the Bond Resolution for the purposes set forth in the Bond Resolution as more fully stated below; and

**Whereas**, this document (the *"Sale Order"*) constitutes the exercise of the authority granted to the Finance Director in the Bond Resolution;

**Now, Therefore**, the undersigned Finance Director of the City of Detroit Orders as follows:

1. **Sale Order Components.**

   This Sale Order consists of the following:
   - this Sale Order including exhibits and signature pages
   - the General Terms of 2003 Securities Supplement, which appears as Annex A (the *"GT Supplement"*)
   - the Variable Rate Mode Supplement and Agreement, which appears as Annex B (the *"VRM Supplement"*)
   - the FSA Supplement, which appears as Annex C

2. **Definitions.**

   (a)    Undefined capitalized terms used in this Sale Order and defined in any of the following are used in this Sale Order as defined in the following:

*6*

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit 06:07:2013 12:44

- the Preamble to this Sale Order
- the Bond Ordinance
- the Bond Resolution
- the GT Supplement
- the VRM Supplement

(b)    The following terms have the following respective meanings unless the context clearly otherwise requires:

*"Closing"* means, with respect to a particular Type and Priority of Securities, the delivery of such Securities to, and payment for such Securities by, the purchasers identified in the Sale Order and the other actions in connection therewith.

*"Bonds to be Refunded"* means the Securities defined as the "Bonds to be Refunded" in the Official Statement with respect to the Series 2003(A) Securities.

*"Closing Date"* means the date on which a Closing occurs.

*"Non-Provider Securities"* means all Series 2003 Securities except Securities issued to a Provider under the VRM Supplement (i.e., *"Provider Securities"*).

*"Project Securities"* means all Non-Provider Securities except Refunding Securities.

*"Refunding Securities"* means all Series 2003(A) Securities of each Type for which a disposition of proceeds on the signature pages hereto is indicated to be for Refunding Purposes and equal, as to each such Type, in aggregate principal amount to the principal amount under the caption *"Disposition of Proceeds—Refunding Purposes."*

*"Type"* means the manner in which a Series 2003 Security bears interest and includes all of the attributes provided by this Sale Order for Series 2003 Securities bearing interest in that manner. The following are the Types of Series 2003 Securities authorized by this Sale Order:

- Fixed Rate Securities
- Modal Securities
    - Variable Rate Securities
        - Short-Term Securities
            - Daily Rate Securities
            - Weekly Rate Securities
            - Flexible Rate Securities
        - Term Rate Securities
        - Modal Fixed Rate Securities
- Provider Securities

2

CONFIDENTIAL INFORMATION

CSchoch@winston.com

Detroit116-07.0012.18544

3. **Issuance of Series 2003 Securities; Disposition of Proceeds.**

(a) *Issuance.* It is hereby determined that Series 2003 Securities shall be issued in the aggregate principal amount equal to the sum of the principal amounts set forth on the signature pages hereto and of the Types and Priorities as therein set forth; provided that the aggregate principal amount of Series 2003 Securities shall not exceed $900,000,000, the amount set forth in the Bond Resolution; and provided further:

(1) in accordance with Section 4 of the Bond Resolution, Project Securities in the total principal amount appearing in Exhibit I to this Sale Order, but not more than $550,000,000 in aggregate principal amount, which total principal amount is determined to be the amount of Project Costs to be financed with Series 2003 Securities, plus such amounts as are necessary to pay matters ancillary thereto, such as funding Costs of Issuance and meeting Reserve Requirements; and

(2) in accordance with Section 4 of the Bond Resolution, Refunding Securities in the total principal amount appearing in Exhibit I to this Sale Order, but not more than $350,000,000 in aggregate principal amount, which total principal amount is determined to be the amount necessary to refund the Bonds to be Refunded, plus such amounts as are necessary to pay matters ancillary thereto, such as Costs of Issuance and meeting Reserve Requirements.

(b) *Disposition of Proceeds.*

(1) Proceeds of Project Securities shall be disposed of as set forth under the respective captions *"Disposition of Proceeds - New Money Purposes"* on certain of the signature pages hereto.

(2) Proceeds of Refunding Securities shall be disposed of as set forth under the respective captions *"Disposition of Proceeds - Refunding Purposes"* on certain of the signature pages hereto.

4. **Terms of Series 2003 Securities.**

The terms of the Series 2003 Securities shall be as provided in this Sale Order.

5. **Appointments.**

(a) Reference is made to the appointment in the Bond Resolution of U.S. Bank National Association as Transfer Agent for the Series 2003 Securities. As provided in the Bond Resolution, its acceptance of the duties of Transfer Agent shall be evidenced by a document filed with the Finance Director concurrently with the delivery of the Series 2003 Securities.

3

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16:07:2013   12:44

(b)     The following appointments are made with respect to the Variable Rate Securities:

    (1)     As Tender Agent ...................U.S. Bank National Association

    (2)     As Remarketing Agent...........UBS PaineWebber Inc.

Each of the foregoing shall evidence its acceptance of the duties of office to which it was appointed by executing the VRM Supplement.

**6.     Reserve Requirements; Reserve Accounts.**

(a)     *Reserve Requirements.* The Reserve Requirements for the Series 2003 Securities are as provided in the signature pages hereto.

(b)     *Reserve Accounts.*  No separate Bond Reserve Account is established for the Series 2003 Securities which are issued as Senior Lien Bonds.

**7.     Limits.**

(a)     *Limitation on Amounts Coming Due in Any One Year.*

It is determined that, as of the date of the execution of each signature page hereto, the aggregate amount of interest and principal becoming due in any Fiscal Year (whether at maturity or by reason of Mandatory Redemption Requirements) on the outstanding Securities and the Series 2003 Securities described on such signature page and on each signature page executed before such signature page does not exceed the amount permitted by Sections 22, 36 and 37 of the Bond Ordinance.

(b)     *Sale and Interest Rate Limitation.*

It is determined that, as of the date of the execution of each signature page hereto,

    (1)     the Series 2003 Securities described on such signature page bear interest at a rate or rates and are being sold at an aggregate net discount (distinct from any compensation to be paid to the purchasers in the form of a discount or any other costs of issuance of such Series 2003 Securities) of not greater than 10%; and

    (2)     the true interest cost (*"TIC"*) of the Fixed Rate Securities is not greater than 8.00% per annum and the maximum rate per annum on any Variable Rate Securities does not exceed 12.00% per annum.

**8.     Continuing Disclosure.**

(a)     Pursuant to Section 15 of the Bond Resolution, those Series 2003 Securities for which an exemption does not exist under the Rule shall be subject to the Continuing Disclosure Agreement.

[2.2.5.2.9] [Index and Closing Papers (Complete) Series 2004 A 101,435,000.pdf] [Page 71 of 580]

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Doctober 18:07:2013 12:44

(b)     Those Series 2003 Securities for which an exemption exists under the Rule may nonetheless be made subject to the Continuing Disclosure Agreement and shall be so subject when such an exemption no longer exists.

9.     **Establishment of Subaccount and Accounts.**

(a)     *Construction Fund Subaccount.*

(1)     A subaccount is created in the Construction Fund established by the Bond Ordinance and designated the "Construction Fund Series 2003" to be maintained as a separate depositary account by the present depositary of the Construction Fund.

(2)     The amount, if any, identified as "Capitalized Expenses" in the Addendum to Signature Pages for Modal Securities shall be segregated in the Construction Fund Series 2003. An amount equal to the quarterly fee for the Liquidity Facility and the quarterly fees of the Remarketing Agent shall be transferred from the segregated Capitalized Expenses to the Operation and Maintenance Fund as of the first day of the month in which such fee becomes due. The segregated amount of Capitalized Expenses shall be applied to no other purpose.

(3)     The Trustee is authorized and directed to establish the following two accounts:

(i)     "Construction Fund Series 2003, Cost of Issuance Subaccount" - into which shall be deposited the portion of the proceeds of the Series 2003 Securities designated as "Cost of Issuance" and applied as provided in the Bond Ordinance; and

(ii)     "Construction Fund Series 2003, Capitalized Expense Subaccount" - into which shall be deposited the portion of the proceeds of the Series 2003 Securities designated as "Capitalized Expenses" and applied as provided above.

(b)     *Sinking Fund Accounts.*

Pursuant to Section 11 of the Bond Resolution, there is established in the Bond Interest and Redemption Fund an account designated "Series 2003 Term Bond Sinking Fund Account" for Series 2003 Securities designated as Senior Lien Term Bonds.

10.     **Refunding Determination and Instructions.**

(a)     It is determined that upon the issuance of the Refunding Securities, the proceeds of the Refunding Securities (exclusive of accrued interest) are sufficient to provide the Escrow Deposit after making provision for Issuance Costs and the Reserve Requirement to be provided from such proceeds; and, it is further determined that the benefits to the City from the refunding shall be increased by depositing amounts, if any, released from the Bond Reserve Account in the Escrow Fund as part of the Escrow Deposit in order to refund the maximum amount of Senior Lien Bonds.

