**Exhibit C**



**Sale Order of Finance Director of the City of Detroit
with respect to
$280,000,000
City of Detroit Water Supply System
Revenue Senior Lien Bonds,
Series 2006(A)**

**Whereas,** on November 18 2005 the City Council (the "City Council") of the City of Detroit (the "City") adopted a resolution captioned in relevant part "A Resolution Authorizing the Issuance and Sale of Water Supply System Revenue and Revenue Refunding Bonds of the City of Detroit of Equal Standing with the City's Senior Lien ,Water Supply System Revenue Bonds and Water Supply System Revenue Refunding Bonds Now Outstanding and Which May Remain Outstanding, and Authorizing the Issuance and Sale of Water Supply System Revenue and Revenue Refunding Bonds of the City of Detroit of Junior Standing to the City's Senior Lien Water Supply System Revenue Bonds and Water Supply System Senior Lien Revenue Refunding Bonds Now Outstanding and Which Remain Outstanding..." (the "Bond Resolution"), pursuant to the provisions of Ordinance No. 01-05 adopted by the City Council on January 26, 2005 (the "Ordinance"), and Act 94, Public Acts of Michigan, 1933, as amended; and

**Whereas,** under the provisions of the Bond Resolution, the City is authorized to sell and deliver one or more Series of Series 2006 Securities in series pursuant to one or more orders of the Finance Director of the City (each, a "Sale Order") in an aggregate principal amount not to exceed $1,360,000,000, within the parameters established by the Bond Resolution; and

**Whereas,** the City desires to issue two Series of Series 2006 Senior Lien Bonds under the Bond Resolution, including one Series of 2006 Senior Lien Project Bonds designated as Water Supply System Revenue Senior Lien Bonds, Series 2006(A) (the "Series 2006(A) Bonds") for the purpose of paying a portion of the costs of the Project; and

**Whereas,** the Bond Resolution authorizes the Finance Director, among other things, to determine and establish the aggregate principal amount, purchase price, interest rates and maturities for the Series 2006(A) Bonds, the designations and types of Series 2006(A) Bonds to be issued, the dates for payment of principal of, premium, if any, and interest on the Series 2006(A) Bonds, the Mandatory Redemption Requirements and other redemption provisions for the Series 2006(A) Bonds, and make such other determinations with respect to the Series 2006(A) Bonds as confirmed in this Sale Order; and

**Whereas,** pursuant to the terms of the Bond Resolution the City intends to obtain a policy of municipal bond insurance to insure payment of the principal of and interest on the Series 2006(A) Bonds when due and to pay a portion of the cost to obtain a Credit Facility to fund the Reserve Requirement in respect of the Series 2006(A) Bonds; and

**Whereas,** the City desires to sell the Series 2006(A) Bonds to the purchasers thereof pursuant to a bond purchase agreement between the City and such purchasers of even date herewith, in the amounts, at the prices, with the interest rates and other terms, specified in the Bond Resolution and in this Sale Order.

CONFIDENTIAL INFORMATION

Now, Therefore, the Finance Director of the City of Detroit hereby orders on behalf of the City as follows:

# ARTICLE I
# AUTHORITY AND DEFINITIONS

Section 101. Authority. This Sale Order of the Finance Director authorizing the sale and delivery of the City's Series 2006(A) Bonds is issued in accordance with the provisions of the Bond Resolution.

Section 102. Definitions. Capitalized terms used herein and not otherwise defined or modified by this Sale Order shall have the meanings ascribed thereto in the Bond Resolution and the Ordinance.

# ARTICLE II
# TERMS OF THE SERIES 2006(A) BONDS

Section 201. Designation of Series and Principal Amounts. The Series 2006(A) Bonds shall be designated as "Water Supply System Revenue Senior Lien Bonds, Series 2006(A)." No other bonds shall be issued as Additional Securities bearing such designation.

The Series 2006(A) Bonds are intended at the time of issuance to be Series 2006 Senior Lien Project Bonds and are secured on parity with all other outstanding Senior Obligations and Additional Securities and Ancillary Obligations of equal Priority of Lien as to the Pledged Assets of the System with Senior Obligations. The rights of owners of the Series 2006(A) Bonds to the Pledged Assets of the System are superior to the rights of the owners of all Junior Obligations.

Section 202. Purpose of Series 2006(A) Bonds. The Series 2006(A) Bonds shall be issued as Additional Securities pursuant to the authority contained in Section 20(C)(2) of the Ordinance, for purposes of obtaining funds to finance a portion of the Project paying a portion of the cost of a Credit Facility in order to fund the Series 2006 Senior Lien Project Bond Reserve Requirement; financing capitalized interest; and paying the Issuance Costs allocated to the Series 2006(A) Bonds. Compliance with the test set forth in Section 20(C)(2) of the Ordinance shall be set forth in the Feasibility Report of The Foster Group, LLC provided in connection with the sale and issuance of the Series 2006 Securities and included in the Official Statement therefor.

