UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                                                                Chapter 9
                                                                         Case No. 13-53846

City of Detroit, Michigan,

      Debtor.
_____/

**OBJECTION OF INTERESTED PARTY DAVID SOLE TO MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019, APPROVING A SETTLEMENT AND PLAN SUPPORT AGREEMENT AND, GRANTING RELATED RELIEF [DOCKET 2806]**

      Interested Party David Sole, by and through his attorneys, Jerome D. Goldberg, PLLC, files this Objection to the Motion of Debtor for Entry of an Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving a Settlement and Plan Support Agreement and Granting Related Relief. [Docket 2806]. This Objection incorporates by reference Interested Party David Sole's Objection to the Motion for Approval of a Prior Settlement dated August 16, 2013 [Docket 361] and Supplemental Objection to the Second Settlement filed on January 16, 2014 [Docket 2417].

**INTRODUCTION/ PROCEDURAL BACKGROUND**

      1.    Interested Party Sole filed his Objection to City of Detroit's first Motion for Approval of Forbearance Agreement on August 16, 2013. [Docket 361]

      2.    Interested Party Sole filed a Supplemental Objection in response to the City of Detroit's Supplemental Motion filed on December 27, 2013 after the City of Detroit negotiated an amended Forbearance Agreement on December 24, 2013. [Docket 2417].

      3.    This Objection incorporates by reference Interested Party Sole's previous objections and exhibits attached thereto [Docket 361] and [Docket 2417]., as well as the

1

testimony and exhibits submitted in connection with the hearing on the previous Settlements and Objections that took place on December 17, 2013 and January 3 and 6, 2014.

4. The City of Detroit is seeking approval of its third attempt to reach a settlement with Bank of America and UBS in connection with interest rate swaps that the City of Detroit entered with the banks in connection with Pension Obligation Certificates issued in 2006.

5. The first settlement paying Bank of America and UBS 75% to 82% on termination fees they claimed were due in connection with the interest rate swaps was withdrawn after it was clear this honorable Court was disinclined to approve the settlement.

6. The City of Detroit entered into a second settlement to pay Bank of America and UBS $165 million in termination fees and $4.2 million in breakage fees.

7. After a trial on this second proposed settlement, this honorable Court refused to approve this settlement as well, holding that it did not meet the test of being fair and equitable and in the best interest of the estate as a whole.

8. In reviewing a proposed settlement pursuant Section 9019, the Court examines the likelihood of the City of Detroit prevailing in litigation against the Swap counter-parties, the complexity and cost of litigation, the collectability of the parties, and the best interest of creditors and residents.

9. With regard to the second settlement of $165 million, at a hearing on January 16, 2014, this honorable Court noted that the City of Detroit was likely to prevail in a challenge to the underlying swap agreements as violating MCL 141.2317.

10. This honorable Court noted that if the City of Detroit was successful in this challenge, the City would not only be released from any obligations under the swaps, but could

potentially recover the $300 already paid to Bank of America and UBS (from 2008-2013) in connection with the interest rate swaps.

11. With regard to the complexity and cost of litigation, this honorable Court further held that because these matters would likely be decided through summary judgment as they are matters of law, the cost and complexity of litigation was relatively minor compared to the amount that was potentially recoverable.

12. With regard to the other factors to be considered in connection with a Motion to Approve Settlement, this honorable Court noted that collectability against UBS and Bank of America was not an issue, and clearly, recovering $300 million in lieu of paying out $165 million was in the best interest of creditors and residents of the City of Detroit.

13. The City of Detroit is now asking this honorable Court to approve payment of a termination fee of $85 million to Bank of America and UBS, subject to an additional deferral fee of 1% and interest in the amount of 10% (the Barclay post-petition interest rate plus 1.5%) on any portion of the $85 million not paid off by October 15, 2014.

14. In its Motion to Approve Settlement and public pronouncements, the City of Detroit portrays that under this settlement Bank of America and UBS are accepting a 70% reduction of funds owed them based on a $288 million termination fee that they could potentially collect.

15. However, this portrayal by the City of Detroit inaccurately portrays the real cost of this settlement to the people of Detroit.

16. Based on this honorable Court's holding on January 16, 2014, in fact the people of Detroit are **paying Bank of America and UBS $85 million, when there is a reasonable likelihood if the City of Detroit pursued challenges to the interest rate swaps under MCL**

3

13-53846-tjt    Doc 3043    Filed 03/17/14    Entered 03/17/14 16:07:42    Page 3 of 7

**141.2317, the City of Detroit would prevail in the litigation, the swaps would be declared void ab initio, and rather than the City paying these two banks $85 million, the banks would have to repay the City the $300 million in swap payments made from 2008-2013.**

17. Bank of America and UBS, rather than giving up 70% of "what they are owed" under the swaps, are getting a 65% return on a deal which this Court (which would be the adjudicating body) has held is likely to be declared illegal and void ab initio.

