<u>**EXHIBIT B**</u>

**Contract Administration Agreement**

# Contract Administration Agreement 2006

among

## Detroit Retirement Systems Funding Trust 2006,

### Detroit General Retirement System Service Corporation

and

### Detroit Police and Fire Retirement System Service Corporation,

severally and not jointly,

## U.S. Bank National Association,

separately and not as Trustee of the Detroit Retirement Systems Funding Trust 2006

and the

## Other Persons Party Hereto

---

**Dated June 12, 2006**

---

## Table of Contents

**Article I -- Definitions and Related Matters**    1
- **Section 1.1.** Certain Definitions ............................................................................ 1
- **Section 1.2.** Other Definitions — This Agreement ..................................................... 2
- **Section 1.3.** Other Definitions — Service Contracts ................................................. 2
- **Section 1.4.** Other Definitions — Trust Agreement ................................................... 3
- **Section 1.5.** Business Days ................................................................................... 3
- **Section 1.6.** Interpretation ................................................................................... 3

**Article II — Appointment; Grant of Security Interest**    4
- **Section 2.1.** Collection of Receivables ................................................................... 4
- **Section 2.2.** Appointment by Funding Trust ........................................................... 4
- **Section 2.3.** Appointment by Each Corporation ...................................................... 4
- **Section 2.4.** Grant of Security Interests ................................................................. 4

**Article III — Representations and Warranties**    6
- **Section 3.1.** Incorporation by Reference ................................................................ 6
- **Section 3.2.** Corporation Property ........................................................................ 7
- **Section 3.3.** General Representations and Warranties .............................................. 7
- **Section 3.4.** Conveyance and Security Interests to the Funding Trust ....................... 7
- **Section 3.5.** Security Interests Granted the Specified Hedge Counterparties ............. 8
- **Section 3.6.** Corporate Identification ..................................................................... 8

**Article IV — Receipt and Disposition of Receivables**    9
- **Section 4.1.** Property Acknowledgments; Payment Entitlements ................................ 9
- **Section 4.2.** Receipt of Service Payments; Determination of Property Interests .......... 9
- **Section 4.3.** Prepaid Service Charges; Hedge Payables ......................................... 10
- **Section 4.4.** Receipt and Disposition of Hedge Receivables and Investment Gain ...... 10
- **Section 4.5.** Books and Records; Funds and Accounts; Trust Funds and Accounts ...... 10
- **Section 4.6.** Distribution Dates ........................................................................... 11
- **Section 4.7.** Distributions of Service Payments .................................................... 11
- **Section 4.8.** Satisfaction and Priority of Payments ................................................ 12

**Article V — Corporation Covenants**    12
- **Section 5.1.** Concerning the Security Interests ...................................................... 12
- **Section 5.2.** No Conveyance or Assignment .......................................................... 13
- **Section 5.3.** Negative Pledge .............................................................................. 13
- **Section 5.4.** Defense of Interests; Further Assurance ............................................ 13

**Article VI — Events of Default; Remedies**    14
- **Section 6.1.** Right of Enforcement ....................................................................... 14
- **Section 6.2.** Events of Default ............................................................................. 14
- **Section 6.3.** Remedies ....................................................................................... 14
- **Section 6.4.** Contract Administrator May File Proofs of Claim ................................. 14
- **Section 6.5.** Application of Money Collected .......................................................... 15
- **Section 6.6.** No Duty of Inquiry ........................................................................... 15
- **Section 6.7.** Notice of Defaults ........................................................................... 15
- **Section 6.8.** Limitation on Suits by Certificateholders ............................................ 15
- **Section 6.9.** Control by Majority .......................................................................... 16

i

**Article X Concerning Each Insurer**     **31**
    **Section 10.1.** Actions by Insurer .................................................................. 31
    **Section 10.2.** Party in Interest ..................................................................... 31
    **Section 10.3.** Amendments; Notice to Rating Agencies ...................................... 31
    **Section 10.4.** Reporting............................................................................. 31
    **Section 10.5.** Fees and Expenses.................................................................. 32

**Article XI Miscellaneous**     **32**
    **Section 11.1.** Addresses for Notices............................................................... 32
    **Section 11.2.** Amendment ........................................................................... 33
    **Section 11.3.** No Waiver; Remedies. ............................................................. 33
    **Section 11.4.** Binding Obligation. ................................................................. 33
    **Section 11.5.** Assignment............................................................................ 33
    **Section 11.6.** Third Party Beneficiaries ......................................................... 34
    **Section 11.7.** Reliance on Representations and Warranties .................................. 34
    **Section 11.8.** Governing Law....................................................................... 34
    **Section 11.9.** Headings.............................................................................. 34
    **Section 11.10.** Integration........................................................................... 34
    **Section 11.11.** Counterparts.......................................................................... 34

**Article XII**     **34**
    **Section 12.1.** Supplements ........................................................................... 34
    **Section 12.2.** Duties of Contract Administrator.................................................. 34

**Supplements**
    Non-Tender Escrow Account
    Tender Account Supplement

**Contract Administration Agreement 2006**, dated June 12, 2006 (the *Agreement*), among the **Detroit Retirement Systems Funding Trust 2006** (the *Funding Trust*), the **Detroit General Retirement System Service Corporation** (the *GRS Corporation*) and the **Detroit Police and Fire Retirement System Service Corporation** (the *PFRS Corporation*), each a Michigan nonprofit corporation acting severally and not jointly, **U.S. Bank National Association**, separately and not as trustee of the Funding Trust (the *Contract Administrator*), and the **Persons** whose signatures appear on the signature pages hereto;

In consideration of the mutual promises contained herein and intending to be legally bound hereby, the parties hereto agree as follows:

## Article I -- Definitions and Related Matters

### Section 1.1.   Certain Definitions

The following terms have the following respective meanings unless the context otherwise clearly requires:

*Collateral* means the Funding Trust Receivable Collateral, the Hedge Payables Collateral and the Hedge Receivables Collateral.

*Contract Administrator* means the bank identified in the first paragraph of this Agreement as the "Contract Administrator" *unless and until* a successor is appointed successor Contract Administrator pursuant to applicable provisions of this Agreement; *thereafter, Contract Administrator* means such successor.

*Contract Agreement Deficiency* means as of any date, an amount referred to in **clause Second, Fourth** or **Sixth** of **Section 8.03** of either **Service Contract.**

*Corporation* means, as the context may require, the GRS Corporation or the PFRS Corporation.

*Creditor Liens* means any and all liens and security interests granted by this Agreement in the Hedge Payables Collateral and by the Trust Agreement in the Funding Trust Receivables.

*Default* means any Event of Default or event that with the passage of time or the giving of notice, or both, would constitute an Event of Default.

*Entitled Person* or *Person Entitled* means the Person entitled to receive the proceeds of a specific Component.

*Funding Rate* means the rate at which Service Charges are determined for each Service Charge Class according to the applicable Funding Rate Methodology.

*Funding Trust Receivable Collateral* means the Funding Trust Receivables and all rights and interests with respect thereto granted by Article 9 of the UCC, including rights to proceeds and rights of enforcement.

*GRS Corporation* means the Person so defined in the first paragraph of this Agreement and the successors of such Person.

*Hedge Payables Collateral* means the amounts payable by the City under the Service Contracts in respect of Hedge Payables and all rights and interests with respect thereto granted by Article 9 of the UCC, including rights to proceeds and rights of enforcement.

*Hedge Receivables Collateral* means the amounts payable by any Specified Hedge Counterparty as Hedge Receivables and all rights and interests with respect thereto granted by Article 9 of the UCC, including rights to proceeds and rights of enforcement.

*PFRS Corporation* means the Person so defined in the first paragraph of this Agreement and the successors of such Person.

*Receipt Day* means a day on which the Contract Administrator receives an amount of money at or before the Payment Time *or if* the Contract Administrator receives an amount of money after the Payment Time on a day *then* the following day.

*Service Contract* means the GRS Service Contract or the PFRS Service Contract as the context may require.

*Service Contract Priority Sections* means Sections 8.02 and 8.03 of the each Service Contract.

*Specified Hedge Counterparties* means the Persons named in **Schedule 5** to the **Specific Terms** *subject* to **Section 8** of the **Specific Terms.**

*UCC* means the Uniform Commercial Code as in effect in the State of Michigan.

**Section 1.2.    Other Definitions — This Agreement**

Terms defined elsewhere in this Agreement include the following:

| *Term* | *Defined In* |
|---|---|
| Affected Certificate | Section 6.3 |
| Deficit Interest Related Payments | Section 4.7 |
| Deficit Principal Related Payments | Section 4.7 |
| Distribution Date | Section 4.6 |
| Interest Related Payments | Section 4.7 |
| Principal Related Payments | Section 4.7 |
| Redemption Related Payments | Section 4.7 |
| Sinking Fund Related Payments | Section 4.7 |
| Transfer Party Accession Event | Section 2.4 |

**Section 1.3.    Other Definitions — Service Contracts**

Capitalized terms not defined herein and defined in either Service Contract are used herein as therein defined unless the context clearly otherwise requires.  Such terms include:

| *Term* | *Defined In* |
|---|---|
| Accrued Service Charges | Section 5.03 |
| Closing Date | Section 3 |
| Component | Section 1.03 |
| Credit Insurance | Schedule of Credit Insurance to Specific Terms |
| Funding Rate Portion | Section 1.01 |
| Funding Trust | Section 4 |
| Hedge Counterparty | Section 1.01 |
| Hedge Periodic Payable | Section 1.01 |

| Term | Defined In |
|---|---|
| Hedge Payable | Section 1.01 |
| Hedge Periodic Receivable | Section 1.01 |
| Hedge Receivable | Section 1.01 |
| Hedge Termination Payable | Section 1.01 |
| Hedge Termination Receivable | Section 1.01 |
| Index Rate Service Charges | Section 3 |
| Insurer | Schedule of Credit Insurance to Specific Terms |
| Notice of Transfer Event | Section 8 |
| Payment Time | Section 1.01 |
| Rating Agency | Section 9.02 |
| Service Payment | Section 1.03 |
| Siebert | Section 8 |
| Stated Hedge | Section 1.01 |
| Third Party Beneficiary | Section 9.12 |
| Transfer Party | Section 8 |
| Trust Agreement | Section 1 |
| Trustee | Section 1 |

Section numbers with a leading zero (e.g., 1.01) refer to sections in a Service Contract General Terms Section numbers without a leading zero (e.g., 1) refer to sections in a Service Contract Specific Terms.

### Section 1.4. Other Definitions — Trust Agreement

Capitalized terms not defined herein and defined in the Trust Agreement are used herein as therein defined unless the context clearly otherwise requires. Such terms include:

| Term | Defined In |
|---|---|
| Principal Amount | Section 101 |
| Funding Trust Receivable | Section 101 |
| Corporation Request, Corporation Order or Corporation Consent | Section 101 |

### Section 1.5. Business Days

If this Agreement requires an act to be performed on a day that is not a Business Day then such act shall be performed on the first day thereafter that is a Business Day with the same effect as if such act were performed on the day that such act was otherwise required to be performed.

### Section 1.6. Interpretation

*1.6.1.* Words of the masculine gender include correlative words of the feminine and neuter genders.

