UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re | ) ) ) | Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, | ) ) | In Proceedings Under Chapter 9 |
| Debtor. | ) ) ) | Hon. Steven W. Rhodes |

## AMBAC ASSURANCE CORPORATION'S FIRST SET OF INTERROGATORIES TO DEBTOR

Ambac Assurance Corporation ("Ambac"), by and through counsel, and pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7026, 7034, and 9014, and the Second Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [ECF No. 2937] (the "Scheduling Order"), hereby serves its First Set of Interrogatories ("Interrogatories") on the Debtor, the City of Detroit, Michigan.

Ambac requests that the Debtor produce the documents and things described herein for inspection and copying at the offices of Arent Fox LLP, 1717 K Street, N.W., Washington, DC 20036, on a rolling basis with such production to be completed by the deadline imposed by the Federal Rules of Civil Procedure and the Scheduling Order.

# **GENERAL INSTRUCTIONS**

If, in responding to any Interrogatory, the Debtor encounters any ambiguities when construing an Interrogatory or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

Each Interrogatory is intended to be continuing, and Ambac demands that You promptly and seasonably amend Your responses if at any later date You obtain any additional facts or documents, You make any assumptions or contentions, or You reach any conclusions or opinions that are different from those forming the basis for Your responses to these Interrogatories. Amended responses should set forth fully such different facts, assumptions, conclusions, opinions, or contentions, and You should promptly produce such additional documents.

If You contend that You are entitled to withhold from production information requested in any Interrogatory on the basis of the attorney-client privilege, the work-product doctrine, or any other basis, then please provide the information set forth in Fed. R. Civ. P. 26(b)(5) in order to enable Ambac to assess the privilege claim, including the nature of the information, the persons with knowledge of the information, and the basis on which the basis on which You contend that You are entitled to withhold the document from production.

When a response to an Interrogatory includes both privileged and non-privileged information, the non-privileged information must be disclosed to the

fullest extent possible without thereby disclosing the privileged information. If a privilege is asserted with regard to part of the information, the party claiming the privilege must clearly indicate the portions of information as to which the privilege is claimed.

More than one of these Interrogatories may ask for the same information. The presence of such duplication is not to be interpreted to narrow or limit the normal interpretation placed upon each individual Interrogatory.

If any information requested in an Interrogatory is no longer in the possession, custody, or control of the Debtor, identify the last person known to have known the information and a synopsis of the contents of the document.

An Interrogatory includes information in the possession, custody, or control of the Debtor, including You and/or Your present or past representatives, employees, agents, advisors, professionals, experts, and any and all other persons consulted regarding any matters of fact or opinion involved in this case, or documents otherwise available to You, unless privileged.

If you have no information that is responsive to an Interrogatory, so state.

To the extent responsive information is in the possession, custody or control of any non-debtor affiliates, it should be included in Your responses.

# DEFINITIONS

For purposes of responding to these Interrogatories, the terms below are defined as follows:

The term "**document**" means, without limitation, the original and any and all drafts and non-identical copies of any writings of any kind in Your possession, custody or control, including, but not limited to correspondence, scripts, records, reports, external and internal memoranda, electronic mail (e-mail), computer or word processor printouts, information maintained on computer hard drive or CD-Rom, calendars, routing slips, transcripts of oral testimony or statements, agreements and contracts (including all modifications and/or revisions thereof), calculations, court or agency papers, digital voice exchange transcripts or summaries, notes, letters, telegrams, telexes, messages (including, but not limited to, reports or notes of telephone conversations, messages and conferences), studies, analyses, books, magazines, newspapers, booklets, brochures, pamphlets, press releases, circulars, bulletins, instructions, minutes, other communications (including, but not limited to inter- and intra-office communications), questionnaires, surveys, contracts, memoranda of agreements, assignments, books of accounts, orders, records or summaries of negotiations, records or summaries of personal interviews or conversations, records or summaries of investigations, records or summaries of negotiations, diaries, schedules, printouts, drawings,

