# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

|  |  |  |
|---|---|---|
| In re | ) | Case No. 13-53846 |
|  | ) |  |
| CITY OF DETROIT, MICHIGAN, | ) | In Proceedings Under |
|  | ) | Chapter 9 |
| Debtor. | ) |  |
|  | ) | Hon. Steven W. Rhodes |

_____

## AMBAC ASSURANCE CORPORATION'S FIRST REQUEST FOR DOCUMENTS TO DEBTOR

Ambac Assurance Corporation ("Ambac"), by and through counsel, and pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7026, 7034, and 9014, and the Second Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [ECF No. 2755] (the "Scheduling Order"), hereby serves its First Request for Production of Documents ("Request for Production" or "Request") on the Debtor, the City of Detroit, Michigan.

Ambac requests that the Debtor produce the documents and things described herein for inspection and copying at the offices of Arent Fox LLP, 1717 K Street, N.W., Washington, DC 20036, on a rolling basis with such production to be completed by the deadline imposed by the Federal Rules of Civil Procedure and the Scheduling Order.

## GENERAL INSTRUCTIONS

1.      If, in responding to this Request for Production, the Debtor encounters

any ambiguities when construing a Request or definition, the response shall set

forth the matter deemed ambiguous and the construction used in responding.

2.      Each Request is intended to be continuing, and Ambac demands that

You promptly and seasonably amend Your responses if at any later date You

obtain any additional facts or documents, You make any assumptions or

contentions, or You reach any conclusions or opinions that are different from those

forming the basis for Your responses to these Requests.  Amended responses

should set forth fully such different facts, assumptions, conclusions, opinions, or

contentions, and You should promptly produce such additional documents.

3.      If You contend that You are entitled to withhold from production any

part of any document requested on the basis of the attorney-client privilege, the

work-product doctrine, or any other basis, then for each such document, please

provide the information set forth in Fed. R. Civ. P. 26(b)(5) in order to enable

Ambac to assess the privilege claim, including:

      A.      The nature of the document;

      B.      The date of the document;

      C.      A detailed summary or description of the document;

      D.      Any and all persons who prepared, sent, and/or received any
              original or any copy of the document;

E.  The person in possession, custody, or control of the document; and,

F.  The basis on which You contend that You are entitled to withhold the document from production.

4.  When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed.  When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration.  Any redaction must be clearly visible on the redacted document.

5.  More than one of these Requests may ask for the same document. The presence of such duplication is not to be interpreted to narrow or limit the normal interpretation placed upon each individual Request.  Where a document is requested in more than one numbered paragraph, only non-identical copies of it need be produced.

6.  If a document responsive to a Request herein has been destroyed, identify the date on and place at which the document was destroyed, the person(s) who destroyed the document, and the person(s) who gave the instruction to destroy

the document. If any document identified herein has been lost, misplaced, or is no longer in the possession, custody, or control of the Debtor, identify the last person known to have seen the document, the date on and place at which the document was last seen, and a synopsis of the contents of the document.

7.     A Request includes documents in the possession, custody, or control of the Debtor, including You and/or Your present or past representatives, employees, agents, advisors, professionals, experts, and any and all other persons consulted regarding any matters of fact or opinion involved in this case, or documents otherwise available to You, unless privileged.

8.     Documents should be segregated according to the number of the request to which You are responding or produced in the manner they are kept in the ordinary course of business. Documents attached to each other should not be separated.

9.     Cover letters sent by You accompanying any document productions pursuant to the Requests below should specify to which Requests the documents being produced are responsive. If You contend that documents previously produced satisfy a particular Request below, please specify by Bates Number which documents so satisfy the Request.

10.     If no document exists that is responsive to a Request, so state.

11.    To the extent responsive documents are in the possession, custody or control of any non-debtor affiliates, they should be produced.

12.    Electronic records and computerized information should be produced (i) in an intelligible format, or (ii) together with a description of the system from which they were obtained sufficient to render the records and information intelligible.

13.    All Electronically Stored Information ("ESI") converted to TIFF images should be retained in native format and individual ESI native format documents should be provided upon reasonable request.

