# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| | ) | |
| | ) | |

## RETIREMENT SYSTEMS' OBJECTION AND BRIEF REGARDING CLASSIFICATION OF RETIREE PENSION CLAIMS IN THE CITY'S PROPOSED PLAN OF ADJUSTMENT

The Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit (collectively, the "Retirement Systems") respectfully submit this Objection regarding the proposed classification scheme for pension claims in the Plan of Adjustment of Debts dated February 21, 2014 (Doc. 2708) (the "Plan")[1] filed by the City of Detroit, Michigan (the "City" or "Debtor").[2]

---

[1] Unless otherwise defined herein, capitalized terms used in this Objection have the meanings ascribed to them in the Plan and the Disclosure Statement with Respect to Plan for the Adjustment of Debts of the City of Detroit (Doc. 2709) (the "Disclosure Statement").

[2] The Retirement Systems are filing this Objection pursuant to the Court's Second Amended Order Establishing Procedures, Deadlines and Hearing Dates Related to the Debtor's Plan of Adjustment (Doc. 2937) (the "Second Amended Order"), which instructs parties to submit by March 21, 2014 briefs on whether the classification of retiree claims in the Plan violates the Bankruptcy Code. The Retirement Systems reserve the right to supplement and amend this Objection in response to further revisions to the Plan and the Disclosure Statement, or as a result of additional information that is obtained through discovery or otherwise. In addition, the Retirement Systems reserve the right raise all other objections to the Plan and the Disclosure Statement through separate objections as contemplated by the Second Amended Order.

The Retirement Systems are in ongoing discussions with the City and the Retiree Committee regarding the Plan's retiree claim classification scheme, and hope to reach a consensual resolution of the issues raised in this Objection. In this regard, the proposed reclassification of OPEB Claims to a separate class, announced in the Debtor's Statement With Respect to the Classification of Retiree Claims in the Plan of Adjustment of Debts of the City of Detroit (Doc. 3085) (the "<u>Classification Statement</u>"), filed on March 20, 2014, resolves some but not all of the classification issues with respect to retiree claims. Because discussions are ongoing, the Retirement Systems are filing this Objection as a protective matter to preserve their objections in light of the deadline to object to retiree claim classification issues set forth in the Court's Second Amended Order.

Notwithstanding the Retirement Systems' willingness to continue discussions with the City, nothing in this Objection should be construed as the Retirement Systems' endorsement of, or consent to, the Plan, the Plan's overall classification scheme, or the Plan's proposed treatment of Pension Claims. But if the Plan moves forward as proposed by the City, the classification scheme must be modified to comply with Bankruptcy Code requirement that claims receiving different treatment shall vote in separate classes.

2
200405328.1 14893/165083
13-53846-tjt    Doc 3142    Filed 03/21/14    Entered 03/21/14 16:10:56    Page 2 of 17

## I. SUMMARY OF OBJECTION

The original classification scheme set forth in the Plan provided for two classes of retiree claims: Class 10, labeled "PFRS Claims," included both PFRS Pension Claims and OPEB Claims held by Holders of PFRS Pension Claims. Similarly, Class 11, labeled "GRS Claims," included both GRS Pension Claims and OPEB Claims held by the Holders of GRS Pension Claims. The Pension Claims and the OPEB Claims are based on wholly different contractual, statutory and other legal bases and are to receive wholly different treatment under the Plan. The City has now agreed to place the OPEB Claims in a separate class.

But that necessary change does not fully resolve the classification issues. The Plan still classifies all PFRS Pension Claims in Class 10 and all GRS Pension Claims in Class 11, yet contemplates different treatment for distinct subsets of the Pension Claims that are classified together in Classes 10 and 11. Thus, even after the removal and separate classification of the OPEB Claims, the composition of Classes 10 and 11 still violates sections 1122(a) and 1123(a)(4) of the Bankruptcy Code, made applicable to this case by section 901(a).

Sections 1122(a) and 1123(a)(4) prohibit placing different claims in the same class under a plan of adjustment or providing different treatment for claims in the same class. Section 1122(a) provides that "a plan may place a claim … in a particular class only if such claim … is substantially similar to the other claims …

in such class." Section 1123(a)(4) further requires that a plan must "provide the same treatment for each claim or interest of a particular class," unless a claimant or interest holder individually agrees to less favorable treatment.

