# EXHIBIT D

# XL CAPITAL ASSURANCE

1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 478-3400
Facsimile: (212) 478-3597

## FINANCIAL GUARANTY INSURANCE POLICY

**Obligor:** Detroit Police and Fire Retirement System Service Corporation

**Insured Obligation:** Scheduled Payments by the Obligor under the ISDA Master Agreement dated as of May 25, 2005, and the Confirmation (REF: SBSFPC-0011) thereto (evidencing a transaction thereunder) dated June 7, 2006 (collectively, the "Swap Agreement"), between the Obligor and SBS Financial Products Company, LLC (the "Swap Counterparty")

**Policy No:** CA03049B

**Effective Date:** June 12, 2006

XL Capital Assurance Inc. (XLCA), a New York stock insurance company, in consideration of the payment of the premium, hereby unconditionally and irrevocably guarantees to the Swap Counterparty, the full and complete payment by the Obligor of Scheduled Payments in respect of the Insured Obligation, subject only to the terms of this Policy (which includes the Endorsement attached hereto).

XLCA will pay the Insured Amount to the Swap Counterparty upon the presentation of a Payment Notice to XLCA (which Payment Notice shall include an irrevocable assignment to XLCA of all rights and claims in respect of the relevant Insured Obligation, as specified in the Payment Notice), on the later of (a) one (1) Business Day following receipt by XLCA of a Payment Notice or (b) the Business Day on which Scheduled Payments are due for payment. XLCA shall be subrogated to the Swap Counterparty's rights to payment on the Insured Obligations to the extent of any payment by XLCA hereunder. The obligations of XLCA with respect to a Scheduled Payment will be discharged to the extent funds to pay such Scheduled Payment are deposited in the account specified in the Payment Notice, whether such funds are claimed by the Swap Counterparty.

In addition, in the event that any Scheduled Payment which has become Due for Payment and which is made to the Swap Counterparty is recovered or is recoverable from the Swap Counterparty pursuant to a final order of a court of competent jurisdiction in an Insolvency Proceeding that such payment constitutes an avoidable preference to such Swap Counterparty within the meaning of any applicable bankruptcy law, XLCA unconditionally and irrevocably guarantees payment of the amount of such recovery (in accordance with the Endorsement attached hereto).

This Policy sets forth in full the undertaking of XLCA and shall not be cancelled or revoked by XLCA for any reason, including failure to receive payment of any premium due hereunder, and may not be further endorsed or modified without the written consent of XLCA. The premium on this Policy is not refundable for any reason. This Policy does not insure against loss of any prepayment or other acceleration payment which at any time may become due in respect of any Insured Obligation, other than at the sole option of XLCA, nor against any risk (other than Nonpayment and Avoided Payment), including any shortfalls, if any, attributable to the liability of the Obligor for taxes or withholding taxes if any, including interest and penalties in respect of such liability.

THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

XLCAP-004-Swap
v. 1/03

Any capitalized terms not defined herein shall have the meaning given such terms in the Endorsement attached hereto and forming a part hereof, or in the Swap Agreement referenced therein. In witness whereof, XLCA has caused this Policy to be executed as of the Effective Date.

XL CAPITAL ASSURANCE INC.

_____  
Name: James W. Lundy, Jr  
Title: Associate General Counsel

_____  
Name: Henri N. Gourd  
Title: Managing Director


# **XL CAPITAL ASSURANCE**

1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 478-3400

## ENDORSEMENT

**Obligor:** Detroit Police and Retirement System Service Corporation

**Policy No:** CA03049B

**Effective Date:** June 12, 2006

**Insured Obligation:** Scheduled Payments by the Obligor under the ISDA Master Agreement dated as of May 25, 2005, and the Confirmation (REF: SBSFPC-0011) thereto (evidencing a transaction thereunder) dated June 7, 2006 (collectively, the "Swap Agreement"), between the Obligor and SBS Financial Products Company, LLC (the "Swap Counterparty")

Upon the occurrence of a Transfer Event (as defined herein), paragraphs 1, 2 and 3 of this Endorsement shall be applicable and shall supersede any contrary provision in the Financial Guaranty Insurance Policy:

1. The Beneficiary of the Policy shall cease to be SBS Financial Products Company, LLC and instead shall be Merrill Lynch Capital Services, Inc. and any successor or assign pursuant to the Transfer Swap Agreement (as defined herein).

