# EXHIBIT I

**Exhibit A**

**Ordinance No. 03-05**

# TRUE COPY CERTIFICATE

Form C of D—16-CE

STATE OF MICHIGAN, } ss.
City of Detroit }

CITY CLERK'S OFFICE, DETROIT

I, *Jackie L. Currie*, City Clerk of the City of Detroit, in said State, do hereby certify that the annexed paper is a TRUE COPY OF **RESOLUTION**

adopted (passed) by the City Council at session of

**February 4,** 20**05**

and approved by Mayor

**February 8,** 20**05**

as appears from the Journal of said City Council in the office of the City Clerk of Detroit, aforesaid; that I have compared the same with the original, and the same is a correct transcript therefrom, and of the whole of such original.

In Witness Whereof, I have hereunto set my hand and affixed the corporate seal of said City, at

Detroit, this 2nd

day of **June** A.D. 20**05**

[signature]

CITY CLERK

13-53846-tjt Doc 3153-14 Filed 03/24/14 Entered 03/24/14 13:32:21 Page 2 of 8

# APPROVED BY DETROIT CITY COUNCIL
# SPECIAL SESSION
# FRIDAY, FEBRUARY 4, 2005

**ORDINANCE NO. 03-05**
**CHAPTER 47**
**TO PROVIDE FOR AN ALTERNATIVE FUNDING MECHANISM WITH RESPECT TO THE CITY'S OBLIGATIONS TO MAKE ANNUAL CONTRIBUTIONS TO FUND THE BENEFITS AVAILABLE UNDER THE GENERAL RETIREMENT SYSTEM IN ACCORDANCE WITH ARTICLE 9, SECTION 24 OF THE 1963 MICHIGAN CONSTITUTION AND SECTION 1140m OF THE PUBLIC EMPLOYEE RETIREMENT SYSTEM INVESTMENT ACT, MCL 38.1140m.**

**AN ORDINANCE to amend Chapter 47 of the 1984 Detroit City Code by amending Section 47-2-18, *Method of financing*, and Section 47-2-20, *Management of Funds*, to provide for an alternative funding mechanism with respect to the City's obligation to make annual contributions to fund the benefits available under the *General Retirement System* in accordance with Article 9, Section 24 of the 1963 Michigan Constitution and Section 1140m of the *Public Employee Retirement System Investment Act*, MCL 38.1140m. This Ordinance does not rescind any substantive rights, entitlements or obligations with respect to benefits earned or accrued by members, retirees or beneficiaries of the System. This Ordinance does not supersede any conflicting provision of any collective bargaining agreements.**

IT IS HEREBY ORDAINED BY THE PEOPLE OF THE CITY OF DETROIT THAT:

**Section 1.** Chapter 47 of the 1984 Detroit City Code, be amended by amending Section 47-2-18 and 47-2-20, to read as follows:

**Sec. 47-2-18. Method of financing.**

(a) *Annuity Savings Fund of the 1973 Defined Contribution Plan.*

(1) The *Annuity Savings Fund* of the *1973 Defined Contribution Plan* shall be the fund in which shall be accumulated at regular interest, the contributions of Members to provide their annuities. At the election of the Member, the amount of the basic contribution of a Member to the Retirement System may be zero percent (0%), three percent (3%), five percent (5%), or seven percent (7%) of annual compensation. If a Member elects three percent (3%), his or her contribution shall be that amount which is subject to taxation under the provisions of the *Federal Insurance Contribution Act*, 26 USC 3101 *et seq.* (Act), plus five percent (5%) of the portion of annual compensation, if any, which exceeds the amount subject to taxation under that Act.

(2) The contribution rate elected by the Member under Section 47-2-18(a)(1) of this Code shall be deducted from the Members' compensation notwithstanding that the minimum compensation provided by law for any Member shall be reduced thereby. Payment of compensation, less said deductions, shall be a complete discharge of all claims and demands whatsoever for the services rendered by the said Member during the period covered by such payment, except as to benefits provided under this Article.

