# EXHIBIT J

**Exhibit B**

**Ordinance No. 04-05**

# TRUE COPY CERTIFICATE

Form C et D—16CE

STATE OF MICHIGAN, } ss.

City of Detroit

**CITY CLERK'S OFFICE, DETROIT**

I, *Jackie L. Currie* , City Clerk of the City of Detroit, in said

State, do hereby certify that the annexed paper is a **TRUE COPY OF RESOLUTION**

adopted (passed) by the City Council at session of _____ **February 4,** 20 **05**

and approved by Mayor

_____ **February 8,** 20 **05**

as appears from the Journal of said City Council in the office of the City Clerk of Detroit, aforesaid;
that I have compared the same with the original, and the same is a correct transcript therefrom, and of the
whole of such original.

In Witness Whereof, I have hereunto set my hand
and affixed the corporate seal of said City, at

Detroit, this _____ **2nd**

day of _____ **June** _____ A.D. 20 **05**

_____
CITY CLERK

ORDINANCE NO. 04-05
CHAPTER 54
ARTICLE I-IX
TO PROVIDE FOR AN ALTERNATIVE
FUNDING MECHANISM WITH
RESPECT TO THE CITY'S
OBLIGATIONS TO MAKE ANNUAL
CONTRIBUTIONS TO FUND THE
BENEFITS AVAILABLE UNDER THE
POLICEMEN AND FIREMEN
RETIREMENT SYSTEM, ETC.

AN ORDINANCE to amend certain provisions of Chapter 54 of the 1984 Detroit City Code and certain sections of Title 9, Chapter 7, Article I-IX of the 1918 Detroit City Charter, which pursuant to Section 11-102 of the 1997 Detroit City Charter and Section 47-1-1 of the 1984 Detroit City Code, as amended; incorporates by reference and saves from repeal certain ordinances contained in the 1984 Detroit City Code and certain provisions contained in the 1918 Detroit City Charter regarding the *Policemen and Firemen Retirement System* of the City of Detroit, by amending Title 9, Chapter 7, Article VII, Sections 3 and 7 and Title 9, Chapter 7, Article VIII, Section 3 of the 1918 City Charter; by adding Section 54-43-1 to establish and rename the *Policemen and Firemen Retirement System*, by amending Section 54-43-4; by renumbering the current Section 54-43-4 as Section 54-43-5, and the current Section 54-43-5 as 54-43-6 of the 1984 City Code; and by adding new Sections 54-43-4 and 54-43-7 to the 1984 City Code to provide for an alternative funding mechanism with respect to the City's obligations to make annual contributions to fund the benefits available under the *Policemen and Firemen Retirement System* in accordance with Article 9, Section 24 of the 1963 Michigan Constitution and Section 1140m of the *Public Employee Retirement System Investment Act*, MCL 38.1140m. This Ordinance does not intend to and does not rescind any substantive rights, entitlements or obligations with respect to benefits earned or accrued of members, retirees or beneficiaries of the System. This Ordinance does not supersede any conflicting provision of any collective bargaining agreements, or Act 312 Arbitration Awards.

IT IS HEREBY ORDAINED BY THE PEOPLE OF THE CITY OF DETROIT THAT:

Section 1. Chapter 54, of the 1984 Detroit City Code, which was saved from repeal by Section 11-102 of the 1997 Detroit City Charter and Section 47-1-1 of the 1984 Detroit City Code, be amended by adding Section 54-43-1 to establish and rename the *Policemen and Firemen Retirement System*; by renumbering the current Section 54-43-4 as Section 54-43-5, and the current Section 54-43-5 as 54-43-6 of the 1984 City Code; and by adding new Sections 54-43-4 and 54-43-7, to read as follows:

Sec. 54-43-1. Police and Fire Retirement System established;[1] Renamed.

A Pension System for employees of the City of Detroit Police and Fire Departments is hereby established for the purpose of providing retirement allowances, death and survivor benefits for eligible police and fire employees and their beneficiaries. The effective date of this System is July 1, 1941. Upon the effective date of this Ordinance, the former *Policemen and Firemen Retirement System* shall be called the *Police and Fire Retirement System*.

