# EXHIBIT V



ORRICK, HERRINGTON & SUTCLIFFE LLP
666 FIFTH AVENUE
NEW YORK, NY 10103-0001
tel 212-506-5000
fax 212-506-5151
WWW.ORRICK.COM

JUNE 26, 2009

THE PARTIES LISTED ON SCHEDULE A HERETO

    Re:    Collateral Agreement, dated as of June 15, 2009, among the City of Detroit, certain Service Corporations, acting severally and not jointly, <u>U.S. Bank National Association, as Custodian, and certain Counterparties</u>

Ladies and Gentlemen:

       We have acted as special counsel to the City of Detroit, Michigan (the "City"), the Detroit General Retirement System Service Corporation ("GRS") and the Detroit Police and Fire Retirement System Service Corporation ("PFRS" and, together with GRS, the "Service Corporations") in connection with the settlement and release of certain claims that could have been asserted against the City and the Service Corporations under certain interest rate exchange agreements that were entered into by the Service Corporations in connection with the $948,540,000 Taxable Certificates of Participation, Series 2006, issued by the Detroit Retirement Systems Funding Trust 2006 (the "Certificates"). The Certificates are payable solely from certain Service Payments to be made by the City pursuant to certain Service Contracts between the City and the Service Corporations. In connection with the issuance of the Certificates, the Service Corporations entered into several interest rate exchange agreements (collectively, the "Swap Agreements") with UBS AG, SBS Financial Products Company, LLC (SBS), and Merrill Lynch Capital Services, Inc., as credit support provider to SBS, (collectively, the Counterparties). Additionally, certain payments under the Swap Agreements were guaranteed under insurance policies issued either by Financial Guaranty Insurance Company ("FGIC") or XL Capital Assurance Inc., now Syncora ("XL") (collectively, the "Insurers"). As the result of a series of rating downgrades of the Certificates and Insurers in 2008 and 2009, the Service Corporations were notified by the Counterparties that they believed that an Additional Termination Event had occurred under each respective Swap Agreement, providing the Counterparties the right to seek termination of their respective Swap Agreement.


ORRICK

The Parties Listed on Schedule A
Hereto
June 26, 2009
Page Two

Pursuant to an ordinance adopted by the City Council of the City on May 19, 2009, Ordinance 05-09 (the "Ordinance") and a resolution adopted by the City Council on June 23, 2009 (the "Resolution"), the City and the Service Corporations were authorized to execute and deliver that certain Collateral Agreement, dated as of June 15, 2009, among the City, the Service Corporations, acting severally and not jointly, U.S. Bank National Association, as Custodian, and the Counterparties (the "Collateral Agreement"). Unless otherwise defined herein, capitalized terms used herein that are defined in the Collateral Agreement shall have the meanings herein as given to such terms in the Collateral Agreement. Pursuant to the Ordinance, the City has pledged to the Service Corporations the City's rights to, among other property, certain wagering taxes levied or imposed by Detroit City Code Section 18-4-3 pursuant to Section 12(4)(b) of the Wagering Tax Revenue Statute (the "Wagering Taxes"), now or hereafter receivable by the City to secure payment of the obligations under the Swap Agreements as and when the same become due and payable. Pursuant to the Ordinance and the Collateral Agreement, each Service Corporation, in turn, pledged to the Counterparties, severally and not jointly, as security for such Service Corporation's obligations under the respective Swap Agreements, its rights to the City Pledge. Pursuant to certain Irrevocable Instructions, dated June [25], 2009, the City has instructed each Casino Licensee to make payment of the Wagering Taxes and other amounts owed to the City to the Custodian for credit to a specially designated account as set forth in such Irrevocable Instructions.

You have requested our opinion as to whether, if the City or a Service Corporation were to become a debtor in a case under Chapter 9 of the United States Bankruptcy Code (Title 11, U.S.C.) (the "Bankruptcy Code"), the Wagering Taxes would constitute "special revenues" under section 902(2) of the Bankruptcy Codes.

