# EXHIBIT Y



Senate Fiscal Agency
P. O. Box 30036
Lansing, Michigan 48909-7536

SFA BILL ANALYSIS

Telephone: (517) 373-5383
Fax: (517) 373-1986
TDD: (517) 373-0543

Senate Bill 29 (Substitute S-2 as reported)
Sponsor: Senator Joanne G. Emmons
Committee: Finance

Date Completed: 2-22-01

**CONTENT**

**The bill would create the "Revised Municipal Finance Act" to regulate borrowing by municipalities, and their issuance of "obligations"; and prescribe the powers and duties of the Department of Treasury to protect the credit of the State and its municipalities.**

Currently, the Municipal Finance Act prescribes the powers and duties of the Department of Treasury to regulate the borrowing and issuance of obligations by municipalities, and places various requirements on the municipalities. In addition, a number of other statutes authorize municipal debt. The bill would specifically prohibit a municipality from issuing obligations except in accordance with the proposed Act (unless otherwise exempted by law).

The bill would do the following:

-- **Require each municipality to file an audited financial statement each year with the Department, accompanied by a qualifying statement (on a form prescribed by the Department). If the Department determined that a municipality complied with the bill's qualifying requirements, it could issue obligations without further approval from the Department, until the next qualifying statement was due. If the Department determined that a municipality was not qualified, it could not issue obligations under the bill without the prior approval.**
-- **Provide that a municipality's obligation of an authorized issue could be sold at a competitive sale or negotiated sale, as determined by the municipality's governing body.**
-- **Specify that if a municipality borrowed money in anticipation of the collection of taxes for the next succeeding fiscal year, the resolution authorizing the obligation would have to contain an irrevocable provision for the levying of a tax for repayment of the obligation.**
-- **Allow a municipality to issue short-term obligations in anticipation of the proceeds of an obligation it proposed to issue, or in anticipation of receiving grants from the United States, under certain circumstances.**
-- **Specify that a State authority or agency would not be required to obtain the approval of the Department before issuing obligations, or to file any qualifying or audited financial statements.**
-- **Allow the City of Detroit, under certain circumstances, to borrow money and issue delinquent property tax obligations in anticipation of collecting delinquent taxes owed to the city's school district.**

Under the bill, a "municipality" would be a county, township, city, village, school district, community college district, metropolitan district, port district, drainage district, district library, or another governmental authority or agency that had the power to issue an obligation. "Obligation" would mean evidence of indebtedness such as a bond, refunding bond, note, contract or assessment for the payment of a bond or obligation, and other similar instrument issued or incurred by a municipality, that was a general obligation of the municipality, or that, on its face, met one or both of the following requirements and was not exempted from the proposed or current Act by the provisions of law authorizing its issuance: pledged the limited tax full faith and credit of the municipality, or was payable primarily or secondarily from taxes, or special assessment, or both. A "general obligation" would be an obligation that pledged the limited or unlimited taxing power of the municipality or was payable from any revenue sources lawfully available to meet the obligation.

Following is a detailed description of the bill.

Department Powers

The Department of Treasury would be authorized to do the following:

-- Aid, advise, and consult with any municipality with respect to fiscal questions arising from and relating to its proposed or outstanding indebtedness.
-- Issue bulletins or adopt rules as necessary to carry out the purposes of the proposed Act. A bulletin would have to include a statement of the Department's specific statutory authority for any substantive requirement contained within the bulletin. A bulletin issued by the Department that addressed filings, approvals, or determinations regarding issuance of an obligation (or any modification of an existing bulletin that addressed these matters) could not take effect unless the Department issued the bulletin with at least a 30-day public comment period.
-- Examine the books and records of any municipality for the purpose of ascertaining if it was complying with the requirements of the Department, the statutes of the State, and its charter, ordinances, and resolutions, in relation to its obligations. The Department would have full power to examine witnesses on oath, and compel the attendance of witnesses, the giving of testimony, and the production of books, papers, and records. Any person duly subpoenaed who neglected to attend or testify would be guilty of a misdemeanor.
-- Enforce compliance with any provision of the proposed Act or any law, charter, ordinance, or resolution with respect to obligations subject to its jurisdiction including the levy and collection of taxes for the payment of obligations.
-- Render financial advisory, paying agent, registration, and transfer services and materials, including assistance in the preparation and issuance of a municipality's obligations; prepare explanatory manuals; conduct training seminars; and, upon request of a municipality, assist the municipality in issuing its obligations. The Department could impose a fee upon municipalities requesting its services or materials; the fee would be limited to the cost incurred by the Department in providing the service.

