UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


IN RE: CITY OF DETROIT,      .      Docket No. 13-53846
        MICHIGAN,            .
                             .      Detroit, Michigan
                             .      March 20, 2014
                Debtor.      .      10:00 a.m.
. . . . . . . . . . . . . . .


HEARING RE. MOTION OF THE OFFICIAL COMMITTEE OF
RETIREES TO COMPEL THE PRODUCTION OF DOCUMENTS REQUESTED
IN CONNECTION WITH THE DEPOSITION OF KEVYN ORR AS
RELATES TO THE CITY'S PROPOSED SETTLEMENT AND PLAN SUPPORT
AGREEMENT WITH THE SWAP COUNTERPARTIES (DOCKET #3071)
BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:        Pepper Hamilton, LLP
                       By:  ROBERT S. HERTZBERG
                       4000 Town Center, Suite 1800
                       Southfield, MI  48075-1505
                       (248) 359-7333

For the Official       Dentons US, LLP
Committee of           By:  SAM J. ALBERTS
Retirees:              1301 K Street, NW, Suite 600, East Tower
                       Washington, DC  20005
                       (202) 408-7004

Court Recorder:        Letrice Calloway
                       United States Bankruptcy Court
                       211 West Fort Street
                       21st Floor
                       Detroit, MI  48226-3211
                       (313) 234-0068

Transcribed By:        Lois Garrett
                       1290 West Barnes Road
                       Leslie, MI  49251
                       (517) 676-5092

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1        THE CLERK: All rise. Court is in session. Please

2 be seated. Case Number 13-53846, City of Detroit, Michigan.

3        MR. ALBERTS: Good morning, your Honor.

4        THE COURT: Good morning.

5        MR. ALBERTS: Sam Alberts from Dentons on behalf of

6 the Official Committee of Retirees. We're here this morning

7 on the committee's motion for the production of documents

8 requested in connection with the deposition of Kevyn Orr,

9 which relates to the city's proposed plan and settlement

10 agreement with the swap counterparties. It can be found at

11 ECF 3072. First of all, I'd like to thank the Court for

12 holding this on an expedited basis.

13        Your Honor, I think fundamentally, you know, we have

14 read the opposition, and we believe that what we are seeking

15 here is both very relevant to the motion and the need for us

16 to support our objection and is different than what has come

17 before the Court given the new elements of the city's

18 proposed swap agreement. And, in fact, unlike the past where

19 one could say just look at the terms of the swap agreement,

20 determine whether it's fair and reasonable, that's why actual

21 written discovery is not necessary, what the city is

22 proposing to do with the current swap agreement, in addition

23 to some elements of the past, is to give the swap

24 counterparties a claim which would then be voted as an

25 impaired secured claim, and the stated purpose of it, very

1   clearly from the debtor's papers, is to provide the debtor

2   with an impaired consenting class for a cramdown.  We

3   believe, your Honor, that that is improper.  It's an improper

4   purpose.  And the reason why discovery is important on this

5   matter, your Honor, is that in order -- courts oftentimes

6   look to one of two standards to determine artificial

7   impairment.  One is under 1129(a)(10), and the majority of

8   those courts talk about artificial impairment being per se

9   impermissible and that that does not create an impaired class

10   for the purposes of that provision.  Other courts, however,

11   look at a good faith standard under 1129(a)(3), and they look

12   to see whether the plan is proposed in good faith.  And in

13   doing that, they oftentimes look at whether or not votes

14   should be designated or disallowed for voting purposes under

15   1129 -- 1126(e).  In particular, a case we cited for this

16   proposition is the Quigley case out of the Southern District

17   of New York, 437 Bankruptcy Reporter 102, and the real

18   interesting pieces of that appear at 129 and 132.

19         Your Honor, the facts that we are seeking to gain

20   information go right to the heart of that issue of good faith

21   or lack of good faith, and so what we did is in our request

22   for the deposition of Kevyn Orr, we added also a request for

23   production under 11 categories, all of which relate to the

24   settlement agreement, the proposed support agreement, and why

25   the creditor is being treated as an impaired secured claim.

