UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In the matter of:

CITY OF DETROIT, MICHIGAN
           Debtor/

Case No. 13-53846-swr
Chapter 9
Hon. STEVEN W. RHODES

## OBJECTION TO CITY OF DETROIT'S PLAN OF ADJUSTMENT [DOCKET 2708]

FILED BY: Gerald Galazka

_____ hereby states his OBJECTION TO:

CITY OF DETROIT'S PLAN OF ADJUSTMENT for the following reasons.

1. I am interested in the Bankruptcy of the City of Detroit because I am a retiree with 35 years of service and am subject to having my accrued benefits eliminated and/or reduced in violation of the Michigan Constitution, Article IX, Section 24. I faithfully performed a service for the City of Detroit with the agreement that upon retirement I would have a secure source of income to provide for my living expenses. This is a Breach of Contract by the City of Detroit and the State of Michigan.

2. I object to the above filing because:

    A. Pension Benefits are protected under the Michigan Constitution and the legality of diminishing and/or reducing pension benefits is under appeal with the 6th District Court of Appeals. (Attachment 1a)

    Furthermore, the Tenth Amendment gives express powers to the state that are not delegated to the United States by the Constitution. (Attachment 1b)

    B. The plan discriminates and classifies City of Detroit retirees into two distinct groups. It proposes to reduce pensions by 26% for general retirees and 4% for uniformed retirees. It further threatens to punish retirees that do not agree to the plan by decreasing pensions to 34% and 10% respectively. Any proposed plan to be confirmed must "be fair and equitable." This plan places undo hardship on general retirees. (Attachment 1c)

    C. The "Plan of Adjustment" does not insure that there is a secure source of revenue that will insure payments by pension funds in the future nor establish an alternative defined contribution plan for future employees that may reduce the

cities expenses. It is clear that the pension funds will continue to be under funded unless a guaranteed stream of income is found for them. The ability to provide future workers with a defined benefit plan will be difficult to do without:

1. Increased contributions and a reduction of benefits by a smaller number of future employees
2. Funds from the State or Federal Government to insure pension payments.

This is a dilemma for Detroit and many municipalities throughout the country.

D. The plan lacks provisions to audit and regulate the finances and investments by the City of Detroit and its pension funds. There must be responsible oversight by the state to make sure that the city and pension funds do not engage in risky financial ventures.

E. Does not restore revenue sharing funds, which would help to defray some of the costs of operations of the city and pension funds. Between 2010 to 2013, 47.8% of the total decline of revenue was a result of a decline in state transfers to the City of Detroit. A study by the Michigan Municipal League suggests that Detroit "lost out on $732 million in revenue sharing from 2003 and 2013." This revenue should be paid back to the city to help defray the cost of pensions.

3. I have attached additional sheets to explain and establish my position.

I hereby certify that the statements made herein are true and correct to the best of my knowledge under penalty of perjury and contempt of Court under the laws of the United States of America.

Wherefore I request the Court will deny the relief sought in said filing.

Name: Gerald Galazka

Signature: *Gerald Galazka*

Address: 44814 Marigold DR
Sterling Heights, MI 48314

Email: gerald_galazka@yahoo.com

Dated: March 25, 2014

ATTACHMENT #1

OBJECTION TO CITY OF DETROIT'S DISCLOSURE STATEMENT

1a    The Employment Retirement Income Security Act of 1974 (ERISA) was "a legal approach to protect private pensions and was a reaction to a period when pensions were viewed as a gratuity that could be changed at any time." Furthermore, the Pension Benefit Guaranty Corporation (PBGC) was established to guarantee that retirees would receive benefits if a private company went bankrupt or defaulted. Public pensions were not afforded this same protection. Hence, many states recognized this shortfall and adopted amendments to their state constitution that protect public employees from having their pension benefits diminished.

1b    It is argued that the state cannot surrender its responsibility to the federal government in order to protect financial obligations guaranteed in the state constitution. If in fact, a state can abdicate its responsibility to protect the accrued benefits of public pensions then there is no purpose for Article IX, Section 24. Any other state that has such an article in their constitution affords no protection to public pensions. Pension benefits are diminished when the municipality claims the inability to pay.

To my knowledge, in the bankruptcy cases in Stockton and San Bernardino, California, the cities continue to honor the accrued pension payments to retirees.

1c    Employees were enrolled in a defined benefit plan which guaranteed a set amount of income after ones service to the city. To place a bigger burden on one group over another group is unfair. In order for a plan to be accepted, "it must be fair and equitable" and not discriminate unfairly." (11USC Sec. 1129)

The proposed adjustment to a general pension is six (6) times that of a uniformed employee. The following chart illustrates the disparity.

|  | % Reduction | Avg. Salary | Reduced Ben. | Pension Amt. |
|---|---|---|---|---|
| General | 26% | $19,000 | $4,490 | $14,500 |
| Uniformed | 4% | $30,000 | $1,200 | $28,800 |

It is understood that uniformed employees do not receive social security but they did not pay into the system. It is just as wrong to discriminate against one group of retirees, as it is to discriminate based on age, sex, education, salary or any other criteria. An employee's pension was based on years of service not on their job title. All retirees devoted years of service to the city and had no control over how contributions were collected or how pension funds were managed and invested. Retirees should be treated equally.