60107189 JUN 29 '06

Li-44934 Pa-977
206345965 6/29/2006 09:00AM
Bernard J. Youngblood
Wayne Co. Register of Deeds

A.S.K. SERVICES, INC.

# MORTGAGE

RTTM 14179

This Mortgage made as of this 31st day of May, 2006 between [redacted] **a single woman**, (hereinafter called "Mortgagor") residing at **19811 Evergreen**, and the CITY OF DETROIT, a Michigan municipal corporation, acting by and through its Planning & Development Department (hereinafter called the "Mortgagee") having offices at 65 Cadillac Square, 19th Floor, Detroit, Michigan 48226.

WITNESSETH, That Mortgagor, for and in consideration of the principal sum of **Twenty-Nine Thousand Two Hundred Seventy-One and 22/100 ($29,271.22)** Dollars, receipt of which is hereby acknowledged by Mortgagor, with no interest thereon, which shall be payable according to the terms of a Promissory Note, bearing even date herewith, (hereinafter referred to as the "Note") executed by Mortgagor to Mortgagee, and for the purpose of securing the performance of the covenants and conditions hereinafter contained, the Mortgagor hereby grants, conveys, warrants and mortgages to the Mortgagee the premises situated in the City of Detroit, County of Wayne, State of Michigan and described as follows (hereinafter called the "Premises"):

SEE EXHIBIT A, ATTACHED HERETO

Together with all easements and rights of way now or hereafter used in connection therewith, and all buildings;

Together with any and all improvements now or hereafter erected thereon, including, but not limited to, the fixtures, attachments, appliances, equipment, machinery, and other articles attached to the Premises;

Together with all fixtures, machinery, equipment and articles of personal property now or hereafter owned by Mortgagor and now or hereafter affixed to, placed upon or used in connection with the operation of said properties (sometimes hereinafter referred to as the "Personal Property") in which Mortgagor hereby grants a security interest to Mortgagee;

The Mortgagor covenants and agrees:



Mtg (7) SCJ

②

1. To promptly pay the principal on the indebtedness evidenced by the Note, and all other charges and indebtedness provided therein and in this Mortgage and in the manner provided in the Note and in this Mortgage.

2. To pay when due all taxes, assessments and other charges which are now or shall hereafter be a lien against the Premises, or any part thereof.

3. To keep the Premises in good repair and condition, to comply properly with all laws, ordinances, regulations or requirements of any governmental authority applicable thereto, and to abstain from the commission of waste.

4. The failure of Mortgagor to pay any taxes or assessments levied against the Premises, or any insurance premiums upon policies of insurance governing the Premises, in accordance with the terms hereof, shall constitute waste.

5. To keep all insurable property covered hereby insured against loss by fire or other natural hazard or disaster in an amount sufficient after the payment of all prior liens, to pay the amounts secured by this Mortgage.

6. If all or any part of the Premises are taken, whether temporarily or permanently, under power of eminent domain or by condemnation, the entire proceeds of the award or other payment in relief therefor shall be paid directly to Mortgagee. Payment of any proceeds of insurance or proceeds from any sale of the Premises at foreclosure shall also be made directly to the Mortgagee. Mortgagee shall have the right to apply any proceeds of insurance, proceeds of any sale of the Premises at foreclosure or proceeds of any condemnation or eminent domain award, in such amounts and proportions as Mortgagee shall in its sole discretion determine, to the full or partial satisfaction of any or all of the indebtedness and obligations of Mortgagor secured hereby, including any contingent or secondary obligation, whether or not the same shall then be due and payable by the primary obligor. In lieu of such application, Mortgagee shall have the right, but shall have no obligation, to require all or part of the proceeds of insurance or of any condemnation or eminent domain award to be used to restore or rebuild any part of the Premises damaged or destroyed by reason of the occurrence which gave rise to the payment of such proceeds.

7. Any improvements and/or repairs made to the Premises while the lien created by this Mortgage remains effective, and all plans and specifications therefor shall comply with all applicable municipal ordinances, regulations, and rules made or promulgated by lawful authority.

