UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| In re<br><br>CITY OF DETROIT, MICHIGAN,<br><br>Debtor. | Chapter 9<br><br>Case No. 13-53846<br><br>Hon. Steven W. Rhodes |

**DEBTORS' CONCURRENCE WITH THE COURT'S
APPOINTMENT OF EXPERTS PURSUANT TO FED. R. EVID. 706**

On March 24, 2014, the Court entered an Order to Show Cause Why Expert Witnesses Should Not Be Appointed [Docket No. 3170] (the "Show Cause Order") to "investigate and reach a conclusion on (a) whether the City's plan is feasible as required by 11 U.S.C. § 943(b)(7); and (b) whether the assumptions that underlie the City's cash flow projections and forecasts regarding its revenues, expenses and plan payments are reasonable." The Show Cause Order requested "[i]nterested parties [to] file written comments or objections by March 31, 2014."

In accordance with the Show Cause Order, the City of Detroit (the "Debtors" or the "City") hereby files its concurrence with the Court's proposal and respectfully represents as follows:

1. The City concurs with the Court's pronouncement in the Show Cause Order: the Court has an *independent duty* to consider and determine the feasibility of the City's proposed Plan for the Adjustment of Debts (the "Plan") [Docket No. 2708]. It is within this Court's authority to appoint experts to analyze and evaluate the Plan. *See* 11 U.S.C. § 105(a) ("The court may issue any order [or] process…that is necessary to carry out the provisions of this title."); Fed. R. Evid. 706 advisory committee notes ("The inherent power of a trial judge to appoint an expert of his own choosing is virtually unquestioned. *Scott v. Spanjer Bros., Inc.*, 298 F.2d 928 (2d Cir. 1962); *Danville Tobacco Assn. v. Bryant-Buckner Associates, Inc.*, 333 F.2d 202 (4th Cir. 1964); Sink, The Unused Power of a Federal Judge to Call His Own Expert Witnesses, 29 S.Cal.L.Rev. 195 (1956); 2 Wigmore §563, 9 *Id*. §2484; Annot., 95 A.L.R.2d 383."). The Court has broad powers in this regard to organize the procedure and process to make it most useful to the Court's review and analysis. COLLIER ON BANKRUPTCY (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev.) ¶ 105.01 ("The basic purpose of section 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction.") (internal citations omitted). Indeed, "court appointed experts can have the 'great tranquilizing effect' on the parties' experts, reducing adversariness and potentially

clarifying and narrowing disputed issues." *See* Manual for Complex Litigation (Fourth) §11.51 (2004) (internal citations omitted).

2.  The feasibility of the Plan, broadly construed, hinges on three key underlying assumptions of the Plan: (i) the cost of operating the City going forward (including, but not limited to, payments contemplated in the Plan that are needed to provide an adequate level of services post-confirmation); (ii) the cost of the proposed revitalization programs; and (iii) the total revenue available to the City to fund these payments and costs going forward and to fund the obligations to creditors established in the City's Plan of Adjustment. Evaluating these assumptions requires consideration of, among other things, post-confirmation City governance, population forecasts, revenue collection estimations, and the anticipated return on investment from the various revitalization initiatives, as well as the reasonableness of the assumptions over the course of time—ranging from the next few years out to the next 40 years.

3.  In short, the feasibility inquiry demands more than merely reviewing the City's revenue and expense forecasts. It requires independent and disinterested analysis of the Plan and proposed reinvestment initiatives (and their underlying assumptions) to determine whether they enable the City to remain financially viable in the long term while at the same time continuing to provide an adequate level of municipal services to businesses and residents. Such

independent and disinterested analysis will not only help frame the approach of the interested parties during the Plan confirmation hearing but, as important, it will objectively inform them of the City's constraints while at the same time highlighting the potential benefits and positive externalities.

4. The Plan and the assumptions underlying it implicate such fundamental matters as municipal governance and finance, real estate development and land use, utilities, transportation requirements, information technology needs, public safety, and other urban issues. As such, the City believes the Court and the Plan process will be best served by utilizing a panel of experts, each with an expertise in a particular area of the Plan. Because of the number and complexity of the various disciplines that are implicated, a panel of experts, rather than just one person, will be in a better position to evaluate the Plan and give the Court an objective view on the proposals contemplated in the Plan to restore the quality of life that families, businesses, and visitors have a right to expect and enjoy from the City. Further, soliciting the views of several experts will enrich the record and give the Court, creditors, and other interested parties a greater confidence that any confirmed plan will be viable and sustainable over the long term.

