UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------------------------x
          :
In re                                     : Chapter 9
          :
CITY OF DETROIT, MICHIGAN,    : Case No. 13- 53846
          :
                 Debtor.          : Hon. Steven W. Rhodes
          :
------------------------------------------------------x

**CITY OF DETROIT'S RESPONSE TO MOTION OF OBJECTORS FOR ADJOURNMENT OF THE HEARING REGARDING THE CITY'S MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AND PLAN SUPPORT AGREEMENT**

      The Syncora-led effort to hinder and delay resolution of one of the most pressing issues facing the City of Detroit falls far short of establishing the "good cause" required under Local Bankruptcy Rule 5071-1. The City filed the execution copy of the Settlement and Plan Support Agreement on the date agreed in open court, of which Syncora was well aware. The City not only produced documents responsive to the requests of the Retiree Committee allowed by the Court, but produced additional documents in an effort to be as transparent as possible – for which Syncora now faults the City. In short, the City has complied with the litigation schedule set by this Court, and Syncora has not articulated any reason, much less "good cause," why the hearing should be delayed.

## I. THE OBJECTORS HAVE IDENTIFIED NO BASIS FOR RECONSIDERATION OF THE COURT'S ORDER SETTING AN EXPEDITED HEARING ON THE 9019 MOTION

Syncora begins by arguing that the hearing should not have been expedited in the first place, re-hashing the same arguments that it made before this Court at the hearing on the City's motion for expedited consideration of the Rule 9019 Motion. *See* Syncora Motion ¶¶ 9-10 (referring to the City's *ex parte* motion and arguments at the hearing, and arguing again that the Agreement involves "a significant number of novel issues"). These arguments were given a full airing before this Court on March 5, 2014, and were rejected. In fact, the non-novel nature of the issues is such that the Court indicated that much of the evidence introduced at the hearing on the prior settlement agreement would be relevant to its determination of the pending Rule 9019 motion. *See* Ex. A, Hrg. Tr. March 5, 2014 at 75:12-14 ("THE COURT: Why don't we just say that all the evidence that was submitted in connection with the prior hearings on your prior motions is evidence on this one?"). The parties plainly are not treading on virgin snow with respect to the 9019 Motion, and Syncora's attempt to suggest otherwise is simply disingenuous.

Syncora's attempt to move, obliquely, for reconsideration of the Court's March 6 order setting an expedited hearing fails for at least two reasons. First, it is untimely because more than 14 days have elapsed since the entry of the

order. *See* LBR 9024-1(a)(1) ("The deadline to file a motion for reconsideration of an order or judgment on the grounds that it was erroneous in fact or law is 14 days after the entry of the order or judgment.")

Second, under the applicable standard for reconsideration, "a motion for reconsideration that merely presents the same issues ruled upon by the court, either expressly or by reasonable implication, will not be granted. The movant shall not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof." LBR 9024-1(a)(3). Syncora has not and cannot demonstrate any such palpable defect.

## II. THE OBJECTORS HAVE NOT ESTABLISHED GOOD CAUSE TO DELAY THE HEARING.

### A. The City Timely Filed the Settlement and Plan Support Agreement

On March 18, 2014, counsel for the City sent a letter to counsel for the objectors, including Syncora, stating that "We plan to produce to you, on or before March 26, the final execution draft of the swap settlement agreement. . . ." *See* Kovsky Letter, March 18, 2014 at 1, attached hereto as Ex. B. Not one of the recipients of the letter objected or indicated that production of the execution draft of the settlement and plan support agreement (the "Agreement") on March 26 –

eight days before the hearing and five days before the scheduled depositions of the City's witnesses – would be insufficient.

On March 20, 2014, counsel for the City represented the same information in open court: that the City intended to produce and file the execution draft of the Agreement on March 26. None of the parties present or participating by phone objected to that date, and the Court did not order otherwise. Syncora and the other objectors have had ample notice of, and opportunity to object to, the City's intent to produce and file the settlement agreement on March 26. They failed to do so, and should not be heard at this late date.

Moreover, Syncora's contention that the Agreement contains "material differences" from the Term Sheet rings hollow. While stating, vaguely, that there are "many" such differences, Syncora is able to identify just two that it claims constitute material changes. The first "change" that Syncora identifies is the inclusion in the Agreement of the term "Specified Plan," which Syncora claims is "a concept and requirement completely absent from the term sheet and the old proposed order." Syncora Motion ¶ 12. Syncora is mistaken. The Term Sheet contemplates that the Swap Counterparties will vote in favor of the City's plan of adjustment if certain requirements are met. Term Sheet, Docket No. 2806 at 20-21. The "Specified Plan" language in the Agreement merely fleshes out the requirements contemplated in the Term Sheet.

The second "material change" alleged by Syncora appears to be based on a misreading of the Agreement. Syncora mischaracterizes the Agreement by arguing that it "diminishes the City's obligations as compared to the Term Sheet; under the Settlement Agreement, the City must use "best efforts" to make payments under the Swaps. (Settlement Agreement § 4.1.) In contrast, the Term Sheet obligated the City to make these payments. (Term Sheet at 1.)." Syncora Motion ¶ 12. This is simply untrue. The City remains fully obligated to make the swap payments under the Agreement. What § 4.1 of the Agreement actually provides is that "the City *will* (i) timely make the monthly Holdback Requirement payments in the manner provided by and on the terms set forth under Section 5.2(a)(1) and (b) of the Collateral Agreement (the "Monthly Payments")" (emphasis added). Contrary to Syncora's assertion, this obligation is unqualified by any "best efforts" standard.

