UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

```
-----------------------------------------------------------------x
In re                                    :   Chapter 9
                                         :
                                         :   Case No. 13-53846
CITY OF DETROIT, MICHIGAN,               :
                                         :   Hon. Steven W. Rhodes
                     Debtor.             :
                                         :
                                         :
-----------------------------------------------------------------x
```

**RESPONSE OF THE OFFICIAL COMMITTEE OF RETIREES TO ORDER TO SHOW CAUSE WHY EXPERT WITNESSES SHOULD NOT BE APPOINTED**

The Official Committee of Retirees of the City of Detroit (the "Committee") hereby files this response to the Order to Show Cause Why Expert Witnesses Should Not Be Appointed, dated March 24, 2013 ("Order to Show Cause") [Dkt. No. 3170] and states as follows:

**Preliminary Statement**

1. The Court's request for input on the selection of a special Court-appointed expert appears motivated by the concerns that the City may not fairly establish the feasibility of its proposed Plan for the Adjustment of Debts (the "Plan") [Dkt. No. 2708]. In principle, the Committee does not oppose the Court's retention of an expert witness (or witnesses) under Federal Rule of Evidence ("FRE") 706 (the "FRE 706 Expert" or "Expert"). However, before such action is taken, the Committee suggests that the Court should first demand that the City identify witnesses who will testify on confirmation issues and provide assurance that they will testify on the areas of concern to the Court. If such a resolution is not sufficient for the Court, the Committee recommends that the scope of the FRE 706 Expert's work be expanded to cover other confirmation issues under section 943 of the Bankruptcy Code, including whether the City's Plan meets the best interests of creditors test under Bankruptcy Code section 943(b)(7).

While it is likely that the parties will offer fact and expert opinion testimony addressing the many facets of feasibility, the expansion of the FRE 706 Expert's role will assure the parties in interest that the Expert will assess the case from a balanced perspective. The Committee also avers that all parties, including the Committee should have a role in selecting the FRE 706 Expert. Indeed, the City has already offered to name one individual for the Court, Professor Edward Glaeser.[1] Given the critical importance of retiree issues to this case, allowing Committee input into the selection of the Expert will help to ensure that she is free from bias in performing her tasks. Other parties also may have similar bias concerns.

I. **The FRE 706 Expert's Assignment Should Be Expanded To Include Analysis of Whether the Plan Is in the Best Interests of the Creditors.**

2. The Court intends for the FRE 706 Expert to provide testimony concerning the feasibility of the City's Plan under 11 U.S.C. § 943(b)(7) and "the reasonableness of the City's assumptions regarding its revenues, expenses and plan payments." Order to Show Cause, at 1-2. However, section 943(b)(7) of the Bankruptcy Code also requires as a predicate to confirmation that a Chapter 9 plan be "in the best interests of creditors." 11 U.S.C. § 943(b)(7). "The best interest test has been described as a floor requiring a reasonable effort at payment of creditors by the municipal debtor and the feasibility requirement as a corresponding ceiling which prevents the Chapter 9 debtor from promising more than it can deliver."[2]

3. The feasibility and the best interests of creditors tests are thus interrelated. An expert who analyzes the Plan solely through the prism of feasibility will see only the ceiling and potentially produce an incomplete, and biased, analysis. The reasonableness of the Plan's

---

[1] *See* Edward Glaeser, "*Big Project Binge Fueled Motor City's Meltdown*, Bloombergview, March 20, 2013, available at http://www.bloombergview.com/articles/2013-03-20/big-project-binge-fueled-motor-city-s-meltdown.

[2] *In re Pierce Cty. Housing Auth.*, 414 B.R. 702, 718 (Bankr. W.D.Wash. 2009) (internal citations and quotations omitted).

assumptions must be examined not only to determine Plan feasibility, but also to determine whether the Plan maximizes creditor recovery within the range of that feasibility. Requiring the expert to examine the City's assumptions through the lenses of both the feasibility test and the best interests of creditors test strikes the proper balance between ensuring the success of the City's Plan and the maximization of creditor recoveries.[3]

4. On the income side the FRE 706 Expert should analyze not only whether the City's assumptions are too optimistic, but also whether the City's projections are too conservative. This analysis should include all potential sources of revenue - taxes, fees for services, licensing, permit and inspection fees, grants and contributions and fines. *See* Disclosure Statement with Respect to Plan for the Adjustment of Debts of the City of Detroit, dated February 21, 2014 ("Disclosure Statement"), at 23-25, 118-20 [Dkt. No. 2709]. The Expert should also examine whether the Plan offers an optimal monetization of the City's existing assets, including the art collection of the Detroit Institute of Arts, City-owned land, Belle Isle Park, the Detroit-Windsor Tunnel, the Coleman A. Young Airport, the Joe Louis Arena, the Veterans Memorial Building, tax receivables and other accounts receivable. *Id*. at 26-28, 76.

