IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

**RESPONSE OF ASSURED GUARANTY MUNICIPAL
CORP. TO ORDER TO SHOW CAUSE WHY
EXPERT WITNESSES SHOULD NOT BE APPOINTED
AND TO THE DEBTOR'S FILING IN RESPONSE THERETO**

Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance Inc. ("Assured"),[1] a creditor and party in interest in the above-captioned chapter 9 case of the City of Detroit, Michigan (the "City"), hereby files this response to the Order to Show Cause Why Expert Witnesses Should Not Be Appointed, dated March 24, 2014 [Docket No. 3170] ("Order to Show Cause"), and to the Debtor's Concurrence with the Court's Appointment of Experts Pursuant to Fed. R. Evid. 706 [Docket No. 3328] ("Concurrence"), and respectfully states as follows:

---

[1] Assured is a monoline insurer that provides financial guarantees to the U.S. public finance market. Assured and its affiliates insure or reinsure approximately $2.24 billion in gross aggregate principal amount of outstanding bonds issued by the City, including water supply system bonds, sewage disposal system bonds, and unlimited tax general obligation bonds.

## RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE

1. Assured does not object in principle to the appointment by the Court of one or more expert witnesses ("Court-Appointed Expert"), pursuant to Fed. R. Evid. 706(a), to provide a report and to give testimony regarding the feasibility of the City's plan of adjustment (the "Plan") and the reasonableness of the City's assumptions regarding its revenues, expenses and Plan payments ("Report"). However, Assured believes that the proposed Order Appointing Expert Witness ("Appointment Order") and the proposed Order Regarding the Solicitation of Proposals to Serve as the Court's Expert Witness on the Issue of Feasibility ("Solicitation Order"), should be clarified and supplemented as to a few points in the interests of orderly procedure and to minimize the potential for uncertainty and/or disputes prior to and during the hearing on Plan confirmation currently scheduled to commence on July 16, 2014 ("Confirmation Hearing").

2. Specifically, Assured requests that provisions to the following effect be included in the Appointment Order (a copy marked to show the changes proposed by Assured is attached hereto as Exhibit A):

(a) On the date specified for the Court-Appointed Expert to file the Report, the Expert shall provide to the parties (in such manner as may be agreed by the parties or directed by Court) copies of any document cited in the Report or otherwise considered by the Court-Appointed Expert in

preparing the Report, excluding documents previously produced in discovery among the parties and publicly-available professional literature.

(b) The consolidated deposition of the Court-Appointed Expert may exceed the number of days and hours specified in Fed. R. Civ. P. 30(d) (made applicable herein by Bankruptcy Rule 7030), as may be agreed to by the parties and the Court-Appointed Expert, or, failing such agreement, as may be ordered by the Court.

(c) The dates by which the Court-Appointed Expert shall file the Report and by which the Court-Appointed Expert shall be deposed shall be in accordance with the dates for expert reports and expert depositions set forth in the Second Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment (Docket No. 2937) ("Scheduling Order"), namely that the Court-Appointed Expert's report shall be filed by May 30, 2014 and Court-Appointed Expert's deposition shall be completed by June 30, 2014.

(d) The Report shall be admitted as evidence at the Confirmation Hearing only as provided by the Federal Rules of Evidence, unless otherwise agreed by the parties or ordered by the Court.

(e) The Court-Appointed Expert shall make himself or herself available to be called to testify in person at the Confirmation Hearing

without the need for subpoena or other process, upon the request of any party, at such time during the Confirmation Hearing as may be agreed by the parties or ordered by the Court.

3. Assured also requests that provisions to the following effect be included in the Solicitation Order (a copy marked to show the changes proposed by Assured is attached hereto as Exhibit B):

(a) All interested parties shall have the opportunity, prior to the Court's interview of applicants to serve as Court-Appointed Expert, to advise the Court of concerns, questions and issues that they believe are relevant to the selection of the Court-Appointed Expert, or as to the qualifications or suitability of any particular applicant.

