**Detroit, Michigan, Code of Ordinances >> Part III - CITY CODE >> Chapter 37 - NUISANCES >> ARTICLE II. VACANT BUILDINGS >>**

## ARTICLE II. VACANT BUILDINGS [2]

Sec. 37-2-1. Legislative findings.
Sec. 37-2-2. Definitions.
Sec. 37-2-3. Application complaint procedures.
Sec. 37-2-4. Notice to the owner.
Sec. 37-2-5. The nuisance abatement contract.
Sec. 37-2-6. Quiet title.
Sec. 37-2-7. Redemption.
Sec. 37-2-8. Appeals.
Sec. 37-2-9. Savings clauses.

### Sec. 37-2-1. Legislative findings.

The council finds that:

(a) Scattered throughout the city are a large number of unoccupied dwellings which are constantly broken into, vandalized, used for unsanitary or immoral purposes and are potential fire hazards.

(b) There are many unoccupied dwellings in the city which, because of their vacant status, constitute hazards to the health, safety, and welfare of the public.

(c) Certain vacant dwellings have reached a state of disrepair and deterioration which create a public nuisance or exert a downgrading or blighting influence on the surrounding neighborhood, resulting in discouraging neighbors from making improvements to properties and thus adversely affecting the tax revenue of the city.

(d) Throughout the city, the number of vacant and deteriorated dwellings constituting public nuisances has become so high that traditional means of abating such nuisances have been ineffectual, and blight and deterioration of emergency proportions have resulted.

(e) Currently, tax delinquent abandoned dwellings revert to the state and are then deeded to the city through the state tax reversion process. However, this process takes several years, during which time many dwellings are lost through vandalism and deterioration.

(f) Permitting families and community groups to repair and occupy abandoned homes within the city will preserve the residential housing stock of the city, increase neighborhood stability, and provide needed homes for Detroit families.

(Ord. No. 23-90, § 1(12-11-46.1), 11-21-90)

### Sec. 37-2-2. Definitions.

(a) *Dwelling* means a single family, two family, or multiple family property.

(b) For the purpose of this program, a dwelling shall be considered abandoned if:

(1) That dwelling is vacant, dilapidated and open at the door or window, leaving the interior of the building exposed to the elements or accessible to entrance by trespassers; and

(2) There are outstanding state, county, or municipal property taxes due on the dwelling.

(c) For the purposes of the program, an abandoned dwelling shall be considered a nuisance if that

dwelling is a dangerous building, as that term is defined in Ordinance Chapter 12-11-28.2 of the 1964 City Code.

(d) (1) A nuisance abatement contractor is an individual who, under contract with the city enters and resides in an abandoned single family dwelling to abate a nuisance in that building, or is a community group which agrees to repair an abandoned dwelling to abate a nuisance and meets the following criteria:
   a. It is a nonprofit organization under federal tax law Section 501(c)(3);
   b. Has an established track record in or a demonstrable capability for home rehabilitation;
   c. Has distinct geographical boundaries;
   d. Has a community-based board with at least fifty-one (51) per cent of its membership residing within said geographical boundaries; and
   e. Has open meetings and maintains records of such meetings and prepares financial reports.
   f. Has been certified as meeting the requirements of subsections (d)(1)a. through e. of this section by the city planning commission.

(2) An applicant for a nuisance abatement contract shall, if the applicant is an individual, agree to reside in the contract property as his or her sole residence for a thirty-six-month period; or, if the applicant is a community group, agree to maintain the property for sale or rental pursuant to the terms of this article.

(3) A person who is delinquent in taxes to the City of Detroit shall be required to enter into a tax repayment plan with the city before signing a nuisance abatement contract.

(4) An applicant who, without good cause, has breached or failed to perform a nuisance abatement contract within the past five (5) years shall not be eligible to enter into a nuisance abatement contract.

