# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 9 |
| | § | |
| CITY OF DETROIT, MICHIGAN, | § | Hon. Steven W. Rhodes |
| | § | |
| Debtor. | § | Case No.:  13-53846 |

---

### ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 364(c)(1), 364(c)(2), 364(e), 364(f),  503, 507(a)(2), 904, 921 AND 922 (I) APPROVING POST-PETITION FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY CLAIM STATUS AND (III) MODIFYING AUTOMATIC STAY

THIS MATTER having come before the Court upon the motion (the "Motion") by the City of Detroit, Michigan (the "City"), which is a debtor in the above-captioned chapter 9 case (the "Case"), pursuant to Sections 105, 362, 364(c)(1), 364(c)(2), 364(e), 364(f), 503, 507(a)(2),  904, 921 and 922 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the Eastern District of Michigan seeking entry of an order, *inter alia*:[1]

---

[1] Capitalized terms used but not defined herein shall have the meanings given to

CHI-1922517v1

(i)    authorizing the City to obtain senior secured post-petition financing on a superpriority basis in the form of the Quality of Life Bond and the Swap Termination Bond in an aggregate principal amount of up to $350,000,000 (collectively, the "Post-Petition Facility") pursuant to the terms and conditions of the Bond Purchase Agreements substantially in the forms attached to the Motion as Exhibit 6B, by and between the City and Barclays Capital Inc., as Purchaser (the "Purchaser"), and the Indenture substantially in the form attached to the Motion as Exhibit 6C (the "Indenture"), by and between the City and the Indenture Trustee, on behalf of itself, the Purchaser and those other entities to whom the Purchaser either assigns or sells participations in the Bonds from time to time (collectively, the "Bondholders").

(ii)    authorizing the City to enter into and perform under the Bond Purchase Agreements and all other related bond documents, including the Indenture, the Bonds, the Wagering Tax Control Agreements and the Income Tax Control Agreements, the Orders Authorizing the Issuance and Sale of the Bonds, the Local Emergency Financial Assistance Loan Board Order and the documents relating to

_____

them in the Bond Purchase Agreement (as defined below) and the Indenture (as defined below), as applicable. Uncapitalized terms used in this Order that are defined in Section 101 or 102 of the Bankruptcy Code have the meanings assigned to

the Pledged Wagering Tax and Pledged Income Tax (each as may be amended, supplemented, restated, or otherwise modified from time to time, collectively, and together with the Bond Purchase Agreements, the Commitment Letter between Barclays Capital Inc. and the City dated as of October 6, 2013 (together with all amendments thereto as of the date hereof, the "Commitment Letter") and the Fee Letter between Barclays Capital Inc. and the City dated as of October 6, 2013 (together with all amendments thereto as of the date hereof, the "Fee Letter"), the "Initial Bond Documents"), entered into by and among, variously, the City, the Purchaser, the Indenture Trustee, and other third parties, and to perform such other acts as may be necessary or desirable in connection with the Initial Bond Documents;

(iii)    granting the Post-Petition Facility and all obligations owing thereunder and under the Initial Bond Documents (collectively, and including all obligations under or with respect to the Initial Bond Documents, the "Initial Bond Obligations") allowed superpriority claim status under Section 364(c)(1) of the Bankruptcy Code;

(iv)    granting to the Purchaser, the Indenture Trustee and the Bondholders automatically attached and perfected security interests in and Liens (as defined

them by the Bankruptcy Code.

below) on the Quality of Life Bond Collateral (as defined in the Motion) and the Swap Termination Bond Collateral (as defined in the Motion) as applicable, which Liens shall be subject to the priorities set forth in paragraphs 6 and 7 of the Order attached to the Motion at Exhibit 1 (the "Proposed Order") and in the Initial Bond Documents;

(v)     authorizing the City to pay the principal, interest, fees, expenses and other amounts payable under the Initial Bond Documents and the Fee Letter, including (and to the extent applicable), Purchaser's and Indenture Trustee's fees, the reasonable fees and disbursements of the Purchaser's and Indenture Trustee's attorneys, advisers, accountants, and other consultants, all to the extent provided in and in accordance with the terms of the Initial Bond Documents (as applicable);

(vi)     vacating and modifying the automatic stay imposed by Sections 362 and 922 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Initial Bond Documents and the Proposed Order, as limited pursuant thereto; and

(vii)     authorizing the limitation of the City's right to assert claims to surcharge against the Collateral pursuant to section 506(c) of the Bankruptcy Code to the extent set forth in paragraph 29 of the Proposed Order;

