## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## (DETROIT)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | CASE NO.: 13-53846 |
| | ) | |
| | ) | CHAPTER 9 |
| Debtor. | ) | |
| | ) | Hon. Steven W. Rhodes |
| | ) | |

_____

## WATER AND SEWER TRUSTEE AND AD HOC BONDHOLDER COMMITTEE'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEBTOR

_____

U.S. Bank National Association ("U.S. Bank"), in its role as Trustee (the "Trustee") for the outstanding water and sewer bonds (the "Bonds") issued by the City of Detroit (the "City"), and the Ad Hoc Bondholder Committee[1] pursuant to Rule 7034 of the Federal Bankruptcy Rules and Rules 34 of the Federal Rules of Civil Procedure, propounds their First Request for Production of Documents to the City. The Trustee and Ad Hoc Bondholder Committee request that the City respond to this discovery and produce documents within thirty days, or as otherwise required by law, at the offices of the Trustee's local counsel, Bodman PLC, 1901 St. Antoine Street, Sixth Floor, Detroit Michigan, 48226, unless otherwise agreed by the parties or ordered by the Court.

### Definitions and Instructions

A. All capitalized terms not otherwise defined in this request shall have the same meanings given to them in (1) the Trust Indenture among the City, Detroit Water and Sewerage

_____

[1] The Ad Hoc Bondholder Committee members are Fidelity Management & Research Company, Eaton Vance Management, Franklin Advisors, Inc., Nuveen Asset Management, and BlackRock Asset Management, Inc.

11594342

Department and Trustee relating to the Outstanding Secured Obligations of the Detroit Water and Sewerage Department (Sewage Disposal System), dated as of June 1, 2012 (the "Sewer Indenture"), and (2) the Trust Indenture among the City, Detroit Water and Sewerage Department and Trustee, relating to the Outstanding Secured Obligations of the Detroit Water and Sewerage Department (Water Supply System), dated as of February 1, 2013 (the "Water Indenture," together with the Sewer Indenture, the "Indentures").

B.      The term "Bankruptcy Case" shall mean the City's chapter 9 case.

C.      The term "Bonds" shall mean and refer to the special revenue water and sewer bonds issued by the City pursuant to the Ordinances, Indentures and related supplemental actions.

D.      The term "Capital Expenditures" shall mean costs incurred for the addition, replacement, improvement, or enhancement of a fixed asset, to the extent such costs are properly chargeable to a fixed capital account pursuant to generally accepted accounting principles.  This term shall include, without limitation, expenditures for vehicles and equipment, including to replace worn, lost, or destroyed vehicles and equipment, and expenditures for internal labor.

E.      The term the "City" or the "Debtor" shall mean and refer to the City of Detroit, Michigan.

F.      The term "Disclosure Statement" shall mean the *Amended Disclosure Statement with Respect to Amended Plan for the Adjustment of Debts of the City of Detroit* (Docket No. 3382), as amended from time to time.

G.      The term "Document(s)" shall be interpreted in the broad and liberal sense and means written, typed, printed, recorded, graphic or photographic matter or any other medium upon which intelligence or information can be recorded, stored, or retrieved, however produced

or reproduced, of any kind and description, and whether an original, master, duplicate or copy, including, but not limited to, paper, notes, accounts, books, journals, advertisements, catalogs, manuals, publications, correspondence, cablegrams, mailgrams, telegrams, memoranda, letters, documents, communications, including interoffice and intra-office communications, reports, studies, analyses, pamphlets, calculations, projections, contracts, charts, graphs, plans, specifications, drawings, sketches, surveys, agreements, working papers, corporate records, minutes of committee meetings, books of account, ledger books, notebooks, vouchers, bank checks, cashier's checks, receipts for cashier's check, canceled checks, check stubs, bills, receipts, invoices, delivery tickets, bills of lading, time sheets, desk calendars, appointment books, log books, diaries, diary entries, photographs, microfilm, microfiche, and notes, minutes, transcriptions or sound recordings of any conversations, negotiations, meetings or conferences, conducted either in person or by telephone, or things similar to any of the foregoing, and all other papers, writings or physical things containing information, including data compilations from which information can be obtained by detection devices, and including preliminary drafts of or marginal notes appearing on any document, however denominated or described.

