UNITED STATES BANKRUPTCY COURT
EASTERN DIVISION OF MICHIGAN

IN RE:  
CITY OF DETROIT, MICHIGAN  
*Debtor.*

CHAPTER 9  
CASE NO. 13-53846  
HON. STEVEN W. RHODES

_____/

## JOINT OBJECTION TO CITY OF DETROIT'S DISCLOSURE STATEMENT BY CREDITORS T&T MANAGEMENT, INC., HRT ENTERPRISES, AND THE JOHN W. AND VIVIAN M. DENIS TRUST

T&T Management, Inc. ("T&T Management"), HRT Enterprises ("HRT"), and the John W. and Vivian M. Denis Trust ("Denis Trust") (together, the "Creditors") by and through their counsel, Demorest Law Firm, PLLC, state as follows for their Joint Objection to the City of Detroit's Disclosure Statement:

## INTRODUCTION

T&T Management, Inc. ("T&T Management"), HRT Enterprises ("HRT"), and the John W. and Vivian M. Denis Trust ("Denis Trust") (together, the "Creditors") hereby object to the disclosure statement filed by the City of Detroit. The Disclosure Statement fails to provide "adequate information" as required by section 1125 of the Bankruptcy Code with respect to the treatment of the Creditors' claims and the treatment of other claims for the payment of just compensation for a governmental taking of private property. Adoption of the Disclosure Statement in its present form and treatment of the Creditors as "Class 14 - Other Unsecured Claims" would be unconstitutional and would deprive the Creditors of their private property without just compensation in violation of the Fifth and Fourteenth Amendment.

1

First, the Disclosure Statement lacks information necessary to allow the Creditors, and other "interested persons" with Constitutional claims for the taking of property without just compensation, to make an informed choice regarding the Disclosure Statement. Fifth Amendment takings claims are not subject to compromise or reduction in the City's bankruptcy proceeding. However, the Disclosure Statement does not address this class of claims and it is unclear from the Disclosure Statement how the City intends to satisfy these claims.

Second, if the Disclosure Statement was accepted in its present form and treated the Creditors as "Class 14 – Other Unsecured Claims," such an outcome would be unconstitutional. Claims under Class 14 are estimated to recover only 15% of the money that they are owed. Treatment of the Creditors' claims under Class 14 would clearly be a taking of private property without just compensation.

## MEMORANDUM OF LAW

### I. Adequate Information Standard

"The purpose of the disclosure statement is not to assure acceptance or rejection of a plan, but to provide enough information to interested persons so they may make an informed choice between two alternatives." (*In re Commonwealth Group-Mocksville Partners, LP*, 2013 Bankr. LEXIS 1648 (Bankr. E.D. Tenn. 2013), *citing In re U.S. Brass Corp.*, 194 B.R. 420, 423 (Bankr. E.D. Tex. 1996).

11 U.S.C.S. § 1129(a)(2) requires that the proponent of a plan comply with the applicable provisions of Title 11. In a Chapter 9 case, the particular provisions that require compliance by a debtor in connection with administration of the case and confirmation of the plan are the provisions of 11 U.S.C.S. § 1125, which require that a court approve a
2

disclosure statement containing *adequate information* before acceptances or rejections of a plan may be solicited. *In re Bamberg County Mem. Hosp.*, 2012 Bankr. LEXIS 2321 (Bankr. D.S.C. May 23, 2012) (emphasis added).

11 U.S.C. 1125 states, in material part:

(a) In this section--

(1) "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant [*3] class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information; and

(2) "investor typical of holders of claims or interests of the relevant class" means investor having--

(A) a claim or interest of the relevant class;

(B) such a relationship with the debtor as the holders of other claims or interests of such class generally have; and

(C) such ability to obtain such information from sources other than the disclosure required by this section as holders of claims or interests in such class generally have.

(b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement [*4] approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

11 U.S.C. § 1125 (2006).

The determination of whether a disclosure statement provides creditors with adequate information is "'left essentially to the judicial discretion of the court' and . . . '[t]he information required will necessarily be governed by the circumstances of the case.'" *In re Commonwealth Group-Mocksville Partners, LP*, 2013 Bankr. LEXIS 1648 (Bankr. E.D. Tenn. 2013), *citing Mabey v. S.W. Elec. Power Co. (In re Cajun Elec. Power Co.)*, 150 F.3d 503, 518 (5th Cir. 1998) (*quoting* S. REP. No. 95-989, at 121 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5907). "Generally, a disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization." *Id., citing In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990).

