M. Natasha Labovitz
My Chi To
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000

*Attorneys for Berkshire Hathaway Assurance Corporation*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| **In re:** | ) | Chapter 9 |
| | ) | |
| **CITY OF DETROIT, MICHIGAN,** | ) | Case No. 13-53846 |
| | ) | |
| **Debtor.** | ) | Hon. Steven W. Rhodes |

**LIMITED OBJECTION OF BERKSHIRE HATHAWAY
ASSURANCE CORPORATION TO MOTION OF THE CITY OF
DETROIT FOR APPROVAL OF THE PROPOSED DISCLOSURE STATEMENT**

Berkshire Hathaway Assurance Corporation ("BHAC"), by and through the

undersigned counsel, hereby files this Limited Objection to the Motion of the City of

Detroit (the "City") for Approval of the Proposed Disclosure Statement (the "Disclosure

Statement Motion") [Docket No. 2713].[1]  In support of this Limited Objection, BHAC

respectfully submits as follows:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Disclosure Statement Motion or the Disclosure Statement, as applicable, provided that the term Disclosure Statement as used herein shall refer to the amended proposed disclosure statement as filed by the City on March 31, 2014 [Docket No. 3382].

**PRELIMINARY STATEMENT**

1.      BHAC is a secondary insurer[2] of the payment when due of regularly
scheduled principal and interest payments for three series of DWSD Sewer Bonds and two
series of DWSD Water Bonds issued by the City, with an aggregate principal total of
approximately $760 million (collectively, the "BHAC Insured Bonds").[3]  BHAC supports
in principle the view that the City should accomplish its restructuring efficiently in a
manner that, operating within the bounds of the law, will maximize value available for
distribution to all constituents.  The currently proposed Plan and Disclosure Statement,
however, fall far short of that goal.

2.      In particular, the Disclosure Statement simply does not provide sufficient
information to allow voting creditors to determine whether to accept or reject the Plan with
respect to the treatment of the DWSD Sewer Bonds and the DWSD Water Bonds,
including the City's desire to pursue (under certain poorly defined circumstances) (i) a
potential DWSD Transaction, under which the functions of DWSD would be transferred
and the properties of DWSD leased to a newly formed Great Lakes Water Authority (the
"GLWA"), or, alternatively, (ii) a potential public-private partnership transaction (a "P3
Transaction" and, together with the DWSD Transaction, the "Transactions"), under which
the functions of DWSD would be operated privately or possibly even sold.  Although the

---

[2]     The Disclosure Statement improperly characterizes BHAC as a "secondary reinsurer" of the scheduled
payment when due of principal and interest on the DWSD Sewer Bonds and DWSD Water Bonds, even
though BHAC pointed out to the City in the Deficiency Letter (defined below) that its role is properly
described as "secondary insurer."  This description needs to be corrected.

[3]     The Sewage Disposal System bond series for which BHAC provides secondary insurance coverage are:
2001(C-2), 2001(E), and 2006(A).  The Water Supply System bond series for which BHAC provides
secondary insurance coverage are: 2001-C and 2005-B.

City provided a modicum of additional information regarding the Transactions in its most recent version of the proposed Disclosure Statement, significantly more explanation – including a discussion of the potential risks and benefits of the Transactions and a clear explanation of when and whether the City would pursue a Transaction, whether during or after the Plan process – must be added to the Disclosure Statement before it would meet the requirements of the Bankruptcy Code.

3. Only minimal information about the Transactions has been provided to date. The Plan provides that the City may enter into a DWSD Transaction that will include the formation of the GLWA to conduct the operations currently conducted by DWSD. Disclosure Statement at 121. While the Disclosure Statement discloses certain proposed terms of the DWSD Transaction, it includes practically no information regarding the likelihood that the City will enter into this potential DWSD Transaction, stating *only* that "[t]he City will enter into a DWSD Transaction only if it enables the City to make larger, more rapid or more certain distributions to at least some of its creditors as compared to the distributions specified in the Plan and described in this Disclosure Statement" and that "[t]o date, negotiations among the City and the Counties have not yet resulted in any agreement with respect to the formation of the GLWA." Disclosure Statement at 121, 122. With regard to a potential P3 Transaction, there is not even such a vague statement included, and the Disclosure Statement only lists the requirements for any potential counterparty to a P3 Transaction. Disclosure Statement at 122, 123.

