UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____
                                    )
In re:                              )
                                    )  Case No. 13-53846
CITY OF DETROIT, MICHIGAN           )
                                    )  Chapter 9
                Debtor              )
                                    )  Hon. Steven W. Rhodes
_____ )

### COUNTY OF MACOMB, MICHIGAN'S OBJECTION TO DISCLOSURE STATEMENT WITH RESPECT TO PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT

County of Macomb, Michigan, a Michigan Constitutional corporation, by and through its County Agency, the Macomb County Public Works Commissioner ("Macomb"), a creditor and party in interest in the above-captioned chapter 9 bankruptcy case, hereby objects[1] to the Amended Disclosure Statement with respect to Plan for the Adjustment of Debts of the City of Detroit [Docket No. 2709] (the "Amended Disclosure Statement")[2] and, in support thereof, respectfully states as follows:

### BACKGROUND

**A.  Macomb's Relationship with Debtor**

1.  Macomb is a party to that certain Wastewater Disposal Services Contract (the "Macomb-OMI Agreement"), dated as of September 30, 2009 between Macomb and Oakland-Macomb Interceptor Drain Drainage District ("OMI").  OMI, in turn, is party to that certain Wastewater Disposal Services Contract (the "OMI-Detroit Agreement"), dated October

---

[1] Macomb expressly reserves its rights to oppose confirmation of the Amended Plan for the Adjustment of Debts of the City of Detroit [Docket No. 3380] (the "Amended Plan") on any grounds, including issues not expressly raised herein.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Disclosure Statement.

19154687

22, 2009, between OMI and the City of Detroit (the "Debtor" or the "City"), by its Board of Water Commissioners.

2. Prior to its entry into the Macomb-OMI Agreement, Macomb, through the Macomb County Wastewater Disposal District (the "MCWDD"), was a direct wholesale customer of the Detroit Water and Sewerage Department (the "DWSD") with respect to the collection, transportation, and treatment of Macomb's wastewater by the DWSD. Pursuant to a purchase agreement dated October 22, 2009, the Debtor transferred ownership of the interceptors, pump stations, meters and appurtenant facilities owned by the Debtor in Macomb County commonly known as the ITC Corridor Interceptor, the Oakland Arm Interceptor, and the Avon Arm Interceptor to OMI.

3. Pursuant to the Macomb-OMI Agreement, OMI transports wastewater from Macomb and Oakland County ("Oakland") to Detroit for treatment and disposal, and Macomb pays OMI for those services at rates based upon rates that the DWSD charges OMI, plus costs and charges incurred by OMI for providing the services. Pursuant to the OMI-Detroit Agreement, OMI is a wholesale "First Tier Customer" of the DWSD, and the DWSD charges OMI for flow delivered to the DWSD system at rates established by the Debtor through its cost allocation and rate design processes. Accordingly, any fluctuations in rates charged by DWSD to OMI under the OMI-Detroit Agreement flow directly through to Macomb pursuant to the rate structure under the Macomb-OMI Agreement. Moreover, the OMI-Detroit Agreement specifically provides that Macomb is an intended third party beneficiary of that OMI-Detroit Agreement[3] and that Macomb, on behalf of the MCWDD, has the status of a "Tier 1 Customer" of the DWSD.

---

[3] Macomb has standing to object to the Disclosure Statement as a creditor and "party in interest" under section 1109(b) of the Bankruptcy Code, made applicable to this chapter 9 case by section 901(a) of the Bankruptcy

4. In addition, Macomb, through the Macomb Interceptor Drain Drainage District (the "MIDDD"), is owed not less than $26 million in damages for overcharges relating to breach of an Acquisition Agreement dated September 2, 2010 between the MIDDD and the Debtor and fraudulent inducement and misrepresentation with respect to that agreement.[4]

