# **EXHIBIT A**

**CHADBOURNE & PARKE LLP**

30 Rockefeller Plaza, New York, NY 10112
tel 212-408-5100  fax 212-541-5369

Lawrence A. Larose
direct tel +1 212 408 1140
llarose@chadbourne.com

March 14, 2014

Bruce Bennett
Jones Day
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071-2300

Re: In re City of Detroit, Michigan, No. 13-53846 (Bankr. E.D. Mich.), Request for Additional Information in Disclosure Statement

Dear Bruce:

I write to you on behalf of my client, Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance Inc. ("Assured"), a creditor and party in interest in the chapter 9 case of your client, the City of Detroit, Michigan (the "City"). As you are aware, Assured is a monoline insurer that provides financial guarantees to the U.S. public finance market. Assured and its affiliates insure or reinsure approximately $2.24 billion in gross aggregate principal amount of outstanding bonds issued by the City, including water supply system bonds, sewage disposal system bonds, and unlimited tax general obligation bonds. This letter is sent in compliance with the Bankruptcy Court's Second Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [Docket No. 2937], which requires parties, including Assured, to make a good faith effort to advise counsel for the City in writing of any request to include additional information in the City's disclosure statement (the "Disclosure Statement").[1] Below please find a list of additional information, organized by topic, that Assured requests the City provide in an amended Disclosure Statement, without prejudice to Assured's right to object to the Disclosure Statement or Plan on other grounds.

---

[1] Capitalized terms used but not defined herein have the meaning given to them in the Plan for the Adjustment of Debts of the City of Detroit (February 21, 2014) (Docket No. 2708) (the "Plan").

New York  Washington  Los Angeles  Mexico City  São Paulo  London  Moscow  Warsaw  Kyiv  Istanbul  Dubai  Beijing

13-53846-tjt    Doc 3864-1    Filed 04/07/14    Entered 04/07/14 17:23:27    Page 2 of 17

CHADBOURNE
& PARKE LLP

I.  **Additional Information Related to DWSD Claims**

Assured insures several series of Detroit Water and Sewer Department (the "DWSD") Water and Sewer Bonds (collectively, the "DWSD Bonds"). Claims against the City arising from the DWSD Bonds have been classified in Classes 1A, 1B, 1C, and 1D under the Plan. Assured requests the following additional information related to these claims.

   A. The Disclosure Statement provides that the replacement bonds to be provided to holders of DWSD Bonds under the Plan will have their interest rate calculated by reference to the Interest Rate Reset chart attached as Exhibit I.A.150 to the Plan. See Disclosure Statement, at 94, 96. As noted below, the Interest Rate Reset chart is incomplete insofar as it fails to include data related to the proposed treatment of the DWSD Revolving Bonds. Additionally, Assured requests an explanation of the Interest Rate Reset Chart, including, but not limited to the following:

      1. the methodology for creating the senior curve provided in the chart;

      2. a clear statement regarding which column reflects the new interest rate that would be applicable to each specific affected CUSIP;

      3. comparable credits that substantiate rates reflected in chart; and

      4. any expert reports prepared in the creation of the Interest Rate Reset Chart.

   B. The Disclosure Statement discusses a potential DWSD Transaction. See Disclosure Statement, at 96. Assured requests the details of all potential DWSD Transactions that are being, have been, or may be, considered by the City, including, but not limited to, the following details:

      1. the potential operations and maintenance expenses of the GLWA, including the potential lease payments that the GLWA would be required to pay to the City;

      2. the projected revenues and expenses of the GLWA in the event the transaction is consummated;

      3. the projected revenues and expenses of the DWSD in the event the transaction is not consummated;

      4. the assets to be transferred as part of the transactions and

      5. all material risks related to any potential DWSD Transaction.

C. The Disclosure Statement references a PILOT payment payable to the City's General Fund in a discussion of a "Transfer of Assets" under the terms of the New Existing Rate DWSD Bonds. See Disclosure Statement, at 95. Assured requests a definition and explanation regarding this proposed PILOT payment, which is not discussed anywhere else in the Disclosure Statement.

