# Exhibit B

# Information Request

**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Kelly DiBlasi**
+1 (212) 310-8032
Kelly.DiBlasi@weil.com

BY E-MAIL

March 14, 2014

Bruce Bennett
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
bbennett@jonesday.com

Re:  Request to Include Additional Information in the Disclosure Statement

Dear Mr. Bennett:

On behalf of our clients, Financial Guaranty Insurance Company ("**FGIC**") and Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (collectively, "**Syncora**"), pursuant to paragraph 1 of the *Second Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment*, dated March 6, 2014 [Docket No. 2937], we hereby request that the City of Detroit (the "**City**") include the following additional information in the *Disclosure Statement with respect to Plan of Adjustment of Debts of the City of Detroit*, dated February 21, 2014 [Docket No. 2709] (as the same may be amended, the "**Disclosure Statement**"):

1. **DIA Settlement**[1]

    a.  An explanation of the status of the DIA Settlement, including, without limitation, the status of the Foundations' commitments, the status of the commitment by DIA Corp. and the status of the City's efforts to obtain the approval of the Attorney General for the State and any and all necessary approvals.

    b.  An explanation of all conditions to and risks associated with the execution or effectiveness of the DIA Settlement, including, without limitation, a description of what, if any, approvals are required.

    c.  An explanation of the use of *all* proceeds of the DIA Settlement.[2]

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Disclosure Statement or the *Plan for the Adjustment of Debts of the City of Detroit*, dated February 21, 2014 [Docket No. 2708] (as the same may be amended, the "**Plan**"), as applicable.

        d.        An explanation regarding how the treatment of, and the estimated percentage recoveries for, each class of creditors holding Unsecured Claims (classes 7, 8, 9, 10, 11, 12, and 13) will change if the DIA Settlement does *not* become effective, including backup information detailing how the City calculated such recovery estimates.

    2.      **Plan PFRS and GRS Settlements**

        a.        A description of the City's claims against the State and/or State Related Entities that the City will be deemed to release if the Plan PFRS Settlement and Plan GRS Settlement are consummated, and how such claims relate to the State GRS Consideration and the State PFRS Consideration.

    3.      **DWSD Share of GRS UAAL**

        a.        An explanation of the likelihood that DWSD will accelerate, or prefund, its allocable share of the GRS UAAL to the GRS, including all risks associated therewith.

        b.        An explanation regarding how the treatment of, and the estimated percentage recoveries for, each class of creditors holding Unsecured Claims (classes 7, 8, 9, 10, 11, 12, and 13) will change if the DWSD does *not* prefund its allocable share of the GRS UAAL to the GRS, including backup information detailing how the City calculated such recovery estimates.

    4.      **Estimated Percentage Recoveries**

        a.        Backup information detailing how the City calculated the estimated recovery percentages set forth in Section II.B. of the Disclosure Statement, including an explanation of all assumptions and risks underlying such calculations.

        b.        The estimated percentage recoveries, along with backup information detailing how the City calculated such recovery estimates, for all Unsecured Claims (claims

---

[2] Section IV.F.2 of the Plan indicates that, pursuant to the DIA Settlement, the Foundations have made an irrevocable commitment of $365 million, and DIA Corp. has made an irrevocable commitment to raise at least $100 million from its donors, for a total of at least $465 million in DIA Proceeds. Pursuant to section II.B.3.t.ii.A of the Plan, $175 million of the DIA Proceeds will be used to fund the City's contributions to the PFRS, and, pursuant to section II.B.3.u.ii.A of the Plan, $245 million of the DIA Proceeds will be used to fund the City's contributions to the GRS, for a total of $420 million. Neither the Plan nor the Disclosure Statement discloses the intended use of the remaining $45 million of DIA Proceeds.

in classes 7, 8, 9, 10, 11, 12 and 13), assuming the above-captioned chapter 9 case is dismissed and creditors are left to their state law remedies.

5. **Administrative Expense Claims**

    a. Estimated amount of administrative expense claims that will be satisfied pursuant to the Plan.

    b. An explanation of the assumptions the City made with respect to the payment of administrative expense claims in connection with calculating the estimated recovery percentages set forth in Section II.B of the Disclosure Statement.

6. **General Obligation Bonds**

    a. The estimated percentage recoveries, along with backup information detailing how the City calculated such recovery estimates, for all Unsecured Claims (claims in classes 7, 8, 9, 10, 11, 12 and 13), assuming that the City cannot continue to collect the ad valorem tax related to its Unlimited Tax General Obligation Bond debt, or that the City can use such tax only to fund recoveries for holders of Unlimited Tax General Obligation Bonds.

    b. The estimated percentage recoveries, along with backup information detailing how the City calculated such recovery estimates, for all Unsecured Claims (claims in classes 7, 8, 9, 10, 11, 12 and 13), assuming the City is obligated to use general tax revenues collected within the City's charter, statutory or constitutional limitations to service the Limited Tax General Obligation Bonds.

