UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
(DETROIT)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | CASE NO.: 13-53846 |
| | ) | |
| | ) | CHAPTER 9 |
| Debtor. | ) | |
| | ) | Hon. Steven W. Rhodes |
| | ) | |

**OBJECTION OF THE AD HOC COMMITTEE OF DWS BONDHOLDERS TO THE AMENDED DISCLOSURE STATEMENT**

The Ad Hoc Committee of DWS Bondholders (the "**Ad Hoc Committee**")[1] for those certain bonds (the "**DWS Bonds**" and the holders of such, the "**DWS Bondholders**") issued by the City of Detroit (the "**City**") for the Detroit Water and Sewerage Department (the "**DWSD**") to (a) finance and refinance improvements to the City's Water Supply System (the "**Water System**") and (b) finance and refinance improvements to the City's Sewage Disposal System (the "**Sewerage System**," together with the Water System, the "**Systems**"), hereby files its Objection to the *Amended Disclosure Statement with Respect to Amended Plan for the Adjustment of Debts of the City of Detroit* (Doc. 3382) (the "**Disclosure Statement**," and the plan of adjustment it describes, the "**Plan**").[2]

---

[1] The Ad Hoc Committee members are Fidelity Management & Research Company, Eaton Vance Management, Franklin Advisers, Inc., Nuveen Asset Management, and BlackRock Asset Management, Inc.

[2] On, March 14, 2014, the Ad Hoc Committee, together with the U.S. Bank National Association, in its capacity as trustee for the DWS Bonds (the "**DWS Trustee**"), submitted a joint written request to the City to include additional information in the Disclosure Statement, in accordance with the *Second Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment* (Doc. 2937).

## OBJECTION

1. The City has issued over $5.5 billion of DWS Bonds – municipal bonds that are secured by the revenues of the City's water and sewer system. According to information available on the DWSD website, www.dwsd.org, the Systems are among the largest of their kinds in the nation. The Water System spans 1,079 square miles and provides water service to the entire City and 127 surrounding suburban communities which make up approximately 40% of the entire State of Michigan's population. The Sewerage System spans 976 square miles and provides services to all of Detroit and 76 neighboring communities.

2. Long before filing this chapter 9 case, the City recognized that the Systems are a major asset of the City, and that the DWS Bonds are oversecured. Since at least June 2013, the City has sought to monetize the System in a variety of ways that will allow the City to withdraw hundreds of millions of dollars of what is essentially "equity" out of the System to pay its current expenses and shift value to the City's prepetition unsecured creditors – notwithstanding that the DWSD is, by statute, a not-for-profit entity. *See, e.g.*, City of Detroit Proposal of Creditors, June 14, 2013 at pp. 83-86 (describing how the City would monetize a portion of water and sewer revenue stream for itself);[3] *see also* Matt Helms, et al., *Orr: Detroit to Halt Debt Payments, Reinvest $1.25 Billion in City*, Detroit Free Press, June 14, 2013, *available at* http://www.freep.com/article/20130614/NEWS01/306140083/Orr-Detroit-halt-debt-payments-reinvest-1-25-billion-city; Nick Carey and Joseph Lichterman, *Detroit City Manager Seeks $9 Bln From Suburbs for Water Department*, Reuters, Oct. 30 2013, *available at* http://www.reuters.com/article/2013/10/30/usa-detroit-waterandsewer-idUSL1N0IK13E20131030.

---

[3] A copy of this presentation is available at http://www.detroitmi.gov/EmergencyManager/Reports.aspx.

3. Since its chapter 9 filing, the City has determined that it cannot raise capital to pay the DWS Bondholders in cash, and is essentially offering them "take back paper." The DWS Bonds are special revenue bonds, backed by the net revenues of the System, and are not general obligations of Detroit. The City proposes making a number of substantial changes to the current DWS Bonds that will allow it to strip revenues out of the System – i.e., to alter the DWS Bonds' collateral and other rights. These changes include:

(a) a potential change of the issuer of the DWS Bonds and the corporate governance of the DWSD (which approves rate increases);

(b) the placement of either a substantial "lease" or a "pre-funded pension payment," either of which amounts to a distribution of "equity" from the Systems ahead of the DWS Bonds;

(c) stripping out covenants that prohibit the transfer of DWSD assets while the DWS Bonds are outstanding;

(d) changing the DWS Bonds' interest rates by means of a "death trap" that provides unjustifiably low interest rates; and

(e) removing call protection from the DWS Bonds.

