UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

---------------------------------------------------------- x
                                                           :
In re:                                                     : Chapter 9
                                                           :
CITY OF DETROIT, MICHIGAN,                                 : Case No.: 13-53846
                                                           :
                                            Debtor.        : Hon. Steven W. Rhodes
                                                           :
---------------------------------------------------------- x

# OBJECTION OF INTERNATIONAL UNION, UAW TO AMENDED DISCLOSURE STATEMENT WITH RESPECT TO AMENDED PLAN OF ADJUSTMENT OF DEBTS OF CITY OF DETROIT

The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") objects as follows to the Amended Disclosure Statement with Respect to Amended Plan of Adjustment of Debts of City of Detroit [Docket No. 3382 ] (the "Amended Disclosure Statement" or the "Amended Plan") and states for its objections as follows:

## Preliminary Statement

UAW is the collective bargaining representative of certain current and former employees of the City of Detroit, Michigan (the "City"). UAW-represented employees and retirees are drawn from the following City bargaining units: civilian police investigators employed in the Police Department, City Law Department attorneys and paralegals, Water and Sewerage Department waste-

water treatment operators and associated skilled trades workers. UAW has been party to successive collective bargaining agreements ("CBAs") with the City of Detroit for those persons employed in or retired from the Police, Law, and Water and Sewerage Departments. In addition, the UAW represents current and former employees of the Detroit Library Commission (the "DLC"), a municipal corporation which is an entity separate and distinct from the City of Detroit and that is not a chapter 9 debtor. UAW is currently a party to collective bargaining agreements with the DLC covering three bargaining units, the Association of Professional Librarians unit, the Professional Organization of Librarians unit and a Skilled Trades unit. The foregoing UAW-represented employees and retirees of the City and of the DLC, are participants in the City of Detroit General Retirement System ("GRS").

Unless otherwise stated, all references are to the March 31, 2014 Amended Disclosure Statement and Amended Plan.[1]

---

[1] On March 14, 2014, UAW submitted preliminary, informal comments to the City's February 21, 2014 Disclosure Statement and Plan of Adjustment. On March 28, 2014, UAW received a letter from the City's attorneys which stated in response to most of UAW's comments and requests, without detail or elaboration, that the Disclosure Statement "contains all information necessary to provide adequate information" with respect to the subject matter of the requests and that the City "may make further revisions to the Disclosure Statement that address the subject matter of the requests."

- 2 -
13-53846-tjt    Doc 3877    Filed 04/07/14    Entered 04/07/14 19:13:37    Page 2 of 12

## Objections to the Disclosure Statement

<u>Disclosures for Current and Former City
Employees Regarding Pension and OPEB Claims</u>

1. As the City has previously advised the Court, and as reflected in the Amended Disclosure Statement, the City intends to prepare and submit for the Court's approval supplemental solicitation materials prepared for Holders of Pension and OPEB Claims. According to the Amended Disclosure Statement, the supplemental materials will include special procedures for the solicitation and tabulation of votes for those casting votes in Classes 10, 11 and 12 of the Amended Plan and a form of notice regarding the provisions of the Amended Plan applicable to those Classes. Amended Disclosure Statement, pp. 1-2, 7. Many of the preliminary comments we submitted to the City related to the disclosures in the February 21 plan of adjustment regarding pension and OPEB claims and the treatment of such claims under the City's plan. Accordingly, because the supplemental materials may address some concerns raised previously, we will defer detailed comments regarding disclosures to current and former City employees voting in Classes 10, 11 and 12 pending the City's filing of the Supplemental Procedures Motion, and raise herein certain more generalized objections regarding such disclosures.

2. <u>Disclosures regarding treatment of GRS Pension Claims</u>. UAW's preliminary comments to the February 21 plan and disclosure statement

included several comments aimed at the complicated and confusing treatment of pension claims, about which the Court itself has already commented. We noted, for example, that, in general, the pension-related disclosures did not sufficiently convey the extent of the proposed cuts, or the potential for additional benefit cuts due to the various conditions and contingencies that apply to the treatment of pension claims under the City's plan—matters of obvious importance to employees and former employees in making a decision to vote on the plan.

