# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### (DETROIT)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **CITY OF DETROIT, MICHIGAN,** | ) | **CASE NO.: 13-53846** |
| | ) | |
| | ) | **CHAPTER 9** |
| Debtor. | ) | |
| | ) | **Hon. Steven W. Rhodes** |
| | ) | |

_____

## THE WATER AND SEWER BOND TRUSTEE'S
## OBJECTION TO THE AMENDED DISCLOSURE STATEMENT
_____

U.S. Bank National Association, in its capacity as trustee (the "***Trustee***") for those certain bonds issued by the City of Detroit (the "***City***") for the Detroit Water and Sewerage Department (the "***DWSD***") to (a) finance and refinance improvements to the City's Water Supply System (the "***Water System***") and (b) finance and refinance improvements to the City's Sewage Disposal System (the "***Sewage System***," together with the Water System, the "***Systems***"), hereby files its Objection to the *Amended Disclosure Statement with Respect to Plan for the Adjustment of Debts of the City of Detroit* (Doc. 3382) (the "***Disclosure Statement***").

## <u>SUMMARY</u>

Holders (as defined below) are entitled to additional information regarding the City's *Amended Plan for the Adjustment of Debts of the City of Detroit (March 31, 2014)* (Doc. 3380) (the "***Plan***").[1] The Plan proposes a minimum of six possible treatments for the DWSD Bond Claims:[2] cash payment, Reinstatement, new bonds with the existing rate of interest issued by the

---

[1] Capitalized terms not defined herein shall bear the meaning ascribed to them in the Plan.
[2] "***DWSD Bond Claims***" shall mean collectively the DWSD Class A Sewer Claims, DWSD Class A Water Claims, DWSD Class B Sewer Claims, and DWSD Class B Water Claims.

DWSD, new bonds with a new rate of interest issued by the DWSD, transfer of the Systems' assets to a new authority to be known as the GLWA along with the issuance of new bonds with the existing rate of interest by the GLWA, or transfer of the Systems' assets to a new authority to be known as the GLWA along with the issuance of new bonds with a new rate of interest by the GLWA.  The Disclosure Statement also discusses privatizing the Systems, raising the potential for additional undisclosed treatments of the DWSD Bond Claims.  As a result, Holders of DWSD Bond Claims have no way to determine what they will receive under the Plan.  The Disclosure Statement also fails to explain the contingencies, likelihood, and timing of any determination of which of the six or possibly more treatments the DWSD Bond Claims will receive.  Further, as presented, the Disclosure Statement does not contain adequate information necessary for Holders to make an informed choice regarding approval or rejection of the Plan because it does not: (a) explain the $675,000,000 pension-related payments to be made to the City by the DWSD if a transfer of the Systems to the GLWA does not occur; (b) set forth the structure for the GLWA and the financial terms of the contemplated transaction; (c) disclose the effect privatization of the Systems would have on the Plan treatment of Holders;  (d) provide adequate financial projections for the Systems; (e) provide the material financial and legal terms of the New Water/Sewer Bonds; (f) disclose the City's proposed issuance of $150,000,000 in new capital improvement sewer bonds and its effect on the Plan; (g) inform Holders of The Depository Trust Company ("*DTC*") procedures with respect to their existing CUSIPs, and whether, why and for how long they may be restricted from trading based on their elections; or (h) provide needed information regarding the proposed treatment of the Water and Sewer Claims.[3]  For these reasons the Court should deny approval of the Disclosure Statement unless and until the City provides the requisite additional information to Holders.

---

[3] "*Water and Sewer Claims*" shall mean the DWSD Bond Claims and the DWSD Revolving Bond Claims.

# FACTS

### I.  The City Issued Sixty-Six Series of Special Revenue Bonds, Secured by the Net Revenues of the Systems.

1.  The City issued and has outstanding twenty-four series of water bonds (the "**Water Bonds**"), (a) pursuant to Ordinance No. 30-02, as amended and restated by Ordinance No. 01-05 (as so amended and restated, the "**Water Ordinance**"), and (b) under that certain Trust Indenture, dated as of February 1, 2013 (the "**Water Indenture**").  As of July 18, 2013 (the "**Petition Date**"), the aggregate amount of the Water Bonds outstanding was over $2.5 billion.[4]

2.  The City issued and has outstanding forty-two series of sewer bonds (the "**Sewer Bonds**," together with the Water Bonds, the "**Water and Sewer Bonds,**" and the holders of the Water and Sewer Bonds, "**Holders**"), (a) pursuant to Ordinance No. 27-86, as amended and supplemented by Ordinance No. 7-87, Ordinance No. 38-92, Ordinance No. 3-93, Ordinance No. 31-95, Ordinance No. 16-97, Ordinance No. 24-97, and Ordinance No. 36-99, and as further amended and restated by Ordinance No. 18-01 (as so amended, supplemented and restated, the "**Sewer Ordinance**," together with the Water Ordinance, the "**Ordinances**")), and (b) under that certain Trust Indenture, dated as of June 1, 2012 (the "**Sewer Indenture**," together with the Water Indenture, the "**Indentures**").  As of the Petition Date, the aggregate amount of the Sewer Bonds outstanding was over $3.2 billion.[5]

3.  The Water and Sewer Bonds are special revenue bonds as that term is defined in § 902.  They are secured by the Pledged Assets (as defined in the Indentures),[6] which are defined[7] as follows:

---

[4] On February 20, 2014, the Trustee timely filed proof of claim number 1340 in the amount of $2,512,960,834.13 with respect to the Water Bonds.

[5] On February 20, 2014, the Trustee timely filed proof of claim number 1339 in the amount of $3,275,539,437.58 with respect to the Sewer Bonds.

[6] *See* Indentures § 2.01.

[7] The definition for "Pledged Assets" is identical in both the Water Indenture and the Sewer Indenture.

> (i) Net Revenues; (ii) the funds and accounts established by or pursuant to the Ordinance except for the Operation and Maintenance Fund and the Construction Fund and any account thereof; (iii) investments of amounts credited to any fund, account or subaccount that is a Pledged Asset; and (iv) any income or gain realized from investments that are Pledged Assets to the extent that such income or gain is not a Net Revenue.

*See* Indentures, Art. I *Pledged Assets*. "Net Revenues" are defined as the gross revenues derived from each of the Systems, respectively, minus funds designated for the Operation and Maintenance Fund for each System. *See* Indentures, Art. I *Net Revenues*. The "Operation and Maintenance Fund" is a fund established: "[t]o pay the expenses of administration and operation of the System (including Ancillary Obligation Fees and Expenses . . .) and such current expenses for the maintenance thereof as may be necessary to preserve the same in good repair and working order." *See* Indentures, § 2.04(c).[8] Thus, in accordance with Michigan law, the Net Revenues pledged to the Trustee as security for the Water and Sewer Bonds are gross revenues of each System minus (a) the current expenses of administration and operation of each System and (b) the current expenses for the maintenance of each System.[9] This can be depicted as follows:



## II. The City's Plan Proposes to Impair the Water and Sewer Bonds.

4.      The Plan and Disclosure Statement set forth several alternatives for the Water and Sewer Bonds dependent, in part, on whether the City enters into the DWSD Transaction. Further, on a per CUSIP basis, dependent upon whether both the Holder makes such an election

---

[8] This description of what the funds in the Operation and Maintenance Fund may be used for is the same in both Indentures.

