# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 9 |
|  | ) |  |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
|  | ) |  |
| Debtor. | ) | Hon. Steven W. Rhodes |
|  | ) |  |

## OBJECTION OF THE OFFICIAL COMMITTEE OF RETIREES TO AMENDED DISCLOSURE STATEMENT WITH RESPECT TO AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT, MICHIGAN [DKT. NO. 3382]

The Official Committee of Retirees of the City of Detroit, Michigan (the "Committee") hereby submits its objections to the Amended Disclosure Statement with Respect to Amended Plan for Adjustment of Debts of the City of Detroit, Michigan (the "Amended Disclosure Statement') [Docket No.3382] filed on March 31, 2014 by the City and respectfully states as follows:

### PRELIMINARY STATEMENT

The Committee timely served lengthy objections to the City's original disclosure statement. The City has addressed many of the disclosure issues raised by the Committee in this Amended Disclosure Statement. The Committee anticipates that additional disclosure issues will be addressed in a disclosure supplement prepared for retirees that will be filed soon. The Committee's remaining specific disclosure issues are set forth in the annexed appendix. Notwithstanding these efforts on the part of the parties to resolve disclosure issues, the Amended Plan itself, with numerous contingencies in the treatment of retiree benefits, constitutes the greatest obstacle to providing retirees with adequate information to determine how to vote on the Plan. Retirees are not going to be able to determine what they are going to get, when they are going to get it, and what contingencies there are to getting their benefits.

The Amended Plan, filed on March 31, 2014 [Dkt No. 3380], calls for drastic cuts to retiree pension plans, including straight cuts to benefits, elimination of the supplemental annual adjustments ("COLA"), and in the case of the General Retirement System ("GRS") participants, recoupment of benefits paid to innocent retirees to fund the City's defined benefit pension contribution shortfall.  At the same time, the Amended Plan virtually eliminates retiree health care coverage that is essential for an aging population, thereby forcing most retirees to chose between payments for their healthcare and other life essentials out of their greatly reduced, fixed budgets.  The Amended Plan threatens even steeper cuts if the retirees in either the Police and Fire Fighters Retirement System ("PFRS") or GRS classes vote to reject the Plan.  However, even if both Classes 10 (PFRS participants) and Class 11 (GRS participants) vote to accept the Plan, the retirees may still suffer the steeper cuts if either the DIA Settlement and State Contribution is not approved for any reason or if the State and/or any of the DIA funders fail to make a contribution at any point in the next twenty years.

Although the City protests that it will remain the sponsor of the pensions plans, according to the Amended Disclosure Statement, the contributions to the pension plans for at least the next ten years, and more likely for the remaining life of the plans[1], are not slated to come from the City's tax revenue or its general fund.  Rather, under the Amended Plan, the pension plans are dependent upon third party contributions that may not materialize or may cease at any point, the investment returns on the pension plans' own assets as fixed to conform to the City's ultra conservative assumptions, and the contributions of the retirees from their pension checks. Specifically, the DIA Settlement Proceeds and the State Contribution, as defined in the Amended Plan, are exclusive source of funding for the PFRS plan until 2023.  The exclusive sources of

---

[1] The City has frozen the plans to new participants.  The freeze itself has a negative impact on the plan benefits and influences the investment strategy of plan fiduciaries.

82081582\V-1

funding for the GRS plan are accelerated contributions from DWSD[2], certain DIA Settlement Proceeds, and Annuity Savings Fund Recoupment--funds taken from retirees' checks to fund their own plans. [3]

To ensure that no changes are made to the retiree benefits, the City intends to seek a broad injunction in the confirmation order enjoining for ten years after the City's emergence from chapter 9 any amendment to (a) the terms and conditions and rules of operation of any plan that governs the calculation of plan benefits, (b) the selection of the extraordinarily low investment return assumptions for each plan mandated by the Amended Plan, (c) the amount of the pension benefits and (d) the contribution to the plans by contract, agreement, statute, rule, regulation, ordinance, charter, resolution or otherwise by operation of law. After the first ten years following the Plan effective date, the City is free to raise the investment return rates from 6.25% for GRS and 6.50% for PFRS to a more conventional 8% for both plans. By applying an increased rate of return to pension fund investment targets and the valuation of the plan assets at that point and taking into account the continuing third party contributions, the City will be able to eliminate any of its future funding requirements for the remaining life of the pension plans. The Amended Disclosure Statement is completely misleading with respect to the City's actual funding obligation.

