# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| | ) | Hon. Steven W. Rhodes |
| Debtor. | ) | |
| | | Related to Doc. No. 2709, 2713 |

## OBJECTION OF THE DETROIT RETIREMENT SYSTEMS TO THE AMENDED DISCLOSURE STATEMENT WITH RESPECT TO AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT

The Police and Fire Retirement System of the City of Detroit (the "PFRS")
and the General Retirement System of the City of Detroit (the "GRS" and together
with the PFRS, the "Retirement Systems") hereby file this objection to the
Amended Disclosure Statement with Respect to Amended Plan for the Adjustment
of Debts of the City of Detroit (the "Disclosure Statement") [Dkt. No. 3382], and
the Motion of the City of Detroit for Approval of the Proposed Disclosure
Statement [Dkt. No. 2713] ("the Disclosure Statement Motion"), stating as follows:

## Preliminary Statement

1.     The Retirement Systems are keenly aware of the Court's focus on the
clarity and efficacy of the Plain English Notice (defined below) and the
individualized ballots that will be a primary source of information for individual

Holders of Pension Claims and various bond claims. However, ensuring the comprehensiveness of the information contained in the Disclosure Statement is also critical to the completeness of Plain English Notice and ballots. The omission of important information in the Disclosure Statement will most assuredly translate into incomplete information in the Notice and ballots.

2. As discussed below, the Disclosure Statement lacks adequate information in several key respects, in violation of Bankruptcy Code section 1125(b). Moreover, in certain instances, the City has indicated affirmatively that it intends to provide such information long after parties could reasonably be anticipated to review same, cast votes, and file any relevant Plan objections - - effectively (and improperly) truncating: (a) the 28-day notice requirement of Bankruptcy Rule 2002(b) for objecting to a plan of adjustment; and (b) the voting period contemplated under the Court's *Third Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment* [Dkt. No. 3632] (the "Third Amended Plan Scheduling Order").

## Objection

3. Section 1125(b) of the Bankruptcy Code provides that acceptance or rejection of a plan may not be solicited, "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the

- 2 -

court as containing adequate information." 11 U.S.C. § 1125(b). Whether a disclosure statement "contains adequate information is not governed by any otherwise applicable nonbankruptcy law. . . ." 11 U.S.C. § 1125(b).

4. Disclosure is [o]ne of the fundamental policies underlying the [bankruptcy] reorganization process." *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988). The purpose of the Disclosure Statement is "to provide sufficient information to enable a reasonable and typical investor to make an informed judgment about the plan." *In re Ligon*, 50 B.R. 127, 130 (Bankr. M.D. Tenn. 1985) (citing S. Rep. No. 989, 95th Cong., 2d Sess. 121). The Disclosure Statement is intended to be the "the primary source of information" upon which such informed judgments are made. *In re Scioto Valley Mortgage Co.*, 88 B.R. at 170. The Disclosure Statement should therefore "be comprised of 'all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan.'" *Id.* (quoting *In re Stanley Hotel, Inc.*, 13 B.R. 926, 929 (Bankr. D. Colo. 1981)).

5. Disclosure statements may not be approved where the disclosure statement is "illusory and contains many contingencies which are not clearly spelled out," making it "difficult for creditors to make an informed judgment regarding [the] plan." *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987).

- 3 -

6.     Further, the "availability of discovery to objectors does not mean that the plan proponent can pass off the burden of disclosing adequate information." *Official Comm. of Unsecured Creditors v. Michelson* (*In re Michelson*), 141 B.R. 715, 719 (Bankr. E.D. Cal. 1992).  Rather, the "purpose of the disclosure process is to obviate, not necessitate, independent investigation before agreeing to a reorganization." *Id.*

7.     For the following reasons, the City has failed to meet its burden to provide adequate information in its Disclosure Statement, and, therefore, the City's Disclosure Statement should not be approved.

## I.    THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION REGARDING THE TERMS AND THE RISKS RELATED TO SETTLEMENT TRANSACTIONS THAT ARE KEY TO IMPLEMENTING THE PLAN

8.     The proposed treatment of Allowed Pension Claims under the Amended Plan for the Adjustment of Debts of the City of Detroit (as may be amended, the "Plan") [Dkt. No. 3380] depends upon, among other things, the consummation of the DIA Settlement and the City's receipt of the State Contribution.[1]

9.     Notwithstanding the Court's stated concern for (among other things) establishing the feasibility of the Plan, the City has not provided necessary

---

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan and/or Disclosure Statement.

