**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re:<br><br>City of Detroit, Michigan,<br><br>      Debtor. | Chapter 9<br>Case No. 13-53846<br>Hon. Steven W. Rhodes |

**OFFICIAL COMMITTEE OF RETIREES' FIRST SET**
**OF INTERROGATORIES TO THE DEBTOR**

Pursuant to Rules 7033 and 9014 of the Federal Rules of Bankruptcy Procedure and this Court's Second Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment, the Official Committee of Retirees of the City of Detroit, Michigan, by and through counsel, hereby propounds its First Set of Interrogatories upon the Debtor City of Detroit, Michigan ("City" or "Debtor"), requesting the Debtor's responses on or before April 25, 2014.

**DEFINITIONS**

1. The term "Affordable Care Act" means the Patient Protection and Affordable Care Act, Public Law 111-148, 111th Congress, 42 U.S.C. §§ 18001, *et seq.*

2. The term "City" or "Debtor" means the City of Detroit, Michigan.

3. The term "Committee" means the Official Committee of Retirees appointed in the Bankruptcy Case.

4. The term "communication(s)" includes every manner of transmitting or receiving facts, information, opinion, or thoughts from one person to another person, whether orally, by documents, writing, electronic mail, or copy thereof, and to words transmitted by telephone, radio, or any method of voice recording.

5. The term "concerning" shall mean referring to, describing, evidencing, pertaining to, consisting of, constituting, reflecting, relating to, or in any way logically or factually connected with the mattered discussed.

6. "Debtor Reinvestment" means expenditures above 2013 levels intended to (a) improve the performance and infrastructure of the Detroit Police, Fire, EMS, and Transportation Departments, (b) address and remediate urban blight, (c) modernize information technology systems, or (d) address issues concerning Debtor's electrical grid and lighting.

7. The term "Detroit VEBA" has the meaning ascribed in the Amended Plan.

8. The term "Detroit VEBA Beneficiary" has the meaning ascribed in the Amended Plan.

9. The term "document" shall be used in the broadest sense and includes, but is not limited to, the following items, whether printed or recorded or reproduced by any other mechanical process, or written or produced by hand, and whether sent or received or neither, and further includes any and every manner of information recordation, storage, transmission, or retrieval, including, but not limited to (a) typing, handwriting, printing, or any other form of writing or marking on paper or other material; (b) tape recordings, microfilms, microfiche, and photocopies; and (c) any electronic, magnetic, or electromagnetic means of information storage and/or retrieval, including, but not limited to, electronic mail and responsive attachments, optical storage media, computer memory chips, computer tapes, hard disks, compact discs, floppy disks, and any other storage medium used in connection with electronic data processing (together with the programming instructions and all other material necessary to understand or to use such tapes, disks, or other storage materials) obtained by detection devices, and including preliminary drafts of or marginal notes appearing on any document, however denominated or described.

10. The phrase "Essential Vendor" means any vendor possessing an "Essential Vendor Claim" that the City agreed to pay, or in fact paid, in full or in part, after the Petition Date.

11. The phrase "Essential Vendor Claim" means any Claim arising prior to, and that remained unpaid as of, the Petition Date for goods or services provided to the City by an Essential Vendor.

12. The phrase "Essential Vendor Contract" means any contract between the City, or any agency thereof in effect during the Pre-Preference Period through the present, and an Essential Vendor or, in the absence of any formal contract with an Essential Vendor, documents reflecting the terms of trade with such Essential Vendor during the Pre-Preference Period through the present.

13. The terms "identity" and "to identify" mean (i) with respect to any natural person, to provide the name, address and telephone number of such person, (ii) with respect to any artificial person, the name, and the address and telephone number of the principal place of business, of such person.

14. The term "Medicare" means the federal program of health insurance for the aged and disabled provided for generally by Title XVIII of the Social Security Act, as amended, and codified at 42 U.S.C. §§ 1395 - 1395ccc.

15. The phrase "Medicare-eligible Retirees" means those persons who have retired from employment with the City and hold an OPEB Claim who are eligible to receive Medicare benefits.

16. The phrase "non-Medicare-eligible Retirees" means those persons who have retired from employment with the City and hold an OPEB Claim who are not eligible to receive Medicare benefits for any reason, including, but not limited to, their age.

17. The term "OPEB" means other post-employment benefits, including but not limited to retirement health and death benefits.

18. The phrase "OPEB Claim" has the meaning ascribed in the Amended Plan.

19. The word "person" means any natural or artificial person, including business entities and other legal entities.

20. The term "Plan" or "Amended Plan" means the Amended Plan for Adjustment of Debts of the City of Detroit, dated March 31, 2014, including all Exhibits and supplements thereto, and all modifications and amendments thereto.

21. The phrases "related to" or "relating to" shall mean directly or indirectly supporting, evidencing, describing, mentioning, referring to, contradicting, comprising or concerning.

22. The terms "you" and "your" refer to the City.

23. Unless otherwise defined herein, capitalized terms have the meaning ascribed in the Amended Plan.

**INSTRUCTIONS**

1. The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make each particular request inclusive rather than exclusive.

2. The use of the word "including" shall be construed to mean "without limitation."

3. Reference to the singular in any of these requests shall also include a reference to the plural, and reference to the plural shall include a reference to the singular.

4. In the event that the City asserts any form of objection or privilege as a ground for not answering an interrogatory or any part of an interrogatory, please set forth the legal grounds and facts upon which the objection or privilege is based. If the objection relates to only part of the interrogatory, the balance of the interrogatory should be answered in full.

