# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-----------------------------------------------------------------x
|  | : | Chapter 9 |
| In re | : | |
|  | : | Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, | : | |
|  | : | Hon. Steven W. Rhodes |
| Debtor. | : | |

-----------------------------------------------------------------x

## OFFICIAL COMMITTEE OF RETIREES' FIRST SET OF REQUESTS TO THE DEBTOR FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Federal Rules of Civil Procedure 26 and 34, made applicable by Federal Rules of Bankruptcy Procedure 7026, 7034 and 9014(c), and in connection with the Amended Plan for the Adjustment of Debts of the City of Detroit, Michigan (the "City") and the Second Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment, the Official Committee of Retirees of the City of Detroit (the "Committee") hereby serves its First Set of Requests for Production. The Committee requests the City to produce the documents described herein for inspection and copying by April 25, 2014, at the offices of Dentons US LLP, counsel for the Committee, 1301 K Street, N.W., Suite 600, East Tower, Washington, D.C. 20005.

### DEFINITIONS

1.     The term "Administrative Claim" means any Claim arising on or after the Petition Date for goods or services provided to the City.

2.     The phrase "Bankruptcy Case" means In re Detroit, Case No. 13-53846 (Bankr. E.D. Mich. 2013).

3.     The term "City" or "Debtor" means the City of Detroit, Michigan.

4.     The term "Claim" means a claim as defined in section 101(5) of the Bankruptcy Code.

5.     The term "Committee" means the Official Committee of Retirees appointed in the Bankruptcy Case.

6.     The term "communication(s)" includes every manner of transmitting or receiving facts, information, opinion, or thoughts from one person to another person, whether orally, by documents, writing, electronic mail, or copy thereof, and to words transmitted by telephone, radio, or any method of voice recording.

7.     The phrase "DIA Settlement Documents" has the meaning ascribed in the Amended Plan, and also includes all drafts, supplements, modifications and amendments thereto.

8.     The phrase "Detroit VEBA Beneficiary" has the meaning ascribed in the Amended Plan.

9.     The phrase "Disclosure Statement" or "Amended Disclosure Statement" means the Amended Disclosure Statement With Respect to the Amended Plan for the Adjustment of Debts of the City of Detroit, dated March 31, 2014, and all modifications and amendments thereto.

10.    The term "document" shall be used in the broadest sense and includes, but is not limited to, the following items, whether printed or recorded or reproduced by any other mechanical process, or written or produced by hand, and whether sent or received or neither, and further includes any and every manner of information recordation, storage, transmission, or retrieval, including, but not limited to (a) typing, handwriting, printing, or any other form of writing or marking on paper or other material; (b) tape recordings, microfilms, microfiche, and photocopies; and (c) any electronic, magnetic, or electromagnetic means of information storage

2

and/or retrieval, including, but not limited to, electronic mail and responsive attachments, optical storage media, computer memory chips, computer tapes, hard disks, compact discs, floppy disks, and any other storage medium used in connection with electronic data processing (together with the programming instructions and all other material necessary to understand or to use such tapes, disks, or other storage materials) obtained by detection devices, and including preliminary drafts of or marginal notes appearing on any document, however denominated or described.

11.     The term "DWSD" means the Detroit Water and Sewerage Department.

12.     The phrase "Effective Date" has the meaning ascribed in the Amended Plan.

13.     The phrase "Essential Vendor Claim" means any Claim arising prior to, and that remained unpaid as of, the Petition Date for goods or services provided to the City by any vendor that the City agreed to pay, or paid, in full or part for a prepetition debt.

14.     The term "GLWA" has the meaning ascribed in the Amended Plan.

15.     The term "GRS" means the General Retirement System for the City of Detroit.

16.     The terms "identity" and "to identify" mean (i) with respect to any natural person, to provide the name, address and telephone number of such person, (ii) with respect to any artificial person, the name, and the address and telephone number of the principal place of business, of such person.

17.     The term "Medicaid" means the federal program of grants to states for medical assistance programs provided for generally by Title XIX of the Social Security Act, as amended, and codified at 42 U.S.C. §§ 1396 - 1396v, and the resulting state programs for medical assistance.

18. The term "Medicare" means the federal program of health insurance for the aged and disabled provided for generally by Title XVIII of the Social Security Act, as amended, and codified at 42 U.S.C. §§ 1395 - 1395ccc.

