IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

## JOINT MOTION TO AMEND THE SOLICITATION PROCEDURES ORDER

Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance Inc. ("Assured"),[1] a creditor and party in interest in the above-captioned chapter 9 case of the City of Detroit, Michigan (the "City"), and Berkshire Hathaway Assurance Corporation ("BHAC" and, together with Assured, the "Movants")[2] hereby file this joint motion (the "Motion to Amend") to amend this Court's Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures

---

[1] Assured is a monoline insurer that provides financial guarantees to the U.S. public finance market. Assured and its affiliates insure or reinsure approximately $2.24 billion in gross aggregate principal amount of outstanding bonds issued by the City, including water supply system bonds, sewage disposal system bonds, and unlimited tax general obligation bonds.

[2] BHAC is a secondary insurer of the payment when due of regularly scheduled principal and interest payments for three series of DWSD Sewer Bonds and two series of DWSD Water Bonds issued by the City, with an aggregate principal total of approximately $760 million.

Related to Confirmation of the Plan of Adjustment [Docket No. 2984] (the "Solicitation Procedures Order"),[3] and respectfully state as follows:

## BACKGROUND

1.      On February 28, 2014, the City filed the Motion of the City of Detroit for Entry of an Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice procedures Related to Confirmation of the Plan of Adjustment [Docket No. 2789] (the "Solicitation Procedures Motion") to approve certain procedures for the solicitation and tabulation of votes to accept or reject the Plan of Adjustment of Debts of the City of Detroit (February 21, 2014) [Docket No. 2708] (the "Initial Plan").

2.      The Court held a hearing on March 5, 2014 to consider the relief sought in the Solicitation Procedures Motion and objections thereto. This hearing was adjourned to March 11, 2014 to permit the City and certain objecting parties to reach consensual resolution of certain objections. The City and certain objecting parties, including the Movants, engaged in discussions and negotiations regarding

---

[3]   Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Amended Disclosure Statement With Respect to Amended Plan for the Adjustment of Debts of the City of Detroit [Docket No. 3382] (the "Amended Disclosure Statement") or the Amended Plan for the Adjustment of Debts of the City of Detroit (March 31, 2014) [Docket No. 3380] (the "Amended Plan").

the relief requested in the Solicitation Procedures Motion, and reached agreement to resolve certain objections.

3.      On March 10, 2014, the City filed the Notice of Amended Proposed Order (I) Establishing Procedures for Solicitation and Tabulation of Vote to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment [Docket No. 2957].

4.      At the hearing held on March 11, 2014, the Court approved the Solicitation Procedures Order as amended and the Solicitation Procedures Order was subsequently entered on the docket. The Solicitation Procedures Order provides, among other things, that the form of the ballots "will be determined in connection with the Disclosure Statement Hearing . . . ." *See* Solicitation Procedures Order, at ¶ 7.

5.      On March 31, 2014, the City filed the Amended Plan. The Initial Plan contained a "deathtrap," which provided for disparate treatment among holders of claims in Classes 1A-1D that vote to accept the Plan versus holders in classes that do not vote to accept the Plan. Specifically the option to elect to receive New Existing Rate Water/Sewer Bonds (the "DWSD Election"), which will retain the existing interest rate as opposed to receiving a new, impaired interest rate will be available only to holders in such classes that vote to accept the Plan (the "Voting Deathtrap"). The Amended Plan retained the Voting Deathtrap and added an

additional clause providing that if holders or insurers of securities giving rise to claims in Classes 1A-1D elect to make the DWSD Election (and thus avoid having their claims impaired by the lower interest rate), such holders will irrevocably waive any and all rights to object to the Amended Plan on <u>any</u> grounds, and that any such objection may be disregarded by this Court solely on the basis of such election (the "<u>Plan Objection Deathtrap</u>").

6.     On April 2, 2014, this Court entered the Third Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [Docket No. 3632] (the "<u>Third Amended Plan Procedures Order</u>").  The Third Amended Plan Procedures Order provides that objections to the Amended Plan must be filed by May 1, 2014 for parties other than individual bondholders and individual retirees, who must file objections to the Amended Plan by June 30, 2014.  The Third Amended Plan Procedures Order further provides that the deadline for plan voting is June 30, 2014 and that the hearing on confirmation of the Amended Plan will begin on July 16, 2014.  In accordance with the Third Amended Plan Procedures Order, parties-in-interest will object to the Amended Plan and submit their ballots by June 30, 2014, although the City may and is likely to file amended plans of adjustment after the ballots have been submitted.  Therefore, parties-in-interest will be required to make a decision whether or not to forgo objecting to the Amended Plan with the prospect that the

City will subsequently alter the Amended Plan, which could have an adverse effect on how their claim is treated.

