# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____
                                        )
In re:                                  )
                                        )          Case No. 13-53846
CITY OF DETROIT, MICHIGAN               )
                                        )          Chapter 9
                        Debtor          )
                                        )          Hon. Steven W. Rhodes
_____ )

## COUNTY OF MACOMB, MICHIGAN'S FIRST REQUEST
## FOR PRODUCTION OF DOCUMENTS TO DEBTOR

Pursuant to Federal Rules of Civil Procedure 26 and 34, made applicable to this matter by Federal Rules of Bankruptcy Procedure 7026 and 7034, County of Macomb, Michigan, by and through its County Agency, the Macomb County Public Works Commissioner ("Macomb"), a creditor and party in interest in the above-captioned chapter 9 bankruptcy case (the "Bankruptcy Proceeding"), hereby serves the following First Request for Production of Documents (the "Document Requests") to the debtor, City of Detroit, Michigan ("Debtor", "City", "Detroit" or "You").  Macomb serves the Document Requests in connection with the hearing on confirmation of the Amended Plan for the Adjustment of Debts of the City of Detroit [Docket No. 3380] or any subsequently-filed plan of adjustment (the "Plan").  Macomb hereby demands the Debtors provide responses and produce documents in response to these Document Requests by delivering all such responsive documents to the office of Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036, counsel for Macomb, by April 25, 2014.

Each of the following Document Requests is continuing in nature pursuant to Federal Rule of Civil Procedure 26(e).  Accordingly, You shall supplement any production of documents

1

made in response to any of the following Document Requests if the Debtors, or anyone acting on the Debtors' behalf, obtain or become aware of any additional information or document that is responsive to any request for production herein, and over which the Debtors or anyone acting on the Debtors' behalf have possession, custody, or control.

## DEFINITIONS

1.      The term "Amended Disclosure Statement" refers to the Amended Disclosure Statement with respect to Plan for the Adjustment of Debts of the City of Detroit [Docket No. 2709].

2.      The term "OMI" refers to the Oakland-Macomb Interceptor Drain Drainage District.

3.      The term "Macomb-OMI Agreement" refers to that certain Wastewater Disposal Services Contract, dated as of September 30, 2009 between Macomb and OMI.

4.      The "OMI-Detroit Agreement" refers to that certain Wastewater Disposal Services Contract, dated October 22, 2009, between OMI and the Debtor by its Board of Water Commissioners.

5.      The term "MCWDD" refers to the Macomb County Wastewater Disposal District.

6.      The term "DWSD" refers to the Detroit Water and Sewerage Department.

7.      The term "MIDDD" refers to the Macomb Interceptor Drain Drainage District.

8.      The term "the Counties" refers to Macomb County, Oakland County, and Wayne County.

9.      The term "Petition Date" refers to July 18, 2013, when Detroit filed for a voluntary petition for relief under Chapter 9 of the Bankruptcy Code.

10. The "Emergency Manager" refers to Kevyn D. Orr and the Office of the Emergency Manager.

11. The term "DWSD Options" refers to the three options discussed in the Amended Disclosure Statement concerning the Debtor's plan for the services provided by DWSD.

12. The terms "Regional Authority" or "GLWA" or "Great Lakes Water Authority" all refer to the entity proposed to be created to take over the water and sewer services from the DWSD, one of three DWSD Options.

13. The term "Exhibit L" refers to Exhibit L to the Amended Disclosure Statement.

14. The term "RFI" refers to the Request for Information distributed by the Debtor to potential private operators of the DWSD's water and sewer systems on or about March 25, 2014.

15. The term "Systems" refers to the Sewage Disposal System of the City or the City's Water Supply System, or both.

16. The term "Fiscal Year" refers to the twelve-month period of time ending June 30 of the year stated. For example, "Fiscal Year 2014," refers to the period of time from July 1, 2013 to June 30, 2014.

17. The term "GRS" refers to the General Retirement System for the City.

18. The term "Gabriel Roeder" shall mean Gabriel Roeder Smith & Company.

19. The terms "all," "each" and "any" shall be construed to mean all, each, every, and any.

20. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3

21.     The term "<u>Bankruptcy Code</u>" means Title 11 of the United States Code entitled *"Bankruptcy,"* as now and hereafter in effect, or any successor statute.

