UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

**EEPK, FMS, WILMINGTON TRUST AND FGIC'S FIRST SET OF
INTERROGATORIES TO THE
CITY OF DETROIT IN CONNECTION WITH THE AMENDED
PLAN FOR THE ADJUSTMENT OF DEBTS**

Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A., and Erste Europäische Pfandbrief- und Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A. (collectively "EEPK"), FMS Wertmanagement AöR ("FMS"), Wilmington Trust, National Association, as Successor Contract Administrator ("Wilmington Trust"), and Financial Guaranty Insurance Company ("FGIC"), by their undersigned attorneys and pursuant to Rule 33 of the Federal Rules of Civil Procedure, made applicable to this matter by Rules 7033 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the *Third Amended Order Establishing Procedures, Deadline and Hearing Dates Relating to the Debtor's Plan of Adjustment* (together with any amendments thereto, the "Scheduling Order") [D.I. 3632], hereby propound the following interrogatories ("Interrogatories") and request that the same be answered, in writing and under oath, by the City of Detroit, Michigan (the "City") on or before April 25, 2014, in compliance with the deadline imposed by the Scheduling Order.

## INSTRUCTIONS

A.  In accordance with the Bankruptcy Rules, your response shall set forth the Interrogatory and its answer, with each Interrogatory answered separately and fully in writing and under oath, unless it is objected to, in which event your reasons for objection shall be stated in lieu of an answer. The answers are to be signed by the parties making them, and the objections signed by the attorney making them.

B.  These Interrogatories are continuing in character, so as to require you to file supplementary answers if you obtain further or different information before trial.

C.  Unless otherwise indicated, these Interrogatories refer to matters in the above-captioned bankruptcy case and the Amended Plan for the Adjustment of Debts of the City of Detroit (as such may be further amended, supplemented, or modified).

D.  Each answer shall include (a) the identity of all documents on which you will or may rely at the Plan confirmation hearing with respect to the subject matter of the Interrogatory and (b) the identity of all persons on whose testimony you will or may rely at the Plan confirmation hearing with respect to the subject matter of the Interrogatory.

E.  Where knowledge or information in the possession, custody or control of a party is requested, such a request includes knowledge of the party's agents, servants, employees, representatives, and unless privileged, its attorneys. The answer to each Interrogatory must include all knowledge within your possession, custody or control, and in the possession, custody or control of your agents, investigators, others acting on your behalf or under your direction or control, and others associated with you.

F.  Where an answer or a portion thereof is given upon information and belief rather than personal knowledge, please so state and describe and/or identify the sources of such

information and belief.

G. When an Interrogatory asks you to "describe" or "identify" a document, provide the following information with respect to each such document: (1) the date appearing on such document; or if it has no date, so state and give the date or approximate date such document was prepared, produced, created, or came into being; (2) any identifying or descriptive code number, file number, title or label of such document; (3) the general nature and description of such document; (4) the name of the person(s) who signed, authored, produced or created such document; (5) the name of the person(s) who prepared such document; (6) the name of the person(s) to whom such document was addressed and the name of each such person other than the addressee to whom such document, or copy or reproduction thereof, was given or sent; (7) the name of the person or entity having present possession, custody or control of such document; (8) the present location of such document; (9) if such document was, but is no longer in your possession, custody, or control, state what disposition was made of such document, the reason for such disposition, and the date thereof; and (10) whether or not any draft, copy, or reproduction of such document contains any script, notation, change, addendum, or the like, not appearing on such document itself, and if so, the answer shall give the description and identification of each such draft, copy or reproduction in accordance with the above subpart (1) through (9). In lieu of so identifying a document, at your option, you may attach an accurate copy of it to your answers to these Interrogatories, appropriately labeled to correspond to the Interrogatory in response to which it is being produced.

