# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF
## MICHIGAN (DETROIT)

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | CASE NO.: 13-53846 |
| | ) | |
| | ) | CHAPTER 9 |
| Debtor. | ) | |
| | ) | Hon. Steven W. Rhodes |
| | ) | |

---

## OAKLAND COUNTY'S FIRST REQUEST FOR PRODUCTION
## OF DOCUMENTS AND INTERROGATORIES TO DEBTOR

---

Oakland County, Michigan ("Oakland County"), a contingent creditor and party in interest in the above-captioned case, pursuant to Rule 7034 of the Federal Bankruptcy Rules and Rules 34 of the Federal Rules of Civil Procedure, propounds their First Request for Production of Documents to the City. Oakland County requests that the City respond to this discovery and produce documents within thirty days, or as otherwise required by law, at the offices of the Oakland County counsel, Carson Fischer, PL, 4111 Andover Road, West Building, Second Floor, Bloomfield Hills, Michigan 48302, unless otherwise agreed by the parties or ordered by the Court.

## DEFINITIONS

A.     All capitalized terms not otherwise defined in this request shall have the same meanings given to them in (1) the Trust Indenture among the City, Detroit Water and Sewerage Department and Trustee relating to the Outstanding Secured Obligations of the Detroit Water and Sewerage Department (Sewage Disposal

1

System), dated as of June 1, 2012 (the "Sewer Indenture"), and (2) the Trust Indenture among the City, Detroit Water and Sewerage Department and Trustee, relating to the Outstanding Secured Obligations of the Detroit Water and Sewerage Department (Water Supply System), dated as of February 1, 2013 (the "Water Indenture," together with the Sewer Indenture, the "Indentures").

B.      The term "Bankruptcy Case" shall mean the City's chapter 9 case.

C.      The term "Bonds" shall mean and refer to the special revenue water and sewer bonds issued by the City pursuant to the Ordinances, Indentures and related supplemental actions.

D.      The term "Capital Expenditures" shall mean costs incurred for the addition, replacement, improvement, or enhancement of a fixed asset, to the extent such costs are properly chargeable to a fixed capital account pursuant to generally accepted accounting principles.  This term shall include, without limitation, expenditures for vehicles and equipment, including to replace worn, lost, or destroyed vehicles and equipment, and expenditures for internal labor.

E.      The term the "City" or the "Debtor" shall mean and refer to the City of Detroit, Michigan.

F.      "Communication" means without limitation, any oral, written, or electronic transmission of information, demands or questions, including, but not limited to, conversations, meetings, discussions, telephone calls, e-mails, telegrams, telexes, telecopies, seminars, conferences, writings, letters, messages, notes, or memoranda.

G.      The term "Describe in Detail" means to describe in detail with reference

2

to specific facts and circumstances.

H.    The term "Disclosure Statement" shall mean the *Amended Disclosure Statement with Respect to Amended Plan for the Adjustment of Debts of the City of Detroit* (Docket No. 3382), as amended from time to time.

I.    The term "Document(s)" shall be interpreted in the broad and liberal sense and means written, typed, printed, recorded, graphic or photographic matter or any other medium upon which intelligence or information can be recorded, stored, or retrieved, however produced or reproduced, of any kind and description, and whether an original, master, duplicate or copy, including, but not limited to, paper, notes, accounts, books, journals, advertisements, catalogs, manuals, publications, correspondence, cablegrams, mailgrams, telegrams, memoranda, letters, documents, communications, including interoffice and intra-office communications, reports, studies, analyses, pamphlets, calculations, projections, contracts, charts, graphs, plans, specifications, drawings, sketches, surveys, agreements, working papers, corporate records, minutes of committee meetings, books of account, ledger books, notebooks, vouchers, bank checks, cashier's checks, receipts for cashier's check, canceled checks, check stubs, bills, receipts, invoices, delivery tickets, bills of lading, time sheets, desk calendars, appointment books, log books, diaries, diary entries, photographs, microfilm, microfiche, and notes, minutes, transcriptions or sound recordings of any conversations, negotiations, meetings or conferences, conducted either in person or by telephone, or things similar to any of the foregoing, and all other papers, writings or physical things containing information, including data

3

compilations from which information can be obtained by detection devices, and including preliminary drafts of or marginal notes appearing on any document, however denominated or described.

