| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

**DEXIA'S FIRST SET OF INTERROGATORIES TO THE
CITY OF DETROIT IN CONNECTION WITH THE AMENDED
PLAN FOR THE ADJUSTMENT OF DEBTS**

Dexia Crédit Local and Dexia Holdings, Inc. (collectively, "Dexia") by their undersigned attorneys and pursuant to Rule 33 of the Federal Rules of Civil Procedure, made applicable to this matter by Rules 7033 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the *Third Amended Order Establishing Procedures, Deadline and Hearing Dates Relating to the Debtor's Plan of Adjustment* (together with any amendments thereto, the "Scheduling Order") [Dkt. No. 3632], hereby propound the following interrogatories ("Interrogatories") and request that they be answered, in writing and under oath, by the City of Detroit, Michigan (the "City") on or before April 25, 2014, in compliance with the deadline imposed by the Scheduling Order.

## INSTRUCTIONS

A. In accordance with the Bankruptcy Rules, your response shall set forth the Interrogatory and its answer, with each Interrogatory answered separately and fully in writing and under oath, unless it is objected to, in which event your reasons for objection shall be stated in lieu of an answer. The answers are to be signed by the parties making them, and the objections signed by the attorney making them.

B.  These Interrogatories are continuing in character, so as to require you to file supplementary answers if you obtain further or different information before trial.

C.  Unless otherwise indicated, these Interrogatories refer to matters in the above-captioned bankruptcy case and the Amended Plan for the Adjustment of Debts of the City of Detroit (as such may be further amended, supplemented, or modified).

D.  Each answer shall include (a) the identity of all documents on which you will or may rely at the Plan confirmation hearing with respect to the subject matter of the Interrogatory and (b) the identity of all persons on whose testimony you will or may rely at the Plan confirmation hearing with respect to the subject matter of the Interrogatory.

E.  Where knowledge or information in the possession, custody or control of a party is requested, such a request includes knowledge of the party's agents, servants, employees, representatives, and unless privileged, its attorneys.  The answer to each Interrogatory must include all knowledge within your possession, custody or control, and in the possession, custody or control of your agents, investigators, others acting on your behalf or under your direction or control, and others associated with you.

F.  Where an answer or a portion thereof is given upon information and belief rather than personal knowledge, please so state and describe and/or identify the sources of such information and belief.

G.  In accordance with Fed. R. Bankr. P. 7026, where a claim of privilege is asserted in objecting to any Interrogatory or part thereof, and information is not provided on the basis of such assertion:

1.  In asserting the privilege, the responding party shall, in the objection, identify with specificity the nature of the privilege that is being claimed;

2. The following information should be provided in the objection, if known or reasonably available, unless divulging such information would cause disclosure of the allegedly privileged information:

a. For oral communications: (i) the name of the person making the communication and the names of the person(s) present while the communication was made, and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of the communication; and (iii) the general subject matter of the communication;

b. For documents: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document, and, where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other.

H. No part of an interrogatory should be left unanswered merely because an objection is interposed to another part of the interrogatory. If partial or incomplete answer is provided, the responding party shall state the answer is partial or incomplete.

I. If and to the extent you decline to answer any Interrogatory upon any claim of privilege, please state with particularity the privilege(s) claimed and set forth all foundational facts upon which you base each claim of privilege.

J. If You elect to specify and produce documents in answer to any interrogatory, the specification shall be in sufficient detail to permit the interrogating party to locate and identify the documents from which the answer may be ascertained.

K.  If, in answering these interrogatories, You encounter any ambiguities when construing the questions, instructions, or definitions, Your answers shall set forth the matter deemed ambiguous and the construction used in answering.

L.  The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all." "Any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompasses both "and" and "or." Words in the masculine, feminine or neuter shall include each of the other genders.

## DEFINITIONS

As used in these Interrogatories, the meanings ascribed to the following terms are to be interpreted in accordance with the below definitions.

A.  All terms not otherwise defined herein shall have the meanings given to them in the Plan and Disclosure Statement.

B.  The term "communication" means the transmittal of information by any means.

C.  The term "concerning" means relating to, referring to, describing, evidencing, reflecting, embodying, or constituting.

