| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

## SYNCORA CAPITAL ASSURANCE INC. AND SYNCORA GUARANTEE INC.'S FIRST SET OF INTERROGATORIES TO THE CITY OF DETROIT

Pursuant to Federal Rules of Civil Procedure 26 and 33, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7026, 7033, and 9014 and the Second Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [Doc. No. 2755], Syncora Capital Assurance Inc. and Syncora Guarantee Inc. ("Syncora") serve this First Set of Interrogatories on the Debtor, the City of Detroit (the "City"). Each of the following interrogatories is continuing in nature, such that if the City obtains or discovers additional responsive information, the City's responses must be supplemented.

## INSTRUCTIONS

1. In responding to these Interrogatories, furnish all information available to you, including information in the possession of your attorneys, or their

investigators, and all persons acting on your behalf, and not merely such information known of your own personal knowledge.

2. If you find the meaning of any term in the Interrogatories to be unclear, you should assume a reasonable meaning, state what the assumed meaning is, and answer the Interrogatory on the basis of that assumed meaning.

3. If an Interrogatory cannot be answered in full, answer the Interrogatory to the extent possible and provide an explanation of why a complete answer cannot be provided, including an explanation of all steps taken to obtain the requested information.

4. If an Interrogatory is objected to, the reasons for the objection must be stated in lieu of an answer. In the event of an objection to a portion of an Interrogatory or an objection to the scope or allegedly burdensome nature of an Interrogatory, you are specifically requested to answer the remainder of the Interrogatory to the extent that there is no objection.

5. Each response shall include (a) the identity of all documents on which you will or may rely at the Plan of Adjustment confirmation hearing with respect to the subject matter of the Interrogatory and (b) the identity of all persons on whose testimony you will or may rely at the Plan confirmation hearing with respect to the subject matter of the Interrogatory.

6. With respect to any information withheld on a claim of attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, provide an express statement of the asserted privilege that includes the following information: (i) the applicable date; (ii) the identity of the author(s), including the business or legal title(s) or position(s); (iii) the identity of the recipient(s), including the business or legal title(s) or position(s); (iv) the subject matter of the information; (v) the identity of all other persons who received the information; and (vi) the specific factual basis of the claimed privilege or other protection from discovery.

7. The use of the singular form of a noun includes the plural form, and vice versa.

8. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope.

9. The terms "each," "any," and "all" shall be construed to mean "each and every."

10. These Interrogatories shall be deemed continuing in nature to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure made applicable to this proceeding by Rule 9014 of the Federal Rules of Bankruptcy

Procedure. Supplemental responses and document production are required if you, directly or indirectly, obtain further information after your initial responses.

11. Where any Interrogatory calls for monetary or numerical figures, specify in your answer how the figures were calculated and any documents relied upon to calculate the figures.

## **DEFINITIONS**

As used in these Interrogatories, the following terms are to be interpreted in accordance with these definitions:

1. The term "City" shall mean the City of Detroit, Michigan, as well as any of its past or present divisions, such as, but without limitation, the Detroit Arts Commission, and departments, officials, trustees, agents, affiliates, employees, attorneys, advisors, professionals, representatives, advisors, representatives, and all other persons acting or purporting to act on their behalf, including Kevyn D. Orr acting as Emergency Manager and any successors.

2. The term "communication(s)" includes every manner of transmitting or receiving facts, information, opinions, or thoughts from one person to another person, whether orally, by documents, writing, electronic mail, or copy thereof, and to words transmitted by telephone, radio, or any method of voice recording.

3. The term "Collection" shall mean the collection of over 60,000 works of art displayed or stored at the Detroit Institute of Arts museum located at 5200 Woodward Avenue, Detroit, Michigan 48202, and on-site and off-site storage facilities.

4. The term "DIA Corp." shall mean The Detroit Institute of Arts, a nonprofit corporation organized under the laws of the State of Michigan and any and all of its predecessors.

5. The term "DIA Assets" has the same meaning as in the Plan of Adjustment.

6. The phrase "Works of Art" means objects or pieces of art including, but not limited to, sculptures, furniture, prints, drawings, paintings, porcelain, ceramics, and decorative objects.

7. The term "Documents" and "Document" have the same full meaning as in Rule 34 of the Federal Rules of Civil Procedure and Rule 7034 of the Federal Rules of Bankruptcy Procedure and includes the original, any draft (whether disseminated or not) and any copy, regardless of origin or location, of any correspondence, letter, memorandum, electronic mail (e-mail), statement, summary, outline, contract, agreement, book, pamphlet, periodical, telegram, telecopy, telefax, wire, cable, record, study, report, schedule, diary, desk calendar,

organizer, appointment book, photograph, reproduction, map, survey, drawing, chart, model, index, tape, data sheet or data processing card, computerized information, data base or disk (including without limitation hard, soft, floppy, or compact), invoice, purchase order, ledger, journal, check (front and back), check stub, note, bond, assignment, transfer, account statement, tax report, tax schedule, financial statement, workpaper, business form, timesheet, log, inventory, print-out, computer tape and notes of meetings, conferences, conversations or telephone conversations and any and all other written, printed, telecopied, telefaxed, transcribed, punched, taped, stored, filmed and graphic matter, however produced or reproduced, and specifically includes any preliminary note, outline, or draft of any of the foregoing in your custody, possession, or control.

