# UNITED STATES BANKRUPTCY COURT

Eastern District of Michigan

In re City of Detroit Michigan
Debtor

Case No. 13-53846

Chapter 9

*(Complete if issued in an adversary proceeding)*

_____
Plaintiff
v.
_____
Defendant

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: The Detroit Institute of Arts, 5200 Woodward Avenue, Detroit, MI 48202
*(Name of person to whom the subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **See Exhibit A**

| PLACE | DATE AND TIME |
|---|---|
| Jacob & Weingarten, P.C., 2301 W. Big Beaver Road, Suite 777 Troy, MI 48084 | April 25, 2014 at 5:00 P.M. |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: April 11, 2014

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                      *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
See Exhibit B _____, who issues or requests this subpoena, are:
Matthew G. Summers, Esq., Ballard Spahr LLP, 919 N. Market Street, 11th Floor, Wilmington, DE 19801 (302) 252-4465 and Attorneys Listed in Exhibit B

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# PROOF OF SERVICE
(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
 (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
 *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
 *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or
  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
 *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

...

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## INSTRUCTIONS

A.  Production shall be made as the records are kept in the usual course of business, or shall be organized and labeled to correspond with the categories of this request.

B.  If any documents are not available for production because they have been misplaced, discarded, or destroyed, identify which documents cannot be produced for these reasons, and state fully in writing the reasons that the documents are unavailable.

C.  If any document cannot be produced in full, it shall be produced to the maximum extent possible and the DIA Corp. shall specify in writing the reasons for its inability to produce the remainder.

D.  If any documents are available but are not produced because of an objection, including an objection based on privilege, identify such documents with particularity as to date, subject matter and the nature of the objection or privilege claim.

E.  If documents called for are not available to you because they are in the custody or in control of a third person, identify such documents and the third person in whose possession or control said documents are to be found.

F.  Produce original documents whenever such documents are available to you.

G.  Produce all documents available by virtue of being in possession of your attorneys or other agents.

H.  In accordance with Fed. R. Bankr. P. 7026, where a claim of privilege is asserted in objecting to any Document Request or part thereof, and production is not provided on the basis of such assertion:

1.  In asserting the privilege, the responding party shall, in the objection, identify with specificity, the nature of the privilege that is being claimed and the factual basis for

1

the assertion;

  2. The following information should be provided in the objection, if known or reasonably available, unless divulging such information would cause disclosure of the allegedly privileged information: (a) the type of document; (b) the general subject matter of the document; (c) the date of the document; and (d) such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document, and, where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other.

  I. The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all." "Any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompasses both "and" and "or." Words in the masculine, feminine or neuter shall include each of the other genders.

  J. Unless otherwise stated, the time period applicable to the Documents called for is from January 1, 1883, through the date of this document request, subject to the DIA's ongoing obligation to supplement its responses under the applicable rules.

## DEFINITIONS

As used in these Document Requests, the following terms are to be interpreted in accordance with these definitions:

  A. The term "City" means the City of Detroit, Michigan, the Emergency Manager, the Office of the Emergency Manager, the City Council and the Mayor, as well as any past or present divisions, departments, officials, trustees, agents, affiliates, employees, attorneys, advisors, professionals, representatives and advisors of the foregoing, and all other persons acting or purporting to act on their behalf.

2

B. The term "Christie's" shall mean Christie's Appraisals, Inc., and all affiliates or subsidiaries thereof that participated in the analysis, valuation, or appraisal of a part of the Collection conducted at the request of the City in 2013 or the preparation of the correspondence from Christie's dated December 3, 2013, addressed to Kevyn Orr.

C. The term "Collection" shall mean the collection of over 66,000 works of art displayed or stored at the Detroit Institute of Arts museum located at 5200 Woodward Avenue, Detroit, Michigan 48202 and on-site and off-site storage facilities.

D. The term "Collections Management Policy" shall mean the current Detroit Institute of Arts Collection Management Policy and all amendments or modifications thereto.

E. The term "Communication" means the transmittal of information by any means.

F "Concerning" means relating to, referring to, describing, evidencing, reflecting, embodying, or constituting.

G. The term "DIA Corp." shall mean The Detroit Institute of Arts, a nonprofit corporation organized under the laws of the State of Michigan.

