**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | : | Case No. 13-53846 |
| Debtor. | : | Hon. Steven W. Rhodes |

**DWSD DISCOVERY PARTIES' FIRST SET OF JOINT INTERROGATORIES**
**TO DEBTOR THE CITY OF DETROIT, MICHIGAN**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure made applicable to this proceeding by Rule 7022 of the Federal Rules of Bankruptcy Procedure, National Public Finance Guarantee Corporation ("National"), Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance Inc. ("Assured"), and Berkshire Hathaway Assurance Corporation ("BHAC" and together with National and Assured, the "DWSD Discovery Parties"[1]), by and through their respective counsel, hereby request that Debtor, the City of Detroit, Michigan (the "City"), respond to each interrogatory herein (the "Interrogatories") on or before April 25, 2014 as set forth in the Third Amended Order Establishing

[1] The DWSD Discovery Parties jointly serve these Interrogatories in the interest of efficiency. National, Assured, and BHAC each reserve their rights to serve additional and/or separate discovery requests on the City.

Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [Docket No. 3632].

## DEFINITIONS

1. "Communication" means the transmittal of information, whether oral, written, video, audio, or electronic form and whether face to face, in a meeting, by telephone, by mail, by personal delivery, or otherwise, and includes the transmittal of information to or from third parties.

2. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents and things" in Federal Rule of Civil Procedure 34, including e-mail, electronic documents and files, and all forms of electronically-stored information. A draft or nonidentical copy or copy with marginalia of any kind is a separate document within the meaning of this term. The term Document includes all Communications that are not purely oral.

3. The term "Amended Disclosure Statement" refers to the Amended Disclosure Statement with Respect to Plan for the Adjustment of Debts of the City of Detroit dated March 31, 2014 [Docket No. 3382], and as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto. References made herein to particular pages of the Amended Disclosure Statement refer to the page numbers set forth in the e-filing legend on the docketed copy of the Amended Disclosure Statement.

4. The term “Amended Plan” refers to the Plan for the Adjustment of Debts of the City of Detroit dated March 31, 2014 [Docket No. 3380], and as may be amended, supplemented, or modified from time to time, including any exhibits thereto and the Plan Supplement, which is incorporated by reference and made part of the Amended Plan. References made herein to particular pages of the Amended Plan refer to the page numbers set forth in the e-filing legend on the docketed copy of the Amended Plan.

5. The term “Witness List” refers to the City’s List of Fact Witnesses Related to the Proposed Plan for the Adjustment of Debts [Docket No. 3918], and as may be amended, supplemented, or modified from time to time.

6. The terms “You” or the “City” mean the Debtor, the City of Detroit, Michigan, or any other persons or entities acting or purporting to act for or on its behalf or at its direction, including, but not limited to, Emergency Manager Kevyn D. Orr and his advisors.

7. The term “Systems” means either or both of the City’s Water System and the City’s Sewage Disposal System.

8. The term “DWSD Transaction” means any transaction encompassed by the defined term “DWSD Transaction” as used in the Amended Plan and Amended Disclosure Statement, as well as any other potential transaction involving a transfer of any of the functions or assets of the Systems, that is being,

or was, or will be, considered or proposed by the City or by any potential transferee of the functions or assets of the Systems or by any potential participant in such a transaction.

9. The term "GLWA" means the proposed Great Lakes Water Authority referred to in the Amended Plan (or as set forth in any proposal for such an authority made by any potential participant therein), or any transferee of the Systems by the DWSD, in whole or in part.

10. The term "DWSD RFI" means the City's Request for Information for Potential Operators of Detroit Water and Sewage Disposal Systems for Detroit Water and Sewerage Department, issued by the City of Detroit, Kevyn D. Orr, Emergency Manager (March 25, 2014).

11. The term "New DWSD Issuance" means any new sewage disposal system revenue bonds described in Emergency Manager Order No. 22 "Order Ratifying and Approving Resolution of the Board of Water Commissioners Authorizing Publication of Note of Intent to Issue Sewage Disposal System Revenue Bonds" issued by Emergency Manager Kevyn Orr on January 30, 2014.

