# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | : Chapter 9 |
| | : |
| CITY OF DETROIT, MICHIGAN, | : Case No. 13-53846 |
| | : |
| Debtor. | : Hon. Steven W. Rhodes |
| | : |

## DWSD DISCOVERY PARTIES' FIRST SET OF JOINT REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO DEBTOR THE CITY OF DETROIT, MICHIGAN

National Public Finance Guarantee Corporation ("National"), Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance Inc. ("Assured"), and Berkshire Hathaway Assurance Corporation ("BHAC" and together with National and Assured, the "DWSD Discovery Parties"[1]), by and through their respective counsel, in accordance with Federal Rules of Civil Procedure 26 and 34, made applicable herein through Federal Rules of Bankruptcy Procedure 7026, 7034 and 9014, and the Third Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [ECF No. 3632] (the "Scheduling Order"), hereby serve their First

---

[1] The DWSD Discovery Parties jointly serve this Request for Production in the interest of efficiency. National, Assured, and BHAC each reserve their rights to serve additional and/or separate discovery requests on the City.

Request for Production of Documents ("Request for Production" or "Request") on

Debtor the City of Detroit, Michigan (the "City").

The DWSD Discovery Parties request that on or before April 25, 2014, or as

ordered by the Court, the City of Detroit respond to this Request and produce the

documents and things specified for inspection, examination, and copying at the

offices of the DWSD Discovery Parties as specified in the signature blocks of this

document, or at such other place as the parties may mutually agree.

## DEFINITIONS

1.    "Document" is defined to be synonymous in meaning and equal in

scope to the usage of the term "documents and things" in Federal Rule of Civil

Procedure 34, including e-mail, electronic documents and files, and all forms of

electronically-stored information ("ESI").  A draft or nonidentical copy or copy

with marginalia of any kind is a separate document within the meaning of this

term.  The term Document includes all Communications that are not purely oral.

2.    "Communication" means the transmittal of information, whether oral,

written, video, audio, or electronic form and whether face to face, in a meeting, by

telephone, by mail, by personal delivery, or otherwise, and includes the transmittal

of information to or from third parties.

3.    The term "Disclosure Statement" refers to the Amended Disclosure Statement with Respect to the Amended Plan for the Adjustment of Debts of the City of Detroit [ECF No. 3382], and as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto.

4.    The term "Plan" refers to the Amended Plan for the Adjustment of Debts of the City of Detroit [ECF No. 3380], and  as may be amended, supplemented, or modified from time to time, including any exhibits thereto and the Plan Supplement, which is incorporated by reference and made part of the Plan.

5.    The term "Ten-Year Financial Projections" means the Ten-Year Financial Projections attached as Exhibit J to the Disclosure Statement, and as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto.

6.    The terms "You" or the "City" mean the Debtor, the City of Detroit, Michigan, or any other persons or entities acting or purporting to act for or on its behalf or at its direction, including, but not limited to, Emergency Manager Kevyn Orr and his advisors.

7.    The term "Systems" means either or both of the City's Water System and the City's Sewage Disposal System.

8.     The term "DWSD Transaction" means any transaction encompassed by the defined term "DWSD Transaction" as used in the Plan and Disclosure Statement, as well as any other potential transaction involving a transfer of any of the functions or assets of the Systems, that is being, or was, or will be, considered or proposed by the City or by any potential transferee of the functions or assets of the Systems or by any potential participant in such a transaction.

9.     The term "GLWA" means the proposed Great Lakes Water Authority referred to in the Plan (or as set forth in any proposal for such an authority made by any potential participant therein), or any transferee of the functions or assets of the Systems, in whole or in part.

10.     The term "Underwriting RFP" means the "Request for Proposal for Underwriting Services" circulated by the Michigan Department of Treasury and Michigan Finance Authority on behalf of the City on March 12, 2014.

11.     The term "DWSD RFI" means the City's Request for Information for Potential Operators of Detroit Water and Sewage Disposal Systems for Detroit Water and Sewerage Department, issued by the City of Detroit, Kevyn D. Orr, Emergency Manager (March 25, 2014).

12.    The term "New DWSD Issuance" means any new sewage disposal system revenue bonds referenced in Emergency Manager Order No. 22 "Order Ratifying and Approving Resolution of the Board of Water Commissioners Authorizing Publication of Note of Intent to Issue Sewage Disposal System Revenue Bonds" issued by Emergency Manager Kevyn D. Orr on January 30, 2014.

