UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| | ) | Hon. Steven W. Rhodes |
| Debtor. | ) | |

### DETROIT RETIREMENT SYSTEMS' REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO THE CITY OF DETROIT, MICHIGAN

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rules 7026, 7034 and 9014(c) of the Federal Rules of Bankruptcy Procedure, the Police and Fire Retirement System of the City of Detroit ("PFRS") and the General Retirement System of the City of Detroit ("GRS," and together with PFRS, the "Retirement Systems") request that the City of Detroit, Michigan respond to the following requests for production in writing:

**A.  DEFINITIONS**

1.  All capitalized terms used herein that are not otherwise specifically defined below shall be ascribed the same meaning as defined in the Amended Plan for the Adjustment of Debts for the City of Detroit (the "Plan") [Dkt. No. 3380].

2.  "**Accrued Financial Benefits**" shall have the same meaning ascribed to that term in Article IX, section 24 of the Michigan Constitution.

3. "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. § 101, *et seq*.

4. "**City**" means the City of Detroit, Michigan, and, as applicable, its officers, employees, representatives, attorneys, advisors and/or agents.

5. "**Communications**" is used in the broadest sense and means any transmission of information from one Person (defined below) to another Person, by any means.

6. "**DIA**" means the Detroit Institute of Arts.

7. "**Disclosure Statement**" means the Amended Disclosure Statement with Respect to Amended Plan for the Adjustment of Debts of the City of Detroit [Dkt. No. 3382], as may be amended or supplemented.

8. "**Document**" means, Communications, all writings of any nature or any medium upon which intelligence or information can be recorded, maintained or retrieved in the possession, custody or control of the City, including, without limitation, the original and each copy, regardless of the origin and location, of any correspondence, book, pamphlet, periodical, letter, e-mail, memorandum (including any memorandum or report of a meeting or conversation), contract, agreement, study, report, analysis, invoice, bill, time sheet, time cards, expense voucher, receipt, book of account (including cash disbursement journal, cash receipt journal, income statement or reconciliation statement), financial statement, order form,

2

record, bond, requisition, plan, drawing, specification, sound recording, minutes, diary, bylaws, articles of incorporation, calendar, telegram, message, handwritten note, draft working paper, photostat, microfilm, film, photograph, comparison, print, graph, drawing, sketch, chart, summary, data sheet, data processing card, tape, advertisement, and any other written, recorded, transcribed, punched, taped, filmed, or graphic, photographic, or electronic matter of any kind or nature (including marginal comments appearing on any documents or any other writing), however produced or reproduced, and any computer records (including any information on hardware or software).

9. "**GRS**" means the General Retirement System of the City of Detroit, and its agents and representatives.

10. "**Pensions Clause**" means Article IX, Section 24 of the Michigan Constitution.

11. "**Person**" means a natural person, a partnership, a corporation, an unincorporated association, a professional association, or other form of entity.

12. "**PFRS**" means the Police and Fire Retirement System of the City of Detroit, and its agents and representatives.

13. "**Retirement Systems**" means the GRS together with the PFRS.

14. "**You**" or "**your**" means the City and its officers, employees, representatives, attorneys, and/or agents of each of them.

15. **Miscellaneous**. The singular includes the plural; the plural includes the singular; the masculine gender includes the feminine and neuter genders; the feminine gender includes the masculine and neuter genders; the neuter gender includes the masculine and feminine genders.

B. INSTRUCTIONS

1. By April 25, 2014, you are to respond in writing to these requests for production of documents, either stating that you will produce the items as requested or that you object to providing the items.

2. If you object, then you must provide the precise basis for your objection.

3. For those requests to which you do not object, you are to produce those requested items that are in your possession, custody, or control for inspection and copying to the undersigned at the offices of Clark Hill PLC, 151 S. Old Woodward, Birmingham, MI 48009. Alternatively, you may make copies of these items and send them to the undersigned along with your responses. If you send copies of the documents requested, then you must label or organize them so as to correspond with the requests. **If you refer to a document in your response to any of the following requests, then you must identify the document by Bates number.**

4. If you claim a privilege to any communication or that the disclosure of information is protected by the work-product doctrine, then for each such response in which you claim privilege or protection, you must specify and identify (1) the specific privilege and/or protection claimed; (2) the communication and/or answer as to which the claim of privilege and/or protection is made; (3) the parties to the communication; (4) the general subject matter of the communication; and (5) the basis for your claim.

5. These Document Requests are continuing. If you are unable to answer any document request fully at this time, such request is to be answered to the best of the answering person's ability. Any subsequently acquired information called for by these document requests is to be furnished immediately by you. *See* Fed. R. Civ. P. 26(e).

