# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-------------------------------------------------------x
:
In re                         :          Chapter 9
:
CITY OF DETROIT, MICHIGAN,   :          Case No. 13-53846
:
                Debtor.     :          Hon. Steven W. Rhodes
:
:
:
-------------------------------------------------------x

## CONSOLIDATED REPLY
## TO OBJECTIONS TO MOTION OF THE CITY OF DETROIT
## FOR APPROVAL OF THE PROPOSED DISCLOSURE STATEMENT

        The City of Detroit (the "City") hereby files this consolidated reply

(the "Reply") in support of the relief requested in the Motion of the City of Detroit

for Approval of the Proposed Disclosure Statement (Docket No. 2713)

(the "Disclosure Statement Motion").[1]  In support of this Reply, the City

respectfully represents as follows:

---

[1]    On February 21, 2014, the City filed its Plan for the Adjustment of Debts of the City of Detroit (Docket No. 2708) (the "Original Plan") and its related disclosure statement (Docket No. 2709) (the "Original Disclosure Statement"). On March 31, 2014, the City filed its Amended Plan for the Adjustment of Debts of the City of Detroit (Docket No. 3380) (the "Amended Plan") and its related disclosure statement (Docket No. 3382) (the "Amended Disclosure Statement").  The City intends to file, on April 15, 2014, the Second Amended Plan for the Adjustment of Debts of the City of Detroit (the "Second Amended Plan") and its related disclosure statement (the "Second Amended Disclosure Statement").  References herein to the "Plan" and the "Disclosure Statement"

## Preliminary Statement

1.      The City's case is the largest and most complex chapter 9 case in history, involving the competing interests of myriad City residents, employees, retirees, bondholders, insurers and other creditors and parties in interest. The Plan provides for the (a) resolution of many complex financial and operational issues facing the City and (b) urgently-needed re-investment in the City of approximately $1.5 billion over ten years. This investment would enable the City to finally address its "service delivery insolvency" by, among other things: (a) providing basic, essential services to City residents; (b) attracting new residents and businesses to foster growth and redevelopment; (c) reducing crime; (d) demolishing and remediating blighted and dangerous properties; (e) providing functional streetlights aligned with the City's current population footprint; (f) improving information technology systems, thereby increasing efficiency and decreasing costs; and (g) otherwise setting the City on a path toward a better future.

2.      The Plan and Disclosure Statement are intended to effect this restructuring and enable the City to emerge from chapter 9 in or around the fall of

_____

(continued…)

refer to the City's proposed plan of adjustment and disclosure statement, as modified and amended. Except as expressly provided herein, capitalized terms not otherwise defined in this Reply have the meanings given to them in the Amended Disclosure Statement.

this year. The City believes that time is of the essence for Detroiters, who depend upon the City to provide vital services and who are the beneficiaries of the reinvestment initiatives proposed in the Plan. Any delays in confirmation of the City's Plan will jeopardize many of the transactions contemplated therein. It is therefore of the utmost importance, and to the benefit of all creditors, that the Motion be granted and that the City be provided with an opportunity to seek confirmation of the Plan.

3. The City received 100 timely filed and procedurally proper objections and responses to the Disclosure Statement Motion (collectively, the "Objections").[2] The Objections are identified by objecting party or parties (each, an "Objecting Party") and docket number on Exhibit A attached hereto

---

[2]    Notice of the hearing to consider approval of the Disclosure Statement, and access to the Disclosure Statement itself, was widely provided in accordance with the Bankruptcy Rules. Pursuant to the Order Approving Disclosure Statement Procedures (Docket No. 2756) (the "Disclosure Statement Procedures Order"), the City served over 174,000 copies of the notice of hearing on approval of the Disclosure Statement (the "Hearing Notice") on creditors and other parties in interest (including notices provided to holders of securities). In addition, the City caused the Hearing Notice to be published in the national edition of *The Wall Street Journal*, *USA Today* and publications of the Detroit Media Partnership, including the *Detroit Free Press* and *The Detroit News*. The Hearing Notice provided interested parties with instructions on obtaining copies of the Plan and Disclosure Statement, free of charge, by accessing the City's restructuring website or by contacting the City's claims, noticing and balloting agent by telephone or in writing.

(the "Objection Summary").[3] The Objection Summary generally summarizes the arguments raised in the applicable Objections and the City's response or responses with respect to the arguments raised, including whether the City considers the applicable Objection to: (a) have been resolved, addressed or otherwise mooted by modifications made in the Second Amended Disclosure Statement (which Objections are identified either as "Addressed" or "Addressed in part"); or else (b) remain disputed or unresolved (which Objections are identified either as "Disputed" or "Disputed in part").[4]

       4.      Since the filing of the Amended Plan and Amended Disclosure Statement, the City has made many significant modifications and amendments thereto on account of, or in response to: (a) requests made and issues raised by Objecting Parties in the Objections; (b) discussions with those Objecting Parties

---

[3]     References herein to individual Objections use the capitalized names given to them in the Objection Summary.

[4]     Approximately 62 of the Objections (identified collectively in row 39 of the Objection Summary) either (a) raise non-specific concerns regarding the adequacy of the Disclosure Statement; (b) request that the Court not allow any modifications to retirement benefits pursuant to the Plan; (c) object generally to the Plan or certain features of the Plan; or (d) request other relief unrelated to the issue of whether the Disclosure Statement provides "adequate information" within the meaning of section 1125 of the Bankruptcy Code. Although the City acknowledges many of the concerns raised in these Objections, they are (a) more appropriately characterized as objections to confirmation of the Plan than objections to the Disclosure Statement, (b) not relevant to the issue before the Court or (c) not asserted with enough specificity to permit the City to respond. Accordingly, the City requests that the Court overrule these Objections.

that accepted the City's invitation to "meet and confer" regarding the Objections and proposed changes to the Disclosure Statement on April 10 and April 11, 2014 (as directed by the Court) (the "Meet and Confer Sessions");[5] and (c) significant independent refinements made by the City to the terms of the Amended Plan. In particular, the City has made the following significant modifications to the Amended Plan and Amended Disclosure Statement, among others:

- As more fully described below, the City has included a section (the "Plain Language Insert") in the Second Amended Disclosure Statement providing more easily comprehensible information to holders of Pension Claims and OPEB Claims regarding the effect of the Plan on their claims, thereby addressing — in conjunction with other procedures described below — the special circumstances of these individuals.  In addition, the City has filed a motion seeking to include separate Plain Language Inserts with the solicitation packages that will accompany the Ballots in Classes 10, 11 and 12.

- The concept of the potential creation of the GLWA and a DWSD Transaction involving the GLWA — and the consequent potential issuance of bonds by the GLWA — have been eliminated from the Second Amended Disclosure Statement.   Accordingly, all requests for further information regarding the GLWA, the DWSD Transaction and the bonds to be issued by the GLWA have been rendered moot.

- On April 11, 2014, the Court approved the Swap Settlement and Plan Support Agreement between the City and the Swap Counterparties,

---

[5] Moreover, prior to the Meet and Confer Sessions, and as directed by the Court, the City also reviewed and responded to 35 informal submissions received from various parties regarding the Disclosure Statement (the "Disclosure Statement Comments") on March 14, 2014.  The Disclosure Statement Comments raised an estimated total of more than 1,000 discrete requests for modifications to the Disclosure Statement.  In response to the Disclosure Statement Comments, the City made numerous revisions prior to filing the Amended Disclosure Statement.

thereby mooting Objections arguing that the City should provide additional disclosure regarding alternative scenarios.

- The City has agreed to a settlement of the UTGO Litigation including an agreement to support the Plan by the members of Class 8 (the "UTGO Settlement"). The material terms of the UTGO Settlement are described in the Second Amended Plan and Second Amended Disclosure Statement. Accordingly, requests for further information regarding potential outcomes of the UTGO Litigation and the related treatment of claims have been rendered moot.

- In the Second Amended Disclosure Statement, the City has provided: (a) additional estimated aggregate allowed amounts and estimated percentage recovery figures; and (b) where appropriate, further detail regarding the assumptions employed in calculating these figures. Thus, requests for further information regarding these matters have been addressed.

- The assumed annual net rates of return on investments for GRS and PFRS have each been raised to 6.75%. Requests for further information regarding the differing assumed annual net rates of return for GRS and PFRS have been rendered moot.

- The City has attached 40-year financial projections to the Second Amended Disclosure Statement, thereby addressing requests for that information.

- The City has added descriptions of various additional risk factors identified by certain Objecting Parties, including with respect to: (a) the potential disapproval of the settlements and compromises in the Plan, (b) the potential disapproval of the level of DWSD prefunding contemplated by the Plan, (c) litigation regarding the COPs, (d) further litigation regarding the Swaps and (e) potential future challenges facing the City in hiring or retaining employees.

Because of these modifications and amendments to the Amended Disclosure

Statement, the City believes that many of the arguments raised in the Objections

have been resolved or otherwise addressed or mooted by the terms of the Second Amended Plan and Second Amended Disclosure Statement.

5. Notwithstanding the substantial progress made by the City toward addressing or resolving the Objections, a number of issues remain. A theme common among many Objections is the argument that certain anticipated, but not yet finalized, events and alternative scenarios currently provided for in the Plan cause the Disclosure Statement to be lacking adequate information to allow a hypothetical creditor to determine how to vote with respect to the Plan.

6. To a large degree, the City believes that these concerns have been mitigated in the Second Amended Plan and Second Amended Disclosure Statement through the elimination or resolution of certain contingencies and the provision of additional documentation and other information that was not yet available as of the filing of the Amended Disclosure Statement. In a complex municipal restructuring such as the City's, however, it is to be expected that a number of contingencies will remain, and such contingencies are not inappropriate. Rather, the proper role of a disclosure statement is to explain to "the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." In re Radco Properties, Inc., 402 B.R. 666, 683 (Bankr. E.D.N.C. 2009) (quoting In re Ferretti, 128 B.R. 16, 19 (Bankr. D.N.H. 1991)).

7.     The City will continue to supplement the Plan and Disclosure Statement with additional information and final documentation regarding any resolutions achieved with creditor classes and potential transaction counterparties as such information becomes available prior to the Voting Deadline.  For the purpose of approval of the Disclosure Statement, however, the City believes that the Disclosure Statement provides all necessary information that is currently available to constitute adequate information within the meaning of section 1125 of the Bankruptcy Code.

8.     For the reasons set forth below and in the Motion, (a) the Objections should be overruled to the extent not resolved, addressed or rendered moot by the terms of the Second Amended Plan and Second Amended Disclosure Statement and (b) the Disclosure Statement Motion should be approved.

## REPLY TO OBJECTIONS

### I.     The Standards of Section 1125 of the Bankruptcy Code Have Been Met

9.     Section 1125(b) of the Bankruptcy Code, which is applicable in the City's chapter 9 case, provides that, after notice and a hearing, a court may approve a disclosure statement as containing "adequate information."  11 U.S.C. § 1125(b); see also 11 U.S.C. § 901 (making section 1125 of the Bankruptcy Code applicable in chapter 9).

10.     Generally, "adequate information" means:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a). Notably, the Bankruptcy Code's definition of "adequate information" expressly excuses a debtor from providing information on any actual or possible alternative plan other than the specific plan being propounded by the debtor. See id. ("adequate information need not include such information about any other possible or proposed plan"); see also Kirk v. Texaco, Inc., 82 B.R. 678, 684 (S.D.N.Y. 1988) (denying appeal of bankruptcy court's order approving disclosure statement; stating that the appellants "could not oppose the Disclosure Statement successfully merely by citing its failure to discuss some other possible plan"). "Implicit in section 1125 of the Bankruptcy Code is the recognition that [in complex restructurings], 'there is frequently great uncertainty, [and t]herefore the need for flexibility is greatest.'" Tranel v. Adams Bank and Trust Co. (In re Tranel), 940 F.2d 1168, 1174 (8th Cir. 1991) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess., 408-409 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6364, 6365).

