## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-------------------------------------------------------

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

-----------------------------------------------------

**BRIEF IN SUPPORT OF OBJECTIONS OF PETITIONERS DEBORAH RYAN, WALTER SWIFT, CRISTOBAL MENDOZA AND ANNICA CUPPETELLI, INTERESTED PARTIES, TO THE AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES................................................................................... ii

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS .................................................................................... 3

ARGUMENT ......................................................................................................... 4

Petitioners Object to the Amended Plan in that it Violates their Constitutional Rights, as Secured by the First, Fourth, Fifth, Sixth, Seventh and Fourteenth Amendments to the United States Constitution ....................................................... 4

CONCLUSION ...................................................................................................... 8

# INDEX OF AUTHORITIES

## *Cases*

*Burnett v. Grattan*, 468 U.S. 42 (1984) ....................................................................6, 7

*Felder v. Casey*, 487 U.S. 131 (1988) ........................................................................6, 7

*Fox v. Vice*, 131 S.Ct. 2205 (2011) ................................................................................5

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..................................................................5

*Jaco v. Bloechle*, 739 F.2d 239 (6th Cir. 1984) ............................................................4

*King v. Conde*, 121 F.R.D. 180 (1988) .........................................................................5

*McDonald v. West Branch*, 466 U.S. 284 (1984) .........................................................7

*Mitchum v. Foster*, 407 U.S. 225 (1972) ..................................................................2, 6

*Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496 (1981) ......................................5

*V.W. ex rel. Barber v. City of Vallejo*, No. 12-1629, 2013 WL 3992403
   (E.D. Cal. Aug. 2, 2013) ........................................................................................7, 8

## *Statutes & Constitutions*

28 U.S.C. § 1343 ............................................................................................................6

42 U.S.C. §1983 .....................................................................................................*passim*

Ku Klux Klan Act of 1871, Ch 22, § 1, 17 Stat. 13 (1871) ........................................1, 4

U.S. const. amend. XIV, § 5 ..................................................................................*passim*

# INTRODUCTION

The rights afforded to persons under the United States Constitution are sacrosanct, as has been codified by our Congress when it first enacted Section 1 of the Ku Klux Klan Act of 1871, pursuant to Section 5 of the Fourteenth Amendment in order to ensure the enforceability of the rights created under that amendment. When Congress adopted the Fourteenth Amendment to the United States Constitution in 1868, it made sure that the promise of that blood soaked Civil War Amendment—freedom from violations of due process and equal protection by public officials—would be fulfilled by appropriate legislation. Section 1 of the Klu Klux Klan Act of 1871 is thus specifically entitled, "An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other purposes," 17 Stat. 13 (1871).

As early as 1874, Congress enacted a proleptical version of the Civil Rights Act, 42 U.S.C. §1983. The United States Supreme Court has broadly described the primary purpose of § 1983 as follows:

> As a result of the new structure of law that emerged in the post-Civil War era—and especially of the Fourteenth Amendment, which was its centerpiece—the role of the Federal Government as the guarantor of basic federal rights against state power was clearly established. Section 1983 opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation . . . .
>
> The very purpose of section 1983 was to interpose the federal

1

> courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law . . . .

*Mitchum v. Foster*, 407 U.S. 225, 238-39, 242 (1972).

Thus, for almost one hundred fifty years, the ability of our citizens to enforce their rights under the U.S. Constitution in a United States District Court has been a bulwark of the democratic principles that inspire the world. Weakening, diluting or eliminating those rights should not be undertaken lightly.

The facts of the underlying cases at issue in this Objection, arise from injustice and egregious constitutional violations, as follows:

1. *Ryan:* the tragic and needless death of a young police officer in the prime of her life;

2. *Swift:* the wrongful 26 year incarceration of a young man about to start a family who was convicted of a crime he did not commit, all as the result of documentable police misconduct; and,

3. *Mendoza-Cuppetelli:* the false arrest and beating by a Detroit police officer of a Wayne State University Professor of Art and a local Detroit artist for taking photographs on a public downtown Detroit street.

The *Amended Plan of Adjustment* presented by Debtor City of Detroit herein **[Dkt. #3380]** attempts to severely diminish and tolerate the violation of rights

2

secured by the very heart of the U.S. Constitution, the First, Fourth, Fifth, Sixth Seventh and Fourteenth Amendments.

