UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DEBORAH RYAN, on behalf of herself
individually and as Personal Representative of
the Estate of Patricia "Katie" Williams,

Case No. 11-10900
Honorable Mark A. Goldsmith

              Plaintiff,

Magistrate Judge Michael J. Hluchaniuk

vs.

CITY OF DETROIT, acting through its agency
the Detroit Police Department, Detroit Police
Sergeant BARBARA KOZLOFF, in her
individual capacity, Detroit Police Inspector
(formerly Lieutenant) DWANE BLACKMON,
in his individual capacity; CANTON TOWNSHIP,
Canton Police Lieutenant MARK SCHULTZ,
in his individual capacity; Canton Police Officer
ADAM FALK, in his individual capacity,

              Defendants.
_____/

| | |
|---|---|
| William H. Goodman (P14173) | Michael M. Muller (P38070) |
| Julie H. Hurwitz (P34720) | Lee'Ah D.B. Giaquinto (P60168) |
| Kathryn Bruner James (P71374) | City of Detroit Law Dept. |
| Goodman & Hurwitz, P.C. | 660 Woodward Ave., Suite 1800 |
| 1394 E. Jefferson Ave. | Detroit, MI  48226 |
| Detroit, MI 48207 | (313) 237-3062/Fax: (313) 224-5505 |
| (313) 567-6170/Fax: (313) 567-4827 | MullM@detroitmi.gov |
| bgoodman@goodmanhurwitz.com | Basel@detroitmi.gov |
| jhurwitz@goodmanhurwitz.com | *Attorneys for Defendants City of Detroit, Kozloff and* |
| kjames@goodmanhurwitz.com | *Blackmon* |
| *Attorneys for Plaintiff* | |
| | |
| Kathleen J. Kalahar (P60301) | |
| Goodman Kalahar | |
| 1394 E Jefferson Ave | |
| Detroit, MI  48207 | |
| (313) 567-6165/Fax: (313) 567-4827 | |
| kkalahar@goodmankalahar.com | |
| *Co-Counsel for Plaintiff* | |

_____/

## FIRST AMENDED COMPLAINT AND JURY DEMAND

1

NOW COMES Plaintiff, DEBORAH RYAN, on behalf of herself individually and as Personal Representative of the Estate of Patricia Williams, deceased, by and through her attorneys, GOODMAN & HURWITZ, P.C., and GOODMAN KALAHAR, P.C., and for her Complaint against the above-named Defendants, states as follows:

### PRELIMINARY STATEMENT

1.  This tragic case arises from the needless death of a dedicated, young and beautiful Detroit police officer and mother, Patricia Catherine Williams (hereafter "Katie Williams"), who lost her life at the hands of her estranged and mentally unbalanced husband (Edward G. Williams, II (hereafter "Ed Williams"), who was also a Detroit police officer and who took his own life at the same time. Their employer, the CITY OF DETROIT, and the individually named City of Detroit Defendants, KOZLOFF and BLACKMON, as well as CANTON TOWNSHIP and the individually named Canton Township Defendants, SCHULTZ and FALK, knowingly and consciously chose to shield the husband officer from suspension, investigation and potential criminal prosecution at the expense of protecting the wife from clear and obvious risk and danger.

2.  This action is based on the highly foreseeable risk of serious danger posed by a person suffering from severe emotional problems, who had recently abused his wife and who possesses one or more firearms. That person's status as a police officer should not be used, but in this case was used, to diminish the calculation of the danger created by the toxic interaction of mental illness, domestic abuse and firearms.

3.  This action is also based on the customs, practices and policies of deliberate failure of the Defendant CITY OF DETROIT, acting through its Police Department, to address the severe psychological pathology of some of its officers, due to the mere fact, standing alone,

2

that they are police officers. Therefore its failure and refusal to help those officers, their families and others around them, has gravely increased, enhanced, contributed to, exacerbated and aggravated the death and serious injury to the families, colleagues and friends of seriously disturbed Detroit police officers.

4.      This action is based, as well on the proactive and affirmative acts of the Detroit Defendants, despite the Detroit Police Department's refusal to recognize and address the severe emotional and psychological diseases, pathologies and problems of its officers, when these Defendants acted in such a way as to create – that is, to knowingly increase, exacerbate, aggravate and enhance – the danger posed by one such police officer, such that it became substantially likely that harm would result.

5.      This action is, as well, based on the customs, practices and policies of the Defendant CITY OF DETROIT and the actions of Defendants KOZLOFF and BLACKMON, whereby troubled Detroit police officers who clearly evidence involvement in abusive, criminal, threatening, dangerous and suspicious acts are treated differently and preferentially over persons who are not police officers. This differential and preferential treatment is without any rational or reasonable basis.

6.      Similarly, this action is based on the customs, practices and policies of the Defendant CANTON TOWNSHIP and the actions of Defendants  SCHULTZ and FALK, whereby troubled police officers, who clearly evidence involvement in abusive, criminal, threatening, dangerous and suspicious acts, are treated differently and preferentially over persons who are not police officers. This differential and preferential treatment is without any rational or reasonable basis.

7.      Therefore, Plaintiff DEBORAH RYAN seeks relief on behalf of herself and as

3

Personal Representative of the Estate of her deceased daughter Katie Williams, for the Defendants' violation, at all times under color of state law, of their rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the Fifth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of Michigan, including but not limited to the Michigan Wrongful Death Act, MCL 600.2922.

