## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CRISTOBAL MENDOZA and
ANNICA CUPPETELLI,

      Plaintiffs,

                                 Case No.: 11-10899

vs.                            Honorable Arthur J. Tarnow
                                 Magistrate Judge Michael J. Hluchaniuk

CITY OF DETROIT, a Municipal Corporation;
MARK CARSON, in his individual capacity;
SGT. CONWAY PETTY, in his individual
capacity; SGT. RODERICK GLOVER, in his
individual capacity; PARAMOUNT PICTURES;
D.W. STUDIOS PRODUCTIONS L.L.C.; NICK
DEROO; and DAVID RUMBLE, jointly and
severally,

      Defendants.
_____/

Kathryn Bruner James (P71374)       Dennis Burnett (P27099)
William H. Goodman (P14173)        City of Detroit Law Department
Julie H. Hurwitz (P34720)           660 Woodward Avenue, Suite 1650
Goodman & Hurwitz, P.C.            Detroit, MI  48226
1394 E. Jefferson Ave.               (313) 237-3013/Fax: (313) 224-5505
Detroit, MI 48207                   burnd@detroitmi.gov
(313) 567-6170                      *Attorneys for City of Detroit & Carson*
(313) 567-4827 fax
mail@goodmanhurwitz.com
*Attorneys for Plaintiffs*
_____/

### PLAINTIFFS' FIRST AMENDED COMPLAINT AND JURY DEMAND

1

**PLAINTIFFS' FIRST AMENDED COMPLAINT AND JURY DEMAND**

NOW COME Plaintiffs, CRISTOBAL MENDOZA and ANNICA CUPPETELLI, and for their Complaint against Defendants state as follows:

**PRELIMINARY STATEMENT**

1.     This is a civil rights action in which Plaintiffs seek relief for Defendants' violations, under color of state law, of their individual rights, privileges, and immunities secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution as enforced by the Civil Rights Act of 1871, 42 U.S.C. § 1983.

2.     At all times described herein, individual Defendants MARK CARSON, CONWAY PETTY, and RODERICK GLOVER acted under color of law and pursuant to the customs, policies, and practices of Defendant CITY OF DETROIT.

3.     At all times described herein, individual Defendants NICK DEROO and DAVID RUMBLE acted in the course and scope of their agency and/or employment relationship with Defendants PARAMOUNT PICTURES and/or D.W. STUDIOS PRODUCTIONS L.L.C. (hereafter "D.W.STUDIOS").

4.     At all times described herein, Defendants PARAMOUNT PICTURES and D.W. STUDIOS willfully participated in joint action and conspired with Defendant CITY OF DETROIT to interfere with private individuals' ability to take photos on a public street, to falsely arrest and prosecute said persons without probable cause, and to use excessive/unreasonable force against said persons, in violation of their First and Fourth Amendment rights. Thus, at all times relevant hereto, Defendants PARAMOUNT PICTURES and D.W. STUDIOS were state actors and acted under color of law.

5.      This case involves two people, the Plaintiffs herein, who, on September 25, 2010,

2

attempted to walk on the public streets of downtown Detroit and whose right to do so freely – as secured by the First, Fourth and Fourteenth Amendments of the United States Constitution – was denied, infringed, and violated by the Defendants.

6.  It further involves Plaintiffs' rights as residents of the Detroit community, and as artists, to express themselves artistically, to freely use a camera in public places for expressive purposes, and to be free from retaliation for so doing, as secured by the First, Fourth and Fourteenth Amendments of the United States Constitution.

7.  Finally, it involves the right of Plaintiffs to be free from seizure, arrest, detention, and ongoing threat of prosecution without probable cause and in an unreasonable and excessive manner, as secured by the Fourth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1331, 42 U.S.C § 1983, and the First, Fourth, and Fourteenth Amendments of the United States Constitution.

9.  The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10.  Venue is proper in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

## JURY DEMAND

11.  Plaintiffs demand a trial by jury in this action on each and every one of their claims.

## PARTIES

12.  Plaintiff CRISTOBAL MENDOZA (hereafter "MENDOZA") was at all relevant

times an Assistant Professor of Art and Art History at Wayne State University. He is also an artist and utilizes photography professionally as a part of his work as an artist and professor. At all relevant times herein he was a resident of the City of Detroit, County of Wayne, State of Michigan.

13.    Plaintiff ANNICA CUPPETELLI (hereafter "CUPPETELLI") is and was, at all relevant times, employed at an art gallery and is also an artist. In the course of her work as an artist, she and MENDOZA were collaborators. At all relevant times herein, she was a resident of the City of Detroit, County of Wayne, State of Michigan.

14.    Defendant CITY OF DETROIT (hereafter "DETROIT") is a municipal corporation, so authorized by the laws of the State of Michigan, which operates the Detroit Police Department (hereafter "DPD") as a part of its responsibilities and services. At all times relevant herein, this Defendant acted under color of regulation, usage, custom, and law and pursuant to its policies and practices, as did the individual Defendants herein.

