UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------------------------x
                                    :

In re                                 :             Chapter 9

CITY OF DETROIT, MICHIGAN,     :             Case No. 13-53846

              Debtor.              :            Hon. Steven W. Rhodes

------------------------------------------------------x

**DEBTOR'S OBJECTION TO JOINT
MOTION TO AMEND SOLICITATION PROCEDURES ORDER**

The City of Detroit (the "City") objects to the Joint Motion to Amend the Solicitation Procedures Order (Docket No. 3954) (the "Motion") filed by Assured Guaranty Municipal Corp. ("Assured") and Berkshire Hathaway Assurance Corporation ("BHAC" and, together with Assured, the "DWSD Bond Insurers") and, for the reasons set forth herein, respectfully requests that the Court deny the Motion.

**Preliminary Statement**

1. The Motion is a thinly veiled effort to have the Court decide a plan confirmation issue prior to the confirmation hearing. In addition, the treatment that the City's revised plan of adjustment, (the "Plan") provides to holders of certain claims arising from the City's issuance of water and sewer bonds

(the "DWSD Bonds") is appropriate.[1] Under the Plan, every holder of a DWSD Bond Claim (whether or not the claimant voted to accept or reject the Plan) that is in an impaired class of DWSD Bond Claims that accepts the Plan may elect to receive an alternative treatment under the Plan.[2] See Plan Art. II.B.3. As every holder in each impaired class of DWSD Bond Claims possess the same ability to make an identical election, the Plan does not provide "disparate treatment" of any holders of DWSD Bond Claims that are classified in the same class.

2. In plain terms, the City's proposed Plan provides that holders of impaired DWSD Bond Claims are entitled to receive New DWSD Bonds that will have the same maturity as their existing DWSD Bonds, but at interest rates specified in Exhibit I.A.161 to the Plan. The City believes that the interest rates specified in Exhibit I.A.161 to the Plan represent rates that cause the stream of payments specified in the New DWSD Bonds to have a present value equal to the allowed amount of the claims represented by the pertinent existing DWSD Bonds—precisely the result required by Bankruptcy Code section 1129(b)(2)(A) made applicable to chapter 9 pursuant to Bankruptcy Code section 901. Although

---

[1] The City filed its Second Amended Plan for the Adjustment of Debts of the City of Detroit (April 15, 2014) contemporaneously herewith. Terms not otherwise defined herein have the meanings given to them in the Plan.

[2] The Plan, as amended, classifies all DWSD Bond Claims in a separate classes by each CUSIP of DWSD Bonds.

the prior version of the Plan did not provide call protection for the New DWSD Bonds, the City's newly revised Plan provides the New DWSD Bonds with call protection for a period of up to five years or the existing maturity of the DWSD Bond holder's existing DWSD Bonds, whichever period is shorter.

3. Because, in many instances, the interest rates that are specified in Exhibit I.A.161 to the Plan are lower than the interest rates on the corresponding existing DWSD Bonds, the City has been advised that at least some holders and insurers of DWSD Bonds will object to this treatment based upon arguments that the City lacks the ability to impair the holders of DWSD Bond Claims and, in any event, that the interest rates specified in Exhibit I.A.161 to the Plan are too low. In an effort to avoid litigation on these issues and after consultation with certain holders of DWSD Bond Claims, the City devised an alternative treatment that would allow the City to benefit from any later ability to procure reduced interest rates in a manner that might be more acceptable to holders of existing DWSD Bonds.

4. This alternative treatment (the "DWSD Election") allows holders of impaired DWSD Bond Claims to receive new bonds bearing interest at the same rate as their existing DWSD Bonds (in many cases a rate that the City believes is higher than the rate that would cause the bonds to trade at par), but such bonds will be callable at any time. From an economic perspective, the City

believes that there is little difference for holders that decide to make the DWSD Election verse those holders that decide against making the DWSD Election, as the benefit of the higher interest rate balances against the City's ability to refinance the bonds at any time and avoid paying above market rates in the future.

5. The City refers to the DWSD Election as a "peace offering" as it is intended as a compromise. There is, however, another element of the DWSD Election: parties who want to accept the "peace offering" also have to waive their right to object to the Plan. This term is intended to eliminate objections to the Plan and the attendant inconvenience and expense of litigation. It also eliminates what the City views as "cherry picking"— *i.e.*, efforts by creditors who want to participate in a beneficial settlement to try to upset other parts of the Plan. This aspect of the DWSD Election is properly understood as a "peace treaty."

6. The City's expectation that some holders or insurers of the existing DWSD Bonds are interested in the DWSD Election seems to be confirmed by the Motion. The DWSD Bond Insurers do not object to any aspect of the "peace offering" and do not seek to change anything about its terms. Instead, the relief requested is the severing of the "peace treaty" from the "peace offering." (Although this is sometimes hard to discern when reading the Motion, the form of the Order at Exhibit 1 to the Motion makes the attempt to sever clear.)

