# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD WILCOX, individually; and
ALECIA WILCOX, individually;

      Plaintiff,

                                                        No.    2:13-cv-11679

-v-                                                     Hon. Arthur J. Tarnow

CITY OF DETROIT, a Municipal corporation;
SAMUEL DUNAGAN, in his individual capacity;
ERIC SMIGIELSKI, in his individual capacity; and
BRIAN HEADAPOHL, in his individual capacity;

      Defendants.
_____

**WOLFGANG MUELLER (P43728)**
Olsman, Mueller, Wallace &
MacKenzie, P.C.
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
(248) 591-2300
wmueller@olsmanlaw.com
_____

## **FIRST AMENDED COMPLAINT AND RELIANCE ON JURY DEMAND**

      NOW COME the Plaintiffs, GERALD WILCOX and ALECIA WILCOX, individually, by and through their attorneys, OLSMAN, MUELLER, WALLACE & MacKENZIE, P.C., by WOLFGANG MUELLER, and do hereby complain against the Defendants in this civil action, stating unto this Court as follows:

      1.    This is an action for damages brought pursuant to 42 USC §§1983 and 1998, the Fourth and Fourteenth Amendments to the United States Constitution and under the statutory and common law of the State of Michigan against Defendants, SAMUEL DUNAGAN, in his individual capacity; ERIC SMIGIELSKI, in his individual

capacity; BRIAN HEADAPOHL, in his individual capacity; and the CITY OF DETROIT, a municipal corporation. Jurisdiction is founded upon 28 USC §1331 and 28 USC §1343 and upon the pendent jurisdiction of this Court to adjudicate claims arising under Michigan law.

2. Venue is proper based on the situs of the incident, which occurred in the City of St. Clair Shores and City of Detroit.

3. That at all pertinent times Plaintiffs, GERALD WILCOX and ALECIA WILCOX, were residents of the City of St. Clair Shores, State of Michigan.

4. That the Defendants, SAMUEL DUNAGAN, ERIC SMIGIELSKI, and BRIAN HEADAPOHL, were citizens of the State of Michigan and, at all times relevant hereto, were employed as police officers for the City of Detroit Police Department, a department of the CITY OF DETROIT, a Municipal corporation.

5. That at the time of the events alleged in this Complaint, the individual Defendants were at all times acting in their individual capacities and within the scope of their employment as police officers employed by the Detroit Police Department and under color of law.

6. That at all times relevant hereto, the Defendant, CITY OF DETROIT, a Municipal corporation, was the employer of the individual Defendants.

## GENERAL ALLEGATIONS

7. On January 30, 2013, at approximately 5:58 p.m., the Family Dollar store, located at 15495 Schaefer in Detroit, was robbed by a man employees described as being African-American, approximately 6'0", 250 – 300 pounds, in his early-to-mid-twenties, with a bushy afro and mustache. He was wearing a black hooded jacket with

a partial ski mask covering his mouth. The robber, who had a pistol in his hand, escaped with approximately $75 and drove away in a blue Dodge Durango.

8. A retired police officer, Pride Johnson, was in the Family Dollar parking lot at the time of the robbery. He got a good look at the robber and followed the robber's vehicle as it sped away. Mr. Johnson was able to record the license plate of the vehicle, #CCJ44792.

9. Mr. Johnson reported the information to the Detroit police officers who responded to the crime scene. Mr. Johnson described the robber as being in his early 20's, approximately 6'0", 300 pounds, with a large afro haircut and medium complexion.

10. Armed with the license plate number of the getaway vehicle, police were able to track the vehicle to a house in Detroit, where they interviewed the owner of the vehicle, Beatrice McKinney.

11. Ms. McKinney told police officers that her nephew, Gerald Wilcox, who had been staying with her for a few days, had taken the keys to the vehicle that day. Ms. McKinney also told police she had a license to carry a pistol. When she showed the officers the location of her pistol, they discovered it was missing. Ms. McKinney told the officers that Gerald must have taken the pistol as well.

12. Ms. McKinney described her nephew, Gerald Wilcox, to the police as follows: a black male, 22-23 years old, 250 to 270 pounds, brown complexion, full beard with mustache.

13. Defendant, SAMUEL DUNAGAN, a sergeant with the Detroit Police Department, was the officer-in-charge ("OIC") of the Family Dollar robbery investigation. Also involved in the investigation was Sgt. Diaz Graves.

