UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------------x
:
In re : Chapter 9
:
CITY OF DETROIT, MICHIGAN, : Case No. 13-53846
:
Debtor. : Hon. Steven W. Rhodes
:
:
---------------------------------------------------------x

# DEBTOR'S OBJECTION TO MOTION OF CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE DIRECTING THE DEBTOR TO COOPERATE WITH INTERESTED PARTIES SEEKING TO CONDUCT DUE DILIGENCE ON THE ART COLLECTION HOUSED AT THE DETROIT INSTITUTE OF ARTS

The City of Detroit (the "City") objects to the motion (Docket No. 3925) (the "Motion") filed by various creditors (the "Moving Creditors") seeking an order compelling the City to assist third parties in their "due diligence" efforts with respect to a potential sale or other transaction involving all or part of the art collection housed at the Detroit Institute of Arts (the "Art") and, for the reasons set forth herein, respectfully requests that the Court deny the Motion.[1]

---

[1] A detailed description of the Art is found on page 94 of the City's Third Amended Disclosure Statement With Respect To Third Amended Plan for the Adjustment of Debts of the City of Detroit [Docket No. 4272] (the "Disclosure Statement").

## Preliminary Statement

1. The Motion is an effort by the Moving Creditors' to interfere with the City's unqualified exclusive right to propose a plan of adjustment of its debts.

2. The City's Third Amended Plan for the Adjustment of Debts of the City of Detroit, dated April 25, 2014 [Docket No. 4271] (the "Plan"), includes a settlement whereby the Art will be placed into a formal trust and, in exchange for certainty that the City will not attempt to sell the Art to satisfy creditors, certain foundations, the state of Michigan and the Detroit Institute of Arts will provide approximately $816 million to reduce the levels of underfunding in the City's retirement systems (the "DIA Settlement") and in settlement of numerous challenges to the City's rights in the Art. The DIA Settlement is more fully described on page 154 of the Disclosure Statement. The City believes the DIA Settlement is the best and, perhaps the only, practical approach to realize value from its interests in the Art, while ensuring the Art will remain housed at the DIA, thus allowing the DIA to contribute to the City's future.

3. The City also firmly believes the Plan, including the DIA Settlement, meets all applicable confirmation standards. Even if the Moving Creditors do not accept the Plan and object to confirmation of the Plan, there is no basis to require the City to allow third parties to conduct "due diligence" for an

alternative transaction involving the Art that is inconsistent with the Plan. Practically speaking, it is also nonsensical to force the City to accommodate "due diligence" efforts of others in connection with transactions the City has no intention to pursue.

4. In addition, the Moving Creditors have ignored the Court's prior commentary, which the Court delivered in its decision to deny the Creditor's motion requesting the Court to appoint, and direct the City to cooperate with, a committee formed to assess the value of the Art [Docket No. 1833] (the "<u>Art Committee Motion</u>"):

> At this point, the Court must also emphasize a point to the creditors which it stressed in its eligibility decision. Selling assets without more will not solve the city's financial problems. Creditors would be much better served by working with the city to solve its long-term structural financial problems rather than on focusing on the treatment or disposition of one particular asset, especially an asset that is at least arguably essential for the city's long-term revitalization prospects.

Hearing Transcript at 35, <u>In re City of Detroit, Michigan</u>, No. 1353846 (Bankr. E.D. Mich. Jan. 22, 2014).

5. It is important to note that the "cooperation" sought by the Motion has nothing to do with and is not needed in connection with the Moving Creditors anticipated objections to the Plan. The Moving Creditors already have sent extensive discovery requests regarding the Art (the "<u>Plan Discovery Requests</u>") to the City and the DIA. One example of these requests can be found at

docket number 3315.  That pleading is only one of many requests that have been sent to the City and to the non-profit corporation that operates the DIA (the "DIA Corp.").  The City and the DIA Corp. have agreed to provide an enormous amount information in response to the Moving Creditors' Plan Discovery Requests.  If the Moving Creditors believe they need additional information for purposes of contesting confirmation of the Plan, they can obtain such information as part of the formal Plan discovery process.

