UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED
2014 APR 28 P 2:53
U.S. BANKRUPTCY COURT
E.D. MICHIGAN-DETROIT

In the matter of:

CITY OF DETROIT, MICHIGAN,

Debtor /

Case No. 13-53846-swr
Chapter 9
Hon. Steven W. Rhodes

**OBJECTION TO CITY OF DETROIT'S PLAN OF ADJUSTMENT [DOCKET 2708]**

Thomas Cattron hereby states his OBJECTION TO: CITY OF DETROIT'S PLAN OF ADJUSTMENT for the following reasons.

1. I am interested in the Bankruptcy of the city of Detroit (City) because I retired from the city of Detroit Department of Transportation in 2012.

2. I object to the above filing because:

   a. The plan of adjustment is in violation of 49 USC § 5333 (b)(2)(A) which requires *the preservation of rights, privileges, and benefits (including continuation of pension rights and benefits) under existing collective bargaining agreements or otherwise;* and is secured by grant funded collateral provided through the US-DOL by the Federal Transit Administration through a involuntary lien by operation of federal law. There is no exception relief cited to the City for bankruptcy under 49 USC § 5333 and therefore this protective arrangement for pension rights and other benefits must be maintained.

   b. The IRS Form 1099R identifies the Pension Payer's Federal Identification Number as 38-2457952 for the General Retirement System of the City of Detroit and 38-2465279 for the Police and Fire Retirement System of the City of Detroit; however, the City of Detroit TIN displayed on IRS W2 Form is 38-6004606. Both pension systems are legal entities that are separate and distinct from the City; however, the proposed plan of adjustments seeks to vary adjustments to pension creditor payments from the retirement entities bearing Federal Identification Number 38-2457952 and 38-2465279. As such, the City has no legal standing to declare pension payment recipients as its creditors.

c. The Constitution of the state of Michigan, Article XI § 24 requires *the accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.* In the CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT No. 12–682. Argued October 15, 2013—Decided April 22, 2014, a conclusion was reached that *there is no authority in the Federal Constitution or in this Court's precedents for the Judiciary to set aside Michigan laws that commit to the voters the determination whether racial preferences may be considered in governmental decisions, in particular with respect to school admissions.* As such, the Judiciary in Case No. 13-53846-swr has no authority to set aside Michigan Law in the Constitution of the state of Michigan, Article XI § 24.

d. Michigan Act 436 of 2012 "LOCAL FINANCIAL STABILITY AND CHOICE ACT" allows the State *to provide for the appointment and to prescribe the powers and duties of an emergency manager for a local unit of government or school district; to provide for the modification or termination of contracts under certain circumstances.* However, the US Constitution Article I § 10 stipulates *No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.* As such, Michigan Act 436 of 2012 is in violation of the US Constitution Article I § 10 in that it:

   1. it is a law that impairs the obligation of contracts,
   2. the Emergency Manager title grants privileges and protections at the expense of the State's people and is therefore a title of nobility, and
   3. the Emergency Manager seeks through the Plan of Adjustments to retroactively return portions of the retirees' annuity, which in essence is an ex post facto modification to the annuity.

   Therefore, the Emergency Manager has no authority to represent the City in Case No. 13-53846-swr as the actions are in violation of the US Constitution.

e. The Plan of Adjustments offers no guarantees and assurances from the State and the City that pension rights and benefits will not be diminished further in any future bankruptcy filings.

3. I have attached additional sheets to explain and establish my position for items 2(a) above. Item 2(b) is readily available. Items 2(c) and 2(d) are also readily available and extensive documents that can be provided upon request.

I hereby certify that the statements made herein are true and correct under penalty of perjury and contempt of Court under the laws of the United States of America.

Wherefore I request the Court will deny the Debtor's relief sought in said filing.

