UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In the matter of:

CITY OF DETROIT, MICHIGAN

_____Debtor_____ /

Case No. 13-53846-swr
Chapter 9
Hon. STEVEN W. RHODES

## OBJECTION TO CITY OF DETROIT'S PLAN OF ADJUSTMENT [DOCKET 4274]

FILED BY: _Constance M. Phillips – City of Detroit Retiree; former General Manager_

_____ hereby states his/her/their OBJECTION TO:

CITY OF DETROIT'S PLAN OF ADJUSTMENT- THIRD AMENDMENT (4/25/2014)

REDLINED VERSION for the following reasons.

1.      **I / we am/are interested in the Bankruptcy of the City of Detroit because I am a recent Retiree from the Detroit Department of Human Services; now closed by City Administration. It was supported 100% with federal funds.  *I retired in February, 2012. My mother, as a single parent, did not sacrifice and struggle to send me to college for me to be poor!**

2.      **I / we object to the above filing because: I did not retire to receive any projected reductions in a Detroit pension. I did not get an education at the Master's degree level to now potentially live at a federal poverty guideline level. These levels are continually referenced that a Retiree will receive a "pension", when one reaches the poverty level.  I did not retire with a health benefit package provision available, to no longer have benefits provided. The outcome of the bankruptcy process regarding my pension will greatly impact my ability to live independently as a single person!**

3.      **I have/ have not attached additional sheets to explain and establish my position.**

I hereby certify that the statements made herein are true and correct under penalty of perjury and contempt of Court under the laws of the United States of America.
Wherefore I/ we request the Court will deny the relief sought in said filing.

Name: _Constance Mary (M). Phillips_
Signature: _____
Address:_____2720 E. Lafayette #103_
_Detroit, Michigan 48207_
Email: __cphillips25000@comcast.net_

Dated: 4/28/2014

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

-----------------------------------------------------x
:
In re                          :         Chapter 9
:
CITY OF DETROIT, MICHIGAN,    :         Case No. 13-53846
:
            Debtor.      :         Hon. Steven W. Rhodes
:
:
-----------------------------------------------------x

## NOTICE OF FILING OF REDLINED VERSIONS
## OF (A) THIRD AMENDED PLAN FOR THE ADJUSTMENT
## OF DEBTS OF THE CITY OF DETROIT AND (B) THIRD AMENDED
## DISCLOSURE STATEMENT WITH RESPECT TO THIRD AMENDED
## PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT

### PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      On April 16, 2014, the City of Detroit (the "City"), filed (a) the
Second Amended Plan for the Adjustment of Debts of the City of Detroit (Docket
No. 4140) (the "Second Amended Plan") and (b) the Second Amended Disclosure
Statement with Respect to Second Amended Plan for the Adjustment of Debts of
the City of Detroit (Docket No. 4141) (the "Second Amended Disclosure
Statement").

2.      Contemporaneously herewith, the City has filed (a) the Third
Amended Plan for the Adjustment of Debts of the City of Detroit (the "Third



Amended Plan") and (b) the Third Amended Disclosure Statement with Respect to Third Amended Plan for the Adjustment of Debts of the City of Detroit (the "Third Amended Disclosure Statement").

3.     Attached hereto as Exhibit A is a redline of the Second Amended Plan against the Third Amended Plan. Attached hereto as Exhibit B is a redline showing the changes that were made to the exhibits that were filed with the Second Amended Plan. A redline of the Interest Rate Reset Chart (Exhibit I.A.161 to the Second Amended Plan; Exhibit I.A.160 to the Third Amended Plan) is not included in Exhibit B attached hereto. Parties are encouraged to review the amended Interest Rate Reset Chart attached to the Third Amended Plan as Exhibit I.A.160.

4.     Attached hereto as Exhibit C is a redline of the Second Amended Disclosure Statement against the Third Amended Disclosure Statement, including changes to all previously filed exhibits (except for Exhibits I (Ten-Year Plan of Adjustment Restructuring and Reinvestment Initiatives), J (Ten-Year Financial Projections), K (DWSD Current and Historical Financial Information) and L (DWSD Financial Projections) to the Second Amended Disclosure Statement).

-2-

13-53846-swr    Doc 4274    Filed 04/25/14    Entered 04/25/14 22:42:46    Page 2 of 393
13-53846-tjt    Doc 4308    Filed 04/28/14    Entered 04/29/14 14:49:09    Page 3 of 32

Dated: April 25, 2014                    Respectfully submitted,


                                         /s/ Heather Lennox
                                         David G. Heiman (OH 0038271)
                                         Heather Lennox (OH 0059649)
                                         JONES DAY
                                         North Point
                                         901 Lakeside Avenue
                                         Cleveland, Ohio  44114
                                         Telephone:  (216) 586-3939
                                         Facsimile:  (216) 579-0212
                                         dgheiman@jonesday.com
                                         hlennox@jonesday.com

                                         Bruce Bennett (CA 105430)
                                         JONES DAY
                                         555 South Flower Street
                                         Fiftieth Floor
                                         Los Angeles, California  90071
                                         Telephone:  (213) 243-2382
                                         Facsimile:  (213) 243-2539
                                         bbennett@jonesday.com

                                         Jonathan S. Green (MI P33140)
                                         Stephen S. LaPlante (MI P48063)
                                         MILLER, CANFIELD, PADDOCK AND
                                              STONE, P.L.C.
                                         150 West Jefferson
                                         Suite 2500
                                         Detroit, Michigan  48226
                                         Telephone:  (313) 963-6420
                                         Facsimile:  (313) 496-7500
                                         green@millercanfield.com
                                         laplante@millercanfield.com

                                         ATTORNEYS FOR THE CITY

# **EXHIBIT A**

.

THE BANKRUPTCY COURT HAS NOT APPROVED THE PROPOSED DISCLOSURE STATEMENT
TO ACCOMPANY THIS PLAN. THE DISTRIBUTION OF THIS PLAN AND THE DISCLOSURE
STATEMENT IS NOT INTENDED TO BE, AND SHOULD NOT BE CONSTRUED AS, A
SOLICITATION OF VOTES ON THIS PLAN. THE CITY OF DETROIT, MICHIGAN RESERVES
THE RIGHT TO MODIFY, AMEND, SUPPLEMENT, RESTATE OR WITHDRAW THIS PLAN, THE
DISCLOSURE STATEMENT AND ALL ANCILLARY DOCUMENTS AT ANY TIME. ~~AS A RESULT~~
~~OF ONGOING NEGOTIATIONS, CERTAIN INCOMPLETE OR MISSING INFORMATION WILL BE~~
~~PROVIDED AT OR BEFORE THE HEARING ON THE DISCLOSURE STATEMENT.~~

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

---------------------------------------------------------- x
                          :

In re                              :        Chapter 9
                          :

CITY OF DETROIT, MICHIGAN,      :       Case No. 13-53846
                          :

         Debtor.              :       Hon. Steven W. Rhodes
                          :
                          :
---------------------------------------------------------- x


## ~~SECOND~~ THIRD AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT
### (April ~~16~~ 25, 2014)

DAVID G. HEIMAN
HEATHER LENNOX
THOMAS A. WILSON
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com
tawilson@jonesday.com

BRUCE BENNETT
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539
bbennett@jonesday.com

JONATHAN S. GREEN
STEPHEN S. LaPLANTE
MILLER, CANFIELD,
    PADDOCK AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE DEBTOR

# TABLE OF CONTENTS

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME ....................................................................................... 1

    A.    Defined Terms. ........................................................................................... 1

    B.    Rules of Interpretation and Computation of Time. ................................... 23

        1.    Rules of Interpretation. ................................................................ 23

        2.    Computation of Time. .................................................................. 23

ARTICLE II CLASSIFICATION OF CLAIMS; CRAMDOWN; EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................................................... 23

