UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
(DETROIT)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | CASE NO.: 13-53846 |
| | ) | |
| | ) | CHAPTER 9 |
| Debtor. | ) | |
| | ) | Hon. Steven W. Rhodes |
| | ) | |

**THE DWSD BOND TRUSTEE'S RESPONSE TO THE MOTION
OF THE CITY OF DETROIT WATER AND SEWERAGE DEPARTMENT
FOR AN ORDER, PURSUANT TO 11 U.S.C. § 105, AMENDING AND
CLARIFYING THE FEE REVIEW ORDER DATED SEPTEMBER 11, 2013**

U.S. Bank National Association ("U.S. Bank"), in its capacity as trustee (the "Trustee") for those certain water and sewer bonds (the "DWSD Bonds")[1] issued by the City of Detroit (the "City") for the Detroit Water and Sewerage Department (the "DWSD") to finance and refinance improvements to the City's Water Supply System and the City's Sewage Disposal System (together, the "Systems"), hereby files its response to the *Motion of the City of Detroit Water and Sewerage Department for an Order, pursuant to 11 U.S.C. § 105, Amending and Clarifying the Fee Review Order Dated September 11, 2013* (Doc. 3929) (the "Fee Motion"). In support of the Trustee's Response, the Trustee states:

**SUMMARY OF RESPONSE**

The DWSD asserts that the Trustees fee are "substantially disproportionate to its need," alleging that the City's plan of adjustment proposes only "minimal impairment of the Bonds." (Fee Motion at ¶ 30). However, since June 14, 2013, the City has been proposing to impair

---

[1] As of the Petition Date (as defined below), the aggregate principal amount outstanding of the DWSD Bonds was over $5.7 billion. (*See* Claim Nos. 1339, 1340).

11789175

materially the DWSD Bonds. The original *Plan for the Adjustment of Debts of the City of Detroit (February 21, 2014)* (Doc. 2708) filed by the City proposed impairment of all of the 337 classes of the DWSD Bonds, comprising over $5.7 billion in principal outstanding. (Doc. 2708 at 22–23, Ex. I.A.150). The *Third Amended Plan for the Adjustment of Debts of the City of Detroit (April 25, 2014)* (Doc. 4271) still proposes impairment of 184 of the 337 classes of the DWSD Bonds, comprising an aggregate amount of $2.9 billion in principal outstanding. (Doc. 4271 at Ex. I.A.105). The Trustee's fees and expenses are both necessary and reasonable in light of the facts of this case. For the reasons set forth in more detail herein, the Trustee has been required to render ordinary and extraordinary services and incur concomitant expenses for the benefit of the DWSD Holders (defined below); and the Trustee is entitled to compensation and reimbursement of its expenses for performing its duties.

The DWSD further asserts that the Trustee's fees and expenses should be subjected to review by the Fee Examiner under the Fee Review Order. The Trustee is not currently subject to the Fee Review Order, nor should it be required to submit its fees and expenses to the Fee Examiner, inasmuch as the Trustee's fees and expenses are paid as expenses of administration and operation of the Systems from revenues of the Systems that are specifically dedicated for that purpose; they are not paid from the City's general fund like the other City Professionals who are subject to the Fee Review Order. Nevertheless, in an effort to avoid unnecessary distractions at this critical time in these proceedings, the Trustee will consent to prospective application of the Fee Review Order to the Trustee's professionals' fees and expenses as set forth below.

**RESPONSE**

**I. THE TRUSTEE IS ENTITLED TO COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PERFORMING ITS DUTIES UNDER THE DWSD BOND DOCUMENTS.**

1. The Trustee serves as trustee for the DWSD Bonds pursuant to the terms and conditions in the "DWSD Bond Documents,"[2] which include, among other documents: (i) Ordinance No. 30-02, as amended and restated by Ordinance No. 01-05, adopted by the City Council (the "Water Ordinance"), (ii) the Trust Indenture, dated as of February 1, 2013, executed by the City and the DWSD in favor of U.S. Bank, as trustee (the "Water Indenture"); (iii) Ordinance No. 27-86, as amended and supplemented by Ordinance No. 7-87, Ordinance No. 38-92, Ordinance No. 3-93, Ordinance No. 31-95, Ordinance No. 16-97, Ordinance No. 24-97, Ordinance No. 36-99 and Ordinance No. 18-01, and as further amended and restated by Ordinance No. 18-01, adopted by the City Council (the "Sewer Ordinance"); and (iv) the Trust Indenture, dated as of June 1, 2012, executed by the City and the DWSD in favor of U.S. Bank, as trustee (the "Sewer Indenture," and together with the Water Indenture, the "Indentures").

