**EXHIBIT B**
**Water Ordinance**

Ordinance No. 01-05

**An Ordinance to Amend and Restate Ordinance No. 30-02 of the City of Detroit
to Provide for the Issuance of SRF Junior Lien Bonds to Evidence Loans from
the State Drinking Water Revolving Fund.**

**Whereas**, Ordinance No. 30-02 provides for the financing and refinancing of capital improvements to the Water Supply System (the "System")of the City of Detroit, Michigan (the "City"), by the issuance from time to time of Water Supply System Revenue Bonds and Revenue Refunding Bonds;

**Whereas**, the City Council of the City desires to amend and restate Ordinance No. 30-02 to provide for the issuance of SRF Junior Lien Bonds to enable the City to finance eligible improvements to the System with low-cost loans from the State Drinking Water Revolving Fund established pursuant to the federal Safe Drinking Water Act of 1974, as amended;

**The City of Detroit Ordains:**

**Amendment to Amend and Restate Ordinance No. 30-02**

Ordinance No. 30-02, as amended to the date hereof is hereby amended and restated in its entirety to read as set forth below. Such amendment and restatement to take effect as provided in Section 25 hereof.

**SECTION 1. DEFINITIONS - GENERAL.**

Whenever used in this Ordinance, except when otherwise indicated by the context, capitalized terms not defined herein and defined in the preamble hereto are used herein as defined in the preamble, and the following terms shall have the following meanings:

> "Act 34" means Act 34, Public Acts of Michigan, 2001, as amended.

> "Act 94" means Act 94, Public Acts of Michigan, 1933, as amended.

> "Act of Council" means a resolution or ordinance of the Council, as required or permitted by law to authorize or otherwise give effect to the subject matter thereof.

> "Additional Securities" has the meaning given that term in Section 20(C)(1).

> "Ancillary Obligation" means any Reimbursement Obligation and any Hedge Obligation.

> "Ancillary Obligation Fees and Expenses" means any fees and expenses in connection with any Hedge or Financial Facility in the ordinary course of the transaction.

D-1

"BMA Municipal Index" means the index based upon the weekly interest rates of tax-exempt variable rate issues included in a database maintained by Municipal Market Data, Boston, Massachusetts, a Thompson Financial Services Company (or its successor), which meet specific criteria established by The Bond Market Association.

"Bond Counsel's Opinion" means an opinion signed by an attorney or firm of attorneys of nationally recognized standing in the field of law relating to municipal, state and public agency financing, selected by the City.

"Bond Insurance" means any policy of insurance, contract of suretyship, guaranty or other agreement intended to protect Holders of particular Securities from loss arising from a failure of the City to timely pay principal (and premium, if any) of and interest on such Securities and pursuant to which the provider thereof is repaid solely as subrogee without creating any additional payment obligations (other than the payment of a premium or annual fee).

"Capital Appreciation Securities" means Securities that pay interest only at maturity.

"City" means the City of Detroit, County of Wayne, State of Michigan.

"Code" means the Internal Revenue Code of 1986, as it may be amended and the rules and regulations promulgated thereunder or applicable thereto.

"Commissioners" means the Board of Water Commissioners of the City created by Article 7, Section 7-1501, of the Charter of the City or any successor body.

"Construction Fund" means the fund established pursuant to Section 14.

"Council" means the City Council of the City.

"Counterpart Securities" means Securities that bear interest at rates which vary inversely to each other and that were issued contemporaneously with each other in order to produce a single fixed rate. In order to constitute "Counterpart Securities" both counterparts must be Outstanding at the same time and in such amounts and with such amortizations schedules as to maintain the fixed rate so utilized.

"Coverage Determination" means a determination of the ratio of Net Revenues to Indebtedness with respect to Securities for purposes of fixing or revising rates or issuing Additional Securities or incurring additional Secured Obligations.

"Credit Enhancement" means any Credit Facility and any Bond Insurance.

"Credit Facility" means any letter of credit, line of credit, purchase agreement, surety bond or other financial arrangement, other than Bond Insurance, intended to protect Holders of particular Securities from loss arising from a failure of the City to timely pay principal of and interest on such Securities or intended to secure an obligation to fund an account or fund, such as a Reserve Account.

"Debt Service Installment Requirement" means, as of the first day of each month with respect to a Priority of Outstanding Securities and Ancillary Obligations, if any, the total for such month of the (i) Interest Installment Requirement, (ii) Principal Installment Requirement and (iii) Sinking Fund Installment Requirement, if any.

"Excluded Tender Securities" means:

(i) Tender Securities that the City is not obligated to purchase under any circumstances upon the failure of the remarketing thereof and for which the City has not provided a Liquidity Facility; and

(ii) Tender Securities for which the City has provided a Liquidity Facility.

"Extraordinary Repair and Replacement Maximum Requirement" means, for any Fiscal Year, 15% of the budgeted operation and maintenance expense of the System for such Fiscal Year less in the Fiscal Year any amount that is withdrawn from the Extraordinary Repair and Replacement Reserve Fund for paying a major unanticipated repair or replacement to the System pursuant to Section 13D, but only in the Fiscal Year that such amount is withdrawn.

"Extraordinary Repair and Replacement Minimum Requirement" means, for any Fiscal Year, 1/12 of 3% of the budgeted operation and maintenance expense of the System for such Fiscal Year plus such amount as is necessary to restore to the Extraordinary Repair and Replacement Reserve Fund any amount credited to the Improvement and Extension Fund.

"Finance Director" means the Finance Director of the City or any successor officer of the City responsible for performing the duties of the Finance Director pursuant to the Charter of the City.

"Financial Facility" means any Credit Enhancement, Liquidity Facility or combined Credit and Liquidity Facility.

"Fiscal Year" means the fiscal year and operation year of the City which begins on July 1 and ends on the following June 30 as it may be modified.

D-3

"Fixed Rate Security" means a Security that bears interest at a rate that has been fixed for at least a five-year period that includes all of the Fiscal Year for which a calculation of Annual Debt Service is made or to its scheduled maturity, whichever is shorter; provided, however that:

> (i)     If the Fiscal Year for which a calculation of Annual Debt Service is made includes only a portion of such five year period, a Security is also a "Fixed Rate Security" but only for such portion;

> (ii)     A rate is fixed for purposes of determining whether a Security is a "Fixed Rate Security" if the economic effect of a Security bearing interest at a fixed rate is produced by a Qualified Hedge or by Counterpart Securities; and

> (iii)     A rate is variable for purposes of determining whether a Security is a "Fixed Rate Security" if the economic effect of a Security bearing interest at a variable rate is produced by a Qualified Hedge.

"Government Obligations" means direct obligations of the United States of America or obligations the principal of and interest on which is fully guaranteed by the United States of America, including U.S. Treasury Trust Receipts.

"Hedge" means any agreement by which the City is authorized or permitted by law to manage its debt service, either in connection with the proposed issuance or issuance of Securities or in connection with its then Outstanding Securities, including, but not limited to, interest rate exchanges or swaps, hedges and similar agreements.

"Hedge Obligations" means the City's payment obligations under a Hedge other than the obligation to pay fees and expenses in the ordinary course of the transaction.

"Hedge Termination Payment" means an amount payable by the City under a Hedge by reason of the early termination thereof.

"Hedge Receivable" means any amount receivable by the City under a Hedge including any amount by reason of the early termination thereof.

"Holder" or "Securityholder" means the Person in whose name a Security is registered in the Registry.

"Indebtedness" has the meaning given that term in Section 2.

"Interest and Redemption Fund" means any Interest and Redemption Fund established for a Priority of Securities.

"Interest Installment Requirement", means, as of the first day of each month in a Fiscal Year, with respect to Securities and Ancillary Obligations of the same Priority of Lien, the amount of interest accrued and unpaid and to accrue to and including the last day of such month, on Outstanding Securities of such Priority of Lien and Parity Ancillary Obligations that constitute interest, if any, next coming due in such Fiscal Year.

"Junior Lien Bonds" means all Securities issued pursuant to this Ordinance other than Senior Lien Bonds.

"Junior Obligations" means all Junior Lien Bonds and all Ancillary Obligations that are not Senior Obligations.

"Legal Investment" means, with respect to any particular amounts, an investment that is authorized or permitted by law as an investment of such amounts, including Government Obligations.

"Liquidity Facility" means any letter of credit, line of credit, purchase agreement, or other financial arrangement intended to provide funds for the purchase of certain Securities in the event of a failure of the remarketing thereof but does not include any protection provided by a Credit Facility.

"Mandatory Redemption Date" means a date on which Term Securities in the principal amount of the applicable Mandatory Redemption Requirement are required to be redeemed under the Supplemental Action authorizing the sale of such Securities.

"Mandatory Redemption Requirements" means, with respect to any Term Securities, the principal amount of such Securities required to be called for redemption prior to their stated maturity as provided in the Supplemental Action authorizing the sale of such Term Securities.

"Net Revenues" means, for any period of time, all Revenues received during such period of time, except for those Revenues transferred to the Operation and Maintenance Fund.

"Operation and Maintenance Fund" means the fund established pursuant to Section 12(A)(1).

