UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

---

In re

CITY OF DETROIT, MICHIGAN

Debtor.

Chapter 9

Case No. 13-53846

Hon. Steven W. Rhodes

---

## THE COUNTY OF OAKLAND, MICHIGAN'S ANSWERS TO DEBTOR'S FIRST SET OF INTERROGATORIES

The County of Oakland, Michigan ("Oakland County") through its counsel, answer Debtor's First Set of Interrogatories ("Interrogatories") as follows:

### GENERAL OBJECTIONS

The following objections are stated as to all demands, whether or not specifically restated in response to any particular Interrogatory.

1.      Oakland County objects to the Interrogatories to the extent that the definitions or instructions set forth therein seek to impose requirements beyond those contained in the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure or the Local Rules for the United States Bankruptcy Court for the Eastern District of Michigan.

2.      Oakland County objects to the Interrogatories to the extent that they seek information which is not relevant to the subject matter of this action in that it is neither admissible in evidence nor reasonably calculated to lead to the discovery of admissible evidence related to a claim or defense in this action.

3.      Oakland County objects to the Interrogatories to the extent that they seek information protected from disclosure by the attorney-client privilege, the work-product doctrine, the joint defense privilege, accountant-client privilege, the common interest doctrine, or other any applicable privilege.

4.     Oakland County objects to the Interrogatories to the extent that they are oppressive, overly broad, unduly burdensome, would involve unreasonable financial expense to Oakland County, and/or seek confidential information.   Oakland County will produce confidential documents only after a suitable protective order is in place.

5.     Oakland County objects to the Interrogatories to the extent they seek the production of information which is not within its possession, custody, or control.

6.     Oakland County objects to the Interrogatories to the extent that they are vague, ambiguous, or fail to describe the information sought with sufficient particularity to allow for a meaningful response.

7.     Oakland County objects to the Interrogatories to the extent that they are unduly burdensome, compound, and/or duplicative.

8.     Oakland County objects to the Interrogatories to the extent that they purport to seek information that is a matter of public record and that is otherwise equally accessible.

9.     Oakland County objects to the Interrogatories to the extent that they call for organization of information according to the request. Oakland County will produce discoverable information as it is kept in the ordinary course of business.

10.     Oakland County states these objections without waiving or intending to waive, but on the contrary preserving and intending to preserve: (a) all objections to the competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose of the responses to the Interrogatories or the subject matter thereof, in any subsequent proceeding in, or the trial of, this or any other action; (b) the right to object on any grounds to the use of any answer, or the subject matter thereof, in any subsequent proceeding in, or the trial of, this or any other action; (c) the right to object on any grounds at any time to a demand for further response to these or any other discovery procedures involving or related to the subject matter of the Interrogatories; and (d) the right to object on any grounds to any other or future interrogatories.

11.     By responding to any Discovery Request, Oakland County does not admit the relevance or admissibility of the information and/or documents provided.

### INTERROGATORIES

**INTERROGATORY:**

1.     Please identify any custodians of documents requested in the accompanying Requests for Production of Documents (served herewith).

**ANSWER:**

Robert Daddow, Oakland County Deputy County Executive, Megan Barnes, OCWRC Senior Attorney, Keith Parmley, OCWRC Financial Consultant.

**INTERROGATORY:**

2.      Please identify and describe any analysis or review conducted by you or on your behalf regarding the viability of the Detroit Water and Sewer Department (''DWSD'') on a stand-alone basis and/or assuming that DWSD operates as part of a regional authority. Please identify a lead person or persons who have knowledge thereof.

**ANSWER:**

Oakland objects to Interrogatory No. 2 to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, joint-defense privilege, or any other privilege or protection. Subject to the foregoing objections (and the General Objections set forth above), Oakland has utilized staff, its inside and outside counsel and financial consultants to evaluate the viability of Detroit Water and Sewer Department (''DWSD'') on a stand-alone basis in the form of a regional authority under PA 233. The analysis has consisted of reviewing a wide variety of information including but not limited to the following:

- DWSD's publicly available finance, budget and sewer rate information provided as part of its customer outreach process (all of which is available on the customer outreach website maintained by DWSD's consultant, Project Innovation) or as posted on its departmental website;

