# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 9 |
|  | ) |  |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
|  | ) |  |
| Debtor. | ) | Hon. Steven W. Rhodes |
|  | ) |  |

## NOTICE OF DEPOSITION

To:     The City of Detroit, Michigan

**PLEASE TAKE NOTICE that** pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, as adopted by Fed. R. Bankr. P. 9014 and Fed. R. Bankr. P. 7030, U. S. Bank National Association, as Indenture Trustee (the "Trustee") for the DWSD Bonds (as defined below), National Public Finance Guarantee Corporation ("National"), Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance Inc. ("Assured"), Berkshire Hathaway Assurance Corporation ("BHAC"), Financial Guaranty Insurance Company ("FGIC") and the Ad Hoc Bondholder Committee[1] (together with the Trustee, National, Assured, BHAC, and FGIC, the "DWSD Discovery Parties"), will take the deposition of The City of Detroit, Michigan (the "City") regarding the matters set forth in the attached Exhibit A.

The City must designate one or more persons who consent to testify on its behalf. The City is requested to provide counsel for the DWSD Discovery Parties, as soon as reasonably possible, with a written designation of the name(s) and position(s) of the persons who consent to testify on behalf of the City.

---

[1] The Ad Hoc Bondholder Committee members, Fidelity Management & Research Company, Eaton Vance Management, Franklin Advisers, Inc., Nuveen Asset Management, and BlackRock Financial Management, Inc., through various institutional funds they or their affiliates manage, hold DWSD Bonds.

Such testimony by deposition will be taken before a Notary Public and Court Reporter on June 10, 2014, commencing at 9:00 o'clock a.m. and continuing from day to day until completed at the offices of Bodman PLC, 1901 St. Antoine Street, 6th Floor at Ford Field, Detroit, Michigan 48226. The deposition will be recorded by stenographic and audio visual means.

You are invited to attend and cross-examine.

Dated: May 6, 2014                                  Respectfully submitted,


/s/ Guy S. Neal                                     /s/ Robert A. Schwinger
James F. Bendernagel, Jr.                           Lawrence A. Larose
Guy S. Neal                                         Samuel S. Kohn
SIDLEY AUSTIN LLP                                   Robert A. Schwinger
1501 K Street, N.W.                                 CHADBOURNE & PARKE LLP
Washington, D.C. 20005                              30 Rockefeller Plaza
Telephone: (202) 736-8041                           New York, NY 10012
Fax: (202) 736-8711                                 Telephone: (212) 408-5100
jbendernagel@sidley.com                             Fax: (212) 541-5369
gneal@sidley.com                                    llarose@chadbourne.com
                                                    skohn@chadbournne.com
- and –                                             rschwinger@chadbourne.com

Jeffrey E. Bjork                                    -and –
Gabriel MacConaill
SIDLEY AUSTIN LLP                                   Robin D. Ball
555 West Fifth Street, Suite 4000                   CHADBOURNE & PARKE LLP
Los Angeles, California 90013                       350 South Grand Ave., 32nd Floor
Telephone: (213) 896-6000                           Los Angeles, CA 90071
Fax: (213) 896-6600                                 Telephone: (213) 892-2025
jbjork@sidley.com                                   Fax: (213) 892-2045
gmacconaill@sidley.com                              rball@chadbourne.com

Counsel for National Public Finance                 Counsel for Assured Guaranty Municipal
Guarantee Corp.                                     Corp.

2

*/s/ David E. Lemke*
David E. Lemke (TN13586)
Michael R. Paslay (TN11092)
Ryan K. Cochran (TN25851)
Courtney M. Rogers (TN25664)
WALLER LANSDEN DORTCH & DAVIS,
LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 244-6380
Fax: (615) 244-6804
david.lemke@wallerlaw.com
mike.paslay@wallerlaw.com
ryan.cochran@wallerlaw.com
courtney.rogers@wallerlaw.com

– and –

Robert J. Diehl, Jr. (MI31264)
Jaimee L. Witten (P70068)
BODMAN PLC
1901 St. Antoine Street, 6th Floor
Detroit, Michigan 48226
Telephone: (313) 393-7597
Fax: (313) 393-7579
rdiehl@bodmanlaw.com
jwitten@bodmanlaw.com

*Attorneys for U.S. Bank National Association,
as Indenture Trustee for the DWSD Bonds*

*/s/ William W. Kannel*
William W. Kannel
Adrienne K. Walker
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY and POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Fax: (617) 542-2241
wwkannel@mintz.com
awalker@mintz.com

– and –

ANDREW J. GERDES, P.L.C.
Andrew J. Gerdes
321 W. Lake Lansing Road
P.O. Box 4190
East Lansing, Michigan 48826-4190
Telephone: (517) 853-1300
Fax: (517) 853-1301
agerdes@gerdesplc.com

