# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

## MOTION FOR A PROTECTIVE ORDER

Syncora Capital Assurance Inc. and Syncora Guarantee Inc. ("Syncora") submit this motion (the "Motion for a Protective Order") for the entry of an order pursuant to Rule 26 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7026 of the Federal Rules of Bankruptcy Procedure, (a) allowing Syncora to designate its non-public proprietary and/or commercially-sensitive information as confidential and (b) limiting the disclosure of Syncora's confidential information to certain circumstances. In support of its motion, Syncora respectfully states as follows:

## BACKGROUND

1. On April 11, 2014, the Debtor City of Detroit (the "City") served its Requests for Production of Documents to Syncora. In response to these requests, Syncora agreed to produce various categories of documents. (*See* Syncora's Responses and Objections to Debtor's Requests for Production of Documents, Doc. No. 4275.)

2. Syncora explicitly noted, however, that certain of the documents it agreed to produce — *i.e.*, underwriting guidelines, internal credit memos and analyses, and surveillance and monitoring documents — contained commercially-sensitive and/or proprietary information. (*Id.*) In particular, these documents contained internal, non-public information that reveal how Syncora evaluated risk, quantified its exposure, and ultimately decided what to insure. (*See* Exhibit 5, Dec. of Mary Jane Constant, ¶ 2.) In addition, Syncora intends to produce its entire underwriting manual, which contains all of the underwriting principles and practices that Syncora has developed throughout the years, and its analysis of the various products that it considers for insurance. (*See id.*)

3. To protect these documents and ensure their confidentiality, Syncora asked the City, on at least two occasions, if it would be willing to enter into a protective order prior to the production of these commercially-sensitive documents on May 6. On May 5, counsel for the City stated that it was not willing to enter into a confidentiality agreement with Syncora but that it would not take a position on Syncora's Motion for a Protective Order. Syncora now submits this Motion for a Protective Order to ensure the continued protection of its commercially-sensitive and/or proprietary information.

## JURISDICTION

4. The Court has jurisdiction over this matter pursuant to 38 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

5. Syncora respectfully requests that the Court enter an order substantially in the form attached as Exhibit 1 (1) permitting Syncora to designate its commercially-sensitive and proprietary documents as Confidential and (2) limiting the disclosure of confidential information to certain defined circumstances.

## BASIS FOR RELIEF

6. Federal Rule of Civil Procedure 26(c)(1)(G) allows a party to move for a protective order (a) prohibiting the disclosure of confidential commercial information or (b) requiring that it be disclosed "only in a specified way." Fed.R.Civ.P. 26(c)(1). To satisfy this rule, a party must show that "(1) the interest for which protection is sought is an actual trade secret or other confidential business information protected by the rule; and (2) there is good cause for entry of a protective order." *MedCity Rehab. Servs., LLC v. State Farm Mut. Auto. Ins. Co.*, 11-CV-14777, 2013 WL 1875980 (E.D. Mich. May 3, 2013) (internal quotations omitted). In this case, Syncora is able to satisfy both elements.

7. First, the documents that Syncora is attempting to protect via the protective order constitute confidential business information protected by Rule 26(c)(1)(G). As noted above, Syncora has agreed to produce a number of confidential, commercially-sensitive documents, including the following:

- Syncora's internal and proprietary standards, controls, limits, and guidelines for the products it insures;

- Syncora's underwriting manual;

- Certain of Syncora internal and confidential surveillance and monitoring reports wherein it assesses its risks and exposure and describes its reasoning;

- Certain of Syncora's internal credit memos and analyses assessing potential transactions, its recommendations regarding those transactions, and the reasoning behind those recommendations;

- Syncora's analysis of a broad array of product areas, including United States public finance, power and utilities, whole business securitizations, and collateralized debt obligations; and

- Syncora's net credit exposure limits (and how it calculates those exposure limits) which allow it to be competitive in the financial guarantee industry while protecting its capital base from the risk of loss.

(Exhibit 5, Dec. of Mary Jane Constant, ¶ 2.)

