# Exhibit 5
## Declaration of Mary Jane Constant

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

## DECLARATION OF MARY JANE CONSTANT IN SUPPORT OF SYNCORA GUARANTEE INC. AND SYNCORA CAPITAL ASSURANCE INC'S MOTION FOR A PROTECTIVE ORDER

Pursuant to 28 U.S.C. § 1746, I, Mary Jane Constant, hereby submit this declaration under penalty of perjury:

1. I am a managing director of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. ("Syncora") in the above-captioned action. I submit this declaration in support of Syncora's *Motion for a Protective Order* (the "Motion for a Protective Order").

2. In response to the *City's Request for the Production of Documents to Syncora*, Syncora agreed to produce certain categories of documents that contain commercially-sensitive and/or proprietary information. In particular, Syncora agreed to produce the following categories of confidential, commercially-sensitive documents:

- Syncora's internal and proprietary standards, controls, limits, and guidelines for the products it insures;

- Syncora's underwriting manual;

- Certain of Syncora internal and confidential surveillance and monitoring reports containing assessments and analyses of its risks and exposure;

- Certain of Syncora's internal credit memos and analyses assessing potential transactions, its recommendations regarding those transactions, and the reasoning behind those recommendations;

- Syncora's analysis of a broad array of product areas, including United States public finance, power and utilities, whole business securitizations, and collateralized debt obligations; and

- Syncora's net credit exposure limits (and how it calculates those exposure limits) which allow it to be competitive in the financial guarantee industry while protecting its capital base from the risk of loss.

3. The above categories of documents reveal certain of Syncora's internal business practices and strategies. As a result, they are treated as confidential by Syncora employees and not disclosed to the public. For example, Syncora has an employee handbook that requires its employees to maintain the confidentiality of the documents described above. Syncora further protects the confidentiality of these documents by prohibiting former employees from retaining any confidential or proprietary materials.

4. If these documents were disclosed to the public, they could cause harm to Syncora in a variety of ways.

5. First, the documents that Syncora is seeking to protect contain confidential information that Syncora spent its own time and money developing. As a result, Syncora considers its internal research, analyses, and underwriting

2

guidelines to be corporate assets that provide economic value to its business. If these documents were disclosed to the public-at-large, Syncora's competitors would be able to unfairly profit from the know-how and proprietary information that Syncora has developed.

6. Second, the disclosure of this information could also harm Syncora from a remediation and corporate business standpoint. Though Syncora is not currently writing new business, it is still managing exposure and risks on its portfolio of policies. As a result, the confidential documents at issue could be used against Syncora as it continues to operate its business.

7. Third, if Syncora begins writing new business, the disclosure of these documents could place Syncora at a commercial disadvantage. For example, some of the documents disclose Syncora's net exposure limits. Syncora's competitors could, however, use that information to their advantage if they ever were to compete against Syncora in the marketplace.

I declare under penalty of perjury that the foregoing are true and correct to the best of my knowledge, information, and belief.

New York, New York  
Dated: May 6, 2014

_____  
Mary Jane Constant