5

CONFIDENTIAL INFORMATION
CSchoch@winston.com

(b)     The Transfer Agent is hereby given irrevocable instructions to call the Bonds to be Refunded for redemption on their first available call dates or such other date as is permitted by the Escrow Agreement to be entered into for the refunding of the Bonds to be Refunded at the applicable redemption prices.

(c)     U.S. Bank National Association is hereby appointed as the Escrow Agent and shall evidence its acceptance of such appointment by executing the Escrow Agreement.

**11.     Sale of Series 2003 Securities.**

The Series 2003 Securities shall be sold as provided in the signature pages to this Sale Order, and, pursuant to Section 16 of the Bond Resolution, it is determined that the aggregate compensation to the purchasers named therein is not more than 1% of the original principal amount of each Type of Securities.

**12.     Financial Facilities.**

(a)     The commitments from the following providers of Financial Facilities are accepted with respect to the Series 2003 Securities set forth opposite the respective names of such providers. Each such Financial Facility is determined to be in the best interest of the City and the System.

| Financial Facility Provider | Applicable Series 2003 Securities |
|---|---|
| Financial Security Assurance Inc. (Bond Insurance) | Series 2003(A) |
| Financial Security Assurance Inc. (Bond Insurance) | Series 2003(B) |
| Dexia Credit Local, acting through its New York Agency (Liquidity Facility) | Series 2003(B) |

(b)     The City shall enter into a Financial Facility Agreement with each of the foregoing, and this Sale Order shall be supplemented to the extent required by any of the foregoing.

**13.     Interest Rate Exchange Agreement.**

(a)     It is hereby determined to be cost effective to manage debt service on the below identified Series 2003 Securities by entering into an Interest Rate Exchange Agreement with the denoted counterparty.

6

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit 10.07.2016 12:44

| Interest Rate Exchange Agreement Counterparty | Applicable Series 2003 Securities |
|---|---|
| UBS AG | Series 2003(B) |

(b)     Having been approved by the City Council in the Bond Resolution, such Interest Rate Exchange Agreement constitutes an Approved Interest Rate Exchange Agreement in accordance with Section 9 of the Bond Resolution. The Finance Director finds that the Approved Interest Rate Exchange Agreement, as executed, complies with the City's Swap Management Plan and Debt Management Plan.

(c)     In connection with the Interest Rate Exchange Agreement, it is determined to be in the best interest of the City to insure against liability under certain circumstances for both scheduled payments and termination payments; accordingly, the following commitment for an insurance policy ("*Swap Insurance*") is accepted:

| Provider | Insuring Swap For |
|---|---|
| Financial Security Assurance Inc. | Series 2003(B) |

(d)     As stated in the Approved Interest Rate Exchange Agreement, the City and the Counterparty have retained the right to amend the confirmation at a later date.  Such amendment may be approved by an order of the Finance Director supplemental to this Sale Order without further action of the City Council.

**14.     Reserve Account Valuation.**

The Reserve Accounts shall continue to be valued as provided in the Bond Ordinance as in effect on the Closing Date (which includes amendments through Ordinance 18-01 effective as of the Closing Date) notwithstanding any amendment of the Bond Ordinance (to the extent permitted thereby) that may hereafter become effective.

**15.     Financial Arrangements.**

Exhibit II sets forth a schedule of financial arrangements authorized by this Sale Order and the location in this Sale Order of the agreements required by the providers of such financial arrangements.

**16.     Authorization of U.S. Bank National Association.**

(a)     U.S. Bank National Association, in any of its respective capacities under the Bond Resolution and this Sale Order, is authorized and directed to enter into such of the Financial Facility Agreements as require it to be a party to the same in such capacity.

(b)     U.S. Bank National Association, in any of its respective capacities under the Bond Resolution and this Sale Order, is further authorized and directed to execute such other

7

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16:07:2013 12:44

documents, instruments and agreements as may be deemed necessary or appropriate to consummate the transactions contemplated by the Bond Resolution and this Sale Order.

*[Signature Pages Follow]*

8

CONFIDENTIAL INFORMATION
@winston.com
Detroit/16:07:2013 12:44

**Signature Pages for Fixed Rate Securities**

1. **Reserve Requirements.**

   (a)    Upon the issuance and delivery of the Fixed Rate Securities, the Reserve Requirements, calculated in accordance with the Bond Ordinance, are:

   Bond Reserve Account Requirement[*]

   | | |
   |---|---|
   | Before issuance of Series 2003 Securities | $ 78,952,227 |
   | Upon issuance of Series 2003 Securities | $130,691,935 |
   | Increase to be funded | $ 51,739,708 |

   [*] For all Senior Lien Bonds

   (b)    The increase in the Bond Reserve Account Requirement shall be funded by a debt service reserve insurance policy in the amount of the increase in the Bond Reserve Account Requirement (subject to an increase at the times and amounts described therein) to be issued by Financial Security Assurance Inc., and the City shall enter into an Insurance Agreement with respect thereto having customary terms.

2. **Sale of Fixed Rate Securities.**

   The Fixed Rate Securities shall be sold to UBS PaineWebber Inc., acting on behalf of themselves and the other underwriters named in the Bond Purchase Agreement, dated as of the date of these Signature Pages, for the below stated purchase price.

   | | |
   |---|---|
   | Purchase Price | $ 640,441,485.86 |
   | Accrued Interest | 563,145.73 |
   | Total Purchase Price | $ 641,004,631.59 |

Fixed Rate Signature Page 1

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16:07:2013  12:44

3. **Disposition of Proceeds.**

*New Money and Refunding Purposes*

| Disposition | New Money Amount | Refunding Amount |
|---|---|---|
| Accrued Interest Deposit to Interest and Redemption Fund | $ 377,430.38 | $ 185,715.35 |
| Capitalized Interest Deposit to Interest and Redemption Fund | 21,513,531.37 | 0.00 |
| Bond Insurance Premium | 2,321,355.02 | 853,881.98 |
| Reserve Account Surety Bond Premium | 945,104.77 | 0.00 |
| Deposit to Construction Fund Series 2003 Subaccount | | |
| Costs of Issuance | 691,432.96 | 314,893.14 |
| Project Costs | 392,901,286.62 | 0.00 |
| Escrow Deposit | 0.00 | 220,900,000.00 |
| Total Purchase Price | $418,750,141.12 | $222,254,490.47 |

*[Signature Appears on Fixed Rate Signature Page S-1]*

Fixed Rate Signature Page 2

CONFIDENTIAL INFORMATION
crawerson@winston.com
Detroit/16:07:2013  12:44

*[Page Containing Signature of Finance Director to Signature Pages with Respect to Fixed Rate Securities]*

The Schedule of Terms for Fixed Rate Securities appended hereto are part of the Fixed Rate Signature Pages.

Sean K. Werdlow
Finance Director
City of Detroit

May 14, 2003

Fixed Rate Signature Page S-1

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16.07.2013  12:44

Schedule of Terms
for
Fixed Rate Securities

1.  **Interest Payment Dates, Record Dates and Day Count Convention.**

(a)  Interest on the Fixed Rate Securities is payable July 1, 2003, and semi-annually thereafter on each January 1 and July 1.

(b)  The record dates for Fixed Rate Securities are the 15th day of the calendar month preceding each interest payment date.

(c)  The Day Count Convention for Fixed Rate Securities is 12 30-day months in a year of 360 days.

2.  **Senior Lien Bonds.**

(a)  *Principal Amount.*  $599,380,000

(b)  *Priority.*  Senior Lien Bonds.

(c)  *Title.*  City of Detroit Sewage Disposal System Senior Lien Revenue and Revenue Refunding Bonds, Series 2003(A).