Section 203. Terms of Series 2006(A) Bonds. Certain terms relating to the Series 2006(A) Bonds and the purchase thereof shall be as follows:

| | |
|---|---|
| Type: | Current Interest Fixed Rate Serial and Term Bonds |
| Authorized Denominations: | $5,000 or any integral multiple thereof |
| Aggregate Original Principal Amount: | $280,000,000 |

| | |
|---|---|
| Capitalized Interest: | $22,040,796.52 |
| Issuance Costs (including Underwriter's Discount and costs paid on behalf of City to third parties by Underwriters): | $2,089,643.13 |
| Dated Date: | August 16, 2006 |
| Final Maturity Date: | July 1, 2036 |
| Net Original Issue Premium: | $8,690,557.25 |
| Interest Payment Dates: | January 1 and July 1 of each year outstanding until maturity, commencing January 1, 2007. |
| Purchase Price: | $286,954,181.25 (consisting of the original principal amount of $280,000,000.00, plus net original issue premium of $8,690,557.25, less Underwriters' discount of $1,736,376.00). |
| Transfer Agent: | U.S. Bank National Association, Detroit, Michigan |
| Underwriters: | Siebert Brandford Shank & Co., LLC<br>Bear, Stearns & Co. Inc.<br>Lehman Brothers<br>AGEdwards<br>Comerica Securities<br>Oppenheimer & Co., Inc.<br>Raymond James & Associates, Inc.<br>Popular Securities<br>JPMorgan<br>KeyBanc Capital Markets<br>NatCity Investments, Inc. |
| Underwriters' Discount: | $1,736,376.00 |
| Numbering | From RA-1 upward |

CONFIDENTIAL INFORMATION
oschoch@winston.com
03/10/10-07-2013 22:45

CONFIDENTIAL INFORMATION
CSchoch@winston.com

Section 204. Maturity Schedule. The Series 2006(A) Bonds set forth below maturing in the years 2011 through 2026 are herein designated Serial Bonds, and the Series 2006(A) Bond maturing in the year 2034 is herein designated a Term Bond, and the Series 2006(A) Bonds shall mature on July 1 of each of the years and shall be payable on such dates in the principal amounts, shall bear interest from their dated date to date of payment and shall be sold at the yields as follows:

| Year of Maturity | Principal Amount | Interest Rate Per Annum | Price/ Yield |
|---|---|---|---|
| 2011 | $ 6,290,000 | 5.00% | 3.98% |
| 2012 | 6,605,000 | 5.00 | 4.04 |
| 2013 | 6,935,000 | 5.00 | 4.11 |
| 2014 | 7,285,000 | 5.00 | 4.18 |
| 2015 | 7,650,000 | 5.00 | 4.24 |
| 2016 | 8,030,000 | 5.00 | 4.30 |
| 2017 | 8,430,000 | 5.00 | 4.36 |
| 2018 | 8,855,000 | 5.00 | 4.41 |
| 2019 | 9,295,000 | 5.00 | 4.46 |
| 2020 | 9,760,000 | 5.00 | 4.50 |
| 2021 | 10,250,000 | 5.00 | 4.53 |
| 2022 | 10,760,000 | 5.00 | 4.55 |
| 2023 | 11,300,000 | 5.00 | 4.58 |
| 2024 | 11,865,000 | 5.00 | 4.60 |
| 2025 | 12,460,000 | 5.00 | 4.61 |
| 2026 | 13,080,000 | 5.00 | 4.63 |
| 2034 | 131,150,000 | 5.00 | 4.75 |

Section 205. Redemption of Series 2006(A) Bonds. The Series 2006(A) Bonds shall be subject to optional redemption and mandatory sinking fund redemption upon the terms and conditions set forth in the Bond Resolution and in this Sale Order as provided below:

(A) Optional Redemption of the Series 2006(A) Bonds. The Series 2006(A) Bonds maturing on or before July 1, 2016, shall not be subject to optional redemption prior to maturity.

Series 2006(A) Bonds maturing on or after July 1, 2017 are subject to redemption at the option of the City, in whole or in part in Authorized Denominations, on any date on or after July 1, 2016, in such order of maturity as the City shall determine at the redemption price of 100% of the principal amount of Series 2006(A) Bonds to be so redeemed, plus accrued interest on the principal amount of the Series 2006(A) Bonds to be so redeemed to the date fixed for redemption.

(B) Mandatory Sinking Fund Redemption of the Series 2006(A) Bonds. The Series 2006(A) Bond maturing on July 1, 2034 and designated a Term Bond shall be subject to mandatory sinking fund redemption by lot, from monies on deposit in the Series 2006 Senior Term Bond Sinking Fund Account, on July 1 of the year set forth below at the redemption price of 100% of the principal amount of Series 2006(A) Bond to be so redeemed plus accrued interest on the principal

CONFIDENTIAL INFORMATION

amount of the Series 2006(A) Bond to be so redeemed to the redemption date, without premium, with the Mandatory Redemption Requirements set forth below.

$131,150,000 Series 2006(A) Bond
Maturing July 1, 2034

| July 1 | Principal Amount | July 1 | Principal Amount |
|---|---|---|---|
| 2027 | $13,735,000 | 2031 | $16,695,000 |
| 2028 | 14,420,000 | 2032 | 17,530,000 |
| 2029 | 15,140,000 | 2033 | 18,405,000 |
| 2030 | 15,900,000 | 2034 | 19,325,000* |

*Final Maturity

The City will receive a credit with respect to any Mandatory Redemption Requirement on account of Term Bond of the same maturity that has been redeemed (other than by application of Mandatory Redemption Requirements) or otherwise acquired by the City prior to the giving of the notice of redemption described below and that have not been applied as a credit against any other Mandatory Redemption Requirements. Not less than 40 days prior to any Mandatory Sinking Fund Redemption Date for the Term Bond, the City shall give notice to the Transfer Agent that such Term Bond is to be so credited. The Term Bond shall be credited by the Transfer Agent at 100% of the principal amount thereof against the Mandatory Redemption Requirement, and the principal amount of the Term Bond to be redeemed on such Mandatory Sinking Fund Redemption Date shall be reduced accordingly and any excess over such amount shall be credited to future Mandatory Redemption Requirements in such order as the City shall elect; provided, however, that any excess resulting from the purchase, at less than par, of the Term Bond may be transferred to the Receiving Fund. Mandatory Redemption Requirements may also be satisfied as provided in Section 13(C)(1) of the Ordinance.