18. This is hardly fair and equitable when one considers that City of Detroit non-uniform Retirees have recently been informed of a threatened 34% cut in base benefits, which with health care benefit cuts, elimination of cost of living payments, and recovery of payments already made and cuts in annuity payments, amounts to what some retiree leaders have estimated could add to up to a 70% cut in actual pension benefits.

19. While this honorable Court at the January 16, 2014 hearing held that the claims challenging the swaps based on fraud, equitable subordination and as being unconscionable raised by Interested Party Sole, while not frivolous, would be harder to establish and more costly to litigate, it should be noted that since the January 16, 2014 hearing several events have occurred that tend to substantiate these claims as well.

20. For example, the Federal Deposit Insurance Corporation just filed suit against sixteen (16) banks, including Bank of America and UBS, for manipulating the Libor rate (the index used by Bank of America and UBS in connection with the interest rate swaps in this case). The case is *Federal Deposit Insurance Corporation, v Bank of America, et. al*, U.S. District Court, Southern On District of New York, No. 14-1757.

21. On February 10, 2014, the U.S. Department of Justice issued a news dispatch that Peter Murphy, the former managing director of Bank of America's municipal derivatives

products desk, pled guilty to conspiracy and fraud in connection with municipal derivatives issued from 1998-2006.  **Exhibit 1, attached, news release**.

22. In addition, in August 2013, the U.S. Justice Department and Securities and Exchange Commission initiated new lawsuits against Bank of America for mortgage fraud.  The cases are *U.S. v Bank of America Corp*, 13-cv-00446, and *Securities and Exchange Commission v Bank of America,* NA, 13-cv-00447 Western District of North Carolina.

23. Bank of America along with UBS were both major sub-prime lenders in the City of Detroit.  Predatory lending practices by lenders and banks including Bank of America and UBS resulted in the City experiencing 67,000 mortgage foreclosures from 2005-2009, which directly led to the financial crisis and blight that helped precipitate this bankruptcy filing.

24. In addition, the City of Detroit is attempting to utilize this settlement to set up approval of an impaired claim, and thus set the stage for a potential cram down against other creditors who refuse to accept the Emergency Manager's Plan of Adjustment.

25. In *In re City of Stockton, California, Debtor*, 486 BR 194, 195 (2013), the Court discussed whether 11 USC 904 requires a debtor to submit a settlement to the Court for approval pursuant to Rule 9019.  The Court held:  "The answer is:  11 USC 904 gives a chapter 9 debtor freedom to decide whether to ignore or to follow the Rule 9019 compromise-approval procedure, but the debtor may need to account for prior compromises during plan confirmation proceedings."

26. The Court further held:  "For the foregoing reasons, the City's Motion will be granted to the extent that it seeks a ruling that it is not required to seek approval of compromises pursuant to Rule 9019.  Any such motion that it does make will be deemed to constitute

"consent" for purposes of Section 904 that would permit the court to assess whether the proposed compromise is 'fair and equitable' under bankruptcy settlement standards." *Id*. at 199.

27. This case seems to stand for the proposition that a debtor has the option of having a settlement reviewed by the Court and potentially challenged by other interested parties pursuant to Rule 9019. However, if the debtor chooses not to submit the settlement to such a review, then it still can be challenged as part of the plan confirmation proceedings.

28. In this case, where the City of Detroit has submitted the settlement for approval, it cannot subsequently treat the settlement as an impaired claim subject to a vote with approval opening other creditors up to cram down.

29. Essentially, the settlement once it is approved by the Court removes the claim from the bankruptcy proceeding,

30. This is especially the case here, where at the hearing on January 16, 2014, Judge Rhodes explicitly stated that if the swaps were valid, they would be secured claims not subject to cram down because of the swap safe harbors of the bankruptcy code.

31. The issue in this instance is whether the swaps are allowable in their entirety or not allowable in their entirety. In either case, the swaps are not an impaired claim subject to a vote that can then be used as justification for a cram down against other creditors.

WHEREFORE: Interested Party David Sole respectfully requests that the City of Detroit Motion for Approval of Settlement be denied.

Respectfully submitted,

JEROME D. GOLDBERG, PLLC

By: */s/ Jerome D. Goldberg*
Jerome D. Goldberg (P61678)
Attorney for David Sole, Party in Interest
2921 East Jefferson, Suite 205
Detroit, MI 48207
Phone: 313-393-6001
Email: apclawyer@sbcglobal.net

DATED: March 17, 2014