*1.6.2.* Unless the context otherwise indicates, words importing the singular include the plural and vice versa.

*1.6.3.* Articles and Sections referred to by number or name refer to the corresponding Articles and Sections of this Agreement *unless* otherwise provided.

*1.6.4.* The terms *hereby, hereof, hereto, herein, hereunder* and any similar terms used in this Agreement refer to this Agreement as a whole and not to any particular portion thereof.

*1.6.5.* The word *or* is not exclusive.

*1.6.6.* The enumeration of things after the word *including* is to be interpreted as illustrative and not as restrictive.

*1.6.7.* References to sections of a Public Act, or to a Public Act as a whole, also include any amendments thereto unless otherwise indicated and analogous sections of Public Acts enacted as substitutes therefor.

## Article II — Appointment; Grant of Security Interest

### Section 2.1. Collection of Receivables

Each of the Corporations, the Specified Hedge Counterparties and the Funding Trust hereby appoint the Contract Administrator as its respective agent and attorney-in-fact to receive Service Payments.

### Section 2.2. Appointment by Funding Trust

*2.2.1.* The Funding Trust hereby also appoints the Contract Administrator as its agent and attorney-in-fact to take such actions and exercise such rights and remedies as to Funding Trust Receivables as the Funding Trust is or may become entitled to exercise under law and in equity to enforce the payment thereof and otherwise realize Funding Trust Receivables. For the avoidance of doubt, all parties to this Agreement shall be entitled to enforce their respective rights.

### Section 2.3. Appointment by Each Corporation

*2.3.1.* Each Corporation hereby also appoints the Contract Administrator as its agent and attorney-in-fact to enforce such Corporation's rights and remedies under the Stated Hedges, including the collection of Hedge Receivables from the Specified Hedge Counterparties under the respective Stated Hedges, and to take all such actions and exercise such rights and remedies as the respective Corporation is or may become entitled to exercise under the particular Stated Hedge and otherwise at law or in equity.

*2.3.2.* Each Corporation also appoints the Contract Administrator as its agent and attorney to take to perform all ministerial acts in the name and stead of such Corporation that are called for to be performed by such Corporation under the Service Contract subject to the specific limitations contained in **Article VII**.

*2.3.3.* Each Corporation further appoints the Contract Administrator to invest amounts received by the Contract Administrator as Costs of Issuance and Prepaid Service Charges in Authorized Investments in accordance with the Service Contract.

### Section 2.4. Grant of Security Interests

*2.4.1.* Hedge Periodic Payables

2.4.1(1). Effective as of the Closing Date, to secure its payment obligations under its Stated Hedges, each Corporation hereby grants to each Specified Hedge Counterparty and the Transfer Party a security interest in and lien upon all of its right, title and interest

in, to and under the amounts payable by the City under **Section 7.02** of either **Service Contract** in respect of Hedge Periodic Payables, any interest earned thereon and all rights and interests with respect thereto granted by Article 9 of the UCC, including rights to proceeds and rights of enforcement (collectively, the *Hedge Periodic Payables Security Interest*).

2.4.1(2).   All of the parties hereto acknowledge that the Hedge Periodic Payables Security Interest granted by each Corporation shall be deemed to give to each Specified Hedge Counterparty and the Transfer Party a first priority security interest in and an equal and parity first lien upon, all of the Corporations' right, title and interest in, to and under the amounts payable by the City under **Section 7.02** of either **Service Contract** in respect of Hedge Periodic Payables. Each Specified Hedge Counterparty agrees and acknowledges the parity first priority security interest and parity first lien upon such amounts granted to it, the other Specified Hedge Counterparties and the Transfer Party by each Corporation.

2.4.1(3).   The Transfer Party acknowledges and agrees that the Hedge Periodic Payables Security Interest granted it is enforceable against the Hedge Periodic Payables Collateral *if but only if* it accedes to the status of Stated Hedge Counterparty under the Service Contract (the *Transfer Party Accession Event*).

2.4.1(4).   Each Specified Hedge Counterparty agrees that the Transfer Party shall accede to all of the rights and remedies and be bound by all of the obligations of Siebert as a Specified Hedge Counterparty hereunder upon the occurrence of the Transfer Party Accession Event and that thereupon Siebert shall have no further rights, obligations or remedies hereunder as a Specified Hedge Counterparty.

*2.4.2.* Hedge Termination Payables

2.4.2(1).   Effective as of the Closing Date, to secure its payment obligations under its Stated Hedge, each Corporation hereby grants to each Specified Hedge Counterparty and the Transfer Party a security interest in and lien upon all of its right, title and interest in, to and under the amounts payable by the City under **Section 7.02** of either **Service Contract** in respect of Hedge Termination Payables, any interest earned thereon and all rights and interests with respect thereto granted by Article 9 of the UCC, including rights to proceeds and rights of enforcement (collectively, the *Hedge Termination Payables Security Interest*).

2.4.2(2).   All of the parties hereto acknowledge that the Hedge Termination Payables Security Interest granted by each Corporation shall be deemed to give each Specified Hedge Counterparty and the Transfer Party a first priority security interest in and an equal and parity first lien upon all of the Corporations' right, title and interest in, to and under the amounts payable by the City under **Section 7.02** of either **Service Contract** in respect of Hedge Termination Payables, and each Specified Hedge Counterparty agrees and acknowledges the parity first priority security interest and parity first lien upon such amounts granted to it, the other Specified Hedge Counterparties and the Transfer Party by each Corporation.

2.4.2(3).   The Transfer Party acknowledges and agrees that the Hedge Termination Payables Security Interest granted it is enforceable against the Hedge Termination Payables Collateral *only* on and after the occurrence of the Transfer Party Accession Event.

2.4.2(4).   Each Specified Hedge Counterparty agrees that the Transfer Party shall accede to all of the rights and remedies and be bound by all of the obligations of Siebert as a Specified Hedge Counterparty hereunder with respect to the Hedge Termination Payables Collateral upon the occurrence of the Transfer Party Accession Event and that thereupon Siebert shall have no further rights, obligations or remedies hereunder as a Specified Hedge Counterparty.

*2.4.3.*   Hedge Periodic Receivables

2.4.3(1).   Effective as of the Closing Date, to secure the City's obligations to the Funding Trust in respect of Service Charges, each Corporation hereby grants to the Funding Trust a security interest in and lien upon all of its right, title and interest in, to and under the amounts payable by any Specified Hedge Counterparty as a Hedge Periodic Receivable (a *Hedge Periodic Receivable Amount*), any interest earned thereon and all rights and interests with respect thereto granted by Article 9 of the UCC, including rights to proceeds and rights of enforcement (collectively, the *Hedge Periodic Receivables Security Interest*).

2.4.3(2).   All of the parties hereto acknowledge that the Hedge Periodic Receivables Security Interest granted by each Corporation shall be deemed to give Funding Trust a first priority security interest in and an equal lien upon, all of the Corporations' right, title and interest in, to and under Hedge Periodic Receivable Amounts.

*2.4.4.*   Hedge Termination Receivables

2.4.4(1).   Effective as of the Closing Date, to secure the City's obligations to the Funding Trust in respect of Service Charges, each Corporation hereby grants to the Funding Trust a security interest in and lien upon all of its right, title and interest in, to and under the amounts payable by any Specified Hedge Counterparty as a Hedge Termination Receivable (a *Hedge Termination Receivable Amount*), any interest earned thereon and all rights and interests with respect thereto granted by Article 9 of the UCC, including rights to proceeds and rights of enforcement (collectively, the *Hedge Termination Receivables Security Interest*).

2.4.4(2).   All of the parties hereto acknowledge that the Hedge Termination Receivables Security Interest granted by each Corporation shall be deemed to give the Funding Trust a first priority security interest an equal lien upon, all of the Corporations' right, title and interest in, to and under Hedge Termination Receivable Amounts.

## Article III — Representations and Warranties

Each Corporation makes the representations and warranties contained in **this Article** for only itself and not for the other Corporation.

### Section 3.1.   Incorporation by Reference

*3.1.1.*   Each of the Corporations makes the representations and warranties made by it in its Service Contract, on and as of the dates therein made, for the benefit of the Contract Adminis-

trator as if any reference therein to the "Service Contract" also included a reference to this Agreement for the mutual benefit of each other and for the benefit of the Underwriters, the Specified Hedge Counterparties, the Funding Trust and the holders from time to time of the Certificates.

*3.1.2.* Such representations and warranties, together with related definitions and ancillary provisions, are hereby incorporated herein, *mutatis mutandis*, with the same force and effect as if set forth in full herein.

## Section 3.2.   Corporation Property

Each Corporation represents and warrants for the benefit of the Contract Administrator, the Underwriters, the Funding Trust, the Specified Hedge Counterparties, the holders from time to time of the Certificates and the other Corporation that on the date hereof and on and as of the Closing Date its respective Service Contract and Stated Hedges are its property subject to no lien, charge, encumbrance or other interest *except* the rights of Third Party Beneficiaries as set forth in the Service Contracts and (i) the rights of the Funding Trust on and after the Closing Date to Funding Trust Receivables and Hedge Receivables, and ancillary rights, (ii) the rights of the Specified Hedge Counterparties on and after the Closing Date to Hedge Payables and ancillary rights and (iii) the security interest granted on and after the Closing Date to the Transfer Party in Hedge Payables.

## Section 3.3.   General Representations and Warranties

Each Corporation represents and warrants as follows for the benefit of the Contract Administrator, the Underwriters, the Funding Trust, the Specified Hedge Counterparties, the holders from time to time of the Certificates and the other Corporation.

*3.3.1.* The Corporation's name as indicated on the signature page of this Agreement is such Corporation's name as indicated on the public record of the Corporation's jurisdiction of organization which shows the Corporation to have been organized.

*3.3.2.* The Corporation is a "registered organization," within the meaning of Article 9 of the UCC, of the type and organized under the laws of the State of Michigan.

*3.3.3.* **Section 9.04** of the respective **Service Contract** accurately sets forth the Corporation's place of business or, if more than one place of business, its chief executive office as well as such Corporation's mailing address if different and such Corporation has not had any other place of business or, if more than one place of business, any other chief executive office since its formation.

## Section 3.4.   Conveyance and Security Interests to the Funding Trust

*3.4.1.* Each Corporation represents and warrants as follows for the benefit of the Contract Administrator, the Funding Trust and the other Corporation on and as of the Closing Date.

3.4.1(1).   The transfer and assignment of the Funding Trust Receivables that the Trust Agreement purports to transfer, assign and otherwise convey to the Funding Trust is a valid and binding absolute transfer of the Funding Trust Receivables *provided* that such Corporation shall not be in breach of this representation and warranty if, contrary to

the intent of such Corporation, such transfer is hereafter determined to be a pledge of such property to the Funding Trust.

3.4.1(2). The security interest granted to the Funding Trust in the Funding Trust Receivables is a valid security interest to the extent of the rights of such Corporation's interests therein, and such security interest is a perfected, first priority security interest.

3.4.1(3). The security interest granted to the Funding Trust in the Hedge Receivables is a valid security interest therein, and such security interest is a perfected, first priority security interest.