blueprints, specifications, graphs, charts, studies, planning materials, statistical statements, forecasts, work papers, invoices, statements, receipts, income and other tax returns, bills, checks, bank books, bank statements, vouchers, notebooks, data sheets, photographs, microfilm, microfiche, photographic negatives, tapes, magnetic tapes, paper tapes, cassette tapes, videotapes, plotter output recordings, discs, data cards, films, data processing files, and other computer readable records or programs, breadboards, catalogues, brochures, all other written or printed matter of any kind, and all other data compilation from which information can be obtained, and translated if necessary. Any such document bearing on any page thereof, any marks such as initials, stamped indices, comments or notations of any character and not part of the signed text or photographic reproduction thereof is to be considered and produced as a separate document.

The terms "**communication**" or "**communications**" mean any manner or means of disclosure or exchange of information, whether oral, written, video, audio, or electronic form and whether face to face, in a meeting, by telephone, by mail, by personal delivery, or otherwise.

The term "**person**" means any individual, partnership, firm, association, corporation or other business or any government or other legal entity, and each as of its directors, officers, employees, servants or representatives, and all other persons purporting to act on its behalf.

The terms "**identify**" or "**state**" mean the following, when used in reference to:

    A.    A natural person, his or her:

        i)    full name;

        ii)    present or last known home and business address (including street number, street name, city, state, and zip code) and present or last known telephone number; and

        iii)    present or last known employer, position, job title, and job description.

    B.    A company, corporation, association, partnership, joint venture, or any legal entity other than a natural person, its:

        i)    full name;

        ii)    address and telephone number of its principal office or place of business;

        iii)    type of entity (*e.g.*, corporation, partnership, limited liability company, etc.); and

        iv)    nature of business.

    C.    Document(s) or written material, the:

        i)    title and date of each;

        ii)    name and address of the person(s) originating the document and the person(s) to whom the document is addressed; and

        iii)    the firm, agency, or company with which all such persons are affiliated as of the date of the document.

    D.    Communication(s), the:

        i)    time, date and place of each;

ii) name and address of the person(s) who participated in the communication;

iii) name and address of the person(s) who were present during the conversation;

iv) the firm, agency, or company with which all such persons are affiliated as of the date of the communication; and

v) the entire contents of the communication, including a complete and full description of the statements made, the name of the person making the statement, and the name of the person the statement was directed towards.

E. A criminal or civil action or other legal proceeding, its:

i) docket/case number;

ii) court in which it is/was filed;

iii) all parties to the action;

iv) date action was filed; and

v) disposition or current status if not completed.

The terms "**relate**," "**relate to**," and/or "**refer**," with respect to any given subject mean anything that concerns, constitutes, contains, compromises, consists of, discloses, describes, discusses, explains, evidences, embodies, reflects, identifies, states, summarizes, refers to, pertains to, deals with, implies or authorizes directly or indirectly, or is in any manner whatsoever pertinent to that subject.

The term "**including**" shall be construed to mean including, but not limited to.

For purposes of interpreting or construing the scope of these Interrogatories, the terms used shall be given their most expansive and inclusive interpretation unless otherwise specifically limited in the Interrogatory itself. This includes, without limitation, the following:

    A.    Construing the words "**and**" and "**or**" used in any Interrogatory in the disjunctive or conjunctive, as necessary, to make the Interrogatory more inclusive;

    B.    Construing the words "**any**" and "**all**" used in any Interrogatory to mean "any and all," as necessary, to make the Interrogatory more inclusive;

    C.    Construing the singular form of any word to include the plural and the plural form to include the singular;

    D.    Construing the past tense of a verb to include the present tense and the present tense to include the past tense; and,

    E.    Construing masculine or feminine pronouns to mean feminine or masculine pronouns, respectively, as necessary to make the request more inclusive.

The terms "**Debtor**," "**City,**" "**You**," or "**Your**" mean the City of Detroit, Michigan, as well as any of its past or present divisions, departments, officials, trustees, agents, affiliates, employees, attorneys, advisors, professionals, representatives, and all other persons acting or purporting to act on their behalf.