14.    Electronic spreadsheets (*i.e.*, Microsoft Excel files) should be produced in native format.  Such documents also should be produced with TIFF versions of the documents at issue.  If any electronic spreadsheet contains material that is not subject to production, because it contains material protected by the attorney-client privilege, the work product doctrine, or any other reason, but the document also contains material that is subject to production, the document should not be produced in native format, but rather in the same format described above for documents other than spreadsheets, with appropriate redactions.  The native version of the document, including redacted material, should be retained.

# DEFINITIONS

For purposes of responding to this Request for Production, the terms below are defined as follows:

1.    The term "**document**" means, without limitation, the original and any and all drafts and non-identical copies of any writings of any kind in Your possession, custody or control, including, but not limited to correspondence, scripts, records, reports, external and internal memoranda, electronic mail (e-mail), computer or word processor printouts, information maintained on computer hard drive or CD-Rom, calendars, routing slips, transcripts of oral testimony or statements, agreements and contracts (including all modifications and/or revisions thereof), calculations, court or agency papers, digital voice exchange transcripts or summaries, notes, letters, telegrams, telexes, messages (including, but not limited to, reports or notes of telephone conversations, messages and conferences), studies, analyses, books, magazines, newspapers, booklets, brochures, pamphlets, press releases, circulars, bulletins, instructions, minutes, other communications (including, but not limited to inter- and intra-office communications), questionnaires, surveys, contracts, memoranda of agreements, assignments, books of accounts, orders, records or summaries of negotiations, records or summaries of personal interviews or conversations, records or summaries of investigations, records or summaries of negotiations, diaries, schedules, printouts, drawings,

blueprints, specifications, graphs, charts, studies, planning materials, statistical statements, forecasts, work papers, invoices, statements, receipts, income and other tax returns, bills, checks, bank books, bank statements, vouchers, notebooks, data sheets, photographs, microfilm, microfiche, photographic negatives, tapes, magnetic tapes, paper tapes, cassette tapes, videotapes, plotter output recordings, discs, data cards, films, data processing files, and other computer readable records or programs, breadboards, catalogues, brochures, all other written or printed matter of any kind, and all other data compilation from which information can be obtained, and translated if necessary.  Any such document bearing on any page thereof, any marks such as initials, stamped indices, comments or notations of any character and not part of the signed text or photographic reproduction thereof is to be considered and produced as a separate document.

2.     The terms "**communication**" or "**communications**" mean any manner or means of disclosure or exchange of information, whether oral, written, video, audio, or electronic form and whether face to face, in a meeting, by telephone, by mail, by personal delivery, or otherwise.

3.     The term "**person**" means any individual, partnership, firm, association, corporation or other business or any government or other legal entity, and each as of its directors, officers, employees, servants or representatives, and all other persons purporting to act on its behalf.

5.    The terms "**reflect**," "**relate**," "**relate to**," and/or "**refer**," with respect to any given subject mean anything that concerns, constitutes, contains, compromises, consists of, demonstrates, describes, discloses, discusses, explains, evidences, embodies, reflects, identifies, states, summarizes, refers to, relates to, pertains to, deals with, implies or authorizes directly or indirectly, or is in any manner whatsoever pertinent to that subject.

6.    The term "**including**" shall be construed to mean including, but not limited to.

7.    For purposes of interpreting or construing the scope of these Requests, the terms used shall be given their most expansive and inclusive interpretation unless otherwise specifically limited in the Request itself.  This includes, without limitation, the following:

A.    Construing the words "**and**" and "**or**" used in any Request in the disjunctive or conjunctive, as necessary, to make the Request more inclusive;

B.    Construing the words "**any**" and "**all**" used in any Request to mean "any and all," as necessary, to make the Request more inclusive;

C.    Construing the singular form of any word to include the plural and the plural form to include the singular;

D.    Construing the past tense of a verb to include the present tense and the present tense to include the past tense; and,

E.    Construing masculine or feminine pronouns to mean feminine or masculine pronouns, respectively, as necessary to make the request more inclusive.

8.    The terms "**Debtor**," "**City,**" "**You**," or "**Your**" mean the City of Detroit, Michigan, as well as any of its past or present divisions, departments, officials, trustees, agents, affiliates, employees, attorneys, advisors, professionals, representatives, and all other persons acting or purporting to act on their behalf.

9.    The term "**Ambac**" means Ambac Assurance Corporation, a creditor and party in interest in this case.

10.    The term "**Disclosure Statement**" refers to the Disclosure Statement with Respect to Plan for the Adjustment of Debts of the City of Detroit [ECF No. 2709], as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto.