Specifically, within Class 10 are (1) PFRS Pension Claims that would recover, on average, approximately 72% to 76% of their current pension benefits (after reducing the Plan's purported 90-94% payment proposal to account for the elimination of cost of living adjustments, or "COLAs") (the "Standard Treatment"), as well as (2) PFRS Pension Claims that would receive some unspecified *additional amount* as a consequence of the Plan's provision for special payments to be made to Holders of PFRS Pension Claims who have "household income less than a threshold amount … tied to a percentage of federal poverty levels" (the "Enhanced Treatment"). *Plan at I.A.248*. While the Plan does not state the amount of the extra payments, by definition Holders of PFRS Pension Claims who receive the Enhanced Treatment will obtain greater percentage recovery than will the PFRS Pension Claims receiving the Standard Treatment. PFRS Pension Claims receiving the Standard Treatment should therefore be classified separately from PFRS Pension Claims receiving the Enhanced Treatment.

With respect to the Class 11 GRS Pension Claims, the same dichotomy exists between (1) GRS Pension Claims that would receive the Standard

4

200405328.1 14893/165083

13-53846-tjt    Doc 3142    Filed 03/21/14    Entered 03/21/14 16:10:56    Page 4 of 17

Treatment, resulting in a recovery of, on average, approximately 53% to 61% of their current benefits (after adjusting for the elimination of COLAs) and (2) those that would receive the Enhanced Treatment. *Plan at I.A.247*.

Moreover, if a DWSD Transaction occurs and the newly formed GLWA assumes responsibility for certain GRS Pension Claims, Holders of GRS Pension Claims who retired from or are still DWSD employees will be paid from assets of the GLWA, *Plan at II.B.3.u.ii.G*, and not from the DIA Proceeds, State GRS Consideration and, later, general revenues of the City that are pledged in payment of the GRS Pension Claims under the Plan. To the extent Holders of GRS Pension Claims are being paid in potentially different percentages by different entities, with different sources of assets and different risk profiles, such Holders are not receiving the same treatment and cannot be classified together.

In addition, the Plan's improper classification scheme violates section 1126 of the Bankruptcy Code, also incorporated by section 901(a). Section 1126 grants holders of impaired claims the right to vote with respect to their class's acceptance or rejection of a plan. The City cannot force creditors who it treats differently to vote within the same class.

The various subsets of the Pension Claims being offered enhanced or different distributions should each be in their own class. Each of these separate classes would then be entitled to have its vote tabulated separately in accordance

with sections 1126 and 1129. Unless all groups of claims that are receiving materially different treatment under the Plan are separately classified, the Plan cannot be confirmed.

## II. THE PLAN MUST SEPARATELY CLASSIFY CLAIMS THAT ARE RECEIVING MATERIALLY DIFFERENT TREATMENT

### A. The Statutory Framework

Under the Bankruptcy Code, where legal rights differ materially from one type of claim to another, separate classification is required. As provided by section 1122(a), except with respect to a class of *de minimis* claims established for purposes of administrative convenience, "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class." Congress intended that section 1122(a) "require[] classification based on the nature of the claims or interests classified, and permit[] the inclusion of claims or interests in a particular class only if the claim or interest being included is substantially similar to the other claims or interests of the class." S. Rep. No. 989, 95th Cong., 2d Sess. 118, reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5904.

Thus, courts in this district and others have stated that "dissimilar claims may not be classified together . . . ." *Aetna Cas. & Sur. Co. v. Clerk (In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d Cir. 1996); *In re Christian Love Fellowship Ministries, Int'l*, 2011 WL 5546926, at *2 (Bankr. E.D. Mich. Nov. 9,

6

2011) (citing *In re Chateaugay*); *In re Griswold Bldg., LLC*, 420 B.R. 666, 707 (Bankr. E.D. Mich. 2009) (citing *In re Chateaugay*). "To determine whether claims are 'substantially similar,' the proper focus is on 'the legal character of the claim as it relates to the assets of the debtor.'" *In re W.R. Grace & Co.*, 729 F.3d 311, 326 (3d Cir. 2013) (quoting *In re AOV Indus., Inc.*, 792 F.2d 1140, 1150 (D.C. Cir. 1986)).