2. The definitions of the term "Insured Obligation" and "Swap Agreement" in the Policy shall be revised as set forth below:

"Insured Obligation" means the Transfer Transaction identical to the Previous Rate Swap Transaction and entered into by the Beneficiary pursuant to Paragraph 2(a) of the Transfer Agreement upon the occurrence of a Transfer Event; and

"Swap Agreement" means the Transfer Swap Agreement as that term is defined in the Paragraph 2 of the Transfer Agreement.

3. As used in this Endorsement, the following terms shall have the respective meanings set forth below:

"Previous Rate Swap Transaction" means the "Insured Obligation" as that term was defined in the Policy without giving effect to this Endorsement.

"Previous Swap Agreement" means the "Swap Agreement" as that term was defined in the Policy without giving effect to this Endorsement.

"Transfer Agreement" means the Transaction Transfer Agreement dated as of May 25, 2005 among SBS Financial Products Company, LLC, Detroit Police and Fire Retirement System Service Corporation and Merrill Lynch Capital Services, Inc.

"Transfer Event" means the occurrence of an Early Termination Date (as defined in the Previous Swap Agreement) with respect to the Previous Swap Agreement and all Transactions thereunder and the entering into of Transfer Transactions in accordance with Paragraph 2(a) of the Transfer Agreement.

XLCAP-004-Swap
v. 1/03

-2-

"Transfer Swap Agreement" has the meaning set forth in Paragraph 2(a) of the Transfer Agreement.

"Transfer Transaction' has the meaning set forth in Paragraph 2(a) of the Transfer Agreement.

This Endorsement forms a part of the Policy to which it is attached, effective on the inception date of the Policy.

IN WITHNESS WHEREOF, the Policy has caused this endorsement to be executed and attested on it behalf by its duly authorized officers.

|  | XL CAPITAL ASSURANCE INC. |
|---|---|
| Name: James W. Lundy, Jr. | Name: Henri N. Gourd |
| Title: Associate General Counsel | Title: Managing Director |

## Financial Guaranty Insurance Policy Endorsement
## Effective Date June 12, 2006

### Attached to and forming part of
### Financial Guaranty Insurance Policy No. CA03049B

Obligor: Detroit Police and Fire Retirement System Service Corporation

Insured Obligation: Scheduled Payments by the Obligor under the ISDA Master Agreement dated as of May 25, 2005, including the Schedule dated as of June 7, 2006 and the Confirmation (REF: SBSFPC-0011) thereto (evidencing a transaction thereunder) (collectively, the "Swap Agreement"), between the Obligor and SBS Financial Products Company, LLC (the "Swap Counterparty")

Beneficiary: SBS Financial Products Company, LLC

*Capitalized terms used herein and not otherwise defined herein or in the Policy shall have the meanings assigned to them in the Swap Agreement.*

As used herein, the term "Business Day" means any day other than Saturday or Sunday on which commercial banking institutions in New York, New York, are generally open for banking business.

As used herein, the term "Due for Payment" means, with respect to a Scheduled Payment, that such payment is due and payable on a Scheduled Payment Date therefore.

As used herein, the term "Insolvency Proceeding" means the commencement, after the date hereof, of any bankruptcy, insolvency, readjustment of debt, reorganization, marshalling of assets and liabilities or similar proceedings by or against any Person, the commencement, after the date hereof, of any proceedings by or against any Person for the winding up or liquidation of its affairs, or the consent, after the date hereof, to the appointment of a trustee, conservator, receiver or liquidator in any bankruptcy, insolvency, readjustment of debt, reorganization, marshalling of assets and liabilities or similar proceedings of or relating to any Person.

As used herein, the term "Insured Amount" means, that portion of the Scheduled Payments that shall become due for payment but shall be unpaid by reason of Nonpayment.