(3) Upon retirement of a Member with a *Retirement Allowance*, the Member's accumulated contributions shall be transferred from the *Annuity Savings Fund* to the *Annuity Reserve Fund*, refunded to the Member, or a combination thereof.

(b) *Annuity Reserve Fund.*

The *Annuity Reserve Fund* shall be the fund from which all annuities and benefits in lieu of annuities payable as provided in this Article, shall be paid. If a disability retiree is reinstated to active City service, the retiree's Annuity Reserve at that time shall be transferred from the *Annuity Reserve Fund* to the *Annuity Savings Fund* and credited to his or her individual account therein.

(c) *Pension Accumulation Fund.*

The *Pension Accumulation Fund* shall be the fund in which shall be accumulated reserves for the pensions and other benefits payable from the contributions made by the City, and from which shall be paid pensions and other benefits on account of Members with prior service credit, and transfers as provided in this Section. Contributions to and payments from the *Pension Accumulation Fund* shall be made as follows:

(1) Upon the basis of such mortality and other tables of experience and Regular Interest, as the Board shall adopt from time to time, the Actuary shall annually compute the amount of contributions, which, when made annually by the City during the entire prospective City service of Members without prior service credit, will be sufficient to provide the pension reserves required at the time the Members leave City employment, to cover the pensions to which they might be entitled or which might be payable because of their City employment. Upon the retirement of a Member without prior service credit, or upon a Member's death in the performance of duty, the *Pension Reserve Fund* for the pension or pensions to be paid on the Member's account shall be transferred from the *Pension Accumulation Fund* to the *Pension Reserve Fund.*

(2) Upon the basis of such mortality and other tables of experience and regular interest as the Board shall adopt from time to time, the Actuary shall compute annually the pension reserve liabilities for pensions being paid to Retirees and Beneficiaries.

(3) On an annual basis, the Board shall ascertain and report to the Mayor and the Council the amount of City contributions due to the System. The Council shall appropriate and the City shall pay such contributions during the ensuing Fiscal year. When paid, such contributions shall be credited to the *Pension Accumulation Fund.*

(4) If the amount appropriated by the City and paid to the System for any Fiscal year is insufficient to make the transfers and pay the pensions from the *Pension Accumulation Fund* as provided in this Section, the amount of such insufficiency shall be provided by the appropriating authorities of the City.

(d) *Accrued Liability Fund.* Pursuant to Ordinance No. 05-05, which authorizes the creation of the *Detroit General Retirement Service Corporation,* the City has entered into a transaction (the "Pension Funding Transaction") to obtain funds as an alternative to those available through the traditional funding mechanism described above in Subsection (c). The proceeds generated by the Pension Funding Transaction (or any Additional Pension Funding Transactions, as described below) that will be deposited into the System will be termed the "Funding Proceeds." The Funding Proceeds will be deposited into a new fund in the System to be called the *Accrued Liability Fund.* The purpose of the Funding Proceeds will be to fund all or part of the heretofore unfunded actuarial accrued liability ("UAAL") of the System, as determined as of a date certain, *i.e.*, the "Determination Date," pursuant to the System's actuarial valuation as of that date. The Funding Proceeds will be assets of the System and will be applied, together with all other assets of the System, to fund the System's obligation to pay accrued benefits.

This *Accrued Liability Fund* shall contain only the Funding Proceeds of this Pension Funding Transaction, and any earnings thereon. Should the City, by future ordinance, choose to raise additional moneys by additional pension funding transactions ("Additional Pension Funding Transactions") in order to fund the then existing UAAL of the System as of a future date certain, a new and separate *Accrued Liability Fund* shall be created within the System to contain the proceeds, and any earnings thereon, of any Additional Pension Funding Transactions, and a new *Accrued Liability Fund* will be created for each successive Additional Pension Funding Transaction undertaken by the City, if any. The treatment of any Additional *Accrued Liability Fund* shall be the same as described below:

(1) The Funding Proceeds deposited in the *Accrued Liability Fund* will be subject to the oversight and investment direction of the Board of Trustees of the General Retirement System, consistent with the Board's obligations under Section 47-2-20 (Management of Funds). The Board will invest the Funding Proceeds as part of the System's overall assets, and will not differentiate the Funding Proceeds from other System assets for investment purposes.