Sec. 54-43-4.[1] Alternative Financing Method.

Except as provided regarding the *Survivors Benefit Fund*, the *Pension Accumulation Fund* shall be the Fund in which shall be accumulated reserves for the pensions and other benefits payable from contributions made by the City, and from which transfers shall be made as provided in this section.

(a) *Accrued Liability Fund.* Pursuant to Ordinance No. 05-05, which authorizes the creation of the *Detroit Police and Fire Retirement System Service Corporation,*

the City has entered into a transaction ("the Pension Funding Transaction") to obtain funds as an alternative to those available through the traditional funding mechanism described in Section 54-43-5. The proceeds generated by the Pension Funding Transaction (or any Additional Pension Funding Transaction, as described below) that will be deposited into the System will be termed the "Funding Proceeds." The Funding Proceeds will be deposited into a new Fund in the System to be called the *Accrued Liability Fund.* The purpose of the Funding Proceeds will be to fund all or part of the heretofore unfunded accrued liabilities ("UAAL") of the System, as determined as of a date certain, *i.e.,* the "Determination Date," pursuant to the System's actuarial valuation as of that date. The Funding Proceeds will be assets of the System and will be applied, together with all other assets of the System, to fund the System's obligation to pay accrued benefits.

This *Accrued Liability Fund* shall contain only the Funding Proceeds of the Pension Funding Transaction, and any earnings thereon. Should the City, by future ordinance, choose to raise additional monies by additional pension funding transactions ("Additional Pension Funding Transactions") in order to fund the then existing UAAL of the System as of a future date certain, a new and separate *Accrued Liability Fund* shall be created within the System to contain the proceeds, and any earnings thereon, of any Additional Pension Funding Transactions, and a new *Accrued Liability Fund* will be created for each successive Additional Pension Funding Transaction entered into by the City, if any. The treatment of any *Additional Accrued Liability Funds* shall be the same as described below.

(b) The Funding Proceeds deposited in the applicable *Accrued Liability Fund* will be subject to the oversight and investment direction of the Board of Trustees of the *Police and Fire Retirement System,* consistent with the Board's obligations under Article VIII (Management of Funds). The Board will invest the Funding Proceeds as part of the System's overall assets, and will not differentiate the Funding Proceeds from other System assets for investment purposes.

(c) All interest, dividends and other income derived from the investment of the Funding Proceeds shall be credited annually to the *Accrued Liability Fund* on a total System rate of return basis, determined by crediting the applicable *Accrued Liability Fund* with the investment return experienced by the System in total for all of its investments for the year. This shall be done by first determining the rate of return for the total assets of the System for the fiscal year, and then crediting back to each *Accrued Liability Fund* an amount that is determined by multiplying that rate of return times the balance in the *Accrued Liability Fund* as of the beginning of the fiscal year.

The interest, dividends and other income derived from the investment of the Funding Proceeds deposited in any *Accrued Liability Fund* will not be credited to any Funds other than the *Pension Accumulation Fund.* Moreover, because the *Accrued Liability Fund* has been impressed with a certain and definite purpose, it shall be accounted for separately as provided for in Section 54-43-6, *Maintenance of Reserves.*

(d) Upon the creation of an *Accrued Liability Fund* and the deposit of the Funding Proceeds into the applicable *Accrued Liability Fund,* there shall be established a schedule for transferring assets of the applicable *Accrued Liability Fund* by crediting them to the *Pension Accumulation Fund* on an annual basis over the period required to fully amortize the System's UAAL determined as of the applicable Determination Date.

The System's UAAL determined as of the "Determination Date" shall be the period over which the Determined Accrued Liability is to be fully amortized, as specified in the System's actuarial valuation as of the applicable Determination Date, is the "Amortizing Period." The amount to be transferred each fiscal year to the *Pension*

*Accumulation Fund* from the *Accrued Liability Fund* is the "Scheduled Amortizing Amount."