In connection with our role as special counsel to the City and the Service Corporations, we have reviewed (i) the Collateral Agreement; (ii) the Irrevocable Instructions; (iii) the Hedge; and (iv) the Service Contracts (collectively, the "Documents"). We have also reviewed the Ordinance and the Resolution. In addition, we have examined and relied on such agreements, documents, instruments and other certificates of officials, officers and representatives of the City and the Service Corporations and we have made such investigations of law as we have deemed appropriate as a basis for the opinions and conclusions expressed herein. For purposes of this opinion, we have not reviewed any documents other than the Documents. In particular, we have not reviewed any document (other than the Documents) that is referred to in or incorporated by reference into any Document. We have assumed without investigation that there exists no provision in any document that we have not reviewed that is inconsistent with the


# ORRICK

The Parties Listed on Schedule A
Hereto
June 26, 2009
Page Three

opinions stated herein. We have conducted no independent factual investigation of our own, but rather have relied solely upon the Documents, the statements and information set forth therein, and the additional matters recited or assumed therein, all of which we have assumed to be true, complete, and accurate in all material respects. We have also assumed without investigation the accuracy of all representations and warranties as to matters of fact contained in the Documents. Because the opinions set forth herein are based solely upon our review of the Documents, we express no opinion herein as to the effect of any transaction other than, or any act or omission of any person or entity other than the parties to, the transactions contemplated by the Documents.

For purposes of this opinion, we have assumed, without investigation, that the following statements are correct:

1. Each of the Documents has been duly authorized, executed, and delivered by each of the parties thereto, constitutes the valid and binding obligation of each of the parties thereto, the executed Documents as to which we have reviewed forms will conform in all respects with the form reviewed, and will be enforceable against each such party in accordance with the terms thereof. Each of the Documents, and the transactions contemplated thereby, is performed by each of the parties thereto and complies with all applicable laws, and each of the parties to the transactions contemplated by the Documents complies in all material respects with applicable laws.

2. As of the date hereof, the City and each of the Service Corporation has sufficient working capital to satisfy its uncontested liabilities as such liabilities become due.

3. The City and each Service Corporation is eligible to be a debtor only under Chapter 9 of the Bankruptcy Code. Less than 80 percent of the value of the assets of the City or a Service Corporation consist of assets relating to farming operations. Neither the City nor either Service Corporation is a bank. Neither the City nor a Service Corporation owns trackage facilities that are leased by a common carrier by railroad engaged in the transportation of individuals or property. Neither the City nor a Service Corporation is a common carrier by railroad engaged in the transportation of individuals or property. Neither the City nor a Service Corporation is a corporation organized under Section 25A of the Federal Reserve Ordinance that operates, or that operates as, a multilateral clearing organization pursuant to Section 409 of the Federal Deposit Insurance Corporation Improvement Ordinance of 1991.


ORRICK

The Parties Listed on Schedule A
Hereto
June 26, 2009
Page Four

       4. The obligation of the City and each Service Corporation under the Ordinance constitute valid and binding obligations of the City and each Service Corporation enforceable in accordance with their terms under the Ordinance.

       5. The City Pledge, as set forth in the Ordinance, is valid, binding and enforceable.

       6. Article XIV of Chapter 18 of the Detroit City Code is in full force and effect in accordance with all applicable City Charter, constitutional and statutory requirements, and is within the City's powers, require no action by or in respect of, or filing with, any governmental body, agency or official and do not contravene, or constitute a default under, any provision of applicable law or regulation or of the City Charter or of any agreement, judgment, injunction, order, decree or other instrument binding upon the City. The City has not rescinded, reduced or ceased to impose the Wagering Taxes.

       Chapter 9 of the Bankruptcy Code affords special protection to certain creditors having a lien on "special revenues" from the effect of Section 552(a). Under Bankruptcy Code Section 552(a), property acquired by a debtor after filing bankruptcy is not subject to any lien created prior to bankruptcy. See, e.g., United Sav. Ass'n v. Timbers of Inwood Forest, 484 U.S. 365, 374 (1988). Section 552(a) is incorporated into Chapter 9 of the Bankruptcy Code through Bankruptcy Code § 901. In 1988, Congress enacted a limited exception to the application of Section 552(a) by making Bankruptcy Code § 552(a) inapplicable to "special revenues". Thus, under Bankruptcy Code § 928, bondholders secured by a lien on special revenues retain their lien on the special revenues that arise post-petition. See, In re County of Orange, 179 B.R. 185, 191-192 (Bankr. C.D. Cal. 1995) ("Code § 928 was enacted [to] mak[e] § 552(a) inapplicable to revenue bonds."

       Section 902(2) defines "special revenues, in relevant part, as:

"... special excise taxes imposed on particular activities or transactions."