If any municipality were aggrieved by any determination of the Department, it could notify the Department and appeal the determination as a contested case pursuant to the Administrative Procedures Act.

General Provisions

The bill provides that each municipality would have to file an annual audited financial statement with the Department within six months from the end of its fiscal year or as otherwise provided in the Uniform Budgeting and Accounting Act. Accompanying the statement, a municipality would have to file a qualifying statement, on a form and in the manner provided by the Department. If a municipality intended to issue an obligation under the bill, the municipality would have to pay a determination fee of $75 to the Department. Within 30 business days of receiving the qualifying statement and fee, the Department would have to determine if the municipality complied with the requirements of the bill. If the Department determined that the municipality complied with the bill, or if the Department failed to notify the municipality of its determination, the municipality could proceed to issue obligations without further approval from the Department until 30 business days after the next qualifying statement was due.

To qualify to issue obligations without further approval from the Department, a municipality would have to be in material compliance with all of the following as determined by the Department and as certified by the municipality's chief administrative officer:

-- The municipality was not operating under the provisions of the Local Government Fiscal Responsibility Act.
-- The municipality did not have obligations outstanding in the preceding or current fiscal year that were authorized by either the Emergency Municipal Loan Act or the Fiscal Stabilization Act.

- The municipality was not required by the terms of a court order or judgment to levy a tax in the preceding fiscal year.
- The most recent audited financial statement, as required by the Uniform Budget and Accounting Act, was filed with the Department within six months from the end of the municipality's fiscal year.
- The fund balance for any obligation that was funded from an unlimited tax levy or a special assessment did not exceed 150% of the amount required for principal and interest payments due for that obligation in the next fiscal year.
- The municipality had no debt outstanding that exceeded its statutory or constitutional debt limits, or had no debt outstanding that was not authorized by statute.
- The municipality was not presently, and during the preceding fiscal year had not been, in violation of any security provisions in debt covenants for an outstanding debt.
- The municipality was not delinquent more than one time in the preceding fiscal year in transferring employee taxes withheld to the appropriate agency, transferring taxes collected as agent for another taxing entity to that taxing unit, or making all required pension, retirement, or benefit plan contributions.
- The most recent delinquent taxes of the municipality, without regard to payments received from the county under the General Property Tax Act, did not exceed 25% of the amount levied.
- The municipality, in the preceding 12 months, had not submitted a qualifying statement or an application for any other obligation that was materially false or incorrect.
- The municipality was not in default on any debt, excluding industrial development revenue bonds issued under the Industrial Development Revenue Bond Act, economic development corporation bonds issued under the Economic Development Corporation Act, bonds issued by a local hospital finance authority for a private hospital under the Hospital Finance Authority Act, or any other debt for which the municipality was not financially liable.
- The municipality had not ended the immediately preceding fiscal year with a deficit, unless a municipality had filed a financial plan to correct the deficit condition under Section 21 of the State Revenue Sharing Act, that was acceptable to the Department. (Under Section 21, a local government that ends its fiscal year in a deficit condition must formulate and file a financial plan with the Department of Treasury to correct the condition.)
- The municipality had not been found to be in violation of any finance or tax-related State or Federal statutes, or in violation of the bill, during the preceding fiscal year.