1      THE COURT:  Well, I'm not opposed to document

2  discovery in principle in connection with Mr. Orr's

3  deposition.  I have to say, however, that the relevance of

4  the particular documents that you have asked for does not

5  jump off the page at me, so I need to be persuaded.

6      MR. ALBERTS:  Okay.

7      THE COURT:  So let's just go through them.

8      MR. ALBERTS:  Okay.  Thank you, your Honor.

9      THE COURT:  For example, number one, drafts of the

10  settlement agreement.

11      MR. ALBERTS:  Right.  Your Honor, why we think that

12  is relevant is because we would like to see where in the

13  process the provision was added, if it was added during it,

14  as to the consideration that the city has requested from the

15  impaired creditor that they should be deemed impaired and

16  allowed to vote on the plan in such a way.  We'd like to see

17  the --

18      THE COURT:  Well, but what's the relevance of the

19  history of the negotiations?

20      MR. ALBERTS:  Well, your Honor, I think that goes to

21  an issue of whether or not we're really dealing with an

22  impaired claim or a new claim.  One of our objections, your

23  Honor, is that really what the city is doing here is they're

24  creating a new claim.

25      THE COURT:  Well, we can deal with that, but why is

1   the history of the negotiation relevant to that?

2           MR. ALBERTS:  Well, I think it goes to the issue of

3   good faith, your Honor, or lack of good faith.  What was in

4   the city's -- what is motivating the city to create this

5   impaired class?

6           THE COURT:  Oh, you can certainly ask that, but

7   that's a different question than the history of the

8   negotiations.

9           MR. ALBERTS:  Well, I think, your Honor, getting the

10  documents would be used to perhaps refresh Mr. Orr's

11  recollection, could be used to impeach him.

12          THE COURT:  Regarding what?

13          MR. ALBERTS:  Regarding the motivations behind the

14  structure of this deal, again, good faith or lack thereof.

15          THE COURT:  I don't see it.  What's number two?

16          MR. ALBERTS:  Number two?

17          THE COURT:  Draft of the settlement and plan support

18  agreement term sheet?  Again, this is a history question.

19          MR. ALBERTS:  Yes, but it goes -- and, your Honor,

20  in terms of how burdensome it is versus what it's to produce,

21  there should be very readily available drafts of these

22  agreements.  We're not talking about documents that go

23  back --

24          THE COURT:  Well, but if they're irrelevant, it

25  doesn't matter how burdensome they are.

MR. ALBERTS: Well, your Honor, that's where we would differ with the debtor on that. We do think it's relevant as to the good faith issue. We think all of this, the history does go to good faith and motivation.

THE COURT: All right. I'm going to sustain the city's objection to number two. How about number three, documents that refer to or discuss treatment of the swap counterparties as creditors under the plan? What kinds of documents might those be?

MR. ALBERTS: Your Honor, they could be communications between the city and the swap counterparties. They could be communications between the city and other lenders. One of our issues -- one of our concerns is that they are being classified as secured, and we don't really think there's ever been a security interest. And now we think the city is attempting to elevate them by providing a security interest in what the Court had previously, I believe, found to be improper, which was the casino revenues.

THE COURT: Well, but that's an argument you can make based on the settlement agreement.

MR. ALBERTS: Your Honor, in terms of the nature, yes, that is true, but going, again, to the issue of good faith or lack thereof, you know, the history of this agreement, how the city has referred to these parties in the past goes to whether or not this is just a gratuitous attempt

1  to create a cramdown situation.

2          THE COURT:  I'll hold on number three and hear from

3  Mr. Hertzberg on that one.

4          MR. ALBERTS:  Okay.  Your Honor --

5          THE COURT:  Documents that refer to or discuss the

6  allowance, priority, and treatment.  Is that different from

7  number three?

8          MR. ALBERTS:  It's a little bit narrower, but

9  they're tied together.  I think we can --

10         THE COURT:  All right.  Let's hold on --

11         MR. ALBERTS:  We can treat them together.

12         THE COURT:  Let's hold on four then.  Documents that

13 refer to or discuss the swap counterparties as being a

14 separate class as part of the plan.