8. Should any default be made in the covenants or conditions hereunder, Mortgagee may, without demand or notice, pay any taxes, assessments, premiums or liens required to be paid by Mortgagor, make repairs, effect any insurance provided for herein, cause the abstract of title and tax histories of the Premises to be certified to date or procure new abstracts of title and tax histories in case none were furnished to it and procure title reports covering the Premises, and the sums paid for any one or all of said purposes shall from the time of the payment thereof, be due, and shall



secured hereby, all of Mortgagor's right, title and interest in and to all existing and future oral or written leases of the Premises by Mortgagor as lessor and any and all existing and future land

constitute a further lien upon the Premises under this Mortgage. In the event of foreclosure, the abstract or abstracts of title shall become the property of Mortgagee.

9. In the event of the death of the Mortgagor, the full principal amount of the Note, shall immediately become due and payable to the Mortgagee without notice or demand to any agent or representative of the Mortgagor, unless the death of the Mortgagor causes the Premises to be transferred, conveyed, devised, bequeathed or assigned to the surviving spouse of the Mortgagor, or a member of the Mortgagor's family who is within the third degree of consanguinity to the Mortgagor. The full principal amount of the Note shall become due and payable upon the conveyance of the Premises by the aforementioned surviving spouse or family member to any other party or entity at any time prior to the discharge of this Mortgage without notice or demand.

10. The Mortgagee is authorized to declare, at its option, all or part of such indebtedness immediately due and payable upon the happening of any of the following events, which shall hereinafter be referred to as Events of Default:

(a) The transfer, sale, conveyance, or assignment of all or any part of the Premises, by operation of law or otherwise, prior to the discharge of this Mortgage, to any business entity or to any person who is not income qualified under The Department of Housing and Urban Development's Home Investment Partnership Program and which transfer is not pursuant to the resale restrictions stated therein.

(b) Non-performance by the Mortgagor of any covenant, agreement, term or condition of this Mortgage or of the Note.

If an Event of Default occurs, the Mortgagee, in addition to its option to declare the entire indebtedness secured hereby immediately due, then or thereafter, as it may elect, regardless of the date of maturity, is also hereby authorized and empowered to sell or cause to be sold the Premises, pursuant to state law, in a single parcel or several parcels, at the option of the Mortgagee and out of the proceeds of the sale to retain the sums due hereunder, and all costs and charges of the sale (including attorney's fees provided by law). The commencement of proceedings to foreclose this Mortgage in a manner authorized by law shall be deemed an exercise of the above option.

11. The Mortgagor will give immediate notice by registered or certified mail to the Mortgagee of any fire, damage or other casualty affecting the Premises, or of any conveyance, transfer or change in ownership of the Premises, or any part thereof. All notices to Mortgagor and to Mortgagee shall be deemed to be duly given if and when mailed by registered or certified mail, postage prepaid, to the respective address of the Mortgagor and Mortgagee appearing on the first page hereof.

12. Mortgagor, to the extent permitted by law, hereby assigns and mortgages to Mortgagee, and grants to Mortgagee a security interest in, as additional security for the indebtedness secured hereby, all of Mortgagor's right, title and interest in and to all existing and future oral or written leases of the Premises by Mortgagor as lessor and any and all existing and future land

contracts or other agreements by which Mortgagor is or shall be selling the Premises or other interest therein, together with all rents and profits arising from, and all other proceeds of, any such leases, land contracts, or other agreements. Without the written consent of Mortgagee, Mortgagor will not cancel, accept a surrender of, modify, consent to an assignment of the lessee's interest under, or make any other assignment or other disposition of any such lease, land contract, or other agreement or of any interest of Mortgagor therein, and will not collect or accept any payment of rent or of principal or interest or any other amount thereunder more than one month prior to the time when the same shall become due and payable under the terms thereof. Mortgagor will pay and perform all obligations and covenants required of it by the terms of any such lease, land contract or other agreement. If Mortgagor shall default in the payment or performance of any such obligation or covenant, then Mortgagee shall have the right, but shall have no obligation, to pay or perform the same on behalf of Mortgagor, and all sums expended by Mortgagee in connection therewith shall become part of the indebtedness secured hereby, payable by Mortgagor to Mortgagee upon demand, together with interest at the default rate of six (6%) percent per annum. Nothing contained in this paragraph or in any other portion of this Agreement shall be construed to constitute consent by Mortgagee to the sale, lease or transfer of the Premises or any interest therein.

13. In the event of the sale or transfer, by operation of law or otherwise, of all or any part of the Premises, Mortgagee may deal with the vendee or transferee with respect to this Mortgage and the Note secured hereby, as fully and to the same extent as it might with Mortgagor, without in any way releasing, discharging, or affecting the liability of Mortgagor hereunder or under the Note.