5. Expert panels have been appointed by other courts pursuant to Fed. R. Evid. 706 in circumstances involving complicated and interconnected issues. *See, e.g., In re Silicone Gel Breast Implant Prod. Liab. Litig.*, Case No. 92-

P-10000-S, 1996 WL 34401813 (N.D. Ala. May 31, 1996) (appointment of panel with individuals each with expertise in different areas relevant to the matters before the court); *In re Joint E. & S. Dists. Asbestos Litig.*, 122 B.R. 6, 7 (E. & S.D.N.Y. 1990) (appointment of a panel of "knowledgeable and neutral experts" to solicit views with respect to the issues pending before the court). Given the various components of the Plan – blight removal, budgeting, and population and revenue forecasting, among others – the City believes that the record will be best developed by a group of experts. Moreover, a panel of experts will allow the Court to maintain the calendar outlined in the Second Amended Order Establishing Procedures, Deadlines, and Hearing Dates Relating to the Debtor's Plan of Adjustment [Docket No. 2937] because, as a practical matter, it will be more efficient for a group of experts to review, research, and write a report on their respective components of the Plan.

6. In the course of planning its proofs for the trial on Plan confirmation, the City conducted a review of the work of leading urbanologists and economists, including those who would be appropriate as truly independent and disinterested experts should the Court decide to use its powers under Fed. R. Evid. 706 to appoint a neutral expert to assist the Court in its evaluation of the feasibility of the Plan. In this process, the City concluded that one of the foremost such experts was Professor Edward Glaeser, a recognized scholar in the field of

municipal economics, crime, housing markets, and other urban issues. Professor Glaeser is a world-renowned economist at Harvard University, where he is currently the Fred and Eleanor Glimp Professor of Economics, serves as Director of the Taubman Center for State and Local Government, and is Director of the Rappaport Institute of Greater Boston. He also is a senior fellow at the Manhattan Institute and a contributor to the *New York Times'* Economix blog. Professor Glaeser was not interested in working as a paid expert on behalf of any party to the case, but is willing to work for the Court, on a *pro bono* basis only, as an independent and neutral expert. Professor Glaeser's biography and published works can be found at: http://scholar.harvard.edu/glaeser.

       7.     If called upon to serve as one of the Court's experts, Professor Glaeser has agreed to serve in that role and proposes to assemble a panel of experts who will consent to serve in such capacity pursuant to Fed. R. Evid. 706 and who will satisfy the Court's requirements as outlined in the draft solicitation attached to the Show Cause Order. This panel will analyze and evaluate, among other things, the components and underlying assumptions of the Plan: population growth, revenue collection, revitalization initiatives, and operational reforms. Significantly, to avoid any suggestion of bias, Professor Glaeser has insisted that both he and the panel will remain disinterested and, most importantly, serve the

Court on a *pro bono* basis, without any compensation except for the reimbursement of reasonable expenses.

       8.     In addition to the City's concurrence with the Show Cause Order, the City respectfully suggests that the Court incorporate the following instructions and procedures into any order appointing experts pursuant to Fed. R. Evid. 706[1]:

    (a)    **Panel Instructions and Authority.** The duties of the panel and panelists individually shall be limited, subject to further modification by the Court as may be appropriate or necessary, to assisting the Court, along the following under Fed. R. Evid. 706 and pursuant to section 105 of the Bankruptcy Code:

        (i)    The primary function of the panel will be to provide the Court with reasonable guidance and opinions related to (a) whether the City's plan is feasible as required by 11 U.S.C. § 943(b)(7); and (b) whether the assumptions that underlie the City's cash flow projections and forecasts regarding its revenues, expenses and Plan payments are reasonable;[2]

        (ii)    In accordance with chapter 9 of the Bankruptcy Code, neither the panel nor the panelists will propose or submit a plan of adjustment for the City;

---

[1] The City will note throughout these suggestions where there is a distinction between the proposals set forth in the Show Cause Order and the City's suggested modifications and the reasons for such modifications.

[2] To preserve the necessary role of the Court pursuant to 11 U.S.C. § 943, the City respectfully suggests that the experts should provide "guidance and opinion" as opposed to "investigate and reach a conclusion" regarding the feasibility of the Plan. The City believes that limiting the experts to a presentation of their guidance and opinions will achieve the Court's goals by enhancing the record and providing the Court and interested Parties with valuable information with respect to the feasibility of the Plan.