The "best efforts" standard is only applicable to subsection (ii) of § 4.1, which provides that the City must "use its best efforts to ensure that UBS and MLCS timely receive the quarterly payments in an amount equal to all Hedge Periodic Payables required to be paid to them in the manner provided by and on the terms set forth under Section 5.7(a)(i) of the Collateral Agreement (the 'Quarterly Payments')." This is a minor change and the reason for it is both simple and sensible. The City is required, under the Collateral Agreement, to fund Monthly

-5-
13-53846-tjt    Doc 3379    Filed 03/31/14    Entered 03/31/14 17:25:25    Page 5 of 10

Payments into a lockbox structure under the control of the Swap Counterparties' custodian. Once the City makes a Monthly Payment, it no longer has any control over the funds. If the funds were somehow trapped by some third party, or the custodian refused for some reason to release them to the Swap Counterparties, the City would not have the power to force the release of the funds. The City is only required to use its best efforts to try to ensure that the funds are paid from the Swap Counterparties' custodian to the Swap Counterparties; it cannot be forced to make the same Monthly Payment twice if the funds are held up for reasons beyond its control. But this provision has no effect on the City's obligation to pay into the lockbox in the first instance.

Because Syncora and the objectors have had ample notice of the date that the Agreement would be filed and remained silent, and because they have not identified any material changes between the Agreement and the Term Sheet, the production of the Agreement on March 26 does not constitute "good cause" to delay the hearing.

### B. The Revised Order Involves Minimal Changes

Syncora further argues it simply cannot review and analyze the "material changes" to the proposed order in the eight days between the filing of the order and the hearing. This argument borders on the ludicrous. As an initial matter, the City was not required to file a blacklined order. The minimally-revised,

blacklined order was filed and provided to the objectors ahead of the hearing as a courtesy. Furthermore, the majority of the changes to the order were implemented to address specific objections by various parties, including U.S. Bank, the Retiree Committee and the Retirement Systems. Based on accommodating changes that were made to the order, two objectors have now agreed to withdraw their objections to the City's motion. This is very common practice and certainly does not constitute grounds for delay.

>     C.   **The City Properly Produced Its Documents, and the Objectors Have Ample Time to Review Them**

Syncora appears to take issue with the City's document production on two contradictory grounds: the City produced too many documents, and it didn't produce enough. As to the first objection – that 91 emails and 6 other short documents are *too many pages for lawyers to read in a week* – the City invites the Court to examine the production and draw its own conclusions. The majority of the production consists of emails setting up conference calls and other communications of a non-substantive nature.[1] A representative sampling is attached hereto as Exhibit C; it is clear that the documents can be fully reviewed in a few hours, at most.

---

[1] Out of an abundance of caution, the City produced a number of documents even though they may not be strictly responsive to the particular document requests allowed by the Court.

The second objection is that the City failed to produce certain attachments to emails. Those attachments consist of drafts of the Term Sheet or Agreement, which the Court expressly held the City is *not* required to produce. *See* Ex. D, Hrg. Tr. March 20, 2014 at 4-6 (finding the history of the City's negotiations with the Swap Counterparties, as reflected in drafts of the Term Sheet and Agreement, to be irrelevant); *see also* Order Granting, in part, and Denying, in part, Motion of the Official Committee of Retirees to Compel Production of Documents [Docket No. 3098] (sustaining, among others, the City's objections to the Retiree Committee's requests for drafts of the Term Sheet and Agreement). The City complied with the Court's order. If Syncora or the other objectors disagreed with the Court's ruling on the Retiree Committee's document requests, they should have spoken up at the hearing or moved for reconsideration. They did not do so, and the fact that the City complied with the order cannot justify delay of the hearing.

### D. A Delay of the Hearing Would Prejudice the City

The City has, on a number of occasions, articulated to the Court its reasons for seeking expedited consideration of the Agreement. The City needs certainty and stability with respect to its finances. It cannot learn, on the eve of the plan process, that it may have to litigate with the Swap Counterparties, or that it

-8-
13-53846-tjt    Doc 3379    Filed 03/31/14    Entered 03/31/14 17:25:25    Page 8 of 10

may not have access to its casino revenues. Delay of the hearing will harm the City and its residents.

In addition, lead attorneys or critical senior team members for both the City and the Swap Counterparties would be unable to attend a hearing on the date proposed by Syncora due to the Passover holiday.

## III. CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court deny Syncora's motion and allow the hearing on the Rule 9019 Motion to proceed as planned.

**[signature page follows]**

Dated: March 31, 2014

Respectfully submitted,

/s/ Robert S. Hertzberg
Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
(248) 359-7300 - Telephone
(248) 359-7700 - Fax
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

Corinne Ball
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
cball@jonesday.com

Thomas F. Cullen, Jr.
Gregory M. Shumaker
Geoffrey S. Stewart
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001.2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
tfcullen@jonesday.com
gshumaker@jonesday.com
gstewart@jonesday.com

ATTORNEYS FOR THE CITY OF DETROIT