5. On the cost side, the FRE 706 Expert should examine whether the City's restructuring initiatives maximize cost-cutting and whether estimates of future savings from such measures are too conservative. This includes the City's proposed reinvestment initiatives for public safety, blight removal, information systems upgrades, DDOT, labor cost reduction and

---

[3] *In re Bamberg Cty. Memorial Hosp.*, 2012 WL 1890259, at *8 (Bankr. D.S.C. May 23, 2012) (finding that the plan of adjustment was in the best interest of creditors because the "Plan affords all creditors the potential for the greatest economic return from Debtor's assets"); *see also In re Pierce Cty. Housing Auth.*, 414 B.R. at 718-19 (finding that it was not in the "best interests of creditors" to confirm a plan of adjustment that precluded the post-confirmation committee from "investigating and possibly pursuing all potential sources of recovery already in existence").

outsourcing initiatives. *Id*. at 114-18. Finally, the Expert should also examine the pension and OPEB obligations from the revenue and asset monetization side to determine whether the City has overestimated the cost of its projected obligations on a going concern basis and underestimated the access to funds available to pay such claims. *Id*, at 32-37.

6. "The policy goal of Rule 706 is to promote accurate factfinding." 29 FED. PRAC. & PROC. EVID. § 6302 (1st ed. 2013). Limiting the analysis of the City's assumptions to analysis of whether the Plan meets the feasibility requirement of section 943(b)(7), but not the best interests of creditors requirement of section 943(b)(7), will strongly predispose the expert to view the proposed distributions under the Plan as a ceiling. The FRE 706 Expert following such an approach may issue a report that reflects the bias implicit in that approach. In order to ensure that the FRE 706 Expert's findings are accurate, equitable and just, it is important that the Expert who is appointed review the Plan's assumptions to determine whether the Plan is both feasible *and* in the best interests of creditors.

**II. Greater Committee Participation In the Selection of FRE 706 Expert Witness(es) Is Necessary to Ensure Witness Neutrality and to Promote Efficiency.**

7. FRE 706 prescribes an active role for litigants in the appointment and examination of an FRE 706 Expert. The Court can authorize parties to nominate proposed experts, as the City has already done. FRE 706(a); [Dkt. No. 3328]. The expert's duties must be revealed to the parties either in a writing filed with the court clerk or at a conference in which the parties participate. FRE 706(b). The FRE 706 Expert must advise the parties of her findings and may be deposed, called to testify and cross-examined by any party. FRE 706(b)(1)-(4). The American Bar Association Civil Trial Practice Standards (the "ABA Standards") similarly advise that the court should invite the parties to jointly recommend an expert and, in the absence of agreement, to submit lists of proposed experts to the court, which recommendations may be

accepted or rejected at the court's discretion.[4] The ABA Standards further provide that the court should provide for party participation in determining the scope of the expert's assignment.[5]

8. Notwithstanding the active role for parties foreseen by the drafters of FRE 706 and the ABA Standards, the proposed solicitation order attached to the Order to Show Cause (the "Solicitation Order") does not require Committee participation in the selection of FRE 706 Experts. *See* Solicitation Order, no. 6 (providing that the Court "may" interview applicants on the record). Furthermore, the proposed appointment order attached to the Order to Show Cause ("Appointment Order") does not prohibit *ex-parte* communications between the Court and the expert witness until *after* the witness is appointed. Appointment Order, no. 4.[6]

9. The FRE 706 Expert must be competent, unbiased and efficient to fulfill her designated function,[7] and Committee participation in vetting the Expert can help to ensure her neutrality and efficiency. Courts have repeatedly relied upon the participation of the parties in the selection of Experts under FRE 706 to ensure the neutrality of the witness,[8] even where the parties have retained their own Experts.[9]

---

[4] *See* American Bar Association, Civil Trial Practice Standards (2007), Standard No. 6(a).

[5] *Id*, Standard No. 6(b).