(b) The Court's selection of the Court-Appointed Expert shall not be deemed to preclude *Daubert* or other challenges under the Federal Rules of Evidence to the admissibility of all or any of the Court-Appointed Expert's opinions at the Confirmation Hearing.

**RESPONSE TO THE DEBTOR'S "CONCURRENCE"**

4. The City on March 30, 2014 filed a purported "Concurrence" with the Order to Show Cause that is actually a wide-ranging proposal to substantially revise the orders the Court proposed to enter, alter the procedures for the Court-Appointed Expert in the matter, diminish the procedural rights of creditors and

4

parties in interest in this proceeding such as Assured, and indeed pre-select for the Court the types and identities of experts to perform what is intended to be an "independent" function. For these reasons, as further explained below, Assured objects to the proposals in the City's Concurrence and respectfully submits that the Court should reject them.

5. The Order to Show Cause contemplated the issuance of a Solicitation Order, from the responses to which the Court would determine which expert to select and/or if multiple experts were needed in order to address the concerns which led the Court to issue its Order to Show Cause. The Solicitation Order (¶¶ 2.a., 2.b.) specifically identified the areas of "municipal finance and budgeting" and "municipal planning" as the areas of expertise on which independent expert input was being sought. The Concurrence, however, seeks to expand this into a veritable array of separate experts addressing such disparate subject matters as "municipal governance and finance, real estate development and land use, utilities, transportation requirements, information technology needs, public safety, and other urban issues" (Concurrence ¶ 4), as well as "population growth, revenue collection, revitalization initiatives, and operational reforms." (Concurrence ¶ 7.) This is not a "concurrence" with the Order to Show Cause but rather a wholesale rewriting of it.

6. The Concurrence also seeks to re-write the task with which the expert(s) will be charged. Rather than having a single expert "investigate and reach a conclusion" regarding the feasibility of the Plan, as the Court proposed (Appointment Order ¶ 2), the City in the Concurrence seeks to avoid having independent experts actually opine on that critical subject by substituting a chorus of disparate individuals providing what is vaguely described as "guidance and opinion" in which apparently no definitive conclusions (e.g., conclusions that might hinder confirmation of the Plan) would ever be offered. (Concurrence ¶ 8(a)(i) & n.2.) This is a complete subversion of what the Order to Show Cause sought to do.

7. The City's suggestion that this restriction is necessary "[t]o preserve the necessary role of the Court" in the 11 U.S.C. § 943 feasibility inquiry is unfounded. The Federal Rules of Evidence long ago recognized that it does not invade the province of the finder of fact for an expert to express an opinion that "embraces an ultimate issue." Fed. R. Evid. 704(a). Triers of fact, both lay and judicial, deal with such testimony all the time without undue complication. Certainly the Court does not need the City to protect the Court from itself.

8. The Concurrence also shows the City attempting to micro-manage the selection and management of the independent expert in other ways. For example, the City seeks to bar or at least dissuade the expert from "conduct[ing] any

independent field research." (Concurrence ¶ 8(a)(iii).) Most notably, the City has attempted to pre-select for the Court who the independent expert (or at least the lead independent expert) should be, based on *the City's* own review and on discussions that the City apparently already has conducted with its preferred candidate. (Concurrence ¶ 6.) It is hard to imagine how any expert for this important role could be less independent under such circumstances. Given that the Concurrence itself recognizes that the "independent" expert(s) should "not have *ex parte* communications with the Parties" (Concurrence ¶ 8(a)(vi)), it is particularly inappropriate for a candidate with whom the City has been having discussions about this "independent" role (including matters such as compensation, *see* Concurrence ¶ 7) to be given this role. Indeed, in these circumstances, creditors and other interested parties would be well-entitled to have a deposition or some kind of hearing to examine any such independent expert candidate with whom the City has been communicating in advance, in order to uncover the nature of those discussions, particularly in regard to compensation issues, e.g., as to the expert's motivations for taking on such an significant assignment on a *pro bono* basis. (Concurrence ¶ 7.)

9. Additionally, implicit in the Concurrence is the predetermined view that it is appropriate and desirable that the Court's independent expert come to this task from an academic background like that of the City's proposed lead expert.