(5) A nuisance abatement contractor shall apply to enter a nuisance abatement contract with the city by submitting an application in writing to the department of buildings and safety engineering identifying the dwelling which is sought to be repaired and, if the applicant is a community group, whether the groups intend to maintain the property for sale or rental.

(6) If more than one applicant applies for a contract to abate a nuisance in the same abandoned dwelling, then the applicant who first applies in writing to the department of buildings and safety engineering for a contract shall be given the first opportunity to enter into a contract for that dwelling. If for any reason a contract is not entered into or is terminated with that applicant, the next applicant who identified that dwelling to the department of buildings and safety engineering shall be given an opportunity to enter into a contract for the dwelling.

(7) 
   a. No individual applicant may have more than one application pending with the department of buildings and safety engineering at any time; however, if the dwelling identified in an individual's application is not available for a nuisance abatement contract because it is not eligible under this article or because it is the subject of an earlier filed application which has not been rejected, the applicant shall be permitted to file a new application, identifying a different dwelling, and such second or subsequent application shall be processed by the department of buildings and safety engineering on the priority basis of the filing date of the applicant's original application.
   b. No community group applicant may have more than five applications pending approval with the department of buildings and safety engineering at any time; however, once a property identified in a community group's application has been determined to be eligible or ineligible for a nuisance abatement contract, the community group shall be permitted to file an application for another property, up to the maximum of five. The combined total of applications, nuisance abatement contracts and properties owned by any one community group shall not exceed its demonstrable capability for home

(e)    rehabilitation and property management.

     (1) A nuisance abatement contract is a contract between a nuisance abatement contractor and the City of Detroit through which the contractor enters and repairs an abandoned dwelling that is a nuisance. The procedures relating to the nuisance abatement contractor are more fully set out in section 37-2-5

     (2) The contract shall constitute a temporary occupancy permit allowing an individual contractor and his or her family to occupy the subject property as a residence. No portion of any dwelling subject to a contract shall be occupied by a tenant of a contractor until the portion to be rented is completed and is registered with the city under its rental registration program.

     (3) The contract shall constitute a building permit under 12-11-70.0 of the 1964 City Code and shall be deemed to satisfy the building registration requirements of 12-11-30.0 of the 1964 Code.

     (4) Until title in the dwelling passes to the nuisance abatement contractor, all rents collected from the tenant of a dwelling shall be deposited in an interest bearing escrow account. The escrow account shall be maintained by the City of Detroit. Once title passes to the nuisance abatement contractor, all monies and interest in the escrow account shall be paid out to the nuisance abatement contractor, except one (1) per cent of the account which may be used to defray the cost of quieting title of properties under this article.

(f) The city council may waive any provision of this section upon request of the contractor or the department of buildings and safety engineering when, in the opinion of the council, the waiver will further the purposes of this article.

*(Ord. No. 23-90, § 1(12-11-46.2), 11-21-90)*

## Sec. 37-2-3. Application complaint procedures.

(a) It shall be unlawful for any owner or agent thereof to keep or maintain any dwelling which shall be (1) vacant and open to trespass and (2) dilapidated or deteriorated or in a dangerous condition.

(b) If an individual or a community group identifies a dwelling believed to be vacant and a nuisance, that individual or group may apply to the department of buildings and safety engineering for a contract to abate that nuisance. The department of buildings and safety engineering is authorized to process a proposed contract to abate a nuisance in an abandoned dwelling with the first eligible applicant. The contract shall be to correct the conditions resulting in a public nuisance. The cost of correcting the nuisance shall be charged to the owner of the abandoned property and collected by lien.

(c) Upon receiving an application for a nuisance abatement contract for a dwelling, the department of buildings and safety engineering shall, within twenty (20) days, inspect the dwelling to determine:

     (1) Whether the building is vacant and dangerous;

     (2) Whether the building is feasible of rehabilitation;

     (3) The assessed or current market value of the property, whichever is lower, in an unrepaired, "as is" condition;

     (4) Those repairs which must be undertaken to abate the nuisance on the premises, and an estimate of the value of each of those repairs, including both materials and labor.