The City having revised the Motion with the consent of the Purchaser to limit the City's borrowing under the Post-Petition Facility to $285,000,000, the Purchaser

having agreed to extend the termination date under the Commitment Letter to January 31, 2014, and the amendment to the Commitment Letter having been submitted to the Court as part of the record of the Hearing (as defined below);

the Court having considered the Motion, the Initial Bond Documents attached to the Motion, the Declarations of James Doak and Charles M. Moore in Support of the Motion, the exhibits attached thereto, and the evidence and arguments submitted at the hearing on the Motion commencing on December 17 , 2013 (the "Hearing");

notice of the Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and no further notice being required;

the Hearing to consider the relief requested in the Motion having been held and concluded;

the Court having determined after the conclusion of the Hearing and by minute order that the Motion should be denied in part and granted in part with conditions as to a revised post-petition facility in an amount not to exceed $120,000,000 (the "Revised Post-Petition Facility"), to the extent set forth in this Order;

the city having filed and the Court having considered the Notice of Presentment of this Order ("Notice of Presentment"), which presented this Order as a proposed Order, described the revisions in this Order from the Proposed Order necessitated by this Court's determination and minute order and attached as Exhibits

the revised Indenture, a form of Supplemental Indenture, the revised Bond Purchase Agreement, and the revised Income Tax Control Agreement (each, a "Revised" document, and collectively, the "Revised Bond Documents");

all objections to the Motion having been withdrawn, resolved or overruled by the Court in the manner set forth in this Order;

it further appearing that granting the relief requested to the extent set forth in this Order is fair and reasonable and in the best interests of the City; and

it further appearing that the City is unable to obtain unsecured credit for money borrowed allowable as an administrative expense under Bankruptcy Code Section 503(b)(1); and

after due deliberation and consideration, and for good and sufficient cause appearing therefor:

BASED UPON THE RECORD ESTABLISHED AT THE HEARING ON THE MOTION AND ALL PLEADINGS AND DOCUMENTS FILED HEREIN, INCLUDING THE NOTICE OF PRESENTMENT, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    *Petition Date*.  On July 18, 2013 (the "Petition Date"), the City filed a voluntary petition for relief under chapter 9 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Michigan (the "Court")

commencing this Case. The order for relief in this case was entered on December 5, 2013.

B.    *Jurisdiction and Venue*.    This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and authority under 28 U.S.C. § 157 and the General Order of Reference to Bankruptcy Judges over these proceedings and over the persons, entities and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    *City's Stipulations*.    The City stipulates and acknowledges that: (a) except as granted pursuant to this Order and the Revised Bond Documents, as of the date of entry of this Order, the Collateral (as defined below) is not subject to any pledge, lien or security interest other than the Liens and any rights of Comerica Bank in the Collateral referenced in section 2.02(c) of the DACA (defined in paragraph 7 below) that exist on the date hereof; (b) on or before the Closing Date, and giving effect to the Court's authority in this bankruptcy case, the City shall take or cause to be taken all actions, and the effectiveness of this Order is conditioned upon the City's having received, all consents necessary, including under applicable non-bankruptcy law, for the approval of the Revised Post-Petition Facility upon the terms and conditions set forth in the Revised Bond Documents, including the pledge of the Collateral and the perfection of the security interests therein with the priorities

set forth herein and in the Revised Bond Documents, and (c) the entry of this Order

and the relief and orders granted herein is at the request, and upon the consent, of the

City.

     D.    *Findings Regarding the Postpetition Financing*.

     (i)    *No Credit Available on More Favorable Terms*. Given its

current financial condition and financing arrangements, the City is unable to obtain

adequate financing on terms more favorable than the Revised Post-Petition Facility.

The City has been unable to obtain unsecured credit allowable under Bankruptcy

Code Section 503(b)(1) as an administrative expense. Adequate financing on a

postpetition basis is not otherwise available without granting the Purchaser, the

Indenture Trustee and the Bondholders (1) perfected Liens on (each as provided

herein) the Collateral with the priorities set forth in paragraph 7 hereof and in the

Revised Bond Documents, (2) superpriority claims and Liens and (3) the other

protections set forth in the Revised Bond Documents and this Order.

     (ii)    *Use of Proceeds of the Revised Post-Petition Facility*. As a

condition to the entry into the Revised Bond Documents and the extension of credit

under the Revised Post-Petition Facility, the Purchaser requires, and the City has

agreed, that proceeds of the Revised Post-Petition Facility shall be used in a manner

consistent with the terms and conditions of the Revised Bond Documents, solely for

purposes permitted by law, including to fund expenditures designed to contribute to

the improvement of the quality of life in the City and to pay the fees and expenses of the Purchaser and the Indenture Trustee (to the extent applicable).

E.     *Section 506(c)*.  Upon entry of this Order, the Purchaser, the Indenture Trustee and the Bondholders are each entitled to a waiver of the provisions of Section 506(c) of the Bankruptcy Code (which waiver shall be without prejudice to the contention of the Purchaser, the Indenture Trustee or the Bondholders that Section 506(c) of the Bankruptcy Code does not apply to secured claims incurred pursuant to Section 364 of the Bankruptcy Code).

F.     *Good Faith and Jurisdictional Matters*.

(i)     *Willingness to Provide Financing*.  The Purchaser has indicated a willingness to provide financing to the City pursuant to the Revised Bond Documents subject to:  (a) the entry of this Order; (b) approval by this Court of the terms and conditions of the Revised Post-Petition Facility and the Revised Bond Documents;  (c) entry of findings by this Court that such financing is in the best interests of the City and is not prohibited by any applicable law, that the Purchaser, the Indenture Trustee and Bondholders are extending credit to the City pursuant to the Revised Bond Documents in good faith and for a proper purpose and that the Revised Post-Petition Facility and all obligations owing thereunder and under the Revised Bond Documents (collectively, and including all obligations under or with respect to the Revised Bond Documents, the "Revised Bond Obligations"),

9

Superpriority Claim, Liens and other protections granted to the Purchaser, the Indenture Trustee and the Bondholders pursuant to this Order and the Revised Bond Documents will have the protections provided in Sections 364(e) and 921(e) of the Bankruptcy Code and will not be affected by any reversal, modification, vacatur, amendment, reargument or reconsideration of this Order, of any order finding jurisdiction, of the order for relief or of any other order.