H.      The term "DWSD" shall mean and refer to the City of Detroit Water and Sewerage Department.

I.      The term "Fiscal Year" shall mean the twelve-month period of time ending June 30 of the year stated. For example, "Fiscal Year 2014," refers to the period of time from July 1, 2013 to June 30, 2014.

J.      The term "GLWA" shall mean and refer to the Great Lakes Water Authority or any transferee of the Systems by DWSD, in whole or in part.

K.      The term "GRS" shall mean the General Retirement System for the City.

11594342

L.      The term "Material" shall mean 6% or more.

M.      The term "Net Revenues" shall have the same meaning as that term has in the Indentures.

N.      The term "Petition Date" shall refer to July 18, 2013, when the City filed a voluntary petition for relief under chapter 9 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

O.      The term "Plan" shall mean the City's *Amended Plan for the Adjustment of the Debts of the City of Detroit*, dated March 31, 2014 (Docket No. 3380), as amended from time to time.

P.      The term "Gabriel Roeder" shall mean Gabriel Roeder Smith & Company.

Q.      The term "Sewer System" shall mean the Sewage Disposal System of the City, as further described in the Sewer Indenture.

R.      The term "Systems" shall refer to either or both the Sewer System or the Water System, as the context requires.

S.      The terms "System Asset" or "System Assets" shall mean one or all of the assets, as the context shall dictate, that comprise both the Sewer System and the Water System, including, without limitation, all real estate holdings, tangible assets and intangible assets. Tangible assets include, without limitation, all pipes, pumping stations, and waste water treatment plants of the Systems. Intangible assets include, without limitation, all computer software, operating licenses and environmental permits, wastewater historical testing documentation on file, engineering drawings and system maps, trained and assembled workforce, goodwill and going concern value.

4

T.     The term "Water System" shall mean the City's Water Supply System, as further described in the Water Indenture.

U.     The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make each particular request inclusive rather than exclusive.

V.     The term "relating to" shall mean in whole or in part and directly or indirectly relating to, pertaining to, connected with, concerning, commenting on, referring to, responding to, showing, evincing, describing, analyzing, regarding, reflecting, or constituting.

W.     Form of Production. The following form of production is requested: single-page TIFF images that are unitized by document, with text files, with metadata, and with accompanying Concordance load files.  Provide metadata that can be extracted for a document for custodian, file path, email subject, from, to, cc, bcc, date sent, time sent, date received, time received, filename, author, date created, date modified, file extension, bates number begin, bates number end, attachment range, attachment begin, and attachment end.   For metadata that cannot be extracted from a document, provide only custodian, bates number begin, bates number end, attachment begin, and attachment end.   The data may be globally de-duplicated to eliminate exact duplicates.   All images must be assigned a unique and sequential Bates number. Production for particular file types is as follows:

1.     Hard-copy documents. Electronically-stored documents should not be reduced to paper.  All documents regularly maintained in paper or hard-copy files should be scanned and produced in single-page TIFF images that are unitized by document, with text files, with metadata for custodian, and with accompanying Concordance load files.

2.     Standard Electronic Documents. Standard electronic documents, such as those created by standard Microsoft office products, including Microsoft Outlook and Word,

WordPerfect, Google Docs, PDF documents, and image files such as JPEG or GIF files, should be produced in single-page TIFF images as described above. When producing e-mail files, maintain parent-child relationships with e-mails and attachments.

3. <u>Spreadsheet Files</u>. All Microsoft Excel, Google Trix, and other spreadsheets should be produced in native format, with a TIFF image as a placeholder for the file to represent the file in the production set. The TIFF image placeholder for the native file should be branded with a unique Bates number and state "See Native Document" on the TIFF image. The native file should then be renamed to match the Bates number assigned to the document with its original file extension. The file name field produced in the production load file that reflects the original metadata should maintain the original file name.

4. <u>Presentation Files</u>. All Microsoft PowerPoint, Google Presently, and other presentation files should be processed to include hidden slide and speaker's notes by imaging in a way that both the slide and the speaker's notes display on the TIFF image. Presentation files should be produced in single-page TIFF images as described above.