Courts determine adequacy of a disclosure statement on a case-by-case basis, giving consideration to the following non-exhaustive factors:

> (1) the circumstances that gave rise to the filing of the bankruptcy petition; (2) a complete description of the available assets and their value; (3) the anticipated future of the debtor; (4) the source of the information provided in the disclosure statement; (5) a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement; (6) the condition and performance of the debtor while in Chapter 11; (7) information regarding claims against the estate; (8) a liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7; (9) the accounting and valuation methods used to produce the financial information in the disclosure statement; (10) information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor; (11) a summary of the plan of reorganization; (12) an estimate of all administrative expenses, including attorneys' fees and accountants' fees; (13) the collectibility of any accounts receivable; [*6] (14) any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan; (15) information relevant to the risks being taken by the creditors and interest holders; (16) the actual or projected value that can be obtained from avoidable transfers; (17) the existence, likelihood and possible success of non-bankruptcy litigation; (18) the tax

4

consequences of the plan; and (19) the relationship of the debtor with affiliates.

*Id., citing In re Keisler*, 2009 WL 1851413, at 4, 2009 Bankr. LEXIS 1814, at 10-11 (Bankr. E.D. Tenn. June 29, 2009) (quoting *Cardinal Congregate I*, 121 B.R. at 765); *see also In re Microwave Prods. of Am.*, 100 B.R. 376, 377-78 (Bankr. W.D. Tenn. 1989). Nevertheless, "these factors are only a general 'yardstick' and need to be modified as the circumstances and size of each case warrant. 'It is . . . well understood that certain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.'" *Id., In re Puff*, 2011 WL 2604759, at *4, 2011 Bankr. LEXIS 2445, at *10 (Bankr. N.D. Iowa June 30, 2011) (quoting *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001)).

"In short, a proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *Id., citing In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991); *see also In re Radco Props., Inc.*, 402 B.R. 666, 682 (Bankr. E.D.N.C. 2009) ("In determining the adequacy of information under [§] 1125(a)(1), the bankruptcy court reviews the information on a case by case basis. Adequate information was vaguely defined by Congress so that courts could view the circumstances of each particular case. In the end though, a proper disclosure statement should be clear and succinct.") (citations omitted). And while

> it may, on occasion, be appropriate to consider issues at the disclosure hearing stage which could otherwise be raised at confirmation, if the described plan is fatally flawed so that confirmation would not be possible[,]" *Phoenix Petroleum Co.*, 278 B.R. at 394, . . . "[s]uch action is discretionary and must be used carefully so as not to convert the disclosure statement hearing into a confirmation hearing, and to insure that due process concerns are protected.

5

*Id., quoting Puff*, 2011 WL 2604759, at *5, 2011 Bankr. LEXIS 2445, at *13-14 (quoting *Cardinal Congregate I*, 121 B.R. at 762.

## II. The City's Disclosure Statement Does Not Provide Adequate Information

It is unclear from the City's Disclosure Statement as to how it is planning to deal with the Creditors' claims. Adequate information in the Disclosure Statement requires that that the Disclosure Statement "clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *Supra In re Ferretti*, at 19. Although the City's Disclosure Statement outlines what general unsecured creditors are going to receive, it does not adequately define how "taking of property without just compensation" claims will be treated. Because of this deficiency in the City's Disclosure Statement, the Creditors are unable to determine which class of claims they belong to and what, if anything, the City intends to pay them to compensate them for their claims.

Furthermore, a determination as to whether the Creditors' claims are unsecured claims or are constitutionally protected claims that are not subject to reduction in bankruptcy may be a determination which would otherwise be raised at confirmation. However, bankruptcy courts have found that "it may, on occasion, be appropriate to consider issues at the disclosure hearing stage which could otherwise be raised at confirmation, if the described plan is fatally flawed so that confirmation would not be possible" (*Phoenix Petroleum Co.*, 278 B.R. 385 (Bankr. E.D. Pa. 2001).