4. Beyond acknowledging that the DWSD Transaction would have a material impact on creditors, the Disclosure Statement provides no context at all to allow creditors to evaluate the Transactions, including the likelihood that the City will enter into either

3

Transaction. Among other things, there is no discussion of who would make a final determination regarding either of the Transactions, when such a determination would be made, how it would be made (e.g., whether the decision-makers would weigh the size of the return or the rapidity or the certainty of such return most heavily in their calculus of how to proceed), or even which groups of creditors might be among the "some" who could benefit from the DWSD Transaction, let alone a discussion of which groups of creditors might be harmed by the Transactions and how. Furthermore, there is no discussion of which (if any) of the proposed terms of a potential DWSD Transaction are likely to be agreed to by the Counties, nor any discussion of the position(s) of the Counties in these negotiations more generally. These information gaps simply must be filled before creditors can make an informed decision of how to vote on the Plan.

5.     Additionally, information provided in the Disclosure Statement is insufficient with regard to (i) incorporation of the current and projected financial state of DWSD into the City's overall financial projections, (ii) the difference in terms between the existing DWSD Sewer Bonds and DWSD Water Bonds (collectively, the "Existing Bonds") and the New DWSD Bonds, the New Existing Rate DWSD Bonds, the New GLWA Bonds, and the New Existing Rate GLWA Bonds to be issued under the Plan (collectively, the "New Bonds"), and (iii) certain matters pertaining to voting and confirmation issues and bond insurer claims.

6.     Adding to the deficiencies, while the Disclosure Statement does include some historical and projected financial information regarding DWSD, that information is not incorporated in any comprehensible way into the broader discussion of the City's projected financial data which is included in Section XI of the Disclosure Statement.

4

Section XI of the Disclosure Statement contains projected financial information that is presented separately for other departments of the City and includes a discussion of the projections included in Exhibits I and J, but this section does not include broken-out projections relating to DWSD or any reference to the separate DWSD projections included as Exhibit L to the Disclosure Statement, thus providing no context for how the DWSD information is to be considered in evaluating the City's overall financial projections. Disclosure Statement at 138-141. Unless DWSD financial information is incorporated with other financial projections in the Disclosure Statement, it is virtually impossible for creditors to evaluate how aspects of the Plan which deal with DWSD impact the Plan as a whole – including, for example, the feasibility of either Transaction and the ability of the City to meet its debt service obligations under the New Bonds proposed to be issued pursuant to the Plan. Further, because the projected DWSD financial information is not incorporated within the City's broader financial projections, it is impossible to determine whether the Plan's treatment of DWSD related issues is equitable, or indeed whether that treatment is even permissible under the law, and it is consequently impossible to evaluate whether pursuing the Plan represents the best outcome for the City and its constituents.

7.     The Plan also contemplates that, whether or not either of the Transactions is consummated, all Existing Bonds which are currently outstanding will be canceled and replaced by one of several types of the New Bonds to be issued by the City on the Effective Date.  Disclosure Statement  at 16, 17. The terms of the New Bonds differ in varying material degrees from the terms of the Existing Bonds, including a reduction of interest rates, the removal of call protection, the impairment of collateral securing the Existing Bonds, and the absence of any surety or insurance protection.  However, the

5

Disclosure Statement includes little to no information about the details of these material modifications (among other things, the changes are buried in the "defined terms" section of the Plan and Disclosure Statement and are not clearly highlighted in a way that holders of Existing Bonds – many of whom are retail holders who are unfamiliar with reading complex financial documents – will be able to fully appreciate upon a reasonable review of the Disclosure Statement). Further, the Disclosure Statement does not describe why the City believes these modifications are legal, and fails to disclose the important fact that certain bond insurers have asserted that these changes cannot be implemented without bondholder and bond insurer consent, and that the insurers intend to litigate this point vigorously in connection with Plan confirmation. And, although the Disclosure Statement provides for alternate treatment of the Existing Bonds depending on whether or not a DWSD Transaction takes place, there is no discussion of the effect that the occurrence (or non-occurrence) of a P3 Transaction will have on the treatment of the Existing Bonds.