B. **Negotiations Regarding a Regional Water Authority**

5. In August 2013, the Emergency Manager, through its financial advisor, Miller Buckfire, submitted a draft lease and term sheet to Macomb, Oakland, and Wayne County (the "Counties") for the creation of a regional authority (the "Regional Authority") to take over water and sewer service from the DWSD. Although the proposal was, on its face, unacceptable to the Counties, the parties began negotiating. In January 2014, the Debtor and the Counties made progress toward a memorandum of understanding (the "MOU") that included two key elements: (1) a base lease payment from the Regional Authority to the Debtor, and (2) the assumption of the DWSD pension plan by the Regional Authority. The Debtor insisted that the

---

Code. See 11 U.S.C. § 1109(b); 11 U.S.C. § 901(a). First instance, Macomb, as described in paragraph 4, Macomb has significant litigation claims against the Debtor. Moreover, Courts have recognized that a contract counterparty is generally a "party in interest" and has standing to be heard in the bankruptcy case. See In re Suffolk Reg'l Off-Track Betting Corp., 462 B.R. 397, 413 (Bankr. E.D.N.Y. 2011) (holding contract counterparty with municipal debtor had standing to object to debtor's eligibility for chapter 9 as a "party in interest" under section 1109(b) of the Bankruptcy Code because counterparty would have standing to be heard in connection with any motion to assume or reject its contract); In re Mount Carbon Metro. Dist., Case No. 97-20215 (MSK), 1999 Bankr. LEXIS 1643, at *19–21 (Bankr. D. Colo. July 20, 1999) (holding contract counterparties had standing to object to confirmation of chapter 9 debtor's plan of adjustment because they should be given "an opportunity to oppose confirmation of a plan which may affect [their] pecuniary interests, even though [their] legal rights remain the same . . ." and doing so "protects the regularity and credibility of the confirmation process"). Here, Macomb is named as a third party beneficiary under the OMI-Detroit Agreement. See OMI-Detroit Agreement § 19.07. As an intended third party beneficiary, Macomb County "effectively 'stands in the shoes' of the original promisee and 'has the same right to enforce said promise that [it] would have had if the said promise had been made directly to [it] as the promisee.'" Shay v. Aldrich, 487 Mich. 648, 665–666 (Mich. 2010) (quoting MCLS § 600.1405). As a result, Macomb is a party in interest and has standing to be heard because it is a creditor, and an expressed third party beneficiary and Tier 1 Customer under a contract with the City. Thus, Macomb needs more information to determine how to votes its claims, and analyze how its rights under the contract might be affected by the Amended Plan.

[4] Prior to the filing of this chapter 9 case, these damages were the subject of litigation in an action against the Debtor in the Circuit Court for the County of Macomb under the caption Macomb Interceptor Drain Drainage District v. City of Detroit, Case No. 13-1904-CZ. Macomb will file a proof of claim with respect to such damages prior to the governmental claims bar date.

3

base lease payment should be $47 million per year. The Counties requested certain financial due diligence regarding the rationale behind the $47 million number, as well as data regarding the amount of pension liabilities. The Debtor, however, failed to produce certain information in response to diligence requests, and the Debtor and Counties fundamentally disagreed regarding the details of the lease payment and pension assumption. Thus, the Counties did not sign the MOU.

### C. The Original Plan and Disclosure Statement

6. On February 3, 2014, the Debtor filed its original plan of adjustment [Docket No. 2708] (the "Original Plan") and disclosure statement [Docket No. 2709] (the "Original Disclosure Statement"), which stated that the treatment of the holders of Water Bonds and Sewer Bonds in classes 1A through 1F depends on whether the DWSD remains a department of the City or a Regional Authority is created taking over the functions of the DWSD, but provided virtually no information regarding the City's intentions with respect to the water and sewer systems. See Original Disclosure Statement § V.2.

### D. Potential Private Transaction

7. On or about March 25, 2014, the Debtor distributed a Request for Information (the "RFI") to potential private operators of the DWSD's water and sewer systems. The RFI requests proposals from private parties for a "public-private partnership of the operation and management of the Detroit Water and Sewage Disposal Systems" in the form of an operating and management agreement. The RFI also states that the Emergency Manager will consider structures such as a long-term lease and concession agreement or sale. The RFI requests bids for potential transactions by April 7, 2014. The Debtor's intention to consider such proposals was not included in the Original Disclosure Statement.