D. The Disclosure Statement provides that new bonds issued under the Plan "otherwise shall have the same terms and conditions as the applicable DWSD Series of DWSD Bonds." Disclosure Statement, at 96-97. Assured requests confirmation that covenants associated with the applicable series of DWSD Bonds, including System rate covenants, will be retained unchanged.

E. The Disclosure Statement provides that "the DWSD will accelerate, or prefund, the majority of its full allocable share of the GRS UAAL such that, after the initial 10 year period through June 30, 2023, is completed and the unused DIA Settlement and State settlement moneys are received by the GRS, DWSD will have very small contributions, if any, to make to the GRS." Disclosure Statement at 6. Additionally, the Disclosure Statement provides that the exclusive sources for contributions to the GRS through June 30, 2023 include pension-related payments received by the City from the DWSD equal to approximately $675,000,000. Assured requests the following information related to the DWSD's contributions to GRS:

   1. the current schedule of payments of DWSD contributions to the GRS through June 30, 2023;

   2. the current source of funding for payment of DWSD contributions to the GRS through June 30, 2023;

   3. the current priority of payment of DWSD contributions to the GRS through June 30, 2023 with respect to other DWSD obligations, including the DWSD Bonds;

   4. the authority for the Plan to require that DWSD prefund the majority of its allocable share of GRS UAAL over an accelerated 10 year period;

   5. the proposed schedule of payments of DWSD contributions to the GRS through June 30, 2023 under the Plan;

   6. the proposed source of funding for payment of DWSD contributions to the GRS through June 30, 2023 under the Plan;

7. the proposed priority of payment of DWSD contributions to the GRS through June 30, 2023 with respect to other DWSD obligations, including the DWSD Bonds;

8. support for the amount of pension-related payments owed by the DWSD to the City through June 30, 2023.

9. the extent to which the City and each of its other departments, agencies and enterprise funds will be required/permitted to prefund, eliminate or reduce pension contributions through June 30, 2023; and

10. whether, and if so how, the City intends to ensure that the prefunding through June 30, 2023 will remain attributable only to the DWSD allocable share of GRS UAAL.

F. The Disclosure Statement acknowledges that holders of new securities may encounter "limited market acceptance of City credit . . . ." Disclosure Statement, at 125. Assured requests additional information regarding whether the City has analyzed or modeled the anticipated market reaction to insured vs. uninsured debt issuances, and the results of such analysis.

G. The Disclosure Statement provides limited information regarding the tax exempt status of interest payments on replacement bonds issued to DWSD bondholders. See Disclosure Statement, at 128. Assured requests additional information regarding the tax exempt status of interest payments on replacement bonds issued to DWSD Bondholders.

H. Emergency Manager Order No. 22 issued by Emergency Manager Kevyn Orr on January 30, 2014 provides, in relevant part, that the City intends to issue New Sewage Disposal System Revenue Bonds (the "New DWSD Issuance") in a principal amount not to exceed $350,000,000 on a first priority basis, *pari passu* with the existing first lien bonds secured by the net revenues of the DWSD sewer system. The Disclosure Statement does not provide any information regarding the New DWSD Issuance. Assured requests additional information regarding the New DWSD Issuance, including, but not limited to, the following:

1. the material terms of the New DWSD Issuance;

2. the "call protection" that the New DWSD Issuance may have;

3. the priority of payment of the New DWSD Issuance; and

    4. the effect on the financial projections that the City has provided, based on the issuance (or non-issuance) of these New DWSD Issuance.

I. The Disclosure Statement and Plan reference Exhibit I.A.165 – Form of New DWSD Bond Documents, Exhibit I.A.169 – Form of New Existing Rate DWSD Bond Documents, Exhibit I.A.171 – Form of New Existing Rate GLWA Bond Documents, and Exhibit I.A.173 – Form of New GLWA Bond Documents, none of which have been provided. Assured requests that these exhibits be provided.