7. **Certificates of Participation**

    a. An explanation of the calculations behind, and any backup information for, the outstanding aggregate amount of each of the three series of COPs set forth on page 31 of the Disclosure Statement.

    b. An explanation of the strengths and weaknesses of the issues to be resolved pursuant to the Plan COP Settlement and why such settlement is reasonable.

    c. A disclosure that there is a risk that if the City is successful in its litigation to invalidate the COPs, the Funding Trusts, Beneficial Holders and/or insurers may have claims against the GRS and the PFRS to disgorge the proceeds received in connection with the 2005 and 2006 COPs transactions, and an explanation of the consequences of any such disgorgement.

    d.    The estimated UAAL for the GRS and the PFRS, assuming the GRS and PFRS are required to disgorge the proceeds received in connection with the 2005 and 2006 COPs transactions.

    e.    The estimated percentage recoveries, along with backup information detailing how the City calculated such recovery estimates and how the City would fund such recoveries, for all Unsecured Claims (claims in classes 7, 8, 9, 10, 11, 12 and 13), assuming the GRS and PFRS are required to disgorge the proceeds received in connection with the 2005 and 2006 COPs transactions.

    f.    An explanation of how the City intends to deliver Distributions on account of COPs Claims.[3]

8. **Pension Claims**

    a.    A copy of the "Comparison" referenced on page 6 of the Disclosure Statement.

    b.    A copy of Exhibit II.B.3.t.ii.A to the Plan, identifying annual contributions to be made to the PFRS through the Fiscal Year ending June 30, 2023.

    c.    A copy of Exhibit II.B.3.u.ii.A to the Plan, identifying annual contributions to be made to the GRS through the Fiscal Year ending June 30, 2023.

    d.    An analysis of the City's ability to contribute all amounts necessary to fund the pension benefits that accrue under the GRS and the PFRS, as modified by the Plan (assuming the DIA Settlement and the State Settlement become effective and the DWSD prefunds its allocable share of the GRS UAAL to the GRS over the fiscal period ending June 30, 2023), through 2044, including an explanation of all assumptions and risks underlying such analysis.

        i.    The City's projected cash flows through 2044.

    e.    An analysis of the likelihood that the PFRS or the GRS will have a funding level of more than 80% by June 30, 2023, and how such additional funding will affect the estimated percentage recoveries for pension claims in classes 10 and 11, including an explanation of all assumptions and risks underlying such analysis.

---

[3] Section VI.O.9(b) of the Disclosure Statement addresses delivery of Distributions on account of "Bond Claims,"; however, COP Claims are not included in the definition of "Bond Claims."

    f.    An analysis of (i) the likelihood that Excess Allocations will be applied to reduce Annuity Savings Fund Accounts of active employees and monthly pension amounts of current retirees who are Holders of GRS Pension Claims, (ii) the estimated amount of such Excess Allocations and (iii) the impact the application of such Excess Allocations will have on the estimated percentage recoveries for pension claims in class 11, including an explanation of all assumptions and risks underlying such analysis, including a copy of Exhibit II.B.3.u.ii.D to the Plan, setting forth the formulae the City will use in connection with such analysis.

    g.    A detailed description of the key terms of any agreements with respect to governance of the GRS or the PFRS.

9. **OPEB**

    a.    The estimated percentage recoveries, along with backup information detailing how the City calculated such recovery estimates, for OPEB Claims (separate and apart from Pension Claims), including how the City calculated the total aggregate amount of allowed OPEB Claims, whether any such claims are held by active employee and whether and how the City's analysis accounts for the implementation of the Affordable Care Act and the City's agreement to provide monthly stipends to certain retirees.

    b.    The estimated percentage recoveries, along with backup information detailing how the City calculated such recovery estimates, for all Unsecured Claims (claims in classes 7, 8, 9, 10, 11, 12 and 13), including separate estimates for OPEB Claims and Pension Claims, assuming the Bankruptcy Court does not approve the aggregation of OPEB and Pension Claims for Plan treatment purposes.[4]

10. **Other Unsecured Claims**

    a.    The Estimated Aggregate Allowed Amount of Other Unsecured Claims.