4. Under the City's Plan filed on March 31, 2014, which is really numerous alternative "plans" for DWS Bondholders, DWS Bondholders may be receiving new water and sewer revenue bonds that are issued by the City, or they may be receiving new water and sewer revenue bonds that are issued by a newly-formed Great Lakes Water and Sewer Authority (the "**GLWA**") governed by Wayne, Oakland and Macomb Counties (the "**Counties**").

5. With the filing of the Disclosure Statement, it now appears that the City is considering a variety of other alternatives for the DWS Bonds – a sale, leasing or concession of the Systems, and new water and sewer revenue bonds that are issued by a private third party.[4]

---

[4] As was reported in the Bond Buyer on March 27, 2014, the City began to market its water and sewer assets to private third parties. Caitlin Devitt, *S&P Hits Detroit Water/Sewer Bonds with Fresh Downgrade*, The Bond Buyer (March 27, 2014). Upon information and belief, a request for information (the "**RFI**") was provided to potential

3
13-53846-tjt    Doc 3875    Filed 04/07/14    Entered 04/07/14 18:59:42    Page 3 of 7

This potential privatization of the Systems, as outlined in an RFI provided to investors, seeks to sell, lease, provide a concession agreement with respect to the Systems or retain a private operator to run the Systems. In short, the sky is the limit with respect to the structure of various potential proposals that third parties may make with respect to the System's assets. The Plan goes on to provide two additional alternative treatments for DWS Bonds – that the DWS Bonds may be repaid in cash at the effective date of a plan (ignoring the provisions of the DWS Bond documents that prohibit calling many of the DWS Bonds), or the City may decide later to reinstate some or all of the series of the DWS Bonds.

6. Unfortunately, almost nine months after it filed for chapter 9, and only ten days before its Disclosure Statement hearing, the City remains unable to solidify what plan it wishes to pursue for the Systems and the DWS Bonds, or any substantial details for that plan.

7. The essential problem with the Disclosure Statement for DWS Bondholders is this: the City is not at a point in its negotiations with the Counties – not to mention potential third party buyers – to allow it to craft a disclosure statement that allows Bondholders to understand what they are being asked to accept for their claims. The City is still at the stage of trying to keep all of its options open with respect to the Systems and the DWS Bonds, and therefore cannot provide basic information about the treatment of the DWS Bonds that is necessary for DWS Bondholders to cast their votes.

8. Indeed, as at least one court has recently held, a disclosure statement should not be approved where a plan provides a class of creditors multiple options, but does not inform those creditors which option will apply if the plan is confirmed. *See In re Arnold*, 471

---

investors and purchasers on Friday, March 21. *Id.* According to the RFI, binding proposals from third parties are not due until June 1, 2014 – approximately 5 weeks after the Disclosure Statement is required to be mailed to creditors for a vote. *See* RFI § 3.6, a copy of which is available at http://www.detroitmi.gov/EmergencyManager.aspx.

B.R. 578, 585 (Bankr. C.D. Cal. 2012) ("[T]he Amended Disclosure Statement lacks adequate information for creditors to make an informed judgment about the plan under § 1125(a)(1) because as described in the Amended Disclosure Statement, the Plan sets forth five Plan Options, but it does not state which Plan Option will be operative if the Plan is confirmed . . . .").

9. The Ad Hoc Committee respectfully requests that the Court delay approval of the Disclosure Statement until the City reaches a conclusion about the fundamentals of the Systems and the DWS Bonds: who will be running and controlling the Systems, what the estimated revenues and expenses will be (which are dependent upon which entity will eventually control the Systems), and the substantive terms of any new bonds that the DWS Bondholders will be receiving. Until that time, it appears impossible for DWS Bondholders to receive adequate information that will enable them to reach informed judgments about what they are being asked to accept for their claims under the Plan.