3. The City has added some pension-related information in the Amended Disclosure Statement. For example, at page 12, there is now a chart comparing the estimated reductions in pension benefits if Classes 10 and 11 vote in favor of the plan and the State Contribution and DIA Settlement funding is received, against the greater reductions that would occur if either Class 10 or Class 11 votes to reject the plan and the additional funding is not received. In the Classification and Treatment section, beginning at page 23, there is some additional information regarding the impact of approval or non-approval of the State release in the plan and the impact of a "no" vote by individual holders. However, the Amended Disclosure Statement still does not prominently and simply convey, in one place, the potential contingencies that are integral to the proposed treatment of the claims and that could result in greater cuts to pension benefits, such as, non-receipt of the funding under the DIA Settlement (as a result

of the failure to finalize the agreement or due to a default under the agreement);[2] non-receipt of the State Contribution; the failure of the DWSD to "pre-fund" its pension contributions to GRS; and, for actives, adverse pension plan funding results when comparing June 30, 2014 and June 30, 2013 results.

4. The upshot of the various uncertainties and conditions is that, ultimately, the degree of the cuts cannot be estimated with any certainty, and the Amended Disclosure Statement should include a clear statement to that effect. As currently drafted, individual Holders would have to read through multiple sections of the Amended Disclosure Statement and Amended Plan regarding the treatment of pension claims, as well as supplemental documents some of which disclose certain contingencies, others of which disclose other contingencies, and still others of which are not provided in complete form. *Compare* Amended Disclosure Statement pp. 8-9 (noting that the treatment of allowed pension claims assumes the "existence and implementation of" the DIA Settlement and receipt in full of the State Contribution, and that the treatment "will be at the lower end" absent the DIA Settlement and State Contribution) *with* Amended Disclosure Statement, p. 15 (referencing contingencies associated with the DIA Settlement, the State Contribution *and* the DWSD pre-funding). The contingencies that could lead to

---

[2] The DIA Settlement term sheet itself indicates a number of conditions to the 20-year funding commitments, some of which relate to pension matters and others which relate solely to DIA matters. Amended Plan, Exhibit I.A. 79.

greater reductions in pension benefits are important considerations for individual Holders who will cast votes and should be disclosed with clarity and completeness.[3]

  5. Similarly, although the DIA Term Sheet has now been included as an exhibit to the Amended Plan, the form of agreement has not, nor is there even a term sheet for the State Contribution Agreement. Some conditions are evident from a close reading of the documents (*e.g.*, that Classes 10 and 11 must vote in favor of the plan; that the Legislature must approve the State Contribution amount, and that the provision of the State Contribution is tied to certain releases in the plan). However, given the crucial role of the State Contribution in determining the degree of the proposed cuts, a complete disclosure of the proposed terms (in particular, any required conditions) is important to an individual Holder's understanding of the plan terms with respect to the State Contribution and the DIA Settlement, including that each agreement is dependent upon the other to become effective.[4]

---

[3] The Amended Disclosure Statement now states that, with respect to the terms regarding restoration of benefits, "Restoration of Benefits, particularly until 2023, cannot be assured. After 2023, restoration of certain benefits may be possible but it cannot be predicted at this time whether or when any restoration will occur." Amended Disclosure Statement, p. 15. A similarly candid assessment is needed regarding the level of the cuts.