[9] *See* MICH. COMP. LAWS ANN. § 141.122(1) ("the borrower shall provide that the revenues . . . be accounted for . . . in the following order of recorded priority:  (a) After provision for the payment for the next succeeding period of all current expenses of administration and operation and the current expenses for that period for maintenance . . . (b) There shall be next set aside a sum sufficient to provide for the payment of the principal of and the interest upon all bonds payable from those revenues  . . .").

and its specific Class of DWSD Bond Claims accepts the Plan, a Holder may receive New Water/Sewer Bonds with either a new interest rate calculated using the Interest Rate Reset Chart or the DWSD Bond's existing interest rate. (Disclosure Statement at 16).

### A. Treatment if DWSD Transaction is Consummated

5.     The Plan provides that if the DWSD Transaction is consummated, the Systems will be transferred to the GLWA plus: (a) the DWSD Bonds will either be paid off in Cash or replaced by new bonds issued by the GLWA, (Disclosure Statement at 16–17, 45–46; Plan at 26–28), and (b) the DWSD Revolving Bonds will be replaced by new bonds issued by the GLWA, (Disclosure Statement at 18; Plan at 28). According to the Disclosure Statement, the City will have until the Effective Date to elect whether the DWSD Bonds will be paid off in Cash or replaced by New Water/Sewer Bonds. (Disclosure Statement at 16–17, 46–47; Plan at 26–28).

6.     The new GLWA bonds will either be "New GLWA Bonds," which are subject to an interest rate "reset" at rates lower than the current interest rates on the DWSD Bonds,[10] or "New Existing Rate GLWA Bonds," which will retain the DWSD Bonds' current interest rates. (Disclosure Statement at 45–46). In addition to "resetting" interest rates on the DWSD Bonds, the Plan provides that the GLWA will assume the assets and liabilities associated with the DWSD pension for employees and retirees of the DWSD through the date of the DWSD Transaction.

7.     Further, the GLWA will be required to make a "lease payment" to the City's General Fund, as an "operations and maintenance expense" to be excluded from the liens securing the payment of the new GLWA bonds. (*Id*. at 45–46). This lease payment would

---

[10] There are 337 CUSIPs outstanding, only two CUSIPs get their existing interest rate under the Plan, and a third CUSIP will be retired. (Plan, Ex. I.A.159, Interest Rate Reset Chart).

reduce the Net Revenues, and, thereby the Holders' collateral. The Disclosure Statement never states the material terms of the lease, or the amount of the lease payment, merely that it is "equal to DWSD's total allocable share of the City's liabilities under the COPs and OPEB liabilities," the amount of which is not disclosed. (*Id*. at 122). It does not explain the City's rationale for including such amount as an operation and maintenance expense of the Systems rather than as a capital expenditure. (*Id.* at 121–22.)

      B.    <u>Treatment if DWSD Transaction is Not Consummated</u>

      8.    The Plan provides that if the DWSD Transaction is not consummated: (a) DWSD Bonds will either be Reinstated or replaced by new DWSD bonds, (*Id*. at 45–46; Plan at 26), and (b) DWSD Revolving Bonds will be Reinstated, (Disclosure Statement at 18; Plan at 28). According to the Disclosure Statement, the City will have until the Effective Date to elect whether Water and Sewer Bonds will be Reinstated or replaced. (Disclosure Statement at 28). It is not clear whether the City intends to have the option of Reinstating the DWSD Bonds on a CUSIP by CUSIP basis.

      9.    The new DWSD bonds would be either "New DWSD Bonds," which are subject to an interest rate "reset" at rates lower than the current interest rates on DWSD Bonds, or "New Existing Rate DWSD Bonds," which would retain the DWSD Bonds' current interest rates. (*Id*. at 44–45).

      10.    In addition to the interest rate "reset," the Disclosure Statement provides the DWSD will "prefund" $675,000,000 in pension-related payments to the City's General Retirement System (the "**_GRS_**") over the next nine years. (*Id*. at 11, 34).

      11.    Finally, the terms of the New DWSD Bonds or the New Existing Rate DWSD Bonds will permit a subsequent lease or transfer of the assets of the Systems at a later date to a

new authority to conduct the operations currently conducted by the DWSD, perhaps like the DWSD Transaction. (*Id.* at 44–45).

## III.     Privatization of the Systems and Undisclosed Issuance of New Capital Improvement Sewer Bonds.

12.     The DWSD has made public statements regarding the DWSD's solicitation of proposals for the issuance of $150,000,000 of new capital improvement sewer bonds in June 2014.[11]     Proceeds of the issuance are reportedly to finance capital improvements for the 2015 Fiscal Year.  The Disclosure Statement fails to address the issuance of $150,000,000 in new sewer bonds, including how they will be treated under the Plan.

13.     The Disclosure Statement states that the City is considering a potential public-private partnership for the Systems. (*Id.* at 122–23).  However, the Disclosure Statement fails to explain the form of such "privatization," and how the "privatization" will affect the Holder's treatment under the Plan.

## ARGUMENT

## IV.     The City has not met the Legal Standard for Approval of the Disclosure Statement.

14.     Under § 1125, made applicable in chapter 9 cases by § 901, the City's Disclosure Statement is required to contain adequate information such that all of the City's creditors can make an informed choice regarding the approval or rejection of its Plan.  *See In re Bamberg Cnty. Mem'l Hosp.*, Case No. 11-03877, 2012 WL 1890259, at *5 (Bankr. D.S.C. May 23, 2012); *In re Cnty. of Orange*, 219 B.R. 543, 560 (Bankr. C.D. Cal. 1997).  A disclosure statement must adequately disclose all factors "known to the plan proponent that bear upon the success or failure of the proposals contained in the plan."  *In re Beltrami Enters., Inc.*, 191 B.R.

---

[11] Caitlin Devitt, *Detroit Will Sell New Sewer Bonds in the Midst of Bankruptcy*, The Bond Buyer, (Mar. 24, 2014, 12:10 p.m.), http://www.bondbuyer.com/issues/123_57/detroit-will-sell-new-sewer-bonds-in-the-midst-of-bankruptcy-1060977-1.html  (last visited Apr. 7, 2014).