[2] If there is a transaction involving the DWSD, the accelerated funding to the GRS plan will change and DWSD will likely take over the liability and assets of its retirees. The Amended Disclosure Statement does not describe was that will mean for either the DWSD retirees or the remaining GRS retirees with respect to their pension benefits.

[3] The State Contribution was originally conceived of as consideration for individual retiree releases of claims against the State relating to Pension Clause of the Michigan Constitution, and PA 436 and its predecessors, not as a replacement for City contribution to the pension plans. Pursuant to the Amended Plan, if the State Contribution Agreement and State release are approved, each retiree will be deemed to release the State and a group of related individuals and entities from claims relating to the Pension Clause, the Chapter 9 case, PA 436 and its predecessors, and the Plan and Disclosure Statement.

In accordance with the Court's Order Scheduling Order, the Committee is not asserting confirmation objections in its objections to the Amended Disclosure Statement . The Committee reserves all rights to raise any objections to the calculation and treatment of the retiree claims, including whether the Amended Plan meets the best interest test or complies with applicable state and federal law, whether the Plan releases and injunctions, including the ten year injunction described here and other Plan provisions are appropriate and comply with Sixth Circuit law and any other confirmation objection.

It appears that the City has eliminated all the risk of funding the pension plans into the future when it should be realizing the benefits of discharging debts in the chapter 9 and its substantial reinvestment in the City services. However, the retirees have no opportunity to share in any improvement in the City's financial status. Instead, the City offers a vague hope of restoration of some benefits if the plans reach certain funding levels. Based on the proposed governance rules that are baked into the DIA Settlement, the State Contribution and the Amended Plan, retirees will have no voice in the restoration of benefits at any point. The Committee believes that the extremely conservative investment rate target for the plans makes it a virtual certainty that the plans will not meet the predetermined funding level and therefore, benefits will not be restored. The promise of benefit restoration is also misleading.

The City's rejection of its obligations to fund retiree benefits is even more stunning when it comes to the treatment of OPEB. During the pendency of the chapter 9 case, the City reduced by approximately 85% the health insurance coverage offered to its retirees and it ceased subsidizing dental and vision coverage. Under the Amended Plan, the City has completely eliminated all responsibility for retiree health care and other benefits for the retirees. In its place, the City proposes to establish a Detroit Voluntary Employee Beneficiary Association ("VEBA") provide health care, life and other benefits to retirees, their dependents and future retirees. The City proposes to fund the VEBA with a pro rata share of a note designed to satisfy the claims of certain classes of unsecured creditors based on a reduced OPEB claim. The retiree's pro rata share of the note is not in the full amount of its claim, which under any method of calculation is largest claim against the City. The City proposes to reduce the retiree's OPEB claim for amounts it spent on retiree health coverage during the chapter 9 case and other offsets. There is no information in the Amended Disclosure Statement regarding the calculation of the claim or the

4

future benefits available for retirees.

The Amended Disclosure Statement, as filed on March 31, 2014, does not even begin to translate the complexities in the proposed treatment of retiree pension and OPEB claims described above in a way that would clearly advise retirees what they can expect to be getting in their monthly pension check or what they can expect for health care coverage so that they can decide how to vote on the plan. Given the contingencies inherent in the Plan consideration, even the plain English disclosure that the City intends to provide at some point may not be able to convey the simple facts that would assist a retiree in making the determination about a vote on the Plan. As a result, the Amended Disclosure Statement fails to meet the standard of adequate information required by section 1125 of the Bankruptcy Court and should not be approved by the Court.

STANDARD FOR APPROVAL OF THE AMENDED DISCLOSURE STATEMENT

1. Confirmation of a plan requires compliance with the disclosure and solicitation standards and rules. 11 U.S.C. §§901, 1129(a)(2). See *In re City of Colorado Springs Spring Creek Gen. Improvement Dist.*, 177 B.R. 684 (Bankr. D. Colo. 1995).

2. Section 1125, applicable to chapter 9 cases by virtue of section 901 of the Bankruptcy Code, governs post petition disclosure and prohibits the post petition solicitation of votes on a plan without the transmission of a disclosure statement, approved by the court as having adequate information. The section states in relevant part:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.