200508810.5 14893/165083

information on the likelihood of these events occurring. Just as this information is important for the Court at the time of a Plan confirmation hearing, so is it important to creditors in voting on the Plan.

### A. The DIA Settlement

10. Although the City has provided a 17-page term sheet for the DIA Settlement as an exhibit (Plan Exhibit I.A.79), it fails to discuss the term sheet in any detail in the Disclosure Statement and omits numerous salient terms thereof.[2]

11. As a threshold matter, the Disclosure Statement does not describe the likelihood of the DIA Settlement occurring. The Disclosure Statement indicates that the DIA Settlement will provide for at least $466 million in funding commitments over the course of the 20-year period immediately following the Effective Date, and that the Retirement Systems will be the ultimate beneficiaries of such funding. Disclosure Statement, at 47. However, the Disclosure Statement describes the pledge of Foundation Funds as "tentative" and provides that, in the absence of the DIA Settlement, holders of Allowed Pension Claims can expect that cuts to pension benefits will be significantly greater. Disclosure Statement, at 128, 15.

12. In addition, the pledge of DIA Funds appears to be highly speculative at this juncture. According to the term sheet, it appears that only $7.5 million of

---

[2]     In addition, the City still has not provided the form of the DIA Settlement Documents (Plan Exhibit I.A.80).

200508810.5 14893/165083

the $100 million of DIA Funds has been committed to date.  Plan Exhibit I.A.79, Term Sheet, Exhibit B.

13.     A key term to the feasibility of the DIA Settlement is a financial guaranty to be provided by the DIA itself; however, there is no discussion in the Disclosure Statement of the DIA's wherewithal to pay on this guaranty, and such wherewithal is certainly questionable in light of (a) the DIA's historical reliance on millages just to meet operating expenses, and (b) the DIA Settlement's proposal that virtually all assets of the DIA will be held in a charitable trust, unavailable to the DIA's creditors.

14.     According to the Disclosure Statement, nearly a dozen conditions precedent must be satisfied before the DIA Settlement can be consummated.  The City has provided no indication as to the likelihood of consummation, or when the City will know whether or not the City will enter into the DIA Settlement.  One such condition requires "the City's agreement to indemnify and hold harmless the Foundations and the CFSEM Supporting Organization pursuant to, and in accordance with, the terms of the DIA Settlement Documents."  Disclosure Statement, at 48.  However, the DIA Settlement Documents apparently do not yet exist.

15.     Furthermore, as stated above, the Disclosure Statement does not contain any discussion of the numerous terms of the DIA Settlement, as set forth

- 6 -

on the 17-page term sheet—including that the Retirement Systems and their beneficiaries waive and release various claims and shall have no recourse directly against the Funders in the event that they default.

16. Based upon the term sheet provided for the DIA Settlement (see Plan Exhibit I.A.79), the DIA Settlement Documents will, among other things, require that:

    a.    Upon the Initial Payment, the Transfer of Museum Assets, including, but not limited to the art collection, operating assets, and buildings, shall be "irrevocably consummated." Term Sheet at 9.

    b.    "The Pension funds themselves shall agree as part of the settlements approved through the confirmed Plan of Adjustment that they waive and release any and all claims against, and shall have no recourse directly against, the Funders or the Supporting Organization with respect to enforcement of the City's commitment to make payments to the Pensions or any such party, nor for any matter arising from the contemplated transaction. The agreement of the Pension funds, as implemented through the Plan of Adjustment and any associated court orders shall be binding on the Pensions and all entities or persons claiming through the Pensions, including without limitation any successors or assigns and any plan participants, and any of their representatives, successors or assigns." Term Sheet at 12-13.

17. That all of the broadly-defined Museum Assets will be *irrevocably* transferred to a charitable trust upon the mere payment of 5% of the Foundation Funders' and the State's commitments, and upon payment by the DIA of $5 million, must be clearly disclosed. That the Retirement Systems and the Holders

- 7 -

of Pensions Claims must waive and release any and all claims against the Funders and shall have no right of recourse against the Funders in the event they default on their payment obligations must also be clearly disclosed in the sections of the Disclosure Statement containing Special Information Regarding Pension Claims and in the sections of the Disclosure Statement describing the DIA Settlement.