5. Should you obtain any other documents or information which would supplement or modify the documents or information supplied by you in response to these interrogatories, you are directed, pursuant to Federal Rule of Civil Procedure 26(e), to give timely notice of such documents and information and to furnish the additional documents or information to the Committee without delay.

6. Unless stated otherwise, the time period applicable to the documents called for is from January 1, 2010 through the date of the document requests, subject to the City's ongoing obligation to supplement these responses under the applicable rules.

## INTERROGATORIES

1. Identify all anticipated, estimated or projected monthly expenditures of the Debtor of $5,000,000 or more to be incurred in the five-year period after confirmation of the Amended Plan, including the amount of the expenditure, its expected recurrence, and its purpose.

2. Identify each asset of Debtor the actual or estimated value of which exceeds $10 million, and the actual or estimated value of said asset.

3. Identify each Debtor Reinvestment expenditure of $10 million or more that the Debtor is expecting or planning to incur or considering as a possible expenditure in the first 10 years after confirmation of the Amended Plan, including the amount of the expenditure and its purpose.

4. Provide the basis for the determination of the aggregate allowed OPEB Claims ($3,184,900,000), including but not limited to the methodology, assumptions, and data from which the amount is derived.

5. Provide an explanation of how the amounts or benefits provided to non-Medicare-eligible Retirees will change, if at all, if the Affordable Care Act is repealed or is altered to reduce available federal health care subsidies.

6. Identify anyone who received OPEB from Debtor as of December 31, 2013 who would not be entitled to receive benefits from Detroit VEBA after Plan confirmation as a result of changes instituted by the Amended Plan or as a result of the Amended Plan and the reason why such person(s) would not be entitled to receive benefits

7. Identify the nature, amount, and basis of any setoff Debtor believes or contends will or may be applied against OPEB Claims.

8. Describe the criteria used for the selection and rejection of Essential Vendor or critical vendor status.

9. With respect to any property taxes otherwise owed to the City that have been abated, forgiven, released, or otherwise reduced for any reason, state the individuals or entities whose property taxes have been abated or reduced, state the cumulative difference between each individual/entity's ad valorem taxes and what they have paid in property taxes, and state the reason for their abatement or reduction.

10. State the total amount of: (a) delinquent property taxes and interest thereon owed to the City, and (b) delinquent income taxes and interest thereon owed to the City.

11. Identify the documents that contain a list of all tax payers that owe the City delinquent property and income taxes. If you are unable to identify such documents, identify the

tax payers who owe the City past due property and income taxes, and state the past due amount and interest owed by each such tax payer.

12. With respect to amounts owed to the City, including but not limited to debt, identify the individual(s) or entities who owe at least $10 million (including both principal and interest), state the amount owed by each such individual or entity, state the due date of each such debt, and describe the efforts made to collect the debt.

13. State the amounts owed to the City by the State of Michigan, state when it was due, and describe the efforts made to collect the debt.

14. Describe the tax ramifications to retirees of making health insurance premium payments through a VEBA trust, or reimbursing retirees for those premiums through a VEBA trust.

15. State whether you agree with the following statements, and if you disagree, the basis for your disagreement: (a) if a VEBA trust pays health insurance premiums for retirees, or reimburses them for those premiums, the retiree would not be eligible to receive subsidies under the Affordable Care Act; (b) a tax exempt VEBA trust is not permitted to pay a stipend to retirees that can be used for any purpose, including but not limited to the payment of health insurance premiums

16. Describe: (a) any alternative structures, other than a VEBA trust, considered by the City, (b) the effects, including tax and Affordable Care Act ramifications, if such alternative structures were employed instead of a VEBA trust, (c) the effects, including tax ramifications, of using a trust described in rulings under Section 115 of the Internal Revenue Code (a "Section 115 Trust") instead of a VEBA trust, and (d) state why the alternatives set forth in (a) and (c) were not used.

17. Identify all: (a) pending applications for grants or funds made by the City to any state or federal government or agency thereof, and the amounts requested, (b) requests for funds made in the last year by the City to the State of Michigan, the federal government, or any agency of either, and the amounts of those requests, (c) payments the City expects to receive in the next year from the State of Michigan, the federal government, or any agencies of either, and the amounts of those expected payments.

Dated: April 10, 2014

By: */s/ Matthew E. Wilkins*

| | |
|---|---|
| Claude Montgomery | Sam Alberts |
| Carole Neville | Dan Barnowski |
| DENTONS US LLP | DENTONS US LLP |
| 1221 Avenue of the Americas | 1301 K Street, NW, Suite 600 East Tower |
| New York, New York 10020 | Washington, DC 20005 |
| Tel: (212) 768-6700 | Tel: (202) 408-6400 |
| Fax: (212) 768-6800 | Fax: (202) 408-6399 |
| claude.montgomery@dentons.com | sam.alberts@dentons.com |
| carole.neville@dentons.com | dan.barnowski@dentons.com |

BROOKS WILKINS SHARKEY & TURCO PLLC
Matthew E. Wilkins (P56697)
Paula A. Hall (P61101)
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
Direct: (248) 971-1711
Fax: (248) 971-1801
wilkins@bwst-law.com

*Attorneys for the Official Committee of Retirees of the City of Detroit, Michigan*

## CERTIFICATE OF SERVICE

      I, Matthew E. Wilkins, hereby certify that the foregoing document was filed and served via the Court's electronic case filing and noticing system on April 10, 2014.

                        By:    /s/ Matthew E. Wilkins
                               Matthew E. Wilkins
                               Brooks Wilkins Sharkey & Turco PLLC
                               401 South Old Woodward, Suite 400
                               Birmingham, Michigan  48009
                               (248) 971-1711; Fax:  (248) 971-1801
                               wilkins@bwst-law.com