19. The phrase "Medicaid-eligible Retirees" means those persons who have retired from employment with the City and hold an OPEB Claim who are eligible to receive Medicaid benefits.

20. The phrase "Medicare-eligible Retirees" means those persons who have retired from employment with the City and hold an OPEB Claim who are eligible to receive Medicare benefits.

21. The phrase "non-Medicare-eligible Retirees" means those persons who have retired from employment with the City and hold an OPEB Claim who are not eligible to receive Medicare benefits for any reason, including, but not limited to, their age.

22. The term "OPEB" means other post-employment benefits, including but not limited to retirement health and death benefits.

23. The phrase "OPEB Claim" has the meaning ascribed in the Amended Plan.

24. The word "person" means any natural or artificial person, including business entities and other legal entities.

25. The term "Plan" or "Amended Plan" means the Amended Plan for Adjustment of Debts of the City of Detroit, dated March 31, 2014, including all Exhibits and supplements thereto, and all modifications and amendments thereto.

4

26.     The phrase "Plan GRS Settlement Documents" has the meaning ascribed in the Amended Plan and also includes all drafts, supplements, modifications and amendments thereto.

27.     The phrase "Plan PFRS Settlement Documents" has the meaning ascribed in the Amended Plan and also includes all drafts, supplements, modifications and amendments thereto.

28.     The term "PFRS" means the Police and Fire Retirement Systems for the City of Detroit.

29.     The phrase "Prepetition Period" means the two-year period prior to the Petition Date.

30.     The phrases "related to" or "relating to" shall mean directly or indirectly supporting, evidencing, describing, mentioning, referring to, contradicting, comprising or concerning.

31.     The term "UAAL" means unfunded actuarial accrued liabilities.

32.     The term "Vendor" means any person that provided goods or services to the City at any time prior to or after the Petition Date.

33.     The phrase "Vendor Contract" means a contract between the City, or any agency thereof, and a Vendor, or, in the absence of any formal contract with a Vendor, documents reflecting the terms of trade with such Vendor.

34.     The terms "you" and "your" refer to the City.

35.     Unless otherwise defined herein, capitalized terms have the meaning ascribed in the Amended Plan and/or the Amended Disclosure Statement.

# INSTRUCTIONS

1.      The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make each particular request inclusive rather than exclusive.

2.      The use of the word "including" shall be construed to mean "without limitation."

3.      Reference to the singular in any of these requests shall also include a reference to the plural, and reference to the plural shall include a reference to the singular.

4.      These requests encompass all documents in the City's possession, custody, or control, whether or not such documents were prepared by or for the City.  Where documents in the City's possession, custody, or control are requested or inquired of, such request or inquiry includes documents in the possession, custody, or control of each of the City's employees, agents, accountants, attorneys, auditors, representatives, consultants, advisors, all other persons from which the City could obtain documents.  The duty to produce documents shall not be limited or affected by the fact that the same document is available through another source.

5.      The documents requested herein shall be produced as they are kept in the usual course of business or shall be organized and labeled according to the number of the document request.

6.      Each document is to be produced with all non-identical copies and drafts thereof in their entirety without abbreviation or redaction (other than for a claim of privilege consistent with the Instructions herein).  To the extent documents are kept or available in electronic format, such documents should be produced (i) in an intelligible format, or (ii) together with a description of the system from which they were obtained sufficient to render the records and information intelligible.  All Electronically Stored Information converted to TIFF

6

images should be retained in native format and individual ESI native format documents should be provided upon reasonable request. Electronic spreadsheets should be produced both in native format and TIFF versions.

7.     If any document cannot be produced in full, it shall be produced to the maximum extent possible and the City shall specify in writing the reasons for their inability to produce the remainder.

8.     If the City contends that no documents exist relating to all or part of a request, the City shall state this contention and respond as fully as possible to all parts of the request for which documents exist.

9.     In the event that the City asserts any form of objection or privilege as a ground for not answering a document production request or any part of a request, please set forth the legal grounds and facts upon which the objection or privilege is based. If the objection relates to only part of the document production request, the balance of the document production request should be answered in full. With respect to any document withheld on a claim of privilege, the City shall provide, at the time its responses are due hereunder, a statement setting forth as to each such document the following information:

a.     the name(s) of the sender(s) of the document;

b.     the name(s) of the author(s) of the document;

c.     the name(s) of the person(s) to whom the document or copies were sent;

d.     the date of the document;

e.     a brief description of the nature and subject matter of the document; and

f.     the nature of the privilege or the authority which is claimed to give rise to it.