7.     Also on April 2, 2014, the City filed the Motion of the City of Detroit for Approval of Amended Ballots [Docket No. 3463] (the "Amended Ballot Motion"). The Amended Ballot Motion sought approval of new ballots for insurers of securities giving rise to claims in Classes 1A-1D, which included the Plan Objection Deathtrap. Additionally, the Amended Ballot Motion sought approval of amended ballots for the holders of securities giving rise to claims in Classes 1A-1D, which included the Plan Objection Deathtrap. In a separate *ex parte* motion [Docket No. 3465] the City requested an expedited hearing on the Amended Ballot Motion scheduled for April 14, 2014, in conjunction with the hearing on the Amended Disclosure Statement.

8.     On April 4, 2014 and without a hearing, this Court entered the Order Granting Motion of the City of Detroit for Approval of Amended Ballots [Docket No. 3796] (the "Amended Ballot Order"). The Amended Ballot Order approved amended ballots containing the Plan Objection Deathtrap, materially altering both the procedures provided in the Solicitation Procedures Order and the Third Amended Plan Procedures Order without providing parties an opportunity to object and be heard by this Court and creating uncertainty as to whether any objections to

5

the Amended Plan filed by parties that elect to receive the DWSD Election will be heard by this Court.

## JURISDICTION

9.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

10.     The Movants seek to maintain the status quo set forth in this Court's Solicitation Procedures Order and Third Amended Plan Procedures Order, neither of which limits the right of a creditor to object to the Amended Plan based on any election made by such creditor.

11.     To preserve this status quo and remove the coercion implicit in the Plan Objection Deathtrap, the Movants seek entry of an order, substantially in the form attached hereto as Exhibit 1, amending the Court's Solicitation Procedures Order and granting such other and further relief as may be just and proper.

## BASIS FOR RELIEF

12.     According to Paragraph 21 of the Solicitation Procedures Order:

Upon the occurrence of any material modification, amendment or alteration to or of the proposed Plan, or the filing by the City of any alternative plan of adjustment under chapter 9 of the Bankruptcy Code, any creditor or party-in-interest in this case shall be entitled to file a motion with this Court requesting any appropriate relief on an expedited basis, including, without limitation, entry of an order

6

> modifying, vacating or amending: (a) this Order; (b) any of the
> Solicitation and Confirmation Procedures, as modified and approved
> by this Order; and/or (c) the Tabulation Rules.

Solicitation Procedures Order, at ¶ 21. This paragraph was added to the Solicitations Procedures Order in the course of the negotiations between the City and parties-in-interest, including the Movants, during the adjournment of the hearing on the Solicitation Procedures Motion. The intent of the paragraph is to protect parties-in-interest from changes to the Initial Plan or the filing of an amended plan of adjustment, such as the Amended Plan, that would unilaterally alter the solicitation and voting procedures embodied in the Solicitation Procedures Order.

13. When the City filed the Amended Plan, it amended the Voting Deathtrap to link the right of a party-in-interest to object to the Amended Plan with the content of its ballot, i.e. the party-in-interest's election to receive the DWSD Election, by adding the Plan Objection Deathtrap. Because New Existing Rate DWSD Bonds will always have a higher interest rate than the "cramdown" interest rate provided in the Amended Plan, the only purpose of the DWSD Election is to coerce holders in Classes 1A-1D to forfeit their right to object to the Amended Plan.

14. The Third Amended Plan Procedures Order, entered after the City filed the Amended Plan, contains no mention of the Plan Objection Deathtrap or

any limitation on the right of a party-in-interest to object to the Amended Plan as a consequence of the content of the ballot submitted by that party-in-interest by the June 30, 2014 voting deadline.

15. The City, however, filed the Amended Ballot Motion, an over 250 page document that included in the ballots that the City sought to approve the language of the Plan Objection Deathtrap. While parties-in-interest, were in the process of working with the City to address issues related to the ballots (including the Plan Objection Deathtrap) that the City sought to approve in the Amended Ballot Motion, this Court entered the Amended Ballot Order approving the ballots which contained the Plan Objection Deathtrap. Thus, the ballots that purport to limit the rights of the parties-in-interest to object to the Amended Plan have been approved without providing the parties-in-interest any opportunity to contest this limitation of rights.

16. Consequently, the City has unilaterally changed the status quo embodied in both the Solicitations Procedures Order and the Third Amended Plan Procedures Order. Now, the content of the ballot submitted by a party-in-interest (through the election to avoid interest rate impairment) may preclude such party-in-interest's right to object to the Amended Plan. Furthermore, a party-in-interest must now submit their ballot and choose whether to waive the right to object to the Amended Plan before a final plan of adjustment is filed by the City.