22.     The term "<u>document</u>" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), made applicable to this proceeding by Rule 7034 of the Federal Rules of Bankruptcy Procedure, including, but not limited to, any kind of written, audio, or graphic matter, however produced or reproduced, whether or not sent or received, including, but not limited to, writings, communications, contracts, reports, presentations, pro formas, analyses, spreadsheets, correspondence, memoranda, e-mail, recordings, telephone records, notes, charts, graphs, drawings, photographs, voice mail, audio and video recordings, data compilations, computer databases, records, and any information generated or stored in electronic form.  In producing any document in response to any of the Document Requests, You shall produce (i) all drafts of any responsive documents, and (ii) all marked, annotated, or non-identical copies of any responsive documents.

23.     The term "<u>communication</u>" is a subset of "<u>document</u>" and means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and, with respect to oral communications, includes any document evidencing the date, participants, subject matter, and content of any such oral communication, including, but not limited to, transcripts, minutes, notes, audio, video, and electronic recordings, telephone records, and calendar entries.

24.     The term "<u>person</u>" means a natural person or any corporation, partnership, association, joint venture, firm, or other business enterprise or legal entity, and includes both the singular and the plural.

25.     The terms "<u>related to</u>", "<u>relate to</u>", "<u>relating to</u>", "<u>referred to</u>", "<u>refer to</u>", and "<u>referring to</u>" mean having any relationship or connection to, concerning, being connected to,

4

commenting on, responding to, containing, constituting, showing, memorializing, describing, analyzing, reflecting, pertaining to, compromising, identifying, discussing, evidencing, or otherwise establishing a reasonable, logical, or causal connection.

26.     The term "You" or "Your" means the Debtor, City of Detroit, Michigan, the DWSD, and their advisors, affiliates, agents, attorneys, accountants, consultants, employees, experts, investment bankers, representatives, including the Emergency Manager, Miller Buckfire, Conway MacKenzie, Inc. and other persons acting, or who have acted, on behalf of the foregoing entities or individuals referenced in this definition.

27.     All capitalized terms that are not defined herein shall have the meaning ascribed to them in the Amended Disclosure Statement.

## INSTRUCTIONS

1.     These Document Requests are continuing requests pursuant to Federal Rule of Civil Procedure 26(e).  You shall promptly produce any and all responsive documents that are received, discovered, or created after any of Your responses to these Document Requests, or that are otherwise within Your possession, custody, or control.

2.     These Document Requests apply to all documents in Your possession, custody, or control, and include documents, wherever located, within the possession, custody, or control of Your advisors, affiliates, agents, attorneys, accountants, consultants, employees, experts, investment bankers, representatives, subsidiaries, including the Emergency Manager, Miller Buckfire, Conway MacKenzie, Inc., and other persons acting or who have acted on behalf of the foregoing entities or individuals referenced in this instruction.

3.     If You object to any part of any of the Document Requests, You shall produce all documents that are responsive to the portions of any of the Document Requests to which the objection does not apply.

5

4.     If any documents are withheld from production on the alleged grounds of privilege or immunity (whether under common law, statute, or otherwise), You shall comply with Federal Rule of Civil Procedure 26(b)(5), and You shall identify each document withheld from production in a written privilege log that provides:  (a) the identity of each person who prepared and/or signed the document; (b) the identity of each person designated as an addressee; (c) the identity of each person who received any copy of the document; (d) the date of the document; (e) the subject matter of the document; (f) the type or nature of the document; and (g) the basis for withholding the document.

5.     All documents should be produced as TIFF images with text files, with metadata for custodian, and with accompanying load files.

6.     If a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed.  When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration.  Any redaction must be clearly visible on the redacted documents.

7.     In the event that any document called for by these Document Requests has been destroyed or discarded, that document is to be identified in writing by stating:  (a) any address or any addressee; (b) any indicated or blind copies; (c) the document's date, subject matter, number of pages, and attachments or appendices; (d) all persons to whom the document was distributed, shown, or explained; (e) its date of destruction or discard, manner of destruction or discard, and

reason for destruction or discard; (f) the persons who authorized and carried out such destruction or discard; and (g) whether any copies of the document presently exist and, if so, the name of the custodian of each copy.