H. Where asked to "identify" or for the "identity" or "identification" of a natural person, state that person's full name, last known address, home and business telephone numbers, and present business affiliation. When the terms "identify," "identity," or "identification" are

used in reference to a person other than a natural person, describe the nature of such person (that is, whether it is a corporation, partnership, etc. under the definition of "person" above), and to state that entity's last known address, telephone number, and principal place of business. Once any person has been identified properly, it shall be sufficient thereafter when identifying that same person to state the name only.

I. In accordance with Fed. R. Bankr. P. 7026, where a claim of privilege is asserted in objecting to any Interrogatory or part thereof, and information is not provided on the basis of such assertion:

1. In asserting the privilege, the responding party shall, in the objection, identify with specificity the nature of the privilege that is being claimed and set forth all foundational facts upon which you base each claim of privilege;

2. The following information should be provided in the objection, if known or reasonably available, unless divulging such information would cause disclosure of the allegedly privileged information:

a. For oral communications: (i) the name of the person making the communication and the names of the person(s) present while the communication was made, and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of the communication; and (iii) the general subject matter of the communication;

b. For documents: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document, and, where not apparent, the relationship of

the author, addressee, custodian, and any other recipient to each other.

J. No part of an interrogatory should be left unanswered merely because an objection is interposed to another part of the interrogatory. If partial or incomplete answer is provided, the responding party shall state the answer is partial or incomplete.

K. If the responding party elects to specify and produce documents in answer to any interrogatory, the specification shall be in sufficient detail to permit the interrogating party to locate and identify the documents from which the answer may be ascertained.

L. If, in answering these interrogatories, the responding party encounters any ambiguities when construing the questions, instructions, or definitions, the responding party's answers shall set forth the matter deemed ambiguous and the construction used in answering.

M. The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all." "Any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompasses both "and" and "or." Words in the masculine, feminine or neuter shall include each of the other genders.

## DEFINITIONS

As used in these Interrogatories, the meanings ascribed to the following terms are to be interpreted in accordance with the below definitions.

A. All terms not otherwise defined herein shall have the meanings given to them in the Plan and Disclosure Statement.

B. The term "Accounts Receivable" means amounts owed by any individual or entity to the City.

C. The term "Bankruptcy Code" means title 11 of the United States Code.

D. The term "Communication" means the transmittal of information by any means.

E. The term "City" means the City of Detroit, Michigan, the Emergency Manager, the Office of the Emergency Manager, the City Council and the Mayor, as well as any past or present divisions, departments, officials, trustees, agents, affiliates, employees, attorneys, advisors, professionals, representatives and advisors of the foregoing, and all other persons acting or purporting to act on their behalf.

F. "Concerning" means relating to, referring to, describing, evidencing, reflecting, embodying, or constituting.

G. The term "DIA Corp." shall mean The Detroit Institute of Arts, a nonprofit corporation organized under the laws of the State of Michigan.

H. The term "Disclosure Statement" refers to the *Amended Disclosure Statement with Respect to Plan for the Adjustment of Debts of the City of Detroit* [D.I. 3382], as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto.

I. The term "Documents" and "Document" have the same full meaning as in Rule 34 of the Federal Rules of Civil Procedure and Rule 7034 of the Federal Rules of Bankruptcy Procedure and includes the original, any draft (whether disseminated or not) and any copy, regardless of origin or location, of any correspondence, letter, memorandum, electronic mail (e-mail), statement, summary, outline, contract, agreement, book, pamphlet, periodical, telegram, telecopy, telefax, wire, cable, record, study, report, schedule, diary, desk calendar, organizer, appointment book, photograph, reproduction, map, survey, drawing, chart, model, index, tape, data sheet or data processing card, computerized information, data base or disk (including without limitation hard, soft, floppy, or compact), invoice, purchase order, ledger, journal, check (front and back), check stub, note, bond, assignment, transfer, account statement, tax report, tax

schedule, financial statement, workpaper, business form, timesheet, log, inventory, print-out, computer tape and notes of meetings, conferences, conversations or telephone conversations and any and all other written, printed, telecopied, telefaxed, transcribed, punched, taped, stored, filmed and graphic matter, however produced or reproduced, and specifically includes any preliminary note, outline, or draft of any of the foregoing in your custody, possession, or control.