J. The term "DWSD" shall mean and refer to the City of Detroit Water and Sewerage Department.

K. The term "Fiscal Year" shall mean the twelve-month period of time ending June 30 of the year stated. For example, "Fiscal Year 2014," refers to the period of time from July 1, 2013 to June 30, 2014.

L. The term "GLWA" shall mean and refer to the Great Lakes Water Authority or any transferee of the Systems by DWSD, in whole or in part.

M. The term "GRS" shall mean the General Retirement System for the City.

N. "Identify" when used with respect to documents, means that you are required, for each and every document, to:

(a) state its exact name and title;

(b) state the date of the document and all other serial or identifying numbers thereon;

(c) state its general subject matter;

(d) describe the document by type, i.e., a letter, newspaper, memorandum, etc.;

(e) provide the information required by definition letter I for each person who participated in the creation of the document;

(f) provide the information required by definition letter I for each

4

addressee, if any, of the document or any copy; and

(g)     specify the location of any file or files where the document or any copy thereof, is normally or presently kept, and provide the information required by definition letter I for the custodian.

In lieu of identifying a document, the particular document may be referred to and produced.

O.     "Identify" when used with respect to a person (as defined in definition letter S), means that you are required to:

(a)     state his, her or its full name;

(b)     state the last known residence and business address, last known employer, job title and job description of any natural person or, if other than a natural person:

(1)  full name and address of the entity's principal place of business and state of incorporation; and

(2)     the name, last known address, place of employment and employer of each natural person employed or representing such entity, having knowledge of with whom communications have been had relating to the subject matter of the discovery request; and

(c)     state all the persons' positions, titles, job descriptions and periods of employment, if any, with you or any other entity of which you are aware.

P.     "Identify" with respect to communication, means that you are required to:

(a)     identify every person participating in or present during the communication;

(b)     state the place where the communication was made;

(c)     state the date the communication was made; and

5

(d)	state	the	substance,	subject	matter	of	the communication.

Q.	The term "Material" shall mean 6% or more.

R.	The term "Net Revenues" shall have the same meaning as that term has in the Indentures.

S.	"Notice" shall include formal and informal notification.

T.	"Person" means any entity of any description that has a separate identity, recognized in law or in fact to have legal rights and obligations. This term includes, but is not limited to, any natural person, corporation, partnership, joint venture, association, company, group, organization, trust, state, business or governmental entity or agency (public or private). Any reference to a person that is not a natural person includes its present and former officers, executive, partners, directors, trustees, employees, attorneys, agents, representatives and all other persons acting or purporting to act on behalf of the person, and also its subsidiaries, affiliates, divisions, predecessors and successors in interest.

U.	The term "Petition Date" shall refer to July 18, 2013, when the City filed a voluntary petition for relief under chapter 9 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

V.	The term "Plan" shall mean the City's *Amended Plan for the Adjustment of the Debts of the City of Detroit,* dated March 31, 2014 (Docket No. 3380), as amended from time to time.

W.	The term "Gabriel Roeder" shall mean Gabriel Roeder Smith &

6

Company.

X.     "<u>Representative</u>" means any person, including any attorney or agent, who acts, has acted or has at any time requested or solicited to act, for the benefit or on behalf of any other person, with that other person's knowledge, consent or acquiescence.

Y.     The term "<u>Sewer System</u>" shall mean the Sewage Disposal System of the City, as further described in the Sewer Indenture.

Z.     The term "<u>Systems</u>" shall refer to either or both the Sewer System or the Water System, as the context requires.