D.  The term "documents" and "document" have the same full meaning as in Rule 34 of the Federal Rules of Civil Procedure and Rule 7034 of the Federal Rules of Bankruptcy Procedure and includes the original, any draft (whether disseminated or not) and any copy, regardless of origin or location, of any correspondence, letter, memorandum, electronic mail (e-mail), statement, summary, outline, contract, agreement, book, pamphlet, periodical, telegram, telecopy, telefax, wire, cable, record, study, report, schedule, diary, desk calendar, organizer, appointment book, photograph, reproduction, map, survey, drawing, chart, model, index, tape, data sheet or data processing card, computerized information, data base or disk (including

without limitation hard, soft, floppy, or compact), invoice, purchase order, ledger, journal, check (front and back), check stub, note, bond, assignment, transfer, account statement, tax report, tax schedule, financial statement, workpaper, business form, timesheet, log, inventory, print-out, computer tape and notes of meetings, conferences, conversations or telephone conversations and any and all other written, printed, telecopied, telefaxed, transcribed, punched, taped, stored, filmed and graphic matter, however produced or reproduced, and specifically includes any preliminary note, outline, or draft of any of the foregoing in your custody, possession, or control.

E. The term "including" means including, but not limited to.

F. The term "person" means any natural person, business, or legal or governmental entity or association.

G. "You" or "Your" means the parties to whom this request is directed, and shall include anyone acting on behalf of those parties, over whom the parties have control, or which is, or may be subrogated to the parties' interests, including, without limitation, any officer, agent, servant, employee, attorney, insurance company, investigator, independent adjusting company, or other person or entity.

H. The term "the City" means the City of Detroit, Michigan.

I. The term "Disclosure Statement" refers to the *Amended Disclosure Statement with Respect to Plan for the Adjustment of Debts of the City of Detroit* [Dkt. No. 3382], as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto.

J. The term "GRS" means the Detroit General Retirement System.

K. The term "PFRS" means the Detroit Police and Fire Retirement System.

L. The term "Pension and OPEB Solicitation Procedures Motion" refers to the

*Corrected Motion of the City of Detroit for Entry of an Order Establishing Supplemental Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment with Respect to Pension And OPEB Claims* [Dkt. No. 3943], as amended, supplemented, or modified from time to time, including all exhibits thereto.

M. The term "Future Benefits" means future benefits that were not accrued by Active Employees as of June 30, 2014.

N. The term "Plan" means the *Amended Plan for the Adjustment of Debts of the City of Detroit* [Dkt. No. 3380], as amended, supplemented, or modified from time to time, including any exhibits thereto and the Plan Supplement, which is incorporated by reference and made part of the Plan.

O. The term "UAAL" means the unfunded actuarial accrued liabilities associated with the GRS, the PFRS, or the City's OPEB Plans.

## INTERROGATORIES

### Pension

1. Describe how You calculated the amount of claims in classes 10 and 11 of the Plan (Pension Claims), including in Your answer any methods, assumptions, or bases used in making the calculation.

2. Describe how You calculated recovery percentages in classes 10 and 11 of the Plan (PFRS and GRS Pension Claims), including in Your answer any methods, assumptions, the schedule of payments that yield those recovery percentages, and the present value bases used in making the calculation.

3. Describe the assumptions and methods underlying Your calculation of the UAAL for GRS and PFRS (particularly the assumed rates of return on fund assets of 6.5% for

PFRS and 6.25% for GRS), including in Your answer any methods, assumptions, or bases used in making the calculation.

4. Describe the actual and assumed annual return on assets of PFRS and GRS for the period January 1, 1991 to the present.

5. Explain the change in claim amounts for classes 10 and 11 between the March 31, 2014 Disclosure Statement and the Pension and OPEB Solicitation Procedures Motion, including in Your answer any methods, assumptions, or bases used in making the calculation.