8. The term "Document 5.29.1.10.1" refers to Document 5.29.1.10.1 from the City's data room, which is entitled Diagnostic Synthesis Templates and dated October 1, 2010.

9. "Identify" shall mean: (i) when used with reference to a natural person, to state his or her full name, position, and business affiliation at the time referred to, last known position and business affiliation, and last known residence and business address;(ii) when used with reference to an entity, to state its full formal name, last known address(es), telephone number(s), and organizational

form (e.g., corporation, sole proprietorship, partnership, joint venture, etc.); and (iii) when used with reference to a document, to state the document's title or name, beginning and ending bates number, date, author, addressee, other recipients, type and general subject matter, current location, and custodian; (iv) when used with reference to a Work of Art, to state the title, artist, and accession number.

10. "Person" or "individual" means natural persons, corporations, firms, joint owners, associations, companies, partnerships, joint ventures, trusts, estates, agencies, departments or bureaus (governmental or private), and any other form of business, governmental, adjudicative, or judicial person or entity.

11. "You" or "Your" mean the parties to whom these Interrogatories are directed, and shall include anyone acting on behalf of those parties, over whom the parties have control, or which is, or may be subrogated to the parties' interests, including, without limitation, any officer, agent, servant, employee, attorney, insurance company, investigator, independent adjusting company, or other person or entity.

12. The term "OPEB Claim" has the meaning ascribed to it in the Plan of Adjustment.

13. The term "Retirement Systems" means the DGRS and the DPFRS.

7

13-53846-tjt    Doc 4036    Filed 04/11/14    Entered 04/11/14 16:48:44    Page 7 of 12

14. The term "DGRS" means the Detroit General Retirement System.

15. The term "DPFRS" means the Detroit Police and Fire Retirement System.

16. The term "Plan of Adjustment" means the City's Amended Plan for the Adjustment of Debts of the City of Detroit, filed on March 31, 2014 [Doc. No. 3380].

## **INTERROGATORIES**

1. Identify all Works of Art in the Collection that have been valued at $1 million or more.

2. Identify the 300 most valuable Works of Art in the Collection.

3. Identify all restrictions on alienability on the Works of Art identified in response to Interrogatory No. 2.

4. Identify all Works of Art in the Collection that were not purchased with City funds.

5. Identify all Works of Art that have been sold by the City or DIA Corp.

6. Identify all restrictions on alienability on the Works of Art identified in response to Interrogatory No. 5.

7. Identify the number of visitors, on an annual basis, at DIA Corp. from 1883 to the present.

8. Identify, on an annual basis, the funds that the City has provided to DIA Corp. from 1883 to the present.

9. Identify all communications between the City and third-parties relating to the monetization of the Collection.

10. Identify all of the non-Collection DIA Assets that the City holds title to.

11. Identify all of the Works of Art in the Collection that are currently on display to the public.

12. Identify all federal, state, or private funds that the City expects to receive in the next ten years.

13. Identify all judgments against the City under the Revised Judicature Act.

14. For all judgments identified in response to Interrogatory No. 13, describe how the City paid those judgments.

9

13-53846-tjt    Doc 4036    Filed 04/11/14    Entered 04/11/14 16:48:44    Page 9 of 12

15. Describe the enforcement remedies available to the City's pension-holders and/or the Retirement Systems had the City not filed for bankruptcy.

16. Identify all of the opportunities described in Document 5.29.1.10.1 that the City does not intend to implement.

17. Describe the methodology that the City utilized to forecast state revenue sharing payments.

18. Describe the basis for the City's determination of the aggregate allowed OPEB Claims ($3,184,900,000).

19. Identify any funds that the State of Michigan owes to the City.

20. For all funds identified in response to Interrogatory No. 19, describe any and all efforts by the City to collect those funds.

21. Identify the total amount of delinquent property taxes owed to the City.

22. Identify the total amount of delinquent income taxes owed to the City.

23. Identify the reasons for, and the documents supporting, the decrease in the City's property tax revenues from $182.7 million in 2011 to $147.8 million in 2012.

24. Identify each City asset whose actual or estimated value exceeds $2 million.

25. For each Interrogatory, identify every person who provided information and/or Documents that were utilized in preparing the response to that Interrogatory.

Dated: April 11, 2014        /s/ *Stephen C. Hackney*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Syncora Holdings Ltd., Syncora Guarantee Inc., and Syncora Capital Assurance Inc.*

- and -

David A. Agay
Joshua Gadharf
MCDONALD HOPKINS LLC
300 North LaSalle
Suite 2100
Chicago, Illinois 60654
Telephone: (312) 280-0111
Facsimile: (312) 280-8232

*Local Counsel to Syncora Holdings Ltd., Syncora Guarantee Inc., and Syncora Capital Assurance Inc.*