H. The term "DMA" shall mean the Detroit Museum of Arts.

I. The term "Documents" and "Document" have the same full meaning as in Rule 34 of the Federal Rules of Civil Procedure and Rule 7034 of the Federal Rules of Bankruptcy Procedure and includes the original, any draft (whether disseminated or not) and any copy, regardless of origin or location, of any correspondence, letter, memorandum, electronic mail (e-mail), statement, summary, outline, contract, agreement, book, pamphlet, periodical, telegram, telecopy, telefax, wire, cable, record, study, report, schedule, diary, desk calendar, organizer, appointment book, photograph, reproduction, map, survey, drawing, chart, model, index, tape, data sheet or data processing card, computerized information, data base or disk (including

without limitation hard, soft, floppy, or compact), invoice, purchase order, ledger, journal, check (front and back), check stub, note, bond, assignment, transfer, account statement, tax report, tax schedule, financial statement, workpaper, business form, timesheet, log, inventory, print-out, computer tape and notes of meetings, conferences, conversations or telephone conversations and any and all other written, printed, telecopied, telefaxed, transcribed, punched, taped, stored, filmed and graphic matter, however produced or reproduced, and specifically includes any preliminary note, outline, or draft of any of the foregoing in your custody, possession, or control.

J. The term "Founders Society" shall mean the Detroit Museum of Arts Founders' Society and all successors in interest thereto.

K. The term "Major Works" shall means works of art in the Collection that are estimated to have an individual value of $1 million or more, for insurance purposes or otherwise, and regardless of whether such works were purchased with City, Founder's Society, or other donor money, or donated or bequeathed in-kind.

L. The term "Major Works List" shall mean any list of major works in the Collection maintained by the Museum or DIA Corp.'s Department of Registrar.

M. The term "Museum" shall mean the City owned museum known as the Detroit Institute of Arts.

N. The term "1997 Operating Agreement" means Operating Agreement for the Detroit Institute of Arts between the City and the DIA Corp. (formerly known as the Founders Society or the Founders Society Detroit Institute of Arts), City Contract No. 77009, initially approved on or about November 26, 1997, together with all exhibits, schedules, supplements, amendments, and modifications thereto.

O. "You" or "Your" means the parties to whom this request is directed, and shall

4

13-53846-tjt    Doc 4038    Filed 04/11/14    Entered 04/11/14 16:52:01    Page 7 of 16

include anyone acting on behalf of those parties, over whom the parties have control, or which is, or may be subrogated to the parties' interests, including, without limitation, any officer, agent, servant, employee, attorney, insurance company, investigator, independent adjusting company, or other person or entity.

## Document Requests

**REQUEST NO. 1:**

All Documents and Communications concerning those works of art in the Collection that may have been given an estimated value (or range of values) by the City or DIA Corp., for insurance purposes or otherwise, of $1 million or more.

**REQUEST NO. 2:**

All Documents concerning information pertaining to the Collection, including, without limitation, artist, medium, accession date, credit and provenance.

**REQUEST NO. 3:**

All Documents and Communications evidencing the conveyance(s) of the assets of the DMA to the City, pursuant to Michigan Public Act 67 of 1919 and section 7(c) of the Detroit City Charter of 1918, including, without limitation, all contracts, deeds, City Council minutes, and Art Commission records effecting, authorizing, ratifying, and/or describing such conveyance(s).

**REQUEST NO. 4:**

All Documents and Communications concerning the City's ownership interest in, and any restrictions on the transfer of, the Collection or any part of the Collection, including, without limitation, the part of the Collection that has not been appraised by Christie's.

5

**REQUEST NO. 5:**

All Documents and Communications concerning any restrictions placed by donor(s) on the Founder's Society, the DIA Corp., the City or the Museum with respect to the use, display, reproduction, sale, transfer, or disposition of the Major Works that became part of the Collection as the result of a donation, gift, or bequest.

**REQUEST NO. 6:**

All Documents and Communications concerning restrictions placed by the Founder's Society or the DIA Corp. on the City or the Museum with respect to each of the Major Works transferred to the City or the Museum by either the Founder's Society or the Museum.

**REQUEST NO. 7:**

The "bill of sale for all of the art collection of the Detroit Museum of Arts" that is described in the Report by Councilman Nagel at 1783, *Journal of the Common Council*, 18 November 1919, and which the Controller for the City of Detroit "filed . . . for record," as described in the Report by the Controller at 1885, *Journal of the Common Council*, 16 December 1919.