12. The term "Underwriting RFP" means the "Request for Proposal for Underwriting Services" circulated by the Michigan Department of Treasury and Michigan Finance Authority on behalf of the City on March 12, 2014.

13. The term "DWSD Interrogatory Parties" means Assured, National Public Finance Guarantee Corporation, Berkshire Hathaway Assurance Corporation, the Water and Sewer Bond Trustee, and the Ad Hoc Bondholder Committee.[2]

14. Capitalized terms not defined herein shall have the meaning ascribed to them in the Amended Disclosure Statement and the Amended Plan.

## INSTRUCTIONS

1. Rules of Construction. The following rules of construction should be applied to these requests:

a. All/Each. The term "all" and "each" shall be construed as all and each.

b. Any. The term "any" means one or more.

c. And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this discovery request all responses that might otherwise be construed to be outside of its scope.

[2] The Ad Hoc Bondholder Committee members, Fidelity Management & Research Company, Eaton Vance Management, Franklin Advisers, Inc., Nuveen Asset Management, and Black Rock Asset Management, Inc., have stated that they, through various institutional funds they or their affiliates manage, hold Water/Sewer Bonds in the approximate aggregate principal amount of $1,362,225,000. *See* Docket No. 3815.

d. Concerning. The term "concerning" means discussing, describing, relating to, pertaining to, referring to, containing, analyzing, studying, reporting on, commenting on, evidencing, setting forth, considering, recommending or constituting, in whole or in part.

e. Including. The term "including" means including but not limited to.

f. Number. The use of the singular form of any word includes the plural and vice versa.

g. Gender. The masculine form of a noun or pronoun includes the feminine form and vice versa.

h. Parties/Persons. A party's or a person's full or abbreviated name or any pronoun referring to that party or person means that party or person (and any and all of them in the case of plural parties or persons), and any and all subsidiaries, affiliates, parents, predecessors, or successors, any or all divisions thereof, and any and all individuals, present and former officers, directors, representatives, agents, employees, general partners, attorneys, independent consultants or experts, investment bankers, or other persons acting or purporting to act on behalf of it or them, or which acted or purported to act on behalf of it or them.

2. Identification.

a. With Respect to Persons. When referring to a person, a request to "identify" means to give, to the extent known:

1) the person's full name;

2) the persons' present or last known home and business address (including street number, street name, city, state, and zip code) and present or last known telephone number; and

3) when referring to a natural person, additionally, the person's present or last known place of employment, the address and telephone number thereof, and the person's title or position

Once a person has been identified in accordance with this instruction, only the name of that person need be listed subsequently in response to any instruction which calls for the identification of that person.

b. With Respect to Documents. When referring to Documents, a request to "identify" means to give, to the extent known:

1) the type of document;

2) title and date of the document;

3) the author(s) of the document;

4) the addressee(s) and recipient(s) of the document; and

5) the document's general subject matter.

c. With Respect to Non-Written Communications. When referring to non-written Communications, a request to "identify" means to give, to the extent known:

1) to identify the person making the communication;

2) to identify the persons present while the communication was made or who otherwise had contemporaneous (e.g., electronic) access thereto;

3) to state the date and place of the communication; and

4) to describe the general subject matter of the communication.

d. With Respect to a Criminal or Civil Action or Other Legal Proceeding. When referring to a criminal or civil action or other legal proceeding, a request to "identify" means to give, to the extent known:

1) to identify the docket/case number;

2) to identify the court in which it is/was filed;

3) to identify all parties to the action;

4) to identify the date action was filed; and

5) to state disposition or current status if not completed.

3. Objections. Where an objection is made to any interrogatory or portion thereof, the objection shall state with specificity all grounds. No part of any interrogatory shall be left unanswered because an objection is made to any other part thereof.