13.    The terms "concerning," "relating to," and "referring to" are synonymous for the purposes of these Requests, and mean reflecting, describing, evidencing, constituting, containing, alluding to, germane to, mentioning, analyzing, setting forth, summarizing, characterizing, contradicting, incorporating, affecting, including or otherwise pertaining—either directly or indirectly—to the subject matter of the inquiry.

14.    The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

15.    The terms "including," "include" or "includes" mean "including, but not limited to." The terms "each," "any," and "all" shall be construed to mean "each and every."

16.    The use of the singular form of a noun includes the plural form, and vice versa.

17.     Capitalized terms not defined herein shall have the meaning ascribed to them in the Disclosure Statement and the Plan.

## INSTRUCTIONS

1.     Each Request extends to all Documents in the City's possession, custody, or control or in the possession, custody, or control of anyone acting on the City's behalf or at the City's direction.  A Document is to be deemed in the City's possession, custody, or control if it is in the City's physical custody, or if it is in the physical custody of any person and the City (i) owns such Document in whole or in part; (ii) has a right, by contract, statute, ordinance, resolution or otherwise to use, inspect, examine, or copy such Document on any terms; (iii) has an understanding, express or implied, that the City may use, inspect, examine, or copy such Document on any terms; or (iv) has, as a practical matter, been able to use, inspect, examine or copy such Document when the City sought to do so.

2.     The response to each Request shall state, with respect to each item or category, that production will be made or inspection will be permitted as requested, unless there is a reasonable and good faith objection to the Request, in which event the reason(s) for objection shall be stated.  If an objection is made to part of a Request, the part shall be specified; Documents responsive to the remainder of the Request shall be produced.  Any such objection shall not extend the time for the City to respond to any other Request.

6

3. If the location of any requested Document is known but the Document is not produced on the ground that the Document is not in the City's possession, custody, or control, the City shall identify the Document and identify the person believed to have possession, custody, or control of the Document.

4. The response shall expressly indicate if there are no responsive Documents.

5. All Documents shall be produced in their entirety without redaction and shall include all attachments and enclosures. The response shall specify whether the Documents (or particular portions thereof) are being produced in the manner they are kept in the usual course of business or organized and labeled to correspond with the Requests. Documents shall be produced in accordance with the Technical Instructions for Producing Requested Documents appended hereto.

6. With respect to any Documents withheld on a claim of attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection, the response shall provide, for each such Document withheld, an express statement of the asserted privilege that includes the following information: (i) the applicable date; (ii) the identity of the author(s), including their business or legal title(s) or position(s); (iii) the identity of the recipient(s), including their business or legal title(s) or position(s); the subject matter of the

Document; (iv) the identity of all other persons who received copies; (iv) the specific factual basis of the claimed privilege or other protection from discovery; and (v) any other information that may be necessary to enable other parties to assess the claim of attorney-client privilege, attorney work product doctrine, or any other claimed privilege or protection as per Rule 26(b)(6) of the Federal Rules of Civil Procedure.

7.      These Requests shall be deemed continuing in nature to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure.

## DOCUMENT REQUESTS

1.      All Documents that You have reviewed, identified, or relied upon in answering any of the DWSD Discovery Parties' Interrogatories.

2.      All Documents produced and interrogatory responses served by the City to any parties in interest, pursuant to any written discovery requests served pursuant to the Scheduling Order.

3.      All audited financial statements including audit opinions and management letters for the Systems for fiscal years 2009 through 2013 and year-to-date for Fiscal Year 2014, including all Documents relating to any disputes with, or material issues raised by, such Systems' accountants or auditors with respect to operations of such Systems, including any significant issues regarding internal controls.

4. All financial statements and supporting schedules for the Systems for fiscal years 2009 through 2013 and year-to-date for Fiscal Year 2014, including:

  a. Financial statements with restricted assets and equity components broken out;

  b. Income statements, including comparisons to budget;

  c. Historical statements of cash flows;

  d. Notes to financial statements;

  e. Balance sheets (actual);

  f. Detailed trial balances;

  g. Aged accounts receivable;

  h. Aged accounts payable; and

  i. Allowances for doubtful accounts and write-offs of bad debts.

5. All Documents reflecting the historical allocation of pension and OPEB expenses and liabilities to the Systems and to the City from January 1, 2009 to the present, including the actual pension contributions and OPEB cash flows for the Systems and the City.