C. **RESERVATION OF RIGHTS**

The Retirement Systems reserve the right to request relief from or a modification of the Third Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [Dkt. No. 3632] (the "Third Plan Scheduling Order") such that the Retirement Systems will be authorized to serve additional discovery requests if, and when, the City further amends the Plan.

## D. REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Produce all documents that are identified in, evidence, support, or relate to your responses to the Detroit Retirement Systems' Requests for Admissions Directed to the City of Detroit, Michigan.

2. Produce all documents that are identified in, evidence, support, or relate to your responses to the Detroit Retirement Systems' Interrogatories Directed to the City of Detroit, Michigan.

3. With respect to any potential DWSD Transaction and any potential privatization transaction for DWSD that has been discussed with or considered by the City within the last 18 months, produce all term sheets, communications, proposals, working drafts, financial analyses of proposed transactions, and documents relating to the proposed uses of funds to be received as a result of any such DWSD Transaction.

4. With respect to the DIA, produce the following:

   i. a schedule or inventory of all of the artwork (the entire collection, not just the portion appraised by Christie's);

   ii. all insurance policies and renewal policies related to the art issued within the last 10 years, and any appraisals or valuations performed in connection with the issuance of said policies;

iii. any appraisals (other than the one performed by Christie's) performed at any time for any particular piece or portion of the DIA collection within the last 10 years;

iv. a complete copy of the most recently updated Christie's appraisal;

v. all communications between the City and Christie's, any and all engagement letters, underlying documents exchanged between the City and Christie's, all documents relied upon in connection with Christie's appraisal, and the curriculum vitae of the individual(s) who conducted the Christie's appraisal;

vi. all instruments transferring art to the DIA, documents evidencing the City's purchase of art, any documents evidencing ownership interests in the art, or reflecting the City's possessory or ownership interest in the DIA art, including documents that may reflect restrictions on the transfer or sale of the DIA art;

vii. all documents relating to valuations, appraisals, or estimated fair market value for the "Museum Assets" as that term is defined in the DIA Settlement Term Sheet, including the art

200554525.3 14893/165083
13-53846-tjt    Doc 4056    Filed 04/11/14    Entered 04/11/14 22:21:58    Page 7 of 20

    collection, operating assets, buildings, parking lots and structures, and the like;

 viii. all documents and communications between the DIA Corp., the Foundations, and/or the City expressing an opinion as to the City's ability to sell or otherwise monetize the art.

5. With respect to the DIA Settlement, produce the DIA Settlement Documents and any drafts thereof; drafts of terms sheets; copies of the City's agreement with the Foundations; draft agreements; and, all related communications.

6. With respect to the DIA Corp.'s pledge to fund $100 million to the DIA Settlement, produce all communications, proposed term sheets, drafts of terms sheets, draft agreements evidencing the DIA Corp.'s pledge or commitment for the funding, and all documents demonstrating how much, if any, has been raised to date.

7. Produce all documents evidencing the current dollar amount of any unrestricted endowments of the DIA.

8. With respect to the State Contribution, produce all communications between the City, the State, and/or other third-parties, draft state legislation, required terms, conditions for approval, governance terms, documents relating to

8

the poverty level analysis, and all documents regarding how the funds will be allocated.

9. Produce all documents relating to the Hardship Fund for Pensioners, as described in Section II.A.2(c) of the Disclosure Statement, including all communications between the City, the State, and/or other third-parties, draft state or local legislation, term sheets including drafts thereof, and all documents setting forth the terms on which pensioners may become eligible for additional benefits and how additional benefits will be allocated.

10. Produce all documents and communications between the City and the State of Michigan relating to the Plan, the Disclosure Statement, the DIA Settlement, and the State Contribution.

11. Produce all documents underlying the actuarial assumptions and treatment of pension benefits and Pension Claims in Plan, including all documents prepared or relied upon by Milliman and/or the City.

12. Produce all documents relating to the return on investment assumptions proposed by the City under the Plan, including all documents relating to the frequency with which the return rates being urged by the City are used by other public employee retirement systems, and the propriety of adopting the return on investment assumptions proposed by the City under the Plan.

13. Produce all documents evidencing the City's right to set the discount rates and return on investment assumptions for the PFRS and the GRS.

14. Produce all documents, communications, analyses, memoranda, reports, models, studies or other information prepared by Milliman for the City in connection with this case and/or the Plan and Disclosure Statement.

15. Produce all documents and analyses relating to whether the PFRS or the GRS will have a funding level of more than 80% by June 30, 2023, and how such additional funding will affect the estimated percentage recoveries for pension claims in Classes 10 and 11.

16. Produce all documents that relate to the calculation of the PFRS Pension Claims and the GRS Pension Claims reflected in the Disclosure Statement and the Plan, including without limitation the underlying assumptions and methods used in the calculations.

17. Produce all documents that relate to the PFRS Restoration Payment and the GRS Restoration Payment.

18. Produce all documents that relate to the Annuity Savings Fund recoupment proposed in the Plan, including documents relating to the ASF Recoupment Percentage and the ASF Distribution Recipient(s).