11.     In determining whether a disclosure statement contains adequate information, courts in the Sixth Circuit and elsewhere have found the following types of information, among others, relevant:  (a) the circumstances that gave rise to the filing of the bankruptcy petition; (b) the source of the information provided in the disclosure statement; (c) a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets are authorized, other than those set forth in the disclosure statement; (d) the financial condition and performance of the debtor while in bankruptcy; (e) information regarding claims against the debtor; (f) the accounting and valuation methods used to produce the financial information in the disclosure statement;  (g) a summary of the plan; (h) an estimate of all administrative expenses; (i) any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan; (j) information relevant to the risks being taken by the creditors; and (k) the tax consequences of the plan.  See, e.g., In re Commonwealth Grp.-Mocksville Partners, LP, No. 12-34319, 2013 Bankr. LEXIS 1648, at **5-6 (Bankr. E.D. Tenn. Apr. 22, 2013); In re Keisler, No. 08-34321, 2009 Bankr. LEXIS 1814, at **10-11 (Bankr. E.D. Tenn. June 29, 2009); Malek, 35 B.R. at 443-44; In re Scioto Valley Mortgage Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988).  These considerations, however, "are only a general 'yardstick' and need to be modified as

the circumstances and size of each case warrant. It is . . . well understood that certain categories of information which may be necessary in one case may be omitted in another." <u>Commonwealth Grp.</u>, 2013 Bankr. LEXIS 1648, at *6 (citation and quotation marks omitted).

12. To satisfy the "adequate information" standard of section 1125 of the Bankruptcy Code, a debtor is not required to (a) accommodate every creditor request for additional disclosures or (b) burden its disclosure statement with compendious information that may be of interest to a particular subset of interested parties. As one court has stated:

> [B]y overburdening a proponent's disclosure statement with information significant and meaningful to lawyers alone may result ultimately in reducing the disclosure statement to an overlong, incomprehensible, ineffective collection of words to those whose interests are to be served by disclosure. Thus, compounding a disclosure statement for the sake of a lawyer's notion of completeness, or because some additional information might enhance one's understanding, may not always be necessary or desirable, and the length of a document should not be the test of its effectiveness.

<u>In re Georgetown S. Apartments, II, Ltd.</u>, 136 B.R. 160, 162 (Bankr. S.D. Ohio 1992) (citation omitted); <u>see</u> <u>also</u> <u>Commonwealth Grp.</u>, 2013 Bankr. LEXIS 1648, at *8 ("Generally, even where a 'disclosure statement could have included more information, . . . a disclosure statement need not be perfect and may be approved if the information is reasonable in the circumstances.'") (quoting <u>In re Puff</u>,

No. 10-01877, 2011 Bankr. LEXIS 2445, at *15 (Bankr. N.D. Iowa June 30, 2011)).

13.     Thus, "[t]he requirement of a disclosure statement . . . should not be read to infer a corresponding creditor right of a fishing expedition." In re Georgetown of Kettering, 17 B.R. 73, 75 (Bankr. S.D. Ohio 1981).  Because ultimately it is the Court — and not creditors or other parties in interest — that must determine whether the Disclosure Statement contains adequate information, "the role of creditors and other parties in interest in the disclosure process is neither supervisory nor participatory."  Id.

14.     The Disclosure Statement, together with its accompanying exhibits, is more than 600 pages in length and contains ample information regarding the circumstances surrounding the City's chapter 9 case and the terms of the Plan.  In particular, the Disclosure Statement includes information with respect to:  (a) the terms of the Plan; (b) applicable voting and solicitation procedures; (c) information about the claims asserted, or potentially to be asserted, against the City, including administrative expense claims; (d) the nature and timing of distributions to be received by holders of allowed claims; (e) settlements to be effectuated pursuant to the Plan; (f) legal requirements and procedures related to confirmation of the Plan; (g) the risk factors affecting the Plan; (h) certain events preceding the City's chapter 9 case; (i) the key activities that have occurred in this

case; (j) reinvestment initiatives the City has proposed to undertake over the next ten years; (k) proposals for beneficial tax reform; (l) projected financial information; and (m) the federal tax consequences of the Plan.

15.     Since filing the Original Disclosure Statement, the City has added approximately 150 pages of additional information to the Disclosure Statement in response to requests from various parties.  This additional information includes:  (a) a "plain-English" summary of the effect of the Plan on beneficiaries of the City's pension and retiree healthcare plans, (b) 40-year projections of City finances; (c) additional information regarding the operations of DWSD; (d) historical, current and projected financial information related to DWSD; (e) an extensive and detailed discussion of the City's proposed reinvestment and restructuring initiatives; (f) various summaries, term sheets and other documents material to the Plan; (g) additional information regarding estimated allowed amount of certain Claims, including Administrative Claims and Other Unsecured Claims; (h) the assumptions underlying estimates and projections provided in the Disclosure Statement; and (i) additional risk factors regarding the transactions contemplated by the Plan.

16.     In light of the extensive amount of relevant information contained in the Disclosure Statement, the City submits that the Disclosure Statement contains "adequate information" under section 1125 of the Bankruptcy

Code and that all impaired creditors will be able to cast informed votes to accept or reject the Plan. Accordingly, the Disclosure Statement should be approved.

## II. The Objections Should Be Overruled to the Extent Not Resolved, Addressed or Rendered Moot by the Terms of the Second Amended Disclosure Statement

17. As discussed above, the City has endeavored to accommodate reasonable requests for the inclusion of additional information in the Disclosure Statement received via the Disclosure Statement Comments, the Objections and the Meet and Confer Sessions. Nevertheless, the City disputes its obligation to obtain and provide additional information with respect to certain matters raised in the Objections.

*Objections to Plan Confirmation and Related*
*Discovery Should Await Plan Confirmation*

18. Many of the Objections seek to elicit legal arguments or discovery — often couched in terms of requests for disclosure — regarding issues related to confirmation of the City's Plan.[6]

---

[6] See, e.g., Drumb Objection, at 1-2 (arguing against various aspects of the Plan's proposed treatment of Pension Claims); AFSCME Objection, at ¶ 30 (arguing that the Disclosure Statement should contain additional disclosure regarding the Plan's satisfaction of the "best interests of creditors" test); Oakland County Objection, at ¶ 11 (arguing that the Disclosure Statement should provide additional justification of the Plan's proposed differing treatment of Claims in Class 10 and Class 14); Macomb County Objection, at ¶ 10 (arguing that the Plan may not provide for alternative scenarios with respect to DWSD); Syncora Objection, at ¶ 34 (arguing that the Disclosure Statement should contain further information regarding the basis for

19.     Objections directed at a debtor's proposed plan should not be considered at a disclosure statement hearing.  Courts routinely warn against converting disclosure statement hearings into confirmation hearings. See, e.g., Scioto Valley, 88 B.R. at 172 ("If the creditors oppose their treatment in the plan, but the Disclosure Statement contains adequate information, issues respecting the plan's confirmability will await the hearing on confirmation. Therefore, the Debtor need not obtain creditors' approval of the plan; it need only provide them with adequate information as that term is defined in 11 U.S.C. § 1125(a)(1)."); In re Adell, 325 B.R. 883, 886 (Bankr. D. Fla. 2005) (stating that confirmation issues should be considered at the plan confirmation hearing and not at the disclosure statement hearing); In re United States Brass Corp., 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996) (a disclosure statement hearing should not be converted into a confirmation hearing); Copy Crafters, 92 B.R. at 980 (stating that

_____

(continued…)

classifying and impairing COP Swap Claims; Water & Sewer Bond Trustee Objection, at ¶¶ 35, 41-44 (arguing (a) that the Disclosure Statement should contain information regarding the Plan's compliance with section 943(b)(4) of the Bankruptcy Code and various provisions of state law and (b) that the Plan contains impermissible "death traps" with respect to DWSD Bond Claims); see also Syncora Objection, at ¶¶ 7-12 (itemizing prior discovery requests that were denied in whole or in part by the Court and arguing that the City should be held to account for these determinations, among other things, through the Disclosure Statement approval process).

"care must be taken to ensure that the hearing on the disclosure statement does not turn into a confirmation hearing").

20.    Pursuant to the Third Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment (Docket No. 3632) (the "Confirmation Scheduling Order"), the Court has set forth a comprehensive schedule for discovery and trial with respect to confirmation of the City's Plan.  In the Confirmation Scheduling Order, the Court further admonished that "[p]arties shall not state objections to the plan as objections to the proposed disclosure statement."  Confirmation Scheduling Order, at ¶ 1.  For these reasons, arguments in the Objections against confirmation of the Plan — whether presented as such or as perceived inadequacies in the Disclosure Statement — should be reserved for confirmation.

21.    Notwithstanding the Court's admonishment in the Confirmation Scheduling Order, Oakland County argues that the Disclosure Statement should not be approved because the proposed treatment of claims in Class 10 and Class 14 categorically constitutes "unfair discrimination" rendering the Plan patently unconfirmable.[7]  Oakland County Objection, at ¶ 12.  The decision of whether or not to consider any threshold confirmation issues at the hearing on approval of a

---

[7]    Two other Objecting Parties state that they reserve their rights to present arguments that the Plan is patently unconfirmable in subsequent pleadings. See AFSCME Objection, at n.2; Ambac Objection, at n.2.

disclosure statement rests within the discretion of the bankruptcy court.

Commonwealth Grp., 2013 Bankr. LEXIS 1648, at *7.  Moreover, in the event a

bankruptcy court exercises its discretion to consider threshold confirmation issues,

such issues should not impede approval of the disclosure statement unless it is

established that there are no circumstances under which the plan could be

confirmed.  See id. ("while it may, on occasion, be appropriate to consider issues at

the disclosure hearing stage which could otherwise be raised at confirmation, if the

described plan is fatally flawed so that confirmation would not be possible[,] …

[s]uch action is discretionary and must be used carefully so as not to convert the

disclosure statement hearing into a confirmation hearing, and to insure that due

process concerns are protected"); see also In re Cardinal Congregate I,

121 B.R. 760, 764 (Bankr. S.D. Ohio 1990), (same, and further stating that

"[w]here objections relating to confirmability of a plan of reorganization raise

novel or unsettled issues of law, the Court will not look behind the disclosure

statement to decide such issues at the hearing on the adequacy of the disclosure

statement.").

      22.    Oakland County concedes that the Plan would not be unfairly

discriminatory where, among other things, the proposed treatment of claims is

grounded in a "reasonable basis" and is "necessary for reorganization."  Oakland

County Objection, at ¶ 8.  Such arguments clearly are questions of fact to be

explored through discovery and at trial. Moreover, the question of unfair discrimination in plan confirmation under section 1129(b) of the Bankruptcy Code does not arise unless the "cram down" provisions of section 1129(b) are triggered. See 11 U.S.C. 1129(b)(1) (providing that the requirements of section 1129(b) of the Bankruptcy Code are applicable only if the Plan is not accepted by all voting classes). Because there is — at the very least — the possibility that the City will be able to reach agreements with its key creditor constituencies (as it already has with Class 5 (swap) and Class 8 (UTGO) claimants) and that all Classes ultimately will vote in favor of the Plan, the Plan cannot be patently unconfirmable at this stage on the grounds of unfair discrimination between Classes. In none of the cases cited by Oakland County did courts hold that plans were patently unconfirmable on the basis of unfair discrimination in a prospective cram down scenario, and the City is not aware of any such authority. See In re Holley Apartments, Ltd., 223 B.R. 822, 825 (Bankr. M.D. Fla. 1998) (exercising discretion to disapprove disclosure statement as patently unconfirmable under section 1122, not 1129(b), of the Bankruptcy Code); In re Curtis Center Ltd. P'ship, 195 B.R. 631, 644 (Bankr. E.D. Pa. 1996) (overruling objections under section 1122 of the Bankruptcy Code and approving disclosure statement). Accordingly, the Court should overrule Oakland County's Objection insofar as it argues that the Plan is patently unconfirmable.