## STATEMENT OF FACTS

For each Petitioner, the underlying facts and claims are set forth in detail as follows, and incorporated herein:

    **a.** *Deborah Ryan* (**C.A. # 11-cv-10900**): Debtor City of Detroit and its officials (individual Defendants Kozloff and Blackmon) affirmatively acted to substantially increase the risk to her daughter, Patricia Williams, an outstanding Detroit police officer, thereby resulting in Patricia Williams' vicious and violent murder. These actions violated constitutional rights secured by the Due Process clauses of the Fifth and Fourteenth Amendments of the United States Constitution [*See* **Dkt #819, Paragraphs 4-5;** *Brief in Support* **thereof, Dkt #819-4, Exhibit 3, Statement of Facts] [Also see, attached hereto, Exh. 2, Plaintiff's First Amended Complaint];**

    b. *Walter Swift* (**C.A. #10-cv-12911**): Walter Swift was wrongfully convicted in 1982 for the crime of rape he did not commit, resulting in 26 cruel years in prison. His claims against the City of Detroit and its officials (Paavola-Nobliski and Lewandowski) thus arise from the unconstitutional wrongful conviction, malicious prosecution and hiding of evidence that convincingly points to innocence, all of which violated his Due Process rights as referenced above, as well as violations of the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution [*See* **Dkt #2140-1, Paragraph 2], [Also see, attached hereto, Exh. 3, Plaintiff's First Amended Complaint];** and

    c. *Mendoza & Cuppetelli* (**C.A. #11-cv-10899**): Professor Mendoza's (a Wayne State Art Professor) and Ms. Cuppetelli's (an artist), case involves claims against the City of Detroit and its officials (Carson, Petty and Glover) for the unconstitutional use of excessive force and subsequent malicious prosecution, triggered by Professor Mendoza taking photographs of a movie set on a public street; and therefore,

3

these claims implicate the First, Fourth and Fourteenth Amendments of the United States Constitution. **[*See* Exh. 4, attached hereto, Plaintiffs' First Amended Complaint]** [1]

Procedurally, the status of the *Ryan* matter is well known to this Court. **[*See* Order of this Court, Dkt. #2584]**. As to the other three Petitioners, their cases against the City of Detroit and its officials remain stayed, pursuant to this Court's Orders of *Automatic* and *Extended Stays*. **[Dkts. #167 and 166, respectively]**

## ARGUMENT

### Petitioners Object to the Amended Plan in that it Violates their Constitutional Rights, as Secured by the First, Fourth, Fifth, Sixth, Seventh and Fourteenth Amendments to the United States Constitution

Section 1983 of Title 42, the Civil Rights Act of 1871, (42 U.S.C. §1983) was enacted under the enforcement power given to Congress by Section 5 of the Fourteenth Amendment and provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Congress enacted § 1983 with the "goal of compensating the injured" and "preventing official illegality." *Jaco v. Bloechle*, 739 F.2d 239, 244

---

[1] While defendants other than the City of Detroit and its officials have been identified in the attached "First Amended Complaint," the actions against non-Detroit Defendants have been settled and dismissed, leaving only the actions against the Debtor and its officials remaining.

(6th Cir. 1984). In doing so, it clearly established the Federal Government as the guarantor of "the basic federal rights of individuals against incursions by state power." *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 503 (1981).

The Debtor's Proposed *Amended Plan*, if approved, will have the following dire implications for all those constitutionally and statutorily entitled to fully vindicate the violations of their Constitutional rights, among others:

- Diminish the ability of victims of constitutional violations to fully prove these violations through thorough discovery, much of which has already been precluded due to the Stays entered by this Court, thus allowing the Debtor to, in the words of judge Weinstein, "frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983" *King v. Conde*, 121 F.R.D. 180 at 187 (1988);

- Diminish the ability of the Petitioners to vindicate the violations of the Constitution by substantially reducing the full and complete recovery to which they are Constitutionally entitled;

- Diminish the ability of the Petitioners to vindicate the Constitution by eliminating their ability to attorney fees and punitive damages, to which they are Constitutionally entitled;

- Eliminate, reduce and/or diminish the ability of persons whose Constitutional rights have been violated to serve as 'private attorneys general' and thereby serve to prevent future Constitutional violations. *Fox v. Vice*, 131 S.Ct. 2205 (2011)[2]

---

[2] "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)

5

The *Amended Plan* would therefore contravene the very purpose and intent of the Fourteenth Amendment and of Congress, as elaborated by the United States Supreme Court, in enacting and enforcing §1983, to provide a full and complete judicial remedy for the violation of one's rights under the Constitution. Accord *Felder v. Casey*, 487 U.S. 131, 148 (1988) (recognizing that civil rights actions "belong in court") (quoting *Burnett v. Grattan*, 468 U.S. 42, 50 (1984)); *Mitchum v. Foster*, *supra,* at 242-43 (noting that the enforcement of federal rights is of the highest priority).

Specifically, the *Amended Plan*, if adopted, would violate Petitioners' rights to due process of law (*Swift* and *Ryan*), to a fair trial (*Swift*), to free speech (in the case of *Mendoza* and *Cuppetelli*), to be free from unreasonable seizures (*Swift, Mendoza* and *Cuppetelli* ), and to a meaningful and enforceable jury trial in a civil case (all four). They would therefore no longer have any recourse to effectively vindicate the deprivation of their Constitutional rights through 42 U.S.C. § 1983.