8.      On or about the days leading up to and on or about September 20 through 22, 2009, Defendants engaged in conduct that violated the rights of Plaintiff's decedent and of Plaintiff, as secured by the Due Process and Equal Protection clauses of the Fifth and Fourteenth Amendment to the United States Constitution.

9.      At all times herein, Plaintiff was the mother of Katie Williams, now deceased, whose death on September 22, 2009 was the result of the wrongful and unconstitutional actions of the Defendants, in particular Detroit Police Inspector DWANE BLACKMION, and Detroit Police Sergeant BARBARA KOZLOFF, acting in their individual capacities and undertaken pursuant to the policies, customs and practices of the Defendant herein, CITY OF DETROIT which policies, customs and practices were a driving force in the death of Katie Williams.

10.     At all times herein, Plaintiff was the mother of Katie Williams, now deceased, whose death on September 22, 2009 was the result of the wrongful and unconstitutional actions of the Defendants, in particular Canton Police Lieutenant MARK SCHULTZ and Canton Police Officer ADAM FALK, acting in their individual capacities and undertaken pursuant to the policies, customs and practices of the Defendant herein, CANTON TOWNSHIP,  which policies, customs and practices were a driving force in the death of Katie Williams.

11.     Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of attorney's fees and costs, and such other and further relief as the Court deems proper.

4

**JURISDICTION**

12.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343 (3) and (4), as this action seeks redress for the violation of Plaintiff's constitutional and civil rights. Plaintiff's claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

**VENUE**

13.     Venue is proper in the United States District Court for the Eastern District of Michigan, pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

**JURY DEMAND**

14.     Plaintiff demands a trial by jury in this action on each and every one of her claims.

**PARTIES**

15.     Plaintiff DEBORAH RYAN (hereafter "RYAN") was the mother of Plaintiff's decedent Katie Williams, and is the Personal Representative of her Estate. As such, she is the proper party to bring this action for and on behalf of the benefit of the Estate. She is a resident of the City of Canton, Wayne County, Michigan, as was her daughter, Katie Williams.

16.     Defendant CITY OF DETROIT (hereafter "DETROIT") is a municipal corporation, so authorized by the laws of the State of Michigan, that operates the Detroit Police Department (hereafter "DPD"), as a part of its responsibilities and services. At all times relevant

5

herein, this Defendant acted under color of regulation, usage, custom and law and pursuant to its

policies and practices, as did all the individual Defendants herein BARBARA KOZLOFF AND

DWANE BLACKMON.

 17. Defendant Sergeant BARBARA KOZLOFF (hereafter "KOZLOFF") is, and at

all times herein was, a police homicide Sergeant in the DPD of Defendant DETROIT, acting

under color of regulation, usage, custom and law, acting within the scope of her authority and

employment as a police homicide supervisor and pursuant to the policies and practices of

Defendant DETROIT, through its agency and unit, the DPD.

 18. Defendant Inspector DWANE BLACKMON (hereafter "BLACKMON") is, and

at all times herein was, the Commanding Officer of DPD Homicide. In September of 2009, he

was a Lieutenant. At all times herein, he was acting under color of regulation, usage, custom and

law, acting within the scope of his authority and employment as a police homicide supervisor

and pursuant to the policies and practices of Defendant DETROIT, through its agency and

department, the DPD.

 19. Defendant CANTON TOWNSHIP  (hereafter "CANTON") is a municipal

corporation, so authorized by the laws of the State of Michigan that operates the Canton Police

Department (hereafter "CPD"), as a part of its responsibilities and services. At all times relevant

herein, this Defendant acted under color of regulation, usage, custom and law and pursuant to its

policies and practices, as did all the individual Defendants herein MARK SCHULTZ and

ADAM FALK.

 20. Defendant Lt. MARK SCHULTZ (hereafter "SCHULTZ") is, and at all times

herein was, a lieutenant in the CPD of Defendant CANTON, acting under color of regulation,

usage, custom and law, acting within the scope of her authority and employment as a police

supervisor and pursuant to the policies and practices of Defendant CANTON, through its agency and department, the CPD.

21.     Defendant Officer ADAM FALK (hereafter "FALK") is, and at all times herein was, a police officer in the CPD of Defendant CANTON, acting under color of regulation, usage, custom and law, acting within the scope of her authority and employment as a police homicide supervisor and pursuant to the policies and practices of Defendant CANTON, through its agency and department, the CPD.

## STATEMENT OF FACTS

*22.*     At all times herein ED WILLIAMS was a DPD police officer, assigned to the Homicide unit, where he had been assigned for at least 10 years. He had been a Detroit police officer for approximately 15 years.

23.     At all times herein, KATIE WILLIAMS was a Detroit police officer and had been so for approximately 14 years. In September 2009, she was just returning to active duty after being on light duty for 2 years due to a work related back injury.

24.     Prior to and including September 22, 2009, Plaintiff's Decedent, Katie Williams bad been married to Edward Ed Williams, both Detroit police officers. They lived together at 3543 Wall St., Canton, Michigan with Katie Williams' son, Kevin Swope Jr., who was eleven years old at the time of her death.

25.     Prior to September 19, 2009, Ed and Katie Williams had been experiencing serious marital problems, largely as a result of Ed Williams' infidelity, to such an extent that they had agreed to divorce and each sought lawyers to pursue that divorce.

26.     At all times relevant hereto, including between September 19 and September 22, 2009, Defendants were on notice of the Williams' marital conflicts.

7

27.     Late in the evening of September 19, 2009, Ed Williams assaulted and battered Katie Williams in their marital home, causing her to be physically and visibly injured.