15.    Defendant Sergeant MARK CARSON (hereafter "CARSON") is and, at all times herein, was a police officer in the DPD of Defendant DETROIT, acting under color of regulation, usage, custom, and law, acting within the scope of his authority and employment. Defendant CARSON, at the times relevant herein, also acted on behalf of, at the direction of, and in concert with Defendants PARAMOUNT PICTURES and/or D.W. STUDIOS.

16.    Defendant SGT. CONWAY PETTY (hereafter "PETTY") is and, at all times herein, was a supervisor in the Detroit Police Department. He was a direct and immediate supervisor of Defendant CARSON. At all relevant times herein, Defendant PETTY acted under color of regulation, usage, custom, and law, acting within the scope of his employment as a DPD supervisor, pursuant to the policies and practices of Defendant DETROIT, through its

4

department, agency and unit, the DPD. Defendant PETTY, at the times relevant herein, also acted on behalf of, at the direction of, and in concert with Defendants PARAMOUNT PICTURES and/or D.W. STUDIOS.

17.   Defendant SGT. RODERICK GLOVER (hereafter "GLOVER") is and, at all times herein, was a supervisor in the Detroit Police Department.  He was a direct and immediate supervisor of Defendant CARSON.  At all relevant times herein, Defendant GLOVER acted under color of regulation, usage, custom, and law, and within the scope of his employment as a DPD supervisor, pursuant to the policies and practices of Defendant DETROIT, through its department, agency and unit, the DPD.

18.   Defendant PARAMOUNT PICTURES CORPORATION (hereafter "PARAMOUNT") is and, at all time herein, was a Delaware corporation with its principal place of business in Los Angeles, California; a registered office in East Lansing, Michigan; and who did business in the City of Detroit.  Defendant PARAMOUNT is and was in the business of producing motion pictures including the "Transformers 3" movie, which was filmed in part in the City of Detroit in September 2010.  At all times relevant herein, this Defendant acted under color of state law.

19.   Defendant D.W. STUDIOS PRODUCTIONS L.L.C. (hereafter "D.W. STUDIOS") is and, at all times herein, was a Delaware corporation with its principal place of business in Universal City, California; a registered office in East Lansing, Michigan; and who did business in the City of Detroit.  Defendant D.W. STUDIOS is and was in the business of providing technical support, supervision, and production of film sets, props, and/or filing for the motion-picture industry including the "Transformers 3" movie, which was filmed in part in the City of Detroit in September 2010. At all times relevant herein, this Defendant acted under color of state

5

law.

20.   Defendants NICK DEROO (hereafter "DEROO") and DAVID RUMBLE (hereafter "RUMBLE") were set-location managers for the filming of "Transformers 3" in the City of Detroit in September 2010.  Based on information and belief, Defendants DEROO and RUMBLE are residents of the State of Michigan.

## STATEMENT OF FACTS

21.   At all times herein, Defendant DETROIT, through its police department, had a custom, policy, or practice of providing private entities (including Defendants PARAMOUNT and D.W. STUDIOS) with security and law enforcement services for the benefit of the private entities.

22.   Pursuant to the above custom, policy, or practice, Defendant D.W. STUDIOS and/or Defendant PARAMOUNT contracted with Defendant DETROIT to provide police officers, including Defendant CARSON, to patrol a movie set on and/or around Griswold Street in downtown Detroit. Defendant DETROIT provided police officers on overtime; Defendant PARAMOUNT and/or Defendant D.W. STUDIOS paid Defendant DETROIT for the officers' wages.

23.   On the evening of September 24, 2010 and into the early morning hours of September 25, 2010, Plaintiffs attended an art opening in Ferndale and then a lecture at the Detroit Institute of Arts.  They then went to dinner at a restaurant in downtown Detroit, followed by another art reception. Finally, they went to a downtown club, Cafe D'Mongo's, located at 1439 Griswold Street.  They arrived there around midnight and stayed for no longer than 45 minutes.

24.   When they arrived at the club, it was evident that a movie was being filmed in the

6

area.  There were changes to the facades of buildings and prop vehicles located throughout the immediate vicinity.

25.    Plaintiffs parked off of Griswold and, as they entered the area of Griswold between John R Street and Grand River Avenue on foot, they observed signs posted that announced that the businesses in the area were open for business.

26.    Shortly after 1:00 a.m., the two Plaintiffs left Cafe D'Mongo together.  Plaintiff MENDOZA raised his camera to take a photograph and was yelled at by a person who appeared to be a private security guard, who told him, "No pictures!"

27.    Plaintiff MENDOZA immediately complied, but stated in protest that "this is a public street."

28.    At this time and place, after Plaintiff MENDOZA replaced his camera back into his pocket, Defendant CARSON charged forward and forcefully threw Plaintiff CUPPETELLI, who was standing next to Plaintiff MENDOZA, against a wall. She fell to the ground due to the force of CARSON's assault upon her and suffered bruises and abrasions.

29.    The aforementioned assault by Defendant CARSON on Plaintiff CUPPETELLI was without provocation, without reason, and without any reasonable purpose and, as such, was unjustifiable, unreasonable and excessive.