7.      The City believes that its goal of obtaining peace and eliminating potential Plan litigation to the extent possible is in everyone's best interests.  Existing caselaw also supports the City's belief in this regard.  See <u>In re Zenith Electronics Corp.</u>, 241 B.R. 92, 105 (Bankr. D. Del. 1999) (upholding a plan provision that provided for a distribution to a class of junior bondholders only if the class voted in favor of the chapter 11 plan and stating:  "One justification for such disparate treatment is that, if the class accepts, the plan proponent is saved the expense and uncertainty of a cramdown fight.  This is keeping with the Bankruptcy Code's overall policy of fostering consensual plans of reorganization."); <u>In re Drexel Burnham Lambert Group, Inc.</u>, 138 B.R. 714 (Bankr. S.D.N.Y. 1992), <u>aff'd</u>, 140 B.R. 346 (S.D.N.Y. 1992) (upholding a the validity of a plan election that provided no distribution to certain equity holders if their class voted against a chapter 11 plan).

**<u>Argument</u>**

8.      A disconnect exists in the relief requested in the Motion, as the DWSD Bond Insurers improperly conflate two separate issues:  (a) the approval of ballots (the "<u>DWSD Ballots</u>") for the holders of impaired DWSD Bond Claims; and (b) whether the Plan is confirmable under the Bankruptcy Code.  The Motion fails to raise any issue as to whether the DWSD Ballots accurately reflect the treatment that the City intends to provide to the holders of impaired DWSD Bond

Claims under the Plan or any other informational deficiencies. Recognizing the DWSD Ballots are appropriate, the Court has already entered an order [Docket No. 3465] approving the form and content of the DWSD Ballots.

9. In contrast, the language that the DWSD Bond Insurers request the Court add to a further amended solicitation procedures order omits a key term of the DWSD Election as set forth in the Plan. The Motion requests that the Court add the following language to a further amended solicitation procedures order:

> Notwithstanding anything to the contrary in the Order Granting Motion of the City of Detroit for Approval of Amended Ballots [Docket No. 3796] (the "Amended Ballot Order"), no Ballot shall include any provision purporting to limit the right of a party identified in Paragraph 5 to object to the Plan on any grounds, including as a result or consequence of any election made in the Ballot. The City is hereby directed to remove any such language from any Ballot that was approved by the Amended Ballot Order.

Motion at ¶ 23.

10. Contrary to the DWSD Bond Insurers' assertions, nothing in the unconfirmed Plan or DWSD Ballots actually prevents a holder of a DWSD Bond Claim from filing an objection to the Plan. If a holder of a DWSD Bond Claim makes the DWSD Election, however, such holder must abide by the agreement that is an integral part of the DWSD Election or demonstrate that the Plan objection waiver contained in the DWSD Election is unenforceable. That the "peace treaty" included in the DWSD Election may well be enforceable (and the City is not aware

of any reason why it is not) is just another factor a holder should consider as it decides whether to make the DWSD Election.

11. In their current form (as recognized by the Court), the DWSD Ballots provide potential voters with all relevant information, including the loss of an ability to object to the Plan if a voter makes the DWSD Election. Thus, the Motion represents an attempt by the DWSD Bond Insurers to argue the terms of the DWSD Election are improper. This goes to whether or not the Plan is confirmable, however, and no part of the ballot impairs the DWSD Bond Insurers right to forgo the DWSD Election and object to the Plan in accordance with the terms of the Court's existing scheduling order [Docket No. 3632]. There exists no basis in the Motion or otherwise (including the two cases cited by the DWSD Bond Insurers, both of which were decided in the context of plan confirmation) to cause the Court to now reverse course and allow the DWSD Bond Insurers to litigate whether the terms of the DWSD Election are appropriate prior to the Plan confirmation hearing.[3]

---

[3] BHAC has requested that the City include the following additional language in the disclosure statement: "Note that certain bond insurers have asserted the right to deny coverage under their applicable insurance policies should any bondholder vote a Claim in Classes 1A, 1B, 1C or 1D in favor of the Plan as currently proposed. " Accordingly it seems that BHAC has no interest in accepting the Plan (and indeed seems to have already solicited rejections of the Plan). If BHAC has no interest in accepting the "peace

13-53846-tjt Doc 4100 Filed 04/15/14 Entered 04/15/14 17:46:00 Page 7 of 10

## **Conclusion**

12. For all of the forgoing reasons, there is no basis to approve the relief requested in the Motion and it should be denied.

---

offering," it should have no concern that the choice includes a commitment to acquiesce in the Plan in all respects.

Dated: April 15, 2014                    Respectfully submitted,


/s/ Bruce Bennett
Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
 STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY

# CERTIFICATE OF SERVICE

      I, Bruce Bennett, hereby certify that the foregoing Debtor's Objection to Joint Motion to Amend the Solicitation Procedures Order was filed and served via the Court's electronic case filing and noticing system on this 15th day of April, 2014.

                                            /s/ Bruce Bennett

CHI-1926700v5

13-53846-tjt    Doc 4100    Filed 04/15/14    Entered 04/15/14 17:46:00    Page 10 of 10