14. Incredibly, despite all of the eyewitnesses to the crime describing the robber as being in his early twenties to thirty years old, and Beatrice McKinney telling police that her nephew, Gerald Wilcox, was 22-23 years old, the police report issued by Officer Melissa Adams at 7:32 p.m. on the night of the robbery, described suspect Gerald Wilcox as being 45 years old. Similarly, police officer Charles Racz, who took the information from Beatrice McKinney, filed his initial police report at 8:11 p.m. on the night of the robbery, also described suspect Gerald Wilcox as being 45 years old.

15. Having the name and description of the suspect, Gerald Wilcox, Sgt. Diaz Graves alerted police officer, Defendant, ERIC SMIGIELSKI, of the situation. Defendant, SMIGIELSKI, and his partner, Defendant, BRIAN HEADAPOHL, ran a LEIN/Crisnet search of the name, Gerald Wilcox. They located a Gerald Wilcox, 43 years old, 5'10", 300 pounds, living in St. Clair Shores.

16. Plaintiff, Gerald Wilcox, 43 years old, resides in St. Clair Shores with his wife, Alecia, and three children. His children range in age from 19 to 8 years old. He has been retired from the City of Detroit Water Dept. since 2002, when he took a duty-disability retirement. His only contact with the criminal justice system occurred 24 years ago, when he was 19 and was charged with driving on a suspended license.

17. On January 31, 2013, at approximately 1:45 p.m., with the authorization and consent of Defendant, DUNAGAN, but without a search warrant or arrest warrant, Defendants, SMIGIELSKI and HEADAPOHL, went to Plaintiffs' home in St. Clair Shores, with four other Detroit police officers. The officers were there for the purpose of arresting Gerald Wilcox.

18. The officers knocked on Plaintiffs' door, which was opened by the Wilcox's 15 year-old son. Plaintiff, Alecia Wilcox, Gerald Wilcox's wife, also came to the door. Mrs. Wilcox repeatedly inquired why the police wanted to know where Gerald Wilcox was, and refused the police entrance until they answered her questions. The officers refused to tell Mrs. Wilcox the reason for their presence.

19. When Plaintiff, Gerald Wilcox, came out of a back bedroom in shorts and walked into the living room, the police officers intentionally and deliberately barged into the house, without consent and with guns drawn. They pointed their pistols at Gerald Wilcox and his son.

20. Defendants, SMIGIELSKI and HEADAPOHL, then arrested Plaintiff, Gerald Wilcox, and took him to the precinct lockup in Detroit. He was not allowed to make a telephone call and was not informed of the charges against him until February 2, 2013.

21. On February 1, 2013, while Gerald Wilcox was sitting in a precinct jail cell, Defendant, DUNAGAN, oversaw a photo lineup, showing Plaintiff and five other individuals, all in their early-to-mid forties, to the three Family Dollar store employees who encountered the robber.

22. Employee, Lashawnda Everett, picked out Plaintiff from the lineup. Employees, Cynthia Jackson and David Windon, both affirmatively told DUNAGAN that the robber was not in the photo array.

23. On February 2, 2013, defendant, DUNAGAN, filed his Investigator's Report, seeking an arrest warrant for Plaintiff on two counts of armed robbery, as the robber had pointed his pistol at two employees and threatened to kill them, as well as a

5

felony firearm charge.  Each armed robbery count carried a penalty of up to life in prison.

24. In his Investigator's Report, DUNAGAN stated that *"the aunt (Beatrice McKinney) stated her nephew Gerald Wilcox B/M took her vehicle keys without her permission and left the house on foot in an unknown direction."*

25. DUNAGAN deliberately, or with reckless disregard for the truth, did not mention that Beatrice McKinney described her nephew, Gerald Wilcox, as 22 or 23 years old, not 43 years old, the age of the Gerald Wilcox who had just been arrested.

26. In his Investigator's Report, DUNAGAN stated *"OIC (Officer-in-Charge) held photo show ups with defense attorney Susan Dunn, overseen (sic) the lineup and victim teller #1 Lashawnda Everett identified suspect Gerald Wilcox as the person who robbed her at gunpoint on 1/30/13."*

26. In his Investigator's Report, DUNAGAN deliberately, or with reckless disregard for the truth, did not mention two store employees who had viewed the photo array, Cynthia Jackson and David Windon, affirmatively denied that the robber was included in the photographs.

27. Also on February 2, DUNAGAN showed a picture of Plaintiff, Gerald Wilcox, to Beatrice McKinney, and asked if she knew the person in the photo.  Ms. McKinney responded, *"No."*  Ms. McKinney told DUNAGAN that the man depicted in the photograph was not her relative.  Thus, on February 2, 2013, the day the arrest warrant request was filed, DUNAGAN, the OIC of the case, knew that the police had arrested the wrong Gerald Wilcox.