## Argument

***Section 105(a) Fails to Provide a Basis for the Relief Requested***

6.  Section 105(a) of the Bankruptcy Code does not offer bankruptcy courts license to issue any order capable of being described as "necessary and appropriate"; rather, it authorizes only orders that are "necessary and appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  "Section 105 uses the term 'provisions' and not the term 'purposes' in describing the bankruptcy court's power to effect the mandate of the Bankruptcy Code.  The statutory language thus suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective."  2 Collier on Bankruptcy ¶ 105.01[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013).

7. This view of the application of section 105(a)—that it complements and implements other provisions of the Bankruptcy Code—has been confirmed by the United States Supreme Court.  See Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.").  As a result, section 105(a) of the Bankruptcy Code cannot be used as a substitute for—or to altogether bypass—other provisions of the Bankruptcy Code that expressly address the relevant subject matter.  See Michel v. Eagle–Picher Indus., Inc. (In re Eagle–Picher Indus., Inc.), 999 F.2d 969, 972 n.5 (6th Cir. 1993) (stating that "bankruptcy courts 'cannot use equitable principles to disregard unambiguous statutory language'") (quoting Childress v. Middleton Arms, L.P. (In re Middleton Arms, L.P.), 934 F.2d 723, 725 (6th Cir. 1991)); Lee, 530 F.3d at 473; 2 Collier ¶ 105.01[2] ("Section 105 does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code….").

8. As set forth below, the Moving Creditors' attempts to utilize section 105(a) of the Bankruptcy Code to force the City to cooperate in their "due diligence" efforts improperly conflicts with more specific and fundamental provisions of chapter 9.  These provisions protect the City from interference with its ability to govern and manage its property and provide the City with the sole right to file and seek confirmation of a plan of adjustment.  As a result of this

conflict, section 105(a) of the Bankruptcy Code cannot provide the Moving Creditors with a basis for the relief they have requested.

### *The Relief Requested Violates Section 904 of the Bankruptcy Code*

9. The Moving Creditors' request that the Court compel the City to cooperate in their due diligence efforts is in direct conflict with section 904 of the Bankruptcy Code. This section provides that "[n]otwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order or decree, in the case or otherwise, interfere with – (1) any of the political or governmental powers of the debtor … [or] (2) any of the property or revenues of the debtor." 11 U.S.C. § 904.

10. While they may assert otherwise in the Motion, the Moving Creditors' ultimate obvious goal is to force the City to sell the Art or encumber it to secure a loan that the City cannot afford to repay rather than enter into the DIA Settlement. This strategy is flawed for a number of reasons, including that it ignores significant disputes that exist concerning the exact nature of the City's interests in the Art.[2] Even if this were not the case, any attempt to force the City

---

[2] The Michigan Attorney General, in an opinion dated June 13, 2013 (Opinion No. 7272) (the "Opinion") asserted that "[t]he art collection of the Detroit Institute of Arts is held by the City of Detroit in charitable trust for the people of Michigan, and no piece of the collection may thus be sold, conveyed, or transferred to satisfy the City's debts or obligations." Opinion, at p. 1.

(either directly or indirectly) to enter into an alternate transaction violates section 904 of the Bankruptcy Code.

11.  The Moving Creditors also assert the relief requested in the Motion does not constitute interference with the City's property. An examination of the proposed order granting the Motion (the "Proposed Order"), however, dictates the opposite conclusion. Entry of the Proposed Order would require the City to allow parties to inspect the "physical works of Art housed at the DIA." While the Motion provides no real details as to the exact relief requested, it is possible that such relief may go as far as requiring the City to remove the Art from the DIA's walls for inspection. All of this is interference with City property (whatever the precise extent of its property interests) and in contravention of section 904 of the Bankruptcy Code.