                                        Respectfully submitted,

                                        Name: Thomas Cattron
                                        Signature: /s/ Thomas Cattron
                                        Address: 13330 Vassar Ave.
                                                    Detroit, MI 48235
                                        Email: thoscat@yahoo.com

Dated: April 28, 2014

49 U.S.C.
United States Code, 2011 Edition
Title 49 - TRANSPORTATION
SUBTITLE III - GENERAL AND INTERMODAL PROGRAMS
CHAPTER 53 - PUBLIC TRANSPORTATION
Sec. 5333 - Labor standards
From the U.S. Government Printing Office, www.gpo.gov

## §5333. Labor standards

(a) Prevailing Wages Requirement.—The Secretary of Transportation shall ensure that laborers and mechanics employed by contractors and subcontractors in construction work financed with a grant or loan under this chapter be paid wages not less than those prevailing on similar construction in the locality, as determined by the Secretary of Labor under sections 3141–3144, 3146, and 3147 of title 40. The Secretary of Transportation may approve a grant or loan only after being assured that required labor standards will be maintained on the construction work. For a labor standard under this subsection, the Secretary of Labor has the same duties and powers stated in Reorganization Plan No. 14 of 1950 (eff. May 24, 1950, 64 Stat. 1267) and section 3145 of title 40.

(b) Employee Protective Arrangements.—(1) As a condition of financial assistance under sections 5307–5312, 5316, 5318, 5323(a)(1), 5323(b), 5323(d), 5328, 5337, and 5338(b) of this title, the interests of employees affected by the assistance shall be protected under arrangements the Secretary of Labor concludes are fair and equitable. The agreement granting the assistance under sections 5307–5312, 5316, 5318, 5323(a)(1), 5323(b), 5323(d), 5328, 5337, and 5338(b) shall specify the arrangements.

(2) Arrangements under this subsection shall include provisions that may be necessary for—

(A) the preservation of rights, privileges, and benefits (including continuation of pension rights and benefits) under existing collective bargaining agreements or otherwise;

(B) the continuation of collective bargaining rights;

(C) the protection of individual employees against a worsening of their positions related to employment;

(D) assurances of employment to employees of acquired public transportation systems;

(E) assurances of priority of reemployment of employees whose employment is ended or who are laid off; and

(F) paid training or retraining programs.

(3) Arrangements under this subsection shall provide benefits at least equal to benefits established under section 11326 of this title.

(4) Fair and equitable arrangements to protect the interests of employees utilized by the Secretary of Labor for assistance to purchase like-kind equipment or facilities, and grant amendments which do not materially revise or amend existing assistance agreements, shall be certified without referral.

(5) When the Secretary is called upon to issue fair and equitable determinations involving assurances of employment when one private transit bus service contractor replaces another through competitive bidding, such decisions shall be based on the principles set forth in the Department of Labor's decision of September 21, 1994, as clarified by the supplemental ruling of November 7, 1994, with respect to grant NV–90–X021. This paragraph shall not serve as a basis for objections under section 215.3(d) of title 29, Code of Federal Regulations.

(Pub. L. 103–272, §1(d), July 5, 1994, 108 Stat. 835; Pub. L. 104–88, title III, §308(e), Dec. 29, 1995, 109 Stat. 947; Pub. L. 105–178, title III, §3029(b)(9), June 9, 1998, 112 Stat. 372; Pub. L. 107–217, §3(n)(3), Aug. 21, 2002, 116 Stat. 1302; Pub. L. 109–59, title III, §§3002(b)(4), 3031, Aug. 10, 2005, 119 Stat. 1545, 1625.)

Historical and Revision Notes

*Revised*

| Section | Source (U.S. Code) | Source (Statutes at Large) |
|---|---|---|
| 5333(a) | 49 App.:1609(a), (b). | July 9, 1964, Pub. L. 88–365, §13, 78 Stat. 307; Sept. 8, 1966, Pub. L. 89–562, §2(a)(1), (b)(2), 80 Stat. 715, 716; May 25, 1967, Pub. L. 90–19, §20(a), 81 Stat. 25. |
| 5333(b) | 49 App.:1609(c). | |

In subsection (a), the words "take such action as may be necessary to", "the performance of", "the assistance of", and "at rates" are omitted as surplus. The word "same" is added for clarity. The words "duties and powers" are substituted for "authority and functions" for consistency in the revised title and with other titles of the United States Code.

In subsection (b)(1), the reference to sections 5307, 5308, 5310, and 5311 of the revised title is added for clarity because of 49 App.:1607a(e)(1), 1607a–2(a), 1612(b), and 1614(f), restated as sections 5307(n)(2), 5308(b)(1), 5310(a), and 5311(i) of the revised title. The reference to section 5312 is added for clarity because it is intended that 49 App.:1609(c) cover research, development, training, and demonstration projects. The words "terms and conditions of the protective" are omitted as surplus.