    A.    Unclassified Claims. ................................................................................. 2324

        1.    Payment of Administrative Claims. ............................................. 2324

        2.    Bar Dates for Administrative Claims. .......................................... 24

    B.    Classified Claims. ..................................................................................... 2425

        1.    Designation of Classes. ................................................................ 2425

        2.    Subordination; Reservation of Rights to Reclassify Claims. ....... 2526

        3.    Treatment of Claims. ................................................................... 26

    C.    Confirmation Without Acceptance by All Impaired Classes ..................... 3536

    D.    Treatment of Executory Contracts and Unexpired Leases ....................... 3536

        1.    Assumption. ................................................................................. 3536

        2.    Assumption of Ancillary Agreements. ......................................... 3537

        3.    Approval of Assumptions and Assignments. ................................ 3537

        4.    Payments Related to the Assumption of Executory Contracts and Unexpired Leases ................................................................. 3637

        5.    Contracts and Leases Entered Into After the Petition Date .......... 3637

        6.    Rejection of Executory Contracts and Unexpired Leases. ........... 3638

        7.    Rejection Damages Bar Date. ...................................................... 3638

        8.    Preexisting Obligations to the City Under Rejected Executory Contracts and Unexpired Leases. ............................................... 3638

        9.    Insurance Policies. ....................................................................... 3738

ARTICLE III CONFIRMATION OF THE PLAN .............................................. 3739

    A.    Conditions Precedent to the Effective Date. ............................................ 3739

    B.    Waiver of Conditions to the Effective Date. ............................................ 3839

| | | | |
|---|---|---|---|
| C. | Effect of Nonoccurrence of Conditions to the Effective Date. | | 3839 |
| D. | Effect of Confirmation of the Plan. | | 3840 |
| | 1. | Dissolution of Retiree Committee. | 3840 |
| | 2. | Preservation of Rights of Action by the City. | 3840 |
| | 3. | Comprehensive Settlement of Claims and Controversies. | 3940 |
| | 4. | Discharge of Claims. | 3941 |
| | 5. | Injunction. | 3941 |
| | 6. | Exculpation. | 4042 |
| | 7. | Releases | 4042 |
| E. | No Diminution of State Power | | 4143 |
| F. | Effectiveness of the Plan. | | 4143 |
| G. | Binding Effect of Plan. | | 4143 |
| ARTICLE IV | MEANS FOR IMPLEMENTATION OF THE PLAN | | 4244 |
| A. | DWSD. | | 4244 |
| | 1. | Rates and Revenues. | 4244 |
| | 2. | DWSD CBAs. | 4244 |
| | 3. | The New DWSD Bonds and New Existing Rate DWSD Bonds. | 4244 |
| B. | The New B Notes. | | 4244 |
| C. | The Plan COP Settlement. | | 4244 |
| D. | The UTGO Settlement. | | 4244 |
| E. | The State Contribution Agreement. | | 4245 |
| | 1. | State Contribution. | 4345 |
| | 2. | Income Stabilization Payments. | 4345 |
| | 3. | Conditions to State's Participation. | 4345 |
| | 4. | Release of Claims Against the State and State Related Entities. | 4446 |
| F. | The DIA Settlement. | | 4446 |
| | 1. | Funding Contributions. | 4446 |
| | 2. | Transfer of DIA Assets. | 4446 |
| | 3. | Conditions to the Foundations' Participation. | 4446 |
| G. | Contingent Payment Rights | | 47 |
| GH. | Issuance of the New Securities. | | 4547 |

| | | |
|---|---|---|
| HI. | Cancellation of Existing Bonds and Bond Documents. | 4547 |
| IJ. | Release of Liens. | 4548 |
| JK. | Professional Fee Reserve | 4548 |
| KL. | Assumption of Indemnification Obligations. | 4548 |
| LM. | Incorporation of Retiree Health Care Settlement Agreement. | 4648 |
| MN. | Payment of Workers' Compensation Claims. | 4648 |
| O. | Payment of Certain Claims Relating to the Operation of City Motor Vehicles | 49 |
| P. | Payment of Tax Refund Claims. | 49 |
| Q. | Utility Deposits. | 49 |
| R. | Pass-Through Obligations | 49 |
| NS. | Exit Facility. | 4649 |
| OT. | Post-Effective Date Governance | 4649 |

**ARTICLE V PROVISIONS REGARDING DISTRIBUTIONS UNDER THE PLAN** 4650

| | | |
|---|---|---|
| A. | Appointment of Disbursing Agent. | 4650 |
| B. | Distributions on Account of Allowed Claims. | 4650 |
| C. | Certain Claims to Be Expunged. | 4750 |
| D. | Record Date for Distributions; Exception for Bond Claims. | 4750 |
| E. | Means of Cash Payments. | 4750 |
| F. | Selection of Distribution Dates for Allowed Claims. | 4751 |
| G. | Limitations on Amounts to Be Distributed to Holders of Allowed Claims Otherwise Insured. | 4751 |
| H. | City's Rights of Setoff Preserved. | 4851 |
| I. | Delivery of Distributions and Undeliverable or Unclaimed Distributions. | 4851 |
| | 1. Delivery of Distributions Generally. | 4851 |
| | 2. Delivery of Distributions on Account of Bond Claims. | 4851 |
| | 3. De Minimis Distributions / No Fractional New Securities. | 4852 |
| | 4. Undeliverable or Unclaimed Distributions. | 4852 |
| | 5. Time Bar to Cash Payment Rights. | 4952 |
| J. | Other Provisions Applicable to Distributions in All Classes | 4952 |
| | 1. No Postpetition Interest. | 4952 |
| | 2. Compliance with Tax Requirements. | 4952 |

|   | 3. | Allocation of Distributions. | 5053 |
|---|----|------------------------------|------|
|   | 4. | Surrender of Instruments. | 5053 |

**ARTICLE VI PROCEDURES FOR RESOLVING DISPUTED CLAIMS** ... 5054

| A. | | Treatment of Disputed Claims. | 5054 |
|----|----|------------------------------|------|
|    | 1. | General. | 5054 |
|    | 2. | ADR Procedures. | 5054 |
|    | 3. | Tort Claims. | 5154 |
| B. | | Disputed Claims Reserve. | 5155 |
| C. | | Objections to Claims. | 5255 |
|    | 1. | Authority to Prosecute, Settle and Compromise. | 5255 |
|    | 2. | Application of Bankruptcy Rules. | 5255 |
|    | 3. | Expungement or Adjustment of Claims Without Objection. | 5255 |
|    | 4. | Extension of Claims Objection Bar Date. | 5255 |
|    | 5. | Authority to Amend List of Creditors. | 5255 |

**ARTICLE VII RETENTION OF JURISDICTION** ... 5256

**ARTICLE VIII MISCELLANEOUS PROVISIONS** ... 5457

| A. | | Modification of the Plan. | 5457 |
|----|----|------------------------------|------|
| B. | | Revocation of the Plan. | 5457 |
| C. | | Disclosure of Amounts to Be Paid for Chapter 9 Case Services. | 5457 |
| D. | | Severability of Plan Provisions. | 5457 |
| E. | | Effectuating Documents and Transactions. | 5458 |
| F. | | Successors and Assigns. | 5558 |
| G. | | Plan Controls. | 5558 |
| H. | | Notice of the Effective Date. | 5558 |
| I. | | Governing Law. | 5558 |
| J. | | Request for Waiver of Automatic Stay of Confirmation Order. | 5558 |
| K. | | Term of Existing Injunctions and Stays. | 5558 |
| L. | | Service of Documents | 5559 |
|    | 1. | The City | 5659 |
|    | 2. | The Retiree Committee | 5659 |