2. Pursuant to the DWSD Bond Documents, the Trustee is charged with assuring prompt compliance with all of the requirements, duties and obligations of the City and the DWSD with respect to the Systems[3] and the DWSD Bonds, and with performing such other duties as may be provided in a Supplemental Action.[4] (*See* Water Ordinance § 19; Sewer Ordinance § 20 (same))[5]. Among other powers granted to the Trustee, in any judicial proceeding to which the City or the DWSD are party and which, in the opinion of the Trustee and its

---

[2] Certain of the key DWSD Bond Documents are attached hereto as Exhibits B to E.
[3] Unless otherwise defined herein, capitalized terms in this letter are as defined in the DWSD Bond Documents.
[4] A "Supplemental Action" includes resolutions and ordinances of the City Council, sale orders, and other documents executed by the City's Finance Director pursuant to a City Council resolution or ordinance. (*See* Water Indenture, Art. I *Supplemental Action*; Sewer Indenture, Art. 1 *Supplemental Action*).
[5] While the Indentures are not identical, they are, in large part, materially the same.

3

counsel, has a substantial bearing on the interests of the holders of the DWSD Bonds (the "<u>DWSD Holders</u>"), the Trustee may intervene on behalf of the DWSD Holders. (Water Indenture § 6.03; Sewer Indenture § 6.03). The Trustee may exercise its powers and perform its duties by and through, *inter alia*, attorneys and employees, and the Trustee is "entitled to rely on advice of counsel and other professionals concerning all matters of such trusts, powers and duties." (Water Indenture § 6.01(a); Sewer Indenture § 6.01(a)(same)).

3. The Trustee is entitled to payment of reasonable fees for exercising its powers and performing its duties under the DWSD Bond Documents. *See, e.g.*, *In re W.T. Grant Co.*, 119 B.R. 898, 900 (S.D.N.Y. 1990) ("where [an indenture trustee's] fees are sought pursuant to a contractual right to payment, compensation is to be determined in accordance with the contractual provision."); *In re Worldwide Direct, Inc.*, 334 B.R. 112, 129 (Bankr. D. Del. 2005) ("If the indenture trustee fulfills its duties, it is entitled to reimbursement of its expenses, including attorney's fees, in accordance with the terms of the indenture."); *see also* Norton Creditors' Rights Handbook § 15:9, Payment of the Indenture Trustee (2012) ("An indenture trustee is contractually entitled to payment for performance of its duties regardless of whether its efforts conferred benefit on an estate of a debtor.").

4. The Trustee is also entitled to reimbursement of reasonable expenses incurred in connection with performing its duties and exercising its powers; this includes reimbursement of all advances, counsel fees, and other expenses reasonably made or incurred by the Trustee.

5. Specifically, the Indentures provide:

> The Trustee shall be entitled to payment and/or reimbursement for reasonable fees for its ordinary services rendered hereunder and all advances, counsel fees and other ordinary expenses reasonably made or incurred by the Trustee in connection with such ordinary services. If it becomes necessary that the Trustee perform extraordinary services, it shall be entitled to reasonable extra compensation therefor, and to

4
11789175
13-53846-tjt    Doc 4323    Filed 04/30/14    Entered 04/30/14 17:23:04    Page 4 of 19

> reimbursement for reasonable extraordinary expenses in connection there with . . . .

(Water Indenture § 6.02; Sewer Indenture § 6.02 (same)).

6. The Trustee's ordinary and extraordinary fees and expenses, including the fees and expenses of its counsel and other professionals, are costs of administration of the Systems. The Systems have paid such fees and expenses from Revenues of the Systems deposited into the respective Operation and Maintenance Fund for each System, which are "used to pay the expenses of administration and operation of the System . . . ." (Water Ordinance, § 13(B); Sewer Ordinance, §13(B) (same); *see also* Water Indenture § 2.04(c) (same); Sewer Indenture, § 2.04(c) (same)).[6]

## II. THE TRUSTEE HAS BEEN REQUIRED TO RENDER ORDINARY AND EXTRAORDINARY SERVICES AND INCUR ORDINARY AND EXTRAORDINARY EXPENSES.

### A. The Trustee Has Been Actively Engaged Since the Emergency Manager's June 14 "Proposal To Creditors".

7. Prior to the City filing its chapter 9 petition on July 18, 2013 (the "Petition Date"), the Emergency Manager invited the Trustee and its counsel, along with numerous other creditors and their respective counsel, to attend a meeting in Detroit on June 14, 2013, at which the Emergency Manager presented his "Proposal to Creditors." Upon receiving that invitation, the Trustee engaged Waller Lansden Dortch & Davis, LLP ("Waller") and Bodman PLC ("Bodman") as its counsel to advise the Trustee regarding the performance of its duties under the DWSD Bond Documents, including, without limitation, in connection with the meeting and the anticipated proposal from the Emergency Manager.[7] The Trustee engaged Waller because of

---

[6] *See also* Fee Motion at ¶ 11 ("The fees and expenses of the Trustee and its retained professionals are paid by DWSD from revenues deposited in the water and sewer systems' respective operation and maintenance funds.").