"Outstanding", unless otherwise provided in a Supplemental Action for particular Securities, means, as of any date and with respect to Securities of a particular Priority of Lien, all Securities of such Priority of Lien delivered under this Ordinance except:

(i)  Securities of such Priority of Lien theretofore paid or redeemed or acquired by the City

and surrendered to the Transfer Agent for cancellation;

      (ii)     Securities of such Priority of Lien that have matured or have been duly called for redemption and for the payment or redemption of which amounts, together with any unpaid interest, are held by the Trustee or the Paying Agent for the payment thereof;

      (iii)     Securities of such Priority of Lien that have been defeased in accordance with this Ordinance or a Supplemental Action; and

      (iv)     Securities of such Priority of Lien in exchange for or replacement of which other Securities of such Priority of Lien have been authenticated and delivered pursuant to this Ordinance or a Supplemental Action.

"Parity Ancillary Obligations" means, as to Securities, those Ancillary Obligations which have the same Priority of Lien, regardless of whether the Ancillary Obligations were entered into with respect to those Securities or Securities with a different Priority of Lien.

"Permitted Investment" means, with respect to any particular amounts, a Legal Investment subject to such limitations as may be imposed by this Ordinance or a Supplemental Action for the investment of such amounts.

"Person" means any natural person, firm, association, corporation, trust, partnership, joint venture, joint-stock company, municipal corporation, public body or other entity, however organized.

"Pledged Assets" means:

      (i)     Net Revenues;

      (ii)     the funds and accounts established by or pursuant to this Ordinance except for the Operation and Maintenance Fund and the Construction Fund and any account thereof;

      (iii)     investments of amounts credited to any fund, account or subaccount that is a Pledged Asset; and

      (iv)     any income or gain realized from investments that are Pledged Assets to the extent that such income or gain is not a Net Revenue.

"Principal Installment" means, with respect to Securities of the same Priority of Lien and related

Ancillary Obligations, if any, the principal amount of such Securities that are not Term Securities and such of the Ancillary Obligations related to such Securities, if any, that constitute principal or other return of capital.

"Principal Installment Requirement" means, as of the first day of each month in a Fiscal Year, with respect to a Priority of Obligations, the amount of Principal Installments accrued and unpaid and to accrue to, and including, the last day of such month (assuming that principal accrues on the basis of 30-day months in a year of 360 days) on Outstanding Securities of such Priority of Lien and related Ancillary Obligations, if any, next coming due in such Fiscal Year.

"Priority of Lien" means, with respect to any particular Secured Obligation, all other Secured Obligations having a lien on Pledged Assets on a parity with such Obligation.

"Qualified Hedge" means a Hedge with a counterparty that is rated directly or indirectly by a Rating Agency in a rating category at least equal to the category in which the subject Securities are rated without benefit of Credit Enhancement and without reference to qualifications such as "plus" or "minus". If the subject Securities are not rated without the benefit of Credit Enhancement, then the rating category of such Securities shall be the rating category with the benefit of Credit Enhancement.

"Rate Stabilization Fund" means the fund created under Section 13(G)(2).

"Rating Agency" means any nationally recognized statistical rating organization as defined in Rule 15c3-1 of the United States Securities and Exchange Commission.

"Receiving Fund" means the Water Supply Receiving Fund established under Section 12(A)(1).

"Refunding Securities" means Additional Securities issued for the purpose of refunding Outstanding Securities.

"Reimbursement Obligation" means the City's repayment obligations under a Financial Facility, and does not include the obligation to pay fees and expenses in the ordinary course of the transaction.

"Registry" means the books for the registration and transfer of registration of securities as provided in Section 3G(1).

"Required Combined Coverage" means, for two or more Securities of a different Priority of Lien for which a Coverage Determination is to be made, the result produced by dividing the Net Reve-

nues projected for the Fiscal Year of calculation by the prescribed related Indebtedness coming due during such Fiscal Year.

"Reserve Account" means a Reserve Account established in an Interest and Redemption Fund and may be restricted in meaning by referring to Securities of the same Priority of Lien for which such Reserve Account was established.

"Reserved Amount" means any amount on deposit in the Rate Stabilization Fund which is taken into account in connection with any Coverage Determination.

"Reserve Requirement" means, for Securities of the same Priority of Lien for which a Reserve Account has been established, the lesser of the amount of Annual Debt Service on all Securities of the same Priority of Lien then Outstanding for the current or any future Fiscal Year or the maximum amount permitted by the Code as provided below:

> (i)     for Senior Lien Bonds, the "amount of Annual Debt Service" shall be maximum Annual Debt Service;

> (ii)    for Second Lien Bonds, the "amount of Annual Debt Service" shall be maximum Annual Debt Service; and

> (iii)   for all other Junior Lien Bonds for which a Reserve Account is established, the "amount of Annual Debt Service" shall be the amount set forth in the Supplemental Action establishing such Reserve Account, and if no amount is set forth, the "amount of Annual Debt Service" shall be average Annual Debt Service.

"Revenues" means the revenues of the City from the System, which shall be construed as defined in Section 3 of Act 94, and shall also include:

> (i)     Hedge Receivables; and

> (ii)    income earned and gain realized from the investment of amounts in the various funds, accounts and subaccounts established by this Ordinance other than the Construction Fund for any Fiscal Year earnings on the Construction Fund are not credited to the Receiving Fund.

"Second Lien Bonds" means the City's outstanding Water Supply System Revenue Second Lien Bonds, Series 1995-A and any Additional Securities of equal Priority of Lien.

D-8

"Secured Obligations" means all Securities, Ancillary Obligations and Ancillary Obligation Fees and Expenses.

"Securities" means all Senior Lien Bonds and all Junior Lien Bonds.

"Securities to be Refunded" means the Particular Outstanding Securities to be refunded by Refunding Securities issued for such purpose.

"Senior Lien Bonds" means all Securities issued under this Ordinance that have a senior lien on Pledged Assets.

"Senior Obligations" means all Senior Lien Bonds and Ancillary Obligations in respect of Senior Lien Bonds and secured on parity therewith, and including all Junior Lien Bonds that have acceded to a parity status with Senior Lien Bonds pursuant to Section 5(F) hereof and Ancillary Obligations in respect thereof, secured on a parity therewith, if any.

"Sinking Fund Installment Requirement" means, with respect to Term Securities of the same Priority of Lien and as of the first day of each month in a Fiscal Year, the amount of any Mandatory Redemption Requirements next coming due in such Fiscal Year, including any Mandatory Redemption Requirement due at the maturity of such Term Security less the amounts credited to such Mandatory Redemption Requirements as the result of partial redemptions or purchase of such Term Securities, if any.

"State" means the State of Michigan.

"SRF Junior Lien Bonds" means all Junior Lien Bonds issued for the purpose of providing improvements to the System under the State's Revolving Fund.

"Supplemental Action" means an Act of Council or a sale order or other document signed by the Finance Director pursuant to an Act of Council, which shall be this Ordinance if the action of the Finance Director is herein authorized.

"System" means the Water Supply System of the City including all plants, works, instrumentalities and properties, used or useful, in connection with obtaining a water supply, the treatment of water or the distribution of water, as the same now exists, together with all additions, extensions, repairs and improvements thereto hereafter acquired.

"Tender Securities" means Securities that are subject to optional or mandatory tender for purchase.

"Term Securities" means, with respect to Securities of the same Priority of Lien, any maturity of such Securities that has Mandatory Redemption Requirements.

"Transfer Agent" means, as to any particular Securities, the bank or banks selected by the Finance Director to perform the duties provided for the Transfer Agent with respect to such Securities.

"Trustee" means U.S. Bank National Association or any successor Trustee selected by the Finance Director to perform the duties of trustee under Section 19 hereof.

"Variable Rate Security" means any Security that is not a Capital Appreciation Security or a Fixed Rate Security.

## SECTION 2. DEFINITION OF ANNUAL DEBT SERVICE.

(A) *Definitions.*

(1) "Annual Debt Service" means, for any Fiscal Year and with respect to Indebtedness of any particular Priority, the amount of such Indebtedness due in such Fiscal Year in accordance with their respective terms.

(2) Unless limited by another Section of this Ordinance, "Indebtedness" means (without duplication):

    (i) Principal of and interest on Securities Outstanding in any Fiscal Year for which the calculation is made;

    (ii) Reimbursement Obligations; and

    (iii) Hedge Termination Payments.

(B) *Rules for Calculating Principal and Interest.*

(1) First Day of Fiscal Year. Principal of and interest on Securities coming due on the first day of a Fiscal Year shall be calculated as being due on the last day of the immediately preceding Fiscal Year.

(2) Assumed Paid. Principal of and interest on any Securities due in a Fiscal Year prior to the Fiscal Year for which the calculation is made shall be assumed to have been paid when due.

(3) Due Dates. The due dates for any principal, interest or Redemption Requirements are the stated dates for the payment thereof and not in advance of such stated dates by reason of acceleration.

(4) Term Securities.

    (i) Mandatory Redemption Requirements shall be treated as principal maturing on the respective dates that such Mandatory Redemption Requirements are due.

D-10

        (ii)    The principal amount of a Term Security maturing in a Fiscal Year shall be reduced by the total of the Mandatory Redemption Requirements due in each Fiscal Year before the Fiscal Year of such maturity.

(5)    <u>Tender Securities</u>. <u>Except</u> for Excluded Tender Securities, each date on which Holders of such Tender Securities may tender or may be mandated to tender such Tender Securities shall constitute a maturity of the principal amount of such Tender Securities that could be tendered on such date with the giving of notice or the passage of time, or both.

(6)    <u>Interest</u>.

        (i)    Interest due in any Fiscal Year shall be offset by the amount of capitalized interest or interest received by the City as "accrued interest" available for the payment thereof.