- Communications by DWSD staff made during the customer outreach process;

- Communications made by other wholesale customers during the customer outreach process;

- Analyses of a variety of legal issues, including analysis of enabling statutes, provisions of the Debtor's Charter and ordinances;

- Review of the audited financials for the DWSD water and sewer funds (FY 2011 and FY 2012) and preliminary financial audit results for FY 2013;

- Bond rating reports from Fitch and Standard and Poors;

- Reports and plans released by the Emergency Manager including the Plan for Creditors, one or more of his public financial reports, and the various released drafts of the Disclosure Statement and Plan of Adjustment;

- The Emergency Manager's proposal and supporting documents provided to the Counties in early October 2013;

- The Emergency Manager's proposal from mid December 2013;

- The Conway MacKenzie "due diligence" proposal in February 2014;

- General Retirement System ("GRS") Pension information including the FY 2012 and FY 2013 GRS actuarial statements, the audited financial statements for GRS for several years, and GRS financial reports for several years (all of the foregoing available on the GRS website) and a 1/31/2014 GRS investment performance report. In addition the Emergency Manager has provided two reports from Milliman reviewing the GRS actuarial reports as well as one or two spreadsheets from Miller Buckfire that provided some background information;

- Various reports or presentations to the Board of Water Commissioners ("BOWC") and its Finance Committee and discussions during meetings of the BOWC and its Finance Committee;

- DWSD's Capital Improvement Program for recent years;

- DWSD's 5-year financial projections circa March and December 2013;

- Information from DWSD with regard to its retail and wholesale delinquencies and Census and other information about the socio-economic conditions of DWSD's retail rate base;

- A presentation by UHY Advisors with regard to its review of the Emergency Manager's October 2013 proposal;

- Information provided by DWSD (either directly from DWSD or through a representative of the Emergency Manager) in response to Oakland's due diligence requests made in the fall of 2013, together with information provided by DWSD in meetings;

- Comments from other Counties shared with Oakland during the regional authority negotiations with the Emergency Manager;

- The rate materials described in response to Interrogatory No. 3 below.

In general, the analysis has consisted of comparing DWSD's recent operating, sales and financial performance, considered in terms of its balance sheet and its cash basis accounting for rate setting, against: 1) trends in rate increases, 2) projected capital needs of the system, 3) likely affordability constraints posed by the ability of ratepayers in

— 4 —

Detroit and a number of other communities to pay present or future rates, 4) financial benchmarks and indicators, and 5) the proposals made by the Emergency Manager (to the extent that their financial implications for DWSD can be understood from the information provided by the Emergency Manager.

Pursuant to Fed. R. Civ. P. 33(d), Oakland hereby identifies the documents and records mentioned above from which further information in response to this interrogatory may, in substantial part, be ascertained.

Persons with knowledge of the subject matter of Request 2 are Robert Daddow, Oakland County Deputy County Executive, Keith Parmley, OCWRC Financial Consultant.


**INTERROGATORY:**

3.     Please identify and describe any analysis or review conducted by you or on your behalf regarding how various DWSD rate structures benefit you. Please identify a lead person or persons who have knowledge thereof.

**ANSWER:**

Oakland objects to Interrogatory No. 3 to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, joint-defense privilege, or any other privilege or protection. Oakland further objects to Interrogatory No. 3 on the grounds that the terms "structure" and "benefits" are vague and ambiguous. Oakland further objects to this interrogatory as overbroad and unduly burdensome to the extent it seeks information that is readily available or more accessible to the Debtor from the Debtor's own files. Providing such information in answering this interrogatory would be oppressive, unduly burdensome and unnecessarily expensive, and the burden of providing such information in answering this interrogatory is substantially the same or less for the Debtor as for Oakland because information involving ongoing customer outreach and the work of the DWSD rate consultant is already in the possession of the Debtor. *See* Federal Rule of Civil Procedure 33(d).

In general the activities of the customer outreach process including Oakland's participation are memorialized in the minutes prepared by DWSD's outreach consultant, Project Innovations. The minutes, as well as materials from DWSD and the wholesale customers distributed before, during, and after the meetings are maintained on a website by DWSD's outreach consultant. DWSD has access to these materials on this site.