*Attorneys for Fidelity Management &
Research Company, Eaton Vance
Management, and Franklin Advisers, Inc.,
members of the Ad Hoc Bondholder Committee*

*/s/ My Chi To*
My Chi To
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-7435
Fax: (212) 909-6836
mcto@debevoise.com

*Attorneys for Berkshire Hathaway Assurance
Corporation*

3

*/s/ Amy Caton*
Amy Caton
Gregory Horowitz
KRAMER LEVIN NAFTALIS & FRANKEL, LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Fax: (212) 715-8000
acaton@kramerlevin.com
ghorowitz@kramerlevin.com

– and –

STEINBERG SHAPIRO & CLARK
Mark H. Shapiro
25925 Telegraph Road
Suite 203
Southfield, Michigan 48033
Telephone: (248) 352-4700
Fax: (248) 352-4488
Shapiro@steinbergshapiro.com

*Attorneys for Nuveen Asset Management, and BlackRock Financial Management, Inc., members of the Ad Hoc Bondholder Committee*

*/s/ Alfredo R. Pérez*
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, TX 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
alfredo.perez@weil.com

– and –

Ernest J. Essad Jr.
Mark R. James
WILLIAMS, WILLIAMS, RATTNER & PLUNKETT, P.C.
280 North Old Woodward Avenue, Suite 300
Birmingham, MI 48009
Telephone: (248) 642-0333
Facsimile: (248) 642-0856
EJEssad@wwrplaw.com
mrjames@wwrplaw.com

*Attorneys for Financial Guaranty Insurance Company*

## EXHIBIT A

1.     Definitions

A.     All capitalized terms not otherwise defined in this notice shall have the same meanings given to them in the Plan (as defined below).

B.     The term "Capital Expenditures" shall mean costs incurred for the addition, replacement, improvement, or enhancement of a fixed asset, to the extent such costs are properly chargeable to a fixed capital account. This term shall include, without limitation, expenditures for vehicles and equipment, including to replace worn, lost, or destroyed vehicles and equipment, and expenditures for internal labor.

C.     The term "Communication" shall mean the transmittal of information, whether oral, written, video, audio, or electronic form and whether face to face, in a meeting, by telephone, by mail, by personal delivery, or otherwise, and includes the transmittal of information to or from third parties.

D.     The term "Disclosure Statement" shall refer to the *Fourth Amended Disclosure Statement with Respect to Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* (Doc. 4391), as amended from time to time.

E.     The term "DWSD RFI" shall refer to the City's Request for Information for Potential Operators of Detroit Water and Sewage Disposal Systems for Detroit Water and Sewerage Department, issued by the City of Detroit, Kevyn D. Orr, Emergency Manager (March 25, 2014).

F.     The term "Long Term Non-DWSD Employee" shall mean a person employed by any department of the City other than the DWSD for any cumulative period longer than five years and for whom pension benefits have accrued within either the GRS or PFRS.

G.    The term "Material" shall mean 6% or more.

H.    The term "Net Revenues" shall have the meaning ascribed to such term in the DWSD Bond Documents.

I.    The term "Plan" shall refer to the City's *Fourth Amended Plan for the Adjustment of Debts of the City of Detroit (May 5, 2014)* (Docket No. 4392), as amended from time to time.

J.    The term "Systems" shall refer to either or both the Sewage Disposal System of the City or the Water Supply System of the City, as the context requires.

K.    The terms "System Asset" or "System Assets" shall mean one or all of the assets, as the context shall dictate, that comprise either or both of the Systems, including, without limitation, all real estate holdings, tangible assets and intangible assets. Tangible assets include, without limitation, all pipes, pumping stations, and waste water treatment plants of the Systems. Intangible assets include, without limitation, all computer software, operating licenses and environmental permits, wastewater historical testing documentation on file, engineering drawings and system maps, trained and assembled workforce, goodwill and going concern value.

L.    The term "UAAL" shall mean unfunded actuarial accrued liabilities.

M.    The term "Underwriting RFP" shall refer to the "Request for Proposal for Underwriting Services" circulated by the Michigan Department of Treasury and Michigan Finance Authority on behalf of the City on March 12, 2014.

N.    Time frame: Unless otherwise indicated, this deposition shall be limited to actions and events occurring and documents created on or after the start of Fiscal Year 2009 to the present.