8. These documents reveal certain of Syncora's internal business practices and strategies. (*Id.* ¶ 3.) As a result, they are treated as confidential by Syncora employees and are not disclosed to the public. (*Id.*) For example, Syncora has an employee handbook that requires its employees to maintain the confidentiality of the documents described above. (*Id.*) Syncora further protects

4

the confidentiality of these documents by prohibiting former employees from retaining any confidential or proprietary materials. (*Id.*)

9. Accordingly, the confidential information Syncora is seeking to protect is exactly the type of commercially-sensitive business information that Rule 26(c)(1)(G) is meant to protect. *See, e.g.*, *Kerns v. Caterpillar, Inc.*, 3:06-CV-1113, 2008 WL 351233 (M.D. Tenn. Feb. 7, 2008) (finding that internal strategy materials were "confidential business information" for purposes of Rule 26); *see also Grant Heilman Photography, Inc. v. Pearson Educ., Inc.*, 2012 WL 1521954 (E.D. Pa. Apr. 30, 2012) (protecting "non-public financial information, sales and marketing projections, and forecasts."); *Miles v. Boeing Co.*, 154 F.R.D. 112, 114-15 (E.D. Pa. 1994) ("[T]he subject matter of confidential business information is broad, including a wide variety of business information . . . .").

10. Second, there is good cause for entry of a protective order in this case. Without a protective order, Syncora risks the disclosure of its confidential and proprietary business information — essentially, the inner workings of its business. If that were to occur, Syncora would be harmed in a variety of ways. (Exhibit 5, Dec. of Mary Jane Constant, ¶ 2.)

11. First, the documents that Syncora is seeking to protect contain confidential information that Syncora spent its own time and money developing. (*Id.* ¶ 5.) As a result, Syncora considers its internal research, analyses, and

5

underwriting guidelines to be corporate assets that provide economic value to its business. (*Id*.) If these documents were disclosed to the public-at-large, Syncora's competitors would be able to unfairly profit from the know-how and proprietary information that Syncora has developed. (*Id*.)

12. Second, the disclosure of this information could also harm Syncora from a remediation and corporate business standpoint. (*Id*. ¶ 6.) Though Syncora is not currently writing new business, it is still managing exposure and risks on its portfolio of policies. (*Id*.) As a result, the confidential documents at issue could be used against Syncora as it continues to operate its business. (*Id*.)

13. Third, if Syncora begins writing new business, the disclosure of these documents could place Syncora at a commercial disadvantage. (*Id*. ¶ 7.) For example, some of the documents disclose Syncora's net exposure limits. (*Id*.) Syncora's competitors could, however, use that information to their advantage if they ever were to compete against Syncora in the marketplace. (*Id*.)

14. Put simply, these are the very situations that Rule 26(c)(1)(G) is designed to prevent. 6 *Moore's Federal Practice* § 26.105[8][a] (3rd Ed.) (noting that Rule 26(c)(1)(G) "has been interpreted to protect from disclosure material that would harm the disclosing party by placing it at a commercial disadvantage"); *see also Kerns*, 2008 WL 351233, at *3 (same); *Goldenberg v. Indel, Inc.*, 2012 WL 15909, at *3-4 (D. N.J. Jan. 3, 2012) ("The confidentiality of business agreements,

trade secrets or commercial information are a legitimate private interest and the disclosure of this information can be used for the improper purpose of causing harm to the litigant's competitive standing in the marketplace."). Good cause therefore exists for this court to enter an order protecting Syncora's commercially-sensitive and proprietary information.

15. Finally, it should be noted that the documents Syncora is trying to protect from disclosure are of dubious relevance. As Syncora stated in its responses to the City's document requests, the City has the affirmative burden during the upcoming confirmation hearing to establish that its proposed plan of adjustment satisfies the necessary requirements. However, Syncora's underwriting manuals and surveillance reports have little, if any, relevance to those standards.

WHEREFORE, for the foregoing reasons, Syncora respectfully requests that this Court enter an order substantially in the form attached hereto as Exhibit 1.

*[Remainder of this page intentionally left blank]*

Dated: May 7, 2014                    Respectfully submitted,

**KIRKLAND & ELLIS LLP**

By: /s/ *Stephen C. Hackney*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*