(d)  *Maturities and Interest Rates.*

The Series 2003(A) Securities shall mature on the dates and in the principal amounts and shall bear interest at the respective interest rates per annum as set forth below:

| Maturity (July 1) | Amount | Interest Rate | Yield | | Maturity (July 1) | Amount | Interest Rate | Yield | |
|---|---|---|---|---|---|---|---|---|---|
| 7/1/03 | 3,485,000 | 3.000% | 1.040% | | 7/1/16 | 12,535,000 | 5.500% | 3.710% | * |
| 7/1/04 | 21,560,000 | 3.000% | 1.095% | | 7/1/16 | 190,000 | 3.700% | 3.740% | |
| 7/1/05 | 6,495,000 | 4.000% | 1.330% | | 7/1/16 | 12,260,000 | 5.000% | 3.740% | † |
| 7/1/05 | 2,600,000 | 2.000% | 1.330% | | 7/1/17 | 13,215,000 | 5.500% | 3.790% | * |
| 7/1/06 | 3,315,000 | 2.000% | 1.600% | | 7/1/17 | 250,000 | 3.800% | 3.830% | |
| 7/1/07 | 1,670,000 | 4.000% | 2.030% | | 7/1/17 | 12,835,000 | 5.000% | 3.830% | † |
| 7/1/07 | 4,820,000 | 2.250% | 2.030% | | 7/1/18 | 13,950,000 | 5.500% | 3.870% | * |
| 7/1/08 | 18,165,000 | 5.000% | 2.330% | | 7/1/18 | 535,000 | 4.000% | 3.920% | † |
| 7/1/08 | 3,790,000 | 2.500% | 2.330% | | 7/1/18 | 13,180,000 | 5.000% | 3.920% | † |
| 7/1/09 | 14,180,000 | 5.000% | 2.620% | | 7/1/19 | 300,000 | 4.000% | 3.990% | † |
| 7/1/09 | 4,225,000 | 3.000% | 2.620% | | 7/1/19 | 13,585,000 | 5.000% | 3.990% | † |
| 7/1/10 | 18,510,000 | 5.000% | 2.940% | | 7/1/20 | 50,000 | 4.000% | 4.070% | |
| 7/1/10 | 1,615,000 | 3.000% | 2.940% | | 7/1/20 | 7,465,000 | 5.000% | 4.070% | † |
| 7/1/11 | 23,120,000 | 5.000% | 3.170% | | 7/1/21 | 7,720,000 | 5.000% | 4.160% | † |
| 7/1/11 | 1,720,000 | 3.200% | 3.170% | | 7/1/22 | 25,000 | 4.250% | 4.230% | |
| 7/1/12 | 12,300,000 | 5.000% | 3.290% | | 7/1/22 | 10,870,000 | 5.000% | 4.230% | † |
| 7/1/12 | 1,375,000 | 3.300% | 3.290% | | 7/1/23 | 1,000,000 | 4.300% | 4.310% | |
| 7/1/13 | 13,540,000 | 5.000% | 3.410% | | 7/1/23 | 7,935,000 | 5.000% | 4.310% | † |
| 7/1/13 | 1,515,000 | 3.400% | 3.410% | | 7/1/24 | 18,215,000 | 5.000% | 4.380% | † |
| 7/1/14 | 3,815,000 | 3.500% | 3.560% | * | 7/1/25 | 19,320,000 | 5.000% | 4.420% | † |
| 7/1/14 | 11,440,000 | 5.000% | 3.560% | † | 7/1/26 | 31,930,000 | 5.000% | 4.450% | † |
| 7/1/15 | 11,880,000 | 5.500% | 3.630% | * | 7/1/28 | 69,070,000 | 5.000% | 4.500% | † |
| 7/1/15 | 275,000 | 3.650% | 3.650% | | 7/1/32 | 135,740,000 | 5.000% | 4.530% | † |
| 7/1/15 | 11,795,000 | 5.000% | 3.650% | † | | | | | |

* Non-callable
† Yield to July 1, 2013 call date

Fixed Rate Schedule Page 1

CONFIDENTIAL INFORMATION
CSchoch@winston.com

    (e)    *Senior Lien Term Bonds.*

    The Series 2003(A) Securities maturing on July 1 2028 and July 1, 2032, are Term Securities subject to redemption on the dates and in the amounts of respective Sinking Fund Installments set forth below except that the last such date shall not be a redemption date but shall instead be the maturity date.

$69,070,000 2003(A) Bonds
Maturing July 1, 2028

| July 1 of Years | Sinking Fund Installment |
|---|---|
| 2027 | 33,750,000 |
| 2028 | 35,320,000 (maturity) |

$135,740,000 2003(A) Bonds
Maturing July 1, 2032

| July 1 of Years | Sinking Fund Installment |
|---|---|
| 2029 | 37,365,000 |
| 2030 | 39,185,000 |
| 2031 | 39,955,000 |
| 2032 | 19,235,000 (maturity) |

    (f)    *Optional Redemption.*

    The Series 2003(A) Securities maturing on and after July 1, 2014, except for those Series 2003(A) Securities designated as non-callable in 2(d) above, are subject to redemption at the option of the City, as a whole or in part on any date on and after July 1, 2013, at a Redemption Price of 100% of the principal amount thereof plus interest to the Redemption Date.

**3.    Second Lien Bonds.**

    None of the Series 2003(A) Securities are Second Lien Bonds.

CONFIDENTIAL INFORMATION
@winston.com
Detroit/16:07:2013 12:44

*[Signature Pages to Sale Order of the Finance Director of the City of Detroit with respect to City of Detroit Sewage Disposal System Revenue and Revenue Refunding Bonds, Series 2003 relating to the below mentioned 2003 Securities.]*

**Signature Pages for Modal Securities**

1.  **Reserve Requirements.**

    (a)    Bond Reserve Account Requirement[*]

    | | |
    |---|---|
    | Before issuance of Series 2003 Securities | $ 78,952,227 |
    | Upon issuance of Series 2003 Securities | $130,691,935 |
    | Increase to be funded | $ 51,739,708 |

    [*] For all Senior Lien Bonds

    (b)    The increase in the Bond Reserve Account Requirement shall be funded by a debt service reserve insurance policy in the amount of the increase in the Bond Reserve Account Requirement (subject to an increase at the times and amounts described therein) to be issued by Financial Security Assurance Inc., and the City shall enter into an Insurance Agreement with respect thereto having customary terms.

2.  **Initial Mode.**

    The Series 2003(B) Securities shall be issued as Variable Rate Securities in the Daily Mode, bearing interest at the rate set forth in a certificate of the Finance Director and delivered at the Closing.

3.  **Sale of Modal Securities.**

    The Series 2003(B) Securities shall be sold to UBS PaineWebber Inc., acting on behalf of themselves and the other underwriters named in the Bond Purchase Agreement, dated as of the date of these Signature Pages, for the below stated purchase price.

    Purchase Price                    $149,571,107.83

Modal Securities Signature Page 1

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16:07:2013  12:44

4.    **Disposition of Proceeds.**

*New Money Purposes*

| Disposition | | Amount |
|---|---|---|
| Capitalized Interest Deposit to Interest and Redemption Fund | | $ 6,877,762.50 |
| Bond and Swap Insurance Premium | | 953,943.21 |
| Upfront Liquidity Facility Fee | | 25,000.00 |
| Swap Insurance | | 29,000.00 |
| Debt Service Reserve Surety Policy Premium | | 354,414.29 |
| Deposits to Construction Fund Series 2003 Subaccount | | 141,330,987.83 |
| Project Costs | $140,461,490.05 | |
| Capitalized Expenses | 492,759.56 | |
| Costs of Issuance | 376,738.22 | |
| Total Purchase Price | | $149,571,107.83 |

*[Signature Appears on Model Securities Signature Page S-1]*

Modal Securities Signature Page 2

CONFIDENTIAL INFORMATION
Goodrich@winston.com
Detroit/16.07.2013  12.44

*[Page Containing Signature of Finance Director to Signature Pages with Respect to Variable Rate Securities]*

The Schedule of Terms for Modal Securities appended hereto are part of the Modal Signature Pages.

_____
Sean K. Werdlow
Finance Director
City of Detroit

May 22, 2003

Modal Securities Signature Page S-1

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16.07.2013  12:44

**Schedule of Terms**
**for**
**Modal Securities**

1.    **Interest Payment Dates, Record Dates and Day Count Convention.**

    (a)    Interest on Modal Securities is payable on the Interest Payment Dates determined in accordance with the VRM Supplement.

    (b)    The record dates for the Modal Securities are as provided in the VRM Supplement.

    (c)    The Day Count Convention for Modal Securities is as provided in the VRM Supplement.

2.    **Terms of Modal Securities.**

    (a)    *Principal Amount.*    $150,000,000

    (b)    *Priority.*    Senior Lien Bonds.

    (c)    *Titles as Variable Rate Securities.*

City of Detroit Sewage Disposal System Senior Lien Revenue Bonds (Variable Rate Demand), Series 2003(B).

    (d)    *Maturity and Interest Rate.*

Subject to change as provided in the VRM Supplement, the Series 2003(B) Securities shall mature on July 1, 2033, in the principal amount of $150,000,000 and shall bear interest at the rates as provided in the VRM Supplement.

Modal Securities Schedule Page 1

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16-07-2013 12:44

(e)    *Modal Term Securities.*

Subject to change as provided in the VRM Supplement, the Modal Securities are Term Securities subject to redemption on the dates and in the amounts of respective Sinking Fund Installments set forth below except that the last such date shall not be a redemption date but shall instead be the maturity date.

| July 1 | Sinking Fund Installments |
|--------|---------------------------|
| 2032   | $  24,500,000             |
| 2033   | $ 125,500,000 (maturity)  |

G:\D\Detroit\2003 Sewer Revenue\SeriesBSigPages-f.doc

Modal Securities Schedule Page 2

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16.07.2013  12:44

Exhibit I

## Allocation of Principal Amounts

| Series | Project Costs[*] | Amount Necessary to Refund Bonds to be Refunded[*] |
|---|---|---|
| (Fixed Rate) Series 2003(A) | $392,901,286.62 | $220,900,000.00 |
| (Variable Rate Demand) Series 2003(B) | 140,461,490.05 | 0.00 |
| **Total** | $533,362,776.67 | $220,900,000.00 |

---

[*] Exclusive of such amounts as are necessary to pay matters ancillary thereto, such as Costs of Issuance, Capitalized Interest, Capitalized Expenses and meeting Reserve Requirements.