Notice of optional and mandatory sinking fund redemption shall be given to the registered owners of the Series 2006(A) Bonds or portions of Series 2006(A) Bonds to be redeemed by mailing of such notice by first class mail not less than 30 days prior to the date fixed for redemption to the registered owners at the addresses of the registered owners as shown on the registration books as of the date of such mailing kept by the Transfer Agent. Series 2006(A) Bonds called for redemption shall not bear interest after the date fixed for redemption, whether presented for redemption or not, provided that funds are on hand with the Transfer Agent to redeem the Series 2006(A) Bonds or portions of Series 2006(A) Bonds called for redemption.

In case less than the full amount of an outstanding Series 2006(A) Bond is called for redemption, the Transfer Agent, upon presentation of the Series 2006(A) Bond called in part for redemption, shall register, authenticate, and deliver to the registered owner, a new Series 2006(A) Bond of the same type and the same maturity, in the principal amount of the portion of the original Series 2006(A) Bond not called for redemption.

Section 206. Reserve Requirement. The Senior Lien Bond Reserve Requirement, after issuance of the Series 2006 Securities, will be $127,291,970. Of this amount, $3,000,000 will be

- 5 -

[2.2.5.1.9] [Water Series 2006(A), (B), (C), (D) (Closing Memorandum).pdf] [Page 113 of 1509]
13-53846-tjt    Doc 2820-3    Filed 03/04/14    Entered 03/04/14 23:54:40    Page 6 of 19

CONFIDENTIAL INFORMATION

funded by the Credit Facility described in Section 502 hereof and the balance will be funded by cash and Credit Facilities already on deposit in the Senior Lien Bond Reserve Account.

Detroit 16-09-2013 22:45

ARTICLE III
APPROVAL OF BOND PURCHASE AGREEMENT
AND OFFICIAL STATEMENT

Section 301. Approval of Underwriters and the Bond Purchase Agreement. The Series 2006(A) Bonds shall be sold to Siebert Brandford Shank & Co., LLC, as representative of the underwriters listed herein (the "Underwriters") pursuant to the Bond Purchase Agreement between the City and the Underwriters of even date herewith (the "Bond Purchase Agreement"), relating to the Series 2006(A) Bonds and the City's Water Supply System Revenue Refunding Second Lien Bonds, Series 2006(C), and Water Supply System Revenue Refunding Senior Lien Bonds, Series 2006(D) (collectively, the "Series 2006 Fixed Rate Bonds"), in substantially the form presented on this date to the Finance Director. The purchase prices, discounts and premiums for the Series 2006(A) Bonds, as set forth therein and herein are hereby approved.

Section 302. Approval of Official Statement. The form of the Official Statement relating to the Series 2006 Fixed Rate Bonds and the City's Water Supply System Revenue Second Lien Bonds, Series 2006(B) (Variable Rate Demand), on file with the undersigned on the date hereof, dated July 19, 2006, is approved as the Official Statement of the City as it relates to the Series 2006(A) Bonds. If such Official Statement is amended or is amended and restated pursuant to the Bond Purchase Agreement, execution of such amended or amended and restated Official Statement by the undersigned shall constitute the Official Statement as it relates to the Series 2006(A) Bonds and references herein to "Official Statement" shall mean such Official Statement as amended or amended and restated.

ARTICLE IV
TRUSTEE, TRANSFER AGENT, AND TENDER AGENT

Section 401. Trustee and Tender Agent. U.S. Bank National Association, is hereby confirmed as Trustee, Transfer Agent, and Tender Agent for the Series 2006 Securities. U.S. Bank National Association, shall signify its acceptance of the duties and obligations imposed upon it under the Agreement by its execution thereof in each capacity on the date of delivery of the Series 2006 Securities. Any successor Trustee, Transfer Agent and Tender Agent must agree to accept the duties of the Trustee, Transfer Agent, and Tender Agent. The Trustee, Transfer Agent, and Tender Agent shall not be removed or resign in any of such capacities until a successor in such capacity has been appointed.

ARTICLE V
CREDIT ENHANCEMENT

Section 501. Bond Insurance.

A. The Finance Director hereby determines that the Commitment dated July 6, 2006, as it relates to the Series 2006(A) Bonds, as it may be amended as incorporated herein (the

CONFIDENTIAL INFORMATION

"Bond Policy Commitment") of Financial Security Assurance (the "Insurer") to provide a Municipal Bond Insurance Policy for the Series 2006(A) Bonds (the "Bond Policy") to secure payment of the principal of and interest on the Series 2006(A) Bonds when due, is in the best interest of the City and the System. The Bond Policy Commitment is hereby accepted. The City hereby makes the covenants and agreements contained in Exhibit A hereto for the benefit of the Insurer with respect to the Policy. Capitalized terms used in Exhibit A hereof and not defined in the Ordinance or the Bond Resolution shall have the meanings assigned thereto in the Bond Policy or the Bond Policy Commitment. To the extent of any conflict between the provisions of this Sale Order and the Bond Policy Commitment, the provisions of this Sale Order shall govern and the provisions of the Bond Policy Commitment shall be deemed to be amended as provided in this Sale Order.

B. The agreements of the City contained in Exhibit A hereto are for the benefit of the Insurer and shall apply only so long as the Bond Policy remains in effect and the Insurer is not in default thereunder; provided however that the agreements of the City shall continue so long as any amounts due from the City thereunder remain outstanding.