*3.4.2.* (i) Each Corporation has not granted control (for purposes of Articles 8 and 9 of the UCC) over the Funding Trust Receivables and the Hedge Receivables, or any bank account or securities account in which they are held, to any Person other than the Funding Trust and (ii) each Corporation has not entered into any agreement granting control (for purposes of Articles 8 and 9 of the UCC) over the Hedge Receivables other than this Agreement or over the Funding Trust Receivables other than the Trust Agreement.

*3.4.3.* Each Corporation has never granted or permitted to exist, any lien, mortgage, pledge, charge, claim, encumbrance, easement, lease or security interest on the Hedge Receivables and Funding Trust Receivables, or any bank account or securities account in which they are held, in favor of any Person other than the Funding Trust.

### Section 3.5. Security Interests Granted the Specified Hedge Counterparties

*3.5.1.* Each Corporation represents and warrants for the benefit of the Specified Hedge Counterparties and the other Corporation on and as of the Closing Date that the security interest granted to the Specified Hedge Counterparties in the Hedge Payables Collateral is a valid security interest therein, and such security interest is a perfected, first priority security interest.

*3.5.2.* (i) Each Corporation has not granted control (for purposes of Articles 8 and 9 of the UCC) over the Hedge Payables Collateral, or any bank account or securities account in which they are held, to any Person other than the Hedge Counterparties and (ii) each Corporation has not entered into any agreement granting control (for purposes of Articles 8 and 9 of the UCC) over the Hedge Payables Collateral other than this Agreement.

*3.5.3.* Each Corporation has never granted or permitted to exist, any lien, mortgage, pledge, charge, claim, encumbrance, easement, lease or security interest on the Hedge Payables Collateral, or any bank account or securities account in which they are held, in favor of any Person other than the Specified Hedge Counterparties.

### Section 3.6. Corporate Identification

Each Corporation represents only as to its own organizational identification number as follows:

*3.6.1.* The organizational identification number of GRS Corporation is 793781.

*3.6.2.* The organizational identification number of PFRS Corporation is 793782.

**Article IV — Receipt and Disposition of Receivables**

**Section 4.1.    Property Acknowledgments; Payment Entitlements**

For the avoidance of doubt, the following are statements of the property interests of the parties hereto in the Components of Service Payments.

4.1.1(1).    Contract Administrator Payments are property of the Contract Administrator, and the Contract Administrator is the Person Entitled thereto.

4.1.1(2).    Funding Trust Receivables are property of the Funding Trust, and the Funding Trust is the Person Entitled thereto.

4.1.1(3).    Amounts payable by the City under **Section 7.02** of either **Service Contract** in respect of Hedge Periodic Payables are property of the Corporations, and pursuant to **Section 4.3.2** the Specified Hedge Counterparties are the Persons Entitled thereto.

4.1.1(4).    Amounts payable by the City under **Section 7.02** of either **Service Contract** in respect of Hedge Termination Payables are property of the Corporations, and pursuant to **Section 4.3.3** the Specified Hedge Counterparties are the Persons Entitled thereto.

4.1.1(5).    Hedge Periodic Receivables are the property of the Corporations, and pursuant to **Section 4.4.1**, the Funding Trust is the Person Entitled thereto, to the extent provided in such Section, and thereafter, pursuant to **Section 4.4.2**, each Corporation is the Person Entitled to any remaining portion of its respective Hedge Periodic Receivables.

4.1.1(6).    Hedge Termination Receivables are the property of the Corporations, and pursuant to **Section 4.4.1**, the Funding Trust is the Person Entitled thereto, to the extent provided in such Section, and, thereafter, each Corporation is the Person Entitled to any remaining portion of its respective Hedge Termination Receivables.

**Section 4.2.    Receipt of Service Payments; Determination of Property Interests**

*4.2.1.*    Service Payments (including Prepaid Service Charges) shall be applied in accordance with the priorities set forth in the Service Contract Priority Sections.

*4.2.2.*    On each Receipt Day that the Contract Administrator receives a Service Payment, the Contract Administrator shall properly determine the Components and pro-rata application thereof satisfied under the Service Contract Priority Sections by such Service Payment, and the Persons Entitled thereto, in accordance with the Service Contract and shall distribute such payments in accordance with **Section 4.7**.

*4.2.3.*    At least one day prior to each Distribution Date for any Service Charges or Scheduled Payments, the Contract Administrator shall determine whether the amount available under this Agreement for such payment is sufficient to make the distribution as if no Contract Agreement Deficiency existed.  If the Contract Administrator determines that the amount available under this Agreement for such payment is insufficient to make such distribution on such Distribution Date, the Contract Administrator shall deliver a notice (a ***Shortfall Notice***) to each Insurer and the Trustee that states the amount of the shortfall and the respective amounts thereof attributable to Service Charges and Scheduled Payments.

*4.2.4.* At least one day prior to each Distribution Date for a Hedge Periodic Payable, the Contract Administrator shall determine whether the amount available under this Agreement for such payment is sufficient to pay such Hedge Periodic Payable. If the Contract Administrator determines that the amount available under this Agreement for such payment is insufficient to make such payment on such Distribution Date, the Contract Administrator shall deliver a notice to the Insurer and the applicable Specified Hedge Counterparty or Counterparties that states the amount of the shortfall.

**Section 4.3.  Prepaid Service Charges; Hedge Payables**

*4.3.1.* Prepaid Service Charges received by the Contract Administrator shall be used to pay the first occurring Service Charges and Hedge Periodic Payables of each Corporation.

*4.3.2.* Receipts by the Contract Administrator of amounts paid by the City under **Section 7.02** of either **Service Contract** in respect of Hedge Periodic Payables shall be used to pay current and past due Hedge Periodic Payables, and once credited to the account referred to in **Section 4.5.1** shall not be subject to direction to any other use by the Corporation.

*4.3.3.* Receipts by the Contract Administrator of amounts paid by the City under **Section 7.02** of either **Service Contract** in respect of Hedge Termination Payables shall be used to pay current and past due Hedge Termination Payables and once credited to the account referred to in **Section 4.5.1** shall not be subject to direction to any other use by the Corporation.

**Section 4.4.  Receipt and Disposition of Hedge Receivables and Investment Gain**

*4.4.1.* Hedge Receivables received by the Contract Administrator shall be used to satisfy the City's obligations in respect of then current or past due Service Charges not otherwise paid.

*4.4.2.* To the extent that a balance of a paid Hedge Receivable remains after application in accordance with **Section 4.4.1**, such balance shall be the property of the respective Corporation.

*4.4.3.* Gain from Authorized Investments received by the Contract Administrator from the investment of Costs of Issuance and Prepaid Service Charges shall be paid to the City.

**Section 4.5.  Books and Records; Funds and Accounts; Trust Funds and Accounts**

*4.5.1.* The Contract Administrator shall maintain books and records properly showing satisfied Components. To facilitate maintaining proper records of ownership, the Contract Administrator shall establish the funds and accounts named in **Exhibit 4.5** and shall credit the respective Components pending distribution and shall distribute the amounts credited thereto on the respective Distribution Dates to the respective Entitled Persons.

*4.5.2.* In addition to bearing the name of the particular fund or account, each fund or account shall be captioned *Detroit Retirement Systems Funding Trust 2005* and shall identify the property owner(s) as set forth in **Exhibit 4.5**.

*4.5.3.* In addition to the funds and accounts required by **Exhibit 4.5**, the Contract Administrator may establish such other funds and accounts as it determines necessary or appropriate.

*4.5.4.* The funds and accounts required by **Exhibit 4.5**, and such other funds and accounts that the Contract Administrator establishes hereunder shall be held and administered as trust funds and accounts.

### Section 4.6. Distribution Dates

Each of the following dates is a ***Distribution Date***.

| Date | Component |
|---|---|
| As and When Due | Contract Administrator Payments |
| | Amounts in respect of Hedge Periodic Payables |
| | Amounts in respect of Hedge Termination Payables |
| First day of a calendar month | Any Contract Agreement Deficiency |
| Service Charge Payment Dates | Service Charges |
| Scheduled Payments Dates | Regular Scheduled Payments |
| Sinking Fund Installment Dates | Sinking Fund Installments |
| Optional Prepayment Dates | Optional Prepayment Amounts Accrued Service Charges |

### Section 4.7. Distributions of Service Payments

On each Distribution Date, the Contract Administrator shall distribute the amount of the Components satisfied since the last such Distribution Date to the respective Entitled Persons.

4.7.1(1). If the Entitled Person is the Contract Administrator, the amounts of satisfied Components shall be paid to the Contract Administrator.

4.7.1(2). If the Entitled Person is the Funding Trust, the amounts of satisfied Components shall be distributed to the Funding Trust to be applied in accordance with the Trust Agreement.

(i) Amounts distributed to the Trustee representing satisfied Components constituting Service Charges and Accrued Service Charges described in **clause Second** of **Section 8.03** of each **Service Contract** shall be identified to the Trustee as ***Deficit Interest Related Payments***;

(ii) Amounts distributed to the Trustee representing satisfied Components constituting Regular Scheduled Payments described in **clause Fourth** of **Section 8.03** of each **Service Contract** shall be identified to the Trustee as ***Deficit Principal Related Payments***;

(iii) Amounts distributed to the Trustee representing satisfied Components constituting Sinking Fund Installments described in **clause Fourth** of **Section 8.03** of each **Service Contract** shall be identified to the Trustee as ***Deficit Principal Related Payments***;

(iv) Amounts distributed to the Trustee representing satisfied Components constituting Service Charges described in **clause Third** of **Section 8.03** of each **Service Contract** shall be identified to the Trustee as ***Interest Related Payments***;

(v)   Amounts distributed to the Trustee representing satisfied Components constituting Regular Scheduled Payments and Sinking Fund Installments described in **clause Fifth** of **Section 8.03** of each **Service Contract** shall constitute and be identified to the Trustee as, respectively, *Principal Related Payments* and *Sinking Fund Related Payments*; and

(vi)   Amounts distributed to the Trustee representing satisfied Components constituting Optional Prepayment Amounts and Accrued Service Charges described in **clause Eighth** of **Section 8.03** of each **Service Contract** shall be identified to the Trustee as *Redemption Related Payments*.

4.7.1(3).   If the Entitled Persons are the Specified Hedge Counterparties, the amounts of satisfied Components constituting amounts in respect of Hedge Payables shall be paid to the Specified Hedge Counterparties to whom such amounts are owing in proportion to the amounts owed to each under the respective Stated Hedges.

4.7.1(4).   If distributions are to be made on the same Distribution Date for two or more different priorities of Components pursuant to the Service Contract Priority Sections, no distribution shall be made in respect of a lower priority to the extent that each of the higher priorities is not satisfied in full.

## Section 4.8.   Satisfaction and Priority of Payments

*4.8.1.*   Each party acknowledges that the Service Contract Priority Sections establish the order and priority of the payment of Components and the Persons Entitled to Components are entitled to receive those Components in the order and priority set forth in the Service Contract Priority Sections.  Each party acknowledges it is undertaking and entering into the transaction which is the subject of this Agreement based on the understanding, and with the intent and effect of the Service Contract Priority Sections.  Each party hereto agrees to be bound by the order and priority of the payments of Components set forth in Service Contract Priority Sections and the terms and provisions of the Service Contract Priority Sections are hereby incorporated into this Agreement by this reference as if the same were recited in its entirety.