The term "**Ambac**" means Ambac Assurance Corporation, a creditor and party in interest in this case.

The term "**Plan**" refers to the Plan for the Adjustment of Debts of the City of Detroit [ECF No. 2708], as amended, supplemented, or modified from time to time, including any exhibits thereto and the Plan Supplement, which is incorporated by reference and made part of the Plan.

The term "**Disclosure Statement**" refers to the Disclosure Statement with Respect to Plan for the Adjustment of Debts of the City of Detroit [ECF No. 2709], as amended, supplemented, or modified from time to time, including any exhibits therto.

Any terms not specifically defined herein shall be defined as set forth in the Disclosure Statement or the Plan, as applicable.

## INTERROGATORIES

Ambac respectfully requests that You respond to each of the following Interrogatories:

1. Describe the process that the City has used to set the millage for unlimited tax general obligation bonds for each year from 2004 to the present. Include in Your description information about how the City determines the amounts to be collected under the millage, assesses the values of real property subject to the millage, and makes any adjustments for uncollectible debt. In addition, identify all documents that relate or refer to any of the foregoing matters.

2. Explain in detail the process that the City uses to allocate *ad valorem* tax revenues when only partial tax payments are received, and identify all documents that relate or refer to the process.

3. Describe the process that the City uses to collect delinquent or underpaid *ad valorem* taxes, and identify all documents that relate or refer to the process.

4. Describe in detail any pending grant applications or grant applications in process in the aggregate amount of $5 million or more.

5. Describe the City's projected required annual contributions to the GRS and the PFRS for the period January 1, 2012 through December 31, 2034 (A) based on the actuarial assumptions used by the GRS and PFRS, respectively, prior to the Petition Date, and (B) based on the actuarial assumptions used by the City in formulating the Plan of Adjustment and taking into account the restructuring of the pension obligations proposed in the Plan. Include in your answer all assumptions the City made as a part of those calculations, including without limitation assumptions with respect to how many individual retirees would accept the proposed PFRS and GRS Settlements, as well as the projected effect, if any, on post-confirmation funding obligations if the assumption used by the City turns out to be incorrect. Identify all documents that relate or refer to these assumptions or calculations.

6. Describe the manner in which the amount of the PFRS and GRS pension claims reflected in the Plan and Disclosure Statement were calculated, including in Your answer any methods, assumptions, or bases used in making the calculation. Identify all documents that relate or refer to the calculations.

7. Describe the PFRS Hybrid Pension Formula and the GRS Hybrid Pension Formula, and identify all documents that relate or refer to these formulas and the manner in which they were devised.

8. Describe the manner in which the amount of the OPEB claims (both PFRS and GRS) reflected in the Plan and Disclosure Statement were calculated, including in Your answer any methods, assumptions, or other bases use in making the calculations. Identify all documents that relate or refer to the calculations.

9. Describe the restrictive work rules referred to in the Plan, the City's plans, if any, for changing those rules, and the projected costs to be incurred and savings to be achieved in doing so. Identify all documents that relate or refer to the work rules as well as the costs and savings.

10. State the current amount of the interfund balances, and the purpose for which each transfer was made. Include in Your answer a description of the process that the City uses to determine whether, how, and in what amounts transfers will be made between these funds, any methods or policies governing or applying to the City's repayment of transferred funds to their original fund, and how these

interfund balances will be treated in the Plan.  Identify all documents that relate or refer to these interfund balances.

11.  Describe the amount and nature of the Administrative Claims referenced in the Plan and Disclosure Statement.  Identify all documents that relate or refer to the Administrative Claims.

12.  Describe how the City derives its estimate of a 20% recovery for the holders of Limited Tax General Obligation Bonds, including the definition of the "certain incremental recurring gross specified tax receipts" from which the New C Notes will be paid; an explanation of how the adjustments to the Revenue Hurdle will be made and implemented; an estimate of the aggregate allowed amount of the COP Claims (which will share in the New B Notes and the New C Notes if they become Allowed Claims); the basis for the estimate of the aggregate allowed amount of the COP Claims; an estimate of the aggregate allowed amount of Other Unsecured Claims; and the basis for the estimate of the aggregate allowed amount of Other Unsecured Claims.