11.    The term "**Exculpation**" means the provisions of the Plan exculpating any party for any conduct or claim, including, but not limited to, the provisions set forth in Art. III, Section D(6) of the Plan.

12.    The term "**Plan**" refers to the Plan for the Adjustment of Debts of the City of Detroit [ECF No. 2708], as amended, supplemented, or modified from time to time, including any exhibits thereto and the Plan Supplement, which is incorporated by reference and made part of the Plan.

13.     The term **"Release"** means the release of any claims as set forth in the Plan, including, but not limited to, the provisions set forth in Article III, Section D(6) of the Plan.

14.     The term **"Reinvestment Initiatives"** has the same meaning as defined in the Motion of the Debtor for a Final Order Pursuant to 11 U.S.C. §§ 105, 362, 364(c)(2), 364(e), 364(f), 503, 507(a)(2), 904, 921 and 922 (I) Approving Post-Petition Financing, and (II) Granting Liens and Providing Superpriority Claim Status and (III) Modifying Automatic Stay [ECF No. 1520].

15.     The term **"Ten-Year Summary of Restructuring Initiatives"** means the most recent "Project Piston" report completed by Ernst & Young LLP, regardless of whether it is marked as a preliminary draft or final report.

16.     Any terms not specifically defined herein shall be defined as set forth in the Disclosure Statement or the Plan, as applicable.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

Ambac respectfully requests that You produce the following documents:

1.     All documents that You have reviewed, identified, or relied upon in answering Ambac's First Set of Interrogatories to Debtor.

2.     All documents and all drafts of documents referenced as exhibits to the Disclosure Statement or Plan or that are to be included in any Plan Supplement.

3.      All documents that the City intends to or may use as exhibits or evidence or for any purpose at the Confirmation Hearing or at any other hearing related or ancillary to confirmation of the Plan, including without limitation hearings related to the approval of the Disclosure Statement.

4.      All documents that the City has provided or intends to provide to any witness that it intends to call to testify at the Confirmation Hearing or at any other hearing related or ancillary to confirmation of the Plan, including without limitation hearings related to the approval of the Disclosure Statement.

5.      The biography, education and work history, or *curriculum vitae* of any person the City intends to call as a fact witness at the Confirmation Hearing or at any other hearing related or ancillary to confirmation of the Plan, including without limitation hearings related to the approval of the Disclosure Statement.

6.      The most current resume or *curriculum vitae* for each person the City intends to call to testify as a potential expert witness at the Confirmation Hearing or at any other hearing related or ancillary to confirmation of the Plan, including without limitation hearings related to the approval of the Disclosure Statement.

7.      All documents, including reports, models, or data compilations, which have been provided to, reviewed by, or prepared by or for any expert witnesses for purposes related to the Disclosure Statement or the Plan.

8.     All documents and communications that tend to support or refute that the City can satisfy its burden under 11 U.S.C. § 1129(a) as incorporated into Chapter 9 of the Bankruptcy Code.

9.     All documents and communications that tend to support or refute that the Plan is in the "best interest of creditors" within the meaning of 11 U.S.C. § 943(b)(7).

10.    All documents and communications that tend to support or refute that the Plan is feasible within the meaning of 11 U.S.C. § 943(b)(7).

11.    Documents and communications relating to the effect on the City's post-confirmation cash flow in the event the City is prohibited from using millage levied on real property above the applicable statutory, constitutional or chapter limits for purposes other than paying unlimited tax general obligations.

12.    All documents and communications that tend to support or refute that the City is not prohibited by law from taking any action necessary to carry out the Plan within the meaning of 11 U.S.C. § 943(b)(4).

13.    All documents and communications that tend to support or refute that the City will be able to confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code.

14.    All communications between the City and any witness that relate to the City's ability to confirm the Plan.

15.     All documents and communications that relate to, support, or refute the basis for treating unsecured claims, including the GRS Claims and PFRS Claims, better than UTGO Claims and LTGO Claims under the Plan.

16.     All documents and communications that relate to the basis for the classification of (A) PFRS Pension Claims in the same class with OPEB Claims held by holders of PFRS Pension Claims and (B) GRS Pension Claims in the same class with OPEB Claims held by holders of GRS Pension Claims.