In addition to the section 1122(a) requirement that only similar claims be included in the same class, Section 1123(a)(4) requires that a plan "provide the ***same treatment for each claim or interest of a particular class***" (emphasis supplied), unless a claimant or interest holder agrees to less favorable treatment for a particular claim. The Sixth Circuit has held that "disparate treatment of members of the same class violates section 1123(a)(4)'s equal treatment requirement." *Class Five Nev. Claimants v. Dow Corning Corp.* (*In re Dow Corning Corp.*), 280 F.3d 648, 661-63 (6th Cir. 2002), *cert. denied*, 537 U.S. 816 (2002) (finding a violation of §1123(a)(4) where certain claimants "were accorded far more effective recovery rights" than other claimants within the same class). More specifically, courts have construed §1123(a)(4) as requiring that: "(1) all class members must be subject to the same process for claim satisfaction; (2) all class members' claims must be of 'equal value' through the application of the same pro rata distribution or payment percentage procedures to all claims; and (3) all class members must give

7

up the same degree of consideration for their distribution under the plan." *In re W.R. Grace & Co.*, 475 B.R. 34, 121 (D. Del. 2012).

These requirements regarding the proper classification of claims apply with equal force in Chapter 9. *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060-61 (3d Cir. 1987) (upholding separate classification of, *inter alia*, employee benefit plan claims versus trade creditor claims); *Sanitary & Improvement Dist. 65 of Sarpy Cty., Neb. v. First Nat'l Bank of Aurora*, 79 B.R. 877 (D. Neb. 1987), *aff'd on other grounds*, 873 F.2d 209 (8th Cir. 1989) (upholding separate classification of bondholders versus warrant holders, due to different attributes and rights of repayment under state law). The City's Plan already recognizes the need for numerous classes in this complicated case – it currently contains 25 classes of claims, including subclasses of bond debt. *Plan at V.B.2.*

### B. The Plan Improperly Provides Different Treatment For Pension Claims Included in the Same Class

The Plan defines the PFRS Pension Claims and GRS Pension Claims as claims arising under any "contract, agreement, rule, ordinance, statute or law" for "any pension, disability or other post-retirement payment or distribution" payable to current or former employees. *Plan at I.1.141; I.1.196*. Yet the Plan provides significantly different treatment for Pension Claims within Classes 10 and 11.

The Standard Treatment of PFRS Pension Claims: The Plan estimates the amount of PFRS Pension Claims at approximately $1.588 billion (after subtracting

8

Class 10 OPEB Claims from the PFRS Claims). *Plan at II.B.3.t.i.* For the time period from the Effective Date of the Plan through June 30, 2023, the Plan proposes that these claims will be paid a reduced pension amount exclusively from $175 million of the DIA Proceeds, but only if Classes 10 and 11 accept the Plan and the DIA Settlement, with nothing provided from the City's general fund during that time period. *Plan at II.B.3.t.ii.* After mid-2023, the City will fund an amount sufficient to make the reduced pension payments in accordance with the terms of the Plan. *Id.* In addition, PFRS Pension Claims will receive a 4% boost to their reduced pension amounts over a 20-year period, to be paid from the State PFRS Consideration of up to an aggregate of $175 million, but only if Classes 10 and 11 accept the Plan and the individual Holder agrees to release the State and State Related Entities. *Id.* The DIA Proceeds and State PFRS Consideration, as well as the City amounts, will be paid to the PFRS, which administers the PFRS pension plan and makes the individual payments to retirees. *Plan at II.B.3.t.ii.*

The Standard Treatment of GRS Pension Claims: Class 11 estimates the GRS Pension Claims at approximately $2.3 billion (after subtracting Class 11 OPEB Claims from GRS Claims). *Plan at II.B.3.u.i.* During the initial period through June 30, 2023, the Plan proposes to pay a reduced pension amount from $675 million in payments from the Detroit Water and Sewerage Department and $50 million in DIA Proceeds. *Plan at II.B.3.u.ii.* After the initial period, these

9

claims would receive $195 million in DIA Settlement proceeds, payments from City revenues sufficient to pay the GRS Adjusted Pension Amounts, and up to $175 million from the State GRS Consideration. *Id.* Again, the DIA Proceeds and State GRS Consideration would be available only if Classes 10 and 11 accept the Plan, and the individual Holder grants a release to the State and State Related Entities. *Id.* The DWSD funds, the DIA Proceeds, the State GRS Consideration, as well as the City amounts, will be paid to the GRS, which administers the GRS pension plan and makes the individual payments to retirees. *Plan at II.B.3.u.ii.* As noted above, Class 11 also provides for the possibility that GLWA would assume certain GRS Pension Claims pursuant to a DWSD Transaction. *Plan at II.B.3.u.ii.G.*

Percentage Distributions: The City's proposal purports to pay PFRS Pension Claims, on average, approximately 72% to 76% of their current amount after accounting for the proposed termination of COLAs, and to pay GRS Pension Claims, on average, approximately 53% to 61% of their current benefit, also after taking into account the loss of COLAs. The exact amounts will depend upon whether Classes 10 and 11 vote to accept the Plan, and upon whether individual Holders of Pension Claims vote to accept the Plan or not.