As used herein, the term "Nonpayment" means, with respect to any Scheduled Payment Date, the failure of the Swap Counterparty to receive in full, in accordance with the terms of the Swap Agreement that Scheduled Payment that is due for payment with respect to such date.

As used herein, the term "Person" means an individual, a partnership, a limited liability company, a joint venture, a corporation, a trust, an unincorporated organization, and a government or any department or agency thereof.

As used herein, the term "Policy" means this Financial Guaranty Insurance Policy and includes the Endorsement attached hereto.

As used herein, the term "Scheduled Payment" shall mean, with respect to each Scheduled Payment Date, an amount that is due and payable by the Obligor to the Swap Counterparty on such Scheduled Payment Date in accordance with the original terms and conditions of the Swap Agreement and without regard to any amendment or modification of the Swap Agreement after the Effective Date, unless such amendment or modification is approved by XLCA in writing; *provided*, that "Scheduled Payments" shall in no event include (a) any amounts due to the Swap Counterparty until the appropriate notice and certificate for payment in proper form shall have been timely received by XLCA, (b) any amounts due to the Swap Counterparty representing interest on overdue amounts, (c) any amounts due in respect of the Swap Agreement to the extent attributable to any interest or penalty, (d) any amounts payable by the Obligor in connection with an Event of Default, any Termination Event or as a result of the designation of an Early Termination Date (other than as expressly provided for in the following sentence) or (e) any amounts due in respect of, any taxes, withholding or other charge imposed by any governmental authority due in connection with the payment of any Scheduled Payment to the Swap Counterparty (all such amounts, "Excluded Amounts"). "Scheduled Payments" shall include payments due under the Swap Agreement by the Obligor with respect to (i) an Early Termination Date designated by XLCA pursuant to Part 5(d) of the Schedule to the Swap Agreement and (ii) such other Additional Termination Event specified in Part 5(b)(i) or (ii) of the Schedule to the Swap Agreement provided that the amount payable under this Policy pursuant to this clause (ii) shall not exceed $9,168,610.

As used herein, the term "Scheduled Payment Date" means the "Fixed Rate Payer Payment Dates" specified in the Amended and Restated Confirmation and any other date a Scheduled Payment referenced in the last sentence of the definition of Scheduled Payment is due and payable under the Swap Agreement.

As used herein, the term "Term of this Policy" means the period from and including the Effective Date to and including the first date on which (i) all Scheduled Payments have been paid that are required to be paid by the Obligor under the Swap Agreement; (ii) the 91 day period during which any Scheduled Payment could have been avoided in whole or in part as a preference payment under applicable bankruptcy, insolvency, receivership or similar law has expired, and (iii) if any proceedings requisite to avoidance as a preference payment have been commenced prior to the occurrence of (i) and (ii) above, a final and nonappealable order in resolution of each such proceeding has been entered *provided, further*, that if the Swap Counterparty is required to return any Avoided Payment (as defined below) as a result of such insolvency proceeding, then the Term of the Policy shall terminate on the date on which XLCA has made all payments

XLCAP-004-Swap
v. 1/03

-5-

13-53846-tjt   Doc 3153-9   Filed 03/21/14   Entered 03/21/14 23:44:31   Page 7 of 15

required to be made under the terms of this Policy in respect of all such Avoided Payments.

To make a claim under the Policy, the Swap Counterparty shall deliver to XLCA a Payment Notice in the form of Exhibit A hereto (a "Payment Notice"), appropriately completed and executed by the Swap Counterparty. A Payment Notice under this Policy may be presented to XLCA by (i) delivery of the original Payment Notice to XLCA at its address set forth below, or (ii) facsimile transmission of the original Payment Notice to XLCA at its facsimile number set forth below. If presentation is made by facsimile transmission, the Swap Counterparty shall (x) simultaneously confirm transmission by telephone to XLCA at its telephone number set forth below, and (y) as soon as reasonably practicable, deliver the original Payment Notice to XLCA at its address set forth below. Any Payment Notice received by XLCA after 10:00 a.m., New York City time, on a Business Day, or on any day that is not a Business Day, will be deemed to be received by XLCA at 9:00 a.m., New York City time, on the next succeeding Business Day. XLCA shall make payments due in respect of Insured Amounts no later than 2:00 p.m. New York City time to the Swap Counterparty upon the presentation of a Payment Notice to XLCA on the later of (a) one (1) Business Day following receipt by XLCA of a Payment Notice or (b) the Business Day on which Scheduled Payments are due for payment.