(2) All interest, dividends and other income derived from the investment of the Funding Proceeds shall be credited annually to the applicable *Accrued Liability Fund* on a total System rate of return basis determined by crediting the applicable *Accrued Liability Fund* with the investment return experienced by the System in total for all of its investments for the year. This shall be done by first determining the rate of return for the total assets in the System for the fiscal year, and then crediting back to each *Accrued Liability Fund* an amount that is determined by multiplying that rate of return times the balance in the *Accrued Liability Fund* as of the beginning of the fiscal year, less an amount obtained by multiplying one-half of the System's rate of return times the amount transferred to the *Pension Accumulation Fund* for that year.

As provided in Section 47-2-18(g), the interest, dividends and other income derived from the investment of the Funding Proceeds deposited in any *Accrued Liability Fund* are "other moneys" the disposition of which is specifically provided for in this Article, and these moneys will not be credited to the *Income Fund.* The interest, dividends and other income derived from the investment of the Funding Proceeds deposited in any *Accrued Liability Fund* will not be credited to any Funds other than the *Pension Accumulation Fund.*

(3) Upon the creation of the *Accrued Liability Fund* and the deposit of the Funding Proceeds into the applicable *Accrued Liability Fund,* there shall be established a schedule for transferring assets of the *Accrued Liability Fund* by crediting them to the *Pension Accumulation Fund* on a regular basis over the period required to fully amortize that portion of the System's UAAL determined as of the applicable Determination Date.

The System's UAAL determined as of the applicable Determination Date shall be the "Determined Accrued Liability." The period over which the Determined Accrued Liability is to be fully amortized, as specified in the System's actuarial valuation as of the applicable Determination Date, is the "Amortizing Period." The amount to be transferred each fiscal year (or monthly portion thereof) to the *Pension Accumulation Fund* from the *Accrued Liability Fund* is the "Scheduled Amortizing Amount."

With respect to the Pension Funding Transaction and any Additional Pension Funding Transactions, the Scheduled Amortizing Amount will equal a level percentage of the City's monthly payroll during the fiscal year, as determined by the City's weekly payroll reports made available to the Board. The level percentage of the City's monthly payroll that will be used to determine the Scheduled Amortizing Amount will be a level percentage that is equal to the level percentage that is specified in the actuarial valuation as of the applicable Determination Date as being the percentage of the City's monthly payroll required to amortize the Determined Accrued Liability over the Amortizing Period multiplied by a fraction. The numerator of the fraction shall be the amount of the applicable Funding Proceeds up to the full amount of the Determined Accrued Liability as of the Determination Date. The denominator of the fraction shall be the System's Determined Accrued Liability on that date.

***Commentary:*** By way of example only, the Scheduled Amortizing Amount would be determined as follows: (1) the Determination Date is June 30, 2004, (2) the Funding Proceeds are deposited into the System during the 2004-2005 Fiscal Year, (3) the June 30, 2004 actuarial valuation produced a UAAL of $800 million, (4) the City's contribution required to amortize that UAAL is 16% of the City's payroll, and (5) the Funding Proceeds are $600 million, then the Scheduled Amortizing Amount for Fiscal Year 2005-06 would be 16% times ($600 million/$800 million)

times the City's payroll for 2005-2006. This would be 12% times the City's payroll for that fiscal year.

With respect to the Pension Funding Transaction, or any Additional Pension Funding Transactions, where the applicable Determination Date occurs after the date of the actuarial valuation that determines the City's contribution for the fiscal year during which the applicable Funding Proceeds are deposited into the System, for such fiscal year, there will be transferred from the applicable *Accrued Liability Fund* to the *Pension Accumulation Fund* an amount that is specified in such actuarial valuation as being the City's required contribution needed to amortize the System's UAAL as of the date of such actuarial valuation, multiplied by a fraction. The numerator of the fraction shall be the amount of the applicable Funding Proceeds up to the full amount of the UAAL specified in such actuarial valuation, and the denominator of the fraction shall be the System's total UAAL as set forth in that same actuarial valuation.