With respect to the Pension Funding Transaction and any Additional Pension Funding Transactions, the Scheduled Amortizing Amount will equal a level percentage of the City's payroll for each fiscal year. The level percentage of the City payroll that will be used to determine the Scheduled Amortizing Amount shall be a level percentage that is equal to the percentage that is specified in the actuarial valuation as of the applicable Determination Date as being the percentage of City's annual payroll required to amortize the Determined Accrued Liability over the Amortizing Period, multiplied by a fraction. The numerator of the fraction shall be the amount of the applicable Funding Proceeds up to the full amount of the Determined Accrued Liability as of the Determination Date. The denominator of the fraction shall be the System's Determined Accrued Liability on that date.

*Commentary:* By way of example only, the Scheduled Amortizing Amount would be determined as follows: (1) the Determination Date is June 30, 2004. (2) the Funding Proceeds are deposited into the System during the 2004-2005 Fiscal Year. (3) the June 30, 2004 actuarial valuation produced a UAAL of $800 million, (4) the City's contribution required to amortize that UAAL is 21% of the City's payroll, and (5) the Funding Proceeds are $400 million, then the Scheduled Amortizing Amount for Fiscal Year 2005-06 would be 21% times ($400 million/$600 million) times the City's payroll for 2005-2006. This would be 14% times the City's payroll for that fiscal year.

With respect to the Pension Funding Transaction or any Additional Pension Funding Transactions, where the applicable Determination Date occurs after the date of the actuarial valuation that determines the City's contribution for the fiscal year during which the applicable Funding Proceeds are deposited into the System, for each fiscal year, there will be transferred from the applicable *Accrued Liability Fund* to the *Pension Accumulation Fund,* an amount that is specified in such actuarial valuation as being the City's required contribution needed to amortize the System's UAAL as of the date of such actuarial valuation, multiplied by a fraction. The numerator of the fraction shall be the amount of the applicable Funding Proceeds up to the full amount of the UAAL specified in such actuarial valuation, and the denominator of the fraction shall be the System's total UAAL, as set forth in that same actuarial valuation.

*Commentary:* By way of example only, the Scheduled Amortizing Amount in this case would be determined as follows: (1) the Determination Date is June 30, 2004, (2) the Funding Proceeds had been deposited into the System during the 2004-2005 Fiscal Year, (3) the June 30, 2003 actuarial valuation produced a UAAL of $516 million, (4) the City's contribution required to amortize that UAAL is 19.07% of the City's payroll and (5) the Funding Proceeds are $400 million, then the Scheduled Amortizing Amount for Fiscal Year 2004-2005 would be 19.07% times ($400 million/$516 million) times the City's payroll for 2004-2005. This would be 14.77% times the City's payroll for that fiscal year.

Should the Board at some future time adopt a different period for amortizing the System's UAAL (a "Revised Amortizing Period"), the Scheduled Amortizing Amount for ensuing years may change. If the Revised Amortizing Period provides for a longer period during which to amortize the System's UAAL (*i.e.,* an "Extended Amortizing Period"), then the Amortizing Period initially used to amortize the applicable Determined Accrued Liability will also be revised. There will then be established a new schedule for amortizing the Determined Accrued Liability and the Scheduled Amortizing Amount will be based on the level percentage of the City's payroll being equal to what it would be if the then unamortized balance of the Determined Accrued Liability were re-amortized over the Extended Amortizing Period. If the Revised Amortizing Period is changed so that the System's UAAL is to be amortized over a shorter period than the one initially

used to amortize the applicable Determined Accrued Liability, then that Scheduled Amortizing Amount will not be changed.

(e) Each year, when the City is required to make its annual contribution to the System — the amount of which is to be determined pursuant to Section 54-43-5 and the timing of which is set forth in Section 54-43-5(b) — the Board will transfer the Scheduled Amortizing Amount from the *Accrued Liability Fund* and credit it to the *Pension Accumulation Fund*; provided, however, that this transfer cannot occur unless and until the Board has been notified pursuant to the Pension Funding Transaction, or any Additional Pension Funding Transaction, that the City is current on the service payments required under the applicable Pension Funding Transaction.