       While there is no specific definition of excise taxes under the Bankruptcy Code, particularly under Section 902(2), excise taxes have been defined in other sections under the Bankruptcy Code as "an indirect tax that is not directly imposed upon persons or property, but one that is imposed on the performance of an act, the engaging in any occupation, or the enjoyment of a privilege." New Neighborhoods, Inc. v. West. Va. Workers Comp. Ins. Fund,


ORRICK

The Parties Listed on Schedule A
Hereto
June 26, 2009
Page Five

886 F.2d 714 (4th Cir. 1989) (premiums owed to a workers' compensation fund were excise taxes entitled to priority under Bankruptcy Code § 507(a)(7)).

In In re Lorber Industries of California, Inc., 675 F.2d 1062, 1066 (9th Cir. 1982), the Ninth Circuit set forth the following four-prong test to determine whether an exaction should be characterized as a tax:

> (a) an involuntary pecuniary burden, regardless of name, laid upon individuals or property;
>
> (b) imposed by, or under authority of the legislature;
>
> (c) for public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;
>
> (d) under the police or taxing power of the state.

Here, the Wagering Tax Revenue Statute authorized the City to impose both a wagering tax and a municipal services fee upon a person who is licensed by the Michigan Gaming Control Board to operate a casino within the City of Detroit. The Wagering Taxes were imposed by the City on each of the Casino Licensees, the proceeds of which are required to be used by the City for the purposes authorized and set forth in the Wagering Tax Revenue Statute. Pursuant to Detroit City Code Section 18-4-3, adopted pursuant to Section 12(4)(b) of the Wagering Tax Revenue Statute, the City imposed the Wagering Taxes. Detroit City Code Section 18-4-3 specifically provides that:

> "(a) a wagering tax is hereby imposed **as an excise tax** upon the adjusted gross receipts of a casino licensee.
>
> (b) The wagering tax that is imposed pursuant to this section shall be equal to nine and nine-tenths percent (9.9%) of the **adjusted gross receipts** which are received by a casino licensee and subject to tax under subsection (a) of this section.
>
> (c) The wagering tax that is imposed pursuant to this section shall be applied against all **adjusted gross** receipts received in 1999 and each year thereafter in which a casino licensee is licensed by the


ORRICK

The Parties Listed on Schedule A
Hereto
June 26, 2009
Page Six

board to conduct a gambling operation within the city." (emphasis added)

Thus, a court should conclude that the Wagering Taxes are excise taxes within the meaning of Bankruptcy Code § 902(2). As described in the legislative history, the term "special revenues" was intended "to cover special excise taxes imposed on particular activities or transactions---such as an excise tax on hotel or motel rooms imposed by some municipalities or an excise tax on the sale of alcoholic beverages." H.R. Rep. 100-1011, 100th Cong., 2d Sess. 6-7 (1988); S. Rep. 100-506, 100th Cong., 2d Sess. 21 (1988); and see Collier on Bankruptcy 4-507 ¶ 507.10[6] (15th ed. Rev.) (The legislative history to the Bankruptcy Code suggests that excise taxes includes sales taxes, estate and gift taxes, gasoline and special fuel taxes, and wagering and truck taxes). See United Parcel Serv., Inc. v. Flores-Galarza, 318 F.3d 323, 326 n.1 (1st Cir. 2003) (quoting Black's Law Dictionary at 585 (7th ed. 1999)) ("[a]n excise tax is '[a] tax imposed on the manufacture, sale, or use of goods ... or an occupation or activity....' " ); In re Albion Health Servs., 339 B.R. 171, 178-79 (Bankr. W.D. Mich. 2006) (contributions to the Michigan Unemployment Compensation Fund was not a "tax" entitled to priority; court stated that "An excise tax is: [a] tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege. [citation omitted] A tax on the manufacture, sale, or use of goods or on the carrying on of an occupation or activity, or a tax on the transfer or property. In current usage the term has been extended to include various license fees and practically every internal revenue tax except the income tax (*e.g.*, federal alcohol and tobacco excise taxes, IRC § 5001 et seq.")) (citing Black's Law Dictionary (6th Edition)).

In In re Juvenile Shoe Corporation of America, 99 F.3d 898 (8th Cir. 1996), the Eighth Circuit held that a 15% flat tax levied on funds reverted to an employer from an over-funded employer pension fund constitutes an excise tax because it was designed to capture the tax benefit the employer received at the expense of the government while the funds were held in the tax-exempt pension trust. Thus, it had the same effect as assessing the tax prior to the employer's placement of the funds in the pension plan and accordingly the primary objective was to support the government rather than to penalize an unlawful act. But see United States v. Reorganized CF&I Fabricators of Utah, Inc., 518 U.S. 213 (1996) (an IRS provision imposing a ten percent "tax" on any accumulated funding deficiency of certain pension plans was not an excise tax but instead was, for bankruptcy purposes, a penalty to be dealt with as an ordinary unsecured claim); and In re Jenny Lynn Min. Co., 780 F.2d 585, 588 (6th Cir. 1986) (a tax is an exaction for public purposes; fee for obtaining a strip mining permit is not an excise tax).