If a municipality were notified within 30 business days of the filing of a qualifying statement that it was not in compliance with one or more of the above provisions, the municipality could correct the noncompliant requirements and request a reconsideration of the determination. The request would have to indicate the action taken by the municipality to correct the noncompliance. Within 30 business days of receiving the request for reconsideration, the Department would have to determine if the municipality complied with the requirements; if the Department failed to notify the municipality of its determination, the municipality would be granted qualified status. If a municipality were notified that it did not comply with the requirements, the municipality could not issue obligations under the bill without the prior written approval of the Department.

To request prior written approval to issue an obligation, a municipality would have to submit an application and supporting documentation to the Department on a form and in a manner prescribed by the Department, and a fee of $800. Within 30 business days of receiving an application, the fee, and supporting documentation from a municipality, the Department would have to determine whether the municipality had met all of the following requirements: had indicated the authority to issue the obligation requested; was projected to be able to repay the obligation when due; and had filed information with the Department indicating compliance with the requirements of the bill or adequately addressed any noncompliance. If the Department determined that the requirements had been met, the Department would have to approve the issuance of the proposed obligation. If the Department determined that the requirements had not been met, it would have to issue to the municipality a notice of deficiency that prevented the issuance of the proposed obligation, stating the specific deficiencies and problems with the proposed issuance. After the deficiencies and problems had been addressed as determined by the Department, it would have to approve the issuance of the proposed obligation.

Obligations authorized by law to be issued by a municipality could, notwithstanding the provisions of a charter, bear a rate of interest subject to a maximum rate established by the governing body of the municipality, but the rate could not exceed 18% per year, or a per annum rate determined by the Department at the request of the municipality, whichever was higher. In making its determination, the Department would have to establish a rate that bore a reasonable relationship to 80% of the adjusted prime rate determined by the Department. Further, obligations could not be sold at a discount exceeding 10% of their principal amount.

Obligations could be sold at a competitive sale or a negotiated sale as determined in the authorizing resolution. An obligation sold at a negotiated sale would have to be approved by a municipality's governing body before the sale. Obligations to be sold at a competitive sale could be sold only after notice by publication, at least seven days before the sale, in a publication printed in the English language and circulated in the State. Bids at a public competitive sale would have to be selected on the basis of the lowest total interest cost, unless all the bids were rejected.

The governing body of a municipality could provide for an obligation to be register able, authenticated, transferred in ownership, or exchanged (if mutilated) as provided in the bill.

Within 15 business days of completing the issuance of any obligation under the bill, a municipality, other than a State authority or agency, would have to file a copy of the following with the Department: the obligation; proof of publication of the notice of sale, if applicable; the award resolution including a detail of the annual interest rate on the obligation; the legal opinion regarding the legality and tax status of the obligation; the notice of rating of the obligation received from a recognized rating agency, if any; the authorizing resolution or ordinance authorizing the issuance of the obligation; and the official statement, if any. The failure of a municipality to comply with these requirements would not invalidate the obligations issued by the municipality.

Municipality Powers

The bill would allow a municipality, in determining to issue an obligation, to do one or more of the following:

-- Authorize and enter into transactions, including insurance contracts and lines of credit, to provide security for the timely payment of an obligation.
-- Authorize payment of the cost of issuance from the obligation's proceeds or other funds.
-- Authorize principal and interest to be payable from taxes or other revenues of the municipality; proceeds of the obligation and earnings on the proceeds; and/or proceeds of any other security.
-- Authorize an officer of the municipality to perform various specified duties in relation to selling, buying, and delivering obligations.

Notwithstanding any charter or ordinance provisions to the contrary, a municipality that issued an obligation in anticipation of special assessments could, in order to pay principal and interest on the obligation, charge a rate of interest on the unpaid balance of the special assessments in excess of the charter or ordinance limit but not in excess of 1% above the average rate of interest borne by the obligation.