15         MR. ALBERTS:  Right.  I think that goes to the

16 impairment issue, your Honor.

17         THE COURT:  All right.  We'll hold on that one, too.

18         MR. ALBERTS:  All right.

19         THE COURT:  Six, documents that refer to or discuss

20 a decision or agreement by the city to allow the claim as

21 part of the plan or the reasons for such decision or

22 agreement.

23         MR. ALBERTS:  I think --

24         THE COURT:  We'll hold on that one, too.

25         MR. ALBERTS:  Okay.

1    THE COURT: Seven, decision or agreement by the city

2  to treat them as a separate class. All right. We'll hold on

3  that one. Reasons why the city decided to enter into the

4  settlement agreement. Okay. We'll hold on that one.

5  Documents referring to or discussing the actual or potential

6  import of a vote in favor of the plan of the swap

7  counterparties as a class under the plan or cramdown.

8    MR. ALBERTS: That goes to the same impairment

9  issue, your Honor.

10    THE COURT: It strikes me that all such documents

11  would be attorney-client privilege, but we'll find out.

12    MR. ALBERTS: Yeah. To the extent that they're

13  attorney-client privilege, your Honor, we're not seeking

14  them.

15    THE COURT: That was nine. Ten, referring to or

16  discussing the amount of the allowed claim or the calculation

17  or rationale of the amount. Okay. Eleven, discussing the

18  consideration of the swap counterparties for their agreement.

19    MR. ALBERTS: Your Honor, this goes to our view that

20  it does not appear that separate consideration is being

21  provided to the swap counterparties for their agreement to be

22  impaired and to vote the way they are; that this is a -- this

23  was sort of an ask by the debtor not for any financial reason

24  but for itself to get to plan confirmation, and it's not

25  supported by consideration.

1           THE COURT:  Mr. Hertzberg, may I hear from you

2    regarding requests three through eleven?

3           MR. HERTZBERG:  Yes, your Honor.  Robert Hertzberg,

4    Pepper Hamilton, on behalf of the city.  I think a little

5    background is important on this.  All the requests go to plan

6    confirmation issues, impairment, classification,

7    confirmation, standards, good faith.  In order to try and

8    relieve the -- and free up the issue before the Court on the

9    swap settlement, which is whether the Court will approve a

10   swap settlement with the city at 85 million with releases, we

11   yesterday went to the Retirees' Committee and said these are

12   only plan issues.  Let's deal with these at the plan.  And we

13   said we'll put in language in the order which settles the --

14   if the Court approves the settlement, that reads as follows,

15   "Ordered that nothing in this order constitutes a finding or

16   ruling with respect to impairment under Section 1124 of the

17   Bankruptcy Code or classification under 1122 of the

18   Bankruptcy Code or prejudice, (i) any party's right to object

19   to the plan of adjustment proposed in the city's bankruptcy

20   case on the basis that the secured claims are not properly

21   classified therein or are not impaired under 1124 of the

22   Bankruptcy Code, or (ii) any party's right to contest any

23   such objection."  If you look at every single one of the

24   requests, they all go to impairment.  Counsel acknowledged

25   that to the Court.  They go to good faith.  They go to

1    classification.  They go to impairment.  Those are plan

2    confirmation issues.  They have nothing to do with the swap

3    settlement.

4         THE COURT:  Well, ordinarily you're right except

5    that your swap settlement binds this creditor to vote for the

6    plan.

7         MR. HERTZBERG:  But it doesn't bind them to be

8    impaired.  All it does is settle a claim, and it's not

9    improper to settle a claim and ask the party as part of the

10   settlement that you're going to vote in favor of the plan.