14. If this Mortgage is subject to a prior recorded mortgage or mortgages covering the Premises, or is subordinated to any mortgage covering the Premises, (collectively referred to as "prior mortgage or mortgages") Mortgagor hereby covenants and agrees to pay all amounts required to be paid and to perform all terms and conditions required to be performed under any prior mortgage or mortgages on the Premises. Any default by Mortgagor under said prior mortgage or mortgages shall also be deemed an Event of Default under this Mortgage, whereupon the Mortgagee shall be entitled to accelerate the indebtedness secured hereby in accordance with the provisions hereof and the Note.

15. This Mortgage constitutes both a real property mortgage and a security agreement within the meaning of the Uniform Commercial Code, and the Premises include both real and personal property. Mortgagor hereby grants a security interest in the Personal Property to Mortgagee. Said Personal Property shall include, without limitation, appliances, machinery, furniture, equipment and other property owned or leased by Mortgagor in the Premises. By its execution of this Mortgage, Mortgagor authorizes and directs Mortgagee to prepare and file, without any further action on the part of Mortgagor, any and all financing statements, continuation statements, assignments, amendments and termination statements as Mortgagee determines to be necessary or advisable in order to create, perfect, continue, assign, amend or terminate a security interest or interests in the collateral described in this Mortgage and all Personal Property now or hereafter owned by Mortgagor and used in connection with the operation of the Premises covered hereby. Mortgagor shall have the right hereunder and under said

financing statements or other chattel instruments to replace fixtures or appliances from time to time with similar items of equal value provided the replacements are free of any outstanding ownership interest, financing statements or encumbrances of any kind in favor of anyone other than Mortgagee. In the event Mortgagor shall fail to execute and record chattel instruments as required herein within ten (10) days after written request by Mortgagee, then Mortgagor hereby irrevocably appoints Mortgagee Mortgagor's attorney-in-fact to execute and deliver such financing statements or other instruments.

16. This Mortgage is subject and subordinate to a mortgage and promissory note, each dated May 31, 2006 , granted to Amera Mortgage, located at 1050 Corporate Office Drive #200, Milford, Michigan 48381-3155 by Mortgagor on the Premises.

17. The covenants and conditions hereof shall bind, and the benefits and advantages thereof shall inure to the respective heirs, executors, administrators, successors and assigns of the parties hereto. Whenever used, the singular number shall include the plural and the singular, and the use of any gender shall be applicable to all genders.

18. Notwithstanding anything contained herein to the contrary, the Mortgagor shall not sell, transfer, convey or encumber the Premises, or any substantial portion thereof, without the prior written consent of the Mortgagee, which consent shall be at the sole option and discretion of the Mortgagee.

19. Any provisions of this Mortgage prohibited or unenforceable by any applicable law shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.

[END OF PAGE]

LI-44934 Pa-982

IN WITNESS WHEREOF, this Mortgage has been duly signed and sealed by the Mortgagor on or as of the day and year first above written.

MORTGAGOR:

[redacted]

STATE OF MICHIGAN )
)ss.
COUNTY OF WAYNE )

On this 31st day of May, 2006, before me, the subscriber, a Notary Public in and for said county, personally appeared [redacted] a single woman, known to me to be the person described herein and who executed the within Mortgage, and then acknowledged the execution thereof to be his/her free act and deed.

KATHLEEN L. ROYAL
Notary Public - Michigan
Wayne County
My Commission Expires Mar 18, 2007
Acting in the County of WAYNE

Kathleen L Royal
Notary Public Kathleen L. Royal
Wayne County, Michigan
My Commission Expires: 3/18/07
Acting in Wayne County, Michigan

Drafted by and when recorded return to:
Susan Jones
Planning and Development Department
Housing Services Division
65 Cadillac Square, Suite 1900
Detroit, Michigan 48226
Attn: Willie B. Moore, Manager I

[redacted]

**Exhibit A**

**DESCRIPTION OF PROPERTY**

That land, situated in the City of Detroit, County of Wayne, State of Michigan, and described as follows:

Lot 130 and the North 20 feet of Lot 131, Longacres Subdivision, according to the recorded plat thereof as recorded in Liber 43 on Page 8 of Plats, Wayne County Records.

Commonly known as: 19762 Heyden
Ward 22, Item No. 099372