(iii) At the present time, and subject to further directions from the Court, neither the panel nor the panelists will be asked to conduct any independent field research or to evaluate the credentials, expertise, opinions, or testimony of persons who may be called as witnesses by the Debtor or any parties who have filed or will file objections to the City's Plan (together, the "Parties");

(iv) The panel shall have the authority to make reasonable requests for the production of documents, information, data, reports, analysis, and other materials from the Parties, and such requests and responses thereto shall be filed on the docket;

(v) Consistent with Fed. R. Evid. 703, panelists shall have the ability to formally or informally communicate with other professionals, entities, individuals, and experts who are not otherwise involved with this case, the Parties, or matters related to this chapter 9 case (*i.e.*, adversary and appeal); and

(vi) Panelists shall not have *ex parte* communications with the Parties or the Court outside of on-the-record chambers conferences, status conferences, or hearings absent disclosure to and consent from the non-participating Parties and the Court.[3]

(b) **Panel Reporting Requirements.** The panel and panelists will, as appropriate to each individual's area of expertise, individually conduct such reviews, independent research, critiques, and evaluations, and will then, after consultation with other members of the panel, present written findings pursuant to Rule 706(b), drawing upon other panelists' expertise in related disciplines as appropriate and to the extent permitted under Federal Rule of Evidence 703. These evaluations will be made and presented on particular topics and issues as they are completed (*i.e.*, without a delay until findings are completed on all topics and issues that may be the subject of the panel's review).

---

[3] The Court should, however, have the flexibility to communicate with the experts on an *ex parte* basis before their appointment so that the Court can assess whether or not the proposed expert has the necessary qualifications and experience to serve as an expert in this case.

(i) Preliminary written reports memorializing the panelists opinions and guidance for the Court (the "Preliminary Report") shall be publicly filed with the Court no later than June 16, 2014 (or other date the Court deems appropriate). The preliminary conclusions reached by the panel or any panelist shall not constitute preliminary findings by the Court, nor shall they be binding upon the Court or the Parties.

(ii) In lieu of depositions and in an effort to avoid discovery disputes, reduce costs and conserve resources, the panelists shall present their final opinions and guidance for the Court (the "Final Report") on July 8 – 10, 2014 (or other date(s) the Court deems appropriate) as part of an evidentiary hearing before the Court (the "Expert Hearing"). Subject to guidelines and limitations established by the Court, during the Expert Hearing panelists may be questioned by any interested Parties, including the Court, regarding the Final Report. All testimony, exhibits, and other evidence entered into the record at the Expert Hearing shall be included as part of the Plan hearing evidentiary record. The Final Report shall not constitute findings by the Court, nor shall it be binding upon the Court or the Parties.[4]

(c) **Expenses**: The panelists shall comply with 11 U.S.C. § 330 in applying for reimbursement of reasonable expenses associated with their service as an expert witness to the Court. Once approved by the Court, the City shall reimburse the panelists for their reasonable expenses.

---

[4] The City believes that the Expert Hearing will serve the same purposes as the Court's proposed consolidated deposition. Indeed, this is akin to the 'conference deposition,' which utilized in complex cases such as this because it is "useful in obtaining background information, identifying and explaining documents, and *examining reports compiled by several persons*." Manual for Complex Litigation (Fourth) §11.423 (2004) (emphasis added). Further, such a proceeding will allow the Parties to better organize the evidence they intend to present in support of or in opposition to the Plan during the Plan hearing. This also provides a public forum for the panelists to present the Final Report and be subject to questioning from both the Parties and the Court.

9
13-53846-tjt   Doc 3328   Filed 03/30/14   Entered 03/30/14 22:08:36   Page 9 of 13

(d) **Conflicts:** Until the conclusion of the panelists' responsibilities, each panelist shall not accept any retention or engagement that might result in a conflict of interest in the City's chapter 9 case.

9. The City will be prepared to respond to any questions the Court may have regarding this Concurrence at the hearing on the Show Cause Order on April 2, 2014.

Dated: March 30, 2014          Respectfully submitted,

 /s/ David G. Heiman
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

Thomas F. Cullen, Jr. (DC 224733)
Gregory M. Shumaker (DC 416537)
Geoffrey S. Stewart (DC 287979)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
tfcullen@jonesday.com
gshumaker@jonesday.com
gstewart@jonesday.com

Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
Telephone: (248) 359-7300
Facsimile: (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

ATTORNEYS FOR THE CITY OF DETROIT

## CERTIFICATE OF SERVICE

  I, David G. Heiman, hereby certify that the foregoing Debtors' Concurrence with the Court's Appointment of Experts Pursuant to Fed. R. Evid. 706 was filed and served via the Court's electronic case filing and noticing system on this 30th day of March, 2014.

            /s/ David G. Heiman