[6] *See* ABA Standard 6(c) ("[t]he court should ensure that the parties are aware of all communications pertaining to the merits between the court and a court-appointed expert").

[7] *See, e.g.*, *In re Gainey Corp.*, 400 B.R. 576, 581 (Bankr. W.D. Mich. 2008) ("The goal of the Expert Witness shall be to assist the court to ascertain the truth, make valid financial assumptions, projections, and conclusions, and *promote a fair, neutral and unbiased hearing* for all parties-in-interest . . . .") (emphasis added); *Singegal v. Duarte*, 2013 WL 5408602, at *2 (S.D. Cal. Sep. 25, 2013) ("The role of a court appointed expert is to serve as an independent neutral advisor in order to enlighten the Court and the jury on issues that are excessively complex or confusing."); *United States v. Articles . . . Provimi*, 74 F.R.D. 126, 127 (D.N.J. 1977) ("the court must have the perceptive and constructive support of both parties in order to settle the directions to be given to the expert, *so that his aid will be efficient and at the least feasible cost and expense*.") (emphasis added).

[8] *See, e.g.*, *In re Gainey Corp,* 400 B.R. at 579 (bankruptcy court requested that parties suggest qualified experts); *DeAngelis v. A. Tarricone, Inc.*, 151 F.R.D. 245, 247 (S.D.N.Y. 1993) (directing parties "to consult concerning the identity of a reasonable number of knowledgeable

10. The Court's proposed orders raise several concerns about whether the proposed solicitation procedures will ensure witness neutrality. The Solicitation Order states that the appointee must be "willing and able to exercise fair, unbiased and independent judgment in the assignment," *see* Solicitation Order, 2.d, but also lists as a selection criterion that the Expert have "a demonstrable interest in and concern for the future *of the City*." *See* Solicitation Order, 2.h (emphasis added). The latter criterion is consistent with a concern for Plan feasibility, but not for the best interests of creditors, and raises a significant concern that the FRE 706 Expert will focus primarily on the Plan's benefits to the City to the exclusion of its retirees and other creditors. It is the Committee's view that an Expert who does not have strong personal or professional ties to the City will more likely prove to be a neutral and objective witness.

11. The Appointment Order also does not provide for adequate discovery of the proposed Expert. A single, consolidated deposition is proposed. Given the importance and scope of the FRE 706 Expert's duties, and given the number of creditor parties involved, a single seven-hour deposition will not be sufficient to permit any substantive examination of the Expert's methodology and findings. The Appointment Order also lacks any provision for document discovery, so the parties will not be able to adequately review the bases for the Expert's conclusions. Of course, the critical element of such pretrial discovery will be to establish the existence of potential "Daubert" challenges under FRE 702. The Order's current omission of deadlines for filing the Expert's report and deposing the FRE 706 Expert also create

---

impartial experts who could examine all written evidence and also examine the plaintiff in a neutral and nonabrasive manner"); *cf. Gates v. United States*, 707 F.2d 1141, 1144 (10th Cir. 1983) (appellate court reviewing appointment of expert witness court should focus on whether expert was biased).

[9] *See, e.g., Computer Assocs. Int'l., Inc. v. Altai, Inc.*, 982 F.2d 693, 712-13 (2d Cir. 1992) (appointing expert witness with the consent of parties who presented their own expert evidence).

uncertainty as to whether the Committee and other parties in interest will have enough time to examine the Expert's findings, especially given the expedited schedule of this case.

12. The Committee has proposed revisions to the Court's proposed Order to remedy some of the foregoing procedural concerns. These revisions provide for a greater role for the Committee (and the City) in the selection and examination of the FRE 706 Expert. The orders are attached hereto as Exhibit A.

13. Committee participation in the selection process would also further the goal of efficiency. Here, the need for efficiency is especially acute given that the cost of the appointment of the expert will be borne by the City.[10] Appointment Order, no. 9. The Committee is well-positioned to help shape the scope of the proposed assignment so that the Expert focuses only on the essential facts and issues. *See*, *e.g.*, *United States v. Articles . . . Provimi*, 74 F.R.D. at 127. The Committee and its experts have spent more than seven months familiarizing themselves with the City's operations and finances, but there is much more to be learned through discovery. Although ongoing discovery will reveal additional, important information about the Plan, the Committee and its professionals can be of great assistance in both determining the scope of the FRE 706 Expert's assignment and whether the witness is properly qualified for that assignment.