7

(*See* Concurrence ¶ 6.) There is no basis for this preconception, and indeed Assured is of the opposite view. What matters most in making real-world determinations of plan feasibility under 11 U.S.C § 943 is practical financial and fiscal experience with distressed municipalities, not economic theory or schools of thought on urban studies. Feasibility determinations in municipal bankruptcy cases are not the place for theorizing and experimentation.

10. Lastly, the City's proposal in the Concurrence that the Court depart from the procedure originally set forth in the Appointment Order for how the Court-Appointed Expert will function is unfair and unworkable, and will substantially prejudice creditors and interested parties such as Assured. The Court-Appointed Expert should be on the same playing field and operate on the same schedule as the experts of any party in interest, but the City seeks to take a very different approach. The City proposes to eliminate the orderly procedure of an expert report following by a deposition and then possible testimony at the Confirmation Hearing (Appointment Order ¶¶ 5-6), by instead having the expert(s) provide one or more "[p]reliminary written reports memorializing [their] opinions and guidance for the Court" more than two weeks after the May 30, 2014 deadline for other expert reports set forth in the Scheduling Order. (Concurrence ¶ 8(b)(i).) The experts would then present their "Final Report" at a live "evidentiary hearing" just four business days before the Confirmation Hearing (Concurrence ¶ 8(b)(ii)),

which will essentially function as trial by ambush with no clear definition beforehand of what the experts' final conclusions might be, nor any chance for the parties to have deposed the experts before they present the final opinions that will be entered into evidence.

11. While the City suggests that this proposed hearing "will serve the same purposes as the Court's proposed consolidated deposition" (Concurrence ¶ 8(b)(ii) n.4), it will do nothing of the kind, because the hearing as proposed by the City will in fact be an "evidentiary hearing." (Concurrence ¶ 8(b)(ii).) For example, the Concurrence is silent as to whether this pseudo-deposition/hearing will be governed by the ordinary Federal Rules of Evidence for court hearings (e.g., with objections for relevance and hearsay, issues of laying foundations, etc.) or the far looser rules under which deposition discovery is conducted (where relevance and hearsay are not appropriate objections, and issues can be explored without strict consideration of whether the matters discussed would be formally admissible in evidence).

12. The City's proposed procedure would not benefit the Court in any way but rather seems destined to waste the Court's time. With an ordinary pre-hearing deposition of the expert like the one proposed by the Court, the parties can take their time and explore issues "offline" from the Court, and then present in Court a focused use of just that which was truly pertinent and helpful from the

work and opinions of the expert(s). The procedure proposed in the Concurrence, by contrast, will makes the Court sit through a rambling three-day deposition-cum-hearing-by-ambush, which may involve time spent exploring what prove to be irrelevant topics, false leads, blind alleys, and so on, instead of giving the Court crisp focused direct and cross examinations of the expert(s) on whatever topics were proved through deposition to be truly important.

13. In sum, the proposal set forth in the City's Concurrence is riddled with procedural defects that render it both impractical and unfair. In addition, the City's proposal seems designed to hijack the Order to Show Cause in order to change the issues and assignment of the independent expert to the City's liking, and to insert as the "independent" expert a candidate that the City has pre-selected, rather than one selected by the Court after the fair and open solicitation process described in the Solicitation Order. The proposal set forth in the Concurrence should be rejected in its entirety.

## CONCLUSION

WHEREFORE, Assured respectfully requests that the Court enter the proposed Appointment Order as modified to include the provisions Assured set forth above, reject the City's proposals in the Concurrence, and grant Assured such other and further relief as may be just and proper.

Dated: New York, New York
March 31, 2014

**CHADBOURNE & PARKE LLP**

By:  /s/  Lawrence A. Larose
Lawrence A. Larose
Samuel S. Kohn
Eric Daucher
30 Rockefeller Plaza
New York, NY 10012
Telephone:  (212) 408-5100
llarose@chadbourne.com
skohn@chadbourne.com
edaucher@chadbourne.com

*Attorneys for Assured Guaranty Municipal Corp.*