(d) A dwelling shall be considered capable of rehabilitation unless significant structural defects are found which would preclude successful rehabilitation.

(e) If the department of buildings and safety engineering determines that the dwelling is not vacant or is not a nuisance, the department shall so notify the owner through the procedures set out in section 37-2-4 and the applicant by first class mail.

(f) If the department of buildings and safety engineering determines that the dwelling is abandoned and is a nuisance, the department shall issue a notice specifying the time and place of a hearing on the condition of such dwelling and directing the owner or owners of record to appear at such a hearing before a hearing officer who shall be appointed by the department and show cause why the nuisance

shall not be abated or the dwelling demolished. A copy of this notice shall be mailed to the applicant. This hearing shall be held within thirty (30) days of the date of inspection.

(g) At this hearing, the hearing officer shall take the testimony of the building inspector, the city appraiser, the owner, the applicant and any interested party. The hearing officer shall then render his decision either closing the proceedings, recommending the nuisance to be abated by contract or otherwise, or recommending that the dwelling be demolished. A copy of the findings and recommendation shall be served on the owner in the manner prescribed in section 37-2-4 and on the applicant by first class mail.

(h) When it is determined that at the hearing that the dwelling is a nuisance which should be abated through contract or through demolition of the dwelling, and the owner has failed to appear, or thereafter neglects or refuses to act within twenty (20) days of the date of hearing, the hearing officer shall forthwith file a report of his findings with city council and recommend that the dwelling be the subject of a nuisance abatement contract or that it be demolished.

(i) Within thirty (30) days of receipt of the hearing officer's recommendation, the city council shall hold a hearing where it will either approve, disapprove, or modify the recommendation for a contract or for demolition. In reaching its decision, the city council shall consider any evidence of the historic significance of the dwelling and its qualification for designation as an historic landmark or for inclusion in an historic district, as provided in Chapter 25, Article II of the City Code. The owners of record shall be notified, as provided in section 37-2-4, of the date and place of the hearing before city council where they shall be given the opportunity to show cause why their dwelling should not be the subject of a nuisance abatement contract or demolished.

(j) When it is determined at the hearing before city council that the dwelling should be the subject of a nuisance abatement contract or should be demolished, and the owner fails to appear or has refused to act within the time specified, a nuisance abatement contract may be entered into with the applicant or the dwelling may be demolished by the city. A copy of the city council's order to enter into a nuisance abatement contract concerning a dwelling or to demolish a dwelling shall be served on the owner and the applicant as provided in section 37-2-4. The city shall not enter into a nuisance abatement contract or demolish a dwelling until twenty (20) days after the city council's order. However, the city shall enter into a contract with a nuisance abatement contract applicant as soon as possible after that twenty (20) day period has run.

(k) The cost of demolition, administrative costs, and/or the value of the materials and labor for tasks performed under the nuisance abatement contract shall be charged to the owner as liens against the real property and shall be reported to the board of assessors who shall assess the costs against the property in question. The lien shall be enforced in the manner prescribed in the Charter or City Code for the enforcement of special assessment liens or tax liens.

*(Ord. No. 23-90, § 1(12-11-46.3), 11-21-90)*

### Sec. 37-2-4. Notice to the owner.

(a) The record owner or owners of any dwelling which is the subject of a complaint under this chapter shall receive written notice:

   (1) That a complaint/applicant(s) has been filed.
   (2) That the dwelling has been determined, through an inspection, abandoned and a public nuisance, and that a hearing shall be held concerning the dwelling.
   (3) That a demolition or nuisance abatement order has been issued concerning the dwelling.
   (4) That the department of buildings and safety engineering has requested an order from city council to abate the nuisance or demolish the dwelling and that a hearing shall be held concerning the request.
   (5) That the city council has entered a demolition or abatement order concerning the dwelling. If the city enters into a nuisance abatement contract, a copy of that contract shall be provided to the owner.