(ii) *Prudent Judgment, Jurisdictional Matters and Good Faith Under Section 364(e)*. The terms and conditions of the Revised Post-Petition Facility and the Revised Bond Documents and the fees to be paid thereunder are fair, reasonable, and the best available to the City under the circumstances, reflect the City's exercise of prudent judgment, are supported by reasonably equivalent value and fair consideration, are at the request, and with the consent, of the City and are within the jurisdiction and powers of the Court pursuant to Section 904 of the Bankruptcy Code. The Revised Post-Petition Facility is the result of a full and fair marketing process conducted by the City and its agents and advisors. The Revised Post-Petition Facility and the Revised Bond Documents were negotiated in good faith, without fraud or collusion and at arms' length among the parties. Credit extended under the Revised Post-Petition Facility and the Revised Bond Documents under Section 364(c) of the Bankruptcy Code is extended in good faith within the meaning of Section 364(e) of the Bankruptcy Code and in express reliance upon the

protections offered by Section 364(e) of the Bankruptcy Code, for purposes and uses that are permitted by law, and not in violation of the Bankruptcy Code or of applicable nonbankruptcy law, and the Revised Post-Petition Facility (including the transactions contemplated by the Revised Bond Documents) is not prohibited by applicable bankruptcy or nonbankruptcy law.  The Purchaser, the Indenture Trustee and the Bondholders therefore qualify for the full protection and benefits of Sections 364(e) and 921(e) of the Bankruptcy Code and this Order and shall not be affected by any reversal, modification, vacatur, amendment, reargument or reconsideration of this Order, of any order finding jurisdiction, of the order for relief or of any other order.

G.     *Act 436 Approval.*  On October 21, 2013, in accordance with Section 19(1) of Act 436, Public Acts of Michigan, 2012, as amended, MCL 141.1541, et seq. ("Act 436"), the City Council of the City (the "City Council") disapproved the Post-Petition Facility.  The City Council failed to offer an alternative proposal during the time period prescribed in Section 19(2) of Act 436.  The City has requested and received approval of the Post-Petition Facility by the Emergency Financial Assistance Loan Board (the "Board") pursuant to Section 36a of the Michigan Home Rule City Act, Public Act 279 of 1909.  The City has committed to comply with the procedures required under Section 19(1) of Act 436 and with Section 36a of the Michigan Home Rule City Act with respect to the Revised

Post-Petition Facility.

  H. *Notice*. Notice of the Hearing and the relief requested in the Motion and of the Notice of Presentment has been provided by overnight delivery and electronic mail or facsimile to: (a) the trustees, transfer agents and/or paying agents, as applicable, for the City's secured and unsecured bonds; (b) the City's largest unsecured creditors as identified on the list filed under Bankruptcy Rule 1007(d ); (c) the Official Committee of Retirees appointed in this case; (d) the unions representing certain of the City's employees and retirees; (e) the four associations of which the City is aware representing certain retirees of the City; (f) the City's pension trusts; (g) the insurers of the City's bonds; (h) the insurers of the certificates of participation issued with respect to the City's pension funds (the "COPs"); (i) certain significant holders of the COPs; (j) the counterparties under the swap contracts entered into in connection with the COPs (collectively, the "Swaps"); (k) the insurers of the Swaps; (l) Barclays Capital Inc., as the Purchaser; (m) Cravath, Swaine & Moore LLP, as counsel to the Purchaser; (n) Dykema, Gossett PLLC, as counsel to the Purchaser; (o) the other parties that submitted Lending Proposals; and (p) all entities that have requested notice pursuant to Bankruptcy Rule 2002.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      <u>Motion Approved</u>.  The Motion is granted to the extent and subject to the terms and conditions set forth in this Order.

2.      <u>Objections Overruled</u>.  All objections to the Motion and to the Revised Post-Petition Facility and the Revised Bond Documents and the Revised Bond Obligations (collectively, the "<u>Financing</u>"), to the extent not withdrawn or resolved are hereby overruled to the extent provided in this Order.

**Revised Post-Petition Facility Authorization**

3.      <u>Authorization of the Financing</u>.  Subject to the City's compliance with the procedures for authorizing the borrowing of money under Sections 12(1) and 19 of Act 436 and the approval of the Board of the Financing under Section 36a of the Michigan Home Rule City Act, the City is hereby authorized to enter into and to incur the obligations under the Financing, all of which is hereby approved, and is authorized and empowered to incur and to perform the Revised Bond Obligations in accordance with, and subject to, the terms of this Order and the Revised Bond Documents and to perform all acts, make, execute and deliver all instruments and documents which may be required for the performance by the City under the

Revised Bond Documents and the creation and perfection of the Liens described in and provided for by this Order and the Revised Bond Documents. The Collateral and all proceeds thereof shall be deposited and applied as required by this Order and the Revised Bond Documents. Upon execution and delivery, the Revised Bond Documents and the Revised Bond Obligations shall represent valid and binding obligations of the City, enforceable against the City in accordance with their terms.