5. <u>Database Files</u>. For any Microsoft Access, Paradox, and other database files that are potentially responsive, opposing counsel will confer with respect to acceptable queries to make directly of the underlying dataset and application. Resulting reports should be produced in single-page TIFF images as described above.

6. <u>GIS Files</u>. All GIS files, maps, or layers should be produced in a format viewable in a PDF viewer. Include a TIFF image as a placeholder for the file as required for spreadsheet files in the above item 3.

7. <u>Other File Types</u>. For all other file types, opposing counsel should confer to discuss the appropriate form of production.

X.      Time Period for Requested Documents. Unless otherwise indicated, these requests seek Documents created on or after the start of Fiscal Year 2009 to the present.

Y.      Privilege. If the City refuses to produce any Document called for in this Request, the City shall produce, in writing, a privilege log, in compliance with Rule 7026 of the Federal Bankruptcy Rules and Federal Rule 26 (b)(5)(A)(i) and (ii), that contains sufficient information to allow the Trustee and the Ad Hoc Bondholder Committee to make a determination as to whether to challenge the assertion of privilege.

## DOCUMENTS REQUESTED

A.      Financial Results and Projections.

8.      Documents showing DWSD's financial results for Fiscal Years 2009 through 2013 and year-to-date for Fiscal Year 2014, including, but not limited to:

        a)      Historical statements of cash flows;

        b)      Balance sheets (actual);

        c)      Notes to the historical financial statements;

        d)      Auditors' reports on the historical financial statements;

        e)      Documents showing historical volumetric use, revenue and rate tariff by customer rate class and service/geographic area;

        f)      All disbursements made from the gross revenues of each System for administration, operation, maintenance, and Capital Expenditures;

        g)      Any disbursements from the gross revenues of each System which were not used for the administration, operation, maintenance, or Capital Expenditures of such System;

11594342

h) To the extent not provided in response to the requests above, Documents showing historical financial results related to pension expense; labor expense by category; operating expenses by category (i.e. power, chemicals, etc.); disbursements from DWSD to other City Departments, to the City's General Fund, or to any retirement plan for City employees; costs for employee healthcare, insurance and other benefits; costs for pension and other postemployment benefits; employee headcount; bad debt expense by customer rate class and/or wholesale customer; days sales outstanding; accounts receivable aging; and refinancing and future financing; and

i) Documents relating to cash flows to and from DWSD and any other City Department or the City's General Fund.

**RESPONSE:**

9. Documents showing DWSD and GLWA's financial projections for Fiscal Years 2014 through 2023. This request includes, but is not limited to:

a) Projected statements of income and cash flow and back-up documentation showing the supporting bases for such projections;

b) Notes to the projected financial statements;

c) Projected volumetric use, revenue and rate tariff by customer rate class and service/geographic area and back-up documentation showing the supporting bases for such projections;

d) Documents showing any other projected sources of revenue and back-up information sufficient to show the bases for such projections;

e)      Any disbursements from the gross revenues of each System which will be made for administration, operation, maintenance, and Capital Expenditures;

f)      Any disbursements from the gross revenues of each System which will not be used for the operation, maintenance, or Capital Expenditures of such System;

g)      To the extent not provided in response to the requests above, Documents sufficient to show projections related to pension expense; labor expense by category; operating expenses by category (i.e. power, chemicals, etc.); disbursements from DWSD to other City Departments, to the City's General Fund, or to any retirement plan for City employees; costs for employee healthcare, insurance and other benefits; costs for pension and other postemployment benefits; employee headcount; bad debt expense by customer rate class and/or wholesale customer; days sales outstanding; accounts receivable aging; and refinancing and future financing; and

h)      Documents relating to projected cash flows to and from DWSD and any other City Department or the City's General Fund.

**RESPONSE:**

B.      Operations

10.      The most recent cost of services study done for the City regarding each of the Systems.

**RESPONSE:**

11.    Documents showing the average and median bills by customer rate class, including customer rate classes in the surrounding counties and cities.

**RESPONSE:**


12.    Documents reflecting any study, assessment, estimate or opinion regarding historical or future System rates, Capital Expenditures, volumes by customer rate class and service/geographic location, and/or operating expenses.