Currently, it appears that the City plans to treat the Creditors' constitutional takings claims the same as general unsecured claims. If such treatment is found to be unconstitutional, any provision of the plan treating the Creditors' claims as being subject

6

to reduction would be void. Furthermore, all other provisions of the plan could be affected due to having to set aside the money allocated in the plan that is owed to Creditors on their claims.

### III. Treatment of the Creditor's Claims as Class 14 – Unsecured Claims would be Unconstitutional

Under the City's Disclosure Statement, it is unclear whether the City intends to treat the Creditors and others with Constitutional claims as Class 14 claimants. Class 14 claimants are estimated in the Disclosure Statement to receive only 15% of the amount owed to them. Receipt of only 15% of the just compensation owed to the Creditors would be a blatant violation of the Fifth and Fourteenth Amendments.

As explained in the Creditor's Joint Objection to Chapter 9 Plan by Creditors Regarding Treatment of Claims for Taking of Private Property Without Just Compensation, Docket Number 3412, Congress may not pass laws under its Bankruptcy power that would effect a taking of private property without just compensation. *U.S. v. Security Industrial Bank*, 459 U.S. 70 (US 1982), citing *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935). The Supreme Court stated:

> The bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation. *Louisville Joint Stock Land Bank v. Radford, supra.* Thus, however "rational" the exercise of the bankruptcy power may be, that inquiry is quite separate from the questions whether the enactment takes property within the prohibition of the Fifth Amendment.

459 U.S. at 75.

In *Louisville Joint Stock Land Bank,* Justice Brandeis stressed the importance of preserving the Fifth Amendment despite times of hardship:

7

> The Fifth Amendment commands that, however great the Nation's need, private property shall not be thus taken even for a wholly public use without just compensation.

295 U.S. at 602.

In that case, the Supreme Court held that the Frazier-Lemke Act violated the Takings Clause of the Fifth Amendment. The Frazier-Lemke Act was a bankruptcy act of Congress that restricted banks' ability to repossess farms after they had been foreclosed on. The Supreme Court held the statute was void because it effected a "taking of substantive rights in specific property acquired by the Bank prior to" its enactment. Justice Brandeis noted that:

> [i]f the public interest requires, and permits, the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public.

295 U.S. at 602.

Although Congress may authorize the City to impair obligation of contracts and other types of claims in Chapter 9 bankruptcy, it may not authorize the taking of private property without just compensation in violation of the Fifth Amendment. Therefore, the T&T Judgment for inverse condemnation must be satisfied in full. Anything short of full payment for this Judgment would deprive T&T Management, as the successor to Merkur Steel, of just compensation in violation of the Fifth Amendment. Similarly, HRT and Denis Trust may not be deprived of their just compensation for their pending inverse condemnation and condemnation claims. Since the Fifth Amendment applies to both the

8

13-53846-tjt    Doc 3854    Filed 04/07/14    Entered 04/07/14 15:30:20    Page 8 of 9

State and Federal governments, such a reduction in just compensation would be unconstitutional.

**WHEREFORE,** Creditors T&T Management, HRT Enterprises, and the Denis Trust respectfully request that City's Disclosure Statement be amended to clarify that claims based in inverse condemnation and condemnation, which are based on the taking of property without just compensation, are not subject to reduction or compromise as a result of the City of Detroit's bankruptcy and are therefore, not included in "Class 14 – Other Unsecured Claims" or any other category of the City's Disclosure Statement that would result in a reduction of the Creditors' claims.

Respectfully submitted,

/s/ Mark Demorest
Mark S. Demorest (P35912)
Melissa L. Demorest (P68867)
Demorest Law Firm, PLLC
Attorneys for Creditors
  T&T Management, Inc.,
  HRT Enterprises, and the John W.
  and Vivian M. Denis Trust
322 West Lincoln Ave.
Royal Oak, MI 48067
248-723-5500
mark@demolaw.com
melissa@demolaw.com

Dated: April 7, 2014

City of Detroit bankruptcy:Merkur:Drafts: Objection to Disclosure Statement 2014 04 07.docx