8. Finally, although the Disclosure Statement has been amended to reflect the updated voting and solicitation procedures which were established by order of the Court entered on March 11, 2014 (the "Solicitation Order"),[4] the Disclosure Statement should be further updated to include certain statements describing the positions of the bond insurers with respect to certain voting and confirmation matters. Furthermore, the Disclosure Statement must be updated to include a description of the Plan's proposed treatment of bond insurer claims.

---

[4] See *Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment* [Docket 2984]

6

## FACTUAL BACKGROUND

9.      In connection with the remarketing of the BHAC Insured Bonds in 2008, BHAC issued financial guaranty insurance policies for the benefit of the holders of such bonds (the "BHAC Policies").  The BHAC Policies guarantee the scheduled payment, when due, of the principal of and interest on the BHAC Insured Bonds.  As an inducement to providing the BHAC Policies, and in connection with its role as bond insurer, BHAC was afforded certain rights by the City and the ability to enforce certain remedies against the City under documents relating to the BHAC Insured Bonds (the "Bond Documents").[5] The rights and remedies provided in the Bond Documents include, among others, a consent right over any annulment of the BHAC Insured Bonds or any amendments to the terms governing the BHAC Insured Bonds.

10.     On July 18, 2013, the City filed a voluntary petition for relief with this Court under chapter 9 of the Bankruptcy Code.

11.     Before the applicable bar date, BHAC filed a proof of claim against the City for (i) all of its rights to payment and other rights and claims, including, without limitation, any rights of subrogation with respect to the BHAC Insured Bonds and (ii) all other rights and claims arising under or with respect to the Bond Documents. [Proof of Claim #1158].

12.     On February 21, 2014, the City filed the Plan and the Disclosure Statement. On March 3, 2014, the Court entered the Second Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment (the "Scheduling Order") [Docket No. 2937], which required parties to make a good faith effort

---

[5]     These documents include, but are not limited to, the Sale Order, the Supplement to Prior Sale Orders, and the Bond Ordinance applicable to each series of BHAC Insured Bonds.

7

to advise counsel for the City in writing of any request to include additional information in the disclosure statement. In accordance with the requirements of the Scheduling Order, on March 14, 2014, BHAC advised counsel for the City in writing (the "Deficiency Letter") of BHAC's belief that the proposed disclosure deficient in numerous identified respects. On March 31, 2014, the City filed an amended plan (the "Plan") [Docket No. 3380] and an amended disclosure statement (the "Disclosure Statement") [Docket No. 3382]. The amendments did not, however, address the vast majority of informational deficiencies that BHAC had identified in its Deficiency Letter.

13. The Plan purports to maximize the value of the City's assets through, among other methods, (i) a potential transfer of the assets of DWSD to a newly established regional authority or some alternative transfer of the operation of DWSD through a public-private partnership and (ii) the replacement of the Existing Bonds with New Bonds of equal principal amount, but with modified terms. As described in this Limited Objection, however, the Disclosure Statement should not be approved as currently drafted because it lacks adequate information to allow holders of Existing Bonds to evaluate whether the proposed Plan treatment of their bonds is acceptable, and in fact is insufficient to allow *any* creditor constituency to evaluate whether the proposed treatment of the DWSD, including the possible-but-not-certain Transactions, will contribute to the overall objective of maximizing value available for distribution by the City.[6]

---

[6]     In addition to this Limited Objection to the Disclosure Statement, BHAC reserves the right to object to the Plan in the event that a disclosure statement is approved and in the event a confirmation hearing is held. Nothing in this Limited Objection should be construed as approval of any Plan provisions, or a waiver of any confirmation objections.