### E. The Amended Plan and Amended Disclosure Statement

8. On March 31, 2014, the Debtor filed the Amended Plan and Amended Disclosure Statement, which amended the Original Plan and Original Disclosure Statement. The Amended Disclosure Statement provided additional information regarding the Debtor's plan for the services provided by the DWSD, and for the first time set forth three separate options: (i) the DWSD remains a department of the City, (ii) a new Regional Authority with the Counties is formed, or (iii) the City enters into some sort of joint venture or other partnership with a private entity (collectively, the "DWSD Options"). The Amended Disclosure Statement also provided, for the first time, certain historical financial data as well as financial projections related to the DWSD. Despite this additional information, the Amended Disclosure Statement did not address all issues for which adequate information must be disclosed.

### ARGUMENT

### A. The Amended Disclosure Statement Lacks Adequate Information Regarding the Proposal for the DWSD.

9. Under section 1125(b) of the Bankrutpcy Code, a disclosure statement may not be approved unless is contains adequate information. See 11 U.S.C. 1125(b). "Adequate information" is defined as "information of a kind, and in sufficient detail … that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan…" 11 U.S.C. 1125(a). Here, the Amended Disclosure Statement provides far less than information regarding the Debtor's intentions with respect to the operations currently conducted by the DWSD, which is a crucial component of the Amended Plan. Thus, the Amended Disclosure Statement cannot be approved in its current form.

    a. The Optionality Described in the Amended Disclosure Statement is Inappropriate

10. First, the open-ended nature of the DSWD Options, *i.e.*, the Debtor's ability to choose (ostensibly at its complete discretion) one of the three separate DWSD Options, is highly problematic and prejudicial. Millions of Detroit-area citizens depend on the water and sewer services that the DWSD is obligated to provide and these citizens, Macomb, OMI, and MCWDD are not indifferent as to who will be providing those services in the future and on what terms. Because these citizens ultimately pay for these services, and because these services are public services provided by a *public service monopoly on a not-for-profit basis*, these citizens, Macomb, OMI, and MCWDD all have a compelling and substantial interest in the identity of the supplier and the terms under which sewer and water services are to be provided in the future. Because these services constitute a public service monopoly, the Debtor does not have the unfettered right simply to transfer operations to anyone it chooses under any terms it prefers for its own economic advantage or otherwise. Without adequate information regarding the precise option the Debtor proposes to pursue, and without adequate safeguards in place to protect the interests of the consumers of the services that the DWSD provides, no "hypothetical investor" can possibly make an informed decision regarding this vital aspect of the Amended Plan.

      b. The Amended Disclosure Statement Provides Inadequate Information Regarding Debtor's Intention With Respect To The OMI-Detroit Agreement

11. Second, even if the open-ended nature of the optionality described in the Amended Disclosure Statement were appropriate (which it is not), there is no disclosure in the Amended Disclosure Statement of whether the Debtor intends to reject, assume, or assume-and-assign the OMI-Detroit Agreement under each or any of the DWSD Options. This information is necessary for parties voting on the Amended Plan to evaluate its feasibility because Macomb, Oakland, and OMI—as Tier 1 wholesale customers of the DWSD's sewer services—are sources

of substantial revenues. Moreover, absent this information, Macomb cannot assess (i) whether its contractual rights will be affected by the Amended Plan, (ii) whether it has the right to vote contractual damage claims on the Amended Plan, or (iii) whether its residents will continue to have the same access to sewer services as they currently do, which is a matter of significant public concern. See, e.g., In re Shippers' Choice of Va., Inc., Case No. 04-17933 (NVA), 2006 Bankr. Lexis 4338, at *6-7 (Bankr. D. Md. July 21, 2006) (denying approval of disclosure statement for, among other reasons, "fail[ing] to provide an adequate summary of the [d]ebtor's leases and executory contracts it proposes to assume and/or reject and the anticipated amount of any claim that might arise from the rejection of an executory contract or lease"); In re Scioto Valley Mortg. Co., 88 B.R. 168, 172 (Bankr. S.D. Ohio 1988) (denying approval of disclosure statement for, among other reasons, failing to disclose "whether the [d]ebtor has any executory contracts it intends to assume under the plan").