J. The Disclosure Statement does not provide the historical financials for the DWSD. Assured requests that the audited ten-year historical financials for the DWSD be provided including, but not limited to, the following:

1. the balance of the Operation and Maintenance Fund;

2. the source and amount of all credits to the Operation and Maintenance Fund including, but not limited to:

    a. the amount and a description of each of the expenses of administration and operation of the DWSD, and

    b. whether pension payments were included as an expense of administration and operation of the System and, if so, the amount of such pension payments;

3. the recipient and amount of all debits to the Operation and Maintenance Fund;

4. the balance of the Sewage Disposal System Receiving Fund;

5. the source and amount of all credits to the Sewage Disposal System Receiving Fund;

6. the recipient and amount of all debits to the Sewage Disposal System Receiving Fund;

7. Receiving Fund;

8. the balance of the Water Supply System Receiving Fund;

9. the source and amount of all credits to the Water Supply System Receiving Fund;

CHADBOURNE
& PARKE LLP

10. the recipient and amount of all debits to the Water Supply System Receiving Fund;

11. the balance of the Senior Lien Debt Service Account;

12. the source and amount of all credits to the Senior Lien Debt Service Account;

13. the recipient and amount of all debits to the Senior Lien Debt Service Account;

14. the balance of the Senior Lien Debt Reserve Account;

15. the source and amount of all credits to the Senior Lien Debt Reserve Account;

16. the recipient and amount of all debits to the Senior Lien Debt Reserve Account;

17. the balance of the Second Lien Debt Service Account;

18. the source and amount of all credits to the Second Lien Debt Service Account;

19. the recipient and amount of all debits to the Second Lien Debt Service Account;

20. the balance of the Second Lien Debt Reserve Account;

21. the source and amount of all credits to the Second Lien Debt Reserve Account;

22. the recipient and amount of all debits to the Second Lien Debt Reserve Account;

23. the balance of the SRF Junior Lien Debt Service Account;

24. the source and amount of all credits to the SRF Junior Lien Debt Reserve Account;

25. the recipient and amount of all debits to the SRF Junior Lien Debt Reserve Account;

CHADBOURNE
& PARKE LLP
-7-                                         March 14, 2014

    26. the balance of the Extraordinary Repair and Replacement Reserve Fund;

    27. the source and amount of all credits to the Extraordinary Repair and Replacement Reserve Fund;

    28. the recipient and amount of all debits to the Extraordinary Repair and Replacement Reserve Fund;

    29. the balance of the Improvement and Extension Fund;

    30. the source and amount of all credits to the Improvement and Extension Fund;

    31. the recipient and amount of all debits to the Improvement and Extension Fund;

    32. the balance of the Surplus Fund;

    33. the source and amount of all credits to the Surplus Fund; and

    34. the recipient and amount of all debits to the Surplus Fund;

K. The Disclosure Statement does not provide projected financials for the DWSD. Assured requests that the projected financials for the DWSD be provided.

L. The Disclosure Statement does not provide projected financials for the GLWA. Assured requests that the projected financials for the GLWA be provided.

M. The Disclosure Statement does not provide information regarding the projected capital needs of the DWSD. Assured requests any and all information regarding the projected capital needs of the DWSD.

N. On March 12, 2014, Emergency Manager Kevyn Orr announced that he is now considering selling or privatizing the DWSD in lieu of entering into a DWSD Transaction. Assured requests any and all information regarding any sale or privatization of the DWSD that is being, has been, or may be under consideration, including, but not limited to, the following:

    1. the scope of the DWSD-related assets that may be transferred;

    2. the purchase price;

    3. all potential purchasers;

CHADBOURNE
& PARKE LLP

4. the status of any negotiations with potential purchasers;

5. a detailed discussion of the process and timing of any sale or privatization; and

6. the treatment of existing liens if the DWSD were to be sold or privatized, including those liens giving rise to claims classified in the Plan as Classes 1A, 1B, 1C, 1D, 1E, or 1F.

## II. Additional Information Related to UTGO Claims

Assured insures several series of unlimited tax general obligation bonds issued by the City (the "UTGO Bonds"). Claims against the City arising from the UTGO Bonds have been classified in Class 8 under the Plan. Assured requests the following additional information related to these claims.