---

[4] Page 123 of the Disclosure Statement states "[i]f the Bankruptcy Court does not approve the aggregation of OPEB and Pension Claims for Plan treatment purposes, the likely impact will be that the OPEB Claims will receive a greater payment but the respective GRS Pension Claims and PFRS Pension Claims will receive lower payments. This will result in event larger cuts to accrued pension benefits for Holders of GRS Pension Claims and PFRS Pension Claims, respectively." However, the Disclosure Statement provides no additional information regarding the impact of the Bankruptcy Court declining to approve the aggregation of OPEB and Pension Claims.

    b.    An explanation of the assumptions the City made with respect to the Other Unsecured Claims in connection with calculating the estimated recovery percentages set forth in Section II.B of the Disclosure Statement.

11. **Convenience Claims**

    a.    The Estimated Aggregate Allowed Amount of Convenience Claims.

    b.    An explanation of the assumptions the City made with respect to the Convenience Claims in connection with calculating the estimated recovery percentages set forth in Section II.B of the Disclosure Statement.

12. **Disputed Claims**

    a.    The estimated amount of Disputed Claims.

    b.    An explanation of the assumptions the City made with respect to the Disputed Claims in connection with calculating the estimated recovery percentages set forth in Section II.B of the Disclosure Statement.

13. **DWSD Transaction**

    a.    An explanation of the status of the City's negotiations with respect to a DWSD Transaction, including the timing, material terms and likelihood of execution and effectiveness of any such transaction.

14. **Asset Monetization**

    a.    *Automobile Parking Fund.*

        i.    Status of report being conducted by parking specialist, including any initial assessment of the value of the City's parking assets.

        ii.    Anticipated use of proceeds of any transaction to monetize the City's parking assets, including an analysis of how such proceeds will impact the estimated percentage recoveries on account of all Unsecured Claims (claims in classes 7, 8, 9, 10, 11, 12 and 13), along with backup information detailing how the City calculated such impact.

      b.    *DIA Collection*

           i.    The aggregate fair market value of the works of art in the DIA Collection that were not included in Christie's Preliminary Report or Final Report, including an explanation of any limitations or restrictions on the ownership, title, acquisition, donation, transfer, use, display, reproduction, sale or disposition of such works and an analysis of how any such limitations or restrictions impact the value of such works.

           ii.    An explanation of the strengths and weaknesses of the issues to be resolved pursuant to the DIA Settlement and why such settlement is reasonable.

      c.    *City-Owned Land*

           i.    Valuation of the City-owned land.

           ii.    Anticipated use of proceeds of any transaction to monetize the City-owned land, including an explanation regarding whether and how the existing projections account for such proceeds, and, to the extent the current projections do not take such proceeds into account, an analysis of how such proceeds will impact the estimated percentage recoveries on account of all Unsecured Claims (claims in classes 7, 8, 9, 10, 11, 12 and 13), along with backup information detailing how the City calculated such impact.

15.    **Exit Financing**

      a.    An explanation of the City's efforts to obtain the Exit Facility, including the status of the City's negotiations with potential lenders and the material terms of any potential transactions.

      b.    An explanation of the consequences of the City's failure to obtain an Exit Facility, including the impact on the estimated percentage recoveries on account of all Unsecured Claims (claims in classes 7, 8, 9, 10, 11, 12 and 13), along with backup information detailing how the City calculated such impact.

16.    **New C Notes**

      a.    An explanation of which tax line items will be included as GSTR and the estimated revenues of each.

        b.      An explanation of the likelihood the City will ever make distributions on account of the New C Notes based on the projections attached to the Disclosure Statement Exhibit J, as well as the expected amounts and timing of any such distributions and the assumptions and risks underlying such analysis.

17.    **Failure to Achieve Projected Financial Performance**

        a.      Page 124 of the Disclosure Statement indicates that the Projections are dependent upon, among other things, the successful implementation of the City's budget and confirmation of the Plan in accordance with its terms. An explanation regarding:

              i.      the management and operations of the City after emergence from chapter 9, including any limitations or restrictions with respect thereto, whether and for how long the City will remain in receivership under the control of an emergency manager pursuant to Public Act 436, and what will happen upon the completion of Kevyn Orr's 18-month term (*i.e.* will the governor continue his term or appoint a new emergency manager?); and

              ii.     the extent to which, after the City emerges from chapter 9 and the receivership pursuant to Public Act 436 terminates, the City's mayor and the City Council will be required to implement the Plan and the City's budget, including the Restructuring and Reinvestment Initiatives attached to the Disclosure Statement as Exhibit I.