10. At a minimum, the Ad Hoc Committee requests that the Court deny approval of the Disclosure Statement unless the following categories of information are included:

- <u>Operating and Maintenance Expenses</u>. The Disclosure Statement should be amended to provide, for each alternative potential plan treatment, 10-year projections for the Systems' operations and maintenance expenses. If the City is taking the position that Operation and Maintenance Expenses will be lower after the Plan is confirmed, the Disclosure Statement should clearly show the actual Operations and Maintenance Expenses for the past several years, and a comparison of how those Operation and Maintenance Expenses have decreased.

- <u>Transaction/Pension Payment</u>. The Disclosure Statement should provide an explanation as to why, in a transaction scenario, proposed "lease payments" are being treated as "operations and maintenance expenses" when such payments were previously described by the City as "capital lease payments."[5] With respect to any scenario in which the DWS retains ownership and control over the Systems, the Disclosure Statement should explain how the Systems' revenues will be used. To the extent those revenues will be diverted to the City itself, or to the City's General

---

[5] *See* City of Detroit Proposal of Creditors, June 14, 2013 at p. 85.

Retirement System, the Disclosure Statement should explain the basis under Michigan law for those uses, and the schedule on which the "accelerated pension payments" would be made from the DWSD. *See* Disclosure Statement at p. 24.

- <u>Capital Expenditures</u>. The Disclosure Statement should be amended to provide, for each alternative potential plan treatment, 10-year projections of the Systems' capital expenditure needs. To the extent the City (or the DWSD) has received higher capital expenditure projections from third-parties (as a result of any marketing process, RFI, or otherwise), the Disclosure Statement should describe those third-party projections and an explanation for any differences between those and the City's/DWSD's own projections.

- <u>Privatization</u>. The Disclosure Statement should be amended to explain any impediments, under Michigan law or otherwise, to such a privatization or sale of the Systems' assets, and whether such a sale would result in increased costs to the Systems or any other economic detriment to DWS Bondholders (including adverse tax consequences).

- <u>GLWA Transaction</u>. The Disclosure Statement should provide a description of the current status and content of negotiations with the Counties concerning a GLWA transaction, including any resistance from the Counties to such a transaction and the likelihood of such a transaction occurring.

11. In addition to the foregoing, the Ad Hoc Committee hereby joins in the objection to the Disclosure Statement being filed by the DWS Trustee contemporaneously herewith.

<u>CONCLUSION</u>

WHEREFORE, for the reasons stated herein, and for such other reasons as may be stated at any hearing, the Ad Hoc Committee respectfully requests that this Court: (i) deny approval of the Disclosure Statement, (ii) order the City to provide adequate information to Holders as set forth herein, and (iii) provide such other and further relief as is just and equitable.

Respectfully submitted this 7th day of April, 2014.

6
13-53846-tjt    Doc 3875    Filed 04/07/14    Entered 04/07/14 18:59:42    Page 6 of 7

/s/ Amy Caton
Amy Caton, Esq.
Greg Horowitz, Esq.
KRAMER LEVIN NAFTALIS & FRANKEL, LLP
1177 Avenue of the Americas
New York, New York 10036
Tel: (212) 715-9100
Fax: (212) 715-8000
acaton@kramerlevin.com

and

/s/ Geoffrey T. Pavlic
STEINBERG SHAPIRO & CLARK
Geoffrey T. Pavlic, Esq. (P53770)
25925 Telegraph Road
Suite 203
Southfield, MI 48033
Tel: (248) 352-4700
Fax: (248) 352-4488
pavlic@steinbergshapiro.com

*Attorneys for Nuveen Asset Management, and BlackRock Asset Management, Inc., members of the Ad Hoc Bondholder Committee*

/s/ William W. Kannel
William W. Kannel, Esq.
Adrienne K. Walker, Esq.
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY and POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel: 617-542-6000
Fax: 617-542-2241
wwkannel@mintz.com
awalker@mintz.com

and

/s/ Andrew J. Gerdes
ANDREW J. GERDES, P.L.C.
Andrew J. Gerdes, Esq. (P47593)
321 W. Lake Lansing Rd.
P.O. Box 4190
East Lansing, MI 48826-4190
Tel: (517) 853-1300
Fax: (517) 853-1301
agerdes@gerdesplc.com

*Attorneys for Fidelity Management & Research Company, Eaton Vance Management, and Franklin Advisers, Inc., members of the Ad Hoc Bondholder Committee*