[4] The Amended Disclosure Statement contains only a short, two-sentence description of the State Contribution Agreement, which includes a cross-reference

6. <u>Releases and Injunctions</u>. The Amended Disclosure Statement requires additional clarity and disclosures regarding the proposed releases and injunctions proposed by the Plan. The Amended Plan provides for a broad release, including a release of the State and State Related Entities. In the Classification Chart, for example, the Amended Disclosure Statement states that a term of the State Contribution Agreement is that "if the release set forth at Section II.D.7 of the Plan" is not approved by the court, then "Non-Accepting Holders" will not get a "State Settlement Benefit Amount." Further, if the Court approves the release set forth in the referenced plan section, then each Holder shall release the State "from all Liabilities related to the GRS Pension Claims, as more particularly described in" the State Contribution Agreement (which is not provided) and the plan. Amended Disclosure Statement, p. 25 (Section III.D.7 of the Amended Plan is found at p. 41). The terms of the release and injunction language cannot be ascertained as presently drafted.[5] In addition, the City asserts, without further explanation, that the proposed releases "comply with applicable Sixth Circuit law." Amended Disclosure Statement, p. 50. Particularly in light of Sixth Circuit

---

to an Exhibit to the Amended Plan that has not yet been provided. Amended Disclosure Statement, p. 47.

[5] For example, notwithstanding the description in the Classification section of the Amended Disclosure Statement, the release in the Amended Plan is not limited to Pension Claims, thus raising substantive issues as to scope in addition to the disclosure issues.

caselaw, *see* in *In re Dow Corning Corporation,* 280 F.3d 648 (6th Cir. 2002) (defining "unusual circumstances" under which a bankruptcy court can approve a release by a non-consenting creditor of a non-debtor third party), the City should further explain in the disclosure statement how it believes that the proposed plan releases comply with "applicable Sixth Circuit precedent."[6]

       7.     <u>DWSD pre-funding</u>.  The Amended Disclosure Statement states that, through fiscal year 2023, the "exclusive sources" for contributions to the GRS will be "accelerated pension-related payments received from the DWSD equal to approximately $675,000,000 and certain [unspecified] DIA Proceeds.  Amended Disclosure Statement, p. 24.  The Amended Disclosure Statement elsewhere explains that,

> "[I]mportantly, the Plan assumes that DWSD will accelerate, or prefund, the majority of its full allocable share of the GRS UAAL such that, after the initial 10 year period through June 30, 2023 is completed and the unused DIA Settlement and State settlement moneys are received by the GRS, DWSD will have very small contributions, if any, to make to the GRS.  The City believes that such prefunding is consonant with applicable state and local law that permits DWSD to be charged, and pay directly to the GRS, its allocable share

---

[6] The Amended Disclosure Statement also provides that, in connection with the treatment of pension claims, the confirmation order will contain, in effect, a 10-year injunction against changes in the pension plans—derived from whatever source, including legislation—that are inconsistent with certain terms of the Amended Plan.  The City should explain how such a provision could be a lawful exercise of the Court's power.

- 8 -
13-53846-tjt    Doc 3877    Filed 04/07/14    Entered 04/07/14 19:13:37    Page 8 of 12

>
> of the periodic contributions required to be made to the GRS as a cost and expense of operating the City's water and sewer systems.… If DWSD cannot prefund its actual allocable share to the GRS pension fund, then the cuts to GRS pension beneficiaries would have to be higher than those contemplated in the Plan."

Amended Disclosure Statement, p. 11. Given the importance of the DWSD pre-payments to the GRS funding under the proposed plan, and the potential consequences of a failure to pre-fund (even greater cuts), the City should explain any risks that may prevent or may otherwise hinder such pre-funding.[7]

8. <u>Post-July 1, 2014 pension accruals</u>. The Amended Disclosure Statement includes terms applicable to active employees related to the accrual of pension benefits for services rendered to the City on or after July 1, 2014. *E.g.*, Amended Disclosure Statement, pp. 13-14 (describing GRS Hybrid Pension Plan and stating that the formula "will be less generous than the formula that currently applies to GRS pensions."). However, the City nowhere states that its proposed "Hybrid Pension Plan" and "Hybrid Pension Formula" are merely its proposals and that they have not been accepted by the bargaining units, information that active employees should have in evalating the treatment of pension claims under the Amended Plan.