303, 304 (Bankr. M.D. Pa. 1995) (quoting *In re Stanley Hotel, Inc.*, 13 B.R. 926, 929 (Bankr. D. Colo. 1981)). Approval of a disclosure statement should be denied when it does not contain adequate information. *See Menard-Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694, 696 (4th Cir. 1989). The City bears "the burden of proving that the disclosure statement is adequate, including showing that the plan is confirmable." *In re Am. Capital Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012). Because the Disclosure Statement does not provide Holders with sufficient detail to enable them to evaluate the Plan's treatment of Water and Sewer Bonds, it should not be approved without material alterations.

**V.      The Disclosure Statement does not provide adequate information because Holders cannot tell what treatment they will receive under the Plan.**

15.      The City's Plan proposes a minimum of six possible treatments for the DWSD Bond Claims: cash payment, Reinstatement, new bonds issued by the DWSD with either new or existing rates of interest, and new bonds issued by the GLWA with either new or existing rates of interest. (Disclosure Statement at 16–18). The possibility of the privatization of the Systems, which might take any one of a host of different forms, raises yet additional undisclosed potential treatments. (*Id.* at 122–23). In addition to voting on the Plan, Holders of DWSD Bond Claims who vote to accept the Plan may elect to receive either a New Water/Sewer Bond with its existing interest rate or a New Water/Sewer Bond with an interest rate as set forth on the Interest Rate Reset Chart. However, Holders of DWSD Bond Claims who elect to receive a New Water/Sewer Bond with its existing interest rate will only receive its existing interest rate if their Class votes to accept the Plan. (*Id.* at 16–17; Plan at 26). The various combinations and alternatives with which Holders of DWSD Bond Claims are confronted are as follows:



16.     Further, the City proposes two possible treatments (or perhaps more in the event of privatization) for Holders of DWSD Revolving Bond Claims: Reinstatement or New GLWA Revolving Bonds.  (Disclosure Statement at 30).

17.     Holders are expected to vote on the Plan without knowing which of the numerous alternatives they are voting to accept or reject.  Even a Holder who votes to accept the Plan does not know what it will receive under the Plan if it is confirmed.

18.     While courts have allowed chapter 11 debtors to propose more than one alternative plan in a single disclosure statement, it should not be unduly confusing to claimants, and claimants must be provided "enough information . . . so that they may make an informed choice between two alternatives."  *In re Werth*, 29 B.R. 220, 223 (Bankr. D. Colo. 1983).  In evaluating a disclosure statement with several plan treatment options, a bankruptcy court determined that where the disclosure statement "identifies several options" that "are mutually exclusive," each having "a set of conditions under which it applies," it did not provide adequate

information.  *In re Arnold,* 471 B.R. 578, 585 (Bankr. C.D. Cal. 2012).  The court held that the disclosure statement failed to disclose adequate information:

> From a disclosure statement, creditors should be able to ascertain whether the Debtors intend to reorganize or liquidate, and <u>it is impossible to discern their intentions based on the Amended Disclosure Statement</u>. Moreover, the Amended Disclosure Statement lacks adequate information for creditors to make an informed judgment about the plan under § 1125(a)(1) because as described in the Amended Disclosure Statement, <u>the Plan sets forth five Plan Options, but it does not state which Plan Option will be operative if the Plan is confirmed</u>. . . .

*In re Arnold,* 471 B.R. at 585 (emphasis added).

19.     "[A] proper disclosure statement must clearly and succinctly inform the [] creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution."  *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991).  Since the Disclosure Statement lacks precise information about whether Holders of the DWSD Bond Claims will receive cash, Reinstatement of their bonds, or New Water/Sewer Bonds at either new or existing interest rates, or perhaps something different in the case of a "privatization," it does not adequately describe how those claims will be treated upon confirmation and cannot satisfy § 1125's adequate information standard.

20.     Further, the Disclosure Statement provides almost no information about the timing or chances of forming the GLWA, and accordingly, makes no effort to describe the likelihood that the New Water/Sewer Bonds will be issued by the GLWA rather than the DWSD.

**VI.     The City has not Adequately Explained the Pension-Related Payments.**

21.     The Disclosure Statement's description of how GRS unfunded actuarial accrued liabilities ("*UAAL*") will be funded and the manner in which the City's Plan proposes to remedy the UAAL fails to provide Holders adequate information needed to make an informed decision about the proposal.  The City's Disclosure Statement should include supporting facts rather than

mere statements of opinion or bare assertions, *In re Egan*, 33 B.R. 672, 676 (Bankr. N.D. Ill. 1983), but contains no foundation for the assertion that DWSD's share of GRS UAAL is $675,000,000 and no statement as to whether such a contribution will be used for anything other than the permissible operations or maintenance expenses of the Systems.

22. If no DWSD Transaction occurs, the Plan provides that the DWSD will "prefund" the $675,000,000 of contributions to the GRS over the next nine years.[12] (Disclosure Statement at 11, 24). The Disclosure Statement states that annual contributions to the GRS shall be made "in the amounts identified on Exhibit II.B.3.u.ii.A of the Plan." (*Id.* at 34). However, Exhibit II.B.3.u.ii.A is missing from the Plan. Exhibit L to the Disclosure Statement reflects that over the next nine years, the annual contributions will average $75,000,000 from the Systems, (*Id.* at Ex. L, Doc. 3382-2 at 189), a significant amount given that the total net revenue of the Systems (after payment of the costs of administration, maintenance, and debt service) was approximately $116 million in Fiscal Year 2012 (the last year audited financials are available).[13]

23. Holders need additional information to determine whether a plan to fund accelerated pension contributions from Holders' collateral is acceptable. The Disclosure Statement should be supplemented with the following information regarding the proposed "contribution" to the GRS:

    a. A summary of the manner and method of the City's determination of the amount of the DWSD's full allocable share of the GRS UAAL, identifying whether the DWSD's proposed contribution is to be allocated only to DWSD employees or former DWSD employees who have a GRS Pension Claim;

    b. An explanation of the impact the proposed DWSD contribution will have on each System's finances, value, and rates and charges for services;

---

[12] If the Effective Date of the Plan occurs on July 30, 2014, and the DWSD's final payment to the GRS is on June 30, 2013, then the $675,000,000 will be paid over the course of only eight years and 11 months.
[13] See KPMG, City of Detroit Water Fund, Basic Financial Statements, at 4–5 (June 30, 2012); KPMG, City of Detroit Sewage Disposal Fund, Basic Financial Statements, at 4–5 (June 30, 2012).

c.      The amount of annual contributions the DWSD made to the GRS in the past; and

d.      An explanation as to how the DIA Proceeds Default Amount in the event of a DIA Proceeds Payment Default, the Plan GRS Settlement, and any GRS Restoration Payment would impact the allocation of the proposed DWSD contribution to the GRS.