11 U.S.C. §1125(b).

5

3.   The disclosure requirements are based on the assumption that creditors rely on the disclosure statement in making their voting decision.  *In re Brooks*, 12-02072-8 (rdd), 2013 Bankr. LEXIS 4215 (Bankr. E.D.N.C. Oct. 8, 2013)(citations omitted)..  Accordingly, "adequate information" as used in section 1125 is defined with reference to the information necessary for an informed creditor vote on the debtor's plan in light of the debtor's history, operations, resources and plan:

> "'adequate information'" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information  about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. §1125(a)(1)

4.   Courts are in agreement that at a minimum a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti,* 128 B.R. 16, 19 (Bankr. D.N.H. 1991); *Commonwealth Group-Mocksville Partners*, 2013 Bankr. LEXIS 1648, *7 (Bankr. E.D. Tenn. April 22, 2013); *In re RADCO Props., Inc*., 402 B.R. 666,683) (Bankr. E.D.N.C 2009)("When providing creditors with information in connection with a disclosure statement, more is better.").

5.   As stated above, the Amended Disclosure Statement falls short of meeting that basic disclosure requirement.  At present, the descriptions of the treatment of retiree pension and claims and the underlying rationale for that treatment is geared more toward influencing public

opinion and the press in support of the City's Plan than it is to explaining in plain English what retirees will receive in their pension checks and for health care coverage, for how long and under what turn of events they will continue to receive both. In addition to the promised plain English disclosure to retirees regarding pension and OPEB treatment under the Amended Plan, the Amended Disclosure Statement should disclose how the investment rate affects the calculation of pension plan assets and the ongoing investment strategy. The City should fully disclose its intention with respect to future funding obligations and pension plan governance. In addition, the Amended Disclosure Statement lacks sufficient information on the sources and uses of the revenue that it is not using to fulfill its obligations to the retirees.

6. Given the current state of the Amended Disclosure Statement, retirees cannot begin to evaluate either what they are getting under the plan or what they might be giving up. A vote under these circumstances would be a leap of faith, not an informed decision whether to accept or reject the plan.

7. The Committee respectfully requests that the Court withhold approval of the Amended Disclosure Statement until the Committee's specific objections to the disclosure set forth in the annexed appendix are resolved and its proposed additions are adopted.

82081582\V-1

Dated:  April 7, 2014

DENTONS US LLP

By:   */s/ Carole Neville*
Carole Neville
Claude D. Montgomery
1221 Avenue of the Americas
New York New York 10020
Tel:  (212) 768-6700
carole.neville@dentons.com
claude.montgomery@dentons.com

and

Sam J. Alberts
DENTONS US LLP
1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005-3364
Tel: (202) 408-6400
sam.alberts@dentons.com

and

Matthew E. Wilkins
Paula A. Hall
BROOKS WILKINS SHARKEY & TURCO
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
Tel: (248) 971-1800
wilkins@bwst-law.com
hall@bwst-law.com

*Attorneys for the Retirees Committee*

82081582\V-1

SPECIFIC AMENDED DISCLOSURE STATEMENT COMMENTS

Introduction, Section E Plan Supplement Documents- The City proposes to file the Plan Supplement Documents after the voting deadline. The Plan Supplement Documents will be filed 10 days before the confirmation hearing, which is scheduled to begin on July 16, 2014. The voting deadline is June 30, 2014. In this case, the exhibits are not merely documents implementing the term plans. Rather, they are substantive documents that should be available to creditors before the voting deadline. Included among the exhibits that have not been filed are the Principal Terms of the Exit Facility (Exhibit I.A 127), the Form of the DIA Settlement Documents (I. A. 80) and the State Contribution Agreement (I.A.255)

Special Information Regarding Pension Claims: Amended Disclosure Statement, pp 8-11
The City's description of its commitment to fund the pension plans is grossly misleading to the hypothetical retiree. The language in place implies that the City intends to put cash derived from City assets or operations into the new trusts to support the modified plans. However, beyond the use of DWSD as a funding source, the Retiree Committee does not believe that to be true   It is not sufficient to simply say that the Committee disputes the interest rates when discussing the Committee's response to the treatment of retiree claims.   The Disclosure Statement should include the following statement of the Committee.