### B. The State Contribution

18. The City also has not yet provided any detailed information regarding the terms, conditions, or form of the State Contribution Agreement (Plan Exhibit I.A.255). As such, disclosures about the State Contribution Agreement are also inadequate.

19. Although failure to obtain the State Contribution will mean significantly greater cuts to pension benefits and materially worse treatment for Allowed Pension Claims under the Plan (Disclosure Statement, at 11), the Disclosure Statement provides inadequate information as to the likelihood of the City receiving the State Contribution. In particular, the Disclosure Statement fails to explain the approval process in the State legislature necessary to implement the State settlement and the likelihood of the City and the Governor obtaining that approval.

20. The Disclosure Statement and the Plan also do not appear to provide any mechanism for the City or its creditors to be able to enforce the State's

200508810.5 14893/165083

obligation to pay the State Contribution if the conditions have been satisfied but the State of Michigan does not pay. The Disclosure Statement should disclose that the City has no ability to enforce this payment obligation -- or, if the City contends that it can do so, the mechanism by which it could force payment and the likelihood of success of any such enforcement action.

## II. THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION REGARDING OTHER MATERIAL PROVISIONS AFFECTING PENSION BENEFITS

### A. The Disclosure Statement Fails to Provide Adequate Information Regarding the Additional Benefits for Those "Most In Need"

21. The Disclosure Statement and Plan provide that certain holders of Allowed Pension Claims—those considered "most in need"—may receive additional benefits. Disclosure Statement, at 15. The City does not explain how those "most in need" will be determined, what the requirements are for receiving additional benefits, or how it will impact both the beneficiaries of the additional benefits and those whose will not receive additional benefits.

22. The City has not provided adequate information with respect to these additional benefits.

   a. First, it is unclear who will be responsible for making the determination that the Holder of an Allowed Pension Claim is entitled to additional benefits or how that determination will be made.

- 9 -

b.      Second, the Disclosure Statement does not state when or how such determination will occur, other than to indicate that those "most in need" *may* receive additional benefits.

c.      Third, the Disclosure Statement does not indicate how much additional benefits qualified holders of Allowed Pension Claims can expect to receive, or the timing of payment of such additional benefits.

The Disclosure Statement is likewise silent as to whether there will be an allocation of the State Consideration between the group getting enhanced payments and those whose share of the State Consideration will be reduced and, if so, how that allocation will effect those not receiving this additional payment.  The fact that each of Classes 10 and 11 will effectively comprise one group of Pension Claims receiving standard treatment and another group that will receive enhanced treatment must be disclosed both in the Disclosure Statement itself (and also quantified in both the Plain English Notice and the individualized ballots).  Holders of Pension Claims should be provided this information before they are required to cast their votes because the allocation between these two groups could materially affect the treatment of their claims under the Plan.

- 10 -

**B.** **The Disclosure Statement Fails to Provide Adequate Information Regarding the City's Proposed Funding of the Retirement Systems After 2023.**

23. The Disclosure Statement attaches, as Exhibit J, ten years of projections under the Plan. Because they only extend through 2023, these projections do not provide any basis for finding that the City can meet its direct obligations to fund the Retirement Systems after June 30, 2023 - - or that the Plan allocates appropriate value to the Retirement Systems' beneficiaries in those later years and is in the best interests of their beneficiaries.

24. On March 14, 2014, the Retirement Systems served the City with its *Request of the Detroit Retirement Systems to Include Additional Information in the Disclosure Statement* (the "Information Request"). In the Information Request, the Retirement Systems requested that the City provide projected cash flows through 2044, including year-by-year projections and distributions. The City's response indicated that it intends to make further revisions to the Disclosure Statement addressing this request, but the requested projections still have not yet been provided.

**III. THE CITY'S DISCLOSURES ARE INADEQUATE WITH RESPECT TO THE INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS OF THE PLAN**

25. Bankruptcy Rule 3016(c) provides:

> If a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure

- 11 -

statement shall describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction.