7

10. If any documents requested have been destroyed, lost, mislaid, or are otherwise missing, please so state, specifying for each document or thing:

   a. the type of document;

   b. a description of the nature and contents of the document;

   c. the identity of the author;

   d. the circumstances under which it ceased to exist, was lost, mislaid, or otherwise missing;

   e. the identity of all person(s) having knowledge of the circumstances under which it ceased to exist, was lost, mislaid or otherwise missing; and

   f. the identity of all person(s) who had knowledge of the contents.

11. To the extent that any Request asks for the same document, only non-identical copies of such document need be produced.

12. Should you obtain any other documents or information which would supplement or modify the documents or information supplied by you in response to this request, you are directed, pursuant to Federal Rule of Civil Procedure 26(e), to give timely notice of such documents and information and to furnish the additional documents or information to the Committee without delay.

13. Unless stated otherwise, the time period applicable to the documents called for is from January 1, 2010 through the date of the document requests, subject to the City's ongoing obligation to supplement these responses under the applicable rules.

## DOCUMENT REQUESTS

1. All documents explaining, discussing or describing the rate of return, discount rate or other assumptions, "as of" date and method of calculation used to calculate the

8

aggregate allowance amounts for the PFRS Pension Claims, the GRS Pension Claims and the OPEB Claims, as indicated on pages 32-35 of the Amended Plan.

2.     All documents explaining, discussing or describing the reasons for the City's selection of 6.5% and 6.25% as the maximum assumed rate of investment return and discount rate for purposes of determining the assets and liabilities of the GRS and PFRS, respectively, during the period that ends on June 30, 2023, as referred to in Sections II.B.3.t.ii.B and II.B.3.u.ii.B of the Amended Plan.

3.     All documents explaining, discussing or describing the calculation, derivation and/or rationale for the contributions and/or payments to be made by or from the DIA Proceeds, the DWSB, the State Contribution Agreement, and/or the City, as referred to in Section II.B.3.t.ii.A and Section II.B.3.u.ii.A of the Amended Plan.

4.     With respect to the payments and/or contributions from the DIA Proceeds, the DWSB, the State Contribution Agreement and/or the City, all documents explaining, discussing or describing: (a) the payment schedule, including timing and amounts of each specific contribution, and/or (b) the obligations of those parties to make those payments or contributions.

5.     All documents explaining, discussing or describing the DWSD's full allocable share of the UAAL and plan assets of the GRS as of June 30, 2013, and any date subsequent thereto. For each such date, produce all documents explaining, discussing or describing: (a) the rate of return or valuation used to calculate such UAAL and GRS plan assets, (b) the DWSD's full allocable share thereof, and (c) other assumptions utilized in the calculations.

9

6.      All documents explaining, discussing or describing the assumption that "DWSD will accelerate, or prefund, the majority of its full allocable share of the GRS UAAL ..." as set forth at page 11 of the Amended Disclosure Statement with respect to the Amended Plan, including all documents: (a) discussing or analyzing the legality of such prefunding or acceleration, and/or (b) that set forth the specifics of prefunding including the timing and amount of each payment to be made.

7.      All documents explaining, discussing or describing for each of the GRS and PFRS, respectively, the amounts or estimated amounts as of June 30, 2013, or any date thereafter, of: (a) total accrued pension liabilities, (b) pension fund balances, (c) unfunded accrued pension liabilities, (d) actuarial accrued liabilities, (e) accrued assets, (f) UAAL and/or (g) the market value of assets in the GRS and PFRS.

8.      All documents explaining, discussing or describing additional payments that might be made to certain retirees "who are most in need" as referenced on page 15 of the Amended Disclosure Statement, including documents explaining, discussing or describing: (a) the criteria for determining whether a person is eligible to receive such additional payment, (b) the amounts of the State PFRS Consideration and State GRS Consideration, as applicable, that are expected to be allocable to such additional payments, (c) how the City will determine what additional payments will be paid in individual cases, (d) the timing and amounts of such payments, and (e) whether such additional payments are only available to retirees who vote to accept the Plan.