17. Without exception, the Bankruptcy Code provides that "a party in interest may object to confirmation of a plan." 11 U.S.C. § 1128(b). Indeed, in the Chapter 9 context, bankruptcy courts have made clear that the "preservation of a creditors' right to object to confirmation of a plan . . . is vital to the credibility of the bankruptcy system." *See In re Mount Carbon Metropolitan District*, No. 97-20215, 1999 WL 34995477, at *7 (Bankr. D. Colo. July 20, 1999). In *In re Mount Carbon*, the debtor asserted that certain creditors did not have standing to object to confirmation because of certain provisions of the debtor's plan of adjustment. *Id.* at *2. The Court resoundingly ruled that the creditors did have standing to object to confirmation because the right to object to confirmation is vital to the credibility of the bankruptcy system. *Id.* at *7. Here, the City seeks to interfere with creditors' rights to object to confirmation through economic coercion exerted through the solicitation and balloting process and should be prohibited from doing so because as the bankruptcy court stated in *In re Mount Carbon*, "[t]o allow a debtor to short circuit such fundamental objections [to confirmation] by structuring plans which neutralize troublesome or well-funded creditors would foster great mischief. It would upset the carefully calibrated balance between debtors and creditors in the reorganization process and jeopardize its credibility." *See id.*

18. Furthermore, deathtraps including the Plan Objection Deathtrap, are frequently rejected by courts. Courts have rejected proposed plans that have

included deathtraps, which would provide disparate treatment for parties-in-interest dependent on whether the parties-in-interest vote to accept the plan. *See, e.g., In re Mcorp Fin., Inc.*, 137 B.R. 219 (Bankr. S.D Tex. 1992); *In re Allegheny Intern., Inc.*, 118 B.R. 282 (Bankr. W.D. Pa. 1990). For example, Courts have held that a deathtrap that affected a party-in-interest's right to vote effectively was "egregious in its 'carrot and stick' approach." *See In re Mcorp Fin., Inc.*, 137 B.R. at 236.

19.     Here, the Plan Objection Deathtrap does not only seek to affect voting on a plan but, more insidiously, it seeks to coerce parties-in-interest into accepting impairments to admittedly secured claims while abdicating all objections to any plan, including objections based on lack of feasibility and good faith, unfair discrimination and best interests of creditors, among others, based solely on favorable economic treatment of <u>one</u> aspect of the holders' claims – the interest rate. As the Plan Objection Deathtrap is currently drafted, a party holding multiple claims (for example, claims arising under different CUSIPS, or even different series of DWSD Bonds) that makes the DWSD Election as to even a single one of its claims would be forced to waive *all* of its objections to the Plan on any basis, including objections arising under entirely different claims to which the DWSD Election was not made. Thus the Plan Objection Deathtrap is far more troubling and offensive to the rights of parties-in-interest than the voting deathtraps.

20.    While the validity of the Plan Objection Deathtrap is questionable at best, the City unquestionably does *not* have the right to preemptively impose it on creditors without the opportunity for a full and fair hearing on the issue.  Indeed, for precisely that reason, this court previously ruled that the form of the ballots "will be determined in connection with the Disclosure Statement Hearing . . . ."  *See* Solicitation Procedures Order, at ¶ 7.  Approval of the ballots other than in connection with the Disclosure Statement Hearing, where all parties are afforded the opportunity to appear and be heard, violates the prior Solicitation Procedures Order.  That the City went further, and amended the ballots so as to deprive creditors of critical substantive rights, rather than making mere cosmetic changes, is deeply troubling.

21.    Pursuant to the Third Amended Plan Procedures Order parties that choose to object to the Plan must, among other things, (i) serve written discovery requests by April 11, 2014; (ii) file objections to the Plan by May 1, 2014 for parties other than individual bondholders and June 30, 2014 for individual bondholders; (iii) participate in depositions; (iv) identify and retain expert witnesses; (v) serve copies of expert reports by May 30, 2014; and (vi) file pretrial briefs by July 11, 2014.  Each of these actions will occur, and the associated expenses will be incurred, prior to the hearing on confirmation of the Plan scheduled to begin on July 16, 2014.  Therefore, without the relief requested

herein, parties-in-interest will be required to either potentially forgo the current interest rates on their secured bonds for an inferior alternative or exert significant efforts and incur significant costs to prosecute their objections to the Amended Plan, without knowing whether or not their objection will be ignored.

22.     Parties-in-interest should not have to wait until the confirmation hearing to find out whether the Plan Objection Deathtrap will be enforced by this Court.  The City's actions have unilaterally introduced confusion and uncertainty as to whether objections to the Amended Plan should or will be heard by this Court.  The mere presence of the Plan Objection Deathtrap on the ballots and in the Amended Disclosure Statement, whether or not ultimately enforced, will have a coercive effect on parties-in-interest who may believe they must choose between avoiding interest rate impairment or objecting to the Amended Plan.   It is fundamentally unfair and unreasonable for parties-in-interest to be put in this bind and it is completely unnecessary and avoidable.  The City has no justification for the Plan Objection Deathtrap other than as a coercive measure during the solicitation and balloting process.