8.      Any copy of a document that varies in any way whatsoever from the original or from any other copy of the document, whether by reason of any handwritten mark or other notation or any omission, shall constitute a separate document and must be produced, whether or not the original of such a document is within Your possession, custody, or control.  A request for any document shall be deemed to include a request for all drafts thereof, and all revisions and modifications thereto, including any red-lined versions or document comparisons, in addition to the document itself.  Each document is to be produced in its entirety, without abbreviation or expurgation.

9.      In producing documents, all documents that are physically attached to each other when located for production shall be left so attached.  Documents that are segregated or separated from other documents, whether by inclusion of binders, files, subfiles, or by use of dividers, tabs, or any other method, shall be left so segregated or separated when produced in response to these Document Requests.  Documents shall be produced in the order in which they were maintained and in the file where found.  If no document exists that is responsive to a particular request, You shall so state in writing.

**DOCUMENT REQUESTS**

**REQUEST NO. 1:**

All documents relating to any analyses regarding the legality of each of the DWSD

Options under federal, state, or local law.

**REQUEST NO. 2:**

All documents relating to any analyses conducted in connection with whether the DWSD

Options require electoral approval.

**REQUEST NO. 3:**

All documents relating to whether DWSD is a not-for-profit entity, including but not

limited to whether DWSD is prohibited from making a profit.

**REQUEST NO. 4:**

All documents relating to DWSD's historical financial results for Fiscal Years 2009-2013

and year-to-date 2014, including but not limited to:

    i.        DWSD's audited financial statements;

    ii.       pro forma and actual balance sheets;

    iii.     historical statements of cash flows;

    iv.      notes to the historical financial statements;

    v.        auditor's reports on the historical financial statements;

    vi.      documents showing historical volumetric use, revenue and rate tariff by customer

            rate class and service/geographic area;

    vii.     all disbursements made from the gross revenues of each System for

            administration, operation, maintenance, and capital expenditures;

8

viii.    any disbursements from the gross revenues of each System which were not used for the administration, operation, maintenance, or capital expenditures of such System;

ix.    to the extent not provided in response to the requests above, documents showing Fiscal Years 2013 and year-to-date 2014 financial results related to pension expense; operating expenses by category (i.e. power, chemicals, etc.); disbursements from DWSD to other City Departments, to the City's General Fund, or any retirement plan for City employees; costs for employee healthcare, insurance and other benefits; costs for pension and other postemployment benefits; employee headcount; bad debt expense by customer rate class and/or wholesale customer; and

x.    documents relating to cash flows to and from DWSD and any other City Department or the City's General Fund.

**REQUEST NO. 5:**

All documents showing financial projections prepared by DWSD management, the City, the Emergency Manager, or any of their respective financial advisors or agents for any of Fiscal Years 2014 through 2023, including but not limited projections prepared on or about December 2013, including but not limited to:

i.    projected statements of income and cash flow and back-up documentation showing the supporting bases for such projections;

ii.    notes to the projected financial statements;

iii.    projected volumetric use, revenue and rate tariff by customer rate class and service/geographic area and back-up documentation showing the supporting bases for such projections;

9

iv.  documents showing any other projected sources of revenue and back-up information sufficient to show the bases for such projections;

v.  any disbursements for administration, operation, maintenance, and capital expenditures sufficient to show the bases and assumptions underlying such items on an individual basis;

vi.  any disbursements from the gross revenues of each System which will not be used for the operation, maintenance, or capital expenditures of such System;

vii.  to the extent not provided in response to the requests above, documents sufficient to show projections related to pension expense, labor expense by category; operating expense by category (i.e. power, chemicals, etc.); disbursements from DWSD to other City Departments, to the City's General Fund, or to any retirement plan for City employees; costs for employee healthcare, insurance and other benefits; costs for pension and other postemployment benefits; employee headcount; bad debt expense by customer rate class and/or wholesale customer; and refinancing and future financing; and

viii.  documents relating to projected cash flows to and from DWSD and any other City Department or the City's General Fund.