J. The term "person" means any natural person, business, or legal or governmental entity or association.

K. The term "Plan" means the *Amended Plan for the Adjustment of Debts of the City of Detroit* [D.I. 3380], as amended, supplemented, or modified from time to time, including any exhibits thereto and the Plan Supplement, which is incorporated by reference and made part of the Plan.

L. "You" or "Your" means the parties to whom this request is directed, and shall include anyone acting on behalf of those parties, over whom the parties have control, or which is, or may be subrogated to the parties' interests, including, without limitation, any officer, agent, servant, employee, attorney, insurance company, investigator, independent adjusting company, or other person or entity.

## **INTERROGATORIES**

1. Identify every person who provided information or Documents in connection with the preparation of the answers to these Interrogatories. With respect to each such person, identify the specific Interrogatory to which he or she helped prepare answers or supplied documents, or with respect to which he or she was consulted, relied upon, or otherwise constituted a source of information.

2. Identify all expert witnesses you have engaged or intend to employ to testify in

7

connection with confirmation of the Plan. For each expert, state the name, address, and telephone number of each such expert and describe fully the person's area of expertise, credentials, qualifications, all publications authored by the expert within the last ten years, all cases during the last four years in which the expert has testified at trial or by deposition, the subject matter about which the person will testify, the facts or data considered by the expert in forming the expert's conclusions or findings, the substance of the expert's conclusions or findings, the compensation to be paid for study and testimony, and whether the expert's findings, conclusions and/or opinions are written or summarized in any Document, and, if so, identify the Document.

3. Describe in detail how the City's strategy with respect to City-owned land, including with respect to removing blight, will affect the City's creditors, including, without limitation, the holders of the COP Claims.

4. Identify and describe in detail any pending grant applications or grant applications in process seeking funds in the aggregate amount of $5 million or more.

5. Describe how payment commitments of the Foundations, the State of Michigan, and the DIA Corp. will be enforced if the DIA Assets have been irrevocably transferred to the DIA Corp. on the Effective Date, and what the remedies will be for non-payment.

6. Identify and state the fair market value of each City-owned asset, including, for the avoidance of doubt, each work of Art housed at the DIA, valued at more than $1 million, and explain the basis for the fair market value stated.

7. Identify and explain all claims that the City knows, suspects, or believes may exist against parties other than the City that would be released and/or enjoined pursuant to the Plan, including, for the avoidance of doubt, all claims that would be released pursuant to Section

III.D.7.b. of the Plan, assuming the State Contribution Agreement is consummated, as well as any person who requested or suggested to the City that such claims be released pursuant to the Plan.

8. Explain and state each fact that supports your contention in Section VI.C. of the Disclosure Statement, that the City may be "unable to confirm the Plan" if the Emergency Manager is removed before confirmation, whether your contention assumes that the Governor for the State of Michigan will not appoint a new Emergency Manager if the current Emergency Manager were to be removed from office, and why.

9. Explain the management and operations of the City after emergence from chapter 9, including (i) any limitations or restrictions with respect thereto, (ii) whether and for how long the City will remain in receivership under the control of an emergency manager pursuant to Public Act 436, (iii) how the governance of the City will change after the completion of Kevyn Orr's 18-month term and (iv) the extent to which the City's mayor, City Council and/or emergency manager, as applicable, will be required to implement the Plan, including the Restructuring and Reinvestment Initiatives attached to the Disclosure Statement as Exhibit I, and, if they will be so required, (a) the authority for such requirement, (b) how such requirement will be enforced, and (c) what, if any, oversight will exist.