AA.    The terms "<u>System Asset</u>" or "<u>System Assets</u>" shall mean one or all of the assets, as the context shall dictate, that comprise both the Sewer System and the Water System, including, without limitation, all real estate holdings, tangible assets and intangible assets. Tangible assets include, without limitation, all pipes, pumping stations, and waste water treatment plants of the Systems.  Intangible assets include, without limitation, all computer software, operating licenses and environmental permits, wastewater historical testing documentation on file, engineering drawings and system maps, trained and assembled workforce, goodwill and going concern value.

BB.    The term "<u>Water System</u>" shall mean the City's Water Supply System, as further described in the Water Indenture.

CC.    The term "<u>relating to</u>" shall mean in whole or in part and directly or indirectly relating to, pertaining to, connected with, concerning, commenting on, referring to, responding to, showing, evincing, describing, analyzing, regarding,

7

reflecting, or constituting.

## INSTRUCTIONS

A.  <u>Time Period for Requested Documents</u>. Unless otherwise indicated, these requests seek Documents created on or after the start of Fiscal Year 2009 to the present.

B.  <u>Privilege</u>. If the City refuses to produce any Document called for in this Request, the City shall produce, in writing, a privilege log, in compliance with Rule 7026 of the Federal Bankruptcy Rules and Federal Rule 26 (b)(5)(A)(i) and (ii), that contains sufficient information to allow the Trustee and the Ad Hoc Bondholder Committee to make a determination as to whether to challenge the assertion of privilege.

C.  Whenever a discovery request calls for information with respect to "<u>each</u>" one of a particular type or occurrence, communication or other matter of which more than one exists, identify separately, and in chronological order, each instance of the occurrences, communications or other matters referred to, and provide for each such instance all of the information called for immediately following such identification.

D.  Unless the text clearly requires otherwise, you shall interpret:

(a)  The singular form of a word to include plural and vice versa;

(b)  The conjunctive "and" to include the disjunctive "or" and vice versa;

(c)  All pronouns to apply to the male, female and neutral gender;

(d)  The word "any" to include the word "all" and vice versa; and

(e)  The past tense of a word to include the present tense and vice versa.

9

E.     If you assert that a discovery request is objectionable, state your objection clearly and specifically identify which parts of the discovery request are objectionable and the reason why it is objectionable.

F.     If you assert part of a discovery request is objectionable, respond to those remaining parts of the request to which you do not object.

G.     If you have already produced documents which are responsive to the discovery request, describe the documents and identify when they were produced.

H.     If you cannot answer any portion of any of the following discovery requests in full, after exercising due diligence to secure the information to do so, so state, and answer to the extent possible, specifying your inability to answer the remainder, and stating whatever information or knowledge you have concerning the unanswered portions.

I.     If you at any time, had possession or control of a document responsive to these discovery requests, and if such document has been lost, destroyed, purged or is not presently in your possession or control, then:

(a)     Identify that document;

(b)     State the date of its loss, destruction, purged or separation from your possession or control;

(c)     State the circumstances surrounding its loss, destruction, purge or separation from your possession or control; and

(d)     State its present or last known location, including the name, address and telephone number of each person believed to have had possession of such

10

document.

## DOCUMENTS REQUESTED

A.    Financial Results and Projections.

1.    Documents showing DWSD's financial results for Fiscal Years 2009 through 2013 and year-to-date for Fiscal Year 2014, including, but not limited to:

a)    Historical statements of cash flows;

b)    Balance sheets (actual);

c)    Notes to the historical financial statements;

d)    Auditors' reports on the historical financial statements;

e)    Documents showing historical volumetric use, revenue and rate tariff by customer rate class and service/geographic area;

f)    All disbursements made from the gross revenues of each System for administration, operation, maintenance, and Capital Expenditures;

g)    Any disbursements from the gross revenues of each System which were not used for the administration, operation, maintenance, or Capital Expenditures of such System;

h)    To the extent not provided in response to the requests above, Documents showing historical financial results related to pension expense; labor expense by category; operating expenses by category (i.e. power, chemicals, etc.); disbursements from DWSD to other City departments, to the City's General Fund, or to any retirement plan for City employees; costs for employee healthcare, insurance and

11

other benefits; costs for pension and other postemployment benefits; employee headcount; bad debt expense by customer rate class and/or wholesale customer; days sales outstanding; accounts receivable aging; and refinancing and future financing; and

   i)  Documents relating to cash flows to and from DWSD and any other City department or the City's General Fund.