6. Explain what portion of Your UAAL calculation is attributable to each of: UAAL associated with accrued benefits as of the date of estimation, UAAL associated with Future Benefits, and of the Future Benefits, how much UAAL corresponds to future pay increases and how much corresponds to future service.

7. Explain what portion of the amount of Allowed Pension Claims is attributable to Future Benefits, rather than accrued benefits, including in Your answer any methods, assumptions, or bases used in making the calculation.

8. Describe the total value of all payments to be made to Active Employees under the PFRS Hybrid Pension Formula and the GRS Hybrid Pension Formula, including in Your answer any methods, assumptions, or bases used in making the calculation.

9. Describe the aggregate amount of Pension Claims and UAAL that will be satisfied by the payment of the Adjusted Pension Amount, including in Your answer any methods, assumptions, or bases used in making the calculation.

10. Describe the aggregate amount of Current Accrued Annual Pension and how You calculated the amount, including in Your answer any methods, assumptions, or bases used in making the calculation.

11. Describe the basis for Your calculation of proposed 6% to 14% reduction in current and monthly pension payments for PFRS beneficiaries and the proposed 26% to 34% reduction in current and monthly pension payments for GRS beneficiaries, including in Your answer any methods, assumptions, or bases used in making the calculation.

12. Describe the basis for Your statement in the Disclosure Statement that elimination of COLA will result in a loss of 18% of the value of PFRS benefits and 13% of GRS benefits, including in Your answer any methods, assumptions, or bases used in making the calculation.

13. Explain how You calculated the aggregate amount of Pension Claims and UAAL, if different, corresponding to frozen pension benefits, including in Your answer any methods, assumptions, or bases used in making the calculation.

14. Describe the aggregate amount of Pension Claims and UAAL that will be satisfied by the payment of the Adjusted Pension Amount, including in Your answer any methods, assumptions, or bases used in making the calculation.

15. Describe the basis for the reduction formulae for participants in the Annuity Savings Fund Accounts, including in Your answer any methods, assumptions, or bases used in making the calculation.

16. Describe the UAAL of PFRS and GRS in the event that they are required to disgorge proceeds received in connection with the COPs transactions and the estimated percentage recoveries for all unsecured claims in classes 7 through 14, assuming that a

disgorgement action is successful, including in Your answer any methods, assumptions, or bases used in making the calculation.

17. Explain how You will calculate the individual claim calculations for active employees and former employees for voting purposes (Pension and OPEB Solicitation Procedures Motion at 48−49), including in Your answer any methods, assumptions, or bases used in making the calculations and an example of an individual claim calculation.

18. Describe the impact that recoveries under the Plan will have on GRS and PFRS tax qualification status.

### **OPEB**

19. Describe the basis for Your calculation of OPEB Claims, including in Your answer any methods, assumptions, or bases used in making the calculation.

20. Explain Your proposed treatment of claims in class 12 of the Plan.

21. Describe the basis for all changes to OPEB benefits for retirees, including in Your answer any methods, assumptions, or bases used in making the calculation.

22. Explain whether Your calculation of OPEB Claims includes mitigation of OPEB claims through implementation of the Affordable Care Act and Your agreement to provide monthly stipends to certain retirees, including in Your answer any methods, assumptions, or bases used in making the calculation, and the legal basis for this conclusion.

23. Describe the range of values for the OPEB Claims amount and the recovery on the OPEB Claims that result if You use additional subsidies and stipends contemplated in the Plan to reduce the amount of the OPEB Claims, including in Your answer any methods, assumptions, or bases used in making the calculation.

Dated: April 11, 2014

By: /S/Deborah L. Fish
ALLARD & FISH, P.C.
Deborah L. Fish
2600 Buhl Building
535 Griswold
Detroit, MI 48226
Telephone: (313) 961-6141
Facsimile: (313) 961-6142

KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
Thomas Moers Mayer
Jonathan M. Wagner
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel to Dexia Crédit Local & Dexia Holdings, Inc.*

z:\13\079\plds\interrogatories.docx

- 10 -

13-53846-tjt    Doc 4035    Filed 04/11/14    Entered 04/11/14 16:48:34    Page 10 of 10