**REQUEST NO. 8:**

Minutes from the meeting of the DMA's Board of Trustees, dated September 12, 1919, any exhibits thereto, and all Documents described therein relating to the conveyance of the assets of the DMA or Founder's Society to the City pursuant to Section 20 of 1919 Public Act 67 (the "Conveyance"), including, but not limited to, contracts, deeds, City Council minutes, Art Commission records, and exhibits thereto.

**REQUEST NO. 9:**

All Documents and Communications concerning the DIA Settlement.

**REQUEST NO. 10:**

All Documents and Communications concerning the status of the DIA Settlement, including, without limitation, the status of (a) the Foundations' commitments, (b) the commitment by DIA Corp., (c) the City's efforts to obtain all necessary approvals, and (d) efforts to satisfy all conditions precedent to the Foundations' commitments, including the affirmation by County authorities of certain existing funding obligations with respect to DIA Corp and the approval of the DIA Settlement by the Attorney General for the State.

**REQUEST NO. 11:**

All Documents and Communications concerning the claims and issues to be resolved pursuant to the DIA Settlement.

**REQUEST NO. 12:**

All Documents and Communications concerning the strengths and weaknesses of the issues to be resolved pursuant to the DIA Settlement.

**REQUEST NO. 13:**

The 1997 Operating Agreement.

**REQUEST NO. 14:**

All Documents and Communications concerning the operational relationship between the City and DIA Corp. concerning the Museum or the Collection.

**REQUEST NO. 15:**

All Documents and Communications concerning the operational relationship between the City and the Founder's Society concerning the Museum or the Collection.

**REQUEST NO. 16:**

The annually prepared financial statements, whether audited or unaudited, for the DIA Corp.

**REQUEST NO. 17:**

The Collections Management Policy.

**REQUEST NO. 18:**

Each and every City, federal and state tax return filed by DIA Corp. from 1997 to present.

**REQUEST NO. 19:**

All inventories compiled and/or received by the City's Arts Commission, including any inventories compiled pursuant to section F(2)(4) of the 1997 Operating Agreement.

**REQUEST NO. 20:**

All Documents and Communications concerning the value of the Collection or any part thereof, including the following:

    a.    any and all insurance policies (including documentation of applicable coverage limits) currently held by the City, DMA, or DIA Corp. in connection the Collection (or any part thereof), including, without limitation, any and all insurance policies obtained by DIA Corp. pursuant to sections F(15)(a) and (b) of the 1997 Operating Agreement; and

    b.    all Documents and Communications concerning work performed on behalf of the City or DIA Corp. by Christie's, including the basis for the scope of Christie's appraisal of the Collection.

**REQUEST NO. 21:**

All Documents and Communications concerning the registration of any object or work of art in the Collection as being held in charitable trust.

8

**REQUEST NO. 22:**

All Documents and Communications evidencing the DIA Settlement, including, without limitation, all term sheets, the definitive documentation, and all drafts thereof.

**REQUEST NO. 23:**

All Documents and Communications concerning restrictions or limitations on the use, display, reproduction, sale, transfer, or disposition of each and every of object or work that is a part of the Collection as the result of a donation, gift, bequest, or otherwise, including, without limitation, restrictions or limitations on the use or disposition of each object or work that is part of the Collection imposed by the donor(s) or that otherwise exist.

**REQUEST NO. 24:**

All Documents concerning Communications between the City and anyone in the Michigan Attorney General's office concerning the Collection, the DIA Settlement, the Foundation Commitments, or the State Contribution.

**REQUEST NO. 25:**

All Documents and Communications concerning any valuation of the Museum Assets listed on Exhibit A to Exhibit I.A.79 of the Plan.

**REQUEST NO. 26:**

All Documents and Communications concerning audience, participation and/or visitor logs or surveys relating to the DIA.

**REQUEST NO. 27:**

All Documents and Communications concerning attendance at the DIA.

**REQUEST NO. 28:**

All Documents and Communications concerning membership of the DIA Corp.

**REQUEST NO. 29:**

All insurance policies relating to the Collection from 1997 to present.

**REQUEST NO. 30:**

All Documents in the electronic object files for each of the Major Works.

**REQUEST NO. 31:**

All Documents concerning works in the Collection donated or bequeathed by Tanahill or W. Hawkins Ferry including, without limitation, all Documents concerning restrictions or limitations on the use, display, reproduction, sale, transfer, or disposition of all works in the Collation donated or bequeathed by Tanahill or W. Hawkins Ferry.