4. Privilege. Where a claim of privilege (which term, as used herein, includes claims that material is protected from discovery under the attorney work-product doctrine or as trial preparation material) is asserted in objecting to any interrogatory or portion thereof, and a response is not provided (in whole or in part) on the basis of such assertion:

a. Specification of Privilege Claimed. The objection to the interrogatory or portion thereof shall identify the nature of the privilege which is being claimed.

b. Privilege List. The following information respecting the allegedly privileged material being withheld shall be provided in the objection or in an accompanying schedule, unless divulgence of such information would cause disclosure of the allegedly privileged information: (i) identify the allegedly privileged material; (ii) in the case of a document, where not apparent, state the relationship of the document's author(s) and its addressee(s)/recipient(s) to each other; (iii) in the case of a non-

written communication, where not otherwise apparent, state the relationship to each other of the persons who were present while the communication was made or who otherwise had contemporaneous (e.g., electronic) access thereto; and (iv) provide such other information as is necessary and sufficient to identify the document for a subpoena duces tecum in the case of a document, or in any event such other information as is necessary and sufficient to enable other parties to assess the applicability of the privilege being claimed, and/or to comply with the requirements of Rule 26(b)(5) of the Federal Rules of Civil Procedure.

5. No Limitations. No interrogatory or part thereof shall be construed as a limitation on any other interrogatory or part thereof.

6. Continuing Nature of Interrogatories. These interrogatories shall be deemed continuing in nature to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure.

## INTERROGATORIES

1. Describe with particularity any claimed economic, financial, accounting and legal bases for requiring the DWSD to prefund the majority of its "allocable share" of GRS UAAL over an accelerated 10-year period (as referenced on page 39 of the Amended Plan and page 24 of the Amended Disclosure

Statement), the anticipated amount of such prefunding, the anticipated source of funds for such prefunding and any possible effect of such prefunding on the DWSD Bonds, including without limitation any actuarial or other information used by the City to calculate the $675 million amount for such allocation referenced on page 39 of the Amended Plan and pages 37 and 47 of the Amended Disclosure Statement, an explanation of any economic, financial, accounting or legal basis for such prefunding, any economic, financial, accounting or legal basis for treating such prefunding as an operations and maintenance expense under the DWSD Bonds, and whether and to what extent such prefunding will or may impair the DWSD Bonds.

2. Describe with particularity the nature, derivation and basis of, and methodology used and underlying support and assumptions for, any projections by the City of required annual contributions to the GRS and the PFRS for the period January 1, 2012 through December 31, 2034.

3. With respect to the DWSD Current and Historical Financial Information attached to the Amended Disclosure Statement as Exhibit K, describe with particularity the nature, derivation and basis of, and methodology used and underlying support and assumptions for, the information set forth therein, including without limitation a description of any audit opinions and management letters relating thereto and the identification of any person(s) who participated in preparing such information or determining the methodology used therein.

4.  With respect to the DWSD Financial Projections attached to the Amended Disclosure Statement as Exhibit L, describe with particularity the nature, derivation and basis of, and methodology used and underlying support and assumptions for, the projections contained therein, including without limitation the identification of any person(s) who participated in preparing such projections or determining the methodology used therein.

5.  With respect to the statement on page 134 of the Amended Disclosure Statement that "[t]he City will only enter into a DWSD Transaction if it enables the City to make larger, more rapid or more certain distributions to at least some of its creditors as compared to distributions specified in the Amended Plan", describe with particularity the circumstances and metrics that will satisfy the referenced conditions for the City to enter into a DWSD Transaction, including without limitation the meaning and/or numerical quantification of the terms "larger", "more rapid", "more certain" and "some of its creditors" as they apply to the City's decision whether to enter into any DWSD Transaction.