6. All actuarial reports for the GRS pension plans and OPEB from January 1, 2009 to the present.

7. All bank statements for the Systems from January 1, 2009 to the present.

8.      Documents sufficient to show contracts involving the Systems and any third party or vendor under which the City's total payments are equal to or exceed $5 million.

9.      Documents sufficient to show professional, consulting, advisory or other related fees and expenses, broken out by provider and amount, that have been or are expected to be charged to the Systems in connection with the City's chapter 9 bankruptcy proceeding.

10.     All Documents, including those concerning any related support and assumptions, for the Systems relating to the City's Ten-Year Financial Projections (through Fiscal Year 2023), including:

a.      The financial impact, timing and other matters relating to the potential departure of any municipal entity;

b.      Any planned, proposed or projected rate determinations;

c.      Any planned, proposed or projected Capital Improvement Projects and the proposed source of funding for any such projects;

d.      Any planned or projected financing difficulties;

e.      Any planned or projected changes in borrowing costs, and the resulting impact;

f.      Any planned or projected collection issues;

g.      Growth rates relevant to income tax revenue projections;

10

h.  The cost of services for the Systems;

i.  Historical collection rates and amounts for customers by class; and

j.  Administrative and operational expenses.

11.  All Documents relating to rate-setting computations for both wholesale and retail rates for the Systems from January 1, 2009 to the present, including rate calculations or support for any rate increases, agreements and negotiations regarding rate setting and any reconciliation(s) with anticipated capital needs.

12.  All Documents relating to the proposed DWSD "rate stability program" for City residents to enhance affordability of retail rates as described on page 48 of the Plan.

13.  All Documents relating to any anticipated bond issues or financing on behalf of the Systems, including financial analysis, cash flow projections, structuring detail, credit enhancement provided, financing team contact information, timeline of issuance and estimated interest rates.

14.     All Documents relating to the GLWA, or any DWSD Transaction referenced in the Disclosure Statement, or to any previously proposed DWSD Transaction referenced in earlier version(s) of the Disclosure Statement, including all Documents related to:

    a.    Communications with Macomb, Oakland, Wayne, St. Clair, Genesee, Washtenaw, or Monroe Counties, the State of Michigan, or any other County or entity (public or private), including Documents reflecting any meetings or negotiations with the above entities, or that were provided to or received from such entities;

    b.    A potential public-private partnership as an alternative to any DWSD Transaction, including all Communications regarding the DWSD RFI;

    c.    Any pro forma financial statements of GLWA;

    d.    Any analysis of the economic gains/losses expected to be achieved/incurred, including any pro forma projection of any changes to bond debt service relating to the Systems;

    e.    All rate studies, including rate study comparisons with other systems;

f.    Sizing of and analytical support for any lease payments or proposed lease payments to be made by GLWA, including the determination and calculation of such lease payments;

g.    Communications regarding any lease payments or proposed lease payments to be made by GLWA;

h.    The stretch-out reduction in the DWSD's labor force from approximately 1,700 to 1,000 through 2012, including the potential impact on wholesale contract renewals;

i.    Any feasibility assessments of GLWA;

j.    The benefits or burdens of entering any DWSD Transaction, including any studies, analyses or reports;

k.    The consideration of or decision about whether to enter any DWSD Transaction;

l.    The consideration of or decision about how to structure the GLWA or any DWSD Transaction;

m.    Any Payment in Lieu of Taxes (PILOT) programs;

n.    Any requests for proposal regarding financing for the Systems;

o.    The fees, expenses and costs of all professionals incurred or that will be incurred in connection with any DWSD Transaction; and

p.    Any analysis of projected or anticipated cost savings.

13

15.     All Documents relating to the impact of any DWSD Transaction on the value of the DWSD Bonds or the insurers of such bonds.

16.     All Documents relating to the $675,000,000[2] in "pension-related payments" to be received by the City from the Systems if the Debtor does not enter into any DWSD Transaction, including all Documents relating to: (i) whether the Systems will have the cash flow to make such payments; (ii) the allocation of such amounts to the Systems; (iii) any prefunding or acceleration of the Systems' payment of such amounts; and (iv) the pro forma impact on rates and the potential impact of higher rates on wholesale contract renewals.