19. Produce all documents reflecting the City's projected annual contributions to the PFRS and the GRS following confirmation of the Plan through

December 31, 2054, based on the actuarial assumptions used by the City in formulating the Plan and taking into account the restructuring of the pension obligations as proposed in the Plan.

20. Produce all documents and communications that relate to the GRS Hybrid Pension Formula and the PFRS Hybrid Pension Formula, including documents and communications that reflect the analysis conducted to derive those formulas, and the figures and results such formulas may yield.

21. Produce all documents and communications from the Pension Task Force.

22. Produce all documents relating to any proposed or anticipated modifications or amendments to any ordinance, statute, City Charter, and the like, as well as any other potential legislative changes relating to or required for implementation of the Plan.

23. Produce all documents and communications that evidence or relate to the valuation and/or potential monetization initiatives, through sale, lease or otherwise, of City-owned assets valued in excess of $5 million, including without limitation: (i) artwork owned or held in the DIA, *other than* the monetization efforts that relate to the potential DIA Settlement; (ii) the Detroit-Windsor Tunnel; (iii) the Veterans' Memorial Building; (iv) City-owned parking facilities; (v)

13-53846-tjt    Doc 4056    Filed 04/11/14    Entered 04/11/14 22:21:58    Page 11 of 20

Coleman A. Young Municipal Airport; (vi) Joe Louis Arena; and (vii) City-owned land referenced in the Disclosure Statement.

24. Produce documents relating to the anticipated use of proceeds received from any monetization of City-owned assets valued in excess of $5 million, including without limitation: (i) artwork owned or held in the DIA, *other than* the monetization efforts that relate to the potential DIA Settlement; (ii) the Detroit-Windsor Tunnel; (iii) the Veterans' Memorial Building; (iv) City-owned parking facilities; (v) Coleman A. Young Municipal Airport; (vi) Joe Louis Arena; and (vii) City-owned land referenced in the Disclosure Statement.

25. Produce all contracts for outsourcing or privatizing City services and operations, cost of outsourcing and analysis of cost savings.

26. Produce all documents relating to any potential public-private partnership with respect to the DWSD, as described in Section VIII.K.1.(b) of the Disclosure Statement.

27. Provide the City's projected cash flows through 2054, including year-by-year projections and distributions.

28. Produce all documents that reflect an estimate of the aggregate allowed amount of, and the recoveries on, the COP Claims and the basis for those estimates.

29. Produce all documents and communications that relate to the City's derivation of its estimate of the recovery under the Plan for the holders of Limited Tax General Obligation Bonds.

30. Produce all documents relating to the UTGO settlement announced on April 9, 2014 through the Statement of Detroit Bankruptcy Mediators, including all term sheets, communications, and draft settlement agreements.

31. Produce all documents that reflect any research or analysis conducted by or for the City within the past 5 years related to any initiatives to improve the City's collection of taxes, fines, or user fees and/or to decrease the delinquency rates applicable to such collection.

32. Produce all documents that reflect any research or analysis conducted by or for the City within the past 5 years related to its ability (or inability) to raise additional revenue through: increases of existing taxes, assessments, or user fees; the levying of new taxes, assessments, or user fees; or otherwise.

33. Produce all documents that reflect any research or analysis conducted by or for the City related to projected or anticipated State revenue-sharing during the term of the Plan.

34. Produce all documents, including agreements or proposals, relating to any arrangements with the Detroit Land Bank Authority and the Michigan Land

Bank relating to the "initiatives involving the Detroit Land Bank Authority and the Michigan Land Bank" referenced in the Disclosure Statement.

35. Produce all documents and communications that reflect, support or refute the validity of the claims held by the Downtown Development Authority against the City.

36. Produce all documents the City intends to use or may use as exhibits or evidence at the Confirmation Hearing or at any other hearing related to confirmation of the Plan.

37. Produce all documents the City has provided or intends to provide to any witness that it intends to call at the Confirmation Hearing or at any other hearing related to confirmation of the Plan.

38. Produce the biography, education and work history, or curriculum vitae of any person the City intends to call as a fact or expert witness at the Confirmation Hearing or at any other hearing related to confirmation of the Plan.

39. Produce all documents, including reports, models, or data compilations, which have been provided to, reviewed by, or prepared by or for any expert witnesses for purposes related to the Disclosure Statement or the Plan.