*The Requests for Valuations of the City's Assets are Not Necessary for the Disclosure Statement to Provide Adequate Information with Respect to the Plan*

23.     A number of Objecting Parties argue that the Disclosure Statement cannot contain adequate information with respect to the Plan unless the City first obtains and furnishes valuations of some or all of its assets.  In particular, Objecting Parties assert that the Disclosure Statement should provide valuations and other information regarding the potential for monetization of:  (a) the entire DIA Collection; (b) City-owned vacant land; (c) various buildings, including the Veteran's Memorial Building; (d) City parking facilities; (e) the City's portion of the Detroit-Windsor Tunnel; and (f) the Detroit Zoo.[8]

24.     With respect to the DIA Collection, in particular, the City provides an extensive discussion in the Disclosure Statement of (a) Christie's appraisal of the Appraised Art at approximately $454 million to $867 million and (b) the City's determination (and that of the State) that, for various reasons (e.g., restrictions placed on the collection by donors; legal arguments that the collection is held in charitable trust), the remaining works in the DIA Collection ultimately may not be subject to disposition by the City.  See Disclosure Statement, at § VII.A.5.  Accordingly, the City has determined that placing the DIA Collection into a charitable trust for the future benefit of the people of Detroit and

---

[8]     See, e.g., AFSCME Objection, at ¶¶ 35, 40; FGIC Objection, at ¶ 21; Ambac Objection, at ¶ 23, 32; National Objection, at ¶ 30; Syncora Objection, at ¶ 30; COPS Objection, at ¶¶ 36 48; RDPMA Objection, at ¶ 13(g).

surrounding counties in exchange for $816 million (i.e., the commitment by the Foundations and DIA Corp. to raise not less than $466 million conditioned on the State's provision of $350 million in State Contribution funds for the benefit of Holders of Pension Claims) maximizes the value of that collection. The Plan, as amended, does not contemplate the sale or other monetization of any of the assets that the Objecting Parties request be valued, and demands that the City value the entirety of the DIA Collection are the thin wedge of demands that the City adopt a different plan of adjustment that disposes of the DIA Collection as other constituencies might prefer. The City is no more obliged to provide disclosure with respect to such hypothetical alternative plans of adjustment (see 11 U.S.C. § 1125(a)(1) ("adequate information need not include such information about any other possible or proposed plan") than it is to undertake a course of action likely to result in protracted, uncertain and expensive litigation at the expense of a deal that provide the City's retirees with $816 million now.[9] Moreover, whatever the wishes of the applicable Objecting Parties, the City cannot be compelled to liquidate any of its assets in chapter 9. See 6 COLLIER ON BANKRUPTCY ¶ 900.01[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010) ("Because of the public nature of the entity experiencing financial difficulties, there is no provision in [chapter 9] for

---

[9]  In any event, in chapter 9, only the debtor may propose a plan of adjustment. See 11 U.S.C. § 941 ("The debtor shall file a plan for the adjustment of the debtor's debts.").

liquidation of its assets and distribution of the proceeds to creditors."); WILLIAM L.

NORTON, JR., NORTON BANKR. L. & PRAC. § 90:1 (William L. Norton, Jr. ed., 3d

ed. 2008) ("[R]elief under [c]hapter 9 does not contemplate or permit liquidation of

assets for the benefit of creditors.").  Accordingly, the Disclosure Statement

provides adequate information with respect to the DIA Collection, and how that

collection is to be addressed by *the City's* Plan, for creditors to cast informed votes.

*The Disclosure Statement and Solicitation Procedures*
*Protect the Interests of Holders of Pension and OPEB Claims*

25.    A number of Objecting Parties — including individuals, unions

and retiree representatives — express concerns regarding the adequacy of

information provided in the Disclosure Statement to holders of Pension Claims and

OPEB Claims (such holders, collectively, "Pension and OPEB Claimants").[10]

26.    The City is sensitive to the importance of providing Pension

and OPEB Claimants with information about (a) their current pension and retiree

health benefits and (b) the proposed treatment of their Pension Claims and OPEB

Claims under the Plan in a manner that is more straightforward and easily

understood by a typical holder of such Claims than the extensive, technical

information provided elsewhere in the Disclosure Statement.  Accordingly, in

consultation with the Retirement Systems, the Retiree Committee and other retiree

---

[10]    See, e.g., Hale Objection, at 1; Drumb Objection, at 2-3; Retiree Associations
       Objection, at ¶¶ 17-64; UAW Objection, at ¶¶ 2-4; RDPMA Objection, at ¶ 13.

and union representatives, the City has taken steps to ensure that Pension and OPEB Claimants are provided with sufficient disclosure and  information, in a format designed to be comprehensible by the layperson, to allow them the opportunity to vote on the Plan from a fully informed position.

27.     To promote this end, on April 10, 2014, the City filed the Corrected Motion of the City of Detroit for Entry of an Order Establishing Supplemental Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment with Respect to Pension and OPEB Claims (Docket No. 3943) (the "Supplemental Solicitation Procedures Motion").  In the Supplemental Solicitation Procedures Motion, the City seeks approval of various procedures and other measures (collectively, the "Supplemental Solicitation Procedures") developed by the City in consultation with the Retiree Committee, other retiree and union representatives and the Retirement Systems for the specific purpose of protecting the interests of Pension and OPEB Claimants.

28.     The Supplemental Solicitation Procedures include the following, among other procedures:

- The Plain Language Inserts.  Consistent with views previously expressed from the bench by the Court, the Supplemental Solicitation Procedures Motion contemplates that the solicitation procedures package mailed to Pension and OPEB Claimants will include an insert (the "Plain Language Insert") for each of Classes 10, 11 and 12 that includes less technical disclosure on the following topics:  (a) the City's pension and OPEB obligations generally; (b) the Plan, the Disclosure Statement, the classification of Pension Claims and OPEB

Claims and solicitation and voting procedures; (c) the effect of the Plan on pension benefits; (d) the effect of the Plan on healthcare benefits and the creation of the VEBA; (e) the $816 million in funds available under the Plan from DIA Corp., the Foundations and the State to support recoveries on Pension Claims; (f) the Sixth Circuit Eligibility Appeal and the potential consequences of a reversal of the Court's ruling that the City is eligible to be a chapter 9 debtor and may impair its pension obligations; (g) the calculation of future benefits following the Effective Date of the Plan; (h) the potential restoration of certain pension benefits; (i) the availability of additional income stabilization benefits for certain holders of Pension Claims; (j) the proposed recoupment under the Plan of certain payments received from the ASF by certain holders of GRS Pension Claims; and (k) details of the releases to be granted by Pension and OPEB Claimants in voting to accept the Plan and if the Plan is approved, respectively.

Since filing the Supplemental Solicitation Procedures Motion, the City has determined to included the claim and benefits treatment sections of the Plain Language Inserts within, and at the beginning of, the Disclosure Statement. Accordingly, the relevant portions of the Plain Language Insert are incorporated as Section II.A.2 to the Second Amended Disclosure Statement.

- <u>Estimation of Pension Claims and OPEB Claims on Behalf of Pension and OPEB Claimants and Population of Customized Ballots</u>. The City proposes to estimate — in cooperation with the Retirement Systems, the Retiree Committee and other retiree and union representatives — the estimated amount of an individual's Pension Claim or OPEB Claim for the purpose of voting on the Plan and to populate customized ballots for Pension and OPEB Claimants with the applicable estimated amounts. The City has proposed various customized ballots designed specifically for each category of Pension and OPEB Claimants, including, for example, discrete ballots in Classes 10 and 11 for use by current employees and retirees.

29.     The City submits that combination of the Supplemental

Solicitation Procedures (developed in consultation with the Retiree Committee,

Retirement Systems and other retiree union representatives) and the Plain

Language Insert (which is incorporated into the Second Amended Disclosure

Statement) provides Pension and OPEB Claimants with all available information

regarding the Plan in a format that is easier for a typical holder of Class 10, 11 and

12 Claims to understand.  Such disclosure satisifes the standard set forth at

section 1125(a) of the Bankruptcy Code.

*The Disclosure Statement Contains Adequate*
*Information with Respect to the DIA Settlement*

30.     Several Objecting Parties argue that the Disclosure Statement

should include additional information with respect to the terms of the DIA

Settlement.[11]

31.     The City believes that the current form of the Disclosure

Statement contains ample information with respect to the DIA Settlement to allow

creditors to make informed decisions regarding how they should vote with respect

to the Plan.  Together, the second amended Disclosure Statement and Plan (which

is attached as Exhibit A to the Disclosure Statement) include:  (a) background

regarding (i) the DIA, (ii) the operation of the DIA by DIA Corp., (iii) the DIA

Collection and (iv) the City-commissioned valuation of the works that potentially

---

[11]    See, e.g., AFSCME Objection, at ¶¶ 43-44; FGIC Objection, at ¶ 21; DPSU
        Objection, at ¶ 4(a); National Objection, at ¶ 31; Syncora Objection, at ¶¶
        32-33; COPS Objection at ¶¶ 36-43; Ambac Objection, at ¶¶ 20-24; RDPMA
        Objection, at ¶ 13(b); UAW Objection, at ¶ 5; Retiree Committee Objection,
        at ¶ A-2; Retirement Systems Objection, at ¶¶ 10-17.

could be monetized for the City's benefit (see Disclosure Statement, at § VII.A.5); (b) details of the DIA Settlement including (i) the identities of the Foundations and the funds to be provided by them, (ii) the funds to be provided by DIA Corp.; (iii) the transfer of the DIA Assets into charitable trust and (iv) the conditions to the Foundations' participation (see id. at § IV.E); (c) certain risks relevant to the DIA Settlement (see id. at § VI.E); (d) an 18-page term sheet providing the material terms of the DIA Settlement (see Plan, at Ex. I.A.79); and (e) a description of the terms of the anticipated State Contribution Agreement, pursuant to which the State will provide the State Contribution, which is one of the primary conditions to the Foundations' participation (see Plan, at Ex. I.A.255).

32.    The City believes that this information provides creditors with more than adequate information on the terms and conditions of, and risks associated with, the DIA Settlement to allow such creditors to determine how to vote with respect to the Plan.

*The Disclosure Statement Contains Adequate Information*
*With Respect to A Potential Transaction Involving DWSD*

33.    Various Objecting Parties argue that the City must add additional information to the Disclosure Statement regarding DWSD and any potential transaction involving DWSD.[12]  As set forth above, however, all

---

[12]    See, e.g., FGIC Objection, at ¶ Ex. B, ¶ 2; Oakland County Objection, at ¶ 3; BHAC Objection, at ¶¶ 18-32; Macomb County Objection, at ¶¶ 10-20;

Objections and requests for further information regarding the DWSD Transaction, the GLWA and the bonds to be issued by the GLWA were rendered moot by the elimination of these concepts from the Second Amended Plan.

34.     Even so, the Disclosure Statement offers a wealth of information regarding the DWSD, and its history, operations and historical, current and projected financial performance (with much of this information having been added to the Amended Disclosure Statement at the request of certain Objecting Parties).  <u>See</u> Amended Disclosure Statement, at § VII.A.3; Exs. K, L.  This information provides creditors holding claims in Classes 1A, 1B and 1C of the Plan (<u>i.e.</u>, Holders of DWSD debt) with an ample basis to assess the value of the consideration the City proposes to exchange for such claims (<u>i.e.</u>, new DWSD debt) and, thus, with adequate information to make an informed decision on whether to accept or reject the Plan.

35.     The City further believes that it has provided all necessary information currently available to constitute adequate information with respect to a potential transaction involving DWSD and a private party.  As more fully described in the Amended Disclosure Statement, the Emergency Manager recently

---

(continued…)

Assured Objection, at ¶¶ 24-52; Syncora Objection, at ¶ 24; National Objection, at ¶¶ 8-22; Ambac Objection, at ¶ 34; Ad Hoc Committee Objection, at ¶¶ 1-10; Water & Sewer Bond Trustee Objection, at ¶¶ 15-50; Retirement Systems Objection, at ¶¶ 29-33.

issued a request for information regarding a potential transaction involving DWSD and one or more private parties.  <u>See</u> Amended Disclosure Statement, at § VIII.K.1.b.  Initial responses to the DWSD RFI were due April 7, 2014; binding proposals are due June 1, 2014; and any transaction is projected to close during the month of August 2014.  The City received several non-binding indications of interest with respect to the DWSD RFI (collectively, the "<u>RFI Responses</u>") and is only beginning to address such indications of interest.  Put simply, outside of a description of the process and timeline with respect to the DWSD RFI (which description is included in the Second Amended Disclosure Statement), there is no meaningful further disclosure to be had with respect to a potential public private transaction involving the DWSD or the likely terms of such a transaction.