Petitioners' rights to vindicate the violation of their Constitutional rights include the right to have a jury trial in federal court. See 28 U.S.C. § 1343(3) ("district courts shall have original jurisdiction of any civil action . . . [t]o redress the deprivation under color of any State law . . . of any right, privilege or immunity secured by the Constitution of the United States . . . .").

Debtor's *Amended Plan* will deprive Petitioners of their opportunity to have

6

13-53846-tjt    Doc 4099-2    Filed 04/15/14    Entered 04/15/14 17:26:21    Page 8 of 11

their Constitutional violations decided by a jury *and* to be fully compensated therefore.³ In this regard the *Amended Plan* flouts the teaching of *Burnett v. Gratton, supra*, that the "dominant characteristic" of a civil rights case is that "they belong in court." *Id* at 50. See also *McDonald v. West Branch*, 466 U.S. 284, 290 (1984). Similarly, it mocks the spirit of *Felder v. Casey*, *supra*, 148, that the actions of this Debtor (and this Court, as proposed by this Debtor) may not "adulterate or dilute" the Constitutional rights that the Civil Rights Act seeks to vindicate.

The potential tension between the Fourteenth Amendment, as vindicated through 42 U.S.C. § 1983 and Chapter 9 is well described in a recent opinion from the Eastern District of California, *V.W. ex rel. Barber v. City of Vallejo*, No. 12-1629, 2013 WL 3992403 (E.D. Cal. Aug. 2, 2013). In *Vallejo*, the court notes as follows:

> [A]larming as it is, as the bankruptcy statute appears to be written, a municipality may erase its own liability to persons whom it and its officers have willfully and maliciously deprived of their civil rights—and even their lives—by filing for bankruptcy. This extraordinary result would appear to exalt the bankruptcy laws over the civil rights laws (even though the civil rights laws, like the bankruptcy laws, are anchored in the constitution).

*Id.* at 4. In *Vallejo*, however neither party actually raised this issue. Indeed the

---

³ Although this Court has temporarily lifted the stay as to Petitioner Ryan to allow her a jury trial, **[Dkt #2584]**, as noted above she still has no right under the terms of this Court's Order to "…collect on or to seek any proceeding supplementary to judgment from the City." **[Dkt #2584, ¶5, p.4]**

7

Plaintiff conceded the jurisdiction of the Bankruptcy Court to discharge her claims. Therefore the court did not decide the merits of this issue. Nonetheless, the *Vallejo* court went out of its way to identify and flag how Chapter 9, if improperly applied, may well unconstitutionally interfere with rights secured by 42 U.S.C. § 1983 and the Fourteenth Amendment. If permitted to stand, Paragraph 191 of the Debtor's Proposed *Amended Plan of Adjustment* would result in just that.

## CONCLUSION

It is clear that the intent and purpose of Paragraph 191of the *Amended Plan* **[Dkt. #3380]**, by specifically stating, "For the avoidance of doubt, Section 1983 Claims are included within the definition of Other Unsecured Claims," i**s** to lump together all common law, state law, and Constitutional claims made against the City of Detroit and its officials – regardless of their bases or their statutory and Constitutional origins. To do this is to ignore, indeed to violate, the Fourteenth Amendment of the United States Constitution and must be rejected.

**WHEREFORE,** the Petitioners herein request that this Court provide the following relief:

A. Determine that the *Amended Plan* **[Dkt # 3380]** is in violation of the Fourteenth Amendment of the United States Constitution as it applies to Petitioners herein and may apply to all persons asserting claims against the Debtor pursuant to 42 U.S.C. §1983 and the United States Constitution;

B. Issue an Order that rejects the *Amended Plan* **[Dkt # 3380]** and denies the relief sought therein as it applies to Petitioners herein and all persons

asserting claims against the Debtor pursuant to 42 U.S.C. §1983 and the United States Constitution;

C. Require the Debtor to set forth a revised Amended Plan that exempts claims brought under 42 U.S.C. §§1983, 1988 from any resolution short of full and complete compensation, including their damages, attorney fees and punitive damages, where appropriate.

Respectfully submitted,

**GOODMAN & HURWITZ, P.C.**

By: */s/William H. Goodman*
William H. Goodman   P14173
Julie H. Hurwitz P34720
1394 E. Jefferson Ave.
Detroit, MI 48207
313-567-6170
bgoodman@goodmanhurwitz.com
*Attorneys for Deborah Ryan, Walter Swift, Cristobal Mendoza and Annica Cuppetelli*

Dated: April 15, 2014

9