28.     As a result of that assault, in the early morning hours of September 20, 2009, Katie Williams went to Defendant CANTON's police headquarters to advise the Canton Department of Public Safety that she had been assaulted and to request a police escort to get safely back into her house so she could retrieve some personal items and then leave the house. There, she was interviewed by Defendant FALK.

29.     At the time and date of her appearance at the CPD on September 20, 2009, Katie Williams was accompanied by Clifford Lee, also a DPD officer whom she had been seeing. Mr. Lee told Defendant FALK that Katie was concerned that, in the long term, Ed Williams would "do something to her," and that he had threatened her in the past.

30.     At this time Katie Williams advised Defendant FALK that her husband was a Detroit police officer and that she was also a Detroit police officer. FALK asked her if she wanted to make a report against her husband. FALK further stated that, because of Katie Williams' visible signs of violent assault and her oral statement, there was sufficient to authorize him, FALK, to initiate a criminal investigation, regardless of whether she filed a written report of the incident.

31.     She declined to file a written report because she feared that he would lose his job and, also, that if she officially reported her husband, as a Detroit police officer, she would face retaliation from both Ed Williams and from fellow police officers, due to an unspoken but iron clad code, custom and policy of silence within DPD that demanded that police officers never report the misconduct of fellow officers.

8

32.     Although at that time (between 12:15 and 12:45 a.m.), Katie Williams did not report either her name or her husband's name to Defendant FALK or to the Canton police headquarters, by 9:19 a.m. that same morning, this information had been reported to CPD by Clifford Lee, who identified the location (3543 Wall St., Canton, Michigan) of the assailant, Ed Williams, and the victim, Katie Williams.

33.     On September 20, 2009, due to at least two calls for help, the Canton Police performed a SWAT team operation at the Williams' Wall Street home and, thereafter, Defendants CANTON and SCHULTZ were aware of the following documented facts, which were subsequently reported to Defendants DETROIT, KOZLOFF and BLACKMON, prior to the morning of September 22, 2009:

> a.   On the night of September 19, 2009, Ed Williams had criminally assaulted Katie Williams. Her injuries from this assault were witnessed and recorded by CPD  and were reported by Clifford Lee to the Canton PD as a criminal assault and battery;

> b.   On the morning of September 20, 2009, Katie Williams, accompanied by her mother, Plaintiff DEBORAH RYAN, went to the Wall St. address to retrieve of Katie Williams' personal belongings, not expecting Ed Williams to be there. Ed Williams had deliberately concealed his presence in the house by parking his car some distance from the house and garage and having a friend drop him of at the Wall Street house.

> c.   While inside the house, DEBORAH RYAN reported that Ed Williams was holding an un-holstered handgun while intoxicated in violation of criminal

9

statutory law, "possession of a firearm while intoxicated," MCLA section
750.237.

d.  When the Canton police officers arrived at the Wall Street location, the found
that Ed Williams had fled but that he had left a note in the house that they
determined was a suicide note. It stated:

> "I Edward G. Williams II of sound mind (a
> little pissed off though), hereby leave all
> worldly possessions to my mother, Wanda
> Williams. This is to include all life insurance
> policies and bank accounts.
>            /s/
> 9-20-09        6:15 AM"

e.  Katie Williams was with another man, Clifford Lee (also a Detroit police
officer), and that the relationship appeared to be that of "boyfriend/girlfriend."
Further, Defendant SCHULTZ, who communicated this information to
Defendant SCHULTZ also communicated to Defendant DETROIT that, if Ed
Williams learned that Katie was seeing another man, it was likely that the
situation would become dangerous;

f.  Based on these circumstances, Defendants SCHULTZ and CANTON issued a
statewide "notice of suspicious behavior" by Ed Williams, pursuant to the
Law Enforcement Information Network (hereafter "LEIN"), advising that Ed
Williams was missing and endangered and that he was dangerous, as
evidenced by the following narrative in the LEIN alert:

> "DPD officer, intox, no known veh reg, after
> domestic situation left a suicide note poss left
> home with handgun, if any contact use caution and
> call Canton PD."

10

34.     As a result of these incidents and occurrences, Defendants would have initiated a criminal investigation of Ed Williams, had they not known that he was a sworn and licensed police officer. However, thereafter, on the same day, SCHULTZ and CANTON did verbally advise Defendants DETROIT, BLACMON and KOZLOFF, through Sgt. Martel, as to all the information set forth in Paragraphs 25 - 33, above.

35.     During the course of the day of September 20, 2009, the following interactions between personnel of Defendant CITY and Defendant CANTON occurred:

    a.  Sgt. Martel of the DPD agreed with Defendant SCHULTZ that the note prepared by Ed Williams at approximately 6:15 a.m. on September 20, 2009 was a suicide note ("exactly"), and Martel so indicated to Defendants KOZLOFF and BLACKMON;

    b.  Martel also agreed with SCHULTZ that it would be very dangerous if Ed Williams already was aware or was to become aware of the involvement of Katie Williams and Clifford Lee", and so indicated to Defendants KOZLOFF and BLACKMON;

    c.  Martel agreed that, based on the aforementioned information, there was a palpable, serious and realistic danger that the situation could get "really out of control," unless such a dire consequence was proactively prevented by the DPD, and so indicated to Defendants KOZLOFF and BLACKMON;

    d.  Martel advised SCHULTZ that, pursuant to orders from his "chain of command," all materials were to go directly to the Internal Affairs unit of the DPD, which would "handle this whole thing" – i.e. that Ed Williams'