30.    Defendant CARSON then proceeded to strike Plaintiff MENDOZA, who fell to the ground; thereafter, Defendant CARSON continued to assault and batter him repeatedly about the head, face and body, causing abrasions, contusions, and bruises, among other injuries.

31.    Defendant CARSON then arrested both Plaintiffs for the following alleged violations:

     a.  Plaintiff MENDOZA was charged with "Disorderly Conduct;" and

7

b.  Plaintiff CUPPETELLI was charged with "Interfering with a City Employee."

32.    At no time was there any basis or reason for either charge. Indeed, there was absolutely no probable cause for the assault or subsequent arrest of either Plaintiff.

33.    Defendant CARSON's actions, as set forth above, were undertaken under the supervision, direction, and approval of Defendants PETTY and GLOVER, as well as agents of Defendants PARAMOUNT and/or D.W. STUDIOS.

34.    Earlier that morning, Defendants DEROO and PETTY had instructed Defendant CARSON, in his capacity as a Detroit Police Officer, to protect the alleged copyright interests of Defendants PARAMOUNT and/or D.W. STUDIOS and to prevent anyone from taking pictures of the movie set, notwithstanding the clearly established constitutional right to do so.

35.    After his arrest, because he had been obviously injured during the course of his arrest, Plaintiff MENDOZA was immediately taken to Detroit Receiving Hospital as a police prisoner, as was Plaintiff CUPPETELLI.  There, they were examined, treated, and released as patients, at which point they were forced to appear in public, e.g. in the halls of the hospital, in handcuffs and shackles, and were thus further publicly humiliated.

36.    At this time, Plaintiff MENDOZA was taken to the 6th Precinct of the DPD, where he was held in custody until the late afternoon or early evening of September 25, 2010.

37.    At the time of his release from custody in the late afternoon or early evening of September 25, 2010, Plaintiff MENDOZA was forced to pay a $50 bond and ordered to subsequently report to the 36th District Court to answer the false charge of disorderly conduct.

38.    After her arrest, Plaintiff CUPPETELLI was taken to the 12th Precinct of the DPD, where she was held for several hours more.  At this time she was publically humiliated in numerous ways, including, but not limited to, the following:

8

      a. Defendant GLOVER sat alone with Plaintiff CUPPETELLI in an isolated room prior to CUPPETELLI's booking and stared at her for long periods of time, for no legitimate governmental purpose other than to harass, intimidate and humiliate her;

      b. She was physically frisked in a humiliating fashion by a female DPD officer – including an attempt to frisk her underneath her bra – in front of several male DPD officers, including Defendants CARSON and GLOVER, for no legitimate governmental purpose other than to harass and humiliate her; and

      c. She was forced, if she needed to urinate, to do so in a humiliating fashion in the vicinity of several male DPD officers, who could easily see her if they chose to look, for no legitimate governmental purpose other than to harass and humiliate her.

39.   All of the above detention conditions are in accord with the customs, policies, and procedures of Defendant DETROIT.

40.   Later, on the morning of September 25, 2010, Plaintiff CUPPETELLI was released from DPD custody, after being required to post a $100 bond and ordered to subsequently report to the 36th District Court to answer the false charges of interfering with a police officer.

41.   On October 4, 2010, Plaintiff MENDOZA appeared at the 36th District Court at the date and time that he was ordered to so appear, at which time he was advised of the following:

      a. Defendant CARSON had filed his report with the City of Detroit Law Department, the agency responsible for prosecuting misdemeanor ordinance violations; however, the charges had not yet been processed; and

      b. Plaintiff MENDOZA was required to continue checking with the court to find out whether he and Plaintiff CUPPETELLI would still be prosecuted.

42.   On October 5, 2010, Plaintiff CUPPETELLI appeared at the 36th District Court at the date and time that she was ordered to so appear, at which time she was advised of the same information described in Paragraph 41 above.

43. After nearly a month had gone by since the initial initiation of their criminal prosecutions, and several inquiries to the 36th District Court following their appearances on October 4 and 5, respectively, without any criminal prosecution having been processed and no

9

record of their criminal cases in the system, Plaintiffs requested and were refunded their

respective bonds:  $100 to Plaintiff CUPPETELLI and $50 to Plaintiff MENDOZA.

44. They were further told at that time that Defendant CARSON had up to a year to

pursue the prosecution against them.

45. As of the date of filing this *First Amended Complaint*, Plaintiffs have received no

further notice from the 36th District Court regarding the charges against them that arose from

this incident.

## CLAIMS

### COUNT I:
### Fourth Amendment – Excessive Force
### [42 U.S.C. § 1983]
### (Against Defendants CARSON, PETTY, GLOVER,
### PARAMOUNT, D.W. STUDIOS, DEROO, and RUMBLE)

46.   Plaintiffs incorporate Paragraphs 1-45, as if fully restated herein.

47.   Defendant CARSON directly violated Plaintiffs' rights to be free from

unreasonable and excessive physical force imposed under color of law, said rights being secured

by the Fourth and Fourteenth Amendments to the United States Constitution, by throwing

Plaintiff CUPPETELLI against a wall and repeatedly striking Plaintiff MENDOZA, as described

in Paragraphs 28 – 30 above.