28. Once Beatrice McKinney told Defendant, DUNAGAN, that the photo of Plaintiff, Gerald Wilcox, was not her nephew, DUNAGAN told her that he had interviewed the Plaintiff in jail, believed his claim of innocence, and that they had arrested the wrong man. He further told Beatrice McKinney that they let Gerald Wilcox go free.

29. Despite the knowledge that the police officers had arrested the wrong Gerald Wilcox, DUNAGAN chose not to disclose that fact to the Wayne County Prosecutor's office, or the magistrate who approved the arrest warrant, prior to Plaintiff's arraignment on February 3. Due to the severity and violent nature of the crime, a $100,000 cash bond was set by the magistrate. Plaintiff, who was unable to come up with $100,000 cash, was remanded to the Wayne County Jail.

30. The Preliminary Examination was scheduled for February 15, 2013. It was adjourned to February 21 at the request of the prosecutor, but not before Judge Shannon Holmes of the 36th District Court ascertained the rudimentary facts of the case. Judge Holmes asked Defendant, DUNAGAN, whether anyone had confirmed with Beatrice McKinney that the Gerald Wilcox who had been arrested was, in fact, her relative. For the first time, Defendant, DUNAGAN, disclosed that he showed Ms. McKinney a photo of the Defendant, and she confirmed that it was not her relative. Judge Holmes, highly upset, lowered Plaintiff's bond from $100,000 cash to a $10,000 personal bond.

31. The Preliminary Exam was further rescheduled at the request of the Prosecutor's Office and due to a court scheduling conflict, and ultimately did not take place until March 7, 2013.

7

32. On March 7, 2013, witness Pride Johnson, the retired police sergeant, came to court. When he saw the defendant, he told Defendant, DUNAGAN, and the prosecutor that Plaintiff was not the robber. Charges were immediately dismissed by the prosecutor.

33. Due to the conduct of defendants, SAMUEL DUNAGAN, ERIC SMIGIELSKI and BRIAN HEADAPOHL, and the CITY OF DETROIT, as set forth below, Plaintiffs, GERALD WILCOX and ALECIA WILCOX, have suffered the following injuries and damages:

    A. Being wrongfully arrested in front of family members and incarcerated for a period of 16 days;

    B. Plaintiffs' severe emotional distress for the period from Gerald's arrest to the present, including, but not limited to: the emotional distress of being charged with two counts of armed robbery and facing a possible sentence of life in prison for a crime the police knew he did not commit;

    C. Physical manifestations of emotional distress including, but not limited to, sleeplessness, irritability, loss of appetite, headaches, and other symptoms;

    D. Fright, shock, indignity, humiliation and embarrassment of being wrongfully charged and jailed for armed robbery;

    E. Payment of significant attorney fees;

    F. Many of Plaintiffs' injuries and damages are likely to be permanent;

    G. Other damages which may be revealed through discovery.

## COUNT I
## CONSTITUTIONAL VIOLATIONS BY ALL DEFENDANTS

34. Plaintiffs incorporate by reference each preceding paragraph as if fully stated herein.

35. The individual Defendants were under a legal obligation, secured by the United States' Constitution, and particularly the Fourth Amendment, to refrain from unlawfully seizing and arresting Gerald Wilcox without probable cause and entering his home for the purpose of arresting him, without an arrest warrant, without consent, and absent exigent circumstances. They were under further legal duty to refrain from making false and or materially misleading statements in a request for arrest warrant, which would be relied upon by the prosecutor and magistrate judge in making probable cause determinations for an arrest warrant to be issued.

36. Defendants violated GERALD WILCOX's constitutionally-protected rights, including his right to liberty protected by the Due Process clause of the Fourteenth Amendment to the U. S. Constitution, as well as his right to be free from unlawful detention without probable cause, guaranteed by the Fourth Amendment, by the following conduct :

    A. Defendants, SMIGIELSKI and HEADAPOHL, deliberately and wrongfully seized and arrested Gerald Wilcox without probable cause, and entered Plaintiffs' home for the purpose of arresting Gerald Wilcox, without probable cause, without consent, and absent exigent circumstances;

    B. Defendant, DUNAGAN, is liable for federal malicious prosecution, a violation of the Fourth Amendment, as he deliberately and intentionally, or with reckless disregard for the truth, made false statements and/or material omissions in his Investigator's Report in order to obtain probable cause, which was relied upon by the Wayne County Prosecutor's Office in issuing an arrest warrant, and the magistrate in approving the warrant; and further made, influenced, or participated in the decision to prosecute Plaintiff; there was a lack of probable cause for the prosecution; and, as a result of the prosecution, Plaintiff suffered a deprivation of liberty, as set forth above.