12.  The Moving Creditors also argue that the City has waived the protections afforded to it under section 904 of the Bankruptcy Code, because the Plan includes the DIA Settlement. This argument also fails. The DIA Settlement is an integral part of the Plan. The City's pursuit of the confirmation of a Plan that includes the DIA Settlement places the appropriateness of that settlement before the Court; it does not, however, constitute a waiver of Bankruptcy Code section 904 or of any other right accorded the City by the Bankruptcy Code or otherwise. See In re City of Stockton, 486 B.R. 194, 199 (Bankr. E.D. Cal. 2013) (noting only

that a municipality may consent to a bankruptcy court's review of the validity of a proposed settlement and providing no basis to conclude any such consent extends beyond this limited scope or provides creditors with any basis to cause the municipality to pursue alternative transactions to the proposed settlement). That a settlement affecting a City asset is included in the Plan does not give license to anyone else to sell or compel the sale of that asset. That a settlement relating to a City asset is included in a Plan also does not create any obligation that the City consider alternative transactions with respect to that Asset or expend resources that may or may not lead to potential transaction structures involving the Art. In their Motion, the Moving Creditors readily admit this, stating "it will be up to the City to seriously consider such transaction, or not."

***The Motion Interferes with the City's Exclusive Right to File a Plan***

13. To the extent the Moving Creditors' intend the Motion to compel the City to alter its Plan and abandon the DIA Settlement, the Motion also interferes with the City's exclusive right to file a plan of adjustment under section 941 of the Bankruptcy Code. Section 941 provides that "[t]he debtor shall file a plan for the adjustment of the debtor's debts." 11 U.S.C. § 941; see, e.g., Ass'n of Retired Emps. v. City of Stockton (In re City of Stockton), 478 B.R. 8, 20 (Bankr. E.D. Cal. 2012) ("… only the municipality can propose a plan of adjustment"); In re New York City Off-Track Betting Corp., No. 09-17121, 2011 WL 309594, at *5

(Bankr. S.D.N.Y. Jan. 25, 2011) ("… only the debtor may file a plan of debt adjustment"). In a chapter 9 case, protecting the debtor's exclusive right to propose and seek confirmation of the Plan is vital, as, unlike a chapter 11 case, the City's exclusive right to file and seek confirmation of a plan can never be terminated.

***Denial of the Motion Creates No Risk the Plan Will Not Be Confirmed***

14. The Motion heavily focuses on the Moving Creditors' view of the standards the Court should apply to the confirmation of a chapter 9 plan and what the City must do to meet those standards. For example, the Motion states: "Thus, directing the City to cooperate with the Interested Parties now minimizes the real risk that, come July, the City will be back at square one in terms of developing a Plan that appropriately maximizes the value of the Art in accordance with chapter 9 confirmation requirements."

15. The Moving Creditors have entirely misrepresented the confirmation standards that apply in a chapter 9 case.[3] In contrast to the other chapters of the Bankruptcy Code, "[a] municipality cannot be liquidated, its assets sold, and the proceeds used to pay its creditors." 6 COLLIER ¶ 943.03[7] (16th ed.

---

[3] The City will provide a full response to all confirmation objections at the time set for such responses in the Court's Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [Docket No. 4202]. This section of the objection is a general summary of the City's view of some of the law applicable to plan confirmation.

2010); see Newhouse v. Corcoran Irr. Dist., 114 F.2d 690 (9th Cir. 1940) (holding that the "bankruptcy of a public entity . . . is very different" and that municipal "assets and property . . . cannot be disposed of as in the ordinary bankruptcy proceeding").