In subsection (b)(2), before clause (A), the words "without being limited to" are omitted as being included in "include". The words "such provisions as may be necessary for" are omitted as surplus. In clause (C), the word "individual" is omitted as surplus.

In subsection (b)(3), the words "section 11347 of this title" are substituted for and coextensive with "section 5(2)(f) of the Act of February 4, 1887 (24 Stat. 379), as amended" in section 13(c) of the Urban Mass Transportation Act of 1964 (Public Law 88–365, 78 Stat. 307) on authority of section 3(b) of the Act of October 17, 1978 (Public Law 95–473, 92 Stat. 1466).

### REFERENCES IN TEXT

Reorganization Plan No. 14 of 1950, referred to in subsec. (a), is set out in the Appendix to Title 5, Government Organization and Employees.

### AMENDMENTS

**2005**—Subsec. (b)(1). Pub. L. 109–59, §3031(1), substituted "5316, 5318, 5323(a)(1), 5323(b), 5323(d), 5328, 5337, and 5338(b)" for "5318(d), 5323(a)(1), (b), (d), and (e), 5328, 5337, and 5338(b)" in two places.

Subsec. (b)(2)(D). Pub. L. 109–59, §3002(b)(4), substituted "public transportation" for "mass transportation".

Subsec. (b)(4), (5). Pub. L. 109–59, §3031(2), added pars. (4) and (5).

**2002**—Subsec. (a). Pub. L. 107–217 substituted "sections 3141–3144, 3146, and 3147 of title 40" for "the Act of March 3, 1931 (known as the Davis-Bacon Act) (40 U.S.C. 276a—276a–5)" and "section 3145 of title 40" for "section 2 of the Act of June 13, 1934 (40 U.S.C. 276c)".

**1998**—Subsec. (b)(1). Pub. L. 105–178 substituted "5338(b)" for "5338(j)(5)" in two places.

**1995**—Subsec. (b)(3). Pub. L. 104–88 substituted "11326" for "11347".

### EFFECTIVE DATE OF 1995 AMENDMENT

Amendment by Pub. L. 104–88 effective Jan. 1, 1996, see section 2 of Pub. L. 104–88, set out as an Effective Date note under section 701 of this title.

**Transit Projects Awarded During Fiscal Year 2011 in Southeast Michigan (Oct. 1, 2010 Through Sept. 30, 2011)**

| County | Responsible Agency | Project Description | Project Type | Federal Amount Awarded |
|---|---|---|---|---|
| Washtenaw | Ann Arbor Transportation Authority (AATA) | Art | T-CAP | $48,400 |
| Washtenaw | Ann Arbor Transportation Authority (AATA) | Outreach and rideshare | T-OP | $455,000 |
| Washtenaw | Ann Arbor Transportation Authority (AATA) | Acquire hybrid buses | T-CAP | $1,697,350 |
| Washtenaw | Ann Arbor Transportation Authority (AATA) | Acquire large buses | T-CAP | $3,784,000 |
| Washtenaw | Ann Arbor Transportation Authority (AATA) | Preventive maintenance on buses | T-OP | $132,635 |
| Washtenaw | Ann Arbor Transportation Authority (AATA) | Acquire small buses | T-CAP | $480,000 |
| Washtenaw | Ann Arbor Transportation Authority (AATA) | Reconstruction of Transfer Center | T-CAP | $1,013,000 |
| Washtenaw | Ann Arbor Transportation Authority (AATA) | Acquire vans for vanpools | T-CAP | $500,000 |
| Wayne | Detroit Department of Transportation (DDOT) | Administration | T-OP | $95,175 |
| Wayne | Detroit Department of Transportation (DDOT) | Lease clean buses to replace older, more polluting buses. | T-CAP | $4,563,578 |
| Wayne | Detroit Department of Transportation (DDOT) | Bond repayment | T-CAP | $10,000,000 |
| Wayne | Detroit Department of Transportation (DDOT) | Bus replacement | T-CAP | $1,000,000 |
| Wayne | Detroit Department of Transportation (DDOT) | computer equipment | T-CAP | $690,148 |
| Wayne | Detroit Department of Transportation (DDOT) | Facility improvement | T-CAP | $1,234,330 |
| Wayne | Detroit Department of Transportation (DDOT) | Mobility Management | T-CAP | $728,084 |
| Wayne | Detroit Department of Transportation (DDOT) | Operating | T-OP | $128,486 |
| Wayne | Detroit Department of Transportation (DDOT) | Preventive maintenance on buses | T-OP | $13,877,251 |
| Wayne | Detroit Department of Transportation (DDOT) | Service and Support Vehicles | T-CAP | $325,000 |
| Wayne | Detroit Department of Transportation (DDOT) | Transit Enhancements | T-CAP | $284,108 |
| Wayne | Detroit Department of Transportation (DDOT) | General Planning and Engineering | T-OP | $1,000,000 |
| | | | TOTAL: | $68,434,686 |

*Part of a larger project.