# TABLE OF EXHIBITS

| Exhibit I.A.~~59~~60 | Schedule of COP Swap Agreements |
| Exhibit I.A.76 | Form of Detroit Police and Fire VEBA Trust Agreement |
| Exhibit I.A.~~80~~79 | Form of Detroit General VEBA Trust Agreement |
| Exhibit I.A.~~89~~88 | Principal Terms of DIA Settlement |
| Exhibit I.A.~~90~~89 | Form of DIA Settlement Documents |
| Exhibit I.A.~~106~~105 | Schedule of DWSD Bond Documents & Related DWSD Bonds |
| Exhibit I.A.112 | Schedule of DWSD Revolving Sewer Bond Documents & Related DWSD Revolving Sewer Bonds |
| Exhibit I.A.115 | Schedule of DWSD Revolving Water Bond Documents & Related DWSD Revolving Water Bonds |
| Exhibit I.A.129 | Principal Terms of Exit Facility |
| ~~Exhibit I.A.151~~ | ~~Form of GRS Trust Agreement~~ |
| Exhibit I.A.~~154~~153 | Schedule of HUD Installment Note Documents & Related HUD Installment Notes |
| Exhibit I.A.~~161~~160 | Interest Rate Reset Chart |
| Exhibit I.A.165 | Schedule of Limited Tax General Obligation Bond Documents & Related Limited Tax General Obligation Bonds |
| Exhibit I.A.~~174~~175 | Principal Terms of New B Notes |
| Exhibit I.A.~~175~~176 | Form of New B Notes Documents |
| ~~Exhibit I.A.176~~ | ~~Form of New DWSD Bond Documents~~ |
| Exhibit I.A.~~177~~178 | Principal Terms of New DWSD Bonds |
| ~~Exhibit I.A.178~~ | ~~Form of New Existing Rate DWSD Bond Documents~~ |
| Exhibit I.A.~~179~~180 | Principal Terms of New Existing Rate DWSD Bonds |
| Exhibit I.A.~~180~~181.a | Form of New GRS Active Pension Plan |
| Exhibit I.A.~~180~~181.b | Principal Terms of New GRS Active Pension Plan |
| Exhibit I.A.~~182~~183.a | Form of New PFRS Active Pension Plan |
| Exhibit I.A.~~182~~183.b | Principal Terms of New PFRS Active Pension Plan |
| ~~Exhibit I.A.201~~ | ~~Form of PFRS Trust Agreement~~ |

Exhibit I.A.~~204~~212     Form of Plan COP Settlement Documents

Exhibit I.A.~~211~~212     Prior GRS Pension Plan

Exhibit I.A.~~212~~213     Prior PFRS Pension Plan

Exhibit I.A.~~225~~228     Retiree Health Care Settlement Agreement

Exhibit I.A.~~231~~235     Schedule of Secured GO Bond Documents

Exhibit I.A.~~253~~259     State Contribution Agreement

Exhibit I.A.~~265~~270     Schedule of Unlimited Tax General Obligation Bond Documents & Related Unlimited Tax General Obligation Bonds

Exhibit I.A.~~270~~276     Principal Terms of UTGO Settlement

Exhibit II.B.3.q.ii.A Benefits     Schedule of Payments and Sources of Payments for Modified PFRS Pension

Exhibit II.B.3.r.ii.A     Schedule of Payments and Sources of Payments for Modified GRS Pension Benefits

Exhibit II.D.5     Schedule of Postpetition Collective Bargaining Agreements

Exhibit II.D.6     Executory Contracts and Unexpired Leases to Be Rejected

Exhibit III.D.2     Retained Causes of Action

PLAN OF ADJUSTMENT - OBJECTIONS, RE-THIRD AMENDMENT SUBMITTED TO COURT ON 4/25/2014

PREPARED BY CONSTANCE M. PHILLIPS, CITY OF DETROIT RETIREE - 2/2012 - GENERAL MANAGER

THIS SUBMISSION IS MY SECOND SUBMISSION REGARDING AN OBJECTION FOR THE DETROIT PLAN OF ADJUSTMENT.

FIRST AND FOREMOST, WHAT IS THE REASON FOR THE MULTIPLE AMENDMENTS TO BOTH OF THE KEY BANKRUPTCY DOCUMENTS: DETROIT's PLAN OF ADJUSTMENT AND THE DISCLOSURE STATEMENT. AS OF 4/25/2014, THERE HAVE BEEN THREE AMENDMENTS FOR EACH DOCUMENT WHICH WERE ORIGINALLY FILED ON 2/21/2014. IF I DID NOT POSSESS A COLLEGE EDUCATION, I COULD NOT BEGIN TO COMPREHEND THE COMPONENTS OF VAST INFORMATION.

WHEN, IF EVER WILL THERE BE AN INCLUSIONARY COMPONENT IDENTIFYING THAT THE CONSTITUTION FOR THE STATE OF MICHIGAN HAS A PROVISION TO PROVIDE PENSIONS. IF LOCAL MUNICIPALITIES CAN NO LONGER PROVIDE THIS EARNED BENEFIT FOR LOCAL MUNICIPAL RETIREES.

A COPY IS GIVEN OF MY NARRATIVE REMARKS SUBMITTED FOR THE FIRST PLAN OF ADJUSTMENT (2/21/2014 FILING DATE. COPIES OF THE REFERENCED PAGES ARE PURPOSELY NOT INCLUDED WITH THIS DOCUMENT.

HOW CAN THE COURT CONTINUALLY ALLOW THE REPEATED AMENDMENTS IN A CIRCUMSTANCE OF DIRE FINANCIAL NEED!? LEGAL FEEES ARE CONTINUALLY MOUNTING WITH REPEATED AMENDMENTS! WHERE IS EVIDENCE OF "LEGAL EXPERTISE" TO ADDRESS THIS BANKRUPTCY CIRCUMSTANCE!?. THESE AMENDMENT RE-SUBMISSIONS ARE COSTING THE CITY OF DETROIT A SMALL FORTUNE! THE LEGAL TEAMS ARE VERY EXPENSIVE! WHEN WILL THERE BE AN END TO THE AMENDMENT PROCESS IN ORDER FOR PERSONS TO HAVE ONE OR TWO DOCUMENTS TO CONSIDER FOR THE "SUPPOSED" VOTING PROCESS ON THE BANKRUPTCY PLAN?

PG. #/393        PLAN OF ADJUSTMENT CONTENT REFERENCE

PG. 22/393        119 - Eligible Pensioner
One is eligible to receive an Income Stabilization Payment if one's income is 140% of the
Federal Poverty Level in 2013. Pensioners did not work to be at the poverty level after 2014 until
their deaths.

PLAN OF ADJUSTMENT - OBJECTIONS TO THIRD AMENDMENT SUBMITTED TO COURT ON 4/25/2014

PREPARED BY CONSTANCE M. PHILLIPS, CITY OF DETROIT RETIREE - 2/2012 - GENERAL MANAGER

PG. 23/393
132 – Federal Poverty Level
Continual references to the Federal Poverty Level(s) are made as though Retirees agreed to this degraded fiscal life status. This is unacceptable.

PG. 24/393
148- GRS Adjusted Pension Amount
One receiving a pension has either a 4.5% reduction in benefits if the individual votes no on the plan or a 27%% reduction in benefits if an individual votes yes on the plan.
WHY, NOW, MUST ANNUITY PAYMENTS BE RECOUPED? THIS ENDEAVOR PLACES ONE FURTHER IN A FISCAL DEFICIT CIRCUMSTANCE.

PG. 38/393
Payment of Administrative Claims
The general category is explained but notes several disallowances. Will this claim category actually get paid?

PG. 46/393
State Contribution Agreement
The State of Michigan will contribute to the payment of benefits to Holders of Pension Claims only if the plan is accepted by Classes 10 and 11 of claim categories. Still there remains the circumstance of no other options truly available to Retirees. The plan is obviously to move ahead with or without vote acceptances.

PG. 47/393
Contributions to GRS
The commitment from DWSD is noted in the amount of $428.5 million, as well as the State Contribution and DIA proceeds through 2023. Once again, less than a 10 year timeline to receive pension benefits is identified! A time limit for a pension was not agreed to by Pensioners when individual persons retired.