[7] The Fee Motion asserts that "the Trustee employs in house counsel and has retained [Waller] and [Bodman] in connection with this Case." (Fee Motion at ¶ 10). The primary participant on behalf of the Trustee has been and

5

11789175
13-53846-tjt    Doc 4323    Filed 04/30/14    Entered 04/30/14 17:23:04    Page 5 of 19

Waller's relevant experience, including Waller's representation of the indenture trustee for the sewer warrants in the chapter 9 proceeding of Jefferson County, Alabama. Bodman was engaged because of its relevant experience in municipal finance in Michigan, including years of experience as the Trustee's counsel in connection with the issuance of the DWSD Bonds. Representatives of the Trustee, Waller, and Bodman attended the June 14 meeting in Detroit.

8. Following the June 14 meeting, the Emergency Manager invited the Trustee and its counsel to subsequent meetings in New York, New York ("NYC") to receive additional information from the Emergency Manager's legal and financial team regarding the Proposal to Creditors. Representatives of the Trustee and Waller attended the meetings in NYC.

9. Following the June 14 Meeting in Detroit and the Emergency Manager's presentation of his Proposal to Creditors, the Trustee and its counsel reviewed the proposal and the information presented by the Emergency Manager's team. The Trustee and it counsel also reviewed the DWSD Bond Documents, which total more than 40,000 pages, in an effort to better understand the proposal, its potential impact on the DWSD Bonds, and the DWSD Holders' rights under the DWSD Bond Documents. The Trustee and its counsel responded to numerous inquiries from the DWSD Holders and their counsel regarding the Emergency Manager's proposal, including how it would affect payments on the DWSD Bonds. The Trustee also provided formal written notices to the DWSD Holders regarding the Proposal to Creditors. The Trustee and its counsel also communicated with the Emergency Manager's team and with the monoline insurers (the "Bond Insurers") that insure certain of the DWSD Bonds and their respective counsel.

---

continues to be Lawrence Bell, who is not in-house counsel. Mr. Bell is a Vice President at U.S. Bank who has primary responsibility for administering the trusts at this time. Mr. Bell has over 40 years' experience in trust administration. No in-house counsel at U.S. Bank has billed time to this case.

10. In the Fall of 2013, the Trustee formed an *Ad Hoc Committee* of the DWSD Holders (the "Ad Hoc Committee") who own more than 20% of the principal amount of outstanding DWSD Bonds. Since its formation, the Trustee has consulted, and continues to consult, with the Ad Hoc Committee regarding potential treatment of the DWSD Bonds and the City's chapter 9 bankruptcy case (the "Bankruptcy Case").

11. The Trustee undertook all of the foregoing actions in an effort to protect the DWSD Holders' interests and to assure prompt compliance with the DWSD Bond Documents. The services rendered and expenses incurred in connection with the exercise of the Trustee's duties were both ordinary and extraordinary.

12. Since the Petition Date, the Trustee's activities on behalf of the DWSD Holders have increased and intensified in response to actions taken by the City and other parties in the Bankruptcy Case, which include actions taken to impair the DWSD Bonds and to "monetize" the Revenues securing the DWSD Bonds. The following is a general description of some of the activities of the Trustee, its counsel and certain other professionals engaged by the Trustee:

- Attend and participate in numerous court-ordered mediation sessions in Detroit and NYC regarding the City's proposed treatment of the DWSD Bonds.[8]

- Participate in informal meetings and discussions by and among the DWSD Holders, the Ad Hoc Committee, the City, and the Bond Insurers.

- As needed, attend pertinent hearings in the Bankruptcy Case (either in person or telephonically) relating to matters that might affect the DWSD Bonds and/or the DWSD Holders' interests, including, without limitation, the "First Day" hearings, the hearings regarding the scheduling order for the City's plan and the solicitation procedures order, and the hearing on the City's disclosure statement.

- At the City's request, provide extensive line-by-line comments to the disclosure statement and the forms of ballots proposed for the DWSD Holders.

---

[8] The Trustee, its counsel and its financial advisors will be attending further mediation sessions, as ordered by Judge Rosen, in Detroit on May 1 and May 2 in connection with the City's proposed treatment of the DWSD Bonds.