        (ii)    Separate provision is made in this Section for determining the interest rate on:

            (a) Variable Rate Securities as provided in subsection (C) below; and

            (b) Fixed Rate Securities converting to Variable Rate Securities as provided in subsection (D) below.

(C)    ***Variable Rate Securities***.

(1)    If Variable Rate Securities have been Outstanding for less than a full Fiscal Year on the date of calculation, <u>then</u> the interest rate on such Variable Rate Securities shall be calculated as 125% of the average of the BMA Municipal Index (as hereinafter defined) for the five year period ending not more than one week before the date of such calculation.

(2)    If Variable Rate Securities have been Outstanding for one or more full Fiscal Years on the date of calculation, <u>then</u> the interest rate on such Variable Rate Securities shall be calculated as 125% of the annualized average daily rate borne by such Variable Rate Securities for the 12 calendar month period ending immediately before the month of calculation.

(3)    Notwithstanding paragraphs (1) and (2), for the purpose of determining the Reserve Requirement for Securities of the same Priority of Lien, the interest rate on Variable Rate Securities shall be not adjusted after the date of initial issuance.

(D)    ***Fixed Rate Securities Convertible to Variable Rate Securities.***

If Securities are issued as Fixed Rate Securities but are intended to convert by their terms to Variable Rate Securities during a future Fiscal Year and a calculation is made for such future Fiscal Year or any Fiscal Year thereafter, <u>then</u> the Fiscal

D-11

Year of conversion shall be the first Fiscal Year that such Securities are Outstanding for the purpose of calculating interest at a variable rate.

(E)     *Capital Appreciation Securities.*

For the Capital Appreciation Securities, the Accreted Value per $5,000 due at maturity shall be as determined semiannually to maturity on such dates as specified in a Supplemental Action. For purposes of the rate covenants in Section 9, the Additional Securities requirements of Section 20, and for all other purposes of this Ordinance, the Accreted Value of Capital Appreciation Securities shall be deemed to be due and payable in the Fiscal Years in which such Accreted Value shall actually be due and payable by the City into the Senior Lien Bond and Interest Redemption Fund or the Second Lien Bond Interest and Redemption Fund, as applicable, or assumed paid under (B)(2) above, as applicable.

**SECTION 3. AUTHORIZATION AND ISSUANCE OF SECURITIES; RELATED MATTERS.**

(A)     *Authorization of Securities.* Securities shall be authorized from time to time by Acts of Council and Supplemental Actions.

(B)     *Issuing Securities.* The Finance Director may, by Supplemental Action, take such actions as are necessary or appropriate to give effect to the transactions contemplated by an Act of Council authorizing the issuance of Securities or as are incidental thereto.

(C)     *Liability Limited.* All covenants, agreements and obligations of the City contained in this Ordinance or in any Secured Obligations are those of the City and not of any member, officer or employee of the City in his or her individual capacity, and no recourse shall be had for the payment of any Secured Obligations or for any claims based thereon or hereunder against any member, officer or employee of the City or any natural Person executing or attesting any Secured Obligations.

(D)     *Execution, Authentication and Delivery of Securities.*

(1)     Securities shall be executed in the name of the City by the facsimile signatures of the Mayor and the Finance Director and shall have a facsimile of the City's seal impressed, imprinted or otherwise reproduced thereon.

(2)     No Security shall be valid until authenticated by an authorized representative of the Transfer Agent. Securities shall be delivered by the City to the Transfer Agent for authentication and be delivered to the Transfer Agent by the Finance Director or designee for delivery to the purchaser(s) in accordance with instructions from the Finance Director upon payment of the purchase price therefor in accordance with the bid or purchase contract. Executed blank Securities for registration and issuance to transferees shall, from time to time as necessary, be delivered to the Transfer Agent for safekeeping.

(E)     *Reserve Account Requirement.* Concurrently with the issuance of Securities of a Priority for which a Reserve Account has been or is being established, there shall be credited to such Reserve Account the amount that, added to the amount on deposit therein or credited thereto, equals the Reserve Requirement for Securities then to be issued and all Securities of such Priority then Out-

standing. Such amount may be provided from any source or may be provided by a Financial Facility meeting the requirements of Section 4.

(F)    *Disposition of Proceeds*. The proceeds of the sale of an issue of Securities shall be applied as follows:

(1)    An amount equal to the accrued interest shall be credited to the Interest and Redemption Fund for such Securities to be applied to next maturing interest thereon.

(2)    If a Reserve Account has been or is being established for Securities of the same Priority of Lien as such Securities, the amount necessary to comply with subsection (E), above, unless such compliance will be obtained with amounts from a different source, or by the deposit of a Financial Facility meeting the requirements of Section 4.

(3)    The balance of the proceeds, including premium, if any, shall be applied as provided in the Supplemental Action providing for the issuance of such Securities.

(G)    *Transfer of Registration of Securities*.

(1)    <u>Maintenance of Books</u>. Each Transfer Agent shall keep or cause to be kept, at its principal office, sufficient books for the registration and transfer of registration of Securities for which it is Transfer Agent, which shall at all times be open to inspection by the City.

(2)    <u>Privilege of Transfer</u>.    Under such reasonable regulations as the Transfer Agent may prescribe, the registration of Securities for which it is the Transfer Agent may be transferred upon its Registry by the Person in whose name such Securities are registered, in person or by his or her duly authorized attorney, upon surrender of such Securities for cancellation, accompanied by delivery of a duly executed written instrument of transfer in a form approved by the Transfer Agent for such Securities.

(3)    <u>Surrender for Transfer; Receipt of New Securities</u>. Whenever any Security is surrendered for transfer, the City shall execute and the Transfer Agent for such Security shall authenticate and deliver a new Security or Securities, in the same aggregate principal amount, of the same maturity, and bearing the same rate or rates of interest and otherwise of the same tenor as the Security surrendered for transfer.

(4)    <u>Transfer Taxes and Governmental Charges</u>. The Transfer Agent shall require payment by the Holder requesting the transfer of any Security for which it is the Transfer Agent, any tax or other governmental charge required to be paid with respect to such transfer.

(5)    <u>Limitations</u>. Except as otherwise provided by Supplemental Action, a Transfer Agent shall not be required (i) to issue, register the transfer of or exchange Securities for which it is the Transfer Agent during a period beginning at the opening of business fifteen (15) days before the day of the giving of a notice of redemption or mandatory tender of such Securities selected for redemption or mandatory tender and

D-13

ending at the close of business on the day of giving of that notice, or (ii) to register the transfer of or exchange of any such Security so selected for redemption or tender in whole or in part, except the unredeemed or untendered portion of such Security being redeemed or tendered in part.

(H)  ***Mutilated, Lost or Stolen Securities***.

(1)  If any Security is mutilated, the City, at the expense of the Holder of the Security, shall execute, and the Transfer Agent for such Security shall authenticate and deliver, a new Security of like tenor in exchange and substitution for the mutilated Security, upon surrender to such Transfer Agent of the mutilated Security.

(2)  If any Security is lost, destroyed or stolen, evidence of ownership of the Security and of the loss, destruction or theft may be submitted to the Transfer Agent for such Security and, if this evidence is satisfactory to the City and the Transfer Agent, and, indemnity satisfactory to such Transfer Agent and the City shall be given, and if all requirements of any applicable law, including Act 354, Public Acts of Michigan, 1972, as amended, have been met, then, at the expense of the Holder requesting the substitute Security, the City shall execute, and such Transfer Agent shall thereupon authenticate and deliver, a new Security of like tenor and bearing the statement required by Act 354, or any applicable law hereafter enacted, in lieu of and in substitution for the Security so lost, destroyed or stolen. If any such Security shall have matured or shall be about to mature, the Transfer Agent may pay the same without surrender thereof as authorized by Act 354 instead of issuing a substitute Security.

## SECTION 4. FINANCIAL FACILITIES; HEDGES.

(A)  The Finance Director may, from time to time and at any time, obtain a Financial Facility in respect of all or some Securities if the Finance Director determines such to be in the best financial interests of the City.

(B)  The Finance Director may at any time acquire a Credit Enhancement to fulfill the City's obligation to fund any Reserve Account or substitute a Credit Enhancement for amounts in a Reserve Account. The Credit Enhancement shall be deposited with and payable to the Transfer Agent in its capacity as paying agent for the related Securities. Before or concurrently with the acquisition of such Credit Enhancement, the Finance Director shall receive:

(1)  an opinion of nationally recognized bond counsel to the effect that such substitution will not adversely affect the tax-exempt status of interest on any Securities;

(2)  evidence that such Credit Enhancement is provided by a provider rated in the highest rating category of each Rating Agency then rating the Securities having the benefit of such Reserve Account;

(3)  a copy of the Credit Enhancement; and

(4)  an opinion of counsel satisfactory to said nationally recognized bond counsel to the effect that the Credit Enhancement is valid and enforceable in accordance with its terms.

(C)    The Finance Director may, subject to the requirements of Act 34 or in accordance with any other applicable law, from time to time enter into such Hedges as the Finance Director determines to be in the best financial interests of the City.

(D)    The Finance Director may grant to the provider of any Financial Facility, or to any counterparty to any Hedge authorized by this Section, such rights as may be necessary or appropriate that are not inconsistent with this Ordinance, Act 34 or any other applicable law.

### SECTION 5. SECURITY FOR PAYMENT.

(A)    The payment of Secured Obligations is secured by a statutory lien, which is hereby created, upon the whole of the Pledged Assets subject to the use and application thereof in accordance with this Ordinance.

(B)    The lien securing Hedge Obligations is valid only to the extent permitted by law.