Persons with knowledge of the subject matter of Request 3 are Keith Parmley,

OCWRC Financial Consultant.

**INTERROGATORY:**

4.　　Please identify and describe any analysis or review conducted by you or on your behalf regarding how the level of capital improvement projects needed to maintain DWSD benefits you. Please identify a lead person or persons who have knowledge thereof.

**ANSWER:**

Oakland objects to Interrogatory No. 4 to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, joint-defense privilege, or any other privilege or protection. Oakland further objects to this interrogatory as overbroad and unduly burdensome to the extent it seeks information that is readily available or more accessible to the Debtor from the Debtor's own files. Providing such information in answering this interrogatory would be oppressive, unduly burdensome and unnecessarily expensive, and the burden of providing such information in answering this interrogatory is substantially the same or less for the Debtor as for Oakland because information involving ongoing customer outreach and the work of the DWSD rate consultant is already in the possession of the Debtor. *See* Federal Rule of Civil Procedure 33(d).

Subject to the foregoing objections (and the General Objections set forth above), Oakland states in the Fall of 2013, Macomb County assembled a team of technical staff from the three counties and several consultants to perform an independent assessment of that part of DWSD's water and sewer systems that provide water and sewer service entirely or in part to wholesale customers. The analysis consisted of reviewing DWSD's Capital Improvement Programs for various years, review of the OHM 10-Year capital needs assessment, and the inspection of a number of major DWSD water and sewer facilities. The members of the team were joined by representatives of several water wholesale customers in the site visits to water facilities. The team drew on the experience and professional knowledge of a number of individuals who had long experience working with DWSD as employees, consultants, contractors or as customers. Finally the team relied on its knowledge of the condition of the Oakland-Macomb interceptor system and Clintondale Pump Station, both recently acquired by DWSD, as well as the condition of the Northeast Sewage Pump Station. The results of the team's analyses are set forth in the report entitled ''DWSD 10-Year Capital Improvement Plan'' (December 20, 2013) which has been provided to the Emergency Manager.

Pursuant to Fed. R. Civ. P. 33(d), Oakland hereby further identifies the above-referenced documents and records from which the answer to this interrogatory may, in

substantial part, be ascertained.

Persons with knowledge of the subject matter of Request 4 are Robert Daddow, Oakland County Deputy County Executive, Sid Lockhart, OCWRC Assistant Chief Engineer, Doug Buchholz, OCWRC Chief Manager.

**INTERROGATORY:**

5.      Please identify and describe any analysis or review conducted by you or on your behalf regarding the viability of DWSD under the proposed $47 million lease.  Please identify a lead person or persons who have knowledge thereof.

**ANSWER:**

Oakland objects to Interrogatory No. 5 to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, joint-defense privilege, or any other privilege or protection.  Subject to the foregoing objections (and the General Objections set forth above), Oakland has not done any specific analysis of the $47 million lease proposal (as advanced in mid December 2013), in isolation but has considered it in the context of the whole proposal advanced by the Emergency Manager.  Oakland's analysis has been rudimentary because of limited available information and the absence of detail necessary to fully consider the impact of this proposal on DWSD's operating budget and balance sheet for the next 5 to 10 years.  The analysis has largely consisted of attempting to estimate the liabilities the Emergency Manager proposed to remove from DWSD's budget and the liabilities that would be added to the budget, and to attempt to deduce the source of the Emergency Manager's estimates and the manner in which they were generated.

Persons with knowledge of the subject matter of Request 5 are Robert Daddow, Oakland County Deputy County Executive, Keith Parmley, OCWRC Financial Consultant.

**INTERROGATORY:**

6.      Please identify and describe any analysis or review conducted by you or on your behalf regarding feasibility of exiting the DWSD system. Please identify a lead person or persons who have knowledge thereof.

**ANSWER:**

Oakland objects to Interrogatory No. 6 to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, joint-defense privilege, or any other privilege or protection.  Subject to the foregoing objections (and the General Objections set forth above), Oakland states that in March 2013 it contracted for studies

with regard to independent water and sewer systems.

Persons with knowledge of the subject matter of Request 6 are Steve Korth, OCWRC General Manager.