11772772
13-53846-tjt    Doc 4453    Filed 05/06/14    Entered 05/06/14 17:34:38    Page 6 of 14

## MATTERS UPON WHICH TESTIMONY IS REQUESTED

1.      The Plan's treatment of the DWSD Bonds, including but not limited to:

a.      The determination as to whether a DWSD Bond is Impaired or Unimpaired under the Plan;

b.      The determination and calculation of interest rates set forth in the Interest Rate Reset Chart, attached as Exhibit I.A.168 to the Plan;

c.      The modification or elimination of call protection and other redemption provisions;

d.      Any credit analysis relating to the Systems, including but not limited to their credit analysis following the City's emergence from chapter 9;

e.      The identity and terms of the debt issuances referred to on page 63 of the Disclosure Statement, which the City has indicated "are not callable in the next 26 months under their contractual terms and with coupons substantially in excess of the rate curve";

f.      The extent to which all of the representations, warranties, covenants, liens, rights, and remedies relating to the DWSD Bonds under the existing DWSD Bond Documents will be applicable to the New DWSD Bonds and/or the New Existing Rate DWSD Bonds, and, to the extent any changes from the terms of the current governing DWSD Bond Documents for the DWSD Bonds are made, the description and impact of such changes;

g.      Whether any accrued, but unpaid interest, will be included in the amount of the allowed DWSD Bond Claims and/or the DWSD Revolving Bond Claims; whether any accrued and unpaid interest is being disallowed, and, if applicable, the reason therefor; and the amount of allowed post-petition accrued and unpaid interest;

h. Whether the allowed accrued and unpaid interest on the DWSD Bond Claims, if any, will be paid in Cash on the Effective Date of the Plan or become part of the principal of the New DWSD Bonds and/or the New Existing Rate DWSD Bonds;

i. The calculation of the amount of the allowed claims for the DWSD Bonds;

j. Whether the New DWSD Bonds and/or the New Existing Rate DWSD Bonds will be in compliance with state law requirements;

k. How the Trustee's fees and expenses (including fees of its counsel, advisors and experts) will be paid, and the source of the payment;

l. The terms of any policy or practice that controls, directs or explains how expenses of the DWSD are or should be categorized as an operating, maintenance or capital expense;

m. Any analysis regarding the amortization periods of "new money bonds," as that term is utilized on page 3 of Exhibit M to the Disclosure Statement; and

n. Any analysis of debt service reserve funding requirements, as that term is utilized on page 3 of Exhibit M to the Disclosure Statement."

2. The DWSD's financial statements for Fiscal Years 2009 through 2013 and year-to-date for Fiscal Year 2014, including but not limited to:

a. Amounts held in the Operation and Maintenance Funds (as defined in the DWSD Bond Documents) and the Construction Funds (as defined in the DWSD Bond Documents) for the Systems;

b. Any accounts of the Systems not controlled by the Trustee and the balances in such accounts, reflecting the cash in and out of the accounts, from Fiscal Year 2013 and year-to-date for Fiscal Year 2014;

A-4

c.     Proceeds of the sale of any System Assets, including DWSD's 2009 sale of a 35-mile interceptor to Oakland-Macomb Interceptor Drain Drainage District; and

d.     Any look-back adjustments, including any analysis by the DWSD to determine if their customers paid their customers proportionate share of costs incurred during the rate period based on actual operating results.

3.     The City's Ten-Year Financial Projections (through Fiscal Year 2023), including but not limited to:

a.     The financial impact, timing and other matters relating to the potential departure of any municipal entity;

b.     Any planned, proposed or projected rate determinations, including all work done by DWSD's rate consultant in conjunction with DWSD's Root Cause Committee's Final Report, dated as of March 13, 2013;

c.     Any planned, proposed or projected Capital Expenditures and the proposed source of funding for any such projects, including any Material Capital Expenditures to be funded after Fiscal Year 2024;

d.     Any planned or projected financing difficulties;

e.     Any planned or projected changes in borrowing costs, and the resulting impact;

f.     Any planned or projected collection issues;

g.     Growth rates relevant to income tax revenue projections;

h.     Any financial capability analysis to establish any DWSD hardship exemptions provided to or received from the United States Environmental Protection Agency

11772772

and/or the Michigan Department of Environmental Quality, and the terms of any such hardship exemptions; and

i.      Any communications with the State of Michigan, United States Environmental Protection Agency, the Michigan Department of Environmental Quality, or other relevant parties regarding the extension of the hardship exemption or potential of amending terms of the Administrative Consent Order or related requirements.

4.      The City's plans to lease, transfer or "monetize" the Systems or any portion of the Systems' Assets or operations to a regional authority, a private enterprise, or any public-private partnership (together, a "Disposition"), including but not limited to:

a.      All responses to the DWSD RFI;

b.      Any communications with the State of Michigan or any municipal counterparties, including, without limitation, Clinton County, Genesee County, Macomb County, Oakland County, Wayne County, and any other County or entity (public or private);

c.      The City's analysis of appropriate lease payments or other fees (including but not limited to any management fees) that would be paid to the City as an additional operating expense upon such a Disposition;

d.      The effect of such a Disposition on the Plan and the DWSD Bonds; and

e.      Any impediments to such a Disposition, including, but not limited to political, legal and/or practical impediments.