Exhibit I Page 1

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16.07.2013    12:44

Exhibit II

**Schedule of Financial Arrangements**
**and**
**Sale Order Provisions**

| Provider | Financial Arrangement | Provisions in Sale Order |
|---|---|---|
| **Financial Facilities** | | |
| Financial Security Assurance Inc. | Bond Insurance Policy, Series 2003(A) | FSA Supplement, Part 1 |
| Financial Security Assurance Inc. | Bond Insurance Policy, Series 2003(B) | FSA Supplement, Part 1 |
| Dexia Credit Local, acting through its New York Agency | Standby Bond Purchase Agreement, Series 2003(B) | None, separate agreement |
| **Reserve Account Surety Policies** | | |
| Financial Security Assurance Inc. | Debt Service Reserve Account Policy, Series 2003(A) and 2003(B) | FSA Supplement, Part 2 (Also separate Insurance Agreement) |

G:\D\Detroit\2003 Sewer Revenue\ComSaleOrder-f.doc

Exhibit II Page 1

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16-07-2013    12:44

**General Terms of 2003 Securities Supplement**

This **General Terms of 2003 Securities Supplement** is a supplement to the **Composite Sale Order with respect to Series 2003 Securities** executed by the Finance Director of the City of Detroit and constitutes a part of the Sale Order.

## Article I.
## Definitions

**Section 1.01  Definitions.**

In addition to the terms defined in or pursuant to the Sale Order, the following terms shall have the following respective meanings for all purposes of the Sale Order unless the context clearly otherwise requires:

*"Holder"* and *"Securityholder"* means, as to any particular Security, the Person in whose name such Security is registered on the books maintained for that purpose by the Registrar.

*"Paying Agent"* means, as to any particular Security, the Person by whom such Series 2003 Security is payable in respect of interest or principal (and premium, if any), as the case may be.

*"Principal Installment Date"* means any July 1.

*"Registrar"* means, as to any particular Security, the Person who maintains the Registry therefor pursuant to the Sale Order.

*"Registry"* means as to any particular Security, the books for the registration thereof maintained by the Registrar.

## Article II.
## General Terms

**Section 2.01  Numbers and Prefixes.**

Series 2003 Securities shall be numbered consecutively from "1" within each Type and prefixed with the letter "R."

**Section 2.02  Form, Title and Additional Designations.**

The Non-Provider Securities shall be in the form prescribed by the Bond Resolution, shall contain such terms as to interest, redemption, tender rights and conversion, as applicable, as are approved by the Finance Director and are consistent with the Bond Resolution and this Sale Order, and shall bear title, series designation and additional designations as provided in the respective signature pages to the Sale Order. Execution and delivery of Non-Provider Securities

6A

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16:07:2013 12:44

as provided in the Bond Resolution shall constitute approval by the Finance Director of the matters set forth therein.

Section 2.03   Dating.

Upon initial issuance, all Non-Provider Securities that are Fixed Rate Securities shall be dated as of May 15, 2003 and all that are Variable Rate Securities shall be dated as of the Closing Date.

Section 2.04   Execution.

Series 2003 Securities shall be executed as provided in Section 5(j) of the Bond Resolution.

Section 2.05   Maturities and Interest Rates.

Maturities and interest rates for each Type shall be as provided in the Schedule of Terms appended to the respective signature pages to the Sale Order.

Section 2.06   Interest.

Each Security shall bear interest from its date or from the most recent Interest Payment Date on which interest has been paid or duly provided for through the day before the next Interest Payment Date, and such interest shall be payable at the rate established for such Security in or pursuant to the Sale Order, calculated at the applicable Day Count Convention and payable as provided in the Bond Resolution except that interest on Modal Securities shall be payable as provided in the VRM Supplement.

Section 2.07   Manner and Places of Payment.

(a)   Principal. Principal and premium, if any, of Series 2003 Securities is payable as provided in Section 5(c) of the Bond Resolution and in the case of Variable Rate Securities is also payable at the office of the Tender Agent upon presentation and surrender thereof.

(b)   Interest. Interest on Series 2003 Securities is payable as provided in Section 5(d) of the Bond Resolution and in the case of Variable Rate Securities is also payable as provided in the VRM Supplement.

(c)   Defeasance. For purposes of Section 22 of the Bond Ordinance as it relates to the defeasance of the Series 2003 Securities, and subject to any requirements of FSA as provided in the FSA Supplement, "Permitted Investments" shall include only direct obligations of, or obligations the principal and interest of which are unconditionally guaranteed by, the United States of America which otherwise meet the requirements of Act 94 and of the Bond Ordinance.

Section 2.08   Initial Issuance.

The Series 2003 Securities shall be issued in certificated form, fully registered in the name of the Securities Depository or its nominee and shall be initially issued in the fewest

A-2

CONFIDENTIAL INFORMATION

CSchoch@winston.com

Detroit/16.07.2013  12:44

certificates for each CUSIP number as are possible under the regulations of the Securities Depository governing the maximum denomination of a single certificate.

**Section 2.09  Authentication after Initial Issuance.**

After initial issuance, Series 2003 Securities shall be authenticated as follows:

(1)  All Fixed Rate Securities shall be authenticated by the Transfer Agent.

(2)  Modal Securities:

(i)  All Variable Rate Securities issued in transfer, exchange, redemption or purchase, and Modal Fixed Rate Securities issued on a Mode Change Date, shall be authenticated by the Tender Agent.

(ii)  All Modal Fixed Rate Securities issued in transfer, exchange, redemption or purchase shall be authenticated by the Transfer Agent.

(3)  All Provider Securities in certificated form shall be authenticated by the Tender Agent.

**Section 2.10  Provider Securities.**

The terms of Provider Securities shall be as provided in the VRM Supplement.

**Section 2.11  Term Securities and Sinking Fund Installment Redemption.**

(a)  Series 2003 Securities identified in the Schedule of Terms appended to the respective signature pages to the Sale Order as Term Securities are subject to redemption from Sinking Fund Installments as set forth therein. Sinking Fund Installments for Variable Rate Securities may be changed as provided in the VRM Supplement.

(b)  Term Securities subject to Sinking Fund Installments are subject to redemption upon notice given as provided in this Supplement in part on each Principal Installment Date in the amount of the Sinking Fund Installment for such Principal Installment Date after giving effect to any amounts credited to such Sinking Fund Installment as a result of the redemption or purchase of Term Securities of such maturity pursuant to Section 4.04 of this Supplement at a Redemption Price of 100% of the principal amount thereof to be redeemed plus interest accrued to the Redemption Date.

**Section 2.12  Optional Redemption.**

(a)  <u>Fixed Rate Securities</u>:  As provided in the signature pages for the Fixed Rate Securities.

(b)  <u>Modal Securities</u>:  As provided in the VRM Supplement.

A-3

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16.07.2013 12:44

## Article III.
### Exchange and New Certificates

**Section 3.01   Exchange.**

Reference is made to Section 5(f) of the Bond Resolution for provisions relating to the exchange of Series 2003 Securities; provided that references therein to "Transfer Agent" shall instead refer to "Tender Agent" in the case of Variable Rate Securities.

**Section 3.02   New Certificates.**

If a certificated Series 2003 Security bearing a particular CUSIP number (a *"Predecessor Security"*) is no longer fungible with all other certificated Series 2003 Securities bearing the same CUSIP number, then a new Series 2003 Security in the appropriate certificated form shall be executed by the City, authenticated by the Transfer Agent or Tender Agent, as the case may be, and delivered in exchange for the Predecessor Security if and when required by the Securities Depository.

## Article IV.
### Redemption

**Section 4.01   Selection of Series 2003 Securities for Redemption.**

(a)   Unless required to satisfy maturing Sinking Fund Installments, maturities of Series 2003 Securities to be selected for redemption shall be selected for redemption in such manner as the Finance Director deems appropriate, and Series 2003 Securities to be selected for redemption within a maturity when less than the maturity is to be called for redemption shall be selected by lot.

(b)   Of the Series 2003 Securities to be selected for redemption, such Series 2003 Securities shall be selected in multiples of the minimum Authorized Denomination thereof, and Series 2003 Securities of denominations of more than such minimum Authorized Denomination shall be treated as representing the number of Series 2003 Securities obtained by dividing the denomination of the Series 2003 Security by such minimum Authorized Denomination, and such Series 2003 Securities may be selected for redemption in part.