Section 502. Credit Facility. As described in Section 206 hereof, a portion of the Senior Lien Bond Reserve Requirement shall be funded by a Municipal Bond Debt Service Reserve Fund Insurance Policy (the "Reserve Policy") purchased from the Insurer, which shall be applicable to all Senior Lien Bonds. The amount of the Reserve Policy in respect of the 2006 Senior Lien Project Bond Reserve Requirement is $3,000,000. The Finance Director hereby determines that the Reserve Policy is in the best financial interests of the City and the System. The Commitment dated July 6, 2006 from the Insurer for the Reserve Policy, as it may be amended as incorporated herein (the "Reserve Policy Commitment"), is hereby accepted. To the extent of any conflict between this Sale Order and the Reserve Policy Commitment, the provisions of this Sale Order shall govern and the provisions of the Reserve Policy Commitment shall be deemed to be amended as provided in this Sale Order. The City hereby makes the covenants and agreements contained in Exhibit A hereto for the benefit of the Insurer with respect to the Reserve Policy. The Debt Service Reserve Fund Policy Agreement between the City and the Insurer relating to the Reserve Policy, in substantially the form contained in the Reserve Policy Commitment is hereby approved with such changes as are subsequently approved by the Finance Director, such subsequent approval to be conclusively evidenced by his execution and delivery thereof. Capitalized terms used in Exhibit A hereto and not defined in the Ordinance or the Bond Resolution shall have the meanings assigned thereto in the Reserve Policy or the Reserve Policy Commitment.

CONFIDENTIAL INFORMATION

## ARTICLE VI
## OTHER PROVISIONS OF GENERAL APPLICATION
## UPON ISSUANCE OF BONDS

Section 601. Application of Series 2006(A) Bond Proceeds. The amount of $475,000.00 shall be deposited in the Construction Fund Series 2006 established under Section 11(e) of the Bond Resolution and shall be used to pay Issuance Costs allocable to the Series 2006(A) Bonds, other than the allocable portions of Underwriters' discount in the amount of $1,736,376.00, the Reserve Policy premium in the amount of $45,000.00, and the Bond Policy premium of $1,569,643.13, which shall be deemed to be deposited in the Construction Fund Series 2006, but which shall be paid as provided in Section 602 hereof. Capitalized interest in the amount of $22,040,796.52 shall be deposited in the Senior Lien Bond and Interest Redemption Fund and shall be used, together with earnings thereon, to pay interest on the Series 2006(A) Bonds through and including April 1, 2008. The balance of the Series 2006(A) Bond proceeds, in the amount of $262,823,741.60, shall be deposited in the Construction Fund Series 2006 and shall be used to pay costs of the Project.

Section 602. Payment of Issuance Costs. The Finance Director shall pay Issuance Costs in an aggregate approximate amount of $475,000.00 from the proceeds of the Series 2006(A) Bonds deposited in the Construction Fund Series 2006 in accordance with Section 11(a) of the Bond Resolution, or from other legally available funds. In addition, the allocable portion of the Reserve Policy premium and the Bond Policy premium set forth in Section 601 hereof shall be paid by the Underwriters on behalf of the City to the Insurer. The allocable portion of Underwriters' discount set forth in Section 601 hereof shall be paid to the Underwriters in the form of a discount from the par amount of the Series 2006(A) Bonds which the Underwriters shall be required to pay upon closing, thereby reducing the purchase price as provided in Section 203 hereof.

Section 603. Order a Contract. The provisions of this Sale Order shall constitute a contract between the City and any Series 2006(A) Bondholder.

Section 604. Book-Entry-Only Form. The Series 2006(A) Bonds shall be held in book-entry-only form and the appointment of The Depository Trust Company, New York, New York, as depository for the Series 2006(A) Bonds pursuant to the terms of the City's Blanket Letter of Representations, dated November 26, 1996, is hereby confirmed.

[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16: 03/13 22:45

This Sale Order shall take effect immediately.

Roger Short
Interim Finance Director
City of Detroit

July 19, 2006

- 9 -

[2.2.5.1.9] [Water_Series_2006(A), (B), (C), (D) (Closing_Memorandum).pdf] [Page 117 of 1509]
13-53846-tjt    Doc 2820-3    Filed 03/04/14    Entered 03/04/14 23:54:40    Page 10 of 19

# EXHIBIT A

## SENIOR LIEN INSURER PROVISIONS

<u>Part 1 - Bond Insurance Provisions</u>

1. **Applicability.**

    Part 1 of this Supplement shall be in effect for only so long as Financial Security Assurance Inc., a New York stock insurance company ("FSA"), or any successor thereto, is the insurer of the Series 2006 Senior Lien Bonds and has not failed to comply with its payment obligations under its municipal bond insurance policies securing the Series 2006 Senior Lien Bonds (together, the "Insurance Policy"). For so long as Part 1 of this Supplement is in effect, it shall be applicable in respect of the Series 2006 Senior Lien Bonds notwithstanding anything to the contrary elsewhere contained in the Sale Order, including the Related Documents.

2. **FSA Sole Holder for Purposes of Consents.**

    2.01 FSA shall be deemed to be the sole holder of the Series 2006 Senior Lien Bonds for the purpose of exercising any voting right or privilege or giving any consent or direction or taking any other action that the holders of the Series 2006 Senior Lien Bonds are entitled to take pursuant to the Ordinance or the Related Documents.