*4.8.2.*   Notwithstanding any other provision hereof, upon the occurrence of a payment default under the Service Contracts or this Agreement, to the extent that a party enforces its rights with respect to Collateral on which it has a Creditor Lien, such Collateral or the proceeds thereof may only be applied to satisfy payments of Components due and owing to the parties that have a Creditor Lien that secures payments of such Components.

## Article V — Corporation Covenants

Each Corporation covenants with the Contract Administrator, the Funding Trust, the Specified Hedge Counterparties and with the other Corporation as provided in this Article.

## Section 5.1.   Concerning the Security Interests

*5.1.1.*   The Corporation will not change its name, its place of business or, if more than one place of business, its chief executive office, or its mailing address or organizational identification number, if it has one, without providing prior written notice to the parties hereto at least ten Business Days prior to the effective date of any such change.

*5.1.2.* The Corporation will not, except as expressly permitted by this Agreement, change its type of organization, its jurisdiction of organization, its legal structure or its "location" as determined in Article 9 of the UCC, without the prior written consent of each of the other parties hereto (other than a Corporation).

## Section 5.2. No Conveyance or Assignment

*5.2.1.* The Corporation shall not convey, transfer or assign Funding Trust Receivables under its Service Contract or any interest therein to any Person *other than* the Funding Trust as provided in the Trust Agreement.

*5.2.2.* The Corporation shall not convey, transfer or assign Hedge Payables under its Service Contract or any interest therein to any Person *other than* the Specified Hedge Counterparties as provided herein.

*5.2.3.* The Corporation shall not convey, transfer or assign any Stated Hedge or any interest therein to any Person *other than* as provided in the Service Contract.

## Section 5.3. Negative Pledge

*5.3.1.* The Corporation hereby covenants never to grant, or permit to exist, any other pledge of, security interest in or lien upon the amounts payable by the City under **Section 7.02** of its **Service Contract** in respect of Hedge Periodic Payables, any "securities account" and/or any "deposit account" (as such terms are defined in Sections 8-501(1) and 9-102(cc) of the UCC).

*5.3.2.* The Corporation hereby covenants never to grant, or permit to exist, any other pledge of, security interest in or lien upon the amounts payable by the City under **Section 7.02** of its **Service Contract** in respect of the Hedge Termination Payables, any "securities account" and/or any "deposit account" (as such terms are defined in Sections 8-501(1) and 9-102(cc) of the UCC).

*5.3.3.* The Corporation hereby covenants never to grant, or permit to exist, any other pledge of, security interest in or lien upon the Funding Trust Receivables, any "securities account" and/or any "deposit account" (as such terms are defined in Sections 8-501(1) and 9-102(cc) of the UCC).

## Section 5.4. Defense of Interests; Further Assurance

The Corporation agrees that it will, from time to time, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, any and all financing statements, if applicable, and will take all actions or cause all such actions to be taken as may be required by law or as shall reasonably be requested by any Hedge Counterparty or the Trustee for respectively, the attachment, perfection and/or continuance of any security interests granted by this Agreement or the Trust Agreement for the preservation and protection of all rights of, respectively, the Specified Hedge Counterparties under this Agreement or the Funding Trust under the Trust Agreement.

## Article VI — Events of Default; Remedies

### Section 6.1.  Right of Enforcement

For the avoidance of doubt, all parties to this Agreement shall be entitled to enforce their respective rights except as otherwise provided in **Section 6.9** and **Article VIII**.

### Section 6.2.  Events of Default

Each of the following constitutes an "Event of Default":

6.2.1(1).  the City fails to pay any Funding Trust Receivables as and when the same shall become due under either Service Contract; or

6.2.1(2).  an event occurs described in clause (i), (ii) or (iii) of Section 9.01 of either Service Contract (each, a *Service Contract Acceleration Clause*).

### Section 6.3.  Remedies

Upon the occurrence of an Event of Default and during the continuance thereof, the Contract Administrator may and shall, at the request of Certificateholders representing either:

(i)  at least 25 percent in principal amount of Outstanding Certificates, the payments on which have not been made as a result of such Event of Default (*Affected Certificates*), or

(ii)  at least 50 percent in principal amount of all Outstanding Certificates,

enforce the Service Contract under which the Event of Default occurred by such remedies as are available to the Contract Administrator.

### Section 6.4.  Contract Administrator May File Proofs of Claim

*6.4.1.*  If an event occurs described in any Service Contract Acceleration Clause and a judicial proceeding is commenced in connection therewith, the Contract Administrator is entitled and empowered, by intervention in such proceeding:

6.4.1(1).  to file and prove a claim for the whole amount of the Funding Trust Receivables then due and payable and to file such papers and documents as may be necessary or desirable in order to have the claims of the Contract Administrator (including any claim for reasonable compensation, expenses, disbursements and advances of the Contract Administrator, its agents or counsel) and of the Certificateholders allowed in such judicial proceeding; and

6.4.1(2).  to collect and receive any amounts payable or deliverable on any such claims and to distribute the same;

and any trustee (or similar official) in any such judicial proceeding is hereby authorized by the Funding Trust to make such payments to the Contract Administrator, and in the event the Contract Administrator shall consent to making of such payments directly to the Trustee, to pay to the Contract Administrator any amount due to it for the reasonable compensation, expenses, disbursements and advances of the Contract Administrator, its agents or counsel.

*6.4.2.*  Nothing herein contained shall authorize the Contract Administrator to authorize or consent to or accept or adopt on behalf of any Certificateholder any plan of adjustment or

composition affecting the Certificateholders or the rights of any Holder, or to authorize the Contract Administrator to vote in respect of the claim of any Certificateholder in any such proceeding.

## Section 6.5.   Application of Money Collected.

Any money collected or received by the Contract Administrator pursuant to this Article shall be applied in the order of the Service Contract Priority Sections *except* as otherwise provided in **Section 4.8.2**.

## Section 6.6.   No Duty of Inquiry

*6.6.1.* The Contract Administrator is under no duty to inquire into the performance by the City of its obligations under the Service Contracts; however, *if* the Contract Administrator receives notice (a *Default Notice*) from Holders of either

(i)    at least 25 percent in principal amount of the Outstanding Affected Certificates or

.      (ii)    at least 50 percent in principal amount of all Outstanding Certificates

specifying the failure of the City to pay Funding Trust Receivables *then* the Contract Administrator shall give notice of such failure to the City and demand that such failure be remedied.

*6.6.2.* Upon receipt of any Default Notice, the Contract Administrator shall give notice to all Certificateholders and the Specified Hedge Counterparties that did not join in such Default Notice.

## Section 6.7.   Notice of Defaults.

*6.7.1.* Promptly upon obtaining actual knowledge of the occurrence of any Event of Default, the Contract Administrator shall give written notice of such Event of Default by mail to all Certificateholders, Specified Hedge Counterparties and Rating Agencies *unless* such Event of Default has been cured or waived.

*6.7.2.* Any Insurer who is not then in default under its Credit Insurance shall be entitled to receive all notices in respect of Certificates insured by it, and no notices under **Section 6.7.1** shall be sent to the Holders of such Certificates.

## Section 6.8.   Limitation on Suits by Certificateholders.

No Certificateholder shall have any right to institute any proceeding, judicial or otherwise, under or with respect to the Service Contract *unless*

6.8.1(1).    such Holder has previously given written notice to the Contract Administrator of an Event of Default that is then continuing;

6.8.1(2).    the Holders of either

(i)    at least 25 percent in principal amount of the Outstanding Affected Certificates or

(ii)    at least 50 percent in principal amount of all Outstanding Certificates

have made written request to the Contract Administrator to institute proceedings in respect of such Event of Default in its own name as Contract Administrator;

6.8.1(3). such Holder or Holders have offered to the Contract Administrator satisfactory indemnity against the costs, expenses and liabilities to be incurred in compliance with such request;

6.8.1(4). the Contract Administrator for 30 days after its receipt of such notice, request and offer of indemnity has failed to institute any such proceeding; and

6.8.1(5). in the case of a written request made pursuant to **Section 6.8.1(2)** from the Holders of at least 25 percent in principal amount of the Outstanding Affected Certificates, no direction inconsistent with such written request has been given to the Contract Administrator during such 30-day period by the Holders of a greater percentage of the Holders of Outstanding Affected Certificates (for the avoidance of doubt, this paragraph does not apply when a written request has been made pursuant to **Section 6.8.1(2)** from Holders of at least 50 percent in principal amount of all Outstanding Certificates);

it being understood and intended that no one or more Holders of Certificates shall have any right in any manner to affect, disturb or prejudice the interest of the parties hereto or the rights of any other Holders of Certificates, or to obtain or to seek to obtain priority or preference over any other Holders or to enforce any right under any Service Contract, *except* in the manner herein provided and for the equal and ratable benefit of all Entitled Persons.

### Section 6.9. Control by Majority

*6.9.1.* The Holders of a majority in principal amount of all Outstanding Certificates have the right to direct the time, method and place of conducting any proceeding for any remedy available to the Contract Administrator to exercise any power exercisable by the Contract Administrator (including any proceeding instituted following the delivery of notice pursuant to **Section 6.8.1(2)**); *provided* that such direction is not in conflict with any rule of law or this Agreement.

*6.9.2.* Notwithstanding any other provision hereof, any Insurer not then in default under its Credit Insurance shall:

6.9.2(1). be treated as the Holder of Outstanding Certificates equal to the principal amount of Certificates insured by it for the purposes of actions permitted to be taken by Certificateholders under **this Article** and for the purpose of giving all other consents, directions and waivers that Certificateholders may give; and

6.9.2(2). control all actions that may be taken by any Specified Hedge Counterparty that is the beneficiary of such Credit Insurance, including for purposes of actions permitted to be taken by such Specified Hedge Counterparty under this Agreement and for the purposes of giving all other directions, consents and waivers that such Specified Hedge Counterparty may give.

### Section 6.10. Actions by Beneficial Owners

*6.10.1.* For the purpose of providing any consent, waiver or instruction to the Contract Administrator, *Holder* and *Certificateholder* includes a Person who provides the Contract Administrator an affidavit of beneficial ownership of a Certificate together with satisfactory indemnity against any loss, liability or expense to the Contract Administrator to the extent that it acts on the affidavit of beneficial ownership (including any consent, waiver or instruction given by a Person providing such affidavit and indemnity).

*6.10.2.* The principal amount of Outstanding Certificates owned by a Beneficial Owner meeting the requirements of **Section 6.10.1** shall be deemed held by such Beneficial Owner and *not* held by Certificateholders for the purposes of providing any consent, waiver or instruction to the Contract Administrator.

### Article VII — Concerning the Contract Administrator

### Section 7.1.  Certain Duties and Responsibilities.

*7.1.1.* *Except* during the continuance of an Event of Default:

7.1.1(1).  the Contract Administrator undertakes to perform such duties and only such duties as are specifically set forth in this Agreement, and no implied covenants or obligations shall be read into this Agreement against the Contract Administrator and no permissive power or authority availability to the Contract Administrator shall be considered a duty; and

7.1.1(2).  in the absence of bad faith on its part, the Contract Administrator may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates, documents, other instruments or opinions furnished to the Contract Administrator and conforming to the requirements of this Agreement or the Service Contract; *but* in the case of any such certificates, documents, other instruments or opinions which by any provision hereof or thereof are specifically required to be furnished to the Contract Administrator, the Contract Administrator is under a duty to examine the same to determine whether or not they conform to the requirements of this Agreement.