13.  Describe the basis for treating unsecured claims, including the GRS and PFRS Claims, better than the UTGO Claims and LTGO Claims, and explain why this disparate treatment does not constitute unfair discrimination.  Identify any documents that support your description and explanation.

14. Describe in detail the terms of the Plan UTGO Notes, including the type of security/bond, the methodology proposed for calculation of the present value of the payment stream, and the source of payment for the Notes. Identify any documents that support your description.

15. Describe the bases, methodologies, and assumptions underlying Your calculations of the projected proceeds from the DIA Settlement, including without limitation the figures referenced on page 4 and pages 83-85 of the Disclosure Statement. Identify any documents that relate to such bases, methodologies, and assumptions.

16. Describe how payment commitments of the Foundations, the State, and the DIA Corp. will be enforced if the DIA Assets have been irrevocably transferred to the DIA Corp. on the Effective Date, and what the remedies will be for non-payment. Identify any documents that support your description.

17. State with particularity the basis for the Emergency Manager's determination, referenced on page 23 of the Disclosure Statement, that the City cannot gain additional revenue through the imposition of increased rates or additional taxes on City Residents, including information supporting that determination. Identify any documents that support your description and explanation.

18. State with particularity the basis for Your contention on page 25 of the Disclosure Statement that "State law precludes the City from charging fees that exceed the costs of providing the relevant services." Identify any statutory, constitutional or charter provisions and any documents that support this contention.

19. Identify and state the fair market value of each City-owned asset valued at more than $5 million. Identify any documents that support the valuation of such assets.

20. Identify and state the fair market value, and current use, of each parcel of City-owned land referenced in Section III.A.5(b) of the Disclosure Statement. Identify any publicly filed documents that identify the property and identify the City as the owner of record, as well as any documents that reflect the fair market valuation of each property.

21. Identify any and all claims that the City knows, suspects, or believes may exist against parties other than the City that would be released and/or enjoined pursuant to the Plan, as well as any persons who requested or suggested to the City that such claims be released pursuant to the Plan. Identify all documents and communications that relate to such claims, including documents that relate to the nature and value of such claims.

22. State and explain in detail the basis for the contention on page 124 of the Plan that "the City may be unable to confirm the Plan" if the Emergency

manager is removed prior to confirmation," whether the contention assumes that the Governor will not appoint a new Emergency Manger if the current Emergency Manager were to be removed from office, and why. Identify any documents that support your description and explanation.

23. Describe in detail whether the city has to meet the three requirements listed on pages 24-25 of the Disclosure Statement impacting state revenue sharing, whether the City has met these requirements to participate in state revenue sharing, and whether the City expects to meet these requirements in the future. Identify any documents that relate to your description.

24. State whether legislation by the State of Michigan will be necessary to ensure that the Plan complies with state law and identify and describe any such legislation; for each such legislation, state whether the City believes the legislation will be passed, describe the basis for the belief, state whether the Plan can be confirmed in the event the legislation does not pass, and describe the aspects of the plan that would violate state law in the event the legislation does not pass. Identify any documents that relate to your description and explanation.

25. State the earliest date on which the City believes it may need to obtain borrowing from the capital markets and describe the basis for determining that date. Identify any documents and communications that relate to your description.

Dated: March 17, 2014

**ARENT FOX LLP**
By: /s/ Carol Connor Cohen
CAROL CONNOR COHEN
CAROLINE TURNER ENGLISH
1717 K Street, NW
Washington, DC 20036-5342
(202) 857-6054
Carol.Cohen@arentfox.com

DAVID L. DUBROW
MARK A. ANGELOV
1675 Broadway
New York, NY 10019
(212) 484-3900

and

**SCHAFER AND WEINER, PLLC**
DANIEL J. WEINER (P32010)
BRENDAN G. BEST (P66370)
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
(248) 540-3340
bbest@schaferandweiner.com

*Counsel for Ambac Assurance Corporation*