17.     All documents and communications that relate to the basis of the classification and treatment of claims held by the Downtown Development Authority.

18.     All communications between the City and any witness with respect to the classification of claims under the Plan.

19.     All documents and communications that relate to the investigation by the City of any claim that is subject to a Release or Exculpation in the Plan.

20.     All documents and communications that relate to the potential liability to the City of any person or entity that would be entitled to Releases and Exculpations as proposed by the Plan.

21.     All documents and communications that relate to the potential liability to the City's creditors of any person or entity that would be entitled to Releases and Exculpations as proposed by the Plan.

22.     All documents and communications relating to any potential liability of the City that would or could result from the imposition of liability on any person or entity for whom Releases and Exculpations are proposed by the Plan.  Include in your response documents relating to any potential resulting claims against the City based on guaranty, indemnification, or contribution, or any other theory.

23.     All documents and communications that relate to any contribution to the City or to the City's debt adjustment efforts by any party to be provided a Release or Exculpation as proposed by the Plan.

24.     All documents and communications that relate to the development and formulation of the City's Projections attached to the Disclosure Statement as Exhibits I and J, including without limitation the assumptions underlying the Projections, including those discussed on pages 121-123 of the Disclosure Statement, and the anticipated or potential impact on the Projections of any changes to these assumptions.

25.     All documents and communications that relate to the City's derivation of its estimate of a 20% recovery under the Plan for the holders of Limited Tax General Obligation Bonds.

26.     All documents and communications that relate to the City's derivation of its estimated recovery under the Plan for the holders of Unlimited Tax General Obligation Bonds.

27.     All documents that relate to the definition of the "certain incremental recurring gross specified tax receipts" from which the New C Notes will be paid.

28.     All documents that relate to the calculations or projections of the Revenue Hurdle.

29.     All documents that reflect an estimate of the aggregate allowed amount of, and the recoveries on, the COP Claims and the basis for those estimates.

30.     All documents that reflect an estimate of the aggregate allowed amount of, and the recoveries on, Other Unsecured Claims, and the basis for that estimate.

31.     All documents that relate to the terms of the Plan UTGO Notes, including the type of security/bond, the methodology proposed for calculation of the present value of the payment stream, and the source of payment for the Plan UTGO Notes.

32.     All documents that reflect any summaries or analyses conducted by or for the City that relate to the collection, collection rates, and/or payment delinquency rates of *ad valorem* taxes levied by the City for each year from 2004 to the present.

33.    All documents that reflect any projections prepared by or for the City that relate to the collection, collection rates, and/or payment delinquency rates of *ad valorem* taxes to be levied by the City through December 31, 2034.

34.    All documents that reflect the process for setting the millage collected on account of unlimited tax general obligation bonds for each year from 2004 to the present, including documents and communications that relate to the amount to be collected under the millage, the assessment of the values of real property subject to the millage, and any adjustments made for delinquencies or anticipated delinquencies.

35.    All documents that reflect summaries, analyses, and reconciliations of Wayne County's attempts to collect and settle *ad valorem* tax collection deficiencies for each year from 2009 to the present.

36.    All documents that reflect the allocations of *ad valorem* tax revenues for each year from 2009 to the present, and the City's process for allocating partial payments of *ad valorem* tax revenues, when only partial tax payments are received.

37.    All documents that reflect the City's efforts, from 2009 to the present, to collect delinquent or underpaid *ad valorem* taxes.

38.    All documents that reflect the City's planned future efforts to collect full payment for *ad valorem* taxes from taxpayers after receiving only partial payments.

39.     All documents that reflect the calculations of the *ad valorem* tax revenue projections included in the most recent Ten-Year Summary of Restructuring Initiatives.

40.     Documents and communications relating to City's plans to levy millage on real property post-confirmation in excess of applicable statutory, constitutional, or chapter limits other than for the purposes of paying unlimited tax general obligations.  Include in your production documents relating to levies that have been or may be imposed to satisfy any judgment against the City.

41.     All documents that reflect the calculations or determinations of growth rates relevant to the income tax revenue projections included in the most recent Ten-Year Summary of Restructuring Initiatives, including all documents supporting any assumptions included in the Ten-Year Summary as to:

A.     The City's population growth;

B.     Employment in the City and its allocation between residents and non-residents; and

C.     Average wage assumptions.

42.     All documents that reflect any research or analysis conducted by or for the City related to its ability (or inability) to raise additional revenue through increases of existing taxes, assessments, or user fees; the levying of new taxes, assessments, user fees; or otherwise.