The Enhanced Treatment Issue: The problem is that some of the Holders of PFRS and GRS Pension Claims will be paid higher amounts from the State PFRS

10

200405328.1 14893/165083
13-53846-tjt    Doc 3142    Filed 03/21/14    Entered 03/21/14 16:10:56    Page 10 of 17

or GRS Consideration, while others will receive less. The Plan proposes to provide the Enhanced Treatment to Holders of Pension Claims who have "household income less than a threshold amount … tied to a percentage of federal poverty levels." *Plan at I.A.247 and I.A.248.* This money will come from a partial holdback of the State Consideration for the class. Withholding these funds and allocating them only to the subset of the class members receiving the Enhanced Treatment results in the reduction of the amount of State Consideration available to the other Pension Claims that receive the Standard Treatment. *Id.* (State GRS Consideration and State PFRS Consideration "shall be reduced by" amounts attributable to enhanced payments to Holders "with household income less than a threshold amount …"). This is a zero-sum calculation – the Plan and Disclosure Statement do not identify any other funds to support the enhanced payments contemplated in the Plan. This result violates the principle that all claims in a class are to receive the same treatment.

Keeping its retirees above the federal poverty level as a result of the deep cuts it is seeking to impose is an appropriate concern for the City. However, because section 1123(a)(4) requires that a plan provide "the same treatment for each claim … of a particular class, unless the holder of a particular claim … agrees to a less favorable treatment," as a matter of bankruptcy law the Plan cannot place in the same class the Pension Claims that will receive the Enhanced Treatment and

those that will receive the Standard Treatment. While neither the Plan nor Disclosure Statement offer any quantification of the effect of the Enhanced Treatment versus the Standard Treatment of Pension Claims, the amounts are presumably material to achieve the goals of the Enhanced Treatment. These two groups must be classified separately under the Plan.

### C. DWSD Pension Claims Should be Separately Classified

The Plan contemplates the possibility of a DWSD Transaction. In such event, a pro rata share of GRS assets would be transferred to the new entity GLWA, along with the assumed liability for the pension liabilities associated with DWSD employees and retirees. *Plan II.B.3.u.ii.G.* It is unclear from the Plan and Disclosure Statement whether the pensions to be paid to the transferred group will be the GRS Adjusted Pension Amount or whether full assumption of current pension liabilities would result. Under this scenario, the transferred DWSD Pension Claims would apparently be paid from a different source, and possibly in different amounts, than other GRS Pension Claims.

The details of any DWSD Transaction and GLWA administration of the new retirement system are not provided, nor any estimate of the likelihood of such a transaction. What is disclosed: if a DWSD Transaction occurs, this group of GRS Pension Claims will be paid, perhaps under a different formula, from a separate fund by a different entity with a different risk profile. Because of this difference in

12

treatment, sections 1122(a) and 1123(a)(4) require separate classification and analysis of the probable percentage recovery under different scenarios. This very uncertainty illustrates the disclosure challenges when so much of the Plan remains wholly speculative.

    **D.    The Benefits From The DIA Settlement And Plan GRS Settlement Cannot Properly Be Conditioned On Acceptance Of The Plan By Holders Of GRS Pension Claims That Will Be Assumed By The GLWA In A DWSD Transaction**

The Plan's single classification of all GRS Pension Claims for voting purposes is also improper in the event that a DWSD Transaction occurs. As the Plan is currently structured, in the event of a DWSD Transaction, the State would apparently not make any contribution to satisfy GRS Pension Claims assumed by the GLWA. As a result, those GLWA-assumed claims would not receive distributions from assets that are attributable to the DIA Settlement and Plan GRS Settlement. *Plan at II.B.3.u.ii.G.* Yet Holders of **all** GRS Pension Claims must vote in favor of the Plan's proposed treatment of GRS Pension Claims as a condition to the State's tentative commitment to contribute the State GRS Consideration (and the State PFRS Consideration) toward the payment of the Pension Claims. *Plan at II.B.3.t.G. and II.B.3.u.I.* This linkage is inequitable and contrary to section 1126, and requires separate classification of GRS Pension Claims that would be assumed by a different entity pursuant to a DWSD Transaction.