Subject to the foregoing, if the payment of any amount with respect to the Scheduled Payment is voided as a preference (a "Preference Event") as a result of an Insolvency Proceeding and as a result of such Preference Event, the Swap Counterparty is required to return such voided payment, or any portion of such voided payment, made in respect of the Insured Obligation (an "Avoided Payment"), XLCA will pay to the Swap Counterparty an amount equal to such Avoided Payment, as and when such payment would otherwise be due pursuant to the Swap Agreement without regard to acceleration or prepayment, and upon payment of such Avoided Payment and receipt by XLCA from the Swap Counterparty of (x) a certified copy of a final order of a court exercising jurisdiction in such Insolvency Proceeding to the effect that the Swap Counterparty is required to return any such payment or portion thereof because such payment was voided under applicable law, with respect to which order the appeal period has expired without an appeal having been filed (the "Final Order"), (y) an assignment, substantially in the form attached hereto as Exhibit B, properly completed and executed by the Swap Counterparty irrevocably assigning to XLCA all rights and claims of the Swap Counterparty relating to or arising under such Avoided Payment, and (z) a Payment Notice in the form of Exhibit A hereto appropriately completed and executed by the Swap Counterparty.

XLCA shall make payments due in respect of Avoided Payments no later than 2:00 p.m. New York City time on the Business Day following XLCA's receipt of the documents required under clauses (x) through (z) of the preceding paragraph. Any such documents received by XLCA after 10:00 a.m. New York City time on any Business Day or on any day that is not a Business Day shall be deemed to have been received by XLCA at 9:00 a.m., New York City time, on the next succeeding Business Day. All payments made by XLCA hereunder on account of any Avoided Payment shall be disbursed to the

receiver, conservator, debtor-in-possession or trustee in bankruptcy named in the Final Order and not to the Swap Counterparty directly (unless the Swap Counterparty previously paid such amount to the receiver, conservator, debtor-in-possession or trustee in bankruptcy named in the Final Order, in which case such payment shall be disbursed to the Swap Counterparty upon proof of such payment reasonably satisfactory to XLCA).

XLCA hereby waives and agrees not to assert any and all rights to require the Swap Counterparty to make demand on or to proceed against any person, party or security prior to the Swap Counterparty demanding payment under this Policy.

No defenses (including the defense of fraud in the inducement or fraud in the fact), set-offs and counterclaims of any kind available to XLCA so as to deny payment of any amount due in respect of this Policy will be valid and XLCA hereby waives and agrees not to assert any and all such defenses (including, without limitation, defense of fraud in the inducement or fact, or any other circumstances which would have the effect of discharging a surety in law or in equity), set-offs and counterclaims, including, without limitation, any such rights acquired by subrogation, assignment or otherwise. Upon any payment hereunder, in furtherance and not in limitation of XLCA's equitable right of subrogation, XLCA will be subrogated to the rights of the Swap Counterparty to receive any and all amounts due in respect of the obligations in respect of which XLCA has made a payment hereunder. Any rights of subrogation acquired by XLCA as a result of any payment made under this Policy shall, in all respects, be subordinate and junior in right of payment to the prior indefeasible payment in full of any amounts due the Swap Counterparty on account of payments due under the Insured Obligation.

This Policy is neither transferable nor assignable, in whole or in part except to a successor counterparty to whom the Swap Agreement is transferred and assigned in accordance with the terms and provisions of the Swap Agreement, with written notice to XLCA.

All Payment Notices and other notices, presentations, transmissions, deliveries and communications made by the Swap Counterparty to XLCA with respect to this Policy shall specifically refer to the number of this Policy and shall be made to XLCA at:

> XL Capital Assurance Inc.
> 1221 Avenue of the Americas
> New York, New York 10020
> Attention: Surveillance
> Telephone: (212) 478-3400
> Facsimile: (212) 478-3597

or such other address, telephone number or facsimile number as XLCA may designate to the Swap Counterparty in writing from time to time. Each such Payment Notice and other notice, presentation, transmission, delivery and communication shall be effective only upon actual receipt by XLCA.