*Commentary:* By way of example only, the Scheduled Amortizing Amount in this case would be determined as follows: (1) the Determination Date is June 30, 2004, (2) the Funding Proceeds had been deposited into the System during the 2004-2005 Fiscal Year, (3) the June 30, 2003 actuarial valuation produced a UAAL of $733 million, (4) the City's contribution required to amortize that UAAL is 13.9% of the City's payroll, and (5) the Funding Proceeds are $600 million, then the Scheduled Amortizing Amount for Fiscal Year 2004-05 would be 13.9% times ($600 million/$733 million) times the City's payroll for 2004-2005. This would be 11.4% times the City's payroll for that fiscal year.

Should the Board at some future time adopt a different period for amortizing the System's UAAL (a "Revised Amortizing Period"), the Scheduled Amortizing Amount for ensuring years may change. If the Revised Amortizing Period provides for a longer period during which to amortize the System's UAAL (*i.e.*, an "Extended Amortizing Period"), then the Amortizing Period initially used to amortize the applicable Determined Accrued Liability will also be revised. There will then be established a new schedule for amortizing the Determined Accrued Liability, and the Scheduled Amortizing Amount will be based on the level percentage of the City's monthly payroll being equal to what it would be if the then unamortized balance of the Determined Accrued Liability were re-amortized over the Extended Amortizing Period. If the Revised Amortizing Period is changed so that the System's UAAL is to be amortized over a shorter period than the one initially used to amortize the applicable Determined Accrued Liability, then that Scheduled Amortizing Amount will not be changed.

(4) Each year (or monthly portion thereof), when the City is required to make its regular contribution to the System — the amount of which is to be determined pursuant to Subsection (c) and the timing of which is set forth in Section 47-2-19(b) — the Board will transfer the Scheduled Amortizing Amount from the *Accrued Liability Fund* and credit it to the *Pension Accumulation Fund;* provided, however, that this transfer cannot occur unless and the until the Board has been notified pursuant to the Pension Funding Transaction, or any Additional Pension Funding Transaction, if applicable, that the City is current on the service payments required under the applicable Pension Funding Transaction.

(5) Should the Scheduled Amortizing Amount not be available for transfer because of the City's failure to make a timely service payment pursuant to the applicable Pension Funding Transaction, the Board will take any permitted action, including the filing of a civil action against the City, as contemplated in Section 47-4-3(3), to effectuate the transfer of the Scheduled Amortizing Amount.

Should the City's Finance Director certify to the Board by a duly attested notice that the City has no available funds to make the service payments required by the applicable Pension Funding Transaction, in that specific circumstance, the Board shall be authorized to transfer the Scheduled Amortizing Amount for that fiscal year (or monthly portion thereof) to the *Pension Accumulation Fund*, absent the notice requirement set forth in Section 47-2-18(d)(4).

(6) Since the Funding Proceeds are to be considered assets of the System and are intended to fund the applicable Determined Accrued Liability, the City shall be required to make only a proportional contribution for any fiscal year (or monthly portion thereof) ending after the date the Funding Proceeds are deposited into the applicable Accrued Liability Fund, but prior to a fiscal year whose corresponding actuarial valuation includes the Funding Proceeds in the System's total assets. The proportional contribution to fund the System's then existing UAAL, if any, shall be the level percentage of the City's payroll specified in the actuarial valuation for the applicable fiscal year as the City's required contribution needed to amortize the System's then existing UAAL, multiplied by a fraction. The numerator of the fraction shall be the amount of the Sysem's total UAAL as determined in such actuarial valuation minus the amount of the applicable Funding Proceeds, but not less than zero. The denominator of the fraction shall be the amount of the System's total UAAL in such valuation. Actuarial valuations following the deposit of the applicable Funding Proceeds into the System shall include the Funding Proceeds in the total assets of the System to determine any ensuing UAAL of the System, and the Funding Proceeds shall offset any such actuarial liability accordingly.