(f) Should the Scheduled Amortizing Amount not be available for transfer because of the City's failure to make a timely service payment as required by the applicable Pension Funding Transaction, the Board will take any permitted action, including the filing of a civil action against the City, as contemplated in Section 54-43-10, to effectuate the transfer of the Scheduled Amortizing Amount.

Should the City's Finance Director certify to the Board by a duly attested notice that the City has no available funds to make the service payments required by the applicable Pension Funding Transaction, in that specific circumstance, the Board shall be authorized to transfer the Scheduled Amortizing Amount for that fiscal year to the *Pension Accumulation Fund*, absent the notice requirement set forth in Section 54-43-4(e).

(g) Since the Funding Proceeds are to be considered assets of the System and are intended to fund the applicable Determined Accrued Liability, the City shall be required to make only a proportional contribution for any fiscal year ending after the date the Funding Proceeds are deposited into the applicable *Accrued Liability Fund*, but prior to a fiscal year whose corresponding actuarial valuation includes the Funding Proceeds in the System's total assets. The proportional contribution to fund the System's then existing UAAL, if any, shall be the level percentage of the City's payroll specified in the actuarial valuation for the applicable fiscal year as the City's required contribution needed to amortize the System's then existing UAAL, multiplied by a fraction. The numerator of the fraction shall be the amount of the System's total UAAL as determined in such actuarial valuation minus the amount of the applicable Funding Proceeds, but not less than zero. The denominator of the fraction shall be the amount of the System's total UAAL in such valuation. Actuarial valuations following the deposit of the applicable Funding Proceeds into the System shall include the Funding Proceeds in the total assets of the System to determine any ensuing UAAL of the System, and the Funding Proceeds shall offset any such actuarial liability accordingly.

*Commentary:* By way of example, the following indicates how the procedure describe above would operate. Assume the following facts — (1) the Determination Date was June 30, 2004, (2) the June 30, 2004 actuarial valuation produced a UAAL of $600 million and a contribution toward the UAAL of 21% of the City's payroll, (3) the Funding Proceeds were $400 million and were deposited in the System during the 2004-2005 Fiscal Year, (4) the first actuarial valuation which included the Funding Proceeds in the System's assets was as of June 30, 2005 and (5) the June 30, 2003 valuation which determines the City's required contribution for fiscal 2004-05 produced a total UAAL of $516 million and a contribution toward that UAAL of 19.07% of the City's payroll. Then:

• The fiscal year ending after the date of deposit would be the year ending June 30, 2005, or the 2004-2005 Fiscal Year.

• The first fiscal year whose corresponding valuation reflected the Funding Proceeds in its assets would be the 2006-2007 year.

• Thus, the City's required UAAL contribution for fiscal 2004-2005 would be 19.07% of the payroll times ($516 million — $400 million) divided by $516 million, or 4.3% of payroll. The City's required UAAL contribution for fiscal 2005-06 would be 21% of payroll times ($600 million — $400 million) divided by $600 million, or 7% of the City's payroll.

• Beginning with the Fiscal Year 2006-2007, whose contribution is determined by the June 30, 2005 actuarial valuation, the City's required UAAL contribution

would be the percentage of payroll developed in the corresponding actuarial valuation that included the Funding Proceeds as being part of the System's assets.

Any contribution the City has made to the System for any fiscal year prior to the date the Funding Proceeds from any applicable Pension Funding Transaction have become assets of the System. Where the amount of the contribution is equal to or less than the normal cost of that fiscal year it shall be deemed to have been made in satisfaction of the City's obligation to contribute an amount equal to the System's normal cost for that fiscal year, and not as payment towards any portion of its obligation to pay an amortized portion of the System's UAAL due in that fiscal year. The term "normal cost" as used in this Section 54-43-4(g), shall be given its generally accepted actuarial meaning.

*Commentary:* By way of example, the following indicates how the procedure described in the preceding paragraphs would operate. Assuming the same facts as in the prior *Commentary*, and the City contributed $40 million for the 2004-2005 Fiscal Year and the total normal cost for that year was $40 million:

• The entire $40 million would be deemed as payment of the required normal cost for 2004-2005, and

• No part of the $40 million contribution would be deemed payment toward UAAL, as no UAAL contribution is required for that year.