ORRICK

The Parties Listed on Schedule A
Hereto
June 26, 2009
Page Seven

        Based on and subject to the foregoing, as well as the limitations set forth below and the further qualification that there is no case directly on point, we are of the opinion that if the matter were properly briefed and presented to a court, the court would hold that the Wagering Taxes constitute "special revenues" under Section 902(2) of the Bankruptcy Code.

        We express no opinion whether Bankruptcy Code § 928 applies with respect to the City Pledge. We note that some courts have held that Bankruptcy Code § 928 is not unlimited. See In re County of Orange, 179 B.R. at 191-192 ("Section 928 was narrowly crafted to apply only to special revenue bonds)." One noted treatise has indicated that the purpose of Section 928 "was to protect liens granted to secure financings which related to the purpose for the financing" and "should not be construed as authorizing the special treatment . . . on special revenues unrelated to the project, system or works for which the bonds were issued." Collier on Bankruptcy ¶ 507.10[6]. Collier goes on to say "For example, a lien on receipts from an existing hotel/motel tax to secure bonds issued to build a new city college facility, or a lien on sewer tax revenues to secure bonds for an electric generating station, should not qualify for the special treatment afforded revenue bonds by the 1988 Amendments." Id.

        We express no opinion concerning the laws of any jurisdiction other than the Bankruptcy Code and, of the Bankruptcy Code, Chapter 9 of the Bankruptcy Code. We do not express any opinion herein as to any bankruptcy case affecting any entity other than the City or a Service Corporation, or as to any case involving the City or either Service Corporation under any other chapter of the Bankruptcy Code. We also do not express any opinion as to any wagering taxes other than the Wagering Taxes or whether the municipal services fee imposed by Detroit City Code Section 18-14-4 pursuant to Section 12(4)(b) of the Wagering Tax Revenue Statute constitutes "special revenues". We express no opinion as to whether a Service Corporation is eligible to be a debtor under Chapter 9 of the Bankruptcy Code.

        The opinions set forth above are given as of the date hereof and we disavow any undertaking or obligation to advise you of any changes in law or any facts or circumstances that may hereafter occur or come to our attention that could affect such opinions. Furthermore, it is our and your understanding that the foregoing opinions are not intended to be a guaranty as to what a particular court would actually hold, but an opinion as to the decision a court should reach if the issue were properly presented to it and the court followed what we believe to be the applicable legal principles. In that regard, you should be aware that all of the foregoing opinions are subject to inherent limitations because of the pervasive equity powers of bankruptcy courts,


**ORRICK**

The Parties Listed on Schedule A
Hereto
June 26, 2009
Page Eight

the overriding goal of reorganization to which other legal rights and policies may be subordinated, the potential relevance to the exercise of judicial discretion of future-arising facts and circumstances and the nature of the bankruptcy process. This opinion is solely for your benefit in connection with the transactions described in the first paragraph hereof and may not be relied upon or used by, circulated, quoted or referred to, nor may copies hereof be delivered to, any other person without our prior written approval.

                                Very truly yours,

                                *Orrick, Herrington & Sutcliffe LLP*

                                ORRICK, HERRINGTON & SUTCLIFFE LLP



SCHEDULE A

| | |
|---|---|
| The City of Detroit<br>City of Detroit Law Department<br>First National Building, Suite 1650<br>660 Woodward Avenue<br>Detroit, Michigan 48226 | U.S. Bank, National Association<br>535 Griswold, Suite 550<br>Detroit, Michigan 48226 |
| UBS Securities LLC<br>677 Washington Boulevard<br>Stamford, CT 06901 | SBS Financial Products Company, LLC<br>100 Wall Street, 22nd Floor<br>New York, New York 10005 |
| Merrill Lynch Capital Services, Inc.<br>Merrill Lynch World Headquarters<br>4 World Trade Center, 18th Floor<br>New York, New York 10080 | Financial Guaranty Insurance Company<br>125 Park Avenue<br>New York, New York 10017 |
| Syncora Guaranty Inc.<br>1221 Avenue of the Americas<br>New York, New York 10020 | |
| | |