A municipality could enter into an interest rate exchange, swap, hedge, or similar agreement, to manage its debt service. The bill provides that an agreement would not be a debt of the municipality for purposes of statutory or charter debt limitations; and would be payable as a limited tax general obligation from the general funds of the municipality or, subject to any existing contracts, from any available money or revenue sources securing the obligation.

By resolution of its governing body, and without a vote of its electors, a municipality could borrow money and issue an obligation to pay the cost of any capital improvement items funded through its budget, provided that the amount of taxes necessary to pay the principal of and interest on that obligation, together with the taxes levied for the same year, did not exceed the limit authorized by law. The budget would have to indicate the items to be financed by the obligation.

Local Drains

The bill provides that any county, township, city, or village, by resolution of its governing body and without a vote of its electors, could issue its full faith and credit obligations for the purpose of funding any or all of a county or intercounty drain special assessment made against the local unit under the Drain Code. The bill specifies the requirements that the obligations would have to meet.

Water and Sewer/Federal Purchase

Under the bill, when an obligation issued for the purpose of defraying the cost of purchasing, acquiring, constructing, or improving any water supply or sewage disposal system was purchased at competitive sale or negotiated sale by the Federal government, and applicable rules of the Federal government so required, serial obligations comprising the obligation could be delivered to the Federal government in installments. Installment deliveries would have to be made during the construction or improvement of the system in an amount calculated to be sufficient to defray expenses to be incurred before the next scheduled installment delivery. Payment in an amount equal to the aggregate par amount of an obligation delivered in each installment would have to be made at the time of delivery of each installment. If the Federal government required, interest coupons representing interest due on the obligation from the date of delivery to the first interest payment date could be adjusted to reflect the amount of interest due from the date of the delivery. ("Serial obligations" would be any series of obligations maturing in two or more installments, or in one installment within three years from the date of issuance.)

Obligations for Insurance

The bill would allow a municipality by resolution or intergovernmental contract, without a vote of its electors, to issue its full faith and credit limited tax obligations for the following purposes:

-- Paying premiums and other charges for coverages provided by an insurance pool established pursuant to Public Act 35 of 1951, or evidencing fixed payment obligations or obligations to make payments under specified contingencies pursuant to an intergovernmental self-insurance pool contract approved by the State Treasurer under that Act. (Public Act 35 of 1951 allows two or more municipal corporations (any local government or local agency with the power to enter into contracts) to form a group self-insurance pool to provide mutual risk for various types of insurance as provided under the Act.)
-- Establishing funds, reserves, or accounts in amounts determined by the municipality to defray losses for which insurance coverage could be provided by an insurer pursuant to the Insurance Code, but for which the municipality determined to self-insure.

These obligations could not be considered debt of the municipality for statutory, charter, or constitutional debt limitations, but could not require or authorize the levy of taxes in excess of applicable statutory, charter, and constitutional debt limitations.

The obligations could not be issued for more than 30 years, and would have to meet further requirements specified in the bill.

Tax & Revenue Anticipation

The bill would allow a municipality, by resolution and without a vote of the electors, to issue its obligations in anticipation of the collection of the taxes, revenue sharing payments under the State Revenue Sharing Act, and other revenues prescribed in Part IV (Short-Term Obligations) of the bill for its next fiscal year, or for a current fiscal year.

If the money borrowed by the municipality in anticipation of taxes were for operating expenses, it could be used only for the purpose of paying the necessary operating expenses of the municipality that could not reasonably have been foreseen and adequately provided for in the tax levy for the then current fiscal year; for the payment of an expense in the current fiscal year that could not be funded because of a delay in or failure of receipt of budgeted revenue; or for the payment of budgeted expenses in the current fiscal year that preceded budgeted revenues. The amount to be borrowed for these purposes could not exceed 50% of the operating tax levy for the current fiscal year, or if the operating tax levy for the next fiscal year were determined, 50% of the levy for that fiscal year. The authorizing resolution would have to provide for a portion of the taxes to be set aside in a special fund for the payment of principal and interest. The taxes set aside could not be used for any other purpose. If the money borrowed were for capital improvements, a portion of the taxes would have to be set aside in a special fund for the payment of principal and interest on the tax anticipation obligations.