11   Whether it's impaired or not is an ultimate decision that

12   this Court will make at the confirmation hearing, and all of

13   those rights to object to that and do proper discovery, which

14   is not attorney-client privilege, which a lot of these issues

15   are, will be open.  You already have set a lengthy discovery

16   process for plan confirmation.  It's not improper to ask a

17   creditor as part of a settlement to vote their claim in favor

18   of a plan.  It's just not wrong.  You would always ask.  Why

19   would you settle with a creditor and say, "Okay, we're going

20   to settle this claim at $85 million.  You're going to have a

21   secured claim, but you can go vote against the plan"?  That

22   would be terrible negotiations on behalf of the city.  We

23   have to have them vote in favor or why would we settle with

24   them?  Have them try and beat our plan or have the Court deny

25   confirmation?  That wouldn't make sense.

1    So when you look at all the ones -- and I can go
2 through each of them if the Court feels necessary -- they're
3 clearly impairment issues. They're clearly classification
4 issues. They're clearly good faith issues. These are all
5 already set for discovery, written discovery, depositions.
6 You've put forth, I believe, a four-page schedule on all of
7 this, and it should be covered on that. We don't want to
8 come before this Court when we have the hearing -- I believe
9 it's on April 3rd -- and be in a position of arguing whether
10 this is impaired or not. That's why we offered this
11 language. We want to come before this Court with a clean
12 slate saying, okay, we want to settle this claim at $85
13 million, give the Court the reason, put on Mr. Orr, put on
14 Mr. Malhotra, and we want to grant releases and why the
15 releases should be granted. We're not asking the Court to
16 say this is an impaired claim, and, therefore, it'll be
17 treated this way in the plan. That will be a later decision.
18 I can walk through, if the Court now feels necessary, each of
19 those requests, but I think counsel explicitly stated to this
20 Court that it was dealing with impairment in each of them,
21 that it was dealing with classification, and that they were
22 dealing with good faith.
23    Further, this Court didn't open up discovery. If
24 you look at the transcript, which I pulled before I came, you
25 asked counsel, Ms. Neville, what did she want, and she

1  clearly said she wanted discovery.  And you asked her what

2  did she want to do in discovery.  "Well, I want to take a

3  deposition."  She didn't say she wanted to send 11 -- a page

4  and a half with 11 different items of document production.

5  There's a lot of documents.  We'll have to sort e-mails.

6  We'll have to sort through a ton of information in order to

7  comply with plan confirmation issues at this stage.  She

8  never indicated that she wanted documents.

9          Also, when they say -- they're a little -- it's a

10  little misleading the Court when they say that we voluntarily

11  have already offered up some of the documents to parties.

12  No, we haven't.  What we told the parties is -- all of them

13  is when the settlement agreement is finalized, we will give

14  you a copy before the depositions because that's only fair.

15  We would not hold back the settlement agreement and have them

16  depose our witnesses, so we said when that's done, we'll give

17  it to you.  As to Mr. Malhotra, we intend on entering an

18  exhibit for his use during his testimony, and we said we will

19  give that to you, too, before you take the deposition of Mr.

20  Malhotra because that would only be fair.  We don't want to

21  surprise anyone.  We want an open kimono here, and we want

22  the parties to be able to look at the documents we intend on

23  using at the hearing.  This is stuff that goes to the plan,

24  and I'd ask that the Court deny it.

25          THE COURT:  What is the status of the settlement

1  agreement?

2      MR. HERTZBERG: We are in negotiations. We have

3  indicated in the notice that we sent out to all the objectors

4  that we would have the settlement agreement to them by

5  Wednesday next week along with Mr. Malhotra's exhibits. The

6  deps are then set for March -- I believe that is -- I'm not

7  sure what Wednesday's date is, but five days later, March

8  31st, the depositions will take place as the Court has

9  allowed two hours per witness, which is four days before the

10  hearing.

11      THE COURT: I have to ask why you filed a motion to

12  approve an agreement that isn't an agreement.

13      MR. HERTZBERG: Because what normally takes place is

14  parties have term sheets. We had a term sheet which outlines

15  the settlement parameters. The settlement agreement is a

16  lengthy document that's being negotiated. It doesn't change

17  anything that's in the term sheet. The Court will see it's

18  only the binding part of the agreement. Term sheets are

19  normally used in these situations once parties reach an

20  agreement, and the parties have reached an agreement. And

21  that's why we filed the motion.