14. In sum, in order to ensure that the FRE 706 Expert is neutral, efficient and produces a report that is useful to the Court and the parties, it is essential that the Committee actively participates in the appointment of the FRE 706 Expert and in the determination of her duties, and also that the Committee is offered a sufficient opportunity to fully examine the Expert's findings.

---

[10] The City's nominee has offered to work pro bono.

7
13-53846-tjt    Doc 3385    Filed 03/31/14    Entered 03/31/14 20:39:24    Page 7 of 13

**III. The FRE 706 Expert(s) Should Be Provided Sufficient Time to Fulfill Their Mandate.**

15. The Solicitation and Appointment Orders do not propose a specific time frame for either the retention of the FRE 706 Expert, the production of her report or discovery of her proposed testimony. The Court's current scheduling order requires expert witnesses to serve reports by no later than May 30, 2014. *See* Second Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment, dated March 6, 2014 (the "Scheduling Order") [Dkt. No. 2937]. Assuming that the solicitation and approval of an expert witness will take at least two weeks, the FRE 706 Expert will have only six weeks under the current discovery schedule to familiarize herself with the City's operations and finances, to analyze the City's Plan and to prepare an expert report. The Committee itself has many questions to the City to be addressed in discovery. The Court's proposed time frame is too short to permit a newly-hired expert to meaningfully analyze the Plan or to offer well-informed expert testimony. More time is needed to adequately analyze the City's operations, finances and the reasonableness of the assumptions underlying its Plan. It is unlikely that an FRE 706 Expert report issued in the time frame proposed for party experts will contain accurate, meaningful or helpful analysis; it may in fact even hinder meaningful review of the City's Plan. The Committee therefore requests that the Court provide additional time - at least three weeks - for the FRE 706 Expert to prepare and publish her report.

**WHEREFORE**, the Committee respectfully requests that this Court, as provided above and in the attached proposed revised orders (i) provide a greater role for the Committee in the selection of the Expert(s), (ii) expand the scope of assignment of the FRE 706 Expert(s), (iii), provide greater opportunity for the examination of the Expert(s), and (iv) grant such other and further relief to the Committee as the Court may deem proper.

Dated:  March 31, 2014                                                      Respectfully submitted,

| Matthew E. Wilkins (P56697) | Sam J. Alberts | By: /s/ Claude D. Montgomery |
| Paula A. Hall (P61101) | DENTONS US LLP | Claude D. Montgomery (P29212) |
| BROOKS WILKINS SHARKEY & TURCO PLLC | 1301 K. Street, NW | Carole Neville |
| 401 South Old Woodward, Suite 400 | Suite 600, East Tower | DENTONS US LLP |
| Birmingham, Michigan  48009 | Washington, DC 2005-3364 | 1221 Avenue of the Americas |
| Direct: (248) 971-1711 | Tel:     (202) 408-6400 | New York, New York 10020 |
| Cell: (248) 882-8496 | Fax:    (202) 408-6399 | Tel:     (212) 768-6700 |
| Fax: (248) 971-1801 | sam.alberts@dentons.com | Fax:    (212) 768-6800 |
| wilkins@bwst-law.com | | claude.montgomery@dentons.com |
| hall@bwst-law.com | | carole.neville@dentons.com |

*Counsel for the Official Committee of Retirees*

# EXHIBIT A

**[CAPTION]**

**DRAFT**

**Order Regarding the Solicitation of Proposals to Serve
as the Court's Expert Witness on the Issue of Feasibility**

Under Fed. R. Evid. 706(a), the Court solicits proposals from any qualified person wishing to serve as an expert witness on the issues of whether the City's plan of adjustment is both feasible and in the best interest of creditors under 11 U.S.C. § 943(b)(7).

1. Interested applicants may mail or deliver their proposals to United States Bankruptcy Court, Eastern District of Michigan, Intake Dept., 17th Floor, 211 West Fort St., Detroit, MI 48226. The proposals must be received by April ___, 2014.