13-53846-tjt    Doc 3511-1    Filed 04/02/14    Entered 04/02/14 10:35:56    Page 4 of 8

(b) Each notice sent to the owner shall contain:
  (1) Notice that, if the city determines that the subject property constitutes a nuisance, the city may take appropriate action to abate the nuisance, including demolishing the dwelling or contracting to have one or more persons reside in and repair the dwelling.
  (2) Notice of the city's gift property program. For any property deeded to the city under the procedures set forth in this section, it will be conclusively presumed that the grantee intended the city to abate any nuisance at the property through the nuisance abatement contractor program.
  (3) Notice that the city may seize the title to any abandoned nuisance dwelling through a quiet title action.
(c) Notices required by this article shall be served on the owner by:
  (1) Handing the notice personally to the owner, to the owner's authorized agent, to an adult member of the owner's family at the owner's home or to an adult in charge of the owner's place of business within the city; or
  (2) Registered or certified mail, return receipt requested, and first class mail to the owner's home or place of business.
  (3) If the whereabouts of the owner is unknown, the notice shall be sent by registered or certified mail and by first class mail to the last known address of the owner.
  (4) In addition to the personal or mail service set forth in section 37-2-4(c)(1)—(3), a copy of the notice shall be posted on the premises in violation.
  (5) The failure of an owner to receive notice properly served under this section shall not affect, in any manner, the validity of any proceedings against the property under this article.

(Ord. No. 23-90, § 1(12-11-46.4), 11-21-90)

### Sec. 37-2-5. The nuisance abatement contract.

(a) If the city council approves a contract with any applicant to abate a nuisance in a dwelling, the applicant shall enter and legally occupy an abandoned dwelling for the purpose of abating the public nuisance in accordance with the terms of an abatement contract between the city and the applicant.

(b) The nuisance abatement contract shall include: A statement of the assessed value or the agreed current market value of the subject premises in its unrepaired, "as is" condition, whichever is lower; a statement of the nature and extent of repairs necessary to abate the public nuisance resulting from the conditions on the subject premises; if the building is a multiple family dwelling, a statement of the agreement between the department of buildings and safety engineering and the contractor as to whether it shall be maintained as the same number of units or converted to a lesser or greater number of units; an estimate of the reasonable monetary value of the labor of the applicant and his or her agents which will be required to carry out the abatement plan and of the materials and services which will be required to carry out the abatement plan; a reasonable timetable for completing the abatement plan; a statement that the contractor shall abate any dangerous conditions in the dwelling before occupying the property under the contract, however, this provision shall not prevent the contractor from occupying the property to secure the property or prevent vandalism; a statement that the contractor shall, as a condition of the contract, occupy the premises as soon as it is practicable after the contract is signed and essential preoccupancy repairs are completed and, if the contractor is a natural person, maintain the premises as his or her residence during the term of the contract; a stipulation to hold the City of Detroit harmless for any injuries to person or to property that may be suffered by the contractor, his or her family, or their guests associated with the premises; a provision that the contractor agrees to secure liability insurance for damages arising from the repair and occupancy of the premises, up to a premium amount of one hundred dollars ($100.00) per year; if the contractor is a community group, it shall obtain minimum available liability insurance for the contract period. If the contractor is a community group which agrees to repair the nuisance abatement dwelling for rental, a statement that the community group shall lease the

13-53846-tjt    Doc 3511-1    Filed 04/02/14    Entered 04/02/14 10:35:56    Page 5 of 8

property for residential purposes only, and shall make available not fewer than fifty (50) per cent of the units it rehabilitates under this article at rents charged to the lessee which do not exceed the maximum shelter allowance permitted by the Michigan Department of Social Services for the family size occupying the property with the amenities offered by the community group; no portion of any dwelling subject to a contract shall be occupied by a tenant of a contractor until the portion to be rented is completed and is registered with the city under its rental registration program. If the contractor is a community group which agrees to repair the nuisance abatement dwelling for sale, a provision that the dwelling shall be sold in accordance with all city and state laws, including but not limited to section 26-3-1, et seq., of the Detroit City Code, and a statement that the dwelling shall be sold for the amount of the purchase price from the city plus the amount of the liens for repairs under the contract, the reasonable cost of other repairs, and an allowance for reasonable overhead for tasks performed under the contract.