4.      Authorization to Borrow. Subject to the terms and conditions set forth in the Revised Bond Documents and this Order and to the City's compliance with the procedures for authorizing the borrowing of money under Sections 12(1) and 19 of Act 436 and the Board's approval of the Financing under Section 36a of the Michigan Home Rule City Act, the City is hereby authorized to issue the Revised Bonds for purchase by the Purchaser on the Closing Date and is hereby authorized to enter into and incur the Financing.

5.      Revised Bond Obligations. The Revised Bond Documents and this Order shall evidence the validity and binding effect of the City's Revised Bond Obligations, which Revised Bond Obligations shall be effective as of the Closing Date. Upon entry of this Order, and effective as of the Closing Date, the Revised Bond Obligations will include all indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the City to the Purchaser, the Indenture Trustee or any of the Bondholders, under the respective Revised Bond

Documents or this Order, including all principal, accrued interest, costs, fees, expenses and other amounts under the respective Revised Bond Documents. The Revised Bond Obligations shall be due and payable, without notice or demand, in accordance with the terms of the Revised Bond Documents. No obligation, payment, transfer or grant of security under the Revised Bond Documents or this Order shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including Section 502(d) of the Bankruptcy Code) or be subject to any defense, reduction, setoff, recoupment or counterclaim.

6. <u>Liens and Collateral</u>. (a) In order to secure the Revised Bond Obligations, effective upon the Closing Date and without the necessity of the execution, recordation of filings by the City of financing statements, notices of liens, control agreements or other security documents, or the possession or control by the Purchaser, the Indenture Trustee or the Bondholders over any Collateral, pursuant to Section 364(c)(2) of the Bankruptcy Code, the City is authorized to grant, and the Purchaser, the Indenture Trustee and the Bondholders are hereby granted, in accordance with the terms of the Revised Indenture, valid, binding, continuing, enforceable, non-avoidable, fully-perfected first priority liens (the "<u>Liens</u>") on (i) except for that portion of income tax revenues transferred into the budget of the City's police department at any time, to be used exclusively to retain and hire police officers, in an amount equal to the sum of 0.2% of the income tax rate levied on

resident individuals and 0.1% of the income tax rate levied on non-resident individuals for so long as bonds, obligations or other evidences of indebtedness of the City's Public Lighting Authority are outstanding and payable from taxes levied by the City under the Utility Users Tax Act, Act 100, Public Acts of Michigan, 1990, as amended, MCL 141.1151, et seq., the remaining income tax revenues of the City (the "Pledged Income Tax Revenue") and (ii) all Asset Proceeds Collateral, as defined in the Revised Bond Documents (clauses (i) and (ii), collectively, the "Collateral"); and

(b)      Notwithstanding anything to the contrary in this Order, the Motion or the Revised Bond Documents, under no circumstances shall the Collateral include revenues of the Systems or any other assets pledged to secure any of the Water/Sewer Bonds.  This Order is without prejudice to, and does not waive, any objections the Trustee, the Holders, or the Bond Insurers may have regarding any monetization or disposition of any assets of either or both the Systems or any claim or defense (including any claim of a first priority lien on any Asset Proceeds Collateral arising from the disposition of any assets of the Systems) that the Purchaser, the Indenture Trustee under the Revised Indenture or the Bondholders may have with respect to any security interest, lien or pledge that the Holders, the Trustee or the Bond Insurers assert in any Asset Proceeds Collateral.  The terms, "Trustee," "Systems" and "Water/Sewer Bonds," as used in this paragraph, shall

have the same meaning as those terms have in the Limited Objection and
Reservation of Rights with Respect to the Debtor's Motion for Entry of an Order (I)
Approving Post-Petition Financing, (II) Granting Liens and Providing
Super-Priority Claims Status and (III) Modifying the Automatic Stay (Docket No.
1797) filed by U.S. Bank National Association in its capacity as Trustee for the
Water/Sewer Bonds. The term "Holders" shall mean the holders of the Water/Sewer
Bonds. The term "Bond Insurers" shall mean the bond insurers (including, without
limitation, as providers of surety bonds for any reserve fund requirements) that
insure the Water/ Sewer Bonds.

7. Lien Priority. The Liens shall be senior in priority and superior to any
pledge of, lien on or claim to any of the Collateral and shall expressly apply to any
Collateral deposited at Comerica Bank pursuant to the Deposit Account Control
Agreement among the City, UMB Bank, N.A., as Indenture Trustee, and Comerica
Bank (the "DACA") except that, notwithstanding anything to the contrary in this
Order or the Revised Bond Documents, the Liens shall be subject to the rights of
Comerica Bank with respect to any Collateral deposited at Comerica Bank as
provided in section 2.02(c) of the DACA. Other than as set forth herein and in the
Revised Bond Documents, the Liens shall not be made subject to or *pari passu* with
any lien or security interest heretofore or hereinafter granted in the Case or otherwise
and shall be valid and enforceable, including against the City under Sections 921(e)

and 364(e) of the Bankruptcy Code, notwithstanding any reversal, modification, vacatur, amendment, reargument or reconsideration of this Order, of any order finding jurisdiction, of the order for relief or of any other order and notwithstanding the dismissal of the Case for any reason. The Liens shall not be subject to Section 506(c) or 510 of the Bankruptcy Code. No lien or interest avoided and preserved pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Liens.