**RESPONSE:**


13.    All work done by DWSD's rate consultant in conjunction with DWSD's Root Cause Committee's Final Report, dated as of March 13, 2013, and referenced on page 4 of that report.

**RESPONSE:**


14.    Documents that refer to the prospect of any wholesale or retail customers or groups of customers discontinuing use of the Systems and leading to a Material decrease in gross revenue.

**RESPONSE:**


15.    Documents evincing the number of customer accounts by customer rate class for Fiscal Years 2009 through 2013 and projections for Fiscal Years 2014 through 2023.

11594342

**RESPONSE:**

16.     Documents evincing the City and/or DWSD's historical and current process of billing and collecting for each System.

**RESPONSE:**

17.     Documents evincing any valuation, assessment, opinion or estimate of the capacity or condition of either System, the Systems together, and/or facilities of each System, including, but not limited to, individual treatment plants, pumping stations, storage tanks, sewer overflow retention basis, and buried infrastructure.

**RESPONSE:**

18.     Any and all opinions, assessments, studies or reports reflecting current and projected optimal employee headcounts for DWSD.

**RESPONSE:**

C.     <u>System Assets</u>.

19.     Documents cataloging System Assets, and any valuation, assessment, estimate or appraisals for either System, the Systems together, and/or facilities of each System, including, but not limited to, individual treatment plants, pumping stations, storage tanks, sewer overflow retention basis, and buried infrastructure.

**RESPONSE:**

D.      "Legacy" Liabilities.

20.      Documents evincing the calculation and allocation of all pension, other postemployment benefits, and any Certificates of Participation-related payments assessed against the Systems historically and that are projected through any projection period under the Plan.

**RESPONSE:**

21.      Documents that reflect the estimated or actual current market value of GRS assets.

**RESPONSE:**

22.      Documents that reflect any update to June 30, 2013 (or beyond) of the actuarial valuations performed by Gabriel Roeder for the GRS as of June 30, 2012, based on or using the methods, assumptions, and procedures used by Gabriel Roeder.

**RESPONSE:**

23.      Documents that reflect the calculation of the GRS's OPEB Claims (as defined in the Plan) as reflected in the Disclosure Statement and the Plan, including, without limitation, the underlying assumptions and methods used in the calculations.

**RESPONSE:**

24.     Documents that reflect the total amount of the GRS's OPEB Claims paid or projected to be paid from the Petition Date to the Effective Date (as defined in the Plan).

**RESPONSE:**

E.     Funds, Accounts, and Policies.

25.     Documents evincing amounts held in the Operation and Maintenance Funds and the Construction Funds for the Systems.

**RESPONSE:**

26.     Documents evincing any accounts of the Systems not controlled by the Trustee and the balances in such accounts, reflecting the cash in and out of the accounts, from Fiscal Year 2013 and year-to-date for Fiscal Year 2014.

**RESPONSE:**

F.     Regulations/Capital Expenditures.

27.     Documents detailing any anticipated Material Capital Expenditures to be funded after Fiscal Year 2024.

**RESPONSE:**

28.     Documents reflecting any opinion, assessment, estimate or study which has assessed the Capital Expenditure needs of the Systems that are more current than DWSD's 10-year CIP (Capital Improvement Program) dated September 24, 2013.

**RESPONSE:**


29.     Documents describing or evincing any DWSD hardship exemptions with the Environmental Protection Agency and/or the Michigan Department of Environmental Quality.

**RESPONSE:**


30.     Documents supporting financial capability analysis to establish DWSD hardship exemptions provided to or received from the Environmental Protection Agency and/or the Michigan Department of Environmental Quality.

**RESPONSE:**


31.     Documents reflecting the Material operating expenses and Capital Expenditures to be incurred both with and without DWSD hardship exemptions with the Environmental Protection Agency and/or the Michigan Department of Environmental Quality.

**RESPONSE:**

G.      Labor.

32.      Documents evincing or referring to "feather-bedding" within DWSD, and any and all opinions, assessments, studies or reports reflecting any proposed solutions to such issues.

**RESPONSE:**

33.      Documents evincing all communications between or among the City, DWSD, union or other labor representatives for employees of DWSD, and any other parties regarding a potential disposition or "monetization" of the Systems.