8

## OBJECTION AND LEGAL DISCUSSION

14. In its current form, the Disclosure Statement should not be approved because it does not meet the requirements of section 1125 of the Bankruptcy Code, which conditions the solicitation of votes accepting or rejecting a plan of reorganization upon a court's finding that a disclosure statement contains "adequate information." 11 U.S.C. § 1125(b). Bankruptcy Code section 1125 defines "adequate information" as "information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1).

15. The requirement for adequate information, including that it be clear and understandable, is well-settled in the law, and applies with equal importance both in chapter 11 and in chapter 9 cases. *In re Commonwealth Group-Mocksville Partners, LP*, 2013 WL 1728056, at *3 (Bankr. E.D. Tenn. Apr. 22, 2013) ("In short, a proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." (quoting *In re Ferretti*, 128 B.R. 16, 19 (Bankr.D.N.H.1991)); *In re City of Colo. Springs Spring Creek Gen. Improvement Dist.*, 177 B.R. 684, 689 (Bankr. D. Colo. 1995) ("Section 1125(a) requires information of a kind and in sufficient detail, as far as reasonably practicable, in light of the nature and the history of the debtor, and the condition of the debtor's books and records to enable a hypothetical investor, typical of the holders of the claims or interests of the relevant class, to make an informed judgment about the plan.").

9

16.     The importance of full and adequate disclosure as required by Bankruptcy Code section 1125 is well-established.  Courts repeatedly hold that "[g]enerally, a disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization."  *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990) (quoting *In re Stanley Hotel, Inc.*, 13 B.R. 926, 929 (Bankr. D. Colo. 1981); *See also Commonwealth*, 2013 WL 1728056, at *2.).  Sixth Circuit Courts have also set forth a non-exhaustive list of the types of information that should generally be included in a disclosure statement, including but not limited to "[a] complete description of the available assets and their value . . . [i]nformation regarding claims against the estate . . . [t]he accounting and valuation methods used to produce the financial information in the disclosure statement . . . [a]ny financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan . . . [and] [i]nformation relevant to the risks being taken by the creditors and interest holders . . ." *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-171 (Bankr. S.D. Ohio 1988); *See also Commonwealth*, 2013 WL 1728056, at *2; *In re Malek*, 35 B.R. 443, 444 (Bankr. E.D. Mich. 1983); *In re Microwave Prods. of Am., Inc.*, 100 B.R. 376, 378 (Bankr. W.D. Tenn. 1989) (citing *In re Metrocraft Publ'g. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984).

17.     The City's Disclosure Statement as currently drafted fails to provide adequate information from which a "hypothetical investor" could make an informed decision about the Plan.  Given the foregoing, the Court should not approve the Disclosure Statement unless and until the City revises it to include the material information more fully described below.

**A.    The Disclosure Statement Provides Inadequate Information About the Potential Transactions.**

18.    The Plan provides that the City may, or may not, enter into (i) a DWSD Transaction that will include the formation of the GLWA to conduct the operations currently conducted by DWSD, or (ii) a P3 Transaction that would transfer DWSD operations to a private entity, or possibly result in an outright sale of DWSD.  It is patently clear that the occurrence, or non-occurrence, of either Transaction will have a material impact on the ultimate implementation of the Plan.  The City at least acknowledges this materiality with respect to the DWSD Transaction, when it proposes that all Claims in each of Classes 1A-1D will receive alternate treatment depending on whether or not the DWSD Transaction is consummated on the Effective Date.  Disclosure Statement at 16, 17.  No such alternate treatment is even discussed in the context of a potential P3 Transaction, but it is unclear whether this means that no alternate treatment would be proposed or whether the City has simply determined not to discuss it in the Disclosure Statement.