12. If the Debtor intends to reject the OMI-Detroit Agreement, it should disclose that intention in the Amended Disclosure Statement. Absent such disclosure, Macomb may be disenfranchised from voting its claim for damages on a plan that substantially affects its rights. If the Debtor intends to assume and assign the OMI-Detroit Agreement, it should be required to disclose the details of the assignment, including the identity of the party from whom the Debtor would attempt to force Macomb to obtain sewer services and whether such assignee will be subject to regulation by the Public Service Commission or any other authority.

13. Moreover, the OMI-Detroit Agreement is a contract to obtain municipal utility services from a non-profit governmental entity and, pursuant to its terms, is not assignable without OMI's consent. Accordingly, the identity of the counterparty providing services under the OMI-Detroit Agreement is highly relevant, and it is questionable whether the Debtor can

assume or assign the agreement to a private party absent the Macomb's consent in light of section 365(c)(1) of the Bankruptcy Code. Accordingly, the Amended Disclosure Statement should describe whether the Debtor believes it has the ability to assume and assign the OMI-Detroit Agreement without Macomb's consent and the legal basis for that belief.

      c.   The Amended Disclosure Statement Must Disclose How The Amended Plan Complies With Applicable Law

14. It is unclear whether any of the proposed DWSD transactions would comply with federal, state, or local law, and thus meet the requirement for confirmation of a chapter 9 plan that "the debtor is not prohibited by law from taking any action necessary to carry out the plan." 11 U.S.C. § 943(b)(4). Moreover, it appears that certain actions with respect to the DWSD Options would require electoral approval, implicating section 943(b)(6) of the Bankruptcy Code, which requires that a Debtor obtain "any regulatory or electoral approval necessary under applicable nonbankruptcy law in order to carry out any provision of the plan" or expressly condition the provision on that approval, for its plan to be confirmed. 11 U.S.C. § 943(b)(6). Among other things, without adequate information regarding which option the DWSD intends to pursue and the details regarding any such option, it is impossible to evaluate whether the Amended Plan complies with these requirements.

15. For example, assume that the DWSD pursues a transaction with a private party that will require a sale or lease to a private party transferee. Presumably the cost of that sale or lease incurred by the private party will be passed on to ratepayers. According to the Amended Disclosure Statement, the payments received from the private party will be paid to the City's General Fund. See Amended Disclosure Statement § IV.2.(a)-(b). As these payments appear to be designed to raise revenue for the city, the cost of which will ultimately be borne by

8

ratepayers, they may be considered a tax that, under the Michigan constitution, must be voted upon by qualified electors. See, e.g., County of Jackson v. City of Jackson, 302 Mich. App. 90, 98-99 (Mich Ct. App. 2013). The Amended Disclosure Statement should disclose whether the Debtor believes that sale or lease payments from Macomb would be considered a tax, whether it is lawful under the Michigan constitution, and the basis for those beliefs.

16. Moreover, the Amended Disclosure Statement states that the Emergency Manager would consider transactions with private parties that include the long-term lease or sale of the DWSD systems. However, section 7-1204 of the Charter of the City of Detroit provides:

> 1) The City shall not sell or in any way dispose of any property needed to continue the operation of any city-owned public utility furnishing water and sewerage service, unless approved by a majority of city voters voting on the question at a regular or special election.
>
> 2) The City shall not grant any public utility franchise for water and sewerage services which is not subject to revocation at the will of the City Council unless the proposition is first approved by three-fifths (3/5) of city voters voting on the question at a regular or special election.
>
> 3) All contracts, franchises, grants, leases or other forms of transfer in violation of this section shall be void and of no effect against the city.

Charter of City of Detroit § 7-1204.