A. The Disclosure Statement provides that holders of UTGO Bonds will receive "Plan UTGO Notes." See Disclosure Statement, at 82. The terms of the Plan UTGO Notes, however, are not provided in either the Plan or the Disclosure Statement. Assured requests all information regarding the terms of the Plan UTGO Notes including, but not limited to, the following:

1. a description of the obligation, including whether it would be a secured or unsecured obligation;

2. the initial principal amount;

3. the interest rate;

4. the methodology for determining the interest rate;

5. the maturity;

6. the amortization schedule; and

7. the form of the Plan UTGO Note.

B. Assured requests additional information regarding the mills pledged to support the UTGO bond debt, most recently assessed at 9.6136 mills (the "UTGO Millage") including, but not limited to, the following:

1. detailed information and analysis regarding the collection of the UTGO Millage including, but not limited to:

& PARKE LLP

-9-                                                                                                        March 14, 2014

        a. historical ten-year UTGO Millage collection rates,

        b. projected ten-year UTGO Millage collection rates,

        c. historical ten-year balances of the Debt Retirement Fund,

        d. the source and amount of all credits to the Debt Retirement Fund,

        e. the recipient and amounts of all debits to the Debt Retirement Fund,

        f. historical ten-year balances of the Bond Issuance Fund,

        g. the source and amount of all credits to the Bond Issuance Fund,

        h. the recipient and amount of all debits to the Bond Issuance Fund,

        i. historical ten-year balances of the Escrow Fund,

        j. the source and amount of all credits to the Escrow Fund,

        k. the recipient and amount of all debits to the Escrow Fund,

        l. historical ten-year balances of the Construction Fund,

        m. the source and amount of all credits to the Construction Fund, and

        n. the recipient and amount of all debits to the Construction Fund;

2. information regarding whether the UTGO Millage is being used to make set-asides on account of the secured general obligation bonds series 2010(A) and, if so, the authority for such use of the UTGO Millage and amount of all such set asides;

3. the use of the UTGO Millage since the July 18, 2013; and

4. projections as to the amount and collectability of the UTGO Millage for the next ten years.

C. The Disclosure Statement states that the City may lose its ability to levy the UTGO millage if the UTGO Bonds are impaired in the plan. See Disclosure Statement, at 125. The Disclosure Statement also provides that "[i]n the event the City is precluded from levying [the UTGO Millage], it anticipates borrowing funds

13-53846-tjt    Doc 3864-1    Filed 04/07/14    Entered 04/07/14 17:23:27    Page 10 of 17

sufficient to replace this lost revenue." Assured requests additional information regarding the following:

1. the legal basis for continuing to impose the UTGO Millage in the absence of the voter-approved obligations for which the UTGO Millage was authorized; and

2. the terms of any potential borrowing by the City to replace the revenues of the UTGO Millage as contemplated by the Disclosure Statement, including but not limited to:

    a. the lender;

    b. a description of the obligation, including whether it would be a secured or unsecured obligation;

    c. the security;

    d. the initial principal amount;

    e. the interest rate;

    f. the methodology for determining the interest rate;

    g. the maturity; and

    h. the amortization schedule.

D. The Ten-Year Financial Projections, Exhibit J, to the Disclosure Statement, include base projections that "assume the City is able to continue to collect the UTGO Millage." Disclosure Statement - Exhibit J, at 4. Exhibit J to the Disclosure Statement also includes a restructuring scenario in which there is a "reduction in millage to reflect treatment of UTGO as unsecured and corresponding reduction in property tax revenues." Disclosure Statement – Exhibit J, at 5. Assured requests additional information and clarification regarding the following:

1. the restructuring scenario in which the City loses its ability to levy the UTGO Millage and is required to borrow "funds sufficient to replace" the UTGO Millage; and

2. the restructuring scenario in which the City loses its ability to levy the UTGO Millage and is unable to obtain replacement financing.

E. The Disclosure Statement acknowledges that holders of new securities may encounter "limited market acceptance of City credit . . . ." Disclosure Statement, at 125. Assured requests additional information regarding whether the City has analyzed or modeled the anticipated market reaction to insured vs. uninsured debt issuances, and the results of such analysis.

F. The Disclosure Statement provides no information regarding whether the tax exempt status of UTGO Bonds will be retained for the Plan UTGO Notes. Assured requests additional information regarding whether the Plan UTGO Notes will be treated as tax exempt.