As detailed above, the Disclosure Statement fails to disclose various financial analyses and other information regarding the proposed settlements under the Plan (*e.g.* status of, claims resolved by, use of proceeds of, and specific impact on creditors of such settlements), which information is essential to enable creditors to assess their treatment under the Plan. The Disclosure Statement and the Plan also reference certain documents and exhibits that are not attached to either the Disclosure Statement or the Plan. Accordingly, in addition to the information requests set forth above, FGIC and Syncora respectfully request that the City provide copies of the missing documents and exhibits set forth on the list attached hereto as **Exhibit A**.

FGIC and Syncora reserve all rights to request additional information and/or modify any of the requests herein, including in connection with filing an objection to the Disclosure Statement.

Respectfully submitted,

Kelly DiBlasi  
WEIL, GOTSHAL & MANGES LLP

*Attorneys for FGIC*

Ryan B. Bennett  
KIRKLAND & ELLIS LLP

*Attorneys for Syncora*

cc:  Alfredo R. Pérez  
    Dana M. Kaufman  
    Ernest J. Essad Jr.  
    Mark R. James  
    Stephen C. Hackney  
    Noah Ornstein  
    Alexandra Schwarzman  
    David G. Heiman  
    Heather Lennox  
    Thomas A. Wilson  
    Jonathan S. Green  
    Stephen S. LaPlante

**Exhibit A**

**Missing Documents**

**1. All documents referenced in and not attached to Disclosure Statement:**

| Document | Location/Referenced |
|---|---|
| DWSD Class A Water Documents | II(B)(Treatment of Class 1A) |
| DWSD Class B Water Documents | II(B)(Treatment of Class 1B) |
| DWSD Class A Sewer Documents | II(B)(Treatment of Class 1C) |
| DWSD Class B Sewer Documents | II(B)(Treatment of Class 1D) |
| DWSD Revolving Sewer Bond Documents | II(B)(Treatment of Class 1E) |
| DWSD Revolving Water Bond Documents | II(B)(Treatment of Class 1F) |
| Secured GO Series 2010 Bond Documents | II(B)(Treatment of Class 2A) |
| Secured GO Series 2010(A) Bond Documents | II(B)(Treatment of Class 2B) |
| Secured GO Series 2012(A)(2) Bond Documents | II(B)(Treatment of Class 2C) |
| Secured GO Series 2012(A2-B) Bond Documents | II(B)(Treatment of Class 2D) |
| Secured GO Series 2012(B) Bond Documents | II(B)(Treatment of Class 2E) |
| Secured GO Series 2012(B2) Bond Documents | II(B)(Treatment of Class 2F) |
| HUD Installment Note Documents | II(B)(Treatment of Class 4) |
| COP Swap Documents | II(B)(Treatment of Class 5) |
| Parking Bond Documents | II(B)(Treatment of Class 6) |
| Limited Tax General Obligation Documents | II(B)(Treatment of Class 7) |
| Unlimited Tax General Obligation Bond Documents | II(B)(Treatment of Class 8) |
| DIA Settlement Documents | II(B)(Treatment of Class 10) |
| Plan PFRS Settlement Documents | II(B)(Treatment of Class 10) |
| The Detroit VEBA Trust Agreement | II(B)(Treatment of Class 10) |
| Plan GRS Settlement Documents | II(B)(Treatment of Class 11) |
| Bond Purchase Agreements | IV(F)(1) |
| Energy Services Delivery Agreement | IV(J)(3) |
| Belle Island Agreement | IV(J)(6) |
| Definitive documentation governing the New B Notes | VI(A)(1) |
| Definitive documentation governing the New C Notes | VI(A)(2) |
| Definitive documentation governing the New DWSD Bonds | VI(B)(1)(c) |
| Definitive documentation governing the New Existing Rate DWSD Bonds | VI(B)(1)(d) |
| Definitive documentation governing the New DWSD Revolving Bonds | VI(B)(1)(e) |
| Definitive documentation governing the New GLWA Bonds | VI(B)(2)(a) |
| Definitive documentation governing the New Existing Rate GLWA Bonds | VI(B)(2)(b) |

| | |
|---|---|
| Definitive documentation governing the New GLWA Revolving Bonds | VI(B)(2)(c) |
| Definitive documentation governing the OPEB Claim Notes | VI(F) |
| Bond Documents | VI(I) |