---

[7] Notwithstanding the City's rationale for the proposed pension cuts, *see* Amended Disclosure Statement, pp. 9-11, the City has not adequately explained why the proposed GRS pension cuts should apply to the pension benefits of current and former DWSD employees.

9. <u>OPEB Claims</u>. The City has included a new Class 12 for OPEB Claims. However, very little information is provided about the proposed treatment of the OPEB claim through the establishment of the VEBA. At a minimum, the Amended Disclosure Statement should clarify whether the establishment of the VEBA to provide "health care, life and other legally authorized welfare benefits" to the beneficiaries, Amended Disclosure Statement, p. 25, is intended to be co-extensive with the description of "OPEB Claims" in the definitions as well as an estimate of the City's proposed contributions via the New B Notes. The inclusion of an estimated 15% recovery figure does not adequately inform Holders of OPEB claims regarding the proposed treatment of their OPEB claims.

<u>The Status of the Library Is Unclear and Should be Clarified</u>

10. In its preliminary comments, UAW asked the City to clarify the terms of the plan and the disclosure statement with respect to the Detroit Library. The DLC is a separate, independent municipal corporation that is not part of the City's Chapter 9 case. *See Kuhn v. Thompson,* 168 Mich. 511 (1912) (finding the DLC, like the Detroit Board of Education, is a body distinct and independent of the City of Detroit). The DLC's territory is "co-extensive with" the boundaries of the City of Detroit, MCL §397.401, but it exists separate from the City. However, because DLC current and former employees are participants in the GRS, the current definition of a "GRS Pension Claim" in the City's plan, which is unclear in

any event, is potentially overbroad. For example, the definition includes a claim against "any fund managed by the City" for "the payment by the GRS to persons who at any time participated in, were beneficiaries of or accrued post-retirement pension or financial benefits under the GRS." *See* Amended Disclosure Statement, p. 24. Inclusion of that language broadens the scope potentially beyond current and former employees "of the City" (to quote a different section in the City's lengthy and overly complex definition). The City's plan of adjustment is aimed at the City's pension funding obligations (and the resulting benefit cuts proposed for current and former City employees). The DLC employees and retirees are not subject to the City's bankruptcy case and should not be subject to the Court's eligibility ruling regarding the impairment of pension obligations. The City did not specifically respond to the UAW's preliminary comments regarding the DLC (beyond the stock responses noted above) and no apparent change is evident in the Amended Plan and Disclosure Statement.[8] Accordingly, the City should expressly clarify the status of the DLC in the Disclosure Statement and the Plan definitions.

---

[8] In the new, separate class for OPEB claims, "OPEB Claim" is defined to be claims "against the City" for OPEB benefits provided to "retirees of the City and their dependents." Amended Disclosure Statement, p. 25. The Plan defines the "City" to be "The City of Detroit, Michigan." Amended Plan, p. 4. The Disclosure Statement also includes certain references to the Library as an entity distinct from a City department, *see* Amended Disclosure Statement, p. 71. However, the City has applied its interim OPEB terms to the DLC retirees, an action that may be the subject of a contractual grievance to be filed with the Library.

## Conclusion

For the foregoing reasons, the UAW asks that any approval of the Amended Disclosure Statement be conditioned upon revisions consistent with the foregoing comments.

Dated: April 7, 2014

        Respectfully submitted,

By: /s/ Babette A. Ceccotti
Cohen, Weiss and Simon LLP
Babette A. Ceccotti
330 West 42nd Street
New York, NY 10036-6976
T: (212) 563-4100
F: (212) 695-5436
bceccotti@cwsny.com

- and -

Niraj R. Ganatra (P63150)
Michael Nicholson (P33421)
8000 East Jefferson Avenue
Detroit, MI 48214
T: (313) 926-5216
F: (313) 926-5240
nganatra@uaw.net
mnicholson@uaw.net

*Attorneys for International Union, UAW*