## VII.   The City Has Not Adequately Set Forth the Structure for the Formation and Operation of the GLWA.

24.    The Disclosure Statement states that the City will only enter into the DWSD Transaction if it "enables the City to make larger, more rapid or more certain distributions to at least some of its creditors as compared to the Distributions specified in the Plan and described in the Disclosure Statement." (Disclosure Statement at 70, 121). The City contemplates that if the DWSD Transaction occurs, the GLWA will "lease"[14] the DWSD assets from the City and make lease payments to the City from its "operation and maintenance expenses," the amounts of which the City asserts would then be excluded from the liens securing the Water and Sewer Bonds. (*Id.* at 122; Plan, Ex. I.A.178, Doc. 3382-1, at 189).

25.    A disclosure statement should disclose the debtor's anticipated future and future management, *see Cardinal Congregate I*, 121 B.R. at 767, but the City's Disclosure Statement does not set forth the terms of and conditions for the DWSD Transaction, the governance of the GLWA, the amount of any anticipated lease payments to the City,[15] the impact of such lease payments on the GLWA and its ability to make timely debt service payments to Holders, or how the DWSD Transaction will enable "the City to make larger, more rapid or more certain distributions to at least some of its creditors." (Disclosure Statement at 70, 121). These

---

[14] The Trustee reserves its rights as to whether the "lease" payment constitutes a lease/lease payment for purposes of the Ordinances, Indentures, Michigan State law or accounting rules.

[15] According to a recent news article, the GLWA would lease the Systems' assets "for a minimum of $47 million a year over 40 years." Halcom, Chad, *DWSD Suburban Users May Be on the Hook for $675M for City Pensions*, Crain's Detroit Business, available at http://www.crainsdetroit.com/article/20140309 /NEWS/303099970/dwsd-suburban-users-may-be-on-hook-for-675m-for-city-pensions# (last accessed April 7, 2014).

omissions make it impossible for Holders to assess the risks posed to them if the City transfers or leases the Systems to another entity.

26.     The City should supplement its Disclosure Statement with the following information regarding the proposed DWSD Transaction:

a.      A summary of the terms and conditions of the DWSD Transaction, including the provisions of any term sheet, memorandum of understanding or similar document, whether in draft or final form, between the City and any of the GLWA's prospective members, a description of any outstanding legal requirements necessary to the formation of the GLWA, the timeline for the process, the time at which creditors will be notified whether the City intends to enter into the DWSD Transaction, an update on the status of the City's negotiations with the GLWA's prospective members, and a statement of whether the City would enter into the proposed DWSD Transaction with less than all of the GLWA's prospective members;

b.      A description of the expected amount of the proposed lease payment(s) payable to the General Fund on account of the lease or transfer of assets currently used in the DWSD's operations, the manner or formula by which the amount of the lease payment(s) is/are calculated based on the City's determination of the DWSD's allocable share of the City's liabilities under the COPs and OPEB liabilities, the timing, the schedule, and other terms and conditions of the proposed lease payment(s), including the proposed uses by the City of the proceeds of any such lease payment(s);

c.      A summary of any anticipated distributions from the GLWA to the City, including the amounts of any distributions, the manner or formula by which such amounts are calculated, and the dates of any distributions;

d.      A statement regarding whether any new authority will retain the City's current legal rights and remedies for pursuing delinquent customer accounts;

e.      An explanation why the City is excluding City Facilities from the GLWA lease, and, how operations, repairs, maintenance, and capital improvements for the excluded City Facilities will be funded;

f.      A description of the existence and terms of any limits or caps on any or all of the proposed lease payment(s) payable to the General Fund on account of the lease or transfer of assets currently used in the DWSD's operations;

g.      A statement regarding whether, maintenance of "Fiscal Year 2014-15 rate setting protocols for a minimum of five years," and the freezing for ten years of "Retail/wholesale rate adjustments presently in the Fiscal Year 2013-14 rates," as

stated on page 122 of the Disclosure Statement, will enable the GLWA to generate sufficient revenue to pay the full costs of service, including operation, maintenance, debt service, capital expenditures, and rent;

h.  A summary of the impact of the ACO with the MDEQ[16] on the operations of any new authority created to conduct operations currently conducted by the DWSD, and whether the terms of the ACO or any hardship exemption will apply to any new authority created to conduct operations currently conducted by the DWSD;

i.  A description of the governance of the GLWA, including make-up of the board of the GLWA and the minimum requirements or credentials for the membership of the board of the GLWA;

e.  A statement, assuming the City consummates the DWSD Transaction and transfers a pro rata share of the existing GRS assets and liabilities to the successor pension fund managed by the GLWA, of (i) the funding level the GRS and successor GLWA pension plans are anticipated to have as of the date of the DWSD Transaction, and (ii) the amount of the assets and liabilities that will be held by the successor GLWA pension plan;

j.  A description of the manner in which the formation of the GLWA might provide larger, more rapid or more certain distributions to creditors, including the identity of the affected creditors, an explanation, if necessary, as to why any such enhanced distributions should benefit any creditors other than Holders of the Water and Sewer Bonds, and the methodology employed to determine whether formation of the GLWA will provide such distributions to creditors;

k.  A description of the rate schedules for water and sewer service during the life of the Plan, including a description of how those rate schedules for water and sewer service will be impacted by any lease payment(s) to the General Fund and the DWSD's accelerated contribution to the GRS, as proposed in the Plan; and

l.  Disclosure of any "success fee" or other remuneration that the City's advisors may receive upon consummation of the DWSD Transaction.

## VIII.  The Disclosure Statement is inadequate with respect to the potential "privatization" of the Systems.

27.  The Disclosure Statement states that the City is exploring privatizing the Systems. (*Id*. at 122–23). The Emergency Manager has sent out a Request For Information ("**RFI**") contemplating a closing in August 2014. The RFI demands that, under certain circumstances, a qualifying response must include assurances that the bidder will "[p]rovide adequate

---

[16] As referenced in the Disclosure Statement at 70.

consideration for the City to retire DWSD's outstanding debt," either assume the DWSD's pension liabilities or provide $675,000,000 to the City over ten years, and provide the City consideration equal to the DWSD's share of the OPEB settlement. (RFI at 13–14).[17] However, the Plan does not mention the potential privatization or discuss the numerous forms such privatization might take, including, among other things, outright sale and transfer of ownership, a concession agreement, a long-term lease, a management agreement, or some hybrid of any or all of the above. Neither the Disclosure Statement nor the Plan address whether a "privatization" of the Systems will impact the City's proposed distributions to Holders of DWSD Bond Claims or the Water and Sewer Bonds' current exemption from U.S. federal income taxes. Accordingly, the City should supplement its Disclosure Statement to provide fulsome information about the privatization option, including a description of outstanding legal requirements necessary to privatize the operation of the Systems, a summary of the terms and conditions of any qualifying RFI responses, and a summary of the impact of such terms and conditions on the Water and Sewer Bonds and the New Water/Sewer Bonds.

## IX. The Disclosure Statement does not Provide Adequate Information as to the DWSD's Historical or Projected Financial Status.