The City's description of the historical practices of pension plans serves two goals, both of which are intended to absolve the City from any ongoing obligation to fund the pension plans. First, the City uses select historical problems with the pension plans to justify the use of unnecessarily conservative investment rates for the plan assets and steep benefit cuts.   Second, the City uses plan history selectively to justify the recoupment of annuity savings fund in order to have the retirees actually fund their own pensions.

After taking into consideration the severity of the benefit cuts, the use of unconventionally low investment rates, the program to have the retirees fund their own pensions through misguided ASF recoupment, conditional third party "contributions" and the control over the pension plans' investments going forward, it becomes apparent that City is actually planning to eliminate its obligations to fund the plans at any time in the future. With respect to the funding obligations through 2023, the City states: "The City will continue to retain the responsibility to fund all amounts necessary to provide the adjusted (reduced) pension benefits to its employees and retirees of either the GRS or PRFS pension plans as of the Effective Date, although the City's contributions will be fixed during the period ending June 30, 2023."   In fact, the City has acknowledged in various places in the disclosure statement that it is not required to and does not intend to use contribute **any** of the City's tax revenue or general funds to the plans through 2023. See Disclosure Statement page   "There is no funding available to the pension funds from the City's General Fund through 2023" Amended Disclosure Statement, p. 11

With respect to ASF recoupment, the City fails to disclose that it is taking property belonging to

individual account holders or seeking recovery through setoff in the absence of mutuality of obligations and with commencement of an adversary proceed. The City also fails to disclose its plans may be subject to statute of limitations defenses and the neither the City nor the current Trustees of GRS have the requisite clean hands to pursue an unjust enrichment theory against innocent retiree distributees.

While the City expressly states that the sole sources of funding in the first ten years are: the proceeds from the DIA settlement and the State Contribution, if these third party contributions come to fruition, an acceleration of the historic contribution to the plans from DWSD, the pension funds own assets, and recoupment from the retirees' own pensions plans, the Disclosure Statement fails to clearly state all the attendant risks to this approach. If the DIA Settlement proceeds and State Contribution are not made, the Plan contemplates steeper cuts to the plans, but no City contributions. The retirees bear all the risk of a default in third party contributions, but they must give up their claims and right to additional asset value for any chance to receive plan contributions from the State and foundations. To ensure that the retirees are locked into the benefit reductions, the City proposes to enjoin the City, State and any legislative body from changing the interest rate assumptions or making any other contributions to the pension plans for ten years. The authority for this approach is unknown and unasserted in the Disclosure Statement.

The DIA proceeds and the State contributions (and the ASF recoupment and investment return on the plan assets) are the sole sources of funding for the next ten years through 2033 as well. With respect to the funding obligations after 2023, the City states: "Using the assumptions adopted by the City in proposing the Plan (6.25% return on GRS and 6.50% return on PFRS), between 2023 and 2033 the City will contribute $2.698 billion, the present value of which is $992 million." Amended Disclosure Statement, p.9 However, using the more appropriate 8% return on investment, which the City is free to adopt after 2023, and taking into account the third party contributions, the City may have *no funding obligation* to the plans thereafter.

The investment rates for each pension plan selected by the City affect both the value of the existing plan assets and investment strategy for the plans in the future. In simple terms, a lower discount rate reduces the value of existing assets, thereby requiring either larger contributions to cover benefit commitments (which the City is not willing to undertake) or greater cuts in benefits. The lower investment return rate also influences the investment strategy going forward as plan managers are likely to invest to the target.

The ultra conservative investment rate of return and governance adopted by the City under the Amended Plan is not necessary to curb excess earnings distribution. The excess earnings distribution has been prohibited by City Ordinance since December 2011. Similarly, the ultra conservative investment rate adopted by the City is not justified by wayward investment policies of the plan. The current investment practices of the pension plans are purportedly consistent with the guidelines set forth in the Michigan Public Employee Retirement System Investment Act. The investment rates of return, 7.9% for GRS and 8% for PFRS currently used by the plans, are consistent with the rates used by most of the public pension plans. According to the 2013 Public Pension Fund Survey, prepared by the City's own actuary, the median interest rate assumption across the 100 largest public pension funds is 7.75%. In contrast, the rates proposed by the City 6.25% and 6.5% are outliers that necessitate greater cuts to the retiree pensions than necessary

In addition, the descriptions of the restoration on pages 13 and 14 for PFRS and GRS, respectively are misleading because the conservative rate of investment return coupled with likely asset allocation changes ensures that the PFRS and GRS plans will not reach the funding level. Even if they did, the Plan does not provide any retiree input into the restoration decisions; the entire restoration could, in theory, be allocated entirely to future retirees and actives.