26.     The Disclosure Statement does not provide adequate information regarding releases and injunctions contained in the Plan and, notwithstanding Bankruptcy Rule 3016(c), fails to disclose, <u>in highlighted text</u>, numerous provisions having an injunctive effect, including that:

    a.    the Plan is intended to enjoin the pending appeals of the Court's December 3, 2013 bench decision on eligibility and the Opinion Regarding Eligibility [Dkt. No. 1945] (collectively, the "<u>Eligibility Decision</u>");

    b.    if a Holder of a Class 10 Claim or a Class 11 Claim votes for the Plan, and regardless of whether that Holder's Class as a whole accepts the Plan, the Holder waives: (i) the Holder's right to continue the appeal of the Eligibility Decision, (ii) any right that Holder may have under the Pensions Clause, and (iii) any Claims against the City, the City Related Entities, the State, and the State Related Entities in any way related to the City's bankruptcy case;

    c.    in the event of a default by the Foundations, the DIA Corp., or the State under the Plan, the transfer of the Museum Assets pursuant to the DIA Settlement will not be un-wound and is nonetheless irrevocable; and,

    d.    the Retirement Systems and the Holders of a Pension Claim are somehow deemed not be third-party beneficiaries and do not have a right of recourse in the event of default by the Foundations, the DIA Corp. or the State under the DIA Settlement and the State Contribution Agreement.

200508810.5 14893/165083

27.     The City must disclose the terms and the effects of such releases and injunctions in the Plan or approval of the Disclosure Statement must be denied.

28.     Similarly, the Exculpation and Release provisions are clearly injunctive in nature and must be highlighted under Bankruptcy Rule 3016(c).

## IV.    THE CITY'S DISCLOSURES ARE INADEQUATE WITH RESPECT TO SEVERAL OTHER KEY PROVISIONS OF THE PLAN

### A.     The Potential DWSD Transaction

29.     The Disclosure Statement contemplates the City possibly entering into a transaction (the "DWSD Transaction") which would create the Great Lakes Water and Sewer Authority ("GLWA") to take over the operations of the DWSD. Disclosure Statement, at 45, 70, 121.   Whether or not the City enters into the DWSD Transaction will have a material impact on the  treatment of various classes of claims, and will dictate how the City acts with respect to its current rates, DWSD employees, and certain bonds to be issued under the Plan.  Disclosure Statement, at 122.

30.     Nevertheless, the City has not provided a term sheet or any definitive documentation related to the DWSD Transaction.

31.     The Disclosure Statement also fails to provide any indication as to the likelihood that the DWSD Transaction is ultimately consummated, such as the status of negotiations, or whether any regulatory or legislative approvals would be required from other governmental entities before the DWSD Transaction can

- 13 -

occur, and if so, how long it would take to obtain such approvals. The City has not stated when it will know whether or not the DWSD Transaction will occur.

32.     The Disclosure Statement explains that if the DWSD Transaction is consummated "on or prior to the Effective Date, the GLWA will assume the pension liability associated with DWSD employees and retirees as accrued through the closing date of a DWSD Transaction. A pro rata share of the existing GRS assets and liabilities will be transferred to a successor pension fund managed by the GLWA." Disclosure Statement, at 24. No quantification is provided as to the potential benefit -- if any -- to the holders of Pension Claims or to the Retirement Systems.

33.     The Disclosure Statement is silent as to what will happen if the DWSD Transaction closes *after* the Effective Date and how the value of such transaction would be incorporated post-confirmation into the treatment of Pension Claims.

**B.      The Quality of Life Loan**

34.      The Disclosure Statement was filed by the City prior to the Court's entry of the Order Pursuant to 11 U.S.C. §§ 105, 362, 364(c)(1), 364(c)(2), 364(e), 364(f), 503, 507(a)(2), 904, 921, and 922 (I) Approving Post-Petition Financing, (II) Granting Liens and Providing Superpriority Claim Status and (III) Modifying Automatic Stay (the "Financing Order") [Dkt. No. 3607]. The Financing Order

- 14 -

approves a modified version of the $120 million "Quality of Life" loan originally sought by the City in connection with its November 5, 2013 motion seeking approval of post-petition financing [Dkt. No. 1520]. The Disclosure Statement should be amended with respect to its disclosures regarding post-petition financing to include the key terms of the Financing Order.

### C.  The UTGO/LTGO Litigation

35.  In the event that the bondholders prevail over the City on their claims to priority recovery in the UTGO Litigation and/or the LTGO Litigation, it is unclear what effect such an adverse result would have on the implementation of the Plan and the recoveries to other creditors.