9.      The DIA Settlement Documents, as referred to in Section I.A.79 of the Amended Plan and all documents reflecting, discussing or analyzing the amount of consideration

to be paid in connection with the DIA Settlement (as such term is defined in Section I.A.79 of the Amended Plan).

10. All documents explaining, discussing or describing the effect on payments to holders of GRS Pension Claims and PFRS Pension Claims if any one or more of the DIA Settlement or the State Contribution Agreement is not consummated, including the specific reductions in claim payment amounts resulting therefrom.

11. All documents constituting, evidencing or reflecting communications between the City and any actual or potential witness concerning the actual or potential treatment of GRS Claims, PFRS Claims and/or OPEB Claims under the Amended Plan.

12. All documents showing, reflecting or analyzing the reduction in payments to holders of GRS Pension Claims and PFRS Pension Claims as a result of the elimination of the cost of living adjustment that will be implemented under the Amended Plan.

13. All consultant reports regarding City operations, remediation, restoration and redevelopment.

14. All contracts for outsourcing of City services and operations, cost of outsourcing and analysis of cost savings

15. All documents discussing or explaining the methodology by which (a) excess allocations to Annuity Savings Fund Accounts will be applied to reduce Annuity Savings Fund Accounts or Current Accrued Annual Pensions amounts, (b) GRS Adjusted Pension Amounts will be increased to take into account such reductions, as referred to in Section II.B.3.u.ii.D of the Amended Plan, and/or (c) details on a retiree-by-retiree basis on the application of the formula.

16.     All documents discussing or explaining how the amount of any GRS or PFRS Restoration Payment is to be determined, and any parameters or guidelines that the trustees of the GRS or PFRS, as applicable, may or will be required to follow in setting the size of any such Payments.

17.     All documents discussing or referring to any assumed rate of investment return or discount rate that the City plans to use, or anticipates or contemplates using, for purposes of determining the assets and liabilities of the GRS and PFRS, respectively, at any time after June 30, 2023.

18.     With respect to the ten-year financial projections included in Exhibit J to the Amended Disclosure Statement, produce all documents constituting, setting forth, discussing, or underlying: (a) all drafts of the projections, (b) the City's projections or estimates for population, assessed property values, or any other demographics underlying the revenue projections, (c) the City's projections or estimates for expenditures, including assumptions for work force, salaries, benefits, materials and supplies, utilities, purchased services, and other operating expenses, (d) the formulation or derivation of the "Contingency" line items, (e) any cash balance in the City's General Fund in the projections, (e) the City's projections or estimates for revenues, (f) projections for revenues attributable to department revenue initiatives pertaining to "Reinvestment in the City," (g) the City's projections or estimates for capital expenditures or capital investments pertaining to "Reinvestment in the City," (h) the City's projections or estimates for additional operating expenditures (apart from expenditures relating to capital expenditures or investments and blight) pertaining to "Reinvestment in the City," (i) the City's projections or estimates for capital expenditures or capital investments, other than such expenditures as pertain to "Reinvestment in the City," and (j) documents  and work papers

prepared or used in connection with Exhibit J to the Amended Disclosure Statement and all drafts of such projections.

19.    All documents and work papers prepared or used in connection with the ten-year summary of restructuring initiatives and associated projections included in Exhibit I to the Amended Disclosure Statement, including all drafts of such summary and projections, and all documents discussing analyzing or underlying such summary and projections, and all consultant reports prepared in connection with any restructuring initiative.

20.    All documents setting forth, discussing or analyzing: (a) the reinvestment initiatives referred to in Section IX of the Amended Disclosure Statement, (b) the plan for implementation for each such initiative, and the estimated or projected costs of each such initiative, and (c) how each of the reinvestment initiatives referred to in Section IX of the Amended Disclosure Statement will generate additional revenues or result in additional savings for the City, and the projected or estimated timetable for the realization of any such additional revenues or savings.

21.    All documents setting forth, discussing or analyzing the revenue adjustment and tax reforms referred to in Section X of the Amended Disclosure Statement, the plan for implementation for each such adjustment or reform and the estimated or projected increase in revenue resulting from each such adjustment or reform.

22.    All documents constituting, setting forth or discussing the financial debt capacity (including capacity to incur debt to cover pension and OPEB underfunding) and/or legal debt capacity of the City subsequent to any plan confirmation.