23.     The City's actions, therefore, trigger the rights of parties-in-interest provided in Paragraph 21 of the Solicitation Procedures Order to seek to amend the Solicitation Procedures Order.  Here, the Movants invoke this right and request that the Court amend the Solicitation Procedures Order to allow parties-in-interest

to object to the Amended Plan regardless of the content of the ballots they may submit. The Movants request that the Solicitation Procedures Order be amended to include the following language,

> Notwithstanding anything to the contrary in the Order Granting Motion of the City of Detroit for Approval of Amended Ballots [Docket No. 3796] (the "Amended Ballot Order"), no Ballot shall include any provision purporting to limit the rights of a party identified in Paragraph 5 to object to the Plan on any grounds, including as a result or consequence of any election made in the Ballot. The City is hereby directed to remove any such language from any Ballot that was approved by the Amended Ballot Order.

Such an amendment will preserve the status quo embodied in the Solicitation Procedures Order and the Third Amended Plan Procedures Order, remove the coercion implicit in the Plan Objection Deathtrap, and eliminate any confusion or uncertainty as to whether an objection to the Amended Plan should or will be heard by the Court.

### STATEMENT OF CONCURRENCE

24. Counsel for Assured requested concurrence in the Motion to Amend from counsel for the City on April 10, 2014. Counsel for the City declined to concur in the Motion to Amend.


WHEREFORE, the Movants respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit 1 and granting such other and further relief as may be just and proper.

13

Dated:  New York, New York
        April 10, 2014                     **CHADBOURNE & PARKE LLP**

                                           By:   /s/  Lawrence A. Larose
                                           Lawrence A. Larose
                                           Samuel S. Kohn
                                           Eric Daucher
                                           30 Rockefeller Plaza
                                           New York, NY 10012
                                           Telephone:  (212) 408-5100
                                           llarose@chadbourne.com
                                           skohn@chadbourne.com
                                           edaucher@chadbourne.com

                                           *Attorneys for Assured Guaranty*
                                           *Municipal Corp.*

                                           and

                                           **DEBEVOISE & PLIMPTON LLP**

                                           By:   /s/  My Chi To
                                           M. Natasha Labovitz
                                           My Chi To
                                           919 Third Avenue
                                           New York, New York 10022
                                           Telephone:  (212) 909-6000
                                           Facsimile:  (212) 909-6836
                                           nlabovitz@debevoise.com
                                           mcto@debevoise.com

                                           *Attorneys for Berkshire Hathaway*
                                           *Assurance Corporation*

## SUMMARY OF EXHIBITS

The following exhibits are attached to this Motion, labeled in accordance with Local Rule 9014-1(b).

| | |
|---|---|
| Exhibit 1 | Proposed Order |
| Exhibit 2 | Notice |
| Exhibit 3 | None (Brief Not Required) |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | None (No Affidavits Filed Specific to this Motion) |
| Exhibit 6 | None (No Documentary Exhibits) |

**EXHIBIT 1**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

## AMENDED ORDER (I) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT PLAN OF ADJUSTMENT AND (II) APPROVING NOTICE PROCEDURES RELATED TO CONFIRMATION OF THE PLAN OF ADJUSTMENT

This matter **initially** came before the Court on the *Motion of the City of Detroit for Entry of an Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment* (Docket No. 2789) (the "Motion").[1]  The Court reviewed the Motion and all objections thereto, heard the statements of counsel regarding the relief requested in the Motion at a hearing before the Court on March 5, 2014 (the "Initial Hearing") and at a further hearing held on March 11, 2014 (together with the Initial Hearing, the "Hearing"), the rules for tabulation of ballots (the "Amended Tabulation Rules," attached hereto as Exhibit 1), and the form of notice of voting dispute resolution procedures

---

[1]   Capitalized terms not otherwise defined herein shall have the meaning given to them in the Motion.

(the "Notice of Voting Dispute Resolution Procedures," attached hereto as Exhibit 2). **The Court entered the *Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment* (Docket No. 2984) (the "Solicitation Procedures Order") on March 11, 2014.**

**This matter again came before the Court on the *Joint Motion to Amend the Solicitation Procedures Order* (Docket No. ___) (the "Motion to Amend"). The Court reviewed the Motion to Amend and all objections thereto, heard the statements of counsel regarding the relief requested in the Motion at a hearing before the Court on April __, 2014. The Court has determined, after due deliberation, that (a) it has jurisdiction over this matter, (b) this is a core proceeding, (c) notice of the Motion to Amend and the Hearing was adequate under the circumstances and (d) the relief requested in the Motion to Amend is fair, equitable and in the best interests of the City, its creditors and other parties in interest.[2]**

Accordingly, it is hereby ORDERED that:

1.      The Motion to Amend is granted to the extent set forth in this Order.

---

[2]  To the extent any finding of fact in this order constitutes a conclusion of law, it is adopted as such. To the extent any conclusion of law in this order constitutes a finding of fact, it is adopted as such.

2.     The Solicitation Procedures and Confirmation Procedures, as modified and approved by this Order, provide a fair and equitable noticing and voting process and satisfy the requirements of title 11 of the United States Code (the "Bankruptcy Code"), including sections 103(f), 105(a), 901(a), 1125, 1126 and 1128 of the Bankruptcy Code; the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), including Bankruptcy Rules 2002, 3017, 3018, 3020, 9007 and 9008; the Local Rules of the Bankruptcy Court for the Eastern District of Michigan (the "Local Rules"), including Local Rules 3017-1 and 3018-1; and the requirements of due process.