## REQUEST NO. 6:

All documents showing financial projections relating to DWSD, if it remains a department of the City, prepared by DWSD Management, the City, the Emergency Manager, or any of their respective financial advisors or agents for any of Fiscal Years 2014 through 2023, including but not limited to:

i.  projected statements of income and cash flow and back-up documentation showing the supporting bases for such projections;

10

ii.    notes to the projected financial statements;

iii.    projected volumetric use, revenue and rate tariff by customer rate class and service/geographic area and back-up documentation showing the supporting bases for such projections;

iv.    documents showing any other projected sources of revenue and back-up information sufficient to show the bases for such projections;

v.    any disbursements for administration, operation, maintenance, and capital expenditures sufficient to show the bases and assumptions underlying such items on an individual basis;

vi.    any disbursements from the gross revenues of each System which will not be used for the operation, maintenance, or capital expenditures of such System;

vii.    to the extent not provided in response to the requests above, documents sufficient to show projections related to pension expense, labor expense by category; operating expense by category (i.e. power, chemicals, etc.); disbursements from DWSD to other City Departments, to the City's General Fund, or to any retirement plan for City employees; costs for employee healthcare, insurance and other benefits; costs for pension and other postemployment benefits; employee headcount; bad debt expense by customer rate class and/or wholesale customer; and refinancing and future financing; and

viii.    documents relating to projected cash flows to and from DWSD and any other City Department or the City's General Fund.

**REQUEST NO. 7:**

All documents showing financial projections relating to the Regional Authority prepared by DWSD Management, the City, the Emergency Manager, or any of their respective financial advisors or agents for any of Fiscal Years 2014 through 2023, including but not limited to:

i.    projected statements of income and cash flow and back-up documentation showing the supporting bases for such projections;

ii.   notes to the projected financial statements;

iii.  projected volumetric use, revenue and rate tariff by customer rate class and service/geographic area and back-up documentation showing the supporting bases for such projections;

iv.   documents showing any other projected sources of revenue and back-up information sufficient to show the bases for such projections;

v.    any disbursements for administration, operation, maintenance, and capital expenditures sufficient to show the bases and assumptions underlying such items on an individual basis;

vi.   any disbursements from the gross revenues of each System which will not be used for the operation, maintenance, or capital expenditures of such System;

vii.  to the extent not provided in response to the requests above, documents sufficient to show projections related to pension expense, labor expense by category; operating expense by category (i.e. power, chemicals, etc.); disbursements from DWSD to other City Departments, to the City's General Fund, or to any retirement plan for City employees; costs for employee healthcare, insurance and other benefits; costs for pension and other postemployment benefits; employee

12

headcount; bad debt expense by customer rate class and/or wholesale customer; and refinancing and future financing; and

viii.    documents relating to projected cash flows to and from DWSD and any other City Department or the City's General Fund.

**REQUEST NO. 8:**

All documents reflecting or relating to any financial analyses relating to DWSD for future years, including but not limited to any financial projections and the bases for such projections.

**REQUEST NO. 9:**

All documents relating to the financial projections regarding the DWSD Options presented in Exhibit L, including but not limited to any assumptions employed in such financial projections.

**REQUEST NO. 10:**

All documents reflecting or relating to the Miller Buckfire Analysis referenced in Exhibit L that resulted in a 4.53% interest rate estimate for future borrowings.

**REQUEST NO. 11:**

All documents relating to any meetings concerning the DWSD Options, including but not limited to meetings between or among any or all of the Debtor and its agents or advisors on the one hand, and the Emergency Manager, and its agents or advisors on the other hand.

**REQUEST NO. 12:**

All documents relating to the RFIs, including but not limited to:

i.    any responses received from potential private operators of DWSD;

ii.    any documents relating to any meetings, negotiations, discussions or communications concerning the RFI and responses thereto;

iii.    any documents sent to, received by, or made available for inspection by potential

private operators of DWSD participating in the RFI; and

iv.    any confidential memoranda provided to the potential private operators of

DWSD.

**REQUEST NO. 13:**

All documents sent to, received by, or made available for inspection by parties

participating in the Request for Proposal for Underwriting Services, issued by the Michigan

Department of Treasury and the Michigan Finance Authority (on behalf of the City of Detroit

and the Detroit Water and Sewerage Department), dated as of March 12, 2014.

**REQUEST NO. 14:**

All documents relating to the amount of DWSD's pension liabilities, including all

documents reflecting information that would justify $675 million (or any other amount) of

projected pension payments over the next 10 years.

**REQUEST NO. 15:**

All documents evidencing the calculation and allocation of all pension, other

postemployment benefits, and any Certificates of Participation-related payments assessed against

the systems historically and that are projected through any projection period under the Plan.