10. State whether legislation by the State of Michigan will be necessary to ensure that the Plan complies with state law, and identify and describe in detail any such legislation. For each such legislation, state whether the City believes the legislation will be passed, describe the basic for the belief, state whether the Plan can be confirmed in the event the legislation does not pass, and describe the aspects of the plan that would violate state law in the event the legislation does not pass.

11. Explain in detail why the City has proposed to provide a higher percentage of recovery to holders of GRS Pension Claims and PFRS Pension Claims than to other holders of Unsecured Claims, including in the answer all facts that support the decision to provide a higher percentage of recovery to holders of GRS Pension Claims and PFRS Pension Claims than to other holders of Unsecured Claims, all business or political justification(s) supporting such decision, and all other reasons supporting such disparity.

12. Explain in detail how the City estimated the aggregate allowed amount of, and the recoveries on, GRS Pension Claims and PFRS Pension Claims, and the basis for the City's estimation.

13. Explain in detail how the City estimated the aggregate allowed amount of, and the recoveries on, OPEB Claims, and the basis for the City's estimation.

14. Explain in detail why the City is proposing to provide the proceeds from the DIA Settlement and the State Contribution Agreement only to holders of PFRS Pension Claims and GRS Pension Claims, and not to any other holders of Unsecured Claims, such as the holders of the COP Claims.

15. Describe in detail the City's understanding of the present value of the New B Notes, and the basis for such understanding, including without limitation, the bases, methodologies, assumptions and discount rate underlying the City's valuation of the New B Notes, and an explanation regarding why such discount rate is appropriate.

16. State whether the New B Notes to be issued to holders of claims in Classes 7, 9, 12, 13, and 14 will be taxable or tax exempt? If the answer to this Interrogatory is that the New B Notes will be taxable to certain classes and tax exempt to others, (a) state how such treatment affects the value of the New B Notes to each class and (b) state all facts that support your

decision to provide New B Notes with different tax treatment to each class.

17. Explain in detail why the City requested that Christie's perform a detailed appraisal of only 1,741 works in the DIA Collection.

18. Describe in detail the City's efforts from January 1, 2013 to present to collect on the Accounts Receivable, and the City's strategy to improve such collection.

19. Identify and describe in detail the City's efforts to enter into a transaction or series of transactions to monetize the City-owned land referenced in section VII.A.5(b) of the Disclosure Statement.

20. Explain the City's understanding of the current fair market value of the entire DIA Collection and the basis for such understanding.

21. Explain the City's understanding of the current fair market value of the DWSD and the basis for such understanding.

22. Explain the City's understanding of the current fair market value of the City-owned land referenced in section VII.A.5(b) of the Disclosure Statement and the basis for such understanding.

23. Identify and explain the strengths and weaknesses of any alternative transactions the City has considered with respect to the DIA Collection, and indicate whether the City will pursue any such alternative transaction in the event the DIA Settlement does not become effective and, if not, explain how the City will address the DIA Collection if the DIA Settlement does *not* become effective.

24. Describe in detail the terms of the Exit Facility, including, without limitation, (a) the status of the City's efforts to obtain an Exit Facility, (b) the principal amount of financing sought, (c) the interest rate the City has requested, (d) the assets that the City proposes to have

serve as collateral for the Exit Facility, (e) the maturity date, (f) the intended use of the proceeds of the Exit Facility, (g) all documents and communications reflecting any requests for proposals sent by the City and other indications of interest by potential lenders, (h) comparisons of the proposals, and (i) negotiations with financial institutions.

25. State the estimated percentage recoveries for each class of Unsecured Claims, assuming, all else being equal, (a) the DIA Settlement does not occur, (b) full amount of the State Contribution is not received, (c) no amounts are received on an accelerated basis for DWSD for its portion of the GRS UAAL, (d) the GRS and PFRS are required to disgorge the proceeds received in connection with the 2005 and 2006 COPs Transactions, (e) the City does not obtain an Exit Facility, (f) the conditions identified in clauses (a)-(e) *all* occur, and (f) the City's chapter 9 case is dismissed and creditors are left to pursue their state law remedies, and explain the factual basis for your estimation for each of the contingencies identified in clauses (a)-(f).