**RESPONSE:**

   2.  Documents showing DWSD and GLWA's financial projections for Fiscal Years 2014 through 2023. This request includes, but is not limited to:

   a)  Projected statements of income and cash flow and back-up documentation showing the supporting bases for such projections;

   b)  Notes to the projected financial statements;

   c)  Projected volumetric use, revenue and rate tariff by customer rate class and service/geographic area and back-up documentation showing the supporting bases for such projections;

   d)  Documents showing any other projected sources of revenue and back-up information sufficient to show the bases for such projections;

   e)  Any disbursements from the gross revenues of each System which will be made for administration, operation, maintenance, and Capital

12

13-53846-tjt  Doc 4013  Filed 04/11/14  Entered 04/11/14 15:57:42  Page 12 of 35

Expenditures;

f)      Any disbursements from the gross revenues of each System which will not be used for the operation, maintenance, or Capital Expenditures of such System;

g)      To the extent not provided in response to the requests above, Documents sufficient to show projections related to pension expense; labor expense by category; operating expenses by category (i.e. power, chemicals, etc.); disbursements from DWSD to other City departments, to the City's General Fund, or to any retirement plan for City employees; costs for employee healthcare, insurance and other benefits; costs for pension and other postemployment benefits; employee headcount; bad debt expense by customer rate class and/or wholesale customer; days sales outstanding; accounts receivable aging; and refinancing and future financing; and

h)      Documents relating to projected cash flows to and from DWSD and any other City department or the City's General Fund.

**RESPONSE:**

B.        Operations

3.        The most recent cost of services study done for the City regarding each of the Systems.

**RESPONSE:**

4.        Documents showing the average and median bills by customer rate class, including customer rate classes in the surrounding counties and cities.

**RESPONSE:**

5.        Documents reflecting any study, assessment, estimate or opinion regarding historical or future System rates, Capital Expenditures, volumes by customer rate class and service/geographic location, and/or operating expenses.

**RESPONSE:**

14

6.   All work done by DWSD's rate consultant in conjunction with DWSD's Root Cause Committee's Final Report, dated as of March 13, 2013, and referenced on page 4 of that report.

**RESPONSE:**

7.   Documents that refer to the prospect of any wholesale or retail customers or groups of customers discontinuing use of the Systems and leading to a Material decrease in gross revenue.

**RESPONSE:**

8.   Documents evincing the number of customer accounts by customer rate class for Fiscal Years 2009 through 2013 and projections for Fiscal Years 2014 through 2023.

**RESPONSE:**

15

9.     Documents evincing the City and/or DWSD's historical and current process of billing and collecting for each System.

**RESPONSE:**

10.     Documents evincing any valuation, assessment, opinion or estimate of the capacity or condition of either System, the Systems together, and/or facilities of each System, including, but not limited to, individual treatment plants, pumping stations, storage tanks, sewer overflow retention basis, and buried infrastructure.

**RESPONSE:**

11.     Any and all opinions, assessments, studies or reports reflecting current and projected optimal employee headcounts for DWSD.

**RESPONSE:**

C.    System Assets.

12.    Documents cataloging System Assets, and any valuation, assessment, estimate or appraisals for either System, the Systems together, and/or facilities of each System, including, but not limited to, individual treatment plants, pumping stations, storage tanks, sewer overflow retention basis, and buried infrastructure.

**RESPONSE:**

D.    "Legacy" Liabilities.

13.    Documents evincing the calculation and allocation of all pension, other postemployment benefits, and any Certificates of Participation-related payments assessed against the Systems historically and that are projected through any projection period under the Plan.

**RESPONSE:**

17

14.     Documents that reflect the estimated or actual current market value of GRS assets.

**RESPONSE:**

15.     Documents that reflect any update to June 30, 2013 (or beyond) of the actuarial valuations performed by Gabriel Roeder for the GRS as of June 30, 2012, based on or using the methods, assumptions, and procedures used by Gabriel Roeder.