**REQUEST NO. 32:**

All Documents concerning any prior valuation or appraisal of the Major Works, including any such valuations or appraisals performed by Christie's prior to the recent valuation of a part of the Collection performed by Christie's in 2013.

**REQUEST NO. 33:**

Report of Councilman Nagel in the Journal of the Common Council, dated November 18, 1919 (at or around page 1783), and any exhibits thereto or documents described therein relating to the Conveyance.

**REQUEST NO. 34:**

All inventories (and updates thereto) of the Collection compiled by the City, the DMA, or the DIA Corp., including, without limitation, all inventories compiled and/or submitted to Christie's.

**REQUEST NO. 35:**

Documents sufficient to identify which works or objects in the Collection are (a)

currently being displayed or exhibited and (b) which are not being displayed or exhibited (i.e., are in storage).

**REQUEST NO. 36:**

All Documents that the DIA Corp. has produced (or in the future produces) to any creditor or party in interest other than EEPK or FGIC in response to a discovery request propounded in connection with the City of Detroit's bankruptcy case including, without limitation, in response to the subpoena and document requests served by Syncora Guarantee, Syncora Capital Assurance, and the Official Committee of Retirees of the City of Detroit.

**REQUEST NO. 37:**

All Documents reviewed by and Communications from or to Graham Beal concerning the ownership of the Collection (or any part thereof), the Conveyance, the DIA Settlement, the Foundation Commitments, and/or the State Contribution, including the "documents, correspondence, and minutes that surround the 1919 transfer" reviewed by Graham Beal, as described in the March, 2014 DIA Corp. Newsletter.

**REQUEST NO. 38:**

All Documents and Communications concerning whether the Collection is held in charitable trust and/or is subject to the public trust doctrine, including the position paper identified in the City's Disclosure Statement that was commissioned by the DIA.

**REQUEST NO. 39:**

All Communications with anyone in the Michigan Attorney General's office concerning the Collection, the Conveyance, the DIA Settlement, the Foundation Commitments, or the State Contribution.

# EXHIBIT B

The identity of the creditors and parties in interest issuing the foregoing subpoena and their attorneys who have signed below:

/s/ Mark R. James
Ernest J. Essad Jr.
Mark R. James
WILLIAMS, WILLIAMS, RATTNER
& PLUNKETT, P.C.
280 North Old Woodward Avenue, Suite 300
Birmingham, Michigan 48009
Tel: (248) 642-0333
Fax: (248) 642-0856
Email: EJEssad@wwrplaw.com
Email: mrjames@wwrplaw.com

and

Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Tel: (713) 546-5000
Fax: (713) 224-9511
Email: alfredo.perez@weil.com

*Attorneys for Financial Guaranty Insurance Company*

/s/ Howard S. Sher
Howard S. Sher, Esquire (P38337)
Jacob & Weingarten, P.C.
Somerset Place
2301 W. Big Beaver Road, Suite 777
Troy, Michigan 48084
Tel: (248) 649-1200
Fax: (248) 649-2920
E-mail: howard@jacobweingarten.com

and

Vincent J. Marriott, III, Esquire
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Tel: (215) 864-8236
Fax: (215) 864-9762
E-mail: marriott@ballardspahr.com

*Attorneys for Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A., Erste Europäische Pfandbrief- und Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A.*

1

/s/ Rick L. Frimmer
Rick L. Frimmer
J. Mark Fisher
Michael W. Ott
SCHIFF HARDIN, LLP
233 S. Wacker Drive, Suite 6600
Chicago, Illinois 60606
Telephone: (312) 258-5600
Facsimile: (312) 258-5600
E-mail: rfrimmer@schiffhardin.com
E-mail: mfisher@schiffhardin.com
E-mail: mott@schiffhardin.com

*Attorneys for FMS Wertmanagement AöR*

/s/ Deborah L. Fish
ALLARD & FISH, P.C.
Deborah L. Fish
2600 Buhl Building
535 Griswold
Detroit, MI 48226
Telephone: (313) 961-6141
Facsimile: (313) 961-6142

KRAMER LEVIN NAFTALIS
& FRANKEL LLP
Thomas Moers Mayer
Jonathan M. Wagner
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel to Dexia Crédit Local & Dexia Holdings, Inc.*

2