6.  Describe with particularity all sets of terms and conditions regarding the establishment or operation of the GLWA that were set forth in any proposal, or otherwise made as part of any negotiation, by any potential participant in the GLWA (including without limitation Macomb, Oakland, Wayne, St. Clair, Genesee, Washtenaw, or Monroe Counties, the State of Michigan, or any other

County or entity (public or private)), any reason such proposal (or any portion thereof) was or may be rejected or modified by the City or any other potential GLWA participant, and how any such proposal (or any part thereof) may be incorporated as part of any DWSD Transaction.

7. Describe with particularity the factors that have, will or may influence the City's decision to proceed with a sale or privatization of the DWSD, as referenced in the Amended Plan, and the structure of such sale or privatization, including without limitation a detailed description of the terms and conditions of any property sales considered, the terms and conditions of any proposals received (including any response to the DWSD RFI), and an explanation of the benefits and risks of any such sale or privatization of the DWSD, including how any such sale or privatization will or may impact the holders or insurers of the DWSD Bonds.

8. Identify all persons involved in any negotiations concerning the proposed GLWA, any DWSD transaction, any sale or privatization of the DWSD, any New Existing Rate DWSD Bonds or new Existing Rate GLWA Bonds, the New DWSD Issuance, the DWSD RFI, the Underwriting RFP, or any restructuring of the Systems (including without limitation all persons and entities acting on behalf of, or as a consultant or advisor to, the City, any county, the State of Michigan, the DWSD or any other entity), specifying each such person's role with

respect to such negotiations, and the aspect(s) of the negotiations with which such person was involved.

9. With respect to any DWSD Transaction involving the proposed GLWA, describe with particularity the contemplated structure, operations and viability of the proposed GLWA, including without limitation a description of the assets to be transferred to the GLWA, the GLWA's projected revenues and expenses (including without limitation operations and maintenance expenses as that term is used in the applicable Bond Documents), the projected terms of any lease to which the GLWA will be a party (and the basis for such terms), and any material risks associated with such transaction (including without limitation, any risks to the holders of the GLWA Bonds), and the identification of any analyses supporting the amount of any lease payments to be made by the GLWA.

10. Describe with particularity the operations and maintenance expenses of the proposed GLWA that may be excluded from the liens of the holders of the New GLWA Bonds and New Existing Rate GLWA Bonds under the Amended Plan, including without limitation a detailed description of the amount and terms of any lease payment payable to the City's General Fund and any payment relating to DWSD's total allocable share of the City's liabilities under the COPs and OPEB liabilities, a detailed explanation of any economic, financial, accounting and legal bases for excluding such expenses from the liens of the holders of the New GLWA

Bonds and New Existing Rate GLWA Bonds, and a detailed description of how any such expenses differ from the operating and maintaining expenses described in the DWSD Bond Documents, including without limitation how such expenses are calculated and paid.

11. Describe with particularity the nature of and basis for the selection of any terms of the New Existing Rate DWSD Bonds and New Existing Rate GLWA Bonds that differ from the corresponding terms of the bonds they are replacing, as discussed on pages 57-60 of the Amended Disclosure Statement, and any reasons why the City believes that with such differing terms the new bonds are nevertheless the indubitable equivalent of the bonds they are replacing, including without limitation a detailed explanation of any changes to covenants, interest rates, collateral used to secure the bonds, prefunding requirements, call protections, maturity dates, operations and maintenance expenses as that term is used in the applicable Bond Documents, and identifying any reports and/or analyses relied upon in determining whether the new bonds are indubitably equivalent to the bonds they are replacing.

12. Describe with particularity the nature, terms and effect of the New DWSD Issuance on the Amended Plan, including without limitation a detailed explanation of the material terms and conditions of the New DWSD Issuance, any responses to the Underwriting RFP, the relationship of the DWSD Issuance to the

Amended Plan, the effect of the New DWSD Issuance on the financial status of the DWSD or GLWA, any risk of litigation over whether the New DWSD Issuance violates the terms of existing DWSD Bond Documents, and the risks that may result from the New DWSD Issuance, including the effect that the new issuance will have on the debt coverage ratios applicable to the DWSD Bonds.