17.     All Documents relating to the calculation of the projected pension and OPEB expenses for the Systems, including:

    a.      Projection of pension and OPEB liabilities, assets, expenses and cash flows for the Systems;

    b.      If the pension and OPEB expenses are allocated from the City's pension and OPEB expenses, the basis for such allocation;

    c.      Actuarial assumptions and methods employed in the projection of pension expenses, including expected asset returns, asset

---

[2] Note that this number excludes the $24.3 million payment projected for Fiscal Year 2014, and with this amount included, the correct number is $699.3 million. *See* Exhibit L to the Disclosure Statement at 189.

smoothing methods, unfunded liability amortization methods, future payroll growth, and new hire assumptions;

d.   Plan provisions reflected in the pension and OPEB projection, both for the legacy benefits (for example, if any benefit reduction is assumed) and for ongoing accrual (for example, the DB or DC formula for current employees and new hires);

e.   The amount of pension assets and liabilities allocated to the Systems from the GRS and a description of the methodology used in such allocation; and

f.   The latest pension and OPEB actuarial valuation census data (both active employees and retirees) for the Systems.

18.   All Documents relating to the City's consideration of a private party purchase, public-private partnership, lease or operation and management of the Systems, including information provided to potential purchasers or investors.

19.   All Documents relating to the DWSD RFI, including all responses thereto.

20.   All Documents relating to proposals, analyses, studies or reports related to the restructuring of the Systems, whether implemented, considered or proposed, including the costs of such restructuring and any actual or projected savings.

21.     All Documents relating to any pending, proposed or contemplated legislation or regulations relating to the Plan.

22.     All Documents relating to any credit analysis relating to the Systems following the City's emergence from chapter 9, including any analysis performed by the City, the City's financial advisors, the City's investment bankers, any rating agency or any other third party.

23.     Documents sufficient to show the City's credit rating(s) for the DWSD Bonds from January 1, 2005 to the present.

24.     All Documents relating to any criminal or regulatory investigation or proceedings, or threatened proceedings, pertaining to the operations of the Systems or the GRS.

25.     Documents sufficient to show formal or informal complaints or inquiries by governmental agencies, including environmental protection agencies, regarding environmental concerns from January 1, 2009 to the present and the estimated or actual costs of addressing any such concerns.

26.     Documents sufficient to show any hardship exemptions for the Systems provided by any environmental protection agency, and for each such exemption, all Documents relating to:   (i) financial capability analysis to the exemption; (ii) the material operating expenses and capital expenditures to be

incurred with the exemptions; and (iii) the material operating expenses and capital expenditures to be incurred with the exemptions.

27.    All Documents relating to any inquiry, formal or informal, by the Internal Revenue Service, the Environmental Protection Agency, the Michigan Department of Environmental Quality, the Securities and Exchange Commission, the Department of Justice or the Federal Bureau of Investigation or any other governmental authority, federal or state, with respect to any bonds, notes or other securities issued by or on behalf of the City with respect to the Systems, including the estimated costs to remediate any identified issues.

28.    All Documents relating to the New DWSD Bonds, the New DWSD Revolving Bonds, the New Existing Rate DWSD Bonds, the New Existing Rate GLWA Bonds, the New GLWA Bonds, the New GLWA Revolving Bonds, and any other bond relating to the Systems proposed or otherwise referenced in the Plan, including all Documents relating to:

      a.    The determination and calculation of interest rates set forth in the Interest Rate Reset Chart attached as Exhibit I.A.159 to the Disclosure Statement, including the basis for changes made to the rates referenced in the corresponding exhibit in earlier versions of the Disclosure Statement;

b.     The City's proposed modification or elimination of the "no-call" provisions in the DWSD Water and Sewer Bonds;

c.     The City's proposed amendment of the definition of "operations and maintenance expenses" to include, inter alia, the amount of any lease payment payable to the City's General Fund;

d.     Procuring or obtaining any public ratings for such bonds;

e.     Whether "holders of New Securities may encounter limited market acceptance of City credit upon any attempt to sell City debt obligations, making sales at or near par potentially difficult" as stated in the Disclosure Statement;

f.     The tax exempt status of interest payments on such bonds; and

g.     Procuring or obtaining municipal bond insurance for such bonds.

29.     All Documents relating to the impact of the New DWSD Bonds, the New Existing Rate DWSD Bonds, the New Existing Rate GLWA Bonds, the New GLWA Bonds, the New GLWA Revolving Bonds, and any other bond relating to the Systems proposed or otherwise referenced in the Plan on the value of the DWSD Bonds or the insurers of such bonds.

30.     The Minutes of all meetings of the Systems' governing body from January 1, 2009 to the present.

31.     Documents sufficient to show the Systems' property, plants and equipment (including an inventory of spare parts and supplies), as well as other assets, and any valuation assessment or appraisal for such assets from January 1, 2009 to the present.