40. Produce all documents that either support or refute that the City can satisfy its burden under 11 U.S.C. § 1129(a) as incorporated into chapter 9 of the Bankruptcy Code; that the Plan is in the 'best interest of creditors' within the

200554525.3 14893/165083
13-53846-tjt   Doc 4056   Filed 04/11/14   Entered 04/11/14 22:21:58   Page 14 of 20

meaning of 11 U.S.C. § 943(b)(7); that the Plan is feasible with the meaning of 11 U.S.C. §943(b)(7); that the City is not prohibited by law from taking any action necessary to carry out the Plan within the meaning of 11 U.S.C. § 943(b)(4); that, under 11 U.S.C. § 943(b)(6), any regulatory or electoral approval necessary under applicable nonbankruptcy law in order to carry out any provision of the plan has been obtained, or such provision is expressly conditioned on such approval; and that the City will be able to confirm the Plan pursuant to Sections 1129(b) of the Bankruptcy Code.

41. Produce all documents and communications that relate to the investigation by the City of any claim that is subject to a Release or Exculpation in the Plan and all documents that relate to the potential liability to the City or the City's creditors of any person or entity that would be entitled to Releases and Exculpations as proposed by the Plan.

42. Produce all documents relating to any potential liability of the City that would or could result from the imposition of liability on any person or entity for whom Releases and Exculpations are proposed by the Plan, including any documents related to potential claims based on guaranty, indemnification, contribution, or any other theory.

43. Produce all documents that relate to the consideration provided by any party receiving a Release or Exculpation as proposed by the Plan.

15

44. Produce all documents that relate to the terms of settlements, other than those described in the Disclosure Statement, that the City intends to enter into prior to the confirmation of the Plan or as part of the Plan, including without limitation analyses and projections of potential recovery by or against the City and the City's estimated legal fees, in the absence of such settlements.

45. Produce all documents and communications relating to the Exit Facility, including the identity of the Exit Facility Agent, the terms of the Exit Facility, the interest rate, the loan documentation, amount of the Exit Facility, expected costs, proposed collateral and any documents relating to feasibility of the Plan if Exit Facility is obtained.

46. Produce all documents relating to the purpose or intended use of the Exit Facility funds.

47. Produce all responses to interrogatories, requests for admissions, and requests for production to other creditors or parties in interest, whether formally or informally, related to the Disclosure Statement or the Plan.

48. Produce the following exhibits to the Plan, as well as all other documents or drafts of documents that are to be included in any Plan supplement:

| Exhibit No. | Exhibit Name |
|---|---|
| Exhibit I.A.80 | Form of DIA Settlement Documents |

| Exhibit I.A.127 | Principal Terms of Exit Facility |
|---|---|
| Exhibit I.A.148.a | Form of GRS Hybrid Pension Plan |
| Exhibit I.A.172 | Form of New B Notes Documents |
| Exhibit I.A.173 | Form of New DWSD Bond Documents |
| Exhibit I.A.175 | Form of New Existing Rate DWSD Bond Documents |
| Exhibit I.A.177 | Form of New Existing Rate GLWA Bond Documents |
| Exhibit I.A.180 | Form of New GLWA Bond Documents |
| Exhibit I.A.182 | Form of New GLWA Revolving Bond Documents |
| Exhibit I.A.202.a | Form of PFRS Hybrid Pension Plan |
| Exhibit I.A.208 | Form of Plan COP Settlement Documents |
| Exhibit I.A.210 | Principal Terms of Plan UTGO Notes |
| Exhibit I.A.211 | Form of Plan UTGO Note |
| Exhibit I.A.255 | State Contribution Agreement |
| Exhibit II.B.3.t.ii.A | Schedule of Payments and Sources of Payments for Modified PFRS Pension Benefits |
| Exhibit II.B.3.u.ii.A | Schedule of Payments and Sources of Payments for Modified GRS Pension Benefits |
| Exhibit II.D.5 | Schedule of Postpetition Collective Bargaining Agreements |
| Exhibit II.D.6 | Executory Contracts and Unexpired Leases to Be Rejected |
| Exhibit III.D.2 | Retained Causes of Action |

Respectfully submitted,

CLARK HILL PLC


/s/ Robert D. Gordon
Robert D. Gordon (P48627)
Shannon L. Deeby (P60242)
Jennifer K. Green (P69019)
151 South Old Woodward Avenue
Suite 200
Birmingham, Michigan 48009
Telephone: (248) 988-5882
Facsimile: (248) 988-2502
rgordon@clarkhill.com

Dated: April 11, 2014

*Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| | ) | Hon. Steven W. Rhodes |
| Debtor. | ) | |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 11, 2014, the Detroit Retirement Systems' Requests for Production of Documents Directed to the City of Detroit, Michigan was filed using the Court's CM/ECF system, which CM/ECF system will send notification of such filing to all parties of record.

CLARK HILL PLC

/s/ Robert D. Gordon
Robert D. Gordon (P48627)
Shannon L. Deeby (P60242)
Jennifer K. Green (P69019)
151 S. Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
Telephone: (248) 988-5882
rgordon@clarkhill.com

*Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*

Dated: April 11, 2014