36.    Certain Objecting Parties assert that the Disclosure Statement lacks adequate information with respect to the basis for, or risks associated with, certain provisions of the Plan that contemplate, for example, DWSD prefunding its allocable share of its obligations to the GRS.[13]  The City believes that such issues go primarily to confirmation of the Plan but has included (a) further information with respect to such prefunding and (b) appropriate additional risk factors in the

---

[13]    <u>See</u>, <u>e.g.</u>, FGIC Objection, at ¶ Ex. B, ¶ 2; Oakland County Objection, at ¶ 3(e); BHAC Objection, at ¶ 31; Assured Objection, at ¶ 38; Syncora Objection, at ¶ 24; National Objection, at ¶ 22.

Second Amended Disclosure Statement to address these concerns for the purposes of Disclosure Statement approval.

## Conclusion

37.     For the reasons set forth herein and in the Disclosure Statement Motion, the City requests that the Court overrule the Objections and grant the Disclosure Statement Motion.

Dated:  April 14, 2014            Respectfully submitted,


 /s/Heather Lennox
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
Telephone:  (248) 359-7300
Facsimile:  (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

ATTORNEYS FOR THE CITY

# **EXHIBIT A**

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **1.**  Objection to Disclosure Statement, by Creditor Ben McKenzie, Jr. and Memorandum of Law (Docket No. 3021) (and Objection to Amended Disclosure Statement, by Creditor Ben McKenzie, Jr. and Memorandum of Law (Docket No. 3846)) | |
| The Objecting Party argues that the Disclosure Statement is inadequate because it "does not reveal the availability of $15,200,000.00 being held in escrow by the State of Michigan … for the purpose of paying pre-petition claims relating to the operation of motor vehicles for which the city is self-insured." | **Addressed**.  The City has provided further information responsive to this Objection in the Second Amended Disclosure Statement.  <u>See</u> § VII.A.5(g). |
| **2.**  Objection to City of Detroit's Disclosure Statement with Respect to Plan of Adjustment [filed by Mary Hale] (Docket No. 3362) (the "<u>Hale Objection</u>")* | |
| The Objecting Party states that "[a]s a City of Detroit Employee, I would like to know how this would affect my livelihood." | **Addressed.**  The City has provided further information responsive to this Objection in the Second Amended Disclosure Statement, including by incorporating therein a plain language summary of future benefits.  <u>See</u> § II.A.2. |
| **3.**  John P. Quinn's Objections to Disclosure Statement (Docket No. 3390) | |
| The Objecting Party argues that the Disclosure Statement is inadequate because it references Plan exhibits that have not been filed, and because it fails to provide adequate information regarding (i) formulae used to reduce pensions of former ASF participants; (ii) historical GRS funding levels and (iii) the potential revisiting of elections made by some GRS participants to receive reduced pension payments in exchange for the continuation of pension payments, after death, to a designated beneficiary. | **Addressed in part, disputed in part.**  The City has included certain additional Plan exhibits with the Second Amended Plan.  Remaining Plan exhibits will be filed pursuant to the schedule set forth in the Preamble to the Second Amended Disclosure Statement.  The City has provided further information regarding the ASF in the Second Amended Disclosure Statement.  <u>See</u> § II.A.2.  Information regarding historical funding levels of GRS or the revisiting of benefit elections is not necessary for the Disclosure Statement to provide adequate information with respect to the Plan. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

13-53846-tjt    Doc 4075    Filed 04/14/14    Entered 04/14/14 19:27:34    Page 31 of 54

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **4.** Objections to City Statement of Disclosure [form Objections filed by Barbara A. Magee (Docket No. 3416), Vera C. Magee (Docket Nos. 3418, 3424), Carl Williams and Hassan Aleem (Docket No. 3422); Ruby P. Magee (Docket No. 3427) and Murphy Wilbert Magee (Docket No. 3431)]* | |
| The Objecting Parties argue that the City's reservation of rights to modify the Disclosure Statement is improper and state that they did not receive a copy of the Plan or Disclosure Statement and that insufficient time was provided for the filing of objections to the Disclosure Statement. | **Disputed.** The City reserves its right to modify the Disclosure Statement, as necessary and appropriate. The remainder of the Objection concerns relief already granted the City in the Disclosure Statement Procedures Order. The Hearing Notice provided recipients with instructions on how to obtain a copy of the Disclosure Statement free of charge. |
| **5.** Interested Party David Sole's Objection to City of Detroit's Disclosure Statement with Respect to Plan of Adjustment (Docket No. 3447)* | |
| The Objecting Party argues that the Disclosure Statement fails to provide adequate information regarding (i) "the role of the banks in creating the economic crisis in Detroit through their predatory mortgage-lending practices;" (ii) annual "charge backs" on tax foreclosures paid by the City to Wayne County; (iii) "cutbacks imposed" by the City to fund the City's restructuring efforts; and (iv) "the State's questionable withholding of revenue sharing." | **Disputed.** The City believes that further information regarding the subject matters of the Objection is not necessary for the Disclosure Statement to provide adequate information with respect to the Plan. |
| **6.** Objection of Jamie S. Fields to City of Detroit's Motion for an Order Approving Amended Disclosure Statement with Respect to the Plan of Adjustment Dated March 31, 2014, and Setting Confirmation Procedures (Docket No. 3485) | |
| The Objecting Party argues that the Disclosure Statement fails to provide adequate information regarding (i) the underfunding status of the PFRS and the ability of PFRS members to elect to receive reduced pension payments in exchange for the continuation of payments, after death, to a beneficiary; (ii) DPD and City crime statistics; (iii) actuarial assumptions used by the City in calculating pension underfunding; (iv) financial projections, sources of revenue and City-owned assets; (v) retiree health care plan costs; (vi) funds received by the City for blight removal; (vii) planned real estate development projects; (viii) federal aid to the City; and (ix) the Detroit Future City revitalization proposal. | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement provides certain additional information regarding actuarial assumptions used by the City to calculate pension underfunding (see § II.A.2), financial projections (see Exs. I-M) and issues related to City past and future revitalization plans (see §§ VII.D, VIII.L, IX). The City believes that the Disclosure Statement contains adequate information regarding the other subjects addressed in the Objection. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **7.**  **Corrected Objection to Amended Disclosure Statement by the Housing Is a Human Right Coalition (Docket No. 3500)*** | |
| The Objecting Party argues that the Disclosure Statement is inadequate because it fails to disclose (i) information regarding, and certain litigation involving, section 37-2 of the Detroit City Charter, regarding nuisance abatement; and (ii) the existence of the so-called "People's Plan," a document drafted by a local political advocacy group called Detroiters Resisting Emergency Management | **Disputed.**  The City believes that information regarding the subject matter of the Objection is not necessary for the Disclosure Statement to provide adequate information with respect to the Plan. |
| **8.**  **Objection to City of Detroit's Disclosure Statement with Respect to Plan of Adjustment [filed by Nancy Brigham] (Docket No. 3616)*** | |
| The Objecting Party articulates objections to the Plan, but notes that the Disclosure Statement fails to address the effect of predatory mortgage lending on City neighborhoods. | **Disputed.**  Objections to the terms of the Plan are not properly before the Court at this time.  In addition, the City believes that the Second Amended Disclosure Statement otherwise provides adequate information with respect to the events leading up to the Chapter 9 Case. |
| **9.**  **Objection to City of Detroit's Disclosure Statement with Respect to Plan of Adjustment [filed by Steve Babson] (Docket No. 3617)*** | |
| The Objecting Party argues that the Disclosure Statement fails to address the effect of predatory mortgage lending on City neighborhoods. | **Disputed.**  The City believes that the Second Amended Disclosure Statement provides adequate information with respect to the events leading up to the Chapter 9 Case. |
| **10.**  **Objection to City of Detroit's Disclosure Statement with Respect to Plan of Adjustment [filed by Constance Mary Phillips] (Docket No. 3663)** | |
| The Objecting Party argues that the Disclosure Statement fails to provide information regarding the effect of the Plan on retirees after 2023.  The Objecting Party also asserts that insufficient notice was provided of the filing of the Disclosure Statement. | **Addressed in part, disputed in part.**  The Second Amended Disclosure Statement provides additional clarification regarding future retirement benefits.  See § II.A.2.  The City believes that this information constitutes adequate information with respect to future retirement benefits.  The remainder of the Objection concerns relief already granted the City in the Disclosure Statement Procedures Order. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

In re City of Detroit, Michigan
Chapter 9 Case No. 13-53846 (SWR)
Summary of the City's Responses to Disclosure Statement Objections