11

colleagues and friends in Homicide, including Defendants BLACKMON and KOZLOFF, were to be definitively and "completely out of it."

e.  Martel further insistently advised Defendants SCHULTZ and CANTON that *no* materials were to be sent to DPD Homicide, but rather to DPD Internal Affairs; and he gave SCHULTZ and CANTON the telephone number of DPD Internal Affairs, to which CANTON was, upon request from the DPD, to 'fax' all the written reports concerning the actions of Ed Williams on September 19-20, 2009. He further assured Defendants SCHULTZ and CANTON that the DPD, through its Internal Affairs investigators, would take responsibility for preventing Ed Williams from seriously injuring anyone ("Hopefully, we can get this thing before it gets really out of control").

f.  SCHULTZ advised Martel that there would be no criminal investigation of Ed Williams by the Defendant CANTON.

g.  Defendants SCHULTZ and CANTON advised Defendants DETROIT, KOZLOFF and BLACKMON, as well as Sgt. Martel and Ed Williams that, pursuant to the LEIN alert, they would "kick (Ed Williams) into a psychiatric unit" unless he saw someone in the DPD who would advise CANTON and SCHULTZ that he, Williams, was OK.

36.    Based on this representation, as set forth in Paragraph 35(f) above, from SCHULTZ to both Martel and Ed Williams, and despite the mandated procedure that DPD Homicide was to be "completely out of it" and that DPD Internal Affairs would take over, Ed Williams contacted Defendant KOZLOFF, a Homicide supervisor acting at the direction and under the supervision of Defendant BLACKMON. Ed Williams' purpose in contacting

12

KOZLOFF, as completely understood by both BLACKMON and KOZLOFF, was so that she

would advise SCHULTZ and CANTON as to whether or not they should "kick (Ed Williams)

into a psychiatric unit

38.     It was also the purpose of BLACKMON and KOZLOFF that KOZLOFF was to

advise SCHULTZ and CANTON that they should remove Ed Williams from the LEIN so that

CANTON and its officers would  not "kick (Ed Williams) into a psychiatric unit."

38.     The interview between KOZLOFF (at all times herein acting in concert and under

the supervision of  Defendant BLACKMON, her supervisor) and Ed Williams was:

    a.   Very superficial and brief, lasting, at most, 10 minutes;

    b.   Unprofessional, inappropriate and likely to lead to incorrect and dangerous

        decisions based on poor judgment, in that:

        i.   KOZLOFF, acting in concert with BLACKMON, determined that it
was of no significance, and therefore required no action by
KOZLOFF, BLACKMON or any member of the Detroit Police
Department, that: Ed Williams had inflicted domestic violence on his
wife, Katie Williams; that Ed Williams had earlier that day written a
suicide note; and that Ed Williams had lied to KOZLOFF during the
interview between them.

        ii.   Although KOZLOFF made a determination as to Ed Williams mental
status and stability, she  was not trained to assess a police officer's
mental fitness for duty and thus incapable of determining whether "all
is well" with Ed Williams, from a mental health, counseling,
psychiatric, risk assessment or personal perspective;

        iii.   Although she was Ed Williams' supervisor, KOZLOFF was incapable
of objectivity and independent judgment in making serious decisions
as to whether Ed Williams should be taken off active duty, be arrested,
have his firearms confiscated or be seen immediately by a psychiatric
professional, due to her personal relationship with him as a friend and
colleague;

        iv.   KOZLOFF, as a member of the homicide division, was supposed to
have stayed "completely out of it," and should have turned Ed
Williams over to DPD Internal Affairs;

    v. Despite the fact that it was obvious that there was probable cause to believe Ed Williams had recently violated criminal laws of the State of Michigan and that he was very psychologically disturbed and, indeed suicidal, KOZLOFF deliberately refused to arrest him, remove him from duty, require him to turn in his weapons and order him to be examined by a psychologist or psychiatrist;

    vi. KOZLOFF falsely asserted that she had been told by SCHULTZ that there was no probable cause to have arrested Ed Williams when, in fact, SCHULTZ never said nor believed any such thing;

    vii. KOZLOFF and BLACKMON both refused to reach out to and communicate with Katie Williams so as to better assess the situation between Ed and Katie Williams and to assess Ed Williams' mental stability; and

    viii. KOZLOFF and BLACKMON falsely advised Ed Williams that if he needed help he could call the Personal Affairs section of the DPD.

39. Defendants KOZLOFF and BLACKMON falsely asserted that that the Canton Police Department had represented that there was no probable cause to arrest Ed William. However had the Defendants SCHULTZ, FALK and CANTON initiated a criminal investigation regarding Ed Williams on September 20, 2009, Defendants KOZLOFF and BLACKMON would have had no choice but to take his guns, remove him from duty, force him to consult a psychiatric professional and arrest him.

40. Based upon the aforementioned woefully inadequate and incompetent interview, Defendants BLACKMON and KOZLOFF deliberately and affirmatively took action which increased a foreseeable and highly dangerous risk of harm to Plaintiff's decedent by communicating to Defendants SCHULTZ and CANTON that "all is well" with Ed Williams, and as follows:

    a. That he was both fit for duty and perfectly able and to safely have and use firearms;

14

b.  That he did not require psychological treatment or care before being allowed to possess and use firearms;

c.  That the note he had written was not a suicide note, i.e. KOZLOFF, at all times acting in concert with Defendant BLACKMON, falsely represented to Defendants SCHULTZ and CANTON, that it was not a suicide note and that it did not give rise to any possible inference of improper or violent behavior on the part of Ed Williams; and

d.  That he was not suicidal, notwithstanding the fact that KOZLOFF had no reasonable basis upon which to make such a judgment.

e.  KOZLOFF, at all times acting in concert with Defendant BLACKMON and speaking on behalf of the DPD, advised that the DPD would "really appreciate it" if the Canton PD would cancel the LEIN alert.