48.   Defendant PETTY violated Plaintiffs' rights to be free from unreasonable and

excessive physical force by explicitly instructing Defendant CARSON to protect the private

copyright interests of Defendants PARAMOUNT and/or D.W. STUDIOS.  Defendant PETTY's

instruction to Defendant CARSON was the proximate cause of the violations of Plaintiffs'

constitutional rights.

49.   Defendants PETTY and GLOVER violated Plaintiffs' rights to be free from

10

excessive force by their failure to supervise, train, and discipline Defendant CARSON, who had

a known history within DPD of using excessive force.  Defendants PETTY and GLOVER's

failure to supervise, train, and discipline Defendant CARSON was the proximate cause of the

violations of Plaintiffs' constitutional rights.

50.    Defendants PARAMOUNT and D.W. STUDIOS also violated Plaintiffs' rights to

be free from excessive or unreasonable force by explicitly instructing Defendants CARSON and

PETTY to protect the alleged copyright interests of Defendants PARAMOUNT and/or D.W.

STUDIOS.  This unlawful instruction would and did inevitably lead to a conflict between police

officers and members of the public, particularly Plaintiffs herein, and caused the unlawful,

unreasonable, and excessive use of force against the Plaintiffs.  Defendants PARAMOUNT and

D.W. STUDIOS' instruction to Defendants CARSON and PETTY was thus a proximate cause of

the violations of Plaintiffs' constitutional rights.

51.    Moreover, Defendants PARAMOUNT and D.W. STUDIOS willfully participated

and conspired jointly with Defendant DETROIT to violate the constitutional rights of

individuals, including Plaintiffs herein, insofar as Defendant DETROIT's police officers

enforced Defendants PARAMOUNT and/or D.W. STUDIOS' alleged private copyrights

interests.  In doing so, Defendant DETROIT improperly favored Defendants PARAMOUNT

and/or D.W. STUDIOS' private interests over the valid, legitimate, and constitutional rights of

others, in particular the Plaintiffs herein, and thereby violated the rights of others, in particular

the Plaintiffs herein.

52.    Defendant CARSON's actions, as described in Paragraphs 28 – 34 above, were

undertaken and committed in furtherance of the conspiracy between Defendants PARAMOUNT,

D.W. STUDIOS, and DETROIT.

11

53.    In addition, as a result of their conspiracy with Defendant DETROIT, Defendants PARAMOUNT and D.W. STUDIOS acted under color of state law.

54.    Defendants DEROO and RUMBLE also violated Plaintiffs' rights to be free from unreasonable and excessive physical force by instructing and/or causing Defendants CARSON and PETTY to be instructed to protect the alleged copyright interests of Defendants PARAMOUNT and/or D.W. STUDIOS.  This unlawful instruction would and did inevitably lead to a conflict between police officers and members of the public, particularly Plaintiffs herein, and caused the unlawful, unreasonable, and excessive use of force.  Defendants DEROO and RUMBLE's instruction to Defendants CARSON and PETTY was thus a proximate cause of the violations of Plaintiffs' constitutional rights.

55.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered severe damages, including but not limited to:

     a.  Seizure;

     b.  Loss of liberty;

     c.  Psychological harm, past and future;

     d.  Degradation, humiliation, embarrassment, loss of reputation, loss of enjoyment of life, and past and future mental anguish;

     e.  Pain and suffering due to physical injury; and

     f.  Loss of earnings.

## COUNT II:

### Fourth Amendment – False Arrest
### [42 U.S.C. § 1983]
### (Against Defendants CARSON, PETTY, GLOVER,
### PARAMOUNT, D.W. STUDIOS, DEROO, and RUMBLE)

56.    Plaintiffs incorporate Paragraphs 1-55 as if fully restated herein.

12

57.   Defendant CARSON directly violated Plaintiffs' rights to be free from arrest without probable cause, said rights being secured by the Fourth and Fourteenth Amendments to the United States Constitution.

58.   Defendant PETTY violated Plaintiffs' rights to be free from arrest without probable cause by explicitly instructing Defendant CARSON to protect the alleged private copyright interests of Defendants PARAMOUNT and/or D.W. STUDIOS.  Defendant PETTY's instruction to Defendant CARSON was the proximate cause of Plaintiffs' wrongful arrests and consequent violations of their constitutional rights.

59.   Defendants PETTY and GLOVER also violated Plaintiffs' rights to be free from arrest without probable cause, by their failure to supervise, train, and discipline Defendant CARSON, who had a known history within DPD of arresting individuals without probable cause.  Defendants PETTY and GLOVER's failure to supervise, train, and discipline Defendant CARSON was a proximate cause of Plaintiffs' wrongful arrests and consequent violations of their constitutional rights.

60.   Defendants PARAMOUNT and D.W. STUDIOS also violated Plaintiffs' rights to be free from arrest without probable cause by explicitly instructing and conspiring with Defendants CARSON and PETTY to protect the alleged private copyright interests of Defendants PARAMOUNT and/or D.W. STUDIOS.  Defendants PARAMOUNT and D.W. STUDIOS' instruction to Defendants CARSON and PETTY was a proximate cause of Plaintiffs' wrongful arrests and consequent violations of their constitutional rights.