    C. Defendant, DUNAGAN, deliberately withheld from the Prosecutor and Defendant's counsel, the fact that on February 2, Beatrice

          McKinney had told DUNAGAN that the Gerald Wilcox in custody was not her relative, Gerald Wilcox;

D.    Defendant, DUNAGAN, deliberately withheld from the Prosecutor the fact that on February 1, store employees, Cynthia Jackson and David Windon, had affirmatively stated to Defendant, DUNAGAN, that the robber was not one of the individuals depicted in the photo lineup;

E.    Defendant, CITY OF DETROIT, created policies, practices and customs, including a failure to provide adequate training to its police officers, including the individual defendants, regarding the police department's constitutional obligation to arrest an individual only with probable cause, and to refrain from entering an individual's home for the purpose of arrest, without first having an arrest warrant, or consent of the homeowner, or exigent circumstances; turn over apparent exculpatory and impeachment evidence to the prosecutors; or to be truthful with the prosecutor in participating in the initiation of criminal charges; all of which demonstrated "deliberate indifference" to the constitutional rights of its citizens, and was the moving force behind the individual Defendants' violations of Plaintiff's constitutional rights;

F.    Other acts of constitutional violations that will be discovered through the process of discovery.

37. The constitutional rights which were violated by Defendants, as set forth above, were clearly established before January 31, 2013.

38. That as a direct and proximate result of the Defendants' willful violation of GERALD WILCOX's constitutionally protected rights, Plaintiff was detained without probable cause, charged with two crimes he did not commit, and jailed, causing him to suffer the injuries and damages set forth above.

WHEREFORE, Plaintiff, GERALD WILCOX, prays for such compensatory damages as are available pursuant to federal law. Plaintiff further seeks punitive damages pursuant to 42 USC §1983 as to the individual Defendants, together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court.

**COUNT II**
**COMMON LAW MALICIOUS PROSECUTION BY**
**DEFENDANT SAMUEL DUNAGAN**

39. Plaintiffs incorporate by reference each preceding paragraph as if fully stated herein.

40. Defendant, DUNAGAN, initiated criminal prosecution against Plaintiff in state court.

41. The criminal proceedings ultimately terminated in his favor with a dismissal of the charges in state court.

42. DUNAGAN initiated the prosecution by deliberately stating false and misleading facts in his Request for Warrant, which were relied upon by the Wayne County Prosecutor's Office and magistrate who approved the warrant. Defendant, DUNAGAN, knew that disclosing the information about the age discrepancy to the prosecutor, as well as the two store employees stating that the robber's photo was not in the photo lineup, would result in a finding of lack of probable cause to arrest Plaintiff, whom the police had already arrested without a warrant two days before.

43. The prosecution was undertaken without probable cause, as well as with malice, and to charge someone with the robbery, not with the intention of bringing Plaintiff to justice for having committed the alleged robbery.

44. As a direct and proximate result of Defendant's malicious prosecution, Plaintiff was charged with three crimes he did not commit, causing him to suffer the injuries and damages set forth above.

WHEREFORE, Plaintiffs, GERALD WILCOX and ALECIA WILCOX, pray for such compensatory and exemplary damages as are available pursuant to the common-

law of the State of Michigan, together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court.

### COUNT III
### COMMON LAW FALSE ARREST BY
### DEFENDANTS SMIGIELSKI AND HEADAPOHL

45.  Plaintiffs incorporate by reference each preceding paragraph as if fully stated herein.

46.  Defendants, SMIGIELSKI and HEADAPOHL, arrested Plaintiff without probable cause, without an arrest warrant, without consent and without exigent circumstances.

47.  As a direct and proximate result of Defendants' false arrest, Plaintiffs suffered the injuries and damages set forth above.

WHEREFORE, Plaintiffs, GERALD WILCOX and ALECIA WILCOX, pray for such compensatory and exemplary damages as are available pursuant to the common-law of the State of Michigan, together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court.

OLSMAN, MUELLER, WALLACE
& MacKENZIE, P.C.

s/Wolfgang Mueller
Wolfgang Mueller (P43728)
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
(248) 591-2300
wmueller@olsmanlaw.com

Dated: April 29, 2013

## RELIANCE ON PREVIOUSLY FILED JURY DEMAND

Plaintiffs, GERALD WILCOX and ALECIA WILCOX, by and through their attorneys, OLSMAN, MUELLER, WALLACE & MacKENZIE, P.C., hereby rely on the previously filed demand a jury trial in this matter.

OLSMAN, MUELLER, WALLACE
& MacKENZIE, P.C.

s/Wolfgang Mueller
Wolfgang Mueller (P43728)
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
(248) 591-2300
wmueller@olsmanlaw.com

Dated:   April 29, 2013