16. "The 'best interest' requirement of § 943(b)(7) is generally regarded as requiring that a proposed plan provide a better alternative for creditors than what they already have." In re Pierce Cnty. Hous. Auth., 414 B.R. 702, 718 (Bankr. W.D. Wash. 2009); In re Mount Carbon Metropolitan Dist., 242 B.R. 18, 34 (Bankr. D. Colo. 1999) (same); In re Sanitary and Improvement Dist., No. 7, 98 B.R. 970, 974 (Bankr. D. Neb. 1989) (holding that the best interests of creditors test "simply requires the Court to make a determination of whether or not the plan as proposed is better than the alternatives"). Thus, a chapter 9 debtor "may obtain confirmation of a plan, over objection, which does not utilize all of the assets of the estate to retire its obligations." Sanitary & Improvement Dist., 98 B.R. at 974. As the Sanitary & Improvement District court explained, if a chapter 9 debtor were required to maximize creditor recoveries by any available means in order to satisfy the best interests of creditors test, "the whole purpose and structure of Chapter 9 would be of little value." Id.

17. In addition, although the City has yet to solicit votes on the Plan and it is unclear whether the City will even need to satisfy the "fair and equitable

test," the Moving Creditors misstate this confirmation standard as well. The Bankruptcy Code does require the City to demonstrate the Plan is "fair and equitable , with respect to each class of claims . . . that is impaired under, and has not accepted the plan." 11 U.S.C. § 1129(b)(2). Collier's notes that, within Chapter 9, the "fair and equitable " requirement is met when creditors receive "all that they can reasonably expect in the circumstances."  6 COLLIER ¶ 943.03[1]. Without citation, the Motion asserts that "[c]reditors reasonably expect a municipal debtor to maximize the value of its primary, non-core assets to enhance creditor recoveries." Motion ¶25.

18. The lack of citation is not surprising, as the Moving Creditors' recitation of the "fair and equitable" standard finds no support in the statute or in case law. The City cannot be dismantled or liquidated as in an ordinary bankruptcy. See Lorber v. Vista Irr. Dist., 143 F.2d 628, 637 (9th Cir. 1942) (holding that public "assets and property . . . cannot be disposed of as in the ordinary bankruptcy proceeding"); Newhouse v. Corcoran Irr. Dist., 114 F.2d 690 (9th Cir. 1940) (same). Instead, the "fair and equitable" standard only requires that the City reasonably apply its taxing power to fund creditor distributions. Fano v. Newport Heights Irr. Dist., 113 F.2d 563, 566 (9th Cir. 1940) (denying proposed plan when municipal debtor did not make a "sufficient showing that [its] taxing power was inadequate to raise the taxes to pay" its obligations).

19. Judging the Plan and DIA Settlement in the context of the appropriate legal standards, makes clear that the City has no obligation to sell or encumber the Art through the transactions proposed by the Moving Creditors or otherwise.  In addition, given the significant uncertainty regarding the City's precise interests in the Art, the City's ability to obtain any monetary benefit from those interests, much less the approximately $816 million that will be provided under the DIA Settlement, also is far more than anyone could "reasonably expect" in the instant circumstances and falls well within the range of reasonableness for approval under Bankruptcy Rule 9019.  While providing a clear monetary benefit to the City, the DIA Settlement also ensures the Art will remain at the DIA for the City's future benefit.

20. Stated simply, the DIA Settlement provides no basis for one to conclude the Plan fails to satisfy the correct standards for confirmation in a chapter 9 case.  As a result, denying the relief requested in the Motion will have no impact on the City's ability to confirm the Plan.

## Conclusion

21. For all of the forgoing reasons, there is no basis to approve the relief requested in the Motion and it should be denied.

Dated: April 28, 2014　　　　　　Respectfully submitted,

/s/ Bruce Bennett
Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
　STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY

CHI-1927978v3
13-53846-tjt    Doc 4290    Filed 04/28/14    Entered 04/28/14 16:05:44    Page 13 of 14

# CERTIFICATE OF SERVICE

   I, Bruce Bennett, hereby certify that the foregoing Debtor's Objection to Motion of Creditors for Entry of an Order Pursuant to Section 105(a) of the Bankruptcy Code Directing the Debtor to Cooperate with Interested Parties Seeking to Conduct Due Diligence on the Art Collection Housed at the Detroit Institute of Arts was filed and served via the Court's electronic case filing and noticing system on this 28th day of April, 2014.

               /s/ Bruce Bennett