Sources: *MDOT Office of Passenger Transportation, SEMCOG.*

Project Type: *T-CAP, Transit Capital; T-OP, Transit Operations.*

13-53846-tjt    Doc 4296    Filed 04/28/14    Entered 04/28/14 16:55:22    Page 6 of 7

## Transit Projects Approved for Expenditure by the Federal Transit Administration, Fiscal Year 2012 (10/1/11 Through 9/30/12)
### Southeast Michigan

| Awarded by | To (Agency) | Description | Federal | State and/or Local Funding | Total |
|---|---|---|---|---|---|
| SEMCOG | AATA | FY 2013 Rideshare | $455,000 | | $455,000 |
| State of Michigan | AATA | Operating | $192,030 | $192,030 | $384,060 |
| State of Michigan | AATA | Operating | | $7,117,375 | $7,117,375 |
| State of Michigan | Brighton Community | (1) Cutaway bus w/lift | $45,705 | $11,426 | $57,131 |
| (Federal Apportionment) | BWATC | Section 5307 Small Urban Formula funds | $1,314,947 | $22,500 | $1,337,447 |
| Federal Transit Administration | BWATC | Construct up to three remote CNG refueling stations | $891,000 | $222,750 | $1,113,750 |
| Federal Transit Administration | BWATC | JARC evening bus service, commuter bus service and voucher program | $575,930 | $538,130 | $1,114,060 |
| State of Michigan | BWATC | Mobility Management | $50,400 | $12,600 | $63,000 |
| State of Michigan | BWATC | Operating | $538,377 | $538,377 | $1,076,754 |
| State of Michigan | BWATC | Operating | $525,300 | $525,300 | $1,050,600 |
| State of Michigan | BWATC | Operating | | $3,218,520 | $3,218,520 |
| SEMCOG | BWATC | Replace two service vehicles with CNG service vehicles | $108,000 | $0 | $108,000 |
| State of Michigan | DDOT | Operating | | $48,909,155 | $48,909,155 |
| State of Michigan | DDOT | Up to (1) van w/o lift | $10,613 | $2,653 | $13,266 |
| State of Michigan | Detroit East Mental Health | Operating | | $218,227 | $218,227 |
| State of Michigan | Detroit Transportation Corp. (People Mover) | Operating | | $3,545,428 | $3,545,428 |
| State of Michigan | Jewish Family Services | Operating | $20,000 | $20,000 | $40,000 |
| State of Michigan | Jewish Family Services | Operating | $37,500 | $37,500 | $75,000 |
| State of Michigan | LETS | Grand River Run (JARC) | $38,835 | $38,835 | $77,670 |
| State of Michigan | LETS | Operating | $38,835 | $38,835 | $77,670 |
| State of Michigan | LETS | Operating | | $625,446 | $625,446 |
| (Federal Apportionment) | LETS | Operating and Office Equipment | $886,803 | $62,830 | $949,633 |
| State of Michigan | People's Express | Mobility Management | $48,000 | $12,000 | $60,000 |
| State of Michigan | People's Express | Mobility Management | $30,000 | $6,000 | $36,000 |
| State of Michigan | People's Express | Operating | $76,092 | $76,092 | $152,184 |
| State of Michigan | People's Express | Operating | $29,692 | $29,692 | $59,384 |
| SEMCOG | Same | FY 2013 Rideshare | $274,490 | | $274,490 |
| State of Michigan | Same | MichiVan--Purchase vans & Marketing | $1,525,902 | | $1,525,902 |
| State of Michigan | SMART | (1) Medium duty bus | $96,050 | $24,012 | $120,062 |
| State of Michigan | SMART | (2) Medium duty buses | $192,098 | $48,025 | $240,123 |
| State of Michigan | SMART | (5) Full vans w/lift | $154,506 | $38,627 | $193,133 |