PLAN OF ADJUSTMENT - OBJECTIONS RE:THIRD AMENDMENT SUBMITTED TO COURT ON 4/25/2014

PREPARED BY CONSTANCE M. PHILLIPS, CITY OF DETROIT RETIREE - 2/2012 - GENERAL MANAGER

PG. 48/393

ASF Distribution Recipients

Now the Emergency Manager, et al want to recoup funds already distributed via the Annuity Savings Fund. In my case, the majority of Annuity funds distributed to me were accessed due to financial hardships: an extensive City of Detroit lay-off and a sustained physical injury which had some life repercussions. To repay those funds which were needed to survive will be an unspeakable hardship.

ASF Distribution Recipients ( Continued)
WHY NOT COLLECT SOME OF THE MONEY OWED BY THE LOCAL HOTELS AND OTHER BUSINESSES IN ADDITION TO THE STATE OF MICHIGAN THAT SHOULD BE PAID TO THE CITY OF DETROIT TO OFFSET DEBTS.
WHY MUST IT APPEAR THAT MANY COSTS IN THE PLAN MUST BE PAID ON THE BACKS OF PENSIONERS/RETIREES?

PG. 51/393

Confirmation Without Acceptance by All Impaired Classes
The acceptance "appears" to be a forced circumstance. It will occur with or without "votes" of acceptance.

117.  "DWSD Series" means an individual issue of DWSD Revolving Bonds having the same lien priority, issue date and series designation.

118.  "Effective Date" means the Business Day, as determined by the City, on which each applicable condition contained in Section III.A has been satisfied or waived.

119.  "Eligible Pensioner" means a Holder of a Pension Claim who is eligible to receive an Income Stabilization Payment because such Holder (a) is, as of the Effective Date, at least 60 years of age or is a minor child receiving survivor benefits from GRS or PFRS and (b) has an aggregate annual household income equal to or less than 140% of the Federal Poverty Level in 2013 (as determined by reference to their (or in the case of minor children, their legal guardian's) 2013 income tax returns or equivalent documentation); provided, that no new persons will be eligible to receive Income Stabilization Payments at any time in the future, and any minor child receiving survivor benefits shall cease to be an Eligible Pensioner after they turn 18 years of age.

120.  "Emergency Manager" means Kevyn D. Orr, in his capacity as emergency manager for the City serving in accordance with PA 436 or any successor emergency manager.

121.  "Employee Health and Life Insurance Benefit Plan" means the Employee Health and Life Insurance Benefit Plan, a welfare benefit plan sponsored and administered by the City, which provides health, dental, vision care and life insurance benefits to (a) all officers and employees of the City who were employed on the day preceding the effective date of the benefit plan, and who continued to be employed by the City on and after the Effective Date and (b) substantially all retired officers and employees of the City.

122.  "Employees Death Benefit Board of Trustees" means the governing board of the City of Detroit Employee Health and Life Insurance Benefit Plan, which operates and administers the Employees Death Benefit Plan.

123.  "Employees Death Benefit Plan" means the City of Detroit Employee Death Benefit Plan, a pre-funded defined benefit plan and trust administered by the Employees Death Benefit Board of Trustees that provides supplemental death benefits to active and retired officers and employees of the City.

124.  "Entity" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

125.  "Estimated Future Liability" means the Income Stabilization Payments anticipated to be made from GRS or PFRS, as applicable, in the future in order for the respective Retirement System to fulfill the obligation to make Income Stabilization Payments, as determined by the respective Retirement System's ~~independent investment managers~~board of trustees in the year 2022, provided that the State has not issued a certificate of default under the State Contribution Agreement with respect to the Retirement System at any time prior to 2022.

126.  "Excess Assets" means the amount by which, if at all, the Income Stabilization Fund of either GRS or PFRS is credited with assets in excess of its Estimated Future Liability.

127.  "Executory Contract" means a contract to which the City is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

128.  "Exhibits" means, collectively, the documents listed on the "Table of Exhibits" included herein, all of which will be made available on the Document Website once they are Filed. The City reserves the right, in accordance with the terms hereof, to modify, amend, supplement, restate or withdraw any of the Exhibits after they are Filed and shall promptly make such changes available on the Document Website. For the avoidance of doubt, Exhibits I.A.~~90~~89 and I.A.129 will be Filed only if the transactions related to and/or underlying such Exhibits are to be consummated by the City.

129. "Exit Facility" means a credit facility that will be entered into by the City, the Exit Facility Agent and the other financial institutions party thereto on the Effective Date on substantially the terms set forth on Exhibit I.A.129.

130. "Exit Facility Agent" means the agent under the Exit Facility.

131. "Face Amount" means either (a) the full stated amount claimed by the holder of such Claim in any proof of Claim Filed by the Bar Date or otherwise deemed timely Filed under applicable law, if the proof of Claim specifies only a liquidated amount; (b) if no proof of Claim is Filed by the Bar Date or otherwise deemed timely Filed under applicable law, the full amount of the Claim listed on the List of Creditors, provided that such amount is not listed as disputed, contingent or unliquidated; or (c) the amount of the Claim (i) acknowledged by the City in any objection Filed to such Claim, (ii) estimated by the Bankruptcy Court for such purpose pursuant to section 502(c) of the Bankruptcy Code, or (iii) proposed by City, if (A) no proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law and such amount is not listed in the List of Creditors or is listed in List of Creditors as disputed, contingent or unliquidated or (B) the proof of Claim specifies an unliquidated amount (in whole or in part).

132. "Federal Poverty Level" means the poverty guidelines issued each year in the *Federal Register* by the United States Department of Health and Human Services.

133. "Fee Examiner" means Robert M. Fishman, in his capacity as the fee examiner appointed pursuant to the Fee Examiner Order.

134. "Fee Examiner Order" means the Order Appointing Fee Examiner (Docket No. 383), entered by the Bankruptcy Court on the docket of the Chapter 9 Case on August 19, 2013, as it may have been amended, supplemented or otherwise modified.

135. "Fee Examiner Parties" means, collectively, (a) the Fee Examiner and (b) all counsel and other professionals advising the Fee Examiner whose fees and expenses are subject to the Fee Review Order.

136. "Fee Review Order" means the Fee Review Order (Docket No. 810), entered by the Bankruptcy Court on the docket of the Chapter 9 Case on September 11, 2013, as it may have been amended, supplemented or otherwise modified.

137. "Fee Review Professionals" means, collectively, (a) those professionals retained by the City and the Retiree Committee to render services in connection with the Chapter 9 Case who seek payment of compensation and reimbursement of expenses from the City for postpetition services pursuant to and in accordance with the Fee Review Order and (b) the Fee Examiner Parties. For the avoidance of doubt, any professionals retained by any official committee appointed in the Chapter 9 Case other than the Retiree Committee are not Fee Review Professionals.

138. "Fee Review Professional Fees" means the fees and expenses of the Fee Review Professionals incurred during the period beginning on the Petition Date and ending on the Effective Date.

139. "File," "Filed," or "Filing" means file, filed or filing with the Bankruptcy Court or the Claims and Balloting Agent, as applicable, in the Chapter 9 Case.

140. "Final Order" means an order or judgment of the Bankruptcy Court, or any other court of competent jurisdiction, as entered on the docket in the Chapter 9 Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move, under Bankruptcy Rule 9023 and/or Rule 59 of the Federal Rules of Civil Procedure, for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has

been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed shall not prevent such order from being a Final Order.

141. "Fiscal Year" means a fiscal year for the City, commencing on July 1 of a year and ending on June 30 of the following year. A Fiscal Year is identified by the calendar year in which the Fiscal Year ends, such that, for example, the 2015 Fiscal Year is the Fiscal Year commencing on July 1, 2014, and ending on June 30, 2015.

142. "Foundations" means those entities identified on Exhibit B to the summary of the material terms of the DIA Settlement, which is attached hereto as Exhibit I.A.8988, solely in their capacity as participants in the DIA Settlement.

143. "General Fund" means the primary governmental fund and the chief operating fund of the City, which fund accounts for several of the City's primary services, including police, fire, public works, community and youth services.

144. "General Obligation Bond Claims" means, collectively, the Limited Tax General Obligation Bond Claims and the Unlimited Tax General Obligation Bond Claims.