7

- As needed and appropriate, file pleadings in the Bankruptcy Case, including, for example, the limited objections filed in connection with the scheduling and solicitations orders, the objection to the City's disclosure statement, and the joinder in the motion to strike the "election waiver" with respect to the DWSD Bonds as contained in the City's current plan.

- Collaborate with counsel to the City, the Ad Hoc Committee, and the Insurers to develop solicitation procedures that provide sufficient and adequate opportunity for the DWSD Bondholders to receive the City's solicitation materials, analyze the plan, complete their ballots, and timely return the ballots as required.

- Coordinate and strategize with the City's counsel and its advisors, including its balloting agents, to ensure proper mechanics are in place to implement the City's proposed plan with respect to the DWSD Bonds if the plan is confirmed.

- Prepare and file Proofs of Claim with respect to the DWSD Bonds.

- Communicate regularly with the Ad Hoc Committee, the Bond Insurers, and their respective counsel regarding the Bankruptcy Case, including each iteration of the City's proposed plan and disclosure statement.

- Communicate with and respond to requests by the City's counsel regarding the Bankruptcy Case, including the City's proposed plan and disclosure statement, and other actions proposed by the City.

- Respond to inquiries from and provide notices to the DWSD Holders regarding developments in the Bankruptcy Case, including filings of the City's plan and disclosure statement, the Court's scheduling orders, the solicitation procedures order, and the voting dispute resolution procedures.[9]

- Participate in the plan-confirmation process, including: reviewing and analyzing the proposed plan, the projections and other information contained in the proposed plan or otherwise provided by the City in support of the plan; preparing and conducting formal discovery regarding the plan in preparation for the confirmation hearing scheduled in July 2014; and consulting with financial advisors and other consultants in connection with analyzing the plan and preparing for the confirmation hearing.

- Monitor the docket and review relevant pleadings that might affect the DWSD Bonds and/or the DWSD Holders' interests.

---

[9] The Trustee has received as many as ninety-four inquiries from the DWSD Holders in one week. The Trustee has had to spend considerable time responding to the inquiries, including responding to numerous requests from the DWSD Holders for the DWSD Bond Documents and (with the City's permission) establishing a publicly available website containing the DWSD Bond Documents.

8
11789175
13-53846-tjt    Doc 4323    Filed 04/30/14    Entered 04/30/14 17:23:04    Page 8 of 19

- Establish protocols in cooperation with the DWSD to improve revenue collection mechanics.

- Perform ongoing administrative tasks such as receipt of revenues, funding of accounts established under the Indentures, and payment of debt service during the Bankruptcy Case.

13. Since the Petition Date, the Trustee has engaged consultants to assist the Trustee in performing its duties to the DWSD Holders. The Trustee made the decision to engage consultants, in part, on advice of counsel and at the direction of the Ad Hoc Committee. Specifically, the Trustee has engaged GLC Advisors & Co. ("GLC") as a financial advisor. GLC served as financial advisor to the Ad Hoc Sewer Warrantholders in the Jefferson County, Alabama chapter 9 proceedings and has advised on over 190 restructuring transactions. GLC performs numerous services in its role as financial advisor, including assisting the Trustee in analyzing the City's proposed plan, the financial projections of the City, and the assumptions underlying those projections. GLC also has participated in most of the mediation sessions attended by the Trustee. In addition, the Trustee recently engaged John S. Young, Jr. ("Young") as a consultant due to his expertise in the management and operation of water and waste water systems. Young served as the receiver for the Jefferson County, Alabama sewer system and was a consultant and expert for the indenture trustee in the Jefferson County, Alabama proceedings.[10]

14. As with the Trustee's activities before the Petition Date, all of the Trustee's actions since the Petition Date have been to protect the DWSD Holders' interests and, within the context of the Bankruptcy Case, to assure prompt compliance with all of the requirements, duties and obligations of the City and the DWSD with respect to the Systems and the DWSD Bonds, as set forth in the DWSD Bond Documents.

---

[10] The Trustee reserves the right to engage additional consultants or testifying experts in connection with the hearing on confirmation of the City's plan.

9

15. Contrary to the DWSD's assertion that the Trustee's fees and expenses have been "exorbitant and the professionals hired by the Trustee . . . do not have any incentive to limit costs and expenses," (*see* Fee Motion at ¶ 28), the Trustee, its counsel, and its other professionals have made a concerted effort to be targeted and efficient in all that they do in connection with the Bankruptcy Case and to limit costs and expenses.[11] At each opportunity, the Trustee has coordinated efforts with the Ad Hoc Committee and the Bond Insurers, and limited pleadings to those which the Trustee believes were necessary to protect the interests of the DWSD Holders. In each pleading, the Trustee has attempted to be as narrow and limited as possible so as to protect only the DWSD Holders' interests and to go no further. In those instances where circumstances permitted, the Trustee attempted to resolve any issues with the City prior to filing any pleadings, and where that was not possible, prior to any hearing. The Trustee has been successful in resolving a number of issues by agreement with the City.