(C)    Except for Bond Insurance, a statement of the Priority of Lien of an Ancillary Obligation shall be contained in the instrument evidencing or providing for such Ancillary Obligation.

    (1)    An Ancillary Obligation in respect of Securities of the same Priority of Lien:

        (i)    may be secured at a lower Priority of Lien, but

        (ii)    may not be secured at a higher Priority of Lien.

    (2)    Ancillary Obligations may have a Priority of Lien lower than that of the Securities in respect of which such Ancillary Obligations have been entered into and may be Parity Ancillary Obligations to Securities to which they are otherwise unrelated; provided, that any lien securing Ancillary Obligations in respect of Senior Lien Bonds shall be subject to the rights of the holders of the City's outstanding Water Supply System Revenue Second Lien Bonds, Series 1995-A, except to the extent that such Ancillary Obligations arise in connection with a Financial Facility acquired to fund any portion of the Reserve Account or to be substituted for cash therein.

(D)    The lien securing the payment of a Secured Obligation is subject to the following Priorities:

    (1)    The lien securing Senior Obligations shall be a first lien, senior to all other liens created hereunder except the lien securing Ancillary Obligations Fees and Expenses which are further subject to the qualification of subsection (C)(2) above.

    (2)    The lien securing Junior Obligations shall be junior only to the lien securing Senior Obligations whenever issued. Among Junior Obligations:

        (i)    the lien securing Second Lien Bonds and Parity Ancillary Obligations thereto shall be senior to the liens securing all other Junior Obligations;

D-15

(ii)    the lien of each other Priority of Junior Obligations of the same Priority of Lien shall be senior to the lien of all lower Priorities of Junior Obligations; and

(iii)    the SRF Junior Lien Bonds shall be the lowest Priority of Junior Lien Bonds, and the lien securing SRF Junior Lien Bonds and related Ancillary Secured Obligations shall be junior to the liens securing all other Junior Obligations, whenever issued.

(E)    Each lien securing a Secured Obligation shall continue until either payment in full of such Secured Obligation or, in the case of Securities, is defeased as provided in Section 21 of this Ordinance. Ancillary Obligations shall be defeased in the manner provided in the agreement with the obligee of such Ancillary Obligations.

(F)    In accordance with this subsection, the City may provide for the accession of Junior Lien Bonds to the status of complete parity with Senior Obligations when there shall have been filed with the Commissioners a certificate satisfying the requirements of Section 20(C) from a national consulting firm or a national firm of certified public accountants, and further reciting the opinion:

(1)    that the Reserve Account contains an amount equal to the Reserve Requirement computed on a basis which includes all Securities then outstanding and such Junior Lien Bonds;

(2)    that all payments into the various funds and accounts hereinabove required to be held under this Ordinance are current as of the date of accession; and

(3)    that the Interest and Redemption Fund contains the amounts which would have been required to be accumulated therein on the date of accession if such Junior Lien Bonds had originally been issued as Senior Lien Bonds; such amounts shall be shown in said certificate.

The accession of such Junior Lien Bonds shall be conclusively evidenced by notice from the City to the Trustee and each Holder of such Junior Lien Bonds.

### SECTION 6. PAYMENT OF SECURED OBLIGATION; SUBORDINATION.

(A)    *Generally*. Secured Obligations are not general obligations of the City and shall be payable solely from Pledged Assets as provided in this Section:

(1)    Ancillary Obligation Fees and Expenses are payable from Revenues and, to the extent of any insufficiency, Pledged Assets.

(2)    All Securities and Ancillary Obligations are payable from Pledged Assets.

(B)   *Subordination.*

(1)   Whenever any principal (and premium, if any) of and interest on Securities of the same Priority of Lien or any payment on the Parity Ancillary Obligations thereto is due and is not made when due, then until such payment is made or provision made for the payment thereof to the satisfaction of the Holders of such Securities and the obligees of such Parity Ancillary Obligations, no such payment shall be made directly or indirectly on or in respect of any Securities of a lower Priority of Lien or any Ancillary Obligations which are Parity Ancillary Obligations to such Securities of lower Priorities of Lien (such Securities and Ancillary Obligations collectively, the "Subordinated Obligations" and the Holders and obligees thereof, the "Subordinated Obligees"), except as provided below with respect to defeased Securities.

(2)   Subject to the payment in full of all Securities and Ancillary Obligations of every higher Priority of Lien (collectively, the "Superior Obligations" and the Holders and obligees thereof, the "Superior Obligees"), the Subordinated Obligees shall be subrogated to the rights of the Superior Obligees to receive payment in full of the respective Obligations until all amounts owing on the Subordinated Obligations shall be paid in full.

(3)   Except as otherwise provided in a Supplemental Action, the City may agree with the Holders of Securities of any Priority of Lien and the obligee of any Parity Ancillary Obligations thereto to extend, renew, modify or amend the terms of such Securities or such Parity Ancillary Obligations thereto or any security therefor, and any such Holders or obligees may release, sell, exchange such security and otherwise deal freely with the City, and the City with any of them, all without notice to or consent of the Holders of any Securities of any lower Priority or the obligees under any Parity Ancillary Obligations thereto without affecting the liabilities of the City to such Holders or obligees.

(4)   Nothing in this subsection shall impair the right of the Holders of any defeased Securities to be paid from the escrow effecting such defeasance.

(C)   *Financial Facilities.*   Except as otherwise provided in a Supplemental Action:

(1)   Nothing in this Section shall affect the payment of Securities from any Financial Facility obtained for the benefit of such Securities.

(2)   No payment of an amount made by a drawing or disbursement under a Financial Facility to Holders of Securities which would otherwise have been made by the City shall be deemed to be a payment by the City on account of such Securities for the purpose of discharging the City's obligation on such Securities.

## SECTION 7. SECURITYHOLDERS' RIGHTS; RECEIVER.

(A)   The Holder or Holders of the Securities representing in the aggregate not less than 20% of the entire principal amount thereof then Outstanding, may, by suit, action, mandamus or other proceedings, protect and enforce the statutory lien upon Pledged Assets, and may, by suit, action, mandamus or other proceedings, enforce and compel performance of all

duties of the officers of the City, including the fixing of sufficient rates, the collection of Revenues, the proper segregation of the Revenues of the System and the proper application thereof. The statutory lien upon Pledged Assets, however, shall not be construed to give the Holders of the Securities the authority to compel the sale of the System or any part thereof.

(B)     If there is a default in the payment of the principal (and premium, if any) of and interest on any Securities, any court having jurisdiction in any proper action may appoint a receiver to administer and operate the System on behalf of the City and, under the direction of the court, perform all of the duties of the officers of the City more particularly set forth herein, in Act 94 and in such orders of the court.

(C)     The Holder or Holders of the Securities shall have all other rights and remedies given by Act 94 and by law for the payment and enforcement of the Securities and the security therefor.

## SECTION 8. MANAGEMENT.

The operation, repair and management of the System, including all projects financed by the issuance of Securities, shall remain under the supervision and control of the Commissioners in the manner provided in Article 7, Chapter 15 of the Charter of the City subject to the rights, powers and duties in respect thereto which are reserved by law and the City Charter to the Council.

## SECTION 9. FIXING AND REVISING RATES; RATE COVENANTS.

(A)     The coverage requirements for determining the Required Combined Coverage under this Section are the following percentages:

| Priority of Indebtedness | Percentage |
|---|---|
| Senior Lien Indebtedness | 120% |
| Second Lien Indebtedness | 110% |
| SRF Junior Lien Bonds | 100% |

Prior to or concurrently with the issuance of Securities of a Priority of Lien not enumerated above, this subsection shall be amended to provide for the coverage percentage for Indebtedness in respect of such Securities, but in no case shall the coverage percentage be less than 100. Such amendment shall not require the consent of Holders of any Securities.

(B)     The rates for water service and the regulations shall be the rates and regulations required to be established by Act 94. Such rates shall be fixed and revised from time to time as may be expected to be necessary to produce the greater of:

(1)     the amounts required:

(i)     to provide for the payment of the expenses for maintenance of the System as are necessary to preserve the same in good repair and working order; and

(ii)     to provide for the payment of Indebtedness coming due for the Fiscal Year of calculation; and

D-18

(iii) to provide for the creation and maintenance of reserves therefor as required by the Ordinance or any ordinance or resolution adopted in accordance with the terms thereof and hereof; and

(iv) to provide for such other expenditures and funds for the System as this Ordinance may require; and

(2) The Required Combined Coverage where the numerator is the Net Revenues projected for the Fiscal Year of calculation and the denominator is the Indebtedness coming due for such Fiscal Year.

(C) The City hereby covenants and agrees at all times to maintain such rates for services furnished by the System as shall be sufficient to provide for the foregoing and to repay any transfer from the Extraordinary Repair and Replacement Reserve Fund.

(D) Without taking into account any transfers from the Rate Stabilization Fund, the City shall at all times observe and comply with the covenant contained in subsection (B)(2) above as if the Rate Coverage Percentage were 100%.

(E) The charges for water service which are under the provisions of Section 21 of Act 94 are made a lien on all premises served thereby, unless notice (accompanied by a copy of the lease of the affected premises, if any,) is given to the Council that a tenant is responsible, are hereby recognized to constitute such lien and whenever any such charge against any piece of property shall be delinquent for six months, the City official or officials in charge of the collection thereof may certify to the tax assessing officer of the City not later than April 1 of each year the fact of such delinquency, whereupon such charge shall be entered upon the next tax roll as a charge against such premises and the lien thereof enforced in the same manner as general City taxes against such premises are collected and the lien thereof enforced; provided, however, where notice is given that a tenant is responsible for such charges and service as provided by said Section 21, no further service shall be rendered to such premises until a cash deposit equal to the estimated amount of the next ensuing bill shall have been made as security for payment of such charges and services.