**INTERROGATORY:**

7. Please identify a lead person or persons who have knowledge of your collection and bad debts for the fiscal years 2009, 2010, 2011, 2012, and 2013.

**ANSWER:**

Oakland objects to Interrogatory No. 7 to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, joint-defense privilege, or any other privilege or protection. Oakland further objects on the grounds that this interrogatory is irrelevant because Oakland's bad debt and collection rates have no relation to the DWSD. Subject to the foregoing objections (and the General Objections set forth above), By way of further response, Oakland states that it has no "bad debt" or collection issues, given that its customers are municipalities that are, and have always been, current in the payment of their bills. Persons with knowledge of the subject matter of Request 7 are Robert Daddow, Oakland County Deputy County Executive, Keith Parmley, OCWRC Financial Consultant.


**INTERROGATORY:**

8. Please identify and describe any valuations of DWSD you have considered, discussed, reviewed, or analyzed. Please identify a lead person or persons who have knowledge thereof.

**ANSWER:**

Oakland objects to Interrogatory No. 8 to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, joint-defense privilege, or any other privilege or protection. Subject to the foregoing objections (and the General Objections set forth above), Oakland states that it has considered the net asset values of the water and sewer funds as disclosed in the audited financial statements for the funds. UHY Advisors provided a presentation on the Emergency Manager's October 2013 proposal that included an evaluation of the potential value of DWSD. UHY did not provide a copy of its presentation. Oakland does not have information as to the method of valuation or of the valuation estimate(s) provided. Persons with knowledge of the subject matter of Request 8 are Robert Daddow, Oakland County Deputy County Executive, Keith Parmley, OCWRC Financial Consultant.

**INTERROGATORY:**

9.   Please identify and describe any communications between you and any DWSD bond insurers or financial advisors.

**ANSWER:**

Oakland objects to Interrogatory No. 9 to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, joint-defense privilege, or any other privilege or protection. Oakland further objects on the grounds that it is unclear whether this Interrogatory is confined to financial advisors for the DWSD bond insurers or whether it seeks information regarding any financial advisors. Assuming the former is the case, and subject to the foregoing objections (and the General Objections set forth above), Oakland states that representatives of Oakland met with representatives of most or all of the bond insurers in February 2014.

Persons with knowledge of the subject matter of Request 9 are Robert Daddow, Oakland County Deputy County Executive.


**INTERROGATORY:**

10.   Please identify and describe any analysis or review of a transaction that results in either the privatization of DWSD or results in the creation of a regional authority to operate DWSD. Please identify a lead person or persons who have knowledge thereof.

**ANSWER:**

Oakland objects to Interrogatory No. 10 to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, joint-defense privilege, or any other privilege or protection. Subject to the foregoing objections (and the General Objections set forth above), Oakland states that no substantive analyses have taken place that have not already been described in response to these Interrogatories.

Respectfully Submitted,

**Carson Fischer, P.L.C.**

**By:** */s/ Joseph M. Fischer*
Joseph M. Fischer (P13452)
Robert A. Weisberg (P26698)
Christopher Grosman (P58693)
4111 Andover Road, West – Second Floor
Bloomfield, Michigan 48302-1924
Telephone: (248) 644-4840
Facsimile: (248) 644-1832
Email: JFischer@CarsonFischer.com
        RWweisberg@CarsonFischer.com
        CGrosman@CarsonFischer.com

*Counsel for Oakland County, Michigan*

**Young & Associates**

By: /s/ Sara K. MacWilliams
Sara K. MacWilliams (P67805)
Jaye Quadrozzi (P71646)
27725 Stansbury Blvd., Suite 125
Farmington Hills, MI 48334
Telephone: (248) 353-8620
Email: efiling@youngpc.com
        macwilliams@youngpc.com
        quadrozzi@youngpc.com

*Co-counsel for Oakland County, Michigan*

Date: May 6, 2014

# CERTIFICATE OF SERVICE

I certify that on May 6, 2014 I electronically filed the County of Oakland, Michigan's Answers to Debtor's First Set of Interrogatories with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

**YOUNG & ASSOCIATES**

  /s/ Sara K. MacWilliams
27725 Stansbury Boulevard, Suite 125
Farmington Hills, Michigan 48334
248.353.8620
efiling@youngpc.com
P67805