5.      Any assessment, opinion or estimate of the value, capacity or condition of either System, the Systems together, and/or System Assets, including, but not limited to, individual treatment plants, pumping stations, storage tanks, sewer overflow retention basis, and buried infrastructure.

6. The Underwriting RFP, including the City's analysis of the appropriate interest rates applicable to the new capital improvement sewer bonds.

7. The City and/or DWSD's historical and current process of billing and collecting for each System including, but not limited to, efforts to address uncollected and unbilled accounts.

8. The DWSD's staffing and headcount, including but not limited to:

a. The current organizational chart for the DWSD, any proposed changes to occur on or after the Effective Date;

b. Any opinions, assessments, studies or reports reflecting current and projected optimal employee headcounts for DWSD;

c. Any Communication, formal reports, or other documentation of hiring an excess amount of employees within the DWSD to perform tasks that may not be directly related to DWSD operations;

d. Any Communication, formal reports, or other documentation of hiring by DWSD of Long Term Non-DWSD Employees within five years of such employees' respective retirement dates; and

e. Any severance pay policies for the DWSD employees.

9. The Plan's provision for the contribution by the DWSD of $428.5 million in "pension related, administrative and restructuring payments," as described at pages 38 and 50 of the Disclosure Statement, including but not limited to:

a. The methodology used for the City's determination of the amount of the DWSD's full allocable share of the past, present and future GRS UAAL;

b. How the City plans to fund the GRS UAAL out of the DWSD;

c.      Any agreements, memoranda of understanding, or other understandings or arrangements (written or unwritten) governing contributions to the GRS by the DWSD, the City, and/or any of the City's departments, agencies, divisions, units or components;

d.      Whether the Systems will have the cash flow to make such payments;

e.      Any pro forma impact on rates and the potential impact of higher rates on wholesale contract renewals;

f.      The effect of the proposed allocation on the DWSD Bonds;

g.      The use(s) that will be made under the Plan of the $428.5 million to be contributed by the DWSD; and

h.      Amounts the DWSD paid/reimbursed the General Fund for its respective share of the COPs' debt service, including their respective share of the swap flow payments.

10.      The City's contention, if it so contends, that it can satisfy its burden under 11 U.S.C. § 1129(a) and (b) as incorporated into chapter 9 of the Bankruptcy Code with respect to the Plan's treatment of the DWSD Bonds, including but not limited to:

a.      The City's contention, if it so contends, that the Plan provides that the holders of the DWSD Bonds retain the liens securing their claims to the extent of the allowed amount of such claim and within the meaning of 11 U.S.C. § 1129(b)(2)(A)(i)(I);

b.      The City's contention, if it so contends, that the Plan provides the holders of the DWSD Bonds "deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property" within the meaning of 11 U.S.C. § 1129(b)(2)(A)(i)(II); and

c.     The City's contention, if it so contends, that the Plan provides for the realization by the holders of the DWSD Bonds of the indubitable equivalent of their claims within the meaning of 11 U.S.C. § 1129(b)(2)(A)(iii).

11.     The City's contention, if it so contends, that it can satisfy its burden under 11 U.S.C. § 943(b) with respect to the Plan's treatment of the DWSD Bonds, including but not limited to:

a.     The City's contention, if it so contends, that the City is not prohibited by law from taking any action necessary to carry out the Plan within the meaning of 11 U.S.C. § 943(b)(4);

b.     The City's contention, if it so contends, that any regulatory or electoral approval necessary under applicable nonbankruptcy law in order to carry out any provision of the Plan has been obtained, or such provision is expressly conditioned on such approval within the meaning of 11 U.S.C. § 943(b)(6); and

c.     The City's contention, if it so contends, that the Plan is in the best interests of creditors and is feasible within the meaning of 11 U.S.C. § 943(b)(7).

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing *Notice of Deposition* was served via email and overnight delivery on the following on this the 6th day of May, 2014:

| | |
|---|---|
| Ms. Heather Lennox | Mr. Bruce Bennett |
| Jones Day | Jones Day |
| 222 East 41st Street | 555 South Flower Street |
| New York, New York 10017 | 50th Floor |
| | Los Angeles, California 90071 |

I hereby further certify that the foregoing was filed and served by the Court's electronic case filing and noticing system to all parties registered to receive electronic notices in this matter on this the 6th day of May, 2014.

> */s/ David E. Lemke*
> David E. Lemke (TN13586)
> Michael R. Paslay (TN011092)
> Ryan K. Cochran (TN025851)
> Courtney M. Rogers (TN25664)
> WALLER LANSDEN DORTCH & DAVIS LLP
> 511 Union Street, Suite 2700
> Nashville, Tennessee 37219
> Phone: (615) 244-6380
> Fax: (615) 244-6804