**Section 4.02   Notice of Redemption.**

(a)   When Series 2003 Securities, or portions thereof, are to be redeemed, the Registrar for such Series 2003 Securities shall in its own name or in the name of the City, give notice by first class mail not less than 30 days prior to the date fixed for redemption to the registered owners of the Series 2003 Securities or portions thereof to be redeemed at their addresses set forth in the Registry.

(b)   Each such notice shall specify the complete name and the CUSIP numbers of the Series 2003 Securities to be redeemed, the redemption date and the place or places where amounts due upon such redemption will be payable (including the name, address and telephone number of a contact person at such places) and, if less than all the Series 2003 Securities are to

A-4

CONFIDENTIAL INFORMATION

CSchoch@winston.com

be redeemed, the letters and numbers or other distinguishing marks of such Series 2003 Securities to be redeemed, and such notice shall also specify the respective portions of the principal amounts thereof to be redeemed. Such notice shall further state that on such date there shall become due and payable upon each Series 2003 Security, or a portion thereof to be redeemed, the redemption price thereof, together with interest accrued to the redemption date, and that from and after such date interest thereon shall cease to accrue and be payable.

(c)     A copy of each notice shall be sent by the Registrar to (i) at least two of the national information services that disseminate redemption notices or redemption notice information (so long as two such services exist), and (ii) to each Provider of a Financial Facility, if any, in respect of such Series 2003 Securities except in the case of redemption by reason of Sinking Fund Installments.

### Section 4.03     Payment of Series 2003 Securities Called for Redemption.

(a)     Notice having been given in the manner herein provided, the Series 2003 Securities so called for redemption shall become due and payable on the date fixed for the redemption thereof at the applicable Redemption Price, plus interest accrued to the date of redemption and shall be paid as provided in Section 2.07 hereof.

(b)     If, on the Redemption Date for any Series 2003 Securities, moneys for the payment of the Redemption Price thereof, plus interest to accrue to the Redemption Date, are held by the Paying Agent therefor so as to be available therefor on said date, and if notice of redemption shall have been given as aforesaid, then, from and after such Redemption Date such Series 2003 Securities so called for redemption shall cease to bear interest; otherwise, such Series 2003 Securities shall continue to bear interest until paid at the same rate as they would have borne had they not been called for redemption.

### Section 4.04     Satisfaction of Mandatory Redemption Requirements.

Reference is made to Section 11(b) of the Bond Resolution for provisions relating to the satisfaction of Mandatory Redemption Requirements. References in the Bond Resolution to "Mandatory Redemption Requirements" refer to Sinking Fund Installments.

### Section 4.05     Redemption of Less than all of a Security.

If there shall be called for redemption less than all of a Series 2003 Security in a denomination greater than minimum Authorized Denomination thereof, the City shall execute (if not otherwise executed) and the Registrar therefor shall authenticate and deliver upon surrender of such Series 2003 Security, without charge to such Holder thereof, a Series 2003 Security or Series 2003 Securities in any Authorized Denomination specified by such Holder not in excess of the aggregate principal of the unredeemed portion of such Series 2003 Security of the same tenor bearing interest at the same rate and maturing on the same date in the amount of the unredeemed portion of the Series 2003 Security so surrendered.

A-5

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16:07:2013 12:44

**Section 4.06   Redemption of Provider Bonds.**

The foregoing provisions of this Article IV are subject in their entirety to such qualifications relating to redemption, selection for redemption, notice of redemption or otherwise for Provider Bonds as may be contained in the Provider Bonds and/or in the VRM Supplement.

Article V.
Securities Depository and Financial Facilities

**Section 5.01   Concerning the Securities Depository.**

(a)     Reference is made to Section 7 of the Bond Resolution for provisions concerning the Securities Depository.

(b)     Section 7 is hereby modified in order to conform to current municipal finance practices:

(1)     All references therein to the "Transfer Agent" shall include the Tender Agent to the extent otherwise applicable.

(2)     All references therein to a "representation letter" shall, in the absence of a representation letter in accordance with current procedures of the Securities Depository, refer to the current operational procedures between the Securities Depository and the Transfer Agent and, if applicable, the Tender Agent.

(d)     All provisions of Section 7 as above modified shall govern to the extent of any conflict with other provisions of the Sale Order except as may be otherwise required by a Financial Facilities Agreement.

**Section 5.02   Financial Facility Agreements.**

So long as any Financial Facility entered into pursuant to the Sale Order is in effect, and the obligor thereunder has not failed to comply with its payment obligations, the provisions thereof shall govern to the extent of any conflict with the Sale Order.

*[End of General Terms of 2003 Securities Supplement]*

G:\D\Detroit\2003 Sewer Revenue\GeneralTermsSup-f.doc

A-6

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16:07:2013  12:44

FSA SUPPLEMENT

### Part 1 – Bond Insurance Provisions

1. **Applicability.**

Part 1 of this Supplement shall be in effect for only so long as Financial Security Assurance Inc., a New York stock insurance company ("FSA"), or any successor thereto, is the insurer of the Series 2003 Securities and has not failed to comply with its payment obligations under its municipal bond insurance policies securing the Series 2003 Securities (together, the "Bond Insurance Policy"). For so long as Part 1 of this Supplement is in effect, it shall be applicable in respect of the Series 2003 Securities notwithstanding anything to the contrary elsewhere contained in the Sale Order, including the Related Documents.

2. **FSA Sole Holder for Purposes of Consents.**

2.01    FSA shall be deemed to be the sole holder of the Series 2003 Securities for the purpose of exercising any voting right or privilege or giving any consent or direction or taking any other action that the holders of the Series 2003 Securities are entitled to take pursuant to the Bond Ordinance or the Related Documents.

2.02    The rights of FSA to request, consent to or direct any action are rights granted to FSA in consideration of its issuance of the Bond Insurance Policy. Any exercise by FSA of such rights is merely an exercise of FSA's contractual rights and shall not be construed or deemed to be taken for the benefit or on behalf of the Securityholders nor does such action evidence any position of FSA, positive or negative, as to whether any Holder consent is required in addition to consent of FSA.

3. **Mode Change to Fixed Rate; Replacement of Liquidity Provider.**

3.01    The Finance Director shall take such steps as are necessary to change the mode of any outstanding Variable Rate Securities to the Modal Fixed Rate Mode or to replace the Liquidity Provider upon the request of FSA for any reason described below.

3.02    FSA may request the Finance Director shall take such steps as are necessary to change the mode of any outstanding Variable Rate Securities to the Modal Fixed Rate Mode for any of the following reasons and no other:

(a)    The Liquidity Provider for Variable Rate Securities (the "Liquidity Provider") failed to purchase Variable Rate Securities when obligated by its Liquidity Facility to do so.

(b)    An Immediate Termination Event occurs in respect of Variable Rate Securities or a mandatory tender event occurs that is either a Last Put Termination Event or the Occurrence of Expiry Date and Variable Rate Securities are subject to the mandatory tender by reason of such occurrence.

C-1

6C

CONFIDENTIAL INFORMATION

CSchoch@winston.com

Detroit_13-0039018_12.44

(c)     Provider Bonds insured by FSA are held by the Liquidity Provider for 45 days or more in any year commencing on a July 2 and ending on the following July 1 (a "Bond Year") or there are two failed remarketings in any Bond Year.

(d)     If Provider Bonds insured by FSA bear interest at the Legal Maximum Rate.

3.03     FSA may request the City to take all steps necessary to replace the Liquidity Provider with another qualifying Liquidity Provider if (i) the Liquidity Provider fails to purchase Variable Rate Securities when obligated to do so by its Liquidity Facility or (ii) the short term rating of the Liquidity Provider falls below A1 (or comparable rating) by a Rating Agency rating the Variable Rate Securities.

**4.     No Acceleration Except with Consent.**

The maturity of Series 2003 Securities shall not be accelerated without the consent of FSA.

**5.     Modifications, Amendments and Supplements.**

5.01     No modification, amendment or supplement to the Bond Ordinance requiring the consent of Holders of Series 2003 Securities, the Bond Resolution or the Sale Order as it relates to Series 2003 Securities (each a "Related Document") or that materially adversely affects its rights thereunder may become effective except upon obtaining the prior written consent of FSA.

5.02     Copies of any modification or amendment to the Bond Ordinance or any other Related Document shall be sent to Standard & Poor's Ratings Services, Moody's Investors Service, Inc. and Fitch, Inc. at least 10 days prior to the effective date thereof.

**6.     Defeasance.**

6.01     Only (i) cash, (ii) non-callable direct obligations of the United States of America ("Treasuries"), (iii) evidences of ownership of proportionate interests in future interest and principal payments on Treasuries held by a bank or trust company as custodian, under which the owner of the investment is the real party in interest and has the right to proceed directly and individually against the obligor and the underlying Treasuries are not available to any person claiming through the custodian or to whom the custodian may be obligated or (iv) pre-refunded municipal obligations rated "AAA" and "Aaa" by S&P and Moody's, respectively, or any combination thereof, shall be authorized to be used to effect defeasance of Series 2003 Securities unless FSA otherwise approves.