    2.02 The rights of FSA to request, consent to or direct any action are rights granted to FSA in consideration of its issuance of the Insurance Policy. Any exercise by FSA of such rights is merely an exercise of FSA's contractual rights and shall not be construed or deemed to be taken for the benefit or on behalf of the Bondholders nor does such action evidence any position of FSA, positive or negative, as to whether any Holder consent is required in addition to consent of FSA.

3. **[RESERVED].**

4. **No Acceleration Except with Consent.**

    The maturity of Series 2006 Senior Lien Bonds shall not be accelerated without the consent of FSA.

5. **Modifications, Amendments and Supplements.**

    5.01 No modification, amendment or supplement to the Ordinance requiring the consent of Holders of Series 2006 Senior Lien Bonds, the Bond Resolution or the Sale Order as it relates to Series 2006 Senior Lien Bonds (each a "Related Document") or that materially adversely affects its rights thereunder may become effective except upon obtaining the prior written consent of FSA.

    5.02 Copies of any modification or amendment to the Ordinance or any other Related Document shall be sent to Standard & Poor's Ratings Services, Moody's Investors Service, Inc. and Fitch, Inc. at least 10 days prior to the effective date thereof.

A-1

## 6. Defeasance.

6.01 Only (i) cash, (ii) non-callable direct obligations of the United States of America ("Treasuries"), (iii) evidences of ownership of proportionate interests in future interest and principal payments on Treasuries held by a bank or trust company as custodian, under which the owner of the investment is the real party in interest and has the right to proceed directly and individually against the obligor and the underlying Treasuries are not available to any person claiming through the custodian or to whom the custodian may be obligated or (iv) pre-refunded municipal obligations rated "AAA" and "Aaa" by S&P and Moody's, respectively, or any combination thereof, shall be authorized to be used to effect defeasance of Series 2006 Senior Lien Bonds unless FSA otherwise approves.

6.02 To accomplish defeasance of Series 2006 Senior Lien Bonds, and except as otherwise agreed to in writing by FSA, the City shall cause to be delivered (i) a report of an independent firm of nationally recognized certified public accountants or such other accountant as shall be acceptable to FSA ("Accountant") verifying the sufficiency of the escrow established to pay the Series 2006 Senior Lien Bonds to be defeased in full on the maturity or redemption date ("Verification"), (ii) an Escrow Deposit Agreement (which shall be acceptable in form and substance to FSA), and (iii) an opinion of Bond Counsel to the effect that the defeased Series 2006 Senior Lien Bonds are no longer "Outstanding" under the Ordinance. Each Verification and defeasance opinion shall be acceptable in form and substance, and addressed, to the City and FSA.

6.03 In the event a forward purchase agreement will be employed in advance refunding Series 2006 Senior Lien Bonds, such agreement shall be subject to the approval of FSA and shall be accompanied by such opinions of counsel as may be required by FSA.

6.04 FSA shall be provided with final drafts of the above-referenced documentation not less than five business days prior to the funding of the escrow.

## 7. Series 2006 Senior Lien Bonds to Remain "Outstanding."

To the extent not already provided elsewhere in the Related Documents, amounts paid by FSA under the Insurance Policy shall not be deemed paid for purposes of the Ordinance and shall remain Outstanding and continue to be due and owing until paid by the City in accordance with the Ordinance.

## 8. Claims Upon the Insurance Policy; Payments by and to FSA.

8.01 <u>Notices Prior to Payment Date.</u>

(a) If, on the third "Business Day" (being a day on which the City, the Transfer Agent and FSA are not authorized or required to remain closed) prior to the related scheduled interest payment date or principal payment date or the date to which bond maturity has been accelerated (a "Payment Date") there is not credited to the Interest and Redemption Fund moneys sufficient to pay the principal of and interest on the Series 2006 Senior Lien Bonds due on such Payment Date, then the City shall give notice to FSA and to its designated agent (if any) (the "Bond Insurer's Fiscal Agent") by telephone or telecopy of the amount of such deficiency by 12:00 noon, New York, New York time, on such Business Day.

A-2

CONFIDENTIAL INFORMATION
CScheech@winston.com

CONFIDENTIAL INFORMATION

(b) If, on the second Business Day prior to the related Payment Date, there continues to be a deficiency in the amount available to pay the principal of and interest on the Series 2006 Senior Lien Bonds due on such Payment Date, then the City shall make a claim under the Insurance Policy and give notice to FSA and the Bond Insurer's Fiscal Agent (if any) by telephone of the amount of such deficiency, and the allocation of such deficiency between the amount required to pay interest on the Series 2006 Senior Lien Bonds and the amount required to pay principal of the Series 2006 Senior Lien Bonds, confirmed in writing to FSA and the Bond Insurer's Fiscal Agent by 12:00 noon, New York, New York time, on such second Business Day by filling in the form of Notice of Claim and Certificate delivered with the Insurance Policy.

8.02 Registration and Replacement of Series 2006 Senior Lien Bonds.

(a) In the event the claim to be made is for a mandatory sinking fund redemption installment, upon receipt of the moneys due, the Transfer Agent shall authenticate and deliver to affected Bondholders who surrender their Series 2006 Senior Lien Bonds a new Series 2006 Senior Lien Bond in an aggregate principal amount equal to the unredeemed portion of the Series 2006 Senior Lien Bond surrendered.