*7.1.2.* *If* an Event of Default occurs and is continuing, *then* the Contract Administrator shall exercise such of the rights and powers in respect of Funding Trust Receivables and use the same degree of care and skill in their exercise as a prudent corporate trustee would exercise or use under the circumstances.

*7.1.3.* No provision of this Agreement shall be construed to relieve the Contract Administrator from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, *except* that

7.1.3(1).  **this subsection** shall not be construed to limit the effect of **Section 7.1.1**.

7.1.3(2).  the Contract Administrator shall not be liable for any error of judgment made in good faith by an authorized officer of the Contract Administrator, *unless* it is proved that the Contract Administrator was negligent in ascertaining the pertinent facts;

7.1.3(3).  the Contract Administrator shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders of a majority in principal amount of all Outstanding Certificates relating to the time, method and place of conducting any proceeding for any remedy available to the Contract Administrator, or exercising any trust or power conferred upon the Contract Administrator, by or under this Agreement; and

7.1.3(4).  no provision of this Agreement shall require the Contract Administrator to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder or thereunder, or in the exercise of any of its rights or pow-

1974114 0069/401790

17

ers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

*7.1.4.* Whether or not therein expressly so provided, every provision of this Agreement relating to the conduct or affecting the liability of or affording protection to the Contract Administrator is subject to the provisions of this Article.

## Section 7.2. Certain Rights of Contract Administrator.

*Except* as otherwise provided in **Section 7.1.1:**

7.2.1(1). The Contract Administrator may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.

7.2.1(2). Any request, direction or consent of a Corporation mentioned in this Agreement shall be sufficiently evidenced respectively by a Corporation Request, Corporation Order or Corporation Consent.

7.2.1(3). Whenever in the administration of this Agreement, any Service Contract or any Stated Hedge the Contract Administrator shall deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Contract Administrator (unless other evidence be herein specifically prescribed) may, in the absence of bad faith on its part, rely upon a certificate of a representative of the particular Corporation.

7.2.1(4). The Contract Administrator may consult with counsel, and the written advice of such counsel is full and complete authorization and protection in respect of any action taken, suffered or omitted by the Contract Administrator hereunder in good faith and in reliance thereon.

7.2.1(5). The Contract Administrator is under no obligation to exercise any of the rights or powers vested in it by this Agreement at the request or direction of any of the Certificateholders pursuant to this Agreement, *unless* such Certificateholders shall have offered to the Contract Administrator reasonable security or indemnity against the costs, expenses and liabilities which might be incurred by it in compliance with such request or direction.

7.2.1(6). The Contract Administrator shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, or other paper or document, *but* the Contract Administrator, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit.

7.2.1(7). The Contract Administrator may execute any of its powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys and the Contract Administrator shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder.

7.2.1(8). *Except* as provided in **Section 7.3**, the Contract Administrator shall have no duty to see to the recording, filing or registration of any instrument or document (in-

cluding financing or continuation statements or filing under tax or security laws) or any rerecording, refiling or re-registration.

7.2.1(9). The Contract Administrator shall have the right at any time to seek instructions concerning the administration of the Service Contracts from any court of competent jurisdiction.

7.2.1(10). The Contract Administrator shall not have any responsibility to examine or review and shall have no liability for the contents of any documents submitted to or delivered to any Certificateholder or any other Person in the nature of an official statement or offering circular, preliminary or final.

## Section 7.3. Specific Duties of the Contract Administrator

*Except* during an Event of Default or as required by applicable law, the duties of the Contract Administrator are limited to the following:

7.3.1(1). deliver notice to the City to pay Hedge Payables pursuant to Section 7.02 of the respective Service Contract;

7.3.1(2). continue the financing statements filed with respect to the Funding Trust Receivables and Hedge Payables;

7.3.1(3). take such actions in the name and stead of either Corporation as may be required by **Section 5.4**;

7.3.1(4). the specific duties set forth in **Article II** to receive Service Payments;

7.3.1(5). the specific duties set forth in **Articles IV and VI**;

7.3.1(6). notify the City of any realized loss resulting from the investment of Investable Funds, demand immediate payment of such loss and receive payment of such loss;

7.3.1(7). pay to the City any realized gain from the investment of Investable Funds or otherwise apply such gain in accordance with **Section 7.04** of each **Service Contract**;

7.3.1(8). perform such duties, if any, as may be required to be performed by the Contract Administrator in the Specific Terms of a Service Contract;

7.3.1(9). the specific duties set forth in **Article X**;

7.3.1(10). receive, recognize and give effect to a Notice of Transfer Event; and

7.3.1(11). the specific duties set forth in **Article XII**.

## Section 7.4. May Hold Certificates.

The Contract Administrator, in its individual or any other capacity, may become the owner or pledgee of Certificates with the same rights it would have if it were not Contract Administrator.

**Section 7.5.    Money Held in Trust.**

Money held by the Contract Administrator in trust hereunder need not be segregated from other funds except to the extent required by law or by other provision of this Agreement. The Contract Administrator shall be under no liability for interest on any money received by it hereunder.

**Section 7.6.    Compensation and Reimbursement**

*7.6.1.* The Contract Administrator is entitled to payment or reimbursement:

7.6.1(1).    from time to time for reasonable compensation for all services rendered by it hereunder; and

7.6.1(2).    except as otherwise expressly provided herein, upon its request, for all reasonable expenses, disbursements and advances incurred or made by the Contract Administrator in accordance with any provision of this Agreement (including, without limitation, the reasonable compensation and the expenses and disbursements of its agents and counsel), except any such expense, disbursement or advance as may be attributable to the Contract Administrator's negligence, willful misconduct or bad faith.

*7.6.2.* The Contract Administrator is also entitled to indemnification for, and to be held harmless against, any loss, liability or expense incurred without negligence, willful misconduct or bad faith on its part, arising out of or in connection with the acceptance or administration of this Agreement or the exercise of it powers hereunder, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder.

*7.6.3.* The compensation, expenses and indemnification of the Contract Administrator hereunder shall constitute Contract Administrator Payments, a Component of Service Payments as provided in the Service Contracts.

**Section 7.7.    Lien of Contract Administrator**

The Contract Administrator shall not have any lien on any funds held by it under this Agreement.

**Section 7.8.    Corporate Contract Administrator Required; Eligibility.**

*7.8.1.* There shall at all times be a Contract Administrator hereunder which is a trust company or bank with trust powers organized under the laws of the United States of America or of any state of the United States with a combined capital and surplus of at least $50,000,000. *If* such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of such supervising or examining authority, *then* for the purposes of **this Section**, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published.

*7.8.2.* The Contract Administrator shall resign immediately in the manner and with the effect specified in this Article if it becomes ineligible under **this Section**.

**Section 7.9.    Replacement of Contract Administrator.**

*7.9.1.* No Vacancy.

No resignation or removal of the Contract Administrator and no appointment of a successor Contract Administrator pursuant to this Article shall be effective until the successor Contract Administrator accepts its appointment as provided in **this Section**.

*7.9.2.* Resignation.

The Contract Administrator may resign at any time, but such resignation shall become effective only in accordance with **Section 7.9.1**, above. A resigning Contract Administrator shall give notice of its resignation to each Insurer.

*7.9.3.* Removal by Certificateholders.

7.9.3(1). The Holders of a majority in principal amount of Outstanding Certificates may remove the Contract Administrator by so notifying the Contract Administrator.

7.9.3(2). If the Contract Administrator becomes ineligible under **Section 7.8**, any Certificateholder may petition a court of competent jurisdiction for the appointment of a successor.

*7.9.4.* Appointment of Successor.

7.9.4(1). The retiring Contract Administrator or the Corporations may appoint a successor at any time prior to the date on which a successor Contract Administrator takes office.

7.9.4(2). If a successor Contract Administrator does not take office within 45 days after the retiring Contract Administrator resigns or is removed, any Certificateholder may petition a court of competent jurisdiction for the appointment of a successor Contract Administrator.

7.9.4(3). Within one year after a successor Contract Administrator appointed by the Corporations or a court of competent jurisdiction takes office, the Holders of a majority in principal amount of Outstanding Certificates may appoint a successor Contract Administrator to replace such successor Contract Administrator.

*7.9.5.* Acceptance of Appointment.

7.9.5(1). A successor Contract Administrator shall deliver written acceptance of its appointment to the retiring Contract Administrator, each of the other parties hereto and to each Insurer. Thereupon the resignation or removal of the retiring Contract Administrator shall be effective, and the successor Contract Administrator shall have all the rights, powers and duties of the Contract Administrator under the Trust Agreement.

7.9.5(2). The successor Contract Administrator shall mail a notice of its succession to the Certificateholders.

7.9.5(3). Upon the appointment of a successor Contract Administrator becoming effective as provided in **this Section**, the retiring Contract Administrator shall promptly transfer all property held by it as Contract Administrator to the successor Contract Administrator.

**Section 7.10. Merger, Consolidation and Succession to Business.**

*7.10.1.* If the Contract Administrator consolidates, merges or converts into, or transfers all or substantially all its corporate trust business to, another corporation, the successor corpora-

tion without any further act shall be the successor Contract Administrator *if* such successor corporation is eligible under **Section 7.8**.

*7.10.2.* The successor Contract Administrator may adopt the authentication of Certificates authenticated by the predecessor Contract Administrator and deliver such Certificates with the same effect as if the successor Contract Administrator had authenticated such Certificates.

## Article VIII — Enforcement of Rights

### Section 8.1.    Effectiveness of Article

At any time of determination, **this Article** shall be in force and effective *if, but only if,* all Insurers are then in default under their respective Credit Insurance.

### Section 8.2.    Article Controlling

Whether or not herein expressly so provided, every provision of this Agreement relating to the enforcement of rights and remedies by any of the parties hereto, and their successors and assigns, is subject to the provisions of **this Article** notwithstanding anything in this Agreement to the contrary.

### Section 8.3.    Certain Definitions

*Affected Parties* means the Holders of Outstanding Certificates and Specified Hedge Counterparties affected by a particular Article 8 Event of Default; *affected Outstanding Certificates* and *affected Stated Hedges* have correlative meanings.

*Article 8 Event of Default* means any Event of Default described in Article VI or the City fails to pay any Hedge Payable as and when the same shall become due.

*Controlling Affected Parties* means on any particular date the Affected Parties in good standing having a majority of the Article 8 pro rata interests.

*Enforcement Committee* means the committee established pursuant to this Article.

*Enforcement Officer* means the same Person as the Person who is acting as Contract Administrator but in *its* separate capacity and not as Contract Administrator unless and until a successor Enforcement Officer is selected and thereafter *Enforcement Officer* means such successor.

### Section 8.4.    Determination of Article 8 *Pro Rata*

*8.4.1.* The *Combined Denominator* for determining Article 8 pro rata interests is the sum of (i) the total principal amount of all then affected Outstanding Certificates *and* (ii) the total of the maximum termination payments of the affected Specified Hedge Counterparties insured under the Credit Insurance.