43.     All documents that reflect any research or analysis conducted by or for the City related to the effects of tax changes enacted from 2009 to the present, including the effect of the tax changes on the City's economic growth or revenues.

44.     All documents that reflect any research or analysis conducted by or for the City related to any component of the tax burden on the City's residents in comparison to (a) surrounding areas or (b) cities of comparable size.

45.     All documents that reflect any research or analysis conducted by or for the City related to opportunities (or lack of opportunities) for Payment in Lieu of Taxes (PILOT) programs from the State or non-profit organizations.

46.     All documents that reflect any research or analysis conducted by or for the City related to projected or anticipated State revenue-sharing.

47.     All documents that reflect any research or analysis conducted by or for the City related to any initiatives to improve the City's collection of taxes, fines, or user fees, and/or to decrease the delinquency rates applicable to such collection.

48.     All documents and communications that relate to expense reduction efforts undertaken since the Petition Date or planned by the City for the future.

49.     All documents and communications analyzing the deferral of any of the spending proposals contemplated by the June 14, 2013 Proposal to Creditors.

50.     All documents that reflect any research or analysis conducted by or for the City related to any operational restructuring plans, whether implemented, considered, or proposed, including the costs of implementing such plans and the actual and projected resulting savings.

51.     All documents that reflect any research or analysis conducted by or for the City related to efforts to reduce its labor costs from January 1, 2009 to present, whether implemented, considered, or proposed.

52.     All documents and communications pertaining to proposals and analyses related to the restructuring the Detroit Water and Sewerage Department, whether implemented, considered, or proposed, including costs of such restructuring and the actual or projected resulting savings.

53.     All documents and communications that relate to the valuation and/or potential monetization, through sale, lease, or otherwise, of City-owned assets valued at more than $5 million, including without limitation:

    A.     Artwork owned or held in the Detroit Institute of Art, including relevant documentation relating to ownership or control of the artwork;

    B.     The Detroit-Windsor Tunnel;

    C.     The Veterans' Memorial Building;

    D.     City-owned parking facilities;

    E.     Coleman Young Airport;

F.  Joe Louis Arena; and

G.  City-owned land referenced in Section III.A.5(b) of the Disclosure Statement.

54.  All documents that reflect the City's ownership interest in, and the restrictions on the transfer of, all artwork held at the Detroit Institute of Art, including without limitation the artwork *not* appraised by Christie's.

55.  All documents and communications that relate to the potential monetization of the artwork held at the Detroit Institute of Art other than pursuant to the DIA Settlement, the potential or estimated revenue from such monetization, and the reasons why such monetization has not been pursued.

56.  Documents sufficient to establish the total amount of payments received by the Swap Counterparties pursuant to the Swap Contracts.

57.  All documents and communications that relate to any pending or in-progress grant applications that exceed $5 million in the aggregate under a single program.

58.  All documents tending to support or refute that each settlement described in the Disclosure Statement and Plan will inure to the benefit of the City's creditors and residents, including without limitation analyses and projections of potential recoveries by or against the City, and the City's estimate of its legal fees, in the absence of such settlements.

59.     All documents and communications that relate to the Plan GRS Settlement, including documents and communications that reflect the terms of the Plan GRS Settlement, the negotiation of those terms, the participants in the negotiations, what other settlement terms were considered, and why those terms were rejected.

60.     All documents and communications that relate to the Plan PFRS Settlement, including documents and communications that reflect the terms of the Plan PFRS Settlement, the negotiation of those terms, the participants in the negotiations, what other settlement terms were considered, and why those terms were rejected.

61.     All documents that reflect any summaries or analyses conducted by or for the City that relate to the impact on the feasibility of the Plan and creditor recoveries under the Plan in the event the full amounts of the State GRS Consideration and/or the State PFRS Consideration are not received.

62.     All documents and communications that relate to the DIA Settlement, including documents and communications that reflect the likelihood that the DIA settlement will occur, the terms of the DIA Settlement, the negotiation of those terms, the participants in the negotiations, what other settlement terms were considered, and why those terms were rejected.