13

## V. THE DISCLOSURE STATEMENT CANNOT BE APPROVED BECAUSE THE PLAN IS PATENTLY UNCONFIRMABLE

Under no reading of section 1122(a) and 1123(a)(4) is it possible to confirm a plan that includes in the same class claims that receive different recoveries and are satisfied by different sources of payment. Because the City proposes to classify dissimilar Pension Claims within the same classes under the Plan, in violation of section 1122(a), and provides for disparate treatment of claims within those classes, in violation of section 1123(a)(4), the Plan is patently unconfirmable and the Court should not approve the Disclosure Statement. "[A] bankruptcy court may address the issue of plan confirmation where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable." *See In re Am. Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012).

An impermissible classification scheme is one basis that courts have relied on in denying approval of a disclosure statement because the underlying plan would be patently unconfirmable. *In re Holley Garden Apartments, Ltd.*, 223 B.R. 822 (Bankr. M.D. Fla. 1998) (declining to approve a disclosure statement because the plan could not be confirmed where the debtor failed to establish a justifiable reason for classification scheme); *In re Curtis Ctr. Ltd. P'ship*, 195 B.R. 631, 638 (Bankr. E.D. Pa. 1996) (declining to approve the debtor's disclosure statement

14

based on improper classification of claims, because "a disclosure statement should be disapproved where the plan it describes is patently unconfirmable").

## VI. REMEDY: CLASSES 10 AND 11 MUST BE DIVIDED FOR PURPOSES OF BALLOTING AND DISTRIBUTIONS

Without endorsing the Plan, the Plan's classification scheme or its proposed treatment of Pension Claims, the Retirement Systems propose that to remedy this misclassification, Class 10 and Class 11 should be divided to provide a separate class for each of the distinct subsets of claims that currently are contained in those classes. Specifically, at a minimum, the Plan must establish separate subclasses for the PFRS Claims in Class 10 and the GRS Claims in Class 11, probably denominated subclasses 10A and 10B, and 11A, 11B and 11C, as follows:

- CLASS 10A: PFRS Pension Claims that are to receive the Standard Treatment;

- CLASS 10B: PFRS Pension Claims that are to receive the Enhanced Treatment;

- CLASS 11A: GRS Pension Claims that are to receive the Standard Treatment;

- CLASS 11B: GRS Pension Claims that are to receive the Enhanced Treatment; and

- CLASS 11C: GRS Pension Claims that are to be assumed by the GLWA pursuant to a DWSD Transaction.

15

## VII. RESERVATION OF RIGHTS REGARDING CLASSIFICATION OF OPEB CLAIMS

The version of the Plan that the City filed on February 21, 2014 included in Classes 10 and 11, as applicable, OPEB Claims for "post-retirement health, life and death benefits provided to retired employees of the City and their dependents … pursuant to the Employee Health and Life Insurance Benefit Plan and the Employee Supplemental Death Benefit Plan." *Plan at II.B.3.t* and *II.B.3.u*. The Classification Statement indicates that the City intends to file a revised Plan placing OPEB Claims in a separate class. Accordingly, the Retirement Systems have not raised objections to the classification of OPEB Claims currently set forth in the Plan. The Retirement Systems reserve the right to object to any revised plan or disclosure statement filed by the City, including with respect to any amended classification scheme for Pension Claims.

## VIII. CONCLUSION

The classification of Pension Claims set forth in Classes 10 and 11 of the Plan impermissibly places claims in the same class that are to receive materially different treatment in violation of sections 1122(a) and 1123(a)(4), and deprives creditors of their ability to vote to accept or reject a plan in classes consisting solely of similar claims that are receiving the same treatment, in violation of section 1126(a). In light of these serious flaws, the Plan must be revised before approval of the Disclosure Statement and solicitation package.

Dated: March 21, 2014

Respectfully submitted,

CLARK HILL PLC

  /s/ Robert D. Gordon
Robert D. Gordon (P48627)
Shannon L. Deeby (P60242)
Jennifer K. Green (P69019)
151 South Old Woodward Avenue
Suite 200
Birmingham, Michigan  48009
Telephone: (248) 988-5882
Facsimile: (248) 988-2502
rgordon@clarkhill.com

-and-

ARNOLD & PORTER LLP
Lisa Hill Fenning
777 South Figueroa Street
44th Floor
Los Angeles, California 90017
Telephone: (213) 243-4000
Facsimile: (213) 243-4199
lisa.fenning@aporter.com

*Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*