XLCAP-004-Swap
v. 1/03

-7-

13-53846-tjt    Doc 3153-9    Filed 03/21/14    Entered 03/21/14 23:44:31    Page 9 of 15

The obligations of XLCA under this Policy are irrevocable, primary, absolute and unconditional, subject to satisfaction of the conditions for making a claim under the Policy, and neither the failure of any Person to perform any covenant or obligation in favor of XLCA (or otherwise), nor the failure or omission to make a demand permitted hereunder, nor the failure of any assignment or grant of any security interest, nor the commencement of any Insolvency Proceeding shall in any way affect or limit XLCA's obligations under this Policy. If a successful action or proceeding to enforce this Policy is brought by the Swap Counterparty, the Swap Counterparty shall be entitled to recover from XLCA costs and expenses reasonably incurred, including, without limitation, reasonable fees and expenses of counsel.

This Policy and the obligations of XLCA hereunder shall terminate on the expiration of the Term of this Policy. This Policy shall be returned to XLCA by the Swap Counterparty upon the expiration of the Term of this Policy.

The Property/Casualty Insurance Security Fund specified in Article 76 of the New York Insurance Law does not cover this Policy. The Florida Insurance Guaranty Association created under Part II of Chapter 631 of the Florida Insurance Code does not cover this Policy. In the event that XLCA were to become insolvent, the California Insurance Guaranty Association, established pursuant to Article 14.2 of Chapter 1 of Part 2 of Division 1 of the California Insurance Code excludes from coverage any claims arising under this Policy.

**THIS POLICY SHALL BE CONSTRUED, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES THAT WOULD REQUIRE THE APPLICATION OF THE LAWS OF ANY OTHER JURISDICTION.**

In the event any term or provision of the form of this Policy is inconsistent with the provision of this Endorsement, the provision of this Endorsement shall take precedence and be binding.

[Remainder of Page Intentionally Left Blank]

**IN WITNESS WHEREOF**, XL Capital Assurance Inc. has caused this Endorsement to the Policy to be executed on the Effective Date.

XL CAPITAL ASSURANCE INC.

_____
Name: James W. Lundy, Jr.
Title: Associate General Counsel

_____
Name: Henri N. Gourd
Title: Managing Director

**Exhibit A to Financial Guaranty Insurance Policy No. CA03049B**

XL Capital Assurance Inc.
1221 Avenue of the Americas
New York, New York 10020
Attention:    Surveillance

**PAYMENT NOTICE
UNDER FINANCIAL GUARANTY INSURANCE POLICY No. CA03049B**

   SBS Financial Products Company, LLC, as Swap Counterparty (the "Swap Counterparty"), hereby certifies to XL Capital Assurance Inc. ("XLCA") with reference to that certain Financial Guaranty Insurance Policy, No. CA03049B, dated June 12, 2006 (together with the Endorsement attached thereto, the "Policy"), issued by XLCA in favor of the Swap Counterparty under the Swap Agreement, as follows:

1. The Scheduled Payment due with respect to the Scheduled Payment Date of [DATE], is $_____. The amount of such Scheduled Payment which remains due to the Swap Counterparty is _____ (the "Shortfall").

2. The Swap Counterparty is making a claim under the Policy for a payment to be applied to payments of Scheduled Payments with respect to the Swap Agreement.

3. The Swap Counterparty hereby assigns to XLCA the rights of the Swap Counterparty with respect to the Insured Obligation to the extent of any payments under the Policy. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to XLCA in respect of such payments. The Swap Counterparty shall take such action and deliver such instruments as may be reasonably requested or required by XLCA to effectuate the purpose of this clause 3.