*Commentary:* By way of example only, the following indicates how the procedure described above would operate. Assume the following facts — (1) the Determination Date is June 30, 2004; (2) the June 30, 2004 actuarial valuation produced a UAAL of $800 million and a contribution toward the UAAL of 18% of the City's payroll; (3) the Funding Proceeds were $600 million and were deposited in the System during the 2004-2005 Fiscal Year; (4) the first actuarial valuation which included the Funding Proceeds in the System's assets was as of June 30, 2005 and (5) the June 30, 2003 valuation which determines the City's required contribution for fiscal 2004-05 produced a total UAAL of $733 million and a contribution toward that UAAL of 13.9% of the City's payroll. Then:

- The fiscal year ending after the date of deposit would be the year ending June 30, 2005, or the 2004-2005 Fiscal Year.
- The first fiscal year whose corresponding valuation reflected the Funding Proceeds in its assets would be the 2006-2007 year.
- Thus, the City's required UAAL contribution for fiscal 2004-2005 would be 13.9% of the City's payroll times ($733 million — $600 million) divided by $733 million, or 2.5% of payroll. The City's required UAAL contribution for fiscal 2005-06 would be 18% of the City's payroll times ($800 million — $600 million) divided by $800 million, or 4% of the City's payroll.
- Beginning with the Fiscal Year 2006-2007, whose contribution is determined by the June 30, 2005 actuarial valuation, the City's required UAAL contribution would be the percentage of its payroll developed in the corresponding actuarial valuation that included the Funding Proceeds as being part of the System's assets.

Any contribution the City has made to the System for any fiscal year during which the Funding Proceeds from any applicable Pension Funding Transaction have become assets of the System. Where the amount of the contribution is equal to or less than the normal cost of that fiscal year, the City's contribution shall be deemed to have been made in satisfaction of its obligation to contribute an amount equal to the System's normal cost for that fiscal year, and not as payment towards any portion of its obligation to pay an amortized portion of the System's UAAL due in that fiscal year. The term "normal cost" as used in this Section 47-2-18(d)(6), shall be given its generally accepted actuarial meaning.

To the extent the City's contribution for that fiscal year exceeds its required contribution for normal cost owed in that fiscal year, its excess contributions shall be deemed as having been made for the immediately following fiscal year, and shall offset the City's normal cost contribution obligation for the immediately following fiscal year.

*Commentary:* By way of example only, the following indicates how the procedure described in the preceding paragraphs would operate. Assuming the same facts as in the prior *Commentary*, and the City contributed $40 million for the 2004-2005 Fiscal Year and the total normal cost for that year was $40 million:

- The entire $40 million would be deemed as payment of the required normal cost for 2004-2005, and
- No part of the $40 million contribution would be deemed payment toward UAAL.

Now assume that the facts remain the same, but that the City had contributed a total of $45 million for 2004-2005:

- The City's total required contribution for 2004-2005 would be deemed paid in full, and
- $5 million, *i.e.*, $45 million minus $40 million, would be deemed prepayment of the City's required normal cost for 2005-2006 and its required normal cost contribution for 2005-2006 would be reduced accordingly.

(7) The System's auditor shall verify (a) the assets credited to the *Pension Accumulation Fund* and any *Accrued Liability Fund* at the beginning and end of each fiscal year, (b) that each Fund had been properly credited, and (c) that transfers from the *Accrued Liability Fund(s)* to the *Pension Accumulation Fund* had occurred as intended under this Section 47-2-18(d).

(8) Should the System's auditor certify that the total assets then existing in the System, not including the assets in any *Accrued Liability Fund*, together are insufficient to pay the benefits then due under the System, the System's auditor will then determine and certify the minimum amount needed to fund the benefits then due and owing (the "Minimum Necessary Amount"). In this limited circumstance, the Board is authorized to transfer the Minimum Necessary Amount from the *Accrued Liability Fund* to the *Pension Accumulation Fund* absent the notification required pursuant to Section 47-2-18(d)(4).