Now assume that the facts remain the same, but that the City had contributed a total of $45 million for 2004-2005:

• The City's total required contribution for 2004-2005 would be deemed paid in full, and

• $5 million, *i.e.*, $45 million minus $40 million, would be deemed prepayment of the City's required normal cost for 2005-2006 and its required normal cost contribution for 2005-2006 would be reduced accordingly.

(h) The System's auditor shall verify (a) the assets credited to the Pension Accumulation Fund and any *Accrued Liability Fund* at the beginning and end of each fiscal year, (b) that each Fund had been properly credited, and (c) that transfers from the *Accrued Liability Fund(s)* to the *Pension Accumulation Fund* had occurred as intended, under this Section 54-43-4.

(i) Should the System's auditor certify that the total assets then remaining in the System, not including the assets of any *Accrued Liability Fund*, together are insufficient to pay the benefits then currently due under the System, the System's auditor will then determine and certify the minimum amount needed to fund the benefits then due and owing (the "Minimum Necessary Amount"). In this limited circumstance, the Board is authorized to transfer the Minimum Necessary Amount from the *Accrued Liability Fund* to the *Pension Accumulation Fund* absent the notification required pursuant to Section 54-43-4(e).

At the end of the Amortizing Period, or the end of the Extended Amortizing Period, if applicable, should there be any moneys that remain credited to the *Accrued Liability Fund*, the Board may transfer, at its discretion, any such remaining funds, in whole or in part, by crediting them to the *Pension Accumulation Fund*. The *Pension Accumulation Fund* is the only Fund into which the remaining moneys credited to the *Accrued Liability Fund* may be transferred.

**Sec. 54-43-5. Contributions to any payments from Pension Accumulation Fund.[1]**

Contributions to and payments from the *Pension Accumulation Fund* shall be made as follows:

(a) Upon the basis of such assumptions as to future financial experiences as the Board of Trustees shall from time to time adopt, the Actuary shall annually compute the City's contribution, expressed as a percent of active member contributions, to provide the pension reserves covering the pensions or other City-financed benefits to which members might be entitled or which might be payable at the time of their discontinuarces of City employment; provided, such contribution percents shall not be less than amounts which, expressed as per-

cents of active member compensations, will remain level from generation to generation of Detroit citizens. Upon the retirement or death of a member, the pension reserve for any benefits payable on the member's behalf shall be transferred from the *Pension Accumulation Fund* to the *Pension Reserve Fund*, to the extent of there being assets in the *Pension Accumulation Fund*.

(b) The Board of Trustees shall annually ascertain and report to the Mayor and the Council the amount of contributions due the Retirement System by the City, and the Council shall appropriate and the City shall pay such contributions to the Retirement System during the ensuing Fiscal Year. When paid, such contributions shall be credited to the *Pension Accumulation Fund*.

**Sec. 54-43-6. Retiree payments from Pension Reserve Fund; Reinstatement of Disability Retirees to active service.[1]**

Except as to the *Survivor's Benefit Fund*, the *Pension Reserve Fund* shall be the fund from which shall be paid pensions on account of members. Should a Disability Retiree be reinstated to active service, the member's pension reserve, at that time, shall be transferred from the *Pension Reserve Fund* to the *Pension Accumulation Fund*.

**Sec. 54-43-7. Appropriations.[1]**

(a) The Board shall certify the amount of the appropriations necessary to pay the various Funds of the System the amounts payable by the City as enumerated in this Article, according to legal budget procedures.

(b) To cover the requirements of the System temporarily, such amounts as shall be necessary to cover the needs of the System shall be paid into the *Pension Accumulation Fund* and the *Expense Fund* by special appropriations or transfers to the System; provided, however that no transfers can be made from the *Accrued Liability Fund* other than the annual transfer of the Scheduled Amortizing Amount, or transfers under special circumstances pursuant to Sections 54-43-4(f) and (i).