If borrowing were made in anticipation of the collection of taxes for a current fiscal year, the proceeds of the borrowing could be used only for the payment of operating expenses, debt service charges, or capital improvements as provided in the bill. If borrowing were made in anticipation of the collection of taxes for the next fiscal year, the resolution authorizing the obligation would have to contain an irrevocable provision for the levying of a tax in that fiscal year for the purpose for which the obligation was to be made and its repayment from the taxes.

The amount of money borrowed for the payment of operating expenses or debt service charges would be limited as provided in the bill.

If the money borrowed in anticipation of taxes for a current fiscal year were for the payment of a capital improvement, the sum borrowed could be used only for the payment of the improvements provided for in the tax levy of the current fiscal year, and could not exceed the anticipated collection of the sum included in the tax levy for that purpose.

The proceeds of borrowing in anticipation of the receipt of revenue sharing payments could be used only for the payment of operating expenses. The amount borrowed could not exceed 50% of the total payments received in the municipality's last preceding fiscal year, as certified by the Department.

The bill provides that a municipality could, by resolution of its governing body, and without a vote of the electors, issue a short-term obligation in anticipation of the proceeds of an obligation it proposed to issue; or in anticipation of receiving grants from the United States, this State, or any agency of the Federal or State government. Municipalities that issued short-term obligations under these provisions would have to comply with the requirements prescribed in the bill.

Tax Levies/Debt Retirement

The bill provides that if a municipality had obligations outstanding, or with the approval of its electors had authorized the issuance of obligations to be paid

from collections of its next tax levy, it would have to include in the amount of taxes levied each year the following:

-- An amount such that the estimated collections would be sufficient to pay promptly, when due, certain interest and principal on the obligations, before the time of the following year's tax collection.
-- An amount, if there were outstanding term refunding obligations, sufficient to provide required sums to be deposited into the sinking fund for that purpose before the time of the following year's tax collection.
-- An amount, if there were outstanding term obligations other than refunding obligations, that if deposited annually into a sinking fund would, with the existing sinking fund pertaining to the obligations and the increment of the obligations, be sufficient to pay the obligations at maturity.

The bill states that these provisions would not limit the amount required to be levied in a year for the purposes prescribed by the terms of an ordinance or resolution authorizing the issuance of the obligations. If the obligations were not approved by the electors of the municipality, the municipality would have to levy and collect ad valorem taxes as required under the bill for the payment of the obligations as a first budget obligation; however, the ad valorem taxes would be subject to applicable charter, statutory, or constitutional limitations.

If there were surplus money on hand for the payment of principal or interest at the time an annual tax levy was made, and the authorizing resolution did not provide for the disposition of that money, the annual levy would have to be adjusted to reflect available funds.

Money remaining in a debt retirement fund from the levy of a tax after the retirement of all obligations payable from that fund would have to be used first to pay other funded indebtedness of the municipality, next to pay any other debt of the municipality, and finally be dedicated to the municipality's general fund.

If taxes, special assessments, or both, had been levied for or pledged to the payment of obligations, all money on hand or thereafter received from these taxes and/or special assessments would have to be applied as prescribed by the authorizing resolution or as could be approved by the Department.

Debt retirement funds would have to be accounted for separately and be used only to retire the municipality's funded indebtedness for which the funds were created, with the following exceptions: 1) A common debt retirement fund maintained by a school district under Section 1223 of the School Code (which authorizes a school board to invest debt retirement funds under certain circumstances) would not have to be accounted for separately and; 2) money remaining in a debt retirement fund from the levy of a tax after all obligations were retired would not have to be used for debt retirement (but would have to be used as prioritized above). When any municipality completed the retirement of outstanding obligations, or accumulated sufficient funds in the debt retirement fund for the retirement of the obligations, the governing body of the municipality would have to certify to the county treasurer that the obligations were retired, or that the debt retirement fund was sufficient to retire the obligations.