22      THE COURT: That doesn't quite answer my question.

23  Why didn't you wait until you had an agreement to file a

24  motion to approve it?

25      MR. HERTZBERG: Well, because I believe we had an

1   agreement.  The term sheet is an agreement.  The parties

2   agreed to the --

3          THE COURT:  Well, but it's not the term sheet you're

4   going to ask me to approve.  It's the agreement that's not

5   yet done.

6          MR. HERTZBERG:  That's correct.  I don't think --

7   I've done this many times, Judge, and I think it's proper.

8          THE COURT:  Well, but that doesn't make it right.

9          MR. HERTZBERG:  Well, I don't think -- I agree, but

10  I don't think that's improper either.  Parties a lot of times

11  will negotiate a settlement and enter in terms of the

12  settlement and then document it into a settlement agreement.

13  The motion -- I can assure the Court the settlement agreement

14  will read the same as the motion we filed for approval.

15         THE COURT:  And this will be done when?

16         MR. HERTZBERG:  By Wednesday next week.

17         THE COURT:  Why hasn't it already been done?

18         MR. HERTZBERG:  It's been a struggle.  It's been a

19  lengthy negotiation.  We are hoping.  We have a call today

20  we're setting up.

21         THE COURT:  If it's been a struggle, how can I

22  accept your assurance that it will be done by any particular

23  date?

24         MR. HERTZBERG:  You can only take my representation

25  that I'm working hard on it.  I have a call this afternoon

1  with the parties.  We are very close to finalizing

2  everything.

3         THE COURT:  And when is the hearing on the --

4         MR. HERTZBERG:  The hearing is Thursday, April 3rd,

5  I believe is the date, nine o'clock.  You've set aside one

6  day.

7         THE COURT:  So we're going to get the hearing a week

8  and day before -- we're going to get the agreement a week and

9  a day before the hearing?

10        MR. HERTZBERG:  Yes, eight days before, your Honor,

11  and it follows the term sheet and the motion, so it's not

12  like anyone is going to be surprised by anything, and they're

13  going to have five days to digest it before they depose

14  Mr. Orr.  It's not like we're giving it to them the morning

15  before.  They'll have more than adequate opportunity.

16        THE COURT:  All right.  Beginning with three,

17  explain to me why each category of document isn't relevant to

18  whether or not the settlement should be approved.

19        MR. HERTZBERG:  Okay.  Let me grab that sheet that

20  outlines each of them.  Number three asks for all documents

21  that refer to or discuss treatment of the swap parties --

22  counterparties as creditors under the plan, treatment,

23  classification, impairment, good faith, so those are plan

24  issues, and they specifically say the plan.  Four, all

25  documents that refer to or discuss allowance, priority,

1   treatment of the swap counterparties under the plan,

2   treatment again.  That's classification.  Five, all documents

3   that refer to or discuss swap counterparties' treatment as a

4   separate class as part of the plan.  These are all plan

5   issues.  I mean they end each sentence with "the plan."

6   Number -- and they also indicated to you -- number five, I

7   believe, counsel indicated -- and I tried to take the notes,

8   but it was moving pretty quick as you moved through them.  I

9   think he used the word "impairment issues" on that,

10  impairments to plan.  Six, all documents that refer to or

11  discuss a decision or agreement by the city to allow the swap

12  counterparties' claim as part of the plan or the reasons for

13  such decision.  I believe they were referring to these as

14  good faith issues when they discussed it with the Court.

15  Good faith goes to plan confirmation.  All documents

16  referring to or discuss a decision or agreement by the city

17  to treat the swap counterparties as part of the plan or the

18  reason the decision or such agreement.  Once again, plan,

19  confirmation, classification, impairment, good faith.  Number

20  nine, I think they said it's -- they want to know about the

21  vote impairment, and I think --

22          THE COURT:  You skipped number eight.

23          MR. HERTZBERG:  Oh, I'm sorry, your Honor.  All

24  documents that refer to or discuss the reason why the city

25  decided or agreed to enter into the settlement agreement.