2. The Court seeks to appoint an expert witness who:

   a. Has outstanding qualifications in municipal finance and budgeting to provide an opinion regarding the feasibility of the City's plan of adjustment and whether the plan maximizes value for and is in the best interest of the City's various creditor constituencies.

   b. Has outstanding qualifications in municipal planning to provide an opinion regarding the reasonableness of the assumptions that underlie the City's revenue, cost and cash flow forecasts and projections.

   c. Is able to give an opinion that is based on sufficient facts or data and that is the product of reliable principles and methods and the application of those principles and methods to the facts of the case.

   d. Is willing and able to exercise fair, unbiased and independent judgment in the assignment.

   e. Can prepare a report and provide testimony in deposition and at trial, both of which are concise and understandable in addressing the sophisticated and complex matters related to the feasibility of the plan of adjustment and to the reasonableness of the City's assumptions regarding its revenues, expenses and plan payments.

   f. Has the resources and ability to accomplish the assignment within the schedule adopted by the Court for the hearing on confirmation of the City's plan.

   g. Has no disqualifying connections or conflicts of interest, including that the applicant (i) has not been previously employed, and is not currently employed by the City or the State of Michigan, and (ii) is not affiliated with an entity that has

been previously employed or contracted with, and is not currently employed or contracts with, the City or State of Michigan.

    h.    Is willing to forego any retention or engagement that might result in a conflict of interest in this case.

    i.    Is willing and able to comply with the requirements of 11 U.S.C. § 330 in seeking approval of fees.

3. If no single applicant possesses both of the qualifications described in paragraphs 2a and b above, the Court may consider appointing a separate expert witness for each qualification.

4. Within the guidelines herein, the City and the Committee may individually and/or collectively solicit potential applicants and submit proposals on behalf of those applicants to the Court.

5. Each proposal shall contain the following:

    a.    A disclosure of the applicant's qualifications as an expert witness on the feasibility issue in this case, including the applicant's education and training; experience (especially with municipal budgeting, forecasts and projections, as well as the assumptions that underlie them); professional licenses and certifications; professional association memberships and honors; professional speeches, lectures and presentations; and professional publications (and attaching the most pertinent publications).

    b.    A disclosure of all prior retentions in which the applicant testified as an expert witness either in deposition or at a trial or hearing, including the title of the case, the court in which the case was pending, the attorney who retained the applicant and the subject matter of the testimony.

    c.    A disclosure of all prior retentions by any governmental unit, including the identity of the governmental unit and the subject matter of the retention.

    d.    A disclosure of all prior retentions by any party relating to that party's connections with a governmental unit, including the identity of the party, the governmental unit and the subject matter of the retention.

    e.    A disclosure of all present or past connections with the City of Detroit and any of its creditors or the professionals representing them, or with the current government of the State of Michigan.

    f.    A disclosure of the proposed staffing of the assignment by other members of the applicant's firm.

    g.    A disclosure of the proposed fees to be charged and a proposed budget of fees and expenses.

      h.      A statement disclosing why the applicant is interested in the appointment.

6. Interested parties are encouraged to share this solicitation with potentially interested and qualified applicants.

7. Before appointing the expert witness, the Court may interview applicants on the record with the assistance of designated counsel, including counsel for the City and counsel for the Committee. After the appointment of the expert witness there shall be no ex-parte communication between the expert witness and the Court, the City or the Committee.

[CAPTION]

DRAFT

**Order Appointing Expert Witness**

1. Under Fed. R. Evid. 706(a), _____ is hereby appointed as an expert witness.

2. The expert shall investigate and reach a conclusion on (a) whether the City's plan (i) is feasible and whether the plan is in the best interests of creditors as required by 11 U.S.C. § 943(b)(7); and (b) whether the assumptions that underlie the City's revenue, cost and cash flow projections and forecasts regarding its revenues, expenses and plan payments are reasonable.

3. The City and the Official Committee of Retirees, and their professionals, shall fully and promptly cooperate with the expert witness.

4. The expert witness, once appointed, shall have no *ex parte* communications with the Court, the City or the Committee. Any request for assistance or guidance shall be stated in writing and submitted to the clerk of the court, who shall arrange for its filing on the docket. The Court will then promptly determine the appropriate process to address the matter.

5. By June 20, 2014, the expert witness shall file a report stating the conclusions required by paragraph 2 above and explaining in full detail the grounds for those conclusions. Upon request, the expert witness shall also provide the City and the Committee all documents and information on which it relied on in preparing the report.

6. After filing the report required by paragraph 5 above, but before July 9, 2014, the expert witness shall be available for a consolidated deposition by any interested parties.

7. Until the conclusion of the expert witness's responsibilities under this order, the expert witness shall not accept any retention or engagement that might result in a conflict of interest in this case.

8. The expert witness shall comply with 11 U.S.C. § 330 in applying for compensation and reimbursement of expenses.

9. The City shall pay the expert witness's compensation and expenses as approved by the Court.