(c) A contractor under this program shall be eligible to apply for assistance under any loan or grant program that is or may be administered or funded by the city. The monies set aside for homesteading rehabilitation shall be made available to contractors under this program.

(d) The department of buildings and safety engineering shall periodically inspect, according to procedures set forth by the department, the dwelling to assure compliance with the contract and completion of the listed repairs. As repairs are completed by the contractor the value of the repairs as stated in the contract or modified by agreement of the city and the contractor and verified by inspections by the city shall be assessed as a lien against the property. The contractor may request an inspection at any time to verify the completion of repairs.

(e) The department of buildings and safety engineering shall designate nuisance abatement contract inspectors who shall have the authority to conduct the assessments, estimates, and inspections required by this section.

(f) The city shall, directly or through a services contract, provide technical assistance to nuisance abatement contractors in effecting safe and low cost repairs on the contract premises.

(g) In consideration for the services of the nuisance abatement contractor, the city shall:
  (1) Upon completion of the abatement contract, deliver the deed to the contractor when the city has the capacity to transfer fee simple title, if the city obtains title. The city shall deed title to the contractor for a sum of money equal to the agreed value of the property at the time the contract is signed less the value of all liens on the property resulting from the repair work under the contract, however, under no circumstances shall the sales price of the property be reduced below one dollar. The city shall credit the contractor with the value of non-lien repairs where those repairs remedy code violations and may credit the contractor with the value of other non-lien repairs which otherwise upgrade the value of the property.
  (2) Compensate the contractor in the amount determined due by lien under the contract for all completed contract repairs, if the city does not obtain title, or if the owner of the abandoned property exercises the right to redeem it within statutory time limits. The monies paid by the city to the contractor shall be paid for the redemption monies paid by the owner or owners to redeem the property. The city shall require full payment of all contractor liens before permitting an owner to redeem his property.

(h) The normal term of the contract shall be thirty-six (36) months from the signing of the contract to conveyance by the city. If the city obtains title before thirty-six (36) months have passed, the city shall conditionally convey title to the contractor pending completion of the contract repairs. Full title shall then be conveyed upon completion of the contract period, unless the contractor, breaches the contract by abandoning the property. If the city obtains title later than thirty-six (36) months after the contract is signed, the conveyance shall be effected as soon as possible after the city obtains title. All abatement shall be completed before title passes.

(i) No taxes shall be due on the property from the contractor during the thirty-six-month contract period. At the beginning of the thirty-seventh (37th) month after the contract is signed, if the contract is completed and the city is able to convey the property to the contractor, then the city shall convey to

13-53846-tjt    Doc 3511-1    Filed 04/02/14    Entered 04/02/14 10:35:56    Page 6 of 8

   the contractor and the contractor shall be responsible for future taxes. If, at the beginning of the thirty-seventh (37th) month after contract is signed, the city is unable to convey the property, the contractor shall begin to make payments in the amount of fifty dollars ($50.00) per month per unit to the city for administrative costs connected with the contractor's continued use of the property.

(j)  The city shall institute foreclosure proceedings against any tax delinquent property which is the subject of an abatement contract wherever the institution of the foreclosure process by the city will be expected to shorten the time necessary to secure title in the city without increasing costs to the city.

(k) (1) The city may terminate a nuisance abatement contract if:
  a. There is a willful, material breach of the contract by the contractor.
  b. There is a failure to commence work to abate the nuisance within 60 days after occupancy; or
  c. The record owner of the property redeems the property.
 (2) Before terminating a contract under this section, the city shall provide the contractor ten (10) days written notice of what actions may be taken to cure the breach.
 (3) If a contract is terminated after liens have attached, those liens remain in effect against the property and in favor of the contractor until the title to the property reverts to the city.