8. <u>Superpriority Claims</u>. Upon the Closing Date, the Purchaser, the Indenture Trustee and the Bondholders are granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority claim (collectively, the "<u>Superpriority Claim</u>") for all Revised Bond Obligations (without the need to file any proof of claim), with priority over (i) any and all administrative expenses of the City at any time existing or arising, of any kind or nature whatsoever, including all administrative expenses arising under any section of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, (ii) all other post-petition claims against the City, and (iii) pre-petition unsecured claims against the City. There is litigation pending before the Court between certain bond insurers of certain of the limited and unlimited tax obligation bonds, on the one hand, and the City, on the other, in respect of ad valorem property tax revenue (the "<u>Property Tax Revenue</u>"). To the extent this

13-53846-tjt    Doc 3607    Filed 04/02/14    Entered 04/02/14 15:20:49    Page 18 of 35

Court finds and determines (and pending such finding or determination), or approves any settlement or confirms any plan of adjustment that provides, that any Property Tax Revenue of the City is subject to a property interest (such as a lien or pledge) of any holders of limited or unlimited tax general obligation bonds issued by the City or that such Property Tax Revenue is not generally available for use by the City other than for payment of such limited or unlimited general obligation bonds and is not available for distribution to general unsecured creditors as part of a plan of adjustment in this case, then the Superpriority Claim granted hereunder shall not, in such circumstance, be paid from the Property Tax Revenue unless and until any allowed claims arising from such limited or unlimited general obligation bonds have been satisfied in full.

9.     No Obligation to Extend Credit.  The Purchaser shall have no obligation to purchase any bond, extend any credit or make any loan under the Revised Bond Documents unless all of the conditions precedent to the purchase of such bond or extension of such credit under the Revised Bond Documents and this Order have been satisfied in full or waived in accordance with the terms of the applicable Revised Bond Documents.

**Additional Provisions**

10.     Amendment of the Revised Bond Documents. The City is authorized, without further approval of this Court, to perform all acts and to make, execute and

deliver all instruments and documents that may be reasonably required to effect one or more amendments, modifications or supplements to any of the Revised Bond Documents as provided in the Fee Letter or that are solely ministerial amendments, modifications or supplements or as the City may otherwise have the power to effect without further order of the Court.

  11. <u>Modification of Automatic Stay</u>.  The automatic stay imposed under Bankruptcy Code Sections 362(a) and 922 is hereby modified as necessary to effectuate all of the terms and provisions of this Order, including to: (a) permit the City to grant the Liens and the Superpriority Claims; (b) permit the Purchaser, the Indenture Trustee and the Bondholders to request, and the City to perform, such acts as the Purchaser, the Indenture Trustee or the Bondholders, respectively, may request, each in its sole discretion to assure the perfection and priority of the Liens granted herein; (c) permit the City to incur all liabilities and obligations to the Purchaser, the Indenture Trustee and the Bondholders under the Revised Bond Documents, the Revised Post-Petition Facility and this Order; (d) authorize the City to pay, and the Purchaser to retain, all payments required to be made to the Purchaser, in accordance with the terms of the Revised Bond Documents, the Revised Post-Petition Facility and this Order; (e) authorize the City to pay, and the Indenture Trustee (for its own benefit and for the benefit of the Bondholders) and the Bondholders to retain and apply, all payments required to be made to the Indenture

20

13-53846-tjt  Doc 3607  Filed 04/02/14  Entered 04/02/14 15:20:49  Page 20 of 35

Trustee or the Bondholders, in accordance with the terms of the Revised Bond Documents, the Revised Post-Petition Facility and this Order; and (f) authorize Comerica Bank to exercise its rights and to comply with its obligations under and as referenced in the DACA.

12. <u>Perfection of Liens</u>. This Order shall be conclusive evidence of the validity, perfection and priority of the Liens without the necessity of filing or recording any financing statement, mortgage, notice or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including entering into any deposit account control agreement, mortgages or deeds of trust) to validate or perfect (in accordance with applicable non-bankruptcy law) the Liens or to entitle the Purchaser, the Indenture Trustee and the Bondholders to the Liens and priorities granted herein and in the Revised Bond Documents.

13. <u>Right to Take Actions to Perfect</u>. Notwithstanding the foregoing, the Purchaser, the Indenture Trustee and the Bondholders are authorized, but not required, to file and obtain, as each deems necessary in its sole discretion, such financing statements, notices of liens, control agreements, supplemental bond documents and other security documents to perfect in accordance with applicable non-bankruptcy law, or take constructive control over assets, or take any other action, in each case, to validate and perfect the Liens, and all such financing

21

statements, notices, control agreements and other security documents shall be deemed to have been filed or recorded as of the date of entry of this Order; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the Liens. The City is authorized and directed to execute and deliver promptly upon demand to the Purchaser or the Indenture Trustee all such financing statements, notices, control agreements and other security documents as the Purchaser or the Indenture Trustee may request. The Purchaser or the Indenture Trustee, each in its discretion, may file a photocopy of this Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument, and all filing offices are hereby authorized to accept such photocopy for filing and recording. For the avoidance of doubt, the automatic stay of Section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to permit the Purchaser, the Indenture Trustee and the Bondholders to take all actions, as applicable, referenced in this paragraph.