**RESPONSE:**

34.      Documents reflecting any severance pay policies for DWSD employees.

**RESPONSE:**

H.      Rate-Setting.

35.      Documents evincing all rate-setting agreements and negotiations regarding the same with all municipal counterparties, including, but not limited to, Clinton County, Macomb County, Oakland County, and Wayne County.

**RESPONSE:**

11594342

I.    "Monetization" of the Systems.

36.    Documents relating to the prospect of forming or plan to form any regional authority or private enterprise to operate, manage, and/or own the Systems.

    **RESPONSE:**

37.    Documents evincing all rate-setting agreements and negotiations regarding the same with all municipal counterparties, including, but not limited to, Clinton County, Macomb County, Oakland County, and Wayne County.

    **RESPONSE:**

38.    Documents evincing negotiations, agreements or understandings with any municipal counterparties, including, without limitation, Clinton County, Macomb County, Oakland County, Wayne County, and any other County or entity (public or private) regarding disposition or "monetization" of the Systems or altering rates chargeable by the Systems.

    **RESPONSE:**

39.    Documents containing any opinion, assessment, report or analysis of the City's or DWSD's ability to reject or unilaterally modify, on a non-consensual basis, any of the agreements with the municipal counterparties.

    **RESPONSE:**

16

40.     Documents referring to any alternatives the municipal counterparties have to DWSD's water and/or sewer services.

**RESPONSE:**

41.     Documents sent to, received by, or made available for inspection by parties participating in the Request for Information for Potential Operators of Detroit Water and Sewage Disposal Systems for Detroit Water and Sewerage Department ("DWSD"), issued by The City of Detroit and Kevyn D. Orr, Emergency Manager, requesting initial responses by April 7, 2014, including, but not limited to, any confidential information memoranda provided to such parties.

**RESPONSE:**

42.     A listing of the professional, consulting, advisory or other related fees and expenses of professionals engaged by the City to be charged to either System in connection with the City's chapter 9 bankruptcy or any transfer of either System contemplated in the Plan.

**RESPONSE:**

11594342

Plan.[2]

43.    Reports, whether generated internally or by outside consultants, regarding the appropriate interest rate and comparables utilized in creating the Interest Rate Reset Chart, attached as Exhibit I.A.159 to the City's proposed Plan.

**RESPONSE:**

44.    The following exhibits (or current versions thereof) to the Plan:

a)    Form of New DWSD Bond Documents,

b)    Form of New Existing Rate DWSD Bond Documents,

c)    Form of New Existing Rate GLWA Bond Documents,

d)    Form of New GLWA Bond Documents, and

e)    Form of New GLWA Revolving Bond Documents.

**RESPONSE:**

45.    Documents relating to the procurement of municipal bond insurance for any new bonds to be issued under the Plan.

**RESPONSE:**

---

[2] Capitalized terms used in this section of the Request for Production of Documents but not otherwise defined herein bear the meaning ascribed to such term in the Plan.

46.     Documents relating to the procurement of public ratings for any new bonds to be issued under the Plan.

**RESPONSE:**


47.     Documents that reflect the proposed governance structure of the GLWA.

**RESPONSE:**


48.     Documents that reflect whether DWSD or GLWA will be a "stand-alone" enterprise with or without a DWSD Transaction, such that all administrative functions, such as human resources, information technology, and legal services, will be performed exclusively within the enterprise.

**RESPONSE:**


K.     Hearings.

49.     All Documents that the City intends to or may use as exhibits or evidence or for any purpose at the Confirmation Hearing or at any other hearing related or ancillary to confirmation of the Plan, including without limitation hearings related to the approval of the Disclosure Statement.

**RESPONSE:**

50.     All Documents that the City has provided or intends to provide to any witness that it intends to call to testify at the Confirmation Hearing or at any other hearing related or ancillary to confirmation of the Plan, including without limitation hearings related to the approval of the Disclosure Statement.

**RESPONSE:**

51.     The biography, education and work history, or *curriculum vitae* of any person the City intends to call as a fact witness at the Confirmation Hearing or at any other hearing related or ancillary to confirmation of the Plan, including without limitation hearings related to the approval of the Disclosure Statement.