19.    Even where the City does acknowledge that implementing a Transaction would impact creditor recoveries, the Disclosure Statement includes baldly insufficient information to allow creditors to evaluate the proposed treatment.  For example, with respect to the DWSD Transaction, the *only* information provided in the Disclosure Statement about that transaction other than a cursory summary of proposed terms is that "[t]he City will enter into a DWSD Transaction only if it enables the City to make larger, more rapid or more certain distributions to at least some of its creditors as compared to the distributions specified in the Plan and described in this Disclosure Statement."  Disclosure Statement at 121.  Aside from this vague statement, the Disclosure Statement provides no discussion regarding the likelihood that the City will enter into a DWSD Transaction, who

11

would make a final determination on whether to enter into a DWSD Transaction, when and how such a determination would be made (e.g., whether the decision-makers would weigh the size of the return or the rapidity or the certainty of such return most heavily in the calculus of how to proceed), or even which groups of creditors might be among the "some" who could benefit from the DWSD Transaction, let alone a discussion of which groups of creditors might be harmed by the DWSD Transaction and how.

20.     The disclosure about a potential P3 Transaction is even more insufficient. For that possibility, the Disclosure Statement only provides a summary of the City's DWSD RFI and notes that 16 parties have indicated that they intend to submit a responsive proposal, without any discussion at all of how such proposals will be evaluated, who would make a decision about whether to enter into the transaction, how likely a P3 Transaction is to occur or what the impact of such a transaction would be, including whether such a transaction would result in any alternate treatment for Claims in each of Classes 1A-1D similar to the alternate treatment provided in the case of a DWSD Transaction.  Disclosure Statement at 122, 123.  Indeed, Section IV.B of the Disclosure Statement, which deals with "Alternatives Related to DWSD", only provides for two contingencies with respect to the treatment of the Existing Bonds – either DWSD remains a department of the City, or a DWSD Transaction is consummated – and does not even address the possibility of a P3 Transaction or what effect such a transaction would have on the treatment of creditors.  Such skimpy disclosure simply does not provide enough information for creditors to meaningfully evaluate the proposed Plan.

21.     At a minimum, the Disclosure Statement must be updated to include a discussion of the factors that the City will consider in deciding whether or not to enter into

either of the Transactions, a description of all consents that the City will need to obtain in order to enter into any such transactions and the likelihood of obtaining such consents, a description of the proposed governance structure of the GLWA or the governing body which would result from any P3 Transaction, as applicable, which of the proposed terms (if any) of the DWSD Transaction the Counties have agreed to or are likely to agree to, and additional information regarding the status of negotiations with the Counties and any potential counterparties to a P3 Transaction.  The discussion of consents must include a statement that certain bond insurers have asserted that the proposed treatment of lease payments in connection with a DWSD Transaction as "operating and maintenance expenses" under the documentation for the New Bonds requires the consent of bondholders and bond insurers. With respect to a potential P3 Transaction, the Disclosure Statement must discuss the effect that the consummation of a P3 Transaction would have on the treatment of creditors and the terms of the New Bonds, including but not limited to (i) whether new bonds to replace the Existing Bonds will even be issued if a P3 Transaction is consummated, or otherwise what the effect of the consummation of a P3 Transaction would be on the Existing Bonds, and (ii) with respect to any new bonds to be issued in conjunction with a P3 Transaction, a discussion of the treatment of any payments contemplated under a P3 Transaction (whether such payments take the form of lease payments, availability payments, payments related to any sale of DWSD, or otherwise). Finally, the Disclosure Statement must discuss *Bolt v. Lansing*, 459 Mich. 152 (1998), and the competing views of the impact of this case on the City's proposed treatment of lease payments made following a DWSD Transaction as "operating and maintenance expenses" under the terms of the New Bonds.  Without this additional information, it is impossible

13

for BHAC or any creditor to evaluate the impact that the consummation of either of the Transactions would have on the City's projected operations under the proposed Plan, or indeed how likely it is that such a transaction will even occur.