17. Given the expressed potential for a sale or long-term lease (which may be considered a disposal of assets) of DWSD property, applicable law may require approval of City voters. To be approved by the Court, the Amended Disclosure Statement should contain an explanation of how the proposed transactions involving the current operations of the DWSD will comply with applicable laws, including whether the Debtor (i) believes the actions necessary to consummate such transactions will require electoral approval, (ii) intends to obtain that approval,

9

and if so, when, and (iii) intends to condition the transactions on that approval, as required by section 943(a)(4) and (a)(6) of the Bankruptcy Code.

        d.    The Amended Disclosure Statement Lacks Adequate Information Regarding the Status Of Negotiations With The Counties And the Affect Of Transactions On Ratepayers.

18. Although the Amended Disclosure Statement provides more detail regarding potential DWSD transactions than the Original Disclosure Statement, it omits certain key information. For example, it states that negotiations among the Debtor and the Counties regarding the formation of a Regional Authority have not resulted in an agreement; Amended Disclosure Statement § VII.K.1.(a); but does not explain that negotiations are no longer ongoing and that they reached impasse due to the Debtor's insistence, without providing the Counties certain financial diligence or justification, that the Regional Authority pay $47 million in annual lease payments and assume and pre-fund all DWSD pension liabilities.

19. Further, the Amended Disclosure Statement does not provide adequate detail regarding the Debtor's intentions with respect to the DWSD's operation, particularly the effect on ratepayers. Examples include, but are not limited to:

- The Amended Disclosure Statement states that the Regional Authority "would maintain Fiscal Year 2014-15 rate setting protocols for a minimum of five years," but does not provide detail regarding what the rate setting protocols are. Amended Disclosure Statement § VII.K.1.(a).

- The new Exhibit L to the Amended Disclosure Statement shows sewer service rates increasing by 4% per year until 2023, but offers no justification for the increase or its compliance with the OMI-Detroit Agreement.

- The Pension & Fringes assumptions in the new Exhibit L state that they are based on a amounts included in a schedule to the Amended Plan that has not been provided, and thus there is no information to justify the $675 million in projected pension payments over the next 10 years, including whether that number is reflective of the Amended Plan's overall impairment of pension obligations to the GRS.

- The Amended Disclosure Statement states that a Regional Authority would make annual lease payments in the amount equal to DWSD's allocable share of the City's COPs and OPEB liabilities. Amended Disclosure Statement § VII.K.1.(a). It does not, however, explain whether that allocation will be valued based on pre-bankruptcy liabilities or liabilities as impaired by the Amended Plan.

- Although the projections provided in Exhibit L depend on significant additional borrowing, the Amended Disclosure Statement does not explain how the impairment of the existing Sewer Bonds will increase the cost of debt in the future, and how any increased cost will be passed on to ratepayers.

20. The Amended Disclosure Statement, as currently drafted, does not inform potential voters on the Amended Plan of the true status of negotiations regarding a Regional Authority, nor does it provide enough financial information to allow parties in interests to assess whether any transaction with respect to the services currently performed by the DWSD can meet the feasibility requirement of section 943(b)(7) of the Bankruptcy Code. See 11 U.S.C. § 943(b)(7). Absent adequate disclosure of such information, the Amended Disclosure Statement should not be approved.

[*Remainder of page left intentionally blank*]

WHEREFORE, to the extent modifications to the Amended Disclosure Statement are not made to address the objections set forth herein, Macomb respectfully requests that this Court deny approval of the Amended Disclosure Statement and grant such other relief as the Court deems just and proper.

Dated: April 7, 2014

        DECHERT LLP

        By:   /s/ Allan S. Brilliant
        Allan S. Brilliant
        G. Eric Brunstad
        Stephen M. Wolpert
        1095 Avenue of the Americas
        New York, NY 10016
        Telephone: (212) 698-3500
        Facsimile: (212) 698-3599
        allan.brilliant@dechert.com
        stephen.wolpert@dechert.com

        *Attorneys for County of Macomb, Michigan*