G. The Disclosure Statement and Plan reference Exhibit I.A.206 – Principal Terms of Plan UTGO Notes and Exhibit I.A.207 – Form of Plan UTGO Note, neither of which has been provided. Assured requests that these exhibits be provided.

H. Assured requests information regarding the potential effect of a finding in the UTGO Litigation that the UTGOs are secured obligations.

I. Assured requests additional disclosure that recent audited financials show sufficient millage collection to pay the Unlimited Tax General Obligation Bond Claims in full, and complete explanation why such audited financials are incorrect.

J. Assured requests the specific proposed uses of the balance of millage that would not be paid to the holders of Unlimited Tax General Obligation Bond Claims under the Plan.

### III. Bond Insurer Claims

A. Assured requests a description of the City's proposed Plan treatment of Bond Insurer Claims. This description should include specific treatment for each category of claims asserted by the Bond Insurers, including but not limited to,

1. claims for principal and interest due under the applicable bond documents, whether by subrogation, assignment or otherwise; and

2. direct claims for contractual reimbursement of charges, fees, costs, losses, liabilities and expenses incurred by the Bond Insurers in connection with their respective insurance policies, reimbursement agreements and applicable bond documents.

IV. **Voting Issues and Procedures**

    A. Assured requests that a brief discussion of the voting procedures, including the voting dispute resolution procedures, be added to the Disclosure Statement.

    B. Assured requests that the Disclosure Statement be amended to clarify that both Insurers and Holders of securities giving rise to claims in Classes 1A, 1B, 1C, 1D, 1E, 7, 8, or 9 will receive ballots and be allowed to vote on the Plan.

V. **Additional Information Requested**

In addition, Assured requests the following information as a party in interest in this case.

    A. The Disclosure Statement provides that the replacement bonds provided to holders of DWSD Revolving Bonds will have their respective interest rates calculated by reference to the Interest Rate Reset Chart, attached as Exhibit I.A.150 to the Plan. See Disclosure Statement, at 95, 97. The Interest Rate Reset Chart, however, does not include any information regarding the replacement bonds that will be provided to holders of DWSD Revolving Bonds. Assured requests additional information regarding the interest rates to be provided to holders of DWSD Revolving Bonds.

    B. The Disclosure Statement provides that the City will enter into the DIA Settlement, the proceeds of which will be used to fund the City's pension contributions. See Disclosure Statement, at 98. The Disclosure Statement fails to provide the definitive documentation governing this DIA Settlement. Assured requests additional information regarding the terms of the DIA Settlement.

    C. The Disclosure Statement provides that a condition to the Foundations' participation in the DIA Settlement is "the affirmation by County authorities of certain existing funding obligations with respect to DIA Corp." Disclosure Statement, at 98. Assured requests further explanation as to the meaning of this statement, including a description of each "existing funding obligation" to be reaffirmed by the County.

    D. The Disclosure Statement provides that the DIA Funding Parties means the Foundations and DIA Corp. The Disclosure Statement does not disclose the identities of the Foundations. Assured requests that the Foundations be specifically identified.

    E. The Disclosure Statement provides that if Classes 10 and 11 accept the Plan, Holders of PFRS Claims that accept the Plan will have the option to enter into a

settlement with the City. See Disclosure Statement, at 84. The Disclosure Statement also provides that if Classes 10 and 11 accept the Plan, Holders of GRS Claims who accept the Plan will have the option to enter into a settlement with the City. See Disclosure Statement, at 85. Assured requests clarification as to whether both Classes 10 and 11 must accept the Plan before an accepting PFRS and GRS claimant may enter into a settlement with the City.

F. The Disclosure Statement provides that the Estimated Percentage Recovery for Class 10 – PFRS Claims will be 20.8-29.8%. See Disclosure Statement, at 16. The Disclosure Statement also provides that PFRS Claim holders will receive a monthly pension equal to an estimated 90-94% of the amount currently being received. See Disclosure Statement, at 7. Assured requests detailed additional information explaining how the Estimated Percentage Recovery was calculated.