2. **All missing Plan exhibits:**

| Exhibit | Document |
|---|---|
| I.A.62 | Form of Detroit VEBA Trust Agreement |
| I.A.64 | Schedule of DIA Assets |
| I.A.71 | Form of DIA Settlement Documents |
| I.A.119 | Principal Terms of Exit Facility |
| I.A.140 | Material Terms Related to GRS Hybrid Pension Formula |
| I.A.161 | Form of New B Notes Documents |
| I.A.162 | New B Notes Valuation |
| I.A.163 | Principal Terms of New C Notes |
| I.A.164 | Form of New C Notes Documents |
| I.A.165 | Form of New DWSD Bond Documents |
| I.A.167 | Form of New DWSD Revolving Bond Documents |
| I.A.169 | Form of New Existing Rate DWSD Bond Documents |
| I.A.171 | Form of New Existing Rate GLWA Bond Documents |
| I.A.173 | Form of New GLWA Bond Documents |
| I.A.174 | Principal Terms of New GLWA Bonds |
| I.A.175 | Form of New GLWA Revolving Bond Documents |
| I.A.182.b. | Form of OPEB Claims Note |
| I.A.195 | Material Terms Related to PFRS Hybrid Pension Formula |
| I.A.201 | Form of Plan COP Settlement Documents |
| I.A.203 | Form of Plan GRS Settlement Documents |
| I.A.205 | Form of Plan PFRS Settlement Documents |
| I.A.206 | Principal Terms of Plan UTGO Notes |
| I.A.207 | Form of Plan UTGO Notes |
| I.A.220 | Principal Terms of Retiree Health Care Settlement Agreement |
| II.B.3.t.i | Schedule of Reductions to Allowed PFRS Claims and Related Allowed OPEB Claims |
| II.B.3.t.ii.A | Schedule of Payments and Sources of Payments for Modified PFRS Pension Benefits |

| II.B.3.u.i | Schedule of Reductions to Allowed GRS Claims and Related Allowed OPEB Claims |
|---|---|
| II.B.3.u.ii.A | Schedule of Payments and Sources of Payments for Modified GRS Pension Benefits |
| II.B.3.u.ii.D | Reduction Formula for Participants in Annuity Savings Fund Accounts |
| Exhibit II.D.5 | Schedule of Postpetition Collective Bargaining Agreements |
| Exhibit II.D.6 | Executory Contracts and Unexpired Leases to be Rejected |
| Exhibit III.D.2 | Retained Causes of Action |

**3. All documents referenced in and not attached to the Plan:**

| Document | Location/Referenced |
|---|---|
| Ballot | Art.I(15) |
| DIA Settlement Documents | Art.I(71) |
| Downtown Development Authority Loans Agreement | Art.I(83) |
| DWSD Class A Sewer Documents | Art.I(88) |
| DWSD Class A Water Documents | Art.I(91) |
| DWSD Class B Sewer Documents | Art.I(94) |
| DWSD Class B Water Documents | Art.I(97) |
| DWSD Revolving Bond Documents | Art.I(99) |
| DWSD Revolving Sewer Bond Documents | Art.I(102) |
| DWSD Revolving Water Bond Documents | Art.I(105) |
| General Obligation Bond Documents | Art.I(134) |
| HUD Installment Note Documents | Art.I(146) |
| Limited Tax General Obligation Bond Documents | Art.I(154) |
| New B Notes Documents | Art.I(161) |
| New C Notes Documents | Art.I(164) |
| New DWSD Bond Documents | Art.I(165) |
| New DWSD Revolving Bond Documents | Art.I(167) |
| New Existing Rate DWSD Bond Documents | Art.I(169) |
| New Existing Rate GLWA Bond Documents | Art.I(171) |
| New GLWA Bond Documents | Art.I(173) |
| New GLWA Revolving Bond Documents | Art.I(175) |
| Parking Bond Documents | Art.I(186) |
| Plan COP Settlement Documents | Art.I(201) |
| Plan GRS Settlement Documents | Art.I(203) |
| Plan PFRS Settlement Documents | Art.I(205) |
| Plan UTGO Notes Documents | Art.I(207) |
| Retiree Health Care Settlement Agreement | Art.I(220) |

4

| | |
|---|---|
| Secured GO Series 2010 Bond Documents | Art.I(227) |
| Secured GO Series 2010(A) Bond Documents | Art.I(230) |
| Secured GO Series 2012(A)(2) Bond Documents | Art.I(233) |
| Secured GO Series 2012(A2-B) Bond Documents | Art.I(236) |
| Secured GO Series 2012(B) Bond Documents | Art.I(239) |
| Secured GO Series 2012(B2) Bond Documents | Art.I(242) |
| Postpetition Financing Agreement | Art.II(A)(1)(b) |
| Detroit VEBA Trust Agreement | Art.II(B)(3)(t)(ii)(H) |

**4. All schedules supporting the analyses and projections referenced in or attached to the Disclosure Statement.**

**5. All analyses of distribution property supporting stated creditor recoveries.**