28.     A disclosure statement should provide enough information for creditors "to evaluate for *themselves* what impact the information might have on their claims and on the outcome of the case, and to decide for themselves what course of action to take." *In re Applegate Prop., Ltd.*, 133 B.R. 827, 831 (Bankr. W.D. Tex. 1991). A disclosure statement should describe "the condition and performance of the debtor" and "[a]ny financial information, valuations or pro forma projections that would be relevant to creditors' determinations of

---

[17] Available on the Emergency Manager's website, http://www.detroitmi.gov/EmergencyManager.aspx, at http://www.detroitmi.gov/Portals/0/docs/EM/Reports/DWSD%20RFI%20March%202014.pdf (last accessed Apr. 7, 2014).

whether to accept or reject the plan." *Cardinal Congregate I*, 121 B.R. at 765.  It should also describe "the accounting and valuation methods used to produce the financial information in the disclosure statement."  *See In re Keisler*, Case No. 08-34321, 2009 WL 1851413, at *4 (Bankr. E.D. Tenn. June 29, 2009) (quoting *Cardinal Congregate I*, 121 B.R. at 765).  A disclosure statement should include a budget based on stated facts and assumptions that demonstrates how a debtor will fulfill its plan.  *Bank of the Ozarks v. Coastal Realty Inv., Inc. (In re Coastal Realty Inv., Inc.)*, No. 12-20564, 2013 WL 214235, at *1, 6–7 (Bankr. S.D. Ga.  Jan. 17, 2013).

29.     Here, there is insufficient information to allow Holders to test and examine the City's projections and underlying assumptions regarding the New Water/Sewer Bonds.  The City should supplement its Disclosure Statement to include the following:

a.     An explanation as to whether the Plan allows for both an accelerated GRS contribution from the DWSD and the lease or transfer of the assets currently used in the DWSD's operations to one or more authorities who will then also make a lease payment(s) to the City;

b.     A statement regarding whether the DWSD's maintenance of Fiscal Year 2015 rate setting protocols for a minimum of five years will generate sufficient revenue to pay the full costs of service, including operation, maintenance, debt service, and capital expenditures;

c.     A summary of the capital improvement program financing for each System for the last three Fiscal Years;

d.     Pro forma projections, assuming a DWSD Transaction and associated lease payment, for the operating revenues, operation and maintenance expenses, capital improvement program financing, and revenue requirements of each System during the life of the Plan, including projected lease expenses, pension expenses, OPEB Benefits, and capital expenditures;

e.     Pro forma projections, assuming a privatization transaction, for the operating revenues, operation and maintenance expenses, capital improvement program financing, and revenue requirements of each System during the life of the Plan, including projected lease expenses, pension expenses, OPEB Benefits, and capital expenditures; and

f.      A description of the accounting and valuation methods used to produce the financial information provided in Exhibit L to the Disclosure Statement and requested herein.

**X.    The City has not Provided Adequate Information with respect to the Financial and Legal Terms relating to the New Water/Sewer Bonds.**

30.     The Disclosure Statement does not provide adequate information about the New Water/Sewer Bonds provided for in the Plan.

A.      Terms of the New Water/Sewer Bonds

31.     Several Exhibits to the Plan, none of which are included with the current version of the Disclosure Statement, appear to relate to the "Form" of the Documents for the New Water/Sewer Bonds.   Without these exhibits, the Disclosure Statement should not be approved. *In re Hirt*, 97 B.R. 981, 982 (Bankr. E.D. Wis. 1989) (disclosure statements should not be approved if they are "replete with deficiencies"). Therefore, the Trustee requests that the Court order the City to amend the Disclosure Statement to include the following, which are essential to evaluating the Plan:

Exhibit I.A.173—   Form of New DWSD Bond Documents
Exhibit I.A.175—   Form of New Existing Rate DWSD Bond Documents
Exhibit I.A.177—   Form of New Existing Rate GLWA Bond Documents
Exhibit I.A.180—   Form of New GLWA Bond Documents
Exhibit I.A.182—   Form of New GLWA Revolving Bond Documents

32.     The Plan provides that certain changes will be made to the current DWSD Bond Documents when the New Water/Sewer Bonds are put into effect.  (Plan, Exs. I.A.174, I.A.176, I.A.178, I.A.181, and I.A.183).  The Trustee and Holders need further information about these changes to evaluate the Plan.  Therefore, the Disclosure Statement should be amended to include the following information:

a.      An explanation as to, other than the changes identified in Exhibits I.A.174, I.A.176, I.A.178, I.A.181, and I.A.183 to the Plan, whether all of the representations, warranties, covenants, liens, rights, and remedies relating to the DWSD Bonds under the existing Ordinances and Indentures (as defined in the

DWSD Bond Documents) will be applicable to the New Water/Sewer Bonds, and, to the extent any changes from the terms of the current governing Bond Documents for DWSD Bonds are made, a detailed description of such changes;

b.  A statement of whether the issuance of the New Water/Sewer Bonds will be accompanied by an official statement and feasibility report setting forth a detailed description of the five-year capital program for the applicable Systems, sufficient to provide the market, pricing services, rating agencies, auditors, future investors, and regulators with information on the New Water/Sewer Bonds and the Systems;[18]

c.  A statement of whether and the extent to which the representations, warranties, liens, covenants, and agreements contained in the existing Ordinances and Indentures will be binding on the GLWA if the DWSD Transaction is consummated;

d.  Confirmation that all funds created pursuant to the Ordinances and Indentures including, without limitation, escrowed funds, the Reserve Account funds (as defined in the DWSD Bond Documents) and the Extraordinary Repair and Replacement Reserve Funds (as defined in the DWSD Bond Documents) shall not be used for any purposes except as set forth in the DWSD Bond Documents;

e.  A statement of whether the City has or will be applying for a public rating on the New Water/Sewer Bonds, and, if not, an explanation why not. If so, a statement as to the anticipated public rating on the New Water/Sewer Bonds; and

f.  The Disclosure Statement provides that "[e]xcept as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all Liens against the City's property will be deemed fully released and discharged. . . ." (Disclosure Statement at 45). The Disclosure Statement should be amended to clarify that payment of the New Water/Sewer Bonds will continue to be secured by a Lien on the Pledged Assets to the same extent and in the same priority as the existing DWSD Bonds.

33.  Respecting the tax consequences of the Plan, the Disclosure Statement provides that the anticipated "interest on the New DWSD Bonds or, if the DWSD Transaction is

---

[18] When special revenue enterprises issue new bonds, the issuance is typically accompanied by an official statement and feasibility report, which sets forth a detailed description of the capital program for the enterprise. *See, e.g., S. Carolina Nat'l Bank v. Stone,* 139 F.R.D. 335, 344 (D. S.C. 1991) (municipal bond official statement included feasibility report as exhibit). The enterprise often solicits public ratings on the new bonds as well. Further, the Disclosure Statement references a "January 2013 Capital Improvement Program" which is a five-year capital improvement initiative. (Disclosure Statement at 65). The Disclosure Statement should inform Holders whether the capital improvement initiative will continue.

consummated, the New GLWA Bonds, will be tax-exempt for U.S. federal income tax purposes," and that:

> The City intends to seek opinions of nationally recognized bond counsel addressing the tax status of the interest payable on the New DWSD Bonds (or, if the DWSD Transaction is consummated, the New GLWA Bonds), which are expected to be delivered with such New DWSD Bonds (or such New GLWA Bonds) on the Effective Date.