Please add the following statement;

The Committee does not believe that there will be a restoration of benefits after 10 years because the low investment rate of return guarantees conservative investments that will not result in a higher actual rate of return. In addition, there appears to be an injunction against additional contributions to affect restoration. In the view of the Committee, under the City's current proposal it is misleading to ascribe any material possibility of restoration to the Plan given the discount rate assumption proposed by the City. The new advisers or trustees will manage the asset allocations to achieve the lower target, reducing the probability of gains sufficient to restore benefits before 2023, and the retirees may have no representation to ensure that the settlement contributions will be made to the pension plans and the portfolio will be actively managed.

The Amended Disclosure Statement fails to disclose the authority for a ten year injunction restraining the City, the State and its residents post emergence from taking legislative or contractual action to modify the terms of the pension. Amended Disclosure Statement, pp., 23, 25

The Amended Disclosure Statement fails to describe the operation of the VEBA, who it will actually cover or the nature of the future benefits it will provide, i.e., monthly stipends and/or program benefits. Amended Disclosure Statement, p. 25

The Disclosure Statement does not indicate what the total amount of the desired offset is for post-petition OPEB payments or the basis for obtaining the offset or that the Committee challenges the City's ability to seek such offset. In particular, City does not explain its choice of setoff methodology or legal basis in light of the special contracts clause protections against retiree health benefit reductions. See [*Welch v. Brown*, No. 13-1476, 2014 WL 25641 (6th Cir. Jan. 3, 2014) (holding that district court did not abuse its discretion in finding that argument that defendants violated Michigan's Contract Clause had a likelihood of success, because retiree health benefit modifications were not necessary and impaired provisions of their contracts and collective bargaining agreements (CBAs).] The Disclosure Statement should reveal to the average retiree creditor that the funds allocated under the proposed B Note would not be sufficient to fund continuation of the already City's greatly reduced 2014 program. Amended Disclosure Statement, p. 36.

The Amended Disclosure Statement should discuss in light of the Sixth Circuit's decision in *In re Dow Corning Corp.*, 280 F.3d. 648, 658 (6th Cir. 2001) the legal basis and consideration provided to each retiree for the release and exculpation of the State, the State Related Entities (defined in the Amended Plan to include: all officers, legislators, the Governor, judges and justices of the State, the Treasurer of the State, all members of the Local Emergency Financial Assistance Loan Board, each of the State's agencies and departments and related entities of each

82081582\V-1

of the foregoing) and Released Parties (defined in the Amended Plan to (defined in the Amended Plan to include: all officers, legislators, the Governor, judges and justices of the State, the Treasurer of the State, all members of the Local Emergency Financial Assistance Loan Board, each of the State's agencies and departments and related entities of each of the foregoing). Amended Disclosure Statement, p. 41-2

The Amended Disclosure Statement should note that the Committee does not agree that the Plan is "fair and equitable" with respect to holders of pension claims because, among many other things, it does not provide for a reasonable investment rate of return that would reduce the plan underfunding and support less drastic benefit cuts and does not implement the protections afforded by state law.  Amended Disclosure Statement, p. 56

Similarly, the Committee does not believe the Plan meets the best interest test described on page 57 of the Amended Disclosure Statement.

Pension Assumptions,  Amended Disclosure, p. 81
Based upon the asset allocations of the retirement systems, the discount rates (GRS - 7.9%; PFRS – 8%) are reasonable and have been set in accordance with Actuarial Standards of Practice. According to the 2013 Milliman Public Pension Fund Survey, the median interest rate assumption across the 100 largest public pension funds is 7.75%.  According to the 2014 National Conference on Public Employee Retirement Systems Survey covering 227 pension plans, the median discount rate is 7.75%.  The Amended Disclosure Statement should  explain in understandable terms what makes 6.25 and 6.5 percent "more realistic" rates of return for DGRS and PFRS respectively and why it is requiring different interest rate assumptions for the two plans.