### D.  Other Restructuring Initiatives and Asset Dispositions

36.  The City proposes certain operational restructuring initiatives and asset dispositions in the Disclosure Statement, the terms of which are not finalized. These include a potential sale of the Veterans' Memorial Building (Disclosure Statement, at 129); a possible sale, lease, or other transaction related to the Coleman A. Young Airport (Disclosure Statement, at 129); and the potential monetization of the assets constituting the Automobile Parking Fund (Disclosure Statement, at 71).

37.  The City has not provided any disclosure on the likelihood of any of these initiatives occurring, nor has it indicated when it will know whether or not

200508810.5 14893/165083

any or all of them will occur. There has similarly been no disclosure regarding what effect, if any, each of these initiatives would have on creditor recoveries or the implementation of the Plan.

### E. Missing Exhibits

38. In their Information Request, the Retirement Systems requested production of the Plan exhibits missing from the original Disclosure Statement. The amended Plan has eliminated some of these exhibits, but added others. As of the date of this Objection, the City has still not provided copies of nineteen (19) of these exhibits. The terms and contents of these exhibits are material to understanding the Plan. The Disclosure Statement cannot properly be approved without them.

39. The following nineteen (19) exhibits to the Plan have not been provided with the Disclosure Statement:

| Exhibit No. | Exhibit Name |
|---|---|
| **Exhibit I.A.80** | **Form of DIA Settlement Documents** |
| Exhibit I.A.127 | Principal Terms of Exit Facility |
| **Exhibit I.A.148.a** | **Form of GRS Hybrid Pension Plan** |
| Exhibit I.A.172 | Form of New B Notes Documents |
| Exhibit I.A.173 | Form of New DWSD Bond Documents |
| Exhibit I.A.175 | Form of New Existing Rate DWSD Bond Documents |
| Exhibit I.A.177 | Form of New Existing Rate GLWA Bond Documents |
| Exhibit I.A.180 | Form of New GLWA Bond Documents |
| Exhibit I.A.182 | Form of New GLWA Revolving Bond |

- 16 -

| | Documents |
|---|---|
| **Exhibit I.A.202.a** | **Form of PFRS Hybrid Pension Plan** |
| Exhibit I.A.208 | Form of Plan COP Settlement Documents |
| Exhibit I.A.210 | Principal Terms of Plan UTGO Notes |
| Exhibit I.A.211 | Form of Plan UTGO Note |
| **Exhibit I.A.255** | **State Contribution Agreement** |
| **Exhibit II.B.3.t.ii.A** | **Schedule of Payments and Sources of Payments for Modified PFRS Pension Benefits** |
| **Exhibit II.B.3.u.ii.A** | **Schedule of Payments and Sources of Payments for Modified GRS Pension Benefits** |
| Exhibit II.D.5 | Schedule of Postpetition Collective Bargaining Agreements |
| Exhibit II.D.6 | Executory Contracts and Unexpired Leases to Be Rejected |
| Exhibit III.D.2 | Retained Causes of Action |

Bolded exhibits pertain specifically to Pension Claims. The City intends to file the Form of GRS Hybrid Pension Plan (Exhibit I.A.148.a), and the Form of PFRS Hybrid Pension Plan (Exhibit I.A.202.a) no later than <u>five business days prior to the Voting Deadline</u>. Disclosure Statement at 7. It will file the remaining exhibits, including the DIA Settlement Documents (Exhibit I.A.80), the State Contribution Agreement (Exhibit I.A.255), and the Schedule of Payments and Sources of Payments for Modified PFRS and GRS Pension Benefits (Exhibits II.B.3.t.ii.A and Exhibit II.B.3.u.ii.A, respectively) no later than <u>ten days before the Confirmation Hearing</u>. Disclosure Statement at 7.

40. These time lines for providing Plan documents are blatantly antithetical to providing timely and adequate disclosure of information that would enable the reasonable hypothetical investor to make an informed judgment about

200508810.5 14893/165083

the Plan. These time lines would effectively deprive parties in interest of the 28 days' notice to object to the Plan under Bankruptcy Rule 2002(b) and dramatically shorten the time that voters realistically have to consider the Plan in full and cast their votes as contemplated by the Court's Third Amended Plan Scheduling Order.