23.    All documents constituting, setting forth or discussing any communications with any financial institution regarding the debt capacity of the City or any exit

13

financing, DIP financing or any other post-petition financing arrangement, and all documents, including but not limited to terms sheets, provided to, or received from, any such institution in connection with any such communication.

24.     All documents setting forth, discussing or analyzing: (a) any third party funding (other than debt funding) in excess of $5 million in the aggregate under a single program or from a single source actually or potentially available to the City, including but not limited to state, federal or private grants, aid or contributions, (b) all such funding that has been applied for or received by the City, and (c) all such funding that the City plans to apply for in the future.

25.     All documents explaining, discussing or describing: (a) the "DWSD Transaction" (as defined in Section I.A.118 of the Amended Plan), (b) any actual or potential transaction involving formation of an "authority" as described in M.C.L. § 124.282, (c) the deferred capital expenditures of DWSD, including all such expenditures encompassed in the discussion in Section VII.D.6 of the Amended Disclosure Statement, and (d) projected or contemplated rates, rate structure, and/or rate increases, for DWSD after the Effective Date of the Amended Plan.

26.     All documents explaining, discussing, describing, showing or analyzing: (a) the transfer and amount of GRS pension assets associated with DWSD employees and retirees to another entity or the assumption of liabilities associated with such transfer in the event of the DWSD Transaction, and (b) the value to be paid to retirees on account of GRS Claims (as defined in the Amended Plan), including OPEB claims, in the event of a DWSD Transaction.

27.     All correspondence with counties, other municipalities or private operators showing or reflecting the value or amount of assumed liabilities, DWSD assets, deferred capital

14

expenditures, rates charged to DWSD customers, operating maintenance budget (whether individually or in the aggregate) in the DWSD Transaction.

28. All documents constituting, explaining or discussing unfiled Plan Exhibits referred to in the Table of Exhibits to the Amended Plan, including but not limited to: (a) Exhibit I.A.173 - Form of DWSD Bond Documents, (b) Exhibit I.A.175 - Form of New Existing Rate DWSD Bond Documents, (c) Exhibit I.A.177 - Form of New Existing Rate GLWA Bond Documents, (d) Exhibit I.A.180 - Form of New GLWA Bond Documents relating to Exhibits, (e) Exhibit II.B.3.u.ii.A. - Schedule of Payments and Sources of Payments for Modified GRS Pension Benefits, (f) Exhibit II.B.3.t.ii.A, (g) drafts of all such exhibits, and (h) all documents consulted or relied upon in the preparation of those exhibits.

29. All actuarial data consulted, used, or referred to in preparation of the Amended Plan and/or the exhibits thereto, or that underlie any actuarial determinations incorporated within the Amended Plan.

30. All documents explaining, discussing or describing: (a) the actual participant valuation data consulted in calculating the OPEB liabilities referenced in Section VII.B.6 of the Amended Disclosure Statement, and (b) the mortality experience studies consulted, used, or referred to in calculating those OPEB liabilities.

31. All documents discussing or describing health care insurance policies, including but not limited to Medicare Advantage plans, that Debtor anticipates the Amended Plan's proposed Detroit VEBA would provide to Detroit VEBA Beneficiaries, their dependents, and future City retirees.

32.     All documents describing, setting forth or analyzing the projected, estimated, or anticipated amount of Detroit VEBA administrative expenses, the basis and calculation of those expenses, and the intended source of funds to pay for such expenses.

33.     All documents containing information supporting Milliman's June 30, 2012 OPEB Actuarial Valuation including but not limited to:  (a) the retiree data file as of February 1, 2013; (b) the mortality experience studies used as the basis for the mortality assumption; and (c) the claims and enrollment data used in the development of the per capita claims costs.

34.     The most recent OPEB data available for active, retired, and terminated vested participants (including opt-outs).

35.     All documents explaining, discussing, describing, showing or analyzing whether: (a) the City is "not prohibited by law from taking any action necessary to carry out the Plan" pursuant to 11 U.S.C. § 943(b)(4), (b) the Amended Plan is in the "best interest of creditors" pursuant to 11 U.S.C. § 943(b)(7), (c) the Amended Plan meets, or fails to meet, the feasibility requirement of 11 U.S.C. § 943(b)(7), and/or (d) the Amended Plan meets, or fails to meet the confirmation requirements of 11 U.S.C. § 1129(b), including but not limited to the requirements that the Amended Plan "not discriminate unfairly" and that the plan be "fair and equitable."