3.     The record date for purposes of determining which creditors are entitled to vote on the Plan (the "Voting Record Date") shall be April 14, 2014.

4.     With respect to any claim that is transferred prior to the Voting Record Date, the transferee will be entitled to vote on the Plan on account of such transferred claim only if both of the following conditions are satisfied prior to the Voting Record Date: (a) the transferee files a notice of the transfer pursuant to Bankruptcy Rule 3001(e); and (b) (i) the objection deadline with respect to such transfer has passed and no party has objected to the transfer, (ii) if there are any objections to the transfer, such objections have been resolved or (iii) the transferor has signed a sworn statement confirming the validity of the transfer.

5. The City, through Kurtzman Carson Consultants LLC (the "Balloting Agent") shall send a Solicitation Package, no later than April 28, 2014, to (a) any party that is entitled to vote on the Plan and that has filed a timely proof of claim (or such party's transferee, if such transferee is entitled to vote on the Plan in accordance with paragraph 4 of this order), which claim has not been disallowed, waived or withdrawn prior to the date of the mailing of the Solicitation Packages; (b) any party that is entitled to vote on the Plan and that the City listed as holding a claim in the Second Amended List of Creditors and Claims (the "List of Creditors"), attached as Exhibit A to the *Notice of Filing of Second Amended List of Creditors and Claims, Pursuant to Sections 924 and 925 of the Bankruptcy Code* (Docket No. 1059), which claim is not listed as a contingent, unliquidated or disputed claim, and which claim has not been disallowed, waived or withdrawn prior to the date of the mailing of the Solicitation Packages; (c) all Nominees of Beneficial Holders of claims in Classes 1A, 1B, 1C, 1D, 7, 8 or 9 under the Plan; (d) all insurers of securities giving rise to claims in Classes 1A, 1B, 1C, 1D, 1E, 7, 8 or 9 under the Plan (collectively, the "Insurers"); (e) any known participant in the General Retirement System of the City of Detroit or the Police and Fire Retirement System of the City of Detroit and all related known holders of OPEB claims, regardless of whether such person is identified on the List of Creditors or has filed a proof of claim; (f) all known counterparties to unexpired leases and executory

contracts as of the City's petition date, July 18, 2013; and (g) the United States Trustee for the Eastern District of Michigan.

6. The Solicitation Package shall be required to include the following information and documents:

a. *a copy of the Confirmation Hearing Notice;*

b. *a CD-ROM which includes the Plan, the Disclosure Statement and all exhibits thereto that have been filed in this case prior to the date of the mailing of the Solicitation Package;*

c. *the appropriate form of Ballot for voting on the Plan;*

d. *a Ballot return envelope;*

e. *a copy of the Amended Tabulation Rules;*

f. *a copy of the Notice of Voting Dispute Resolution Procedures; and*

g. *a cover letter (i) describing the contents of the Solicitation Package, (ii) describing the contents of the CD-ROM and instructions for using the CD-ROM and (iii) providing information about how to obtain, at no charge, hard copies of any materials provided on the CD-ROM.*

7. The ballots, the form of which will be determined in connection with the Disclosure Statement Hearing (collectively, the "Ballots"), will be distributed as part of the Solicitation Package as provided below.

a. With respect to Classes 1A, 1B, 1C, 1D, 7, 8 and 9 (and any subclasses thereof under the Plan), the City shall be required to obtain a listing of all Nominees as of the Voting Record Date. The DTC shall be required to provide the City or the Balloting Agent with a list of all Nominees within three business days of entry of the order approving the Disclosure Statement. On or

before April 28, 2014, the Balloting Agent shall send Solicitation Packages to the Nominees with instructions to (i) forward Solicitation Packages to the applicable Beneficial Holders, (ii) collect ballots from the Beneficial Holders (the "Beneficial Ballots"), (iii) prepare a Master Ballot based on the contents of the Beneficial Ballots and (iv) return the Master Ballot to the Balloting Agent by the Voting Deadline. Any Beneficial Holder that holds Debt Instruments in its own name, as opposed to through a Nominee, will submit a Ballot directly to the Balloting Agent and will not vote through the Master Ballot process.

b. Each Insurer shall receive a Ballot from the Balloting Agent that is required to be returned directly to the Balloting Agent by the Voting Deadline.

c. Each Beneficial Holder and each Insurer of securities giving rise to claims in (i) Classes 1A, 1B, 1C or 1D (or any subclass thereof) will receive separate ballots for each CUSIP of securities giving rise to claims in Classes or subclasses in which it holds or insures claims and (ii) Classes 1E or 1F will receive separate Ballots for each subclass of claims in which it holds or insures claims.