**REQUEST NO. 16:**

All documents relating to the treatment of DWSD's pension liabilities under each of the

DWSD options, including but not limited to (i) any documents reflecting such treatment and (ii)

any analyses conducted relating to such treatment.

**REQUEST NO. 17:**

All documents evidencing all communications between or among the City, DWSD, the

Emergency Manager, union or other labor representatives for employees of DWSD, and their

14

respective financial advisors and agents and any other parties regarding the DWSD Options or potential "monetization" of the Systems.

**REQUEST NO. 18:**

All documents reflecting any severance pay policies for DWSD employees.

**REQUEST NO. 19:**

All documents that reflect any update to June 30, 2013 (or beyond) of the actuarial valuations performed by Gabriel Roeder for the GRS as of June 30, 2012, based on or using the methods, assumptions, and procedures used by Gabriel Roeder.

**REQUEST NO. 20:**

All documents that reflect the calculation of the GRS's OPEB Claims (as defined in the Plan) as reflected in the Amended Disclosure Statement and the Plan, including, without limitation, the underlying assumptions and methods used in the calculations.

**REQUEST NO. 21:**

All documents that reflect GRS pension charges to DWSD in DWSD's unaudited financial statements, including but not limited to documents that reflect any adjustment to GRS pension charges to DWSD.

**REQUEST NO. 22:**

All documents that reflect or relate to the City's projected required annual contributions to the GRS or PFRS for the period January 1, 2012 through December 31, 2034, including but not limited to:

  i.  all documents that reflect the actuarial assumptions used by GRS and PFRS prior to the Petition Date; and

15

13-53846-tjt  Doc 3990  Filed 04/11/14  Entered 04/11/14 14:57:39  Page 15 of 25

ii.      all documents that reflect the actuarial assumptions used by the City in formulating the Plan of Adjustment and taking into account the restructuring of the pension obligations proposed in the Plan.

**REQUEST NO. 23:**

All documents that reflect or relate to the manner in which the amount of the PFRS and GRS pension claims reflected in the Plan and Amended Disclosure Statement were calculated, including any documents that reflect any methods, assumptions or bases used in making the calculation.

**REQUEST NO. 24:**

All documents that reflect or relate to the PFRS Hybrid Pension Formula and the GRS Hybrid Pension Formula, including but not limited to all documents that relate or refer to the manner in which the formulas were devised.

**REQUEST NO. 25:**

All documents that reflect or relate to the manner in which the amount of the OPEB claims (both PFRS and GRS) reflected in the Plan and Amended Disclosure Statement were calculated, including but not limited to all documents that reflect or relate to the methods, assumptions or other bases used in making the calculations.

**REQUEST NO. 26:**

All documents that reflect or relate to the treatment of pensions of DWSD employees and retirees as compared to all other members of the GRS, including but not limited to all documents that describe the manner in which the pensions of DWSD employees and retirees are treated as compared to all other members of the GRS.

16

**REQUEST NO. 27:**

All documents that reflect or relate to the amount of the interfund balances with DWSD water and sewer fund, including but not limited to all documents that reflect or relate to the process that the City used to determine whether, how, and in what amounts transfers will be made between these funds and any methods or policies governing or applying to the City's prepayment of transferred funds to their original fund, and how these interfund balances will be treated in the Plan.

**REQUEST NO. 28:**

All documents that reflect or relate to the basis for treating unsecured claims, including GRS and PFRS Claims, better than the UTGO Claims and LTGO Claims, including but not limited to any documents that reflect or relate to why that disparate treatment does not constitute unfair discrimination.

**REQUEST NO. 29:**

All documents evidencing amounts held in the Operation and Maintenance Funds and the Constructions Funds for the System as of December 31, 2013.

**REQUEST NO. 30:**

All documents evidencing any accounts of the Systems not controlled by the Trustee and the balances in such accounts, reflecting the cash in and out of the accounts from Fiscal Year 2013 and year-to-date Fiscal Year 2014.

**REQUEST NO. 31:**

All documents supporting financial capability analysis to establish DWSD hardship exemptions provided to or received from the Environmental Protection Agency and/or the Michigan Department of Environmental Quality.

17

**REQUEST NO. 32:**

All documents relating to capital improvements that are currently needed or may in the future be needed by DWSD, including but not limited to documents reflecting the cost of needed capital improvements.