Dated: April 11, 2014.                                    Respectfully submitted,

| | |
|---|---|
| */s/ Mark R. James* | */s/ Matthew G. Summers* |
| Ernest J. Essad Jr. | Matthew G. Summers, Esquire |
| Mark R. James | Ballard Spahr LLP |
| WILLIAMS, WILLIAMS, RATTNER | 919 North Market Street, 11th Floor |
| & PLUNKETT, P.C. | Wilmington, Delaware 19801 |
| 280 North Old Woodward Avenue, Suite 300 | Tel: (302) 252-4428 |
| Birmingham, Michigan 48009 | Fax: (302) 252-4466 |
| Tel: (248) 642-0333 | E-mail: summersm@ballardspahr.com |
| Fax: (248) 642-0856 | |
| Email: EJEssad@wwrplaw.com | Howard S. Sher, Esquire (P38337) |
| Email: mrjames@wwrplaw.com | Jacob & Weingarten, P.C. |
| | Somerset Place |
| and | 2301 W. Big Beaver Road, Suite 777 |
| | Troy, Michigan 48084 |
| Alfredo R. Pérez | Tel: (248) 649-1200 |
| WEIL, GOTSHAL & MANGES LLP | Fax: (248) 649-2920 |
| 700 Louisiana Street, Suite 1600 | E-mail:howard@jacobweingarten.com |
| Houston, Texas 77002 | |
| Tel: (713) 546-5000 | and |
| Fax: (713) 224-9511 | |
| Email: alfredo.perez@weil.com | Vincent J. Marriott, III, Esquire |
| | Ballard Spahr LLP |
| *Attorneys for Financial Guaranty* | 1735 Market Street, 51st Floor |
| *Insurance Company* | Philadelphia, Pennsylvania 19103 |
| | Tel: (215) 864-8236 |
| | Fax: (215) 864-9762 |
| | E-mail:marriott@ballardspahr.com |
| | |
| | *Attorneys for Hypothekenbank Frankfurt AG,* |
| | *Hypothekenbank Frankfurt International S.A.,* |
| | *Erste Europäische Pfandbrief- und* |
| | *Kommunalkreditbank Aktiengesellschaft in* |
| | *Luxemburg S.A.* |

*/s/ Rick L. Frimmer*  
Rick L. Frimmer  
J. Mark Fisher  
Michael W. Ott  
SCHIFF HARDIN, LLP  
233 S. Wacker Drive, Suite 6600  
Chicago, Illinois 60606  
Telephone: (312) 258-5600  
Facsimile: (312) 258-5600  
E-mail: rfrimmer@schiffhardin.com  
E-mail: mfisher@schiffhardin.com  
E-mail: mott@schiffhardin.com  

*Attorneys for FMS Wertmanagement AöR*

*/s/ Heath D. Rosenblat*  
Kristin K. Going  
Heath D. Rosenblat  
Drinker Biddle & Reath LLP  
1177 Avenue of the Americas, 41st Floor  
New York, New York 10036-2714  
Telephone: (212) 248-3140  
Facsimile: (212) 248-3141  
E-mail: Kristin.Going@dbr.com  
E-mail: Heath.Rosenblat@dbr.com  

*Counsel for Wilmington Trust, National Association, as Successor Contract Administrator*

## CERTIFICATE OF SERVICE

I, Matthew G. Summers, state that on April 11, 2014, I filed a copy of the foregoing Interrogatories using the Court's ECF system and I hereby certify that the Court's ECF system has served counsel to the City and all registered users that have appeared in the above-captioned case. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

/s/ Matthew G. Summers
Matthew G. Summers
E-mail: summersm@ballardspahr.com