**RESPONSE:**

16.     Documents that reflect the calculation of the GRS's OPEB Claims (as defined in the Plan) as reflected in the Disclosure Statement and the Plan, including, without limitation, the underlying assumptions and methods used in the calculations.

**RESPONSE:**

17.     Documents that reflect the total amount of the GRS's OPEB Claims paid or projected to be paid from the Petition Date to the Effective Date (as defined in the Plan).

**RESPONSE:**

E.     Funds, Accounts, and Policies.

18.     Documents evincing amounts held in the Operation and Maintenance Funds and the Construction Funds for the Systems.

**RESPONSE:**

19.     Documents evincing any accounts of the Systems not controlled by the Trustee and the balances in such accounts, reflecting the cash in and out of the accounts, from Fiscal Year 2013 and year-to-date for Fiscal Year 2014.

**RESPONSE:**

F.    Regulations/Capital Expenditures.

20.    Documents detailing any anticipated Material Capital Expenditures to be funded after Fiscal Year 2024.

**RESPONSE:**

21.    Documents reflecting any opinion, assessment, estimate or study which has assessed the Capital Expenditure needs of the Systems that are more current than DWSD's 10-year CIP (Capital Improvement Program) dated September 24, 2013.

**RESPONSE:**

22.    Documents describing or evincing any DWSD hardship exemptions with the Environmental Protection Agency and/or the Michigan Department of Environmental Quality.

**RESPONSE:**

20

23.  Documents supporting financial capability analysis to establish DWSD hardship exemptions provided to or received from the Environmental Protection Agency and/or the Michigan Department of Environmental Quality.

**RESPONSE:**

24.  Documents reflecting the Material operating expenses and Capital Expenditures to be incurred both with and without DWSD hardship exemptions with the Environmental Protection Agency and/or the Michigan Department of Environmental Quality.

**RESPONSE:**

G.  Labor.

25.  Documents evincing or referring to "feather-bedding" within DWSD, and any and all opinions, assessments, studies or reports reflecting any proposed solutions to such issues.

**RESPONSE:**

26.     Documents evincing all communications between or among the City, DWSD, union or other labor representatives for employees of DWSD, and any other parties regarding a potential disposition or "monetization" of the Systems.

**RESPONSE:**

27.     Documents reflecting any severance pay policies for DWSD employees.

**RESPONSE:**

H.     Rate-Setting.

28.     Documents evincing all rate-setting agreement and negotiations regarding the same with all municipal counterparties, including but not limited to, Clinton County, Macomb County, Oakland County, and Wayne County.

**RESPONSE:**

I.        "Monetization" of the Systems.

29.     Documents relating to the prospect of forming or plan to form any regional authority or private enterprise to operate, manage, and/or own the Systems.

**RESPONSE:**

30.     Documents evincing all rate-setting agreements and negotiations regarding the same with all municipal counterparties, including, but limited to Clinton County, Macomb County, Oakland County, and Wayne County.

**RESPONSE:**

31.     Documents evincing negotiations, agreements or understandings with any municipal counterparties, including, without limitation, Clinton County, Macomb County, Oakland County, Wayne County, and any other County or entity (public or private) regarding disposition or "monetization" of the Systems or altering rates chargeable by the Systems.

**RESPONSE:**

32.    Documents containing any opinion, assessment, report or analysis of the City's or DWSD's ability to reject or unilaterally modify, on a non-consensual basis, any of the agreements with the municipal counterparties.

**RESPONSE:**

33.    Documents referring to any alternatives the municipal counterparties have to DWSD's water and/or sewer services.

**RESPONSE:**

34.    Documents sent to, received by, or made available for inspection  by parties participating in the Request for Information for Potential Operators of Detroit Water and Sewage Disposal Systems for Detroit Water and Sewerage Department ("DWSD"), issued by The City of Detroit and Kevyn D. Orr, Emergency Manager, requesting initial responses by April 7, 2014, including, but not limited to, any confidential information memoranda provided to such parties.