13. With respect to the Interest Rate Reset Chart attached to the Amended Plan as Exhibit I.A.159, describe with particularity the methodology, basis and justification for how the chart and its contents were prepared, including without limitation a description of any consideration given to comparable municipal credits, any reasons why the City believes the interest rates reflected in the chart are appropriate and sufficient to permit confirmation of the Amended Plan, and the identification of any person(s) who participated in preparing the chart or determining the methodology used therein.

14. Describe with particularity the basis for, value of and risks associated with removing "call protections" from DWSD Bonds, as described on pages 58-59 of the Amended Disclosure Statement (which states in pertinent part that the New GLWA Bonds and New Existing Rate GLWA Bonds shall provide that the DWSD or GLWA, as appropriate, "may prepay or redeem all or any portion of the [corresponding new security] at any time at its option and without penalty or premium").

15. Describe with particularity the treatment under the Amended Plan of the Claims of Bond Insurers for principal and interest due under the applicable Bond Documents, whether by subrogation, assignment or otherwise, and the amount in which such Claims will be allowed under the Amended Plan.

16. Describe with particularity the treatment under the Amended Plan of the Claims of Bond Insurers for contractual reimbursement of charges, fees, costs, losses, liabilities and expenses incurred by the Bond Insurers in connection with their respective insurance policies, reimbursement agreements and applicable Bond Documents, and the amount in which such Claims will be allowed under the Amended Plan.

17. Identify any and all Liabilities that the City knows, suspects, or believes may exist against parties other than the City that would be released, exculpated and/or enjoined pursuant to the Amended Plan, the nature and value of such claims, the reasons why such claims are proposed to be released, exculpated and/or enjoined under the Amended Plan, and the identification of any persons who requested or suggested to the City that such claims be released, exculpated and/or enjoined pursuant to the Amended Plan.

18. Describe with particularity how the City meets or expects to meet the requirements to participate in state revenue sharing.

19. State any and all facts that support Your contention that the City can satisfy the requirements for confirmation of the Amended Plan under 11 U.S.C. § 1129 as incorporated into Chapter 9 of the Bankruptcy Code.

20. State any and all facts that support Your contention that the City can satisfy the requirements for confirmation of the Amended Plan under 11 U.S.C. § 943(b).

21. Identify every person named in the Witness List who may testify with respect to any matters involving the DWSD, or any of the matters raised in these Interrogatories, at the Confirmation Hearing or at any other hearing related or ancillary to confirmation of the Amended Plan, specifying the matters to which each such person may testify.

22. For each Interrogatory above, separately identify all Documents relied upon in preparing, and any studies, analyses or reports otherwise relating to, Your response.

23. Identify every person who participated in preparing the responses to each of these Interrogatories and each of the interrogatories served by any of the DWSD Interrogatory Parties.

Dated: April 11, 2014

By: */s/ Paul R. Hage*

Louis P. Rochkind (P24121)
Paul R. Hage (P70460)
JAFFE RAITT HEUER & WEISS, P.C.
27777 Franklin Road, Suite 2500
Southfield, MI 48034-8214
Telephone: (248) 351-3000
lrochkind@jaffelaw.com
phage@jaffelaw.com

James F. Bendernagel, Jr.
Guy S. Neal
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8041
jbendernagel@sidley.com
gneal@sidley.com

Jeffrey E. Bjork
Gabriel MacConaill
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
jbjork@sidley.com
gmacconaill@sidley.com

*Counsel for National Public Finance Guarantee Corp.*

Lawrence A. Larose
Samuel S. Kohn
Eric Daucher
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY 10012
Telephone: (212) 408-5100
llarose@chadbourne.com
skohn@chadbounrne.com
edaucher@chadbourne.com

*Counsel for Assured Guaranty Municipal Corp.*

My Chi To, Esq.
DEBEVOISE & PLIMPTON, LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-7435
Fax: (212) 521-7425

*Counsel for Berkshire Hathaway Assurance Corporation*