32.     Any insurance policies for the benefit of the Systems.

33.     Documents sufficient to show, by project or program, administrative, operational or any other expenses for maintenance programs, deferred maintenance programs, emergency maintenance projects, and capital expenditure programs, for the Systems from January 1, 2009 to the present.

34.     Documents sufficient to show construction projects that are in progress, including work to be performed and cost estimates for completing each project.

35.     All Documents relating to any analyses or assessments of necessary or appropriate capital expenditures or improvements for the Systems made by the City, the DWSD, any county (including Macomb, Oakland, Wayne, St. Clair, Genesee, Washtenaw, or Monroe Counties), any wholesale customers or any consultant or representative acting on behalf of any aforementioned entity or customer.

36.     All Documents reflecting any assessment of the Capital Expenditure needs of the Systems that are more current than DWSD's 10-year CIP (Capital Improvement Program) dated September 24, 2013.

37.     Documents sufficient to show historical and current days sales outstanding, including accounts receivable historical aging schedules for the Systems.

38.     Documents sufficient to show historical and current bad debt expense as a percent of gross accounts receivable for the Systems.

39.     Documents sufficient to show the City and/or DWSD's historical and current process of billing and collecting for the Systems.

40.     Documents sufficient to show the average and median bills for the Systems by customer rate class, including customer rate classes for the City and for each of the surrounding areas where the Systems provide services.

41.     Documents sufficient to show the number of customer accounts for the Systems by customer class for Fiscal Years 2009 through 2013 and any projection prepared by the City or the Systems for Fiscal Years 2014 through 2023.

42.     The most recent cost of services study done for the City regarding the Systems.

43.    Documents that refer to the prospect of any wholesale or retail customers or groups of customers discontinuing use of the Systems so as to lead to a material decrease in the Systems' gross revenue.

44.    Documents sufficient to show any anticipated capital expenditures for the Systems to be funded after Fiscal Year 2024.

45.    Documents sufficient to show amounts held in the Operation and Maintenance Fund and the Construction Fund for the Systems.

46.    Documents sufficient to show any accounts of the Systems not controlled by the Water and Sewer Bond Trustee and the balances in such accounts, reflecting the cash in and out of the accounts, from the Petition Date to present.

47.    All Documents reflecting opinions, assessments, studies or reports reflecting current and projected optimal employee headcounts for the Systems.

48.    Documents sufficient to show the schedules of full-time employees of the Systems by specific titles and roles, age, years of service, salaries, and expected year of retirement for Fiscal Years 2009 through 2013 and year-to-date for Fiscal Year 2014.

49.    All Documents reflecting any valuation, assessment or estimate of, or opinion concerning, the capacity or condition of any treatment plant, pump station, pipeline, or any other Systems asset.

50.     All Documents relating to employment terms for employees of the Systems in the event of any DWSD Transaction referenced in the Disclosure Statement, including severance policies and Communications with union or other labor representatives for employees of the Systems.

51.     All Documents relating to any labor relations assessment concerning the DWSD.

52.     All Documents evincing or referring to the practice of providing advantageous working conditions or requiring unnecessary work (sometimes referred to "feather-bedding") within the DWSD, or labor optimization for the DWSD, and any and all opinions, assessments, studies or reports analyzing such issues or reflecting any proposed solutions to such issues.

53.     All consultant reports for the Systems for the last 10 years.

54.     Charts or other Documents showing, or sufficient to show, the current organizational structure of the Systems, and the names and positions of key employees, and any proposed changes to occur upon the Effective Date of the Plan.

55.     All Documents relating to the New DWSD Issuance.

56.     All Documents relating to the Underwriting RFP, including all responses thereto.

57.     All Documents that the City intends to or may use as exhibits or evidence or for any purpose at the Confirmation Hearing or at any other hearing

related or ancillary to confirmation of the Plan, including without limitation hearings related to the approval of the Disclosure Statement.

58.     All Documents that the City has provided or intends to provide to or has received from any witness that it may call to testify at the Confirmation Hearing or at any other hearing related or ancillary to confirmation of the Plan.

59.     All Documents, including reports, models, data compilations, retainer agreements, invoices and curriculum vitae, which have been provided to, reviewed by, or prepared by or for any expert witnesses for purposes related to the Plan.