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **11.** **Objection to City of Detroit's Disclosure Statement with Respect to Plan of Adjustment [filed by Mary Jo Vortkamp] (Docket No. 3664)*** | |
| The Objecting Party argues that the Disclosure Statement is inadequate because it fails to provide adequate information regarding (i) City tax revenues, (ii) crime prevention and (iii) the effect of the Plan on pensions of DWSD employees. The Disclosure Statement also should include an audit of DWSD and the Planning and Development Department. | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement provides additional clarification regarding future retirement benefits, including for DWSD employees. See § II.A.2. The City believes that the Second Amended Disclosure Statement otherwise provides adequate information with respect to the subject matters of the Objection. |
| **12.** **Objection to City of Detroit's Disclosure Statement with Respect to Plan of Adjustment [filed by Cheryl LaBash] (Docket No. 3669)*** | |
| The Objecting Party argues that the Disclosure Statement fails to provide adequate information regarding (i) the effect of predatory mortgage lending upon the City; (ii) the impact of alleged "wrongdoing" of banks upon the Retirement Systems; and (iii) City plans to increase employment. | **Disputed.** The City believes that the Second Amended Disclosure Statement otherwise provides adequate information with respect to the events leading up to the Chapter 9 Case and initiatives to revitalize the City and increase employment prospects. |
| **13.** **Objection to City of Detroit's Disclosure Statement with Respect to Plan of Adjustment [filed by Michael D. Shane] (Docket No. 3717)** | |
| The Objecting Party argues that the Disclosure Statement fails to provide adequate information regarding, among other things, (i) the effect of predatory mortgage lending practices upon the City; (ii) property tax chargebacks; (iii) the impact of improper bank practices upon pension underfunding; (iv) the potential effects of privatization of City services; (v) the City's ability to "claw back" termination fees with respect to the Swaps Agreements and the legality of securing swap payments with Casino Revenues; (vi) the legality of the COPs; (vii) tax abatements; and (viii) unpaid garbage collection fees. | **Addressed in part, disputed in part.** On April 11, 2014, the Bankruptcy Court announced its decision approving the Swap Settlement Agreement, including its Plan support provisions, thereby mooting the Objecting Party's request for information regarding potential alternatives with respect to the Swap Agreements. See § VIII.E.2. The City believes that the Second Amended Disclosure Statement otherwise provides all information necessary to constitute adequate information with respect to the events leading up to the City's chapter 9 case and the City's restructuring initiatives. See e.g., §§ VII, VIII.L, IX. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, i.e., parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **14.**     Objection to City of Detroit's Disclosure Statement with Respect to Plan of Adjustment [filed by Jean Vortkamp] (Docket No. 3771) | |
| The Objecting Party argues that the Disclosure Statement fails to provide adequate information regarding, among other things, (i) tax revenues, chargebacks and state revenue sharing; (ii) swaps payments made by the City; (iii) alleged voting fraud in municipal elections; (iv) City funds allocated for development projects such as the M-1 rail line and the new arena project; and (v) the cost of City restructuring professionals and the bidding process through which the City selected such professionals. | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement provides additional information regarding the Professional Fee Reserve provided for under the Plan. The City believes that the Second Amended Disclosure Statement otherwise provides all information necessary to constitute adequate information with respect to the events leading up to the City's chapter 9 case and the City's restructuring initiatives. See, e.g., §§ VII, VIII.L, IX. |
| **15.**     Objection to City of Detroit's Disclosure Statement with Respect to Plan of Adjustment [filed by Richard Drumb] (Docket No. 3806) (the "Drumb Objection")* | |
| The Objecting Party primarily articulates objections to the Plan, but states that the Disclosure Statement is inadequate because it fails to "spell out what the impact [of the Plan] would be on the individual vested pension holder." | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement incorporates a "plain language" section providing clearer guidance on the impact of the Plan on individual pension holders. See § II.A.2. Objections to the City's Plan, however, should be reserved to confirmation. |
| **16.**     Objections to Debtor Amended Disclosure Statement [filed by Dennis Taubitz] (Docket No. 3844) | |
| The Objecting Party argues that the Disclosure Statement fails to provide adequate information regarding City-owned assets. The objector also asserts that the City failed to (i) provide hard copies of the Disclosure Statement to creditors who lack email access and (ii) respond to the objector's request for additional disclosures. The objector accuses the City of fraudulent conduct and of intentionally denying creditors due process. | **Disputed.** The City believes that the Second Amended Disclosure Statement provides all information necessary to constitute adequate information with respect to the City's assets. See, e.g., § VII.A.5. The Hearing Notice provided creditors with information on how to obtain a copy of the Disclosure Statement at no charge. The City denies the Objecting Party's accusations of fraudulent conduct and attempting to deny creditors due process. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **17.**    **The Michigan Council 25 of the American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees' Objection to the Amended Disclosure Statement with Respect to Amended Plan for the Adjustment of Debts of the City of Detroit (Docket No. 3847) (the "AFSCME Objection")** | |
| The Objecting Party argues that the Disclosure Statement fails to provide adequate information regarding (i) proposed recoveries for Class 11 Claims, the sources of such recoveries and risk factors affecting such recoveries; (ii) recoveries that non-accepting Class 10 and 11 Claims would receive in the event that the full amount of the State Contribution is not received; (iii) the actuarial methodology used in calculating GRS underfunding; (iv) the basis for classifying Class 5 Claims as Secured Claims; (v) proposed recoveries for OPEB claims of active employees and the basis for omitting active employees from Class 12; (vi) the value of City-owned assets; (vii) a rationale regarding how the DIA Settlement does not offend the best interests of creditors test; and (viii) the aggregate amount of Other Unsecured Claims. | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement provides additional information regarding estimated recoveries for various classes of creditor and the assumptions underlying those recoveries, as well as risks related to such recoveries and the aggregate amount of Other Unsecured Claims in Class 14 under the Plan. See § II.B. The City believes that the inclusion of additional valuation information in the Second Amended Disclosure Statement is not necessary to provide adequate information with respect to the Plan, and arguments regarding the application of the best interests of the creditors test should be preserved for confirmation. |
| **18.**    **Objection of Financial Guaranty Insurance Company to Motion of the City of Detroit for Approval of the Proposed Disclosure Statement (Docket No. 3848) (the "FGIC Objection")** | |
| The Objecting Party argues that the Disclosure Statement fails to provide adequate information regarding (i) the DIA Settlement, efforts undertaken to satisfy the preconditions thereto and potential consequences of non-consummation; (ii) the value of the DIA Collection and what the City will do with the DIA Collection if the DIA Settlement is not consummated; (iii) risk factors and potential consequences associated with the potential failure of DWSD to prefund its share of pension UAAL, the potential inability of the City to secure the Exit Facility and the potential disgorgement of the proceeds of the COPs transactions; and (iv) how the Plan will be implemented after the expiration of the Emergency Manager's term. | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement identifies risks relating to the Exit Facility and the potential disgorgement of the proceeds of the COPs transactions, among other things, and provides additional information on the means of implementation of the Plan following the City's emergence from chapter 9. See §§ VI, IX.A. The City believes that the Second Amended Disclosure Statement contains all currently available information necessary to constitute adequate information with respect to the DIA Settlement and the value of the DIA Collection. See §§ IV.F, VII.A.5.a. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

13-53846-tjt    Doc 4075    Filed 04/14/14   -6-  Entered 04/14/14 19:27:34    Page 36 of 54

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **19.** Joint Objection to City of Detroit's Disclosure Statement by Creditors T&T Management, Inc., HRT Enterprises, and the John W. and Vivian M. Denis Trust (Docket No. 3854) (the "T&T Objection") | |
| The Objecting Party argues that the Disclosure Statement is inadequate because it fails to specify the treatment of claims arising from lawsuits brought against the City seeking "just compensation" pursuant to the Fifth Amendment to the United States Constitution (the "Fifth Amendment") for takings of private property, which claims, the objectors assert, should be paid in full. | **Disputed.** The Second Amended Disclosure Statement provides creditors with all information necessary to constitute adequate information with respect to the treatment of litigation claims (see § IV.Q), including claims asserted pursuant to the Fifth Amendment. The City disputes that such claims are entitled to preferential treatment under the Plan. |
| **20.** Oakland County's Objection to the City of Detroit, Michigan's Proposed Amended Disclosure Statement (Docket No. 3855) (the "Oakland County Objection") | |
| The Objecting Party argues that the Disclosure Statement is inadequate because it references certain exhibits to the Plan that have not been filed and because it fails to provide adequate information regarding (i) certain risk factors associated with the City's operation of DWSD; (ii) executory contracts of DWSD and the City's intention to assume or reject such contracts; (iii) factors the City will consider in determining whether to enter into the DWSD Transaction and whether the Plan would remain feasible if the DWSD Transaction is consummated; (iv) the rationale for requiring DWSD to pre-fund its pension liabilities and an explanation of why such requirement is not "an improper or illegal debt of the DWSD;" (v) whether confirmation of the Plan would require the City to raise water and sewer rates; and (vi) the legal justification for proposing disparate treatment of similarly-situated classes of unsecured creditors. | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement eliminates the concepts of the GLWA and the DWSD Transaction. See § VIII.L.1. Accordingly, all of the Objecting Party's arguments directed at these concepts are rendered moot. In addition, the Second Amended Disclosure Statement provides information regarding the treatment of executory contracts relating to DWSD (see § VII.A.3.b.i) and the risks associated with DWSD's prefunding of its pension obligations (see § VI.G). The City believes that the Second Amended Disclosure Statement otherwise provides all currently available information necessary to constitute adequate information with respect to DWSD and any potential private transaction involving DWSD. See, e.g., §§ VII.A.3.b.i, VIII.L.1. The legal arguments raised by the Objecting Party with respect to the proposed prefunding of pension liabilities by DWSD and the classification of claims under the Plan should be reserved for confirmation. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| The Objecting Party further alleges that the Plan is patently unconfirmable because the disparity between the estimated percentage recovery proposed for Class 10 and the estimated percentage recovery proposed for Class 14 constitutes unfair discrimination. | **Disputed.** A reasonable basis exists for the proposed treatment of Claims in Class 10 and Class 14, which treatment is necessary for the City's restructuring strategy. Moreover, the Plan cannot be patently unconfirmable on the grounds of unfair discrimination when it is not definitively established that the provisions of 1129(b) of the Bankruptcy Code will be triggered with respect to confirmation of the Plan. The Plan, therefore, is not patently unconfirmable, and these arguments should be reserved for Plan confirmation. |
| **21.**     **Limited Objection of Berkshire Hathaway Assurance Corporation to Motion of the City of Detroit for Approval of the Proposed Disclosure Statement (Docket No. 3856) (the "BHAC Objection")** | |
| The Objecting Party argues that the Disclosure Statement fails to provide adequate information regarding (i) creditor recoveries under various potential transaction scenarios involving DWSD; (ii) the factors the City will consider in evaluating potential transactions involving DWSD and associated risk factors; (iii) competing views regarding the City's proposed treatment of lease payments made following the DWSD Transaction as operating and maintenance expenses; (iv) DWSD projected financial information; (v) whether the Projections assume that the DWSD Transaction will be consummated; (vi) updates to the DWSD projections provided to certain creditors during mediation; (vii) the terms of the proposed New DWSD Bonds, including a "plain-English" comparison of the new bonds versus existing bonds; (viii) details regarding the prefunding of DWSD pension liabilities; (ix) a description of the position of certain bond insurers that such insurers reserve the right to deny coverage under the applicable insurance policies should any bondholder vote in favor of the Plan as currently proposed; (x) the position of certain bond insurers that any cramdown of special revenue bonds would violate chapter 9 of the Bankruptcy Code and that the Plan is not "fair and equitable" as to Classes 1A through 1D; and (xi) a description of the proposed treatment of bond insurer claims. | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement eliminates the concepts of the GLWA and the DWSD Transaction. See § VIII.L.1. Accordingly, the Objecting Party's arguments directed at these concepts are rendered moot. The City has requested further information from the Objecting Party regarding the potential inclusion in Section I.A.7 of the Second Amended Disclosure Statement certain additional information regarding the reservation of rights of certain bond insurers to deny coverage in the event bondholders vote in favor of the Plan. The City believes that the Second Amended Disclosure Statement otherwise provides all currently available information necessary to constitute adequate information with respect to DWSD and any potential private transaction involving DWSD. See, e.g., §§ VII.A.3.b.i, VIII.L.1. The legal arguments raised or suggested by the Objecting Party with respect to the treatment of lease payments as operating and maintenance expenses, the proposed prefunding of pension liabilities by DWSD and the treatment of claims under the Plan is not fair and equitable should be reserved for confirmation. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

13-53846-tjt    Doc 4075    Filed 04/14/14   -8-   Entered 04/14/14 19:27:34    Page 38 of 54

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **22.** Objection by the Detroit Public Safety Unions to the Disclosure Statement [filed by (a) the Detroit Fire Fighters Association, (b) the Detroit Police Officers Association, (c) the Detroit Police Lieutenants & Sergeants Association and (d) the Detroit Police Command Officers Association] (Docket No. 3857) (the "Public Safety Unions Objection") | |
| The Objecting Party argues that the Disclosure Statement fails to provide adequate information regarding (i) the scope and effect upon Pension Claims of the Plan's release and injunction provisions; (ii) the nature and value of claims that would be released pursuant to the Plan's release provisions; (iii) the State Contribution Agreement and conditions thereto; (iv) savings the City will realize as a result of the pension "freeze;" (v) the proposed treatment of "hardship cases;" (vi) the likelihood PFRS pensions will be restored; (vii) the risk that the COPs will be invalidated; (viii) supporting information regarding the calculation of estimated percentage recoveries; (ix) collective bargaining agreements and City Employment Terms relevant to the Public Safety Unions; (x) the terms and status of the DIA Settlement, and the potential impact on creditor recoveries if the DIA Settlement is not consummated; (xi) the PFRS Hybrid Pension Plan and PFRS Hybrid Pension Formula; (xii) the impact on creditor recoveries of the Swap Settlement Agreement. | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement provides additional information regarding estimated recoveries for various classes of creditor and the assumptions and risks underlying those recoveries. See § II.B. The City (i) believes that the Second Amended Disclosure Statement contains all necessary information currently available regarding the DIA Settlement (see §§ IV.F, VII.A.5.a) and (ii) intends to provide the terms of the State Contribution Agreement when the agreement becomes available. The Second Amended Disclosure Statement further includes additional information on the Income Stabilization Payments to address cases of hardship. See § II.A.2. The City believes that the Second Amended Disclosure Statement otherwise provides all information necessary to constitute adequate information with respect to Pension Claims. See id. In addition, the City has added a risk factor in the Second Amended Disclosure Statement with respect to the potential invalidation of the COPs. See § VI.M. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

-9-

13-53846-tjt    Doc 4075    Filed 04/14/14    Entered 04/14/14 19:27:34    Page 39 of 54