41.  As a result of this improper and inappropriate proactive and affirmative series of actions by KOZLOFF acting in concert with BLACKMON, the LEIN alert was cancelled and CANTON took no further interest in the matter by way of investigation or other law enforcement action until more than 36 hours later when Ed and Katie Williams were both already dead—Katie having been murdered by Ed and Ed then having then committed suicide.

42.  At all times herein, KOZLOFF, BLACKMON and DETROIT acted deliberately to affirmatively intervene in the Ed Williams case with Defendant SCHULTZ and CANTON to terminate CANTON's investigation and law enforcement actions despite knowledge that supervisors had taken all DPD Homicide officers and supervisors, including KOZLOFF, off the case and that she was not authorized to intervene.

15

43.     At all times herein, all Defendants herein deliberately refused and failed to address the known serious threat of harm that Ed Williams posed to his wife and others, including himself, during the time period between September 19 and 22, as evidenced by their knowledge of his suicidal and violent conduct and the fact that there was probable cause to believe that he had was guilty of at least two dangerous criminal acts.

44.     In refusing and failing to adequately respond to the threat posed by Ed Williams, as evidenced by his psychological problems and criminal and violent actions, Defendants BLACKMON, KOZLOFF and DETROIT treated him differently and preferentially than they would have, had he not been a police officer, acting in a threatening and dangerous manner toward a wife, family member or himself. Defendants' intent and purpose to respond to allegations of police officer Ed Williams' criminal and dangerous behavior more preferentially than to non-police officer domestic abusers is evidenced by the following, among others:

      a. Defendants' active intervention with another law enforcement agency in favor of Ed Williams, which they would not have done for a perpetrator of domestic violence inflicted by someone other than a Detroit police officer;

      b. The refusal of the Defendants to objectively, neutrally and fairly investigate the situation and conflict between Ed and Katie Williams, which they would not have done for a perpetrator of domestic violence inflicted by someone other than a Detroit police officer;

      c. Defendants' refusal to communicate with, talk to or interview the domestic abuse victim, Katie Williams, notwithstanding their policy that required them to do so, had the victim been the spouse of anyone other than a police officer;

16

d.  The refusal of the Defendants to arrest or detain Ed Williams, despite clear evidence that established probable cause that he had violated the law and despite clear policy that required the Defendants to arrest anyone whom they had probable cause to believe had committed any crime, including a misdemeanor, that involved domestic violence, which policy was waived and/or disregarded when the perpetrator was a police officer, such as, in particular, Ed Williams. Defendants would not have waived this policy had Ed Williams been anyone other than a Detroit police officer;

e.  Defendants' active assertion to Defendants SCHULTZ and CANTON that Ed Williams was mentally stable, competent and reliably able to possess firearms, which they would not  have done for a perpetrator of domestic violence inflicted by someone other than a Detroit police officer;

f.  Interviewing Ed Williams in a superficial and non-probing way that resulted in their acceptance, without question, of his representations, statements and assertions, which they would not have done for a perpetrator of domestic violence inflicted by someone other than a Detroit police officer; and

g.  Making a medical and psychological diagnosis regarding Ed Williams' mental health without the benefit of professional training, advice, consultation or participation, which they would not have done for a perpetrator of domestic violence inflicted by someone other than a Detroit police officer.

45.    In refusing and failing to adequately respond to the threat posed by Ed Williams as evidenced by his psychological problems and criminal and violent actions, Defendants SCHULTZ, FALK and CANTON treated him differently and preferentially than they would

17

have, had he not been a police officer, acting in a threatening and dangerous manner toward a

wife, family member or himself. Defendants' intent and purpose to respond to allegations of

police officer Ed Williams' criminal and dangerous behavior more preferentially than to non-

police officer domestic abusers is evidenced by the following, among others:

    a.   The refusal of the Defendants to objectively, neutrally and fairly evaluate the

        following circumstances, which, had Ed Williams not been a police officer,

        would most certainly have resulted in the immediate initiation of a criminal

        investigation by these Defendants:

           i.   That Katie Williams appeared at the Canton Police Department in the
very early hours of September 20, 2009 reporting that she was
assaulted by her husband;

          ii.   That she had an evident mark on her face as the result of the apparent
assault;

         iii.   That several hours later, these Defendants received two 911 calls that
reported that Ed Williams was in the family house, in the presence of
his estranged wife and mother-in-law while intoxicated and having
pulled his firearm;

         iv.   That when the Canton officers, including Defendant SCHULTZ,
responded, Ed Williams fled the scene so that he could avoid being
interrogated; and

          v.   That, as evidence of his potentially violent intent, after he fled, he left
behind a clear message of suicide and anger.

    b.   The refusal of these Defendants to arrest or detain Ed Williams, despite clear

        evidence that established probable cause that he had violated the law and

        despite their clear policy that required the Defendants to arrest anyone whom

        they had probable cause to believe had committed a crime, including a

        misdemeanor, that involved domestic violence, which policy was shelved,

        waived and/or disregarded because the perpetrator was a police officer, in

18

particular Ed Williams, which they would not have done for a perpetrator of domestic violence inflicted by someone other than a police officer.