61.   Moreover, Defendants PARAMOUNT and D.W. STUDIOS willfully participated and conspired jointly with Defendant DETROIT to violate Plaintiffs' constitutional rights, insofar as Defendant DETROIT's police officers enforced Defendants PARAMOUNT and/or

13

D.W. STUDIOS' copyrights. In doing so, Defendant DETROIT favored Defendants PARAMOUNT and/or D.W. STUDIOS' private interests over the valid, legitimate, and constitutional rights of others, in particular the Plaintiffs herein, and thereby violated the rights of others, in particular the Plaintiffs herein.

62. Defendant CARSON's actions, as described in Paragraphs 28 through 34 above, were committed in furtherance of the conspiracy between Defendants PARAMOUNT, D.W. STUDIOS, and DETROIT.

63. By means of their conspiracy with Defendant DETROIT, Defendants PARAMOUNT and D.W. STUDIOS acted under color of state law.

64. Defendants DEROO and RUMBLE also violated Plaintiffs' rights to be free from arrest without probable cause by instructing and/or causing Defendants CARSON and PETTY to be instructed to protect the alleged copyright interests of Defendants PARAMOUNT and/or D.W. STUDIOS. This unlawful instruction would and did inevitably lead to a conflict between police officers and members of the public, particularly Plaintiffs herein, and caused the unlawful, unreasonable and wrongful arrests. Defendants DEROO and RUMBLE's instruction to Defendants CARSON and PETTY was thus a proximate cause of the violations of Plaintiffs' constitutional rights.

65. As a direct and proximate result of Defendants' arrest of Plaintiffs without probable cause, Plaintiffs have suffered damages, including but not limited to:

    a. Seizure;

    b. Loss of liberty;

    c. Psychological harm, past and future;

    d. Degradation, humiliation, embarrassment, loss of reputation, loss of enjoyment of life, and past and future mental anguish; and

14

e.  Loss of earnings.

## COUNT III:
## Fourth Amendment – Malicious Prosecution
## [42 U.S.C. § 1983]
## (Against Defendants CARSON, PETTY, GLOVER,
## PARAMOUNT, D.W. STUDIOS, DEROO, and RUMBLE)

66.  Plaintiffs incorporate Paragraphs 1-65 as if fully restated herein.

67.  Defendant CARSON directly violated Plaintiffs' rights to be free from the initiation of criminal prosecutions without probable cause, said rights being secured by the Fourth and Fourteenth Amendments to the United States Constitution.

68.  Defendant CARSON initiated the aforementioned criminal prosecutions of Plaintiffs MENDOZA and CUPPETELLI by charging Plaintiffs with misdemeanor crimes, taking them into custody, requiring Plaintiffs to pay a bond in order to secure their release from jail, filing his report with the City of Detroit Law Department, and requiring Plaintiffs' appearance in the 36th District Court on October 4, 2010 and October 5, 2010, respectively.

69.  There was no probable cause for the aforementioned initiation of criminal prosecutions against these Plaintiffs.

70.  As a consequence of the criminal prosecutions initiated by Defendant CARSON, Plaintiffs MENDOZA and CUPPETELLI have suffered a deprivation of liberty and damages from the confinement that was imposed pursuant to legal process, insofar as Plaintiffs' bond money was withheld from them for a period time, they were required to appear in court, and they face a continued threat of charges for up to a year from the date of the incident.

71.  Although Defendant CARSON initiated the aforementioned criminal prosecutions, the charges were never perfected, and as of September 25, 2011, Defendant CARSON was no longer able to pursue these charges, so that they have been resolved favorably to the Plaintiffs

15

herein.

72.    Defendants PETTY and GLOVER violated Plaintiffs' rights to be free from prosecution without probable cause by their failure to supervise, train, and discipline Defendant CARSON, who had a known history within DPD of initiating prosecutions against persons without probable cause.  Defendants PETTY and GLOVER's failure to supervise, train, and discipline Defendant CARSON was a proximate cause of the violations of Plaintiffs' constitutional rights.

73.    Defendants PARAMOUNT and D.W. STUDIOS also violated Plaintiffs' rights to be free from prosecution without probable cause by explicitly instructing Defendants CARSON and PETTY to protect the alleged copyright interests of Defendants PARAMOUNT and/or D.W. STUDIOS.  In doing so, Defendant DETROIT favored Defendants PARAMOUNT and/or D.W. STUDIOS' alleged private interests over the valid, legitimate, and constitutional rights of others, and thereby violated the rights of others, in particular the Plaintiffs herein.  Defendants PARAMOUNT and D.W. STUDIOS' instruction to Defendants CARSON and PETTY was a proximate cause of the violations of Plaintiffs' constitutional rights.