145. "General Obligation Bond Documents" means, collectively, the Limited Tax General Obligation Bond Documents and the Unlimited Tax General Obligation Bond Documents.

146. "General Obligation Bonds" means, collectively, the Limited Tax General Obligation Bonds and the Unlimited Tax General Obligation Bonds.

147. "GRS" means the General Retirement System for the City of Detroit.

148. "GRS Adjusted Pension Amount" means, with respect to a Holder of a GRS Pension Claim, the Current Accrued Annual Pension payable to such Holder as adjusted in accordance with the following formulas:

(a) If Classes 10 and 11 vote to accept the Plan, and funding is received from the DIA Settlement and the State Contribution Agreement: for a Holder of a GRS Pension Claim who is (i) either retired and receiving a monthly pension or a surviving beneficiary or (ii) an Active Employee or a terminated employee with a right to receive a GRS pension in the future, the elimination of a right to supplemental pension benefits to be paid after July 1, 2014 in respect of cost of living adjustments, plus an additional 4.504.5% reduction in the Current Accrued Annual Pension amount, plus the ASF Recoupment; and

(b) If Classes 10 and 11 do not vote to accept the Plan and/or funding is not received from the DIA Settlement and the State Contribution Agreement: for a Holder of a GRS Pension Claim who is (i) either retired and receiving a monthly pension or a surviving beneficiary or (ii) an Active Employee or a terminated employee with a right to receive a GRS pension in the future, the elimination of a right to supplemental pension benefits to be paid after July 1, 2014 in respect of cost of living adjustments, plus an additional 2927% reduction in the Current Accrued Annual Pension amount, plus the ASF Recoupment; and provided further, that with respect to Holders who are Active Employees, in the event the unfunded liabilities of the GRS for the plan year ending June 30, 2014 are greater than the unfunded liabilities of the GRS as of June 30, 2013, the monthly pension amount shall be decreased to the extent necessary to ensure that there is no change in the amount of the underfunding between Fiscal Years 2013 and 2014.

A.     **Unclassified Claims.**

      1.     **Payment of Administrative Claims.**

            a.     **Administrative Claims in General.**

                    Except as specified in this Section II.A.1, and subject to the bar date provisions herein, unless otherwise agreed by the Holder of an Administrative Claim and the City, or ordered by the Bankruptcy Court, each Holder of an Allowed Administrative Claim will receive, in full satisfaction of such Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim either: (1) on the Effective Date or as soon as reasonably practicable thereafter; or (2) if the Administrative Claim is not Allowed as of the Effective Date, 30 days after the date on which such Administrative Claim becomes an Allowed Claim. No Claim of any official or unofficial creditors' committee (other than the Retiree Committee) or any member thereof for professionals' fees or other costs and expenses incurred by such creditors' committee or by a member of such creditors' committee shall constitute an Allowed Administrative Claim.

            b.     **Claims Under the Postpetition Financing Agreement.**

                    Unless otherwise agreed by Barclays Capital, Inc. pursuant to the Postpetition Financing Agreement, on or before the Effective Date, Postpetition Purchaser Claims that are Allowed Administrative Claims will be paid in Cash equal to the amount of those Allowed Administrative Claims.

      2.     **Bar Dates for Administrative Claims.**

            a.     **General Bar Date Provisions**

                    Except as otherwise provided in Section II.A.2.b or in a Bar Date Order or other order of the Bankruptcy Court, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the City pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than 30 days after the Effective Date. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date will be forever barred from asserting such Administrative Claims against the City or its property, and such Administrative Claims will be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the City and the requesting party by the later of (i) 150 days after the Effective Date, (ii) 60 days after the Filing of the applicable request for payment of Administrative Claims or (iii) such other period of limitation as may be specifically fixed by a Final Order for objecting to such Administrative Claims.

            b.     **Claims Under the Postpetition Financing Agreement.**

                    Holders of Administrative Claims that are Postpetition Purchaser Claims will not be required to File or serve any request for payment or application for allowance of such Claims. Such Administrative Claims will be satisfied pursuant to Section II.A.1.b.

            c.     **No Modification of Bar Date Order.**

                    The Plan does not modify any other Bar Date Order, including Bar Dates for Claims entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code.

### D. Contingent Payment Rights.

The City will issue the DWSD CVRs to the Restoration Trust for the benefit of Holders of Pension Claims, as described in Section IV.G.

### ~~D~~E. Accrual of Future Benefits.

Each Holder of a PFRS Pension Claim who is an Active Employee shall receive, in addition to his or her PFRS Adjusted Pension Amount, as may be modified herein, such additional pension benefit for service on or after July 1, 2014 consistent with the terms and conditions of the New PFRS Active Pension Plan Formula and the New PFRS Active Pension Plan.

### ~~E~~F. Governance.

~~The composition of the board of trustees of the PFRS and the manner in which it is operated and administered shall be consistent with the terms of the PFRS Trust Agreement.~~

PFRS shall establish an Investment Committee that shall remain in place at all times during the 20-year period following the disbursement of the State Contribution. The Investment Committee shall consist of five independent members and two or more non-independent members, which non-independent members may include employees of the City or members or retirees of PFRS, provided that at all times during the 20-year period following disbursement of the State Contribution the independent members shall have at least 70% of the voting power. Each independent Investment Committee member shall possess, by reason of training or experience or both, a minimum level of expertise in managing or advising pension systems, all as agreed to by the City, the State and PFRS, after consultation with the Foundations. Beginning with the date upon which the State Contribution is disbursed and continuing throughout the following 20-year period, all assets of PFRS shall be invested in accordance with the recommendations of the Investment Committee.

### ~~F~~G. No Changes in Terms for Ten Years.

Except as may be required to maintain the tax qualified status of the PFRS, the City, the trustees of the PFRS and all other persons or entities shall be enjoined from and against the subsequent amendment of the terms and conditions, and rules of operation, of the PFRS, or any successor plan or trust, that governs the calculation of pension benefits (including the PFRS Adjusted Pension Amount, accrual of additional benefits, the DIA Proceeds Default Amount, the Prior PFRS Pension Plan, the PFRS Restoration Payment, the New PFRS Active Pension Plan Formula and the terms of the New PFRS Active Pension Plan) or against any action that governs the selection of the investment return assumption described in Section II.B.3.q.ii.B, the contribution to the PFRS or the calculation or amount of PFRS pension benefits for the period ending June 30, 2023, notwithstanding whether that subsequent amendment or act is created or undertaken by contract, agreement (including collective bargaining agreement), statute, rule, regulation, ordinance, charter, resolution or otherwise by operation of law.

### ~~G~~H. State Contribution Agreement.

The State Contribution Agreement, the effectiveness of which is contingent upon the acceptance of the Plan by Classes 10 and 11, shall include the following principal terms: (1) the State, or the State's authorized agent, will distribute the State Contribution for the benefit of Holders of Pension Claims; and (2) the Plan shall provide for the release of the State and the State Related Entities by each holder of a Pension Claim from all Liabilities arising from or related to the City, the Chapter 9 Case, the Plan, all Exhibits, the Disclosure Statement, PA 436 and its predecessor or replacement statutes, and Article IX, Section 24 of the Michigan Constitution, as more particularly described in the State Contribution Agreement and as set forth at Section III.D.7.b.

**r.** **Class 11 – GRS Pension Claims.**

    **i.** **Allowance.**

        The GRS Pension Claims shall be allowed in an aggregate amount equal to the sum of approximately $[    ]1,879,000,000.