16. While the Trustee, its counsel and its other professionals have been targeted and efficient in their efforts, they have, nevertheless, been required to spend considerable time and effort on behalf of the DWSD Holders. This matter is complicated both factually and legally. The Systems serve more than 40% of the population of Detroit, generating almost $1 billion annually in Revenues. The Trustee has been permitted very little visibility into the operations and finances of the Systems, yet the City is proposing, among other impairments, to extract $428.5 million of the Net Revenues that serve as the DWSD Holders' collateral to fund part of

---

[11] The DWSD makes this assertion without basis in fact. Counsel for the Trustee has reason to believe this statement was made in the Fee Motion for the sole purpose of trying to disparage the Trustee in the court of public opinion in an effort to force the Trustee to compromise its position. The Trustee's counsel bases its belief on a statement made by the DWSD's counsel to the Trustee's counsel after the Fee Motion was filed, to wit: "I will just go in front of Judge Rhodes on this. And your client should know that if we go to Court, I intend to make this as ugly for U.S. Bank in the press as I can." (Telephone call with Richardo Kilpatrick (Apr. 18, 2014)). U.S. Bank's reputation is one of integrity, and its staff and advisors are keen to maintain this reputation. In its role as Trustee, U.S. Bank has focused on its duties to the DWSD Holders and will proceed accordingly. The DWSD's strategy to use this proceeding to try to embarrass the Trustee in an effort to force the Trustee to compromise the DWSD Holders' interests is an inappropriate litigation tactic.

its plan. The outstanding principal amount of the DWSD Bonds is approximately $5.7 billion. The DWSD Bonds are beneficially owned by hundreds (maybe thousands) of beneficial bondholders. Many of the beneficial bondholders do not have the resources to engage counsel and familiarize themselves with the issues present in this proceeding. Certain of the DWSD Holders are senior citizens who have contacted the Trustee to inquire about how their special revenue bonds may be impaired in a bankruptcy proceeding. The DWSD Bond Documents are voluminous and complicated. Finally, as the Court knows, there is little developed case law under chapter 9 of the Bankruptcy Code. There are a number of legal issues of first impression that may be addressed in connection with a contested confirmation hearing. Accordingly, the Trustee and the Trustee's professionals must spend considerable time and effort in protecting the DWSD Holders' interests.

17. The view expressed by the DWSD in the Fee Motion is that the City's plan proposes only "minimal impairment" of the DWSD Bonds, implying, therefore, that only minimal effort is required by the Trustee, its counsel, and its other professionals. That view, however, is not shared by the Ad Hoc Committee, the Bond Insurers, or the other DWSD Holders who have contacted the Trustee.[12] Their collective view is that the plan, as currently

---

[12] It is not clear whether that view is actually shared by the City or the City's bankruptcy professionals either. The Fee Motion was filed by the DWSD and the DWSD's separate counsel; not by the City or the City's bankruptcy counsel, Jones Day. Under the current iteration of the plan, the City has classified more than $2.3 billion of the DWSD Bonds as "impaired" and, therefore, entitled to vote on the plan.

In addition, that view is not shared by the rating agencies. Standard and Poor's recently lowered the DWSD Bonds to "junk" status on "vulnerability to default," stating, "the city's Plan of Adjustment indicates that the treatment of the water- and sewer-related debt classes could involve an exchange offer where investors receive less value than the promise of the original securities. We view such an exchange as tantamount to a default." *See* Standard and Poor's, *Detroit Water and Sewer Revenue Bond Ratings Lowered to "CCC" On Vulnerability to Default; Remains on Watch Negative* (Mar. 25, 2014), attached hereto as Exhibit F. Fitch Ratings came to a similar conclusion. *See Fitch Junks $4 Billion of Detroit Water, Sewer Revs*, THE BOND BUYER (Apr. 22, 2014), attached hereto as Exhibit G (noting that Fitch's concerns included "uncertainty remain[ing] around the city's attempt to impair water and sewer system bondholders through the bankruptcy process, including removal of the call provision and subordination of bondholder security interest, combined with threatened reduction in interest coupon.").

11

proposed, significantly impairs and alters the legal rights and economic interests of the DWSD Holders, and their collective message to the Trustee, to date, has been to take such efforts as are necessary to prevent any impairment.

18. The Trustee's fees and expenses incurred thus far have been reasonable, required by circumstances, and consistent with the amount of work performed.