(F) In addition to other remedies provided, the City shall have the right to shut off and discontinue the supply of water to any premises for the nonpayment of water rates when due.

## SECTION 10. NO FREE SERVICE OR USE; METERED SERVICE.

No free service or use of the System, or service or use of the System at less than cost, shall be furnished by the System to any person, firm or corporation, public or private, or to any public agency or instrumentality, including the City and any other municipality. All service provided to customers of the System, with the exception of temporary connections and certain public service uses of the City which are billed on an estimated basis, shall be metered.

## SECTION 11. OPERATING AND FISCAL YEAR.

The System shall be operated on the basis of the Fiscal Year.

## SECTION 12. FUNDS AND ACCOUNTS; FLOW OF FUNDS.

(A) **Establishment of Funds and Accounts.**

    (1)    The following funds and accounts are hereby established:

- Water Supply System Receiving Fund
- Operation and Maintenance Fund
- Senior Lien Bond Interest and Redemption Fund
  - Senior Lien Debt Service Account
  - Senior Lien Bond Reserve Account
- Second Lien Bond Interest and Redemption Fund
  - Second Lien Debt Service Account
  - Second Lien Bond Reserve Account
  - SRF Junior Lien Bond Interest and Redemption Fund
  - SRF Junior Lien Debt Service Account
  - No SRF Junior Lien Bond Reserve Account is established
- Such Interest and Redemption Funds as are established by Supplemental Action for other Junior Lien Bonds of the same Priority of Lien
- Extraordinary Repair and Replacement Reserve Fund
- Improvement and Extension Fund
- Surplus Fund

    (2)    Additional funds and accounts may be established for other Securities of the same Priority of Lien by Supplemental Action of the Finance Director.

(B) **Flow of Funds.**

All Revenues shall be set aside as collected and credited to the Receiving Fund. As received, amounts credited to the Receiving Fund shall be transferred *seriatim* into the following funds and accounts but only within the respective limitations and only if the maximum amount within such limitation has been transferred to the preceding fund or account:

<u>First</u>: to the Operation and Maintenance Fund, a sum sufficient to provide for the payment of the next month's expenses of administration and operation of the System (including Ancillary Obligation Fees and Expenses) and such current expenses for the maintenance thereof as may be necessary to preserve the same in good repair and working order;

<u>Second</u>: to the Senior Lien Debt Service Account, an amount that, when added to all other amounts then on deposit therein, shall equal the Debt Service Installment Requirement for Senior Lien Obligations as of the first day of such month;

<u>Third</u>: to the Senior Lien Bond Reserve Account, an amount that when added to all other amounts then on deposit therein shall equal the Reserve Requirement for Senior Lien Bonds;

<u>Fourth</u>: to the Interest and Redemption Fund established for each Priority of Junior Lien Bonds, beginning with the Second Lien Bonds and continuing in descending order of Priority of Lien to, and including, each Priority of Lien of Junior Lien Bonds:

<u>first</u>: to the Debt Service Account established for such Priority of Lien, an amount that, when added to all other amounts then on deposit therein, shall equal the Debt Service Installment Requirement for Junior Obligations of such Priority of Lien as of the first day of such month;

<u>second</u>: to the Reserve Account, if any, established for such Priority of Lien an amount that when added to all other amounts then on deposit therein shall equal the Reserve Requirement for such Priority of Lien of Junior Lien Bonds;

<u>Fifth</u>: to the Extraordinary Repair and Replacement Reserve Fund, the amount of the Extraordinary Repair and Replacement Minimum Requirement so long as the balance thereof is less than the Extraordinary Repair and Replacement Maximum Requirement <u>except</u> that an amount withdrawn from such Fund pursuant to Section 13D shall be deducted from the Extraordinary Repair and Replacement Maximum Requirement in the Fiscal Year of withdrawal; and

<u>Sixth</u>: to the Improvement and Extension Fund, such amount, if any, that the Commissioners may deem advisable; provided that no amount shall be deposited therein or credited thereto for so long as a borrowing from the Extraordinary Repair and Replacement Reserve Fund remains unpaid.

## SECTION 13. USE AND APPLICATION OF AMOUNTS IN FUNDS.

(A)    *Receiving Fund.*

(1)    Amounts in the Receiving Fund shall be applied as received as provided in Section 12. Amounts not transferred to any other fund or account shall remain in the Receiving Fund until the last day of each Fiscal Year.

(2)    Amounts remaining in the Receiving Fund as of the last day of each Fiscal Year shall be transferred to the Surplus Fund.

(B)    *Operation and Maintenance Fund.*

Amounts in the Operation and Maintenance Fund shall be used to pay the expenses of administration and operation of the System (including Ancillary Obligation Fees and Expenses and any rebates to the United States government that may be required by the Code) and such current expenses for the maintenance thereof as may be necessary to preserve the same in good repair and working order.

(C)    *Interest and Redemption Funds.*

(1)    <u>Generally</u>. Amounts in the Interest and Redemption Fund established for Securities and for Ancillary Obligations of the same Priority of Lien shall be ap-

D-21

plied to pay principal (and redemption premium, if any) of and interest on such Securities and amounts due on such Ancillary Obligations.

(2)    <u>Mandatory Redemption Requirements</u>.

(i)    A Mandatory Redemption Requirement for a maturity of Term Securities may be satisfied in whole or in part by the redemption of Term Securities of such maturity or by the purchase and surrender to the Transfer Agent of such Term Securities from amounts credited to the Interest and Redemption Fund established for such Securities of Priority of Lien or purchased with other funds legally available therefor. The Finance Director shall elect the manner in which he/she intends to satisfy all or a portion of a Mandatory Redemption Requirement for particular Term Securities not less than 40 days prior to the due date of such Mandatory Redemption Requirement unless otherwise provided in the Supplemental Action providing for the issuance of such Term Securities.

(ii)    Unless otherwise provided in a Supplemental Action providing for the issuance of Term Securities, the City will receive a credit against the Mandatory Redemption Requirement for Term Securities for which such Mandatory Redemption Requirement was established that have been redeemed (other than by application of Mandatory Redemption Requirements) or otherwise acquired by the City prior to the giving of the notice of redemption and that have not been applied as a credit against any other Mandatory Redemption Requirements.

(a)    Not less than 40 days prior to any mandatory redemption date for Term Securities, the Finance Director shall give notice to the Transfer Agent that such Term Securities are to be so credited.

(b)    Each such Term Security shall be credited by the Transfer Agent at 100% of the principal amount thereof against the Mandatory Redemption Requirement, and the principal amount of Term Securities to be redeemed on such mandatory redemption date shall be reduced accordingly and any excess over such amount shall be credited to future Mandatory Redemption Requirements in such order as the Finance Director shall direct; <u>provided, however</u>, that any excess resulting from the purchase, at less than par, of such Term Securities shall be credited to the Receiving Fund.

(3)    <u>Reserve Accounts</u>.

(i)    Except as otherwise provided herein, amounts in a Reserve Account shall be used solely for the payment of the principal (and premium, if any) of and interest on Securities and Ancillary Obligations of the same Priority of Lien for which such Reserve Account was established, as to which there would otherwise be default.

(ii)    If at any time the amount on deposit in or credited to a Reserve Account exceeds the Reserve Requirement for such Reserve Account, the amount of such excess may be transferred therefrom and credited to the Receiving Fund.

(iii)    No further payments need be made into an Interest and Redemption Fund in respect of principal and interest after enough of the Securities for which such Fund was established have been retired so that the amount then held in such Fund, including the Reserve

Account therein, if any, is equal to the entire amount of principal and interest which will be payable at the time of maturity of all the then Outstanding Securities of such Priority of Lien.

(iv)     A separate Reserve Account may be established for an issue of Securities by the Supplemental Action providing for the issuance of such Securities.

(a)     Securities having the benefit of such Reserve Account may be issued but only if such separate Reserve Account is fully equal to the Reserve Requirement for such Securities concurrently with the issuance of such Securities.

(b)     The amounts to be paid into any separate Reserve Account to restore it to its Reserve Requirement shall be made on a parity with payments into all other Reserve Accounts established for Securities of the same Priority of Lien and shall not exceed, in any Fiscal Year, its proportionate deficit payment. "Proportionate Deficit Payment" means for a separate Reserve Account the same proportion that the amount available to remedy deficits in each Reserve Account for such Priority bears to the aggregate deficit in all Reserve Accounts for such Priority.

(D)     ***Extraordinary Repair and Replacement Reserve Fund***.

(1)     Amounts in the Extraordinary Repair and Replacement Reserve Fund may be used to pay the costs of making major unanticipated repairs and replacements to the System which individually have cost or are reasonably expected to cost in excess of $1,000,000 as determined by the Commissioners.

(2)     On and after the first day of each Fiscal Year, the Finance Director may, by Supplemental Action, transfer to the Improvement and Extension Fund not more than 50% in aggregate of the balance in this Fund on the first day of such Fiscal Year if, but only if (i) in the month of such transfer the full amount of the Extraordinary Repair and Replacement Minimum Requirement for each prior month in the current Fiscal Year has been credited to this Fund and (ii) the amounts of all prior transfers from this Fund to the Improvement and Extension Fund have been restored in full.