6.02     To accomplish defeasance of Series 2003 Securities, and except as otherwise agreed to in writing by FSA, the City shall cause to be delivered (i) a report of an independent firm of nationally recognized certified public accountants or such other accountant as shall be acceptable to FSA ("Accountant") verifying the sufficiency of the escrow established to pay the Series 2003 Securities to be defeased in full on the maturity or redemption date ("Verification"), (ii) an Escrow Deposit Agreement (which shall be acceptable in form and substance to FSA), and (iii) an opinion of Bond Counsel to the effect that the defeased Series 2003 Securities are no

C-2

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit 06.07.2013 12:44

longer "Outstanding" under the Bond Ordinance. Each Verification and defeasance opinion shall be acceptable in form and substance, and addressed, to the City and FSA.

6.03    In the event a forward purchase agreement will be employed in advance refunding Series 2003 Securities, such agreement shall be subject to the approval of FSA and shall be accompanied by such opinions of counsel as may be required by FSA.

6.04    FSA shall be provided with final drafts of the above-referenced documentation not less than five business days prior to the funding of the escrow.

**7.    Series 2003 Securities to Remain "Outstanding."**

To the extent not already provided elsewhere in the Related Documents, amounts paid by FSA under the Bond Insurance Policy shall not be deemed paid for purposes of the Bond Ordinance and shall remain Outstanding and continue to be due and owing until paid by the City in accordance with the Bond Ordinance.

**8.    Claims Upon the Bond Insurance Policy; Payments by and to FSA.**

8.01    *Notices Prior to Payment Date.*

(a)    If, on the third "Business Day" (being a day on which the City, the Transfer Agent and FSA are not authorized or required to remain closed) prior to the related scheduled interest payment date or principal payment date or the date to which bond maturity has been accelerated (a "Payment Date") there is not credited to the Interest and Redemption Fund moneys sufficient to pay the principal of and interest on the Series 2003 Securities due on such Payment Date, then the City shall give notice to FSA and to its designated agent (if any) (the "Bond Insurer's Fiscal Agent") by telephone or telecopy of the amount of such deficiency by 12:00 noon, New York, New York time, on such Business Day.

(b)    If, on the second Business Day prior to the related Payment Date, there continues to be a deficiency in the amount available to pay the principal of and interest on the Series 2003 Securities due on such Payment Date, then the City shall make a claim under the Bond Insurance Policy and give notice to FSA and the Bond Insurer's Fiscal Agent (if any) by telephone of the amount of such deficiency, and the allocation of such deficiency between the amount required to pay interest on the Series 2003 Securities and the amount required to pay principal of the Series 2003 Securities, confirmed in writing to FSA and the Bond Insurer's Fiscal Agent by 12:00 noon, New York, New York time, on such second Business Day by filling in the form of Notice of Claim and Certificate delivered with the Bond Insurance Policy.

8.02    *Registration and Replacement of Series 2003 Securities.*

(a)    In the event the claim to be made is for a mandatory sinking fund redemption installment, upon receipt of the moneys due, the Transfer Agent shall authenticate and deliver to affected Securityholders who surrender their Series 2003 Securities a new Series 2003(A) Security or Series 2003(B) Security, as applicable, in an

C-3

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16:07:2013  12:44

aggregate principal amount equal to the unredeemed portion of the Series 2003 Security surrendered.

(b)     The Transfer Agent shall designate any portion of payment of principal on Series 2003 Securities paid by FSA, whether by virtue of mandatory sinking fund redemption, maturity or other advancement of maturity, in the Registry as a reduction in the principal amount of Series 2003 Securities registered to the then current Securityholder, whether the Securities Depositary or its nominee or otherwise, and shall issue a replacement Series 2003(A) Security or Series 2003(B) Security, as applicable, to FSA, registered in the name of Financial Security Assurance Inc., in a principal amount equal to the amount of principal so paid (without regard to Authorized Denominations); provided that the Transfer Agent's failure to so designate any payment or issue any replacement Series 2003(A) Security or Series 2003(B) Security shall have no effect on the amount of principal or interest payable by the City on any Series 2003(A) Security or Series 2003(B) Security or the subrogation rights of FSA.

8.03     *Policy Payments Account.*

(a)     Upon payment of a claim under the Bond Insurance Policy the Transfer Agent shall establish a separate special purpose trust account for the benefit of Holders of Series 2003 Securities referred to herein as the "Policy Payments Account" and over which the Transfer Agent shall have exclusive control and sole right of withdrawal.

(b)     The Transfer Agent shall receive any amount paid under the Bond Insurance Policy in trust on behalf of Holders of Series 2003 Securities and shall deposit any such amount in the Policy Payments Account and distribute such amount only for purposes of making the payments for which a claim was made.

(c)     Amounts to be paid to Holders of Series 2003 Securities shall be disbursed by the Transfer Agent to Holders of Series 2003 Securities in the same manner as principal and interest payments are to be made under the Related Documents with respect to Fixed Rate Securities or Fixed Rate Modal Securities, as applicable, except that it shall not be necessary for such payments to be made by checks or wire transfers separate from the check or wire transfer used to pay debt service with other funds available to make such payments.

(d)     The Transfer Agent shall keep a complete and accurate record of all funds deposited by FSA into the Policy Payments Account and the allocation of such funds to payment of interest on and principal paid in respect of any Series 2003 Security.  FSA shall have the right to inspect such records at reasonable times upon reasonable notice to the Transfer Agent.

(e)     Funds held in the Policy Payments Account shall not be invested by the Transfer Agent and may not be applied to satisfy any costs, expenses or liabilities of the Transfer Agent.

(f)     Any funds remaining in the Policy Payments Account following a Bond payment date shall promptly be remitted to FSA.

CONFIDENTIAL INFORMATION

CSchoch@winston.com

Detroit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  13:44

8.04  *Interest on Amounts Advanced.*

To the extent permitted by law, in the event amounts paid under the Bond Insurance Policy are applied to claims for payment of principal of or interest on the Series 2003 Securities, interest on such principal of and interest on such Series 2003 Securities shall accrue and be payable from the date of such payment at the greater of (i) the per annum rate of interest, publicly announced from time to time by JPMorgan Chase Bank or its successor at its principal office in the City of New York, as its prime or base lending rate plus 3%, and (ii) the then applicable rate of interest on the Series 2003 Securities provided that in no event shall such rate exceed the maximum rate permissible under applicable usury or similar laws limiting interest rates. The obligation to pay such additional interest is a "Senior Obligation" under the Bond Ordinance, secured by a lien on Pledged Assets which is subordinate only to the lien in favor of the Holders of Senior Lien Bonds.

9.  **Subrogation.**

To the extent not already provided elsewhere in the Related Documents, FSA shall, to the extent it makes any payment of principal of or interest on Series 2003 Securities, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Bond Insurance Policy.

10.  **FSA Fee and Expenses.**

10.01  The City shall pay or reimburse FSA any and all charges, fees, costs and expenses which FSA may reasonably pay or incur in connection with:

(a)  the administration, enforcement, defense or preservation of any rights or security in any Related Document;

(b)  the pursuit of any remedies under the Bond Ordinance or any other Related Document or otherwise afforded by law or equity;

(c)  any amendment, waiver or other action with respect to, or related to, the Bond Ordinance or any other Related Document whether or not executed or completed;

(d)  the violation by the City of any law, rule or regulation, or any judgment, order or decree applicable to it with respect to Series 2003 Securities; or

(e)  any litigation or other dispute in connection with the Bond Ordinance or any other Related Document or the transactions contemplated thereby, other than amounts resulting from the failure of FSA to honor its obligations under the Bond Insurance Policy.

10.02  FSA reserves the right to charge a reasonable fee as a condition to executing any amendment, waiver or consent proposed in respect of the Bond Ordinance or any other Related Document.

CONFIDENTIAL INFORMATION

CSchoch@winston.com

Detroit16-07-2013  12:44

**11.    FSA's Right to Pay.**

FSA shall be entitled to pay principal of or interest on Series 2003 Securities that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the City (as such terms are defined in the Bond Insurance Policy) and any amounts due on Series 2003 Securities as a result of acceleration of the maturity thereof in accordance with the Bond Ordinance, whether or not FSA has received a Notice of Nonpayment (as such terms are defined in the Bond Insurance Policy) or a claim upon the Bond Insurance Policy.

**12.    Notices to FSA.**

12.01  The notice address of FSA is: Financial Security Assurance Inc., 350 Park Avenue, New York, New York 10022-6022, Attention: Managing Director -- Surveillance; Re: Policy Nos. 200899-N and 200927-N, Telephone: (212) 826-0100; Telecopier: (212) 339-3556.

12.02  In each case in which notice or other communication refers to an Event of Default, then a copy of such notice or other communication shall also be sent to the attention of General Counsel and shall be marked to indicate "URGENT MATERIAL ENCLOSED."