(b) The Transfer Agent shall designate any portion of payment of principal on Series 2006 Senior Lien Bonds paid by FSA, whether by virtue of mandatory sinking fund redemption, maturity or other advancement of maturity, in the Registry as a reduction in the principal amount of Series 2006 Senior Lien Bonds registered to the then current Bondholder, whether the Securities Depositary or its nominee or otherwise, and shall issue a replacement Series 2006 Senior Lien Bond to FSA, registered in the name of Financial Security Assurance Inc., in a principal amount equal to the amount of principal so paid (without regard to Authorized Denominations); provided that the Transfer Agent's failure to so designate any payment or issue any replacement Series 2006 Senior Lien Bond shall have no effect on the amount of principal or interest payable by the City on any Series 2006 Senior Lien Bond or the subrogation rights of FSA.

8.03 Policy Payments Account.

(a) Upon payment of a claim under the Insurance Policy the Transfer Agent shall establish a separate special purpose trust account for the benefit of Holders of Series 2006 Senior Lien Bonds referred to herein as the "Policy Payments Account" and over which the Transfer Agent shall have exclusive control and sole right of withdrawal.

(b) The Transfer Agent shall receive any amount paid under the Insurance Policy in trust on behalf of Holders of Series 2006 Senior Lien Bonds and shall deposit any such amount in the Policy Payments Account and distribute such amount only for purposes of making the payments for which a claim was made.

(c) Amounts to be paid to Holders of Series 2006 Senior Lien Bonds shall be disbursed by the Transfer Agent to Holders of Series 2006 Senior Lien Bonds in the same manner as principal and interest payments are to be made under the Related Documents with respect to Fixed Rate Securities or Fixed Rate Modal Securities, as applicable, except that it shall not be necessary for such payments to be made by checks or wire transfers separate from the

check or wire transfer used to pay debt service with other funds available to make such payments.

(d) The Transfer Agent shall keep a complete and accurate record of all funds deposited by FSA into the Policy Payments Account and the allocation of such funds to payment of interest on and principal paid in respect of any Series 2006 Senior Lien Bond. FSA shall have the right to inspect such records at reasonable times upon reasonable notice to the Transfer Agent.

(e) Funds held in the Policy Payments Account shall not be invested by the Transfer Agent and may not be applied to satisfy any costs, expenses or liabilities of the Transfer Agent.

(f) Any funds remaining in the Policy Payments Account following a Bond payment date shall promptly be remitted to FSA.

8.04 Interest on Amounts Advanced.

To the extent permitted by law, in the event amounts paid under the Insurance Policy are applied to claims for payment of principal of or interest on the Series 2006 Senior Lien Bonds, interest on such principal of and interest on such Series 2006 Senior Lien Bonds shall accrue and be payable from the date of such payment at the greater of (i) the per annum rate of interest, publicly announced from time to time by JPMorgan Chase Bank or its successor at its principal office in the City of New York, as its prime or base lending rate plus 3%, and (ii) the then applicable rate of interest on the Series 2006 Senior Lien Bonds provided that in no event shall such rate exceed the maximum rate permissible under applicable usury or similar laws limiting interest rates. The obligation to pay such additional interest is a "Senior Obligation" under the Ordinance, secured by a lien on Pledged Assets which is subordinate only to the lien in favor of the Holders of Senior Lien Bonds.

9. **Subrogation.**

To the extent not already provided elsewhere in the Related Documents, FSA shall, to the extent it makes any payment of principal of or interest on Series 2006 Senior Lien Bonds, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Insurance Policy.

10. **FSA Fee and Expenses.**

10.01 The City shall pay or reimburse FSA any and all charges, fees, costs and expenses which FSA may reasonably pay or incur in connection with:

(a) the administration, enforcement, defense or preservation of any rights or security in any Related Document;

(b) the pursuit of any remedies under the Ordinance or any other Related Document or otherwise afforded by law or equity;

A-4

[2.2.5.1.9] [Water Series 2006(A), (B), (C), (D) (Closing Memorandum).pdf] [Page 121 of 1509]
13-53846-tjt Doc 2820-3 Filed 03/04/14 Entered 03/04/14 23:54:40 Page 14 of 19

CONFIDENTIAL INFORMATION
cSchoch@winston.com
Dorfman_15_07_2013_02:48

CONFIDENTIAL INFORMATION

(c) any amendment, waiver or other action with respect to, or related to, the Ordinance or any other Related Document whether or not executed or completed;

(d) the violation by the City of any law, rule or regulation, or any judgment, order or decree applicable to it with respect to Series 2006 Senior Lien Bonds; or

(e) any litigation or other dispute in connection with the Ordinance or any other Related Document or the transactions contemplated thereby, other than amounts resulting from the failure of FSA to honor its obligations under the Insurance Policy.

10.02 FSA reserves the right to charge a reasonable fee as a condition to executing any amendment, waiver or consent proposed in respect of the Ordinance or any other Related Document.

11. **FSA's Right to Pay.**

FSA shall be entitled to pay principal of or interest on Series 2006 Senior Lien Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the City (as such terms are defined in the Insurance Policy) and any amounts due on Series 2006 Senior Lien Bonds as a result of acceleration of the maturity thereof in accordance with the Ordinance, whether or not FSA has received a Notice of Nonpayment (as such terms are defined in the Insurance Policy) or a claim upon the Insurance Policy.

12. **Notices to FSA.**

12.01 The notice address of FSA is: Financial Security Assurance Inc., 31 West 52nd Street, New York, New York 10019, Attention: Managing Director -- Surveillance; Re: Policy Nos. 207165-N and 207166-N, Telephone: (212) 826-0100; Telecopier: (212) 339-3556.

12.02 In each case in which notice or other communication refers to an Event of Default, then a copy of such notice or other communication shall also be sent to the attention of General Counsel and shall be marked to indicate "URGENT MATERIAL ENCLOSED."