*8.4.2.* When used with respect to affected Outstanding Certificates, *Article 8 pro rata* means a fraction, the numerator of which is the principal amount of the particular affected Outstanding Certificate and the denominator of which is the Combined Denominator.

*8.4.3.* When used with respect to affected Stated Hedges, *Article 8 pro rata* means a fraction, the numerator of which is the maximum termination payments of the particular affected

Specified Hedge Counterparty insured under the Credit Insurance and the denominator of which is the Combined Denominator.

*8.4.4.* Article 8 pro rata interests determined for the purposes of **Section 8.7.1(2)(i)**, shall be determined for all Certificateholders and all Specified Hedge Counterparties without consideration of whether or not they are affected by the particular Article 8 Event of Default.

## Section 8.5.    Determination of *Good Standing*

An Affected Party is in *good standing* as of any particular date when it, or it and all others acting with it on a collective basis, have met all requirements by the Enforcement Officer for contributions to payments of its fees, expenses and indemnification.

## Section 8.6.    Insurers

Any Insurer not in default under its Credit Insurance that is insuring Article 8 pro rata interests of an Affected Party shall be the only Affected Party with respect to those interests for all purposes of **this Article**.

## Section 8.7.    Duration of *Exclusive Action Period*

*8.7.1.* An Exclusive Action Period commences upon the occurrence of an Article 8 Event of Default and ends on the date the earliest of the following occur with respect to the particular Article 8 Event of Default:

8.7.1(1).   the Enforcement Officer fails to call the initial meeting of the Enforcement Committee within the time required by **Section 8.9.1**;

8.7.1(2).   at the initial meeting of the Enforcement Committee,

(i)   less than 25% of the Article 8 pro rata interests of the Certificateholders and Specified Hedge Counterparties are in good standing and are present or

(ii)   the Enforcement Committee does not authorize the Enforcement Officer to take action;

8.7.1(3).   at a subsequent meeting of the Enforcement Committee, the Enforcement Committee properly directs the Enforcement Officer to discontinue taking all action;

8.7.1(4).   at the time the Enforcement Officer gives notice to all Affected Parties that it properly intends to take no further action;

8.7.1(5).   the Enforcement Officer has been directed to take one or more enforcement actions by the Enforcement Committee and does not commence any such action within 30 days after being so directed;

8.7.1(6).   a final decision or judgment is rendered that does not require the City to pay the full amount of the Funding Trust Receivables or the Hedge Payables for which the action was commenced;

8.7.1(7).   a final judgment against the City is not satisfied in full by the end of the City's fiscal year following the fiscal year in which such final judgment is rendered.

*8.7.2.* As used in this Section, *a proper direction* of the Enforcement Committee is a direction not contrary to **Section 8.10**, and *a proper action* of the Enforcement Officer is an action that is not contrary to a proper direction of the Enforcement Committee.

*8.7.3.* As used in this Section, a *final decision* or *judgment* is a judgment or decision for which the time for the appeal thereof has expired, and no appeal thereof has been taken.

## Section 8.8.  Other Actions Stayed

*8.8.1.* Except by acting through the Enforcement Committee, no Affected Party may take any action to enforce its rights with respect to a particular Article 8 Event of Default until the Exclusive Action Period terminates with respect to such Article 8 Event of Default.

*8.8.2.* Except by acting through the Enforcement Committee, no Affected Party may take any action during the Exclusive Action Period that purports to bind the Enforcement Officer without the prior authorization of the Enforcement Committee.

*8.8.3.* The Contract Administrator shall not take any action under **Article VI** with respect to a particular Event of Default until the Exclusive Action Period terminates with respect to such Event of Default.

## Section 8.9.  Establishment of Enforcement Committee

*8.9.1.* Within 30 days after having knowledge of an Article 8 Event of Default whether in its capacity as Enforcement Officer or indirectly as Contract Administrator, the Enforcement Officer shall notify the parties hereto and call the initial meeting of the Enforcement Committee.

*8.9.2.* If the Enforcement Officer will be requiring indemnity or any fees and anticipated expenses to be provided in advance of taking any action, the Enforcement Officer shall indicate such requirements in its notice.

*8.9.3.* Each party hereto attending the initial meeting shall establish to the satisfaction of the Enforcement Officer that it is an Affected Party and its Article 8 pro rata interests.

## Section 8.10.  Meeting Required

No action or direction of the Enforcement Committee is effective for any purpose of **this Article** *unless* it is duly authorized at a meeting of the Enforcement Committee.

## Section 8.11.  Notice of Meeting of Enforcement Committee

*8.11.1.* Notice shall be given not less than ten Business Days before a meeting of the Enforcement Committee.

8.11.1(1).  Notice to the Holders of the affected Outstanding Certificates (including Beneficial Owners as provided in **Section 6.10**) shall be given as provided in **Section 6.7**, and all Beneficial Owners of such Outstanding Certificates shall be bound by any action properly taken at the meeting called in such notice.

8.11.1(2).  Notice to the affected Specified Hedge Counterparties shall be given to them at their respective notice addresses in this Agreement.

*8.11.2.* Notice may be waived before, at or within two Business Days after a meeting. Any Person entitled to notice of a meeting shall be conclusively presumed to have had proper

notice of such meeting *if* such Person attends such meeting other than for the sole purpose of objecting to the holding of such meeting.

*8.11.3.* Any defect in the giving of notice shall not invalidate such notice or any action taken at a meeting pursuant thereto if a majority of Article 8 pro rata interests of , respectively, the affected Holders of Outstanding Certificates and the affected Specified Hedge Counterparties received or waived proper notice.

*8.11.4.* Each notice shall specify the time and location of the particular meeting and provide a summary statement of the purpose of the meeting.

8.11.4(1). Each meeting shall be held at a location determined by the Enforcement Officer in the City of Detroit, Michigan, or at such other city agreed to by the Enforcement Officer and concurrent majorities of the Article 8 pro rata interest of the Holders of affected Outstanding Certificates and of the affected Specified Hedge Counterparties.

8.11.4(2). A summary statement of the purposes of such meeting is not required to state any particulars thereof or the actions to be proposed thereat.

## Section 8.12. Meetings of Enforcement Committee

*8.12.1.* No meeting of the Enforcement Committee shall be effective if it is not held pursuant to notice given in accordance with **Section 8.11**.

*8.12.2.* Only Affected Parties in good standing are permitted to vote at a meeting of the Enforcement Committee.

*8.12.3.* A single Affected Party in good standing present at a meeting of the Enforcement Committee constitutes a quorum for the purposes of that meeting.

*8.12.4.* The Enforcement Officer shall adjourn any meeting of the Enforcement Committee *sine die* at which a quorum is not present; *provided* that

8.12.4(1). the Enforcement Officer, at its election, may adjourn such meeting to a day certain not more than 10 days after the date of such meeting;

8.12.4(2). an adjourned meeting may only be adjourned *sine die*; and

8.12.4(3). an adjourned meeting is subject to the notice requirements of **Section 8.11**.

*8.12.5.* All actions at an Enforcement Committee meeting shall be taken by affirmative vote of a majority of the Article 8 pro rata interests of the Affected Parties present and voting at such meeting.

*8.12.6.* Meetings of the Enforcement Committee may be conducted by telephone so long as the participants in the meeting can concurrently speak to and hear each other.

*8.12.7.* Affected Parties in good standing may participate in a meeting in person or by representative or by telephone.

## Section 8.13. Enforcement Committee Actions Binding

All actions properly taken by the Enforcement Committee or by the Enforcement Officer are binding on every Certificateholder and Specified Hedge Counterparty.

**Section 8.14. Duties of Enforcement Officer**

*Subject* to **Section 8.18**, the Enforcement Officer only has the duty to (i) call the initial meeting of the Enforcement Committee and (ii) follow proper directions of the Enforcement Committee.

**Section 8.15. Control by Enforcement Committee**

*8.15.1.* The Enforcement Committee shall direct the time, method and place of conducting any proceeding for any remedy available to the Enforcement Officer to exercise any power exercisable by the Enforcement Officer.

*8.15.2.* Except for calling the initial meeting of the Enforcement Committee, the Enforcement Officer shall only take such actions under **this Article** that are directed by the Enforcement Committee.

**Section 8.16. Actions for Equal and Ratable Benefit**

All actions of the Enforcement Officer shall be taken for the equal and ratable benefit of all Affected Parties in good standing.

**Section 8.17. Application of Money Collected**

All money collected by the Enforcement Officer shall be applied in accordance with the Service Contract Priority Sections.

**Section 8.18. Certain Rights of the Enforcement Officer**

The Enforcement Officer shall have the rights set forth in **this Section**.

*8.18.1.* The Enforcement Officer shall not be liable with respect to any action taken or omitted to be taken by it in accordance with any proper direction of the Enforcement Committee.

*8.18.2.* No provision of this Agreement shall require the Enforcement Officer to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers.

*8.18.3.* Whether or not expressly so provided, every provision of **this Article** relating to the conduct or affecting the liability of or affording protection to the Enforcement Officer is subject to the provisions of **this Section**.

*8.18.4.* The Enforcement Officer may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, instrument, opinion, report notice, request, direction, consent, order, bond, debenture or other paper or document believed by it to be genuine or to have been signed or presented by the proper party or parties.

*8.18.5.* Any direction of the Enforcement Committee shall be evidenced by a certificate of the officer of the Enforcement Committee charged with maintaining the official records of the Enforcement Committee stating in effect that the document purporting to be such direction is in fact a true and complete copy of a direction duly given by the Enforcement Committee at a meeting at which a quorum was present and acted throughout.

*8.18.6.* The Enforcement Officer (unless other evidence is herein specifically prescribed) may, in the absence of bad faith on its part, rely on a certificate of a representative of an Affected Party

*8.18.7.* The Enforcement Officer may consult with counsel, and the written advice of such counsel is full and complete authorization and protection in respect of any action taken or suffered or omitted by the Enforcement Officer hereunder in good faith and in reliance thereon.

*8.18.8.* The Enforcement Officer shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, instrument, opinion, report notice, request, direction, consent, order, bond, debenture or other paper or document, *but* the Enforcement Officer, in its discretion, may make such further inquiry or investigation into such facts or matters as it sees fit.

*8.18.9.* The Enforcement Officer may execute any of its powers under **this Article** or perform any duties under **this Article** either directly or through agents or attorneys, and the Enforcement Officer shall not be responsible for any negligence on the part of any such agent or attorney appointed with due care by it under **this Article**.

### Section 8.19. Compensation and Reimbursement

*8.19.1.* The Enforcement Officer is entitled to payment or reimbursement:

8.19.1(1). from time to time for reasonable compensation for all services rendered by it hereunder; and

8.19.1(2). except as otherwise expressly provided herein, upon its request, for all reasonable expenses, disbursements and advances incurred or made by the Enforcement Officer in accordance with any provision of this Agreement (including, without limitation, the reasonable compensation and the expenses and disbursements of its agents and counsel), except any such expense, disbursement or advance as may be attributable to the Enforcement Officer's negligence, willful misconduct or bad faith.

*8.19.2.* The Enforcement Officer is also entitled to indemnification for, and to be held harmless against, any loss, liability or expense incurred without negligence, willful misconduct or bad faith on its part, arising out of or in connection with the acceptance or administration of this Agreement or the exercise of it powers hereunder, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder.