63.     All documents that relate to the terms of settlements, other than those described in the Disclosure Statement, that the City intends to enter into prior to the confirmation of the Plan or as a part of the Plan, including without limitation analyses and projections of potential recovery by or against the City, and the City's estimated legal fees, in the absence of such settlements.

64.     All documents that relate to the calculation of the PFRS Claims and GRS Claims reflected in the Disclosure Statement and the Plan, including without limitation the underlying assumptions and methods used in the calculations

65.     All documents reflecting the City's annual contributions to the PFRS and GRS pension plans from 2004 to the present.

66.     All documents reflecting the City's projected annual contributions to the PFRS and GRS for retirement benefits following the confirmation of the Plan through December 31, 2034, based on the actuarial assumptions used by the PFRS and GRS, respectively, prior to the Petition Date.

67.     All documents reflecting the City's projected annual contributions to the PFRS and GRS for retirement benefits following the confirmation of the Plan through December 31, 2034, based on the actuarial assumptions used by the City in formulating the Plan of Adjustment and taking into account the restructuring of the pension obligations proposed in the Plan.

68.     All documents and communications that relate to the GRS Hybrid Pension Formula and the PFRS Hybrid Pension Formula, including documents and communications that reflect the analysis conducted to derive those formulas, and the figures and results such formulas may yield.

69.     All documents that reflect the estimated or actual current market value of PFRS and GRS assets.

70.     All documents that reflect any update to June 30, 2013 (or beyond) of the actuarial valuations performed by Gabriel Roeder Smith & Company ("Gabriel Roeder") for the PFRS and the GRS as of June 30, 2012, based on or using the methods, assumptions, and procedures used by Gabriel Roeder.

71.     All documents that reflect the calculation of the OPEB Claims (both PFRS and GRS) reflected in the Disclosure Statement and the Plan, including without limitation the underlying assumptions and methods used in the calculations.

72.     All documents that reflect the total amount of OPEB Claims (both PFRS and GRS) paid or projected to be paid from the Petition Date to the Effective Date.

73.     All documents that reflect interfund loans, balances or deferrals, including documents and communications that reflect the transfers that gave rise to the loans or deferrals, the conditions or terms of the loans or deferrals, the dates of

the loans or deferrals, the purposes of the loans or deferrals, any methods or policies governing or applying to the City's repayment of the loaned or deferred funds to their original fund.

74. All documents that reflect the proposed treatment of interfund loans or deferrals under the Plan, including any research or analysis conducted by or for the City related to such treatment.

75. All documents that reflect any research or analysis conducted by or for the City related to the legality of interfund loans or deferrals.

76. All documents that reflect any research or analysis conducted by or for the City related to the potential cancelation or invalidation of interfund loans or deferrals.

77. All documents that reflect the nature and amount of known or anticipated administrative claims.

78. All documents and communications that reflect, support, or refute, the validity of the claims held by the Downtown Development Authority against the City.

79. All documents and communications that reflect any research or analysis conducted by or for the City related to the validity, enforceability, or potential impairment of the claims held by the Downtown Development Authority against the City.

80.     All documents that tend to support or refute that the Downtown Development Authority is an "insider" of the City as that term is defined in 11 U.S.C. § 101(31).

81.     All documents that reflect or explain the City's obligations described in Section III(B)(2)(c) of the Disclosure Statement.

82.     All documents that reflect any research or analysis conducted by or for the City related to the City's obligations described in Section III(B)(2)(c) of the Disclosure Statement, including analyses of the origin and validity of the debt.

83.     All documents that reflect any research or analysis conducted by or for the City related to the amount of debt the City will have, and will be able to support, immediately following confirmation of the proposed Plan.

84.     All documents that reflect any research or analysis conducted by or for the City related to the limits imposed by applicable law on the City's ability to incur debt, and whether the City is limited in its ability to incur additional debt as a result of such limits.

85.     All documents that reflect any research or analysis conducted by or for the City related to the City's anticipated costs with respect to any post-petition financing.

86.     All documents that reflect any research or analysis conducted by or for the City related the City's anticipated costs with respect to any exit financing.

87.     All documents that reflect any research or analysis conducted by or for the City related to the City's anticipated costs with respect to any post-confirmation financing.

88.     All documents that reflect any research or analysis conducted by or for the City related the City's need for exit financing.