4. The Swap Counterparty hereby appoints XLCA as agent and attorney-in-fact for the Swap Counterparty in any legal proceeding with respect to the Insured Obligation. The Swap Counterparty hereby agrees (without limiting the generality of the foregoing) that XLCA may at any time during the continuation of any proceeding by or against any debtor with respect to which a Preference Claim (as defined below) is asserted or any other Insolvency Proceeding, direct all matters relating to such Preference Claim or other Insolvency Proceeding, including, without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Insured Obligation (a "Preference Claim"), (B) the direction of any appeal of any order relating to any Preference Claim and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, the Swap Counterparty hereby agrees that XLCA shall be subrogated to, and the Swap Counterparty hereby delegates and assigns, to the fullest extent permitted by law, the rights of the Swap Counterparty in the conduct of any Insolvency Proceeding related to the Insured Obligation, including, without limitation, all rights of any party to an adversary proceeding or action with respect to any court order issued in connection with any such Insolvency Proceeding.

5. [The Swap Counterparty hereby represents and warrants, based upon information available to it, that (i) the amount entitled to be drawn under the Policy on the date hereof in respect of Avoided Payments is the amount paid or to be paid simultaneously with such draw on the Policy by the Swap Counterparty on account of a Preference Event [$_____] (the "Avoided Payment Amount"), (ii) the Swap Counterparty has paid or simultaneously with such draw on the Policy will pay such Avoided Payment Amount, and (iii) the documents required by the Policy to be delivered in connection with such Avoided Payment and Avoided Payment Amount have previously been presented to XLCA or are attached hereto.]

6. Payment should be made by wire transfer directed to [Specify Account].

Upon any payment hereunder, in furtherance and not in limitation of XLCA's equitable right of subrogation, XLCA will be subrogated to the rights of the Swap Counterparty to receive any and all amounts due in respect of the Insured Obligations in respect of which XLCA has made a payment hereunder.

Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to them in the Policy (as the same may be amended, amended and restated, supplemented or otherwise modified from time to time).

IN WITNESS WHEREOF, this notice has been executed this ____ day of _____, ____.

        SBS Financial Products Company, LLC
        as Swap Counterparty


        By:_____
           Authorized Officer

*Any Person Who Knowingly And With Intent To Defraud Any Insurance Company Or Other Person Files An Application For Insurance Or Statement Of Claim Containing Any Materially False Information, Or Conceals For The Purpose Of Misleading Information Concerning Any Fact Material Thereof, Commits A Fraudulent Insurance Act, Which Is A Crime, And Shall Also Be Subject To A Civil Penalty Not To Exceed Five Thousand Dollars And The Stated Value Of The Claim For Each Such Violation*

## Exhibit B to Financial Guaranty Insurance Policy, No. CA03049B

### Form of Assignment

Reference is made to the Financial Guaranty Insurance Policy No. CA03049B, dated June 12, 2006 (together with the Endorsement attached thereto, the "Policy") issued by XL Capital Assurance Inc. ("XLCA") relating to the [Identify Insured Obligation]. Unless otherwise defined herein, capitalized terms used in this Assignment shall have the meanings assigned thereto in the Policy as incorporated by reference therein. In connection with the Avoided Payment of [$ ] paid by the undersigned (the "Swap Counterparty") on [ ] and the payment by XLCA in respect of such Avoided Payment pursuant to the Policy, the Swap Counterparty hereby irrevocably and unconditionally, without recourse, representation or warranty (except as provided below), sells, assigns, transfers, conveys and delivers all of the Swap Counterparty's rights, title and interest in and to any rights or claims, whether accrued, contingent or otherwise, which the Swap Counterparty now has or may hereafter acquire, against any person relating to, arising out of or in connection with such Avoided Payment. The Swap Counterparty represents and warrants that such claims and rights are free and clear of any lien or encumbrance created or incurred by the Swap Counterparty.[1]

SBS Financial Products Company, LLC.,
as Swap Counterparty

By:_____
    Authorized Officer

---

[1] In the event that the terms of this form of assignment are reasonably determined to be insufficient solely as a result of a change of law or applicable rules after the date of the Policy to fully vest all of the Swap Counterparty's right, title and interest in such rights and claims, the Swap Counterparty and XLCA shall agree on such other form as is reasonably necessary to effect such assignment, which assignment shall be without recourse, representation or warranty except as provided above.

XLCAP-004