(9) At the end of the Amortizing Period, or the end of the Extended Amortizing Period, if applicable, should there be any moneys that remain credited to the *Accrued Liability Fund*, the Board may transfer, at its discretion, any such remaining moneys, in whole or in part, by crediting them to the *Pension Accumulation Fund*. The *Pension Accumulation Fund* is the only Fund into which the remaining moneys credited to any *Accrued Liability Fund* may be transferred.

(e) *Pension Reserve Fund.*

The *Pension Reserve Fund* shall be the fund from which pensions shall be paid to beneficiaries. Should a Disability Retiree be reinstated to active service, the Retiree's pension reserve at that time, shall be transferred from the *Pension Reserve Fund* to the *Pension Accumulation Fund.*

(f) *Expense Fund.*

The *Expense Fund* shall be the fund to which shall be credited all money provided by the City to pay the administrative expenses of the Retirement System, and from which shall be paid all the expenses necessary in connection with the administration and operation of the System.

(g) *Income Fund.*

The *Income Fund* shall be the Fund to which shall be credited all interest, dividends, and other income derived from the investments of the System (other than those derived from the investments credited to any *Accrued Liability Fund*), all gifts and bequests received by the System, and all other moneys the disposition of which is not specifically provided for in this Article. There shall be paid or transferred from the *Income Fund*, all amounts required to credit Regular Interest to the various Funds of the Retirement System, except for the *Accrued Liability Fund* which is to be credited with interest, dividends and other earnings pursuant to Section 47-2-18(d)(2). Whenever the balance of the *Income Fund* is more than sufficient to cover current charges to the fund, such excess amount may be used for contingency reserves or may be transferred to any of the other Charter-created funds of the Retirement System within this *Article II* except the *Expense Fund*, to cover special needs of the Funds as the Board shall determine; provided, however, that in determining whether the balance of the *Income Fund* is more than sufficient to cover current charges to the Fund, the balance credited to any *Accrued Liability Fund* shall not be taken into account. In the event the balance in the Income Fund is insufficient to cover the charges to the Fund, the amount of the insufficiency shall be transferred from the *Pension Accumulation Fund* to the *Income Fund.*

(h) *Maintenance of Reserves.*

(1) The maintenance of proper reserves in the various Charter-based funds of the Retirement System within this *Article II* except the *Expense Fund* are hereby made obligations of the *Pension Accumulation Fund.*

(2) City contributions to the Retirement System to the extent necessary to provide pensions on account of members who are employees of a revenue-supported division of the City shall be made from the revenues of the said division. Any City

contribution to the Retirement System from any Fund by law with a certain and definite purpose shall at the direction of the Finance Director, be accounted for separately.

**Sec. 47-2-20. Management of Funds.**

(a) *Board Named, Trustee for Various Funds.*

The Board shall be the Trustee of the funds of the *1973 Defined Benefit/Defined Contribution (Annuity) Plan* of the Retirement System. the Board shall have the full power to invest and reinvest such funds subject to all terms, conditions, limitations, fiduciary duties, and restrictions imposed by *The Public Employee Retirement System Investment Act*, as amended,[1] provided, that notes, bonds, or obligations of the City shall not be subject to said restrictions or limitations. The Board shall have the power to purchase notes, bonds, or obligations of the City before or after the same are offered to the public and with or without advertising for bids.

(b) *Purchase, sale, etc., of securities and investments.*

The Board shall have full power to hold, purchase, sell, assign, transfer, and dispose of any of the securities and investments of the Retirement System, as well as the proceeds of said investments and any moneys belonging to the System.

(c) *Annual interest.*

The Board annually shall allow Regular Interest on the mean balance in each of the Funds of the Retirement System, except the *Income Fund* and the *Expense Fund*. The amounts so allowed shall be due and payable to said Funds, and shall be annually credited thereto from interest and other earnings on the moneys and investments of the System; provided, however, that moneys, including all investment earnings, credited to any *Accrued Liability Fund* shall not be credited to other Funds in the System, unless and until such moneys have been transferred from the applicable *Accrued Liability Fund* to the *Pension Accumulation Fund*.