**Sec. 54-43-8. Maintenance of Reserves.[1]**

The maintenance of the annuity reserves in the *Annuity Reserve Fund*, and the pension reserves in the *Pension Reserve Fund* are hereby made obligations of the *Pension Accumulation Fund*. All income, interest, and dividends derived from deposits and investments authorized by this ordinance, excluding any amounts credited to the *Accrued Liability Fund*, which are not required for the allowance of interest to the funds of the System as provided herein, shall be credited to the *Pension Accumulation Fund*. The moneys credited to the *Accrued Liability Fund* shall be credited to the *Pension Accumulation Fund* only to the extent of the annual transfer of the Scheduled Amortizing Amount or the special circumstance transfers authorized pursuant to Sections 54-43-4(f) and (i). Any contributions by the City to the System from any Fund impressed by law with a certain and definite purpose shall be accounted for separately.

**Sec. 54-43-9. Management of Funds.**

(a) *Board Named Trustee for Various Funds.[1]*

The Board shall be the Trustee of the several funds provided for in this Article, and shall have full power to invest and reinvest such funds subject to all terms, conditions, limitations, fiduciary duties, and restrictions imposed by *The Public Employee Retirement System Investment Act*, as amended,[1] provided, that notes, bonds, or obligations of the City shall not be subject to said restrictions or limitations. The Board shall have the power to purchase notes, bonds, or obligations of the City before or after the same are offered to the public and with or without advertising for bids.

(b) *Purchase, sale, etc., of securities and investments.[1]*

The Board shall have full power to hold, purchase, sell, assign, transfer, and dispose of any of the securities and investments of the Retirement System, as well as the proceeds of said investments and any moneys belonging to the System.

(c) *Annual interest.[1]*

The Board annually shall allow Regular Interest on the mean amount of assets in each of the Funds for the preceding year. The amounts so allowed shall be due and payable to said Funds, and shall be annually credited thereto by the Board from interest and other earnings on the moneys of the System; provided, however, that the balance in any *Accrued Liability*

*Fund* shall not be included in determining the mean amount of assets of the System when the Board makes this determination, and no Regular Interest on the mean amount of assets in the *Accrued Liability Fund* shall be credited to other Funds in the System until transferred to the *Pension Accumulation Fund* pursuant to Section 54-43-4(e) or under special circumstances pursuant to Sections 54-43-4(f) and (i). Any additional amount, required to meet the Regular Interest on the Funds of the System, shall be paid by the City and any excess of earnings, over such amount required, shall be a portion of the amounts to be contributed by the City.

(d) *Custodian of Funds.*[14]

The City Treasurer or other person or entity designated by the Board shall be the custodian of the Funds of the *Police and Fire Retirement System*. All payments from such Funds shall be made by the Treasurer or other designated custodian. Payments made by the *System* shall be based upon vouchers signed by two persons designated by the Board. A duly attested copy of a resolution of the Board designating such persons and bearing upon its face specimen signatures of such persons, shall be filed with the Finance Director and the custodian of the Funds as their authority for making payments upon such vouchers. No voucher shall be drawn unless it shall have been previously authorized by a specific or continuing resolution adopted by the Board.

(e) *Available Funds shall be kept upon deposit.*[15]

Available funds shall be kept on deposit for the purpose of meeting disbursements for pensions, annuities, and other payments.

**Sec. 54-43-10. Enforcement; Civil Action.**

A civil action for relief against any act or practice which violates the state law, the 1997 Detroit City Charter, the 1984 Detroit City Code or the terms of the System, may be brought by:

(a) A member or retiree who is or may become eligible to receive a benefit under the System;

(b) A beneficiary who is or may become eligible to receive a benefit under the System;

(c) A Plan fiduciary, including a Trustee; or

(d) The Finance Director, on behalf of the City as sponsor of the System.

Section 2. All ordinances, or parts of ordinances, in conflict with this ordinance are repealed.

Section 3. This ordinance is declared necessary to preserve the public peace, health, safety, and welfare of the People of the City of Detroit.

Section 4. In the event that this ordinance is approved by a two-thirds (2/3) majority of City Council Members serving, this ordinance shall be given immediate effect and shall become effective upon publication in accordance with Section 4-116 of the 1997 Detroit City Charter.