Any municipality issuing a term refunding obligation under Part IV of the bill would have to provide a sinking fund or funds for the retirement of the obligation, and deposit in each sinking fund annually amounts sufficient to pay the principal of the obligation at or before maturity. All sinking fund money for the retirement of a refunding obligation would have to be accounted for separately and be used only for the payment or purchase of the refunding obligation.

Obligation Requirements

Except as otherwise provided in law or in Part IV of the bill, obligations issued by a municipality could not be issued for longer than the estimated period of usefulness of the property or improvement for which they were issued. In addition, obligations could not be issued for a longer time than the following:

-- For obligations issued in anticipation of special assessments, two years from the time fixed by law for the payment of the last installment of the assessments from which the obligations were payable.
-- For emergency obligations for relief from fire, flood, or other calamity, five years.
-- For obligations for payment of judgments against the municipality, except judgments in condemnation proceedings, and obligations for the purchase of personal property, other than material for permanent construction, machinery for public utilities, or original furnishings and equipment of new buildings, 10 years.
-- For obligations for sewage disposal, water, or transportation systems, or for the construction, opening, widening, or improvement of bridges, 40 years.
-- For obligations for the construction, opening, widening, or improvement of highways, streets, roads, or alleys, 30 years.
-- For all other obligations, 30 years.

An obligation would have to be a serial obligation, a term obligation, or both, with maturities as fixed by the governing board of the municipality. (A term

obligation would be any series of obligations that matured in one installment after three years from the date of issuance.) The bill specifies various maximum maturity dates for serial obligations and term obligations. The obligations of any series could be made redeemable as provided by ordinance or resolution of the governing body. A premium that exceeded 3% of an obligation's par value could not be paid on it.

Interest that accrued on an obligation issued during the first three years after the date of the obligation could be paid from the proceeds of its sale. In addition, a reserve fund, in an amount up to 15% of the principal amount of the obligation issued, could be established from the proceeds of the sale of the obligation and would have to be held solely for the payment of principal of, and interest on, the obligation.

The total amount of special assessment obligations of any township, city, or village pledging its limited tax full faith and credit could at no time by reason of future issues, other than issues of refunding obligations, exceed 12% of the assessed value of the taxable property in the municipality. Further, those obligations could not be issued in any calendar year in excess of 3% of the assessed value unless authorized by majority vote of the electors, or by a larger vote as provided by statute or charter.

Refunding

A municipality could by resolution and without a vote of the electors refund all or any part of its funded indebtedness by issuing a refunding obligation. The bill specifies the circumstances under which refunding bonds could be issued. A refunding obligation could be issued in a principal amount greater than the principal amount of the obligation to be refunded, as necessary to effect the refunding under a refunding plan. To the extent provided by the proceedings authorizing the refunding obligations, principal, interest, and redemption premiums on the obligations would have to be secured by and payable from any or all of the following:

-- Taxes or special assessments pledged for payment of the obligations being refunded.
-- The proceeds of the refunding obligations.
-- The reserve, if any, established for the payment of the principal of, or interest and redemption premiums on, the refunding obligations or the obligations to be refunded.
-- The proceeds of any insurance, letter of credit, or line of credit acquired as security for the refunding obligations.
-- The proceeds of any obligations issued to refund the refunding obligations.
-- Investment earnings or profits on any of the sources described above.