1    That's a deposition.  That's what Mr. Orr is there for.

2    There aren't documents that relate to that.  I mean that's

3    going to be what they're going to question.  They're going to

4    say to Mr. Orr, "Please explain to me," when he's here live

5    and in his deposition.

6           THE COURT:  Well, but if there are no documents,

7    isn't that the right answer to this, not to object to it?

8           MR. HERTZBERG:  I guess we could produce, but it's

9    going to be subject to the attorney-client privilege, I mean,

10   because any documents that go back and forth between my

11   office or Jones Day with Mr. Orr on why we're going to do the

12   settlement are clearly attorney-client privilege or work

13   product, so I guess on eight we could, but I don't know if

14   there's anything.  I can't off the top of my head really

15   think of anything on that, but we can search if the Court

16   wants.  Nine is -- I think counsel indicated that's

17   impairment, and the Court also indicated isn't that attorney-

18   client privilege.  You're both right on that one.  It deals

19   with the impairment issue, and the Court is right.  That

20   would go to attorney-client privilege issues on number nine.

21   Number 10, I'm not sure I understand what it means by "the

22   plan."  It talks about discussing the amount of the proposed

23   allowed claim for the swap counterparties under the plan.  I

24   mean it says 85 million on the settlement papers.  I don't

25   know what they're driving at, but it's, once again, I think,

1    going to the good faith issue and the impairment issue or the

2    calculation or rationale for such amount.  That's, once

3    again, Mr. Orr is going to testify to why he believed $85

4    million was in the best interest of the city and should be

5    settled.  They can ask him at his deposition.  They can ask

6    him in court.  And, finally, all documents referring to or

7    discussing the consideration to the swap parties for their

8    agreement to vote in favor of the plan.  This is, once again,

9    driving at the separate classification, the consideration,

10   and the vote is what they said, which is the impairment

11   issue.  It's the back door way of asking for documents on

12   impairment, good faith, and classification.  They all end

13   with the word "plan" because it's all dealing with the plan,

14   and I'm not going to read the paragraph again to the Court,

15   but as I indicated when I first addressed the Court, we've

16   agreed that all plan issues, classification, and all these

17   items will be --

18           THE COURT:  Well, but 11 seems to go to documents

19   that relate to the swap counterparties' agreement to vote in

20   favor of the plan, which is part of the settlement agreement.

21           MR. HERTZBERG:  I can look for documents, but I

22   don't know if there's any under 11.  I mean it's -- it was a

23   term sheet which they have which says you'll vote in favor,

24   but I can look and see if there's any other backup documents,

25   agreement, or whatever, but it's really the term sheet is

1  part of the negotiations.  If we're going to settle, you're

2  going to vote your claim in favor of the plan.

3          THE COURT:  All right.

4          MR. HERTZBERG:  Thank you, your Honor.

5          THE COURT:  So Mr. Hertzberg argues that much of

6  what you request goes to plan confirmation and not to whether

7  this settlement agreement should be approved.

8          MR. ALBERTS:  Your Honor, I would disagree with that

9  in part and agree with that in part, but the agreement in

10  part is because that's what they've created.  And let me say,

11  first of all, good faith goes to the settlement agreement

12  itself.  It's not just good faith in confirmation or

13  disallowance of their claim, but there is good faith in the

14  settlement agreement process.  But, your Honor, if you look

15  at what they are seeking in their proposed order attached to

16  the motion, it's incredibly broad and binding on this Court

17  and on creditors.  For example, just even paragraph 1 of

18  their proposed order ordered that the motion is granted in

19  its entirety, and any objections to the motion not previously

20  withdrawn, waived or settled, and all reservations of right

21  included therein, are hereby overruled with prejudice.

22  There's a conflict between what they have proposed as you're

23  not giving up anything in the first paragraph of their

24  proposed order.