*(Ord. No. 23-90, § 1(12-11-46.5), 11-21-90)*

## Sec. 37-2-6. Quiet title.

(a)  The title to any dwelling which is vacant and dangerous may be seized by the city through an action in circuit court to quiet title. If an owner leaves his or her property in a vacant and dangerous condition and is delinquent in taxes on that property, it shall be presumed that the owner intended that the title to the property revert to the city.

(b)  The city shall seek title to any abandoned dwelling subject to this section whenever it is determined that the quiet title action will expedite the acquisition of title by the city.

(c)  If the department of buildings and safety engineering and city council determine that an action to quiet title is appropriate, council shall so order and corporation counsel shall institute the action.

(d)  Whenever title is obtained by the city pursuant to this section, conditional title shall be passed to the nuisance abatement contractor. This title shall be conditioned on full performance of the contract. After the nuisance abatement contractor is granted conditional title, the contractor shall be required to obtain insurance on the contract property.

(e)  Nuisance abatement contractors also may seek title to any abandoned dwelling subject to this article by an action to quiet title.

*(Ord. No. 23-90, § 1(12-11-46.6), 11-21-90)*

## Sec. 37-2-7. Redemption.

(a)  The record owner may redeem his or her property at any time before title vests in the city upon payment of all liens against the property, including taxes, special assessments, and the contractor liens.

(b)  If a record owner comes forward and expresses an intent to redeem his or her property, the city shall inform the nuisance abatement contractor of the owner's interest in the property within five (5) days of the owner's contact with the city.

(c)  Before the record owner may redeem the property:
 (1) The city shall perform a closeout inspection of the property to affix the value of all repairs under the contract.
 (2) The owner shall deposit a sum sufficient to pay the liens, assessments, and taxes with the city. The city shall require, at a minimum, a deposit of all nuisance abatement liens before

- (3) The city shall pay to the contractor from monies deposited by the owner an amount equal to the value of all nuisance abatement liens, and shall give the contractor notice that the contract is being terminated.
    permitting redemption.
- (d) If an owner redeems the property before the nuisance conditions have been abated at that property, any prior order to secure the property or to abate the dangerous condition at the property remains in effect.

*(Ord. No. 23-90, § 1(12-11-46.7), 11-21-90)*

## Sec. 37-2-8. Appeals.

Any person aggrieved by a decision of any city agency as pertains to this article may request a hearing with the director of that agency of his or her designee; the agency receiving such a request shall conduct a hearing and issue a written report and decision on any matter to be heard.

*(Ord. No. 23-90, § 1(12-11-46.8), 11-21-90)*

## Sec. 37-2-9. Savings clauses.

- (a) This act shall not be deemed to limit in any way the city's right under any existing law or ordinance to correct any public nuisance, to correct any dangerous condition in any building, or to permit or encourage occupancy of abandoned buildings.
- (b) This act shall not be deemed to limit a contractor's right to undertake repairs or improvements to a dwelling beyond those nuisance abatement repairs listed in the contract, or to seek equitable compensation for those repairs from a dwelling owner.
- (c) The provisions of this act shall be deemed severable, and, if any part of this ordinance is to be held to contravene any statutory or constitutional provision, the rest of the act shall remain in force and effect.

*(Ord. No. 23-90, § 1(12-11-46.9), 11-21-90)*

---

FOOTNOTE(S):

*--- (2) ---*

**Editor's note—** *Ord. No. 23-90, § 1, adopted Nov. 21, 1990, amended the 1964 Code by the addition of §§ 12-11-46.1—12-11-46.9, which have been included herein at the discretion of the editor as Art. II, §§ 37-2-1—37-2-9. (Back)*
**Cross reference—** *Trespassing in vacant buildings, § 38-4-1; signs on vacant buildings, § 38-4-8. (Back)*