14. Proceeds of Subsequent Financing. If the City obtains credit or incurs debt pursuant to Bankruptcy Code Section 364(c) or 364(d) or in violation of the Revised Bond Documents at any time prior to the indefeasible repayment in full of all Revised Bond Obligations and the satisfaction of the Superpriority Claims, including after the confirmation of any plan of adjustment filed in the Case, and such

facilities are secured by any Collateral, then, in addition to any remedies that may be available to the Purchaser, the Indenture Trustee and the Bondholders under the Revised Bond Documents, all the cash proceeds derived from such credit or debt shall immediately be turned over to the Indenture Trustee, to be applied as set forth in the Revised Bond Documents and this Order.

15. <u>Maintenance of Collateral</u>.  Until the indefeasible payment in full of all Revised Bond Obligations and the satisfaction of the Superpriority Claims, the City shall maintain: (a) the Collateral as required under the Revised Bond Documents; and (b) the cash management system as required by the Revised Bond Documents.

16. <u>Disposition of Collateral</u>.

(a)     Except as otherwise provided for in the Revised Bond Documents or the DACA, the City shall not grant a lien on or transfer any interests in any portion of the Collateral in any way inconsistent with the Revised Bond Documents or without the prior written consent of the Indenture Trustee (or, prior to the issuance of the Bonds, the prior written consent of the Purchaser).

(b)     In the event of any sale, lease or other disposition of any Collateral (a "<u>Collateral Disposition</u>"), the City shall, to the extent required by the Revised Bond Documents, pay, or cause to be paid, to the Indenture Trustee the proceeds of such Collateral Disposition for application in accordance with the Revised Bond Documents and this Order. All such proceeds of any Collateral

Disposition shall be applied in accordance with the terms and conditions of the Revised Bond Documents.

17. <u>Reporting reinvestment/revitalization spending</u>. Within 30 days after the Closing Date, the City will produce in its electronic data site for review by creditors a revised indicative schedule of spending of the proceeds of the Revised Post-Petition Facility (with monthly detail) with at least the same line items that are contained in the reinvestment spending plan dated October 10, 2013 provided by the City to creditors (a "<u>Revised Plan</u>"). Proceeds of the Revised Post-Petition Facility will be placed in a segregated account (the "<u>Quality of Life Account</u>") that will be drawn upon as approved, appropriated and budgeted reinvestment spending plan projects are invoiced and require payment. Such projects may extend beyond those listed in the Revised Plan. The City will track actual disbursements from the Quality of Life Account, and will provide, on a monthly basis, a report of actual disbursements, including a description of the disbursements. Additionally, advisors to the City will provide a quarterly call for creditors and stakeholders and their financial advisors to discuss the contents of each report.

18. <u>Overall general fund financial condition</u>. Within 30 days after the closing of the Revised Post-Petition Facility, the City will provide in its electronic data site a revised monthly cash flow forecast through Fiscal Year 2015 (the "<u>Revised Forecast</u>") consistent with the "DIP Forecast" format previously presented

by the City to creditors and potential financing providers. The City will provide in its electronic data site, on at least a quarterly basis, a report that includes actual performance (by month) against forecasted performance (by month) on the line items contained in Revised Forecast. The City will reforecast the remaining periods of the Revised Forecast, and determine whether to extend the Revised Forecast, on a quarterly basis. Additionally, advisors to the City will provide a quarterly call for creditors and stakeholders and their financial advisors to discuss the contents of each report.

19. <u>Maturity Date</u>. Upon the earliest to occur (such earliest date, the "<u>Maturity Date</u>") of (a) the date that is two years and six months after the Closing Date; (b) the effective date of a confirmed plan of adjustment filed in the Case; (c) the acceleration of the Bonds under the Revised Bond Documents; and (d) dismissal of the Bankruptcy Case, the Revised Bond Obligations shall be immediately due in accordance with the terms of the Revised Bond Documents.

20. <u>No Dismissal</u>. The Revised Bond Obligations shall be indefeasibly paid in full in cash prior to, and notwithstanding, any dismissal of the Case unless otherwise agreed to by the Indenture Trustee, upon the consent of all Bondholders, and this Court or the United States District Court for the Eastern District of Michigan shall retain jurisdiction to enforce this Order.

21. <u>Events of Default</u>. The occurrence of an "Event of Default" under the

Revised Bond Documents or any violation of the terms of this Order shall constitute an event of default under this Order ("Event of Default"), unless waived in writing by the Indenture Trustee, upon consent of the Bondholders in accordance with the Revised Bond Documents (or, prior to the issuance of the Bonds, waived in writing by the Purchaser)..