**RESPONSE:**

52.     The most current resume or *curriculum vitae* for each person the City intends to call to testify as a potential expert witness at the Confirmation Hearing or at any other hearing related or ancillary to confirmation of the Plan, including without limitation hearings related to the approval of the Disclosure Statement.

**RESPONSE:**

53.     All Documents, including reports, models, or data compilations, which have been provided to, reviewed by, or prepared by or for any expert witnesses for purposes related to the Disclosure Statement or the Plan.

11594342

**RESPONSE:**


    L.      <u>Other</u>.

    54.    The current organizational chart for DWSD and any proposed changes to occur on or after the Effective Date (as defined in the Plan).

**RESPONSE:**


    55.    Documents sent to, received by, or made available for inspection by parties participating in the Request for Proposal for Underwriting Services, issued by The Michigan Department of Treasury and the Michigan Finance Authority (on behalf of the City of Detroit and the Detroit Water and Sewerage Department), dated as of March 12, 2014.

**RESPONSE:**


    56.    Documents reviewed, identified, or relied upon in answering any interrogatories sent by holders of bonds issued by the DWSD or municipal bond insurers insuring bonds issued by the DWSD.

**RESPONSE:**

11594342

13-53846-tjt   Doc 3766   Filed 04/03/14   Entered 04/03/14 19:14:56   Page 21 of 23

Dated: April 3, 2014

/s/ *Courtney Rogers*
David E. Lemke (TN13586)
Michael R. Paslay (TN011092)
Ryan K. Cochran (TN025851)
Courtney M. Rogers (TN25664)
WALLER LANSDEN DORTCH & DAVIS
 LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Phone: (615) 244-6380
Fax: (615) 244-6804
– and –
Robert J. Diehl, Jr. (MI31264)
Jaimee L. Witten (P70068)
BODMAN PLC
1901 St. Antoine Street, 6th Floor
Detroit, Michigan 48226
Phone: (313) 393-7597
Fax: (313) 393-7579

*Attorneys for U.S. Bank National Association,*
*as Trustee for the Water and Sewer Bonds*

/s/ *Greg Horowitz*
Amy Caton
Greg Horowitz
KRAMER LEVIN NAFTALIS & FRANKEL,
 LLP
1177 Avenue of the Americas
New York, New York 10036
Tel: (212) 715-9100
Fax: (212) 715-8000
– and –
Geoffrey T. Pavlic
STEINBERG SHAPIRO & CLARK
25925 Telegraph Road
Suite 203
Southfield, MI 48033
Tel: (248) 352-4700
Fax: (248) 352-4488

*Attorneys for Nuveen Asset Management, and*
*BlackRock Asset Management, Inc., members*
*of the Ad Hoc Bondholder Committee*


/s/ *William W. Kannel*
William W. Kannel
Adrienne K. Walker
MINTZ, LEVIN, COHN, FERRIS,
 GLOVSKY and POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel: 617-542-6000
Fax: 617-542-2241
– and –
Andrew J. Gerdes
ANDREW J. GERDES, P.L.C.
321 W. Lake Lansing Rd.
P.O. Box 4190
East Lansing, MI 48826-4190
Tel: (517) 853-1300
Fax: (517) 853-1301

*Attorneys for Fidelity Management &*
*Research Company, Eaton Vance*
*Management, and Franklin Advisers, Inc.,*
*members of the Ad Hoc Bondholder Committee*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Request for Production of Documents to Debtor was served via email and overnight delivery on the following on the 3rd day of April, 2014:

Ms. Heather Lennox          Mr. Bruce Bennett
Jones Day                   Jones Day
222 East 41st Street        555 South Flower Street
New York, New York 10017   50th Floor
                           Los Angeles, California 90071

I hereby further certify that the foregoing was filed and served by the Court's electronic case filing and noticing system to all parties registered to receive electronic notices in this matter this 3rd day of April.

                                  */s/ Courtney Rogers*
                                  David E. Lemke (TN13586)
                                  Michael R. Paslay (TN011092)
                                  Ryan K. Cochran (TN025851)
                                  Courtney M. Rogers (TN25664)
                                  WALLER LANSDEN DORTCH & DAVIS LLP
                                  511 Union Street, Suite 2700
                                  Nashville, Tennessee 37219
                                  Phone: (615) 244-6380
                                  Fax: (615) 244-6804