**B.     The Disclosure Statement Fails to Provide Adequate Information about Current and Projected DWSD Financials and Other Information.**

22.     The Disclosure Statement notes that "[t]he [DWSD] is far and away the largest enterprise fund managed by the City." Disclosure Statement at 65. Given this acknowledged overall importance of DWSD, it is baffling that the Disclosure Statement's discussion of projected financial information for the City (set forth in Section XI) does not include specific information regarding the projected financial data of DWSD. Moreover, the summaries of overall operations that are included in Section XI – which do disclose some assumptions that govern how they were prepared – do not even indicate whether these projections assume that either of the Transactions has, or has not, taken place.

23.     The City has indeed updated the Disclosure Statement since it was originally filed, to provide some current, historical, and projected financial data for DWSD itself, as set forth in Section VII.A.3.b.i. and Exhibits K and L of the Disclosure Statement. Given the importance of DWSD to the City's operations, however, it is important that this financial data be incorporated into the broader discussion of projected City financials in Section XI of the Disclosure Statement, particularly with respect to the potential occurrence or non-occurrence of either of the Transactions. Unless the DWSD data is presented in context, so that the impact of a potential Transaction can be understood, it is fundamentally impossible to consider what impact the Plan will have on the City's projected operations or whether the Plan represents the best alternative available to creditors.

14

24.     Furthermore, what little DWSD financial information has been added to the Disclosure Statement is still insufficient.  At a minimum, the Disclosure Statement should include the following additional current information pertaining to DWSD: (i) the rate covenant calculation for the fiscal year ended June 30, 2013, (ii) the material terms of existing and proposed wholesale contracts (including revenues, sale providers, minimums, expiration dates, and termination rights), (iii) workforce data (including age and service data and reduction in recent years), and (iv) a summary of labor commitments under existing contracts and pension plans.

25.     With regard to the DWSD projections, the City first needs to update the DWSD projections which were provided to creditors as part of the mediation held in October 2013 to reflect changes to Plan assumptions and 2013 fiscal year financial operating results since these reports were prepared, and then this information must be included in the Disclosure Statement.[7]  In particular, these updated DWSD projections must include, with no limitation, (i) detail on the debt coverage ratios that will be applicable to the New Bonds, (ii) the impact of the projected operations and maintenance cost increases on the current DWSD operating margins that are described on pages 65 and 67 of the Disclosure Statement, (iii) a discussion of the impact that implementation of the Plan will have on the costs of future borrowings which will be needed to support the debt service obligations and proposed capital improvement plans of DWSD, and (iv) the impact of the City's proposed rate stability program on the rate covenants that will be applicable to the New Bonds.  The Disclosure Statement must also discuss the risk that the Counties

---

[7]     These projections are titled (i) Summary of DWSD Plans, dated October 8, 2013, (ii) DWSD 10-Year Business Plan, dated October 2, 2013, and (iii) Analysis of New Water/Sewer Authority, dated October 2, 2013.

may exit DWSD, including the likelihood of that risk, and the impact that any such exit would have on the DWSD projections.

26.    In addition to incorporating projections specific to DWSD, the Disclosure Statement must also include a detailed description of DWSD revenue and operating expenditure assumptions relating to these added projections, including whether or not such assumptions reflect the occurrence of either of the Transactions and how such assumptions and projections would change depending on whether or not one of the Transactions occurs. At a minimum, the Disclosure Statement must address the following assumptions pertaining to DWSD: (i) the impact of the rate affordability program and raise in wholesale rates on previously disclosed rate plans, (ii) the impact of recent higher delinquent collection rates, (iii) volume and staffing assumptions (including retirement assumptions and the impact of the City's population decline on volume and staffing), (iv) detailed information regarding legacy costs that are *included* in expenses and legacy costs that are *excluded* from expenses, (v) a detailed description of anticipated capital improvements, including explication of how such improvements will be funded, discussion of the impact of the City's population decline, and confirmation that higher repair costs for winter 2013-14 have been taken into account, (vi) estimated amount of lease payments under a DWSD Transaction for each year (including the method of calculation), (vii) estimated financial terms under a P3 Transaction, and (viii) the status of the previously announced new issuance of Sewage Disposal System Revenue Bonds.[8]

---

[8] See *Emergency Manager Order No. 22*, issued on January 30, 2014.