G. The Disclosure Statement provides that the Estimated Percentage Recovery for Class 11 – GRS Claims will be 27.5-33.3%. See Disclosure Statement, at 17. The Disclosure Statement also provides that GRS Claim holders will receive a monthly pension equal to an estimated 66-74% of the amount currently being received. See Disclosure Statement, at 7. Assured requests detailed additional information explaining how the Estimated Percentage Recovery was calculated.

H. The Disclosure Statement provides that if the GRS pension plans exceed an 80% funding level by June 30, 2023 there could be an improvement in the pensions at that time. See Disclosure Statement, at 8. Assured requests detailed additional information regarding the treatment of GRS Claims if the GRS pension plans are (or are projected to be) below an 80% funding level by, or at any time after, June 30, 2023.

I. The Disclosure Statement discusses the establishment and funding of a Professional Fee Reserve. See Disclosure Statement, at 99. Assured requests additional information regarding this Professional Fee Reserve including, but not limited to, the following:

   1. the source of funding for the Professional Fee Reserve;

   2. the amount of the Professional Fee Reserve; and

   3. the potential effect, if any, of the consummation of a DWSD Transaction (or a sale of DWSD assets) on the Professional Fee Reserve.

J. The Disclosure Statement discusses three requirements that may affect state revenue sharing. See Disclosure Statement, at 25. Assured requests additional

information as to whether the City has met these requirements and whether the City expects to do so in the future.

K. Assured requests additional information explaining how the City derived its estimate of a 20% recovery for the holders of Limited Tax General Obligation Bonds. This information should include, but not be limited to,

1. a definition of the "certain incremental recurring gross specified tax receipts" from which the New C Notes will be paid;

2. a detailed explanation of the adjustments to the Revenue Hurdle;

3. an estimate of the aggregate allowed amount of the COP Claims (which will share in the New B Notes and the New C Notes if they become Allowed Claims), as well as the amount to be contributed to Disputed COP Claim Reserve (if different);

4. the basis for the estimate of the aggregate allowed amount of the COP Claims and the amount of the Disputed COP Claim Reserve (if different);

5. an estimate of the aggregate allowed amount of Other Unsecured Claims; and

6. the basis for the estimate of the aggregate allowed amount of Other Unsecured Claims.

VI. **Missing Documentation/Terms**

A. Assured requests the principal terms (unless already provided) and documentation for the following items:

1. The New DWSD Bond Documents;

2. The New Existing Rate DWSD;

3. The New DWSD Revolving Bond Documents;

4. The New GLWA Bond Documents;

5. The New GLWA Existing Rate Bond Documents;

6. The New GLWA Revolving Bond Documents;

7. Plan UTGO Note;

8. Schedule of DIA Assets;

9. DIA Settlement Documents;

10. New B Notes Documents;

11. New B Notes Valuation;

12. New C Notes Documents;

13. Detroit VEBA Trust Agreement;

14. OPEB Claims Note;

15. GRS Hybrid Pension Formula;

16. Plan GRS Settlement Documents;

17. Schedule of Reductions to Allowed GRS Claims and Related Allowed OPEB Claims;

18. Schedule of Payments and Sources of Payments for Modified GRS Pension Benefits;

19. PFRS Hybrid Pension Formula;

20. Plan PFRS Settlement Documents;

21. Schedule of Reductions to Allowed PFRS Claims and Related Allowed OPEB Claims;

22. Schedule of Payments and Sources of Payments for Modified PFRS Pension Benefits;

23. Reduction Formula for Participants in Annuity Savings Fund Accounts;

24. Retiree Health Care Settlement Agreement;

25. Schedule of Postpetition Collective Bargaining Agreements;

26. Plan COP Settlement Documents;

CHADBOURNE
& PARKE LLP
                                -16-                        March 14, 2014

27. Executory Contracts and Unexpired Leases to be Rejected, and

28. Retained Causes of Action.

Assured believes that the additional information requested herein is necessary to satisfying the City's burden that the disclosure statement contain "adequate information" pursuant to section 1125 of the Bankruptcy Code. Chadbourne & Parke LLP is available to discuss this request for additional information with the City's advisors.

Very truly yours,

Lawrence A. Larose