(*Id.* at 143). Since a debtor should provide information on tax consequences in its disclosure statement, *see e.g., In re Malek*, 35 B.R. 443, 444 (Bankr. E.D. Mich. 1983), the City should amend the Disclosure Statement to include an explanation of what impact the failure to obtain an opinion that interest is tax-exempt for U.S. federal income tax purposes will have on the Plan and Holders. Further, the City should amend the Disclosure Statement to include an explanation of what impact privatization of the Systems would have on the tax-exempt status of the New Water/Sewer Bonds.

> B.     Treatment of the Contemplated Lease Payment

34.     The Disclosure Statement provides that if a DWSD Transaction is consummated, then the "'operation and maintenance expenses' of GLWA shall (i) include the amount of any lease payment payable to the City's General Fund; and (ii) be excluded from the liens securing the New GLWA Bonds." (Disclosure Statement at 46). To allow the Trustee and Holders to evaluate reasonably this proposal, the Disclosure Statement should be amended to include the following information:

> a.     Assuming that the City leases or transfers the assets currently used in the DWSD's operations to one or more new authorities as contemplated in the Plan, provide the justification for the inclusion of the amount of any lease payment payable to the City's General Fund in the definition of "operations and maintenance expenses" and exclusion of such amount from the liens securing the New Water/Sewer Bonds;

b.      Provide the basis for the City's decision to treat the proposed lease of the assets currently used in the DWSD's operations as an operations and maintenance expense rather than as a capital lease; and

c.      State the material terms of the proposed lease, including, without limitation, the amount of the lease payment(s) contemplated, the methodology used to determine the amount of the proposed lease payment(s), and the duration of the lease.

C.      <u>Compliance with Michigan State Law</u>

35.      Under § 943(b)(4), a debtor's plan must comply with applicable law. The Disclosure Statement fails to explain the Michigan state law requirements, conditions, or limitations governing the issuance of the New Water/Sewer Bonds. It also fails to set forth the steps that the City has taken to comply with state law. Since a debtor should provide information regarding how the plan will be executed in its disclosure statement, *see Malek*, 35 B.R. at 443–44, the City should amend the Disclosure Statement to state whether:

a.      Issuance of the New Water/Sewer Bonds is governed by Michigan's The Revenue Bond Act of 1933, Act 94 of 1933, and, if so, how the New Water/Sewer Bonds comply with the Revenue Bond Act;

b.      The City is required to publish a notice of intent to issue any of the New Water/Sewer Bonds under MICH. COMP. LAWS § 141.133 or otherwise, and, if so, how the City plans to comply with the requirement;

c.      The 45-day right of referendum period under MICH. COMP. LAWS § 141.133 is applicable to the issuance of any of the New Water/Sewer Bonds;

d.      The City has the ability to issue any of the New Water/Sewer Bonds under Michigan's Revised Municipal Finance Act, Act 34 of 2001;

e.      The City is qualified to issue municipal securities under MICH. COMP. LAWS § 141.2303(3);

f.      The City has obtained approval to issue any of the New Water/Sewer Bonds under Mich. Comp. Laws Ann. § 141.2303(8); and

g.      The Disclosure Statement provides that "[t]he conditions to the Effective Date . . . may be waived in whole or part at any time by the City in its sole and absolute discretion. (Disclosure Statement at 39). It should include an explanation

regarding the City's purported authority and ability, if any, to waive the state law requirements to issue the New Water/Sewer Bonds.

D.    Interest rates on the New Water/Sewer Bonds

36.    The Disclosure Statement does not disclose the method employed in determining the rates on the Interest Rate Reset Chart or any support therefor.  The City should amend the Disclosure Statement to include:

    a.    Whether the interest rates reflected in the Interest Rate Reset Chart compensate Holders for the elimination of call protection and issuance premium;

    b.    Whether the proposed interest rates reflected in the Interest Rate Reset Chart compensate Holders for risk associated with the expansion of the definition of "operations and maintenance expenses" to include the amount of any lease payment payable to the City's General Fund, pension payments, any other "new payments," and the exclusion of such payments from the liens securing the New Water/Sewer Bonds; and

    c.    To the extent the City identified allegedly comparable issuances/issuers to the New Water/Sewer Bonds, the City should disclose that information to Holders to allow Holders to more easily assess the Plan.

E.    Insurance on the New Water/Sewer Bonds

37.    Neither the Disclosure Statement nor the Plan states whether the New Water/Sewer Bonds will be insured.  Whether a municipal bond is insured is important.  *See In re City of Detroit, Mich.*, 504 B.R. 191, 209 (Bankr. E.D. Mich. 2013) (recognizing that monoline insurance is "intended to make the investments more attractive to potential investors."); *see Ferretti*, 128 B.R. at 19 (a disclosure statement must "clearly and succinctly inform" a creditor  "what it is going to get").   Therefore, the City should amend the Disclosure Statement to state whether the New Water/Sewer Bonds will be insured, and, if so, the key terms of such monoline insurance.

## XI. The City has not Adequately Apprised Holders of the Impact of the Issuance of New Capital Improvement Sewer Bonds.

38.    The DWSD has stated that the DWSD is soliciting underwriters for proposals on the issuance of $150,000,000 of new sewer bonds for capital improvements to close by the end of June 2014.[19]   The Disclosure Statement makes no mention of the potential issuance of the new capital improvement sewer bonds during the bankruptcy proceedings, their treatment under the Plan, or their effect on the current Water and Sewer Bonds or the New Water/Sewer Bonds.   The lack of information relating to the new capital improvement sewer bonds leaves Holders with no ability to assess the risks posed to them under the Plan and renders the Disclosure Statement inadequate under § 1125.

## XII. The City has not Adequately Apprised Holders of the Procedures for Effecting the Plan Distributions.

39.    The DWSD Bonds are registered and held in "street name" by DTC.   CUSIP numbers have been assigned to the DWSD Bonds, and DTC uses the CUSIP numbers for clearing and settling trades, distributing principal and interest payments, and disseminating bondholder notices.   The Disclosure Statement and Plan contemplate the cancellation of "the Bonds and Bond Documents," while preserving claims, under the Bond Insurance Policies and against the Bond Insurers.   (Disclosure Statement at 48).   The Plan also contemplates the issuance of New DWSD Bonds or New GLWA Bonds with the possibility of electing existing interest rates if the Holder's Class accepts the Plan.   Doing so will require implementation of certain protocols by DTC, including, potentially, the use of appropriate "contra-CUSIPs."   The

---

[19]   Devitt, *Detroit Will Sell New Sewer Bonds in the Midst of Bankruptcy*, The Bond Buyer, http://www.bondbuyer.com/issues/123_57/detroit-will-sell-new-sewer-bonds-in-the-midst-of-bankruptcy-1060977-1.html.