The City fails to disclose that the challenged asset valuation method "smoothing", which recognizes asset gains and losses (i.e., actual investment returns above or below the discount rate) over a seven year period is a professionally recognized and presumptively reasonable asset valuation technique method and complies with Actuarial Standards of Practice. Asset smoothing is used to temper contribution volatility due to investment performance while recognizing asset gains and losses over a seven year period.

The City continues to challenge the amortization of liability assumptions of the plans actuaries. However, the Disclosure Statement should indicate that the amortization of the UAAL for GRS is 30 years, which is the period that is allowed by current Governmental Accounting Standards Board Statement 25 to determine the Annual Required Contribution.  Similarly permitted is the amortization period for PFRS is 29 years and is not applied anew each year.   Amended Disclosure Statement Page 81

The Amended Disclosure Statement fails to disclose the role elected and appointed  City officials played in the practices relating to the Annuity Savings Plan.   In addition, the Amended Disclosure Statement does not describe any plans the City has to recover from Retirement System officials, advisers or their insurers for the alleged fiduciary "malfeasance."

In addition to the Michigan Pension Clause protections afforded retirees with vested pension

82081582\V-1

benefits, there are federal statutory protections for some City retirees. The Amended Disclosure Statement should discuss the legal protections for pensions under State law, the City Charter and Ordinances and federal law, including Section 13(c) of the Urban Mass Transportation Act of 1964, 49 U.S.C. § 5333(b)

The Committee has objected to the reference to and reliance upon the Declaration of Charles Moore, a restructuring professional, with respect to pension plan practices. As talented as Mr Moore may be, he is neither an actuary nor a pension specialist. The City should provide unqualified statements of its position or rely upon the statements of appropriate experts such as the City's actuaries. Amended Disclosure Statement, p. 82

The Amended Disclosure Statement describes the OPEB liability as being $5.718 billion associated with the two OPEB plans. The Disclosure statement does not explain how the City arrived at the number and how it is allocated between active employees and retirees. The Disclosure Statement also does not describe how the City claims to reduce the OPEB claim amount and recoveries by Medicare and the Affordable Care Act. The City should disclose to retirees that the claim amount proffered by the City does not include liabilities attributable to all eligible City retirees. The Amended Disclosure Statement also should make it clear that it is reducing its OPEB expenditures by at least 85%. Amended Disclosure Statement, p. 84

Operational Restructuring Initiatives, Asset Dispositions, Reinvestment Initiatives and Revenue Adjustments. The Committee reserves all rights to challenge the assertions about the results and value of operational restructuring initiatives, asset dispositions and reinvestment initiatives after completion of discovery.

The Disclosure Statement does not contain sufficient information regarding the Christie's appraisal. It omits the rationale for Christie's selection of appraisal methodology. It does not include any valuation of non-city purchased assets to which the City might reasonably claim ownership and reasons for failing to value those assets. There is no discussion of whether the City or its counsel determined that any of those assets are freely transferable. The Disclosure of Christie's strategies does not indicate whether the City or Christie's took any steps to determine whether more money could be generated from the DIA collection (not only the purchased art) by pursuing any of the strategies. Amended Disclosure Statement, pp. 127-28

A disclosure statement typically has a section on tax consequences for creditors as a result of the debtor's plan. Indeed, the Amended Disclosure Statement has a brief discussion of tax consequences for financial creditors. Tax Consequences for the holders of GRS Pension Claims. The Amended Disclosure Statement should advise holders of GRS claims that they may suffer adverse tax consequences to the extent distributions on which taxes were paid are recouped from future defined pension benefit entitlements arising from Annuity Savings Fund distributions .  .

82081582\V-1

## CERTIFICATE OF SERVICE

      I, Carole Neville, state that on April 7, 2014, I filed a copy of the foregoing Objection to the Amended Disclosure Statement with Respect to the Amended Plan for Adjustment of Debts of the City of Detroit Michigan with the Clerk of Court using the Court's ECF system and I hereby certify that the Court's ECF system has served all registered users that have appeared in the above-captioned case. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

*/s/ Carole Neville*

Carole Neville
carole.neville@dentons.com

82081582\V-1