### F. Request for Waiver of Automatic Stay of Confirmation Order

41.    The Disclosure Statement states: "The Plan shall serve as a motion seeking a waiver of the automatic stay of the Confirmation Order imposed by Bankruptcy Rule 3020(e). Any objection to this request for waiver shall be Filed and served on the parties listed in Section VIII.L of the Plan on or before the Voting Deadline." Disclosure Statement at 39; *see also* Plan at 54. The Disclosure Statement, the Disclosure Statement Motion, and the Plan do not state any basis for the City's request that the 14-day stay of the confirmation order be waived. As the movant, the City must identify the grounds for this motion in the Disclosure Statement and the Plan; otherwise the request must be denied because it is not properly supported.

## V.    RESERVATION OF RIGHTS

42.    The City proposes to include in its Solicitation Package specifically for retirees and active and former employees holding pension claims (i) a notice (the "Plain English Notice") describing generally the proposed treatment of their benefits claims under the Plan and (ii) individualized ballots specifying the

- 18 -

estimated amounts that each can reasonably expect to receive in pension payments under the different possible scenarios relative to benefit levels as of the Petition Date. The combination of the Plain English Notice and the individualized ballots is supposed to provide a "clear, concise summary of (1) the process for obtaining approval of the Plan; (2) the likely effect of the Plan on retiree pension and other post-employment benefits; and (3) instructions on how to vote on the Plan (the "<u>Benefits Supplement</u>")." Disclosure Statement, at 1. It is anticipated that the City will soon file a solicitation motion, seeking, among other things, approval of the form of Plain English Notice. While the Retirement Systems generally submit that fulsome information, including omitted information referenced in and requested by this Objection, should be included in the Notice in a distilled, succinct form, the Retirement Systems reserve all rights to object to the Plain English Notice as and when proposed by the City, including on the basis that it does not contain adequate information under Bankruptcy Code section 1125.

43.    The Third Amended Plan Scheduling Order provides, in relevant part: "*Parties shall not state objections to the plan as objections to the proposed disclosure statement.*" Third Amended Plan Scheduling Order at ¶ 1. Heeding the Court's instruction, the Retirement Systems have not objected to approval of the Disclosure Statement on the grounds that the proposed Plan is patently unconfirmable. *See In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D.

- 19 -

Ohio 1990) (stating that "disapproval of the adequacy of a disclosure statement may sometimes be appropriate where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible" and holding that the amended plan "is not so patently unconfirmable as to bar consideration of the adequacy of the Disclosure Statement.")  The Retirement Systems reserve the right to object to the Disclosure Statement on this basis, should the Court amend the Third Amended Plan Scheduling Order.

44.     The Retirement Systems reserve the right to object to any further amended versions of the Disclosure Statement and the right to request adequate time to make such objections, as well as to amend and/or supplement this Objection in the event additional information and documents are received by the Retirement Systems relative to the Disclosure Statement and Plan.

45.     The Retirement Systems hereby reserve all rights to object to the Plan on any and all grounds, including, without limitation, grounds not mentioned in this Objection.

WHEREFORE, the Retirement Systems respectfully request that this Court deny approval of the Disclosure Statement and require the Debtor to amend and supplement the Disclosure Statement as requested herein.

CLARK HILL PLC


/s/ Robert D. Gordon
Robert D. Gordon (P48627)
Shannon L. Deeby (P60242)
151 South Old Woodward Avenue
Suite 200
Birmingham, Michigan 48009
Telephone: (248) 988-5882
Facsimile: (248) 988-2502
rgordon@clarkhill.com

*Counsel to the Police and Fire Retirement*
Dated: April 7, 2014                    *System of the City of Detroit and the General*
*Retirement System of the City of Detroit*

200508810.5 14893/165083

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                          )
                                )        Chapter 9
CITY OF DETROIT, MICHIGAN,      )
                                )        Case No. 13-58346
                                )
    Debtor.                     )        Hon. Steven W. Rhodes
                                )
_____ )

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 7, 2014, the *Objection of the Detroit Retirement Systems to the Amended Disclosure Statement with Respect to Amended Plan for the Adjustment of Debts of the City of Detroit* was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                        CLARK HILL PLC

                        /s/ Robert D. Gordon
                        Robert D. Gordon (P48627)
                        151 South Old Woodward Avenue, Suite 200
                        Birmingham, Michigan 48009
                        Telephone: (248) 988-5882
                        Facsimile: (248) 988-2502
                        rgordon@clarkhill.com

Dated:  April 7, 2014           *Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*