36.     All documents explaining, discussing or analyzing the potential liability to the City or the City's creditors of any Person entitled to a Release under the Amended Plan.

37.     All documents explaining, discussing or analyzing any contribution to the City or the City's restructuring efforts by any Person entitled to a Release under the Amended Plan.

38.     All documents explaining, discussing, describing, showing or analyzing the City's formulation of the estimated recovery for each Class of Claims under the Amended Plan.

39.     All documents explaining, discussing, describing, showing or analyzing the sources of funds from which the "New B Notes" will be paid, the projected revenues from such sources and how those revenues are reflected in the Amended Plan.

40.     All documents explaining, discussing, describing, showing or analyzing State Revenue Sharing including projected revenues and all communications between the City and State regarding State Revenue Sharing.

41.     All documents explaining, discussing, describing, showing or analyzing all expense reduction efforts undertaken by the City from the Pre-Petition Period to the present.

42.     All documents explaining, discussing, describing, showing or analyzing the formulation, consideration and/or implementation of operational restructuring plans, including the costs of implementing such plans and the actual and projected resulting savings.

43.     All documents setting forth and/or listing the value of each City asset estimated to be worth more than $5 million, and all documents explaining, discussing, describing, showing or analyzing the valuation and/or potential monetization of any City assets estimated by the City to be worth more than $5 million, including but not limited to:

(a)     The Detroit Windsor Tunnel;

(b)     City-Owned Land;

(c)     Belle Isle Park;

(d)     Coleman A. Young Airport;

(e)     Joe Louis Arena; and

(f)     the DIA Collection, the DIA Assets and/or any specific work of art
at the DIA.

44.     All documents explaining, discussing, describing, showing or analyzing:
(a) the value of all or any works of art in the DIA Collection that are valued at or greater than
$500,000, (b) any restrictions on the sale of any work of art in the DIA Collection valued at or
greater than $500,000, and (c) the insured value of the DIA Collection or any work of art
contained therein.

45.     All documents constituting, explaining or discussing the Asset Transfer
between the City and the DIA, including but not limited to the documents pursuant to which the
Asset Transfer was effectuated, including the bill of sale.

46.     All lists, inventories and other documents identifying, setting forth, and/or
itemizing each of the works of art in the DIA Collection and the value of each work.

47.     All documents explaining, discussing or describing actual and anticipated
Administrative Claims.

48.     All documents explaining, discussing or describing the City's credit rating
between January 1, 2005 to the present, including the effect of the Amended Plan on the City's
credit rating.

49.     Documents sufficient to show: (a) the Identity of each vendor that the City
has determined to be an essential vendor; (b) the total payments made to each essential vendor on
account of Essential Vendor Claims and Administrative Claims; (c) the terms of trade with all
essential vendors from the beginning of the Prepetition Period to the present; (d) all efforts by the
City to obtain trade concessions or more advantageous terms from essential vendors; (e) the
bidding for Vendor Contracts during the period from the beginning of the Prepetition Period to
the present; (f) all modifications of Vendor Contract terms during the period from the beginning

18

of the Prepetition Period to the present and all resulting actual or expected cost savings; (g) the assumption or rejection of any Vendor Contracts by the City, and the reasons for each such assumption or rejection; and (h) whether any amounts saved as a result of bidding on, or renegotiation or modification of Vendor Contracts were utilized or reflected in the reflected in the ten-year financial projections included in Exhibit J to the Amended Disclosure Statement.

50. Documents showing the City's criteria or guidelines for determining essential vendors and all communications concerning the creation of such criteria and/or guidelines.

51. All communications with vendors about their selection or non-selection as an essential vendor and/or the process for being selected an essential vendor.

52. All reports, reviews or analyses, by Ernst & Young, or any other Person, concerning the modification of terms of Vendor Contracts, during the period from the beginning of the Prepetition Period to the present, and any actual or expected cost savings resulting therefrom.

53. All documents explaining, discussing, describing, showing or analyzing: (a) every contract and/or lease that is to be assumed or rejected under the Amended Plan, and/or (b) all contracts that the City has outsourced or may outsource in the future.

54. All documents that the City will or may submit as evidence at the Confirmation Hearing, as such phrase term is defined in Section I.A.48 of the Amended Plan.