d. Holders of claims in Classes 5, 12, 13 and 14, and each of the Beneficial Holders of securities giving rise to Claims in Classes 1E and 1F shall receive a Ballot from the Balloting Agent that is required to be returned directly to the Balloting Agent by the Voting Deadline.

e. Each holder of a Class 13 Other Unsecured Claim is permitted to elect to reduce its claim to $25,000 in the aggregate and obtain treatment of such reduced claim as a Class 14 Convenience Claim (the "Convenience Class Election"). The City is hereby authorized to use the Class 13 Ballots as the mechanism for Class 13 creditors to make the Convenience Class Election.

f. Each Beneficial Holder or each Insurer of securities giving rise to a Class 9 COP Claim is permitted to elect to participate in the

Plan COP Settlement (the "COP Settlement Election"). The City is hereby authorized to use the Class 9 Ballots as the mechanism for each Class 9 Beneficial Holder and Insurer to make the COP Settlement Election.

g.  Each Beneficial Holder or each Insurer of securities giving rise to a claim in Classes 1A, 1B, 1C or 1D (or any subclass thereof) is permitted to elect the form of payment they are entitled to receive under the Plan (the "Distribution Elections"). The City is hereby authorized to use the Ballots for Classes 1A, 1B, 1C and 1D (and any subclass thereof) for each Beneficial Holder and each Insurer of these classes as the mechanism for each such Beneficial Holder and Insurer to make the Distribution Elections. The Distribution Elections will be made for each individual CUSIP of securities giving rise to claims in such classes which each Beneficial Holder or each Insurer holds or insures.

h.  The Convenience Class Elections, COP Settlement Elections and Distribution Elections (collectively, the "Elections") made on the Ballots will be deemed irrevocable and legally binding obligations of the electing creditors, each Beneficial Holder, or each Insurer, as applicable, upon the execution of the Ballots and confirmation of the Plan.

i.  A Class 1A, 1B, 1C, 1D or 13 Ballot that (i) neither accepts nor declines its respective Election, (ii) elects both to accept and decline the Election or (iii) otherwise attempts to partially accept and partially decline the Election will be deemed to decline the Election. For the avoidance of doubt, each Beneficial Holder and each Insurer of securities giving rise to claims in (a) Classes 1A, 1B, 1C or 1D (or any subclass thereof) may vote differently and make different elections for each respective CUSIP of securities giving rise to claims in such classes or subclasses which they hold or insure, provided that all votes cast and elections made by a voting party with respect to claims arising in connection with any particular CUSIP must be the same for such CUSIP, and (b) Classes 1E or 1F may vote differently for each respective subclass in which they hold or insure claims.

j.   A Class 9 Ballot that (i) neither accepts nor declines the COP Settlement Election or (ii) elects both to accept and decline the COP Settlement Election with respect to all Class 9 claims voted thereon will be deemed to decline the COP Settlement Election.

8.   All Ballots, including Master Ballots, must be properly executed, completed and delivered to the Balloting Agent either by (a) mail in the return envelope provided with each Ballot, (b) overnight courier or (c) personal delivery so that, in each case, all Ballots are received by the Balloting Agent no later than 5:00 p.m., Eastern Time, on June 30, 2014 (the "Voting Deadline").

9.   The following voting dispute resolution procedures are approved:

a.   If a party (including, but not limited to, an Insurer) is not identified in the Plan or in the Motion as having the right to vote on the Plan, and if that party believes it has a right to vote on the Plan, then, by May 13, 2014, the party (the "Claiming Party") shall file and serve on the ECF noticing list a "Notice of Asserted Right to Vote a Claim" and a brief in support of the rights asserted therein, which brief shall identify (i) the claim(s) (and Classes or subclasses, as applicable) with respect to which the Claiming Party asserts voting rights, (ii) whether the Claiming Party possesses the right to make an Election with respect to such claim(s), (iii) the legal and factual support for asserting such voting and/or Election rights, and (iv) the proper treatment of the Claiming Party's vote(s) for purposes of section 1126(c) of the Bankruptcy Code.

b.   The Claiming Party's Notice of Asserted Right to Vote a Claim and supporting brief shall be made available on the Balloting Agent's website.

c.   Any holder affected by a Claiming Party's Notice of Asserted Right to Vote a Claim (any such holder, an "Affected Holder"), U.S. Bank National Association, in its capacity as trustee for

those certain bonds issued by the City for the Detroit Water and Sewer Department (the "Water and Sewer Bond Trustee"), those certain holders of Detroit water and sewer revenue bonds represented by Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. and Kramer Levin Naftalis & Frankel LLP (the "Ad Hoc Committee of Water and Sewer Bondholders"), Wilmington Trust, National Association, as Successor Trustee for the Detroit Retirement Systems Funding Trust 2005 and the Detroit Retirement Systems Funding Trust 2006 (the "COPs Trustee"), or any representative thereof shall each be permitted to file and serve on the ECF noticing list a brief in response to any Notice of Asserted Right to Vote by June 12, 2014.