**REQUEST NO. 33:**

All documents relating to any financial analyses conducted in connection with the creation and performance of a Regional Authority, including but not limited to any documents reflecting financial projections for the Regional Authority.

**REQUEST NO. 34:**

All documents relating to or supporting the Debtor's contention that the base lease payment from the Regional Authority to the Debtor should be set at $47 million per year, including but not limited to any financial due diligence or analyses conducted in connection with the $47 million per year number.

**REQUEST NO. 35:**

All documents that reflect the proposed governance structure of the Regional Authority.

**REQUEST NO. 36:**

All documents that reflect whether DWSD or the Regional Authority, under each of the DWSD Options, will be a "stand-alone" enterprise, such that all administrative functions such as human resources, information technologies, and legal services, will be performed exclusively within the entity performing DWSD's functions.

**REQUEST NO. 37:**

The current organizational chart for DWSD and any proposed changes to occur on or after the Effective Date (as defined in the Plan).

18

**REQUEST NO. 38:**

All documents relating to the OMI-Detroit Agreement, including but not limited to any documents regarding the rejection, assumption, or assignment of the OMI-Detroit Agreement.

**REQUEST NO. 39:**

All documents relating to any analyses conducted regarding the OMI-Detroit Agreement with respect to each of the DWSD Options.

**REQUEST NO. 40:**

All documents identifying any potential counterparties to an assignment of the OMI-Detroit Agreement.

**REQUEST NO. 41:**

All documents relating to any meetings, negotiations, discussions or communications with any potential counterparties to an assignment of the OMI-Detroit Agreement.

**REQUEST NO. 42:**

All documents containing any opinion, assessment, report or analysis of the City's or DWSD's ability to reject or unilaterally modify, on a non-consensual basis, any of the agreements with the Counties.

**REQUEST NO. 43:**

All documents relating to or reflecting the City's ability to provide adequate assurance of future performance under the OMI-Detroit Agreement.

**REQUEST NO. 44:**

All documents relating to procedures used or to be used to determine the System rates charged for water and/or sewage services under each of the DWSD Options.

19

**REQUEST NO. 45:**

All documents prepared on or after January 1, 2013 reflecting any study, assessment, estimate or opinion regarding future System rates, capital expenditures, volumes by customer rate class and service/geographic location, and/or operating expenses.

**REQUEST NO. 46:**

All documents reflecting or relating to work done by DWSD's rate consultant in conjunction with DWSD's Root Cause Committee's Final Report, dated as of March 13, 2013, and referenced on page 4 of that report.

**REQUEST NO. 47:**

All documents that refer to the prospect of any wholesale customers or groups of customers discontinuing use of the Systems after January 1, 2014.

**REQUEST NO. 48:**

Documents evincing the number of "retail" customer accounts (costumers other than wholesale) for Fiscal Years 2009 through 2013 and projections for Fiscal Years 2014 through 2023.

**REQUEST NO. 49:**

All documents relating to water and sewer service rates, including but not limited to

i.      documents reflecting support for the statement in the Amended Disclosure Statement that rates will increase by 4% per year until 2023;

ii.     documents providing a basis for whether a 4% rate increase per year until 2023 complies with the terms of the OMI-Detroit Agreement;

iii.    documents reflecting or relating to whether, if the DWSD remains a department of the City, the DWSD will maintain Fiscal Year 2015 rate setting protocols for a

20

minimum of five years, subject to certain changes necessary to stabilize water and

sewer revenues; and

iv.    documents reflecting or relating to any proposed or planned rate stability program

for City residents and whether such a program may provide for affordability of

retail rates to be taken into account in the development of wholesale rates across

the system.

**REQUEST NO. 50:**

All documents relating to the effect of each of the DWSD Options on water and sewer

bond ratings, including but not limited to documents sufficient to demonstrate whether the

impairment of existing Sewer Bonds will increase the cost of debt in the future and if and how

any increased cost will be passed on to ratepayers.

**REQUEST NO. 51:**

All reports, whether generated internally or by outside consultants, regarding the

appropriate interest rate and comparables utilized in creating the Interest Rate Reset Chart,

attached as Exhibit I.A.159 to the City's proposed plan.