**RESPONSE:**

35.     A listing of the professional, consulting, advisory or other related fees and expenses of professionals engaged by the City to be charged to either System in connection with the City's chapter 9 bankruptcy or any transfer of either System contemplated in the Plan.

**RESPONSE:**

I.     Plan.[1]

36.     Reports, whether generated internally or by outside consultants, regarding the appropriate interest rate and comparables utilized in creating the Interest Rate Reset Chart, attached as Exhibit I.A.159 to the City's proposed Plan.

**RESPONSE:**

37.     The following exhibits (or current versions thereof) to the Plan:

a)      Form of New DWSD Bond Documents,

b)      Form of New Existing Rate DWSD Bond Documents,

---

[1] Capitalized terms used in this section of the Request for Production of Documents but not otherwise defined herein bear the meaning ascribed to such term in the Plan.

      c)      Form of New Existing Rate GLWA Bond Documents,

      d)      Form of New GLWA Bond Documents, and

      e)      Form of New GLWA Revolving Bond Documents.

**RESPONSE:**

38.     Documents relating to the procurement of municipal bond insurance for any new bonds to be issued under the Plan.

**RESPONSE:**

39.     Documents relating to the procurement of public ratings for any new bonds to be issued under the Plan.

**RESPONSE:**

40.     Documents that reflect the proposed governance structure of the GLWA.

**RESPONSE:**

41.     Documents that reflect whether DWSD or GLWA will be a "stand-alone" enterprise with or without a DWSD Transaction, such that all administrative functions, such as human resources, information technology, and legal services, will be performed exclusively within the enterprise.

**RESPONSE:**

K.     Hearings.

42.     All Documents that the City intends to or may use as exhibits or evidence or for any purpose at the Confirmation Hearing or at any other hearing related or ancillary to confirmation of the Plan, including without limitation hearings related to the approval of the Disclosure Statement.

**RESPONSE:**

27

43. All Documents that the City has provided or intends to provide to any witness that it intends to call to testify at the Confirmation Hearing or at any other hearing related or ancillary to confirmation of the Plan, including without limitation hearings related to the approval of the Disclosure Statement.

**RESPONSE:**

44. The biography, education and work history, or *curriculum vitae* of any person the City intends to call as a fact witness at the Confirmation Hearing or at any other hearing related or ancillary to confirmation of the Plan, including without limitation hearings related to the approval of the Disclosure Statement.

**RESPONSE:**

45. The most current resume or *curriculum vitae* for each person the City intends to call to testify as a potential expert witness at the Confirmation

Hearing or at any other hearing related or ancillary to confirmation of the Plan, including without limitation hearings related to the approval of the Disclosure Statement.

**RESPONSE:**

46. All Documents, including reports, models, or data compilations, which have been provided to, reviewed by, or prepared by or for any expert witnesses for purposes related to the Disclosure Statement or the Plan.

**RESPONSE:**

L.    Other.

47. The current organizational chart for DWSD and any proposed changes to occur on or after the Effective Date (as defined in the Plan).

**RESPONSE:**

29

48.     Documents sent to, received by, or made available for inspection by parties participating in the Request for Proposal for Underwriting Services, issued by The Michigan Department of Treasury and the Michigan Finance Authority (on behalf of the City of Detroit and the Detroit Water and Sewerage Department), dated as of March 12, 2014.

**RESPONSE:**

49.     Documents evincing all rate-setting agreements and negotiations regarding the same with all municipal counterparties, including, but not limited to, Genesee County.

**RESPONSE:**

50.     Documents, evincing negotiations, agreements or understandings with any municipal counterparties, including, without limitation, Genesee County, and any other County or entity (public or private) regarding disposition or "monetization"

of the Systems or altering rates chargeable by the Systems.