60.     All Documents, including drafts, referenced in the Disclosure Statement or Plan, including the following missing exhibits from the Disclosure Statement: Exhibit I.A.80; Exhibit I.A.127; Exhibit I.A.148.a; Exhibit I.A.172; Exhibit I.A.173; Exhibit I.A.175; Exhibit I.A.177; Exhibit I.A.180; Exhibit I.A.182; Exhibit I.A.202.a; Exhibit I.A.208; Exhibit I.A.210; Exhibit I.A.211; Exhibit I.A.255; Exhibit II.B.3.t.ii.A; Exhibit II.B.3.u.ii.A; Exhibit II.D.5; Exhibit II.D.6; and Exhibit III.D.2.

61.     All Documents that support or relate to the City's contention, if it so contends, that it can satisfy its burden under 11 U.S.C. § 1129(a) as incorporated into Chapter 9 of the Bankruptcy Code.

62.     All Documents that support or relate to the City's contention, if it so contends, that it can satisfy the requirements under 11 U.S.C. § 943(b).

63. All Documents concerning the impact on the feasibility of the Plan and creditor recoveries under the Plan in the event the full amounts of the State GRS Consideration and/or the State PFRS Consideration are not received.

64. All Documents relating to the treatment of Claims of Bond Insurers, including Documents relating to: (i) claims for principal and interest due under the applicable bond documents, whether by subrogation, assignment or otherwise; and (ii) direct claims for contractual reimbursement of charges, fees, costs, losses, liabilities and expenses incurred by the Bond Insurers in connection with their respective insurance policies, reimbursement agreements and applicable bond documents.

65. All Documents constituting or reflecting Communications that relate to the preparation or drafting of and/or content contained in the Disclosure Statement or Plan.

66. All Documents constituting or reflecting Communications with City Officials that relate to the preparation or drafting of and/or content contained in the Disclosure Statement or Plan.

67. All Documents that relate to any settlements referenced in the Disclosure Statement or Plan.

68. All Documents that relate to any settlement, other than those referenced in the Disclosure Statement or Plan, that the City may enter prior to the

confirmation of the Plan or as part of the Plan, including any analyses and projections of potential recovery by or against the City, and the City's estimated legal fees, in the absence of such settlements.

69.    All Documents relating to the Professional Fee Reserve, including the source and amount of funding, and the impact of any DWSD Transaction on the Professional Fee Reserve.

70.    All Documents relating to the GRS claims in the Disclosure Statement and Plan, including the amount of the claims, and their calculation (underlying assumptions and methods used in the calculation).

71.    All Documents relating to the PFRS claims in the Disclosure Statement and Plan, including the amount of the claims, and their calculation (underlying assumptions and methods used in the calculation).

72.    All Documents reflecting any update to the actuarial valuations performed by Gabriel Roeder Smith & Company ("Gabriel Roeder") for the PFRS and the GRS as of June 30, 2012, based on or using the methods, assumptions, and procedures used by Gabriel Roeder.

73.    All Documents that reflect the estimated or actual current market value of PFRS and GRS assets.

74.    All Documents that relate to the GRS Hybrid Pension Formula and the PFRS Hybrid Pension Formula, including Documents that reflect the analysis

conducted to derive those formulas, and the figures and results such formulas may yield.

75.    All Documents reflecting the City's contributions to the PFRS and GRS pension plans from 2004 to the present.

76.    All Documents reflecting the City's projected contributions to the PFRS and GRS pension plans through December 31, 2034 based on any actuarial assumption.

77.    All Documents relating to any exit facility or post-confirmation financing, including all Documents relating to: (i) actual, potential or expected terms, cost, security for, and interest rate on the exit facility; (ii) the purpose or intended use of the exit facility funds; (iii) the selection process for the exit facility agent; (iv) Communications with potential exit financing lenders; (v) requests for proposals sent to financial institutions or other potential lenders; and (vi) any research or analysis related to the City's need for exit financing.

78.    All Documents relating to any financing that is not disclosed in the Plan or Disclosure Statement, including all Documents relating to (i) actual, potential or expected terms, cost, security for, and interest rate on the financing; (ii) the purpose or intended use of the funds; (iii) the selection process for obtaining the financing; (iv) Communications with potential financing lenders;

(v) requests for proposals sent to financial institutions or other potential lenders; and (vi) any research or analysis related to the City's need for the financing.

79. All Documents reflecting research or analysis related to the amount of Debt the City will have and will be able to support immediately following confirmation of the proposed Plan.

80. All Documents reflecting research or analysis relating to the limits imposed by applicable law on the City's ability to incur debt.