In re City of Detroit, Michigan
Chapter 9 Case No. 13-53846 (SWR)
Summary of the City's Responses to Disclosure Statement Objections

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| 23.    County of Macomb, Michigan's Objection to Disclosure Statement with Respect to Plan for the Adjustment of Debts of the City of Detroit (Docket No. 3858) (the "Macomb County Objection") | |
| The Objecting Party argues that the Disclosure Statement is inadequate because the City must state "the precise option the Debtor proposes to pursue" with respect to the DWSD rather than stating that is considering certain alternatives, and because it fails to provide adequate information regarding (i) whether the City intends to assume or reject a certain wastewater services disposal contract between the City and the Oakland-Macomb Interceptor Drain Drainage District; (ii) whether potential transactions involving DWSD would comply with applicable federal, state and local laws; (iii) the status of DWSD-related negotiations regarding the DWSD Transaction; and (iv) the effect of all potential transactions involving DWSD on ratepayers. | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement eliminates the concepts of the GLWA and the DWSD Transaction. See § VIII.L.1. Accordingly, all of the Objecting Party's arguments directed at these concepts are rendered moot. The City believes that the Second Amended Disclosure Statement otherwise provides all currently available information necessary to constitute adequate information with respect to DWSD and any potential private transaction involving DWSD. See, e.g., §§ VII.A.3.b.i, VIII.L.1. In addition, the Second Amended Disclosure Statement provides information regarding the treatment of executory contracts relating to DWSD (see § VII.A.3.b.i) and the risks associated with DWSD's prefunding of its pension obligations (see § VI.G). The City disputes that the Plan may not provide for alternative scenarios with respect to DWSD, but this argument should be reserved for Plan confirmation. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

13-53846-tjt    Doc 4075    Filed 04/14/14    Entered 04/14/14 19:27:34    Page 40 of 54

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| 24. **Objection of Assured Guaranty Municipal Corp. to Motion of the City for Approval of the Proposed Disclosure Statement (Docket No. 3864) (the "Assured Objection")** | |
| The Objecting Party argues that the Disclosure Statement fails to provide adequate information regarding (i) the Interest Rate Reset Chart and methodology used in developing such chart; (ii) details regarding all potential DWSD transactions and the potential impact of such transactions upon affected creditors; (iii) projected revenues and expenses of the GLWA and related risk factors; (iv) detailed information regarding the potential sale or privatization of DWSD; (v) the basis for, assumptions underlying and effects of requiring the DWSD to pre-fund its share of pension liabilities; (vi) whether covenants in DWSD bond documents will be retained if new bonds are issued; (vii) the new bond issuance described in Emergency Manager Order No. 22; (viii) risks associated with issuing bonds pursuant to the Plan that lack call protection; (ix) terms of the Plan UTGO Notes, whether the Plan UTGO Notes will be insured and potential market reaction to the issuance of the Plan UTGO Notes; (x) the UTGO Millage; (xi) potential effects of the UTGO Litigation; (xii) treatment of bond insurer claims under the Plan; (xiii) potential tax consequences of various securities to be issued under the Plan; and (xiv) the source and amount of the Professional Fee Reserve. | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement eliminates the concepts of the GLWA and the DWSD Transaction. See § VIII.L.1. Accordingly, all of the Objecting Party's arguments directed at these concepts are rendered moot. The City believes that the Second Amended Disclosure Statement otherwise provides all currently available information necessary to constitute adequate information with respect to DWSD and any potential private transaction involving DWSD. See, e.g., §§ VII.A.3.b.i, VIII.L.1. In addition, the Second Amended Disclosure Statement provides further information regarding estimated recoveries for various classes of creditor and the assumptions and risks related to such recoveries. See II.B. The City has agreed to a settlement of the UTGO Litigation, which, among other things, eliminates the concept of Plan UTGO Notes. See § VII.B.2.a. Accordingly, requests for further information regarding potential outcomes of the UTGO Litigation and the Plan UTGO Notes have been rendered moot. The Second Amended Disclosure Statement also provides further information on potential tax consequences of the transactions contemplated by the Plan (see § XII) and the Professional Fee Reserve (see § IV.J). |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **25.** Objection to Motion of the Debtor for Approval of the Proposed Disclosure Statement (Docket No. 3865) (the "<u>Syncora Objection</u>") | |
| The Objecting Party argues that the Disclosure Statement is inadequate because it references exhibits to the Plan that have not been filed, and because it fails to provide adequate information regarding (i) the basis of the COP Swap Claims and the potential treatment of such Claims if the Swap Settlement is approved or denied; (ii) the rationale for treating UTGO Claims and LTGO Claims as Unsecured Claims; (iii) financial projections and associated assumptions; (iv) financial forecasts beyond the first 10 years following the Effective Date; (v) whether the estimated percentage recoveries for unsecured creditors represent a present value estimate; (vi) the potential effects if the Retirement Systems experience lower rates of return than expected; (vii) the adequacy of funding of new defined benefit plans; (viii) the risks associated with various DWSD-related scenarios; (ix) the City's ability to effectuate the Plan going forward; (x) how the proposed reinvestment initiatives will benefit the City's residents and creditors; (xi) the rationale for not selling or otherwise monetizing City-owned assets such as the DIA Collection, Belle Isle Park and City-owned land; and (xii) the DIA Settlement, the Swap Settlement, the Plan COP Settlement and the State Contribution Agreement. | **Addressed in part, disputed in part.** On April 11, 2014, the Bankruptcy Court announced its decision approving the Swap Settlement, which includes an agreement to support the Plan. <u>See</u> § VIII.E. The terms of the Second Amended Plan and Second Amended Disclosure Statement reflect this settlement, thereby mooting the Objecting Party's request with respect to the Swap Settlement Agreement. The City has agreed to a settlement of the UTGO Claims, which moots the Objecting Party's request regarding the UTGO Claims. <u>See</u> § VII.B.2.a. In addition, the Second Amended Disclosure Statement includes 40-year financial projections (<u>see</u> Ex. K), further details regarding estimated percentage recoveries and their underlying assumptions (<u>see</u> § II.B) and eliminates the concept of the DWSD Transaction and the GLWA (<u>see</u> § VIII.L.1). The Second Amended Disclosure Statement also identifies various risks relating to the Exit Facility and the potential disgorgement of the proceeds of the COPs transactions (<u>see</u> § VI) and provides further information regarding the means of implementation of the Plan following the City's emergence from chapter 9 (<u>see</u> § IX.A). The City intends to provide the terms of the State Contribution Agreement when the agreement becomes available. The City believes that the Second Amended Disclosure Statement otherwise provides all currently available information necessary to constitute adequate information with respect to the other issues raised in the Objection. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

13-53846-tjt    Doc 4075    Filed 04/14/14    Entered 04/14/14 19:27:34    Page 42 of 54

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **26.** National Public Finance Guarantee Corporation's Objection to Disclosure Statement (Docket No. 3866) (the "<u>National Objection</u>") | |
| The Objecting Party argues that the Disclosure Statement fails to provide adequate information regarding (i) the criteria the City is using to consider whether to enter into the DWSD Transaction, the status of negotiations and potential terms, risks and details of potential DWSD transactions; (ii) how alternative DWSD transactions would affect creditor recoveries; (iii) the City's ability to effectuate the Plan going forward, particularly with respect to DWSD; (iv) the proposed treatment of Holders of DWSD Bonds and the rationale for such treatment; (v) definitive terms of new bonds to be issued pursuant to the Plan, and the justification for such terms; (vi) DWSD 40-year projections and certain additional DWSD financial information; (vii) the Plan's allocation of DWSD pension liabilities; (viii) specific treatment of National's claims; (ix) the calculation and treatment of Pension Claims and OPEB Claims; (x) the value of the DIA Collection and terms of the DIA Settlement; (xi) the terms of, and "the process the City undertook to obtain," the Exit Facility; (xii) reinvestment initiatives related to public safety, blight removal and labor; (xiii) 40-year projections with respect to the City; (xiv) estimated cost savings by selling Coleman A. Young Airport and improving collection rates at the 36th District Court; and (xv) certain enumerated risk factors. | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement eliminates the concepts of the GLWA and the DWSD Transaction. <u>See</u> § VIII.L.1. The City believes that the Second Amended Disclosure Statement otherwise provides all currently available information necessary to constitute adequate information with respect to DWSD and any potential private transaction involving DWSD. <u>See</u>, <u>e.g.</u>, §§ VII.A.3.b.i, VIII.L.1. The City disputes that it need provide information regarding the potential sale of Coleman A. Young Airport and believes that the Second Amended Disclosure Statement provides all currently available information necessary to constitute adequate information with respect to the remaining matters addressed in the Objection. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

13-53846-tjt    Doc 4075    Filed 04/14/14    Entered 04/14/14 19:27:34    Page 43 of 54

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **27.** **Objection to Approval of the Amended Disclosure Statement with Respect to Amended Plan for the Adjustment of Debts of the City of Detroit [filed by (a) Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A., Erste Europäische Pfandbrief- und Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A.; (b) Deutsche Bank AG, London; (c) Dexia Crédit Local and Dexia Holdings, Inc.; and (d) FMS Wertmanagement AöR] (Docket No. 3867) (the "COPs Objection")** | |
| The Objecting Parties argue that the Disclosure Statement is inadequate because (i) the 15% estimated percentage recovery proposed for Other Unsecured Claims is unrealistic; (ii) the estimated percentage recoveries for Classes 10 and 11 are misleading because the underlying PFRS Pension Claims and GRS Pension Claims are inflated; and (iii) it references Plan exhibits that have not yet been filed. The Disclosure Statement also allegedly fails to provide adequate information regarding (i) the terms of the New B Notes; (ii) the treatment of COP Claims under the Plan; (iii) the calculation of Pension Claims and OPEB Claims; (iv) the effect of a ruling that the COPs are invalid; (v) certain risks that could affect the recoveries of Pension Claims; (vi) mitigation of OPEB Claims; (vii) data demonstrating that the Plan is in the best interests of creditors; (viii) the value of the DIA Assets and terms of the DIA Settlement; (ix) the value of City-owned land; (x) alternatives for monetizing the DWSD and the status of DWSD-related negotiations; (xi) the value of and ability of the City to monetize its parking facilities; (xii) operational improvements and the likely financial impact of such improvements; (xiii) the transition of public lighting work to the PLA; (xiv) the scope of the releases set forth in the Plan; and (xv) the effect on recoveries if the City is unable to obtain the Exit Facility. | **Addressed in part and disputed in part.** The Second Amended Disclosure Statement provides further information regarding estimated recoveries for various classes of creditor and the assumptions underlying those recoveries, as well as the risks related to such recovery calculations. See § II.B. The Second Amended Disclosure Statement also describes certain risks relating to COP Claims, the Exit Facility and recoveries on Pension Claims, among other things. See §§ II.A.2, VI.E, VI.H, VI.M. The City believes that the Objecting Parties' request for further data in support of the fact that the Plan satisfies the "best interests of creditors" test should be reserved for confirmation. The City disputes that it is required to provide valuations of the various assets identified in the Objection and believes that the Second Amended Disclosure Statement otherwise provides all currently available information necessary to constitute adequate information with respect to the remaining matters addressed in the Objection. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

13-53846-tjt    Doc 4075    Filed 04/14/14    Entered 04/14/14 19:27:34    Page 44 of 54