46.     As such, all Defendants treated Ed Williams more preferentially and favorably than they would have had the perpetrator been a person other than a police officer.

47.     Further, all Defendants treated Ed Williams' victim, Katie Williams, differently, more adversely and more injuriously than they would have treated those potential victims of someone who was not a police officer.

48.     Defendants' purposely intended to respond to allegations of police officer Ed Williams' criminal and dangerous behavior, *vis-à-vis* his victim Katie Williams, more adversely and injuriously to Katie Williams than to victims of non-police officer domestic abuse. Further they purposely intended to respond to these allegations more favorably and preferentially to Ed Williams than they would have had he not been a police officer.

49.     The objective impact and effect of those actions was adverse to Katie Williams and favorable and preferential to Ed Williams.

50.     The aforementioned objective impact and effect, as well as Defendants' purpose and intent, is evidenced, in part, by those incidents and circumstances set forth above.

51.     At no time was there any reasonable and/or rational basis for the differential treatment set forth and summarized above.

52.     The actions of the Defendants KOZLOFF and BLACKMON were as a result of the customs, policies and practices of Defendants DETROIT, including but not limited to the following:

a.  Failure to train, supervise and discipline its officers and supervisors to respond to situations of both real and potential domestic violence by DPD officers as

vigorously, firmly, aggressively and promptly as they respond to such situations where the domestic violence suspect is not a police officer;

b.  Routinely accept and condone DPD supervisors' and officers' regular practice and custom of responding to complaints, accusations and/or charges of domestic violence or other wrongdoing against other police officers with favoritism, cronyism and/or partiality, rather than with professionalism, objectivity and responsibility;

c.  Failure to train, supervise and discipline DPD supervisors so that they will recognize and appropriately refer officers whom they supervise and who exhibit serious psychological problems to Internal Affairs for psychological evaluation and counseling and require it when appropriate;

d.  Failure to train, supervise and discipline DPD supervisors so that they will recognize that a police officer with serious psychological poses a serious threat to the general public, his/her colleagues and especially his/her spouse, neighbors, family members and self;

e.  Failure to promulgate or implement, through training, supervision and discipline, guidelines, policy, practices, customs or investigative techniques that required Detroit police officers, investigating claims of domestic violence or abuse by Detroit police officers, to interview, inquire of or ask the officer's domestic violence victim/spouse for her information regarding the events in question.

f.  Despite being on notice that there was an epidemic of suicidal pathology amongst DPD officers at the time of these incidents, these Defendants

20

routinely ignored their obligation to have in place a mandatory requirement of psychological evaluation and counseling of officers who exhibit any signs of such problems and the immediate confiscation of their firearms, pending the completion of psychiatric examination and treatment;

g.  Routine failure to have clear mandatory guidelines, mechanisms, protocols, resources or procedures to be used by DPD officers and supervisors when they are put on notice of a police officer who poses a serious threat to the general public, his/her colleagues and especially his/her spouse, neighbors, family members, and self;

h.  Failure to have clear mandatory guidelines, mechanisms, protocols, resources and procedures to be used by DPD officers and supervisors when they are put on notice of a police officer who exhibit serious psychological symptoms;

i.  Failure to promulgate or implement, through training, supervision and discipline, any policies or proper procedure that instructed or guided supervisors who reasonably believed that that subordinates may be under non-duty-related stress that may be deemed to effect their duties and/or require hospitalization;

j.  Failure to promulgate or implement, through training, supervision and discipline, any policies or proper procedure whatsoever, regarding members who are experiencing psychological difficulties; and

k.  Tolerance, ratification and authorization of an unspoken code and policy of silence within the Detroit Police Department that demanded that police

21

officers not report misconduct, criminal activity, or potential mental illness by other fellow officers.

53.    The actions of the Defendants CANTON, SCHULTZ and FALK were as a result of the customs, policies and practices of Defendants CANOTN herein, including but not limited to the following:

a.    Failure to train, supervise and discipline its officers and supervisors to respond to situations of both real and potential domestic violence by police officers as vigorously, firmly, aggressively and promptly as they respond to such situations where the domestic violence suspect is not a police officer;

b.   Routinely accept and condone CANTON supervisors' and officers' regular practice and custom of responding to complaints, accusations and/or charges of domestic violence or other wrongdoing against other police officers with favoritism, cronyism and/or partiality, rather than with professionalism, objectivity and responsibility;

54.    The aforementioned customs, policies and practices were likely to result in the violations of rights of others secured under the Fifth and Fourteenth Amendments to the United States Constitution, including Plaintiff and Plaintiff's decedent Katie Williams.

55.    The aforementioned customs, policies and practices were a driving force and proximate cause of in the actions of the Defendants that resulted in the violations of the rights of others, in particular the Plaintiff and Plaintiff's decedent herein, Katie Williams, to both due process and equal protection of the law, as secured under the Fifth and Fourteenth Amendments to the United States Constitution.

56.     As a result of the actions of the Defendant DETROIT's and CANTON's aforementioned customs, policies and practices, on September 22, 2009, Ed Williams tragically shot and killed Katie Williams and then shot and killed himself.

## CLAIMS

### COUNT I - FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – DENIAL OF DUE PROCESS
### BY DEFENDANTS DETROIT, KOZLOFF AND BLACKMON
(STATE CREATED DANGER)

57.      Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 56 as if fully set forth herein.