74.    Moreover, Defendants PARAMOUNT and D.W. STUDIOS willfully participated and conspired jointly with Defendant DETROIT to violate the constitutional rights of individuals, including Plaintiffs herein, insofar as Defendant DETROIT's police officers enforced Defendants PARAMOUNT and/or D.W. STUDIOS' copyright and/or other private interests, even where those interests were in conflict with the constitutional rights of public citizens.

75.    Defendant CARSON's actions, as described in Paragraphs 28 through 34 above, were committed in furtherance of the conspiracy between Defendants PARAMOUNT, D.W.

16

STUDIOS, and DETROIT.

76.    By means of their conspiracy with Defendant DETROIT, Defendants PARAMOUNT and D.W. STUDIOS acted under color of state law.

77.    Defendants DEROO and RUMBLE also violated Plaintiffs' rights to be free from prosecution without probable cause by instructing and/or causing Defendant CARSON and PETTY to be instructed to protect the alleged copyright interests of Defendants PARAMOUNT and/or D.W. STUDIOS.  This unlawful instruction would and did inevitably lead to a conflict between police officers and members of the public, particularly Plaintiffs herein, and caused the unlawful and unreasonable initiation of Plaintiffs' criminal prosecution without probable cause. Defendants DEROO and RUMBLE's instruction to Defendants CARSON and PETTY was thus a proximate cause of the violations of Plaintiffs' constitutional rights.

78.    As a direct and proximate result of Defendants' prosecution of Plaintiffs without probable cause, Plaintiffs have suffered damages, including but not limited to:

a.  Seizure;

b.  Loss of liberty;

c.  Psychological harm, past and future;

d.  Degradation, humiliation, embarrassment, loss of reputation, loss of enjoyment of life, and past and future mental anguish; and

e.  Loss of earnings.

### COUNT IV:

### First Amendment
### [42 U.S.C. § 1983]
### (Against Defendants CARSON, PETTY, GLOVER,
### PARAMOUNT, D.W. STUDIOS, DEROO, and RUMBLE)

79.    Plaintiffs incorporate Paragraphs 1-78, as if fully restated herein verbatim.

80.    In using and attempting to use his camera on Griswold Street in downtown Detroit on September 25, 2010, Plaintiff MENDOZA, acting in collaboration with Plaintiff CUPPETELLI, engaged in expressive conduct that was also a part of the Plaintiffs' professional interests and activities and that constituted speech and conduct protected by the First Amendment and Fourteenth Amendments to the United States Consitution.

81.    Defendant CARSON directly violated Plaintiffs' rights to freedom of speech, expression, and association, said rights being secured by the First and Fourteenth Amendments to the United States Constitution, by stopping Plaintiffs from engaging in such protected activity and by arresting Plaintiffs in retaliation for Plaintiff Mendoza's protest that he had been taking a photograph on a public street and the Plaintiffs' use of photography as a constitutionally protected expressive activity.

82.    Defendant PETTY violated Plaintiffs' First Amendment rights by explicitly instructing Defendant CARSON to protect the private copyright interests of Defendants PARAMOUNT and/or D.W. STUDIOS.  Defendant PETTY's instruction to Defendant CARSON was a proximate cause of the violations of Plaintiffs' constitutional rights.

83.    Defendants PETTY and GLOVER violated Plaintiffs' First Amendment rights by their failure to supervise, train, and discipline Defendant CARSON, who had a known history within DPD of preventing and stopping individuals from engaging in protected activity and of arresting individuals in retaliation for engaging in such activity.  Defendants PETTY and GLOVER's failure to supervise, train, and discipline Defendant CARSON was a proximate cause of the violations of Plaintiffs' constitutional rights.

84.    Defendants PARAMOUNT and D.W. STUDIOS also violated Plaintiffs' First Amendment rights by explicitly instructing Defendants CARSON and PETTY to protect the

18

alleged copyright interests of Defendants PARAMOUNT and/or D.W. STUDIOS and to prevent

people from taking photos on a public street.  In doing so, Defendant DETROIT favored

Defendants PARAMOUNT and/or D.W. STUDIOS' private interests over the valid, legitimate,

and constitutional rights of others, in particular the Plaintiffs herein, and thereby violated the

rights of others, in particular the Plaintiffs herein.  Defendants PARAMOUNT and D.W.

STUDIOS' instruction to Defendants CARSON and PETTY was a proximate cause of the

violations of Plaintiffs' constitutional rights.

85.    Moreover, Defendants PARAMOUNT and D.W. STUDIOS willfully participated

and conspired jointly with Defendant DETROIT, through its supervisors and/or policymakers, to

violate the constitutional rights of individuals, including Plaintiffs herein, insofar as Defendant

DETROIT's police officers enforced Defendants PARAMOUNT and/or D.W. STUDIOS'

copyright and/or other private interests, even where those interests were in conflict with the

constitutional rights of the public.

86.    Defendant CARSON's actions, as described in Paragraphs 28 through 34 above,

were committed in furtherance of the conspiracy between Defendants PARAMOUNT, D.W.

STUDIOS, and DETROIT.

87.    By means of their conspiracy with Defendant DETROIT, Defendants

PARAMOUNT and D.W. STUDIOS acted under color of state law.