    **ii.** **Treatment.**

        **A.** **Contributions to GRS.**

        During the Fiscal Years from the Effective Date through Fiscal Year 2023, annual contributions shall be made to fund benefits accrued under the Prior GRS Pension Plan only in the amounts identified on Exhibit II.B.3.r.ii.A. The exclusive sources for such contributions shall be accelerated pension-related, administrative and restructuring payments received from the DWSD equal to approximately $[    ]428.5 million, a portion of the State Contribution and certain DIA Proceeds. After June 30, 2023, (1) certain DIA Proceeds shall be contributed to the GRS and (2) the City will contribute such additional funds as are necessary to pay each Holder of a GRS Pension Claim his or her GRS Adjusted Pension Amount in accordance with and as modified by the terms and conditions contained in the Plan and the Prior GRS Pension Plan. Nothing in this Plan prevents any non-City third party from making additional contributions to or for the benefit of GRS if such party chooses to do so.

        **B.** **Investment Return Assumption**

        During the period that ends on June 30, 2023, the board of trustees of the GRS, or the trustees of any successor trust or pension plan, shall adopt and maintain an investment return assumption and discount rate for purposes of determining the assets and liabilities of the GRS that shall not be higher than 6.75%.

        **C.** **Modification of Benefits for GRS Participants.**

        During the period that ends no earlier than June 30, 2023, the pension benefits payable to each Holder of a GRS Pension Claim shall be equal to the GRS Adjusted Pension Amount for such Holder, provided that such GRS Adjusted Pension Amount shall be (1) automatically reduced by the DIA Proceeds Default Amount in the event of a DIA Proceeds Payment Default and (2) increased by any GRS Restoration Payment.

        Restoration of all or a portion of the modified pensions will be provided in accordance with a variable annuity restoration program that will be in place for approximately 30 years, until 2043. The GRS will establish a restoration fund reserve account within the pension system. Each year, the GRS actuary will perform a projection of the funded status of the GRS. If the GRS trustees have complied with certain requirements described in the State Contribution Agreement and if the actuarial projection for that year demonstrates that the funding ratio exceeds a certain restoration trigger and if there are sufficient assets in assigned to the restoration fund reserve account to make a fully fund the restoration payment for that year amount over the expected lifespans of the recipients, then a restoration payment may be made. If the projection indicates that the funding levels have fallen below a designated minimum funding percentage, then funds in assigned to the restoration fund reserve account will be transferred to the GRS asset pool and applied to improve the overall funding ratio. For the period ending through at least June 30, 2023, the restoration trigger percentage will be 75% based on the then market value of assets projected forward using an assumed 6.75% investment return and future benefit discount rate, and the designated minimum funding percentage will be 70% based on the then market value of assets projected forward using an assumed 6.75% investment return and future benefit discount rate. For purposes of calculating a GRS Restoration Payment, market value of assets shall not include any City contributions other than those listed on Exhibit II.B.3.r.ii.A or any State contributions if the GRS trustees fail to comply with the requirements described in the State Contribution Agreement. In the event that the Foundations and DIA Corp. accelerate all or a portion of their funding commitments described in Section IV.F.1 prior to June 30, 2023, the incremental portion of the acceleration will not count towards pension restoration.

### D.     Annuity Savings Fund Recoupment.

#### 1.     ASF Current Participants.

On or as soon as reasonably practicable after the Effective Date, the Annuity Savings Fund Excess Amount will be calculated for each ASF Current Participant and will be deducted from such participant's Annuity Savings Fund account and be used to fund the accrued pension benefits of all GRS participants; provided, however, that in no event shall the amount deducted from an ASF Current Participant's Annuity Savings Fund account exceed the ASF Recoupment Cap. In the event that the amount credited to an ASF Current Participant's Annuity Savings Fund account as of the Effective Date is less than such participant's Annuity Savings Fund Excess Amount, the ASF Current Participant will be treated as an ASF Distribution Recipient to the extent of the shortfall.

#### 2.     ASF Distribution Recipients.

~~On or as soon as reasonably practicable after the Effective Date, the~~ The Annuity Savings Fund Excess Amount will be calculated for each ASF Distribution Recipient, will then be converted into monthly annuity amounts based on each ASF Distribution Recipient's life expectancy and other factors and will be deducted from the ASF Distribution Recipient's monthly pension check; provided, however, that in no event shall the total amount deducted from an ASF Distribution Recipient's monthly pension checks exceed the ASF Recoupment Cap; and provided further that in no event shall an ASF/GRS Reduction exceed 20% of an ASF Distribution Recipient's Current Accrued Annual Pension amount.

#### E.     Contingent Payment Rights.

The City will issue the DWSD CVRs to the Restoration Trust for the benefit of Holders of Pension Claims, as described in Section IV.G.

#### ~~E~~F.     Accrual of Future Benefits.

Each Holder of a GRS Pension Claim who is an Active Employee shall receive, in addition to his or her GRS Adjusted Pension Amount, as may be modified herein, such additional pension benefit for service on or after July 1, 2014, consistent with the terms and conditions of the New GRS Active Pension Plan Formula and the New GRS Active Pension Plan.

#### ~~F~~G.     Governance.

~~The composition of the board of trustees of the GRS and the manner in which it is operated and administered shall be consistent with the terms of the GRS Trust Agreement, which shall reflect an agreement between GRS and the State that is acceptable to the City.~~

GRS shall establish an Investment Committee that shall remain in place at all times during the 20-year period following the disbursement of the State Contribution. The Investment Committee shall consist of five independent members and two non-independent members, which non-independent members may include employees of the City or members or retirees of GRS, provided that at all times during the 20-year period following disbursement of the State Contribution the independent members shall have at least 70% of the voting power. Each independent Investment Committee member shall possess, by reason of training or experience or both, a minimum level of expertise in managing or advising pension systems, all as agreed to by the City, the State and GRS, after consultation with the Foundations. Beginning with the date upon which the State Contribution is disbursed and continuing throughout the following 20-year period, all assets of GRS shall be invested in accordance with the recommendations of the Investment Committee.

w.    **Class 16 – Subordinated Claims.**

i.    **Treatment.**

On the Effective Date, all Subordinated Claims shall be disallowed, extinguished and discharged without Distribution under the Plan, and Holders of Subordinated Claims shall not receive or retain any property on account of such Claims. Pursuant to section 1126(g) of the Bankruptcy Code, Class 16 is deemed to have rejected the Plan and Holders of Subordinated Claims are not entitled to cast a Ballot in respect of such Claims.

## C.    Confirmation Without Acceptance by All Impaired Classes

The City requests Confirmation under section 1129(b) of the Bankruptcy Code in the event that any impaired Class does not accept or is deemed not to accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Plan shall constitute a motion for such relief.

## D.    Treatment of Executory Contracts and Unexpired Leases

### 1.    Assumption.

Except as otherwise provided in the Plan, in any contract, instrument, release or other agreement or document entered into in connection with the Plan or in a Final Order of the Bankruptcy Court, or as requested in any motion Filed by the City on or prior to the Effective Date, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the City will be deemed to assume all Executory Contracts and Unexpired Leases to which it is a party. Notwithstanding the foregoing, Retirement System Indemnity Obligations shall not be assumed under the Plan and shall be discharged.

### 2.    Assumption of Ancillary Agreements.

Each Executory Contract and Unexpired Lease assumed pursuant to Section II.D.1 will include any modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract or Unexpired Lease, unless any such modification, amendment, supplement, restatement or other agreement is rejected pursuant to Section II.D.6 or designated for rejection in accordance with Section II.D.3.

### 3.    Approval of Assumptions and Assignments.

The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumption of Executory Contracts and Unexpired Leases pursuant to Sections II.D.1 and II.D.2 (and any related assignment) as of the Effective Date, except for Executory Contracts or Unexpired Leases that (a) have been rejected pursuant to a Final Order of the Bankruptcy Court, (b) are subject to a pending motion for reconsideration or appeal of an order authorizing the rejection of such Executory Contract or Unexpired Lease, (c) are subject to a motion to reject such Executory Contract or Unexpired Lease Filed on or prior to the Effective Date, (d) are rejected pursuant to Section II.D.6 or (e) are designated for rejection in accordance with the last sentence of this paragraph. An order of the Bankruptcy Court (which may be the Confirmation Order) entered on or prior to the Confirmation Date will specify the procedures for providing notice to each party whose Executory Contract or Unexpired Lease is being assumed pursuant to the Plan of: (a) the Executory Contract or Unexpired Lease being assumed; (b) the Cure Amount Claim, if any, that the City believes it would be obligated to pay in connection with such assumption; (c) any assignment of an Executory Contract or Unexpired Lease; and (d) the procedures for such party to object to the assumption of the applicable Executory Contract or Unexpired Lease, the amount of the proposed Cure Amount Claim or any assignment of an Executory Contract or Unexpired Lease. If an objection to a proposed assumption, assumption and assignment or Cure Amount Claim is not resolved in favor of the City, the applicable Executory Contract or Unexpired Lease may be designated by the City for rejection, which shall be deemed effective as of the Effective Date.