**B.    The DWSD Has Been Funding the Trustee's Fees And Expenses.**

19. The Fee Motion mischaracterizes the current treatment of the Trustee's fees and expenses. When the City filed bankruptcy, the Trustee contacted its business counterparts at the DWSD to discuss the Trustee's anticipated fees and expenses, and the DWSD's payment of same. The Trustee and the DWSD worked out an arrangement whereby the DWSD would transfer $100,000 per calendar month from each of the System's Operation and Maintenance Funds, for a total of $200,000 per month, to the Trustee, which the Trustee, in turn, would use to fund its fees and expenses. The DWSD and the Trustee further agreed they would revisit the amount of the Trustee's fees and expenses after a number of months to determine if any adjustments should be made.

20. Between the Petition Date and late October 2013, the Ad Hoc Committee and the Trustee concluded jointly that the Trustee needed a financial advisor given the City's proposed treatment of the DWSD Bonds, the accelerated pace of the Bankruptcy Case, and the ongoing mediation. The Ad Hoc Committee directed the Trustee to engage GLC, which the Trustee did.

21. At that time, the Trustee realized that the funds being provided by the DWSD would not suffice to fund all of the Trustee's fees and expenses, including the fees and expenses of its counsel and its financial advisors. The Trustee so advised the DWSD and requested that the DWSD increase the monthly transfers being made to the Trustee.

12
11789175

13-53846-tjt    Doc 4323    Filed 04/30/14    Entered 04/30/14 17:23:04    Page 12 of 19

22. At the beginning of November 2013, the DWSD asked the Trustee to provide certain information regarding its fees and expenses incurred to date. On November 18, 2013, the Trustee's counsel sent the DWSD's counsel the letter attached hereto as Exhibit H (the "November Letter"). The November Letter included: a table of the fees and expenses charged by the Trustee, Waller, and Bodman; the contact information and bios for the "principal timekeepers" at Waller who had billed more than 50 hours to the matter; copies of the Trustee's and Bodman's invoices for fees and expenses through September 30, 2013; and copies of Waller's invoices for fees and expenses through October 31, 2013.[13] The November Letter also requested that "an open dialogue" be maintained between the DWSD and the Trustee, noting that the Trustee has duties to the DWSD Holders and that the fees and expenses were necessarily incurred in exercising those duties. (November Letter at 2). Further, the November Letter stated:

> In large part, much of what the Trustee will be required to do to protect the bondholders' interests will be in preparation for and reaction to the City's proposal regarding the water and sewer bonds. We will continue to work with the City, including participating in the mediation with the Emergency Manager and his team, in an effort to achieve a plan of adjustment that the water and sewer bondholders can support.

(*Id.*).

23. Over the next couple of weeks, Waller participated in a number of discussions regarding the Trustee's fees and expenses with attorneys at Jones Day, Richardo Kilpatrick (the DWSD's bankruptcy counsel), other outside attorneys representing the DWSD,[14] the DWSD's in-house general counsel, and other employees of the DWSD. In the latter part of November

---

[13] The invoices were minimally redacted as required to protect work-product and privilege.
[14] The DWSD, "a department of the City," (*see* Fee Motion at ¶ 2), has engaged Kilpatrick & Associates, PC, Dykema Gossett PLLC, and the Law Office of Ottenwess, Taweel, & Schenck, PLC as its counsel. (*See* Fee Examiner's Quarterly Report for Months of July, August and September 2013 (Doc. 2642) ("First Quarterly Report") at ¶ 2). The DWSD's in-house counsel also actively participates.

13

2013, the DWSD posited that the Trustee's professionals were covered by the *Fee Review Order* (Doc. 810) (the "Fee Review Order"); that the Trustee's professionals should, therefore, submit their fees and expenses to the Fee Examiner (defined below); and that the Trustee's fees and expenses, including all of its professionals' fees and expenses, should be capped at $900,000 in the aggregate, regardless of how much the Trustee actually incurred or the Fee Examiner approved.

24. The Trustee could not agree to cap the reimbursement of its fee and expenses, as it was clear that the fees and expenses for the duration of the Bankruptcy Case would necessarily exceed the proposed cap, and the Trustee could not prejudice the DWSD Holders by agreeing to a cap and ceasing efforts on their behalf after the cap was reached. The Trustee further advised the DWSD that it did not believe the Fee Review Order entered by this Court applied to the Trustee's professionals. Until the filing of the Fee Motion, this was the last mention the DWSD or its counsel made regarding the Fee Examiner or the Fee Review Order.