(3)     The City shall fix rates and charges for the services supplied by the System sufficient to permit it to meet its obligations under Section 13D.

(E)     ***Improvement and Extension Fund***.

The Improvement and Extension Fund shall be used for improvements, enlargements, extensions or betterment to the System.

(F)     ***Surplus Fund***.

Amounts from time to time on hand in the Surplus Fund may, at the option of the Commissioners, be used and applied for any purposes related to the System for which the funds and accounts were established hereunder or for any other lawful purpose of the System; provided, however, that if and whenever there should be any deficit in the Operation and Maintenance Fund or in any Interest and Redemption Fund (including any Reserve Account therein) then transfers shall be made from the Surplus Fund to such funds in the priority and order named in Section 12 to the extent of any such deficit.

(G)  *Rate Stabilization Fund*

(1)  As used in this Section, "Prior Revenue" means any amounts that constitute Revenues or Net Revenues and held under this Ordinance but only to the extent that such amounts may be applied to any lawful purpose of the System. "Prior Revenue" does not include any amounts held under this Ordinance that at the time are restricted in application to a specific purpose, such as, by way of illustration, the application of amounts in the Surplus Fund in the event of a deficit as provided in the proviso to Section 13(F).

(2)  The Commissioners may create a fund designated Water Supply System Rate Stabilization Fund (the "Rate Stabilization Fund"). No amounts shall be deposited therein or credited thereto except Prior Revenues and then only if:

(i)  such Prior Revenue is credited to the Rate Stabilization Fund in the Fiscal Year in which it was recognized by the City as Net Revenue or within 90 days after the end of such Fiscal Year;

(ii)  the amount of such Prior Revenue is deducted from the amount of Net Revenue recognized in such Fiscal Year for all purposes of this Ordinance; and

(iii)  the amount of Net Revenue recognized in such Fiscal Year at least meets the minimum applicable coverage requirements of this Ordinance for such Fiscal Year after (i) such deduction and (ii) all prior deductions in respect of such Fiscal Year pursuant to this clause.

(3)  Amounts on deposit in the Rate Stabilization Fund may be taken into account with respect to any Coverage Determination.

(4)  Whenever any Reserved Amount is taken into account for any Coverage Determination, then such Reserved Amount shall be credited to the Receiving Fund for the Fiscal Year for which such Coverage Determination is made.

(5)  Prior to the transfer of any Reserved Amount to the Receiving Fund, such Reserved Amount shall not be used or applied to any purpose except pursuant to Section 16 and then only after all other amounts then in the Rate Stabilization Fund have been applied pursuant to Section 16.

(6)  Amounts on deposit in the Rate Stabilization Fund other than Reserved Amounts may be applied to any lawful purpose of the System.

## SECTION 14. CONSTRUCTION FUND.

(A)  There shall be established and maintained a separate depository fund designated the Construction Fund. The City may designate separate accounts in the Construction Fund for different series of Securities for administrative purposes and to better enable the City to comply with its tax covenants in Supplemental Actions regarding the exclusion from federal income taxation of interest on Securities.

(B)    Amounts in the Construction Fund shall be applied solely in payment of the cost of repairs, extensions, enlargements, and improvements to the System and any costs of engineering, legal, bond insurance premiums, if any, and other expenses incident thereto, to the financing thereof.

(1)    Payments of the cost of repairs, extensions, enlargements and improvements to the System, either on account or otherwise, shall not be made unless the registered engineer in charge of such work shall file with the Commissioners a signed statement to the effect that the work has been completed in accordance with the plans and specifications therefor; that it was done pursuant to and in accordance with the contract therefor; that such work is satisfactory; and that such work has not been previously paid for.

(2)    Payment of the cost of engineering, legal, financial, bond insurance premium, etc., as provided in this Section shall be made under such procedures as established by and upon submission of appropriate documentation to the Finance Director.

(C)    Any unexpended balance remaining in the Construction Fund may in the discretion of the Commissioners be used for meeting any Reserve Requirement or for further improvements, enlargements and extensions to the System if, at the time of such expenditure, such use is approved by the Michigan Department of Treasury, if such permission is then required by law. Any remaining balance after such expenditure shall be paid into the Interest and Redemption Fund established for the Securities of the Priority of Lien giving rise to such balance for the purpose of purchasing Securities of such Priority at not more than the fair market value thereof but not more than the price at which such Securities may next be called for redemption or used for the purpose of calling such Securities for redemption. The City may provide additional or different lawful uses for such unexpended balance or remaining balance by Supplemental Action of the Finance Director which shall, nonetheless, be subject to receipt of a Bond Counsel's Opinion that such use is permitted by applicable law and will not adversely affect the tax exempt status of Outstanding Securities.

### SECTION 15. DEPOSITARIES.

(A)    Amounts in the several funds, accounts and subaccounts established pursuant to this Ordinance shall be kept in one or more accounts separate and apart from all other accounts of the City, and if kept in only one account shall be allocated on the books and records of the City in the manner and at the times provided in this Ordinance.

(B)    Amounts in the Interest and Redemption Fund for Securities of the same Priority of Lien shall be kept on deposit with one of the banks or trust companies where the principal of and interest on such Securities are payable.

(C)    The depositary of all funds and accounts, except as otherwise specifically provided for herein, shall be those banks or trust companies designated from time to time as such by the Finance Director.

### SECTION 16. PRIORITY OF FUNDS.

(A)    If amounts in the Receiving Fund are insufficient to provide for the current requirements of the Operation and Maintenance Fund and each Interest and Redemption Fund (including

D-25

the Reserve Account, if any, therein), then any amounts or securities held in the Surplus Fund, the Improvement and Extension Fund and the Extraordinary Repair and Replacement Reserve Fund shall be credited or transferred, first, to the Operation and Maintenance Fund and second, to the particular Interest and Redemption Fund, to the extent of the insufficiency therein from the aforesaid funds in the order listed.

(B)     If any principal (and redemption premium, if any) of or interest on Securities of the same Priority of Lien or any related Ancillary Obligations become due (whether on a stated or scheduled date, by reason of call for redemption or otherwise), and there are insufficient amounts for the payment thereof in the Interest and Redemption Fund established for such Securities and Ancillary Obligations after applying payments in the Reserve Account, if any, established for such Securities, then there shall be applied to such payment amounts in each Interest and Redemption Account established for Securities of each lower Priority of Lien, beginning with the lowest Priority of Lien and proceeding *seriatim* in ascending order of Priority of Lien, until such payments are made in full.

### SECTION 17. INVESTMENTS.

(A)     *Permitted Investments*. The Permitted Investments for amounts held under this Ordinance are the Legal Investments for such amounts subject to the following:

(1)     Investment of amounts in any Reserve Account shall be limited to obligations bearing maturity dates or subject to redemption, at the option of the Holder thereof, not later than ten years from the date of the investment.

(2)     Except as otherwise herein provided, investments shall mature at such times as it is estimated the funds therefrom will be required, but shall be limited to obligations bearing maturity dates or subject to redemption, at the option of the Holder thereof, not later than five years from the date of investments.

(3)     A Supplemental Action may provide for limitations in addition to or in lieu of the above limitations on Legal Investments or may eliminate any of such limitations.

(4)     Notwithstanding paragraph (3), no Permitted Investments for the defeasance of particular Securities may be changed without confirmation from each Rating Agency that such change will not reduce the rating of such Securities.

(B)     *Where Held*. To the extent required by Act 94, securities representing investments made under this Ordinance shall be kept on deposit with the bank or trust company having on deposit the fund or funds or accounts from which the purchase was made.

(C)     *Disposition of Profit and Gain*.

(1)     Profit realized or interest income earned on investment of amounts in the Receiving Fund, Operation and Maintenance Fund, any Interest and Redemption Fund (including the Reserve Account, if any, therein), the Extraordinary Repair and Replacement Reserve Fund, and Improvement and Extension Fund shall be credited to the Receiving Fund.

(2)     Profit realized or interest earned on investments of funds in the Construction Fund relating to any series of Securities and any Redemption Account (including any Re-

serve Account or Subaccount established for any Securities) shall be credited as received to the funds from which such investments were made; provided, however, that profit realized or interest earned on the Construction Fund relating to any series of Securities may, if permitted by law, be credited to the Receiving Fund at the option of the Commissioners.

(D)  *Valuation.*

(1)  Investments credited to any Reserve Account shall be valued at least annually on each January 1, unless otherwise specified in the Supplemental Action providing for the issuance of such Securities, at the market value thereof, and the City shall withdraw any excess immediately and, in the event of a deficit, budget such additional deposits at the beginning of the next succeeding Fiscal Year in an amount necessary to maintain each Reserve Account at its Reserve Requirement.

(2)  Investments in the Extraordinary Repair and Replacement Reserve Fund shall be valued at least annually on each July 1 at the cost thereof.

## SECTION 18. COVENANTS.

The City covenants and represents with the Holders of all Securities from time to time Outstanding that so long as any Securities remain Outstanding, as follows.

(A)  *Ownership and Authority.*  The City is the lawful owner of the System; the System is free from any and all liens and encumbrances; and the City has good right and lawful authority to encumber and pledge the Pledged Assets as herein encumbered and pledged.

(B)  *Maintenance and Operation of System.*

(1)  The City will, through its Commissioners, or such successor board or body as may hereafter be legally charged with the duty of the operation of the System, maintain the System in good repair and working order and will operate it efficiently and will faithfully and punctually perform all duties with reference to the System required by the Constitution and laws of the State, including the making and collecting of sufficient rates for services rendered by the System and the segregation and application of the revenues of the System in the manner provided in this Ordinance.