**13.    Reporting.**

FSA shall be provided with the following information:

13.01  The budget for each Fiscal Year promptly after adoption and the Audited Sewage Disposal Fund Financial Statements (as defined in the Master Continuing Disclosure Agreement with respect to the Insured Securities) concurrently with the filing thereof with each NRMSIR and the SID pursuant to such Master Continuing Disclosure Agreement;

13.02  Notice of any draw upon the Bond Reserve Account within two Business Days after knowledge thereof other than (i) withdrawals of amounts in excess of the Bond Reserve Requirement and (ii) withdrawals in connection with a refunding of Series 2003 Securities;

13.03  Notice of any default under the Bond Ordinance known to the City within five Business Days after knowledge thereof;

13.04  Prior notice of the defeasance, advance refunding or redemption of any of the Series 2003 Securities, including the principal amount, maturities and CUSIP numbers thereof;

13.05  Notice of the resignation or removal of the Transfer Agent and Registrar and the appointment of, and acceptance of duties by, any successor thereto;

13.06  Notice of the commencement of any proceeding by or against the City commenced under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding");

13.07  Notice of the making of any claim in connection with any Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment of principal of, or interest on, the Series 2003 Securities;

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit 10.07.2013 12:44

13.08 A full original transcript of all proceedings relating to the execution of any amendment or supplement to the Related Documents; and

13.09 All reports, notices and correspondence to be delivered under the terms of the Related Documents to Holders of Series 2003 Securities.

## 14. Further Assurance.

The City agrees to take such action as is necessary from time to time to perfect or to otherwise preserve the priority of the pledge of the Net Revenues pledged to Series 2003 Securities under applicable law.

## 15. Additional Senior Lien Bonds.

Notwithstanding satisfaction of other conditions to the issuance of additional Senior Lien Bonds contained in the Bond Ordinance, no such issuance may occur (unless otherwise permitted by FSA):

15.01 If any Event of Default (or any event which, once all notice or grace periods have passed, would constitute an Event of Default) have occurred and be continuing unless such default shall be cured upon such issuance.

15.02 Unless the Bond Reserve Account is fully funded at its requirement (including the new issue) upon the issuance of such additional Senior Lien Bonds.

## 16. Reserve Fund Surety Bonds.

Any debt service reserve policy or other credit instrument obtained for the Bond Reserve Account after the issuance of the Series 2003 Securities shall be acceptable to FSA.

## 17. Enforce Rights.

FSA is a third party beneficiary of the Related Documents for the purpose of enforcing the rights granted it thereunder.

### Part 2 – Reserve Account Surety Provisions

## 1. Applicability.

Part 2 of this Supplement shall be in effect for only so long as Financial Security Assurance Inc., a New York stock insurance company ("FSA"), or any successor thereto, has not failed to comply with its payment obligations under its municipal bond debt service reserve insurance policy securing the Series 2003 Securities and other Senior Lien Bonds (the "Reserve Policy"). For so long as Part 2 of this Supplement is in effect, it shall be applicable in respect of the Series 2003 Securities and other Senior Lien Bonds notwithstanding anything to the contrary

[2.2.5.2.9] [Index and Closing Papers (Complete) Series 2004 A 101,435,000.pdf] [Page 100 of 580]

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16:07:2013 12:44

elsewhere contained in the Sale Order, including the Related Documents (as defined in Section 5.01 of Part 1 of this Supplement).

## 2. Repayment of Draws and Other Amounts.

2.01    The City shall repay any draws under the Reserve Policy and pay all related reasonable expenses incurred by FSA. Interest shall accrue and be payable on such draws and expenses from the date of payment by FSA at the Late Payment Rate. "Late Payment Rate" means the lesser of (a) the greater of (i) the per annum rate of interest, publicly announced from time to time by JPMorgan Chase Bank at its principal office in the City of New York, as its prime or base lending rate ("Prime Rate") (any change in such Prime Rate to be effective on the date such change is announced by JPMorgan Chase Bank) plus 3%, and (ii) the then applicable highest rate of interest on the Series 2003 Securities and (b) the maximum rate permissible under applicable usury or similar laws limiting interest rates. The Late Payment Rate shall be computed on the basis of the actual number of days elapsed over a year of 360 days. In the event JPMorgan Chase Bank ceases to announce its Prime Rate publicly, Prime Rate shall be the publicly announced prime or base lending rate of such national bank as FSA shall specify.

2.02    Repayment of draws and payment of expenses and accrued interest thereon at the Late Payment Rate (collectively, "Policy Costs") shall commence in the first month following each draw, and each such monthly payment shall be in an amount at least equal to 1/12 of the aggregate of Policy Costs related to such draw.

2.03    Amounts in respect of Policy Costs paid to FSA shall be credited first to interest due, then to the expenses due and then to principal due. As and to the extent that payments are made to FSA on account of principal due, the overage under the Reserve Policy will be increased by a like amount, subject to the terms of the Reserve Policy.

2.04    All cash and investments in the Reserve Account established for the Series 2003 Securities (for purposes of this Supplement, the "Reserve Fund") shall be transferred to the debt service fund for payment of debt service on Series 2003 Securities and other Senior Lien Bonds before any drawing may be made on the Reserve Policy or any other credit facility credited to the Reserve Fund in lieu of cash ("Credit Facility"). Payment of any Policy Costs shall be made prior to replenishment of any such cash amounts. Draws on all Credit Facilities (including the Reserve Policy) on which there is available coverage shall be made on a pro-rata basis (calculated by reference to the coverage then available thereunder) after applying all available cash and investments in the Reserve Fund. Payment of Policy Costs and reimbursement of amounts with respect to other Credit Facilities shall be made on a pro-rata basis prior to replenishment of any cash drawn from the Reserve Fund.

2.05    The Related Documents shall not be discharged until all Policy Costs owing to FSA shall have been paid in full. The City's obligation to pay such amounts shall expressly survive payment in full of the Series 2003 Securities and other Senior Lien Bonds.

## 3. Notice of Claim or Shortfall.

3.01    The Transfer Agent shall ascertain the necessity for a claim upon the Reserve Policy and provide notice to FSA in accordance with the terms of the Reserve Policy at least five

[2.2.5.2.9] [Index and Closing Papers (Complete) Series 2004 A 101,435,000.pdf] [Page 101 of 580]

CONFIDENTIAL INFORMATION

CSchoch@winston.com

business days prior to each date upon which interest or principal is due on the Series 2003 Securities. The Transfer Agent shall give notice to FSA of any failure of the City to make timely payment in full of deposits to the debt service fund for the Series 2003 Securities or other Senior Lien Bonds within two business days of the date due.

**4.      Remedies of FSA.**

4.01    If the City shall fail to pay any Policy Costs in accordance with the requirements of 2.01 hereof, FSA shall be entitled to exercise any and all legal and equitable remedies available to it, including those provided under the Related Documents other than (i) acceleration of the maturity of the Series 2003 Securities or other Senior Lien Bonds or (ii) remedies which would adversely affect owners of the Series 2003 Securities and other Senior Lien Bonds.

**5.      Senior Obligations.**

The obligation of the City to pay Policy Costs is a "Senior Obligation" under the Bond Ordinance, secured by a lien on Pledged Assets which is subordinate only to the lien in favor of the Holders of Senior Lien Bonds.

**6.      Notices.**

6.01    The notice address of FSA is: Financial Security Assurance Inc., 350 Park Avenue, New York, New York 10022-6022, Attention: Managing Director -- Surveillance; Re: Policy No. 200899-R, Telephone: (212) 826-0100; Telecopier: (212) 339-3556.

6.02    In each case in which notice or other communication refers to an Event of Default, then a copy of such notice or other communication shall also be sent to the attention of General Counsel and shall be marked to indicate "URGENT MATERIAL ENCLOSED."