13. **Reporting.**

FSA shall be provided with the following information:

13.01 The budget for each Fiscal Year promptly after adoption and the Audited Water Fund Financial Statements (as defined in the Master Continuing Disclosure Agreement with respect to the Insured Securities) concurrently with the filing thereof with each NRMSIR and the SID pursuant to such Master Continuing Disclosure Agreement;

13.02 Notice of any draw upon the Bond Reserve Account within two Business Days after knowledge thereof other than (i) withdrawals of amounts in excess of the Bond Reserve Requirement and (ii) withdrawals in connection with a refunding of Series 2006 Senior Lien Bonds;



13.03 Notice of any default under the Ordinance known to the City within five Business Days after knowledge thereof;

13.04 Prior notice of the defeasance, advance refunding or redemption of any of the Series 2006 Senior Lien Bonds, including the principal amount, maturities and CUSIP numbers thereof;

13.05 Notice of the resignation or removal of the Transfer Agent and Registrar and the appointment of, and acceptance of duties by, any successor thereto;

13.06 Notice of the commencement of any proceeding by or against the City commenced under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding");

13.07 Notice of the making of any claim in connection with any Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment of principal of, or interest on, the Series 2006 Senior Lien Bonds;

13.08 A full original transcript of all proceedings relating to the execution of any amendment or supplement to the Related Documents; and

13.09 All reports, notices and correspondence to be delivered under the terms of the Related Documents to Holders of Series 2006 Senior Lien Bonds.

**14.    Further Assurance.**

The City agrees to take such action as is necessary from time to time to perfect or to otherwise preserve the priority of the pledge of the Net Revenues pledged to Series 2006 Senior Lien Bonds under applicable law.

**15.    Additional Senior Lien Bonds.**

Notwithstanding satisfaction of other conditions to the issuance of additional Senior Lien Bonds contained in the Ordinance, no such issuance may occur (unless otherwise permitted by FSA):

15.01 If any Event of Default (or any event which, once all notice or grace periods have passed, would constitute an Event of Default) have occurred and be continuing unless such default shall be cured upon such issuance.

15.02 Unless the Bond Reserve Account is fully funded at its requirement (including the new issue) upon the issuance of such additional Senior Lien Bonds.

**16.    Reserve Fund Surety Bonds.**

Any Financial Facility obtained for the Bond Reserve Account after the issuance of the Series 2006 Senior Lien Bonds, other than an insurance policy or surety bond issued by an insurance company, shall be acceptable to FSA.

A-6

[2.2.5.1.9] [Water Series 2006(A), (B), (C), (D) (Closing Memorandum).pdf] [Page 123 of 1509]
13-53846-tjt    Doc 2820-3    Filed 03/04/14    Entered 03/04/14 23:54:40    Page 16 of 19

### 17. Enforce Rights.

FSA is a third party beneficiary of the Related Documents for the purpose of enforcing the rights granted it thereunder.

## Part 2 - Reserve Account Surety Provisions

### 1. Applicability.

Part 2 of this Supplement shall be in effect for only so long as Financial Security Assurance Inc., a New York stock insurance company ("FSA"), or any successor thereto, has not failed to comply with its payment obligations under its municipal bond debt service reserve insurance policy securing the Series 2006 Senior Lien Bonds and other Senior Lien Bonds (the "Reserve Policy"). For so long as Part 2 of this Supplement is in effect, it shall be applicable in respect of the Series 2006 Senior Lien Bonds and other Senior Lien Bonds notwithstanding anything to the contrary elsewhere contained in the Sale Order, including the Related Documents (as defined in Section 5.01 of Part 1 of this Supplement).

### 2. Repayment of Draws and Other Amounts.

2.01 The City shall repay any draws under the Reserve Policy and pay all related reasonable expenses incurred by FSA. Interest shall accrue and be payable on such draws and expenses from the date of payment by FSA at the Late Payment Rate. "Late Payment Rate" means the lesser of (a) the greater of (i) the per annum rate of interest, publicly announced from time to time by JPMorgan Chase Bank at its principal office in the City of New York, as its prime or base lending rate ("Prime Rate") (any change in such Prime Rate to be effective on the date such change is announced by JPMorgan Chase Bank) plus 3%, and (ii) the then applicable highest rate of interest on the Series 2006 Senior Lien Bonds and (b) the maximum rate permissible under applicable usury or similar laws limiting interest rates. The Late Payment Rate shall be computed on the basis of the actual number of days elapsed over a year of 360 days. In the event JPMorgan Chase Bank ceases to announce its Prime Rate publicly, Prime Rate shall be the publicly announced prime or base lending rate of such national bank as FSA shall specify.

2.02 Repayment of draws and payment of expenses and accrued interest thereon at the Late Payment Rate (collectively, "Policy Costs") shall commence in the first month following each draw, and each such monthly payment shall be in an amount at least equal to 1/12 of the aggregate of Policy Costs related to such draw.

2.03 Amounts in respect of Policy Costs paid to FSA shall be credited first to interest due, then to the expenses due and then to principal due. As and to the extent that payments are made to FSA on account of principal due, the coverage under the Reserve Policy will be increased by a like amount, subject to the terms of the Reserve Policy.