*8.19.3.* The compensation, expenses and indemnification of the Enforcement Officer hereunder shall be an Additional Service Payment under the Service Contracts.

### Section 8.20. Corporate Enforcement Officer Required; Eligibility.

*8.20.1.* There shall at all times be an Enforcement Officer hereunder which is a trust company or bank with trust powers organized under the laws of the United States of America or of any state of the United States with a combined capital and surplus of at least $50,000,000. *If* such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of such supervising or examining authority, *then* for the purposes of **this Section**, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published.

*8.20.2.* The Enforcement Officer shall resign immediately in the manner and with the effect specified in **this Article** if it becomes ineligible under **this Section**.

**Section 8.21.  Replacement of Enforcement Officer.**

*8.21.1.* No Vacancy.

No resignation or removal of the Enforcement Officer and no appointment of a successor Enforcement Officer shall be effective until the successor Enforcement Officer accepts its appointment as provided in **this Section**.

*8.21.2.* Resignation.

8.21.2(1).  The Enforcement Officer may resign at any time but only for a permitted reason, and such resignation shall become effective only in accordance with **Section 8.21.1**, above.

8.21.2(2).  The Enforcement Officer may resign only if (i) it is no longer eligible under **Section 8.20.1** or (ii) it determines such resignation is necessary to resolve a conflict with its duties as Contract Administrator or Trustee.

*8.21.3.* Removal by Affected Parties.

8.21.3(1).  The Enforcement Committee may remove the Enforcement Officer by so notifying the Enforcement Officer and the parties hereto.

8.21.3(2).  If the Enforcement Officer becomes ineligible under **Section 8.20.1**, any Affected Party may petition a court of competent jurisdiction for the appointment of a successor.

*8.21.4.* Appointment of Successor.

8.21.4(1).  The Enforcement Committee has the power to appoint a successor Enforcement Officer, but if the Enforcement Committee fails to act within 30 days after the retiring Enforcement Committee resigns or is removed, the retiring Enforcement Officer or an Affected Party (whoever is first to act) may appoint a successor.

8.21.4(2).  If a successor Enforcement Officer does not take office within 45 days after the retiring Enforcement Officer resigns or is removed, any Controlling Affected Party may petition a court of competent jurisdiction for the appointment of a successor Enforcement Officer.

8.21.4(3).  Within one year after a successor Enforcement Officer appointed other than by the Enforcement Committee pursuant to **Section 8.21.4(1)** or **Section 8.21.4(2)** takes office, the Enforcement Committee may appoint a successor Enforcement Officer to replace such successor Enforcement Officer.

*8.21.5.* Acceptance of Appointment.

8.21.5(1).  A successor Enforcement Officer shall deliver written acceptance of its appointment to the retiring Enforcement Officer and to each of the other parties hereto. Thereupon the resignation or removal of the retiring Enforcement Officer shall be effective, and the successor Enforcement Officer shall have all the rights, powers and duties of the Enforcement Officer under **this Article**.

8.21.5(2). The successor Enforcement Officer shall mail a notice of its succession to all of the parties hereto.

8.21.5(3). Upon the appointment of a successor Enforcement Officer becoming effective as provided in **this Section**, the retiring Enforcement Officer shall promptly transfer all property held by it as Enforcement Officer to the successor Enforcement Officer.

**Section 8.22. Merger, Consolidation and Succession to Business.**

*8.22.1.* If the Enforcement Officer consolidates, merges or converts into, or transfers all or substantially all its corporate trust business to, another corporation, the successor corporation without any further act shall be the successor Enforcement Officer *if* such successor corporation is eligible under **Section 8.20.1**. The successor Enforcement Officer may adopt the authentication of Certificates authenticated by the predecessor Enforcement Officer and deliver such Certificates with the same effect as if the successor Enforcement Officer had authenticated such Certificates.

**Section 8.23. Proof of Status**

*8.23.1.* A Person (other than a Beneficial Owner) shall prove its status as an Affected Party by submitting an affidavit to the Enforcement Officer stating that such Person is a Certificateholder or a Specified Hedge Counterparty and stating such facts, sufficient in the reasonable judgment of the Enforcement Officer, as are necessary to show that it is an affected Certificateholder or Specified Hedge Counterparty.

*8.23.2.* A Beneficial Owner shall prove its status as an Affected Party by submitting an affidavit and indemnity to the Enforcement Officer meeting the requirements of **Section 6.10** (as if such requirements were in respect of the Enforcement Officer) and by including in such affidavit a statement of facts stating such facts, sufficient in the reasonable judgment of the Enforcement Officer, as are necessary to show that it is affected by the particular Article 8 Event of Default.

*8.23.3.* The principal amount of Outstanding Certificates owned by a Beneficial Owner meeting the requirements of **Section 8.23.2** shall be deemed held by such Beneficial Owner and *not* held by Certificateholders for the purposes of **this Article**.

**Article IX — Agreements Among the Parties.**

**Section 9.1. Sharing Excess Payments Among the Parties**

Each party hereto agrees with each other party hereto that if any such party receives payments in excess of or out of the order or priority established in the Service Contract Priority Sections, whether voluntary or involuntary, by realization upon security, through the exercise of any right of set-off or banker's lien (whether based on common law, statute, contract or otherwise) (excluding applications of funds pursuant to non-default contract rights), by counterclaim or cross action or by the enforcement of any right hereunder or under any of the Service Contracts, that any such amount shall be returned to the Contract Administrator for proper distribution in accordance with the amount, the order and priority as set forth in the Service Contract Priority Sections other than to the extent provided in **Section 4.8.2**.

### Section 9.2. Independent Actions by the Parties

*Except* as otherwise provided in **Article VI** or **Article VIII**, nothing contained in this Agreement shall prohibit any Hedge Counterparty, the Funding Trust or any Certificateholders from exercising any rights, remedies or options it may have hereunder or under any Service Contract or at law or in equity, including, instituting legal action against the City, the Contract Administrator, any Corporation or any other party hereto to obtain a judgment or other legal process in respect of such Contract Payment, but any funds received from the City, the Contract Administrator, any Corporation or any other party hereto in connection with any recovery therefrom shall be subject to the terms of the Service Contract Priority Sections of the respective Service Contract; *provided* that, any action to enforce remedies with respect to Collateral may be taken only by the applicable Insurer, or if such Insurer is in default under its Credit Insurance, a party that has a Creditor Lien on such Collateral.

### Section 9.3. Relation of Parties

*9.3.1.* This Agreement is entered into solely for the purposes set forth herein, and, except as otherwise provided herein, no party assumes any responsibility to any other party hereto to advise such other party of information known to such other party regarding the financial condition of any other party or of any other circumstances bearing upon the risk of nonpayment of any Contract Payment.

*9.3.2.* Each party specifically acknowledges and agrees that nothing contained in this Agreement is or is intended to be for the benefit of the City and nothing contained herein shall limit or in any way modify any of the obligations of the City to the parties.

### Section 9.4. Acknowledgment of Documents

Each party hereto (i) expressly acknowledges the existence and validity of the Service Contracts and the Trust Agreement and that it has had an opportunity to review the Service Contracts and the Trust Agreement, (ii) agrees not to contest or challenge the validity of the Service Contracts and the Trust Agreement and (iii) agrees that the judicial or other determination of the invalidity of the Service Contracts and the Trust Agreement shall not affect the provisions of this Agreement.

### Section 9.5. Notice of Certain Events

*9.5.1.* The Contract Administrator agrees that, within one day after obtaining actual knowledge of the City failing to pay any amounts in respect of any Hedge Payable, it shall notify each other party hereto of such occurrence.

*9.5.2.* The Contract Administrator shall give the other parties hereto a copy of any notice or other communication given by it to or received from any other party hereto or the City with respect to any Article 8 Event of Default (even though Article 8 may not be in effect at the time) or with respect to any other occurrence that would give any party hereto the right to exercise remedies under any such documents or this Agreement.

*9.5.3.* Each party shall, within one Business Day of its taking any action described in Section 9.2, give each other party hereto notice of the taking of such action.

**Section 9.6. Remedies Not Waived.**

No failure of a party hereto to perform any obligation or honor any agreement under this Agreement shall affect the obligations of the other parties under the Service Contracts or hereunder; *provided*, however, that the other parties hereto shall each have full right and power to enforce the obligations, covenants and agreements of each other party hereto directly against such other party by suit for specific performance or claims for damages or a combination of the foregoing. In the event of any dispute between or among any of the parties hereto arising out of this Agreement, the prevailing party or parties shall be entitled to recover from the losing party or parties, all fees, costs and expenses, including, without limitation, attorneys' fees, incurred by such prevailing party or parties in connection with such dispute.

**Section 9.7. Possession of Collateral.**

Each party hereto agrees that, if at any time such party possesses Collateral or a Creditor Lien thereon, such party holds such Collateral or Creditor Lien for the benefit of all the parties that have a Creditor Lien on such Collateral.

**Article X Concerning Each Insurer**

**Section 10.1. Actions by Insurer**

An Insurer may exercise any power or right given it by this Agreement only if it is not then in default under its Credit Insurance.

**Section 10.2. Party in Interest**

Each Insurer shall be included as a party in interest and as a party entitled to (i) notify either Corporation, the Contract Administrator or any applicable receiver of the occurrence of an Event of Default and (ii) request the Contract Administrator or receiver to intervene in judicial proceedings that affect the Certificates, the Stated Hedges or the security therefor, *subject* to the terms of this Agreement. The Contract Administrator is required to accept notice of an Event of Default from such Insurer.

**Section 10.3. Amendments; Notice to Rating Agencies**

Any amendment or supplement to this Agreement or either Service Contract shall be subject to the prior written consent of each Insurer. Each Rating Agency shall receive notice of each amendment and a copy thereof at least 15 days in advance of its execution or adoption. Each Insurer shall be provided with a full transcript of all proceedings relating to the execution of any such amendment or supplement.

**Section 10.4. Reporting**

*10.4.1.* The Contract Administrator shall give each Insurer a copy of each Optional Redemption Notice it receives from a Corporation promptly upon the receipt thereof and, if known to the Contract Administrator, the CUSIP numbers of the Certificates affected thereby. The same information shall be provided to both Insurers.

*10.4.2.* The Contract Administrator shall provide each Insurer with such additional information as the Insurer may reasonably request from time to time that is known to the Contract Administrator.

### Section 10.5. Fees and Expenses

*10.5.1.* The Corporation shall pay or reimburse each Insurer for any and all charges, fees, costs and expenses that the Insurer may reasonably pay or incur in connection with the following:

10.5.1(1). the administration, enforcement, defense or preservation of any rights or security hereunder or under any document contemplated hereby;

10.5.1(2). the pursuit of any remedies hereunder or under any document contemplated hereby or otherwise afforded by law or equity,

10.5.1(3). any amendment, waiver or other action with respect to or related to this Agreement or any document contemplated hereby whether or not executed or completed;

10.5.1(4). the violation by either Corporation of any law, rule or regulation or any judgment, order or decree applicable to it;

10.5.1(5). any advances or payments made by an Insurer to cure defaults of the Corporation hereunder or any document contemplated hereby; or

10.5.1(6). any litigation or other dispute in connection with this Agreement, any document contemplated hereby or the transactions contemplated hereby or thereby, other than amounts resulting from the failure of an Insurer to honor its payment obligations under its respective Credit Insurance.