89.     All documents and communications that relate to any attempts by the City to obtain the Exit Facility, including documents and communications reflecting any requests for proposals (RFPs) sent to financial institutions and other indication of interest by potential lenders, proposed security packages, the terms of the proposals received in response to the RFPs, comparisons of the proposals, and negotiations with financial institutions.

90.     All documents and communications that relate to the process by which City has selected or intends to select the Exit Facility Agent and any other financial institution party to the Exit Facility.

91.     All documents and communications that relate to other potential exit financing lenders, including communications regarding potential exit financing since the Petition Date.

92.     All documents and communications that relate to the Exit Facility contemplated by the Plan, including the actual, potential, or expected terms, costs, security for, and interest rate on the Exit Facility.

93. All documents and communications that relate to the purpose or intended uses of the Exit Facility funds.

94. All documents that reflect any research or analysis conducted by or for the City related to the potential effects of the confirmation of the Plan or the impairment thereunder of general obligation bond claims on the City's borrowing costs with respect to the Exit Facility or any post-confirmation financing.

95. All documents that reflect any research or analysis conducted by or for the City related to the anticipated effects of the Reinvestment Initiatives, including but not limited to analyses of whether and how the Reinvestment Initiatives will affect:

    A.    The City's revenue;

    B.    The City's expenses;

    C.    The value of real estate located in the City; and

    D.    The City's population.

96. All documents and communications, including written reports, business plans, and financial schedules, the relate to any Reinvestment Initiatives, including without limitation:

    A.    Blight removal;

    B.    Restructuring of the City's parking and arena system;

    C.    The City's Police;

D. The City's Fire/EMS;

E. The City's Department of Transportation; and

F. Any other City departments or agencies.

97. All documents, including without limitation agreements and proposals, relating to any arrangements with the Detroit Land Bank Authority, the Michigan Land Bank. Include in your answer all documents and communications relating to the arrangements with respect to the "initiatives involving the Detroit Land Bank Authority and the Michigan Land Bank" referenced on page 26 of the Disclosure Statement.

98. All documents and communications that tend to support or refute the following statements contained in the Disclosure Statement:

A. The charts and accompanying text on pages 39-42 purporting to show declines in revenue, income taxes, state shared revenue, and employment;

B. Paragraph (c) at the bottom of page 42 discussing "Comparative Tax Burden;"

C. The statement on page 44 that "The City estimates that it has been able to realize more than $200 million in annual savings;"

D. The data and crime statistics on page 45 relating to crime and police response times;

E.     The charts on pages 46-47 purporting to show "Comparables Data;"

F.     The statement on page 47 that "The total of functioning streetlights per square mile in the City generally was less than half that of comparable national municipalities;"

G.     The statements on page 50 that bus fares are lower than comparable bus transit systems by approximately 30% on average, that bus transfers are offered at significantly reduced rates, and that DDOT's maintenance operations are "highly inefficient (58% less efficient) as compared with similar bus transit systems;" and

H.     The statements on page 51 that the cost to the City to process payroll is $62 per check, more than 4 times the "general average of $15 per paycheck, and almost 3.5 times the average of $18 per paycheck for other public sector organizations."

99.     Documents sufficient to establish the City's credit rating between January 1, 2005 and present.

100.     All documents provided to and any communications with officials of the City or the City Council that relate to the preparation or drafting of and/or content contained in the Disclosure Statement or Plan.

101.   All documents provided to and any communications with the State that relate to the preparation or drafting of and/or content contained in the Disclosure Statement or Plan.

102.   All documents produced to other creditors or parties in interest, whether formally or informally, for purposes related to the Disclosure Statement or Plan.

Dated:        March 17, 2014

**ARENT FOX LLP**
By:  /s/ Carol Connor Cohen
CAROL CONNOR COHEN
CAROLINE TURNER ENGLISH
1717 K Street, NW
Washington, DC  20036-5342
(202) 857-6054
Carol.Cohen@arentfox.com

DAVID L. DUBROW
MARK A. ANGELOV
1675 Broadway
New York, NY 10019
(212) 484-3900

and

**SCHAFER AND WEINER, PLLC**
DANIEL J. WEINER (P32010)
BRENDAN G. BEST (P66370)
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI  48304
(248) 540-3340
bbest@schaferandweiner.com

*Counsel for Ambac Assurance Corporation*