(d) *Custodian of Funds.*

The City Treasurer or other person or entity designated by the Board of Trustees of the General Retirement System shall be the custodian of the Funds of the Retirement System. All payments from such Funds shall be made by the Treasurer or other designated custodian. Payments made by the *General Retirement System* shall be based upon vouchers signed by two persons designated by the Board. A duly attested copy of a resolution of the Board designating such persons and bearing upon its face specimen signatures of such persons, shall be filed with the Finance Director and the custodian of the Funds as their authority for making payments upon such vouchers. No voucher shall be drawn unless it shall have been previously authorized by a specific or continuing resolution adopted by the Board.

(e) *Available Funds shall be kept upon deposit.*

Available funds shall be kept on deposit for the purpose of meeting disbursements for pensions, annuities, and other payments.

Section 2. All ordinances, or parts of ordinances, in conflict with this ordinance are repealed.

Section 3. This ordinance is declared necessary to preserve the public peace, health, safety, and welfare of the People of the City of Detroit.

Section 4. In the event that this ordinance is approved by a two-thirds (2/3) majority of City Council Members serving, this ordinance shall be given immediate effect and shall become effective upon publication in accordance with Section 4-116 of the 1997 Detroit City Charter.

[1]MCL 38.1132 *et seq.*

(J.C.C. p. )

| | |
|---|---|
| Passed: | February 4, 2005 |
| Approved: | February 8, 2005 |
| Published: | February 14, 2005 |
| Effective: | February 14, 2005 |

JACKIE L. CURRIE
City Clerk

# AFFIDAVIT OF PUBLICATION

IN THE MATTER OF

STATE OF MICHIGAN

County of Wayne

Pushpa Jayaprakash being duly sworn, deposes and says the annexed printed copy of a notice was taken from:

The Detroit Legal News

a newspaper printed and circulated in said State and County on:

February 07

A.D. 2005 that (s)he is the agent of the printers of said newspaper, and knows well the facts stated herein.

Pushpa Jayaprakash

Pushpa Jayaprakash

Subscribed and sworn to before me this

7th day of February A.D. 2005

Christina Jacobs

Christina Jacobs
Notary Public, Oakland County, MI
My Commission Expires February 24, 2007
Acting in Wayne County, MI

unless the City Council takes action by March 1, 2005 and

Now Therefore Be It Resolved:

(1) That a Public Hearing relative to the proposed Capital Agenda for 2006-06 through 2009-10 be scheduled on February 8, 2005 at 10:00 A.M. in the City Council Committee of the Whole Room (13th Floor, Coleman A. Young Municipal Center) and

(2) That the City Council request that the Planning and Development Department, Budget Department, Fiscal Analysis Division, City Planning Commission and the Research and Analysis Division be present at the public hearing.

Adopted as follows:

Yeas — Council Members Bates, S. Cockrel, Collins, Tinsley Talabi, Watson and President Pro Tem K. Cockrel Jr. — 6.

Nays — None.

---

By Council Member Tinsley Talabi:

**AN ORDINANCE to amend Chapter 47 of the 1984 Detroit City Code by amending Section 47-2-16, *Method of financing*, and Section 47-2-20, *Management of Funds*, to provide for an alternative funding mechanism with respect to the City's obligation to make annual contributions to fund the benefits available under the *General Retirement System* in accordance with Article 9, Section 24 of the 1963 Michigan Constitution and Section 1140m of the *Public Employee Retirement System Investment Act*, MCL 38.1140m. This Ordinance does not rescind any substantive rights and elements or obligations with respect to benefits earned or accrued by members, retirees or beneficiaries of the System. This Ordinance does not supersede any conflicting provisions of any collective bargaining agreements.**

*IT IS HEREBY ORDAINED BY THE PEOPLE OF THE CITY OF DETROIT THAT:*

Section 1. Chapter 47 of the 1984 Detroit City Code be amended by amending Section 47-2-16 and 47-2-20 to read as follows:

**Sec. 47-2-16. Method of financing.**

(a) *Annuity Savings Fund of the 1973 Defined Contribution Plan.*

(1) The *Annuity Savings Fund* of the 1973 *Defined Contribution Plan* shall be the fund in which shall be accumulated at regular interest the contributions ... [illegible]

[illegible]

...each pensioner and bearing upon its face specimen signatures of such persons, shall be filed with the Finance Director and the custodian of the Funds as their authority for making payments upon such vouchers. No voucher shall be drawn unless it shall have been previously authorized by a specific or continuing resolution adopted by the Board.