---

[1]1918 Detroit City Charter, T. 9, C. 7, A. 1.

[2]This Section was in the 1964 Detroit City Code and was saved from repeal but not codified into the 1997 Code.

[3]1918 Detroit City Charter, T. 9, C. 7, A. 6.

[4]1918 Detroit City Charter, T. 9, C. 7, A. 7.

[5]This appeared as Sec. 54-43-4 of the 1964 Detroit City Code. It was saved from repeal but was not codified in the 1997 Detroit City Code.

[6]This appeared as Sec. 54-43-5 of the 1964 Detroit City Code. It was saved from repeal but was not codified in the 1997 Detroit City Code.

[7]1918 Detroit City Charter, T. 9, C. 7, A. 7, §6.

[8]1918 Detroit City Charter, T. 9, C. 7, A. 7, §7 (Basic source.)

[9]1918 Detroit City Charter, T. 9, C. 7, A. 7, §7.

[10]1918 Detroit City Charter, T. 9, C. 7, A. 8, §1.

[11]MCL 38.1132 *et seq.*

[12]1918 Detroit City Charter, T. 9, C. 7, A. 8, §2.

[13]1918 Detroit City Charter, T. 9, C. 7, A. 8, §3.

[14]1918 Detroit City Charter, T. 9, C. 7, A. 8, §4.

[15]1918 Detroit City Charter, T. 9, C. 7, A. 8, §5.

(J.C.C.p.    )
Passed:        February 4, 2005
Approved:      February 8, 2005
Published:     February 14, 2005
Effective:     February 14, 2005
               JACKIE L. CURRIE
               City Clerk

# AFFIDAVIT OF PUBLICATION

## IN THE MATTER OF

STATE OF MICHIGAN

County of _____Wayne_____

Pushpa Jayaprakash_____ being duly sworn, deposes and
says the annexed printed copy of a notice was taken from:
The Detroit Legal News_____
a newspaper printed and circulated in said State and County on:
___February 07_____

_____

_____

A.D. 2005 that (s)he is the agent of the printers of said
newspaper, and knows well the facts stated herein.

*Pushpa. Jayaprakash*

Pushpa Jayaprakash
Subscribed and sworn to before me this
7th _____ day of ____February_____ A.D. 2005 _____

*Christina Jacobs*

Christina Jacobs
Notary Public, Oakland County, MI
My Commission Expires February 24, 2007
Acting in Wayne County, MI

ALL ACTION OF THE CITY COUNCIL APPEARING HEREIN IS SUBJECT TO RECONSIDERATION AND/OR APPROVAL OF THE MAYOR

# CITY COUNCIL

(PROCEEDINGS RESUMED)

# CITY COUNCIL

(PROCEEDINGS RESUMED)

ALL ACTION OF THE CITY COUNCIL APPEARING HEREIN IS SUBJECT TO RECONSIDERATION AND/OR APPROVAL OF THE MAYOR

[illegible]

OF WAIVERS OF RECONSIDERATION

[illegible]

JACKIE L. CURRIE
City Clerk

[illegible]

# CITY COUNCIL

(REGULAR Meeting)

(All action of the City Council appearing herein is subject to reconsideration and/or approval of the Mayor)

Detroit, Wednesday, January 26, 2005

Pursuant to adjournment the City Council met at 11 A.M. and was called to order by the President Pro Tem K. Cockrel, Jr.

Present — Council Members Bates, S. Cockrel, Collins, McPhail, Tinsley Talabi, Watson and President Pro Tem K. Cockrel, Jr. — 7.

There being a quorum present the City Council was declared to be in session.

The Council then proceeded to take action at the call of the Chair.

[illegible]

Invocation

[illegible]

COMMUNICATIONS BY Finance Department Purchasing Division

[illegible]

Respectfully submitted,
AUDREY P. JACKSON
Director
Purchasing Division
Finance Department

[illegible]

Finance Department
Purchasing Division

[illegible]

ALL ACTION OF THE CITY COUNCIL APPEARING HEREIN IS SUBJECT TO RECONSIDERATION AND/OR APPROVAL OF THE MAYOR