The bill would prohibit a municipality from refunding its funded indebtedness by issuing a refunding obligation unless the net present value of the principal and interest to be paid on the refunding obligation, including the cost of issuance, was less than the net present value of the principal and interest to be paid on the obligation being refunded. A municipality could obtain an exception from this restriction upon showing the Department a "reasonable basis" for the exception, that is, the refunding was required by a State or Federal agency; was a short-term obligation issued in anticipation of the proceeds of an obligation; was necessary to avoid a potential default on an obligation; or was necessary to reduce or eliminate security or coverage requirements of ordinances or covenants applicable to the existing obligation.

Obligations issued to refund existing obligations would not be subject to certain provisions in the bill pertaining to maturity dates for serial obligations and term obligations.

Any outstanding funded indebtedness of a municipality that had been assumed in part by another municipality could be refunded by the municipalities as to their respective liabilities.

The bill states that it could not be construed to prohibit a municipality from refunding any of its outstanding funded indebtedness even though some other municipality could have become obligated to contribute to the payment of that indebtedness. Refunding authorized under this provision would not relieve any other municipality from an obligation to make a contribution to the payment of an indebtedness.

The refunding obligations and the tax levies used to repay them could not be deemed to be within any statutory or charter limitation of tax rate or of funded indebtedness, but would be deemed authorized in addition to any statutory or charter limitation of tax rate or funded indebtedness.

Refunding obligations issued to refund drainage obligations issued under the Drain Code would have to be obligations of the same character as the obligations refunded, and would have to be construed as a continuation of the former obligations. Also, refunding obligations issued to refund former obligations secured by a pledge of unlimited taxes would have to be secured by an unlimited tax pledge. All other refunding obligations, unless otherwise provided, would have to be the general obligation of the issuing municipality and its full faith and credit would have to be pledged to payment of these refunding obligations.

Detroit/Delinquent Property Taxes

The bill provides that a home rule city under the Home Rule City Act that collected property taxes on behalf of a first class school district (the City of Detroit), and that did not return delinquent property taxes to the county treasurer in the county in which the city was situated could, without a vote of the electors in the city, and upon a request by a resolution adopted by the school district board, borrow money and issue a delinquent ad valorem tax obligation in anticipation of the collection of the delinquent property taxes that were unpaid pursuant to a previous levy by the school district. The obligation could be issued to pay to the school district its share of delinquent property taxes that had been delinquent for up to three years before the date of issuance of the obligation. All delinquent taxes owed to the school district at the time of the issuance of the obligation, or at the time provided in the resolution authorizing issuance of the obligation, could be pledged to the payment of the principal of and interest on the obligation.

The city's governing body could create by resolution a delinquent property tax fund. Upon establishment of the fund, all delinquent property taxes pledged in a resolution authorizing issuance of an obligation, including taxes on personal property due and payable to the school district, would be due and payable to the city for deposit to the delinquent tax fund. The fund would have to be segregated into separate funds or accounts for delinquent taxes of each year pledged in the resolution.

The city's chief financial officer would have to pay from the delinquent tax fund an amount equal to the delinquent property taxes that were due and payable to the school district, promptly after the net proceeds of the obligation were deposited in the fund. The amount in the fund that would have to be paid and to which the school district was entitled would be the authorized portion of delinquent property taxes in anticipation of the obligation issued by the city.

The city would have to pay to the fund the interest charges and penalties established by law and pledged by the resolution that authorized issuance of the obligation. The city's property tax administration fee authorized under the General Property Tax Act could not be pledged to the obligation, or paid to the fund, and would have to be retained by the city for its services. A surplus in the fund after the payment of all principal and interest on the obligation and all other costs related to the borrowing would have to be transferred by the chief financial officer from the fund to the school district under the provisions of the resolution that authorized issuance of the obligation.