25          THE COURT:  Well, but we can clarify that.

1        MR. ALBERTS: Well, your Honor, this order is so

2  broad, what I would suggest is if really what the city is

3  seeking is approval of --

4        THE COURT: Well --

5        MR. ALBERTS: -- a settlement agreement, let them

6  seek the approval of a settlement agreement, but in terms of

7  this Court classifying --

8        THE COURT: Well, but let's talk about that at the

9  hearing on the settlement agreement.

10        MR. ALBERTS: Well, I think that is an important

11  point, but we should be able to get into the underlying

12  agreement why this was added. Why is this being tucked in at

13  this stage? And if there are documents on that, I think

14  we're entitled to receive that, and --

15        THE COURT: And when you say "this," you mean the

16  agreement to vote for the plan.

17        MR. ALBERTS: Agreement to vote for the plan. I

18  mean --

19        THE COURT: So that's Number 11.

20        MR. ALBERTS: That's Number 11. I think it is

21  number eight as you've discussed, number six, number five, in

22  fact, all of it, because the problem is, your Honor, yes, we

23  used the term "plan," but that's because that's what the

24  settlement agreement seeks to do. It seeks to tie up this

25  creditor in a certain way and have the Court authorize it,

1  which becomes a fait accompli for the structure of the plan.

2  Findings of good faith are in this proposed order by the

3  city.  Let me see if I could cite to that specifically.

4  Ordered that the settlement agreement and compromise set

5  forth  in the agreement are fair and reasonable to, in the

6  best interests of the city, its residents and its creditors,

7  and in entering into the agreement, the parties have acted in

8  a commercially reasonable manner and exercised their

9  respective rights and powers, and used the same degree of

10  care and skill in their exercise as a prudent person under

11  the circumstances.  There are other provisions in the order

12  which would, in effect, bind what this creditor is apart --

13  you know, which I think is much further than simply saying,

14  "Well, we're allowing a settlement agreement."  It really is

15  fixing the stage later on.

16          So, your Honor, I think that all of the requests

17  really go to that point, go to the good faith nature of the

18  settlement agreement and the conduct that was -- that

19  occurred between the parties negotiating it, and I think,

20  frankly, this is the time to get into it, not at plan

21  confirmation.  We have enough to do at plan confirmation.

22  This is something that really applies to this settlement

23  agreement.

24          THE COURT:  All right.  I'll take this under

25  advisement for a few minutes, and then I'll be right back out

1    with a decision for you.

2              MR. HERTZBERG:  Thank you, your Honor.

3              THE CLERK:  All rise.  Court is in recess.

4         (Recess at 10:29 a.m., until 10:39 a.m.)

5              THE CLERK:  Court is in session.  Please be seated.

6              THE COURT:  All right.  Everyone is present.  It

7    appears to the Court that the 11 requests for documents can

8    reasonably be broken down into three categories:  first,

9    documents that relate to the history of the negotiations;

10   second, documents that relate to potential plan confirmation

11   issues and do not relate to whether this settlement agreement

12   should be approved; and, third, documents that do relate to

13   the rationale for various aspects of this settlement

14   agreement and, therefore, are related to the motion to

15   approve the settlement agreement.

16             In the first category are document requests number

17   one and two.  In the second category are document requests

18   three, four, five, and nine.  The Court will deny the motion

19   to compel as to those six categories.

20             As to categories -- or document requests six, seven,

21   eight, ten, and eleven, the Court concludes that the motion

22   to compel should be granted subject, however -- because they

23   are in the third category -- subject, however, to any proper

24   claim of attorney-client privilege and the production of a

25   privilege log.  The Court will prepare an order.  Anything

1  further?

2          MR. HERTZBERG:  Nothing, your Honor.  Thank you.

3          MR. ALBERTS:  No, your Honor.  Thank you.

4          THE COURT:  All right.  We'll be in recess.

5          THE CLERK:  All rise.  Court is adjourned.

6      (Proceedings concluded at 10:43 a.m.)

INDEX


<u>WITNESSES:</u>

     None

<u>EXHIBITS:</u>

     None


        I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.


/s/ Lois Garrett                    March 24, 2014
_____             _____
Lois Garrett