22. Rights and Remedies Upon Event of Default. Immediately upon the occurrence and during the continuation of an Event of Default, the Indenture Trustee, on its own or upon the direction of the Bondholders in either case in accordance with the Revised Bond Documents, may, among other things, declare all Revised Bond Obligations owing under the Revised Bond Documents to be immediately due and payable in accordance with the terms of the Revised Bond Documents, but without affecting any of the Liens or the Revised Bond Obligations (any such declaration, a "Termination Declaration"). The Termination Declaration shall be given by electronic transmission as provided in the Revised Bond Documents (the date any such Termination Declaration is made, the "Termination Declaration Date"). Following the Termination Declaration Date, the Indenture Trustee, on behalf of the Bondholders, shall be entitled to enforce its rights and remedies under the Revised Bond Documents without further order or approval from this Court.

23. Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Order. The Indenture Trustee, on behalf of the

Bondholders, and the Purchaser have acted in good faith, as that term is used in Section 364(e) of the Bankruptcy Code, in connection with this Order and their reliance on this Order is in good faith. Based on the findings set forth in this Order and the record made during the Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Order are hereafter reversed, modified, amended or vacated by a subsequent order of this Court or any other court, the Purchaser, the Indenture Trustee and the Bondholders are entitled to the protections provided in Section 364(e) of the Bankruptcy Code. Any modification, amendment or vacatur shall not affect the validity or enforceability of the Revised Bond Obligations or any Lien, claim (including the Superpriority Claim) or priority authorized or created hereby. Any liens or claims granted to the Purchaser, the Indenture Trustee or the Bondholders hereunder arising prior to the effective date of any such reversal, modification, amendment or vacatur of this Order shall be governed in all respects by the original provisions of this Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

24. <u>Section 921(e) of the Bankruptcy Code; No Modification or Stay of this Order</u>. In accordance with Section 921(e) of the Bankruptcy Code, in the event any or all of the provisions of the order for relief or any order finding jurisdiction is reversed, modified, amended or vacated by this Court or any other court, the Purchaser, the Indenture Trustee and the Bondholders are entitled to the protections

provided in Section 921(e) of the Bankruptcy Code. Any such reversal,

modification, amendment or vacatur shall not affect the validity or enforceability of

the Revised Bond Obligations or any Lien, claim (including the Superpriority Claim)

or priority authorized or created by this Order. Any Liens or claims granted to the

Purchaser, the Indenture Trustee and the Bondholders hereunder arising prior to the

effective date of any such reversal, modification, amendment or vacatur shall be

governed in all respects by the original provisions of this Order, including

entitlement to all rights, remedies, privileges and benefits granted herein.

      25.   <u>Proofs of Claim</u>.  The Purchaser, the Indenture Trustee and the

Bondholders are not required to file proofs of claim in the Case to assert any claim in

the Case against the City in respect of the Revised Bonds.  Any order entered by the

Court in relation to the establishment of a bar date in the Case shall not apply to the

Purchaser, the Indenture Trustee or the Bondholders, and each of the Purchaser, the

Indenture Trustee and each Bondholder is hereby authorized and entitled, in its sole

discretion, but not required, to file (and amend and/or supplement, in its discretion) a

proof of claim and/or aggregate proofs of claim in the Case for any claim authorized

under this Order.

      26.   <u>Rights of Access and Information</u>. Without limiting the rights of access

and information afforded the Purchaser, the Indenture Trustee and Bondholders

under the Revised Bond Documents, the City shall afford representatives, agents or

employees of the Purchaser, the Indenture Trustee or the Bondholders reasonable access to the City's books and records in accordance with the Revised Bond Documents and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, the City shall authorize its independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the Indenture Trustee, on behalf of the Bondholders, all such information as may be reasonably requested with respect to the financial condition of the City to the extent required by the Revised Bond Documents. All Bondholders who have agreed to keep such information confidential on terms consistent with the Revised Bond Purchase Agreement will be provided access by the City to all information (including via a virtual data room) provided to Bondholders in connection with the Revised Post-Petition Facility.

27.    <u>Limitations on the Post-Petition Facility and the Collateral</u>.  The Revised Post-Petition Facility and the Collateral and their proceeds may not be used in connection with: (a) preventing, hindering or delaying any of the Purchaser's, the Indenture Trustee's or the Bondholders' enforcement or realization upon any of the Collateral once an Event of Default has occurred; (b) any act that seeks to use or uses such assets in a manner that is not permitted by the Revised Bond Documents; (c) objecting or challenging in any way any claims, Liens or Collateral held by or on

behalf of any of the Purchaser, the Indenture Trustee or the Bondholders; (d) asserting, commencing or prosecuting any claims or causes of action, including any actions under chapter 5 of the Bankruptcy Code, against any of the Purchaser, the Indenture Trustee, the Bondholders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; (e) prosecuting or supporting an objection to, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of any of the Revised Bond Obligations, the Liens or any other rights or interests of any of the Purchaser, the Indenture Trustee or the Bondholders; (f) prosecuting or supporting an objection to, or contesting in any manner, the order for relief; or (g) taking any action which is contrary, in a manner that is material and adverse to the Purchaser, the Indenture Trustee or the Bondholders, to any term or condition set forth in the Revised Bond Documents or this Order.

28. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party who is not expressly referenced in this Order, any creditor or any direct, indirect or incidental beneficiary.