**C.    The Disclosure Statement Fails to Provide Adequate Information about the Terms of the Proposed New Bonds.**

27.    The Plan provides that, on the Effective Date, all Existing Bonds will be canceled and replaced by one of the several types of New Bonds to be issued by the City with the same principal as the replaced Existing Bonds, but with certain modified terms.  If the DWSD Transaction is consummated on the Effective Date, Holders of Claims in each of Classes 1A-1D will receive New GLWA Bonds having a principal amount equal to the principal amount of the Existing Bonds held by such Holder, plus amounts necessary to pay expenses of the financing (or, at the City's election, cash in the full amount of the relevant allowed claim).  If the DWSD Transaction is not consummated on the Effective Date, Holders of Claims in each of Classes 1A-1D will receive New DWSD Bonds having a principal amount equal to the principal amount of the Existing Bonds held by such Holder, plus amounts necessary to pay expenses of the financing.  Holders that vote to accept the Plan are given the additional option of electing to receive New Existing Rate GLWA Bonds in lieu of New GLWA Bonds, and New Existing Rate DWSD Bonds in lieu of New DWSD Bonds, as applicable. Disclosure Statement at 16, 17.

28.    The Disclosure Statement indicates that the New DWSD Bonds and New GLWA Bonds will have interest rates calculated by reference to Exhibit I.A.159 of the Plan (the "Interest Rate Reset Chart").  Disclosure Statement at 44, 46.  However, the Disclosure Statement does not provide any information about the methodology that was used in creating the Interest Rate Reset Chart or explanation of the market justification for these interest rates, including but not limited to whether the removal of call protection, the removal of surety or insurance protection, and the proposed impairment of collateral securing the Existing Bonds were taken into consideration when calculating the interest

17

rates set forth on the Interest Rate Reset Chart. The Disclosure Statement must include this information, as it is impossible without it to determine whether the adjusted interest rates appropriately compensate holders for the increased risk introduced by the modified terms of these bonds.

29.     Furthermore, although the Disclosure Statement summarizes the terms that the City has proposed for each of the New Bonds, it fails to highlight the very significant differences between these modified terms and the terms which govern the Existing Bonds. For example, it appears that, as compared to the Existing Bonds, the New Bonds will generally feature reduced interest rates, stripped-out call protection, and stripped-out surety or insurance protection, but these differences are not made clear in the Disclosure Statement in a way that any creditors, but particularly retail holders of Existing Bonds, can understand. The Disclosure Statement must be updated with clear, plain-English disclosure regarding the terms of the Existing Bonds and the New Bonds, including but not limited to a discussion of the interest rates, call protections, and surety and insurance protection applicable in the Existing Bonds as compared to the New Bonds. In addition, the Disclosure Statement must discuss the impact that these deviations would have on the market interest rates for the New Bonds, and whether these impacts have been reflected on the Interest Rate Reset Chart.

30.     The Disclosure Statement states that the documentation governing the New GLWA Bonds and New Existing Rate GLWA Bonds will include a definition of "operations and maintenance expenses" which (i) includes the amount of any lease payment payable to the City's General Fund, and (ii) is excluded from the liens securing the New GLWA Bonds and New Existing Rate GLWA Bonds. Disclosure Statement

18

at 46. The Disclosure Statement also states that the documentation governing the New DWSD Bonds and New Existing Rate DWSD Bonds will permit the lease or transfer of DWSD assets to a new authority, and that, upon any such transfer, the definition of "operations and maintenance expenses" will be amended in line with the definition provided for under the terms of the New GLWA Bonds and New Existing Rate GLWA Bonds. Disclosure Statement at 45. The Disclosure Statement must make clear that each of these modified definitions represents a significant impairment of the collateral securing the Existing Bonds, and must also discuss whether and to what extent the effect of this dilution has been reflected in the Interest Rate Reset Chart.