Disclosure Statement should inform Holders of the procedures the City will employ to assure the following:

    a.        Holders of DWSD Bonds receive New Water/Sewer Bonds in accordance with their elections and the Plan;

    b.        Holders of DWSD Bonds receive the bonds or other consideration to which they are entitled in the event of a "privatization" of the Systems; and

    c.        The preservation of DWSD Bonds, Bond Documents, and claims of Holders of DWSD Bonds under any Bond Insurance Policy and against any Bond Insurer.

    40.      In addition, the City's recent balloting motion indicates that Holders who elect to receive New Existing Rate Water/Sewer Bonds will not be allowed to trade their securities once they are tendered into an election account. (Motion of the City of Detroit for Approval of Amended Ballots, Doc. 3463, at 5, Exs. 6A.1–6A.4; Order Granting Motion of the City of Detroit for Approval of Amended Ballots, Doc. 3796, at 2). This could prohibit a Holder from trading between June 30, 2014, the date ballots are due, through the Effective Date, which might occur as late as 180 days after entry of the Confirmation Order, unless extended by the court. (Disclosure Statement at 39). The Disclosure Statement should be amended to explain:

    a.        Why Holders who elect to receive New Existing Rate Water/Sewer Bonds are restricted from trading their securities;

    b.        When the applicable securities held by Holders who elect to receive New Existing Rate Water/Sewer Bonds will be tendered into election accounts established by DTC, and an explanation as to why the timing may be appropriate;

    c.        The time period and length of time securities held by Holders who elect to receive New Existing Rate Water/Sewer Bonds will be restricted from trading;

    d.        What, if any, other elections or Plan alternatives will trigger a restriction, including any trading restriction; and, if so, why;

    e.        The terms of any such restrictions; and

    f.        The time period(s) during which any such restrictions will apply.

**XIII.  The Disclosure Statement Includes Two Impermissible "Death Traps."**

41.     The Plan contains at least two "death traps" with respect to the DWSD Bond Claims that unfairly discriminate against Holders.  First, the Plan provides that any dissenting Class of DWSD Bond Claims will receive the new "cram down" interest rate that is set forth in the Interest Rate Reset Chart.  (Plan at 26).  If Holders want to minimize the risk of receiving the "cram down" interest rate, then they must vote "yes" on the Plan.  If the City just wanted to encourage Holders to vote "yes," then the City could simply provide that any Class that accepts the Plan will get their contract interest rate, and any Class that rejects the Plan will get the "cram down" interest rate.

42.     Second, under the Plan if a Holder elects to receive its existing interest rate, the election results in a complete waiver of the Holder's right to object to the Plan on any grounds.  This is a second "death trap" and is described in the Disclosure Statement as follows:

> ***Each Holder*** of an Allowed DWSD Class A Water Claim ***in a Class*** of DWSD Class A Water Claims **that accepts** the Plan ***may elect to receive*** New Existing Rate Water/Sewer Bonds having a principal amount equal to the principal amount of the DWSD Class A Water Bonds held by such Holder in lieu of New Water/Sewer Bonds.  ***An election*** to receive New Existing Rate Water/Sewer Bonds ***pursuant to the foregoing sentence*** constitutes an ***irrevocable waiver of any and all rights to object to the Plan*** on any grounds, and any such objection may be disregarded by the Bankruptcy Court solely on the basis of such election.

(Disclosure Statement at 28) (emphasis added).[20]  It is proposed solely as a means to cause dissenting Holders who want to keep their existing interest rate to waive their substantive right to object to the Plan on any grounds.  The election requires non-accepting Holders to effectively elect to receive a lower "cram down" interest rate (agree to discriminatory treatment within their class), which they will receive even if their Class accepts the Plan and the other members of their

---

[20] Substantively identical provisions exist for Holders of DWSD Class B Water Claims, DWSD Class A Sewer Claims and DWSD Class B Sewer Claims.  (Disclosure Statement at 28–30).

Class receive the higher existing interest rate, in order to preserve their legal right to object to a Plan they voted against.

43.     Use of death trap provisions are disfavored by the courts.  "There is no authority in the Bankruptcy Code for discriminating against classes who vote against a plan of reorganization."  *In re Mcorp Fin., Inc.*, 137 B.R. 219, 236 (Bankr. S.D. Tex. 1992) (denying confirmation of a plan that provided for payment to  each of three classes of equity holders only if all three classes voted to accept the plan); *see also In re Adelphia Commc'ns Corp.,* 361 B.R. 337, 363 (S.D.N.Y. 2007) (granting stay of confirmation order pending appeal and recognizing that "where the receipt of valuable benefits in a plan is conditioned on a vote to accept that plan, there is a very real possibility of dissuading or silencing opposition to the plan.").   The Disclosure Statement should not be approved with the "death trap" provisions in the Plan.

44.     Even if the use of these "death traps" were permissible, the Disclosure Statement does not adequately explain how they work.  First, the Disclosure Statement does not state whether the forced waiver is effective simply upon making the election or requires both making the election and Class acceptance—which of course will be unknowable to any Holder at the time it must vote.  Second, the Disclosure Statement does not state whether the City's "death trap" provision applies to all Claims of a Holder.  That is, the Disclosure Statement fails to explain whether electing to receive New Existing Rate Water/Sewer Bonds with respect to a single CUSIP bars the Holder from objecting to the Plan on any other ballot.  The Disclosure Statement should be amended to clarify whether this "death trap," if permitted, would be applied to each and every CUSIP of DWSD Bonds held by an objecting Holder, whether it is applicable simply upon making the election or requires both making the election and Class acceptance, and whether it applies to any other holdings.

**XIV.   The Disclosure Statement Needs to Provide More Details Regarding the Treatment of the Water and Sewer Bond Claims.**

45.     The City's Disclosure Statement does not provide adequate information about its planned disposition of the Water and Sewer Bond Claims, including the treatment of original issuance premiums, compensation for the loss of call protection, and whether accrued but unpaid interest through the Distribution Date is included in the amount of the allowed Water and Bond Claims.

46.     The Disclosure Statement and Plan also fail to address the payment of the Trustee's fees and expenses (including fees of its counsel, advisors and experts) (collectively, the "*Trustee Fees Claim*") incurred in connection with the administration of the Systems through the Distribution Date, including in connection with, the disbursement of Distributions as set forth in the Plan.  On the Distribution Date the Trustee is entitled to a Cash Distribution in the amount of the unpaid Trustee Fees Claim.  Further, there must be a mechanism to provide the Trustee with cash payment of the fees and expenses (including fees of its counsel, advisors and experts) it may incur after the Effective Date in the administration of claims under any Bond Insurance Policies or against any Bond Insurers (collectively, the "*Post-Effective Date Trustee Fees Claim*").  The Disclosure Statement should be amended to include an explanation of how the Trustee Fees Claim and Post-Effective Date Trustee Fees Claim will be paid, and the source of the payment.