55. All CVs and resumes of all witnesses the City will or may call at the Confirmation Hearing.

56. All reports for any expert that the City will or may call at the Confirmation Hearing, and all documents used or relied upon by those experts.

19

57.     All documents constituting, discussing, or explaining each settlement described in the Amended Disclosure Statement and/or Amended Plan and how such settlement will benefit of the City's creditors and residents, including without limitation analyses and projections of potential recoveries by or against the City, and the City's estimate of its legal fees, in the absence of such settlements.

58.     All documents explaining, discussing, describing, showing or analyzing the "interfund payables" referenced in section VII.B.7 of the Amended Disclosure Statement, including (i) all loans, balances and deferrals, (ii) the interfund transfers, (iii) the conditions, terms, dates and purposes of the loans or deferrals, and (iv) any methods or policies governing or applying to the City's repayment of the loaned or deferred funds to their original fund.

59.     All documents and communications that reflect, support, or refute the validity of the claims held by the "Downtown Development Authority Claims" as defined in the Amended Plan.

60.     All documents explaining, discussing, describing, showing or analyzing any arrangements between the City or any other party and the Detroit Land Bank Authority and/or the Michigan Land Bank concerning the City's initiatives for addressing blight, removing vacant structures and encouraging the beneficial use of City-owned land, as outlined in sections VII.A.5 and IX.A.1 of the Amended Disclosure Statement.

61.     All documents related to the Parking Bonds, the Parking Bond Documents and the Parking Bonds Claims, as defined and described in the Amended Disclosure Statement and the Amended Plan, and all documents explaining, discussing, describing, showing or analyzing the potential monetization of the assets constituting the Automobile Parking Fund, as

described in section VII.A.4 of the Amended Disclosure Statement, including all communications between the City and Desman Associates.

62.     Documents listing, describing or evidencing: (a) all property tax abatements provided by the City since January 1, 2013, (b) past due income taxes owed by residents of the City, (c) past due income taxes owed to the City by non-residents who are employed in the City, (d) past due debts of over $10 million owed to the City, and (e) past due debt owed to the City by the State of Michigan.

63.     All documents that refer to, discuss or analyze: (a) any agreement by the City to allow a claim by the Swap Counterparties as part of the Amended Plan, or the reasons for such decision or agreement, and/or treat the Swap Counterparties as a separate Class as part of the Amended Plan, or the reasons for such decision or agreement, (b) the amount of the Allowed Claim proposed for the Swap Counterparties under the Amended Plan, or the calculation of or rationale for such amount, and (c) the consideration to the Swap Counterparties for their agreement to vote in favor of the Amended Plan.

Dated:  April 10, 2014                                         Respectfully submitted,


/s/ Matthew E. Wilkins

| | | |
|---|---|---|
| Matthew E. Wilkins (P56697) | Sam J. Alberts | By: /s/ Claude D. Montgomery |
| Paula A. Hall (P61101) | DENTONS US LLP | Claude D. Montgomery (P29212) |
| BROOKS WILKINS SHARKEY | 1301 K. Street, NW | Carole Neville |
| & TURCO PLLC | Suite 600, East Tower | DENTONS US LLP |
| 401 South Old Woodward, Suite 400 | Washington, DC 2005-3364 | 1221 Avenue of the Americas |
| Birmingham, Michigan  48009 | Tel:     (202) 408-6400 | New York, New York 10020 |
| Direct: (248) 971-1711 | Fax:    (202) 408-6399 | Tel:     (212) 768-6700 |
| Cell: (248) 882-8496 | sam.alberts@dentons.com | Fax:    (212) 768-6800 |
| Fax: (248) 971-1801 | | claude.montgomery@dentons.com |
| wilkins@bwst-law.com | | carole.neville@dentons.com |
| hall@bwst-law.com | | |

*Counsel for the Official Committee of Retirees*

21

**CERTIFICATE OF SERVICE**

I, Matthew E. Wilkins, hereby certify that the foregoing document was filed and served via the Court's electronic case filing and noticing system on April 10, 2014.

By:_____/s/ Matthew E. Wilkins_____
Matthew E. Wilkins
Brooks Wilkins Sharkey & Turco PLLC
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
(248) 971-1711; Fax: (248) 971-1801
wilkins@bwst-law.com