d. Any Claiming Party that files Notice of Asserted Right to Vote a Claim shall be permitted to file and serve any reply brief in support of such notice on the ECF noticing list by June 20, 2014.

e. A hearing will be held on June 26, 2014 at which the Court shall hear and determine any disputes arising in connection with a Notice of Asserted Right to Vote a Claim.

f. Any determination by the Court as to who has the right to vote, who has the right to make Elections and how the votes will be treated for purposes of section 1126(c) of the Bankruptcy Code for a particular CUSIP of securities giving rise to claims in Classes 1A, 1B, 1C or 1D or for a particular class or subclass of securities giving rise to claims in Classes 1E or 9, as applicable, shall be applicable to all Affected Holders and the Claiming Party with respect to that particular CUSIP of securities, class or subclass, as applicable.

g. Any Claiming Party that does not assert any alleged voting rights pursuant to the procedures set forth in this paragraph 9 shall be barred from asserting such rights at any later date.

h. If neither (i) an Affected Holder nor (ii) (A) the Water and Sewer Bond Trustee, (B) the COPs Trustee or (C) the Ad Hoc Committee of Water and Sewer Bondholders (as applicable) contests a Notice of Asserted Right to Vote a Claim, the

Claiming Party will be granted the relief sought in its Notice of Asserted Right to Vote a Claim.

i. If the Voting Deadline established in this Court's Second Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment (Docket No. 2937) is altered, the City, the Insurers, any Claiming Parties, the Water and Sewer Bond Trustee, the Ad Hoc Committee of Water and Sewer Bondholders and the COPs Trustee may, by mutual agreement, seek a further order of the Court that correspondingly alters the deadlines established in this paragraph 9.

10. The form of the Notice of Non-Voting Status attached to the Motion as Exhibit 6B is hereby approved. The City is authorized to distribute to holders of claims in Classes 2A, 2B, 2C, 2D, 2E, 2D, 3, 4, 6 and 15, which classes are not entitled to vote under the terms of the Plan, the Notice of Non-Voting Status in lieu of Solicitation Packages.

11. **Notwithstanding anything to the contrary in the Order Granting Motion of the City of Detroit for Approval of Amended Ballots [Docket No. 3796] (the "Amended Ballot Order"), no Ballot shall include any provision purporting to limit the rights of a party identified in Paragraph 5 to object to the Plan on any grounds, including as a result or consequence of any election made in the Ballot. The City is hereby directed to remove any such language from any Ballot that was approved by the Amended Ballot Order.**

12. The Amended Tabulation Rules establish a fair and equitable voting process and are hereby approved.

13.     Solely for purposes of voting to accept or reject the Plan, and not for the purpose of allowance of, or distribution on account of, any claim and without prejudice to the rights of the City in any other context, each claim within a Class of claims entitled to vote on the Plan, with the exception of claims in Classes 10 and 11, shall be temporarily allowed in accordance with the Amended Tabulation Rules. Claims in Classes 10 and 11 shall be allowed as set forth in supplemental tabulation rules, to be approved by the Court at a future date.

14.     If any claimant seeks different treatment of a claim for voting purposes, other than in accordance with the Amended Tabulation Rules, such claimant shall be required to file a motion pursuant to Bankruptcy Rule 3018(a) for an order temporarily allowing such claim in a different amount or classification for purposes of voting to accept or reject the Plan (a "Rule 3018 Motion") and serve such motion on the City's counsel by the later of (a) May 1, 2014 or (b) 10 days after the date of service of a notice of objection, if any, to the applicable claim. Any Ballot submitted by a claimant that files a Rule 3018 Motion shall be counted solely in accordance with the Amended Tabulation Rules until the underlying claim is temporarily allowed by order of this Court for voting purposes in a different amount or classification, after notice and a hearing.

15. The requirement that a party file a Rule 3018 Motion does not apply to any Beneficial Holder on whose behalf a proof of claim was filed by such Beneficial Holder's trustee.

16. In order to ensure that Solicitation Packages can be prepared and served by April 28, 2014, DTC is directed, within three business days of entry of any order approving the Disclosure Statement, to provide the City with the list of the names and addresses of all Nominees of securities giving rise to claims in Classes 1A, 1B, 1C, 1D, 7, 8, or 9 as of the Voting Record Date.

17. The City or the Balloting Agent shall file a summary of the results of the tabulation of all Ballots and Master Ballots (the "Ballot Tabulation Summary") on or before July 11, 2014 at 5:00 p.m. Eastern Time.

18. The Confirmation Hearing Notice substantially in the form attached to the Motion as Exhibit 6A is approved. The City shall include a copy of the Confirmation Hearing Notice with the Solicitation Packages.