The following exhibits (or current versions thereof) to the Plan:

i.     Form of New DWSD Bond Documents;

ii.    Form of New Existing Rate DWSD Bond Documents;

iii.   Form of New Existing Rate GLWA Bond Documents;

iv.    Form of New GLWA Bond Documents; and

v.     Form of New GLWA Revolving Bond Documents.

**REQUEST NO. 52:**

All documents relating to the procurement of municipal bond insurance for any new bonds to be issued under the Plan.

**REQUEST NO. 53:**

All documents relating to the procurement of public ratings for any new bonds to be issued under the Plan.

**REQUEST NO. 54:**

All documents reviewed, identified, or relied upon in answering any interrogatories sent by holders of bonds issued by the DWSD or municipal bond insurers insuring bonds issued by the DWSD.

**REQUEST NO. 55:**

All documents relating to any analysis in connection with how each of the DWSD Options would meet the feasibility requirement of section 943(b)(7) of the Bankruptcy Code.

**REQUEST NO. 56:**

All documents relating to any potential sale or lease of assets of the System between a private party and the Debtor under the DWSD Options, including but not limited to:

    i.      documents relating to any belief that the cost of the lease or sale payments will be considered a tax if such cost is subsequently passed on to ratepayers;

    ii.     documents providing the bases for such belief; and

    iii.    documents reflecting any analyses of whether such tax is lawful.

**REQUEST NO. 57:**

All documents reflecting or relating to the Emergency Manager's determination, referenced on page 21 of the Amended Disclosure Statement, that the City cannot gain additional revenue through the imposition of increased rates or additional taxes on City Residents.

**REQUEST NO. 58:**

All documents reflecting or relating to the basis for Your contention on Page 74 of the Amended Disclosure Statement that "State law precludes the City from charging fees that exceed the costs of providing the relevant services," including but not limited to any documents that reflect statutory, constitutional or charter provisions that support this contention.

**REQUEST NO. 59:**

All documents referring to any alternatives the Counties have to the water and/or sewer services currently provided by DWSD.

**REQUEST NO. 60:**

A listing of the professional, consulting, advisory or other related fees and expenses of the professionals engaged by the City to be charged to either System in connection with the City's chapter 9 bankruptcy or in connection with any of the DWSD Options.

**REQUEST NO. 61:**

All documents that the City intends to or may use as exhibits or evidence or for any purpose at the Confirmation Hearing or at any other hearing related or ancillary to confirmation of the Plan related to DWSD.

**REQUEST NO. 62:**

All documents that the City has provided or intends to provide to any witness it intends to call to testify with respect to the treatment of DWSD at the Confirmation Hearing or at any other

23

hearing related or ancillary to confirmation of the Plan, including without limitation hearings related to the approval of the Amended Disclosure Statement.

**REQUEST NO. 63:**

The biography, education and work history, or *curriculum vitae* of any person the City intend s to call as a fact witness with respect to the treatment of DWSD at the Confirmation Hearing or at any other hearing related or ancillary to confirmation of the Plan, including without limitation hearings related to the approval of the Amended Disclosure Statement.

**REQUEST NO. 64:**

The most current resume or *curriculum vitae* for each person the City intends to call to testify as a potential expert witness with respect to the treatment of DWSD at the Confirmation Hearing or at any other hearing related or ancillary to confirmation of the Plan, including without limitation hearings related to the approval of the Amended Disclosure Statement.

**REQUEST NO. 65:**

All documents, including reports, models, or data compilations, which have been provided to, reviewed by, or prepared by or for any expert witnesses for purposes related to the treatment of DWSD in the Amended Disclosure Statement or the Plan.

**REQUEST NO. 66:**

All documents produced by or to any party in this Bankruptcy Proceeding, including but not limited to any documents responsive to any other party's document requests served in this Bankruptcy Proceeding, which are herein incorporated by reference.

**REQUEST NO. 67:**

All interrogatory responses served by or to any party in this in this Bankruptcy Proceeding.

Dated: New York, New York
      April 11, 2014

DECHERT LLP
By:    s/Allan S. Brilliant
Allan S. Brilliant
G. Eric Brunstad
Stephen M. Wolpert
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
allan.brilliant@dechert.com
stephen.wolpert@dechert.com

*Attorneys for County of Macomb, Michigan, by and through its County Agency, the Macomb County Public Works Commissioner*

25