**RESPONSE:**

51.    Documents reviewed, identified, or relied upon in answering any interrogatories herein.

**RESPONSE:**

# OAKLAND COUNTY'S FIRST SET
## OF INTERROGATORIES TO THE DEBTOR

1.    Describe in Detail, and Identify all Documents containing financial projections for the DWSD operations through June 30, 2023, including all related support and assumptions in connection with such projections including but not limited to the factual and legal bases for any rates assumed for DWSD customers.

2.    Describe in Detail, and Identify all Documents containing information relating to, risks associated with operating the DWSD and its financial projections through June 30, 2023, including, (i) rate determinations; (ii) the need to increase rates and any anticipated rate setting disputes or litigation; (iii) any capital improvement projects that may be necessary to maintain the water and sewer systems and the proposed source of funding for any such projects; (iv) financing difficulties; and (v) collection issues.

3.    Describe in Detail, and Identify all Documents containing information relating to, all executory contracts by and between DWSD and the non-debtor wholesale and retail customers of DWSD to be assumed and/or rejected, including the basis upon which any such decision will be made and the impact on the financial projections and the feasibility of the Plan in the event such executory contracts are assumed and/or rejected.

4.    Describe in Detail, and Identify all Documents containing information relating to, the factors to be considered by the Debtor in connection with deciding whether the Debtor will enter into the "DWSD Transaction" (as defined in the Plan).

5. Describe in Detail, and Identify all Documents containing information relating to, information with regard to the feasibility of the Plan in the event the Debtor enters into the "DWSD Transaction" including whether the Plan will need to be amended by the Debtor in such instance.

6. Describe in Detail why DWSD is being required to pre-fund the pension liabilities when no other City department is being required to do so and the legal basis for requiring DWSD to do so?

7. Describe in Detail whether the Debtor has considered and determined that the DWSD will have the necessary cash flow to make such payments over the ten year period absent additional borrowing that would further burden the DWSD operations? If so, the Debtor should identify all documents that would demonstrate that DWSD will have the cash flow to make these payments.

8. Describe in Detail whether the pre-funding is in lieu of any lease or PILOT imposed on the DWSD operations?

9. If the pre-funding were to occur and the 'rate stability plan' (as referenced in the Disclosure Statement), would water and sewer rates have to be raised? If so, by how much? If rates have to be raised, would the higher rates be imposed on the wholesale and retail customers or only on the wholesale customers? How will such higher rates be calculated by the Debtor?

10. Describe in Detail the Debtor's assessment of any increase in water and sewer rates that may be necessitated by the 'rate stability plan' and the pre-funding, and identify any reports or other documents that support this assessment.

33

11.     Describe in Detail, and Identify all Documents containing information relating to, the legal justification for separately classifying similar situated creditors and the risks imposed on confirmation of the Plan by such classifications.

12.     Identify all missing exhibits to the Plan.

Dated: April 11, 2014

By: */s/ Joseph M. Fischer*
Joseph M. Fischer (P13452)
Robert A. Weisberg (P26698)
Christopher Grosman (P58693)
**CARSON FISCHER, P.L.C.**
4111 Andover Road, West – Second Floor
Bloomfield, Michigan 48302-1924
Telephone: (248) 644-4840
Facsimile: (248) 644-1832
Email: JFischer@CarsonFischer.com
          RWeisberg@CarsonFischer.com
          CGrosman@CarsonFischer.com

*Counsel for Oakland County, Michigan*

## CERTIFICATE OF SERVICE

I, Joseph M. Fischer, hereby certify that the foregoing *Oakland County's First Request for Production of Documents and Interrogatories to Debtor* was served via email and overnight delivery on the following on the 11th day of April, 2014:

Ms. Heather Lennox
Jones Day
222 East 41st Street
New York, New York 10017
hlennox@jonesday.com

Mr. Bruce Bennett
Jones Day
555 South Flower Street
50th Floor
Los Angeles, California 90071
bbennett@jonesday.com

I hereby further certify that the foregoing was filed and served via the Court's electronic case filing and noticing system to all parties registered to receive electronic notices in this matter on this 11th day of April, 2014.

_/s/ Joseph M. Fischer_____

Joseph M. Fischer (P13452)