81. All Documents reflecting the nature and amount of known or anticipated administrative claims.

82. All Documents relating to interfund loans, balances or deferrals, including all Documents that reflect: (i) the transfers that gave rise to the loans or deferrals; (ii) the conditions or terms of the loans or deferrals; (iii) the dates of the loans or deferrals; (iv) the purposes of the loans or deferrals; (v) any methods or policies governing or applying to the City's repayment of the loaned or deferred funds to their original fund; (vi) the proposed treatment of the loans or deferrals under the Plan; and (vii) any research or analysis regarding the treatment of the loans or deferrals, their legality or their potential cancellation or invalidation.

83. All Documents reflecting research or analysis related to any the City's efforts to reduce its labor costs from January 1, 2009 to the present, whether implemented, considered or proposed.

84.    All Documents that reflect any research or analysis conducted by or for the City related to any operational restructuring plans, whether implemented, considered, or proposed, including the costs of implementing such plans and the actual and projected resulting savings.

85.    All Documents analyzing the deferral of any of the spending proposals contemplated by the City's June 14, 2013 Proposal to Creditors.

86.    All Documents that relate to expense reduction efforts undertaken since the Petition Date or planned by the City for the future.

87.    All Documents that reflect any research or analysis related to any initiatives to improve the City's collection of taxes, fines, or user fees, and/or to decrease the delinquency rates applicable to such collection.

88.    All Documents that reflect any research or analysis related to any component of the tax burden on the City's residents in comparison to (i) surrounding areas or (ii) cities of comparable size.

89.    All Documents that reflect any research or analysis related to the effects of tax changes enacted from January 1, 2009 to the present, including the effect of the tax changes on the City's economic growth or revenues.

90.    All Documents that reflect any research or analysis conducted by or for the City related to its ability (or inability) to raise additional revenue through

increases of existing taxes, assessments, or user fees; the levying of new taxes, assessments, user fees; or otherwise.

91.     All Documents that reflect the calculations or determinations of growth rates relevant to the income tax revenue projections included in the most recent Ten-Year Summary of Restructuring Initiatives, including all Documents supporting any assumptions included in the Ten-Year Summary as to:  (i) the City's population growth; (ii) employment in the City and its allocation between residents and non-residents; and (iii) average wage assumptions.

92.     All Documents that relate to claims that is subject to a Release or Exculpation in the Plan, including Documents that relate to:  (i) investigations into such claims; (ii) the potential liability to the City of any person or entity that would be entitled to Releases and Exculpations as proposed by the Plan; (iii) the potential liability to the City's creditors of any person or entity that would be entitled to Releases and Exculpations as proposed by the Plan; and (iv) any contribution to the City or to the City's debt adjustment efforts by any party to be provided a Release or Exculpation as proposed by the Plan.

Dated:  April 11, 2014

By:  */s/ Paul R. Hage*

Louis P. Rochkind (P24121)
Paul R. Hage (P70460)
JAFFE RAITT HEUER & WEISS, P.C.
27777 Franklin Road, Suite 2500
Southfield, MI 48034-8214
Telephone: (248) 351-3000
lrochkind@jaffelaw.com
phage@jaffelaw.com

James F. Bendernagel, Jr.
Guy S. Neal
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8041
jbendernagel@sidley.com
gneal@sidley.com

Jeffrey E. Bjork
Gabriel MacConaill
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone:  (213) 896-6000
jbjork@sidley.com
gmacconaill@sidley.com

*Counsel for National Public Finance*
*Guarantee Corp.*

Lawrence A. Larose
Samuel S. Kohn
Eric Daucher
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY 10012
Telephone:  (212) 408-5100
llarose@chadbourne.com
skohn@chadbounrne.com
edaucher@chadbourne.com

*Counsel for Assured Guaranty*
*Municipal Corp.*

My Chi To, Esq.
DEBEVOISE & PLIMPTON, LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-7435
Fax: (212) 521-7425

*Counsel for Berkshire Hathaway*
*Assurance Corporation*

# TECHNICAL INSTRUCTIONS FOR PRODUCING REQUESTED DOCUMENTS

1. <u>Production format</u>.

   a. <u>Electronic production only</u>: All documents shall be produced only in electronic form, regardless of whether any underlying original from which they were taken consisted of ESI or paper or other "hard-copy" documents. Productions may be made by physical delivery of digital media or by FTP download(s) (divided, as may be necessary, so that no individual FTP download exceeds 2 Gb in size).

   b. <u>Single-image TIFF files, or single-document PDF files, only</u>. Except as specified below, all electronically-produced documents shall be produced in the form of either single-page (or single-image) TIFF images, or single-document PDF files.