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **28.** Objection of Ambac Assurance Corporation to Amended Disclosure Statement with Respect to Amended Plan of Adjustment of Debts of the City of Detroit (Docket No. 3871) (the "<u>Ambac Objection</u>") | |
| The Objecting Party argues that the Disclosure Statement fails to provide adequate information regarding (i) the estimated percentage recoveries proposed in the Plan; (ii) the terms of the New B Notes and the Plan UTGO Notes; (iii) the DIA Settlement, certain risk factors related thereto, the value of the DIA Assets and the impact upon creditor recoveries if the State Contribution is not received; (iv) the estimated percentage recovery for the COP Claims and risk factors regarding the COP Litigation; (v) risk factors regarding (A) the legality of the bonds to be issued pursuant to the Plan and (B) the City's ability to access public debt markets post-bankruptcy; (vi) the value of City-owned assets "that may and should be monetized in order to maximize creditor recovery" and the City's plans with respect to such assets; (vii) the value and merits of causes of action retained by the City; (viii) the potential terms and impact upon creditor recoveries of the DWSD Transaction; (ix) certain potential sources of City revenue; (x) the City's efforts to reduce its expenses; (xi) the estimated aggregate amount of Administrative Claims; and (xii) the amount, terms and purpose of the Exit Facility. The Ambac Objection also asserts that the Disclosure Statement inaccurately describes the "best interests of creditors" test as applied in chapter 9 and fails to back up certain enumerated disclosures with citations to "authoritative source material." | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement provides: (i) further information regarding estimated recoveries for various classes of creditor and certain assumptions and risks related to such recoveries (<u>see</u> § II.B); (ii) the estimated aggregate amount of Administrative Claims (<u>see</u> § III.B.1); and (iii) risk factors relating to COP Claims and the COP Litigation, bond issuances under the Plan, the City's future access to debt markets, and the Exit Facility, among other things (<u>see</u> § VI). The City has agreed to a settlement of the UTGO Litigation, which, among other things, eliminates the concept of Plan UTGO Notes. <u>See</u> § VII.B.2.a. Accordingly, requests for further information regarding potential outcomes of the UTGO Litigation and the Plan UTGO Notes have been rendered moot. The City disputes that it is required to provide valuations of the assets that should be monetized in view of the Objecting Party and otherwise believes that the Second Amended Disclosure Statement provides all currently available information necessary to constitute adequate information with respect to the remaining matters addressed in the Objection. |
| **29.** Joinder to Objection of Certain COPs Holders and Limited Objection of Wilmington Trust, National Association, as Successor Contract Administrator and Successor Trustee, to Amended Disclosure Statement with Respect to Amended Plan for the Adjustment of Debts of the City of Detroit (Docket No. 3873) | |
| The Objecting Party joins in, and incorporates by reference, the COPs Objection. The Objecting Party also disputes the definition of COP Claims asserts that the Disclosure Statement is inadequate because it fails to provide adequate information regarding the Objecting Party's COP Claims. | **Addressed in part, disputed in part.** The City incorporates its response with respect to the COPs Objection. Arguments regarding the scope of the City's obligations on account of COP Claims in Class 9 under the Plan should be reserved for confirmation. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

13-53846-tjt   Doc 4075   Filed 04/14/14   Entered 04/14/14 19:27:34   Page 45 of 54

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **30.**   Objection of the Ad Hoc Committee of DWS Bondholders to the Amended Disclosure Statement (Docket No. 3875) (the "<u>Ad Hoc Committee Objection</u>") | |
| The Objecting Party argues that the Disclosure Statement fails to provide adequate information regarding (i) the treatment of Claims in Class 1 under the Plan, (ii) DWSD operation and maintenance expenses; (iii) the rationale for requiring the DWSD to pre-fund its pension liabilities and for treating lease payments as operations and maintenance expenses; (iv) 10-year capital expenditure projections for DWSD under various scenarios; (v) the potential costs and impediments to privatization of DWSD; and (vi) the current status of DWSD-related negotiations. | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement (i) eliminates the concepts of the GLWA and the DWSD Transaction from the Plan and (ii) provides additional information regarding the potential transaction involving DWSD and a private party. See § VIII.L.1. The City believes that the Second Amended Disclosure Statement otherwise provides all currently available information necessary to constitute adequate information with respect to DWSD. See, e.g., §§ VII.A.3.b.i, VIII.L.1. |
| **31.**   Objection of the Retired Detroit Police Members Association to Amended Disclosure Statement with Respect to Amended Plan for the Adjustment of Debts of the City of Detroit (Docket No. 3876) (the "<u>RDPMA Objection</u>") | |
| The Objecting Party argues that the Disclosure Statement fails to provide adequate information regarding (i) the State Contribution Agreement and estimated recoveries for retirees absent the State Contribution; (ii) the value of claims released pursuant to the State Contribution Agreement; (iii) the terms, and risk of failure of, the DIA Settlement; (iv) the methodology used in calculating PFRS underfunding; (v) the restoration of pension benefits; (vi) the impact the loss of COLA will have on an individual retiree's claims; (vii) how hardship cases will be addressed; and (viii) the value of City-owned assets. | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement includes additional information on estimated recoveries for retirees under various scenarios, the potential restoration of pension benefits, the effect of the elimination of the COLA on Pension Claims and the Income Stabilization Payments for cases of hardship. See §§ II.A.2, II.B. The City intends to provide the terms of the State Contribution Agreement when the agreement becomes available. The City disputes that it is required to provide valuations of City-owned assets. The City otherwise believes that the Second Amended Disclosure Statement provides all currently available information necessary to constitute adequate information with respect to the remaining matters addressed in the Objection, including with respect to the DIA Settlement and the value of the DIA Collection. See, e.g., §§ IV.F, VII.A.5.a. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **32.** Objection of International Union, UAW to Amended Disclosure Statement with Respect to Amended Plan of Adjustment of Debts of City of Detroit (Docket No. 3877) (the "UAW Objection") | |
| The Objecting Party argues that the Disclosure Statement fails to provide adequate information regarding (i) the terms and conditions of the State Contribution Agreement and the DIA Settlement; (ii) the terms and scope of the Plan's release and injunction provisions and their compliance with applicable law; (iii) risk factors that could inhibit DWSD's ability to pre-fund its share of pension liabilities; (iv) the fact that the GRS Hybrid Pension Plan and the GRS Hybrid Pension Formula have not been accepted by the bargaining units; (v) whether the establishment of the VEBA is co-extensive with the treatment of OPEB Claims set forth in the Disclosure Statement; (vi) the City's estimated proposed contribution of New B Notes to the VEBA; (vii) the status of Detroit Public Library employees. | **Addressed in part, disputed in part.** The City intends to provide the terms of the State Contribution Agreement when the agreement becomes available. The Second Amended Disclosure Statement provides additional information regarding, among other things, DWSD and risks related to the prefunding of its pension obligations (see, e.g., §§ VI.G, VII.A.3.b.i, VIII.L.1), the administration of the VEBA (see § II.A.2) and the status of Detroit Public Library employees (see § VIII.J). The City believes that issues regarding the compliance with applicable law of the Plan's release and injunction provisions should be reserved for confirmation. The City otherwise believes that the Second Amended Disclosure Statement provides all currently available information necessary to constitute adequate information with respect to the remaining matters addressed in the Objection, including with respect to the DIA Settlement. See, e.g., §§ IV.F, VII.A.5.a. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **33.** The Water and Sewer Bond Trustee's Objection to the Amended Disclosure Statement (Docket No. 3880) (the "<u>Water & Sewer Bond Trustee Objection</u>") | |
| The Objecting Party argues that the Disclosure Statement fails to provide adequate information regarding (i) the treatment DWSD Bond Claims will receive under the Plan; (ii) the contingencies, likelihood and timing of the various possible DWSD transactions; (iii) the calculation of DWSD share of GRS UAAL; (iv) the terms of the DWSD Transaction and structure of the GLWA; (v) the potential impact of the privatization of DWSD functions upon the recoveries of DWSD Bond Claims, the legal requirements of privatization and certain other related information; (vi) projected DWSD financial information; (vii) the terms and tax-exempt status of the new bonds to be issued pursuant to the Plan; (viii) legal requirements relevant to the issuance of new bonds under the Plan, and the City's efforts to comply with such requirements; (ix) whether the bonds issued under the Plan will be insured; (x) certain enumerated aspects of the contemplated GLWA lease payment; (xi) the City's proposed issuance of new capital improvement sewer bonds; (xii) procedures with respect to existing CUSIPs of bondholders that would receive new bonds under the Plan; and (xiii) whether, why and how long recipients of New Existing Rate DWSD Bonds would not be permitted to trade such bonds. The Water & Sewer Bond Trustee Objection also asserts that the Disclosure Statement contains impermissible "death traps" with respect to DWSD Bond Claims. | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement eliminates the concepts of the GLWA and a DWSD Transaction. See § VIII.L.1. Accordingly, all of the Objecting Party's arguments directed at these concepts are rendered moot. In addition, the Second Amended Disclosure Statement includes further information regarding the DWSD share of GRS UAAL (see § II.A.2) and the proposed issuance of capital improvement DWSD bonds (see § VII.A.3.b.i.B). In addition, the City may provide in Section II.B additional information regarding the insured or uninsured status of bonds to be issued under the Plan. The City believes that the Second Amended Disclosure Statement otherwise contains all currently available information necessary to constitute adequate information regarding DWSD, any potential transaction involving DWSD and the treatment of DWSD Bond Claims. Objections regarding the permissibility of the treatment proposed in the Plan for DWSD Bond Claims is an issue that should be reserved for confirmation. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

13-53846-tjt    Doc 4075    Filed 04/14/14    Entered 04/14/14 19:27:34    Page 48 of 54
-48-

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **34.** **Objection of the Retiree Association Parties to the "Amended Disclosure Statement with Respect to Amended Plan for the Adjustment of Debts of the City of Detroit" [filed by (a) the Retired Detroit Police & Fire Fighters Association, (b) Donald Taylor, (c) the Detroit Retired City Employees Association and (d) Shirley V. Lightsey] (Docket No. 3881) (the "<u>Retiree Associations Objection</u>")** | |
| The Retiree Associations Objection (i) incorporates by reference the Retiree Committee Objection; (ii) requests that the Bankruptcy Court allow supplemental "readability" objections because the "plain language" supplement to the Disclosure Statement has not been filed; and (iii) asserts that an "issue" exists because retirees may be forced to mail their ballots before they receive the Plan Supplement Documents. The Disclosure Statement allegedly also is inadequate because it fails to provide adequate information regarding (i) the proposed treatment of Holders of Pension Claims and OPEB Claims, including the effect of cutting COLA and the possible restoration of pension benefits; (ii) the rationale underlying the assumed rates of return with respect to GRS and PFRS; (iii) the potential impact on pension and OPEB recoveries if expected outside funding is discontinued post-confirmation; (iv) the ability of certain unions to negotiate with the City and PFRS/GRS trustees; (v) Plan provisions regarding PFRS and GRS governance; (vi) the scope and impact of the State releases; (vii) how hardship cases will be addressed under the Plan; (viii) the Bankruptcy Court's finding that the City did not negotiate in good faith prior to entry of the Order for Relief and whether retirees were represented in pre-petition negotiations; (ix) and the requirement that DWSD pre-fund its pension liabilities; (x) ASF recoupment and the "13th check" program. | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement incorporates the "plain language" supplement contemplated by the Objection, which provides further details regarding the treatment of pension benefits under the Plan and the Income Stabilization Payments for cases of hardship. See § II.A.2. In addition, the Second Amended Disclosure Statement provides further information regarding ASF recoupment and a potential discontinuation of outside funding to the GRS and PFRS. See id. The City believes that the Second Amended Disclosure Statement otherwise contains all currently available information necessary to constitute adequate information regarding Pension Claims, OPEB Claims and the Retirement Systems. |
| **35.** **Second Corrected Objection to the Proposed Disclosure Statement [filed by Heidi Peterson] (Docket No. 3885)** | |
| The Objecting Party argues that the Disclosure Statement fails provide adequate information regarding (i) street gangs in the City; (ii) the City's plans to make downtown Detroit more attractive to potential residents and visitors; (iii) expanding notifications of DDA and City Council open meetings; (iv) reducing bureaucratic "red tape;" (v) increasing the efficiency, and improving the performance, of the City workforce; (vi) the City's plans with respect to City-owned land; (vii) "security concerns" with respect to the "influx of massive amounts of foreign interest money" into the City; (viii) State requirements with respect to revenue sharing; (ix) definitions of the terms "Syncora" and "COP;" (x) how the Plan proposes to address future tort claims against the City for as-yet-undiscovered illnesses; and (xi) the "current status of [the] federal challenge to Detroit's water supply." | **Disputed.** The City believes that the Second Amended Disclosure Statement contains all necessary information to constitute adequate information with respect to the subject matter of the Objection including with respect to the events leading up to the Chapter 9 Case and the City's restructuring initiatives. See, e.g., §§ VII, VIII.L, IX. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