58.     In their actions, set forth above, the Defendants DETROIT, KOZLOFF and BLACKMON violated the Plaintiff's decedent's clearly established and fundamental right under the substantive due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, i.e. decedent's rights to personal security, bodily integrity and life. These violations are and were all of such magnitude of liberty deprivation that these abuses that Defendants have inflicted upon Plaintiff's decedent stripped from her the very essence of her personhood.

59.     Defendants' violations of the aforementioned clearly established rights, were characterized by the following:

      a.   They caused harm that was foreseeable and direct;

      b.   They acted with a degree of culpability that shocks the conscience;

      c.   They affirmatively undertook actions that increased the risk of serious injury and/or death and therefore were a cause of the death of Plaintiff's decedent, Katie Williams, notwithstanding that a relationship existed between these

23

Defendants and Katie Williams such that she was a foreseeable victim of these Defendants' acts;

   d.  Katie Williams was a member of a discrete class of persons subjected to the harm caused by the Defendant's actions, rather than a member of the public in general; and

   e.  Defendants, in particular KOZLOFF and BLACKMON, used their authority so as to act affirmatively and proactively and to thereby create a grave danger to Katie Williams and/or to render her more vulnerable to danger than had these Defendants not acted at all.

60.    As a direct and proximate result of the actions and conduct of the Defendants DETROIT, KOZLOFF and BLACKMON, Plaintiff herein suffered the following injuries and damages:

   a.  As to the estate of Patricia ("Katie") Williams:

      i.  Physical injury as a result of being shot with a handgun, resulting in death;

     ii.  Conscious physical and emotional pain, suffering, anguish, distress and fear; and

    iii.  Loss of earning capacity.

   b.  As to the survivors, under the Michigan Wrongful Death Act, MCL 600.2922, *et seq.:*

      i.  Loss of love;

     ii.  Emotional distress and anguish;

    iii.  Loss of society and companionship;

    iv.  Loss of services;

     v.  Loss of emotional support; and

24

vi.  Loss of past and future economic support.

**COUNT II - SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983– DENIAL OF EQUAL PROTECTION**
**BY ALL DEFENDANTS**

61.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 60 as if fully set forth herein.

62.     At all times herein all the Defendants herein violated Plaintiff's decedent's rights to the equal protection of the law as secured by the Fourteenth Amendment to the United States Constitution, in that she was a victim of domestic violence, inflicted by a Detroit Police Officer, as distinguished from being a victim of domestic violence inflicted by a person other than a police officer, as set forth above.

63.     Defendants encountered, responded to and treated Plaintiff's decedent differently, adversely and more injuriously due to her status as a victim of domestic violence inflicted by a Detroit Police Officer than they would have encountered, responded to and treated her, had she been a victim of domestic violence, inflicted by a person other than a police officer

64.     These Defendants had no rational or reasonable basis for treating Plaintiff's decedent differently by virtue of the fact that her assailant or potential assailant was a police officer, than the victims of assailants or potential assailants who are not police officers.

65.     As a direct and proximate result of the acts and conduct of the Defendants, Plaintiff herein suffered the following injuries and damages:

a.  As to the estate of Patricia ("Katie") Williams:

i.  Physical injury as a result of being shot with a handgun, resulting in death;

25

      ii.  Conscious physical and emotional pain, suffering, anguish, distress and fear; and

    iii.  Loss of earning capacity.

  b.  As to the survivors, under the Michigan Wrongful Death Act, MCL 600.2922, *et seq.*:

      i.  Loss of love;

     ii.  Emotional distress and anguish;

    iii.  Loss of society and companionship;

    iv.  Loss of services;

     v.  Loss of emotional support; and

    vi.  Loss of past and future economic support.

## COUNT III - THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – *MONELL* CLAIM
### DEFENDANT CITY OF DETROIT

66.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 65, as if fully set forth herein.

67.    At all times herein the Defendant DETROIT had established, promulgated, implemented and maintained customs, policies and/or practices, as set forth above.

68.    Defendant DETROIT was on actual notice that each of the aforementioned policies set forth above, were highly likely and probable to proximately cause violations of the Constitutional rights of members of the public, including Plaintiff's decedent, Katie Williams.

69.    As a direct and proximate result of the acts and conduct of the Defendants, Plaintiff herein suffered the following injuries and damages:

  a.  As to the estate of Patricia ("Katie") Williams:

26

    i.  Physical injury as a result of being shot with a handgun, resulting in death;

    ii.  Conscious physical and emotional pain, suffering, anguish, distress and fear; and

    iii.  Loss of earning capacity.

b.  As to the survivors, under the Michigan Wrongful Death Act, MCL 600.2922,

    *et seq.*:

    i.  Loss of love;

    ii.  Emotional distress and anguish;

    iii.  Loss of society and companionship;

    iv.  Loss of services;

    v.  Loss of emotional support; and

    vi.  Loss of past and future economic support.

### COUNT IV – FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – *MONELL* CLAIM
### DEFENDANT CITY OF CANTON

70.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1through 69, as if fully set forth herein.

71.    At all times herein the Defendant CANTON had established, promulgated, implemented and maintained customs, policies and/or practices, as set forth in Paragraph 48 above.

72.    Defendant CANTON was on actual notice that each of the aforementioned policies set forth above, were highly likely and probable to proximately cause violations of the Constitutional rights of members of the public, including Plaintiff's decedent, Katie Williams.