88.    Defendants DEROO and RUMBLE also violated Plaintiffs' First Amendment rights

by instructing and/or causing Defendants CARSON and PETTY to be instructed to protect the

alleged copyright interests of Defendants PARAMOUNT and/or D.W. STUDIOS.  This

unlawful instruction inevitably led to a conflict between police officers and members of the

public, particularly Plaintiffs herein, and caused the unlawful interference with Plaintiffs'

19

exercise of protected First Amendment activity. Defendants DEROO and RUMBLE's instruction

to Defendants CARSON and PETTY was thus a proximate cause of the violations of Plaintiffs'

constitutional rights.

89.    As a direct and proximate result of Defendants' violation of Plaintiffs' First

Amendment rights, Plaintiffs have suffered severe damages, including but not limited to:

     a.  Seizure;

     b.  Loss of liberty;

     c.  Psychological harm, past and future;

     d.  Degradation, humiliation, embarrassment, loss of reputation, loss of enjoyment of life, and past and future mental anguish;

     e.  Pain and suffering due to physical injury; and

     f.  Loss of earnings.

## COUNT V:
### Fourth Amendment – Unreasonable Conditions of Seizure
### In the Alternative, Fourteenth Amendment – Substantive Due Process
### [42 U.S.C. § 1983]
### (Plaintiff CUPPETELLI only – Against Defendants GLOVER and DETROIT)

90.    Plaintiff CUPPETELLI incorporates Paragraphs 1-89 as if fully restated herein.

91.    Following Plaintiff CUPPETELLI's warrantless arrest and prior to any probable-

cause hearing, CUPPETELLI's Fourth Amendment right to be free from the unreasonable

conditions of a seizure was also violated in the following ways:

     a.  Defendant GLOVER sat alone with Plaintiff CUPPETELLI in an isolated room prior to CUPPETELLI's booking and stared at her for long periods of time, for no legitimate governmental purpose other than to harass and humiliate her;

     b.  She was physically frisked in a humiliating fashion by a female DPD officer – including an attempt to frisk her underneath her bra – in front of several male DPD officers, including Defendants CARSON and GLOVER, for no legitimate governmental purpose other than to harass and humiliate her; and

    c. She was forced, if she needed to urinate, to do so in a humiliating fashion in the vicinity of several male DPD officers, who could easily see her if they chose to look, for no legitimate governmental purpose other than to harass and humiliate her.

92.    The conduct described in Paragraph 91 above had no legitimate counter-veiling governmental interest other than to harass and humiliate Plaintiff CUPPETELLI.

93.    In the alternative, the conduct described in Paragraph 91 above violated Plaintiff CUPPETELLI's Fourteenth Amendment right to substantive due process and bodily integrity. Said conduct was so egregious and so outrageous that it shocks the contemporary conscience, and it constituted an arbitrary exercise of governmental power, unjustified by any governmental interest whatsoever.

94.    As a direct and proximate result of Defendants GLOVER and DETROIT's violations of Plaintiffs' Fourth and/or Fourteenth Amendment rights, Plaintiff CUPPETELLI has suffered injuries, including but not limited to:

    a. Psychological harm, past and future;

    b. Degradation, humiliation, embarrassment, loss of reputation, loss of enjoyment of life, and past and future mental anguish.

## COUNT VI:

### *Monell* Claim
### [42 U.S.C. § 1983]
### (Against Defendant CITY OF DETROIT)

95.    Plaintiffs incorporate Paragraphs 1-94 as if fully restated herein.

96.    At all times herein, Defendant DETROIT, through its supervisors and/or policymakers, established, promulgated, implemented, and/or maintained the following customs, policies, and/or practices:

    a. To infringe upon and punish expressive activity protected by the First

21

Amendment to the United States Constitution by condoning and/or acquiescing in the arrests and prosecutions of persons who take or attempt to take photographs in public places, such as the streets of the City of Detroit;

b. To inadequately and/or fail to train, supervise, and/or discipline police officers and supervisors, with regard to the fact that the use of photography for expressive, artistic, and professional activities is protected by the First Amendment to the United States Constitution and therefore cannot be a basis for arrests, prosecutions, and/or the use of force;

c. To hire and/or retain as police officers and supervisors certain persons when the aforementioned Defendant DETROIT knew, or had actual notice, that these persons employed excessive and unreasonable force;

d. To hire and/or retain as police officers and supervisors certain persons when the aforementioned Defendant DETROIT knew, or had actual notice, that these persons undertook and engaged in arrests that lacked probable cause;

e. To inadequately train, supervise, and/or discipline those police officers and supervisors when the aforementioned Defendant DETROIT knew, or had actual notice, that these officers and supervisors employed excessive and unreasonable force;

f. To inadequately train, supervise, and/or discipline those police officers and supervisors when the aforementioned Defendant DETROIT knew, or had actual notice, that these officers and supervisors undertook and engaged in arrests that lacked probable cause;

g. To inadequately train, supervise, and/or discipline police officers and supervisors with regard to the false, malicious, and improper initiation of criminal charges that lacked probable cause;

h. To hire and/or retain as police officers and supervisors certain persons when the aforementioned Defendant DETROIT knew, or had actual notice, that these persons engaged in conduct amounting to the imposition of shocking conditions of confinement on female prisoners in their custody; and

i. To inadequately train, supervise, and/or discipline those police officers and supervisors when the aforementioned Defendant DETROIT knew, or had actual notice, that these officers and supervisors engaged in conduct amounting to the imposition of shocking conditions of confinement on female prisoners in their custody.