FILED

2014 APR 1 P 2: 11

U.S. BANKRUPTCY COURT
E.D. MICHIGAN-DETROIT

In the matter of:

CITY OF DETROIT, MICHIGAN

_____Debtor____/

Case No. 13-53846-swr
Chapter 9
Hon. STEVEN W. RHODES

## OBJECTION TO CITY OF DETROIT'S PLAN OF ADJUSTMENT [DOCKET 2708]

FILED BY: _Constance M. Phillips – City of Detroit Retiree; former General Manager_

_____ hereby states his/her/their OBJECTION TO:

CITY OF DETROIT'S PLAN OF ADJUSTMENT

for the following reasons.

1. **I** / we **am/are interested in the Bankruptcy of the City of Detroit because I am a recent Retiree from the Detroit Department of Human Services; now closed by City Administration , that was supported 100% with federal funds. *I retired in February, 2012.My mother did not sacrifice and struggle to send me to college for me to be poor!**

2. **I** / we **object to the above filing because: I did not retire to receive a projected 34% reduction in a Detroit pension. I did not get an education at the Master's degree level to now potentially live at a federal poverty guideline level. I did not retire with a health benefit package provision available to no longer have benefits provided. I did not retire, in my opinion, to be held hostage, now, for a year with a bankruptcy process which may impact my ability to live independently as a single female!**

3. **I have**/ have not **attached additional sheets to explain and establish my position.**

I hereby certify that the statements made herein are true and correct under penalty of perjury and contempt of Court under the laws of the United States of America.
Wherefore I/ we request the Court will deny the relief sought in said filing.

Name: _Constance Mary (M). Phillips_
Signature:_Constance M. Phillips_
Address:_____2720 E. Lafayette #103_
_Detroit, Michigan 48207_
Email: __cphillips25000@comcast.net_

Dated: 3/31/2014

PLAN OF ADJUSTMENT -OBJECTIONS RE: CHAPTER 9 OF THE BANKRUPTCY CODE - DETROIT, MI.
PREPARED BY: CONSTANCE M. PHILLIPS , RETIREE AS OF 2/2012

(3/31/2014 - Pg. #1)

ARTICLE I. DEFINED TERMS, RULES, OF INTERPRETATION AND COMPUTATION OF TIME

PLAN OF ADJUSTMENT CONTENT REFERENCE

A. Defined Terms

1. 2005 COPS Agreement - Certificates of Participation - $640 million
2. 2006 COPS Agreement - Certificates of Participation - $ 148.5 million

Why go back approximately nine years to define terms? Was using the retiree systems' Certificates of Participation legal and/or allowable?

7. Adjusted Pension Amount

Who agreed to an adjusted pension amount for persons currently participating in either retirement system? What are the specific dollar amounts for these referenced "adjusted pension amounts for pensioners"?
Why is this group immediately identified with an adjustment? Why is this group affected?

A. Defined Terms

15. " Ballot"

If retirees do not vote to accept the Plan what happens? If others/ other entities vote to accept when retirees do not, what bearing does that action have for the affected/afflicted retirees?

A. Defined Terms

21. Bond Agent

Who are the current bond agents and what fee does this entity incur as a portion of the Bankruptcy process?

31. "CFSEM Supporting Organization"

Who are all the parties within the organization involved with the destiny of retirees as well as the DIA?
What are the final financial contributions to pensioners? This is referenced with very minimal detail!

PLAN OF ADJUSTMENT -OBJECTIONS RE: CHAPTER 9 OF THE BANKRUPTCY CODE - DETROIT, MI.
PREPARED BY: CONSTANCE M. PHILLIPS , RETIREE AS OF 2/2012                    (3/31/2014 - Pg. #2)

PG.11/120

## A. Defined Terms

### 36. Claims and Balloting Agent

Why was this business concern located in El Segundo, California chosen? Was there no such resource available in the State of Michigan? What bill is this company charging? Will it amount to the level of millions as applicable to the Jones Day legal firm?

### 48. " COP Service Contracts:

Was accessing the Certificates of Participation Service Contracts truly legal!? The use set a precedent leading to "supposed deficits": in GRS and PFRS funding?

## A. Defined Terms

### 56. " Creditor Representation"

The language for this section is originally somewhat confusing to conclude with " a person or committee of persons" appointed by the Emergency Manager. It appears that such a representative/representatives will be selected irrespective of votes by selected classes. Why is that an impression without clarity?

### 59."Current Accrued Annual Pension"

" The Cost of Living Allowance" (COLA) eliminations are other reductions in the pension allowance. Please note: Social Security recipients receive COLA no matter how minimal the monthly check amount that a recipient receives.

### 60. " Detroit VEBA - Voluntary Employees Beneficiary Association "

What parameters will exist for this association: function and time references? This references  types of insurance!

### 72. " Disbursing Agent"

Who is this agent and/or his company? What is the verified level of expertise?

### 81. " Document Website -  http:www.kccllc.net/Detroit

The Plan of Adjustment and The Disclosure Statement should be mailed to all pensioners as well as being available electronically.   There should not be assumptions of all parties having access to computers!

PG.15/120

A. Defined Terms

108. "DWSD Transaction "

The transfer of assets is implied. If the transaction does not occur what happens to pensions? An alternate plan is not identified. For consideration, it is a situation of either/or; how fair is this?

110. " Electing GRS Holder" means any Holder of a GRS Pension Claim who elects to participate in the Plan GRS Settlement on a timely-returned Ballot accepting the Plan.

An either/or circumstance seems apparent! One can accept The Plan thus implying agreement with all of its components. No other options seemto be identified!

PG. 16/20

113,114, 115 - Employees Death Benefit Plan Informational References

All references are made in all three areas to retired officers and employees of the City. Information does not clearly state that other "Retirees" are to be included in the provision of benefits.

122 " Fee Examiner"

What is the expertise of Mr. Fishman and his company which is based in Chicago, Illinois?

126. Fee Review Professionals"

A reference to a capitation amount for expenditure reimbursement would be helpful to address reducing costs for the Bankruptcy; but it is not identified.

PG. 17/20

131. " Foundation"

A generic reference is given and negates the involvement of the DIA Corporation.

136. " GLWA" - means the Great Lakes Water and Sewage Authority ,to be formed pursuant to a DWSD Transaction to conduct the operationss currently conducted by the DWSD as described in Section IV. A. 2.

The GLWA Authority formation has not been crystallized but payments to the pension funds hinge on the projected formation. Nominal information is available!

PG. 18/120

**A. Defined Terms**

**138. " GRS Adjusted Pension Amount means, with respect to a Holder of a GRS Pension Claim , the Current Accrued Annual Pension"**

A retired Holder is projected to be a recipient of a 34% reduction. This rate of reduction follows upon the heels of individual payments for health care for those persons who are under the age of 65.
Thus one is slated to receive 66% of a pension for 10 years!

**142. GRS Restoration Payment**

An approximate 10 year time line is once again referenced to the year 2023. The restoration rate takes the payments to pensioners to 80%. What happens to the remaining 20% to take one to the 100% level?

PG. 20/120

**175. "New - GLWA Revolving Bond Documents"**

The Transaction has crucial bearing on the establishment of the new Water Authority. The bonds will provide resources only if the Authority is formed. No other option is afforded under this plan at this point.