25. In November 2013, the Trustee requested that the DWSD begin providing $150,000 per calendar month from the Operation and Maintenance Fund of each System, which amounts the Trustee would use to fund its fees and expenses. Again, the request was made with the proviso that the amounts being paid would be revisited by the Trustee and the DWSD if the amounts were insufficient to fully fund the Trustee's fees and expenses. Beginning in November 2013 and continuing through April 2014, the DWSD transferred $150,000 per month from the Operation and Maintenance Fund of each System, for a total of $300,000 per month, which the Trustee has used to fund its fees and expenses. As of the filing of this Response, the DWSD has transferred $1,300,000 from each of the Systems' Operation and Maintenance Funds, for a total of $2,600,000. Through March 31, 2014, the Trustee's total fees and expenses were

$2,715,859.85. The Trustee continues to incur fees and expenses and will do so for the duration of the Bankruptcy Case.

26. On March 28, 2014, the Trustee's counsel sent Jones Day the letter attached hereto as Exhibit I (the "March Letter"), advising the City's bankruptcy counsel that the monthly transfers were not adequate to cover all of the Trustee's fees and expenses and that payment of the deficiency between the monthly payments and the Trustee's actual fees and expenses would need to be addressed. The Trustee contemplated that the DWSD would continue making the monthly payments, but reserved its rights to recover any deficiency. (*See* March Letter at 2).

27. The DWSD funded the monthly payments of $150,000 from each System's Operation and Maintenance Fund for April 2014. However, without responding to the March Letter or contacting counsel for the Trustee, the DWSD filed the Fee Motion.[15]

## III. TO AVOID UNNECESSARY DISTRACTIONS, THE TRUSTEE CONSENTS TO PROSPECTIVE APPLICATION OF THE FEE REVIEW ORDER.

28. On August 19, 2013, this Court appointed Robert M. Fishman as fee examiner (the "Fee Examiner"). (*See* Order Appointing Fee Examiner (Doc. 383)). The Court then entered the Fee Review Order, which required the City to submit:

> **a list of all professionals** who have been retained to render services in connection with this Case and **who will seek payment of compensation and reimbursement of expenses from the City** for postpetition

---

[15] Local Bankruptcy Rule 9014-1(g) requires that, "in a bankruptcy case, unless it is unduly burdensome, the motion shall affirmatively state that concurrence of opposing counsel in the relief sought has been requested on a specified date and the concurrence was denied." Contrary to the assertion in the Fee Motion that "DWSD has conferred with the Trustee, which does not concur with the relief requested herein," (Fee Motion at ¶ 32), the DWSD's counsel did not contact the Trustee's counsel and request concurrence in the relief sought. Counsel for the Trustee has not spoken to counsel for the DWSD since November 2013. Similarly, the Trustee is not aware of anyone from the DWSD contacting the Trustee regarding this matter since November 2013. Counsel for the DWSD insinuates that "[g]iven the number of parties and potential parties involved in this case and the lack of known opposing parties who would be adversely impacted by the relief requested herein, it would be impracticable . . . for DWSD to affirmatively seek the concurrence of each opposing counsel interested in the relief sought herein." (Fee Motion at ¶ 32). However, the DWSD's counsel was aware of the Trustee as an opposing party and the identity of the Trustee's counsel, and could easily have asked the undersigned counsel if the Trustee concurred with the relief requested. As will be stated further in the Response, the Trustee will consent to having its counsels' and its other advisors' fees and expenses submitted to the Fee Examiner from March 1, 2014 onward.

15

> services . . . and a list of all known OC Professionals . . . , which lists may be amended or supplemented from time to time, provided that which professional is placed on which list must be reasonable acceptable to the Fee Examiner under which each professional subject to the Fee Review Order is required to submit to the Fee Examiner monthly invoices of the professional's fees and expenses.

(Fee Review Order at ¶ 2) (emphasis added)).

29. The DWSD acknowledges in the Fee Motion that the Fee Review Order is not currently applicable to the Trustee's professionals, hence the request to amend the Fee Review Order. The Trustee's professionals were not listed on the schedule of City Professionals provided by the City to the Fee Examiner, nor should they have been. (*See* First Quarterly Report at ¶ 2). The Trustee's professionals are neither retained by the City, nor do they seek payment of compensation and reimbursement of expenses from the City. The Trustee's fees and expenses, including those of its professionals, are paid from Revenues of the Systems that are dedicated exclusively to the payment of the expenses of administration and operation of the Systems, which include the Trustee's fees and expenses, debt service on the DWSD Bonds, and appropriate capital expenditures. (*See* Water Indenture §§ 2.03, 6.02; Sewer Indenture §§ 2.03, 6.02). The City (as opposed to the DWSD) is not obligated to pay the Trustee's fees and expenses,[16] and the Revenues are not available for any purpose other than payment of expenses related to the Systems. Therefore, the Trustee's professionals should not be defined as "City Professionals" or otherwise required to subject themselves to the Fee Review Order.