(2)  The City will from time to time make all needed and proper repairs, replacements, additions, and betterments to the System so that the System may at all times be operated properly and advantageously, and whenever any portion of the System shall have been worn out, destroyed or become obsolete, inefficient or otherwise unfit for use, the City will procure and install substitutes of at least equal utility and efficiency so that the value and efficiency of the System shall at all times be fully maintained.

(C)  *Books and Records.*  The City will maintain and keep proper books of record and account separate from all other records and accounts in which shall be made full and correct entries of all transactions relating to the System, and the City will also cause an annual audit of such books and records for the preceding Fiscal Year to be made by an accountant who shall comment on the man-

ner in which the City has complied with the requirements of this Ordinance. The City will make such audit available to the Holder of any Security upon request.

(D)  **Disposition of System**. The City will not sell, lease or dispose of the System or any substantial part thereof until all Outstanding Securities have been paid in full as to both principal and interest.

(1)  This covenant shall not be construed to prohibit the disposition or lease of any property comprising part of the System which is no longer necessary, appropriate, required for the use of, or profitable to the System, or which is no longer necessary to the proper operation and maintenance thereof, or which may be sold and leased back to the extent such arrangement is permitted by law.

(2)  Paragraph (1) shall not be construed to authorize or permit the sale, lease or disposition of any substantial part of the System.

(3)  The City may at all times in its discretion alter, repair or replace any buildings or structures, make any change in the location of its water mains, pipes, water supply tunnels, aqueducts, pumping stations, and appurtenances thereto, and any buildings or structures therefor as the Commissioners determine necessary for the System.

(4)  The City will acquire and construct all extensions, enlargements, and improvements to the System promptly in accordance with the plans therefor.

(E)  **No Competition**. The City will not, and will not to the extent permitted by law, permit others to operate a water supply system that will compete with the System.

(F)  **Tax Exemption of Securities**. The City will take all action and refrain from any action as is necessary, including paying any rebates to the United States government that may be required by the Code so as not to impair the tax exemption of the interest on Securities issued as tax-exempt Securities from general federal and State of Michigan income taxation.

**SECTION 19. TRUSTEE.**

(A)  **Requirement to Maintain**. The City shall at all times maintain a Trustee in order to further assure prompt compliance with all of the requirements, duties and obligations of the City with respect to the System and the Securities and to perform such other duties as may be provided in a Supplemental Action; provided that no such additional duties shall be imposed on an existing Trustee without its consent. U.S. Bank National Association is hereby appointed as Trustee. The Financial Director is authorized to select and appoint any successor bank or trust company to perform the duties of the Trustee.

(B)  **Resignation of Trustee**. The Trustee may resign by giving not less than 60 days' written notice to the City specifying the date when such resignation shall take effect, and such resignation shall take effect upon the date specified in such notice provided a successor trustee has been appointed, unless previously a successor shall have been appointed, as provided in subsection (D) below, in which event such resignation shall take effect immediately on the appointment and accep-

D-28

tance of such successor, provided further that if a successor trustee shall not have been appointed the Trustee may petition a court of competent jurisdiction to appoint a successor trustee.

(C) **_Removal of Trustee_**. The Trustee shall be removed at any time by an instrument or concurrent instruments in writing, filed with the Trustee and the City, and signed by the Holders of a majority in principal amount of the outstanding Securities. In addition, as long as no event of default exists under the Ordinance, the City, upon 60 days notice to the Trustee, shall have the right to remove the Trustee by an instrument in writing filed with the Trustee.

(D) **_Appointment of and Transfer to Successor Trustee_**. If the Trustee shall resign or shall be removed, or shall become incapable of acting, or shall be adjudged bankrupt or insolvent, or if a receiver, liquidator or conservator of the Trustee, or of its property, shall be appointed, or if any public officer shall take charge or control of the Trustee, or of its property or affairs, a successor may be appointed by the holders of a majority of aggregate principal amount of Securities then outstanding, in the case of removal by the Holders, or by the City, in the case of removal by the City, by an instrument or concurrent instruments in writing of such Holders; provided, however, that in case of such vacancy the Finance Director shall forthwith appoint a Trustee, provided no event of default exists under the Ordinance, to fill such vacancy unless and until a successor Trustee shall be appointed by the Bondholders. At any time, the Trustee may substitute any affiliate, subsidiary, or successor in interest after a merger or consolidation in any and all capacities to which it is appointed hereunder as long as the entity so substituted is qualified to accept such appointment pursuant to all applicable statutory and regulatory requirements, and any requirements contained in this Ordinance. The rights, duties and substitution of the Trustee shall be governed by and construed in accordance with the laws of the State. If the Trustee substitutes an affiliate or subsidiary as Trustee or consolidates, merges or converts into, or transfers all or substantially all of its corporate trust business to, another corporation or other entity entitled to conduct said trustee business under applicable law, the successor without any further act shall be the successor of the Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything to the contrary contained herein notwithstanding.

Any successor Trustee shall be a trust company or bank in good standing, within the State, acceptable to the Finance Director, provided no event of default exists, and having total reported capital funds of not less than $40,000,000 if there be such an institution willing, qualified and able to accept the trust upon reasonable and customary terms.

Any successor Trustee appointed hereunder shall execute and deliver to its predecessor and the City an instrument in writing accepting such appointment and thereupon shall become fully vested with all the powers and duties under this Ordinance. The Trustee, if it ceases to act as Trustee, shall execute, acknowledge and deliver such instruments of conveyance and further assurance and do such other things as may reasonably be required for more fully and certainly vesting and confirming in such successor Trustee all the trusts, powers and duties under this Ordinance and any property held by it under this Ordinance, and shall, after all amounts owing to the Trustee have been paid in full, pay over, assign and deliver to the successor Trustee any money or other property subject to the trusts and conditions herein set forth.

(E) **_Fees, Costs and Expenses_**. All fees, costs, and expenses of any legal proceedings that may be brought by the Trustee to enforce the duties and obligations of the City hereunder or under

D-29

any Securities and any amounts advanced by Securityholders to the Trustee for such costs and expenses shall be paid by the City to the Trustee or such Securityholders, or both, as the case may be, in the first instance from the Net Revenues remaining, in the month of payment, after making the transfers and deposits required by Section 12 to all Interest and Redemption Funds (including the Reserve Account, if any, therein), and, to the extent that sufficient amounts are not available from the Revenues therefor, from general funds of the City.

(F) *Advancement of Costs and Expenses.* In the event that general funds of the City are used to pay any such costs and expense, the City shall be reimbursed therefor with interest at the rate of 7% per annum from the first Net Revenues remaining, in the month of reimbursement, after (i) making the transfers and deposits required by Section 12 to all Interest and Redemption Funds (including the Reserve Account, if any, therein) and (ii) paying the Trustee or Securityholders as provided in subsection (b).

(G) *Reliance of Trustee; Standard of Care.* The Trustee is authorized to act in reliance upon the sufficiencies, correctness, genuineness or validity of any instrument or document or other writing submitted to it hereunder and shall have no liability with respect to said matters. The Trustee shall not be liable for any error in judgment or any act done or omitted by it in good faith. In the event of any dispute or question arising hereunder the Trustee shall not be liable if it acts or takes no action in accordance with the opinion of its legal counsel.

(H) *Indemnification of Trustee.* In the event the required percentage of Securityholders shall direct the Trustee in writing to exercise one or more of the remedies specified in this Ordinance or in Act 94, the Trustee shall be under no obligation to proceed to enforce or compel the performance of the duties and obligations of the City under this Ordinance unless and until the Holders shall have reasonably indemnified the Trustee for all estimated costs and expenses in the exercise of said remedies, including necessary attorneys' fees.

### SECTION 20. ADDITIONAL SECURITIES.

(A) *Limitations on Indebtedness.*

The City shall not incur any obligations payable from Pledged Assets except for Secured Obligations, and no obligations of the City shall be secured by a lien on Pledged Assets except as provided in this Ordinance.

(B) *Issuance of Securities.*

(1) Limitations on Issuance.

(a) The City shall not issue any Securities except in accordance with Section 20. Ancillary Obligations and related Ancillary Obligation Fees and Expenses may be incurred in respect of such Securities and shall be secured and payable as elsewhere provided in this Ordinance.

(b) Other limitations on the issuance of Securities may be added by Supplemental Action.

D-30

(2)    *Coverage Requirements.*  The coverage requirements for determining the Required Combined Coverage under this Section are the following percentages:

| Priority of Securities | Percentage |
|---|---|
| Senior Lien Bonds | 120% |
| Second Lien Bonds | 110% |
| SRF Junior Lien Bonds | 100% |

Prior to or concurrently with the issuance of a Priority of Securities not enumerated above, this subsection shall be amended to provide for the coverage percentage for such Priority of Securities, but in no case shall such coverage percentage be less than 100. Such amendment shall not require the consent of Holders of any Securities.

(3)    *Refunding Securities.*  If any Refunding Securities are to be issued to refund Securities to be Refunded, the Annual Debt Service to be used for determining the Required Combined Coverage shall be the Annual Debt Service on the Refunding Securities and not the Annual Debt Service on the Securities to be Refunded.