G:\D\Detroit\2003 Sewer Revenue\FSA-Supp-f.doc

C-9

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16·07·2013 12:44

Execution Copy

**SALE ORDER**

(Supplement and Signature Pages Relating to Series 2004(A) Securities)

**Whereas**, on May 7, 2003, the City Council (the *"City Council"*) of the City of Detroit (the *"City"*) adopted the resolution entitled in relevant part "Resolution Authorizing the Issuance and Sale of Sewage Disposal System Revenue and Revenue Refunding Bonds of the City of Detroit of Equal Standing with the City's Sewage Disposal System Revenue Bonds and Sewage Disposal System Revenue Refunding Bonds Now Outstanding and Which May Remain Outstanding, and Authorizing the Issuance and Sale of Sewage Disposal System Revenue Bonds of the City of Detroit of Junior Standing to the City's Sewage Disposal System Revenue Bonds and Sewage Disposal System Revenue Refunding Bonds Now Outstanding and Which Remain Outstanding, for the Collective Purposes of Defraying Part of the Cost of Acquiring and Constructing Replacements, Repairs, Extensions and Improvements to the City's Sewage Disposal System and Refunding Certain Sewage Disposal System Revenue Bonds" (the *"Bond Resolution"*);

**Whereas**, the Resolution was enacted pursuant to Ordinance No. 27-86, as amended and restated in its entirety by Ordinance No. 18-01 which became fully effective on May 22, 2003 (the *"Bond Ordinance"*), and Act 94, Public Acts of Michigan, 1933, as amended (*"Act 94"*); and

**Whereas**, the Resolution authorizes the Finance Director, acting on behalf of the City, to sell and deliver securities (the *"Series 2003 Securities,"* which Series 2003 Securities include the Series 2004(A) Securities (as defined below)) by sale order within the parameters established by the Bond Resolution for the purposes set forth in the Bond Resolution as more fully stated below; and

**Whereas**, in connection with Series 2003 Securities delivered on May 22, 2003, the Finance Director previously issued his "Composite Sale Order of the Finance Director of the City of Detroit with respect to Series 2003 Securities" (the *"Sale Order"*) which constitutes the exercise of the authority granted to the Finance Director in the Bond Resolution; and

**Whereas**, pursuant to the authority granted in the Bond Resolution, and to take advantage of refunding opportunities afforded by favorable market conditions, the Finance Director now wishes to approve the issuance and negotiated sale by the City of the Series 2004(A) Securities as Refunding Securities;

**Now, Therefore**, the Finance Director of the City of Detroit orders as follows:

1. **Definitions.**

   (a)     The definitions in the Sale Order shall include the following definitions:

CONFIDENTIAL INFORMATION
CSandAO@winston.com
Detroit 10.07.2013 12:44

*"Series 2004(A) Securities"* means the City's Sewage Disposal System Senior Lien Revenue Refunding Bonds, Series 2004(A).

*"Series 2004(A) Supplement"* or *"this Supplement"* means this document which is supplemental to the Sale Order and, as further provided in subparagraph 1(b) below, part of it.

(b)     Because the Series 2004(A) Securities are being issued in calendar year 2004, and dated as of their date of delivery, they are designated "City of Detroit, Michigan, Sewage Disposal System Senior Lien Revenue Refunding Bonds, Series 2004(A)." Notwithstanding this designation, the Series 2004(A) Securities are being issued pursuant to the Bond Resolution and the Sale Order.   From and after the date of this Supplement, this Supplement, including the signature pages attached to it, constitute a part of the Sale Order, subject to its terms (including specifically the General Terms of 2003 Securities Supplement (Annex A) and the FSA Supplement (Annex C)).  From and after the date of this Supplement (i) the term "Series 2003 Securities" in the Bond Resolution and the Sale Order shall include the Series 2004(A) Securities and (ii) the term "Refunding Securities" shall include the Series 2004(A) Securities.

2.     **Fixed Rate Securities.**

The Series 2004(A) Securities are being issued as Fixed Rate Securities under the Bond Resolution and Sale Order.

3.     **Financial Facility.**

The commitment of Financial Security Assurance Inc., the provider of a Financial Facility (in the form of municipal bond insurance) with respect to the Series 2004(A) Securities, is accepted.  Exhibit II to the Sale Order is supplemented by the addition of the following entries under the subheading "Financial Facilities" under the following headings:

| Provider | Financial Arrangement | Provisions in Sale Order |
|---|---|---|
| Financial Security Assurance Inc. | Bond Insurance Policy, Series 2004(A) Securities | FSA Supplement, Part 1 |

4.     **Dating.**

Notwithstanding Section 2.03 of the General Terms of 2003 Securities which provides that Fixed Rate Securities are to be dated May 15, 2003, the Series 2004(A) Securities shall be dated as of their date of delivery.

5.     **Certain Parties.**

UBS Financial Services Inc. is the Representative of the Underwriters with respect to the purchase of the Series 2004(A) Securities by the Underwriters.  U.S. Bank National Association

2

is both Transfer Agent for the Series 2004(A) Securities and Escrow Agent under the Escrow Agreement for the Bonds to be Refunded relating to the Series 2004(A) Securities.

6. **Other Terms.**

Other terms of the Series 2004(A) Securities are set forth in the attached signature pages.

[Signature pages to follow.]

3

CONFIDENTIAL INFORMATION
Csoron@winston.com
Detroit/16-07-2013 12:44

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16:07:2013  12:44

**Signature Pages for Series 2004(A) Securities**

1.    **Reserve Requirements.**

Upon the issuance and delivery of the Series 2004(A) Securities, the Reserve Requirements, calculated in accordance with the Bond Ordinance, are:

Bond Reserve Account Requirement[*]

| | |
|---|---|
| Before issuance of Series 2004(A) Securities | $130,691,935 |
| Upon issuance of Series 2004(A) Securities | $130,691,935 |
| Increase/Decrease | $0 |

[*] For all Senior Lien Bonds

2.    **Sale of Fixed Rate Securities.**

The Fixed Rate Securities shall be sold to UBS Financial Services Inc., acting on behalf of themselves and the other underwriters named in the Bond Purchase Agreement, dated as of the date of these Signature Pages, for a purchase price of $113,607,496.62 (equal to the par amount of $101,435,000 plus original issue premium of $12,830,333.45 less Underwriter's discount of $657,836.83).

Series 2004(A) Signature Page 1

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16:07:2013 12:44

3. **Disposition of Proceeds**

*New Money and Refunding Purposes*

| Disposition | New Money Amount | Refunding Amount |
|---|---|---|
| Accrued Interest Deposit to Interest and Redemption Fund | $ 0.00 | $ 0.00 |
| Capitalized Interest Deposit to Interest and Redemption Fund | 0.00 | 0.00 |
| Bond Insurance Premium | 0.00 | 483,715.32 |
| Reserve Account Surety Bond Premium | 0.00 | 0.00 |
| Deposit to Construction Fund | | |
| Series 2003 Subaccount | | |
|     Costs of Issuance | 0.00 | 266,960.30 |
|     Project Costs | 0.00 | 0.00 |
| Escrow Deposit | 0.00 | 112,856,821.00 |
| Total Purchase Price | $ 0.00 | $ 113,607,496.62 |

Series 2004(A) Signature Page 2

CONFIDENTIAL INFORMATION

CSchoch@winston.com

Dated: 10/11/2013 12:44

**4.** **Interest Payment Dates, Record Dates and Day Count Convention.**

(a)    Interest on the Series 2004(A) Securities is payable July 1, 2004, and semi-annually thereafter on each January 1 and July 1.

(b)    The record dates for Series 2004(A) Securities are the 15th day of the calendar month preceding each interest payment date.

(c)    The Day Count Convention for Series 2004(A) Securities is 12 30-day months in a year of 360 days.

**5.** **Senior Lien Bonds.**

(a)    *Principal Amount.*    $101,435,000

(b)    *Priority.*    Senior Lien Bonds.

(c)    *Title.*   City of Detroit Sewage Disposal System Senior Lien Revenue Refunding Bonds, Series 2004(A).

(d)    *Maturities and Interest Rates.*

The Series 2004(A) Securities shall mature on the dates and in the principal amounts and shall bear interest at the respective interest rates per annum as set forth below:

| Maturity | Amount | Interest Rate | Yield |
|---|---|---|---|
| 7/1/2004 | 570,000 | 2.000% | 1.000% |
| 7/1/2006 | 2,975,000 | 3.000% | 1.430% |
| 7/1/2008 | 5,455,000 | 5.000% | 2.170% |
| 7/1/2009 | 5,725,000 | 5.000% | 2.450% |
| 7/1/2010 | 6,015,000 | 5.000% | 2.700% |
| 7/1/2011 | 6,315,000 | 5.000% | 2.920% |
| 7/1/2012 | 6,625,000 | 5.000% | 3.170% |
| 7/1/2013 | 6,960,000 | 5.000% | 3.350% |
| 7/1/2014 | 7,310,000 | 5.000% | 3.500% |
| 7/1/2019 | 14,830,000 | 5.250% | 4.030% |
| 7/1/2020 | 15,605,000 | 5.250% | 4.110% |
| 7/1/2021 | 5,525,000 | 5.250% | 4.200% |
| 7/1/2022 | 5,545,000 | 5.250% | 4.290% |
| 7/1/2023 | 5,835,000 | 5.250% | 4.360% |
| 7/1/2024 | 6,145,000 | 5.250% | 4.400% |

(e)    *No Senior Lien Term Bonds.*

None of the Series 2004(A) Securities are being issued as Term Securities.

(f)    *No Redemption.*

The Series 2004(A) Securities are not subject to redemption prior to maturity.

Series 2004(A) Signature Page 3

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16.07:2013  12:44

6. **Second Lien Bonds.**

None of the Series 2004(A) Securities are Second Lien Bonds.

[Balance of page intentionally left blank.]

Series 2004(A) Signature Page 4

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16:07:2013_12:44

Sean K. Werdlow
Finance Director
City of Detroit

January 9, 2004

G:\D\Detroit\2004(A) Sewer Revenue\SaleOrderSupp-f.doc

Series 2004(A) Signature Page 5