2.04 All cash and investments in the Reserve Account established for the Series 2006 Senior Lien Bonds (for purposes of this Supplement, the "Reserve Fund") shall be transferred to the debt service fund for payment of debt service on Series 2006 Senior Lien Bonds and other Senior Lien Bonds before any drawing may be made on the Reserve Policy or any other credit facility credited to the Reserve Fund in lieu of cash ("Credit Facility"). Payment of any Policy

A-7

CONFIDENTIAL INFORMATION

Costs shall be made prior to replenishment of any such cash amounts. Draws on all Credit Facilities (including the Reserve Policy) on which there is available coverage shall be made on a pro-rata basis (calculated by reference to the coverage then available thereunder) after applying all available cash and investments in the Reserve Fund. Payment of Policy Costs and reimbursement of amounts with respect to other Credit Facilities shall be made on a pro-rata basis prior to replenishment of any cash drawn from the Reserve Fund.

2.05  The Related Documents shall not be discharged until all Policy Costs owing to FSA shall have been paid in full. The City's obligation to pay such amounts shall expressly survive payment in full of the Series 2006 Senior Lien Bonds and other Senior Lien Bonds.

3.  **Notice of Claim or Shortfall.**

3.01  The Transfer Agent shall ascertain the necessity for a claim upon the Reserve Policy and provide notice to FSA in accordance with the terms of the Reserve Policy at least five business days prior to each date upon which interest or principal is due on the Series 2006 Senior Lien Bonds. The Transfer Agent shall give notice to FSA of any failure of the City to make timely payment in full of deposits to the debt service fund for the Series 2006 Senior Lien Bonds or other Senior Lien Bonds within two business days of the date due.

4.  **Remedies of FSA.**

4.01  If the City shall fail to pay any Policy Costs in accordance with the requirements of 2.01 hereof, FSA shall be entitled to exercise any and all legal and equitable remedies available to it, including those provided under the Related Documents other than (i) acceleration of the maturity of the Series 2006 Senior Lien Bonds or other Senior Lien Bonds or (ii) remedies which would adversely affect owners of the Series 2006 Senior Lien Bonds and other Senior Lien Bonds.

5.  **Senior Obligations.**

The obligation of the City to pay Policy Costs is a "Senior Obligation" under the Ordinance, secured by a lien on Pledged Assets which is subordinate only to the lien in favor of the Holders of Senior Lien Bonds.

6.  **Notices.**

6.01  The notice address of FSA is: Financial Security Assurance Inc., 31 West 52nd Street, New York, New York 10019, Attention: Managing Director -- Surveillance; Re: Policy No. 207165-R, Telephone: (212) 826-0100; Telecopier: (212) 339-3556.

6.02  In each case in which notice or other communication refers to an Event of Default, then a copy of such notice or other communication shall also be sent to the attention of General Counsel and shall be marked to indicate "URGENT MATERIAL ENCLOSED."

A-8

[2.2.5.1.9] Water Series 2006(A), (B), (C), (D) (Closing Memorandum).pdf [Page 125 of 1509]
13-53846-tjt    Doc 2820-3    Filed 03/04/14    Entered 03/04/14 23:54:40    Page 18 of 19

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit 02/27/2013 22:45

Sale Order of Finance Director of the City of Detroit
with respect to
$120,000,000
City of Detroit Water Supply System
Revenue Second Lien Bonds
(Variable Rate Demand),
Series 2006(B)

**Whereas**, on November 18, 2005 the City Council (the "City Council") of the City of Detroit (the "City") adopted a resolution captioned in relevant part "A Resolution Authorizing the Issuance and Sale of Water Supply System Revenue and Revenue Refunding Bonds of the City of Detroit of Equal Standing with the City's Senior Lien Water Supply System Revenue Bonds and Water Supply System Revenue Refunding Bonds Now Outstanding and Which May Remain Outstanding, and Authorizing the Issuance and Sale of Water Supply System Revenue and Revenue Refunding Bonds of the City of Detroit of Junior Standing to the City's Senior Lien Water Supply System Revenue Bonds and Water Supply System Senior Lien Revenue Refunding Bonds Now Outstanding and Which Remain Outstanding..." (the "Bond Resolution"), pursuant to the provisions of Ordinance No. 01-05 adopted by the City Council on January 26, 2005, (the "Ordinance"), and Act 94, Public Acts of Michigan, 1933, as amended; and

**Whereas**, under the provisions of the Bond Resolution, the City is authorized to sell and deliver one or more Series of Series 2006 Securities in series pursuant to one or more orders of the Finance Director of the City (each, a "Sale Order") in an aggregate principal amount not to exceed $1,360,000,000, within the parameters established by the Bond Resolution; and

**Whereas**, the City desires to issue two Series of Series 2006 Second Lien Bonds under the Bond Resolution, including one Series of 2006 Second Lien Project Bonds designated as Water Supply System Revenue Second Lien Bonds (Variable Rate Demand), Series 2006(B) (the "Series 2006(B) Bonds") for the purpose of paying a portion of the costs of the Project; and

**Whereas**, the Bond Resolution authorizes the Finance Director, among other things, to determine and establish the aggregate principal amount, purchase price, interest rates and maturities for the Series 2006(B) Bonds, the designations and types of Series 2006(B) Bonds to be issued, the dates for payment of principal of, premium, if any, and interest on the Series 2006(B) Bonds, the Mandatory Redemption Requirements and other redemption provisions for the Series 2006(B) Bonds, and make such other determinations with respect to the Series 2006(B) Bonds as confirmed in this Sale Order; and

**Whereas**, pursuant to the terms of the Bond Resolution the City intends to obtain a policy of municipal bond insurance to insure payment of the principal of and interest on the Series 2006(B) Bonds when due and a Liquidity Facility to provide for the payment of the purchase price of 2006(B) Bonds tendered for purchase but not remarketed, and to pay a portion of the cost to obtain a Credit Facility to fund the Reserve Requirement in respect of the Series 2006(B) Bonds; and