*10.5.2.* Each Insurer reserves the right to charge a reasonable fee as a condition to executing any amendment, waiver or consent proposed in respect of this Agreement or any document contemplated hereby.

*10.5.3.* The obligations of each Corporation to an Insurer shall survive discharge and termination of this Agreement or any document contemplated hereby.

*10.5.4.* Payments pursuant to this provision shall constitute an Additional Service Charge under each Service Contract payable as set forth in **Section 9.09** of each **Service Contract**.

### Article XI Miscellaneous

### Section 11.1. Addresses for Notices.

All notices and other communications provided for hereunder shall be in writing unless otherwise stated herein mailed, sent or delivered:

11.1.1(1). if to the City, at its address set forth in a Service Contract

11.1.1(2). if to a Corporation, at its address set forth in the respective Service Contract

11.1.1(3). if to the Contract Administrator, at
U.S. Bank National Association
535 Griswold, Suite 550
Detroit, Michigan 48226
Attention: Susan T. Payne

11.1.1(4). if to any of the following to the extent that it is a <u>Rating Agency</u> at the time,

>Standard & Poor's Ratings Services
>55 Water Street, 38th Floor
>New York, New York 10041
>
>Moody's Investors Service
>99 Church Street
>New York, New York 10007
>Attention:  Public Finance Group
>
>Fitch Ratings
>1 State Street Plaza
>New York, New York 10004
>Attention:  Municipal Structured Finance

11.1.1(5). if to Financial Guaranty Insurance Company at
>125 Park Avenue
>New York, NY 10017
>Attention: Risk Management

11.1.1(6). if to XL Capital Assurance Inc. at
>1221 Avenue of the Americas
>New York, NY 10020
>Attention: Surveillance

11.1.1(7). if to a Specified Hedge Counterparty, at its address shown opposite its signature on a signature page hereto,

or to such other address as such Person may specify to the other Person and shall be effective (i) if given by mail, 3 Business Days after such communication is deposited in the mails with first class postage prepaid or (ii) if given by any other means, when delivered at the address specified in or pursuant to this Section.

## Section 11.2.  Amendment

This Agreement may be amended only by written instrument signed by the parties hereto.

## Section 11.3.  No Waiver; Remedies.

No failure on the part of the Contract Administrator to exercise, and no delay in exercising, any right hereunder shall be a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other further exercise thereof or the exercise of any other right.

## Section 11.4.  Binding Obligation.

This Agreement is binding upon the parties hereto and their successors and assigns.

## Section 11.5.  Assignment.

No assignment by any party of its interests herein shall be valid.

### Section 11.6. Third Party Beneficiaries

*11.6.1.* Each of the Third Party Beneficiaries not a signatory hereto may rely on the respective representations and warranties of each Corporation as if such representations and warranties were made to it.

*11.6.2.* The covenants of each Corporation made herein are also made for the benefit of each of such Third Party Beneficiaries, each of whom may enforce the same as if it were a party hereto.

*11.6.3.* Any amendment that diminishes the rights and remedies of any such Third Party Beneficiary without the prior written consent of such Third Party Beneficiary is acknowledged to have the effect in fact of hindering, delaying and defrauding such Third Party Beneficiary.

### Section 11.7. Reliance on Representations and Warranties

Each party to this Agreement and each Third Party Beneficiary shall be conclusively presumed to have relied upon the representations and warranties contained herein, and such reliance shall survive any investigation made by such Person.

### Section 11.8. Governing Law

The rights and obligations of the parties hereunder shall be governed by and construed in accordance with the law of the State of Michigan exclusive of its conflicts of law rules.

### Section 11.9. Headings

Article and Section headings in the Service Contract are included herein for convenience of reference only and do not constitute a part of the Service Contract for any other purpose.

### Section 11.10. Integration

This Agreement is intended by the parties as the final, complete and exclusive statement of the transactions evidenced by this Agreement. All prior contemporaneous promises, agreements and understandings relating to such transaction, whether oral or written, are deemed to be superseded by this Agreement, and no party is relying on any promise, agreement or understanding not set forth or referred to in this Agreement.

### Section 11.11. Counterparts

This Agreement may be executed in multiple counterparts, *but* all such counterparts taken together shall evidence by one and the same original.

### Article XII

### Section 12.1. Supplements

*12.1.1.* Non-Tender Amount Supplement Agreement and the Tender Amount Supplement Agreement (each of which, a Supplement and together, the Supplements) appended hereto are made as part of the Agreement for all purposes, including **Article VII.**

### Section 12.2. Duties of Contract Administrator

The Contract Administrator shall perform the duties set forth in each Supplement.

**In Witness Whereof,** the parties hereto have set their respective hands on and as of the date first written above.

*[Signatures appear on pages S-1 et seq.]*

*[Signature Page to Contract Administration
Agreement among the Detroit Retirement
Systems Funding Trust 2006, the Detroit
General Retirement System Service Corporation
and the Detroit Police and Fire Retirement System
Service Corporation, severally and not jointly,
U.S. Bank National Association, separately
and not as Trustee of the Detroit Retirement
Systems Funding Trust 2006, and the Other Persons
Parties Hereto]*

**Detroit Retirement Systems Funding Trust 2006**
By **U.S. Bank National Association, Trustee**

By _____
Susan T. Payne
Vice President

**U.S. Bank National Association,**
separately and not as Trustee of the Detroit Retirement
Systems Funding Trust 2006

By _____
Susan T. Payne
Vice President

S-1

*[Signature   Page   to   Contract
Administration Agreement between the
Detroit Retirement Systems Funding
Trust 2006 the Detroit General
Retirement      System      Service
Corporation and the Detroit Police and
Fire   Retirement   System   Service
Corporation, severally and not jointly,
and U.S. Bank National Association,
separately and not as Trustee of the
Detroit Retirement Systems Funding
Trust 2006 and the Other Persons
Parties Hereto]*

**Detroit General Retirement System Service Corporation**

By _____

Roger Short
President

**Detroit Police and Fire Retirement System Service Corporation**

By _____

Roger Short
President

*[Signature Page to Contract Administration
Agreement among the Detroit Retirement
Systems Funding Trust 2006, the Detroit
General Retirement System Service Corporation
and the Detroit Police and Fire Retirement System
Service Corporation, severally and not jointly,
U.S. Bank National Association, separately
and not as Trustee of the Detroit Retirement
Systems Funding Trust 2006, and the Other Persons
Parties Hereto]*

**UBS AG**

By _____

John J. Magovern
Director & Counsel
Region Americas Legal
Fixed Income Section

By _____

Stephen A. Thatcher
Director and Counsel
Region Americas Legal
Fixed Income Section

UBS notice address is:

UBS Securities LLC
1285 Avenue of the Americas, 15th Floor
New York, New York 10019
Attention: Rhahime Bell
Facsimile: (212) 713-1303

and with a copy to:

UB AG, Stamford Branch
677 Washington Blvd.
Stamford, Connecticut 06912-0300
Attention: Legal Department
Facsimile: (203) 719-0680

S-3

*[Signature Page to **Contract Administration Agreement** among the **Detroit Retirement Systems Funding Trust 2006**, the **Detroit General Retirement System Service Corporation** and the **Detroit Police and Fire Retirement System Service Corporation**, severally and not jointly, **U.S. Bank National Association**, separately and not as Trustee of the Detroit Retirement Systems Funding Trust 2006, and the **Other Persons Parties Hereto**]*

**SBS Financial Products Company, LLC**

By _____
        John Carter
        President

SBS Financial notice address is:

SBS Financial Products Company, LLC
100 Wall Street, 22ND Floor
New York, New York 10005
Attention: John Carter
Facsimile: (646) 576-9684

*[Signature Page to Contract Administration Agreement among the Detroit Retirement Systems Funding Trust 2006, the Detroit General Retirement System Service Corporation and the Detroit Police and Fire Retirement System Service Corporation, severally and not jointly, U.S. Bank National Association, separately and not as Trustee of the Detroit Retirement Systems Funding Trust 2006, and the Other Persons Parties Hereto]*

## Merrill Lynch Capital Services, Inc.

By _____
James Nacos
Authorized Signatory

Merrill Lynch Capital notice address is:

Merrill Lynch Capital Services, Inc.
Merrill Lynch World Headquarters
4 World Financial Center, 18TH Floor
New York, New York 10080
Attention: Swap Group
Facsimile: (646) 805-0218

with a copy to:

GMI Counsel
Merrill Lynch World Headquarters
4 World Financial Center, 12TH Floor
New York, New York 10080
Attention: Swaps Legal
Facsimile: (212) 449-6993

S-5

Exhibit 4.5

### Funds and Accounts

| 12.2.1(1). Funds and Accounts | Component to be Credited[1] | Property Owners | Entitled Person(s) |
|---|---|---|---|

12.2.1(2). Interest Related Payments Fund

| | | | |
|---|---|---|---|
| Deficit Service Charges Account | Clause Second, Deficit Service Charges | Funding Trust | Distributed to Trustee as Deficit Interest Related Payments on the Applicable Distribution Date |
| Deficit Hedge Periodic Payables Account | Clause Second, Deficit Hedge Periodic Payables | the Corporations pro-rata as their interests may appear | Paid to the Specified Hedge Counterparties when due as Deficit Hedge Periodic Payables |
| Current Service Charges Account | Clause Third, Current Service Charges | Funding Trust | Distributed to Trustee as Interest Related Payments on the Applicable Distribution Date |
| Current Hedge Periodic Payables Account | Clause Third, Current Hedge Periodic Payables | the Corporations pro-rata as their interests may appear | Paid to the Specified Hedge Counterparties when due as Hedge Periodic Payables |

12.2.1(3). Principal Related Payments Fund

| | | | |
|---|---|---|---|
| 12.2.1(4). Deficit Principal Related Account | Clause Fourth | Funding Trust | Distributed to Trustee as Deficit Principal Related Payments on the Applicable Distribution Date |
| 12.2.1(5). Current Principal Related Account | Clause Fifth | Funding Trust | Distributed to Trustee as Principal Related Payments and Sinking Fund Related Payments on the Applicable Distribution Date |

---

[1] References to "Clauses" are to the Clauses set forth in Section 8.03 of the Service Contracts.

13-53846-tjt    Doc 3051-2    Filed 03/17/14    Entered 03/17/14 23:05:16    Page 45 of 46

Exhibit 4.5

| 12.2.1(6). Funds and Accounts | Component to be Credited | Property Owner(s) | Entitled Person(s) |
|---|---|---|---|

*Hedge Termination Payables Fund*

| Deficit Hedge Termination Payables Account | Clause Sixth | the Corporations pro-rata as their interests may appear | Paid to such Specified Hedge Counterparties when due as Deficit Hedge Termination Payables |
|---|---|---|---|
| Current Hedge Termination Payables Account | Clause Seventh | the Corporations pro-rata as their interests may appear | Paid to Hedge Counterparties when due as Hedge Termination Payables |

*Optional Prepayment Fund*

| Current Optional Prepayments Account | Clause Eighth | Funding Trust | Distributed to Trustee as Redemption Related Payments on the Applicable Distribution Date |
|---|---|---|---|