(d) *Available Funds shall be kept upon deposit.*

Available funds shall be kept on deposit for the purpose of meeting disbursements for pensions, annuities and other payments.

Section 2. All ordinances or parts of ordinances in conflict with this ordinance are repealed.

Section 3. This ordinance is declared necessary to preserve the public peace, health, safety and welfare of the People of the City of Detroit.

Section 4. In the event that this ordinance is approved by a two-thirds (2/3) majority of City Council Members serving, this ordinance shall be given immediate effect and shall become effective upon publication in accordance with Section 4-116 of the 1997 Detroit City Charter.

MCL 38.1132 et seq.

Approved as to form only:

BRENDA E. BRACEFUL

Deputy Corporation Counsel

Read Twice by title, ordered printed and laid on table.

**RESOLUTION SETTING HEARING**

By Council Member Tinsley Talabi:

Resolved, That a public hearing will be held by this body in the Committee Room, 13th Floor of the Coleman A. Young Municipal Center on MONDAY, JANUARY 31, 2005 at 1:00 P.M. for the purpose of considering the advisability of adopting the foregoing Proposed Ordinance to amend Chapter 47 of the 1984 Detroit City Code by amending Section 47-2-16, *Method of Financing*, and Section 47-2-20, *Management of Funds*, to provide for an alternative funding mechanism with respect to the City's obligation to make annual contributions to fund the benefits available under the General Retirement System in accordance with Article 9, Section 24 of the 1963 Michigan Constitution and Section 1140m of the *Public Employee Retirement System Investment Act*, MCL 38.1140m. This Ordinance does not rescind any substantive rights, entitlements or obligations with respect to benefits earned or accrued by members, retirees or beneficiaries of the System. This Ordinance does not supersede any conflicting provisions of any collective bargaining agreements.

All interested persons are invited to be present to be heard as to their views.

Adopted as follows:

Yeas — Council Members Bates, S. Cockrel, Tinsley Talabi and President Pro Tem K. Cockrel Jr. — 4.

Nays — Council Members Collins and Watson — 2.

---

By Council Member Tinsley Talabi:

**AN ORDINANCE to amend certain provisions of Chapter 54 of the 1984 Detroit City Code and certain sections of Title 9, Chapter 7, Article VII of the 1918 Detroit City Charter, which pursuant to Section 11-102 of the 1997 Detroit City Charter and Section 47-1-1 of the 1984 Detroit City Code as amended, incorporates by reference and saves from repeal certain ordinances contained in the 1984 Detroit City Code and certain provisions contained in the 1918 Detroit City Charter regarding the Policemen and Firemen Retirement System of the City of Detroit, by amending Title 9, Chapter 7, Article VII, Sections 6 and 7 and Title 9, Chapter 7, Article VIII, Section 3 of the 1918 City Charter; by adding Sections 54-43-1 to establish and rename the Policemen and Firemen Retirement System by amending Section 54-43-4, by renumbering the current Section 54-43-4 as Section 54-43-5 and the current Section 54-43-5 as 54-43-6 of the 1984 City Code, and by adding new Sections 54-43-4 and 54-43-7 to the 1984 City Code** ... [illegible]

[illegible]

# CITY COUNCIL

(ADJOURNED SESSION)

(All action of the City Council appearing herein is subject to reconsideration and/or approval of the Mayor)

Detroit, Thursday, January 20, 2005

[illegible]

# CITY COUNCIL

(ADJOURNED SESSION)

(All action of the City Council appearing herein is subject to reconsideration and/or approval of the Mayor)

Detroit, Friday, January 21, 2005

[illegible]

[illegible]

Approved as to form only:

BRENDA E. BRACEFUL

Deputy Corporation Counsel

[illegible]

RESOLUTION SETTING HEARING

[illegible]

City Planning Commission

[illegible]