The bill specifies that the city could, by resolution of its governing body and without a vote of its electors, borrow money and issue a delinquent property tax obligation to establish or continue, in whole or in part, the delinquent tax fund and to pay the expenses of the borrowing. The obligation could be a full faith and credit general obligation of the city within constitutional, statutory, and charter limitations applicable to the city, if authorized by the resolution authorizing issuance of the obligation. In the resolution, the delinquent property taxes from which the obligation was to be repaid would have to be pledged to the payment of the principal of and interest on the obligation, and the proceeds of the collection of the delinquent taxes and the interest on the taxes would have to be placed in a segregated debt service fund or account. The taxes could not be used for any other purpose until the principal of and interest on the obligation were paid in full. The proceeds of the obligation would have to be placed in the delinquent tax fund and used as provided above, after the expenses of borrowing had been deducted from the proceeds.

An obligation issued by the city would have to meet requirements specified in the bill. The resolution authorizing issuance of the obligation could provide that all or a part of the obligation would be subject to redemption, and set the terms and conditions of the redemption, if any. If an obligation were designated a full faith and credit general obligation of the city, it would obligate the city to levy taxes to the extent necessary to pay the principal of and interest on the obligation, subject to applicable constitutional, statutory, and charter limitations. Interest on the obligation could be made payable in the manner provided in the resolution. The obligation and the interest on it would be exempt from all taxation by the State or a political subdivision or taxing authority in the State.

If the proceeds of the collection of delinquent property taxes pledged in the resolution to payment of the amount of the principal of and interest on an obligation, together with penalties and interest on the taxes, were not sufficient to pay that amount when due, upon demand of the city the school district would have to pay to the city (for deposit to the fund) an amount to pay the insufficiency, in order that principal of and interest on the obligation together with penalties and interest on the delinquent taxes would be paid in full when due. After payment of the insufficiency, the school district could be reimbursed the amount paid from the fund by the city from delinquent taxes collected and deposited in the fund, if those amounts were not needed to pay principal of and interest on the obligation coming due.

If, for any reason, the city paid any part of the principal of or interest on the obligation because of the pledge of the full faith and credit of the city, the school district would have to reimburse the city the amount paid. This obligation would be a full faith and credit general obligation of the school district. If the school district did not reimburse the city, the city

13-53846-tjt    Doc 3153-33    Filed 03/21/14    Entered 03/21/14 23:44:31    Page 9 of 10

could retain as reimbursement delinquent property taxes pledged to payment on the obligation, if the amounts were not needed to pay principal of and interest on the obligation coming due; and any other funds payable from the city to the school district not otherwise pledged.

The bill specifies that an obligation issued by the city under these provisions could be issued at an original issue discount not to exceed 2% of the face value of the obligation issued.

Legislative Analyst: G. Towne

**FISCAL IMPACT**

State Impact: Under the bill, State revenues would be reduced because of the changes in filing requirements and filing fees. Under current law, the Department of Treasury receives approximately $250,000 per year in fees from local units to review and approve bond sales. Under the bill, local units wishing to issue obligations without prior approval by the State would be required to submit certain documents and pay a $75 fee, while units not receiving authorization to issue obligations without prior State approval would be required to submit an application and pay an $800 application fee to obtain prior approval before each bond issuance. Because some local units would face lower fees prior to the issuance of obligations, State revenues would decline, although the degree to which the bill would reduce revenues is unknown. The bill also would reduce the Department of Treasury's oversight obligations regarding the issuance of local units' debt obligations.

Local Impact: Since under certain conditions local units would no longer be required to seek prior approval from the State for sales of bonds and other debt obligations, filing fees would decline by an unknown amount (although less than $250,000) under the bill. Other provisions of the bill would allow local units to issue debt more easily or would increase the length of maturity for certain construction-related debt obligations. If local units took advantage of these provisions, then annual debt service payments by local units could increase or decrease under the bill. The extent to which local units would increase debt issuance under the bill is unknown, although any impact is expected to be minimal because the bill proposes no changes that would substantively alter the incentives for issuing debt or alter the amount of debt issued.

Fiscal Analyst: D. Zin<br>J. Runnels

S0102\s29sb
This analysis was prepared by nonpartisan Senate staff for use by the Senate in its deliberations and does not constitute an official statement of legislative intent.