29. <u>Section 506(c) Claims</u>. Upon entry of this Order, no claims, costs or expenses incurred in the Case or by the City at any time shall be charged against the Purchaser, the Indenture Trustee, the Bondholders or any of their respective claims

or against the Collateral pursuant to Section 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Indenture Trustee (or, in the case of any such charges against the Purchaser or its claims, the prior written consent of the Purchaser).

30. <u>No Marshaling/Applications of Proceeds</u>. The Purchaser, the Indenture Trustee and the Bondholders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral and proceeds shall be received and applied pursuant to the Revised Bond Documents and this Order.

31. <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Purchaser, the Indenture Trustee or the Bondholders: (a) to seek any other or supplemental relief in respect of the City; or (b) to request modification of the automatic stay of Section 362 or 922 of the Bankruptcy Code.

32. <u>No Waiver by Failure to Seek Relief</u>. The failure of the Purchaser, the Indenture Trustee or the Bondholders to seek relief or otherwise exercise their rights or remedies under this Order, the Revised Bond Documents, the Fee Letter or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Purchaser, the Indenture Trustee or the

Bondholders.

33. <u>No Waiver by Seeking Relief</u>. Except to the extent this Order (other than paragraphs 10, 17 and 18) provides otherwise, (i) neither the filing of the Motion nor anything herein shall constitute a waiver of any right of the City to take any action, including with respect to the Revised Post-Petition Facility, without approval of the Court, (ii) nor shall the filing of the Motion or the entry of this Order be deemed to constitute the City's consent, pursuant to Section 904 of the Bankruptcy Code, to this Court's interference with (a) any of the political powers of the City, (b) any of the property or revenues of the City or (c) the City's use or enjoyment of any income-producing property, other than as required in connection with the enforcement by the Purchaser, the Indenture Trustee or the Bondholders of their respective rights in connection with the Revised Bond Documents.

34. <u>Binding Effect of Order</u>. Immediately upon execution by this Court, the terms and provisions of this Order shall become valid and binding upon the City, the Purchaser, the Indenture Trustee, the Bondholders, all creditors of the City, any committee appointed in the Case and all other parties in interest and their respective successors and assigns, including upon dismissal of the Case.

35. <u>No Modification of Order</u>. Until and unless the Revised Bond Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the Revised Bond Documents that

by their terms survive such discharge), the City irrevocably waives the right to seek and shall not seek or consent to, directly or indirectly, without the prior written consent of the Purchaser (if such action is to be taken before or within 90 days after the issuance of the Revised Bonds) or the Indenture Trustee (if such action is to be taken after the issuance of the Revised Bonds), in each case, in its sole discretion, (i) any modification, stay, vacatur or amendment to this Order or the order for relief in a manner adverse to the Purchaser, the Indenture Trustee or the Bondholders; (ii) any claim against the City (now existing or hereafter arising of any kind or nature whatsoever, including any administrative expense of the kind specified in Section 503(b), 506(c) or 507(a) of the Bankruptcy Code) equal or superior to the Superpriority Claims; or (iii) any lien on any of the Collateral with priority equal or superior to the Liens (except as specifically provided in the Revised Bond Documents). The City irrevocably waives any right to seek any amendment, modification or extension of this Order without the prior written consent of the Purchaser (if such action is to be taken prior to the issuance of the Bonds) or the Indenture Trustee (if such action is to be taken after the issuance of the Bonds), in each case, in its sole discretion.

36. <u>Order Controls</u>. In the event of any inconsistency between the terms and conditions of the Bond Documents and this Order, the provisions of this Order shall govern and control.

37.     <u>Survival</u>.  The Superpriority Claim and Liens and the other provisions of this Order and any actions taken pursuant hereto shall survive entry of any order that may be entered: (a) confirming any plan of adjustment in the Case; (b) dismissing the Case; or (c) pursuant to which this Court abstains from hearing the Case.  Any order dismissing the Case shall provide that (A) the Revised Bond Obligations, the Superpriority Claim and the Liens granted to the Purchaser, the Indenture Trustee and the Bondholders shall continue in full force and effect and shall maintain their priorities as provided in this Order and the Revised Bond Documents until all Revised Bond Obligations have been paid in full in cash (such payment being without prejudice to any terms or provisions contained in the Revised Post-Petition Facility or the Revised Bond Documents that by their terms survive such discharge) and (B) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the Revised Bond Obligations, Superpriority Claim and Liens referred to in clause (A) above. The terms and provisions concerning the indemnification of the Purchaser, the Indenture Trustee and the Bondholders contained in the Revised Bond Documents and in the Commitment Letter, as amended, shall continue in the Case, following dismissal of the Case, termination of the Revised Bond Documents, the Commitment Letter and the Revised Post-Petition Facility and the indefeasible repayment of the Revised Bond Obligations. The terms of this paragraph 37 are without prejudice to and are

not intended to limit, in any way, the effect of paragraph 20 hereof.

38.    <u>Effect of this Order</u>.  This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  This Order shall be immediately effective upon its entry.

39.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction, including after dismissal, after the effective date of a plan of adjustment confirmed in the Case or the closing of the Case, to enforce this Order according to its terms.

.

**Signed on April 02, 2014**

    _____/s/ Steven Rhodes_____
    **Steven Rhodes**
    **United States Bankruptcy Judge**