31.     Finally, when discussing pension claims, the Disclosure Statement states that "[i]mportantly, the Plan assumes that DWSD will accelerate, or prefund, the majority of its full allocable share of the GRS UAAL…". Disclosure Statement at 11. Aside from a brief mention in the sections describing the treatment of Claims for Class 11, which indicates that DWSD's contribution will total $675,000,000 (Disclosure Statement at 24, 34), this is the only mention of such prefunding of GRS UAAL obligations by DWSD, and there is no discussion of the authority under which the City proposes to have DWSD prefund such obligations other than a vague statement that "[t]he City believes that such prefunding is consonant with applicable state and local law that permits DWSD to be charged, and pay directly to the GRS, its allocable share of the periodic contributions required to be made to the GRS as a cost and expense of operating the City's water and sewer systems. Disclosure Statement at 11.

32.     Since the Disclosure Statement explicitly describes the DWSD pension prefunding as being important to the Plan, it is imperative that the City provide full

19

disclosure regarding the details of this prefunding and the authority under which it proposes to accomplish this. The Disclosure Statement must indicate the proposed source of cash for the prefunding, and provide discussion of the referenced "applicable state and local law" which would allow the City to accomplish it. The Disclosure Statement must also discuss how the City determined that DWSD's allocable share of GRS UAAL is $675,000,000, whether prefunding this amount will increase the risk that DWSD would be able to meet its long-term debt service obligations under the New Bonds, and whether that increased risk has been taken into account in establishing the Interest Rate Reset Chart. Finally, the Disclosure Statement must also include a statement that certain bond insurers have asserted that treating GRS UAAL contributions as a cost and expense of operating the City's water and sewer systems would be a mischaracterization of such payments, and that the proposed prefunding of GRS UAAL obligations by DWSD cannot occur without the consent of such bond insurers.

### D. The Disclosure Statement Provides Inadequate Information About Certain Voting and Confirmation Issues.

33. Although the Disclosure Statement has been updated since its initial filing to include the solicitation and voting procedures which were established by the Solicitation Order, it is important that the Disclosure Statement be updated further to include a description of the position of certain bond insurers that such insurers reserve the right to deny coverage under the applicable insurance policies should any bondholder vote in favor of the Plan as currently proposed. Furthermore, the Disclosure Statement must include a statement that certain bond insurers have asserted that chapter 9 of the Bankruptcy Code does not permit a cramdown of special revenue bonds and that the Plan is not fair and equitable as to secured creditors holding claims in Classes 1A-1D.

20

34.     Finally, because the Solicitation Order provides bond insurers with a clear right to receive a ballot and, subject to the dispute resolution procedures, to vote their claims with respect to the Plan, the Disclosure Statement must include a description of the City's proposed treatment of such bond insurer claims, including (i) claims for principal and interest due under the applicable bond documents for the Existing Bonds (whether by subrogation, assignment, or otherwise), and (ii) direct claims for contractual reimbursement of charges, fees, costs, losses, liabilities, and expenses incurred by the bond insurers in connection with their respective insurance policies, reimbursement agreements, and applicable bond documents.

*[remainder of page left blank by intention]*

WHEREFORE, unless the Disclosure Statement is satisfactorily amended to address this Limited Objection, BHAC respectfully requests that this Court enter an order: (i) denying the Disclosure Statement Motion; and (ii) granting BHAC such further relief as this Court deems just and proper.

Dated: New York, New York
       April 7, 2014

Respectfully submitted,

/s/ My Chi To
DEBEVOISE & PLIMPTON LLP

M. Natasha Labovitz
My Chi To
919 Third Avenue
New York, New York 10022
Telephone:  (212) 909-6000
Facsimile:   (212) 909-6836
nlabovitz@debevoise.com
mcto@debevoise.com

*Attorneys for Berkshire Hathaway Assurance Corporation*