47.     The Disclosure Statement provides that if the DWSD Transaction is not consummated, Holders of DWSD Revolving Bonds shall have their "Allowed DWSD Revolving [Water/Sewer] Bond Claim Reinstated."  (Disclosure Statement at 30).  However, the Disclosure Statement also states that the City shall have no obligation to pay interest accrued after the Petition Date, and that all Liens against the City's property will be deemed fully released and

discharged.  (*Id*. at 45, 48).  It is unclear whether the legal, equitable and contractual rights of the DWSD Revolving Bonds will be altered based on the amount of their Allowed Claim, whether their Lien will continue, or whether they will receive any interest accrued and unpaid after the Petition Date.  The Disclosure Statement should be amended to clarify that if the City chooses to Reinstate the DWSD Revolving Bonds, their legal, equitable, and contractual rights will remain unaltered.

48.     The Disclosure Statement provides for the cancellation of existing Bonds and Bond Documents.  (*Id*. at 48).  However, the Disclosure Statement then provides that the Bond Documents shall continue in effect for the purposes set forth in § IV.G.  (*Id.*).  The Disclosure Statement should be amended to clarify that both the Bonds and Bond Documents shall continue in effect for the purposes set forth in § IV.G.

49.     The Disclosure Statement provides that as a condition to participation under the Plan, a Holder that desires to receive the property to be distributed on account of an Allowed Claim shall surrender any note, debenture or other evidence of indebtedness to the City.  (*Id*. at 52).  The Disclosure Statement goes on to provide that "if a claimant is a Holder of a note, debenture or other evidence of indebtedness for which no physical certificate was issued to the Holder but which instead is held in book-entry from pursuant to a global security held by the Depository Trust Company . . . the City or the applicable Bond Agent . . . may waive the requirement of surrender."  (*Id.*).  The Disclosure Statement also indicates that "no Bond, note, debenture or other evidence of indebtedness of the City shall be surrendered or deemed surrendered hereby to the extent necessary to make and preserve a claim under any Bond Insurance Policy or against any Bond Insurer."  (*Id.*).  Rather than require the Trustee to "waive"

the requirement of surrender, the Disclosure Statement should be amended to provide that bonds held by DTC are exempt from the surrender requirement.

50.     Because the Disclosure Statement omits such material information relating to the Water and Sewer Bond Claims, the City should supplement the Disclosure Statement to include the following additional information regarding the Water and Sewer Bond Claims:

a.      A statement as to whether the principal amounts of the New Water/Sewer Bonds include the amount of any original issuance premium, if applicable, and whether the amount of the allowed DWSD Bond Claims include the amount of original issuance premium, if applicable;

b.      A statement as to whether the DWSD or GLWA will continue to cause Net Revenues of the Systems to be deposited with the Trustee;

c.      A statement as to whether any accrued, but unpaid interest, will be included in the amount of the allowed Water and Sewer Bond Claims; whether any accrued and unpaid interest is being disallowed, and, if applicable, the reason therefor; and the amount of allowed post-petition accrued and unpaid interest;

d.      A statement as to whether the allowed accrued and unpaid interest on the Water and Sewer Bond Claims, if any, will be paid in Cash on the Effective Date of the Plan or become part of the principal of the New Water/Sewer Bonds;

e.      An explanation as to how the allowed amount of the Water and Sewer Bond Claims was calculated;[21]

f.      A statement as to whether Holders are being compensated under the Plan for the loss of any call protection, and how that value was determined, and if not, the reason why the value of the call protection is not part of the allowed claim;

g.      Expression of the estimated percentage recovery set forth in Section II.B for Class 1A, Class 1B, Class 1C, Class 1D, Class 1E, and Class 1F similarly to the estimated percentage recovery of the other classes referenced in Exhibit II.B, rather than merely an estimate of the estimated recovery of the principal amount, as currently expressed; and

h.      An appropriate modification of the description of the classifications of the claims grouped in Class 1A, Class 1B, Class 1C, and Class 1D, in light of the clarification as to the division of these classifications by CUSIP for voting and election purposes.

---

[21] The allowed amounts do not match with the claims asserted in the Trustee's proofs of claim.  (*See* Claim Nos. 1339, 1340).

## RESERVATION OF RIGHTS

51.     The Trustee reserves all its rights and remedies with respect to the Water and Sewer Bond Claims.   Nothing herein shall be deemed to be a waiver of any procedural, substantive or other rights, privileges or remedies available with respect to the Water and Sewer Bond Claims, all of which are reserved.

## CONCLUSION

WHEREFORE, for the reasons stated herein, and for such other reasons as may be stated at any hearing, the Trustee respectfully requests that this Court: (i) deny approval of the Disclosure Statement, (ii) order the City to provide adequate information to Holders as set forth herein, and (iii) provide such other and further relief as is just and equitable.

Respectfully submitted this 7th day of April, 2014.

*/s/ David E. Lemke*
David E. Lemke (TN13586)
Michael R. Paslay (TN11092)
Ryan K. Cochran (TN25851)
Courtney M. Rogers (TN25664)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee  37219
Phone: (615) 244-6380
Fax: (615) 244-6804
david.lemke@wallerlaw.com
mike.paslay@wallerlaw.com
ryan.cochran@wallerlaw.com
courtney.rogers@wallerlaw.com

– and –

Robert J. Diehl, Jr. (MI31264)
Jaimee L. Witten (P70068)
BODMAN PLC
1901 St. Antoine Street, 6th Floor
Detroit, Michigan  48226
Phone: (313) 393-7597
Fax: (313) 393-7579
rdiehl@bodmanlaw.com
jwitten@bodmanlaw.com

*Attorneys for U.S. Bank National Association, as
Indenture Trustee for the Water and Sewer Bonds*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Objection to the Amended Disclosure Statement* was filed and served via the Court's electronic case filing and noticing system to all parties registered to receive electronic notices in this matter, this 7th day of April, 2014.

*/s/ David E. Lemke*
David E. Lemke (TN13586)
Michael R. Paslay (TN11092)
Ryan K. Cochran (TN25851)
Courtney M. Rogers (TN25664)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee  37219
Phone: (615) 244-6380
Fax: (615) 244-6804
david.lemke@wallerlaw.com
mike.paslay@wallerlaw.com
ryan.cochran@wallerlaw.com
courtney.rogers@wallerlaw.com

*Attorneys for U.S. Bank National Association, as
Indenture Trustee for the Water and Sewer Bonds*