19. The City shall publish a copy of the Confirmation Hearing Notice on or before May 9, 2014 in *The Detroit Free Press* and the national editions of *USA Today* and *The Wall Street Journal*. Such notice by publication is hereby deemed to provide sufficient notice, consistent with the requirements of due process, of the approval of the Disclosure Statement, the Voting Deadline, the time, date and place

of the Confirmation Hearing, and the injunctions provided under the Plan, to persons who do not otherwise receive notice by mail pursuant to this order.

20.     The Solicitation Procedures and Confirmation Procedures, as modified and approved by this Order, will provide sufficient notice to all interested parties of the Voting Record Date, the Voting Deadline, the Elections available to certain classes, the Tabulation Rules and the Confirmation Hearing.

21.     The City is authorized to make non-substantive or immaterial changes to the Plan (in accordance with the terms thereof and section 942 of the Bankruptcy Code), the Amended Tabulation Rules, the Confirmation Hearing Notice, the Notice of Non-Voting Status, the Solicitation Packages and all related documents, without further order of the Court, including, but not limited to (a) ministerial changes to correct typographical and grammatical errors, (b) conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages prior to the mailing thereof and (c) altering the format of such documents to facilitate their efficient distribution.

22.     Upon the occurrence of any material modification, amendment or alteration to or of the proposed Plan, or the filing by the City of any alternative plan of adjustment under chapter 9 of the Bankruptcy Code, any creditor or party-in-interest in this case shall be entitled to file a motion with this Court requesting any appropriate relief on an expedited basis, including, without limitation, entry of

an order modifying, vacating or amending: (a) this Order; (b) any of the Solicitation and Confirmation Procedures, as modified and approved by this Order; and/or (c) the Tabulation Rules.

23.     Notwithstanding any provision in this Order or the Tabulation Rules, the rights of all creditors and parties-in-interest in this case to make any and all objections to the City's proposed Disclosure Statement and proposed Plan, including, but not limited to, any objections to any of the City's proposed classifications of claims, are fully preserved.

24.     The terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

25.     The City and its counsel are authorized, in their discretion, to take or refrain from taking any action necessary or appropriate to effectuate the terms of and relief granted by the Order in accordance with the Motion and without further order of the Court.

26.     The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

**Signed on April __, 2014**

_____
**Steven Rhodes**
**United States Bankruptcy Judge**

**EXHIBIT 2**

**Notice**

Form B20A(Official Form 20A)

**UNITED STATES BANKRUPTCY COURT**
**Eastern District of Michigan**

**In re**

                                            **Chapter: 9**

**CITY OF DETROIT, MICHIGAN,**

                                            **Case No.: 13-53846**

                 **Debtor.**                         **Judge:  Hon. Steven W. Rhodes**

**<u>NOTICE OF MOTION TO AMEND THE SOLICITATION PROCEDURES ORDER</u>**

       Assured Guaranty Municipal Corp. and Berkshire Hathaway Assurance Corporation have filed papers with the Court seeking to amend the Court's Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment [Docket No. 2984].

       **<u>Your rights may be affected.</u>  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

       If you do not want the court to grant the relief sought in this motion, or if you want the court to consider your views on the motion, you or your attorney must, by a date to be established by the court:

1.             File with the court a written response or an answer, explaining your position at:[1]

**United States Bankruptcy Court**
211 W. Fort Street, Suite 2100
Detroit, Michigan 48226

       If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.  All attorneys are required to file pleadings electronically.

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e)

You must also mail a copy to:

Lawrence A. Larose
Samuel S. Kohn
Eric Daucher
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY 10112

and

M. Natasha Labovitz
My Chi To
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022

2.      If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.**

Dated: April 10, 2014
New York, New York

**CHADBOURNE & PARKE LLP**

By:   /s/  Lawrence A. Larose
Lawrence A. Larose
Samuel S. Kohn
Eric Daucher
30 Rockefeller Plaza
New York, NY 10012
Telephone: (212) 408-5100
llarose@chadbourne.com
skohn@chadbourne.com
edaucher@chadbourne.com

*Attorneys for Assured Guaranty*
*Municipal Corp.*

and

**DEBEVOISE & PLIMPTON LLP**

By:   /s/  My Chi To
M. Natasha Labovitz
My Chi To
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
nlabovitz@debevoise.com
mcto@debevoise.com

*Attorneys for Berkshire Hathaway*
*Assurance Corporation*

## EXHIBIT 4

### Certificate of Service

I hereby certify that on this 10th day of April 2014, I caused the *Joint Motion to Amend the Solicitation Procedures Order* to be filed with the Clerk of the Court using the CM/ECF system, which provides electronic notification of such filing to all counsel of record.

Dated:  April 10, 2014
        New York, New York

**CHADBOURNE & PARKE LLP**

By:  _/s/  Lawrence A. Larose_____
Lawrence A. Larose
Samuel S. Kohn
Eric Daucher
30 Rockefeller Plaza
New York, NY 10012
Telephone:  (212) 408-5100
llarose@chadbourne.com
skohn@chadbourne.com
edaucher@chadbourne.com

*Attorneys for Assured Guaranty*
*Municipal Corp.*