   c. <u>No multi-document PDF files</u>. If documents are produced in the form of PDF files, each PDF file shall contain only a single document. Multiple documents shall not be produced within a single PDF file.

   d. <u>Native format for spreadsheets</u>. Spreadsheet ESI shall be produced in native format (not "locked down" so as to be designated "read only"), with accompanying load files if the metadata specified below is not preserved in the native file. Upon specific request, spreadsheet ESI must be additionally produced in single-image TIFF format. A bates stamped placeholder document shall be included in the load file production for any page(s) produced in native format with a notation stating "This Document Was Produced in Native Format".

   e. <u>Native format for non-spreadsheet ESI upon specific request</u>. Upon specific request, and after reasonable efforts to meet and confer to specifically identify the document subject to the request, an ESI document other than a spreadsheet must be additionally produced in native format (<u>e.g.</u>, PowerPoint presentations containing animations).

   f. <u>Non-standard ESI</u>. The foregoing instructions are without prejudice to seeking additional production in other formats for ESI that is used in conjunction with proprietary technology or with computer software or systems that are not in common use in business settings.

2. <u>Non-alteration</u>. The inspection, capture or acquisition of ESI for production or review purposes shall be performed in a manner that does not alter the ESI's content or its associated metadata.

3. <u>Load files</u>.  All electronic production must include .dat load files that contain the following fields of metadata or information to the extent it is available:

   a. <u>Unique identifier</u>.  A unique production identifier of the item, typically a "Bates number."  For native files, this might be a Bates number either on the entire file, or on each page within the file if that is feasible.

   b. <u>Filename</u>.  The original name of the item or file when it was collected from the source custodian or system, including the filename extension identifying the file type (<u>e</u>.g., .DOC, .XLS, .PPT, .PDF, etc.).

   c. <u>Custodian</u>.  The name of the custodian or source system from which the item was collected.

   d. <u>Source device</u>.  The device from which the item was collected.

   e. <u>Source path</u>.  The file path from the location from which the item was collected.

   f. <u>Production path</u>.  The file path to the item produced on the production media (<u>e</u>.g., identification of the folder on the disk that contains the TIFF image or other information associated with this item).

   g. <u>Last date modified</u>.  The last date on which the item had been modified when collected from the source custodian or system.

   h. <u>Last time modified</u>.  The last time of day when the item had been modified when collected from the source custodian or system.

   i. <u>Time offset value</u>.  The universal time offset of the item's last modified date and time.  The offset shall be based on the source system's time zone as compared to Greenwich Mean Time.  This field shall be included for electronic documents as well as for e-mail.

   j. <u>Extracted text</u>.  The text of the document in searchable electronic form, including as necessary such text generated by optical character recognition (OCR) of non-ESI documents.

   k. <u>MD5 HASH value</u>. The MD5 HASH value for the item or file.

4. <u>Additional e-mail metadata</u>.  The load files for ESI productions of e-mail messages must additionally include the following fields of information:

   a. <u>From</u>.  The e-mail address of the sender of the message.

b. <u>To</u>.  The e-mail address(es) of the addressee(s) of the message.

c. <u>Cc</u>.  The e-mail address(es) of the person(s) copied on the message.

d. <u>Bcc</u>.  The e-mail address of the person(s) blind-copied on the message.

e. <u>Date sent</u>.  The date when the message was sent.

f. <u>Time sent</u>.  The time of day when the message was sent.

g. <u>Subject</u>.  The subject line of the message.

h. <u>Date received</u>.  The date the message when was received.

i. <u>Time received</u>.  The time of day when the message was received.

j. <u>Attachments</u>.  The Bates number range(s) in the production of any attachment(s) to the e-mail.

k. <u>E-mail body</u>.   The text of the e-mail message in searchable electronic form.

5. <u>Additional metadata regarding images of paper or other "hard copy" documents</u>.  The load files for electronic productions of images of paper or other "hard copy" documents must additionally include the following fields of information to the extent it is available:

a. <u>Beginning identifier</u>.  The beginning Bates number or other unique identifier for the first page of the document.

b. <u>Ending identifier</u>.  The ending Bates number or other unique identifier for the last page of the document.

c. <u>Attachment beginning identifier</u>.  The beginning Bates number or other unique identifier for the first page of the first attachment to the parent document.

d. <u>Attachment ending identifier</u>.  The ending Bates number or other unique identifier for the last page of the last attachment to the parent document.