13-53846-tjt    Doc 4075    Filed 04/14/14    Entered 04/14/14 19:27:34    Page 49 of 54

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **36.** Objection of the Official Committee of Retirees to Amended Disclosure Statement with Respect to Amended Plan for the Adjustment of Debts of the City of Detroit, Michigan (Docket No. 3888) (the "Retiree Committee Objection") | |
| The Objecting Party argues that the Disclosure Statement is inadequate because "[t]he City proposes to file the Plan Supplement Documents after the voting deadline," and because it fails to provide adequate information regarding (i) the City's commitment to fund the Retirement Systems, the assumed rates of return for investments of the Retirement Systems and the restoration of pension benefits; (ii) the legal basis for ASF recoupment and the role of City officials in alleged fiduciary malfeasance; (iii) risks regarding, and justifications for, the Plan's reliance on outside funding; (iv) the legal rationale justifying the Plan's injunction, exculpation and release provisions; (v) the operation of the VEBA; (vi) the application of postpetition OPEB payments to reduce the amount of OPEB Claims, constitutional arguments against the City's ability to reduce OPEB benefits and the funding of OPEB benefits; (vii) arguments that the Plan does not satisfy confirmation standards; (viii) statutory protections of pension benefits; (ix) the City's reference in the Disclosure Statement to the Moore Declaration; (x) how the aggregate OPEB liability was calculated and the percentage reduction in the City's OPEB expenditures; (xi) the value and potential monetization of the DIA Collection; and (xii) tax consequences with respect to ASF recoupment. | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement contains additional information regarding the assumed rates of return for the investments of the Retirement Systems, certain risks associated with the outside funding to be provided under the Plan, details regarding the VEBA, the tax consequences of the ASF recoupment and numerous other issues relating to pension benefits and OPEB. See § II.A.2. The City disputes that it is required to provide further information regarding the valuation and potential monetization of the DIA Collection or to establish in the Disclosure Statement, the legal basis for the ASF recoupment or the impairment of OPEB Claims. Otherwise the City believes that the Second Amended Disclosure Statement contains all information necessary to provide adequate information with respect to the matters identified in the Objection. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

13-53846-tjt    Doc 4075    Filed 04/14/14    Entered 04/14/14 19:27:34    Page 50 of 54

In re City of Detroit, Michigan
Chapter 9 Case No. 13-53846 (SWR)
Summary of the City's Responses to Disclosure Statement Objections

| Objection | Status and City's Response |
|---|---|
| **37.** Objection of the Detroit Retirement Systems to the Amended Disclosure Statement with Respect to Amended Plan for the Adjustment of Debts of the City of Detroit [filed by the General Retirement System of the City of Detroit and the Police and Fire Retirement System of the City of Detroit] (Docket No. 3889) (the "Retirement Systems Objection") | |
| The Objecting Party Asserts that the Disclosure Statement is inadequate because it refers to Plan exhibits that have not yet been filed, and because it fails to provide adequate information regarding (i) the terms of the DIA Settlement and the likelihood that the DIA Settlement will be consummated; (ii) DIA Corp.'s ability to raise the funds to meet its commitment under the DIA Settlement; (iii) the terms and conditions of the State Contribution Agreement and the likelihood that the State Contribution will be received; (iv) how the Plan will treat hardship cases; (v) the City's 40-year financial projections and information regarding how the Retirement Systems will be funded after 2023; (vi) the scope of the Plan's release, exculpation and injunction provisions (such exculpation and release provisions should be highlighted because they are "injunctive in nature"); (vii) the terms, conditions, effects and likelihood of occurrence of the DWSD Transaction; (viii) the Court's order approving the Amended Quality of Life Loan; (ix) the effect upon creditor recoveries and Plan implementation if the City does not prevail in the UTGO Litigation or the LTGO Litigation; and (x) dispositions of City-owned assets; and (xi) justifications for the Plan provision waiving the stay of the Confirmation Order. The Objection also asserts that the City's timeline for filing remaining Plan exhibits is improper. | **Addressed in part, disputed in part.** The City (i) believes that the Second Amended Disclosure Statement contains all necessary information currently available regarding the DIA Settlement (see, e.g., §§ IV.F, VII.A.5.a) and (ii) intends to provide the terms of the State Contribution Agreement, when the agreement becomes available. The Second Amended Disclosure Statement includes (i) 40-year financial projections (see Ex. K), (ii) details regarding the Court's approval of the Quality of Life Loan (see § VIII.G) and (iii) the Income Stabilization Payments for cases of hardship (see § II.A.2). In addition, the DWSD Transaction and GLWA entity have been eliminated from the Plan (see § VIII.L.1), and the UTGO Litigation has been settled (see § VII.B.2.a). The City believes that the Second Amended Disclosure Statement provides all necessary information regarding the remaining items identified by the Objecting Party, including the release, exculpation and injunction provisions of the Plan (see §§ II.A.2, III.F.6-8), the terms or probability of any private transaction involving DWSD (see §§ VII.A.3.b.i, VIII.L.1) and the LTGO Litigation (see § VII.B.2.b). |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

13-53846-tjt    Doc 4075    Filed 04/14/14    Entered 04/14/14 19:27:34    Page 51 of 54

| OBJECTION | STATUS AND CITY'S RESPONSE |
|---|---|
| **38.** Objection to City of Detroit's Amended Disclosure Statement and Concurrence with Certain Objections [filed by Jeffrey S. Romeo] (Docket No. 3914) (the "Romeo Objection") | |
| The Objecting Party argues that the Disclosure Statement fails provide adequate information regarding (i) the quantified impact of the City's discontinuation of OPEB benefits upon individual retirees; (ii) a comparison of OPEB benefits retirees will receive under the Plan versus the OPEB benefits provided for under certain City Employment Terms; (iii) the effect of the establishment of the VEBA on individual retiree health care costs; (iv) the proposed treatment under the Plan of OPEB Claims of DPCOA members specifically; (v) the City's methodology and rates of return used in calculating pension underfunding; (vi) the City's funding of PFRS going forward; (vii) the conditions under which PFRS benefits may be restored; and (viii) the justification for the requirement that both Classes 10 and 11 vote to accept the Plan as a precondition to outside funding. The Disclosure Statement requires clarification and/or correction with respect to (i) DPD response times; (ii) DPD's Secondary Employment Program; (iii) DPD's fleet replacement plan; and (iv) certain assumptions regarding salary and wage information used in calculating the Projections. | **Addressed in part, disputed in part.** The Second Amended Disclosure Statement provides substantial additional information regarding the effect of the Plan on the benefits to be received by individual retirees, the effect of the establishment of the VEBA, the funding of the PFRS and DPD operations. See §§ II.A.2; VII.C.7.a. The City believes that the Second Amended Disclosure Statement otherwise contains all information necessary to constitute adequate information with respect to PFRS Pension Claims, OPEB Claims and City police services. See §§ II.A.2, II.B, VII.C.7.a. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

13-53846-tjt    Doc 4075    Filed 04/14/14    Entered 04/14/14 19:27:34    Page 52 of 54

| OBJECTING PARTY AND DOCKET NUMBER | STATUS AND CITY'S RESPONSE |
|---|---|
| **39.** **Objections (a) Generally Stating That the Disclosure Statement Is Inadequate or Objecting to Procedures Related Thereto; (b) Requesting That the Court Not Allow Modifications to Pension and/or Retiree Health Care Benefits; (c) Generally Objecting to the Plan of Certain Features Thereof; or (d) Requesting Other Relief Unrelated to the Adequacy of the Disclosure Statement** | |
| Hunter L. Todd (Docket No. 3141)*; Robert Jackson (Docket No. 3176)*; Edward L. Gaines (Docket No. 3208)*; Ricardo C. Jenkins (Docket No. 3211)*; Douglas Kuykendall (Docket No. 3220)*; James R. Younger (Docket No. 3224)*; Nancy Kuykendall (Docket No. 3226)*; Willie Bennett (Docket No. 3227)*; Thomas A. Agens (Docket No. 3242)*; Reginald D. Amos (Docket No. 3243)*; Brenda Davis (Docket No. 3252)*; Linda Marie Mulder (Docket No. 3268)*; Gerald Thompson (Docket No. 3353)*; Anthony Wagoner (Docket No. 3356)*; Pamela W. Cunningham (Docket No. 3357)*; Milton Stroud (Docket No. 3359)*; Charlene Hearn (Docket No. 3361)*; Claud Dent (Docket No. 3363)*; Scott Odum (Docket No. 3402)*; Samuel Jackson (Docket No. 3404)*; Donnita Cleveland (Docket No. 3434)*; Anthony J. Klukowski, Jr. (Docket No. 3436)*; Arnold Faust (Docket No. 3611)*; Shelia G. Carter (Docket No. 3612)*; Terrence J. Kosmowski (Docket No. 3613)*; Robert Riley (Docket No. 3614)*; Larry Carter (Docket No. 3615)*; Gladys Wolfork (Docket No. 3618)*; Armella Nickleberry (Docket No. 3619)*; Minnie H. Brogdon (Docket No. 3620)*; Althanan Moore (Docket No. 3621)*; Renee Tillman (Docket No. 3639)*; Edward Ramey (Docket No. 3640)*; Senior Accountants, Analysts and Appraisers Association (Docket No. 3641)*; Beverly A. Holman (Docket No. 3642)*; Cherlyn Rupert (Docket No. 3643)*; Victor Junior (Docket No. 3644)*; Shirley Walker (Docket No. 3645)*; Lori Clement (Docket No. 3646)*; Melvin Keith Rogers (Docket No. 3647)*; Carl Smith (Docket No. 3648)*; Valerie Ford (Docket No. 3649)*; Cynthia A. Rhoades (Docket No. 3650)*; Derek D. Emanuel (Docket No. 3651)*; Vanessa Lowe (Docket No. 3652)*; Howard S. Hill (Docket No. 3653)*; Keith M. Hines (Docket No. 3655)*; Charlayne Parker (Docket No. 3656)*; Nayla Sabbath (Docket No. 3657)*; Renee Lee (Docket No. 3658)*; Allison M. Phillips (Docket No. 3659)*; Wayne Pierre (Docket No. 3660)*; Trolisie D. Fletcher (Docket No. 3661)*; Deborah L. Atkins (Docket No. 3662)*; Kendra McDonald (Docket No. 3665)*; Steevie Freeman (Docket No. 3666)*; Ethel Coleman (Docket No. 3667)*; Walter Clement (Docket No. 3668); Althea Long (Docket No. 3678)*; James Lovely (Docket No. 3682)*; Terrence Crite (Docket No. 3720)*; Larry D. Hicks (Docket No. 3722)* | **Disputed.** The Objections raise nonspecific concerns regarding the adequacy of the Disclosure Statement, request that the Court not allow any modifications to retirement benefits pursuant to the Plan, object generally to the Plan or certain features of the Plan or request other relief unrelated to the issue of whether the Disclosure Statement provides "adequate information" within the meaning of section 1125 of the Bankruptcy Code. Accordingly, the Objections should be overruled. |

Asterisks [*] denote objections filed by parties that did not participate in the meet and confer process established by the Court pursuant to paragraph 5 of the Confirmation Scheduling Order, *i.e.*, parties who neither provided proposed revisions to attorneys for the City nor participated in either of the Meet and Confer Sessions held on April 10-11, 2014.

## CERTIFICATE OF SERVICE

I, Heather Lennox, hereby certify that the foregoing Consolidated Reply to Objections to Motion of the City of Detroit for Approval of the Proposed Disclosure Statement was filed and served via the Court's electronic case filing and noticing system on this 14th day of April, 2014.

/s/Heather Lennox