27

73.     As a direct and proximate result of the acts and conduct of the Defendants,

Plaintiff herein suffered the following injuries and damages:

    a.   As to the estate of Patricia ("Katie") Williams:

        i.   Physical injury as a result of being shot with a handgun, resulting in death;

        ii.   Conscious physical and emotional pain, suffering, anguish, distress and fear; and

        iii.   Loss of earning capacity.

    b.   As to the survivors, under the Michigan Wrongful Death Act, MCL 600.2922, *et seq.*:

        i.   Loss of love;

        ii.   Emotional distress and anguish;

        iii.   Loss of society and companionship;

        iv.   Loss of services;

        v.   Loss of emotional support; and

        vi.   Loss of past and future economic support.

### COUNT V – FIFTH CLAIM FOR RELIEF
### STATE LAW – GROSS NEGLIGENCE
### DEFENDANTS KOZLOFF and BLACKMON

74.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1through

73, as if fully set forth herein.

75.     At all times herein, Defendants KOZLOFF and BLACKMON acted in a manner

so reckless, as set forth above in Paragraphs 20 – 39 herein above, as to demonstrate substantial

lack of concern as to whether injury or death would occur and, as such, are not protected by

governmental immunity pursuant to MCLA 691.1407.

76.     As a direct and proximate result of the acts and conduct of Defendants, Plaintiff

herein suffered the following injuries and damages:

    a.   As to the estate of Patricia ("Katie") Williams:

        i.   Physical injury as a result of being shot with a handgun, resulting in death;

        ii.   Conscious physical and emotional pain, suffering, anguish, distress and fear; and

        iii.   Loss of earning capacity.

    b.   As to the survivors, under the Michigan Wrongful Death Act, MCL 600.2922, *et seq.*:

        i.   Loss of love;

        ii.   Emotional distress and anguish;

        iii.   Loss of society and companionship;

        iv.   Loss of services;

        v.   Loss of emotional support; and

        vi.   Loss of past and future economic support.

### COUNT VI - SIXTH CLAIM FOR RELIEF
### WRONGFUL DEATH

77.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1through

76 as if fully set forth herein.

78.     This action is brought pursuant to the Michigan Wrongful Death Act, MCL

600.2922, *et seq.* and damages are sought on behalf of the Estate of Patricia ("Katie") Williams

and on behalf of those family members who enjoyed a close personal relationship with her and

29

who, due to her death, have been deprived of his love, society, companionship and affection, in particular her son, mother and siblings, to wit:

    a.  Loss of love;

    b.  Emotional distress and anguish;

    c.  Loss of society and companionship;

    d.  Loss of services;

    e.  Loss of emotional support; and

    f.  Loss of past and future economic support.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands the following relief, jointly and severally, against all Defendants for the violation of her rights as set forth herein, First through Fifth Claims for Relief:

    a.  A declaration that Defendants violated the federal and state law rights of Plaintiff;

    b.  Whatever amount the jury may determine for compensatory damages for physical, emotional, and economic injuries suffered by Plaintiff's decedent – past, present and future – by reason of Defendants' unlawful, unconstitutional and unjustified conduct, in an amount that is fair, just and reasonable and in conformity with the evidence at trial;

    c.  Whatever amount the jury may determine for compensatory damages for the loss of consortium, emotional suffering, loss of society and companionship

30

and loss of services suffered by Plaintiff's decedent's heirs, under the

Michigan Wrongful Death Act, MCL §600.2922, *et seq*;

d.   Punitive and exemplary damages against the individual Defendants to the

extent allowable by law;

e.   Attorneys fees, as allowed, pursuant to 42 U.S.C. §1988 and MCL 37.1606;

f.   The costs, interest and disbursements of this action; and

g.   Such other and further legal and/or equitable relief as appears just and proper.

Respectfully submitted,

GOODMAN & HURWITZ, P.C.

*By:  w/William H. Goodman* _____
William H. Goodman (P14173)
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170/Fax: (313) 567-4827
bgoodman@goodmanhurwitz.com
*Attorneys for Plaintiffs*

-*and*-

GOODMAN KALAHAR
By:  Kathleen J. Kalahar (P60301)
1394 E Jefferson Ave
Detroit, MI  48207
(313) 567-6165/Fax: (313) 567-4827
kkalahar@goodmankalahar.com
*Co-Counsel for Plaintiffs*

Dated:  September 5, 2012

31

## DEMAND FOR JURY TRIAL

NOWCOMES Plaintiff, DEBORAH RYAN as Personal Representative of the Estate of

Patricia "Katie" Williams, deceased, by and through her attorneys, GOODMAN & HURWITZ,

P.C., and GOODMAN KALAHAR, P.C., and hereby demands a trial by jury on all issues of this

cause.

Respectfully submitted,

GOODMAN & HURWITZ, P.C.

By:  w/William H. Goodman_____
William H. Goodman (P14173)
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170/Fax: (313) 567-4827
bgoodman@goodmanhurwitz.com
*Attorneys for Plaintiffs*

-and-

GOODMAN KALAHAR
By:  Kathleen J. Kalahar (P60301)
1394 E Jefferson Ave
Detroit, MI  48207
(313) 567-6165/Fax: (313) 567-4827
kkalahar@goodmankalahar.com
*Co-Counsel for Plaintiffs*

Dated:  September 5, 2012

### CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2012, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record thus far.

By:  w/William H. Goodman_____
William H. Goodman (P14173)
*Attorneys for Plaintiffs*

32