97.   Each of the aforementioned customs, policies, and/or practices, i.e., the failures to

train, supervise, and/or discipline the individual Defendants and other nonparty employees, was

known to Defendant DETROIT as being highly likely and probable to cause violations of the constitutional rights of members of the public, in particular the Plaintiffs herein.  Each such custom, policy, and/or practice was a moving force in the violations of Plaintiffs' constitutional rights, as set forth herein.

98.   As a direct and proximate result of Defendants' customs, policies and/or practices – which were a moving force in the violations of Plaintiffs' Constitutional rights, as set forth in Counts I-V above – Plaintiffs have suffered severe damages, including but not limited to:

   a.   Seizure;

   b.   Loss of liberty;

   c.   Psychological harm, past and future;

   d.   Degradation, humiliation, embarrassment, loss of reputation, loss of enjoyment of life, and past and future mental anguish;

   e.   Pain and suffering due to physical injury; and

   f.   Loss of earnings.

### COUNT VII:
### Conspiracy in Violation of § 1983
### [42 U.S.C. § 1983]
### (Against Defendants PARAMOUNT and D.W. STUDIOS)

99.   Plaintiffs incorporate Paragraphs 1-98 as if fully restated herein.

100.  Defendants PARAMOUNT and D.W. STUDIOS willfully participated in joint action and conspired with Defendant DETROIT to violate the constitutional rights of individuals, including Plaintiffs herein, insofar as they directed Defendant DETROIT's police officers to enforce Defendants PARAMOUNT and/or D.W. STUDIOS' copyright and/or other private interests.  In doing so, these Defendants favored Defendants PARAMOUNT and/or D.W.

23

STUDIOS' private interests over the valid, legitimate, and constitutional rights of others, in particular the Plaintiffs herein, and thereby violated the rights of others, in particular the Plaintiffs herein.

101.  Defendant CARSON's actions, as described in Paragraphs 28 through 34 above, were committed in furtherance of the conspiracy between Defendants PARAMOUNT, D.W. STUDIOS, and DETROIT.

102.  By means of their conspiracy with Defendant DETROIT, Defendants PARAMOUNT and D.W. STUDIOS acted under color of state law.

103.  As a direct and proximate result of Defendants PARAMOUNT and D.W. STUDIO's conspiracy with Defendant DETROIT to violate Plaintiffs' constitutional rights, Plaintiffs have suffered severe damages, including but not limited to:

  a.  Seizure;

  b.  Loss of liberty;

  c.  Psychological harm, past and future;

  d.  Degradation, humiliation, embarrassment, loss of reputation, loss of enjoyment of life, and past and future mental anguish;

  e.  Pain and suffering due to physical injury; and

  f.  Loss of earnings.

## REQUESTED RELIEF

**WHEREFORE**, Plaintiffs demand the following relief, jointly and severally against all Defendants:

  (a)  A declaration that Defendants violated the federal constitutional rights of Plaintiffs;

  (b)  Compensatory damages for physical, emotional, psychological, and economic injuries suffered by Plaintiffs by reason of Defendants' unlawful and unjustified

24

conduct, in an amount that is fair, just, and reasonable and in conformity with the evidence at trial;

(c) Punitive and exemplary damages against the individual Defendants to the extent allowable by law;

(d) Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

(e) The costs and disbursements of this action pursuant to 42 U.S.C. § 1920; and

(f) Such other and further relief as appears just and proper.

Respectfully submitted,

GOODMAN & HURWITZ, P.C.

*s/Kathryn Bruner James*
Kathryn Bruner James (P71374)
William H. Goodman (P14173)
Julie H. Hurwitz (P34720)
*Attorneys for Plaintiffs*
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170
(313) 567-4827 fax
mail@goodmanhurwitz.com

Dated: September 24, 2012

25

**DEMAND FOR JURY TRIAL**

Plaintiffs CRISTOBAL MENDOZA and ANNICA CUPPETELLI, by and through

undersigned counsel, hereby demand a trial by jury on all issues of this cause.

Respectfully submitted,

GOODMAN & HURWITZ, P.C.

*s/Kathryn Bruner James*
Kathryn Bruner James (P71374)
William H. Goodman (P14173)
Julie H. Hurwitz (P34720)
*Attorneys for Plaintiffs*
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170
(313) 567-4827 fax
mail@goodmanhurwitz.com

Dated: September 24, 2012

CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2012, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

Further, a copy of this pleading will be served with the Summons and Complaint on all new Defendants.

*s/Kathryn Bruner James*
Kathryn Bruner James (P71374)
*Attorneys for Plaintiffs*
kjames@goodmanhurwitz.com

26