PG. 22/120

**193. " PFRS Adjusted Pension Amount"**

The PFRS is projected to get a 10% reduction in pension benefit amounts. Why is this group the only sector of retirees slated for this type of reduction?

PG. 24/120

**218. "Retiree Committee"**

" Retiree Committee" means the official committee of retired employees first appointed by the United States Trustee in the Chapter 9 Case on August 22, 2013 ( Docket No. 566 ) as such committee may be reconstituted.
*Why may this committee be reconstituted, i.e. reorganized as an entity working on behalf of Retirees? It is absolutely key to our well-being and should be retained at a minimum for five years until the components of bankruptcy are designed, developed, revised, and completed with full execution of the legal points as related to Retirees. The process thus far has been complex and needs to have a body that has been present from the onset.

PG.24/120

219. " Retiree Health Care Litigation" means the adversary proceeding captioned as Official Committee of Retirees of the City of Detroit, Michigan, et al. v. City of Detroit, Michigan, et al., Case No. 14-04015 (Bankr. E.D. Mich.), filed in the Chapter 9 Case on January 9, 2014.

*Information was initially secured and provided to Detroit Retirees about a potential health care provider option through Blue Cross Blue Shield. The negotiations are in process and not finalized but yet the service will only be available until December 2014. It is now 3/2014 . The communication pattern and progress on finalization is very poor and very slow.

PG.26/120

247. " State GRS Consideration" means an amount up to $ 175,000, 000 to be deposited by the State into the GRS in accordance with the Plan GRS Settlement and Section I1. B3 u. ii.1; provided that the amount of the State GRS  Consideration shall be reduced by certain amounts attributable to the payment of pension benefits owing to Holders of GRS Pension Claims with household income less than a threshold amount (a) tied to a percentage of federal poverty levels and (b) to be determined pursuant to further discussions between the City and the State.

*THIS REFERENCE TO A PENSION NOW LINKED TO FEDERAL POVERTY LEVELS IS IRREPREHENSIBLE! ALSO VAGUE DETERMINATION REFERENCES ARE MADE ABOUT FUTURE DISCUSSIONS THAT CAN HAVE A BEARING ON THE PENSION AMOUNTS! HOW ARE WE PENSIONERS TO VOTE ON SUCH AN ENDEAVOR TO ACCEPT THIS COMPONENT OF THE PLAN?*

248. " State PFRS Consideration" means an amount up to $ 175,000, 000 to be deposited by the State into the PFRS in accordance with the Plan PFRS Settlement and Section I1. B 3 T. ii.g; provided that the amount of the State PFRS Consideration shall be reduced by certain amounts attributable to the payment of pension benefits owing to Holders of GRS Pension Claims with household income less than a threshold amount (a) tied to a percentage of federal poverty levels and (b) to be determined pursuant to further discussions between the City and the State.

*IN THIS CIRCUMSTANCE PFRS AND GRS ARE BEING TREATED ALIKE AND TOTALLY UNFAIRLY! NONE OF US WORKED TO BE INCOME RECIPIENTS AT THE FEDERAL GOVERNMENT POVERTY LEVELS.*

PG. 27/120

262. " Voting Deadline:
The Voting Deadline should have been determined when the Plan of Adjustment was developed and included in the documents which were available on the Internet - ( Plan & Disclosure Statement)!

PGS. 29-30/120

**" B. Classified Claims - Unsecured Claims"**

Unsecured Claims ( 10) PFRS - Police and Fire Retirement System and (11) GRS - General Retirement Systems
Why are these Retiree Claims so very low on the classified list of 15  classes?  It appears that these two groups
are almost of no consequence; no regard for employees who completed tenures in the workforce for the City of Detroit!

PG. 31/120

**"A. Treatment if DWSD Transaction Consummated"**

The details of the/an actual transaction are needed thus current residents in addition to the Retirees can realize
the potential impacts, i.e. costs for water service provisions and projected contributions to the Retiree Pension
Systems.

PG. 35/120

**n. Class 4 HUD Installment Note Claims**

This information cross reference with Claims listing on pages 29-30. When does the City of Detroit through its
recently appointed Emergency Manager plan to collect from the downtown hotels on the monies owed? Perhaps,
some of these funds could assist with the Retiree Pension Payments. The tally due is noted.

PG. 37/120

**t. Class 10 - PFRS Claims**
**i. Allowance**
**ii. Treatment ( A-E)**

Several aspects as to how pension benefits for PFRS are addressed.  Interestingly, no federal poverty
level guidelines are noted here.

| | |
|---|---|
| Book Cadillac I. | $7,486,218.00 |
| Book Cadillac Note II. | $10,938,812.00 |
| Fort Shelby Note | $18,664,190.00 |
| Total | $37,089,220.00 |

PG. 38/120

**G. Plan Settlement**

This plan settlement allows for pension availability for 20 years with State support only if Classes
(10) and (11) accept the Plan for PFRS.  Pensioners could conceivably live longer than 20 years.

PLAN OF ADJUSTMENT - OBJECTIONS RE: CHAPTER 9 OF THE BANKRUPTCY CODE - DETROIT, MICHIGAN
PREPARED BY: CONSTANCE M. PHILLIPS, RETIREE AS OF2/2012

(3/31/2014 - Pg. #7)

PG. 38/120

## H. Establishment of VEBA

This entity to address life and death insurance benefits at the time of the plan is not formerly established. These key insurance benefits may be in jeopardy if the City is not responsible immediately at the the time of the Confirmation Hearing.

PG. 39/120

## ii. B. Investment Return Assumption

The timeline for GRS is once again June 30, 2023 about nine years from this point in time; prior to April 1, 2014. An approximate time of nine years is a shortfall as to longevity for pensioners!

## ii. G. Potential Transfer of DWSD-Related Pension Liabilities

The non-established Water Authority will handle the pension for DWSD employees. This process seems very tenable!

PG. 40/120

## 1. GRS Settlement

An opportunity to receive benefits for 20 years seems to be identified if Classes (10) and (11) accept the Plan. Any or all Retirees, irregardless of the GRS/ PFRS Pension System can live well beyond the 20 years noted in the documents for the Confirmation Order.

PG. 41/120

## C. Confirmation Without Acceptance By All Impaired Classes

"The City request Confirmation under section 1129(b) of the Bankruptcy Code in the event that any impaired Class does not accept or is deemed not to accept the Plan pursuant to section 1126 of Bankruptcy Code. The Plan shall constitute a motion for such relief. "
**Confirmation as noted makes the ballot for approval process seem nullified!**

PG. 43/120

## ARTICLE III. - CONFIRMATION OF THE PLAN

A. Conditions Precedent to the Effective Date
3. " The Confirmation Order shall not be stayed in any respect".
WHEN IN THIS COUNTRY CAN ONE NOT APPEAL A LEGAL PROCESS?

**7. " If Classes 10 and 11 accept the Plan, all conditions to the effectiveness of (a) the Plan PFRS Settlement set forth in the Plan PFRS Settlement Documents and (b) the Plan GRS Settlement set forth in the Plan GRS Settlement Documents have been satisfied".**
If all parties do not agree the process of having votes on settlement documents will be void. What recourse will be undertaken to provide resolutions?

**All components of the Plan of Adjustment filed on February 21, 2014 were reviewed extensively.  The document further contained references to the Bond Issues voted upon by the City Council and the budgetary descriptions for bond costs and projections for several years.**

**Schedule for HUD Installment Notes**
Information is listed for the monies owed specifically for the Book Cadillac Hotel's two projects and the Fort Shelby Hotel's project.

**ADDITIONAL INFORMAITON:**
Additional information that is provided with this Objection  includes information about my specific Retirement Enrollment documents completed in 2012.
**(For the 4/28/2014 submission these references are not provided.)*

Also, copies of the pages from the Plan of Adjustment that are referenced in the Objection aare given for a quick review.
**(For this 4/28/2014 submission these pages from the 2/21/2014 Plan of Adjustment are not provided.)*

PG. 44-120

PG. 88/120