30. Notwithstanding the Trustee's position that its professionals should not be required to submit to the Fee Examiner under the Fee Review Order, given all of the important matters before the Court and the issues the City needs to address, including, without limitation,

---

[16] Under limited circumstances not applicable here, the Indentures provide that the City could be responsible for paying certain of the Trustee's fees and expenses. However, the Trustee is not seeking payment of its fees and expenses from the City.

16

11789175
13-53846-tjt    Doc 4323    Filed 04/30/14    Entered 04/30/14 17:23:04    Page 16 of 19

the disclosure statement, plan-related discovery, and plan-related proceedings, the Trustee does not want the Trustee's fees and expenses to be a distraction to the Court, the City and the other parties. Therefore, without conceding its position, the Trustee will consent to its counsel, GLC, Young, and any additional professionals it may subsequently engage in connection with the Bankruptcy Case submitting their fees and expenses going forward to the Fee Examiner in accordance with the Fee Review Order; provided, however, that the DWSD continue to transfer at least $150,000 per calendar month per System from the Systems' respective Operating and Maintenance Funds to the Trustee, which the Trustee will apply to its fees and expenses, and to its professionals' fees and expenses as approved by the Fee Examiner; and provided further that, to the extent the monthly transfers do not satisfy the Trustee's fees and expenses, and such fees and expenses have been approved by the Fee Examiner, the DWSD will be required to satisfy promptly the difference from the Revenues of the Systems.

31. Attached hereto is a Proposed Order that the Trustee requests the Court enter. In summary, it provides that:

    a. The Trustee's professionals, which currently include Waller, Bodman, GLC, and Young, will submit their respective invoices for fees and expenses incurred commencing March 1, 2014, to the Fee Examiner, in accordance with the Fee Review Order, and all such fees and expenses incurred by such professionals from March 1, 2014, shall be approved and paid in accordance with the Fee Review Order, as expenses of administration of the Systems. If the Trustee subsequently engages additional professionals, such additional professionals shall submit their respective invoices to the Fee Examiner in accordance with the Fee Review Order, and such invoices shall be approved and paid in accordance with the Fee Review Order as expenses of administration of the Systems.

    b. The DWSD shall continue transferring the amount of $150,000 per month, per System from each of the Systems' respective Operation and Maintenance Funds, which the Trustee will use to fund its fees and expenses and the fees and expenses of its professionals, subject to the provisions of this Order. To the extent the amounts transferred to the Trustee are inadequate to fully pay the Trustee's fees and expenses and the

approved fees and expenses of its professionals, the DWSD shall pay the deficiency from the Systems' Operation and Maintenance Fund.

WHEREFORE, the Trustee respectfully requests that this Court: (i) deny the Fee Motion; (ii) enter an order substantially in the form of the Proposed Order; and (iii) provide such other and further relief as is just and equitable.

Respectfully submitted this 30th day of April, 2014.

/s/ David E. Lemke
David E. Lemke (TN13586)
Michael R. Paslay (TN11092)
Ryan K. Cochran (TN25851)
Courtney M. Rogers (TN25664)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Phone: (615) 244-6380
Fax: (615) 244-6804
david.lemke@wallerlaw.com
mike.paslay@wallerlaw.com
ryan.cochran@wallerlaw.com
courtney.rogers@wallerlaw.com

– and –

Robert J. Diehl, Jr. (MI31264)
Jaimee L. Witten (P70068)
BODMAN PLC
1901 St. Antoine Street, 6th Floor
Detroit, Michigan 48226
Phone: (313) 393-7597
Fax: (313) 393-7579
rdiehl@bodmanlaw.com
jwitten@bodmanlaw.com

*Attorneys for U.S. Bank National Association, as Indenture Trustee for the Water and Sewer Bonds*

18

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Response to the Motion of the City of Detroit Water and Sewerage Department for an Order, pursuant to 11 U.S.C. § 105, Amending and Clarifying the Fee Review Order Dated September 11, 2013* was filed and served via the Court's electronic case filing and noticing system to all parties registered to receive electronic notices in this matter, this 30th day of April, 2014.

/s/ David E. Lemke
David E. Lemke (TN13586)
Michael R. Paslay (TN11092)
Ryan K. Cochran (TN25851)
Courtney M. Rogers (TN25664)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Phone: (615) 244-6380
Fax: (615) 244-6804
david.lemke@wallerlaw.com
mike.paslay@wallerlaw.com
ryan.cochran@wallerlaw.com
courtney.rogers@wallerlaw.com

*Attorneys for U.S. Bank National Association, as Indenture Trustee for the Water and Sewer Bonds*