(C)    *"New Money" and Refunding.*

(1)    General Authority.  The City may issue Additional Securities of any Priority of Lien for repairs, extensions, enlargements, and improvements to the System (including repaying amounts withdrawn from the Extraordinary Repair and Replacement Reserve Fund ), refunding all or a part of any Outstanding Securities and paying the costs of issuing such Additional Securities, including deposits, if any, to be made to any Reserve Account established or to be established for such Additional Securities or any other Securities, if, but only if, there is Required Combined Coverage under either the Projected Net Revenues Test contained in subsection C(2) below or the Historical Net Revenues Test contained in subsection C(3) below. The determination in a Supplemental Action that there will be Required Combined Coverage upon the issuance of such Additional Securities shall be conclusive.

(2)    Projected Net Revenues Test.  For purposes of determining the Required Coverage Requirement, the numerator is the projected Net Revenues of the System for the then current or the next succeeding Fiscal Year and the denominator is the maximum composite Annual Debt Service in any Fiscal Year on Outstanding Securities and the Additional Securities to be issued.

(i)    Projected Net Revenues may include 100% of the estimated increase in Net Revenues to accrue as a result of the acquisition of the repairs, extensions, enlargements and improvements to the System to be paid for in whole or in part from the proceeds of the Additional Securities.

(ii)    In projecting Net Revenues, the City shall engage the services of and be guided by a consultant of national reputation for advising municipalities with respect to setting rates and charging for the use of water supply systems.

D-31

(3)    <u>Historical Net Revenues Test</u>.  For purposes of determining the Required Coverage Requirement, the numerator is the actual Net Revenues of the System for the immediately preceding audited Fiscal Year and the denominator is the maximum composite Annual Debt Service in any future Fiscal Year on Outstanding Securities and the Additional Securities to be issued.

(i)    Instead of the immediately preceding audited Fiscal Year, the City may use any audited Fiscal Year ending not more than sixteen months prior to the date of delivery of such Additional Securities.

(ii)    If any change in the rates, fees and charges of the System has been authorized at or prior to the date of sale of such Additional Securities, the Net Revenues for the particular preceding Fiscal Year shall be augmented by an amount reflecting the effect of such change had the System's billings during such Fiscal Year been at the increased rates.

(iii)    Net Revenues for the particular preceding audited Fiscal Year also may be augmented by 100% of the estimated increase in Net Revenues to accrue as a result of the acquisition of the repairs, extensions, enlargements and improvements to the System to be paid for in whole or in part from the proceeds of such Additional Securities and 100% of any acquisition, extension or connection which was made subsequent to the end of the particular preceding audited Fiscal Year.

(iv)    With respect to augmentation of Net Revenues, the City shall engage the services of and receive the certificate of a consultant of national reputation for advising municipalities with respect to setting rates and charges for the use of water supply systems regarding the existence of such conditions.

(v)    Audited financial statements may be relied upon if no augmentation of Net Revenues is required.

(D)    ***Debt Service Reduction – An Additional Means of Refunding.***

The City may issue Additional Securities of any Priority of Lien without regard to Section 20C for refunding all or part of Securities then Outstanding and paying costs of issuing the Refunding Securities, including deposits which may be made to any Reserve Account established or to be established for such Additional Securities or any other Securities <u>if, but only if</u>:

(1)    the combined Annual Debt Service coming due in the current Fiscal Year and each Fiscal Year thereafter until maturity on (A) the Additional Securities and (B) giving effect to the refunding, all Outstanding unrefunded Securities of equal and higher Priority of Lien <u>is less than</u>

D-32

(2)     the combined Annual Debt Service coming due in the current Fiscal Year and each Fiscal Year thereafter until maturity on all securities of an equal and higher Priority of Lien, without giving effect to the refunding.

## SECTION 21. DEFEASANCE.

(A)     A Security is "defeased" for purposes of this Ordinance if:

(1)     there has been deposited in trust sufficient cash and Permitted Investments constituting Government Obligations, not callable by the issuer, the principal of and interest on which mature at the times and in the amounts, without the reinvestment thereof, necessary to pay principal of and interest on such Security to its maturity, or, if called for redemption, to the date fixed for redemption, together with the amount of the redemption premium, if any; provided, however, that the sufficiency of the deposit to effectuate the defeasance of a Security shall have been verified by a nationally recognized accounting firm.

(2)     if such Security is to be redeemed prior to maturity, irrevocable instructions have been given to the Transfer Agent to call such Security for redemption; and

(3)     Nothing in this subsection (A) shall affect any lien securing Ancillary Obligations except as provided in the agreement with the obligee of such Ancillary Obligations.

(B)     A Supplemental Action providing for the issuance of Securities may:

(1)     provide different means of defeasing such Securities, and such means may be in addition to or in lieu of the means set forth in subsection (A);

(2)     provide for the Legal Investments that are Permitted Investments for the defeasance of such Securities, but no such Permitted Investments may thereafter be changed except as provided in Section 18; and

(3)     provide for the consequences of such Securities being defeased.

(C)     Except as otherwise provided in a Supplemental Action:

(1)     the Legal Investments for the defeasance of such Securities are the Permitted Investments therefor; and

(2)     the statutory lien herein referred to in Section 5 shall be terminated with respect to defeased Securities, the Holders of such defeased Securities shall have no further rights under this Ordinance except for payment from the deposited funds and registration and replacement of such Securities, and such Securities shall no longer be considered to be Outstanding under this Ordinance.

D-33

## SECTION 22. AMENDMENTS; CONSENT OF SECURITYHOLDERS.

(A) *Amendment without Consent.*

(1) This Ordinance may be amended or supplemented from time to time by Act of Council or Supplemental Action without consent of the Holders of Securities:

    (a) To issue Securities of any Priority;

    (b) To add to the covenants and agreements of the City in this Ordinance contained, other covenants and agreements thereafter to be observed or to surrender, restrict or limit any right or power reserved to or conferred upon the City (including but not limited to the right to issue Securities or incur other Secured Obligations of, in either case, any Priority);

    (c) To make such provisions for the purpose of curing any ambiguity, or curing, correcting or supplementing any defective provisions contained in this Ordinance, or in regard to matters or questions arising under this Ordinance, as the City may deem necessary or desirable;

    (d) To increase the size or scope of the System; and

    (e) To amend or supplement this Ordinance in any respect with regard to Securities of one or more Priorities of Lien so long as such amendment does not materially adversely affect the Holders of Outstanding Securities.

(2) No Holders of Securities of a Priority of Lien shall be "materially adversely affected" for the purposes of this Ordinance by the change of any coverage percentage established for Securities of any other Priority of Lien, and no amendment of or supplement to this Ordinance that provides for or facilitates the issuance of Securities or incurs other Secured Obligations of, in either case, of any Priority of Lien shall "materially adversely affect" the Holders of Securities of any other Priority of Lien for the purposes of this Ordinance so long as such amendment does not change any coverage percentage established for such Priority of Lien or is not an amendment that requires the consent of the Holder of such Security under Section 22B(i) or (ii).

(B) *Amendments With Consent.*

(1) With the consent of the Holders of not less than 51% in principal amount of Securities then Outstanding affected thereby, the City may from time to time and at any time amend this Ordinance in any manner by Act of Council; provided, that no such amendment shall:

    (i) reduce the aforesaid percentage of Holders of Securities required to consent to an amendment to this Ordinance without the consent of the Holders of all Securities then Outstanding, or

    (ii) without the consent of the Holder of each Security affected thereby:

      (a)   extend the fixed maturity of such Security or reduce the rate of interest thereon or extend the time of payment of interest, or reduce the amount of the principal or redemption premium thereof, or reduce or extend the time for payment of any premium payable on the redemption thereof, or

      (b)   change the Priority of Lien of such Security or deprive such Holder of the right to payment of such Security from Pledged Assets.

    (2)   It shall not be necessary for the consent of the Securityholders under this Section to approve the particular form of any proposed Act of Council but it shall be sufficient if such consent shall approve the substance thereof. The consent of the Holder of a Security shall bind all Holders of any Security for which such Security was the predecessor.

    (3)   For the purpose of acquiring consent for the purposes of this Section, the consent of a Securityholder acquiring a Security in an offering remarketing in which the offering or remarketing circular or other disclosure document fully disclosed the terms of such amendment or supplement shall be considered obtained as if such consents were being solicited under this Section, but no actual consent shall be required, and no more than one such disclosure shall be required.

    (4)   Promptly after an Act of Council amending this Ordinance pursuant to this Section has obtained the requisite consent, the Finance Director shall cause the Transfer Agent to notify, by mail at their addresses shown in the Registry, or by publication, Holders of all Outstanding Securities affected by such amendment, of the general terms of the substance of such Act of Council. Filing notice pursuant to the continuing disclosure agreement in respect of such Securities shall constitute sufficient notice for the purposes of this subsection.

    (5)   No amendment may be made under this Section 22(B) which affects the rights of the insurer or obligee of a Financial Facility or counterparty to a Hedge without its consent.

### SECTION 23.SEVERABILITY AND CAPTIONS.

    (A)   If any section, paragraph, clause or provision of this Ordinance shall be held invalid, the invalidity of such section, paragraph, clause or provision shall not affect any other provision of this Ordinance.

    (B)   Captions of sections and paragraphs of this Ordinance are furnished for the convenience of reference only and are not part of this Ordinance.

### SECTION 24.PUBLICATION AND RECORDATION.

This Ordinance shall be published in full in the "Detroit Legal News", a newspaper of general circulation in the City qualified under State law to publish legal notices, promptly after its adoption.

**SECTION 25. EFFECTIVE DATE.**

This Ordinance shall be effective immediately.


**Approved as to Form**


_____

Corporation Counsel